WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :     **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                   :
                                                            :     **Case No. 18-_____ (RDD)**
                                                            :
              Debtors.[1]                                   :     **(Joint Administration Requested)**
------------------------------------------------------------x

**DECLARATION OF BRANDON AEBERSOLD
IN SUPPORT OF DEBTORS' MOTION FOR AUTHORITY TO (A) OBTAIN
POSTPETITION FINANCING, (B) USE CASH COLLATERAL, (C) GRANT
CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES AND
(D) SCHEDULE SECOND INTERIM HEARING AND FINAL HEARING**

I, Brandon Aebersold, make this declaration under 28 U.S.C. § 1746:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554);

1.    I am a Managing Director at Lazard Frères & Co. LLC. ("**Lazard**"), the proposed investment banker to Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or the "**Company**").

2.    I submit this Declaration in support of the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (the "**DIP Motion**")[2] solely with respect to the DIP ABL Facility financing the approval of which is sought therein.

3.    Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management, other members of the Lazard team, and the Debtors' other advisors, and my review of relevant documents and/or my opinion based upon my experience. If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

**Background and Qualifications**

4.    I am a Managing Director with Lazard, a financial advisory and investment banking firm. I joined Lazard in 2007. I have approximately 15 years of investment

---

Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the DIP Motion.

2

banking and restructuring experience. Prior to joining Lazard, I practiced law at the firm of Simpson Thatcher & Bartlett LLP, where I focused on mergers and acquisitions and leveraged finance transactions. I have advised corporate clients and creditor groups in a broad range of restructuring, reorganization and capital raising transactions, in traditional and distressed situations, across a diverse variety of industries. In addition, I have substantial experience marketing, structuring, and evaluating debtor-in-possession financings, secured debt facilities, and exit financings.

5. Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 165 years. Lazard has dedicated professionals who provide restructuring services to its clients. The current managing directors, directors, vice presidents, associates and analysts of Lazard have extensive experience working with financially troubled companies and creditors thereof in complex financial restructurings out-of-court and in chapter 11 proceedings. Lazard and its professionals have been involved as advisors to debtors, creditors, equity constituencies and government agencies in numerous reorganization cases. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing well over $1 trillion in debtor liabilities.

**Lazard's Retention**

6. Prior to the Commencement Date, the Debtors, engaged Lazard to act as the Debtors' exclusive investment banker in connection with the Debtors' review of strategic alternatives to address their capital structure. The Lazard team under my supervision has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to this case and has become acquainted with the Debtors' capital structure, liquidity needs, and business operations.

**Debtors' Efforts to Obtain Postpetition Financing**

7.   As explained in the Riecker Declaration, the Debtors have a highly-levered capital structure and faced significant liquidity challenges leading to the commencement of these chapter 11 cases.

8.   Due to a number of factors, including (i) the potential for publicity and risk of liquidity further tightening due to immediate vendor contraction and "stop-ship" actions, (ii) the Debtors' intense focus on out-of-court restructuring efforts that remained a primary focus until very recently, and (iii) the possibility of chapter 11 becoming an unstoppable reality if third parties were contacted given the intense media focus on the Company, the Debtors did not engage in debtor-in-possession financing discussions until this past week.  In hindsight, those concerns were well-founded, as the risks materialized once discussions regarding debtor-in-possession financing were initiated, as dozens of parties were required to engage in a financing effort for a company of the Debtors' size and scope.  As such, the proposed debtor-in-possession financing was prepared on an emergency basis with very little lead time (less than 10 days) to plan and negotiate.  Once requested by the Company to plan for potential debtor-in-possession financing, Lazard and the Company evaluated financing options based on the estimated funding requirements.  Due to the Company's financial position and the complexity of its prepetition capital structure, the Debtors found limited options to secure an adequate amount of financing on an expedited basis.  Based on my experience, unsecured financing would not be a viable option due to the amount of existing secured debt relative to the Company's financial position.  Similarly, it would be extremely difficult to obtain committed stand-alone junior secured financing in an amount necessary to fund these cases.  Two other options possibly available to the Company that would not have included the Prepetition First Lien Lenders were (1) obtaining

4

priming financing without the support of existing lenders, or (2) a refinancing / "take-out" of the Prepetition ABL Facility with incremental availability.  Neither of these options are advisable under the circumstances, in my opinion.  First, entering into a priming dispute can cause significant friction with and/or demands for adequate protection from both the first and second lien lenders.  The Debtors concluded, taking into account advice from us and their other advisors, that commencing these chapter 11 cases with a priming dispute and litigation over adequate protection, was not an advisable risk for the Debtors to take.  Second, a take-out of a facility of this magnitude was simply not feasible given the timeframe within which the Company had to find postpetition financing and the anticipated cost of such a financing.  Given these challenges and given the funding need in the interim period, the Debtors concluded that approaching the Prepetition First Lien Lenders about a first-lien debtor-in-possession financing would be the most efficient and cost effective way to proceed on an interim basis.

9. As explained in the Meghji Declaration, the Company and its advisors analyzed the funding requirements necessary for debtor-in-possession financing based on management's forecast, and determined that the liquidity that would be available to the Company under an expanded advance rate under the DIP ABL Facility would be adequate for the first few weeks of the cases.  However, the amounts available under such a facility would need to be supplemented with additional funding to continue operations for the duration of the bankruptcy.  As such, additional financing beyond a typical asset based lending facility is required.

10. In light of the foregoing, the Company focused its immediate efforts on negotiating the best possible debtor-in-possession financing facility with its Prepetition First Lien Lenders—Bank of America, N.A., Wells Fargo Bank, National Association, and Citibank N.A. (collectively, the "**DIP ABL Lenders**")—to provide the Debtors with necessary debtor-in-

possession financing required to help fund these chapter 11 cases and ensure there was adequate financing available at the outset of these cases.

11. To provide the Company and the DIP ABL Lenders confidence that there would be financing available to support the Debtors' expected cash needs for the chapter 11 cases, the Debtors and their advisors contemporaneously engaged in negotiations for a junior debtor-in-possession financing facility with ESL Investment, Inc. ("**ESL**"). The Company and its advisors determined ESL was the most likely financing source for junior financing on an expedited basis due to their existing understanding of the capital structure, knowledge of the underlying collateral, and history as a capital provider to the Company. The Debtors will submit a supplemental declaration in support of any financing with ESL or any other funding source prior to any hearing to approve such financings.

## **DIP ABL Financing Has Been Negotiated at Arms-Length and in Good Faith**

12. Since engaging with creditors on potential debtor-in-possession financing on Tuesday, October 9, 2018, the Debtors and their advisors have engaged in exhaustive, nearly non-stop negotiations with the Prepetition First Lien Lenders, ESL, and their advisors at Weil's offices regarding the proposed senior and junior debtor-in-possession financings, potential sale transactions, and timelines and other issues.

13. The DIP ABL Lenders and the Debtors exchanged multiple drafts of the term sheets and debtor-in-possession documents with respect to the proposed DIP ABL Facility and conducted hours of intense face to face negotiations at the Weil offices. Skadden, Arps, Slate, Meagher & Flom LLP, as counsel for the DIP ABL Lenders, Berkeley Research Group, as financial advisor to the DIP ABL Lenders, Weil, as counsel for the Debtors, M-III Partners, LP, as financial advisor to the Debtors, and Lazard were fully engaged, exchanging models and

significant diligence information, participating in countless conference calls, and attending continual in-person meetings and negotiations to work towards finalizing debtor-in-possession financing terms. This process involved evaluation and testing of a DIP Budget by the Debtors' and the DIP ABL Lenders' financial advisor. In addition, certain of the above parties from both the Debtors' and lenders' sides traveled to the Debtors' headquarters to facilitate the provision of information necessary for funding. The negotiations culminated in the terms of the proposed DIP ABL Facility, the approval of which is sought on an interim basis in the DIP Motion. Through these negotiations, the Debtors materially improved the terms of the financing as compared to those originally offered. Furthermore, based upon my observations and involvement in the negotiation of the DIP financing in this matter, the negotiations with potential lenders were conducted at arm's length and in good faith.

14. Additionally, based on my experience and knowledge of the market, the fees and expenses in the proposed DIP ABL Facility are reasonable under the circumstances, and, on the whole, the DIP ABL Facility is the best currently available option available to the Debtors on an interim basis.[3]

---

[3] The Debtors intend to conduct postpetition marketing of the Debtors' ABL DIP Financing and the ESL junior financing, as well as seek other DIP Financing, on a postpetition basis.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 15, 2018
New York, New York

*/s/ Brandon Aebersold*
Brandon Aebersold
Managing Director
Lazard Frères & Co. LLC