WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                            :
                                                 :       **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,         :
                                                 :       Case No. 18-_____ (RDD)
                                                 :
        Debtors.[1]                              :       (Joint Administration Requested)
------------------------------------------------------------x

## DECLARATION OF MOHSIN Y. MEGHJI IN SUPPORT OF DEBTORS' MOTION FOR AUTHORITY TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, (C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES AND (D) SCHEDULE SECOND INTERIM HEARING AND FINAL HEARING

Pursuant to 28 U.S.C. § 1746, I, Mohsin Y. Meghji, hereby declare as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616);

1.  My name is Mohsin Y. Meghji. I am over the age of 18 and competent to testify.

2.  I am a Managing Director at M-III Partners, LP ("**M-III**"), the proposed financial advisor to Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Sears**"). I have been working closely with the Company since 2016, and was appointed the Company's Chief Restructuring Officer ("**CRO**") effective October 3, 2018. As CRO, I report to an independent committee of the Sears Board of Directors (the "**Restructuring Committee**") and am responsible for carrying out the Debtors' restructuring strategy and objectives described herein.

3.  I submit this Declaration in support of the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, (D), Obtain Approval of an Adequate Protection Stipulation, and (E) Schedule Second Interim Hearing and Final Hearing* (the "**DIP Motion**") and the financing package proposed therein (the "**DIP Financing**").[2]

4.  Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management, other members of the M-III team, and the Debtors' other advisors, and my review of relevant

---

StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the DIP Motion.

documents and/or my opinion based upon my experience. If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

### Background and Qualifications

5. I am a Managing Partner at M-III Partners, LP, which I launched in 2015. I have approximately 25 years of restructuring experience across a wide range of industries. Prior to starting M-III, I served as Executive Vice President & Head of Strategy at Springleaf Holdings, LLC as well as CEO of its captive insurance companies. I also served as Partner in the Global Corporate Finance Group at Arthur Andersen & Co. in their London, Toronto and New York offices. I am a graduate of the Schulich School of Business, York University, Canada.

6. M-III is a corporate advisory firm that specializes in financial and operational restructurings, operational improvement, and business management across a broad range of industries. Through its restructuring business, M-III works with clients to develop and execute restructuring strategies that advance the interests of M-III's clients. This business deals, among other things, with both in-court and out-of-court restructuring, developing business plans, financial modelling, and debt reorganization. M-III professionals bring a broad range of experience to the restructuring practice, and have represented debtors, creditors, and equity holders in large, complex restructurings and bankruptcies.

### M-III's Retention

7. Prior to the Commencement Date, the Debtors engaged M-III to act as the Debtors' financial advisor in connection with their review of strategic alternatives to address their capital structure. The M-III team under my supervision has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to this case

3

and has become well acquainted with the Debtors' capital structure, liquidity needs, and business operations.

## The Debtor's Need for DIP Financing

8. I have reviewed the Motion, and it is my belief that the relief sought therein as it relates to the DIP ABL Facility is essential to ensure the uninterrupted operation of the Debtors' business and the success of the Debtors' chapter 11 case and is necessary to avoid immediate and irreparable harm to the Debtors' estates.

9. The Debtors are in need of an immediate infusion of liquidity. As discussed in greater detail in the Riecker Declaration, the Debtors enter these chapter 11 cases in dire financial straits. Years of declining sales caused by adverse market conditions and competitive pressures from online retailers combined with high debt burden have resulted in a severe liquidity crisis. Despite the Company's efforts to monetize assets, improve operational efficiencies and reduce overhead, Sears has not been able to stop the decline in its sales, EBITDA and overall cash position. In addition, the Company's substantial debt burden resulted in an annualized cash interest expense of approximately $440 million. This combination of operating pressures and a high level of interest expense resulting from an unsustainable capital structure has pressured the company's cash flow and led to a liquidity strain that ultimately precipitated the filing of these cases.

10. Accordingly, the Debtors decided to seek chapter 11 protection to take advantage of the relief afforded by the automatic stay and obtain debtor in possession financing as they seek to execute their restructuring objectives, namely: (i) execute GOB Sales and Non-Core Asset Sales; (ii) evaluate the "bubble" stores; and (iii) try to secure a going-concern sale or a reorganization involving a core group of stores.

11. Prior to the Commencement Date, the Company's primary source of working capital was the Prepetition ABL Revolver under the First Lien Debt Facility, which has been and remains subject to a borrowing base formula.  In addition, as further described in the Riecker Declaration, the Company has been monetizing certain assets, such as real estate and intellectual property, to obtain additional liquidity.  The Company, in consultation with M-III and other advisors, has determined that the cash on hand and any remaining availability under the ABL Revolver will not be sufficient to support the Debtors' efforts in these chapter 11 cases.

12. The Debtors anticipate that one-time chapter 11 expenses, primarily the payment of amounts sought pursuant to the first-day relief, and increased demands by vendors will increase the strains on the Debtors' free cash during the initial stages of these chapter 11 cases.  Furthermore, as the Debtors commence going-out-of-business-sales (the "**GOB Sales**") and sales of non-core assets under section 363 of the Bankruptcy Code (the "**Non-Core Asset Sales**"), the proceeds of such sales will lag behind the timing of the Debtors' ordinary course business expenses and other administrative expenses in these chapter 11 cases.  At the same time, the savings from the planned store closures will not materialize immediately because the Debtors will need to keep their stores open while the GOB Sales are ongoing.   Furthermore, as the GOB Sales progress, the reduction of availability under the borrowing base formula will result in a lower borrowing base, which is another reason why the additional liquidity available under the DIP ABL Facility—which provides for a higher availability formula in comparison to the prepetition First Lien Credit Facility—is necessary.

13.  During the first four weeks following the Commencement Date, the Debtors' available cash will be substantially negative without access to the proceeds under the proposed DIP ABL Facility.  Therefore, I believe that without access to interim funding under

5

the DIP ABL Facility, the Debtors' ability to continue their operations during the first weeks of these cases would be in severe jeopardy. In addition, as described in the Motion, the Debtors intend to seek interim authority of a Junior DIP Financing within two (2) weeks, which additional financing will be necessary to support the Debtors' liquidity needs.[3]

    14. I believe that without a prompt grant of authority to obtain financing on the terms proposed under the DIP ABL Facility, the Debtors will be unable to satisfy trade payables incurred in the ordinary course of business, service their debt, pay rent, or administer these chapter 11 cases, which will cause immediate and irreparable harm to the value of the Debtors' estates. Conversely, immediate access to the financing requested in the Motion will permit the Debtors to stabilize and maintain their operations, and will help restore the confidence of the Company's vendors, customers, employees, and other stakeholders at this critical stage of the Debtors' restructuring.

    15. Based on the Budget and other information made available to me, the liquidity provided under the proposed DIP ABL Facility will enable the Debtors to execute their immediate restructuring objectives. Further, absent the DIP ABL Facility, the Debtors will not have sufficient liquidity to operate their business as a going concern and will likely risk liquidation. I believe that it is essential that the Debtors have committed interim postpetition financing at the outset of these chapter 11 cases to retain the confidence of the Debtors' customers, employees, and vendors as the Debtors explore their restructuring options. As such, in my opinion, the approval of the DIP ABL Facility is necessary and appropriate under the circumstances.

---

[3] The Debtors intend to file a supplemental declaration in support of the Junior DIP Financing.

## Conclusion

16. For the reasons set forth herein and in the Motion, I believe that obtaining financing in accordance with the terms of the proposed DIP ABL Facility is absolutely essential to the Debtors' ability to minimize disruptions and avoid immediate and irreparable harm to their estates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  October 15, 2018
         New York, New York

*/s/* Mohsin Y. Meghji
Mohsin Y. Meghji
Managing Partner
M-III Partners, LP

WEIL:\96758865\6\73219.0006