WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
In re                                                        :
                                                             :       **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                    :
                                                             :       **Case No. 18-_____ (RDD)**
                                                             :
                        **Debtors.**[1]                      :       **(Joint Administration Pending)**
----------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**MOTION OF DEBTORS FOR AUTHORITY TO (I) MAINTAIN CERTAIN TRUST FUND PROGRAMS, (II) RELEASE CERTAIN FUNDS HELD IN TRUST, AND (III) CONTINUE TO PERFORM AND HONOR RELATED OBLIGATIONS**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent in support of this motion (the "**Motion**"):

**Background**

1.     On the date hereof (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on the date hereof (the "**Riecker Declaration**"),[2] which

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration.

WEIL:\96759289\1\73219.0006

has been filed with the Court contemporaneously herewith and is incorporated herein by reference.

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Relief Requested

5.      By this Motion, the Debtors request authority pursuant to sections 105(a), 363, and 541 of the Bankruptcy Code, but not direction, to continue to perform and honor obligations under arising under programs or other arrangements requiring the Debtors to release certain funds held in trust for the benefit and on behalf of non-Debtor third parties (collectively, the "**Trust Fund Programs**"; the funds arising or collected under the Trust Fund Programs, the "**Trust Funds**"; and the non-Debtor third parties receiving the Trust Funds, the "**Trust Fund Counterparties**").

6.      A proposed form of order granting the relief requested in the Motion on a final basis is attached hereto as **Exhibit A**.

## The Trust Fund Programs

7.      In the ordinary course of their business, the Debtors engage in certain Trust Fund Programs, which include marketing and sales practices and programs designed to, among other things, offer conveniences to, and loyalty among, their existing customers, attract new customers, and produce alternative streams of income.  For example, among other things, the Debtors sell lottery tickets and third-party retail gift cards, and also offer onsite money

WEIL:\96759289\1\73219.0006

transfer services, and depositories for coins and bottles as a part of these Trust Fund Programs. The Trust Fund Programs also include certain other beneficial relationships with vendors, franchisees, or suppliers that allow the Debtors to receive additional streams of income by way of commission payments.  It is important for the Debtors to honor their obligations in connection with such Trust Fund Programs to preserve their reputational integrity and continue to attract existing and new customers to their stores.  The categories of certain of the various Trust Fund Programs are discussed in further detail below.

A.      **State Lottery Products**

8.      The Debtors' Sears and Kmart stores located in thirty-nine states sell lottery tickets and similar games of chance sponsored by the various states (the "**Lottery Programs**").  The Lottery Programs consist of (i) games of chance purchased by the Debtors from the states at face value, such as instant scratch-offs, and (ii) lottery products sold by the Debtors, in their capacities as designated vendors under which the lottery drawings are conducted by a state agency, such as in the case of Mega Millions or Powerball.  The Lottery Programs help attract new customers, retain current customers, and generate income for the Debtors.

9.      Pursuant to the various agreements governing the Lottery Programs, the Debtors sell the products available in the Lottery Programs to their customers and remit the funds collected (the "**Lottery Proceeds**") to the appropriate state agencies (each, a "**Lottery Agency**" and, collectively the "**Lottery Agencies**") on a regular basis.  In accordance with applicable state laws and regulations and/or the terms and conditions of the agreements governing the Lottery Programs, the Debtors deposit the Lottery Proceeds for, and on behalf of, the Lottery Agencies in specially designated checking accounts where such amounts are made

4

available to the Lottery Agencies by electronic funds transfers.  In exchange for participating in the Lottery Programs and serving as a vendor for the various Lottery Agencies, the Debtors receive a commission from each contracting Lottery Agency, the amount of which varies by state.  For example, the Debtors receive a 5% percent commission on lottery sales conducted in their Georgia and Delaware stores.

10.     The Debtors estimate that, as of the Commencement Date, they owe the various state Lottery Agencies approximately $200,000 in Lottery Proceeds on account of lottery products sold prior to the Commencement Date that have not yet been transferred to the various Lottery Agencies.  Pursuant to the laws and contracts governing the Lottery Programs, the Lottery Proceeds constitute property of the Lottery Agencies at all times, including while in the Debtors' possession, and such amounts are held in trust by the Debtors for and on behalf of the Lottery Agencies.  Accordingly, the Debtors seek authority to honor their prepetition contractual obligations and transfer any prepetition Lottery Proceeds currently being held in trust to the applicable Lottery Agency identified by the Debtors after reconciling their accounts.[3]

## B.     Sears Home & Business Franchises

11.     Through the Debtors' Home & Business Franchise segment, the Debtors provide individuals (the "**Franchisees**") with the opportunity to open and operate an independent home services franchise under the Debtors' banner (the "**Franchises**") with five separate models: carpet and upholstery cleaning, air duct cleaning, garage solutions, maid services, and handyman solutions.  Pursuant to agreements with the individual Franchisees (the "**Franchise**

---

[3] In some states, the Debtors also cash out certain winning lottery tickets, up to a maximum amount. The Debtors are separately seeking authority honor certain winning lottery tickets presented by their customers in the *Motion of Debtors For Authority To (I) Maintain And Administer Prepetition Customer Programs, Promotions, And Practices, And (II) Pay And Honor Related Prepetition Obligations* (the "**Customer Programs Motion**"), filed contemporaneously herewith.

WEIL:\96759289\1\73219.0006

**Agreements**") the Debtors support their independent Franchisees by providing marketing materials, branding, training, guidance and support services and, in exchange, each of the Franchisees pays to the Debtors an initial franchise fee and certain royalties. Apart from certain royalties paid to the Debtors, the Franchisee is entitled to the revenue it collects from customers.

12. As part of their support services, the Debtors provide credit card processing and payment support to the Franchises. When a Franchisee performs a service for a customer, it collects the revenue from the Franchisee's customer (the "**Franchise Funds**") using a point of sale device provided by the Debtors. The Franchise Funds are then processed through the Debtors' cash management system and placed into a segregated account. The Debtors typically then remit the Franchise Funds back to the Franchisees after deducting a royalty fee.

13. As of the Commencement Date, the Debtors held approximately $1 million in Franchise Funds in a segregated account on account of services that the Franchisees performed for their customers. The Debtors' only interest in the Franchise Funds is their right in certain royalties. Without the authority to remit the Franchise Funds, the Debtors risk irreparably harming their relationships with their Franchisees, many of whom are small business owners operating under the Debtors' banner. Accordingly, the Debtors seek authority to honor the Franchise Agreements, collect any royalty amounts due, and remit the Franchise Funds to the Franchisees in the ordinary course of business.

C.    **Third-Party Retail Gift Cards**

14. Pursuant to the Amended and Restated Blackhawk Network Alliance Partners Agreement entered into by and between the Debtors and Blackhawk Network, Inc., ("**Blackhawk**"), effective as of February 1, 2013 (as subsequently amended or modified, the "**Blackhawk Agreement**"), the Debtors sell gift cards for third-parties in a variety of

6

denominations (collectively, the "**Gift Cards**").[4]  Subject to certain restrictions, the Gift Cards are generally issued by the Debtors in exchange for cash and are redeemable by their holders in exchange for merchandise sold by other retailers.  For example, the Debtors sell Gift Cards in their stores for third-parties such as Barnes & Noble booksellers and Olive Garden restaurants. The Debtors also sell Gift Cards for telecom service providers such as AT&T and T-Mobile, and prepaid cards from American Express, Mastercard, and Visa.

15.     Pursuant to the Blackhawk Agreement, the Debtors turn over the proceeds from the sale of Gift Cards (the "**Gift Card Proceeds**") to Blackhawk, in its capacity as an intermediary between the Debtors and the applicable third-parties.  The Debtors receive a commission for each Gift Card sold under the Blackhawk Agreement, the amount of which varies by the third-party and based on the value of the Gift Card.

16.     At all times that the Debtors are in possession of Gift Card Proceeds, the Blackhawk Agreement expressly provides that such amounts remain the property of Blackhawk and must be held in trust for the benefit of Blackhawk.  The Debtors estimate that, as of the Commencement Date, they owe Blackhawk approximately $368,000 in Gift Card Proceeds on account of Gift Cards sold prior to the Commencement Date.  The Debtors seek authority to honor their contractual obligations and release to Blackhawk any Gift Card Proceeds identified by the Debtors after reconciling their accounts, whether attributable to the period before or after the Commencement Date.

---

[4] The Debtors also sell gift cards and gift certificates for their customers to use in the Debtors' stores and online that can be redeemed for merchandise at a later date.  Such gift cards are not the subject of this Motion or the Blackhawk Agreement and are addressed in the Customer Programs Motion filed contemporaneously herewith.

WEIL:\96759289\1\73219.0006

## D.     Western Union Financial Services

17.     Many of the Debtors' stores offer their customers money transfer, money order, and bill payment services through Western Union Financial Services Inc. ("**Western Union**"), pursuant to that certain Western Union North America Agency Agreement, dated October 30, 2016 (as subsequently amended or modified, the "**WUNA Agreement**"), between the Debtors and Western Union.  The WUNA Agreement sets forth the terms and conditions of the financial services provided by the Debtors *via* Western Union.

### (i)     Western Union Money Transfers

18.     Pursuant to the WUNA Agreement, the Debtors are authorized to receive funds from their customers for transmission and disbursement to various international and domestic locations through the Western Union system.  The WUNA Agreement also authorizes the Debtors to provide money transfer services to issuers of prepaid debit cards and other forms of stored-value cards.  To effectuate an electronic money transfer, a customer pays the principal amount of the funds to be wired to a third party plus a fee to the Debtors' in-store personnel (the "**Wire Transfer Funds**").  The Debtors' in-store personnel inform Western Union of the amount of the Wire Transfer, the identity of the transferee of the Wire Transfer, and the pick-up location, and Western Union makes the requested amount available to the transferee.  Thereafter, the Debtors' in-store personnel deposit the Wire Transfer Funds into the respective store's depository bank account on a daily basis.  Pursuant to the WUNA Agreement, the Debtors are required to hold Wire Transfer Funds in trust for the benefit of Western Union.

19.     In consideration of, and subject to, the Debtors' fulfilling their obligations under the WUNA Agreement, Western Union pays the Debtors a monthly fee and commission based on the Debtors' performance.  The Debtors estimate that as of the Commencement Date,

WEIL:\96759289\1\73219.0006

they owe Western Union $460,000 in Wire Transfer Funds.  The Debtors seek authority to honor their contractual obligations and release to Western Union any Wire Transfer Funds identified by the Debtors after reconciling their accounts, whether collected prior or subsequent to the Commencement Date.

   **(ii)  Money Orders**

     20.  The WUNA Agreement also provides that the Debtors' customers may purchase single money orders from the Debtors' stores for cash in a face amount of up to $1,000 at the Debtors' stores.  To obtain a money order, the customer pays the face amount of the money order (plus a fee) (the "**Money Order Funds**") to the Debtors' in-store personnel, who, in turn, deposit the Money Order Funds into the respective store's depository bank account on a daily basis.  Pursuant to the WUNA Agreement, the Debtors are required to hold Money Order Funds in trust for the benefit of Western Union.  Each week, the Debtors transfer all Money Order Funds collected from the previous week's sales into a depository bank account designated by Western Union for Money Order Funds.  In exchange for these services, Western Union pays the Debtors a rebate based on each money order sold by the Debtors.  The Debtors estimate that, as of the Commencement Date, they owe Western Union approximately $445,000 in Money Order Funds, and, therefore, seek authority to honor their prepetition contractual obligations and release to Western Union the Money Order Funds, whether collected prior or subsequent to the Commencement Date.

**E.  Coin Deposit Arrangement**

     21.  The Debtors are party to a deposit arrangement with Coinstar, Inc. ("**Coinstar**"), a supplier of automated coin counting machines (the "**Coinstar Units**").  Pursuant to the Coinstar Kiosk Installation Agreement, entered into by the Debtors and Coinstar on

September 1, 2014, Coinstar has agreed to provide Coinstar Units in the Debtors' Kmart stores (the "**Coin Deposit Arrangement**").  The Coin Deposit Arrangement represents a way for the Debtors to generate a regular cash flow without holding significant inventory and is a means of driving store traffic.

22.    Under the Coin Deposit Arrangement, the Debtors' customers deposit loose coins into a Coinstar Unit (the "**Coin Deposit Proceeds**") and the customer receives a cash voucher (the "**Coin Deposit Voucher**") for which they have the option of (i) applying the Coin Deposit Voucher amount against the amounts due from the customer for purchases made at the store, (ii) receiving paper currency from the Debtors at the checkout register, or (iii) making a charitable donation in the face amount of the Coin Deposit Voucher.  Coinstar reimburses the Debtors for the amounts paid under the Coin Deposit Voucher and also pays the Debtors a 1% commission.  The Debtors never obtain title to the Coinstar Units or the Coin Deposit Proceeds contained therein.  Indeed, the Coin Deposit Arrangement specifically provides that Coinstar retains all right, title and interest in and to any and all Coinstar Units installed at a Debtors' store and in and to any and all coins deposited in the Coinstar Units.

### The Relief Requested Should Be Granted

23.    The Debtors believe that the Trust Funds, which are required to be collected from third parties and held in trust for payment to the non-Debtor entities referenced herein, do not constitute property of the Debtors' estates.  Section 541(b) of the Bankruptcy Code provides that property of the estate does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor."  11 U.S.C. § 541(b)(1); *see, e.g.*, *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) (finding that under bankruptcy law, a debtor "does not own an equitable interest in property he holds in trust for another"); *United States v. Whiting*

WEIL:\96759289\1\73219.0006

*Pools*, 462 U.S. 198, 205 n.10 (1983) (finding that the debtor or bankruptcy trustee has no real interest in trust funds); *see also In re The 1031 Tax Grp., LLC*, 439 B.R. 47, 64 n.4 (Bankr. S.D.N.Y. 2010) ("The Court agrees that funds held in trust by a debtor for the benefit of a third party are not funds of the estate."); *In re Appalachian Oil Co.*, 2012 BANKR. LEXIS 1711 (Bankr. E.D. Tenn. 2012) (holding that money collected in the sale of lottery tickets by a debtor that operated convenience stores was not property of the estate). Accordingly, the Debtors do not have an equitable interest in any of the Trust Funds and such funds are not available for the satisfaction of claims of the Debtors' creditors.

24.    The ability to continue operating the Trust Fund Programs on an uninterrupted basis is an important component of the Debtors' retail operations. Not only do the Trust Fund Programs earn the Debtors various commissions, but they also serve to attract new and existing customers into the Debtors' stores. The Debtors' failure to maintain the Trust Fund Programs and honor their obligations thereunder could drive customers away at a time when customer loyalty is paramount for the Debtors' business. Thus, continuing to offer the Trust Fund Programs is in the best interests of the Debtors' estates and their economic stakeholders. Moreover, given that the Trust Funds do not constitute property of the Debtors' estates, no creditor or other party in interest will be prejudiced by the Debtors' remitting Trust Funds to the applicable Trust Fund Counterparties as described herein.

25.    The Bankruptcy Code does not prohibit a debtor from paying trust fund and consignment obligations, and the proposed relief will not prejudice the rights of general unsecured creditors or other parties in interest. Relief similar to that requested herein has been granted in other chapter 11 cases. *See, e.g.*, *In re Central Grocers*, Case No. 17-10993 (Bankr. D. Del. May 5, 2017); *The Great Atl. & Pac. Tea Co. Inc.*, Case No. 15-23007 (Bankr. S.D.N.Y.

WEIL:\96759289\1\73219.0006

July 21, 2015); *In re Git-N-Go, Inc.*, Case No. 04-10509 (Bankr. N.D. Okla. April 26, 2004); *In re FiberMark, Inc.*, Case No. 04-10463 (Bankr. D. Vt. April 27, 2004); *In re Penn Traffic Co.*, Case No. 03-22945 (Bankr. S.D.N.Y. May 30, 2003); *In re Gentek, Inc.*, Case No. 02-12986 (Bankr. D. Del. Oct. 17, 2002); *In re Enron Corp.*, No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001).  The Debtors submit that the current circumstances warrant similar relief in their Chapter 11 cases.

26.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers).

27.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re*

*CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

28.     The Debtors have sufficient funds to pay the Trust Funds in the ordinary course of business.  In addition, under the Debtors' cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Trust Funds and Trust Fund Programs.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtors have sufficient funds standing to their credit with such financial institution, and such financial institution may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

WEIL:\96759289\1\73219.0006

29.     For the reasons set forth herein, authorizing the Debtors to maintain their Trust Fund Programs, including honoring prepetition obligations arising thereunder, is appropriate under the circumstances, and in the best interests of the Debtors' estates.

### Reservation of Rights

30.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or, validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Have Satisfied Bankruptcy Rule 6003(b)

31.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As set forth above, the Debtors' ability to maintain the Trust Fund Programs and continue honoring their obligations thereunder is essential to mitigate unnecessary disruption to the Debtors' operations on account of the commencement of these chapter 11 cases and to prevent potentially irreparable damage to

14

the Debtors' goodwill. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

**Compliance with Bankruptcy Rule 6004(a)**
**and Waiver of Bankruptcy Rule 6004(h)**

32.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Riecker Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

**Notice**

33.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iv) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (v) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the IP/Ground Lease Term Loan, and the Consolidated Secured Loan Facility; (vi) counsel for Computershare Trust Company N.A., as indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vii) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes; (viii) counsel for The Bank of New York Mellon

WEIL:\96759289\1\73219.0006

Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (ix) the Pension Benefit Guaranty Corporation; (x) the Unions; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; (xiii) the United States Attorney's Office for the Southern District of New York; and (xiv) Trust Fund Counterparties. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

34. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:    October 15, 2018
          New York, New York

/s/ Ray C. Schrock P.C.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

WEIL:\96759289\1\73219.0006

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-_____ (RDD)** |
| | : | |
| Debtors.[1] | : | **(Joint Administered)** |

---------------------------------------------------------------x

**ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN CERTAIN TRUST FUND**
**PROGRAMS, (II) RELEASE CERTAIN FUNDS HELD IN TRUST, AND**
**(III) CONTINUE TO PERFORM AND HONOR RELATED OBLIGATIONS**

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 541 of title 11 of the United

States Code (the "**Bankruptcy Code**"), for entry of an order authorizing, but not directing, (i)

authorizing the Debtors to continue to perform and honor obligations under programs or other

arrangements requiring the Debtors to release certain funds held in trust for the benefit and on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

behalf of non-Debtor third parties, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been given as provided in the Motion; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on October 15, 2018 (the "**Hearing**"); and upon the Riecker Declaration, filed contemporaneously with the Motion, the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, provides a net benefit to the Debtors and their estates after taking into account the Bankruptcy Code's priority scheme, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

#### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363, and 541 of the Bankruptcy Code, to continue to perform and honor obligations, in the

2

ordinary course of business, arising under the Trust Fund Programs requiring the Debtors to release the Trust Funds to applicable Trust Fund Counterparties.

3.      Entry of this Order is without prejudice to the right of the Debtors to contest the amount of the Trust Funds due and owing the various Trust Fund Counterparties, whether or not paid pursuant to this Order, or to seek a refund of the same.

4.      Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

5.      To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

6.      Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors;  (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

WEIL:\96759289\1\73219.0006

7.      Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by the Trust Fund Counterparties or any third party.

8.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

9.      Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

12.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2018
       White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

4