WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-_____ (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Joint Administration Pending)** |

----------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**MOTION OF DEBTORS FOR AUTHORITY TO (I) MAINTAIN AND ADMINISTER
PREPETITION CUSTOMER PROGRAMS, PROMOTIONS, AND PRACTICES,
AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent in support of this motion (the "**Motion**"):

**Background**

1.      On the date hereof (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").   The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern*

2

*District of New York*, sworn to on the date hereof (the "**Riecker Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated herein by reference.

## Jurisdiction

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.     By this Motion, the Debtors request authority, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, but not direction, to (a) maintain and administer prepetition customer programs, promotions, and practices, and (b) to pay and otherwise honor their obligations to or for the benefit of customers relating thereto, whether arising prior to or after the Commencement Date.

6.     A proposed form of order granting the relief requested in the Motion on a final basis is attached hereto as **Exhibit A**.

## The Debtors' Customer Programs

7.     The Debtors' business depends upon the loyalty of its customers.  To maximize customer loyalty, the Debtors have maintained and followed, in the ordinary course of business, the practices and programs described herein (collectively, the "**Customer Programs**") to reward and provide incentives to existing customers and to attract new customers to the Debtors' stores and websites. Without the ability to continue the Customer Programs and to satisfy prepetition

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration.

WEIL:\96759496\1\73219.0006

obligations in connection therewith, the Debtors risk losing market share and jeopardize the value of their businesses.  The Customer Programs are as follows:

**A.      Return and Exchange Policies**

8.      Consistent with industry practice and to accommodate customers' needs, the Debtors maintain return, refund, exchange, price-guarantee, and rain-check policies with respect to both cash and credit purchases (collectively, the "**Return and Exchange Policies**").  The Return and Exchange Policies assure the Debtors' customers that they will be "made whole" if merchandise is inadequate, damaged or defective, incorrectly processed, or unavailable.  By this Motion, the Debtors seek authorization to honor the Return and Exchange Policies with respect to merchandise purchased prior to the Commencement Date.[3]

9.      When customers return merchandise to the Debtors that was purchased by a debit or credit card or dispute charges, that is handled directly with the Debtors' credit and debit card processors, including Citibank, N.A., PayPal, American Express and First Data (each, a "**Payment Processing Company**").  The Debtors typically are obligated to refund the applicable Payment Processing Company the purchase price of the returned merchandise (collectively "**Chargebacks**").  As described in the *Motion of Debtors for Authority to (I) Continue Using Existing Cash Management System, Bank Accounts and Business Forms*, *(II) Implement Ordinary Course Changes to Cash Management System*, *(III) Continue Intercompany Transactions, and (IV) Provide Administrative Expense Priority for Postpetition Intercompany Claims and Related Relief* (the "**Cash Management Motion**"), Chargebacks are generally satisfied by netting the amount charged back against pending payments owed to the Debtors by a Payment Processing

---

[3] Pursuant to the Cash Management Motion, the Debtors have also requested authority to continue processing associated chargebacks and refunds through its cash management system and payment processors.

WEIL:\96759496\1\73219.0006

Company or satisfied by amounts held in reserve. It is possible that certain Chargebacks incurred by the Debtors immediately prior to the Commencement Date may not have been fully satisfied.

10.     Maintaining the use of credit cards and other non-cash payment mechanisms (the "**Non-Cash Payments**") is essential to the continuing operation of the Debtors because the majority of the Debtors' sales are made using Non-Cash Payments. To ensure that there is no disruption to the return and exchange experience with customers, the Debtors have sought authority in the Cash Management Motion to continue their arrangements with the Payment Processing Companies to net settle and hereby seek authority to continue their Return and Exchange Polices, in each case, regardless of the whether the return occurred before or after the Commencement Date.

**B.      Sales Promotions**

11.     From time to time, the Debtors conduct sales promotions at their stores as well as online (the "**Sales Promotions**").   The Sales Promotions include promotional markdowns, coupons, deals, points offers, credit card offers, blue light specials and other offers. By this Motion, the Debtors seek authorization to honor the Sales Promotions.

**C.      Coupon Program**

12.     The Debtors maintain a coupon redemption program pursuant to which they honor (a) certain third-party coupons distributed to the Debtors' customers and (b) the Debtors' own coupons that are included in advertising circulars or distributed in the Debtors' stores or online (collectively, the "**Coupons**").[4]  When a customer redeems a valid third-party Coupon, the Debtors deduct the amount of the Coupon (or such other deduction as may be advertised) from the relevant

---

[4] For avoidance of doubt, the Coupons include any coupons or vouchers issued by Groupon Inc. for use in the Debtors' stores or on their websites.

item's purchase price.   Third-party Coupons are then processed and remitted to a third-party intermediary, who in turn collects the amounts from the various vendors and pays the Debtors the value of the Coupons collected.   To preserve the goodwill of their customer base, the Debtors seek authorization to honor the Coupons issued prior to the Commencement Date in a manner consistent with their ordinary business practices.

**D.**     **Gift Card Program**

13.     The Debtors maintain a program by which their customers can purchase gift cards from the Debtors' stores and online that can be redeemed for merchandise at a later date (the "**Gift Card Program**").   As of July 2018, the Debtors estimated that the aggregate amount outstanding for issued gift cards was approximately $460 million.   The Debtors believe that any customer claims arising under the Gift Card Program are entitled to priority over other general unsecured claims to the extent provided in section 507(a)(7) of the Bankruptcy Code.   By this Motion, the Debtors seek authorization to maintain the Gift Card Program and to honor all gift cards purchased by customers prior to the Commencement Date.

**E.**     **Shop Your Way Program**

14.     The Debtors also offer their customers an opportunity to enroll in a loyalty reward program that entitles customers to receive certain benefits based on the amount they spend with the Debtors and certain partners (the "**Shop Your Way Program**"). The Shop Your Way Program rewards the Debtors' most loyal customers with redeemable points (similar to frequent flier miles or credit card points), specialty services, and exclusive partnerships. The Shop Your Way Program is the Debtors' core sales initiative that focuses on customer retention and improving sales.

15.     As of the Commencement Date, there were approximately 144 million customers enrolled in the Shop Your Way Program (the "**Members**"), approximately 29 million of whom

6

have made one or more purchases at Sears or Kmart stores within the last twelve (12) months.

Members of the Shop Your Way Program earn a point for each $.10 they spend in the Debtors'

stores. Members are also eligible to receive additional points through promotional offers that either

give a Member additional points or provide the Member with a specific multiple of points based

on the amount of their purchase (*i.e.* extra points or double points). The points may generally be

spent in any of the Debtors' stores or online on the Debtors' websites. Unless stated otherwise,

earned points are valid for at least one full year before expiring on the next calendar quarter date

(March 31, June 30, September 30, and December 31). As of the Commencement Date, there were

approximately 251 million Shop Your Way points outstanding.

16.     By this Motion, the Debtors seek authorization to maintain the Shop Your Way

Program and to continue to honor rewards associated with the Shop Your Way Program.

**F.      Citibank Credit Card Program**

17.     Since 2003, the Debtors have maintained an exclusive affinity credit card program

(the "**Citibank Credit Card Program**") with Citibank, N.A. ("**Citibank**") based upon various

co-branded rewards credit cards and proprietary credit cards and including, credit cards through

which the Debtors' customers can earn rewards under the Shop Your Way Program.  The Citibank

Credit Card Program is governed by a credit card program agreement that has been amended and/or

restated from time to time (the "**Citibank Credit Card Program Agreement**").

18.     Under the Citibank Credit Card Program Agreement, Citibank offers, issues and

services credit cards accepted at the Debtors' stores and elsewhere. Citibank and the Debtors

market those credit cards to the Debtors' customers, and Citibank pays the Debtors, on a periodic

basis, certain fees for, among other things, new cardmember signups, the right of cardholders to

accrue points under various rewards programs, and the Debtors' role in marketing the credit cards.

7

Citibank also provides merchant banking services that support the Citibank Credit Card Program, and holders of credit cards under the program are permitted to make payments on those credit cards in-person at the Debtors' stores, which in-store payments are held in trust for Citibank and are not property of the Debtors' estates. Due to the variety of payment flows between the parties in connection with the Citibank Credit Card Program, the Citibank Credit Card Program Agreement permits the Debtors and Citibank to set off and/or recoup payments under certain circumstances. Citibank currently holds a $25 million letter of credit to secure the Debtors' obligations under the Citibank Credit Card Program.

19.     The Citibank Credit Card Program generates significant income for the Debtors and is an integral and extremely valuable component of both the Shop Your Way Program and the Debtors' businesses more generally. In addition, if the Debtors do not continue to fully perform their obligations under the Citibank Credit Card Program Agreement, Citibank might draw on the letter of credit provided thereunder to the detriment of the Debtors' creditors.

20.     By this Motion, the Debtors seek authorization to honor, perform and otherwise satisfy their obligations in connection with the Citibank Credit Card Program, including all rights of setoff and/or recoupment thereunder, and to permit Citibank to act under and in accordance with the Citibank Credit Card Program Agreement including with respect to setoff, recoupment and the application of the letter of credit or other collateral.

## G.     Warranty & Service Program

21.     The Debtors offer their customers an opportunity to purchase protection agreements or extended warranties under a number of different in-house programs that covers the repair or replacement cost of a product including, but not limited to, home appliances, tools, jewelry, tires, electronics, lawn mowers and certain heating, ventilation, and air-conditioning ("**HVAC**")

8

products. The Debtors offer service plans for these various products (retail and aftermarket) at different protection levels under the names:  Master Protection Agreement, Repair Protection Agreement, Value Protection Agreement, Service Smart Protection Agreement, Basic Protection Agreement, Kmart Smart Plan, Kmart Smart Jewelry Care, Sears Jewelry Care, Sears Maintenance Advantage, Kenmore Service Plan and Sears Road Hazard.  (collectively, the "**Master Protection Agreements**"). The Debtors also offer a warranty to cover smaller, lower-cost electronics, tools, and appliances (the "**Sears Purchase Protect Plan**"). The Debtors also offer an extension of manufacturer warranties for certain private label products (the "**Extended Warranties**") and a Sears Maintenance Advantage ("**SMA**", together with the Master Protection Agreements, Sears Purchase Protect Plan, Extended Warranties, the "**Warranty Programs**").

22.     Under the Master Protection Agreements, and with certain limitations, the Debtors may either repair or replace certain defective products.  Under the Sears Purchase Protect Plan, in the event that the covered purchase fails to operate properly, the Debtors may provide the customer with a gift card in the amount of the original purchase price or replace the defective product with a comparable refurbished replacement. The Debtors believe that their ability to continue to offer and honor the Warranty Programs is critical to the maintenance of customer relationships. Accordingly, by this Motion, the Debtors seek authority to honor and continue operating the Warranty Programs in the ordinary course of business.

**H.    Charitable Programs**

23.     From time to time, the Debtors make donations to certain charitable organizations or otherwise support community organizations to build brand awareness and strengthen local community ties (collectively, the "**Charitable Programs**").

9

24.     For example, the Debtors have a Heroes at Home Campaign which allows Members and customers to donate money to assist military families during checkout (the "**Heroes at Home Program**").  By this Motion, the Debtors seek to honor their commitments under the Heroes at Home Program and under all other Charitable Programs.

## I.     Customer Deposit Program

25.     In the ordinary course of business, the Debtors sell merchandise to customers that requires a deposit (the "**Purchase Deposits**") to be placed on such purchases. The Debtors retain Purchase Deposits until the customer receives the product, at which point the Debtors recognize the revenue associated with the sale. If the Debtors' customers fail to receive assurance that their Purchase Deposits will be honored and applied, there is a risk that they may seek to cancel their product orders, seek a return of their Purchase Deposit, or purchase merchandise from another retailer.

26.     The Debtors believe that all or a substantial portion of any customer claims arising from the Purchase Deposits are entitled to priority over other general unsecured claims pursuant to section 507(a)(7) of the Bankruptcy Code. Accordingly, to maintain the Debtors' revenue stream, the Debtors request authority to maintain, apply, return, and honor prepetition customer Purchase Deposits in the ordinary course of business.[5]

## J.     Layaway Program

27.     The Debtors also offer a layaway program online and at their Sears and Kmart stores that allows a customer to pay for products over an eight or twelve week period (the

---

[5] In certain instances, for operational efficiency, the Debtors only purchase a product from a supplier after the customer has placed an order and paid for the product. Similar to the relief requested with respect to the Purchase Deposits, the Debtors seek permission to apply, return and honor these amounts and purchase the appropriate product to fulfil the customer's order.

WEIL:\96759496\1\73219.0006

"**Layaway Program**"). Under the Layaway Program, a customer executes a contract with the Debtors whereby the customer agrees to make payments towards the purchase price of selected products every two weeks. A customer can cancel the layaway contract at any time and receive a refund of his or her payments minus a service and cancellation fee. By this Motion the Debtors seek authorization to (a) continue the Layaway Program in the ordinary course of business; (b) honor the amounts already paid by customers pursuant to their layaway contract; and (c) comply with any refund and cancellation requests initiated by any customer.

K.      **State Lottery Tickets**

28.      The Debtors' Sears and Kmart stores located in thirty-three (33) states sell lottery tickets (the "**Lottery Tickets**") and similar games of chance sponsored by the states. In the ordinary course of their business, the Debtors "cash out" customers' winning lottery tickets in amounts no greater than $750 and then present the honored Lottery Tickets to the applicable state regulatory agency for reimbursement. By this Motion, the Debtors seek authorization to "cash out" any Lottery Tickets purchased prepetition and presented postpetition for payment at their stores, subject to the limits established for in-store payments.

**The Relief Requested Should Be Granted**

A.      **Ample Authority Exists to Support Payment of the Obligations Arising under Customer Programs**

29.      The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989)

11

(finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers).

30.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

31.     In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

32.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to debtors' continued operation); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) ("[A] per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code.").  The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

13

**B.**      **Continuing the Customer Programs and Honoring the Obligations Related Thereto Is in the Best Interests of the Debtors' Businesses and Estates**

33.      The ability to continue administering the Customer Programs without interruption is absolutely critical to the Debtors' valuable customer relationships and goodwill, and will inure to the benefit of all of the Debtors' stakeholders.  If the Debtors are unable to continue the Customer Programs or honor obligations thereunder, the Debtors risk alienating certain customer constituencies (who then could form relationships with the Debtors' competitors) and could suffer corresponding losses in customer loyalty and goodwill that will harm their prospects for maximizing the value of their estates.

34.      The Debtors' Customer Programs also are essential marketing strategies for attracting new customers.  Failure to continue the Customer Programs and offer even basic programs such as the Return and Exchange Policy will place the Debtors at a significant competitive disadvantage in the marketplace, amplifying the negative effect of customer uncertainty that may arise from the commencement of these chapter 11 cases.  Such uncertainty could erode the Debtors' hard-earned reputation and brand loyalty, which, in turn, could adversely impact the Debtors' ability to successfully administer their chapter 11 cases and maximize recoveries to their creditors.  The relief requested herein will pay dividends with respect to the Debtors' businesses and engender goodwill, at this critical time in Sears' history.

35.      Honoring obligations under the Customer Programs will not prejudice other stakeholders.  For example, the Debtors are reimbursed for honoring third-party Coupons.  Further, pursuant to section 507(a)(7) of the Bankruptcy Code, up to $2,850 in claims arising from a consumer's prepetition deposit "of money for the purchase of property or services for personal, family or household use" to the extent that such property or services were not delivered, have priority over other general unsecured claims.  *See* 11 U.S.C. § 507(a)(7).  This provision was added

14

to the Bankruptcy Code in 1984 to "protect consumers who had deposited money for goods and services with a business that subsequently filed for bankruptcy" and has since been adjusted to increase the priority amount. *In re River Vill. Assocs.*, 161 B.R. 127, 133 (Bankr. E.D. Pa. 1993), *aff'd*, 181 B.R. 795 (E.D. Pa. 1995). The obligations that arise in connection with the Gift Card Program and the Purchase Deposits are priority claims under section 507(a)(7) of the Bankruptcy Code. Accordingly, the Debtors have shown cause sufficient to warrant authorization to continue administering the Customer Programs and to honor any customer obligations relating thereto.

## Reservation of Rights

36.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or, validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code, including, without limitation, the Citibank Credit Card Program Agreement. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## The Debtors Have Satisfied Bankruptcy Rule 6003(b)

37.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days

WEIL:\96759496\1\73219.0006

after filing of the petition. Fed. R. Bankr. P. 6003(b). As described above, the Customer Programs are integral to the Debtors' continued operations because they are necessary to maintain the confidence and goodwill of the Debtors' customer base. The Debtors are at a critical juncture at which they must make every effort to retain customer support, drive revenues, and maximize cash flow. The Debtors' inability to continue the Customer Programs could materially impair their efforts. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

38.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the Riecker Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

### Notice

39.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iv) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (v) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the IP/Ground Lease Term Loan, and

16

the Consolidated Secured Loan Facility; (vi) counsel for Computershare Trust Company N.A., as indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vii) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes; (viii) counsel for The Bank of New York Mellon Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (ix) the Pension Benefit Guaranty Corporation; (x) the Unions; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; and (xiii) the United States Attorney's Office for the Southern District of New York.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

40.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WEIL:\96759496\1\73219.0006

WHEREFORE the Debtors respectfully request entry of the order granting the

relief requested herein and such other and further relief as is just.

Dated:    October 15, 2018
          New York, New York

                                        /s/ Ray C. Schrock P.C.
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Jacqueline Marcus
                                        Garrett A. Fail
                                        Sunny Singh

                                        *Proposed Attorneys for Debtors
                                        and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                                     :

                                                          :          Chapter 11

SEARS HOLDINGS CORPORATION, *et al.*,                     :

                                                          :          Case No. 18-_____ (RDD)

                                                          :

Debtors.[1]                                               :          (Joint Administered)

---------------------------------------------------------------x

### ORDER AUTHORIZING DEBTORS TO (I) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER PROGRAMS, PROMOTIONS, AND PRACTICES, AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation, and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), and 507(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors, in the ordinary course of business and consistent with past practice, to: (i) maintain and administer their customer programs, promotions, and practices, and (ii) pay and otherwise honor their obligations to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home Improvement Products, Inc. (8591); Sears Protection Company (1250); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SRC Sparrow 1 LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); KCD IP, LLC (None); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None); and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

customers relating thereto, whether arising prior to or after the Commencement Date, as

necessary and appropriate in the Debtors' business judgment, and granting related relief, all as

more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the relief requested in the Motion having been given as provided in the Motion;

such notice having been adequate and appropriate under the circumstances; and it appearing that

no other or further notice need be provided; and the Court having held a hearing on October 15,

2018 to consider the relief requested in the Motion (the "**Hearing**"); and upon the Riecker

Declaration, filed contemporaneously with the Motion, and the record of the Hearing, and upon

all of the proceedings had before the Court; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable

harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, provides a net

benefit to the Debtors and their estates after taking into account the Bankruptcy Code's priority

scheme,  and is in the best interests of the Debtors, their estates, their creditors, and all parties in

interest; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    The Motion is granted to the extent set forth herein.

2.    The Debtors are authorized, but not directed, to maintain and administer the

Customer Programs and honor any related prepetition obligations in the ordinary course of

2

business and consistent with past practice, as necessary and appropriate in the Debtors' business

judgment.

3.    The Debtors are authorized, but not directed, to honor, perform under and

otherwise satisfy all of their obligations in connection with the Citibank Credit Card Program,

whether arising prepetition or postpetition, including, without limitation, permitting and effecting

any rights of setoff or recoupment thereunder, maintaining the letter of credit issued in connection

therewith, and turning over to Citibank any in-store payments made on credit cards issued under

the Citibank Credit Card Program, and, notwithstanding the commencement of the chapter 11

cases, Citibank shall be permitted to act under and in accordance with the Citibank Credit Card

Program Agreement, including, without limitation, with respect to setoff, recoupment and the

application of the letter of credit or other collateral

4.    Notwithstanding anything in the Motion or this Order to the contrary, any

payment made or action taken by any of the Debtors pursuant to the authority granted herein, as

well as the exercise of any and all other rights and authorizations granted or approved hereunder,

shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash

collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP

Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and

postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

5.    To the extent there is any inconsistency between the terms of any of the DIP

Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

6.    Nothing contained in the Motion or this Order or any payment made

pursuant to the authority granted by this Order is intended to be or shall be construed as (i) an

admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any

3

appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors;  (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

7.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

8.      Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

9.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.      The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

11.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2018
      White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

4