WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re                                    :
                                         :          Chapter 11
SEARS HOLDINGS CORPORATION, et al.,      :
                                         :          Case No. 18-_____ (RDD)
                                         :
              Debtors.¹                   :          (Joint Administration Requested)
-------------------------------------------------------------x
```

## MOTION OF DEBTORS FOR
## AUTHORITY TO PAY CERTAIN PREPETITION TAXES AND FEES

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent in support of this motion (the "**Motion**"):

## Background

1.    On the date hereof (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.    Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on the date hereof (the "**Riecker Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated herein by reference.

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration.

WEIL:\96759210\1\73217.0003

**Jurisdiction**

4.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

**Relief Requested**

5.    By this Motion, the Debtors request authority, pursuant to sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code, but not direction, to pay certain taxes, assessments, fees, and charges in the ordinary course of business (without regard to whether such obligations accrued or arose before or after the Commencement Date), including any such taxes, assessments, fees, and other charges subsequently determined, upon audit or otherwise, to be owed (collectively, the "**Taxes and Fees**").

6.    A proposed form of order granting the relief requested in the Motion on an interim basis is attached hereto as **Exhibit A** (the "**Proposed Interim Order**").

**The Debtors' Taxes and Fees**

7.    In the ordinary course of operating their business, the Debtors collect, withhold, and incur an assortment of Taxes and Fees that they remit periodically to various federal, state, and local taxing, licensing, regulatory, and other governmental authorities (collectively, the "**Authorities**").[3]

8.    The Taxes and Fees generally fall into the following categories, each of which is discussed in more detail below: (i) Sales and Use Taxes, (ii) Franchise and Income

---

[3] The Debtors file and remit certain Sales and Use Taxes and Income Taxes to the Authorities on a consolidated basis.  As such, there may be instances when Debtor assets are used to pay non-debtor tax liabilities.  According to the Debtors' records, such payments are relatively immaterial and are accounted for through intercompany balances.

WEIL:\96759210\1\73217.0003

Taxes, (iii) Real Property Taxes, (iv) Personal Property Taxes, (v) Other Taxes, and (vi) Fees (each as defined and described below).

9.      The Debtors believe that many of the Taxes and Fees collected prepetition are not property of the Debtors' estates, but, rather, are held in trust for the Authorities.  The Debtors also seek to pay certain Taxes and Fees to, among other things, forestall the Authorities from taking actions that may interfere with the operation of the Debtors' business or the administration of their chapter 11 cases.  Such interference could include bringing personal liability actions against directors, officers, and other key employees (whose full-time attention to the Debtors' chapter 11 cases is required to avoid business disruptions and to maximize the value of the Debtors' estates), asserting liens on the Debtors' property, assessing penalties and/or significant interest on past-due taxes, or revoking licenses or permits required to do business.  In addition, non-payment of the Taxes and Fees may give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code.  Accordingly, the Debtors submit that the relief requested herein is in the best interests of the Debtors' estates.

A.      **Sales and Use Taxes**

10.     The Debtors incur or collect from customers an assortment of state and local sales taxes in connection with the sale of various products and services to their customers ("**Sales Taxes**").  Sales Taxes are essentially general consumption taxes charged at the point of purchase for certain goods and services, which are usually set by the applicable Authority as a percentage of the retail price of the good or service purchased.

11.     The Debtors incur use taxes on account of the purchase of various inventory, supplies, and other goods utilized by the Debtors in the ordinary course of business ("**Use Taxes**" and, together with Sales Taxes, "**Sales and Use Taxes**").  Use Taxes typically

4

arise if a supplier does not have business operations in the state in which it is supplying goods and, therefore, does not charge sales tax on goods that are otherwise taxable to the purchaser.

12.     The Debtors are required to remit approximately ninety-nine percent (99%) of Sales and Use Taxes to the applicable Authorities on a monthly basis. The remainder of the Sales and Use Taxes are remitted on quarterly, semi-annual, and annual bases. On average, the Debtors remit approximately $60.8 million each month in aggregate Sales and Use Taxes, although the retail sales cycle is seasonal and this amount varies over the course of a typical year. Although the Debtors believe that they are current with respect to their payment of Sales and Use Taxes, the Debtors estimate that, as of the Commencement Date, they owe approximately $78.6 million in prepetition Sales and Use Taxes that have not yet become due and payable. Additionally, the Debtors estimate that approximately $74.0 million in aggregate Sales and Use Taxes will become due and payable within thirty (30) days following the Commencement Date.

**B.      Franchise and Income Taxes**

13.     The Debtors incur franchise taxes assessed by certain Authorities to operate their businesses in the applicable jurisdiction ("**Franchise Taxes**"). Franchise Taxes vary by jurisdiction and may be based on a flat fee, or based on net operating income, gross receipts, or capital employed. In the last twelve months, the Debtors remitted approximately $540,000 in Franchise Taxes per quarter in the aggregate to various Authorities. Although the Debtors believe that they are current with respect to their payment of Franchise Taxes, the Debtors estimate that, as of the Commencement Date, they have accrued approximately $260,000 in prepetition Franchise Taxes that have not yet become due and payable. The Debtors estimate that $18,000 in Franchise Taxes will become due and payable within thirty (30) days following the Commencement Date.

5

14.    Certain states and localities require that the Debtors pay income or corporate taxes, including gross receipts taxes ("**Income Taxes**").  Most Income Taxes generally are calculated as a percentage of net income (the difference between gross receipts and expenses, after accounting for additional write-offs).  The Debtors pay approximately $3.1 million in aggregate Income Taxes per quarter.  Although the Debtors believe that they are current with respect to their payment of Income Taxes, the Debtors estimate that, as of the Commencement Date, they have accrued approximately $4.2 million in prepetition Income Taxes that have not yet become due and payable.  The Debtors estimate that approximately $163,000 in Income Taxes will become due and payable within thirty (30) days following the Commencement Date.

## C.    Real Property Taxes

15.    State and local laws in the jurisdictions in which the Debtors operate generally grant the applicable Authorities the power to levy property taxes against the Debtors' real property ("**Real Property Taxes**").  Unpaid Real Property Taxes may create a lien or security interest in the property so taxed.  The Debtors generally pay Real Property Taxes in one of two ways:  (i) direct payment to the relevant Authorities where the Debtors lease the underlying property in a jurisdiction that requires lessees to pay Real Property Taxes directly to the Authorities (collectively, "**Direct Real Property Taxes**"); or (ii) reimbursement of landlords who pay the property taxes on certain properties that the Debtors lease ("**Indirect Real Property Taxes**").  The Debtors seek authority to pay all prepetition Real Property Taxes other than for those leases being rejected in accordance with the *Omnibus Motion of Debtors to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property and Abandonment of Property in Connection Therewith*, filed contemporaneously herewith.

16.    The Debtors remit Direct Real Property Taxes to the applicable Authorities on quarterly, semi-annual, and annual bases, and are sometimes required to remit

6

Direct Real Property Taxes as part of special assessments to certain Authorities.  In the 2017 fiscal year, the Debtors paid approximately $153.2 million in the aggregate in Direct Real Property Taxes and estimate that they will owe approximately $130.6 million in the aggregate for such taxes in 2018.  Although the Debtors believe that they are current with respect to their payment of Direct Real Property Taxes, the Debtors estimate that, as of the Commencement Date, they have accrued approximately $80.0 million in prepetition Direct Real Property Taxes that have not yet become due and payable.  The Debtors estimate that $10.5 million in Direct Real Property Taxes will become due and payable within thirty (30) days following the Commencement Date.

17.     The Debtors reimburse landlords who pay the property taxes on certain of the properties leased to the Debtors in a timely manner after the landlords invoice the Debtors. In many cases, the Indirect Real Property Taxes are paid to the applicable landlords as an escrow or advance payment.  The escrow or advanced payments are later reconciled against the paid tax bill and the overage is refunded to the Debtors or the shortage is paid to the applicable landlord. The Debtors pay approximately $118.2 million in aggregate Indirect Real Property Taxes per year.  Although the Debtors believe that they are current with respect to their payment of Indirect Real Property Taxes, the Debtors estimate that, as of the Commencement Date, they owe approximately $66.4 million in prepetition Indirect Real Property Taxes that have not yet become due and payable.  Additionally, the Debtors estimate that approximately $8.7 million in aggregate Indirect Real Property Taxes will become due and payable within thirty (30) days following the Commencement Date.

D.     **Personal Property Taxes**

18.     State and local laws in the jurisdictions in which the Debtors operate also generally grant the applicable Authorities the power to levy property taxes against the Debtors'

7

personal property ("**Personal Property Taxes**"). Unpaid Personal Property Taxes may create a lien or security interest in the property so taxed. The Debtors remit Personal Property Taxes to the applicable Authorities on semi-annual and annual bases. On average, the Debtors pay approximately $25 million in Personal Property Taxes per year. Although the Debtors believe that they are current with respect to their payment of Personal Property Taxes, the Debtors estimate that, as of the Commencement Date, they owe approximately $8.3 million in prepetition Personal Property Taxes that have not yet become due and payable. Additionally, the Debtors estimate that approximately $2.4 million in aggregate Personal Property Taxes will become due and payable within thirty (30) days following the Commencement Date.

## E.    Other Taxes

19.    In addition to the foregoing, the Debtors collect, withhold or incur various other taxes, fees, and charges, including, but not limited to, commercial rent tax, gross receipts tax, utility tax, federal excise tax, and other federal, state, and local taxes, fees, and charges for which an officer, director or employee of the Debtors could incur personal liability (including any amounts required to be withheld or collected under applicable law) (collectively, "**Other Taxes**").

20.    Although the Debtors believe that they are current with respect to their payment of Other Taxes, the Debtors estimate that, as of the Commencement Date, they owe approximately $2.0 million in prepetition Other Taxes that have not yet become due and payable. The Debtors estimate that approximately $1.8 million in aggregate Other Taxes will become due and payable within thirty (30) days following the Commencement Date.

## F.    Fees

21.    State and local laws require the Debtors to obtain and pay fees (collectively, "**Fees**") for a wide range of business licenses—*e.g.*, liquor licenses—and permits

from a number of local, state, and federal Authorities.  The Debtors pay Fees either by (i) direct payment to the relevant Authorities or (ii) reimbursement of vendors who pay the Fees and include the cost of the Fee on their invoice to the Debtors.  The methods for calculating Fees and the deadlines for paying such amounts due thereunder vary by jurisdiction.  Further, certain states require the Debtors to pay annual reporting Fees to state governments to remain in good standing for purposes of conducting business within the state.

22.     The Debtors remit approximately $36.2 million in Fees per quarter to the applicable Authorities, of which approximately $35.1 million is related to customs duties. Although the Debtors believe that they are current with respect to their payment of Fees, the Debtors estimate that, as of the Commencement Date, they owe approximately $31.6 million in prepetition Fees that have not yet become due and payable.  The Debtors estimate that approximately $20.7 million in aggregate Fees will become due and payable within thirty (30) days following the Commencement Date.

<u>**The Relief Requested Should Be Granted**</u>

**A.    Certain of the Prepetition Taxes and Fees May Not Be Property of Debtors' Estates**

23.     Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  11 U.S.C. § 541(d).

24.     Many of the Taxes and Fees constitute "trust fund" taxes, which the Debtors are required to collect from their customers and hold in trust for payment to the Authorities.  As a result, courts have held that such taxes are not part of a debtor's estate.  *See, e.g.*, *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58–60 (1990) (holding that any prepetition

payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *Shank v. Wash. State Dept. of Revenue* (*In re Shank*), 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same).  To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d).  *See, e.g.*, *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–06 (Bankr. E.D. Pa. 1987); *Dameron v. Tyler* (*In re Dameron*), 155 F.3d 718, 721–22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties not property of debtor's estate).[4]  Accordingly, the Debtors generally do not have an equitable interest in funds held on account of such "trust fund" taxes, and, therefore, should be permitted to pay such trust fund taxes to the Authorities as they become due.

**B.    Payment of the Taxes and Fees May Eliminate Unnecessary Distractions from Debtors' Administration of Their Chapter 11 Estates**

25.    If the Debtors fail to pay the Taxes and Fees in a timely manner, the Authorities may assert that the Debtors' directors and officers are personally liable for payment of such taxes and fees.  This is the case even if failure to pay Taxes and Fees was not a result of malfeasance on the part of such directors and officers.  Any claims or litigation related to the failure to pay Taxes and Fees would be distracting for the Debtors, their directors and officers, as well as this Court, which may be asked to entertain various motions seeking injunctions relating to potential court actions.  As such, it is in the best interest of the Debtors' estates to eliminate

---

[4] Additionally, a constructive trust may be imposed on collected taxes where there exists a reasonable nexus between the funds and the taxes in question.  *See In re Integrated Health Servs., Inc.*, 344 B.R. 262, 270 (Bankr. D. Del. 2006).  The Debtors, therefore, may not have a legally cognizable interest in funds held on account of such "trust fund" taxes and, accordingly, such taxes, which generally consist of sales taxes, would not constitute "property of the [Debtors'] estate[s]" as such term is defined in section 541 of the Bankruptcy Code.

the possibility of these distractions and to enable the Debtors to continue focusing on their restructuring efforts.

**C.    Certain Prepetition Taxes and Fees May Be Secured or Entitled to Special Treatment**

26.    Certain of the Taxes and Fees may be subject to tax liens.  Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(b)(3).  In fact, the creation and perfection of such a lien may not violate the automatic stay—even if the lien arises under applicable law for taxes due after the Commencement Date.  *See* 11 U.S.C. § 362(b)(18) (automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition."); *see also In re Gifaldi*, 207 B.R. 54, 56 n.1 (Bankr. W.D.N.Y. 1997) (noting that section 362(b)(18) reversed case law that had held that the creation of a statutory lien for ad valorem property taxes violated the automatic stay).  Thus, the Debtors' failure to pay their Real Property Taxes might inadvertently increase the scope of secured claims held against the Debtors' estates.

27.    Indeed, absent the granting of the relief requested herein, many Authorities may hold oversecured claims against the Debtors' estates related to the Taxes and Fees.  The Bankruptcy Code provides that oversecured claims may accrue interest during a chapter 11 case.  *See* 11 U.S.C. § 506(b); *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43 (1989) (nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code); *see also Lincoln Sav. Bank v. Suffolk County Treasurer* (*In re Parr*

11

*Meadows Racing Ass'n, Inc.*), 880 F.2d 1540, 1549 (2d Cir. 1989) (citing *Ron Pair* and holding

that oversecured liens entitled a tax authority to postpetition interest).  If the Debtors are required

to pay interest on such tax claims, section 511 of the Bankruptcy Code provides that "the rate of

interest shall be the rate determined under applicable nonbankruptcy law," which may exceed

prevailing market interest rates.  *See* 11 U.S.C. § 511(a).  Accordingly, prompt payment of the

Taxes and Fees may eliminate claims for interest at potentially above-market rates for any

resulting secured claims.

**D.      Many of the Prepetition Taxes and Fees are Priority Claims**

28.     Claims for some or all of the Taxes and Fees owed by the Debtors are or

may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code.  Consequently,

payment of such Taxes and Fees would give the applicable Authorities no more than that to

which they otherwise would be entitled under a chapter 11 plan and will save the Debtors

potential interest expense, legal expense, and penalties that otherwise may accrue on, or be

incurred in connection with, such Taxes and Fees.

29.     Section 507(a)(8) of the Bankruptcy Code provides that claims entitled to

priority status include unsecured claims of governmental units for (i) taxes on or measured by

income or gross receipts for a taxable year ending on or before the Commencement Date, for

which a return, if required, is last due after three years prior to the Commencement Date, and

which is assessed within 240 days before the Commencement Date, *see* 11 U.S.C.

§ 507(a)(8)(A); (ii) property taxes incurred before the Commencement Date and last payable

without penalty after one year before the Commencement Date, *see* 11 U.S.C. § 507(a)(8)(B);

and (iii) taxes required to be collected or withheld and for which the debtor is liable in whatever

capacity, *see* 11 U.S.C. § 507(a)(8)(C).  Moreover, to the extent that the Taxes and Fees are

entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the

governmental unit also may attempt to assess penalties that may also be accorded priority status. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

30.    Based on the foregoing, payment of certain of the Taxes and Fees will likely give the Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, the Taxes and Fees, and, therefore, should be approved.

**E.    Ample Authority Exists to Support Payment of the Taxes and Fees**

31.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers).

32.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an

13

operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

34.    In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

14

35.    This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to debtors' continued operation); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) ("[A] per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs,* 98 B.R. at 176.

36.    As noted above, paying the prepetition Taxes and Fees will benefit the Debtors and their creditors by allowing the Debtors to continue the operation of their businesses without interruption and to maximize the value of their estates.   Moreover, any potential prejudice resulting from the relief requested herein will be minimal because many of the prepetition Taxes and Fees constitute secured claims or administrative expense claims. Accordingly, the Debtors submit that the proposed relief is in the best interests of the Debtors and all stakeholders in these chapter 11 cases.

### Reservation of Rights

37.    Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or, validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any

15

agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Have Satisfied Bankruptcy Rule 6003(b)

38.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.   Fed. R. Bankr. P. 6003(b).   As of the Commencement Date, the Debtors estimate that approximately $271.36 million in prepetition Taxes and Fees are currently accrued, of which approximately $118.28 million amount will come due within the first thirty (30) days and will need to be paid to avoid the harmful consequences noted above to their business and restructuring efforts.   Based on the foregoing, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

39.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Riecker Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.

Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

### Notice

40.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iv) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (v) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the IP/Ground Lease Term Loan, and the Consolidated Secured Loan Facility; (vi) counsel for Computershare Trust Company N.A., as indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vii) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes; (viii) counsel for The Bank of New York Mellon Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (ix) the Pension Benefit Guaranty Corporation; (x) the Unions; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; (xiii) the United States Attorney's Office for the Southern District of New York; (xiv) the Banks; and (xv) each of the Authorities.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

41.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

17

WHEREFORE the Debtors respectfully request entry of an Interim Order granting the relief requested herein and such other and further relief as is just.

Dated: October 15, 2018
     New York, New York

        /s/ Ray C. Schrock P.C.
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York  10153
        Telephone:  (212) 310-8000
        Facsimile:  (212) 310-8007
        Ray C. Schrock, P.C.
        Jacqueline Marcus
        Garrett A. Fail
        Sunny Singh

        *Proposed Attorneys for Debtors*
        *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                              :

                                                   :          **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,          :

                                                   :          **Case No. 18-_____ (RDD)**

                                                   :

             Debtors.[1]                           :          **(Jointly Administered)**

------------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING
## DEBTORS TO PAY CERTAIN PREPETITION TAXES AND FEES

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), 507(a), and 541 of title 11 of

the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing but not directing

the Debtors to remit and pay certain taxes, assessments, fees, and other charges in the ordinary

course of business (without regard to whether such obligations accrued or arose before or after

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Commencement Date), including any such taxes, assessments, fees, and other charges subsequently determined, upon audit or otherwise, to be owed (collectively, the "**Taxes and Fees**"); and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the interim relief requested in the Motion having been given as provided in the Motion; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on October 15, 2018 (the "**Interim Hearing**"); and upon the Riecker Declaration, filed contemporaneously with the Motion, and the record of the Interim Hearing; and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, provides a net benefit to the Debtors and their estates after taking into account the Bankruptcy Code's priority scheme, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2

2.      The Debtors are authorized, but not directed, in the ordinary course of business as such obligations become due, to pay the Taxes and Fees (without regard to whether such Taxes and Fees accrued or arose before or after the Commencement Date), including all of those Taxes and Fees subsequently determined, upon audit or otherwise, to be owed; *provided that*, the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Commencement Date and amounts that are or become due and payable between the Commencement Date and the date that a final order on the Motion is entered, unless otherwise ordered by the Court.

3.      Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

4.      Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

5.      To the extent there is any inconsistency between the terms of any of the DIP Orders and this Interim Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

3

6.      Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors;  (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

7.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

8.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

9.      Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

11.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; *provided that*, the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

12.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

WEIL:\96759210\1\73217.0003

13.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

14.     The Final Hearing on the Motion shall be held on _____, **2018, at** _____ **(Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garrett A. Fail, Esq., and Sunny Singh, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq. and Richard Morrissey, Esq.); and (iii) counsel for the DIP ABL Agent, with a copy to the Court's chambers, in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2018**.


Dated: _____, 2018
      White Plains, New York

      _____
      THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE

5