WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION, et al.,** | : | |
| | : | **Case No. 18-_____ (RDD)** |
| | : | |
| Debtors. [1] | : | **(Joint Administration Requested)** |

------------------------------------------------------------x

**MOTION OF DEBTORS FOR APPROVAL**
**OF (I) PROCEDURES FOR STORE CLOSING SALES AND**
**(II) ASSUMPTION OF LIQUIDATION CONSULTING AGREEMENT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SRC Sparrow 1 LLC (None); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None); and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent in support of this motion (the "**Motion**"):

## Preliminary Statement

1.      A key component of the Debtors' chapter 11 strategy is to close certain unprofitable stores to eliminate the significant cash burn associated therewith and position themselves for a restructuring transaction or sale to maximize value and preserve as many jobs as possible.  Such closures will improve the Debtors' financial outlook and liquidity profile and will allow the Debtors to focus their efforts around the restructuring or sale of a smaller footprint of stores in target markets with the potential for sustainable growth.

2.      The Debtors have engaged in a systematic review of each of the Debtors' stores and analyzed their profitability and market impact and will continue to do so during these chapter 11 cases.  In analyzing their stores, the Debtors considered, and continue to consider, among other factors, current occupancy costs, historical and projected store profitability, recent and projected sales trends, the geographic market in which each store is located, the potential to realize negotiated rent reductions with the landlords of the applicable store (the "**Landlords**"), and other specific factors related to a store's performance.

3.      The Debtors continue to evaluate their entire lease portfolio to seek out opportunities for cost savings, including the possibility of seeking rent concessions.  Certain of the Debtors' stores are underperforming, sustain current losses, are subject to above-market rent, or are too large for the Debtors' needs.  The Debtors have carefully considered the impact of

store closures on the Debtors' creditors, employees, and other constituencies.  By this Motion, the Debtors seek approval of procedures to close any stores that they determine, in their business judgment, should be closed in order to preserve liquidity and maximize the value of their estates (the "**Closing Stores**").

4.     Closing the Closing Stores will maximize value to all stakeholders.  It will immediately lower the Debtors' costs and increase cash flow from operations.  The Debtors will liquidate any inventory remaining at the Closing Stores as part of the Store Closing Sales, which the Debtors believe will maximize return on its inventory as part of their store closing process. As part of closing the Closing Stores, the Debtors may transfer their first-generation inventory and other premium products from the Closing Stores to the Debtors' remaining stores.  In addition, the Debtors may transfer unproductive inventory from both "go forward" stores and distribution centers to the Closing Stores.  Moreover, the Debtors and/or the Liquidation Consultant (as defined herein) are authorized (in the case of the Liquidation Consultant, at the Liquidation Consultant's sole cost and expense) to supplement the merchandise in the Store Closing Sales with additional goods which are of like kind, and no lesser quality, to the merchandise in the Store Closing Sales (such additional goods, the "**Additional Merchandise**"). The Liquidation Consultant shall consult with the Debtors with respect to the Additional Merchandise to ensure that the Additional Merchandise is of like kind, and no lesser quality, to the merchandise in the Store Closing Sales and is in categories designed to enhance the Store Closing Sales.  The remaining stores will constitute a leaner enterprise, offering greater strategic value and potential for sustainable growth.

5.     The Debtors have identified, in the aggregate, 142 stores that require prompt closure (the "**Initial Closing Stores**").  A list of the Initial Closing Stores is attached to

the Proposed Interim Order (as defined herein) as **Exhibit 1**.  The Initial Closing Stores are underperforming, sustaining significant losses, and/or have no leasehold value for the Debtors to monetize.  Of the Initial Closing Stores, 98 were unprofitable in fiscal year 2017, and 44 produced flat or marginal profits in fiscal year 2017 or are trending downwards in 2018 due to local market and competitive factors.  To date, no buyer has expressed an interest in buying the Initial Closing Stores on a going concern basis.  The liquidation of assets at the Initial Closing Stores is expected to yield approximately $42 million in net proceeds, which will be used to pay down the DIP ABL Facility (as defined in the DIP Motion) and fund these chapter 11 cases.

6.     By this Motion, the Debtors seek approval of streamlined procedures to sell the inventory, furniture, fixtures, and equipment ("**FF&E**"), and other assets in the Closing Stores (collectively, the "**Store Closing Assets**"), in each case free and clear of liens, claims, or encumbrances (the "**Store Closing Procedures**," and the sales, the "**Store Closing Sales**").  The Debtors seek interim approval to apply the Store Closing Procedures to the Initial Closing Stores given the significant operating losses continuing in the Initial Closing Stores and the Debtors' liquidity constraints.  The Debtors will provide notice of their intent to apply the Store Closing Procedures to any additional Closing Stores.

7.     The Debtors are also seeking authority to assume their liquidation consulting agreement (as amended and restated, and including any modifications, supplements, and further amendments thereto, the "**Liquidation Consulting Agreement**") with Abacus Advisors Group L.L.C. (the "**Liquidation Consultant**"), a liquidation consulting firm that the Debtors have engaged to advise the Debtors on the most effective way to run a seamless and efficient multi-store closing process, and to maximize the value of assets being sold.  Abacus was retained by the Debtors prepetition and have extensive experience conducting liquidation

4

sales for the Debtors, having liquidated over 800 stores for the Debtors over the past sixteen (16) years.

8.      The relief requested in this Motion is integral to maximizing the value of the Debtors' estates and it will establish fair and uniform Store Closing Procedures to assist the Debtors and their creditors through the Debtors' transition to a leaner, more profitable enterprise. Prior to approval of this Motion, the Debtors will continue store closing sales that began prepetition and prepare for or conduct such sales at the Initial Closing Stores in the ordinary course in accordance with all local laws and prepetition contracts. The Debtors anticipate that Store Closing Sales will begin at a material number of the Initial Closing Stores within two weeks of the Commencement Date.[2]

### Background

9.      On the date hereof (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

10.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2] Prior to the Commencement Date, the Debtors conducted liquidation sales in the ordinary course of business. The Debtors believe that the Store Closing Sales may qualify as an ordinary course activity for which specific court approval would not be required under 363(c) of the Bankruptcy Code and are requesting the relief herein to ensure that they have the imprimatur of this Court to conduct the necessary liquidation sales without having to comply with lease and local law restrictions that may impede such sales. The Debtors reserve their right to conduct future ordinary course sales and related activities without relief from the Court.

WEIL:\96759255\1\73217.0003

11.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York, sworn to on the date hereof (the "**Riecker Declaration**"),[3] which has been filed with the Court contemporaneously herewith and is incorporated herein by reference.

## Jurisdiction

12.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Relief Requested

13.     By this Motion, the Debtors request authority, pursuant to sections 105(a), 363, 365, and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, but not direction, to (i) implement the Store Closing Procedures annexed to the Proposed Interim Order (as defined herein) as **Exhibit 2**, to sell Store Closing Assets at the Closing Stores, including at the Initial Closing Stores, free and clear of liens, claims, or encumbrances and (ii) assume the Liquidation Consulting Agreement.

14.     The Debtors seek interim and final authority to implement the Store Closing Procedures at the Initial Closing Stores.  The Debtors will await a final hearing to obtain the authority to apply the Store Closing Procedures at any additional Closing Stores.  The

---

[3] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration.

WEIL:\96759255\1\73217.0003

Debtors seek interim and final authority to assume the Liquidation Consulting Agreement on a final basis.

15.     A proposed form of order granting the relief requested in the Motion on an interim basis is attached hereto as **Exhibit A** (the "**Proposed Interim Order**").

<b>The Store Closing Procedures</b>

**A.     Overview**

16.     The Debtors propose implementing the Store Closing Procedures to facilitate seamless Store Closing Sales and closure of the Closing Stores, including immediate application of the Store Closing Procedures to the Initial Closing Stores.  The Debtors have determined that, in the exercise of their business judgment, implementing the Store Closing Procedures will provide the most timely and efficient means for maximizing the value of the Store Closing Assets.

17.     The Debtors intend to market the leases and/or negotiate with applicable Landlords the lease terms for certain of the Closing Stores while conducting the Store Closing Sales, and, therefore, the Debtors have not yet made a determination whether to reject the leases for all of the Closing Stores.  Therefore, the Debtors are seeking authority, but not direction, with respect to the relief requested herein, and nothing in this Motion or the Proposed Interim Order should be construed as requiring the Debtors to conduct Store Closing Sales at any particular Closing Store, to cease operations at any particular Closing Store, or to reject the lease that the Debtors maintain with any particular Landlord.

7

18.    The Debtors will notify landlords, unions, and employees, among other parties affected by the closure of the Closing Stores.[4]

**B.    Compliance with Liquidation Sale Laws and Lease Provisions**

19.    Certain states and localities in which the Debtors operate stores have or may have laws, rules, or regulations regarding licensing or other requirements governing the conduct of store closings, liquidations, or other inventory clearance sales (collectively, the "**Liquidation Sale Laws**").    Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, and bulk sale restrictions and augmentation limitations that would otherwise apply to the Store Closing Sales.    The Debtors believe that in most cases, the Store Closing Procedures are consistent with Liquidation Sale Laws and with the leases affected by the Store Closing Sales.    Certain requirements, however, may hamper the Debtors' efforts to maximize the value of their Store Closing Assets.    Thus, the Debtors seek Court authority to conduct the Store Closing Sales in accordance with the Store Closing Procedures without complying with the Liquidation Sale Laws, when the two are inconsistent.[5]

20.    Similarly, the Debtors request a finding that any contractual restrictions that could otherwise inhibit or prevent the Debtors' ability to maximize recovery through the Store Closing Sales are unenforceable.    In certain cases, the Store Closing Sales may be inconsistent with certain provisions of leases, subleases, vendor contracts, or other documents associated with the Closing Stores, including reciprocal easement agreements, agreements

---

[4] The Debtors will serve upon employees and their union representatives affected by the Closing Stores required notice under the Worker Adjustment and Retraining Notification and applicable state laws.

[5] The Debtors will continue to comply with applicable laws, rules, and regulations that are for the protection of the health and safety of the public and in support of consumer protection laws.

WEIL:\96759255\1\73217.0003

containing covenants, conditions, and restrictions, including "go dark" provisions and landlord recapture rights, or other similar documents or provisions.

21.    The Debtors also request that the Court order that no person or entity, including utilities, landlords, contract counterparties, suppliers, creditors, and all persons acting for or on their behalf, shall interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords at the Closing Stores in any court (other than in this Court) or before any administrative body in any way that directly or indirectly interferes with, obstructs, or otherwise frustrates the conduct of the Store Closing Sales.

22.    The Debtors also request that they be presumed to be in compliance with any applicable "fast pay" laws to the extent such payroll payments are made by the later of (i) the Debtors' next regularly scheduled payroll and (ii) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

C.    **Disposition of Pharmaceutical Assets**

23.    The Debtors operate pharmacies at many of their stores, including 31 of the Initial Closing Stores.  The Store Closing Assets include the pharmaceutical assets located in pharmacies at a Closing Store, which in turn includes the pharmaceutical products inventory and customers' scripts (collectively, the "**Pharmaceutical Assets**") will not be sold to the general public.  The Debtors are required by applicable law to make the customer prescriptions available to customers at pharmacies in close proximity to the location of the Closing Store and may only transfer certain pharmaceutical products inventory in accordance with the requirement of

WEIL:\96759255\1\73217.0003

applicable state laws and regulations.[6]  Where the Debtors operate a pharmacy in a Closing Store that is near another of the Debtors' stores (each, an "**Open Store**"), the Pharmaceutical Assets will either be (i) transferred to the Open Store or (ii) the Debtors will market and sell the Pharmaceutical Assets to other pharmacies located in close proximity in accordance with applicable law.  The Debtors' customers need access to their prescription drugs immediately and any delay in the transfer of Pharmaceutical Assets will greatly harm the Debtors' customers, and by extension, the Debtors' businesses.  Based on the Debtors' historical experience with sales of Pharmaceutical Assets at stores that the Debtors closed in 2017, the Debtors estimate that the aggregate value of the Pharmaceutical Assets at the Closing Stores will be approximately $650,000 per each pharmacy closed.

D.    **Proposed Liquidation Consulting Agreement**

24.    The Debtors weighed several considerations before deciding to engage the Liquidation Consultant pursuant to the Liquidation Consulting Agreement, which is on market terms.  The Debtors knew that they would need to apply the Store Closing Procedures to the Closing Stores to avoid incurring significant and unnecessary expenses and losses.  The number of Closing Stores that likely will need to be closed warrants the use of a liquidation firm.  Retaining a liquidation consulting firm will achieve the maximum value for the Store Closing Assets and minimize administrative expenses.

25.    As noted above, the Debtors have utilized the Liquidation Consultant for liquidation sales at over 800 of the Debtors' closing stores over the past sixteen (16) years.  On

---

[6] *See, e.g.,* N.J. Admin. Code §§ 13:39-4.10 and 13:39-4.11 (2010) (providing that where a pharmacy is to be discontinued and closed for any reason, all medications, prescriptions, and copies of patient profiles should be transferred to the holder of a current pharmacy permit; wholesaler; reverse distributor; and/or manufacturer); N.Y. Educ. Law § 6812 (McKinney 2010) (providing that prescription records must not be sold to a person who does not currently possess a registration to operate a pharmacy); 24 Del. Admin. Code § 2500-4 (2011) (providing that if pharmacy is sold, pharmacy board must be notified that buyer licensed to possess sold prescription drugs).

WEIL:\96759255\1\73217.0003

average, the Liquidation Consultant has achieved gross inventory sales of approximately $1.10 – $1.20 per dollar for the Company's prepetition liquidation sales, which exceeds the market rate of inventory sales achieved for liquidation consultants generally, and particularly when compared to liquidation sales in bankruptcy.  In addition, the Liquidation Consultant will be paid pursuant to a fixed fee for sales of inventory, instead of as a percentage of the amount of inventory sold, a term that is overall better for the Debtors and will result in additional value for the estate.  The Liquidation Consultant will serve as the Debtors' consultant in accordance with terms and conditions similar to those set forth in the Liquidation Consulting Agreement.  The Liquidation Consultant may subcontract to other entities or otherwise obtain support for the liquidation sales, including from Tiger Capital Group, LLC, provided that the Liquidation Consultant will be solely responsible for such subcontracting, which shall be at no additional cost to the Debtors' estates.

26.    Following the Commencement Date, the Liquidation Consultant will begin the process of preparing each Initial Closing Store for the Store Closing Sales.  Upon obtaining interim authority, the Liquidation Consultant will commence such Store Closing Sales in accordance with the Store Closing Procedures.  As noted above, the Debtors anticipate that the Store Closing Sales will commence at a material number of the Initial Closing Stores within two weeks of the Commencement Date.

27.    The Liquidation Consulting Agreement generally provides that the Liquidation Consultant will advise the Debtors with respect to the sale of their Store Closing Assets at any store the Debtors designate as a Closing Store.  Specifically, the Liquidation Consultant will, among other things, (a) provide the Debtors with a qualified full-time supervisor to oversee the conduct of Store Closing Sales at each Closing Store, (b) determine the

WEIL:\96759255\1\73217.0003

appropriate pricing of the Store Closing Assets and advertising of the Store Closing Sales, (c) assist the Debtors with legal requirements of complying with local laws, rules, and regulations, (d) dispose of any unsold Store Closing Assets, and (e) clean the premises to "broom clean" condition. Closing Stores that are not Initial Closing Stores may be closed under the Liquidation Consulting Agreement, or in accordance with any other agreement approved by the Debtors subject to the approval rights of the DIP ABL Agents under the terms of the DIP Loan Documents.

28.    In consideration of the services to be rendered, the Debtors will provide the Liquidation Consultant with a fee equal to between $100,000 and $140,000 per month, depending on the number of active closing in any given month in exchange for Store Closing Sales related to the Inventory (the "**Inventory Fee**"). If directed by the Debtors, the Liquidation Consultant will also sell the FF&E in the Closing Stores in exchange for a commission equal to a percentage of the gross receipts from all sales or other dispositions of FF&E at the Closing Stores (the "**FF&E Commission**"). In addition, the Debtors propose to reimburse the Liquidation Consultant for certain reasonable out-of-pocket expenses incurred in connection with the sale or other disposition of the Store Closing Assets pursuant to a budget agreed to between the parties.

29.    The material terms of the Liquidation Consulting Agreement are summarized below.[7]

---

[7] Capitalized terms used but not defined in this summary of the Liquidation Consulting Agreement have the respective meanings ascribed to such terms in the Liquidation Consulting Agreement. To the extent that this summary conflicts with the actual terms of the Liquidation Consulting Agreement, the Liquidation Consulting Agreement shall control. A copy of the Liquidation Consulting Agreement is attached as **Exhibit 3** to the Proposed Interim Order.

WEIL:\96759255\1\73217.0003

| Term | Summary |
|---|---|
| **Services Provided by Liquidation Consultant** | Liquidation Consultant will (i) provide exclusive advisory services to the Debtors in connection with the Debtors' efforts to liquidate and dispose of inventory at stores designated to be Closing Stores pursuant to the Liquidation Consulting Agreement (and FF&E if designated by the Debtors); (ii) provide a qualified full-time supervisor to oversee conduct of Store Closing Sales at each Closing Store; (iii) discount inventory in order to maximize proceeds and maintain momentum of Store Closing Sales; (iv) leave the Closing Stores in broom clean condition after completion of the Store Closing Sales; (v) conduct advertising for the Store Closing Sales; (vi) assist the Debtors with legal requirements of complying with local laws, rules, and regulations; and (vii) provide other such related services in connection with the Store Closing Sales. |
| **Expenses of Liquidation Consultant** | Debtors are responsible for payment of all enumerated Sale Expenses subject to the Budget provided by the Liquidation Consultant, which shall be in form and substance acceptable to the Debtors.  Sale Expenses include, among other things, the actual cost for each supervisor's fees of $2,450 per week, plus reasonable travel costs and bonuses (which bonuses are in the discretion of the Liquidation Consultant and based upon a formula, up to a cap of $1,225 per week per supervisor). |
| **Compensation for Liquidation Consultant** | The monthly Inventory Fee is $100,000 if there are 20 or fewer active closings in any given month and is graduated up to a maximum of $140,000 if there are 51 or greater active closings in any given month.<br><br>At the conclusion of the term of the Liquidation Consulting Agreement, the Debtors and the Liquidation Consultant may agree upon the payment of a performance fee, in the Debtors' sole discretion, and subject to entry of an order of the Bankruptcy Court approving such performance fee.   The performance fee which may be based on total proceeds of the Store Closing Sales or any other basis, in the Debtors' sole discretion.<br><br>If the Debtors request that the Liquidation Consultant sell or dispose of the FF&E at the Closing Stores, the Liquidation Consultant will receive the FF&E Commission, which is equal to ten percent (10%) of the gross proceeds of the FF&E. |
| **Insurance; Risk of Loss** | The Debtors shall maintain, during the period of the Store Closing Sales, all insurance in amounts at least equal to the insurance coverage presently in force.<br><br>Liquidation Consultant not deemed responsible for any loss, liability, damage, or expense arising out of any casualty or other loss, unless caused by the intentional or willful misconduct or gross negligence of Liquidation |

WEIL:\96759255\1\73217.0003

| | |
|---|---|
| | Consultant's employees or supervisor. |
| **Mutual Indemnification** | Liquidation Consultant and Debtors shall indemnify, defend, and hold each other free and harmless from and against any and all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, obligations, costs and expenses of any kind whatsoever, including, without limitation, attorney's fees and costs, asserted against, resulting from or imposed upon, or incurred by either party hereto by reason of or resulting from a material breach of any term of condition contained in this Agreement or any willful misconduct or intentional act of the other party. |

30.     In addition to these terms, the Debtors and/or the Liquidation Consultant (in the case of the Liquidation Consultant, at the Liquidation Consultant's sole cost and expense) shall have the right to supplement the merchandise in the Store Closing Sales with Additional Merchandise.   The Liquidation Consultant shall consult with the Debtors with respect to the Additional Merchandise to ensure that the Additional Merchandise is of like kind, and no lesser quality, to the merchandise in the Store Closing Sales and is in categories designed to enhance the Store Closing Sales.

31.     The Debtors believe that the terms of the Liquidation Consulting Agreement are reasonable and that assumption of the Liquidation Consulting Agreement is an exercise of their sound business judgment that will maximize value for the Debtors' estates and creditors.

## **The Relief Requested Should Be Granted**

### A.     Implementing the Store Closing Procedures and Immediately Commencing Store Closing Sales at the Initial Closing Stores Constitutes an Exercise of the Debtors' Sound Business Judgment

32.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.   Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).

14

33.     Under section 363(b) of the Bankruptcy Code for the purpose of a Store Closing Sale, the Debtors need only show a legitimate business justification for the proposed action.  *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.") (citation omitted).  When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption "'that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F. 3d 29 (2d Cir. 1993).  Accordingly, parties challenging a debtor's decision must make a showing of "bad faith, self-interest or gross negligence." *In re Integrated Res.*, 147 B.R. at 656 (citations omitted).

34.     The relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under section 363(b) of the Bankruptcy Code.  The Debtors and their advisors believe that the Store Closing Procedures represent the most efficient and appropriate means of maximizing the value of the Store Closing Assets, while balancing the potentially competing concerns of affected landlords and other parties in interest.

35.     Ample business justification exists to conduct Store Closing Sales at the Closing Stores.  Before the Commencement Date, the Debtors engaged in an extensive review of each of their stores to (i) identify underperforming and unprofitable stores, (ii) consider whether and how individual store performance could be improved by various initiatives, including through the negotiation of lease concessions with landlords, and (iii) determine which stores should be closed immediately to eliminate their ongoing negative impact on the Debtors' liquidity and financial performance.  This process also resulted in the Debtors' identification of the Initial Closing Stores, for which preparations to commence Store Closing Sales will begin on or around the Commencement Date.  Any Store Closing Assets that are not sold during the Store Closing Sales will be transferred to surrounding locations or abandoned.

36.     Implementing the Store Closing Procedures will generate funds that will provide the Debtors with needed liquidity to satisfy their obligations during these chapter 11 cases, and to pay down the Debtors' debtor in possession financing.  The Debtors will select any additional Closing Stores to undergo the Store Closing Procedures after a comprehensive analysis of those stores' profitability, ability to be sold during a possible sales process, and negative leasehold value.  The Debtors will await a final hearing to obtain the authority to apply Store Closing Procedures to additional Closing Stores that may be identified in the future, which will give all parties in interest an opportunity to be heard by the Court.

37.     Additionally, the ability to sell or transfer the Pharmaceutical Assets located at the Closing Stores is a necessary step in ensuring the Debtors are capable of closing the unprofitable Closing Stores on a reasonable schedule and the Debtors will ensure the best price under the circumstances is received for any Pharmaceutical Assets sold.

16

38.    Implementing the Store Closing Procedures will allow the Debtors to avoid payment of administrative rent that is not beneficial to the Debtors and their estates, improve the Debtors' liquidity, allow the Debtors to focus on their larger sale or restructuring process, and maximize creditor recoveries.  Any interruption or delay in the Debtors' ability to efficiently close the Closing Stores during these chapter 11 cases could have serious negative consequences for the Debtors' estates.  Thus, to maintain the value of the Store Closing Assets, it is important that the Court permit the Debtors flexibility to act in the most expeditious and efficient manner possible.  The Debtors believe that there is sufficient business justification for the Debtors to begin immediately implementing the Store Closing Procedures.

39.    Courts in this district and others have regularly approved store closing or liquidation sales in chapter 11 cases involving retail debtors, including for pharmaceutical assets in certain cases.  *See, e.g. In re Tops Holding II Corp.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (ECF No. 353); *In re Cent. Grocers, Inc.*, Case No. 17-10993 (LSS) (Bankr. D. Del. May 17, 2017) (ECF No. 191); *In re Golfsmith Int'l Holdings, Inc.*, Case No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) (ECF No. 267); *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 6, 2016) (ECF No. 100); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jul. 28, 2015) (ECF No. 204); *In re Delia's, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2014) (ECF No. 55); *In re Blockbuster, Inc.,* Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Jan. 20, 2011) (ECF No. 864); *In re Movie Gallery, Inc.,* Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 4, 2010) (ECF No. 94); *In re Finlay Enters., Inc.,* Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 25, 2009) (ECF No. 158); *In re Value City Holdings, Inc.*, Case No. 08-14203 (JMP) (Bankr. S.D.N.Y. Nov. 20, 2008) (ECF No. 158); *In re Circuit City Stores, Inc.,* Case No. 08-35653 (KPH) (Bankr. E.D. Va.

WEIL:\96759255\1\73217.0003

Nov. 10, 2008) (ECF No. 82); *In re Steve and Barry's Manhattan LLC*, Case No. 08-12579

(ALG) (Bankr. S.D.N.Y. Aug. 22, 2008) (ECF No. 628); *In re BFW Liquidation, LLC, f/k/a*

*Bruno's Supermarkets, LLC,* Case No. 09-00634 (BGC) (Bankr. N.D. Ala. March 2, 2009) (ECF

No. 306).

40.     In addition, the Court has the authority, pursuant to its equitable powers

under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because

such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a)

of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers Bankruptcy Courts

to "issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105.  Section 1107(a) of the Bankruptcy Code "contains an

implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the

estate, including an operating business' going-concern value,'" on behalf of the debtor's

creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex.

2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also*

*Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229,

232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in

possession and, through its management . . . was burdened with the duties and responsibilities of

a bankruptcy trustee.").

**B.     Sales of the Store Closing Assets Free and Clear of All Liens, Claims, and Encumbrances Is Warranted**

41.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell

property of the estate "free and clear of any interest in such property of an entity other than the

estate" if any one of the following conditions is satisfied:

(a)     applicable non-bankruptcy law permits sale of such property free and clear
of such interest;

(b)     such entity consents;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

42.     The vast majority of the Store Closing Assets are comprised of inventory in the Closing Stores.  Any and all liens on the Store Closing Assets sold in the Store Closing Sales will attach to the proceeds of such sales with the same force, effect, validity, and priority as such liens currently have on the Store Closing Assets, subject to the rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto.

43.     In addition, all known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested herein on a final basis for any additional Closing Stores.  Any lienholders that do not object to the sale of applicable Store Closing Assets should be deemed to have consented to such sale.  *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold."  (internal citations omitted)); *Hargrave v. Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (finding failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2) of the Bankruptcy Code); *Citicorp Homeowners Serv., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345-46 (E.D. Pa. 1988) (same); *see*

19

*also In re Enron Corp.*, Case No. 01-16034, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).

44.    Accordingly, the sale of the Store Closing Assets should be free and clear of any liens, claims, encumbrances, and other interests, and satisfies the statutory requirements of section 363(f) of the Bankruptcy Code.

### C.    The Court Should Invalidate Contractual Restrictions That Impair the Debtors' Ability to Conduct the Store Closing Sales

45.    Store closing or liquidation sales are a routine part of chapter 11 cases involving retail debtors. Such sales are consistently approved by courts, despite provisions in recorded documents, contracts, or agreements purporting to forbid such sales. Indeed, any such contract or agreement is unenforceable against the Debtors pending assumption or rejection thereof. *See In re Bildisco*, 465 U.S. 513, 532 (1984); *In re Nat'l Steel Corp.*, 316 B.R. 287, 302-07 (Bankr. N.D. Ill. 2004).

46.    Courts in this district have entered orders deeming such restrictive contractual provisions unenforceable in the context of store closing or liquidation sales. *See, e.g., In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (ECF No. 353) (deeming unenforceable any restrictions in any lease agreement, restrictive covenant, or similar document that would limit, condition, or impair the Debtors' ability to conduct store closing sales); *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 6, 2016) (ECF No. 100) (waiving any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating liquidation sales); *In re the Great Atl. & Pac. Tea Co., Inc.*, Case No. 10-24549 (RDD) (Bank. S.D.N.Y. Mar. 10, 2011) (ECF No. 1004) (relieving the debtors of any restrictions in a lease agreement or similar document that was

inconsistent with the store closing procedures); *In re Blockbuster Inc.*, Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Jan. 20, 2011) (ECF No. 864) (any restrictions in leases or comparable documents purporting to limit the debtors' ability to conduct store closing sales are unenforceable); *In re Bradlees Stores, Inc.*, Case No. 00-16035 (BRL) (Bankr. S.D.N.Y. Jan. 4, 2001) (ECF No. 70) (authorizing debtors to conduct "going out of business" sales notwithstanding restrictive lease provisions restricting debtors' ability to conduct such sales); *In re R.H. Macy & Co.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (finding anti-store closing sale covenant in lease unenforceable against debtor "because it conflicts with the debtor's fiduciary duty to maximize estate assets").  Moreover, the Store Closing Procedures, like the sale guidelines approved in other cases cited herein, provide the appropriate protections for any legitimate concerns that landlords or other affected parties might otherwise have with respect to the conduct of the Store Closing Sales.

47.    Accordingly, the Debtors request that the Court authorize the Debtors to conduct the Store Closing Sales consistent with the Store Closing Procedures, without interference by any landlords, suppliers, vendors, contract counterparties, or other persons affected, directly or indirectly, by the Store Closing Sales.

**D.    The Court Should Waive Compliance with Any Liquidation Sale Laws That Restrict Store Closing Sales**

48.    The Debtors' ability to conduct Store Closing Sales in accordance with the Store Closing Procedures and without complying with applicable Liquidation Sale Laws (to the extent they are inconsistent) is critical to the success of the Store Closing Sales.  Although the Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the Store Closing Sales, many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing,

21

liquidation, or similar sales.  Additionally, compliance with "fast pay" laws would require the Debtors to pay terminated employees within a timeframe that would be detrimental to the conduct of these chapter 11 cases.  The Debtors propose the Store Closing Procedures to streamline the administrative burden on their estates required to comply with certain Liquidation Sale Laws.

49.    There is ample support for granting the Debtors' request for a waiver of the requirement to comply with applicable Liquidation Sale Laws that are inconsistent with the Store Closing Procedures.  First, Liquidation Sale Laws often provide that, if a liquidation or bankruptcy sale is court authorized, then a company need not comply with the Liquidation Sale Laws.  *See, e.g.* N.Y. Gen. Bus. Law § 584(a) (exempting from the provisions of the chapter sales pursuant to any court order).  Second, pursuant to section 105(a) of the Bankruptcy Code, the Court has the authority to permit the Store Closing Sales to proceed notwithstanding contrary Liquidation Sale Laws.

50.    Third, this Court will be able to supervise the Store Closing Sales because the Debtors and their assets are subject to this Court's exclusive jurisdiction.  *See* 28 U.S.C. § 1334.  Creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of this Court.  Moreover, section 959 of title 28 of the United States Code, which requires debtors to comply with state and other laws in performance of their duties, does not apply to the Store Closing Sales.  *See, e.g., In re Borne Chem. Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) (holding that 28 U.S.C. § 959(b) is applicable only when property is being managed or operated for the purpose of continuing operations, not liquidations).  Relatedly, and as adequate protection for governmental units as that term is defined in section 101(27) of the Bankruptcy Code (the "**Governmental Units**"), paragraph 16

22

of the Proposed Interim Order includes a procedure whereby Governmental Units can seek relief
from this Court in the event that there is a dispute relating to any Liquidation Sale Law.

51.     Fourth, even if a Liquidation Sale Law does not expressly exempt court-
ordered sales from its ambit, the Debtors believe that, if such law conflicts with federal
bankruptcy laws, it is preempted by the Supremacy Clause of the United States Constitution.  *See*
U.S. Const. art. VI, cl. 2.  To hold otherwise would severely impair the relief available under
section 363 of the Bankruptcy Code.  Consistent with this premise, Bankruptcy Courts have
recognized that federal bankruptcy laws preempt state and local laws that contravene the
underlying policies of the Bankruptcy Code.  *See, e.g., Belculfine v. Aloe (In re Shenango Grp.,
Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have
unique fiduciary and legal obligations pursuant to the bankruptcy code . . . [A] state statute [ ]
cannot place burdens on them where the result would contradict the priorities established by the
federal bankruptcy code.").  Although preemption of state law is not always appropriate, as when
the protection of public health and safety is involved, *see In re Baker & Drake, Inc. v. Pub. Serv.
Comm'n of Nev. (In re Baker & Drake)*, 35 F.3d 1348, 1353-54 (9th Cir. 1994) (finding no
preemption when state law prohibiting taxicab leasing was promulgated in part as a public safety
measure), it is appropriate when, as here, the only state laws involved concern economic
regulation.  *See Id*. at 1353 (finding that "federal bankruptcy preemption is more likely . . . where
a state statute is concerned with economic regulation rather than with protecting the public health
and safety").

52.     Similar relief has been granted in other bankruptcy cases in this district.
*See, e.g.*, *In re Tops Holding II Corp.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10,
2018) (ECF No. 353) (authorizing the debtors to conduct store closing sales notwithstanding

23

federal, state, and local laws governing the conduct of store closing and liquidation sales); *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 6, 2016) (ECF No. 100) (same); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jul. 28, 2015) (ECF No. 204) (same); *In re Blockbuster Inc.*, Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Jan. 20, 2011) (ECF No. 864) (same); *In re Finlay Enters., Inc.*, Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 25, 2009) (ECF No. 262) (authorizing debtors to conduct "going out of business" sales "without the necessity of compliance" with certain "going out of business" laws); *In re Steve & Barry's Manhattan LLC*, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 22, 2008) (ECF No. 628) (authorizing store closing sales without requiring compliance with laws affecting store closing or liquidation sales).

53.     The Debtors also request that no other person or entity, including any lessor or federal, state, or local agency, department, or governmental authority, be allowed to take any action to prevent, interfere with, or otherwise hinder the conduct of the Store Closing Sales, including the advertising and promotion (including through the posting of signs) thereof.

**E.     Abandonment of the Store Closing Assets Should Be Approved**

54.     The Debtors also request authority, subject to the Proposed Order, to abandon any of the Store Closing Assets remaining at the Closing Stores after the completion of the applicable Store Closing Sales, that the Debtors do not sell and determine is too difficult to remove or expensive to store (such that the economic benefits of removing or storing such Store Closing Assets would by outweighed by the attendant costs).

55.     Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."   11 U.S.C. § 554(a).   The right to abandon property is, except for certain exceptions inapplicable in the present case, unfettered.

24

*See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506–07 (1986) (noting one such exception and holding that section 554(a) does not preempt state laws aimed at protecting the public's health and safety).

56.    Although the Debtors will have, in their business judgment, removed personal property at the Closing Stores and other leased premises if feasible and of value to the Debtors' ongoing operations or to their estates, a minimal amount of the Debtors' personal property is expected to remain at certain Closing Stores.  Such Store Closing Assets will primarily consist of miscellaneous FF&E, advertising displays, and other store inventory that is of inconsequential value or benefit to the Debtors' estates or would be cost prohibitive to remove.  Any landlord or other designee will be free to dispose of such Store Closing Assets after the completion of the applicable Store Closing Sales without notice or liability to any party.  To the best of the Debtors' knowledge, the abandonment of the property would not be in violation of any state or local statutes or regulations reasonably designed to protect the public health or safety.  Accordingly, abandonment of the Store Closing Assets as of the Rejection Date or after completion of the applicable Store Closing Sales should be approved.

57.    Courts in this district and elsewhere have previously approved similar relief in other chapter 11 cases involving retail debtors.  *See, e.g., In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (ECF No. 35) (authorizing the debtors to abandon any unremoved or unsold furniture, fixtures, and equipment at a closing store); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (ECF No. 1700) (same); *In re Great Atl. & Pac. Tea Co., Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jan. 22, 2016) (ECF No. 2367) (authorizing the debtors to abandon furniture, fixtures, and equipment as of a retroactive rejection date); *In re Am. Apparel, Inc.*, No. 15-12055 (BLS)

(Bankr. D. Del. Nov. 20, 2015) (ECF No. 364) (authorizing the debtors to dispose of or abandon property of their estates left in stores after the completion of store closing sales); *In re RadioShack Corp.*, No. 15-10197 (BLS) (Bankr. D. Del. Feb. 2, 2015) (ECF No. 455) (authorizing the debtors to abandon all unsold assets located at any of the closing stores).

**F.    Assumption of the Liquidation Consulting Agreement Is in the Best Interests of the Debtors and Their Estates and Should Be Immediately Approved**

58.    Under section 365(a) of the Bankruptcy Code, a debtor may assume or reject any executory contract or unexpired lease of the debtor provided that such assumption or rejection satisfies the business judgment test.  The Debtors' decision to utilize and pay for the services provided by the Liquidation Consultant is a reasonable exercise of their business judgment.  Given the number of Closing Stores that will likely need to be closed at or around the same time, a nationally-recognized liquidator, such as the Liquidation Consultant, with significant experience with large-scale liquidations is best equipped to ensure a smooth liquidation process that will maximize the value of the Store Closing Assets.  The Liquidation Consultant has extensive expertise in conducting store closing sales and can oversee, and assist in the management and implementation of, the Store Closing Sales in an expeditious and cost effective manner.  The Liquidation Consulting Agreement will enable the Debtors to utilize the experience, skills, and resources of the Liquidation Consultant to effectively and efficiently conduct the Store Closing Sales and, thus, significantly improve the value to be received through the Store Closing Sales for the benefit of all stakeholders.

59.    The Liquidation Consultant's fees will be fixed between $100,000 and $140,000 per month for inventory sales, depending on the number of active store closings, and will be ten percent (10%) of gross proceeds for any FF&E sold.  The Debtors believe that the proposed fees are better than or comparable to market terms and with the fees that this Court and

WEIL:\96759255\1\73217.0003

other courts have approved in connection with similar agreements.  *See, e.g., In re The Great Atl. & Pac. Tea Co., Inc.,* Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 13, 2015) (ECF No. 546) (authorizing a fee equal to 1% of gross sales if such sales exceed the cost value of the merchandise and 10% of proceeds from sales of furniture, fixtures, and equipment); *In re Lack's Stores, Inc.*, Case No. 10-60149 (JB) (Bankr.  S.D. Tex. Nov. 17, 2010) (ECF No. 34) (approving a $4,500 per store base fee, a fee equal to 20% of net proceeds of sales of merchandise in excess of 64% of the cost value of the merchandise, and 15% of proceeds from sales of FF&E); *In re Bruno's Supermarkets, LLC,* Case No. 09-00634 (BGC) (Bankr. N.D. Ala. Mar. 2, 2009) (ECF No. 306) (approving a fee equal to 3% of net proceeds of sales of merchandise and 15% of proceeds from sales of FF&E); *In re Value City Holdings, Inc.*, Case No. 08-14197 (JMP) (Bankr. S.D.N.Y. Nov. 20, 2008) (ECF No. 158) (approving a $25,000 per store base fee, up to a $25,000 per store success fee based on a 54.6% gross return on merchandise adjusted downward for lower gross return percentages, and a fee equal to 10% of gross proceeds from sales of FF&E).

60.     The Court should authorize and approve of the Debtors' assumption of the Liquidation Consulting Agreement because the Debtors' use of the Liquidation Consultant's services on the terms set forth in the Liquidation Consulting Agreement will ensure that the Debtors receive the maximum value for the Store Closing Assets.  Based upon their experience with the Liquidation Consultant prior to the Commencement Date, the Debtors believe that the Liquidation Consultant is well qualified to conduct the Store Closing Sales.  The expertise of the Liquidation Consultant and its familiarity with the Debtors' store operations will greatly assist the Debtors in the disposition of the Closing Stores and maximize the value to be realized in that process.  This benefit to the Debtors' estates will more than offset any expenses incurred through

the Liquidation Consultant's retention.  Thus, the decision to employ the Liquidation Consultant

and assume the Liquidation Consulting Agreement is a sound exercise of the Debtors' business

judgment.

### Reservation of Rights

61.    Nothing contained herein is intended to be or shall be construed as (i) an

admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any

appropriate party in interest's rights to dispute the amount of, basis for, or, validity of any claim

against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any

creditor or interest holder; or (iv) an approval, adoption, or rejection of any agreement, contract,

program, policy, or lease between the Debtors and any third party under section 365 of the

Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended to be and should not be construed as an admission to

the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Have Satisfied Bankruptcy Rule 6003(b)

62.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to

avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a

motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate"

before twenty-one (21) days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  Immediate

and irreparable harm exists where the absence of relief would impair a debtor's ability to

reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*,

115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and

irreparable harm" in relation to Bankruptcy Rule 4001).  As discussed more fully above and in

the Riecker Declaration, the Debtors and their estates and creditors will be irreparably harmed if

the implementation of the Store Closing Procedures, commencement of the Store Closing Sales, including at the Initial Closing Stores, and assumption of the Liquidation Consulting Agreement are delayed. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

63.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the Riecker Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

### Notice

64.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iv) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (v) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the Sparrow Mezzanine Term Loan, the IP/Ground Lease Term Loan, and the Consolidated Secured Loan Facility; (vi) counsel for Computershare Trust Company N.A., as indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vii) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes;

(viii) counsel for UBS AG, Stamford Branch, as lender under the Sparrow Term Loan; (ix) counsel for The Bank of New York Mellon Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (x) the Pension Benefit Guaranty Corporation; (xi) the Unions; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; (xiv) the United States Attorney's Office for the Southern District of New York (xv) the counterparties to the leases and subleases related to the Closing Stores; (xvi) counterparties whose contracts may be affected by the Store Closing Sales; (xvii) all state attorneys general in which the Store Closing Assets are located; (xiii) The National Association of Attorneys General; and (xix) all parties who are known by the Debtors to assert liens against the Store Closing Assets.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

65.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of interim and final orders granting the relief requested herein and such other and further relief as is just.

Dated: October 15, 2018
New York, New York

/s/ Ray C. Schrock P.C.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

WEIL:\96759255\1\73217.0003

**<u>Exhibit A</u>**

**Proposed Interim Order**

WEIL:\96759255\1\73217.0003

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                    :
                                                         :        **Chapter 11**
**SEARS HOLDINGS CORPORATION, et al.,**                  :
                                                         :        **Case No. 18-_____ (RDD)**
                                                         :
                Debtors. [1]                             :        **(Jointly Administered)**
---------------------------------------------------------------x

## INTERIM ORDER APPROVING (I) PROCEDURES FOR STORE CLOSING SALES AND (II) ASSUMPTION OF LIQUIDATION CONSULTING AGREEMENT

Upon the motion (the "**Motion**") of Sears Holdings Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 554(a) of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order (the "**Interim Order**")

(i) authorizing, but not directing, the Debtors to (a) implement the Store Closing Procedures[2] and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SRC Sparrow 1 LLC (None); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None); and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

begin conducting liquidation sales (the "**Store Closing Sales**") at the Closing Stores, as applicable and (b) assumption of the Liquidation Consulting Agreement, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the interim relief requested in the Motion having been given as provided in the Motion; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on [____], 2018 (the "**Interim Hearing**"); and upon the Riecker Declaration filed contemporaneously with the Motion, the record of the Interim Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis to the extent set forth herein.

## Store Closing Sales

2.      The store closing sale procedures attached hereto as **Exhibit 2** (the "**Store Closing Procedures**") are hereby incorporated by reference and approved in their entirety on an interim basis.

3.      The Debtors are authorized, but not directed, to commence Store Closing Sales at the Initial Closing Stores listed on **Exhibit 1** attached hereto, pursuant to the Store Closing Procedures; *provided that* the Debtors and Landlords of any Closing Stores are authorized to enter into an agreement modifying the Store Closing Procedures without further order of the Court (each, a "**Landlord Agreement**"); *provided further* that any such Landlord Agreement shall not have a material adverse impact on the Debtors or their estates.  To the extent that there is any inconsistency between the Store Closing Procedures, the Liquidation Consulting Agreement, and this Interim Order on the one hand, and a Landlord Agreement on the other hand, the terms of the Landlord Agreement shall control.

4.      Upon entry of a final order approving the Store Closing Procedures, the Debtors may designate or withdraw any additional store as a Closing Store and conduct Store Closing Sales in accordance with the terms of this Order, as well as the terms of the DIP Orders (as defined below), at such Closing Store, by filing a notice of intent to conduct a Store Closing Sale pursuant to this Order (the "**Notice of Intent**") and serving the same by email or overnight mail with a copy of this Order (which may be provided electronically via website link) on the (i) the Office of the United States Trustee for Region 2; (ii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iii) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (iv) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the Sparrow Mezzanine

3

Term Loan, the IP/Ground Lease Term Loan, and the Consolidated Secured Loan Facility; (v) counsel for Computershare Trust Company N.A., as indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vi) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes; (vii) counsel for UBS AG, Stamford Branch, as lender under the Sparrow Term Loan; (viii) counsel for The Bank of New York Mellon Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (ix) the landlord of the applicable store (the "**Landlord**"); (x) any party known to assert an ownership interest in personal property located at the applicable Closing Store; (xi) any party that has filed a UCC-1 statement against or is otherwise known to assert a lien on any personal property located at the applicable Closing Stores; (xii) all parties who may have an interest in any personal property located at the applicable Closing Stores; (xiii) the utility providers at each applicable Closing Store; (xiv) known government entities with jurisdiction over the operations of the Closing Stores; and (xv) any other affected counterparty at the applicable proposed Closing Store (the "**Notice Parties**").

5.       Parties wishing to object will have ten (10) calendar days from the filing and service of the Notice of Intent (the "**Objection Deadline**") to file and serve a written objection (an "**Objection**") to the terms of the Store Closing Procedures and request a hearing on the Objection.  If no Objection is filed, upon expiry of the Objection Deadline the Debtors may conduct Store Closing Sales at the Closing Stores in accordance with the terms of this Order, and such stores shall be considered Closing Stores for purposes of this Order and the Store Closing Procedures.  If an Objection is timely filed and not withdrawn or resolved (an "**Unresolved Objection**"), the Debtors shall file a notice for a hearing for the Court to consider the

4

18-23538-shl    Doc 23    Filed 10/15/18    Entered 10/15/18 08:21:12    Main Document
Pg 36 of 77

Unresolved Objection at the next scheduled omnibus hearing after the Objection Deadline, unless the Debtors and applicable objecting parties, as applicable, agree to a different hearing date and subject to the Court's schedule or the Court schedules another hearing upon request of the Debtors.  If an Objection is filed for fewer than all of the Closing Stores included on the Notice of Intent, the Debtors may proceed with conducting Store Closing Sales in accordance with the Store Closing Procedures for the remaining Closing Stores on the Notice of Intent.

6.    The Store Closing Procedures shall apply to all sales of Store Closing Assets at the Closing Stores.  To the extent that there is any inconsistency between the Store Closing Procedures and the Liquidation Consulting Agreement on the one hand, and this Interim Order, on the other hand, this Interim Order shall control, and the Store Closing Procedures shall control to the extent that there is any inconsistency between such procedures and the Liquidation Consulting Agreement.

7.    The Debtors and the Liquidation Consultant are authorized, but not directed, to transfer the Store Closing Assets among the Closing Stores as well as among the Debtors' stores which are not Closing Stores.  The Debtors and the Liquidation Consultant are authorized to sell or abandon any remaining Store Closing Assets at the Closing Stores; *provided that*, to the extent any such assets remain at the leased premises after the completion of the applicable Store Closing Sales therein, such Store Closing Assets shall be deemed abandoned to the affected landlord with the right of the landlord (or its designee) to dispose of such property free and clear of all interests and without notice or liability to any party.

8.    The Debtors and/or the Liquidation Consultant are authorized (in the case of the Liquidation Consultant, at the Liquidation Consultant's sole cost and expense) to supplement the merchandise in the Store Closing Sales with Additional Merchandise.  The

5

Liquidation Consultant shall consult with the Debtors with respect to the Additional Merchandise to ensure that the Additional Merchandise is of like kind, and no lesser quality, to the merchandise in the Store Closing Sales and is in categories designed to enhance the Store Closing Sales.

9.      Pursuant to section 363(f) of the Bankruptcy Code, the Store Closing Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately before the closing of the applicable sale.

10.      All entities that are currently in possession of some or all of the Store Closing Assets in which the Debtors hold an interest that are or may be subject to this Interim Order hereby are directed to surrender possession of such Store Closing Assets to the Debtors.

11.      No entity, including utilities, landlords, creditors or any persons acting for or on their behalf (but not Governmental Units (as defined in section 101(27))) shall interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales; *provided that* the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures, and any Landlord Agreement.

6

12.     Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; *provided that* the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures, and any applicable Landlord Agreement.

13.     The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases).

14.     For the avoidance of doubt, nothing in this Order or the Store Closing Procedures shall affect Landlord's right to access the Closing Stores during the Store Closing Sales, to the extent permitted under the applicable leases.

15.     Nothing in this Interim Order, the Store Closing Procedures, or the Liquidation Consulting Agreement releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order or in the Liquidation Consulting Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and

7

obligations as debtors in possession under the Bankruptcy Code.  The Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").  Nothing in this Interim Order shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise.  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

16.     To the extent that the Store Closing Sales are subject to any federal, state, or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sales, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions, or any fast pay laws, that would otherwise apply solely to store closing or liquidation sales (each a "**Liquidation Sale Law**" and together, the "**Liquidation Sale Laws**"), the following provisions shall apply:

8

(a)     If the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures, and any applicable Landlord Agreement, and in light of the provisions in the laws of many local and state laws that exempt court-ordered sales from their provisions, then the Debtors shall be presumed to be in compliance or otherwise excused from compliance with any Liquidation Sale Laws, and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order without the necessity of compliance with any such Liquidation Sale Laws.

(b)     The Debtors shall be presumed to be in compliance with any applicable "fast pay" laws to the extent such payroll payments are made by the later of (i) the Debtors' next regularly scheduled payroll and (ii) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

(c)     To the extent there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Liquidation Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws or fast pay laws (a "**Reserved Dispute**"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten (10) days following service of the applicable Notice of Intent, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors so as to ensure delivery thereof within one (1) business day thereafter.  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "**Dispute Resolution Motion**").

(d)     In the event a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtors, a Landlord, or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Interim Order nor the conduct of the Debtors pursuant to this Interim Order, violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Order or to limit or interfere with the Debtors' or the Liquidation Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order, absent further order of this Court.  The Court grants authority for the Debtors and the Liquidation Consultant to conduct the Store Closing Sales pursuant to the terms of this Interim Order, the Liquidation Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with

9

respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(e)    If, at any time, a dispute arises between the Debtors and/or the Liquidation Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*;

17.    The Debtors shall indemnify and hold Landlords harmless from any and all costs, fines, and attorney's fees which Landlords are required to pay or expend in defense of citations from local authorities as a result of the conduct of Store Closing Sales and the signage employed therein in the event that the local authorities do not withdraw such citations.

18.    The Debtors shall be entitled to use sign walkers, hang signs, or interior or exterior banners advertising the Store Closing Sales in accordance with the Store Closing Procedures and any applicable Landlord Agreement, without further consent of any person.  If the use of banners and sign walkers is done in a safe and responsible manner, then such sign walkers and banners, in of themselves, shall not be deemed to be in violation of General Laws.

19.    Subject to the relief above, each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all landlords and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Interim Order as binding authority to conduct and advertise the Store Closing Sales in accordance with this Interim Order.

20.    State and local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Closing Stores for conducting or advertising the Store

10

Closing Sales in a manner inconsistent with state or local law; *provided that* the Store Closing Sales are conducted and advertised in a manner contemplated by this Interim Order.

21.     All of the Store Closing Sales shall be "as is" and final.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of such goods or the use of the terms "as is" or "final sales."  As to the Closing Stores, the Debtors shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, *provided that* the consumer must return the merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.  Returns, if permitted, related to the purchase of Store Closing Assets shall not be accepted at stores that are not participating in the Store Closing Sales.

22.     The Debtors are directed to remit all taxes arising from the Store Closing Sales at the Closing Stores to the applicable Governmental Units as and when due, *provided that* in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

23.    Nothing in the Store Closing Procedures shall relieve the Debtors of their obligations under the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191.

24.    Nothing contained herein shall modify the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code.

### Liquidation Consulting Agreement

25.    The Debtors' assumption of the Liquidation Consulting Agreement, a copy of which is attached hereto as **Exhibit 3**, is hereby approved on a final basis. The Debtors are authorized to act and perform in accordance with the terms of the Liquidation Consulting Agreement.

26.    All existing defaults of the Debtors under the Liquidation Consulting Agreement are hereby deemed to be cured.

27.    All amounts payable to the Liquidation Consultant under the Liquidation Consulting Agreement shall be payable to the Liquidation Consultant without the need for any application of the Liquidation Consultant therefor or any further order of the Court.

28.    Subject to the terms of this Interim Order and the proposed Store Closing Procedures, the Debtors and the Liquidation Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Liquidation Consulting Agreement and all other actions authorized by this Interim Order, including conducting Store Closing Sales at the Closing Stores, including the Initial Closing Stores; and any actions taken by the Debtors and the Liquidation Consultant necessary or desirable to implement the Liquidation Consulting Agreement or the Store Closing Sales prior to the date of this Interim Order, are hereby approved and ratified; provided that, Closing Stores that are not Initial Closing Stores may be closed under the Liquidation Consulting Agreement, or in accordance with any other agreement approved by

12

the Debtors subject to the approval rights of the DIP ABL Agents under the terms of the DIP Loan Documents.

29.     The Liquidation Consultant shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors before the commencement of the Store Closing Sales in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Commencement Date, and accept returns of merchandise sold by the Debtors before the commencement of the Store Closing Sales for the first thirty (30) days of the Store Closing Sales, *provided that* such returns are otherwise in compliance with the Debtors' return policies in effect as of the date such items were purchased.

30.     Nothing herein shall prevent or be construed to prevent the Liquidation Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Liquidation Consulting Agreement pursuant to any agency agreement, asset purchase agreement, or otherwise ("**Additional Assets**").  The Liquidation Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such services, guarantee transaction, or acquisition is approved by separate order of the Court.

## **General Provisions**

31.     Nothing contained in the Motion or this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis

WEIL:\96759255\1\73217.0003

for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

32.    Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

33.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

34.    Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

35.    Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

36.    This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; *provided that*, the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

37.    The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

38.    Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities

14

(collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

39.    To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

40.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

41.    The Final Hearing on the Motion shall be held on _____, **2018, at _____ (Prevailing Eastern Time)**, and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York  10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garrett A. Fail, Esq., and Sunny Singh, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq. and Richard Morrissey, Esq.); and (iii) counsel for the DIP ABL Agent, with a copy to the Court's chambers, in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2018**.

Dated: _____, 2018
          White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

15

**<u>Exhibit 1</u>**

**Closing Stores**

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 1. | 4455 | Beaverton Mart Co, c/o Chotiner & Gumbiner Realty Co., Inc. P.O. Box 6474 Beverly Hills, CA 90212-1474 | Glowing Greens, LLC Raymond Latocki, 2629 SW 180th Terrace Beaverton, OR 97005 | Kmart Corporation | 3955 S W Murray Blvd Beaverton, OR 97005-2316 |
| 2. | 3982 | Benderson-LeMoore Associates, LP, c/o Benderson Development Company, LLC 7978 Cooper Creek Blvd., Suite 100 University Park, FL 34201 | N/A | Kmart Corporation | 215 W Hanford/Armona Rd Lemoore, CA 93245-2302 |
| 3. | 3978 | Braelinn Village 1752, LLC, c/o Kimco Realty Corporation 3333 New Hyde Park Road, Suite 100, P. O. Box 5020 New Hyde Park, NY 11042-0020 | N/A | Kmart Corporation | 400 Crosstown Road Peachtree City, GA 30269-2915 |
| 4. | 3713 | Brixmor Operating Partnership LP dba Brixmor Covington Gallery Owner, LLC, c/o Brixmor Property Group 450 Lexington Avenue, 13th Floor New York, NY 10170 | N/A | Kmart Corporation | 6239 Turner Lake Road Covington, GA 30014-2064 |
| 5. | 3808 | Broad Street Station Shopping Center, LLC, c/o Collett & Associates, Inc P O Box 36799 Charlotte, NC 28236-6799 | N/A | Kmart Corporation | 1530 East Broad Street Statesville, NC 28625-4302 |
| 6. | 9438 | BT Pleasant Hills, LP, c/o BET Investments, Inc. 200 Dryden Road, Suite 2000 Dresher, PA 19025 | N/A | Kmart Corporation | 720 Clairton Blvd/Rte 51 Pleasant Hills, PA 15236-4517 |
| 7. | 7209 | Calcutta Realty Associates, LLC 508 Allegheny River Blvd., Suite 200 Oakmont, PA 15139 | N/A | Kmart Corporation | 15891 State Rt 170 East Liverpool, OH 43920-9633 |
| 8. | 2225 | Capitol Funds, Inc. dba Berkeley Mall LLC, Attn:  David Royster, III Via Overnight address: 720 South LaFayette Street, Via US Mail:  P.O. Box 146, Shelby, NC 28151 Shelby, NC 28150 | N/A | Sears, Roebuck and Co. | 703 N Berkeley Blvd Goldsboro, NC 27534-3444 |
| 9. | 1646 | Carolina Place LLC, c/o Carolina Place Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300 Chicago, IL 60654-1607 | Lands' End, Inc. Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 11033 Carolina Place Pkwy Pineville, NC 28134-8370 |
| 10. | 2600 | CBL & Associates Limited Partnership, dba Honey Creek Mall LLC c/o CBL & Assoc. Properties Attn: Chief Legal Officer, 2030 Hamilton Place Blvd., Suite 500 Chattanooga, TN 37421 | N/A | Sears, Roebuck and Co. | 3401 S Us Highway 41 Terre Haute, IN 47802-4154 |
| 11. | 4433 | Certified Capital LP, c/o Pomerantz, Kavinoky & Co., CPA's 6351 Owensmouth Avenue, Suite 203 Woodland Hills, CA 91367-2209 | Ruby Tuesday Dave Windham, RT MIDWEST HOLDINGS, LLC, PO Box 664 Chanhassen, MN 55317 | Kmart Stores of Illinois, LLC | 3701 Broadway St Quincy, IL 62301-3721 |
| 12. | 4150 | CF Altoona LLC (50%) & Altoona Associates LP (50%), c/o David S. Cohen 2000 S. Ocean Blvd., Apt. 11K Boca Raton, FL 33432 | N/A | Kmart Corporation | 528 W Plank Road Altoona, PA 16602-2802 |
| 13. | 3820 | Charlevoix Commons Investments, LLC, c/o First Commercial Realty & Development Co., Inc. 27600 Northwestern Highway, Suite 200 Southfield, MI 48034 | N/A | Kmart of Michigan, Inc. | 06600 M-66 North Charlevoix, MI 49720-9505 |
| 14. | 2584 | Chautauqua Mall LLC, c/o Washington Prime Group, Inc. Attn: General Counsel, 180 East Broad Street Columbus, OH 43215 | N/A | Sears, Roebuck and Co. | Rt 394 & Hunt Blvd Lakewood, NY 14750- |
| 15. | 7229 | CM Grayson, LLC, c/o Colony Mill Enterprises LLC 102 N E 2nd Street, #141 Boca Raton, FL 33432 | N/A | Kmart Corporation | 600 C W Stevens Blvd Grayson, KY 41143-1190 |
| 16. | 2963 | Cranberry Mall Properties LLC   (In Receivership), c/o The Woodmont Company, as Receiver Attn: Kim Welborn, 2100 W. 27th Street Fort Worth, TX 76107 | N/A | Sears, Roebuck and Co. | 400 N Center St Westminster, MD 21157-5140 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 17. | 1405 | Cross Creek Anchor S, LP, c/o CBL & Associates Management, Inc. Attn: Chief Legal Officer, 2030 Hamilton Place Blvd., Suite 500 Chattanooga, TN 37421 | N/A | Sears, Roebuck and Co. | 400 Cross Creek Mall Fayetteville, NC 28303-7244 |
| 18. | 9354 | El Centro Mall, Ltd., c/o Spigel Properties, Inc. 70 NE Loop 410, Suite 185 San Antonio, TX 78216 | El Centro Mall, Ltd 70 NE Loop 410, Suite 185 San Antonio, TX 78216 | Kmart Corporation | 430 W Ridge Rd Griffith, IN 46319-1095 |
| 19. | 3097 | Fifth Generation Investments, LLC 1805 Zenith Drive Sioux City, IA 51103 | N/A | Kmart Corporation | 2803 E Kanesville Blvd Council Bluffs, IA 51503-1004 |
| 20. | 9222 | Fifth Generation Investments, LLC 1805 Zenith Drive Sioux City, IA 51103 | N/A | Kmart Corporation | 1111 N 2Nd Cherokee, IA 51012-1287 |
| 21. | 3361 | Floreff LLC and Nathan Alison LLC (a 50% undivided interest each), c/o Kin Properties, Inc. 185 NW Spanish River Blvd., Suite 100 Boca Raton, FL 33431-4230 | Floreff LLC & Nathan & Alison LLC General Counsel, c/o Kin Properties 185 N.W. Spanish River Blvd. Suite 100 Boca Raton, FL 33431 | Kmart Corporation | 1502 South Fourth St Allentown, PA 18103-4949 |
| 22. | 3807 | Fox Run Limited Partnership, c/o Brixmor Property Group 450 Lexington Avenue, 13th Floor New York, NY 10017 | N/A | Kmart Corporation | 835 Solomons Island Rd N Prince Frederick, MD 20678-3912 |
| 23. | 2306 | Gadsden Mall Associates, LLC, c/o Farrallon Capital Management, LLC c/o Nick Carbone, One Maritime Plaza, Suite 2100 San Francisco, CA 94111 | N/A | Sears, Roebuck and Co. | 1001 Rainbow Dr Gadsden, AL 35901-5376 |
| 24. | 7169 | Gardena Memorial Medical Plaza, LLC, c/o Elite Property Management LLC 3191 W. Casitas Avenue, Unit 130 Los Angeles, CA 90039 | N/A | Kmart Corporation | 400 South Broadway Salina, KS 67401-4005 |
| 25. | 2124 | Gemini Management Company, LLC (In Receivership), c/o C-III Asset Management LLC Attn: Chris Brantley, VP Special Servicing, 5221 N. O'connor Blvd., Suite 800 Irving, TX 75039 | N/A | Sears, Roebuck and Co. | 5522 Shaffer Rd Ste 129 Dubois, PA 15801-3304 |
| 26. | 2341 | GGP LP LLC   , dba PDC - Eastridge Mall LLC Attn: Law-Lease Administration Department, 350 N. Orleans Street, Suite 300 Chicago, IL 60654-1607 | N/A | Sears, Roebuck and Co. | 701 Se Wyoming Blvd Casper, WY 82609-4213 |
| 27. | 7223 | GGS, LLC d/b/a Magnolia Shopping Center 201 St. Charles Avenue, Suite 3201 New Orleans, LA 70170 | N/A | Kmart Corporation | 7000 Veterans Memorial Metairie, LA 70003-4497 |
| 28. | 2335 | Governor's Square Company, c/o The Cafaro Company Attn: Legal Department, 5577 Youngstown-Warren Road Niles, OH 4446 | N/A | Sears, Roebuck and Co. | 2801 Wilma Rudolph Blvd Clarksville, TN 37040-5011 |
| 29. | 9409 | Greenways LP, c/o 422 Realty LP 1055 Westlakes Drive, Suite 170 Berwyn, PA 19312 | N/A | Kmart Corporation | 1000 Nutt Rd Phoenixville, PA 19460-2200 |
| 30. | 2546 | Greenwood Mall LLC, c/o GGP, Inc. Attn: Law / Lease Administration Department, 110 North Wacker Drive Chicago, IL 60606 | N/A | Sears, Roebuck and Co. | 2625 Scottsville Rd Bowling Green, KY 42104-4477 |
| 31. | 2311 | GS Portfolio Holdings LLC, Attn: Law/Lease Administration Department Sooner Mall Sears Anchor, 350 N. Orleans Street, Suite 300 Chicago, IL 60654-1607 | N/A | Sears, Roebuck and Co. | 3201 W Main St Norman, OK 73072-4847 |
| 32. | 1287 | GS Portfolio Holdings LLC, dba Coronado Center Sears Anchor Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300 Chicago, IL 60654-1607 | N/A | Sears, Roebuck and Co. | 6600 Menaul Blvd Ne Ste 700 Coronado, NM 87110-3447 |
| 33. | 1080 | GS Portfolio Holdings LLC, dba Stonebriar Centre Sears Anchor Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300 Chicago, IL 60654-1607 | N/A | Sears, Roebuck and Co. | 2605 Preston Rd Frisco, TX 75034-9434 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 34. | 1403 | GS Portfolio Holdings LLC, Natick Mall Sears Anchor<br>Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300<br>Chicago, IL 60654-1607 | Lands' End, Inc.<br>Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane<br>Dodgeville, WI 53595 | Sears, Roebuck and Co. | 1235 Worcester Rd &<br>Natick, MA 01760- |
| 35. | 1112 | GS Portfolio Holdings LLC, Ridgedale Center Sears Anchor<br>Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300<br>Chicago, IL 60654-1605 | Lands' End, Inc.<br>Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane<br>Dodgeville, WI 53595 | Sears, Roebuck and Co. | 12431 Wayzata Blvd<br>Minnetonka, MN 55305-1925 |
| 36. | 1844 | GS Portfolio Holdings LLC, The Mall in Columbia Sears ANC<br>Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300<br>Chicago, IL 60654-1607 | Lands' End, Inc.<br>Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane<br>Dodgeville, WI 53595 | Sears, Roebuck and Co. | 10300 Little Patuxent Pkwy<br>Columbia, MD 21044-3341 |
| 37. | 1318 | GS Portfolio Holdings LLC, Valley Plaza Mall Sears Anchor<br>Attn: Law/Lease Administration Department, 350 N. Orleans Street, Suite 300<br>Chicago, IL 60654-1607 | N/A | Sears, Roebuck and Co. | 3001 Ming Ave<br>Bakersfield, CA 93304-4145 |
| 38. | 1115 | Hamilton Place Anchor S, LLC, c/o CBL & Associates Management, Inc.<br>Attn: Chief Legal Officer, 2030 Hamilton Place Blvd., Suite 500<br>Chattanooga, TN 37421 | N/A | Sears, Roebuck and Co. | 2100 Hamilton Place Blvd<br>Chattanooga, TN 37421-6006 |
| 39. | 3941 | Hauppauge Properties, LLC<br>1975 Hempstead Turnpike, Suite 309<br>East Meadow, NY 11554 | N/A | Kmart Corporation | Northridge S/C Us Hwy 127<br>Russell Springs, KY 42642-4559 |
| 40. | 7470 | Hershey Square 2014, L.P., c/o Heidenberg Properties Group<br>234 Closter Dock Road<br>Closter, NJ 07624 | N/A | Kmart Corporation | 1170 Mae Street<br>Hummelstown, PA 17036-9185 |
| 41. | 3823 | Jasper Station, LLC, c/o Phillips Edison Group LLC<br>11501 Northlake Drive<br>Cincinnati, OH 45249-1669 | N/A | Kmart Corporation | 723 3Rd Ave<br>Jasper, IN 47546-3639 |
| 42. | 1790 | Jefferson Anchor S, LLC, c/o CBL & Associates Management, Inc.<br>Attn: Chief Legal Officer, 2030 Hamilton Place Blvd., Suite 500<br>Chattanooga, TN 37421 | N/A | Sears, Roebuck and Co. | 4807 Outer Loop<br>Louisville-Okolona, KY 40219-3200 |
| 43. | 2537 | JPMCC 2007-LDP12 South Expressway 83, LLC, c/o ProEquity Asset Management Corp.<br>4980 Hillside Circle, Suite A<br>El Dorado Hills, CA 95762 | N/A | Sears, Roebuck and Co. | 2002 S Expy 83<br>Harlingen, TX 78552- |
| 44. | 3793 | KBTS - Tamiami, Ltd., c/o Federal Construction, Inc.<br>1550 De Maisonneuve Blvd. West, Suite 1010<br>Montreal, Quebec, CA H3G 1N2 | Goodwill<br>Harry Jordan, 2121 NW 21st Street<br>Miami, FL 33142-7382 | Kmart Corporation | 12350 Sw 8Th Street<br>Miami, FL 33184-1510 |
| 45. | 3133 | Kimco PK, Inc. d/b/a PK II Sunset Square, LLC, c/o Kimco Realty Corporation<br>3333 New Hyde Park Road, Suite 100, P. O. Box 5020<br>New Hyde Park, NY 11042-0020 | N/A | Kmart of Washington LLC | 1001 E Sunset Drive<br>Bellingham, WA 98226-3510 |
| 46. | 1998 | KIR Montebello, L.P., c/o Kimco Realty Corp. Attn:  Legal Department<br>3333 New Hyde Park Road, Suite 100, P. O. Box 5020<br>New Hyde Park, NY 11042 | N/A | Sears, Roebuck and Co. | 1401 N Montebello Blvd<br>Montebello, CA 90640-2584 |
| 47. | 3393 | KR Collegetown, LLC, c/o Brixmor Property Group<br>450 Lexington Avenue, 13th Floor<br>New York, NY 10017 | N/A | Kmart Corporation | 779 Delsea Dr N<br>Glassboro, NJ 08028-1435 |
| 48. | 3308 | Lake Orion Plaza LLC, c/o The Boutrous Companies<br>596 N. Lapeer Road<br>Lake Orion, MI 48362 | N/A | Kmart of Michigan, Inc. | 1025 M-24<br>Lake Orion, MI 48360-1429 |
| 49. | 9415 | Lake Plaza Shopping Center LLC, c/o Heidenberg Properties LLC<br>234 Closter Dock Road<br>Closter, NJ 07624 | N/A | Kmart Corporation | 987 Route 6<br>Mahopac, NY 10541-1709 |
| 50. | 2119 | Landcaster Development Company, LLC, c/o C.E. John Company, Inc.<br>Attn: Property Manager, 1701 SE Columbia River Drive<br>Vancouver, WA 98661 | N/A | Sears, Roebuck and Co. | 827 Lancaster Dr Ne<br>Salem(Lancaster), OR 97301-2929 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 51. | 7259 | Lawrence Kadish , c/o Lawrence Kadish Real Estate 135 Jericho Turnpike Old Westbury, NY 11568 | New Oriental Crafts, LLC Attn: Feng Zhao, 407 Spinnaker Way Williamsburg, VA 23185 | Kmart Corporation | 118 Waller Mill Rd Williamsburg, VA 23185-2946 |
| 52. | 1064 | Lincoln Plaza Center, LP, c/o Simon Property Group Attn: General Counsel, 225 West Washington Street Indianapolis, IN 46204 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 2300 E Lincoln Hwy Langhrn/Oxford Vly, PA 19047-1824 |
| 53. | 4257 | Manlaw Investment Company, Ltd., c/o EMMCO Realty Group 3681 S. Green Road, Suite 201 Beachwood, OH 44122 | N/A | Kmart Corporation | 17840 Bagley Rd Middleburg Heights, OH 44130-3401 |
| 54. | 1564 | Marion Plaza, Inc. d/b/a Eastwood Mall, c/o The Cafaro Company Attn: Legal Department, 5577 Youngstown-Warren Road Niles, OH 44446 | N/A | Sears, Roebuck and Co. | 5320 Youngstown Rd Niles, OH 44446- |
| 55. | 4026 | Mart Plaza, LLC, c/o GJ Realty 49 West 37th Street, 9th Floor New York, NY 10018-6257 | N/A | Kmart Corporation | 2901-5 N Belt Hwy St. Joseph, MO 64506-2006 |
| 56. | 7274 | Mauldin at Butler, LLC, c/o Hughes Real Estate 304 N. Church St., P O Drawer 2567 (Zip 29602) Greenville, SC 29601 | Mauldin at Butler, LLC (Hughes Development) Jayne McCall, P.O. Box 2567 Greenville, SC 29601 | Kmart Corporation | 129 West Butler Avenue Mauldin, SC 29662-2534 |
| 57. | 7460 | Maynardville Pike LP, c/o Lippes Mathias Wexler Friedman LLP 50 Fountain Plaza, Suite 1700 Buffalo, NY 14202-2216 | N/A | Kmart Corporation | 6909 Maynardville Pike Ne Knoxville, TN 37918-5325 |
| 58. | 7415 | MFS-Springfield, LLC, c/o Finmarc Management, Inc. 7200 Wisconsin Avenue, Suite 1100 Bethesda, MD 20814 | N/A | Kmart Corporation | 6364 Springfield Plaza Springfield, VA 22150-3431 |
| 59. | 2304 | Morgantown Mall Associates LP, c/o Washington Prime Group, Inc. Attn: General Counsel, 180 East Broad Street Columbus, OH 43215 | N/A | Sears, Roebuck and Co. | 9520 Mall Rd Westover/Morgantown, WV 26501-8524 |
| 60. | 1518 | MS Portfolio LLC, c/o Macerich Company, Attn: Edward C. Coppola 8214 Westchester Drive, Suite 500 Dallas, TX 75225 | N/A | Sears, Roebuck and Co. | 100 Los Cerritos Mall Cerritos, CA 90703-5421 |
| 61. | 1079 | MS Portfolio LLC, c/o Macerich Company, Attn: Edward C. Coppola 8214 Westchester Drive, Suite 500 Dallas, TX 75225 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 9800 Sw Washington Square Rd Washington Sq, OR 97223-4455 |
| 62. | 1464 | MS Portfolio LLC, c/o Macerich Company, Attn: Edward C. Coppola 8214 Westchester Drive, Suite 500 Dallas, TX 75225 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 1750 Deptford Center Rd Deptford, NJ 08096-5282 |
| 63. | 1169 | MS Portfolio LLC, c/o Macerich Company, Attn: Edward C. Coppola 8214 Westchester Drive, Suite 500 Dallas, TX 75225 | N/A | Sears, Roebuck and Co. | 3177 Chandler Village Dr Chandler, AZ 85226- |
| 64. | 1247 | MS Portfolio LLC, c/o Macerich Company, Attn: Edward C. Coppola 8214 Westchester Drive, Suite 500 Dallas, TX 75225 | N/A | Sears, Roebuck and Co. | 6002 Slide Rd Lubbock, TX 79414-8555 |
| 65. | 1618 | MS Portfolio LLC, c/o Macerich Company, Attn: Edward C. Coppola 8214 Westchester Drive, Suite 500 Dallas, TX 75225 | N/A | Sears, Roebuck and Co. | 100 Vintage Faire Mall Modesto, CA 95356-0559 |
| 66. | 1454 | Neshaminy Anchor Acquisition, LLC, Attn: Law/Lease Administration Department 350 N. Orleans Street, Suite 300 Chicago, IL 60654-1607 | N/A | Sears, Roebuck and Co. | 100 Neshaminy Mall Bensalem/Crnwls Hts, PA 19020-1607 |
| 67. | 4123 | Niagara Realty, LLC, c/o Edwin P. Yates 3224 Club Drive Los Angeles, CA 90064 | N/A | Kmart Corporation | 2590 Military Rd Niagara Falls, NY 14304-1506 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 68. | 3239 | North K I-29 2004, LLC<br>605 West 47th Street, Suite 200<br>Kansas City, MO 64112 | Zeller Auto Repair<br>Ken Zeller, 7090 NW Prairie View Rd.<br>Kansas City, MO 64151 | Kmart Corporation | 7100 Nw Prairie View Rd<br>Kansas City, MO 64151-1630 |
| 69. | 1131 | Northwood Investors , dba NW Centennial LLC<br>575 Fifth Avenue, 23rd Floor<br>New York, NY 10170 | Lands' End, Inc.<br>Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane<br>Dodgeville, WI 53595 | Sears, Roebuck and Co. | 7001 S University Blvd<br>Centennial, CO 80122-1599 |
| 70. | 3345 | Oryom Ventures, LLC (as to an undivided 2/3 interest) & DoYa Ventures, LLC<br>Oryom Ventures, LLC (as to an undivided 1/3 interest), Re: Kmart - Ceres<br>633 Erskine Drive<br>Pacific Palisades, CA 90272 | N/A | Kmart Corporation | 1351 E Hatch Rd<br>Modesto, CA 95351-5010 |
| 71. | 3600 | RB 1993-1 Trust- Robinson, c/o KM-SC, LLC, First Berkshire Properties, LLC<br>7978 Cooper Creek Blvd., Suite 100<br>University Park, FL 34201 | N/A | Kmart Corporation | 93 West Campbell Rd<br>Schenectady, NY 12306-6800 |
| 72. | 3424 | Regency Centers, L.P., c/o Regency Centers<br>1 Independent Drive, Suite 114<br>Jacksonville, FL 32202 | N/A | Kmart Corporation | 900 N W 76 Boulevard<br>Gainesville, FL 32606-6747 |
| 73. | 1137 | Regency Centers, LP<br>Attn: Lease Administration, One Independent Drive, Suite 114<br>Jacksonville, FL 32202 | N/A | Sears, Roebuck and Co. | 1000 E 41St<br>Austin, TX 78751-4859 |
| 74. | 4706 | Riverside Retail Investors, LLC<br>770 Township Line Rd., Suite 150<br>Yardley, PA 19067 | N/A | Kmart Corporation | 375 E Alessandro Blvd<br>Riverside, CA 92508-2463 |
| 75. | 3654 | Rivertowne Center Acquisition, LLC, c/o Wharton Realty Group, Inc.<br>8 Industrial Way East, 2nd Floor<br>Eatontown, NJ 07724 | N/A | Kmart Corporation | 6163 Oxon Hill Road<br>Oxon Hill, MD 20745-3108 |
| 76. | 4054 | Riverview Plaza Associates, LP, c/o The Zappala Group, Attn:  Mark Zappala<br>521 Thorn Street, P.O. Box 597<br>Sewickley, PA 15143 | N/A | Kmart Corporation | 100 Tarentum Rd<br>New Kensington, PA 15068-4670 |
| 77. | 9761 | RREF II-WPG Visalia, LLC, c/o Waypoint Property Group, LLC<br>567 San Nicolas Drive, Suite 270,<br>Newport Beach, CA 92660 | N/A | Kmart Corporation | 3247 W Noble Ave<br>Visalia, CA 93277-1841 |
| 78. | 9392 | Inc.<br>The Clinton Exchange, 4 Clinton Square<br>Syracuse, NY 13202-1078 | N/A | Kmart Corporation | 349 Orchard Park Rd<br>West Seneca, NY 14224-2634 |
| 79. | 9309 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties<br>500 Fifth Avenue, Suite 1530<br>New York, NY 10110 | N/A | Kmart Operations LLC | 2307 Superior<br>Webster City, IA 50595-3165 |
| 80. | 3945 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties<br>500 Fifth Avenue, Suite 1530<br>New York, NY 10110 | N/A | Kmart Operations LLC | 912 County Line Rd<br>Delano, CA 93215-3823 |
| 81. | 4304 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties<br>500 Fifth Avenue, Suite 1530<br>New York, NY 10110 | N/A | Kmart Operations LLC | 1 Flower Valley Shp Ctr<br>Florissant, MO 63033-1644 |
| 82. | 7746 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties<br>500 Fifth Avenue, Suite 1530<br>New York, NY 10110 | N/A | Kmart Operations LLC | 1180 Walnut Bottom Rd<br>Carlisle, PA 17013-9160 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 83. | 4297 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Kmart Operations LLC | 5000 23Rd Ave Moline, IL 61265-4599 |
| 84. | 4188 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Kmart Operations LLC | 1701 4Th Ave W Charleston, WV 25387-2415 |
| 85. | 9711 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Kmart Operations LLC | 2821 East Main St Russellville, AR 72801-9801 |
| 86. | 7043 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Kmart Operations LLC | 2302 Cherry Rd Rock Hill, SC 29732-2165 |
| 87. | 9521 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Kmart Operations LLC | 417 Main Street Madawaska, ME 04756-1197 |
| 88. | 4736 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Kmart Operations LLC | 4000 East 2Nd Street Casper, WY 82609-2385 |
| 89. | 1988 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive Vice President, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 3751 S Dogwood Ave El Centro, CA 92243- |
| 90. | 2663 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive Vice President, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears Operations LLC | 50 Fox Run Rd Ste 74 Portsmouth, NH 03801-2858 |
| 91. | 1574 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears Operations LLC | 1500 Highway 35 Middletown, NJ 07748-1831 |
| 92. | 1277 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 6301 Nw Loop 410 Ingram, TX 78238-3824 |
| 93. | 1740 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 3340 Mall Loop Dr Joliet, IL 60431-1057 |
| 94. | 1071 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 10785 W Colfax Ave Lakewood, CO 80215-3807 |
| 95. | 1052 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive Vice President, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 425 Rice St St Paul, MN 55103-2123 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 96. | 1193 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears Operations LLC | 850 Hartford Tnpk Waterford, CT 06385- |
| 97. | 1708 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 7611 W Thomas Rd Phoenix-Desert Sky, AZ 85033-5433 |
| 98. | 2034 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 15700 Emerald Way Bowie, MD 20716-2200 |
| 99. | 1146 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears Operations LLC | 2800 N Germantown Prkway Cordova, TN 38133- |
| 100. | 1250 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 2100 Southfield Rd Lincoln Park, MI 48146-2250 |
| 101. | 1078 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 6515 E Southern Ave Mesa/East, AZ 85206-3711 |
| 102. | 2805 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 733 N Highway 231 Panama City, FL 32405-5302 |
| 103. | 2245 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 1050 S Babcock St Melbourne, FL 32901-3022 |
| 104. | 1229 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 460 N Milwaukee St Boise, ID 83704-9122 |
| 105. | 1575 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 100 Newmarket Fair Mall Hampton, VA 23605-1406 |
| 106. | 1006 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 3100 Sw College Rd Ste 300 Ocala, FL 34474-8449 |
| 107. | 1227 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 3450 W Camp Wisdom Rd Southwest Ctr, TX 75237-2504 |
| 108. | 1944 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 600 Lee Blvd Yorktown Hts, NY 10598-1142 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 109. | 2298 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 1011 W Olive Ave Merced, CA 95348-2422 |
| 110. | 1408 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 5901 Florin Rd Florin, CA 95823-2302 |
| 111. | 2078 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 3150 S 4Th Ave Yuma, AZ 85364-8104 |
| 112. | 2047 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 2250 El Mercado Loop Sierra Vista, AZ 85635-5204 |
| 113. | 1955 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 3800 Us Highway 98 N Ste 500 Lakeland, FL 33809-3824 |
| 114. | 2565 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 303 Us Hwy 301 Blvd W Bradenton, FL 34205-7991 |
| 115. | 2147 | Seritage Growth Properties, L.P. dba Seritage SRC Finance LLC, c/o Seritage Growth Properties Attn: Executive VP, Operations & Leasing, 500 Fifth Avenue, Suite 1530 New York, NY 10110 | N/A | Sears Operations LLC | 2501 Irving Mall Irving, TX 75062-5161 |
| 116. | 4010 | Department The Times Building, 336 Fourth Avenue Pittsburgh, PA 15222 | N/A | Kmart Corporation | 880 Butler Street Pittsburgh, PA 15223-1319 |
| 117. | 3251 | Sheldon J. Mandell 2441 N. Leavitt Street Chicago, IL 60647-2005 | N/A | Kmart Corporation | 6780 W Washington St Indianapolis, IN 46241-2999 |
| 118. | 1470 | Simon Property Group, L.P., dba Greenwood Park Mall, LLC Attn: Sr. VP Development, 225 West Washington Street Indianapolis, IN 46204 | N/A | Sears, Roebuck and Co. | 1251 Us Highway 31 N Greenwood, IN 46142-4503 |
| 119. | 1019 | SPG-FCM II LLC dba Stoneridge S&S, LLC, c/o Simon Property Group Attn: Executive VP - Development Operations, 225 West Washington Street Indianapolis, IN 46204 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 1700 Stoneridge Dr Pleasanton, CA 94588- |
| 120. | 1658 | SPS Portfolio Holdings II, LLC, c/o Simon Property Group Attn: General Counsel, 225 West Washington Street Indianapolis, IN 46204 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 100 Santa Rosa Plz Santa Rosa, CA 95401-6381 |
| 121. | 1414 | SPS Portfolio Holdings II, LLC, c/o Simon Property Group Attn: General Counsel, 225 West Washington Street Indianapolis, IN 46204 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 75 W Route 59 Ste 100 Nanuet, NY 10954-2701 |
| 122. | 1151 | SPS Portfolio Holdings II, LLC, c/o Simon Property Group Attn: General Counsel, 225 West Washington Street Indianapolis, IN 46204 | N/A | Sears, Roebuck and Co. | 6929 S Memorial Dr Tulsa Woodland Hls, OK 74133-2035 |
| 123. | 1390 | SPS Portfolio Holdings II, LLC, c/o Simon Property Group Attn: General Counsel, 225 West Washington Street Indianapolis, IN 46204 | Lands' End, Inc. Attn: Sr.Vice President & General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 900 Briarwood Cir Ann Arbor, MI 48108-1618 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 124. | 1357 | SPS Portfolio Holdings II, LLC, c/o Simon Property Group Attn: General Counsel, 225 West Washington Street Indianapolis, IN 46204 | N/A | Sears, Roebuck and Co. | 2901 S Capitol Of Texas Hwy Austin/Barton Creek, TX 78746-8101 |
| 125. | 2056 | SRM-SPE, LLC dba Santa Rosa Mall, c/o Radiant Partners LLC 145 West 45th Street, 10th Floor New York, NY 10036 | N/A | Sears, Roebuck and Co. | 300 Mary Esther Blvd Mry Est/Ft Wltn Bch, FL 32569-1693 |
| 126. | 1004 | Steel 1111, LLC, c/o Steel Equities 999 South Oyster Bay Road, Suite 200 Bethpage, NY 11714 | Lands' End, Inc. Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 1111 Franklin Ave Garden City, NY 11530-1617 |
| 127. | 1388 | S-TRACT LLC, C/O SOUTH COAST PLAZA 3315 FAIRVIEW ROAD COSTA MESA, CA 92626 | Lands' End, Inc. Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 3333 Bristol St Costa Mesa, CA 92626-1811 |
| 128. | 2330 | The Cafaro Northwest Partnership dba South Hill Mall, c/o The Cafaro Company Attn: Legal Department, 5577 Youngstown-Warren Road Niles, OH 44446 | N/A | Sears, Roebuck and Co. | 3500 S Meridian Ste 900 Puyallup, WA 98373-3722 |
| 129. | 4215 | The Ciuffo Family Trust A, dated 5/16/80, c/o Arthur Ciuffo, Trustee P O Box 2352 Fulton, TX 78358 | Xiao Jun Song And Liu Y Lin 7818 State Ave. Kansas City, KS 66112 | Kmart Corporation | 7836 State Ave Kansas City, KS 66112-2417 |
| 130. | 4112 | The Estate of Walter R. Samuel & Marilyn Joy Samuels, as Tenants-in-Common dba Nineteenth Asheville Properties, c/o J & W Management Corporation 505 Park Avenue,  Suite 302 New York, NY 10022 | N/A | Kmart Corporation | 1001 Patton Ave Asheville, NC 28806-3643 |
| 131. | 9539 | University Center Associates, c/o Metropolitan Management Corporation 230 Windsor Avenue, P O Box 446 Narberth, PA 19072 | N/A | Kmart Corporation | 3205 Lincoln Hwy Thorndale, PA 19372-1012 |
| 132. | 1134 | US Centennial Malls JV LLC, dba The Connecticut Post LP c/o Centennial Real Estate Mgmt. LLC Attn: Chief Operating Officer, 8750 N. Central Expressway, Suite 1740 Dallas, TX 75231 | Lands' End, Inc. Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 1201 Boston Post Rd Sp 2095 Milford, CT 06460- |
| 133. | 2617 | Victoria Mall LP, ATTN: James M. Hull, c/o Hull Storey Gibson Companies, LLC 1190 Interstate Parkway Augusta, GA 30909 | N/A | Sears, Roebuck and Co. | 7508 N Navarro St Victoria, TX 77904-2654 |
| 134. | 1395 | West Town S&S LLC, c/o Simon Property Group Attn: Executive VP - Development Operations, 225 West Washington Street Indianapolis, IN 46204 | Lands' End, Inc. Attn: Sr.Vice President &  General Counsel, 5 Lands' End Lane Dodgeville, WI 53595 | Sears, Roebuck and Co. | 7600H Kingston Pike West Town, TN 37919-5604 |
| 135. | 3884 | Westfall Town Center JV, c/o Metro Commercial Management Services, Inc. 307 Fellowship Road, Suite 300 Mt. Laurel, NJ 08054 | N/A | Kmart Corporation | 111 Hulst Dr, Ste 722 Matamoras, PA 18336-2115 |
| 136. | 7717 | William J. Wade, Owner / Trustee uta #1995-4, c/o Wilmington Trust Company Corporate Trust Administration, Rodney Square North, 1100 N. Market Street Wilmington, DE 19890 | N/A | Kmart Corporation | 2712 W Main St Waynesboro, VA 22980-1618 |
| 137. | 4741 | William J. Wade, Owner / Trustee uta #1995-4, c/o Wilmington Trust Company Corporate Trust Administration, Rodney Square North, 1100 N. Market Street Wilmington, DE 19890 | N/A | Kmart Corporation | 8363 Lewiston Road Batavia, NY 14020-1236 |
| 138. | 9348 | Wilson Norridge, LLC, c/o AmCap, Inc. 333 Ludlow Street, 8th Floor Stamford, CT 06902 | Darden/Longhorn Steakhouse Ashley Powell, 1000 Darden Center Drive Orlando, FL 32837 | Kmart Stores of Illinois, LLC | 4210 N Harlem Ave Norridge, IL 60706-1277 |
| 139. | 3483 | Wolf Family Series LP dba Series III, Ontario Enterprises of the Wolf Family Series LP, c/o Wolf and Associates 115 North Doheny Drive, Suite 1 Los Angeles, CA 90048 | Wolf Family Series LP c/o Wolf & Wolf, 115 North Doheny Drive, Suite 1 Los Angeles, CA 90048 | Kmart Corporation | 2530 S Euclid Ave Ontario, CA 91762-6619 |

| | STORE ID NO. | COUNTERPARTY-LANDLORD AND ADDRESS | COUNTERPARTY-SUBTENANT/ASSIGNEE AND ADDRESS | DEBTOR | PROPERTY ADDRESS |
|---|---|---|---|---|---|
| 140. | 7471 | WRI Golden State, LLC, c/o Weingarten Realty Management Co. P O Box 924133, 2600 Citadel Plaza Drive, Suite 125, Houston, TX 77008 Houston, TX 77292-4133 | N/A | Kmart Corporation | 3968-A Missouri Flat Road Placerville, CA 95667-5240 |
| 141. | 1709 | WSSR LLC, c/o Lee Chiang, Manager 1479 Torrijos Court Shenandoah, TX 77384 | N/A | Sears, Roebuck and Co. | 1245 W Warm Springs Rd Henderson, NV 89014-8740 |
| 142. | 4450 | away 1015 Ashes Drive, Suite 205 Wilmington, NC 28405 | Choice Auto Repair Leonard Wood, 205 Black Court Creek Willow Springs, NC 27592 | Kmart Corporation | 4500 Western Blvd Raleigh, NC 27606-1814 |

## **Exhibit 2**

**Store Closing Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                                              :
                                                                   :      **Chapter 11**
**SEARS HOLDINGS CORPORATION, et al.,**            :
                                                                   :      **Case No. 18-_____ (RDD)**
                                                                   :
                       **Debtors.**[1]                    :      **(Joint Administration Requested)**

---------------------------------------------------------------x

## STORE CLOSING PROCEDURES

(a)    The Store Closing Sales[2] will be conducted during normal business hours at the applicable Closing Stores or such hours as otherwise permitted by the applicable unexpired lease; provided that the Debtors may, in their discretion, modify the business hours as necessary or advisable, but no longer than normal operating hours as provided in the applicable leases.

(b)    The Store Closing Sales will be conducted in accordance with applicable state and local "Blue Laws" and, thus, if applicable, no Store Closing Sales will be conducted on Sunday unless the Debtors have been operating the applicable Closing Stores on Sundays.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SRC Sparrow 1 LLC (None); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None); and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the *Interim Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of the Liquidation Consulting Agreement* (the "**Interim Order**").

(c)     On "shopping center" property, neither the Debtors nor the Liquidation Consultant shall distribute handbills, leaflets, or other written materials to customers outside of any Closing Stores' premises, unless permitted by the applicable lease or if distribution is customary in the "shopping center" in which such Store is located; <u>provided</u> <u>that</u> the Debtors and the Liquidation Consultant may solicit customers in such manner in the stores themselves.

(d)     The Debtors and the Liquidation Consultant shall have the right to sell or transfer the furniture, fixtures, and equipment (the "**FF&E**"), inventory, and any other assets in the Closing Stores (together, the "**Store Closing Assets**"), subject to the entry of the Proposed Order, and any such transactions shall be free and clear of all liens, claims, interests, and other encumbrances.  The Debtors and the Liquidation Consultant may advertise the sale of the Store Closing Assets in a manner consistent with these Store Closing Procedures.  The purchasers of any Store Closing Assets sold during a Store Closing Sale shall be permitted to remove the Store Closing Assets either through the back or alternative shipping areas of the applicable Closing Store at any time, or through other areas after the Closing Store's business hours; <u>provided</u> <u>that,</u> the foregoing shall not apply to *de minimis* Store Closing Sales made whereby the item can be carried out of the Closing Store in a shopping bag.

(e)     The Debtors may abandon any Store Closing Assets not sold in the Store Closing Sales at the Closing Stores at the conclusion of the Store Closing Sales; <u>provided</u> <u>that</u>, if the Debtors propose selling or abandoning such assets, which may contain personal or confidential information about the Debtors' employees or customers (the "**Confidential Information**"), the Debtors shall remove the Confidential Information from such items of assets before such sale or abandonment, and retain such Confidential Information until further order of the Court.

(f)     The Debtors and the Liquidation Consultant may, but are not required to, advertise all of the Store Closing sale as "store closing sale," "sale on everything," "everything must go," or similarly themed sales.  The Debtors and the Liquidation Consultant may also advertise each sale as a "store closing" and have a "countdown to closing" sign prominently displayed in a manner consistent with these Store Closing Procedures.

(g)     If Store Closing Sales are to be considered "final," conspicuous signs will be posted in each of the affected stores to the effect that all sales are "final."

(h)     The Debtors and the Liquidation Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Store Closing Sales.  All display and hanging signs in connection with the Store Closing Sales will be professionally lettered and all hanging signs will be hung in a professional manner.  In addition, the Debtors will be permitted to utilize exterior banners and sign-walkers, provided that such use is in a safe and professional manner.  Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Liquidation Consultant any additional restrictions not contained in any applicable lease agreement.

(i)     Neither the Debtors nor the Liquidation Consultant shall make any alterations to the storefront, roof, or exterior walls of any Closing Stores, or interior or exterior store lighting and will not use any type of amplified sound to advertise the Store Closing Sales or solicit customers, except as authorized by the applicable lease.  The hanging of signage as provided herein shall not constitute an alteration to any Closing Store.

(j)     Landlords will have the ability to negotiate with the Debtors, or at the Debtors' direction, the Liquidation Consultant, any particular modifications to the Store Closing Procedures.  The Debtors and the landlord of any Closing Store are authorized to enter into agreements modifying the Store Closing Procedures (each, a "**Landlord Agreement**") without further order of the Court; provided that such agreements do not have a material adverse effect on the Debtors or their estates.

(k)     No property of any landlord will be removed or sold during the Store Closing Sales.  No property of any other non-Debtor third party will be removed or sold during the Store Closing Sales other than in the ordinary course of business.

(l)     With respect to any personal property that is leased to the Debtors by a third party or owned by a third party, such third party may contact the Debtors and remove or cause to be removed such personal property from the Closing Store after the completion of the Store Closing Sales and prior to the Debtors turning over the premises to the applicable landlord.

        To the extent that a dispute arises between the Debtors and a third party regarding the ownership and/or rights of such third party and the Debtors in certain affected personal property to be sold in a Store Closing Sale (including, without limitation, the right of the Debtors to sell such personal property), then either the Debtors or such third party may move or otherwise petition this Court to adjudicate such dispute on an expedited basis so that the dispute can be resolved prior to the completion of such Store Closing Sale.

        For the avoidance of doubt, if any such personal property remains at the Closing Store after the Store Closing Sales have been completed and the premises have been returned to the applicable landlord, the landlord may dispose of any and all such property.

(m)     The Debtors will keep each store premises and surrounding areas clear and orderly, consistent with past practices.

(n)     The Debtors do not have to comply with Liquidation Sale Laws or lease provisions or covenants that are inconsistent with these Store Closing Procedures.

(o)     Pharmaceutical Assets will be sold or transferred in accordance with applicable state law.

(p)     An unexpired nonresidential real property lease will only be deemed rejected in accordance with the Lease Rejection Procedures set forth in the *Motion of Debtors for Entry of an Order Establishing Procedures for Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith*, filed contemporaneously herewith, or by separate order of the Court, and shall not be

3

deemed rejected solely by reason of a Store Closing Sale or the adoption of the Store Closing Procedures.

(q)    The rights of landlords against the Debtors for any damages to any Closing Store shall be reserved in accordance with the provisions of the applicable lease.

(r)    The Liquidation Consultant (or any other liquidation consultant retained by the Debtors, subject to the approval rights of the DIP ABL Agents under the terms of the DIP Loan Documents, as applicable) and its respective agents and representatives shall continue to have exclusive and unfettered access to each applicable Closing Store until and unless the Debtors reject the underlying lease.

(s)    Closing Stores that are not Initial Closing Stores may be closed under the Liquidation Consulting Agreement, or in accordance with any other agreement approved by the Debtors subject to the approval rights of the DIP ABL Agents under the terms of the DIP Loan Documents.

(t)    No landlord, licensor, property owner, or property manager shall prohibit, restrict, or otherwise interfere with any Store Closing Sale at any Closing Store.

(u)    If the landlord of any Closing Store contends that the Debtors or the Liquidation Consultant is in breach of or default under these Store Closing Procedures (an "**Alleged Default**"), such landlord shall provide the Debtors with at least seven (7) days' written notice (the "**Default Notice Period**") of the Alleged Default, which notice shall include the opportunity for the Debtors to cure such Alleged Default within seven (7) days of the expiration of the Default Notice Period (the "**Default Cure Period**"), served by email or overnight delivery, on:

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Stephen Sitley, Esq. and Luke J. Valentino, Esq.
E-mail: stephen.sitley@searshc.com and luke.valentino@searshc.com

with a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.
E-mail: ray.schrock@weil.com, jacqueline.marcus@weil.com, garrett.fail@weil.com, and sunny.singh@weil.com.

If the parties are unable to resolve the Alleged Default at the end of the Default Cure Period, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served

WEIL:\96759255\1\73217.0003

by email or overnight delivery.

(v)    These Store Closing Procedures are subject to the requirements of the interim and final orders entered by the United States Bankruptcy Court for the Southern District of New York in connection with the Debtors' executing the Store Closing Sales.

WEIL:\96759255\1\73217.0003

## **Exhibit 3**

**Liquidation Consulting Agreement**

<u>AMENDED AND RESTATED</u>
<u>AGENCY AND CONSULTING SERVICES</u> <u>AGREEMENT</u>

THIS AMENDED AND RESTATED AGENCY AND CONSULTING SERVICES

AGREEMENT (the "Agreement") is entered into as of October 10, 2018, by and between Sears

Holdings Management Corporation, a Delaware corporation, as agent for Kmart Corporation

("Kmart"), a Michigan corporation, and Sears, Roebuck and Co. ("Sears"), a New York

corporation, having its corporate office at 3333 Beverly Road, Hoffman Estates, Illinois 60179

(referred to herein as "Company"), and Abacus Advisors Group L.L.C. ("Agent"), a Delaware

limited liability company, having its offices at 10 Reuten Drive, Closter, New Jersey 07624.

WHEREAS, Company and Agent have entered into that certain Agency and

Consulting Agreement, dated as of February 19, 2012 (as amended, supplemented or otherwise

modified from time to time, the "Existing Agreement"), pursuant to which Company retained

Agent to provide exclusive advisory services to assist Company with disposing of merchandise

inventory to be liquidated (the merchandise inventory being referred to as the "Inventory")

contained within certain stores through so-called store closing or total liquidation sales at each

Store ("Liquidation Sale" or "Sale");

WHEREAS, pursuant to the Existing Agreement, Agent has supervised so-called

store closing or total liquidation sales with respect to in excess of 800 of Company's stores;

WHEREAS, Company and Agent desire to amend and restate the Existing

Agreement to provide for Company to retain Agent to provide exclusive advisory services to assist

Company with disposing of Inventory through Liquidation Sales at some or all of the stores

operated by Kmart, Sears or any other subsidiary of Sears Holdings Corporation (the "Stores"); and

WHEREAS, among the alternatives available to the Company is to file a voluntary

petition for relief under chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in an

applicable United States Bankruptcy Court (the "Bankruptcy Court").

NOW, THEREFORE, in consideration of the premises and of the mutual covenants

herein contained, the parties hereto intending to be legally bound hereby agree as follows:

1 .    <u>ADVISORY SERVICES</u>. Agent shall provide exclusive advisory services to

Company in connection with Company's efforts to liquidate and dispose of Inventory at each Store

selected by Company in its sole and absolute discretion by notice to Agent. Agent shall use its best

efforts, expertise, and professional judgment to maximize the return to Company of the Liquidation

Sales, and shall comply with all federal, state and local laws, rules and regulations applicable to this

Agreement or to the performance thereof, including Liquidation Sale Laws (unless an order of the

Bankruptcy Court approving departure from such Liquidation Sale Laws is entered). "Liquidation

Sale Laws" shall mean all applicable laws, rules and regulations in respect of "Store Closing

Sales", "Lease Expiration Sales" or similar-themed sales, including laws relating to safe,

professional and non-deceptive, customary advertising such as signs, banners, posting of signage,

and use of sign-walkers solely in connection with the Liquidation Sale and including ordinances

establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions

that would otherwise apply to the Liquidation Sale, but excluding those designed to protect public

health and safety.

2.    <u>TERM</u>. The term of this Agreement shall be for a period commencing on

the date first written above and ending on December 31, 2019 (the "Term"). However, at any time,

Company may terminate this Agreement by providing Agent thirty (30) days prior written notice.

3.    <u>SUPERVISION.</u> Agent shall supply, as a Sale Expense under Section 10,

one and only one full-time supervisor (unless otherwise agreed to by Company) for each Store for

the duration of the Sale, which supervisor shall be approved by Company in its sole, absolute and

unfettered discretion. The supervisor for each Store shall be on-site and commence his or her

responsibilities no later than the date referenced in Schedule "A" as the "On-Site Date." Agent, through its management and supervision, shall, in consultation with Company, plan the advertising, marketing and sales promotion for the Liquidation Sale, arrange the stock in the Store for liquidation, determine and effect price reductions so as to sell the Inventory in the time allotted for the Sale, arrange for and supervise all personnel and merchandise preparation, and conduct the Sale in a manner reasonably designed to minimize the expenses to Company and realize for its benefit the maximum return. Agent hereby represents and warrants to Company that it reasonably believes that it is able to retain sufficient supervisors to conduct the Sales in a fashion consistent with past practice in connection with previous sales conducted by Agent for Company. Agent hereby further agrees that it shall retain supervisors to conduct the Sales in a fashion consistent with past practice in connection with previous sales conducted by Agent for Company.

4.      <u>SECURITY</u>.  Agent shall utilize current loss prevention store staff.

5.      <u>LIQUIDATION SALE</u>. The Liquidation Sale for each Store shall commence on the date determined by Company in its sole and absolute discretion and set forth in the notice described in Section 1 hereof, which date shall be hereinafter referred to as the "Effective Date". Agent will not advertise or discount until the Effective Date. In consultation with Company, Agent shall discount the Inventory (and change discounts from time to time) in accordance with its professional judgment in order to maximize the proceeds and maintain the momentum of such Sale. Within three (3) days of completion of the Liquidation Sale at a Store, which shall be on a date determined by Company (in consultation with Agent) with respect to such Store (the "Sale Termination Date"), Agent shall cause the Store to be left in broom clean condition (other than with respect to store fixtures and equipment). The date upon which each Store is vacated and left in broom clean condition shall be no later than the Sale Termination Date.

6.      <u>ADVERTISING.</u>      Agent shall follow all legal requirements applicable to

the advertising of each Sale and shall ensure that all such advertising complies with applicable

laws, including Liquidation Sale Laws (unless an order of the Bankruptcy Court approving

departure from such Liquidation Sale Laws is entered). All advertising shall be conducted under the

name of Kmart or Sears (depending upon the type of the Store). Each Sale will be advertised as a

"Store Closing Sale," "Lease Expiration Sale" or similar description, during the period starting

from the Effective Date through the Sale Termination Date of such Sale, and to the extent permitted

by applicable leases, laws, regulations and ordinances, Agent shall be permitted to use signs and

banners reflecting this message. Agent's use of temporary banners, sign walkers or other means of

advertising the Sales must comply with applicable laws, including Liquidation Sale Laws (unless

an order of the Bankruptcy Court approving departure from such Liquidation Sale Laws is entered).

Agent will be sensitive to and work with Company to resolve conflicts with advertising near on-

going stores as identified by Company. Company must, in any event, approve all advertising and

signage prior to its use. Unless otherwise expressly agreed by Company, the words "Going Out of

Business" or "GOB" will not be used in any advertising. Unless otherwise expressly agreed by

Company, Agent shall not use the phrase "All on Sale" or any similar terminology in any

advertising of home appliance or home electronics items.

       7.    <u>LICENSES - RULES</u>.  Agent shall work with Company to obtain all

necessary permits and licenses and comply with all federal, state and local laws, rules and

regulations relating to the Liquidation Sale, including Liquidation Sale Laws (unless an order of the

Bankruptcy Court approving departure from such Liquidation Sale Laws is entered). Agent will be

responsible for advising its supervisor(s) as well as Company's employees under Agent's

supervision on how to comply with those laws, rules and regulations. Each and every sale at the

Stores shall be conducted on an "as-is" and "where-is" basis with "all sales final." No refunds or

exchanges whatsoever shall be accepted other than refunds for merchandise purchased before

commencement of the Sale or otherwise as approved by Company. Such refunds will be recorded and the merchandise, if saleable, returned to stock for resale, or, if defective, returned to vendor. Such merchandise shall be included in the aggregate retail value, with a reduction for the prevailing discount in effect at the time the merchandise is returned. There will be no express warranties regarding the Inventory sold other than those provided by the manufacturer. All sales shall be for cash, all credit cards currently accepted by Company, and checks that are acceptable according to Company's current policies and procedures. Agent shall cause all floor operations to comply with current check and credit authorization procedures.

8.    EMPLOYEES. Agent shall use personnel from the Stores, including each Store's management, to the extent Agent believes the same to be feasible, and Agent shall select and schedule the number and type of employees required for the Sale. Agent shall, as soon as reasonably possible, notify Company as to which of the Company employees are no longer required for the Sale.

9.    AGENT FEE. As consideration for Agent's efforts and services in connection with the Sale, Agent shall receive a monthly graduated fee as follows:

- If 20 active closings or less in any given month, Company shall pay to Agent One Hundred Thousand Dollars ($100,000.00) as the monthly fee;

- If 21 - 30 active closings in any given month, Company shall pay to Agent One Hundred Ten Thousand Dollars ($110,000.00) as the monthly fee;

- If 31 - 40 active closings in any given month, Company shall pay to Agent One Hundred Twenty Thousand Dollars ($120,000.00) as the monthly fee;

- If 41 - 50 active closings in any given month, Company shall pay to Agent One Hundred Thirty Thousand Dollars ($130,000.00) as the monthly fee; and

- If 51 or greater active closings in any given month, Company shall pay to Agent

One Hundred Forty Thousand Dollars ($140,000.00) as the monthly fee, which fee shall be invoiced by Agent to Company and shall be payable by Company within fifteen (15) days after receipt of such invoice. In addition, at the conclusion of the Term, Agent and Company shall discuss and may agree, in Company's sole discretion and subject to entry of an order of the Bankruptcy Court approving such performance fee, upon the payment of a performance fee if circumstances and the results of the Sales so warrant. Such performance fee, if any, may be based on total proceeds of the Sales ("Gross Proceeds"), or any other basis Company, in its sole discretion, shall determine.

10. <u>EXPENSES</u>. Company shall pay (or reimburse Agent for) the following expenses of each Sale (the "Sale Expenses"):

a    Payroll for Store employees;

b.    Payroll taxes and benefits for Store employees (excluding sick leave, maternity benefits and other leaves of absence, severance or termination pay, ERISA coverage and similar benefits);

c.    Agent's actual cost for each supervisor's fees, reasonable travel costs and bonuses (subject to the remainder of this Section 10);

d.    Advertising and promotional costs, including signage;

e.    Risk management not to exceed $3,000 per Store;

f.    Outside services, bank charges, credit card fees and discounts (at Company's customary rates) and chargebacks;

g.    Utilities;

h.    Cleaning;

i.    Additional Supplies;

j.    Travel (Store associates);

k.   "Occupancy" expenses including rent, percentage rent, CAM, real estate taxes, rental equipment and similar items on a per diem, per Store basis;

l.   Communications;

m.   Bad check expense;

n.   Cash over/short; and

o.   Sundry.

Company shall provide (not to be considered Sale Expenses), during the period starting from the Effective Date through the Sale Termination Date, central administrative services reasonable or necessary for each Sale, such as POS administration, other insurance, sales audit, cash reconciliation and payroll processing. Agent shall provide Company with a comprehensive budget of Sale Expenses and supervisor compensation (the "Budget"), which Budget shall be in form and substance acceptable to Company. Sale Expenses and supervisor compensation shall be payable only to the extent consistent with the Budget. Sale Expenses shall be invoiced by Agent to Company upon completion of each Sale and shall be payable by company within ten (10) days after receipt of said invoice. The on-site supervisors shall be paid Two Thousand Four Hundred Fifty Dollars ($2,450.00) per week, which amount shall be invoiced by Agent to Company and shall be payable by Company within ten (10) days after receipt of such invoice. In addition, the on-site supervisors shall be eligible to receive incentive compensation up to a maximum of One Thousand Two Hundred Twenty Five Dollars ($1,225.00) per week based upon the supervisor's performance as measured by a formula constructed by Agent. This incentive compensation is performance based as determined by and in the Agent's sole discretion. At the conclusion of the Sale, Agent shall calculate the incentive compensation that may be due to each on-site supervisor, provide Company with the amount of such incentive compensation, and Company shall pay each on-site supervisor the amount of such compensation in a lump sum within (10)

days of receipt of the information from Agent.

Agent shall charge no home office expense (except for out-of-pocket travel and related expenses that are pre-approved by Company) for its management representation. Company shall be responsible for all other expenses which are not Sale Expenses.

11.    LEASED DEPARTMENTS. The leased departments within the Stores may participate in the Liquidation Sale at the option of the operator of any such department so long as they follow the rules, procedures and discounts recommended and implemented by Agent. Applicable lease income for any such leased department accrued during such Liquidation Sale shall be included in Gross Proceeds of the applicable Store. Lease income is defined as the net proceeds received or retained by Company during such Sale as determined in accordance with the respective License Agreement or other Agreement between Company and the respective Lessee.

12.    OTHER SALE MATTERS.

a.    Administration of matters such as layaways, Store credits and gift certificates will be the responsibility of Company, but Agent agrees to cooperate fully with Company in the administration of such matters. Agent will conduct each Sale using all existing Company policies.

b.    Returns of merchandise purchased before commencement of each Sale will be accepted throughout such Sale. When a receipt is not present, the lowest price offered for the last thirty (30) days will be paid to the customer.

c.    Subject to Section 16 hereof, furniture, fixtures and equipment will not be sold.

13.    INSURANCE. Company shall maintain, during the period of each Sale, all insurance in amounts at least equal to the insurance coverage presently in force.

Agent will not be responsible for loss, liability, damage or expense arising out of any

casualty or other loss, unless caused by the intentional or willful misconduct or gross

negligence of Agent's employees or supervisors. With respect to losses of Inventory

occurring after the Effective Date, any insurance proceeds shall be deemed Gross Proceeds

from the Sale.

      14.   <u>INDEMNIFICATION</u>. Agent and Company agree to indemnify,

defend and hold each other free and harmless from and against any and all demands, claims,

actions or causes of action, assessments, losses, damages, liabilities, obligations, costs and

expenses of any kind whatsoever, including, without limitation, attorneys' fees and costs,

asserted against, resulting from or imposed upon, or incurred by either party hereto by reason

of or resulting from a material breach of any term or condition contained in this Agreement

or any willful misconduct or intentional act of the other party.

      15.   <u>AGENCY</u>. The parties hereby agree that Agent is acting as an agent of

Company during the period of this Agreement and as such will observe all of the fiduciary

duties which the law imposes on agents with respect to their principals. No joint venture or

partnership has been formed.

      16.   <u>LIQUIDATION OF FIXTURES</u>. In the event Company requests Agent

to sell or otherwise dispose of some or all of the fixtures, equipment, furniture, furnishings and

other appurtenances thereto located at any Store (hereinafter referred to collectively as "Store

Fixtures"), Agent agrees to use its reasonable best efforts to sell or otherwise dispose of the

Store Fixtures so designated by Company. In consideration for rendering such services,

Company and Agent hereby agree that Agent shall receive ten percent (10%) of the gross

proceeds inclusive of any payments such as a buyer's premium, or the like (net of sales taxes)

realized on the sale or other disposition of the Store Fixtures so designated by Company

together with reimbursement of reasonable out of pocket expenses incurred by Agent pursuant to a budget approved by Company. Agent shall pay to Company the remaining ninety percent (90%) of the gross proceeds inclusive of any payments such as a buyer's premium or the like (net of sales taxes) from such sale on a weekly basis.

17.    ASSIGNMENT. Neither party may assign this Agreement without the express written consent of the other party.

18.    NOTICES. All notices or other consents and communications required under this Agreement or otherwise shall be in writing and effective only upon receipt, and may be hand-delivered or sent via U.S. express mail, Federal Express or another recognized overnight courier.  Notices to Company shall be sent to Mohsin Meghji at the address below, and notices to Agent shall be sent to Alan Cohen at the address noted above (or such other address as may be provided).

Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attention: Mohsin Meghji, Chief Restructuring Officer

19.    ENTIRE AGREEMENT. This Agreement amends, restates and supersedes in its entirety the Existing Agreement, which shall have no further force or effect; provided that any sales ongoing under the Existing Agreement as of the date hereof shall be deemed to be Sales under this Agreement and any amounts due and owing under the Existing Agreement as of the date hereof shall be deemed to be amounts due and owing under this Agreement.  This Agreement contains the entire understanding of the parties with regard to its subject matter and may not be amended or rescinded except by a writing executed by each of the parties hereto. Each party represents that it has the requisite authority to enter into this

Agreement upon the terms and conditions set forth herein.

20.    <u>EXECUTION.</u> This Agreement may be executed in counterparts by the parties hereto and any signatures received via facsimile transmissions will be binding and effective between the parties until original signatures are obtained.

21.    <u>GOVERNING LAW</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to conflict of laws principles.

<u>SIGNATURES  ARE  ON THE NEXT  PAGE</u>

KMART CORPORATION and SEARS,
ROEBUCK AND CO.
By: Sears Holdings Management Corporation, Their Agent

By:_____
Name:
Title:

ABACUS  ADVISORS  GROUP L.L.C.


By: _____
Name:
Title:

-12-

KMART CORPORATION and SEARS,
ROEBUCK AND CO.
By: Sears Holdings Management Corporation, Their Agent

By:_____
Name:
Title:

ABACUS  ADVISORS  GROUP L.L.C.

By: _____
Name:  Terrence A. Corrigan
Title:    Managing Director