**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                                        :

                                                         :     **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.*,                    :

                                                         :     **Case No. 18-23538 (RDD)**

                                                         :

Debtors. [1]                                                 :     **(Jointly Administered)**

---------------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION  SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Sears Holdings Corporation ("Holdings") and its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking entry of an interim order (this "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "DIP Orders") providing for, among other things, the following relief:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

(i)      authorizing Sears Roebuck Acceptance Corp., a Delaware corporation, ("SRAC"), and Kmart Corporation, a Michigan corporation ("Kmart", and together with SRAC, the "DIP ABL Borrowers") to borrow, and each of the other Debtors, to guarantee (in such capacity, the "DIP ABL Loan Guarantors" and, together the with the DIP ABL Borrowers, the "DIP ABL Loan Parties"), a senior secured superpriority priming non-amortizing debtor-in-possession asset-based credit facility (the "DIP ABL Facility"), in an aggregate principal amount of up to $1,830,378,380 billion on the terms and conditions set forth in the DIP ABL Term Sheet, an execution copy of which is attached to the Motion as Exhibit B and attached hereto as Exhibit B (the "DIP ABL Term Sheet") pending entry of the Final Order, and, from and after the Final Closing Date (as defined DIP ABL Term Sheet), a credit agreement in the form to be filed prior to the Final Hearing (the "DIP ABL Credit Agreement"), among the Debtors, Bank of America, N.A., as administrative agent (in such capacity, the "DIP ABL Administrative Agent"), Bank of America, N.A. and Wells Fargo Bank, National Association, each as a co-collateral agent (each in such capacity, a "DIP ABL Co-Collateral Agent", and together with the DIP ABL Administrative Agent, the "DIP ABL Agents"), the revolving lenders from time to time party thereto (the "DIP ABL Revolving Lenders"), and the term lenders from time to time party thereto (the "DIP ABL Term Lenders", and together with the DIP ABL Revolving Lenders, the "DIP ABL Lenders" and, together with the DIP ABL Agents and the DIP ABL Cash Management/Bank Product Providers (as defined below), the "DIP ABL Credit Parties"), allocated and made available to the DIP ABL Borrowers as follows:

(a)      upon entry of this Interim Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet and this Interim Order, (x) an asset-based revolving credit facility with aggregate initial commitments of $188,110,759 (such commitments, the "Incremental DIP ABL Revolving Commitments," the advances made pursuant thereto, the "Incremental DIP ABL Revolving Advances," and such facility, the "Incremental DIP ABL Revolver"), including (i) a $50 million letter of credit subfacility made available upon entry of the Interim Order (the "Incremental DIP ABL L/C Subfacility"), and (ii) a $25 million discretionary swingline subfacility (the "Incremental DIP ABL Swingline Subfacility", the Incremental DIP ABL Revolving Advances, together with the obligations under the Incremental DIP ABL L/C Subfacility and the Incremental DIP ABL Swingline Subfacility, the "Incremental DIP ABL Revolving Extensions of Credit"), and (y) an asset-based term loan facility in an aggregate initial principal amount of $111,889,241 (the "Incremental DIP ABL Term Loan", and together with the Incremental DIP ABL Revolving Extensions of Credit", the "Incremental DIP ABL Obligations");

(b)      upon entry of the Final Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet, the DIP ABL Loan Documents (as defined below), and the Final Order, a roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit (as defined below) beneficially owned by the DIP ABL Revolving Lenders that have agreed to participate in the

Incremental DIP ABL Revolver (the "Roll Up DIP ABL Revolving Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Revolving Extensions of Credit", and together with the Incremental DIP ABL Revolving Extensions of Credit, the "DIP ABL Revolving Extensions of Credit"; and such loans, the "Roll Up DIP ABL Revolving Advances", and together with the Incremental DIP ABL Revolving Advances, the "DIP ABL Revolving Advances", the commitments to make such DIP ABL Revolving Advances, the "DIP ABL Revolving Commitments"), which, with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations shall roll into a letter of credit subfacility (the Incremental DIP ABL L/C Subfacility, together with such rolled up participations, the "DIP ABL L/C Subfacility") and any prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (ii) all of the Prepetition ABL Term Loans (as defined below) beneficially owned by the DIP ABL Term Lenders that have agreed to participate in the Incremental DIP ABL Term Loan (the "Roll Up DIP ABL Term Lenders", and together with the Roll Up DIP ABL Revolving Lenders, the "Roll Up DIP ABL Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Term Loans", and together with the Incremental DIP ABL Term Loan, the "DIP ABL Term Loans" and the Roll UP DIP ABL Term Loans together with the Roll Up DIP ABL Revolving Extensions of Credit, the "Roll Up DIP ABL Obligations," and such transactions, the "ABL Roll Up", and the Roll Up DIP ABL Obligations, together with the Incremental DIP ABL Obligations and all other obligations under the DIP ABL Loan Documents, the "DIP ABL Obligations"), and (iii) Bank Products (as defined under the Prepetition ABL Credit Agreement other than those under the Prepetition LC Facility Agreement (as defined below)) and Cash Management Obligations (as defined under the Prepetition ABL Credit Agreement);

(ii)     authorizing the DIP ABL Loan Parties to execute, deliver and abide by (x) the DIP ABL Term Sheet pending entry of the Final Order, (y) the DIP ABL Credit Agreement upon entry of the Final Order, and (z) any other agreements, instruments, pledge agreements, guarantees, control agreements and other loan documents related to any of the foregoing (including any security agreements, intellectual property security agreements, notes, blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements, and all Uniform Commercial Code filings and all filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors) (each of the foregoing, as amended, restated, supplemented, waived,

and/or modified from time to time prior to the Petition Date, and collectively, with the DIP ABL Term Sheet and the DIP ABL Credit Agreement after entry of the Final Order, the "DIP ABL Loan Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Loan Documents;

(iii)     authorizing the DIP ABL Administrative Agent to terminate any of its obligations under the DIP ABL Loan Documents upon the occurrence and continuance of Termination Event (as defined below), which includes an Event of Default (as defined in the DIP ABL Loan Documents);

(iv)     To secure all DIP ABL Obligations and all obligations under any cash management services and bank products, including obligations in respect of the BofA Credit Card Program (as defined in the DIP ABL Term Sheet), but excluding obligations under or in connection with the Prepetition LC Facility Agreement (as defined below) (the "DIP ABL Cash Management/Bank Product Obligations", and collectively with the DIP ABL Obligations, the "DIP ABL Secured Obligations") entered into with any DIP ABL Lender, any DIP ABL Agent or any of their respective affiliates as of the Petition Date or at the time of entering into such arrangements (each, a "DIP ABL Cash Management/Bank Product Provider"), granting to the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all DIP ABL Credit Parties, in accordance with the relative priorities set forth in the DIP Orders, and in each case subject to the Carve-Out (as defined below):

(a)     pursuant to section 364(c)(1), 503(b), and 507(a)(2) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), superpriority allowed administrative priority expense claims in each of the DIP ABL Loan Parties' Chapter 11 Cases and any Successor Cases (as defined below);

(b)     pursuant to section 364(c)(2) of the Bankruptcy Code, an automatically perfected first priority security interest in and lien on all property of the DIP ABL Loan Parties' estates that is not subject to a valid and perfected lien on the Petition Date, including, upon entry of the Final Order, the Avoidance Action Proceeds (as defined below);

(c)     pursuant to section 364(c)(3) of the Bankruptcy Code, an automatically perfected junior priority security interest in and lien on all property of the DIP ABL Loan Parties' estates (other than Prepetition ABL Collateral (as defined below)) that is subject to valid and perfected security interests in favor of third parties as of the Petition Date (as defined below); and

(d)     pursuant to section 364(d) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Prepetition ABL Collateral, subject only to any Permitted Prior Liens (as defined below);

(v)     authorizing and directing the DIP ABL Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Loan Documents

4

as they are earned, due and payable in accordance with the terms of the DIP ABL Loan Documents and the DIP Orders;

(vi)     authorizing the DIP ABL Loan Parties, solely in accordance with the Approved Budget (as defined below), the DIP ABL Loan Documents and the DIP Orders, to use the Prepetition ABL Collateral, including "Cash Collateral" (as defined in section 363 of the Bankruptcy Code) of the Prepetition Credit Parties;

(vii)    granting adequate protection to the Prepetition Credit Parties (as defined below) for any diminution in value resulting from the imposition of the automatic stay, the DIP ABL Loan Parties' use, sale, or lease of the Prepetition Collateral and the priming of their respective liens and interests in the Prepetition Collateral (including by the Carve-Out);

(viii)   solely upon entry of the Final Order, the waiver by the DIP ABL Loan Parties of (a) any right to surcharge the DIP ABL Collateral and the Prepetition ABL Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the "equities of the case" exception in section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and Prepetition ABL Collateral;

(ix)     vacating and modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Orders and the DIP ABL Loan Documents; and

(x)      pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), requesting an initial hearing on the Motion be held before the Bankruptcy Court to consider entry of the Interim Order (the "Interim Hearing") to authorize on an interim basis (a) borrowing under the DIP ABL Loan Documents in an aggregate amount of up to $300 million and (b) the use of the Prepetition ABL Collateral, including Cash Collateral in accordance with the Approved Budget; and

(xi)     scheduling a final hearing (the "Final Hearing") to approve the Motion and consider entry of the Final Order.

The Interim Hearing having been held before the Bankruptcy Court on October 15, 2018, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and upon the record made by the DIP ABL Loan Parties at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor:

5

### THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]

**A.**     *Petition Date*.  On October 15, 2018 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**B.**     *Joint Administration*.  On the Petition Date, the Bankruptcy Court entered an order approving the joint administration of the Chapter 11 Cases.

**C.**     *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**D.**     *Official Committees*.  No trustee or examiner or official committee of unsecured creditors (a "<u>Creditors' Committee</u>") or any other statutory committee has been appointed in these Chapter 11 Cases as of the date of this Interim Order.

**E.**     *Jurisdiction and Venue*.  The Bankruptcy Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Bankruptcy Rules</u>").

---

[2]  The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

F.     *Notice*.    Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in paragraph 56 below.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors' estates.

G.     *Debtors' Stipulations*.    After consultation with their attorneys and financial advisors, the Debtors, on their behalf and on behalf of their estates, admit, acknowledge, agree, and stipulate to the following (collectively, the "Debtors' Stipulations"), subject to the provisions of paragraphs 40 and 41 below:

a.     *Prepetition ABL Credit Facilities*.    Pursuant to the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition ABL Credit Agreement), each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Documents"), by and among (i) SRAC and Kmart, as borrowers (the "Prepetition ABL Borrowers"), (ii) Holdings, as a guarantor (Holdings, together with the "Subsidiary Guarantors" (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties"), (iii) the banks, financial institutions and other institutional lenders from time to time party thereto, as lenders (collectively, the "Prepetition ABL Lenders"), (iv) the "Issuing Lenders" (as defined in the Prepetition ABL Credit Agreement) from time to time party thereto (the "Prepetition ABL Issuing Lenders"), (v) Bank of America, N.A., as administrative agent (in such capacity, the "Prepetition ABL

Administrative Agent"), as a co-collateral agent, and as swingline lender, (vi) Wells Fargo Bank, National Association, as a co-collateral agent (in such capacity, together with Bank of America, N.A. in such capacity, the "Prepetition ABL Co-Collateral Agents", and together with the Prepetition ABL Administrative Agent, the "Prepetition ABL Agents", and the Prepetition ABL Agents together with the Prepetition ABL Lenders, the swingline lender the Prepetition ABL Issuing Lenders, and the Prepetition ABL Cash Management/Bank Product Providers (as defined below) and the Prepetition LC Facility Credit Parties (as defined below), the "Prepetition ABL Credit Parties"), and (vii) the other parties from time to time party thereto, the Prepetition ABL Credit Parties provided the Prepetition ABL Loan Parties with a $1.5 billion asset-based revolving credit facility (the "Prepetition ABL Revolving Facility") including a $1.0 billion letter of credit subfacility (the "Prepetition ABL L/C Subfacility"), a term loan facility in an aggregate original principal amount of $1 billion (the "Prepetition ABL Term Loan Facility"), a term loan facility in an aggregate original principal amount of $750 million (the "Prepetition ABL 2016 Term Loan Facility"), and a "first-in, last-out" facility in an aggregate original principal amount of $125 million (the "Prepetition ABL 2018 FILO Facility," and the lenders under the Prepetition ABL 2018 FILO Facility, the "2018 FILO Lenders," and the Prepetition ABL 2018 FILO Facility, together with the Prepetition ABL Revolving Facility, the Prepetition ABL Term Loan Facility, and the Prepetition ABL 2016 Term Loan Facility, the "Prepetition ABL Facilities").

b.      ***Prepetition ABL Obligations.***   As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facilities was $1,530,378,380, comprised of (i) $836,034,649 outstanding amount of all Advances, including Swingline Advances under, and each as defined in, the Prepetition ABL Revolving Facility (the "Prepetition ABL Revolving Advances"); (ii) $123,567,481 million outstanding amount of all

L/C Obligations under, and as defined in, the Prepetition ABL Revolving Facility (together with

the Prepetition ABL Revolving Advances, the "Prepetition ABL Revolving Extensions of

Credit"); (iii) $0 outstanding principal amount of term loans under the Prepetition ABL Term

Loan Facility; (iv) $570,776,250 outstanding principal amount of term loans under the

Prepetition ABL 2016 Term Loan Facility (the "Prepetition ABL Term Loans"); and (v)

$125,000,000 outstanding principal amount of the Prepetition ABL 2018 FILO Facility; and

together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances,

any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees,

appraisers' fees and financial advisors' fees, and related expenses and disbursements),

indemnification obligations, guarantee obligations, and other charges, amounts and costs of

whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due,

owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL

Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, cash

management services and bank products (the "Prepetition ABL Cash Management/Bank Product

Obligations") entered into with any Prepetition ABL Lender, any Prepetition ABL Agent or any

of their respective affiliates (each, a "Prepetition ABL Cash Management/Bank Product

Provider"), including all obligations under that certain Letter of Credit and Reimbursement

Agreement, dated as of December 28, 2016 (as amended, restated, supplemented or otherwise

modified from time to time prior to the Petition Date, the "Prepetition LC Facility Agreement"

and which constitutes a Prepetition ABL Loan Document), among Holdings, the Borrowers, JPP,

LLC, JPP II, LLC, Crescent 1, L.P., Canary SC Fund, L.P., CYR Fund, L.P., CMH VI, L.P., and

Cyrus Heartland, L.P., as L/C lenders (the "Prepetition LC Lenders"), and Citibank, N.A., as

administrative agent and as issuing bank (in such capacity, the "Prepetition LC Facility

Administrative Agent," and together with the Prepetition LC Lenders, the "Prepetition LC Facility Credit Parties"), under which, as of the Petition Date, $271 million of letters of credit are outstanding thereunder, and which obligations constitute Bank Products and an Other LC Facility under and as defined in the Prepetition ABL Credit Agreement, and including all "Obligations" as defined in the Prepetition ABL Credit Agreement, and all other amounts that may become allowed or allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, (the "Prepetition ABL Obligations").

          c.     ***Prepetition ABL Liens and Prepetition ABL Collateral.*** Pursuant to the Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Documents, each of the Prepetition ABL Guarantors unconditionally guaranteed, on a joint and several basis, the punctual and complete performance, payment and satisfaction when due and at all times thereafter of all of the Prepetition ABL Obligations. Pursuant to the Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Documents, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to Bank of America, N. A., in its capacity as a Prepetition ABL Co-Collateral Agent and as agent for the other Prepetition ABL Co-Collateral Agent (in such capacity, the "Prepetition ABL Control Co-Collateral Agent"), for the benefit of itself and all of the other Prepetition ABL Credit Parties, a first priority security interest in and continuing lien on (the "Prepetition ABL Liens") all of the collateral identified in the Prepetition ABL Documents, including, but not limited to, inventory, credit card accounts receivables, pharmacy receivables, prescription lists, deposit accounts, cash and cash equivalents, and proceeds, insurance claims and supporting obligations of the foregoing, together with Cash Collateral, in all cases whether then owned or existing of thereafter acquired (but

excluding, for the avoidance of doubt, any Cash Collateral posted to the Prepetition LC Facility Administrative Agent by the Prepetition LC Lenders under the Prepetition LC Facility Agreement) (collectively, the "Prepetition ABL Collateral").

d.     ***Agreement Among Lenders.***  JPP, LLC, JPP II, LLC, GACP II, L.P., and Benefit Street 2018 LLC, as 2018 FILO lenders, ESL Investments, Inc., Wells Fargo Bank, National Association, as a Prepetition ABL Co-Collateral agent, and Bank of America, N.A., as Prepetition ABL Administrative Agent and as a Prepetition ABL Co-Collateral Agent, entered into an Agreement Among Lenders, dated as of March 21, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Agreement Among Lenders").

e.     ***Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations***.  The Debtors hereby further acknowledge and agree that as of the Petition Date:

(i)     The Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the Prepetition ABL Documents;

(ii)     The Prepetition ABL Liens on the Prepetition ABL Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to the Prepetition ABL Control Co-Collateral Agent, for the benefit of itself and all of the other Prepetition ABL Credit Parties for fair consideration and reasonably equivalent value;

(iii)     The Prepetition ABL Liens are senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens senior by operation of law or otherwise permitted to be senior under the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date) (the "Permitted Prior Liens");

(iv)     No portion of the Prepetition ABL Liens, the Prepetition ABL Obligations or any payments made to any Prepetition ABL Credit Party or applied to or paid on account of the Prepetition ABL Obligations prior to the Petition Date is subject to any contest, set-off, avoidance, impairment,

disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), recoupment, recovery, rejection, attack, effect, counterclaims, cross-claims, defenses, or any other challenge or claim (as defined in the Bankruptcy Code) of any kind, any cause of action or any other challenge of any nature under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation or otherwise by any person or entity;

(v)  The Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including any Avoidance Actions, against any of the Prepetition ABL Credit Parties (which shall exclude, for purposes of this stipulation, ESL Investments, Inc. or any of its affiliates) or any of their respective Representatives;

(vi)  The Debtors have, on behalf of each of their estates and any party that may try to claim by, through, or on behalf of the Debtors' estates, waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations or the validity, extent and priority of the Prepetition ABL Liens;

(vii)  The Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code; and

(viii)  The Debtors have been and are in default of their obligations under the Prepetition ABL Documents, including as a result of the Chapter 11 Cases, and an Event of Default (as defined in the Prepetition ABL Credit Agreement) has occurred and is continuing.

f.  ***Intercreditor Agreement.***  The Prepetition ABL Agents, for themselves and the other Prepetition ABL Credit Parties, and the Prepetition Second Lien Collateral Agent, for itself and the other Prepetition Second Lien Credit Parties, entered into a Second Amended and Restated Intercreditor Agreement, dated as of March 20, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Intercreditor Agreement").

H.  ***Certain Second Lien Debt.***  The following descriptions are set forth herein for definitional purposes only:

a.  ***Prepetition Second Lien 2010 Notes.***  Pursuant to the Indenture, dated as of October 12, 2010 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture" and, together with

all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture Documents", together with the Prepetition Second Lien 2018 Indenture Documents (as defined below), the "Prepetition Second Lien Notes Documents"), by and among (i) Holdings, as issuer (in such capacity, and as issuer of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Issuer"), (ii) certain subsidiaries of Holdings, as guarantors (in such capacity, and as guarantors of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Guarantors") and (iii) Wilmington Trust, National Association, as trustee (in such capacity, the "Prepetition Second Lien 2010 Indenture Trustee") and as collateral agent (in such capacity, the "Prepetition Second Lien Collateral Agent"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Notes (as defined in the Prepetition Second Lien 2010 Indenture), due 2018 (together with any Exchange Securities (as defined in the Prepetition Second Lien 2010 Indenture) and any Additional Notes (as defined in the Prepetition Second Lien 2010 Indenture) issued under the Prepetition Second Lien 2010 Indenture, the "Prepetition Second Lien 2010 Notes" and the holders of such Prepetition Second Lien 2010 Notes, the "Prepetition Second Lien 2010 Notes Holders") and, pursuant to an Offering Memorandum (as defined in the Prepetition Second Lien 2010 Indenture), the Prepetition Second Lien Notes Issuer exchanged some of the Prepetition Second Lien 2010 Notes for the Prepetition Second Lien Convertible Notes (as defined below).

   b. ***Prepetition Second Lien 2010 Notes Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of the obligations in respect of the Prepetition Second Lien 2010 Notes totaling approximately $89 million were

outstanding, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien 2010 Notes Obligations").

        c.     ***Prepetition Second Lien Convertible Notes.*** Pursuant to the Indenture, dated as of March 20, 2018, (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2018 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2018 Indenture Documents"), by and among (i) the Prepetition Second Lien Notes Issuer, (ii) the Prepetition Second Lien Notes Guarantors and (iii) Computershare Trust Company, N.A. as trustee (in such capacity, the "Prepetition Second Lien 2018 Indenture Trustee" and, together with the Prepetition Second Lien 2010 Indenture Trustee, the "Prepetition Second Lien Trustees", and, the Prepetition Second Lien Trustees, together with the Prepetition Second Lien Credit Agreement Agent and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Agents" and, together with the Prepetition ABL Administrative Agent, and the Prepetition LC Facility Administrative Agent, the "Prepetition Agents"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 (as defined in the Prepetition Second Lien 2018 Indenture) (together with any PIK Interest Notes (as defined in the Prepetition Second Lien 2018 Indenture) (or any increase in the principal amount of a Global Note  (as defined in the Prepetition Second Lien 2018 Indenture) related to PIK Interest (as defined in the Prepetition Second Lien 2018 Indenture)) and any Additional Notes (as defined in the Prepetition Second Lien 2018 Indenture) issued under the Prepetition Second Lien 2018 Indenture, the "Prepetition Second Lien Convertible Notes" and the holders of such

Prepetition Second Lien Convertible Notes, the "Prepetition Second Lien Convertible Notes Holders" and, together with the Prepetition Second Lien 2010 Notes Holders, the "Prepetition Second Lien Notes Holders").

d.      ***Prepetition Second Lien Convertible Notes Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of obligations were outstanding in respect of the Prepetition Second Lien Convertible Notes, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien Convertible Notes Obligations", together with the Prepetition Second Lien 2010 Notes Obligations, the "Prepetition Second Lien Notes Obligations").

e.      ***Prepetition Second Lien Credit Agreement.*** Pursuant to the Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and all other agreements and documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement Documents"), by and among (i) Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers (the "Prepetition Second Lien Credit Agreement Borrowers"), (ii) Holdings and the other Guarantors party thereto (as defined in the Prepetition Second Lien Credit Agreement) (the "Prepetition Second Lien Credit Agreement Guarantors" and, together with the Prepetition Second Lien Credit Agreement Borrowers, the "Prepetition Second Lien Credit Agreement Loan Parties", and the Prepetition Second Lien Credit Agreement Loan Parties, together with the Prepetition Second Lien Notes Issuer and the Prepetition Second Lien Notes

Guarantors, the "Prepetition Second Lien Loan Parties"), (iii) the lenders from time to time party thereto (collectively, the "Prepetition Second Lien Credit Agreement Lenders"), (iv) JPP, LLC, as administrative agent and collateral administrator (in such capacities, the "Prepetition Second Lien Credit Agreement Agent", together with the Prepetition Second Lien Credit Agreement Lenders and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Credit Agreement Credit Parties" and, the Prepetition Second Lien Credit Agreement Credit Parties, together with the Prepetition Second Lien Trustees and the Prepetition Second Lien Notes Holders, the "Prepetition Second Lien Credit Parties", and, the Prepetition Second Lien Credit Parties, together with the Prepetition ABL Credit Parties, the "Prepetition Credit Parties") and (vi) the other parties from time to time party thereto, the Prepetition Second Lien Credit Agreement Credit Parties provided the Prepetition Second Lien Credit Agreement Borrowers with a secured term loan (the "Prepetition Second Lien Credit Agreement Term Facility"), and line of credit loans (the "Prepetition Second Lien Credit Agreement Line of Credit Facility" and, collectively with the Prepetition Second Lien Credit Agreement Term Facility, the "Prepetition Second Lien Credit Agreement Facilities").

    f. ***Prepetition Second Lien Credit Agreement Facilities Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts were outstanding under the Prepetition Second Lien Credit Agreement Facilities, comprised of (i) certain amounts under the Prepetition Second Lien Credit Agreement Term Facility and (ii) certain amounts under the Prepetition Second Lien Credit Agreement Line of Credit Facility, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury,

cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Second Lien Credit Agreement Borrowers' or the Prepetition Second Lien Credit Agreement Guarantors' obligations pursuant to, or secured by, the Prepetition Second Lien Credit Agreement Documents, including all "Obligations" as defined in the Prepetition Second Lien Credit Agreement, and all other amounts that may become allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, the "Prepetition Second Lien Credit Agreement Obligations", together with the Prepetition Second Lien Notes Obligations, the "Prepetition Second Lien Obligations", and, together with the Prepetition ABL Obligations, the "Prepetition Obligations").

g.      ***Prepetition Second Lien Facilities Liens and Prepetition Second Lien Facility Collateral.***   Pursuant to the Prepetition Second Lien Notes Documents and the Prepetition Second Lien Credit Agreement Documents (collectively, the "Prepetition Second Lien Credit Documents" and, together with the Prepetition ABL Documents and the Intercreditor Agreement, the "Prepetition Loan Documents"), each of the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Guarantors (collectively, the "Prepetition Second Lien Guarantors") unconditionally guaranteed, on a joint and several basis, the due and punctual payment of all the Prepetition Second Lien Obligations. Pursuant to the Prepetition Second Lien Credit Documents, the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Credit Parties granted to the Prepetition Second Lien Collateral Agent, for the benefit of itself, all of the Prepetition Second Lien Credit Parties, a second priority security interest in and continuing lien on (the "Prepetition Second Lien Facilities

Liens", and together with the Prepetition ABL Liens, the "Prepetition Liens") all of the collateral identified in the Prepetition Second Lien Credit Documents, in all cases whether then owned or existing of thereafter acquired (collectively, the "Prepetition Second Lien Collateral," and together with the Prepetition ABL Collateral, the "Prepetition Collateral," and the property that constitutes Prepetition ABL Collateral, but which is not Prepetition Second Lien Collateral, the "Specified Non-Prepetition Second Lien Collateral").

    **I.**    *Cash Collateral.*  The DIP ABL Loan Parties represent that all of the DIP ABL Loan Parties' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition ABL Collateral, constitutes Cash Collateral and is Prepetition ABL Collateral but not Prepetition Second Lien Collateral.

    **J.**    *Permitted Prior Liens.*  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP ABL Credit Parties, the Prepetition Credit Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.  For the purposes hereof, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition ABL Liens and DIP ABL Liens (as defined below).

    **K.**    *Agreement Among Lenders and Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Agreement Among Lenders, the Intercreditor Agreement and any other intercreditor or subordination provisions contained in the Prepetition ABL Documents shall (i) remain in full force and effect, (ii) continue to govern the relative

priorities, rights, and remedies of, in the case of the Intercreditor Agreement, the Prepetition

Credit Parties, and, in the case of the Agreement Among Lenders, the Prepetition ABL Credit

Parties (including the relative priorities, rights and remedies of such parties with respect to the

replacement liens and administrative expense claims and superpriority administrative expense

claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and the

modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified

by the terms of this Interim Order or the DIP ABL Loan Documents, unless expressly set forth

herein or therein.  Solely for purposes of the Intercreditor Agreement, any repayment of the

Prepetition ABL Obligations pursuant to this Interim Order shall not be deemed to constitute a

"Discharge of ABL Obligations" as such term is used in the Intercreditor Agreement.

      **L.** *Findings Regarding DIP Financing and Use of Cash Collateral.*

      a. ***Good Cause.***  Good cause has been shown for the entry of this Interim

Order.

      b. ***Request for Post-Petition Financing and Use of Cash Collateral.***  The

DIP ABL Loan Parties have sought authority to enter into the DIP ABL Loan Documents.  The

DIP ABL Credit Parties shall have no obligation to make or be deemed to have made loans,

advances or other extensions of credit under the DIP ABL Facility except to the extent required

under the respective DIP ABL Loan Documents and shall have no obligation to waive any

conditions required thereunder.  The DIP ABL Loan Parties have sought authority to use Cash

Collateral on the terms described herein, and in accordance with the Approved Budget, to

administer their Chapter 11 Cases and fund their operations.

      c. ***Need for Post-Petition Financing and Use of Cash Collateral.***  The

Debtors' need to use Cash Collateral and to obtain credit as set forth in the DIP ABL Loan

Documents is immediate and critical in order to, among other things, enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships, pay employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP ABL Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, creditors and other stakeholders, and the possibility for maximizing the value of their businesses. The Debtors do not have sufficient available sources of working capital and financing to operate their business or to maintain their properties in the ordinary course of business without the DIP ABL Facility and continued use of Cash Collateral. Consummation of the financing contemplated by the DIP ABL Loan Documents and the use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of this Interim Order therefore are in the best interests of the Debtors' estates.

d.    ***No Credit Available on More Favorable Terms.***    Given their current financial condition, financing arrangements, and capital structure, despite diligent efforts, the DIP ABL Loan Parties are unable to reasonably obtain post-petition financing from sources other than the DIP ABL Lenders on terms more favorable than those set forth in the DIP ABL Loan Documents. The DIP ABL Loan Parties have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The DIP ABL Loan Parties have also been unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured only by a lien on property of the DIP ABL Loan Parties and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the DIP ABL Loan Parties and their estates that is already subject to

a lien.  Further, the Required Lenders (as defined in the Prepetition ABL Credit Agreement) are supportive of the priming of the Prepetition ABL Liens and to the use of their Cash Collateral only to the extent provided herein and under the DIP ABL Loan Documents.  Financing on a post-petition basis is not otherwise available without: (x) granting the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other DIP ABL Credit Parties (i) perfected security interests in and liens on (each as provided herein) all of the DIP ABL Loan Parties' existing and after-acquired assets with the priorities set forth herein; (ii) superpriority claims; and (iii) the other protections set forth in this Interim Order, and (y) upon entry of the Final Order, providing for the roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit beneficially owned by the applicable DIP ABL Revolving Lenders and (ii) all of the Prepetition ABL Term Loans beneficially owned by the applicable DIP ABL Term Lenders, in each case, upon the terms set forth in the Final Order and in the DIP ABL Credit Agreement.

> e.    ***Use of Proceeds; Approved Budget.***  As a condition to entry into the DIP ABL Loan Documents, the extensions of credit under the DIP ABL Facility and the authorization to use Cash Collateral, the DIP ABL Lenders and Prepetition ABL Agents require, and the DIP ABL Loan Parties have agreed, that proceeds of the DIP ABL Facility and Cash Collateral shall be used in accordance with the terms of the DIP ABL Loan Documents, including the Approved Budget, which shall be subject to (a) such variances as may be permitted by the DIP ABL Loan Documents, (b) this Interim Order, and (c) the Carve-Out.  The DIP ABL Loan Parties shall not directly or indirectly pay any expense or other disbursement other than those set forth in the Approved Budget or the Carve-Out.  The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents and solely in accordance with the Approved Budget (subject to the Carve-Out), including, to the extent

provided therein, (i) for the ongoing working capital and general corporate purposes of the DIP

ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained

in, the Approved Budget; (ii) to pay fees, costs and expenses incurred in connection with the

transactions contemplated hereby and other administration costs incurred in connection with the

Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to

the DIP ABL Agents and the DIP ABL Lenders to the extent provided in the DIP ABL Loan

Documents) as set forth in the DIP ABL Loan Documents; (iii) payment of other such

prepetition obligations as set forth in the Approved Budget, and as approved by the Bankruptcy

Court; and (iv) payment of certain adequate protection amounts to the Prepetition ABL Credit

Parties as set forth in paragraph 18 hereof.

        f.     ***Willingness to Provide Financing.*** The DIP ABL Lenders have indicated

a willingness to provide financing to the DIP ABL Loan Parties, subject to the entry of this

Interim Order and conditioned upon entry of the Final Order, including findings that such

financing and use of Cash Collateral is essential to the DIP ABL Loan Parties' estates, that the

DIP ABL Lenders are extending credit to the DIP ABL Loan Parties as set forth in the DIP ABL

Loan Documents in good faith, that the Prepetition Credit Parties are permitting the use of Cash

Collateral in good faith, and that the DIP ABL Credit Parties' and the Prepetition ABL Credit

Parties' claims, superpriority claims, security interests, liens, rights, and other protections will

have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected

by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of

this Interim Order, the Final Order or any other order.  As a condition to the entry into the DIP

ABL Loan Documents and the extensions of credit under the DIP ABL Facility, the DIP ABL

Loan Parties, the DIP ABL Agents, and the other DIP ABL Credit Parties have agreed that

proceeds of DIP ABL Collateral and all payments and collections received by the DIP ABL Loan Parties shall be applied solely as set forth in the DIP ABL Loan Documents and the DIP Orders.

g.    ***Business Judgment and Good Faith Pursuant to Section 364(e).***  The extension of credit under the DIP ABL Facility and the DIP ABL Loan Documents, and the authorization to use Cash Collateral on the terms set forth herein, is fair, reasonable, and the best available to the DIP ABL Loan Parties under the circumstances, reflect the DIP ABL Loan Parties' exercise of sound and prudent business judgment, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence or violation of public policy or law.   The DIP ABL Loan Documents, the DIP ABL Facility and the provisions regarding the use of Cash Collateral were negotiated in good faith and at arm's length among the DIP ABL Loan Parties, certain of the Prepetition Credit Parties and the DIP ABL Credit Parties, under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP ABL Facility, and the use of Cash Collateral, including in respect of the granting of the DIP ABL Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP ABL Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.   Use of Cash Collateral and any credit to be extended as set forth in this Interim Order and in the DIP ABL Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are therefore entitled to the

protections and benefits of section 364(e) of the Bankruptcy Code and this Interim Order, and therefore, the claims, security interests, liens, and other protections granted pursuant to this Interim Order should be preserved to the extent provided for in this Interim Order.

h.      ***Priming of Prepetition Liens.***   The priming of the Prepetition Liens on the Prepetition ABL Collateral by the DIP ABL Liens to the extent set forth in the DIP ABL Loan Documents and this Interim Order will enable the DIP ABL Loan Parties to obtain the DIP ABL Facility and to continue to operate their businesses for the benefit of their estates and creditors. The Required Lenders (as defined in the Prepetition ABL Credit Agreement) support such priming liens solely to the extent set forth in the DIP ABL Loan Documents and this Interim Order, subject to receipt of adequate protection of their respective interests in the Prepetition ABL Collateral as set forth herein.  The Required Lenders (as defined in the Prepetition ABL Credit Agreement) have acted in good faith in supporting the (i) DIP ABL Loan Parties' use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of this Interim Order, (ii) priming of the Prepetition Liens by the DIP ABL Liens on Prepetition ABL Collateral to the extent set forth in the DIP ABL Loan Documents and this Interim Order, and (iii) entry of this Interim Order and the granting of the relief set forth herein, and their reliance on the assurances referred to herein is in good faith.

i.      ***Adequate Protection for Prepetition Credit Parties.***   The Prepetition Credit Parties are entitled to, and shall receive, adequate protection as set forth in paragraphs 16 through 18 below to the extent of any diminution in value of their interests in the Prepetition ABL Collateral pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code.  The adequate protection provided to the Prepetition Credit Parties pursuant to the terms of this Interim Order is necessary and appropriate in light of, among other things, (a) the DIP ABL Loan

Parties' proposed use and sale of the Prepetition ABL Collateral, including Cash Collateral, (b) the granting of priming liens on the Prepetition ABL Collateral in connection with the DIP ABL Facility, (c) the potential decline in the value of the Prepetition ABL Collateral, and (d) the imposition of the automatic stay.

        j.     ***Sections 506(c) and 552(b).***  In the Final Order, the Debtors will seek a waiver, for the benefit of the DIP ABL Credit Parties and the Prepetition Credit Parties, of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and the Prepetition ABL Collateral in light of (i) the subordination of their liens and superpriority claims, as applicable, to the Carve-Out, (ii) the use of Cash Collateral and the subordination of the Prepetition Obligations, Prepetition Liens, Adequate Protection Claims (as defined below) and Adequate Protection Liens (as defined below) to the Carve-Out, the DIP ABL Liens and the DIP ABL Superpriority Claims (as defined below), as applicable, and (iii) the Approved Budget covering all administrative costs projected by the DIP ABL Loan Parties.

        k.     ***Final Hearing.***  At the Final Hearing, the DIP ABL Loan Parties will seek final approval of the proposed post-petition financing arrangements, use of Cash Collateral and the ABL Roll Up pursuant to the Final Order, which shall be in form and substance acceptable to the DIP ABL Agents in their sole and absolute discretion.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order and no further notice, except as provided by this Interim Order, shall be required.

        l.     ***Immediate Entry.***  The DIP ABL Loan Parties have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local

Bankruptcy Rule 4001-2. The authorization granted herein on an interim basis to use the Prepetition ABL Collateral, including Cash Collateral, to enter into the DIP ABL Loan Documents, and to borrow under the DIP ABL Facility is necessary to avoid immediate and irreparable harm to the DIP ABL Loan Parties and their estates during the period beginning on the date hereof through and including the earlier to occur of (i) the date of the entry of the Final Order by this Court and (ii) the Termination Date (as defined below). This Court concludes that the entry of this Interim Order is in the best interests of the DIP ABL Loan Parties and their estates and creditors because it will, among other things, allow the DIP ABL Loan Parties to meet payroll and other critical expenses and thereby maximize the value of their estates.

m.    ***Notice.***  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest as set forth in the Motion. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing constitutes adequate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    ***Motion Granted.***  The Motion is granted on an interim basis to the extent set forth herein.

2.    ***Use of Prepetition ABL Collateral Approved.***  Subject to and consistent with the terms of the DIP ABL Loan Documents, this Interim Order, and the Approved Budget,

the DIP ABL Loan Parties are hereby authorized to use the Prepetition ABL Collateral (including Cash Collateral) until the Termination Date to the extent set forth herein; provided, however, that during the Remedies Notice Period (as defined herein), the DIP ABL Loan Parties may use Cash Collateral solely to meet payroll obligations (but not severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Agents in their sole and absolute discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph 20 of this Interim Order.

3.      ***Objections Overruled.***   All objections to and reservations of rights with respect to the interim relief sought in the Motion and to the entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.

**DIP ABL Facility Authorization**

4.      ***Authorization of the DIP ABL Loan Documents.***   The DIP ABL Loan Parties are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP ABL Loan Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith.  The DIP ABL Loan Parties are hereby authorized to borrow money and issue letters of credit under the applicable DIP ABL Loan Documents, on an interim basis in accordance with and subject to the terms and conditions of this Interim Order and the DIP ABL Loan Documents, and to perform all other obligations hereunder and thereunder, provided that until the entry of the Final Order, the DIP ABL Loan Parties are only authorized to borrow an aggregate principal amount of up to $300,000,000.00 under the DIP ABL Facility in the form of Incremental DIP ABL Revolving Extensions of Credit and Incremental DIP ABL Term Loans.

5.      ***ABL Roll Up.***   In the Final Order, the Debtors will seek approval of the following transactions: (a) each Roll Up DIP ABL Revolving Lender shall be deemed to have made Roll Up DIP ABL Revolving Extensions of Credit in an amount equal to the amount of the Prepetition ABL Revolving Extensions of Credit beneficially owned by such Roll Up DIP ABL Revolving Lender at 11:59 p.m. Eastern Time on November 5, 2018, which shall reduce such Roll Up DIP ABL Revolving Lender's Prepetition ABL Revolving Extensions of Credit on a dollar for dollar basis, and which shall with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, result in an increase of the Incremental DIP ABL L/C Subfacility to an approximately $123 million DIP ABL L/C Subfacility, and such prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (b) each Roll Up DIP ABL Term Lender shall be deemed to have made Roll Up DIP ABL Term Loans in an amount equal to the amount of the Prepetition ABL Term Loans beneficially owned by such Roll Up DIP ABL Term Lender at 11:59 p.m. Eastern Time on November 5, 2018, which shall reduce such Roll Up DIP ABL Term Lender's Prepetition ABL Term Loans on a dollar for dollar basis, and (c) Bank Products (as defined under the Prepetition ABL Credit Agreement other than those under the Prepetition LC Facility Agreement) and Cash Management Obligations (as defined under the Prepetition ABL Credit Agreement) shall roll up; *provided* that the making of the Roll Up DIP ABL Revolving Extensions of Credit and Roll Up DIP ABL Term Loans shall be subject to the reservation of rights of parties in interest in paragraphs 40 and 41 below, and upon expiration of the Challenge Period (as defined below) without a Challenge Proceeding (as defined below) having been brought, or the final resolution of a Challenge Proceeding brought in compliance with the provisions of this Interim Order (where such Challenge Proceeding did not have the effect of successfully impairing any of the

Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations), the DIP ABL Loan Parties' ABL Roll Up shall be deemed indefeasible (or, in the event that such a Challenge Proceeding is timely and properly commenced in respect of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations, on the date on which any order entered by the Bankruptcy Court in favor of the applicable Prepetition ABL Credit Party in such Challenge Proceeding becomes final and non-appealable).

6.     ***Authorized Action.***   In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents that may be necessary or required for performance by the DIP ABL Loan Parties under the DIP ABL Loan Documents and the creation and perfection of the DIP ABL Liens described in, provided for and perfected by this Interim Order and the DIP ABL Loan Documents.  Subject to paragraphs 18(e) and 191.1(e), the DIP ABL Loan Parties are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees, expenses and other amounts described in the DIP ABL Loan Documents as such become due and without need to obtain further Court approval, including administrative agent fees, underwriting fees, commitment fees, letter of credit fees, and the fees and disbursements of the DIP ABL Agents' attorneys, advisers, accountants and other consultants.  All fees shall be payable in accordance with the DIP ABL Loan Documents.

7.     ***Validity of DIP ABL Secured Obligations.***   Upon entry of this Interim Order, the DIP ABL Loan Documents shall represent valid, binding and unavoidable obligations of the DIP ABL Loan Parties, enforceable against the DIP ABL Loan Parties and their estates in accordance with their terms, subject to the terms of this Interim Order.  The DIP ABL Loan

Documents and this Interim Order constitute and evidence the validity and binding effect of the DIP ABL Secured Obligations of the DIP ABL Loan Parties, which DIP ABL Secured Obligations shall be enforceable, jointly and severally, against the DIP ABL Loan Parties, their estates and any successors thereto, including any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case").  No obligation, payment, transfer, or grant of a security or other interest to the DIP ABL Control Co-Collateral Agent or any other DIP ABL Credit Party under the DIP ABL Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including under sections 502(d), 544, 548 or 549 of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, claim or counterclaim.    The DIP ABL Secured Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the DIP ABL Loan Parties to the DIP ABL Credit Parties under the DIP ABL Loan Documents, all DIP ABL Cash Management/Bank Product Obligations, and, in the case of each of the foregoing, including all principal, interest, costs, fees, expenses and other amounts owed in connection therewith or otherwise pursuant to the DIP ABL Loan Documents.

8.    ***No Obligation to Extend Credit.***  The DIP ABL Credit Parties shall have no obligation to make loans or advances under the DIP ABL Facility unless and until the conditions precedent to the closing and the making of such extensions of credit under the DIP ABL Loan Documents, including the conditions precedent set forth opposite the heading "Conditions Precedent to the Initial Closing" in the DIP ABL Term Sheet, have been satisfied in full or waived in accordance with the terms of the DIP ABL Loan Documents (such date, the

"Initial Closing Date"), which date shall occur on or before the earlier of (a) October 19, 2018, and (b) three (3) business days after the entry of this Interim Order.

9.     ***Use of DIP ABL Facility Proceeds.***  From and after the Petition Date, the DIP ABL Loan Parties are authorized, subject to the satisfaction of the terms and conditions set forth in the DIP ABL Loan Documents, to use proceeds of extensions of credit under the DIP ABL Facility only for the purposes specifically set forth in this Interim Order and the DIP ABL Loan Documents (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; and (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders).

10.     No DIP ABL Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP ABL Facility, and each DIP ABL Credit Party may rely upon each Debtor's representations that the amount of debtor-in-possession financing requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP ABL Loan Documents, and Bankruptcy Rule 4001(c)(2).

11.     ***DIP ABL Superpriority Claim.***  Subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP ABL Secured Obligations shall constitute allowed administrative expense claims against each of the DIP ABL Loan Parties' estates, jointly and severally, with priority over any and all administrative expenses, including any superpriority claims associated with any other postpetition financing facility, all Adequate Protection Claims and, to the fullest extent permitted under the Bankruptcy Code, all other

claims against the DIP ABL Loan Parties, now existing or hereafter arising, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP ABL Superpriority Claim"), which DIP ABL Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the DIP ABL Loan Parties and their estates and all proceeds thereof, subject only to liens secured thereby and the Carve-Out.  The DIP ABL Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, amended or otherwise modified, on appeal or otherwise.

**DIP ABL Liens and DIP ABL Collateral.**

12.    Effective immediately upon entry of this Interim Order and as more fully set forth in the DIP ABL Loan Documents, as security for the full and prompt performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP ABL Secured Obligations, the DIP ABL Control Co-Collateral Agent is hereby granted, for itself and for the benefit of all of the DIP ABL Credit Parties, continuing valid, binding, enforceable, non-avoidable, automatically and properly perfected, post-petition security interests in and liens (the "DIP ABL Liens") on all DIP ABL Collateral *nunc pro tunc* to the Petition Date without the necessity of the execution by the DIP ABL Loan Parties (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, copyright security agreements, trademark security agreements, patent security agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the DIP ABL Agents or any other DIP ABL Credit Party of any DIP ABL Collateral.  The term "DIP ABL Collateral" means Prepetition ABL Collateral and all other assets of the DIP ABL Loan Parties (except Avoidance Actions and Avoidance Action Proceeds (which will only be sought in connection with entry of the Final Order), whether now owned or hereafter acquired, and all proceeds

thereof, including all deposit accounts, securities accounts, cash and cash equivalents of the DIP ABL Loan Parties; *provided* the DIP ABL Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents; *provided*, *however*, the Final Order may provide for the grant of liens on real property leases.  In the proposed Final Order, the Debtors will request that all of the proceeds  (the "Avoidance Action Proceeds") of the DIP ABL Loan Parties' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (the "Avoidance Actions") shall also constitute DIP ABL Collateral.

## Priority of DIP ABL Liens

13.    The DIP ABL Liens on the DIP ABL Collateral shall in each case be subject to the Carve-Out and otherwise have the following priority:

(a)    pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens on and security interests in all DIP ABL Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (collectively, the "Prepetition Unencumbered Assets");

(b)    pursuant to section 364(c)(3) of the Bankruptcy Code, junior liens on and security interests in all DIP ABL Collateral (other than Prepetition ABL Collateral) that is not subject to Prepetition ABL Liens but is subject to valid and perfected security interests in favor of third parties as of the Petition Date (the "Prepetition Encumbered DIP ABL Collateral"); and

(c)    pursuant to section 364(d) of the Bankruptcy Code, first priority priming security interests and liens on the Prepetition ABL Collateral of each Debtor on which the Prepetition ABL Lenders held a first priority security interest and lien (such liens and security interests, the "DIP ABL Priming Liens"), in each case to the extent that such Prepetition ABL Collateral is subject to Prepetition ABL Liens (collectively, the "Primed Liens") and such DIP ABL Priming Liens shall be (x) senior in all respects to the interests in such property of the Prepetition ABL Credit Parties under the Prepetition ABL Credit Agreement and the other "secured parties" referred

to therein, (y) senior to the Adequate Protection Liens, and (z) subject to Permitted Prior Liens.

14.     Notwithstanding anything to the contrary herein, the following table sets forth the relative priorities of the Carve-Out, Permitted Prior Liens, DIP ABL Liens, Adequate Protection Liens, and the Prepetition Liens on the DIP ABL Collateral upon effectiveness of this Interim Order:

| Prepetition ABL Collateral | Prepetition Encumbered DIP ABL Collateral | Prepetition Unencumbered Assets |
| --- | --- | --- |
| Carve-Out | Carve-Out | Carve-Out |
| Permitted Prior Liens | All valid and perfected security interests in favor of third parties as of the Petition Date | DIP ABL Liens |
| DIP ABL Liens | DIP ABL Liens | Prepetition ABL Facilities Adequate Protection Liens |
| Prepetition ABL Facilities Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | 2018 FILO Adequate Protection Liens |
| 2018 FILO Adequate Protection Liens | 2018 FILO Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens |
| Prepetition LC Facility Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens |
| Prepetition ABL Liens | Prepetition Second Lien Adequate Protection Liens | |
| Prepetition Second Lien Adequate Protection Liens | | |
| Prepetition Second Lien Facilities Liens (except on Specified Non-Prepetition Second Lien Collateral) | | |

15.     ***Treatment of DIP ABL Liens.***  Other than as set forth herein, the DIP ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore

or hereafter granted in the Chapter 11 Cases or any Successor Case. The DIP ABL Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case. No lien or interest avoided and preserved for the benefit of the DIP ABL Loan Parties' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP ABL Liens.

**Adequate Protection**

16.      ***Adequate Protection Liens.***

(a)      *Prepetition ABL Adequate Protection Liens.* Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, against any diminution in value resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "ABL Diminution in Value"), the DIP ABL Loan Parties hereby grant to the Prepetition ABL Control Co-Collateral Agent on behalf of itself and all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) to the extent of any ABL Diminution in Value a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition ABL Facilities Adequate Protection Liens") all DIP ABL Collateral. The Prepetition ABL Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of control agreements, security agreements, pledge agreements,

financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens and the DIP ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, and the DIP ABL Liens, and (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out and the DIP ABL Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(b)    *Prepetition 2018 FILO Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, against any ABL Diminution in Value, the DIP ABL Loan Parties hereby grant to the Prepetition ABL Control Co-Collateral Agent, on behalf of  the 2018 FILO Lenders to the extent of any ABL Diminution in Value, a valid and perfected replacement and additional security interest in, and liens on (the "2018 FILO Adequate Protection Liens") all DIP ABL Collateral.  The 2018 FILO Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the DIP ABL Liens, and the Prepetition ABL Facilities Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens and the Prepetition ABL Facilities Adequate Protection Liens, and (iii) solely with respect to Prepetition

Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, and the Prepetition ABL Facilities Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(c)      *Prepetition LC Facility Adequate Protection Liens.*   Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, against any ABL Diminution in Value, the DIP ABL Loan Parties hereby grant to the Prepetition LC Facility Administrative Agent on behalf of itself and all of the other Prepetition LC Facility Credit Parties to the extent of any ABL Diminution in Value a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition LC Facilities Adequate Protection Liens") all DIP ABL Collateral.   The Prepetition LC Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected nunc pro tunc to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, and the 2018 FILO Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, and (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, the Prepetition ABL Facilities Adequate

Protection Liens and the 2018 FILO Adequate Protection Liens, and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(d)      *Second Lien Facilities Adequate Protection Liens.*   Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, including Cash Collateral, against any diminution in value resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Second Lien Facilities Liens and the subordination to the Carve-Out (collectively, the "Second Lien Diminution in Value"), the DIP ABL Loan Parties hereby grant to the Prepetition Second Lien Collateral Agent on behalf of itself and the other Prepetition Second Lien Credit Parties to the extent of any Second Lien Diminution in Value, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition Second Lien Adequate Protection Liens," and together with the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens, the "Adequate Protection Liens") all DIP ABL Collateral.  The Prepetition Second Lien Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Prepetition ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL

Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(e)      *Treatment of Adequate Protection Liens.*   Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.   The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code.   No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

17.      ***Adequate Protection Superpriority Claims.***

(a)      *Prepetition ABL Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the

Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties), is hereby granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition ABL Adequate Protection Claims").  Except as set forth herein, the Prepetition ABL Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition ABL Adequate Protection Claims shall be junior to (i) the Carve-Out and (ii) the DIP ABL Superpriority Claims.

(b)        *Prepetition 2018 FILO Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders, is hereby granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition 2018 FILO Adequate Protection Claims").  Except as set forth herein, the Prepetition 2018 FILO Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; *provided*, *however*, that the Prepetition 2018 FILO Adequate Protection Claims shall be

junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, and (iii) the Prepetition ABL Adequate Protection Claims.

(c)     *Prepetition LC Facility Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition LC Facility Administrative Agent, for itself and for the benefit of all of the other Prepetition LC Facility Credit Parties, is hereby granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition LC Facility Adequate Protection Claims").   Except as set forth herein, the Prepetition 2018 LC Facility Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition LC Facility Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Prepetition ABL Adequate Protection Claims, and (iv) the Prepetition 2018 FILO Adequate Protection Claims.

(d)     *Second Lien Facilities Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, including Cash Collateral, on behalf of itself and the other Prepetition Second Lien Credit Parties, the Prepetition Second Lien Collateral Agent is hereby granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition Second Lien Facilities Adequate

Protection Claims," and together with the Prepetition ABL Adequate Protection Claims, the Prepetition 2018 FILO Adequate Protection Claims, and the Prepetition LC Facility Adequate Protection Claims, the "Adequate Protection Claims") to the extent that the Prepetition Second Lien Adequate Protection Liens are insufficient to protect the Prepetition Second Lien Credit Parties' interests in the Prepetition Second Lien Collateral.  Except as set forth herein, the Prepetition Second Lien Facilities Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition Second Lien Facilities Adequate Protection Claim shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Prepetition ABL Adequate Protection Claims, (iv) the Prepetition LC Facility Adequate Protection Claims, and (v) the Prepetition 2018 FILO Adequate Protection Claims.

18.    ***Additional Adequate Protection.***

(a)    *Prepetition ABL Credit Parties*.  As additional adequate protection of the Prepetition ABL Credit Parties' security interests in the Prepetition ABL Collateral, the DIP ABL Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other disbursements of the Prepetition ABL Administrative Agent, the Prepetition ABL Co-Collateral Agents, and the Prepetition LC Facility Administrative Agent whether incurred before, on or after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 18(e) hereof, Skadden, Arps, Slate, Meagher & Flom LLP, Choate, Hall & Stewart LLP, Davis Polk & Wardwell LLP and Berkeley Research Group, LLC, whether incurred before, on or after the Petition Date; (ii)

continued maintenance and insurance of the Prepetition ABL Collateral and the DIP ABL Collateral in amounts and for the risks, and by the entities, as required under the Prepetition ABL Documents, the DIP ABL Loan Documents and this Interim Order; (iii) reporting and information rights equivalent to those granted to the DIP ABL Lenders pursuant to the DIP ABL Loan Documents, the Prepetition ABL Documents and paragraph 21 of this Interim Order; (iv) cash payment of post-petition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement as such interest becomes due and payable at the applicable non-default rate thereunder; and (v) the DIP ABL Borrowers' daily calculation, reporting and certification to the Prepetition ABL Administrative Agent of, and compliance with, the Maximum Loan to Value (Term/Revolver) Ratio and the Maximum Loan to Value (Prepetition) Ratio (each as defined below).

(b)    If on any day the DIP ABL Loan Parties are not in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, the DIP ABL Loan Parties shall immediately and irrevocably repay in cash (i) first, DIP ABL Revolving Advances until paid in full, (ii) second, to replace or cash collateralize letters of credit under the DIP ABL Facility, (iii) third, to the DIP ABL Term Loans until paid in full (with a pro rata reduction in DIP ABL Revolving Commitments), and (iv) after the payment in full of the DIP ABL Facility, the Prepetition ABL Obligations, in each case, until the DIP ABL Loan Parties are in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, as applicable.  In the case of clause (iii), such amounts shall be paid to the Prepetition ABL Administrative Agent and applied in accordance with Section 6.4 of the Collateral and Guarantee Agreement (as defined in the Prepetition ABL Credit Agreement).  For the avoidance of doubt, a failure of the DIP ABL

Borrowers to deliver to the DIP ABL Administrative Agent or Prepetition ABL Administrative Agent, as applicable, the cash when and in such amounts required in accordance with the immediately preceding sentence shall constitute a Termination Event (as defined below) hereunder, and the DIP ABL Administrative Agent or the Prepetition ABL Agent, as applicable, shall be permitted to exercise all rights and remedies available pursuant to the DIP ABL Loan Documents or Prepetition ABL Documents, as applicable, and this Interim Order subject to the terms of paragraphs 32 and 33.

(c)    The "Maximum Loan to Value (Term/Revolver) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of (a) the outstanding principal amount of Advances (as defined in the Prepetition ABL Credit Agreement), plus (b) the outstanding principal amount of Swingline Advances (as defined in the Prepetition ABL Credit Agreement), plus (c) the amount of L/C Obligations (as defined in the Prepetition ABL Credit Agreement), plus (d) the outstanding principal amount of the outstanding 2016 Term Loans (as defined in the Prepetition ABL Credit Agreement) (the sum of clauses (a) through (d), the "Prepetition Revolving/Term Exposure"), plus (e) Total Extensions of Credit (as defined in the DIP ABL Term Sheet), at any time to exceed 87.5% of the sum of (1) aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) aggregate Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) at such time, minus (4) Availability Reserves (as defined in the DIP ABL Loan Documents) at such time, minus (5) the Carve-Out Reserve Amount less the current balance of the Carve-Out Account (each as defined below), minus (6) the FILO Reserve (as defined in the DIP ABL Loan Documents).

(d)      The "Maximum Loan to Value (Prepetition) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of Prepetition Revolving/Term Exposure, plus the outstanding 2018 FILO Extensions of Credit (as defined in the Prepetition ABL Credit Agreement), plus the Total Extensions of Credit (as defined in the DIP ABL Term Sheet), at any time to exceed 97.5% of the sum of (1) aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) aggregate Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) at such time minus (4) Availability Reserves (as defined in the DIP ABL Loan Documents) at such time, minus (5) the Carve-Out Reserve Amount less the current balance of the Carve-Out Account (each as defined below), minus (6) the FILO Reserve (as defined in the DIP ABL Loan Documents).

(e)      Payment of all professional fees and expenses of the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent addressed in this Interim Order shall not be subject to allowance by the Bankruptcy Court.  Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent shall deliver a copy of their respective invoices to counsel for any Creditors' Committee, the U.S. Trustee (as defined below), and the DIP ABL Administrative Agent.  The invoices for such fees and expenses shall not be required to comply with any particular format and may be in summary form only and may include redactions.  For the avoidance of doubt, the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product

doctrine.  The DIP ABL Loan Parties shall pay such invoice within ten (10) calendar days (if no written objection is received within such ten calendar day period) after such professional has delivered such invoice to the DIP ABL Loan Parties, the Creditors' Committee, the DIP ABL Administrative Agent, and the U.S. Trustee.  Any written objections raised by the DIP ABL Loan Parties, the U.S. Trustee, the DIP ABL Administrative Agent or any Creditors' Committee with respect to such invoices within ten (10) calendar days of receipt thereof will be resolved by the Bankruptcy Court (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the DIP ABL Loan Parties. The fees and expenses subject to the procedures in this paragraph 18(e) shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and shall not be subject to compliance with the U.S. Trustee fee guidelines or the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

19.     ***Costs, Fees, Expenses, and Indemnification.***

(a)     *DIP ABL Credit Parties*.   The DIP ABL Loan Parties are authorized to pay any and all reasonable and documented expenses of the DIP ABL Agents in connection with the DIP ABL Facility and as provided for in the DIP ABL Loan Documents, whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including fees and expenses incurred in connection with (i) the preparation, negotiation and execution of the DIP ABL Loan Documents; (ii) the syndication and funding of the DIP ABL Facility; (iii) the creation, perfection or protection of the liens under the DIP ABL Loan Documents (including all search, filing and recording fees); (iv) the on-going administration of the DIP ABL Loan Documents (including the preparation, negotiation and execution of any

46

amendments, consents, waivers, assignments, restatements or supplements thereto) and the

Chapter 11 Cases; (v) the enforcement of the DIP ABL Loan Documents; (vi) any refinancing or

restructuring of the DIP ABL Facility; and (vii) any legal proceeding relating to or arising out of

the DIP ABL Facility or the other transactions contemplated by the DIP ABL Loan Documents,

including the Chapter 11 Cases.  Payment of all such professional fees and expenses shall not be

subject to allowance by the Bankruptcy Court or to the U.S. Trustee guidelines, but shall be

subject to the procedures set forth in paragraph 18(e) herein.  Such fees and expenses shall not be

subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature

whatsoever.

(b)      *Indemnification of DIP ABL Credit Parties*.  The DIP ABL Credit

Parties shall have no liability to any third party relating to the DIP ABL Loan Documents, the

DIP ABL Facility and DIP ABL Loan Parties' use of the financing provided thereunder, and

shall not, by virtue of making the DIP loans, extending funds thereunder, or otherwise complying

with the DIP ABL Loan Documents,  be deemed to be in control of the operations of Debtors, to

owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates or to be

acting as a "responsible person" or managing agent with respect to the operation or management

of the Debtors.  The Debtors shall, and are hereby authorized to, indemnify and hold harmless

the DIP ABL Credit Parties and their respective affiliates and Representatives from and against

all losses, liabilities, claims, damages, penalties, actions, judgments, suits, expenses or

disbursements of any nature whatsoever arising out of or relating to the DIP ABL Loan

Documents, including the syndication of any obligations thereunder, and the DIP ABL Loan

Parties' use of the financing provided thereunder, *provided*, *however*, that the foregoing

indemnity shall not apply to any actions of any indemnified parties determined in a final non-

appealable judgment to constitute fraud or willful misconduct.   This indemnification shall

survive and continue for the benefit of all such persons or entities.

### Provisions Common to DIP Financing and Use of Cash Collateral Authorizations

20.   ***Carve-Out.***

(a)   *Carve-Out*. As used in this Interim Order and the DIP ABL Loan

Documents, the "Carve-Out" shall be comprised of the following components:

(i)   Clerk and U.S. Trustee Fees.   All fees required to be paid to the Clerk of this
Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of
title 28 of the United States Code and 31 U.S.C. § 3717 (collectively, "Clerk and UST Fees").

(ii)   Chapter 7 Trustee Fees.   All reasonable fees and expenses up to $500,000
incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Fee
Cap").

(iii)   Allowed Professional Fees Incurred Prior to a Carve-Out Trigger Notice.   To the
extent allowed at any time, whether by interim order, final order, procedural order, or otherwise,
all accrued and unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons
or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code
(the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the
Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals,
the "Professional Persons") at any time before or on the date of delivery by the DIP ABL
Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by this
Court prior to or after delivery of a Carve-Out Trigger Notice.   For purposes of the Carve-Out,
Allowed Professional Fees shall exclude (i) any restructuring, sale, success or similar fee of any
Professional Person and (ii) fees and expenses of any third party professionals employed by any
individual member of the Creditors' Committee (collectively, the "Pre-Termination Amount").

(iv)   Allowed Professional Fees Incurred After a Carve-Out Trigger Notice.   Allowed
Professional Fees of Professional Persons incurred on and after the first business day following
delivery by the DIP ABL Administrative Agent of the Carve-Out Trigger Notice shall be subject
to an aggregate cap of $20 million (the "Post Trigger Notice Carve-Out Fee Cap").

(b)   *Carve-Out Trigger Notice.*   Upon the occurrence and during the

continuance of any Termination Event, the DIP ABL Administrative Agent may deliver a written

notice invoking the Post Trigger Notice Carve-Out Fee Cap (the "Carve-Out Trigger Notice") to

the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee, and lead counsel for the

Creditors' Committee.  The Carve-Out Trigger Notice may be delivered by email (or any other means permitted under the DIP ABL Loan Documents).

(c)      *Delivery of Weekly Fee Estimates.*  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "Weekly Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred through the applicable Calculation Date (collectively, "Estimated Fees and Expenses") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors from the Carve-Out Account (as defined below).  No later than one business day after the delivery of a Carve-Out Trigger Notice, each Professional Person shall deliver one additional statement (the "Final Statement") to the Debtors setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve-Out Trigger Notice.

(d)      *Failure to Deliver Weekly Fee Estimates*.  If any Professional Person fails to deliver a Weekly Statement when due (such Professional Person, a "Defaulting Professional Person"), such Professional Person's entitlement (if any) to any amount of the Carve-Out with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable periods for which such Professional Person failed to deliver a Weekly Statement shall be limited to the aggregate unpaid amount of Allowed Professional Fees for such Professional

Person included in the Approved Budget, *provided* that such Defaulting Professional Person may cure its failure to provide a Weekly Statement so long as a Carve-Out Trigger Notice has not been delivered.

(e)        *Carve-Out Reserve*.  The DIP ABL Administrative Agent shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of the following:  (i) estimated amounts for Clerk and UST Fees and the Chapter 7 Trustee Fee Cap, plus (ii) the Post Trigger Notice Carve-Out Fee Cap, plus (iii) the aggregate amount of Allowed Professional Fees in the Approved Budget remaining unpaid through the most recent Calculation Date or, if greater, the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and reported to the DIP ABL Administrative Agent, plus (iv) an amount equal to the Allowed Professional Fees set forth in the Approved Budget for the two-week period occurring after the most recent Calculation Date, plus (v) $22 million less any Permitted Carve-Out Success Fees (as defined below) paid by the Debtors pursuant to an order of the Bankruptcy Court.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP Agent a report setting forth the Carve-Out Reserve Amount as of such time, and, in setting the Carve-Out Reserve, the DIP Agent shall be entitled to, but shall not be required to, rely upon such reports in determining the Carve-Out Reserve.

(f)        *Carve-Out Account*.  Upon the entry of this Interim Order, the Debtors shall establish a segregated account with the DIP ABL Administrative Agent (the "Carve-Out Account"), which shall be funded in an amount up to the Carve-Out Reserve Amount less (i) the Clerk and UST Fees, (ii) the Chapter 7 Trustee Fee Cap, (iii) the Post Trigger

Notice Carve-Out Fee Cap (the "Carve-Out Account Required Balance") first with cash on hand

and any availability or proceeds of any other postpetition financing facility, and if such sources

are insufficient to fully fund the Carve-Out Account, with borrowings under the DIP ABL

Facility.  Amounts in the Carve-Out Account shall  be held in trust to pay all amounts included

the Carve-Out.  On each Friday after the date hereof (or if such day is not a business day, then

the next business day), the Debtors shall deposit into the Carve-Out Account an amount

sufficient to cause the balance in the Carve-Out Account to equal the Carve-Out Account

Required Balance.  All Allowed Professional Fees of Professional Persons shall be paid to the

applicable Professional Person first from the Carve-Out Account in accordance with the order or

orders of the Court allowing such Allowed Professional Fees.  Notwithstanding anything to the

contrary in this or any other Court order, the Carve-Out Account and the amounts on deposit in

the Carve-Out Account shall be available and used only to satisfy obligations of Professionals

Persons benefitting from the Carve-Out, and, thereafter, as provided in paragraph 20(g)(v).  Prior

to a Carve-Out Trigger Notice, in no event shall the total balance in the Carve-Out Account ever

exceed the Carve-Out Account Required Balance.  The failure of the Carve-Out Account to

satisfy Professional Fees in full shall not affect the priority of the Carve-Out.

       (g)     *Carve-Out Funding After a Carve-Out Trigger Notice*.  The

following provisions with respect to the Carve-Out Account shall apply only upon delivery of a

Carve-Out Trigger Notice:

       (i)     On the date of the Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall
be deemed to constitute a demand to the Debtors to utilize all cash on hand as of such date and
any availability or proceeds of any other postpetition financing facility to fund the Carve-Out
Account in an amount equal to the full Carve-Out Reserve Amount (to the extent not previously
funded into the Carve-Out Account) to be held in trust to pay all amounts included the Carve-
Out.

(ii)    On or after the date of a Carve-Out Trigger Notice, the DIP ABL Administrative Agent shall not sweep or foreclose on cash of the Debtors (including cash received as a result of the sale or other disposition of any assets) until the Carve-Out Account has been fully funded. To the extent such cash on hand and availability and/or proceeds of any other postpetition financing facility are not sufficient to fully fund the Carve-Out Account, the Carve-Out Trigger Notice shall be deemed to constitute a draw request and notice of borrowing by the Debtors for DIP ABL Revolving Advances under the DIP ABL Loan Documents (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) to fully fund the Carve-Out Account.    On the first business day after delivery of the Carve-Out Trigger Notice, notwithstanding anything in the DIP ABL Loan Documents to the contrary, including with respect to the existence of a Default (as defined in the DIP ABL Loan Documents) or Event of Default (as defined in the DIP ABL Loan Documents), the failure of the Debtors to satisfy any or all of the conditions precedent for DIP ABL Revolving Advances under the DIP ABL Revolver, any termination of the commitments thereunder following an Event of Default at the direction of the DIP ABL Administrative Agent, each DIP ABL Revolving Lender with an outstanding DIP ABL Revolving Commitments (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) shall make available to the DIP ABL Administrative Agent such DIP ABL Revolving Lender's pro rata share with respect to the borrowings required to fully fund the Carve-Out Account in accordance with the DIP ABL Revolver; *provided*, *however*, that in no event shall the DIP ABL Credit Parties be required to fund the Carve-Out Account to the extent such funding would cause Capped Excess Availability (as defined in the DIP ABL Loan Documents and determined as if the DIP ABL Revolving Commitments were not terminated due to an Event of Default (as defined in the DIP ABL Loan Documents)) to be less than zero.    Any such funding of the Carve-Out shall be added to, and made a part of, the DIP ABL Obligations secured by the DIP ABL Collateral and shall otherwise be entitled to the protections granted under this Interim Order, the DIP ABL Loan Documents, the Bankruptcy Code, and applicable law.

(iii)    In no event shall the DIP ABL Administrative Agent or the DIP ABL Lenders be required to (x) extend DIP ABL Revolving Advances to fund the Carve-Out other than pursuant to this paragraph 20(g), (y) extend DIP ABL Revolving Advances pursuant to a deemed draw and borrowing pursuant this paragraph in an aggregate amount exceeding the Carve-Out Reserve Amount, or (z) pay in the aggregate more than the Carve-Out Reserve Amount for all fees and expenses included in the Carve-Out.

(iv)    All funds in the Carve-Out Account shall be used first to pay the obligations set forth in the definition of the Carve-Out set forth above until paid in full.    All payments and reimbursements made from the Carve-Out Account shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(v)    To the extent any funds remain in the Carve-Out Account after payment of all amounts included in the Carve-Out, such funds shall first be used to pay the DIP ABL Administrative Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Obligations have been indefeasibly paid in full, in cash, all commitments under the DIP ABL Facility have been terminated, and all Letters of Credit (as defined in the DIP ABL Loan Documents) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise

backstopped to the satisfaction of the DIP ABL Administrative Agent in its sole and absolute discretion), in which case any such excess shall next be paid to the Prepetition Credit Parties in accordance with their rights and priorities under this Interim Order.

(h)    *Carve-Out Limitations.*    For purposes of the Carve-Out, (i) any

success, restructuring, sale or other similar fees shall not be included except for such fees in an

aggregate amount up to $12 million that become Allowed Professional Fees of Lazard Freres &

Co. LLC and/or M-III Advisory Partners, LP (the "Permitted Carve-Out Success Fees") or any

other success, restructuring, sale or other similar fees agreed to by the DIP ABL Agents in their

sole and absolute discretion and (ii) Allowed Professional Fees shall exclude fees and expenses

of any third party professionals employed by any individual member of the Creditors'

Committee.    Further notwithstanding anything to the contrary herein, the Carve-Out shall not

include, apply to or be available for any fees or expenses incurred by any party in connection

with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary

proceedings or other litigation (i) against any of the DIP ABL Credit Parties, Prepetition ABL

Credit Parties,[3] or any Representatives of any of the foregoing, or (ii) challenging the amount,

validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset

to, the obligations and the liens and security interests granted under the DIP ABL Loan

Documents or, the Prepetition ABL Loan Documents, including, in each case for lender liability

or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code,

applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to

---

[3]    Notwithstanding anything to the contrary in this Interim Order, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, the Company, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings, shall not be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL Loans or the Carve Out. For purposes of this paragraph 20(h), the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

the DIP ABL Credit Parties or the Prepetition ABL Credit Parties under the DIP ABL Loan

Documents, the Prepetition ABL Loan Documents or this Interim Order; (c) attempts to prevent,

hinder or otherwise delay any of the DIP ABL Credit Parties' or the Prepetition ABL Credit

Parties' assertion, enforcement or realization upon any of the Prepetition Collateral or DIP ABL

Collateral in accordance with the DIP ABL Loan Documents, the Prepetition ABL Loan

Documents, and the Interim Order other than to seek a determination that a Termination Event

has not occurred or is not continuing; (d) paying any amount on account of any claims arising

before the commencement of the Chapter 11 Cases unless such payments are specifically

approved by an order of the Bankruptcy Court; (e) any success, completion, back-end or similar

fees other than the Permitted Carve-Out Success Fees or any other success, restructuring, sale or

other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion; and/or

(f) anything else prohibited by the DIP ABL Loan Documents, the Prepetition ABL Loan

Documents or any order of the Bankruptcy Court, as applicable.  In no way shall the Carve-Out,

the Carve-Out Account, the Approved Budget or any of the forgoing be construed as a cap or

limitation on the amount of Allowed Professional Fees due and payable by the Debtors or that

may be allowed by the Bankruptcy Court at any time (whether by interim order, final order or

otherwise).

(i)      *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to

Object to Fees.*  Other than the funding of the Carve-Out with the proceeds of the DIP ABL

Facility as provided herein and in the DIP ABL Loan Documents, the DIP ABL Credit Parties

shall not be responsible for the payment or reimbursement of any fees or disbursements of any

Professional Person incurred in connection with these Chapter 11 Cases, any Successor Cases, or

otherwise.  Nothing in this Interim Order or otherwise shall be construed:  (i) to obligate the DIP

ABL Credit Parties or the Prepetition ABL Credit Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, other than the Carve-Out Reserve Amount; (ii) as consent to the allowance of any fees and expenses of Professional Persons; or (iii) to affect the rights of the DIP ABL Credit Parties, the Prepetition ABL Credit Parties or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(j)    *Payment of Compensation.* The Debtors shall be permitted to pay fees and expenses allowed and payable by order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable from the Carve-Out Reserve Account. Such payments prior to a Carve-Out Trigger Notice shall not reduce the Post Trigger Notice Carve-Out Fee Cap.

21.    ***Budget and Borrowing Base Reporting; Budget Compliance***

(a)    The DIP ABL Loan Parties shall deliver to the DIP ABL Agents and the DIP ABL Lenders: (i) an initial cash flow forecast together with accompanying schedules supporting line items in such forecast (such as roll-forward of inventory sales and receipts, roll-forward of merchandise and other payables and other documentation which may be requested by the DIP ABL Agents) (a "Budget") for the 13-week period ending after the Initial Closing Date, dated as of a date not more than one (1) business day prior to the Initial Closing Date, which shall be subject to the approval of the Joint Lead Arrangers (as defined in the DIP ABL Loan Documents) in their sole and absolute discretion (once so approved, and subject to any update as may be approved by the ABL DIP Agents in their sole and absolute discretion, the "Approved Initial Budget"), attached hereto as Exhibit A, (ii) on October 31, 2018 and every Wednesday thereafter, a Budget for the immediately following consecutive 13 weeks (each, a

"Rolling Budget"), (iii) on each Wednesday beginning October 31, 2018, reports detailing operating and financial performance (the "Weekly Flash Reporting Package") which shall include cash flow performance for the previous week together with accompanying schedules supporting line items included in the weekly cash flow results (such as roll-forward) of inventory sales and receipts, roll-forward of merchandise and other payables of each DIP ABL Loan Party as of the end of the prior week, in each case, in reasonable detail, (iv) other customary information and documents, including approval rights with respect thereto, to be set forth in the DIP ABL Loan Documents, and (v) other information as may be reasonably requested by the DIP ABL Agents.  The DIP ABL Loan Parties shall be required to comply with such Approved Initial Budget, including having made all scheduled payments to the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, as applicable, and when required, subject to the Permitted Variance (as defined below).

(b)     The DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent a borrowing base certificate presenting the DIP ABL Borrowers' computation of the DIP Borrowing Base (as defined in the DIP ABL Loan Documents) as of the last business day of each week (including appropriate supporting data therefor) (a "Borrowing Base Certificate") promptly, but in no event later than the Tuesday following the end of each week.  The initial Borrowing Base Certificate shall be delivered as a condition precedent to the Initial Closing Date and dated as of a date not more than one (1) business day prior to the Initial Closing Date.  In connection with any material asset sale, the DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent a pro forma Borrowing Base Certificate giving effect to such sale at least three (3) business days prior to the closing of such sale.  In addition, not later than the tenth (10th) day of each month, commencing with the first full month immediately

following the Petition Date, an updated inventory appraisal shall be delivered to the DIP ABL Administrative Agent.

(c)     The DIP ABL Loan Parties shall also provide a qualitative and quantitative budget variance report/reconciliation (the "Budget Variance Report") for delivery to the DIP ABL Agents by Wednesday of every week for the most recently ended four-week period included in the Approved Initial Budget (the "Testing Period") showing by line item actual cash receipts, disbursements, and inventory receipts for each four week period, in comparable form and substance to what has been provided to the DIP ABL Agents prior to the Initial Closing Date, noting therein all the variance, on a cumulative basis, of the DIP ABL Borrowers' total net cash flow excluding proceeds from asset sales, except for proceeds from the sale of inventory, and also excluding financing related items (the "Net Cash Flow") for such four week period in the Approved Initial Budget, and shall include explanations for any material variance for such four week period.  The Borrowers will supplement the Weekly Flash Reporting Package and the Budget Variance Report from time to time upon the request of the DIP ABL Agents.

(d)     The DIP ABL Loan Parties shall be required to comply with each Approved Budget in all material respects,  including having made all scheduled payments to the DIP ABL Credit Parties and the Prepetition ABL Credit Parties, as applicable, as and when required, subject to the following (the "Permitted Variance"): the Borrowers' Net Cash Flow shall not be less than the Net Cash Flow set forth in the Approved Initial Budget minus the Applicable Variance Percentage of the absolute value of the Net Cash Flow set forth in the Approved Initial Budget; provided, however, to the extent any amounts owed to professionals and vendors are permitted to be paid in accordance with the foregoing covenant but are not actually paid during the subject period, such amounts may be paid during a subsequent period.

"Applicable Variance Percentage" shall mean, from the Initial Closing Date until November 10, 2018, 20%; from November 24, 2018 until the Termination Date, 15%. Such covenant shall be tested on Saturday each second week (commencing on November 10, 2018) (but shall be reported each week) on a cumulative basis from the Petition Date until the fourth (4th) week after the Petition Date and then on a rolling four (4) week basis, pursuant to the Budget Variance Report delivered by the DIP ABL Borrowers to the DIP ABL Agents.

(e)     The DIP ABL Loan Parties shall arrange for a weekly conference call with the DIP ABL Agents and their professional advisors discussing and analyzing cash flow and related forecasts for the prior week, the financial condition, liquidity and results of operations of each of the DIP ABL Loan Parties, status of the Chapter 11 Cases and progress in achieving the Case Milestones set forth in the DIP ABL Loan Documents.

22.     ***Winddown Account.***    After entry of the Final Order, upon the consummation of any sales of Prepetition Unencumbered Assets, the DIP ABL Loan Parties shall deposit the first $200 million of net cash proceeds in respect of such sales into the Winddown Account. "Winddown Account" shall mean a cash collateral account at Bank of America, N.A. that, prior to the discharge in full of all obligations under the DIP ABL Facility, may only be used to pay winddown costs of the DIP ABL Loan Parties at the discretion of the DIP ABL Loan Parties following entry of the Final Order.

23.     ***Modification of DIP ABL Loan Documents***.  The DIP ABL Loan Parties and the DIP ABL Agents are hereby authorized, subject to the DIP ABL Loan Documents, to implement, in accordance with the terms of the respective DIP ABL Loan Documents, any amendments, waivers, consents or other modifications to or under the DIP ABL Loan

Documents (including any change in the number or composition of the DIP ABL Lenders) without further order of this Court unless such amendment, waiver, consent or other modification (a) restricts, limits or prohibits any payments required pursuant to paragraph 18 of this Interim Order, or (b) shortens the maturity or the scheduled termination date thereunder.

24.     ***Right to Credit Bid.***  Subject to Section 363(k) of the Bankruptcy Code, the DIP ABL Agent and the Prepetition ABL Administrative Agent (subject to obtaining any required consent or direction of the requisite number or percentage of the Prepetition ABL Credit Parties) shall have the right to "credit bid" up to the full allowed amount of their respective claims and outstanding obligations in connection with any sale of all or any portion of the DIP ABL Collateral, including any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code or otherwise.  For the avoidance of doubt, any such credit bid for all or any portion of the DIP ABL Collateral must, upon closing of such sale transaction, provide for payment in full of all senior security interests in and liens on all of the DIP ABL Collateral being acquired in such sale transaction, absent waiver by the DIP ABL Agents or the Prepetition ABL Administrative Agent, as applicable.

25.     ***Automatic Perfection of DIP ABL Liens and Adequate Protection Liens.***

(a)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP ABL Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the

taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens and the Adequate Protection Liens, or to entitle the DIP ABL Credit Parties or the Prepetition Credit Parties to the priorities granted herein.

(b)     Notwithstanding the foregoing, the DIP ABL Agents and the Prepetition Agents each are hereby authorized, but not required, to file or record (and to execute in the name of the DIP ABL Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over cash, deposit accounts, securities, or other assets, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.   Whether or not the DIP ABL Agents or the Prepetition Agents (as applicable) choose, in their sole discretion, to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over any cash, deposit accounts, securities, or other assets, or otherwise confirm perfection of the liens and security interests granted to the DIP ABL Control Co-Collateral Agent and the Prepetition ABL Control Co-Collateral Agent, respectively, hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order) immediately upon entry of this Interim Order.

(c)     The DIP ABL Loan Parties are authorized to execute and deliver promptly upon demand to the DIP ABL Agents or the Prepetition Agents all such financing

statements, mortgages, control agreements, notices and other documents as the DIP ABL Agents

or the Prepetition Agents may reasonably request.  The DIP ABL Loan Parties are authorized to,

and shall, execute and deliver to the DIP ABL Agents and the Prepetition Agents such

agreements, financing statements, mortgages, instruments and other documents as the DIP ABL

Agents or the Prepetition Agents may reasonably request to evidence, confirm, validate, or

perfect the DIP ABL Liens or the Adequate Protection Liens; and the failure by the DIP ABL

Loan Parties to execute or deliver any documentation relating to the DIP ABL Liens or the

Adequate Protection Liens shall in no way affect the validity, enforceability, nonavoidability,

perfection, or priority of such liens.

(d)     As set forth in the DIP ABL Term Sheet, Wells Fargo Bank,

National Association has appointed Bank of America, N.A., in its capacity as a DIP ABL Co-

Collateral Agent, as agent to the DIP ABL Co-Collateral Agents for purposes of filing financing

statements, mortgages, control agreements, notices and other documents, in connection with the

perfection of a security interest in the DIP ABL Collateral which was granted for the benefit of

the DIP ABL Credit Parties (the "DIP ABL Control Co-Collateral Agent"). Each Debtor

acknowledges that any and all actions to be taken by the DIP ABL Co-Collateral Agents under

this Interim Order, the Final Order, the DIP ABL Term Sheet, and the DIP ABL Loan

Documents, may be taken individually by the DIP ABL Control Co-Collateral Agent, and all

such actions shall have the full force and effect as though taken jointly by both of the DIP ABL

Co-Collateral Agents. The financing statements described above may describe the DIP ABL

Collateral in the same manner as described herein, in the DIP ABL Term Sheet and in the DIP

ABL Credit Agreement, or may contain an indication or description of the DIP ABL Collateral

that describes such property in any other manner as the DIP ABL Control Co-Collateral Agent

may determine is necessary, advisable or prudent, including describing such property as "all assets and all personal property whether now owned or hereafter acquired" of the applicable Debtor or words of similar effect.

(e)    The DIP ABL Agents and the Prepetition Agents, each in their discretion, may file a photocopy of this Interim Order as a financing statement or other notice of lien or similar instrument, with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept and record the photocopy of this Interim Order, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Each Debtor is authorized to execute and deliver to the DIP ABL Agents or Prepetition Agents, mortgages in recordable form with respect to any real estate constituting DIP ABL Collateral and identified by any of the DIP ABL Agents or Prepetition Agents on terms reasonably satisfactory to the DIP ABL Agents or Prepetition Agents, as applicable.

26.    ***Other Automatic Perfection Matters.***  To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee or additional insured under any of the DIP ABL Loan Parties' insurance policies, or is the secured party under any Prepetition Loan Document, each of the DIP ABL Agents, for itself and on behalf of the DIP ABL Credit Parties is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the DIP ABL Loan Parties' insurance policies, and the secured party under each such Prepetition Loan Document (in any such case with the same priority of liens and claims thereunder relative to the priority of (a) the DIP ABL Liens, and (b) the Prepetition Liens and Adequate Protection Liens, in each case, as set forth in this Interim Order), and shall have all rights and powers in each case attendant to that position (including rights of enforcement but subject in all respects to the terms of this Interim Order),

and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and the DIP ABL Loan Documents.  The Prepetition ABL Control Co-Collateral Agent or the Prepetition Second Lien Collateral Agent, as applicable, shall serve as agent for the DIP ABL Agents for purposes of perfecting the DIP ABL Agents' security interests in and liens on all DIP ABL Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

27.    ***Proceeds of Subsequent Financing.***  If any of the DIP ABL Loan Parties, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in any of the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt in breach of the DIP ABL Loan Documents, at any time prior to the repayment in full in cash of all DIP ABL Secured Obligations, or all Prepetition ABL Obligations, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the DIP ABL Loan Parties and the DIP ABL Loan Parties' estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agents, or if the DIP ABL Secured Obligations have been paid in full in cash, to the Prepetition ABL Administrative Agent, to be applied in accordance with this Interim Order and the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and the Prepetition Loan Documents, as applicable.

28.    ***Maintenance and Disposition of DIP ABL Collateral / Cash Management.***    Until the indefeasible payment in full in cash of all DIP ABL Secured Obligations, and the termination of the obligation of the DIP ABL Credit Parties to extend credit under the DIP ABL Facility, the DIP ABL Loan Parties shall (a) maintain and insure the DIP ABL Collateral in amounts, for the risks, and by the entities as required under the DIP ABL

Loan Documents, (b) except as set forth in this paragraph 28, maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP ABL Loan Documents; (ii) subject to the Cash Management Order,[4] as may be modified, with the prior written consent of the DIP ABL Agents by any order that may be entered by this Court; and (iii) in a manner which, in any event, shall be satisfactory to the DIP ABL Agents.  Other than as expressly required pursuant to the DIP ABL Loan Documents, the Cash Management Order or this Interim Order, no modifications to the DIP ABL Loan Parties' cash management system existing as of the Petition Date may be made without the prior approval of the DIP ABL Agents. Further, the DIP ABL Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Collateral or Prepetition ABL Collateral other than in the ordinary course of business without the prior consent of the DIP ABL Agents and Prepetition ABL Agents, as applicable (and no consent shall be implied, from any other action, inaction or acquiescence by the DIP ABL Agents or Prepetition ABL Agents, or from any order of this Court), except as otherwise provided for in the DIP ABL Loan Documents or otherwise ordered by the Bankruptcy Court.

29.     ***Bank Products and Cash Management Services.***  From and after the date of the entry of the Interim Order, and consistent with this Interim Order and the DIP ABL Loan Documents in all respects, any DIP/ABL Cash Management/Bank Products Provider shall be deemed a Secured Party (as defined in the DIP ABL Loan Documents) and a DIP ABL Credit Party with respect to any claims related to such Bank Products and Cash Management Services

---

[4]     "Cash Management Order" means an interim or final order granting the *Motion Of Debtors For Authority To (I) Continue  Using Existing Cash Management System, Bank Accounts,  And Business Forms, (II) Implement Ordinary Course Changes  To Cash Management System, (III) Continue Intercompany Transactions, And (IV) Provide Administrative Expense Priority  For Postpetition Intercompany Claims And Related Relief.*

to the extent provided for under the DIP ABL Loan Documents, and any such Bank Products and Cash Management Services shall constitute a DIP Secured Obligation.  From and after the date of the entry of the Interim Order, the DIP ABL Loan Parties are authorized to request the continuation of letters of credit issued under the Prepetition LC Facility Agreement that are outstanding as of the Petition Date (but no new letters of credit), subject to and in accordance with the terms of the Prepetition LC Facility Agreement. Claims of the Prepetition LC Credit Parties under the Prepetition LC Facility Agreement shall continue to be secured by the Prepetition ABL Liens in the Prepetition ABL Collateral.

30.     ***Application of Proceeds of Collateral, Payments and Collections.***  After repayment in full in cash of all DIP ABL Secured Obligations and all Prepetition ABL Obligations, any remaining proceeds of the DIP ABL Collateral shall be applied to the DIP ABL Loan Parties' remaining outstanding and unpaid obligations, in a manner consistent with the Bankruptcy Code and, except as may be otherwise ordered in one or more orders of this Court, in accordance with the rights and priorities set forth in this Interim Order.

31.     ***Case Milestones.***  The DIP ABL Loan Parties shall comply with the case milestones set forth on Annex E in the DIP ABL Term Sheet or otherwise set forth in the DIP ABL Loan Documents (as may be amended from time to time in accordance with the DIP ABL Loan Documents, the "Case Milestones"). For the avoidance of doubt, the failure of the DIP ABL Loan Parties to comply with any of the Case Milestones shall (a) constitute an Event of Default under the DIP ABL Loan Documents and this Interim Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the DIP ABL Loan Parties' authority to use Cash Collateral under this Interim Order; and (c) permit the

DIP ABL Administrative Agent, subject to paragraph 33, to exercise the rights and remedies provided for in this Interim Order and the DIP ABL Loan Documents.

32.    ***Termination Event.***    The occurrence of (a) any Event of Default (as defined in the DIP ABL Loan Documents), or (b) the failure of the DIP ABL Loan Parties to perform, in any respect, any of the terms, provisions, conditions, covenants or obligations under this Interim Order are each referred to herein as a "<u>Termination Event</u>."

33.    ***Rights and Remedies Following a Termination Event.***

(a)    *Termination*. Immediately upon the occurrence and during the continuation of a Termination Event, with no further action of this Court, the DIP ABL Administrative Agent may (or at the direction of the Required Lenders (as defined in the DIP ABL Loan Documents) shall), notify the DIP ABL Loan Parties in writing that a Termination Event has occurred and is continuing (such notice, a "<u>Termination Notice</u>," and the date of any such notice, the "<u>Termination Notice Date</u>").

(b)    *Notice of Termination*.  Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to any Creditors' Committee (if any), the U.S. Trustee, and counsel to each of the Prepetition Agents.  The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "<u>Remedies Notice Period</u>" and the date of the expiration of the Remedies Notice Period, the "<u>Termination Date</u>").

(c)    Without limiting the rights and remedies of the DIP ABL Agents and the other DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Administrative Agent may, at its option, and/or shall, upon the direction of the Required Lenders (as defined in the DIP ABL Loan Documents), as applicable, immediately upon the occurrence

of and during the continuation of a Termination Event following the issuance of a Termination Notice, *inter alia*, without notice and unless the Bankruptcy Court orders otherwise, declare (a) subject to expiration of the Remedies Notice Period, all obligations owing under the applicable DIP ABL Loan Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP ABL Loan Parties, (b) the termination, reduction or restriction of any further commitment to extend credit to the DIP ABL Loan Parties to the extent any such commitment remains, (c) terminate the DIP ABL Facility and the applicable DIP ABL Loan Documents as to any future liability or obligation of the DIP ABL Agents, any DIP ABL Lender, or any other DIP ABL Credit Party, but without affecting any of the liens or the obligations and/or (d), declare a termination, reduction or restriction on the ability of the DIP ABL Loan Parties to use any Cash Collateral and exercise all other rights and remedies provided in the DIP ABL Loan Documents and applicable law, including to require the DIP ABL Loan Parties to cash collateralize any letters of credit outstanding under the DIP ABL Facility in accordance with the DIP ABL Loan Documents (any of the actions set forth in the foregoing (a), (b), (c) and (d), a "Termination");.

(d)     During the Remedies Notice Period, the DIP ABL Loan Parties shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination or for the contested use of Cash Collateral, *provided* that the sole issue that may be raised before the Bankruptcy Court at any such emergency hearing is whether a Termination Event has occurred and/or is continuing.  During the Remedies Notice Period, the DIP ABL Loan Parties may continue to use the DIP ABL Collateral, including Cash Collateral, solely to meet payroll obligations (excluding any severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in

accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Administrative Agent in its sole and absolute discretion and it being understood that none of the DIP ABL Credit Parties shall have any obligation to make an extension of credit under the DIP ABL Facility, or otherwise to fund the Carve-Out Account. Upon expiration of the Remedies Notice Period, the DIP ABL Credit Parties or, upon payment in full of the DIP ABL Secured Obligations the Prepetition ABL Credit Parties, shall be permitted to exercise all remedies set forth herein, in the DIP ABL Loan Documents or the Prepetition ABL Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Bankruptcy Court. Upon the occurrence and during the continuation of a Termination Event and the expiration of the Remedies Notice Period, the DIP ABL Administrative Agent, or upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Administrative Agent, and any liquidator or other professional acting on their behalf will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the DIP ABL Loan Parties have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP ABL Collateral, including pursuant to any Court approved sale process. Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

34.     ***Modification of Automatic Stay.***   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including to (a) permit the DIP ABL Loan Parties to grant the DIP ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims; (b) permit the DIP ABL Agents, the Prepetition LC Facility Administrative Agent, or the Prepetition ABL Agents, as applicable, to take any actions permitted hereunder, including but not limited to the actions set forth in paragraph 25 hereof; and (c) authorize the DIP ABL Loan Parties to pay, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties to retain and apply, payments made in accordance with this Interim Order.

35.     ***Good Faith***.

(a)     *Good Faith Under Section 364 of the Bankruptcy Code*.  The DIP ABL Credit Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the DIP ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the DIP ABL Secured Obligations, or any lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order

shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

(b)     *Prepetition ABL Credit Parties*.   The Prepetition ABL Credit Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.   Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the Prepetition ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.   Any such modification, amendment or vacatur shall not affect the validity and enforceability of the Prepetition ABL Obligations, or any lien, claim or priority authorized or created hereby.   Any liens or claims granted to the Prepetition ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

36.     ***Proofs of Claim.***   Any order entered by the Bankruptcy Court establishing a bar date for any claims (including administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to any DIP ABL Credit Party or any Prepetition ABL Credit Party (for purposes of this paragraph 36, in their respective capacities as such).   The DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by this Interim Order in any of the Chapter 11 Cases or any Successor Case, and the provisions of this Interim Order, and, upon the entry thereof, the Final Order, relating to the amount of the DIP ABL Secured Obligations, the

Prepetition ABL Obligations, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to this Interim Order, the Prepetition ABL Liens, the DIP ABL Liens and the DIP ABL Superpriority Claims shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status.  For the avoidance of doubt, subject to the reservation of rights set forth in paragraphs 40 and 41 hereof, the books and records of the DIP ABL Agents, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent and each of their respective successors and assigns shall be deemed conclusive as to the amount of the claims of each such party.  However, in order to facilitate the processing of claims, to ease the burden upon the Bankruptcy Court and to reduce an unnecessary expense to the DIP ABL Loan Parties' estates, the Prepetition ABL Administrative Agent is authorized, but not directed or required, to file in the DIP ABL Loan Parties' lead chapter 11 case, a single, master proof of claim on behalf of themselves and the Prepetition ABL Credit Parties on account of any and all of their respective claims arising under the Prepetition ABL Documents, as applicable, and hereunder (the "Master Proof of Claim") against each of the DIP ABL Loan Parties.  Upon the filing of the Master Proof of Claim against each of the DIP ABL Loan Parties, the Prepetition ABL Administrative Agent, and the Prepetition ABL Credit Parties, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claim of any type or nature whatsoever with respect to the Prepetition ABL Documents, and the claim of each Prepetition ABL Credit Party (and each of its respective successors and assigns) named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each case of these Chapter 11 Cases.  The Prepetition ABL Administrative Agent shall not be required to identify whether any Prepetition ABL Credit Party acquired its claim from another party and

the identity of any such party or to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 36 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of any Prepetition ABL Credit Party (or its successor in interest) to vote separately on any plan proposed in any of the DIP ABL Loan Parties' Chapter 11 Cases. The Prepetition ABL Administrative Agent shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the DIP ABL Loan Parties to the Prepetition ABL Credit Parties, as applicable, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition ABL Administrative Agent.

37. ***Rights of Access and Information.***  Without limiting the rights of access and information afforded the DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Loan Parties shall be, and hereby are, required to afford Representatives, agents and/or employees of the DIP ABL Agents reasonable access to: (a) the DIP ABL Loan Parties' premises, (b) knowledgeable officers of the DIP ABL Loan Parties, (c) the DIP ABL Loan Parties' books and records, and (d) the DIP ABL Loan Parties' properties and other collateral of any Debtor against whom such parties are granted DIP ABL Liens, DIP ABL Superpriority Claims, Adequate Protection Liens, or Adequate Protection Claims under this Interim Order and the DIP ABL Loan Parties shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  Without limiting any other rights or remedies of the DIP ABL Agents or the other DIP ABL Credit Parties, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Loan Documents, upon three (3)

business days' written notice to counsel to the DIP ABL Loan Parties and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, after the expiration of the Remedies Notice Period, that a Termination Event has occurred and is continuing, the DIP ABL Agents, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP ABL Agents (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the DIP ABL Loan Parties for the purpose of exercising any remedy with respect to DIP ABL Collateral located thereon, and (ii) shall be entitled to all of the DIP ABL Loan Parties' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the DIP ABL Loan Parties, which are owned by or subject to a lien of any third party and which are used by DIP ABL Loan Parties in their businesses, in either the case of (i) or (ii), without interference from lienholders or licensors thereunder; *provided*, *however*, that the DIP ABL Agents (on behalf of the applicable DIP ABL Lenders) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the DIP ABL Loan Parties that accrue during the period of such occupancy or actual use by DIP ABL Agents calculated on a per diem basis. Nothing herein shall require the DIP ABL Loan Parties, the DIP ABL Agents or the other DIP ABL Credit Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP ABL Agents and the other DIP ABL Credit Parties herein.  Nothing shall prevent the rights of a landlord to object to the relief being sought in this subparagraph subject to the Final Hearing.  Notwithstanding the foregoing, the DIP ABL Agents' exercise of its remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the

Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

38. ***Intercompany Obligations.*** To the extent any Debtor owes any intercompany obligation or indebtedness to any other Debtor or any direct or indirect subsidiary of any Debtor (the "Intercompany Obligations"), such Intercompany Obligations shall, subject to the reservation of rights set forth in paragraphs 40 and 41 hereof, be subordinated to the DIP ABL Secured Obligations, and the guarantees (if any) thereof, until the DIP ABL Secured Obligations are indefeasibly repaid in full in cash. For the avoidance of doubt, any reference in this Interim Order to payment (or repayment) in full shall mean: (a) indefeasible repayment of all outstanding obligations in full in cash, (b) termination or expiration of all commitments under any applicable DIP ABL Loan Documents or Prepetition ABL Loan Documents and termination or expiration of any other commitment of any DIP ABL Credit Parties or Prepetition ABL Credit Parties to make extensions of credit to any of the DIP ABL Loan Parties under any such DIP ABL Loan Documents or Prepetition ABL Loan Documents, respectively, (c) all letters of credit issued or deemed issued under the DIP ABL Loan Documents have been canceled or have expired, and all amounts drawn thereunder have been reimbursed in full in cash (or other arrangements with respect thereto satisfactory to the DIP ABL Agents in their sole discretion shall have been made), and (d) solely with respect to the Prepetition ABL Obligations (i) if no Challenge Proceeding has been timely and properly commenced with respect to the prepetition obligations subject to the ABL Roll Up, the expiration of the Challenge Period, or (ii) the date on which any order entered by the Bankruptcy Court in favor of the applicable secured party in such

Challenge Proceeding becomes final and non-appealable. For the avoidance of doubt, any Intercompany Obligations shall be subordinated to the DIP ABL Secured Obligations and the Adequate Protection Claims.

39. ***Prohibited Use of DIP ABL Facility, DIP ABL Collateral, Cash Collateral, Carve-Out, etc***.  Notwithstanding anything herein, prior to indefeasible payment in full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, except as otherwise expressly provided in this Interim Order, the DIP ABL Facility, the DIP ABL Collateral, the Cash Collateral, the Prepetition ABL Collateral, proceeds of any of the foregoing, and the Carve-Out may not be used:

(a)     for the payment of interest and principal with respect to Prepetition Obligations or any other prepetition indebtedness of the Debtors, except for: (i) the Carve-Out; (ii) prepetition employee wages, benefits and related employee taxes as of the Petition Date; (iii) prepetition sales, use and real property taxes; (iv) prepetition amounts due in respect of insurance financings, premiums and brokerage fees; (v) payment of certain expenses (which expenses shall include fees and expenses of professionals) of the Prepetition ABL Agents and the Prepetition ABL Credit Parties (solely as required under the Prepetition Loan Documents); (vi) other "first day" interim and final orders permitting payment of prepetition claims, in the case of (ii) through (vi) pursuant to an order or orders of the Bankruptcy Court in form and substance acceptable to the DIP ABL Agents in their sole and absolute discretion and subject to and in accordance with the Approved Budget; (vii) the ABL Roll Up; and (viii) other indebtedness to the extent authorized by the Bankruptcy Court and set forth in the Approved Budget;

(b)     subject to this Interim Order in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation or threatened litigation (including any investigation in connection with such litigation or threatened litigation) of any type adverse to the rights, remedies, claims or defenses of the DIP ABL Credit Parties[5] or the Joint Lead Arrangers under the DIP ABL Loan Documents or the Prepetition ABL Credit Parties under the Prepetition ABL Loan

---

[5]     For the purposes of this paragraph 39, the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

Documents, this Interim Order, including for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding, challenging, or subordinating, in whole or in part, the DIP ABL Secured Obligations, DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payments pursuant to this Interim Order; (B) for monetary, injunctive, declarative or other affirmative relief against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties or their respective collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties of any rights and remedies under this Interim Order, the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties upon any of their respective collateral;

(c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP ABL Agents, unless otherwise set forth in the Approved Budget;

(d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtors (including so-called "topping fees," "exit fees" and other similar amounts), except as approved by the Bankruptcy Court, without prior written consent by the DIP ABL Agents, unless otherwise included in the Approved Budget;

(e) to object to, contest, or interfere with, in any way, the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' enforcement or realization upon any of the Prepetition ABL Collateral or DIP ABL Collateral once a Termination Event has occurred, except as provided for in this Interim Order, or seek to prevent the DIP ABL Credit Parties or the Prepetition ABL Credit Parties from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

(f) unless in connection with the repayment in full, in cash of the DIP ABL Facility, or the Prepetition ABL Secured Obligations, as applicable, to use or seek to use Cash Collateral while the DIP ABL Secured Obligations, the Prepetition ABL Obligations and/or any of the DIP ABL Credit Parties' commitments under the DIP ABL Loan Documents remain outstanding, without the consent of the DIP ABL Agents, or the Prepetition ABL Administrative Agent, as applicable, other than during

the Remedies Notice Period during which period the DIP ABL Loan Parties may only use Cash Collateral in accordance with the terms of this Interim Order;

(g)    to use or seek to use any insurance or tax refund proceeds constituting DIP ABL Collateral or Prepetition ABL Collateral other than solely in accordance with the Approved Budget and the DIP ABL Loan Documents;

(h)    to incur indebtedness other than in accordance with the Approved Budget or the DIP ABL Loan Documents without the prior consent of the DIP ABL Agent;

(i)    to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, however, that, if a Creditors' Committee is appointed, not more than $100,000 in the aggregate of proceeds of the Carve-Out, any Cash Collateral, or any proceeds of the DIP ABL Facility or the DIP ABL Collateral may be used by such Creditors' Committee for purposes of investigating such claims, liens, or interests of the Prepetition ABL Credit Parties pursuant to paragraphs 40 and 41 (but not to litigate any of the foregoing);

(j)    to assert, commence, prosecute or support any claims or causes of action whatsoever, including any Avoidance Action, against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

(k)    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP ABL Secured Obligations, the DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to this Interim Order or any other rights or interests of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

(l)    to sell or otherwise dispose of the DIP ABL Collateral or the Prepetition ABL Collateral other than as contemplated by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable; or

(m)    for any purpose otherwise limited by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable.

40.    ***Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.***  The stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall be binding on the Debtors and any successors thereto in all circumstances. The Debtors' Stipulations shall be binding on the Debtors' estates and each other party in interest,

including any Creditors' Committee, unless, and solely to the extent that (a) any such party in interest, including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including any Creditors' Committee), and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, with standing and requisite authority, has timely commenced an adversary proceeding (subject to the limitations set forth in paragraphs 40 and 41 hereof) against the Prepetition ABL Credit Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "Representatives") in connection with any matter related to the Prepetition ABL Loan Documents or the Prepetition ABL Collateral (a "Challenge Proceeding") by no later than on or before each of a period of 60 days after entry of the Final Order (the "Challenge Period"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding. Upon the expiration of the Challenge Period, without the filing of a Challenge Proceeding.

(a)     any and all such Challenge Proceedings and objections by any party (including any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred,

(b)     all matters not subject to the Challenge Proceedings, including all findings, the Debtors' Stipulations, all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition ABL Credit Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Case;

(c)      any and all prepetition claims or causes of action against the Prepetition ABL Credit Parties, as applicable, relating in any way to the Debtors or the Prepetition ABL Loan Documents, as applicable, shall be forever waived and released by the Debtors, the Debtors' estates, all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Case;

(d)      to the extent not theretofore repaid, the Prepetition ABL Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction (except as may be provided by Section 506(a) of the Bankruptcy Code), defense or avoidance, for all purposes in these Chapter 11 Cases or any Successor Case;

(e)      the Prepetition ABL Liens on the Prepetition ABL Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and

(f)      the obligations under the Prepetition ABL Loan Documents and the Prepetition ABL Facility Liens on the Prepetition ABL Collateral shall not be subject to any other or further challenge by the Debtors, the Creditors' Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a chapter 7 or chapter 11 trustee and/or examiner appointed or elected for any of the Debtors with respect thereto).

41.     If any Challenge Proceeding is timely commenced, the admissions and stipulations contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Creditors' Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final, non-appealable order) in such Challenge Proceeding.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including claims and defenses with respect to the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral.  Notwithstanding anything to the contrary in this Interim Order, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved

Budget, the Company, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings shall not be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL Loans or the Carve Out.

42.    ***No Third Party Rights.***    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

43.    ***Limitations on Charging Expenses.***    In the Final Order, the Debtors will request that no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP ABL Credit Parties or the DIP ABL Collateral or the Prepetition ABL Credit Parties or the Prepetition ABL Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior written consent of each of the DIP ABL Agents, any DIP ABL Credit Party, and/or any Prepetition ABL Credit Party, as applicable, and no such consent shall be implied from this Interim Order or any other action, inaction, or acquiescence by any such agents or lenders.

44.    ***Section 552(b).***    In the Final Order, the Debtors will request that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, with respect to proceeds, products, offspring or profits of any of the Prepetition ABL Collateral or the DIP ABL Collateral.

45.    ***No Marshaling/Applications of Proceeds.***  In the Final Order, the Debtors will request that neither the DIP ABL Credit Parties nor the Prepetition ABL Credit Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP ABL Collateral or the Prepetition ABL Collateral.

46.    ***Discharge Waiver.***  The Debtors expressly stipulate, and the Bankruptcy Court finds and adjudicates that, none of the DIP ABL Secured Obligations, the DIP ABL Superpriority Claims, the DIP ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payment obligations pursuant to this Interim Order, shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP ABL Secured Obligations and the Adequate Protection Claims have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

47.    ***Rights Preserved.***   Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP ABL Credit Parties and the Prepetition Credit Parties are preserved.  Nothing contained herein shall be deemed to prevent the Prepetition Credit Parties from requesting additional adequate protection or from arguing that the adequate protection granted herein does in fact adequately protect the Prepetition Credit Parties against any post-petition diminution in value of the Prepetition Collateral.

48.    ***Release.***    In the Final Order, the Debtors will seek approval of the following: subject to paragraphs 40 and 41 and as further set forth in the DIP ABL Loan Documents, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any Successor Case) and any

party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and

agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or

future DIP ABL Agents and other current or future DIP ABL Credit Parties, the Joint Lead

Arrangers (as defined in the DIP ABL Loan Documents), the current or future Prepetition ABL

Administrative Agent, Prepetition LC Facility Administrative Agent and other current or future

Prepetition ABL Credit Parties and each of their respective participants and each of their

respective affiliates, and each of their respective Representatives, from any and all claims,

demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and

obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses,

damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known,

unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent,

pending, or threatened, including all legal and equitable theories of recovery, arising under

common law, statute or regulation or by contract, of every nature and description, arising out of,

in connection with, or relating to the DIP ABL Facility, the DIP ABL Loan Documents, the

Prepetition ABL Facility, the Prepetition ABL Loan Documents, or the transactions and

relationships contemplated hereunder or thereunder, including (i) any so-called "lender liability"

or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising

under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the

validity, priority, perfection, or avoidability of the liens or secured claims of the DIP ABL

Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, the Prepetition LC

Facility Administrative Agent and the other Prepetition ABL Credit Parties; and (b) waive any

and all defenses (including offsets and counterclaims of any nature or kind) as to the validity,

perfection, priority, enforceability, and nonavoidability of the DIP ABL Secured Obligations, the

DIP ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Obligations, the

Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any

adequate protection payment obligations pursuant to this Interim Order, *provided*, *however*, that

the foregoing release shall not release any claims for fraud or willful misconduct, *provided,*

*further* that ESL Investments, Inc., in any capacity, and each of its affiliates shall not be entitled

to a release pursuant to this paragraph.  For the avoidance of doubt, the foregoing release shall

not constitute a release of any rights arising under the DIP ABL Loan Documents.

49.    ***No Waiver by Failure to Seek Relief.***  The failure or delay of the DIP

ABL Credit Parties or the Prepetition Credit Parties to seek relief or otherwise exercise their

respective rights and remedies under this Interim Order, the Prepetition Loan Documents, the

DIP ABL Loan Documents, or applicable law, as the case may be, shall not constitute a waiver

of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Credit Parties or the

Prepetition Credit Parties.

50.    ***Binding Effect of Interim Order.***  Immediately upon entry by the

Bankruptcy Court (notwithstanding any applicable Bankruptcy Rules or any other law or rule to

the contrary), the terms and provisions of this Interim Order, including the liens granted herein

shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit

of the Debtors, the DIP ABL Credit Parties, and the Prepetition ABL Credit Parties, and their

respective successors and assigns.  To the extent there is any applicable stay of this Interim

Order, it is hereby waived.

51.    ***No Modification of Interim Order.***  The Debtors irrevocably waive the

right to seek and shall not seek or consent, directly or indirectly without the prior written consent

of the DIP ABL Agents and the Prepetition ABL Agents, which consent of the DIP ABL Agents

or Prepetition ABL Agents may be refused in their sole and absolute discretion: (a) any modification, stay, vacatur or amendment to this Interim Order; (b) a priority claim for any administrative expense or unsecured claim against the Debtors to the fullest extent permitted under the Bankruptcy Code in the Chapter 11 Cases or any Successor Case, equal or superior to the Adequate Protection Claims, other than the Carve-Out and the DIP ABL Superpriority Claim; (c) any order allowing use of Cash Collateral constituting DIP ABL Collateral other than this Interim Order and the Final Order; (d) any lien on any of the DIP ABL Collateral, with priority equal or superior to the Adequate Protection Liens (other than the Permitted Prior Liens and the DIP ABL Liens).  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition ABL Credit Parties or the DIP ABL Credit Parties.

52.    ***Interim Order Controls.***  In the event of any inconsistency between the terms and conditions of the DIP ABL Loan Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

53.    ***Survival.***  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Case; or (d) pursuant to which the Bankruptcy Court abstains from hearing the Chapter 11 Cases or any Successor Case.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition

Credit Parties and the DIP ABL Credit Parties pursuant to this Interim Order and/or the Prepetition Loan Documents (other than as modified hereby), notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Interim Order until all DIP ABL Secured Obligations, all Prepetition ABL Obligations, all Prepetition Second Lien Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to this Interim Order, have been paid in full.

54.    ***Preservation of Rights Granted Under this Interim Order***.

(a)    Except as expressly provided herein or in the DIP ABL Loan Documents, no claim (to the fullest extent permitted under the Bankruptcy Code) or lien having a priority senior to or *pari passu* with that granted by this Interim Order to the DIP ABL Credit Parties shall be granted while any portion of the DIP ABL Secured Obligations remain outstanding, and the DIP ABL Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP ABL Secured Obligations and Prepetition ABL Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP ABL Loan Documents and shall terminate the right of the DIP ABL Loan Parties to use Cash Collateral if any of the Debtors seek, or if there is entered (i) any stay, vacatur, rescission, modification, amendment, or extension of this Interim Order or the Final Order without the prior written consent of the DIP ABL Agents, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP ABL Agents;

(ii) an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of these Chapter 11 Cases; (iii) [reserved]; or (iv) any other order granting adequate protection or authorizing the use of Cash Collateral without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, and no such consent shall be implied by any other action, inaction, or acquiescence by any of the DIP ABL Agents and the Prepetition ABL Agents.  If an order dismissing or converting any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the DIP ABL Superpriority Claims, Adequate Protection Claims and other administrative claims granted under this Interim Order, the DIP ABL Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP ABL Secured Obligations, all Prepetition Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to this Interim Order shall have been paid and satisfied in full (and that such DIP ABL Superpriority Claims, Adequate Protection Claims, the other administrative claims granted under this Interim Order, the DIP ABL Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP ABL Secured Obligations, the Adequate Protection Claims, or any adequate protection payment obligations pursuant to this Interim Order incurred prior to the actual receipt of written notice by the DIP ABL Agents or the Prepetition

Agents, as applicable, of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority, or enforceability of the DIP ABL Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of DIP ABL Collateral and Prepetition ABL Collateral (including Cash Collateral), any DIP ABL Secured Obligations, any Adequate Protection Claims, or any adequate protection payment obligations pursuant to the Interim Order incurred by the DIP ABL Loan Parties to the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, and/or the Prepetition ABL Credit Parties, as the case may be, prior to the actual receipt of written notice by the DIP ABL Agents and/or the Prepetition ABL Agents, as the case may be, of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP ABL Loan Documents with respect to all such uses of the DIP ABL Collateral (including the Cash Collateral), all DIP ABL Secured Obligations, all Adequate Protection Claims, and all adequate protection payment obligations pursuant to this Interim Order.

55.     ***Final Hearing.***   The Final Hearing to consider entry of the Final Order and approval of the DIP ABL Facility on a final basis is scheduled for November 15, 2018 at 10:00 a.m. Eastern Time before the Honorable Robert D. Drain, United States Bankruptcy Judge, the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

56.     ***Notice of Final Hearing***:  Notice of the Final Hearing shall be provided in accordance with the terms of the Case Management Order.

57.     ***Objection Deadline***.  Objections, if any, to the relief sought in the Motion with respect to entry of the Final Order shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and served upon:  (a) proposed counsel to the Debtors; (b) the U.S. Trustee; (c) proposed counsel to the Creditors' Committee; (d) counsel to the DIP ABL Agents; (e) counsel to the Prepetition ABL Administrative Agent; and (f) counsel to the Prepetition Second Lien Agents, so that such objections are filed with the Bankruptcy Court and received by said parties on or before 4:00 p.m. Eastern Time on November 8, 2018.

58.     ***Retention of Jurisdiction***.  The Bankruptcy Court shall retain jurisdiction to enforce this Interim Order according to its terms to the fullest extent permitted by applicable law.

59.     ***Chubb Reservation of Rights.***  For the avoidance of doubt, (i) the DIP ABL Credit Parties shall not have a security interest or lien on any collateral provided by or on behalf of the Debtors to ACE American Insurance Company and ACE Fire Underwriters Insurance Company (together, with each of their affiliates and affiliates successors, "Chubb"), (ii) the Debtors may not grant liens and/or security interests in such property to any other party, and (iii) this Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral under insurance policies and related agreements;  provided that to the extent any such property reverts to the Debtors, such property shall be subject to the terms of this Interim Order.

Dated: October 16, 2018
        White Plains, New York

                                        /s/ Robert D. Drain
                                        Robert D. Drain
                                        United States Bankruptcy Judge