**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :    **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al*.,                         :
                                                                  :    **Case No. 18-23538 (RDD)**
                                                                  :
                                        Debtors.[1]               :    **(Jointly Administered)**
------------------------------------------------------------------x

<u>**INTERIM ORDER AUTHORIZING DEBTORS TO
(I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM,
BANK ACCOUNTS, AND BUSINESS FORMS, (II) IMPLEMENT
ORDINARY COURSE CHANGES TO CASH MANAGEMENT
SYSTEM, (III) CONTINUE INTERCOMPANY TRANSACTIONS,
AND (IV) PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR
POSTPETITION INTERCOMPANY CLAIMS AND GRANTING RELATED RELIEF**</u>

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), pursuant to sections 105(a), 363, 364, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing the Debtors to (a) continue their existing cash

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

management system, including, without limitation, the continued maintenance of their existing bank accounts and business forms, (b) implement changes to their cash management system in the ordinary course of business, including, without limitation, opening new or closing existing bank accounts, (c) continue to perform under and honor intercompany transactions with Debtor and non-Debtor affiliates in the ordinary course of business, in their business judgment and at their sole discretion, but subject to the terms and conditions set forth herein, (d) honor obligations with respect to service fees and chargebacks in connection with existing agreements with banks, credit card companies, and non-cash payment processors, and (e) provide administrative expense priority for certain postpetition intercompany claims, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the interim relief requested in the Motion having been given as provided in the Motion; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided with respect to the relief granted herein; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on October 15, 2018 (the "**Interim Hearing**"); and upon the Riecker Declaration filed contemporaneously with the Motion, the record of the Interim Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, and it appearing that the interim relief requested in the Motion is necessary to avoid immediate

and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, provides a net benefit to the Debtors and their estates after taking into account the Bankruptcy Code's priority scheme, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The Debtors are authorized and empowered pursuant to sections 105(a), 363, 364, 503, and 507 of the Bankruptcy Code to continue using their integrated cash management system described in the Motion (the "**Cash Management System**") and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany funding among Debtor and non-Debtor affiliates.

3. The Debtors are authorized, subject to the DIP Order and the DIP Loan Documents, to implement changes to the Cash Management System in the ordinary course of business, including the opening of any new Bank Accounts and the closing of any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; <u>provided</u> that (a) any such new account is with a bank that is (i) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees and (b) the Debtors provide notice to the DIP ABL Agent and the U.S. Trustee of the opening of such account.

4. The relief, rights, and responsibilities provided for in this Interim Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtors' names,

including any new bank accounts, whether or not such Bank Accounts are identified on **Exhibit B** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Interim Order.

5. The Debtors are authorized to (a) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Commencement Date, including, those accounts identified on **Exhibit B** to the Motion; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders, and invoices) (collectively, the "**Business Forms**"), as well as checks and all other documents related to the Bank Accounts existing immediately before the Commencement Date, without reference to the Debtors' status as debtors in possession; provided that in the event the Debtors generate new Business Forms and/or checks during the pendency of these chapter 11 cases, such Business Forms and checks shall include a legend referring to the Debtors as "Debtors-In-Possession," and, to the extent practicable, the Debtors shall laser print such legend on any Business Forms and checks electronically generated during these cases.

6. The Debtors are authorized and empowered, subject to the DIP Order and the DIP Loan Documents, to continue performing under and honoring Intercompany Transactions, including Intercompany Transactions with their non-Debtor affiliates, in the ordinary course of business; provided that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during the chapter 11 cases and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions; provided further that any transfers to or for the benefit of a non-Debtor affiliate by a Debtor, shall not exceed $5 million per Foreign Affiliate, per

4

month. From and after the Commencement Date, the transfer of cash to or for the benefit of any Debtor directly or indirectly from any Debtor or non-Debtor affiliate shall entitle the transferring affiliate to an allowed claim in the recipient Debtor's Chapter 11 Case. In accordance with sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, all Intercompany Claims arising after the Commencement Date shall be accorded administrative expense priority, junior in all respects to the administrative expense priority claims granted pursuant to the DIP Orders. The Debtors shall maintain records of all Intercompany Transactions, and provide such records, on a bi-weekly basis to the professionals retained by the DIP ABL Agent, with the first such records to be submitted on the second Wednesday following the entry of this Interim Order.

7. The Debtors are authorized and empowered to pay any amounts due with respect to the Warranty Payments.

8. The Debtors shall account for the movement of cash and any collection/disbursement activity between Debtors and affiliates through intercompany accounting.

9. Except as otherwise expressly provided in this Interim Order, all banks at which the Bank Accounts are maintained (collectively, the "**Banks**") are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, and ACH Payments issued by the Debtors and drawn on the Bank Accounts after the Commencement Date to the extent the Debtors have sufficient funds standing to their credit with such Bank; <u>provided</u> that any payments drawn,

issued or made prior to the Commencement Date shall not be honored absent direction of the Debtors and a separate order of the Court authorizing such prepetition payment.

10. The Debtors are authorized to pay and honor both prepetition and postpetition Bank Fees, Processing Fees, Service Charges, and Chargebacks, and the Banks, credit card companies, credit card processors, debit card processors, check processors, and gift card processors (collectively, the "**Payment Processing Companies**") are authorized to charge and collect, including, for the avoidance of doubt, by deducting such amounts from any reserve account maintained by the Banks and Payment Processing Companies, as applicable, in accordance with the terms of the governing agreement, whether such amounts accrued before or after the Commencement Date, and any amounts which are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

11. The Payment Processing Companies are authorized to offset or apply and deposit against any Processing Obligations, whether or not they have arisen before the Commencement Date.

12. Each of the Banks is authorized, but not directed, to debit the Debtors' Bank Accounts in the ordinary course of business, to the extent of available funds, without need for further order of this Court for (i) all checks, items, and other payment orders drawn on the Debtors' Bank Accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of the commencement of these chapter 11 cases; (ii) all checks, ACH entries, and other items deposited or credited to one of the Debtors' accounts with such Banks prior to the Commencement Date that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such costs and fees

6

prior to the Commencement Date; and (iii) all prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Service Charges for the maintenance of the Cash Management System.

13. As of the Commencement Date, the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the commencement of these Chapter 11 Cases should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein and shall not be deemed to be, nor shall be, liable to any party on account of (a) following the Debtors' representations, instructions, directions, or presentations as to any order of the Court (without any duty of further inquiry); (b) honoring of any prepetition checks, drafts, wires, or ACH payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire, or ACH payments; or (c) a mistake made despite implementation of reasonable handling procedures. Further the Banks may rely, without a duty of inquiry, upon the failure of the Debtors to issue a stop payment order with respect to any item, whether such item is issued prepetition or postpetition, as a direction by the Debtors that such item will be paid. To the extent that the Debtors have represented to any of the Banks that a check, draft, wire, or ACH Payment should be dishonored, the Banks are hereby authorized to comply with such representation, either through utilizing the Banks' stop-payment system, or through voiding the check, draft, wire, or ACH Payment using the relevant Banks' internal procedures.

14. The Debtors' credit and debit card providers are authorized and directed to transfer all credit and debit card receivables payable to the Debtors and to deduct any Service

Charges, Bank Fees, Processing Fees, and Chargebacks, whether arising before or after the Commencement Date, payable by the Debtors from such transfers.

15. The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Commencement Date.

16. Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services, subject to their compliance with applicable law.

17. Those certain existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash-management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or the Banks may, without further order of this Court, implement changes to the Debtors' Cash Management System in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, and subject to the DIP Order and the DIP Loan Documents, including the opening and closing of bank accounts.

18. As soon as practicable after the entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on those Banks that make disbursements pursuant to the Cash Management System.

19. Except as otherwise provided herein, nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due

prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

20. Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

21. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

22. Nothing contained in the Motion or this Interim Order, or any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

23. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

24. Under the circumstances of these chapter 11 cases, notice of the interim relief sought by the Motion was adequate under Bankruptcy Rule 6004(a).

25. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry, for cause.

26. This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; <u>provided</u> that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

27. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

28. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

[*Remainder of page intentionally left blank*]

29. The Final Hearing on the Motion shall be held on **November 15, 2018, at 10:00 a.m. (Prevailing Eastern Time)**, and any objections or responses to the Motion shall be filed and served in accordance with the Case Management Order so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on November 8, 2018**.

Dated: October 16, 2018
      White Plains, New York

                                        /s/ Robert D. Drain
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE