```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                           :
                                                                :    Chapter 11
SEARS HOLDINGS CORPORATION, et al.,                             :
                                                                :    Case No. 18-23538 (RDD)
                                                                :
             Debtors.¹                                          :    (Jointly Administered)
----------------------------------------------------------------x
```

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS; (II) APPROVING PROCEDURES TO ADDRESS VENDORS WHO REPUDIATE AND REFUSE TO HONOR THEIR CONTRACTUAL OBLIGATIONS TO THE DEBTORS; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), and 503(b)(9) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing, but not directing, the Debtors to pay up to $70 million on an interim basis (the "**Interim Critical Vendor Cap**" and $90 million on a final basis (the "**Final Critical Vendor Cap**, together with the Interim Critical Vendor Cap, the "**Critical Vendor Caps**"), in aggregate prepetition claims of certain vendors,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

suppliers, service providers, and other similar entities that the Debtors determine, in their reasonable business judgment and according to the procedures described in the Motion, are essential to their ongoing business operations and maximization of the value of the enterprise (collectively, the "**Critical Vendors**" and, their prepetition claims, the "**Critical Vendor Claims**"); (ii) approving (a) the Critical Vendor Payment Protocol, (b) the form of Critical Vendor Notice, substantially in the form attached to the Motion as **Exhibit B**, (c) the form of Vendor Agreement, substantially in the form attached to the Critical Vendor Notice as **Exhibit 1**, (d) the Repudiating Vendor Procedures, (e) the form of Notice of Repudiating Vendor, substantially in the form attached to the Motion as **Exhibit C**, and (f) the form of Order to Show Cause, substantially in the form attached to the Motion as **Exhibit D**; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the interim relief requested in the Motion having been given as provided in the Motion, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided with respect to the interim relief granted herein; and the Court having held a hearing to consider the interim relief requested in the Motion on an interim basis on October 15, 2018 (the "**Interim Hearing**"); and upon the Riecker Declaration, filed contemporaneously with the Motion, the record of the Interim Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, provides a net benefit to the Debtors and their estates after taking into account the Bankruptcy Court's priority scheme, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, to pay Critical Vendor Claims in accordance with the Critical Vendor Payment Protocol up to the Interim Critical Vendor Cap, upon such terms and in the manner provided in this Interim Order and the Motion.

3. The Critical Vendor Payment Protocol and form of Critical Vendor Notice are hereby approved.

4. The form of Vendor Agreement is approved in its entirety. Except as otherwise set forth herein, the Debtors shall condition payment of Critical Vendor Claims pursuant to this Interim Order upon the execution of a Vendor Agreement. The Debtors are authorized, but not directed, to enter into such Vendor Agreements when and if the Debtors determine, in the exercise of their sole reasonable business judgment, that it is appropriate to do so. A Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein; <u>provided</u> that the Debtors may agree to implement such modifications to the form of Vendor Agreement the Debtors deem necessary or advisable in the reasonable exercise

of their business judgment to obtain Customary Trade Terms (defined below) from the applicable Critical Vendor; <u>provided</u> further that the Debtors may pay a Critical Vendor Claim without the applicable Critical Vendor having executed a Vendor Agreement only if the Debtors determine, in their reasonable business judgment, that a Vendor Agreement is unnecessary to ensure the applicable Critical Vendor's continued performance on Customary Trade Terms (defined below).

5. Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall take all actions necessary to remove any mechanics' liens, possessory liens, or similar state law trade liens on the Debtors' assets such party may have based upon such Critical Vendor Claim at such party's sole expense.

6. Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of this Interim Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and employee up to the amount paid.

7. In the event (i) a Critical Vendor breaches the terms or conditions of a Vendor Agreement or (ii) regardless of whether a Vendor Agreement has been executed, a Critical Vendor accepts payment from the Debtors of a Critical Vendor Claim and does not continue supplying goods or services to the Debtors on trade terms at least as favorable to the Debtors as those terms governing the Debtors' practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon

4

reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs), with respect to that particular Critical Vendor, within the 360 days prior to the Commencement Date, or such other trade terms that are acceptable to the Debtors in their sole discretion (collectively, the "**Customary Trade Terms**"), the Debtors may, in their discretion, (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount as so to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8. All Vendor Agreements will terminate upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

9. In the event a Critical Vendor breaches the terms or conditions of its Vendor Agreement, the Debtors may, in their discretion, declare that such Vendor Agreement has terminated; <u>provided</u> that the Vendor Agreement may be reinstated if:

5

      i. after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Vendor Agreement for good cause shown that the Debtors' determination was materially incorrect;

      ii. the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Trade Agreement; or

      iii. the Debtors, in their sole discretion, reach a commercially acceptable agreement with the breaching party.

10. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor and the Debtors' rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims are fully preserved.

11. The Debtors shall maintain a "**Critical Vendor Matrix**" summarizing (i) the name of each vendor requesting Critical Vendor status, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms. For the first forty-five (45) days after entry of this Order, the Critical Vendor Matrix will be provided on a weekly basis, and, thereafter, on a monthly basis, to (a) the U.S. Trustee and (b) the professionals retained by any official committee of unsecured creditors appointed in these chapter 11 cases; provided that the professionals for any such committee shall keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone, including, but not limited to, any member of any statutory committee of creditors, without prior written consent of the Debtors.

6

12. The Repudiating Vendor Procedures are approved in their entirety. In addition, the forms of Notice of Repudiating Vendor and Order to Show Cause are each hereby approved.

13. If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors are authorized, but not directed, to pay such claim provisionally (and such payment shall not count against the Critical Vendor Caps).

14. Regardless of whether a payment has been made, if a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors may (i) file a Notice of Repudiating Vendor setting forth (a) the name of the Repudiating Vendor, (b) the identity of the agreement governing the Debtors' relationship with the Repudiating Vendor, (c) the Debtors' belief that the Repudiating Vendor is in violation of the Bankruptcy Code, and (d) the amount(s) and date(s) of any prepetition amounts paid; and (ii) seek entry of an Order to Show Cause requiring the Repudiating Vendor to show why it should not be found to have willfully violated sections 362 and 365 of the Bankruptcy Code and why it should not be required return any payments made to it by the Debtors, plus any accumulated interest.

15. Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing

16. Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**")

7

17. Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "DIP Orders"), (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities, and (iii) the Approved Budget (as defined in the DIP Orders).

18. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Interim Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

19. Nothing contained in the Motion or this Interim Order, or any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

20. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

21. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

22. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry, for cause.

23. This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that, the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

24. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

25. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

26. The Final Hearing on the Motion shall be held on **November 15, 2018, at 10:00 am (Prevailing Eastern Time)**, and any objections or responses to the Motion shall be filed and served in accordance with the Case Management Order so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on November 8, 2018**.

Dated: October 17, 2018  /s/ Robert D. Drain
    White Plains, New York  THE HONORABLE ROBERT D. DRAIN
                                                      UNITED STATES BANKRUPTCY JUDGE