Alan D. Halperin, Esq.  
Donna H. Lieberman, Esq.  
HALPERIN BATTAGLIA BENZIJA, LLP  
40 Wall Street, 37th floor  
New York, New York 10005  
Telephone: (212) 765-9100  
ahalperin@halperinlaw.net  
dlieberman@halperinlaw.net  

   and  

Kevin S. Neiman, Esq.  
LAW OFFICES OF KEVIN S. NEIMAN, PC  
999 18th Street, Suite 1230 S  
Denver, CO  80202  
Telephone: (303) 996-8637  
kevin@ksnpc.com  

*Co-counsel to the NW Properties Landlords*

Hearing Date: October 25, 2018  
Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | |
| | (Jointly Administered) |
| Debtors. | |

---------------------------------------------------------------x

**LIMITED OBJECTION OF THE NW PROPERTIES LANDLORDS TO THE
MOTION OF DEBTORS FOR APPROVAL OF
(I) PROCEDURES FOR STORE CLOSING SALES AND
(II) ASSUMPTION OF THE LIQUIDATION CONSULTING AGREEMENT**

     NW Cambridge Property Owner LLC, NW Centennial LLC, NW 51st Street LLC, NW Springs LLC, NW Northgate II LLC, NW Duluth LLC, and NW Gaithersburg LLC (together, the "NW Properties Landlords"), by and through their undersigned counsel, hereby file this

limited objection (the "Objection") to the *Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* [D.N. 23, 152] (the "Motion"). In support of this Objection, the NW Properties Landlords respectfully state as follows:

## BACKGROUND

1. On October 15, 2018, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The NW Properties Landlords are the lessors under seven leases with the Debtors, at least six of which are "shopping center" leases as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3. The leases (together, the "Leases") are for premises at the following locations:

| Landlord | Leased Premises |
| --- | --- |
| NW Cambridge Property Owner LLC | Cambridge, MA |
| NW Centennial LLC | Centennial, CO |
| NW 51st Street LLC | Pittsburgh, PA |
| NW Springs LLC | Colorado Springs, CO |
| NW Northgate II LLC | Durham, NC |
| NW Duluth LLC | Duluth, GA |
| NW Gaithersburg LLC | Gaithersburg, MD |

4. By the Motion, the Debtors seek the Court's approval of certain store closing procedures (the "Store Closing Procedures") that are set forth in Exhibit 2 to the Motion, and authority to assume an *Amended and Restated Agency and Consulting Services Agreement* (the

-2-

"Liquidation Consulting Agreement") that is Exhibit 3 to the Motion. Exhibit 1 to the Motion identifies stores at which the Debtors intend to conduct store closing sales, and notes that the Debtors may add additional stores to that list. The Centennial, Colorado leased premises (the "Premises") is currently included on Exhibit 1, and identified as item 69, store ID no. 1131 (on PDF page 52), and it is part of a "shopping center."[1]

5. For the reasons set forth herein, the NW Properties Landlords object to certain relief sought by the Debtors in the Motion.

## LIMITED OBJECTION

6. The NW Properties Landlords generally do not object to the Debtors' request for authority to conduct store closing sales or to assume the Liquidation Consulting Agreement. In fact, the Lease contemplates such a possibility, stating in paragraph 5(b):

> Notwithstanding any provision herein to the contrary but subject to any restrictions contained in the REA and compliance with applicable law, Sears shall have the right to conduct and advertise a "going out of business sale" ("**GOB Sale**") to be completed during the one hundred twenty (120) Business Day period prior to the Termination Date (as extended herein) and to cease store operations and to remove its personal property and prepare for the turnover of possession of the Premises to Landlord pursuant to the provisions in this Lease.

7. However, the NW Properties Landlords do object to certain specific provisions of the Store Closing Procedures and any relevant terms in the proposed Order (and any subsequent orders) and the Liquidation Consulting Agreement. To this end, the NW Properties Landlords note that the same authorities that permit store closing sales also provide that bankruptcy courts have "the discretion to condition the time, place and manner of store closing sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations." *See In re Ames Dept. Stores, Inc.*,

---

[1] The Centennial *Leaseback* (the "**Lease**") is Exhibit A hereto.

-3-

136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992).

8. While the NW Properties Landlords recognize that the Debtors wish to conduct store closing sales, they also respectfully submit that the Debtors' interests must be reasonably balanced with the legal and contractual rights of the landlords, and the particular concerns of shopping center landlords, whose other tenants may be adversely affected by the conduct of such sales. The NW Properties Landlords therefore request that the Court modify the Store Closing Procedures (and the proposed Order(s) and Liquidation Consulting Agreement as appropriate) to address at least the following concerns:

a) The Debtors and their agents must timely comply with all terms of the Leases, including the requirements regarding full and timely payment, other than those terms that are modified by the Bankruptcy Code or by any Order. *See* § 365(d)(3) of the Bankruptcy Code. There should also be no broad invalidation of any terms of the Leases or local laws restricting such sales.

b) The Lease in paragraph 3 contemplates the lessee being permitted to remove any "fixtures used in connection with Sears' operations, but in no event shall Sears remove any fixtures necessary for the operation of the mechanical systems existing in the Premises (including but not limited to heating, ventilation and cooling systems and plumbing systems) or any lighting fixtures installed in or about the Premises." The Store Closing Procedures, related Order(s), and Liquidation Consulting Agreement should be consistent with these requirements. The Store Closing Procedures, as proposed by the Debtors, has contrary language:

> The Debtors and the Liquidation Consultant shall have the right to sell or transfer the furniture, fixtures, and equipment (the "**FF&E**"), inventory, and any other assets in the Closing Stores (together, the "**Store Closing Assets**"), subject to the entry of the Proposed Order, and any such transactions shall be free and clear of all liens, claims, interests, and other encumbrances.

Store Closing Procedures, ¶ (d). *See also* Motion, ¶ 6 (Debtors seeking approval of procedures to sell fixtures); and Liquidation Consulting Agreement, ¶ 16 (setting forth how liquidator would be compensated for liquidation of fixtures).

c) If there is (i) any damage to the leased premises as a result of the conduct of the store closing sales or the removal of property (including but not limited to

fixtures) prior to the rejection date of the relevant lease and surrender of the leased premises, or (ii) cost to the landlord in connection with the removal of property that is abandoned by the Debtors, such costs should be allowed administrative expense claims, subject to the Court's determination of the reasonableness of the amounts, and there should be a process for the landlords to forthwith liquidate such claims and be paid on allowance of same, including setting aside a reserve to cover any such allowed expenses. It would be patently unfair for the Debtors to utilize leased premises to liquidate their inventory and leave the premises in such a condition that the landlords need spend additional money repairing damage caused by such sales and/or disposing of the Debtors' property with no reasonable means of reimbursement for such expenses.

d)  No signage, banners, or other advertisements should be permitted outside of the stores notwithstanding paragraph (h) of the Store Closing Procedures. Indeed, paragraph 5(a) of the Lease states in relevant part:

> Sears shall not make, or cause to be made, any alterations to (i) the building structure or building systems, or (ii) the exterior portion of the Store, or (iii) any other material alterations, or (iv) affix any fixtures to the Premises, without in each instance obtaining Landlord's prior written consent . . . .

If the Court permits any exterior banners, they should be limited to one exterior banner on stand-alone stores only where the storefront faces a public street and any such banner should be limited to the size of the Debtors' existing exterior sign and hung in an area expressly consented to by the NW Properties Landlords. Any such banner should be professionally produced (including "lettered" as the Store Closing Procedures contemplate in paragraph (h)) and liability for any damage caused by such banner must be assumed by the Debtors and any liquidator that is conducting the sales. No neon or "day-glo" colors can be used. Furthermore, no auction, fire sales, sidewalk sales, tent sales, outside sales, or any sale whatsoever of any property can be permitted outside of the stores.

e)  The Debtors should not place any signs and/or advertising or marketing of the store closing sales in any common area, parking lot, sidewalk, building façade, or other shopping center property owned by the NW Properties Landlords or on any adjacent property, including any sign-walkers, hot air or other balloons, inflatable devices or images, sandwich boards, A-frames, rooftop advertising, flashing lights, spot lights, strobe lights, vehicle advertising, or similar advertising.

f)  Paragraph (c) of the Store Closing Procedures contemplates permission to "distribute handbills, leaflets, or other written materials to customers outside of any Closing Stores' premises, unless permitted by the applicable lease or if distribution is customary in the 'shopping center' in which such Store is located; .

. . ." The NW Properties Landlords are unclear what "customary" means and, rather than litigating the meaning of that word, they suggest that it is better to limit this exclusion to just what the applicable leases contemplate.

g) The Liquidation Consulting Agreement provides that the closing stores will be left "broom clean" (¶ 5), but the Store Closing Procedures are inconsistent with that provision and permit the Debtors to abandon assets (¶ (e)). If assets are to be abandoned, landlords should be provided with at least five business days' prior written notice of abandonment. In addition, since the NW Properties Landlords cannot (or at least should not) enter the leased premises unless and until Leases are rejected (except under the limited circumstances permitted by the Leases), any abandonment of property and rejection should occur concurrently (an issue that has already arisen with regard to the Duluth, GA premises whereby the Debtors endeavor to surrender that property without a rejection order).

h) The Store Closing Procedures provide no deadlines or restrictions relating to how long the store closing sales can take, or how long the stores can be left dark. Since these items adversely affect the shopping centers, reasonable deadlines should be imposed for both.

i) The Store Closing Procedures provide in paragraph (u) that landlords must provide the Debtors with at least seven days' notice of a default under the procedures. The NW Properties Landlords request that language be added that permits landlords to act on shorter notice or to seek an emergency hearing before this Court if there are safety concerns, imminent damage to the leased premises, or other bases for expedited relief.

j) The Store Closing Procedures should require that the Debtors provide landlords with contact information for a representative of the Debtors that landlords can share with store customers if there are issues concerning returns, exchanges, defective merchandise, and the like that may arise after the conclusion of a store closing sale at a particular location.

k) Any indemnification provisions in the Leases should be in full force and effect. While the proposed Order at paragraph 17 contemplates indemnification in relation to defense from local authorities, paragraph 21 of the Lease has much broader indemnification provisions, and nothing should absolve the Debtors from those Lease terms (or similar terms in the other Leases).

l) The Debtors shall abide by any applicable guidelines concerning, among other things, maintenance of the premises, security, housekeeping, and trash removal set forth in the Leases.

m) The NW Properties Landlords object to paragraph (t) of the Store Closing Procedures, which states that "[n]o landlord, licensor, property owner, or property

manager shall prohibit, restrict, or otherwise interfere with any Store Closing Sale at any Closing Store." This provision is too broad and could prohibit, for example, literally any conduct that the Debtors deem adverse such as taking issue with how any sale is being conducted. At a minimum, there should be carve-outs for any rights that the lessors have under any applicable leases that haven't otherwise been modified by the Court or the Bankruptcy Code, any Orders entered by the Court, the Store Closing Procedures, and applicable law such as § 365 of the Bankruptcy Code.

9. The foregoing restrictions and requirements are reasonable in nature and consistent with store closing sale procedures entered in other retail bankruptcy cases.

## RESERVATION OF RIGHTS

10. The NW Properties Landlords expressly reserve any and all rights to supplement or amend this Objection and make any other objections to further relief sought by the Debtors, including in relation to any proposed rejection, assumption, assumption and assignment, or sale of any of the Leases.

## JOINDER

11. The NW Properties Landlords join in the objections to the Debtors' requested relief filed by other landlords and parties-in-interest to the extent they are not inconsistent with this Objection.

## CONCLUSION

WHEREFORE, the NW Properties Landlords respectfully request that this Court enter an order: (a) sustaining this Objection; (b) modifying the relief request by the Debtors to address the issues raised by the NW Properties Landlords; and (c) granting the NW Properties Landlords such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: October 22, 2018            Respectfully submitted,

                                             **HALPERIN BATTAGLIA BENZIJA, LLP**

/s/ *Donna H. Lieberman*
Alan D. Halperin.Esq.
Donna H. Lieberman, Esq.
40 Wall Street, 37th Floor
New York, NY 10005
Telephone: (212) 765-9100
ahalperin@halperinlaw.net
dlieberman@halperinlaw.net

                 - and-

Kevin S. Neiman, Esq.
**LAW OFFICES OF KEVIN S. NEIMAN, PC**
999 18th Street, Suite 1230 S
Denver, CO 80202
Telephone: (303) 996-8637
kevin@ksnpc.com

*Co-counsel to the NW Properties Landlords*