Dustin P. Branch (*pro hac vice pending*)
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354; Fax: (424) 204-4350
E-mail: branchd@ballardspahr.com

- and –

David L. Pollack (*pro hac vice pending*)
**Ballard Spahr LLP**
1735 Market Street – 51st Floor
Philadelphia, PA 19103
Direct:  (215) 864-8325
Fax: (215) 864-9473
Email: pollack@ballardpahr.com

- and -

Paul E. Harner
Alyssa E. Kutner
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: (646) 346-8075; Fax:  (212) 223-1942
E-mail: harnerp@ballardspahr.com
            kutnera@ballardspahr.com

Attorneys for The Macerich Company, Centennial Real Estate Co., C.E. Johns Company, Inc., Brixmor Operating Partnership, L.P., and S-Tract LLC

Obj. Deadline: October 22, 2018 at 4:00p.m. ET
Hearing Date:  October 25, 2018 at 10:00 a.m. ET

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

-------------------------------------------------------------x

**OBJECTION OF THE MACERICH COMPANY, CENTENNIAL REAL ESTATE CO., C.E. JOHNS COMPANY, INC., BRIXMOR OPERATING PARTNERSHIP, L.P. AND S-TRACT LLC TO MOTION OF DEBTORS FOR APPROVAL OF (I) PROCEDURES FOR STORE CLOSING SALES AND (II) ASSUMPTION OF LIQUIDATION <u>CONSULTING AGREEMENT</u>**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

The Macerich Company, Centennial Real Estate Co., C.E. Johns Company, Inc., Brixmor Operating Partnership, L.P., and S-Tract LLC (hereinafter, "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Objection")[1] to the Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement [Docket No. 23] (the "Store Closing Motion"), and respectfully represent as follows:

## I. BACKGROUND FACTS

1. Sears Holdings Corporation, and its affiliated co-debtors (collectively, the "Debtors"),[2] filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Store Closing Motion, and accompanying documents.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SRC Sparrow 1 LLC (None); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None); and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[3] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") unless otherwise specified in this Motion.

2. The Debtors lease retail space (the "Premises") from Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping centers (the "Centers") set forth on the attached Schedule A.

3. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. On October 15, 2018, the Debtors filed the Store Closing Motion, which seeks authority for conducting store closing sales at up to 142 stores, and to assume their consulting agreement with Abacus Advisors Group, L.L.P. (the "Consultant"), which Consultant will oversee such store closings sales. Landlords expect that they will negotiate their customary form of store closing sale side letter agreement to control the sales, and the proposed form of order contemplates such agreements between Landlords and the Consultant. However, since Landlords have not had an opportunity to negotiate such agreement at this time, Landlords file this objection to protect each of the Landlords' rights in the event that an agreement is not finalized prior to the hearing.

## II.    ARGUMENT

### A.    *Any final sale guidelines must balance the rights of the Debtors and Landlords.*

5. Landlords do not seek to deny the Debtors' ability to conduct reasonable sales of its inventory. The Landlords do object to the Store Closing Motion's request for a blanket invalidation of lease terms and local laws that restrict such sales. This blanket denial of reasonable restrictions on store-closing activities, as specifically negotiated in the Leases and as permitted under state law, is unnecessary, inappropriate, and inconsistent with Sections 363 and 365. Pending finalizing any side agreement with the Consultant, the Store Closing Motion and Consultant Agreement contain provisions that are objectionable to Landlords, requiring Landlords to object to the Store Closing Motion, Consultant Agreement, and proposed sale guidelines (the "Sale Guidelines"), and request that this Court incorporate the protections and modifications below.

6.  The Debtors cite various cases to support their request to conduct store closing sales without regard to restrictions that exist in the Leases.  None of these cases support the position that <u>any</u> lease restriction of store closing sales is unenforceable.  For instance, in <u>In re Ames Department Stores, Inc.</u>, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992), the Bankruptcy Court held that an outright attempt to preclude store closing sales "would contravene overriding federal policy requiring a [debtor in possession] to maximize estate assets by imposing additional constraints never envisioned by Congress."  Nonetheless, the Bankruptcy Court also recognized the competing interests at play between a shopping center and a retail debtor, and held:

> "That is not to say the Code abrogates all lease provisions and statutes conditioning GOB sales.  Section 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of GOB sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the [Debtor] to fulfill its fiduciary obligations."

<u>Ames</u>, 136 B.R. at 359.  The <u>Ames</u> case does not hold that all lease provisions restricting store closing sales are unenforceable, nor does it authorize the wholesale abrogation of lease restrictions and statutes conditioning such sales.  Rather, it holds that a court has discretion to fashion an order to adequately protect the interests of all parties under Section 363(e).

7.  Many bankruptcy courts do not support the wholesale invalidation of lease provisions restricting store closing sales.  <u>See</u>, <u>e.g</u>, <u>In re Lisbon Shops, Inc.</u>, 24 B.R. 693, 695 (Bankr. E.D. Pa. 1982) (finding that the purpose of restrictive clauses in lease may be preserved by Bankruptcy Court supervision of GOB sales); <u>In re Tobago Bay Trading Co.</u>, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990) (rendering unenforceable provisions <u>prohibiting</u> GOB sales).  Moreover, with respect to the orders in the retail cases cited by the Debtors, such as <u>Aeropostale</u> and <u>Blockbuster</u>, in these cases, the Court authorized the store closing sales subject to negotiated store closing guidelines, as well as separate side letter agreements between the landlords, including Landlords, and the liquidators, which controlled over the orders and sale guidelines, with respect to issues of signage and advertising at Landlords' shopping centers.

8.     Rather than simply nullify all lease provisions restricting store closing sales, courts fashion guidelines and orders to adequately protect the interests of all parties under Section 363(e).  Language that purports to render unenforceable any "restrictive provision" of a lease or state laws allowing restrictions on liquidations is inappropriate.  Such language goes beyond any appropriate relief provided by the Bankruptcy Code, or applicable case law, and the Court should strike such language from any final order.

9.     This is consistent with Section 365(d)(3), which provides special protections to commercial landlords (and especially shopping center landlords) in light of the unique interests of a shopping center landlord and its other tenants.  Specifically, Section 365(d)(3) provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in Section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such time as the lease is assumed or rejected, . . .

11 U.S.C. § 365(d)(3).  There is a clear policy to preserve the rights of Landlords under their Leases, and Debtors do not need to render legitimate provisions of the Leases unenforceable to conduct closing sales.  Until such time as the Landlords can negotiate appropriate agreements with Consultant for the conduct of the closing sales, Landlords object to the Store Closing Motion, Sale Guidelines and Consultant Agreement.

### B.     *The Court should modify the proposed Sale Guidelines.*

10.    A store closing sale or liquidation detrimentally impacts the Centers, as well as the surrounding individual tenants.  Shopping center tenants bargain for a certain environment as part of their decision to lease space in the Centers, and all tenants agree to abide by similar rules regarding sales and signage to protect this environment.  To protect Landlords and other shopping center tenants, any order approving store closing sales should require the Debtors to comply with <u>all terms</u> of the Leases, except as modified by any Court-approved sale guidelines and any agreements between Landlords and the liquidator.  In addition to the protections set forth in the proposed Sale Guidelines, and except to the extent that parties enter into a separate

agreement for the store closing sales, Landlords seek the following additional changes to protect them and other neighboring tenants from the detrimental effects of the store closing sales.

*(i)    Scope and duration of sales*

11.    The proposed Sale Guidelines provide that stores will remain open "no longer than normal operating hours" during the store closing sales. See Sale Guidelines at ¶ (a). The Leases require specific hours of operations, and the Debtors must adhere to the mandated operating hours for each Center.

12.    It is critical for Landlords to maintain the proper use and product balance required under the Leases. Introduction of non-debtor inventory potentially violates the use clauses and exclusivity provisions in the Leases, as well as other leases in the Center. Even if the Debtors and Consultant represent that the goods will be of "like kind and quality," augmentation potentially violates the Leases and state consumer protections laws. Landlords should not bear the risk of such violations. At a minimum, any augmentation must be of "like kind and quality" that does not violate the use provisions of the Leases, or any exclusives of other shopping center tenants, and the Debtors must indemnify Landlords against liability for violation of consumer protection laws.

*(ii)    Advertising and signage*

13.    The Sale Guidelines and Consultant Agreement do not adequately limit the extent of the proposed signage or advertising to be used in connection with the store closing sales at the Centers. See Sale Guidelines at ¶ (h). The Debtors cannot ignore the legitimate signage rules that exist in the Leases and for the Centers, as well as legitimate liability and safety concerns, to the detriment of Landlords, other tenants, and the shopping center environment. The Leases were negotiated at arm's length, and Debtors should not receive carte blanche to breach these agreements, while enjoying all of the benefits provided by the Leases. Any store closing sale should limit signage as follows:

    a.    The Debtors shall be allowed to place one window sign per window that is 36" x 60", and in no event to exceed 50% of the window total area, and which sign is recessed at least 12" inches from the glass. Signs must not

      be stapled, taped or otherwise affixed together to exceed the 36" x 60" limitation.

  b.  The Debtors may place five (5) additional signs that are no more than 40" x 28" at appropriate locations throughout the store, provided that theses interior signs shall not be visible from the doors or windows of the store. No other signs should be taped, push-pinned, or otherwise affixed to the walls of any store. No interior banners shall be used.

  c.  All signs shall be professionally produced and lettered. No neon or "day-glo" colors shall be used in the signage. Unless a center manager agrees in writing to a different signage package, the Debtors should agree that they will only use three-color signage produced on white background.

  d.  The Debtors and the Consultant should have no right to place banners of any kind at the applicable Premises or Center. Banners detract from the appearance of the Premises and the Center, and the Court should not permit such banners at the Centers, regardless of whether the Centers are enclosed or non-enclosed. This differentiation is inappropriate, and the case law does not support treating a shopping center differently merely because it is not completely covered by a roof. Joshua Slocum, 922 F.2d at 1087-88; In re Sun TV and Appliances, Inc., 234 B.R. 356, 370 (Bankr. D. Del. 1999) (a shopping center for purposes of Section 365(b)(3) may go beyond the traditional "shopping center" and that all shopping centers do not necessarily take the form of shopping mall), citing Joshua Slocum, 922 F.2d at 1087. A non-enclosed shopping center relies on its use and signage provisions to control the appearance of the shopping center just as an enclosed shopping center does, and should not be subject to any lesser protections in any final store closing procedures. The exterior of the Premises is part of the common area and not property of the Debtors, and any attempt to utilize such space is an improper taking by the Debtors and should not be permitted. If the Court permits any exterior banner, it should be limited to a single exterior banner on stand-alone stores, where the store front faces a public street, and which banner is limited to the size the Debtors' existing sign for that store. In addition, any damage caused by hanging such banner must be borne by the Debtors and/or Consultant.

14.  To the extent used, "toppers" should not exceed 8 ½ inches by 11 inches, and should be limited to one for each rack, counter or shelf.

15.  Any final Sale Guidelines should also limit the content of signage used to advertise the store closing sales. Landlords do not object to the use of the term "Store Closing Sale" in advertising the sales. Landlords do object to the use of such terms as "Going Out of Business" and "Total Liquidation Sale" as such advertisement is confusing to shopping center customers. Additionally, signage should not contain language such as "court ordered sale," "bankruptcy sale," "Chapter 11 sale," "everything must go," or "lost our lease."

16. Any final Sale Guidelines must also prohibit the Debtors from using tethered, hot-air or other balloons, inflatable images or devices, sandwich boards, A-frames, sign walkers, exterior banners or rooftop advertising of any kind in or around the applicable Premises or Center. Similarly, no flashing lights, strobe lights, large spotlights, vehicle advertising, bullhorns or any type of amplified sound should be used in any advertising, especially outside the lease line of the Premises. In addition, there should be no distribution of handbills, leaflets, or other written materials outside the Premises, or other advertising on Landlords' property. The Debtors do not lease space outside of the lease line of the Premises. The Debtors have no interest in any common area space, and they have no right to advertise in the common area of the Center. Such signage and advertising is not customary in the Center, risks liability to Landlords, is prohibited by the Leases and the Centers requirements, and in many cases, by state and local laws.

17. Finally, there shall be no fire sales, auction of inventory and outside sales, sidewalk sales, tent sales, or any sale of any merchandise outside the stores. No such auctions or sales are permitted under the Leases, or customary in the Premises or the Centers.

18. The Sale Guidelines should strike a balance between the interests of the Debtors, Landlords, and non-debtor tenants. Landlords are entitled to full performance under the Leases, and Debtors must tailor their sales to fit within the terms of the Leases as much as possible. The Court should not permit Debtors to compromise the interests of non-debtor tenants who must continue to comply with all signage and other restrictions in their leases. Landlords have a primary interest in maintaining an aesthetic appearance in the shopping centers for the benefit of all tenants, especially during the holiday season. Signage limitations are critical to maintaining the desired appearance and environment and reasonably restrict any store closing sale.

      (iii)   *Reports of sales and compliance with Lease terms*

19. The stores must provide sales reports to Landlords as required by the Leases. Rent and charges must be paid in advance for each month as required by the Leases, and any order should require that the Debtors meet all monetary obligations as they fall due under the Leases, and otherwise timely perform all obligations under the Leases.

  *(iv)*  *Written notice of conclusion of store closing sale*

20. The Debtors should provide the Landlords <u>and their counsel</u> seven (7) days advance written notice of the conclusion of the store closing sale for each store.

  *(v)*  *Center gift cards*

21. Landlords offer center gift cards that are typically honored in all the stores in a Center, or even in all centers owned by the respective Landlord. The Consultant should place conspicuous signs to this effect in the cash wrap area of a closing store.

  *(vi)*  *Indemnity for violations caused by store closing sale*

22. The Debtors seek authority to take actions regardless of local laws or ordinances. To the extent that the actions of the Debtors, or their respective employees or agents, in conducting the store closing sales cause Landlords to be cited or fined by any local or state authority or agency, the Debtors or Consultant must indemnify and hold the applicable Landlord harmless from any such damages as an administrative expense of the bankruptcy estate.[4]

  *(vii)*  *FF&E*

23. The Debtors also seek to sell furnishings, fixtures and equipment ("<u>FF&E</u>"). <u>See</u> Sale Guidelines at ¶ (d). Such sales cannot include FF&E that is property of the Landlords or becomes property of the Landlords under the Leases. The sales cannot include the auction of FF&E in any store. If FF&E is sold, it should not be removed from the stores until the store closing sale has concluded, and then only after shopping center hours, through a non-public access area, and after the store-front is covered or "dressed."

  *(viii)*  *Condition of stores*

---

[4] Any final order should be modified to provide that the Landlords will be indemnified to the extent any liability is imposed on any of the Landlords resulting from the conduct of the Debtors or Consultant relating to the store closing sales. Landlords should receive notice of any such disputes that affect their Centers or Premises, so Landlords can confirm that they are not held liable for any conduct of the Debtors or Consultant related to the store closing sales.

24. Debtors and Consultant cannot make any alterations to the stores, including the storefront or walls of any of the stores, except for placing signage in compliance with the final Sale Guidelines and any separate agreement. Debtors must keep the Premises and surrounding area clear and orderly consistent with present practices. Landlords shall have access to their stores to conduct a walk-through upon the completion of any store closing sale and to dress store windows, if necessary, to minimize the appearance of a dark store. Any such dressing shall not be deemed to be an acceptance by the respective Landlord of surrender of the Premises, and a Lease shall only be deemed rejected in accordance with this Court's order.

25. The above modifications are necessary and appropriate to protect Landlords' interests and those of the other tenants at the Centers that are impacted by the store closing sales. Except as modified by the final Sale Guidelines, or any separate agreement between the Debtor, the Consultant, and a Landlord, the Debtors must comply with all other provisions of the Leases.

### III. JOINDER IN OTHER LANDLORD OBJECTIONS

26. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

### V. CONCLUSION

Landlords request that the Court incorporate the modifications raised by this Objection, and grant such further relief as the Court deems proper.

Dated: October 22, 2018  
New York, New York

Respectfully submitted,

*/s/ Paul E. Harner*  
Paul E. Harner, Esquire  
Alyssa E. Kutner, Esquire  
**Ballard Spahr LLP**  
919 Third Avenue  
New York, NY 10022  
Direct: (646) 346-8075  
Fax: (212) 223-1942  
Email: harnerp@ballardspahr.com  
kutnera@ballardspahr.com

and

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

and

David L. Pollack (PA Bar # 15694)
BALLARD SPAHR LLP
1735 Market Street – 51st Floor
Philadelphia, PA 19103
Direct:  (215) 864-8325
Fax: (215) 864-9473
Email:  pollack@ballardpahr.com

*Attorneys for The Macerich Company, Centennial Real Estate Co., C.E. Johns Company, Inc., Brixmor Operating Partnership, L.P., S-Tract LLC*

## SCHEDULE A

| | | |
|---|---|---|
| **The Macerich Company** | | |
| Store No. 1169 | Chandler Fashion Center | Chandler, AZ |
| Store No. 1464 | Deptford Mall | Deptford, NJ |
| Store No. 1518 | Los Cerritos Center | Cerritos, CA |
| Store No. 1247 | South Plains Mall | Lubbock, TX |
| Store No. 1618 | Vintage Faire Mall | Fairfield, CA |
| Store No. 1079 | Washington Square | Tigard, OR |
| **Centennial Real Estate** | | |
| Store No. 1134 | Connecticut Post | Milford, CT |
| **C.E. Johns Company, Inc.** | | |
| Store No. 2119 | Lancaster Mall | Salem, OR |
| **Brixmor Operating Partnership, L.P.** | | |
| Store No. 3393 | Collegetown Shopping Center | Glassboro, NJ |
| Store No. 3713 | Covington Gallery | Covington, GA |
| Store No. 3807 | Fox Run Shopping Center | Prince Frederick, MD |
| **S-Tract LLC** | | |
| Store No. 1388 | South Coast Plaza | Irvine, CA |