Hearing Date and Time: October 25, 2018 at 10:00 am (Eastern)
Objection Date and Time: October 22, 2018 at 4:00 pm (Eastern)[1]

**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022-4784
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Joseph T. Moldovan, Esq.
Robert K. Dakis, Esq.

*Counsel to Allure Gems, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                    :
                                          :    Chapter 11
SEARS HOLDINGS CORPORATION,               :
*et al.*,                                 :    Case No. 18-23538 (RDD)
                                          :
                        Debtors.          :    (Jointly Administered)
---------------------------------------------------------x

**LIMITED OBJECTION OF ALLURE GEMS, LLC
TO DEBTORS' MOTION FOR APPROVAL OF
(I) STORE CLOSING SALES AND (II)
<u>ASSUMPTION OF LIQUIDATION CONSULTING AGREEMENT</u>**

Allure Gems, LLC ("**Allure**") hereby files its limited objection (the "**Objection**") to the *Motion of Debtors For Approval of (I) Procedures for Store Closing Sales and (ii) Assumption of Liquidation Consulting Agreement dated October 15, 2018 (Dkt. No. 23)* (the "**Motion**") filed by the above-captioned debtors (the "**Debtors**"). In support of this Objection, Allure respectfully represents as follows:

---

[1] Allure's time to respond to the Debtors' Motion was extended by the Debtors until 10/23/18 at 4 pm.

#8227487 v1 \099998 \0038

1

## INTRODUCTION

1.  In the Motion, the Debtors seek authority to, among other things, liquidate inventory remaining at the Closing Stores,[2] and such other inventory as the Debtors choose, as part of the Store Closing Sales, asserting that doing so will maximize value to all stakeholders.

2.  The Motion fails to address and make provision for certain of the goods the Debtors intend to sell that do not belong to the Debtors and are subject to a first priority lien that the Debtors have not offered to adequately protect.

3.  Certain of the goods the Debtors intend to sell belongs to consignor vendors like Allure who are parties to consignment agreements that specifically state that the consigned goods are not property of the Debtors' estates. As of the Petition Date, the Debtors were holding approximately $1 million of Allure's consigned goods. It is axiomatic that the Debtors may not sell assets that are not property of the estates. For this reason, in *Whitehall Jewelers*, where the Debtors sought permission to sell consigned jewelry in connection with a Section 363 sale of all of its assets, the Court denied the Debtors' motion and required the Debtors to commence separate adversary proceedings against each consignor to "determine the validity, priority, or extent of [an] interest in property." *In re Whitehall Jewelers Holdings, Inc*. 2008 WL 2951974, 2008 Bankr. LEXIS 2120 (Bankr. Del. July 28, 2008) (a copy of this decision is annexed as Exhibit "A.").[3] Moreover, Allure has, in accordance with the consignment agreements and the provisions of the Uniform Commercial Code, filed a UCC-1 and taken all necessary steps related to notification of secured lenders necessary to perfect their first priority interest in its collateral.

---

[2] Capitalized terms not defined herein are as defined in the Motion.
[3] As a result, the Debtors in *Whitehall* commenced 124 separate adversary proceedings and ultimately entered into a settlement with the consignors.

#8227487 v1 \099998 \0038

2

4.     The Motion specifically fails to provide for any protections whatsoever for such consignor vendors in connection with the Store Closing Sales. While Allure does not object to the Store Closing Sales in principle, it submits that any order granting the Motion should (i) authorize the Debtors to return all consigned merchandise to the consignor if requested by the consignor, (ii) provide that the proceeds of the sale of any merchandise subject to the *Scan-Based Trading and Consignment Agreement* dated September 1, 2016 (the "**Consignment Agreement**," a copy of which is annexed as Exhibit "B") by and between Allure and Kmart and Sears be paid to Allure in accordance with the terms of the Consignment Agreement, or (iii) be held in trust for Allure, as a Trust Fund Counterparty in accordance with this Court's *Order Authorizing the Debtors to (I) Maintain Certain Trust Fund Programs, (II) Release Certain Funds Held in Trust, and (III) Continue to Perform and Honor Related Obligations* ("**Trust Order**"), entered on October 18, 2018 [docket no. 167] – this was how the Debtors addressed a similar objection [docket No. 51] made by another consignor vendor, American Greeting Corporation ("**AGC**") to the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* ("**DIP Motion**"), AGC was given protected status in the Trust Order.

5.     This relief is particularly necessitated by the Debtors' pending requests to grant liens on its assets, as more fully set forth in the DIP Order. Allure will shortly be filing a limited objection to the relief the Debtors are seeking in the DIP Motion and proposed related order as well.

#8227487 v1 \099998 \0038

3

## BACKGROUND

6.  Allure and Sears are parties to certain agreements governing the distribution and retail sales of certain jewelry, gemstones, and related products (collectively, the "**Merchandise**") on a scan-based trading ("**SBT**") method of sales.

7.  Under the SBT protocol, Allure ships the Merchandise to Sears. Sears receives and accepts Merchandise on a consignment basis, under which title to all Merchandise is expressly held by Allure until the register scan and sale of the Merchandise to retail customers. This is a fairly common method of doing business and similar agreements were utilized and the subject of analysis and court orders in other big box store bankruptcies such as Sports Authority and Radio Shack. The SBT specifically provides that title and ownership of the Merchandise remains with Allure.

8.  In order to perfect its interest in the Merchandise, Allure filed UCC-1 financing statements in Illinois against Sears Holdings Management Corporation dated October 21, 2016 with Filing Number 21810061, and provided notice to the holders of existing security interests. Consequently, Allure both holds title to the Merchandise and pursuant to the UCC has a purchase money security interest in the Merchandise, which interest is senior to any liens or claims held by any other party.

9.  Nonetheless, according to the Motion, the Debtor intends to use the proceeds from the sale of the Merchandise for liquidity and to pay down the DIP financing. Motion, ¶ 36. The Motion fails, however, to even mention, let alone address, the rights of consignment vendors like Allure or provide Allure with adequate protection of its security interest. It is black letter law that a secured creditor is entitled to adequate protection—as a matter of right, not merely a

#8227487 v1 \099998 \0038

matter of discretion—when the estate proposes to use the creditor's collateral and when the creditor is stayed from enforcing its interests.

10. Since the Consignment Agreement provides that Sears is obligated to pay Allure within fifteen (15) days of the sale of Merchandise to the retail customer, the proposed sale of the Merchandise in the Store Closing Sales has the effect of forcing Allure to sell goods on credit to the Debtor, post-petition, without its consent and without any adequate protection.

11. In *In re Sports Authority Holdings, Inc. et al.*, Case No. 16-10527 (MFW) (Bankr. D. Delaware) ("**Sports Authority**"), after months of time consuming, disruptive, and contentious litigation, Judge Walwrath was faced with a similar issue in connection with the Debtors' motion that expressly sought permission to sell consigned goods in a free and clear manner. The Debtors also faced objections by other consignors, such as have been filed in these cases [docket nos. 51 and 212] to the DIP Financing Motion. In Sports Authority, as in this case, the Debtors had entered into scan-based trading and consignment agreements similar to the SBTs in this case. After numerous objections to the relief sought by the Debtors were filed, heard, and argued at hearings, emergency hearings, and telephonic hearings, the Court denied the Debtors' request for relief and further ruled that to the extent any first-day or prior order of the court – including the interim DIP financing order, conflicted with its order concerning the sales and treatment of prepetition consigned goods ("**Consignment Order**"), the Consignment Order governed [Sports Authority docket no. 1704, a copy of the Consignment Order is attached as Exhibit "C"].

12. Specifically, and as relevant to Allure and similarly situated consignors, the Court ruled to the extent that a consignment vendor delivered goods to the Debtors pre or postpetition on a consignment basis, the Debtors could sell the consigned goods pursuant to the consignment agreements but were directed to remit the portion of the proceeds of such goods allocable to the consignment vendors to the consignment vendors. Various rights of the parties were reserved, but payment by the Debtors to the consignors was required.[4] Similar results have been reached in other cases involving consignment vendors including Whitehall Jewelers and Radio Shack.

13. Allure's preference is for the Debtors to return the Merchandise. If the Debtors are unwilling to do so, then the Debtors must pay for the Merchandise in accordance with the terms of the Consignment Agreement. Alternatively, Allure should be treated as a Trust Fund Counterparty as set forth in the Trust Order, or be provided with other appropriate and adequate protection of its rights in and to the Merchandise and all proceeds acceptable to Allure, Absent such resolution, Allure objects to and does not consent to the liquidation sale of its Merchandise at the Store Closing Sales or to the sale by Sears of the Merchandise in any manner.

---

[4] The Consignment Order did not end the fighting among the debtors, the lenders, and certain consignors who had not satisfied the conditions required under the UCC for perfection of their security interest. Resolution and settlement among those parties was contained in a subsequent order.

#8227487 v1 \099998 \0038

## CONCLUSION

14.  Based on the foregoing, the Motion and any attempt by Sears to sell the Merchandise in any manner should be denied unless the Debtors agree to return the Merchandise to Allure or, if the Debtors are unwilling to do so, to (i) pay for the Merchandise in accordance with the terms of the Consignment Agreement, (ii) treat Allure as a Trust Fund Counterparty as set forth in the Trust Order, or (iii) provide Allure with other appropriate and adequate protection of its rights in and to the Merchandise and all proceeds acceptable to Allure, and for such other relief as is just and proper.

Dated:    October 23, 2018               MORRISON COHEN LLP

                                                                           /s/ Joseph T. Moldovan
                                              Joseph T. Moldovan, Esq.
                                              Robert K. Dakis, Esq.
                                              MORRISON COHEN LLP
                                              909 Third Avenue
                                              New York, NY 10022
                                              Telephone: (212) 735-8600
                                              Facsimile: (212) 735-8708
                                              email: bankruptcy@morrisoncohen.com

#8227487 v1 \099998 \0038