Hearing Date and Time: October 25, 2010 at 10 a.m. ET

WILK AUSLANDER LLP
1515 Broadway, 43rd Floor
New York, New York 10036
Phone:      (212) 981-2300
Facsimile:  (212) 752-6380
M. William Scherer, Esq.

Dkt. Ref. 23

*Attorneys for Lake Plaza Shopping Center LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                          Chapter 11

       SEARS HOLDINGS CORPORATION, et al.,[1]      Case No. 18-23538 (RDD)

                                        Joint Administration Pending
                          Debtors.
------------------------------------------------------------x

### LAKE PLAZA SHOPPING CENTER LLC'S LIMITED OBJECTION TO MOTION OF DEBTORS FOR APPROVAL OF (I) PROCEDURES FOR STORE CLOSING SALES AND (II) ASSUMPTION OF LIQUIDATION CONSULTING AGREEMENT

Lake Plaza Shopping Center LLC ("Lake Plaza"), by and through its attorneys, Wilk Auslander LLP, respectfully submits this limited objection (the "Limited Objection") to the above referenced debtors' (the "Debtors") *Motion For Approval of (I) Procedures for Store Closing Sales*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puelio Rico, Inc. (3626); SRC Sparrow 1 LLC (None); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); Kmati.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None); and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

01059600.1

*and (II) Assumption of Liquidation Consulting Agreement* (the "Motion") (Dkt. No. 23).

## PRELIMINARY STATEMENT

1. Lake Plaza holds ground leases (the "Ground Leases") to a shopping center (the "Shopping Center") located in Mahopac New, York. Lake Plaza acquired its interest as tenant under the Ground Leases on June 16, 2008.

2. Kmart has a sublease from Lake Plaza pursuant to which it operates a Big Kmart (the Kmart"). The underlying sublease (the "Kmart Sublease") was originally between Mahopac Associates and Caldor, Inc. and is dated August 18, 1978. Kmart acquired the Kmart Sublease on or about March 17, 1999 from the then-bankrupt Caldor, Inc.

3. The Motion seeks to establish store closing procedures that could be applicable to all of the Debtors' closing locations, including the Kmart. Although Lake Plaza does not object to the store closing sale, it does question whether the Debtors are maintaining adequate and appropriate liability insurance, especially given the kind of frenzy that store closing sales can generate.

4. The undersigned has more than a passing familiarity with the risk management program maintained by Sears for its own benefit and the benefit of subsidiaries like Kmart. The familiarity was obtained in the course of state court litigation over the protections afforded to Lake Plaza by the Sears risk management program.

## JURISDICTION

5. This court has subject matter jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6. On October 15, 2018, (the "Petition Date") the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York.

2

01059600.1

7.    The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.    The Kmart is located within a "shopping center" as the term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.,* 922 F.2d 1081, 1086-87 (3d Cir. 1990).

9.    The Debtors propose to implement certain store closing procedures (the "Store Closing Procedures"). According to the Motion, "[t]he Debtors shall maintain, during the period of the Store Closing Sales, all insurance in amounts at least equal to the insurance coverage presently in force" (Motion at 13).

10.   The implication is that the Debtors are maintaining commercial general liability insurance ("CGL") protecting Lake Plaza, a landlord, as an additional insured (and the class of landlords, in general). In actual fact, Lake Plaza believes that there is no CGL with respect to claims that are less than $5,000,000 and no non-bankrupt entity obligated to defend those claims. The undersigned learned this information when he represented Lake Plaza in an action it brought in Supreme Court, Putnam County captioned *Sears Holding Corp. and Kmart Corp. v. Lake Plaza Shopping Center LLC*, Putnam County Clerk's Index. No. 1145/11 (the "Insurance Litigation").

11.   Kmart provided Lake Plaza with a Certificate of Liability Insurance when Lake Plaza took over the Ground Leases in 2008. (Exhibit A). As can be seen, the Certificate of Insurance specifically stated that the entire $5,000,000 of coverage was provided by "Self Insured Retention". No insurance company was identified since the "insurance" was self-insurance.

12.   Lake Plaza wrote the Debtors a letter dated April 8, 2008 advising them that the Sublease did not permit self-insured retention. The next Certificate of Insurance identified ACE as the insurance carrier and the same $5,000,000 per occurrence and aggregate limit. Although the words "self insured retention" were omitted, there was a manuscripted insertion to the boilerplate reading: "SIR applies per terms and conditions of the policy." (A copy of this Certificate of Insurance is Exhibit

B).

13. Lake Plaza discovered that, Certificates of Insurance notwithstanding, Debtor had not changed its risk management program to eliminate the self insured retention. Accordingly, Lake Plaza served Kmart with a Notice of Lease Default that precipitated the Insurance Litigation. Ultimately, the New York State court determined that any default had been cured by Debtors' purchase of stand alone policies of retroactive liability insurance that appeared to eliminate the self-insurance. (The lower court's order on summary judgment and the Second Department's affirmance are Exhibit C and D, respectively).

14. Debtors continued to procure the stand alone insurance and may have done so for the current policy period. However, Lake Plaza has not been able to locate any Certificate of Insurance to that effect.

15. Lake Plaza did receive a Certificate of Liability Insurance for the policy period 8/1/18-8/1/19. (Exhibit E). The policy names Lake Plaza and its mortgagee as additional insureds and purports to provide a $5,000,000 limit per occurrence combined with a $5,000,000 aggregate. These are the same limits as were indicated on the Certificates of Liability Insurance provided during the Insurance Litigation. Additionally, the insurer, ACE, is the same insurer that provided the coverage that was the subject of the Insurance Litigation.

16. One of Debtors' defenses during the Insurance Litigation was that the ACE policy did not contain a self insured retention but a deductible that matched, to the dollar, the per occurrence and aggregate limits. The state court did not determine if the deductible was authorized by the Kmart Sublease given the procurement of what appeared to be retroactive coverage.

17. However, whether called a self insured retention or a deductible, the CGL policy was and appears to continue to be a fronting policy. In a fronting policy, the only "insurance" is dependent upon the insured having the liquidity (usually secured by collateral) to fund any recovery and then up to a total of the retention or deductible.

4

18.     It appears that the Insurance Litigation was the only place where Sears denied it was self-insuring.

19.     For example, Edgar, the website maintained by the United States Securities and Exchange Commission ("SEC"), contains a copy of a loan agreement made between Sears and companies controlled by its major shareholder. The loan agreement included a schedule of insurance coverage maintained by Sears. One of the policies is identified as being General Liability, underwritten by ACE, the same as the current insurer, with the same coverage limits. Under the heading "Retention" the insurance schedule reads: "$5M ALAE 100% borne by Sears." ALAE refers to "all liability all expenses."

20.     Federal and State civil procedural law requires a defendant in a lawsuit to disclose insurance coverage. This information is rarely made part of the public record. During the course of the litigation the undersigned located Initial Disclosures filed in federal court and responses to discovery requests publicly filed in state court, in which the responding Sears entity said that the first $5,000,000 of recovery was paid for by the Sears entity.

21.     Long *after* the lower court's decision in the Insurance Litigation, Kmart on its own behalf and on behalf of a landlord (the Lake Plaza equivalent) filed Combined Demand Responses in a personal injury case, representing as follows: "Responding party Kmart Corporation is responsible for the first $5,000,000 of every loss." (Excerpted in Exhibit F).

22.     Kmart filed a Chapter 11 Petition in 2002 in the Bankruptcy Court for the Northern District of Illinois, Case No. 02474. The record there indicates that Kmart's CGL contained a self-insured retention of $2,000,000. Not much of the docket in the earlier bankruptcy is available on PACER.

23.     A copy of Kmart's Disclosure Statement With Respect to its First Amended Joint Plan of Reorganization can be accessed on Edgar. Apparently, landlord interests raised similar objections to the ones made in this Objection. This is what the Disclosure Statement had to say:

> "During these Chapter 11 cases, many landlords filed motions seeking to compel the Debtors to procure liability insurance .... With respect to the requests that the Debtors procure insurance, certain of the landlords' leases authorize the Debtors to self-insure if their book net worth exceeds $100 million. All of the Debtors' public filings reflected a positive net worth exceeding $2.6 billion at the time these motions were filed...."

24. The Disclosure Statement then went on to say that the Bankruptcy Court had rejected the landlords' requests because the Bankruptcy Court it had found "that the Debtors' book net worth far exceeded the thresholds established in the leases authorizing the Debtors to self insure."

25. Plainly, the situation here is very different from the prior Kmart bankruptcy. It seems hardly likely that when the dust settles the Debtors will emerge financially strong like the last time, if they emerge at all. Moreover, it does not appear that the Bankruptcy Court in the earlier Kmart bankruptcy even addressed (or was advised of) leases like the one with Lake Plaza that set no threshold concerning self-insurance or deductibles.

26. The implications of the illusory CGL insurance is well illustrated by *DePippo v.Kmart Corp.*, 335 B.R. 290 (S,D.N.Y. 1995), a case brought by an injured party whose claim fell below the $2,000,000 threshold. In dismissing the injured party's claim, Judge Connor wrote:

> "Defendants assert that Kmart is self-insured with regard to the claims of the type asserted by plaintiff and that, therefore, plaintiff's argument regarding insurance coverage is without merit.... Kmart maintains a self-insured retention of two million dollars per claim....
>
> * * *
>
> Kmart does not maintain primary liability insurance.... Its only insurance provides coverage above a two-million-dollar self-insured retention.... Therefore, because Kmart's debt has been discharged in bankruptcy, there is no money to cover plaintiff's claim...." (*Id.* at 297).

27. As mentioned above, it is possible that the stand alone policy Sears bought to protect Lake Plaza is still in place despite the absence of a Certificate of Insurance to evidence the coverage. But even if so, it would be inadequate. A hearing was held in the Insurance Litigation. David Halffield,

who was then a Sears Vice President, Risk Management testified that the supposed stand-alone policy (and the ACE CGL policy) were covered by a collateralization agreement and $350,000,000 in letters of credit. It is inconceivable that such collateralization remains.

28. In addition, Halffield testified that the stand alone policy, like the ACE CGL policy, were unbundled, explaining that ACE did not administer or defend claims. That job was and continues to be handled by Sedgwick, a third-party claims administrator hired by Sears to handle claims management and defenses.

29. CGL insurance serves two key functions. First to defend and then to indemnify. If the first obligation was unbundled from the second, then Lake Plaza cannot even expect to be defended by ACE let alone indemnified. (Excerpts from the transcript of the Hatfield testimony, given on May 12, 2012, are Exhibit G).

30. In short, Debtors should not be permitted to hold their store closing sale until it is determined that Lake Plaza is adequately insured.

31. This Objection is being filed on October 23 with the consent of the Debtors. A substantively identical draft was provided to Debtors on October 22 for their advance consideration.

**WHEREFORE,** Lake Plaza respectfully requests that the Court deny the relief sought in the Motion or grant it in a modified form as set forth in this Limited Objection and grant Lake Plaza any other and further relief as it may deem just and appropriate.

Dated: October 23, 2018              Respectfully submitted,

**WILK AUSLANDER LLP**

By:  /s/ M. William Scherer
M. William Scherer
1515 Broadway, 43rd Floor
New York, New York 10036
Telephone: (212) 981-2300
Facsimile: (212) 752-6380

*Attorneys for Lake Plaza Shopping Center LLC*

7

01059600.1