# EXHIBIT C

A-3
DECISION AND ORDER OF THE HONORABLE VICTOR G. GROSSMAN,
DATED APRIL 3, 2014, AND ENTERED ON APRIL 14, 2014, APPEALED FROM
[A-3 - A-15]

(Page 1 of 13)

To commence the 30 day statutory
time period for appeals as of right
(CPLR 5513[a]), you are advised to
serve a copy of this order, with
notice of entry, upon all parties

*PUTNAM COUNTY CLERK 2014 APR 14 AM 9:*

SUPREME COURT OF THE STATE of NEW YORK
COUNTY OF PUTNAM
----------------------------------------X
SEARS HOLDINGS CORPORATION and
KMART CORPORATION,
                    Plaintiff,

    -against-

LAKE PLAZA SHOPPING CENTER, LLC,

                    Defendant.
----------------------------------------X

DECISION & ORDER

Index No. 1145/2011

Seq. Nos. 4, 6 & 7
Motion Date: 11/8/13

GROSSMAN, J.S.C.

The following papers, numbered 1 to 86, were read in connection with: (1) Defendant's April 30, 2012 Order to Show Cause vacating this Court's December 23, 2011 Order on the ground of fraud, misrepresentation and other misconduct of Plaintiffs, thereupon dismissing the Amended Complaint and denying the motion for a <u>Yellowstone</u> injunction as moot; (2) Plaintiffs' January 29, 2013 Motion for Summary Judgment; and (3) Defendant's October 17, 2013 Motion to renew its application for discovery from Plaintiff and non-parties ACE American Insurance Company and United National Insurance Company, and supplement the Summary Judgment record.

| PAPERS | NUMBERED |
|---|---|
| Seq. 4 | |
| Order to Show Cause/Affidavit/Exhs. A-E | 1-7 |
| Memorandum in Support | 8 |
| Affidavit in Opposition/Exhs. A-B | 9-11 |
| Affirmation of Gil Feder, Esq. in Opposition | 12 |

Seq. 6
| | |
|---|---|
| Plaintiffs' Notice of Motion | 13 |
| Plaintiffs' Rule 19-A Statement of Undisputed Material Facts | 14 |
| Affirmation of John Scalzo/Exhs. 1-32 | 15-47 |
| Memorandum of Law in Support | 48 |
| Defendant's Proposed Findings of Fact | 49 |
| Defendant's Post-Hearing Memorandum | 50 |
| M. William Scherer Affidavit/Exhs. A-H | 51-60 |
| Reply Affirmation/Exh. A | 61-62 |
| Plaintiff's Memorandum of Law in Response to Defendant's Post-Hearing Memorandum and in Further Support of their Motion for Summary Judgment | 63 |
| Douglas E. Sakaguchi Affidavit | 64 |
| Defendant's Post-Hearing Reply Memorandum | 65 |
| Plaintiffs' Response to Defendant's Proposed Findings of Facts and Conclusions of Law | 66 |
| David Halffield Affidavit | 67 |
| Plaintiffs' Reply Memorandum in Response to Defendant's Post-Hearing Reply Memorandum and in Further Support of Summary Judgment | 68 |
| M. William Scherer Reply Affidavit/Exh. A | 69 |

Seq. 7
| | |
|---|---|
| Defendant's Notice of Motion/Affidavit/Exhs. A-D | 70-75 |
| Papers Filed in Connection with Discovery Motion | 76 |
| Scalzo Affirmation in Response/Exh. A | 77-78 |
| M. William Scherer Reply Affidavit/Exh. A | 79-80 |

Additional Documents Submitted for Seqs. 6 & 7
| | |
|---|---|
| Plaintiff's March 24, 2014 Letter | 81 |
| Defendant's March 24, 2014 Letter | 82 |
| Defendant's March 24, 2014 Letter (II)/Exhs. A-B | 83-84 |
| Plaintiff's March 26, 2014 Letter in Response/Exh. A | 85-86 |

As of June 16, 2008, Plaintiffs Sears Holdings Corporation and Kmart Corporation ("Tenants") leased property from Defendant

2

Lake Plaza Shopping Center, LLC ("Lake Plaza") pursuant to the terms of a commercial sublease entered by predecessor parties on August 18, 1978 (the "Sublease"). At issue here are provisions of the Sublease requiring Tenants to procure certain insurance coverage, naming Lake Plaza as an additional insured. Specifically, concerning general liability coverage ("CGL"), the Sublease required Tenants to provide $1,000,000.00 in coverage for bodily injury or death of any one person, up to a maximum $3,000,000.00 for bodily injury or death of multiple persons arising out of a single accident, and property damage up to $100,000.00.[1]

According to Tenants, their original policies provided CGL coverage for the benefit of Lake Plaza in an amount exceeding those required under the Sublease. However, those policies contained what Lake Plaza contends were "self-insured retentions" and what Tenants now call "deductibles" of up to $5 million.[2]

---

[1] The CGL requirement of the Sublease provided that Tenants shall procure insurance coverage:

> for bodily injury or death occurring upon, in or about the building demised to Tenant in the Demised Premises, to the extent of not less than One Million ($1,000,000.00) Dollars in respect of bodily injury to or death of any one person, to the extent of not less than Three Million ($3,000,000.00) Dollars for bodily injury to or death of any number of persons arising out of one accident, or disaster, and property damage with limits of not less than One Hundred Thousand ($100,000.00) Dollars ***.

[2] Originally, Tenants stated that the polices had "self-insured retentions or deductibles," but subsequently retracted

3

Mahopac leased the Premises to Caldor.

12.  Kmart purchased the Sublease from Caldor pursuant to a Assignment and Assumption Agreement dated March 17, 1999. Upon information and belief, Lake Plaza succeeded Mahopac as landlord under the Sublease on June 16, 2008.

13.  The initial term of the Sublease is twenty-seven years, renewable up to thirty years, and the net annual base rent is $253,453.00 per annum (increased by amendment on April 24, 1979 to $283,435.00). There are nine months remaining on the current term of the Sublease, and Tenant has exercised its option to renew the Sublease for an additional five year period commencing February 1, 2012, and ending January 31, 2017, pursuant to Article Fourth, Section 2 of the Sublease.

14.  Article Eleventh of the Sublease sets forth the minimum limits of the insurance policies Tenant is required to procure and maintain, at its sole cost and expense. Specifically, Article Eleventh, Section 1 requires Tenant to maintain:

> (a) First with standard extended coverages and with endorsements for difference in condition and changes in building code requirements, in an amount not less than one hundred (100%) percent of the full replacement cost of the building on the Demised Premises (i.e. the cost of replacing the building, including all equipment appurtenant thereto and installed by and at Landlord's cost, exclusive of the cost of excavation, foundation and footings), such coverage being required by Landlord's institutional mortgagee; and sprinkler damage insurance in an amount equal to ten (10%) percent of the "full replacement cost" of the building, and such other insurance as is reasonably required under the institutional mortgage to which this Sublease is subject and/or subordinate, provided such other insurance is customarily carried on similar department store buildings in the county where the Demised Premises are located (excluding, however, rent insurance, except when reimbursement shall be made as provided in Section 7 of this Article Eleventh); all such coverage shall be reasonably satisfactory to Landlord and the holder of any mortgage affecting the Demised Premises.
>
> (b) Public Liability insurance against claims for bodily injury or death occurring upon, in or about the building demised to Tenant in the Demised Premises, to the extent of not less than One Million ($1,000,000.00) Dollars in

4

'policies,³ with coverage of at least $1 million for injury to any one individual and $3 million for any one accident with respect to bodily injury or death, and property damage of not less than $100,000.00 as required by Article Eleventh, Section 1(b) of the Sublease. Tenants procured this CGL coverage from ACE American Insurance Company ("ACE"), a New York-admitted carrier, effective June 11, 2008 through August 1, 2009,⁴ August 1, 2009 through August 1, 2010, and August 1, 2010 through August 1, 2011. According to Tenants, none of the replacement policies contain "self-insured retentions" or deductibles, and these new policies have cured the alleged breach.

Tenants are seeking declaratory judgment that their new CGL policies comply with the Sublease's insurance requirements and cured the alleged default.⁵

On May 12, 2012, a hearing was held to determine what kind of insurance, in any, existed (5/12/12 Minutes at 3-4).

---

³Tenants maintain that their insurer issued new policies, not endorsements to old policies (Affirmation, Exh. 4 at 32-33, 38). Additionally, Tenants now believe that the original policies did not contain self-insured retentions, but rather contained deductibles, which they argue do not offend the Sublease's terms, as the lease is silent with respect to that (December 23, 2011 Order at n. 4; Affirmation, Exh. 4 at 25-26; May 12, 2012 Minutes at 8).

⁴The policy states the effective date is June 16, 2008, but Endorsement 19 amended the effective date to June 11, 2008 (Affirmation, Exh. 15).

⁵This Court granted Tenants an injunction pursuant to Yellowstone and CPLR §6301, pending the outcome of the determination of the case.

5

Plaintiff called two witnesses - David Halffield, vice-president of risk management for Sears with over 25 years' insurance experience, and Craig Sutherland, an insurance expert (5/12/12 Minutes at 10-11). Halffield testified that based on his review of the Sublease, there was no provision prohibiting Tenants from having a deductible in the insurance policy, or prohibiting self-insured retentions (5/12/12 Minutes at 23). Halffield testified that at the time Sears received the letter, stating that it had until May 6, 2011 to eliminate self-insured retention or other self-insurance, Sears did not have self-insurance in place on the subject premises, and that Defendant was basing its claim on: (1) an incorrect notation on the certificate of insurance; and (2) the fact that Kmart maintained self-insured retentions for other stores prior to its 2005 merger with Sears (5/12/12 Minutes at 24-26, 29-32). Halffield also testified that although Plaintiffs advised Lake Plaza that they disputed the allegations, nevertheless, they procured new policies anyway, which provide coverage in the amounts required under the Sublease retroactively to June 16, 2008, with no self-insured retention, no deductible, no aggregate limit, and only covers the subject premises, thereby complying with the Lake Plaza's demands (5/12/12 Minutes at 32-34, 44, 49-52, 76-80, 83).[6] Halffield stated that Tenants have

---

[6] Halffield explains that Tenants initially referred to these replacement policies as endorsements to the old policies, but then later corrected that statement, indicating that the policies are newly-issued policies and not endorsements (5/12/12 Minutes at 36-38).

'not received any notification from the New York State Department of Insurance that the new policies were invalid or illegal (5/12/12 Minutes at 34).

Sutherland, who was qualified as "an expert in the field of insurance," testified that Tenants' new policies complied with the Sublease and did not violate the subject New York Insurance Opinion because Tenant was not previously self-insured (5/12/12 Minutes at 99-104, 106). Sutherland stated that the old policies required ACE to provide "dollar-one" coverage in excess of the amounts required by the Sublease, and that the new policies did not provide coverage for periods prior to their respective effective dates (5/12/12 Minutes at 101-02, 104-05). Lake Plaza did not call any witnesses. At the end of the testimony, the Court converted a hearing into a motion for summary judgment.[7]

Now, Tenants move for summary judgment (Sequence #6), asserting that there is no issue of fact – they have cured the alleged default and are no longer in violation of the lease, and as such, are entitled to judgment as a matter of law. Lake Plaza responds, arguing that the new policies neither comply with the terms of the lease, nor with two opinions of the Insurance

---

[7] On November 26, 2012, in response to Lake Plaza's motion to compel certain discovery, this Court rejected Lake Plaza's argument that this discovery would reveal that Tenants' Old Policies contained self-insurance retentions thereby rendering the default incurable as a matter of law. The Court relied on Federated Retail Holdings Inc. v. Weatherly 39th Street, LLC, 95 A.D.3d 605 (1st Dept. 2012), when it stated that the Insurance Department Opinion on which Lake Plaza was relying is "not binding on any court."

'Department's General Counsel, and as such, Tenants remain in default, so the lease must be terminated.[8] And, pursuant to the March 20, 2014 conference call with this Court, the parties submitted letters to the Court, summarizing their respective positions. At this time, the Court has plodded through the multitude of moving papers, transcripts, memoranda of law, exhibits, opposition papers, and reply papers submitted in this case, and has concluded that Lake Plaza's attempt to cloud the simple and central issue in this case has reached a point where this Court has spent an inordinate amount of its time and resources sifting through irrelevant documents and additional assertions made by counsel with every subsequent response to his adversary's papers, resulting in the needless prolonging of the litigation, rather than an enlightening of the Court on the relevant law and facts.

It is well-established that summary judgment is a drastic remedy and should only be granted if there are no material and triable issues of fact. <u>Sillman v. Twentieth Century-Fox Film Corp.</u>, 3 N.Y.2d 395 (1957). In evaluating a motion for summary judgment, a court should not determine the credibility, but whether there exists such issues. <u>S.J. Capelin Associates v.</u>

---

[8] On October 17, 2013, Lake Plaza moved for leave to renew its application for discovery from Tenants and non-parties ACE American Insurance Company and United National Insurance Company, and to supplement the summary judgment motion (Sequence #7). Lake Plaza withdrew that portion of its papers with respect to renewal, on consent, via a conference call with this Court on March 20, 2014.

8

Globe Mfg. Corp., 34 N.Y.2d 338 (1974). When reviewing a motion, the papers must be scrutinized carefully in the light most favorable to the party opposing the motion. Robinson v. Strong Memorial Hosp., 98 A.D.2d 976 (4th Dept. 1983). The party moving for summary judgment has the burden initially of coming forward with admissible evidence to support the motion, so as to warrant the Court's directing judgment in movant's favor as a matter of law. The burden then shifts to the opposing party to demonstrate, by admissible evidence, the existence of a factual issue requiring a trial. See Friends of Animals, Inc. v. Associated Fur Manufacturers, Inc., 46 N.Y.2d 1065, 1067 (1979); Alvarez v. City of New York, 68 N.Y.2d 320 (1986); Zuckerman v. City of New York, 49 N.Y.2d 557 (1980).

In the first instance, Tenants established a *prima facie* case that they have cured the alleged default. Tenants procured new CGL policies which contain no self-retention or deductible provisions, which cover the correct policy period, for the required limits and for the Mahopac store, thereby complying with the Sublease.

Lake Plaza, however, failed to demonstrate that there is an existence of a factual issue requiring a trial. Lake Plaza argues that the new policies are not in compliance based on the fact that Tenants had been self-insured and, therefore, cannot purchase retroactive replacement policies for those prior self-insured periods. Stated another way, Lake Plaza asserts that the

9

new policies are invalid because the old policies were self-retention policies, which were effectively no insurance, and therefore, the default is unable to be cured by law.

"New York contract law instructs that, as a general matter, "[a] certificate of insurance is merely evidence of a contract for insurance, not conclusive proof that the contract exists, and not, in and of itself, a contract to insure." 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112 (2d Cir. 2011)(citations omitted); see also American Ref-Fuel Co. of Hempstead v. Resource Recycling, Inc., 248 A.D.2d 420, 423 (2d Dept. 1998)(certificate of insurance recited it was for informational purposes only and conferred no rights upon insured). While a certificate "may be sufficient to raise an issue of fact" on summary judgment, "it is not sufficient, standing alone * * *, to prove coverage as a matter of law." 10 Ellicott Square Court, supra (citations omitted). The Court is focused on the content of the policies, not the certificates.

Lake Plaza relies on the self-insured retention reference in the certificate of liability insurance for Old Policy HDO G23744272 for the period of 8/1/08 through 8/1/09 (Affirmation, Exhs. 9, 12), and the "SIR" notation for Old Policy HDO G24933398 for the period of 8/1/09 through 8/1/10 (Affirmation, Exhs. 10, 13), but this reliance is misplaced. Not only is there language in the actual certificate that specifically states that "[t]his certificate is issued as a matter of information only and confers

no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below," but a review of the actual policies that correspond to these certificates reveal a reference to a deductible, not a self-insured retention. Moreover, this Court specifically acknowledged that it is "the policy that controls, not the memorandum" - meaning not the certificate of insurance (Plaintiff's Memorandum of Law at n.4; Affirmation, Exh. 4 at 30). In light of this colloquy, as well as this Court's review of the email submitted by Lake Plaza in its October 17, 2013 papers, Lake Plaza's position fails.

Finally, to the extent Lake Plaza cites to an April 27, 2007 New York State Insurance Department Opinion to support its position, this reliance is misplaced. According to the Opinion, "coverage for events that occurred during a contractually specified period of time that is prior to the effective date of the occurrence policy may not be issued to a person who was previously self-insured and thus has uninsured exposure for prior acts or occurrences" (Affirmation, Exh. 25). This Court notes that while this type of informal opinion is not binding on the courts, it is still entitled to great deference (see A.M. Medical Services, P.C. v. Progressive Casualty Insurance Company, 101 A.D.3d 53, 64 [2d Dept. 2012]). However, this Insurance Department Opinion is inapplicable, as Tenants were not self-insured and did not obtain coverage for events that occurred

11

prior to the effective date of June 11, 2008.

In light of the above, this Court need not address the remaining arguments.

Additionally, to the extent Lake Plaza moved this Court for an Order vacating the December 23, 2011 Order (Sequence #4), according to an email this Court received from defense counsel on March 20, 2014, indicating the matter "was either formally denied or denied by implication," and is no longer "on the table," and therefore, that motion is no longer before the Court.

As such, it is hereby

ORDERED that Lake Plaza's motion for summary judgment is denied; and it is further

ORDERED that Tenants' motion for summary judgment is granted; and it is further

ORDERED that Lake Plaza's motion vacating the December 23, 2011 Order (Sequence #4), is deemed denied, in light of subsequent rulings by this Court during the pendency of that motion.

The foregoing constitutes the Decision and Order of the Court.

Dated:    Carmel, New York
         April 3, 2014

                                        _____
                                        HON. VICTOR G. GROSSMAN, J.S.C.