# EXHIBIT G

**TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE FRANCIS A. NICOLAI**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF PUTNAM
------------------------------------------x
SEARS HOLDINGS CORPORATION and
KMART CORPORATION,

                Plaintiffs,

-against-                          Index No. 1145/2011

LAKE PLAZA SHOPPING CENTER, LLC,

                Defendant.
------------------------------------------x

        20 County Center
        Carmel, New York
        May 12, 2012

BEFORE:

        HON. FRANCIS A. NICOLAI,
        Justice of the Supreme Court

<u>D. HALFFIELD - CROSS - MR. SCHERER</u>

Q. What does that mean?

A. Means this policy had a $5 million deductible.

Q. Take a look now at Roman numeral 2-4. That says if you fail to reimburse us for the amount due under this endorsement, or fail to provide us any collateral that we require, you will be in default of your obligations to us, and we may take any steps we deem necessary to enforce our rights against you, including but not limited to drawing any amount of collateral we hold.

Do you know what that reference to collateral is?

A. Yes.

Q. What is it?

A. It's collateral that we post with our insurance company, in this case AIS, to guarantee payment of the amounts that we owe under the deductible.

Q. In other words AIS has $5 million at least, let me withdraw that.

How much have you posted with AIS, in terms of collateral?

A. How much do we currently post with AIS?

Q. Yes.

A. Approximately $350 million.

Q. How much did you post with AIS between 2007 and 2008?

A. I don't have that number off the top of my head.

### D. HALFFIELD - CROSS - MR. SCHERER

AIS may have called the coverage self-insured retention because AIS knew that amount of money was on deposit?

MR. FEDER: Objection.

THE COURT: I'm allowing it.

A. No.

Q. No? Let's assume, for argument's sake, I go to the store after court and slip on liquid. Because I'm a lawyer I run into court and start a lawsuit the next day. Is that claim going to be referred to AIS?

A. Yes, or our adjustor. At some point AIS will get the information on the claim.

Q. Will AIS take over the claim and will AIS indemnify against the lawsuit?

A. Through the licensed third-party administrator, yes.

Q. The licensed third-party administrator is who?

A. Sedgewick.

Q. What is Sedgewick?

A. Licensed third-party administrator.

Q. Who pays Sedgewick for administering the claim?

A. Sears does.

Q. Does Sedgewick settle claims for Sears?

A. Yes.

Q. Who pays the cost of those settlements?

A. From a practical standpoint, Sedgewick draws on the

—5/18/12—

TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE FRANCIS A. NICOLAI
TESTIMONY OF DAVID HALFFIELD

59

<u>D. HALFFIELD - CROSS - MR. SCHERER</u>

bank account, Sears funds.

Q. Does AIS get involved in payment of those claims?

A. Certain claims.

Q. Which claims?

A. Larger claims.

Q. Those claims in excess of $3 million?

A. I would say less than that.

Q. What claims does AIS get involved in?

A. They have different criteria depending on the nature of the claim.

Q. You said you had an agreement before with AIS regarding the insurance coverage they provided to you; is that correct?

A. We have an insurance policy with AIS.

Q. In addition to the policy, any other agreements with AIS?

A. Yes.

Q. Do those agreements refer in any way to that collateral that we just talked about?

A. Some of them do, yes.

Q. And do those -- do any of those agreements deal with the collateral to be posted pursuant to the policies that you have provided for here in court --

A. Yes.

—5/18/12—

18-23538-shl    Doc 255-8    Filed 10/23/18    Entered 10/23/18 15:56:07    Exhibit G
Pg 6 of 10
TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE FRANCIS A. NICOLAI
TESTIMONY OF DAVID HALFFIELD

82

<u>D. HALFFIELD - CROSS - MR. SCHERER</u>

providing for self-insured retention or deductible in tenant's new general liability policies. Do you recall signing an affidavit containing that sentence?

A. I would like to see it, please.

Q. Sure.

THE COURT: Is it a current exhibit to the movant's papers?

MR. SCHERER: It's the answering affidavit to the motion, to the Order to Show Cause.

THE COURT: Exhibit what?

MR. SCHERER: Actual affidavit.

Q. Paragraph four, page two, second sentence.

A. Okay.

Q. Do you continue to maintain that there is no collateral side agreement between Sears and AIS in connection with the new general liability policies?

A. Yes.

Q. But you did testify that there is, there are other agreements between Sears and AIS that would apply to this policy; is that correct?

A. It would encompass this policy, yes.

Q. And those are the agreements which provide for the posting by Sears of collateral and given the right to AIS to resort to that collateral to pay claims; is that correct?

—5/18/12—

83

D. HALFFIELD - CROSS - MR. SCHERER

A. Yes.

Q. Do you have an insurance policy in your name; your house, your car?

A. Yes.

Q. Do you post collateral, take back any deductibles in the policy?

A. Yes.

Q. Did you post any collateral?

A. No.

Q. So that if you make a claim, if you get hit by a car, or hit somebody and a claim is made, you expect the insurance company to pay without any deductible; is that correct?

A. No deductible on third-party coverage, deductibles in all policies relate to first-party property damage of the vehicle, the car owned by me.

Q. You say in that affidavit in front of you, in short, while it is not entirely clear why AIS stamped some but not all of tenant's new general liabilities policies with a Class Code purporting to indicate presence of a deductible or self-insured retention, the policies, the terms which control provide for no deductible, or self-insured retention and comply fully with the sublease was one of the policies that had the stamp on it issued before any occurrence s could have taken place, because it was effectively only as to future events?

—5/18/12—

*D. HALFFIELD - CROSS - MR. SCHERER*

You're always covered, regardless of when the claim is made, as long as you have a policy in effect.

Am I missing something?

MR. SCHERER: I believe you are.

THE COURT: What?

MR. SCHERER: You're missing the fact that the lease contemplated an occurrence policy. That meant once premiums are paid the policy is always there.

THE COURT: We could have claims-made. We're going into an area not even in this case.

MR. SCHERER: If you don't believe it's relevant, that's fine. They brought it up during the direct by saying they could get it.

THE COURT: Move on. I'm going to finish this hearing today, I want you to know that, so I tried to say avoid it, there are times when I put time limits on questions.

MR. SCHERER: Just a couple more questions.

Q. Approximately how many personal injury lawsuits are commenced against Sears and KMart every year?

A. Several hundred.

Q. How many personal injury lawsuits are pending now?

A. Between 1,500 and 2,000.

Q. And do those 1,500 and 2,000 lawsuits involve periods

<u>D. HALFFIELD - CROSS - MR. SCHERER</u>

of time between 2008 and 2011, occurrences during 2008 and 2011?

    A.   Not only.  They include some of them.

    Q.   They include?

    A.   Some between that time period.

    Q.   Approximately, do you have any general idea how many that might be?

    A.   No, I don't.

    Q.   Have any of those lawsuits been referred to AIS?

    A.   Yes.

    Q.   Is AIS defending those?

    A.   Again, through their agent and outside counsel, yes.

    Q.   Are they also being defended through the companies we mentioned before?

    A.   Sedgewick.

    Q.   That you have a separate relationship with; correct?

    A.   AIS has a direct relationship with Sedgewick for deductible policies.  I could explain this easily if I can have one sentence.  We buy an unbundled program.  You don't buy claim served along with insurance coverage.  Sedgewick unbundles.  They are the party administrator.  They have a separate contract with AIS, as do we for issues not covered by their agreement with AIS.

    Q.   Would you say most of your claims are processed by

—5/18/12—

*D. HALFFIELD - REDIRECT - MR. FEDER*

Sedgewick in that unbundled relationship?

 A. All of them are currently for general liability.

 Q. That means those claims are not being handled by AIS?

 A. Not directly, no.

 Q. And is AIS responding with paying any defense costs or any indemnity costs on those claims?

 A. Not defense costs, no.

 Q. Who is paying those defense costs?

 A. Sedgewick is paying them.

 Q. Did Sedgewick get that money from Sears?

   THE COURT: Yes.

 A. Yes.

   MR. SCHERER: No further questions.

   THE COURT: Anything further?

   MR. FEDER: Very briefly.

   THE COURT: Excuse me. You have to define very briefly. We're breaking in three minutes.

   MR. FEDER: Less than the two minutes.

**REDIRECT EXAMINATION**

**BY MR. FEDER:**

 Q. Are those policies in effect in an aggregate limit?

 A. Correct.

   THE COURT: I know what that means.

   MR. FEDER: Okay.

*5/18/12*