Edward L.Schnitzer

Maura I. Russell

CKR LAW LLP

1330 Avenue of the Americas

14th Floor

New York, NY  10019

Telephone:  (212) 259-7300

Email: eschnitzer@ckrlaw.com

       mrussell@ckrlaw.com

Counsel to Sakar International, Inc.

Hearing Date/Time:   October 25, 2018 at 10:00 am

**UNITED STATES BANKRUPTCY COURT**
**SOUTHER DISTRICT OF NEW YORK**

_____

SEARS HOLDINGS CORPORATION, et al.,

              Debtors.

_____

Chapter 11

Case No. 18-23538 (RDD)

(Jointly Administered)

**OBJECTION AND JOINDER OF SAKAR INTERNATIONAL, INC. IN THE LIMITED OBJECTIONS OF (I) CLOVER TECHNOLOGIES GROUP, LLC; (II) SHANTI CORPORATION d/b/a  VIJAY GOLD DESIGNS; AND (III) ROSY BLUE, INC. TO DEBTORS' MOTION  OR APPROVAL OF (I) STORE CLOSING SALES AND (II) ASSUMPTION OF LIQUIDATION CONSULTING AGREEMENT**

Sakar International Inc. ("Sakar") hereby files this objection and joinder (the

"Joinder") to the objections filed by (i) Clover Technologies Group, LLC (Docker # 211); (iii)

Shanti Corporation d/b/a Vijay Gold Designs (Docket #242); and (iii) Rosy Blue, Inc. (Docket

#243) (collectively the "Consignment Vendor Objections") to the Motion of Debtors For

Approval of (I) Procedures  for Store Closing Sales and (ii) Assumption  of Liquidation

Consulting Agreement dated October 15, 2018 (Docket # 23) filed by the above-captioned

debtors (the "Debtors").[1]  In support of this Joinder, Sakar respectfully represents as follows:

## INTRODUCTION

1.          In the Motion, the Debtors seek permission to, among other things, liquidate the Debtors' Inventory located in one hundred forty two (142) of the Debtors' retail store locations (collectively, the "Closing Stores") through certain store closing or liquidation sales pursuant to that certain Amended and Restated Agency and Consulting Services Agreement between Abacus Advisors Group, L.L.C., as Agent, and Sears Holding Management Corporation, as agent for Kmart Corporation and Sears, Roebuck & Co, as the Company.

2.          While Sakar does not object to the conduct of the sale at the Closing Stores, Sakar joins in the Consignment Vendor Objections and submits that any order granting the Motion and authorizing such sales, should provide that the proceeds of the sale of any SBT Merchandise (as defined below) belonging to Sakar and on consignment with the Subject Debtors must be held in trust for Sakar, as a Trust Fund Counterparty in accordance with this Court's Order Authorizing the Debtors to (I) Maintain Certain Trust Fund Programs, (II) Release Certain Funds Held in Trust, and (III) Continue to Perform and Honor Related Obligations (the "Trust Order"), entered on October 18, 2018 (Docket # 167).

3.          This relief is particularly necessitated by the Debtors' pending requests to grant liens on its assets, as more fully set forth in the Debtors' Motion for Authority to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing (the "DIP Motion") and in this Court's Interim Order (I) Authorizing the Debtors to (A) Obtain Post-

---

[1]          Capitalized terms not defined herein are as defined in the Motion.

2

Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative

Expense Claims, and (C) Utilize Cash Collateral;  (II) Granting Adequate Protection to the

Prepetition Secured Parties;  (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing;

and (IV) Granting Related Relief (the "Interim DIP Order"), entered on October 16, 2018 (Docket

# 101).   Sakar will be filing a limited objection to that relief, as well.

## BACKGROUND  AND OBJECTION

4.        Sakar and Sears Holding Management Corporation, as agent for Kmart

Corporation and Sears, Roebuck & Co (collectively, the "Subject Debtors"), are parties to that

certain Scan-Based Trading and Consignment Agreement, of April 2014 (the "Consignment

Agreement").  Pursuant to the Consignment Agreement, Sakar provided certain merchandise (the

"SBT Merchandise") to the Subject on a consignment basis in which Sakar "retains title and

ownership of such merchandise" until purchased by the Subject Debtors (as provided for under

the Consignment Agreement).  The Consignment Agreement further provides that Sakar has a

security interest in the "SBT Merchandise (and proceeds)".  Sakar provided notice of its security

interest to all known parties asserting a lien or security interest in the Subject Debtors' inventory

and further properly perfected its security interest in and to the SBT Merchandise filing of the

applicable UCC-1 financing statements with the Secretary of State for the State of New York

(Sears, Roebuck& Co.) and Michigan (K-Mart Corporation) on September 30, 2014.   By such

notice and filing, Sakar maintains a first priority perfected consignment security interest in the

SBT Merchandise and the proceeds of the sale thereof.

5.        Pursuant to the Consignment Agreement, Sakar delivered the SBT Merchandise

to the Subject Debtors but retained title and ownership of the Merchandise until it is scanned by

the Subject Debtors at the register, at which time it is purchased and then resold to the retail

3

customer.

6.      By letter dated October 18, 2018, Sakar, through its counsel,  served written
notice of its right, title and first priority perfected interest in and to the SBT Merchandise (as
identified by Sakar, as currently being on hand with the Subject Debtors) and, pursuant to the
Consignment Agreement and U.C.C. § 9-324, made demand for the immediate: (i) return to
Sakar of the SBT Merchandise identified by Sakar; and/or (ii) remittance of such portion of  the
proceeds from the sale of any SBT Merchandise sufficient to pay Sakar for such goods, as well
as any of the SBT Merchandise previously sold by the Subject Debtors but not otherwise paid
for.

7.      As set forth above, Sakar has no objection to the conduct of the sales at the
Closing Stores, or to the inclusion of the SBT Merchandise, so long at Sakar receives all amounts
that is owed to it on account of such SBT Merchandise that is sold during such sales, as provided
for under the Consignment Agreement.  However, neither the definition of Inventory in Motion,
nor the definition of Inventory in the Consulting Agreement make any distinction between the
sale of the Subject Debtor's owned inventory and inventory the Subject Debtors are holding on
consignment and for which title to such goods remains with the subject vendors.

8.      Accordingly, regardless of whether Sakar's transactions with the subject Debtors
constitute a consignment or give rise to a purchase money security interest, Sakar holds title to
the Merchandise and its interests therein are senior to any liens or claims held by any other party,
including but not limited to Bank of America, JPMorgan Chase Bank and Wells Fargo Bank.

9.      Nonetheless, according to the Motion, the Debtor intends to use the proceeds
from the sale of the Merchandise for liquidity and to pay down the DIP financing.  Motion, ¶ 36.
The Motion fails, however, to even mention, let alone address, the rights of consignment vendors

like Sakar.

10.       Since the Consignment Agreement provides that the Subject Debtors are obligated to pay Sakar within fifteen (15) days of the sale of Merchandise to the retail customer, the proposed sale of the Merchandise in the Store Closing Sales has the effect of forcing Sakar to sell goods on credit to the Debtor, post-petition, without its consent and without any adequate protection.  Such payment obligations must be observed by the Debtors

11.       In the absence of appropriate treatment as a Trust Fund Counterparty as set forth in the Trust Order, or other appropriate and adequate protection of its rights in and to the Merchandise acceptable to Sakar, Sakar objects to the liquidation sale of its Merchandise at the Store Closing Sales.  Courts have rejected sales of consigned goods absent adequate protection to or consent from the consignment vendors.  See In re Whitehall Jewelers Holdings, Inc., Case No. 08-11261, 208 WL 2951974, at 8* (Bankr. D. Del. July 28, 2008) (bankruptcy court refused to allow debtors to sell consigned goods absent providing adequate protection to or consent from the consignment vendors).   See also In re Sports Authority Holdings, Inc. et al., Case No. 16-10527 (MFW) (Bankr. D. Delaware) Docket # 1704) (the bankruptcy court ruled to the extent that a consignment vendor delivered goods to the debtors pre or post petition on a consignment basis, the debtors could sell the consigned goods pursuant to the consignment agreements but were directed to remit the portion of the proceeds of such goods allocable to the consignment vendors to the consignment vendors).

## **CONCLUSION**

12.      Based on the foregoing, the Motion should be denied as to the Sakar SBT

Merchandise, unless the Debtors agree that any proceeds from the sale of such SBT Merchandise shall

be held in trust for Sakar and that the Debtors shall timely remit amounts due to Sakar are a result of

such sales of SBT Merchandise as provided for under the Consignment Agreement.

Dated:  New York, New York
        October 23, 2018

                                        Respectfully submitted,
                                        CKR LAW LLP

                                        By:   /s/ Edward L. Schnitzer
                                              Edward L. Schnitzer
                                              Maura I. Russell
                                        1330 Avenue of the Americas
                                        New York, NY 10019
                                        Telephone:  (212) 259-7300
                                        Email:   eschnitzer@ckrlaw.com
                                                 mrussell@ckrlaw.com

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 23, 2018, he caused a true and correct copy of the foregoing Joinder to be served electronically and by email upon all those identified in the Master Service List as of October 18, 2018 in accordance with this Court's Order Implementing Certain Notice and Case Management Procedures (the "Case Management Order") entered on October 17, 2018 (Docket # 139). I hereby further certify that pursuant to the Case Management Order and the local rules, hard copies of the foregoing Joinder were delivered via overnight mail to (i) the Honorable Robert D. Drain, and (ii) the United States Trustee's Office.

            /s/ Maura I. Russell