**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :    **Chapter 11**
**SEARS HOLDINGS CORPORATION, et al.,**                           :
                                                                  :    **Case No. 18-23538 (RDD)**
                                                                  :
        Debtors. [1]                                              :    **(Jointly Administered)**
------------------------------------------------------------------x

**INTERIM ORDER APPROVING (I) PROCEDURES FOR STORE CLOSING SALES AND (II) ASSUMPTION OF LIQUIDATION CONSULTING AGREEMENT**

Upon the motion (the "**Motion**") of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 554(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order (the "**Interim Order**") (i) authorizing, but not directing, the Debtors to (a) implement the Store Closing Procedures[2] and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

begin conducting liquidation sales (the "**Store Closing Sales**") at any stores, distribution centers, and other non-retail locations, that the Debtors determine, in their business judgment, should be closed in order to preserve liquidity and maximize the value of their estate (collectively, the "**Closing Stores**"), as applicable and (b) assumption of the Liquidation Consulting Agreement, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the interim relief requested in the Motion having been given as provided in the Motion, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and upon each of the filed objections to the Motion, including as resolved on the record of the Interim Hearing or herein; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on October 25, 2018 (the "**Interim Hearing**"); and upon the Riecker Declaration filed contemporaneously with the Motion, the record of the Interim Hearing and all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

**Store Closing Sales**

2. The store closing sale procedures attached hereto as **Exhibit 2** (the "**Store Closing Procedures**") are hereby incorporated by reference and approved in their entirety on an interim basis.

3. The Debtors are authorized, but not directed, to commence Store Closing Sales at the Initial Closing Stores listed on **Exhibit 1** attached hereto, pursuant to the Store Closing Procedures; *provided that* the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), and Landlords of any Closing Stores are authorized to enter into an agreement modifying the Store Closing Procedures, upon three (3) business days advance notice to the Creditors' Committee with respect to any Landlord Agreement entered into after the entry of this Interim Order, without further order of the Court (each, a "**Landlord Agreement**"); *provided further* that any such Landlord Agreement shall not have a material adverse effect on (i) the Debtors or their estates or (ii) the property of any other person that is not a party to such Landlord Agreement. To the extent that there is any inconsistency between the Store Closing Procedures, the Liquidation Consulting Agreement, and this Interim Order on the one hand, and a Landlord Agreement on the other hand, the terms of the Landlord Agreement shall control.

4. Upon entry of this Interim Order, the Debtors may designate or withdraw any additional store as a Closing Store and conduct Store Closing Sales in accordance with the terms of this Order, as well as the terms of the DIP Orders (as defined below), at such Closing Store, by filing a notice of intent to conduct a Store Closing Sale pursuant to this Order (the "**Notice of Intent**") and serving the same by email or overnight mail with a copy of this Order

(which may be provided electronically via website link) on the (i) the Standard Parties as defined in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 139) (the "**Case Management Order**"); (ii) the landlord of the applicable store (the "**Landlord**"); (iii) the counterparties to the subleases and any other leases related to the Closing Stores; (iv) any party known to assert an ownership interest in personal property located at the applicable Closing Store; (v) Cardtronics USA, Inc.; (vi) any party that has filed a UCC-1 statement against or is otherwise known to assert a lien on any personal property located at the applicable Closing Stores; (vii) all parties who may have an interest in any personal property located at the applicable Closing Stores; (viii) the utility providers at each applicable Closing Store; (ix) known government entities with jurisdiction over the operations of the Closing Stores; and (x) any other affected counterparty at the applicable proposed Closing Store (the "**Notice Parties**").

5.     Parties wishing to object will have ten (10) calendar days from the filing and service of the Notice of Intent (the "**Objection Deadline**") to file and serve a written objection (an "**Objection**") to the terms of the Store Closing Procedures and request a hearing on the Objection. If no Objection is filed, upon expiry of the Objection Deadline the Debtors may conduct Store Closing Sales at the Closing Stores in accordance with the terms of this Order, and such stores shall be considered Closing Stores for purposes of this Order and the Store Closing Procedures. If an Objection is timely filed and not withdrawn or resolved (an "**Unresolved Objection**"), the Debtors shall file a notice for a hearing for the Court to consider the Unresolved Objection at the next scheduled omnibus hearing after the Objection Deadline, unless the Debtors, in consultation with the Creditors' Committee, and applicable objecting parties, as applicable, agree to a different hearing date and subject to the Court's schedule or the Court schedules another hearing upon request of the Debtors. If an Objection is filed for fewer

4

than all of the Closing Stores included on the Notice of Intent, the Debtors may proceed with conducting Store Closing Sales in accordance with the Store Closing Procedures for the remaining Closing Stores on the Notice of Intent.

6. The Store Closing Procedures shall apply to all sales of Store Closing Assets at the Closing Stores. To the extent that there is any inconsistency between the Store Closing Procedures and the Liquidation Consulting Agreement on the one hand, and this Interim Order, on the other hand, this Interim Order shall control, and the Store Closing Procedures shall control to the extent that there is any inconsistency between such procedures and the Liquidation Consulting Agreement.

7. The Debtors and any liquidation consultant that the Debtors retain in these chapter 11 cases (each, a "**Liquidation Consultant**"), including Abacus Advisors Group L.L.C. ("**Abacus**") are authorized, but not directed, to transfer the Store Closing Assets among the Closing Stores as well as among the Debtors' stores which are not Closing Stores. The Debtors, in consultation with the Creditors' Committee, and the Liquidation Consultant are authorized to sell or abandon any remaining Store Closing Assets at the Closing Stores; *provided that*, to the extent any such assets remain at the leased premises after the completion of the applicable Store Closing Sales therein and notice by the Debtors to the Notice Parties, such Store Closing Assets shall be deemed abandoned to the affected landlord with the right of the landlord (or its designee) to dispose of such property free and clear of all interests and without notice or liability to any party; *provided further* that the Debtors shall remove any hazardous or toxic materials (as such terms are defined in any applicable federal, state or local law, rule, regulation, or ordinance) from the Closing Stores. Any Landlord or other designee shall be free, notwithstanding the automatic stay, to dispose of abandoned property without notice or liability to any party

5

(including any third parties) and without further notice or order of the Court, and the applicable landlord's rights, if any, to file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest to object to such claims.

8. The Debtors and/or the Liquidation Consultant are authorized (in the case of the Liquidation Consultant, at the Liquidation Consultant's sole cost and expense, and only with the express consent of the Debtors) to supplement the merchandise in the Store Closing Sales with Additional Merchandise. The Liquidation Consultant shall consult with the Debtors with respect to the Additional Merchandise to ensure that the Additional Merchandise is of like kind, and no lesser quality, to the merchandise in the Store Closing Sales and is in categories designed to enhance the Store Closing Sales.

9. Pursuant to section 363(f) of the Bankruptcy Code, the Store Closing Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately before the closing of the applicable sale.

10. All entities that are currently in possession of some or all of the Store Closing Assets in which the Debtors hold an interest that are or may be subject to this Interim Order hereby are directed to surrender possession of such Store Closing Assets to the Debtors.

11. No entity, including utilities, landlords, creditors or any persons acting for or on their behalf (but not Governmental Units (as defined in section 101(27))) shall interfere with

6

or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales; *provided that* the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures, and any Landlord Agreement.

12.    Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; *provided that* the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures, and any applicable Landlord Agreement.

13.    The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases).

14.    For the avoidance of doubt, nothing in this Order or the Store Closing Procedures shall affect Landlord's right to access the Closing Stores during the Store Closing Sales, to the extent permitted under the applicable leases.

15.    Nothing in this Interim Order, the Store Closing Procedures, or the Liquidation Consulting Agreement releases, nullifies, or enjoins the enforcement of any liability

to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order or in the Liquidation Consulting Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtors in possession under the Bankruptcy Code.  The Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").  Nothing in this Interim Order shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise.  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

       16.    To the extent that the Store Closing Sales are subject to any federal, state, or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sales, including laws

restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions, or any fast pay laws, that would otherwise apply solely to store closing or liquidation sales (each a "**Liquidation Sale Law**" and together, the "**Liquidation Sale Laws**"), the following provisions shall apply:

(a) If the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Store Closing Procedures, and any applicable Landlord Agreement, and in light of the provisions in the laws of many local and state laws that exempt court-ordered sales from their provisions, then the Debtors shall be presumed to be in compliance or otherwise excused from compliance with any Liquidation Sale Laws, and are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order without the necessity of compliance with any such Liquidation Sale Laws.

(b) The Debtors shall be presumed to be in compliance with any applicable "fast pay" laws to the extent such payroll payments are made by the later of (i) the Debtors' next regularly scheduled payroll and (ii) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

(c) To the extent there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Liquidation Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws or fast pay laws (a "**Reserved Dispute**"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within twenty-one (21) days following service of, with respect to the Initial Closing Stores, this Interim Order, and with respect to any additional Closing Stores, the applicable Notice of Intent, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Creditors' Committee so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors, in consultation with the Creditors' Committee, and the Governmental Unit are unable to resolve the Reserved Dispute within twenty-one (21) days after service of the Interim Order or notice, as applicable, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "**Dispute Resolution Motion**").

9

      (d)      In the event a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtors, a Landlord, or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Interim Order nor the conduct of the Debtors pursuant to this Interim Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Order or to limit or interfere with the Debtors' or the applicable Liquidation Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order, absent further order of this Court. The Court grants authority for the Debtors and the applicable Liquidation Consultant to conduct the Store Closing Sales pursuant to the terms of this Interim Order, the Liquidation Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

      (e)      If, at any time, a dispute arises between the Debtors and/or the applicable Liquidation Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*;

      17.      The Debtors shall indemnify and hold Landlords harmless from any and all costs, fines, and attorney's fees which Landlords are required to pay or expend in defense of citations from local authorities as a result of the conduct of Store Closing Sales and the signage employed therein in the event that the local authorities do not withdraw such citations.

      18.      The Debtors shall be entitled to use sign walkers, hang signs, or interior or exterior banners advertising the Store Closing Sales in accordance with the Store Closing Procedures and any applicable Landlord Agreement, without further consent of any person. If the

10

use of banners and sign walkers is done in a safe and responsible manner, then such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of General Laws.

19. Subject to the relief above, each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all landlords and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Interim Order as binding authority to conduct and advertise the Store Closing Sales in accordance with this Interim Order.

20. State and local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Closing Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with state or local law; *provided that* the Store Closing Sales are conducted and advertised in a manner contemplated by this Interim Order.

21. All of the Store Closing Sales shall be "as is" and final. However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of such goods or the use of the terms "as is" or "final sales." As to the Closing Stores, the Debtors shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, *provided that* the consumer must return the merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Returns, if permitted, related to the purchase of Store Closing Assets shall not be accepted at stores that are not participating in the Store Closing Sales.

22. The Debtors are directed to remit all taxes arising from the Store Closing Sales at the Closing Stores to the applicable Governmental Units as and when due, *provided that*

in the case of a bona fide dispute the Debtors are directed to pay only such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

23. Nothing in the Store Closing Procedures shall relieve the Debtors of their obligations under the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191.

24. Nothing contained herein shall modify the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code.

25. Nothing in this Order, the Store Closing Procedures, Liquidation Consulting Agreement, or the Debtors' execution of Store Closing Sales in accordance with this Interim Order, shall be deemed to authorize or shall be argued to permit the Debtors, their agents or advisors to take any action in connection with the Store Closing Sales or the relief granted in this Order that is not in compliance with, or that would result in a default or breach under, any master lease to which a Debtor is a party (each such lease, a "**Master Lease**"), without either (a) an amendment to or waiver under such Master Lease, in accordance with its terms and all consents required for such amendment or waiver under such Master Lease or (b) the entry of a further order of the Court, in either case, permitting such action; and all rights, remedies and positions of all parties to any Master Leases are preserved.

**Liquidation Consulting Agreement**

26.     The Debtors' assumption of the Liquidation Consulting Agreement, a copy of which is attached hereto as **Exhibit 3**, is hereby approved on an interim basis.  The Debtors are authorized to act and perform in accordance with the terms of the Liquidation Consulting Agreement.

27.     Upon entry of this Interim Order, so long as the Creditors' Committee has not filed an objection to the assumption of the Liquidation Consulting Agreement within five (5) business days of entry of this Interim Order, the Debtors will pay to Abacus prepetition amounts outstanding as of the Commencement Date.  All other existing defaults of the Debtors under the Liquidation Consulting Agreement are hereby deemed to be cured.

28.     Abacus shall comply with and promptly file a declaration in accordance with Bankruptcy Rule 2014.

29.     All amounts payable to Abacus under the Liquidation Consulting Agreement shall be payable to Abacus without the need for any application of Abacus therefor or any further order of the Court; *provided that* Abacus shall (a) file a final fee application with a summary of fees earned and expenses incurred along with a summary of what fees and expenses have been paid, and (b) submit invoices to the Debtors, the Office of the U.S. Trustee for Region 2, the Creditors' Committee, and the DIP lenders for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Liquidation Consulting Agreement when such compensation becomes due and owing and such expenses are incurred, including disclosure of the calculation of such fees and a list of the expenses being sought for reimbursement.  Such parties shall have fifteen (15) days to review and dispute any such invoice submitted by Abacus, which disputes shall be decided by the Court unless resolved by the parties, and if no such

disputes are received, without any further order of the Court, the Debtors shall be authorized to pay such Abacus invoices in accordance with the terms of the engagement agreement.

30. To the extent the Debtors elect to terminate the Liquidation Consulting Agreement with Abacus in accordance with the terms thereof, such termination shall not give rise to any damages payable to Abacus other than any fees accrued or expenses incurred prior to the effective date of such termination.

31. Subject to the terms of this Interim Order and the proposed Store Closing Procedures, the Debtors and Abacus are hereby authorized to take any and all actions as may be necessary or desirable to implement the Liquidation Consulting Agreement and all other actions authorized by this Interim Order, including conducting Store Closing Sales at the Closing Stores, including the Initial Closing Stores; and any actions taken by the Debtors and Abacus necessary or desirable to implement the Liquidation Consulting Agreement or the Store Closing Sales prior to the date of this Interim Order, are hereby approved and ratified; *provided that*, Closing Stores that are not Initial Closing Stores may be closed under the terms of the Interim Order and the Liquidation Consulting Agreement, or in accordance with any other agreement approved by the Debtors subject to the approval rights of the DIP ABL Agents under the terms of the DIP Loan Documents.

32. All Liquidation Consultants shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors before the commencement of the Store Closing Sales in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Commencement Date, and accept returns of merchandise sold by the Debtors before the commencement of the Store Closing Sales for the first thirty (30) days

of the Store Closing Sales, *provided that* such returns are otherwise in compliance with the Debtors' return policies in effect as of the date such items were purchased.

33. Nothing herein shall prevent or be construed to prevent any Liquidation Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Liquidation Consulting Agreement pursuant to any agency agreement, asset purchase agreement, or otherwise ("**Additional Assets**"). All Liquidation Consultants (individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such services, guarantee transaction, or acquisition is approved by separate order of the Court.

## Consignment Merchandise

34. The Debtors are authorized to sell goods and merchandise shipped to the Debtors pursuant to a consignment agreement with a consignment vendor, whether delivered to the Debtors prepetition or postpetition (the "**Consignment Merchandise**"), in connection with the Store Closings or any other sale by the Debtors of Consigned Merchandise and, notwithstanding any other provision of the Interim Order, consignment vendors shall be paid in the ordinary course of business from the allocable proceeds solely from the postpetition sale of such Consignment Merchandise in accordance with the terms of the applicable consignment agreements (the "**Vendor Proceeds**"), whether such goods were delivered to the Debtors prepetition or postpetition. The Debtors are directed to establish a separate, segregated account which shall be funded with the reported amount of Vendor Proceeds and all payments made to

consignment vendors shall be made from such account (the "**Reserve Account**"), with the Vendor Proceeds therein to be held in trust for the benefit of the Consignment Vendors.

35. For the avoidance of doubt, notwithstanding anything to the contrary in the Interim DIP Order or the Final DIP Order, any properly perfected, noticed and valid consignment interest (as defined under the Uniform Commercial Code (the "**UCC**")) in and to the Consignment Merchandise or Consignment Merchandise shipped postpetition pursuant to this Interim Order, and, pursuant to this Interim Order, the Vendor Proceeds and the Reserve Account shall not be subject to any DIP Liens or Adequate Protection Liens (each as defined in the Interim DIP Order) granted under the Interim DIP Order or the Final DIP Order.

36. Subject to first seeking appropriate relief from the Court or agreement of the Debtors (after notice to the DIP Lenders and the Prepetition Credit Parties (as defined in the Interim DIP ABL Order)), consignment vendors shall have the right to reclaim any Consignment Merchandise at the earlier of (i) the conclusion of any store closing sale at the location where such Consignment Merchandise is being sold, and (ii) upon receipt of any request for return of Consignment Merchandise that is validly delivered in accordance with any agreement governing such consignment.

37. Notwithstanding the foregoing, all parties' rights as to the priority of any security interest or other interest in Consignment Merchandise and the proceeds thereof are preserved and shall be resolved by mutual written agreement or by order of the Court before the return of any Consignment Merchandise, and nothing herein shall impair the rights of the Debtors or any other party in interest from seeking the recovery, clawback and/or disgorgement of any payments made to consignment vendors, and consignment vendors retain all rights and defenses with respect to any such actions.

38. The Debtors and the DIP Lenders shall agree on appropriate reporting on the inventory from consignment vendors who have been identified to the DIP Lenders (the "**Designated Consignment Vendors**") and any Consignment Vendor who requests a copy thereof (limited to the portion of any such report relating to such Consignment Vendor), which inventory shall be excluded from any borrowing base under the DIP Credit Agreement, and appropriate reporting on amounts due to such Designated Consignment Vendors from the postpetition sale thereof, which shall be part of the calculated Availability Reserves (as defined in the DIP Credit Agreement).

39. The provisions of this order with respect to the consignment vendors are entered on a final basis and shall be binding on the Debtors, any assignee or successor, and any trustee or the DIP Lenders.

### General Provisions

40. Nothing contained in the Motion or this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

41. Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

42. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

43. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

44. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry, for cause.

45. This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; *provided that*, the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

46. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

47. Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"), (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities, and (iii) the Approved Budget (as defined in the DIP Orders).

48. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

49. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

50. The Final Hearing on the Motion shall be held on **November 15, 2018, at 10:00 a.m. (Prevailing Eastern Time)**, and any objections or responses to the Motion shall be in writing, filed with the Court, and served in accordance with the Case Management Order, with a copy to the Court's chambers, in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on November 8, 2018**.

Dated: October 26, 2018
      White Plains, New York

                                          /s/ Robert D. Drain
                                          THE HONORABLE ROBERT D. DRAIN
                                          UNITED STATES BANKRUPTCY JUDGE