**Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time: November 2, 2018 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re                                    :
                                         :          **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*   :
                                         :          **Case No. 18-23538 (RDD)**
                                         :
                Debtors.[1]              :          **(Jointly Administered)**
-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF HEARING ON APPLICATION OF
DEBTORS FOR ENTRY OF ORDER
(A) AUTHORIZING THE EMPLOYMENT AND RETENTION
OF LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER
TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE *NUNC
PRO TUNC* TO THE COMMENCEMENT DATE, (B) MODIFYING CERTAIN
TIME-KEEPING REQUIREMENTS AND (C) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the annexed Application (the

"**Application**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**), for entry of order

(a) authorizing the employment and retention of Lazard Frères & Co. LLC as investment banker

to the Debtors and debtors in possession, effective nunc pro tunc to the Commencement Date,

(b) modifying certain time-keeping requirements and (c) granting related relief, all as more fully

set forth in the Application,[2] will be held before the Honorable Robert D. Drain, United States

Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York,

Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy

Court**") on **November 15, 2018 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon

thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the

"**Objections**") to the Application shall be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court,

including attorneys admitted pro hac vice, electronically in accordance with General Order M-399

(which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-

ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to

---

[2]      Capitalized terms used but not defined herein shall have the meaning set forth in the Application.

Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures*, entered on October 17, 2018 (ECF No. 139), so as to be filed and received no later than **November 2, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.**

**PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.**

Dated: October 26, 2018
     New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time: November 2, 2018 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x

In re:                                    :    Chapter 11
                                          :
SEARS HOLDINGS CORPORATION, *et al.*,[1]   :    Case No. 18-23538 (RDD)
                                          :
                              Debtors.    :    (Jointly Administered)
                                          :
                                          :
                                          :
                                          :
----------------------------------------------------------- x

### APPLICATION OF DEBTORS FOR ENTRY OF ORDER (A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE *NUNC PRO TUNC* TO THE COMMENCEMENT DATE, (B) MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS AND (C) GRANTING RELATED RELIEF

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (the "**Application**"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

### Relief Requested

1.        By this Application, the Debtors request, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), entry of an order (i) authorizing the employment and retention of Lazard Frères & Co. LLC ("**Lazard**") as investment banker to the Debtors, effective *nunc pro tunc* to the Commencement Date (as defined herein), (ii) modifying certain time-keeping requirements and (iii) granting related relief, in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Lazard dated as of October 11, 2018 (the "**Engagement Letter**") and the related indemnification letter between the parties dated as of January 17, 2018 (the "**Indemnification Letter**").

2.        A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").   Copies of the Engagement Letter and the Indemnification Letter are annexed to the Proposed Order as **Exhibit 1** and **Exhibit 2**, respectively.

3.        In support of this Application, the Debtors submit the *Declaration of Brandon Aebersold in Support of Application of Debtors for Entry of Order (A) Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Investment Banker to the Debtors and Debtors in Possession, Effective nunc pro tunc to the Commencement Date, (B) Modifying Certain Time-Keeping Requirements and (C) Granting Related Relief*, a copy of which is annexed hereto as **Exhibit B** (the "**Aebersold Declaration**").

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.      On October 15, 2018, (the "**Commencement Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

6.      The Debtors' cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

7.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on the Commencement Date (the "**Riecker Declaration**") (ECF No. 3).

## Lazard's Qualifications

8.      In light of the size and complexity of these chapter 11 cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of Lazard to assist them in pursuing the transactions that are crucial to the Debtors and these chapter 11 cases. An investment banker, such as Lazard, fulfills a critical role, complementing the services provided by the Debtors' other professionals. The Debtors believe

that retaining Lazard as their investment banker is in the best interests of their estates and stakeholders because, among other things, Lazard has extensive experience in, and an excellent reputation for, providing investment banking and financial advisory services to debtors in bankruptcy reorganizations and other restructurings.

9.    Lazard and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 cases. Lazard's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex reorganizations, including within the retail industry.  Indeed, since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtors' assets.  Moreover, Lazard's professionals have been retained as investment bankers in a number of troubled company situations, including, among others, the following chapter 11 cases:  *In re Claire's Stores, Inc.*, No. 18-10584 (Bankr. D. Del. 2018);  *In re FirstEnergy Solutions Corp.*, No. 18-50757 (Bankr. N.D. Ohio 2018); *In re CGG Holding (U.S.) Inc.*, No. 17-11637 (MG) (Bankr. S.D.N.Y. 2017); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. 2017); *In re The Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. 2017); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. 2017); *RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del. 2016); *In re LINN Energy, LLC*, No. 16-60040 (Bankr. S.D. Tex. 2016); *In re Peabody Energy Corp.*, No. 16-42529 (Bankr. E.D. Mo. 2016); *In re Paragon Offshore plc*, No. 16-10386 (CSS) (Bankr. D. Del. 2016); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. 2015); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. 2015); *In re Chassix Holdings, Inc.*, No. 15-10578 (MEW) (Bankr. S.D.N.Y. 2015); *In re Dendreon Corp.*, No. 14-12515 (LSS) (Bankr. D. Del. 2014); *In re Legend Parent, Inc.*, No. 14-10701 (RG) (Bankr. S.D.N.Y. June 10, 2014); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC)

(Bankr. D. Del. 2014); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. 2014). Accordingly, Lazard has developed significant relevant experience and expertise that will enable Lazard and its professionals to provide necessary investment banking services in these chapter 11 cases.

10.    Additionally, Lazard is already familiar with the Debtors and their operations as Lazard has been engaged by the Debtors on various matters since December 2017.[2] Among other things, Lazard has advised and assisted the Debtors in connection with (a) negotiations with certain of the Debtors' various creditor constituencies regarding the commencement of these chapter 11 cases and (b) securing debtor-in-possession financing. In providing the foregoing and other prepetition services, Lazard has worked closely with the Debtors, their management, and their other advisors and has become well acquainted with, among other things, the Debtors' operations, business needs and capital structure. Thus, Lazard is particularly suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Letter and described herein.

### Services to Be Rendered

11.    Lazard has agreed to continue to provide services to the Debtors in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter and the Indemnification Letter. The terms of the Engagement Letter reflect the mutual agreement between the Debtors and Lazard as to the substantial efforts that may be required of Lazard throughout the course of these proceedings. The Engagement Letter provides, in consideration for

---

[2]    The October 11, 2018 Engagement Letter supersedes two prior engagement letters between the Debtors and Lazard dated as of January 17, 2018 and September 17, 2018.

the compensation contemplated thereby, that Lazard will, to the extent reasonably requested by the Debtors, render the following investment banking services (collectively, the "**Services**"):[3]

    (a)    Reviewing and analyzing the Company's assets, liabilities, business operations, financial statements, liquidity, financial condition, business plans, forecasts and financial projections;

    (b)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

    (c)    Providing advice and assistance in analyzing and sensitizing the Company's financial projections based on alternative scenarios;

    (d)    Evaluating options relating to a Restructuring and/or other strategic alternatives for the Company;

    (e)    Assisting in the determination of a capital structure for the Company;

    (f)    Assisting in the determination of a range of values for the Company on a going concern basis;

    (g)    Advising and assisting the Company on negotiating with the Stakeholders, including advising on tactics and strategies;

    (h)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

    (i)    Advising the Company on the timing, nature, and terms of new securities, indebtedness or other consideration or other inducements to be offered pursuant to any Restructuring;

    (j)    Advising and assisting the Company in evaluating any potential Financing by the Company, and, subject to Lazard's agreement to so act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

---

[3]   In the event of any inconsistency between the description of the Services as set forth herein and the Engagement Letter, the Engagement Letter shall control. Also, capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

(k)     Subject to Lazard's agreement so to act, assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

(l)     Assisting the Company in preparing documentation within our area of expertise that is required with any Restructuring, and, if requested by the Company, any Financing, or Sale Transaction; for the avoidance of doubt, a Sale Transaction includes the process of identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

(m)     Attending meetings of the Board of Directors of the Company to discuss matters on which Lazard has been engaged to advise under the Engagement Letter;

(n)     Preparing valuation analysis, if necessary, in connection with any Restructuring, and, if requested by the Company, any Financing or Sale Transaction (for which we have agreed to so act);

(o)     Assisting the Board of Directors of Sears Holdings Corporation in connection with the evaluation of any Restructuring, Financing or Sale Transaction;

(p)     Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise under the Engagement Letter in any proceeding before the Court; and

(q)     Providing the Company with other financial restructuring advice or services as may from time to time be reasonably requested by the Company in connection with the foregoing.

12.     The aforementioned Services are necessary to enable the Debtors to maximize the value of their estates. Additionally, the Debtors have been advised by Lazard that it will endeavor to coordinate with the other retained professionals in these chapter 11 cases to eliminate unnecessary duplication or overlap of work.

## **Professional Compensation**

13.     Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the Debtors will compensate Lazard in accordance with

the terms and provisions of the Engagement Letter, which provides a compensation structure (the

"**Fee and Expense Structure**") in relevant part as follows:[4]

(a)    A monthly fee of $200,000 (the "**Monthly Fee**") payable on October 15, 2018 and the fifteenth day of each month thereafter until the termination of Lazard's engagement. Fifty percent (50%) of all Monthly Fees paid beginning with the Monthly Fee earned on May 15, 2019 shall be credited once (without duplication) against any Restructuring Fee, Sale Transaction Fee or Financing Fee subsequently payable; provided, however, such credit shall be reduced to the extent such Restructuring Fee, Sale Transaction Fee or Financing Fee is not approved in full by the Court.

(b)    A fee, payable upon the consummation of a Restructuring, equal to 55.0 basis points (0.55%) of the principal amount of the Existing Obligations involved in such Restructuring (the "**Restructuring Fee**"); provided, however, that the portion of any Existing Obligations owned by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pensions plans shall not be included when calculating the Restructuring Fee payable.

(c)    A fee, payable upon the consummation of a Financing, equal to 55.0 basis points (0.55%) of the aggregate principal amount of new securities, instruments or obligations of the Company (including the committed amount of any new committed revolving credit facilities) incurred in such Financing (the "**Financing Fee**"); provided, however, that the portion of any such amount funded or committed by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pension plans shall not be included when calculating the Financing Fee payable; provided further that neither the consensual use of cash collateral not the consummation of a roll-up or roll-over portion of any credit facility shall in and of itself give rise to any Financing Fee; provided, further, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon execution of a definitive agreement with respect to the Financing.

(d)    A fee, payable upon consummation of a Sale Transaction, equal to 55.0 basis points (.55%) of the Aggregate Consideration (as defined

---

[4]    In the event of any inconsistency between the description of the Fee and Expense Structure as set forth herein and the Engagement Letter, the Engagement Letter shall control.

on Schedule 2 to the Engagement Letter) paid in such Sale Transaction (the "**Sale Transaction Fee**");

(e)    In addition to any fees that may be payable to Lazard, and regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all reasonable and reasonably documented or itemized expenses incurred by Lazard (including travel and lodging, data-processing and communications charges, courier services, and other expenditures) and the reasonable and documented fees and expenses of a single primary legal counsel, if any, retained by Lazard; provided that Lazard shall not be reimbursed for out-of-pocket expenses incurred in excess of $50,000 in the aggregate absent express prior written consent of the Debtors, which consent shall not be unreasonably withheld. For the avoidance of any doubt, the expense limitations set forth in this subparagraph shall not apply to the Indemnification Letter.

For the avoidance of doubt, more than one fee may be payable pursuant to clauses (b), (c) and (d) above.  However, only one fee shall be payable pursuant to clauses (b), (c) and (d) above with respect to any particular portion of the Existing Obligations, which fee shall be the greatest of such fees.  In addition, the aggregate fees payable to Lazard pursuant to the Engagement Letter (including any Tail Fee but excluding any Monthly Fees) shall not exceed $12,500,000.00.[5]

14.    The Debtors believe that the Fee and Expense Structure described above is comparable to compensation generally charged by other firms of similar stature to Lazard for comparable engagements, both in and out of bankruptcy.  The Debtors also understand that the Fee and Expense Structure is consistent with Lazard's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined.  Additionally, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Lazard expects to undertake, as well as the potential for failure.  The Debtors thus believe that the Fee and Expense Structure is reasonable.

---

[5]  The Engagement Letter also provides for a certain Amendment Fee.  The Debtors and Lazard, however, do not believe any such fee will arise given the commencement of these chapter 11 cases.

15.     In determining the level of compensation to be paid to Lazard and its reasonableness, the Debtors compared Lazard's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases.  The Fee and Expense Structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of Lazard and its professionals, that such commitment may foreclose other opportunities for Lazard, and that the actual time and commitment required of Lazard and its professionals to perform the services set forth in the Engagement Letter may vary substantially from week to week or month to month.

16.     The Debtors also submit that Lazard has obtained valuable institutional knowledge of the Debtors' businesses, financial affairs and creditors as a result of its providing services to the Debtors before the Commencement Date.  Therefore, Lazard is not only well qualified, but also uniquely able to perform these services and assist the Debtors in these chapter 11 cases.  Moreover, the Debtors believe that Lazard's services will assist the Debtors in achieving a successful outcome of these chapter 11 cases.

17.     Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were important factors in determining the Fee and Expense Structure.  Indeed, the Debtors believe that the ultimate benefit of Lazard's services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.

18.     The Debtors have been advised by Lazard that it is not the general practice of investment banking and financial services firms to keep detailed time records similar to those customarily kept by attorneys, nor do such investment banking and financial services firms keep

13

time records on a "project category" basis.  Notwithstanding the foregoing, Lazard intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. Because Lazard does not ordinarily maintain contemporaneous time records in one-tenth-hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, Lazard will file time records in half-hour (.5) increments.  Lazard also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above. Lazard's applications for compensation and expenses will be paid by the Debtors upon approval by this Court.[6]

19.    In sum, in light of the foregoing and given the numerous issues that Lazard is addressing and may be required to address in the performance of its services in these cases, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagements of this nature, both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

20.    Accordingly, as more fully described below, the Debtors believe that this Court should approve Lazard's retention subject solely to the standard of review set forth in section

---

[6]  The Debtors request that they be permitted to pay Lazard's fees and expenses as and when due in accordance with the Engagement Letter, and without the filing of any monthly fee statements, given the fixed nature of Lazard's proposed compensation.  Lazard's fees and expenses, however, will be set forth in all quarterly and final fee applications.

328(a) of the Bankruptcy Code and that Lazard's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

### Indemnification Provisions

21.     As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, exculpation, contribution, reimbursement and other obligations as described in the Indemnification Letter. Generally, these provisions provide that the Debtors will, among other things, indemnify, hold harmless, and provide contribution and reimbursement to Lazard and its affiliates, and the respective directors, officers, members, employees, agents or controlling persons of each of the foregoing under certain circumstances.[7]

22.     The Debtors believe that these indemnification and related provisions, as modified by the Proposed Order, are customary and reasonable for financial advisory and investment banking engagements, both in- and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary in this District and other jurisdictions. Similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this jurisdiction.

23.     The Debtors and Lazard negotiated the terms of the Engagement Letter and Indemnification Letter at arm's length, and the Debtors respectfully submit that the Indemnification Letter is reasonable and in the best interests of the Debtors, their estates and their creditors.  Accordingly, as part of this Application, the Debtors request that this Court approve the terms of the Indemnification Letter.

---

[7]     To the extent there is any inconsistency between this Application's summary of the Indemnification Letter provisions and the actual terms of the Indemnification Letter, the terms of the Indemnification Letter shall control.

**No Duplication of Services**

24.    The Debtors intend that the services to be provided by Lazard will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases.  Lazard understands that the Debtors have retained and may retain additional professionals during these cases and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**Disinterestedness**

25.    To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Aebersold Declaration, Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their estates in connection with the matters for which Lazard is to be retained by the Debtors.

26.    During the 90 day period prior to the Commencement Date, Lazard was paid in the ordinary course certain fees and expense reimbursements.  Specifically, Lazard was paid (i) $200,000.00 on October 8, 2018 on account of its September Monthly Fee; and (ii) $210,675.68 on October 12, 2018, on account of its October Monthly Fee and related expenses.

**Relief Requested Should Be Granted**

27.    The Debtors seek authority to employ and retain Lazard as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code as those sections relate to cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section

16

327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

28.    The Debtors also seek approval of the Fee and Expense Structure, the Engagement Letter and the Indemnification Letter pursuant to section 328(a) of the Bankruptcy Code, which provides that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions.

29.    Section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals. Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. National Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* (internal citations omitted).

Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

17

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). These changes make clear that the Debtors may retain, with Court approval, a professional on a fixed or percentage fee basis such as the Fee and Expense Structure provided for in the Engagement Letter.

30.    The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter contains reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects (a) the nature of the services to be provided by Lazard and (b) fee and expense structures and indemnification provisions typically utilized by Lazard and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees based on the successful raises of new capital and the overall success of these chapter 11 cases. Moreover, Lazard's substantial experience with respect to investment banking services, coupled with the nature and scope of work already performed by Lazard before the Commencement Date, further supports the reasonableness of the Fee and Expense Structure.

31.    Courts in this jurisdiction have approved relief similar to the relief requested in this Application. *See, e.g.*, *In re Avaya Inc.*, Case No. 17-10089 (Bankr. S.D.N.Y. April 10, 2017); *In re Brietburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 12, 2016); *In re The Great Atl. & Pac. Tea Co.*, Inc., No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Chassix Holdings, Inc.*, No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 20, 2015); *In re Sabine Oil*

*& Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015), *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. Apr. 28, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014).

## <u>Notice</u>

32.     Notice of this Motion will be provided in accordance with the procedures set forth in the Order Implementing Certain Notice and Case Management Procedures (ECF No. 139) (the "Case Management Order").  The Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[remainder of page intentionally left blank]

WHEREFORE the Debtors respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just

and appropriate.

Dated: October 26, 2018
       New York, New York

SEARS HOLDINGS CORPORATION
(for itself and on behalf of its debtor affiliates
as Debtors and Debtors in Possession)


/s/ Mohshin Meghji
NAME: Mohshin Meghji
TITLE:  Chief Restructuring Officer

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
SEARS HOLDINGS CORPORATION, et al.,[1]                       :    Case No. 18-23538 (RDD)
                                                             :
                        Debtors.                             :    (Jointly Administered)
                                                             :
                                                             :    Re: Docket No. _____
------------------------------------------------------------ x
```

## ORDER (A) AUTHORIZING THE
### EMPLOYMENT AND RETENTION OF LAZARD
### FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE
### DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE *NUNC*
### *PRO TUNC* TO THE COMMENCEMENT DATE, (B) MODIFYING CERTAIN
### TIME KEEPING REQUIREMENTS AND (C) GRANTING RELATED RELIEF

Upon consideration of the application (the "**Application**")[2] of the Debtors for entry

of an order (this "**Order**") (i) authorizing the Debtors to retain and employ Lazard Frères & Co.

LLC ("**Lazard**") as their investment banker, *nunc pro tunc* to the Commencement Date, on the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]    Capitalized terms used, but not otherwise defined herein, shall have their meanings ascribed to such terms in the Application.

terms and conditions set forth herein and in the engagement agreement between Lazard and Sears

Holdings Corporation dated as of October 11, 2018 (the "**Engagement Letter**") and related

indemnification agreement between the parties dated as of January 17, 2018 (the "**Indemnification**

**Letter**"), (ii) modifying certain time-keeping requirements as set forth below, and (iii) granting

related relief.; and the Court having reviewed the Application and the Aebersold Declaration; and

this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the Southern District of*

*New York* dated January 31, 2012; and that this Court may enter a final order consistent with Article

III of the United States Constitution; and this Court having found that venue of this proceeding

and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this

Court having found that the notice of the Application and opportunity for a hearing thereon were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Application and having heard the statements in support of the relief requested therein

at a hearing before this Court; and this Court having determined that the legal and factual bases set

forth in the Application and at the hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth in this Order *nunc pro tunc* to the

Commencement Date.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code, to engage Lazard as their investment banker in these chapter 11 cases, *nunc pro*

*tunc* to the Commencement Date, pursuant to the terms of the Engagement Letter and the

Indemnification Letter, which are annexed hereto as **Exhibit 1** and **Exhibit 2** respectively**.**

3.      All of Lazard's compensation as set forth in the Engagement Letter and the Indemnification Letter including, without limitation, the Monthly Fee, the Restructuring Fee, the Financing Fee and the Sale Transaction Fee, and the expense reimbursement and indemnification and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and Lazard shall be compensated, reimbursed and indemnified pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Letter and Indemnification Letter.

4.      Lazard shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court, provided that Lazard shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that Lazard's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code; provided that fees and expenses shall be paid by the Debtors as and when due as set forth in the Engagement Letter without the need to file monthly fee statements; provided, further that, for the avoidance of doubt, such fees and expenses shall be subject to review and approval in any quarterly interim and final fee applications.

5.      Notwithstanding anything to the contrary herein, the Office of the United States Trustee for the Southern District of New York shall have the right to object to Lazard's interim and final fee applications (including expense reimbursement) on all grounds, including the reasonableness standard provided in section 330 of the Bankruptcy Code.

6.      Lazard shall be excused from keeping time records for services rendered in one-tenth-hour (.1) increments, and instead shall only be required to maintain time records in half-hour (.5) increments in summary format.

7.      None of the fees payable to Lazard shall constitute a "bonus" or fee enhancement under applicable law.

8.      The indemnification, exculpation, contribution, reimbursement and related provisions set forth in the Engagement Letter and Indemnification Letter are approved, subject during the pendency of these chapter 11 cases to the following:

(a)      All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the Indemnification Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court; provided that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person.

(b)      In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter or the Indemnification Letter if the Debtors or a representative of the Debtors' estates asserts a claim for, and the Court determines by final order that such claim primarily arose out of, the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person.

(c)      In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Letter, the invoices and supporting time records from such attorneys shall be annexed to Lazard's own interim and final fee applications, and such invoices and time records shall be subject to the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases and the approval of the Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

4

9.      Subject to the requirements of Paragraph 4 above regarding the filing of interim and final fee applications, and notwithstanding anything to the contrary in the Application, the Engagement Letter or the Aebersold Declaration, and Financing Fee payable pursuant to the Engagement Letter shall be payable upon the consummation of the applicable Financing Transaction.

10.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, the Indemnification Letter, and this Order, the terms of this Order shall govern.

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

12.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: November __, 2018

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**



Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10112

As of October 11, 2018

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Attention:    Mr. Mohsin Y. Meghji
              Chief Restructuring Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Sears Holdings Corporation ("Sears") and its controlled subsidiaries (collectively with Sears and any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its investment banker to provide Sears with general restructuring advice and to advise it in connection with any Restructuring, Financing and/or Sale Transaction (each as defined below) on the terms and conditions set forth herein.  As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (any Restructuring of Sears or any of its subsidiaries pursuant to Chapter 11 of the United States Bankruptcy Code, a "Bankruptcy Process")), repayment and/or recapitalization of all or a portion of the Company's outstanding indebtedness for borrowed money (including bank debt and bond debt) and letters of credit (regardless of whether drawn) and other on and off balance sheet indebtedness, leases (both on and off balance sheet) or other liabilities (collectively, the "Existing Obligations"), including the Company's Existing Debt Obligations (as defined on Schedule 1 attached hereto), that is achieved, without limitation, through (i) a solicitation of waivers and consents from the holders of Existing Obligations (collectively, together with the Company's equityholders, the "Stakeholders"); (ii) any extension of the maturities of all or a portion of the Existing Obligations; (iii) any change in the interest rates or other significant terms of all or a portion of the Existing Obligations that is favorable to the Company; (iv) any repurchase, settlement, repayment (through proceeds from sales of assets or otherwise) or forgiveness of all or a portion of the Existing Obligations; (v) any conversion of all or a portion of the Existing Obligations into assets or equity; or (vi) any exchange offer involving the issuance of new securities in exchange for Existing Obligations.  For purposes hereof, no Sale Transaction shall in and of itself constitute a Restructuring.

*Description of Services:*

1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

(a)    Reviewing and analyzing the Company's assets, liabilities, business, operations, financial statements, liquidity, financial condition, business plans, forecasts and financial projections;

(b)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)    Providing advice and assistance in analyzing and sensitizing the Company's financial projections based upon alternative scenarios;

(d)    Evaluating options relating to a Restructuring and/or other strategic alternatives for the Company;

(e)    Assisting in the determination of a capital structure for the Company;

(f)    Assisting in the determination of a range of values for the Company on a going concern basis;

(g)    Advising and assisting the Company on negotiating with the Stakeholders, including advising on tactics and strategies;

(h)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(i)    Advising the Company on the timing, nature, and terms of new securities, indebtedness or other consideration or other inducements to be offered pursuant to any Restructuring;

(j)    Advising and assisting the Company in evaluating any potential Financing[1] by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

(k)    Subject to Lazard's agreement so to act, assisting the Company in identifying and evaluating candidates for any potential Sale Transaction,

---

[1] As used in this Agreement, the term "Financing" means any public or private issuance, sale, or placement of newly-issued (including any sale or placement of securities currently held in treasury) equity, equity-linked or debt securities or bank debt (including (i) committed revolving credit facilities and (ii) any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code).

advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction[2];

(l)    Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring, and, if requested by the Company, any Financing or Sale Transaction (for which we have agreed to so act);

(m)    Attending meetings of the Board of Directors of Sears with respect to matters on which we have been engaged to advise hereunder;

(n)    Preparing valuation analyses, if necessary, in connection with any Restructuring, and, if requested by the Company, any Financing or Sale Transaction (for which we have agreed to so act);

(o)    Assisting the Board of Directors of Sears in connection with the evaluation of any Restructuring, Financing or Sale Transaction;

(p)    Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(q)    Providing the Company with other financial restructuring advice or services as may from time to time be reasonably requested by the Company in connection with the foregoing.

*Fees:*

2.   As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)    A monthly fee of $200,000 (the "Monthly Fee"), payable in advance on the 15th day of each month commencing with October 15, 2018 until the earlier of the termination of Lazard's engagement pursuant to Section 10. Fifty percent (50%) of the Monthly Fees paid with respect to period commencing on May 15, 2019 shall be credited (without duplication) against any Restructuring Fee, Financing Fee, or Sale Transaction Fee subsequently payable; provided, further, that, in the event of a Bankruptcy Process, to the extent that such Restructuring Fee, Financing Fee or Sale Transaction Fee

---

[2] As used in this Agreement, the term "Sale Transaction" means (a) any acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with a third party; (b) any acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended, and shall also include current Stakeholders), of equity interests or options, or any combination thereof, constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers (including current Stakeholders) of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party (including current Stakeholders). For the avoidance of doubt, no issuance of convertible debt obligations (or any issuance of equity as a result of the conversion of such convertible debt obligations) in exchange for Existing Debt Obligations shall in and of itself constitute a Sale Transaction.

are not approved in entirety by the Bankruptcy Court, if applicable, the amount of such credit shall be reduced by the shortfall in approved fee.

(b)     A fee, payable upon the effectiveness of each amendment of the Existing First Lien Credit Facility that does not constitute a Restructuring and is not completed through a Bankruptcy Process with respect to the amendment that is currently being negotiated with the agents and lenders thereunder, in the amount of $350,000 (the "Amendment Fee").

(c)     A fee, payable upon the consummation of a Restructuring, equal to 55.0 basis points (0.55%) of the principal amount of the Existing Obligations involved in such Restructuring (the "Restructuring Fee"); provided, however, that the portion of any Existing Obligations owned by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pension plans shall not be included when calculating the In-Court Restructuring Fee payable.

(d)     A fee, payable upon consummation of a Financing, equal to 55.0 basis points (0.55%) of the aggregate principal amount of new securities, instruments or obligations of the Company (including the committed amount of any new committed revolving credit facilities) incurred in such Financing (the "Financing Fee"); provided, however, that the portion of any such amount funded or committed by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pension plans shall not be included when calculating the Financing Fee payable; provided that neither the consensual use of cash collateral nor the consummation of a roll-up or roll-over portion of any credit facility shall in and of itself give rise to any Financing Fee; provided, further, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the execution of a definitive agreement with respect to the Financing; and, provided, further, that to the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect to all or any portion of such Financing (or all or any portion of such Financing is for any other reason not available), Lazard shall return to the Company the portion of such fee relating to the portion of such Financing that is not so approved or for any other reason not available (less any Monthly Fees that have accrued and not been paid).

(e)     A fee, payable upon consummation of a Sale Transaction, equal to 55.0 basis points (0.55%) of the Aggregate Consideration (as defined on Schedule 2 attached hereto) paid in such Sale Transaction (the "Sale Transaction Fee"); provided, however, that the portion of any such Aggregate Consideration paid by (i) members of the Board of Directors of the Company or their controlled affiliates (including ESL) or (ii) either or both of the Company's pension plans shall not be included when calculating the Sale Transaction Fee payable with respect to a Sale Transaction that is

not completed in connection with, or during the course of, a Bankruptcy Process;

(f)    For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (b), (c), (d) and (e) above. However, only one fee shall be payable pursuant to clauses (b), (c), (d) and (e) above with respect to any particular portion of the Existing Obligations, which fee shall be the greatest of such fees. In the event of a Bankruptcy Process, the aggregate fees payable to Lazard pursuant to this Agreement (including, without limitation, any Tail Fee, but excluding any Monthly Fees or Amendment Fees) shall not exceed $12,500,000.00.

(g)    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all reasonable and documented out-of-pocket expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable and documented out-of-pocket fees and expenses of a single primary legal counsel, if any, retained by Lazard; provided that the Company shall have no obligation to reimburse Lazard for any fees or expenses in excess of $50,000 in the aggregate absent express prior written consent of the Company to the incurrence of such fees or expenses, which consent shall not be unreasonably withheld.

(h)    The Company and Lazard entered into an indemnification agreement dated as of January 17, 2018, which agreement remains in full force and effect (the "Indemnification Letter"). The Company and Lazard hereby agree that the Indemnification Letter shall also apply to our engagement hereunder and is incorporated herein in its entirety. For the avoidance of any doubt, it is agreed that the expense limitations set forth in clause (h) above shall not apply to the Indemnification Letter.

(i)    All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use reasonable best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court and take such other actions as may be required of it pursuant to the terms of the order approving its retention. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and

proposed order to provide Lazard and its counsel a reasonable opportunity to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is reasonably acceptable to Lazard. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Amendment, Financing or Sale Transaction, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Amendment Fee, Financing Fee, and Sale Transaction Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4.    No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5.    The Company will use commercially reasonable efforts to furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may reasonably request in connection with this engagement, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position to the extent relevant to a Restructuring and, to the extent that the Company has expressly requested that Lazard advise the Company on a Financing or Sale Transaction, such Financing or Sale Transaction. The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete in all material respects at the time it is furnished. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any appraisal of any of the assets or liabilities of the Company or of any third party.

6.    In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Financing, Sale Transaction or other transaction. Lazard shall not have any obligation or responsibility in connection with performing services under this Agreement to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative or cash management improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7.    It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of our affiliates to underwrite, place or purchase

any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. The Indemnification Letter shall survive any termination of our engagement hereunder.

9. In the event that Lazard receives an inquiry concerning any Restructuring, Financing or Sale Transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder may be terminated by Sears or us at any time without liability or continuing obligation to the Company or us following any termination, except that (I) following any termination of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination and to reimbursement of expenses incurred but not yet reimbursed prior to such termination and (II) in the case of termination by Sears, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof (other than Section 2(a) hereof) in respect of, any Restructuring (solely to the extent relating to any particular portion of the Existing Obligations with respect to which Lazard was not previously paid a fee hereunder pursuant to Restructuring), Financing or Sale Transaction, in each case, that is announced or for which a definitive agreement is executed during the period from September 10, 2018 until nine months following such termination (the "Tail Fee").

11. Lazard has been retained under this Agreement as an independent contractor to Sears, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than Sears. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than the senior management and Board of Directors of Sears (in their capacities as such), is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting the senior management and Board of Directors of Sears (in their capacities as such) in evaluating the relevant Restructuring, Amendment, Financing or Sale Transaction, as applicable, and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Amendment, Financing or Sale Transaction, as applicable. The Company agrees that, notwithstanding any termination of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard; provided, however, that such advice may be disclosed by Sears (i) for informational purposes to any of its affiliates, and its and their respective attorneys, accountants, consultants, financial advisors, directors, officers, agents and employees (collectively, "Representatives") who have a "need to know" such information and have been required by Sears to maintain the confidential nature of such advice and (ii) if it is requested or legally required to make such disclosure in order to comply with applicable law, rule, regulation, professional standard, ethical requirement or legal, judicial or administrative process, including, without limitation, any rule, regulation, demand, request or policy statement of (A) any organized securities exchange, market or automated quotation system on which its securities are listed or quoted or (B) any regulatory authority or self-regulatory organization having jurisdiction or of which a party is

a member, subject to prior consultation with Lazard to the extent practicable and provided that the Company will request confidential treatment of any information so disclosed (provided, that no notice shall or request shall be required in connection with disclosures to regulatory authorities in connection with a regulatory review of the Company or any of its Representatives that is not specifically targeted at such advice). Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with the terms of the Confidentiality Agreement, dated as of September 7, 2018, between Sears and Lazard. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. No party to this Agreement may assign any of its rights or obligations hereunder without the express prior written consent of the other party hereto. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein, including the engagement letters between the Company and Lazard dated as of January 17, 2018 and as of September 17, 2018; provided, that, for the avoidance of any doubt, Lazard shall be entitled to retain any fees actually paid prior to the date hereof pursuant to such prior engagement letters and no such fees shall be credited against any fees payable hereunder. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby; provided, however, that any consent or instruction required hereunder to be given in writing may be given via email.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. Each party hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

[Remainder of Page Intentionally Left Blank]

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

Brandon Aebersold
Managing Director

AGREED TO AND ACCEPTED
as of the date first written above:

SEARS HOLDINGS CORPORATION, on behalf of itself
and its controlled subsidiaries

By: _____

Mohsin Y. Meghji
Chief Restructuring Officer

SCHEDULE 1

The "Existing Debt Obligations" captured under the scope of this Agreement shall be limited to the indebtedness outstanding as of the date hereof under the following:

(i) the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the lenders from time to time party thereto, the issuing lenders from time to time party thereto, Bank of America, N.A., as administrative agent, co-collateral agent and swingline lender, and Wells Fargo Bank, National Association, as co-collateral agent (the "Existing First Lien Credit Facility"); provided that indebtedness outstanding under the Existing First Lien Credit Facility includes the 2016 Term Loan and the 2018 FILO Loan;

(ii) the Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the L/C lenders from time to time party thereto and Citibank, N.A., as administrative agent and issuing bank;

(iii) the Credit Agreement, dated as of March 14, 2018 (as amended, supplemented or otherwise modified from time to time), among SRC O.P. LLC, SRC Facilities LLC and SRC Real Estate (TX) LLC, as borrowers, the lenders from time to time party thereto and UBS AG, Stamford Branch as administrative agent;

(iv) the Term Loan Credit Agreement, dated as of January 4, 2018 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the other guarantors from time to time party thereto, the lenders from time to time party thereto and JPP, LLC, as administrative and collateral administrator;

(v) the Third Amended and Restated Loan Agreement, dated as of June 4, 2018 (as amended, supplemented or otherwise modified from time to time), among Sears, Roebuck and Co., Kmart Stores of Illinois LLC, Kmart of Washington LLC, Kmart Corporation, SHC Desert Springs, LLC, Innovel Solutions, Inc., Sears Holdings Management Corporation, Maxserv, Inc., Troy Coolidge No. 13, LLC, Sears Development Co. and Big Beaver of Florida Development, LLC, as borrowers, JPP, LLC, JPP II, LLC and Cascade Investment, LLC, as lenders, and JPP LLC as administrative agent;

(vi) the term loan, but not the line of credit facility, established pursuant to the Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the lenders from time to time party thereto and JPP, LLC, as administrative agent and collateral administrator;

(vii) the Indenture, dated as of March 20, 2018 (as amended, supplemented or otherwise modified from time to time), among Sears, the guarantors from time to time party thereto and Computershare Trust Company, N.A. as trustee, and the 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 issued thereunder;

(viii) the Indenture, dated as of October 12, 2010 (as amended, supplemented or otherwise modified from time to time), among Sears, the guarantors from time to time party thereto and Wilmington

Trust, National Association, as successor trustee and collateral agent, and the 6 5/8% Senior Secured Notes due 2018 issued thereunder (the "Second Lien Notes");

(ix) the Mezzanine Loan Agreement, dated as of March 14, 2018 (as amended, supplemented or otherwise modified from time to time), among SRC Sparrow 2 LLC, as borrower, the lenders from time to time party thereto and JPP, LLC as administrative agent;

(x) the Indenture, dated as of November 21, 2014 (as amended, supplemented or otherwise modified from time to time), between Sears and Computershare Trust Company, N.A., as trustee, and the 8% Senior Unsecured Notes due 2019 and 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 issued thereunder (the "Unsecured Notes"); and

(xii) the 7.5% Senior Unsecured Notes due October 2027, 6.750% Senior Unsecured Notes due January 2028, 6.50% Senior Unsecured Notes due December 2028, the 7.0% Senior Unsecured Notes due June 2032, the 7.0% Senior Unsecured Notes due July 2042, the 7.40% Senior Unsecured Notes due February 2043 and the 7.00% / 12.00% PIK-Toggle Notes due 2028, in each case issued by Sears Roebuck Acceptance Corp. and held by persons or entities other than Sears and its subsidiaries (the "SRAC Notes").

## SCHEDULE 2

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) to the Company and its security holders in connection with the Sale Transaction, including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money assumed, cancelled, exchanged or forgiven. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, as part of the Sale Transaction. For purposes of calculating Aggregate Consideration, (i) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the weighted average price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); (ii) the value of securities that have no established public market or other property will be the fair market value of such securities or other property on Valuation Date; (iii) any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock and (iv) in the case of any credit bid, the face amount of the debt so credited shall be the value. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed (except to the extent the direct obligations or other guarantees in respect of such monies borrowed are already included), in each case directly or indirectly assumed, cancelled, exchanged or forgiven. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by Sears and Lazard in good faith (based upon the expected value of such contingent payments as of the date of consummation of such Sale Transaction) and paid to us upon consummation of the Sale Transaction.

## Exhibit 2

**Indemnification Letter**

# LAZARD

Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10112

As of January 17, 2018

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Attention:       Mr. Edward Lampert
                 Chief Executive Officer

Gentlemen:

In connection with our engagement to advise and assist Sears Holdings Corporation and its controlled subsidiaries (collectively, "you") with the matters set forth in the engagement letter of even date herewith (the "Engagement Letter"), you and we are entering into this letter agreement.  It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with such engagement, you will promptly reimburse each such Indemnified Person for its reasonable and documented out-of-pocket legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith.  You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense (i) is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from any Indemnified Person's bad faith, gross negligence or willful misconduct, or (ii) does not involve an act or omission by the Company and arises from an action, claim, proceeding or investigation that is brought by an Indemnified Person against any other Indemnified Person that does not relate to or arise from an action brought by a person other than an Indemnified Person.   You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith,

gross negligence or willful misconduct.

If for any reason the foregoing indemnification is held unenforceable or is otherwise unavailable, then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. Each party hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. Each party hereto waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with this agreement or our engagement.

This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
    Brandon Aebersold
    Managing Director

AGREED TO AND ACCEPTED
as of the date first
above written:

SEARS HOLDINGS CORPORATION, on behalf of itself
and its controlled subsidiaries

By:_____
    Edward Lampert
    Chief Executive Officer

This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

Managing Director

AGREED TO AND ACCEPTED
as of the date first
above written:

SEARS HOLDINGS CORPORATION, on behalf of itself
and its controlled subsidiaries

By: _____
Robert A. Riecker
Chief Financial Officer

## **Exhibit B**

**Aebersold Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

In re:                        **:**    Chapter 11

                                  **:**

SEARS HOLDINGS CORPORATION, *et al.*,[1]    **:**    Case No. 18-23538 (RDD)

                                  **:**

              Debtors.          **:**    (Jointly Administered)

------------------------------------------------------------- x

### DECLARATION OF BRANDON AEBERSOLD IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER (A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE COMMENCEMENT DATE, (B) MODIFYING CERTAIN <u>TIME-KEEPING REQUIREMENTS AND (C) GRANTING RELATED RELIEF</u>

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") I, Brandon Aebersold, declare, to the best of my knowledge and belief, that:

1.      I am a Managing Director at Lazard Frères & Co. LLC ("<u>Lazard</u>"), which has its principal office at 30 Rockefeller Plaza, New York, New York. I am authorized to execute

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

this declaration on behalf of Lazard. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

2.      This declaration is being submitted in connection with the proposed retention of Lazard as investment banker for Sears Holdings Corporation and its affiliated debtors and debtors in possession in the above-captioned cases to perform services as set forth in the application seeking to retain Lazard (the "Application")[2] and pursuant to the terms and conditions set forth in the engagement agreement between Lazard and the Debtors dated as of October 11, 2018 (the "Engagement Letter").[3]

3.      Lazard is the primary U.S. operating subsidiary of a preeminent international investment banking, financial advisory, and asset management firm. Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 165 years. Lazard and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. In addition, Lazard's investment banking professionals have extensive experience in advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors, chapter 11 trustees, creditors' committees and buyers in chapter 11 proceedings. Since 1990, Lazard professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

[3]    The October 11, 2018 Engagement Letter supersedes two prior engagement letters between the Debtors and Lazard dated as of January 17, 2018 and September 17, 2018.

4.      Lazard has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases, including, among others, In re FirstEnergy Solutions Corp., No. 18-50757 (Bankr. N.D. Ohio May 8, 2018) (Docket No. 493); In re Toys "R" Us, Inc., No. 17-34665 (Bankr. E.D. Va. Oct. 25, 2017) (Docket No. 732); In re CGG Holding (U.S.) Inc., No. 17-11637 (Bankr. S.D.N.Y. Aug. 22, 2017) (Docket No. 234); In re Stone Energy Corp., No. 16-36390 (MI) (Bankr. S.D. Tex. Jan 10, 2017) (Docket No. 267); In re Linn Energy, LLC, No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 12, 2016) (Docket No. 555); In re Peabody Energy Corp., No. 16-42529-399 (Bankr. E.D. Mo. May 18, 2016) (Docket No. 532); In re Paragon Offshore PLC, No. 16-10386 (Bankr. D. Del. Apr. 5, 2016) (Docket No. 225); In re Sabine Oil & Gas Corp., No. 15-11835 (Bankr. S.D.N.Y. Sept. 11, 2015) (Docket No. 325); In re Hercules Offshore, Inc., No. 15-11685 (Bankr. D. Del. Sept. 8, 2015) (Docket No. 133); In re Chassix Holdings, Inc., No. 15-10578 (Bankr. S.D.N.Y. Apr. 20, 2015) (Docket No. 294); In re RadioShack Corp., No. 15-10197 (Bankr. D. Del. Mar. 13, 2015) (Docket No. 994); In re Dendreon Corporation, No. 14-12515 (Bankr. D. Del Dec. 9, 2014) (Docket No. 156); In re Autoseis, Inc., No. 14-20130 (Bankr. S.D. Tex. June 5, 2014) (Docket No. 388); In re Rural/Metro Corporation, No. 13-11952 (Bankr. D. Del. Aug. 28, 2013) (Docket No. 190).

5.      In connection with its proposed retention by the Debtors in these cases, Lazard obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the **"Potential Parties in Interest"**). Lazard then compared the names of the Potential Parties in Interest with the names of entities that have entered into engagement agreements with Lazard in the last three years.  To the extent that this inquiry has revealed that any of the Potential Parties in Interest (or their apparent affiliates or entities that Lazard believes to be affiliates, as the case may be) entered into any such engagement

3

agreements with Lazard within the last three years, such parties are listed on <u>Schedule 2</u> annexed hereto.  To the best of my knowledge and belief, Lazard's representation of each entity listed on <u>Schedule 2</u> (or their apparent affiliates or entities that Lazard believes to be affiliates, as the case may be) was or is only on matters that are unrelated to these chapter 11 cases.  Other than as listed on <u>Schedule 2</u>, I am unaware of any investment banking engagements of Lazard by the Potential Parties in Interest within the last three years.  Given the size of Lazard and the breadth of Lazard's client base, however, it is possible that Lazard may now or in the future be retained by one or more of the Potential Parties in Interest in unrelated matters without my knowledge.  To the extent that Lazard discovers or enters into any new, material relationship with Potential Parties in Interest, it will supplement this Declaration.

6.     In addition to the parties listed on Schedule 2, Lazard may also represent, or may have represented, affiliates, equity holders or sponsors of Potential Parties in Interest and Lazard may have worked with, continue to work with, have or had mutual clients with, been represented by and/or advised certain accounting and law firms that are Potential Parties in Interest (and, in the case of law firms, may have entered into engagement agreements in which the law firm was named as client although the work was performed for a mutual client of Lazard's and the applicable law firm).  Lazard may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that are Potential Parties in Interest.  Certain of the Potential Parties in Interest may also be vendors and/or have other non-investment banking relationships with Lazard.

7.     Although Lazard has researched the Potential Parties in Interest list, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain

4

business relationships that are not included as Potential Parties in Interest and with whom Lazard

may maintain business relationships.  Additionally, Lazard is a U.S. operating subsidiary of an

international investment banking, financial advisory, and asset management firm and thus has

legally separate and distinct affiliates.  Although it is possible that employees of certain affiliates

may assist Lazard in connection with Lazard's engagement, as only Lazard is being retained in

these chapter 11 cases, we have researched only the electronic client files and records of Lazard,

not of all of its affiliates, to determine connections with any Potential Parties in Interest.

8.    In addition, as of the date hereof, Lazard and its affiliates have

approximately 2,800 employees worldwide.  It is possible that certain of Lazard's and its affiliates'

respective directors, officers, and employees may have had in the past, may currently have, or may

in the future have connections to (a) the Debtors, (b) Potential Parties in Interest, or (c) funds or

other investment vehicles that may own debt or securities of the Debtors or Potential Parties in

Interest.

9.    Lazard also has asset management affiliates, Lazard Asset Management

LLC ("**LAM**") and Lazard Frères Gestion SAS ("**LFG**"), and an affiliate, Edgewater HoldCo

LLC, that hold interests in the management companies for certain private funds (collectively,

"**Edgewater**").  Although Lazard receives payments from LAM, LFG, and Edgewater generated

by their respective business operations, each of LAM, LFG, and Edgewater is operated as a

separate and distinct affiliate and is separated from Lazard's other businesses.  As part of their

regular business operations, LAM and LFG may act as investment advisor for or trade securities

(including in discretionary client accounts, and through the operation of hedge funds and mutual

funds, in which cases investment decisions are made by LAM or LFG), including on behalf of

creditors, equity holders or other parties in interest in these cases, and Lazard or its respective

5

affiliates, managing directors and employees. Some of these LAM or LFG accounts and funds may have held, may now hold or may in the future hold debt or equity securities of the Debtors or the Debtors' creditors, equity holders, or other parties in interest in these cases, and LAM or LFG may have relationships with such parties. Furthermore, some of the investment funds managed by Edgewater may have held, may now hold or may in the future hold debt or equity securities of the Debtors or the Debtors' creditors, equity holders, or other parties in interest in these cases. Additionally, the Debtors, their creditors, equity holders, or other parties in interest in these cases, and Lazard or its affiliates, managing directors, and employees, may be investors in investment funds that are managed by Edgewater. Lazard has in place compliance procedures to ensure that no confidential or nonpublic information concerning the Debtors has been or will be available to employees of LAM, LFG, or Edgewater.

10.     During the 90-day period before the Commencement Date, Lazard was paid in the ordinary course its Monthly Fees and related expense reimbursements in accordance with the Engagement Letter. Specifically, Lazard received the following payments during the 90-day period immediately preceding the Commencement Date: (i) $200,000.00 on October 8, 2018 on account of its September Monthly Fee; and (ii) $210,675.68 on October 12, 2018, on account of its October Monthly Fee and related expenses.

11.     Other than as disclosed herein, Lazard has no relationship with the Debtors of which I am aware after due inquiry.

12.     Based on the foregoing, I believe Lazard is disinterested as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors or their estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:    October 26, 2018          */s/  Brandon Aebersold*
          New York, New York        Brandon Aebersold
                                    Managing Director
                                    Lazard Frères & Co. LLC

## Schedule 1

### Potential Parties in Interest[1]

---

[1]      Due to voluminous nature, the schedule of potential parties in interest searched is not attached but will be made available upon reasonable written request.

## Schedule 2

### Engagements with Potential Parties in Interest[1]

1511 Simon Property Group LP
3M
3M Co.
3M Company
3M COMPANY KBE0561
3M PUERTO RICO INC
ABRY Partners II, LLC
ACCERTIFY INC
ACCERTIFY INC-702255
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
AEP/24002-Ohio Power
Aetna
Aetna Behavioral Services, LLC
Aetna Realty
Aetna Realty / US Realty
Aetna Resources for Living
Aetna/HRPA
AFGlobal
Akzo Nobel Paints, LLC
Allstate
Allstate Fire and Casualty Insurance
Company
Allstate Insurance Company
Allstate New Jersey Insurance Company
Allstate Northbrook Indemnity Company
Allstate Property and Casualty Insurance

Allstate Vehicle and Property Insurance
Company
AMERICAN EXPRESS
American Express Prepaid Card
Management Corporation
American Express Travel Related Services
Company, Inc.
American Express Travel Related Services
Company, Inc.
Archer Daniels Midland Company
Ares Management
AXA Insurance Company
Banco Popular
Banco Popular de Puerto Rico
BANCO POPULAR DE PUERTO RICO
Banco Popular de Puerto Rico
BANEO POPULAR DE PR  ACH#865
Barclays Capital Inc.
Beeline
Berkshire Gas Company
Berkshire Hathaway International Insurance
Limited
Berkshire Hathaway Specialty Insurance
Company
Birch Communications
BMO HARRIS BANK
Burger King Corporation
C.T. Corporation
CAPGEMINI NORTH AMERICA
Cardinal Health
CARDINAL HEALTH
CBS Corporation
CCH
CENTURY FIRE PROTECTION LIBERT
CENTURY FIRE SPRINKLERS INC
CENTURYLINK
Champion Energy Services, Llc

---

[1]    Lazard has also been engaged by certain entities or their affiliates on Schedule 1 under the categories of "Utility from extranet" and/or "Vendors (merchandise and non-merchandise)" that, due to confidentiality obligations, Lazard is unable to disclose.  Lazard's representation of these entities are on matters that are unrelated to the Debtors and its case.

Champion Energy Services, LLC/4723
Champion Energy Services/4190
Champion Energy, LLC/4749
Cisco Systems
CISCO SYSTEMS
Citibank
Citibank (South Dakota), N.A.
CITIBANK NA BRANCH #644
CITIBANK NA NEW ACH#427
CITIBANK NEW ACH#684
Citibank, N.A.
Citibank, N.A., as administrative agent
under the Letter of Credit Facility
CITIC Capital Partners Management
Limited
Citigroup Global Markets Inc.
Clayton, Dubilier & Rice, LLC
CLEVELAND COCA COLA BTLG CO IN
Coca-Cola Refreshments U.S.A. Inc.
COCA COLA BEV CO GUAM INC
COCA COLA BEVERAGES FLORIDA LL
COCA COLA BOTTLING CO
COCA COLA BOTTLING CO HIGH COU
COCA COLA BOTTLING CO OF NORTH
COCA COLA BOTTLING CO OF NY IN
COCA COLA BOTTLING CO UNITED I
COCA COLA BOTTLING COMPANY
COCA COLA BTLG CO
CONSOLIDATED
COCA COLA BTLG CO OF CA
COCA COLA BTLG CO OF LOS ANGEL
COCA COLA BTLG CO OF NEW ENGLA
COCA COLA BTLG CO OF NORTH TEX
COCA COLA BTLNG CO
CONSOLIDATE
COCA COLA ENT FLORIDA REGION
COCA COLA PUERTO RICO BOTTLERS
COCA COLA REFRESHMENTS
COCA-COLA
COGNIZANT TECHNOLOGY
SOLUTIONS
Columbia Gas of Kentucky
Columbia Gas of Maryland
Columbia Gas of Massachusetts
Columbia Gas of Ohio
Columbia Gas of Ohio - GTS

Columbia Gas of Pennsylvania
Columbia Gas of Pennsylvania - GTS
Columbia Gas of Virginia
CT Corporation
CT CORPORATION SYSTEM
CT CORPORATIONS UCC DIRECT
DAILY NEWS
DAILY NEWS JOURNAL
DELL
DELL FINANCIAL SERVICES
Dell Financial Services L.L.C.
Dell Financial Services Ltd. Partnership
DELL MARKETING L P
DIXON TICONDEROGA CO
EBAY
Ebay Germany
Ebay, Inc.
ECOLAB INC
EMC
Encompass property and Casualty Company
Encompass Property and Casualty Insurance
Company
ENGIE Resources
Engie Resources, Llc
Express Scripts Corporation
FERRERO INC
FILA USA INC
First Energy - Jersey Central Power & Light
Co. (Jcp&L)
First Energy - Metropolitan Edison Co.
(Met-Ed)
First Energy - Ohio Edison Co.
First Energy - Pennsylvania Electric Co.
(Penelec)
First Energy - Pennsylvania Power Co.
(Penn Power)
First Energy - Potomac Edison (Md)
First Energy - The Cleveland Electric
Illuminating Co.
First Energy - Toledo Edison Co.
Forest City Enterprises
Forest City Enterprises, Inc.
Freeman Spogli Management Co., L.P.
Frontier
FRONTIER COMMUNICATIONS
GENERAL ELECTRIC

General Electric Capital Corporation
GENERAL ELECTRIC COMPANY
Golden Gate Capital
Golden Gate Private Equity, Inc.
Goldman Sachs
Goldman, Sachs & Co.
GOOGLE
GREAT LAKES COCA COLA DIST LLC
H.I.G. Capital Management, LLC
HEARTLAND COCA COLA BOTTLING
C
HEWLETT PACKARD ENTERPRISE
HEWLETT-PACKARD FINANCIAL
SERVICES
Hewlett-Packard Financial Services
Company
Honeywell International, Inc.
HORIZON BEHAVIORAL SERVICES
Hudson Advisors
HUFFY BICYCLES
HUFFY CORPORATION
ICE MOUNTAIN NESTLE WATERS NOR
INTEL AMERICAS INC-341792
INTELLIGRATED SYSTEMS
INTERNATIONAL BUSINESS
MACHINES
INVESTORS BANK
IPROSPECT COM
Jersey Central Power & Light
JOHNSON & JOHNSON CONSUMER
INC
JOHNSON CONTROLS
JOHNSON CONTROLS BATTERY
GROUP INC
JOHNSON CONTROLS INC
Kimco
Kimco
KIMCO - Great Barrington 609
Kimco Delaware Inc.
KIMCO INCOME OPERATING
PARTNER
KIMCO REALTY CORPORATION
Kohlberg Kravis Roberts & Co. L.P.
Kohlberg Management VIII, L.L.C.
KRAFT GENERAL FOODS INC
L OREAL CARIBE

Level 3
LEVEL 3 COMMUNICATIONS
LOREAL CARIBE INC
LOREAL COSMETIC AND FRAGRANCE
LOS ANGELES TIMES
COMMUNICATIONS
Lowe's Companies, Inc.
Lowe's Companies, Incv.
LOWE'S HOME CENTERS
Lowe's Home Centers, LLC
LSREF3 Spartan (Genesee) LLC / Lone Star
Funds
Madison Realty Capital
MAYBELLINE CO
MERKLE
MIDWEST COCA COLA BTLG
Minnesota Mining & Manufacturing Co
MONDELEZ PUERTO RICO LLC
Monomoy Capital Management, L.P.
Morgan Stanley Capital I Trust
Morgan Stanley Smith Barney
MORGAN STANLEY SMITH BARNEY
HO
MORNING CALL
MSD Capital
NBTY INC
NESTLE PURINA PET CARE COMPANY
NESTLE USA INC
NESTLE USA INC DSD
New York State Electric & Gas
NIPSCO - Northern Indiana Public Serv Co
Northland Communications
Ohio Edison
Oncor
PARKER HANNIFIN CORPORATION
PartnerRe Ireland Insurance Limited (ACT)
Peak Rock Capital, LLC
Penn Power
PHILIPS ACCESSORIES AND COMPUT
Phillips Edison Group LLC
PIEDMONT COCA COLA BOTTLING
PITNEY BOWES BANK
PITNEY BOWES SOFTWARE
Platinum Equity Advisors, LLC
POTOMAC EDISON

PROCTER & GAMBLE COMMERCIAL LL
PROCTER & GAMBLE DISTIBUTING L
Procter & Gamble Distributing
Quigley Co., Inc.
Quigley Company, Inc.
RABOBANK
READY REFRESH BY NESTLE
READY REFRESH BY NESTLE NESTLE
REVLON CONSUMER PRODUCTS
REVLON PR INC
RIMINI STREET INC-621076715
Roark Capital Acquisition LLC
RSA SECURITY
SAFEWAY
San Diego Gas & Electric
San Diego Gas &Electric
SENSORMATIC ELECTRONICS
Seritage / Forest City Enterprises-(Developer)
Seritage / Howard Hughes Corp-(Developer)
Seritage / Simon / GGP-(Developer)
Seritage / Simon JV
Seritage / Simon WP Glimcher-(Developer)
Seritage / Simon WPG-(Developer)
Seritage / Simon WPG-(Developer) *docs to come)
Seritage / Simon-(Developer)
Seritage / Simon-Developer
Seritage / Simon-Turnberry Assoc JV-(Developer)
Seritage / Simon-WP GLIMCHER (Developer)
Seritage / Simon-WP GLIMCHER-(Developer)
Simon
Simon
Simon (674%) / Kravco
Simon / Kravco
Simon / Washington Prime Group
Simon Properties
Simon Property Group
Simon Property Group Inc ("Simon")
Simon Property Group LP/7675
Simon Property Group, Inc.
Simon Property Group, Inc. ("Simon")

Simon Property Group, Inc. ("Simon")
Simon Property Group, Inc. ("Simon")
Simon Property Group, L.P.
Simon Property Grp, L.P. (OH)
SimplexGrinnell
SINFULCOLORS INC
SONY PICTURES HOME ENTERTAINME
SONY PUERTO RICO INC
Sprint
SPRINT COMMUNICATIONS
Sprint Pcs
State Street Bank and Trust Company
State Street Bank and Trust Company (Trustee For Company 401k)
Suddenlink
SUN SENTINEL
SWIRE COCA COLA USA
Sycamore Partners Management, L.P.
TA Associates Management, L.P.
TA Associates Management, L.P.
Target Corporation
Teneo Holdings
The Illuminating Company
The Retail Property Trust
THOMSON REUTERS TAX & ACCOUNTING
Toledo Edison
Toys "R" Us-Delaware
TOYS R US DELAWARE INC .COM AC
TRIBUNE PUBLISHING CO
TYCO INTEGRATED SECURITY
TYMETRIX
Union Carbide Corporation
United Illuminating Company
VEHICLE SERVICE GROUP
VMWARE
Warburg Pincus
WARREN DISTRIBUTION
West Penn Power
WOLTERS KLUWER HEALTH
Wolters Kluwer Health Inc.
Woodfield Mall LLC (Simon Property Group - Mall Mgr)
XEROX
YORK INTERNATIONAL

ZOOM INFORMATION INC