**Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time: November 8, 2018 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re                                :
                                     :          Chapter 11
SEARS HOLDINGS CORPORATION, et al.,  :
                                     :          Case No. 18-23538 (RDD)
                                     :
              Debtors.¹              :          (Jointly Administered)
------------------------------------------------------------x
```

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

**NOTICE OF HEARING ON APPLICATION
OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a),
BANKRUPTCY RULES 2014(a) AND 2016(a), AND LOCAL RULES 2014-1
AND 2016-1 FOR AUTHORITY TO RETAIN AND EMPLOY PRIME CLERK LLC AS
ADMINISTRATIVE AGENT *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

**PLEASE TAKE NOTICE** that a hearing on the annexed application (the

"**Application**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**), for entry of an

order pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a),

and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New

York (the "**Local Rules**") authorizing the Debtors to employ and retain Prime Clerk LLC

("**Prime Clerk**") as administrative agent (the "**Administrative Agent**") in the Debtors' chapter

11 cases, all as more fully set forth in the Application, will be held before the Honorable Robert

D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the

Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York,

10601-4140 (the "**Bankruptcy Court**") on **November 15, 2018 at 10:00 a.m. (Eastern Time)**

(the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the

"**Objections**") to the Application shall be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court,

including attorneys admitted pro hac vice, electronically in accordance with General Order M-

399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a

CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered

directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and

2

General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures*, entered on October 17, 2018 (ECF No. 139), so as to be filed and received no later than **November 8, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: October 31, 2018
     New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re:                                                                    :    **Chapter 11**
                                                                          :
**SEARS HOLDINGS CORPORATION**, *et al*.,      :    **Case No. 18-23538 (RDD)**
                                                                          :
                                                                          :    **(Jointly Administered)**
                        **Debtors.**[1]                                :
-------------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

### APPLICATION OF THE DEBTORS
### PURSUANT TO 11 U.S.C. § 327(a), BANKRUPTCY RULES
### 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND 2016-1
### FOR AUTHORITY TO RETAIN AND EMPLOY PRIME CLERK LLC AS
### ADMINISTRATIVE AGENT *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent as follows in support of this application (the "**Application**"):

### Background

1.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for*

2

*Southern District of New York*, sworn to on the date hereof (the "**Riecker Declaration**") (ECF

No. 3).[2]

### Jurisdiction

5.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

### Relief Requested

6.        By this Application, the Debtors request, pursuant to section 327(a) of the

Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Rules 2014-1 and 2016-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), entry of an

order authorizing the Debtors to employ and retain Prime Clerk LLC ("**Prime Clerk**") as

administrative agent (the "**Administrative Agent**") in the Debtors' chapter 11 cases, in

accordance with the terms and conditions of that certain Engagement Agreement dated October

10, 2018 by and between SHC and Prime Clerk (the "**Engagement Agreement**"), effective *nunc*

*pro tunc* to the Commencement Date.

7.        On the Commencement Date, the Debtors filed an application  for entry of

an order appointing Prime Clerk as claims and noticing agent in the Debtors' chapter 11 cases

(the "**Claims and Noticing Agent Application**") pursuant to 28 U.S.C. § 156(c), section 105(a)

of the Bankruptcy Code, and Local Rule 5075-1.  The Debtors believe that administration of

these chapter 11 cases will require Prime Clerk to perform duties outside the scope requested in

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms
in the Riecker Declaration.

3

the Claims and Noticing Agent Application.  Accordingly, the Debtors seek the relief requested herein to enable Prime Clerk to provide services outside the scope of the order approving the Claims and Noticing Agent Application.

8.      A proposed form of order granting the relief requested in this Application is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A copy of the Engagement Agreement is annexed to the Proposed Order as **Exhibit 1**.

### Prime Clerk's Qualifications

9.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.   Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative agent or advisor in many large bankruptcy cases in this District and in other districts nationwide.  Prime Clerk's active cases include: *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); *Lily Robotics, Inc.,* No. 17-10426 (KJC) (Bankr. D. Del.); *Bonanza*

4

*Creek Energy, Inc.,* No. 17-10015 (KJC) (Bankr. D. Del.); *Violin Memory, Inc.,* No. 16-12782 (LSS) (Bankr. D. Del.); *Gracious Home LLC,* No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *DirectBuy Holdings, Inc.,* No. 16-12435 (CSS) (Bankr. D. Del.); *American Apparel, LLC,* No. 16-12551 (BLS) (Bankr. D. Del.); *DACCO Transmission Parts (NY), Inc.,* No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *Shoreline Energy LLC,* No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *Golfsmith International Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del.); *International Shipholding Corp.,* No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *Global Geophysical Services, LLC,* No. 16-20306 (DRJ) (Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.,* No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.,* No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.,* No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.,* No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.,* No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC,* No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.,* No. 16-10429 (SHL) (Bankr. S.D.N.Y.).

10.    This Application only pertains to the work to be performed by Prime Clerk pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1.  Specifically, Prime Clerk will perform, among other things, the following bankruptcy administration services, as well as all quality control relating thereto, in each case if and to the extent requested:

a)    Assist with, among other things, solicitation, balloting, and tabulation of votes; prepare any related reports, as required in support of confirmation of a chapter 11 plan; and, in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back offices and institutional holders;

b)    Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

5

c)      Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

d)      Provide a confidential data room, if requested;

e)      Manage and coordinate any distributions pursuant to a chapter 11 plan; and

f)      Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, to the extent not included in the Claims and Noticing Agent Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**")

### Professional Compensation

11.      In performing such services, Prime Clerk will charge the Debtors the rates as set forth in the Engagement Agreement.  The Debtors respectfully submit that Prime Clerk's rates are competitive and comparable to the rates that its competitors charge for similar services.  Indeed, the Debtors conducted a competitive comparison of other firms and reviewed the rates of other firms before selecting Prime Clerk as Administrative Agent.  The Debtors believe that Prime Clerk's rates are more than reasonable given the quality of Prime Clerk's services and its professionals' bankruptcy expertise.  Additionally, Prime Clerk will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.  The terms of Prime Clerk's retention are set forth in the Engagement Agreement; however, to the extent that there is any inconsistency between the Engagement Agreement, this Application, and any order entered approving this Application, the terms of such order shall, in all respects, govern.

12.      The Debtors are advised that Prime Clerk intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Commencement Date in connection with the services it provides as Administrative Agent in accordance with the

*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of*

6

*Professionals M-412*, dated December 21, 2010 (Gonzalez, C.J.); the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases M-447*, dated January 29, 2013 (Morris, C.J.); and the United States Trustee Program's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58)* (collectively, the "**Fee Guidelines**"); sections 330 and 331 of the Bankruptcy Code; the Bankruptcy Rules; the Local Rules; and any further orders of the Court, both in connection with this Application and the interim and final fee applications to be filed by Prime Clerk in these chapter 11 cases in its capacity as Administrative Agent.  The Debtors also are advised that Prime Clerk will make all reasonable efforts to comply with requests from the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**") for information and additional disclosures as set forth in the Fee Guidelines.

13.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances solely resulting from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or an order of this Court.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of an administrative agent in these chapter 11 cases.

## No Duplication of Services

14.     The Debtors intend that the services of Prime Clerk will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases.  Prime Clerk understands that the Debtors have retained and may retain additional professionals during the term of the engagement, and Prime Clerk will work cooperatively with such professionals to integrate any work conducted by the professionals on behalf of the Debtors.

7

## Prime Clerk's Disinterestedness

15.     To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Declaration of Benjamin J. Steele, Vice President of Prime Clerk (the "**Steele Declaration**"), attached hereto as **Exhibit B**, Prime Clerk neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.     Based upon the Steele Declaration, the Debtors believe that Prime Clerk does not have any relationships with creditors of the Debtors or other parties in interest that would present a disqualifying conflict of interest.  Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require additional disclosure.

## The Relief Requested Should Be Granted

17.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

18.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

19.      In light of the size and complexity of these chapter 11 cases, the Debtors respectfully submit that retaining and employing Prime Clerk pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estates and all parties in interest to these chapter 11 cases.   The Debtors also believe that the terms and conditions of the Engagement Agreement are reasonable in light of the anticipated high number of creditors and other parties in interest that will be involved in these cases.

20.      Accordingly, to help manage administrative tasks with respect to the thousands of creditors and other parties in interest that are expected to be involved in the Debtors' chapter 11 cases, and the complexity of such cases, the Debtors respectfully request the Court enter an order appointing Prime Clerk as the Administrative Agent in these chapter 11 cases pursuant to sections 327(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

### Notice

21.      Notice of this Application will be provided in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 139) (the "**Case Management Order**").   The Debtors respectfully submit that no further notice is required.

9

22.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: October 31, 2018
       New York, New York

/s/ Robert A. Riecker
SEARS HOLDINGS CORPORATION
(for itself and on behalf of its affiliates as
Debtors and Debtors in Possession)
Robert A. Riecker
Chief Financial Officer

10

**<u>Exhibit A</u>**

**Proposed Order**

11

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In re:                                                  :         **Chapter 11**
                                                        :
**SEARS HOLDINGS CORPORATION**, *et al.*,               :         **Case No. 18-23538 (RDD)**
                                                        :
                                                        :         **(Jointly Administered)**
        Debtors.[1]                                     :
-------------------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. § 327(a), BANKRUPTCY RULES 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND 2016-1 AUTHORIZING RETENTION AND EMPLOYMENT OF PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the application (the "**Section 327(a) Application**")[2] of Sears Holdings

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(a) of the Federal Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Section 327(a) Application.

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") for authority to

retain and employ Prime Clerk LLC ("**Prime Clerk**") as administrative agent ("**Administrative**

**Agent**") *nunc pro tunc* to October 15, 2018, in accordance with the terms and conditions set

forth in that certain Engagement Agreement dated as of February 6, 2018, by and between the

Debtors and Prime Clerk (the "**Engagement Agreement**"), a copy of which is annexed hereto as

**Exhibit 1**, all as more fully set forth in the Section 327(a) Application; and upon the Declaration

of Benjamin J. Steele submitted in support of the Section 327(a) Application (the "**Steele**

**Declaration**"); and the Court being satisfied that Prime Clerk has the capability and experience

to provide the services described in the Section 327(a) Application and that Prime Clerk does not

hold an interest adverse to the Debtors or the estates; and the Court having jurisdiction to decide

the Section 327(a) Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-

(b) and 1334(b), and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.); and consideration of the Section 327(a) Application and the requested relief being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the

Section 327(a) Application having been provided in accordance with the Case Management

Order; such notice having been adequate and appropriate under the circumstances, and it

appearing that no other or further notice need be provided; and the Court having held a hearing

to consider the relief requested in the Section 327(a) Application (the "**Hearing**"); and upon the

record of the Hearing; and the Court having determined that the legal and factual bases set forth

in the Section 327(a) Application establish just cause for the relief granted herein; and it

appearing that the employment of Prime Clerk as Administrative Agent is in the best interests of

the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Section 327(a) Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Prime Clerk as Administrative Agent effective *nunc pro tunc* to the Commencement Date pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1 in accordance with the terms set forth in the Engagement Agreement, and Prime Clerk is authorized to perform the bankruptcy administration services and related tasks, all as described in the Section 327(a) Application and the Engagement Agreement.

3.      Prime Clerk is authorized to take such other action to comply with all duties set forth in the Application.

4.      Prime Clerk shall be compensated in accordance with and will file interim and final fee applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 and the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, effective February 5, 2013 (the "**Amended Guidelines**").

5.      The Debtors shall indemnify Prime Clerk under the terms of the Engagement Agreement, as modified pursuant to this Order.

6.      All requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and

shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, however, that in no event shall Prime Clerk be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

7.    In the event that Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, and these invoices and time records shall be subject to the Amended Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

8.    Prime Clerk shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Prime Clerk's counsel other than those incurred in connection with a request of Prime Clerk for payment of indemnity.

9.    Notwithstanding any provision to the contrary in the Engagement Agreement, any dispute relating to the services provided by Prime Clerk shall be referred to arbitration consistent with the terms of the Engagement Agreement only to the extent that this Court does not have, retain, or exercise jurisdiction over the dispute.

WEIL:\96782530\1\73217.0004

10.     The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

11.     The Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Section 327(a) Application.

12.     In the event of any inconsistency between the Engagement Agreement, the Section 327(a) Application, and this Order, this Order shall govern.

13.     Notwithstanding anything in the Section 327(a) Application or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

14.     To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

15.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

WEIL:\96782530\1\73217.0004

16. Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated:                          , 2018
      White Plains, New York

                                      _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Steele Declaration**

WEIL:\96782530\1\73217.0004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | : | **Case No. 18-23538 (RDD)** |
| | : | |
| | : | **(Jointly Administered)** |
| Debtors.[1] | : | |

---------------------------------------------------------------x

### DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a), BANKRUPTCY RULES 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO RETAIN AND EMPLOY PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.      I am a Vice President of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11

administrative services firm whose headquarters are located at 830 3rd Avenue, 9th Floor, New

York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors").  The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively, the "**Debtors**") *Application for an Order Pursuant to 11 U.S.C. § 327(a), Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1 for Authority to Retain and Employ Prime Clerk LLC as Administrative Agent for the Debtors Nunc Pro Tunc to the Commencement Date*, which was filed contemporaneously herewith (the "**Application**").[2]

3.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide.  Prime Clerk's active cases include: *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *General Wireless Operations Inc. dba RadioShack,* No. 17-10506

---

[2]Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

(BLS) (Bankr. D. Del.); *Lily Robotics, Inc.,* No. 17-10426 (KJC) (Bankr. D. Del.); *Bonanza Creek Energy, Inc.,* No. 17-10015 (KJC) (Bankr. D. Del.); *Violin Memory, Inc.,* No. 16-12782 (LSS) (Bankr. D. Del.); *Gracious Home LLC,* No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *DirectBuy Holdings, Inc.,* No. 16-12435 (CSS) (Bankr. D. Del.); *American Apparel, LLC,* No. 16-12551 (BLS) (Bankr. D. Del.); *DACCO Transmission Parts (NY), Inc.,* No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *Shoreline Energy LLC,* No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *Golfsmith International Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del.); *International Shipholding Corp.,* No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *Global Geophysical Services, LLC,* No. 16-20306 (DRJ) (Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.).

4.    As Administrative Agent, Prime Clerk will perform the bankruptcy administration services specified in the Application and the Engagement Agreement.  In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Application.

5.    Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Prime Clerk and its professional personnel:

(a)    are not creditors, equity security holders, or insiders of the Debtors;

(b)    are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

(c)     do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.     I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 50 largest unsecured creditors on a consolidated basis, contract counterparties, landlords, vendors, insurers, utilities, governmental authorities, the United States Trustee and persons employed in the office of the United States Trustee, and other parties.  The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision.  At this time, and as set forth in further detail herein, Prime Clerk is not aware of any connection that would present a disqualifying conflict of interest.  Should Prime Clerk discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

7.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative agent or administrative advisor for another chapter 11 debtor.

WEIL:\96782530\1\73217.0004

8.      On December 7, 2017, Prime Clerk received an investment from an investment vehicle formed by Carlyle Strategic Partners IV, L.P. ("**CSP IV**"), an investment fund managed by Carlyle Investment Management L.L.C., each affiliates of The Carlyle Group (together with its subsidiaries, "**Carlyle**").  As a result of the transaction, Prime Clerk and CSP IV are affiliates under applicable law.  The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules. However, CSP IV is not on the Potential Parties in Interest list in these cases as of the date hereof.

9.      Carlyle is a global alternative asset manager with over 1,625 professionals operating in 31 offices over six continents that manages over $200 billion in over 330 investment vehicles spanning Corporate Private Equity, Real Assets, Global Credit, and Investment Solutions.  Carlyle's Corporate Private Equity funds, Real Assets funds, Global Credit funds, and Investment Solutions funds (collectively, the "**Funds**") are managed independently from each other.  CSP IV, Carlyle Strategic Partners II, L.P. and Carlyle Strategic Partners III, L.P. (collectively, "**CSP**") are Global Credit funds that each are owned by a diverse group of limited partners, which exert no control over CSP's investment decisions, and a general partner affiliated with Carlyle.  All CSP investment professionals involved with Prime Clerk are dedicated solely to CSP and are not involved in the Corporate Private Equity, Real Assets, or Investment Solutions businesses, although, from time to time, one or more CSP investment professionals may sit on the investment committee of another Global Credit fund.

10.     Designees of CSP IV are members of the Board of Managers of Prime Clerk's ultimate parent company ("**Parent Board Designees**"), Prime Clerk Holdings LLC ("**HoldCo**"). HoldCo wholly owns Prime Clerk MidCo Holding LLC ("**MidCo**"), which wholly owns Prime Clerk.  No Carlyle designees are Board members of MidCo or Prime Clerk.  Further, Prime

5

Clerk and CSP IV have the following restrictions in place (collectively, the "**Barrier**"): (i) prior to the Debtors commencing these cases, Prime Clerk did not share the names or any other information identifying the Debtors with the Parent Board Designees; (ii) Prime Clerk has not and will not furnish any material nonpublic information about the Debtors to CSP, the Parent Board Designees or any Carlyle entity; (ii) no CSP personnel nor any other Carlyle personnel work on Prime Clerk client matters or have access to Prime Clerk client information, client files or client personnel; (iii) no CSP personnel nor any other Carlyle personnel work in Prime Clerk's offices; (iv) other than the Parent Board Designees, Prime Clerk operates independently from Carlyle, including that it does not share any employees, officers or other management with Carlyle, has separate offices in separate buildings, and has separate IT systems; and (v) no Prime Clerk executive or employee is a director, officer or employee of Carlyle (or vice versa other than the Parent Board Designees).

11.    Prime Clerk has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against:  (i) the names of the CSP funds and their respective investments; (ii) the names of Carlyle's other Global Credit funds; and (iii) the names of the Corporate Private Equity funds.  Prime Clerk also has searched the names of the Debtors against the publicly-known investments of the Corporate Private Equity funds as set forth in the list most recently provided to Prime Clerk by Carlyle's internal compliance department ("**Carlyle Compliance**").  CSP operates autonomously from and makes independent investment decisions from the other Global Credit funds, the Corporate Private Equity funds, the Real Assets funds, and the Investment Solutions funds.  Further, Carlyle maintains an internal information barrier between its Global Credit funds and the rest of the Carlyle funds.  Accordingly, the conflicts search does not include the names of the Real Assets funds, the Investment Solutions

6

funds or any of their or the other Global Credit funds' investments, nor does it include any portfolio companies of any of the Funds (other than those of CSP and the Corporate Private Equity funds as described above).    Based solely on the foregoing search, Prime Clerk has determined, to the best of its knowledge, that there are no material connections that require disclosure other than as set forth herein.    To the extent Prime Clerk learns of any material connections between the funds or investments included in the above described conflicts search and the Debtors, Prime Clerk will promptly file a supplemental disclosure.

12.    After the Commencement Date, Prime Clerk requested that Carlyle Compliance search the names of the Debtors against CSP's respective investments.    To the extent Prime Clerk learns of any material connections involving the Debtors and such investments with the Debtors after Carlyle Compliance has searched such names, Prime Clerk will promptly file a supplemental disclosure.

13.    Other than as specifically noted herein as to CSP, one or more of the other Funds may, in the ordinary course and from time to time, hold, control and/or manage loans to, or investments in, the Debtors and/or potential parties in interest and/or may trade debt and/or equity securities in the Debtors and/or potential parties in interest.    In addition, other than as specifically noted herein as to CSP, the Funds also may have had, currently have, or may in the future have business relationships or other connections with the Debtors or other potential parties in interest.    Other than as specifically noted herein as to CSP, Prime Clerk has not undertaken to determine the existence, nature and/or full scope of any business relationships or other connections that any Carlyle entity may have with the Debtors and their affiliates or the potential parties in interest in these chapter 11 cases.

7

14.     In addition, Prime Clerk may have had, may currently have or may in the future have business relationships unrelated to the Debtors with one or more Carlyle entities including, among others, portfolio companies of Carlyle.

15.     Based on, among other things, the business separation between Prime Clerk and Carlyle, the Barrier, and in light of the administrative nature of the services proposed to be performed by Prime Clerk for the Debtors, Prime Clerk believes that it does not hold or represent an interest adverse to the Debtors.

16.     Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP ("**Weil**"); O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP ("**Baker & Hostetler**"); Togut, Segal & Segal LLP; Hughes Hubbard & Reed LLP; Gibson, Dunn & Crutcher LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**"); Proskauer Rose LLP; McKinsey & Company; Centerview Partners LLC; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

17.     Shai Waisman, CEO of Prime Clerk, was previously a partner at Weil, counsel to the Debtors in these chapter 11 cases. Shira D. Weiner, General Counsel of Prime Clerk, was formerly an associate at Weil. Christina Pullo, Senior Director of Solicitation and Public Securities at Prime Clerk, was previously an associate at Weil. Certain other employees of

WEIL:\96782530\1\73217.0004

Prime Clerk were also formerly associates at Weil.  Mr. Waisman left Weil in March 2011, Ms.

Weiner left Weil in February 2008, and Ms. Pullo left Weil in May 2009.  Neither Mr. Waisman,

nor Ms. Weiner, Ms. Pullo, or any other former Weil associates now working at Prime Clerk

worked on any matters involving the Debtors during their time at Weil.

18.      Stephen Karotkin is a partner at Weil.  Mr. Karotkin's son, Joshua Karotkin, a

Director at Prime Clerk, has been an employee of Prime Clerk since April 2014.  Joshua

Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon Prime

Clerk's revenue.

19.      Prime Clerk hereby discloses the following additional connections, each of which

Prime Clerk believes does not present an interest adverse to the Debtors but is disclosed out of an

abundance of caution:

- Oleg Bitman, a Senior Consultant at Prime Clerk, was formerly a paralegal at Baker &
  Hostetler, a Potential Party in Interest in these chapter 11 cases.  Mr. Bitman left Baker &
  Hostetler in 2016.  During his time at Baker & Hostetler, Mr. Bitman did not work on any
  matters involving the Debtors.

- Stephanie Basta is Chief People Officer at Prime Clerk. Ms. Basta's husband, Paul Basta,
  is a Partner at Paul, Weiss, Rifkind, Wharton & Garrison LLP, which firm serves as
  independent counsel to a subcommittee of the Board of Directors of the Debtors and their
  non-Debtor affiliates (as more fully set forth in the Riecker Declaration).  Ms. Basta's
  role at Prime Clerk is purely administrative and, as such, she does not work on any of the
  firm's cases.

- Cynthia Webster, a temporary Analyst at Prime Clerk, was formerly an employee at CVS
  Pharmacy, a Potential Party in Interest in these chapter 11 cases.  Ms. Webster left CVS
  Pharmacy in 2017.

- Shytiana Lamb, a temporary Analyst at Prime Clerk, was formerly an employee of one of
  the Debtors from 2011 to 2012.  Out of an abundance of caution, Ms. Lamb has been
  screened off of these chapter 11 cases.

- Virginia Patyka, a temporary Analyst at Prime Clerk, directly holds a nominal number of
  shares of Sears public stock.  Out of an abundance of caution, Ms. Patyka has been
  screened off of these chapter 11 cases.

9

- A Consultant at Prime Clerk has a personal relationship with an Associate at Akin Gump Strauss Hauer & Feld LLP, proposed counsel to the Official Committee of Unsecured Creditors in these chapter 11 cases. Prime Clerk has been advised that the Associate may be assigned to these chapter 11 cases. As a result, out of an abundance of caution, the Consultant has been screened off of these chapter 11 cases.

20.     Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, in matters unrelated to these cases, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

21.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors. Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest. All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

22.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security. Each Investment Fund is

WEIL:\96782530\1\73217.0004

generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

23.      From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates.    Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.    In this regard, subject to paragraph 22, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained.    Subject to paragraph 22, upon information and belief, and upon reasonable inquiry, Prime Clerk does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

24.      Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.    Moreover, to the best of my knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates.

WEIL:\96782530\1\73217.0004

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on October 31 , 2018

/s/ Benjamin J. Steele
Benjamin J. Steele
Vice President
Prime Clerk LLC
830 Third Avenue, 9th Floor
New York, NY 10022

WEIL:\96782530\1\73217.0004

## **Exhibit 1**

**Engagement Agreement**

# Prime Clerk

### Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of October 10, 2018 between Prime Clerk LLC ("**Prime Clerk**") and Sears Holdings Corporation (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Services</u>

   (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. <u>Rates, Expenses and Payment</u>

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein, and as has been modified by those certain discounts extended by Prime Clerk to the Company (the "**Rate Structure**"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

   (c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.

   (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

**Prime Clerk**

invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $50,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder.  Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

## 3.  Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "*Bankruptcy Code*"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4.  Confidentiality

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

2

Prime Clerk

5. **Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

7. **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "**Cause**" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

    (b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

    (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

    (d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8. **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**Prime Clerk**

9. **Indemnification**

    (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

    (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or

4

acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial and transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon commencement of any chapter 11 case by the Company, any dispute related to this Agreement shall be decided by the Bankruptcy Court to the extent the Bankruptcy Court has, retains or exercises jurisdiction over the dispute.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,

**Prime Clerk**

understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022<br>Attn: Shira D. Weiner<br>Tel: (212) 257-5450<br>Email: sweiner@primeclerk.com |
| If to the Company: | Sears Holdings Corporation<br>3333 Beverly Road<br>Hoffman Estates, IL 60179<br>Attn: Mohsin Meghji (CRO)<br>Tel:<br>Email: |
| With a copy to: | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn: Garrett A. Fail<br>Tel: (212) 310-8451<br>Email: garrett.fail@weil.com |

*[Signature page follows]*

6

**Prıme Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By:  Shira Weiner
Title:  General Counsel

**Sears Holdings Corporation**

By:
Title:   MOHSIN Y. MEGHJI
C. R. O .

# Rates

Claim and Noticing Rates[1]

| Title | Hourly Rate |
| --- | --- |
| **Analyst** | $30 - $50 |

The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards.

| | |
| --- | --- |
| **Technology Consultant** | $35 - $70 |

The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings.

| | |
| --- | --- |
| **Consultant/Senior Consultant** | $70 - $195 |

The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.

The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience.

| | |
| --- | --- |
| **Director** | $200 - $220 |

The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals.

| | |
| --- | --- |
| **Chief Operating Officer and Executive Vice President** | No charge |

Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge.

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

**Prime Clerk**

## Solicitation, Balloting and Tabulation Rates[2]

**Solicitation Consultant** — $215

The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience.

**Director of Solicitation** — $240

The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney.

## Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | No charge |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.05 per page |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

## Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

**Prime Clerk**

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.08 per image |
| Data Storage, maintenance and security | $0.08 per record per month (waived for the first 2 months) |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

### Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk