Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)
Objection Date and Time: November 8, 2018 at 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.,* | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the **"Additional Debtors"**). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

**NOTICE OF HEARING ON MOTION OF DEBTORS FOR
ENTRY OF AN ORDER AUTHORIZING AND ESTABLISHING PROCEDURES
FOR DE MINIMIS ASSET SALES AND DE MINIMIS ASSET ABANDONMENTS**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") for entry of an order, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, authorizing and establishing expedited procedures to (a) sell or transfer certain assets, including any rights or interests therein, that are of relatively *de minimis* value compared to the Debtors' total asset base; (b) pay necessary fees and expenses incurred in connection with such sales; and (c) abandon certain assets that are of relatively *de minimis* value for which the Debtors are unable to find purchasers, all as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **November 15, 2018 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and

WEIL:\96784157\1\73217.0004

General Order M-399, to the extent applicable, and shall be served in accordance with the *Order Implementing Certain Notice and Case Management Procedures*, entered on October 17, 2018 (ECF No. 139), so as to be filed and received no later than **November 8, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: November 1, 2018
    New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

WEIL:\96784157\1\73217.0004

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                          :

                                       :          **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,     :

                                       :          **Case No. 18-23538 (RDD)**

                                       :

                        Debtors.[1]       :          **(Jointly Administered)**

---------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER
## AUTHORIZING AND ESTABLISHING PROCEDURES FOR
## DE MINIMIS ASSET SALES AND DE MINIMIS ASSET ABANDONMENTS

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

2

*Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on October 15, 2018 (the "**Riecker Declaration**").[2]

## Jurisdiction

5.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6.        By this Motion, the Debtors request entry of an order, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, authorizing and establishing expedited procedures (as set forth below, the "**De Minimis Asset Sale Procedures**") to (a) sell or transfer certain assets, including any rights or interests therein, that are of relatively *de minimis* value compared to the Debtors' total asset base (the "**De Minimis Assets**"; and the sales, the "**De Minimis Asset Sales**"), including certain of the Debtors' real estate assets (the "**De Minimis Real Estate Assets**"); (b) pay necessary fees and expenses incurred in connection with the De Minimis Asset Sales; and (c) abandon De Minimis Assets for which the Debtors are unable to find purchasers (each abandonment, a "**De Minimis Asset Abandonment**").

7.        A proposed form of order granting the relief requested in the Motion is attached hereto as **Exhibit A** (the "**Proposed Order**").

## The De Minimis Asset Sales

8.        The periodic sale of De Minimis Assets is a necessary, ordinary-course element of the Debtors' business and is beneficial to the Debtors' estates.  In connection with the

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration.

operation of their business, the Debtors regularly sell De Minimis Assets, such as inventory, furniture, fixtures, equipment, and other assets. For example, the Debtors, in the ordinary course of business, regularly sell inventory of their branded products to third-party vendors. The Debtors also, in the ordinary course of business, sell De Minimis Assets to dispose of obsolete or unnecessary equipment and other assets, serving to bolster the Debtors' cash position by monetizing such De Minimis Assets. The Debtors believe that certain De Minimis Assets also will be included among the sale of the certain unprofitable stores that require prompt closure (the "**Store Closing Sales**"), described in the *Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (ECF No. 23) (the "**Store Closing Motion**").

9.      The sale of De Minimis Real Estate Assets, while not the Debtors' primary business, is a necessary component of any large, geographically broad real estate business. Since approximately April 2016, the Company has regularly marketed and sold various De Minimis Real Estate Assets, the proceeds of which have provided the Debtors with much-needed liquidity and have been utilized to repay the outstanding principal amounts under various of the Company's debt facilities, including the Consolidated Secured Loan Facility, the Sparrow Term Loan, and the Sparrow Mezzanine Term Loan. The Debtors believe that certain of their more valuable De Minimis Real Estate Assets will be included among the sale of the Debtors' assets pursuant to the Debtors' Motion for Approval of Global Bidding Procedures, filed contemporaneously herewith (the "**Global Bidding Procedures Motion**").

10.     Obtaining Court approval for each De Minimis Asset Sale would be administratively burdensome to the Court and costly to the Debtors' estates and could eliminate or substantially undermine the economic benefit that would be realized from such sales by the

4

Debtors' estates.  In some instances, the usual process for obtaining Court approval for such sales may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.

11.    Accordingly, to alleviate the cost and delay of filing a separate motion for each proposed De Minimis Asset Sale and to eliminate any uncertainty regarding the Debtors' authority to consummate certain sales, the Debtors seek approval of the De Minimis Asset Sale Procedures.  The Debtors propose to utilize the De Minimis Asset Sale Procedures to obtain more expeditious and cost-effective review of each De Minimis Asset Sale by parties in interest.

**The De Minimis Asset Sale Procedures**

12.    The Debtors propose that the De Minimis Asset Sale Procedures, which are set forth more fully below, apply to all De Minimis Asset Sales and supplement the authority to consummate sales in the context of a Store Closing Sale or pursuant to the Global Bidding Procedures Motion.  The De Minimis Asset Sale Procedures, however, shall not apply to De Minimis Asset Sales involving a purchase by ESL or its affiliates.  The De Minimis Asset Sale Procedures will streamline the process of disposing of De Minimis Assets while simultaneously ensuring that parties in interest receive appropriate notice of such sales above the thresholds delineated below.  The Debtors believe that the procedures for selling De Minimis Assets described herein will allow the Debtors to dispose of such assets in an efficient and cost-effective manner and are consistent with customary procedures approved in cases of this size and in this jurisdiction.

13.    In the course of consummating De Minimis Asset Sales with non-ESL-affiliated purchasers, the Debtors propose to sell or transfer each of the De Minimis Assets for the highest and best offer received, taking into consideration the exigencies and circumstances in each such sale or transfer, under the following De Minimis Asset Sale Procedures:

5

(a)     With respect to sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price less than or equal to $2,500,000:

(i)     the Debtors are authorized to consummate such sales without further order of the Court or notice to any party if the Debtors determine, in the reasonable exercise of their business judgment, that such sales are in the best interest of the estates;

(ii)    any such sales shall be free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale; and

(iii)   each purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

(b)     With respect to sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price greater than $2,500,000 but less than or equal to $15,000,000:

(i)     the Debtors are authorized to consummate such sales without further order of the Court if the Debtors determine, in the reasonable exercise of their business judgment, that such sales are in the best interest of the estates, subject to the procedures set forth herein;

(ii)    any such sales shall be free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale;

(iii)   the Debtors shall, at least seven (7) business days prior to closing such sale or effectuating such transfer, serve a written notice of such sale or transfer by e-mail, facsimile, or overnight delivery service (each notice, an "**De Minimis Asset Sale Notice**")[3] to (a) the attorneys for the Creditors' Committee; (b) the United States Trustee for Region 2 (the "**U.S. Trustee**"); (c) Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") and Choate, Hall & Stewart LLP ("**Choate**" and, together with Skadden, the "**DIP Agents' Counsel**") as counsel to Bank of America, N.A. and to Wells Fargo Bank, National Association, respectively, each in its capacity as DIP ABL Agents; and (d) any known affected party, including counsel to any creditor asserting a lien, claim, encumbrance on, or interest in the relevant assets (the "**De Minimis Asset Notice Parties**");

(iv)    the content of the De Minimis Asset Sale Notice shall consist of (A) identification of the De Minimis Assets being sold or

---

[3] A proposed form of De Minimis Asset Sale Notice is attached hereto as **Exhibit B**.

6

transferred, (B) identification of the purchaser of the assets, (C) the purchase price, and (D) any other significant terms of the sale or transfer;

(v)     the parties receiving a De Minimis Asset Sale Notice shall have seven (7) business days (the "**Notice Period**") after the service of the De Minimis Asset Sale Notice to file and serve any objections to a De Minimis Asset Sale;

(vi)    if any material economic term of a De Minimis Asset Sale is amended after transmittal of the De Minimis Asset Sale Notice, but prior to the expiration of the Notice Period, the Debtors shall serve a revised De Minimis Asset Sale Notice on the De Minimis Asset Notice Parties describing the proposed De Minimis Asset Sale, as amended, and the Notice Period shall be extended for an additional five (5) business days;

(vii)   any objections to a De Minimis Asset Sale must (A) be in writing, (B) set forth the name of the objecting party, (C) provide the basis for the objection and the specific grounds therefor, (D) be filed electronically with the Court, and (E) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as proposed counsel to the Debtors, **so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Notice Period**;

(viii)  if no written objections are timely filed and served by any of the Standard Parties during the Notice Period, the Debtors are authorized to immediately consummate such sale;

(ix)    if a written objection is properly filed and served, (A) the objection shall be deemed a request for a hearing on the De Minimis Asset Sale, and the objection shall be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least five (5) calendar days after service of the objection (provided that the Debtors reserve the right to seek a hearing prior to such time), and (B) the De Minimis Asset Sale may not proceed absent (1) written withdrawal of the objection or (2) entry of an order by the Court specifically approving the De Minimis Asset Sale;

(x)     the Debtors may consummate a De Minimis Asset Sale prior to expiration of the Notice Period only if they obtain consent to such sale from the De Minimis Asset Notice Parties; and

(xi)    each purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

14.     The Debtors also seek authority to take any action that is reasonable and

necessary to close De Minimis Asset Sales and to obtain the proceeds thereof, including, without

7

limitation, paying reasonable and necessary fees and expenses to agents, brokers, auctioneers, and liquidators.

## De Minimis Asset Abandonments

15.     The Debtors intend to sell the De Minimis Assets where possible. Nevertheless, if the Debtors are unable to find purchasers for any De Minimis Assets, the Debtors seek authority to abandon the property without further order of the Court if the Debtors determine, in the reasonable exercise of their business judgment, that such abandonment is in the best interest of the estates and where the Debtors determine that the cost of continuing to maintain, relocate, and/or store such De Minimis Assets outweighs any potential recovery from a future sale, subject to the following notice procedures:

(a)     the Debtors shall serve a notice (each notice, an "**De Minimis Asset Abandonment Notice**")[4] of such De Minimis Asset Abandonment by e-mail, facsimile, or overnight delivery service to the De Minimis Asset Notice Parties;

(b)     the content of the De Minimis Asset Abandonment Notice shall consist of identification of the De Minimis Assets being abandoned;

(c)     the parties receiving a De Minimis Asset Abandonment Notice shall have seven (7) business days (the "**Abandonment Notice Period**") after the service of the De Minimis Asset Abandonment Notice to file and serve any objections to the De Minimis Asset Abandonment;

(d)     any objections to the De Minimis Asset Abandonment must (i) be in writing, (ii) set forth the name of the objecting party, (iii) provide the basis for the objection and the specific grounds therefor, (iv) be filed electronically with the Court, and (v) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as proposed counsel to the Debtors, **so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Abandonment Notice Period**;

(e)     if no written objections are timely filed and served by any of the De Minimis Asset Notice Parties during the Abandonment Notice Period, the

---

[4] A proposed form of De Minimis Asset Abandonment Notice Notice is attached hereto as **Exhibit C**.

Debtors are authorized to immediately consummate such De Minimis Asset Abandonment; and

(f)     if a written objection is properly filed and served, (A) the objection shall be deemed a request for a hearing on the De Minimis Asset Abandonment, and the objection shall be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least five (5) calendar days after service of the objection (provided that the Debtors reserve the right to seek a hearing prior to such time), and (B) the De Minimis Asset Abandonment may not proceed absent (1) written withdrawal of the objection or (2) entry of an order by the Court specifically approving the De Minimis Asset Abandonment; and the Debtors may abandon a De Minimis Asset prior to expiration of the Abandonment Notice Period only if they obtain written consent to such De Minimis Asset Abandonment from (a) the Creditors' Committee; (b) any known affected creditor(s), including counsel to any party asserting a lien, claim, or encumbrance on the relevant De Minimis Assets; and (c) the DIP Agents' Counsel.

## Periodic Reporting of De Minimis Asset Sales and De Minimis Asset Abandonments

16.     During these chapter 11 cases, the Debtors will provide to the attorneys for the Creditors' Committee, the DIP Agents' Counsel, and the U.S. Trustee, to the extent practicable, a written report within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales or De Minimis Asset Abandonments were consummated in the relevant quarter) concerning any sales, transfers, or abandonments made pursuant to the relief requested herein (including the names of the purchasing parties and the types and amounts of the sales). The Debtors' reporting obligations with respect to De Minimis Asset Sales and De Minimis Asset Abandonments shall terminate following the Debtors' filing a report thirty (30) days after confirmation of a chapter 11 plan.

## The Relief Requested Should Be Granted

17.     For the reasons set forth herein, this Court should grant the relief requested and approve the De Minimis Asset Sale Procedures. As more fully discussed below, the foregoing procedures are similar to procedures that have been approved in other chapter 11 cases, and the procedures are necessary and appropriate in these cases.

9

I.    **Approval of the Proposed De Minimis Asset Sale Procedures Is Warranted**

    A.    **The Proposed De Minimis Asset Sale Procedures Reflect an Exercise of the Debtors' Sound Business Judgment**

        18.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(c) of the Bankruptcy Code permits a debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing."  11 U.S.C. § 363(c)(1).  The Debtors submit that the vast majority of the De Minimis Asset Sales are, and have historically been, consummated in the ordinary course of the Debtors' business and thus are permitted under section 363(c) of the Bankruptcy Code without the need for Court approval.

        19.    Nevertheless, in order to remove any uncertainty regarding whether the De Minimis Asset Sales are outside the ordinary course of business, the Debtors seek authorization to consummate such sales under section 363(b) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease . . . property of the estate."  *Id.* § 363(b)(1).  In order to approve the sale of property outside the ordinary course of business, a bankruptcy court must "find from the evidence presented before [it] at the hearing a good business reason to grant such an application."  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 B.R. 141, 144–45 (2d Cir. 1992) (affirming the bankruptcy court's approval of an asset sale under section 363(b) by utilizing the "good business reason" standard); *In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference."); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("[A] debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best

10

interests of the company.'" (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992))).

20.    Consummating the De Minimis Asset Sales upon the terms and procedures set forth herein is both an exercise of sound business judgment and in the best interests of the estates and their creditors.  Disposing of the De Minimis Assets in the manner proposed herein is the most efficient and cost-effective means of maximizing the value to be realized.  Obtaining Court approval for each De Minimis Asset Sale would result in unnecessary administrative costs attendant to drafting, serving, and filing pleadings, as well as time incurred by attorneys for Court appearances, which could drastically reduce the ultimate net value of these assets.  The proceeds that will be generated by many, if not all, of the aforementioned sales do not warrant the incurrence of such expenses.  The Debtors and their advisors have significant experience with these types of sales and, as a result, are very well positioned to obtain the best sale prices possible.  The Debtors also intend to consult with the advisors to the Creditors' Committee and the DIP Lenders on the disposition of the De Minimis Assets.

21.    Moreover, the Debtors often face stringent time constraints both in terms of meeting the closing deadlines established by interested purchasers and selling assets before they decline in value.  The expedited procedures set forth herein will permit the Debtors to be responsive to the needs of interested purchasers (and thereby guard against lost sales due to delay), while still providing interested parties with the ability to review significant transactions. Notably, while the Debtors request authorization to sell assets for purchase prices of up to $15,000,000, the Debtors believe that many individual transactions will, in fact, be for substantially less.  Further, in light of the immense size of the Debtors' estates, the proposed sale-price limitations are appropriate.  The estates are further protected by the opportunity for the

Creditors' Committee, the U.S. Trustee, and the agents and trustees under the Debtors' DIP Financing to review and object to any De Minimis Asset Sale for a purchase price over $2,500,000. Approval of the De Minimis Asset Sale Procedures also will eliminate any uncertainty with respect to the Debtors' authority.

22.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary to the efficient administration of the Debtors' estates.  The De Minimis Asset Sale Procedures provide the Debtors with a mechanism by which they can (a) stop the accrual of various burdensome expenses associated with retaining certain assets; (b) streamline the oftentimes difficult process of locating buyers for large commercial real property located in shopping malls and for assets that are damaged or on premises that the Debtors no longer use, as well as the fees associated with locating such buyers; and (c) minimize any distraction that may result from the challenges involved in attempting to sell burdensome commercial real property and illiquid assets that are of inconsequential value to the Debtors' estates.  *See In re Partsearch Techs., Inc.*, Case No. 11-10282 (MG), ECF Doc. 178 (Bankr. S.D.N.Y. Apr. 21, 2011) (applying section 105(a) to justify an order authorizing certain procedures for the sale or abandonment of certain assets).

### B.     The De Minimis Asset Sale Procedures Satisfy the Relevant Notice and Hearing Requirements

23.     The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed transaction, appropriate notice and an opportunity for a hearing are given.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances").  Courts have noted that "the

12

notice requirements of bankruptcy law are 'founded in fundamental notions of procedural due process.'" *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 706 (S.D.N.Y. 2012) (quoting *In re Savage Indus., Inc.*, 43 F.3d 714, 721 (1st Cir. 1994)). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 706–07 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950)).

24.    Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees," and the Creditors' Committee unless a debtor shows "cause." *See* Fed. R. Bankr. P. 2002(a)(2), (i). Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes this Court to shorten the generally applicable twenty-one-day notice period and to direct a method of notice other than mail. *See* Fed. R. Bankr. P. 2002(a)(2). Moreover, this Court is authorized to limit, even without a prior showing of cause, notice of asset sales outside the ordinary course of a debtor's business to a Creditors' Committee and any creditor or equity holder requesting notice. *See* Fed. R. Bankr. P. 2002(i).

25.    Section 554(a) of the Bankruptcy Code provides that a debtor in possession, "after a notice and hearing, . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate." The right to abandon property is, except for certain exceptions inapplicable in the present case, unfettered. *See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506–07 (1986) (noting, as one such exception, that section 554(a) does not preempt state laws aimed at protecting the public's health and safety).

13

26.     In addition, the sale or transfer of property outside the ordinary course of business or the abandonment of property may be authorized without an actual hearing if no party in interest timely requests such a hearing.  *See* 11 U.S.C. § 102(1)(B)(i) (authorizing "an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest," notwithstanding the statutory requirement for "notice and a hearing").

27.     The De Minimis Asset Sale Procedures comply with the hearing requirements of the Bankruptcy Code, as well as due process, by providing the Standard Parties with an opportunity to present objections as to each De Minimis Asset Sale valued above a certain threshold and to request a hearing.  Furthermore, all known holders of liens will receive adequate notice and an opportunity to object to De Minimis Asset Sales valued above that threshold.

28.     Based on the foregoing, the Debtors submit that sufficient cause exists to implement the De Minimis Asset Sale Procedures and that such procedures will improve the efficiency of the sale process for De Minimis Assets, thereby maximizing the value of such assets to the Debtors' estates.

**C.     The Proposed De Minimis Asset Sale Procedures Permit the Debtors to Sell or Transfer Property Free and Clear**

29.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied: (a) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (b) such entity consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the

14

holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *Id.* § 363(f). Section 363(f) is stated in the disjunctive; therefore, it is only necessary to meet *one* of the five conditions listed in that section when selling property of the estate. *See In re Borders Grp., Inc.*, 453 B.R. at 483–84 (noting that a debtor can sell its property "free and clear of any interest" if "at least one" of the five conditions set forth in section 363(f) is met); *see also In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Satisfaction of *any* of th[e] requirements [listed in section 363(f)] suffices to permit the sale of the property free and clear of liens and interests." (emphasis added)).

30.    The Debtors submit that the De Minimis Asset Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code. Pursuant to the De Minimis Asset Sale Procedures, to the extent there are any known holders of liens on the De Minimis Assets valued above a certain threshold, the Debtors will provide such parties with a De Minimis Asset Sale Notice prior to the disposition of the applicable De Minimis Asset. Absent any objection to a De Minimis Asset Sale, a holder of a lien shall be deemed to have consented to such sale, and the relevant asset may be sold free and clear of such lien. *See In re Borders Grp.*, 453 B.R. at 484 ("Under section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens."); *see also In re Enron Corp.*, Case No. 01-16034 (AJG), ECF Doc. 11954 (Bankr. S.D.N.Y. July 28, 2003) (deeming all parties that did not object to a proposed sale to have consented under section 363(f)(2)). As noted above, the interests of a lienholder will attach to the proceeds of the sale or transfer, subject to any rights and defenses of the Debtors with respect thereto. To the extent that consent of a lienholder is neither obtained nor deemed to have been obtained, the Debtors submit that with respect to any proposed De

15

Minimis Asset Sale, lienholders could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.

## II.     Purchasers of De Minimis Assets Are Good Faith Purchasers

31.     Each purchaser of a De Minimis Asset shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.   Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  The United States Court of Appeals for the Second Circuit has observed that "[a]lthough the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' . . . most courts have adopted a traditional equitable definition:  'one who purchases the assets for value, in good faith and without notice of adverse claims.'"  *Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quoting *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985)) (citations omitted).  Moreover, "[a] purchaser's good faith is [only] lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).  The De Minimis Asset Sale Procedures require the Debtors to provide notice to certain parties and to provide those parties with the opportunity to object; any De Minimis Asset Sale consummated in accordance with such procedures thus will be an arm's-length transaction entitling the purchaser to the protections of section 363(m) of the Bankruptcy Code.

16

III.    **Procedures Similar to the Proposed De Minimis Asset Sale Procedures Have Been Approved in Other Chapter 11 Cases**

32.    In light of the demonstrable benefits of streamlined procedures to sell or abandon assets and the legal justifications described above, this Court previously has approved procedures similar to the De Minimis Asset Sale Procedures. *See, e.g., In re The Great Atl. & Pac. Tea Co.*, Case No. 15-23007 (RDD), ECF Doc. 493 (Bankr. S.D.N.Y. Aug. 11, 2015) (authorizing sales less than $250,000 with no advance notice and sales greater than $250,000 but less than or equal to $5,000,000 on five business days' advance notice to interested or affected parties); *In re The Great Atl. & Pac. Tea Co.*, Case No. 10-24549 (RDD), ECF Doc. 1001 (Bankr. S.D.N.Y. Mar. 10, 2011) (authorizing sales less than $500,000 with no advance notice and sales greater than $500,000 but less than or equal to $4,000,000 on seven days' advance notice to interested or affected parties); *In re Lear Corp.*, Case No. 09-14326 (ALG), ECF Doc. 267 (Bankr. S.D.N.Y. July 31, 2009) (authorizing sales less than $1,000,000 with no advance notice and authorizing sales greater than $1,000,000 but less than or equal to $15,000,000 on fifteen days' advance notice to interested or affected parties); *In re Old Carco LLC* (*f/k/a Chrysler LLC*), Case No. 09-50002 (AJG), ECF Doc. 4122 (Bankr. S.D.N.Y. June 18, 2009) (authorizing sales less than $1,000,000 with no advance notice and authorizing sales greater than $1,000,000 but less than or equal to $10,000,000 on ten business days' advance notice to interested or affected parties); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP), ECF Doc. 187 (Bankr. S.D.N.Y. Apr. 15, 2009) (approving similar procedures for the sale of assets up to $15,000,000, including notice procedures with a five-day notice period); *In re Delphi Corp.*, Case No. 05-44481 (RDD), ECF Doc. 766 (Bankr. S.D.N.Y. Oct. 28, 2005) (approving similar procedures for the sale of assets up to $10,000,000, including similar notice procedures).

17

**Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

33.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

**Notice**

34.    Notice of this Motion will be provided in accordance with the procedures set forth in the Case Management Order.  The Debtors respectfully submit that no further notice is required.

35.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: November 1, 2018
New York, New York

/s/ Sunny Singh_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

18

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re                                                                  :

                                                                       :          **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,        :

                                                                       :          **Case No. 18-_____ (RDD)**

                                                                       :

                    **Debtors.**[1]                               :          **(Jointly Administered)**

-------------------------------------------------------------x

### ORDER AUTHORIZING AND ESTABLISHING PROCEDURES FOR
### DE MINIMIS ASSET SALES AND DE MINIMIS ASSET ABANDONMENTS

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a) and 363 of the Bankruptcy Code and

Bankruptcy Rule 2002, for an order authorizing and establishing expedited procedures (as set

forth below, the "**De Minimis Asset Sale Procedures**") to (a) sell or transfer certain assets,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

including any rights or interests therein, that are of relatively *de minimis* value compared to the Debtors' total asset base (the sales, the "**De Minimis Asset Sales**"), including certain of the Debtors' real estate assets (collectively, the "**De Minimis Assets**"); (b) pay necessary fees and expenses incurred in connection with the De Minimis Asset Sales; and (c) abandon De Minimis Assets for which the Debtors are unable to find purchasers (each abandonment, a "**De Minimis Asset Abandonment**"), all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been given as provided in the Motion; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**") on November 15, 2018 (the "**Hearing**"); the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish good and sufficient cause for the relief granted herein, and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted to the extent set forth herein.

2

2.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code and

Bankruptcy Rule 2002, the De Minimis Asset Sale Procedures are approved as follows:

(a)     With respect to sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price less than or equal to $2,500,000:

(i)     the Debtors are authorized to consummate such sales without further order of the Court or notice to any party if the Debtors determine, in the reasonable exercise of their business judgment, that such sales are in the best interest of the estates;

(ii)    any such sales shall be free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale; and

(iii)   each purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

(b)     With respect to sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price greater than $2,500,000 but less than or equal to $15,000,000:

(i)     the Debtors are authorized to consummate such sales without further order of the Court if the Debtors determine, in the reasonable exercise of their business judgment, that such sales are in the best interest of the estates, subject to the procedures set forth herein;

(ii)    any such sales shall be free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale;

(iii)   the Debtors shall, at least seven (7) business days prior to closing such sale or effectuating such transfer, serve a written notice of such sale or transfer by e-mail, facsimile, or overnight delivery service (each notice, an "**De Minimis Asset Sale Notice**")[3] to (a) the attorneys for the Creditors' Committee; (b) the United States Trustee for Region 2 (the "**U.S. Trustee**"); (c) Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") and Choate, Hall & Stewart LLP ("**Choate**" and, together with Skadden, the "**DIP Agents' Counsel**") as counsel to Bank of America, N.A. and to Wells Fargo Bank, National Association, respectively, each in its capacity as DIP ABL Agents; and (d) any known affected party, including counsel to any creditor asserting a lien, claim, encumbrance on, or interest in the relevant assets (the "**De Minimis Asset Notice Parties**");

---

[3] A proposed form of De Minimis Asset Sale Notice is attached hereto as **Exhibit B**.

WEIL:\96784157\1\73217.0004

(iv)    the content of the De Minimis Asset Sale Notice shall consist of (A) identification of the De Minimis Assets being sold or transferred, (B) identification of the purchaser of the assets, (C) the purchase price, and (D) any other significant terms of the sale or transfer;

(v)    the parties receiving a De Minimis Asset Sale Notice shall have seven (7) business days (the "**Notice Period**") after the service of the De Minimis Asset Sale Notice to file and serve any objections to a De Minimis Asset Sale;

(vi)    if any material economic term of a De Minimis Asset Sale is amended after transmittal of the De Minimis Asset Sale Notice, but prior to the expiration of the Notice Period, the Debtors shall serve a revised De Minimis Asset Sale Notice on the De Minimis Asset Notice Parties describing the proposed De Minimis Asset Sale, as amended, and the Notice Period shall be extended for an additional five (5) business days;

(vii)    any objections to a De Minimis Asset Sale must (A) be in writing, (B) set forth the name of the objecting party, (C) provide the basis for the objection and the specific grounds therefor, (D) be filed electronically with the Court, and (E) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as proposed counsel to the Debtors, **so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Notice Period**;

(viii)    if no written objections are timely filed and served by any of the Standard Parties during the Notice Period, the Debtors are authorized to immediately consummate such sale;

(ix)    if a written objection is properly filed and served, (A) the objection shall be deemed a request for a hearing on the De Minimis Asset Sale, and the objection shall be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least five (5) calendar days after service of the objection (provided that the Debtors reserve the right to seek a hearing prior to such time), and (B) the De Minimis Asset Sale may not proceed absent (1) written withdrawal of the objection or (2) entry of an order by the Court specifically approving the De Minimis Asset Sale;

(x)    the Debtors may consummate a De Minimis Asset Sale prior to expiration of the Notice Period only if they obtain written consent to such sale from the De Minimis Asset Notice Parties; and

(xi)    each purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

(c)    With respect to De Minimis Assets for which the Debtors are unable to find purchasers, the Debtors are authorized to abandon the property without further order of the Court if the Debtors determine, in the reasonable exercise of their business judgment, that such abandonment is

4

in the best interest of the estates and where the Debtors determine that the cost of continuing to maintain, relocate, and/or store such De Minimis Assets outweighs any potential recovery from a future sale, subject to the following notice procedures:

(i)     the Debtors shall serve a notice (each notice, an "**De Minimis Asset Abandonment Notice**")[4] of such De Minimis Asset Abandonment by e-mail, facsimile, or overnight delivery service to the De Minimis Asset Notice Parties;

(ii)    the content of the De Minimis Asset Abandonment Notice shall consist of identification of the De Minimis Assets being abandoned;

(iii)   the parties receiving a De Minimis Asset Abandonment Notice shall have seven (7) business days (the "**Abandonment Notice Period**") after the service of the De Minimis Asset Abandonment Notice to file and serve any objections to the De Minimis Asset Abandonment;

(iv)    any objections to the De Minimis Asset Abandonment must (i) be in writing, (ii) set forth the name of the objecting party, (iii) provide the basis for the objection and the specific grounds therefor, (iv) be filed electronically with the Court, and (v) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as proposed counsel to the Debtors, **so as to be received on or before 4:00 p.m. (Eastern Time) on the last day of the Abandonment Notice Period**;

(v)     if no written objections are timely filed and served by any of the De Minimis Asset Notice Parties during the Abandonment Notice Period, the Debtors are authorized to immediately consummate such De Minimis Asset Abandonment; and

(vi)    if a written objection is properly filed and served, (A) the objection shall be deemed a request for a hearing on the De Minimis Asset Abandonment, and the objection shall be heard at the next scheduled omnibus hearing in these chapter 11 cases that is at least five (5) calendar days after service of the objection (provided that the Debtors reserve the right to seek a hearing prior to such time), and (B) the De Minimis Asset Abandonment may not proceed absent (1) written withdrawal of the objection or (2) entry of an order by the Court specifically approving the De Minimis Asset Abandonment; and the Debtors may abandon a De Minimis Asset prior to expiration of the Abandonment Notice Period only if they obtain written consent to such De Minimis Asset Abandonment from (a) the Creditors' Committee; (b) any known affected creditor(s), including counsel to any party asserting a lien, claim,

---

[4] A proposed form of De Minimis Asset Abandonment Notice Notice is attached hereto as **Exhibit C**.

WEIL:\96784157\1\73217.0004

or encumbrance on the relevant De Minimis Assets; and (c) the DIP Agents' Counsel.

3.        The Debtors shall provide, to the extent practicable, a written report, within thirty (30) days after each calendar quarter (to the extent De Minimis Asset Sales or De Minimis Asset Abandonments were consummated in the relevant quarter), concerning any such sales, transfers, or abandonments made pursuant to the relief requested herein (including the names of the purchasing parties and the types and amounts of the sales) to the attorneys for the Creditors' Committee, the DIP Agents' Counsel, and the U.S. Trustee.

4.        The Debtors' reporting obligations with respect to De Minimis Asset Sales and De Minimis Asset Abandonments shall terminate following the Debtors' filing a report pursuant to this Order thirty (30) days after confirmation of a chapter 11 plan.

5.        Sales or transfers of De Minimis Assets shall be deemed arm's-length transactions conducted in good faith and entitled to the protections of section 363(m) of the Bankruptcy Code.

6.        The Debtors are authorized to take any action that is reasonable and necessary to close a De Minimis Asset Sale and obtain the proceeds thereof, including, without limitation, paying reasonable and necessary fees and expenses to agents, brokers, auctioneers, and liquidators.

7.        The De Minimis Asset Sale Notice substantially in the form annexed as **Exhibit B** to the Motion is hereby authorized and approved.

8.        The De Minimis Asset Abandonment Notice substantially in the form annexed as **Exhibit C** to the Motion is hereby authorized and approved.

9.        Pursuant to section 363(f) of the Bankruptcy Code, the De Minimis Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional

6

sales or title retention agreements, pledges, hypothecations, liens (including, without limitation, all consensual, judicial and statutory liens), judgments, encumbrances or claims of any kind or nature. With respect to all De Minimis Asset Sales consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and each De Minimis Asset Sale consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities that may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments or that may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby, provided that nothing herein shall affect the obligation to pay any filing fees required under nonbankruptcy law.

10.     No sales to "insiders," as that term is defined in section 101(31) of the Bankruptcy Code, including, for the avoidance of doubt, ESL and its affiliates may be treated as De Minimis Asset Sales.

11.     Any De Minimis Asset Sale consummated by the Debtors pursuant to this Order shall be subject to the DIP ABL Credit Agreement in all respects.

12.     De Minimis Asset Sales consummated in connection with Store Closing Sales or pursuant to the Global Bidding Procedures Motion shall not be subject to this Order or the De Minimis Asset Sale Procedures.

WEIL:\96784157\1\73217.0004

13.     Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

14.     To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

15.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

16.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry, and no further or additional waivers of the fourteen-day stay of Bankruptcy Rule 6004(h) shall be required for the Debtors to consummate any De Minimis Asset Sale or De Minimis Asset Abandonment, subject to compliance with the De Minimis Asset Procedures.

8

17.     The Debtors are authorized to take all action necessary to effectuate the

relief granted in this Order.

18.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: _____, 2018
        White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\96784157\1\73217.0004

## Exhibit B

**Proposed De Minimis Asset Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*       :
                                               :        **Case No. 18-_____ (RDD)**
                                               :
            **Debtors.**[1]                     :        **(Joint Administration Requested)**
----------------------------------------------------------------x

## NOTICE OF DE MINIMIS ASSET SALE

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to that certain *Order Authorizing and Establishing Procedures for De Minimis Asset Sales and De Minimis Asset Abandonments* entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on [_____], 2018 (ECF No. __) (the "**Sale and Abandonment Order**"), propose to sell or transfer certain assets (the "**Assets**") to _____ (the "**Purchaser**") pursuant to an agreement dated _____, _____ (the "**Sale Agreement**"). This Notice is being provided in accordance with and sets forth the information required under the Sale and Abandonment Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

Description of the Assets. The Assets consist of _____ and are located at_____.

Relationship of the Purchaser to the Debtors. The Purchaser's relationship, if any, with the Debtors is as follows: _____.

Liens and Encumbrances on the Assets. The Debtors are aware of the following liens and/or encumbrances on the Assets: _____. To the extent that any party has liens or encumbrances on the Assets, any such lien or encumbrance will attach to the proceeds of the sale described herein.

Material Economic Terms and Conditions of the Proposed Sale. The Debtors propose to sell or transfer the Assets to the Purchaser on an "as is" basis (if applicable), free and clear of all liens or encumbrances therein, pursuant to section 363(f) of the Bankruptcy Code. The Purchaser has agreed to pay a purchase price of $_____ for the Assets. [IF APPLICABLE: The Sale Agreement is annexed hereto as **Exhibit 1**.]

[IF APPLICABLE: Commission, Fees, or other Similar Expenses: The Debtors propose to pay $_____ in commission, fees, or other similar expenses in connection with the sale.]

Procedures to Object to the Proposed Sale. Any objection to the proposed sale (an "**Objection**") must: (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; (iv) be filed electronically with the Bankruptcy Court; and (v) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as counsel to the Debtors **on or before _____, _____** (the "**Objection Deadline**").

If no Objections are filed with the Bankruptcy Court and served by the Objection Deadline in accordance with the terms of the Sale and Abandonment Order described above, then the Debtors may proceed with the sale in accordance with the terms of the Sale and Abandonment Order.

The Debtors may consummate the transaction prior to expiration of the applicable Objection Deadline if the Debtors obtain written consent to the transaction from (i) the Creditors' Committee; (ii) any known affected creditor(s), including counsel to any creditor asserting a lien, claim, or encumbrance on the relevant De Minimis Assets; and (iii) the DIP Agents' Counsel.

2

   **If an Objection is timely received and cannot be resolved consensually, then the sale will not be consummated absent further order of the Court.**

Dated: _____, 2018
   New York, New York

          _____
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York  10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Ray C. Schrock, P.C.
          Jacqueline Marcus
          Garrett A. Fail
          Sunny Singh

          *Proposed Attorneys for Debtors*
          *and Debtors in Possession*

## **Exhibit C**

**Proposed De Minimis Asset Abandonment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.,* | : | |
| | : | **Case No. 18-_____ (RDD)** |
| | : | |
| Debtors.[1] | : | **(Joint Administration Requested)** |

-----------------------------------------------------------------x

## NOTICE OF DE MINIMIS ASSET ABANDONMENT

       **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to that certain *Order Authorizing and Establishing Procedures for De Minimis Asset Sales and De Minimis Asset Abandonments* entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on [_____], 2018 (ECF No. __) (the "**Sale and Abandonment Order**"), propose to abandon certain assets (the "**Assets**"). This Notice is being provided in accordance with and sets forth the information required under the Sale and Abandonment Order.

       <u>Description of the Assets</u>. The Assets consist of _____ and are located at_____.

       <u>Liens and Encumbrances on the Assets</u>. The Debtors are aware of the following liens and/or encumbrances on the Assets: _____.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

Reasons for the Proposed Abandonment of the Assets.  The Debtors propose to abandon the Assets because _____.

Procedures to Object to the Proposed Abandonment.  Any objection to the proposed abandonment (an "**Objection**") must:  (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; (iv) be filed electronically with the Bankruptcy Court; and (v) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq., and Sunny Singh, Esq.), as counsel to the Debtors **on or before _____, _____** (the "**Objection Deadline**").

If no Objections are filed with the Bankruptcy Court and served by the Objection Deadline in accordance with the terms of the Sale and Abandonment Order described above, then the Debtors may proceed with the abandonment in accordance with the terms of the Sale and Abandonment Order.

The Debtors may consummate the abandonment prior to expiration of the applicable Objection Deadline if the Debtors obtain written consent to the abandonment from (i) the Creditors' Committee; (ii) any known affected creditor(s), including counsel to any creditor asserting a lien, claim, or encumbrance on the relevant De Minimis Assets; and (iii) the DIP Agents' Counsel.

**If an Objection is timely received and cannot be resolved consensually, then the abandonment will not be consummated absent further order of the Court after notice and a hearing.**

Dated: _____, 2018
      New York, New York

                      _____

                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York  10153
                      Telephone:  (212) 310-8000
                      Facsimile:  (212) 310-8007
                      Ray C. Schrock, P.C.
                      Jacqueline Marcus
                      Garrett A. Fail
                      Sunny Singh

                      *Proposed Attorneys for Debtors*
                      *and Debtors in Possession*

WEIL:\96784157\1\73217.0004