WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
|                                      |   |                        |
|--------------------------------------|---|------------------------|
| In re                                | : |                        |
|                                      | : | **Chapter 11**         |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : |                   |
|                                      | : | **Case No. 18-23538 (RDD)** |
|                                      | : |                        |
| Debtors.[1]                          | : | **(Jointly Administered)** |
---------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

## NOTICE OF HEARING ON
## DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**")

of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**), for entry of an order pursuant to

pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code, Rules 2002,

6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for

the Southern District of New York (the "**Local Rules**"), (i) approving global bidding procedures

in connection with sales (each, a "**Sale Transaction**") of the Debtors' assets (collectively, the

"**Assets**"); (ii) authorizing the Debtors to designate one or more stalking horse bidders and offer

each such bidder certain bid protections; (iii) scheduling auctions of the Assets (each, an

"**Auction**") and hearings for approval of the proposed Sale Transactions (each, a "**Sale Hearing**");

(iv) authorizing and approving the form and manner of notice of the Sale Transactions, Auctions,

and Sale Hearings; (v) authorizing and approving the procedures for the assumption and

assignment of executory contracts or unexpired non-residential real property leases of the Debtors;

(vi) approving the notice to each non-Debtor counterparty to a relevant contract or lease regarding

the Debtors' potential assumption and assignment of contracts and leases and the Debtors'

calculation of the amount necessary to cure any monetary defaults under such Contracts and

Leases; and (vii) granting related relief, all as more fully set forth in the Motion, will be held before

the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains,

New York, 10601-4140 (the "**Bankruptcy Court**") on **November 15, 2018 at 10:00 a.m.**

**(Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

2

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) and (b) by all other parties in interest on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than **November 8, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

3

PLEASE TAKE FURTHER NOTICE that all objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: November 1, 2018
        New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

4

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                         :
                                              :         **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,      :
                                              :         **Case No. 18-23538 (RDD)**
                                              :
           Debtors.[1]                        :         **(Jointly Administered)**
-------------------------------------------------------------x

## DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the **Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## Preliminary Statement

1.      As previously stated, the Debtors believe that there is a viable path forward for a reorganization around a smaller footprint of profitable stores.  But this path is extremely limited.  Approximately 400 of the Debtors' stores are four-wall EBITDA positive—the Debtors intend to utilize every reasonable effort to sell these and other viable stores, or a substantial portion thereof, as a going concern pursuant to section 363 of the Bankruptcy Code.  A successful sale of these viable stores as a going concern not only will save Sears and Kmart, but also the jobs of tens of thousands of employees that depend on the continued operation of the Debtors' stores.  Additionally, the Debtors intend to market and sell certain of their non-core assets, such as intellectual property and specialty businesses, to help finance these chapter 11 cases, maximize value, and, importantly, fund their hard-fought wind-down reserve.

2.      Time is of the essence.  As previously discussed, these chapter 11 cases must progress with all deliberate speed to stem the substantial operating losses that will continue to decrease the value of the Debtors' estates.  Accordingly, the prompt consummation of sale transactions that will maximize value for the Debtors' estates and preserve as many jobs as possible is a cornerstone of the Debtors' chapter 11 strategy.

3.      By this Motion, the Debtors seek approval of global bidding and sale procedures (the "**Global Bidding Procedures**") for the efficient marketing, auction and sale of

2

their assets (collectively, the "**Assets**") in an orderly and value maximizing manner.   The Global

Sale Procedures are intended to provide the Debtors' flexibility to solicit proposals, negotiate

transactions, provide stalking horse protections (if necessary and appropriate), hold auctions and

consummate transactions for the highest and best value, all while protecting the due process

rights of all interested parties and ensuring that there is a full and fair opportunity to review and

consider proposed transactions.  This Court adopted similar procedures in the chapter 11 cases of

*The Great Atlantic & Pacific Tea Co. Inc.*, Case No. 15-23007, ECF No. 496 (Aug. 11, 2015).

4.      To be clear, the proposed procedures are not a declaration by Sears to

liquidate the Company at fire sale prices—far from it.  On the contrary, the proposed procedures

are intended to provide the Debtors an efficient mechanism to monetize assets as and when the

Debtors decide to auction and sell their Assets, with the advice of their advisors and in

consultation with the DIP ABL Administrative Agent and Co-Collateral Agents (the "**DIP ABL**

**Agents**") and the official committee of unsecured creditors (the "**Creditors' Committee**" and,

together with the DIP ABL Agents, the "**Consultation Parties**").   Given the volume of sales

anticipated, it would be highly inefficient and costly to the Debtors to file a separate motion for

the approval of each sale transaction and separate procedures.  The authorization to conduct sales

in accordance with uniform procedures will benefit all parties in interest and the Court.

5.      Under the debtor-in-possession financing agreement (the "**DIP ABL**

**Credit Agreement**"), the Debtors must satisfy milestones (the "**DIP Milestones**") for the sale of

their stores that are capable of continuing as a going concern (the "**Go Forward Stores**").

Specifically, the DIP Milestones require:

> a.      On or before December 15, 2018, the Debtors must obtain a non-
> contingent and fully-financed (with committed financing
> containing customary limited conditionality consistent with
> acquisition financing commitments) stalking horse bid for the sale

of the Go Forward Stores that is reasonably acceptable to the DIP ABL Agents;

b.    The Court shall have entered the bidding procedures order by January 14, 2019;

c.    The Debtors shall commence an auction for the sale of the Go Forward Stores on or before February 2, 2019;

d.    The Debtors shall obtain an order approving the sale of the Go Forward Stores pursuant to section 363 of the Bankruptcy Code on or before February 4, 2019; and

e.    Closing of the sale of the Go Forward Stores by no later than February 8, 2019.

6.      In addition to the generally applicable Global Bidding Procedures, the Debtors have proposed herein a specific schedule for the solicitation, auction and sale of their Go Forward Stores that is consistent with the Global Bidding Procedures. The Debtors may choose, but are not required to, include other Assets on the same timeline as the proposed timeline for the Go Forward Stores. If the Debtors do proceed in that manner with respect to any other assets, the Debtors will provide notice in compliance with the Global Bidding Procedures and consult with the Consultation Parties in advance of making such determination and filing such notice.

7.      The Debtors are confident that the Global Bidding Procedures and the other relief requested herein will facilitate the sale of the Assets for the highest or otherwise best value, preserve jobs for their dedicated employees and maximize recoveries. The Debtors are consulting with the Consultation Parties with respect to the Global Bidding Procedures. Should the Global Bidding Procedures be adjusted as a result of the Debtors' consultation with the Consultation Parties, the Debtors will update the Court and parties in interest.

## **Background**

8.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On October 24, 2018, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the Creditors' Committee.  No trustee or examiner has been appointed in these chapter 11 cases.

10.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

11.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (the "**Riecker Declaration**") (ECF No. 3).[2]

### Jurisdiction

12.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration, the Bidding Procedures Order, or the Bidding Procedures (each as defined herein), as applicable.

WEIL:\96780734\2\73219.0006

## Relief Requested[3]

13.    By this Motion, pursuant to sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the Amended Guidelines for the Conduct of Asset Sales, adopted by General Order M-383, the Debtors request entry of the following:

a.    the "**Global Bidding Procedures Order**," substantially in the form attached hereto as **Exhibit A**,:

    i.    authorizing and approving the Global Bidding Procedures substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale of the Assets (each transaction, a "**Sale Transaction**");

    ii.    authorizing the Debtors to designate one or more stalking horse bidders (each, a "**Stalking Horse Bidder**" and, each such bidder's bid, a "**Stalking Horse Bid**") for one or more of the Assets (each such group of Assets, a "**Stalking Horse Package**") and offer each such Stalking Horse Bidder certain bid protections (collectively, the "**Stalking Horse Bid Protections**");

    iii.    authorize auctions of the Assets (each, an "**Auction**"), including an Auction of the Go Forward Stores to be held on **January 14, 2018**;

    iv.    scheduling hearings (the "**Sale Hearing(s)**") to consider approval of the proposed Sale Transactions;

    v.    authorizing and approving (i) notice of the sale of Assets, Auctions, and Sale Hearing(s), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**"); and (ii) notice to each relevant non-Debtor counterparty (each, a "**Counterparty**") to an executory contract or unexpired non-residential real property lease (collectively, the "**Contracts** and **Leases**") regarding the Debtors' potential assumption and assignment of their Contracts or Leases and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Assumption and Assignment Notice**");

---

[3] The Debtors intend to file any declarations in support of the Motion prior to the hearing.

WEIL:\96780734\2\73219.0006

      vi.    authorizing and approving procedures for the assumption and assignment of the Contracts and Leases and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and

      vii.   granting related relief; and

b.    following compliance with the Global Bidding Procedures Order, one or more orders (each, a "**Sale Order**") authorizing and approving:

      i.     the sale of Assets free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets, with liens to attach to the proceeds of the applicable Sale Transactions;

      ii.    the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**") in connection with the Sale Transactions; and

      iii.   granting related relief.

## Need for a Timely Sale Process

14.    The Debtors have been involved in the potential sale of their assets prepetition for years, including various real estate assets, certain brands and related assets including Kenmore and Diehard, Parts Direct, and the Sears Home Improvement Products business ("**SHIP**") of Sears Home Services. Since filing their chapter 11 cases, many parties have reached out with interest in numerous assets. Accordingly, the Debtors have developed a global process to facilitate sales of their Assets in an expeditious and value-maximizing manner.

15.    Appreciating their challenging financial condition and the tight timeline for the sale of Go Forward Stores, the Debtors and their professionals are prepared to execute a marketing campaign for the Go Forward Stores consistent with the Global Bidding Procedures. The proposed timeline for this marketing and sale process is reasonable and necessary under the circumstances of these chapter 11 cases.

WEIL:\96780734\2\73219.0006

16.     On October 16, 2018, the Bankruptcy Court approved the DIP ABL Facility provided by the DIP ABL Lenders (as defined in the Interim DIP Order) on an interim basis (ECF No. 101) (the "**Interim DIP Order**").  The DIP ABL Facility, together with the use of cash collateral, provides the Debtors with additional runway to consummate value-maximizing Sale Transactions for the Assets, but it cannot be overemphasized that time is of the essence.

17.     In addition, under the DIP ABL Facility, the first $200 million of sale proceeds from unencumbered assets will be used to fund a wind down reserve for the Debtors' estates.  It is important that the Debtors have the ability to promptly take action to fund the wind down reserve account with maximum proceeds and minimize administrative costs.  Access to the DIP ABL Facility and cash collateral is critical to the Debtors' ability to continue their operations and manage their bankruptcy estates through the conclusion of the sale process.  Failure to adhere to the DIP Milestones could jeopardize the Debtors' access to cash under the DIP ABL Facility and, in turn, compromise the Debtors' chapter 11 strategy and ability to maximize recoveries for creditors.   In light of the foregoing, the Debtors believe that the proposed timelines for the sale of a given Asset and the Go Forward Stores are both reasonable and necessary under the circumstances of these chapter 11 cases.

**The Global Bidding Procedures**

A.     <u>Overview</u>

18.     The Global Bidding Procedures are designed to promote a competitive and expedient sale process.  If approved, the Bidding Procedures will allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or best offer for the Assets on a schedule consistent with the Debtors' chapter 11 strategy and, in the case of the Go Forward Stores, the DIP Milestones.

8

19.    The Global Bidding Procedures are attached to the Bidding Procedures Order and therefore are not herein restated in their entirety.    Certain of the key terms of the Global Bidding Procedures are highlighted below.    The Debtors shall have the ability, however, to alter the Global Bidding Procedures with respect to the sale of an Asset based upon the exigencies of a given situation if the Debtors determine, in their business judgment and in consultation with the Consultation Parties, that it is reasonable to do so.

a.    **Sale Notice**.    If the Debtors determine, in their discretion, after consultation with the Consultation Parties, to hold an auction in connection with one or more sale or disposition transactions in connection with one or more of the Assets, the Debtors will file and serve on the Sale Notice Parties, and cause to be published on the Prime Clerk website, a Sale Notice and shall schedule an auction on a date that is not less than twenty-five (25) days following service of the Sale Notice.    The Sale Notice shall set forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing; (iii) the relevant sale objection deadline(s) (each, a "**Sale Objection Deadline**"); (iv) the procedures for filing Sale Objections; and (v) to the extent a Stalking Horse Bidder has been designated for the Asset, a description and copy of the Stalking Horse Agreement.

b.    **Designation of Stalking Horse Bidder**.    The Debtors, after consultation with the Consultation Parties, may designate a Stalking Horse Bidder in the Sale Notice as described further in Section B.

c.    **Bid Deadline**.    The deadline for the submission of any and all bids for the Asset(s) being sold shall be no earlier than twenty (20) days following service of the Sale Notice.

d.    **Purchased Assets**.    A Qualified Bid must clearly identify the following:

1.    the Assets to be purchased, including any Contracts and Leases of the Debtors that would be assumed and assigned in connection with the proposed Sale Transaction (all such Contracts and Leases, the "**Proposed Assumed Contracts**");

2.    with respect to a bid for multiple Assets, the allocation of value in U.S. dollars that the Prospective Bidder associates with each Asset, including a description of any significant assumptions on which such valuation is based;

3.    the liabilities, if any, to be assumed, including any debt to be assumed; and

4.      the Credit Bid, Landlord Bid (as defined herein), or non-cash consideration, if applicable, and/or the cash purchase price of the bid.

e.    **Form of Consideration**

1.    <u>Credit Bid</u>. Persons or entities holding a perfected security interest in Assets may seek to Credit Bid, to the extent permitted by applicable law and the documentation governing the Debtors' prepetition credit facilities; provided that such Credit Bid complies with the terms of any order of the Court approving debtor in possession financing or the use of cash collateral; provided that a credit bid by an insider or affiliate may only be permitted if authorized by the Court and compliant with the DIP ABL Orders. Each of the DIP ABL Agents shall be deemed a Qualified Bidder and shall be entitled to credit bid all or a portion of its respective DIP ABL Obligations (each as defined in the DIP ABL Orders) as applicable, in accordance with section 363(k) of the Bankruptcy Code.

2.    <u>Landlord Bid</u>. Subject to the Debtors' discretion to consider such bids, and after consultation with the Consultation Parties, any bid submitted by a landlord for the purchase of one of more of such landlord's own Leases (each such bid, a "**Landlord Bid**") may include a purchase price comprised of a (i) cash component, and (ii) a non-cash component that represents a "credit" for rental arrears under such Lease (a "**Landlord Credit**") to reduce the cash consideration for the applicable Lease, but not the Good Faith Deposit (as hereinafter defined) required.

3.    <u>Other Non-Cash Consideration</u>. Subject to the Debtors' discretion to consider such bids, and after consultation with the Consultation Parties, a bid may be in the form of or include non-cash consideration.

4.    <u>Cash Requirements</u>. All bids must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full. Any Credit Bid must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable Assets.

f.    **Good Faith Deposit**. Excluding bids that include a Credit Bid, a Qualified Bid must be accompanied by a "**Good Faith Deposit**" in the form of cash in the amount equal to at least ten percent (10%) of the proposed purchase price. The Debtors may require a higher Good Faith Deposit in their discretion as necessary to protect the interests of their estates.

g.    **Employee and Labor Terms**. If the bid contemplates a going-concern sale of any of the Assets, it must include a statement of proposed terms for employees.

WEIL:\96780734\2\73219.0006

    h.       **Financing Information**.

         1.     A Qualified Bid must include each of the following:

              a.     Statement that the Prospective Bidder is financially capable of consummating the Sale Transactions contemplated by Proposed APA.

              b.     Except for a Landlord Bid, information supporting Prospective Bidder's (or any other proposed assignee's) ability to comply with requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), including Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction (such information, "**Adequate Assurance Information**").

              c.     Sufficient evidence that the Prospective Bidder has, or can obtain, financial wherewithal to consummate Sale Transactions in a timely manner, including copies of any commitment letters.

    i.      **Selection of Qualified Bids**. The Debtors, after consulting with the Consultation Parties, will make a determination regarding which bids qualify as a Qualified Bid, and will notify Prospective Bidders whether they have been selected as Qualified Bidders promptly after the Bid Deadline.

    j.      **Auction**

         1.     Not less than twenty-five (25) days following service of the Sale Notice, the Debtors shall conduct an Auction of the Auction Package at a location to be announced.

         2.     The Debtors will use commercially reasonable efforts to, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, file with the Court, serve on the Sale Notice Parties (including each Counterparty to a Proposed Assumed Contract in a Successful Bid and each Counterparty to any known Contracts or Leases that may later be designated by a Successful Bidder for assumption and assignment), and cause to be published on the Prime Clerk Website, a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list all known Contracts and Leases that have been or may later be designated for

WEIL:\96780734\2\73219.0006

assumption and assignment to a Successful Bidder or its known proposed assignee, if applicable; and (v) set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined).

k.   **Auction Not Necessary**

1.   <u>Stalking Horse Packages</u>. If no Qualified Bid other than the applicable Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct the Auction for the applicable Stalking Horse Package, and will file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice (i) indicating that the Auction for the Stalking Horse Package has been canceled, (ii) indicating that the Stalking Horse Bidder is the Successful Bidder with respect to the Stalking Horse Package, and (iii) setting forth the date and time of the applicable Sale Hearing.

2.   <u>Other Assets Not Included in a Stalking Horse Bid</u>.  With respect to Assets not included in a Stalking Horse Package, if only one Qualified Bid is received in respect of such assets by the Bid Deadline, the Debtors may, but shall not be required to, after consulting with the Consultation Parties, determine to consummate a Sale Transaction with the applicable Qualified Bidder, and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice (i) identifying the Qualified Bidder, (ii) setting forth the terms of the Qualified Bid, and (iii) setting forth the date and time of the applicable Sale Hearing.

l.   **Reservation of Rights**.  The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify the Global Bidding Procedures; waive terms and conditions set forth therein; extend the deadlines set forth therein; announce at the Auctions modified or additional procedures for conducting the Auctions; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and auction process to promote further bids by such bidder, in each case, to the extent not materially inconsistent with the Global Bidding Procedures and the Global Bidding Procedures Order.  **Except as provided in an applicable Stalking Horse Agreement, the Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset, with any bidder.**

B.   **Designation of Stalking Horse Bidders**

20.   The Debtors request authority, subject to the consultation rights of the

Consultation Parties as set forth in the Global Bidding Procedures and the Global Bidding

Procedures Order, to enter into asset purchase agreements with Stalking Horse Bidders (each

WEIL:\96780734\2\73219.0006

such agreement, a "**Stalking Horse Agreement**"), pursuant to which the Debtors may provide Stalking Horse Bidders with Stalking Horse Bid Protections (defined below) where the Debtors determine, in the exercise of their reasonable business judgment, and after consultation with the Consultation Parties, that setting a floor for certain Assets is in the best interests of their estates and creditors.  Having the flexibility to designate Stalking Horse Bidders for certain of the Assets will enhance the Debtors' ability to maximize value of the Debtors' Assets and is in the best interests of their estates.

21.    Specifically, the Debtors propose to (i) establish initial overbid minimum and subsequent bidding increment requirements, (ii) offer each Stalking Horse Bidder a break-up fee in an amount that shall not exceed three percent (3%) of the cash portion of the purchase price in the applicable Stalking Horse Bid (a "**Termination Payment**"), (iii) provide that, if the Stalking Horse Bidder bids on Stalking Horse Package at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the Stalking Horse Package; and (iv) provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").  In accordance with the noticing procedures outlined below (the "**Noticing Procedures**"), upon the designation of a Stalking Horse Bidder, the Debtors will file with the Court, serve on the Sale Notice Parties (as identified and defined in the Global Bidding Procedures), and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/Sears (the "**Prime Clerk Website**"), a Sale Notice that contains information about the Stalking Horse Bidder(s) and attaches the proposed Stalking

Horse Agreement. If a Stalking Horse Bidder, including any affiliates of the Debtors, has included as part of the applicable Stalking Horse Bid a credit bid of all or part of their claims for their collateral pursuant to section 363(k) of the Bankruptcy Code (each such bid, a "**Credit Bid**"), such Credit Bid will also be described in the Sale Notice.

22.     Parties in interest may object to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Agreement, including any Credit Bid, release, exculpation or the provision of a Termination Payment (each, a "**Stalking Horse Objection**") within ten (10) calendar days after service of the applicable Sale Notice; provided that if any Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after service of the applicable Sale Notice to file a Stalking Horse Objection. If a timely Stalking Horse Objection is filed, the proposed Stalking Horse Bid, Termination Payment, or Credit Bid, as applicable, will not be deemed approved until either the Stalking Horse Objection is resolved or it has been approved upon further order of the Court. In the absence of a Stalking Horse Objection, the Debtors' entry into the applicable Stalking Horse Agreement and the Stalking Horse Protections will be deemed approved without further order of the Court upon the expiration of the objection deadline; provided that if any insider or affiliate includes a Credit Bid for part or all of the Stalking Horse Bid, the Debtors will schedule a hearing for determination of such insider's or affiliate's ability to Credit Bid prior to such bid being deemed the Stalking Horse Bid.

23.     Given the urgency of the Debtors' need to maximize value for creditors through timely and efficient Sale Transactions, the ability to designate Stalking Horse Bidders and offer such bidders Stalking Horse Bid Protections is justified, appropriate, and essential.

WEIL:\96780734\2\73219.0006

C.    **Key Dates and Deadlines**

24.    The below table summarizes the key dates and deadlines for the sale of an Asset pursuant to the Global Bidding Procedures.  The Debtors shall have the ability, however, to alter the key dates and deadlines with respect to the sale of an Asset based upon the exigencies of a given situation if the Debtors determine, in their business judgment and in consultation with the Consultation Parties, that it is reasonable to do so.

| | |
|---|---|
| **Within ten (10) days of service of the Sale Notice** | Deadline to object to proposed Sale Transaction(s) with a Stalking Horse Bidder that is not an insider or affiliate of the Debtors, including with respect to designation of such Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement (including any Credit Bid or Termination Payment) |
| **Within ten (10) days of service of the Assumption and Assignment Notice and Adequate Assurance Information for Stalking Horse Bidder, as applicable** | Deadline to object to (i) Debtors' proposed Cure Costs for Proposed Assumed Contracts in an applicable Stalking Horse Package and (iii) the assumption of and assignment to a Stalking Horse Bidder(s) of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by a Stalking Horse Bidder for assumption and assignment |
| **Within fourteen (14) days of service of the Sale Notice** | Deadline to object to proposed Sale Transaction(s) with Stalking Horse Bidder that is an insider or affiliate of the Debtors, including with respect to designation of Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement (including any Credit Bid or Termination Payment) |
| **No earlier than twenty (20) days following service of the Sale Notice** | Bid Deadline |
| **Within five (5) days of the Bid Deadline** | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
| **Not less than twenty-five (25) days following service of the Sale Notice** | Auction |
| **Within two (2) days of the conclusion of the Auction** | Target date for Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide applicable Counterparties with Adequate Assurance Information for the Successful Bidders if different than Stalking Horse Bidders |

15

| | |
|---|---|
| **Eight (8) days following the filing of Notice of Auction Results and service of the Adequate Assurance Information** | Deadline to object to (i) proposed Sale Transaction(s) for Successful Bidders that are not Stalking Horse Bidders, (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not included in any Stalking Horse Bid, (iii) the assumption of and assignment to a Successful Bidder(s) that is not a Stalking Horse Bidder of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder(s) for assumption and assignment, and (iv) the conduct of the Auction |
| **Within five (5) days of the deadline to file Sale Objections** | Proposed date of Sale Hearing (subject to the availability of the Court) |

25.    The Debtors propose the following key dates and deadlines for the sale process related to the Go Forward Stores:

| | |
|---|---|
| **November 15, 2018 at 10:00 a.m. (ET)** | Hearing to consider approval of Global Bidding Procedures and entry of Bidding Procedures Order |
| **November 21, 2018** | Deadline to Submit Non-Binding Indication of Interest |
| **December 15, 2018** | Deadline for Debtors to designate Stalking Horse Bidder for Go Forward Stores |
| **December 28, 2018 at 4:00 p.m. (ET)** | Bid Deadline for Go Forward Stores; <br><br> Deadline to object to Stalking Horse Bid for Go Forward Stores |
| **January 4, 2019 at 4:00 p.m. (ET)** | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
| **January 10, 2019 at 10:00 a.m. (ET)** | Proposed date of hearing on Stalking Horse Objections, if necessary (subject to the availability of the Court) |
| **January 14, 2019 at 10:00 a.m. (ET)** | Auction for Go Forward Stores to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 |
| **January 16, 2019** | Target date for Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide the applicable Counterparty with Adequate Assurance Information for the Successful Bidder if different than the Stalking Horse Bidder |

WEIL:\96780734\2\73219.0006

| January 24, 2019 at 4:00 p.m. (ET) | Deadline to object to (i) proposed Sale Transaction for a Successful Bidder that is not a Stalking Horse Bidder, (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not included in any Stalking Horse Bid, (iii) the assumption of and assignment to a Successful Bidder that is not a Stalking Horse Bidder of any (a) Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder for assumption and assignment, and (iv) conduct of the Auction |
|---|---|
| January 29, 2019 at 4:00 p.m. (ET) | Debtors' Deadline to Reply to Sale Objections |
| January 31, 2019 at 10:00 a.m. (ET) | Proposed date of Sale Hearing (subject to the availability of the Court) |

### D.    Noticing Procedures

26.    The Global Bidding Procedures provide for adequate noticing procedures as summarized herein (the "**Noticing Procedures**").    The Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the sale process.    For purposes of the Global Bidding Procedures, the "**Sale Notice Parties**" include the following persons and entities:

    i.      each of the Consultation Parties;

    ii.      the Standard Parties (as defined in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405));

    iii.      any governmental authority known to have a claim against the Debtors in these chapter 11 cases;

    iv.      all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service;

    v.      all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency;

    vi.      the United States Attorney General;

    vii.      the United States Attorney for the Southern District of New York;

    viii.      the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate;

WEIL:\96780734\2\73219.0006

ix.    the Antitrust Division of the United States Department of Justice;

x.    the Federal Trade Commission;

xi.    all of the persons and entities entitled to notice pursuant to Bankruptcy Rule 2002; and

xii.    all other persons and entities as directed by the Bankruptcy Court.

27.    Accordingly, the Debtors request that the Court find that the Noticing Procedures are adequate and appropriate under the circumstances, and comply with the requirements of Bankruptcy Rule 2002.

<u>**Assumption and Assignment Procedures**</u>

28.    In connection with a Sale Transaction, the Debtors may seek to assume and assign to the Successful Bidder(s) (or their designated assignee(s)) certain Contracts and Leases. The Assumption and Assignment Procedures set forth herein are designed to, among other things, govern the Debtors' provision of Adequate Assurance Information and notice of Cure Costs to relevant Counterparties. Specifically, the Assumption and Assignment Procedures are as follows:

a.    <u>**Assumption and Assignment Notice**</u>. The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable after the Debtors' designation of a Stalking Horse Bidder, file with the Court, serve on the Sale Notice Parties, including each relevant Counterparty, and cause to be published on the Prime Clerk Website, the Assumption and Assignment Notice, which shall (i) identify the Proposed Assumed Contracts in the Stalking Horse Bid, and, if known, any additional Contracts or Leases that may be designated for assumption and assignment (the "**Designation Rights Contracts**") to the Stalking Horse Bidder (or its known proposed assignee), pursuant to the terms and provisions of the Stalking Horse Agreement; (ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract and Lease identified on the Assumption and Assignment Notice; (iii) expressly state that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court approval; (iv) prominently display the deadline to file a Cure Objection and an Adequate Assurance Objection (each as hereinafter defined); and (v) prominently display the date, time, and location of the Sale Hearing(s).

18

b.  **Auction Results**.  The Debtors will use commercially reasonable efforts to, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, file with the Court, serve on the Sale Notice Parties (including each Counterparty to a Proposed Assumed Contract in a Successful Bid and each Counterparty to any known Designation Rights Contracts), a Notice of Auction Results, which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list all known Contracts and Leases that may later be designated for assumption and assignment to a Successful Bidder or its known proposed assignee, if applicable; and (v) and set forth the deadlines and procedures for filing Adequate Assurance Objections in response to the Notice of Auction Results.

c.  **Cure Objections**.

1)  Cure Objection Deadlines. Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding defaults then existing under such contract or lease (a "**Cure Objection**") shall file with the Court and serve on the Objection Recipients its Cure Objection, which must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (iv) include any appropriate documentation in support thereof, **within eight (8) calendar days of service of the Debtors' proposed Cure Costs**.

2)  Adjourned Cure Objections. If a Cure Objection cannot otherwise by resolved by the parties, the Debtors may (i) assume the Contract(s) or Lease(s) prior to the resolution of the Cure Objection; provided that the Debtors shall (a) pay to the applicable Counterparty the undisputed portion of the Cure Cost within five (5) business days after entry of the applicable Sale Order and (b) reserve cash in an amount sufficient to pay the disputed portion of the Cure Cost reasonably asserted by the applicable Counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the Counterparty and the Debtors) (the "**Reserve Amount**"), or (ii) adjourn their request to assume the Contract or Lease pending resolution of the Cure Objection (an "**Adjourned Cure Objection**"); provided further that, to the extent the Adjourned Cure Objection is resolved or determined unfavorably to the Debtors, the Debtors may withdraw the proposed assumption of the applicable Lease after such

19

determination by filing a notice of withdrawal prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. The Debtors shall file a notice of intention to reserve for a Cure Cost or to adjourn their request for assumption. An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction in the Debtors' discretion.

3)    <u>Failure to File Timely Cure Objection</u>. If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the cost to cure any defaults under the relevant Contract or Lease. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

d.    **<u>Adequate Assurance Information.</u>**

1)    <u>Stalking Horse Bidders</u>. If the Debtors designate a Stalking Horse Bidder, the Debtors shall use commercially reasonable efforts to, on the date of service of the Sale Notice, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to Proposed Assumed Contracts in the applicable Stalking Horse Bid, and (ii) Counterparties to any known Contracts and Leases that may later be designated by the Stalking Horse Bidder for assumption and assignment pursuant to the terms of the applicable Stalking Horse Agreement, Adequate Assurance Information for such Stalking Horse Bidder.

2)    <u>Other Successful Bidders</u>. The Debtors shall use commercially reasonable efforts to, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to the Proposed Assumed Contracts included in the Successful Bid, and (ii) Counterparties to any known Contracts and Leases that may later be designated by the Successful Bidder for assumption and Assignment pursuant to the terms of the asset purchase agreement executed by the applicable Successful Bidder and the Debtors, Adequate Assurance Information for such Successful Bidder.

WEIL:\96780734\2\73219.0006

3)      <u>Confidentiality</u>.  Adequate Assurance Information will be provided to affected Counterparties on a strictly confidential basis. Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied; and (ii) to support any Adequate Assurance Objection filed by the Counterparty; <u>provided</u> <u>that</u>, any Adequate Assurance Objection that discloses confidential, non-public information included in the Adequate Assurance Information must be filed with the Court under seal unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Contract or Lease (if different from the Successful Bidder), or ordered by the Court.

e.      **Adequate Assurance Objections**.

1)      <u>Adequate Assurance Objection Deadline</u>.  Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is any Stalking Horse Bidder's or Successful Bidder's and/or any of their known proposed assignees' (if different from the Stalking Horse Bidder or Successful Bidder, as applicable) proposed form of adequate assurance of future performance with respect to such Contract or Lease (an "**Adequate Assurance Objection**"), shall file with the Court and serve on the Objection Recipients, including the applicable Stalking Horse Bidder or Successful Bidder, as applicable, and any known proposed assignee of such contract or lease (if different from the applicable Stalking Horse Bidder or Successful Bidder, as applicable), its Adequate Assurance Objection, which must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) include any appropriate documentation in support thereof by no later than **eight (8) calendar days after receiving service of the applicable Adequate Assurance Information.**

2)      <u>Resolution of Adequate Assurance Objections</u>.  If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled.

21

3)      Failure to File Timely Adequate Assurance Objection.    If a
Counterparty fails to file with the Court and serve on the Objection
Recipients, including the applicable Successful Bidder and any
known proposed assignee of the Contract or Lease (if different
from the Successful Bidder), a timely Adequate Assurance
Objection, the Counterparty shall be forever barred from asserting
any such objection with regard to the relevant Contract or Lease.
The Successful Bidder and/or its known proposed assignee of the
Contract or Lease shall be deemed to have provided adequate
assurance of future performance with respect to the applicable
Contract or Lease in accordance with Bankruptcy Code section
365(f)(2)(B) and, if applicable, Bankruptcy Code section
365(b)(3), notwithstanding anything to the contrary in the Contract
or Lease or any other document.

f.      **Reservation of Rights**.    The inclusion of a Contract, Lease, or Cure Costs with
respect thereto on the Assumption and Assignment Notice or the Notice of
Auction Results shall not constitute or be deemed a determination or admission by
the Debtors, the Successful Bidders, or any other party in interest that such
contract or lease is an executory contract or unexpired lease within the meaning of
the Bankruptcy Code.    The Debtors reserve all of their rights, claims, and causes
of action with respect to each Contract and Lease listed on the Assumption and
Assignment Notice and Notice of Auction Results.    The Debtors' inclusion of any
Contract or Lease on the Assumption and Assignment Notice or the Notice of
Auction Results shall not be a guarantee that such contract or lease ultimately will
be assumed or assumed and assigned.

## Extraordinary Provisions Under Local Guidelines

29.      The Global Bidding Procedures do not contain any extraordinary

provisions as described in the Guidelines for the Conduct of Asset Sales, adopted by General

Order M-331.

### Approval of the Relief Requested Is Warranted and in the Best Interests of the Debtors and Their Economic Stakeholders

### A.      The Global Bidding Procedures are Fair and Reasonable

30.      The Global Bidding Procedures are designed to promote the paramount

goal of any proposed sale of property of a debtor's estate:  maximizing the value of sale proceeds

received by the estate.  *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*

*(In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid

22

protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"), *appeal dismissed* 3 F. 3d 49 (2d Cir. 1993); *see also In re Metaldyne Corp.,* 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer"). Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate. *See In re Integrated Res. Inc.*, 147 B.R. at 659 (observing that sale procedures "encourage bidding" and "maximize the value of the debtor's assets").

31.    The Global Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Assets. Given the time constraints, the Debtors, with the assistance of their advisors, have structured the Global Bidding Procedures to promote active bidding by interested parties and to confirm the best or highest offer reasonably available for the Assets. Additionally, the Global Bidding Procedures will allow the Debtors to conduct Auctions in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate timely Sale Transactions. As such, the Debtors and their creditors can be assured that the consideration obtained will be fair and reasonable and at or above market.

32.    This Court and other courts in this and other districts have approved procedures substantially similar to the proposed Global Bidding Procedures. *See, e.g., In re The Great Atl. & Pac. Tea Comp., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2015) (ECF No. 495); *In re Cent. Grocers, Inc.* Case No. 17-10993 (LSS) (Bankr. D. Del. June 2, 2017) (ECF No. 338); *In re Angelica Corp.*, Case No. 17-10870 (JLG) (Bankr. S.D.N.Y. Apr. 28, 2017) (ECF No. 137); *In re Golfsmith Internat'l Holdings, Inc.*, Case No. 16-12033 (LSS)

(Bankr. D. Del. Dec. 13, 2016) (ECF No. 548); *In re Golfsmith Internat'l Holdings, Inc.*, Case

No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) (ECF No. 196); *In re Aéropostale, Inc.*, Case

No. 16-11275 (SHL) (Bankr. S.D.N.Y. Jul. 29, 2016) (ECF No. 527); *In re Sports Auth., Inc.*,

Case No. 16-10257 (MFW) (Bankr. D. Del. Apr 14, 2016) (ECF No. 1186). Accordingly, the

Global Bidding Procedures should be approved.

**B.    The Stalking Horse Bid Protections are Reasonable and Appropriate and Should Be Approved**

**a.    *The Stalking Horse Bid Termination Payment***

33.    The Global Bidding Procedures allow the Debtors to provide certain

Stalking Horse Bid Protections for a designated Stalking Horse Bidder, such as the initial

overbid requirement, the subsequent bidding increments, and the Termination Payment. Bidding

incentives such as these Stalking Horse Bid Protections have become commonplace in

connection with sales of significant assets under section 363 of the Bankruptcy Code. Moreover,

approval of break-up fees as administrative expense claims as a form of bidder protections in

connection with a sale of assets has become a recognized practice in chapter 11 cases because it

enables a debtor to ensure a sale to a contractually committed buyer at a price the debtor believes

is fair, while providing the debtor with the potential of obtaining an enhanced recovery through

an auction process.

34.    Bankruptcy courts in the Second Circuit analyze the appropriateness of

bidding incentives such as the Stalking Horse Bid Protections under the "business judgment

rule." Specifically, Courts in this district consider whether: (i) the relationship of the parties

who negotiated the break-up fee was tainted by self-dealing or manipulation, (ii) the fee

encourages, rather than hampers, bidding, and (iii) the amount of the fee is unreasonable relative

to the proposed purchase price. *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr.

WEIL:\96780734\2\73219.0006

S.D.N.Y 2014) (citing *In re Metaldyne Corp.,* 409 B.R. at 670); *see also In re Integrated Res., Inc.*, 147 B.R. at 657–58 (holding that in evaluating bid protections, courts should employ the business judgment rule, which proscribes judicial second-guessing of the corporate debtor's actions taken in good faith absent self-dealing and in the exercise of honest judgment).

35.     First, the Stalking Horse Bid Protections will only be provided after good faith, arm's length negotiations with the Debtors who are acting in the interest of their estates, consistent with their fiduciary duties.  Furthermore, the Stalking Horse Bid Protections will be scrutinized by the Debtors' professionals and the Restructuring Committee.  The Debtors also will consult with the Consultation Parties prior to entering into a Stalking Horse Agreement.  And, ultimately, all parties in interest will have an adequate opportunity to evaluate and object to any proposed Stalking Horse Bid.

36.     Second, the Debtors will only provide Stalking Horse Bid Protections if it will promote the interests of the Debtors' estates to maximize value and after consultation with the Consultation Parties.  The Termination Payment will promote more competitive bidding for the Assets in an applicable Stalking Horse Package by inducing the Stalking Horse Bidder to hold its offer open as a minimum bid on which other bidders and the Debtors can rely.  In doing so, any Stalking Horse Bidder will help lay the foundation for the Debtors' sale process and will serve as a catalyst for other Qualified Bids.  Accordingly, the Termination Payment is appropriate and any Stalking Horse Bidder is entitled to be compensated for the risk it is assuming and the substantial value it is conferring on the Debtors' estates.

37.     Third, the Stalking Horse Bid Protections are reasonable in view of the substantial benefits the Debtors would receive from having a Stalking Horse Bid serve as a floor for potential bidders, which would confirm that the Debtors receive the highest and best offer for

25

an applicable Stalking Horse Package.  Moreover, a Stalking Horse Bid will provide the Debtors

with an opportunity to move forward with a sale transaction that has a high likelihood of

consummation with a contractually committed party at a fair and reasonable purchase price.

Accordingly, the Stalking Horse Bid Protections will not deter or chill bidding, are reasonable,

and their availability to the Debtors will enable the Debtors to maximize the value of their

estates.

### C.    The Sale Transactions Should Be Approved as an Exercise of the Debtors' Sound Business Judgment

38.    Ample authority exists for approval of the Sale Transactions

contemplated by this Motion.  Section 363 of the Bankruptcy Code provides, in relevant part,

"[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in the Second Circuit and

others, in applying this section, have required that the sale of a debtor's assets be based upon the

sound business judgment of the debtor.  *See Official Comm. of Unsecured Creditors of LTV*

*Aerospace Def. Co., v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141 (2d Cir. 1992)

(holding that a judge reviewing a section 363(b) application must find from the evidence

presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v.*

*Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Gen. Motors*

*Corp.*, 407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009), , *aff'd sub nom. In re Motors Liquidation*

*Co.,* 428 B.R. 43 (S.D.N.Y. 2010), *and aff'd sub nom. In re Motors Liquidation Co.,* 430 B.R. 65

(S.D.N.Y. 2010), *and enforcement denied sub nom. In re Motors Liquidation Co.,* 529 B.R. 510

(Bankr. S.D.N.Y. 2015)*, aff'd in part, vacated in part, rev'd in part sub nom. In Matter of Motors*

*Liquidation Co.,* 829 F.3d 135 (2d Cir. 2016), *and aff'd in part, vacated in part,* No. 15-CV-8432

(JMF), 2018 WL 2416567 (S.D.N.Y. May 29, 2018), *and enforced sub nom. In re Motors*

26

*Liquidation Co.,* 576 B.R. 313 (Bankr. S.D.N.Y. 2017), aff'd, No. 15-CV-8432 (JMF), 2018 WL

2416567 (S.D.N.Y. May 29, 2018), *and enforced sub nom. In re Motors Liquidation Co.,* No.

09-50026 (MG), 2018 WL 1801234 (Bankr. S.D.N.Y. Apr. 13, 2018), *and enforcement granted*

*in part sub nom. In re Motors Liquidation Co.,* 585 B.R. 708 (Bankr. S.D.N.Y. 2018).   Once a

court is satisfied that there is a sound business justification for the proposed sale, the court must

then determine whether (i) the debtor has provided the interested parties with adequate and

reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in

good faith.   *Id.,* at 493-94; *Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens Sch.),* 1997 WL

188127, *4 (S.D.N.Y. Apr. 17, 1997).

> ### a.    *The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale Transactions*

39.     A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business exists where such sale is necessary to preserve the value of the estate

for the benefit of creditors and interest holders.   *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788

F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *see also In re Food Barn Stores,*

*Inc.*, 107 F.3d at 564-65 (recognizing that paramount goal of any proposed sale of property of

estate is to maximize value).

40.     As set forth above, a clear business justification exists for the sale of the

Assets as described herein.   An orderly but expeditious sale of the Assets is critical to both

preserving and realizing the Company's going-concern value and maximizing recoveries for the

Debtors' economic stakeholders.   Moreover, the timely consummation of the proposed Sale

Transactions is required under the express terms of the DIP ABL Credit Agreement.

WEIL:\96780734\2\73219.0006

b.      *The Debtors Will Provide Adequate and Reasonable Notice of the Sale Transaction*

41.      The Sale Notice will be served in a manner that provides at least twenty-one (21) days' notice of, among other things, Global Bidding Procedures, Auction, and Sale Hearing.  Accordingly, the Debtors submit that the Sale Notice will provide adequate notice of the Sale by the time of service thereof.

c.      *The Sale Transaction Will Produce a Fair and Reasonable Purchase Price for the Assets*

42.      As set forth above, the Debtors believe that the Global Bidding Procedures will produce a fair and reasonable purchase price for the Assets.  The sale of the Assets will be subjected to an extensive and transparent marketing process and scrutinized by the Debtors, their advisors, and major stakeholders.

43.      The Global Bidding Procedures were carefully designed to facilitate a robust and competitive bidding process.  The Global Bidding Procedures provide an appropriate framework for the Debtors and the Consultation Parties to review, analyze, and compare all bids received to determine which bids are in the best interests of the Debtors' estates and their stakeholders.  The Sale Transaction(s) governed by the Global Bidding Procedures undoubtedly will serve the important objective of obtaining not only a fair and reasonable purchase price for the Assets, but also the highest or best value for the Assets, which will inure to the benefit of all parties in interest in the Chapter 11 Cases.

d.      *The Global Bidding Procedures Ensure that the Sale Transaction Will Be Consummated in Good Faith*

44.      Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted

WEIL:\96780734\2\73219.0006

under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).

45.     Section 363(m) of the Bankruptcy Code fosters the "'policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely.'" *Reloeb Co. v. LTV Corp (In re Chateaugay Corp.)*, 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. May 10, 1993) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal"). The Second Circuit has held that a purchaser's good faith is shown by the integrity of his or her conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made. *See, e.g., Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (holding that a purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (internal citations omitted).

46.     The Global Bidding Procedures are designed to produce a fair, transparent, and competitive bidding process. Any asset purchase agreement with a Successful

Bidder executed by the Debtors will be negotiated at arms' length and in good faith. All parties

in interest will have an opportunity to evaluate and object, if necessary, to any particular party's

conduct or the satisfaction of the requirements of section 363(m) of the Bankruptcy Code.

Accordingly, the Debtors seek a finding that any Successful Bidder (including any applicable

Stalking Horse Bidder if named a Successful Bidder) is a good faith purchaser and is entitled to

the full protections afforded by section 363(m) of the Bankruptcy Code.

47.    Based on the foregoing, the Debtors have demonstrated that the

proposed Sale Transaction(s) are a sound exercise of the Debtors' business judgment and should

be approved.

> **D.    The Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests Is Warranted and Should Be Approved**

48.    In the interest of attracting the best offer, the sale of the Assets must be

free and clear of any and all liens, claims, encumbrances, and other interests in accordance with

section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other

interests attaching to the proceeds of the sale. Pursuant to section 363(f) of the Bankruptcy

Code, a debtor in possession may sell property of the estate "free and clear of any interest in such

property of an entity other than the estate" if (i) applicable non-bankruptcy law permits the sale

of such property free and clear of such interest, (ii) such entity consents, (iii) such interest is a

lien and the price at which such property is to be sold is greater than the aggregate value of all

liens on such property, (iv) such interest is in bona fide dispute, or (v) such entity could be

compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f)(1) – (5); *see also Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re*

*Westpoint Stevens, Inc.)*, 333 B.R. 30, 50 (S.D.N.Y. 2005) (where a sale is to be free and clear of

existing liens and interests other than those of the estate, one or more of the criteria specified in

section 363(f) must also be met), *rev'd*, 600 F. 3d 231 (2d Cir. 2010) *In re Dundee Equity Corp.*,

No. 89-B-10233, 1992 WL 53743 (Bankr. S.D.N.Y Mar. 6, 1992) (same).

49.    The Debtors believe that any of the parties holding liens in the Assets

could be compelled to accept a monetary satisfaction of such interests.  Where the purchase price

for a debtor's assets is the best available purchase price under the circumstances, a court may

authorize the sale free and clear of existing liens, claims, and encumbrances pursuant to section

363(f)(3) of the Bankruptcy Code even if the purchase price is less than the face amount of liens,

claims, and encumbrances.  *See In re Boston Generating, LLC*, 440 B.R. 302, 332 (Bankr.

S.D.N.Y. 2010); *In re Beker Indus., Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).  The

procedures outlined in the Global Bidding Procedures and the Debtors' postpetition efforts to

market their businesses ensure that the purchase price paid for the Assets will be the best

available.  Accordingly, the Debtors believe that the sale of the Assets will satisfy the statutory

prerequisites of section 363(f) of the Bankruptcy Code and the Sale Transaction should be

approved free and clear of all liens, claims, and encumbrances against the Assets.

### E.    Assumption and Assignment of Proposed Assumed Contracts

50.    Section 365(a) of the Bankruptcy Code provides that a debtor in

possession "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor."  11 U.S.C. § 365(a).  Upon finding that a debtor has exercised its

sound business judgment in determining to assume an executory contract or unexpired lease,

courts will approve the assumption under section 365(a) of the Bankruptcy Code.  *See Nostas*

*Assocs. v. Costich* (*In re Klein Sleep Prods.*, *Inc.*), 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures*

*Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.*), 4 F.3d 1095, 1099 (2d Cir.

1993).  The assumption of the Proposed Assumed Contracts is an exercise of the Debtors' sound

business judgment because the transfer of the Proposed Assumed Contracts is necessary to

31

obtain the best value for the Assets. Given that consummation of the Sale Transaction(s) is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the Debtors' assumption of the Proposed Assumed Contracts is an exercise of sound business judgment and should be approved.

51.     The consummation of the Sale Transaction(s), which will involve the assignment of the Proposed Assumed Contracts, will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Proposed Assumed Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. As set forth above, the Debtors propose to file with the Court, and serve on each non-Debtor party to a Purchased Contract, an Assumption and Assignment Notice indicating the Debtors' calculation of the Cure Cost for each such contract. Non-Debtor parties to the Proposed Assumed Contracts will have the opportunity to file objections to the proposed assumption and assignment of the Proposed Assumed Contracts to the Successful Bidder, including the proposed Cure Costs.

52.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute

32

assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

53.     As set forth in the Global Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder must include with its bid Adequate Assurance Information regarding its ability (and the ability of its designated assignee, if applicable) to perform under the Proposed Assumed Contracts. The Debtors will provide Adequate Assurance Information to all counterparties to the Proposed Assumed Contracts and counterparties will have an opportunity to file an Adequate Assurance Objection in advance of the Sale Hearing. Based on the foregoing, the Debtors' assumption and assignment of the Proposed Assumed Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved.

54.     In addition, to facilitate the assumption and assignment of the Proposed Assumed Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Proposed Assumed Contracts, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the Bankruptcy Code.[4]

---

[4] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease[.]"    11 U.S.C. § 365(f)(1).    Section 365(f)(3) further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that

**Notice**

55.     Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405) (the "**Case Management Order**").  The Debtors respectfully submit that no further notice is required.

56.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: November 1, 2018
     New York, New York

            /s/ Sunny Singh
            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York  10153
            Telephone:  (212) 310-8000
            Facsimile:  (212) 310-8007
            Ray C. Schrock, P.C.
            Jacqueline Marcus
            Garrett A. Fail
            Sunny Singh

            *Proposed Attorneys for Debtors*
            *and Debtors in Possession*

---

terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

**<u>Exhibit A</u>**

**Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                          :

                                               :          **Chapter 11**

**SEARS HOLDINGS CORPORATION, *et al.*,**      :

                                               :          **Case No. 18-23538 (RDD)**

                                               :

       Debtors.[1]                             :          **(Jointly Administered)**

---------------------------------------------------------------x

## ORDER APPROVING
## GLOBAL BIDDING PROCEDURES AND GRANTING RELATED RELIEF

Upon the motion, dated November 1, 2018 (ECF No. [__]) (the "**Motion**"),[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365

of chapter 11 of title 11 of the United States Code, Rules 2002, 6004, 6006, 9007, 9008, and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

[2] Capitalized terms utilized but not defined herein shall have the meanings given them in the Motion or the Bidding Procedures.

1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**"), for an order (i) (a) approving the Global Bidding Procedures, substantially in the

form attached hereto as **Exhibit 1**, in connection with sales (each transaction, a "**Sale**

**Transaction**") of the Debtors' assets (the "**Assets**"); (b) authorizing the Debtors to designate one

or more stalking horse bidders (each, a "**Stalking Horse Bidder**," and each such bidder's bid, a

"**Stalking Horse Bid**") and offer each such bidder certain bid protections (collectively, the

"**Stalking Horse Bid Protections**"); (c) scheduling auctions of the Assets (each, an "**Auction**")

and hearings for approval of the proposed Sale Transactions (each, a "**Sale Hearing**");

(d) authorizing and approving the form and manner of notice of the Sale Transactions, Auctions,

and Sale Hearings, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**");

(e) authorizing and approving the procedures for the assumption and assignment of executory

contract or unexpired non-residential real property lease of the Debtors (collectively, the

"**Contracts** and **Leases**," and such procedures, the "**Assumption and Assignment**

**Procedures**"); (f) approving the notice to each non-Debtor counterparty (each a

"**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption

and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to

cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in

the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"); and

(g) granting related relief, all as more fully set forth in the Motion; and the Court having

jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C.

§§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January

31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion

having been provided in accordance with the Case Management Order; such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or further notice

need be provided; and the Court having held a hearing to consider the relief requested in the

Motion on November 15, 2018 (the "**Hearing**"); and upon the record of the Hearing, and upon

all of the proceedings had before the Court; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and is in the

best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      The Global Bidding Procedures as set forth herein are fair, reasonable, and

appropriate, and are designed to maximize the value of the proceeds of the sale of the Assets.

B.      The Global Bidding Procedures comply with the requirements of Local

Rule 6004-1.

C.      The Assumption and Assignment Procedures are fair, reasonable, and

appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and

Bankruptcy Rule 6006.

D.      The Debtors have articulated good and sufficient business reasons for the

Court to approve (i) the Global Bidding Procedures, (ii) the designation of Stalking Horse

Bidders, (iii) the Stalking Horse Bid Protections, (v) the Sale Notice, (vi) the Assumption and

Assignment Procedures, and (vii) the Assumption and Assignment Notice.

E.      Good and sufficient notice of the relief sought in the Motion has been

provided under the circumstances, and no other or further notice is required, except as set forth in

the Global Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

F.      The Assumption and Assignment Procedures, Sale Notice, and Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Transaction(s), Auction(s), Sale Hearing(s), Global Bidding Procedures, Assumption and Assignment Procedures, proposed Cure Costs, potential assumption and assignment of Contracts and Leases, and all relevant important dates and deadlines with respect to the foregoing, and no other or further notice of the sale of the Assets or the assumption and assignment of Contracts and Leases in connection therewith shall be required.

G.      Good and sufficient business reasons exist for the Court to authorize the Debtors to designate Stalking Horse Bidders and enter into Stalking Horse Agreements (as hereinafter defined), in each case, in accordance with the terms of this Order and the Global Bidding Procedures.

H.      The Global Bidding Procedures are reasonably designed to promote active bidding at and participation in the Auction(s), to ensure that the highest or best value is generated for the Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

**DECREED THAT**:

1.      The Motion is granted solely to the extent set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

3.      The Global Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction(s).  The failure to specifically include or reference any particular provision of the Global Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Global Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Global Bidding Procedures.

**Designation of Stalking Horse Bidders**

4.      The Debtors are authorized to, in the exercise of their reasonable business judgment, and after consulting with the Consultation Parties, designate one or more Stalking Horse Bidders for one or more of the Assets and enter into asset purchase agreements with Stalking Horse Bidders (each such agreement, a "**Stalking Horse Agreement**") for the sale of any of the Assets (each such group of Assets, a "**Stalking Horse Package**"), in each case, in accordance with the terms of this Order and the Global Bidding Procedures.

5.      Subject to the terms of this Order and the Global Bidding Procedures, the Debtors are authorized to offer each Stalking Horse Bidder certain Stalking Horse Bid

Protections, including a break-up fee (a "**Termination Payment**"); <u>provided</u> <u>that</u>, all Termination Payments must be negotiated by the Debtors, in consultation with the Consultation Parties, and no Termination Payment shall exceed three percent (3%) of the cash portion of the purchase price in the applicable Stalking Horse Bid, as set forth in the applicable Stalking Horse Agreement executed by the Debtors.

6.    If the Debtors designate a Stalking Horse Bidder, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/Sears (the "**Prime Clerk Website**"), a Sale Notice setting forth the material terms of such Stalking Horse Agreement including any Credit Bid and the terms of the applicable Stalking Horse Bid Protections and attaching the Stalking Horse Agreement and proposed sale order.

7.    Objections to the designation of a Stalking Horse Bidder, the terms of a Stalking Horse Agreement, including any Credit Bid, release provisions, or the provision of a Termination Payment (each, a "**Stalking Horse Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients within ten (10) calendar days after service of the applicable Sale Notice with respect to all Assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after service of the applicable Sale Notice to file a Stalking Horse Objection.  Parties in interest shall have until **December 28, 2018, at 4:00 p.m. (Eastern Time)** to object to a Stalking Horse Agreement with respect to the sale of the Go Forward Stores.

8.      If a timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the proposed Stalking Horse Bidder, the terms of the Stalking Horse Agreements, including any Credit Bid and Termination Payment provided for under such agreement, shall not be deemed approved until the Stalking Horse Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection.

9.      If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the Debtors' entry into the applicable Stalking Horse Agreement will be deemed approved without further order of the Court upon the expiration of the objection deadline, including with respect to any Stalking Horse Bid Protections consistent with this Order; provided that if an affiliate includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid until it receives an order of the Court approving its ability to Credit Bid.

10.     Absent further order of the Court, no person or entity, other than any applicable Stalking Horse Bidder, shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in the Auction or the Debtors' sale process.

**Global Bidding Procedures**

11.     The deadline for submitting Qualified Bids (the "**Bid Deadline**") is **December 28, 2018, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and shall be no earlier than twenty (20) days following service of the applicable Sale Notice for all

other Assets; provided that, the Debtors shall have the right, after consulting with the Consultation Parties and consistent with the terms of the DIP ABL Documents (as defined in the DIP ABL Orders), to extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain parties. The Debtors shall promptly provide copies of all bids to each of the Consultation Parties, but in no event later than the next calendar day.

12.    For all purposes under the Global Bidding Procedures, any Stalking Horse Bidder shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid. In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the applicable Stalking Horse Package by the Bid Deadline, the Debtors shall not be required to conduct an Auction for the applicable Stalking Horse Package, and the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Assets included in the applicable Stalking Horse Package as set forth herein.

13.    If, in addition to a Stalking Horse Bid, the Debtors receive at least one Qualified Bid in respect of the applicable Stalking Horse Package by the Bid Deadline, the Debtors shall conduct an Auction of the Assets in the applicable Stalking Horse Package in accordance with the Global Bidding Procedures.

14.    The Debtors may also include Assets not included in an applicable Stalking Horse Bid for bidding and sale at the Auction pursuant to the Global Bidding Procedures.

15.    The Auction will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **January 14, 2019, at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores, and Auctions will take place within twenty-five (25) days of service of the applicable Sale Notice with respect to all other Assets at a

location to be announced, or at such other time and location as the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, may determine in their reasonable business judgment.

16.    All proceedings of an Auction shall be conducted openly, and the Consultation Parties, their professional advisors, and all creditors and other parties in interest shall be permitted to attend; provided that, the Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany Qualified Bidders or other parties in interest at an Auction.  The proceedings of Auctions shall be transcribed and/or video recorded.

17.    Each Qualified Bidder participating in an Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets in its bid if selected as a Successful Bidder.

18.    Subject to this Order, the Global Bidding Procedures, and the rights of a Stalking Horse Bidder under its applicable Stalking Horse Agreement, the Debtors shall have the right to, after consulting with the Consultation Parties, in the exercise of their reasonable business judgment, (i) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (ii) determine the "Baseline Bids;" (iii) determine the amount of each Minimum Overbid; (iv) determine which bids that are Qualified Bids are the Successful Bids and Back-Up Bids; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Global Bidding Procedures, Bankruptcy Code, this Order, or any other order of the Court, or (c) contrary to the best interests of the Debtors and

their estates; (vi) adjourn or cancel the Auction, with respect to all or certain of the Assets, after providing notice of such adjournment or cancellation in accordance with the Global Bidding Procedures; and (vii) adjourn a Sale Hearing after providing notice of such adjournment in accordance with the Global Bidding Procedures.

19.    The Debtors shall have the right, in their reasonable business judgment, after consulting with the Consultation Parties, in a manner consistent with the Debtors' fiduciary duties and applicable law, to modify the Global Bidding Procedures, including by (i) waiving terms and conditions with respect to all Prospective Bidders; (ii) extending the deadlines set forth therein; (iii) announcing at an Auction modified or additional procedures for conducting the Auction; (iv) providing reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidders on any Assets (including extending deadlines as may be required for any applicable Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with any previous filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976), in each case, to the extent not materially inconsistent with the Global Bidding Procedures and this Order.  Except as provided in any Stalking Horse Agreement, nothing in this Order or the Global Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.

## The Sale Hearings and Sale Objections Deadlines

20.    The applicable Sale Hearing shall be held before the Court on **January 31, 2019 at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores and within five (5) days of the applicable Sale Objection Deadline (as defined herein) with respect to all other

Assets; provided that, the Debtors may seek an adjournment of the Sale Hearing, as the Debtors, in consultation with the Consultation Parties, deem appropriate in the exercise of their reasonable business judgment.

21.     Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients by no later than **January 24, 2019 at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and within eight (8) days of the filing of the Notice of Auction Results and service of the Adequate Assurance Information with respect to all other Assets (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.   If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing.

22.     Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the applicable Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction(s) contemplated by the asset purchase agreement between the Debtors and the applicable Successful Bidder (including any Stalking Horse Bidder if named a Successful Bidder), including the transfer of Assets to the Successful Bidder (and any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f)

of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

## <u>Noticing Procedures</u>

23. The Sale Notice is approved, and no other or further notice of the sale of any Assets, an Auction, the Sale Hearings, or the Sale Objection Deadlines shall be required if the Debtors serve and publish such notice, in the manner provided in the Global Bidding Procedures and this Order. The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

24. Within five (5) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores and at any time thereafter with respect to all other Assets, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website the Sale Notice, which shall set forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing; (iii) Sale Objection Deadlines; and (iii) the procedures for filing Sale Objections.

25. Within seven (7) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors shall cause the information contained in the Sale Notice to be published once in at least one national publication. The Debtors may elect to publish notice of the sales of other Assets in consultation with the Consultation Parties.

26. Within two (2) business days after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties (including each Counterparty

to a Proposed Assumed Contract (as hereinafter defined) in a Successful Bid and Back-Up Bid and each Counterparty to any known Contracts and Leases that have been or may later be designated by a Successful Bidder for assumption and assignment), and cause to be published on the Prime Clerk Website, a notice containing the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment in connection with a Sale Transaction; and (v) set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

## Assumption and Assignment Procedures

27.    The Assumption and Assignment Notice is reasonable, fair, and appropriate, and contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of Contracts and Leases (such Contracts and Leases, the "**Proposed Assumed Contracts**") shall be required if the Debtors file and serve such notice (and, subsequently, the Notice of Auction Results and any applicable Notice of Designation (as hereinafter defined)) in accordance with the Assumption and Assignment Procedures and this Order.

28.    The Debtors shall, as soon as reasonably practicable after designation of a Stalking Horse Bidder, file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty, and cause to be published on the Prime Clerk Website, the Assumption

and Assignment Notice, which shall (i) identify the Proposed Assumed Contracts in the applicable Stalking Horse Bid and, if known, any additional Contracts or Leases that may be designated for assumption and assignment (the "**Designation Rights Contracts**") to the applicable Stalking Horse Bidder (or its known proposed assignee) pursuant to the terms and provisions of the applicable Stalking Horse Agreement; (ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract and Lease identified on the Assumption and Assignment Notice; (iii) expressly state that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court approval; (iv) prominently display the deadline to file a Cure Objection and an applicable Adequate Assurance Objection (each as hereinafter defined); and (v) prominently display the dates, times, and location of the Sale Hearing(s).

29.    Pursuant to the terms of an applicable Stalking Horse Agreement or asset purchase agreement with a Successful Bidder, the Stalking Horse Bidder or Successful Bidder, as applicable may have the right, until a specified date, to designate any Designation Rights Contracts for assumption and assignment. The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable after the Debtors' receipt of a Buyer Assumption Notice, (i) file with the Court, serve by overnight delivery on the applicable Counterparty, and cause to be published on the Prime Clerk Website, a notice of proposed assumption and assignment of the applicable Designation Rights Contract (a "**Notice of Designation**"), which shall (a) expressly state that assumption or assignment of the Designation Rights Contract is not guaranteed and subject to Court approval, and (b) prominently display the deadline to file an applicable Adequate Assurance Objection; and (ii) provide or cause to be provided to the

applicable Counterparty the applicable Stalking Horse Bidder's or Successful Bidder's, as applicable, Adequate Assurance Information (as hereinafter defined).

30.    The Debtors shall provide notice to Counterparties whose Contracts or Leases may be designated for assumption and assignment by any Successful Bidder, pursuant to the terms of an asset purchase agreement executed by the Debtors and the applicable Successful Bidder, in a manner consistent with the Assumption and Assignment Procedures, this Order, and all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

31.    Any objection to the assumption and assignment of a Contract or Lease, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding defaults under such Contract or Lease (a "**Cure Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof, including the cure amount the objecting Counterparty believes is required to cure defaults under the relevant Contract or Lease; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients **within eight (8) calendar days of service of the Debtors' proposed Cure Costs**.

32.    If a Cure Objection cannot otherwise by resolved by the parties, the Debtors may, after consultation with the Consultation Parties, (i) assume the Contract(s) or Lease(s) prior to the resolution of the Cure Objection; provided that the Debtors shall (a) pay to the applicable Counterparty the undisputed portion of the Cure Cost within five (5) business days after entry of the applicable Sale Order and (b) reserve cash in an amount sufficient to pay the disputed portion of the Cure Cost reasonably asserted by the applicable Counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the Counterparty and the Debtors) (the "**Reserve Amount**"), or (ii) adjourn their request to assume

the Contract or Lease pending resolution of the Cure Objection (an "**Adjourned Cure Objection**"); provided further that, to the extent the Adjourned Cure Objection is resolved or determined unfavorably to the Debtors, the Debtors may withdraw the proposed assumption of the applicable Contract or Lease after such determination by filing a notice of withdrawal, which, in the case of a Lease, shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. The Debtors shall file notice of their intention to reserve for a Cure Cost or to adjourn their request for assumption. An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction in the Debtors' discretion.

33.    If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

34.    In accordance with the Global Bidding Procedures, to qualify as a Qualified Bidder, each Prospective Bidder shall provide with its bid information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including the Prospective

Bidder's financial wherewithal and willingness to perform under the applicable Proposed

Assumed Contracts and any other Contracts or Leases that may later be designated by the

Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection

with a Sale Transaction (such information, "**Adequate Assurance Information**").

35.    In the event the Debtors designate a Stalking Horse Bidder, the Debtors

shall use commercially reasonable efforts to, on the date of service of the Sale Notice, or as soon

as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to

Proposed Assumed Contracts in the applicable Stalking Horse Bid, and (ii) Counterparties to any

known Contracts or Leases that later may be designated by the applicable Stalking Horse Bidder

for assumption and assignment pursuant to the applicable Stalking Horse Bidder, Adequate

Assurance Information for the Stalking Horse Bidder.

36.    If a Stalking Horse Bidder is named a Successful Bidder at the Auction,

the Debtors shall, within two (2) business days after the conclusion of the Auction, provide or

cause to be provided to (i) Counterparties to any additional Proposed Assumed Contracts added

to the applicable Stalking Horse Bid at the Auction, and (ii) applicable Counterparties to any

known Contracts and Leases that may later be designated by the applicable Stalking Horse

Bidder for assumption and assignment pursuant to the terms of the applicable Stalking Horse

Agreement, Adequate Assurance Information for the Stalking Horse Bidder.

37.    The Debtors shall, within two (2) business days after the conclusion of the

Auction, provide or cause to be provided to (i) Counterparties to the Proposed Assumed

Contracts included in each Successful Bid, and (ii) Counterparties to any known Contracts and

Leases that may later be designated by a Successful Bidder for assumption and assignment

pursuant to an asset purchase agreement executed by the applicable Successful Bidder and the Debtors, Adequate Assurance Information for such Successful Bidder.

38.     The Debtors shall provide or cause to be provided to applicable Counterparties Adequate Assurance Information on a strictly confidential basis.  Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection filed by the Counterparty; provided that, any Adequate Assurance Objection that discloses confidential, non-public information included in the Adequate Assurance Information, which shall be expressly identified as non-public and confidential therein, must be filed with the Court with such confidential, non-public information redacted, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Contract or Lease (if different from the Successful Bidder), or ordered by the Court.

39.     Any objection to the assumption and assignment of a Proposed Assumed Contract, the subject of which objection is any Stalking Horse Bidder's or Successful Bidder's, as applicable, and/or its known proposed assignee's (if different from the Stalking Horse Bidder's or Successful Bidder's, as applicable) proposed form of adequate assurance of future performance with respect to such Proposed Assumed Contract (an "**Adequate Assurance Objection**"), shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients, including the applicable Stalking Horse Bidder or Successful Bidder, as

applicable, and any known proposed assignee of such Proposed Assumed Contract (if different from the Stalking Horse Bidder or Successful Bidder, as applicable) by no later than **eight (8) calendar days after service of the applicable Adequate Assurance Information.**

40.    If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance with respect to the applicable Proposed Assumed Contract shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors.

41.    If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the Contract or Lease.  The Stalking Horse Bidder or Successful Bidder, as applicable, and/or its known proposed assignee of the Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

42.    For the avoidance of doubt, if no timely Adequate Assurance Objection is filed with the Court and served on the Objection Recipients in response to a Notice of Designation, the Stalking Horse Bidder or Successful Bidder, as applicable, shall be deemed to have provided adequate assurance of future performance with respect to the applicable Designation Rights Contract in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Designation Rights Contract or any other document, and the Debtors shall be authorized to

assume and assign the applicable Designation Rights Contract to the Stalking Horse Bidder or Successful Bidder (or its known proposed assignee), as applicable, without further notice to any Counterparty or any other party in interest, and without need for further order of the Court, with such assumption and assignment being subject to the terms of the applicable Sale Order.

43.    The Debtors' assumption and assignment of a Proposed Assumed Contract to a Successful Bidder (or to a designee of the Successful Bidder) is subject to Court approval and consummation of a Sale Transaction with the applicable Successful Bidder.  Accordingly, absent the closing of a Sale Transaction, the Proposed Assumed Contract shall not be deemed either assumed or assumed and assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

44.    The inclusion of a Contract, Lease, or Cure Costs with respect thereto on the Assumption and Assignment Notice or the Notice of Auction Results shall not constitute or be deemed a determination or admission by the Debtors, the Stalking Horse Bidder(s) or Successful Bidders, as applicable, or any other party in interest that such Contract or Lease is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on the Assumption and Assignment Notice and Notice of Auction Results.  The Debtors' inclusion of any Contract or Lease on the Assumption and Assignment Notice or Notice of Auction Results shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.

## General Provisions

45.    All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Assets during the sale process, including at an Auction, shall be

deemed to have knowingly and voluntarily (i) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale Transaction; (ii) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auctions, and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (iii) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

46.    Prior to mailing and publishing a Sale Notice or an Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

47.    Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP ABL Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP ABL Orders).

48.    The Debtors rights are reserved to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify these Global Bidding Procedures; waive terms and conditions set

forth herein with respect to all Prospective Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidders on any Assets (including extending deadlines as may be required for any Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Global Bidding Procedures and the Global Bidding Procedures Order. **Except as provided in any Stalking Horse Agreement approved or deemed approved by the Court as set forth herein, the Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.**

49.    To the extent there is any inconsistency between the terms of any of the DIP ABL Orders and this Order, the terms of the DIP ABL Order (or DIP ABL Orders, as applicable) shall control.

50.    Notwithstanding anything to the contrary contained in this Order or in the Global Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by this order or the Global Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, the DIP ABL Orders and the Prepetition ABL

Documents, as applicable; and (iii) nothing in this Order or in the Global Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder

51.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

52.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
        White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

18-23538-shl    Doc 429    Filed 11/01/18    Entered 11/01/18 23:56:17    Main Document
Pg 63 of 97


**<u>Exhibit 1</u>**

**Global Bidding Procedures**

WEIL:\96773754\3\73217.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                       :
                                            :        Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,       :
                                            :        Case No. 18-23538 (RDD)
                                            :
                    Debtors.[1]             :        (Jointly Administered)

-------------------------------------------------------------x

## GLOBAL BIDDING PROCEDURES

The procedures set forth herein (the "**Global Bidding Procedures**") will be employed in connection with a sale or disposition of certain of the assets of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

By the *Debtors' Motion for Approval of Global Bidding Procedures* (the "**Motion**"), the Debtors sought, among other things, approval of the Global Bidding Procedures for soliciting bids for, conducting auctions (each, an "**Auction**") of, and consummating sales (each, a "**Sale Transaction**") of their assets, as further described herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

1

On [_____], 2018, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered the an order approving the Motion (ECF No. [__]) (the "**Global Bidding Procedures Order**").[2]

## I.
## Description of the Assets

The Debtors are seeking to sell [_____] (the "**Assets**").

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)).

## II.
## Designation of Stalking Horse Bidders

[Describe Stalking Horse Agreement]

i.     <u>Objections to Stalking Horse Agreement</u>.  Any objections to the designation of a Stalking Horse Bidder, the terms of a Stalking Horse Agreement, including any Credit Bid, release provisions, or the provision of a Termination Payment to a Stalking Horse Bidder pursuant to the terms and provisions of a Stalking Horse Agreement (a "**Stalking Horse Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients within ten (10) calendar days after service of the applicable Sale Notice with respect to all assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after service of the applicable Sale Notice to file a Stalking Horse Objection. Parties in interest shall have until **December 28, 2018, at 4:00 p.m. (Eastern Time)** to object to a Stalking Horse Agreement with respect to the sale of the Go Forward Stores.

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed Stalking Horse Agreement, including any Credit Bid, Landlord Bid, and Termination Payment provided for under such agreement, shall not be deemed approved until the Stalking Horse Objection is resolved, either consensually, by agreement of the objecting party and the Debtors (after consulting with the Consultation Parties), or by order of the Bankruptcy Court resolving such objection.

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the Global Bidding Procedures Order.

For the avoidance of doubt, any Stalking Horse Agreement shall not be binding on the Debtors or their estates absent approval (or deemed approval) by the Bankruptcy Court as set forth herein.

ii.     _Failure to File Timely Stalking Horse Objection_.  If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the Debtors' entry into the applicable Stalking Horse Agreement will be deemed approved without further order of the Court upon the expiration of the objection deadline, including with respect to any Stalking Horse Bid Protections; provided that if an affiliate of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid until it receives an order of the Court approving its ability to Credit Bid.

## III.
## Important Dates and Deadlines
### [Assets Other Than Go Forward Stores]

| | |
|---|---|
| **Within ten (10) days of service of the Sale Notice** | Deadline to object to proposed Sale Transaction(s) with a Stalking Horse Bidder that is not an insider or affiliate of the Debtors, including with respect to designation of such Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement (including any Credit Bid or Termination Payment) |
| **Within ten (10) days of service of the Assumption and Assignment Notice and Adequate Assurance Information for Stalking Horse Bidder, as applicable** | Deadline to object to (i) Debtors' proposed Cure Costs for Proposed Assumed Contracts in an applicable Stalking Horse Package and (iii) the assumption of and assignment to a Stalking Horse Bidder(s) of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by a Stalking Horse Bidder for assumption and assignment |
| **Within fourteen (14) days of service of the Sale Notice** | Deadline to object to proposed Sale Transaction(s) with Stalking Horse Bidder that is an insider or affiliate of the Debtors, including with respect to designation of Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement (including any Credit Bid or Termination Payment) |
| **No earlier than twenty (20) days following service of the Sale Notice** | Bid Deadline |
| **Within five (5) days of the Bid Deadline** | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |

| Not less than twenty-five (25) days following service of the Sale Notice | Auction |
|---|---|
| Within two (2) days of the conclusion of the Auction | Target date for Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide applicable Counterparties with Adequate Assurance Information for the Successful Bidders if different than Stalking Horse Bidders |
| Eight (8) days following the filing of Notice of Auction Results and service of the Adequate Assurance Information | Deadline to object to (i) proposed Sale Transaction(s) for Successful Bidders that are not Stalking Horse Bidders, (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not included in any Stalking Horse Bid, (iii) the assumption of and assignment to a Successful Bidder(s) that is not a Stalking Horse Bidder of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder(s) for assumption and assignment, and (iv) the conduct of the Auction |
| Within five (5) days of the deadline to file Sale Objections | Proposed date of Sale Hearing (subject to the availability of the Court) |

## IV.
## Important Dates and Deadlines
### [Go Forward Stores]

| November 15, 2018 at 10:00 a.m. (ET) | Hearing to consider approval of Global Bidding Procedures and entry of Global Bidding Procedures Order |
|---|---|
| November 21, 2018 | Deadline to Submit Non-Binding Indication of Interest |
| December 15, 2018 | Deadline for Debtors to designate Stalking Horse Bidder for Go Forward Stores |
| December 28, 2018 at 4:00 p.m. (ET) | Bid Deadline for Go Forward Stores; Deadline to object to Stalking Horse Bid for Go Forward Stores |
| January 4, 2019 at 4:00 p.m. (ET) | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
| January 10, 2019 at 10:00 a.m. (ET) | Proposed date of hearing on Stalking Horse Objections, if necessary (subject to the availability of the Court) |
| January 14, 2019 at 10:00 a.m. (ET) | Auction for Go Forward Stores to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 |

| | |
|---|---|
| **January 16, 2019** | Target date for Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide the applicable Counterparty with Adequate Assurance Information for the Successful Bidder if different than the Stalking Horse Bidder |
| **January 24, 2019 at 4:00 p.m. (ET)** | Deadline to object to (i) proposed Sale Transaction for a Successful Bidder that is not a Stalking Horse Bidder, (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not included in any Stalking Horse Bid, (iii) the assumption of and assignment to a Successful Bidder that is not a Stalking Horse Bidder of any (a) Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder for assumption and assignment, and (iv) conduct of the Auction |
| **January 29, 2019 at 4:00 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections |
| **January 31, 2019 at 10:00 a.m. (ET)** | Proposed date of Sale Hearing (subject to the availability of the Court) |

## V.
## Noticing

### A.    Consultation Parties

Throughout the sale process, the Debtors and their advisors will consult with the following parties (collectively, the "**Consultation Parties**"):

      i.    Bank of America, N.A., in its capacity as the administrative agent under the First Lien Credit Facility and DIP ABL Agent and its advisors, including Skadden, Arps, Slate, Meagher & Flom LLP; and Berkeley Research Group, LLC;

     ii.    Wells Fargo Bank, National Association, in its capacity as Co-Collateral Agent under the First Lien Credit Facility and Co-Collateral Agent under the DIP ABL Facility (as defined in the DIP ABL Orders) (together with Bank of America, N.A., the "**DIP ABL Agents**") and its advisors, including Choate, Hall & Stewart LLP; and

    iii.    the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**") and its advisors, including Akin Gump Strauss Hauer & Feld LLP.

The Debtors shall promptly provide copies of all bids and non-binding indications of interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such bid is received; provided that the Consultation Parties must treat such bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.  Further, the Debtors shall

not consult with or provide copies of bids regarding any assets to any Consultation Party or any insider or affiliate of the Debtors pursuant to the terms of these Global Bidding Procedures if such party has a bid for the Assets pending; provided, however, that if such insider or affiliate of the Debtors chooses not to submit a bid, then such party may receive copies of bids after the Bid Deadline has passed.  Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid (as hereinafter defined), the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable Assets, and shall not provide any confidential information regarding the Assets or a transaction involving the Assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Global Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.  Rights that Consultation Parties may have pursuant to the terms of other agreements or orders of the Court shall not be affected by these Global Bidding Procedures or the Global Bidding Procedures Order.

**B.**     **Bid Notice Parties**

Qualified Bids must be submitted in writing to the following parties (collectively, the "**Bid Notice Parties**"):

   i.     the Debtors (Attn:  Rob Riecker (rob.riecker@searshc.com); Luke Valentino (luke.valentino@searshc.com);      and      Mohsin      Meghji (mmeghji@miiipartners.com);

   ii.    counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com); and Sunny Singh, Esq. (sunny.singh@weil.com)); and

   iii.   the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com).

**C.**     **Sale Notice Parties**

The "**Sale Notice Parties**" shall include the following persons and entities:

   i.     the Consultation Parties (as applicable);

   ii.    the Standard Parties (as defined in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405));

   iii.   any governmental authority known to have a claim against the Debtors in these chapter 11 cases;

iv.      all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service;

v.       all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency;

vi.      the United States Attorney General;

vii.     the United States Attorney for the Southern District of New York;

viii.    the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate;

ix.      the Antitrust Division of the United States Department of Justice;

x.       the Federal Trade Commission;

xi.      all of the persons and entities entitled to notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and

xii.     all other persons and entities as directed by the Bankruptcy Court.

Within five (5) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors will file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website, a notice (the "**Sale Notice**") setting forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearings (as hereinafter defined); and (iii) the deadlines and procedures for objecting to the proposed Sale Transactions.

Within seven (7) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors shall cause the information contained in the Sale Notice to be published once in at least one national publication.

## D.      Objection Recipients

Sale Objections (as hereinafter defined) shall be filed with the Bankruptcy Court and served on the following parties (collectively, the "**Objection Recipients**"): (i) the Bid Notice Parties; (ii) the Consultation Parties; and (iii) counsel to the relevant Stalking Horse Bidder, if applicable, or Successful Bidder (as hereinafter defined) at the applicable Auction by no later than (x) **January 24, 2019, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores, (y) eight (8) days following the filing of the Notice of Auction Results and service of the Adequate Assurance Information with respect to the Other Assets, or (z) ten (10) days after the filing and service of a notice of entry into a Stalking Horse Agreement; provided that the deadline shall be fourteen (14) days after the filing and service of a notice of entry into a Stalking Horse Agreement if the Stalking Horse Bidder is an affiliate (the "**Sale Objection Deadline**").

E.      **Notices Regarding Assumption and Assignment**

The Debtors shall provide all notices regarding the proposed assumption, assignment, and designation of Contracts and Leases in accordance with the Global Bidding Procedures Order.

## VI.
## Bidder Qualifications

Each person or entity that desires to participate in the Auction (each, a "**Prospective Bidder**") must be determined by the Debtors, after consultation with the Consultation Parties, to satisfy the following eligibility requirements:

A.      **Due Diligence**

To be eligible to participate in the Auction, a Prospective Bidder must first execute a confidentiality agreement, in form and substance satisfactory to the Debtors.  Upon execution of a valid confidentiality agreement, any Prospective Bidder identified by the Debtors, after consultation with the Consultation Parties, to be reasonably likely to be a Qualified Bidder (as hereinafter defined) that wishes to conduct due diligence on the Assets may be granted access to confidential information regarding the same, including an information package containing information and financial data with respect to the applicable Assets and access to a data room (the "**Data Room**") with confidential electronic data concerning the Assets.  If the Debtors, after consultation with the Consultation Parties, determine that a Prospective Bidder does not qualify as a Qualified Bidder, the Prospective Bidder shall not be entitled to access to the Data Room or receive additional non-public information regarding the Debtors' businesses, the Assets, or the sale process.

Promptly upon a Prospective Bidder entering into a confidentiality agreement, but in any event no later than the next calendar day following such event, the Debtors will notify each of the Consultation Parties and provide to such Consultation Parties copies of such executed confidentiality agreements.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders.  All due diligence requests shall be directed to the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)).

B.      **Non-Binding Indication of Interest Date for Go Forward Stores**

If you are interested in purchasing any of the Go Forward Stores, whether individually, in combination, or in connection with a Stalking Horse Store Package, you should contact the Debtors' advisors by **no later than November 21, 2018** (the "**Non-Binding Indication of Interest Date**"), in writing expressing your interest and identifying the Assets in which you are expressing such interest to Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com))

Note that submitting an indication of interest by the Non-Binding Indication of Interest Date does not obligate you to submit a formal bid or to participate in the sale process and does not exempt you from also having to submit a Qualified Bid by the Bid Deadline (defined below) in order to participate in any subsequent Auction for the Assets on which you are indicating an interest, all as described below.

## A.    Bid Deadline

Any Prospective Bidder that intends to participate in an Auction must submit a Qualified Bid (as hereinafter defined) on or before **December 28, 2018, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and within twenty (20) days of service of the applicable Sale Notice with respect to the Other Assets (each, a "**Bid Deadline**") in writing to the Bid Notice Parties.

The Debtors may, after consulting with the Consultation Parties and consistent with the terms of the DIP ABL Documents (as defined in the DIP ABL Orders), extend a Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Prospective Bidders.  For the avoidance of doubt, any such extension shall not affect any applicable milestones under the DIP ABL Orders.

## B.    Qualified Bid Requirements

To qualify as a "**Qualified Bid**," a bid must (i) be a Stalking Horse Bid, or (ii) be in writing and determined by the Debtors, after consultation with the Consultation Parties, to satisfy the following requirements:

1.    Identification of Bidder.  A Qualified Bid must fully disclose the legal identity of each person or entity bidding for the Assets or otherwise participating in the Auction in connection with such bid (including any equity holders or other financial backers, if the Prospective Bidder is an entity formed for the purpose of submitting bids or consummating a Sale Transaction), and the complete terms of any such participation, and must also disclose any connections, arrangements, or agreements, whether oral or written, with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

2.    Proposed APA.  A Qualified Bid must include an executed asset purchase agreement (the "**Proposed APA**") with a redline marked to show any proposed amendments and modifications to the Stalking Horse Agreement (if any).

3.    Purchased Assets.  A Qualified Bid must clearly identify the following:

a.    the Assets to be purchased, including any Contracts and Leases of the Debtors that would be assumed and assigned in connection with the proposed Sale Transaction (all such Contracts and Leases, the "**Proposed Assumed Contracts**");

b.     with respect to a bid for multiple Assets, the allocation of value in U.S. dollars that the Prospective Bidder associates with each Asset, including a description of any significant assumptions on which such valuation is based;

c.     the liabilities, if any, to be assumed, including any debt to be assumed; and

d.     the Credit Bid or Landlord Bid (each as hereinafter defined), or non-cash consideration, if applicable, and/or the cash purchase price of the bid.

4.     <u>Form of Consideration</u>.

a.     <u>Credit Bidding</u>.  Persons or entities holding a perfected security interest in Assets may seek to Credit Bid, to the extent permitted by applicable law and the documentation governing the Debtors' prepetition credit facilities; provided that such Credit Bid complies with the terms of any order of the Court approving debtor in possession financing or the use of cash collateral; provided that a credit bid by an insider or affiliate may only be permitted if expressly authorized by the Court and compliant with the DIP ABL Orders.  Each of the DIP ABL Agents shall be deemed a Qualfied Bidder and shall be entitled to Credit Bid all or a portion of its respective DIP ABL Obligations or Prepetition ABL Obligations (each as defined in the DIP ABL Orders) as applicable, in accordance with section 363(k) of the Bankruptcy Code.

b.     <u>Landlord Bid</u>.  Subject to the Debtors' discretion to consider such bids, any bid submitted by a landlord for the purchase of one of more of such landlord's own Leases (each such bid, a "**Landlord Bid**") may include a purchase price comprised of a (i) cash component, and (ii) a non-cash component that represents a "credit" for rental arrears under such Lease (a "**Landlord Credit**") to reduce the cash consideration for the applicable Lease, but not the Good Faith Deposit (as hereinafter defined) required.

c.     <u>Other Non-Cash Consideration</u>. Subject to the Debtors' discretion to consider such bids, a bid may be in the form of or include non-cash consideration such as stock.

d.     <u>Cash Requirements</u>. All bids must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full.  Any Credit Bid must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable Assets.

5.   <u>Good Faith Deposit</u>.  Excluding bids that include a Credit Bid, a Qualified Bid must be accompanied by a "**Good Faith Deposit**" in the form of cash in the amount equal to at least ten percent (10%) of the proposed purchase price.  The Debtors may require a higher Good Faith Deposit in their discretion, after consultation with the Consultation Parties, as necessary to protect the interests of their estates or to maximize value.  Good Faith Deposits shall be deposited prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**"), pursuant to the escrow agreement to be provided by the Debtors to Prospective Bidders, and Qualified Bidders shall provide information reasonably requested by the Escrow Agent to establish the deposit, including KYC information.  All Good Faith Deposits shall be held in escrow until no later than ten (10) days after the conclusion of the Auction (except for the Good Faith Deposits of the Successful Bidder(s) and Back-Up Bidder(s)), and thereafter returned to the respective bidders in accordance with the provisions of Part IX of these Global Bidding Procedures.

To the extent that a bid is modified at or prior to the Auction, the bidder must adjust its Good Faith Deposit so that it equals no less than the required deposit to purchase the applicable Assets.

6.   <u>Financial Information</u>. A Qualified Bid must include the following:

a.   a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction(s) contemplated by the Proposed APA;

b.   if applicable, and except for a Landlord Bid, information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**"), which Adequate Assurance Information may also include (x) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of applicable Contracts and

Leases; and (y) financial statements, tax returns, and annual reports; and

c.       sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors, after consulting with the Consultation Parties, to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to consummate the Sale Transactions contemplated in the Prospective Bidder's Proposed APA in a timely manner, including copies of any commitment letters.

7.     <u>Representations and Warranties</u>. A Qualified Bid must include the following representations and warranties:

a.       a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the applicable Assets prior to submitting its bid; and

b.       a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Proposed APA ultimately accepted and executed by the Debtors.

c.       A statement that it has not engaged in any collusion with respect to the submission of its bid.

8.     <u>Required Approvals</u>. A Qualified Bid must include a statement or evidence (i) that the Prospective Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("**HSR Filings**"), as amended, if applicable, and pay the fees associated with such filings; and (ii) identifying all required governmental and regulatory approvals and an explanation and/or evidence of the Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals required from and after closing an applicable Sale Transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals. A Prospective Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain the Prospective Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

9.      <u>Authorization</u>.    A Qualified Bid must include evidence of corporate authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing of the transactions contemplated by the Prospective Bidder's Proposed APA in accordance with the terms of the bid and these Global Bidding Procedures.

10.     <u>Other Requirements</u>. A Qualified Bid shall

a.      expressly state that the Prospective Bidder agrees to serve as a back-up bidder (a "**Back-Up Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the applicable Assets;

b.      state that the bid is formal, binding, and unconditional (except as set forth in an applicable asset purchase agreement ultimately executed by the Debtors); is not subject to any further due diligence; and is irrevocable until the first business day following the close of a Sale Transaction for the applicable Assets;

c.      with the exception of any Stalking Horse Bid, expressly state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or sale process, unless otherwise granted by the Debtors, in consultation with the Consultation Parties, in accordance with these Global Bidding Procedures and approved by the Bankruptcy Court;

d.      expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets and/or participating in the Auction;

e.      not contain any unsatisfied financing contingencies of any kind;

f.      be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties;

g.      a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any

applicable antitrust laws and other applicable regulatory requirements;

h.    include contact information for the specific person(s) the Debtors should contact in the event they have questions about the Prospective Bidder's bid; and

i.    a covenant to comply with the terms of the Global Bidding Procedures and the Global Bidding Procedures Order.

For the avoidance of doubt, a Stalking Horse Bid is a Qualified Bid that complies with or is exempted from the foregoing requirements.

Notwithstanding the foregoing or anything contained in these Global Bidding Procedures to the contrary, the Debtors reserve the right to, in consultation with the Consultation Parties, consider Landlord Bids (and Partial Bids that include Landlord Bids).  A Landlord Bid may qualify as a Qualified Bid if such bid complies with the Qualified Bid requirements set forth in Paragraphs 1; 4(b); 6, 7, 9; and 10.  For the avoidance of doubt, Landlord Bids shall not be required to include any Adequate Assurance Information with respect to the bidding landlord's ability to perform under its own Lease.

**D.    Qualified Bidders**

A bid received for the Assets that is determined by the Debtors, after consultation with the Consultation Parties, to meet the requirements set forth in Section C above will be considered a "Qualified Bid," and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

**VII.**
**Bid Review Process**

The Debtors will evaluate timely bids, at the direction of the Restructuring Committee and in consultation with the Consultation Parties and, may, based upon their evaluation of the content of each bid, engage in negotiations with Prospective Bidders who submitted bids, as the Debtors deem appropriate, in their reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law.  In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1.    the amount of the purchase price and Credit Bid, Landlord Credit, and/or other non-cash consideration, as applicable, set forth in the bid;

2.     the Assets included in or excluded from the bid, including any Proposed Assumed Contracts;

3.     the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4.     any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit;

5.     the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.     the impact on employees and employee claims against the Debtors;

7.     the impact on trade creditors and landlords; and

8.     any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors, after consultation with the Consultation Parties, will make a determination regarding which bids qualify as a Qualified Bids, and will notify Prospective Bidders whether they have been selected as Qualified Bidders by no later than **January 4, 2019** with respect to the Go Forward Stores and within five (5) days of the applicable Bid Deadline with respect to the Other Assets.

The Debtors reserve the right, in consultation with the Consultation Parties, to work with any Prospective Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid. The Debtors, at the direction of the Restructuring Committee and after consultation with the Consultation Parties, may accept a single bid or multiple Partial Bids for non-overlapping Assets such that, if taken together, would otherwise meet the standards for a single Qualified Bid as to any Assets or combinations of Assets that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction). Without the prior written consent of the Debtors, after consulting with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid.

At the direction of the Restructuring Committee, and after consultation with the Consultation Parties, the Debtors shall make a determination regarding the following:

(A)     the Assets and/or combinations of Assets to be auctioned by the Debtors, which may include any individual Assets or combinations of Assets, including any Stalking Horse Package (each group of Assets, an "**Auction Package**");

(B)     the highest or best Qualified Bid (or collection of Partial Bids comprising one Qualified Bid) for each Auction Package (each, a "**Baseline Bid**" and, such bidder or group of bidders, a "**Baseline Bidder**") to serve as the starting point at the Auction for such Auction Package; and

(C)     which bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid; <u>provided</u> <u>that</u> the Debtors may permit a Qualified Bidder to bid on more than one Auction Package.

As soon as practicable, but in no event later than the next calendar day, the Debtors will provide copies of each Baseline Bid to the Consultation Parties. The Debtors will consult with the Consultation Parties regarding the designation of Baseline Bids and advise the Consultation Parties of the designated Baseline Bids within one (1) calendar day of the Debtors' determination of Baseline Bids.

# VIII.
## Auctions

With respect to any Stalking Horse Package, if no Qualified Bid other than the applicable Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct an Auction for the Stalking Horse Package and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice indicating that the Auction for the Stalking Horse Package has been canceled and that the Stalking Horse Bidder is the Successful Bidder with respect to the Stalking Horse Package, and setting forth the date and time of the applicable Sale Hearing.

With respect to Assets not included in any Stalking Horse Package, if only one Qualified Bid is received in respect of such assets by the applicable Bid Deadline, the Debtors may, upon direction from the Restructuring Committee and after consulting with the Consultation Parties, determine to consummate a Sale Transaction with the applicable Qualified Bidder (without conducting an Auction for the applicable Assets) and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice identifying the Qualified Bidder and setting forth the terms of the Qualified Bid and the date and time of the applicable Sale Hearing.

**Except as provided in any Stalking Horse Agreement that has become binding on the Debtors pursuant to the Global Bidding Procedures, nothing herein shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.**

An Auction, if any, will be conducted at the offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 on **January 14, 2018, at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores and not less than twenty-five (25) days following service of the applicable Sale Notice with respect to the Other Assets at a location to be announced, or at such other time and location as designated by the Debtors, consistent with the terms of the DIP ABL Documents, after consulting with the Consultation Parties and providing

notice to the Sale Notice Parties. If held, the proceedings of an Auction will be transcribed and/or video recorded.

## A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the applicable Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Global Bidding Procedures.  Qualified Bidders participating in an Auction must appear in person at the Auction, or through a duly authorized representative.  Auctions will be conducted openly, and the Consultation Parties, their professional advisors, and all creditors will be permitted to attend; provided that the Debtors may, in their reasonable business judgment, and after consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder and other parties in interest at an Auction.

Each Qualified Bidder participating in an Auction will be required to confirm in writing and on the record at an Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

## B.    Auction Procedures

Auctions shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment, in consultation with the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law:

1.    Baseline Bids.  Bidding for each Auction Package shall commence at the amount of the Baseline Bid (or combination of Baseline Bids).

2.    Minimum Overbid.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the applicable Baseline Bid.  The Debtors shall, after consulting with the Consultation Parties, announce at the outset of the Auction the minimum required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**"). The Debtors may, in their reasonable business judgment, and after consulting with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

a.    Stalking Horse Credit for Termination Payment.  If a Qualified Bidder who is not a Stalking Horse Bidder bids at an Auction for a Stalking Horse Package, the applicable Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted toward its bid.  The cash and other considerations proposed by such Qualified Bidder must exceed the applicable Stalking Horse Bid by the purchase price contained in the Stalking Horse Bid, plus the Termination

Payment, by at least the amount of the Minimum Overbid to advance to the next round of bidding. To the extent that a Stalking Horse Bidder submits a competing bid for its Stalking Horse Package, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted toward its bid and the computation of the Minimum Overbid for bidders to advance to the next round of bidding with respect to the Stalking Horse Package.

3.    <u>Highest or Best Offer</u>. After the first round of bidding and between each subsequent round of bidding, the Debtors, after consulting with the Consultation Parties, shall announce the bid that they believe to be the highest or best offer (or combination of offers) for an Auction Package (each such bid, a "**Leading Bid**"). Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

Auctions may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to their proposed agreements at an Auction to improve their bids, including by bidding on additional Assets not included in their original Qualified Bid. The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in an Auction.

The Debtors shall have the right, after consulting with the Consultation Parties, to withdraw any Assets from an Auction that are not in a Stalking Horse Package and to determine, in their reasonable business judgment, in consultation with the Consultation Parties, which bid is the highest or best bid and reject, at any time, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Global Bidding Procedures, the DIP ABL Documents, any order of the Bankruptcy Court, or the best interests of the Debtors and their estates; except that, if a Stalking Horse Bid as reflected in a Stalking Horse Agreement is the only Qualified Bid received in respect of the applicable Stalking Horse Package, the foregoing shall be inoperative with respect to the Stalking Horse Bid. No attempt by the Debtors to reject a bid pursuant to this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under any Stalking Horse Bidder under any Stalking Horse Agreement (although the same may be consensually modified during an Auction).

C.    **Auction Results**

1.    <u>Successful Bids</u>.  Immediately prior to the conclusion of an Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Global Bidding Procedures, which Qualified Bids constitute the highest or best Qualified Bids for each of the Auction Packages (each such bid, a "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity of the bidders who submitted the Successful Bids (each such bidder, a "**Successful Bidder**") and the amount of the purchase prices and other material terms of the Successful Bids.

A Successful Bidder shall, within one (1) business day after the conclusion of the applicable Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid.  The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

2.    <u>Back-Up Bids</u>.  Immediately prior to the conclusion of an Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Global Bidding Procedures and the DIP ABL Documents, and except as provided in any Stalking Horse Agreement, which Qualified Bid is the next highest or next best Qualified Bid after the Successful Bid for an Auction Package (each such bid, a "**Back-Up Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identities of the Back-Up Bidders and the amount of the purchase prices and other material terms of the Back-Up Bids.

The Back-Up Bids shall remain open and irrevocable until the earliest to occur of (i) the first business day after the consummation of a Sale Transaction with the Successful Bidder for the applicable Asset; (ii) forty-five (45) days after the conclusion of the applicable Auction; and (iii) the release of the applicable Back-Up Bid by the Debtors (such date, the "**Back-Up Bid Expiration Date**").  If the Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the applicable Back-Up Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid at the applicable Auction.

The Debtors will, within two (2) business days after the conclusion of an Auction, file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment in connection with a Sale Transaction; and (v) set forth the deadline

and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

## IX.
## Disposition of Good Faith Deposits

**A.      Prospective Bidders**

Within three (3) business days after the applicable Bid Deadline, the Escrow Agent shall return to each Prospective Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit, plus any interest accrued thereon. Upon the authorized return of such Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed revoked and no longer enforceable.

**B.      Qualified Bidders**

1.   Forfeiture of Good Faith Deposit.  The Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted by these Global Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Global Bidding Procedures; or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate a Sale Transaction in accordance with these Global Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid.  The Escrow Agent shall release the Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

2.   Return of Good Faith Deposit.  With the exception of the Good Faith Deposits of Successful Bidders and Back-Up Bidders, the Escrow Agent shall return to any other Qualified Bidder any Good Faith Deposit, plus any interest accrued thereon, ten (10) business days after the conclusion of the Auction.

3.   Back-Up Bidders.  The Escrow Agent shall return a Back-Up Bidder's Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the occurrence of the applicable Back-Up Bid Expiration Date.

4.   Successful Bidders. The Good Faith Deposit of a Successful Bidder shall be applied against the cash portion of the purchase price of the Successful Bid upon the consummation of the applicable Sale Transaction.

**C.      Escrow Instructions**

The Debtors and, as applicable, the Prospective Bidder, Qualified Bidder, and/or Back-

Up Bidder agree to execute an appropriate joint notice to the Escrow Agent providing instructions for the return of any Good Faith Deposit, to the extent such return is required by these Global Bidding Procedures.  If either party fails to execute such written notice, the Good Faith Deposit may only be released by an order of the Bankruptcy Court.

## X.
## Sale Hearing

At one or more hearings before the Bankruptcy Court (each, a "**Sale Hearing**"), the Debtors will seek the entry of orders authorizing and approving, among other things, the following Sale Transactions (each, a "**Sale Order**"), to the extent applicable:

1.  if no other Qualified Bid is received by the Debtors in respect of a Stalking Horse Package, a sale of such assets to the applicable Stalking Horse Bidder pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement; and

2.  with respect to any Assets that are auctioned and/or sold by the Debtors pursuant to these Global Bidding Procedures, a sale of such assets to the applicable Successful Bidder(s).

The Debtors may, in their reasonable business judgment, after consulting with the Consultation Parties and the Successful Bidders (including any Stalking Horse Bidder if named a Successful Bidder), and consistent with the terms of the DIP ABL Documents, adjourn or reschedule any Sale Hearing with sufficient notice to the Sale Notice Parties, including by (i) an announcement of such adjournment at the applicable Sale Hearing or at the Auction, or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the applicable Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in any Stalking Horse Agreement.

Any objections to (A) a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the applicable Sale Objection Deadline.

All Sale Objections not otherwise resolved by the parties shall be heard at the applicable Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief

requested in the Motion, or to the consummation and performance of the Sale Transactions contemplated by any Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to any Stalking Horse Bidder, or Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, in accordance with the terms of the Global Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the applicable Counterparty, adjourn Cure Objections to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

## XI.
## Consent to Jurisdiction and Authority as Condition to Bidding

All Prospective Bidders and any Stalking Horse Bidder shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Global Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Global Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Global Bidding Procedures, an Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## XII.
## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify these Global Bidding Procedures; waive terms and conditions set forth herein with respect to all Prospective Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidders on any Assets (including extending deadlines as may be required for any Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Global Bidding Procedures and the Global Bidding Procedures Order. **Except as provided in any Stalking Horse Agreement that has become binding on the Debtors pursuant to these Global Bidding Procedures, the Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.**

All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the bid deadline). All Consultation Parties will be permitted to seek relief from the

Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bid Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

## XIII.
## DIP ABL Orders

Notwithstanding anything to the contrary contained in these Global Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by these Global Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, the DIP ABL Orders and the Prepetition ABL Documents, as applicable; and (iii) nothing in these Global Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder.

## XIV.
## Sale Is "As Is/Where Is"

The Assets sold pursuant to these Global Bidding Procedures will be conveyed at the Closing in their then-present condition, **"as is, with all faults, and without any warranty whatsoever, express or implied."**

## **Schedule 1**

**The Assets**

1

**<u>Exhibit 2</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-------------------------------------------------------------x

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARINGS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")[2] (a) authorizing and approving global bidding procedures (the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Global Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts** and **Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c) granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ____).

## Description of the Assets

The Debtors are seeking to sell the following Assets: _____

A complete list of the Assets that are, or potentially will be, available for sale pursuant to the Global Bidding Procedures is attached hereto as **Schedule 1**.

## IMPORTANT DATES AND DEADLINES

- [*Non-Binding Indication of Interest Deadline*. Any person or entity interested in participating in the Auction with respect to the Go Forward Stores must submit a Non-Binding Indication of Interest (as defined in the Global Bidding Procedures) to the Bid Notice Parties (as identified and defined in the Global Bidding Procedures) on or **before November 21, 2018 at 4:00 p.m. (Eastern Time)** (the "**Non-Binding Indication of Interest Deadline**").]

- *Bid Deadline.* Any person or entity interested in participating in the Auction must submit a Qualified Bid to the Bid Notice Parties on or **before [_____], 201[_] at 4:00 p.m. (Eastern Time)** (the "**Bid Deadline**").

- *Auction*. An Auction for the Assets has been scheduled for **[_____], 2019 at 10:00 a.m. (prevailing Eastern Time)** and, if necessary, will be conducted at **[_____]**.

- *Sale Objection Deadlines*. Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order must be (i) filed in accordance with the Global Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Recipients (as identified and defined in the Global Bidding Procedures) by no later than **[_____], 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- ***Sale Hearings.*** The Sale Hearing shall be held before the Bankruptcy Court before the Honorable Robert D. Drain on **[_____], 2019 at __:__ [_].m. (prevailing Eastern Time**).

## Additional Information

Any party interested in submitting a bid for any of the Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

Copies of the Motion, the Global Bidding Procedures Order, and the Global Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and after consulting with the Consultation Parties, modify the Global Bidding Procedures; waive terms and conditions set forth therein; extend the deadlines set forth therein; announce at the Auctions modified or additional procedures for conducting the Auctions; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and auction process to promote further bids by such bidder, in each case, to the extent not materially inconsistent with the Global Bidding Procedures and the Global Bidding Procedures Order. **Except as provided in an applicable Stalking Horse Agreement that has become binding on the Debtors pursuant to these Global Bidding Procedures, the Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset, with any bidder.**

**FAILURE TO ABIDE BY THE GLOBAL BIDDING PROCEDURES, THE GLOBAL BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE GLOBAL BIDDING PROCEDURES ORDER BY THE APPLICABLE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, SALE ORDERS, THE PROPOSED SALE TRANSACTIONS, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2018

_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

## Exhibit 3

**Assumption and Assignment Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                                   :
                                                        :         **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*               :
                                                        :         **Case No. 18-23538 (RDD)**
                                                        :
              **Debtors.**[7]                           :         **(Jointly Administered)**
-------------------------------------------------------------------x

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")[8] (a) authorizing and approving global bidding procedures

---

[7] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

[8] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Global Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and

8

(the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts** and **Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c) granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ____).

**You are receiving this Notice because you may be a Counterparty to a Contract or Lease of the Debtors that either is proposed to be assumed and assigned to a Stalking Horse Bidder or potentially could be assumed and assigned to one or more bidders in connection with a sale of the Debtors' Assets.**

### Stalking Horse Bids

Pursuant to the terms of the Global Bidding Procedures Order, the Debtors may designate Stalking Horse Bidders (as defined in the Global Bidding Procedures) for the Assets [until [_____], 2018.] Notice of any such designation, including the execution of any asset purchase agreement with a Stalking Horse Bidder and the provision of any bid protections in connection therewith, shall be provided in accordance with the terms of the Global Bidding Procedures Order.

### Cure Costs

In accordance with the Assumption and Assignment Procedures and the Global Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction with a Successful Bidder (as defined in the Global Bidding Procedures) at the Auction (whether such bidder be the applicable Stalking Horse Bidder or other bidder prevailing at the Auction), seek to assume and assign to the Successful Bidder (or its designated assignee, if applicable) certain Contracts and Leases of the Debtors.

---

conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

Each of the Contracts and Leases that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.

The inclusion of any Contract or Lease on <u>Exhibit A</u> does not constitute an admission that a particular Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract or Lease ultimately will be assumed or assigned.  All rights of the Debtors with respect thereto are reserved.
.

<u>**Objections**</u>

### A.  Cure Objections

Any objection to the proposed assumption, assignment, or potential designation of a Contract or Lease identified on <u>Exhibit A</u>, the subject of which objection is the Debtors' proposed Cure Costs must be (i) filed in accordance with the Global Bidding Procedures Order; (ii) filed with the Bankruptcy Court; and (iii) served on the Objection Recipients (as identified in the Global Bidding Procedures) by no later than **eight (8) calendar days after receiving service of the Debtors' proposed Cure Costs**.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE CONTRACT OR LEASE.  THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE CONTRACT OR LEASE UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT OR LEASE AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B.  Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of a Contract or Lease identified on <u>Exhibit A</u> to a Successful Bidder (or its known proposed assignee, if applicable) must be filed in accordance with the preceding paragraph by no later than **[_____], at 4:00 p.m. (Eastern Time).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE CONTRACT OR**

**LEASE. THE SUCCESSFUL BIDDER (OR ITS DESIGNATED ASSIGNEE, IF APPLICABLE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE CONTRACT OR LEASE IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT.**

## Sale Hearings

The Sale Hearing shall be held before the Bankruptcy Court before the Honorable Robert D. Drain on [_____], at __:__ [a.m./p.m.] (prevailing Eastern Time).

## Additional Information

Copies of the Motion, the Global Bidding Procedures Order, and the Global Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

Dated: [        ], 2018

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*