Niclas A. Ferland, Esq.
Ilan Markus, Esq.
LeClairRyan, PLLC
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut  06511
Telephone:  (203) 672-3211
Facsimile:  (203) 672-3232

Counsel to the Landlords set forth on Schedule A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.* | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION BY WESTFIELD, LLC, BENENSON CAPITAL COMPANY INC., AND CERTAIN OF THEIR RESPECTIVE AFFILIATES, TO DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES [DOC. ID. 429]**

Westfield, LLC, Benenson Capital Company LLC, and certain of their respective affiliates listed on Schedule A (collectively, the "Landlords") hereby submit this Limited Objection to Debtors' Motion for Approval of Global Bidding Procedures [Doc. Id. 429] (the "Bidding Procedures Motion"), and in support thereof, state as follows:

**I.    BACKGOUND**

1.    Beginning on October 15, 2018 (the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.    The Landlords are the landlords and certain of the Debtors are the tenants pursuant to unexpired leases (the "Leases") of nonresidential real property for retail stores (the

"Premises") at properties in Florida, New York, Maryland, and Washington (collectively, the "Properties").

3.  Pursuant to the Bidding Procedures Motion, the Debtors seek entry of an order (the "Bidding Procedures Order") establishing bidding and sale procedures (the "Bidding Procedures"), including for the possible assumption and assignment of certain of their nonresidential real property leases for "Go Forward Stores"[1] and other stores, which may include one or more of the Leases, to one or more proposed assignees (the "Proposed Assignees").

## II.  OBJECTIONS

### (i) The Debtors' Proposed Bidding Procedures Order and Bidding Procedures Should be Modified.

4.  The Bidding Procedures are generally acceptable, however, there are a number of ambiguities and specific provisions that should be changed, as follows:

   i.  <u>Bidding Procedures Order, ¶ 39; Bidding Procedures, ¶¶ IV, V</u>: These paragraphs provide that the deadline for parties to object to proposed Cure Costs and the assumption and assignment of leases to non-Stalking Horse Bidders is eight (8) days after service of such notice, rather than the ten (10) days allotted for objections to proposed Cure Costs and the assumption and assignment of leases to Stalking Horse Bidders. The very short ten day deadline to file cure and adequate assurance objections that this Court has previously approved in other cases with debtors that have large real estate holdings should not be shortened in non-Stalking Horse Bidder situations. All cure cost and adequate assurance objection deadlines in this case should be no less than ten (10) days after the applicable landlord receives notice of the proposed assumption and assignment of its lease.

---

[1] Capitalized terms that are used but not defined, herein, shall have the meanings ascribed to such terms in the Bidding Procedures Motion.

2

  ii. <u>Bidding Procedures, ¶ V.C.</u>: The definition of Sale Notice Parties should be expanded to include counsel of record to each contract counterparty.

  iii. <u>Bidding Procedures, ¶ VI.B.[2] -- Non-Binding Indication of Interest Date for Go Forward Stores</u>. It is not clear if landlords who are contemplating making a Landlord Bid on one or more of the Go Forward Stores should deliver a Non-Binding Indication of Interest to the Debtors' advisors by the Non-Binding Indication of Interest Date. It is also not clear what the ramifications are, if any, for any prospective bidder who fails to timely deliver a Non-Binding Indication of Interest to the Debtors' advisors by the Non-Binding Indication of Interest Date.

  iv. <u>Bidding Procedures, ¶ VI.B. – Qualified Bid Requirements</u>: In paragraph VI.B.4., the terms "Landlord Bid" and "Landlord Credit" do not seem to fall within the term Credit Bid. Accordingly, the Landlord seeks clarification that, under paragraph VI.B.5, a Landlord Bid with a sufficient Landlord Credit component does not need to include a Good Faith Deposit. <u>See also</u> <u>Bidding Procedures</u>, ¶ VI.B.10.

  v. <u>Bidding Procedures Order, ¶ 29</u>: <u>See</u> ¶ 7, below.

**(ii)** **The Debtors Should Provide the Landlords With More Information Regarding the Proposed Go Forward Stores Sale.**

5.  In the Bidding Procedures Motion, the Debtors claim that approximately 400 of its stores are four-wall EBITDA positive and are capable of continuing as a going concern, and it defines those stores as "Go Forward Stores." The Debtors should disclose to landlords which, if any, of their leased premises is considered a Go Forward Store. The Landlords recognize that

---

[2] The Bidding Procedures have two different Section VI.B.s – the first titled "Non-Binding Indication of Interest Date for Go Forward Stores" and the second titled "Qualified Bid Requirements." This subparagraph (iii) relates to the first Section VI.B. Subparagraph (iv) relates to the second one.

3

having any of their leased premises deemed a Go Forward Store does not constitute a promise or guarantee that assumption and assignment of the relevant lease will be proposed by the Debtors. Having the knowledge now, however, that certain leases are deemed profitable by the Debtors and are therefore more likely to be assumed and assigned to a Go Forward Stores purchaser, will help the impacted landlords by having more time to prepare for any proposed assumption and assignment, especially in light of the short response times for proposed lease assignments afforded by the proposed Global Bidding Procedures.

6.   Similarly, the Debtors should clarify whether they intend to sell the "Sears" brand as part of any Go Forward Sale, or whether the sale of that intellectual property will be handled separately.

### (iii)   **The Landlords Object to the Sale of Lease Designation Rights.**

7.   The Bidding Procedures Motion references the sale of lease designation rights to an identified potential successful bidder at auction. Further, the Bidding Procedures Order contains language that could be construed as pre-judging the issue of whether lease designation rights and their specific terms, are appropriate and should be granted by this Court. See, e.g., Bidding Procedures Order, ¶ 29 (which orders, adjudges, and decrees that "[p]ursuant to the terms of an applicable Stalking Horse Agreement or asset purchase agreement with a Successful Bidder, the Stalking Horse Bidder or Successful Bidder, as applicable may have the right, until a specified date, to designate any Designation Rights Contracts for assumption and assignment.").

8.   The Landlords have not yet been provided with any Stalking Horse Agreement or any proposed terms for designation of leases by any potential proposed assignee or purchaser. It is premature for this court to order, adjudge, and decree that a successful bidder may have the right to designate any leases for assumption and assignment. To the extent the Debtors believe it

4

is important to have such language in the Bidding Procedures Order and the Court is inclined to allow it, then a proviso should added making clear that the right of the Landlords to object to any designation rights or other agreement relating to leases remains subject to Court approval at a future, properly noticed hearing.  As the Landlords have not had an opportunity to review any designation rights agreement (whether contained as part of any sale-related agreement or as a stand-alone document, a "Designation Rights Agreement"), they object to the sale of designation rights with respect to the Leases and they reserve all rights to raise further objections in the future.

9. Any order approving a Designation Rights Agreement must provide that all of the Landlords' rights are reserved to object to any subsequently proposed assumption and assignment on any grounds, including adequate assurance of future performance and cure amounts.  Such order should include an appropriate procedure for the Landlords to assert updated cure amounts as of the proposed Lease assignment date and for the Court to resolve any disputes that may arise in connection with those updated cure amounts.  It should also make clear that the Debtors remain liable for all obligations under the Leases pursuant to §365(d)(3) and that there is a clear mechanism and ability to fund the payment of rent during any "designation rights" period.

10. The Landlords will object to any efforts to seek Court authorization for modifications to the provisions of the Leases in connection with any possible assumption and assignment of the Leases.  If the Leases are to be assumed and assigned, any such assumption and assignment must be without modification, with all of its benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C).

11. "The law is clear that a debtor who assumes a lease or other executory contract assumes the contract *cum onere*, without any diminution in its obligations or impairment of the rights of the lessor in the present or the future." In re Texaco, Inc., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000).

> The [debtor] ... may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.

In re Italian Cook Oil Corp., 190 F.2d 994, 997 (3d Cir. 1951). The *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement." United Air Lines, Inc v. U.S. Bank Trust Nat'l Ass'n (In re UAL Corp.), 346 B.R. 456, 468 n. 11 (Bankr. N.D. Ill. 2006).

12. The Landlords object to any attempts to modify the Lease or any of the Landlords' rights thereunder. The Leases must be assumed and assigned without modification, with all of their benefits and burdens. See Thompson v. Texas Mexican Railway Co., 328 U.S. 134 (1946); In re Jamesway Corp., 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996); Rockland Center Assoc. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.), 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985).

13. The Landlords will object to any attempt by the Debtors or the proposed recipient of designation rights under any Designation Rights Agreement to void, hold invalid or inapplicable, or modify any portion of Leases' provisions.

(iv) **The Landlords Request an Evidentiary Hearing and the Establishment of a Discovery Schedule for Contested Lease Assignments in Accordance with the Federal Rules of Bankruptcy Procedure**

14. Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, the Bid Procedures Motion initiated a contested matter under Rule 9014. See Fed. R. Bankr. P. 6006(a) ("[a] proceeding to assume, reject, or assign an . . . unexpired lease, other than as part of a plan, is governed by Rule 9014").

15. Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings. See Fed. R. Bankr. P. 9014(c).

16. Additionally, pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure, the Court "shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses will testify." Fed. R. Bankr. P. 9014(e).

17. To the extent the Landlords cannot reach agreement with the Debtors and any proposed assignee(s) regarding a consensual assumption and assignment of any of the Leases, the Landlords may wish to take discovery before an evidentiary hearing on any proposed assumption and assignment of any of the Leases.

18. Accordingly, with respect to any non-consensual requests to assume and assign any Leases, the Landlords respectfully ask this Court to use the preliminary hearing as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on such contested assignments of Leases.

### III.    JOINDER IN OTHER LANDLORD OBJECTIONS

19. The Landlords join in the objections of other landlords to the extent not inconsistent with the objections raised herein.

WHEREFORE, the Landlords respectfully request that this Court enter an order:

a. Sustaining this Objection;

b. Requiring changes to the proposed Bidding Procedures and proposed form of Bidding Procedures Order consistent with the specific requests set forth herein;

c. Establishing a fair and appropriate discovery and evidentiary hearing schedule in connection with any non-consensual request to assume and assign any of the Leases; and

d. Granting the Landlords such other and further relief as the Court deems appropriate.

Dated: November 7, 2018

/s/ Ilan Markus
Niclas A. Ferland, Esq.
Ilan Markus, Esq.
LeClairRyan, a Professional Corporation
545 Long Wharf Drive, 9th Floor
New Haven, CT  06511
Tel:  (203) 672-3211
Fax: (203) 672-3232
Email:  niclas.ferland@leclairryan.com
         ilan.markus@leclairryan.com

Counsel to:  Westfield, LLC and Benenson Capital
Company LLC, and certain of their respective
affiliates as set forth on Schedule A attached hereto

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2018, this Objection was sent via (i) the Court's electronic filing system and via electronic mail to the Standard Parties, and (ii) overnight mail to Chambers, in accordance with the Amended Order Implementing Certain Notice and Case Management Procedures.

/s/ Ilan Markus
Ilan Markus, Esq.