Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)
Objection Date and Time: November 8, 2018 at 4:00 p.m. (Eastern Time)

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)

*Counsel for the Chubb Companies*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538<br><br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.  The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES TO (i) THE DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES; AND (ii) MOTION OF DEBTORS FOR ENTRY OF ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SEARS HOME IMPROVEMENT BUSINESS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR AND HEARING TO APPROVE SALE OF SEARS HOME IMPROVEMENT BUSINESS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (II) APPROVING THE SALE OF SEARS HOME IMPROVEMENT BUSINESS IN ACCORDANCE WITH THE STALKING HORSE AGREEMENT AND (III) GRANTING RELATED RELIEF**

ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company and Federal Insurance Company (and, together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this reservation of rights (the "Reservation of Rights") to (i) the *Debtors' Motion For Approval Of Global Bidding Procedures* [Docket No. 429] (the "Global Bidding Motion"); and (ii) *Motion of Debtors for Entry of Order (I)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (II) Approving the Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement and (III) Granting Related Relief* [Docket No. 450] (the "SHIP Sale Motion" and, together with the Global Bidding Motion, the "Sale

Motions"),² and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case

1. On October 15, 2018 (the "Petition Date"), Sears Holding Corporation and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

### B. The Global Bidding Motion

2. On November 1, 2018, the Debtors filed the Global Bidding Motion.

3. Pursuant to the Global Bidding Motion, the Debtors seek approval of Global Bidding Procedures by which the Debtors may conduct an Auction and enter into a Sale(s) with Successful Bidder(s), Backup Bidder(s) or Stalking Horse Bidder(s) for some or all of the Debtors' Assets.

4. Because no stalking horse purchaser has yet been identified for any of the Assets subject to the Global Bidding Motion, the terms of any such Sale(s) are not known at this time.

### C. The SHIP Sale Motion

5. On November 3, 2018, the Debtors filed the SHIP Sale Motion.

6. Pursuant to the SHIP Sale Motion, the Debtors seek approval of certain Bidding Procedures, and an order authorizing and approving the Debtors' entry into a Sale Transaction with any Successful Bidder at the proposed Auction.

---

² All capitalized terms used herein but not defined shall have the meanings ascribed to them in the Sale Motions, as applicable.

7. The Debtors have identified a Stalking Horse Bidder for the SHIP Business, and have attached a Stalking Horse Agreement to the SHIP Sale Motion.

8. The Stalking Horse Agreement provides, with respect to insurance:

> Section 6.15  Insurance Matters.  Except to the extent provided in this Section 6.15, from and after the Closing, the Business, Transferred Assets, Assumed Liabilities or Transferred Employees shall cease to be insured by, have access or availability to, or be entitled to make claims on, claim benefits from or seek coverage under any insurance policy or program of Seller.  To the extent that there is any insurable claim related to the Business, any Transferred Asset, Assumed Liability or Transferred Employee based on any act, omission or circumstance existing or occurring at or prior to the Closing (an "Insurable Claim") under any occurrence based insurance policy or program of Seller that was issued by any third-party insurance carrier that was in effect as of the Closing (a "Third-Party Insurance Policy") then, from and after the Closing, Seller shall, at Buyer's expense, reasonably cooperate with Buyer to make a claim on Buyer's behalf, after the Closing Date, under such Third-Party Insurance Policy with respect to such Insurable Claim and shall use commercially reasonable efforts to pursue such claim (which shall not include commencement or prosecution of litigation by Seller or any Affiliate against an insurer or any other Person). Seller shall, at Buyer's expense, use commercially reasonable efforts to promptly file such claims with the applicable insurance carriers. Buyer and Seller shall keep each other advised of the status of (and any developments regarding) any such claims, and cooperate with each other and any insurance carrier in connection with the investigation, prosecution and resolution of any such claims. Seller shall as soon as reasonably practicable, and no later than five (5) Business Days following receipt thereof by Seller or any of its Affiliates, deliver to Buyer all proceeds received under the Third-Party Insurance Policies with respect to such Insurable Claim. Buyer shall exclusively bear and be responsible for (and neither Seller nor any of its Affiliates shall have any obligation to repay or reimburse the Buyer for) (A) the amount of any and all deductibles, retentions or self-insurance associated with claims under the foregoing Third Party Insurance Policies, and (B) all uninsured, uncovered, unavailable or uncollectible amounts of such claims. Notwithstanding anything to the contrary in this Agreement, (i) Buyer acknowledges that Seller retains exclusive control over all of the Third-Party Insurance Policies, including the right to exhaust, lapse, renew, alter, amend, settle, release, waive, commute or otherwise modify any such

> policies notwithstanding any actual or potential impact such actions have or could have on the coverage and rights provided under this Section 6.15 and (ii) regardless of whether a Third-Party Insurance Policy is available to cover a claim or whether proceeds are received with respect to any such claim, nothing in this Section 6.15 shall be deemed to alter, modify or affect in any manner the Seller's sole retention of, and liability with respect to, any Excluded Liabilities. This Agreement shall not be considered as an attempted assignment of any policy of insurance or as a contract of insurance, and nothing in this Agreement is intended to waive or abrogate in any way Seller's own rights to insurance coverage for any liability, whether relating to Seller or any of its Affiliates or otherwise.

Stalking Horse APA § 6.15.

9. While this provision appropriately provides that the Debtors' insurance policies and programs will not be transferred in a Sale Transaction to the Stalking Horse Bidder, the Stalking Horse Bidder has not yet been determined to be the Successful Bidder for the SHIP Business, and the final terms of any asset purchase agreement with the ultimate Successful Bidder remain unknown.

### D. The Insurance Programs

10. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors as named insureds.

11. Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company and Westchester Fire Insurance Company provide, *inter alia*, property, primary casualty, directors and officers, general liability, excess general liability, international casualty,

workers' compensation, excess workers' compensation, excess fire, international advantage, umbrella excess, environmental, fiduciary liability, automobile liability, professional liability, construction wrap up, employment practices liability, inland marine and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

12.    Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company and certain other of the Chubb Companies provide, *inter alia*, guild travel accident, boiler & machinery, fire, crime, excess crime, directors and officers, excess, export package, excess retail, fiduciary liability, general liability, property, package, fire, cargo, automobile liability, umbrella, workers' compensation, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

13.    The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

14.    The Chubb Companies file this Reservation of Rights to the Sale Motions on the basis that (A) the Chubb Companies cannot determine with certainty at this time how the Debtors propose to treat the Insurance Programs in connection with the proposed sales; (B) each of the Insurance Programs must be assumed and assigned, if at all, as a whole; and (C) to the extent that the Debtors seek to assume and assign the Insurance Programs, the Insurance Programs cannot be assigned without the consent of the Chubb Companies, which consent has not been sought or given. This Reservation of Rights is intended to place all bidders on notice as to the Chubb Companies' position with respect to any attempt to assume and assign, sell, or otherwise transfer all or any part of the Insurance Programs.

**A.    The Chubb Companies Cannot At This Time Determine How The Debtors Propose To Treat The Insurance Programs.**

15.    The Sale Motions are silent as to the treatment of the Insurance Programs in connection with any proposed sale of the Debtors' assets.

16.    With respect to the Global Bidding Motion, there is currently no Stalking Horse Bidder(s) or form asset purchase agreement which could address the treatment of the Insurance Programs, and the Bid Deadline, Auction, and Sale Hearing have yet to occur.

17.    With respect to the SHIP Sale Motion, the Stalking Horse Agreement does explicitly provide that the Insurance Programs will not be transferred in any Sale Transaction to

the Stalking Horse Bidder. However, the Chubb Companies do not know at this time whether the Stalking Horse Bidder will be the Successful Bidder at the Auction.

18. Given this uncertainty, and the fact that the Stalking Horse Agreement may not end up being the operative document for a Sale Transaction of the SHIP Business, Chubb cannot determine with clarity how the Insurance Programs will be treated, and therefore reserve their rights to object to the proposed Sale on this basis.

### B. Each Of The Insurance Programs And The Obligations Thereunder Are Indivisible.

19. It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'"); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *Bhushan v. Loma Alta Towers Owner's Ass'n, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d

766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens). *See also, In re University Medical Center,* 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied,* 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

20.     Accordingly, any Successful Bidder under either of the Sale Motions cannot receive the benefits of the Insurance Programs without remaining liable for the obligations thereunder.

21.     Moreover, the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269

(E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract").

22. Accordingly, any assumption and assignment or other transfer of either Insurance Program and the Obligations thereunder must be in its entirety, and the Chubb Companies further reserve their rights to object to the Sale Motions on this basis.

### C. The Insurance Programs Cannot Be Assigned Or Otherwise Transferred Without The Prior Written Consent Of The Chubb Companies, Which Has Not Been Sought Or Given.

23. To the extent that the Debtors seek to assign the Insurance Programs in connection with either of the Sale Motions, such assignment cannot occur without the express written consent of the Chubb Companies.

24. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

25. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's

consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

26. Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior, written consent of the Chubb Companies.

27. Furthermore, as of the filing hereof, the Bid Deadlines have not passed, and the Auctions have not occurred. Accordingly, the identity of any Successful Bidder(s) under either Sale Motion is unknown at this time.

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

28. In the event that the Debtors do attempt to transfer all or any part of the Insurance Programs in connection with the two pending Sale Motions, the Chubb Companies have not been provided with any information regarding any potential Successful Bidder in order to be able to assess whether it would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb Companies are unable, at this time, to assess whether any Successful Bidder would satisfy those criteria.

29. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Programs, the Debtors and the assignee will be required to execute assumption agreements, in form and substance acceptable to the Chubb Companies. As the ultimate proposed assignees are not yet known, this agreement has not yet been negotiated, let alone executed.

30. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs in connection with any Sale or Sale Transaction, the Chubb Companies reserve their rights to object to any and all such assignments.

WHEREFORE, the Chubb Companies reserve their rights with respect to (i) the Sale Motions, including the right to assert any additional objections to the Sale Motions and any agreements related thereto, and (ii) the assignment, sale, or other transfer of the Insurance Programs, particularly once the Successful Bidders, if any, are established.

Dated: November 8, 2018

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Wendy M. Simkulak*
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)

DM3\5470354.2

(212) 692-1020 (Facsimile)

and

Catherine B. Heitzenrater, Esq. (PA 205597)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)

*Counsel for the Chubb Companies*

DM3\5470354.2