Dustin P. Branch
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354; Fax: (424) 204-4350
E-mail: branchd@ballardspahr.com

- and –

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
Email: Pollack@ballardspahr.com

- and -

Paul E. Harner
Alyssa E. Kutner
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: (646) 346-8075; Fax:  (212) 223-1942
E-mail: harnerp@ballardspahr.com
           kutnera@ballardspahr.com

*Attorneys for The Macerich Company, Centennial Real Estate Management LLC, Woodbury Corporation, and Heidenberg Properties, LLC*

**Obj. Deadline: November 8, 2018 at 4:00 p.m. ET**
**Hearing Date:  November 15, 2018 at 10:00 a.m. ET**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| SEARS HOLDINGS CORPORATION, *et al.*, : | Case No. 18-23538 (RDD) |
| : | |
| : | (Jointly Administered) |
| Debtors. : | |

---------------------------------------------------------------x

**AMENDED OBJECTION OF THE MACERICH COMPANY, CENTENNIAL REAL ESTATE MANAGEMENT LLC, WOODBURY CORPORATION, AND HEIDENBERG PROPERTIES, LLC TO THE OMNIBUS MOTION OF DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES AND RELATED SUBLEASES OF NONRESIDENTIAL REAL PROPERTY AND <u>ABANDONMENT OF PROPERTY IN CONNECTION THEREWITH</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

The Macerich Company, on behalf of Towne Mall, LLC ("Macerich"), Heidenberg Properties, LLC, on behalf of Shelby SL-RH LLC ("Heidenberg"), Centennial Real Estate Management LLC, on behalf of Fox Valley SP LLC ("Centennial"), and Woodbury Corporation ("Woodbury"), on behalf of Magic Valley Mall ("Magic Valley") (and together, the "Landlords"), by and through their undersigned counsel, hereby make this objection (the "Objection")[1] to the Omnibus Motion of Debtors to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property and Abandonment of Property in Connection Therewith [Docket No. 25], as amended by the Notice of Filing Revised Schedule to Omnibus Motion of Debtors to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property and Abandonment of Property in Connection Therewith [Docket No. 290] (the "Amended Schedules"), (the "Rejection Motion"), and respectfully represent as follows:

## I.  BACKGROUND FACTS

1. Sears Holdings Corporation, and its affiliated co-debtors (collectively, the "Debtors"),[2] filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Store Closing Motion, and accompanying documents.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SRC Sparrow 1 LLC (None); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); SRC Sparrow 2 LLC (None); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); SRC O.P. LLC (None); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SRC Facilities LLC (None);

States Code on October 15, 2018. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (the "Leases"). The Debtors lease retail space from Macerich at the shopping center known as Towne Mall ("Towne Mall") in Elizabethtown, KY, from Heidenberg at the shopping center known as Shelby Town Center in Shelby Township/Sterling Heights, MI, from Centennial at the shopping center known as Fox Valley Mall ("Fox Valley") in Aurora, IL, and from Woodbury at the shopping center known as Magic Valley Mall in Twin Falls, ID (together, the "Centers").

3. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. On October 15, 2018, the Debtors filed the Rejection Motion, which seeks authority to reject 217 stores that are no longer being operated by the Debtors. On October 24, 2018, the Debtors amended the Rejection Motion and filed their Amended Schedules, which seek authority to reject 22 additional stores that are no longer being operated by the Debtors, and which removed 5 leases from the 217 stores which the Debtors had originally sought to seek authority to reject prior to their filing the Amended Schedules. The Landlords have no objection to the rejection of the Leases. However, the Debtors have apparently licensed the Premises (or part of the Premises) in each of these Centers, other than the Fox Valley location, for a temporary Halloween store use. The Debtors have apparently licensed a portion of the Fox Valley Premises to JP Morgan Chase Bank, NA. As a result, the Debtors have not surrendered possession of the Premises to the Landlords. In addition, the Debtors have not turned over any

---

and SRC Real Estate (TX), LLC (None). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[3] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") unless otherwise specified in this Motion.

of the proceeds that they have received from their licensees for the post-October 15, 2018 (or in the case of Fox Valley, the post-October 24, 2018) period.

5. The Debtors have continued to benefit from the use of the Premises since filing their voluntary petition, and have not surrendered possession of the Premises. As a result, retroactive rejection to October 15, 2018 or October 24, 2018 is inappropriate. The effective date of rejection should not occur until the Debtors surrender the Premises to Landlords, so that Landlords have possession and control of the entirety of the Premises, and so that Landlords are not exposed to unnecessary risk of liability based on the occupancy of the Premises by a third party with no contractual relationship with the Landlords. In addition, the Debtors cannot seek retroactive rejection of the Leases while they continue receiving the benefit of payment from their licensee at each Premises. The Court should order that the effective date of rejection be consistent with the Landlords' recovery of possession and the surrender of the Premises by the Debtors and Debtors' Subtenants (Spirit Halloween and JP Morgan Chase Bank NA).

## II.     ARGUMENT

### A.     *The effective date of any lease rejection cannot occur until the Premises are properly turned over to the Landlords.*

6. The Rejection Motion seeks to reject the Leases effective October 15, 2018, other than the Fox Valley location, which the Debtors seek to reject effective October 24, 2018. The Landlords do not object to the rejection of the Leases, but instead object only to the proposed effective date of the rejection because the Debtors had not turned over the Premises to the Landlords as of the requested rejection date and continue to benefit from the use of the Premises by their licensee. The Landlords are not a party to any lease or license agreement between Spirit or JP Morgan Chase Bank, NA and the Debtors, and as long as Spirit and JP Morgan Chase Bank, NA are in possession of the Premises, the Landlords do not have the use of their Premises, and Debtors cannot properly reject the Leases.

7. In order to properly turn over the Premises and effectively reject the Leases, the Debtors must turn over all keys and alarm codes to the Landlords (or to the mall managers or to

the mall management office where the leased premises are located), along with written confirmation that Debtors have vacated the Premises to the Landlords, which written confirmation should include information necessary to effect the transfer of utilities to the Landlords (as well as any other information necessary to facilitate transition of the Premises). The Debtors provided written notice of their purported surrender of the Premises, along with information on the lockbox and alarm codes, but this is insufficient to turn over possession of the Premises when a third party is occupying the Premises, and the Debtors cannot unilaterally absolve themselves from liability in this manner.

8.  Rejection cannot occur prior to the date the Landlords regain full possession and control of the Premises. If the Debtors seek to reject any Lease prior to turning over the Premises, it exposes the Landlords to liability for damages over which it has no control, and would create a potential gap in insurance coverage between the rejection date and the date of possession and control by the Landlords. Once the legal rejection date occurs for any Lease, the Debtors arguably no longer have an insurable interest in such Leases or Premises, and thus any damages occurring to persons or property after the legal date of rejection are potentially not covered by the Debtors' insurance. Therefore, rejection and possession must happen simultaneously to adequately protect the Landlords.

9.  Courts in this district and elsewhere have previously approved retroactive rejection as permissible relief in other chapter 11 cases involving retail debtors. *See, e.g., In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Mar. 22, 2018) (ECF No. 199) (authorizing debtors to abandon any remaining property on the leased premises for rejected leases, other than hazardous or toxic materials); *In re Sports Auth. Holdings, Inc.*, Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (ECF No. 1700) (authorizing the debtors to abandon any unremoved or unsold furniture, fixtures, and equipment at a closing store); *In re Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jan. 22, 2016) (ECF No. 2367) (authorizing the debtors to abandon furniture, fixtures, and equipment as of a retroactive rejection date); *In re Am. Apparel, Inc.*, Case No. 15-12055 (BLS) (Bankr. D. Del.

Nov. 20, 2015) (ECF No. 364) (authorizing the debtors to dispose of or abandon property of their estates left in stores after the completion of store closing sales); *In re RadioShack Corp.*, Case No. 15-910197 (BLS) (Bankr. D. Del. Feb. 2, 2015) (ECF No. 455) (authorizing the debtors to abandon all unsold assets located at any of the closing stores); *In re Metropark USA, Inc.*, Case No. 11-22866 (RDD) (Bankr. S.D.N.Y. May 5, 2011) (ECF No. 50) (authorizing the debtor to reject a lease and abandon certain furniture, fixtures, and equipment on the leased premises).

10.     That notwithstanding, the majority position on the effective date of a lease rejection, which is grounded in the plain meaning of the statute, holds that a rejection is not effective until ordered by the court and that the obligation to pay the full amount of rent specified in the lease, and otherwise perform all obligations under the lease, continues through to that effective date.  *See In re Thinking Machines,* 67 F.3d 1021 (1st Cir. 1995); *In re Revco D.S., Inc.*, 109 B.R. 264 (Bankr. N.D. Ohio 1989); *In re Worths Stores Corp.*, 130 B.R. 531 (Bankr. E.D. Mo. 1991); *In re Federated Department Stores, Inc.*, 131 B.R. 808 (S.D. Ohio, 1991); *In re Paul Harris Stores, Inc.*, 148 B.R. 307 (S.D. Ind. 1992); *In re 1 Potato 2, Inc.*, 182 B.R. 540 (Bankr. D. Minn. 1995); *In re Appliance Store, Inc.*, 148 B.R. 234 (Bankr. W.D. Pa. 1992).

11.     In fact, Section 365(a)

> requires two distinct actions, one by the trustee [or debtor-in-possession] and one by the court.  The trustee is to assume or reject, and the court is to approve or disapprove.  Therefore, under Section 365(a), rejection of an unexpired lease *can be accomplished only by an order of the bankruptcy court*. [Emphasis added]

*In Re Arizona Appetito's Stores, Inc.*, 893 F. 2d 216 (9th Cir. 1990).

12.     In *Revco, supra,* Judge White analyzed both the legal and policy reasons for holding that a lease rejection is effective only as of the date of the court's order.  *Revco*, 109 B.R. at 267-270.  The court cited a long line of cases standing for the proposition that a lease may not be unilaterally assumed or rejected by the trustee or debtor-in-possession but only upon approval of the court.  The court then considered the interrelationship between Section 365(a) and Bankruptcy Rule 6006, stating

> [t]he differences between former Bankruptcy Rule 607 and current Bankruptcy Rules 6006(a) and 9014 evidence Congressional intent to strengthen the role of the court in the assumption/rejection decision making process. *Id.*

The court specifically concluded that a rejection of an unexpired lease is effective only upon court ordered express approval of the rejection. *Accord, Worths*, 130 B.R. 531. As the Court stated in *In re Treat Fitness Center, Inc.*, 60 B.R. 878 (9th Cir. BAP 1986):

> To not follow these rather explicit rules [6006(a) and 9014] would be to lead us back into the morass of attempting to judge the meaning and import of the conduct and conversations of the parties.

*Id*. at 879.

13. Section 365 of the Bankruptcy Code does not preclude a court from ordering rejection effective retroactively to a date prior to the entry of an order approving such rejection. *In re At Home Corp.*, 292 B.R. 195, 199 (N.D. Cal. 2003). However, courts generally require extraordinary circumstances to deviate from the generally recognized rule that the date of the order establishes the effective date of rejection. *In re Ambers' Stores, Inc.*, 193 B.R. 819, 821 (Bankr. N.D. Tex. 1996). *See also, In re Epic Energy Resources, Inc. v. Terrace Point P'ship, LLC*, 2013 WL 427060, at *5 (D. Colo. Feb. 4, 2013) (holding that retroactive rejection is appropriate only in exceptional circumstances); *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) ("The court emphasizes that in most cases a lease will be considered rejected as of the date of entry of the order approving the rejection, and only in exceptional circumstances … will the court adopt a retroactive date."). Such extraordinary circumstances do not exist here.

14. Exceptional circumstances would warrant "the retroactive approval of an unexpired lease as of a date when the landlord is in substantially the same position that it would be if the bankruptcy court had approved rejection on that date." *In re Manis Lumber Co.*, 430 B.R. 269, 280 (Bankr. N.D. Ga. 2009). "A landlord is ordinarily in such a position on the date when it has received unequivocal notice of the estate's intent to reject the lease and when it has the opportunity to obtain possession of the premises and to commence the reletting process." *Id.*

*See also, In re Chi-Chi's Inc.,* 305 B.R. 396, 399 (Bankr. D. Del. 2004) (ordering that the effective date for the rejection of leases was the "day the Debtors surrendered the premises to the Landlords and the Landlords were able to enter into agreements with the current tenants.").

15. In assessing whether to approve a retroactive rejection date, two factors that courts consider are whether the premises (and the keys thereto) subject to a lease were surrendered with an unequivocal statement of abandonment to the landlord and whether the debtor acknowledged that it had no right to withdraw the rejection motion prior to the hearing. *See Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW), April 15, 1998 Transcript of Proceedings, at p. 35 (attached hereto as <u>Exhibit A</u>). *See also, Koninklijke Ahold, N.V. v. Millbrook Commons LLC*, 2012 WL 40268444, at *6 (M.D. Ala. Sept. 12, 2012) (noting that the bankruptcy court order approved a postpetition lease rejection upon the bankruptcy court's satisfaction that the debtor "unequivocally relinquished control of the premises."); *In re CCI Wireless, LLC*, 297 B.R. 133 (D. Colo. 2003) (approving retroactive rejection where the Debtor had not been in possession of the leased premises before the petition date).

16. In this case, it appears that third parties remain in the Premises, precluding the Debtors from unequivocally surrendering the Premises to Landlords. In addition, the Debtors have likely received the payment of license fees since the proposed date of rejection related to the use of these Premises. For these reasons, retroactive rejection is not appropriate, and the rejection of the Leases should not occur until the Debtors have surrendered the entirety of the Premises to each respective Landlord.

### III.   JOINDER IN OBJECTIONS BY OTHER LANDLORDS

17. To the extent not inconsistent with the relief sought herein, Landlords hereby join in any objections raised by other landlords.

### IV.   CONCLUSION

Landlords request the Court require that any order approving rejection of the Leases provide that the effective date of rejection should be the date that Spirit and JP Morgan Chase Bank, NA vacate and turn over the Premises to the Landlords, by delivering the keys, alarm

codes, and other transitional information to the Landlords, and after the removal of all personal property as required by the Leases, and grant such other and further relief as may be just and proper.

Dated: November 8, 2018  
New York, New York

Respectfully submitted,

*/s/ Paul E. Harner*  
Paul E. Harner, Esquire  
Alyssa E. Kutner, Esquire  
**Ballard Spahr LLP**  
919 Third Avenue  
New York, NY 10022  
Direct: (646) 346-8075  
Fax: (212) 223-1942  
Email: harnerp@ballardspahr.com  
         kutnera@ballardspahr.com

- and -

Dustin P. Branch, Esquire  
**Ballard Spahr LLP**  
2029 Century Park East, Suite 800  
Los Angeles, CA 90067-2909  
Direct: (424) 204-4354  
Fax: (424) 204-4350  
Email: branchd@ballardspahr.com

- and -

David L. Pollack, Esquire  
**Ballard Spahr LLP**  
1735 Market Street, 51st Floor  
Philadelphia, PA 19103  
Direct: (215) 864-8325  
Email: Pollack@ballardspahr.com

*Attorneys for The Macerich Company,*  
*Woodbury Corporation, Centennial Real Estate*  
*Management LLC, and*  
*Heidenberg Properties, LLC*