Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)
Objection Date and Time: November 8, 2018 at 4:00 p.m. (Eastern Time)

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Gregg M. Galardi
Sam N. Ashuraey
Kimberly J. Kodis

*Attorneys for Apex Tool Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re                                                        :    Chapter 11
                                                             :
**SEARS HOLDING CORPORATION, *et al.*,**[1]                  :    Case No. 18-23538 (RDD)
                                                             :
                    Debtors.                                 :    (Jointly Administered)
------------------------------------------------------------ x

**RESPONSE AND LIMITED OBJECTION OF APEX TOOL GROUP, LLC TO THE MOTION OF DEBTORS FOR INTERIM AND FINAL AUTHORITY TO (I) PAY PREPETITION CLAIMS OF (A) SHIPPERS, WAREHOUSEMEN, AND OTHER NON-MERCHANDISE LIEN CLAIMANTS AND (B) HOLDERS OF PACA/PASA CLAIMS, AND (II) CONFIRM ADMINISTRATIVE EXPENSE PRIORITY FOR PREPETITION ORDERS DELIVERED TO THE DEBTORS POSTPETITION, AND SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Apex Tool Group, LLC ("Apex"), by and through its undersigned counsel, hereby files this Response and Limited Objection to the *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business* [D.I. 14] (the "Shipping Motion").[2] In support of this Response and Limited Objection, Apex states as follows:

## PRELIMINARY STATEMENT

1.  Apex is one of the Debtors' largest trade creditors, holding a claim in an amount of not less than $7.0 million for the sale of, among other things, "Craftsman" branded hand and power tools to the Debtors. The Debtors took physical possession of all, or nearly all, of the goods that are the basis of Apex's claim on, after or within the 20 days prior to the commencement of the Debtors' chapter 11 cases. As a result, Apex has a substantial interest in the Debtors' intended treatment of and payment for goods "delivered" to the Debtors not only within the 20 days before the Commencement Date, but also those goods that Apex and other vendors were induced to deliver on and after the Commencement Date by the representations made by the Debtors in the Shipping Motion and the terms of the interim order with respect thereto [D.I. 115] (the "Interim Shipping Order"). Accordingly, because Apex has not received any payments for goods delivered to the Debtors on and after the Commencement Date, Apex requests that this Court require the Debtors to clarify the meaning of "delivered" in any final order on the Shipping Motion (the "Final Shipping Order"). Absent such clarification, at least certain vendors, like Apex, may have been

---

[2] Capital terms used but not defined herein have the meanings ascribed to them in the Shipping Motion.

2

given a false sense of security regarding the administrative treatment of their prepetition invoices for goods "delivered" on or after the Commencement Date.

## FACTUAL BACKGROUND

2. Apex manufactures "Craftsman" branded professional hand and power tools and other goods that it sold to the Debtors prior the Commencement Date and has continued to sell to the Debtors since the Commencement Date.

3. In the ordinary course of business, Apex receives orders from the Debtors for goods, most of which are manufactured in Asia. With respect to goods manufactured in Asia, Apex delivers the goods to common carriers in a port in Asia and these common carriers in turn transport the goods, usually by ship, to ports in the United States. From there, the goods are transported to the Debtors' warehouses for distribution to the Debtors' stores.

4. Pursuant to the agreement between the Debtors and Apex (as amended, supplemented or modified, the "Apex Agreement"), when Apex transfers the goods to a common carrier in Asia, the Debtors take title to the goods and assume the risk of loss with respect to such goods. On or about that same date, Apex invoices the Debtors for the goods provided to the common carrier, and the Debtors are required to remit payment for such goods within thirty (30) days of the date the invoice is issued. Because, however, the goods are shipped from Asia to ports in the United States and then transported to the Debtors' warehouses, the goods are not actually delivered to the Debtors, *i.e.*, the Debtors do not take actual physical possession of the goods, until approximately 25 or more days after Apex transfers the goods to the common carrier.

## RESPONSE AND LIMITED OBJECTION

5. As was likely the case with many of the Debtors' vendors, Apex was not surprised by the commencement of these chapter 11 cases and was prepared to take actions, including

3

stopping shipments, requesting new purchase orders or reclaiming their goods. Anticipating such actions by Apex and other vendors, on the Commencement Date, the Debtors sought and received various relief that they asserted would benefit vendors and the Debtors' reorganization efforts. This relief included not only potential payments to critical vendors, but also the relief sought in the Shipping Motion.

6. As described in the Shipping Motion, "in the ordinary course of business, the Debtors [had] ordered approximately $162 million in Merchandise from suppliers and vendors that will not be delivered until on or after the Commencement Date (the "**Prepetition Orders**")." Shipping Motion ¶ 19. As a consequence, the Debtors understood that "suppliers and vendors may be concerned that, because the Debtor's obligations under the Prepetition Orders arose prior to the Commencement Date, such obligations will be treated as unsecured claims in the Chapter 11 Cases." *Id.* Consequently, to address those concerns and assure suppliers and vendors that actions to stop shipment or obtain new purchase orders were unnecessary, the Debtors sought "an order confirming administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed Prepetition Orders . . . ." Shipping Motion ¶ 20; *see also id.* at ¶¶ 32-33. The Court granted such relief and entered the Interim Shipping Order, which provided, among other things, as follows:

> All undisputed obligations of the Debtors arising from the **postpetition delivery** or shipment by [sic] of goods under the Prepetition Orders [3] **are granted administrative expense priority status pursuant to section 503(b)(1)(A)** of the Bankruptcy Code, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

Interim Shipping Order ¶ 8 (emphasis added).

---

[3] The Shipping Motion defines "Prepetition Orders" as "Merchandise [the Debtors ordered prior to the Commencement Date] from suppliers and vendors that will not be *delivered* until on or after the Commencement Date." Shipping Motion ¶18 (emphasis added).

4

7. As demonstrated below, the Debtors should be required to clarify the meaning of the words "delivered" and "delivery" as used in the Shipping Motion and the Interim Shipping Order for three reasons. *First,* absent clarification, Apex's – and likely other vendors' – reliance on the representations in the Shipping Motion and the terms of the Interim Shipping Order may be misplaced. In particular, absent the Debtors' clarifying their intention to pay for goods that they took physical possession of on or after the Commencement Date as ordinary course administrative expenses, the Debtors might challenge a vendor's request for administrative expense priority, arguing that "delivery" occurred pre-bankruptcy when the Debtors took title to the goods or assumed the risk of loss. *Second,* absent clarification, substantial claims litigation is likely regarding not only the administrative claims status for postpetition deliveries, but also the meaning of "received" as used in Bankruptcy Code section 503(b)(9). *Third,* absent clarification, vendors and other creditors likely will be left in the dark as to the outstanding amount of administrative liabilities the Debtors incurred on or after the Commencement Date, but not paid.

8. Specifically, in the Shipping Motion, the Debtors boldly contend that goods "***delivered*** on, within 20 days prior to, and after the Commencement Date" are afforded administrative expense priority under section 503(b) of the Bankruptcy Code. Shipping Motion ¶ 20 (emphasis added). They do not, however, provide any specific authority for this assertion with respect to the postpetition delivery of goods.[4] And while section 503(b)(9) of the Bankruptcy

---

[4] The Debtors cite *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993), contending that it "held" that "an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority." Shipping Motion ¶ 32. However, *Chateaugay* merely stated generally that "a claim will be afforded priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Chateaugay* at 956. The case *held* that the debtors were entitled to judgment as a matter of law against a lease claimant's request for administrative priority because the obligations arose prepetition. *Id.* Similarly, the Debtors cite *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 481 (Bankr. S.D.N.Y. 2006) merely for the general proposition that "to receive a claim under section 503 a claimant must provide a postpetition benefit to the estate." Shipping Motion ¶ 32. The case did not specifically address the "postpetition delivery" of goods.

5

Code, which the Debtors do cite, *id.*, provides vendors with an administrative expense claim, that section does not use the word "delivered." Instead, section 503(b)(9) grants administrative priority only for "the value of any goods *received* by the debtor within 20 days before the date of commencement of a case." 11 U.S.C. § 503(b)(9) (emphasis added). That section provides no guidance as to the meaning intended by the Debtors' use of the word "delivered" in the Shipping Motion or the Interim Shipping Order.

9. Nor would simply changing the word "delivered" to "received" render the Debtors' requested relief or their intentions regarding administrative claims treatment clear. As this Court is likely aware, there has been significant litigation regarding the meaning of the word "received" as used in Bankruptcy Code section 503(b)(9). *E.g.*, *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017); *Ningbo Chenglu Paper Prod. Mfg. Co. v. Momenta, Inc.*, No. 11-CV-479-SM, 2012 WL 3765171 (D.N.H. Aug. 29, 2012); *In re SRC Liquidation, LLC*, No. 15-10541 (BLS), 2017 WL 2992718 (Bankr. D. Del. July 13, 2017); *In re Wezbra Dairy, LLC*, 493 B.R. 768 (Bankr. N.D. Ind. 2013). Apex has not, however, found any cases from this Court or the Second Circuit Court of Appeals interpreting the word "received" in Bankruptcy Code section 503(b)(9). The Third Circuit Court of Appeals has, however, addressed the meaning of "received" in Bankruptcy Code section 503(b)(9). *See In re World Imports, Ltd.*, 862 F.3d 338. In *World Imports*, the Third Circuit concluded that a debtor "received" goods when the debtor took physical possession of those goods, not when the debtor obtained title to the goods or assumed the risk of loss for the goods. *Id.* at 346. Thus, to the extent the Debtors are seeking relief based on section 503(b)(9), the Debtors should make clear not only that postpetition delivery occurs when the goods are *received* postpetition, but also their position as to when goods are "received," *i.e.* whether goods are received when (i) title passes, (ii) risk of loss is assumed or (iii) the goods come into the Debtors'

6

physical possession. For only then will the nature and extent of the relief requested in the Shipping Motion be clear and vendors have the clarity necessary to determine whether they hold administrative or prepetition claims and whether to pursue legal remedies or rely on the Final Shipping Order.

10. This clarification is especially important, given that there is little or no guidance in the Second Circuit regarding whether goods delivered postpetition pursuant to a Prepetition Order constitute a postpetition transaction entitling a vendor to payment as an administrative expense pursuant section 503(b)(1) of the Bankruptcy Code. It cannot be reasonably disputed that by filing the Shipping Motion and obtaining the Interim Shipping Order, the Debtors, as debtors in possession, sought to induce vendors to honor Prepetition Orders and stand down on various legal remedies in exchange for payment of those invoices as administrative expenses. Thus, there is a postpetition transaction on which vendors may rely. *See In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002) (holding services performed by the creditor must have been "induced" by the debtor-in-possession, not the prepetition debtor). Furthermore, the Debtors cannot reasonably dispute that they will receive an actual and necessary benefit from receiving goods on or after the Commencement Date. *See* 11 U.S.C. §503(b)(1). Other cases, however, might support a different conclusion. *See, e.g., in re Baths Int'l, Inc.*, 25 B.R. 538 (Bankr. S.D.N.Y. 1982), *aff'd*, 31 B.R. 143 (S.D.N.Y. 1983) (holding that newspaper that placed ads for the debtor prepetition was not entitled to administrative expense status, even though those ads continued to run postpetition). Moreover, many cases pre-date the enactment of section 503(b)(9) and do not address the various potential meanings of "delivery" and "receipt" or distinguish between or among title passing, risk of loss being assumed and physical possession. Thus, the absence of controlling precedent make future litigation likely regarding the Debtors' use of the word "delivery" and its implications for

claims asserted based on the intentions behind the Shipping Motion, the Interim Shipping Order and Final Shipping Order as well as Bankruptcy Code section 503(b)(9).

11.    Accordingly, given (i) the potential meanings of the word "delivered," (ii) the Debtors' intention to induce vendors to honor Prepetition Orders, (iii) vendors' concerns regarding the Debtors' potential administrative insolvency, (iv) the absence of controlling precedent in the Second Circuit regarding the meaning of "received" in section 503(b)(9), and (v) no clear precedent that the goods delivered postpetition pursuant to Prepetition Orders are entitled to administrative expense priority treatment under section 503(b)(1), Apex respectfully requests that the Court require the Debtors to clarify the meaning of the word "delivered" and the relief it is requesting in the Shipping Motion with respect to goods delivered on, after or within the 20 days before the Commencement Date.

## RESERVATION OF RIGHTS

12. Notwithstanding anything contained herein, this Response and Limited Objection is filed with a full reservation of rights, including the right to raise any and all arguments with respect to the administrative expense status of amounts the Debtors owe Apex.

| | |
|---|---|
| Dated: November 8, 2018<br>New York, New York | **APEX TOOL GROUP, LLC**<br><br>*/s/ Gregg M. Galardi*<br>Gregg M. Galardi<br>Sam N. Ashuraey<br>Kimberly J. Kodis<br>ROPES & GRAY LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090 |