1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION and

8   RAY PADULA HOLDINGS, LLC,

9

10           Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12

13                   United States Bankruptcy Court

14                   300 Quarropas Street, Room 248

15                   White Plains, NY 10601

16

17                   October 25, 2018

18                   2:02 PM

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: NAROTAM RAI

Page 2

1  HEARING re Joint Objection to Motion /Joinder to Objections

2  to Debtors Motion for Approval of (I) Procedures for Store

3  Closing Sales and (II) Assumption of Liquidation Consulting

4  Agreement (related document(s)23)

5

6  HEARING re Objection to Motion I LIMITED OBJECTION OF ALLURE

7  GEMS, LLC TO DEBTORS MOTION FOR  APPROVAL OF (I) STORE

8  CLOSING SALES AND (II) ASSUMPTION OF LIQUIDATION CONSULTING

9  AGREEMENT (related document(s)23)

10

11  HEARING re Objection (related document(s)23

12

13  HEARING re Notice of Hearing on Motion of Debtors for

14  Interim Approval of (I) Procedures for Store Closing Sales

15  and (II) Assumption of the Liquidation Consulting Agreement

16  (related document(s)23)

17

18  HEARING re Notice of Hearing: Notice of Time Change for

19  Hearing on October 25, 2018 (related document(s)23)

20

21  HEARING re Response/ Debtors Response in Support of Motion

22  for Approval of (I) Procedures for Store Closing Sales and

23  (II) Entry into the Liquidation Consulting Agreement

24  (related document(s)223, 281, 23,224,228,225,251,254,

25  289,211,246,278,243,260,280,242,270,247,255,249)

1    HEARING re Notice of Agenda of Matters Scheduled for Hearing

2    on October 25, 2018 at 2:00 p.m

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for the Debtor

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  RAY C. SCHROCK

 9        SUNNY SINGH

10        PALOMA VAN GROLL

11

12   MILBANK, TWEED, HADLEY & MCCLOY LLP

13        Attorneys for Cyrus Capital Management

14        2029 Century Park East, 33rd Floor

15        Los Angeles, CA 90067

16

17   BY:  ERIC R. REIMER

18        THOMAS R. KRELLER

19

20   LOCKE LORD LLP

21        Attorneys for Pension Benefit Guaranty Corp.

22        111 South Wacker Drive

23        Chicago, IL 60606

24

25   BY:  BRIAN RAYNOR
```

```
1    MILBANK, TWEED, HADLEY & MCCLOY LLP

2         Attorneys for Cyrus Capital Management

3         2029 Century Park East, 33rd Floor

4         Los Angeles, CA 90067

5

6    BY:  ERIC R. REIMER

7

8    UNITED STATES DEPARTMENT OF JUSTICE

9         Attorney for the U.S. Trustee

10        201 Varick Street, Suite 1006

11        New York, NY 10014

12

13   BY:  PAUL K. SCHWARTZBERG

14

15   SKADDEN, ARPS, SLADE, MEAGHER & FLOM LLP

16        Attorneys for DIP ABL Agent

17        4 Times Square

18        New York, NY 10036

19

20   BY:  PAUL D. LEAKE

21        GEORGE R. HOWARD

22

23

24

25
```

Page 6

```
 1   ALSTON & BIRD LLP

 2        Attorneys for Twentieth Century Fox Home Entertainment

 3        90 Park Avenue

 4        New York, NY 10016

 5

 6   BY:  JAMES J. VINCEQUERRA

 7

 8   SEYFARTH SHAW LLP

 9        Attorneys for Wilmington Trust National Association, as

10        Indenture Trustee

11        620 Eighth Avenue

12        New York, NY 10018

13

14   BY:  EDWARD M. FOX

15

16   COZEN O'CONNOR

17        Attorneys for Scents at Worth, Inc.

18        277 Park Avenue

19        New York, NY 10172

20

21   BY:  FREDERICK SCHMIDT

22

23

24

25
```

1   MILBANK, TWEED, HADLEY & MCCLOY LLP

2        Attorneys for Cyrus Capital Management

3        28 Liberty Street

4        New York, NY 10005

5

6   BY:  ERIC K. STODOLA

7

8   JENNER & BLOCK LLP

9        Attorneys for Lands' End

10       919 Third Avenue

11       New York, NY 10022

12

13  BY:  MARC B. HANKIN

14

15  BRACH EICHLER LLC

16       Attorneys for iStar Jewelry LLC

17       101 Eisenhower Parkway

18       Roseland, NJ 07068

19

20  BY:  LINDSAY P. CAMBRON

21

22

23

24

25

```
 1    FROST BROWN TODD LLC

 2          Attorneys for Washington Prime

 3          400 West Market Street, Floor 32

 4          Louisville, KY 40202

 5

 6    BY:  EDWARD M. KING

 7

 8    CKR LAW

 9          Attorneys for Sukar International, Inc.

10          1330 Avenue of the Americas, 14th Floor

11          New York, NY 10019

12

13    BY:  EDWARD L. SCHNITZER

14

15    MOSES & SINGER LLP

16          Attorneys for Rosy Blue & Vijay Diamonds

17          405 Lexington Avenue

18          New York, NY 10174

19

20    BY:  RICHARD J. CORBI

21

22

23

24

25
```

Page 9

1    AKIN GUMP STRAUSS HAUER & FELD LLP

2         Attorneys for the Creditors Committee

3         One Bryant Park

4         New York, NY 10036

5

6    BY:  PHILIP C. DUBLIN

7         ABID QURESHI

8

9    BALLARD SPAHR LLP

10        Attorneys for Macerich Company, Centennial Real Estate

11        Co., C.F. Johns Company, Brixmor Operating Partnership

12        & S-Tract LLC

13        919 N. Market Street, 11th Floor

14        Wilmington, DE 19801

15

16   BY:  MATTHEW G. SUMMERS

17

18   CLEARY GOTTLIEB STEEN & HAMILTON LLP

19        Attorneys for ESL

20        One Liberty Plaza

21        New York, NY 10006

22

23   BY:  SEAN A. O'NEAL

24

25

Page 10

```
1    MORRISON COHEN LLP

2         Attorneys for Allure Gems

3         909 Third Avenue

4         New York NY 10022

5

6    BY:  JOSEPH T. MOLDOVAN

7         ROBERT K. DAKIS

8

9    HALPERIN BATTAGLIA BENZIJA, LLP

10        Attorneys for Landlords NW Properties

11        40 Wall Street, 37th Floor

12        New York, NY 10005

13

14   BY:  DONNA H. LIEBERMAN

15

16   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

17        Attorneys for Independent Directors

18        1285 Avenue of the Americas

19        New York, NY 10019

20

21   BY:  KELLEY A. CORNISH

22        ROBERT A. BRITTON

23

24

25
```

Page 11

1   COHEN TAUBER SPIEVACK & WAGNER P.C.

2        Attorneys for Aneri Jewels, LLC

3        420 Lexington Avenue, Suite 2400

4        New York, NY 10170

5

6   BY:  JOSEPH M. VANN

7

8   LOCKE LORD LLP

9        Attorneys for Cardtronics USA, Inc.

10        3 World Financial Center

11        New York, NY 10281

12

13   BY:  JOSEPH N. FROEHLICH

14

15   FOX ROTHSCHILD LLP

16        Attorneys for Caprep

17        49 Market Street

18        Morristown, NJ 07960

19

20   BY:  MICHAEL HERZ (TELEPHONICALLY)

21

22   ALSO PRESENT TELEPHONICALLY:

23

24   NEGISA BALLUKU

25   MARK CHANEY

1   ADAM S. RAVIN

2   LAUREN E. ZUMBACH

3   MICHAEL BAIRD

4   JOSEPH C. BARSALONA, II

5   JAMES T. BENTLEY

6   GEORGE BRICKFIELD

7   LYNN H. BUTLER

8   ANDREW S. CONWAY

9   JONATHAN COVIN

10   JOHN CRUCIANI

11   KELLY CUSICK

12   ANDREW DIAZ

13   JASON DIBATTISTA

14   TED A. DILLMAN

15   ROBERT E. FITZGERALD

16   SCOTT FLEISCHER

17   ALAN E. GAMZA

18   KIMBERLY B. GIANIS

19   STEPHANIE J. GLEASON

20   THOMAS HALS

21   TAYLOR B. HARRISON

22   VLADIMIR JELISAVCIC

23   WILLIAM M. JONES

24   TIFFANY KARY

25   GERALD P. KENNEY

Page 13

1   ERIN KIM

2   JOSEPH KINNEY

3   BERNICE C. LEE

4   TERESA LII

5   MICHELLE M. MCGREAL

6   MICHAEL MITTELMAN

7   PATRICK MOHAN

8   THOMAS ONDER

9   LAWRENCE PARK

10   JASON M. PIERCE

11   ANKITH POLAVARAPU

12   RYAN REINERT

13   STEVEN J. REISMAN

14   JEFFREY RHODES

15   LILLIAN A. RIZZO

16   CHELSEY ROSENBLOOM

17   CHRISTOPHER SAFAYA

18   MICHELLE E. SHRIRO

19   KEVIN J. SIMARD

20   AARON C. SMITH

21   CHRIS STAUBLE

22   RICHARD A. STIEGLITZ

23   ERIC STODOLA

24   MY CHI TO

25   THOMAS YANEGA

1                    P R O C E E D I N G S

2              MR. SHROCK:  Good afternoon, Your Honor.  Ray

3     Shrock, Weil Gotshal & Manges, proposed counsel for the

4     Debtors.  I'm here with my partner Sunny Singh.

5     (indiscernible).

6              Your Honor, very briefly, just before we get

7     started on the GOB procedures motion, I wanted to give the

8     Court and parties in interest a quick update before, I

9     believe, the proposed counsel for the unsecured creditors

10    committee stands, let me say a few words.

11             THE COURT:  Okay.

12             MR. SHROCK:  We've obviously had a very busy week

13    last week as the company commenced the Chapter 11 cases.

14    I'm pleased to report that I think the company has

15    stabilized to a large degree operations and, in fact, the

16    company did much better than forecasted under the DIP budget

17    this last week, which was one of the reasons that the

18    company decided to adjourn the junior Debtor in Possession

19    financing motion.

20             But there's been quite a bit of activity on that

21    front.  I think Lazard has spent well in excess of 100 hours

22    contacting potential so-called junior Debtor in Possession

23    financing lenders, you know, lots of NDAs.  And there's

24    quite a bit of activity on that front.

25             We felt that it was appropriate to continue that

Page 15

```
 1    effort, given the interest that's out there is quite a bit

 2    of interest on that financing.  And we're looking at

 3    structures, not just along the ESL financing route, but

 4    we're also considering different structures.  And we've been

 5    contacted by a number of different financial institutions

 6    about different ways to structure the financing package for

 7    the Debtors.  And so that's requiring us -- we're going to

 8    have to work with the senior lenders, you know, these

 9    proposed junior lenders, but given the company is not facing

10    a significant liquidity need right now, and given that we

11    have the time, we thought it was appropriate so we can

12    involve the creditors committee and others to continue that

13    effort.

14            THE COURT:  Okay.

15            MR. SHROCK:  Likewise, Your Honor, we're pleased

16    that a creditors committee formed.  I think we have our

17    initial download with the advisors scheduled for later this

18    afternoon at our offices with the Akin Gump, and we hope

19    their proposed financial advisor.  But with that, I'll turn

20    it over to Abid.

21            THE COURT:  Okay.

22            MR. QURESHI:  Thank you.  Good afternoon, Your

23    Honor.  For the record, Abid Quershi along with Phil Dublin,

24    Akin Gump Strauss Hauer & Feld, proposed counsel to the

25    official committee of unsecured creditors.
```

1           As Your Honor is aware, a nine-member committee

2    was appointed by Mr. Schwartzberg in the U.S. Trustee's

3    Office yesterday.  Your Honor, the members are the PBGC, we

4    have to indentured trustees, Bank of New York and

5    Computershare, two trade creditors, Apex Tools and

6    WINIADAEWOO Electronics.  There are also two individuals on

7    the committee, Mr. Vasiliu, who is a bondholder, as well as

8    Mr. Cruz, who is a representative plaintiff in a California

9    wages and hours action; and, finally, Your Honor, two

10   landlords, Brixmor Operating Partnership, LP, and Simon

11   Property Groups.

12           So, Mr. Tucker of Simon Property and Mr. Vasiliu

13   will serve as co-chairs of the committee.  Your Honor, it's

14   a diverse committee as is the unsecured creditor pool of

15   these estates.

16           Your Honor, there is a tremendous amount of work

17   for the committee to do on many fronts, and all of the work

18   streams are time sensitive.  As Mr. Dublin and I are in

19   court, the committee is in the process of interviewing

20   financial advisors and potential investment bankers.  So we

21   hope to have the full complement of advisors in place before

22   the end of the week.

23           Your Honor, as it relates to the investigation of

24   potential claims against ESL and other parties, we expect

25   complete and transparent cooperation from everybody.  We've

Page 17

1    had an initial round of calls with all of the relevant

2    professional -- with Mr. Shrock and his team at Weil, with

3    Paul Weiss, who represents the special committee of

4    independent directors, and Cleary Gottlieb who represents

5    ESL.  And all of those parties, Your Honor, have pledged to

6    cooperate, and all of the initial calls that we had were

7    encouraging, as we would've expected.

8             Your Honor, to the extent that we encounter any

9    issues concerning access to information or access to people,

10   we will not hesitate to be back before this Court to seek

11   the necessary relief.  This is an investigation that has a

12   myriad of issues and it is time sensitive, and we need that

13   cooperation.  Our investigation will be comprehensive and it

14   will be independent.  Thank you, Your Honor.

15            MR. SINGH:  Good afternoon, Your Honor.  Sunny

16   Singh, Weil Gotshal, proposed counsel for the Debtors.  Your

17   Honor, the only motion that we have on for today is a GOB

18   procedures order and motion.  And, Your Honor, I'm pleased

19   to report that I think, with the revised version of the

20   order that we filed with the Court just about two hours ago

21   -- and thank you for your indulgence, Your Honor -- and some

22   tweaks that we've made this morning that I'll review with

23   the Court, that I think it resolves everybody's issues.  And

24   we do have a consensual order.  Although I'll admit I

25   haven't spoken to every person in this courtroom, so

Page 18

1    somebody may come up and say something.

2            We've worked with the DIP lender, we've worked

3    with all the consignment vendor parties that have filed

4    objections.  We also work with the UCC and we appreciate

5    their quick review of the order.  We've incorporated their

6    comments as well as the United States Trustee's Office.  And

7    so all of those changes are reflected and in.

8            Your Honor, I don't know if you have a copy of the

9    black line that was filed.  I can certainly bring one up.

10           THE COURT:  Well, I have two black lines.  One

11   from either last night or this morning and one from a couple

12   of hours ago.

13           MR. SINGH: Oh, okay.  Great.  So, Your Honor, if

14   it's all right with you, before addressing any questions you

15   may have, maybe I can just -- just to catch you up on where

16   we are with a couple of changes that we incorporated this

17   morning.  And I'm looking at the red line that was filed at

18   about noon.

19           THE COURT:  Yeah, I have that in front of me

20           MR. SINGH:  It's the incremental red line.  So,

21   Judge, just one clarification change.  Paragraph 7.  This is

22   just regarding the Debtors abandoning certain property.  We

23   did add that we'll do it in consultation with the creditors

24   committee.  But just in the proviso we wanted to be clear

25   that, to the extent any assets remain at the leased premises

Page 19

1   after the completion of the applicable stores therein -- and

2   notice by the Debtors is what we'd like to add just to make

3   clear that, you know, we would provide notice of what we're

4   abandoning (indiscernible) may end up not being rejected,

5   notwithstanding that they're being closed.

6          Your Honor, moving on and really to get to the

7   heart of this in the consignment section that was added, and

8   that really starts at Paragraph 34, conceptually, Judge,

9   just so you understand kind of where we landed with the

10  consignment vendors and the DIP credit parties, we've gotten

11  to a place where the consignment vendors had the ability to

12  continue to ship and be paid post-petition proceeds of their

13  goods.  The Debtors are going to segregate those proceeds in

14  a separate reserve account, and the DIP lender liens as well

15  as the adequate protection liens will not cover or attach to

16  the consigned goods, or the proceeds, or that reserve

17  account.  So it's really going to be segregated and separate

18  and apart from the DIP lenders.

19         We will, of course, report to the lenders the

20  amounts that are in there as a segregated property so that

21  it's not inadvertently included in the borrowing phase, and

22  we'll work out appropriate reserves, to the extent those are

23  necessary, with the DIP lenders as part of the final DIP

24  order.

25         So, we'll be back to you on the mechanics, but

1    generally speaking we sort of confirmed with everybody that

2    consigned goods are outside of the liens of the added

3    protection DIP liens that have been authorized.

4              THE COURT:  Right.

5              MR. SINGH:  Your Honor, so a couple of changes

6    that I'll just review with you.  If you go to Paragraph 35,

7    this is the language relating to exactly what I just

8    referred to last where the DIP liens do not attach.  And

9    I'll just read it.

10              So it says, "For the avoidance of doubt,

11    notwithstanding anything to the contrary of the interim DIP

12    order or the final DIP order, any properly perfected notice

13    of valid consignment interests as defined in the UCC in and

14    to the consignment merchandise..." And so that language is

15    really covering the prepetition goods that were shipped.

16    And then we would add "or shipped post-petition pursuant to

17    this order.  And pursuant to this order, the vendor proceeds

18    in the reserve account shall not be subject to the DIP liens

19    are adequate protection liens."

20              So we're just making clear that it's the

21    prepetition leans as well -- the prepetition goods that were

22    properly perfected as well as post-petition that are being

23    shipped pursuant to this order because there won't be

24    (indiscernible).

25              And in Paragraph 38, Your Honor, where we talk

Page 21

1   about reporting with respect to the DIP lenders, we've also

2   made clear there that if any consignment vendor requests a

3   copy of the report, we would share that report to the extent

4   it relates to that particular consignment vendor.  So that

5   they have the evidence that they need -- you know, that

6   we've reported it to the DIP lender, and if they have an

7   issues, they can raise it with us.

8           So, I think those are the two changes, Your Honor.

9   We also moved around a couple of definitional things.  We'll

10  have some cleanup.  And what we were proposing is the DIP

11  lenders want to review -- their counsel want to review it

12  with the parties.  I think the consignment vendors and their

13  counsel would want to take one more look at everything.  So

14  maybe after this hearing is circulated and submit an order

15  to Your Honor with an updated red line once we're done with

16  that.

17          Somebody -- yeah, so that was -- I'm just being

18  reminded, Your Honor, that at 34, we're just going to move

19  the definition -- we're just going to move the definition in

20  the second line there "of consignment merchandise" to after

21  the phrase "whether delivered to the Debtor's prepetition or

22  post-petition" so it picks up and it tracks like the rest of

23  it.

24          THE COURT:  Consistent with the other changes.

25          MR. SINGH:  That's right, Judge.  So, again, we'll

Page 22

1    submit -- after just making sure everybody has one last

2    opportunity to look, we'll submit it to Your Honor.

3             I also wanted to report, Judge, that the U.S.

4    Trustee's objection as you saw from my reply, has been

5    resolved as to the retention of Abacus.  The agreement will

6    be assumed on an interim basis, and we've agreed with the

7    UCC that they'll have five business days to just make sure

8    that they can take a look at this before we pay the cure

9    amount, which is approximately $500,000.  And so pending the

10   prepetition work that they've done.

11            Abacus, Your Honor, you know, we believe the

12   qualifications are set out in the motion.  They've

13   liquidated already over 800 of the Sears and K-Mart

14   locations, and have over ten years of experience with this

15   company.  We think the pricing is also extremely favorable,

16   especially when you compare it to other mass liquidations,

17   such as Toys.

18            So, Your Honor, we believe the U.S. Trustee's

19   objection is resolved.  We already filed a 2040 Declaration,

20   which was their request, and we'll be reporting and giving

21   an opportunity to them and UCC to review any issues, and if

22   they have any objection with respect to the fees, they can

23   raise it.

24            Judge, just two points of clarification on Abacus.

25   First, just to be clear, the Debtors' agreement with Abacus

1    is only exclusive as to the stores that have been

2    specifically designated to be closed by Abacus.  And to

3    date, we've designated the first 142 of the initial stores.

4    To the extent that we determine to close additional stores

5    in the future, the Debtors are free to use another

6    liquidator should they so choose.  And, second --

7            THE COURT:  So, if you're going to use Abacus for

8    those in the future you need to amend the agreement again?

9            MR. SINGH:  No, the agreement authorizes us to

10   just continue to designate as we see fit.

11           THE COURT:  Which is within the Debtor's control?

12           MR. SINGH:  Right.  It's within the Debtor's

13   control.  And the reason it's important, Judge, because the

14   second point is it's a condition precedent to the closing of

15   the DIP agreement, the senior DIP agreement with Mammal and

16   the other re-arrangers that prior to the final closing date

17   with respect to the remaining stores, the Debtors must

18   retain a liquidating consulting firm that's acceptable to

19   them under the terms of the agreement.  So if there's any

20   issues, we'll have to resolve that.

21           THE COURT:  Okay.

22           MR. SINGH:  So, Judge, I think that's it with

23   respect to the changes I wanted to review.  One more just

24   point of clarification.  In Paragraph 25, which relates to

25   the master lease -- and this is really the Seritage and the

Page 24

1   other JD lease structures -- this is really -- in case

2   there's any confusion, Your Honor, this is really to make

3   clear that we're not addressing pursuant to this order or

4   the fact that we can, you know, commence store closings, any

5   issues relating to the severability of the lease or whether

6   a piece is being -- you know, one lease is being assumed or

7   not.  All parties' rights are reserved with respect to that

8   and any other master lease.  And should we need to come

9   back, we'll be able to come back, Your Honor.  But we didn't

10  see the need to deal with that issue and the landlord's

11  counsel did agree.  So, I think that takes care of that

12  issue.

13          Okay, Your Honor, I think I covered everything

14  that I had.  If there's questions that you have or any

15  remarks to the order, I'm happy to consider them and

16  respond, Your Honor.

17          THE COURT: Okay.  Well, let me ask whether -- I

18  think we've got up to 20 objections.  Let me ask whether any

19  of the objectors have anything more to say on this motion,

20  or whether they're satisfied with the changes that the

21  Debtors have inserted into the proposed order and the store

22  closing procedures.

23          MR. SUMMERS:  Good afternoon, Your Honor.  Matthew

24  Summers, Ballard Spahr, on behalf of a handful of landlords:

25  Macerich Company, Centennial Real Estate, CF Johns Company,

Page 25

1    Brixmor, and Extract LLC.

2           Your Honor, we had resolved our issues in our

3    objection through negotiation of a side letter agreement

4    with the liquidator and the Debtor, and there are some

5    changes that are made to Paragraph 3 of the proposed order

6    that inserts the committee into the process.

7           We had some concerns about that but you've

8    resolved that by having the committee -- the committee's

9    counsel was extremely responsive today when I reached out to

10   them.  They've reviewed the side letter agreement that we

11   had negotiated that would apply to our clients, and they've

12   confirmed that they're satisfied with it and have no

13   objection to it, so we're free to proceed under the side

14   order agreement.  And that would apply to our clients.

15          And then I had one (indiscernible) make sure it

16   gets into the final version that gets submitted.  I think

17   there's a comma missing after the added language to

18   Paragraph 3, the first part.  So I understand

19   (indiscernible).  But with that, we are resolved.

20          THE COURT:  All right.

21          MR. CORBI:  Good afternoon, Your Honor.  Richard

22   Corbi of Moses Singer on behalf of Rosy Blue and E.J. Gold.

23   I want to thank the Debtor's counsel for incorporating our

24   products -- about two objections to the original motion.  As

25   long as all the comments that we have are incorporated in

Page 26

1    the final order, our clients will be -- our objection will

2    be resolved.  But one issue I just don't waived is any

3    potential critical vendor issue that our clients may have at

4    this point.

5              THE COURT:  I'm not sure what that means.

6              MR. CORBI:  Essentially reserving my rights on any

7    critical vendor issue.

8              THE COURT:  Okay.

9              MR. CORBI:  And I know it's not for this motion

10   but just...

11             THE COURT:  And when you say your comments, those

12   are the ones that are in the order?

13             MR. CORBI:  Those are the ones that are in the

14   order and what Mr. Singh has presented to the Court.  Thank

15   you.

16             MR. MOLDOVAN:  Good afternoon, Your Honor.  Joe

17   Moldovan, Morrison Cohen.  We've worked extensively with

18   Debtor's counsel on keeping the modifications to the

19   proposed order.  Allure Gems is satisfied with the changes

20   that have been made and as have been described by the Court

21   -- have been described by Debtor's counsel to the Court.

22   And we thank the Debtor and the secured lender's counsel for

23   the work on this.  Thank you.

24             THE COURT:  Thanks.

25             MR. SCHMIDT:  Good afternoon, Your Honor.

1   Frederick Schmidt, Cozen O'Connor, counsel for Scents at

2   Work.  I just wanted to let the Court know that Scents at

3   Work is satisfied with the changes that were made.  I want

4   to thank the Debtor's counsel for being very responsive,

5   very constructive, and very cooperative.

6               THE COURT:  Okay.

7               MS. LIEBERMAN:  Good afternoon, Your Honor.  Donna

8   Lieberman, Halperin Battaglia Benzija, counsel for NW

9   Properties, a landlord group.  We did file an objection,

10  Your Honor.  We are very close to having an agreed side

11  letter.  I am optimistic that our objection will be

12  resolved.  But since we're not there yet, we do reserve our

13  rights with respect to the final hearing.

14              THE COURT:  All right.  I take it form no one

15  speaking that no one else -- no one has an issue.

16              MR. HERZ:  Your Honor?

17              THE COURT:  Oh, sorry.  Go ahead.

18              MR. HERZ:  It's Michael Herz of Fox Rothschild.  I

19  represent landlord Caprep.  I apologize for the pause.  When

20  you're on the phone it's tough to know if anyone else is at

21  the podium or not.

22              THE COURT:  Right.

23              MR. HERZ:  We filed an objection.  We have

24  principal (indiscernible) with the side letter like some of

25  the other landlords, but it hasn't been finalized yet.  Like

Page 28

1    the previous counsel, we reserve our rights for the final

2    hearing in case any issues come up in finalizing that

3    letter.  Thank you.

4              THE COURT:  Okay.  That's fine.  All right.  I

5    have a few questions for the Debtors and maybe I should just

6    go through them.  I appreciate, as did several of the

7    counsel who spoke, that the Debtors were quite responsive to

8    the objections.  So, these questions I think are sort of

9    second level questions, but I just wanted to make sure that

10   my understanding of this order of the procedures is clear.

11             If we could go to that Paragraph 25, which is the

12   reference to the master lease -- I appreciate Mr. Singh

13   letting me know why it's in there.  I just want to make sure

14   I understand this, though.  There are aspects of the relief

15   that I'm being asked to grant here that would conceivably

16   breach a lease, like going-dark provisions, for example.

17             MR. SINGH:  Right.

18             THE COURT:  And as I understand it based on your

19   explanation, this paragraph doesn't cut back on that as far

20   as the stores that are subject to the store closings.  It

21   just doesn't give the Debtors license to breach the master

22   lease with respect to other stores?  Is that what this is

23   about?

24             MR. SINGH:  Yes, Judge.  And it reserves their

25   right -- I think they would stand up and tell you -- it

Page 29

1    reserves their right if later, it's determined that the

2    leases were not severable and we couldn't have gone-dark

3    with respect to one store but not another.  You know, if

4    they want to serve damages, then our rights are reserved and

5    their rights are reserved, but it doesn't prevent us from

6    relying on the order with respect to stores we are closing

7    today.

8            THE COURT:  All right.  That's helpful.  And I

9    gather that's the master lessors' view of this, too.  So in

10   other words, it does not take away what the order elsewhere

11   gives as far as the stores that are slated for closing.

12           MR. SINGH:  That is right, Judge.

13           THE COURT:  But raises the -- preserves the

14   argument that if the leases are all one lease, the landlords

15   might assert a claim under the master lease for that?

16           MR. SINGH:  Yeah, I'll let counsel speak but it

17   basically is a practical matter --

18           THE COURT:  It's not a specific performance

19   provision, in other words.

20           MR. SINGH:  Yeah.  As a practical matter, we can

21   proceed with the store closings, you know, relying on your

22   order, but if we can preserve for later the severability

23   issue, including whether or not we had the ability to do

24   that notwithstanding that the master lease wouldn't allow us

25   to do that if it was not severable.

Page 30

```
 1              THE COURT:  Well, you're going to do it, so it's
 2    really just a damages issue.
 3              MR. SINGH:  It's a damages issues.
 4              THE COURT:  Okay.  All right, fine.  Okay.
 5              MR. SINGH:  Yeah.  Okay, I think we clarified it
 6    what Mr. (indiscernible) said.
 7              THE COURT:  He indicated that behind you.
 8              MR. SINGH:  Right.
 9              THE COURT:  Okay. I'm going to just go through
10    these in order, then.  Some of them are really quite minor,
11    but just so we're clear on what I'm signing is, and I will
12    grant this motion.  It sets forth a valid basis for the
13    relief and I think the objections have been properly dealt
14    with, at least on an interim basis.
15              Paragraph 3 uses a term "material adverse impact"
16    and actually in the procedures it said "material adverse
17    effect".  There's a lot of case law on what a material
18    adverse effect is.  I don't know of there's any caselaw on
19    material adverse impact, but is that just for -- if one is
20    to decide this issue it's just decided on a clean slate, is
21    that -- people wanted to avoid effect and have impact?
22              MR. SINGH:  Your Honor, I think we can just change
23    -- I don't think that was even --
24              THE COURT:  Well, it looks like someone thought
25    about it, because in the procedures they crossed out effect
```

1     and put in impact, but --

2              MR. SINGH:  We may just not have carried that

3     change through --

4              THE COURT:  Oh, okay.

5              MR. SINGH:  -- to the order, so I think we just

6     missed a conformity change.

7              THE COURT:  Well, maybe effect is better because

8     there's a lot of caselaw.

9              MR. SINGH:  Yeah.  We -- I was just going to say,

10    we're fine with effect.

11             THE COURT:  So I think that should go back to

12    effect --

13             MR. SINGH:  Yep.

14             THE COURT:  -- in both the procedures and the

15    order.

16             This is another just wording issue.  On page --

17    well, I did most of my markup on the first black line, so

18    it's Paragraph 7.  And the first proviso about two-thirds of

19    the way down, that paragraph says that the assets would be

20    deemed abandoned and you've added the phrase about notice.

21             MR. SINGH: Right.

22             THE COURT:  And then the second proviso that says,

23    "Proviso, the Debtor shall remove any hazardous or toxic

24    materials," and then it says, "Any landlord or other

25    designee shall be free notwithstanding the automatic stay to

Page 32

1    dispose of the same."  And it just wasn't clear to me --

2    entirely clear to me what the same is referring to.  Is it

3    referring to the toxic materials or is it referring to any

4    abandoned materials?

5            MR. SINGH:  Any abandoned.

6            THE COURT:  All right.

7            MR. SINGH:  Yeah, so, we can't leave any toxic

8    materials so --

9            THE COURT:  Right.  Right, so --

10           MR. SINGH:  -- it should say dispose of abandoned

11   property.

12           THE COURT:  Right.  There's Paragraph 21 of the

13   order, deals with as-is and final nature of the sale of the

14   store closing sales.

15           MR. SINGH:  Yes.

16           THE COURT:  And it refers to the survival of

17   federal and state laws (indiscernible) implied warranties

18   and gives a limited right to return goods.  If you go to the

19   procedures in G on Page 2, it talks about the sales also

20   being final with conspicuous signs saying that they're final

21   and then Paragraph 7 of the Abacus Agreement also deals with

22   the final nature of the sales and neither of those

23   provisions mentions anything about the right to return.

24           So I think there should be -- I think people who

25   are buying stuff at these sales should know what their right

1     to return is, so that should be displayed somewhere and

2     Abacus should understand that they have that right.

3               MR. SINGH:  That's fine, Your Honor.  I think what

4     we can do is we can certainly add it to G in the procedures

5     and, you know --

6               THE COURT:  And that's incorporated in the Abacus

7     Agreement, I think.

8               MR. SINGH: Yeah, and regardless, we'll make sure

9     they understand and the company understands and we need to

10    make people aware --

11              THE COURT:  Right.

12              MR. SINGH: -- of the proviso.

13              THE COURT:  This should just be a sign where

14    people go to the cash register or whreever and say this --

15    you know, these are your rights.

16              MR. SINGH:  Right.

17              THE COURT:  You gave notice to the state's

18    attorney general and the governmental authorities.

19              MR. SINGH:  Yes.

20              THE COURT:  And there were no objections and it's

21    understandable because those procedures of the proposed

22    order are consistent with procedures that are followed

23    around the country for sales like this.

24              But I did notice that in a couple of the more

25    recent sales -- Borders and Sports Authority -- people had

1    21 days to return instead of seven.  Is there a reason why

2    it's only a week?

3                MR. SINGH:  Well, no, Judge.  I think we can

4    expand it because I think during that notice period we can

5    proceed with the sales, so I think it would be okay to give

6    them --

7                THE COURT:  I think it's better to make it 21

8    days.

9                MR. SINGH:  That's fine.

10               THE COURT:  Paragraph 29 -- and this lays out the

11   resolution of the Abacus issue with the U.S. Trustee and the

12   Committee.  I think you should just say -- I think there are

13   a couple words left out.  About half way down, it says,

14   "connection with these Chapter 11 cases in accordance with

15   the terms of."

16               MR. SINGH:  Yes.

17               THE COURT:  And it says, "their engagement

18   agreement."  I think you should say the liquidation

19   consulting agreement, because I think that's the only

20   agreement we're talking about.

21               MR. SINGH:  That is correct, Judge.

22               THE COURT:  And then the next sentence says, "Such

23   party shall have 15 days to review and dispute any such

24   invoice submitted by Abacus," and I would add, "comma, which

25   dispute shall be decided by the Court unless resolved by the

1  parties, comma", and then you would continue on and then go

2  -- so again, that would say, "which dispute shall be decided

3  by the Court unless resolved by the parties", and then you

4  would continue on "if no such disputes are received without

5  any further", and then add the word "order -- of the Court."

6          MR. SINGH:  Got it.

7          THE COURT:  And then, this appears a couple times.

8  If you look at 31, at the end of that paragraph, there's

9  this proviso that says, "provided that closing stores that

10  are not initial closing stores may be closed under the

11  liquidation consulting agreement or in accordance with any

12  other agreement approved by the Debtors subject to the

13  approval rights of the DIP ABL agents under the terms of the

14  DIP loan agreements."

15          This just says "closed under liquidation

16  consulting agreement."  I think you should say "closed under

17  the terms of this order and the liquidation consulting

18  agreement."

19          MR. SINGH:  That's right.

20          THE COURT:  And I think that's also in the

21  procedures.  Anyway, we'll get to that in a second.  Okay.

22  And then on turning to the procedures, we already talked

23  about G on Page 2.  K and L deal with people claiming their

24  property that isn't Debtor property before it's abandoned.

25          MR. SINGH:  Yes.

1          THE COURT:  And I just want to -- you said there

2     would be a notice on abandonment.

3          MR. SINGH:  Yes.

4          THE COURT:  But the notice should include people

5     that you know are lessors or otherwise owners of property

6     that's not sold.

7          MR. SINGH:  Yep.  We'll make that clear, Judge.

8     That certainly is the intention.

9          THE COURT:  Okay.  And then I think R, it says

10    that "Abacus or any other liquidation consultant shall

11    continue to have exclusive and unfettered access to the

12    applicable closing store (indiscernible) the Debtors have

13    rejected."  I think after the words "shall continue", I

14    think you should say "while retained".

15         MR. SINGH:  Yes.

16         THE COURT:  And then S is the -- we've already

17    talked about this in the order.  This is -- just say "may be

18    closed under the terms of the order and the liquidation

19    consulting agreement."

20         And then I appreciate that the lessors have either

21    stated explicitly or by their silence have implicitly said

22    that they're fine with the order and the procedures as

23    revised, but on the default mechanism I think you should

24    build in a right --or just say that notwithstanding these

25    provisions, a landlord -- "either party shall have the right

Page 37

1    to seek emergency relief under the case management

2    procedures."  You know, if you started to sell, I don't

3    know, some horrible product at the store, I don't think the

4    landlord should have to wait two weeks to stop you all from

5    selling it.  Although, I doubt that you'll do that.

6           MR. SINGH:  That's fine.  We can add that

7    language.

8           THE COURT:  All right.  So I think that covers it.

9    Let me just see if I had anything else that you had.  Oh,

10   yes.  There is one more.  Yes.  The resolution of the

11   consignment issue, I think, largely comes out of the Sports

12   Authority order --

13          MR. SINGH:  Yes, Your Honor.

14          THE COURT:  -- which is fine and obviously, you

15   know, the Debtors are certainly free to continue with their

16   consignment agreements pending rejection so that's a

17   perfectly logical way to proceed with this.

18          My comment goes to the reservation of rights.  I

19   haven't looked at this issue for a couple of years, but as I

20   understand it in my review of the Sports Authority case and

21   the Salander Gallery case kind of confirm this, there are a

22   couple of different ways that parties on either side of the

23   priority issue can win, depending on whether the consigner

24   is a consignee under the UCC or separately and I think the

25   reservation of rights, 37, just deals with one subset of

1    those issues as opposed to both of them so it's probably

2    better to -- I would think to reserve all rights as to

3    priority, not just under the UCC.

4            MR. SINGH:  Yeah, I think that's right, Your

5    Honor.  Perhaps we could just say notwithstanding

6    (indiscernible) all parties' rights as to priority and

7    strike the rest, are preserved and shall be resolved

8    (indiscernible).

9            THE COURT:  I think that's right because the UCC

10   sets out a regime where if you are a consignor under the

11   definition of the UCC, then that whole set of rules governs

12   but otherwise, there are issues about notice and state law -

13   -

14           MR. SINGH:  Right.

15           THE COURT:  -- which may vary depending on the

16   states that Sears does business, so I think it's better just

17   to have a general reservation of rights in 37.

18           MR. SINGH:  I think that's fine, Your Honor.

19           THE COURT:  Okay.  So with those changes which, I

20   think, are clear to people, at least I saw various of the

21   counsel that had filed objections nodding their heads in the

22   back behind you and I'm not hearing people speaking up on

23   the phone, I think, assuming that those are in the order or

24   in the procedures, as we just discussed, I will grant the

25   motion.

1          Clearly, there's no objection to the Debtors'

2     decision to sell the property that they own in these stores

3     or to continue to sell consigned goods as provided in the

4     order and it's based on the entire record of an appropriate

5     exercise of business judgment.

6          363(f) is complied with here with regard to

7     property that the Debtors can sell.  There have been no

8     objections by any party asserting an interest in the

9     property that's not resolved by the order and so therefore

10    there's at least one and probably more grounds under 363(f)

11    to sell the property free and clear.

12          As far as the Abacus Agreement is concerned, I've

13    reviewed it and -- oh, I actually did have a couple of

14    questions on it, but as far as the economic terms of it,

15    they seem reasonable to me and I would agree with the

16    Debtors' description of them.  These are really minor

17    comments.  I don't know if there's anyone here from Abacus

18    to cover this, but -- and I appreciate that Mr. Cohen's been

19    doing this for a long time, so he uses shorthand.  But if

20    you go to expenses that get reimbursed --

21          MR. SINGH:  Yes.

22          THE COURT:  Paragraph 10, that is.  The last two

23    are cash over/short and sundry.  And I don't know what

24    either of those is, so, if anyone can tell me.

25          MR. SINGH: Your Honor, I have to admit I don't

Page 40

1    know either but I will have to clear that up.

2            THE COURT:  All right.  I hope they're minor,

3    whatever they are.

4            MR. SINGH:  Yes.

5            THE COURT:  Many, many years ago I worked with him

6    and he spent all afternoon talking about shrinkage and I had

7    no idea what he was talking about until we got in a cab and

8    I could ask him, since the other side was there.  But

9    hopefully there's a good explanation of sundry and cash

10   over/short.

11           MR. SINGH:  Yes, Your Honor.  We'll get the

12   explanation.  I think we can report it to the committee and

13   the lenders to make sure it's nothing that --

14           THE COURT:  Okay, and --

15           MR. SINGH:  -- they would not be comfortable with.

16           THE COURT:  This is all -- I mean, this is all

17   qualified by the unspoken word reasonable for these

18   expenses, so --

19           MR. SINGH:  We'll also let the U.S. Trustee know

20   (indiscernible) covered.

21           THE COURT:  Yeah, it was Paragraph 7 that dealt

22   with the as-is language and we already talked about that in

23   the --

24           MR. SINGH:  Yes.  We're going to change the

25   procedure so it conforms to the order --

1          THE COURT:  And that tracks, then, through their

2    agreement.  They're not allowed to do -- they have to comply

3    with the procedures.

4          MR. SINGH:  That's right.  They have to comply

5    with the procedures and we'll, of course, make sure it's

6    coordinated.

7          THE COURT:  Okay.  Very well.  So I'll look for

8    that order.  The Debtors -- I'll authorize them on an

9    interim basis based on today's record to rely on my ruling

10   and to move ahead on an interim basis with the store closing

11   sales, but the order, if you get it in to me reasonably

12   soon, it'll get entered today or tomorrow.

13         MR. SINGH:  Okay. Thank you very much, Your Honor.

14         THE COURT:  Okay.  Thank you.

15      (Whereupon these proceedings were concluded at 2:42 PM)

16

17

18

19

20

21

22

23

24

25

Page 42

```
1                          I N D E X

2

3                          RULINGS

4                                         Page      Line

5

6   Store Closing Sales Authorized on an    41        8

7   Interim Basis

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 43

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya                    Digitally signed by Sonya Ledanski
                              Hyde
                              DN: cn=Sonya Ledanski Hyde, o,
     Ledanski Hyde            ou, email=digital1@veritext.com,
                              c=US
7                             Date: 2018.10.26 14:51:50 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 26, 2018