Peter M. Gilhuly, Esq.
Jeffrey E. Bjork, Esq.
Ted A. Dillman, Esq.
355 South Grand Ave, Ste. 100
Los Angeles, CA  90071-1560
and
Marc A. Zelina, Esq.
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Tel:     (212) 906-1200
Fax:    (212) 751-4864

*Attorneys for Simon Property Group, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : Chapter 11 |
| SEARS HOLDINGS CORPORATION., *et al.*, | : Case No. 18-23538 (RDD) |
| Debtors.[1] | : (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF SIMON PROPERTY GROUP, L.P. TO THE DEBTORS' MOTION FOR APPROVAL OF DEBTOR-IN-POSSESSION FINANCING**

Simon Property Group, L.P., as landlord and/or managing agent ("**Simon**"), by and through its undersigned counsel, submits this limited objection and reservation of rights (this "**Limited Objection**") to the *Debtors' Motion for Authority to (a) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* [Docket No. 7] (the "**DIP Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"). In support of this Limited Objection, Simon respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Through the DIP Motion, the Debtors seek (a) final approval of up to $1.83 billion in senior secured debtor-in-possession financing (the "**DIP ABL Facility**") from the Prepetition First Lien Lenders, and (b) interim approval of a $300 million junior debtor-in-possession term loan (the "**Junior DIP Facility**") from insider ESL Investment, Inc. and certain related entities (collectively, "**ESL**").

2. On October 16, 2018, this Court approved, on an interim basis, the Debtors' entry into the DIP ABL Facility pursuant to the Interim ABL DIP Order,[3] which granted liens securing the DIP ABL Facility and adequate protection liens on the DIP ABL Collateral.[4] Importantly,

---

[2] Capitalized terms used, but not otherwise defined, in this Limited Objection shall have the meaning set forth in the DIP Motion or the Interim ABL DIP Order (as hereinafter defined), as applicable.

[3] The "**Interim ABL DIP Order**" refers to the *Interim Order (I) Authorizing the Debtors to (a) Obtain Post-Petition Financing, (b) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (c) Utilize Cash Collateral; (ii) Granting Adequate Protection to the Prepetition Secured Parties; (iii) Modifying the Automatic Stay; (iv) Scheduling Final Hearing; and (v) Granting Related Relief* [Docket No. 101].

[4] The DIP ABL Liens consist of (i) a first priority security interest in and lien on all unencumbered property of the DIP ABL Loan Parties, (ii) a junior security interest and lien on all property of the DIP ABL Loan Parties that is subject to valid and perfected prepetition security interests and liens in favor of third parties, and (iii) a first priority priming security interest and lien on the Prepetition ABL Collateral, subject to Permitted Prior Liens.

however, *the Interim ABL DIP Order expressly extended only to proceeds of the Debtors' leases and <u>excluded</u> direct liens on real property leases of the Debtors unless such liens were expressly permitted pursuant to the underlying lease documents.*

3.  While the Debtors have not filed a proposed order for the Junior DIP Facility or any other documents prior to the objection deadline, the Junior DIP Term Sheet (as hereinafter defined) notes that the collateral will include all encumbered and unencumbered assets of the Debtors. *See* DIP Motion, Ex. C at p. 11. Moreover, the Interim ABL DIP Order also notes that the Debtors <u>may</u> seek to grant liens on leases in the final order approving the DIP ABL Facility. *See Interim ABL DIP Order*, ¶ 12. Despite repeated requests for clarity on this point, the Debtors have continued to indicate that whether the order approving the Junior DIP Facility and/or the final order approving the DIP ABL Facility would exclude direct liens on leases (unless permitted under the documents) remained an open issue.[5]

4.  As described in more detail herein, Simon (through its wholly-owned or partially owned subsidiaries) owns or operates numerous shopping centers located throughout the United States at which the Debtors lease retail space pursuant to written Leases or operate in Simon's properties under Reciprocal Easement Agreements (each as hereinafter defined) for stores located in various shopping centers, as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g., Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*, 472 B.R. 666, 677 (Bankr. S.D.N.Y. 2012); *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

5.  Simon objects to the DIP Motion to the extent the Debtors seek authority to encumber their Leases with Simon, except as specifically permitted under the applicable leases. Provisions that restrict the Debtors' ability to pledge the Leases as collateral are not ipso-facto

---

[5] As the Debtors have not filed documents related to the proposed Junior DIP Facility or the final order on the ABL DIP Facility as of the objection deadline, Simon reserves all rights in connection therewith.

clauses rendered unenforceable by the Bankruptcy Code, nor does section 364 of the Bankruptcy Code (as hereinafter defined) provide authority to render lease provisions unenforceable that are enforceable under state law. *See, e.g., Stern v. Marshall*, 131 S. Ct. 2594, 2616 (2011) ("Property interests are created and defined by state law."); *Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 24-25 (2000) ("Bankruptcy Courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of the creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."). Moreover, the approach of requiring that liens extend to real estate leases only to the extent permitted under the documents is consistent with the applicable debtor-in-possession financing orders in numerous other recent retail bankruptcy cases – *e.g.*, *In re Nine West Holdings, Inc.*; *In re Tops Holding II Corp.*; *In re Sbarro LLC*; *In re Claire's Stores, Inc.*; *In re The Gymboree Corp.*; *In re rue21, inc.*; *In re Payless Holdings LLC*; *In re The Sports Auth., Inc.*[6] It is also the approach taken in the Interim ABL DIP Order here.

6.      Accordingly, insofar as the Debtors seek to encumber Simon's Leases other than as expressly permitted thereunder, Simon respectfully requests that this Court deny such relief.

\* \* \*

7.      In addition, and as a more fundamental matter, Simon has deep concerns about the Debtors' proposed process for these Chapter 11 Cases (as hereinafter defined). As discussed further in the concurrently filed objection to the Debtors' proposed bidding procedures, the Debtors' (i) narrow focus on a "go forward" sale of approximately 400 (as of yet publicly

---

[6] For collected citations, *see* ¶¶ 23-24 herein.

unidentified) purportedly 4-wall EBITDA positive stores,[7] rather than inviting the broadest possible universe of qualified bids, (ii) rapidly deteriorating liquidity during Q4,[8] which should be a strong quarter for a retailer, and (iii) calls for insider Junior DIP Financing, should reasonably be viewed and is designed to setup a *fait accompli* sale process where the Debtors find themselves against a liquidity wall and there is no viable alternative to whatever transaction insider ESL and its chairman, Edward Lampert (also the chairman of the Debtors and until recently their chief executive officer) seeks to effect. Simon submits that the Debtors' should create a process that will allow fulsome vetting of available options to maximize value by, among other things, encouraging bids on subsets of the assets on a timeline that will allow these proposals to be considered as viable alternatives to the "go forward" approach. *See In re Claire's Stores, Inc.*, Hr'g Tr. at 216:25-217:2 (June 15, 2018) (Walrath, J.) ("The major problem that I have with the process is that bidders were not specifically told that they can submit bids in any format.").

## BACKGROUND

### A. The Debtors' Chapter 11 Cases

8.   On October 15, 2018 (the "**Petition Date**"), the Debtors commenced the above-captioned cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"). The Debtors are continuing in possession of their property and are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 24, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**"), of which Simon is a member and

---

[7] While the Debtors have purportedly identified approximately 400 stores that are 4-wall EBITDA positive (*see Debtors' Motion for Approval of Global Bidding Procedures* [Docket No. 429] ¶ 1), the Debtors have not identified a plan to cut their historically high corporate overhead/SG&A expenses to a level that would support a going concern.

[8] Per the Approved Budget for the Interim ABL DIP Order, net availability is projected to decline by over $193 million from $278.4 million to $85.1 million in the week of January 12, 2019. *See* Interim ABL DIP Order, Ex. A.

co-chair.[9]  *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 276].  No trustee or examiner has been appointed in the Chapter 11 Cases.

### B. Simon and Its Relationship to the Debtors

9. As noted above, Simon (through its wholly-owned or partially owned subsidiaries) owns or operates numerous shopping centers located throughout the United States at which the Debtors lease space pursuant to written leases or operate in Simon's properties under various reciprocal easement agreements (each a "**Lease**" or "**Reciprocal Easement Agreement**") for the stores listed on the attached **Exhibit A** (collectively, "**Premises**").

10. As set forth on Exhibit A, the Debtors currently lease space for 25[10] of their retail and service locations from Simon, including space operated by Sears Auto Centers, which are generally subject to the same applicable Lease and/or Reciprocal Easement Agreements as the main stores.  These Leases were entered into over many decades and, accordingly, include varying terms, but many of the Leases contain express prohibitions on granting any liens or security interests in the Leases, while others impose specific restrictions and/or requirements in order for the tenant to encumber the Lease (such as requiring agreements subordinating the lienholder's rights to the landlord's rights), or may not address the issue specifically.  Importantly, the Leases with Simon do not give the Debtors an unfettered right to grant such security interests on the real property leases.

11. In addition, the Debtors own, or lease from a third party, the space for another 22 retail and service locations identified on Exhibit A, which operate within Simon shopping centers

---

[9] Simon submits this Limited Objection in its capacity as a landlord and creditor of the Debtors, and not in its capacity as a member or co-chair of the Committee.

[10] This figure does not include (i) three Simon-owned spaces (Burlington Mall, Midland Park Mall and Ocean County Mall) formerly leased to the Debtors, which leases were terminated effective September 1, 2018, or (ii) six Simon-owned spaces in Mills Malls (Arizona, Grapevine, Great Mall, Philadelphia, Potomac and Sugarloaf) currently leased to Sears Hometown and Outlet Stores, Inc., a subsidiary of the Debtors that is not a Debtor in these Chapter 11 Cases.

subject to Reciprocal Easement Agreements.

12. Further, Simon, through a wholly-owned affiliate (i.e., SPS Portfolio Holdings LLC) is party to a newly formed joint venture (the "**JV**") with Seritage Growth Properties, Inc. ("**Seritage**"), a non-debtor publicly traded real estate investment trust. As discussed in the First Day Declaration,[11] the JV was formed in April 2015 when certain Debtor-entities contributed certain owned properties located at Simon shopping centers to the JV in exchange for a 50% noncontrolling interest in the JV; the Debtors simultaneously leased back the properties held by the JV and transferred their interests in the JV to Seritage. *See* First Day Declaration, ¶ 46. The purpose of the JV was to facilitate redevelopment of these properties or portions thereof that were not fully utilized. Subsequently, in November 2017, Simon and its affiliates acquired additional interests in certain real estate assets and/or rights to terminate leases related to 12 Sears stores located at Simon malls (including 5 retail and service locations previously held in the JV), in order to redevelop these properties or portions thereof. The JV with Seritage now covers the former Sears properties located at 5 Simon malls, which are included on Exhibit A. As further noted in the First Day Declaration, similar real estate joint ventures were entered into with other shopping center landlords (General Growth Properties (now part of Brookfield Properties Retail Group) and The Macerich Company). *See id.*

13. Seritage owns the space for 13 retail and service locations identified on Exhibit A in which the Debtors are tenants, which operate within Simon shopping centers subject to Reciprocal Easement Agreements.

14. All of the Premises are located in "shopping centers" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g., Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*,

---

[11] The "**First Day Declaration**" refers to the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* [Docket No. 3].

472 B.R. 666, 677 (Bankr. S.D.N.Y. 2012) ("[C]ourts have interpreted the term [shopping center] on a case-by-case basis and generally consider, among other criteria, combination of leases, whether all leases are held by single landlord, presence of common parking area, existence of master lease, and contiguity of stores."); *In re Joshua Slocum, Ltd.,* 922 F.2d 1081 (3d Cir. 1990).

### C. Debtor in Possession Financing

15. On the Petition Date, the Debtors filed the DIP Motion seeking approval to enter into the ABL DIP Facility (and the Junior DIP Facility at a later date). On October 16, 2018, the Court entered the Interim ABL DIP Order. Pursuant to the Interim ABL DIP Order, the Debtors were authorized to obtain an asset-based revolving credit facility and term loan.

16. As security for providing the ABL DIP Facility, the DIP ABL Lenders were granted postpetition security interests in and liens on all DIP ABL Collateral. *See Interim ABL DIP Order*, ¶ 12. However, the Interim ABL DIP Order provides that "the DIP ABL Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property *unless such liens are expressly permitted pursuant to the underlying lease documents*." *Id*. (emphasis added). As such, under the Interim ABL DIP Order, the DIP ABL Lenders were only granted liens on the proceeds from the Debtors' real estate leases, and *not* the leases themselves, unless specifically permitted by the leases.

17. The Interim ABL DIP Order further provides that "the Final Order may provide for the grant of liens on real property leases." *Id.* To date, Simon has not received a copy of the proposed final order with respect to the DIP ABL Facility to determine whether the Debtors have decided to seek to encumber the real property leases.

18. Attached as Exhibit C to the DIP Motion is the term sheet summarizing the terms and conditions of the contemplated Junior DIP Financing (the "**Junior DIP Term Sheet**"). The Junior DIP Term Sheet contemplates ESL (as potential agent and lender for the Junior DIP

Facility) receiving, among other things, a perfected lien and security interest on all encumbered and unencumbered assets of the Debtors (subject to the priorities described therein). *See Junior DIP Term Sheet*, p. 11. Notably, there is no carve out for liens on real property leases.

19. While the proposed documents related to the Junior DIP Facility (including the proposed order) have not been filed as of the date hereof, nor have such documents been provided to Simon, the Junior DIP Term Sheet suggests that the Debtors and ESL may seek to impose liens on real estate leases (as opposed to proceeds therefrom). Further, while the proposed final order on the ABL DIP Facility has also not been filed or provided to Simon as of the date hereof, the Interim ABL DIP Order indicated that liens on leases may be sought at the final hearing. The Debtors have indicated to Simon's counsel that liens on leases remains an open issue, necessitating this Limited Objection.

## **LIMITED OBJECTION**

20. Provisions restricting a tenant's ability to encumber leases are critical to landlords' abilities to control their properties, to comply with their own financing and investment covenants, and any compromise of these provisions detract from the marketability of the shopping centers as a whole. Section 364 of the Bankruptcy Code does not grant a debtor or its lenders the ability to render such lease provisions unenforceable. The United States Supreme Court consistently upholds the position that bankruptcy courts are to respect non-bankruptcy rights unless a specific bankruptcy provision or policy requires differently. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). "'Property rights are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2616 (2011), quoting *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007), quoting *Butner*, 440 U.S. at 55. The burden to demonstrate that bankruptcy law

overrides applicable state law falls on the party making that assertion. *See Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 25 (2000); *Butner*, 440 U.S. at 55. Therefore, a lease provision that is enforceable under applicable state law is enforceable in a bankruptcy proceeding, absent a specific bankruptcy provision or policy that requires differently. No such provision or policy exists with respect to a lender's lien rights.

21. The Debtors' Leases are contracts under state law and, with limited exceptions specifically provided in the Bankruptcy Code, their provisions remain enforceable against the Debtors. Notably, provisions that do not permit or otherwise restrict the Debtors' ability to grant liens on the Leases remain enforceable.[12] While section 364(c) of the Bankruptcy Code provides a framework for the Debtors to incur secured post-petition indebtedness, it does not grant the Debtors the ability to override any terms of their state law contracts as a wholesale matter. *See* 1 COLLIER PAMPHLET EDITION 2018 (Richard Levin & Henry J. Sommer eds., Matthew Bender), ch. 364, p. 305 ("The priorities granted under this subsection [364(c)] do not interfere with existing property rights.").

22. In addition, section 365(d)(3) of the Bankruptcy Code provides:

> The Trustee shall timely perform all the obligations of the debtor except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1).

11 U.S.C. § 365(d)(3). This provision of the Bankruptcy Code ensures that tenants continue to perform their obligations under their non-expired leases until such time as the leases are assumed

---

[12] Unlike anti-assignment provisions, anti-hypothecation provisions should not be disregarded pursuant to Section 365(f) of the Bankruptcy Code. The express language of the statute is clear and unambiguous, and provides that only provisions that "prohibit, restrict, or condition the *assignment* of such contract or lease" are unenforceable. *See* 11 U.S.C. § 365(f) (emphasis added). No such provision exists in the Bankruptcy Code with respect to granting liens. Moreover, section 365(f) applies in the context of assumption and assignment of a contract or lease; the Debtors have not assumed the leases.

or rejected. As noted above, pursuant to the terms of many of the Leases, the Debtors may not encumber the Lease or any interest in such Lease, or the Leases impose specific requirements in connection with such encumbrances, which should be honored.

23. This approach of permitting liens on real estate leases only where expressly permitted under the applicable documents is consistent with the practice in numerous recent retail chapter 11 cases in this district. *See*, *e.g.*, *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 28, 2018), ¶ 8(f), (e) ("Notwithstanding anything to the contrary in the DIP Motion, the DIP Documents, or this Final Order, for purposes of this Final Order, in no event shall the DIP Collateral include or the DIP Liens or Adequate Protection Liens granted under this Final Order attach to any lease or other real property right . . . if and for so long as the grant of such security interest would constitute or result in . . . a breach or termination pursuant to the terms of, or a default under, any such lease or other real property right pursuant to any provision thereof . . . ."); *In re Tops Holding II Corp.*, Case No. 18-22278 (RDD) (Bankr. S.D.N.Y. Apr. 5, 2018), ¶ 5 ("Notwithstanding the foregoing, DIP Collateral shall not include (w) the Debtors' real property leases that prohibit the granting of a lien thereon or security interest therein or otherwise prohibits hypothecation of the leasehold interests (unless already subject to a mortgage in favor of the Secured Notes Indenture Trustee), but shall include all proceeds of such leases . . . ."); *In re Sbarro LLC*, Case No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 25, 2014), ¶ 7(a) ("Notwithstanding anything to the contrary in this Final Order or any financing agreements or other documents, and solely with respect to the Debtors' non-residential real property leases, neither the DIP Liens nor the Adequate Protection Liens nor any other liens or encumbrances, shall be granted on, or extend to such leases themselves, but instead such liens shall be fully perfected liens on any and all proceeds of such leases . . . .").

24. Further, this approach has also been employed as customary practice in recent retail bankruptcies in other jurisdictions. *See*, *e.g.*, *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. Apr. 24, 2018), ¶ 2(k) ("For the avoidance of doubt, (i) the DIP Collateral shall not include, and the DIP Liens shall not encumber . . . (including, (x) the leasehold interests of any Debtor . . .)"); *In re The Gymboree Corp.*, Case No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017), ¶ 5 ("Notwithstanding the foregoing, DIP Collateral shall not include (i) the Debtors' real property leases (but shall include all proceeds of such leases) . . . ."); *In re rue21, inc.*, Case No. 17-22045 (GLT) (Bankr. W.D. Pa. June 13, 2017), ¶ 5 ("Notwithstanding the foregoing, (a) DIP Collateral shall not include the Debtors' real property leases but shall include all proceeds of such leases . . . ."); *In re Payless Holdings LLC*, Case No. 17-42267 (Bankr. E.D. Mo. Apr. 5, 2017), ¶ 5 ("Notwithstanding the foregoing, DIP Collateral shall not include the Debtors' real property leases but shall include all proceeds of such leases."); *In re The Sports Auth., Inc.*, Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016), ¶ 8(c) (The DIP Collateral shall include "[t]he Lease Proceeds, but not the Leases themselves, whether or not so perfected prior to the Petition Date.").

25. Accordingly, Simon requests that this Court deny any request to grant liens on the Debtors' leases (as opposed to proceeds thereof) unless expressly permitted under the applicable lease.

**JOINDER AND RESERVATION OF RIGHTS**

26. Simon reserves the right to supplement and amend this Limited Objection and introduce evidence at the hearing on final approval of the DIP Motion and this Limited Objection. Further, Simon reserves the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the DIP Motion.

27.     To the extent consistent with the objections expressed herein, Simon also joins in the objections of the Committee and other shopping center lessors to the Debtors' proposed relief.

## CONCLUSION

WHEREFORE, Simon respectfully requests that this Court deny approval of the ABL DIP Facility on a final basis and the Junior DIP Facility on an interim and final basis to the extent that such facilities (or the adequate protection liens granted in connection therewith) will be secured by security interests in and liens on the Debtors' real property leases (as opposed to proceeds of such leases), unless expressly permitted by the underlying leases.

Dated: November 9, 2018
      New York, New York

*/s/ Marc A. Zelina*
Peter M. Gilhuly (*pro hac vice* admission pending)
Jeffrey E. Bjork (*pro hac vice* admission pending)
Ted A. Dillman (*pro hac vice* admission pending)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 485-1234
Facsimile:     (213) 891-8763
Email:            peter.gilhuly@lw.com
                jeff.bjork@lw.com
                ted.dillman@lw.com

Marc A. Zelina
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Telephone:    (212) 906-1200
Facsimile:     (212) 751-4864
Email:            marc.zelina@lw.com

*Attorneys for Simon Property Group, L.P.*