PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-373-3000
Fax: 212-757-3990
Paul M. Basta
Kelley A. Cornish
Lewis R. Clayton

*Proposed Counsel to the Debtors Acting at the Direction
of the Restructuring Subcommittee of the Board of Directors
of Sears Holdings Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.** [1] | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

## MOTION FOR LEAVE TO CONDUCT
## DISCOVERY PURSUANT TO BANKRUPTCY RULE 2004

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Preliminary Statement ............................................................................................ 1

Jurisdiction and Venue ........................................................................................... 3

Background ............................................................................................................. 3
    A.    General Background ................................................................................. 3
    B.    The Prepetition Related Party Transactions ............................................ 4
    C.    The Investigation .................................................................................... 7

Relief Requested .................................................................................................... 9

Basis for Relief Requested ..................................................................................... 10
    A.    Discovery Under Rule 2004 .................................................................... 10
    B.    Discovery on Expedited Basis ................................................................ 12

No Prior Request .................................................................................................... 13

Notice .................................................................................................................... 13

Reservation of Rights ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Almatis B.V.*,
    2010 WL 4877868 (Bankr. S.D.N.Y. Nov. 24, 2010) ............................................................12

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
    258 B.R. 580 (Bankr. S.D.N.Y. 2001) ...................................................................................13

*In re Bennett Funding Group, Inc.*,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...................................................................................13

*In re China Fishery Group Ltd.*,
    Case No. 16-11914 (JLG), 2017 WL 3084397 (Bankr. S.D.N.Y. Jul. 19, 2017)...................12

*In re Duratech Indus., Inc.*,
    241 B.R. 291 (Bankr. E.D.N.Y. 1999)..............................................................................12, 13

*In re Gawker Media LLC*,
    Case No. 16-11700 (SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28,
    2017) .......................................................................................................................................13

*Martin v. Schaap Moving Sys., Inc.*,
    1998 WL 405966 (2d. Cir. Apr. 20, 1998) .............................................................................12

*In re Metiom, Inc.*,
    318 B.R 263 (Bankr. S.D.N.Y. 2004) ...................................................................................13

*Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC* ), Adv. Pro. No. 08–
    01789, 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014) .................................................13

*Potomac Elec. Power Co. & Subsidiaries v. United States*,
    107 Fed. Cl. 725 (2012) .........................................................................................................11

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004)....................................................................................12

*In re Sears Holdings Corporation, et al.*,
    Case No. 18-23538-rdd (Bankr. S.D.N.Y.)...............................................................................6

*In re SunEdison, Inc.*,
    562 B.R. 243 (Bankr. S.D.N.Y. 2017)...............................................................................12, 13

STATUTES

28 U.S.C. §§ 157 and 1334 .........................................................................................................3

28 U.S.C. §§ 1408 and 1409 ................................................................................3

Bankruptcy Code chapter 11 ........................................................................ passim

Bankruptcy Code section 105 .............................................................................3

Bankruptcy Code sections 1107 and 1108 ..........................................................3

Bankruptcy Rule 2004 .................................................................................2, 11

Bankruptcy Rule 7062 .......................................................................................2

Bankruptcy Rule 9006 .......................................................................................2

Bankruptcy Rule 9016 ...............................................................................11, 14

Bankruptcy Rules Rule 1015(b)..........................................................................3

Fed. R. Bankr. P. Rule 2004  ..............................................................................1

Fed. R. Bankr. P. Rules 7034 and 9014 ..............................................................5

Federal Rules of Civil Procedure Rule 34 ........................................................5, 9

FRE Rule 502(d)..............................................................................................11

Local Bankruptcy Rules Rule 1007-2..................................................................6

Local Bankruptcy Rules Rule 2004-1 ..................................................................1

Local Civil Rule 26.3 .........................................................................................5

Local Rule 7026-1..............................................................................................5

Local Rules of Bankruptcy Rule 2004-1 ..............................................................4

Rule 502(d) .....................................................................................................10

The Restructuring Subcommittee (the "Subcommittee" or the "Movant") of the restructuring committee (the "Restructuring Committee") of the Sears Holdings Corporation ("Sears" or the "Debtors") board of directors (the "Board") hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), and Local Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing and directing discovery from Duff & Phelps, LLC ("Duff & Phelps") and any other parties that may possess relevant information.  In support of this Motion, the Subcommittee respectfully represents as follows:

### **Preliminary Statement**

1.      The Subcommittee consists of two highly qualified independent directors appointed to the Board in October 2018, prior to the petition date.  It was created by the Board to investigate prepetition related-party transactions that may give rise to material claims or causes of action on behalf of Sears, and to prosecute, release, or settle any such claims on its behalf. Consistent with this mandate and with the interests at stake, the Subcommittee is expressly empowered to control the Debtors' attorney-client and attorney work product privilege with respect to any information disclosed to or developed by the Subcommittee or its advisors during its work, including its investigation into prepetition related-party transactions.  As a committee of the Board, the Subcommittee acts pursuant to a duty to maximize the value of the Debtors' estates for the benefit of all constituents.

2.      The Subcommittee, with the assistance of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") and Young Conaway Stargatt & Taylor, LLP, its legal counsel, and

Alvarez & Marsal North America, LLC ("A&M") and Evercore Group LLC ("Evercore"), its financial advisor and investment banker, respectively, has been diligently investigating prepetition related-party transactions for more than a month. Since October 12, 2018, the Subcommittee has sent document requests to the Debtors and eight other entities that participated in or advised on multiple significant prepetition related-party transactions. As of the date of this filing, the Subcommittee has received over 400,000 pages of documents responsive to its requests; the review and analysis of those and other relevant materials by the Subcommittee's professionals is well underway. The Subcommittee has also been facilitating the investigation undertaken by the Unsecured Creditors Committee (the "UCC") and is committed to continuing to do so.

3.       Although most of the parties from whom the Subcommittee has sought informal discovery have cooperated with the Subcommittee's requests, it has become necessary to seek an order granting expedited discovery under Bankruptcy Rule 2004 because Duff & Phelps LLC ("Duff & Phelps"), an independent valuation firm that delivered solvency analyses and fairness valuations in connection with several significant prepetition transactions that are the subject of the Subcommittee's investigation, has stated that it will not produce documents except pursuant to a subpoena. The Subcommittee seeks an order granting it authority to serve discovery on Duff & Phelps, and any additional parties should it become necessary over the course of the investigation—and to do so on shortened time—to enable the Subcommittee to conduct its work expeditiously and with the agility necessary to respond quickly to developments in these cases (the "Chapter 11 Cases").

**Jurisdiction and Venue**

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      The statutory predicates for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rules 2004, 9006, and 9016.

**Background**

**A.      General Background**

6.      Sears was created in 2005 following a merger between K-Mart and Sears Roebuck.  Following this merger, Edward Lampert ("Lampert"), the Chairman and CEO of ESL Investments Inc. ("ESL"), became Chairman of the Board of Directors.  At all times since the merger, Lampert and ESL were Sears's largest shareholders.  In 2013, Lampert became the CEO of Sears, a position he held until October 15, 2018 (the "Petition Date"), when each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Cases.

7.      The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

8.      No trustee or examiner has been appointed in the Chapter 11 Cases.  An official committee of unsecured creditors was appointed on October 24, 2018.  The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

9.      The Subcommittee was formed prior to the Petition Date and has a mandate to, among other things, investigate any cause of action that Sears may have with respect to any transactions involving affiliates that occurred prior to the Petition date.  The Subcommittee has

3

also been granted control of Sears's attorney-client and attorney work product privileges for any information disclosed to or developed by the Subcommittee or its advisors during the course of their work.

## B.    The Prepetition Related-Party Transactions

10.    The Subcommittee and its professionals currently are investigating prepetition related-party transactions prior to the petition date, including (among others) the following: (i) the October 2012 sale to Sears shareholders via a rights offering of Sears Hometown and Outlet business; (ii) the October 2012 spinoff of the Debtors' 45% interest in Sears Canada and the November 2014 rights offering for additional shares; (iii) the April 2014 spinoff of Lands' End; (iv) the Seritage Transaction (as defined in Exhibit B); and (v) the ESL Loan Transactions (as defined in Exhibit B) (collectively, the "Prepetition Related-Party Transactions").  By way of background, we provide a brief summary of these transactions.

11.    The SHO Separation.  In October 2012, following discussion by the Board of Directors, and based on the advice of financial consultants and lawyers, Sears sold Sears Hometown and Outlet, Inc. ("SHO"), a retailer selling home appliance, hardware, and garden equipment, to existing shareholders via a rights offering.[1]  Duff & Phelps provided a valuation opinion with respect to SHO.[2]  According to the Sears Board, reasons for the rights offering included financial and operational benefits to both SHO and Sears, liquidity, and stockholder flexibility.[3]  The Audit Committee of the Board approved the transaction.  As a result of the transaction, Sears received cash proceeds of $446.5 million, consisting of $346.5 million for the sale of SHO common shares and $100 million through a dividend from SHO prior to the

---

[1] Sears Holding Corp. Annual Report (Form 10-K) (Feb. 2, 2014) at 4.

[2] See Sears Hometown and Outlet Registration Statement (Form S-1) (Sept. 6, 2012) at 144.

[3] Id. at 18.

separation.[4]  Sears also entered into various services agreements with SHO.[5]  ESL purchased approximately 62% of the newly-offered SHO shares.

12.    The Sears Canada Transactions.  On November 13, 2012, Sears completed a partial spinoff of its 96% interest in Sears Canada Inc. ("Sears Canada"), by distributing 45 million shares on a *pro rata* basis to its stockholders, reducing its interest to 51%.[6]  The Board indicated that a spinoff, as opposed to a sale, would reduce the cost of capital while maintaining the potential for long-term value creation in Sears Canada.  Bank of America Merrill Lynch advised management on the transaction and Duff & Phelps provided a solvency analysis.  Two years later, Sears conducted a rights offering of 40 million shares of Sears Canada with subscription rights distributed to Sears stockholders.[7]  The rights offering closed on November 7, 2014 and the company received approximately $380 million in total proceeds, reducing its 51 percent interest to 12 percent.[8]  Bank of America Merrill Lynch again advised management, Duff & Phelps provided a fairness opinion, and the independent directors at the time reviewed the participation of ESL Investments, Inc. in the rights offering.

13.    The Lands' End Spinoff.  In April 2014, the Company spun off Lands' End through a tax-free *pro rata* stock distribution to Sears's shareholders.[9]  In connection with this spinoff, Lands' End secured a senior secured term loan facility of approximately $515 million and used the proceeds used to pay a $500 million dividend to Sears.[10]  The Board stated the spinoff

---

[4] SHC Annual Report (Form 10-K) (Feb. 3, 2014) at 144.

[5] Sears Hometown Outlet Registration (Form S-1) (Sept. 6, 2012).

[6] Sears Holding Corp., Annual Report (Form 10-K) (Jan. 31, 2015) at 5.

[7] *Id.* at 4.

[8] *See id.*

[9] Sears Holding Corp., Quarterly Report (Form 10-Q) (May 4, 2014) at 6.

[10] *Id.*

was in the best interest of the Company because, among other things, it provided operational flexibility and would allow for more focused management. Duff & Phelps provided an opinion that Sears was solvent on a *pro forma* basis immediately following the transaction, and Richards, Layton & Finger advised the Board that the dividend would not violate the Delaware unlawful dividends statute. The Related Party Transactions Subcommittee, a subcommittee made up of independent directors with no ties to ESL, reviewed and approved this transaction. At the time of the spinoff, ESL owned approximately 49% of Sears's common stock, and, as a result of the spinoff ESL owned approximately 49% of Lands' End.[11]

14.    The Seritage Transaction.    The Seritage Transaction involved a rights offering in a newly formed real estate investment trust ("Seritage"), and a sale-leaseback transaction involving 235 properties and Sears's 50% interest in three joint ventures that owned an additional 28 stores for approximately $2.7 billion. Sears's Board stated that it decided to pursue the rights offering and sale leaseback to obtain new liquidity, stabilize operations and market perception, and monetize meaningful real estate assets while simultaneously maintaining a Sears presence in those locations. The sale price was based upon property level appraisals conducted by Cushman & Wakefield and third-party transactions in connection with the creation of the joint ventures. Duff & Phelps provided fairness and solvency opinions regarding the Seritage Transaction. The Seritage Transaction was reviewed by the Related Party Transactions Subcommittee.

15.    As part of the sale-leaseback with Seritage, Sears entered into a master lease with Seritage. Pursuant to the terms of the Master Lease, Seritage was granted the right to recapture 50% of the space at 224 properties and 100% of the space at 21 properties and to re-lease

---

[11] *Id.* at 20.

them to other tenants, provided that Seritage paid for the reconfiguration costs and did not exercise its recapture right with respect to more than 50 stores per year. In addition, the Master Lease gave Sears the ability to terminate specific store leases by paying a termination fee equal to one year's rent, subject to certain restrictions.

16.     Following the announcement of the Seritage Transaction, a derivative shareholder complaint was filed in the Delaware Court of Chancery, alleging that the Board was conflicted, that the transaction lacked appropriate safeguards to ensure fair treatment for Sears, and that the Transaction undervalued Sears's real estate assets. This lawsuit was settled after limited discovery for approximately $40 million, and the settlement was approved by the Delaware Chancery Court

17.     <u>The Debt Transactions</u>. Between 2016 and the Petition Date, the Debtors and other affiliated entities and ESL entered into multiple financing transactions pursuant to which ESL and affiliates provided billions of dollars in financing to Sears, principally secured by real estate and other assets. As of the Petition Date, ESL and its affiliates held approximately $2.6 billion of the Debtors' funded debt. The Related Party Transactions Subcommittee of the Board, with the advice of third-party consultants, reviewed and approved these transactions.

## C.     The Investigation

18.     The Subcommittee's investigation has focused on multiple aspects of these transactions. Among other issues, the Subcommittee and its professionals have been analyzing (a) whether Sears was solvent at the time of each of the transactions, or was rendered insolvent thereby; (b) the fairness of the transactions' terms, including the value of the businesses and real estate assets transferred by Sears; (c) the fairness of the terms of the ancillary agreements entered into in connection with the transactions, including the Seritage Master Lease; and (d) the intent of the relevant parties to the transactions. The Subcommittee is also considering whether the

transactions give rise to claims by the Debtors, including potential claims for breach of fiduciary duty, intentional or constructive fraudulent conveyance, or under other legal theories, and the potential recoveries on such claims. Finally, the Subcommittee and its legal advisors are also analyzing the strength of potential defenses, including defenses that claims are barred by the applicable statutes of limitation, the settlement of the Seritage derivative litigation, fair value and solvency defenses, and all other potentially applicable defenses that may be asserted to any potential claims.

19.    The Subcommittee served Debtors and ESL with targeted preliminary requests for documents on October 12, 2018, and additional, more comprehensive requests on October 26, 2018. Both the Debtors and ESL have expressed willingness to cooperate with these requests and quickly began the production of documents on a rolling basis. The Debtors, through their counsel at Weil, have provided the Subcommittee with documents on a rolling basis, beginning on October 17, 2018. In the interests of expediting the Subcommittee's work, the Debtors have agreed to produce to the Subcommittee large volumes of internal and external emails without first conducting a privilege review with the understanding that the Subcommittee will perform such a review and control the privilege. To date, the Debtors have produced more than 200,000 pages of documents.

20.    ESL, through its counsel Cleary, Gottlieb, Steen & Hamilton LLP ("Cleary") provided the Subcommittee with certain documents on October 23, 2018 in response to the first preliminary requests for documents and has represented that it will continue to produce documents to the Subcommittee on a rolling basis. ESL has already produced approximately 18,000 pages of documents.

21.    In October, the Subcommittee also sent preliminary requests for documents to Centerview Partners LLC, Cushman & Wakefield, Deloitte Touche Tohmatsu Ltd., Duff & Phelps, Fairholme Capital Management, LLC and Wachtell, Lipton, Rosen & Katz ("Wachtell"), Sears's counsel for most of the transactions at issue (collectively with ESL and Sears, the"Contacted Parties").    All Contacted Parties except for Duff & Phelps have indicated willingness to provide documents in response to the Subcommittee's requests.    As noted, the Subcommittee has received to date more than 400,000 pages of documents responsive to these requests and anticipates, based on regular discussions with the Contacted Parties, receiving substantially more in the coming days and weeks.    The Subcommittee's professionals are in the process of reviewing and analyzing the documents it has received.

22.    Since the formation of the UCC, the Subcommittee has sought to facilitate to the greatest extent possible the UCC's own investigation and to coordinate its efforts with the UCC, and it is committed to continuing to do so.    The Subcommittee's counsel has been in regular communication with counsel for the UCC to discuss the progress of their respective work and ways in which the Subcommittee can facilitate the UCC's work.    The Subcommittee has also provided the UCC with non-privileged documents that the Subcommittee has received from teh Debtors and other sources.    The Subcommittee is continuing to evaluate its ability to share privileged documents with the UCC pursuant to a 502(d) order and all related risks.

## Relief Requested

23.    By this Motion, the Subcommittee seeks entry of an order, substantially in the form of the Proposed Order attached as Exhibit A, authorizing the Subcommittee to serve subpoenas on Duff & Phelps, as well as any other entities that were involved in or have knowledge of the Prepetition Related-Party Transactions, including, but not limited to, the Contacted Parties.

The Subcommittee expects to identify additional parties who may possess information necessary to the investigation. For that reason, the Subcommittee seeks an Order that grants it the ability to seek discovery from parties not yet identified.

24.     The Subcommittee also requests the Court shorten the time set forth in Bankruptcy Rule 9016 to require responses to the Subcommittee's discovery requests within seven calendar days of service, and further order that the parties be required to have completed or substantially completed document production no later than ten (10) calendar days from the date of service.

25.     This expedited timeline is especially appropriate here where the Subcommittee has provided Duff & Phelps, as well as all other Contacted Parties, with preliminary requests that identify the categories of documents which the Subcommittee will request in the Rule 2004 subpoena.

### **Basis for Relief Requested**

**A.     Discovery Under Rule 2004**

26.     Rule 2004 provides that, upon the motion of any party in interest, the Court may authorize the examination of any entity, through both document requests and depositions, relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b); *In re China Fishery Group Ltd.*, Case No. 16-11914 (JLG), 2017 WL 3084397 at *4 (Bankr. S.D.N.Y. Jul. 19, 2017); *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017). The purpose of an examination under Rule 2004 "is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. S.D.N.Y. 2004); *see also In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (Rule 2004

facilitates "the central purpose of a bankruptcy case, namely, to maximize the distribution of assets or plan payments to unsecured creditors"). "In chapter 11 cases, the examination may extend to matters relating 'to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan.'" *In re SunEdison, Inc.*, 562 B.R. at 249 (quoting Fed. R. Bankr. P. 2004(b)).

27.    The Proposed Rule 2004 discovery is necessary here to allow the Subcommittee to review many of the prepetition transactions involving affiliates, including the Prepetition Related-Party Transactions.

28.    As the United States Court of Appeals for the Second Circuit has explained, the scope of inquiry permitted under a Rule 2004 examination "is exceptionally broad." *Martin v. Schaap Moving Sys., Inc.*, 1998 WL 405966, at *2 (2d. Cir. Apr. 20, 1998); *see also id.* at *3 ("The very purpose of a Rule 2004 motion is to allow broad inquiry into the nature of the estate."); *In re Almatis B.V.*, 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. Nov. 24, 2010) ("It is well established that the scope of a Rule 2004 examination is very broad and provides fewer procedural safeguards than [FRCP 26]."); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). Here, the discovery requests seek information directly related to the prepetition transactions that the Subcommittee was tasked with reviewing in connection with these Chapter 11 cases.

29.    The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and the decision to grant the requested relief lies within the sound discretion of the Bankruptcy Court. *Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*), Adv. Pro. No. 08–01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014); *see In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001). Generally, good cause is shown if the Rule 2004 examination "is necessary to establish the claim of the party

seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R 263, 268 (Bankr. S.D.N.Y. 2004). "In evaluating a request to conduct a Rule 2004 examination, the Court must balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re SunEdison*, 562 B.R. at 249; *see also In re Gawker Media LLC*, Case No. 16-11700 (SMB), 2017 WL 2804870 at *5 (Bankr. S.D.N.Y. June 28, 2017).

30.    In order for the Subcommittee to impartially conduct an investigation to identify any claims Debtors may have that stem from the Prepetition Related-Party Transactions, it must be able to review related documents and material as soon as possible.

31.    It has become necessary to seek an order granting discovery under Bankruptcy Rule 2004 because Duff & Phelps has refused to produce documents without a discovery order from this court.   Moreover, the Subcommittee needs the flexibility and authorization to require compliance with requests for documents when necessary in order to conduct a thorough and impartial investigation as efficiently as possible.

32.    Accordingly, the Subcommittee has demonstrated good cause for the Rule 2004 discovery.

**B.      Discovery on an Expedited Basis**

33.    The served parties also should be required to produce documents on an expedited basis.  Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by [the Bankruptcy Rules] or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."

34.    Because, as explained below, such good cause exists here, the Subcommittee requests the Court shorten the time set forth in Bankruptcy Rule 9016 to require

responses to the Subcommittee's discovery requests within seven (7) calendar days of service, and further order that the served parties be required to have completed or substantially completed document production no later than ten (10) calendar days from the date of service.

35.    The Subcommittee has engaged in substantive discussions with the majority of the Contacted Parties, including discussions concerning how to most efficiently focus on the documents that will shed light on the Prepetition Related-Party Transactions.  And while the Subcommittee believes that these parties have and will continue to cooperate in good faith, the expedited timeline of this proceeding requires a similarly expedited document production process. As such, an order for expedited discovery is necessary under these circumstances.

36.    The Subcommittee has demonstrated good cause for expedited Rule 2004 discovery and respectfully requests that the Court grant this Motion and issue an Order substantially in the form of <u>Exhibit A</u> hereto.

## No Prior Request

37.    No prior motion for the relief requested herein has been made by the Subcommittee to this Court or any other court.

## Notice

38.    Notice of this Motion will be provided to: (i) the Office of the United States Trustee for Region 2; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iv) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (v) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the IP/Ground Lease Term Loan, and the Consolidated Secured Loan Facility; (vi) counsel for Computershare Trust Company N.A., as

indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vii) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes; (viii) counsel for The Bank of New York Mellon Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (ix) the Pension Benefit Guaranty Corporation; (x) the Unions; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; (xiii) the United States Attorney's Office for the Southern District of New York;  (xiv) the Banks; and (xv) counsel to the Contact Parties; (xvi) Akin Gump Strauss Hauer & Feld LLP as counsel for the Official Committee of Unsecured Creditors. The Subcommittee submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## **Reservation of Rights**

39.     The Subcommittee reserves its rights to request and conduct any other discovery, pursuant to Rule 2004 or other applicable law, from any person or entity.

WHEREFORE, the Debtors respectfully request entry of the Order granting the

relief requested herein and such other and further relief as is just and proper.

Dated: November 9, 2018          /s/ Paul M. Basta
      New York, New York          PAUL, WEISS, RIFKIND, WHARTON &
                                       GARRISON LLP
                                       1285 Avenue of the Americas
                                       New York, New York 10019
                                       Tel: 212-373-3000
                                       Fax: 212-757-3990
                                       Paul M. Basta
                                       Kelley A. Cornish
                                       Lewis R. Clayton

                                       *Proposed Counsel to the Debtors Acting at the*
                                       *Direction of the Restructuring Subcommittee of the*
                                       *Board of Directors of Sears Holdings Corporation*

15

## Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                        :        **Chapter 11**
                                              :
**SEARS HOLDINGS CORPORATION**, *et al.*,     :        **Case No. 18-23538 (RDD)**
                                              :
Debtors. [1]                                  :        **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x

### ORDER GRANTING THE MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004, 9006, AND 9016

Upon consideration of the motion for an order pursuant to Federal Rules of Bankruptcy Procedure 2004, 9006, and 9016 authorizing examination and directing expedited production of documents (the "Motion"); and adequate and sufficient notice of the Motion having been provided to all parties in interest; and sufficient cause appearing therefore, it is hereby:

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that Duff & Phelps and any other party the Subcommittee identifies as possessing information relevant to its investigation shall produce copies of the documents and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, LLC (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

information requested in the Subcommittee's Rule 2004 Subpoena to Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attention: Jonathan H. Hurwitz, no later than ten (10) days from the entry of the date of service; and it is further

**ORDERED** that, pursuant to Bankruptcy Rule 9006, the deadline for providing written responses and objections to each Rule 2004 Subpoena shall be served no later than seven (7) days from the service; and it is further

**ORDERED** that, as provided in Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry; and it is further

**ORDERED** that this Court retain jurisdiction to resolve any disputes arising under or related to this Order, including any discovery disputes that may arise between or among the parties, and to interpret, implement, and enforce the provisions of this Order; and it is further

**ORDERED** that this Order is without prejudice to the rights of the restructuring Subcommittee of the restructuring committee of the Sears Holdings Corporation board of directors to apply for further discovery from any party in interest or other entity or person.

Dated: November [], 2018
     White Plains, New York

                                   _____
                                   THE HONORABLE ROBERT D. DRAIN
                                   UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | ) | Case No. 18-23538 (RDD) |
| | ) | |
| Debtors. [1] | ) | (Joint Administration) |
| | ) | |

## RESTRUCTURING SUBCOMMITTEE'S REQUEST FOR THE PRODUCTION OF DOCUMENTS BY DUFF & PHELPS, LLC

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York the Restructuring Subcommittee (defined below) by and through its undersigned counsel, hereby requests that Duff & Phelps, LLC produce all Documents described below in their possession, custody, or control, in accordance with the definitions and instructions set forth below and all applicable Federal and Local Rules of Civil

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYRelay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Procedure and Bankruptcy Procedure, to Jonathan H. Hurwitz, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, NY 10019, jhurwitz@paulweiss.com. We ask that the documents identified below be produced as soon as possible and on a rolling basis, and in any event no later than ten (10) business days from the date of these requests.

## **DEFINITIONS**

These requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 7026-1 of the United States Bankruptcy Court for the Southern District of New York, Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as well as any other applicable law or rules. The following additional definitions apply with respect to each of these requests, and each of the terms defined below, when used in any request, instruction, or definition, shall have the meaning given herein:

1.    "Assets" shall mean both real assets and intangible assets, including real property, intellectual property, good will, contracts, inventory, cash, and cash equivalents.

2.    "Audit Committee" shall mean the Audit Committee of the Sears Board.

3.    "Duff & Phelps," You," or "Your" shall mean Duff & Phelps, LLC, any of its subsidiaries or affiliates, and any of their respective officers, directors, employees, representatives, or agents.

4.    "ESL" shall mean ESL Investments, Inc. or any of its affiliates or controlling persons or entities. Unless otherwise specified, this shall include any company in which ESL Investments, Inc. invests in, or that is controlled by Lampert and/or any other ESL officer or director (individually or in the aggregate) and exclude Sears.

5.      "ESL Loan Transactions" shall mean any debt transaction in which ESL was a lender or purchaser and Sears was a borrower or issuer, including the (i) First Lien Credit Facility; (ii) Stand-Alone L/C Facility; (iii) Second Lien Credit Facility; (iv) Second Lien PIK Notes; (v) Second Lien Notes; (vi) IP/Ground Lease Term Loan; (vii) Consolidated Secured Loan Facility; (viii) Holdings Unsecured PIK Notes; (ix) Holdings Unsecured Notes; (x) SRAC Unsecured PIK Notes; and (xi) SRAC Unsecured Notes (each as defined in Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York, filed Oct. 15, 2018 in *In re Sears Holdings Corporation, et. al.*, Case No. 18-23538-rdd (Bankr. S.D.N.Y.) ("Riecker Declaration").

6.      "Including" shall mean "including, but not limited to."

7.      "Lampert" shall mean Edward S. Lampert in any personal or professional capacity, and any entity which he directly or indirectly controls.

8.      "Lands' End" shall mean Lands' End, Inc. and its affiliates.

9.      "Lands' End Spinoff" shall mean the spinoff of Lands' End from Sears in April of 2014.

10.      "Related Party Transactions Subcommittee" shall mean the subcommittee of that name of the Audit Committee, or any other committee or subcommittee of the Sears Board responsible for reviewing and approving potential related-party transactions.

11.      "Restructuring Subcommittee" shall mean the Restructuring Subcommittee of the Restructuring Committee of Sears.

12.      "Sears" shall mean Sears Holdings Corporation, its subsidiaries and affiliates, all Debtors (as defined in the Riecker Declaration), and any of their respective officers, directors, employees, representatives, or agents.

13.    "Sears Board" shall mean the Board of Directors of Sears.

14.    "Sears Canada" shall mean Sears Canada Inc. and its subsidiaries and affiliates.

15.    "Sears Canada Partial Spinoff" shall mean the partial spinoff of Sears Canada in 2012, in which Sears distributed approximately 45% of Sears Canada's total issued and outstanding common shares to its shareholders.

16.    "Sears Canada Rights Offering" shall mean the October 2014 Sears Canada rights offering of up to 40 million shares.

17.    "Sears Hometown Outlets" or "SHO" shall mean Sears Hometown and Outlets Stores, Inc. and its subsidiaries and affiliates.

18.    "SHO Separation" shall mean the separation of SHO from Sears through a rights offering in 2012 and all subsequent agreements or amendments to agreements between Sears and SHO.

19.    "Seritage" shall mean Seritage Growth Properties and its subsidiaries and affiliates.

20.    "Seritage Litigation" shall mean *In re Sears Holdings Corporation Stockholder and Derivative Litigation*, Consol. C.A. No. 11081-VCL.

21.    "Seritage Transaction" shall refer to the planning, negotiation, and creation of Seritage; the identification, analysis, and sale of real estate from Sears to Seritage; and the drafting, negotiation, and execution of any lease or leaseback agreements over the period September 1, 2014 to August 1, 2015.

22.    "Time Period" shall mean the time period from March 24, 2005 to October 15, 2018.

23.    "Transactions" shall mean (i) the Seritage Transaction, (ii) the Lands' End Spinoff, (iii) the SHO Separation; (iv) the Sears Canada Partial Spinoff; (v) the Sears Canada Rights Offering, (vi) any of the ESL Loan Transactions, (vii) any transaction reviewed and approved by the Related Party Transactions Subcommittee, Audit Committee, or Real Estate Special Committee, (viii) any transactions or agreements between Sears and Seritage, Lands' End, SHO, or Sears Canada, and (ix) any transaction where Sears provided Assets to ESL.

## INSTRUCTIONS

1.    Each request for production shall be answered completely, separately, and fully.

2.    Unless otherwise specified, the time period covered by these requests is the period from March 24, 2005 to October 15, 2018, including any documents, communications, or materials that were created, referred to, or used in that period.

3.    These requests for production of documents apply to all documents in Your possession, custody, or control, regardless of their location and regardless of whether such documents are held by You or any of Your employees, agents, representatives, attorneys, consultants, advisors including financial advisors, persons, or entities acting on Your behalf.  In responding to these requests, You are to review and search all relevant files of appropriate entities and persons.

4.    If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto. Documents that in their original condition were stapled, clipped, or otherwise fastened together, or were placed in a file together, shall be produced in such form.

5.    Documents produced from the records of individuals should be identified (either by document production number or otherwise) as coming from the records of such particular individuals.

6.    Each document request shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

7.    To the extent the documents are maintained or are otherwise available electronically, please produce them in that form, including all metadata.

8.    For documents created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats.  Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document.  Group native files within incrementally named "NATIVE" directories, separate from images directories

9.    All documents produced should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

10.    These requests specifically contemplate the production of electronic or magnetic data.  Such electronically stored information should be produced consistent with Rule 34 of the Federal Rules of Civil Procedure.

11.    If any documents are withheld from production on the alleged grounds of privilege or immunity (whether under any common law, statute, or otherwise), You shall identify each such document on the due date of production by stating:

a.    The identity of each person who prepared and/or signed the document;

b.      The identity of each person designated as an addressee;

c.      The identity of each person who received any copy of the document;

d.      The date of the document;

e.      The subject matter of the document;

f.      The type of document; and

g.      The basis for withholding the document.

Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged, or protected information should be produced, but that portion of the document for which privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

12.     These requests are continuing in nature and require further and supplemental production if additional documents are acquired or located following the time of initial production, to the fullest extent required by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

13.     If, in responding to these requests, You claim any ambiguity in a request for production of documents, or in a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but You shall set forth as part of Your response the language deemed to be ambiguous and the interpretation used to respond to the request for production.  To the extent you believe that any request is ambiguous, we request that you contact the Restructuring Subcommittee's counsel to resolve the ambiguity.

14.     These requests do not prejudice the Restructuring Subcommittee from seeking additional requests for documents, or from serving a demand pursuant to Bankruptcy Rule 2004 or any other process.

## DOCUMENTS REQUESTED

1.     All engagement letters or other agreements between Duff & Phelps and (i) Sears, (ii) the Sears Board, or (iii) any committee or subcommittee of the Sears Board, and all documents concerning the purpose and scope of the engagement.

2.     All documents, including any work papers or analyses pursuant to or concerning any engagement by (i) Sears, (ii) the Sears Board, or (iii) any committee or subcommittee of the Sears Board.

3.     All engagement letters or other agreements between Duff & Phelps and either ESL or Lampert.

4.     All communications concerning Sears, ESL, or Lampert, including emails sent or received by Jeffrey Schiedemeyer and Mark Kwilosz during the Time Period.

5.     All documents concerning the financial condition of Sears during any portion of the Time Period.

6.     All documents concerning the solvency of Sears during any portion of the Time Period.

7.     All documents concerning the financial impact to Sears of any of the Transactions.

8.     All presentations or analyses or documents, including all drafts, prepared by Duff & Phelps concerning Sears, including presentations or analyses presented to the Sears Board, the Related Party Transactions Subcommittee, the Real Estate Special Committee, the Audit

Committee, and the Strategic Planning Committee, and all data or material considered or relied upon in creating or providing them.

9.      All documents reflecting any analysis conducted or data or information considered in connection with any advice, opinions, or presentations by Duff & Phelps to Sears, the Sears Board, or any committee or subcommittee of the Sears Board.

10.     All documents concerning any meetings between Duff & Phelps employees and any manager or director of Sears.

11.     All documents concerning any meetings between Duff & Phelps employees and anyone affiliated with ESL.

12.     All documents concerning alternatives considered with respect to any of the Transactions, including alternative marketing, proposals, bids, offers, pricing, or financing.

13.     All documents concerning any actual or potential purchase of any Sears Asset by ESL, including real property, Lands' End, Sears Canada, and SHO.

14.     All documents concerning any actual or potential purchase of any Sears Asset by any third party, including real property, Lands' End, Sears Canada, and SHO.

Dated: November 9, 2018          /s/ Lewis R. Clayton
      New York, New York          **PAUL, WEISS, RIFKIND, WHARTON &**
                                **GARRISON LLP**
                                Paul M. Basta
                                Kelley A. Cornish
                                Lewis R. Clayton
                                1285 Avenue of the Americas
                                New York, New York  10019
                                Telephone:  (212) 373-3000
                                Facsimile:  (212) 757-3990
                                *Proposed Counsel to the Debtors Acting at the*
                                *Direction of the Restructuring Subcommittee of the*
                                *Board of Directors of Sears Holdings Corporation*