**Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time: November 9, 2018 at 4:00 p.m. (Eastern Time)**
**(Extended by the Debtors)**

BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 413-7115
Facsimile: (315) 703-7349
Kevin M. Newman

*Attorneys for Aviation Mall NewCo, LLC, Holyoke Mall Company, L.P., JPMG Manassas Mall Owner LLC, Poughkeepsie Galleria LLC, Salmon Run Shopping Center, L.L.C., S&R Company of West Seneca NewCo, LLC, and DGI LS, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------

In re:

SEARS HOLDING CORPORATION, *et al.*

Debtors.

----------------------------------------------------------------

Chapter 11
Case No. 18-23538-rdd
Jointly Administered

**LIMITED OBJECTION OF AVIATION MALL NEWCO, LLC, HOLYOKE MALL COMPANY, L.P., JPMG MANASSAS MALL OWNER LLC, POUGHKEEPSIE GALLERIA LLC, SALMON RUN SHOPPING CENTER, L.L.C., S&R COMPANY OF WEST SENECA NEWCO, LLC AND DGI LS, LLC TO DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES**

Aviation Mall NewCo, LLC, Holyoke Mall Company, L.P., JPMG Manassas Mall Owner LLC, Poughkeepsie Galleria LLC, Salmon Run Shopping Center, L.L.C., S&R Company of West Seneca NewCo, LLC and DGI LS, LLC (each a "Landlord"; collectively, the "Landlords"), through their attorneys, submit this limited objection (the "Objection") to the Debtors' Motion for Approval of Global Bidding Procedures (the "Motion") (Dkt. 429). In support of this Objection, the Landlords respectfully submit as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

2. On October 15, 2018, Debtors filed a voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court.

3. The Landlords and the Debtors are parties to unexpired leases of nonresidential real property (each, a "Lease"; collectively, the "Leases") of premises (the "Premises") and/or Reciprocal Easement Agreements and other agreements with regard to the Premises and shopping centers containing the Premises (each, an "REA"; collectively, the "REAs"), as follows:

| **Landlord** | **Shopping Center** | **Location** |
|---|---|---|
| Aviation Mall NewCo, LLC | Aviation Mall | Queensbury, NY |
| Holyoke Mall Company, L.P. | Holyoke Mall | Holyoke, VA |
| JPMG Manassas Mall Owner LLC | Manassas Mall | Manassas, VA |
| Poughkeepsie Galleria LLC | Poughkeepsie Galleria | Poughkeepsie, NY |
| Salmon Run Shopping Center, L.L.C. | Salmon Run Mall | Watertown, NY |
| S&R Company of West Seneca NewCo, LLC | Shops at West Seneca | West Seneca, NY |
| DGI LS, LLC | Logisti Center at Logan | Logan Township, NJ |

4. The Premises are located within "shopping centers" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

2

5.     On November 1, 2018, the Debtors filed the Motion (Dkt. 429). The Motion seeks, *inter alia*, an Order, *inter alia*, (1) approving procedures for the assumption and assignment of contracts and unexpired leases of nonresidential real property to successful bidders and backup bidders; (2) scheduling auctions of assets and a sale hearing; and (3) approving the form and timing of certain notices and deadlines for objections.

## **OBJECTIONS**

6.     Pursuant to the Motion, the proposed Order and the proposed bidding procedures, the Debtors have proposed a compressed timeline for notice of key events and objections thereto that is not only confusing and often times contradictory, but also casts aside the Landlords' due process rights. The only explanation for the Debtors' request to expedite the sale process in contravention of due process is the conclusory assertion that "[t]ime is of the essence" because an expeditious sale "will save Sears and Kmart money" and save "tens of thousands of employees" (Dkt. 429 at ¶¶ 1, 2). However, such a conclusory assertion cannot override the Landlords' entitlement to adequate notice and a sufficient opportunity to object to the treatment of their unexpired Leases, and the failure of such notice and opportunity to be heard constitutes a violation of the Landlords' fundamental due process rights. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *In re Motors Liquidation Co.*, 2015 Bankr. LEXIS 4445, at *16 (Bankr. S.D.N.Y June 1, 2015).

   I.   *The Definition of "Sale Notice Parties" Fails to Include All Parties With an Interest in the Sale of the Debtors' Assets.*

7.     The "Sale Notice Parties" is defined to include, *inter alia*, "the Standard Parties (as defined in the Amended Order Implementing Certain Notice and Case Management Procedures (ECF No. 405))" (Dkt. 429, ¶ 26[ii]). The Amended Case Management Procedures

3

Order defines the "Standard Parties" to include "any person or entity with a particularized interest in the subject matter of the relevant Document" (Dkt. 405, ¶ 5[xiii]).

8. The proposed Order should be modified, to include in the "Sale Notice Parties" counterparties to executory contracts, leases and any other agreement regarding or affecting the property, such as REAs that are included or referenced in any such agreements.

II. *The Motion Does Not Define "Go Forward Stores."*

9. The Motion seeks approval of a timeline for the assumption and assignment of leases of "Go Forward Stores," defined as "stores that are capable of continuing as a going concern" (Dkt. 429 at ¶ 5). The Debtors have failed to identify which stores will be included as "Go Forward Stores." The Debtors should be required to promptly file a list of "Go Forward Stores" in order to provide the Landlords with notice of whether their Leases are included in the Go Forward Sale Process.

10. Further, DGI LS, LLC is a counterparty to a lease of warehouse space, not a store. It is not clear whether unexpired leases of warehouse space are intended to be included in the definition of "Go Forward Stores."

III. *The Debtors' Proposed Sale Procedures for "Go Forward Stores" Fail to Afford the Landlords Due Process.*

11. The Debtors propose the following timeline for "Go Forward Stores":

   a. December 15, 2018: Deadline for the Debtors to designate a Stalking Horse Bidder;

   b. Within five (5) days after execution of the stalking horse agreement: Deadline for the Debtors to file and serve notice to the Sale Notice Parties of the assets for sale, material terms of agreement, the stalking horse agreement and proposed sale order;

4

c.  As soon as reasonably practicable after designation of the Stalking Horse Bidder: The Debtors must serve on the Sale Notice Parties the Assumption and Assignment Notice;

d.  On the date of service of the Sale Notice (or as soon as reasonably practicable thereafter): The Debtors must serve on the Sale Notice Parties the Adequate Assurance Information for the Stalking Horse Bidder;

e.  Within eight (8) days of service of the Assumption and Assignment Notice: Deadline to object to assumption and assignment, "the subject of which objection is the debtors' proposed Cure Costs to cure any outstanding defaults then existing under such contract or lease";

f.  December 28, 2018 at 4:00 p.m.: Bid Deadline for "Go Forward Stores";

g.  December 28, 2018 at 4:00 p.m.: Deadline to object to Stalking Horse Bidder;

h.  January 4, 2019: Deadline for the Debtors to notify bidders of status as qualified bidders and announce of auction packages;

i.  January 10, 2019: Hearing on stalking horse objections;

j.  January 14, 2019: Auction for "Go Forward Stores";

k.  By January 16, 2019: Deadline for the Debtors to file and serve on Sale Notice Parties notice of auction results with successful and backup bidders, and any known assignee;

l.  By January 16, 2019: Deadline for the Debtors to provide Adequate Assurance Information for Stalking Horse Bidder to counterparties to any assumed leases and contracts added to the stalking horse bid at the auction,

5

   and any counterparties to leases that may later be designated for assumption and assignment;

  m. January 24, 2019 at 4:00 p.m.: Deadline to object to sale and assumption and assignment;

  n. January 29, 2019 at 4:00 p.m.: Deadline for the Debtors to reply to any objection to sale or assumption and assignment;

  o. January 31, 2019 at 10:00 a.m.: Proposed Sale Hearing.

 A. *The Landlords' Objections to the Motion, Proposed Order and Proposed Bidding Procedures Concerning Adequate Assurance Information.*

  12. The Debtors propose to "use commercially reasonable efforts" to provide the Adequate Assurance Information for the Stalking Horse Bidder "on the date of service of the Sale Notice, or as soon as reasonably practicable thereafter" (Dkt. 429, proposed Order at ¶ 35). The Debtors should be compelled to provide the Adequate Assurance Information for the Stalking Horse Bidder on the same date as filing and service of the Sale Notice, by overnight mail to the affected counterparties and by electronic mail to counsel who have appeared for such counterparties in these cases. There should be no subjective element to such requirement.

  13. The Debtors have proposed a deadline of December 28, 2018 at 4:00 p.m. to object "to the designation of the Stalking Horse Bidder, the terms of the Stalking Horse Agreement, including any Credit Bid, release provisions, or the provision of a Termination Payment" to the Stalking Horse Bidder (*see* Dkt. 429, proposed Order at ¶ 7). The Debtors have further proposed a hearing date for January 10, 2019 to address any such objections (*see* Dkt. 429, ¶ 25; Dkt. 429, proposed Global Bidding Procedures at IV). The proposed December 28, 2018 deadline for objections should not require objections to any proposed sale or assumption and assignment by the Debtors to a Stalking Horse Bidder, and the hearing on January 10, 2019

should be similarly limited.  Any such objection by December 28, 2018 would be premature, as the results of the auction will then be unknown and there will be insufficient time to review the Stalking Horse Bidder's Adequate Assurance Information, which may only be received approximately ten (10) days before this objection deadline with the intervening Christmas holiday.  In short, there is no reason to require objections to any assumption and assignment to a Stalking Horse Bidder on such an accelerated basis.

14. The Debtors have proposed to "use commercially reasonable efforts to, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, file with the Court, serve on the Sale Notice Parties . . ., and cause to be published on the Prime Clerk Website," notice of the auction results and Adequate Assurance Information for the successful and backup bidders to the Sale Notice Parties (*see* Dkt. 429, ¶¶ 19[j][2], 25).  The Debtors will know the identities of all qualified bidders by no later than January 4, 2019, when the Debtors are required to notify bidders whether they are qualified bidders (*see* Dkt. 429, ¶ 25).  Further, the Debtors will have the Adequate Assurance Information by the December 28, 2018 bid deadline (*see* Dkt. 429, ¶¶ 19[h][1], 25).  The Debtors should be compelled to provide the Adequate Assurance Information for all qualified bidders by January 4, 2019, by overnight mail to the affected counterparties and by electronic mail to counsel who have appeared for such counterparties in these cases.

> B. *The Debtors Should be Compelled to File and Serve the Auction Results, Together with the Asset Purchase Agreement, Assignment Agreement, Etc. Within One (1) Day of the Conclusion of the Auction.*

15. The Debtors propose to file and serve notice of the auction results on or before two business days after conclusion of the Auction (*see* Dkt. 429, ¶¶ 19[j][2], 25).  The Debtors should be directed to file and serve notice of the auction results within one (1) day of conclusion

of the Auction, together with any proposed Asset Purchase Agreement, assignment agreement or other agreement with the successful and back up bidders (to the extent they are not the Stalking Horse Bidder).

    *C. The Proposed Deadline to Object to Sale and Assumption and Assignment is Unreasonable.*

16.    The proposed Order granting the Motion provides a deadline of January 24, 2019 to object to sale and assumption and assignment with respect to the "Go Forward Stores" (Dkt. 429, ¶ 21). The Motion and bidding procedures provide that January 24, 2019 is the deadline to object to a proposed sale to a successful bidder who is not a stalking horse bidder, proposed cure costs for contracts and leases to be assumed and assigned that are not included in a stalking horse bid, and assumption and assignment to a successful bidder that is not a stalking horse bidder (*see* Dkt. 429, ¶ 25; Dkt. 429, proposed Bidding Procedures at IV). Should the Debtors be required to provide the Landlords with Adequate Assurance Information by January 4, 2019, the Landlords request that January 25, 2019 be fixed as the deadline to object to sale or assumption and assignment to any successful bidder (including the Stalking Horse Bidder) and proposed cure costs. This would be approximately nine (9) days after the auction results are made known together with any asset purchase agreement, agreements the Debtors are directed to file and serve. The Debtors have not advanced any justification for requiring such objections earlier. The Debtors have proposed to provide the Adequate Assurance Information just eight (8) days prior to the deadline to object to the sale and assumption and assignment (*see* Dkt. 429, ¶ 28[c][1]). Such notice and opportunity to file an objection is clearly insufficient, and the Debtors have failed to establish cause to shorten the notice requirements. The Debtors' stores are large anchor stores and the proposed assumption and assignment of the Leases of these stores will implicate other leases, REAs and operating agreements for the shopping centers and require a

detailed analysis by the Landlords of such agreements, including other tenant exclusives, use and radius provisions, all of which must be complied with in connection with any assumption and assignment of the Leases (*see* 11 U.S.C. § 365[b][3]). Additionally, the Landlords are entitled to discovery with respect to any proposed sale or assumption and assignment (*see* FED. R. BANKR. PROC. 6006 and 9014).

17. Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires twenty-one (21) days' notice of "a proposed use, sale, or lease of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice."

18. Finally, the Debtors propose to conduct the sale hearing on January 31, 2019 with respect to the "Go Forward Stores" (*see* Dkt. 429, ¶ 25). The proposed Order should be modified, to clarify that any (1) proposed sale or lease assumptions and assignments by a bidder to any proposed assignee of that bidder, or (2) exercise of lease designation rights, will not be considered at the sale hearing. The proposed Order should be further modified to clarify that only the sale and assumption and assignment to the successful bidder should be considered at the sale hearing. Any sale and assumption and assignment to the backup bidder should only be considered should the successful bid not close, and then only upon sufficient notice under the Amended Case Management Procedures Order (*see* Dkt. 405).

> D. *The Debtors' Request for Approval of Designation Rights Procedures Is Premature and Fails to Account for the Debtors Obligation to Provide Adequate Assurance Information.*

19. The Motion and proposed Order seek approval of designation rights procedures. In the absence of a full and fair opportunity to review fully executed Asset Purchase Agreements with successful bidders regarding the proposed procedures for exercising lease designation

9

rights, it is premature to authorize the exercise of those rights in the proposed Order. Following any approval of the sale to the successful bidder, the Debtors should be compelled to file a separate motion for approval of procedures for exercising designation rights contained in a fully executed Asset Purchase Agreement.

20. This is particularly true given that the proposed procedures for providing Adequate Assurance Information for the Stalking Horse Bidder and the successful and backup bidders does not and cannot contemplate the provision of Adequate Assurance Information for any third party assignee designated by the successful bidder.

21. Pursuant to certain legislative amendments implemented in 1978, shopping center landlords are afforded "special protection" from debtors' attempts to assign a shopping center lease without first providing adequate assurance of future performance. *See In re Trak Auto Corp.*, 367 F.3d 237, 243 (4th Cir. 2004); *see also* 11 U.S.C. §§ 365(b)(1), (3) and (f). Whether in the context of an assumption (*see* 11 U.S.C. § 365(b)(1)) or an assignment (*see* 11 U.S.C. § 365(f)(1)), "the 'adequate assurance of future performance' must include specific assurances that are spelled out in the Code" (*In re Trak Auto Corp.*, 367 F.3d at 243), including adequate assurance

      a. "(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

    b. (B) that any percentage rent due under such lease will not decline substantially;

    c. (C) that assumption and assignment is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center;

    d. (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center."

11 U.S.C. § 365(b)(3).

22.    The Debtors' proposed Adequate Assurance Information from any bidder is insufficient. The proposed Order provides that Adequate Assurance Information consist of "information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under the Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including Prospective Bidder's financial wherewithal and willingness to perform under the applicable Proposed Assumed Contracts and any other Contracts or Leases that may later be designated by the Prospective Bidder . . . for assumption and assignment" (Dkt. 429, proposed Order at ¶ 34). The proposed bidding procedures require additional information, including the identify of any known assignee with contact information for that entity, and may include financial statements, tax returns and annual reports (*see* Dkt. 429, proposed Bidding Procedures at VI). At a minimum, the Debtors should be required to provide all of the information set forth in the proposed bidding procedures and (1) the identity of the proposed assignee, including any

11

trade names to be used by the proposed assignee, (2) the intended use of the premises by the proposed assignee, (3) cash flow projections for the next two (2) years, (4) a business plan, (5) existing retail operations and the number of stores operated by the proposed assignee, and (6) information regarding the proposed assignee's management.

23. To the extent that designation rights procedures are included in the proposed Order, then the proposed Order should be modified, to clarify that the Landlords' right to object to the proposed designation of a Lease to be assumed and assigned to a proposed assignee of the successful bidder remains the subject of Court approval, upon notice required by the Amended Case Management Procedures Order (Dkt. 405) and an opportunity to object on any grounds, including to adequate assurance of future performance and cure amounts. The proposed Order should also be modified, to clarify that the Debtors remain liable for all obligations due and owing under the Leases during any designation rights period.

IV. *The Debtors' Proposed Sale Procedures for Assets Other than "Go Forward Stores" Fail to Afford the Landlords Due Process.*

24. While similar to deadlines set forth for "Go Forward Sales," the timeline for assets other than "Go Forward Sales" are as follows:

   a. At least twenty-five (25) days prior to service of the Auction: Deadline for the Debtors to serve the Sale Notice, including material terms of any stalking horse agreement;

   b. On the date of service of the Sale Notice (or as soon as reasonably practicable thereafter): Debtors to use commercially reasonable efforts to provide Adequate Assurance Information for any Stalking Horse Bidder to the Sale Notice Parties;

12

c. As soon as reasonable practicable after designation of the Stalking Horse Bidder: Debtors shall file and serve Assumption and Assignment Notice on the Sale Notice Parties;

d. Within ten (10) days of service of the Sale Notice: Deadline to object to the Stalking Horse Bidder;

e. No earlier than twenty (20) days after service of the Sale Notice: Bid Deadline;

f. Within five (5) days of bid deadline: Deadline for the Debtors to provide notice to bidders of whether they are qualified bidders;

g. Within eight (8) days of service of notice of proposed cure costs: Deadline to object to proposed cure costs and assumption and assignment;

h. Within twenty-five (25) days after service of the Sale Notice: Auction to be held;

i. Within two (2) business days after conclusion of the Auction: Deadline for the Debtors to file and serve on Sale Notice Parties notice of the auction results with successful and backup bidders, identifying any known proposed assignee(s) and list of known contracts and leases that may be assumed and assigned;

j. Eight (8) days after service of Adequate Assurance Information: Deadline to object to sale and assumption and assignment, including objections to Adequate Assurance Information;

k. Within five (5) days of objection deadline: proposed Sale Hearing.

25. The Debtors propose to "use commercially reasonable efforts" to provide the Adequate Assurance Information for the Stalking Horse Bidder "on the date of service of the Sale Notice, or as soon as reasonably practicable thereafter" (Dkt. 429, proposed Order at ¶ 35). The Debtors should be compelled to provide the Adequate Assurance Information for the Stalking Horse Bidder on the same date as filing and service of the Sale Notice, by overnight mail to the affected counterparties and by electronic mail to counsel who have appeared for such counterparties in these cases. There should be no subjective element to such requirement.

26. The Debtors propose a deadline of within ten (10) days of service of the Sale Notice "to object to proposed Sale Transaction(s) with a Stalking Horse Bidder that is not an insider or affiliate of the Debtors, including with respect to designation of such Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement (including any Credit Bid or Termination Payment)" (Dkt. 429, proposed Bidding Procedures at III). The proposed deadline for objections should not require objections to any proposed sale or assumption and assignment by the Debtors to a Stalking Horse Bidder. Any such objection would be premature, as the results of the auction will then be unknown and there will be insufficient time to review the Stalking Horse Bidder's Adequate Assurance Information. In short, there is no reason to require objections to any assumption and assignment to a Stalking Horse Bidder on such an accelerated basis.

27. With respect to assets other than the "Go Forward Stores," the Debtors have proposed to provide Adequate Assurance Information for the successful and backup bidders within two (2) days of the conclusion of the auction (see Dkt. 429, proposed Bidding Procedures at III). However, the Debtors will know the identities of the bidders at the auction by the bid deadline. The Debtors should be compelled to provide the Adequate Assurance Information for

14

all bidders within one (1) day of the bid deadline, by overnight mail to the affected counterparties and by electronic mail to counsel who have appeared for such counterparties in these cases.

28.  With respect to the auction of assets other than the "Go Forward Stores," the deadline to object to the sale and assumption and assignment is eight (8) days after service of Adequate Assurance Information and filing of notice of the auction results (see Dkt. 429, proposed Bidding Procedures at III).  Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires twenty-one (21) days' notice of "a proposed use, sale, or lease of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice."  The Debtors have not advanced any justification for requiring such objections earlier.  Such notice and opportunity to file an objection is clearly insufficient, and the Debtors have failed to establish cause to shorten the notice requirements.  Additionally, the Landlords are entitled to discovery with respect to any proposed sale or assumption and assignment (*see* FED. R. BANKR. PROC. 6006 and 9014).

29.  Finally, the Debtors propose to conduct the sale hearing within five (5) days after the objection deadline for assets other than the "Go Forward Stores" (see Dkt. 429, proposed Bidding Procedures at III).  As with the "Go Forward Stores," the proposed Order should be modified, to clarify that any (1) proposed sale or lease assumptions and assignments by a bidder to any proposed assignee of that bidder, or (2) exercise of lease designation rights, will not be considered at the sale hearing.  The proposed Order should be further modified to clarify that only the sale and assumption and assignment to the successful bidder should be considered at the sale hearing.  Any sale and assumption and assignment to the backup bidder should only be

considered should the successful bid not close, and then only upon sufficient notice under the Amended Case Management Procedures Order (*see* Dkt. 405).

V.  **The Debtors' Proposed Deadline to Object to Proposed Cure Costs is Insufficient.**

30. With respect to both "Go Forward Stores" and assets other than "Go Forward Stores," the Debtors propose only eight (8) days from the service of the assumption and assignment notice with proposed cure costs to object to the same (*see* Dkt. 429 at ¶ 28[c]; *but see* Dkt. 429, proposed Bidding Procedures at III (providing ten (10) days to object to cure and assumption and assignment with respect to assets other than the "Go Forward Stores"). The proposed deadline is insufficient. The Landlords should be provided at least fourteen (14) days from the filing and service of the notice of assumption and assignment to object to the Debtors' proposed cure costs.

31. In addition, the proposed Order is unclear as to whom notice of assumption and assignment and proposed cure costs must be provided. The proposed Order should be modified, to clarify that notice of assumption and assignment and of the Debtors' proposed cure costs shall include all leases that the Debtors may seek to assume and assign, and shall be filed and served upon all counterparties to those leases.

VI.  *Any Assumption and Assignment of the Leases Must Be Cum Onere, And the Debtors and Assignee Must Assume Liability for All Obligations for Accrued, But Unbilled or Not Due Rent and Charges and Indemnity Obligations.*

32. It is well settled that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens. *See In re David Orgell, Inc.*, 117 B.R. 574, 575-76 (Bankr. C.D. Cal. 1990); *In re Pizza Time Theatre, Inc.*, 1990 U.S. Dist. LEXIS 17939, at *14 (Bankr. N.D. Cal. July 13, 1990) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984), *superseded on other grounds*); *In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007)

16

(quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951). The requirement that lease assumption be *cum onere* applies equally to assignment, as assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365." *In re Sunterra Corp.*, 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)).

33. The Leases include continuing obligations to pay additional rent and charges, including, but not limited to, adjustments and reconciliations for the Debtors' proportionate share of such additional rent which has accrued, or will accrue under the Leases through any assumption and assignment of the Leases and are not yet billed or due. The Leases further include contractual obligations to indemnify the Landlords for events occurring prior to any assumption and assignment of the Leases. The Leases obligate the Debtor to indemnify and hold the Landlords harmless from and against various claims, liabilities and expenses.

34. The obligation to pay this additional rent and charges and to satisfy the indemnity obligations is essential to the Landlords' entitlement, pursuant to Section 365(b)(1) of the Bankruptcy Code, to adequate assurance of future performance, and must be assumed by any assignee, *cum onere*.

## JOINDER AND RESERVATION OF RIGHTS

35. The Landlords join in the objections of other landlords of the Debtors to the extent they are not inconsistent with this Objection.

36. The Landlords reserve their rights to supplement this Objection and to make such other and further objections as they may deem necessary or appropriate, including, but not limited to, any amendment to the proposed Order granting the Motion or to the proposed bidding procedures.

17

## **CONCLUSION**

**WHEREFORE,** the Landlords respectfully request that the Court deny the Motion or condition any grant of the Motion as set forth in this Objection, and grant the Landlords any additional and further relief the Court deems just and proper.

Dated: November 9, 2018
Syracuse, New York

**BARCLAY DAMON LLP**

By: /s/Kevin Newman
Kevin M. Newman, Esq.
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202-2020
Telephone:  (315) 413-7115
Facsimile:  (315) 703-7349

*Attorneys for Aviation Mall NewCo, LLC, Holyoke Mall Company, L.P., JPMG Manassas Mall Owner LLC, Poughkeepsie Galleria LLC, Salmon Run Shopping Center, L.L.C., S&R Company of West Seneca NewCo, LLC, and DGI LS, LLC*