| | | |
|---|---|---|
| David L. Pollack, Esquire<br>**Ballard Spahr LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Direct: (215) 864-8325<br>Email:<br>pollack@ballardspahr.com | Leslie C. Heilman, Esquire<br>**Ballard Spahr LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Direct: (302) 252-4465<br>Email:<br>heilmanl@ballardspahr.com | **Obj. Deadline: November 8, 2018 at 4:00 p.m. ET**<br>**Extended to November 9, 2018 at 4:00 p.m. ET**<br>**Hearing Date: November 15, 2018 at 10:00 a.m. ET** |
| - and - | - and - | |
| Dustin P. Branch, Esquire<br>**Ballard Spahr LLP**<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067-2909<br>Direct: (424) 204-4354<br>Fax: (424) 204-4350<br>Email:<br>branchd@ballardspahr.com | Paul E. Harner, Esquire<br>Alyssa E. Kutner, Esquire<br>**Ballard Spahr LLP**<br>919 Third Avenue<br>New York, NY 10022<br>Direct: (646) 346-8075;<br>Fax: (212) 223-1942<br>E-mail:<br>harnerp@ballardspahr.com<br>kutnera@ballardspahr.com | |

*Attorneys for Federal Realty Investment Trust, Acadia Realty Limited Partnership, PGIM Real Estate, Pacific Retail Group, WBCMT 2007-C33 Independence Center LLC, Starwood Retail Partners LLC, Kravco Company, Brixmor Operating Partnership, L.P., Weitzman, Helios IV, LLC, Passco Hanford Mall, LLC, Centennial Real Estate Co., C. E. Johns Company, Inc., GEM Realty Capital, Inc., GS Pacific ER, LLC, The Macerich Company, Vintage Real Estate, LLC, White Plains Galleria Limited Partnership, C.J. Segerstrom & Sons, Heidenberg Properties, S-Tract LLC, and FBA Holdings, Inc*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------------x

**LIMITED OBJECTION OF FEDERAL REALTY INVESTMENT TRUST, ACADIA REALTY LIMITED PARTNERSHIP, PGIM REAL ESTATE, PACIFIC RETAIL GROUP, WBCMT 2007-C33 INDEPENDENCE CENTER LLC, STARWOOD RETAIL PARTNERS LLC, KRAVCO COMPANY, BRIXMOR OPERATING PARTNERSHIP, L.P., WEITZMAN, HELIOS IV, LLC, PASSCO HANFORD MALL, LLC, CENTENNIAL REAL ESTATE CO., C. E. JOHNS COMPANY, INC., GEM REALTY CAPITAL, INC., GS PACIFIC ER, LLC, THE MACERICH COMPANY, VINTAGE REAL ESTATE, LLC, WHITE PLAINS GALLERIA LIMITED PARTNERSHIP, C.J. SEGERSTROM & SONS, HEIDENBERG PROPERTIES, S-TRACT LLC, AND FBA HOLDINGS, INC TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION LENDERS, (III) SCHEDULING A FINAL <u>HEARING AND (IV) GRANTING RELATED RELIEF</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY COURT JUDGE:**

Federal Realty Investment Trust, Acadia Realty Limited Partnership, PGIM Real Estate, Pacific Retail Group, WBCMT 2007-C33 Independence Center LLC, Starwood Retail Partners LLC, Kravco Company, Brixmor Operating Partnership, L.P., Weitzman, Helios IV, LLC, Passco Hanford Mall, LLC, Centennial Real Estate Co., C. E. Johns Company, Inc., GEM Realty Capital, Inc., GS Pacific ER, LLC, The Macerich Company, Vintage Real Estate, LLC, White Plains Galleria Limited Partnership, C.J. Segerstrom & Sons, Heidenberg Properties, S-Tract LLC, and FBA Holdings, Inc. (collectively the "Objecting Landlords"), by their undersigned attorneys, hereby make this Limited Objection (the "Limited Objection") to Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing (the "Motion"), and in support thereof aver:

1. Objecting Landlords are the owners or agents for the owners of certain shopping centers in which Debtors operate retail locations pursuant to written leases (the "Leases" and each a "Lease") which are affected by the relief sought by the Motion. Unless

otherwise noted on Exhibit "A," all of Objecting Landlords' premises are premises located in shopping centers (the "Premises"), as that term is used in 11 U.S.C. § 365(b)(3). *See In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

2.  By the Motion, Debtors seek, *inter alia*, the right to grant a lien and/or security interest in and to Objecting Landlords' Leases, as well as undefined rights to foreclose upon, sell, lease, assume and assign, use and/or dispose of Debtors' Collateral, including Objecting Landlords' Leases. Debtors also seek to invalidate certain provisions contained in the Leases.

3.  Objecting Landlords do not object to the lenders of the Debtors (Bank of America, N. A. and Wells Fargo Bank, National Association, each as a co-collateral agent, each in such capacity, a "DIP ABL Co-Collateral Agent" and together with the administrative agent Bank of America, N.A., the "DIP ABL Agents," and together with the revolving lenders or lenders otherwise from time to time party thereto, the "DIP ABL Lenders"), that is, the DIP ABL Lenders and the DIP ABL Agents, taking a security interest in the proceeds of any disposition of the Leases, or even any lien permitted by the terms of the Leases. The Landlords do object to any request to (a) render provisions of the Leases unenforceable, (b) access the Premises in violation of the Leases or applicable non-bankruptcy law, or (c) permit the DIP ABL Agent or DIP ABL Lenders to take any action with respect to the Leases or the Premises without filing the appropriate motion (with an opportunity to object and for a hearing) as required by the Bankruptcy Code.

4.  The Interim Order addressed both the issue of liens on leases (Interim Order at ¶ 12) and access to the Premises (Interim Order at ¶¶ 33(d) and 37). By this Limited Objection, Objecting Landlords seek to make sure that those protections are included in any final

financing order. Unfortunately, as of the filing of this Limited Objection, a copy of the proposed form of final order is not available for review.  As a result, this Limited Objection is necessary to preserve Objecting Landlords' rights under their Leases.  To the extent that the form of final financing order includes the limitations set forth above, Objecting Landlords will withdraw this Limited Objection.

**Proposed Liens on Leases**

5.     The Motion contemplates that Debtors will grant the DIP ABL Co-Collateral Agents a lien on all of Debtors' assets [*See,* Motion at ¶ 12], which would necessarily include Objecting Landlords' Leases.  Most, if not all, of Objecting Landlords' Leases specifically prohibit the tenant (Debtors) from assigning, transferring, mortgaging or otherwise hypothecating or encumbering the Leases.

6.     While Objecting Landlords do not object to the granting of a lien on and/or security interest in the proceeds of the sale or other disposition of their Leases, Objecting Landlords do object to any attempt to lien, grant a security interest in, mortgage or otherwise hypothecate the Leases, contrary to the provisions thereof.  Objecting Landlords further object to any use of their leaseholds except as provided in the Leases or pursuant to a further order of this Court.

7.     In addition to the strict prohibition many leases include against the granting of liens on, or hypothecation of, the leasehold interests, a substantial number of the subject properties are encumbered by mortgages which, it is believed, specifically prohibit the landlord from allowing any encumbrances to be granted upon the various tenant leases.  Those leases, as the mortgagee's collateral, are themselves subject to the prior mortgage lien of the

4

landlord's lender.

8. Neither the Debtors nor the DIP ABL Co-Collateral Agents have cited to any authority which would allow this Court to override the prohibitions in the leases against granting liens. The simple reason is that no such authority exists. Neither the Bankruptcy Code generally, nor 11 U.S.C. § 364 specifically, authorize Debtors to violate the Leases in connection with their post-petition financing. The United States Supreme Court consistently upholds the position that bankruptcy courts are to uphold non-bankruptcy rights unless a specific bankruptcy provision or policy requires differently. *Butner v. United States*, 440 U.S. 48, 55 (1979). "'Property rights are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2616 (2011), *quoting Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007), *quoting Butner*, 440 U.S. at 55. The burden to demonstrate that bankruptcy law overrides applicable state law falls on the party making that assertion. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 25 (2000); *Butner*, 440 U.S. at 55. Therefore, a lease provision that is enforceable under applicable state law, is enforceable in a bankruptcy proceeding, absent a specific bankruptcy provision or policy that requires differently. In these cases, there is no applicable bankruptcy law that overrides state law or the terms of the Leases, and as set forth below, there is no need for the DIP Lenders to take a direct lien on the Leases.

9. Section 364[1] authorizes Debtors to obtain financing. It does not authorize Debtors to alter lease provisions, and it does not preempt Section 365 or the rights granted

---

[1] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") unless otherwise specified in this Motion.

5

landlords therein. More specifically, Section 364 does not authorize Debtors, for the benefit of a non-debtor party, to render any provision of a lease unenforceable. If Congress intended to such authority in connection with a request for financing, Congress would have included a provision in Section 364 that is similar to those set forth below. Congress did not provide such language in connection with obtaining financing pursuant to Section 364.

10. There are two statutory instances where the Bankruptcy Code potentially authorizes rendering a lease provision unenforceable for a limited time. The first is where a provision is what is termed an *ipso facto* clause. This is a provision that would cause a default or termination based upon the: (i) insolvency or financing condition of the debtor; (ii) the commencement of a bankruptcy case; or (iii) the appointment of a trustee or custodian in a bankruptcy case. The Bankruptcy Code provides such a provision is unenforceable. *See* 11 U.S.C. § 365(e)(1). This section is inapplicable to a debtor's financing request.

11. The second is where a provision prohibits assignment of a lease. Section 365(f)(1) authorizes a debtor to assign an executory contact or unexpired lease (subject to complying with Sections 365(b) and (c)), notwithstanding that such contact or lease prohibits assignment. Section 365(f)(1) applies only in the context of a motion to assume and assign a lease, and only upon compliance with the requirements of Sections 365(b) and (c). *See* 11 U.S.C. § 365(f)(1). There is no corresponding provision in Section 364.

12. Provisions that restrict the ability to encumber leases are critical to Objecting Landlords' ability to (a) control their properties, (b) preserve clear title to their Leases, (c) comply with their own financing and investment requirements, and (d) effectively market their properties. Even where Leases may permit liens, such rights may be subordinate to Objecting Landlords' own financing. A financing order should not be used to render such lease

6

provisions unenforceable, potentially putting Landlords in default of their own financing arrangements. Landlords object to any pledge, encumbrance, lien, hypothecation or other pledge of the Leases that violates any term of the Leases, and any language in the order that seeks to render provisions of the Leases unenforceable.

### Section 365 Requires the Debtors to Comply With the Terms of the Leases, Including Provisions that Prohibit or Restrict Liens

13.    Section 365 mandates that Debtors "timely perform all of the obligations" under the Leases until such time that the Debtors assume or reject the Leases, and provides:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

*See* 11 U.S.C. § 365(d)(3).

14.    The plain language of Section 365(d)(3) and the relevant case law clearly require the Debtors to perform their obligations under the Leases and to comply with the terms of the Leases, including with respect to any rights Landlords have with respect to encumbrances, hypothecations, mortgages, or other liens against Leases. Moreover, the Leases may have provisions that subordinate any liens by a tenant to liens Objecting Landlords have granted or may grant to their own lenders. These provisions are enforceable, and the Debtors must perform in accordance with these provisions pursuant to Section 365.

15.    Given the potentially sweeping remedies granted under the financing documents in the event Debtors default, a grant of a security interest in the Leases, and any attendant exercise of remedies following a default, creates a *de facto* assignment of the Leases. There is no authority to permit such an assignment (under the guise of pledging the Leases as

7

collateral), independent of the safeguards of Sections 365(b)(3) and (f)(2).[2] Therefore, no such liens should be granted that would give the DIP ABL Agents and DIP ABL Lenders the ability to potentially circumvent Section 365.

16. Granting a direct lien on the Leases is not necessary to protect the DIP ABL Lenders, as any disposition of the collateral is already controlled by the Bankruptcy Court. The Debtors are currently conducting a liquidation at certain of their stores pursuant to the order of this Court. Similarly, the Debtors are seeking authority to conduct an auction and sale process with respect to Debtors' remaining assets, including the Leases. Where leases are assumed and assigned, the DIP ABL Agents and DIP ABL Lenders will retain only a lien on the proceeds generated by such assignment, and in the event of liquidation sales, the DIP ABL Agents and DIP ABL Lenders' liens again attaching only to the proceeds of those sales. According to Debtors' proposed schedule, all Leases will be either assumed and assigned or rejected within the next ninety days. At the end of that process, there will only be proceeds remaining, and that is the value for the DIP ABL Agents and DIP ABL Lenders. During this short liquidation process, the Bankruptcy Court and state law remedies preserve the DIP ABL Agents and DIP ABL Lenders' rights to realize upon the Debtors' assets, and there is no need to cloud title to the Leases.

17. Any final order should provide that liens only attach to the proceeds of a

---

[2] Because the Leases are shopping center leases, Debtors must comply with the heightened protections granted to shopping center landlords in connection with any such transfer of an interest in the Leases. Therefore, Section 365(b)(3) (applicable to an assignment of a lease through Section 365(f)) applies, and any assignment of the Leases require compliance with the special adequate assurance of future performance protections set forth in Sections 365(b)(3)(A) - (D). *See* 11 U.S.C. § 365(b)(3).

disposition of the Leases, or at a maximum, only allow liens to the extent permitted under the Leases. Such order should not authorize any violation of the terms of the Leases. In addition, nothing in the grant of any lien should compromise Objecting Landlords' rights under Section 365, and Objecting Landlords request that any final order specifically include language to that effect. Objecting Landlords are entitled to have these prohibitions in their Leases fully enforced by this Court.

18. Objecting Landlords, not Debtors, own the Premises. There is no need to force Objecting Landlords to accept a cloud on their title to the Leases. The value in the Leases to Debtors, the DIP ABL Lenders, and the DIP ABL Agents is the value that will be realized in a sales process. Granting a security interest in the Leases serves no economic purpose, and it is unnecessary.

**The Court Should Limit Any Remedies That Lenders May Exercise With Respect to the Collateral at the Premises in Accordance With the Protections Provided to Landlords in the Leases and Bankruptcy Code.**

19. The Motion and Proposed Order also provide for broad relief for their lenders upon the occurrence of a default. The Interim Order allows the DIP ABL Agents to enforce certain rights of access only subject to certain restrictions. (*See*, Interim Order at ¶¶ 33(d) & 37). Provisions allowing the lenders broad relief upon occurrence of a default are contrary to Objecting Landlords' leases, and any attempt by the lenders to enforce their rights under their loan agreements (which also have not been submitted for review) must comply with all of the provisions of Section 365 of the Code. Thus, the lenders' access rights in connection with Objecting Landlords' leasehold premises should be limited to (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents (the "Prepetition ABL Agents" hereinafter defined as Bank of America, N. A. as administrative agent, as a co-collateral

9

agent, and as a swingline agent, and together with Wells Fargo Bank, National Association, as a co-collateral agent), as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

20.    Any final order should limit any lenders' access to the Premises to that provided by applicable non-bankruptcy law, by the terms of the Lease or separate agreement of Objecting Landlords and lenders, and as ordered by this Court after the filing of a motion and appropriate opportunity for Objecting Landlords to object and be heard.

21.    Without these limitations, DIP ABL Agents and DIP ABL Lenders receive unfettered access and occupancy rights with respect to the Premises to liquidate the collateral and conduct going out-of-business sales.  The granting of such rights through a financing order is excessive and inappropriate, and there is already a store closing procedures motion in place to control such a process.  To the extent that a liquidation of the collateral would include any attempt to conduct any sale at the Premises, such sales will be governed by the existing procedures, the agreements between Objecting Landlords and the liquidator, and the Leases.  The parties are otherwise bound by the terms of the Leases.  *See* 11 U.S.C. §§ 365(b)(3) and (d)(3). There is no basis to exempt DIP ABL Agents or the DIP ABL Lenders from the restrictions in the Leases, or the explicit requirements of the Bankruptcy Code.

22.    Any request for authority to enter onto the Centers without proper protections in place, is also unduly prejudicial and exposes the Objecting Landlords and the Premises to unnecessary risk of loss.  The DIP ABL Agents, Prepetition ABL Agents, and DIP

ABL Lenders are not a party to the Leases and have no right to occupy and use Landlords' property. If this Court is inclined to grant any ability to enter onto the Premises, it should specifically circumscribe such access as follows:

- Only after ten (10) days written notice to the Objecting Landlords;
- For the limited purpose of collecting and removing lenders' collateral (and with no ability to conduct any sale, auction or fire sale at the Premises);
- Pursuant to a written agreement on terms acceptable to the Objecting Landlords and in accordance with the Leases;
- Lenders are responsible for the charges coming due under the Leases, monthly in advance, for any period of occupancy;
- Lenders, their agents, or any entering party must provide Objecting Landlords with a certificate of insurance with respect to such entry, which certificate shall list the Landlords as an additional named insured, and which insurance covers both personal injury and property damage;
- Lenders are subject to any provision of the Leases regarding reimbursement and/or indemnification of the Landlords; and
- Access to the Premises shall be limited to a period not to exceed thirty (30) days.

23. As stated above, Debtors do not own the Premises and the Leases explicitly prohibit the usurpation of Objecting Landlords' property rights. Objecting Landlords provide Debtors a right to occupy certain space in the Centers, as set forth by the terms of the Leases. Debtors possess no right to use the Premises beyond those rights granted within the Leases, and the Bankruptcy Code does not expand those rights. The DIP ABL Lenders and DIP ABL Agents are not a party to the Leases and have no contractual or possessory right to enter the Premises.

24. Finally, if DIP ABL Lenders or DIP ABL Agents seek to enter onto the Premises, DIP ABL Agents and DIP ABL Lenders must bear full financial responsibility, not only for all charges arising under the Leases going forward, but also for prior unpaid rent or other charges that arise. To the extent the DIP ABL Lenders and DIP ABL Agents seek authority to essentially step into the shoes of the Debtors following a default, there is no reason to allow them to exercise rights which the Leases otherwise prohibit, and to "assume" the Leases

11

for an indeterminate period of time, without being required to cure outstanding post-petition defaults. The lenders should not, on the one hand, receive a superpriority administrative claim, and on the other hand be relieved from liability for the Debtors' failure to remain current on post-petition rent obligations while the lenders attempts to realize upon their collateral. This result compels Objecting Landlords to continue to suffer as involuntary post-petition creditors, the very result that Section 365(d)(3) was intended to counteract. *See In re Warehouse Club, Inc.*, 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

## Reservation of Rights

25. Objecting Landlords reserve the right to make such other and further objections as may be appropriate.

## Joinder in Other Landlord Objections

26. Objecting Landlords hereby join in the objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the provisions hereof.

**WHEREFORE,** in order to protect Objecting Landlords rights under the Leases and the Bankruptcy Code, the Court should (a) limit any lien with respect to the Leases to a lien only against the proceeds that may result from the sale or other disposition of the Leases where the Leases prohibit or restrict such liens, (b) strike any language from a final order that renders provisions of the Leases unenforceable, (c) limit access to the Premises to that allowed under applicable non-bankruptcy law, as provided by the lease or agreement of the parties, or as allowed by the Bankruptcy Court after appropriate notice and opportunity to object, and grant such other and further relief that it deems just and proper.

Dated: November 9, 2018  
New York, New York

Respectfully submitted,

*/s/ Paul E. Harner*
Paul E. Harner, Esquire
Alyssa E. Kutner, Esquire
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: (646) 346-8075
Fax: (212) 223-1942
Email: harnerp@ballardspahr.com
          kutnera@ballardspahr.com

- and -

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
Pollack@ballardspahr.com

- and -

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

- and –

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
Email: heilmanl@ballardspahr.com

*Attorneys for Federal Realty Investment Trust, Acadia Realty Limited Partnership, PGIM Real Estate, Pacific Retail Group,*

*WBCMT 2007-C33 Independence Center LLC, Starwood Retail Partners LLC, Kravco Company, Brixmor Operating Partnership, L.P., Weitzman, Helios IV, LLC, Passco Hanford Mall, LLC, Centennial Real Estate Co., C. E. Johns Company, Inc., GEM Realty Capital, Inc., GS Pacific ER, LLC, The Macerich Company, Vintage Real Estate, LLC, White Plains Galleria Limited Partnership, C.J. Segerstrom & Sons, Heidenberg Properties, S-Tract LLC, and FBA Holdings, Inc*

## SCHEDULE A

| | | |
|---|---|---|
| *Federal Realty Investment Trust* | | |
| Store No. 3486 | Assembly Row | Sommerville, MA |
| Store No. Unknown | Hastings Ranch Plaza | Pasadena, CA |
| *Acadia Realty Limited Partnership* | | |
| Store No. 9416 | Crossroads | White Plains, NY |
| Store No. 3266 | Mark Plaza | Kingston, PA |
| *PGIM Real Estate.* | | |
| Store No. 1678 | El Camino North | Carlsbad, CA |
| Store No. | Gresham Town Fair | Gresham, OR |
| Store No. 1209 | Los Altos Marketcenter | Long Beach, CA |
| Store No. 3133 | Sunset Square | Bellingham, WA |
| *CenterCal Properties, LLC* | | |
| Store No. 2029 | Valley Mall | Union Gap, WA |
| *WBCMT 2007-C33 Independence Center LLC* | | |
| Store No. 1121 | Independence Center | Independence, MO |
| *Starwood Retail Partners LLC* | | |
| Store No. 1410 | Belden Village Mall | Canton, OH |
| Store No. 1840 | Chicago Ridge | Chicago Ridge, IL |
| Store No. 2191 | Gateway Mall | Lincoln, NE |
| Store No. 1710 | Great Northern Mall | North Olmstead, OH |
| Store No. 2309 | Kitsap Mall | Silverdale, WA |
| Store No. 1740 | Louis Joliet Mall | Louis Joliet, IL |
| Store No. 6518 | Northridge Mall | Salinas, CA |
| Store No. 1189 | Plaza West Covina | West Covina, CA |
| Store No. | SouthPark Mall | Strongsville, OH |
| Store No. 1345 | Westland Mall | Hialeah, FL |
| *Kravco Company* | | |
| Store No. Unknown | Hamilton Mall | Hamilton, NJ |
| *Brixmor Operating Partnership, L.P.* | | |
| Store No. 4478 | Hamilton Plaza | Hamilton, NJ |
| Store No. 4938 | Rollins Crossing | Round Lake Beach, IL |
| Store No. 2485 | Coastal Way | Brooksville, FL |
| Store No. 3393 | Collegetown Shopping Center | Glassboro, FL |
| Store No. 3713 | Covington Gallery | Covington, GA |
| Store No. 3807 | Fox Run Shopping Center | Prince Frederick, MD |

| | *Weitzman* | |
|---|---|---|
| Store No. Unknown | Golden Triangle Mall | Denton, TX |
| | *Passco Hanford Mall, LLC* | |
| Store No. Unknown | Hanford Mall | Hanford, CA |
| | *Centennial Real Estate Co* | |
| Store No. 1134 | Connecticut Post | Milford, CT |
| Store No. | Fox Valley Mall | Aurora, IL |
| Store No. | Hawthorn Mall | Vernon Hills, IL |
| Store No. | Pueblo Mall | Pueblo, CO |
| Store No. 2029 | Vancouver Mall | Vancouver, WA |
| | *C. E. Johns Company, Inc.* | |
| Store No. 2119 | Lancaster Mall | Salem (Lancaster), OR |
| | *GS Pacific ER, LLC* | |
| Store No. 1488 | Eastridge Center | San Jose, CA |
| | *The Macerich Company* | |
| Store No. 1228 | Arden Fair Mall | Sacramento, CA |
| Store No. 1798 | Arrowhead Towne Center | Glendale, AZ |
| Store No. 1169 | Chandler Fashion Center | Chandler, AZ |
| Store No. 1733 | Cross County Shopping Center | Yonkers, NY |
| Store No. 1303 | Danbury Fair Mall | Danbury, CT |
| Store No. 1464 | Deptford Mall | Deptford, NJ |
| Store No. 1708 | Desert Sky Mall | Phoenix, AZ |
| Store No. 1204 | Freehold Raceway | Freehold, NJ |
| Store No. 1924 | Green Acres Mall | Valley Stream, NY |
| Store No. 1398 | Inland Center | San Bernardino, CA |
| Store No. 2138 | La Cumbre Plaza | Santa Barbara, CA |
| Store No. 1518 | Los Cerritos Center | Cerritos, CA |
| Store No. 2760 | NorthPark Mall | Davenport, IA |
| Store No. 1148 | Pacific View | Ventura, CA |
| Store No. 1768 | Paradise Valley Mall | Phoenix, AZ |
| Store No. 1247 | South Plains Mall | Lubbock, TX |

| Store No. 1309 | Stonewood Center | Downey, CA |
|---|---|---|
| Store No. 1078 | Superstition Springs | Mesa, AZ |
| Store No. 2829 | The Mall of Victor Valley | Victorville, CA |
| Store No. 1618 | Vintage Faire Mall | Modesto, CA |
| Store No. 1079 | Washington Square | Portland, OR |
| Store No. 3065 | Wilton Mall | Saratoga Springs, NY |
| *Vintage Real Estate, LLC* | | |
| Store No. 1650 | Southlake Mall | Merrillville, IN |
| Store No. 1133 | The Mall at Whitney Field | Leominster, MA |
| *White Plains Galleria Limited Partnership* | | |
| Store No. 1674 | Galleria at White Plains | White Plains, NY |
| *Heidenberg Properties* | | |
| Store No. 7470 | Hershey Square | Hummelstown, PA |
| Store No. 2415 | Lake Plaza Shopping Center | Mahopac, NY |
| *Helios IV, LLC* | | |
| Store No. Unknown | 15500 Greenway-Hayden Loop | Scottsdale, AZ |
| *S-Tract LLC* | | |
| Store No. 1388 | Southcoast Plaza | Costa Mesa, CA |