| | | |
|---|---|---|
| David L. Pollack, Esquire<br>**Ballard Spahr LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Direct: (215) 864-8325<br>Email: pollack@ballardspahr.com | Leslie C. Heilman, Esquire<br>**Ballard Spahr LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Direct: (302) 252-4465<br>Email: heilmanl@ballardspahr.com | Obj. Deadline: November 8, 2018 at 4:00 p.m. ET<br>Extended to November 9, 2018 at 4:00 p.m. ET<br>Hearing Date: November 15, 2018 at 10:00 a.m. ET |

- and -                                                          - and -

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

Paul E. Harner, Esquire
Alyssa E. Kutner, Esquire
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: (646) 346-8075;
Fax: (212) 223-1942
E-mail: harnerp@ballardspahr.com
kutnera@ballardspahr.com

*Attorneys for Federal Realty Investment Trust, Acadia Realty Limited Partnership, PGIM Real Estate, Pacific Retail Group, WBCMT 2007-C33 Independence Center LLC, Starwood Retail Partners LLC, Kravco Company, Brixmor Operating Partnership, L.P., Weitzman, Helios IV, LLC, Passco Hanford Mall, LLC, Centennial Real Estate Co., C. E. Johns Company, Inc., GEM Realty Capital, Inc., GS Pacific ER, LLC, The Macerich Company, Vintage Real Estate, LLC, White Plains Galleria Limited Partnership, C.J. Segerstrom & Sons, Heidenberg Properties, S-Tract LLC, and FBA Holdings, Inc*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
SEARS HOLDINGS CORPORATION, *et al.*,              :    Case No. 18-23538 (RDD)
                                                   :
                                                   :    (Jointly Administered)
              Debtors.                             :
---------------------------------------------------------------x

**LIMITED OBJECTION OF FEDERAL REALTY INVESTMENT TRUST,
ACADIA REALTY LIMITED PARTNERSHIP, PGIM REAL ESTATE,**

**PACIFIC RETAIL GROUP, WBCMT 2007-C33 INDEPENDENCE CENTER LLC, STARWOOD RETAIL PARTNERS LLC, KRAVCO COMPANY, BRIXMOR OPERATING PARTNERSHIP, L.P., WEITZMAN, HELIOS IV, LLC, PASSCO HANFORD MALL, LLC, CENTENNIAL REAL ESTATE CO., C. E. JOHNS COMPANY, INC., GEM REALTY CAPITAL, INC., GS PACIFIC ER, LLC, THE MACERICH COMPANY, VINTAGE REAL ESTATE, LLC, WHITE PLAINS GALLERIA LIMITED PARTNERSHIP, C.J. SEGERSTROM & SONS, HEIDENBERG PROPERTIES, S-TRACT LLC, AND FBA HOLDINGS, INC TO DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY COURT JUDGE:**

Federal Realty Investment Trust, Acadia Realty Limited Partnership, PGIM Real Estate, Pacific Retail Group, WBCMT 2007-C33 Independence Center LLC, Starwood Retail Partners LLC, Kravco Company, Brixmor Operating Partnership, L.P., Weitzman, Helios IV, LLC, Passco Hanford Mall, LLC, Centennial Real Estate Co., C. E. Johns Company, Inc., GEM Realty Capital, Inc., GS Pacific ER, LLC, The Macerich Company, Vintage Real Estate, LLC, White Plains Galleria Limited Partnership, C.J. Segerstrom & Sons, Heidenberg Properties, S-Tract LLC, and FBA Holdings, Inc. (collectively the "Objecting Landlords"), by their undersigned attorneys, hereby make this Limited Objection (the "Limited Objection") to Debtors' Motion for Approval of Global Bidding Procedures (the "Global Bidding Procedures Motion"),[1] and respectfully represent as follows:

## I. BACKGROUND

1. Sears Holding Corporation and affiliated co-debtors (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018 (the "Petition Date"). Debtors continue to operate their business and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2. Objecting Landlords are the owners or agents for the owners of certain shopping centers in which Debtors operate retail locations pursuant to written leases (the "Leases" and

---

[1] Terms not otherwise defined here shall have the meanings ascribed to them in the Global Bidding Procedures Motion, Bid Procedures, and accompanying documents.

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2

each a "Lease") which are affected by the relief sought by the Motion. Unless otherwise noted on Exhibit "A," all of Objecting Landlords' premises are premises located in shopping centers, as that term is used in 11 U.S.C. § 365(b)(3). *See In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).[3]

3.    The Debtors filed the Global Bidding Procedures Motion [D.I. 450] on November 1, 2018. The Global Bidding Procedures Motion proposes the sale of substantially all of the Debtors' assets (the "Assets"). Objecting Landlords do not object to a fair sale process that provides the Debtors an opportunity to maximize the value of their Assets, but any sale process must provide Objecting Landlords with sufficient adequate assurance of future performance information to assess any bidder, and provide Objecting Landlords with sufficient time to review such information and respond as necessary prior to any deadline to object to a sale or assumption

---

[3] Although "shopping center" is not a term defined by the Bankruptcy Code, courts making the determination of what development constitutes a shopping center have considered a variety of factors. *See Joshua Slocum*, 922 F.2d at 1086-1087, *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999), and *In re Goldblatt Bros., Inc.*, 766 F.2d 1136, 1140-41 (7th Cir. 1985). The leading bankruptcy treatise found that "the most important characteristic will be a combination of leases held by a single landlord, leased to commercial retail distributors of goods, with the presence of a common parking area." *Joshua Slocum*, 922 F.2d at 1088, *citing* 2 Collier on Bankruptcy ¶ 365.04[3]. Landlords have the initial burden of proving that the Centers are shopping centers for purposes of Section 365(b)(3). Courts making the determination of what development constitutes a shopping center have considered a variety of factors. Those factors include, but are not limited to:

>    (a) the existence of a combination of leases for the stores;
>    (b) the fact that all leases are held by single landlord;
>    (c) the fact that all tenants are engaged in commercial retail distribution of goods;
>    (d) the presence of common parking area;
>    (e) the purposeful development of premises as shopping center;
>    (f) the existence of a master lease;
>    (g) the existence of fixed hours during which all stores are open;
>    (h) the existence of joint advertising;
>    (i) the contractual interdependence of tenants, as evidenced by restrictive use provisions in their leases;
>    (j) the existence of percentage rent provisions in leases;
>    (k) the right of tenants to terminate their leases if anchor tenant terminates its lease;
>    (l) the joint participation by tenants in trash removal and other maintenance;
>    (m) existence of tenant mix, and
>    (n) a contiguity of stores.

*See Joshua Slocum,* 922 F.2d at 1086-1087, and *Sun TV and Appliances, Inc.,* 234 B.R. 356, and *Goldblatt Bros., Inc.*, 766 F.2d at 1140-41. The Leases are in shopping centers under the criteria set forth above, and if disputed, Objecting Landlords are prepared to establish that the Leases are shopping center leases as that term is used in Section 365, by either an offer of proof or direct testimony.

and assignment of Leases. In order to make sure that Objecting Landlords receive this information on the expedited timeframes set forth in the Global Bidding Procedures Motion, all notices should be served on Objecting Landlords' counsel of record by electronic or facsimile. Too often the notices provided by debtors in a bankruptcy are sent to addresses that are stale and belong to prior owners of a center, or they are sent to a lockbox account that is for payments of rent, and such notices never make to the Objecting Landlords.

## II.    ARGUMENT

### A.    The Debtors must provide Objecting Landlords with Adequate Assurance Information that satisfies Section 365(b)(1).

4.    The Bidding Procedures provide that Qualified Bids must include the following Adequate Assurance Information:

> b. Except for a Landlord Bid, information supporting Prospective Bidder's (or any other proposed assignee's) ability to comply with requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), including Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction (such information, "Adequate Assurance Information").
>
> c. Sufficient evidence that the Prospective Bidder has, or can obtain, financial wherewithal to consummate Sale Transactions in a timely manner, including copies of any commitment letters

Global Bidding Procedures Motion at p. 11.

5.    The above information is insufficient, and in the case of evidence of financial wherewithal to consummate the Sale Transaction, largely irrelevant to demonstrate adequate assurance of future performance under the Leases.[4] A potential bidder in a sale rarely becomes

---

[4] In addition, it is not clear when the Debtors will propose the Adequate Assurance Information to Objecting Landlords for the Stalking Horse Bidder. Adequate Assurance Information for Stalking Horse Bidders should be provided to Landlords upon the designation of any such Stalking Horse Bidder, and adequate assurance information for any bidder must be received not later than the Notice of Auction Results to ensure that Landlords have the full eight (8) days to review and respond to any proposed assignee of the Leases. As set forth above, all such notices should be provided to Landlords and their counsel of record by email or facsimile transmission.

4

the assignee under a lease. While the information may be relevant to the Prospective Bidder's ability to consummate the sale (the Prospective Bidder's financial capacity to complete the proposed Sale), it provides no evidence of an ability to perform under the Leases in the future. Even if the entity acquiring the Assets is the entity that will operate the store(s), the information offered fails to demonstrate a Prospective Bidder's capitalization after the Sale. Adequate Assurance Information must address the ability of the proposed assignee to perform under the Leases in the future, and Objecting Landlords must receive, at a minimum, the following information, and a reasonable timeframe to review such information, if Debtors are to satisfy this burden:

(i) the specific name of the Prospective Bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store;

(ii) the potential assignee's intended use for the space;

(iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto;

(iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Leases subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Leases;

(v) all documents and other evidence of the potential assignee's retail experience and experience operating stores in a shopping center; and

(vi) a contact person for the proposed assignee that Objecting Landlords may directly contact in connection with the adequate assurance of future performance.

6. Any party bidding on the Assets of these Debtors, including any of the Leases, must provide basic information on their ability to perform under the Leases, the intended use for the Premises, the name of the proposed tenant, a contact person, and their experience operating in a retail shopping center environment. The above is a non-exclusive list of the minimum information that should be included in any bid package that Objecting Landlords will need to

---

Landlords reserve the right to object to any attempt to shorten their time to review and respond to any proposed assignee of the Leases by the Debtors beyond this already extremely compressed review period.

assess a potential assignee's viability. Objecting Landlords reserve the right to request further information they deem necessary to make an informed decision as to the ability of a potential assignee to satisfy the requirements of Section 365.

7.     The Debtors may not assume and assign the Leases unless there is adequate assurance of future performance under the Leases. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by maneuvering the assumption and assignment process through a sale process.

8.     Courts require a specific factual showing through competent evidence to determine whether a debtor demonstrates adequate assurance of future performance. *See e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented). To determine whether a party provides adequate assurance of future performance under Section 365(b), courts have looked to sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee. *In re Belize Airways*, 5 B.R. 152 (Bankr. S.D. Fla. 1980); *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. *In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D.N.Y. 1986).

9.     Section 365 requires that the Debtors provide adequate assurance of future performance information to carry their burden under Section 365, and without receipt of such information, the Objecting Landlords cannot assess the *bona fides* of any proposed assignee.[5]

---

[5] If the Objecting Landlords do not have sufficient information (or time) to make a determination as to a proposed assignee, or if the proposed assignee is unacceptable, the Objecting Landlords must object to the proposed sale and prepare for an evidentiary hearing. In preparation of such evidentiary hearing, Objecting Landlords must conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information gleaned from whatever information the Debtors, or any Successful Bidder, actually produces.

6

**B.    The Debtors must provide heightened Adequate Assurance Information required by Section 365(b)(3) for shopping center leases.**

10.    Most, if not all of the Leases, are shopping center leases, requiring a heightened demonstration of adequate assurance of future performance than is required by the general provision of Section 365(b)(1)(C). *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.),* 209 F.3d 291, 299 (3rd Cir. 2000). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

11.    These heightened requirements must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). *Sun TV and Appliances*, 234 B.R. at 370. Courts also require a specific factual showing through competent evidence to determine whether the Debtors can satisfy Section 365(b)(3)'s heightened adequate assurance of future performance requirements. *Matter of Haute Cuisine*, 58 B.R. at 394. The Global Bidding Procedures Motion fails to address this heightened standard, and the Bidding Procedures should advise bidders that they must satisfy this heightened standard in order to be eligible to take an assignment of the Leases.

**C. Any assumption and assignment must comply with the terms of the Leases.**

12. Through the BAPCPA[6] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). The BAPCPA clarified Section 365 to reflect the Congressional intent that the language of Section 365(f), and any ability to assume and assign the Leases, is subject to the protections of Section 365(b)(1) and (3). It does not modify Section 365(b). *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)). Therefore, any assignment must remain subject to all provisions of the Leases, including but not limited to those provisions concerning use, radius, exclusivity, and tenant mix and balance.

13. The Global Bidding Procedures Motion indicates that the Debtors may seek to render unenforceable any provision that expressly prohibit assignment, or has the effect of limiting assignment. *See* Global Bidding Procedures Motion at ¶ 54. The attempt to render unenforceable any provision that indirectly limits assignment is not only contrary to the law and the BAPCPA amendments, it would require the Bankruptcy Court to ignore specific Bankruptcy Code provisions that have the express purpose of protecting Objecting Landlords' rights under their Lease and other shopping center documents.

14. The revisions to Section 365 in the BAPCPA amendments make it clear that the Debtors cannot use Section 365(f) to render lease provisions (or provisions of other shopping center operating agreements, such as REAs) unenforceable. While certain provisions may indirectly limit the assignment of the Leases, Section 365(b) specifically protects these provisions. Provisions governing use, radius and the permitted conduct upon the Premises, therefore, are not anti-assignment provisions and Section 365(f) does not render them

---

[6] On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") went into effect, clarifying, *inter alia*, the protections that Landlords are entitled to under 11 U.S.C. § 365.

unenforceable. These are provisions negotiated in good faith that legitimately preserve the Objecting Landlords' control over their shopping centers. Section 365(b)(3) no longer permits even insubstantial breaches of provisions such as use, radius, location or exclusivity. The Bankruptcy Code is not intended to provide the Debtors with a carte blanche to unilaterally modify the terms of its agreements to the detriment of Objecting Landlords and their neighboring shopping center tenants. These critical lease or shopping center operating agreement terms are enforceable under Section 365(b), and this Court should deny any attempted assignment that fails to strictly comply with such provisions, and strike any language in an order that prospectively renders such lease provisions unenforceable.

**D.    Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations.**

15.    The Global Bidding Procedures Motion seeks authority for the sale the leases free and clear of liens, claims and encumbrances. The Objecting Landlords object to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. The Debtors continues to be responsible for all such unbilled charges as they come due under the Leases, and the Debtors, or an assignee, must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Leases cannot cut off the Objecting Landlords' right to recover unbilled charges that have accrued, or are accruing, under the Leases. If the Sale is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will ever be paid to the Landlords.

16.    Finally, the Leases provide that the Debtors must indemnify and hold the Objecting Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors

or their agents. Any order approving the assumption and assignment of the Leases must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that it can satisfy the indemnification obligations under the Leases for any such claims that relate to the period prior to any assumption and assignment of the Leases.

E. **Any designation rights must comply with the terms of the Leases.**

17. The Global Bidding Procedures Motion contemplates the designation of contracts and leases in accordance with the Stalking Horse Agreement until four days prior to the Sale Hearing. To the extent that the Court permits a Successful Bidder to operate the Debtors' stores during some designation period, such party must comply with all terms of the Leases during such period, and a designation procedures must be put in place. In addition, such bidder must be responsible for all obligations arising under the Leases during the time that it controls the Leases. If tax obligations, year-end reconciliations, or any other lease charges are billed or otherwise become due under the Leases during a designation period, the designation rights holder must satisfy (or arrange to have the Debtors satisfy) these amounts in full as an administrative expense of the Debtors' estate under Section 365(d)(3).

F. **Objecting Landlords bid on their leases.**

18. The Bidding Procedures outline the auction process for the sale of the Debtors' Assets. To the extent that the Court approves auction procedures for individual lease bids, the Bidding Procedures should include streamlined protocols for a landlord to bid on its own lease, as is customary in lease auctions in other cases. Landlords are the fee simple owners of their Premises and are positioned differently than other bidders – at least with respect to bidding on their own leases. Landlords do not need access to due diligence information for their own Premises, and should not have to provide financial information, adequate assurance of future performance information, or other information to bid on their own Leases. In addition, Objecting Landlords should be entitled to credit bid any portion of the outstanding amounts

owed under the Leases without the need of submitting a deposit. An Objecting Landlord's bid letter that evidences the bid on its Lease and agreement to execute an agreeable form of lease termination or other agreement, that provides the amount of any proposed credit or other bid, should be deemed to satisfy the bid requirement for an Objecting Landlord and entitle such Objecting Landlord to appear and participate at the auction.

G.     **The Court should hold a further hearing for any Back-Up Bidder.**

19.    The Bidding Procedures are silent on what happens in the event the Successful Bidder does not close on the Sale. In the unlikely event that the Successful Bidder drops out after the Sale Hearing, there will need to be some amount of time for Objecting Landlords to make a determination as to ability of the Back-Up Bidder to provide adequate assurance of future performance, and object, if necessary. In the event there are objections to the Back-Up Bidder, the Court should schedule a separate objection deadline and hearing to address any issues concerning the assumption and assignment of the Leases.

H.     **Objecting Landlords object to any waiver of Rules 6004(h) and 6006(d).**

20.    The Objecting Landlords object to any waiver of requirements of Federal Rule of Bankruptcy Procedure 6004(h) and 6006(d), especially to the extent it adversely affects the Objecting Landlords' appellate rights thereunder. Such a waiver is unnecessary and inequitable. These subsections were added to the Bankruptcy Rules specifically to protect the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under Sections 363 or 365. Objecting Landlords should not have their appellate rights compromised by an unnecessary and advance waiver of these protections, especially where the Debtors have not established any cause for such a waiver.

**III.**     **RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS**

21.    The Objecting Landlords reserve the rights to amend or modify the Limited Objection once the results of the Auction become known. Additionally, this Limited Objection

11

is without prejudice to Objecting Landlords' ability to raise further objections at the Sale Hearing and the Objecting Landlords reserve all rights to: (i) object to any request to assume and assign the Leases on any grounds, including objections based upon adequate assurance of future performance and the proposed use for any Premises; (ii) object to the form of any asset purchase agreement, agency agreement, or other document executed by the Debtors and the Successful Bidder; (iii) raise additional objections at any Sale Hearing; (iv) object to any attempt by the Debtors to designate any of the Leases; (v) require any attempted assignment to comply with all terms of the Leases; (vi) object to any request to conduct further store closing sales; and (vi) seek to continue the Sale Hearing.

22. To the extent consistent with the objections expressed herein, Objecting Landlords join in the objections of other landlords.

## IV.  CONCLUSION

Objecting Landlords request that the Court modify the Bidding Procedures such that Objecting Landlords receive Adequate Assurance Information from Qualified Bidders, and have time to review and file meaningful objections prior to any hearing on the assumption and assignment of the Leases. The Objecting Landlords also request that the Court incorporate the modifications raised by this Limited Objection, and grant such further relief as the Court deems proper.

Dated: November 9, 2018  
       New York, New York

Respectfully submitted,

*/s/ Paul E. Harner*  
Paul E. Harner, Esquire  
Alyssa E. Kutner, Esquire  
**Ballard Spahr LLP**  
919 Third Avenue  
New York, NY 10022  
Direct: (646) 346-8075  
Fax: (212) 223-1942  
Email: harnerp@ballardspahr.com  
       kutnera@ballardspahr.com

- and -

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
Email: pollack@ballardspahr.com

- and -

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

- and –

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
Email: heilmanl@ballardspahr.com

*Attorneys for Federal Realty Investment Trust, Acadia Realty Limited Partnership, PGIM Real Estate, Pacific Retail Group, WBCMT 2007-C33 Independence Center LLC, Starwood Retail Partners LLC, Kravco Company, Brixmor Brixmor Operating Partnership, L.P., Weitzman, Helios IV, LLC, Passco Hanford Mall, LLC, Centennial Real Estate Co., C. E. Johns Company, Inc., GEM Realty Capital, Inc., GS Pacific ER, LLC, The Macerich Company, Vintage Real Estate, LLC, White Plains Galleria Limited Partnership, C.J. Segerstrom & Sons, Heidenberg Properties, S-Tract LLC, and FBA Holdings, Inc.*

13

**SCHEDULE A**

| | | |
|---|---|---|
| | *Federal Realty Investment Trust* | |
| Store No. 3486 | Assembly Row | Sommerville, MA |
| Store No. Unknown | Hastings Ranch Plaza | Pasadena, CA |
| | *Acadia Realty Limited Partnership* | |
| Store No. 9416 | Crossroads | White Plains, NY |
| Store No. 3266 | Mark Plaza | Kingston, PA |
| | *PGIM Real Estate.* | |
| Store No. 1678 | El Camino North | Carlsbad, CA |
| Store No. | Gresham Town Fair | Gresham, OR |
| Store No. 1209 | Los Altos Marketcenter | Long Beach, CA |
| Store No. 3133 | Sunset Square | Bellingham, WA |
| | *CenterCal Properties, LLC* | |
| Store No. 2029 | Valley Mall | Union Gap, WA |
| | *WBCMT 2007-C33 Independence Center LLC* | |
| Store No. 1121 | Independence Center | Independence, MO |
| | *Starwood Retail Partners LLC* | |
| Store No. 1410 | Belden Village Mall | Canton, OH |
| Store No. 1840 | Chicago Ridge | Chicago Ridge, IL |
| Store No. 2191 | Gateway Mall | Lincoln, NE |
| Store No. 1710 | Great Northern Mall | North Olmstead, OH |
| Store No. 2309 | Kitsap Mall | Silverdale, WA |
| Store No. 1740 | Louis Joliet Mall | Louis Joliet, IL |
| Store No. 6518 | Northridge Mall | Salinas, CA |
| Store No. 1189 | Plaza West Covina | West Covina, CA |
| Store No. | SouthPark Mall | Strongsville, OH |
| Store No. 1345 | Westland Mall | Hialeah, FL |
| | *Kravco Company* | |
| Store No. Unknown | Hamilton Mall | Hamilton, NJ |
| | *Brixmor Operating Partnership, L.P.* | |
| Store No. 4478 | Hamilton Plaza | Hamilton, NJ |
| Store No. 4938 | Rollins Crossing | Round Lake Beach, IL |
| Store No. 2485 | Coastal Way | Brooksville, FL |
| Store No. 3393 | Collegetown Shopping Center | Glassboro, FL |
| Store No. 3713 | Covington Gallery | Covington, GA |
| Store No. 3807 | Fox Run Shopping Center | Prince Frederick, MD |

| | *Weitzman* | |
|---|---|---|
| Store No. Unknown | Golden Triangle Mall | Denton, TX |
| | *Passco Hanford Mall, LLC* | |
| Store No. Unknown | Hanford Mall | Hanford, CA |
| | *Centennial Real Estate Co* | |
| Store No. 1134 | Connecticut Post | Milford, CT |
| Store No. | Fox Valley Mall | Aurora, IL |
| Store No. | Hawthorn Mall | Vernon Hills, IL |
| Store No. | Pueblo Mall | Pueblo, CO |
| Store No. 2029 | Vancouver Mall | Vancouver, WA |
| | *C. E. Johns Company, Inc.* | |
| Store No. 2119 | Lancaster Mall | Salem (Lancaster), OR |
| | *GS Pacific ER, LLC* | |
| Store No. 1488 | Eastridge Center | San Jose, CA |
| | *The Macerich Company* | |
| Store No. 1228 | Arden Fair Mall | Sacramento, CA |
| Store No. 1798 | Arrowhead Towne Center | Glendale, AZ |
| Store No. 1169 | Chandler Fashion Center | Chandler, AZ |
| Store No. 1733 | Cross County Shopping Center | Yonkers, NY |
| Store No. 1303 | Danbury Fair Mall | Danbury, CT |
| Store No. 1464 | Deptford Mall | Deptford, NJ |
| Store No. 1708 | Desert Sky Mall | Phoenix, AZ |
| Store No. 1204 | Freehold Raceway | Freehold, NJ |
| Store No. 1924 | Green Acres Mall | Valley Stream, NY |
| Store No. 1398 | Inland Center | San Bernardino, CA |
| Store No. 2138 | La Cumbre Plaza | Santa Barbara, CA |
| Store No. 1518 | Los Cerritos Center | Cerritos, CA |
| Store No. 2760 | NorthPark Mall | Davenport, IA |
| Store No. 1148 | Pacific View | Ventura, CA |
| Store No. 1768 | Paradise Valley Mall | Phoenix, AZ |
| Store No. 1247 | South Plains Mall | Lubbock, TX |
| Store No. 1309 | Stonewood Center | Downey, CA |

| | | |
|---|---|---|
| Store No. 1078 | Superstition Springs | Mesa, AZ |
| Store No. 2829 | The Mall of Victor Valley | Victorville, CA |
| Store No. 1618 | Vintage Faire Mall | Modesto, CA |
| Store No. 1079 | Washington Square | Portland, OR |
| Store No. 3065 | Wilton Mall | Saratoga Springs, NY |
| *Vintage Real Estate, LLC* | | |
| Store No. 1650 | Southlake Mall | Merrillville, IN |
| Store No. 1133 | The Mall at Whitney Field | Leominster, MA |
| *White Plains Galleria Limited Partnership* | | |
| Store No. 1674 | Galleria at White Plains | White Plains, NY |
| *Heidenberg Properties* | | |
| Store No. 7470 | Hershey Square | Hummelstown, PA |
| Store No. 2415 | Lake Plaza Shopping Center | Mahopac, NY |
| *Helios IV, LLC* | | |
| Store No. Unknown | 15500 Greenway-Hayden Loop | Scottsdale, AZ |
| *S-Tract LLC* | | |
| Store No. 1388 | Southcoast Plaza | Costa Mesa, CA |