Hearing Date and Time: November 15, 2018 at 10:00 a.m. (Eastern Time)
Objection Deadline: November 9, 2018

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
Sara L. Brauner

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | : | |
| **In re** | : | Chapter 11 |
| | : | |
| **SEARS HOLDINGS CORPORATION, *et al*.,** | : | Case No. 18-23538 (RDD) |
| | : | |
| **Debtors.**[1] | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------------------------------------

### PRELIMINARY OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SEARS HOLDINGS CORPORATION, *ET AL*. TO DEBTORS' MOTION FOR APPROVAL OF GLOBAL BIDDING PROCEDURES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears

Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the

"Debtors" and, together with their non-Debtor affiliates, "Sears"), by and through its

undersigned proposed counsel, hereby submits this preliminary objection (the "Preliminary

Objection") to the *Debtors' Motion for Approval of Global Bidding Procedures* [ECF No. 429]

(the "Motion").[2]  In support of this Preliminary Objection, the Creditors' Committee respectfully

states as follows.

## PRELIMINARY OBJECTION

1.      By the Motion, the Debtors propose Global Bidding Procedures to sell their

assets, with the principal focus on the sale of approximately 400 stores (the "Go Forward

Stores") as a going concern.  The Debtors, however, neglect entirely to inform this Court and

their stakeholders that this process may come at an enormous cost.  If approved, the Global

Bidding Procedures will lock the Debtors into a three-to-fourth month process for a going-

concern sale of the Go Forward Stores (the "Going Concern Sale Process").  The pursuit of this

option (*i.e.*, seeing whether a bidder materializes for the Go Forward Stores) is estimated to cost

the Debtors' estates approximately between $375 million and $500 million (based on a cash burn

rate of $125 million a month), plus additional DIP financing in an amount at least commensurate

with the projected cash burn.  *See Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of*

*Local Bankruptcy Rules for Southern District of New York* [ECF No. 3] (the "First Day

Declaration") ¶ 16.  In order to obtain this additional DIP financing, the Debtors will be required

to provide as collateral previously unencumbered assets (worth at least hundreds of millions of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

dollars). Accordingly, unsecured creditors will bear the entire cost of pursuing a Going Concern

Sale Process.

2.      Since the commencement of these chapter 11 cases, the Debtors' message has

been consistent:  there remains a viable future for Sears, anchored to the sale of Go Forward

Stores. *See* First Day Declaration ¶ 15.  According to the Debtors, such a going-concern sale

will "right size" the business and enable Sears to emerge from the chapter 11 cases as a "more

streamlined" and "profitable" version of itself. *Id*. ¶ 17.  The Creditors' Committee commends

the Debtors' hope for a successful transaction that will preserve the Sears enterprise for the

benefit of employees and future generations of consumers.  As a fiduciary, however, the

Creditors' Committee can only support such a process to the extent it is in the best interests of

the Debtors' estates and their creditors.  Accordingly, since its formation a week before the filing

of the Motion, the Creditors' Committee, along with its professionals, has worked tirelessly to

assess the feasibility of the Going Concern Sale Process.

3.      The fundamental question with which the Creditors' Committee must grapple is

whether the Going Concern Sale Process will maximize value, as compared to a near term GOB

process.  To date, the Creditors' Committee has been unable to answer that question in the

affirmative and, thus, cannot support the Debtors' decision to pursue the Going Concern Sale

Process as currently structured.  Indeed, the Creditors' Committee remains unconvinced that the

Going Concern Sale Process is a prudent use of the Debtors' dwindling resources and in the best

interests of their estates and creditors.

4.      *First*, the Go Forward Store "business plan" appears to be nothing more than

wishful thinking, as it will require a reduction in the Debtors' excessive selling, general and

administrative expenses by almost two-thirds to return to profitability, a feat the Debtors could

3

not accomplish in the six years leading up to the commencement of their chapter 11 cases.

Indeed, the Debtors have not provided the Creditors' Committee and its professionals with basic

qualitative data necessary to evaluate the Debtors' proposed going concern structure or the sale

process attendant thereto. The Creditors' Committee doubts whether a successful business plan

will (or can) ever be prepared. For example, the Debtors have yet to provide the Creditors'

Committee with a business plan demonstrating that the Go Forward Stores can be profitable or

that estimates the many millions of dollars of costs to transition to such a Go Forward Store

business. This begs another question: How did the Debtors themselves make the determination

that pursuing the Going Concern Sale Process is a sound exercise of business judgment,

particularly in light of the Debtors' current cash burn rate of $125 million per month? *See* First

Day Declaration ¶ 16. Surprisingly, upon information and belief, the Debtors have yet to prepare

an analysis comparing their Go Forward Stores plan to a liquidation. Unfortunately, and

notwithstanding desires to the contrary, continuing to operate as a going concern may no longer

be an option for these Debtors. *Second*, the decision to pursue this path will cost hundreds of

millions of dollars and the Debtors, who have the burden of justifying this course of action, have

been unable to provide the comfort or guidance to their creditors that the net realizable proceeds

will exceed the cost of pursuing the Going Concern Sale Process. *Finally*, any decision to pursue

this option should be informed by what unsecured creditors, whose money is at stake, believe is

appropriate.

5.      The Creditors' Committee's diligence to date indicates that conducting the Going

Concern Sale Process may require the Debtors to incur substantial expenses, but without any

cognizable expectation of success. Indeed, assuming just a conservative three-month timeline

from approval of the Motion to the closing of a going concern sale, the Debtors will burn

4

approximately $375 million in cash based on the burn rate identified in the First Day

Declaration.  By contrast, pursuing GOB sales for all of the Debtors' stores during the same time

period may maximize the value of the Debtors' estates.  Fundamentally, the Debtors are pursuing

an unjustified and foolhardy gamble with other people's money.

6.      Furthermore, the Debtors have acknowledged that, in light of their significant

monthly cash burn, they will not have the liquidity necessary to run the Going Concern Sale

Process without incurring junior DIP financing in addition to the DIP financing already in place.

The collateral for the junior DIP financing would comprise assets that were unencumbered

prepetition—assets that otherwise would be available for unsecured creditors.  Based on the

Debtors' projections, if the Going Concern Sale Process is not successful (and there is no

indication that it will be), the value encumbered by the junior DIP facility may be lost.  The stark

reality is that if the Going Concern Sale Process fails, the costs incurred in connection

therewith—coupled with the ABL DIP Facility and additional junior DIP—may leave the

Debtors' estates administratively insolvent.  *See* First Day Declaration ¶ 13 (noting that the

Debtors' liquidity needs "***should*** [be] adequately address[ed]" by the combination of the DIP

ABL [F]acility, the Junior DIP and the proceeds of contemplated going out of business sales)

(emphasis added).

7.      The Creditors' Committee recognizes the uncertainty surrounding any potential

sale and the difficulty of predicting how best to maximize value for the Debtors' estates on an

unavoidably compressed timeline.  However, without reliable data to support the Going Concern

Sale Process, the risks and costs attendant thereto are too great for the Court to permit the

Debtors to play out this option on the backs of the Debtors' unsecured creditors.

8.      The Creditors' Committee has a meeting scheduled with the Debtors for November 12, 2018—three days before the hearing on the Motion.  The agenda for the November 12 meeting purportedly will include newly compiled qualitative data to justify the Going Concern Sale Process.  The Creditors' Committee is hopeful that will be the case.  If, as expected, the data indicate that the projected costs of pursuing the Going Concern Sale Process outweigh the realistic and cognizable benefits that may be obtained, the Creditors' Committee will have no choice but to request that the Court deny the relief requested in the Motion as it pertains to the sale of Go Forward Stores.

9.      In addition to the uncertainty surrounding the bona fides of the Going Concern Sale Process generally, the contemplated Global Bidding Procedures fail to define with any specificity the assets to be sold in connection with such process or any other asset sale.  Similarly, the procedures provide little to no guidance to prospective bidders on the process for bidding on any assets other than the Go Forward Stores.  The vague and uncertain procedures relating to the sales of the Go Forward Stores and the Debtors' Other Assets, coupled with a condensed timeframe in which potential bidders may conduct due diligence, results in confusion by legitimate third party potential buyers and a clear advantage to insiders.

10.      Confirming the Creditors' Committee's concern, only one bidder has emerged publicly for the Go Forward Stores:  Edward Lampert's ESL Investments, Inc. (together with its principals and affiliates, "ESL").  Now that the Debtors have sought bankruptcy protection, however, they no longer can construct transactions for the benefit of ESL.  Based on the sheer magnitude of the Debtors' overhead expenses and the need for a streamlined or pre-existing infrastructure to operate the Go Forward Stores, the only potential buyers for such assets, in addition to ESL, are strategic buyers.  However, upon information and belief, the Debtors have

yet to contact any strategic buyers (which may be the only other practical potential purchasers of the Go Forward Stores) with respect to the Go Forward Stores. Thus, in addition to the Creditors' Committee's questions regarding the motive behind the Going Concern Sale Process, the Creditors' Committee is concerned that ESL will emerge as the only bidder for such assets. A process geared toward a purely ESL-driven solution does not withstand scrutiny.

11.    If, a month from now, ESL is the only bidder for the Go Forward Stores, the Debtors will find themselves in an impossible situation. They will have saddled their estates with significant additional debt in connection with a junior DIP facility and consumed over $300 million in additional operational losses to find a lone, pre-existing insider bidder, intent on credit bidding claims that may be subject to avoidance or subordination.

12.    Both the Creditors' Committee and a subcommittee of the special committee of the Board (the "RSC") are investigating a series of complex related-party prepetition transactions involving ESL and assessing whether causes of action exist with respect thereto. Indeed, the Debtors made clear on the first day of these cases that causes of action arising from affiliate transactions involving ESL prior to the Petition Date may exist. *See* First Day Declaration ¶ 12. The likelihood that either the Creditors' Committee or the RSC will have finished these analyses by December 28—the Debtors' proposed deadline to object to the Stalking Horse Bid for the Go Forward Stores—is remote. In light of the foregoing, the Creditors' Committee respectfully submits that the Global Bid Procedures expressly should provide that ESL cannot credit bid on any assets that the Debtors propose to sell, whether for the Go Forward Stores or otherwise, until the Creditors' Committee completes its investigation and determines whether to pursue claims and causes of action against ESL.

13.      The Creditors' Committee's concerns with ESL as a bidder are not limited to its potential status as a Stalking Horse Bidder and the narrow window that the Global Bidding Procedures would provide to object to ESL's claims by December 28.  ESL also could emerge as a Potential Bidder following the proposed December 28, 2018 Bid Deadline for the Go Forward Stores.  If the Debtors were to designate ESL as a Qualified Bidder on January 4, the Bidding Procedures effectively would provide no time for the Creditors' Committee to object to ESL receiving such designation in advance of a January 14 auction.  In short, if ESL wants to bid on the Debtors' assets, it should be required to bid in cash.  If ESL is declared the winning bidder for any of the Debtors' assets following an auction and is vindicated by the Subcommittee's and the Creditors' Committee's investigations, ESL will receive the consideration it paid as part of its treatment under a confirmed chapter 11 plan.[3]

14.      The Creditors' Committee intends to supplement this Preliminary Objection in advance of the hearing on the Motion based on data that will be provided to the Creditors' Committee at the meeting scheduled for November 12 and after due consideration and analysis thereof.  In addition, the Creditors' Committee has served certain informal discovery requests in connection with the Motion.  The Debtors are continuing to produce materials in response to such requests.  Accordingly, the Creditors' Committee reserves its right to raise additional objections to the Global Bidding Procedures and any and all other documents arising from or relating to the Motion based on the results of discovery.[4]

15.      To the extent the Court is inclined to permit the Debtors to pursue the Going Concern Sale Process, the Creditors' Committee respectfully requests that the Court schedule an

---

[3] Moreover, the Debtors have not yet identified which stores and underlying assets will be marketed as Go Forward Stores.  Accordingly, the Creditors' Committee has no way to determine the extent of ESL's secured claims that could form the basis of a Credit Bid.

[4] In view of ongoing discovery, the Creditors' Committee may file a declaration in support of this Objection.

interim hearing for December 17, 2018, during which the Debtors will provide a status update

regarding indications of interest they have received so that the Court, the Creditors' Committee

and other parties in interest can better evaluate whether continuing to pursue a sale of the Go

Forward Stores as a going concern represents a sound exercise of the Debtors' business

judgment.

16.    Finally, the Creditors' Committee is continuing to work with the Debtors to

resolve issues it has raised in connection with a number of the procedural provisions of the

Global Bidding Procedures.  The Creditors' Committee is cautiously optimistic that such issues

will be resolved.  In the event a resolution is not reached by November 12, however, the

Creditors' Committee will supplement this Preliminary Objection to address specific concerns

with such procedures.


New York, New York
Dated:  November 9, 2018

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/  *Ira S. Dizengoff*
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
aqureshi@akingump.com
sbrauner@akingump.com

*Proposed Counsel to the Official Committee of
Unsecured Creditors of Sears Holdings
Corporation, et al.*