Hearing Date and Time: November 13, 2018 at 1:00 p.m. (Eastern Time)
Objection Date and Time: November 13, 2018 at 1:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re                                        :
                                             :      Chapter 11
SEARS HOLDINGS CORPORATION, et al.,          :
                                             :      Case No. 18-23538 (RDD)
                                             :
                   Debtors.[1]               :      (Jointly Administered)
------------------------------------------------------------x
```

# NOTICE OF HEARING ON EMERGENCY MOTION OF DEBTORS FOR ORDER APPROVING SALE OF MEDIUM TERM NOTES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to section 363 of chapter 11 of title 11 of the United States Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for authority, but not direction to sell certain medium term notes, all as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **November 13, 2018 at 1:00 p.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion may be asserted in writing or orally at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: November 9, 2018
     New York, New York

                                    /s/ Jacqueline Marcus
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York  10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Ray C. Schrock, P.C.
                                    Jacqueline Marcus
                                    Garrett A. Fail
                                    Sunny Singh

                                    *Proposed Attorneys for Debtors*
                                    *and Debtors in Possession*

**Hearing Date and Time: November 13, 2018 at 1:00 p.m. (Eastern Time)**
**Objection Date and Time: November 13, 2018 at 1:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                      :
                                                           :    **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                  :
                                                           :    **Case No. 18-23538 (RDD)**
                                                           :
Debtors.[1]                                                :    **(Jointly Administered)**
------------------------------------------------------------x

# EMERGENCY MOTION OF DEBTORS
# FOR ORDER APPROVING SALE
# OF MEDIUM TERM NOTES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for*

*Southern District of New York*, sworn on October 15, 2018 (the "**Riecker Declaration**") (ECF No. 3).[2]

### Jurisdiction

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

6.     By this Motion, the Debtors request, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(a) of the Bankruptcy Rules, authority to sell certain SRAC Medium Term Notes Series B (the "**MTNs**") issued by Debtor Sears Roebuck Acceptance Corp. ("**SRAC**") and currently owned by various other Debtors.  As described below, the Debtors have a unique opportunity to sell the MTNs and maximize their value for the benefit of all creditors, but only if a sale can be accomplished expeditiously.  Hence the Debtors, with the support of the Creditors' Committee, request that the Court authorize them to proceed with the proposed sale.

7.     A proposed form of order granting the relief requested in the Motion is attached hereto as **Exhibit A** (the "**Proposed Order**").

### The MTNs

8.     Pursuant to the Indenture, dated as of October 1, 2002 (as amended, supplemented or otherwise modified prior to the date hereof, the "**2002 SRAC Indenture**"), between SRAC and The Bank of New York Mellon Trust Company, N.A., as successor trustee,

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Riecker Declaration.

3

SRAC issued the MTNs, which have various interest rates and maturities. All of the MTNs are held by affiliates of the Company. As of the Commencement Date, the outstanding principal amount of the MTNs was approximately $2.3 billion, plus unliquidated amounts including interest thereon and fees, expenses, charges, and other obligations incurred in connection therewith as provided under the 2002 SRAC Indenture. Approximately $1.4 billion of the MTNs are held by Sears Reinsurance Company Ltd., a non-Debtor affiliate of the Company.

### The Credit Default Swaps

9. SRAC is the "Reference Entity" under certain credit default swap ("**CDS**") contracts, pursuant to which various third parties either purchased or sold credit protection with respect to the Company. The commencement of the chapter 11 cases was a credit event that requires the sellers of credit protection to pay the buyers of credit protection an amount (a "**Settlement Amount**") equal to the notional amount of the credit protection purchased times a percentage equal to 100% minus the value (the "**Recovery Percentage**") of certain qualifying obligations of the Company, such as the MTNs (such difference, the "**Loss Percentage**").

10. Under the terms of the CDS, the Loss Percentage and, therefore, the Settlement Amount, will be determined at an auction (the "**Auction**") conducted by the International Swaps and Derivatives Association ("**ISDA**") in which buyers of credit protection who so desire can sell qualifying obligations of the Company, and sellers of credit protection who so desire can purchase qualifying obligations of the Company, at a price determined at the Auction. Whether or not a buyer or a seller of credit protection participates in the Auction, buyers are entitled to receive, and sellers are obligated to pay, the Settlement Amount on the CDS to which they are a party. The Auction ensures that a buyer of credit protection who wishes

4

to receive no less than the full par amount of the bonds for which it has purchased credit protection is able to do so by selling its bonds into the Auction and receiving the Recovery Percentage of the par amount of its bonds at the Auction, and then receiving the Loss Percentage thereof from its seller of credit protection, for a total of 100%. Sellers of credit protection are motivated to participate in the Auction, too, because the higher the price they pay at the Auction, the lower the Settlement Percentage that they have to pay on the CDS. Thus, sellers of credit protection are likely to purchase qualifying obligations at the Auction at a price higher than they would be willing to pay outside the Auction.

11.     Because sellers of credit protection are likely to pay relatively high prices at the Auction, buyers of credit protection, who are eligible to sell qualifying obligations into the Auction, frequently will compete in the days leading up to an Auction to find qualifying obligations that they can sell at the Auction for top dollar. This competition drives up the price of qualifying obligations, like the MTNs, in order to tender them into the Auction. The specter of the Auction creates a demand for the MTNs and confers a value that is greater than a value derived simply from the collectability of the MTNs and their relative priority in the Debtors' capital structure. Although the Debtors are not eligible to sell the MTNs directly into the Auction because they are not buyers of credit protection, they can benefit from the spike in the price of the bonds immediately before the Auction by selling the MTNs to entities that are. Consequently, there is an opportunity for the Debtors to monetize their interest in the MTNs at a favorable price — an opportunity that likely will be gone after the Auction is concluded.

**Timing of the Auction**

12. The Auction currently is scheduled for November 14, 2018. Thus, to be able to take advantage of favorable market forces and maximize the value of the MTNs, the Debtors must be able to effect a transfer of the MTNs prior to November 14, 2018.

13. The Debtors have already taken steps to preserve the opportunity to sell the MTNs. For example, on November 7, 2018, the Debtors requested that the Determinations Committee of ISDA include the MTNs held by the Debtors as obligations that may be delivered into the Auction. As of the evening of November 7, 2018, ISDA had included the MTNs on a preliminary list of obligations that may be delivered into the Auction. Under ISDA's procedures, ISDA is required to publish a final list of deliverable obligations in advance of the Auction. Market participants may then challenge ISDA's determination that the MTNs are deliverable obligations. The Debtors have been advised that, in the event of a challenge, ISDA is likely to postpone the Auction.

14. In addition, at least one market participant has requested that ISDA postpone the Auction. A postponement of the Auction will make it more likely that the Debtors will be able to consummate a sale of the MTNs. As of the date hereof, however, the Auction has not been postponed. Consequently, the Debtors are seeking the authorization of the Court to proceed upon admittedly short notice.

**The Sale Process**

15. Given the extremely compressed time frame with which they are working, the Debtors determined that the quickest and most efficient way to sell the MTNs would be to retain a nationally recognized broker/dealer which will contact all potentially interested parties and run a sale process. The Debtors' financial advisor contacted Barclays Bank PLC, Credit

6

Suisse Securities (USA) LLC, Jefferies, Morgan Stanley & Co., LLC, and Goldman Sachs, all of which are eminently qualified to manage the sale process, and requested that they provide proposals to act as broker/principal in connection with the sale of the MTNs.

16. The Debtors received proposals from Barclays Bank PLC, Credit Suisse Securities (USA) LLC, Jefferies, and Morgan Stanley & Co., LLC. After review of the various proposals, the Debtors determined that the terms offered by Jefferies are the most favorable. Jefferies has confirmed that it does not have any position in the CDS and, therefore, has no conflicts of interest. Consequently, the Debtors have agreed to engage the services of Jefferies, on the terms summarized below:

- Jefferies will contact potentially interested parties and request that they make firm bids to purchase all or a portion of the Debtors' MTNs.

- Jefferies will work with the Debtors' advisors to evaluate the bids received and will work to negotiate the best possible terms on behalf of the Debtors.

- Jefferies will be paid a fee equal to two percent (2%) of the proceeds of the sale of the MTNs (the "**Jefferies Brokerage Fee**").

17. Importantly, the agreement among the Debtors and Jefferies does not require the Debtors to sell the MTNs and preserves for the Debtors the ultimate decision-making authority to accept any or all bids. No fees will be due or payable to Jefferies if the Debtors, in the exercise of their business judgment, determine not to sell the MTNs.

18. The Debtors seek authorization to conduct a sale that will be managed by Jefferies and to sell the MTNs to the party providing the higher or best bid, as determined by the Debtors, as a result of the sale process conducted by Jefferies.

**The Relief Requested Should Be Granted**

19. The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

20. Under section 363(b) of the Bankruptcy Code, for the purpose of a sale of assets outside the ordinary course, the Debtors need only show a legitimate business justification for the proposed action. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.") (citation omitted). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption "'that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F. 3d 29 (2d Cir. 1993). Accordingly, parties challenging a debtor's decision must make a showing of "bad faith, self-interest or gross negligence." *In re Integrated Res.*, 147 B.R. at 656 (citations omitted).

21. Under section 363(f) of the Bankruptcy Code, the Debtors may also sell the MTNs free and clear of all liens, claims, and encumbrances. Section 363(f) states that a

8

debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)–(5). Any lienholders that do not object to the sale of the MTNs should be deemed to have consented to such sale. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) (stating that lack of objection to a free and clear sale counts as consent); *Hargrave v. Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (finding failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2) of the Bankruptcy Code); *Citicorp Homeowners Serv., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345–46 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, Case No. 01-16034, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).

22. The Court also has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers Bankruptcy Courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Section 1107(a) of the Bankruptcy Code "contains an implied

9

duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

### The Purchaser(s) of the MTNs Is Entitled to the Protection of Bankruptcy Code Section 363(m)

23. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).

24. Section 363(m) of the Bankruptcy Code fosters the "'policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely.'" *Reloeb Co. v. LTV Corp (In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. May 10, 1993) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith

transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal"). The Second Circuit has held that a purchaser's good faith is shown by the integrity of his or her conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made. *See, e.g., Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (holding that a purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (internal citations omitted).

25. Any entity to whom the Debtors sell the MTNs will have participated in an auction process administered by Jefferies. The ground rules set forth for the auction will ensure that any purchaser(s) has proceeded in good faith and without collusion. Further, the sale procedures will be designed to produce a fair, transparent, and competitive bidding process. Accordingly, the Debtors seek a finding that any purchaser(s) selected by the Debtors is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

26. The relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under section 363(b) of the Bankruptcy Code. Notably, the Creditors' Committee supports the Debtors' decision to sell the MTNs. Moreover, all net proceeds of the proposed sale would be used to partially fund the Winddown Account (as defined in the *Interim Order (I) Authorizing The Debtors To (A) Obtain Post-Petition Financing, (B) Grant Senior Secured*

11

*Priming Liens And Superpriority Administrative Expense Claims, And (C) Utilize Cash Collateral; (II) Granting Adequate Protection To The Prepetition Secured Parties; (III) Modifying The Automatic Stay; (IV) Scheduling Final Hearing; And (V) Granting Related Relief*, dated October 16, 2018 (ECF No. 101)), thereby helping to ensure that the Debtors will have the wherewithal to pay their administrative expenses. The proposed sale is a one-time opportunity and failure to participate will result in a loss of value for the Debtors' estates.

### Reservation of Rights

27.     Notwithstanding anything contained in the Motion or the Proposed Order, the Debtors reserve the right not to proceed with a sale of the MTNs or to sell fewer or all of the MTNs, in their business judgment, after consultation with the Creditors' Committee.

### Notice

28.     Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"). The Debtors respectfully submit that no further notice is required. Contemporaneously herewith, the Debtors are filing a motion seeking to shorten the notice of the hearing to be held with respect to the Motion.

29.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: November 9, 2018
      New York, New York

                         /s/ Jacqueline Marcus
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile:  (212) 310-8007
                        Ray C. Schrock, P.C.
                        Jacqueline Marcus
                        Garrett A. Fail
                        Sunny Singh

                        *Proposed Attorneys for Debtors*
                        *and Debtors in Possession*

WEIL:\96763758\11\73217.00034

## Exhibit A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-----------------------------------------------------------------x

**ORDER AUTHORIZING DEBTORS TO SELL**
**MEDIUM TERM  NOTES**

Upon the motion, (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 6004(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), for an order authorizing, but not directing, the Debtors to sell certain medium term notes, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

§§ 157(a)–(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on November 13, 2018 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested provides a benefit to the Debtors and their estates, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted to the extent set forth herein.

2. The Debtors are authorized, but not directed, in consultation with the Creditors' Committee, to sell the MTNs to the party or parties that provide the highest or best offer and to deposit all net proceeds of the sale(s) into the Winddown Account, as provided in the DIP Orders (as defined below).

3. In light of the fact that the sale of the MTNs may result in an increase in the amount of allowed claims at SRAC, in connection with the chapter 11 plan process, the Debtors and the Creditors' Committee will agree upon a true-up mechanism to ensure that SRAC and its creditors are not adversely affected as a result of the sale of the MTNs.

4. To the extent that the Debtors sell the MTNs, Jefferies may deduct the Jefferies Brokerage Fee from the gross proceeds of such sale.

5. Pursuant to section 363(f) of the Bankruptcy Code, the MTNs being sold shall be sold free and clear of any and all liens, claims, and encumbrances (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately before the closing of the applicable sale.

6. Any entity that purchases MTNs from the Debtors pursuant to the authority granted in this Order shall be deemed to have purchased the MTNs in good faith and shall be entitled to the protections set forth in section 363(m) of the Bankruptcy Code; provided, that nothing contained in this Order shall waive any rights of the Debtors, the Creditors' Committee or any other party or governmental entity to the extent it is determined that a party engaged in inappropriate conduct with respect to the transactions contemplated by this Order.

7. Notwithstanding anything contained in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

8. To the extent there is any inconsistency between the terms of any of the DIP Orders or this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

10. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated:             , 2018
       White Plains, New York

                                                                   _____
                                                                   THE HONORABLE ROBERT D. DRAIN
                                                                   UNITED STATES BANKRUPTCY JUDGE