Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
        lschildkraut@archerlaw.com

        and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
        nsmith@robbins-schwartz.com

        and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

Hearing Date: December 20, 2018
Hearing Time: 10:00 A.M.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) | Case No. 18-23538 (RDD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

———————————————————————

**NOTICE OF MOTION OF
COMMUNITY UNIT SCHOOL DISTRICT 300
FOR RELIEF FROM THE AUTOMATIC STAY
OR, IN THE ALTERNATIVE, FOR ABSTENTION**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      A hearing to consider the motion (the "**Motion**") of Community Unit School District 300, an Illinois school district (the "**School District**"), for relief from the automatic stay, pursuant to Section 362(d)(1) of the United States Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, or in the alternative, for the Court to abstain, pursuant to Sections 1334(c)(1) and (2) of the Bankruptcy Code, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on **December 20, 2018 at 10:00 A.M.**

2.      Objections, if any, to the Motion must be made in writing, with a hard copy delivered to the Chambers of the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601; conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; be filed with the Bankruptcy Court; and be served in accordance with the provisions of General Order M-399 of this Court on the following parties:

> (i) (a) Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017 (Attn: Allen G. Kadish, Esq. and Lance A. Schildkraut, Esq.); (b) Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., 631 E. Boughton Road, Suite 200, Bolingbrook, Illinois 60440 (Attn: Kenneth M. Florey, Esq. and M. Neal Smith, Esq.); (c) Gensburg Calandriello & Kanter, P.C., 200 West Adams Street, Suite 2425, Chicago, Illinois 60606 (Attn: Matthew T. Gensburg, Esq.); attorneys for the School District;

> (ii) the Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates, Illinois 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.);

(iii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors;

(iv) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.);

(v) Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R. Howard, Esq.), attorneys for Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent;

(vi) Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.), attorneys for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility;

(vii) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 (Attn: Sean A. O'Neal, Esq.), attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility;

(viii) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.), attorneys for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes;

(ix) Seyfarth Shaw LLP, 620 Eighth Avenue, New York, New York 10018 (Attn: Edward M. Fox, Esq.), attorneys for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes;

(x) Carter Ledyard & Milburn LLP, 2 Wall Street, New York, New York 10015 (Attn: James Gadsden, Esq.), attorneys for The Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes;

(xi) Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Brian A. Raynor, Esq.), attorneys for the Pension Benefit Guaranty Corporation;

(xii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff, Esq., Philip C. Dublin, Esq., Abid Qureshi, Esq., Joseph L. Sorkin, Esq.), attorneys for the Official Committee of Unsecured Creditors;

(xiii) the attorneys for any other committee(s) that may be appointed in these chapter 11 cases;

(xiv) any person or entity with a particularized interest in the subject matter of the relevant document; and

(xv) all persons and entities that have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002 and the Case Management Procedures,

so as to be actually received by them not later than **December 13, 2018** (the "**Objection Deadline**").

3.     If no objections are timely filed and served, the School District may, on or after the Objection Deadline, submit the proposed order to the Court substantially in the form attached hereto, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
       November 12, 2018

ARCHER & GREINER, P.C.


By:    s/ Allen G. Kadish
    Allen G. Kadish
    Lance A. Schildkraut
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
       lschildkraut@archerlaw.com

and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
       nsmith@robbins-schwartz.com

and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

215438766v1

Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
        lschildkraut@archerlaw.com

        and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
        nsmith@robbins-schwartz.com

        and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.,* | ) | Case No. 18-23538 (RDD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

———————————————————————

## MOTION OF COMMUNITY UNIT SCHOOL DISTRICT 300
## FOR RELIEF FROM THE AUTOMATIC STAY
## OR, IN THE ALTERNATIVE, FOR ABSTENTION

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. JURISDICTION AND VENUE.................................................................................. 2

III. BACKGROUND ...................................................................................................... 2

    A.    The Illinois Sears EDA Act ................................................................................ 2

    B.    The Illinois Action and Pending Motion for Injunction ...................................... 5

    C.    The School District ............................................................................................. 5

IV. ARGUMENT............................................................................................................ 6

    A.    STANDARD FOR LIFTING A BANKRUPTCY STAY .................................... 6

    B.    APPLICATION OF THE *SONNAX* FACTORS .................................................. 7

    C.    THE COURT MUST ABSTAIN.................................................................... 11

    D.    THE COURT SHOULD PERMISSIVELY ABSTAIN .................................... 13

V. WAIVER OF STAY ................................................................................................ 14

VI. NOTICE.................................................................................................................. 15

VII. CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cody, Inc. v. County of Orange & Town of Woodbury* (*In re Cody, Inc.*),
    281 B.R. 182 (S.D.N.Y. 2002)...............................................................................13

*In re Great Atlantic & Pacific Tea Company, Inc.*,
    467 B.R. 44 (S.D.N.Y. 2012).....................................................................................7

*IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP* (*In re Amanat*),
    338 B.R. 574 (Bankr. S.D.N.Y. 2005) ....................................................................12

*In re James T. Metz*,
    165 B.R. 767 (Bankr. E.D.N.Y. 1994).................................................................9, 10

*In re Ne. Indus. Dev. Corp.*,
    513 B.R. 825, 837-38 (Bankr. S.D.N.Y. 2014).......................................................12

*In re Portrait Corporation of America, Inc.*,
    406 B.R. 637 (Bankr. S.D.N.Y. 2009) ....................................................................13

*In re Project Orange Associates, LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010) ..........................................................6, 7, 9, 10

*In re Residential Capital, LLC*,
    519 B.R. 890 (Bankr. S.D.N.Y. 2014) ......................................................................7

*Rosetta Res. Operating LP Calpine Corp. v. Pogo Producing Co. (In re Calpine
    Corp.)*, 361 B.R. 665 (Bankr. S.D.N.Y. 2007) ......................................................13

*Sonnax Indus., Inc. v. Tri-Component Prod. Corp. (In re Sonnax Indus., Inc.)*,
    907 F. 2d 1280 (2d Cir. 1990)........................................................................6, 7, 11

**Illinois Compiled Statutes**

20 ILCS 620/1, *et seq.*, Economic Development Area and Tax Increment
    Allocation Act (the "Illinois Sears EDA Act") ...................................... 1, 2, *passim*

20 ILCS 620/4(g) .....................................................................................................3

35 ILCS 10/5-1 .................................................................................................1, 3, 4

150 ILCS 5/1-1, *et seq.* ............................................................................................1

**Statutes**

11 U.S.C. §362(a)(1) ................................................................................................................6

11 U.S.C. §362(d)(1) ...........................................................................................1, 2, 6, 15, 16

11 U.S.C. §362(e) ...........................................................................................................14, 15

28 U.S.C. §157(b)(2) ...............................................................................................................2

28 U.S.C. §1334(a) .................................................................................................................2

28 U.S.C. §1334(c)(1)...............................................................................................1, 2, 13

28 U.S.C. §1334(c)(2)..........................................................................................1, 9, 11, 13

**Other Authorities**

Federal Rule of Bankruptcy Procedure 4001 .................................................1, 2, 14, 16

Local Bankruptcy Rule for the United States Bankruptcy Court for the Southern
    District of New York 4001-1 ..........................................................................1, 2, 16

COMMUNITY UNIT SCHOOL DISTRICT 300, an Illinois school district existing and operating pursuant to the Illinois School Code, 150 Illinois Compiled Statutes ("**ILCS**") 5/1-1, *et seq.* (the "**School District**"), a party in interest to this case, by and through its attorneys, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Gensburg Calandriello & Kanter, P.C., and Archer & Greiner, P.C., pursuant to Section 362(d)(1) of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), hereby submits its motion for relief from the automatic stay, or in the alternative, its motion to abstain from hearing the Illinois Action (as defined below) pursuant to 28 U.S.C. §§1334(c)(1) and (2).  In support of this motion, the School District states as follows:

## I.  INTRODUCTION

1.      The purpose of this motion is to obtain leave of the Court to permit the School District to continue the prosecution of its claims against Sears Holdings Corporation (the "**Debtor**") in an action already pending in the Circuit Court of Cook County in the State of Illinois (the "**Illinois Action**").  In the pending Illinois Action, the School District is seeking to stop future tax subsidy payments to Debtor that are currently made under a special Illinois state law, the Illinois Sears EDA Act, that was enacted and subsequently amended for the specific purpose of giving property tax subsidies to the Debtor in an effort by Illinois state lawmakers to keep the Debtor from moving its corporate headquarters out of Illinois.  The School District seeks to stop the disbursement of tax subsidy payments because the Debtor no longer qualifies to receive the subsidies under the Illinois Sears EDA Act; the millions of dollars of property tax revenue that the Debtor would receive under the Illinois Sears EDA Act would otherwise go to the School District

1

and other local taxing bodies.  In the Illinois Action, the School District also seeks to recover previous tax subsidy payments that were made in violation of the Illinois Sears EDA Act.

2.      Failure to allow the Illinois Action and the pending motion for injunctive relief, as described below, to go forward could cause the Village of Hoffman Estates (another defendant in the Illinois Action) to release over $8 million to the Debtor while the Debtor owes the School District approximately $49 million.  This issue is the thrust of the Illinois Action and the motion for injunction filed pre-petition and already pending in the Illinois court, but currently stayed pending further order of this Court.

## II. JURISDICTION AND VENUE

3.      The Court has jurisdiction of the subject matter hereof pursuant to 28 U.S.C. §1334(a).  This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (B), (C), (G) and (O).  The bases for this motion are 11 U.S.C. §362(d)(1), 28 U.S.C. §1334(c)(1) and (2), Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1.

## III. BACKGROUND

A.    The Illinois Sears EDA Act

4.      In 1989, in efforts to keep the Debtor from moving out of the State of Illinois a law was passed known as the Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1, *et seq.* (the "**Illinois Sears EDA Act**"), which was designed to specifically incentivize the Debtor to relocate its headquarters from downtown Chicago to undeveloped farmland in the Village of Hoffman Estates (the "**Village**").  In 1990, the Village and the Debtor entered into an Economic Development Agreement pursuant to the  Illinois Sears EDA Act.  Among other things, the 1990 Agreement provided considerable financial assistance and subsidies for the Debtor to develop its corporate campus in the Village.  The 1990 Agreement enabled the Debtor to recapture a large portion of the property taxes paid on its corporate campus to cover the cost incurred for

2

development of its corporate campus.  The 1990 Agreement was structured to last for a 23 year period, the maximum length of time allowed under the Illinois Sears EDA Act.  Under the 1990 Agreement, millions of taxpayer dollars, many of which would have gone to the School District, were diverted to the Debtor.  In exchange and as a condition for the Debtor to recapture its property taxes, the Debtor agreed, among other things, to create or maintain a minimum number of jobs and cause a specific amount of private investment to occur in the designated project area.

5.       In 2012, Illinois legislators passed an amendment to the  Illinois Sears EDA Act that effectively extended the 1990 Agreement, but included certain provisions about the amount of subsidies for the Debtor and the manner in which subsidies would be distributed. Also included in the 2012 Amendments to the Illinois Sears EDA Act was a requirement that the Debtor create or retain not less than 4,250 full-time equivalent jobs at its headquarters in the Village.   In the event that the Debtor failed to live up to the requirement that it create or retain not less than 4,250 jobs, the 2012 Amendments provide a formula for recapture of the subsidies based on the amount of time that the Debtor failed to comply with the job requirement.

6.       Before property tax rebate subsidies are disbursed to the Debtor, the money sits in a Village fund known as the "special tax allocation fund." 20 ILCS 620/4(g).  Property tax receipts are placed in the special tax allocation fund by the Cook County Treasurer. The Village administers and makes distributions from the special tax allocation fund.  These disbursements are made at the Village's discretion. Given the history of disbursements, the next disbursement from the special tax allocation fund to the Debtor would be in January 2019. However, there is no set time period of when the Village must make the distributions.

7.       In addition to receiving subsidies under the Illinois Sears EDA Act, the Debtor received incentives under an Act titled the Economic Development for a Growing Economy Tax

3

Credit Act (the "**EDGE Act**"), 35 ILCS 10/5-1.  The EDGE Act is administered by the State of

Illinois Department of Commerce and Economic Opportunity (the "**Department of Commerce**").

Pursuant to the EDGE Act, the Debtor and the Department of Commerce entered into an agreement

on October 26, 2012 called the EDGE Tax Credit Agreement (the "**EDGE Agreement**").  The

EDGE Agreement required the Debtor to, among other things, create or retain not less than 4,250

jobs at its locations in the Village and in downtown Chicago, and the EDGE Agreement required

the Debtor to submit documentation showing satisfaction of the jobs requirement.

8.      In March of 2017 the Debtor submitted requests to the Department of Commerce

for the Debtor's 2016 tax subsidies, but with the Debtor having recently announced plans to lay

off over 100 corporate employees, the Department of Commerce began questioning whether the

Debtor was in compliance with the job requirement under the EDGE Agreement.  Media reports

surfaced where the Debtor acknowledged that it did not satisfy the job requirement of the EDGE

Agreement.  As a result, the Debtor and the Department of Commerce entered into a settlement

agreement.  In the settlement agreement, the Debtor admitted to falling short of the job requirement

at least as of May 31, 2017 and that it continued to fall short of the jobs requirement at least through

December 15, 2017, the date of the settlement agreement.

9.      Since admitting to the Department of Commerce that it does not maintain the

requisite number of jobs, the Debtor has cut hundreds more jobs at its corporate campus.  Pursuant

to the Illinois Sears EDA Act, the Debtor receives subsidies in the form of millions of dollars in

property tax rebates.  Property taxes that the Debtor receives are diverted from the School District

and other taxing districts that levy taxes on the Debtor's property.  The loss of the property tax

revenue has and continues to negatively impact the School District's ability to educate the students

in the school district including but not limited to hiring sufficient staff, adequately funding student

4

programs and properly maintaining its facilities. Even after the Debtor admitted that it does not maintain the requisite number of jobs, the Village has still made disbursements to the Debtor under the Illinois Sears EDA Act.

B.    The Illinois Action and Pending Motion for Injunction

10.    On October 10, 2018, the School District brought suit against the Village of Hoffman Estates, an Illinois municipal corporation, and the Debtor, in the Circuit Court of Cook County, State of Illinois (the "**Circuit Court**"), in a matter styled, *Community Unit School District 300 v. Village of Hoffman Estates, et al.*, Case No. 2018 CH 12683 (the "**Illinois Action**"), alleging a failure of Debtor to maintain the statutorily required 4,250 jobs at the Debtor's corporate campus in the Village. A copy of the Complaint in the Illinois Action is attached as Exhibit A. On October 12, 2018, the School District filed an Emergency Motion for Injunctive Relief seeking to have the Illinois court enter an injunction order directing the Village not to make any further distributions from the Village's special tax allocation fund under the Illinois Sears EDA Act until the rights of the parties are declared by the court. A copy of the Emergency Motion for Injunctive Relief is attached as Exhibit B.

11.    On October 15, 2018, the Debtor and its affiliates filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On October 17, 2018 the Circuit Court entered a "Continuance Pending Bankruptcy" order continuing the Illinois Action to December 18, 2018, for a status on the bankruptcy.

C.    The School District

12.    The School District itself, is located in northern Kane County, Illinois, and southeastern McHenry County, Illinois. With 6 pre-schools, 19 primary schools, 8 middle schools and 6 high schools, the School District has in excess of 20,000 students and is the sixth largest school district in the State of Illinois.

5

## IV.  ARGUMENT

### A.    STANDARD FOR LIFTING A BANKRUPTCY STAY

13.    Section 362 of the Bankruptcy Code provides an automatic stay upon the filing of a bankruptcy petition for judicial or administrative proceedings against the debtor. 11 U.S.C. §362(a)(1).  The purpose of the stay is to "give the debtor a breathing spell from his creditors." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 340 (1977).  However, the court shall grant relief from an automatic bankruptcy stay "for cause." 11 U.S.C. §362(d)(1).

14.    For a motion to lift or modify an automatic stay, the burden of proof is initially on the School District, as movant, to show a *prima facie* case for cause to lift the stay.  *See In re Project Orange Associates, LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010).  The burden then shifts to the Debtor, as respondent, to prove that it is entitled to the protections of the stay. *See id.* Cause is not defined either by statute or legislative history.  *Id.*  Only general guidance has been given. *Id.*  Although cause is not defined, according to the legislative history, "Congress intended 'that one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum,' as '[i]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere.'" *Project Orange*, 432 B.R. at 103 *(citing*, *inter alia*,  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 341 (1977)).  The specific facts of the case will determine whether cause exists and whether relief is appropriate. *Sonnax Indus., Inc. v. Tri-Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F. 2d 1280, 1286 (2d Cir. 1990).

15.     In *Sonnax*, the Second Circuit set forth twelve factors to consider in determining whether sufficient cause exists to grant relief from the automatic stay in favor of allowing pre-petition litigation to proceed.  The *Sonnax* factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interest of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.

*Id*; *see also In re Great Atlantic & Pacific Tea Company, Inc.*, 467 B.R. 44, 55 (S.D.N.Y. 2012). Only factors that are relevant to the case need to be applied by the court, *see e.g., Great Atlantic & Pacific,* 467 B.R. at 55, and each factor does not need to be given the same weight.  *Project Orange*, 432 B.R. at 104.[1]  Additionally, cause to lift the stay may include misconduct and bad faith by the debtor.  *Id*. at 103.

## B.     APPLICATION OF THE *SONNAX* FACTORS

16.     In this case, the *Sonnax* factors strongly support allowing the Illinois Action, including the Emergency Motion for Injunctive Relief, to proceed in the Circuit Court.  As noted more fully below, resolution of the Illinois Action in the Circuit Court will allow for the complete

---

[1]  The Court need not apply all twelve factors mechanically, as many courts consider less than all of them, as applicable.  *See In re Residential Capital, LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014)(applying seven factor test consisting of the following: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants).

resolution of all outstanding issues among the parties.  The Illinois Action lacks any connection

with, and will not interfere with the bankruptcy case.  The Circuit Court has the necessary expertise

to hear the cause of action.  Resolving the Illinois Action in the Circuit Court will not prejudice

the interests of other creditors, and will promote the interests of judicial economy and the

expeditious and economical resolution of litigation.  Finally, the hardship which would be

experienced by the School District if the stay is not lifted would considerably outweigh the

hardship to the Debtor if the stay is vacated.

**(a)      Lifting the Stay to Allow the Illinois Action to Proceed Will Completely
           Resolve the Issues Between the Debtor and the School District (Factor One)**

17.      By modifying the automatic stay to allow the Illinois Action to proceed, the Court

will allow all of the issues between the parties to be fully and completely resolved.  The only issues

that exist between the School District and the Debtor are issues that will be resolved by the Illinois

court's interpretation of the Illinois Sears EDA Act.  The Illinois Action will determine at what

point the Debtor no longer complied with the Illinois Sears EDA Act and whether the Debtor is

entitled to any future distributions under the Illinois Sears EDA Act.  Allowing the Illinois Action

to proceed will also allow the Circuit Court to determine the Emergency Motion for Injunctive

Relief which requires timely consideration.  Thus, the first factor favors lifting the stay.

**(b)      The Illinois Action is Not Connected to the Bankruptcy Case and Lifting the
           Stay Will Not Interfere with the Bankruptcy Estate (Factor Two)**

18.      The Illinois Action is not connected to the bankruptcy case.  The only reason the

issue is coming before this Court is because the School District needs to have the automatic stay

lifted so that the Circuit Court can immediately address the issue of whether the Debtor violated

the Illinois Sears EDA Act and is entitled to disbursements to prevent further harm to the School

District, students and taxpayers in the School District, and other Illinois taxing districts, or whether

the Village may withhold certain payments.  The Illinois Action will not interfere with the

8

bankruptcy estate as the litigation will not delay the bankruptcy proceedings or affect the ability to confirm any proposed plan.

19.     Further, as more fully explained below, the Illinois Action involves only state law issues and claims.  The Illinois Action does not involve "core" matters as defined by 28 U.S.C. §1334, and is at best, a "non-core" proceeding, related to this bankruptcy case.  As such, the School District submits that the Illinois Action should not be heard by this Court, and falls under the mandatory abstention provisions of §1334(c)(2).  Thus, the second factor favors lifting the stay.

### (c)     A Tribunal With the Necessary Expertise Has Been Established to Hear the Cause of Action (Factor Four)

20.     The Circuit Court is not a specialized tribunal *per se*, but the issues between the parties involve an interpretation of Illinois state law that should be decided by an Illinois court.  Courts have lifted the automatic stay to allow state court actions to proceed when state law was at issue.  *See, e.g., Project Orange*, 432 B.R. at 112; *In re James T. Metz,* 165 B.R. 767 (Bankr. E.D.N.Y. 1994).  The issues presented are not straight-forward claims that can be determined by the Bankruptcy Court, but instead involve an interpretation of Illinois state law.  The Illinois Sears EDA Act is a state statute and should be interpreted by an Illinois court, and is a matter of acute public concern to the Illinois residents who send their children to the School District.  Thus, the fourth factor favors lifting the stay.

### (d)     Lifting the Stay Will Not Prejudice Other Creditors (Factor Seven)

21.     The Illinois claims will not prejudice other creditors. The Illinois Action provides a ready forum for the expeditious resolution of the claims. This is a benefit that will accrue to all parties, other creditors included.  Therefore, the other creditors would not be prejudiced if the Court were to allow the bankruptcy stay to be lifted.  Thus, the seventh factor favors lifting the stay.

**(e)**    **Lifting the Stay Will Promote the Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation (Factor Ten)**

22.    Lifting the stay will promote the interests of judicial economy and will aid in resolving all the claims between the parties.  Courts have determined that allowing a creditor to prosecute a claim in a pending state court action that involves issues of state law promotes the interests of judicial economy.  *See, e.g., Project Orange*, 432 B.R. at 112; *Metz,* 165 B.R. at 772. The Circuit Court can more efficiently and effectively interpret Illinois law.

23.    To the extent witnesses are needed, the vast majority of them inevitably reside in Illinois.  Further, given that the Debtor maintains its corporate headquarters in McHenry County, Illinois, it is reasonable to believe that that a substantial portion of the documents that might be used in the Illinois Action are also housed in Illinois.  Additionally, the Debtor is not the only defendant in the Illinois Action.  The Village, with respect to which this Court might not have jurisdiction, is also a defendant and is, of course, located in Illinois.  Finally, this is a matter of public interest and concern among the homeowners, parents and students in the School District who, obviously, are all located in Illinois.  It would not be efficient or economical for this Court to have to begin to delve into the complex factual history and legal issues underlying the Illinois Action.  Thus, the tenth factor favors lifting the stay.

**(f)**    **Continuing the Automatic Stay Will Impose Substantial Hardships on School District That Far Outweigh Any Hardships on the Debtor (Factor Twelve)**

24.    Any hardships on the Debtor in lifting the automatic stay are far outweighed by the hardships imposed on the School District if the stay is not lifted.  The stay currently is preventing the Illinois court from determining whether the Debtor is entitled to future and past distributions under the  Illinois Sears EDA Act.  The Village is currently holding this money in its special tax allocation fund and plans on disbursing this money to the Debtor in the next sixty days.  If that money is unlawfully disbursed to the Debtor, the School District will be irreparably harmed

10

because it is money the school district and other taxing districts would otherwise have received. The School District is a public educational institution.  The loss of the property tax revenue will negatively impact the School District's ability to educate its students including, but not limited, to hiring sufficient staff, adequately funding student programs and properly maintaining its facilities. It goes without saying that educating students requires tax dollars, but tax dollars the School District receives many years from now cannot be retroactively applied to educate and protect the students who had to suffer and miss out in the interim.  The underlying issues of the Illinois Action need to be resolved as soon as possible so that any future disbursements are not unlawfully diverted from the taxing districts to the Debtor, taking away needed tax dollars from the school district and other taxing districts who desperately need the funds.  Thus, the twelfth factor favors lifting the stay.

25.     When taking all of the applicable *Sonnax* factors into account, the majority of the factors weigh in favor of lifting the automatic stay.

**C.    THE COURT MUST ABSTAIN**

26.     The School District also respectfully submits that the Court is required to abstain from hearing the Illinois Action were it removed to this Court.  Mandatory abstention derives from 28 U.S.C. §1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

27.     Mandatory abstention by a bankruptcy court is appropriate when each of the following six prerequisites are satisfied: (1) a timely motion for abstention is made by a party in

the proceeding; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the proceeding is related to a case under title 11; (4) the proceeding does not arise under title 11 or arise in a case under title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. §1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. *See In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 837-38 (Bankr. S.D.N.Y. 2014), *adopted sub nom. In re Ne. Indus. Dev. Corp.*, No. 14-CV-7056 NSR, 2015 WL 3776390 (S.D.N.Y. June 16, 2015) (*citing IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005)).

28.    The Illinois Action is not a "core" proceeding, which invokes substantive rights provided by title 11, or by its nature, could arise only in the context of a bankruptcy case. Rather, it is, at best, a "non-core" proceeding which belongs to the broader universe of proceedings related to the bankruptcy cases. Further, the Illinois Action is based solely on state law claims and state law causes of action, with a focus on interpreting the Illinois Sears EDA Act.

29.    Further, the Illinois Action in its present posture could not have been commenced in federal district court because no federal question exists, and complete diversity of citizenship is lacking, given that the Debtor's principal place of business is located in Illinois, and the Village and the School District are located in Illinois. Finally, the Illinois Action is currently pending before the Circuit Court and the emergency motion for injunctive relief – which was filed pre-petition and is pending before the Circuit Court – can be timely adjudicated before the Circuit Court. There is no legitimate reason to believe that the necessary time frame will be short-circuited by having this Court adjudicate this matter, given all of the other issues and disputes this Court will have to work through in these complex bankruptcy cases. Notions of comity and judicial

12

economy also warrant a conclusion that the Circuit Court is the proper forum for adjudicating this dispute.

30.    For all of these reasons, the School District respectfully submits that mandatory abstention is required pursuant to 28 U.S.C. §1334(c)(2), such that only the Circuit Court can determine the dispute commenced pre-petition in that Court.

## D.    THE COURT SHOULD PERMISSIVELY ABSTAIN

31.    Even if this proceeding were not subject to the mandatory abstention provisions of 28 U.S.C. §1334(c)(2), were it removed to this Court, the Court should permissively abstain from hearing this action.  A court may abstain from hearing an action "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. §1334(c)(1). Bankruptcy courts consider one or more, but not necessarily all, of the following twelve factors when determining whether permissive abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re Portrait Corporation of America, Inc.,* 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009) (*citing Rosetta Res. Operating LP Calpine Corp. v. Pogo Producing Co. (In re Calpine Corp.)*, 361 B.R. 665, 669 (Bankr. S.D.N.Y. 2007)).  Not all of these factors need be applied.  *Id.* (*citing Cody, Inc.*

13

*v. County of Orange & Town of Woodbury* (*In re Cody, Inc.*), 281 B.R. 182, 190-91 (S.D.N.Y. 2002)).

32.     Here, permissive abstention is warranted as the following factors are present: the efficient administration of the estate (factor one), the state law issues clearly predominate over bankruptcy issues (factor two), the difficulty or unsettled nature of the applicable state law (factor three), the presence of a related proceeding commenced in state court (factor four), the lack of a jurisdictional basis other than 28 U.S.C. §1334 (factor five), the remoteness of the proceeding from the main bankruptcy case (factor six), the state law claims can be severed from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court (factor eight), and the burden on the bankruptcy court's docket (factor nine).  The issues present in the Illinois Action reflect no forum shopping (factor ten), are not intertwined with the bankruptcy cases and involve predominantly state issues and a specific state law that should be handled by an Illinois court.  Furthermore, the Illinois courts have an interest in hearing this case as it greatly impacts the local community and the education of the students in the school districts that are affected by loss of the property tax revenue.

33.     As set forth above, the Illinois Action was commenced pre-petition, and the Emergency Motion for Injunctive Relief is pending since pre-petition.  The School District's emergency motion was brought because a timely determination must be made before the date by which a significant, multi-million dollar disbursement is due to the Debtor.  The School District seeks prompt relief in this Court so it may seek prompt relief in the Circuit Court.

## V.  WAIVER OF STAY

34.     The School District respectfully requests that the Court waive the fourteen (14) day stay under Bankruptcy Rule 4001(a)(3).

35.     In accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures,* entered on November 1, 2018 (the "**Amended Case Management Order**"), notwithstanding Section 362(e) of the Bankruptcy Code, if this motion is scheduled, or adjourned to, a hearing date that falls on or after the thirtieth (30th) day after the filing of the motion, the School District consents to the continuation of the automatic stay in effect pending the conclusion of, or as a result of, a final hearing and determination under Section 362(d) of the Bankruptcy Code, and waives its right to assert the termination of the automatic stay under Section 362(e) of the Bankruptcy Code.

## VI.  NOTICE

36.     The School District will provide notice of this motion to the "Standard Parties" and "Rule 2002 Parties" in accordance with the Amended Case Management Order.  Based upon the foregoing, the School District respectfully submits that notice of this motion and the relief sought herein is sufficient, and that no additional or further notice should be required.

37.     No prior request for the relief requested in this motion has been made to this Court or any other court.

## VII.  CONCLUSION

WHEREFORE, the School District respectfully requests that the Court enter an order granting relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1, to permit the School District to continue the prosecution of the Illinois Action, abstaining from hearing this matter, and providing such other and further relief as this Court deems just and proper.

15

Dated: New York, New York
      November 12, 2018

ARCHER & GREINER, P.C.

By:    s/ Allen G. Kadish
    Allen G. Kadish
    Lance A. Schildkraut
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
        lschildkraut@archerlaw.com

and

Kenneth M. Florey
M. Neal Smith
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
        nsmith@robbins-schwartz.com

and

Matthew T. Gensburg
Gensburg Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

215437352v1

16

## **<u>EXHIBITS</u>**

A – Illinois Action Complaint

B – Emergency Motion for Injunctive Relief