**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                           :            **Chapter 11**
                                                 :
**SEARS HOLDINGS CORPORATION,** *et al.*,        :            **Case No. 18-23538 (RDD)**
                                                 :
            **Debtors.** [1]                      :            **(Jointly Administered)**
                                                 :            **Re: D.I. 424, 629**

---------------------------------------------------------------x

## REPLY IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Sears Holdings Corporation ("Sears") and its affiliated debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") submit this Reply in support of the *Debtors' Application for an Order Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker for the Debtors* Nunc Pro Tunc *to the Petition Date* [ECF No. 424] (the "Retention Application")[2] and in response to the objection to the Retention

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used and not defined herein have the meanings ascribed to such terms in the Retention Application.

Application [ECF No. 629] (the "<u>Objection</u>") filed by the Official Committee of Unsecured

Creditors (the "<u>Committee</u>") appointed in the above-captioned chapter 11 cases (these "<u>Chapter</u>

<u>11 Cases</u>").   In support of this Reply and the Retention Application, the Debtors submit the

*Supplemental Declaration of William Transier in Support of the Debtors' Application for an*

*Order Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment*

*Banker for the Debtors* Nunc Pro Tunc *to the Petition Date* (the "<u>Supplemental Transier</u>

<u>Declaration</u>"), attached hereto as **<u>Exhibit A</u>** and respectfully state as follows:

## <u>Preliminary Statement</u>

1.    The Restructuring Sub-Committee has been charged with, among other

things, investigating potential claims arising from the Debtors' myriad prepetition related-party

transactions (collectively, the "<u>Related Party Transactions</u>") and acting on behalf of the Debtors'

board of directors in connection with those claims.   This will require (among other things)

independent valuations of assets sold or spun off to shareholders prior to the Petition Date

together with a critique of any valuations performed by the Debtors at the time of each

transaction, a review of the reasonableness of the terms of each transaction, a review of the

reasonableness of the marketing efforts for each transaction, and the ability to provide credible

expert testimony on each of these issues.   Under the circumstances of these Chapter 11 Cases,

the Restructuring Sub-Committee's investigation must be advanced as much as possible prior to

December 15, 2018.   In the reasonable exercise of its business judgment, the Restructuring Sub-

Committee has determined that it cannot reasonably fulfill that task, properly exercise its duty of

care, and maximize the value of the Debtors' estates without the help of an experienced, credible,

and expert investment bank:  Evercore.

2.    This is so because during the years leading up to the Petition Date, the

Debtors consummated at least 19 complex M&A, finance, capital markets, and real estate

Related Party Transactions involving (among others) related-parties ESL Investments, Inc. ("ESL"), Edward Lampert, and Fairholme Capital Management.  As a result of these transactions, involving billions of dollars, ESL and its affiliates own and/or gained control of several businesses and assets that formerly were owned by the Debtors, including Lands' End, Sears Hometown and Outlet Stores, Sears Canada[3], and real estate now owned by Seritage Growth Properties.  Affiliates of ESL also have become the Debtors' largest lenders.  The table below depicts Debtor Sears, Roebuck and Company's outstanding borrowed, issued, or guaranteed indebtedness as of the Petition Date including and excluding debt owned by ESL affiliates.



3.      As this chart makes clear, ESL and its affiliates own nearly half of Debtor Sears, Roebuck and Company's outstanding funded indebtedness. The Restructuring Sub-

---

[3] Sears Canada has since liquidated under Canadian law.

Committee's mandate is directly related to these Related Party Transactions. Pursuant to resolutions adopted by the full board of directors of Debtor Sears Holdings Corporation (the "RSC Resolutions"), the Restructuring Sub-Committee[4] has been delegated (among other things) (i) the Debtors' investigation into, and any pursuit of, potential claims and causes of action of the Debtors arising out of the Related Party Transactions and (ii) the board's ability to approve potential post-petition transactions that might implicate the Related Party Transactions including, without limitation, any proposed credit bids by ESL or its affiliates and any proposed compromise or release of claims arising out of the Related Party Transactions. A full and complete copy of the RSC Resolutions is attached to the Supplemental Transier Declaration as Appendix 1.

4.    With the assistance of their chosen advisors, including Evercore, the Disinterested Directors have been diligently investigating the Related Party Transactions for more than a month, beginning their work even before the Petition Date. There is significant exigency in the Restructuring Sub-Committee's investigation given that the Debtors' DIP ABL financing facility will default if the Debtors do not "by December 15, 2018, obtain and find acceptable a non-contingent and fully financed . . . stalking horse bid for the sale of the Go Forward Stores that is reasonably acceptable to the Agents."[5] ESL may be the only bidder for the Debtors' assets on a going-concern basis. Given that any such proposal may include a credit bid component and potential compromise of related-party claims, the Disinterested Directors are

---

[4]    The Restructuring Sub-Committee consists of two highly qualified and experienced independent directors, Alan Carr and William Transier (together, the "Disinterested Directors"), who were appointed to the Debtors' board in October 2018, prior to the Petition Date but after the board's approval of the Related Party Transactions.

[5]    *See Interim Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief*, Exhibit B pp. 24, 76 [D.I. 101-2].

committed to advancing their investigation as much as possible prior to the impending December 15 milestone.

5.      Against this backdrop, the Committee (which has enjoyed full cooperation from the Restructuring Sub-Committee and its advisors) objects to the Restructuring Sub-Committee's retention of Evercore, arguing that its services are "[u]nnecessary and duplicative of A&M's"[6] and that Evercore's "proposed fee structure is not reasonable."[7]  The Committee's objection amounts to an inappropriate attempt to impose its own judgment for that of the Disinterested Directors, and should be overruled.  The Restructuring Sub-Committee, the only independent fiduciary that owes duties to each Debtor's entire estate, has determined in the proper exercise of its business judgment that it cannot properly fulfill its duty of care and maximize the value of the Debtors' estates under the facts and circumstances of these Chapter 11 Cases without the assistance and expertise of Evercore, a highly-qualified, experienced, and reputable investment bank.

## Argument

### I.      The Restructuring Sub-Committee Requires Able, Experienced, and Credible Advisors with Different Areas of Expertise.

6.      The Related Party Transactions include myriad and extremely complex M&A, finance, capital markets, and real estate transactions involving billions of dollars of cash and other assets.  The Restructuring Sub-Committee's investigation of these transactions requires a detailed review of (among other things) the Debtors' solvency at various points in time, independent valuations of assets sold or spun off to shareholders together with a critique of any

---

[6]   *See Objection* at p. 5.

[7]   *See Objection* at p. 6.

valuations performed by the Debtors at the time of each transaction, and a review of the reasonableness of the terms of each transaction. The investigation also involves the review and analysis of hundreds of thousands of pages of documents including board presentations, financial and market information, valuation reports, solvency opinions, and other highly technical financial data.

7.     The Debtors' advisors must not only expertly perform these tasks on an expedited timeline, but also must be prepared to provide credible expert testimony to support the outcome of the Restructuring Sub-Committee's investigation. In the reasonable exercise of their business judgment, the Restructuring Sub-Committee believes that the distinct abilities and expertise of both Evercore and Alvarez & Marsal North America LLC ("A&M") are absolutely necessary to adequately perform these obligations.

8.     Specifically, the Restructuring Sub-Committee expects[8] that A&M as financial advisor will provide services including: (i) analyses of the Debtors' prepetition financial condition and projections; (ii) analyses of relevant industry and economic conditions and drivers; (iii) analyses of relevant analyst and other third party reports, (iv) contemporaneous solvency analyses; and (v) analyses of the financial performance of various transferred assets. The Restructuring Sub-Committee believes that A&M's specialized forensic accounting and solvency analysis expertise, and its ability to provide expert testimony regarding those topics, are critical to its investigation of the Related Party Transactions.

---

[8]    The tasks to be performed by A&M and Evercore will necessarily contract or expand as these Chapter 11 Cases, and the Restructuring Sub-Committee's investigation, evolve. The task-lists described in this Reply include work that the Restructuring Sub-Committee expects A&M and Evercore to perform as of the date hereof. In addition, the Restructuring Sub-Committee believes that it will be necessary to retain an additional real-estate expert in connection with its review of the Seritage transaction.

9.      In contrast, the Restructuring Sub-Committee seeks to retain Evercore to provide specialized valuation and financial-market advice in respect of the Related Party Transactions, as well as any postpetition transaction that implicates the Debtors' potential Related Party Transaction claims.  In particular, the Restructuring Sub-Committee expects that Evercore will provide services including: (i) analyses of any third-party marketing process for assets transferred, and debt issued, to related parties; (ii) valuation analyses of transferred businesses and assets; (iii) analyses of the Debtors' valuations, any third-party valuations, and market-implied valuations of those businesses and assets; (iv) financial transaction sources and uses analyses; and (v) analyses of the terms of each related-party financing transaction.

10.     Finally, and importantly, Evercore also will assist the Restructuring Sub-Committee in assessing the terms and value of any related-party transactions that may be proposed during these Chapter 11 Cases, compared to the value of potential Related Party Transaction claims and causes of action that may be compromised or released in connection with any such transaction.  Evercore's expertise in valuation, marketing processes, and financing transactions, and its ability to provide expert testimony on those topics, are each critical to the Restructuring Sub-Committee's ability to fulfill its mandate and its fiduciary duties to all of the Debtors' constituents.  The Committee, which has enjoyed the cooperation of the Restructuring Sub-Committee and its advisors in connection with its own investigation, should not be permitted to limit the Debtors' investigation or fiduciary obligations now or at any stage of these Chapter 11 Cases, and its Objection should be overruled.

**II.      Evercore's Fee Structure is Reasonable, Market-Based, and Appropriate Under the Circumstances of these Chapter 11 Cases.**

11.     Bankruptcy Code section 328(a) provides that a debtor-in-possession may employ a professional person "on any reasonable terms and conditions of employment, including

on a . . . fixed or percentage fee basis . . . ."  Prior to the Petition Date, to obtain Evercore's assistance, the Restructuring Sub-Committee negotiated a fee structure consisting of the $200,000 Monthly Fee and the $3 million Additional Fee, with 100% crediting of all Monthly Fees against the Additional Fee.  In essence, the parties negotiated a floor of $3 million for the services that Evercore will provide to the Restructuring Sub-Committee during these Chapter 11 Cases, while avoiding the creation of any inappropriate incentives through a back-end "success" or "restructuring" fee.  Although this structure is unique, the Restructuring Sub-Committee and Evercore believe that it properly aligns their incentives and that the Monthly Fee and Additional Fee (including full Monthly Fee crediting) are reasonable and comparable to fees generally charged by investment banks with similar mandates to Evercore, both in and out of chapter 11 cases.  Evercore simply would not provide the services that the Restructuring Sub-Committee requires without receiving reasonable market-based compensation in return. Attached as Appendix 2 to the Supplemental Transier Declaration is a table summarizing the approved fee structures for investment banks hired by disinterested directors in other recent chapter 11 cases.

12.    The Committee's objection to Evercore's $3 million Additional Fee ignores completely (i) the substantial commitment of professional time and effort that has already been, and will continue to be required of Evercore and its professionals and (ii) that by accepting this engagement, Evercore foreclosed its ability to pursue any other opportunity in connection with these Chapter 11 Cases. The Committee further ignores that the $3,000,000 floor amount is comparable to the back-end fee component of fee structures approved in similar recent engagements.  For all of the reasons discussed in this Reply and in the Retention Application, Evercore's assistance is critical to the Restructuring Sub-Committee and its ongoing

investigation of the Related Party Transactions, Evercore's proposed fee structure is fair and reasonable, and the Committee's Objection to Evercore's retention should be overruled.

### Notice

13.    Notice of this Reply will be provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for Bank of America, N.A., as administrative agent under the First Lien Credit Facility and the DIP ABL Agent; (iv) counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility; (v) counsel for JPP, LLC, as administrative agent under the Second Lien Credit Facility, the IP/Ground Lease Term Loan, and the Consolidated Secured Loan Facility; (vi) counsel for Computershare Trust Company N.A., as indenture trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes; (vii) counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes; (viii) counsel for The Bank of New York Mellon Trust Company, N.A., as successor trustee for the SRAC Unsecured PIK Notes, the SRAC Unsecured Notes, and the SRAC Medium Term Notes; (ix) the Pension Benefit Guaranty Corporation; (x) the Unions; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; (xiii) the United States Attorney's Office for the Southern District of New York; (xiv) the Banks and (xv) Akin Gump Strauss Hauer & Feld as counsel for the Creditors' Committee. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested in the Retention Application and such other and further relief as the Court may deem just and appropriate.

Dated: November 13, 2018
        New York, New York

/s/ Paul M. Basta
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-373-3000
Fax: 212-757-3990
Paul M. Basta
Kelley A. Cornish
Lewis R. Clayton

*Proposed Counsel for the Debtors, Acting
at the Direction of the Restructuring Sub-Committee*

**<u>Exhibit A</u>**

**Supplemental Transier Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                           :          Chapter 11
                                                 :
SEARS HOLDINGS CORPORATION, *et al.*,            :          Case No. 18-23538 (RDD)
                                                 :
            Debtors. [1]                         :          (Jointly Administered)
                                                 :
---------------------------------------------------------------x

## SUPPLEMENTAL DECLARATION OF WILLIAM TRANSIER IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER FOR THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE

William L. Transier makes this declaration under 28 U.S.C. § 1746:

1.      I am one of the two Disinterested Directors[2] of Sears Holding Corporation

("Sears").    In that capacity, I serve on the Restructuring Committee and the Restructuring

Sub-Committee of the board of directors of Sears Holdings Corporation.    In my current role at

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]  Capitalized terms used herein, but not otherwise defined, have the meaning ascribed to them in the Retention Application (as defined below).

Sears, I am responsible for (among other things) supervising outside counsel and advisors with respect to RSC Conflict Matters.

2.     I submit this supplemental declaration (this "Declaration") in support of the *Debtors' Application for an Order Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker for the Debtors* Nunc Pro Tunc *to the Petition Date* (the "Retention Application").  Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, information provided to me by the Debtors' employees or advisors, information provided to me by Alan Carr, the other Disinterested Director of Sears Holdings Corporation, or my opinion based upon knowledge and experience as a Disinterested Director of the Debtors and as a current or former member of the board of directors of several other companies.  I am authorized to submit this Declaration on behalf of the Debtors.

3.     I understand that during the years leading up to the Petition Date, the Debtors consummated at least 19 complex M&A, finance, capital markets, and real estate transactions involving (among others) related-parties ESL Investments, Inc., Edward Lampert, and Fairholme Capital Management.  As a result of these transactions, involving billions of dollars, ESL and its affiliates own and/or control several businesses and assets that formerly were owned by the Debtors, including Lands' End, Sears Hometown and Outlet Stores, Sears Canada, and real estate now owned by Seritage Growth Properties.  Affiliates of ESL also have become the Debtors' largest lenders. The table below, which was prepared by advisors to the Restructuring Sub-Committee under my supervision, depicts Debtor Sears, Roebuck and Company's outstanding borrowed, issued, or guaranteed indebtedness as of the Petition Date including and excluding debt owned by ESL affiliates.



4.      Pursuant to resolutions adopted by the full board of directors of Debtor Sears Holdings Corporation, the Restructuring Sub-Committee has been delegated (among other things) (i) the Debtors' investigation into, and any pursuit of, potential claims and causes of action of the Debtors arising out of the Related Party Transactions and (ii) the board's ability to approve potential post-petition transactions that might implicate the Related Party Transactions including, without limitation, any proposed credit bids by ESL or its affiliates and any proposed compromise or release of claims arising out of the Related Party Transactions.  A full and complete copy of the RSC Resolutions is attached hereto as **Appendix 1**.

5.      Prepetition, the Restructuring Sub-Committee retained as advisors Paul, Weiss, Evercore, and Alvarez & Marsal North America LLC. With the assistance of their chosen advisors, including Evercore, the Disinterested Directors have been diligently investigating the Related Party Transactions for more than a month, beginning their work before the Petition Date.

6.      The Restructuring Sub-Committee's investigation of the Related Party Transactions requires a detailed review of (among other things) the Debtors' solvency at various

points in time, independent valuations of assets sold or spun off to shareholders together with a critique of any valuations performed by the Debtors at the time of each transaction, and a review of the reasonableness of the terms of each transaction. I understand that the investigation also involves the review and analysis of hundreds of thousands of pages of documents including board presentations, financial and market information, valuation reports, solvency opinions, and other highly technical financial data. The Restructuring Sub-Committee believes that the distinct abilities and expertise of both Evercore and A&M are absolutely necessary to adequately perform these obligations.

7.      The Restructuring Sub-Committee currently expects that A&M as financial advisor will provide services including: (i) analyses of the Debtors' prepetition financial condition and projections; (ii) analyses of relevant industry and economic conditions and drivers; (iii) analyses of relevant analyst and other third party reports; (iv) contemporaneous solvency analyses; and (v) analyses of the financial performance of various transferred assets. The Restructuring Sub-Committee believes that A&M's specialized forensic accounting and solvency analysis expertise, and its ability to provide expert testimony regarding those topics, are critical to its investigation of the Related Party Transactions.

8.      In contrast, the Restructuring Sub-Committee seeks to retain Evercore to provide specialized valuation and financial-market advice in respect of the Related Party Transactions, as well as any postpetition transaction that implicates the Debtors' potential Related Party Transaction claims. In particular, the Restructuring Sub-Committee currently expects that Evercore will provide services including: (i) analyses of any third-party marketing process for assets transferred, and debt issued, to related parties; (ii) valuation analyses of transferred businesses and assets; (iii) analyses of the Debtors' valuations, any third-party valuations, and

market-implied valuations of those businesses and assets; (iv) financial transaction sources and uses analyses; and (v) analyses of the terms of each related-party financing transaction.

9.      Finally, and importantly, Evercore also will assist the Restructuring Sub-Committee in assessing the terms and value of any related-party transactions that may be proposed during these Chapter 11 Cases, compared to the value of potential Related Party Transaction claims and causes of action that may be compromised or released in connection with any such transaction. I believe that Evercore's expertise in valuation, marketing processes, and financing transactions, and its ability to provide expert testimony on those topics, are each critical to the Restructuring Sub-Committee's ability to fulfill its mandate and its fiduciary duties to all of the Debtors' constituents.

10.      Prior to the Petition Date, to obtain Evercore's assistance, the Restructuring Sub-Committee negotiated a fee structure consisting of the $200,000 Monthly Fee and the $3 million Additional Fee, with 100% crediting of all Monthly Fees against the Additional Fee. The Restructuring Sub-Committee and Evercore believe that this structure properly aligns their incentives and that the Monthly Fee and Additional Fee (including full Monthly Fee crediting) are reasonable and comparable to fees generally charged by investment banks with similar mandates to Evercore, both in and out of chapter 11 cases.  Attached as **Appendix 2** hereto is a table that was prepared by advisors to the Restructuring Sub-Committee summarizing approved fee structures for investment banks hired by disinterested directors in other recent chapter 11 cases.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 13th day of November, 2018

William L. Transier
Disinterested Director
Sears Holdings Corporation

## **Appendix 1**

**RSC Resolutions**

# SEARS HOLDINGS CORPORATION

## SECRETARY'S CERTIFICATE

November 10, 2018

The undersigned Corporate Secretary of Sears Holdings Corporation (the "Company"), in his capacity as Corporate Secretary of the Company, hereby certifies as follows:

1.  The undersigned is the duly elected and qualified Corporate Secretary of the Company, and the signature set forth below is true and genuine.

2.  Attached hereto as <u>Annex 1</u> is a true and complete copy of resolutions duly adopted by the Board of Directors of the Company at a meeting duly called and held on November 2, 2018. Such resolutions have not in any way been amended, modified, revoked or rescinded, have been in full force and effect since their adoption to and including the date hereof and are now in full force and effect.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned has hereunto set his name as of the date set forth above.


Name: Luke Valentino
Title:  Divisional Vice President, Deputy
        General Counsel and Corporate Secretary

**Annex 1**

**RESOLUTIONS OF THE
BOARD OF DIRECTORS OF
SEARS HOLDINGS CORPORATION**

**November 2, 2018**

Authority of the Subcommittee of the Restructuring Committee

WHEREAS, pursuant to Article 4, Section 1 of the Amended and Restated By-Laws of Sears Holdings Corporation (the "Corporation") and Section 141(c) of the General Corporation Law of the State of Delaware, the Board of Directors of the Corporation (the "Board") by resolution duly established a Subcommittee (the "Subcommittee") of the Restructuring Committee of the Board (the "Restructuring Committee") consisting of one or more members of the Restructuring Committee, which consists solely of one or more independent members of the Board, with the purpose of investigating any cause of action that the Corporation may have with respect to any transactions involving affiliates prior to the date of the Subcommittee's formation (the "Prior Transactions"), and taking, or causing to be done, any related actions that the Subcommittee considers necessary or desirable to carry out its mandate;

WHEREAS, Alan J. Carr and William L. Transier were duly appointed by the Board, at the recommendation of the Nominating and Corporate Governance Committee of the Board, as members of the Subcommittee; and

WHEREAS, the Board deems it advisable and in the best interests of the Corporation to clarify the role and responsibilities of the Subcommittee.

NOW, THEREFORE, BE IT RESOLVED that the Board hereby authorizes and empowers the Subcommittee to take the following actions:

1. Prosecute, waive, release, settle, negotiate and bind the Corporation with respect to any claims or causes of action of the Corporation that arise out of or relate to Prior Transactions that are the subject of the Subcommittee's investigation (the "Specified Matters");

2. Control the Corporation's attorney-client and attorney work product privilege for any information disclosed to or developed by the Subcommittee or its advisors during the course of the Subcommittee's investigation;

3. Determine, act on behalf of and bind the Corporation with respect to the right of and/or extent to which a party that is the subject of the Subcommittee's investigation may (i) credit bid pursuant to 11 U.S.C. 363(k) or (ii) take similar actions during the course of the Corporation's chapter 11 cases (the "Chapter 11 Cases") including any credit bid or similar action pursuant to a chapter 11 plan;

4. Determine, act on behalf of and bind the Corporation with respect to any proposed releases, exculpations or indemnifications by the Corporation of its current or

former directors, officers or affiliates, in each case, solely with respect to the Specified Matters;

5. Determine whether a bid from or a chapter 11 plan proposed by an affiliate or equity holder of the Corporation that is the subject of the Subcommittee's investigation is higher and/or better than any other alternative, limited to the appropriateness of releases, exculpations or indemnifications by the Corporation of its current or former directors, officers or affiliates contained therein, in each case, solely with respect to to the Specified Matters;

6. Determine, act on behalf of and bind the Corporation with respect to any other matter that is within the scope of the mandate of the Restructuring Committee which the Restructuring Committee may decide to delegate to the Subcommittee without any further action of the Board, including matters that the Restructuring Committee determines pose or may pose a conflict for it to act upon. To the extent the Restructuring Committee does delegate additional matters to the Subcommittee, it shall promptly advise the Board of the same;

7. In carrying out its responsibilities, coordinate and consult with management, and professional advisors of and to the Corporation, as appropriate, regarding matters within the authority and mandate of the Subcommittee; and

8. Retain professionals for advice or assistance, as it deems necessary and proper, to carry out the responsibilities of the Subcommittee; and be it

General Authorization

RESOLVED, FURTHER, that the executive officers of the Corporation (each a "Proper Officer"), each of whom may act without the joinder of any of the others, be, and each of them individually hereby is, authorized and directed, in the name and on behalf of the Corporation, to take or cause to be taken all such further actions, including without limitation, negotiating, signing, executing, acknowledging, certifying, attesting, delivering, accepting, recording and filing (with such changes as such Proper Officer shall approve, the execution and delivery thereof or the taking of such other action to be conclusive evidence of such approval) all such documents, agreements, certificates and instruments and paying all fees, taxes and other expenses or payments, in each case as such Proper Officer, in such Proper Officer's sole discretion, may determine to be necessary, appropriate or desirable in order to fulfill the intent and accomplish the purposes of the foregoing resolution, such determination to be conclusively evidenced by the taking of any such further action; and be it

RESOLVED, FURTHER, that any actions taken by any Proper Officer, for or on behalf of the Corporation, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized, adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Corporation.

## Appendix 2

**Market Comparables**

### Toys "R" Us, Inc.[1]

| Advisor | Monthly Fee | Crediting | Back-End Fee |
|---|---|---|---|
| Ducera Partners LLC | $125,000 | 50% after 7 months | $2,250,000 |
| Centerview Partners LLC | $125,000 | 50% after 7 months | $2,250,000 |

### Energy Future Holdings Corp.[1]

| Advisor | Monthly Fee | Crediting | Back-End Fee |
|---|---|---|---|
| Goldin Associates, LLC | $150,000 | 50% after 9 months, not to exceed $1,000,000 of credit | $2,000,000 |
| Greenhill & Co., LLC | $250,000 | 50% after 9 months | $9,500,000 |

### iHeartMedia, Inc.[1]

| Advisor | Monthly Fee | Crediting | Back-End Fee |
|---|---|---|---|
| Perella Weinberg Partners LP | $225,000 | 50% for first twelve months, and 75% of any monthly fee thereafter | $5,000,000 |

---

[1] Because the relevant retention applications and orders are voluminous, they are not attached here but are available upon request to counsel.