WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                      :
                                           :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,   :
                                           :        **Case No. 18-23538 (RDD)**
                                           :
                  Debtors.[1]               :        **(Jointly Administered)**
-------------------------------------------------------------x

**DEBTORS' RESPONSE IN SUPPORT OF MOTION OF DEBTORS
FOR ENTRY OF ORDER (I)(A) APPROVING BIDDING PROCEDURES
FOR SALE OF SEARS HOME IMPROVEMENT BUSINESS, (B) APPROVING
STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR
AND HEARING TO APPROVE SALE OF SEARS HOME IMPROVEMENT
BUSINESS, (D) APPROVING FORM AND MANNER OF NOTICE OF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

SALE, AUCTION, AND SALE HEARING, (E) APPROVING ASSUMPTION
AND ASSIGNMENT PROCEDURES, (II) APPROVING THE SALE OF
SEARS HOME IMPROVEMENT BUSINESS IN ACCORDANCE WITH THE
STALKING HORSE AGREEMENT AND (III) GRANTING RELATED RELIEF

TO THE HONORABLE ROBERT D. DRAIN,

UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully submit this response to the objections filed (collectively, the "**Objections**") to the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) Approving the Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (ECF No. 450) (the "**Motion**").[2]

### Debtors' Response

1.    The Motion seeks entry of an order (the "**Bidding Procedures Order**") (i) approving Bidding Procedures to sell the Debtors' home improvement business (the "**SHIP Business**"), (ii) scheduling an auction (the "**Auction**") of the SHIP Business assets (the "**Assets**"), (iii) scheduling a sale hearing to consider the approval of the proposed sale transaction (the "**Sale Hearing**"), (iv) approving the form and manner of notice of the sale transaction, Auction and Sale Hearing (the "**Sale Notice**"), (v) approving bidding protections for the sale of the SHIP Business to Service.com (the "**Stalking Horse Bidder**") in accordance with

---

[2] Capitalized terms used herein but not otherwise defined will have the meanings ascribed to them in the Motion.

the terms of the Asset Purchase Agreement, entered into on November 2, 2018 by the Debtors and the Stalking Horse Bidder (the "**Stalking Horse Agreement**"), (vi) authorizing and approving the notice of potential assumption and assignment of the SHIP Business executory contracts and unexpired leases (the "**Assumption and Assignment Notice**"), and (vii) authorizing and approving procedures for the assumption and assignment of, and determination of cure costs for, executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"). Additionally, the Motion seeks entry of an order (the "**Sale Order**"), which will be filed with the Court at least 14 days prior to the Sale Hearing approving the Stalking Horse Agreement or the asset purchase agreement executed by the Successful Bidder.

2.     Objections to the Motion (the "**Objections**") have been filed by Automotive Rentals, Inc. and ARI Fleet LT (collectively, "**ARI**," and the objection, the "**ARI Objection**") (ECF No. 544) and the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**," and the objection, the "**U.S. Trustee Objection**") (ECF No. 523).

3.     In addition to the Objections, two reservations of rights (**the "Reservations of Rights**") were filed with respect to the Motion, specifically (1) the reservation of rights of ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company and Federal Insurance Company, filed on November 8, 2018 (ECF No. 546), and (2) footnote 10 to the *Limited Objection and Reservation of Rights of Simon Property Group, L.P. to the Debtors' Motions for Approval of Bidding Procedures and Lease Rejection Procedures*, filed on November 9, 2018 (ECF No. 627).

WEIL:\96796850\3\73217.0004

4.     Since the Motion was filed, the Debtors have worked with attorneys for the Creditors' Committee and attorneys for the DIP ABL Agents (as defined in the interim order approving the Debtors' DIP facility (ECF No. 101)) to resolve their comments to the Stalking Horse Agreement, the Bidding Procedures Order, and the Bidding Procedures.

5.     The revised draft of the Bidding Procedures Order, a copy of which is attached hereto as **Exhibit A**, reflects the changes agreed to by the Debtors, the Creditors' Committee, the DIP ABL Agents and the Stalking Horse Bidder, and has been approved by these parties.   In addition, the Bidding Procedures Order reflects changes that have been made to resolve the ARI Objection.[3]   A redline comparing changes to the Bidding Procedures Order against the version of the Bidding Procedures Order filed with the Motion is attached hereto as **Exhibit B**.

6.     In addition, in response to comments received by the Debtors to the Stalking Horse Agreement, the Debtors and the Stalking Horse Bidder entered into the Amendment to Asset Purchase Agreement, dated as of November 13, 2018 (the "**Amendment**"), which has been approved by the Creditors' Committee and the DIP ABL Agents, and is attached hereto as **Exhibit C**.

**The U.S. Trustee Objection**

7.     The U.S. Trustee Objection requests that a consumer privacy ombudsman be appointed with respect to the sale of the Debtors' customers' personally identifiable information, and states that the Debtors have not disclosed their privacy policies.  The Debtors have been working with the U.S. Trustee to resolve the U.S. Trustee Objection, including by providing the Debtors' privacy policies to the U.S. Trustee.

---

[3] The Debtors have been advised that the ARI Objection will be withdrawn.

WEIL:\96796850\3\73217.0004

8.      The Bidding Procedures Order provides as follows in paragraph 37:

For purposes of Section 363(b)(1) of the Bankruptcy Code, if the Debtors seek to transfer any personally identifiable information about individuals through or in connection with the Sale Transaction, other than pursuant to Company privacy policies, the Debtors will promptly alert the US Trustee, who will determine whether appointment of a consumer privacy ombudsman is required.

9.      The Debtors intend to comply fully with this language, and will continue to work to resolve the U.S. Trustee Objection.  If the parties agree to an appointment of a privacy ombudsman in connection with the sale of the SHIP Business, the Debtors will promptly notify the Court.

## **CONCLUSION**

10.      Inasmuch as the ARI Objection has been resolved and the Debtors have agreed to work with the U.S. Trustee on the ombudsman issue, the Debtors respectfully request that the Court approve the Motion.


Dated: November 13, 2018
        New York, New York

                              /s/ Jacqueline Marcus
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:  (212) 310-8007
                              Ray C. Schrock, P.C.
                              Jacqueline Marcus
                              Garrett A. Fail
                              Sunny Singh

                              *Attorneys for Debtors and Debtors in Possession*

**Exhibit A**

**Revised Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                           :

                                                :          **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,       :

                                                :          **Case No. 18-23538 (RDD)**

                                                :

            Debtors.[1]                          :          **(Jointly Administered)**

---------------------------------------------------------------x

## ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SEARS HOME IMPROVEMENT BUSINESS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR AND HEARING TO APPROVE SALE OF SEARS HOME IMPROVEMENT BUSINESS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (F) GRANTING RELATED RELIEF

Upon the motion, dated November 3, 2018 (ECF No. 450) (the "**Motion**"),[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms utilized but not defined herein shall have the meanings given them in the Motion or the Bidding Procedures, as applicable.

of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i)(a) approving the Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>** (the "**Bidding Procedures**"), in connection with a sale of the Sears Home Improvement business (the "**SHIP Business**") owned by the Debtors (the "**Sale Transaction**"); (b) authorizing the Debtors to offer certain bid protections (the "**Bid Protections**") to the **Stalking Horse Bidder**; (c) scheduling an auction of the Assets (the "**Auction**") and a hearing for approval of the proposed Sale Transaction (the "**Sale Hearing**"); (d) authorizing and approving the form and manner of notice of the Sale Transaction, Auction, and Sale Hearing, substantially in the form attached hereto as **<u>Exhibit 2</u>** (the "**Sale Notice**"); (e) authorizing and approving the procedures for the assumption and assignment of executory contracts, unexpired personal property leases, or unexpired non-residential real property leases of the SHIP Business (collectively, the "**Contracts** and **Leases**," and such procedures, the "**Assumption and Assignment Procedures**") and approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in the form attached hereto as **<u>Exhibit 3</u>** (the "**Assumption and Assignment Notice**"); (ii) approving the sale of the SHIP Business in accordance with the Stalking Horse Agreement; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31,

2

2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405), such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on November 15, 2018, at 10:00 a.m. (prevailing Eastern Time) (the "**Hearing**"); and upon each of the filed objections to the Motion having been resolved, including as resolved on the record of the Hearing or herein; and upon the record of the Hearing; and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the proceeds of the sale of the Assets.

B.    The Bidding Procedures comply with the requirements of Local Rule 6004-1.

C.    The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

WEIL:\96789393\5\73219.0004

D.      The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Bid Protections, (iii) the Sale Notice, (iv) the Assumption and Assignment Procedures, and (v) the Assumption and Assignment Notice.

E.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required, except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.    A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest, including those persons and entities entitled to notice pursuant to Bankruptcy Rule 2002.

F.      The Assumption and Assignment Procedures, Sale Notice, and Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Transaction, the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the proposed Cure Costs, the potential assumption and assignment of Contracts and Leases, and all relevant important dates and deadlines with respect to the foregoing, and no other or further notice of the sale of the SHIP Business or the assumption and assignment of Contracts and Leases in connection therewith is required.

G.      The Debtors' ability to provide Bid Protections, including the Break-Up Fee, to the Stalking Horse Bidder is necessary to ensure that the Stalking Horse Bidder will continue to pursue the Sale Transaction contemplated by the Stalking Horse Agreement.  To the extent payable under the Stalking Horse Agreement, the Break-Up Fee is (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate with the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; and (iii) fair, reasonable, and appropriate in

4

light of the size and nature of the proposed Sale Transaction and the efforts that have been and will be expended by a Stalking Horse Bidder in connection with the Debtors' sale process.

H.      The Bidding Procedures were negotiated in good faith, and are reasonably designed to promote active bidding at and participation in the Auction, to ensure that the highest or best value is generated for the Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is granted.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.      Absent further order of the Court, no person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the SHIP Business, or in any way participating in the Auction or the Debtors' SHIP sale process.

WEIL:\96789393\5\73219.0004

## Bidding Procedures

5.      The deadline for submitting Qualified Bids (the "**Bid Deadline**") is **December 11, 2018, at 4:00 p.m. (Eastern Time)**.  The Debtors shall promptly provide copies of all bids to each of the Consultation Parties, but in no event later than the next calendar day, subject to the provisions of the Bidding Procedures.

6.      For all purposes under the Bidding Procedures, the Stalking Horse Bidder shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the Assets by the Bid Deadline, the Debtors shall not be required to conduct an Auction for the Assets, and the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Assets included in the Stalking Horse Agreement.

7.      If, in addition to a Stalking Horse Bid, the Debtors receive at least one Qualified Bid by the Bid Deadline, the Debtors shall conduct an Auction of the Assets in accordance with the Bidding Procedures.

8.      The Auction will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **December 13, 2018, at 10:00 a.m. (Eastern Time)**, or at such other time and location as the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, may determine in their reasonable business judgment.

9.      All proceedings of the Auction shall be conducted openly, and the Consultation Parties, their professional advisors, and all creditors and other parties in interest shall be permitted to attend; provided that, the Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, establish a reasonable limit on the number of

6

representatives and/or professional advisors that may appear on behalf of or accompany Qualified Bidders or other parties in interest at the Auction. The proceedings of the Auction shall be transcribed and/or video recorded.

10.     Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets in its bid if selected as a Successful Bidder.

11.     Subject to this Order, the Bidding Procedures, and the rights of the Stalking Horse Bidder under the Stalking Horse Agreement, the Debtors shall have the right to, after consulting with the Consultation Parties, in the exercise of their reasonable business judgment, (i) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (ii) determine the "Baseline Bid;" (iii) determine the amount of each Minimum Overbid; (iv) determine which Qualified Bids are the Successful Bid and the Back-Up Bid; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, this Order, or any other order of the Court, or (c) contrary to the best interests of the Debtors and their estates; (vi) adjourn or cancel the Auction, after providing notice of such adjournment or cancellation in accordance with the Bidding Procedures; and (vii) adjourn the Sale Hearing after providing notice of such adjournment in accordance with the Bidding Procedures.

12.     The Debtors shall have the right, in their reasonable business judgment, after consulting with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, including to (i) waive terms and conditions with respect to all Prospective Bidders; (ii) extend the deadlines set forth therein; and (iii)

WEIL:\96789393\5\73219.0004

announce at the Auction modified or additional procedures for conducting the Auction; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in the Stalking Horse Agreement. Except as provided in the Stalking Horse Agreement, nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder; provided, however, that notwithstanding anything to the contrary contained herein and unless otherwise approved by the Court, no amendment or modification to the Bidding Procedures (including the extension of any of the deadlines set forth herein) shall be made by the Debtors without consultation with the Consultation Parties.

### The Sale Hearing and Sale Objection Deadline

13.    In accordance with the Bidding Procedures, the Sale Hearing shall be held before the Court on **December 18, 2018, at 10:00 a.m. (prevailing Eastern Time)** to consider (i) a sale of the SHIP Business to the Stalking Horse Bidder pursuant to the terms and conditions set forth in the Stalking Horse Agreement, if no Qualified Bid is received by the Debtors prior to the Bid Deadline, or (ii) if another Qualified Bid is received by the Debtors prior to the Bid Deadline, a sale of the SHIP Business to the Successful Bidder at the Auction (which bidder could be the Stalking Horse Bidder); provided that, the Debtors may seek an adjournment of the Sale Hearing, as the Debtors, after consultation with the Consultation Parties, deem appropriate in the exercise of their reasonable business judgment.

14.    Objections to the Sale Transaction, including any objection to the sale of the Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the

Objection Recipients by no later than **December 11, 2018, at 4:00 p.m. (Eastern Time)** (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing.

15.    Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction contemplated by the asset purchase agreement between the Debtors and the Successful Bidder (including the Stalking Horse Bidder if named the Successful Bidder), including the transfer of Assets to the Successful Bidder (and any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

## Noticing Procedures

16.    The Sale Notice is approved, and no other or further notice of the sale of the Assets, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required if the Debtors serve and publish such notice in the manner provided in the Bidding Procedures and this Order.  The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

17.    Within two (2) business days after entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases,

located at https://restructuring.primeclerk.com/sears/ (the "**Prime Clerk Website**"), the Sale Notice, which shall set forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing; and (iii) the deadlines and procedures for objecting to the proposed Sale Transaction.

18.     Within five (5) business days after entry of this Order, the Debtors shall cause the contents of the Sale Notice to be published once in *The New York Times* and *The Wall Street Journal*.

19.     Within one (1) calendar day after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website, a notice containing the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidder and the Back-Up Bidder; (ii) list all Proposed Assumed Contracts (as defined below) in the Successful Bid and the Back-Up Bid; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by the Successful Bidder for assumption and assignment in connection with the Sale Transaction; and (v) set forth the deadline and procedures for filing Adequate Assurance Objections in response to the Notice of Auction Results.

<u>**Assumption and Assignment Procedures**</u>

20.     The Assumption and Assignment Notice is reasonable, fair, and appropriate, and contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of Contracts and Leases (such Contracts and Leases, the "**Proposed Assumed Contracts**") shall be required if the Debtors file and serve such notice (and,

subsequently, the Notice of Auction Results and any applicable Notice of Assumed and Assigned Contracts) in accordance with the Assumption and Assignment Procedures and this Order.

21.     The Debtors shall use commercially reasonable efforts to, within five (5) days of the entry of the this Order, file with the Court, serve on the Sale Notice Parties, including each relevant Counterparty, and cause to be published on the Prime Clerk Website, the Assumption and Assignment Notice, which shall (i) identify the Proposed Assumed Contracts in the Stalking Horse Bid and, if known, any other Contracts or Leases that may be designated for assumption and assignment by the Stalking Horse Bidder (or its known proposed assignee) pursuant to the terms and provisions of the Stalking Horse Agreement (the "**Designation Rights Contracts**"); (ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract and Lease identified on the Assumption and Assignment Notice; (iii) provide instructions for obtaining Adequate Assurance Information (as defined herein) with respect to the Stalking Horse Bidder; (iv) expressly state that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court approval; (v) prominently display the deadline to file a Cure Objection and an Adequate Assurance Objection (each as hereinafter defined); and (vi)  prominently display the date, time, and location of the Sale Hearing.

22.     In accordance with the Stalking Horse Agreement, the Debtors may, until eight (8) business days prior to the Sale Hearing, add Contracts and Leases to the Designation Rights Contracts by filing supplemental Assumption and Assignment Notices, which will be deemed to update any previously filed Assumption and Assignment Notices.

23.     In accordance with the terms of the Stalking Horse Agreement, on or before a date that is four (4) business days before the Sale Hearing (the "**Designation Deadline**"), the

Stalking Horse Bidder shall provide to the Debtors a final schedule of Designation Rights Contracts.

24.    The Debtors will use commercially reasonable efforts to, on or before a date that is three (3) business days before the Sale Hearing, file with the Court, serve by overnight delivery on the applicable Counterparty, and cause to be published on the Prime Clerk Website, a final notice of assumption and assignment of the applicable Designation Rights Contracts to the Stalking Horse Bidder (the "**Notice of Assumed and Assigned Contracts**").

25.    The same procedures shall apply with respect to any designation rights of a Successful Bidder pursuant to the terms of an asset purchase agreement executed by the Debtors.

26.    Any Counterparty who wishes to object to the Debtors' calculation of the Cure Costs with respect to the Counterparty's Contract or Lease, must file with the Court and serve on the Objection Recipients, in accordance with the Debtors' Case Management Order, a written objection (a "**Cure Objection**") that (i) identifies the applicable Contract or Lease; (ii) states, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (iii) includes any appropriate documentation in support thereof, by no later than **December 11, 2018 at 4:00 p.m. (prevailing Eastern Time)**.

27.    If a timely Cure Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, the amount to be paid or reserved with respect to such Cure Objection shall be determined by the Court at the Sale Hearing. The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to paragraph 28 of this Order.

12

28.    A Cure Objection may, at the Debtors' option, after consulting with the Stalking Horse Bidder or the Successful Bidder, as applicable, be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction in the Debtors' discretion; provided that, the Debtors maintain a cash reserve equal to the cure amount asserted by the objecting Counterparty.

29.    If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the cost to cure any defaults under the relevant Contract or Lease and any proof of claim asserting a claim for such amount shall be expunged without further order of the Court. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease, through the date of assumption and assignment, whether in a proof of claim or otherwise, as against the Debtors, the Successful Bidder, or their property.

30.    In accordance with the Bidding Procedures, to qualify as a Qualified Bidder, each Prospective Bidder shall provide with its bid information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including the Prospective Bidder's financial wherewithal and willingness to perform under the Proposed Assumed Contracts and any other Contracts or Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for

13

assumption and assignment in connection with a Sale Transaction (such information, "**Adequate Assurance Information**").

31.    To the extent Adequate Assurance Information includes non-public information, it shall be provided to affected Counterparties on a strictly confidential basis.  The Assumption and Assignment Notice shall include instructions for requesting and obtaining such non-public Adequate Assurance Information on a strictly confidential basis.  Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied; and (ii) to support any Adequate Assurance Objection filed by the Counterparty.

32.    Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Stalking Horse Bidder's or a Successful Bidder's (a) ability to provide adequate assurance of future performance or (b) the proposed form of adequate assurance of future performance with respect to such Contract or Lease (an "**Adequate Assurance Objection**"), shall file with the Court and serve on the Objection Recipients, including the Successful Bidder, its Adequate Assurance Objection, which must (i) be in writing; (ii) identify the applicable Contract or Lease; (iii) comply with Debtors' Case Management Order; (iv) state, with specificity, the legal and factual bases for the Adequate Assurance Objection; and (v)  include any appropriate documentation in support thereof by no later than:

> (i)    **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)**, if the Adequate Assurance Objection is with respect to assumption and assignment to the Stalking Horse Bidder of any Proposed Assumed Contract or Designation Rights Contract that was identified in and noticed pursuant to the Assumption and Assignment Notice; and

(ii) **December 17, 2018, at noon (prevailing Eastern Time)**, (a) if the Adequate Assurance Objection is with respect to the assignment to a Successful Bidder (including the Stalking Horse Bidder, if named a Successful Bidder) of any Proposed Assumed Contract or Contract or Lease that later may be designated by a Successful Bidder for assumption and assignment, that was only identified and noticed pursuant to the Notice of Auction Results, and (b) if the Adequate Assurance Objection is with respect to assumption and assignment to the Stalking Horse Bidder of any Proposed Assumed Contract or Designation Rights Contract that was only identified in and noticed pursuant to a supplemental Assumption and Assignment Notice.

33.      If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors in their discretion.

34.      If a Counterparty fails to file with the Court and serve on the Objection Recipients, including the Stalking Horse Bidder or the Successful Bidder, a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the relevant Contract or Lease. The Stalking Horse Bidder or the Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

35.      The inclusion of a Contract, Lease, or Cure Costs with respect thereto on the Assumption and Assignment Notice, the Designation Notice or the Notice of Auction Results, shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidder, or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on the Assumption and

Assignment Notice, the Designation Notice and the Notice of Auction Results. The Debtors'
inclusion of any Contract or Lease on the Assumption and Assignment Notice, Designation Notice
or the Notice of Auction Results shall not be a guarantee that such contract or lease ultimately will
be assumed or assumed and assigned.

### **General Provisions**

36.    All persons and entities (whether or not selected as a Qualified Bidder) that
submit a bid for any of the Assets during the sale process, including at the Auction, shall be deemed
to have knowingly and voluntarily (i) submitted to the exclusive jurisdiction of this Court with
respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and
the Sale Transaction; (ii) consented to the entry of a final order by the Court in connection with
the Motion or this Order (including any disputes relating to the bidding process, the Auction,
and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent
of the parties, cannot enter final orders or judgments in connection herewith consistent with Article
III of the United States Constitution; and (iii) waived any right to jury trial in connection with any
disputes relating to the any of the foregoing matters.

37.    For purposes of Section 363(b)(1) of the Bankruptcy Code, if the Debtors
seek to transfer any personally identifiable information about individuals through or in connection
with the Sale Transaction, other than pursuant to Company privacy policies, the Debtors will
promptly alert the US Trustee, who will determine whether appointment of a consumer privacy
ombudsman is required.

38.    Prior to mailing and publishing the Sale Notice and the Assumption and
Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information,

WEIL:\96789393\5\73219.0004

conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

39.    Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP ABL Orders"**), including the *Interim Order (i) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (ii) Granting Adequate Protection to the Prepetition Secured Parties; (iii) Modifying the Automatic Stay; (iv) Scheduling Final Hearing; and (v) Granting Related Relief* [ECF No. 101]; (ii) the documentation governing the Debtors' use of cash collateral and post-petition financing facilities; and (iii) the Approved Budget (as defined in the DIP ABL Orders).

40.    To the extent there is any inconsistency between the terms of any of the DIP ABL Orders and this Order, the terms of the DIP ABL Order (or DIP ABL Orders, as applicable) shall control.

41.    Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective, final and enforceable immediately upon entry and its provisions shall be self-executing.

42.    Notwithstanding anything to the contrary contained in this Order or in the Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby

WEIL:\96789393\5\73219.0004

expressly reserved and not modified, waived or impaired in any way by this Order or the Bidding

Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale

of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL

Documents, the DIP ABL Orders and the Prepetition ABL Documents, as applicable; and (iii)

nothing in this Order or in the Bidding Procedures shall amend, modify, or impair any provision

of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders

thereunder.

43.     The Debtors are authorized to take all actions necessary to effectuate the

relief granted in this Order.

44.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
          White Plains, New York

                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

18

**<u>Exhibit 1</u>**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
In re                                                   :
                                                        :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*               :
                                                        :        **Case No. 18-23538 (RDD)**
                                                        :
        Debtors.[1]                                     :        **(Jointly Administered)**
--------------------------------------------------------------x

## BIDDING PROCEDURES FOR SALE OF
## SEARS HOME IMPROVEMENT BUSINESS

The procedures set forth herein (the "**Bidding Procedures**") will be employed in connection with a sale or disposition of the Sears Home Improvement business (the "**SHIP Business**) owned by Sears Holdings Corporation and its affiliates (collectively, the "**Debtors**").

By the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) Approving the Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (the "**Motion**"), the above-captioned Debtors, as debtors in possession (collectively, the "**Debtors**"), sought, among other things, approval of the Bidding Procedures for soliciting bids for, conducting an auction (the "**Auction**") of, and consummating a sale of the assets of SHIP Business, as further described herein (the "**Sale Transaction**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

On November __, 2018, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered the *Order (A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption And Assignment Procedures, and (F) Granting Related Relief* (ECF No. [__]) (the "**SHIP Bidding Procedures Order**").[2]

On November 2, 2018, the Debtors and Service.com (the "**Stalking Horse Bidder**") entered into an asset purchase agreement (the "**Stalking Horse Agreement**") for the sale of the SHIP Business, pursuant to which: (i) the Stalking Horse Bidder agreed to pay Sixty million dollars ($60,000,000) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse Agreement (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Acquired Assets, subject to higher or better offers, the outcome of the Auction (as defined herein) and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of substantially all of the Acquired Assets by any bidder other than the Stalking Horse Bidder and the sale to that bidder is consummated, then the Stalking Horse Bidder will be paid a break-up fee in the amount equal to 1.5% of the Cash Purchase Price (the "**Break-Up Fee**").

To the extent the Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to the Bidding Procedures or at any auction, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

Unless otherwise approved by the Bankruptcy Court, no amendment or other modification to these Bidding Procedures (including the extension of any of the deadlines set forth herein) shall be made by the Debtors without consulting with the Consultation Parties.

# I.
## Description of the Assets

The Debtors are seeking to sell all assets, properties and rights exclusively related to, used exclusively in or held exclusively for use in the SHIP Business (the "**Assets**"), including, but not limited to, intellectual property, business contracts, real estate, customer data, receivables, and all other assets identified as "Transferred Assets" in the Stalking Horse Agreement, attached to the Motion as **Exhibit B**.

A party must submit a bid for all of the Assets and all liabilities identified as "Transferred Assets" and "Assumed Liabilities" in the Stalking Horse Agreement, except that a party shall not be required to assume or exclude the same Business Contracts (as defined in the Stalking Horse Agreement) as assumed or excluded by the Stalking Horse Bidder.

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the SHIP Bidding Procedures Order.

WEIL:\96789397\4\73219.0004

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

## II.
## Important Dates and Deadlines

| | |
|---|---|
| **November 15, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Hearing to consider approval of Bidding Procedures and entry of Bidding Procedures Order |
| **November 27, 2018** | Deadline for Debtors to provide applicable Counterparties Adequate Assurance Information with respect to the Stalking Horse Bidder (and any proposed assignee/designee of the assets, if applicable) |
| **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)** | Deadline for competing bidders to submit binding bids, together with copy of an Asset Purchase Agreement blacklined against the Stalking Horse Agreement and Good Faith Deposit |
| **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)** | Deadline to object to (i) the proposed Sale Transaction, (ii) Debtors' proposed Cure Costs, and (iii) the assumption of and assignment to the Stalking Horse Bidder of any Contracts Proposed to be Assumed in the Stalking Horse Agreement |
| **December 12, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders |
| **December 13, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Auction to be held at the offices of Weil, Gotshal & Manges LLP (if necessary) |
| **December 14, 2018 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide applicable Counterparties with Adequate Assurance Information for the Successful Bidder |
| **December 17, 2018 at noon (prevailing Eastern Time)** | Deadline to object to (i) conduct of the Auction, (ii) sale of the SHIP Business and (iii) the assumption of and assignment of Proposed Assumed Contracts to the Successful Bidder |
| **December 18, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Date of Sale Hearing |

## III.
## Noticing

### A.    Consultation Parties

Throughout the sale process, the Debtors and their advisors will consult with the following parties (collectively, the "**Consultation Parties**"):

    i.    the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**") and its advisors, including Akin Gump Strauss Hauer & Feld LLP;

    ii.    Bank of America, N.A., in its capacity as the administrative agent under the First Lien Credit Facility and the DIP ABL Agent under the senior debtor-in-possession

3

("**DIP**") facility, and its advisors, including Skadden, Arps, Slate, Meagher & Flom LLP and Berkeley Research Group, LLC; and

iii.     Wells Fargo Bank, National Association, in its capacity as Co-Collateral Agent under the First Lien Credit Facility and Co-Collateral Agent under the senior DIP ABL Facility (as defined in the interim order approving the DIP facility) (together with Bank of America, N.A., the "**DIP ABL Agents**") and its advisors, including Choate, Hall & Stewart LLP.

The Debtors shall promptly provide copies of all bids received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after receipt; provided that the Consultation Parties must treat such bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder. The Debtors shall not consult with or provide copies of bids to any Consultation Party or any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Assets pending, has expressed any written interest in bidding for the Assets, or if the Bid Deadline (as defined hereafter) has not passed at the applicable time; provided, however, that if such Consultation Party chooses not to submit any bid, then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended hereunder). Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid (as hereinafter defined), the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable Assets, and shall not provide any confidential information regarding the Assets or a transaction involving the Assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Rights that Consultation Parties may have pursuant to the terms of other agreements or orders of the Court shall not be affected by these Bidding Procedures or the Bidding Procedures Order.

**B.**     **Bid Notice Parties**

Qualified Bids must be submitted in writing to the following parties (collectively, the "**Bid Notice Parties**"):

i.     the Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates IL 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq. (counsel@searshc.com);

ii.     the Debtors' attorneys, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Gavin Westerman, Esq. (gavin.westerman@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com) and Sunny Singh, Esq. (sunny.singh@weil.com)); and

4

iii.    the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

## C.    Sale Notice Parties

The "**Sale Notice Parties**" shall include the following persons and entities:

i.    the Consultation Parties;

ii.    the Master Service List identified in the Bankruptcy Court's *Amended Order Implementing Certain Notice and Case Management Procedures* [ECF No. 405] (the "**Case Management Order**");

iii.    all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction involving any material portion of the SHIP Business during the past nine (9) months, including any person or entity that has submitted a bid for any material portion of the SHIP Business;

iv.    all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors);

v.    all non-Debtor parties (each, a "**Counterparty**") to any executory contracts, unexpired personal property leases, or unexpired non-residential real property leases utilized in the SHIP Business (collectively, the "**Contracts** and **Leases**") that could be assumed or rejected in connection with a Sale Transaction;

vi.    any governmental authority known to have a claim against the Debtors in these chapter 11 cases;

vii.    all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service;

viii.    all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency, if applicable;

ix.    the United States Attorney General;

x.    the United States Attorney for the Southern District of New York;

xi.    the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate;

xii.    the Antitrust Division of the United States Department of Justice;

xiii.    the Federal Trade Commission;

5

xiv.    all other persons and entities as directed by the Bankruptcy Court.

Within two (2) business days after entry of the Bidding Procedures Order, the Debtors will file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/sears/ (the "**Prime Clerk Website**"), a notice (the "**Sale Notice**") setting forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing (as hereinafter defined); and (iii) the deadlines and procedures for objecting to the proposed Sale Transaction.

Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall cause the information contained in the Sale Notice to be published once in *The New York Times* and *The Wall Street Journal*.

## D.    Objection Recipients

Sale Objections (as hereinafter defined) shall be filed with the Bankruptcy Court and served on the following parties (collectively, the "**Objection Recipients**"): (i) the Bid Notice Parties; (ii) the Master Service List identified in the Case Management Order and (iii) counsel to the Stalking Horse Bidder by no later than (x) **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)**, (the "**Sale Objection Deadline**").

## E.    Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption, assignment, and designation of Contracts and Leases in accordance with the Bidding Procedures Order.

## IV.
## Bidder Qualifications

Each person or entity that desires to participate in the Auction (each, a "**Prospective Bidder**") must be determined by the Debtors, after consultation with the Consultation Parties, to satisfy the following eligibility requirements:

## A.    Due Diligence

To be eligible to participate in the Auction, a Prospective Bidder must first execute a confidentiality agreement, in form and substance satisfactory to the Debtors. Upon execution of a valid confidentiality agreement, any Prospective Bidder identified by the Debtors, after consultation with the Consultation Parties, to be reasonably likely to be a Qualified Bidder (as hereinafter defined) that wishes to conduct due diligence on the SHIP Business may be granted access to confidential information regarding the same, including an information package containing information and financial data with respect to the applicable Assets and access to a data room (the "**Data Room**") with confidential electronic data concerning the SHIP Business and the Assets. If the Debtors, after consultation with the Consultation Parties, determine that a Prospective Bidder does not qualify as a Qualified Bidder, the Prospective Bidder shall not be

6

entitled to access to the Data Room or receive additional non-public information regarding the SHIP business, the Assets, or the sale process.

Promptly upon a Prospective Bidder entering into a confidentiality agreement, but in any event no later than the next calendar day following such event, the Debtors will notify each of the Consultation Parties and provide to such Consultation Parties copies of such executed confidentiality agreements.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders. All due diligence requests shall be directed to the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

**B.      Bid Deadline**

Any Prospective Bidder that intends to participate in the Auction must submit a Qualified Bid (as hereinafter defined) on or before **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") in writing to the Bid Notice Parties.

The Debtors may, after consulting with the Consultation Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Prospective Bidders.

**C.      Qualified Bid Requirements**

To qualify as a "**Qualified Bid**," a bid must (i) be the Stalking Horse Bid, or (ii) be in writing and determined by the Debtors, after consultation with the Consultation Parties, to satisfy the following requirements:

1.      Identification of Bidder. A Qualified Bid must fully disclose the legal identity of each person or entity bidding for the Assets or otherwise participating in the Auction in connection with such bid (including any equity holders or other financial backers, if the Prospective Bidder is an entity formed for the purpose of submitting bids or consummating a Sale Transaction), and the complete terms of any such participation, and must also disclose any connections, arrangements or agreements, whether oral or written, with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

2.      Purchased Assets. A Qualified Bid must clearly identify the following:

a.      the Assets to be purchased, including any Contracts and Leases of the Debtors that would be assumed and assigned in connection with the proposed Sale Transaction (all such Contracts and Leases, the "**Proposed Assumed Contracts**");

7

b.      the liabilities, if any, to be assumed, including any debt to be assumed; and

c.      the cash purchase price of the bid.

The Debtors reserve the right to ask any bidder to allocate the value ascribed to a bid for any particular Asset, and to ask about any significant assumptions on which such valuations are based.

3.      <u>Form of Consideration</u>.

a.      <u>All-Cash Offer</u>.  The bid must include a statement confirming that the bid is (i) based on an all-cash offer, and (ii) sufficient cash consideration to pay the Break-Up Fee.  No credit bidding shall be allowed in connection with a bid for the Assets.

4.      <u>Purchase Price; Minimum Bid</u>. Each bid submitted must (i) be a bid for all of the Assets contained in the Stalking Horse Bid, except that it shall not be required to designate the same Business Contracts (as defined in the Stalking Horse Agreement) as assumed or excluded Assets, as they are designated by the Stalking Horse Bidder; and (ii) exceed the cash purchase price in the Stalking Horse Bid, plus the Break-Up Fee or (iii) propose an alternative transaction that provides better terms than the Stalking Horse Bid, taking into account the Break-Up Fee.

If the value of the bid relative to the Stalking Horse Bid includes additional non-cash components (such as fewer contingencies than are in the Stalking Horse Agreement), the bid must include a detailed analysis of the value of any additional non-cash component and any back-up documentation to support such value.

5.      <u>Good Faith Deposit</u>.  A Qualified Bid must be accompanied by a "**Good Faith Deposit**" in the form of cash in an amount equal to ten percent (10%) of the proposed purchase price offered to purchase the Assets.  Good Faith Deposits shall be deposited prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**"), pursuant to the escrow agreement to be provided by the Debtors to Prospective Bidders, and Qualified Bidders shall provide information reasonably requested by the Escrow Agent to establish the deposit, including KYC information.  All Good Faith Deposits shall be held in escrow until no later than ten (10) days after the conclusion of the Auction (except for the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder), and thereafter returned to the respective bidders in accordance with the provisions of Part VII of these Bidding Procedures.

To the extent that a bid is modified at or prior to the Auction, to the extent the bidder is the Successful Bidder or the Back-Up Bidder, the bidder must

pay an additional amount into escrow, within two (2) business days of the Auction, such that the final Good Faith Deposit for the bid equals ten percent (10%) of the proposed purchase price offered to purchase the Assets.

6.      <u>Proposed Asset Purchase Agreement</u>.  A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (a "**Proposed APA**"), which Proposed APA must be marked to reflect the differences between the Stalking Horse Agreement and the Prospective Bidder's Proposed APA.

Specifically, a Proposed APA shall (i) specify the purchase price in U.S. dollars; (ii) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtors); (iii) identify any Proposed Assumed Contracts; and (iv) be executed by the Prospective Bidder.

7.      <u>Employee and Labor Terms</u>.  A Qualified Bid must include a statement of proposed terms for employees, including with respect to the Debtors' affected collective bargaining agreements (the "**Affected Labor Agreements**") and affected labor unions (the "**Affected Unions**").

8.      <u>Financial Information</u>. A Qualified Bid must include the following:

a.      a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction contemplated by the Proposed APA;

b.      if applicable, information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**"), which Adequate Assurance Information may also include (x) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of applicable Contracts and Leases; and (y) financial statements, tax returns, and annual reports; and

9

c.   sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors, after consulting with the Consultation Parties, to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to consummate the Sale Transaction contemplated in the Prospective Bidder's Proposed APA in a timely manner.

9.   <u>Representations and Warranties</u>. A Qualified Bid must include the following representations and warranties:

a.   a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the SHIP Business and the Assets prior to submitting its bid;

b.   a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Proposed APA ultimately accepted and executed by the Debtors; and

c.   a statement that the Prospective Bidder has not engaged in any collusion with respect to the submission of its bid.

10.   <u>Required Approvals</u>. A Qualified Bid must include a statement or evidence (i) that the Prospective Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("**HSR Filings**"), as amended, if applicable, and pay the fees associated with such filings; and (ii) identifying all required governmental and regulatory approvals and an explanation and/or evidence of the Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the SHIP Business from and after closing the Sale Transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals. A Prospective Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain the Prospective Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

11.   <u>Authorization</u>.   A Qualified Bid must include evidence of corporate authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution,

WEIL:\96789397\4\73219.0004

and delivery of a bid, participation in the Auction, and closing of the transaction contemplated by the Prospective Bidder's Proposed APA in accordance with the terms of the bid and these Bidding Procedures.

12.    <u>Other Requirements</u>. A Qualified Bid shall

a.    expressly state that the Prospective Bidder agrees to serve as a back-up bidder (a "**Back-Up Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the Assets;

b.    state that the bid is formal, binding, and unconditional (except as set forth in an applicable asset purchase agreement ultimately executed by the Debtors); is not subject to any further due diligence; and is irrevocable until the earliest to occur of (i) the first business day after the consummation of a Sale Transaction with the Successful Bidder; (ii) fifty (50) days after the conclusion of the Auction; and (iii) the release of the applicable Back-Up Bid by the Debtors, after consulting with the Consultation Parties (such date, the "**Back-Up Termination Date**");

c.    with the exception of the Stalking Horse Bid, expressly state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or sale process;

d.    expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets and/or participating in the Auction;

e.    not contain any unsatisfied financing contingencies of any kind;

f.    a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

g.    be accompanied by any reasonable information requested by a consumer privacy ombudsman, should one be appointed in the Debtors' chapter 11 cases pursuant to section 363(b)(1)(B) of the Bankruptcy Code;

11

h.      be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties;

i.      include contact information for the specific person(s) the Debtors should contact in the event they have questions about the Prospective Bidder's bid; and

j.      a covenant to comply with the terms of the Bidding Procedures and the Bidding Procedures Order.

For the avoidance of doubt, the Stalking Horse Bid is a Qualified Bid that complies with or is exempted from the foregoing requirements.

## D.      Qualified Bidders

A bid received for the Assets that is determined by the Debtors, after consultation with the Consultation Parties, to meet the requirements set forth in Section C above will be considered a "Qualified Bid," and the Stalking Horse Bidder, and any bidder that submits a Qualified Bid (including the Stalking Horse Bid) will be considered a "**Qualified Bidder**."

The Debtors may amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment, and after consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

## V.
## Bid Review Process

The Debtors will evaluate timely bids, in consultation with the Consultation Parties and, may, based upon their evaluation of the content of each bid, engage in negotiations with Prospective Bidders who submitted bids, as the Debtors deem appropriate, in their reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law. In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1.      the amount of the purchase price set forth in the bid;

2.      any Business Contracts included in or excluded from the bid, including any Proposed Assumed Contracts;

3.      the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, taking into account the Stalking Horse Bidder's rights to the Break-Up Fee;

4.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities,  including the release or replacement of letters of credit;

12

5.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.      the impact on employees and employee claims against the Debtors;

7.      the impact on trade creditors and landlords; and

8.      any other factors the Debtors may reasonably deem relevant, consistent with their fiduciary duties.

The Debtors, in consultation with the Consultation Parties, will make a determination regarding which bids qualify as a Qualified Bids, and will notify Prospective Bidders whether they have been selected as Qualified Bidders by no later than **December 12, 2018**.

The Debtors reserve the right to work with any Prospective Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid. Without the prior written consent of the Debtors and consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid.

After consultation with the Consultation Parties, the Debtors shall make a determination regarding the following:

1.      the highest or best Qualified Bid (the "**Baseline Bid**" and, such bidder or group of bidders, the "**Baseline Bidder**") to serve as the starting point at the Auction; and

2.      which bids have been determined to be Qualified Bids.

As soon as practicable, but in no event later than earlier of (i) the next calendar day, or (ii) two hours prior to the commencement of the Auction, the Debtors will provide copies of the Baseline Bid to the Consultation Parties and the Stalking Horse Bidder. The Debtors will consult with the Consultation Parties regarding the designation of the Baseline Bid and advise the Consultation Parties of the designated Baseline Bid within one (1) calendar day of the Debtors' determination of the Baseline Bid.

## VI.
## The Auction

If no Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct an Auction for the Stalking Horse Bid, and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice indicating that the Auction for the Stalking Horse Bid has been cancelled and that the Stalking Horse Bidder is the Successful Bidder, and setting forth the date and time of the applicable Sale Hearing.

WEIL:\96789397\4\73219.0004

**Except as provided in the Stalking Horse Agreement, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.**

The Auction, if any, will be conducted at the offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 on **December 13, 2018, at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties. If held, the proceedings of the Auction will be transcribed and/or video recorded.

## A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. The Auction will be conducted openly, and the Consultation Parties, their professional advisers, and all creditors will be permitted to attend; provided that the Debtors may, in their reasonable business judgment, and after consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder and other parties in interest at the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction, and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets if selected as the Successful Bidder.

## B.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment, in consultation with the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law:

1.    Baseline Bid.  Bidding shall commence at the amount of the Baseline Bid.

2.    Minimum Overbid.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid. The Debtors shall, after consulting with the Consultation Parties, announce at the outset of the Auction the minimum required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**"). The Debtors may, in their reasonable business judgment, and after consulting with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

3.    Stalking Horse Credit for Break-Up Fee. If a Qualified Bidder who is not the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Break-Up Fee to be counted toward its bid. The cash and other considerations proposed by such Qualified Bidder must exceed the Stalking Horse Bid by the purchase price

14

contained in the Stalking Horse Bid, plus the Break-Up Fee, by at least the amount of the Minimum Overbid to advance to the next round of bidding. To the extent that the Stalking Horse Bidder submits a competing bid for the Assets, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Break-Up Fee to be counted toward its bid and the computation of the Minimum Overbid for bidders to advance to the next round of bidding.

4.  <u>Highest or Best Offer</u>.  After the first round of bidding and between each subsequent round of bidding, the Debtors, after consulting with the Consultation Parties, shall announce the bid that they believe to be the highest or best offer (each such bid, a "**Leading Bid**").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

The Auction may include open bidding in the presence of all other Qualified Bidders.  All Qualified Bidders shall have the right to submit additional bids and make modifications to their Proposed APA at the Auction to improve their bids.  The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtors shall have the right, after consulting with the Consultation Parties, to determine, in their reasonable business judgment, which bid is the highest or best bid and reject, at any time, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, or the best interests of the Debtors and their estates; except that, if the Stalking Horse Bid as reflected in the Stalking Horse Agreement is the only Qualified Bid received, the foregoing shall be inoperative with respect to the Stalking Horse Bid. No attempt by the Debtors to reject a bid pursuant to this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under the Stalking Horse Agreement (although the same may be consensually modified during the Auction).

## C.   **Auction Results**

1.  <u>Successful Bid</u>.  Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which Qualified Bids constitute the highest or best Qualified Bid (the "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity of the bidder who submitted the Successful Bid (the "**Successful Bidder**") and the amount of the purchase prices and other material terms of the Successful Bid.

15

A Successful Bidder shall, within one (1) business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

2.  Back-Up Bids. Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, and the DIP ABL Documents and except as provided in the Stalking Horse Agreement, which Qualified Bid is the next highest or next best Qualified Bid after the Successful Bid (such bid, the "**Back-Up Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identities of the Back-Up Bidder and the amount of the purchase price and other material terms of the Back-Up Bid.

Except as otherwise provided in the Stalking Horse Agreement, the Back-Up Bid shall remain open and irrevocable until the Back-Up Termination Date. If the Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Termination Date, the Back-Up Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid at the Auction.

The Debtors will, within one (1) calendar day after the conclusion of the Auction, file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidder and Back-Up Bidder; (ii) list all Proposed Assumed Contracts in the Successful Bid and Back-Up Bid; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by the Successful Bidder for assumption and assignment in connection with the Sale Transaction; and (v) set forth the deadline and procedures for filing Adequate Assurance Objections in response to the Notice of Auction Results.

## VII.
## Disposition of Good Faith Deposits

**A.    Prospective Bidders**

Within three (3) business days after the Bid Deadline, the Escrow Agent shall return to each Prospective Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit, plus any interest accrued thereon. Upon the authorized return of such Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed revoked and no longer enforceable.

**B.    Qualified Bidders**

1.  Forfeiture of Good Faith Deposit. The Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to

16

modify, amend, or withdraw its Qualified Bid, except as permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures; or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate a Sale Transaction in accordance with these Bidding Procedures and the terms of the transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

2.  <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the conclusion of the Auction.

3.  <u>Stalking Horse Bidder</u>.  Notwithstanding anything to the contrary herein, any Good Faith deposit provided by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement (including any required return of such deposit) shall be governed by the terms and conditions of the Stalking Horse Agreement.

4.  <u>Back-Up Bidders.</u>  The Escrow Agent shall return the Back-Up Bidder's Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the occurrence of the Back-Up Bid Termination Date.

5.  <u>Successful Bidder</u>. The Good Faith Deposit of the Successful Bidder shall be applied against the cash portion of the purchase price of the Successful Bid upon the consummation of the Sale Transaction.

C.    **Escrow Instructions**

The Debtors and, as applicable, the Prospective Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent providing instructions for the return of any Good Faith Deposit, to the extent such return is required by these Bidding Procedures.  If either party fails to execute such written notice, the Good Faith Deposit may only be released by an order of the Bankruptcy Court.

## VIII.
## <u>Sale Hearing</u>

At a hearing before the Bankruptcy Court (the "**Sale Hearing**"), the Debtors will seek the entry of orders authorizing and approving, among other things, the following Sale Transaction

WEIL:\96789397\4\73219.0004

(each, a "**Sale Order**"), to the extent applicable:

1.  if no other Qualified Bid is received by the Debtors, a sale of such assets to the Stalking Horse Bidder pursuant to the terms and conditions set forth in the Stalking Horse Agreement; and

2.  if another Qualified Bid is received by the Debtors, a sale of applicable Assets to the Successful Bidder at the Auction (which bidder could be the Stalking Horse Bidder).

The Debtors may, in their reasonable business judgment, after consulting with the Consultation Parties and the Successful Bidder (including the Stalking Horse Bidder if named a Successful Bidder), and consistent with the terms of the DIP ABL Documents, adjourn or reschedule any Sale Hearing with sufficient notice to the Sale Notice Parties, including by (i) an announcement of such adjournment at the applicable Sale Hearing or at the Auction, or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in the Stalking Horse Agreement.

Any objections to (A) a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the Sale Objection Deadline.

All Sale Objections not otherwise resolved by the parties shall be heard at the Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction contemplated by the Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the Stalking Horse Bidder, or the Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, in accordance with the terms of the Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the Stalking Horse Bidder or the Successful Bidder (as applicable), adjourn Cure Objections and Adequate Assurance Objections to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

# IX.
## Consent to Jurisdiction and Authority as Condition to Bidding

All Prospective Bidders and the Stalking Horse Bidder shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, an Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

# X.
## Reservation of Rights

The Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to modify these Bidding Procedures, waive terms and conditions set forth herein with respect to all Prospective Bidders, extend the deadlines set forth herein, announce at the Auction modified or additional procedures for conducting the Auction, alter the assumptions set forth herein, and provide reasonable accommodations to the Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidder (including extending deadlines as may be required for the Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Bidding Procedures, the Bidding Procedures Order, and the Stalking Horse Agreement; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or the DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders. **Nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.**

All Consultation Parties reserve the right to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

19

## XI.

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, the DIP ABL Orders and the Prepetition ABL Documents, as applicable; and (iii) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder.

## XII.
## Sale Is "As Is/Where Is"

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

WEIL:\96789397\4\73219.0004

## Exhibit 2

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

---------------------------------------------------------------x

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING FOR THE SALE OF SEARS HOME IMPROVEMENT BUSINESS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 3, 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) Approving the Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (ECF No. 450) (the "**Motion**"), seeking, among other things, approval of the bidding procedures for soliciting bids for, conducting an auction (the "**Auction**") of, and consummating a sale (the "**Sale Transaction**") of the Sears Home Improvement business (the "**SHIP Business**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

WEIL:\96789393\5\73219.0004

On November [___], 2018, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption And Assignment Procedures, and (F) Granting Related Relief* (ECF No. [___]) (the "**SHIP Bidding Procedures Order**").[2]

On November 2, 2018, the Debtors and Service.com (the "**Stalking Horse Bidder**") entered into an asset purchase agreement (the "**Stalking Horse Agreement**") for the sale of the SHIP Business, pursuant to which: (i) the Stalking Horse Bidder agreed to pay Sixty million dollars ($60,000,000) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse Agreement (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Assets, subject to higher or better offers, the outcome of the Auction (as defined herein), and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of substantially all of the Acquired Assets by any bidder other than the Stalking Horse Bidder to pay the Stalking Horse Bidder a break-up fee in the amount of 1.5% of the Cash Purchase Price (the "**Break-Up Fee**").

## Description of the Assets

The Debtors are seeking to sell all assets, properties and rights exclusively related to, used exclusively in or held exclusively for use in the SHIP Business (the "**Assets**"), including, but not limited to, intellectual property, business contracts, real estate, customer data, receivables, and all other assets identified as "Transferred Assets" in the Stalking Horse Agreement, attached to the Motion as **Exhibit B**.

A party must submit a bid for all of the Assets and all liabilities identified as "Transferred Assets" and "Assumed Liabilities" in the Stalking Horse Agreement, except that a party shall not be required to assume or exclude the same Business Contracts (as defined in the Stalking Horse Agreement) as assumed or excluded by the Stalking Horse Bidder.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

## IMPORTANT DATES AND DEADLINES

- **Bid Deadline.** Any person or entity interested in participating in the Auction must submit a Qualified Bid to the Bid Notice Parties **on or before December 11, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

- **Sale Objection Deadline**. Objections to a proposed Sale Transaction, including any objection to the sale of the Assets free and clear of liens, claims, interests, and

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the SHIP Bidding Procedures Order.

WEIL:\96789393\5\73219.0004

encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Recipients (as identified and defined in the Bidding Procedures) by no later than **December 11, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- **Auction.** An Auction for the Assets has been scheduled for **December 13, 2018 at 10:00 a.m. (prevailing Eastern Time)** and will be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (if necessary).

- **Notice of Auction Results Objection Deadline**.  Adequate Assurance Objections in response to the Notice of Auction Results and Objections to the conduct of the Auction must be filed with the Bankruptcy Court, and served on the Objection Recipients (as identified and defined in the Bidding Procedures) by no later than **December 17, 2018 at noon (prevailing Eastern Time)** (the "**Auction Notice Objection Deadline**").

- **Sale Hearing.** The Sale Hearing shall be held before the Honorable Robert D. Drain on **December 18, 2018 at 10:00 a.m. (prevailing Eastern Time)**, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

### Procedures for Sale Objections

Any objections to the proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the Sale Objection Deadline.

All Sale Objections not otherwise resolved by the parties shall be heard at the Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction contemplated by the Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the Stalking Horse Bidder, or the Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.  Notwithstanding the foregoing, in accordance with the terms of the Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the Stalking Horse Bidder or the Successful Bidder, as applicable, adjourn Cure Objections to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

WEIL:\96789393\5\73219.0004

### Additional Information

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

### Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify the Bidding Procedures, waive terms and conditions set forth therein, extend the deadlines set forth therein, and announce at the Auction modified or additional procedures for conducting the Auction. **Except as provided in the Stalking Horse Agreement, nothing shall obligate the Debtors to consummate or pursue any transaction with any bidder.**

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE APPLICABLE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, SALE ORDER, THE PROPOSED SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2018                  _____
                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York  10153
                                              Telephone:  (212) 310-8000
                                              Facsimile:  (212) 310-8007
                                              Ray C. Schrock, P.C.
                                              Jacqueline Marcus
                                              Garrett A. Fail
                                              Sunny Singh
                                              *Proposed Attorneys for Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
In re                                :
                                     :        Chapter 11
SEARS HOLDINGS CORPORATION, et al.,  :
                                     :        Case No. 18-23538 (RDD)
                                     :
          Debtors.¹                  :        (Jointly Administered)
----------------------------------------------------------x
```

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## IN CONNECTION WITH SALE OF SEARS HOME IMPROVEMENT BUSINESS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 3, 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) Approving the Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (ECF No. 450) (the "**Motion**"), seeking, among other things, approval of the bidding procedures for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

WEIL:\96789393\5\73219.0004

soliciting bids for, conducting an auction (the "**Auction**") of, and consummating the sale (the "**Sale Transaction**") of the Sears Home Improvement business (the "**SHIP Business**").

On November [__], 2018, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption And Assignment Procedures, and (F) Granting Related Relief* (ECF No. [__]) (the "**SHIP Bidding Procedures Order**").[2]

On November 3, 2018, the Debtors and Service.com (the "**Stalking Horse Bidder**") entered into an asset purchase agreement (the "**Stalking Horse Agreement**") for the sale of the SHIP Business, pursuant to which: (i) the Stalking Horse Bidder agreed to pay sixty million dollars ($60,000,000) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse Agreement (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Assets, subject to higher or better offers, the outcome of the Auction (as defined herein), and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of substantially all of the Acquired Assets by any bidder other than the Stalking Horse Bidder, and such transaction is consummated, to pay the Stalking Horse Bidder a break-up fee in the amount of 1.5% of the Cash Purchase Price (the "**Break-Up Fee**").

The SHIP Bidding Procedures Order authorizes and approves the procedures for the assumption and assignment of executory contracts, unexpired personal property leases, or unexpired non-residential real property leases of the SHIP Business (collectively, the "**Contracts and Leases**," and such procedures, the "**Assumption and Assignment Procedures**") and approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**").

**You are receiving this Notice because you may be a Counterparty to a Contract or Lease of the Debtors that is proposed to be assumed and assigned to the Stalking Horse Bidder in connection with the sale of the SHIP Business.**

### Stalking Horse Bidder's Adequate Assurance Information

The Stalking Horse Bidder's information is intended to provide the Counterparties to the Contracts and Leases with adequate assurance of future performance and to support the Stalking Horse Bidder's ability to comply with the requirements of adequate assurance of future performance, including the Stalking Horse Bidder's financial wherewithal and willingness to perform under the Contracts and Leases. **Exhibit B** hereto includes instructions for requesting and

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the SHIP Bidding Procedures Order.

obtaining any non-public Adequate Assurance Information, which shall be provided on a strictly confidential basis, in accordance with the SHIP Bidding Procedures Order.

### Proposed Assumed Contracts and Cure Costs

The Proposed Assumed Contracts in the Stalking Horse Bid and, if known, any other Contracts or Leases that may be designated for assumption and assignment by the Stalking Horse Bidder pursuant to the terms and provisions of the Stalking Horse Agreement (the "**Designation Rights Contracts**"), and the Debtors' calculation of the Cure Costs with respect to the Designation Rights Contracts, are set forth on **Exhibit B** hereto.

The inclusion of any Contract or Lease on Exhibit B does not constitute an admission that a particular Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract or Lease ultimately will be assumed or assigned. Assumption or assignment of a Contract or Lease is subject to Court approval. All rights of the Debtors with respect thereto are reserved.

Additional Contracts and Leases may become Designation Rights Contracts, in accordance with the Stalking Horse Agreement, by the Debtors' filing of supplemental Assumption and Assignment Notices of Schedules of Executory Contracts until eight (8) Business Days prior to the Sale Hearing, and any previously filed Notice of Assumption and Assignment shall be deemed to be updated accordingly.

The Stalking Horse Bidder may elect not to assume any Contract or Lease that is a Designation Rights Contract at any time up to four (4) business days prior to the Sale Hearing. The Debtors will file, on or before a date that is three (3) business days prior to the Sale Hearing, a final Notice of Assumed and Assigned Contracts, listing all Contracts and Leases that will be assumed and assigned to the Stalking Horse Bidder upon the closing of the Sale Transaction.

### Objections

#### A.  Cure Objections

Any Counterparty who wishes to object to the Debtors' calculation of the Cure Costs with respect to the Counterparty's Contract or Lease, must file with the Court and serve on the Objection Recipients, in accordance with the Debtors' Case Management Order, a written objection (a "**Cure Objection**") that (i) identifies the applicable Contract or Lease; (ii) states, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (iii) includes any appropriate documentation in support thereof, by no later than **December 11, 2018 at 4:00 p.m. (prevailing Eastern Time**).

If a timely Cure Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, the amount to be paid or reserved with respect to such Cure Objection shall be determined by the Court at the Sale Hearing. The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.

WEIL:\96789393\5\73219.0004

A Cure Objection (and only a Cure Objection) may, at the Debtors' option, after consulting with the Stalking Horse Bidder (or Successful Bidder, as applicable), be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction in the Debtors' discretion; <u>provided</u> that, the Debtors maintain a cash reserve equal to the cure amount asserted by the objecting Counterparty.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY SUCH OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE RELEVANT CONTRACT OR LEASE AND ANY PROOF OF CLAIM ASSERTING A CLAIM FOR SUCH AMOUNT SHALL BE EXPUNGED WITHOUT FURTHER ORDER OF THE COURT. THE CURE COSTS SET FORTH IN THE ASSUMPTION AND ASSIGNMENT NOTICE SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE CONTRACT OR LEASE UNDER BANKRUPTCY CODE SECTION 365(b), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT, AND THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT OR LEASE, THROUGH THE DATE OF ASSUMPTION AND ASSIGNMENT, WHETHER IN A PROOF OF CLAIM OR OTHERWISE, AS AGAINST THE DEBTORS, THE STALKING HORSE BIDDER, OR THEIR PROPERTY.**

### B.    Adequate Assurance Objections

Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Stalking Horse Bidder's (a) ability to provide adequate assurance of future performance or (b) the proposed form of adequate assurance of future performance with respect to such Contract or Lease (an "**Adequate Assurance Objection**"), shall file with the Court and serve on the Objection Recipients, including the Stalking Horse Bidder, its Adequate Assurance Objection, which must (i) be in writing; (ii) identify the applicable Contract or Lease; (iii) comply with Debtors' Case Management Order; (iv) state, with specificity, the legal and factual bases for the Adequate Assurance Objection; and (v) include any appropriate documentation in support thereof by no later than: **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)**.

If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors in their discretion.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS, INCLUDING THE STALKING HORSE BIDDER OR THE SUCCESSFUL BIDDER, A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY SUCH OBJECTION WITH REGARD TO THE RELEVANT CONTRACT OR LEASE. THE**

**STALKING HORSE BIDDER OR THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE CONTRACT OR LEASE IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(b) AND, IF APPLICABLE, BANKRUPTCY CODE SECTION 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE OR ANY OTHER DOCUMENT.**

### C. Objection Recipients

Objection Recipients include the following parties:

i.  The Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates IL 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq. (counsel@searshc.com);

ii.  the Debtors' attorneys, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Gavin Westerman, Esq. (gavin.westerman@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com) and Sunny Singh, Esq. (sunny.singh@weil.com)); and

iii.  the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

iv.  Each of the parties identified as the Master Service List on the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405) (the "**Case Management Order**").

v.  The Stalking Horse Bidder's attorneys, Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, Dallas, Texas 75201 (Attn: Aaron Rigby (arigby@sidley.com)), and 1501 K Street, N.W. #600, Washington, DC 20005 (Attn: David E. Kronenberg (dkronenberg@sidley.com)).

<u>**Sale Hearing**</u>

The Sale Hearing shall be held before the Honorable Robert D. Drain on **December 18, 2018 at 10:00 a.m. (prevailing Eastern Time)**, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

5

**Additional Information**

      Copies of the Case Management Order, the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears (the "**Prime Clerk Website**").

Dated: _____, 2018

                                    _____

                                      WEIL, GOTSHAL & MANGES LLP
                                      767 Fifth Avenue
                                      New York, New York  10153
                                      Telephone:  (212) 310-8000
                                      Facsimile:  (212) 310-8007
                                      Ray C. Schrock, P.C.
                                      Jacqueline Marcus
                                      Garrett A. Fail
                                      Sunny Singh

                                      *Proposed Attorneys for Debtors and Debtors in Possession*

6

## Exhibit B

**Redline of Bidding Procedures Order**

WEIL:\96796850\3\73217.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re                                              :
                                                   :        Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,              :
                                                   :        Case No. 18-23538 (RDD)
                                                   :
Debtors.[1]                                        :        (Jointly Administered)
----------------------------------------------------------------x

ORDER (I)(A) APPROVING BIDDING PROCEDURES
FOR SALE OF SEARS HOME IMPROVEMENT BUSINESS, (B) APPROVING
STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR
AND HEARING TO APPROVE SALE OF SEARS HOME IMPROVEMENT
BUSINESS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE,
AUCTION, AND SALE HEARING, (E) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, ~~(II) APPROVING THE SALE OF SEARS
HOME IMPROVEMENT BUSINESS IN ACCORDANCE WITH THE
STALKING HORSE AGREEMENT~~ AND (~~III~~F) GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

~~The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.~~

1

Upon the motion, dated November 3, 2018 (ECF No. [——]450) (the "**Motion**"),[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i)(a) approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** (the "**Bidding Procedures**"), in connection with a sale of the Sears Home Improvement business (the "**SHIP Business**") owned by the Debtors (the "**Sale Transaction**"); (b) authorizing the Debtors to offer certain bid protections (the "**Bid Protections**") to the **Stalking Horse Bidder**; (c) scheduling an auction of the Assets (the "**Auction**") and a hearing for approval of the proposed Sale Transaction (the "**Sale Hearing**"); (d) authorizing and approving the form and manner of notice of the Sale Transaction, Auction, and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"); (e) authorizing and approving the procedures for the assumption and assignment of executory contracts, unexpired personal property leases, or unexpired non-residential real property leases of the SHIP Business (collectively, the "**Contracts** and **Leases**," and such procedures, the "**Assumption and Assignment Procedures**") and approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the

---

[2] Capitalized terms utilized but not defined herein shall have the meanings given them in the Motion or the Bidding Procedures, as applicable.

Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"); (ii) approving the sale of the SHIP Business in accordance with the Stalking Horse Agreement; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405), such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on November 15, 2018, at 10:00 a.m. (prevailing Eastern Time) (the "**Hearing**"); and upon each of the filed objections to the Motion having been resolved, including as resolved on the record of the Hearing, and or herein; and upon the record of the Hearing; and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

      A.     The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the proceeds of the sale of the Assets.

B.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

C.      The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

D.      The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Bid Protections, (iii) the Sale Notice, (iv) the Assumption and Assignment Procedures, and (v) the Assumption and Assignment Notice.

E.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required, except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest, including those persons and entities entitled to notice pursuant to Bankruptcy Rule 2002.

F.      The Assumption and Assignment Procedures, Sale Notice, and Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Transaction, the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the proposed Cure Costs, the potential assumption and assignment of Contracts and Leases, and all relevant important dates and deadlines with respect to the foregoing, and no other or further notice of the sale of the SHIP Business or the assumption and assignment of Contracts and Leases in connection therewith is required.

4

G.      The Debtors' ability to provide Bid Protections, including the Break-Up Fee, to the Stalking Horse Bidder is necessary to ensure that the Stalking Horse Bidder will continue to pursue the Sale Transaction contemplated by the Stalking Horse Agreement.  To the extent payable under the Stalking Horse Agreement, the Break-Up Fee is (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate with the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; and (iii) fair, reasonable, and appropriate in light of the size and nature of the proposed Sale Transaction and the efforts that have been and will be expended by a Stalking Horse Bidder in connection with the Debtors' sale process.

H.      The Bidding Procedures were negotiated in good faith, and are reasonably designed to promote active bidding at and participation in the Auction, to ensure that the highest or best value is generated for the Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is granted.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise

impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.      Absent further order of the Court, no person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the SHIP Business, or in any way participating in the Auction or the Debtors' SHIP sale process.

## Bidding Procedures

5.      The deadline for submitting Qualified Bids (the "**Bid Deadline**") is **December 11, 2018, at 4:00 p.m. (Eastern Time)**. The Debtors shall promptly provide copies of all bids to each of the Consultation Parties, but in no event later than the next calendar day, subject to the provisions of the Bidding Procedures.

6.      For all purposes under the Bidding Procedures, the Stalking Horse Bidder shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid. In the event that the Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the Assets by the Bid Deadline, the Debtors shall not be required to conduct an Auction for the Assets, and the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Assets included in the Stalking Horse Agreement.

7.      If, in addition to a Stalking Horse Bid, the Debtors receive at least one Qualified Bid by the Bid Deadline, the Debtors shall conduct an Auction of the Assets in accordance with the Bidding Procedures.

8.      The Auction will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **December 13, 2018, at 10:00 a.m. (Eastern**

**Time)**, or at such other time and location as the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, may determine in their reasonable business judgment.

9.      All proceedings of the Auction shall be conducted openly, and the Consultation Parties, their professional advisors, and all creditors and other parties in interest shall be permitted to attend; provided that, the Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany Qualified Bidders or other parties in interest at the Auction.  The proceedings of the Auction shall be transcribed and/or video recorded.

10.      Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets in its bid if selected as a Successful Bidder.

11.      Subject to this Order, the Bidding Procedures, and the rights of the Stalking Horse Bidder under the Stalking Horse Agreement, the Debtors shall have the right to, after consulting with the Consultation Parties, in the exercise of their reasonable business judgment, (i) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (ii) determine the "Baseline Bid;" (iii) determine the amount of each Minimum Overbid; (iv) determine which Qualified Bids are the Successful Bid and the Back-Up Bid; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, this Order, or any other order of the Court, or (c) contrary to the best interests of the Debtors and their estates; (vi) adjourn or

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

cancel the Auction, after providing notice of such adjournment or cancellation in accordance with the Bidding Procedures; and (vii) adjourn the Sale Hearing after providing notice of such adjournment in accordance with the Bidding Procedures.

12.     The Debtors shall have the right, in their reasonable business judgment, after consulting with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, including to (i) waive terms and conditions with respect to all Prospective Bidders; (ii) extend the deadlines set forth therein; and (iii) announce at the Auction modified or additional procedures for conducting the Auction; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in the Stalking Horse Agreement.  Except as provided in the Stalking Horse Agreement, nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.; provided, however, that notwithstanding anything to the contrary contained herein and unless otherwise approved by the Court, no amendment or modification to the Bidding Procedures (including the extension of any of the deadlines set forth herein) shall be made by the Debtors without consultation with the Consultation Parties.

### The Sale Hearing and Sale Objection Deadline

13.     In accordance with the Bidding Procedures, the Sale Hearing shall be held before the Court on **December 18, 2018, at 10:00 a.m. (prevailing Eastern Time)** to consider (i) a sale of the SHIP Business to the Stalking Horse Bidder pursuant to the terms and conditions set forth in the Stalking Horse Agreement, if no Qualified Bid is received by the Debtors prior to the Bid Deadline, or (ii) if another Qualified Bid is received by the Debtors prior to the Bid Deadline, a sale of the SHIP Business to the Successful Bidder at the Auction (which bidder

8

could be the Stalking Horse Bidder); provided that, the Debtors may seek an adjournment of the Sale Hearing, as the Debtors, after consultation with the Consultation Parties, deem appropriate in the exercise of their reasonable business judgment.

14.    Objections to the Sale Transaction, including any objection to the sale of the Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients by no later than **December 11, 2018, at 4:00 p.m. (Eastern Time)** (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.– If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing.

15.    Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction contemplated by the asset purchase agreement between the Debtors and the Successful Bidder (including the Stalking Horse Bidder if named the Successful Bidder), including the transfer of Assets to the Successful Bidder (and any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

**Noticing Procedures**

16.     The Sale Notice is approved, and no other or further notice of the sale of the Assets, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required if the Debtors serve and publish such notice in the manner provided in the Bidding Procedures and this Order.  The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

17.     Within two (2) business days after entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/sears/ (the "**Prime Clerk Website**"), the Sale Notice, which shall set forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing; and (iii) the deadlines and procedures for objecting to the proposed Sale Transaction.

18.     Within five (5) business days after entry of this Order, the Debtors shall cause the contents of the Sale Notice to be published once in *The New York Times* and *The Wall Street Journal*.

19.     Within one (1) calendar day after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website, a notice containing the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidder and the Back-Up Bidder; (ii) list all Proposed Assumed Contracts (as defined below) in the Successful Bid and the Back-Up Bid; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the

Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by the Successful Bidder for assumption and assignment in connection with the Sale Transaction; and (v) set forth the deadline and procedures for filing Adequate Assurance Objections in response to the Notice of Auction Results.

**Assumption and Assignment Procedures**

20.    The Assumption and Assignment Notice is reasonable, fair, and appropriate, and contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of Contracts and Leases (such Contracts and Leases, the "**Proposed Assumed Contracts**") shall be required if the Debtors file and serve such notice (and, subsequently, the Notice of Auction Results and any applicable Notice of Assumed and Assigned Contracts) in accordance with the Assumption and Assignment Procedures and this Order.

21.    The Debtors shall use commercially reasonable efforts to, within five (5) days of the entry of the this Order, file with the Court, serve on the Sale Notice Parties, including each relevant Counterparty, and cause to be published on the Prime Clerk Website, the Assumption and Assignment Notice, which shall (i) identify the Proposed Assumed Contracts in the Stalking Horse Bid and, if known, any other Contracts or Leases that may be designated for assumption and assignment by the Stalking Horse Bidder (or its known proposed assignee) pursuant to the terms and provisions of the Stalking Horse Agreement (the "**Designation Rights Contracts**"); (ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract and Lease identified on the Assumption and Assignment Notice; (iii) provide ~~or cause~~

~~to be provided the Stalking Horse Bidder's~~instructions for obtaining Adequate Assurance Information (as defined herein) with respect to the Stalking Horse Bidder; (iv) expressly state that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court approval; (v) prominently display the deadline to file a Cure Objection and an Adequate Assurance Objection (each as hereinafter defined); and (vi) prominently display the date, time, and location of the Sale Hearing.

22.     In accordance with the Stalking Horse Agreement, the Debtors may, until eight (8) business days prior to the Sale Hearing, add Contracts and Leases to the Designation Rights Contracts by filing supplemental Assumption and Assignment Notices, which will be deemed to update any previously filed Assumption and Assignment Notices.

23.     In accordance with the terms of the Stalking Horse Agreement, on or before a date that is four (4) business days before the Sale Hearing (the "**Designation Deadline**"), the Stalking Horse Bidder shall provide to the Debtors a final schedule of Designation Rights Contracts.

24.     The Debtors will use commercially reasonable efforts to, on or before a date that is three (3) business days before the Sale Hearing, file with the Court, serve by overnight delivery on the applicable Counterparty, and cause to be published on the Prime Clerk Website, a final notice of assumption and assignment of the applicable Designation Rights Contracts to the Stalking Horse Bidder (the "**Notice of Assumed and Assigned Contracts**").

25.     The same procedures shall apply with respect to any designation rights of a Successful Bidder pursuant to the terms of an asset purchase agreement executed by the Debtors.

~~WEIL:\96778612\7\73219.0004~~WEIL:\96789393\5\73219.0004

26.     Any Counterparty who wishes to object to the Debtors' calculation of the Cure Costs with respect to the Counterparty's Contract or Lease, must file with the Court and serve on the Objection Recipients, in accordance with the Debtors' Case Management Order, a written objection (a "**Cure Objection**") that (i) identifies the applicable Contract or Lease; (ii) states, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (iii) includes any appropriate documentation in support thereof, by no later than **December 11, 2018 at 4:00 p.m. (prevailing Eastern Time)**.

27.     If a timely Cure Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, the amount to be paid or reserved with respect to such Cure Objection shall be determined by the Court at the Sale Hearing.  The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to paragraph 28 of this Order.

28.     A Cure Objection may, at the Debtors' option, after consulting with the Stalking Horse Bidder or the Successful Bidder, as applicable, be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing.  An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction in the Debtors' discretion; provided that, the Debtors maintain a cash reserve equal to the cure amount asserted by the objecting Counterparty.

29.     If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the cost to cure any defaults under the relevant Contract or Lease and any proof of claim asserting a claim for such amount shall be expunged without further order of the Court.  The Cure Costs set forth in the Assumption and Assignment Notice shall be

controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease, through the date of assumption and assignment, whether in a proof of claim or otherwise, as against the Debtors, the Successful Bidder, or their property.

30.     In accordance with the Bidding Procedures, to qualify as a Qualified Bidder, each Prospective Bidder shall provide with its bid information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including the Prospective Bidder's financial wherewithal and willingness to perform under the Proposed Assumed Contracts and any other Contracts or Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction (such information, "**Adequate Assurance Information**").

31.     ~~Adequate Assurance Information will be provided, to the extent it is publicly available information, with the Assumption and Assignment Notice.~~ To the extent Adequate Assurance Information includes non-public information, it shall be provided to affected Counterparties on a strictly confidential basis.  The Assumption and Assignment Notice shall include instructions for requesting and obtaining such non-public Adequate Assurance Information on a strictly confidential basis.  Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3),

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

have been satisfied; and (ii) to support any Adequate Assurance Objection filed by the Counterparty.

32.      Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Stalking Horse Bidder's or a Successful Bidder's (a) ability to provide adequate assurance of future performance or (b) the proposed form of adequate assurance of future performance with respect to such Contract or Lease (an "**Adequate Assurance Objection**"), shall file with the Court and serve on the Objection Recipients, including the Successful Bidder, its Adequate Assurance Objection, which must (i) be in writing; (ii) identify the applicable Contract or Lease; (iii) comply with Debtors' Case Management Order; (iv) state, with specificity, the legal and factual bases for the Adequate Assurance Objection; and (v) include any appropriate documentation in support thereof by no later than:

(i)  **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)**, if the Adequate Assurance Objection is with respect to assumption and assignment to the Stalking Horse Bidder of any Proposed Assumed Contract or Designation Rights Contract that was identified in and noticed pursuant to the Assumption and Assignment Notice; and

(ii)  **December 17, 2018, at noon (prevailing Eastern Time)**, (a) if the Adequate Assurance Objection is with respect to the assignment to a Successful Bidder (including the Stalking Horse Bidder, if named a Successful Bidder) of any Proposed Assumed Contract or Contract or Lease that later may be designated by a Successful Bidder for assumption and assignment, that was only identified and noticed pursuant to the Notice of Auction Results, and (b) if the Adequate Assurance Objection is with respect to assumption and assignment to the Stalking Horse Bidder of any Proposed Assumed Contract or Designation Rights Contract that was only identified in and noticed pursuant to a supplemental Assumption and Assignment Notice.

33.     If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors in their discretion.

34.     If a Counterparty fails to file with the Court and serve on the Objection Recipients, including the Stalking Horse Bidder or the Successful Bidder, a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the relevant Contract or Lease. The Stalking Horse Bidder or the Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

35.     The inclusion of a Contract, Lease, or Cure Costs with respect thereto on the Assumption and Assignment Notice, the Designation Notice or the Notice of Auction Results, shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidder, or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on the Assumption and Assignment Notice, the Designation Notice and the Notice of Auction Results. The Debtors' inclusion of any Contract or Lease on the Assumption and Assignment Notice, Designation Notice or the Notice of Auction Results shall not be a guarantee that such contract or lease ultimately will be assumed or assumed and assigned.

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

**General Provisions**

36.     All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Assets during the sale process, including at the Auction, shall be deemed to have knowingly and voluntarily (i) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and the Sale Transaction; (ii) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction, and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (iii) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

37.     For purposes of Section 363(b)(1) of the Bankruptcy Code, if the Debtors seek to transfer any personally identifiable information about individuals through or in connection with the Sale Transaction, other than pursuant to Company privacy policies, the Debtors will promptly alert the US Trustee, who will determine whether appointment of a consumer privacy ombudsman is required.

38.     Prior to mailing and publishing the Sale Notice and the Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

39.     Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder,

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

shall be subject in all respects to, as applicable: (i) the ~~terms of any interim or final~~ order~~s~~ of the ~~Bankruptcy Court~~ approving ~~debtor-in-possession financing or~~ the Debtors' use of cash collateral (and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP ABL Orders"**), including the *Interim Order (i) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (ii) Granting Adequate Protection to the Prepetition Secured Parties; (iii) Modifying the Automatic Stay; (iv) Scheduling Final Hearing; and (v) Granting Related Relief* [ECF No. 101]; ~~and~~ (ii) the documentation governing the Debtors' use of ~~their senior debtor-in-possession~~ cash collateral and post-petition financing facilit~~y~~ies; and (iii) the Approved Budget (as defined in the DIP ABL Orders).

40. To the extent there is any inconsistency between the terms of any of the DIP ABL Orders and this Order, the terms of the DIP ABL Order (or DIP ABL Orders, as applicable) shall control.

41. Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective, final and enforceable immediately upon entry and its provisions shall be self-executing.

42. Notwithstanding anything to the contrary contained in this Order or in the Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by this Order or the Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, the DIP ABL Orders and the Prepetition ABL Documents, as applicable; and (iii)

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

nothing in this Order or in the Bidding Procedures shall amend, modify, or impair any provision

of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL

Lenders thereunder.

43.    42. The Debtors are authorized to take all actions necessary to effectuate

the relief granted in this Order.

44.    43. The Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
          White Plains, New York

                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

19

**<u>Exhibit 1</u>**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                              :
                                                   :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*          :
                                                   :        **Case No. 18-23538 (RDD)**
                                                   :
                                                   :
                  Debtors.[1]                      :        **(Jointly Administered)**
------------------------------------------------------------x

## BIDDING PROCEDURES FOR SALE OF
## SEARS HOME IMPROVEMENT BUSINESS

The procedures set forth herein (the "**Bidding Procedures**") will be employed in connection with a sale or disposition of the Sears Home Improvement business (the "**SHIP Business**) owned by Sears Holdings Corporation and its affiliates (collectively, the "**Debtors**").

By the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) aApproving the sSale of Sears Home Improvement*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**").  The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

*Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (the "**Motion**"), the above-captioned Debtors, as debtors in possession (collectively, the "**Debtors**"), sought, among other things, approval of the Bidding Procedures for soliciting bids for, conducting an auction (the "**Auction**") of, and consummating a sale of the assets of SHIP Business, as further described herein (the "**Sale Transaction**").

On November __, 2018, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered the *Order (A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption And Assignment Procedures, and (F) Granting Related Relief* (ECF No. [__]) (the "**SHIP Bidding Procedures Order**").[2]

On November 2, 2018, the Debtors and Service.com (the "**Stalking Horse Bidder**") entered into an asset purchase agreement (the "**Stalking Horse Agreement**") for the sale of the SHIP Business, pursuant to which: (i) the Stalking Horse Bidder agreed to pay Sixty million dollars ($60,000,000) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse Agreement (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Acquired Assets, subject to higher or better offers, the outcome of the Auction (as defined herein) and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of substantially all of the Acquired Assets by any bidder other than the Stalking Horse Bidder and the sale to that bidder is consummated, then the Stalking Horse Bidder will be paid a break-up fee in the amount equal to 1.5% of the Cash Purchase Price (the "**Break-Up Fee**").

To the extent the Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to the Bidding Procedures or at any auction, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

Unless otherwise approved by the Bankruptcy Court, no amendment or other modification to these Bidding Procedures (including the extension of any of the deadlines set forth herein) shall be made by the Debtors without consulting with the Consultation Parties.

## I.
## Description of the Assets

The Debtors are seeking to sell all assets, properties and rights exclusively related to, used exclusively in or held exclusively for use in the SHIP Business (the "**Assets**"), including, but not limited to, intellectual property, business contracts, real estate, customer data, receivables,

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the SHIP Bidding Procedures Order.

2

and all other assets identified as "Transferred Assets" in the Stalking Horse Agreement, attached to the Motion as **Exhibit B**.

A party must submit a bid for all of the Assets and all liabilities identified as "Transferred Assets" and "Assumed Liabilities" in the Stalking Horse Agreement, except that a party shall not be required to assume or exclude the same Business Contracts (as defined in the Stalking Horse Agreement) as assumed or excluded by the Stalking Horse Bidder.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

## II.
## Important Dates and Deadlines

| | |
|---|---|
| **November 15, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Hearing to consider approval of Bidding Procedures and entry of Bidding Procedures Order |
| **November 27, 2018** | Deadline for Debtors to provide applicable Counterparties Adequate Assurance Information with respect to the Stalking Horse Bidder (and any proposed assignee/designee of the assets, if applicable) |
| **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)** | Deadline for competing bidders to submit binding bids, together with copy of an Asset Purchase Agreement blacklined against the Stalking Horse Agreement and Good Faith Deposit |
| **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)** | Deadline to object to (i) the proposed Sale Transaction, (ii) Debtors' proposed Cure Costs, and (iii) the assumption of and assignment to the Stalking Horse Bidder of any Contracts Proposed to be Assumed in the Stalking Horse Agreement |
| **December 12, 2018, at 5:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders |
| **December 13, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Auction to be held at the offices of Weil, Gotshal & Manges LLP (if necessary) |
| **December 14, 2018 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide applicable Counterparties with Adequate Assurance Information for the Successful Bidder |
| **December 17, 2018 at noon (prevailing Eastern Time)** | Deadline to object to (i) conduct of the Auction, (ii) sale of the SHIP Business and (iii) the assumption of and assignment of Proposed Assumed Contracts to the Successful Bidder |
| **December 18, 2018, at 10:00 a.m. (prevailing Eastern Time)** | Date of Sale Hearing |

3

# III.
## Noticing

### A.    Consultation Parties

Throughout the sale process, ~~as necessary or appropriate,~~ the Debtors and their advisors will consult with the following parties (collectively, the "**Consultation Parties**"):

~~i. Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff, Esq., Philip C. Dublin, Esq., Abid Qureshi, Esq., Allison P. Miller, Esq., Sara L. Brauner, Esq.), attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); and~~

i.  the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**") and its advisors, including Akin Gump Strauss Hauer & Feld LLP;

ii.  ~~Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10036 (Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R. Howard, Esq.), attorneys for~~ in its capacity as the Bank of America, N.A., administrative agent under the First Lien Credit Facility and the "**DIP** ABL Agent") under the senior debtor-in-possession ("**DIP**") facility, and its advisors, including Skadden, Arps, Slate, Meagher & Flom LLP and Berkeley Research Group, LLC; and

iii.  Wells Fargo Bank, National Association, in its capacity as Co-Collateral Agent under the First Lien Credit Facility and Co-Collateral Agent under the senior DIP ABL Facility (as defined in the interim order approving the DIP facility) (together with Bank of America, N.A., the "**DIP ABL Agents**") and its advisors, including Choate, Hall & Stewart LLP.

The Debtors shall promptly provide copies of all bids received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after receipt; provided that the Consultation Parties must treat such bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder. ~~Further, t~~The Debtors shall not consult with or provide copies of bids to any Consultation Party or any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Assets pending, has expressed any written interest in bidding for the Assets, or if the Bid Deadline (as defined hereafter) has not passed at the applicable time; provided, however, that if such Consultation Party chooses not to submit any bid, then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended hereunder). Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid (as hereinafter defined), the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable Assets, and shall not provide any confidential

4

information regarding the Assets or a transaction involving the Assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Rights that Consultation Parties may have pursuant to the terms of other agreements or orders of the Court shall not be affected by these Bidding Procedures or the Bidding Procedures Order.

## B.    Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties (collectively, the "**Bid Notice Parties**"):

    i.    the Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates IL 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq. (counsel@searshc.com);

    ii.    the Debtors' attorneys, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Gavin Westerman, Esq. (gavin.westerman@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com) and Sunny Singh, Esq. (sunny.singh@weil.com)); and

    iii.    the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

## C.    Sale Notice Parties

The "**Sale Notice Parties**" shall include the following persons and entities:

    i.    the Consultation Parties;

    ii.    the Master Service List identified in the Bankruptcy Court's *Amended Order Implementing Certain Notice and Case Management Procedures* [ECF No. 405] (the "**Case Management Order**");

    iii.    all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction involving any material portion of the SHIP Business during the past nine (9) months, including any person or entity that has submitted a bid for any material portion of the SHIP Business;

    iv.    all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors);

5

v.    all non-Debtor parties (each, a "**Counterparty**") to any executory contracts, unexpired personal property leases, or unexpired non-residential real property leases utilized in the SHIP Business (collectively, the "**Contracts** and **Leases**") that could be assumed or rejected in connection with a Sale Transaction;

vi.    any governmental authority known to have a claim against the Debtors in these chapter 11 cases;

vii.    all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service;

viii.    all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency, if applicable;

ix.    the United States Attorney General;

x.    the United States Attorney for the Southern District of New York;

xi.    the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate;

xii.    the Antitrust Division of the United States Department of Justice;

xiii.    the Federal Trade Commission;

xiv.    all other persons and entities as directed by the Bankruptcy Court.

Within two (2) business days after entry of the Bidding Procedures Order, the Debtors will file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/sears/ (the "**Prime Clerk Website**"), a notice (the "**Sale Notice**") setting forth (i) a complete list and general description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing (as hereinafter defined); and (iii) the deadlines and procedures for objecting to the proposed Sale Transaction.

Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall cause the information contained in the Sale Notice to be published once in *The New York Times* and *The Wall Street Journal*.

**D.    Objection Recipients**

Sale Objections (as hereinafter defined) shall be filed with the Bankruptcy Court and served on the following parties (collectively, the "**Objection Recipients**"): (i) the Bid Notice Parties; (ii) the Master Service List identified in the Case Management Order and (iii) counsel to

6

the Stalking Horse Bidder by no later than (x) **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)**, (the "**Sale Objection Deadline**").

### E.    Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption, assignment, and designation of Contracts and Leases in accordance with the Bidding Procedures Order.

### IV.
### Bidder Qualifications

Each person or entity that desires to participate in the Auction (each, a "**Prospective Bidder**") must be determined by the Debtors, ~~in~~after consultation with the Consultation Parties, to satisfy the following eligibility requirements:

### A.    Due Diligence

To be eligible to participate in the Auction, a Prospective Bidder must first execute a confidentiality agreement, in form and substance satisfactory to the Debtors.  Upon execution of a valid confidentiality agreement, any Prospective Bidder identified by the Debtors, after consultation with the Consultation Parties, to be reasonably likely to be a Qualified Bidder (as hereinafter defined) that wishes to conduct due diligence on the SHIP Business may be granted access to confidential information regarding the same, including an information package containing information and financial data with respect to the applicable Assets and access to a data room (the "**Data Room**") with confidential electronic data concerning the SHIP Business and the Assets.  If the Debtors, ~~in~~after consultation with the Consultation Parties, determine that a Prospective Bidder does not qualify as a Qualified Bidder, the Prospective Bidder shall not be entitled to access to the Data Room or receive additional non-public information regarding the SHIP  business, the Assets, or the sale process.

~~Once an interested party is deemed~~Promptly upon a Prospective Bidder ~~and such party has executed a valid~~entering into a confidentiality agreement, ~~such bidder's identity may, in~~but in any event no later than the next calendar day following such event, the Debtors~~' discretion, and in consultation with~~ will notify each of the Consultation Parties~~, be disclosed to the Stalking Horse Bidder~~ and provide to such Consultation Parties copies of such executed confidentiality agreements.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders.  All due diligence requests shall be directed to the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

7

**B.     Bid Deadline**

Any Prospective Bidder that intends to participate in the Auction must submit a Qualified Bid (as hereinafter defined) on or before **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") in writing to the Bid Notice Parties.

The Debtors may, after consulting with the Consultation Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Prospective Bidders.

**C.     Qualified Bid Requirements**

To qualify as a "**Qualified Bid**," a bid must (i) be the Stalking Horse Bid, or (ii) be in writing and determined by the Debtors, ~~in~~after consultation with the Consultation Parties, to satisfy the following requirements:

    1.      <u>Identification of Bidder</u>.  A Qualified Bid must fully disclose the legal identity of each person or entity bidding for the Assets or otherwise participating in the Auction in connection with such bid (including any equity holders or other financial backers, if the Prospective Bidder is an entity formed for the purpose of submitting bids or consummating a Sale Transaction), and the complete terms of any such participation, and must also disclose any connections, arrangements or agreements, whether oral or written, with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

    2.      <u>Purchased Assets</u>.  A Qualified Bid must clearly identify the following:

        a.      the Assets to be purchased, including any Contracts and Leases of the Debtors that would be assumed and assigned in connection with the proposed Sale Transaction (all such Contracts and Leases, the "**Proposed Assumed Contracts**");

        b.      the liabilities, if any, to be assumed, including any debt to be assumed; and

        c.      the cash purchase price of the bid.

    The Debtors reserve the right to ask any bidder to allocate the value ascribed to a bid for any particular Asset, and to ask about any significant assumptions on which such valuations are based.

    3.      <u>Form of Consideration</u>.

        a.      <u>All-Cash Offer</u>.  The bid must include a statement confirming that the bid is (i) based on an all-cash offer, and (ii) sufficient cash

8

consideration to pay the Break-Up Fee. No credit bidding shall be allowed in connection with a bid for the Assets.

4.      <u>Purchase Price; Minimum Bid</u>. Each bid submitted must (i) be a bid for all of the Assets contained in the Stalking Horse Bid, except that it shall not be required to designate the same Business Contracts (as defined in the Stalking Horse Agreement) as assumed or excluded Assets, as they are designated by the Stalking Horse Bidder; and (ii) exceed the cash purchase price in the Stalking Horse Bid, plus the Break-Up Fee or (iii) propose an alternative transaction that provides better terms than the Stalking Horse Bid, taking into account the Break-Up Fee.

If the value of the bid relative to the Stalking Horse Bid includes additional non-cash components (such as fewer contingencies than are in the Stalking Horse Agreement), the bid must include a detailed analysis of the value of any additional non-cash component and any back-up documentation to support such value.

5.      Good Faith Deposit. ~~Other than as provided in the Stalking Horse Agreement, a~~A Qualified Bid must be accompanied by a "**Good Faith Deposit**" in the form of cash in an amount equal to ten percent (10%) of the proposed purchase price offered to purchase the Assets. Good Faith Deposits shall be deposited prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**"), pursuant to the escrow agreement to be provided by the Debtors to Prospective Bidders, and Qualified Bidders shall provide information reasonably requested by the Escrow Agent to establish the deposit, including KYC information. All Good Faith Deposits shall be held in escrow until no later than ten (10) days after the conclusion of the Auction (except for the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder), and thereafter returned to the respective bidders in accordance with the provisions of Part VII of these Bidding Procedures.

To the extent that a bid is modified at or prior to the Auction, to the extent the bidder is the Successful Bidder or the Back-Up Bidder, the bidder must pay an additional amount into escrow, within two (2) business days of the Auction, such that the final Good Faith Deposit for the bid equals ten percent (10%) of the proposed purchase price offered to purchase the Assets.

6.      <u>Proposed Asset Purchase Agreement</u>. A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (a "**Proposed APA**"), which Proposed APA must be marked to reflect the differences between the Stalking Horse Agreement and the Prospective Bidder's Proposed APA.

9

Specifically, a Proposed APA shall (i) specify the purchase price in U.S. dollars; (ii) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtors); (iii) identify any Proposed Assumed Contracts; and (iv) be executed by the Prospective Bidder.

7.    <u>Employee and Labor Terms</u>.  A Qualified Bid must include a statement of proposed terms for employees, including with respect to the Debtors' affected collective bargaining agreements (the "**Affected Labor Agreements**") and affected labor unions (the "**Affected Unions**").

8.    <u>Financial Information</u>. A Qualified Bid must include the following:

    a.    a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction contemplated by the Proposed APA;

    b.    if applicable, information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder)  for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**"), which Adequate Assurance Information may also include (x) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of applicable Contracts and Leases; and (y) financial statements, tax returns, and annual reports; and

    c.    sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors, after consulting with the Consultation Parties, to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to consummate the Sale Transaction contemplated in the Prospective Bidder's Proposed APA in a timely manner.

9.    <u>Representations and Warranties</u>. A Qualified Bid must include the following representations and warranties:

10

a.      a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the SHIP Business and the Assets prior to submitting its bid; ~~and~~

b.      a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Proposed APA ultimately accepted and executed by the Debtors~~.~~; and

c.      a statement that the Prospective Bidder has not engaged in any collusion with respect to the submission of its bid.

10.    Required Approvals. A Qualified Bid must include a statement or evidence (i) that the Prospective Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("**HSR Filings**"), as amended, if applicable, and pay the fees associated with such filings; and (ii) identifying all required governmental and regulatory approvals and an explanation and/or evidence of the Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the SHIP Business from and after closing the Sale Transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals. A Prospective Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain the Prospective Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

11.    Authorization.  A Qualified Bid must include evidence of corporate authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing of the transaction contemplated by the Prospective Bidder's Proposed APA in accordance with the terms of the bid and these Bidding Procedures.

12.    Other Requirements. A Qualified Bid shall

a.      expressly state that the Prospective Bidder agrees to serve as a back-up bidder (a "**Back-Up Bidder**") if such bidder's Qualified

11

Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the Assets;

b.   state that the bid is formal, binding, and unconditional (except as set forth in an applicable asset purchase agreement ultimately executed by the Debtors); is not subject to any further due diligence; and is irrevocable until the earliest to occur of (i) the first business day ~~following~~after the ~~close~~consummation of a Sale Transaction with the Successful Bidder ~~for the Assets;~~; (ii) fifty (50) days after the conclusion of the Auction; and (iii) the release of the applicable Back-Up Bid by the Debtors, after consulting with the Consultation Parties (such date, the "**Back-Up Termination Date**");

c.   with the exception of the Stalking Horse Bid, expressly state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or sale process;

d.   expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets and/or participating in the Auction;

e.   not contain any unsatisfied financing contingencies of any kind;

f.   a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

g.   be accompanied by any reasonable information requested by a consumer privacy ombudsman, should one be appointed in the Debtors' chapter 11 cases pursuant to section 363(b)(1)(B) of the Bankruptcy Code;

h.   be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties;

12

WEIL:\96776713\11\73219.0004WEIL:\96789397\4\73219.0004

      i.       include contact information for the specific person(s) the Debtors should contact in the event they have questions about the Prospective Bidder's bid; and

      j.       a covenant to comply with the terms of the Bidding Procedures and the Bidding Procedures Order.

For the avoidance of doubt, the Stalking Horse Bid is a Qualified Bid that complies with or is exempted from the foregoing requirements.

## D.    Qualified Bidders

A bid received for the Assets that is determined by the Debtors, ~~in~~after consultation with the Consultation Parties, to meet the requirements set forth in Section C above will be considered a "Qualified Bid," and the Stalking Horse Bidder, and any bidder that submits a Qualified Bid (including the Stalking Horse Bid) will be considered a "**Qualified Bidder**."

The Debtors may amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment, and ~~in~~after consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

## V.
## Bid Review Process

The Debtors will evaluate timely bids, in consultation with the Consultation Parties and, may, based upon their evaluation of the content of each bid, engage in negotiations with Prospective Bidders who submitted bids, as the Debtors deem appropriate, in their reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law. In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1.      the amount of the purchase price set forth in the bid;

2.      any Business Contracts included in or excluded from the bid, including any Proposed Assumed Contracts;

3.      the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, taking into account the Stalking Horse Bidder's rights to the Break-Up Fee;

4.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit;

5.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

13

6.    the impact on employees, and employee claims against the Debtors, Affected Labor Agreements, if applicable, and whether the Prospective Bidder has reached an agreement with the Affected Unions, if applicable;

7.    the impact on trade creditors and landlords; and

8.    any other factors the Debtors may reasonably deem relevant, consistent with their fiduciary duties.

The Debtors, in consultation with the Consultation Parties, will make a determination regarding which bids qualify as a Qualified Bids, and will notify Prospective Bidders whether they have been selected as Qualified Bidders by no later than **December 12, 2018**.

The Debtors reserve the right to work with any Prospective Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid.  Without the prior written consent of the Debtors and consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid.

InAfter consultation with the Consultation Parties, the Debtors shall make a determination regarding the following:

1.    the highest or best Qualified Bid (each, athe "**Baseline Bid**" and, such bidder or group of bidders, athe "**Baseline Bidder**") to serve as the starting point at the Auction; and

2.    which bids have been determined to be Qualified Bids.

As soon as practicable, but in no event later than earlier of (i) the next calendar day, or (ii) two hours prior to the commencement of the Auction, the Debtors will provide copies of eachthe Baseline Bid to the Consultation Parties, and the Stalking Horse Bidder.  The Debtors will consult with the Consultation Parties regarding the designation of the Baseline Bid and advise the Consultation Parties of the designated Baseline Bid within one (1) calendar day of the Debtors' determination of the Baseline Bid.

## VI.
## The Auction

If no Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct an Auction for the Stalking Horse Bid, and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice indicating that the Auction for the Stalking Horse Bid has been cancelled and that the Stalking Horse Bidder is the Successful Bidder, and setting forth the date and time of the applicable Sale Hearing.

14

**Except as provided in the Stalking Horse Agreement, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.**

The Auction, if any, will be conducted at the offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 on **December 13, 2018, at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties. If held, the proceedings of the Auction will be transcribed and/or video recorded.

## A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. The Auction will be conducted openly, and the Consultation Parties, their professional advisers, and all creditors will be permitted to attend; provided that the Debtors may, in their reasonable business judgment, and in after consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder and other parties in interest at the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction, and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets if selected as the Successful Bidder.

## B.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment, in consultation with the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law:

1.    <u>Baseline Bid</u>.  Bidding shall commence at the amount of the Baseline Bid.

2.    <u>Minimum Overbid</u>.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid. The Debtors shall, after consulting with the Consultation Parties, announce at the outset of the Auction the minimum required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**"). The Debtors may, in their reasonable business judgment, and after consulting with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

3.    <u>Stalking Horse Credit for Break-Up Fee</u>. If a Qualified Bidder who is not the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Break-Up Fee to be counted toward its bid. The cash and other considerations proposed by

15

such Qualified Bidder must exceed the Stalking Horse Bid by the purchase price contained in the Stalking Horse Bid, plus the Break-Up Fee, by at least the amount of the Minimum Overbid to advance to the next round of bidding.  To the extent that the Stalking Horse Bidder submits a competing bid for the Assets, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Break-Up Fee to be counted toward its bid and the computation of the Minimum Overbid for bidders to advance to the next round of bidding.

4.   ~~3.~~ Highest or Best Offer.  After the first round of bidding and between each subsequent round of bidding, the Debtors, after consulting with the Consultation Parties, shall announce the bid that they believe to be the highest or best offer (each such bid, a "**Leading Bid**").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

The Auction may include open bidding in the presence of all other Qualified Bidders.  All Qualified Bidders shall have the right to submit additional bids and make modifications to their Proposed APA at the Auction to improve their bids. The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtors shall have the right, after consulting with the Consultation Parties, to determine, in their reasonable business judgment, which bid is the highest or best bid and reject, at any time, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, or the best interests of the Debtors and their estates; except that, if the Stalking Horse Bid as reflected in the Stalking Horse Agreement is the only Qualified Bid received, the foregoing shall be inoperative with respect to the Stalking Horse Bid. No attempt by the Debtors to reject a bid pursuant to this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under the Stalking Horse Agreement (although the same may be consensually modified during the Auction).

## C.   Auction Results

1.   Successful Bid.  Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which Qualified Bids constitute the highest or best Qualified Bid (the "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity of the bidder who

16

submitted the Successful Bid (the "**Successful Bidder**") and the amount of the purchase prices and other material terms of the Successful Bid.

A Successful Bidder shall, within one (1) business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

2.    <u>Back-Up Bids</u>. Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, and <u>the DIP ABL Documents and</u> except as provided in the  Stalking Horse Agreement, which Qualified Bid is the next highest or next best Qualified Bid after the Successful Bid (such bid, the "**Back-Up Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identities of the Back-Up Bidder and the amount of the purchase price and other material terms of the Back-Up Bid.

~~The~~ <u>Except as otherwise</u> <u>provided in the Stalking Horse Agreement, the</u> Back-Up Bid shall remain open and irrevocable until the ~~earliest to occur of (i) the first business day after the consummation of a Sale Transaction with the Successful Bidder; (ii) January 31, 2019; and (iii) the release of the applicable Back-Up Bid by the Debtors (such date, the "~~ "Back-Up Termination Date~~"~~).  If the Sale Transaction with a Successful Bidder is terminated prior to the Back-Up ~~Bid~~ Termination Date, the Back-Up Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid at the Auction.

The Debtors will, within one (1) calendar day after the conclusion of the Auction, file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidder and Back-Up Bidder; (ii) list all Proposed Assumed Contracts in the Successful Bid and Back-Up Bid; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by the Successful Bidder for assumption and assignment in connection with the Sale Transaction; and (v) set forth the deadline and procedures for filing Adequate Assurance Objections in response to the Notice of Auction Results.

**VII.**
**Disposition of Good Faith Deposits**

**A.    Prospective Bidders**

Within three (3) business days after the Bid Deadline, the Escrow Agent shall return to each Prospective Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit, plus any interest accrued thereon.

17

Upon the authorized return of such Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed revoked and no longer enforceable.

**B.    Qualified Bidders**

1.  <u>Forfeiture of Good Faith Deposit</u>.  The Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures; or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate a Sale Transaction in accordance with these Bidding Procedures and the terms of the transaction documents with respect to the Successful Bid.  The Escrow Agent shall release the Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

2.  <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the conclusion of the Auction.

3.  <u>Stalking Horse Bidder</u>.  Notwithstanding anything to the contrary herein, any Good Faith deposit provided by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement (including any required return of such deposit) shall be governed by the terms and conditions of the Stalking Horse Agreement.

4.  <u>Back-Up Bidders.</u>  The Escrow Agent shall return the Back-Up Bidder's Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the occurrence of the Back-Up Bid Termination Date.

5.  <u>Successful Bidder</u>. The Good Faith Deposit of the Successful Bidder shall be applied against the cash portion of the purchase price of the Successful Bid upon the consummation of the Sale Transaction.

**C.    Escrow Instructions**

The Debtors and, as applicable, the Prospective Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent providing instructions for the return of any Good Faith Deposit, to the extent such return is required by these Bidding Procedures.  If either party fails to execute such written notice, the Good Faith Deposit may only be released by an order of the Bankruptcy Court.

~~VIII.~~

**VIII.**

18

**Sale Hearing**

At a hearing before the Bankruptcy Court (the "**Sale Hearing**"), the Debtors will seek the entry of orders authorizing and approving, among other things, the following Sale Transaction (each, a "**Sale Order**"), to the extent applicable:

1.  if no other Qualified Bid is received by the Debtors, a sale of such assets to the Stalking Horse Bidder pursuant to the terms and conditions set forth in the Stalking Horse Agreement; and

2.  if another Qualified Bid is received by the Debtors, a sale of applicable Assets to the Successful Bidder at the Auction (which bidder could be the Stalking Horse Bidder).

The Debtors may, in their reasonable business judgment, after consulting with the Consultation Parties and the Successful Bidder (including the Stalking Horse Bidder if named a Successful Bidder), and consistent with the terms of the DIP ABL Documents, adjourn or reschedule any Sale Hearing with sufficient notice to the Sale Notice Parties, including by (i) an announcement of such adjournment at the applicable Sale Hearing or at the Auction, or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in the Stalking Horse Agreement.

Any objections to (A) a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the Sale Objection Deadline.

All Sale Objections not otherwise resolved by the parties shall be heard at the Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction contemplated by the Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the Stalking Horse Bidder, or the Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, in accordance with the terms of the Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the Stalking Horse Bidder or the Successful Bidder (as applicable), adjourn Cure Objections and Adequate Assurance Objections

19

to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

## IX. IX.
## Consent to Jurisdiction and Authority as Condition to Bidding

All Prospective Bidders and the Stalking Horse Bidder shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, an Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## X. X.
## Reservation of Rights

The Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to modify these Bidding Procedures, waive terms and conditions set forth herein with respect to all Prospective Bidders, extend the deadlines set forth herein, announce at the Auction modified or additional procedures for conducting the Auction, alter the assumptions set forth herein, and provide reasonable accommodations to the Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidder (including extending deadlines as may be required for the Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Bidding Procedures, the Bidding Procedures Order, and the Stalking Horse Agreement; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or the DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders.  **Nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.**

All Consultation Parties reserve the right to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

20

## ~~XI.~~ XI.

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, the DIP ABL Orders and the Prepetition ABL Documents, as applicable; and (iii) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder.

## XII.
## Sale Is "As Is/Where Is"

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

21

**Exhibit 2**

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                  :
                                                       :        Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,                  :
                                                       :        Case No. 18-23538 (RDD)
                                                       :
            Debtors.¹                                  :        (Jointly Administered)
---------------------------------------------------------------x

NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING
FOR THE SALE OF SEARS HOME IMPROVEMENT BUSINESS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 3, 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home*

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

~~The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.~~

~~WEIL:\96778612\7\73219.0004~~WEIL:\96789393\5\73219.0004

*Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) ~~a~~Approving the ~~s~~Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (ECF No. ~~[___]~~450) (the "**Motion**"), seeking, among other things, approval of the bidding procedures for soliciting bids for, conducting an auction (the "**Auction**") of, and consummating a sale (the "**Sale Transaction**") of the Sears Home Improvement business (the "**SHIP Business**").

On November [__], 2018, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption And Assignment Procedures, and (F) Granting Related Relief* (ECF No. [__]) (the "**SHIP Bidding Procedures Order**").[2]

On November 2, 2018, the Debtors and Service.com (the "**Stalking Horse Bidder**") entered into an asset purchase agreement (the "**Stalking Horse Agreement**") for the sale of the SHIP Business, pursuant to which: (i) the Stalking Horse Bidder agreed to pay Sixty million dollars ($60,000,000) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse Agreement (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Assets, subject to higher or better offers, the outcome of the Auction (as defined herein), and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of substantially all of the Acquired Assets by any bidder other than the Stalking Horse Bidder to pay the Stalking Horse Bidder a break-up fee in the amount of 1.5% of the Cash Purchase Price (the "**Break-Up Fee**").

## <u>Description of the Assets</u>

The Debtors are seeking to sell all assets, properties and rights exclusively related to, used exclusively in or held exclusively for use in the SHIP Business (the "**Assets**"), including, but not limited to, intellectual property, business contracts, real estate, customer data, receivables, and all other assets identified as "Transferred Assets" in the Stalking Horse Agreement, attached to the Motion as **<u>Exhibit B</u>**.

A party must submit a bid for all of the Assets and all liabilities identified as "Transferred Assets" and "Assumed Liabilities" in the Stalking Horse Agreement, except that a party shall not be required to assume or exclude the same Business Contracts (as defined in the Stalking Horse Agreement) as assumed or excluded by the Stalking Horse Bidder.

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the SHIP Bidding Procedures Order.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

## IMPORTANT DATES AND DEADLINES

- **Bid Deadline.** Any person or entity interested in participating in the Auction must submit a Qualified Bid to the Bid Notice Parties **on or before December 11, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

- **Sale Objection Deadline**. Objections to a proposed Sale Transaction, including any objection to the sale of the Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Recipients (as identified and defined in the Bidding Procedures) by no later than **December 11, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- **Auction.** An Auction for the Assets has been scheduled for **December 13, 2018 at 10:00 a.m. (prevailing Eastern Time)** and will be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (if necessary).

- **Notice of Auction Results Objection Deadline**.  Adequate Assurance Objections in response to the Notice of Auction Results and Objections to the conduct of the Auction must be filed with the Bankruptcy Court, and served on the Objection Recipients (as identified and defined in the Bidding Procedures) by no later than **December 17, 2018 at noon (prevailing Eastern Time)** (the "**Auction Notice Objection Deadline**").

- **Sale Hearing.** The Sale Hearing shall be held before the Honorable Robert D. Drain on **December 18, 2018 at 10:00 a.m. (prevailing Eastern Time)**, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

## Procedures for Sale Objections

Any objections to the proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the Sale Objection Deadline.

3

All Sale Objections not otherwise resolved by the parties shall be heard at the Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction contemplated by the Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the Stalking Horse Bidder, or the Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, in accordance with the terms of the Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the Stalking Horse Bidder or the Successful Bidder, as applicable, adjourn Cure Objections to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

## Additional Information

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify the Bidding Procedures, waive terms and conditions set forth therein, extend the deadlines set forth therein, and announce at the Auction modified or additional procedures for conducting the Auction. **Except as provided in the Stalking Horse Agreement, nothing shall obligate the Debtors to consummate or pursue any transaction with any bidder.**

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE APPLICABLE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, SALE ORDER, THE PROPOSED SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2018          _____
                                          WEIL, GOTSHAL & MANGES LLP
                                          767 Fifth Avenue

4

WEIL:\96778612\7\73219.0004WEIL:\96789393\5\73219.0004

New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Proposed Attorneys for Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                              :
                                                   :        Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,              :
                                                   :        Case No. 18-23538 (RDD)
                                                   :
        Debtors.[1]                                :        (Jointly Administered)
------------------------------------------------------------------x

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## IN CONNECTION WITH SALE OF SEARS HOME IMPROVEMENT BUSINESS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 3, 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") the *Motion of Debtors for Entry of Order (i)(A) Approving Bidding Procedures for Sale of Sears Home Improvement Business (B) Approving Stalking Horse Bid*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**").  The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

WEIL:\96778612\7\73219.0004 WEIL:\96789393\5\73219.0004

*Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (ii) ~~a~~Approving the ~~s~~Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement, and (iii) Granting Related Relief* (ECF No. ~~[__]~~450) (the "**Motion**"), seeking, among other things, approval of the bidding procedures for soliciting bids for, conducting an auction (the "**Auction**") of, and consummating the sale (the "**Sale Transaction**") of the Sears Home Improvement business (the "**SHIP Business**").

On November [__], 2018, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption And Assignment Procedures, and (F) Granting Related Relief* (ECF No. [__]) (the "**SHIP Bidding Procedures Order**").[2]

On November 3, 2018, the Debtors and Service.com (the "**Stalking Horse Bidder**") entered into an asset purchase agreement (the "**Stalking Horse Agreement**") for the sale of the SHIP Business, pursuant to which: (i) the Stalking Horse Bidder agreed to pay sixty million dollars ($60,000,000) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse Agreement (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Assets, subject to higher or better offers, the outcome of the Auction (as defined herein), and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of substantially all of the Acquired Assets by any bidder other than the Stalking Horse Bidder, and such transaction is consummated, to pay the Stalking Horse Bidder a break-up fee in the amount of 1.5% of the Cash Purchase Price (the "**Break-Up Fee**").

The SHIP Bidding Procedures Order authorizes and approves the procedures for the assumption and assignment of executory contracts, unexpired personal property leases, or unexpired non-residential real property leases of the SHIP Business (collectively, the "**Contracts and Leases**," and such procedures, the "**Assumption and Assignment Procedures**") and approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**").

**You are receiving this Notice because you may be a Counterparty to a Contract or Lease of the Debtors that is proposed to be assumed and assigned to the Stalking Horse Bidder in connection with the sale of the SHIP Business.**

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the SHIP Bidding Procedures Order.

**Stalking Horse Bidder's Adequate Assurance Information**

The Stalking Horse Bidder's information, which is intended to provide the Counterparties to the Contracts and Leases with adequate assurance of future performance and to support the Stalking Horse Bidder's ability to comply with the requirements of adequate assurance of future performance, including the Stalking Horse Bidder's financial wherewithal and willingness to perform under the Contracts and Leases, is annexed hereto as. **Exhibit B**. In addition, Exhibit B hereto includes instructions for requesting and obtaining any non-public Adequate Assurance Information, which shall be provided on a strictly confidential basis, in accordance with the SHIP Bidding Procedures Order.

**Proposed Assumed Contracts and Cure Costs**

The Proposed Assumed Contracts in the Stalking Horse Bid and, if known, any other Contracts or Leases that may be designated for assumption and assignment by the Stalking Horse Bidder pursuant to the terms and provisions of the Stalking Horse Agreement (the "**Designation Rights Contracts**"), and the Debtors' calculation of the Cure Costs with respect to the Designation Rights Contracts, are set forth on **Exhibit B** hereto.

The inclusion of any Contract or Lease on Exhibit B does not constitute an admission that a particular Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract or Lease ultimately will be assumed or assigned. Assumption or assignment of a Contract or Lease is subject to Court approval. All rights of the Debtors with respect thereto are reserved.

Additional Contracts and Leases may become Designation Rights Contracts, in accordance with the Stalking Horse Agreement, by the Debtors' filing of supplemental Assumption and Assignment Notices of Schedules of Executory Contracts until eight (8) Business Days prior to the Sale Hearing, and any previously filed Notice of Assumption and Assignment shall be deemed to be updated accordingly.

The Stalking Horse Bidder may elect not to assume any Contract or Lease that is a Designation Rights Contract at any time up to four (4) business days prior to the Sale Hearing. The Debtors will file, on or before a date that is three (3) business days prior to the Sale Hearing, a final Notice of Assumed and Assigned Contracts, listing all Contracts and Leases that will be assumed and assigned to the Stalking Horse Bidder upon the closing of the Sale Transaction.

**Objections**

**A.  Cure Objections**

Any Counterparty who wishes to object to the Debtors' calculation of the Cure Costs with respect to the Counterparty's Contract or Lease, must file with the Court and serve on the Objection Recipients, in accordance with the Debtors' Case Management Order, a written objection (a "**Cure Objection**") that (i) identifies the applicable Contract or Lease; (ii) states, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (iii) includes any

3

appropriate documentation in support thereof, by no later than **December 11, 2018 at 4:00 p.m. (prevailing Eastern Time**).

If a timely Cure Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, the amount to be paid or reserved with respect to such Cure Objection shall be determined by the Court at the Sale Hearing. The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.

A Cure Objection (and only a Cure Objection) may, at the Debtors' option, after consulting with the Stalking Horse Bidder (or Successful Bidder, as applicable), be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction in the Debtors' discretion; provided that, the Debtors maintain a cash reserve equal to the cure amount asserted by the objecting Counterparty.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY SUCH OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE RELEVANT CONTRACT OR LEASE AND ANY PROOF OF CLAIM ASSERTING A CLAIM FOR SUCH AMOUNT SHALL BE EXPUNGED WITHOUT FURTHER ORDER OF THE COURT. THE CURE COSTS SET FORTH IN THE ASSUMPTION AND ASSIGNMENT NOTICE SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE CONTRACT OR LEASE UNDER BANKRUPTCY CODE SECTION 365(b), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT, AND THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT OR LEASE, THROUGH THE DATE OF ASSUMPTION AND ASSIGNMENT, WHETHER IN A PROOF OF CLAIM OR OTHERWISE, AS AGAINST THE DEBTORS, THE STALKING HORSE BIDDER, OR THEIR PROPERTY.**

### B.  Adequate Assurance Objections

Any Counterparty who wishes to object to the proposed assumption, assignment, or potential designation of their Contract or Lease, the subject of which objection is the Stalking Horse Bidder's (a) ability to provide adequate assurance of future performance or (b) the proposed form of adequate assurance of future performance with respect to such Contract or Lease (an "**Adequate Assurance Objection**"), shall file with the Court and serve on the Objection Recipients, including the Stalking Horse Bidder, its Adequate Assurance Objection, which must (i) be in writing; (ii) identify the applicable Contract or Lease; (iii) comply with Debtors' Case Management Order; (iv) state, with specificity, the legal and factual bases for the Adequate Assurance Objection; and (v)  include any appropriate documentation in support thereof by no later than: **December 11, 2018, at 4:00 p.m. (prevailing Eastern Time**).

If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors in their discretion.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS, INCLUDING THE STALKING HORSE BIDDER OR THE SUCCESSFUL BIDDER, A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY SUCH OBJECTION WITH REGARD TO THE RELEVANT CONTRACT OR LEASE. THE**

**STALKING HORSE BIDDER OR THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE CONTRACT OR LEASE IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(b) AND, IF APPLICABLE, BANKRUPTCY CODE SECTION 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE OR ANY OTHER DOCUMENT.**

### C.  Objection Recipients

Objection Recipients include the following parties:

i.    The Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates IL 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq. (counsel@searshc.com);

ii.    the Debtors' attorneys, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Gavin Westerman, Esq. (gavin.westerman@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com) and Sunny Singh, Esq. (sunny.singh@weil.com)); and

iii.    the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

iv.    Each of the parties identified as the Master Service List on the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405) (the "**Case Management Order**").

v.    The Stalking Horse Bidder's attorneys, Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, Dallas, Texas 75201 (Attn: Aaron Rigby (arigby@sidley.com)), and 1501 K Street, N.W. #600, Washington, DC 20005 (Attn: David E. Kronenberg (dkronenberg@sidley.com)).

**<u>Sale Hearing</u>**

The Sale Hearing shall be held before the Honorable Robert D. Drain on **December 18, 2018 at 10:00 a.m. (prevailing Eastern Time)**, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

## Additional Information

Copies of the Case Management Order, the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears (the "**Prime Clerk Website**").

Dated: _____, 2018

_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## Exhibit C

**Amendment to Stalking Horse Agreement**

**Execution Version**

## AMENDMENT TO ASSET PURCHASE AGREEMENT

**THIS AMENDMENT TO ASSET PURCHASE AGREEMENT** (this "Amendment"), dated as of November 13, 2018, is made and entered into by and between Sears Holdings Corporation, a Delaware corporation ("Seller"), and Service.com, Inc., a Delaware corporation ("Buyer").

**WHEREAS**, the Parties entered into that certain Asset Purchase Agreement, dated as of November 2, 2018 (the "Purchase Agreement"); and

**WHEREAS**, in furtherance of the foregoing and in accordance with Section 8.01 of the Purchase Agreement, the Parties desire to amend the Purchase Agreement and agree as set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and undertakings contained herein, and subject to and on the terms and conditions herein set forth and intending to be legally bound hereby, the Parties agree as follows:

**Section 1.1**    Defined Terms.   All capitalized terms, unless otherwise defined or amended herein, shall have the meaning given to them in the Purchase Agreement.

**Section 1.2**    Amendments.   The Purchase Agreement is hereby amended as follows:

(a)    Section 2.01(f) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"all rights in connection with causes of action, lawsuits, judgments, claims, warranties, indemnities, demands or similar rights of any nature and any other Actions, in each case, to the extent exclusively arising out of the Business, the Transferred Assets or the Assumed Liabilities, whether arising by way of counterclaim or otherwise;"

(b)    Section 2.01(j) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"accounts receivable to the extent exclusively related to the Business;"

(c)    Section 10.01(g) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"by Buyer or Seller, after January 4, 2019 if the Sale Order has not been entered by the Bankruptcy Court by such date, or if the Sale Order has been entered by the Bankruptcy Court by such date and is stayed pending appeal; provided that the Party exercising such termination right is in compliance with Section 5.02;"

(d)    The definition of "Sale Procedures Order" in Exhibit A to the Purchase Agreement is hereby amended and restated in its entirety as follows:

"'Sale Procedures Order' means an Order of the Bankruptcy Court, in form and substance reasonably acceptable to Buyer and Seller, which, among other things establishes a date by which Competing Bids must be submitted, as requested under the Sale Motion."

**Section 1.3**    No Other Modifications. Except as expressly set forth herein, the terms and provisions of the Purchase Agreement remain unmodified and in full force and effect in accordance with

their terms.  This Amendment and the Purchase Agreement shall be read together as one agreement, and all references to "this Agreement" in the Purchase Agreement shall be deemed to refer to the Purchase Agreement as modified and amended by this Amendment other than references to the "date of this Agreement" or similar references which shall continue to refer to November 2, 2018.

**Section 1.4**      Representations and Warranties.  Each Party hereby represents and warrants to the other Party that (a) subject to entry of the Sale Order in respect of the Seller, such Party has all necessary power and authority to execute and deliver this Amendment, (b) the execution and delivery of this Amendment have been duly authorized and approved, (c) no other entity or governing body action on the part of such Party is necessary to authorize the execution and delivery by such party of this Amendment; and (d) this Amendment has been duly executed and delivered by such Party and, assuming due authorization, execution and delivery of this Amendment by the other Party hereto, and subject to the entry of the Sale Order in respect of the Seller, constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms.

**Section 1.5**      Counterparts.  This amendment may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall be considered one and the same instrument.

**Section 1.6**      Miscellaneous.    Section 1.03 (Other Definitional Provisions), Section 10.04 (Assignment) and Section 10.10 (Governing Law; Submission to Jurisdiction; Waiver of Jury Trial) of the Purchase Agreement are hereby incorporated into this Amendment *mutatis mutandis*.

2

IN WITNESS WHEREOF, this Amendment to Asset Purchase Agreement has been signed on behalf of each of the parties hereto as of the date first above written.

**SEARS HOLDINGS CORPORATION**

By: _____

Name: Luke Valentino
Title: Divisional Vice President, Deputy
General Counsel & Corporate Secretary

*[Signature Page to Amendment to Asset Purchase Agreement]*

**SERVICE.COM, INC.**

By: _____

Name: Sandy Kronenberg

Title: 11/12/18

[*Signature Page to Amendment to Asset Purchase Agreement*]