WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGs CORPORATION, *et al.*, | Case No. 18-23538 |
| Debtors.[1] | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' OMNIBUS RESPONSE TO THE MOTIONS OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF SEARS HOLDINGS
CORPORATION, *ET AL.*, FOR THE ENTRY OF AN ORDER PURSUANT
TO BANKRUPTCY CODE SECTION 105 AND FEDERAL RULES
OF BANKRUPTCY PROCEDURE 2004, 9006, AND 9016 AUTHORIZING
EXPEDITED DISCOVERY OF THE DEBTORS AND THIRD PARTIES AND
THE ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF EVIDENCE 502(D)**

Sears Holdings Corporation ("Sears") and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully

respond as follows to the motions by the Official Committee of Unsecured Creditors of Sears

Holdings Corporation, *et al.* (the "Creditors' Committee"), for (i) the entry of an order pursuant

to Bankruptcy Code Section 105 and the Federal Rules of Bankruptcy Procedure 2004, 9006, and

9016 Authorizing Expedited Discovery of the Debtors and Third Parties (ECF No. 484) (the

"2004 Motion"); and (ii) the entry of an order pursuant to Federal Rule of Evidence 502(d) (ECF

No. 485) (the "502(d) Motion").

**A. The 2004 Motion**

1.      The Debtors do not object to the entry of an order authorizing the Creditors'

Committee to seek expedited discovery from the Debtors. As the Creditors' Committee

acknowledges in the 2004 Motion, the Debtors already have started responding to informal

document requests issued by a subcommittee of the restructuring committee of Sears' Board of

Directors charged with investigating prepetition related-party transactions that could give rise to

claims or causes of action on behalf of Sears (the "Restructuring Subcommittee"). *See* 2004

Motion ¶ 28 n.29. Those requests seek 57 categories of documents from a time period covering

January 2005 to the present (the "Requests"). *See* Exhibit 1 (Requests). To date, the Debtors

have produced nearly 150,000 pages of materials to the Restructuring Subcommittee in response

to the Requests. The Debtors also have negotiated an electronic discovery search protocol with

the Restructuring Subcommittee, which they understand the Restructuring Subcommittee has

2

shared with the Creditors' Committee. Pursuant to this protocol, the Debtors have collected a large volume of email and other electronic data and are in the process of searching that data using the agreed-upon search terms. The Debtors anticipate producing this data to the Restructuring Subcommittee on a rolling basis and otherwise substantially completing their production in response to the Requests by November 21, 2018.

2.      The Creditors' Committee has represented that it "intends to seek documents . . . consistent with the requests already served by the Subcommittee." 2004 Motion at 15 n.29. In that regard, as the Creditors' Committee acknowledges, the Restructuring Subcommittee has agreed to share the materials it receives from the Debtors with the Creditors' Committee (*id.* ¶ 7), subject to a review for privilege, and it is the Debtors' understanding that the Restructuring Subcommittee already has begun to provide, and will continue to provide, the Creditors' Committee with documents it receives from the Debtors on a rolling basis.

3.      To the extent the Creditors' Committee serves requests for additional information, the Debtors intend to make every effort to quickly collect, review, and produce responsive documents on a rolling basis and to complete such production within 10 business days, subject to good faith negotiations with respect to the scope of any such additional requests.

**B. The 502(d) Motion**

4.      The Debtors also do not object to the specific relief requested by the Creditors' Committee in its 502(d) Motion, *i.e.*, that "[t]he production of any document by any party in connection with the Prepetition Investigation shall not constitute a waiver of any privilege or protection with respect to those documents or their subject matter in this or any other proceeding." ECF No. 485-1. However, the Debtors expressly reserve their right to review all documents for privilege before they are produced to the Creditors' Committee and further

understand that the Restructuring Subcommittee will be performing a privilege review of the Debtors' documents provided in response to the Requests before providing those documents to the Creditors' Committee. Nothing in the cases cited by the Committee suggests that the Debtors should be deprived of the opportunity to conduct a privilege review simply because the Court enters a Rule 502(d) Order, and the Proposed Order itself does not provide for such blanket relief. *See*, *e.g.*, *Winfield v. City of New York*, 2018 WL2148435, at *6 (S.D.N.Y. May 10, 2018) (Rule 502(d) "authorizes a court to issue an order *protecting* privilege—it does not create an exception to the law of privilege or authorize a court to compel disclosure of privileged information") (emphasis in original).

Dated: November 14, 2018

WEIL, GOTSHAL & MANGES LLP

 /s/ Jacqueline Marcus
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Jared R. Friedmann
Sunny Singh
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors and Debtors in Possession*

4

# Exhibit 1

## RESTRUCTURING SUBCOMMITTEE'S REQUEST FOR THE PRODUCTION OF DOCUMENTS BY SEARS HOLDINGS CORPORATION

On behalf of the Restructuring Subcommittee of the Restructuring Committee of Sears Holdings Corporation, we request that You, Sears Holdings Corporation, provide us, as counsel for the Restructuring Subcommittee, all documents identified below in Your possession, custody, or control, in accordance with the definitions and instructions set forth below and all applicable Federal and Local Rules of Civil Procedure and Bankruptcy Procedure, to Jonathan H. Hurwitz, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, NY 10019, jhurwitz@paulweiss.com.  We ask that the documents identified below be produced as soon as possible and on a rolling basis, and in any event no later than ten business days from the date of these requests.

Please feel free to contact us to discuss: (i) any ways in which you believe these requests could be modified to expedite the production or limit the burden of collecting the requested documents while providing the information we need for our work; (ii) the format and manner of producing the documents; and (iii) any other issues that you wish to discuss.  We also welcome any input or suggestions regarding other potential documents, or categories of documents, that you believe might be of interest to the Restructuring Subcommittee.

### DEFINITIONS

These requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 7026-1 of the United States Bankruptcy Court for the

1

Southern District of New York, and any other applicable law or rules.  For the purposes

of these requests, please use the following definitions, which apply to each request:

1.    "Assets" shall mean both real assets and intangible assets,

including real property, intellectual property, good will, contracts, inventory, cash, and

cash equivalents.

2.    "Audit Committee" shall mean the Audit Committee of the Sears

Board.

3.    "Burkowitz" shall mean Bruce Berkowitz in any personal or

professional capacity.

4.    "ESL" shall mean ESL Investments, Inc. or any of its affiliates or

controlling persons or entities.  Unless otherwise specified, this shall include any

company in which ESL Investments, Inc. invests in, or that is controlled by Lampert

and/or any other ESL officer or director (individually or in the aggregate) and exclude

Sears.

5.    "ESL Loan Transactions" shall mean any debt transaction in which

ESL was a lender or purchaser and Sears was a borrower or issuer, including the (i) First

Lien Credit Facility; (ii) Stand-Alone L/C Facility; (iii) Second Lien Credit Facility; (iv)

Second Lien PIK Notes; (v) Second Lien Notes; (vi) IP/Ground Lease Term Loan; (vii)

Consolidated Secured Loan Facility; (viii) Holdings Unsecured PIK Notes; (ix) Holdings

Unsecured Notes; (x) SRAC Unsecured PIK Notes; and (xi) SRAC Unsecured Notes

(each as defined in Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local

Bankruptcy Rules for Southern District of New York, filed Oct. 15, 2018 in *In re Sears*

*Holdings Corporation, et. al.*, Case No. 18-23538-rdd (Bankr. S.D.N.Y.) ("Riecker Declaration").

6.  "Fairholme" shall mean Fairholme Capital Management, LLC, its affiliates, and any of their respective officers, directors, employees, representatives, or agents.

7.  "Hilco" shall mean Hilco Global and its subsidiaries and affiliates, including Hilco Real Estate, LLC.

8.  "Including" shall mean "including, but not limited to."

9.  "Lampert" shall mean Edward S. Lampert in any personal or professional capacity, and any entity which he directly or indirectly controls.

10. "Lands' End" shall mean Lands' End, Inc. and its affiliates.

11. "Lands' End Spinoff" shall mean the spinoff of Lands' End from Sears in April of 2014.

12. "Related Party Transactions Subcommittee" shall mean the subcommittee of that name of the Audit Committee, or any other committee or subcommittee of the Sears Board responsible for reviewing and approving potential related party transactions.

13. "Restructuring Subcommittee" shall mean the Restructuring Subcommittee of the Restructuring Committee of Sears.

14. "Sears," "You," or "Your" shall mean Sears Holdings Corporation, its subsidiaries and affiliates, all Debtors (as defined in the Riecker Declaration), and any of their respective officers, directors, employees, representatives, or agents.

3

15.    "Sears Board" shall mean the Board of Directors of Sears.

16.    "Sears Canada" shall mean Sears Canada Inc. and its subsidiaries and affiliates.

17.    "Sears Canada Partial Spinoff" shall mean the partial spinoff of Sears Canada in 2012, in which Sears distributed approximately 45% of Sears Canada's total issued and outstanding common shares to its shareholders.

18.    "Sears Canada Rights Offering" shall mean the October 2014 Sears Canada rights offering of up to 40 million shares.

19.    "Sears Hometown Outlets" or "SHO" shall mean Sears Hometown and Outlets Stores, Inc. and its subsidiaries and affiliates.

20.    "SHO Separation" shall mean the separation of SHO from Sears through a rights offering in 2012 and all subsequent agreements or amendments to agreements between Sears and SHO.

21.    "Seritage" shall mean Seritage Growth Properties and its subsidiaries and affiliates.

22.    "Seritage Litigation" shall mean *In re Sears Holdings Corporation Stockholder and Derivative Litigation,* Consol. C.A. No. 11081- VCL.

23.    "Seritage Transaction" shall refer to the planning, negotiation, and creation of Seritage; the identification, analysis, and sale of real estate from Sears to Seritage; and the drafting, negotiation, and execution of any lease or leaseback agreements over the period September 1, 2014 to August 1, 2015.

24.    "Time Period" shall mean the time period from March 24, 2005 to October 15, 2018.

4

25.     "Tisch" shall mean Thomas J. Tisch in any personal or professional capacity.

26.     "Transactions" shall mean (i) the Seritage Transaction, (ii) the Lands' End Spinoff, (iii) the SHO Separation; (iv) the Sears Canada Partial Spinoff; (v) the Sears Canada Rights Offering, (vi) any of the ESL Loan Transactions, (vii) any transaction reviewed and approved by the Related Party Transactions Subcommittee, Audit Committee, or Real Estate Special Committee, (viii) any transactions or agreements between Sears and Seritage, Lands' End, SHO, or Sears Canada, and (ix) any transaction where Sears provided Assets to ESL.

## INSTRUCTIONS

1.     Each request for production shall be answered completely, separately, and fully.

2.     Unless otherwise specified, the time period covered by these requests is the period from March 24, 2005 to October 15, 2018, including any documents, communications, or materials that were created, referred to, or used in that period.

3.     These requests for production of documents apply to all documents in Your possession, custody, or control, regardless of their location and regardless of whether such documents are held by You or any of Your employees, agents, representatives, attorneys, consultants, advisors including financial advisors, persons, or entities acting on Your behalf, including Your directors, the Sears Board, the Related Party Transactions Subcommittee, the Audit Committee, the Real Estate Special Committee, or any other committee or subcommittee of the Sears Board.  In responding

to these requests, You are to review and search all relevant files of appropriate entities and persons.

4. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto. Documents that in their original condition were stapled, clipped, or otherwise fastened together, or were placed in a file together, shall be produced in such form.

5. Documents produced from the records of individuals should be identified (either by document production number or otherwise) as coming from the records of such particular individual.

6. Each document request shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

7. To the extent the documents are maintained or are otherwise available electronically, please produce them in that form, including all metadata.

8. For documents created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories

9.     All documents produced should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

10.     These requests specifically contemplate the production of electronic or magnetic data. Such electronically stored information should be produced consistent with Rule 34 of the Federal Rules of Civil Procedure.

11.     If any documents are withheld from production on the alleged grounds of privilege or immunity (whether under any common law, statute, or otherwise), You shall identify each such document on the due date of production by stating:

    a.     The identity of each person who prepared and/or signed the document;

    b.     The identity of each person designated as an addressee;

    c.     The identity of each person who received any copy of the document;

    d.     The date of the document;

    e.     The subject-matter of the document;

    f.     The type of document; and

    g.     The basis for withholding the document.

Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein. For the avoidance of doubt, the

Restructuring Subcommittee does not believe that Sears can properly object on privilege grounds to any of the requests herein.

12.     These requests are continuing in nature and require further and supplemental production if additional documents are acquired or located following the time of initial production, to the fullest extent required by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

13.     If, in responding to these requests, You claim any ambiguity in a request for production of documents, or in a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to respond, but You shall set forth as part of Your response the language deemed to be ambiguous and the interpretation used to respond to the request for production.  To the extent you believe that any request is ambiguous, we request that you contact the Restructuring Subcommittee's counsel to resolve the ambiguity.

14.     These requests do not prejudice the Restructuring Subcommittee from seeking additional requests for documents, or from serving a demand pursuant to Bankruptcy Rule 2004 or any other process.

## DOCUMENTS REQUESTED[1]

1.     All agreements between Sears and any of the following parties during the Time Period:  ESL, Lampert, Berkowitz, Tisch, and Fairholme.

2.     All agreements that form or concern each of the Transactions.

---

[1] These requests include by reference the Preliminary Document Requests dated October 12, 2018, annexed herein as Exhibit A.

3.      A schedule of all transactions between Sears and any of the following parties, including all contracts, distributions, or purchases, during the Time Period:  ESL, Lampert, Berkowitz, Tisch, and Fairholme.

4.      A schedule of all Assets—whether or not for consideration—transferred during the Time Period between Sears and any of the following parties:  ESL, Lampert, Berkowitz, Tisch, and Fairholme.

5.      A schedule of every person employed by Sears who negotiated, drafted, or approved any of the Transactions.

6.      A schedule of all persons employed by Sears who was also affiliated with ESL, or that invested in ESL, during any portion of the Time Period and documents sufficient to show the time, amount, and nature of any such investment.

7.      All agreements between Sears Holdings and (i) Seritage; (ii) Lands' End; (iii) SHO; and (iv) Sears Canada, including agreements concerning shared services, tax sharing, and "Shop Your Way," and all documents concerning such agreements.

8.      All documents concerning any of the Transactions.

9.      All documents concerning the rationale for any of the Transactions.

10.     All documents concerning the fairness of any of the Transactions to Sears or its creditors.

11.     All documents relating to the predicted and actual financial impact of any of the Transactions on Sears.

12.     All documents concerning alternatives considered with respect to any of the Transactions, including alternative marketing, proposals, bids, offers, pricing, or financing.

9

13.     All documents provided to lenders or rating agencies since January 1, 2012.

14.     All internally-developed market or industry analyses prepared since January 1, 2012.

15.     All valuations of Sears developed either externally or internally since January 1, 2012.

16.     All "Sources and Uses" analyses prepared concerning the Transactions.

17.     All documents concerning stock buyback transactions and dividend payments, including cash flows, financial analyses, and board minutes.

18.     Any analysis of same store sales prepared since January 1, 2012.

19.     A complete Sears organizational chart, including any changes since January 1, 2012.

20.     A schedule of store listings of each year end since 2012, including any geographical breakdowns by state and/or region.

21.     All documents concerning the actual or intended use by Sears of the proceeds received from any of the Transactions.

22.     All actual or draft strategic or business plans or budgets reviewed or approved the Sears Board or senior management.

23.     All documents concerning any analysis or discussion of the liquidity or solvency of Sears during any portion of the Time Period, including any internal analysis or external advice, fairness opinions, presentations, and informal or formal letters.

10

24.     All documents concerning any analysis, discussion or advice regarding the fiduciary duty or other obligations of any officer or director of Sears in connection with any of the Transactions.

25.     All documents concerning the financial and business projections of Sears in connection with any of the Transactions.

26.     All documents concerning any financial and business projections conducted by Sears or an outside advisor during any portion of the Time Period, including annual budgets, long-range plans, business plans, and impairment analyses.

27.     All documents concerning the valuation of any Asset involved in any of the Transactions.

28.     All analyses or certificates prepared by Sears or an outside advisor concerning whether any asset transfer or financing transaction was permitted under existing credit documentation.

29.     All documents concerning any non-consummated or pending transaction between Sears and ESL or Lampert that was considered or discussed during the Time Period.

30.     All documents concerning the joint ventures between Sears and Simon Properties, Macerich, and General Growth Properties, respectively, entered into in or about April 2015 (the "JVs").

31.     All documents relating to process by which real estate properties were selected for inclusion in the Seritage Transaction.

32.     All documents concerning the Master Lease between Sears and Seritage.

11

33.     Documents sufficient to show the ownership structure of Seritage during the Time Period.

34.     All documents concerning the Seritage Litigation, including all filings, internal analyses, communications with counsel, work product, expert reports, settlement negotiations, and insurance contracts.

35.     All documents reflecting communications with any financial institutions or other third parties concerning contemplated or actual financing for any of the Transactions.

36.     All documents concerning any actual or potential loan or investment by any third party in Sears or any Sears debt instrument.

37.     All documents concerning the appraisal or valuation of any Sears store or other real property transferred in connection with any of the Transactions.

38.     All documents concerning the actual or contemplated exercise of any termination or recapture right relating to any stores transferred to Seritage or the JVs.

39.     All documents provided to or received from Duff & Phelps in connection with any work done on behalf of Sears, the Sears Board, and any committee or subcommittee of the Sears Board.

40.     All documents provided to or received from Centerview Partners in connection with any work done on behalf of Sears, the Sears Board, and any committee or subcommittee of the Sears Board.

41.     All documents provided to or received from Deloitte in connection with any work done on behalf of Sears, the Sears Board, and any committee or subcommittee of the Sears Board.

12

42.     All documents concerning the appointment of a real estate valuation provider prior to the appointment of Cushman & Wakefield.

43.     All documents provided to or received from Cushman & Wakefield in connection with any work done on behalf of Sears, the Sears Board, and any committee or subcommittee of the Sears Board.

44.     All documents provided to or received from Hilco in connection with any work done on behalf of Sears, the Sears Board, and any committee or subcommittee of the Sears Board.

45.     All documents reflecting communications with Wachtell, Lipton, Rosen & Katz concerning the Transactions or any contemplated strategic transaction or asset transfer between Sears and any other party.

46.     All documents reflecting communications with Cleary Gottlieb Steen & Hamilton LLP concerning the Transactions or any contemplated strategic transaction or asset transfer between Sears and any other party.

47.     All emails sent or received by Lampert, Robert Riecker, Jeff Stollenwerck, Robert Schriesheim, Jason Hollar, Kunal Kamlani, and Scott Huckins during the Time Period.

Dated: October 26, 2018
     New York, New York

/s/

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta
Lewis R. Clayton
Susanna M. Buergel
Kelley A. Cornish
Robert Britton
Jonathan H. Hurwitz
Karen R. King
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
*Counsel to the Restructuring Subcommittee of Sears
Holdings Corporation*

# Exhibit A

**PRELIMINARY DOCUMENT REQUESTS**
**On Behalf of the Restructuring Subcommittee**
**Sears Holdings Corp.**

On behalf of the Restructuring Subcommittee (the "Subcommittee") of the

Restructuring Committee of Sears Holdings Corp. (the "Committee"), we request that

you provide us, as counsel for the Subcommittee, the documents identified below.  We

ask that the documents identified below be produced as soon as possible and on a rolling

basis, and in any event no later than October 19, 2018.  The documents should be sent to

Jonathan H. Hurwitz, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of

the Americas, New York, NY 10019, jhurwitz@paulweiss.com.  To the extent the

documents are maintained or are otherwise available electronically, please produce them

in that form.

Please feel free to contact us to discuss: (i)  any ways in which you believe

these requests could be modified to expedite the production or limit the burden of

collecting the requested documents while providing the information we need for our

work; (ii) the format and manner of producing the documents; and (iii) any other issues

that you wish to discuss.  We also welcome any input or suggestions regarding other

potential documents, or categories of documents, that you believe might be of interest to

the Subcommittee.

We anticipate following up with further requests for additional categories

of documents.

For the purposes of these requests, please use the following definitions,

which apply to each request:

Doc#: US1:12360841v4

1.     "Audit Committee" means the Audit Committee of the Board of Directors of Sears Holdings Corp. ("Sears Holdings").

2.     "Board" means the Board of Directors of Sears Holdings.

3.     "ESL" means ESL Investments, Inc., any of its affiliates or related persons or entities, and any other person or entity controlled by Edward S. Lampert (other than Sears).

4.     "Related Party Transaction Subcommittee" means the subcommittee of that name of the Sears Holdings Audit Committee, or any other committee or subcommittee of the Sears Holdings Board responsible for reviewing and approving potential related party transactions.

5.     "Sears" means Sears Holdings and its subsidiaries and affiliates.

6.     "Transactions" shall mean (i) the Seritage purchase and leaseback, (ii) the Land's Ends spin off, (iii) the separation of Sears Hometown and Outlet (SHO), (iv) the sale of interest in Sears Canada, (v) any loan transactions between Sears and ESL, and (vi) any other transaction reviewed and approved by the Related Party Transaction Subcommittee.

## REQUESTS

(i)     A schedule of all cash or other assets—including dividends, fees, and payments, whether or not for consideration—transferred from Sears to ESL since 2005.

(ii)    All minutes and related materials of the Sears Holdings Board since 2005.

(iii)   All minutes and related materials of the Sears Holdings Audit Committee and the Related Party Transaction Subcommittee.

(iv)    All presentations, reports, or opinions provided to the Sears Holdings Board, the Audit Committee, or the Related Party Transaction Subcommittee analyzing or discussing the Transactions.

Doc#: US1:12360841v4

(v)      All ESL internal approval memos or similar documents concerning the
Transactions.

(vi)     All reports from ESL to investors concerning Sears.

(vii)    Appraisals by Cushman & Wakefield of all stores or other property
transferred as part of or in connection with the Transactions.

(viii)   All Sears financial and business projections since 2005.

(ix)     All Sears impairment analyses since 2005.

(x)      All valuation reports or analyses for any asset involved in the Transactions.

3