WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                      :
                                                           :         **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                  :
                                                           :         **Case No. 18-23538 (RDD)**
                                                           :
Debtors.[1]                                                :         **(Jointly Administered)**
                                                           :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' REPLY IN SUPPORT OF OMNIBUS MOTION
OF DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES AND
RELATED SUBLEASES OF NONRESIDENTIAL REAL PROPERTY AND
ABANDONMENT OF PROPERTY IN CONNECTION THEREWITH**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this reply to the objections (collectively, the "**Objections**") to the *Omnibus Motion of Debtors to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (ECF No. 25, the "**Motion**"),[2] and in support thereof, respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Motion reflects the Debtors' exercise of their sound business judgment to reject certain unexpired leases of nonresidential real property that (i) are not necessary for the Debtors' restructuring, (ii) reflect above-market rent, and/or (iii) either encumber "dark store" locations where the Debtors have already ceased ongoing operations or are in the process of ceasing operations. As set forth in the Motion, the Debtors are seeking Court approval of the rejection of the unexpired nonresidential real property leases and related subleases identified in the Motion (as amended, the "**Rejected Leases**")[3] as of the date the Debtors physically surrender possession. *See* Motion ¶¶ 7 and 12.

---

[2] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[3] On October 24, 2018, the Debtors amended the schedule of leases and subleases designated for rejection. *See* ECF No. 290.

2

2. Of the counterparties to the 234 Rejected Leases, only two objections to the Motion remain unresolved. The remaining objecting landlords (the "**Objecting Landlords**")[4] have filed Objections to the Motion that can be generally summarized as follows: (1) retroactive rejection of the Rejected Leases is not appropriate; (2) the Debtors surrender of the leased premises is only valid to the extent any subtenant has also vacated such premises; (3) the Debtors must remove all personal property before the rejection of any lease can be effective; and (4) any rights of the Objecting Landlord's to assert an administrative claim against the Debtors in connection with the removal of any abandoned property left by the Debtors at the leased premises should be preserved. The arguments advanced by the Objecting Landlords do not have merit and should be overruled. Notably, none of the Objecting Landlords object to the Debtors' rejection of their applicable Rejected Lease.[5]

3. The Objections should be overruled for several reasons. First, it is well established in this District that a court may authorize retroactive rejection of leases and related subleases where the debtor has surrendered the premises to the lease counterparty. Second, a debtor's obligation to surrender the premises of a rejected lease does not extend to subtenants. Indeed, a sublease is automatically terminated upon rejection of the primary lease and it is the landlord's burden to evict the subtenant. Third, section 554 of the Bankruptcy Code expressly provides a debtor with the right to abandon personal property and this Court has already entered an order providing for such relief in connection with the Debtors' closing of its stores. The

---

[4] As of the filing of this reply, only the Objections filed by NW Duluth LLC (ECF No. 536) and U.S. Realty 86 Associates (ECF No. 556) remain pending.

[5] The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") has filed a reservation of rights as it relates to the Motion (ECF No. 662). The Debtors are working with the Creditors' Committee to furnish the information requested by the committee on Sunday, November 11th and, to the extent the Creditors' Committee objects to the Debtors' rejection of any of the Rejected Leases, the Debtors reserve all rights and positions to respond accordingly.

Debtors' exercise of their statutory right to abandon cannot present a hindrance to their rejection of an unexpired lease. Fourth, the proposed order granting the Motion clearly states that "the landlord's rights, if any, to file a claim for the costs of disposal of such property are fully reserved, as are the rights of any party in interest to object to such claims."

4. The balance of the equities in these chapter 11 cases favors the Debtors and the Objections, which seek inequitable relief, should be overruled.

## The Objections Should be Overruled

### A. Retroactive Rejection is Warranted Where the Leased Premises are Vacated and Surrendered to Landlord

5. The Objection filed by NW Duluth LLC (the "**Duluth Landlord**") asserts, among other things, that the Debtors' retroactive rejection of the leased premises to October 15, 2018, is impermissible. Specifically, the Duluth Landlord contends that rejection of the lease encumbering the premises should "be effective only as of the *later* of the date of the order granting such relief or the surrender of the Premises (or at minimum, the date of the hearing)." *Duluth Landlord Objection* ¶ 14. The Debtors fully vacated and surrendered possession of the applicable leased premises to the Duluth Landlord on October 15, 2018. As acknowledged by the Duluth Landlord in its Objection, the Debtors sent an email correspondence on October 15, 2018 stating that the Debtors surrender the premises and providing the applicable key and alarm codes (the "**Surrender Letter**"). *See Duluth Landlord Objection* ¶ 6. In addition to the Surrender Letter, the Duluth Landlord also received notice of the Motion that was filed on October 15, 2018. The Debtors clearly indicated their intent to reject the Duluth Landlord's lease to the Duluth Landlord, vacated and surrendered possession of the leased premises, and informed the Duluth Landlord that it may re-let the leased premises. The Duluth Landlord's Objection is an impermissible attempt to extract postpetition post-rejection administrative

4

priority amounts from the Debtors despite the Debtors' unequivocal and formal surrender of the leased premises.

6.  The Duluth Landlord's Objection seeks to set aside well-established law in this Circuit that the Bankruptcy Court has the authority to order rejection of an unexpired lease prior to the date of entry of an order. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602 (2d Cir. 2007) (upholding a bankruptcy court ruling that a rejection of an unexpired lease was retroactive to the date of the hearing on the motion to reject, even though the order to reject was not entered until nearly 33 months later). Indeed, this Court has already ruled in similar circumstances that the proper date of rejection of a lease is the date in which the property is turned over to the landlord by receipt of a surrender letter and keys. *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 10-24549, Hr'g. Tr. at 238-239:22-4 (Bankr. S.D.N.Y. Jun. 14, 2011) (stating that, "[t]he date of the surrender is a valid date here. . . . if the debtor vacated the property as of that date or even before, and that was just the date that they were turning over the [premises,] making it clear to the landlord, you can come in, then that should be the rejection date.").

7.  Permitting the retroactive rejection of the Duluth Landlord's lease is consistent with prior rulings in chapter 11 cases in this District and elsewhere. *See e.g.*, *The Great Atlantic & Pacific Tea Co., Inc.*, No. 15-23007 (Bankr. S.D.N.Y. Aug. 11, 2015) (authorizing retroactive rejection of leases and related subleases where the Debtors had surrendered the premises to the lease counterparties); *In re The Great Atl. & Pac. Tea Co., Inc.*, No. 10-24549 (Bankr. S.D.N.Y. Dec. 15, 2010) (authorizing retroactive rejection of dark leases where the debtors had surrendered the premises to the lease counterparties); *In re The Reader's Digest Ass'n, Inc.*, No. 09-23529 (Bankr. S.D.N.Y. Sept. 17, 2009) (approving retroactive

5

rejection of unexpired leases); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) (finding that retroactive rejection is valid when the balance of the equities favor such treatment); *In re Jamesway Corp.*, 179 B.R. 33, 36 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions on the manner in which the court can approve rejection"); *see also Thinking Mach. Corp. v. Mellon Fin. Servs. (In re Thinking Mach. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (approving retroactive orders of rejection where the balance of the equities favors such relief); *Pacific Shores Development, LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064 (9th Cir. 2004) (approving a retroactive order to reject an unexpired lease even though the lessor has not retaken the premises).

8.   Moreover, an order approving rejection of the Duluth Landlord's lease as of the Rejection Date is fair and equitable to all parties because the Debtors vacated and surrendered the premises on the Rejection Date.  The Duluth Landlord is seeking postpetition rent for premises the Debtors did not occupy post Rejection Date and the estates did not receive any benefit from after the Rejection Date.  Accordingly, the Duluth Landlord should be estopped from seeking to bootstrap a portion of its general unsecured lease rejection claims to administrative expense status in reliance on its unilateral attempt to avoid acceptance of the Debtors' formal surrender of the leased premises.  The Debtors believe that the Court should find, as it has in similar circumstances, that retroactive relief is warranted to the date in which the Debtors physically vacated and surrendered the leased premises to the landlord.

**B.   Subtenant Possession Does Not Negate the Debtors' Surrender**

9.   U.S. Realty 86 Associates (the "**U.S. Realty Landlord**") contends that any surrender of the leased premises by the Debtors cannot be effective unless the existing subtenants have also vacated the property.  This argument is nothing more than a red herring and an attempt to eviscerate the Debtors' statutory right to reject the Rejected Leases and contain and

6

limit needless administrative expenses. Even if a subtenant remains on the premises after a debtor's rejection of the prime lease, the debtor's obligation to surrender the premises of a rejected lease does not extend to subtenants. *See* 11 U.S.C. § 365(d)(4) (requiring only that the trustee immediately surrender that nonresidential real property to the lessor).

10. As an initial matter, the Debtors' rejection of their prime leases associated with the leased premises designated for rejection operates to terminate any related sublease. *See, e.g., In re The Great Atlantic & Pacific Tea Company*, 544 B.R. 43, 54 (Bankr. S.D.N.Y. 2016) ("As a sublessee, [subtenant] has no possessory interest to preserve following the debtor's rejection of the prime lease.") (internal citations omitted); *In re The Great Atlantic & Pacific Tea Company*, Case No. 10-24549, Hr'g. Tr. at 243:14-20 (RDD) (Bankr. S.D.N.Y. Jun. 14, 2011) ("It's really belt and suspenders to actually reject the sublease"); *In re Child World, Inc.*, 142 B.R. 87 (Bankr. S.D.N.Y. 1992) ("[w]hen a prime lease fails, so does the sublease.") (internal citations omitted); *In re Dial-A-Tire, Inc.*, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (finding rejection of a lease must result in the sublease being deemed rejected as well); *In re Elmhurst Transmission Corp.*, 60 B.R. 9, 10 (Bankr. E.D.N.Y. 1986) (finding that subtenants do not have standing in Bankruptcy Court after the rejection of the debtor's lease); *see also Four Bros. Boat Works, Inc. v. S&SF, Inc.*, 5 S.W.3d 12 (Tex. App. Houston 1st Dist. 2001) ("As a general rule, a subtenant's right of occupancy under a sublease ends when the underlying master lease ends."); *Forest Park Lanes, Ltd., v. Keith,* 441 S.W.2d 920, 939 (Tex. App. 1969) (finding that termination of master lease "brought into effect, by operation of law, the termination of all subleases, validity of which was dependent upon continuation of the primary lease."). Accordingly, the Debtors' rejection of the U.S. Realty Landlord's lease automatically results in, without further action, the rejection of the related subleases of High Quality Automotive Repair,

7

LLC and To and Sons Corp. As a result of the Debtors' rejection of U.S. Realty Landlord's Rejected Lease, the Debtors may take action to evict the subtenants. *See In re Great Atlantic & Pacific Tea Co.,* Case No. 15-23007 (RDD), Hr'g. Tr. at 243:14-20 (Bankr. S.D.N.Y. January 10, 2011) (finding that it is the landlord's responsibility to get rid of a subtenant).

11. Courts in this District and elsewhere have approved rejection of a lease notwithstanding subtenants occupying the premises. *See*, *e.g.*, *In re Great Atlantic & Pacific Tea Co.,* Case No. 15-23007 (Bankr. S.D.N.Y. Aug, 11, 2015) (granting retroactive rejection of lease despite subtenants continued occupancy); *see also In re New Meatco Provisions, LLC*, Case No. 2:13-bk-22155-PC, 2013 Bankr. LEXIS 2850, 2013 WL 3760129, *1, 6 (Bankr. C.D. Cal. July 16, 2013) (holding that the fact that the subtenant might still have occupied a portion of the premises does not change the court's conclusion that extraordinary circumstances existed warranting retroactive rejection); *In re Cardinal Export Corp.*, 30 B.R. 682 (Bankr. E.D.N.Y. 1983) ("[i]f the Landlord is to receive compensation for the period subsequent to the surrender of the premises by the trustee, he must look elsewhere to those persons that benefited from such occupancy."). This Court should hold that any claim against the Debtors because of a third party maintaining property or possession at the leased premises for the period subsequent to the Rejection Date is disallowed. *See id*. at 685.

12. U.S. Realty Landlord should not be permitted to enhance its claim status by imposing hurdles not required under the Bankruptcy Code.

## C. Rejection Is not Conditioned on the Debtors Removal of All Personal Property from Leased Premises

13. As set forth in the Motion, certain of the Debtors' personal property may remain at a leased premise after the Debtors' surrender. Under section 554(a) of the Bankruptcy Code, a debtor's right to abandon property is, except for certain exceptions inapplicable in the

8

present case, unfettered. *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506–07 (1986) (noting one such exception and holding that section 554(a) does not preempt state laws aimed at protecting the public's health and safety). It is axiomatic that the Debtors availing themselves of their statutory right of abandonment cannot also result in abridging their statutory right to reject burdensome unexpired leases. The Debtors are in the process of winding down operations at the premises leased from U.S. Realty Landlord and, in accordance with the *Interim Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of The Liquidation Consulting Agreement* (ECF No. 337), the Debtors may exercise their right to abandon personal property upon their surrender of the premises to the landlord. Further, to the extent U.S. Realty Landlord seeks to assert a claim against the Debtors in connection with the costs associated with removal of any of the Debtors' personal property remaining after their surrender, such rights are fully preserved and expressly noted in the Proposed Order.

14. There is no support for U.S. Realty Landlord's position that the Debtors' rejection should be conditioned on the removal of all personal property. As more fully set forth in the Motion, Courts in this District and elsewhere have authorized debtors to abandon property on premises subject to rejected leases. *See*, *e.g.*, *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Mar. 22, 2018) (ECF No. 199) (authorizing debtors to abandon any remaining property on the leased premises for rejected leases, other than hazardous or toxic materials); *In re Sports Auth. Holdings, Inc.*, Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (ECF No. 1700) (authorizing the debtors to abandon any unremoved or unsold furniture, fixtures, and equipment at a closing store); *In re Great Atl. & Pac. Tea Co., Inc*., Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jan. 22, 2016) (ECF No. 2367) (authorizing the debtors to abandon furniture, fixtures, and equipment as of a retroactive rejection date); *In re Am. Apparel,*

*Inc.*, Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 20, 2015) (ECF No. 364) (authorizing the debtors to dispose of or abandon property of their estates left in stores after the completion of store closing sales); *In re RadioShack Corp.*, Case No. 15-10197 (BLS) (Bankr. D. Del. Feb. 2, 2015) (ECF No. 455) (authorizing the debtors to abandon all unsold assets located at any of the closing stores); *In re Metropark USA, Inc.*, Case No. 11- 22866 (RDD) (Bankr. S.D.N.Y. May 5, 2011) (ECF No. 50) (authorizing the debtor to reject a lease and abandon certain furniture, fixtures, and equipment on the leased premises).

### D. The Debtors Neither Delayed in Filing the Motion or Scheduling a Hearing Related Thereto

15.    The Debtors filed the Motion on the first day of these chapter 11 cases and amended the schedule of Rejected Leases within ten (10) calendar days. The Motion was scheduled to be heard at the first available hearing date provided by the Court for "second day" matters. Accordingly, the Debtors made no delay in acting and, as a result, the estate and creditors should not bear additional costs. Any spurious claim by the Objecting Landlords to the contrary should be dismissed.

**Conclusion**

16.   For the reasons set forth herein and in the Motion, the Objections should be overruled to the extent they have not been resolved consensually or withdrawn, and the Motion should be approved.

Dated: November 14, 2018
   New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*