Eric R. Reimer (*pro hac vice* admission pending)
Thomas R. Kreller (*pro hac vice* admission pending)
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

Craig M. Price
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel to Cyrus Capital Partners, L.P.*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEY YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) Case No. 18-23538 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: November 15, 2018 |
| | ) |
| | Re: Docket No. 642, 643 |

**CYRUS CAPITAL PARTNERS, L.P.'S (I) OBJECTION TO MOTION OF DEBTORS FOR ORDER SHORTENING NOTICE WITH RESPECT TO EMERGENCY MOTION OF DEBTORS FOR ORDER APPROVING SALE OF MEDIUM TERM NOTES, AND (II) PRELIMINARY OBJECTION TO EMERGENCY MOTION OF DEBTORS FOR ORDER APPROVING SALES OF MEDIUM TERM NOTES**

Cyrus Capital Partners, L.P. ("**Cyrus**") files this: (i) objection (the "**Objection**") to the

*Motion for Order Shortening Notice with Respect to Emergency Motion of Debtors for Order*

*Approving Sale of Medium Term Notes* (the "**Motion to Shorten Time**") [Dkt. No. 643], filed by

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), and (ii) preliminary objection

(the "**Preliminary Objection**") with respect to the *Emergency Motion of Debtors for Order Approving Sale of Medium Term Notes* (the "**Sale Motion**") [Dkt. No. 642].

On late Friday night, November 9, 2018, the Debtors filed the Motion to Shorten Time requesting that the Court shorten the required notice period with respect to the Sale Motion so as to permit the Court to hear both the Motion to Shorten Time and the Sale Motion on Tuesday, November 13, 2018.  The Debtors subsequently moved that requested hearing to Thursday, November 15, 2018—still providing parties just two (2) business days' notice of the proposed hearing.  Cyrus objects to the Debtors request to shorten time in this manner.

Cyrus also objects to the underlying Sale Motion, which seeks authorization on an emergency basis for certain unspecified Debtors to sell certain Medium Term Notes, Series B (the "**MTNs**"), issued by Debtor Sears Roebuck Acceptance Corp. ("**SRAC**") and "currently owned by various other Debtors."  Sale Motion at ¶ 6.[1]  Cyrus further reserves the right to supplement this Preliminary Objection with respect to the Sale Motion in accordance with whatever further schedule the Court may establish with respect to the Sale Motion.

## I.    The Sale Motion Is No Longer an "Emergency" That Requires an Immediate Hearing; Parties Should Be Given A Fair and Reasonable Opportunity to Respond.

The "emergency" that was the basis for the Debtors' request that the Sale Motion be heard on an expedited basis no longer exists.  A CDS auction (the "**Auction**") that certain Debtors want to take advantage of was initially scheduled for November 14, 2018, but now has been postponed for *at least* twelve (12) days.  Specifically, the International Swaps and Derivatives Association ("**ISDA**") has published a notice (the "**Notice**") (attached as Exhibit A) that the Auction will be delayed until *at least* November 26, 2018.  Accordingly, there is no longer any need for the Sale Motion to be heard on such an expedited basis.

---

[1]       The Sale Motion fails to identify which Debtors hold the MTNs and are seeking authorization to sell them.

As the Motion to Shorten Time concedes, the Court may reduce an otherwise required notice period only "for cause shown" under Fed. R. Bankr. P. 9006(c).  In light of the delay of the Auction, however, the Debtors can no longer show good cause to so extremely reduce the standard notice period provided for at Bankruptcy Rule 2002(a)(2) with respect to the Auction. *See* Fed. R. Bankr. P. 2002(a)(2) (establishing 21-day notice period for a proposed use of property of the estate outside of the ordinary course).  As set forth below, the Debtors' proposed sale of the intercompany MTNs by certain Debtors—but seemingly without due consideration of demonstrably contrary interests of Debtor SRAC and its estate— is not a simple matter that should be rushed into merely because it may be expedient for one subset of Debtors at the direct expense of another.  Rather, the Debtors' web of intercompany obligations, of which the MTNs are but one, is extremely complex, directly pits different estates against each other and raises important inter-estate issues for the Debtors and other parties that require thoughtful and transparent consideration as these cases evolve.  The Sale Motion simply does not provide sufficient information to properly evaluate the relief the Debtors seek, and time will be necessary to gather and digest that information—whether through formal discovery or otherwise.  And the two (2) business days of notice that have been provided on the Sale Motion is not nearly adequate given the important and complex issues raised by the proposed sale by certain Debtors at the expense of Debtor SRAC and its creditors.

## II.    The Sale Motion Should Not Be Approved Because The Proposed Free and Clear Sale of the MTNs Is Directly Contrary to the Interests of SRAC and Its Estate.

The Debtors paint the Sale Motion as a simple request to sell property of certain Debtors (i.e., those that own MTNs) that may benefit the creditors of those particular estates (collectively, the "**Selling Debtors**").  Remarkably, however, the Sale Motion fails to so much as mention the fact that the proposed sales by the Selling Debtors are directly and demonstrably *contrary* to the

3

interests of Debtor SRAC (the issuer of the MTNs) and *its* estate in several respects.  Further, the

authority sought by the Debtors is far too broad; unlike in other section 363 sales, where the

debtor seller seeks approval to accept a concrete bid, there is no pending offer for the MTNs and

absolutely no oversight of any ultimate sale by this Court.  The Sale Motion is not a motion

seeking approval of sale procedures—it is a motion seeking approval of a sale to an unidentified

bidder at an unidentified price and on unidentified terms under circumstances where the rights

and interests of SRAC are diametrically opposed to those of the Selling Debtors.  The Sale

Motion makes no mention of this blatant inter-estate conflict or of any measures that may have

been taken to ensure that SRAC has had any independent voice or any opportunity itself to

oppose the proposed sales.

### a.  The Proposed Sale of the MTNs Free and Clear of SRAC's Rights and Interests Is Directly Contrary to the Best Interests of SRAC and Its Estate.

The Sale Motion contains the barest description of the MTNs, stating only that "SRAC

issued the MTNs" and "[a]ll of the MTNs are held by affiliates of the Company."  Sale Motion at

¶ 4.  The Sale Motion provides no other description of how or why the MTNs were issued, what,

if any, consideration SRAC received for the MTNs, whether the MTNs represent claims for

actual "borrowed money," intercompany transfers of cash or other property, accounting book

entries, or some other insider arrangement altogether.

Likewise, despite the fact that SRAC itself is the Debtor that is the obligor on the MTNs

in question, the Sale Motion completely ignores any discussion of whether SRAC has (or has

investigated whether it has) any defenses, claims, counterclaims, setoff or other rights or interests

that would permit SRAC to challenge the amount, validity, priority or enforceability of the

MTNs against SRAC and its estate (collectively, "**SRAC Challenge Rights**").  Instead, the Sale

Motion apparently seeks to allow the Selling Debtors to sell the MTNs entirely "free and clear"

of any SRAC Challenge Rights, without any consideration of what those SRAC Challenge

Rights may be.

 To compound the trampling of SRAC's rights, the Sale Motion further proposes that any

buyer of the MTNs be given "good faith" findings under Bankruptcy Code section 363(m)—

presumably giving such buyer even further insulation against any challenges that SRAC or its

creditors might otherwise have.  Under the Sale Motion, this would occur even though the Court

will not even know the identity of any buyer, the purchase price paid or any facts about how the

sales were conducted.

 In short, without detailed disclosure of the facts and circumstances under which the

MTNs were issued and have been maintained and the extent to which SRAC may have rights to

challenge the MTNs, there is no way to evaluate the amount, validity, priority, or enforceability

of the MTNs—and therefore no way for this Court to assess whether the proposed sale of the

claims, especially "free and clear" of any SRAC Challenge Rights and with "good faith"

protections being granted to unknown buyers, is in fact appropriate.

  **b.**  **The Proposed Sale of the MTNs Free and Clear Would Strip SRAC of Rights
and Interests in Violation of SRAC's Automatic Stay.**

 The SRAC Challenge Rights constitute property of SRAC's estate.  To the extent the

"free and clear" sale of the MTNs to "good faith" buyers would strip SRAC of those rights, any

such sale would violate SRAC's automatic stay.  If the Selling Debtors intend to proceed with

the proposed "free and clear" sales of the MTNs, then either: (i) the Selling Debtors first need to

obtain relief from the SRAC automatic stay to ignore the SRAC Challenge Rights, or (ii) any

order authorizing the proposed sales must clearly and unequivocally preserve the SRAC

Challenge Rights against the Selling Debtors, any proposed buyer and any other party against

whom SRAC might assert the SRAC Challenge Rights for any reason.

      **c.    The Proposed Sale of the MTNs to Non-Affiliates Will Potentially Give Rise to "Springing" Claims Against SRAC That Otherwise Do Not Exist and That Could Materially Dilute SRAC Creditor Recoveries.**

The MTNs, pursuant to their own terms, do not currently provide for any recovery for the current affiliate holders of the MTNs.  Section 6.8 of the Indenture, dated as of October 1, 2002 (as amended, supplemented or otherwise modified prior to the date hereof, the "**Indenture**"), between SRAC and The Bank of New York Mellon Trust Company, N.A., as successor trustee, provides that:

> [n]o Securities of any series which are known by the Trustee to be owned or held by, for the account of or for the benefit of, the Company or any other obligor under this Indenture or any Affiliate of the Company or of such other obligor (other than Securities of that series pledged in good faith which would be deemed outstanding under the provisions of Section 7.4) shall be deemed outstanding for the purpose of any payment or distribution provided for in this Article.[2]

Indenture at § 6.8.

In other words, to the extent MTNs are held by affiliates of SRAC (such as the Selling Debtors), those affiliates do not have any right to payment from SRAC—i.e., do not have a claim against SRAC—under the MTNs.  Outside of a bankruptcy context, had MTNs been sold to a non-affiliate, the underlying claims against SRAC arguably would have sprung forth, and any amounts due and owing would have become claims against SRAC.  With SRAC's bankruptcy filing, however, a different result is required.  Upon the filing of the bankruptcy petition, a bankruptcy estate is created and claims against it are established.  The existence of claims and interests is determined as of the petition date.  *See* 11 U.S.C. §§ 101(5), (10); *see also, e.g.*, *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 528 (5th Cir. 2004) ("Rights of holders of claims and interests are fixed on the Petition Date"); *In re Einstein/Noah Bagel Corp.*, 257 B.R. 499 (Bankr. D. Ariz. 2000) ("put right" not a claim because, among other things, not yet exercisable on

---

[2]    This and other excerpts of the Indenture, including applicable definitions, are attached hereto as <u>Exhibit B</u>.

petition date).  Here, as of the petition date, the MTNs held by the Selling Debtors were MTNs

held by affiliates that therefore were locked in under Section 6.8 of the Indenture as *not* being

entitled to any payment or distribution from SRAC.

Claims under the MTNs, which in the hands of an affiliate are non-existent at the petition

date, cannot be permitted to spring to life simply if they are transferred to a non-affiliate in a

postpetition transaction.  As a matter of precedent, such a result could allow for mischief by

debtors by infusing questionable "springing" intercompany claims into the market to manipulate

claim pools and skew creditor voting.  Equally problematic, in the present case, allowing the

Selling Debtors to completely control the circumstances under which such claims spring to life

will also permit the Selling Debtors to unilaterally and materially dilute any recovery that the

applicable class of SRAC creditors stands to receive, as well as skew the voting outcome in the

SRAC creditor classes.

### d.   The Vague Suggestion That The Debtors and The UCC Will Manufacture Some Undefined, Future "True Up Mechanism" To Protect SRAC Is Woefully Inadequate.

As discussed above, by seeking to sell the MTNs "free and clear" and give buyers the

benefit of section 363(m) good faith protections, there appears to be a serious risk that the

transfer of the MTNs under these circumstances could improperly strip SRAC of defenses, setoff

rights and other protections that it otherwise will retain if the MTNs remain in the hands of the

other Debtors.  The Debtors have acknowledged as much in ¶ 3 of their proposed order, where

they refer to an undefined "true up mechanism" to ensure that SRAC and its creditors are not

adversely affected.  But until that "mechanism" is actually defined, stress tested and

demonstrated to sufficiently protect SRAC, SRAC and its estate should not be forced to bear the

risk of being stripped of substantive defenses and rights with respect to the MTNs based on

promises of some after-the-fact mechanism to be designed by Debtors with contrary interests.

> **e.    Permitting The Selling Debtors to "Flood the Market" With Intercompany Claims Opens a Dangerous Door To Potential Manipulation of Claims Pools and Skewing of Creditor Voting Power.**

The Sale Motion proposes a sale of MTN intercompany obligations to unknown third

parties under unknown circumstances and pursuant to unknown terms and conditions.  The sale

of legacy intercompany claims by certain Debtors at the expense of another Debtor under these

unregulated circumstances necessarily will introduce an entirely new and unknown creditor

constituent into the cases—and in particular, into SRAC's capital structure.  This exercise, if

permitted, may have significant implications for plan structure negotiations and creditor voting

rights, as well as introducing the potential for gamesmanship using all of the various types of

intercompany claims that exist between and among Debtors.  Allowing certain Debtors to

transform massive "insider" claims to massive third party claims in this manner could have far-

reaching implications for the ultimate resolution in these (and other) cases.

## III.    The Sale Motion Should Not Be Approved Because the Selling Debtors Have Not Proven the Proposed Sale Process or Timing to Be Value-Maximizing.

> **a.    The Sale Motion Requests that the Court Grant *Carte Blanche* Approval of a Process That Typically Involves Significantly More Court Oversight and Transparency to Affected Creditors.**

The Debtors have requested authority to sell the MTNs at whatever price they determine

is the best price available.  Further, they have requested the Court's approval of a sale process

over which the Court will have no authority.  Nor have the Debtors provided sufficient detail on

that process to property evaluate whether the process is likely to maximize value.

As the Debtors' own case citations in the Sale Motion indicate, chapter 11 debtors

typically obtain court approval of a sale *process* prior to the selection of the buyer offering the

highest or otherwise best price for the applicable assets.  *See, e.g.*, *In re Blockbuster Inc.*, Case

No. 10-14997 (BRL) (Bankr. S.D.N.Y. Feb. 21, 2011) [Dkt. No. 949] (approving bid protections

and procedures pursuant to which a winning bidder will then be brought back before the court).

The highest and best offer is then brought back before the court where the price and the process

are fully disclosed to provide the court with the opportunity to ensure that the process was fair

and value-maximizing and provide stakeholders with the opportunity to object to the sale.  In this

instance, however, the Debtors seek *carte blanche* to run virtually any process and to select any

bid as the "highest or best" bid in their discretion, without any further Court oversight.  *See* Sale

Motion, Exhibit A at ¶ 11.  Under the proposed order, the Debtors would have the authority to

sell the MTNs for a mere dollar if that was the highest and best offer, and neither the Court nor

any stakeholder would be given an opportunity to complain that the process was not fair or

value-maximizing.

Even if the sale were to produce a material amount of proceeds for the Selling Debtors,

the Sale Motion does not provide sufficient information on the costs to the Debtors' estates (and

specifically to the SRAC estate) of the sale.  As set forth herein, some of the more obvious costs,

especially the costs that would be imposed upon the SRAC estate by, among other things, the

imposition of material new claims on the SRAC estate, seem to have been completely ignored by

the non-SRAC Debtors and their advisors.

### b.  The Sale Motion Is Based on the Demonstrably Faulty Premise That a CDS Auction Maximizes the Value of the Underlying Debt Claims.

The Sale Motion asserts, without support, that "the specter of the Auction creates a

demand for the MTNs and confers a value that is greater than the value derived simply from the

collectability of the MTNs and their relative priority in the Debtors' capital structure."  Sale

Motion at ¶ 11.  The Debtors provide no analysis whatsoever to substantiate this claim.  Indeed,

to make such a claim, the Debtors are essentially making a claim about the value of the Debtors' assets only three weeks into case and with very little notice for other stakeholders or the Court to confirm or dispute the claim.  The most the Debtors can say at this time is that the Auction is a *convenient* way to realize some amount of value on the MTNs, not that it is the *value-maximizing* way.  In fact, the assertions by the Debtors are belied by outcomes from a variety of other well-known bankruptcies involving CDS swaps.  In a number of high profile cases, the value of company obligations grew materially over the course of the case—resulting in multiples of what was initially offered.  A look at past CDS auctions in other cases show that the valuation of the applicable obligations quite often increases after the auction.  Some notable cases include: (a) Lehman Brothers, in which the CDS auction priced bonds at 8.625% of par while bonds are currently worth over 47% of par, taking into account distributions received since the end of the case; (b) Visteon, pricing the bonds at 3% of par to end the case at above par; (c) American Airlines, pricing the bonds at 23.5% of par to end the case at par; (d) OSG, pricing the bonds at 35.5% of par to end the case at 110% of par; and others, offering appreciation of between approximately 211% in the case of OSG to over 3,345% in the case of Visteon.[3]

## CONCLUSION

On the face of the Sale Motion, it is not clear whether the Debtors have considered any of the important issues set forth above—though it is abundantly clear that SRAC's rights have not been given proper consideration.  To the contrary, the Sale Motion only speaks of a rush to sell off intercompany claims by certain Debtors, without regard to the interests of SRAC and its

---

[3]    Price data is from, for each case, the price obtained from the Creditex CDS auction results available at www.creditfixings.com for the representative "cheapest to deliver" reference bond and the latest post-auction price of the same bond available on Bloomberg.

creditors, without the typical oversight regarding asset sales given to the Court, and without any

consideration to the interests of other estates or other long term consequences in these cases.

For the foregoing reasons, Cyrus respectfully requests that the Court: (i) deny the Motion

to Shorten Time; (ii)  (a) deny the Sale Motion; (b) approve the Sale Motion with an order that

fully and appropriately preserves the SRAC Challenge Rights; or (c) hear the Sale Motion on

reasonable notice and opportunity to be heard that gives all parties, including Cyrus, sufficient

time to address the relief requested therein; and (iii) grant Cyrus such other and further relief as

is just and proper.

Dated: November 14, 2018
     New York, New York

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By:   /s/ Thomas R. Kreller        

Eric R. Reimer (*pro hac vice* admission pending)
Thomas R. Kreller (*pro hac vice* admission pending)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

Craig M. Price
28 Liberty Street
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel to Cyrus Capital Partners, L.P.*

## EXHIBIT A

**Determinations Committee Decision**

| Date: | November 9, 2018 |
|---|---|
| Determinations Committee: | Americas |
| Date of Email Vote: | November 9, 2018 |

| **Issue Number: 2018101502** | **Has a Bankruptcy Credit Event occurred with respect to Sears Roebuck Acceptance Corp.?** |
|---|---|
| First question for vote: | Does the DC agree to extend the date of the Auction until a date to be determined, but no earlier than November 26, 2018? |
| Vote result: | YES |
| Votes: | 13 "YES" votes - Bank of America N.A.<br>Barclays Bank plc<br>BNP Paribas<br>Citibank, N.A.<br>Credit Suisse International<br>Goldman Sachs International<br>JP Morgan Chase Bank, N.A.<br>Société Générale<br>Deutsche Bank AG<br>Mizuho Securities Co., Ltd<br>AllianceBernstein L.P.<br>Cyrus Capital Partners, L.P.<br>Elliott Management Corporation<br><br>0  "NO" votes |
| Second question for vote: | Does the DC agree to publish a statement in relation to the extension of the Auction Date? |
| Vote result: | YES |
| Votes: | 13 "YES" votes - Bank of America N.A.<br>Barclays Bank plc<br>BNP Paribas<br>Citibank, N.A.<br>Credit Suisse International<br>Goldman Sachs International<br>JP Morgan Chase Bank, N.A.<br>Société Générale<br>Deutsche Bank AG<br>Mizuho Securities Co., Ltd<br>AllianceBernstein L.P.<br>Cyrus Capital Partners, L.P.<br>Elliott Management Corporation<br><br>0  "NO" votes |

| Third question for vote: | In accordance with DC Rule 2.5(d)(v), does the DC agree to publish the challenge and related supporting information on the DC website? |
|---|---|
| Vote result: | YES |
| Votes: | 12 "YES" votes - Bank of America N.A.<br>Barclays Bank plc<br>BNP Paribas<br>Citibank, N.A.<br>Credit Suisse International<br>Goldman Sachs International<br>JP Morgan Chase Bank, N.A.<br>Société Générale<br>Deutsche Bank AG<br>AllianceBernstein L.P.<br>Cyrus Capital Partners, L.P.<br>Elliott Management Corporation<br><br>1  "NO" vote - Mizuho Securities Co., Ltd |

**EXHIBIT B**

BNY indenture_100102.txt

```
<DOCUMENT>
<TYPE>EX-4.(E)
<SEQUENCE>3
<FILENAME>c70545a2exv4wxey.txt
<DESCRIPTION>INDENTURE DATED AS OF 10/1/02
<TEXT>
<PAGE>
```

EXHIBIT 4(e)

================================================================================

SEARS ROEBUCK ACCEPTANCE CORP.

AND

BNY MIDWEST TRUST COMPANY,

TRUSTEE

--------------------

INDENTURE
DATED AS OF OCTOBER 1, 2002

--------------------

================================================================================
```
<PAGE>
```
SEARS ROEBUCK ACCEPTANCE CORP.

INDENTURE

DATED AS OF OCTOBER 1, 2002

--------------------

Page 1

BNY indenture_100102.txt

TABLE OF CONTENTS*

```
<TABLE>
<CAPTION>

PAGE

----
<S>
<C>
```

PARTIES ...................................................................
 1

RECITALS ...................................................................
 1

ARTICLE I
DEFINITIONS OF CERTAIN TERMS

Section 1.1.    Definitions ..........................................
I-1

               Affiliate ...........................................
I-1

               Authenticating Agent.................................
I-1

               Board................................................
I-1

               Business Day.........................................
I-1

               Certified Resolution.................................
I-1

               Commission...........................................
I-1

               Company..............................................
I-1

               Currency.............................................
I-1

               Defaulted Interest...................................
I-1

               Depository...........................................
I-2

               Dollar...............................................
I-2

               Eligible Obligations.................................

Page 2

BNY indenture_100102.txt

Euro .......................................... I-2

Fixed Charge Coverage and Ownership Agreement........... I-2

Fixed Charge Coverage Ratio ........................... I-2

Foreign Currency....................................... I-2

Global Security........................................ I-2

Holder ................................................ I-3

Indenture.............................................. I-3

Interest............................................... I-3

Interest Payment Date.................................. I-3

Market Exchange Rate................................... I-3

Maturity .............................................. I-3

Officers' Certificate.................................. I-3

Opinion of Counsel. ................................... I-3

Original Issue Discount Security....................... I-4

Outstanding ........................................... I-4

Person................................................. I-4

Redemption Date........................................ I-4

Redemption Price....................................... I-4

Regular Record Date.................................... I-4

Responsible Officer.................................... I-5

Sears.................................................. I-5

Securities............................................. I-5

Security Register ..................................... I-5

Special Record Date ................................... I-5

```
                        BNY indenture_100102.txt
I-5
</TABLE>

----------

    *  This table of contents shall not, for any purpose, be deemed to be a
       part of the Indenture.


                                     i
<PAGE>
<TABLE>
<S>                                                                    <C>
                  Stated Maturity .......................................
I-5
                  Subsidiary; Voting Stock...............................
I-5
                  Trustee................................................
I-5
                  U.S. Government Obligations ...........................
I-6
   SECTION 1.2.   Trust Indenture Act definitions controlling............
I-6


                              ARTICLE II
                             THE SECURITIES
   SECTION 2.1.   Amount Unlimited; Issuable in Series; Forms Generally;
                  Form of Trustee's Certificate of Authentication....
II-1
   SECTION 2.2.   Denominations...........................................
II-3
   SECTION 2.3.   Execution, Authentication, Delivery and Dating .........
II-3
   SECTION 2.4.   Temporary Securities ...................................
II-4
   SECTION 2.5.   Registration, Registration of Transfer and Exchange. ...
II-4
   SECTION 2.6.   Mutilated, Destroyed, Lost and Stolen Securities .......
II-5
   SECTION 2.7.   Payment of Interest; Interest Rights Preserved..........
II-6
   SECTION 2.8.   Persons Deemed Owners ..................................
II-7
   SECTION 2.9.   Cancellation............................................
II-7
   SECTION 2.10.  Securities Issuable as a Global Security ...............
II-7
   SECTION 2.11.  Currency of Payments in Respect of Securities ..........
                              Page 4
```

BNY indenture_100102.txt

II-8
    SECTION 2.12.   Availability of Currency of Payment in Respect of
                    Securities ........................................
II-8


                            ARTICLE III
                    COVENANTS OF THE COMPANY
    SECTION 3.1.    Payment of principal and interest .....................
III-1
    SECTION 3.2.    Maintenance of office or agency for notices and demands
III-1
    SECTION 3.3.    File certain reports and information with the Trustee
                    and the Securities And Exchange Commission ........
III-1

                    Transmit to Holders summaries of certain documents filed
                    with the Trustee ..................................
III-2

                    Furnish list of Holders to the Trustee.................
III-2
    SECTION 3.4.    File statement by officers annually with the Trustee....
III-2
    SECTION 3.5.    Duties of paying agent..................................
III-2
    SECTION 3.6.    Certain restrictions...................................
III-3


                            ARTICLE IV
                    REDEMPTION OF SECURITIES
    SECTION 4.1.    Applicability of Article................................
IV-1
    SECTION 4.2.    Election to Redeem; Notice to Trustee...................
IV-1
    SECTION 4.3.    Selection by Trustee of Securities to Be Redeemed.......
IV-1
    SECTION 4.4.    Notice of Redemption...................................
IV-1
    SECTION 4.5.    Deposit of Redemption Price............................
IV-2
    SECTION 4.6.    Securities Payable on Redemption Date...................
IV-2
    SECTION 4.7.    Securities Redeemed in Part............................
IV-2


                            ARTICLE V
                        SINKING FUNDS
    SECTION 5.1.    Applicability of Article................................
V-1
    SECTION 5.2.    Satisfaction of Sinking Fund Payments with Securities...

BNY indenture_100102.txt

V-1
    SECTION 5.3.    Redemption of Securities for Sinking Fund...............
V-1


                        ARTICLE VI
                    REMEDIES UPON DEFAULT
    SECTION 6.1.    Defaults defined -- acceleration of maturity upon
                    default -- waiver of default......................
VI-1
</TABLE>



                            ii

<PAGE>
<TABLE>
<S>                                                                    <C>
    SECTION 6.2.    Covenant of Company to pay to Trustee whole amount due
                    on default in payment of principal or interest --
                    Trustee may recover judgment for whole amount due
                    -- application of moneys received by the Trustee...
VI-3
    SECTION 6.3.    Trustee may enforce rights of action without possession
                    of Securities.....................................
VI-4
    SECTION 6.4.    Delays or omissions not to impair any rights or powers
                    accruing upon default.............................
VI-4
    SECTION 6.5.    In event of default Trustee may protect and enforce its
                    rights by appropriate proceedings -- holders of a
                    majority in principal amount of Securities of a
                    particular series may waive default...............
VI-5
    SECTION 6.6.    Holders of a majority in principal amount of Securities
                    of a particular series may direct exercise of
                    remedies..........................................
VI-5
    SECTION 6.7.    Limitation on suits by Holders.........................
VI-5
    SECTION 6.8.    No Securities owned or held by or for the account of the
                    Company to be deemed outstanding for purpose of
                    payment or distribution...........................
VI-6
    SECTION 6.9.    Company and Trustee restored to former position on
                    discontinuance or abandonment of proceedings.......
VI-6


                        ARTICLE VII
                    CONCERNING THE HOLDERS

Page 6

BNY indenture_100102.txt

SECTION 7.1.    Evidence of action by Holders.......................... VII-1

SECTION 7.2.    Proof of execution of instruments and holding of
                Securities........................................ VII-1

SECTION 7.3.    Who may be deemed owners of Securities.................. VII-2

SECTION 7.4.    Securities owned by Company or its affiliates
                disregarded for certain purposes................... VII-2

SECTION 7.5.    Action by Holders binds future Holders................. VII-2


ARTICLE VIII
IMMUNITY OF INCORPORATORS, SHAREHOLDERS,
OFFICERS AND DIRECTORS

SECTION 8.1.    No recourse against incorporators or others............. VIII-1


ARTICLE IX
MERGER, CONSOLIDATION OR SALE

SECTION 9.1.    Merger, consolidation, sale or conveyance of property
                not prohibited except under certain conditions --
                execution of supplemental indenture ............... IX-1

SECTION 9.2.    Rights and duties of successor corporation.............. IX-1

                Issuance of Securities by successor corporation......... IX-1

SECTION 9.3.    Opinion of Counsel to Trustee........................... IX-1


ARTICLE X
CONCERNING THE TRUSTEE

SECTION 10.1.   Acceptance of Trust ................................... X-1

                Trustee not relieved from liability for negligence or
                misconduct......................................... X-1

                Trustee not responsible for validity or execution of
                Indenture or of Securities or for recitals in
                Indenture or Securities............................ X-1

                Trustee may rely upon documents believed genuine -- may
                consult with counsel -- may accept officers'
                certificates -- may require indemnity -- not to be
                liable for action taken in good faith.............. X-2

Page 7

```
                         BNY indenture_100102.txt
                    Prior to default and after curing of defaults Trustee
                       not bound to investigate unless requested by
                       Holders of majority in principal amount of
                       Securities of a series -- may require
                       indemnification...................................
X-2

                    Trustee may execute trusts or powers directly or by
                       attorneys.........................................
X-3
   SECTION 10.2.   Trustee to be entitled to compensation -- Trustee not to
                       be accountable for
</TABLE>


                              iii
<PAGE>
<TABLE>
<S>                                                                       <C>
                    application of proceeds -- moneys held by Trustee
                       to be trust funds.................................
X-3
   SECTION 10.3.   Trustee to give Holders notice of default..............
X-3
   SECTION 10.4.   Trustee acquiring conflicting interest must eliminate it
                       or resign; Definition of conflicting interest;
                       Definition of certain terms.......................
X-3
                    Calculation of percentages of securities...............
X-7
   SECTION 10.5.   Eligibility of Trustee.................................
X-8
   SECTION 10.6.   Resignation or removal of Trustee......................
X-9
   SECTION 10.7.   Acceptance by successor Trustee........................
X-9
   SECTION 10.8.   Successor to Trustee by merger or consolidation........
X-10
   SECTION 10.9.   Limitations on right of Trustee as a creditor to obtain
                       payment of certain claims.........................
X-10
   SECTION 10.10.  Trustee to make annual report to Holders...............
X-14
                    Trustee to make other reports to Holders...............
X-14
                    Holders to whom reports to be transmitted.............
X-15
   SECTION 10.11.  Preservation of information by Trustee.................
X-15
```

Page 8

BNY indenture_100102.txt

```
                   Trustee to give certain information to Holders upon
                       application.........................................
X-15
     SECTION 10.12.  Trustee or an Authenticating Agent may hold Securities
                       and otherwise deal with Company....................
X-16
     SECTION 10.13.  Trustee may comply with any rule, regulation or order of
                       the Securities and Exchange Commission.............
X-16
     SECTION 10.14.  Authenticating Agent....................................
X-16


                              ARTICLE XI
                         SUPPLEMENTAL INDENTURES
     SECTION 11.1.   Purposes for which supplemental indentures may be
                       entered into without consent of Holders............
XI-1
     SECTION 11.2.   Modification of Indenture with consent of Holders of a
                       majority in principal amount of Securities of any
                       series...........................................
XI-2
     SECTION 11.3.   Effect of supplemental indentures.......................
XI-2
     SECTION 11.4.   Securities may bear notation of changes................
XI-3
     SECTION 11.5.   Trustee may rely upon Opinion of Counsel...............
XI-3
     SECTION 11.6.   Instruments of further assurance.......................
XI-3


                              ARTICLE XII
                           MEETINGS OF HOLDERS
     SECTION 12.1.   Purposes for which meetings may be called..............
XII-1
     SECTION 12.2.   Manner of calling meetings.............................
XII-1
     SECTION 12.3.   Call of meetings by Company or Holders.................
XII-1
     SECTION 12.4.   Who may attend and vote at meetings....................
XII-2
     SECTION 12.5.   Regulations may be made by Trustee -- conduct of the
                       meeting -- voting rights -- adjournment............
XII-2
     SECTION 12.6.   Manner of voting at meetings and record to be kept......
XII-3
     SECTION 12.7.   Exercise of rights of Trustee or Holders may not be
                       hindered or delayed by call of meeting of Holders..
XII-3
```

BNY indenture_100102.txt

ARTICLE XIII
SATISFACTION AND DISCHARGE OF INDENTURE
OR CERTAIN OBLIGATIONS

SECTION 13.1.   Satisfaction and discharge of Indenture.................
XIII-1
SECTION 13.2.   Deposits for payment or redemption of Securities to be
held in trust......................................
XIII-1
SECTION 13.3.   Repayment of moneys held by Trustee; Repayment of moneys
held by paying agent...............................
XIII-2
SECTION 13.4.   Defeasance of Securities of any series.................
XIII-2
SECTION 13.5.   Application of Trust Money............................
XIII-4
</TABLE>


iv

<PAGE>
<TABLE>
<S>                                                                      <C>

ARTICLE XIV
MISCELLANEOUS PROVISIONS

SECTION 14.1.   Rights under Indenture limited to the parties and
Holders of Securities.............................
XIV-1
SECTION 14.2.   Certificate of independent accountants conclusive.......
XIV-1
SECTION 14 3    Remaining provisions not affected by invalidity of any
other provisions-required provisions of Trust
Indenture Act of 1939, as amended, to control......
XIV-1
SECTION 14.4    Company released from Indenture requirements if entitled
to have Indenture cancelled.......................
XIV-1
SECTION 14.5.   Date of execution.....................................
XIV-1
SECTION 14.6.   Officers' certificates and Opinions of Counsel to be
furnished Trustee.................................
XIV-1
SECTION 14.7.   Payments and deposits due other than on a Business Day..
XIV-2
SECTION 14.8.   Presentation of notices and demands....................
XIV-2
SECTION 14.9.   Successors and assigns bound by Indenture..............
XIV-3

Page 10

```
                         BNY indenture_100102.txt
```

    SECTION 14.10.  Descriptive headings for convenience only...............
XIV-3
    SECTION 14.11.  Indenture may be executed in counterparts...............
XIV-3
    SECTION 14.12.  Controlling law........................................
XIV-3
    TESTIMONIUM
    SIGNATURES AND SEALS
    ACKNOWLEDGMENTS
</TABLE>


                                    v

<PAGE>

                      SEARS ROEBUCK ACCEPTANCE CORP.

                  RECONCILIATION AND TIE BETWEEN INDENTURE

                      DATED AS OF OCTOBER 1, 2002

                                   AND

                  TRUST INDENTURE ACT OF 1939, AS AMENDED


<TABLE>
<CAPTION>

| TRUST INDENTURE ACT SECTION | INDENTURE SECTION |
|---|---|
| `<S>` | `<C>` |
| 310(a)(1) | 10.5 |
| (a)(2) | 10.5 |
| (a)(3) | Not applicable |
| (a)(4) | Not applicable |
| (a)(5) | 10.5 |
| (b) | 10.4,10.5 |
| (c) | Not applicable |
| 311(a) | 10.9 (a), (c) |
| (b) | 10.9 (b) |
| (c) | Not applicable |
| 312(a) | 3.3(d), 10.11 |
| (b) | 10.11 |
| (c) | 10.11 |
| 313(a) | 10.10 (a) |
| (b)(1) | Not applicable |
| (b)(2) | 10.10 (b) |

```
                        BNY indenture_100102.txt
        (c)                                 10.10 (c)
        (d)                                 10.10 (c)
   314(a)(1)                                 3.3 (a)
     (a)(2)                                  3.3 (b)
     (a)(3)                                  3.3 (c)
     (a)(4)                                    3.4
        (b)                               Not applicable
        (c)                                   14.6
        (d)                               Not applicable
        (e)                                   14.6
        (f)                               Not required
   315(a)(1)                             10.1 (a), (b)
     (a)(2)                          10.1 (a), (b), (d)
        (b)                                   10.3
        (c)                                 10.1 (a)
        (d)                             10.1 (a), (b)
        (e)                                    6.7
   316(a)(1A)                                  6.6
     (a)(1B)                                   6.5
     (a)(2)                               Not required
        (b)                                    6.7
        (c)                                    7.1
   317(a)(1)                                   6.2
     (a)(2)                                    6.2
        (b)                                    3.5
   318(a)                                     14.3
</TABLE>
```

Note: This reconciliation and tie shall not, for any purpose, be deemed to be a
part of the Indenture.


                                      vi
<PAGE>
      INDENTURE, dated as of the 1st day of October 2002, between SEARS ROEBUCK
ACCEPTANCE CORP. (hereinafter called the "Company"), a corporation organized and
existing under the laws of the State of Delaware, and BNY MIDWEST TRUST COMPANY
(hereinafter called the "Trustee"), an Illinois trust company, as Trustee:

                            RECITALS OF THE COMPANY

      The Company has duly authorized the execution and delivery of this
Indenture to provide for the issuance from time to time of its unsecured
debentures, notes or other evidences of indebtedness (herein called the
"Securities"), to be issued in one or more series as in this Indenture provided.

      All things necessary to make this Indenture a valid agreement of the
Company, in accordance with its terms, have been done.

BNY indenture_100102.txt

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the
Securities by the Holders thereof, it is mutually covenanted and agreed, for the
equal and proportionate benefit of all Holders of the Securities or of series
thereof, as follows:
<PAGE>

ARTICLE I

DEFINITIONS OF CERTAIN TERMS

SECTION 1.1. Unless the context otherwise requires, the terms defined in
this Article I shall for all purposes of this Indenture and of any indenture
supplemental hereto have the meaning herein specified, the following definitions
to be equally applicable to both the singular and plural forms of any of the
terms herein defined:

Affiliate

An "Affiliate" of a specified Person shall mean another Person directly or
indirectly controlling or controlled by or under direct or indirect common
control with such first Person.

Authenticating Agent

The term "Authenticating Agent" shall mean any Authenticating Agent
appointed by the Trustee pursuant to Section 10.14.

Board

The term "Board" or "Board of Directors" shall mean the Board of Directors
of the Company or the Executive Committee of such Board.

Business Day

The term "Business Day" shall mean each Monday, Tuesday, Wednesday,
Thursday and Friday which is not a legal holiday for banking institutions in any
of the City of Wilmington, the City of Chicago, The City of New York or the city
in which the principal corporate trust office of the Trustee is located.

Certified Resolution

The term "Certified Resolution" shall mean a copy of a resolution
certified by the Secretary or an Assistant Secretary of the Company to have been
duly adopted by the Board of Directors and to be in full force and effect on the
date of such certification.

Page 13

BNY indenture_100102.txt

Commission

    The term "Commission" shall mean the Securities and Exchange Commission.

Company

    The term "Company" shall mean Sears Roebuck Acceptance Corp. and, subject to the provisions of Article IX, shall also include its successors and assigns.

Currency

    The term "Currency" shall mean Dollars or Foreign Currency.

Defaulted Interest

    The term "Defaulted Interest" shall have the meaning specified in Section 2.7.

I-1

<PAGE>
Depository

    The term "Depository" shall mean, with respect to Securities of any series for which the Company shall determine that such Securities will be issued in whole or in part as one or more Global Securities, The Depository Trust Company, New York, New York, another clearing agency or any successor registered under the Securities Exchange Act of 1934, as amended, or other applicable statute or regulation, which, in each case, shall be designated by the Company pursuant to either Section 2.1 or 2.10.

Dollar

    The term "Dollar" shall mean the currency issued by the government of the United States.

Eligible Obligations

    The term "Eligible Obligations" shall mean obligations as a result of the deposit of which (along with the simultaneous deposit, if any, of money or U.S. Government Obligations or both) the relevant series of Securities will be rated in the highest generic long term debt rating category assigned by one or more nationally recognized rating agencies to debt with respect to which the issuer thereof has been released from its obligations to the same extent that the Company has been released from its obligations under this Indenture pursuant to Section 13.4 hereof.

Euro

Page 14

BNY indenture_100102.txt

The term "Euro" shall mean the lawful currency of the member states of the European Economic and Monetary Union, pursuant to the Treaty establishing the European Community, as amended by the Treaty on European Union.

Fixed Charge Coverage and Ownership Agreement

The term "Fixed Charge Coverage and Ownership Agreement" shall mean the letter agreement between the Company and Sears dated September 24, 2002.

Fixed Charge Coverage Ratio

The term "Fixed Charge Coverage Ratio" shall mean, for any period, the Company's ratio of earnings to fixed charges, determined for such period in accordance with Item 503(d) of Regulation S-K promulgated by the Commission, as in effect on the date hereof.

Foreign Currency

The term "Foreign Currency" shall mean either (i) a currency issued by the government of any country other than the United States, including the Euro, or (ii) any composite currency the value of which is determined by reference to the values of the currencies of any group of countries.


I-2

<PAGE>
Global Security

The term "Global Security" shall mean, with respect to any series of Securities, a Security executed by the Company and authenticated and held by the Trustee as agent for the Depository or delivered pursuant to the Depository's instruction, all in accordance with this Indenture and pursuant to a Company order, which (i) shall be registered in the name of the Depository or its nominee and (ii) shall constitute, and shall be denominated in an amount equal to the aggregate principal amount of, all or part of the Outstanding Securities of such series.

Holder

The terms "Holder", "Holder of Securities" or other similar terms, shall mean the person in whose name a particular Security shall be registered on the books of the Company kept for that purpose in accordance with the terms hereof, and the word "majority", used in connection with the terms "Holder", "Holder of Securities", or other similar terms, shall signify the "majority in principal amount" whether or not so expressed.

Indenture

Page 15

BNY indenture_100102.txt

The term "Indenture" shall mean this instrument as originally executed or, if amended or supplemented as herein provided, as so amended or supplemented, and shall include the terms of particular series of Securities established as contemplated by Section 2.1.

Interest

The term "Interest", when used with respect to an Original Issue Discount Security which by its terms bears interest only after Maturity, shall mean interest payable after Maturity.

Interest Payment Date

The term "Interest Payment Date", when used with respect to any Security, shall mean the Stated Maturity of any installment of interest on the Security.

Market Exchange Rate

The "Market Exchange Rate" on a given date for a given foreign currency shall mean the noon buying rate in New York City for cable transfers in such currency as certified for customs purposes by the Federal Reserve Bank of New York on such date.

Maturity

The term "Maturity", when used with respect to any Security, shall mean the date on which the principal of such Security or an installment of principal becomes due and payable as therein or herein provided, whether at Stated Maturity or by declaration of acceleration, call for redemption or otherwise.

Officers' Certificate

The term "Officers' Certificate" shall mean a certificate signed by the Chairman of the Board, the Chief Executive Officer, the President or any Vice President and by the Vice President,

I-3

<PAGE>
Finance, Treasurer or any Assistant Treasurer or the Secretary or any Assistant Secretary of the Company.

Opinion of Counsel

The term "Opinion of Counsel" shall mean an opinion in writing signed by legal counsel (who may be counsel to the Company) acceptable to the Trustee.

BNY indenture_100102.txt

Original Issue Discount Security

    The term "Original Issue Discount Security" shall mean any Security which
provides for an amount less than the principal amount thereof to be due and
payable upon a declaration of acceleration of the Maturity thereof pursuant to
Section 6.1.

Outstanding

    The term "outstanding" or "principal amount outstanding", when used with
respect to the Securities, shall not, except as otherwise provided herein,
include (i) Securities held by the Company or any Affiliate of the Company in
its treasury, or (ii) Securities for the payment or redemption of which moneys
in the necessary amount shall have been deposited in trust with the Trustee,
provided that if such Securities are to be redeemed prior to the Maturity
thereof, notice of such redemption shall have been duly given or provision
satisfactory to the Trustee shall have been made for giving such notice, or
(iii) Securities in lieu of or in substitution for which other Securities shall
have been authenticated and delivered pursuant to the terms of Section 2.3, or
(iv) Securities theretofore cancelled by the Trustee or delivered to the Trustee
for cancellation. The term "outstanding" or "principal amount outstanding", when
used with respect to indebtedness other than the Securities, shall not include
any such indebtedness held by the Company in its treasury or for the payment or
redemption of which moneys in the necessary amount shall have been deposited in
trust or set aside and segregated in trust by the Company, provided that, if
such other indebtedness is to be redeemed prior to the maturity thereof, any
notice of such redemption required by the terms thereof shall have been duly
given or provision satisfactory to the trustee shall have been made for giving
such notice.

Person

    The term "Person" shall mean an individual, corporation, partnership,
limited liability company, joint venture, association, joint stock company,
trust, unincorporated organization or government or any agency or political
subdivision thereof.

Redemption Date

    The term "Redemption Date", when used with respect to any Security to be
redeemed, shall mean the date fixed for such redemption by or pursuant to this
Indenture.

Redemption Price

    The term "Redemption Price" shall mean the amount payable for the
redemption of any Security on the Redemption Date, and shall always include
interest accrued and unpaid to the Redemption Date, unless otherwise

BNY indenture_100102.txt
specifically provided.


I-4
<PAGE>
Regular Record Date

     The term "Regular Record Date" for the interest payable on any Interest
Payment Date on the Securities of any series shall mean the date specified for
that purpose as contemplated by Section 2.1.

Responsible Officer

     The term "Responsible Officer", when used with respect to the Trustee,
shall mean the chairman of the board of directors, the president, every vice
president (whether or not designated by a number or a word or words added before
or after the title "vice president"), the secretary, every trust officer, every
assistant secretary or any other officer or assistant officer of the Trustee
customarily performing functions similar to those performed by the persons who
at the time shall be such officers, or to whom any corporate trust matter is
referred because of his knowledge of and familiarity with the particular
subject.

Sears

     The term "Sears" shall mean Sears, Roebuck and Co.

==Securities==

     ==The term "Securities" shall mean any Securities authenticated and
delivered under this Indenture.==

Security Register

     The term "Security Register" shall have the meaning specified in Section
2.5.

Special Record Date

     The term "Special Record Date" for the payment of any Defaulted Interest
shall mean a date fixed by the Trustee pursuant to Section 2.7.

Stated Maturity

     The term "Stated Maturity", when used with respect to any Security or any
installment of interest thereon, shall mean the date specified in such Security
as the fixed date on which the principal of such Security or such installment of

BNY indenture_100102.txt

interest is due and payable.

Subsidiary; Voting Stock

The term "Subsidiary" shall mean any corporation of which shares of Voting Stock entitled to elect a majority of the directors are at the time owned directly or indirectly by the Company and its other Subsidiaries. The term "Voting Stock" shall mean outstanding shares of stock having voting power for the election of directors, whether at all times or only so long as no senior class of stock has such voting power because of default in dividends or some other default.

Trustee

The term "Trustee" shall mean the party named as such above until a successor becomes such pursuant hereto and thereafter shall mean or include each party who is then a trustee hereunder, and if at any time there is more than one such party, "Trustee" as used with respect to the Securities of any series shall mean the Trustee with respect to Securities of that series. If Trustees with respect to different series of Securities are trustees hereunder, nothing herein shall constitute the Trustees as co-trustees of the same trust, and each Trustee shall be the trustee of a


                                      I-5
<PAGE>
trust separate and apart from any trust administered by any other Trustee with respect to a different series of Securities.

U.S. Government Obligations

The term "U.S. Government Obligations" shall mean securities which are (i) direct obligations of the United States of America for the payment of which its full faith and credit is pledged or (ii) obligations of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America, which, in either case, are not callable or redeemable at the option of the issuer thereof, and shall also include a depository receipt issued by a bank or trust company as custodian with respect to any such U.S. Government Obligations or a specific payment of interest on or principal of any such U.S. Government Obligations held by such custodian for the account of the holder of a depository receipt; provided that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the U.S. Government Obligations or the specific payment of interest on or principal of the U.S. Government Obligations evidenced by such depository receipt.

BNY indenture_100102.txt
and shall have afforded to it a reasonable opportunity either to proceed to
exercise the powers hereinbefore granted or to institute such action, suit or
proceeding in its own name, and shall have offered to the Trustee security and
indemnity satisfactory to it against the costs, expenses and liabilities to be
incurred therein or thereby, and the Trustee shall have refused or neglected to
comply with such request within a reasonable time; it being understood and
intended that no one or more Holders of Securities of that series shall have any
right in any manner whatever hereunder or under the Securities of that series by
his or their action to enforce any right hereunder except in the manner herein
provided, and that all proceedings hereunder, at law or in equity, shall be
instituted, had and maintained in the manner herein provided and for the ratable
benefit of all Holders of such Securities. Nothing herein contained shall,
however, affect or impair the right which is absolute and unconditional, of any
Holder of any Security to institute suit to enforce the

                                    VI-5

<PAGE>
payment of the principal of (or premium, if any, on) and interest on his
Security at and after the respective due dates expressed in such Security
(including Maturity by call for redemption, declaration (unless annulled
pursuant to Section 6.1 hereof) of the acceleration of the Maturity of such
principal (or premium if any, on) or interest, or otherwise), or the obligation
of the Company, which is also absolute and unconditional, to pay the principal
of (or premium, if any, on) and interest on each of the Securities of that
series to the respective Holders thereof at the times and places in the
Securities expressed.

    Anything to the contrary notwithstanding contained in this Section 6.7, the
parties to this Indenture agree and each Holder of any Security of any series by
his acceptance thereof shall be deemed to have agreed that any court may in its
discretion require, in any suit for the enforcement of any right or remedy under
this Indenture, or in any suit against the Trustee for any action taken or
omitted by it as Trustee, the filing by any party litigant in such suit of an
undertaking to pay the costs of such suit, and such court may in its discretion
assess reasonable costs, including reasonable attorneys' fees, against any party
litigant in such suit, having due regard to the merit and good faith of the
claims or defenses made by such party litigant; provided, however, that the
provisions of this paragraph shall not apply to any suit instituted, directly or
through an agent or agents, by the Trustee, to any suit instituted by any
Holder, or group of Holders, holding in the aggregate more than 10% in principal
amount of the Securities of any series outstanding or to any suit instituted by
any Holder for the enforcement of the payment of the principal of (or premium,
if any, on) or interest on his Securities of that series at and after the
respective due dates of such principal (premium, if any) or interest expressed
in his Securities of that series.

    SECTION 6.8. No Securities of any series which are known by the Trustee to
be owned or held by, for the account of or for the benefit of, the Company or

                                  Page 44

BNY indenture_100102.txt

any other obligor under this Indenture or any Affiliate of the Company or of
such other obligor (other than Securities of that series pledged in good faith
which would be deemed outstanding under the provisions of Section 7.4) shall be
deemed outstanding for the purpose of any payment or distribution provided for
in this Article.

    SECTION 6.9. If the Trustee or any Holder shall have proceeded to enforce
any right under this Indenture, and such proceedings shall have been
discontinued or abandoned because of waiver, or for any other reason, or shall
have been determined adversely to the Trustee or such Holder, then, and in any
such case, the Company and the Trustee and such Holder or Holders shall each be
restored to its former position and rights hereunder, and all rights, remedies
and powers of the Trustee and the Holders shall continue as though no such
proceedings had been taken.

                                   VI-6

<PAGE>
                               ARTICLE VII
                          CONCERNING THE HOLDERS

    SECTION 7.1. Whenever in this Indenture it is provided that the Holders of a
specified percentage or a majority in aggregate principal amount of the
Securities of any series may take any action (including the making of any demand
or request, the giving of any notice, consent or waiver or the taking of any
other action) the fact that at the time of taking any such action the Holders of
such specified percentages have joined therein may be evidenced (a) by any
instrument or any number of instruments of similar tenor executed by Holders of
Securities of that series in person or by attorney or proxy appointed in
writing, or (b) by the record of the Holders of Securities of that series voting
in favor thereof at any meeting of such Holders duly called and held in
accordance with the provisions of Article XII, or (c) by a combination of such
instrument or instruments and any such record of such a meeting of such Holders.
The Company or the Trustee may (and in case of any action taken by Holders of a
specified percentage or majority in aggregate principal amount of the Securities
of any series pursuant to Section 6.1 or 6.6 hereof, the Trustee shall) set a
record date and time for purposes of determining the identity of Holders of any
series entitled to vote or consent to any action, which record date shall be the
later of 30 days prior to the first solicitation of such consent or the date of
the most recent list of Holders of such series of Securities furnished to the
Trustee prior to such solicitation pursuant to Section 3.3(d) hereof. If the
Company or the Trustee sets such a record date, only those persons who are
registered Holders of such Securities at the record date and time so fixed shall
be entitled to vote or consent with respect to such action whether or not they
are Holders at the time of such vote or consent.

    SECTION 7.2. Subject to the provisions of Section 10.1, proof of the
execution of any instrument by a Holder of Securities of any series or his
attorney or proxy and proof of the holding by any person of any of the
                                   Page 45

BNY indenture_100102.txt
Securities of that series shall be sufficient for any purpose of this Indenture
if made in the following manner:

    (a) The fact and date of the execution by any such person of any
instrument may be proved by the certificate of any notary public, or other
officer of any jurisdiction of or within the United States of America
authorized to take acknowledgments of deeds to be recorded in such
jurisdiction, that the person executing such instrument acknowledged to him
the execution thereof, or by an affidavit of a witness to such execution
sworn to before any such notary or other such officer. Where such execution
is by an officer of a corporation or association or a member of a
partnership on behalf of such corporation, association or partnership, such
certificate or affidavit shall also constitute sufficient proof of his
authority.

    (b) The ownership of Securities of that series shall be proved by the
Security Register with respect to such Securities or by a certificate of any
duly appointed registrar thereof.

    The Trustee shall not be bound to recognize any person as a Holder of
Securities of any series unless and until his authority to vote the Securities
held by him is proved in the manner in this Article VII provided.

    The record of any Holders' meeting shall be proved in the manner provided in
Section 12.6.

    The Trustee may require such additional proof of any matter referred to in
this Section 7.2 as it shall deem necessary.

VII-1

<PAGE>

    SECTION 7.3. The Company, the Trustee, any Authenticating Agent, any paying
agent and any Security registrar may deem and treat the person in whose name any
Security shall be registered upon the Security Register as the absolute owner
of such Security (whether or not such Security shall be overdue and notwithstanding
any notice of ownership or writing thereon made by anyone other than the Company
or any Security registrar) for the purpose of receiving payment of or on account
of the principal of (premium, if any, on) and interest on such Security and for
all other purposes; and neither the Company nor the Trustee nor any
Authenticating Agent nor any paying agent nor any Security registrar shall be
affected by any notice to the contrary. All such payments so made to any such
registered Holder for the time being or upon his order shall be valid and, to
the extent of the sum or sums so paid, effectual to satisfy and discharge the
liability for moneys payable upon any such Security.

    SECTION 7.4. In determining whether the Holders of the requisite aggregate
principal amount of Securities of any series have concurred in any direction,

Page 46

BNY indenture_100102.txt

consent or waiver under this Indenture, Securities of that series which are
owned by or held by or for the account of or interest of the Company or any
other obligor upon the Securities of that series, or any Affiliate of the
Company or of any other obligor upon the Securities of that series, shall be
disregarded and deemed not to be outstanding for the purpose of any such
determination, except that for the purpose of determining whether the Trustee
shall be protected in relying on any such direction, consent or waiver only
Securities of that series which the Trustee knows are so owned or held shall be
so disregarded. The Securities of that series so owned or held which have been
pledged in good faith may be regarded as outstanding for the purposes of this
Section 7.4 if the pledgee shall establish to the satisfaction of the Trustee
the pledgee's right to vote such Securities and that the pledgee is not an
Affiliate of the Company or of any such other obligor. In case of a dispute as
to such right, any decision by the Trustee taken upon the advice of counsel
shall be full protection to the Trustee.

     SECTION 7.5. Any demand, request, waiver, consent or vote of the Holder of
any Security of any series shall be conclusive and binding upon such Holder and
upon all future Holders and owners of such Security, and of any Security issued
in exchange therefor or in place thereof, irrespective of whether or not any
notation in regard thereto is made upon such Security. Any action taken by the
Holders of the majority or percentage in aggregate principal amount of the
Securities of that series specified in this Indenture in connection with such
action shall be conclusively binding upon the Company, the Trustee and the
Holders of all the Securities of that series.

                                   VII-2

<PAGE>


                              ARTICLE VIII

                  IMMUNITY OF INCORPORATORS, STOCKHOLDERS,
                         OFFICERS AND DIRECTORS

     SECTION 8.1. No recourse under or upon any obligation, covenant or agreement
of this Indenture, or of any Security of any series, or for any claim based
thereon or otherwise in respect thereof, shall be had against any incorporator,
stockholder, officer or director, as such, past, present or future, of the
Company or of any successor corporation, either directly or through the Company,
whether by virtue of any constitution, statute or rule of law, or by the
enforcement of any assessment or penalty or otherwise; it being expressly
understood that this Indenture and the obligations issued hereunder are solely
corporate obligations, and that no such personal liability whatever shall attach
to, or is or shall be incurred by the incorporators, stockholders, officers or
directors, as such, of the Company or of any successor corporation, or any of
them, because of the creation of the indebtedness hereby authorized, or under or
by reason of the obligations, covenants or agreements contained in this
Indenture or in any of the Securities of any series or implied therefrom; and

                                  Page 47