James Gadsden
Leonardo Trivigno
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 238-8607
Facsimile: (212) 732-3232
E-Mail:   gadsden@clm.com
          trivigno@clm.com

*Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date:  November 15, 2018<br>Hearing Time:  10:00 a.m. |
| ------------------------------------------------------------x | |
| In re : | Chapter 11 |
| SEARS HOLDING CORPORATION, et al., : | Case No. 18-23538 (RDD) |
| Debtors. : | (Jointly Administered) |
| ------------------------------------------------------------x | |

# RESPONSE OF THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE, TO EMERGENCY MOTION OF DEBTORS FOR ORDER APPROVING SALE OF MEDIUM TERM NOTES

The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee, as its response to the Emergency Motion of Debtors to Approving Sale of Medium Term Notes dated November 8, 2018 (the "Motion"), respectfully alleges:

1.  The Bank of New York Mellon Trust Company, N.A. ("BNY Mellon") is successor to BNY Midwest Trust Company as Trustee (the "Trustee"), registrar, and transfer agent under the Indenture dated as of October 1, 2002, as supplemented (the "2002 Indenture") with Sears Roebuck Acceptance Corp. ("SRAC") under which the securities identified as the SRAC Medium Term Notes Series B (the "MTNs") were issued. A copy of the Indenture is attached as Exhibit A to this Response.

2.      The records of BNY Mellon, as registrar for the MTNs show that MTNs in the aggregate principal amount of $2,311,796,000.00 are outstanding under the 2002 Indenture. Also outstanding under the 2002 Indenture are $38,768,775.00 in 7.40% Notes, due 2043.

3.      SRAC has also issued $107,872,763.00 in principal amount of 7%/12% PIK Toggle Notes due 2028 and $146,861,500 in principal amount of other Notes under the Indenture dated as of May 15, 1995.  SRAC is also a borrower or guarantor of, among other debt, the approximately $3 billion in first and second debt as identified in the Declaration of Robert Riecker Pursuant to Local Rule 1007-2 dated October 15, 2018  (the "First Day Declaration").[1]

4.      By this Motion the Debtors seek approval of the sale of the MTNs owned by Debtors.  Section 6.8 of the 2002 Indenture provides that no securities held by SRAC or any Affiliate "shall be deemed outstanding for the purpose of any payment or distribution provided for in [the Remedies] Article" of the Indenture.  The revised form of order submitted for entry on this motion states,

> In light of the fact that the sale of the MTNs and the deposit of the proceeds into the Winddown Account may affect the assets and liabilities of the respective Debtors, in connection with the chapter 11 plan process, the Debtors, the Creditors' Committee, and the DIP ABL Agents and the Prepetition ABL Agents . . . will agree upon a true-up mechanism to ensure that no Debtor's estate or creditors is adversely affected as a result of the sale of the MTNs, the deposit of the proceeds therefrom into the Winddown Account or the use of such proceeds in accordance with this Order. In the event that the foregoing parties cannot agree upon a true-up mechanism, any dispute will be resolved by the Court.[2]

5.      The Debtors have now posted on their website copies of the MTNs that they seek to sell.[3] One of the MTNs – Note No. FLR-98, dated November 1, 2013 – is attached as Exhibit B to this Response.  The relevant provisions of all of the other Notes are identical.

---

[1] ECF No. 3, ¶34 at p. 20.
[2] ECF No. 680, ¶3.
[3] https://searsholdings.com/invest/financial-transactions/sears-roebuck-acceptance-corp-medium-term-notes-series-b-documentation.

2

6. Each of the Notes is titled as Sears Roebuck Acceptance Corp. Medium-Terms Notes Series B. Each includes the following language on the form of reverse of the Note appearing at page six:

> This Note is one of a duly authorized issue of . . . indebtedness of the Company (hereinafter called the "Securities") of the series hereinafter specified, unlimited in aggregate principal amount, all issued or under or to be issued under or pursuant to an Indenture dated as of October 1, 2002, . . . The Securities may be issued in one or more series, which different series may be issued in various aggregate principal amounts . . . This note is one of a series designated as the "Medium Term Notes Series B" (hereinafter referred to as the "Notes") of the Company, up to $1,000,000,000 in aggregate principal amount. Although the Company may not issue more than $1,000,000,000 of the Notes of this series, the Company may, from time to time, without the consent of the Holder of this Note, issue additional Notes or other debt securities having the same terms as the Note . . . that will form a single issue with this Note.

7. The Indenture (incorporated by reference in the Notes) similarly provides that, although a limit may be fixed on the aggregate principal amount of the Securities of any Series,[4] "[t]he aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited,"[5] and "any limit upon the aggregate principal amount of the Securities" may be established by resolution of the Board of Directors "and set forth in an Officers' Certificate."[6]

8. It is apparent that the inclusion of the $1,000,000,000 limitation on the principal amount of Series B Notes in the Note forms is a scrivener's error as established by two letters from officers of SRAC to BNY Mellon. First, the letter of Keith E. Trost, President, SRAC, to Mary Callahan, Assistant Vice President, BNY Mellon, dated April 26, 2006 (attached as Exhibit C to this Response), authorized BNY Mellon to "increase the availability on the SRAC MTN B Series by $1B to a total of $2B." Second, the letter of Nancy Houghton-Lynch, Vice President

---

[4] 2002 Indenture, § 2.1(a)(2) at p. II-1.
[5] 2002 Indenture, § 2.1(a) at p. II-1.
[6] 2002 Indenture, § 2.1(a)(2) at p. II-1. .

3

of Working Capital for SRAC, to Ms. Callahan, dated January 29, 2009 (attached as Exhibit D to this Response), authorized BNY Mellon to "increase the availability on the SRAC MTN B Series by $1B to a total of $3B."   The letters show that SRAC acted to raise the $1,000,000,000 limitation and the Note forms should reflected the increase of the limitation to $3,000,000,000.

9.   BNY Mellon's files contain certified copies of resolutions by the SRAC Board of Directors, including a resolution dated January 17, 2000 (attached to this Response as Exhibit E), authorizing "additional financing by the issuance and sale of debt securities" and delegating to Authorized Officers the authority to sell those securities "in such aggregate principal amount as he or she shall believe to be appropriate," and a resolution dated November 29, 2001 (attached as Exhibit F to this Response) by which the SRAC Board of Directors extended that prior resolution's expiration date to December 31, 2003.   BNY Mellon's files also contain a certified copy of a resolution dated February 14, 2001 of the Board of Directors of Sears, Roebuck and Co. (attached as Exhibit G to this Response) authorizing Sears, Roebuck & Co. and its subsidiaries to obtain financing in various forms, including the sale of Notes up to $7.5 billion in the aggregate and delegating to officers the power to negotiate the terms of the financings, including the aggregate amount of the financing.

10.   The financial statements prepared by Sears Holdings Corporation have disclosed over $15 billion in intercompany payables for the guarantor subsidiaries, including SRAC.[7]   The records maintained by BNY Mellon as Registrar for the MTNs have reflected the full principal amount of MTNs issued.

---

[7] Form 10-K for the year ended Feb. 3, 2018, at p. 125.   *See also* First Day Declaration, ¶ 34 at p. 20.

4

8384690.6

11. In connection with the issuance of a new MTN upon any transfer to purchasers of MTNs, execution of a Certificate of Authentication by the Trustee will be required. The effect of that Certificate is as set forth in Section 8-208 of the Delaware[8] Uniform Commercial Code:

(a) A person signing a security certificate as authenticating trustee, registrar, transfer agent, or the like, warrants to a purchaser for value of the certificated security, if the purchaser is without notice of a particular defect, that:

   (1) the certificate is genuine;

   (2) the person's own participation in the issue of the security is within the person's capacity and within the scope of the authority received by the person from the issuer; and

   (3) <u>the person has reasonable grounds to believe that the certificated security is in the form and within the amount the issuer is authorized to issue</u>.

(b) Unless otherwise agreed, a person signing under subsection (a) does not assume responsibility for the validity of the security in other respects.

[6 Del. Laws § 8-208 (emphasis added).]

12. That the MTNs are "within the amount the issuer is authorized to issue" will have to be confirmed for BNY Mellon to execute the Certificate of Authentication on any MTNs issued to purchasers of the MTNs.

13. Based upon the resolutions and officer's letters, BNY Mellon submits that is has reasonable grounds to believe that it may authenticate the outstanding MTNs in the aggregate principal amount of $2,311,796,000, in light of the authority expressed in those resolutions and letters to raise the aggregate principal limitation to $3,000,000,000.

14. Furthermore, BNY Mellon is informed that SRAC, as issuer of the Notes, and the Sears Affiliates who are the present holders of the MTNs intend to execute a waiver of the $1,000,000,000 limitation.[9] They are the only parties with a direct interest in the limitation.

---

[8] 2002 Indenture, § 14.12 at p. XIV-3 (choosing Delaware law).
[9] The waiver should be effective notwithstanding the language of Section 7.4 of the Indenture disregarding, for the purposes of determining whether the requisite aggregate principal amount of the securities of any series have

Removal of the limit does not adversely affect the interest of other creditors of SRAC since they had no right to rely on any limitation on the amount of Notes issued under the Indenture because the Indenture expressly permits issuance of Notes in an unlimited amount and the relevant records of the Issuer and Registrar have reflected the MTNs as issued.

**WHEREFORE** the Indenture Trustee respectfully requests that the order approving the sale of the MTNs expressly authorize the issuance and authentication of new MTNs to the purchasers from the Sears Affiliates in the full amount of MTNs presently outstanding and grant such other and further relief as is just.

Dated: November 14, 2018
      New York, New York

**CARTER LEDYARD & MILBURN LLP**

By: /s/ James Gadsden
    James Gadsden
    Leonardo Trivigno
2 Wall Street
New York, New York 10005
Telephone: (212) 238-8607
Facsimile: (212) 732-3232
E-Mail: gadsden@clm.com
        trivigno@clm.com

*Attorneys for The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee*

---

concurred in any waiver, securities held by Affiliates, since securities held by Affiliates are the only securities of the Series outstanding.

8384690.6