Eric R. Goodman
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio  44114
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740

-and-

Ferve Khan
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

Counsel to American Greetings Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
In re:                                                  :
                                                        :  Chapter 11
SEARS HOLDINGS CORPORATION,                             :
*et al.*,                                               :  Case No. 18-23538 (RDD)
                                                        :
                    Debtors.                            :  Jointly Administered
                                                        :
------------------------------------------------------- x

**AMENDED LIMITED OBJECTION OF AMERICAN GREETINGS**
**CORPORATION TO DEBTORS' MOTION FOR AUTHORITY TO**
**(A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL,**
**(C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES,**
**AND (D) SCHEDULE SECOND INTERIM HEARING AND FINAL HEARING**

American Greetings Corporation ("**AG**") hereby files its amended limited objection (the "**Amended Objection**") to the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (Dkt. No. 7)

(the "**Motion**") filed by the above-captioned debtors (the "**Debtors**"). In support of this Amended Objection, AG respectfully represents as follows:

## INTRODUCTION

1. AG filed its initial limited objection (Dkt. No. 51) (the "**Initial Objection**") a few hours after the Motion was filed. AG was concerned that the Debtors would fail to honor the agreements governing the distribution and retail sale of certain greetings cards and related products (collectively, the "**Merchandise**") on a scan-based trading ("**SBT**") method of sale.

2. The Initial Objection was resolved by an agreement that was put into the record at the first day hearing and is reflected in the *Order Authorizing the Debtors to (I) Maintain Certain Trust Fund Programs, (II) Release Certain Funds Held in Trust, and (III) Continue to Perform and Honor Related Obligations* (Dkt. No. 167) (the "**Trust Fund Order**").[1]

3. Under the agreement, the Debtors agreed to treat AG as a "Trust Fund Counterparty," making the proceeds generated from the sales of the Merchandise "Trust Funds," and the SBT protocol a "Trust Fund Program."[2] The Debtors stated "that the Trust Funds … do not constitute property of the Debtors' estates." *See* Trust Fund Motion at ¶ 23. AG files this Amended Objection because the Debtors have reneged on this agreement and have not remitted to AG $527,239.00 collected by the Debtors under the SBT protocol (the "**AG Trust Funds**").

4. The Debtors' apparent conversion of the AG Trust Funds impacts the Court's consideration of the Motion. The Debtors have refused to tell AG where the money went. All indications suggest that the AG Trust Funds were transferred to Bank of America, N.A., as

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Trust Fund Order. Since the Trust Fund Order incorporates, by reference, the capitalized terms used in the *Motion of the Debtors for Authority to (I) Maintain Certain Trust Fund Programs, (II) Release Certain Funds Held in Trust, and (III) Continue to Perform and Honor Related Obligations* (Dkt. No. 15) (the "**Trust Fund Motion**"), reference is also made to the capitalized terms defined in the Trust Fund Motion.

[2] *See* Trust Fund Order at ¶ 2; Trust Fund Motion at ¶ 5.

collateral agent ("**BofA**").  As to Kmart Corporation, Kmart Operations LLC, and Sears Operations LLC, AG's UCC-1 filings pre-date BofA's UCC-1 filings.  To the extent that BofA could claim an interest in the AG Trust Funds, such interest is junior to AG's interest.

5.    AG has tried to resolve this dispute.  If AG has to take further action to recover the AG Trust Funds, BofA, as a party that may have converted the AG Trust Funds, could be involved.  If that day comes, BofA should not be permitted to hide behind any DIP financing order entered in this case and claim that its provisions permit BofA to keep the AG Trust Funds.

## BACKGROUND

6.    On October 12, 2018, AG sent the Debtors a demand letter.  *See* Ex. A.  AG sought assurances that the Debtors would honor the terms of SBT protocol, which became effective as part of Kmart Corporation's assumption of its agreement with AG when Kmart Corporation emerged from bankruptcy in 2003.  *Id.*  Under the SBT protocol, the Debtors receive and accept Merchandise on a consignment basis, under which title to all Merchandise is reserved with AG until the register scan and sale of the Merchandise to retail customers.  In order to perfect its interest in the Merchandise, AG filed UCC-1 financing statements in Michigan, Delaware, and New York, and provided notice to the holders of existing security interests.

7.    The Debtors did not respond to AG's demand letter or contact AG prior to the bankruptcy.  The Debtors filed for bankruptcy on October 15, 2018.  And, at 7:15 AM, the Debtors filed the Motion and represented that BofA had a "first lien" on the Debtors' assets and that the Debtors were not seeking any "priming liens."  At 12:30 PM, AG filed its Initial Objection, in part, to correct the record regarding BofA's alleged "first lien" status.

8.    At 12:53 PM, the Debtors' counsel left a voice message for AG's counsel stating that the parties could easily resolve this.  AG's counsel returned the call.  During the ensuing discussion, Debtors' counsel indicated that he was familiar with the treatment of consignments in

bankruptcy and recalled AG's involvement in the bankruptcy proceedings of Great Atlantic & Pacific Tea Company, Inc. (the "**A&P Proceedings**"), in which Weil Gotshal & Manges LLP served as debtors' counsel. In the A&P Proceedings, the consignment agreements to which debtors were parties were treated as agreements to keep funds derived from consigned goods in trust.[3] Per the consignment order in the A&P Proceedings, the debtors remitted to AG all consignment funds collected by the debtors both prior to and after the bankruptcy filing.

9. Debtors' counsel suggested that AG's Initial Objection could be resolved by affording AG the same treatment in the Debtors' bankruptcy as had occurred in the A&P Proceedings. Debtors' counsel proposed that this could be done under the Debtors' proposed trust account program memorialized in the Trust Fund Motion. AG accepted this proposal.

10. AG's counsel attended the first day hearing. Before the hearing, AG's counsel spoke with the Debtors' counsel and confirmed the agreement to treat AG as a Trust Fund Counterparty. At the hearing, Debtors' counsel confirmed that the Initial Objection would be addressed by the Trust Fund Motion.[4] The Court acknowledged this agreement. *See* Tr. at 48:24-49:6 ("THE COURT: Right. This is consensual priming only as I understand it. . . . THE COURT: And as far as anyone that arguably in American Greetings' position, you can't grant a lien on something you don't own. I don't think the Debtors are pulling any fast ones today.")

---

[3] *See* Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 541 to Release Certain Funds Held in Trust and to Continue to Perform and Honor Obligations Under the Coin Deposit and Consignment Arrangements, *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007 (July 20, 2015), ECF No. 12, at 10-11; Final Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 541 Authorizing the Debtors to Release Certain Funds Held in Trust and to Continue to Perform and Honor Obligations Under the Coin Deposit and Consignment Arrangements, *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007 (Aug. 11, 2015), ECF No. 498.

[4] *See* Transcript of October 15, 2018 Hearing ("**Tr.**"), at 16:14-17 ("MR. SCHROCK:…There was one objection to the DIP financing filed by American Greetings, but we have resolved our concerns because they are part of the relief in the trust fund motions."); Tr. at 40:16-22 ("MS. KHAN: We had filed an objection to the motion to accept (indiscernible) priming lien against our merchandise. In light of Mr. Schrock's representations on the record today that that motion will be handled in the trust account procedures, we'll be resolving that objection consensually.")

11. After the hearing, AG's counsel conferred with the Debtors' counsel concerning language for the order on the Trust Fund Motion. On October 16, 2018, Debtors' counsel sent AG's counsel proposed language confirming that AG's consignment agreements would be treated as a recognized Trust Fund Program. AG's counsel accepted this language, but moved it to the end of the paragraph.

12. The proposed language was included in the order submitted to the Court and in the Trust Fund Order, which provides that "[t]he Debtors are authorized, but not directed, pursuant to sections 105(a), 363, and 541 of the Bankruptcy Code, to continue to perform and honor obligations, in the ordinary course of business, arising under the Trust Fund Programs requiring the Debtors to release the Trust Funds to applicable Trust Fund Counterparties, including, without limitation, American Greetings Corporation." Trust Fund Order at ¶ 2.

13. Notwithstanding this agreement, AG has not received the AG Trust Funds. AG's counsel called the Debtors' counsel the week of October 22nd and informed the Debtors that AG had yet to receive over half a million dollars in funds collected prior to the bankruptcy. Debtors' counsel informed AG's counsel that he would look into it. Several days passed without a response. On Monday, October 29, 2018, AG's counsel emailed Debtors' counsel and provided a spreadsheet regarding the AG Trust Funds that the Debtors had failed to remit. That same day, Debtors' counsel sent an email stating: "What are we going to do about this?" *See* Ex. B.

14. A few minutes later, Debtors' counsel called AG's counsel. Debtors' counsel asserted that there was "no trust," but only a "debtor/creditor relationship," the "funds were commingled," and that AG should not expect to receive a check. Debtors' counsel further asserted that because the funds were "commingled in a bank account," AG lost its interest in the funds under Article 9 of the Uniform Commercial Code (the "**UCC**"). When AG's counsel took

issue with virtually everything Debtors' counsel had to say, Debtors' counsel invited AG to send the Debtors a position statement that the Debtors could send to BofA. AG did so on November 7, 2018. *See* Ex. C. AG has yet to receive a response.

15. The Debtors have not disclosed what happened to the AG Trust Funds. If they are not in the Debtors' possession, the Debtors' cash management motion (Dkt. No. 5) indicates that the AG Trust Funds may have been swept by BofA or applied by BofA to the Debtors' revolving credit facility. Given AG's UCC-1 filings, AG submits that if BofA took the AG Trust Funds, it did so with notice of AG's interest therein. This bears on BofA's lack of good faith and is relevant to the Court's consideration of the Motion.

## LAW AND ARGUMENT

16. As a threshold matter, the positions advanced by Debtors' counsel are wrong. Under Michigan law, which governs the consignment agreements, the relationship between a consignor and consignee is a bailment, a form of trust relationship.[5] This relationship is not defeated by the commingling of proceeds from the sale of consigned goods.[6] Likewise,

---

[5] *See, e.g., Fruchter v. Martin*, 85 N.W.2d 125, 129 (Mich. 1957) (affirming lower court's ruling that consignment agreement created a bailment and that consignee had converted the consigned property); *Nagle Engine & Boiler Works v. M. Mitshkun Co.*, 207 N.W. 829, 830 (Mich. 1926) (holding that consignment is a form of bailment); *Wasey v. Whitcomb*, 132 N.W. 572, 578 (Mich. 1911) ("'To consign,'…implies an agency. The very term 'consignment' means title in the consignor."); *People v. Deshambo*, No. 245322, 2003 WL 22399529, at *2 (Mich. Ct. App. Oct. 21, 2003) ("consignment is a form of bailment . . ."); *In re D.I.A. Sales Corp.*, 339 F.2d 175, 178 (6th Cir. 1964) (interpreting Michigan law and explaining that "a consignment is nothing more than a bailment for care or sale . . ."); *In re Taylor*, 46 F.2d 326, 328 (E.D. Mich. 1931) (interpreting Michigan law and holding that a consignment "merely creates a bailment, between the consignor as bailor and the consignee as bailee, of property of the bailor, with authority in the bailee as his agent to sell such property to third persons and with the duty to account to him for the proceeds of any such sale."); *see also In re George L. Nadell & Co.*, 292 N.W. 684, 686 (Mich. 1940) (explaining that a bailment consists of "any delivery of personal property in trust for a lawful purpose…with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.").

[6] *See, e.g., In re Michigan Boiler & Eng'g Co.*, 171 B.R. 565, 571 (Bankr. E.D. Mich. 1993) (applying Michigan law and holding that beneficiary may trace trust funds into a commingled account to the extent of the lowest intermediate balance of that commingled account); *In re Hugo*, 58 B.R. 903, 908 (Bankr. E.D. Mich. 1986) (applying Michigan law and equitable tracing principles derived from trust law pursuant to Michigan's enactment of predecessor statute of U.C.C. § 9-315(b), and holding that secured party may trace proceeds of its collateral into debtor's commingled account to the extent of the lowest intermediate balance of that commingled account).

Section 9-315(b) of the UCC provides that a secured party retains its security interest on commingled proceeds of collateral "to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this article with respect to commingled property of the type involved."[7]

17. Here, trust principles apply given the Debtors' admission that AG is a Trust Fund Counterparty. Basic principles of judicial estoppel bar the Debtors from now taking a contrary view given the agreement between AG's and Debtors' counsel, as acknowledged by the Court and memorialized in the Court's record, the Trust Fund Order, and the parties' correspondence.[8] The Court, however, need not resolve these issues today.

18. If the AG Trust Funds were swept by BofA or applied to the Debtors' credit facility, BofA may be co-liable for conversion or civil theft.[9] The same is true even if AG were

---

[7] M.C.L.A. § 440.9315; *see* New York U.C.C. § 9-315(b); 6 Del. C. § 9-315; *see also Halmar Distrib., Inc. v. Ralar Distrib., Inc., and BayBank Middlesex*, 232 B.R. 18 (Bankr. D. Mass. 1999) (under predecessor to U.C.C. § 9-315, purchase-money creditor had security interest in cash proceeds from sale identifiable through tracing methods); *Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 290 B.R. 676 (E.D. Miss. 2003) (granting summary judgment for secured creditor on conversion claim on ground that secured creditor maintained security interest in identifiable cash proceeds from debtor's inventory sale under U.C.C. § 9-315 and predecessor statute), *aff'd and rev'd in part for non-related reasons by Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049 (8th Cir. 2005); *see Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 440-41 (7th Cir. 2005) (recognizing that predecessor statute to U.C.C. § 9-315 gave purchase-money secured creditor a continuing security interest in proceeds of inventory sold to bankrupt debtor to the extent identifiable); *General Motors Acceptance Corp.*, 141 Misc.2d 349 (N.Y. Sup. Sept. 8, 1988) (enforcing claim of secured creditor to commingled proceeds from sale of collateral that were identifiable under predecessor of U.C.C. § 9-315).

[8] *See In re The 1031 Tax Group, LLC*, 374 B.R. 78, 88-89 (Bankr. S.D.N.Y. Aug. 13, 2007) (judicial estoppel applied to bar party from taking position inconsistent with representations on the record in open court); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997) ("[J]udicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding … when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner...."); *see also In re B&M Linen Corp.*, No. 12-11560, 2013 WL 3579340, at *7 (Bankr. S.D.N.Y. July 12, 2013) ("The doctrine has been applied in bankruptcy cases where judicial adoption of a party's position is implicit in and necessary for the court's approval of a settlement or similar compromise.") (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)).

[9] *See Skyline Steel Corp. v. A.J. Dupuis Co.*, 648 F. Supp. 360 (E.D. Mich. 1986) ("The essential elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's intent to exercise dominion or control over the property inconsistent with plaintiff's ownership rights; and (3) damages."); *Garras v. Bekiares*, 315 Mich. 141, 149 (Mich. 1946) (an "action will lie for the conversion [of money] where there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified"); *U.S. v. NBD Bank, N.A.*, 922 F. Supp. 1235, 1248-49 (Bankr. E.D. Mich. 1996) (granting summary judgment on conversion claim against bank where debtor commingled trust funds in its

treated as having a security interest in the Merchandise.[10]  Taking another party's property is inconsistent with good faith findings in a proposed DIP financing order.  AG requests that any DIP financing order entered in this case state that it does not prejudice AG's ability to recover the AG Trust Funds from BofA or any other party.  Today, AG only seeks clarity that its potential claims are not being adjudicated, and that AG will not be prejudiced by the DIP financing order.

Dated: November 14, 2018

Respectfully submitted,

/s/ Eric R. Goodman
Eric R. Goodman
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio  44114
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
Email: egoodman@bakerlaw.com

-and-

Ferve Khan
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
E-mail:  fkhan@bakerlaw.com

*Counsel to American Greetings Corporation*

---

operating account and allegedly gave to bank in repayment of a loan); *Trail Clinic, P.C. v. Bloch*, 319 N.W.2d 638 (Mich. 1982) (director and shareholder of medical clinic aided and abetted conversion of funds by medical clinic where he actively aided in conversion).

[10]  *See* Comment 2 of Article 9-315 of the Uniform Commercial Code (authorizing a secured creditor to commence an action for the tort of conversion against a third party who has taken possession of collateral in contravention of its security interest); *In re Montagne*, 413 B.R. 148 (Bankr. D. Vt. 2009) (finding third party that took possession of the proceeds from the sale of collateral committed conversion against secured lienholder).

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2018, a true and correct copy of the foregoing *Amended Limited Objection of American Greetings Corporation to Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* was electronically mailed to the parties registered or otherwise entitled to receive electronic notice in these cases pursuant to the Electronic Filing Procedure in this District.

       */s/ Eric R. Goodman*
       Eric R. Goodman