# EXHIBIT C

# BakerHostetler

Baker&Hostetler LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214

T  216.621.0200
F  216.696.0740
www.bakerlaw.com

Eric R. Goodman
direct dial: 216.861.7418
egoodman@bakerlaw.com

November 7, 2018

**VIA E-MAIL AND REGULAR MAIL**

Garrett A. Fail, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*Re:    In re Sears Holdings Corp., et al., No. 18-23538 (Bankr. S.D.N.Y.)*

Dear Mr. Fail:

We represent American Greetings Corporation ("**AG**") in the Chapter 11 proceedings of Sears Holdings Corporation and related debtors (the "**Debtors**").  We are writing to demand immediate payment to AG by Debtors of funds in the amount of $527,239.09 (the "**Trust Funds**") collected by Debtors prepetition pursuant to certain consignment agreements between AG and the Debtors (as amended, the "**Consignment Agreements**").

## I.    BACKGROUND

The Debtors filed for bankruptcy on October 15, 2018.  At 7:15 AM (New York time), the Debtors filed their *Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (ECF No. 7) (the "**DIP Motion**").

At 12:30 PM (New York time), AG filed its limited objection to the DIP Motion (ECF No. 51) (the "**Limited Objection**").  At 12:53 PM, your colleague Sunny Singh left me a voice message stating that he saw AG's Limited Objection and thought that we could "easily resolve this."  A few minutes later, I called Mr. Singh on his cell phone in order to discuss the Limited Objection.

Mr. Singh indicated to me that he was familiar with the issues surrounding the treatment of consignment agreements in bankruptcy and recalled that I represented AG in the Chapter 11 bankruptcy proceedings of Great Atlantic & Pacific Tea Company, Inc. (the "**A&P Proceedings**"), in which Weil Gotshal & Manges LLP served as debtors' counsel.  In the A&P Proceedings, the consignment agreements to which debtors were parties, including the consignment agreements

*Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC*

November 7, 2018
Page 2

with AG, were treated as agreements to keep funds derived from consigned goods in trust.[1] Pursuant to the consignment order in the A&P Proceedings, the debtors remitted to AG all consignment funds collected by the debtors both *prior* to and *after* the bankruptcy filing.

Mr. Singh suggested that AG's Limited Objection could be easily resolved by affording AG the same treatment in the Debtors' bankruptcy as had occurred in the A&P Proceedings. I then noted that the Debtors had yet to file a motion styled as a consignment motion. Mr. Singh told me not to worry, and that the Debtors could address the issue under the Debtors' proposed trust account program (the "**Trust Account Program**"), memorialized in the *Motion of Debtors for Authority to (I) Maintain Certain Trust Fund Programs, (II) Release Certain Funds Held in Trust, and (III) Continue to Perform and Honor Related Obligations* (ECF No. 15) (the "**Trust Account Motion**"). I informed Mr. Singh that I believed that would be acceptable and that the parties could put this resolution on the record at the first day hearing.

My colleague Ferve Khan attended the first day hearing. Before the hearing, she spoke with Mr. Singh and confirmed our agreement to treat the Consignment Agreements as a Trust Account Program. During the first day hearing, your colleague Ray Schrock further confirmed on the record that the Consignment Agreements would be addressed by the Trust Account Motion and the Trust Funds would be held in trust thereunder.[2] The Court acknowledged this agreement. *See* Tr. at 48:24-49:6 ("THE COURT: Right. This is consensual priming only as I understand it. . . . THE COURT: And as far as anyone that arguably in American Greetings' position, you can't grant a lien on something you don't own. *I don't think the Debtors are pulling any fast ones today*.") (emphasis added).

After the first day hearing, we conferred with your colleagues Jacqueline Marcus and Bryan Podzius concerning language for the proposed order on the Trust Account Motion to reflect the agreement. On October 16, 2018 at 2:02 PM, Mr. Podzius sent me proposed language confirming that the Consignment Agreements would be treated as a recognized Trust Fund Program. I accepted his language, but moved it to the end of the sentence for grammatical reasons.

This proposed language was included in the proposed order submitted by Debtors' counsel to the Court and in the order issued by the Court (the "**Trust Account Order**") on October 18, 2018. *See* ECF No. 167. The Trust Account Order provides that "The Debtors are authorized, but not directed, pursuant to sections 105(a), 363, and 541 of the Bankruptcy Code, to continue to perform

---

[1] *See* Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 541 to Release Certain Funds Held in Trust and to Continue to Perform and Honor Obligations Under the Coin Deposit and Consignment Arrangements, *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007 (July 20, 2015), ECF No. 12, at 10-11; Final Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 541 Authorizing the Debtors to Release Certain Funds Held in Trust and to Continue to Perform and Honor Obligations Under the Coin Deposit and Consignment Arrangements, *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007 (Aug. 11, 2015), ECF No. 498.

[2] *See* Transcript of October 15, 2018 Hearing ("**Tr.**"), at 16:14-17 ("MR. SCHROCK:...There was one objection to the DIP financing filed by American Greetings, but we have resolved our concerns because they are part of the relief in the trust fund motions."); Tr. at 40:16-22 ("MS. KHAN: Ferve Khan from Baker Hostetler, on behalf of American Greetings. We had filed an objection to the motion to accept (indiscernible) priming lien against our merchandise. In light of Mr. Schrock's representations on the record today that that motion will be handled in the trust account procedures, we'll be resolving that objection consensually.")

November 7, 2018
Page 3

and honor obligations, in the ordinary course of business, arising under the Trust Fund Programs requiring the Debtors to release the Trust Funds to applicable Trust Fund Counterparties, *including, without limitation, American Greetings Corporation*." *See* ECF No. 167 at 2-3 (emphasis added). Based on this language, we do not believe that the Debtors can assert, in good faith, that AG is not a Trust Fund Counterparty, that the Consignment Agreements are not Trust Fund Programs, or that the Trust Funds are not funds held in trust by the Debtors.

I contacted Mr. Podzius by telephone the week of October 22nd and informed him that notwithstanding our agreement, as memorialized in the Trust Account Order and on the record at the first day hearing, AG had yet to receive approximately half a million dollars of Trust Funds collected by the Debtors prior to the bankruptcy filing. Mr. Podzius informed me that he would look into it. Several days passed without a response. On Monday, October 29, 2018, at 4:44 PM, I emailed Mr. Podzius and provided a detailed spreadsheet regarding the Trust Funds collected prior to the bankruptcy filing that the Debtors failed to remit to AG.

That same day, at 7:00 PM, I received an email from Ms. Marcus stating: "What are we going to do about this?" A few minutes later, I received a call from you.

During our call, you asserted that the "funds were commingled," there was "no trust," but only a "debtor/creditor relationship," and that AG should not expect to receive a check because the Debtors have no intention of paying AG anything on account of the funds collected prepetition. You further asserted that because the funds were "commingled in a bank account," AG lost its interest in the funds under Article 9 of the Uniform Commercial Code (the "**U.C.C.**").

When I pointed out that this issue was resolved by agreement, as reflected in the Trust Account Order, you informed me that there was "no meeting of the minds" and that Judge Drain would likely permit the Debtors to amend the Trust Account Order, if necessary. When I asked you if you could tell me where the money went, you refused to answer. Such positions are a bald about-face on a clear agreement, wholly unsupported by the law, and extremely prejudicial to AG.

## II.    AG's POSITION

### *The Debtors are judicially estopped from asserting that the Trust Funds are not held in trust.*

At the outset, the Debtors are judicially estopped from now claiming that the Trust Funds are not held in trust in light of the clear agreement between AG's and Debtors' counsel, as acknowledged by the Court and memorialized in the Court's record, the Trust Account Order, and the parties' correspondence.[3] In addition, judicial estoppel applies if the contrary position prejudices the party which acquiesced in the former position.[4] Here, AG's Objection was resolved based on this

---

[3]  *See In re The 1031 Tax Group, LLC*, 374 B.R. 78, 88-89 (Bankr. S.D.N.Y. Aug. 13, 2007) (judicial estoppel applied to bar party from taking position inconsistent with representations on the record in open court); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997) ("[J]udicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner....").

[4]  *In re B&M Linen Corp.*, No. 12-11560, 2013 WL 3579340, at *7 (Bankr. S.D.N.Y. July 12, 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "The doctrine has been applied in bankruptcy cases where judicial

November 7, 2018
Page 4

agreement and the Court approved the Debtors' DIP financing arrangement based on this resolution. AG further relied on this agreement and the Trust Account Order. Had AG known the Debtors would renege on this agreement, AG would not have withdrawn the Objection and would have taken further steps to protect its rights under the Consignment Agreements. Having resolved the Objection by recognizing that the Trust Funds were to be held in trust, and knowing that AG relied on this agreement, the Debtors cannot now "pull a fast one" on AG, *see* Tr. at 48:24-49:6, by backpedaling on the agreement.

### *The Consignment Agreements created an express trust.*

Next, your contention that no trust relationship exists is incorrect. The Debtors acknowledged the trust relationship created under the Consignment Agreements and agreed to continue honoring that relationship in order to induce AG to withdraw its Objection. Further, the Consignment Agreements are governed by Michigan law, under which a consignment creates a trust relationship that cannot be defeated by commingling of the proceeds from sale of the consigned goods.

While "the rules pertaining to lien creditors, buyers, and attachment, perfection, and priority of competing security interests" contained in U.C.C. Article 9 apply to consignments, "[t]he relationship between the consignor and consignee is left to other law." *See* U.C.C. § 9-109, Cmt. 6. Under Michigan law, the relationship between a consignor and consignee is a bailment, a form of trust relationship.[5] Your contention that this trust relationship is defeated due to the Debtors' alleged commingling of the Trust Funds with other funds of the Debtors is likewise incorrect under Michigan law.[6] Moreover, in a recent decision, a bankruptcy court did not hesitate to impose a constructive trust on funds that were property of another party and that the debtor-in-possession

---

adoption of a party's position is implicit in and necessary for the court's approval of a settlement or similar compromise." *B&M Linen*, 2013 WL 3579340, at *7.

[5] *See, e.g., Fruchter v. Martin*, 85 N.W.2d 125, 129 (Mich. 1957) (affirming lower court's ruling that consignment agreement created a bailment and that consignee had converted the consigned property); *Nagle Engine & Boiler Works v. M. Mitshkun Co.*, 207 N.W. 829, 830 (Mich. 1926) (holding that consignment is a form of bailment); *Wasey v. Whitcomb*, 132 N.W. 572, 578 (Mich. 1911) ("'To consign,'…implies an agency. The very term 'consignment' means title in the consignor."); *People v. Deshambo*, No. 245322, 2003 WL 22399529, at *2 (Mich. Ct. App. Oct. 21, 2003) ("consignment is a form of bailment . . . "); *In re D.I.A. Sales Corp.*, 339 F.2d 175, 178 (6th Cir. 1964) (interpreting Michigan law and explaining that "a consignment is nothing more than a bailment for care or sale . . . "); *In re Taylor*, 46 F.2d 326, 328 (E.D. Mich. 1931) (interpreting Michigan law and holding that a consignment "merely creates a bailment, between the consignor as bailor and the consignee as bailee, of property of the bailor, with authority in the bailee as his agent to sell such property to third persons and with the duty to account to him for the proceeds of any such sale."); *see also In re George L. Nadell & Co.*, 292 N.W. 684, 686 (Mich. 1940) (explaining that a bailment consists of "any delivery of personal property in trust for a lawful purpose…with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.").

[6] *See, e.g., Matter of Michigan Boiler & Eng'g Co.*, 171 B.R. 565, 571 (Bankr. E.D. Mich. 1993) (applying Michigan law and holding that beneficiary may trace trust funds into a commingled account to the extent of the lowest intermediate balance of that commingled account); *In re Hugo*, 58 B.R. 903, 908 (Bankr. E.D. Mich. 1986) (applying Michigan law and equitable tracing principles derived from trust law pursuant to Michigan's enactment of predecessor statute of U.C.C. § 9-315(b), and holding that secured party may trace proceeds of its collateral into debtor-in-possession's commingled account to the extent of the lowest intermediate balance of that commingled account).

November 7, 2018
Page 5

converted to its own use postpetition rather than remitting them to the rightful owner. *See In re Hayslett/Judy Oil, Inc.*, No. 03-91436, 2006 WL 148948, at *2 (Bankr. C.D. Ill. Jan. 17, 2006).

### *AG has title to or a first-position lien on the merchandise and its proceeds, which title or lien is superior to the competing interest of any third party.*

In addition, with respect to any competing third-party claimant, including the provider of Debtors' DIP financing in this proceeding, AG has either title to or a first-position lien on the merchandise at issue and any proceeds thereof for the reasons provided in the Objection. As set out in the Objection, the Consignment Agreements govern the distribution and retail sale of certain greeting cards and related products (collectively, the "**Merchandise**") on a scan-based trading ("**SBT**") method of sales. Under the SBT method, the Debtors receive and accept Merchandise on a consignment basis, under which title to all Merchandise is reserved with AG until the register scan and sale of the Merchandise to retail customers.

AG perfected its interest in the Merchandise by filing UCC-1 financing statements in Michigan, Delaware, and New York and provided notice to the holders of existing security interests, as further discussed in the Objection. With respect to all but one of the Debtor counterparties to the Consignment Agreements, AG's initial UCC-1 filings *pre-date* the UCC-1 financing statements filed by Bank of America, N.A., as collateral agent, which the Debtors incorrectly argued has a first-lien position on the Merchandise and its proceeds (which, as relevant here, are the Trust Funds). Indeed, the Court recognized AG's position as the holder of title on the Merchandise. *See* Tr. at 48:24-49:6 ("THE COURT: And as far as anyone that arguably in American Greetings' position, you can't grant a lien on something you don't own.")

AG retains a first-lien position on the Trust Funds regardless of commingling. Pursuant to Section 9-315(b) of the New York Uniform Commercial Code (the "**New York U.C.C.**"), a secured party retains its security interest on commingled proceeds of collateral "to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this article with respect to commingled property of the type involved." *See* New York U.C.C. § 9-315(b). The comments to Section 9-315(b) provide that among the "equitable principles" that may be applied to identify the proceeds is the lowest intermediate balance rule. *See id.* Cmt. 3. Delaware and Michigan have identical articles. *See* 6 Del. C. § 9-315; M.C.L.A. § 440.9315.

Pursuant to the SBT method, AG receives point of sale data for each item sold to retail customers and can specifically identify the proceeds from each sale. Even if the Debtors commingled the Trust Funds with other monies of the Debtors, as discussed above, the Trust Funds remain traceable to the extent the lowest intermediate balance in the commingled accounts never dropped below the amount of the Trust Funds or some portion of them. As a result, any commingling of the Trust Funds with any other funds does not affect AG's first-lien position.[7]

---

[7] *See Halmar Distrib., Inc. v. Ralar Distrib., Inc., and BayBank Middlesex*, 232 B.R. 18 (Bankr. D. Mass. 1999) (under predecessor to U.C.C. § 9-315, purchase-money creditor had security interest in cash proceeds from sale identifiable through tracing methods); *Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 290 B.R. 676 (E.D. Miss. 2003) (granting summary judgment for secured creditor on conversion claim on ground that secured creditor

November 7, 2018
Page 6

In light of the foregoing, we demand that the Debtors immediately turn over the Trust Funds to AG.  AG reserves the right to take all appropriate action to protect its rights.

Sincerely,

Eric R. Goodman

Enclosures

cc:     Sunny Singh, Esq.
        Jacqueline Marcus, Esq.
        Bryan Podzius, Esq.
        Adam Fletcher, Esq.
        Ferve Khan, Esq.

---

maintained security interest in identifiable cash proceeds from debtor's inventory sale under U.C.C. § 9-315 and predecessor statute), *aff'd and rev'd in part for non-related reasons by Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049 (8th Cir. 2005); *see Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 440-41 (7th Cir. 2005) (recognizing that predecessor statute to U.C.C. § 9-315 gave purchase-money secured creditor a continuing security interest in proceeds of inventory sold to bankrupt debtor to the extent identifiable); *see also General Motors Acceptance Corp.*, 141 Misc.2d 349 (N.Y. Sup. Sept. 8, 1988) (enforcing claim of secured creditor to commingled proceeds from sale of collateral that were identifiable under predecessor of U.C.C. § 9-315).