**Hearing Date and Time: November 27, 2018 at 1:30 p.m. (Eastern Time)**
**Objection Deadline: November 15, 2018 at 4:00 p.m. (Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP

One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
Alexis Freeman

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **In re** | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | Case No. 18-23538 (RDD) |
| **Debtors.**[1] | (Jointly Administered) |

---

## OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS OF SEARS HOLDINGS
## CORPORATION, *ET AL.* TO THE DEBTORS'
## DIP FINANCING MOTION AND CASH MANAGEMENT MOTION

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 4

    A.    Events Leading up to the Chapter 11 Filings ................................................. 4

    B.    Commencement of the Debtors' Chapter 11 Cases and Filing of the
        DIP Financing Motion ..................................................................................... 6

    C.    The Debtors' Prepetition Debt Structure ....................................................... 8

    D.    The Proposed DIP ABL Facility ................................................................... 10

    E.    The Proposed Adequate Protection to the Prepetition Credit Parties .......... 10

OBJECTION .......................................................................................................................... 11

    A.    The Legal Standard for Approval of Postpetition Financing ........................ 11

    B.    The Terms of the DIP ABL Facility Violate Applicable Law ..................... 12

    C.    The Roll Up is Onerous and Violates Applicable Law ................................. 12

    D.    The Proposed Adequate Protection Is Inconsistent with Applicable
        Law ................................................................................................................ 15

        1.    The Legal Standard for Adequate Protection ................................... 16

        2.    The Superpriority Claims and Adequate Protection Liens Are
            Overbroad ......................................................................................... 17

        3.    The Prepetition Credit Parties Are Entitled to Adequate
            Protection Solely to Extent of the Aggregate Diminution in
            Value of their Interests in the Prepetition Collateral ....................... 17

        4.    The Payment of Postpetition Interest Should Be Subject to
            Disgorgement or Recharacterization ............................................... 18

    E.    Adequate Safeguards Must be Added with Respect to Postpetition
        Intercompany Claims in Both the DIP ABL Facility and the Final Cash
        Management Order .......................................................................................... 19

    F.    Liens on Avoidance Action Proceeds Should Be Preserved for
        Unsecured Creditors ....................................................................................... 20

    G.    The Case Milestones and Events of Default in the DIP ABL Facility
        Provide the DIP ABL Lenders with Undue Control of These Cases and
        are Designed to Hinder the Debtors' Reorganization ................................... 22

    H.    Additional Modifications Should be Made to the Proposed DIP ABL
        Facility .......................................................................................................... 23

RESERVATION OF RIGHTS ............................................................................................... 26

CONCLUSION ...................................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&K Endowment Inc. v. Gen. Growth Props., Inc. (In re Gen. Growth Props., Inc.)*,
423 B.R. 716 (S.D.N.Y. 2010) ..............................................................................13

*In re Ames Dep't Stores*,
115 B.R. 34 (Bankr. S.D.N.Y. 1990) ....................................................................11

*In re AppliedTheory Corp.*,
Nos. 02-11868 through 02-11874, 2008 WL 1869770 (Bankr. S.D.N.Y. Apr. 24, 2008) ............................................................................................................21

*Bethlehem Steel Corp. v. Moran Towing Corp.* (*In re Bethlehem Steel Corp.*),
390 B.R. 784 (Bankr. S.D.N.Y. 2008) ..................................................................21

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017) ............................................................................................13

*In re Crouse Grp., Inc.*,
71 B.R. 544 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (E.D. Pa. 1987) ....................................................................................................11

*In re Farmland Indus., Inc.*,
294 B.R. 855 (Bankr. W.D. Mo. 2003) ................................................................11

*In re Gallegos Research Grp.*,
193 B.R. 577 (Bankr. D. Colo. 1995) ...................................................................16

*In re L.A. Dodgers LLC*,
457 B.R. 308 (Bankr. D. Del. 2011) .....................................................................11

*In re Lane*,
108 B.R. 6 (Bankr. D. Mass. 1989) ......................................................................18

*In re Megan-Racine Assocs.*,
202 B.R. 660 (Bankr. N.D.N.Y. 1996) .................................................................16

*In re Mosello*,
195 B.R. 277 (Bankr. S.D.N.Y. 1996) ..................................................................16

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*,
226 F.3d 237 (3d Cir. 2000) .................................................................................21

*Official Comm. of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*,
    322 B.R. 560 (M.D. Pa. 2005) ............................................................................................14

*Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*,
    497 B.R. 403 (Bankr. S.D.N.Y. 2013)................................................................................17

*Official Comm. of Unsecured Creditors v. UMB Bank N.A. (In re Residential Capital, LLC)*,
    501 B.R. 549 (Bankr. S.D.N.Y. 2013)...........................................................................16, 17

*Orix Credit Alliance v. Delta Res. (In re Delta Res.)*,
    54 F.3d 722 (11th Cir. 1995) .............................................................................................18

*In re Pine Lake Vill. Apartment Co.*,
    19 B.R. 819 (Bankr. S.D.N.Y. 1982)..................................................................................18

*In re Republic Airways Holdings Inc.*,
    No. 16-10429(SHL), 2016 WL 2616717 (Bankr. S.D.N.Y. May 4, 2016) ...........................11

*Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co. Inc.)*,
    963 F.2d 1490 (11th Cir. 1992) .........................................................................................14

*Stein v. U.S. Farmers Home Admin. (In re Stein)*,
    19 B.R. 458 (Bankr. E.D. Pa. 1982) ..................................................................................17

*In re Tenney Vill. Co.*,
    104 B.R. 562 (Bankr. D.N.H. 1989) ..............................................................................12, 14

*U.S. Bank Trust Nat'l Ass'n v American Airlines, Inc. (In re AMR Corp.)*,
    485 B.R. 279 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013) ...........................13

*In re W. Pac. Airlines*,
    223 B.R. 567 (Bankr. D. Colo. 1997).................................................................................15

*In re WorldCom, Inc.*,
    304 B.R. 611 (Bankr. S.D.N.Y. 2004)................................................................................16

*In re Worldcom, Inc.*,
    401 B.R. 637 (Bankr. S.D.N.Y. 2009)................................................................................21

*In re YL W. 87th Holdings I*
    LLC, 423 B.R. 421 (Bankr. S.D.N.Y. 2010) .......................................................................16

**Statutes**

11 U.S.C.
    §363(p)(2) .........................................................................................................................18

§364...........................................................................................................................13, 14
§364(b)...........................................................................................................................11
§506(b)...........................................................................................................................18
§506(c)...........................................................................................................................22
§552(b)...........................................................................................................................22
§1102...........................................................................................................................7
§1107(a)...........................................................................................................................7
§1108...........................................................................................................................7
§1129(a)(9)...........................................................................................................................14
§1129(b)...........................................................................................................................14

**Rules**

Fed. R. Bankr. P.
§1015(b)...........................................................................................................................7
§2004...........................................................................................................................5

S.D.N.Y. LBR §4001-2(a)(7) ...........................................................................................4

**Other Authorities**

3 Collier On Bankruptcy ¶ 361.02[2][a] (16th Ed. 2018)...........................................18

The Official Committee of Unsecured Creditors (the "UCC") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby submits this objection (the "Objection") to (i) the entry of a final order (the "Final DIP Order") granting the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* [ECF. No. 7] (the "DIP Financing Motion")[2] and (ii) the entry of a final order (the "Final Cash Management Order") granting the *Motion of the Debtors for Authority to (I) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (II) Implement Ordinary Course Changes to Cash Management System, (III) Continue Intercompany Transactions, and (IV) Provide Administrative Expense Priority for Postpetition Intercompany Claims and Related Relief* [ECF. No. 5] (the "Cash Management Motion").   In support of this Objection, the UCC respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1.      By the DIP Financing Motion, the Debtors seek approval of a nominal $1.83 billion senior secured priority priming debtor in possession asset-based credit facility which provides for (x) at most, only $300 million of incremental new financing and (y) an extraordinary and improper roll-up of $1.53 billion of prepetition claims (the "Roll Up").  The proposed Roll Up represents a 5:1 ratio of rolled up debt to incremental value and would provide the Prepetition ABL Lenders

---

[2]   This Objection does not address the proposed Junior DIP to be provided by GACP II L.P. (the "GA Junior DIP"), a term sheet (the "GA Junior DIP Term Sheet") for which was filed on November 14, 2018 [ECF No. 735].  The UCC reserves its rights to supplement this Objection with respect to the GA Junior DIP and any other debtor in possession financing the Debtors may seek.

[3]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Interim DIP Order (as defined below).

that become lenders under the DIP ABL Facility (the "<u>DIP ABL Lenders</u>") with (i) superpriority administrative expense claims against ***all*** of the Debtors on account of the rolled up Prepetition ABL Obligations while the Prepetition ABL Obligations are assertable at barely more than half of the Debtors[4] and (ii) liens on previously unencumbered assets.  The granting of these joint and several superpriority claims and related liens in respect of the rolled up $1.53 billion of Prepetition ABL Obligations against Debtors that are not obligated on the Prepetition ABL Facilities debt has no basis in the law and may render these estates administratively insolvent.

2.     Similar to the Roll Up, the Debtors propose to provide adequate protection superpriority claims and replacement liens to all of their putative prepetition secured creditors, including ESL Investments, Inc. and its affiliates (collectively, "<u>ESL</u>"), at all of the Debtor entities and on all of the Debtors' assets.  Yet, as with the Prepetition ABL Facilities, the remainder of the Debtors' prepetition secured debt is assertable against only a subset of the Debtors and without the benefit of all assets liens.[5]   Again, there is no basis in the law to provide a secured creditor with adequate protection claims and liens at a debtor that is not obligated on such secured creditor's prepetition debt.

3.     In addition to the foregoing fatal flaws, the DIP Financing Motion contains the following objectionable provisions, among others:[6]

- inappropriate Case Milestones, including Case Milestones that require (i) the Debtors to comply with the Go Forward Plan of pursuing a Going Concern Sale and "obtain[ing] and find[ing] acceptable a non-contingent and fully-financed" stalking horse bid by December 15, 2018[7] and (ii) the approval of an "Acceptable Plan of Reorganization," defined as a chapter 11 plan that provides for the payment

---

[4]   *See* **Exhibit A** (detailing which Debtor entities are borrowers and guarantors under the Prepetition Credit Facilities).

[5]   *Id.*

[6]   The Debtors have yet to file a proposed Final DIP Order.  Attached hereto as **Exhibit B** is a mark-up of the Interim DIP Order reflecting the UCC's comments thereto that would resolve the issues raised by this Objection (the "<u>UCC's Proposed Final Order</u>").

[7]   DIP ABL Term Sheet at p. 20, Annex D.

in full in cash of the Prepetition ABL Obligations and broad sweeping releases and exculpation in favor of non-fiduciaries and parties that are the subject of ongoing investigation including ESL;

- disparate treatment under the Carve-Out for the UCC's financial professionals as compared to the Debtors'; and

- numerous other "protections" detailed on **Exhibit B** hereto that are improper in light of the facts and the circumstances of these cases, including improper subordination of Postpetition Intercompany Obligations, which provisions carry over to the Cash Management Motion.[8]

4.      There is no dispute that the Debtors commenced these cases in need of liquidity. The proposed uses for the liquidity that the Debtors seek to obtain, however, require significant scrutiny.  Although it has been widely known since 2003, with an increased market concern since 2015, that the Debtors had been suffering "[y]ears of declining sales caused by adverse market conditions and competitive pressures from online retailers combined with high debt burden"[9] and were trending towards chapter 11,[10] the Debtors' board of directors (the "Board"), chaired by Edward Lampert ("Lampert") did not authorize the Debtors' professionals to seek postpetition financing until the week before the Petition Date, resulting in the negotiation of the DIP ABL Facility in "less than 10 days"—a wholly insufficient time to test the market for postpetition financing or analyze appropriately the highest and best use of such financing.

5.      In addition to the nominal $1.83 billion DIP ABL Facility, which only provides $300 million of incremental value, the Debtors intend to seek authorization to obtain additional

---

[8]    The improper subordination of Postpetition Intercompany Claims carries over to the Cash Management Motion and, therefore, the Cash Management Motion should not be approved without modifications to the Final Cash Management Order providing appropriate protections with respect to Postpetition Intercompany Transactions such that (i) no Debtor entity or its creditors benefits inappropriately through such transactions and (ii) no non-Debtor entity retains value for the benefit of its creditors at the expense of the Debtors' estates.  The UCC has included proposed language in the UCC's Proposed Final Order to address this issue.

[9]    *Declaration of Mohsin Y. Meghji in Support of Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties and (D) Schedule Second Interim Hearing and Final Hearing* [ECF. No. 10] ¶ 9.

[10]   *See* First Day Declaration ¶ 9 ("The Company has worked tirelessly in recent years to obtain the necessary runway to turn around the business and demonstrate its vitality.").

postpetition financing on a junior basis ("<u>Junior DIP</u>") because the DIP ABL Facility is insufficient to bridge the Debtors to the completion of their contemplated sale of approximately 400 four-wall EBITDA positive stores (the "<u>Go Forward Stores</u>") as a going concern (the "<u>Going Concern Sale</u>") and other asset sales.[11] *See* First Day Declaration ¶ 13 (noting that the Debtors' liquidity needs "***should*** [be] adequately address[ed]" by the combination of the DIP ABL Facility, the Junior DIP and the proceeds of contemplated going out of business sales) (emphasis added). As detailed in the UCC's objections to the Bidding Procedures Motion,[12] however, it remains to be seen whether using assets otherwise available to satisfy unsecured claims as security for the DIP ABL Facility and a Junior DIP facility to conduct the Going Concern Sale is in the estates' best interests or reasonably likely to maximize value for all stakeholders.

## BACKGROUND

**A.     Events Leading up to the Chapter 11 Filings**

6.     Speculation surrounding the Debtors' severe liquidity crisis and need to reorganize under chapter 11 began as early as 2003. *See Sears' Cash Situation Concerns Analysts*, CHICAGO SUN-TIMES, March 20, 2003 (noting that "Sales at Sears stores open at least a year have declined for 18 consecutive months from year-earlier periods. Sears' retail revenues have fallen for the last three years, despite the introduction of The Great Indoors, Sears' high-end-home-décor store."); *Sears's Bonds Could Hit Junk Rack*, WALL ST. J., Nov. 18, 2004 (stating, following the announcement of Sears's acquisition of Kmart Holding in an $11.5 billion deal that, "[d]espite the

---

[11]    Based on the UCC's discussions with the Debtors, the Debtors are considering increasing the number of stores subject to the Going Concern Sale to 505.

[12]    *See Preliminary Objection of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, Et Al., to Debtors' Motion for Approval of Global Bidding Procedures*, filed on November 9, 2018 [ECF. No. 640] (the "<u>Preliminary Bidding Procedures Objection</u>"); *Supplemental Objection of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, Et Al., to Debtors Motion for Approval of Global Bidding Procedures* [ECF. No. 729] (the "<u>Supplemental Bidding Procedures Objection</u>").

[combined] company's much greater size [as the third-largest U.S. retailer], and synergies that are estimated by management of about $500 million per year after the third year, both companies lag their peers in terms of store productivity and profitability.").

7.        By 2015, the Debtors' value erosion was widely known as concerns regarding the Debtors' sustained liquidity crisis were heightened. *See Sears's Retooling Can't Fix All,* WALL ST. J., Dec. 3, 2015 ("Sears still needs to cover its massive operating losses.   And unless fundamentals drastically improve, Sears will likely need to embark on more financial maneuvering sooner than later."); *There's No End in Sight to Sears' Sale Drops*, Dec. 3, 2015, http://fortune.com/2015/12/03/sears-sales-decline/, ("Another quarter, another set of dismal financial results from Sears Holdings."); *Business News:  Sears Revenue Drops 20% --- Big retailer's loss narrows, but sales shrink from store closings, shift in focus*, WALL ST. J., Dec. 4, 2015 ("Revenue dropped to $5.75 billion from $7.21 billion".).

8.        Despite the Debtors' clear understanding of the continued erosion of the value of their estates for several years, the Board did not authorize Lazard to seek postpetition financing until the week prior to the Petition Date.   This self-imposed limited window resulted in the negotiation and preparation of the DIP ABL Facility "on an emergency basis with very little lead time (less than 10 days)," *Declaration of Brandon Aebersold in Support of DIP Financing Motion* [ECF. No. 9] ¶ 8, and the need to solicit a Junior DIP in order to conduct a marketing process for the Going Concern Sale and fund the Debtors through year end.   Significantly, the DIP ABL Facility Case Milestones require that the Debtors "must by December 15, 2018 obtain and find acceptable a non-contingent and fully-financed…stalking horse bid for the sale of the Go Forward Stores."  *Id*. ¶ 7 ("Without the Junior DIP Financing, the opportunity to effect a Going Concern Exit will be seriously jeopardized"); *Id*. ¶ 33 (providing that the Debtors must have a fully-financed

stalking horse bid for the Going Concern Sale stores by December 15, 2018); DIP Financing Motion, Annex D-2.

9.     Shortly before the Petition Date, in light of Lampert's and ESL's substantial involvement in numerous complex, questionable prepetition transactions across the Debtors' capital structure, the Board formed a special committee (the "Restructuring Committee") comprised of independent directors to oversee the restructuring process and to have decision making authority with respect to transactions involving ESL or in which ESL may have a conflict of interest. *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* [ECF. No. 3] (the "First Day Declaration") ¶ 11.   The Restructuring Committee, with the authorization of the Board, also appointed a subcommittee (the "Restructuring Subcommittee") to review the prepetition affiliate transactions and to determine whether there are any viable causes of action arising therefrom. *Id.* ¶ 12.   The UCC also has commenced an independent investigation of ESL and the affiliate transactions, but the UCC has not received the required cooperation from the Debtors or ESL and thus was required to file a motion under Bankruptcy Rule 2004 in order to obtain access to material information on an expedited time frame in light of the extraordinary speed at which these cases must progress and ESL's intent to seek to credit bid on a significant portion of the Debtors' assets.[13]

## B.     Commencement of the Debtors' Chapter 11 Cases and Filing of the DIP Financing Motion

10.     On October 15, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code

---

[13]    *See* First Day Declaration ¶ 15 ("The Debtors are in discussions with ESL regarding a stalking-horse bid for the purchase of the Company's viable store base.").

sections 1107(a) and 1108.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [ECF. No. 118].

11.    On October 24, 2018, the United States Trustee for the Southern District of New York appointed the UCC pursuant to Bankruptcy Code section 1102 of the Bankruptcy Code.[14]

12.    On the Petition Date, the Debtors filed the DIP Financing Motion seeking approval of the nominal $1.83 billion DIP ABL Facility comprised of $300 incremental new value and a roll-up of $1.53 billion of prepetition debt.  DIP Financing Motion ¶ 3.   By the DIP Financing Motion, the Debtors also seek authorization to obtain Junior DIP financing in the form of the GA Junior DIP, the term sheet for which was filed with the Court on November 14, 2018 [ECF. No. 735].

13.    On October 16, 2018, the Court entered an order approving the DIP Financing Motion on an interim basis (the "Interim DIP Order").  The final hearing on the DIP ABL Facility, and interim hearing with respect to any Junior DIP financing that the Debtors may obtain, currently is scheduled for November 27, 2018.

14.    On the Petition Date, the Debtors also filed the Cash Management Motion seeking authority to, among other things, afford administrative priority to claims arising from transactions by and among the Debtors and to afford protections with respect to transactions among the Debtors and their non-Debtor affiliates (respectively, "Postpetition Intercompany Claims" and "Postpetition Intercompany Transactions").  On October 16, 2018, the Court entered an order (the

---

[14]   The UCC comprises the following members: (i) Apex Tool Group, LLC; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A.; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation; (vi) Simon Property Group L.P.; (vii) The Bank of New York Mellon Trust Company; (viii) Basil Vasiliou; and (ix) Winiadaewoo Electronics America, Inc.

"Interim Cash Management Order") approving the Cash Management Motion on an interim basis. The final hearing on the Cash Management Motion currently is scheduled for November 27, 2018.

15.     Upon information and belief, on November 1, 2018, two weeks after the entry of the Interim DIP Order, the Debtors formally began a marketing process in the hopes of finding a Junior DIP on terms more favorable than those provided in the ESL Term Sheet.

16.     On November 1, 2018, the Debtors filed the Debtors' Motion for Approval of Global Bidding Procedures [ECF. No. 429] (the "Bidding Procedures Motion") seeking authority to (i) adopt global bidding procedures in connection with the postpetition marketing and sale of their assets and (ii) provide stalking horse protections in connection therewith, so as not to miss the "extremely limited" opportunity "to stem the substantial operating losses that will continue to decrease the value of the Debtors' estates" and to find a "viable path forward for reorganization." Bidding Procedures Motion ¶¶ 1, 2.

17.     In connection with the Going Concern Sale, the Debtors have been in discussions with ESL regarding a stalking-horse bid.  First Day Declaration ¶ 15.

18.     On November 9, 2018, the UCC filed the Preliminary Bidding Procedures Objection, and on November 14, 2018, the UCC filed the Supplemental Bidding Procedures Objection.  A hearing on the Bidding Procedures Motion currently is scheduled for November 15, 2018.

19.     On November 14, 2018, the Debtors filed the GA Junior DIP Term Sheet.

**C.     The Debtors' Prepetition Debt Structure**

20.     As described in greater detail in the First Day Declaration, as of the Petition Date, the Debtors had funded debt obligations totaling approximately $5.1 billion, under the following debt facilities:

- **Prepetition ABL Facilities**: comprising (i)(a) the $1.53 billion Prepetition ABL Revolving Facility (which includes a letter of credit sublimit of up to $1 billion); (b) the repaid $1 billion Prepetition ABL Term Loan Facility, (c) the $750 million Prepetition ABL 2016 Term Loan Facility, and (d) the $125 million Prepetition ABL 2018 FILO Facility (collectively, the "Prepetition ABL Facilities"); and (ii) the Stand-Alone L/C Facility (the lenders thereunder and under the Prepetition ABL Facilities, collectively, the "Prepetition ABL Credit Parties" and, the obligations thereunder and under the Prepetition ABL Facilities, collectively, the "Prepetition ABL Obligations");

- **Second Lien Credit Facilities**: comprising (i) the Prepetition Second Lien Credit Agreement Term Facility; (ii) the Prepetition Second Lien Credit Agreement Line of Credit Facility; (iii) the Prepetition Second Lien 2010 Notes; and (iv) the Prepetition Second Lien Convertible Notes (together with the Prepetition Second Lien Credit Agreement Term Facility, the Prepetition Second Lien Credit Agreement Line of Credit Facility, and the Prepetition Second Lien 2010 Notes, the "Prepetition Second Lien Facilities" and, the lenders thereunder, the "Prepetition Second Lien Credit Parties," together with the Prepetition ABL Credit Parties, the "Prepetition Credit Parties"); and

- **Other funded debt facilities:**[15] comprising (i) the IP/Ground Lease Term Loan in an original principal amount of $100 million; (ii) the Consolidated Secured Loan Facility in an original principal amount of approximately $779.1 million; (iii) the Holdings Unsecured PIK Notes due 2019 in an original principal amount of approximately $214 million; (iv) the Holdings Unsecured Notes due 2019 in an original principal amount of approximately $625 million; (v) the SRAC Unsecured PIK Notes due 2028 in an original principal amount of approximately $101.9 million; and (vi) the SRAC Unsecured Notes of approximately $185.6 million principal amount outstanding as of the Petition Date.

21.    As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facilities was $1,655,378,380, and the aggregate principal amount of letters of credit outstanding under the Stand-Alone L/C Facility was approximately $271 million.[16]    The Prepetition ABL Obligations are secured by a lien on, among other things, the credit card receivables, pharmacy receivables, inventory, prescription lists, deposit accounts, and cash owned

---

[15]    Capitalized terms used in this paragraph shall have the meanings ascribed to them in the First Day Declaration.

[16]    Section (G)(b) of the Interim DIP Order states that, as of the Petition Date, the aggregate amount outstanding under the Prepetition ABL Facilities was $1,530,378,380.  This figure omits the $125,000,000 outstanding under the Prepetition ABL 2018 FILO Facility, which is encompassed in the Interim DIP Order's definition of "Prepetition ABL Facilities."

by the Prepetition ABL Loan Parties (the "Prepetition ABL Collateral" and, together with the collateral securing the obligations under the Prepetition Second Lien Facilities, the "Prepetition Collateral").  Interim DIP Order §(G)(c).

**D.    The Proposed DIP ABL Facility**

22.    The DIP Financing Motion seeks authorization for Debtors SRAC and Kmart Corp. (the "DIP ABL Borrowers") to borrow funds under (i) a $1.15 billion DIP ABL Revolver, including up to $188 million of incremental new money commitments, and (ii) a $683 million DIP ABL Term Loan, including $112 million of incremental new money commitments (collectively, the "DIP ABL Facility" and, the lenders thereunder, the "DIP ABL Lenders").  In total, the DIP ABL Facility provides up to $300 million in incremental financing to the Debtors' estates.  The balance of the DIP ABL Facility loan amount—approximately $1.53 billion—is a roll-up of existing loans and commitments under the Prepetition ABL Facilities.

23.    The obligations under the DIP ABL Facility, including with respect to the Roll Up (the "DIP ABL Obligations") are to be secured by (i) a first-priority priming lien on all Prepetition ABL Collateral, including cash, accounts receivable, and inventory; (ii) a first priority lien on all previously unencumbered assets, including the Specified Assets (three valuable leases—two in New York City and one in Bridgehampton, NY, and specified litigation and commercial tort claims); and (iii) a junior lien on all encumbered assets other than the Prepetition ABL Collateral.

24.    The DIP ABL Obligations are joint and several obligations of all of the Debtors (defined in the Interim Financing Order as the "DIP ABL Loan Parties").  Interim DIP Order ¶ 7.

**E.    The Proposed Adequate Protection to the Prepetition Credit Parties**

25.    In exchange for the use and priming of their interests in the Prepetition Collateral, the Debtors propose to provide the Prepetition Credit Parties with the adequate protection on

account of the potential diminution of value in their interests in the collateral securing the

Prepetition ABL Facilities and Prepetition Second Lien Facilities as set forth in **Exhibit C**.[17]

## OBJECTION

### A.      The Legal Standard for Approval of Postpetition Financing

26.      The standards that must be satisfied for this Court to approve the DIP ABL Facility

have not been met.  The law is well-settled that a court should only approve proposed debtor in

possession financing if such financing is fair, reasonable and adequate.  *See In re Ames Dep't*

*Stores*, 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990) (citing *In re Crouse Grp., Inc.*, 71 B.R. 544, 549

(Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (E.D. Pa. 1987)).  In determining

the fairness, reasonableness and adequacy of the terms of a postpetition financing facility, courts

routinely consider whether:  (1) the debtor is unable to obtain unsecured credit under Bankruptcy

Code section 364(b); (2) the credit transaction benefits are necessary to preserve estate assets; and

(3) the terms of the credit transaction are fair, reasonable, and adequate, given the circumstances

of the debtor and proposed lender.  *In re Republic Airways Holdings Inc.*, No. 16-10429(SHL),

2016 WL 2616717, at *11 (Bankr. S.D.N.Y. May 4, 2016) (citing *In re L.A. Dodgers LLC*, 457

B.R. 308, 312 (Bankr. D. Del. 2011)); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881

(Bankr. W.D. Mo. 2003) (evaluating similar factors, including whether the financing agreement

was negotiated in good faith and at arm's length).

27.      Courts recognize that "[d]ebtors-in-possession generally enjoy little negotiating

power with a proposed lender, particularly when the lender has a pre-petition lien on cash

collateral."  *In re Ames Dep't Stores, Inc.*, 115 B.R. at 38.  Thus, bankruptcy courts have not

approved financing arrangements that convert the bankruptcy process from one designed to benefit

---

[17]   Capitalized terms used herein relating to adequate protection shall have the meanings ascribed to them in
**Exhibit C**.

all creditors to one designed for the sole (or primary) benefit of a single lender. *See id.* at 38 (citing *In re Tenney Vill. Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989)) (holding that the terms of a postpetition financing facility must not "pervert the reorganizational process from one designed to accommodate all classes of creditors…to one specially crafted for the benefit" of one creditor). As discussed in more detail below, the Debtors have failed to demonstrate that the terms of the proposed DIP ABL Facility are fair, reasonable and adequate in accordance with applicable law.

**B.     The Terms of the DIP ABL Facility Violate Applicable Law**

28.     The terms of the DIP ABL Facility violate applicable law in several respects. First, the Roll Up is overbroad and inappropriately provides the Prepetition ABL Lenders with claims and liens at entities where they do not have prepetition secured claims with respect to the rolled up Prepetition ABL Obligations. Second, like the Roll Up, the proposed adequate protection for the Debtors' prepetition secured lenders is overbroad and inappropriately provides such lenders with adequate protection claims and adequate protection liens at Debtors for which they do not have prepetition secured claims. Third, the covenants, events of default and Case Milestones provided in the DIP ABL Facility will hinder the Debtors' reorganization by (i) providing the DIP ABL Lenders with undue control and (ii) dictating the course of these chapter 11 cases in contravention of the Debtors' fiduciary duties to maximize value for all creditors. Finally, there are a number of additional provisions of the DIP ABL Facility that are inappropriate and must be stricken or modified as detailed herein.

**C.     The Roll Up is Onerous and Violates Applicable Law**

29.     The DIP ABL Facility is the largest roll-up for a retailer and the second largest DIP financing package for a retailer since 2016. The DIP ABL Facility rolls up $1.53 billion of prepetition debt, yet provides only $300 million of additional availability. This equates to a 5:1 roll-up of prepetition debt to new value. The Roll Up contemplates that the Prepetition ABL

Obligations that are rolled up will receive the benefit of superpriority administrative expense claims at every entity and be secured by all of the Debtors' assets on either a priming or junior basis. The Prepetition ABL Obligations that will receive the benefit of the Roll Up, however, are not the obligations of every Debtor nor are they secured by an all assets lien. Accordingly, the proposed Roll Up provides the DIP ABL Lenders with substantially greater claims and liens than for which they are legally entitled.

30.     Although certain terms favorable to lenders are permissible as a reasonable exercise of a debtor's business judgment, the Bankruptcy Code does not permit financing arrangements that leverage the bankruptcy process for the benefit of a creditor and to the detriment of the estate. *See A&K Endowment Inc. v. Gen. Growth Props., Inc. (In re Gen. Growth Props., Inc.)*, 423 B.R. 716, 725 (S.D.N.Y. 2010) ("'[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.'") (citations omitted); *U.S. Bank Trust Nat'l Ass'n v American Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013) (same). Financing approved under Bankruptcy Code section 364 should not allow secured creditors to undo the "level playing field" contemplated by the Bankruptcy Code. *See In re W. Pac. Airlines*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997) (noting that onerous terms of postpetition financing may impede the debtor's ability to propose a plan on a level playing field).

31.     Local Rule 4001-2(a)(7) requires a debtor seeking postpetition financing to highlight for the Court the inclusion of any provisions in a DIP facility that contemplate the roll-up of prepetition debt to postpetition debt. To be approved, the roll-up financing must serve "significant Code-related objectives" by "enable[ing] a successful reorganization and mak[ing] even the disfavored creditors better off.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985

(2017) (Citation omitted).  Roll-ups generally are not favored because they provide no economic benefit to the debtor and solely benefit the prepetition lender by elevating prepetition claims and circumventing the Bankruptcy Code's priorities and distribution framework.  *See, e.g., Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co. Inc.)*, 963 F.2d 1490 (11th Cir. 1992) (holding that a secured creditor's prepetition debt balance may not be paid off and/or "rolled into" a postpetition line of debtor in possession financing, with resultant enhancement of collateral position and administrative priority); *Official Comm. of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*, 322 B.R. 560, 569 n.4 (M.D. Pa. 2005) (noting that roll-up provisions "have the effect of improving the priority of a prepetition creditor"); *In re Tenney Vill. Co.*, 104 B.R. at 570 (holding that Bankruptcy Code section 364 does not authorize the granting of administrative expense priority for prepetition debt).

32.     Generally, the rationale for a roll-up is evident:  the approval of a roll-up results in the conversion of prepetition secured debt that could be satisfied in any number of ways pursuant to a confirmed chapter 11 plan to postpetition secured debt entitled to administrative priority that must be repaid in full, in cash, absent the consent of the lender.  See 11 U.S.C. §1129(a)(9).  In other words, lenders seek roll-ups to prevent being crammed down under a chapter 11 plan.  Here, the Debtors are in the process of selling all of their assets, and there likely is no reorganization plan that the Debtors can propose that will enable them to satisfy the cram-down provisions of Bankruptcy Code section 1129(b) with respect to the Prepetition ABL Obligations.  This is not a case like *MPM Silicones* where the debtors had a robust go-forward business and an infusion of $600 million by junior stakeholders in the form of equity-based exit financing.  Rather, here, through the Roll Up, the DIP ABL Lenders are seeking to obtain a material advantage over other creditors, primarily the Debtors' unsecured creditors, by rolling up prepetition debt at a 5:1 ratio

14

to new financing in order to obtain superpriority administrative expense claims and first priority liens on unencumbered assets at Debtor entities where they do not have prepetition secured claims. While in certain limited situations, based on the facts and circumstances of a given case, allowed prepetition secured claims may be rolled-up or repaid outside a chapter 11 plan, there is no legal basis for doing so here.  And there is no provision of the Bankruptcy Code that provides for prepetition secured creditors to roll-up their secured claims to postpetition superpriority administrative expenses at entities for which they did not have prepetition claims or liens.  As such, the Roll Up cannot be approved on its current terms.  Indeed, with respect to those Debtors that are not obligated on the Prepetition ABL Facility, the Roll Up essentially effectuates a fraudulent transfer as such entities would be incurring joint and several liability on a postpetition basis to satisfy claims for which they were not liable prepetition.

33.     In addition, the Roll Up limits the Debtors' ability to obtain a Junior DIP facility. As noted above, the Debtors have material unencumbered assets.  If the Roll Up is permitted, those unencumbered assets will become collateral for $1.53 billion of prepetition debt.  If the Roll Up is not permitted, the value of those assets in excess of the $300 million of incremental value being provided by the DIP ABL Facility will be available to serve as collateral for a Junior DIP, and likely result in better terms for the Debtors in connection therewith.

**D.     The Proposed Adequate Protection Is Inconsistent with Applicable Law**

34.     As adequate protection of the interests of the Prepetition Credit Parties in the Prepetition Collateral, including cash collateral, against any diminution in value resulting from the Debtors' use, sale, lease or other decline in value of such collateral, the Debtors have agreed to provide the Prepetition Credit Parties the following adequate protection: (i) adequate protection liens in the form of the ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Prepetition Second

15

Lien Adequate Protection Liens (collectively, the "Adequate Protection Liens"), as applicable;  (ii)
superpriority claims in the form of the Prepetition ABL Adequate Protection Claims, the
Prepetition 2018 FILO Adequate Protection Claims, the Prepetition LC Facility Adequate
Protection Claims and the Prepetition Second Lien Facilities Adequate Protection Claims
(collectively, the "Superpriority Claims"), as applicable; (iii) solely with respect to the Prepetition
ABL Credit Parties, Adequate Protection Payments, Adequate Protection Fees Reimbursement,
Adequate Protection Maintenance and Reporting and Information Rights.  For the reasons set forth
herein, the proposed adequate protection package is inconsistent with applicable law.

## 1.    The Legal Standard for Adequate Protection

35.    The purpose of adequate protection is to ensure that prepetition lenders receive the
security they bargained for prior to the petition date.  *Official Comm. of Unsecured Creditors v.*
*UMB Bank N.A. (In re Residential Capital, LLC)*, 501 B.R. 549, 594 (Bankr. S.D.N.Y. 2013)
(citing *In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004)); *In re YL W. 87th*
*Holdings I* LLC, 423 B.R. 421, 442 n.46 (Bankr. S.D.N.Y. 2010) (stating that the purpose of
adequate protection is to ensure that a secured creditor receives the value of its prepetition bargain);
*In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (adequate protection must "'protect[]…
the secured creditor from diminution in the value of its collateral during the reorganization
process.'") (citation omitted).

36.    A court's inquiry in determining whether proposed adequate protection is sufficient
is relatively narrow in focus.  "To determine whether an entity is entitled to adequate protection
and the type and the amount of adequate protection required, a court must determine the value of
the collateral, the creditor's interest in the collateral and the extent to which the value will decrease
during the course of the bankruptcy case.*"  In re Megan-Racine Assocs.*, 202 B.R. 660, 663 (Bankr.
N.D.N.Y. 1996) (quoting *In re Gallegos Research Grp.*, 193 B.R. 577, 584 (Bankr. D. Colo.

1995)); *see also In re Residential Capital, LLC*, 501 B.R. at 594 (finding that a secured creditor was entitled to adequate protection calculated as value based on the proposed disposition of the collateral, i.e. fair market value in the hands of the Debtors).

### 2.    The Superpriority Claims and Adequate Protection Liens Are Overbroad

37.    As discussed above, the Prepetition Credit Parties' claims are the obligations of, and secured by certain assets of, just over half of the Debtor entities.  However, similar to the Roll Up, the Debtors propose to provide the Prepetition Credit Parties with adequate protection in the form of Superpriority Claims at every Debtor and replacement liens on all assets, including unencumbered assets, of every Debtor.  This expansive grant of adequate protection is far more than the Prepetition Credit Parties bargained for prepetition and has no basis in the law.  Indeed, adequate protection cannot extend to entities at which a prepetition secured creditor did not have prepetition secured claims.  As such, the adequate protection provisions of the Final DIP Order must limit the grant of any adequate protection claims and adequate protection liens solely to those Debtors against which the Prepetition Credit Parties had valid secured claims as of the Petition Date.

### 3.    The Prepetition Credit Parties Are Entitled to Adequate Protection Solely to Extent of the Aggregate Diminution in Value of their Interests in the Prepetition Collateral

38.    In addition to limiting the entities at which the Prepetition Secured Parties are entitled to receive adequate protection, the Final DIP Order must redefine how diminution in value is calculated.  Courts consistently hold that adequate protection claims on account of the diminution of value in a secured creditor's collateral should not be measured on a dollar-for-dollar basis.  *See, e.g. Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 497 B.R. 403, 422 (Bankr. S.D.N.Y. 2013); *Stein v. U.S. Farmers Home Admin.*

*(In re Stein)*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982); *In re Pine Lake Vill. Apartment Co.*, 19

B.R. 819, 826 (Bankr. S.D.N.Y. 1982).  Rather, a creditor entitled to adequate protection is

required to show that the value of collateral has diminished on an aggregate basis, taking into

account the total value of the collateral base across all debtor entities wherein such assets belong.

*See* 11 U.S.C. § 363(p)(2) (providing that any entity asserting an interest under section 363 "has

the burden of proof on the issue of the validity, priority, or extent of such interest").

39.     Accordingly, the adequate protection provisions must be modified to clarify that

adequate protection shall be granted solely to the extent of the aggregate net diminution in value

of the applicable Prepetition Credit Party's interest in the Prepetition Collateral.  Indeed, the

language contained in the Interim DIP Order could be read to permit a Prepetition Credit Party to

receive a windfall where the value of its collateral decreased by $1 million at one Debtor but, in

the aggregate, increased by $10 million, as such creditor would still receive a $1 million

superpriority claim.

### 4.    The Payment of Postpetition Interest Should Be Subject to Disgorgement or Recharacterization

40.     The DIP ABL Facility provides for adequate protection of cash payment of

postpetition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit

Agreement as such interest becomes due and payable.  Interim DIP Order ¶ 18(a).  The right to

payment of postpetition interest, however, only exists if the creditor is oversecured.  *See* 11 U.S.C.

§ 506(b); *Orix Credit Alliance v. Delta Res. (In re Delta Res.)*, 54 F.3d 722, 729 (11th Cir. 1995)

("[T]he oversecured creditor's allowed secured claim for postpetition interest is limited to the

amount that a creditor was oversecured at the time of filing."); *see also In re Lane*, 108 B.R. 6, 8

(Bankr. D. Mass. 1989) ("[T]he oversecured creditor does not necessarily even have the right to

collect accruing interest and costs from the collateral."); 3 Collier On Bankruptcy ¶ 361.02[2][a]

(16th Ed. 2018) ("[A]dequate protection is not intended to protect a creditor's right to continue to accrue interest.").

41.    While the UCC hopes and expects that the Prepetition ABL Credit Parties are oversecured by the Prepetition ABL Collateral, in the event it is determined during these cases that the Prepetition ABL Credit Parties were not fully secured as of the Petition Date, the Debtors and the UCC must be able to seek disgorgement and recharacterization of any postpetition interest payments made to the Prepetition ABL Credit Parties.  Accordingly, the UCC requests that the DIP ABL Facility be modified such that all amounts paid as adequate protection be subject to recharacterization as payments of principal of the outstanding Prepetition ABL Obligations or disgorgement, as applicable, in the event it is determined that the Prepetition ABL Credit Parties are undersecured.

**E.    Adequate Safeguards Must be Added with Respect to Postpetition Intercompany Claims in Both the DIP ABL Facility and the Final Cash Management Order**

42.    The DIP ABL Facility inappropriately subordinates Postpetition Intercompany Obligations to the DIP ABL Secured Obligations and the Adequate Protection Claims.

43.    The Debtors operate a complex cash management system involving many different entities and have creditors with claims at various Debtor entities.  Moreover, the Prepetition ABL Credit Parties' claims are secured only by certain collateral at certain Debtor entities—they do not have liens in all of the Debtors' assets.  In order to ensure the integrity of the Postpetition Intercompany Obligations, preserve the value of each Debtor and ensure that no creditor is prejudiced because of a Postpetition Intercompany Transaction, appropriate safeguards must be implemented to prevent value being transferred from one Debtor to another Debtor or from a Debtor to a non-Debtor affiliate without appropriate consideration in return.

44. By the Cash Management Motion, the Debtors seek to implement such protections by granting administrative expense priority to Postpetition Intercompany Claims. These protections fall short, however, as these administrative expense claims would be "junior in all respects to the administrative expense priority claims granted pursuant to the DIP Orders"— administrative expense priority claims that are overbroad and violate applicable law. Accordingly, modifications must be made (i) to the Final DIP Order to limit subordination of Postpetition Intercompany Obligations and related liens only to the DIP ABL Obligations and (ii) to the Final Cash Management Order to provide appropriate protections with respect to Postpetition Intercompany Transactions such that (x) no Debtor entity benefits inappropriately through such transactions and (y) no non-Debtor entity retains value for the benefit of its creditors in connection with the Debtors' funding obligations.

45. In addition, the Final Cash Management Order should be modified to:

- provide that the UCC reserves all rights with respect to cost allocations;

- clarify that the Debtors will provide the UCC with a weekly summary of intercompany transactions (both cash and non-cash, but excluding ordinary cash movements due to centralized cash management system) between Debtors and non-Debtors, including entities involved and purpose of transaction; and

- provide the UCC with 5 business days' advance notice before transferring any value (both cash and non-cash) from Debtors to non-Debtors in excess of $1 million.

## F. Liens on Avoidance Action Proceeds Should Be Preserved for Unsecured Creditors

46. The Interim DIP Order provides that the DIP ABL Lenders and Prepetition Credit Parties will seek to obtain liens in the proceeds of Avoidance Actions (the "Avoidance Action Proceeds") upon entry of the Final DIP Order, Interim DIP Order §(iv)(b). The grant of liens on the Avoidance Action Proceeds, however, is at odds with the unique purposes served by avoidance actions.

20

47.    While there is no per se rule prohibiting a debtor from pledging avoidance actions or their proceeds as security for postpetition financing or as adequate protection, a fact intensive inquiry is required to determine if the pledge is appropriate.  *See In re AppliedTheory Corp.*, Nos. 02-11868 through 02-11874, 2008 WL 1869770, *1 (Bankr. S.D.N.Y. Apr. 24, 2008) (allowing a superpriority claim on avoidance action proceeds where necessary as adequate protection). Avoidance actions and the proceeds thereof uniquely are designed to benefit all ***unsecured*** creditors.  *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 244 (3d Cir. 2000) (identifying underlying intent of avoidance powers to recover valuable assets for estate's benefit) (emphasis added); *In re Worldcom, Inc.*, 401 B.R. 637, 645-46 (Bankr. S.D.N.Y. 2009) (observing that avoidance actions belong to the creditors of the Debtor's estates, not the Debtor itself); *Bethlehem Steel Corp. v. Moran Towing Corp.* (*In re Bethlehem Steel Corp.*), 390 B.R. 784, 786-87 (Bankr. S.D.N.Y. 2008) ("Avoidance actions ... never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee or debtor in possession ....").

48.    The Debtors have not provided any justification for the grant of liens on the Avoidance Action Proceeds or for the potential payment of Superpriority Claims with the proceeds thereof, particularly under the facts and circumstances of these cases.  Specifically, the DIP ABL Lenders should not be permitted to syphon potentially significant value from unsecured creditors where the DIP ABL Lenders are seeking to roll-up $1.53 billion of debt while providing only $300 million of incremental value.  In addition, the Prepetition Credit Parties are not entitled to receive adequate protection liens and claims in Avoidance Action Proceeds when their prepetition collateral was limited to certain assets at specified Debtor entities.  Moreover, the grant of (i) liens to the DIP ABL Lenders and (ii) adequate protection liens to the Prepetition Credit Parties on

21

Avoidance Action Proceeds is inappropriate where such actions may provide a material source of recovery for general unsecured creditors and may include actions against each of the Prepetition Credit Parties, primarily ESL. Thus, in the event the Court approves the grant of liens in the Avoidance Action Proceeds, such liens must be limited to exclude any Avoidance Action Proceeds against any of the Prepetition Credit Parties, especially ESL. Avoidance Action Proceeds similarly should not be used to satisfy the Superpriority Claims.

**G.    The Case Milestones and Events of Default in the DIP ABL Facility Provide the DIP ABL Lenders with Undue Control of These Cases and are Designed to Hinder the Debtors' Reorganization**

49.    The DIP ABL Term Sheet contains Case Milestones and proposed Events of Default that may be tripped by events outside the Debtors' control or by the Debtors in the exercise of their fiduciary obligations. Each of the problematic Case Milestones and Events of Default set forth in the DIP ABL Term Sheet is addressed below and must be stricken or modified to ensure that the Debtors are not held hostage by the DIP ABL Lenders:

- Failure to Comply with Covenants (page 23 C.): Section C. provides for an event of default for failure to comply with covenants, including, among other things, the Go Forward Plan and the Case Milestones. The Case Milestones provide for the timing of these chapter 11 cases with specified dates for, among other things, (i) the filing and confirmation of an Acceptable Plan of Reorganization which must provide for the payment in full in cash of the DIP ABL Obligations at emergence and contain releases and other exculpatory provisions for the DIP Credit Parties, Prepetition Credit Parties, and the Joint Lead Arrangers and must be in form and substance satisfactory to the Agent in its sole and absolute discretion and (ii) the deadline for the Debtors to obtain and find acceptable a non-contingent and fully-financed stalking horse bid for the sale of the Go Forward Stores. This provision must be modified to eliminate an automatic Event of Default in the event a plan is confirmed that does not provide for the payment in full of the Prepetition ABL Facilities and all conditions with respect to the Going Concern Sale must be eliminated as it remains to be seen whether such process should proceed and, if it does, whether it will be successful.

- Waiver of Bankruptcy Code Section 506(c) (page 24 H.(vi) / Page 26 T.): Sections H.(vi) and T provide for an event of default in the event the Final DIP Order, does not include waivers of Bankruptcy Code section 506(c), 552(b) and the equitable doctrine of marshaling for the benefit of the DIP ABL Credit Parties and the

22

Prepetition Credit Parties, which include the Prepetition Second Lien Credit Parties. The UCC does not take issue with such waivers solely as they relate to the Prepetition ABL Credit Parties solely with respect to the Prepetition ABL Collateral, or to the DIP ABL Lenders solely in respect of the DIP ABL Collateral. However, the contemplated waivers are overbroad and should not extend to the Prepetition Second Lien Credit Parties and their collateral, particularly where ESL, an insider under investigation in these cases, holds over 70% of the second lien debt.

- <u>Participation in Adversary Proceeding (page 25 O.)</u>:  Section O. provides for an event of default in the event the DIP ABL Loan Parties or any of their subsidiaries shall obtain court authorization to commence, or shall commence, join in, assist, acquiesce to, or otherwise participate as an adverse party in any suit or other proceeding against, among others, the DIP ABL Lenders or the Prepetition ABL Lenders.  This provision is too broad as it would create an event of default were the Debtors to assist in an adversary proceeding commenced by the UCC and the Debtors were to provide the UCC with information requested in connection therewith.  The Debtors must be able to comply with discovery without the threat of an event of default under the DIP ABL Facility.

- <u>Successful Lien Challenge (page 25 R.)</u>:  Section R. provides for an event of default in the event that the UCC or any other party is successful in a challenge with respect to any of the obligations under the DIP ABL Facility, the DIP Loan Documents, any Prepetition Facility or the Prepetition ABL Credit Agreement or related agreements.   An event of default resulting from any successful challenges with respect to prepetition claims should not be countenanced.

## H.    Additional Modifications Should be Made to the Proposed DIP ABL Facility

50.    The UCC is troubled by certain other provisions of the proposed DIP ABL Facility, including the DIP ABL credit agreement (the "<u>DIP ABL Credit Agreement</u>")[18] and, as a condition to approval thereof, requests that the following provisions and those set forth in the UCC's mark-up of the Interim DIP Order attached hereto as **Exhibit B**, be clarified or modified, as appropriate:

- Debtors' Stipulations regarding the validity, perfection, and priority of Prepetition ABL Liens and Prepetition ABL Obligations should carve out ESL from all stipulations, not just the Debtors' Stipulation that the Debtors have no claims,

---

[18]    The Debtors provided the UCC with a draft DIP ABL Credit Agreement (the "<u>Draft DIP ABL Credit Agreement</u>").  The objections raised herein refer to the Draft DIP ABL Credit Agreement based upon the expectation that the filed DIP ABL Credit Agreement will contain the same or similar provisions.  The UCC reserves its right to modify the objections contained herein and/or add additional objections to the DIP ABL Credit Agreement once it is filed and prior to the hearing on the DIP Financing Motion.

objections, challenges or causes of action, including Avoidance Actions, against any of the Prepetition ABL Credit Parties.

- The grant of DIP ABL Collateral liens in connection with real property leases should be limited to the proceeds of leased real property and should not extend to the grant of liens on any real property leases, themselves.

- The Permitted Variance Test, in its current form, provides the Debtors with an approximately $15-$40 million net permitted variance based on the Initial Budget on a rolling four week basis and includes professional fees.  While this may appear to be a substantial cushion, with the Debtors' estimating approximately $700 million of receipts and $650 million of operating disbursements over an average four-week period, a variance of $15-$40 million is a small fraction that easily could be tripped.  The DIP ABL Facility should be modified to provide for a gross disbursements test or a flat net variance permitted amount of over $50 million instead of the current Permitted Variance Test and to exclude professional fees.

- The Carve-Out in its current form expressly limits the use of the Carve-Out for the payment of any consummation fees to the Debtors' financial advisors and expressly prohibits payment of the consummation fees of the UCC's investment banker.  The Carve-Out should be modified to include the payment of any consummation fee approved by the Court in connection with the UCC's forthcoming application to retain Houlihan Lokey Inc. as its investment banker.

- The Interim DIP Order inappropriately provides the DIP ABL Lenders with control over these cases by granting them absolute discretion over a number of issues including, the payment of winddown costs from the Winddown Account, the Budget, and the Approved Initial Budget.  In addition, the Draft DIP ABL Credit Agreement provides the DIP ABL Lenders with similar inappropriate control in their absolute discretion over (i) documents and agreements related to liquidation, going concern and other sales, (ii) the appointment of a liquidation consultant and liquidation agent, and (iii) all material documents and filings relating to rejection or assumption of executory contracts, a plan of reorganization or liquidation, any DIP financing that does not pay the DIP ABL Facility in full, and any sale of collateral outside the ordinary course of business.  The DIP ABL Lenders are not fiduciaries and cannot control these cases.  Therefore, the DIP ABL Lenders' discretion for approval must be limited by a reasonableness qualifier.

- The Interim DIP Order specifies that, notwithstanding anything to the contrary in the Interim DIP Order, the DIP ABL Loan Documents, or the Prepetition Loan Documents, the Restructuring Committee and the Restructuring Subcommittee shall not be prohibited from investigating or pursuing any causes of action against ESL, or from funding such actions from the proceeds of the DIP Loans or the Carve-Out.  This provision should be modified to provide the UCC with the same unfettered ability to investigate and pursue actions against ESL in the exercise of its fiduciary duties.

- The right to credit bid should be clarified to limit such right of (i) the DIP ABL Lenders to credit bid only the amount of the $300 million incremental new value, and (ii) and the Prepetition ABL Credit Parties to credit bid their outstanding claims and obligations solely in connection with the sale or any portion of the DIP ABL Collateral that was also the Prepetition ABL Collateral.

- The UCC should be provided with all reporting and notices to the Debtors. Specifically, the UCC should be provided with any Termination Notice, notice of any modification of any DIP ABL Loan Documents, inventory appraisals, the 13-week cash flows, DIP borrowing base, Rolling Budget, Weekly Flash Reporting Package and Budget Variance Report.

- In the event the Debtors seek an emergency hearing for the purpose of contesting a Termination for the contested use of Cash Collateral, the issues raised at the hearing should not be limited to whether a Termination Event has occurred and/or is continuing.  Such limitation is inconsistent with the purpose of such hearing.

- The Preservation of Rights in paragraph 54(b) of the Interim DIP Order provides, certain rights to the DIP ABL Lenders and the Prepetition ABL Credit Parties, including terminating the Debtors' right to use Cash Collateral, in the event of certain occurrences prior to the indefeasible payment in full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations.  This provision should be modified to provide such rights only in the event such specified circumstances occur prior to the payment of the DIP ABL Secured Obligations and not prior to the payment of the Prepetition ABL Obligations.

- The Permitted Debt clause of the Draft DIP ABL Credit Agreement provides that debt in existence on the closing date and scheduled on Schedule 1.04 is permitted only if it was permitted under the Prepetition ABL Facility.  This provision is irrelevant in light of the Debtors' chapter 11 cases and, therefore, should be stricken.

- The Draft DIP ABL Credit Agreement currently contemplates execution of a Junior DIP as a condition precedent.  As the Debtors continue to evaluate the GA Junior DIP and any other Junior DIP options presented to them, executing a Junior DIP as a condition precedent should be stricken to afford the Debtors sufficient opportunity to ensure the terms of the GA Junior DIP or any other Junior DIP options presented to them maximize value for their estates.

- The Draft DIP ABL Credit Agreement provides that all amendments or modifications to the Junior DIP have to be approved by the required lenders.  This provision should be modified to provide that only modifications that are adverse to the DIP ABL Lenders require consent by the required lenders.

## RESERVATION OF RIGHTS

51.    The UCC has served discovery on the Debtors and other parties in connection with the DIP ABL Facility and any proposed Junior DIP.  The Debtors' document production is not complete, and the parties are in the process of finalizing a deposition schedule.  Accordingly, as of the date of this Objection, the UCC's advisors continue to perform diligence relevant to the DIP ABL Facility and any additional postpetition financing the Debtors may seek.  Accordingly, this Objection is submitted without prejudice to, and with a full reservation of, the UCC's rights to supplement and amend this Objection based on discovery and any additional filings made by the Debtors, including, but not limited to, the GA Junior DIP, the proposed Final DIP Order and the DIP ABL Credit Agreement, by filing of a declaration in support thereof, to introduce evidence at any hearing on the DIP Financing Motion and Cash Management Motion, and to further object to such motions on any grounds that may be appropriate.

## CONCLUSION

WHEREFORE, the UCC respectfully requests that the Court (i) deny the DIP Financing Motion and the Cash Management Motion without requiring the material modifications set forth herein and in the attached exhibits, and (ii) grant the UCC such other and further relief as is just, proper and equitable.

New York, New York
Dated:  November 14, 2018

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/  *Ira S. Dizengoff*
     Ira S. Dizengoff
     Philip C. Dublin
     Abid Qureshi
     Alexis Freeman
     One Bryant Park
     New York, New York 10036
     Telephone: (212) 872-1000
     Facsimile: (212) 872-1002
     idizengoff@akingump.com
     pdublin@akingump.com
     aqureshi@akingump.com
     afreeman@akingump.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*

## EXHIBIT A

### Chart of Borrowers/Issuers and Guarantors
### under the Prepetition Credit Facilities[1]

| Debtors[2] | 1L Credit Facility and Stand-Alone L/C Facility | 2L Term Loan / 2L Line of Credit | 2L Alternative Tranche Line of Credit | 2L Notes / 2L PIK Notes |
|---|---|---|---|---|
| A&E Factory Service, LLC | ✓ | ✓ | ✓ | ✓ |
| A&E Home Delivery, LLC | ✓ | ✓ | ✓ | ✓ |
| A&E Lawn & Garden, LLC | ✓ | ✓ | ✓ | ✓ |
| A&E Signature Service, LLC | ✓ | ✓ | ✓ | ✓ |
| Big Beaver of Florida Development, LLC | | | | |
| BlueLight.com, Inc. | | | | |
| California Builder Appliances, Inc. | ✓ | ✓ | ✓ | ✓ |
| FBA Holdings Inc. | | | | |
| Florida Builder Appliance, Inc. | ✓ | ✓ | ✓ | ✓ |
| Innovel Solutions, Inc. | | | | |
| KBL Holding Inc. | | | | |
| KLC, Inc. | ✓ | ✓ | ✓ | ✓ |
| Kmart Corporation | Co-Borrower | Co-Borrower | ✓ | ✓ |
| Kmart Holding Corporation | ✓ | ✓ | ✓ | ✓ |
| Kmart of Michigan, Inc. | ✓ | ✓ | ✓ | ✓ |
| Kmart of Washington LLC | ✓ | ✓ | ✓ | ✓ |
| Kmart Operations LLC | ✓ | ✓ | ✓ | ✓ |
| Kmart Stores of Illinois LLC | ✓ | ✓ | ✓ | ✓ |
| Kmart Stores of Texas LLC | ✓ | ✓ | ✓ | ✓ |
| Kmart.com LLC | ✓ | ✓ | ✓ | ✓ |
| MaxServ, Inc. | | | | |

---

[1]    As marked as (i) Borrower, Co-Borrower or Issuer or (ii) "✓" mark (meaning Guarantor).

[2]    All Debtors are obligors with respect to the DIP ABL Facility and have provided liens on all of their assets in connection therewith.  In addition, all Debtors are granting Adequate Protection Liens and Superpriority Claims in all of their assets in connection with the DIP ABL Facility.

| Debtors[2] | 1L Credit Facility and Stand-Alone L/C Facility | 2L Term Loan / 2L Line of Credit | 2L Alternative Tranche Line of Credit | 2L Notes / 2L PIK Notes |
|---|---|---|---|---|
| MyGofer LLC | ✓ | ✓ | ✓ | ✓ |
| Private Brands, Ltd. | ✓ | ✓ | ✓ | ✓ |
| Sears Brands Business Unit Corporation | | | | |
| Sears Brands Management Corporation | ✓ | ✓ | ✓ | ✓ |
| Sears Brands, L.L.C. | | | | |
| Sears Buying Services, Inc. | | | | |
| Sears Development Co. | | | | |
| Sears Holdings Corporation | ✓ | ✓ | Borrower | Issuer |
| Sears Holdings Management Corporation | ✓ | ✓ | ✓ | ✓ |
| Sears Holdings Publishing Company, LLC | | | | |
| Sears Home & Business Franchises, Inc. | | | | |
| Sears Home Improvement Products, Inc. | ✓ | ✓ | ✓ | ✓ |
| Sears Insurance Services, L.L.C. | | | | |
| Sears Operations LLC | ✓ | ✓ | ✓ | ✓ |
| Sears Procurement Services, Inc. | | | | |
| Sears Protection Company | ✓ | ✓ | ✓ | ✓ |
| Sears Protection Company (Florida), L.L.C. | ✓ | ✓ | ✓ | ✓ |
| Sears Protection Company (PR) Inc. | | | | |
| Sears Roebuck Acceptance Corp. | Co-Borrower | Co-Borrower | ✓ | ✓ |
| Sears, Roebuck and Co. | ✓ | ✓ | ✓ | ✓ |
| Sears, Roebuck de Puerto Rico, Inc. | ✓ | ✓ | ✓ | ✓ |
| ServiceLive Inc. | | | | |
| SHC Desert Springs, LLC | | | | |
| SOE, Inc. | ✓ | ✓ | ✓ | ✓ |
| StarWest, LLC | ✓ | ✓ | ✓ | ✓ |

EXHIBIT A-2

| Debtors[2] | 1L Credit Facility and Stand-Alone L/C Facility | 2L Term Loan / 2L Line of Credit | 2L Alternative Tranche Line of Credit | 2L Notes / 2L PIK Notes |
|---|---|---|---|---|
| STI Merchandising, Inc. | | | | |
| SYW Relay LLC | | | | |
| Troy Coolidge No. 13, LLC | | | | |
| Wally Labs LLC | | | | |

**EXHIBIT B**

**Mark-Up of Interim DIP Order Reflecting UCC's Comments**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors. [1] | : | **(Jointly Administered)** |

---------------------------------------------------------------x

<b><s>INTERIM</s>FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN<br>
POST-PETITION FINANCING, (B) GRANT SENIOR SECURED<br>
PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE<br>
CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE<br>
PROTECTION TO THE PREPETITION  SECURED PARTIES; (III) MODIFYING<br>
THE AUTOMATIC STAY; AND (IV) <s>SCHEDULING FINAL HEARING; AND (V)</s><br>
GRANTING RELATED RELIEF</b>

Upon the motion (the "Motion") of Sears Holdings Corporation ("Holdings") and its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking entry of an interim order (this "Interim Order") and a final order (<s>the</s>this "Final Order" and, together

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

with the Interim Order, the "DIP Orders") providing for, among other things, the following relief, as modified hereby:

(i)     authorizing Sears Roebuck Acceptance Corp., a Delaware corporation, ("SRAC"), and Kmart Corporation, a Michigan corporation ("Kmart", and, together with SRAC, the "DIP ABL Borrowers") to borrow, and each of the other Debtors, to guarantee (in such capacity, the "DIP ABL Loan Guarantors" and, together the with the DIP ABL Borrowers, the "DIP ABL Loan Parties"), a senior secured superpriority priming non-amortizing debtor-in-possession asset-based credit facility (the "DIP ABL Facility"), in an aggregate principal amount of up to $1,830,378,380 billion on the terms and conditions set forth, initially, in the DIP ABL Term Sheet, an execution copy of which is attached to the Motion as Exhibit B and attached hereto as Exhibit B (the "DIP ABL Term Sheet") pending upon entry of the Final Order, and, from and after the Final Closing Date (as defined DIP ABL Term Sheet), a credit agreement in the form to be filed prior to the Final Hearing the [Debtor in Possession Credit Agreement] (the "DIP ABL Credit Agreement"), among the Debtors, Bank of America, N.A., as administrative agent (in such capacity, the "DIP ABL Administrative Agent"), Bank of America, N.A. and Wells Fargo Bank, National Association, each as a co-collateral agent (each in such capacity, a "DIP ABL Co-Collateral Agent", and together with the DIP ABL Administrative Agent, the "DIP ABL Agents"), the revolving lenders from time to time party thereto (the "DIP ABL Revolving Lenders"), and the term lenders from time to time party thereto (the "DIP ABL Term Lenders", and together with the DIP ABL Revolving Lenders, the "DIP ABL Lenders" and, together with the DIP ABL Agents and the DIP ABL Cash Management/Bank Product Providers (as defined below), the "DIP ABL Credit Parties") attached hereto, allocated and made available to the DIP ABL Borrowers as follows:

(a)     upon entry of this Interim Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet and this Interim Final Order, (x) an asset-based revolving credit facility with aggregate initial commitments of $188,110,759 (such commitments, the "Incremental DIP ABL Revolving Commitments," the advances made pursuant thereto, the "Incremental DIP ABL Revolving Advances," and such facility, the "Incremental DIP ABL Revolver"), including (i) a $50 million letter of credit subfacility made available upon entry of the Interim Order (the "Incremental DIP ABL L/C Subfacility"), and (ii) a $25 million discretionary swingline subfacility (the "Incremental DIP ABL Swingline Subfacility", the Incremental DIP ABL Revolving Advances, together with the obligations under the Incremental DIP ABL L/C Subfacility and the Incremental DIP ABL Swingline Subfacility, the "Incremental DIP ABL Revolving Extensions of Credit"), and (y) an asset-based term loan facility in an aggregate initial principal amount of $111,889,241 (the "Incremental DIP ABL Term Loan", and together with the Incremental DIP ABL Revolving Extensions of Credit", the "Incremental DIP ABL Obligations"));

(b)    upon entry of the Final Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet, the DIP ABL Loan Documents (as defined below), and the Final Order, a roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit (as defined below) beneficially owned by the DIP ABL Revolving Lenders that have agreed to participate in the Incremental DIP ABL Revolver (the "Roll Up DIP ABL Revolving Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Revolving Extensions of Credit", and together with the Incremental DIP ABL Revolving Extensions of Credit, the "DIP ABL Revolving Extensions of Credit"; and such loans, the "Roll Up DIP ABL Revolving Advances", and together with the Incremental DIP ABL Revolving Advances, the "DIP ABL Revolving Advances", the commitments to make such DIP ABL Revolving Advances, the "DIP ABL Revolving Commitments"), which, with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations shall roll into a letter of credit subfacility (the Incremental DIP ABL L/C Subfacility, together with such rolled up participations, the "DIP ABL L/C Subfacility") and any prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (ii) all of the Prepetition ABL Term Loans (as defined below) beneficially owned by the DIP ABL Term Lenders that have agreed to participate in the Incremental DIP ABL Term Loan (the "Roll Up DIP ABL Term Lenders", and together with the Roll Up DIP ABL Revolving Lenders, the "Roll Up DIP ABL Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Term Loans", and together with the Incremental DIP ABL Term Loan, the "DIP ABL Term Loans" and the Roll UP DIP ABL Term Loans together with the Roll Up DIP ABL Revolving Extensions of Credit, the "Roll Up DIP ABL Obligations," and such transactions, the "ABL Roll Up", and the Roll Up DIP ABL Obligations, together with the Incremental DIP ABL Obligations and all other obligations under the DIP ABL Loan Documents, the "DIP ABL Obligations"), and (iii) Bank Products (as defined under the Prepetition ABL Credit Agreement other than those under the Prepetition LC Facility Agreement (as defined below)) and Cash Management Obligations (as defined under the Prepetition ABL Credit Agreement);

(ii)    authorizing the DIP ABL Loan Parties to execute, deliver and abide by (x) the DIP ABL Term Sheet pending entry of the Final Order, (y) the DIP ABL Credit Agreement upon entry of the this Final Order, and (zy) any other agreements, instruments, pledge agreements, guarantees, control agreements and other loan documents related to any of the foregoing (including any security agreements, intellectual property security agreements, notes, blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements

3

(including any intercompany subordination agreements), and freight forwarder agreements, and all Uniform Commercial Code filings and all filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors) (each of the foregoing, as amended, restated, supplemented, waived, and/or modified from time to time prior to the Petition Date, and ~~collectively,~~together with ~~the DIP ABL Term Sheet and~~ the DIP ABL Credit Agreement after entry of the Final Order, the "DIP ABL Loan Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Loan Documents;

(iii)    authorizing the DIP ABL Administrative Agent to terminate any of its obligations under the DIP ABL Loan Documents upon the occurrence and continuance of Termination Event (as defined below), which includes an Event of Default (as defined in the DIP ABL Loan Documents);

(iv)    To secure all DIP ABL Obligations and all obligations under any cash management services and bank products, including obligations in respect of the BofA Credit Card Program (as defined in the DIP ABL Term Sheet), but excluding obligations under or in connection with the Prepetition LC Facility Agreement (as defined below) (the "DIP ABL Cash Management/Bank Product Obligations", and collectively with the DIP ABL Obligations, the "DIP ABL Secured Obligations") entered into with any DIP ABL Lender, any DIP ABL Agent or any of their respective affiliates as of the Petition Date or at the time of entering into such arrangements (each, a "DIP ABL Cash Management/Bank Product Provider"), granting to the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all DIP ABL Credit Parties, in accordance with the relative priorities set forth in the DIP Orders, and in each case subject to the Carve-Out (as defined below):

(a)    pursuant to ~~section~~sections 364(c)(1), 503(b), and 507(a)(2) of ~~chapter 11 of~~ title 11 of the United States Code (the "Bankruptcy Code"), superpriority allowed administrative priority expense claims in each of the DIP ABL Loan Parties' Chapter 11 Cases and any Successor Cases (as defined below);

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, an automatically perfected first priority security interest in and lien on all property of the DIP ABL Loan Parties' estates that is not subject to a valid and perfected lien on the Petition Date, ~~including, upon entry of the Final Order, the~~other than Avoidance Action Proceeds (as defined below);

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, an automatically perfected junior priority security interest in and lien on all property of the DIP ABL Loan Parties' estates (other than Prepetition ABL Collateral (as defined below)) that is subject to valid and perfected security interests in favor of third parties as of the Petition Date (as defined below); and

(d)      pursuant to section 364(d) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Prepetition ABL Collateral, *pari passu* with the Roll Up DIP ABL Liens (as defined below) on the Prepetition ABL Collateral, subject only to any Permitted Prior Liens (as defined below);

(v)      authorizing and directing the DIP ABL Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Loan Documents as they are earned, due and payable in accordance with the terms of the DIP ABL Loan Documents and the DIP Orders;

(vi)     authorizing the DIP ABL Loan Parties, solely in accordance with the Approved Budget (as defined below), the DIP ABL Loan Documents and the DIP Orders, to use the Prepetition ABL Collateral, including "Cash Collateral" (as defined in section 363 of the Bankruptcy Code) of the Prepetition Credit Parties;

(vii)    granting adequate protection to the Prepetition Credit Parties (as defined below) for any diminution in value resulting from the imposition of the automatic stay, the DIP ABL Loan Parties' use, sale, or lease of the Prepetition Collateral and the priming of their respective liens and interests in the Prepetition Collateral (including by the Carve-Out);

(viii)   solely upon entry of the Final Order, the waiver by the DIP ABL Loan Parties of (a) any right to surcharge the DIP ABL Collateral (solely as such pertains to the DIP ABL Lenders) and the Prepetition ABL Collateral (solely as such pertains to the Prepetition ABL Lenders) pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the "equities of the case" exception in section 552(b) of the Bankruptcy Code (solely as such pertains to the Prepetition ABL Lenders), and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and Prepetition ABL Collateral; and

(ix)     vacating and modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Orders and the DIP ABL Loan Documents; and.

(x)      pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), requesting an initial hearing on the Motion be held before the Bankruptcy Court to consider entry of the Interim Order (the "Interim Hearing") to authorize on an interim basis (a) borrowing under the DIP ABL Loan Documents in an aggregate amount of up to $300 million and (b) the use of the Prepetition ABL Collateral, including Cash Collateral in accordance with the Approved Budget; and

(xi)     scheduling a final hearing (the "Final Hearing") to approve the Motion and consider entry of the Final Order.

The Interim Hearing and the final hearing on the Motion (the "Final Hearing") having been held before the Bankruptcy Court on October 15, 2018 and November 27, 2018, respectively, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and upon the record made by the DIP ABL Loan Parties at the Interim Hearing and Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]**

A.      *Petition Date*.  On October 15, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.      *Joint Administration*.  On the Petition Date, the Bankruptcy Court entered an order approving the joint administration of the Chapter 11 Cases.

C.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

D.      *Official Committees*.  No trustee or examiner orThe official committee of unsecured creditors (athe "Creditors' Committee") or any other statutory committee has beenwas appointed in these Chapter 11 Cases as of the date of this Interim Orderon October 24, 2018.

E.      *Jurisdiction and Venue*.  The Bankruptcy Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant

---

[2]    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

F.  *Notice*.  Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other further notice of the Motion or the entry of this ~~Interim~~Final Order shall be required~~, except as set forth in paragraph 56 below.  The interim relief granted herein is necessary to avoid immediate and irreparable harm~~ to the Debtors' estates~~.~~.

G.  *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, the Debtors, on their behalf and on behalf of their estates, admit, acknowledge, agree, and stipulate to the following (collectively, the "Debtors' Stipulations"), subject to the provisions of paragraphs 40 and 41 below:

a.  *Prepetition ABL Credit Facilities*.  Pursuant to the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition ABL Credit Agreement), each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Documents"), by and among (i) SRAC and Kmart, as borrowers (the "Prepetition ABL Borrowers"), (ii) Holdings, as a guarantor (Holdings, together with the "Subsidiary Guarantors" (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties"), (iii) the banks, financial institutions and

other institutional lenders from time to time party thereto, as lenders (collectively, the "Prepetition ABL Lenders"), (iv) the "Issuing Lenders" (as defined in the Prepetition ABL Credit Agreement) from time to time party thereto (the "Prepetition ABL Issuing Lenders"), (v) Bank of America, N.A., as administrative agent (in such capacity, the "Prepetition ABL Administrative Agent"), as a co-collateral agent, and as swingline lender, (vi) Wells Fargo Bank, National Association, as a co-collateral agent (in such capacity, together with Bank of America, N.A. in such capacity, the "Prepetition ABL Co-Collateral Agents", and together with the Prepetition ABL Administrative Agent, the "Prepetition ABL Agents", and the Prepetition ABL Agents together with the Prepetition ABL Lenders, the swingline lender the Prepetition ABL Issuing Lenders, and the Prepetition ABL Cash Management/Bank Product Providers (as defined below) and the Prepetition LC Facility Credit Parties (as defined below), the "Prepetition ABL Credit Parties"), and (vii) the other parties from time to time party thereto, the Prepetition ABL Credit Parties provided the Prepetition ABL Loan Parties with a $1.5 billion asset-based revolving credit facility (the "Prepetition ABL Revolving Facility") including a $1.0 billion letter of credit subfacility (the "Prepetition ABL L/C Subfacility"), a term loan facility in an aggregate original principal amount of $1 billion (the "Prepetition ABL Term Loan Facility"), a term loan facility in an aggregate original principal amount of $750 million (the "Prepetition ABL 2016 Term Loan Facility"), and a "first-in, last-out" facility in an aggregate original principal amount of $125 million (the "Prepetition ABL 2018 FILO Facility," and the lenders under the Prepetition ABL 2018 FILO Facility, the "2018 FILO Lenders," and the Prepetition ABL 2018 FILO Facility, together with the Prepetition ABL Revolving Facility, the Prepetition ABL Term Loan Facility, and the Prepetition ABL 2016 Term Loan Facility, the "Prepetition ABL Facilities").

b.     ***Prepetition ABL Obligations.***     As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facilities was $1,530,378,380, comprised of (i) $836,034,649 outstanding amount of all Advances, including Swingline Advances under, and each as defined in, the Prepetition ABL Revolving Facility (the "Prepetition ABL Revolving Advances"); (ii) $123,567,481 ~~million~~ outstanding amount of all L/C Obligations under, and as defined in, the Prepetition ABL Revolving Facility (together with the Prepetition ABL Revolving Advances, the "Prepetition ABL Revolving Extensions of Credit"); (iii) $0 outstanding principal amount of term loans under the Prepetition ABL Term Loan Facility; (iv) $570,776,250 outstanding principal amount of term loans under the Prepetition ABL 2016 Term Loan Facility (the "Prepetition ABL Term Loans"); and (v) $125,000,000 outstanding principal amount of the Prepetition ABL 2018 FILO Facility; and together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, cash management services and bank products (the "Prepetition ABL Cash Management/Bank Product Obligations") entered into with any Prepetition ABL Lender, any Prepetition ABL Agent or any of their respective affiliates (each, a "Prepetition ABL Cash Management/Bank Product Provider"), including all obligations under that certain Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as amended, restated, supplemented or otherwise

9

modified from time to time prior to the Petition Date, the "Prepetition LC Facility Agreement"

and which constitutes a Prepetition ABL Loan Document), among Holdings, the Borrowers, JPP,

LLC, JPP II, LLC, Crescent 1, L.P., Canary SC Fund, L.P., CYR Fund, L.P., CMH VI, L.P., and

Cyrus Heartland, L.P., as L/C lenders (the "Prepetition LC Lenders"), and Citibank, N.A., as

administrative agent and as issuing bank (in such capacity, the "Prepetition LC Facility

Administrative Agent," and together with the Prepetition LC Lenders, the "Prepetition LC

Facility Credit Parties"), under which, as of the Petition Date, $271 million of letters of credit are

outstanding thereunder, and which obligations constitute Bank Products and an Other LC

Facility under and as defined in the Prepetition ABL Credit Agreement, and including all

"Obligations" as defined in the Prepetition ABL Credit Agreement, and all other amounts that

may become allowed or allowable under section 506(b) of the Bankruptcy Code, including

interest, fees, prepayment premiums, costs and other charges, (the "Prepetition ABL

Obligations").

       c. **_Prepetition ABL Liens and Prepetition ABL Collateral._** Pursuant to the

Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Documents, each

of the Prepetition ABL Guarantors unconditionally guaranteed, on a joint and several basis, the

punctual and complete performance, payment and satisfaction when due and at all times

thereafter of all of the Prepetition ABL Obligations. Pursuant to the Prepetition ABL Credit

Agreement and the other applicable Prepetition ABL Documents, the Prepetition ABL

Borrowers and the Prepetition ABL Guarantors granted to Bank of America, N. A., in its

capacity as a Prepetition ABL Co-Collateral Agent and as agent for the other Prepetition ABL

Co-Collateral Agent (in such capacity, the "Prepetition ABL Control Co-Collateral Agent"), for

the benefit of itself and all of the other Prepetition ABL Credit Parties, a first priority security

interest in and continuing lien on (the "Prepetition ABL Liens") all of the collateral identified in

the Prepetition ABL Documents, including, but not limited to, inventory, credit card accounts

receivables, pharmacy receivables, prescription lists, deposit accounts, cash and cash

equivalents, and proceeds, insurance claims and supporting obligations of the foregoing, together

with Cash Collateral, in all cases whether then owned or existing of thereafter acquired (but

excluding, for the avoidance of doubt, any Cash Collateral posted to the Prepetition LC Facility

Administrative Agent by the Prepetition LC Lenders under the Prepetition LC Facility

Agreement) (collectively, the "Prepetition ABL Collateral").

       d.     **_Agreement Among Lenders._**  JPP, LLC, JPP II, LLC, GACP II, L.P., and

Benefit Street 2018 LLC, as 2018 FILO lenders, ESL Investments, Inc., Wells Fargo Bank,

National Association, as a Prepetition ABL Co-Collateral agent, and Bank of America, N.A., as

Prepetition ABL Administrative Agent and as a Prepetition ABL Co-Collateral Agent, entered

into an Agreement Among Lenders, dated as of March 21, 2018 (as amended, restated,

supplemented or otherwise modified from time to time prior to the Petition Date, the "Agreement

Among Lenders").

       e.     **_Validity, Perfection, and Priority of Prepetition ABL Liens and_**

**_Prepetition ABL Obligations_**.  The Debtors hereby further acknowledge and agree that as of the

Petition Date:

        (i)     The Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the Prepetition ABL Documents;

        (ii)     The Prepetition ABL Liens on the Prepetition ABL Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to the Prepetition ABL Control Co-Collateral Agent, for the benefit of itself and all of the other Prepetition ABL Credit Parties for fair consideration and reasonably equivalent value;

        (iii)     The Prepetition ABL Liens are senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens senior

by operation of law or otherwise permitted to be senior under the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date) (the "Permitted Prior Liens");

(iv)     No portion of the Prepetition ABL Liens, the Prepetition ABL Obligations or any payments made to any Prepetition ABL Credit Party or applied to or paid on account of the Prepetition ABL Obligations prior to the Petition Date is subject to any contest, set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), recoupment, recovery, rejection, attack, effect, counterclaims, cross-claims, defenses, or any other challenge or claim (as defined in the Bankruptcy Code) of any kind, any cause of action or any other challenge of any nature under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation or otherwise by any person or entity;

(v)      The Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including any Avoidance Actions, against any of the Prepetition ABL Credit Parties (which shall exclude, for purposes of this stipulation, ESL Investments, Inc. or any of its affiliates) or any of their respective Representatives;

(vi)     The Debtors have, on behalf of each of their estates and any party that may try to claim by, through, or on behalf of the Debtors' estates, waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations or the validity, extent and priority of the Prepetition ABL Liens;

(vii)    The Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code; and

(viii)   The Debtors have been and are in default of their obligations under the Prepetition ABL Documents, including as a result of the Chapter 11 Cases, and an Event of Default (as defined in the Prepetition ABL Credit Agreement) has occurred and is continuing.

f.      ***Intercreditor Agreement.***  The Prepetition ABL Agents, for themselves

and the other Prepetition ABL Credit Parties, and the Prepetition Second Lien Collateral Agent,

for itself and the other Prepetition Second Lien Credit Parties, entered into a Second Amended

and Restated Intercreditor Agreement, dated as of March 20, 2018 (as amended, restated,

supplemented or otherwise modified from time to time prior to the Petition Date, the

"Intercreditor Agreement").

g.    None of the Debtors' Stipulations shall apply to ESL Investments, Inc. or any of its affiliates (the "ESL Affiliates") or any of the ESL Affiliates' affiliates (collectively, with ESL Investments, Inc. and the ESL Affiliates, "ESL").

**H.    *Certain Second Lien Debt.*** The following descriptions are set forth herein for definitional purposes only:

a.    ***Prepetition Second Lien 2010 Notes.*** Pursuant to the Indenture, dated as of October 12, 2010 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture Documents", together with the Prepetition Second Lien 2018 Indenture Documents (as defined below), the "Prepetition Second Lien Notes Documents"), by and among (i) Holdings, as issuer (in such capacity, and as issuer of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Issuer"), (ii) certain subsidiaries of Holdings, as guarantors (in such capacity, and as guarantors of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Guarantors") and (iii) Wilmington Trust, National Association, as trustee (in such capacity, the "Prepetition Second Lien 2010 Indenture Trustee") and as collateral agent (in such capacity, the "Prepetition Second Lien Collateral Agent"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Notes (as defined in the Prepetition Second Lien 2010 Indenture), due 2018 (together with any Exchange Securities (as defined in the Prepetition Second Lien 2010 Indenture) and any Additional Notes (as defined in the Prepetition Second Lien 2010 Indenture) issued under the Prepetition Second Lien 2010

Indenture, the "Prepetition Second Lien 2010 Notes" and the holders of such Prepetition Second Lien 2010 Notes, the "Prepetition Second Lien 2010 Notes Holders") and, pursuant to an Offering Memorandum (as defined in the Prepetition Second Lien 2010 Indenture), the Prepetition Second Lien Notes Issuer exchanged some of the Prepetition Second Lien 2010 Notes for the Prepetition Second Lien Convertible Notes (as defined below).

b.       *Prepetition Second Lien 2010 Notes Obligations.* As of the Petition Date, according to the Debtors' books and records, certain principal amounts of the obligations in respect of the Prepetition Second Lien 2010 Notes totaling approximately $89 million were outstanding, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien 2010 Notes Obligations").

c.       *Prepetition Second Lien Convertible Notes.* Pursuant to the Indenture, dated as of March 20, 2018, (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2018 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2018 Indenture Documents"), by and among (i) the Prepetition Second Lien Notes Issuer, (ii) the Prepetition Second Lien Notes Guarantors and (iii) Computershare Trust Company, N.A. as trustee (in such capacity, the "Prepetition Second Lien 2018 Indenture Trustee" and, together with the Prepetition Second Lien 2010 Indenture Trustee, the "Prepetition Second Lien Trustees", and, the Prepetition Second Lien Trustees, together with the Prepetition Second Lien Credit Agreement Agent and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Agents" and, together with the Prepetition ABL Administrative Agent, and the

Prepetition LC Facility Administrative Agent, the "Prepetition Agents"), the Prepetition Second

Lien Notes Issuer issued 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 (as

defined in the Prepetition Second Lien 2018 Indenture) (together with any PIK Interest Notes (as

defined in the Prepetition Second Lien 2018 Indenture) (or any increase in the principal amount

of a Global Note  (as defined in the Prepetition Second Lien 2018 Indenture) related to PIK

Interest (as defined in the Prepetition Second Lien 2018 Indenture)) and any Additional Notes

(as defined in the Prepetition Second Lien 2018 Indenture) issued under the Prepetition Second

Lien 2018 Indenture, the "Prepetition Second Lien Convertible Notes" and the holders of such

Prepetition Second Lien Convertible Notes, the "Prepetition Second Lien Convertible Notes

Holders" and, together with the Prepetition Second Lien 2010 Notes Holders, the "Prepetition

Second Lien Notes Holders").

        d.     ***Prepetition Second Lien Convertible Notes Obligations.*** As of the

Petition Date, according to the Debtors' books and records, certain principal amounts of

obligations were outstanding in respect of the Prepetition Second Lien Convertible Notes,

together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien

Convertible Notes Obligations", together with the Prepetition Second Lien 2010 Notes

Obligations, the "Prepetition Second Lien Notes Obligations").

        e.     ***Prepetition Second Lien Credit Agreement.***  Pursuant to the Second Lien

Credit Agreement, dated as of September 1, 2016 (as amended, restated, supplemented or

otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien

Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition Second

Lien Credit Agreement) and all other agreements and documents executed or delivered in

connection therewith, each as has been or may be amended, restated, supplemented, waived or

15

otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement Documents"), by and among (i) Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers (the "Prepetition Second Lien Credit Agreement Borrowers"), (ii) Holdings and the other Guarantors party thereto (as defined in the Prepetition Second Lien Credit Agreement) (the "Prepetition Second Lien Credit Agreement Guarantors" and, together with the Prepetition Second Lien Credit Agreement Borrowers, the "Prepetition Second Lien Credit Agreement Loan Parties", and the Prepetition Second Lien Credit Agreement Loan Parties, together with the Prepetition Second Lien Notes Issuer and the Prepetition Second Lien Notes Guarantors, the "Prepetition Second Lien Loan Parties"), (iii) the lenders from time to time party thereto (collectively, the "Prepetition Second Lien Credit Agreement Lenders"), (iv) JPP, LLC, as administrative agent and collateral administrator (in such capacities, the "Prepetition Second Lien Credit Agreement Agent", together with the Prepetition Second Lien Credit Agreement Lenders and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Credit Agreement Credit Parties" and, the Prepetition Second Lien Credit Agreement Credit Parties, together with the Prepetition Second Lien Trustees and the Prepetition Second Lien Notes Holders, the "Prepetition Second Lien Credit Parties", and, the Prepetition Second Lien Credit Parties, together with the Prepetition ABL Credit Parties, the "Prepetition Credit Parties") and (vi) the other parties from time to time party thereto, the Prepetition Second Lien Credit Agreement Credit Parties provided the Prepetition Second Lien Credit Agreement Borrowers with a secured term loan (the "Prepetition Second Lien Credit Agreement Term Facility"), and line of credit loans (the "Prepetition Second Lien Credit Agreement Line of Credit Facility" and, collectively with the Prepetition Second Lien Credit Agreement Term Facility, the "Prepetition Second Lien Credit Agreement Facilities").

f.      ***Prepetition Second Lien Credit Agreement Facilities Obligations.***  As of the Petition Date, according to the Debtors' books and records, certain principal amounts were outstanding under the Prepetition Second Lien Credit Agreement Facilities, comprised of (i) certain amounts under the Prepetition Second Lien Credit Agreement Term Facility and (ii) certain amounts under the Prepetition Second Lien Credit Agreement Line of Credit Facility, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Second Lien Credit Agreement Borrowers' or the Prepetition Second Lien Credit Agreement Guarantors' obligations pursuant to, or secured by, the Prepetition Second Lien Credit Agreement Documents, including all "Obligations" as defined in the Prepetition Second Lien Credit Agreement, and all other amounts that may become allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, the "Prepetition Second Lien Credit Agreement Obligations", together with the Prepetition Second Lien Notes Obligations, the "Prepetition Second Lien Obligations", and, together with the Prepetition ABL Obligations, the "Prepetition Obligations").

g.      ***Prepetition Second Lien Facilities Liens and Prepetition Second Lien Facility Collateral.***  Pursuant to the Prepetition Second Lien Notes Documents and the Prepetition Second Lien Credit Agreement Documents (collectively, the "Prepetition Second Lien Credit Documents" and, together with the Prepetition ABL Documents and the Intercreditor

17

Agreement, the "Prepetition Loan Documents"), each of the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Guarantors (collectively, the "Prepetition Second Lien Guarantors") unconditionally guaranteed, on a joint and several basis, the due and punctual payment of all the Prepetition Second Lien Obligations. Pursuant to the Prepetition Second Lien Credit Documents, the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Credit Parties granted to the Prepetition Second Lien Collateral Agent, for the benefit of itself, all of the Prepetition Second Lien Credit Parties, a second priority security interest in and continuing lien on (the "Prepetition Second Lien Facilities Liens", and together with the Prepetition ABL Liens, the "Prepetition Liens") all of the collateral identified in the Prepetition Second Lien Credit Documents, in all cases whether then owned or existing of thereafter acquired (collectively, the "Prepetition Second Lien Collateral," and together with the Prepetition ABL Collateral, the "Prepetition Collateral," and the property that constitutes Prepetition ABL Collateral, but which is not Prepetition Second Lien Collateral, the "Specified Non-Prepetition Second Lien Collateral").

**I.** *Validity of Prepetition Second Lien Obligations/Prepetition Second Lien Facilities Liens.* Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Second Lien Obligation and/or Prepetition Second Lien Facilities Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Second Lien Obligation, Prepetition Second Lien Facilities Lien and/or security interests. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the

case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Second Lien Obligations, Prepetition Second Lien Facilities Liens or Prepetition Second Lien Collateral.

**J.** *Validity of Prepetition Obligations/Prepetition Collateral Related to Debt Owned by ESL*. Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Obligation and/or Prepetition Lien in respect of any Prepetition Obligations owned by ESL (collectively, the "ESL Debt") is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged ESL Debt and/or security interests. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any ESL Debt or collateral securing any ESL Debt.

I**K.** *Cash Collateral.* The DIP ABL Loan Parties represent that all of the DIP ABL Loan Parties' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition ABL Collateral, constitutes Cash Collateral and is Prepetition ABL Collateral but not Prepetition Second Lien Collateral.

J**L.** *Permitted Prior Liens.* Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP ABL Credit Parties, the Prepetition Credit Parties, or the

Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. .For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Permitted Prior Liens. For the purposes hereof, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition ABL Liens and DIP ABL Liens (as defined below).

~~K~~M.    *Agreement Among Lenders and Intercreditor Agreement.*    Pursuant to section 510 of the Bankruptcy Code, the Agreement Among Lenders, the Intercreditor Agreement and any other intercreditor or subordination provisions contained in the Prepetition ABL Documents shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of, in the case of the Intercreditor Agreement, the Prepetition Credit Parties, and, in the case of the Agreement Among Lenders, the Prepetition ABL Credit Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this ~~Interim~~Final Order or otherwise and the modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified by the terms of this ~~Interim~~Final Order or the DIP ABL Loan Documents, unless expressly set forth herein or therein. ~~Solely for purposes of the Intercreditor Agreement, any repayment of the Prepetition ABL Obligations pursuant to this Interim Order shall not be deemed to constitute a "Discharge of ABL Obligations" as such term is used in the Intercreditor Agreement.~~

L.N.    ***Findings Regarding DIP Financing and Use of Cash Collateral.***

a.    ***Good Cause.***    Good cause has been shown for the entry of this ~~Interim~~Final Order.

b.    ***Request for Post-Petition Financing and Use of Cash Collateral.***    The DIP ABL Loan Parties have sought authority to enter into the DIP ABL Loan Documents.  The DIP ABL Credit Parties shall have no obligation to make or be deemed to have made loans, advances or other extensions of credit under the DIP ABL Facility except to the extent required under the respective DIP ABL Loan Documents and shall have no obligation to waive any conditions required thereunder.  The DIP ABL Loan Parties have sought authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, to administer their Chapter 11 Cases and fund their operations.

c.    ***Need for Post-Petition Financing and Use of Cash Collateral.***    The Debtors' need to use Cash Collateral and to obtain credit as set forth in the DIP ABL Loan Documents is immediate and critical in order to, among other things, enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships, pay employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP ABL Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, creditors and other stakeholders, and the possibility for maximizing the value of their businesses.  The Debtors do not have sufficient available sources of working capital and financing to operate their business or to maintain their properties in the ordinary course of business without the DIP ABL Facility and continued use of Cash Collateral.  Consummation of the financing contemplated by the DIP ABL Loan Documents and

the use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of this ~~Interim~~Final Order therefore are in the best interests of the Debtors' estates.

        d.     ***No Credit Available on More Favorable Terms.***  ~~Given their current financial condition, financing arrangements, and capital structure, despite diligent efforts, the DIP ABL Loan Parties are unable to reasonably obtain post-petition financing from sources other than the DIP ABL Lenders on terms more favorable than those set forth in the DIP ABL Loan Documents.~~ The DIP ABL Loan Parties have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The DIP ABL Loan Parties have also been unable to obtain secured credit from other sources: (a) solely having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; [(b) secured only by a lien on property of the DIP ABL Loan Parties and their estates that is not otherwise subject to a lien;] or (c) secured solely by a junior lien on property of the DIP ABL Loan Parties and their estates that is already subject to a prepetition lien.  Further, the Required Lenders (as defined in the Prepetition ABL Credit Agreement) are supportive of the priming of the Prepetition ABL Liens and ~~to~~ the use of their Cash Collateral only to the extent provided herein and under the DIP ABL Loan Documents. ~~Financing on a post-petition basis is not otherwise available without: (x) granting the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other DIP ABL Credit Parties (i) perfected security interests in and liens on (each as provided herein) all of the DIP ABL Loan Parties' existing and after-acquired assets with the priorities set forth herein; (ii) superpriority claims;~~ and (iii) the other protections set forth in this Interim Order, and (y) upon entry of the Final Order, providing for the roll-up of (i) all of the Prepetition ABL Revolving Extensions of Credit beneficially owned by the applicable DIP ABL Revolving~~

22

Lenders and (ii) all of the Prepetition ABL Term Loans beneficially owned by the applicable DIP ABL Term Lenders, in each case, upon the terms set forth in the Final Order and in the DIP ABL Credit Agreement.

e.   ***Use of Proceeds; Approved Budget.***  As a condition to entry into the DIP ABL Loan Documents, the extensions of credit under the DIP ABL Facility and the authorization to use Cash Collateral, the DIP ABL Lenders and Prepetition ABL Agents require, and the DIP ABL Loan Parties have agreed, that proceeds of the DIP ABL Facility and Cash Collateral shall be used in accordance with the terms of the DIP ABL Loan Documents, including the Approved Budget, which shall be subject to (a) such variances as may be permitted by the DIP ABL Loan Documents, (b) this ~~Interim~~Final Order, and (c) the Carve-Out.  The DIP ABL Loan Parties shall not directly or indirectly pay any expense or other disbursement other than those set forth herein, in the Approved Budget or the Carve-Out.  The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in this Final Order and the DIP ABL Loan Documents and solely in accordance with the Approved Budget (subject to the Carve-Out), including, to the extent provided therein, (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders to the extent provided in the DIP ABL Loan Documents) as set forth in the DIP ABL Loan Documents; (iii) payment of other such prepetition obligations as set forth in the Approved Budget, and as

approved by the Bankruptcy Court; and (iv) payment of certain adequate protection amounts to the Prepetition ABL Credit Parties as set forth in paragraph 1817 hereof.

> f. ***Willingness to Provide Financing.*** The DIP ABL Lenders have indicated a willingness to provide financing to the DIP ABL Loan Parties, subject to the entry of this Interim Order and conditioned upon entry of the Final Order, including findings that such financing and use of Cash Collateral is essential to the DIP ABL Loan Parties' estates, that the DIP ABL Lenders are extending credit to the DIP ABL Loan Parties as set forth in the DIP ABL Loan Documents and this Final Order in good faith, that the Prepetition ABL Credit Parties are permitting the use of Cash Collateral in good faith, and that the DIP ABL Credit Parties' and the Prepetition ABL Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order, the Final Order or any other order. As a condition to the entry into the DIP ABL Loan Documents and the extensions of credit under the DIP ABL Facility, the DIP ABL Loan Parties, the DIP ABL Agents, and the other DIP ABL Credit Parties have agreed that proceeds of DIP ABL Collateral and all payments and collections received by the DIP ABL Loan Parties shall be applied solely as set forth in the DIP ABL Loan Documents and the DIP Ordersthis Final Order.

> g. ***Business Judgment and Good Faith Pursuant to Section 364(e).*** The extension of credit under the DIP ABL Facility and the DIP ABL Loan Documents, and the authorization to use Cash Collateral on the terms set forth herein, isare fair, reasonable, and the best available to the DIP ABL Loan Parties under the circumstances, reflect the DIP ABL Loan Parties' exercise of sound and prudent business judgment, are supported by reasonably

equivalent value and fair consideration, and were entered into at arm's-length, ~~under no duress,~~ and without ~~undue influence,~~ negligence or violation of public policy or law. The DIP ABL Loan Documents, the DIP ABL Facility and the provisions regarding the use of Cash Collateral were negotiated in good faith and at arm's length among the DIP ABL Loan Parties, certain of the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, ~~under no duress, and~~ without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP ABL Facility, and the use of Cash Collateral, including in respect of the granting of the DIP ABL Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP ABL Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Use of Cash Collateral and any credit to be extended as set forth in this ~~Interim~~Final Order and in the DIP ABL Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and this ~~Interim~~Final Order, and therefore, the claims, security interests, liens, and other protections granted pursuant to this ~~Interim~~Final Order should be preserved to the extent provided for in this ~~Interim~~Final Order.

h.    ***Priming of Prepetition Liens.*** The priming of the Prepetition Liens on the Prepetition ABL Collateral by the DIP ABL Liens to the extent set forth in the DIP ABL Loan Documents and this ~~Interim~~Final Order will enable the DIP ABL Loan Parties to obtain the DIP ABL Facility and to continue to operate their businesses for the benefit of their estates and creditors. The Required Lenders (as defined in the Prepetition ABL Credit Agreement) support

25

—

such priming liens solely to the extent set forth in the DIP ABL Loan Documents and this ~~Interim~~Final Order, subject to receipt of adequate protection of their respective interests in the Prepetition ABL Collateral as set forth herein.  The Required Lenders (as defined in the Prepetition ABL Credit Agreement) have acted in good faith in supporting the (i) DIP ABL Loan Parties' use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of this ~~Interim~~Final Order, (ii) priming of the Prepetition ABL Liens by the DIP ABL Liens on Prepetition ABL Collateral to the extent set forth in the DIP ABL Loan Documents and this ~~Interim~~Final Order, and (iii) entry of this ~~Interim~~Final Order and the granting of the relief set forth herein, and their reliance on the assurances referred to herein is in good faith.

       i.     ***Adequate Protection for Prepetition ABL Credit Parties.***  The Prepetition ABL Credit Parties are entitled to, and shall receive, adequate protection as set forth in paragraphs ~~16~~15 through ~~18~~17 below solely to the extent of ~~any~~the aggregate net diminution in value of their interests in the Prepetition ABL Collateral pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code.  The adequate protection provided to the Prepetition ABL Credit Parties pursuant to the terms of this ~~Interim~~Final Order is necessary and appropriate in light of, among other things, (a) the DIP ABL Loan Parties' proposed use and sale of the Prepetition ABL Collateral, including Cash Collateral, (b) the granting of priming liens on the Prepetition ABL Collateral in connection with the DIP ABL Facility, (c) the potential decline in the value of the Prepetition ABL Collateral, and (d) the imposition of the automatic stay.

      ~~j.~~     ***~~Sections 506(c) and 552(b).~~***  ~~In the Final Order, the Debtors will seek a waiver, for the benefit of the DIP ABL Credit Parties and the Prepetition Credit Parties, of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any~~

similar doctrine with respect to the DIP ABL Collateral and the Prepetition ABL Collateral in light of (i) the subordination of their liens and superpriority claims, as applicable, to the Carve-Out, (ii) the use of Cash Collateral and the subordination of the Prepetition Obligations, Prepetition Liens, Adequate Protection Claims (as defined below) and Adequate Protection Liens (as defined below) to the Carve-Out, the DIP ABL Liens and the DIP ABL Superpriority Claims (as defined below), as applicable, and (iii) the Approved Budget covering all administrative costs projected by the DIP ABL Loan Parties.

k.    *Final Hearing.*  At the Final Hearing, the DIP ABL Loan Parties will seek final approval of the proposed post-petition financing arrangements, use of Cash Collateral and the ABL Roll Up pursuant to the Final Order, which shall be in form and substance acceptable to the DIP ABL Agents in their sole and absolute discretion.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order and no further notice, except as provided by this Interim Order, shall be required.

l.    *Immediate Entry.*  The DIP ABL Loan Parties have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Bankruptcy Rule 4001-2.  The authorization granted herein on an interim basis to use the Prepetition ABL Collateral, including Cash Collateral, to enter into the DIP ABL Loan Documents, and to borrow under the DIP ABL Facility is necessary to avoid immediate and irreparable harm to the DIP ABL Loan Parties and their estates during the period beginning on the date hereof through and including the earlier to occur of (i) the date of the entry of the Final Order by this Court and (ii) the Termination Date (as defined below).  This Court concludes that the entry of this Interim Order is in the best interests of the DIP ABL Loan Parties and their

27

~~estates and creditors because it will, among other things, allow the DIP ABL Loan Parties to meet payroll and other critical expenses and thereby maximize the value of their estates.~~

~~m~~j.     ***Notice.***     Notice of the ~~Interim~~Final   Hearing and the ~~emergency~~ relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest as set forth in the Motion.  ~~Under the circumstances, the~~The notice given by the Debtors of the Motion, the relief requested therein, and the ~~Interim~~Final Hearing constitutes adequate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     ***Motion Granted.***  The Motion is granted on ~~an interim~~a final basis solely to the extent set forth herein. For the avoidance of doubt, the request for the approval of the Roll Up (as defined in the Interim Order) is denied.

2.     ***Use of Prepetition ABL Collateral Approved.***  Subject to and consistent with the terms of the DIP ABL Loan Documents (as modified by this Final Order), this ~~Interim~~Final Order~~,~~ and the Approved Budget, the DIP ABL Loan Parties are hereby authorized to use the Prepetition ABL Collateral (including Cash Collateral) until the Termination Date to the extent set forth herein; provided, however, that during the Remedies Notice Period (as defined herein), the DIP ABL Loan Parties may use Cash Collateral solely to meet payroll obligations (but not severance obligations) and pay expenses that the DIP ABL Agents approve

as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Agents in their ~~sole and absolute~~reasonable discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph ~~20~~19 of this ~~Interim~~Final Order.

3.     ***Objections Overruled.*** All objections to and reservations of rights with respect to the ~~interim~~ relief sought in the Motion and to the entry of this ~~Interim~~Final Order to the extent not withdrawn or resolved are hereby overruled on the merits ~~in their entirety~~as set forth at the Final Hearing; provided, however, that any objections to the Roll Up are sustained and provisions contained in the DIP Loan Documents with respect to the Roll Up shall be deemed stricken.

**DIP ABL Facility Authorization**

4.     ***Authorization of the DIP ABL Loan Documents.*** The DIP ABL Loan Parties are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP ABL Loan Documents (as modified by this Final Order including with respect to the denial of the Roll Up) to be delivered pursuant hereto or thereto or in connection herewith or therewith. The DIP ABL Loan Parties are hereby authorized to borrow money and issue letters of credit under the applicable DIP ABL Loan Documents, on ~~an interim~~a final basis in accordance with and subject to the terms and conditions of this ~~Interim~~Final Order and the DIP ABL Loan Documents, and to perform all other obligations hereunder and thereunder~~, provided that until the entry of the Final Order, the DIP ABL Loan Parties are only authorized to borrow an aggregate principal amount of up to $300,000,000.00 under the DIP ABL Facility in the form~~

of Incremental DIP ABL Revolving Extensions of Credit and Incremental DIP ABL Term Loans..

5.      ***ABL Roll Up.*** In the Final Order, the Debtors will seek approval of the following transactions: (a) each Roll Up DIP ABL Revolving Lender shall be deemed to have made Roll Up DIP ABL Revolving Extensions of Credit in an amount equal to the amount of the Prepetition ABL Revolving Extensions of Credit beneficially owned by such Roll Up DIP ABL Revolving Lender at 11:59 p.m. Eastern Time on November 5, 2018, which shall reduce such Roll Up DIP ABL Revolving Lender's Prepetition ABL Revolving Extensions of Credit on a dollar for dollar basis, and which shall with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, result in an increase of the Incremental DIP ABL L/C Subfacility to an approximately $123 million DIP ABL L/C Subfacility, and such prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (b) each Roll Up DIP ABL Term Lender shall be deemed to have made Roll Up DIP ABL Term Loans in an amount equal to the amount of the Prepetition ABL Term Loans beneficially owned by such Roll Up DIP ABL Term Lender at 11:59 p.m. Eastern Time on November 5, 2018, which shall reduce such Roll Up DIP ABL Term Lender's Prepetition ABL Term Loans on a dollar for dollar basis, and (c) Bank Products (as defined under the Prepetition ABL Credit Agreement other than those under the Prepetition LC Facility Agreement) and Cash Management Obligations (as defined under the Prepetition ABL Credit Agreement) shall roll up; *provided* that the making of the Roll Up DIP ABL Revolving Extensions of Credit and Roll Up DIP ABL Term Loans shall be subject to the reservation of rights of parties in interest in paragraphs 40 and 41 below, and upon expiration of the Challenge Period (as defined below) without a Challenge Proceeding (as defined below) having been brought, or the final resolution

~~of a Challenge Proceeding brought in compliance with the provisions of this Interim Order (where such Challenge Proceeding did not have the effect of successfully impairing any of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations), the DIP ABL Loan Parties' ABL Roll Up shall be deemed indefeasible (or, in the event that such a Challenge Proceeding is timely and properly commenced in respect of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations, on the date on which any order entered by the Bankruptcy Court in favor of the applicable Prepetition ABL Credit Party in such Challenge Proceeding becomes final and non-appealable).~~The Roll Up is denied.

6.    ***Authorized Action.***  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents that may be necessary or required for performance by the DIP ABL Loan Parties under the DIP ABL Loan Documents and the creation and perfection of the DIP ABL Liens described in, provided for and perfected by this ~~Interim~~Final Order and the DIP ABL Loan Documents.  Subject to paragraphs ~~18~~17(e) and ~~19.1.1(e)~~18, the DIP ABL Loan Parties are hereby authorized to pay, in accordance with this ~~Interim~~Final Order, the principal, interest, fees, expenses and other amounts described in the DIP ABL Loan Documents as such become due and without need to obtain further Court approval, including administrative agent fees, underwriting fees, commitment fees, letter of credit fees, and the fees and disbursements of the DIP ABL Agents' attorneys, advisers, accountants and other consultants.  All fees shall be payable in accordance with the DIP ABL Loan Documents.

7.    ***Validity of DIP ABL Secured Obligations.***    Upon entry of this ~~Interim~~Final Order, the DIP ABL Loan Documents shall represent valid, binding and

31

unavoidable obligations of the DIP ABL Loan Parties, enforceable against the  DIP ABL Loan Parties and their estates in accordance with their terms, subject to the terms of this ~~Interim~~Final Order.  The DIP ABL Loan Documents and this ~~Interim~~Final Order constitute and evidence the validity and binding effect of  the  DIP ABL Secured Obligations of the DIP ABL Loan Parties, which  DIP ABL Secured Obligations shall be enforceable, jointly and severally, against the DIP ABL Loan Parties, their estates and any successors thereto, including any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case").  No obligation, payment, transfer, or grant of a security or other interest to the DIP ABL Control Co-Collateral Agent or any other DIP ABL Credit Party under the DIP ABL Loan Documents or this ~~Interim~~Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including under sections 502(d), 544, 548 or 549 of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, claim or counterclaim.  The DIP ABL ~~Secured~~ Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the  DIP ABL Loan Parties to the applicable DIP ABL Credit Parties under the DIP ABL Loan Documents, all DIP ABL Cash Management/Bank Product Obligations, and, in the case of each of the foregoing, including all principal, interest, costs, fees, expenses and other amounts owed in connection therewith or otherwise pursuant to the DIP ABL Loan Documents.

~~8.~~     ~~*No Obligation to Extend Credit.*  The DIP ABL Credit Parties shall have no obligation to make loans or advances under the DIP ABL Facility unless and until the conditions precedent to the closing and the making of such extensions of credit under the DIP ABL Loan Documents, including the conditions precedent set forth opposite the heading~~

~~"Conditions Precedent to the Initial Closing" in the DIP ABL Term Sheet, have been satisfied in~~

~~full or waived in accordance with the terms of the DIP ABL Loan Documents (such date, the~~

~~"Initial Closing Date"), which date shall occur on or before the earlier of (a) October 19, 2018,~~

~~and (b) three (3) business days after the entry of this Interim Order.~~

8. *Reserved.*

9.  ***Use of DIP ABL Facility Proceeds.***  From and after the Petition Date, the DIP ABL Loan Parties are authorized, subject to the satisfaction of the terms and conditions set forth in the DIP ABL Loan Documents, to use proceeds of extensions of credit under the DIP ABL Facility only for the purposes specifically set forth in this ~~Interim~~Final Order and the DIP ABL Loan Documents (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; and (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders).

10.  No DIP ABL Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP ABL Facility, and each DIP ABL Credit Party may rely upon each Debtor's representations that the amount of debtor-in-possession financing requested at any time, and the use thereof, are in accordance with the requirements of this ~~Interim~~Final Order, the DIP ABL Loan Documents, and Bankruptcy Rule 4001(c)(2).

11.  ***DIP ABL Superpriority ~~Claim~~Claims.***  Subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the  DIP ABL Secured Obligations shall constitute allowed administrative expense claims against each of the DIP ABL Loan

Parties' estates, jointly and severally, with priority over any and all administrative expenses, including any superpriority claims associated with any other postpetition financing facility, all Post-Petition Intercompany Claims, all Adequate Protection Claims and, to the fullest extent permitted under the Bankruptcy Code, all other claims against the DIP ABL Loan Parties, now existing or hereafter arising, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the " DIP ABL Superpriority ClaimClaims"), which  DIP ABL Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the DIP ABL Loan Parties and their estates and all proceeds thereof, subject only to liens secured thereby and the Carve-Out.  The  DIP ABL Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this InterimFinal Order or any provision hereof is vacated, reversed, amended or otherwise modified, on appeal or otherwise.

**DIP ABL Liens and DIP ABL Collateral.**

12.      Effective immediately upon entry of this  InterimFinal Order and as more fully set forth in the DIP ABL Loan Documents, as security for the full and prompt performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the  DIP ABL Secured Obligations, the DIP ABL Control Co-Collateral Agent is hereby granted, for itself and for the benefit of all of the DIP ABL Credit Parties, continuing valid, binding, enforceable, non-avoidable, automatically and properly perfected, post-petition security interests in and liens (the " DIP ABL Liens") on all  DIP ABL Collateral *nunc pro tunc* to the Petition Date without the necessity of the execution by the DIP ABL Loan Parties (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, copyright security agreements, trademark security agreements, patent security agreements, financing

statements, mortgages, schedules or other similar documents, or the possession or control by the

DIP ABL Agents or any other DIP ABL Credit Party of any  DIP ABL Collateral.  The term "

<u>DIP ABL Collateral</u>" means Prepetition ABL Collateral and all other assets of the DIP ABL

Loan Parties (except ~~Avoidance Actions and Avoidance Action Proceeds (which will only be~~

~~sought in connection with entry of the Final Order), whether now owned or hereafter acquired,~~

~~and all proceeds thereof, including all deposit accounts, securities accounts, cash and cash~~

~~equivalents of the DIP ABL Loan Parties; *provided* the DIP ABL Liens extend only to the~~

~~proceeds of leased real property and are not direct liens on the Debtors' leases of real property~~

~~unless such liens are expressly permitted pursuant to the underlying lease documents; *provided,*~~

~~*however*, the Final Order may provide for the grant of liens on real property leases.  In the~~

~~proposed Final Order, the Debtors will request that all of the proceeds  (the "Avoidance Action~~

~~Proceeds") of the DIP ABL Loan Parties'~~ claims and causes of action arising under sections

502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance

or similar action under the Bankruptcy Code or similar state law (the "<u>Avoidance Actions</u>") ~~shall~~

~~also constitute DIP ABL Collateral.~~<u>and the proceeds of Avoidance Actions ("Avoidance Action</u>

<u>Proceeds")), whether now owned or hereafter acquired, and all proceeds thereof, including all</u>

<u>deposit accounts, securities accounts, cash and cash equivalents of the DIP ABL Loan Parties;</u>

<u>*provided* that</u> <u>the DIP ABL Liens shall</u> <u>extend only to the proceeds of leased real property and</u>

<u>not direct liens on the Debtors' leases of real property unless such liens are expressly permitted</u>

<u>pursuant to the underlying lease documents.</u>

**<u>Priority of DIP ABL Liens</u>**

13.    The DIP ABL Liens on the DIP ABL Collateral shall in each case be

subject to the Carve-Out and otherwise have the following priority:

(a)    pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens on and security interests in all  DIP ABL Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (collectively, the "Prepetition Unencumbered Assets");

(b)    pursuant to section 364(c)(3) of the Bankruptcy Code, junior liens on and security interests in all  DIP ABL Collateral (other than Prepetition ABL Collateral) that is not subject to Prepetition ABL Liens but is subject to valid and perfected security interests in favor of third parties as of the Petition Date (the "Prepetition Encumbered DIP ABL Collateral"); and

(c)    pursuant to section 364(d) of the Bankruptcy Code, first priority priming security interests and liens on the Prepetition ABL Collateral of each Debtor on which the Prepetition ABL Lenders held a first priority security interest and lien (such liens and security interests, the "DIP ABL Priming Liens"), in each case to the extent that such Prepetition ABL Collateral is subject to Prepetition ABL Liens (collectively, the "Primed Liens") and such DIP ABL Priming Liens shall be (x) senior in all respects to the interests in such property of the Prepetition ABL Credit Parties under the Prepetition ABL Credit Agreement and the other "secured parties" referred to therein, (y) senior to the Adequate Protection Liens, and (z) subject to Permitted Prior Liens.

14.    Notwithstanding anything to the contrary herein, the following table sets forth the relative priorities of the Carve-Out, Permitted Prior Liens, DIP ABL Liens, Adequate Protection Liens, and the Prepetition Liens on the DIP ABL Collateral upon effectiveness of this Interim Order:

| Prepetition ABL Collateral | Prepetition Encumbered DIP ABL Collateral | Prepetition Unencumbered Assets |
|---|---|---|
| Carve-Out | Carve-Out | Carve-Out |
| Permitted Prior Liens | All valid and perfected security interests in favor of third parties as of the Petition Date | DIP ABL Liens |
| DIP ABL Liens | DIP ABL Liens | Prepetition ABL Facilities Adequate Protection Liens |
| Prepetition ABL Facilities Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | 2018 FILO Adequate Protection Liens |
| 2018 FILO Adequate Protection Liens | 2018 FILO Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens |
| Prepetition LC Facility Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens |
| Prepetition ABL Liens | Prepetition Second Lien Adequate Protection Liens | |
| Prepetition Second Lien Adequate Protection Liens | | |
| Prepetition Second Lien Facilities Liens (except on Specified Non-Prepetition Second Lien Collateral) | | |

1514.  ***Treatment of DIP ABL Liens.***  Other than as set forth herein, the DIP

ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore

or hereafter granted in the Chapter 11 Cases or any Successor Case.  The DIP ABL Liens shall

be valid and enforceable against any trustee or other estate representative appointed in the

Chapter 11 Cases or any Successor Case, upon the conversion of any of the  Chapter 11 Cases to

a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the

dismissal of any of the Chapter 11 Cases or any Successor Case.  No lien or interest avoided and

preserved for the benefit of the  DIP ABL Loan Parties' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the  DIP ABL Liens.

**Adequate Protection**

   16 15.   ***Adequate Protection Liens.***

     (a)   *Prepetition ABL Adequate Protection Liens*. Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, against any the aggregate net diminution in value of the Prepetition ABL Credit Parties' (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) interests in the entirety of the Prepetition ABL Collateral resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "ABL Diminution in Value"), the DIP Prepetition ABL Loan Parties hereby grant to the Prepetition ABL Control Co-Collateral Agent on behalf of itself and all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) to the extent of any the ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition ABL Facilities Adequate Protection Liens") all DIP ABL Collateral owned by the Prepetition ABL Loan Parties. The Prepetition ABL Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP Prepetition ABL Loan Parties of control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the

Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens and, the DIP ABL Liens and the Post-Petition Intercompany Liens (as defined below), (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral owned by the Prepetition ABL Loan Parties, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, and the DIP ABL Liens and the Post-Petition Intercompany Liens, and (iii) solely with respect to Prepetition Unencumbered Assets owned by the Prepetition ABL Loan Parties, subject to the Carve-Out and, the DIP ABL Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateralthe Post-Petition Intercompany Liens.

(b)    *Prepetition 2018 FILO Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, against anythe aggregate net diminution in value of the 2018 FILO Lenders' interests in the entirety of the Prepetition ABL Collateral resulting from the Prepetition ABL Loan Parties' use, sale or lease of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "2018 FILO ABL Diminution in Value"), the DIPPrepetition ABL Loan Parties hereby grant to the Prepetition ABL Control Co-Collateral Agent, on behalf of  the 2018 FILO Lenders to the extent of anythe 2018 FILO ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "2018 FILO Adequate Protection Liens") all DIP ABL Collateral owned by the Prepetition ABL Loan Parties.  The 2018 FILO Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIPPrepetition ABL Loan Parties of

control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral owned by the Prepetition ABL Loan Parties, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the DIP ABL Liens, the Post-Petition Intercompany Liens and the Prepetition ABL Facilities Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be owned by the Prepetition ABL Loan Parties, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens, the Post-Petition Intercompany Liens and the Prepetition ABL Facilities Adequate Protection Liens, and (iii) solely with respect to Prepetition Unencumbered Assets owned by the Prepetition ABL Loan Parties, subject to the Carve-Out, the DIP ABL Liens, the Post-Petition Intercompany Liens and the Prepetition ABL Facilities Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(c)     *Prepetition LC Facility Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, against any the aggregate net diminution in value of the Prepetition LC Facility Credit Parties' interests in the entirety of the Prepetition ABL Collateral resulting from the use, sale or lease of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "Prepetition LC ABL Diminution in Value"), the DIPPrepetition ABL Loan Parties hereby grant to the Prepetition LC Facility Administrative Agent on behalf of itself and all of the other Prepetition LC Facility Credit Parties to the extent of anythe Prepetition LC ABL Diminution in Value, if

any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition LC Facilities Adequate Protection Liens") all DIP ABL Collateral owned by the Prepetition ABL Loan Parties.  The Prepetition LC Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected nunc pro tunc to the Petition Date (without the necessity of the execution by the ~~DIP~~Prepetition ABL Loan Parties of control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall ~~(i) solely with respect to the Prepetition ABL Collateral,~~ be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, and the 2018 FILO Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral owned by the Prepetition ABL Loan Parties, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens, the Post-Petition Intercompany Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, and (iii) solely with respect to Prepetition Unencumbered Assets owned by the Prepetition ABL Loan Parties, subject to the Carve-Out, the DIP ABL Liens, the Post-Petition Intercompany Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens~~, and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral~~.

(d)    *Second Lien Facilities Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral~~, including Cash Collateral,~~ against ~~any~~the net aggregate diminution in value, if any, resulting from the DIP ABL Loan Parties' use, sale or lease ~~(or other decline in value)~~ of such collateral,

the imposition of the automatic stay, the priming of the Prepetition Second Lien Facilities Liens and the subordination to the Carve-Out (collectively, the "Second Lien Diminution in Value"), the DIP ABL Loan Parties and, collectively with the ABL Diminution in Value, the 2018 FILO ABL Diminution in Value and the Prepetition LC  ABL Diminution in Value, "Diminution in Value" ), each Prepetition Second Lien Loan Party hereby grantgrants to the Prepetition Second Lien Collateral Agent on behalf of itself and the  other Prepetition Second Lien Credit Parties solely to the extent of any applicable Second Lien Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition Second Lien Adequate Protection Liens," and together with the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens, the "Adequate Protection Liens") all DIP ABL Collateral owned by the Prepetition Second Lien Loan Parties.  The Prepetition Second Lien Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABLPrepetition Second Lien Loan Parties of mortgages, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral owned by the Prepetition Second Lien Loan Parties, be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the  DIP ABL Liens, the Post-Petition Intercompany Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Prepetition ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral owned by the Prepetition Second Lien Loan Parties, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens, the Post-Petition Intercompany

Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and (iii) solely with respect to Prepetition Unencumbered Assets owned by the Prepetition Second Lien Loan Parties, subject to the Carve-Out, the DIP ABL Liens, the Post-Petition Intercompany Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(e)    *Treatment of Adequate Protection Liens.*  Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the applicable Chapter 11 Cases or any Successor Case, upon the conversion of any of the applicable Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the applicable Chapter 11 Cases or any Successor Case. The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

17 16.  ***Adequate Protection Superpriority Claims.***

(a)    *Prepetition ABL Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-

Collateral Agent, for itself and for the benefit of all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties), is hereby granted an allowed administrative claim against the ~~DIP~~Prepetition ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition ABL Adequate Protection Claims") to the extent of any ABL Diminution in Value.  Except as set forth herein, the Prepetition ABL Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the ~~DIP~~Prepetition ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition ABL Adequate Protection Claims shall be junior to (i) the Carve-Out ~~and,~~ (ii) the DIP ABL Superpriority Claims and (iii) the Post-Petition Intercompany Superpriority Claims.

(b)    *Prepetition 2018 FILO Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders, is hereby granted an allowed administrative claim against the ~~DIP~~Prepetition ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code to the extent of any 2018 FILO Diminution in Value (the "Prepetition 2018 FILO Adequate Protection Claims").  Except as set forth herein, the Prepetition 2018 FILO Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the ~~DIP~~Prepetition ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; *provided*, *however*,

that the Prepetition 2018 FILO Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, ~~and~~ (iii) the Post-Petition Intercompany Superpriority Claims and (iv) the Prepetition ABL Adequate Protection Claims.

(c)    *Prepetition LC Facility Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition LC Facility Administrative Agent, for itself and for the benefit of all of the other Prepetition LC Facility Credit Parties, is hereby granted an allowed administrative claim against the ~~DIP~~Prepetition ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code to the extent of any Prepetition LC Diminution in Value (the "Prepetition LC Facility Adequate Protection Claims"). Except as set forth herein, the Prepetition 2018 LC Facility Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the ~~DIP~~Prepetition ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition LC Facility Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Post-Petition Intercompany Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, and (~~iv~~v) the Prepetition 2018 FILO Adequate Protection Claims.

(d)    *Second Lien Facilities Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, ~~including Cash Collateral,~~ on behalf of itself and the other Prepetition Second Lien Credit Parties, the Prepetition Second Lien

45

Collateral Agent is hereby granted an allowed administrative claim against the ~~DIP ABL~~Prepetition Second Lien Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code to the extent of any Second Lien Diminution in Value (the "Prepetition Second Lien Facilities Adequate Protection Claims," and together with the Prepetition ABL Adequate Protection Claims, the Prepetition 2018 FILO Adequate Protection Claims, and the Prepetition LC Facility Adequate Protection Claims, the "Adequate Protection Claims") to the extent that the Prepetition Second Lien Adequate Protection Liens are insufficient to protect the Prepetition Second Lien Credit Parties' interests in the Prepetition Second Lien Collateral.  Except as set forth herein, the Prepetition Second Lien Facilities Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the ~~DIP ABL~~Prepetition Second Lien Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition Second Lien Facilities Adequate Protection Claim shall be junior to (i) the Carve-Out,   (ii) the DIP ABL Superpriority Claims, (iii) the ~~Prepetition ABL Adequate Protection~~ Post-Petition Intercompany Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, (v) the Prepetition LC Facility Adequate Protection Claims, and (~~v~~vi) the Prepetition 2018 FILO Adequate Protection Claims.

>     ~~18~~17.   ***Additional Adequate Protection.***

(a)      *Prepetition ABL Credit Parties*.  As additional adequate protection of the Prepetition ABL Credit Parties' security interests in the Prepetition ABL Collateral, the DIP ABL Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other

disbursements of the Prepetition ABL Administrative Agent, the Prepetition ABL Co-Collateral Agents, and the Prepetition LC Facility Administrative Agent whether incurred before, on or after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 18~~17~~(e) hereof, Skadden, Arps, Slate, Meagher & Flom LLP, Choate, Hall & Stewart LLP, Davis Polk & Wardwell LLP and Berkeley Research Group, LLC, whether incurred before, on or after the Petition Date; (ii) continued maintenance and insurance of the Prepetition ABL Collateral and the DIP ABL Collateral in amounts and for the risks, and by the entities, as required under the Prepetition ABL Documents, the DIP ABL Loan Documents and this ~~Interim~~Final Order; (iii) reporting and information rights equivalent to those granted to the DIP ABL Lenders pursuant to the DIP ABL Loan Documents, the Prepetition ABL Documents and paragraph 21~~20~~ of this ~~Interim~~Final Order; (iv) cash payment of post-petition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement as such interest becomes due and payable at the applicable non-default rate thereunder; and (v) the DIP ABL Borrowers' daily calculation, reporting and certification to the Prepetition ABL Administrative Agent of, and compliance with, the Maximum Loan to Value (Term/Revolver) Ratio and the Maximum Loan to Value (Prepetition) Ratio (each as defined below).

(b)     If on any day the DIP ABL Loan Parties are not in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, the DIP ABL Loan Parties shall immediately and irrevocably repay in cash (i) first, DIP ABL Revolving Advances until paid in full, (ii) second, to replace or cash collateralize letters of credit under the DIP ABL Facility, and (iii) third, to the DIP ABL Term Loans until paid in full (with a pro rata reduction in DIP ABL Revolving Commitments), ~~and~~

(iv) after the payment in full of the DIP ABL Facility, the Prepetition ABL Obligations, in each case, until the DIP ABL Loan Parties are in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, as applicable.  In the case of clause (iii), such amounts shall be paid to the Prepetition ABL Administrative Agent and applied in accordance with Section 6.4 of the Collateral and Guarantee Agreement (as defined in the Prepetition ABL Credit Agreement).  For the avoidance of doubt, a failure of the DIP ABL Borrowers to deliver to the DIP ABL Administrative Agent or Prepetition ABL Administrative Agent, as applicable, the cash when and in such amounts required in accordance with the immediately preceding sentence shall constitute a Termination Event (as defined below) hereunder, and the DIP ABL Administrative Agent or the Prepetition ABL Agent, as applicable, shall be permitted to exercise all rights and remedies available pursuant to the DIP ABL Loan Documents or Prepetition ABL Documents, as applicable, and this InterimFinal Order subject to the terms of paragraphs 32 and 33.

(c)     The "Maximum Loan to Value (Term/Revolver) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of (a) the outstanding principal amount of Advances (as defined in the Prepetition ABL Credit Agreement), plus (b) the outstanding principal amount of Swingline Advances (as defined in the Prepetition ABL Credit Agreement), plus (c) the amount of L/C Obligations (as defined in the Prepetition ABL Credit Agreement), plus (d) the outstanding principal amount of the outstanding 2016 Term Loans (as defined in the Prepetition ABL Credit Agreement) (the sum of clauses (a) through (d), the "Prepetition Revolving/Term Exposure"), plus (e) Total Extensions of Credit (as defined in the DIP ABL Term Sheet), at any time to exceed 87.5% of the sum of (1) aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2)

48

aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) aggregate Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) at such time, minus (4) Availability Reserves (as defined in the DIP ABL Loan Documents) at such time, minus (5) the Carve-Out Reserve Amount less the current balance of the Carve-Out Account (each as defined below), minus (6) the FILO Reserve (as defined in the DIP ABL Loan Documents).

(d)       The "Maximum Loan to Value (Prepetition) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of Prepetition Revolving/Term Exposure, plus the outstanding 2018 FILO Extensions of Credit (as defined in the Prepetition ABL Credit Agreement), plus the Total Extensions of Credit (as defined in the DIP ABL Term Sheet), at any time to exceed 97.5% of the sum of (1) aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) aggregate Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) at such time minus (4) Availability Reserves (as defined in the DIP ABL Loan Documents) at such time, minus (5) the Carve-Out Reserve Amount less the current balance of the Carve-Out Account (each as defined below), minus (6) the FILO Reserve (as defined in the DIP ABL Loan Documents).

(e)       Payment Absent the filing of any objection thereto in accordance with the terms of this Final Order, payment of all professional fees and expenses of the DIP ABL Credit Parties Agents, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent addressed in this Interim Final Order shall not be subject to allowance by

the Bankruptcy Court.  Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent shall deliver a copy of their respective invoices to counsel for any Creditors' Committee, the U.S. Trustee (as defined below), and the DIP ABL Administrative Agent.  The invoices for such fees and expenses shall not be required to comply with any particular format and may be in summary form only and may include redactions.  For the avoidance of doubt, the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  The DIP ABL Loan Parties shall pay such invoice within ten (10) calendar days (if no written objection is received within such ten calendar day period) after such professional has delivered such invoice to the DIP ABL Loan Parties, the Creditors' Committee, the DIP ABL Administrative Agent, and the U.S. Trustee.  Any written objections raised by the DIP ABL Loan Parties, the U.S. Trustee, the DIP ABL Administrative Agent or any Creditors' Committee with respect to such invoices within ten (10) calendar days of receipt thereof will be resolved by the Bankruptcy Court (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the DIP ABL Loan Parties. The fees and expenses subject to the procedures in this paragraph ~~18~~17(e) shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and shall not be subject to compliance with the U.S. Trustee fee guidelines or the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

 nbsp; ~~19~~18. ***Costs, Fees, Expenses, and Indemnification.***

(a)    *DIP ABL Credit Parties*.  The DIP ABL Loan Parties are authorized to pay any and all reasonable and documented expenses of the DIP ABL Agents in

connection with the DIP ABL Facility and as provided for in the DIP ABL Loan Documents, whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including fees and expenses incurred in connection with (i) the preparation, negotiation and execution of the DIP ABL Loan Documents; (ii) the syndication and funding of the DIP ABL Facility; (iii) the creation, perfection or protection of the liens under the DIP ABL Loan Documents (including all search, filing and recording fees); (iv) the on-going administration of the DIP ABL Loan Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Chapter 11 Cases; (v) the enforcement of the DIP ABL Loan Documents; (vi) any refinancing or restructuring of the DIP ABL Facility; and (vii) any legal proceeding relating to or arising out of the DIP ABL Facility or the other transactions contemplated by the DIP ABL Loan Documents, including the Chapter 11 Cases.  Payment of all such professional fees and expenses shall not be subject to allowance by the Bankruptcy Court or to the U.S. Trustee guidelines, but shall be subject to the procedures set forth in paragraph ~~18~~17(e) herein.  Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(b)  *Indemnification of DIP ABL Credit Parties*.  The DIP ABL Credit Parties shall have no liability to any third party relating to the DIP ABL Loan Documents, the DIP ABL Facility and DIP ABL Loan Parties' use of the financing provided thereunder, and shall not, by virtue of making the ~~DIP~~ loans under the DIP ABL Loan Documents, extending funds thereunder, or otherwise complying with the DIP ABL Loan Documents, be deemed to be in control of the operations of Debtors, to owe any fiduciary duty to the Debtors, their respective

creditors, shareholders, or estates or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors. The ~~Debtors~~DIP ABL Loan Parties shall, and are hereby authorized to, indemnify and hold harmless the DIP ABL Credit Parties and their respective affiliates and Representatives from and against all losses, liabilities, claims, damages, penalties, actions, judgments, suits, expenses or disbursements of any nature whatsoever arising out of or relating to the DIP ABL Loan Documents, including the syndication of any obligations thereunder, and the DIP ABL Loan Parties' use of the financing provided thereunder, *provided*, *however*, that the foregoing indemnity shall not apply to any actions of any indemnified parties determined in a final non-appealable judgment to constitute fraud or willful misconduct. This indemnification shall survive and continue for the benefit of all such persons or entities.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

> ~~20~~19. *Carve-Out.*

(a) *Carve-Out*. As used in this ~~Interim~~Final Order and the DIP ABL Loan Documents, the "Carve-Out" shall be comprised of the following components:

(i) Clerk and U.S. Trustee Fees. All fees required to be paid to the Clerk of this Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code and 31 U.S.C. § 3717 (collectively, "Clerk and UST Fees").

(ii) Chapter 7 Trustee Fees. All reasonable fees and expenses up to $500,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Fee Cap").

(iii) Allowed Professional Fees Incurred Prior to a Carve-Out Trigger Notice. To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all paid and accrued and unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the date of delivery by the DIP ABL Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether

allowed by this Court prior to or after delivery of a Carve-Out Trigger Notice.  For purposes of the Carve-Out, Allowed Professional Fees shall exclude (i) any restructuring, sale, consummation, success or similar fee of any Professional Person and (ii) fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee, but include the out of pocket expenses of individual members of the Creditors' Committee incurred in their capacity as such and any third party professionals employed by individual members of the Creditors' Committee incurred by such members in connection with their service on the Committee (collectively, the "Pre-Termination Amount").

(iv)    Allowed Professional Fees Incurred After a Carve-Out Trigger Notice.  Allowed Professional Fees of Professional Persons incurred on and after the first business day following delivery by the DIP ABL Administrative Agent of the Carve-Out Trigger Notice shall be subject to an aggregate cap of $20 million (the "Post Trigger Notice Carve-Out Fee Cap").

(b)    *Carve-Out Trigger Notice.*  Upon the occurrence and during the continuance of any Termination Event, the DIP ABL Administrative Agent may deliver a written notice invoking the Post Trigger Notice Carve-Out Fee Cap (the "Carve-Out Trigger Notice") to the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee, and lead counsel for the Creditors' Committee.  The Carve-Out Trigger Notice may be delivered by email (or any other means permitted under the DIP ABL Loan Documents).

(c)    *Delivery of Weekly Fee Estimates.*  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "Weekly Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred through the applicable Calculation Date (collectively, "Estimated Fees and Expenses") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors from the Carve-Out Account (as defined below).  No later than one business day after the delivery of a Carve-Out Trigger Notice, each

Professional Person shall deliver one additional statement (the "Final Statement") to the Debtors setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve-Out Trigger Notice.

(d)     *Failure to Deliver Weekly Fee Estimates*.  If any Professional Person fails to deliver a Weekly Statement when due (such Professional Person, a "Defaulting Professional Person"), such Professional Person's entitlement (if any) to any amount of the Carve-Out with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable periods for which such Professional Person failed to deliver a Weekly Statement shall be limited to the aggregate unpaid amount of Allowed Professional Fees for such Professional Person included in the Approved Budget, *provided* that such Defaulting Professional Person may cure its failure to provide a Weekly Statement so long as a Carve-Out Trigger Notice has not been delivered.

(e)     *Carve-Out Reserve*.  The DIP ABL Administrative Agent shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of the following:  (i) estimated amounts for Clerk and UST Fees and the Chapter 7 Trustee Fee Cap, plus (ii) the Post Trigger Notice Carve-Out Fee Cap, plus (iii) the aggregate amount of Allowed Professional Fees in the Approved Budget remaining unpaid through the most recent Calculation Date or, if greater, the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and reported to the DIP ABL Administrative Agent, plus (iv) an amount equal to the Allowed Professional Fees set forth in the Approved Budget for the two-week period occurring

after the most recent Calculation Date, plus (v) $~~22~~29.5 million less any Permitted Carve-Out

Success Fees (as defined below) paid by the Debtors pursuant to an order of the Bankruptcy

Court.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting

with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP

Agent a report setting forth the Carve-Out Reserve Amount as of such time, and, in setting the

Carve-Out Reserve, the DIP Agent shall be entitled to, but shall not be required to, rely upon

such reports in determining the Carve-Out Reserve.

　　　　　　　(f)　　　*Carve-Out Account*.  Upon the entry of this ~~Interim~~Final Order, the

Debtors shall establish a segregated account with the DIP ABL Administrative Agent (the

"Carve-Out Account"), which shall be funded in an amount up to the Carve-Out Reserve

Amount less (i) the Clerk and UST Fees, (ii) the Chapter 7 Trustee Fee Cap, (iii) the Post Trigger

Notice Carve-Out Fee Cap (the "Carve-Out Account Required Balance") first with cash on hand

and any availability or proceeds of any other postpetition financing facility, and if such sources

are insufficient to fully fund the Carve-Out Account, with borrowings under the DIP ABL

Facility.  Amounts in the Carve-Out Account shall  be held in trust to pay all amounts included

the Carve-Out.  On each Friday after the date hereof (or if such day is not a business day, then

the next business day), the Debtors shall deposit into the Carve-Out Account an amount

sufficient to cause the balance in the Carve-Out Account to equal the Carve-Out Account

Required Balance.  All Allowed Professional Fees of Professional Persons shall be paid to the

applicable Professional Person first from the Carve-Out Account in accordance with the order or

orders of the Court allowing such Allowed Professional Fees.  Notwithstanding anything to the

contrary in this or any other Court order, the Carve-Out Account and the amounts on deposit in

the Carve-Out Account shall be available and used only to satisfy obligations of Professionals

Persons benefitting from the Carve-Out, and, thereafter, as provided in paragraph 20(g)(v h).

Prior to a Carve-Out Trigger Notice, in no event shall the total balance in the Carve-Out Account

ever exceed the Carve-Out Account Required Balance.  The failure of the Carve-Out Account to

satisfy Professional Fees in full shall not affect the priority of the Carve-Out.

> (g)     *Carve-Out Funding After a Carve-Out Trigger Notice*.    The

following provisions with respect to the Carve-Out Account shall apply only upon delivery of a

Carve-Out Trigger Notice:

> (i)     On the date of the Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall
be deemed to constitute a demand to the Debtors to utilize all cash on hand as of such date and
any availability or proceeds of any other postpetition financing facility to fund the Carve-Out
Account in an amount equal to the full Carve-Out Reserve Amount (to the extent not previously
funded into the Carve-Out Account) to be held in trust to pay all amounts included the Carve-
Out.

> (i)     On or after the date of a Carve-Out Trigger Notice, the DIP ABL Administrative
Agent shall not sweep or foreclose on cash of the Debtors (including cash received as a result of
the sale or other disposition of any assets) until the Carve-Out Account has been fully funded.
To the extent such cash on hand and availability and/or proceeds of any other postpetition
financing facility are not sufficient to fully fund the Carve-Out Account, the Carve-Out Trigger
Notice shall be deemed to constitute a draw request and notice of borrowing by the Debtors for
DIP ABL Revolving Advances under the DIP ABL Loan Documents (on a pro rata basis based
on the then outstanding DIP ABL Revolving Commitments) to fully fund the Carve-Out
Account.   On the first business day after delivery of the Carve-Out Trigger Notice,
notwithstanding anything in the DIP ABL Loan Documents to the contrary, including with
respect to the existence of a Default (as defined in the DIP ABL Loan Documents) or Event of
Default (as defined in the DIP ABL Loan Documents), the failure of the Debtors to satisfy any or
all of the conditions precedent for DIP ABL Revolving Advances under the DIP ABL Revolver,
any termination of the commitments thereunder following an Event of Default at the direction of
the DIP ABL Administrative Agent, each DIP ABL Revolving Lender with an outstanding DIP
ABL Revolving Commitments (on a pro rata basis based on the then outstanding DIP ABL
Revolving Commitments) shall make available to the DIP ABL Administrative Agent such DIP
ABL Revolving Lender's pro rata share with respect to the borrowings required to fully fund the
Carve-Out Account in accordance with the DIP ABL Revolver; *provided*, *however*, that in no
event shall the DIP ABL Credit Parties be required to fund the Carve-Out Account to the extent
such funding would cause Capped Excess Availability (as defined in the DIP ABL Loan
Documents and determined as if the DIP ABL Revolving Commitments were not terminated due
to an Event of Default (as defined in the DIP ABL Loan Documents)) to be less than zero.  Any
such funding of the Carve-Out shall be added to, and made a part of, the DIP ABL Obligations
secured by the DIP ABL Collateral and shall otherwise be entitled to the protections granted

under this ~~Interim~~Final Order, the DIP ABL Loan Documents, the Bankruptcy Code, and applicable law.

(ii)     In no event shall the DIP ABL Administrative Agent or the DIP ABL Lenders be required to (x) extend DIP ABL Revolving Advances to fund the Carve-Out other than pursuant to this paragraph ~~20~~19(g), (y) extend DIP ABL Revolving Advances pursuant to a deemed draw and borrowing pursuant this paragraph in an aggregate amount exceeding the Carve-Out Reserve Amount, or (z) pay in the aggregate more than the Carve-Out Reserve Amount for all fees and expenses included in the Carve-Out.

(iii)    All funds in the Carve-Out Account shall be used first to pay the obligations set forth in the definition of the Carve-Out set forth above until paid in full.  All payments and reimbursements made from the Carve-Out Account shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(iv)    To the extent any funds remain in the Carve-Out Account after payment of all amounts included in the Carve-Out, such funds shall first be used to pay the DIP ABL Administrative Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Obligations have been indefeasibly paid in full, in cash, all commitments under the DIP ABL Facility have been terminated, and all Letters of Credit (as defined in the DIP ABL Loan Documents) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise backstopped to the satisfaction of the DIP ABL Administrative Agent in its sole and absolute discretion), in which case any such excess shall next be paid to the Prepetition Credit Parties in accordance with their rights and priorities under this ~~Interim~~Final Order.

(h)     *Carve-Out Limitations.*  For purposes of the Carve-Out, (i) any success, restructuring, consummation sale or other similar fees shall not be included except for such fees in an aggregate amount up to $~~12~~19.5 million that become Allowed Professional Fees of Lazard Freres & Co. LLC~~and/or~~, M-III Advisory Partners, LP and/or Houlihan Lokey Capital Inc. (the "Permitted Carve-Out ~~Success~~Consummation Fees") or any other success, restructuring, consummation, sale or other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion and (ii) Allowed Professional Fees shall exclude fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee, except as otherwise set forth herein.  Further ~~notwithstanding anything to the contrary~~, except as otherwise provided herein, the Carve-Out shall not include, apply to or be available for any fees

or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP ABL Credit Parties, Prepetition ABL Credit Parties,[3] or any Representatives of any of the foregoing, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP ABL Loan Documents or, the Prepetition ABL Loan Documents, including, in each case for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties under the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or this ~~Interim~~Final Order; (c) attempts to prevent, hinder or otherwise delay any of the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' assertion, enforcement or realization upon any of the Prepetition ABL Collateral or DIP ABL Collateral in accordance with the DIP ABL Loan Documents, the Prepetition ABL Loan Documents, and ~~the Interim~~this Final Order other than to seek a determination that a Termination Event has not occurred or is not continuing or seeking to use Cash Collateral; (d) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are specifically approved by an order of the Bankruptcy Court; (e) any success, completion, back-end or similar fees other than the Permitted Carve-Out Success Fees or any other success, restructuring, consummation,

---

[3]    Notwithstanding anything to the contrary in this ~~Interim~~Final Order, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, the Company, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings, and the Creditors' Committee shall not be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL Loans or the Carve Out.  For purposes of this paragraph 20(h), the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

sale or other similar fees ~~agreed to by the DIP ABL Agents in their sole and absolute discretion~~<u>unless approved by the Bankruptcy Court</u>; and/or (f) anything else prohibited by the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or any order of the Bankruptcy Court, as applicable.  In no way shall the Carve-Out, the Carve-Out Account, the Approved Budget or any of the forgoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Bankruptcy Court at any time (whether by interim order, final order or otherwise).

        (i)     *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.*  Other than the funding of the Carve-Out with the proceeds of the DIP ABL Facility as provided herein and in the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases, any Successor Cases, or otherwise.  Nothing in this ~~Interim~~<u>Final</u> Order or otherwise shall be construed:  (i) to obligate the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, other than the Carve-Out Reserve Amount; (ii) as consent to the allowance of any fees and expenses of Professional Persons; or (iii) to affect the rights of the DIP ABL Credit Parties, the Prepetition ABL Credit Parties or any other party-in-interest to object to the allowance and payment of such fees and expenses.

        (j)     *Payment of Compensation.* The Debtors shall be permitted to pay fees and expenses allowed and payable by order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as

the same may be due and payable from the Carve-Out Reserve Account.  Such payments prior to a Carve-Out Trigger Notice shall not reduce the Post Trigger Notice Carve-Out Fee Cap.

### 2120.    *Budget and Borrowing Base Reporting; Budget Compliance*

(a)    The DIP ABL Loan Parties shall deliver to the Creditors' Committee, the DIP ABL Agents and the DIP ABL Lenders: (i) an initial cash flow forecast together with accompanying schedules supporting line items in such forecast (such as roll-forward of inventory sales and receipts, roll-forward of merchandise and other payables and other documentation which may be requested by the DIP ABL Agents) (a "Budget") for the 13-week period ending after the InitialFinal Closing Date, dated as of a date not more than one (1) business day prior to the InitialFinal Closing Date, which shall be subject to the approval of the Joint Lead Arrangers (as defined in the DIP ABL Loan Documents) in their sole and absolutecommercially reasonable discretion (once so approved, and subject to any update as may be approved by the ABL DIP Agents in their sole and absolutecommercially reasonable discretion, the "Approved Initial Budget"), attached hereto as Exhibit A, (ii) on October 31November [28], 2018 and every Wednesday thereafter, a Budget for the immediately following consecutive 13 weeks (each, a "Rolling Budget"), (iii) on each Wednesday beginning October 31,November [28], 2018, reports detailing operating and financial performance (the "Weekly Flash Reporting Package") which shall include cash flow performance for the previous week together with accompanying schedules supporting line items included in the weekly cash flow results (such as roll-forward) of inventory sales and receipts, roll-forward of merchandise and other payables  of each DIP ABL Loan Party as of the end of the prior week, in each case, in reasonable detail, (iv) other customary information and documents, including approval rights with respect thereto, to be set forth in the DIP ABL Loan Documents, and (v) other information

as may be reasonably requested by the DIP ABL Agents.  The DIP ABL Loan Parties shall be required to comply with such Approved Initial Budget, including having made all scheduled payments to the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, as applicable, and when required, subject to the Permitted Variance (as defined below).

(b)    The DIP ABL Loan Parties shall deliver to the Creditors' Committee and DIP ABL Administrative Agent a borrowing base certificate presenting the DIP ABL Borrowers' computation of the DIP Borrowing Base (as defined in the DIP ABL Loan Documents) as of the last business day of each week (including appropriate supporting data therefor) (a "Borrowing Base Certificate") promptly, but in no event later than the Tuesday following the end of each week.  The initial Borrowing Base Certificate shall be delivered as a condition precedent to the Initial Final Closing Date and dated as of a date not more than one (1) business day prior to the Initial Final Closing Date.  In connection with any material asset sale, the DIP ABL Loan Parties shall deliver to the Creditors' Committee and the DIP ABL Administrative Agent a pro forma Borrowing Base Certificate giving effect to such sale at least three (3) business days prior to the closing of such sale.  In addition, not later than the tenth (10th) day of each month, commencing with the first full month immediately following the Petition Date, an updated inventory appraisal shall be delivered to the Creditors' Committee and the DIP ABL Administrative Agent.

(c)    The DIP ABL Loan Parties shall also provide a qualitative and quantitative budget variance report/reconciliation (the "Budget Variance Report") for delivery to the Creditors' Committee and DIP ABL Agents by Wednesday of every week for the most recently ended four-week period included in the Approved Initial Budget (the "Testing Period") showing by line item actual cash receipts, disbursements, and inventory receipts for each four

week period, in comparable form and substance to what has been provided to the DIP ABL Agents prior to the Initial Closing Date, noting therein all the variance, on a cumulative basis, of the DIP ABL Borrowers' total net cash flow excluding proceeds from asset sales, except for proceeds from the sale of inventory, and also excluding financing related items (the "Net Cash Flow") for such four week period in the Approved Initial Budget, and shall include explanations for any material variance for such four week period.  The Borrowers will supplement the Weekly Flash Reporting Package and the Budget Variance Report from time to time upon the reasonable request of the DIP ABL Agents or the Creditors' Committee.

(d)     The DIP ABL Loan Parties shall be required to comply with each Approved Budget in all material respects,  including having made all scheduled payments to the DIP ABL Credit Parties and the Prepetition ABL Credit Parties, as applicable, as and when required, subject to the following (the "Permitted Variance"): the Borrowers' Net Cash Flow shall not be less than the Net Cash Flow set forth in the Approved Initial Budget minus the Applicable Variance Percentage of the absolute value of the Net Cash Flow set forth in the Approved Initial Budget; provided, however, to the extent any amounts owed to professionals and vendors are permitted to be paid in accordance with the foregoing covenant but are not actually paid during the subject period, such amounts may be paid during a subsequent period. "Applicable Variance Percentage" shall mean, from the Initial Closing Date until November 10, 2018, 20%; from November 24, 2018 until the Termination Date, 15%.  Such covenant shall be tested on Saturday each second week (commencing on November 10, 2018) (but shall be reported each week) on a cumulative basis from the Petition Date until the fourth (4th) week after the Petition Date and then on a rolling four (4) week basis, pursuant to the Budget Variance Report delivered by the DIP ABL Borrowers to the DIP ABL Agents.

(d)     [Paragraph to be revised in accordance with the UCC's Objection to provide for either a gross disbursements test or a flat net variance permitted amount of over $50 million and to exclude professional fees.]

(e)     The DIP ABL Loan Parties shall arrange for a weekly conference call with the DIP ABL Agents and their professional advisors and the Creditors' Committee's professional advisors discussing and analyzing cash flow and related forecasts for the prior week, the financial condition, liquidity and results of operations of each of the DIP ABL Loan Parties, status of the Chapter 11 Cases and progress in achieving the Case Milestones set forth in the DIP ABL Loan Documents.

2221.  ***Winndown Account.***   After entry of the Final Order, upon the consummation of any sales of Prepetition Unencumbered Assets, the DIP ABL Loan Parties shall deposit the first $200 million of net cash proceeds in respect of such sales into the Winddown Account.  "Winddown Account" shall mean a cash collateral account at Bank of America, N.A. that, prior to the discharge in full of all obligations under the DIP ABL Facility, may only be used to pay winddown costs of the DIP ABL Loan Parties at the discretion of the DIP ABL Loan Parties following entry of the Final Order.

2322.  ***Modification of DIP ABL Loan Documents***.  The Upon no less than three (3) business days' notice to the Creditors' Committee, the DIP ABL Loan Parties and the DIP ABL Agents are hereby authorized, subject to the DIP ABL Loan Documents, to implement, in accordance with the terms of the respective DIP ABL Loan Documents, any amendments, waivers, consents or other modifications to or under the DIP ABL Loan Documents (including any change in the number or composition of the DIP ABL Lenders) without further order of this

Court unless such amendment, waiver, consent or other modification (a) restricts, limits or prohibits any payments required pursuant to paragraph 1817 of this InterimFinal Order, or (b) shortens the maturity or the scheduled termination date thereunder.

2423.   ***Right to Credit Bid.***  Subject to Section 363(k) of the Bankruptcy Code, the DIP ABL Agent and the Prepetition ABL Administrative Agent (subject to obtaining any required consent or direction of the requisite number or percentage of the Prepetition ABL Credit Parties) shall have the right to "credit bid" up to the full allowed amount of their respective claims and outstanding obligations in connection with any sale of all or any portion of the DIP ABL Collateral or Prepetition ABL Collateral, as applicable, including any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code or otherwise.  For the avoidance of doubt, any such credit bid for all or any portion of the DIP ABL Collateral or Prepetition ABL Collateral must, upon closing of such sale transaction, provide for payment in full of all senior security interests in and liens on all of the DIP ABL Collateral or Prepetition ABL Collateral being acquired in such sale transaction, absent waiver by the DIP ABL Agents or the Prepetition ABL Administrative Agent, as applicable.

2524.   ***Automatic Perfection of DIP ABL Liens and Adequate Protection Liens.***

(a)     This InterimFinal Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP ABL Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts,

securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens and the Adequate Protection Liens, or to entitle the DIP ABL Credit Parties or the Prepetition Credit Parties to the priorities granted herein.

(b)    Notwithstanding the foregoing, the DIP ABL Agents and the Prepetition Agents each are hereby authorized, but not required, to file or record (and to execute in the name of the applicable DIP ABL Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over cash, deposit accounts, securities, or other assets, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP ABL Agents or the Prepetition Agents (as applicable) choose, in their sole discretion, to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over any cash, deposit accounts, securities, or other assets, or otherwise confirm perfection of the liens and security interests granted to the DIP ABL Control Co-Collateral Agent and the Prepetition ABL Control Co-Collateral Agent, respectively, hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this ~~Interim~~Final Order) immediately upon entry of this ~~Interim~~Final Order, except as set forth in Paragraphs 40 and 41.

(c)    The DIP ABL Loan Parties are authorized to execute and deliver promptly upon demand to the DIP ABL Agents or the Prepetition Agents all such financing

statements, mortgages, control agreements, notices and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request. The DIP ABL Loan Parties are authorized to, and shall, execute and deliver to the DIP ABL Agents and the Prepetition Agents such agreements, financing statements, mortgages, instruments and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect the DIP ABL Liens or the Adequate Protection Liens; and the failure by the DIP ABL Loan Parties to execute or deliver any documentation relating to the DIP ABL Liens or the Adequate Protection Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

(d)    As set forth in the DIP ABL Term Sheet, Wells Fargo Bank, National Association has appointed Bank of America, N.A., in its capacity as a DIP ABL Co-Collateral Agent, as agent to the DIP ABL Co-Collateral Agents for purposes of filing financing statements, mortgages, control agreements, notices and other documents, in connection with the perfection of a security interest in the DIP ABL Collateral which was granted for the benefit of the DIP ABL Credit Parties (the "DIP ABL Control Co-Collateral Agent"). Each Debtor acknowledges that any and all actions to be taken by the DIP ABL Co-Collateral Agents under this ~~Interim Order, the~~ Final Order, the DIP ABL Term Sheet, and the DIP ABL Loan Documents, may be taken individually by the DIP ABL Control Co-Collateral Agent, and all such actions shall have the full force and effect as though taken jointly by both of the DIP ABL Co-Collateral Agents. The financing statements described above may describe the DIP ABL Collateral in the same manner as described herein, in the DIP ABL Term Sheet and in the DIP ABL Credit Agreement, or may contain an indication or description of the DIP ABL Collateral that describes such property in any other manner as the DIP ABL Control Co-Collateral Agent

may determine is necessary, advisable or prudent, including describing such property as "all assets and all personal property whether now owned or hereafter acquired" of the applicable Debtor or words of similar effect.

(e)    The DIP ABL Agents and the Prepetition Agents, each in their discretion, may file a photocopy of this ~~Interim~~Final Order as a financing statement or other notice of lien or similar instrument, with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept and record the photocopy of this ~~Interim~~Final Order, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Each Debtor is authorized to execute and deliver to the DIP ABL Agents or Prepetition Agents, mortgages in recordable form with respect to any real estate constituting DIP ABL Collateral and identified by any of the DIP ABL Agents or Prepetition Agents on terms reasonably satisfactory to the DIP ABL Agents or Prepetition Agents, as applicable.

~~26~~25.    ***Other Automatic Perfection Matters.***  To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee or additional insured under any of the DIP ABL Loan Parties' insurance policies, or is the secured party under any Prepetition Loan Document, each of the DIP ABL Agents, for itself and on behalf of the DIP ABL Credit Parties is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the DIP ABL Loan Parties' insurance policies, and the secured party under each such Prepetition Loan Document (in any such case with the same priority of liens and claims thereunder relative to the priority of (a) the DIP ABL Liens, and (b) the Prepetition Liens and Adequate Protection Liens, in each case, as set forth in this ~~Interim~~Final Order), and shall have all rights and powers in each case attendant to that

67

position (including rights of enforcement but subject in all respects to the terms of this ~~Interim~~Final Order), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this ~~Interim~~Final Order and the DIP ABL Loan Documents.  The Prepetition ABL Control Co-Collateral Agent or the Prepetition Second Lien Collateral Agent, as applicable, shall serve as agent for the DIP ABL Agents for purposes of perfecting the DIP ABL Agents' security interests in and liens on all DIP ABL Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

~~27~~26.   ***Proceeds of Subsequent Financing.***  If any of the DIP ABL Loan Parties, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in any of the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt in breach of the DIP ABL Loan Documents, at any time prior to the repayment in full in cash of all DIP ABL Secured Obligations, ~~or all Prepetition ABL Obligations,~~ including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the DIP ABL Loan Parties and the DIP ABL Loan Parties' estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agents~~, or if~~ until the DIP ABL Secured Obligations have been paid in full in cash~~, to the Prepetition ABL Administrative Agent, to be applied in accordance with this Interim Order and the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and the Prepetition Loan Documents, as applicable~~.

27.   ***Reserved.***

28.   ***Maintenance and Disposition of DIP ABL Collateral / Cash Management.***  Until the indefeasible payment in full in cash of all DIP ABL Secured

Obligations, and the termination of the obligation of the DIP ABL Credit Parties to extend credit under the DIP ABL Facility, the DIP ABL Loan Parties shall (a) maintain and insure the DIP ABL Collateral in amounts, for the risks, and by the entities as required under the DIP ABL Loan Documents, (b) except as set forth in this paragraph 2829, maintain their cash management system as in effect as of the Petition Date as supplemented by this Final Order, (i) subject to the DIP ABL Loan Documents; (ii) subject to the Cash Management Order,[4] as may be modified, with the prior written consent of the DIP ABL Agents by any order that may be entered by this Court; and (iii) in a manner which, in any event, shall be reasonably satisfactory to the DIP ABL Agents.  Other than as expressly required pursuant to the DIP ABL Loan Documents, the Cash Management Order or this InterimFinal Order, no modifications to the DIP ABL Loan Parties' cash management system existing as of the Petition Date may be made without the prior approval of the DIP ABL Agents, which approval shall not be unreasonably withheld. Further, the DIP ABL Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Collateral or Prepetition ABL Collateral other than in the ordinary course of business without the prior consent of the DIP ABL Agents and Prepetition ABL Agents, as applicable (and no consent shall be implied, from any other action, inaction or acquiescence by the DIP ABL Agents or Prepetition ABL Agents, or from any order of this Court), except as otherwise provided for in the DIP ABL Loan Documents or otherwise ordered by the Bankruptcy Court.

---

[4]    "Cash Management Order" means an interim or final order granting the *Motion Of Debtors For Authority To (I) Continue  Using Existing Cash Management System, Bank Accounts,  And Business Forms, (II) Implement Ordinary Course Changes  To Cash Management System, (III) Continue Intercompany Transactions, And (IV) Provide Administrative Expense Priority  For Postpetition Intercompany Claims And Related Relief.*

29.     ***Bank Products and Cash Management Services.***  From and after the date of the entry of the Interim Order, and consistent with this ~~Interim~~Final Order and the DIP ABL Loan Documents in all respects, any DIP/ABL Cash Management/Bank Products Provider shall be deemed a Secured Party (as defined in the DIP ABL Loan Documents) and a DIP ABL Credit Party with respect to any claims related to such Bank Products and Cash Management Services to the extent provided for under the DIP ABL Loan Documents, and any such Bank Products and Cash Management Services shall constitute a DIP Secured Obligation.  From and after the date of the entry of the Interim Order, the DIP ABL Loan Parties are authorized to request the continuation of letters of credit issued under the Prepetition LC Facility Agreement that are outstanding as of the Petition Date (but no new letters of credit), subject to and in accordance with the terms of the Prepetition LC Facility Agreement. Claims of the Prepetition LC Credit Parties under the Prepetition LC Facility Agreement shall continue to be secured by the Prepetition ABL Liens in the Prepetition ABL Collateral.

30.     ***Application of Proceeds of Collateral, Payments and Collections.***  After repayment in full in cash of all DIP ABL Secured Obligations ~~and all Prepetition ABL Obligations~~, any remaining proceeds of the DIP ABL Collateral shall be applied to the DIP ABL Loan Parties' remaining outstanding and unpaid obligations, in a manner consistent with the Bankruptcy Code and, except as may be otherwise ordered in one or more orders of this Court, in accordance with the rights and priorities set forth in this ~~Interim~~Final Order.

31.     *[**Case Milestones.***  The DIP ABL Loan Parties shall comply with the case milestones set forth on ~~Annex E in the DIP ABL Term Sheet or~~ otherwise set forth in the DIP ABL Loan Documents (as may be amended from time to time in accordance with the DIP ABL

Loan Documents or by order of the Bankruptcy Court, the "Case Milestones"). For the avoidance of doubt, the failure of the DIP ABL Loan Parties to comply with any of the Case Milestones[5] shall (a) constitute an Event of Default under the DIP ABL Loan Documents and this InterimFinal Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the DIP ABL Loan Parties' authority to use Cash Collateral under this InterimFinal Order; and (c) permit the DIP ABL Administrative Agent, subject to paragraph 33, to exercise the rights and remedies provided for in this InterimFinal Order and the DIP ABL Loan Documents.]

32.    ***Termination Event.***  The occurrence of (a) any Event of Default (as defined in the DIP ABL Loan Documents)[6], or (b) the failure of the DIP ABL Loan Parties to perform, in any respect, any of the terms, provisions, conditions, covenants or obligations under this InterimFinal Order are each referred to herein as a "Termination Event."

33.    ***Rights and Remedies Following a Termination Event.***

(a)    *Termination*. Immediately upon the occurrence and during the continuation of a Termination Event, with no further action of this Court, the DIP ABL Administrative Agent may (or at the direction of the Required Lenders (as defined in the DIP ABL Loan Documents) shall), notify the DIP ABL Loan Parties and the Creditors' Committee in writing that a Termination Event has occurred and is continuing (such notice, a "Termination Notice," and the date of any such notice, the "Termination Notice Date").

---

[5]    [Case Milestones to be modified in accordance with the Objection to eliminate an automatic Event of Default in the event (i) the Debtors file a plan of reorganization that is not an Acceptable Plan of Reorganization, or (ii) does not obtain and find acceptable a non-contingent and fully-financed stalking horse bid for the sale of the Go Forward Stores by December 15, 2018.]

[6]    [Events of Default to be modified in accordance with the Objection.]

(b)      *Notice of Termination*.   Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to ~~any~~the Creditors' Committee ~~(if any)~~, the U.S. Trustee, and counsel to each of the Prepetition Agents.   The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "Remedies Notice Period" and the date of the expiration of the Remedies Notice Period, the "Termination Date").

(c)      Without limiting the rights and remedies of the DIP ABL Agents and the other DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Administrative Agent may, at its option, and/or shall, upon the direction of the Required Lenders (as defined in the DIP ABL Loan Documents), as applicable, immediately upon the occurrence of and during the continuation of a Termination Event following the issuance of a Termination Notice, *inter alia*, without notice and unless the Bankruptcy Court orders otherwise, declare (a) subject to expiration of the Remedies Notice Period, all obligations owing under the applicable DIP ABL Loan Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP ABL Loan Parties, (b) the termination, reduction or restriction of any further commitment to extend credit to the DIP ABL Loan Parties to the extent any such commitment remains, (c) terminate the DIP ABL Facility and the applicable DIP ABL Loan Documents as to any future liability or obligation of the DIP ABL Agents, any DIP ABL Lender, or any other DIP ABL Credit Party, but without affecting any of the liens or the obligations and/or (d), declare a termination, reduction or restriction on the ability of the DIP ABL Loan Parties to use any Cash Collateral and exercise all other rights and remedies provided in the DIP ABL Loan Documents and applicable law, including to require the DIP ABL Loan Parties to cash collateralize any letters of

credit outstanding under the DIP ABL Facility in accordance with the DIP ABL Loan Documents (any of the actions set forth in the foregoing (a), (b), (c) and (d), a "Termination");.

(d)       During the Remedies Notice Period, the DIP ABL Loan Parties shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination or for the contested use of Cash Collateral, *provided* that the sole issue that may be raised before the Bankruptcy Court at any such emergency hearing is whether a Termination Event has occurred and/or is continuing.  During the Remedies Notice Period, the DIP ABL Loan Parties may continue to use the DIP ABL Collateral, including Cash Collateral, solely to meet payroll obligations (excluding any severance obligations) and pay expenses that the DIP ABL Agents approve asare critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Administrative Agent in its sole and absolutecommercially reasonable discretion and it being understood that none of the DIP ABL Credit Parties shall have any obligation to make an extension of credit under the DIP ABL Facility, or otherwise to fund the Carve-Out Account.  Upon expiration of the Remedies Notice Period, the DIP ABL Credit Parties or, upon payment in full of the DIP ABL Secured Obligations the Prepetition ABL Credit Parties, shall be permitted to exercise all remedies set forth herein, in the DIP ABL Loan Documents or the Prepetition ABL Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Bankruptcy Court.  Upon the occurrence and during the continuation of a Termination Event and the expiration of the Remedies Notice Period, the DIP ABL Administrative Agent, or upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Administrative Agent, and any liquidator or other professional acting on their behalf will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual

73

property and any warehouse, distribution centers, store or other locations that the DIP ABL Loan Parties have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP ABL Collateral, including pursuant to any Court approved sale process.  Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

34.    ***Modification of Automatic Stay.***  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this ~~Interim~~Final Order, including to (a) permit the DIP ABL Loan Parties to grant the DIP ABL Liens, the DIP ABL Superpriority Claims, the Post-Petition Intercompany Liens, the Post-Petition Superpriority Intercompany Claims, the Adequate Protection Liens and the Adequate Protection Claims; (b) permit the DIP ABL Agents, the Prepetition LC Facility Administrative Agent, or the Prepetition ABL Agents, as applicable, to take any actions permitted hereunder, including but not limited to the actions set forth in paragraph 25 hereof; and (c) authorize the DIP ABL Loan Parties to pay, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties to retain and apply, payments made in accordance with this ~~Interim~~Final Order.

35.      ***Good Faith***.

(a)      *Good Faith Under Section 364 of the Bankruptcy Code*.  The DIP

ABL Credit Parties have acted in good faith in connection with this ~~Interim~~Final Order and their

reliance on this ~~Interim~~Final Order is in good faith.  Based on the findings set forth in this

~~Interim~~Final Order and the record made during the ~~Interim~~Final Hearing, and in accordance with

section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this

~~Interim~~Final Order are hereafter modified, amended or vacated by a subsequent order of the

Bankruptcy Court, or any other court, the DIP ABL Credit Parties are entitled to the protections

provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or

vacatur shall not affect the validity and enforceability of the DIP ABL Secured Obligations, or

any lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP

ABL Credit Parties hereunder arising prior to the effective date of any such modification,

amendment or vacatur of this ~~Interim~~Final Order shall be governed in all respects by the original

provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges and

benefits granted herein.

(b)      *Prepetition ABL Credit Parties*.  The Prepetition ABL Credit

Parties have acted in good faith in connection with this ~~Interim~~Final Order and their reliance on

this ~~Interim~~Final Order is in good faith.  Based on the findings set forth in this ~~Interim~~Final

Order and the record made during the ~~Interim~~Final Hearing, and in accordance with section

364(e) of the Bankruptcy Code, in the event any or all of the provisions of this ~~Interim~~Final

Order are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy

Court, or any other court, the Prepetition ABL Credit Parties are entitled to the protections

provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or

vacatur shall not affect the validity and enforceability of the Prepetition ABL Obligations, or any lien, claim or priority authorized or created hereby.   Any liens or claims granted to the Prepetition ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

36.   ***Proofs of Claim.***  Any order entered by the Bankruptcy Court establishing a bar date for any claims (including administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to any DIP ABL Credit Party or any Prepetition ABL Credit Party (for purposes of this paragraph 36, in their respective capacities as such).  The DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by this ~~Interim~~Final Order in any of the Chapter 11 Cases or any Successor Case, and the provisions of this ~~Interim~~Final Order, and, upon the entry thereof, the Final Order, relating to the amount of the DIP ABL Secured Obligations, the Prepetition ABL Obligations, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to this ~~Interim~~Final Order, the Prepetition ABL Liens, the DIP ABL Liens and the DIP ABL Superpriority Claims shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status.  For the avoidance of doubt, subject to the reservation of rights set forth in paragraphs 40 and 41 hereof, the books and records of the DIP ABL Agents, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent and each of their respective successors and assigns shall be deemed conclusive as to the amount of the claims of each such party.  However, in order to facilitate the

76

processing of claims, to ease the burden upon the Bankruptcy Court and to reduce an unnecessary expense to the DIP ABL Loan Parties' estates, the Prepetition ABL Administrative Agent is authorized, but not directed or required, to file in the ~~DIP~~Prepetition ABL Loan Parties' lead chapter 11 case, a single, master proof of claim on behalf of themselves and the Prepetition ABL Credit Parties on account of any and all of their respective claims arising under the Prepetition ABL Documents, as applicable, and hereunder (the "Master Proof of Claim") against each of the ~~DIP~~Prepetition ABL Loan Parties.  Upon the filing of the Master Proof of Claim against each of the ~~DIP~~Prepetition ABL Loan Parties, the Prepetition ABL Administrative Agent, and the Prepetition ABL Credit Parties, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claim of any type or nature whatsoever with respect to the Prepetition ABL Documents, and the claim of each Prepetition ABL Credit Party (and each of its respective successors and assigns) named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each ~~case of these~~of the applicable Chapter 11 Cases.  The Prepetition ABL Administrative Agent shall not be required to identify whether any Prepetition ABL Credit Party acquired its claim from another party and the identity of any such party or to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 36 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of any Prepetition ABL Credit Party (or its successor in interest) to vote separately on any plan proposed in any of the ~~DIP~~applicable Prepetition ABL Loan Parties' Chapter 11 Cases. The Prepetition ABL Administrative Agent shall not be required to attach any instruments, agreements or other

documents evidencing the obligations owing by each of the ~~DIP~~Prepetition ABL Loan Parties to the Prepetition ABL Credit Parties, as applicable, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition ABL Administrative Agent.

37.     ***Rights of Access and Information.***  Without limiting the rights of access and information afforded the DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Loan Parties shall be, and hereby are, required to afford Representatives, agents and/or employees of the DIP ABL Agents reasonable access to: (a) the DIP ABL Loan Parties' premises, (b) knowledgeable officers of the DIP ABL Loan Parties, (c) the DIP ABL Loan Parties' books and records, and (d) the DIP ABL Loan Parties' properties and other collateral of any Debtor against whom such parties are granted DIP ABL Liens, DIP ABL Superpriority Claims, Adequate Protection Liens, or Adequate Protection Claims under this ~~Interim~~Final Order and the DIP ABL Loan Parties shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  Without limiting any other rights or remedies of the DIP ABL Agents or the other DIP ABL Credit Parties, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Loan Documents, unless otherwise ordered by the Bankruptcy Court, upon three (3) business days' written notice to counsel to the DIP ABL Loan Parties, counsel to the Creditors' Committee and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, after the expiration of the Remedies Notice Period, that a Termination Event has occurred and is continuing, the DIP ABL Agents, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP ABL Agents (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or

licensed premises of the DIP ABL Loan Parties for the purpose of exercising any remedy with respect to DIP ABL Collateral located thereon, and (ii) shall be entitled to all of the DIP ABL Loan Parties' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the DIP ABL Loan Parties, which are owned by or subject to a lien of any third party and which are used by DIP ABL Loan Parties in their businesses, in either the case of (i) or (ii), without interference from lienholders or licensors thereunder; *provided*, *however*, that the DIP ABL Agents (on behalf of the applicable DIP ABL Lenders) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the DIP ABL Loan Parties that accrue during the period of such occupancy or actual use by DIP ABL Agents calculated on a per diem basis. Nothing herein shall require the DIP ABL Loan Parties, the DIP ABL Agents or the other DIP ABL Credit Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP ABL Agents and the other DIP ABL Credit Parties herein. ~~Nothing shall prevent the rights of a landlord to object to the relief being sought in this subparagraph subject to the Final Hearing.~~ Notwithstanding the foregoing, the DIP ABL Agents' exercise of its remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

38. ***Intercompany Obligations.*** ~~To the extent any Debtor owes any intercompany obligation or indebtedness to any other Debtor or any direct or indirect subsidiary~~

of any Debtor (the "Intercompany Obligations"), such Intercompany Obligations shall, subject to the reservation of rights set forth in paragraphs 40 and 41 hereof, be subordinated to the DIP ABL Secured Obligations, and the guarantees (if any) thereof, until the DIP ABL Secured Obligations are indefeasibly repaid in full in cash.

(a) *Intercompany Obligations among Debtors.* To the extent that any Debtor transfers property (including cash) following the Petition Date (the "Transferring Debtor") to or for the benefit of any other Debtor (the "Beneficiary Debtor"), with an aggregate fair value in excess of the aggregate fair value of the property (including cash) or benefit received by the Transferring Debtor from the Beneficiary Debtor, then the following shall apply:

(i) The Transferring Debtor shall have (i) an allowed claim against the Beneficiary Debtor equal to the amount by which the fair value of the property (including cash) or benefit transferred exceeds the aggregate fair value of the property (including cash) or benefit received, under sections 364(c)(1) and 507(b) of the Bankruptcy Code, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at the same rates provided in the ABL DIP Facility calculated as of each month end accruing from and after the date such claim arises until repayment thereof (collectively, the "Post-Petition Superpriority Intercompany Claim") against the Beneficiary Debtor and (ii) a lien on all DIP Collateral of the Beneficiary Debtor's estate under Bankruptcy Code section 364(c)(3) securing such Post-Petition Superpriority Intercompany Claim (a "Post-Petition Intercompany Lien");

(ii) All Post-Petition Intercompany Claims shall be senior to all other superpriority claims against the applicable Beneficiary Debtors, subject and subordinate only to the Carve-Out and the Superpriority Claims;

(iii) All Post-Petition Intercompany Liens shall be senior to all other liens on the applicable Beneficiary Debtor's property other than the DIP ABL Liens;

(iv) Unless and until (i) the DIP ABL Secured Obligations have been unconditionally and indefeasibly repaid in full, (ii) all commitments of the DIP ABL Lenders under the DIP ABL Loan Agreement have terminated, and (iii) all obligations under any subsequent debtor in possession financing approved by the Court have been unconditionally and indefeasibly repaid and all commitments under such facility have been terminated, the Transferring Debtor shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Post-Petition Intercompany Claims or Post-Petition Intercompany Liens; and

(v) With respect to the effect of Post-Petition Intercompany Liens on any sale of property by the Debtors, (i) the Debtors may sell property, in accordance with Bankruptcy Code

section 363, free and clear of any Post-Petition Intercompany Lien with such lien attaching to the sale proceeds in the same priority as existed in respect of the property sold, and (ii) the provisions of Bankruptcy Code section 363(k) shall not apply.

        (b)    *Intercompany Debtors among Debtors and Non-Debtors.*  To the extent that any Debtor transfers property (including cash) following the Petition Date to or for the benefit of any non-Debtor affiliate, with an aggregate fair value in excess of the aggregate fair value of the property (including cash) or benefit received by the transferring Debtor from such non-Debtor affiliate, the transferring Debtor shall be deemed to have made an intercompany loan to such non-Debtor affiliate in the principal amount equal to the net fair value of property (including cash) or benefit transferred (net of any reasonable expenses for overhead or other services allocated or charged to the transferring Debtor) following the Petition Date (a "Non-Debtor Intercompany Loan").  Each Non-Debtor Intercompany Loan shall be secured by the assets of the non-Debtor affiliate (subject to any existing liens) and shall accrue interest at the same rates as provided by the DIP ABL Facility calculated as of each month end accruing from and after the date such claim arises until repayment thereof.  Each Non-Debtor Intercompany Loan shall be evidenced by a promissory note where practicable or a book entry as a debt obligation payable by such non-Debtor affiliate to the transferring Debtor.

        (c)    The Debtors shall inform the Creditors' Committee of the Debtors' methodology in determining the allocation of expenses among the Debtors as reflected in postpetition intercompany month-end balances.  To the extent the Creditors' Committee objects to such methodology it may file such objection with the Court.  The Debtors agree, without waiving any arguments, defenses, or claims that they may have in response to such objection, that the Court shall have jurisdiction to hear and determine such objection.

(d)    For the avoidance of doubt, any reference in this ~~Interim~~Final Order to payment (or repayment) in full shall mean: (~~a~~i) indefeasible repayment of all outstanding obligations in full in cash, (~~b~~ii) termination or expiration of all commitments under any applicable DIP ABL Loan Documents ~~or Prepetition ABL Loan Documents~~ and termination or expiration of any other commitment of any DIP ~~ABL Credit Parties or Prepetition~~ ABL Credit Parties to make extensions of credit to any of the DIP ABL Loan Parties under any such DIP ABL Loan Documents ~~or Prepetition ABL Loan Documents, respectively, (c~~, and (iii) all letters of credit issued or deemed issued under the DIP ABL Loan Documents have been canceled or have expired, and all amounts drawn thereunder have been reimbursed in full in cash (or other arrangements with respect thereto satisfactory to the DIP ABL Agents in their sole discretion shall have been made)~~, and (d) solely with respect to the Prepetition ABL Obligations (i) if no Challenge Proceeding has been timely and properly commenced with respect to the prepetition obligations subject to the ABL Roll Up, the expiration of the Challenge Period, or (ii) the date on which any order entered by the Bankruptcy Court in favor of the applicable secured party in such Challenge Proceeding becomes final and non-appealable. For the avoidance of doubt, any Intercompany Obligations shall be subordinated to the DIP ABL Secured Obligations and the Adequate Protection Claims.~~.

39.    ***Prohibited Use of DIP ABL Facility, DIP ABL Collateral, Cash Collateral, Carve-Out, etc***.  Notwithstanding anything herein, prior to indefeasible payment in full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, except as otherwise expressly provided in this ~~Interim~~Final Order, the DIP ABL Facility, the DIP ABL Collateral, the Cash Collateral, the Prepetition ABL Collateral, proceeds of any of the foregoing, and the Carve-Out may not be used:

(a)    for the payment of interest and principal with respect to Prepetition Obligations or any other prepetition indebtedness of the Debtors, except for: (i) the Carve-Out; (ii) prepetition employee wages, benefits and related employee taxes as of the Petition Date; (iii) prepetition sales, use and real property taxes; (iv) prepetition amounts due in respect of insurance financings, premiums and brokerage fees; (v) payment of certain expenses (which expenses shall include fees and expenses of professionals) of the Prepetition ABL Agents and the Prepetition ABL Credit Parties (solely as required under the Prepetition Loan Documents); (vi) other "first day" interim and final orders permitting payment of prepetition claims, in the case of (ii) through (vi) pursuant to an order or orders of the Bankruptcy Court in form and substance acceptable to the DIP ABL Agents in their ~~sole and absolute~~reasonable discretion and subject to and in accordance with the Approved Budget; (vii) the ABL Roll Up; and (viii) other indebtedness to the extent authorized by the Bankruptcy Court and set forth in the Approved Budget;

(b)    subject to this ~~Interim~~Final Order in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation or threatened litigation (including any investigation in connection with such litigation or threatened litigation) of any type adverse to the rights, remedies, claims or defenses of the DIP ABL Credit Parties[5] or the Joint Lead Arrangers under the DIP ABL Loan Documents or the Prepetition ABL Credit Parties[7] under the Prepetition ABL Loan Documents, this ~~Interim~~Final Order, including for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding, challenging, or subordinating, in whole or in part, the DIP ABL Secured Obligations, the DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the ~~Adequate Protection Claims, the~~Prepetition ABL Facilities Adequate Protection Liens~~,~~ or ~~any adequate protection payments pursuant to this Interim Order~~the Prepetition ABL Adequate Protection Claims ; (B) for monetary, injunctive, declarative or other affirmative relief against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties or their respective collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties of any rights and remedies

---

[5] ~~For the purposes of this paragraph 39, the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.~~

[7] For the purposes of this paragraph 39, the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

under this ~~Interim~~Final Order, the DIP ~~ABL Loan Documents, the Prepetition~~ ABL Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by the DIP ABL Credit Parties or the Prepetition ~~ABL~~ Credit Parties upon any of their respective collateral;

(c)     to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP ABL Agents, unless otherwise set forth in the Approved Budget;

(d)     to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtors (including so-called "topping fees," "exit fees" and other similar amounts), except as approved by the Bankruptcy Court, without prior written consent by the DIP ABL Agents, unless otherwise included in the Approved Budget;

(e)     to object to, contest, or interfere with, in any way, the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' enforcement or realization upon any of the Prepetition ABL Collateral or DIP ABL Collateral once a Termination Event has occurred, except as provided for in this ~~Interim~~Final Order, or seek to prevent the DIP ABL Credit Parties or the Prepetition ABL Credit Parties from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

(f)     unless in connection with the repayment in full, in cash of the  DIP ABL Facility, or the Prepetition ABL Secured Obligations, as applicable, to use or seek to use Cash Collateral while the  DIP ABL Secured Obligations, the Prepetition ABL Obligations and/or any of the DIP ABL Credit Parties' commitments under the DIP ABL Loan Documents remain outstanding, without the consent of the DIP ABL Agents, or the Prepetition ABL Administrative Agent, as applicable, other than during the Remedies Notice Period during which period the DIP ABL Loan Parties may only use Cash Collateral in accordance with the terms of this ~~Interim~~Final Order;

(g)     to use or seek to use any insurance or tax refund proceeds constituting DIP ABL Collateral or Prepetition ABL Collateral other than solely in accordance with the Approved Budget and the DIP ABL Loan Documents;

(h)     to incur indebtedness senior in priority to the DIP ABL Obligations or provide a lien in connection with such indebtedness that primes the DIP ABL Liens other than in accordance with the Approved Budget or the DIP ABL Loan Documents without the prior consent of the DIP ABL Agent;

(i)     to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, however, that, ~~if a Creditors' Committee is appointed,~~

not more than $100,000 in the aggregate of proceeds of the Carve-Out, any Cash Collateral, or any proceeds of the DIP ABL Facility or the DIP ABL Collateral may be used by ~~such~~the Creditors' Committee for purposes of investigating such claims, liens, or interests of the Prepetition ABL Credit Parties pursuant to paragraphs 40 and 41 (but not to litigate any of the foregoing);

(j)     to assert, commence, prosecute or support any claims or causes of action whatsoever, including any Avoidance Action, against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

(~~k~~j)    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP ABL Secured Obligations, the DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Adequate Protection Claims, the Prepetition ABL Facilities Adequate Protection Liens, ~~any adequate protection payments pursuant to this Interim Order~~ or any other rights or interests of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

(~~l~~k)    to sell or otherwise dispose of the DIP ~~ABL Collateral or the Prepetition~~ ABL Collateral  other than as contemplated by the DIP ABL Loan Documents ~~or the Prepetition ABL Loan Documents, as applicable~~; or

(~~m~~l)    for any purpose otherwise limited by the DIP ABL Loan Documents ~~or the Prepetition ABL Loan Documents, as applicable~~.

40.     ***Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.***  The stipulations and admissions contained in this ~~Interim~~Final Order, including the Debtors' Stipulations, shall be binding on the Debtors and any successors thereto in all circumstances.  The Debtors' Stipulations shall be binding on the Debtors' estates and each other party in interest, including ~~any~~the Creditors' Committee, unless, and solely to the extent that (a) any such party in interest, ~~including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including any~~the Creditors' Committee~~)~~, and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors~~, with standing and requisite authority,~~ has timely ~~commenced~~filed a claim objection or, to the extent required, a

motion for standing to commence an adversary proceeding (subject to the limitations set forth in paragraphs 40 and 41 hereof) against the Prepetition ABL Credit Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "Representatives") in connection with any matter related to the Prepetition ABL Loan Documents or the Prepetition ABL Collateral (a "Challenge Proceeding") by no later than on or before each of a period of 60 days after entry of the Final Order (the "Challenge Period"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding.  Upon the expiration of the Challenge Period, without the filing of a Challenge Proceeding.

(a)     any and all such Challenge Proceedings and objections by any party (including any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred,

(b)     all matters not subject to the Challenge Proceedings, including all findings, the Debtors' Stipulations, all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition ABL Credit Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Case;

(c)     any and all prepetition claims or causes of action against the Prepetition ABL Credit Parties, as applicable, relating in any way to the Debtors Prepetition ABL Loan Parties or the Prepetition ABL Documents, as applicable, shall be forever waived and released by the Debtors, the Debtors' estates, all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Case;

(d)     to the extent not theretofore repaid, the Prepetition ABL Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction (except as may be provided by

Section section 506(a) of the Bankruptcy Code), defense or avoidance, for all purposes in these Chapter 11 Cases or any Successor Case;

(e)     the Prepetition ABL Liens on the Prepetition ABL Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and

(f)     the obligations under the Prepetition ABL Loan Documents and the Prepetition ABL Facility Liens on the Prepetition ABL Collateral shall not be subject to any other or further challenge by the Debtors, the Creditors' Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a chapter 7 or chapter 11 trustee and/or examiner appointed or elected for any of the Debtors with respect thereto).

41.     If any Challenge Proceeding is timely commenced, the admissions and stipulations contained in this Interim Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Creditors' Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final, non-appealable order) in such Challenge Proceeding. Nothing in this Interim Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including claims and defenses with respect to the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral. Notwithstanding anything to the contrary in this Interim Final Order, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, none of the Company Debtors, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings nor the Creditors' Committee shall not be prohibited from investigating or pursuing

any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL Loans or the Carve Out.

42.    Notwithstanding any provision herein to the contrary, the Challenge Period shall not apply with respect to any challenge as to the value of the DIP Collateral, the Prepetition ABL Collateral, the Prepetition Second Lien Collateral or the extent of any Diminution in Value.

4243.    *No Third Party Rights.*    Except as explicitly provided for herein, this InterimFinal Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

4344.    *Limitations on Charging Expenses.*    In the Final Order, the Debtors will request that noNo costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP ABL Credit Parties orwith respect to the DIP ABL Collateral or the Prepetition ABL Credit Parties orwith respect to the Prepetition ABL Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior written consent of each of the DIP ABL Agents, any DIP ABL Credit Party, and/or any Prepetition ABL Credit Party, as applicable, and no such consent shall be implied from this InterimFinal Order or any other action, inaction, or acquiescence by any such agents or lenders.

4445.    *Section 552(b).*    In the Final Order, the Debtors will request that theThe "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, with respect to proceeds,

products, offspring or profits of any of the Prepetition ABL Collateral or the DIP ABL Collateral.

45~~46~~.  ***No Marshaling/Applications of Proceeds.***  ~~In the Final Order, the Debtors will request that neither~~Neither the DIP ABL Credit Parties nor the Prepetition ABL Credit Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP ABL Collateral or the Prepetition ABL Collateral.

46~~47~~.  ***Discharge Waiver.***  The Debtors expressly stipulate, and the Bankruptcy Court finds and adjudicates that, none of the DIP ABL Secured Obligations, the DIP ABL Superpriority Claims, the DIP ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payment obligations pursuant to this ~~Interim~~Final Order, shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP ABL Secured Obligations and the Adequate Protection Claims have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

47~~48~~.  ***Rights Preserved.***  Other than as expressly set forth in this ~~Interim~~Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are preserved.  Nothing contained herein shall be deemed to prevent the Prepetition ABL Credit Parties from requesting additional adequate protection or from arguing that the adequate protection granted herein does in fact adequately protect the Prepetition ABL Credit Parties against any post-petition diminution in value of the Prepetition ABL Collateral.

48~~49~~.  ***Release.***  ~~In the Final Order, the Debtors will seek approval of the following: subject~~Subject to paragraphs 40 and 41 and as further set forth in the DIP ABL Loan

Documents, the Debtors, on behalf of themselves and their estates (including any successor

trustee or other estate representative in these Chapter 11 Cases or any Successor Case) and any

party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and

agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or

future DIP ABL Agents and other current or future DIP ABL Credit Parties, the Joint Lead

Arrangers (as defined in the DIP ABL Loan Documents), the current or future Prepetition ABL

Administrative Agent, Prepetition LC Facility Administrative Agent and other current or future

Prepetition ABL Credit Parties and each of their respective participants and each of their

respective affiliates, and each of their respective Representatives, from any and all claims,

demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and

obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses,

damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known,

unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent,

pending, or threatened, including all legal and equitable theories of recovery, arising under

common law, statute or regulation or by contract, of every nature and description, arising out of,

in connection with, or relating to the DIP ABL Facility, the DIP ABL Loan Documents, the

Prepetition ABL Facility, the Prepetition ABL Loan Documents, or the transactions and

relationships contemplated hereunder or thereunder, including (i) any so-called "lender liability"

or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising

under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the

validity, priority, perfection, or avoidability of the liens or secured claims of the DIP ABL

Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, the Prepetition LC

Facility Administrative Agent and the other Prepetition ABL Credit Parties; and (b) waive any

and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP ABL Secured Obligations, the DIP ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Obligations, and the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any adequate protection payment obligations pursuant to this Interim Order, *provided*, *however*, that the foregoing release shall not release any claims for fraud or willful misconduct, *provided, further* that ESL Investments, Inc., in any capacity, and each of its affiliates shall not be entitled to a release pursuant to this paragraph.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP ABL Loan Documents.

49 50.  ***No Waiver by Failure to Seek Relief.***  The failure or delay of the DIP ABL Credit Parties or the Prepetition Credit Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Final Order, the Prepetition Loan Documents, the DIP ABL Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Credit Parties or the Prepetition Credit Parties.

50 51.  ***Binding Effect of Interim Final Order.***  Immediately upon entry by the Bankruptcy Court (notwithstanding any applicable Bankruptcy Rules or any other law or rule to the contrary), the terms and provisions of this Interim Final Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP ABL Credit Parties, and the Prepetition ABL Credit Parties, and their respective successors and assigns.  To the extent there is any applicable stay of this Interim Final Order, it is hereby waived.

5152.  ***No Modification of ~~Interim~~Final Order.***  The Debtors irrevocably waive the right to seek and shall not seek or consent, directly or indirectly without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, which consent of the DIP ABL Agents or Prepetition ABL Agents may be refused in their sole and absolute discretion: (a)  any modification, stay, vacatur or amendment to this ~~Interim~~Final Order; (b) other than the Carve-Out, a priority claim for any administrative expense or unsecured claim against the Debtors to the fullest extent permitted under the Bankruptcy Code in the Chapter 11 Cases or any Successor Case, equal or superior to the ~~Adequate Protection Claims, other than the Carve-Out and the~~ DIP ABL Superpriority ~~Claim~~Claims; (c~~) any order allowing use of Cash Collateral constituting DIP ABL Collateral other than this Interim Order and the Final Order; (d~~) any lien on any of the DIP ABL Collateral, with priority equal or superior to the ~~Adequate Protection~~DIP ABL Liens (other than the Permitted Prior ~~Liens and the DIP ABL~~ Liens).  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this ~~Interim~~Final Order without the prior written consent of the DIP ABL Agents and ~~the Prepetition ABL Agents, as applicable, and~~ no such consent shall be implied by any other action, inaction or acquiescence of the ~~Prepetition ABL Credit Parties or the~~ DIP ABL Credit Parties.

5253.  ***~~Interim~~Final Order Controls.***  In the event of any inconsistency between the terms and conditions of the DIP ABL Loan Documents~~ or this~~, the Interim Order or this Final Order, the provisions of this ~~Interim~~Final Order shall govern and control.

5354.  ***Survival.***  The provisions of this ~~Interim~~Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any

Successor Case; or (d) pursuant to which the Bankruptcy Court abstains from hearing the Chapter 11 Cases or any Successor Case. The terms and provisions of this ~~Interim~~Final Order, including, subject to paragraphs 41 and 42, the claims, liens, security interests and other protections granted to the Prepetition Credit Parties and the DIP ABL Credit Parties pursuant to this ~~Interim~~Final Order and/or the Prepetition Loan Documents (other than as modified hereby), notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this ~~Interim~~Final Order until all DIP ABL Secured Obligations, ~~all Prepetition ABL Obligations, all~~ ~~Prepetition Second Lien Obligations,~~ ~~all Adequate Protection Claims, and any adequate protection payment obligations pursuant to~~ ~~this Interim Order,~~ have been paid in full.

~~54~~55. ***Preservation of Rights Granted Under this*** ~~***Interim***~~***Final*** ***Order***.

(a)    Except as expressly provided herein or in the DIP ABL Loan Documents, no claim (to the fullest extent permitted under the Bankruptcy Code) or lien having a priority senior to or *pari passu* with that granted by this ~~Interim~~Final Order to the DIP ABL Credit Parties shall be granted while any portion of the DIP ABL Secured Obligations remain outstanding, and the DIP ABL Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP ABL Secured Obligations ~~and Prepetition ABL~~ ~~Obligations~~ shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP ABL Loan Documents and shall terminate the

93

right of the DIP ABL Loan Parties to use Cash Collateral if any of the Debtors seek, or if there is entered (i) any stay, vacatur, rescission, modification, amendment, or extension of this ~~Interim Order or the~~ Final Order without the prior written consent of the DIP ABL Agents, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP ABL Agents; (ii) an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of these Chapter 11 Cases; (iii) [reserved]; or (iv) any other order granting adequate protection or authorizing the use of Cash Collateral without the prior written consent of the DIP ABL Agents ~~and the Prepetition ABL Agents~~, and no such consent shall be implied by any other action, inaction, or acquiescence by any of the DIP ~~ABL Agents and the Prepetition~~ ABL Agents.  If an order dismissing or converting any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the DIP ABL Superpriority Claims, Adequate Protection Claims and other administrative claims granted under this ~~Interim~~Final Order, the DIP ABL Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~Final Order until all DIP ABL Secured Obligations~~, all Prepetition Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to this Interim Order~~ shall have been paid and satisfied in full (and that such DIP ABL Superpriority Claims~~, Adequate Protection Claims, the other administrative claims granted under this Interim Order,~~ and the DIP ABL Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)    If any or all of the provisions of this ~~Interim~~Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP ABL Secured Obligations, the Adequate Protection Claims, or any adequate protection payment obligations pursuant to this ~~Interim~~Final Order incurred prior to the actual receipt of written notice by the DIP ABL Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority, or enforceability of the DIP ABL Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of DIP ABL Collateral and Prepetition ABL Collateral (including Cash Collateral), any DIP ABL Secured Obligations, any Adequate Protection Claims, or any adequate protection payment obligations pursuant to the ~~Interim~~Final Order incurred by the DIP ABL Loan Parties to the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, and/or the Prepetition ABL Credit Parties, as the case may be, prior to the actual receipt of written notice by the DIP ABL Agents and/or the Prepetition ABL Agents, as the case may be, of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this ~~Interim~~Final Order, and pursuant to the DIP ABL Loan Documents with respect to all such uses of the DIP ABL Collateral (including the Cash Collateral), all DIP ABL Secured Obligations, all Adequate Protection Claims, and all adequate protection payment obligations pursuant to this ~~Interim~~Final Order.

~~55.    *Final Hearing.*  The Final Hearing to consider entry of the Final Order and approval of the DIP ABL Facility on a final basis is scheduled for November 15, 2018 at~~

95

10:00 a.m. Eastern Time before the Honorable Robert D. Drain, United States Bankruptcy Judge, the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

56.    ***Notice of Final Hearing***.  Notice of the Final Hearing shall be provided in accordance with the terms of the Case Management Order.

57.    ***Objection Deadline***.  Objections, if any, to the relief sought in the Motion with respect to entry of the Final Order shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and served upon:  (a) proposed counsel to the Debtors; (b) the U.S. Trustee; (c) proposed counsel to the Creditors' Committee; (d) counsel to the DIP ABL Agents; (e) counsel to the Prepetition ABL Administrative Agent; and (f) counsel to the Prepetition Second Lien Agents, so that such objections are filed with the Bankruptcy Court and received by said parties on or before 4:00 p.m. Eastern Time on November 8, 2018.

58~~56~~.    ***Retention of Jurisdiction***.  The Bankruptcy Court shall retain jurisdiction to enforce this ~~Interim~~Final Order according to its terms to the fullest extent permitted by applicable law.

59~~57~~.    ***Chubb Reservation of Rights.***  For the avoidance of doubt, (i) the DIP ABL Credit Parties shall not have a security interest or lien on any collateral provided by or on behalf of the Debtors to ACE American Insurance Company and ACE Fire Underwriters Insurance Company (together, with each of their affiliates and affiliates successors, "Chubb"), (ii) the Debtors may not grant liens and/or security interests in such property to any other party, and (iii) this Order does not grant the Debtors any right to use any property (or the proceeds

thereof) held by Chubb as collateral under insurance policies and related agreements;  provided

that to the extent any such property reverts to the Debtors, such property shall be subject to the

terms of this ~~Interim~~Final Order.


Dated: _____, 2018
White Plains, New York

_____
Robert D. Drain
United States Bankruptcy Judge

| Summary report: Litéra® Change-Pro TDC 10.1.0.300 Document comparison done on 11/14/2018 10:21:59 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4820-3432-2554/1/Sears Proposed DIP ABL Interim Order (002).docx | |
| **Modified DMS:** nd://4820-3432-2554/8/Sears Proposed DIP ABL Interim Order (002).docx | |
| **Changes:** | |
| Add | 483 |
| Delete | 434 |
| Move From | 54 |
| Move To | 54 |
| Table Insert | 0 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1026 |

## **EXHIBIT C**

In exchange for the use and priming of their interest in the Prepetition Collateral, the Debtors propose to provide the Prepetition Credit Parties with adequate protection on account of the potential diminution of value in their interests in the collateral securing the Prepetition ABL Facilities and the Prepetition Second Lien Facilities, respectively, in descending order of priority:

EXHIBIT C-1

| Party | Adequate Protection |
|---|---|
| Prepetition ABL Credit Parties<br><br>(other than the lenders under the Prepetition ABL 2018 FILO Facility "<u>2018 FILO Lenders</u>") and the Stand-Alone L-C Facility (the "<u>Prepetition Stand-Alone L-C Facility Lenders</u>") | Valid and perfected replacement and additional security interests in, and liens on, all DIP ABL Collateral (the "<u>Prepetition ABL Facilities Adequate Protection Liens</u>"), which shall be:<br><br>(i)    solely with respect to the Prepetition ABL Collateral, subject and subordinate only to the Carve-Out, the Permitted Prior Liens and the DIP ABL Liens;<br><br>(ii)    solely with respect to the Prepetition Encumbered DIP ABL Collateral, subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date and the DIP ABL Liens;<br><br>(iii)    solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out and the DIP ABL Liens; and<br><br>(iv)    otherwise senior to all security interests in, liens on, or claims against, any of the DIP ABL Collateral.<br><br>Allowed administrative claims against the DIP ABL Loan Parties' estates under Bankruptcy Code section 503(b) with superpriority pursuant to Bankruptcy Code sections 507(a) and (b) (the "<u>Prepetition ABL Adequate Protection Claims</u>"), which shall be junior to (i) the Carve-Out and (ii) the DIP ABL Superpriority Claims;<br><br>Cash payment of post-petition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement at the non-default rate (the "<u>Adequate Protection Payments</u>");<br><br>Reimbursement for fees and expenses of professionals and administrative agents (the "<u>Adequate Protection Fees Reimbursement</u>");<br><br>Continued maintenance and insurance of the Prepetition ABL Collateral and the DIP ABL Collateral (the "<u>Adequate Protection Maintenance</u>"); and<br><br>Reporting and information rights (the "<u>Reporting and Information Rights</u>") |

EXHIBIT C-2

| Party | Adequate Protection |
|---|---|
| 2018 FILO Lenders | Valid and perfected replacement and additional security interests in, and liens on, all DIP ABL Collateral (the "2018 FILO Adequate Protection Liens") which shall be: |

(i)   solely with respect to the Prepetition ABL Collateral, subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the DIP ABL Liens and the Prepetition ABL Facilities Adequate Protection Liens;

(ii)  solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens and the Prepetition ABL Facilities Adequate Protection Liens;

(iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, and the Prepetition ABL Facilities Adequate Protection Liens; and

(iv)  otherwise senior to all security interests in, liens on, or claims against, any of the DIP ABL Collateral.

Allowed administrative claims against the DIP ABL Loan Parties' estates under Bankruptcy Code section 503(b) with superpriority pursuant to Bankruptcy Code sections 507(a) and (b) (the "Prepetition 2018 FILO Adequate Protection Claims"), which shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, and (iii) the Prepetition ABL Adequate Protection Claims.

Adequate Protection Payments

Adequate Protection Fees Reimbursement

Adequate Protection Maintenance

Reporting and Information Rights

| Party | Adequate Protection |
|---|---|
| Prepetition Stand-Alone L-C Facility Lenders | Valid and perfected replacement and additional security interests in, and liens on, all DIP ABL Collateral (the "Prepetition LC Facility Adequate Protection Liens") which shall be: |

(i)   solely with respect to the Prepetition ABL Collateral, be subject and subordinate to the

EXHIBIT C-3

| Party | Adequate Protection |
|---|---|
| | Carve-Out, the Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, and the 2018 FILO Adequate Protection Liens; |
| | (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens; |
| | (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens. |
| | Allowed administrative claims against the DIP ABL Loan Parties' estates under Bankruptcy Code section 503(b) with superpriority pursuant to Bankruptcy Code sections 507(a) and (b) (the "<u>Prepetition LC Facility Adequate Protection Claims</u>"), which shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims,  (iii) the Prepetition ABL Adequate Protection Claims, and (iv) the Prepetition 2018 FILO Adequate Protection Claims. |
| | Adequate Protection Payments |
| | Adequate Protection Fees Reimbursement |
| | Adequate Protection Maintenance |
| | Reporting and Information Rights |
| Prepetition Second Lien Credit Parties | Valid and perfected replacement and additional security interests in, and liens on, all DIP ABL Collateral (the "<u>Prepetition Second Lien Adequate Protection Liens</u>") which shall be: |
| | (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out , the Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO |

EXHIBIT C-4

Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Prepetition ABL Liens;

(ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens; and

(iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens; and

(iv) otherwise be senior to all other security interests in, liens on, or claims against, any of the DIP ABL Collateral.

Allowed administrative claims against the DIP ABL Loan Parties' estates under Bankruptcy Code section 503(b) with superpriority pursuant to Bankruptcy Code sections 507(a) and (b) (the "Prepetition Second Lien Facilities Adequate Protection Claims"), which shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Prepetition ABL Adequate Protection Claims, (iv) the Prepetition 2018 FILO Adequate Protection Claims, and (v) the Prepetition LC Facility Adequate Protection Claims[1]

---

[1] Paragraph 17(d) of the Interim DIP Order erroneously flips the priority order of the Prepetition 2018 FILO Adequate Protection Claims and the Prepetition LC Facility Adequate Protection Claims. Clauses (iv) and (v) of the above table correctly set forth the priority of these Adequate Protection Claims.

EXHIBIT C-5