WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                          :
                                               :         **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,      :
                                               :         **Case No. 18-23538 (RDD)**
                                               :
         Debtors.[1]                           :         **(Jointly Administered)**
---------------------------------------------------------------x

**NOTICE OF FILING REVISED PROPOSED**
**ORDER AUTHORIZING GLOBAL BIDDING PROCEDURES**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

PLEASE TAKE NOTICE that on November 1, 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Debtors**"), filed the *Debtors' Motion for Approval of Global Bidding Procedures* (ECF No. 429) (the "**Motion**").[2]

PLEASE TAKE FURTHER NOTICE that on November 13, 2018, the Debtors filed the *Debtors' Omnibus Reply in Support of Motion for Approval of Global Bidding Procedures* (ECF No. 683) (collectively, the "**Reply**").  A revised Global Bidding Procedures Order was attached to the Reply as <u>Exhibit B</u> (the "**Revised Global Bidding Procedures Order**").

PLEASE TAKE FURTHER NOTICE that the Debtors hereby file a further revised proposed Global Bidding Procedures Order (the "**Second Revised Global Bidding Procedures Order**"), attached hereto as **<u>Exhibit 1</u>**.

PLEASE TAKE FURTHER NOTICE that attached hereto as **<u>Exhibit 2</u>** is a redline of the Second Revised Global Bidding Procedures Order reflecting changes from the Revised Global Bidding Procedures Order (changed pages only).

PLEASE TAKE FURTHER NOTICE that attached hereto as **<u>Exhibit 3</u>** is a cumulative redline reflecting all changes incorporated in the Second Revised Global Bidding Procedures Order since the fling of the Motion.

PLEASE TAKE FURTHER NOTICE that the Debtors will appear on **November 15, 2018 at 10:00 a.m. (Eastern Time)** or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or Reply (as defined herein).

WEIL:\96800696\3\73217.00044

4140, to present the Motion to the Court and request entry of the Second Revised Global Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion and Second Revised Global Bidding Procedures Order can be viewed and obtained (i) by accessing the Court's website at www.nysb.uscourts.gov, or (ii) by accessing, free of charge, the website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, https://restructuring.primeclerk.com/sears/.  Note that a PACER password is needed to access documents on the Court's website.

Dated: November 14, 2018
        New York, New York

/s/ *Sunny Singh*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
 Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

3

**<u>Exhibit 1</u>**

**Second Revised Global Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                                        :
                                                             :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                    :
                                                             :        **Case No. 18-23538 (RDD)**
                                                             :
               Debtors.[1]                                   :        **(Jointly Administered)**
-------------------------------------------------------------x

## ORDER APPROVING
## GLOBAL BIDDING PROCEDURES AND GRANTING RELATED RELIEF

Upon the motion, dated November 1, 2018 (ECF No. 429) (the "**Motion**"),[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007,

9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and

Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures.

WEIL:\96790401\16\73217.0004

New York (the "**Local Rules**"), for an order (i) (a) approving the Global Bidding Procedures, substantially in the form attached hereto as <u>**Exhibit 1**</u>, in connection with sales (each transaction, a "**Sale Transaction**") of the Debtors' assets (the "**Assets**"); (b) authorizing the Debtors to designate one or more stalking horse bidders (each, a "**Stalking Horse Bidder**," and each such bidder's bid, a "**Stalking Horse Bid**") and offer each such bidder certain bid protections including the payment of a Break-Up Fee and certain expenses (collectively, the "**Stalking Horse Bid Protections**"); (c) scheduling auctions of the Assets (each, an "**Auction**") and hearings for approval of the proposed Sale Transactions (each, a "**Sale Hearing**"); (d) authorizing and approving the form and manner of notice of the Sale Transactions, Auctions, and Sale Hearings, substantially in the form attached hereto as <u>**Exhibit 2**</u> (the "**Sale Notice**"); (e) authorizing and approving the procedures for the assumption and assignment of executory contract or unexpired non-residential real property or personal property lease of the Debtors (collectively, the "**Contracts** and **Leases**," and such procedures, the "**Assumption and Assignment Procedures**"); (f) approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in the form attached hereto as <u>**Exhibit 3**</u> (the "**Assumption and Assignment Notice**"); and (g) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to

2

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion

having been provided in accordance with the Case Management Order; such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or further notice

need be provided; and the Court having held a hearing to consider the relief requested in the

Motion on November 15, 2018 (the "**Hearing**"); and upon the record of the Hearing and all of

the proceedings had before the Court; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and is in the best

interests of the Debtors, their estates, their creditors, and all parties in interest; and after due

deliberation and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Global Bidding Procedures as set forth herein are fair, reasonable, and

appropriate, and are designed to maximize the value of the proceeds of the sale of the Assets.

B.      The Global Bidding Procedures comply with the requirements of Local

Rule 6004-1.

C.      The Assumption and Assignment Procedures are fair, reasonable, and

appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and

Bankruptcy Rule 6006.

D.      The Debtors have articulated good and sufficient business reasons for the

Court to approve (i) the Global Bidding Procedures, (ii) the designation of Stalking Horse

Bidders, (iii) the Stalking Horse Bid Protections, (v) the Sale Notice, (vi) the Assumption and

Assignment Procedures, and (vii) the Assumption and Assignment Notice.

E.      Good and sufficient notice of the relief sought in the Motion has been

provided under the circumstances, and no other or further notice is required, except as set forth in

3

the Global Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

F.    The Assumption and Assignment Procedures, Sale Notice, and Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Transaction(s), Auction(s), Sale Hearing(s), Global Bidding Procedures, Assumption and Assignment Procedures, proposed Cure Costs, potential assumption and assignment of Contracts and Leases, and all relevant important dates and deadlines with respect to the foregoing, and no other or further notice of the sale of the Assets or the assumption and assignment of Contracts and Leases in connection therewith shall be required.

G.    Good and sufficient business reasons exist for the Court to authorize the Debtors to designate Stalking Horse Bidders and enter into Stalking Horse Agreements (as hereinafter defined), in each case, in accordance with the terms of this Order and the Global Bidding Procedures.

H.    The Global Bidding Procedures are reasonably designed to promote active bidding at and participation in the Auction(s), to ensure that the highest or best value is generated for the Assets.

4

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. The Motion is granted solely to the extent set forth herein.

2. All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

3. The Global Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction(s). The failure to specifically include or reference any particular provision of the Global Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Global Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are authorized to take all actions necessary or appropriate to implement the Global Bidding Procedures in accordance with the terms of this Order and the Global Bidding Procedures.

### Designation of Stalking Horse Bidders

4. The Debtors are authorized to, in the exercise of their reasonable business judgment, and after consulting with the Consultation Parties, designate one or more Stalking Horse Bidders for one or more of the Assets and enter into asset purchase agreements with Stalking Horse Bidders (each such agreement, a "**Stalking Horse Agreement**") for the sale of any of the Assets (each such group of Assets, a "**Stalking Horse Package**"), in each case, in accordance with the terms of this Order and the Global Bidding Procedures.

5. Subject to the terms of this Order and the Global Bidding Procedures, the Debtors are authorized to offer each Stalking Horse Bidder certain Stalking Horse Bid

5

Protections, including a break-up fee (a "**Termination Payment**"); provided that, all Termination Payments must be negotiated by the Debtors, after consulting with the Consultation Parties, and no Termination Payment shall exceed three percent (3%) of the cash portion of the purchase price in the applicable Stalking Horse Bid, as set forth in the applicable Stalking Horse Agreement executed by the Debtors.

6.      If the Debtors designate a Stalking Horse Bidder with respect to any of the Assets, including the Go Forward Stores, which designation shall be after consultation with the Consultation Parties, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/Sears (the "**Prime Clerk Website**"), promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution), a Sale Notice setting forth the material terms of such Stalking Horse Agreement, including any Credit Bid and Stalking Horse Bid Protections, and attaching the Stalking Horse Agreement and proposed sale order.

7.      Objections to the designation of a Stalking Horse Bidder or any other Stalking Horse Bid Protection pursuant to the terms and provisions of a Stalking Horse Agreement, including any Credit Bid or Termination Payment (each, a "**Stalking Horse Designation Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients (a) within ten (10) calendar days after filing and service of the applicable Sale Notice with respect to all Assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after

6

filing and service of the applicable Sale Notice to file a Stalking Horse Designation Objection with respect to all Assets other than the Go Forward Stores. Parties in interest shall have until **December 31, 2018, at 4:00 p.m. (Eastern Time)** to file and serve a Stalking Horse Designation Objection with respect to the sale of the Go Forward Stores.

8.     If a timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the proposed Stalking Horse Bidder, the terms of the Stalking Horse Agreements, including any Credit Bid and Stalking Horse Bid Protections provided for under such agreement, shall not be approved until the Stalking Horse Designation Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection.

9.     If no timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the Stalking Horse Bid Protections, including any Termination Payment, will be deemed approved without further order of the Court upon the expiration of the objection deadline, including with respect to any Stalking Horse Bid Protections consistent with this Order; provided that if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid at the Auction unless it has received an order of the Court approving its ability to Credit Bid prior to the Auction. Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be

7

submitted by the applicable Bid Deadline and a determination that such Credit Bid constitutes a Qualified Bid may not be made absent an order of the Court.

10.     Absent further order of the Court, no person or entity, other than any applicable Stalking Horse Bidder, shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in the Auction or the Debtors' sale process.

## Global Bidding Procedures

11.     The deadline for submitting Qualified Bids (the "**Bid Deadline**") is **December 28, 2018, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and shall be no earlier than twenty (20) days following service of the applicable Sale Notice for all other Assets; provided that, the Debtors shall have the right, after consulting with the Consultation Parties and consistent with the terms of the DIP ABL Documents (as defined in the DIP ABL Orders), to extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain parties.  The Debtors shall promptly provide copies of all bids to each of the Consultation Parties, but in no event later than the next calendar day.

12.     For all purposes under the Global Bidding Procedures, any Stalking Horse Bidder authorized as such pursuant to this Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the applicable Stalking Horse Package by the Bid Deadline, the Debtors shall not be required to conduct an Auction for the applicable Stalking Horse Package, and the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Assets included in the applicable Stalking Horse Package as set forth herein.

13.     If, in addition to a Stalking Horse Bid, the Debtors receive at least one Qualified Bid in respect of the applicable Stalking Horse Package by the Bid Deadline, the Debtors shall conduct an Auction of the Assets in the applicable Stalking Horse Package in accordance with the Global Bidding Procedures.

14.     The Debtors may also include Assets not included in an applicable Stalking Horse Bid for bidding and sale at any Auction pursuant to the Global Bidding Procedures, including the Auction for the Go Forward Stores if a Qualified Bid seeks to purchase those Assets.

15.     The Auction will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **January 14, 2019, at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores, and Auctions will take place within twenty-five (25) days of service of the applicable Sale Notice with respect to all other Assets at a location to be announced, or at such other time and location as the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, may determine in their reasonable business judgment.

16.     All proceedings of an Auction shall be conducted openly, and the Consultation Parties, their professional advisors, and all creditors and other parties in interest shall be permitted to attend; provided that, the Debtors may, in their reasonable business judgment, and after consulting with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany Qualified Bidders or other parties in interest at an Auction.  The proceedings of Auctions shall be transcribed and/or video recorded.

9

17.     Each Qualified Bidder participating in an Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets in its bid if selected as a Successful Bidder.

18.     Subject to this Order, the Global Bidding Procedures, and the rights of a Stalking Horse Bidder under its applicable Stalking Horse Agreement, the Debtors shall have the right to, after consulting with the Consultation Parties, in the exercise of their reasonable business judgment, (i) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (ii) determine the "Baseline Bids;" (iii) determine the amount of each Minimum Overbid; (iv) determine which bids that are Qualified Bids are the Successful Bids and Back-Up Bids; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Global Bidding Procedures, Bankruptcy Code, this Order, or any other order of the Court, or (c) contrary to the best interests of the Debtors and their estates; (vi) adjourn or cancel the Auction, with respect to all or certain of the Assets, after providing notice of such adjournment or cancellation in accordance with the Global Bidding Procedures; and (vii) adjourn a Sale Hearing after providing notice of such adjournment in accordance with the Global Bidding Procedures.

19.     The Debtors shall have the right, in their reasonable business judgment, after consulting with the Consultation Parties, in a manner consistent with the Debtors' fiduciary duties and applicable law, to modify the Global Bidding Procedures, including by (i) waiving terms and conditions with respect to all Prospective Bidders; (ii) extending the deadlines set forth therein; (iii) announcing at an Auction modified or additional procedures for conducting the Auction; (iv) providing reasonable accommodations to any Stalking Horse Bidder with respect to

10

WEIL:\96790401\16\73217.0004

such terms, conditions, and deadlines of the bidding and Auction process to promote further bids

on any Assets (including extending deadlines as may be required for any applicable Stalking

Horse Bidder to comply with any additional filing and review procedures with the Federal Trade

Commission in connection with any previous filings under the Hart-Scott-Rodino Antitrust

Improvements Act of 1976), in each case, to the extent not materially inconsistent with the

Global Bidding Procedures and this Order; provided that nothing herein shall grant the Debtors

the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL

Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders.  Nothing in this

Order or the Global Bidding Procedures shall obligate the Debtors to consummate or pursue any

transaction with respect to any Asset.

## The Sale Hearings and Sale Objections Deadlines

20.     The applicable Sale Hearing shall be held before the Court on **January

31, 2019 at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores and within five

(5) days of the applicable Sale Objection Deadline (as defined herein) with respect to all other

Assets;[3] provided that, the Debtors may seek an adjournment of the Sale Hearing, as the Debtors,

after consultation with the Consultation Parties, deem appropriate in the exercise of their

reasonable business judgment.  Any sale to a Back-Up Bidder shall be considered on appropriate

notice under the Amended Case Management Procedures Order.

21.     Objections to a proposed Sale Transaction, including any objection to the

sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section

363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**"), excluding

Stalking Horse Designation Objections, shall (i) be in writing; (ii) comply with the Bankruptcy

---

[3] Subject to Court availability.

11

Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients by no later than (a) with respect to the sale of the Go Forward Stores to a Successful Bidder, including a Stalking Horse Bidder, the later of (x) **January 24, 2019 at 4:00 p.m. (Eastern Time)** and (y) eight (8) days after the filing of the Notice of Auction Results and service of the Adequate Assurance Information and (b) with respect to the sale of all other Assets, including a sale to an applicable Stalking Horse Bidder, within ten (10) days of the filing of the Notice of Auction Results and service of the Adequate Assurance Information (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing.

22.    Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the applicable Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of the Sale Transaction(s) contemplated by the asset purchase agreement between the Debtors and the applicable Successful Bidder (including any Stalking Horse Bidder if named a Successful Bidder), including the transfer of Assets to the Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

WEIL:\96790401\16\73217.0004

## Noticing Procedures

23.     The Sale Notice is approved, and no other or further notice of the sale of any Assets, an Auction, the Sale Hearings, or the Sale Objection Deadlines shall be required if the Debtors serve and publish such notice, in the manner provided in the Global Bidding Procedures and this Order.  The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

24.     Within one (1) calendar day after the (a) execution of a Stalking Horse Agreement, including with respect to the Go Forward Stores and (b) determination by the Debtors to auction an asset without a Stalking Horse Bidder, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website the Sale Notice, which shall set forth (i) a complete list and general description of the Assets (subject to modification at any Auction or Sale Hearing); (ii) the date, time, and place of the (x) Auction and (y) Sale Hearing; (z) Sale Objection Deadlines; and (aa) the procedures for filing Sale Objections.

25.     Within five (5) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors shall cause the information contained in the Sale Notice to be published once in at least one national publication.  The Debtors may elect to publish notice of the sales of other Assets in consultation with the Consultation Parties.

26.     Within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Court, serve on the Sale Notice Parties (including each Counterparty to a Proposed Assumed Contract (as hereinafter

13

defined) in a Successful Bid and Back-Up Bid and each Counterparty to any known Contracts and Leases that have been or may later be designated by a Successful Bidder for assumption and assignment), and cause to be published on the Prime Clerk Website, a notice containing the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment in connection with a Sale Transaction; (v) to the extent practicable, the governing agreement with the Successful Bidder or drafts thereof; and (vi) set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

### Assumption and Assignment Procedures

27.     The Assumption and Assignment Notice is reasonable, fair, and appropriate, and contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of Contracts and Leases (such Contracts and Leases, the "**Proposed Assumed Contracts**") shall be required if the Debtors file and serve such notice (and, subsequently, the Notice of Auction Results) in accordance with the Assumption and Assignment Procedures and this Order.

28.     The Debtors shall, within five (5) days of filing and service of a Sale Notice, or as soon as reasonably practicable thereafter, file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty, and cause to be published on the Prime

14

Clerk Website, the Assumption and Assignment Notice, which shall (i) identify the Proposed

Assumed Contracts in the applicable list of Assets or Stalking Horse Bid, as applicable, and, if

known, any additional Contracts or Leases that may be designated for assumption and

assignment to the applicable bidder (or its known proposed assignee) (including any Stalking

Horse Bidder pursuant to the terms and provisions of the applicable Stalking Horse Agreement);

(ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract and

Lease identified on the Assumption and Assignment Notice; (iii) include Adequate Assurance

Information for the Stalking Horse Bidder, if applicable, provided that Adequate Assurance

Information shall only be served on Counterparties to Contracts or Leases; (iv) expressly state

that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court

approval; (v) prominently display the deadline to file a Cure Objection and an applicable

Adequate Assurance Objection (each as hereinafter defined); and (vi) prominently display the

dates, times, and location of the Sale Hearing(s).

29.     The Debtors shall provide notice to Counterparties whose Contracts or

Leases may be designated for assumption and assignment by any Successful Bidder, pursuant to

the terms of an asset purchase agreement executed by the Debtors and the applicable Successful

Bidder, in a manner consistent with the Assumption and Assignment Procedures, this Order, and

all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

30.     Any objection to the assumption and assignment of a Contract or Lease,

the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding

defaults under such Contract or Lease (a "**Cure Objection**") shall (i) be in writing; (ii) comply

with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the

legal and factual bases thereof, including the cure amount the objecting Counterparty believes is

15

required to cure defaults under the relevant Contract or Lease; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients (a) **the later of (x) fourteen (14) calendar days after service of the Assumption and Assignment Notice and (y) January 7, 2019** with respect to Cure Objections for Proposed Assumed Contracts in a Stalking Horse Bid for the Go Forward Stores, (b) **within eight (8) calendar days of service of the Debtors' proposed Cure Costs** with respect to Cure Objections for Proposed Assumed Contracts related to a sale of the Go Forward Stores if not provided in a Stalking Horse Bid, and (c) **within fourteen (14) calendar days of service of the Assumption and Assignment Notice** with respect to all other Assets.

31.    If a Cure Objection cannot otherwise by resolved by the parties, the Debtors may, after consulting with the Consultation Parties, (i) assume the Contract(s) or Lease(s) prior to the resolution of the Cure Objection; provided that the Debtors shall (a) pay to the applicable Counterparty the undisputed portion of the Cure Cost within five (5) business days after entry of the applicable Sale Order and (b) reserve cash in an amount sufficient to pay the disputed portion of the Cure Cost asserted by the applicable Counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the Counterparty and the Debtors) (the "**Reserve Amount**"), or (ii) adjourn their request to assume the Contract or Lease pending resolution of the Cure Objection (an "**Adjourned Cure Objection**"); provided further that, to the extent the Adjourned Cure Objection is resolved or determined unfavorably to the Debtors, the Debtors may withdraw the proposed assumption of the applicable Contract or Lease after such determination by filing a notice of withdrawal, which, in the case of a Lease, shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code.  The Debtors shall file notice of their intention to

16

reserve for a Cure Cost or to adjourn their request for assumption. An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction in the Debtors' discretion.

32.     If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect  to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

33.     In accordance with the Global Bidding Procedures, to qualify as a Qualified Bidder, each Prospective Bidder shall provide with its bid information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**").

17

34.     If a Stalking Horse Bidder is named a Successful Bidder at the Auction, the Debtors shall, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to any additional Proposed Assumed Contracts added to the applicable Stalking Horse Bid at the Auction, and (ii) applicable Counterparties to any known Contracts and Leases that may later be designated by the applicable Stalking Horse Bidder for assumption and assignment pursuant to the terms of the applicable Stalking Horse Agreement, Adequate Assurance Information for the Stalking Horse Bidder.

35.     The Debtors shall, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to the Proposed Assumed Contracts included in each Successful Bid (other than a Stalking Horse Bidder), and (ii) Counterparties to any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment pursuant to an asset purchase agreement executed by the applicable Successful Bidder and the Debtors, and (iii) Adequate Assurance Information for such Successful Bidder.

36.     The Debtors shall provide or cause to be provided to applicable Counterparties Adequate Assurance Information on a strictly confidential basis.  Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection filed by the Counterparty; provided that, any Adequate Assurance Objection that discloses confidential, non-public information included in the Adequate Assurance Information, which shall be expressly identified as non-public and

18

confidential therein, must be filed with the Court with such confidential, non-public information redacted, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Contract or Lease (if different from the Successful Bidder), or ordered by the Court.

37.    Any objection to the assumption and assignment of a Proposed Assumed Contract, the subject of which objection is any Stalking Horse Bidder's or Successful Bidder's, as applicable, and/or its known proposed assignee's (if different from the Stalking Horse Bidder's or Successful Bidder's, as applicable) proposed form of adequate assurance of future performance with respect to such Proposed Assumed Contract (an "**Adequate Assurance Objection**"), shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients, including the applicable Stalking Horse Bidder or Successful Bidder, as applicable, and any known proposed assignee of such Proposed Assumed Contract (if different from the Stalking Horse Bidder or Successful Bidder, as applicable) by no later than (a) **the later of (x) fourteen (14) calendar days after service of the Assumption and Assignment Notice and (y) January 7, 2019** with respect to Adequate Assurance Information for a Stalking Horse Bidder for the Go Forward Stores, (b) **eight (8) calendar days after service of the applicable Adequate Assurance Information** with respect to Successful Bidders other than a Stalking Horse Bidder for the Go Forward Stores, and (c) **within fourteen (14) calendar days after service of the applicable Adequate Assurance Information** with respect to all other Assets.

38.    If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all

19

issues of adequate assurance of future performance with respect to the applicable Proposed Assumed Contract shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors.

39.     If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the Contract or Lease.  The Stalking Horse Bidder or Successful Bidder, as applicable, and/or its known proposed assignee of the Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

40.     The Debtors' assumption and assignment of a Proposed Assumed Contract to a Successful Bidder (or to a designee of the Successful Bidder) is subject to Court approval and consummation of a Sale Transaction with the applicable Successful Bidder.  Accordingly, absent the closing of a Sale Transaction, the Proposed Assumed Contract shall not be deemed either assumed or assumed and assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

41.     The inclusion of a Contract, Lease, or Cure Costs with respect thereto on the Assumption and Assignment Notice or the Notice of Auction Results shall not constitute or be deemed a determination or admission by the Debtors, the Stalking Horse Bidder(s) or Successful Bidders, as applicable, or any other party in interest that such Contract or Lease is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and

WEIL:\96790401\16\73217.0004

Lease listed on the Assumption and Assignment Notice and Notice of Auction Results.  The Debtors' inclusion of any Contract or Lease on the Assumption and Assignment Notice or Notice of Auction Results shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.

### **General Provisions**

42.     Parties shall serve Counterparties to Contracts and Leases by overnight delivery and by e-mail to counsel for such Counterparties who have filed a notice of appearance in these chapter 11 cases.

43.     All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Assets during the sale process, including at an Auction, shall be deemed to have knowingly and voluntarily (i) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale Transaction; (ii) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auctions, and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (iii) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

44.     Prior to mailing and publishing a Sale Notice or an Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

45.     Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP ABL Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP ABL Orders).

46.     Except with respect to the procedures for consideration of Credit Bids by any insiders or affiliates, the Debtors' rights are reserved to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law and the DIP ABL Documents (as defined in the DIP ABL Orders), and in consultation with the Consultation Parties, modify these Global Bidding Procedures; waive terms and conditions set forth herein with respect to all Prospective Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on any Assets (including extending deadlines as may be required for any Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Global Bidding Procedures and the Global Bidding Procedures Order; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP

22

ABL Documents or DIP ABL Orders. **The Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset pursuant to this Order.**

47.     To the extent there is any inconsistency between the terms of any of the DIP ABL Orders and this Order, the terms of the DIP ABL Order (or DIP ABL Orders, as applicable) shall control.

48.     Notwithstanding anything to the contrary contained in this Order or in the Global Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by this order or the Global Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents and the DIP ABL Orders, as applicable; and (iii) nothing in this Order or in the Global Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder.

49.     Nothing in this Order or the Global Bidding Procedures shall be deemed to authorize or shall be argued to permit the Debtors, their agents or advisors to take any action in connection with an unexpired master lease of nonresidential real property to which a Debtor is a party (each such lease, a "**Master Lease**") or other relief granted in this Order that is not in compliance with, or that would result in a default or breach under, such Master Lease, without either (a) an amendment to or waiver under such Master Lease, in accordance with its terms and all consents required for such amendment or waiver under such Master Lease or (b) the entry of

23

a further order of the Court, in either case, permitting such action; provided that if any property subject to a Master Lease is included in a Sale Transaction and the Debtors or any other party seek to sever a Master Lease applicable to such property, such relief shall be sought by expressly stating that such party is seeking to sever such Master Lease and describing with particularity the Master Lease and any non-Debtor counterparty to that Master Lease will have fourteen (14) calendar days to file and serve an objection to such Sale Transaction; provided further that all rights, remedies, and positions of all parties to any Master Leases are preserved.

50.    Nothing herein shall authorize, absent further order of the Court or agreement among the Debtors and the applicable non-Debtor counterparty, the sale of any real estate rights or assets free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "**Restrictive Covenants**") that are not executory or that run with the land.  To the extent that the Debtors or any other party seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto. All rights, remedies, and positions of all parties with respect to such relief are preserved.

51.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

52.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
            White Plains, New York

                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

25

## **Exhibit 1**

**Global Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al*.,      :
                                               :        **Case No. 18-23538 (RDD)**
                                               :
         Debtors.[1]                           :        **(Jointly Administered)**
-----------------------------------------------------------------x

## <u>GLOBAL BIDDING PROCEDURES</u>

The procedures set forth herein (the "**Global Bidding Procedures**") will be employed in connection with a sale or disposition of certain of the assets of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

By the *Debtors' Motion for Approval of Global Bidding Procedures* (the "**Motion**"), the Debtors sought, among other things, approval of the Global Bidding Procedures for soliciting bids for, conducting auctions (each, an "**Auction**") of, and consummating sales (each, a "**Sale Transaction**") of their assets, as further described herein.

On [_____], 2018, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered the an order approving the Motion (ECF No. [__]) (the "**Global Bidding Procedures Order**").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the Global Bidding Procedures Order.

1

To the extent that the Global Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to the Global Bidding Procedures or at any Auction, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

## I.
## Description of the Assets

The Debtors are seeking to sell [_____] (the "**Assets**").

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)).

The sale of any real estate Assets will not be free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "**Restrictive Covenants**") unless (i) the counterparties to a Restrictive Covenant agree otherwise or (ii) the Court so determines after specific notice that the Debtors are seeking to sell an Asset free and clear of an identified Restrictive Covenant, an opportunity for counterparties to object, and a hearing.

## II.
## Designation of Stalking Horse Bidders

To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the Assets, including the Go Forward Stores, which designation shall be after consultation with the Consultation Parties, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file a Sale Notice setting forth the material terms of such Stalking Horse Agreement, including any Credit Bid and Stalking Horse Bid Protections, and attaching the Stalking Horse Agreement and proposed sale order.

     i.          <u>Objections to Stalking Horse Agreement</u>. Any objections to the designation of a Stalking Horse Bidder or any other Stalking Horse Bid Protection pursuant to the terms and provisions of a Stalking Horse Agreement, including any Credit Bid or Termination Payment (each, a "**Stalking Horse Designation Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients within ten (10) calendar days after filing and service of the applicable Sale Notice with respect to all assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after filing and service of the applicable Sale Notice to file a Stalking Horse

2

Designation Objection.  Parties in interest shall have until **December 31, 2018, at 4:00 p.m. (Eastern Time)** to object to the designation of a Stalking Horse Bidder (including any Credit Bid or Stalking Horse Bid Protection) with respect to the sale of the Go Forward Stores.

If a timely Stalking Horse Designation Objection is filed and served in accordance with the preceding paragraph, the proposed Stalking Horse Bid Protections, including any Termination Payment, provided for under such agreement, shall not be approved until the Stalking Horse Designation Objection is resolved, either consensually, by agreement of the objecting party and the Debtors (after consulting with the Consultation Parties), or by order of the Bankruptcy Court resolving such objection.

For the avoidance of doubt, any Stalking Horse Agreement shall not be binding on the Debtors or their estates absent approval (or deemed approval) by the Bankruptcy Court as set forth herein.

ii.      <u>Failure to File Timely Stalking Horse Designation Objection</u>.  If no timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the Stalking Horse Bid Protections, including any Termination Payment shall be deemed approved; provided that if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid at the Auction unless it has received an order of the Court approving its ability to Credit Bid prior to the Auction.  Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be submitted by the applicable Bid Deadline and a determination that such Credit Bid constitutes a Qualified Bid may not be made absent an order of the Court.

**III.**
**<u>Important Dates and Deadlines</u>**
**[Assets Other Than Go Forward Stores]**

| | |
|---|---|
| **Within ten (10) days of service of the Sale Notice** | Deadline to object to designation of a Stalking Horse Bidder and any Stalking Horse Bid Protections offered to a party that is not an insider or affiliate (including any Credit Bid or Termination Payment) |
| **Within fourteen (14) days of service of the Sale Notice** | Deadline to object to designation of Stalking Horse Bidder and any Stalking Horse Bid Protection offered to an insider or affiliate (including any Credit Bid or Termination Payment) |

3

| | |
|---|---|
| **Within fourteen (14) days of service of the Assumption and Assignment Notice and Adequate Assurance Information for Stalking Horse Bidder, as applicable** | Deadline to object to (i) the Debtors' proposed Cure Costs for Proposed Assumed Contracts in an applicable Stalking Horse Package and (ii) the assumption of and assignment to a Stalking Horse Bidder(s) of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by a Stalking Horse Bidder for assumption and assignment |
| **No earlier than twenty (20) days following service of the Sale Notice** | Bid Deadline |
| **Subject to Court Availability** | Hearing on Stalking Horse Bidder Objections or Qualification of Affiliate/Insider Credit Bid |
| **Within five (5) days of the Bid Deadline or Court determination** | Deadline for the Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
| **Not less than twenty-five (25) days following service of the Sale Notice** | Auction |
| **Within two (2) days of the conclusion of the Auction** | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide applicable Counterparties with Adequate Assurance Information for the Successful Bidders if different than Stalking Horse Bidders |
| **Ten (10) days following the filing of Notice of Auction Results and service of the Adequate Assurance Information** | Deadline to object to (i) the proposed Sale Transaction(s) for Successful Bidders (including Stalking Horse Bidders), (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not already included in an applicable Assumption and Assignment Notice, (iii) the assumption of and assignment to a Successful Bidder(s) (including a Stalking Horse Bidder) of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder(s) for assumption and assignment, and (iv) the conduct of the Auction |
| **Within five (5) days of the deadline to file Sale Objections** | Proposed date of Sale Hearing (subject to the availability of the Court) |

## IV.
## Important Dates and Deadlines
### [Go Forward Stores]

| | |
|---|---|
| **November 15, 2018 at 10:00 a.m. (ET)** | Hearing to consider approval of Global Bidding Procedures and entry of Global Bidding Procedures Order |

4

| December 5, 2018 | Deadline to Submit Non-Binding Indication of Interest |
|---|---|
| December 15, 2018 | Deadline for the Debtors to designate Stalking Horse Bidder for Go Forward Stores and file a Sale Notice with respect to the Go Forward Stores designating a Stalking Horse Bidder |
| December 28, 2018 at 4:00 p.m. (ET) | Bid Deadline for Go Forward Stores |
| December 31, 2018 at 4:00 p.m. (ET) | Deadline to object to the designation of a Stalking Horse Bidder and any Stalking Horse Bid Protections offered for the Go Forward Stores (including any Credit Bid or Termination Payment) |
| January 4, 2019 at 4:00 p.m. (ET) | Deadline for the Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
| January 10, 2019 at 10:00 a.m. (ET) | Proposed date of hearing on Stalking Horse Designation Objections and on objections to the qualification of any Credit Bid by affiliate or insider, if necessary (subject to the availability of the Court) |
| January 14, 2019 at 10:00 a.m. (ET) | Auction for Go Forward Stores to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 |
| January 16, 2019 | Target date for the Debtors to file with the Bankruptcy Court the  Notice of Auction Results and to provide the applicable Counterparty with Adequate Assurance Information for the Successful Bidder if different than the Stalking Horse Bidder |
| The later of (i) January 24, 2019 at 4:00 p.m. (ET) and (ii) eight (8) days of the filing of the Notice of Auction Results and service of the Adequate Assurance Information | Deadline to object to (i) the proposed Sale Transaction for a Successful Bidder (including a Stalking Horse Bidder), (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not included in any Stalking Horse Bid, (iii) the assumption of and assignment to a Successful Bidder that is not a Stalking Horse Bidder of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder for assumption and assignment, and (iv) conduct of the Auction |
| January 29, 2019 at 4:00 p.m. (ET) or two (2) days prior to the Hearing Date | Debtors' Deadline to Reply to Sale Objections |
| January 31, 2019 at 10:00 a.m. (ET) | Proposed date of Sale Hearing (subject to the availability of the Court) |

5

**V.**
**Noticing**

**A.     Consultation Parties**

Throughout the sale process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"):

   i.    Bank of America, N.A., in its capacity as the administrative agent under the First Lien Credit Facility and DIP ABL Agent and its advisors, including Skadden, Arps, Slate, Meagher & Flom LLP; and Berkeley Research Group, LLC;

   ii.   Wells Fargo Bank, National Association, in its capacity as Co-Collateral Agent under the First Lien Credit Facility and Co-Collateral Agent under the DIP ABL Facility (as defined in the DIP ABL Orders) (together with Bank of America, N.A., the "**DIP ABL Agents**") and its advisors, including Choate, Hall & Stewart LLP; and

   iii.  the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**") and its advisors, including Akin Gump Strauss Hauer & Feld LLP.

The Debtors shall promptly provide copies of all bids and non-binding indications of interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such bid is received; provided that the Consultation Parties must treat such bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder; provided, further that any bids by an insider or affiliate must be provided to the Consultation Parties at the same time such bids are provided to the Debtors.

The Debtors shall not consult with or provide copies of bids regarding any assets to any Consultation Party or any insider or affiliate of the Debtors pursuant to the terms of these Global Bidding Procedures if such party has a bid for the Assets pending, or expressed any written interest in bidding for any of the Assets; provided, however, that if such Consultation Party or insider or affiliate of the Debtors chooses not to submit any bid, then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended hereunder).  Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid (as hereinafter defined), the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable Assets, and shall not provide any confidential information regarding the Assets or a transaction involving the Assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Global Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.  Rights that Consultation Parties may have pursuant to the terms of other

6

agreements or orders of the Court shall not be affected by these Global Bidding Procedures or the Global Bidding Procedures Order.

**B.    Bid Notice Parties**

Qualified Bids must be submitted in writing to the following parties (collectively, the "**Bid Notice Parties**"):

 i. the Debtors (Attn:  Rob Riecker (rob.riecker@searshc.com); Luke Valentino (luke.valentino@searshc.com); and Mohsin Meghji (mmeghji@miiipartners.com));

 ii. counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com); and Sunny Singh, Esq. (sunny.singh@weil.com));

 iii. the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)); and

 iv. to the extent such bid is submitted by an insider or affiliate of the Debtors, each of the Consultation Parties.

**C.    Sale Notice Parties**

The "**Sale Notice Parties**" shall include the following persons and entities:

 i. the Consultation Parties (as applicable);

 ii. the Standard Parties (as defined in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405));

 iii. any governmental authority known to have a claim against the Debtors in these chapter 11 cases;

 iv. all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service;

 v. all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency;

 vi. the United States Attorney General;

 vii. the United States Attorney for the Southern District of New York;

 viii. the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate;

7

ix.     the Antitrust Division of the United States Department of Justice;

x.      the Federal Trade Commission;

xi.     Cardtronics USA, Inc.;

xii.    all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the assets offered for sale;

xiii.   all Counterparties to Contracts and Leases (including any reciprocal easement agreements) that could be assumed or rejected in connection with a Sale Transaction and any additional Contracts or Leases that may be designated for assumption and assignment;

xiv.    all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction involving any material portion of the Assets during the past twelve (12) months, including any person or entity that has submitted a bid for any material portion of the Assets;

xv.     any consumer privacy ombudsman appointed under section 332 of the Bankruptcy Code;

xvi.    all of the persons and entities entitled to notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and

xvii.   all other persons and entities as directed by the Bankruptcy Court.

Within one (1) calendar day after the (a) execution of any Stalking Horse Agreement, including with respect to the Go Forward Stores and (b) determination by the Debtors to auction an asset without a Stalking Horse Bidder, the Debtors shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice (the "S**ale Notice**"), setting forth (i) a complete list and general description of the Assets (subject to modification at any Auction or Sale Hearing); (ii) the date, time, and place of the (x) Auction and (y) Sale Hearing; (z) Sale Objection Deadlines; and (aa) the procedures for objecting to the proposed Sale Transaction(s)

As soon as reasonably practicable following, but no later than five (5) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors shall cause the information contained in the Sale Notice to be published once in at least one national publication.

## D.    Objection Recipients

Sale Objections shall be filed with the Bankruptcy Court and served on the following parties (collectively, the "**Objection Recipients**"): (i) the Bid Notice Parties; (ii) the Consultation Parties; and (iii) counsel to the relevant Stalking Horse Bidder, if applicable, or

8

Successful Bidder (as hereinafter defined) at the applicable Auction by no later than (a) with respect to the sale of the Go Forward Stores to a Successful Bidder, including a Stalking Horse Bidder, the later of (x) **January 24, 2019 at 4:00 p.m. (Eastern Time)** and (y) eight (8) days after the filing of the Notice of Auction Results and service of the Adequate Assurance Information and (b) with respect to the sale of all other Assets, including a sale to an applicable Stalking Horse Bidder, within ten (10) days of the filing of the Notice of Auction Results and service of the Adequate Assurance Information (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.

## E.    Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption, assignment, and designation of Contracts and Leases in accordance with the Global Bidding Procedures Order

## VI.
## Bidder Qualifications

Each person or entity that desires to participate in any Auction (each, a "**Prospective Bidder**") as determined by the Debtors, after consultation with the Consultation Parties, shall satisfy each of the following eligibility requirements:

## A.    Due Diligence

To be eligible to participate in an Auction, a Prospective Bidder must first execute a confidentiality agreement, in form and substance satisfactory to the Debtors.  Upon execution of a valid confidentiality agreement, any Prospective Bidder identified by the Debtors, after consultation with the Consultation Parties, to be reasonably likely to be a Qualified Bidder (as hereinafter defined) that wishes to conduct due diligence on the Assets may be granted access to confidential information regarding the same, including an information package containing information and financial data with respect to the applicable Assets and access to a data room (the "**Data Room**") with confidential electronic data concerning the Assets.  If the Debtors, after consultation with the Consultation Parties, determine that a Prospective Bidder does not qualify as a Qualified Bidder, the Prospective Bidder shall not be entitled to access to the Data Room or receive additional non-public information regarding the Debtors' businesses, the Assets, or the sale process.

Promptly upon a Prospective Bidder entering into a confidentiality agreement, but in any event no later than the next calendar day following such event, the Debtors will notify each of the Consultation Parties and provide to such Consultation Parties copies of such executed confidentiality agreements.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders.  All due diligence requests shall be directed to the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)).

9

**B.**    **Non-Binding Indication of Interest Date for Go Forward Stores**

If you are interested in purchasing any of the Go Forward Stores, whether individually, in combination, or in connection with a Stalking Horse Store Package, you are encouraged contact the Debtors' advisors by **December 5, 2018** (the "**Non-Binding Indication of Interest Date**"), in writing expressing your interest and identifying the Assets in which you are expressing such interest to Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com))

Note that submitting an indication of interest by the Non-Binding Indication of Interest Date does not obligate you to submit a formal bid or to participate in the sale process and does not exempt you from also having to submit a Qualified Bid by the applicable Bid Deadline (defined below) in order to participate in any subsequent Auction for the Assets on which you are indicating an interest, all as described below.

**C.**    **Bid Deadline**

Any Prospective Bidder that intends to participate in an Auction must submit a Qualified Bid (as hereinafter defined) on or before **December 28, 2018, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and within twenty (20) days of service of the applicable Sale Notice with respect to all other Assets (each, a "**Bid Deadline**") in writing to the Bid Notice Parties.

The Debtors may, in consultation with the Consultation Parties and consistent with the terms of the DIP ABL Documents (as defined in the DIP ABL Orders), extend a Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Prospective Bidders. For the avoidance of doubt, any such extension shall not affect any applicable milestones under the DIP ABL Orders.

**D.**    **Qualified Bid Requirements**

To qualify as a "**Qualified Bid**," a bid must (i) be a Stalking Horse Bid, or (ii) be in writing and determined by the Debtors, after consultation with the Consultation Parties, to satisfy the following requirements:

1.    <u>Identification of Bidder</u>. A Qualified Bid must fully disclose the legal identity of each person or entity bidding for the Assets or otherwise participating in the Auction in connection with such bid (including any equity holders or other financial backers, if the Prospective Bidder is an entity formed for the purpose of submitting bids or consummating a Sale Transaction), and the complete terms of any such participation, and must also disclose any connections, arrangements, or agreements, whether oral or written, with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

2.    <u>Proposed APA</u>. A Qualified Bid must include an executed asset purchase agreement (the "**Proposed APA**") with a redline marked to show any

10

proposed amendments and modifications to the Stalking Horse Agreement (if any).

3.   <u>Purchased Assets</u>.  A Qualified Bid must clearly identify the following:

    a.   the Assets to be purchased, including any Contracts and Leases of the Debtors that would be assumed and assigned in connection with the proposed Sale Transaction (all such Contracts and Leases, the "**Proposed Assumed Contracts**");

    b.   with respect to a bid for multiple Assets, the allocation of value in U.S. dollars that the Prospective Bidder associates with each Asset (or group of Assets if such bid is conditioned upon the purchase of all Assets in such group), including a description of any significant assumptions on which such valuation is based;

    c.   the liabilities, if any, to be assumed, including any debt to be assumed; and

    d.   the Credit Bid or Landlord Bid (each as hereinafter defined), or non-cash consideration, if applicable, and/or the cash purchase price of the bid.

4.   <u>Form of Consideration</u>.

    a.   <u>Credit Bidding</u>.  Persons or entities holding a perfected security interest in Assets may seek to Credit Bid, to the extent permitted by applicable law and the documentation governing the Debtors' prepetition credit facilities; provided that if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid at the Auction unless it has received an order of the Court approving its ability to Credit Bid prior to the Auction and compliant with the DIP ABL Orders.  Each of the DIP ABL Agents shall be deemed a Qualified Bidder and shall be entitled to Credit Bid all or a portion of its respective DIP ABL Obligations or Prepetition ABL Obligations (each as defined in the DIP ABL Orders) as applicable, in accordance with section 363(k) of the Bankruptcy Code.

    Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be submitted by the applicable Bid Deadline and a determination that such Credit Bid

11

constitutes a Qualified Bid may not be made absent an order of the Court.

b.  <u>Landlord Bid</u>.  Subject to the Debtors' discretion to consider such bids, any bid submitted by a landlord for the purchase of one or more of such landlord's own Leases (each such bid, a "**Landlord Bid**") may include a purchase price comprised of a (i) cash component, and (ii) a non-cash component that represents a valid and undisputed "credit" for any unpaid amounts validly due under such Lease (a "**Landlord Credit**") to reduce the cash consideration for the applicable Lease, but not the Good Faith Deposit (as hereinafter defined) required.

c.  <u>Other Non-Cash Consideration</u>. Subject to the Debtors' discretion to consider such bids, in consultation with the Consultation Parties, a bid may be in the form of or include non-cash consideration such as stock or debt securities.

d.  <u>Cash Requirements</u>. All bids must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full.  Any Credit Bid must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable Assets.

5.  <u>Good Faith Deposit</u>.  Other than bids that are comprised entirely of a Credit Bid or a Landlord Bid (as permitted hereunder), a Qualified Bid must be accompanied by a "**Good Faith Deposit**" in the form of cash in the amount equal to at least ten percent (10%) of the cash portion of the proposed purchase price.  A Good Faith Deposit is required for any bid that includes a cash component, including any bid that is part cash and part Credit Bid or Landlord Bid.  The Debtors may require a higher Good Faith Deposit in their discretion, after consultation with the Consultation Parties, as necessary to protect the interests of their estates or to maximize value. Good Faith Deposits shall be deposited prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**"), pursuant to the escrow agreement to be provided by the Debtors to Prospective Bidders, and Qualified Bidders shall provide information reasonably requested by the Escrow Agent to establish the deposit, including KYC information.  All Good Faith Deposits shall be held in escrow until no later than ten (10) days after the conclusion of the Auction (except for the Good Faith Deposits of the Successful Bidder(s) and Back-Up Bidder(s)), and thereafter returned to the respective bidders in accordance with the provisions of Part IX of these Global Bidding Procedures.

To the extent that a bid is modified at or prior to the Auction, the bidder must adjust its Good Faith Deposit so that it equals no less than the required deposit to purchase the applicable Assets.

12

6.      <u>Financial Information</u>. A Qualified Bid must include the following:

    a.      a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction(s) contemplated by the Proposed APA;

    b.      if applicable, and except for a Landlord Bid, information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**"). The Adequate Assurance Information may, but shall not be required to include (a) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of applicable Contracts and Leases; (b) financial statements, tax returns, and annual reports, (c) any financial projections, calculations, and/or financial pro-formas prepared in contemplation of purchasing leases, (d) the number of stores the proposed assignee operates and al trade names that the proposed assignee uses, (e) the proposed assignee's intended use of the leased premises, (f) the proposed assignee's experience in retail and in operating in-line and/or anchor stores in a shopping center; and (g) a contact person for the proposed assignee; and

    c.      sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors, in consultation with the Consultation Parties, to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to consummate the Sale Transactions contemplated in the Prospective Bidder's Proposed APA in a timely manner, including copies of any commitment letters.

7.      <u>Representations and Warranties</u>. A Qualified Bid must include the following representations and warranties:

    a.      a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the applicable Assets prior to submitting its bid;

13

b.     a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Proposed APA ultimately accepted and executed by the Debtors; and

c.     a statement that it has not engaged in any collusion with respect to the submission of its bid.

8.     <u>Required Approvals</u>. A Qualified Bid must include a statement or evidence (i) that the Prospective Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("**HSR Filings**"), as amended, if applicable, and pay the fees associated with such filings; and (ii) identifying all required governmental and regulatory approvals and an explanation and/or evidence of the Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals required from and after closing an applicable Sale Transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals.  A Prospective Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain the Prospective Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

9.     <u>Authorization</u>.  A Qualified Bid must include evidence of corporate authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing of the transactions contemplated by the Prospective Bidder's Proposed APA in accordance with the terms of the bid and these Global Bidding Procedures.

10.     <u>Other Requirements</u>. A Qualified Bid shall

a.     expressly state that the Prospective Bidder agrees to serve as a back-up bidder (a "**Back-Up Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the applicable Assets;

14

b.        state that the bid is formal, binding, and unconditional (except as set forth in an applicable asset purchase agreement ultimately executed by the Debtors); is not subject to any further due diligence; and is irrevocable until the first business day following the close of a Sale Transaction for the applicable Assets;

c.        with the exception of any Stalking Horse Bid, expressly state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or sale process, unless otherwise granted by the Debtors, in consultation with the Consultation Parties, in accordance with these Global Bidding Procedures and approved by the Bankruptcy Court;

d.        expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets and/or participating in the Auction;

e.        not contain any financing or diligence contingencies of any kind;

f.        be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties;

g.        a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

h.        include contact information for the specific person(s) the Debtors should contact in the event they have questions about the Prospective Bidder's bid; and

i.        a covenant to comply with the terms of the Global Bidding Procedures and the Global Bidding Procedures Order.

For the avoidance of doubt, a Stalking Horse Bid is a Qualified Bid that complies with or is exempted from the foregoing requirements.

Notwithstanding the foregoing or anything contained in these Global Bidding Procedures to the contrary, the Debtors reserve the right to, in consultation with the Consultation Parties, consider Landlord Bids (and any bid for less than all of the Assets in a Stalking Horse Bid, each

15

such bid, a **Partial Bid**," that include Landlord Bids). A Landlord Bid may qualify as a Qualified Bid if such bid complies with the Qualified Bid requirements set forth in Paragraphs 1, 4(b), 6, 7, 9, and 10 of this Section VI.C. For the avoidance of doubt, Landlord Bids shall not be required to include any Adequate Assurance Information with respect to the bidding landlord's ability to perform under its own Lease.

## D.    Qualified Bidders

A bid received for the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth in Section VI. C above will be considered a "Qualified Bid," and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a **Qualified Bidder**."

The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

## VII.
## Bid Review Process

The Debtors will evaluate timely bids, at the direction of the Restructuring Committee and in regular and timely consultation with the Consultation Parties and, may, based upon their evaluation of the content of each bid, engage in negotiations with Prospective Bidders who submitted bids, as the Debtors deem appropriate, in their reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law. In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1.    the amount of the purchase price and Credit Bid, Landlord Credit, and/or other non-cash consideration, as applicable, set forth in the bid;

2.    the Assets included in or excluded from the bid, including any Proposed Assumed Contracts;

3.    the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit;

5.    the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

16

6.      the impact on employees and employee claims against the Debtors;

7.      the impact on trade creditors and landlords; and

8.      any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors, after consultation with the Consultation Parties, will make a determination regarding which bids qualify as a Qualified Bids, and will notify Prospective Bidders whether they have been selected as Qualified Bidders by no later than **January 4, 2019** with respect to the Go Forward Stores and within five (5) days of the applicable Bid Deadline with respect to the all other Assets.

The Debtors reserve the right, in consultation with the Consultation Parties, to work with any Prospective Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid.  The Debtors, at the direction of the Restructuring Committee and after consultation with the Consultation Parties, may accept a single bid or multiple Partial Bids for non-overlapping Assets such that, if taken together, would otherwise meet the standards for a single Qualified Bid as to any Assets or combinations of Assets that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).  Without the prior written consent of the Debtors, after consulting with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid.

At the direction of the Restructuring Committee, and after consultation with the Consultation Parties, the Debtors shall make a determination regarding the following:

(A)     the Assets and/or any combination of the Assets to be auctioned by the Debtors, which may include any individual Assets or combinations of Assets, including any Stalking Horse Package (each group of Assets, an "**Auction Package**");

(B)     the highest or best Qualified Bid (or collection of Partial Bids comprising one Qualified Bid) for each Auction Package (each, a "**Baseline Bid**" and, such bidder or group of bidders, a "**Baseline Bidder**") to serve as the starting point at the Auction for such Auction Package; and

(C)     which bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid; provided that the Debtors may permit a Qualified Bidder to bid on more than one Auction Package.

As soon as practicable, but in no event later than the next calendar day, the Debtors will provide copies of each Baseline Bid to the Consultation Parties.  The Debtors will consult with the Consultation Parties regarding the designation of Baseline Bids and advise the Consultation Parties of the designated Baseline Bids within one (1) calendar day of the Debtors' determination of Baseline Bids.

17

# VIII.
## Auctions

With respect to any Stalking Horse Package, if no Qualified Bid other than the applicable Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct an Auction for the Stalking Horse Package and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice indicating that the Auction for the Stalking Horse Package has been canceled and that the Stalking Horse Bidder is the Successful Bidder with respect to the Stalking Horse Package, and setting forth the date and time of the applicable Sale Hearing.

With respect to Assets not included in any Stalking Horse Package, if only one Qualified Bid is received in respect of such assets by the applicable Bid Deadline, the Debtors may, upon direction from the Restructuring Committee and in consultation with the Consultation Parties, determine to consummate a Sale Transaction with the applicable Qualified Bidder (without conducting an Auction for the applicable Assets) and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice identifying the Qualified Bidder and setting forth the terms of the Qualified Bid and the date and time of the applicable Sale Hearing.

**Nothing herein shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset.**

An Auction, if any, will be conducted at the offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 on **January 14, 2018, at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores and not less than twenty-five (25) days following service of the applicable Sale Notice with respect to all other Assets at a location to be announced, or at such other time and location as designated by the Debtors, consistent with the terms of the DIP ABL Documents, in consultation with the Consultation Parties and providing notice to the Sale Notice Parties. If held, the proceedings of an Auction will be transcribed and/or video recorded.

## A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the applicable Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Global Bidding Procedures.  Qualified Bidders participating in an Auction must appear in person at the Auction, or through a duly authorized representative.  Auctions will be conducted openly, and the Consultation Parties, their professional advisors, and all creditors will be permitted to attend; provided that the Debtors may, in their reasonable business judgment, and after consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder and other parties in interest at an Auction.

Each Qualified Bidder participating in an Auction will be required to confirm in writing and on the record at an Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith,

18

and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

## B.    Auction Procedures

Auctions shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment, in consultation with the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law:

1.    <u>Baseline Bids</u>.  Bidding for each Auction Package shall commence at the amount of the Baseline Bid (or combination of Baseline Bids).

2.    <u>Minimum Overbid</u>.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the applicable Baseline Bid.  The Debtors shall, in consultation with the Consultation Parties, announce at the outset of the Auction the minimum required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**").  The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

   a.    <u>Stalking Horse Credit for Termination Payment</u>.  If a Qualified Bidder who is not a Stalking Horse Bidder bids at an Auction for a Stalking Horse Package, the applicable Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted toward its bid.  The cash and other considerations proposed by such Qualified Bidder must exceed the applicable Stalking Horse Bid by the purchase price contained in the Stalking Horse Bid, plus the Termination Payment, by at least the amount of the Minimum Overbid to advance to the next round of bidding.  To the extent that a Stalking Horse Bidder submits a competing bid for its Stalking Horse Package, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted toward its bid and the computation of the Minimum Overbid for bidders to advance to the next round of bidding with respect to the Stalking Horse Package.

3.    <u>Highest or Best Offer</u>.  After the first round of bidding and between each subsequent round of bidding, the Debtors, after consulting with the Consultation Parties, shall announce the bid that they believe to be the highest or best offer (or combination of offers) for an Auction Package (each such bid, a "**Leading Bid**").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

19

Auctions may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to their proposed agreements at an Auction to improve their bids, including by bidding on additional Assets not included in their original Qualified Bid. The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in an Auction.

The Debtors shall have the right, after consultation with the Consultation Parties, to withdraw any Assets from an Auction that are not in a Stalking Horse Package and to determine, in their reasonable business judgment, in consultation with the Consultation Parties, which bid is the highest or best bid and reject, at any time, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Global Bidding Procedures, the DIP ABL Documents, any order of the Bankruptcy Court, or the best interests of the Debtors and their estates; except that, if a Stalking Horse Bid as reflected is in a Stalking Horse Agreement is the only Qualified Bid received in respect of the applicable Stalking Horse Package, the foregoing shall be inoperative with respect to the Stalking Horse Bid. No attempt by the Debtors to reject a bid pursuant to this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under any Stalking Horse Bidder under any Stalking Horse Agreement (although the same may be consensually modified during an Auction).

## C.    Auction Results

1.    <u>Successful Bids</u>. Immediately prior to the conclusion of an Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Global Bidding Procedures, which Qualified Bids constitute the highest or best Qualified Bids for each of the Auction Packages (each such bid, a "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity of the bidders who submitted the Successful Bids (each such bidder, a "**Successful Bidder**") and the amount of the purchase prices and other material terms of the Successful Bids.

A Successful Bidder shall, within one (1) business day after the conclusion of the applicable Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

2.    <u>Back-Up Bids</u>. Immediately prior to the conclusion of an Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine,

20

consistent with these Global Bidding Procedures and the DIP ABL Documents, and except as provided in any Stalking Horse Agreement, which Qualified Bid is the next highest or next best Qualified Bid after the Successful Bid for an Auction Package (each such bid, a "**Back-Up Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identities of the Back-Up Bidders and the amount of the purchase prices and other material terms of the Back-Up Bids.

The Back-Up Bids shall remain open and irrevocable until the earliest to occur of (i) the first business day after the consummation of a Sale Transaction with the Successful Bidder for the applicable Asset; (ii) forty-five (45) days after the conclusion of the applicable Auction; and (iii) the release of the applicable Back-Up Bid by the Debtors (such date, the "**Back-Up Bid Expiration Date**"). If the Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the applicable Back-Up Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid at the applicable Auction.

The Debtors will, within two (2) business days after the conclusion of an Auction, or as soon as reasonably practicable thereafter, file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment in connection with a Sale Transaction; (v) to the extent practicable, the governing agreement with the Successful Bidder or drafts thereof; and (vi) set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

## IX.
## Disposition of Good Faith Deposits

### A.    Prospective Bidders

Within three (3) business days after the applicable Bid Deadline, the Escrow Agent shall return to each Prospective Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit, plus any interest accrued thereon. Upon the authorized return of such Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed revoked and no longer enforceable.

### B.    Qualified Bidders

1. Forfeiture of Good Faith Deposit.  The Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to

21

modify, amend, or withdraw its Qualified Bid, except as permitted by these Global Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Global Bidding Procedures; or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate a Sale Transaction in accordance with these Global Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid.  The Escrow Agent shall release the Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

2.  <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of Successful Bidders and Back-Up Bidders, the Escrow Agent shall return to any other Qualified Bidder any Good Faith Deposit, plus any interest accrued thereon, ten (10) business days after the conclusion of the Auction.

3.  <u>Back-Up Bidders</u>.  The Escrow Agent shall return a Back-Up Bidder's Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the occurrence of the applicable Back-Up Bid Expiration Date.

4.  <u>Successful Bidders</u>. The Good Faith Deposit of a Successful Bidder shall be applied against the cash portion of the purchase price of the Successful Bid upon the consummation of the applicable Sale Transaction.

## C.    Escrow Instructions

The Debtors and, as applicable, the Prospective Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent providing instructions for the return of any Good Faith Deposit, to the extent such return is required by these Global Bidding Procedures.  If either party fails to execute such written notice, the Good Faith Deposit may only be released by an order of the Bankruptcy Court.

## X.
## <u>Sale Hearing</u>

At one or more hearings before the Bankruptcy Court (each, a "**Sale Hearing**"), the Debtors will seek the entry of orders authorizing and approving, among other things, the following Sale Transactions (each, a "**Sale Order**"), to the extent applicable:

1.  if no other Qualified Bid is received by the Debtors in respect of a Stalking Horse Package, a sale of such assets to the applicable Stalking Horse Bidder pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement; and

22

2.      with respect to any Assets that are auctioned and/or sold by the Debtors pursuant to these Global Bidding Procedures, a sale of such assets to the applicable Successful Bidder(s).

The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties and the Successful Bidders (including any Stalking Horse Bidder if named a Successful Bidder), and consistent with the terms of the DIP ABL Documents, adjourn or reschedule any Sale Hearing with sufficient notice to the Sale Notice Parties, including by (i) an announcement of such adjournment at the applicable Sale Hearing or at the Auction, or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the applicable Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in any Stalking Horse Agreement.

Any objections to (A) a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the applicable Sale Objection Deadline.

All Sale Objections not otherwise resolved by the parties shall be heard at the applicable Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of the Sale Transactions contemplated by any Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to any Stalking Horse Bidder, or Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, in accordance with the terms of the Global Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the applicable Counterparty, adjourn Cure Objections to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

## XI.
## Consent to Jurisdiction and Authority as Condition to Bidding

All Prospective Bidders and any Stalking Horse Bidder shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Global Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to

23

the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Global Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Global Bidding Procedures, an Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## XII.
## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify these Global Bidding Procedures; waive terms and conditions set forth herein with respect to all Prospective Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on any Assets (including extending deadlines as may be required for any Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Global Bidding Procedures and the Global Bidding Procedures Order; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders. **The Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset**.

All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the applicable Bid Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bid Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

## XIII.
## DIP ABL Orders

Notwithstanding anything to the contrary contained in this Order or in the Global Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by this order or the Global Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents and the DIP ABL Orders, as applicable; and (iii) nothing in this Order or in the Global Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder

24

## XIV.
## <u>Sale Is "As Is/Where Is"</u>

The Assets sold pursuant to these Global Bidding Procedures will be conveyed at the Closing in their then-present condition, **"as is, with all faults, and without any warranty whatsoever, express or implied."**

25

## Schedule 1

**The Assets**

WEIL:\96790401\16\73217.0004

**<u>Exhibit 2</u>**

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                                  :
                                                       :          **Chapter 11**
**SEARS HOLDINGS CORPORATION, *et al.*,**             :
                                                       :          **Case No. 18-23538 (RDD)**
                                                       :
             Debtors.[1]                               :          **(Jointly Administered)**
-------------------------------------------------------------------x

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARINGS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")[2] (a) authorizing and approving global bidding procedures (the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Global Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts** and **Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c) granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ____).

## Description of the Assets

The Debtors are seeking to sell the following Assets: _____

A complete list of the Assets that are, or potentially will be, available for sale pursuant to the Global Bidding Procedures is attached hereto as **Schedule 1**.

## IMPORTANT DATES AND DEADLINES

- [*Non-Binding Indication of Interest Deadline*. Any person or entity interested in participating in the Auction with respect to the Go Forward Stores must submit a Non-Binding Indication of Interest (as defined in the Global Bidding Procedures) to the Bid Notice Parties (as identified and defined in the Global Bidding Procedures) on or **before December 5, 2018 at 4:00 p.m. (Eastern Time)** (the "**Non-Binding Indication of Interest Deadline**").]

- *Bid Deadline.* Any person or entity interested in participating in the Auction must submit a Qualified Bid to the Bid Notice Parties on or **before [_____], 201[_] at 4:00 p.m. (Eastern Time)** (the "**Bid Deadline**").

- *Auction*. An Auction for the Assets has been scheduled for **[_____], 2019 at 10:00 a.m. (prevailing Eastern Time)** and, if necessary, will be conducted at **[_____]**.

- *Sale Objection Deadlines*. Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order must be (i) filed in accordance with the Global Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Recipients (as identified and defined in the Global Bidding Procedures) by no later than **[_____], 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- *Sale Hearings.* The Sale Hearing shall be held before the Bankruptcy Court before the Honorable Robert D. Drain on **[_____], 2019 at __:__ [_].m. (prevailing Eastern Time)**.

## Additional Information

Any party interested in submitting a bid for any of the Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

Copies of the Motion, the Global Bidding Procedures Order, and the Global Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and after consultation with the Consultation Parties, modify the Global Bidding Procedures; waive terms and conditions set forth therein; extend the deadlines set forth therein; announce at the Auctions modified or additional procedures for conducting the Auctions; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and auction process to promote further bids by such bidder, in each case, to the extent not materially inconsistent with the Global Bidding Procedures and the Global Bidding Procedures Order; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders.  **Except as provided in an applicable Stalking Horse Agreement that has become binding on the Debtors pursuant to these Global Bidding Procedures, the Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset, with any bidder**.

**FAILURE TO ABIDE BY THE GLOBAL BIDDING PROCEDURES, THE GLOBAL BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE GLOBAL BIDDING PROCEDURES ORDER BY THE APPLICABLE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, SALE ORDERS, THE PROPOSED SALE TRANSACTIONS, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2018

　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　　Telephone:  (212) 310-8000
　　　　　　　　　　　　　　Facsimile:  (212) 310-8007

　　　　　　　　　　　　　　*Attorneys for Debtors and Debtors in Possession*

## Exhibit 3

**Assumption and Assignment Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re                                            :

                                                 :        **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.,*        :

                                                 :        **Case No. 18-23538 (RDD)**

                                                 :

Debtors.[8]                                      :        **(Jointly Administered)**

-----------------------------------------------------------------x

### NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION
### AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
### UNEXPIRED LEASES IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")[9] (a) authorizing and approving global bidding procedures (the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of

---

[8] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[9] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Global Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

8

the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts and Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c) granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ____).

**You are receiving this Notice because you may be a Counterparty to a Contract or Lease of the Debtors that either is proposed to be assumed and assigned to a Stalking Horse Bidder or potentially could be assumed and assigned to one or more bidders in connection with a sale of the Debtors' Assets.**

## Stalking Horse Bids

Pursuant to the terms of the Global Bidding Procedures Order, the Debtors may designate Stalking Horse Bidders (as defined in the Global Bidding Procedures) for the Assets [until [_____], 2018.] Notice of any such designation, including the execution of any asset purchase agreement with a Stalking Horse Bidder and the provision of any bid protections in connection therewith, shall be provided in accordance with the terms of the Global Bidding Procedures Order.

## Cure Costs

In accordance with the Assumption and Assignment Procedures and the Global Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction with a Successful Bidder (as defined in the Global Bidding Procedures) at the Auction (whether such bidder be the applicable Stalking Horse Bidder or other bidder prevailing at the Auction), seek to assume and assign to the Successful Bidder (or its designated assignee, if applicable) certain Contracts and Leases of the Debtors.

Each of the Contracts and Leases that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.

The inclusion of any Contract or Lease on Exhibit A does not constitute an admission that a particular Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract or Lease ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved.

.

<u>**Objections**</u>

**A.  Cure Objections**

Any objection to the proposed assumption, assignment, or potential designation of a Contract or Lease identified on <u>Exhibit A</u>, the subject of which objection is the Debtors' proposed Cure Costs must be (i) filed in accordance with the Global Bidding Procedures Order; (ii) filed with the Bankruptcy Court; and (iii) served on the Objection Recipients (as identified in the Global Bidding Procedures) by no later than **[_____] calendar days after receiving service of the Debtors' proposed Cure Costs**.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE CONTRACT OR LEASE.  THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE CONTRACT OR LEASE UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT OR LEASE AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

**B.  Adequate Assurance Objections**

Adequate Assurance Objections with respect to the assumption and assignment of a Contract or Lease identified on <u>Exhibit A</u> to a Successful Bidder (or its known proposed assignee, if applicable) must be filed in accordance with the preceding paragraph by no later than **[_____], at 4:00 p.m. (Eastern Time).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE CONTRACT OR LEASE. THE SUCCESSFUL BIDDER (OR ITS DESIGNATED ASSIGNEE, IF APPLICABLE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE CONTRACT OR LEASE IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT.**

## Sale Hearings

The Sale Hearing shall be held before the Bankruptcy Court before the Honorable Robert D. Drain on [_____], at __:__ [a.m./p.m.] (prevailing Eastern Time).

## Additional Information

Copies of the Motion, the Global Bidding Procedures Order, and the Global Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

Dated: [        ], 2018

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

**<u>Exhibit 2</u>**

**Redline of Second Revised Global Bidding Procedures Order
to Revised Global Bidding Procedures Order Filed with Reply (changed pages only)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,      :
                                               :        **Case No. 18-23538 (RDD)**
                                               :
            Debtors.[1]                        :        **(Jointly Administered)**
----------------------------------------------------------------x

**ORDER APPROVING**
**GLOBAL BIDDING PROCEDURES AND GRANTING RELATED RELIEF**

Upon the motion, dated November 1, 2018 (ECF No. 429) (the "**Motion**"),[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007,

9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures.

1

Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i) (a) approving the Global Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, in connection with sales (each transaction, a "**Sale Transaction**") of the Debtors' assets (the "**Assets**"); (b) authorizing the Debtors to designate one or more stalking horse bidders (each, a "**Stalking Horse Bidder**," and each such bidder's bid, a "**Stalking Horse Bid**") and offer each such bidder certain bid protections including the payment of a Break-Up Fee and certain expenses (collectively, the "**Stalking Horse Bid Protections**"); (c) scheduling auctions of the Assets (each, an "**Auction**") and hearings for approval of the proposed Sale Transactions (each, a "**Sale Hearing**"); (d) authorizing and approving the form and manner of notice of the Sale Transactions, Auctions, and Sale Hearings, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"); (e) authorizing and approving the procedures for the assumption and assignment of executory contract or unexpired non-residential real property or personal property lease of the Debtors (collectively, the "**Contracts** and **Leases**," and such procedures, the "**Assumption and Assignment Procedures**"); (f) approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"); and (g) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core

WEIL:\96790401\14\73217.0004 WEIL:\96790401\16\73217.0004

Protections, including a break-up fee (a "**Termination Payment**"); <u>provided</u> <u>that</u>, all Termination Payments must be negotiated by the Debtors, after consulting with the Consultation Parties, and no Termination Payment shall exceed three percent (3%) of the cash portion of the purchase price in the applicable Stalking Horse Bid, as set forth in the applicable Stalking Horse Agreement executed by the Debtors.

6.      If the Debtors designate a Stalking Horse Bidder with respect to any of the Assets, including the Go Forward Stores, which designation shall be after consultation with the Consultation Parties, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/Sears (the "**Prime Clerk Website**"), promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution), a Sale Notice setting forth the material terms of such Stalking Horse Agreement, including any Credit Bid and Stalking Horse Bid Protections, and attaching the Stalking Horse Agreement and proposed sale order.

7.      Objections to the designation of a Stalking Horse Bidder, the terms of a Stalking Horse Agreement, including any Credit Bid, release provisions, Termination Payment or any other Stalking Horse Bid Protection pursuant to the terms and provisions of a Stalking Horse Agreement, including any Credit Bid or Termination Payment (each, a "**Stalking Horse Designation Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients (a) within ten (10) calendar days after filing and service of the applicable Sale Notice with respect to all Assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an

6

21.     Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**"), excluding Stalking Horse Designation Objections, shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients by no later than (a) with respect to the sale of the Go Forward Stores to a Successful Bidder, including a Stalking Horse Bidder, the later of (x) **January 24, 2019 at 4:00 p.m. (Eastern Time)** and (y) eight (8) days after the filing of the Notice of Auction Results and service of the Adequate Assurance Information and (b) with respect to the sale of all other Assets, including a sale to an applicable Stalking Horse Bidder, within ten (10) days of the filing of the Notice of Auction Results and service of the Adequate Assurance Information (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing.

22.     Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the applicable Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of the Sale Transaction(s) contemplated by the asset purchase agreement between the Debtors and the applicable Successful Bidder (including any Stalking Horse Bidder if named a Successful Bidder), including the transfer of Assets to the Successful Bidder, free and clear of all liens, claims,

12

30.     Any objection to the assumption and assignment of a Contract or Lease, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding defaults under such Contract or Lease (a "**Cure Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof, including the cure amount the objecting Counterparty believes is required to cure defaults under the relevant Contract or Lease; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients (a) **the later of (x) fourteen (14) calendar days after service of the Assumption and Assignment Notice and (y) January 7, 2019** with respect to Cure Objections for Proposed Assumed Contracts in a Stalking Horse Bid for the Go Forward Stores**, (b)** **within eight (8) calendar days of service of the Debtors' proposed Cure Costs** with respect to Cure Objections for Proposed Assumed Contracts related to a sale of the Go Forward Stores if not provided in a Stalking Horse Bid**,** and (b̶c) **within fourteen (14) calendar days of service of the Assumption and Assignment Notice** with respect to all other Assets ~~and for Cure Objections for Proposed Assumed Contracts in a Stalking Horse Bid for the Go Forward Stores~~.

31.     If a Cure Objection cannot otherwise by resolved by the parties, the Debtors may, after consulting with the Consultation Parties, (i) assume the Contract(s) or Lease(s) prior to the resolution of the Cure Objection; provided that the Debtors shall (a) pay to the applicable Counterparty the undisputed portion of the Cure Cost within five (5) business days after entry of the applicable Sale Order and (b) reserve cash in an amount sufficient to pay the disputed portion of the Cure Cost asserted by the applicable Counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the Counterparty and the Debtors) (the "**Reserve Amount**"), or (ii) adjourn their request to assume the Contract or Lease

16

shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection filed by the Counterparty; provided that, any Adequate Assurance Objection that discloses confidential, non-public information included in the Adequate Assurance Information, which shall be expressly identified as non-public and confidential therein, must be filed with the Court with such confidential, non-public information redacted, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Contract or Lease (if different from the Successful Bidder), or ordered by the Court.

37.     Any objection to the assumption and assignment of a Proposed Assumed Contract, the subject of which objection is any Stalking Horse Bidder's or Successful Bidder's, as applicable, and/or its known proposed assignee's (if different from the Stalking Horse Bidder's or Successful Bidder's, as applicable) proposed form of adequate assurance of future performance with respect to such Proposed Assumed Contract (an "**Adequate Assurance Objection**"), shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients, including the applicable Stalking Horse Bidder or Successful Bidder, as applicable, and any known proposed assignee of such Proposed Assumed Contract (if different from the Stalking Horse Bidder or Successful Bidder, as applicable) by no later than (a) **the later of (x) fourteen (14) calendar days after service of the Assumption and Assignment Notice and (y) January 7, 2019** with respect to Adequate Assurance Information for a Stalking Horse

19

Bidder for the Go Forward Stores, (b) **eight (8) calendar days after service of the applicable Adequate Assurance Information** with respect to Successful Bidders other than a Stalking Horse Bidder for the Go Forward Stores, and (c) **within fourteen (14) calendar days after service of the applicable Adequate Assurance Information** with respect to all other Assets and for Stalking Horse Bidders for a sale of the Go Forward Stores.

38.     If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance with respect to the applicable Proposed Assumed Contract shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors.

39.     If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the Contract or Lease.  The Stalking Horse Bidder or Successful Bidder, as applicable, and/or its known proposed assignee of the Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

40.     The Debtors' assumption and assignment of a Proposed Assumed Contract to a Successful Bidder (or to a designee of the Successful Bidder) is subject to Court approval and consummation of a Sale Transaction with the applicable Successful Bidder.  Accordingly, absent the closing of a Sale Transaction, the Proposed Assumed Contract shall not be deemed

WEIL:\96790401\14\73217.0004WEIL:\96790401\16\73217.0004

**Exhibit 1**

**Global Bidding Procedures**

WEIL:\96790401\14\73217.0004WEIL:\96790401\16\73217.0004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                     :
                                                          :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                :
                                                          :        **Case No. 18-23538 (RDD)**
                                                          :
                                                          :
                      Debtors.[1]                         :        **(Jointly Administered)**
-------------------------------------------------------------x

## GLOBAL BIDDING PROCEDURES

The procedures set forth herein (the "**Global Bidding Procedures**") will be employed in connection with a sale or disposition of certain of the assets of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

By the *Debtors' Motion for Approval of Global Bidding Procedures* (the "**Motion**"), the Debtors sought, among other things, approval of the Global Bidding Procedures for soliciting bids for, conducting auctions (each, an "**Auction**") of, and consummating sales (each, a "**Sale Transaction**") of their assets, as further described herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

WEIL:\96790401\14\73217.0004WEIL:\96790401\16\73217.0004

On [_____], 2018, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered the an order approving the Motion (ECF No. [__]) (the "**Global Bidding Procedures Order**").[2]

To the extent that the Global Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to the Global Bidding Procedures or at any Auction, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

# I.
## Description of the Assets

The Debtors are seeking to sell [_____] (the "**Assets**").

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)).

The sale of any real estate Assets will not be free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "**Restrictive Covenants**") unless (i) the counterparties to a Restrictive Covenant agree otherwise or (ii) the Court so determines after specific notice that the Debtors are seeking to sell an Asset free and clear of an identified Restrictive Covenant, an opportunity for counterparties to object, and a hearing.

# II.
## Designation of Stalking Horse Bidders

To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the Assets, including the Go Forward Stores, which designation shall be after consultation with the Consultation Parties, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file a Sale Notice setting forth the material terms of such Stalking Horse Agreement, including any Credit Bid and Stalking Horse Bid Protections, and attaching the Stalking Horse Agreement and proposed sale order.

     i.    <u>Objections to Stalking Horse Agreement</u>.   Any objections to the designation of a Stalking Horse Bidder~~, the terms of a Stalking Horse Agreement, including any Credit Bid, release provisions, Termination~~

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the Global Bidding Procedures Order.

2

~~Payment~~ or any other Stalking Horse Bid Protection pursuant to the terms and provisions of a Stalking Horse Agreement, including any Credit Bid or Termination Payment (each, a "**Stalking Horse Designation Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients within ten (10) calendar days after filing and service of the applicable Sale Notice with respect to all assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after filing and service of the applicable Sale Notice to file a Stalking Horse Designation Objection. Parties in interest shall have until **December 31, 2018, at 4:00 p.m. (Eastern Time)** to object to the designation of a Stalking Horse Bidder (including any Credit Bid or Stalking Horse Bid Protection) with respect to the sale of the Go Forward Stores.

If a timely Stalking Horse Designation Objection is filed and served in accordance with the preceding paragraph, the proposed Stalking Horse Bid Protections, including any Termination Payment, provided for under such agreement, shall not be approved until the Stalking Horse Designation Objection is resolved, either consensually, by agreement of the objecting party and the Debtors (after consulting with the Consultation Parties), or by order of the Bankruptcy Court resolving such objection.

For the avoidance of doubt, any Stalking Horse Agreement shall not be binding on the Debtors or their estates absent approval (or deemed approval) by the Bankruptcy Court as set forth herein.

ii.    <u>Failure to File Timely Stalking Horse Designation Objection</u>. If no timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the Stalking Horse Bid Protections, including any Termination Payment shall be deemed approved; provided that if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid at the Auction unless it has received an order of the Court approving its ability to Credit Bid prior to the Auction. Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be submitted by the applicable Bid Deadline and a determination that such Credit Bid constitutes a Qualified Bid may not be made absent an order of the Court.

3

**<u>Schedule 1</u>**

**The Assets**

1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

In re                                                  :

                                                       :          **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.,*              :

                                                       :          **Case No. 18-23538 (RDD)**

                                                       :

        Debtors.[1]                                    :          **(Jointly Administered)**

--------------------------------------------------------------x

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

        On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")[2] (a) authorizing and approving global bidding procedures

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Global Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

WEIL:\96790401\14\73217.0004 WEIL:\96790401\16\73217.0004

(the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts** and **Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c)- granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ____).

**You are receiving this Notice because you may be a Counterparty to a Contract or Lease of the Debtors that either is proposed to be assumed and assigned to a Stalking Horse Bidder or potentially could be assumed and assigned to one or more bidders in connection with a sale of the Debtors' Assets.**

## Stalking Horse Bids

Pursuant to the terms of the Global Bidding Procedures Order, the Debtors may designate Stalking Horse Bidders (as defined in the Global Bidding Procedures) for the Assets [until [_____], 2018.]  Notice of any such designation, including the execution of any asset purchase agreement with a Stalking Horse Bidder and the provision of any bid protections in connection therewith, shall be provided in accordance with the terms of the Global Bidding Procedures Order.

## Cure Costs

In accordance with the Assumption and Assignment Procedures and the Global Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction with a Successful Bidder (as defined in the Global Bidding Procedures) at the Auction (whether such bidder be the applicable Stalking Horse Bidder or other bidder prevailing at the Auction), seek to assume and assign to the Successful Bidder (or its designated assignee, if applicable) certain Contracts and Leases of the Debtors.

Each of the Contracts and Leases that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.

The inclusion of any Contract or Lease on Exhibit A does not constitute an admission that a particular Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract or Lease ultimately will be assumed or assigned.  All rights of the Debtors with respect thereto are reserved.
.

## Objections

### A. Cure Objections

Any objection to the proposed assumption, assignment, or potential designation of a Contract or Lease identified on Exhibit A, the subject of which objection is the Debtors' proposed Cure Costs must be (i) filed in accordance with the Global Bidding Procedures Order; (ii) filed with the Bankruptcy Court; and (iii) served on the Objection Recipients (as identified in the Global Bidding Procedures) by no later than [~~eight (8)/fourteen (14)~~_____] **calendar days after receiving service of the Debtors' proposed Cure Costs**.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE CONTRACT OR LEASE.  THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE CONTRACT OR LEASE UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT OR LEASE AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B. Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of a Contract or Lease identified on Exhibit A to a Successful Bidder (or its known proposed assignee, if applicable) must be filed in accordance with the preceding paragraph by no later than **[_____], at 4:00 p.m. (Eastern Time).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE CONTRACT OR LEASE. THE SUCCESSFUL BIDDER (OR ITS DESIGNATED ASSIGNEE, IF APPLICABLE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE**

**<u>Exhibit 3</u>**

**Redline of Second Revised Global Bidding Procedures Order
to Global Bidding Procedures Order Filed with Motion**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re                                             :
                                                  :        Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,             :
                                                  :        Case No. 18-23538 (RDD)
                                                  :
                       Debtors.[1]                :        (Jointly Administered)
----------------------------------------------------------x

ORDER APPROVING
GLOBAL BIDDING PROCEDURES AND GRANTING RELATED RELIEF

Upon the motion, dated November 1, 2018 (ECF No. [——]429) (the "**Motion**"),[2]

of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

[2] Capitalized terms utilizedused but not otherwise defined herein shall have the respective meanings given themascribed to such terms in the Motion or the Bidding Procedures.

1

the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365 ~~of chapter 11 of~~ title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i) (a) approving the Global Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, in connection with sales (each transaction, a "**Sale Transaction**") of the Debtors' assets (the "**Assets**"); (b) authorizing the Debtors to designate one or more stalking horse bidders (each, a "**Stalking Horse Bidder**," and each such bidder's bid, a "**Stalking Horse Bid**") and offer each such bidder certain bid protections including the payment of a Break-Up Fee and certain expenses (collectively, the "**Stalking Horse Bid Protections**"); (c) scheduling auctions of the Assets (each, an "**Auction**") and hearings for approval of the proposed Sale Transactions (each, a "**Sale Hearing**"); (d) authorizing and approving the form and manner of notice of the Sale Transactions, Auctions, and Sale Hearings, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"); (e) authorizing and approving the procedures for the assumption and assignment of executory contract or unexpired non-residential real property or personal property lease of the Debtors (collectively, the "**Contracts** and **Leases**," and such procedures, the "**Assumption and Assignment Procedures**"); (f) approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"); and (g) granting related relief, all as more fully set forth in the Motion;

and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on November 15, 2018 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Global Bidding Procedures as set forth herein are fair, reasonable, and appropriate, and are designed to maximize the value of the proceeds of the sale of the Assets.

B.      The Global Bidding Procedures comply with the requirements of Local Rule 6004-1.

C.      The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

D.      The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Global Bidding Procedures, (ii) the designation of Stalking Horse

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

Bidders, (iii) the Stalking Horse Bid Protections, (v) the Sale Notice, (vi) the Assumption and Assignment Procedures, and (vii) the Assumption and Assignment Notice.

E.       Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required, except as set forth in the Global Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

F.       The Assumption and Assignment Procedures, Sale Notice, and Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Transaction(s), Auction(s), Sale Hearing(s), Global Bidding Procedures, Assumption and Assignment Procedures, proposed Cure Costs, potential assumption and assignment of Contracts and Leases, and all relevant important dates and deadlines with respect to the foregoing, and no other or further notice of the sale of the Assets or the assumption and assignment of Contracts and Leases in connection therewith shall be required.

G.       Good and sufficient business reasons exist for the Court to authorize the Debtors to designate Stalking Horse Bidders and enter into Stalking Horse Agreements (as hereinafter defined), in each case, in accordance with the terms of this Order and the Global Bidding Procedures.

H.       The Global Bidding Procedures are reasonably designed to promote active bidding at and participation in the Auction(s), to ensure that the highest or best value is generated for the Assets.

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is granted solely to the extent set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

3.      The Global Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction(s).  The failure to specifically include or reference any particular provision of the Global Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Global Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Global Bidding Procedures in accordance with the terms of this Order and the Global Bidding Procedures.

**Designation of Stalking Horse Bidders**

4.      The Debtors are authorized to, in the exercise of their reasonable business judgment, and after consulting with the Consultation Parties, designate one or more Stalking Horse Bidders for one or more of the Assets and enter into asset purchase agreements with Stalking Horse Bidders (each such agreement, a "**Stalking Horse Agreement**") for the sale of any of the Assets (each such group of Assets, a "**Stalking Horse Package**"), in each case, in accordance with the terms of this Order and the Global Bidding Procedures.

5.      Subject to the terms of this Order and the Global Bidding Procedures, the Debtors are authorized to offer each Stalking Horse Bidder certain Stalking Horse Bid

5

Protections, including a break-up fee (a "**Termination Payment**"); provided that, all

Termination Payments must be negotiated by the Debtors, ~~in~~after consult~~ation~~ing with the

Consultation Parties, and no Termination Payment shall exceed three percent (3%) of the cash

portion of the purchase price in the applicable Stalking Horse Bid, as set forth in the applicable

Stalking Horse Agreement executed by the Debtors.

6.      If the Debtors designate a Stalking Horse Bidder with respect to any of the

Assets, including the Go Forward Stores, which designation shall be after consultation with the

Consultation Parties, the Debtors shall file with the Court, serve on the Sale Notice Parties, and

cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and

noticing agent in these chapter 11 cases, located at https://restructuring.primeclerk.com/Sears

(the "**Prime Clerk Website**"), promptly upon execution of a Stalking Horse Agreement (and in

no event more than one (1) calendar day following such execution), a Sale Notice setting forth

the material terms of such Stalking Horse Agreement, including any Credit Bid and ~~the terms of~~

~~the applicable~~ Stalking Horse Bid Protections, and attaching the Stalking Horse Agreement and

proposed sale order.

7.      Objections to the designation of a Stalking Horse Bidder, or any other

Stalking Horse Bid Protection pursuant to the terms and provisions of a Stalking Horse

Agreement, including any Credit Bid, ~~release provisions, or the provision of a~~ or Termination

Payment (each, a "**Stalking Horse Designation Objection**") shall (i) be in writing; (ii) comply

with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the

legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection

Recipients (a) within ten (10) calendar days after filing and service of the applicable Sale Notice

with respect to all Assets other than the Go Forward Stores; provided that if a designated

Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after filing and service of the applicable Sale Notice to file a Stalking Horse Designation Objection with respect to all Assets other than the Go Forward Stores. Parties in interest shall have until **December 2831, 2018, at 4:00 p.m. (Eastern Time)** to object tofile and serve a Stalking Horse AgreementDesignation Objection with respect to the sale of the Go Forward Stores.

8.       If a timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the proposed Stalking Horse Bidder, the terms of the Stalking Horse Agreements, including any Credit Bid and Termination PaymentStalking Horse Bid Protections provided for under such agreement, shall not be deemed approved until the Stalking Horse Designation Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection.

9.       If no timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the Debtors' entry into the applicable Stalking Horse AgreementBid Protections, including any Termination Payment, will be deemed approved without further order of the Court upon the expiration of the objection deadline, including with respect to any Stalking Horse Bid Protections consistent with this Order; provided that if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid until itat the Auction unless it has receivesd an order of the Court approving its ability to Credit Bid. prior to

the Auction.  Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be submitted by the applicable Bid Deadline and a determination that such Credit Bid constitutes a Qualified Bid may not be made absent an order of the Court.

10.     Absent further order of the Court, no person or entity, other than any applicable Stalking Horse Bidder, shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in the Auction or the Debtors' sale process.

## Global Bidding Procedures

11.     The deadline for submitting Qualified Bids (the "**Bid Deadline**") is **December 28, 2018, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and shall be no earlier than twenty (20) days following service of the applicable Sale Notice for all other Assets; provided that, the Debtors shall have the right, after consulting with the Consultation Parties and consistent with the terms of the DIP ABL Documents (as defined in the DIP ABL Orders), to extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain parties.  The Debtors shall promptly provide copies of all bids to each of the Consultation Parties, but in no event later than the next calendar day.

12.     For all purposes under the Global Bidding Procedures, any Stalking Horse Bidder authorized as such pursuant to this Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the applicable Stalking Horse Package by the Bid Deadline, the Debtors shall not be required to

conduct an Auction for the applicable Stalking Horse Package, and the applicable Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Assets included in the applicable Stalking Horse Package as set forth herein.

13.    If, in addition to a Stalking Horse Bid, the Debtors receive at least one Qualified Bid in respect of the applicable Stalking Horse Package by the Bid Deadline, the Debtors shall conduct an Auction of the Assets in the applicable Stalking Horse Package in accordance with the Global Bidding Procedures.

14.    The Debtors may also include Assets not included in an applicable Stalking Horse Bid for bidding and sale at ~~the~~any Auction pursuant to the Global Bidding Procedures, including the Auction for the Go Forward Stores if a Qualified Bid seeks to purchase those Assets.

15.    The Auction will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **January 14, 2019, at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores, and Auctions will take place within twenty-five (25) days of service of the applicable Sale Notice with respect to all other Assets at a location to be announced, or at such other time and location as the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, may determine in their reasonable business judgment.

16.    All proceedings of an Auction shall be conducted openly, and the Consultation Parties, their professional advisors, and all creditors and other parties in interest shall be permitted to attend; provided that, the Debtors may, in their reasonable business judgment, and ~~in~~after consult~~ation~~ing with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or

9

accompany Qualified Bidders or other parties in interest at an Auction.  The proceedings of Auctions shall be transcribed and/or video recorded.

17.     Each Qualified Bidder participating in an Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets in its bid if selected as a Successful Bidder.

18.     Subject to this Order, the Global Bidding Procedures, and the rights of a Stalking Horse Bidder under its applicable Stalking Horse Agreement, the Debtors shall have the right to, after consulting with the Consultation Parties, in the exercise of their reasonable business judgment, (i) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (ii) determine the "Baseline Bids;" (iii) determine the amount of each Minimum Overbid; (iv)  determine which bids that are Qualified Bids are the Successful Bids and Back-Up Bids; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Global Bidding Procedures, Bankruptcy Code, this Order, or any other order of the Court, or (c) contrary to the best interests of the Debtors and their estates; (vi) adjourn or cancel the Auction, with respect to all or certain of the Assets, after providing notice of such adjournment or cancellation in accordance with the Global Bidding Procedures; and (vii) adjourn a Sale Hearing after providing notice of such adjournment in accordance with the Global Bidding Procedures.

19.     The Debtors shall have the right, in their reasonable business judgment, after consulting with the Consultation Parties, in a manner consistent with the Debtors' fiduciary duties and applicable law, to modify the Global Bidding Procedures, including by (i) waiving terms and conditions with respect to all Prospective Bidders; (ii) extending the deadlines set forth

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

therein; (iii) announcing at an Auction modified or additional procedures for conducting the Auction; (iv) providing reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids ~~by such bidders~~ on any Assets (including extending deadlines as may be required for any applicable Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with any previous filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976), in each case, to the extent not materially inconsistent with the Global Bidding Procedures and this Order. ~~Except as provided in any Stalking Horse Agreement, nothing~~; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders.  Nothing in this Order or the Global Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset ~~with a Qualified Bidder~~.

## The Sale Hearings and Sale Objections Deadlines

20.    The applicable Sale Hearing shall be held before the Court on **January 31, 2019 at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores and within five (5) days of the applicable Sale Objection Deadline (as defined herein) with respect to all other Assets;[3] provided that, the Debtors may seek an adjournment of the Sale Hearing, as the Debtors, ~~in~~after consultation with the Consultation Parties, deem appropriate in the exercise of their

---

[3] Subject to Court availability.

reasonable business judgment.  Any sale to a Back-Up Bidder shall be considered on appropriate notice under the Amended Case Management Procedures Order.

21.     Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**"), excluding Stalking Horse Designation Objections, shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients by no later than (a) with respect to the sale of the Go Forward Stores to a Successful Bidder, including a Stalking Horse Bidder, the later of (x) **January 24, 2019 at 4:00 p.m. (Eastern Time)** and (y) eight (8) days after the filing of the Notice of Auction Results and service of the Adequate Assurance Information and (b) with respect to the ~~Go Forward Stores and~~sale of all other Assets, including a sale to an applicable Stalking Horse Bidder, within ~~eight~~ten (~~8~~10) days of the filing of the Notice of Auction Results and service of the Adequate Assurance Information ~~with respect to all other Assets~~ (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.~~-~~  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing.

22.     Any party who fails to file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the applicable Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of the Sale Transaction(s) contemplated by the asset purchase agreement between the Debtors and the

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

applicable Successful Bidder (including any Stalking Horse Bidder if named a Successful Bidder), including the transfer of Assets to the Successful Bidder (and any Back Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

### Noticing Procedures

23.     The Sale Notice is approved, and no other or further notice of the sale of any Assets, an Auction, the Sale Hearings, or the Sale Objection Deadlines shall be required if the Debtors serve and publish such notice, in the manner provided in the Global Bidding Procedures and this Order.  The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

24.     Within fiveone (51) businesscalendar days after the (a) execution of a Stalking Horse Agreement, including with respect to the Go Forward Stores and at any time thereafter with respect to all other Assets(b) determination by the Debtors to auction an asset without a Stalking Horse Bidder, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website the Sale Notice, which shall set forth (i) a complete list and general description of the Assets (subject to modification at any Auction for sSale Hearing); (ii) the date, time, and place of the (ax) Auction and (by) Sale Hearing; (iiiz) Sale Objection Deadlines; and (iiiaa) the procedures for filing Sale Objections.

25.     Within sevenfive (75) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors shall cause the information contained in the Sale Notice to be published once in at least one national publication.  The

Debtors may elect to publish notice of the sales of other Assets in consultation with the Consultation Parties.

26.     Within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Court, serve on the Sale Notice Parties (including each Counterparty to a Proposed Assumed Contract (as hereinafter defined) in a Successful Bid and Back-Up Bid and each Counterparty to any known Contracts and Leases that have been or may later be designated by a Successful Bidder for assumption and assignment), and cause to be published on the Prime Clerk Website, a notice containing the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment in connection with a Sale Transaction; and (v) to the extent practicable, the governing agreement with the Successful Bidder or drafts thereof; and (vi) set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

<u>**Assumption and Assignment Procedures**</u>

27.     The Assumption and Assignment Notice is reasonable, fair, and appropriate, and contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of Contracts and Leases (such Contracts and Leases, the

"**Proposed Assumed Contracts**") shall be required if the Debtors file and serve such notice (and, subsequently, the Notice of Auction Results ~~and any applicable Notice of Designation (as hereinafter defined)~~) in accordance with the Assumption and Assignment Procedures and this Order.

28.    The Debtors shall, within five (5) days of filing and service of a Sale Notice, or as soon as reasonably practicable thereafter ~~designation of a Stalking Horse Bidder~~, file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty, and cause to be published on the Prime Clerk Website, the Assumption and Assignment Notice, which shall (i) identify the Proposed Assumed Contracts in the applicable list of Assets or Stalking Horse Bid, as applicable, and, if known, any additional Contracts or Leases that may be designated for assumption and assignment ~~(the "Designation Rights Contracts")~~ to the applicable ~~Stalking Horse B~~bidder (or its known proposed assignee) (including any Stalking Horse Bidder pursuant to the terms and provisions of the applicable Stalking Horse Agreement); (ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract and Lease identified on the Assumption and Assignment Notice; (iii) include Adequate Assurance Information for the Stalking Horse Bidder, if applicable, provided that Adequate Assurance Information shall only be served on Counterparties to Contracts or Leases; (iv) expressly state that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court approval; (~~iv~~v) prominently display the deadline to file a Cure Objection and an applicable Adequate Assurance Objection (each as hereinafter defined); and (~~v~~vi) prominently display the dates, times, and location of the Sale Hearing(s).

~~29.    Pursuant to the terms of an applicable Stalking Horse Agreement or asset purchase agreement with a Successful Bidder, the Stalking Horse Bidder or Successful Bidder, as~~

applicable may have the right, until a specified date, to designate any Designation Rights Contracts for assumption and assignment. The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable after the Debtors' receipt of a Buyer Assumption Notice, (i) file with the Court, serve by overnight delivery on the applicable Counterparty, and cause to be published on the Prime Clerk Website, a notice of proposed assumption and assignment of the applicable Designation Rights Contract (a "**Notice of Designation**"), which shall (a) expressly state that assumption or assignment of the Designation Rights Contract is not guaranteed and subject to Court approval, and (b) prominently display the deadline to file an applicable Adequate Assurance Objection; and (ii) provide or cause to be provided to the applicable Counterparty the applicable Stalking Horse Bidder's or Successful Bidder's, as applicable, Adequate Assurance Information (as hereinafter defined).

29. ~~30.~~ The Debtors shall provide notice to Counterparties whose Contracts or Leases may be designated for assumption and assignment by any Successful Bidder, pursuant to the terms of an asset purchase agreement executed by the Debtors and the applicable Successful Bidder, in a manner consistent with the Assumption and Assignment Procedures, this Order, and all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

30. ~~31.~~ Any objection to the assumption and assignment of a Contract or Lease, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding defaults under such Contract or Lease (a "**Cure Objection**") shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof, including the cure amount the objecting Counterparty believes is required to cure defaults under the relevant Contract or Lease; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

served on the Objection Recipients (a) **the later of (x) fourteen (14) calendar days after service of the Assumption and Assignment Notice and (y) January 7, 2019** with respect to Cure Objections for Proposed Assumed Contracts in a Stalking Horse Bid for the Go Forward Stores, (b) **within eight (8) calendar days of service of the Debtors' proposed Cure Costs**. with respect to Cure Objections for Proposed Assumed Contracts related to a sale of the Go Forward Stores if not provided in a Stalking Horse Bid, and (c) **within fourteen (14) calendar days of service of the Assumption and Assignment Notice** with respect to all other Assets,

31.    32. If a Cure Objection cannot otherwise by resolved by the parties, the Debtors may, after consultationing with the Consultation Parties, (i) assume the Contract(s) or Lease(s) prior to the resolution of the Cure Objection; provided that the Debtors shall (a) pay to the applicable Counterparty the undisputed portion of the Cure Cost within five (5) business days after entry of the applicable Sale Order and (b) reserve cash in an amount sufficient to pay the disputed portion of the Cure Cost reasonably asserted by the applicable Counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the Counterparty and the Debtors) (the "**Reserve Amount**"), or (ii) adjourn their request to assume the Contract or Lease pending resolution of the Cure Objection (an "**Adjourned Cure Objection**"); provided further that, to the extent the Adjourned Cure Objection is resolved or determined unfavorably to the Debtors, the Debtors may withdraw the proposed assumption of the applicable Contract or Lease after such determination by filing a notice of withdrawal, which, in the case of a Lease, shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code.  The Debtors shall file notice of their intention to reserve for a Cure Cost or to adjourn their request for assumption.

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction in the Debtors' discretion.

32.    33. If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

33.    34. In accordance with the Global Bidding Procedures, to qualify as a Qualified Bidder, each Prospective Bidder shall provide with its bid information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under the applicable Proposed Assumed Contracts and any other Contracts orand Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**").

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

35. In the event the Debtors designate a Stalking Horse Bidder, the Debtors shall use commercially reasonable efforts to, on the date of service of the Sale Notice, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to Proposed Assumed Contracts in the applicable Stalking Horse Bid, and (ii) Counterparties to any known Contracts or Leases that later may be designated by the applicable Stalking Horse Bidder for assumption and assignment pursuant to the applicable Stalking Horse Bidder, Adequate Assurance Information for the Stalking Horse Bidder.

34.    36. If a Stalking Horse Bidder is named a Successful Bidder at the Auction, the Debtors shall, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to any additional Proposed Assumed Contracts added to the applicable Stalking Horse Bid at the Auction, and (ii) applicable Counterparties to any known Contracts and Leases that may later be designated by the applicable Stalking Horse Bidder for assumption and assignment pursuant to the terms of the applicable Stalking Horse Agreement, Adequate Assurance Information for the Stalking Horse Bidder.

35.    37. The Debtors shall, within two (2) business days after the conclusion of the Auction, or as soon as reasonably practicable thereafter, provide or cause to be provided to (i) Counterparties to the Proposed Assumed Contracts included in each Successful Bid (other than a Stalking Horse Bidder), and (ii) Counterparties to any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment pursuant to an asset purchase agreement executed by the applicable Successful Bidder and the Debtors, and (iii) Adequate Assurance Information for such Successful Bidder.

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

36.    ~~38.~~ The Debtors shall provide or cause to be provided to applicable Counterparties Adequate Assurance Information on a strictly confidential basis. Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection filed by the Counterparty; provided that, any Adequate Assurance Objection that discloses confidential, non-public information included in the Adequate Assurance Information, which shall be expressly identified as non-public and confidential therein, must be filed with the Court with such confidential, non-public information redacted, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Contract or Lease (if different from the Successful Bidder), or ordered by the Court.

37.    ~~39.~~ Any objection to the assumption and assignment of a Proposed Assumed Contract, the subject of which objection is any Stalking Horse Bidder's or Successful Bidder's, as applicable, and/or its known proposed assignee's (if different from the Stalking Horse Bidder's or Successful Bidder's, as applicable) proposed form of adequate assurance of future performance with respect to such Proposed Assumed Contract (an "**Adequate Assurance Objection**"), shall (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Court and served on the Objection Recipients, including the applicable Stalking Horse Bidder or Successful Bidder, as applicable, and any known proposed assignee of such Proposed Assumed Contract (if different from the Stalking Horse Bidder or Successful Bidder, as applicable) by no later than (a) **the later**

20

**of (x) fourteen (14) calendar days after service of the Assumption and Assignment Notice and (y) January 7, 2019** with respect to Adequate Assurance Information for a Stalking Horse Bidder for the Go Forward Stores, (b) **eight (8) calendar days after service of the applicable Adequate Assurance Information.** with respect to Successful Bidders other than a Stalking Horse Bidder for the Go Forward Stores, and (c) **within fourteen (14) calendar days after service of the applicable Adequate Assurance Information** with respect to all other Assets.

38. 40. If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance with respect to the applicable Proposed Assumed Contract shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors.

39. 41. If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the Contract or Lease. The Stalking Horse Bidder or Successful Bidder, as applicable, and/or its known proposed assignee of the Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or Lease or any other document.

42. For the avoidance of doubt, if no timely Adequate Assurance Objection is filed with the Court and served on the Objection Recipients in response to a Notice of Designation, the Stalking Horse Bidder or Successful Bidder, as applicable, shall be deemed to have provided adequate assurance of future performance with respect to the applicable Designation Rights

21

Contract in accordance with Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Designation Rights Contract or any other document, and the Debtors shall be authorized to assume and assign the applicable Designation Rights Contract to the Stalking Horse Bidder or Successful Bidder (or its known proposed assignee), as applicable, without further notice to any Counterparty or any other party in interest, and without need for further order of the Court, with such assumption and assignment being subject to the terms of the applicable Sale Order.

40.    43. The Debtors' assumption and assignment of a Proposed Assumed Contract to a Successful Bidder (or to a designee of the Successful Bidder) is subject to Court approval and consummation of a Sale Transaction with the applicable Successful Bidder. Accordingly, absent the closing of a Sale Transaction, the Proposed Assumed Contract shall not be deemed either assumed or assumed and assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

41.    44. The inclusion of a Contract, Lease, or Cure Costs with respect thereto on the Assumption and Assignment Notice or the Notice of Auction Results shall not constitute or be deemed a determination or admission by the Debtors, the Stalking Horse Bidder(s) or Successful Bidders, as applicable, or any other party in interest that such Contract or Lease is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on the Assumption and Assignment Notice and Notice of Auction Results.  The Debtors' inclusion of any Contract or Lease on the Assumption and Assignment Notice or Notice of Auction Results shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.

22

**General Provisions**

42.    Parties shall serve Counterparties to Contracts and Leases by overnight delivery and by e-mail to counsel for such Counterparties who have filed a notice of appearance in these chapter 11 cases.

43.    45. All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Assets during the sale process, including at an Auction, shall be deemed to have knowingly and voluntarily (i) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale Transaction; (ii) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auctions, and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (iii) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

44.    46. Prior to mailing and publishing a Sale Notice or an Assumption and Assignment Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

45.    47. Notwithstanding anything in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively,

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

the "**DIP ABL Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP ABL Orders).

46.   48. The Except with respect to the procedures for consideration of Credit Bids by any insiders or affiliates, the Debtors' rights are reserved to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law and the DIP ABL Documents (as defined in the DIP ABL Orders), and in consultation with the Consultation Parties, modify these Global Bidding Procedures; waive terms and conditions set forth herein with respect to all Prospective Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidders on any Assets (including extending deadlines as may be required for any Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Global Bidding Procedures and the Global Bidding Procedures Order. Except as; provided in any Stalking Horse Agreement approved or deemed approved by the Court as set forth that nothing herein, shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders.  **The Debtors** shall not be obligated to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder pursuant to this Order.

47. ~~49.~~ To the extent there is any inconsistency between the terms of any of the DIP ABL Orders and this Order, the terms of the DIP ABL Order (or DIP ABL Orders, as applicable) shall control.

48. ~~50.~~ Notwithstanding anything to the contrary contained in this Order or in the Global Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by this order or the Global Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, and the DIP ABL Orders ~~and the Prepetition ABL Documents~~, as applicable; and (iii) nothing in this Order or in the Global Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder.

49. Nothing in this Order or the Global Bidding Procedures shall be deemed to authorize or shall be argued to permit the Debtors, their agents or advisors to take any action in connection with an unexpired master lease of nonresidential real property to which a Debtor is a party (each such lease, a "**Master Lease**") or other relief granted in this Order that is not in compliance with, or that would result in a default or breach under, such Master Lease, without either (a) an amendment to or waiver under such Master Lease, in accordance with its terms and all consents required for such amendment or waiver under such Master Lease or (b) the entry of a further order of the Court, in either case, permitting such action; provided that if any property subject to a Master Lease is included in a Sale Transaction and the Debtors or any other party

seek to sever a Master Lease applicable to such property, such relief shall be sought by expressly stating that such party is seeking to sever such Master Lease and describing with particularity the Master Lease and any non-Debtor counterparty to that Master Lease will have fourteen (14) calendar days to file and serve an objection to such Sale Transaction; provided further that all rights, remedies, and positions of all parties to any Master Leases are preserved.

50.    Nothing herein shall authorize, absent further order of the Court or agreement among the Debtors and the applicable non-Debtor counterparty, the sale of any real estate rights or assets free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "**Restrictive Covenants**") that are not executory or that run with the land.  To the extent that the Debtors or any other party seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto. All rights, remedies, and positions of all parties with respect to such relief are preserved.

51.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

52.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

Dated: _____, 2018
        White Plains, New York

                                    _____
                                    THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

WEIL:\96790401\1\73217.0004WEIL:\96790401\16\73217.0004

## Exhibit 1

### Global Bidding Procedures

WEIL:\96790401\16\73217.0004
WEIL:\96790401\1\73217.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                              :
                                                   :          Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,              :
                                                   :          Case No. 18-23538 (RDD)
                                                   :
                                                   :
                       Debtors.[1]                 :          (Jointly Administered)

-------------------------------------------------------------x

## GLOBAL BIDDING PROCEDURES

The procedures set forth herein (the "**Global Bidding Procedures**") will be employed in connection with a sale or disposition of certain of the assets of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

By the *Debtors' Motion for Approval of Global Bidding Procedures* (the "**Motion**"), the Debtors sought, among other things, approval of the Global Bidding Procedures for soliciting

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

1

bids for, conducting auctions (each, an "**Auction**") of, and consummating sales (each, a "**Sale Transaction**") of their assets, as further described herein.

On [_____], 2018, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered the an order approving the Motion (ECF No. [__]) (the "**Global Bidding Procedures Order**").[2]

To the extent that the Global Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to the Global Bidding Procedures or at any Auction, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

# I.
## Description of the Assets

The Debtors are seeking to sell [_____] (the "**Assets**").

Any party interested in submitting a bid for any of the Debtors' Assets should contact Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)project.blue.rx@lazard.com)).

The sale of any real estate Assets will not be free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "**Restrictive Covenants**") unless (i) the counterparties to a Restrictive Covenant agree otherwise or (ii) the Court so determines after specific notice that the Debtors are seeking to sell an Asset free and clear of an identified Restrictive Covenant, an opportunity for counterparties to object, and a hearing.

# II.
## Designation of Stalking Horse Bidders

[Describe Stalking Horse Agreement]

To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the Assets, including the Go Forward Stores, which designation shall be after consultation with the Consultation Parties, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file a Sale Notice setting forth the material terms of such Stalking Horse Agreement, including any Credit

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion and the Global Bidding Procedures Order.

WEIL:\96790401\16\73217.0004

Bid and Stalking Horse Bid Protections, and attaching the Stalking Horse Agreement and proposed sale order.

    i.    <u>Objections to Stalking Horse Agreement</u>.   Any objections to the designation of a Stalking Horse Bidder~~,~~ or any other ~~terms of a~~ Stalking Horse ~~Agreement, including any Credit Bid, release provisions, or the provision of a Termination Payment to a Stalking Horse Bidder~~Bid Protection pursuant to the terms and provisions of a Stalking Horse Agreement ~~(~~, including any Credit Bid or Termination Payment (each, a "**Stalking Horse Designation Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (iii) state, with specificity, the legal and factual bases thereof; and (iv) be filed with the Court and served on the Objection Recipients within ten (10) calendar days after filing and service of the applicable Sale Notice with respect to all assets other than the Go Forward Stores; provided that if a designated Stalking Horse Bidder is an insider or affiliate of the Debtors, parties in interest will have fourteen (14) calendar days after filing and service of the applicable Sale Notice to file a Stalking Horse Designation Objection.  Parties in interest shall have until **December ~~28~~31, 2018, at 4:00 p.m. (Eastern Time)** to object to the designation of a Stalking Horse ~~Agreement~~Bidder (including any Credit Bid or Stalking Horse Bid Protection) with respect to the sale of the Go Forward Stores.

    If a timely Stalking Horse Designation Objection is filed and served in accordance with the preceding paragraph, the proposed Stalking Horse ~~Agreement~~Bid Protections, including any ~~Credit Bid, Landlord Bid, and~~ Termination Payment, provided for under such agreement, shall not be ~~deemed~~ approved until the Stalking Horse Designation Objection is resolved, either consensually, by agreement of the objecting party and the Debtors (after consulting with the Consultation Parties), or by order of the Bankruptcy Court resolving such objection.

    For the avoidance of doubt, any Stalking Horse Agreement shall not be binding on the Debtors or their estates absent approval (or deemed approval) by the Bankruptcy Court as set forth herein.

    ii.    <u>Failure to File Timely Stalking Horse Designation Objection</u>.  If no timely Stalking Horse Designation Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Global Bidding Procedures, the ~~Debtors' entry into the applicable Stalking Horse Agreement will be deemed approved without further order of the Court upon the expiration of the objection deadline, including with respect to any~~ Stalking Horse Bid Protections, including any Termination Payment shall be deemed approved; provided that if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such

3

affiliate shall not be entitled to Credit Bid ~~until it~~at the Auction unless it has received an order of the Court approving its ability to Credit Bid~~.~~ prior to the Auction. Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be submitted by the applicable Bid Deadline and a determination that such Credit Bid constitutes a Qualified Bid may not be made absent an order of the Court.

### III.
### Important Dates and Deadlines
### [Assets Other Than Go Forward Stores]

| | |
|---|---|
| **Within ten (10) days of service of the Sale Notice** | Deadline to object to ~~proposed Sale Transaction(s) with~~designation of a Stalking Horse Bidder and any Stalking Horse Bid Protections offered to a party that is not an insider or affiliate ~~of the Debtors, including with respect to designation of such Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement~~ (including any Credit Bid or Termination Payment) |
| **Within fourteen (14) days of service of the Sale Notice** | Deadline to object to designation of Stalking Horse Bidder and any Stalking Horse Bid Protection offered to an insider or affiliate (including any Credit Bid or Termination Payment) |
| **Within ~~ten~~fourteen (~~10~~14) days of service of the Assumption and Assignment Notice and Adequate Assurance Information for Stalking Horse Bidder, as applicable** | Deadline to object to (i) the Debtors' proposed Cure Costs for Proposed Assumed Contracts in an applicable Stalking Horse Package and (i~~ii~~) the assumption of and assignment to a Stalking Horse Bidder(s) of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by a Stalking Horse Bidder for assumption and assignment |
| ~~**Within fourteen (14) days of service of the Sale Notice**~~ | ~~Deadline to object to proposed Sale Transaction(s) with Stalking Horse Bidder that is an insider or affiliate of the Debtors, including with respect to designation of Stalking Horse Bidder and any provision of applicable Stalking Horse Agreement (including any Credit Bid or Termination Payment)~~ |
| **No earlier than twenty (20) days following service of the Sale Notice** | Bid Deadline |
| **Subject to Court Availability** | Hearing on Stalking Horse Bidder Objections or Qualification of Affiliate/Insider Credit Bid |

4

| | |
|---|---|
| **Within five (5) days of the Bid Deadline or Court determination** | Deadline for the Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
| **Not less than twenty-five (25) days following service of the Sale Notice** | Auction |
| **Within two (2) days of the conclusion of the Auction** | Target date for the Debtors to file with the Bankruptcy Court the Notice of Auction Results and to provide applicable Counterparties with Adequate Assurance Information for the Successful Bidders if different than Stalking Horse Bidders |
| **~~Eight~~Ten (~~8~~10) days following the filing of Notice of Auction Results and service of the Adequate Assurance Information** | Deadline to object to (i) the proposed Sale Transaction(s) for Successful Bidders ~~that are not~~(including Stalking Horse Bidders), (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not already included in an~~y Stalking Horse Bid~~applicable Assumption and Assignment Notice, (iii) the assumption of and assignment to a Successful Bidder(s) ~~that is not~~(including a Stalking Horse Bidder) of any Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder(s) for assumption and assignment, and (iv) the conduct of the Auction |
| **Within five (5) days of the deadline to file Sale Objections** | Proposed date of Sale Hearing (subject to the availability of the Court) |

**IV.**
**Important Dates and Deadlines**
**[Go Forward Stores]**

| | |
|---|---|
| **November 15, 2018 at 10:00 a.m. (ET)** | Hearing to consider approval of Global Bidding Procedures and entry of Global Bidding Procedures Order |
| **~~Nov~~December ~~21~~5, 2018** | Deadline to Submit Non-Binding Indication of Interest |
| **December 15, 2018** | Deadline for the Debtors to designate Stalking Horse Bidder for Go Forward Stores and file a Sale Notice with respect to the Go Forward Stores designating a Stalking Horse Bidder |
| **December 28, 2018 at 4:00 p.m. (ET)** | Bid Deadline for Go Forward Stores~~;~~<br>~~Deadline to object to Stalking Horse Bid for Go Forward Stores~~ |
| **December 31, 2018 at 4:00 p.m. (ET)** | Deadline to object to the designation of a Stalking Horse Bidder and any Stalking Horse Bid Protections offered for the Go Forward Stores (including any Credit Bid or Termination Payment) |

5

| January 4, 2019 at 4:00 p.m. (ET) | Deadline for the Debtors to notify Prospective Bidders of their status as Qualified Bidders and announcement of Auction Packages |
|---|---|
| January 10, 2019 at 10:00 a.m. (ET) | Proposed date of hearing on Stalking Horse Designation Objections and on objections to the qualification of any Credit Bid by affiliate or insider, if necessary (subject to the availability of the Court) |
| January 14, 2019 at 10:00 a.m. (ET) | Auction for Go Forward Stores to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 |
| January 16, 2019 | Target date for the Debtors to file with the Bankruptcy Court the  Notice of Auction Results and to provide the applicable Counterparty with Adequate Assurance Information for the Successful Bidder if different than the Stalking Horse Bidder |
| ~~January 24, 2019~~ The later of (i) **January 24, 2019** at 4:00 p.m. (ET) and (ii) **eight (8) days** of the filing of the Notice of Auction Results and service of the Adequate Assurance Information | Deadline to object to (i) the proposed Sale Transaction for a Successful Bidder ~~that is not~~(including a Stalking Horse Bidder), (ii) Debtors' proposed Cure Costs for Proposed Assumed Contracts not included in any Stalking Horse Bid, (iii) the assumption of and assignment to a Successful Bidder that is not a Stalking Horse Bidder of any ~~(a)~~ Proposed Assumed Contracts or any Contracts or Leases that may later be designated by such Successful Bidder for assumption and assignment, and (iv) conduct of the Auction |
| January 29, 2019 at 4:00 p.m. (ET) or two (2) days prior to the Hearing Date | Debtors' Deadline to Reply to Sale Objections |
| January 31, 2019 at 10:00 a.m. (ET) | Proposed date of Sale Hearing (subject to the availability of the Court) |

## V.
## Noticing

### A.    Consultation Parties

Throughout the sale process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"):

    i.    Bank of America, N.A., in its capacity as the administrative agent under the First Lien Credit Facility and DIP ABL Agent and its advisors, including Skadden, Arps, Slate, Meagher & Flom LLP; and Berkeley Research Group, LLC;

    ii.    Wells Fargo Bank, National Association, in its capacity as Co-Collateral Agent under the First Lien Credit Facility and Co-Collateral Agent under the DIP ABL Facility (as defined in the DIP ABL Orders) (together with Bank of America, N.A., the "**DIP ABL Agents**") and its advisors, including Choate, Hall & Stewart LLP; and

    iii.    the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "**Creditors' Committee**") and its advisors, including Akin Gump Strauss Hauer & Feld LLP.

The Debtors shall promptly provide copies of all bids and non-binding indications of interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such bid is received; provided that the Consultation Parties must treat such bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder. Further, the; provided, further that any bids by an insider or affiliate must be provided to the Consultation Parties at the same time such bids are provided to the Debtors.

The Debtors shall not consult with or provide copies of bids regarding any assets to any Consultation Party or any insider or affiliate of the Debtors pursuant to the terms of these Global Bidding Procedures if such party has a bid for the Assets pending, or expressed any written interest in bidding for any of the Assets; provided, however, that if such Consultation Party or insider or affiliate of the Debtors chooses not to submit aany bid, then such party may receive copies of all bids afterfollowing expiration of the latest possible Bid Deadline (has passedsuch Bid Deadline may be extended hereunder).  Notwithstanding the foregoing, if a member of the Creditors' Committee submits a Qualified Bid (as hereinafter defined), the Creditors' Committee will maintain its consultation rights as a Consultation Party; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable Assets, and shall not provide any confidential information regarding the Assets or a transaction involving the Assets to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Global Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.  Rights that Consultation Parties may have pursuant to the terms of other agreements or orders of the Court shall not be affected by these Global Bidding Procedures or the Global Bidding Procedures Order.

**B.**    **Bid Notice Parties**

Qualified Bids must be submitted in writing to the following parties (collectively, the "**Bid Notice Parties**"):

    i.    the Debtors (Attn:  Rob Riecker (rob.riecker@searshc.com); Luke Valentino (luke.valentino@searshc.com); and Mohsin Meghji (mmeghji@miiipartners.com));

ii.    counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. (ray.schrock@weil.com); Jacqueline Marcus, Esq. (jacqueline.marcus@weil.com); Garrett A. Fail, Esq. (garrett.fail@weil.com); and Sunny Singh, Esq. (sunny.singh@weil.com)); ~~and~~

iii.    the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (~~project.blue.rx@lazard.com~~project.blue.rx@lazard.com))~~.~~; and

iv.    to the extent such bid is submitted by an insider or affiliate of the Debtors, each of the Consultation Parties.

## C.    Sale Notice Parties

The "**Sale Notice Parties**" shall include the following persons and entities:

i.    the Consultation Parties (as applicable);

ii.    the Standard Parties (as defined in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405));

iii.    any governmental authority known to have a claim against the Debtors in these chapter 11 cases;

iv.    all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service;

v.    all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency;

vi.    the United States Attorney General;

vii.    the United States Attorney for the Southern District of New York;

viii.    the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate;

ix.    the Antitrust Division of the United States Department of Justice;

x.    the Federal Trade Commission;

xi.    Cardtronics USA, Inc.;

xii.    all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the assets offered for sale;

8

      xiii.    all Counterparties to Contracts and Leases (including any reciprocal easement agreements) that could be assumed or rejected in connection with a Sale Transaction and any additional Contracts or Leases that may be designated for assumption and assignment;

      xiv.    all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction involving any material portion of the Assets during the past twelve (12) months, including any person or entity that has submitted a bid for any material portion of the Assets;

      xv.    any consumer privacy ombudsman appointed under section 332 of the Bankruptcy Code;

      xvi.    ~~xi.~~ all of the persons and entities entitled to notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and

      xvii.    ~~xii.~~ all other persons and entities as directed by the Bankruptcy Court.

Within ~~five~~one (~~5~~1) ~~business~~calendar day~~s~~ after the (a) execution of ~~a~~any Stalking Horse Agreement~~,~~ including with respect to the Go Forward Stores and (b) determination by the Debtors to auction an asset without a Stalking Horse Bidder, the Debtors ~~will~~shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website~~,~~ a notice (the "**Sale Notice**")~~,~~ setting forth (i) a complete list and general description of the Assets (subject to modification at any Auction f~~or s~~Sale Hearing); (ii) the date, time, and place of the (~~a~~x) Auction and (~~b~~y) Sale Hearing~~s (as hereinafter defined)~~; (z) Sale Objection Deadlines; and (~~iii~~aa) the ~~deadlines and~~ procedures for objecting to the proposed Sale Transactions(~~.~~s)

~~Within seven~~As soon as reasonably practicable following, but no later than five (~~7~~5) business days after the execution of a Stalking Horse Agreement with respect to the Go Forward Stores, the Debtors shall cause the information contained in the Sale Notice to be published once in at least one national publication.

## D.    Objection Recipients

Sale Objections ~~(as hereinafter defined)~~ shall be filed with the Bankruptcy Court and served on the following parties (collectively, the "**Objection Recipients**"): (i) the Bid Notice Parties; (ii) the Consultation Parties; and (iii) counsel to the relevant Stalking Horse Bidder, if applicable, or Successful Bidder (as hereinafter defined) at the applicable Auction by no later than (a) with respect to the sale of the Go Forward Stores to a Successful Bidder, including a Stalking Horse Bidder, the later of (x) **January 24, 2019**~~, at 4:00 p.m. (Eastern Time)~~ ~~with respect to the Go Forward Stores,~~and (y) eight (8) days ~~following~~after the filing of the Notice of Auction Results and service of the Adequate Assurance Information and (b) with respect to the sale of all ~~O~~other Assets, ~~or (z)~~including a sale to an applicable Stalking Horse Bidder, within ten (10) days ~~after~~of the filing of the Notice of Auction Results and service of ~~a notice of entry into a Stalking Horse Agreement; provided that the deadline shall be fourteen (14) days after the filing~~

9

~~and service of a notice of entry into a Stalking Horse Agreement if the Stalking Horse Bidder is an affiliate~~the Adequate Assurance Information (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment after consultation with the Consultation Parties.

## E.    Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption, assignment, and designation of Contracts and Leases in accordance with the Global Bidding Procedures Order~~.~~

## VI.
## Bidder Qualifications

Each person or entity that desires to participate in ~~the~~any Auction (each, a "**Prospective Bidder**") ~~must be~~as determined by the Debtors, after consultation with the Consultation Parties, ~~to~~shall satisfy each of the following eligibility requirements:

## A.    Due Diligence

To be eligible to participate in ~~the~~an Auction, a Prospective Bidder must first execute a confidentiality agreement, in form and substance satisfactory to the Debtors.  Upon execution of a valid confidentiality agreement, any Prospective Bidder identified by the Debtors, after consultation with the Consultation Parties, to be reasonably likely to be a Qualified Bidder (as hereinafter defined) that wishes to conduct due diligence on the Assets may be granted access to confidential information regarding the same, including an information package containing information and financial data with respect to the applicable Assets and access to a data room (the "**Data Room**") with confidential electronic data concerning the Assets.  If the Debtors, after consultation with the Consultation Parties, determine that a Prospective Bidder does not qualify as a Qualified Bidder, the Prospective Bidder shall not be entitled to access to the Data Room or receive additional non-public information regarding the Debtors' businesses, the Assets, or the sale process.

Promptly upon a Prospective Bidder entering into a confidentiality agreement, but in any event no later than the next calendar day following such event, the Debtors will notify each of the Consultation Parties and provide to such Consultation Parties copies of such executed confidentiality agreements.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders.  All due diligence requests shall be directed to the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)).

## B.    Non-Binding Indication of Interest Date for Go Forward Stores

If you are interested in purchasing any of the Go Forward Stores, whether individually, in combination, or in connection with a Stalking Horse Store Package, you ~~should~~are encouraged contact the Debtors' advisors by ~~no later than Nov~~December ~~21~~5, 2018

10

(the "**Non-Binding Indication of Interest Date**"), in writing expressing your interest and identifying the Assets in which you are expressing such interest to Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com))

Note that submitting an indication of interest by the Non-Binding Indication of Interest Date does not obligate you to submit a formal bid or to participate in the sale process and does not exempt you from also having to submit a Qualified Bid by the applicable Bid Deadline (defined below) in order to participate in any subsequent Auction for the Assets on which you are indicating an interest, all as described below.

**C.**     ~~A.~~ **Bid Deadline**

Any Prospective Bidder that intends to participate in an Auction must submit a Qualified Bid (as hereinafter defined) on or before **December 28, 2018, at 4:00 p.m. (Eastern Time)** with respect to the Go Forward Stores and within twenty (20) days of service of the applicable Sale Notice with respect to ~~the~~all ~~O~~other Assets (each, a "**Bid Deadline**") in writing to the Bid Notice Parties.

The Debtors may, ~~after~~in consult~~ing~~ation with the Consultation Parties and consistent with the terms of the DIP ABL Documents (as defined in the DIP ABL Orders), extend a Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Prospective Bidders. For the avoidance of doubt, any such extension shall not affect any applicable milestones under the DIP ABL Orders.

**D.**     ~~B.~~ **Qualified Bid Requirements**

To qualify as a "**Qualified Bid**," a bid must (i) be a Stalking Horse Bid, or (ii) be in writing and determined by the Debtors, after consultation with the Consultation Parties, to satisfy the following requirements:

    1.    <u>Identification of Bidder</u>.  A Qualified Bid must fully disclose the legal identity of each person or entity bidding for the Assets or otherwise participating in the Auction in connection with such bid (including any equity holders or other financial backers, if the Prospective Bidder is an entity formed for the purpose of submitting bids or consummating a Sale Transaction), and the complete terms of any such participation, and must also disclose any connections, arrangements, or agreements, whether oral or written, with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

    2.    <u>Proposed APA</u>.  A Qualified Bid must include an executed asset purchase agreement (the "**Proposed APA**") with a redline marked to show any proposed amendments and modifications to the Stalking Horse Agreement (if any).

    3.    <u>Purchased Assets</u>.  A Qualified Bid must clearly identify the following:

11

a.   the Assets to be purchased, including any Contracts and Leases of the Debtors that would be assumed and assigned in connection with the proposed Sale Transaction (all such Contracts and Leases, the "**Proposed Assumed Contracts**");

b.   with respect to a bid for multiple Assets, the allocation of value in U.S. dollars that the Prospective Bidder associates with each Asset (or group of Assets if such bid is conditioned upon the purchase of all Assets in such group), including a description of any significant assumptions on which such valuation is based;

c.   the liabilities, if any, to be assumed, including any debt to be assumed; and

d.   the Credit Bid or Landlord Bid (each as hereinafter defined), or non-cash consideration, if applicable, and/or the cash purchase price of the bid.

4.   <u>Form of Consideration</u>.

a.   <u>Credit Bidding</u>.   Persons or entities holding a perfected security interest in Assets may seek to Credit Bid, to the extent permitted by applicable law and the documentation governing the Debtors' prepetition credit facilities; provided that ~~such Credit Bid complies with the terms of any~~if an affiliate or insider of the Debtors includes a Credit Bid for part or all of their applicable Stalking Horse Bid, the Debtors will schedule a hearing prior to the commencement of the Auction for determination of such affiliate's ability to Credit Bid, and such affiliate shall not be entitled to Credit Bid at the Auction unless it has received an order of the Court approving ~~debtor in possession financing or the use of cash collateral; provided that a credit bid by an insider or affiliate may only be permitted if expressly authorized by the Court~~its ability to Credit Bid prior to the Auction and compliant with the DIP ABL Orders.  Each of the DIP ABL Agents shall be deemed a Qualified Bidder and shall be entitled to Credit Bid all or a portion of its respective DIP ABL Obligations or Prepetition ABL Obligations (each as defined in the DIP ABL Orders) as applicable, in accordance with section 363(k) of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, in the Motion or in the Global Bidding Procedures, for the avoidance of doubt, any affiliate shall be entitled to include a Credit Bid for all or part of its Stalking Horse Bid or Qualified Bid to be submitted by the applicable Bid Deadline and a determination that such Credit Bid

12

constitutes a Qualified Bid may not be made absent an order of the Court.

b.  <u>Landlord Bid</u>.  Subject to the Debtors' discretion to consider such bids, any bid submitted by a landlord for the purchase of one of more of such landlord's own Leases (each such bid, a "**Landlord Bid**") may include a purchase price comprised of a (i) cash component, and (ii) a non-cash component that represents a valid and undisputed "credit" for ~~rental arrears~~any unpaid amounts validly due under such Lease (a "**Landlord Credit**") to reduce the cash consideration for the applicable Lease, but not the Good Faith Deposit (as hereinafter defined) required.

c.  <u>Other Non-Cash Consideration</u>. Subject to the Debtors' discretion to consider such bids, in consultation with the Consultation Parties, a bid may be in the form of or include non-cash consideration such as stock or debt securities.

d.  <u>Cash Requirements</u>.  All bids must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full.  Any Credit Bid must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable Assets.

5.  <u>Good Faith Deposit</u>.  ~~Excluding~~Other than bids that ~~include~~are comprised entirely of a Credit Bid or a Landlord Bid (as permitted hereunder), a Qualified Bid must be accompanied by a "**Good Faith Deposit**" in the form of cash in the amount equal to at least ten percent (10%) of the cash portion of the proposed purchase price.  A Good Faith Deposit is required for any bid that includes a cash component, including any bid that is part cash and part Credit Bid or Landlord Bid.  The Debtors may require a higher Good Faith Deposit in their discretion, after consultation with the Consultation Parties, as necessary to protect the interests of their estates or to maximize value.  Good Faith Deposits shall be deposited prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**"), pursuant to the escrow agreement to be provided by the Debtors to Prospective Bidders, and Qualified Bidders shall provide information reasonably requested by the Escrow Agent to establish the deposit, including KYC information.  All Good Faith Deposits shall be held in escrow until no later than ten (10) days after the conclusion of the Auction (except for the Good Faith Deposits of the Successful Bidder(s) and Back-Up Bidder(s)), and thereafter returned to the respective bidders in accordance with the provisions of Part IX of these Global Bidding Procedures.

To the extent that a bid is modified at or prior to the Auction, the bidder must adjust its Good Faith Deposit so that it equals no less than the required deposit to purchase the applicable Assets.

6.    <u>Financial Information</u>. A Qualified Bid must include the following:

a.    a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction(s) contemplated by the Proposed APA;

b.    if applicable, and except for a Landlord Bid, information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), including (i) the Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale Transaction; and (ii) the identity of any known proposed assignee of applicable Contracts or Leases (if different from the Prospective Bidder) with contact information for such person or entity (such information, "**Adequate Assurance Information**"), which. The Adequate Assurance Information may also, but shall not be required to include (xa) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of applicable Contracts and Leases; and (yb) financial statements, tax returns, and annual reports; and, (c) any financial projections, calculations, and/or financial pro-formas prepared in contemplation of purchasing leases, (d) the number of stores the proposed assignee operates and al trade names that the proposed assignee uses, (e) the proposed assignee's intended use of the leased premises, (f) the proposed assignee's experience in retail and in operating in-line and/or anchor stores in a shopping center; and (g) a contact person for the proposed assignee; and

c.    sufficient evidence, as reasonably determined by the Debtors, to allow the Debtors, afterin consultingation with the Consultation Parties, to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to consummate the Sale Transactions contemplated in the Prospective Bidder's Proposed APA in a timely manner, including copies of any commitment letters.

14

7.    <u>Representations and Warranties</u>. A Qualified Bid must include the following representations and warranties:

    a.    a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the applicable Assets prior to submitting its bid; ~~and~~

    b.    a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Proposed APA ultimately accepted and executed by the Debtors~~.~~; and

    c.    ~~A~~a statement that it has not engaged in any collusion with respect to the submission of its bid.

8.    <u>Required Approvals</u>. A Qualified Bid must include a statement or evidence (i) that the Prospective Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("**HSR Filings**"), as amended, if applicable, and pay the fees associated with such filings; and (ii) identifying all required governmental and regulatory approvals and an explanation and/or evidence of the Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals required from and after closing an applicable Sale Transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals.  A Prospective Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain the Prospective Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.

9.    <u>Authorization</u>.  A Qualified Bid must include evidence of corporate authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing of the transactions contemplated by the Prospective Bidder's Proposed APA in accordance with the terms of the bid and these Global Bidding Procedures.

15

10. <u>Other Requirements</u>. A Qualified Bid shall

 a. expressly state that the Prospective Bidder agrees to serve as a back-up bidder (a "**Back-Up Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the applicable Assets;

 b. state that the bid is formal, binding, and unconditional (except as set forth in an applicable asset purchase agreement ultimately executed by the Debtors); is not subject to any further due diligence; and is irrevocable until the first business day following the close of a Sale Transaction for the applicable Assets;

 c. with the exception of any Stalking Horse Bid, expressly state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or sale process, unless otherwise granted by the Debtors, in consultation with the Consultation Parties, in accordance with these Global Bidding Procedures and approved by the Bankruptcy Court;

 d. expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets and/or participating in the Auction;

 e. not contain any ~~unsatisfied~~ financing <u>or diligence</u> contingencies of any kind;

 f. be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties;

 g. a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

 h. include contact information for the specific person(s) the Debtors should contact in the event they have questions about the Prospective Bidder's bid; and

16

i.      a covenant to comply with the terms of the Global Bidding
Procedures and the Global Bidding Procedures Order.

For the avoidance of doubt, a Stalking Horse Bid is a Qualified Bid that complies with or is exempted from the foregoing requirements.

Notwithstanding the foregoing or anything contained in these Global Bidding Procedures to the contrary, the Debtors reserve the right to, in consultation with the Consultation Parties, consider Landlord Bids (and any bid for less than all of the Assets in a Stalking Horse Bid, each such bid, a "Partial Bids," that include Landlord Bids).  A Landlord Bid may qualify as a Qualified Bid if such bid complies with the Qualified Bid requirements set forth in Paragraphs 1, 4(b), 6, 7, 9, and 10 of this Section VI.C.  For the avoidance of doubt, Landlord Bids shall not be required to include any Adequate Assurance Information with respect to the bidding landlord's ability to perform under its own Lease.

## D.    Qualified Bidders

A bid received for the Assets that is determined by the Debtors, afterin consultation with the Consultation Parties, to meet the requirements set forth in Section VI. C above will be considered a "Qualified Bid," and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

## VII.
## Bid Review Process

The Debtors will evaluate timely bids, at the direction of the Restructuring Committee and in regular and timely consultation with the Consultation Parties and, may, based upon their evaluation of the content of each bid, engage in negotiations with Prospective Bidders who submitted bids, as the Debtors deem appropriate, in their reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law.  In evaluating the bids, the Debtors may take into consideration the following non-binding factors:

1.      the amount of the purchase price and Credit Bid, Landlord Credit, and/or other non-cash consideration, as applicable, set forth in the bid;

2.      the Assets included in or excluded from the bid, including any Proposed Assumed Contracts;

3.      the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

17

4.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit;

5.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.      the impact on employees and employee claims against the Debtors;

7.      the impact on trade creditors and landlords; and

8.      any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors, after consultation with the Consultation Parties, will make a determination regarding which bids qualify as a Qualified Bids, and will notify Prospective Bidders whether they have been selected as Qualified Bidders by no later than **January 4, 2019** with respect to the Go Forward Stores and within five (5) days of the applicable Bid Deadline with respect to the all Oother Assets.

The Debtors reserve the right, in consultation with the Consultation Parties, to work with any Prospective Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid. The Debtors, at the direction of the Restructuring Committee and after consultation with the Consultation Parties, may accept a single bid or multiple Partial Bids for non-overlapping Assets such that, if taken together, would otherwise meet the standards for a single Qualified Bid as to any Assets or combinations of Assets that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction). Without the prior written consent of the Debtors, after consulting with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid.

At the direction of the Restructuring Committee, and after consultation with the Consultation Parties, the Debtors shall make a determination regarding the following:

(A)     the Assets and/or any combinations of the Assets to be auctioned by the Debtors, which may include any individual Assets or combinations of Assets, including any Stalking Horse Package (each group of Assets, an "**Auction Package**");

(B)     the highest or best Qualified Bid (or collection of Partial Bids comprising one Qualified Bid) for each Auction Package (each, a "**Baseline Bid**" and, such bidder or group of bidders, a "**Baseline Bidder**") to serve as the starting point at the Auction for such Auction Package; and

18

(C)    which bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid; provided that the Debtors may permit a Qualified Bidder to bid on more than one Auction Package.

As soon as practicable, but in no event later than the next calendar day, the Debtors will provide copies of each Baseline Bid to the Consultation Parties.  The Debtors will consult with the Consultation Parties regarding the designation of Baseline Bids and advise the Consultation Parties of the designated Baseline Bids within one (1) calendar day of the Debtors' determination of Baseline Bids.

## VIII.
## Auctions

With respect to any Stalking Horse Package, if no Qualified Bid other than the applicable Stalking Horse Bid is received by the Bid Deadline, the Debtors will not conduct an Auction for the Stalking Horse Package and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice indicating that the Auction for the Stalking Horse Package has been canceled and that the Stalking Horse Bidder is the Successful Bidder with respect to the Stalking Horse Package, and setting forth the date and time of the applicable Sale Hearing.

With respect to Assets not included in any Stalking Horse Package, if only one Qualified Bid is received in respect of such assets by the applicable Bid Deadline, the Debtors may, upon direction from the Restructuring Committee and ~~after~~in consult~~ing~~ation with the Consultation Parties, determine to consummate a Sale Transaction with the applicable Qualified Bidder (without conducting an Auction for the applicable Assets) and shall file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice identifying the Qualified Bidder and setting forth the terms of the Qualified Bid and the date and time of the applicable Sale Hearing.

**~~Except as provided in any Stalking Horse Agreement that has become binding on the Debtors pursuant to the Global Bidding Procedures,~~ ~~n~~Nothing herein shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset ~~with a Qualified Bidder~~.**

An Auction, if any, will be conducted at the offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 on **January 14, 2018, at 10:00 a.m. (Eastern Time)** with respect to the Go Forward Stores and not less than twenty-five (25) days following service of the applicable Sale Notice with respect to the ~~the~~all ~~Oo~~ther Assets at a location to be announced, or at such other time and location as designated by the Debtors, consistent with the terms of the DIP ABL Documents, ~~after~~in consult~~ing~~ation with the Consultation Parties and providing notice to the Sale Notice Parties. If held, the proceedings of an Auction will be transcribed and/or video recorded.

WEIL:\96790401\16\73217.0004

## A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the applicable Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Global Bidding Procedures.  Qualified Bidders participating in an Auction must appear in person at the Auction, or through a duly authorized representative.  Auctions will be conducted openly, and the Consultation Parties, their professional advisors, and all creditors will be permitted to attend; provided that the Debtors may, in their reasonable business judgment, and after consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder and other parties in interest at an Auction.

Each Qualified Bidder participating in an Auction will be required to confirm in writing and on the record at an Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

## B.    Auction Procedures

Auctions shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment, in consultation with the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law:

1.    <u>Baseline Bids</u>.  Bidding for each Auction Package shall commence at the amount of the Baseline Bid (or combination of Baseline Bids).

2.    <u>Minimum Overbid</u>.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the applicable Baseline Bid.  The Debtors shall, ~~after~~in consult~~ing~~ation with the Consultation Parties, announce at the outset of the Auction the minimum required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**").  The Debtors may, in their reasonable business judgment, and ~~after~~in consult~~ing~~ation with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

a.    <u>Stalking Horse Credit for Termination Payment</u>.  If a Qualified Bidder who is not a Stalking Horse Bidder bids at an Auction for a Stalking Horse Package, the applicable Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted toward its bid.  The cash and other considerations proposed by such Qualified Bidder must exceed the applicable Stalking Horse Bid by the purchase price contained in the Stalking Horse Bid, plus the Termination Payment, by at least the amount of the Minimum Overbid to advance to the next round of bidding.  To the extent that a Stalking Horse Bidder submits a competing bid for its Stalking Horse Package, the

20

Stalking Horse Bidder will be entitled to a "credit" in the amount of the applicable Termination Payment to be counted toward its bid and the computation of the Minimum Overbid for bidders to advance to the next round of bidding with respect to the Stalking Horse Package.

3.      Highest or Best Offer.  After the first round of bidding and between each subsequent round of bidding, the Debtors, after consulting with the Consultation Parties, shall announce the bid that they believe to be the highest or best offer (or combination of offers) for an Auction Package (each such bid, a "**Leading Bid**").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

Auctions may include open bidding in the presence of all other Qualified Bidders.  All Qualified Bidders shall have the right to submit additional bids and make modifications to their proposed agreements at an Auction to improve their bids, including by bidding on additional Assets not included in their original Qualified Bid.  The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in an Auction.

The Debtors shall have the right, after consultation with the Consultation Parties, to withdraw any Assets from an Auction that are not in a Stalking Horse Package and to determine, in their reasonable business judgment, in consultation with the Consultation Parties, which bid is the highest or best bid and reject, at any time, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Global Bidding Procedures, the DIP ABL Documents, any order of the Bankruptcy Court, or the best interests of the Debtors and their estates; except that, if a Stalking Horse Bid as reflected in a Stalking Horse Agreement is the only Qualified Bid received in respect of the applicable Stalking Horse Package, the foregoing shall be inoperative with respect to the Stalking Horse Bid.  No attempt by the Debtors to reject a bid pursuant to this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under any Stalking Horse Bidder under any Stalking Horse Agreement (although the same may be consensually modified during an Auction).

## C.      Auction Results

1.      Successful Bids.  Immediately prior to the conclusion of an Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Global Bidding Procedures, which Qualified Bids

21

constitute the highest or best Qualified Bids for each of the Auction Packages (each such bid, a "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identity of the bidders who submitted the Successful Bids (each such bidder, a "**Successful Bidder**") and the amount of the purchase prices and other material terms of the Successful Bids.

A Successful Bidder shall, within one (1) business day after the conclusion of the applicable Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

2.    <u>Back-Up Bids</u>. Immediately prior to the conclusion of an Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Global Bidding Procedures and the DIP ABL Documents, and except as provided in any Stalking Horse Agreement, which Qualified Bid is the next highest or next best Qualified Bid after the Successful Bid for an Auction Package (each such bid, a "**Back-Up Bid**"); and (ii) notify all Qualified Bidders at the Auction of the identities of the Back-Up Bidders and the amount of the purchase prices and other material terms of the Back-Up Bids.

The Back-Up Bids shall remain open and irrevocable until the earliest to occur of (i) the first business day after the consummation of a Sale Transaction with the Successful Bidder for the applicable Asset; (ii) forty-five (45) days after the conclusion of the applicable Auction; and (iii) the release of the applicable Back-Up Bid by the Debtors (such date, the "**Back-Up Bid Expiration Date**"). If the Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the applicable Back-Up Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid at the applicable Auction.

The Debtors will, within two (2) business days after the conclusion of an Auction, <u>or as soon as reasonably practicable thereafter,</u> file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) list all Proposed Assumed Contracts in the Successful Bids and Back-Up Bids; (iii) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); (iv) list any known Contracts and Leases that may later be designated by a Successful Bidder for assumption and assignment in connection with a Sale Transaction; ~~and~~ (v) <u>to the extent practicable, the governing agreement with the Successful Bidder or drafts thereof; and (vi)</u> set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

22

## IX.
## Disposition of Good Faith Deposits

### A.    Prospective Bidders

Within three (3) business days after the applicable Bid Deadline, the Escrow Agent shall return to each Prospective Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit, plus any interest accrued thereon. Upon the authorized return of such Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed revoked and no longer enforceable.

### B.    Qualified Bidders

1. Forfeiture of Good Faith Deposit. The Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the applicable Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted by these Global Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Global Bidding Procedures; or (ii) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate a Sale Transaction in accordance with these Global Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by these Escrow Agent of a written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

2. Return of Good Faith Deposit. With the exception of the Good Faith Deposits of Successful Bidders and Back-Up Bidders, the Escrow Agent shall return to any other Qualified Bidder any Good Faith Deposit, plus any interest accrued thereon, ten (10) business days after the conclusion of the Auction.

3. Back-Up Bidders. The Escrow Agent shall return a Back-Up Bidder's Good Faith Deposit, plus any interest accrued thereon, within ten (10) business days after the occurrence of the applicable Back-Up Bid Expiration Date.

4. Successful Bidders. The Good Faith Deposit of a Successful Bidder shall be applied against the cash portion of the purchase price of the Successful Bid upon the consummation of the applicable Sale Transaction.

### C.    Escrow Instructions

The Debtors and, as applicable, the Prospective Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent providing instructions for the return of any Good Faith Deposit, to the extent such return is required by these Global Bidding Procedures. If either party fails to execute such written notice, the Good

23

Faith Deposit may only be released by an order of the Bankruptcy Court.

## X.
## Sale Hearing

At one or more hearings before the Bankruptcy Court (each, a "**Sale Hearing**"), the Debtors will seek the entry of orders authorizing and approving, among other things, the following Sale Transactions (each, a "**Sale Order**"), to the extent applicable:

1. if no other Qualified Bid is received by the Debtors in respect of a Stalking Horse Package, a sale of such assets to the applicable Stalking Horse Bidder pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement; and

2. with respect to any Assets that are auctioned and/or sold by the Debtors pursuant to these Global Bidding Procedures, a sale of such assets to the applicable Successful Bidder(s).

The Debtors may, in their reasonable business judgment, ~~after~~in consult~~ing~~ation with the Consultation Parties and the Successful Bidders (including any Stalking Horse Bidder if named a Successful Bidder) and, consistent with the terms of the DIP ABL Documents, adjourn or reschedule any Sale Hearing with sufficient notice to the Sale Notice Parties, including by (i) an announcement of such adjournment at the applicable Sale Hearing or at the Auction, or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the applicable Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in any Stalking Horse Agreement.

Any objections to (A) a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order (a "**Sale Objection**"); (B) the Debtors' proposed Cure Costs set forth in a Notice of Assumption and Assignment (a "**Cure Objection**"); and (C) provision of adequate assurance of future performance with respect to any Proposed Assumed Contracts or Contracts or Leases that may later be designated for assumption and assignment by a Successful Bidder in connection with a Sale Transaction (an "**Adequate Assurance Objection**") must (i) be in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) state, with specificity, the legal and factual bases thereof; (iv) include any appropriate documentation in support thereof; and (v) be filed with the Bankruptcy Court and served on the Objection Recipients by the applicable Sale Objection Deadline.

All Sale Objections not otherwise resolved by the parties shall be heard at the applicable Sale Hearing. Any party who fails to file with the Bankruptcy Court and serve on the Objection Recipients a Sale Objection by the applicable Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of the Sale Transactions contemplated by any Stalking Horse Agreement, or asset purchase agreement with a Successful Bidder, including the transfer of the Assets to any Stalking

24

Horse Bidder, or Successful Bidder (including any Back-Up Bidder subsequently deemed a Successful Bidder), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing, in accordance with the terms of the Global Bidding Procedures Order, the Debtors may, in their discretion, and in consultation with the applicable Counterparty, adjourn Cure Objections to be considered at a later hearing and assign Proposed Assumed Contracts while such objections remain outstanding.

## XI.
## Consent to Jurisdiction and Authority as Condition to Bidding

All Prospective Bidders and any Stalking Horse Bidder shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Global Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Global Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Global Bidding Procedures, an Auction, or the construction or enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## XII.
## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify these Global Bidding Procedures; waive terms and conditions set forth herein with respect to all Prospective Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids ~~by such bidders~~ on any Assets (including extending deadlines as may be required for any Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with its previous HSR Filings), in each case, to the extent not materially inconsistent with these Global Bidding Procedures and the Global Bidding Procedures Order. ~~Except as provided in any Stalking Horse Agreement that has become binding on the Debtors pursuant to these Global Bidding Procedures, the~~; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders.  The Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset ~~with a Qualified Bidder~~.

All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the applicable ~~b~~Bid ~~d~~Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or

25

decision made by the Debtors as part of these Bid Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

## XIII.
## DIP ABL Orders

Notwithstanding anything to the contrary contained in this Order or in these Global Bidding Procedures or otherwise: (i) any right of the DIP ABL Agents to consent to the sale of any portion of their collateral as set forth in the DIP ABL Credit Agreement, including, without limitation, any Assets, on terms and conditions acceptable to the DIP ABL Agents, are hereby expressly reserved and not modified, waived or impaired in any way by this order or these Global Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be applied in accordance with the terms and conditions of the DIP ABL Documents, and the DIP ABL Orders and the Prepetition ABL Documents, as applicable; and (iii) nothing in this Order or in these Global Bidding Procedures shall amend, modify, or impair any provision of the DIP ABL Orders, or the rights of the Debtors, the DIP ABL Agents or the DIP ABL Lenders thereunder.

## XIV.
## Sale Is "As Is/Where Is"

The Assets sold pursuant to these Global Bidding Procedures will be conveyed at the Closing in their then-present condition, **"as is, with all faults, and without any warranty whatsoever, express or implied."**

26

**<u>Schedule 1</u>**

**The Assets**

ERROR! BOOKMARK NOT DEFINED. WEIL:\96790401\16\73217.0004
WEIL:\96790401\1\73217.0004

**<u>Exhibit 2</u>**

**Sale Notice**

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                      :
                                                           :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                  :
                                                           :        **Case No. 18-23538 (RDD)**
                                                           :
        **Debtors.**[1]                                    :        **(Jointly Administered)**
------------------------------------------------------------x

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARINGS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")[2] (a) authorizing and approving global bidding procedures

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Global Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

(the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts and Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c) granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ___).

### Description of the Assets

The Debtors are seeking to sell the following Assets: _____

A complete list of the Assets that are, or potentially will be, available for sale pursuant to the Global Bidding Procedures is attached hereto as **Schedule 1**.

### IMPORTANT DATES AND DEADLINES

- [*Non-Binding Indication of Interest Deadline*. Any person or entity interested in participating in the Auction with respect to the Go Forward Stores must submit a Non-Binding Indication of Interest (as defined in the Global Bidding Procedures) to the Bid Notice Parties (as identified and defined in the Global Bidding Procedures) on or **before** ~~Nov~~**Dec**ember ~~21~~**5**, 2018 at 4:00 p.m. **(Eastern Time)** (the "**Non-Binding Indication of Interest Deadline**").]

- *Bid Deadline.* Any person or entity interested in participating in the Auction must submit a Qualified Bid to the Bid Notice Parties on or **before [_____], 201[_] at 4:00 p.m. (Eastern Time)** (the "**Bid Deadline**").

- *Auction*. An Auction for the Assets has been scheduled for **[_____], 2019 at 10:00 a.m. (prevailing Eastern Time)** and, if necessary, will be conducted at [_____].

- *Sale Objection Deadlines*. Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and/or entry of a Sale Order must be (i) filed in accordance with the Global Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Recipients (as identified and defined in the Global Bidding Procedures) by no later than **[_____], 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- ***Sale Hearings.*** The Sale Hearing shall be held before the Bankruptcy Court before the Honorable Robert D. Drain on **[_____], 2019 at __:__ [_].m. (prevailing Eastern Time)**.

## Additional Information

Any party interested in submitting a bid for any of the Assets should contact the Debtors' investment banker, Lazard Frères & Co., LLC, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Brandon Aebersold (brandon.aebersold@lazard.com) and Levi Quaintance (levi.quaintance@lazard.com)).

Copies of the Motion, the Global Bidding Procedures Order, and the Global Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and after consultating*on* with the Consultation Parties, modify the Global Bidding Procedures; waive terms and conditions set forth therein; extend the deadlines set forth therein; announce at the Auctions modified or additional procedures for conducting the Auctions; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and auction process to promote further bids by such bidder, in each case, to the extent not materially inconsistent with the Global Bidding Procedures and the Global Bidding Procedures Order; provided that nothing herein shall grant the Debtors the rights to modify the terms of, or constitute a waiver by the DIP ABL Agents or DIP ABL Lenders of any rights under, the DIP ABL Documents or DIP ABL Orders. **Except as provided in an applicable Stalking Horse Agreement that has become binding on the Debtors pursuant to these Global Bidding Procedures, the Debtors shall not be obligated to consummate or pursue any transaction with respect to any Asset, with any bidder**.

**FAILURE TO ABIDE BY THE GLOBAL BIDDING PROCEDURES, THE GLOBAL BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE GLOBAL BIDDING PROCEDURES ORDER BY THE APPLICABLE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, SALE ORDERS, THE PROPOSED SALE TRANSACTIONS, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2018

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

**Exhibit 3**

**Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re                                    :
                                         :      Chapter 11
SEARS HOLDINGS CORPORATION, et al.,      :
                                         :      Case No. 18-23538 (RDD)
                                         :
             Debtors.¹                   :      (Jointly Administered)
------------------------------------------------------------x
```

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [_____], 2018, Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Global Bidding Procedures Order**")² (a) authorizing and approving global bidding procedures

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

~~The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.~~

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the

8

(the "**Global Bidding Procedures**"), substantially in the form attached to the Global Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition of substantially all of the Debtors' assets (the "**Assets**"); (b) authorizing the designation of stalking horse bidders, (c) scheduling auctions (the "**Auction**") of the Assets and hearings (the "**Sale Hearing**") to consider approval of proposed Sale Transactions; (d) authorizing and approving the form and manner of notice of the sale of the Assets, Auctions, and Sale Hearings; (e) authorizing and approving the form and manner of notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contracts and Leases**") regarding the Debtors' potential assumption and assignment of their Contracts and Leases and of the Debtors' calculation of Cure Costs with respect thereto; (f) authorizing and approving Assumption and Assignment Procedures; and (g) granting related relief; and (ii) entry of orders (each, a "**Sale Order**") authorizing and approving (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances; (b) the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**"); and (c)- granting related relief.

On _____, 2018, the Bankruptcy Court entered the Global Bidding Procedures Order (ECF No. ____).

**You are receiving this Notice because you may be a Counterparty to a Contract or Lease of the Debtors that either is proposed to be assumed and assigned to a Stalking Horse Bidder or potentially could be assumed and assigned to one or more bidders in connection with a sale of the Debtors' Assets.**

## Stalking Horse Bids

Pursuant to the terms of the Global Bidding Procedures Order, the Debtors may designate Stalking Horse Bidders (as defined in the Global Bidding Procedures) for the Assets [until [_____], 2018.]  Notice of any such designation, including the execution of any asset purchase agreement with a Stalking Horse Bidder and the provision of any bid protections in connection therewith, shall be provided in accordance with the terms of the Global Bidding Procedures Order.

## Cure Costs

In accordance with the Assumption and Assignment Procedures and the Global Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction with a Successful Bidder (as defined in the Global Bidding Procedures) at the Auction (whether such bidder be the applicable Stalking Horse Bidder or other bidder prevailing at the Auction), seek to assume and assign to the Successful Bidder (or its designated assignee, if applicable) certain Contracts and Leases of the Debtors.

---

Bidding Procedures Ores or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

Each of the Contracts and Leases that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.

The inclusion of any Contract or Lease on Exhibit A does not constitute an admission that a particular Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract or Lease ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved.
.

## Objections

### A. Cure Objections

Any objection to the proposed assumption, assignment, or potential designation of a Contract or Lease identified on Exhibit A, the subject of which objection is the Debtors' proposed Cure Costs must be (i) filed in accordance with the Global Bidding Procedures Order; (ii) filed with the Bankruptcy Court; and (iii) served on the Objection Recipients (as identified in the Global Bidding Procedures) by no later than ~~eight (8)~~[_____] **calendar days after receiving service of the Debtors' proposed Cure Costs**.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE CONTRACT OR LEASE. THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE CONTRACT OR LEASE UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT OR LEASE AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B. Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of a Contract or Lease identified on Exhibit A to a Successful Bidder (or its known proposed assignee, if applicable) must be filed in accordance with the preceding paragraph by no later than [_____], **at 4:00 p.m. (Eastern Time).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION RECIPIENTS A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED**

**FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE CONTRACT OR LEASE. THE SUCCESSFUL BIDDER (OR ITS DESIGNATED ASSIGNEE, IF APPLICABLE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE CONTRACT OR LEASE IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR LEASE, OR ANY OTHER DOCUMENT.**

### Sale Hearings

The Sale Hearing shall be held before the Bankruptcy Court before the Honorable Robert D. Drain on [_____], at __:__ [a.m./p.m.] (prevailing Eastern Time).

### Additional Information

Copies of the Motion, the Global Bidding Procedures Order, and the Global Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/Sears.

Dated: [      ], 2018

                                               _____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*