John C. Allerding, Esq.
(*Pro hac vice* admission pending)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
Email: John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** ***et al.*** | **Case No. 18-23538-RDD** |
| **Debtors.** | **(Jointly Administered)** |

**OBJECTION OF LUXOTTICA RETAIL NORTH AMERICA INC. TO DEBTORS' MOTION FOR AUTHORITY TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, (C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES, AND (D) SCHEDULE SECOND INTERIM HEARING AND FINAL HEARING; AND RESERVATION OF RIGHTS**

Luxottica Retail North America Inc. ("**Luxottica**") hereby files its objection and reservation of rights (the "**Objection**") to the *Debtors' Motion for Authority to (a) Obtain Postpetition Financing, (b) Use Cash Collateral, (c) Grant Certain Protections to Prepetition Secured Parties, and (d) Schedule Second Interim Hearing and Final Hearing*, dated October 15, 2018 (Dkt. No. 7, the "**Motion**"). In support of this Objection, Luxottica respectfully represents as follows:

## INTRODUCTION

1. Debtor Sears, Roebuck and Co. ("**Sears**") and Luxottica are parties to a certain License Agreement (as defined herein) that requires Sears to hold certain cash, checks and credit

card sales receivables remitted to Sears in trust for the benefit of Luxottica. Specifically, pursuant to the express terms of the License Agreement:

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks, and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears].

License Agreement, § 9.3 ("**Section 9.3**").

2. Luxottica objects to any attempt by the Debtors'[1] to assert any interest in the Trust Funds in excess of the rights provided for under Section 9.3 and the other relevant sections of the License Agreement, including, without limitation, full ownership interest, an equitable interest, or other interest in excess of that of a trustee with respect to the Trust Funds.

3. Luxottica further objects to any attempt by the Debtors to assert that any Prepetition Lender (as defined herein) has a security interest, lien, or any other interest in the Trust Funds.

4. Luxottica further objects to any attempt by the Debtors to grant any Post-Petition Lender (as defined herein) a security interest, lien, claim, or any other interest in the Trust Funds.

5. Luxottica further objects to any request by the Debtors to use any of the Trust Funds for any purpose not permitted by the License Agreement.

6. Luxottica further objects to any attempt by the Debtors to suggest that such Trust Funds constitute Cash Collateral, and, to the extent that the Trust Funds are found to constitute Cash Collateral, objects to the Debtors' use of such Cash Collateral.

## RELEVANT BACKGROUND

7. On or around May 31, 2015, Sears and Luxottica entered into a license agreement (as amended from time to time, the "**License Agreement**") pursuant to which Sears granted

[1] Capitalized terms not otherwise defined in this Objection shall have the meanings ascribed to them in the Motion.

Luxottica a license to operate an optical goods and services business (Sears Optical) within certain Sears' store locations (collectively, the "**On-Premises Locations**"), certain free-standing locations (the "**Off-Premises Locations**"), and via the internet (www.searsoptical.com).[2] License Agreement, § 1.1.

8. Pursuant to the terms of the License Agreement:

a. Luxottica was required to have all checks accepted at the On-Premises Locations and Off-Site Premises Locations made payable to Sears or Sears Optical. License Agreement, § 9.1.

b. Luxottica was required to accept certain credit cards bearing Sears or a Sears affiliate's name for sales of goods and services at the On-Premises Locations, the Off-Premises Locations, and via the internet. Luxottica was further required to submit the documents relating to such Sears credit card receivables to Sears for settlement (i.e., Sears settled such credit card receivables directly with the issuing bank). License Agreement, § 9.2(a). Luxottica authorized Sears to collect such credit card receivables on Luxottica's behalf. License Agreement, § 9.2(c).

c. Luxottica was required to accept third-party credit cards at the On-Premises Locations and to submit the documents relating to such third-party credit card receivables to Sears for settlement with the respective credit card issuer (i.e., Sears settled such credit card receivables directly with the issuing bank). License Agreement, § 9.2(b).

d. Luxottica was required to accept third-party credit cards at the Off-Premises Locations and for sales of goods and services on the internet. Luxottica was required to submit such third-party credit card receivables for settlement with Luxottica's third-party credit card processor. License Agreement, § 9.2(b).

e. Luxottica was required to process all transactions, including cash, check, and credit card transactions, made at the On-Premises Locations through the Sears Point of Sale System (the "**Sears POS System**").[3] License Agreement, § 9.2(c).

---

[2] The License Agreement includes a confidentiality provision that permits disclosure of its terms only in limited circumstances. While those circumstances exist here, permitted disclosure is limited to that which is necessary under those circumstances. As a result, Luxottica has summarized only the necessary terms of the License Agreement and has not attached the License Agreement to this Objection. Luxottica will work with Sears to determine the most appropriate way to provide the Court with a copy of the License Agreement for its review in connection with this Objection.

[3] Portions of transactions paid by a third-party issuer were excepted from this requirement.

  f. At the close of each business day, Luxottica was required to deliver the total of call cash, checks, and credit sales documents for transactions completed that day at the On-Premises Locations to Sears. License Agreement, § 9.3.

  g. On a weekly basis, Sears paid Luxottica the cash delivered by Luxottica to Sears under the License Agreement, as well as the cash collected by Sears on Luxottica's behalf with respect to the checks and credit card receivables (all credit card receivables for On-Premises Locations and Sears credit card receivables for Off-Site Location and internet transactions), net of a fee (the "**Company Fee**") that Sears was owed pursuant to the License Agreement. License Agreement, § 9.3.[4]

  h. Specifically, with respect to the cash, checks, and credit card receivables generated by Luxottica and delivered to Sears pursuant to the License Agreement (the "**Trust Funds**"), the License Agreement provided that

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

License Agreement, § 9.3.

  i. Moreover, Sears collected payments and settlements with respect to checks and credit cards on behalf of Luxottica – not as its own accounts receivable. License Agreement, §§ 9.2(c); 9.3.

  j. Luxottica was required to make monthly payments to Sears for in-store third-party insurance transactions (not run through the Sears POS System), transactions processed by Luxottica's own POS systems (i.e., Off-Site Location and internet transactions not involving a Sears credit card), and certain other non-transaction related payments required under the terms of the License Agreement. License Agreement, § 9.3.

  k. Luxottica retained title to all of the inventory at its various locations, and Sears agreed that such inventory was not subject to any blanked liens. License Agreement, § 5.4.

9. On October 15, 2018, the Debtors filed for protection under chapter 11 of title 11 of the United States Code. On that same date, the Debtors filed the Motion.

---

[4] At the end of the fiscal month, Sears also included payments necessary to reconcile transactions from prior months.

10. The Motion indicates that certain of the Debtors' lenders under the Prepetition ABL Facilities (collectively, the "**Prepetition First Lien Lenders**") have a properly perfected first lien on, and security interest in, among other things, inventory, credit card receivables, cash, Cash Collateral, and pharmacy assets (collectively, the **Prepetition ABL Collateral**"). Motion, ¶ 16.

11. The Motion further indicates that certain of the Debtors' lenders under the Prepetition ABL Facilities (collectively with the Prepetition First Lien Lenders, the "**Prepetition Lenders**" and each of the Prepetition Lenders being a "**Prepetition Lender**") have a subordinate lien on a portion of the Prepetition ABL Collateral (excluding cash and pharmacy assets). Motion, ¶ 16.

12. The Motion requests this Court's authorization to incur certain senior secured post-petition indebtedness (collectively, the "**Senior Secured ABL Facility**") pursuant to the proposed financial transactions between the Debtors and certain post-petition lenders (collectively, the "**Senior Secured Post-Petition Lenders**") as set forth in the Motion. Motion, ¶ 14.

13. To secure the Senior Secured ABL Facility, the Debtors request authority to grant the Senior Secured Post-Petition Lenders (i) a senior secured priming lien upon, the Pre-Petition ABL Collateral – including the inventory, credit card receivables, cash, and Cash Collateral; (ii) a senior lien on unencumbered collateral (including Debtors' post-petition deposit accounts, cash and cash equivalents, to the extent that such accounts and cash do not constitute Pre-Petition ABL Collateral); and a junior lien on previously encumbered collateral (excluding the Pre-Petition ABL Collateral) (collectively the "**Senior Secured Post-Petition ABL Collateral**"). Motion, ¶¶ 3, 14. Moreover, the Motion requests authority to grant the Senior Secured Post-

Petition Lenders a "superpriority claim" pursuant to 11 U.S.C. § 364(c)(1), such claim having priority over all other administrative expense claims, all adequate protection claims, and all other claims against Debtors now existing or thereafter arising (the "**Senior Superpriority Claim**").

14. The Motion further requests authorization to incur certain junior secured post-petition indebtedness (the "**Junior Secured ABL Facility**," and collectively with the Senior Secured ABL Facility, the "**DIP Financing**") pursuant to the proposed financial transactions between the Debtors and certain post-petition lenders (collectively, the "**Junior Secured Post-Petition Lenders**" and collectively with the Senior Secured Post-Petition Lenders, the "**DIP Lenders**," each DIP Lender being referred to herein as a "**DIP Lender**") set forth in the Motion. Motion, ¶ 15.

15. To secure the Junior Secured ABL Facility, the Debtors request authority to grant the Junior Secured Post-Petition Lenders (i) a junior lien upon, encumbered collateral (including the Senior Secured Post-Petition Collateral, which itself included inventory, credit card receivables, cash, and Cash Collateral); (ii) a *pari passu* senior lien on certain previously unencumbered assets; and a junior lien on other previously unencumbered assets (collectively with the Senior Secured Post-Petition ABL Collateral, the "**DIP Collateral**"). Motion, ¶¶ 6, 15. Moreover, the Motion requests authority to grant the Junior Secured Post-Petition Lenders a "superpriority claim" pursuant to 11 U.S.C. § 364(c)(1), such claim having priority over all other administrative expense claims (other than the Senior Superpriority Claim), all adequate protection claims, and all other claims against Debtors now existing or thereafter arising (collectively with the Senior Superpriority Claim, the "**Superpriority Claims**").

**OBJECTION**

16. Luxottica objects to any assertion that the Debtors' have any interest in the Trust Funds in excess of the rights provided for under Section 9.3 and the other relevant sections of the License Agreement.

17. As set forth in Section 9.3:

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

18. This provision of the License Agreement is clear and unambiguous on its face: Sears holds all cash, checks and credit sales documents delivered to it in accordance with the License Agreement in trust for the benefit of Luxottica. Title to such cash, checks and credit sales documents never passes to Sears.

19. Moreover, Sears collection with respect to the checks and credit card receivables delivered to it pursuant to the terms of the License Agreement was on behalf of Luxottica – not on Sears own behalf. License Agreement, §§ 9.2(c); 9.3. Thus, any accounts receivable generated by Luxottica's sale of merchandise or services are not Debtors' assets, but rather are accounts of Luxottica collected on Luxottica's behalf by Sears.

20. Property that a bankrupt debtor holds in trust for another is not estate property. *E.g., Bunch v. Hopkins Savs. Bank (In re Bunch)*, 249 B.R. 667, 671 (Bankr. D. Md. 2004) ("The filing of a bankruptcy petition by a debtor as trustee or other fiduciary does not bring the assets of the trust or other fiduciary estate within the jurisdiction of the bankruptcy court."). *See also* 11 U.S.C. § 541(b)(1) ("Property of the Estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor.").

21.     Luxottica further objects to any attempt by the Debtors to assert that any Prepetition Lender (as defined herein) has a security interest, lien, or any other interest in the Trust Funds.

22.     Pursuant to Section 9.3, title the Trust Funds never passed to Sears. Upon information and belief, the loan documents related to the Prepetition ABL Facilities did not grant any of the Prepetition Lenders a lien on assets for which the Debtors did not hold title. Even if the loan documents related to the Prepetition ABL Facilities did purport to grant an interest in the Trust Funds, the Debtors could only grant a lien on their interest on such Trust Funds – such interest being only that of a trustee that holds such Trust Funds for the benefit of Luxottica, and being subject to the requirement to deliver such funds (net of the Company Fee) to Luxottica.

23.     Luxottica further objects to any attempt by the Debtors to grant any Post-Petition Lender (as defined herein) a security interest, lien, claim, or any other interest in the Trust Funds.

24.     As noted above, the Trust Funds are not estate property. As a result, the Debtors have no authority to grant a lien on the Trust Funds to secure the DIP Financing. And even if the Trust Funds did become estate property, the Debtors cannot grant an interest in the Trust Funds in a manner that exceeds their limited interest (i.e. as trustee of the trust funds that holds such funds for the benefit of Luxottica) in such Trust Funds. *See, e.g., Mendelson v. Gonzalez (In re Gonzalez)*, 559 B.R. 26 (Bankr. E.D.N.Y. 2016) ("Despite the broad scope of 11 U.S.C.S. § 541(a), it is not intended to expand a debtor's rights against others more than they exist at the commencement of the debtor's bankruptcy case. A trustee takes no greater rights than a debtor had on the date of filing the petition.").

25. Because the Bankruptcy Code does not expand the rights of Sears under the License Agreement, Luxottica further objects to any request by the Debtors to use any of the Trust Funds for any purpose not permitted by the License Agreement. *See id.*

26. Luxottica further objects to any attempt by the Debtors to suggest that the Trust Funds constitute Cash Collateral.

27. As noted above, the Trust Funds are not subject to the liens of the Prepetition Lenders. Nor do the Debtors have the authority to grant liens on the Trust Funds to secure the DIP Financing. As a result, the Trust Funds do not serve as collateral for any indebtedness, whether post-petition or pre-petition, and therefore do not constitute Cash Collateral. To the extent that the Trust Funds do constitute Cash Collateral, Luxottica objects to the Debtors use of such Cash Collateral pursuant to 11 U.S.C. § 363(e) on the grounds that the Motion does not provide Luxottica with adequate protection of its interest in the Trust Funds.

## CONCLUSION

28. Based on the foregoing, the Motion should be denied with respect to any attempt thereby to assert a lien, grant a lien, use the Trust Funds, or otherwise impair Luxottica's interest in the Trust Funds.

Respectfully submitted,

**THOMPSON HINE LLP**

Dated: November 15, 2018
Cleveland, Ohio

/s/ John C. Allerding

John C. Allerding (OH Bar No. 0074744)
(*Pro Hac Vice Application Pending*)
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*

John C. Allerding, Esq.
(*Pro hac vice* admission pending)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
Email: John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION, *et al.*** | **Case No. 18-23538-RDD** |
| **Debtors.** | **(Jointly Administered)** |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 15th day of November, 2018, a true and exact copy of the *Objection of Luxottica Retail North America Inc. to Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing; and Reservation of Rights* has been served by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and via electronic mail to the parties listed below:

Proposed Counsel to Official Committee of Unsecured Creditors
Ira S. Dizengoff, Esq.
Philip C. Dublin, Esq.
Abid Qureshi, Esq.
Sara L. Brauner, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
idizengoff@akingump.com
pdublin@akingump.com
aqureshi@akingump.com
sbrauner@akingump.com

Counsel to Debtors
Ray C. Schrock, P.C.
Jacqueline Marcus, Esq.
Garrett A. Fail, Esq.
Sunny Singh, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
ray.schrock@weil.com
Jacqueline.marcus@weil.com
garrett.fail@weil.com
sunny.singh@weil.com

United States Trustee, Southern District of New York
Paul Schwartzberg
Richard Morrissey
201 Varick St., Ste. 1006
New York, NY 10014
richard.morrissey@usdoj.gov
paul.schwartzberg@usdoj.gov

Counsel to Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent
Paul Leake, Esq.
Shana Elberg, Esq.
George R. Howard, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Drive
Chicago, IL 60606
Paul.Leake@skadden.com
Shana.Elberg@skadden.com
George.Howard@skadden.com

And Via First Class Mail to:

United States Bankruptcy Court for the Southern District of New York
Sears Chambers Copy
US Bankruptcy Court SDNY
300 Quarropas Street, Room 248
White Plains, NY 10601
Chambers of the Honorable Robert D. Drain

Sears Holdings Corporation Headquarters
3333 Beverly Road
Hoffman Estates, IL 60179

*/s/ John C. Allerding*
John C. Allerding