Hearing Date: November 27, 2018 at 1:30 p.m. (ET)

Patrick Collins
Veronique A. Urban
FARRELL FRITZ, P.C.
400 RXR Plaza
Uniondale, New York 11556
Tel:    (516) 227-0700
Fax:    (516) 227-0777

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
SEARS HOLDINGS CORPORATION, *et al.*,  :    Case No. 18-23538 (RDD)
                                                    :    (Jointly Administered)
                              Debtors.              :
-----------------------------------------------------------------x

### OBJECTION TO THE DEBTORS' MOTION TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, (C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES, AND (D) SCHEDULE SECOND INTERIM HEARING AND FINAL HEARING

Midwood Management Corp., as agent for Expressway Plaza I, LLC and Farmingville Associates Phase 1, LLC as tenants in common ("Landlord"), hereby submits this objection (the "Objection") to the *Debtors' Motion To (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* [ECF Nos. 7, 735] (the "Motion"). In support of its Objection, Landlord respectfully states as follows:

### BACKGROUND

1. Landlord, as assignee of Farmingville Associates, a New York general partnership, and debtor Kmart Corporation ("Kmart") are parties to a lease (as amended and extended, the "Lease"), dated December 20, 1991, under which Kmart leased from Landlord premises located at 2280 North Ocean Avenue, Farmingville, New York (the "Premises"). The Premises is located within a shopping center known as Expressway Plaza.

*Termination of the Lease*

2.  On September 12, 2018, Landlord, pursuant to its rights under Article 25 of the Lease, sent to Kmart a "Notice of Default and Fifteen (15) Day Notice to Cure" (the "Notice of Default"). The Notice of Default informed Kmart that it was in default under the Lease for its failure to pay certain additional rent relating to emergency work undertaken and invoiced by the Debtors. The Notice of Default further informed Kmart that, unless Kmart cured the default within fifteen (15) days from service of the notice, the Landlord would serve Kmart with a notice of election to terminate the Lease. Landlord received no response from Kmart with respect to the Notice of Default and the default was not cured.

3.  The Landlord then sent to Kmart a "Ten (10) Day Notice of Lease Termination" (the "Lease Termination Notice") on October 11, 2018. The Lease Termination Notice informed Kmart that the Lease would terminate ten (10) days following the service of the Lease Termination Notice on Kmart. Landlord received no response from Kmart with respect to the Lease Termination Notice.

4.  The Lease subsequently expired by its terms on October 23, 2018. Pursuant to Section 362(b)(10) of the Bankruptcy Code, the commencement of the Debtors' bankruptcy cases on October 15, 2018 did not stay the expiration of the term of the Lease.

5.  The Debtors are aware of the Landlord's position that the Lease has terminated but, despite such termination, the Debtors remain in possession of the premises without the Landlord's consent. Kmart remitted rent to the Landlord for the month of November 2018, which the Landlord has not accepted.

*The ABL DIP Facility*

6.  On October 15, 2018, the Debtors filed the DIP Motion seeking entry of

2

interim and final orders authorizing the Debtors to obtain post-petition secured financing (the "DIP Financing'. By the DIP Motion, the Debtors request that DIP Financing be secured by, among other things, DIP ABL Liens on the ABL Collateral, which excludes the Debtors' interests in leaseholds and real properties.

7. Following the hearing on the DIP Motion, the Court entered an order (the "Interim Order" granting the DIP Motion on an interim basis [ECF No. 101]. The Interim Order provides that "the DIP ABL Liens extend only to the proceeds of leased real property unless such liens are expressly permitted pursuant to the underlying lease documents." However, the Interim Order also notes that "the Final Order may provide for the grant of liens on real property leases."

*The Junior DIP Facility*

8. On October 15, 2018, the Debtors filed the Motion. The Motion provides in relevant part, that the Debtors intended to enter into a term sheet for a $300 million junior debtor in possession term loan with ESL Investment, Inc. and certain related entities.

9. On November 14, 2018, the Debtors filed the *Notice of Filing of Term Sheet Regarding Junior Secured Debtor-in-Possession Multiple Draw Term Loan Facility* [ECF No. 735] (the "Term Sheet"). The Term Sheet indicates that the Debtors anticipate entering into a $350 million junior debtor in possession multiple draw term loan (the "Junior DIP Financing") with GACP Financing Co., LLC as DIP Agent.

10. The Junior DIP Financing is to be secured, among other collateral, by an automatically perfected security interest and lien on all unencumbered assets, and all proceeds thereof that are not subject to valid and perfected liens, including the Debtors' assets as described on Schedule 3 to the Term Sheet.

11. Schedule 3 to the Term Sheet includes in the list of unencumbered assets "any and

3

all estates or interests in real property (including any leases) identified as unencumbered in Exhibit 1 to this Schedule 3" as well as "any and all rent, income, revenues or proceeds paid by or received from tenants or subtenants in respect of real property (including any leases) identified as unencumbered in Exhibit 1 to this Schedule 3."

12. Exhibit 1 to Schedule 3 lists a number of owned and ground leased unencumbered real property that will serve as collateral for the Junior Dip Financing. Included on Schedule 3 is the Lease.

**OBJECTION**

13. Section 541(b)(2) of the Bankruptcy Code excludes from property of the estate "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease *during the case*" (emphasis added).

14. Notwithstanding that the Debtors filed for bankruptcy protection on October 15, 2018, the Lease expired on October 23, 2018. Landlord therefore objects to the Motion and the Junior DIP Financing to the extent that the Debtors seek to assert a lien on the Lease or on the proceeds thereof, as the Lease is not property of the Debtors' estates.  The Debtors may not grant a lien on a lease that has expired.

15. Even if the Court were to find that the Lease did not terminate on October 23, 2018, Landlord objects to the Motion and ABL Financing and the Junior DIP Financing on the grounds that the provisions of the Lease do not allow for the Debtor to grant a lien on the Lease

under the circumstances presented by the ABL Facility and DIP Facility. The Lease permits leasehold mortgages only under specified conditions that are not present here.

16.     Provisions that restrict a debtor's ability to pledge a lease as collateral are not ipso-facto clauses rendered unenforceable by the Bankruptcy Code, nor does section 364 of the Bankruptcy Code provide authority to render lease provisions unenforceable that are enforceable under state law. *See, e.g., Stern v. Marshall*, 131 S. Ct. 2594, 2616 (2011) ("Property interests are created and defined by state law."); *Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 24-25 (2000) ("Bankruptcy Courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of the creditors' entitlements, but are limited to what the Bankruptcy Code itself provides.").

17.     The Debtors' proposed treatment of the Lease, where there is no provision expressly permitting the granting of direct liens on the Debtors' leasehold interests under these circumstances, represents an impermissible attempt to unilaterally modify the terms of such Leases and should not be approved by this Court. *See City of Covington v, Covington Landing L.P.,* 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Air Vectors Assocs.*, 53 B.R. 668, 687 (Bankr. S.D.N.Y. 1985) (The bankruptcy court does not have the authority to rewrite the terms of a lease.).

18. Moreover, the Bankruptcy Code does not nullify the lease terms that prevent the granting of a lien. Section 365 of the Bankruptcy Code mandates that the Debtors assume or reject the Lease, if it has not already expired. Accordingly, where the Debtors have not yet assumed or rejected the Lease, the Debtors must continue to comply with negative lien covenants and refrain from granting a leasehold mortgage on the Lease.

19. Further, although section 365(f)(1) of the Bankruptcy Code authorizes a bankruptcy court to invalidate certain lease provisions that prohibit, restrict or condition an assignment of a lease, that section only applies when a debtor is attempting to assume or assign a lease pursuant to the terms of section 365 of the Bankruptcy Code. Here, the Debtors are not seeking to assume or assign the Lease under section 365, and section 364 which governs a request for post-petition financing, contains no similar provision.

20. To the extent the Lease is found not to have terminated on October 23, 2018, the Lease represents a valid and enforceable contract under applicable state law and its terms must be enforced by this Court. *See Butner,* 440 U.S. at 55. As a result, this Court should deny any attempt by the Debtors to grant a lien on the Lease in direct contravention of the Lease and the Bankruptcy Code where the Lease does not expressly permit the granting of such liens.

21. Although the Landlord objects to the granting of DIP liens or security interests that are prohibited by the Leases, the Landlord does not object to the granting of DIP liens on the proceeds of the sale or disposition of the Lease, in the event it is determined the Lease has not already expired.

**JOINDER AND RESERVATION OF RIGHTS**

22. Landlord reserves the right to supplement and amend this Objection and introduce evidence at the hearing on final approval of the Motion and this Objection. Further, Landlord

reserves the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the Motion.

23. To the extent consistent with the objections expressed herein, Landlord also joins in the objections of other shopping center lessors to the Debtors' proposed relief.

WHEREFORE, Landlord respectfully requests that the Court (i) deny the Motion to the extent the Debtors seek to use the Lease as collateral for the Junior DIP Financing; and (ii) grant Landlord such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
November 15, 2018

FARRELL FRITZ, P.C.

By: /s/ *Patrick Collins*
Patrick Collins
Veronique A. Urban
400 RXR Plaza
Uniondale, New York 11556
Tel: (516) 227-0700
Fax: (516) 227-0777

*Attorneys for Midwood Management Corp., as agent for Expressway Plaza I, LLC and Farmingville Associates Phase 1, LLC as tenants in common*

FF\7905832.2