**Hearing Date and Time: November 15, 2018 at 10:00 am (Eastern)**
**Objection Date and Time: November 8, 2018 at 4:00 pm (Eastern)[1]**

COHNE KINGHORN, P.C.
George Hofmann
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

*Attorneys for Propel Trampolines LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>SEARS HOLDING CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD) |

**LIMITED OBJECTION OF PROPEL TRAMPOLINES LLC**
**TO DEBTORS' MOTION FOR AUTHORITY TO (A) OBTAIN**
**POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT**
**CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES**

Propel Trampolines LLC ("**Propel**") hereby files its limited objection (the "**Objection**") to the *Debtors' Motion For Authority To (A) Obtain Postpetition Financing, (B) Use Cash Collateral, [and](C) Grant Certain Protections To Prepetition Secured Parties dated October 15, 2018 (Dkt. No. 7)* (the "**Motion**") filed by the above-captioned debtors (the "**Debtors**"). In support of this Objection, Propel respectfully represents as follows:

---

[1] Propel's time to respond to the Debtors' Motion was extended by the Debtors until 11/16/18 at 4:00 p.m.
{00412507.DOCX /}

1

**INTRODUCTION**

1.      In the Motion, the Debtors seek authority to, among other things, enter into a $1.83 billion senior secured superpriority priming debtor in possession asset-based credit facility (the "DIP ABL Facility"), with $300 million of new incremental capacity consisting of (i) a revolving asset-based credit facility with aggregate commitments of approximately $189 million (the "DIP ABL Revolver") and (ii) an asset-based term loan in an aggregate principal amount of approximately $111 million (the "DIP ABL Term Loan"). The Debtors are seeking $1.83 billion in debtor in possession financing notwithstanding that the Debtors have made absolutely no showing that this case can support nearly $2 billion of DIP financing on day one. Indeed, holders of Reclamation Claims, defined below, and 503(b)(9) claims, defined below, have absolutely no comfort that there will be value available to pay them.

2.      In the face of this near certain administrative insolvency, the Debtors are seeking Court approval of a lien package that improperly primes Reclamation Claimholders, defined below. As salient case law provides, where, as here, a Debtor satisfies its pre-petition debt with the proceeds of a DIP loan, the interests of Reclamation Creditors in Reclaimed Goods, and their proceeds, are afforded a greater priority than the interests of DIP lenders in that same property.

3.      The proposed final order approving the DIP ABL Facility specifically fails to provide for any protections whatsoever for such Reclamation Creditors. While Propel does not object to the provision of post-petition financing in principle, it submits that any order granting the Motion should expressly protect the rights of Reclamation Creditors. The Reclamation Creditors have proposed language to the Debtors to resolve this objection, but to date, the parties

{00412507.DOCX /}

2

have not yet reached agreement on the language to be inserted into a proposed order approving the Motion.

## BACKGROUND

4.      On October 15, 2018 (the "Petition Date"), the Debtors filed voluntary petitions seeking chapter 11 bankruptcy protection. The Debtors filed the Motion on the Petition Date. On October 16, 2018, the Court entered an Interim Order (the "Interim Order") approving the Motion pending a final hearing (Dkt. No. 101).

5.      On November 1, 2018, Propel filed a Notice of Reclamation Demand (Dkt. No. 407) (the "Reclamation Demand") asserting rights of reclamation pursuant to section 2- 702(2) of the Uniform Commercial Code (the "UCC") and section 546(c) of the Bankruptcy Code (a "Reclamation Claim"). As set forth in more detail in the Reclamation Demand, Propel provided approximately $424,538.80 in goods (the "Reclamation Goods") to the Debtors during the forty-five (45) days prior to the Petition Date. As a result of the Reclamation Demand, Propel has a property interest in the Reclamation Goods, and the proceeds thereof (the "Reclamation Proceeds").

6.      Since the filing of the Reclamation Demand, approximately 61 similarly situated creditors (each a "Reclamation Creditor") have filed similar reclamation demands. Thus far, stakeholders have asserted approximately $80 million in reclamation claims.

## LIMITED OBJECTION

7.      The Bankruptcy Code permits a debtor to obtain post-petition financing only where the debtor cannot obtain "unsecured credit allowable under section 503(b)(1)" of the

{00412507.DOCX /}

3

Bankruptcy Code. *See* 11 U.S.C. § 364(c). Approval of a proposed DIP Facility is within the Court's discretion; however, the Court must balance the interests of all stakeholders to these cases, including those of administrative and general unsecured creditors.

8.  In order to strike that balance, the debtor must demonstrate that the proposed financing will permit the debtor to operate in a manner that benefits all stakeholders. *See In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37–40 (Bankr. S.D.N.Y. 1990). The Debtors cannot, solely for the sake of obtaining postpetition financing quickly and easily, abandon their duties to their stakeholders. *Ames Department Stores*, 115 B.R. at 38. Likewise, section 364 of the Bankruptcy Code is not a "secured lenders' act" allowing a single creditor to upset the level playing field contemplated by the Bankruptcy Code. *See Ames Dep't Stores*, 115 B.R. at 37; *see also Tenney Vill. Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989).

9.  The DIP ABL Facility impermissibly grants priming liens on the senior interests of Reclamation Creditors. A DIP Lender's liens may be superior to the interest of Reclamation Creditors in Reclamation Goods and Reclamation Proceeds (the "Reclamation Interests") where the DIP is a "mere continuation" of a pre-petition loan facility that had a valid senior lien interest in the Reclamation Goods. *See In re Dana Corp.*, 367 B.R. 409 (Bankr. S.D.N.Y. 2007). However, where, as here, a debtor uses the proceeds of DIP financing to repay existing indebtedness, the DIP is not a mere continuation and valid Reclamation Rights prime the later-granted liens of a DIP lender. *See, e.g.*, *In re: Reichhold Holdings US, Inc.*, 556 B.R. 107 (Bankr. D. Del. 2016). Following the only Circuit court to have ruled on the issue in In re Phar-Mor, 534 F.3d 502 (6th Cir. 2008), Judge Walrath in <u>Reichold</u> similarly rejected the reasoning of Dana Corp., and explained "a postpetition lender's floating lien on the debtor's inventory did not

{00412507.DOCX /}

4

constitute an assumption of the prepetition creditor's lien, but an entirely new lien that did not defeat an intervening reclaiming seller's rights" *Id.* at 111 (citing *In re Phar–Mor*, 301 B.R. 482, 498 (Bankr. N.D. Ohio 2003), aff'd 534 F.3d 502, 506–07 (6th Cir.2008)). Here, the liens securing the DIP ABL Facility, by their terms, would impermissibly prime the Reclamation Rights.

10.     Additionally, the DIP ABL Facility provides that the DIP ABL Lenders are not required to marshal their collateral. This is equally unfair to the Reclamation Creditors. The DIP ABL Facility is secured by all the Debtors' assets, including those assets that are not otherwise subject to the Reclamation Rights. By relieving the DIP ABL Lenders of their obligation to marshal collateral, the Reclamation Creditors are necessarily prejudiced as assets that could be used to satisfy their claims will go to the DIP ABL Lenders, even if there are additional assets that could repay the DIP ABL Facility. The DIP ABL Facility should not be permitted to alter the Debtors' implicit bargain between it and all of its stakeholders that it will maximize value for those stakeholders, even maximization requires the Debtors to marshal their assets. Courts have preserved reclaiming creditors' equitable rights to marshaling. See e.g. Quality Stores, Inc., 289 B.D. 324, 329 N. 19 (W.D. Mich 2003) (noting that a suboridinate reclaiming seller might seek to compel a superior secured ccreditor to marshal and satisfy its secured claim from assets other than the goods delivered by the subordinate reclaiming seller); In re Suwanee Swifty Stores, Inc., 2000 Bankr. Lexis 2005, at *10 (Bankr. M.D. Ga. March 22, 2000) (recognizing that it is a "close call" as to whether an unsecured creditor could invoke marshaling against a secured creditor but preferring cases allowing the remedy to be used in the context of reclamation); see e.g. In re Georgetown Steel Co., 318 B.R. 340, 348 (Bankr. D. S.C. 2004) (holding that where all

of the debtors' assets were sold, the reclamation creidtors should not be required to trace thrir goods during the pending sale process

11.    Additionally, the roll up in the DIP ABL Facility, and proposed order approving same, threatens to impermissibly shift the burden of these cases from the lenders to the trade creditors, including the Reclamation Creditors. Remarkably, the Debtors are seeking a $1.8 billion DIP, but only receiving $300 million in new money. The balance of the DIP ABL Facility consists of a roll up of the Debtors' pre-petition loans. Such an expansive roll up at this point in the case is, necessarily, problematic. *See, e.g.*, *New World Pasta Co. v. New World Pasta Co.*, 322 B.R. 560, 569 n.4 (M.D. Pa. 2005) (noting that roll-up provisions "have the effect of improving the priority of a prepetition creditor"); *Tenney Vill.*, 104 B.R. at 570 (holding that "Section 364(d) speaks only of the granting of liens as security for new credit authorized by the Court").

12.    The proposed roll up here is particularly troublesome given the potential size of the administrative claims pool. As of the date hereof, trade creditors have filed at least $80 million in reclamation claims against the Debtors. Some portion of this $80 million will relate to goods that were provided in the 20 days prior to the Petition Date, and as such will be entitled to administrative priority under Bankruptcy Code 503(b)(9). The Debtors have provided absolutely no comfort that holders of 503(b)(9) claims will be paid, and instead are seeking to layer $1.8 billion in superpriority DIP claims on top of them. The Court should not approve the DIP ABL Facility without some showing from the Debtors that the liquidity by the proposed financing and the terms of the use of cash collateral cover all administrative expenses, including section 503(b)(9) claims and all post-petition trade claims. These cases should not be financed on the back of vendors.

{00412507.DOCX /}

6

13. Propel does not quibble with the Debtors' need for post-petition financing sufficient to permit the Debtors to take this case to a plan. However, the cost of that financing should not be borne by the other administrative creditors in these cases. The Reclamation Creditors have proposed language that would (i) not permit the DIP ABL Facility to disturb the senior Reclamation Interests, and (ii) preserves the rights of all parties to later agree or litigate regarding the priority of these interests. Given the sheer size of these cases, and the complexity of issues arising herein, it would be wasteful to try to litigate Reclamation Claims in connection with the DIP. However, the correlary to this reasoned approach should be that the DIP ABL Facility, and indeed, any DIP facility in these cases, should not be permitted to impair valid Reclamation Interests, whatever the priority of those interests are.

## CONCLUSION

14. Based on the foregoing, the Court should enter an order (i) denying the DIP Motion unless the Debtors agree to language that preserves and protects the Reclamation Interests, and (ii) granting such other relief as is just and proper.

Dated:   November 16, 2018                    COHNE KINGHORN, P.C.


                                                /s/ George Hofmann
                                              George Hofmann
                                              COHNE KINGHORN, P.C.
                                              111 East Broadway, 11th Floor
                                              Salt Lake City, Utah 84111
                                              Telephone: (801) 363-4300
                                              Facsimile: (801) 363-4378

{00412507.DOCX /}