**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                            :
                                                                 :         **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al*.,       :
                                                                 :         **Case No. 18-23538 (RDD)**
                                                                 :
               Debtors.[1]                                :         **(Jointly Administered)**
------------------------------------------------------------x

# FINAL ORDER AUTHORIZING DEBTORS TO
## (I) CONTINUE, MAINTAIN, AND RENEW THEIR INSURANCE POLICIES AND WORKERS' COMPENSATION PROGRAMS; (II) HONOR ALL OBLIGATIONS WITH RESPECT THERETO; AND (III) MODIFY THE AUTOMATIC STAY WITH RESPECT TO THE WORKERS' COMPENSATION PROGRAMS

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing but not directing the Debtors to (i) continue, maintain, and renew their Insurance Policies and Workers' Compensation Programs,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

including the Debtors' Premium Financing Agreements, (ii) honor their Insurance Obligations and Workers' Compensation Obligations in the ordinary course of business during the administration of these chapter 11 cases, (iii) pay any prepetition Insurance Obligations and Workers' Compensation Obligations, (iv) modify the automatic stay if necessary to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Program, and (v) grant related relief all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief, requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for the Final Hearing (defined below) having been provided in accordance with the Amended Case Management Order and as set forth in the affidavit of service filed with respect thereto (ECF No. 58), such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided of the relief granted herein; and the Court having held a hearing on October 15, 2018 to consider the relief requested in the Motion on an interim basis (the "**Interim Hearing**"); and the Court having entered an order granting the relief requested in the motion on an interim basis (ECF No. 141) (the "**Interim Order**") and scheduling a final hearing on the Motion on November 15, 2018 (the "**Final Hearing**"); and there being no objections to the entry of this Order; and no additional hearing being required under the circumstances; and upon the record of and representations made at the Interim Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested provides a net benefit to the Debtors and their estates after taking into account the Bankruptcy Code's priority scheme, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on a final basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, to pay, in the ordinary course of business, all Insurance Obligations (including, without limitations payments under Premium Financing Agreements and the Service Provider's Fees) arising under or relating to the Insurance Policies (the definition of which shall, for the avoidance of doubt, include all insurance policies issued or providing coverage to the Debtors, whether current or expired, and all agreements related thereto) including, without limitation, any new Insurance Policies, and whether or not such Insurance Policies are listed on **Exhibit 1**[3] to this Order, regardless of whether accruing or relating to the period before or after the Commencement Date.[4]

3. The Debtors are authorized, but not directed, to honor the terms of their existing Premium Financing Agreements, and to renew the Premium Financing Agreements, and to enter into new premium financing agreements in the ordinary course of business; *provided*, *however*, that the Debtors shall provide counsel to the official committee of unsecured creditors (the "**Creditors' Committee**") and counsel to the DIP ABL Agents (together with the Creditors' Committee, the "**Consultation Parties**") five (5) business days' advance notice prior to renewal

---

[3] The premium amounts listed in Exhibit 1 to this Order are based upon the Debtors' books and records, but these amounts may differ from the premium amounts reflected in the Insurers' records.

[4] For the avoidance of doubt, the term "Insurance Obligations" shall include, without limitation, all of the Debtors' obligations under any of the Insurance Policies.

of any Premium Financing Agreement, which notice shall include such information reasonably sufficient to support the decision to renew any such Premium Financing Agreement.

4. The Debtors are further authorized, but not directed, to maintain their Insurance Policies in accordance with practices and procedures that were in effect before the Commencement Date.

5. The Debtors are further authorized, but not directed, to revise, extend, supplement or otherwise modify their insurance coverage as needed, including without limitation, through the purchase or renewal of new or existing insurance policies or through entering into or renewing new or existing premium financing agreements; *provided*, *however*, that the Debtors shall provide the Consultation Parties five (5) business days' advance notice prior to the purchase or renewal of any insurance policy with an aggregate annual premium in excess of $100,000.00, which notice shall include such information reasonably sufficient to support the decision to purchase or renew any such policy.

6. The Debtors are authorized, but not directed, to pay all Workers' Compensation Obligations, including, without limitation, any Workers' Compensation Obligations related to any new Workers' Compensation Programs, regardless of whether accruing or relating to the period before or after the Commencement Date.[5]

7. The Debtors are authorized, but not directed, to maintain the Workers' Compensation Programs (the definition of which shall, for the avoidance of doubt, include all insurance policies issued or providing workers' compensation coverage to the Debtors, whether

---

[5] For the avoidance of doubt, the term "Workers' Compensation Obligations" shall include, without limitation, all of the Debtors' obligations under the Workers' Compensation Programs, including but not limited to any legacy or current self-insured state Workers' Compensation Programs or state approved occupational injury benefit plans.

4

current or expired, and all agreements related thereto) in accordance with practices and procedures that were in effect before the Commencement Date.

8. The Debtors are authorized, but not directed, to revise, extend, supplement or otherwise modify their workers' compensation coverage as needed, including, without limitation, through the purchase of new or renewal of existing Workers' Compensation Programs.

9. Nothing in the Motion, the Interim Order, or this Order alters or amends (i) the terms and conditions of any Insurance Policies or Workers' Compensation Programs or relieves the Debtors of any of their obligations under the Insurance Policies or Workers' Compensation Programs regardless of when such obligations arise or become liquidated, or (ii) the right, if any, of any Insurer to draw on and apply collateral in accordance with the terms of the Insurance Policies and Workers' Compensation Programs.

10. Notwithstanding anything in the Motion, the Interim Order, or this Order to the contrary, the Debtors and ACE American Insurance Company and ACE Fire Underwriters Insurance Company (together with each of their affiliates and each of their and their affiliates' successors, "**Chubb**") have the authority and, to the extent applicable, relief from the automatic stay set forth in section 362(a) of the Bankruptcy Code, (i) to handle, administer, defend, settle and/or pay: (a) workers' compensation claims, whether arising prior to or subsequent to the Commencement Date, (b) any claim where a claimant asserts a direct claim against Chubb under applicable law, and (c) any claim for which an order has been entered by the Bankruptcy Court granting the claimant relief from the automatic stay to proceed with its claim; and (ii) to pay any and all costs in relation to each of the foregoing in accordance with the Insurance Policies; and (iii) to the extent the Debtors fail to pay and/or reimburse Chubb for any of the amounts due after

5

the Commencement Date, Chubb shall have the right, if any, to draw on and apply collateral and/or security provided by or on behalf of the Debtors therefor in accordance with the terms of the Insurance Policies and the Workers' Compensation Programs.

11. This Order shall bind the Debtors, their successors in interest and assigns, including, without limitation, any trustee appointed pursuant to the Bankruptcy Code.

12. Notwithstanding anything in the Motion, the Interim Order, or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

13. To the extent there is any inconsistency between the terms of any of the DIP Orders or this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

14. Nothing contained in the Motion, the Interim Order, or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

15. Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

16. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

17. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

19. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: November 16, 2018
      White Plains, New York

/s/Robert D. Drain
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE