UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                       :
                                                            :     Chapter 11
**SEARS HOLDINGS CORPORATION,** *et al.*,                   :
                                                            :     Case No. 18-23538 (RDD)
                                                            :
            Debtors.[1]                                     :     (Jointly Administered)
------------------------------------------------------------x

### FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS; (II) APPROVING PROCEDURES TO ADDRESS VENDORS WHO REPUDIATE AND REFUSE TO HONOR THEIR CONTRACTUAL OBLIGATIONS TO THE DEBTORS; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), and 503(b)(9) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing, but not directing, the Debtors to pay up to $70 million on an interim basis (the "**Interim Critical Vendor Cap**") and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

$90 million on a final basis (the "**Final Critical Vendor Cap**", together with the Interim Critical Vendor Cap, the "**Critical Vendor Caps**"), in aggregate prepetition claims of certain vendors, suppliers, service providers, and other similar entities that the Debtors determine, in their reasonable business judgment and according to the procedures described in the Motion, are essential to their ongoing business operations and maximization of the value of the enterprise (collectively, the "**Critical Vendors**" and, their prepetition claims, the "**Critical Vendor Claims**"), (ii) approving (a) the Critical Vendor Payment Protocol, (b) the form of Critical Vendor Notice, substantially in the form attached to the Motion as **Exhibit B**, (c) the form of Vendor Agreement, substantially in the form attached to the Critical Vendor Notice as Exhibit 1, (d) the Repudiating Vendor Procedures, (e) the form of Notice of Repudiating Vendor, substantially in the form attached to the Motion as **Exhibit C**, and (f) the form of Order to Show Cause, substantially in the form attached to the Motion as **Exhibit D**, and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the Final Hearing (defined below) having been provided in accordance with the Amended Case Management Order and as set forth in the affidavit of service filed with respect thereto (ECF No. 58), such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided with respect to the relief granted herein; and the Court having held a hearing on October 15, 2018 to consider the relief requested in the Motion on an interim basis

(the "**Interim Hearing**"); and the Court having entered an order granting the relief requested in the motion on an interim basis (ECF No. 141) (the "**Interim Order**") and scheduling a final hearing on the Motion for November 15, 2018 (the "**Final Hearing**"); and there being no objections to the entry of this Order; and no additional notice or hearing being required under the circumstances; and upon the record of and representations made at the Interim Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested provides a net benefit to the Debtors and their estates after taking into account the Bankruptcy Code's priority scheme, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on a final basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, to pay Critical Vendor Claims in accordance with the Critical Vendor Payment Protocol up to the Final Critical Vendor Cap, upon such terms and in the manner provided in this Order and the Motion; *provided*, *however*, that the Debtors shall provide the professionals retained by the official committee of unsecured creditors (the "**Creditors' Committee**") and the professionals retained by the DIP Agents (together with the Creditors' Committee, the "**Consultation Parties**") with reasonable advance notice of any payment that exceeds $2 million individually or in the aggregate that the Debtors propose to make to a single Critical Vendor on account of prepetition Critical Vendor Claims; *provided further* that any such notice shall include (i) the identity of the Critical Vendor to be paid, (ii) the total prepetition claim owed to such Critical Vendor (including any amount entitled to priority

3

under Bankruptcy Code section 503(b)(9)), (iii) the amount of the proposed Critical Vendor Claim, (iv) the Customary Trade Terms, and (v) a copy of the Vendor Agreement, and (vi) such other information the Consultation Parties may reasonably request.

3. The Critical Vendor Payment Protocol and form of Critical Vendor Notice are hereby approved.

4. The form of Vendor Agreement is approved in its entirety. Except as otherwise set forth herein, the Debtors shall condition payment of Critical Vendor Claims pursuant to this Order upon the execution of a Vendor Agreement. The Debtors are authorized, but not directed, to enter into such Vendor Agreements when and if the Debtors determine, in the exercise of their sole reasonable business judgment, that it is appropriate to do so. A Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein; <u>provided</u> that the Debtors may agree to implement such modifications to the form of Vendor Agreement the Debtors deem necessary or advisable in the reasonable exercise of their business judgment to obtain Customary Trade Terms (defined below) from the applicable Critical Vendor; <u>provided</u> further that the Debtors may pay a Critical Vendor Claim without the applicable Critical Vendor having executed a Vendor Agreement only if the Debtors determine, in their reasonable business judgment, that a Vendor Agreement is unnecessary to ensure the applicable Critical Vendor's continued performance on Customary Trade Terms (defined below); *provided further* that the Debtors shall provide the Consultation Parties with updates on the number of Critical Vendors performing under Customary Trade Terms as a part of the weekly and monthly reporting of the Critical Vendor Matrix (as defined herein) set forth in paragraph 11 herein.

5. Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall take all actions necessary to remove any mechanics' liens, possessory liens, or similar state law trade liens on the Debtors' assets such party may have based upon such Critical Vendor Claim at such party's sole expense.

6. Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of this Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and employee up to the amount paid.

7. In the event (i) a Critical Vendor breaches the terms or conditions of a Vendor Agreement or (ii) regardless of whether a Vendor Agreement has been executed, a Critical Vendor accepts payment from the Debtors of a Critical Vendor Claim and does not continue supplying goods or services to the Debtors on trade terms at least as favorable to the Debtors as those terms governing the Debtors' practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs), with respect to that particular Critical Vendor, within the 360 days prior to the Commencement Date, or such other trade terms that are acceptable to the Debtors in their sole discretion (collectively, the "**Customary Trade Terms**"), the Debtors may, in their discretion, (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may

5

recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount as so to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8.   All Vendor Agreements will terminate upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

9.   In the event a Critical Vendor breaches the terms or conditions of its Vendor Agreement, the Debtors may, in their discretion, declare that such Vendor Agreement has terminated; <u>provided</u> that the Vendor Agreement may be reinstated if:

   i.   after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Vendor Agreement for good cause shown that the Debtors' determination was materially incorrect;

   ii.  the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Trade Agreement; or

   iii. the Debtors, in their sole discretion, reach a commercially acceptable agreement with the breaching party.

18-23538-shl    Doc 793    Filed 11/16/18    Entered 11/16/18 16:41:16    Main Document
Pg 7 of 9

10. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor and the Debtors' rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims are fully preserved.

11. The Debtors shall maintain a "**Critical Vendor Matrix**" summarizing (i) the name of each vendor requesting Critical Vendor status, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms. For the first forty-five (45) days after entry of this Order, the Critical Vendor Matrix will be provided on a weekly basis, and, thereafter, on a monthly basis, to the U.S. Trustee. The Debtors shall provide the Critical Vendor Matrix on a weekly basis (or as otherwise agreed with the Consultation Parties) to the Consultation Parties; *provided* that the Consultation Parties shall keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone, including, but not limited to, any member of the Creditors' Committee, without prior written consent of the Debtors; *provided further* that the Critical Vendor Matrix shall be delivered to the Consultation Parties no later than the third business day following the conclusion of the weekly reporting period (or as otherwise agreed with the Consultation Parties).

12. The Repudiating Vendor Procedures are approved in their entirety. In addition, the forms of Notice of Repudiating Vendor and Order to Show Cause are each hereby approved.

13. If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors are authorized,

but not directed, to pay such claim provisionally (and such payment shall not count against the Critical Vendor Caps).

14. Regardless of whether a payment has been made, if a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors may (i) file a Notice of Repudiating Vendor setting forth (a) the name of the Repudiating Vendor, (b) the identity of the agreement governing the Debtors' relationship with the Repudiating Vendor, (c) the Debtors' belief that the Repudiating Vendor is in violation of the Bankruptcy Code, and (d) the amount(s) and date(s) of any prepetition amounts paid; and (ii) seek entry of an Order to Show Cause requiring the Repudiating Vendor to show why it should not be found to have willfully violated sections 362 and 365 of the Bankruptcy Code and why it should not be required return any payments made to it by the Debtors, plus any accumulated interest.

15. Notwithstanding anything in the Motion, the Interim Order, or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"), (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities, and (iii) the Approved Budget (as defined in the DIP Orders).

16. To the extent there is any inconsistency between the terms of any of the DIP Orders, the Interim Order, or this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

17. Nothing contained in the Motion, the Interim Order, or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

18. Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

19. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

20. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry, for cause.

21. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

22. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: November 16, 2018
      White Plains, New York

                                          /s/Robert D. Drain
                                          THE HONORABLE ROBERT D. DRAIN
                                          UNITED STATES BANKRUPTCY JUDGE

WEIL:\96796787\1\73217.0004