## **Exhibit 3**

**Liquidation Consulting Agreement**

# AMENDED AND RESTATED
# AGENCY AND CONSULTING SERVICES AGREEMENT

THIS AMENDED AND RESTATED AGENCY AND CONSULTING SERVICES AGREEMENT (the "Agreement") is entered into as of October 10, 2018, by and between Sears Holdings Management Corporation, a Delaware corporation, as agent for Kmart Corporation ("Kmart"), a Michigan corporation, and Sears, Roebuck and Co. ("Sears"), a New York corporation, having its corporate office at 3333 Beverly Road, Hoffman Estates, Illinois 60179 (referred to herein as "Company"), and Abacus Advisors Group L.L.C. ("Agent"), a Delaware limited liability company, having its offices at 10 Reuten Drive, Closter, New Jersey 07624.

WHEREAS, Company and Agent have entered into that certain Agency and Consulting Agreement, dated as of February 19, 2012 (as amended, supplemented or otherwise modified from time to time, the "Existing Agreement"), pursuant to which Company retained Agent to provide exclusive advisory services to assist Company with disposing of merchandise inventory to be liquidated (the merchandise inventory being referred to as the "Inventory") contained within certain stores through so-called store closing or total liquidation sales at each Store ("Liquidation Sale" or "Sale");

WHEREAS, pursuant to the Existing Agreement, Agent has supervised so-called store closing or total liquidation sales with respect to in excess of 800 of Company's stores;

WHEREAS, Company and Agent desire to amend and restate the Existing Agreement to provide for Company to retain Agent to provide exclusive advisory services to assist Company with disposing of Inventory through Liquidation Sales at some or all of the stores operated by Kmart, Sears or any other subsidiary of Sears Holdings Corporation (the "Stores"); and

WHEREAS, among the alternatives available to the Company is to file a voluntary petition for relief under chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in an

applicable United States Bankruptcy Court (the "Bankruptcy Court").

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the parties hereto intending to be legally bound hereby agree as follows:

1. ADVISORY SERVICES. Agent shall provide exclusive advisory services to Company in connection with Company's efforts to liquidate and dispose of Inventory at each Store selected by Company in its sole and absolute discretion by notice to Agent. Agent shall use its best efforts, expertise, and professional judgment to maximize the return to Company of the Liquidation Sales, and shall comply with all federal, state and local laws, rules and regulations applicable to this Agreement or to the performance thereof, including Liquidation Sale Laws (unless an order of the Bankruptcy Court approving departure from such Liquidation Sale Laws is entered). "Liquidation Sale Laws" shall mean all applicable laws, rules and regulations in respect of "Store Closing Sales", "Lease Expiration Sales" or similar-themed sales, including laws relating to safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Liquidation Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the Liquidation Sale, but excluding those designed to protect public health and safety.

2. TERM. The term of this Agreement shall be for a period commencing on the date first written above and ending on December 31, 2019 (the "Term"). However, at any time, Company may terminate this Agreement by providing Agent thirty (30) days prior written notice.

3. SUPERVISION. Agent shall supply, as a Sale Expense under Section 10, one and only one full-time supervisor (unless otherwise agreed to by Company) for each Store for the duration of the Sale, which supervisor shall be approved by Company in its sole, absolute and unfettered discretion. The supervisor for each Store shall be on-site and commence his or her

responsibilities no later than the date referenced in Schedule "A" as the "On-Site Date." Agent, through its management and supervision, shall, in consultation with Company, plan the advertising, marketing and sales promotion for the Liquidation Sale, arrange the stock in the Store for liquidation, determine and effect price reductions so as to sell the Inventory in the time allotted for the Sale, arrange for and supervise all personnel and merchandise preparation, and conduct the Sale in a manner reasonably designed to minimize the expenses to Company and realize for its benefit the maximum return. Agent hereby represents and warrants to Company that it reasonably believes that it is able to retain sufficient supervisors to conduct the Sales in a fashion consistent with past practice in connection with previous sales conducted by Agent for Company. Agent hereby further agrees that it shall retain supervisors to conduct the Sales in a fashion consistent with past practice in connection with previous sales conducted by Agent for Company.

4. SECURITY. Agent shall utilize current loss prevention store staff.

5. LIQUIDATION SALE. The Liquidation Sale for each Store shall commence on the date determined by Company in its sole and absolute discretion and set forth in the notice described in Section 1 hereof, which date shall be hereinafter referred to as the "Effective Date". Agent will not advertise or discount until the Effective Date. In consultation with Company, Agent shall discount the Inventory (and change discounts from time to time) in accordance with its professional judgment in order to maximize the proceeds and maintain the momentum of such Sale. Within three (3) days of completion of the Liquidation Sale at a Store, which shall be on a date determined by Company (in consultation with Agent) with respect to such Store (the "Sale Termination Date"), Agent shall cause the Store to be left in broom clean condition (other than with respect to store fixtures and equipment). The date upon which each Store is vacated and left in broom clean condition shall be no later than the Sale Termination Date.

6. ADVERTISING. Agent shall follow all legal requirements applicable to

the advertising of each Sale and shall ensure that all such advertising complies with applicable laws, including Liquidation Sale Laws (unless an order of the Bankruptcy Court approving departure from such Liquidation Sale Laws is entered). All advertising shall be conducted under the name of Kmart or Sears (depending upon the type of the Store). Each Sale will be advertised as a "Store Closing Sale," "Lease Expiration Sale" or similar description, during the period starting from the Effective Date through the Sale Termination Date of such Sale, and to the extent permitted by applicable leases, laws, regulations and ordinances, Agent shall be permitted to use signs and banners reflecting this message. Agent's use of temporary banners, sign walkers or other means of advertising the Sales must comply with applicable laws, including Liquidation Sale Laws (unless an order of the Bankruptcy Court approving departure from such Liquidation Sale Laws is entered). Agent will be sensitive to and work with Company to resolve conflicts with advertising near on-going stores as identified by Company. Company must, in any event, approve all advertising and signage prior to its use. Unless otherwise expressly agreed by Company, the words "Going Out of Business" or "GOB" will not be used in any advertising. Unless otherwise expressly agreed by Company, Agent shall not use the phrase "All on Sale" or any similar terminology in any advertising of home appliance or home electronics items.

7. <u>LICENSES - RULES</u>.  Agent shall work with Company to obtain all necessary permits and licenses and comply with all federal, state and local laws, rules and regulations relating to the Liquidation Sale, including Liquidation Sale Laws (unless an order of the Bankruptcy Court approving departure from such Liquidation Sale Laws is entered). Agent will be responsible for advising its supervisor(s) as well as Company's employees under Agent's supervision on how to comply with those laws, rules and regulations. Each and every sale at the Stores shall be conducted on an "as-is" and "where-is" basis with "all sales final." No refunds or exchanges whatsoever shall be accepted other than refunds for merchandise purchased before

commencement of the Sale or otherwise as approved by Company. Such refunds will be recorded and the merchandise, if saleable, returned to stock for resale, or, if defective, returned to vendor. Such merchandise shall be included in the aggregate retail value, with a reduction for the prevailing discount in effect at the time the merchandise is returned. There will be no express warranties regarding the Inventory sold other than those provided by the manufacturer. All sales shall be for cash, all credit cards currently accepted by Company, and checks that are acceptable according to Company's current policies and procedures. Agent shall cause all floor operations to comply with current check and credit authorization procedures.

8. EMPLOYEES. Agent shall use personnel from the Stores, including each Store's management, to the extent Agent believes the same to be feasible, and Agent shall select and schedule the number and type of employees required for the Sale. Agent shall, as soon as reasonably possible, notify Company as to which of the Company employees are no longer required for the Sale.

9. AGENT FEE. As consideration for Agent's efforts and services in connection with the Sale, Agent shall receive a monthly graduated fee as follows:

- If 20 active closings or less in any given month, Company shall pay to Agent One Hundred Thousand Dollars ($100,000.00) as the monthly fee;
- If 21 - 30 active closings in any given month, Company shall pay to Agent One Hundred Ten Thousand Dollars ($110,000.00) as the monthly fee;
- If 31 - 40 active closings in any given month, Company shall pay to Agent One Hundred Twenty Thousand Dollars ($120,000.00) as the monthly fee;
- If 41 - 50 active closings in any given month, Company shall pay to Agent One Hundred Thirty Thousand Dollars ($130,000.00) as the monthly fee; and
- If 51 or greater active closings in any given month, Company shall pay to Agent

One Hundred Forty Thousand Dollars ($140,000.00) as the monthly fee, which fee shall be invoiced by Agent to Company and shall be payable by Company within fifteen (15) days after receipt of such invoice. In addition, at the conclusion of the Term, Agent and Company shall discuss and may agree, in Company's sole discretion and subject to entry of an order of the Bankruptcy Court approving such performance fee, upon the payment of a performance fee if circumstances and the results of the Sales so warrant. Such performance fee, if any, may be based on total proceeds of the Sales ("Gross Proceeds"), or any other basis Company, in its sole discretion, shall determine.

10. **EXPENSES**. Company shall pay (or reimburse Agent for) the following expenses of each Sale (the "Sale Expenses"):

    a    Payroll for Store employees;

    b.    Payroll taxes and benefits for Store employees (excluding sick leave, maternity benefits and other leaves of absence, severance or termination pay, ERISA coverage and similar benefits);

    c.    Agent's actual cost for each supervisor's fees, reasonable travel costs and bonuses (subject to the remainder of this Section 10);

    d.    Advertising and promotional costs, including signage;

    e.    Risk management not to exceed $3,000 per Store;

    f.    Outside services, bank charges, credit card fees and discounts (at Company's customary rates) and chargebacks;

    g.    Utilities;

    h.    Cleaning;

    i.    Additional Supplies;

    j.    Travel (Store associates);

      k.    "Occupancy" expenses including rent, percentage rent, CAM, real estate taxes, rental equipment and similar items on a per diem, per Store basis;

      l.    Communications;

      m.    Bad check expense;

      n.    Cash over/short; and

      o.    Sundry.

Company shall provide (not to be considered Sale Expenses), during the period starting from the Effective Date through the Sale Termination Date, central administrative services reasonable or necessary for each Sale, such as POS administration, other insurance, sales audit, cash reconciliation and payroll processing. Agent shall provide Company with a comprehensive budget of Sale Expenses and supervisor compensation (the "Budget"), which Budget shall be in form and substance acceptable to Company. Sale Expenses and supervisor compensation shall be payable only to the extent consistent with the Budget. Sale Expenses shall be invoiced by Agent to Company upon completion of each Sale and shall be payable by company within ten (10) days after receipt of said invoice. The on-site supervisors shall be paid Two Thousand Four Hundred Fifty Dollars ($2,450.00) per week, which amount shall be invoiced by Agent to Company and shall be payable by Company within ten (10) days after receipt of such invoice. In addition, the on-site supervisors shall be eligible to receive incentive compensation up to a maximum of One Thousand Two Hundred Twenty Five Dollars ($1,225.00) per week based upon the supervisor's performance as measured by a formula constructed by Agent. This incentive compensation is performance based as determined by and in the Agent's sole discretion. At the conclusion of the Sale, Agent shall calculate the incentive compensation that may be due to each on-site supervisor, provide Company with the amount of such incentive compensation, and Company shall pay each on-site supervisor the amount of such compensation in a lump sum within (10)

days of receipt of the information from Agent.

Agent shall charge no home office expense (except for out-of-pocket travel and related expenses that are pre-approved by Company) for its management representation. Company shall be responsible for all other expenses which are not Sale Expenses.

11. **LEASED DEPARTMENTS**. The leased departments within the Stores may participate in the Liquidation Sale at the option of the operator of any such department so long as they follow the rules, procedures and discounts recommended and implemented by Agent. Applicable lease income for any such leased department accrued during such Liquidation Sale shall be included in Gross Proceeds of the applicable Store. Lease income is defined as the net proceeds received or retained by Company during such Sale as determined in accordance with the respective License Agreement or other Agreement between Company and the respective Lessee.

12. **OTHER SALE MATTERS.**

   a. Administration of matters such as layaways, Store credits and gift certificates will be the responsibility of Company, but Agent agrees to cooperate fully with Company in the administration of such matters. Agent will conduct each Sale using all existing Company policies.

   b. Returns of merchandise purchased before commencement of each Sale will be accepted throughout such Sale. When a receipt is not present, the lowest price offered for the last thirty (30) days will be paid to the customer.

   c. Subject to Section 16 hereof, furniture, fixtures and equipment will not be sold.

13. **INSURANCE.** Company shall maintain, during the period of each Sale, all insurance in amounts at least equal to the insurance coverage presently in force.

Agent will not be responsible for loss, liability, damage or expense arising out of any casualty or other loss, unless caused by the intentional or willful misconduct or gross negligence of Agent's employees or supervisors. With respect to losses of Inventory occurring after the Effective Date, any insurance proceeds shall be deemed Gross Proceeds from the Sale.

14. <u>INDEMNIFICATION</u>. Agent and Company agree to indemnify, defend and hold each other free and harmless from and against any and all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, obligations, costs and expenses of any kind whatsoever, including, without limitation, attorneys' fees and costs, asserted against, resulting from or imposed upon, or incurred by either party hereto by reason of or resulting from a material breach of any term or condition contained in this Agreement or any willful misconduct or intentional act of the other party.

15. <u>AGENCY</u>. The parties hereby agree that Agent is acting as an agent of Company during the period of this Agreement and as such will observe all of the fiduciary duties which the law imposes on agents with respect to their principals. No joint venture or partnership has been formed.

16. <u>LIQUIDATION OF FIXTURES</u>. In the event Company requests Agent to sell or otherwise dispose of some or all of the fixtures, equipment, furniture, furnishings and other appurtenances thereto located at any Store (hereinafter referred to collectively as "Store Fixtures"), Agent agrees to use its reasonable best efforts to sell or otherwise dispose of the Store Fixtures so designated by Company. In consideration for rendering such services, Company and Agent hereby agree that Agent shall receive ten percent (10%) of the gross proceeds inclusive of any payments such as a buyer's premium, or the like (net of sales taxes) realized on the sale or other disposition of the Store Fixtures so designated by Company

together with reimbursement of reasonable out of pocket expenses incurred by Agent pursuant to a budget approved by Company. Agent shall pay to Company the remaining ninety percent (90%) of the gross proceeds inclusive of any payments such as a buyer's premium or the like (net of sales taxes) from such sale on a weekly basis.

17. <u>ASSIGNMENT</u>. Neither party may assign this Agreement without the express written consent of the other party.

18. <u>NOTICES</u>. All notices or other consents and communications required under this Agreement or otherwise shall be in writing and effective only upon receipt, and may be hand-delivered or sent via U.S. express mail, Federal Express or another recognized overnight courier.  Notices to Company shall be sent to Mohsin Meghji at the address below, and notices to Agent shall be sent to Alan Cohen at the address noted above (or such other address as may be provided).

> Sears Holdings Management Corporation
> 3333 Beverly Road
> Hoffman Estates, IL 60179
> Attention: Mohsin Meghji, Chief Restructuring Officer

19. <u>ENTIRE AGREEMENT</u>. This Agreement amends, restates and supersedes in its entirety the Existing Agreement, which shall have no further force or effect; provided that any sales ongoing under the Existing Agreement as of the date hereof shall be deemed to be Sales under this Agreement and any amounts due and owing under the Existing Agreement as of the date hereof shall be deemed to be amounts due and owing under this Agreement.  This Agreement contains the entire understanding of the parties with regard to its subject matter and may not be amended or rescinded except by a writing executed by each of the parties hereto. Each party represents that it has the requisite authority to enter into this

Agreement upon the terms and conditions set forth herein.

20. EXECUTION. This Agreement may be executed in counterparts by the parties hereto and any signatures received via facsimile transmissions will be binding and effective between the parties until original signatures are obtained.

21. GOVERNING LAW. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to conflict of laws principles.

SIGNATURES ARE ON THE NEXT PAGE

KMART CORPORATION and SEARS, ROEBUCK AND CO.
By: Sears Holdings Management Corporation, Their Agent

By: _____/s/_____
Name:
Title:

ABACUS ADVISORS GROUP L.L.C.


By: _____
Name:
Title:

-12-

KMART CORPORATION and SEARS,
ROEBUCK AND CO.
By: Sears Holdings Management Corporation, Their Agent

By:_____
Name:
Title:

ABACUS ADVISORS GROUP L.L.C.

By: _____
Name:  Terrence A. Corrigan
Title:    Managing Director