**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                                :
                                                                         :     **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al*.,    :
                                                                         :     **Case No. 18-23538 (RDD)**
                                                                         :
                    Debtors.[1]                                 :     **(Jointly Administered)**
------------------------------------------------------------x

**ORDER AUTHORIZING DEBTORS TO SELL**
**MEDIUM TERM NOTES**

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 6004(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), for an order (a) granting expedited consideration of the Motion's request for substantive relief and (b) authorizing, but not directing, the Debtors to sell certain medium term notes, all as more fully set forth in the Motion; and the Court having

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion having been provided in accordance with the Amended Case Management Order and under the circumstances, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided for the reasons stated by the Court at the November 13, 2018 hearing; and the Court having held hearings to consider the relief requested in the Motion on November 13, 2018 and November 19, 2018 (collectively, the "**Hearing**"); and upon the record of, and representations at, the Hearing, and all of the proceedings had before the Court; and the Court having determined that (i) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, and (ii) the withdrawal of the objection of Cyrus Capital Partners, LP ("**Cyrus**") is based upon the provisions in this Order that have been negotiated at arms' length and in good faith between the Debtors and Cyrus to address issues raised in Cyrus' objection to the Motion; and there being no other objections to the Motion; and it appearing that the relief granted hereby is supported by a proper exercise of business judgment, provides a benefit to the Debtors and their estates, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest while sufficiently protecting SRAC; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted to the extent set forth herein.

2. The Motion's request for expedited consideration is granted.

3. The Debtors are authorized, but not directed, in consultation with the Creditors' Committee, to sell the MTNs to the party or parties that provide the highest or best offer and to deposit all net proceeds of the sale(s) into the Winddown Account, as provided in the DIP Orders (as defined below), *provided* that such authorization to sell the MTNs shall terminate at the close of business one business day following the date of the Auction and any further authorization to sell all or any of the MTNs will be subject to Court approval.

4. In light of the fact that the sale of the MTNs and the deposit of the proceeds into the Winddown Account may affect the assets and liabilities of the respective Debtors, in connection with the chapter 11 plan process, the Debtors, the Creditors' Committee, and the DIP ABL Agents and the Prepetition ABL Agents (each as defined in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief*, dated October 16, 2018 (ECF No. 101)) will agree upon a true-up mechanism to ensure that no Debtor's estate or creditors is adversely affected as a result of the sale of the MTNs, the deposit of the proceeds therefrom, subject to paragraph 4 hereof, into the Winddown Account or the use of such proceeds in accordance with this Order, which true-up mechanism will be subject to approval by the Court. In the event that the foregoing parties cannot agree upon a true-up mechanism, any dispute will be resolved by the Court.

5. To the extent that the Debtors sell the MTNs, Jefferies may deduct the Jefferies Brokerage Fee (as modified on the record at the Hearing to a 1.75% fee) from the gross proceeds of such sale.

3

6. Pursuant to section 363(f) of the Bankruptcy Code, the MTNs sold by the applicable Debtors shall be sold free and clear of any and all liens, claims, and encumbrances (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately before the closing of the applicable sale; *provided*, however, that the MTNs are not being sold free and clear of any Liens or Claims of SRAC, including, without limitation, any counterclaim, defense or right of setoff, held or that may be asserted by SRAC or its estate, and nothing in this Order shall impair or prejudice in any way any rights, claims, or defenses that SRAC or its estate may have in connection with the MTNs.

7. Any entity that purchases MTNs from the Debtors pursuant to the authority granted in this Order shall be deemed to have purchased the MTNs in good faith and shall be entitled to the protections set forth in section 363(m) of the Bankruptcy Code; *provided*, however, that notwithstanding the foregoing, the MTNs are not being sold free and clear of any liens charges, claims, or encumbrances of SRAC, including, without limitation, any counterclaim, defense or right of setoff, held or that may be asserted by SRAC or its estate, and nothing in this Order shall impair or prejudice in any way any rights, claims, or defenses that SRAC or its estate may have in connection with the MTNs, and *provided*, further, that nothing contained in this Order shall waive any rights of the Debtors, the Creditors' Committee or any other party or governmental entity to the extent it is determined that a party engaged in inappropriate conduct with respect to the transactions contemplated by this Order.

8. Notwithstanding anything contained in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"), (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities, and (iii) the Approved Budget (as defined in the DIP Orders).

9. To the extent there is any inconsistency between the terms of any of the DIP Orders or this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

10. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

11. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

12. To the extent necessary to permit the sale of the MTNs, the automatic stay in effect in SRAC's case under section 362(a) of the Bankruptcy Code is lifted pursuant to section 362(d)(1) of the Bankruptcy Code.

13. Any stay of this Order under Fed. R. Bankr. P. 6004(f) is waived, for cause, and this Order is effective immediately upon its entry.

Dated: November 19, 2018
      White Plains, New York

                                      /s/ Robert D. Drain
                                      THE HONORABLE ROBERT D. DRAIN
                                      UNITED STATES BANKRUPTCY JUDGE