WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                        :
                                             :          **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,    :
                                             :          **Case No. 18-23538 (RDD)**
                                             :
             Debtors.[1]                      :          **(Jointly Administered)**
-------------------------------------------------------------x

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO DEBTORS' MOTION FOR AUTHORITY TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, (C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES AND (D) GRANT RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

Preliminary Statement ............................................................................................1

I.    The Committee Objection Should be Overruled .....................................5

    A.    The Rollup Is Appropriate .........................................................5

    B.    Terms of Adequate Protection Are Warranted ..........................13

    C.    Other Issues Raised in Committee's Objection Are Inconsistent
        with Precedent and Inappropriate under the Circumstances......14

II.    Response to Other Parties' Objection to DIP Financing.......................17

    A.    Landlord Objections ................................................................17

    B.    Vendor Objections...................................................................18

    C.    Objections of Texas Taxing Authorities..................................21

    D.    Lien Priority Objections .........................................................22

Conclusion ...........................................................................................................25

WEIL:\96808680\9\73219.0006

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 21st Century Oncology*,
  Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. May 26, 2017),
  ECF No. 31-1 .............................................................................. A-7, A-8, A-10, A-11

*In re Ades & Berg Grp. Inv'rs*,
  550 F.3d 240 (2d Cir. 2008) ............................................................................. 24

*In re Ames Dep't Stores, Inc.*,
  115 B.R. 34 (Bankr. S.D.N.Y. 1990) ................................................................... 5

*In re AppliedTheory Corp.*,
  02-11868 (REG), 2008 WL 1869770 (Bankr. S.D.N.Y. Apr. 24, 2008) ......................... 14, 16

*In re BCBG Max Azria Glob. Holdings, LLC*,
  Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 28, 2017), ECF No. 228 ................. 17, A-7

*In re The Bon-Ton Stores, Inc.*,
  Case No. 18-10248 (MFW) (Bankr. D. Del. Mar. 12, 2018) ................................ 17, A-7, A-9

*In re Brookstone Holdings Corp.*,
  Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 30, 2018) .................................................... 7

*In re Cenveo, Inc.*,
  Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. March 8, 2018), ECF No. 188-1 ........ A-8, A-10

*In re Charming Charlie LLC*,
  Case No. 17-12906 (CSS) (Bankr. D. Del. January 11, 2018), ECF No. 309 ..................... A-9

*In re Claire's Stores*,
  Case No. 18-10584 (MFW) (Bankr. D. Del. April 24, 2018), ECF No. 318-1 ................... A-4

*In re dELiA*s, Inc.*,
  Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. January 9, 2015) ................ 18, A-7, A-11, A-12

*In re Ellingsen MacLean Oil Co.*,
  65 B.R. 358 (W.D. Mich. 1986), *aff'd,* 834 F.2d 599 (6th Cir. 1987) .................................... 6

*In re Farmland Indus., Inc.*,
  294 B.R. 855 (Bankr. W.D. Mo. 2003) ................................................................................. 6

*in Czyzewski v. Jevic Holding Corp.*,
  137 S. Ct. 973 (2017) ......................................................................................................... 8

ii

*In re MPM Silicones, Inc.*,
    Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. March 23, 2014), ECF No. 253 ......... A-8, A-11

*Official Comm. of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*,
    322 B.R. 560 (M.D. Pa. 2005) ............................................................................. 8

*In re Rockport Co., LLC*,
    Case No. 18-11145 (LSS) (Bankr. D. Del. June 29, 2018) ...................................... 7

*Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co. Inc.)*,
    963 F.2d 1490 (11th Cir. 1992) ........................................................................... 7

*In re The Standard Register Co.*,
    Case No. 15-10541 (BLS) (Bankr. D. Del. Apr. 16, 2015) ...................................... 7

*In re SunEdison, Inc.*,
    Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 9, 2016), ECF No. 523-3 .................... A-4

*In re Tenney Vill. Co.*,
    104 B.R. 562 (Bankr. D.N.H. 1989) ...................................................................... 8

*In re Tops Holding II Corp.*,
    Case No. 18-22279 (RDD) (Bankr. S.D.N.Y, April 5, 2018)............................. 16, A-9, A-12

*In re Uno Rest. Holdings Corp.*,
    Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 18, 2010) .................................... 7

*In re Westmoreland Coal Co.*,
    Case No. 18-35672 (MI) (Bankr. S.D. Texas, Nov. 15, 2018)................................. 7

**Statutes**

20 ILCS 620/4....................................................................................................... 22, 23

20 ILCS 620/4(g) ................................................................................................. 25

35 ILCS 200/21-75................................................................................................ 25

Bankruptcy Code section 546(c)............................................................................ 20

Bankruptcy Code section 363(k) .......................................................................... A-9

Bankruptcy Code section 502 ............................................................................... A-1

Bankruptcy Code section 503(b)(4)....................................................................... A-8

Bankruptcy Code section 551 ............................................................................... A-10

WEIL:\96808680\9\73219.0006

Bankruptcy Code section 552(b) ................................................................. A-2, A-3, A-4, A-14

Bankruptcy Code section 364 ........................................................................................ 5, 8

Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1,
   *et seq.* ........................................................................................................................ 22

Illinois Sears EDA Act ............................................................................ 22, 23, 24, 25

Illinois Sears EDA Act amendment ............................................................................ 23

Uniform Commercial Code .......................................................................................... 19

**Other Authorities**

L. R. 4001-2(a)(7) .......................................................................................................... 7

L. R. 4001-2(g)(5) ..................................................................................................... 7, 12

Motion, the Interim DIP ABL Order, the Proposed DIP ABL Final Order, the
   *Debtors' Supplemental Motion for Authority to (I) Obtain Junior Postpetition
   Financing and (II) Schedule Final Hearing* ............................................................... 1

WEIL:\96808680\9\73219.0006

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully submit this omnibus reply to the objections filed to the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (ECF No. 7) (the "**Motion**").[2]

### Preliminary Statement

1. Regardless of the path chosen by the Debtors, approval of the proposed DIP ABL Facility is absolutely essential to the Debtors' ability to maximize value. Simply stated, if the proposed DIP ABL Facility and the Junior DIP Financing are not approved, the Debtors will be forced to immediately liquidate at fire sale prices, and tens of thousands of jobs will be lost. This outcome would be devastating for all of the Debtors' stakeholders and contrary to the fundamental principles of chapter 11. In that context, under the guidance and supervision of their independent Restructuring Committee, the Debtors negotiated the DIP ABL Facility and secured the best terms possible under the circumstances to give themselves a reasonable opportunity to reorganize or execute alternative value maximizing chapter 11 cases.

2. It cannot be disputed that entry into the DIP ABL Facility constitutes a sound exercise of the Debtors' business judgment and is eminently fair and reasonable under the circumstances. The ABL DIP Facility is not only the best financing available to the Debtors, but it also provides the Debtors with a sufficient runway to stabilize their businesses and fund the

---

[2] Capitalized terms used herein but not otherwise defined will have the meanings ascribed to them in the Motion the Interim DIP ABL Order, the Proposed DIP ABL Final Order filed contemporaneously herewith, or the Committee's Objection (as defined below).

sale process authorized by the Court—whether the Debtors pursue a going concern bid or an alternative structure.  As the undisputed evidence has and will show, the DIP ABL Facility was procured after robust arm's-length negotiations and a post-petition marketing process undertaken by the Debtors and their advisors that did not result in any executable alternatives for a senior debtor in possession facility.

3.       Despite these indisputable facts, the Debtors received 31 responses to the Motion (the "**DIP Objections**"), including an objection filed by the Creditors' Committee (ECF No. 740) (the "**Committee Objection**").   None of the objections seriously contest—nor could they—the Debtors' business judgment in entering into the DIP ABL Facility.  Further, none of these objections dispute the fact that the DIP ABL Facility was negotiated in good faith and at arms' length. Approval of the DIP ABL Facility and the Adequate Protection package is supported by the facts and evidence and is consistent with applicable law and precedent for comparable postpetition financings authorized in this jurisdiction.

4.       On the contrary, the Committee Objection is filled with rhetoric and does not offer any evidence or legal authority to support the Creditors' Committee's bald assertions. The Committee Objection is premised on a hypothetical financing package that does not exist. The Creditors' Committee would like to cherry-pick and have the Court approve the proposed financing terms that are beneficial to the Committee's interests while rejecting any terms that are not.   That obviously is not the law.   The issue before the Court is whether this *integrated* financing and adequate protection package should be approved as a whole.  It clearly must be.

5.       Most of the Committee Objection is directed to the proposed Rollup (as defined below) and adequate protection package.[3]  In particular, the Committee argues that such

---

[3] A chart summarizing the issues raised in the Committee's Objection not addressed in the body of this reply and the Debtors' responses thereto is attached hereto as **Annex A**.

protections prejudice unsecured creditors because they create liens on previously unencumbered collateral and obligate previously unobligated entities for the entire pre- and postpetition amount of the DIP ABL Facility.  But the Committee ignores a number of key points that clearly demonstrate the flaws in the Committee's position and why it must be overruled:

- *First*, there is no undue prejudice to unsecured creditors because, among other reasons discussed below, (a) the Prepetition ABL Obligations were oversecured on the Commencement Date, and as a result, the Prepetition ABL Lenders have not improved their position *vis-à-vis* unsecured creditors and (b) the Prepetition ABL Facility is an asset-based lending facility that, with respect to the revolver, would naturally roll (or "creep") as funds are borrowed, repaid (or swept because of cash dominion) and re-borrowed.

- *Second*, all of the Debtors (not just the prepetition obligors) benefit from the availability of the DIP ABL Facility, as the funds will be used to administer all of the Debtors' chapter 11 estates and maximize value for all creditors, including the creditors of Debtors that were not prior obligors.  Similarly, the DIP ABL Lenders consented to a carve-out for the payment of professional fees and expenses that will benefit all of the Debtors.

- *Third*, the Rollup is an essential part of the bargain struck between the Debtors and the DIP ABL Lenders in exchange for providing critical new financing. The DIP ABL Lenders would not agree to provide such new financing, increase the advance rate under the borrowing base formula from effectively 70% to 87.5%, or consent to use of their cash collateral absent the Rollup.  Simply stated, without the Rollup, there is no debtor in possession financing available.

- *Fourth,* to mitigate (and potentially eliminate) any harm to unsecured creditors, the DIP ABL Lenders have made a number of concessions, including that the first $200 million of proceeds of Previously Unencumbered Collateral will be used to fund the Winddown Account that will be available exclusively for the Debtors' estates.  The DIP ABL Lenders have also agreed to marshalling so that proceeds of Previously Unencumbered Collateral will be placed in a cash account and applied to DIP ABL Obligations only in the event that substantially all of the Prepetition ABL Collateral has been liquidated and proves to be insufficient to satisfy the ABL Lenders.

- *Fifth*, in accordance with the Local Rules governing rollups in this Court and the Proposed DIP ABL Final Order, the Rollup can be undone if the Prepetition ABL Obligations are successfully challenged.

WEIL:\96808680\9\73219.0006

6.      The remaining DIP Objections have largely been addressed by the modifications to the proposed final order or should be overruled for the reasons stated below. They can be summarized as follows:

- objections by certain of the Debtors' landlords to granting liens on the Debtors' leases and other lease-related matters (such objections, the "**Landlord Objections**"), which have been addressed through modifications to the proposed final order (see Proposed DIP ABL Final Order ¶¶ 13, 38);

- objections by certain vendors, implicating consignment, setoff and recoupment, or reclamation issues (collectively, the "**Vendor Objections**"), which have been addressed through modifications to the proposed final order (see Proposed DIP ABL Final Order ¶¶ 59-61);

- objections by certain governmental authorities of the State of Texas (the "**Texas Taxing Authorities**"), which have been addressed through modifications to the proposed final order (see Proposed DIP ABL Final Order ¶ 62);

- several additional objections disputing or seeking clarification with respect to the lien priority of the objecting parties' liens on various of the Debtors' assets *vis-à-vis* the liens to be granted under the Proposed DIP ABL Final Order (collectively, the "**Lien Priority Objections**"); and

- several additional parties filed objections reserving their rights with respect to issues implicated by the relief sought in the Motion ("**Reservation of Rights Objections**").

7.      A summary of the objections and the Debtors' responses thereto are listed in **Annex B**, attached hereto.  The Debtors have also attached a proposed order granting the relief requested in the Motion as to the ABL DIP Facility on a final basis (the "**Proposed DIP ABL Final Order**") as **Exhibit A** hereto and a redline marked against the Interim DIP ABL Order as **Exhibit B** hereto.  In addition, the Debtors rely on the declarations of Robert A. Riecker (the "**Supplemental Riecker Declaration**") and Brandon Aebersold (the "**Supplemental Aebersold Declaration**") filed contemporaneously herewith in support of the relief requested by the Motion.

4

I.      **The Committee Objection Should be Overruled**

      A.      **The Rollup Is Appropriate**

      8.      The Committee argues that the rollup of the Prepetition ABL Obligations (the "**Rollup**") is overbroad and that granting (a) joint and several superpriority claims against Debtors that were not obligated under the Prepetition ABL Facility and (b) liens on previously unencumbered assets should not be permitted.   Committee Objection ¶¶ 1, 28-32.   The Committee's argument fails to acknowledge the reality of the Debtors' operations and the structure of the proposed financing.   The Committee also is incorrect with respect to the applicable law.   As indicated below, there is ample precedent in this district and others that supports approving postpetition financing on similar terms.

      *(i)*      *The Rollup Complies with Applicable Law.*

      9.      First and foremost, the DIP ABL Facility and the Rollup satisfy the relevant legal standard for approval of debtor in possession financings.   The Rollup and the related provisions are an appropriate exercise of the Debtors' sound business judgment.   *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purposes is not so much to the benefit the estate as it is to benefit parties in interest.").   The Debtors simply were unable to secure reasonable financing without such a provision.   Absent the DIP ABL Facility, the Debtors would have been forced to liquidate their enterprise right out of the gate with no opportunity to even attempt to reorganize or maximize value through a deliberate value maximizing sale process.

10.     In addition, the standard applicable when evaluating the relief sought under the Motion is whether the terms of the postpetition financing are "fair and reasonable" under the circumstances.  The terms of the DIP ABL Facility are the best terms available for the Debtors to access senior postpetition financing.  Moreover, while the Committee has sought to cherry pick provisions of the DIP ABL Facility with which they do not agree, the law does not require that every term of the proposed financing be optimal.  *In re Farmland Indus., Inc.,* 294 B.R. 855, 866 n.7 (Bankr. W.D. Mo. 2003); *see also In re Ellingsen MacLean Oil Co.,* 65 B.R. 358, 365 (W.D. Mich. 1986), *aff'd,* 834 F.2d 599 (6th Cir. 1987).  Indeed, courts have held that even debtor in possession financing that contains unfavorable terms can satisfy the fair and reasonable standard:

> Some of the terms of the bargain reached between the debtor and creditor may reach beyond the usual terms of a loan agreement. However, such terms are perfectly normal considering the 'unusual' situation of a bankrupt firm. In such situations the bankruptcy court would rightfully be more interested by the requirements and provisions of section 364 of the Code, than it would be by a picayune examination of every legal argument that could be brought against separate provisions of the proposed agreement.

65 B.R. at 365.  Furthermore, "[i]t is not impermissible for a bank to use its superior bargaining power to obtain creditor-favorable terms in a financing agreement." *In re Farmland Indus., Inc.,* 294 B.R. at 886 (citation omitted).  Here, the Debtors have demonstrated not only that the terms of the proposed DIP ABL Facility are the only terms available, but also that these terms are fair and reasonable in the circumstances of these chapter 11 cases.

11.     Moreover, contrary to the Committee Objection, rollups are not *per se* prohibited and are indeed contemplated by the Local Rules in this district.  *See* S.D.N.Y. Bankr. L. R. 4001-2(a)(7), (g)(5).  Rollups featuring similar elements as the Rollup in these cases have been approved in chapter 11 cases in this and other jurisdictions.  *See, e.g.*, *In re Uno Rest.*

*Holdings Corp.*, Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 18, 2010) (ECF No. 156) (final order approving the inclusion of previously unencumbered assets as part of DIP collateral, including proceeds of all lease and leasehold interests, proceeds of any and all lawsuits or causes of action, and avoidance actions); *In re Westmoreland Coal Co.*, Case No. 18-35672 (MI) (Bankr. S.D. Texas, Nov. 15, 2018) (ECF No. 520) (final order approving the inclusion of previously unencumbered assets,  including proceeds of avoidance actions, as part of DIP collateral); *In re Brookstone Holdings Corp.* Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 30, 2018) (ECF No. 278) (final order approving the inclusion of previously unencumbered assets as part of DIP collateral, including previously unencumbered avoidance actions, commercial tort claims, and the debtors' leasehold interests); *In re Rockport Co., LLC*, Case No. 18-11145 (LSS) (Bankr. D. Del. June 29, 2018) (ECF No. 320) (final order approving the inclusion of previously unencumbered property as part of DIP collateral, including interest in non-obligor debtor entities and subsidiaries of those entities, with a nonpossessory pledge from the non-obligor debtors securing the DIP loans); *In re The Standard Register Co.*, Case No. 15-10541 (BLS) (Bankr. D. Del. Apr. 16, 2015) (ECF No. 290) (final order approving the inclusion of previously unencumbered property as part of DIP collateral, including interests in and assets of non-obligor entities).

12.     Furthermore, the cases cited in the Committee's Objection in opposition to the Rollup either are non-binding on this Court or do not support the propositions for which they are cited or both. Specifically, *Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co. Inc.)*, 963 F.2d 1490 (11th Cir. 1992) (disallowing cross-collateralization) is non-binding on this Court and directly contradicts case precedent and the Local Rules in this District. In *Official Comm. of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*, 322 B.R. 560, 569 n.4

WEIL:\96808680\9\73219.0006

(M.D. Pa. 2005), the court simply noted that cross-collateralization and rollups have the effect of improving the priority of a prepetition creditor without expressing an opinion on whether such clauses are acceptable and distinguishing the issue at hand stating: "[t]hese analogies [to cross-collateralization clauses and rollups] have little relevance to the instant case." *Id*. In *In re Tenney Vill. Co.,* 104 B.R. 562, 570 (Bankr. D.N.H. 1989), the court held that section 364 does not authorize granting administrative expense priority for the unsecured portion of the prepetition secured debt—not something that is being attempted here and an important detail that the Committee failed to mention. Finally, *in Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017), the Supreme Court did not in any way, as the Committee boldly suggests, purport to set out the requirements for an acceptable rollup. Instead, the Supreme Court noted that, as is the case here, "one can generally find significant Code related objectives" in cases where rollups are approved, and that, in such instances, the approving courts "have usually found that distributions at issue would enable a successful reorganization and make even the disfavored creditors better off." *Id*. (internal citations omitted).

(ii)        *The Rollup Does Not Unfairly Prejudice Unsecured Creditors.*

13.        In addition to satisfying the applicable law, as a practical matter, there is no material impact on unsecured creditors by the Rollup because (i) the Prepetition ABL Obligations are oversecured and (ii) the Prepetition ABL Facility contains a revolving credit facility that would naturally convert (or "creep") into postpetition obligations secured by postpetition collateral within a short period.

14.        The Prepetition ABL Facility was secured by certain of the Debtors' most liquid assets (cash, inventory, credit card accounts receivable, pharmacy receivables). As stated in the Supplemental Riecker Declaration, around the Commencement Date, Prepetition ABL Collateral was valued at approximately $2.8 billion (of which the net orderly liquidation value

("**NOLV**") of the Debtors' inventory was valued at about $2.74 billion) with approximately $1.53 billion borrowed against it under the Prepetition ABL Facility. *Id.* ¶ 8. Accordingly, absent some unforeseen circumstances, the Debtors should be able to satisfy the DIP ABL Facility from the proceeds of the original Prepetition ABL Collateral without resorting to the proceeds of previously unencumbered collateral so long as the Debtors have the time and liquidity to run an orderly and value-maximizing process. *Id.*

15.    Separately, prior to the commencement of these chapter 11 cases and today, the Debtors are in cash dominion.[4] In the event that an alternative financing were extended, as part of the adequate protection package for an ABL facility, the Prepetition ABL Lenders would have sought, and would have been entitled to, remain in formula under their borrowing base, and the ability to exercise cash dominion to maintain such formula. In that case, even without the Rollup, the Prepetition ABL Agent would sweep all cash, and subsequent re-borrowings would create new (postpetition) obligations. During the first five weeks of these chapter 11 cases, the Debtors have realized approximately $210 million in average weekly receipts. Supplemental Riecker Declaration ¶ 10. Based on that schedule, the Prepetition Revolver should be repaid in approximately four to six weeks. *Id.* Therefore, even without the Rollup, at least with respect of the Prepetition Revolver, a rollup would "creep-up" naturally and substitute approximately $836 million in prepetition obligations with postpetition obligations. While the Prepetition ABL Term Facility would not be subject to this same "creep-up" mechanic, the collateral and guarantee agreement governing the repayment of the Prepetition ABL Facility requires that, after an Event of Default, such as a bankruptcy filing, repayments of

---

[4] During the interim period, the revolver component of the Prepetition ABL Facility (the "**Prepetition Revolver**"), totaling approximately $836 million, has remained frozen. Upon entry of the Proposed DIP ABL Final Order, the cash sweeping mechanism described above will be reinstated and any accumulated cash will be used to repay the outstanding balance on the Prepetition Revolver.

WEIL:\96808680\9\73219.0006

principal and interest must be allocated pro rata as between the Prepetition ABL Revolving Facility and the Prepetition ABL Term Facility. As such, while the Prepetition Term Facility would not "creep up", it is possible that, even absent the Rollup, some or all of the Prepetition ABL Term Facility would be repaid postpetition. At the same time, the Prepetition ABL Facility Agent could not extend the Rollup only to the Prepetition Revolver lenders and exclude the prepetition term loan lenders or the letters of credit providers under the terms of the Prepetition ABL Credit Agreement.

16.     In addition, as the Prepetition ABL Collateral is being sold postpetition in the ordinary course of the Debtors' operations, the collateral base securing the Prepetition ABL Facility (even without a formal Rollup) would be sold off, and new (postpetition) collateral would be substituted in its place. Simply put, in the ordinary course the Debtors regularly sell off their inventory and replace it with new inventory in the non-GOB stores. Supplemental Riecker Declaration ¶ 11. The rate at which specific inventory turns over varies by item— appliances, for example, turn over much more quickly than jewelry—but on average the Debtors turn over their inventory once every 26 weeks. This means that by approximately mid-March, almost the entire Prepetition ABL Facility will have been fully secured by postpetition collateral. In light of these mechanics, it is evident that any improvement in the position of the Prepetition ABL Lenders is marginal and is strongly mitigated by the "reverse marshaling" concept, the funding of the Winddown Account, and the Carve Out.

(iii)     *All Debtors (not just Prior Obligors) and their Estates Benefit from the DIP ABL Facility.*

17.     The Committee's focus on obligors versus non-obligors also misses the mark. The Debtors operate a complex and interconnected enterprise where each component is operationally and financially dependent on the others. Those Debtors that were prepetition

obligors do not operate in separate silos from those that were not. The non-obligors benefit from the Prepetition ABL Lenders' willingness to provide postpetition financing (and consent to use of cash collateral) to the same extent as the prepetition obligors. For example, as discussed in the Riecker Declaration, Innovel Solutions, Inc. ("**Innovel**"), a Debtor that was not an obligor under the Prepetition ABL Facility, operates a separate logistics business that provides delivery and distribution services to third party vendors, such as Amazon, Costco, Home Depot and others. Innovel depends on the operational support and cash management system of the obligors under the Prepetition ABL Facility in its every day operations. Innovel also utilizes distribution centers owned and/or operated by other Sears entities. Without the funding made available under the DIP ABL Facility, Innovel would be unable to conduct its day-to-day operations. Supplemental Riecker Decl. ¶ 12. Similarly, certain Debtor entities that own real estate and were not obligated under the Prepetition ABL Facility rely on the obligors to pay maintenance and taxes used in Sears' operations. Such entities, too, would be unable to continue without access to funds under the DIP ABL Facility or the Prepetition ABL Credit Parties' cash collateral. *Id.* In sum, the non-obligors' estates would face difficulties, if not certain liquidation, if they were to be left to fend for themselves without the financial support that has been provided through the DIP ABL Financing, including the provision of $300 million in new money financing, an increase of the advance rate under the borrowing base formula to 87.5%, and consent to use cash collateral.

18.    In addition, the Carve-Out (funded primarily from the DIP ABL Collateral), the Winddown Account, and segregated Cash Collateral Account (which will be established to hold the proceeds from previously unencumbered assets after the Winddown Account is fully funded and which will not be drawn until the DIP ABL Facility and the Junior DIP Financing are repaid) —all benefit the estates of *all* the Debtors.

*(iv)*      *The Debtors Negotiated Key Concessions to Minimize*
*Impact of the Rollup.*

19.      In addition, the Debtors have negotiated significant concessions from the DIP ABL Lenders that minimize the potential impact of the Rollup on the Debtors and their estates.  Specifically, the DIP ABL Lenders have agreed to look first to the proceeds of the Prepetition ABL Collateral to repay the obligations under the DIP ABL Facility.  The DIP ABL Lenders will seek repayment from the proceeds of the previously unencumbered collateral only to the extent that the proceeds of the Prepetition ABL Collateral will be insufficient to repay the entire DIP ABL Facility outstanding at the time when it has to be repaid.  In effect, the DIP ABL Lenders will use the proceeds of the previously unencumbered assets only to the extent of the diminution of the aggregate value of their prepetition collateral.

20.      Moreover, unsecured creditors are not prejudiced because if the liens of the Prepetition Credit Parties are successfully challenged, the Rollup can be unwound.  *See* Proposed DIP ABL Final Order ¶ 5; S.D.N.Y. Bankr. L. R. 4001-2(g)(5).

21.      The Rollup also will save the Debtors' estates money because the default rate of interest under the Prepetition ABL Loan Documents is higher than the rate of interest under the DIP ABL Facility.  See DIP ABL Credit Agreement at Sec. 2.08.

*(v)*      *The Rollup Was Heavily Negotiated*

22.      Finally, as stated in the Motion, at the first day hearing and in the Supplemental Aebersold Declaration, the Rollup was a necessary condition to the Prepetition ABL Lenders agreeing to provide postpetition financing.  The DIP ABL Lenders agreed to provide incremental liquidity of $300 million and increased the advance rate under the borrowing base formula from approximately 70% (after giving effect to an availability blocker that applied prepetition) to 87.5%, thus increasing their exposure risk.  The DIP ABL Lenders

12

were not willing to provide new-money commitments without the Rollup. Supplemental Aebersold Decl. ¶ 11. The Rollup is needed to protect the DIP ABL Lenders for their willingness to incur this incremental credit risk. In addition, no prepetition loans will roll into DIP ABL Obligations unless the holder of those prepetition obligations provides its pro rata share of new money DIP ABL Facility (such opportunity to provide commitments to be offered to the Prepetition Revolver and ABL Term Loan lenders). *Id*.

23.     Despite the Debtors' widely-known liquidity needs and despite the Prepetition ABL Lenders' position in the Debtors' capital structure, the DIP ABL Lenders have never adopted a "take-it-or-leave-it" approach with respect to the DIP ABL Credit Agreement negotiations. In fact, quite the opposite. As even a cursory review of the Proposed DIP ABL Final Order reveals, the DIP ABL Lenders have incorporated numerous comments from parties in interest, and made concessions to resolve the vast majority of formal and informal objections raised to the DIP ABL Facility, including a number of those issues raised by the Committee. Indeed, through negotiations, the Rollup has itself evolved, first by introduction of the Winddown Account and then again by inclusion of the "reverse marshaling" concept.

24.     Moreover, as part of their efforts to market the DIP financing, the Debtors' investment banker, Lazard Frerez & Co., approached nine parties to discuss the possibility of providing senior DIP financing. Ultimately, the process did not result in any executable proposals on terms more favorable than those offered by the DIP ABL Lenders or were reasonably executable under the circumstances. Supplemental Aebersold Decl. ¶ 9.

### B.     Terms of Adequate Protection Are Warranted

25.     The Committee also objects to the adequate protection proposed to be given to the Prepetition ABL Lenders. Committee Objection ¶¶ 2, 37-41. Specifically, the Committee objects to replacement liens on all assets, including previously unencumbered

WEIL:\96808680\9\73219.0006

collateral. *Id.* ¶ 37. The Committee cites no binding or factually-applicable case law to support any of these arguments. For the same reasons as expansion of the DIP ABL Facility collateral base is warranted under the Rollup, the cross-collateralization is appropriate in this case. All of the Debtors' estates benefit from the use of the Prepetition ABL Lenders' cash collateral.

26.      Contrary to the Committee's arguments, expanding adequate protection liens to previously unencumbered collateral is not prohibited, but instead is an accepted mechanic to compensate prepetition lenders for the increased risk against their collateral that they bear in a chapter 11 case. *See, e.g., In re AppliedTheory Corp.*, 02-11868 (REG), 2008 WL 1869770, at *1 (Bankr. S.D.N.Y. Apr. 24, 2008) ("[The unencumbered] assets can thereafter be encumbered (or made available to satisfy superpriority claims claims), if necessary to provide adequate protection. That's expressly authorized under section 361(2).").[5]

27.      Furthermore, as explained above, under the "reverse marshalling" mechanic, the DIP ABL Lenders have agreed to be repaid first from the proceeds of the Prepetition ABL Collateral and only to look at previously unencumbered collateral to the extent of the *aggregate* diminution of the Prepetition ABL Collateral. At the same time, the expansion of the adequate protection collateral base was a necessary component of the Prepetition ABL Lenders' agreeing to support the Debtors in their chapter 11 cases.

## C.    Other Issues Raised in Committee's Objection Are Inconsistent with Precedent and Inappropriate under the Circumstances

28.      <u>Intercompany Obligations</u>. The Committee requests that all Postpetition Intercompany Obligations be senior to the DIP ABL Secured Obligations and the Adequate Protection Claims and subordinate only to the DIP Liens. Committee's Objection ¶¶ 42-45. The

---

[5] In fact, in the *AppliedTheory* case, the court noted that it was "surprised to see the Creditors' Committee arguing that under no circumstances could the Lenders have a claim on the proceeds of avoidance actions and other initially unencumbered assets …" *Id.* The Committee makes the same argument here.

Committee cites no precedent to support its request.  Such subordination of the negotiated superpriority administrative expense claims of their secured lenders is inconsistent with the spirit of the Bankruptcy Code and may result an inappropriate transfer of value between various Debtors' estates.  As discussed above, each estate benefits from the Carve Out, the Winddown Account and other elements of the DIP ABL Financing.  In exchange, the DIP ABL Lenders and the Prepetition ABL Credit Parties receive, among other things, superpriority claims subordinate only to the Carve Out and certain senior and junior liens with respect to certain collateral, a customary protection present in virtually every senior debtor in possession financing.  The Committee's Objection articulates no rationale as to why such an unusual subordination as the one proposed therein is appropriate under the circumstances.  Additionally, the DIP ABL Facility has claims at all entities and liens on all intercompany receivables.  Therefore, so long as the intercompany claims are afforded administrative expense status, value will continue to be allocated properly among the Debtors' estates.

29.     The Committee also argues that the Postpetition Intercompany Obligations should bear interest at the same rate as the DIP ABL Facility and be secured by a postpetition priming lien.  *Id.*   There also is no justification provided for charging a uniform rate of interest on all Postpetition Intercompany Claims at the same rate as the DIP ABL Facility.  The Debtors need to continue to operate their cash management system in the ordinary course.  The use of an arbitrary interest rate for intercompany transfers could have negative tax and/or accounting consequences, which the Committee ignores.  In any case, the treatment of the Postpetition Intercompany Claims and the rate of interest, if any, is not an issue that needs to be prejudged and decided in a vacuum at the Final Hearing.  It is more properly addressed in the context of a chapter 11 plan.

30. <u>Avoidance Actions</u>. The Committee further argues that proceeds from the avoidance actions should be preserved for the benefit of the unsecured creditors. Committee Objection ¶¶ 46-48. The Committee is correct that there is no *per se* rule prohibiting a debtor from pledging avoidance actions or their proceeds as collateral for postpetition financing or as adequate protection. *Id.* ¶ 47. The proceeds from avoidance actions are simply unencumbered collateral that the Debtors have decided, in their business judgment, to pledge to secure fresh funding needed to maximize the value of their assets. Indeed, courts frequently grant postpetition liens on the proceeds of avoidance actions. *See*, *e.g.*, *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y, April 5, 2018) (ECF No. 238) (granting postpetition liens on the proceeds of avoidance actions and deploying a similar reverse marshalling mechanic); *AppliedTheory*, 2008 WL 1869770, at *1 (holding that the pledge of proceeds of avoidance actions by a debtor is permissible). As stated above, the reverse marshalling mechanism should provide the Committee comfort that the majority, if not all of the DIP ABL Lenders' claims, will be satisfied from the proceeds of the collateral other than previously unencumbered collateral, including the avoidance actions.

31. <u>Milestones</u>. The Committee further argues that the covenants and milestones provide DIP ABL Lenders with undue control over chapter 11 cases and generally suggesting that the milestones may be tripped by events outside the Debtors' control or by the Debtors in the exercise of their fiduciary duties. Committee's Objection ¶¶ 3, 49. The Debtors and the DIP ABL Lenders have negotiated the covenants and milestones as part of the overall financing package that is designed to benefit the Debtors, each of their estates, and their creditors. Milestones related to GOB sales are customary in debtor in possession financing, particularly in retail cases. The Go Forward Plan balances two key considerations: (i) keeping

the going concern options on the table and (ii) acting expeditiously to "stop the bleeding" with respect to money-losing stores. The milestones are in line with the Debtors' projections and line up with the Debtors' strategic plan and timeline. In addition, the proposed milestones did not deter or chill the Debtors' efforts to obtain Junior DIP Financing.

32.    As is evident from other pleadings that the Committee filed in these cases, the Committee believes that these cases need to proceed quickly to minimize the administrative expenses of the Debtors' estates. To that end, the DIP ABL Credit Parties have already been flexible with the milestones in recognition that, in some instances, they may be outside the Debtors' control. To date, the DIP ABL Agents have consented to the extension of certain milestones related to the entry of the Proposed DIP ABL Final Order and the commencement of certain GOB sales. Similar milestones are routinely approved in connection with DIP financing in other chapter 11 cases. *See, e.g., In re BCBG Max Azria Glob. Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 28, 2017), ECF No. 228, at ¶¶ 81–83); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW) (Bankr. D. Del. Mar. 12, 2018), (ECF No. 352-2;) *In re dELiA*s, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. January 9, 2015), (ECF No. 140-1, at ¶¶ 82–84).

33.    The Committee's remaining objections are addressed in **Annex B** and, to the extent not addressed by the Proposed DIP ABL Final Order, should be overruled for the reasons set forth herein.

## II.    Response to Other Parties' Objection to DIP Financing

### A.    Landlord Objections

34.    Several objecting landlords filed formal objections or reached out to the Debtors contesting the Debtors' ability to grant the DIP ABL Lenders liens on the Debtors' leases (not just lease proceeds). After consultation with the DIP ABL Lenders, the Debtors have

WEIL:\96808680\9\73219.0006

incorporated the following language to the definition of "DIP ABL Collateral" in the Proposed

DIP ABL Final Order to address such objections:

> *provided, that* DIP ABL Collateral excludes any of the following
> (collectively, the "Excluded Property"): (i) leases of real property
> except as permitted in the applicable lease or pursuant to
> applicable law (but in no event shall DIP ABL Collateral exclude
> the proceeds of such leases); *provided*, *however*, in the event that
> the Debtors subsequently seek by separate motion and obtain by
> final order liens on all of their leases of real property in connection
> with a debtor-in-possession financing facility other than the DIP
> ABL Facility (including in connection with the Junior DIP
> Facility), the DIP ABL Collateral shall include all leases of real
> property and the DIP ABL Liens and Adequate Protection Liens
> shall be first in priority and senior to any other liens thereon.

Proposed DIP ABL Final Order ¶ 13.

35.    In addition, two landlords (ECF Nos. 720, 755) object to the remedies

provision of the Proposed DIP ABL Final Order.  As proposed, the  Prepetition ABL Agents'

exercise of remedies with respect to real property leases shall be subject to:

> (i) any agreement in writing between any of the DIP ABL Agents
> or the Prepetition ABL Agents, as applicable, and any applicable
> landlord, (ii) pre-existing rights of any of the DIP ABL Agents or
> any of the Prepetition ABL Agents, as applicable, and any
> applicable landlord under applicable non-bankruptcy law, (iii)
> consent of the applicable landlord, or (iv) further order of the Court
> following notice and a hearing

Proposed DIP ABL Final Order ¶ 38.

36.    The Debtors believe that the proposed language provides the landlords

with sufficient and customary protections.  Based on the above, to the extent any of the Landlord

Objections remain outstanding, they should be overruled.

### B.    Vendor Objections

37.    Generally, the Vendor Objections fall into one of three categories.  First,

vendors that were parties to valid prepetition consignment agreements with the Debtors (the

WEIL:\96808680\9\73219.0006

"**Consignment Vendors**") objected to priming liens on the proceeds of the Consignment

Merchandise. On October 26, 2018, the Court entered *Interim Order Approving (I) Procedures*

*For Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (ECF No.

337) (the "**Interim GOB Order**"), which reflected, on a final basis, a compromise between the

Debtors, the DIP ABL Lenders and the Consignment Vendors with respect to the Consignment

Merchandise sold postpetition. All parties' rights with respect to the proceeds of the

Consignment Merchandise sold prior to the Commencement Date were preserved. The Debtors

believe that the proceeds of the Consignment Merchandise are not held in trust, but rather were

commingled and became part of the Prepetition ABL Lenders' cash collateral subject to the

applicable Uniform Commercial Code rules, assuming the vendors' interests were properly

perfected. To the extent certain Vendor Objections (ECF Nos. 51, 733, 781 and 808) relate to

the payment of such proceeds, all parties' rights continue to be preserved, and need not be

litigated at this time to approved the proposed DIP ABL Facility.

38.     Second, certain vendors alleging setoff and recoupment rights against the

Debtors objected on the basis that such rights were being primed by the liens granted under the

Interim DIP ABL Order. To address this category of objections, the Debtors, the DIP ABL

Lenders and various objectors agreed on the following language reflected in paragraph 59 of the

Proposed DIP ABL Final Order:

> Except as specifically set forth in paragraph 41(d) with respect to
> the Prepetition ABL Obligations, notwithstanding anything to the
> contrary in this Final Order, nothing herein is intended to, and shall
> not: (a) waive, modify, prejudice, limit or otherwise impair the
> right of any party to exercise rights of setoff or recoupment, if any,
> under the Bankruptcy Code (including, without limitation,
> pursuant to section 553 of the Bankruptcy Code) or any other
> applicable non-bankruptcy law, subject, however, to section 546(c)
> of the Bankruptcy Code, (b) provide any party with any greater or
> lesser setoff or recoupment rights, if any, than they would have

under the Bankruptcy Code or any other applicable non-bankruptcy law, or eliminate the need to seek relief from the automatic stay where required before exercising any such rights, or (c) waive, modify, prejudice, limit or otherwise impair any defenses or objections of the DIP Agents or any of the other DIP Credit Parties, the Prepetition ABL Agents or any of the other Prepetition ABL Credit Parties, the Debtors and any other party in interest to such setoff and recoupment rights or the exercise thereof

39.      The third sub-group of vendor objections relates to the priority of the vendors' reclamation claims, specifically in the event that the liens of the Prepetition Credit Parties are successfully challenged.  The Debtors, the DIP ABL Lenders and certain objecting vendors agreed on the following language as reflected in paragraph 61 of the Proposed DIP ABL Final Order:

To the extent a seller of goods (a "Reclamation Creditor") asserts rights of reclamation pursuant to and in accordance with both section 2-702(2) of the Uniform Commercial Code (the "UCC") and section 546(c) of the Bankruptcy Code (each a "Reclamation Claim" and, collectively, the "Reclamation Claims") requesting that the Debtors return certain goods identified in the Reclamation Claims (the "Reclamation Goods"), the rights of such Reclamation Creditor (the "Reclamation Rights") in either Reclamation Goods or the proceeds thereof (the "Reclamation Proceeds") and the priority of such Reclamation Rights as against any other interest in the Reclamation Goods or the Reclamation Proceeds shall be preserved solely to the extent a Challenge Proceeding with respect to the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations has been successfully brought in compliance with the provisions of this Final Order and determined by an order entered by the Bankruptcy Court that becomes final and non-appealable; *provided that* in no event shall any alleged Reclamation Claim or Reclamation Right be deemed or treated hereunder as a Permitted Prior Lien rather, any such alleged Reclamation Claim or Reclamation Right shall have the same rights and priority with respect to the DIP ABL Facility, DIP ABL Liens and DIP ABL Collateral as such rights and claims had with respect to the Prepetition ABL Facilities, Prepetition ABL Liens and Prepetition ABL Collateral.  Notwithstanding anything herein to the contrary, nothing herein shall determine, or be deemed a determination of the validity or extent of any Reclamation Rights or Reclamation

20

Claims and all parties rights with respect thereto are expressly reserved.

40.     To the extent any reclamation-related objections remain outstanding, they preserve the objectors' rights with respect to the Interim Junior DIP Order.

### C.    Objections of Texas Taxing Authorities

41.     Because the State of Texas imposes ad valorem taxes on personal property, various Texas Taxing Authority filed objections (ECF Nos. 526 and 570) opposing priming liens on their tax liens and seeking adequate protection.  The Debtors, the DIP ABL Lenders and the Texas Taxing Authorities have agreed to include the following language to the Proposed DIP ABL Final Order (at paragraph 62), which resolved the Texas Taxing Authorities' objections:

> As adequate protection for the claims of the Specified Governmental Units, the Debtors either will pay such claims directly or fund a segregated account (the "Specified Governmental Units Account"), in each case from the proceeds of the Store Closing Sales located in the jurisdictions subject to the authority of the Specified Governmental Units.  The liens asserted by the Specified Governmental Units shall attach to the Specified Governmental Units Account in the same amount, to the same extent and with the same priority, validity and enforceability, and subject to the same defenses, as the liens the Specified Governmental Units now have against such assets of the Debtors. The Specified Governmental Units Account shall be maintained solely for the purpose of providing adequate protection and shall constitute neither the allowance of the claims of the Specified Governmental Units, nor a floor or cap on the amounts the Specified Governmental Units may be entitled to receive.  All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Specified Governmental Units are fully preserved.  Funds in the Specified Governmental Units Account may be distributed upon agreement between the Specified Governmental Units and the Debtors, with the consent of the DIP ABL Administrative Agent, or by subsequent order of the Court, duly noticed to the Specified Governmental Units.

WEIL:\96808680\9\73219.0006

### D.      Lien Priority Objections

##### (i)      Objections of Community School District Unit 300
##### (ECF Nos. 557 and 805)

42.     The limited objection of the Community School District Unit 300 (the "**School District**," and its limited objection, the "**School District Objection**") relates to an October 10, 2018 lawsuit filed by the School District against the Debtors in the Circuit Court of Cook County, State of Illinois seeking declaratory and other relief for alleged violations of the Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1, *et seq.* (the "**Illinois Sears EDA Act**" or the "**Act**," and the lawsuit, the "**School District EDA Litigation**").[6]   The Illinois Sears EDA Act provides certain subsidies to the Debtors and includes a requirement, which was added in connection with a 2012 amendment to extend the Act, that Sears "create or retain not less than 4,250 full-time equivalent jobs . . . ."  20 ILCS 620/4.  In its objection, the School District argues that it "believes . . . the Debtors have failed to maintain the statutorily required 4,250 jobs" and objects to the grant of priming liens upon any improperly distributed funds to the Debtors pursuant to the Act.  School District Objection ¶ 7.

43.     The Illinois Sears EDA Act was designed to incentivize Sears to relocate its headquarters from downtown Chicago to undeveloped prairie farmland in the Village of Hoffman Estates (the "**Village**"), where it is currently located.  Pursuant to the Illinois Sears EDA Act, the Village and the Debtor entered into an Economic Development Agreement, under which Sears received subsidies to reimburse it for the cost of building its corporate campus in the Village.  As intended, Sears' move to the Village spurred significant development around the Sears headquarters campus, and the Debtors continue to receive annual subsidy payments from

---

[6] A copy of the full text of the Illinois Sears EDA Act is attached hereto as **Exhibit C**.

the Village, most recently pursuant to a 2012 amendment to the Illinois Sears EDA Act, as discussed above.

44.    In the School District EDA Litigation, the School District alleges that during certain periods, Sears failed to "create or retain" the statutorily required number of "full-time equivalent jobs," yet the Village still remitted subsidiary payments.  20 ILCS 620/4.  As a result, the School District argues that the Village is entitled to recapture any such subsidiary payments from the Debtors pursuant to a recapture provision in the Act.[7]

45.    The School District objects to the grant of priming liens provided in the DIP Motion.  Specifically, according to the School District, "[f]unds improperly recaptured [sic] by the Debtor through the Illinois Sears EDA Act *may arguably* be held in a constructive trust." School District Objection ¶ 9 (emphasis added).  The School District further argues that:

> To the extent the aforementioned funds and proceeds of the same are deemed held in a constructive trust, the Debtors are not entitled to grant priming and other liens upon those funds.  At a minimum, the School District's interests and claims in those funds are senior to any liens or claims that the Debtor is seeking to grant pursuant to the DIP Motion.

School District Objection ¶ 10.

46.    The School District Objection is without merit.  First, even if the School District were to prevail in the School District EDA Litigation—against either the Debtors, the Village or both—at most it will receive a monetary judgment based on a transactions and occurrences that took place prior to the Commencement Date.  Accordingly, at best, the School District has a contingent, unliquidated general unsecured claim that is entirely dependent on the outcome of the School District EDA Litigation.

---

[7] The recapture provision was also added to the Illinois Sears EDA Act in connection with the 2012 amendment.

WEIL:\96808680\9\73219.0006

47.     Second, the School District cites no authority, and does not explain, how its alleged right to indirectly recapture payments previously made by the Village to Debtors under the Illinois Sears EDA Act could lead to the imposition of a constructive trust.  In this Circuit, imposition of a constructive trust against a chapter 11 debtor's estate requires a "substantial equitable reason"  *In re Ades & Berg Grp. Inv'rs*, 550 F.3d 240, 243 (2d Cir. 2008). The School District has not demonstrated that such a reason exists.

48.     Third, the School District EDA Litigation, which has been stayed by the automatic stay, is in its infancy (having been filed only five days before the Debtors commenced these chapter 11 cases), and numerous procedural, factual, and legal issues (including issues of standing) will have to be decided before any basis to recapture funds from the Debtors is established.[8]

49.     The School District further argues in its November 16, 2018 Supplement that, because Sears allegedly "failed to maintain the required number of jobs under the Illinois Sears EDA Act" as alleged in the School District EDA Litigation, there are "outstanding property taxes" owed to the Cook County Collector, the School District, and "every other local government taxing body as recipients of the overdue taxes that are to be distributed to the taxing districts."  Supplement to School District Objection ¶ 8.  The School District argues that these alleged outstanding "taxes"—along with any penalties, interest, and costs—constitute a prior and first lien on the assessed property, superior to all other liens and encumbrances, and due to the School District and the Cook County Collector pursuant to 35 ILCS 200/21-75[9].  *Id.* ¶¶ 4, 9.

---

[8] On November 12, 2018, the School District filed a motion for relief from the automatic stay to proceed with the School District EDA Litigation.

[9] A copy of the full text of the Economic Development Area Tax Increment Allocation Act is attached hereto as **Exhibit D.**

WEIL:\96808680\9\73219.0006

50.    This argument also is meritless.    The School District's attempt to mischaracterize subsidiary payments made by the Village to Debtors as reimbursement for development costs as "outstanding property taxes" has no basis in law.    The statute provides only for a prior and first lien on property taxes "until the taxes are paid."  35 ILCS 200/21-75.  The Illinois Sears EDA Act has never excused Debtors from paying property taxes; instead, it sets forth a mechanism for the Village to distribute funds made up of real estate taxes that have *already been paid* to the Village by Sears and others. *See* 20 ILCS 620/4(g).  Previously paid tax would not revert back to a lien against real estate under 35 ILCS 200/21-75 even if the Village *had* later made incorrect subsidiary payments to Debtors.  The School District cites no authority to the contrary.  For these reasons, the School District Objections must be overruled.

### Conclusion

51.    The failure to approve the DIP ABL Financing will jeopardize any chances for the Debtors to keep the possibility of a going concern sale or an alternative value maximizing proposition on the table, and will undoubtedly result in a liquidation.  The DIP ABL Facility is the most advantageous *senior* financing package available to the Debtors.  It is also the least expensive financing available because the only alternative, based on the Debtors' marketing efforts, would be a junior loan twice the size of the proposed Junior DIP Financing that would be significantly more expensive while still resulting in a substantial lien being placed on unencumbered property.  In addition, the terms of the use of the cash collateral are the only ones acceptable to the Prepetition ABL Lenders.  The Debtors and the DIP ABL Lenders have worked hard to negotiate the best possible runway to preserve value of their estates for the benefit of all stakeholders.  The DIP ABL Financing is absolutely necessary to afford the Debtors such an opportunity.  For these reasons, the DIP Objections should be overruled, and the Motion should be granted on a final basis.

WEIL:\96808680\9\73219.0006

WHEREFORE, the Debtors respectfully request that the Court overrule the

objections to the Motion and approve the Motion.


Dated: November 23, 2018
     New York, New York

/s/ Sunny Singh

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

## Annex A

**Committee' Objection Issues Chart**

| Issue No. | Committee's Objection | Response |
|---|---|---|
| **A. Objections Addressed in Proposed DIP ABL Final Order** | | |
| 1. | Diminution in value should be measured on an aggregate basis. | This comment has been implemented in the Proposed DIP ABL Final Order.  See, e.g., Proposed DIP ABL Final Order ¶ 17. |
| 2. | Postpetition interest should be recharacterized as principal or be subject to disgorgement to the extent received by a party who was undersecured. | Recharacterization of interest payments as principal has been implemented in the Proposed DIP ABL Final Order.  See Proposed DIP ABL Final Order ¶ 19(a):<br><br>"*provided* that in the event of a final determination that the Prepetition ABL Credit Parties are undersecured as of the Petition Date, payments received by the applicable undersecured Prepetition ABL Credit Parties pursuant to this clause (iv) may be recharacterized and applied as payments of principal"<br><br>Similarly, other rights to unwind the roll-up are preserved in the Proposed DIP ABL Final Order. See Proposed DIP ABL Final Order ¶ 5:<br><br>"Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge Proceeding by any party in interest in accordance with paragraph 41 hereof, this Court may unwind the ABL Roll-Up with respect to the applicable Prepetition ABL Obligations to the extent that (i) the ABL Roll-Up resulted in the conversion of any Prepetition ABL Obligations consisting of an unsecured claim or other claim or amount not allowable under Section 502 of the Bankruptcy Code into a DIP ABL Obligation, and (ii) such conversion unduly advantaged the applicable Prepetition ABL Credit Party." |
| 3. | 506(c), 552(b) and marshalling waivers should not apply to Prepetition Second Lien Parties and their collateral, as ESL holds over 70% of the second lien debt. | This concept has been implemented in the Proposed DIP ABL Final Order.  See Proposed DIP ABL Final Order ¶ J:<br><br>"Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Second Lien Obligation and/or Prepetition Second Lien Facilities Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Second Lien Obligation, Prepetition Second Lien Facilities Lien and/or security interests, *provided*, |

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | | *however*, no such challenge shall have any effect or impact on the Prepetition ABL Obligations or Prepetition ABL Liens, or any adequate protection granted to the Prepetition ABL Credit Parties. For the avoidance of doubt, solely after the payment in full of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Second Lien Obligations, Prepetition Second Lien Facilities Liens or Prepetition Second Lien Collateral." |
| 4. | 506(c), 552(b) and marshalling waivers should not apply to ESL. | This concept has been implemented in the Proposed DIP ABL Final Order, subject to the clarification that the waiver as to ESL does not affect the other Prepetition ABL Credit Parties. *See* Proposed DIP ABL Final Order ¶ K:<br><br>"Nothing herein shall constitute a finding or ruling by this Court in favor of ESL that any Prepetition Obligation and/or Prepetition Lien in respect of any Prepetition Obligations owned by ESL (collectively, the "ESL Debt") is valid, senior, enforceable, prior, perfected, or non-avoidable, *provided*, *however* there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to the terms of this Final Order. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged ESL Debt and/or related security interests, *provided*, *however* there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to the terms of this Final Order. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any ESL Debt or collateral securing any ESL Debt, in each case, after payment in full of all DIP ABL Obligations and Prepetition ABL Obligations not constituting ESL Debt. Nothing in this paragraph shall affect or impact the Prepetition ABL Obligations that are not owned by ESL or Prepetition ABL Liens securing such obligations, or any adequate protection granted to the Prepetition ABL Credit Parties other than ESL." |

2

| Issue No. | Committee's Objection | Response |
|---|---|---|
| 5. | Debtors' participation in Challenge Proceeding by merely providing discovery could result in an event of default. | This concept has been implemented in the Proposed DIP ABL Final Order.  See Proposed DIP ABL Final Order ¶ 40(j): "Notwithstanding anything herein, prior to indefeasible payment in full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, except as otherwise expressly provided in this Final Order, the DIP ABL Facility, the DIP ABL Collateral, the Cash Collateral, the Prepetition ABL Collateral, proceeds of any of the foregoing, and the Carve-Out may not be used: … to assert, commence, prosecute or support any claims or causes of action whatsoever, including any Avoidance Action, against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; *provided*, **that the foregoing shall not be construed to prohibit the Debtors from responding to discovery requests as required in their reasonable business judgment in consultation with legal counsel**;" |
| 6. | 506(c), 552(b) and marshalling waivers should not apply to Permitted Prior Liens. | This concept has been implemented in the Proposed DIP ABL Final Order, subject to the clarification that the consent of the DIP ABL Agents and the Prepetition ABL Agents (as applicable). See Proposed DIP ABL Final Order ¶ M: "Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP ABL Credit Parties, the Prepetition Credit Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Permitted Prior Liens, provided that the lack of such a waiver shall not adversely affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, provided, further that any attempts or efforts to invoke the provisions referenced in clauses (a) through (c) of this sentence shall be subject in all respects to the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents until the payment in full in cash of all DIP ABL Obligations and Prepetition ABL Obligations, respectively." |
| 7. | Acceptable Plan of | The DIP ABL Lenders have provided financing so that a plan that provides for the payment in full of |

WEIL:\96808680\9\73219.0006

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | Reorganization concept should be deleted. | their claims, which were oversecured as of the Petition Date, may be confirmed.<br><br>The Acceptable Plan of Reorganization concept is standard in DIP financings. *See generally, e.g.*, *In re Claire's Stores*, Case No. 18-10584 (MFW) (Bankr. D. Del. April 24, 2018), ECF No. 318-1 (approving, *inter alia*, acceptable plan milestone); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 9, 2016), ECF No. 523-3, at 130–31 (same).<br><br>Notwithstanding the precedent, the Debtors proposed the following change to the definition of Acceptable Plan of Reorganization:<br><br>"**Acceptable Plan of Reorganization**" means a plan of reorganization for each of the Chapter 11 Cases that (i) provides for the termination of the Revolving Commitments and the payment in full in cash and full discharge of the Obligations (including L/C Obligations and Obligations related to Bank Products and Cash Management Services) and Prepetition ABL Obligations at emergence, (ii) contains releases and**, to the extent permitted under applicable law,** other exculpatory provisions for the Credit Parties, Prepetition Credit Parties, the Joint Lead Arrangers and each of their respective affiliates in form and substance satisfactory to the Agent and the Co-Collateral Agents in their sole and absolute discretion and (iii) is otherwise in form and substance reasonably satisfactory to the Agent with respect to any provision related to the payment of Prepetition ABL Obligations or that may adversely affect the DIP Credit Parties and/or the Prepetition Credit Parties. |
| 8. | Debtors' stipulations should all carve out ESL. | This concept has been implemented in the Proposed DIP ABL Final Order.  See Proposed DIP ABL Final Order ¶ H(g):<br><br>"**Application to ESL**.  None of the Debtors' Stipulations shall apply to ESL Investments, Inc. or any of its affiliates (the "ESL Affiliates," and together with ESL Investments, Inc., "ESL")." |
| 9. | Liens on real property leases should be limited to their proceeds. | This concept has been implemented in the Final DIP Order.  Liens shall attach to leases only if allowed pursuant to applicable law or the lease. See Proposed DIP ABL Final Order ¶ 13:<br><br>"*provided that* (i) DIP ABL Collateral excludes leases of real property except as permitted in the applicable lease or pursuant to applicable law (but in no event shall DIP ABL Collateral exclude the proceeds of such leases) and (ii) notwithstanding the foregoing, in the event that the Debtors |

4

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | | subsequently seek by separate motion and obtain by final order liens on all of their leases of real property in connection with a debtor-in-possession financing facility other than the DIP ABL Facility (including in connection with the Junior DIP Facility), the DIP ABL Collateral shall include all leases of real property and the DIP ABL Liens and Adequate Protection Liens shall be first in priority and senior to any other liens thereon" |
| 10. | Provisions of the DIP order about Restructuring Committee's investigation should be modified to include the Committee's investigation. | This concept has been implemented in the Proposed DIP ABL Final Order.  See Proposed DIP ABL Final Order ¶ 42:<br><br>Notwithstanding anything to the contrary in the DIP Orders, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, none of the Debtors, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings **nor the Creditors' Committee** shall be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL Facility or the Carve-Out so long as it does not affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, in each case, other than ESL Investments, Inc. |
| 11. | Committee should receive all notices provided by or to the Debtors. | This concept has been implemented in the Proposed DIP ABL Final Order. See, e.g., Proposed DIP ABL Final Order ¶¶ 21(b), 22, 24. |
| 12. | Emergency hearing after Termination Notice should not be limited to determining whether a Termination Event has occurred. | This concept has been implemented in the Proposed DIP ABL Final Order. See, e.g., Proposed DIP ABL Final Order ¶ 34:<br><br>"During the Remedies Notice Period, the DIP ABL Loan Parties shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination **or for the contested use of Cash Collateral**, "provided that the sole issues that may be raised before the Bankruptcy Court at such emergency hearing are whether a Termination Event has occurred and/or is continuing and the contested use of Cash Collateral" |
| 13. | Permitted Debt clause of draft DIP ABL Credit Agreement | The proviso to clause (a) of Permitted Debt definition will be deleted. |

5

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | should not prohibit debt that is scheduled even if not permitted under Prepetition ABL Loan Documents. | |
| 14. | Modification of DIP ABL Loan Documents should require three business days' advance notice to the Committee. | This concept has been implemented in the Proposed DIP ABL Final Order with a reasonableness qualifier.  See Proposed DIP ABL Final Order ¶ 24:<br><br>"**Upon no less than three (3) business days' notice to the Creditors' Committee (only to the extent reasonably practicable)**, the DIP ABL Loan Parties and the DIP ABL Agents are hereby authorized, subject to the DIP ABL Loan Documents, to implement, in accordance with the terms of the respective DIP ABL Loan Documents, any amendments, waivers, consents or other modifications to or under the DIP ABL Loan Documents (including any change in the number or composition of the DIP ABL Lenders) without further order of this Court unless such amendment, waiver, consent or other modification (a) restricts, limits or prohibits any payments required pursuant to paragraph 19 of this Final Order, or (b) shortens the maturity or the scheduled termination date thereunder." |
| 15. | Challenge Period should be tolled by the filing of a motion to obtain standing to prosecute a challenge. | This concept has been implemented in the Proposed DIP ABL Final Order.  See Proposed DIP ABL Final Order ¶ 41:<br><br>"*provided that* in the event that the Creditors' Committee files a motion seeking standing to pursue a Challenge Proceeding against any Prepetition Credit Party by no later than on or before 60 days after entry of this Final Order, the Challenge Period shall be extended, solely with respect to the Challenge Proceeding for which the Creditors' Committee seeks standing, to the date that is the earlier of (i) two (2) days after the Court rules on such standing motion, and (ii) February 25, 2019" |
| 16. | Carve-Out should be modified to include Houlihan Lokey's success fee. | This modification will be implemented. |

6

| Issue No. | Committee's Objection | Response |
|---|---|---|
| **B. Open Issues (not addressed in the body of the Reply)** | | |
| 1. | Case milestones should be able to be modified by order of the Bankruptcy Court. | The Debtors do not believe that there is any legal basis for overriding the Debtors' business judgment with respect to the case milestones. Moreover, the DIP ABL Lenders would not extend credit without the certainty of the DIP milestones. Similar milestones are routinely approved in connection with DIP financing in other chapter 11 cases. *See generally In re BCBG Max Azria Global Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. March 28, 2017), ECF No. 228, at 81–83; *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW) (Bankr. D. Del. March 12, 2018), ECF No. 352-2; *In re dELiA*s, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. January 9, 2015), ECF No. 140-1, at 82–84. |
| 2. | Going concern sale milestone should be eliminated because it is too speculative. | The Go Forward Plan milestone with respect of the Going Concern Sale Process may be satisfied by any stalking horse bid, even if such bid does not contemplate a going concern and is instead a GOB equity bid. Therefore, the milestone is realistic and is consistent with the process the Court authorized the Debtors to pursue. As stated by the Court at the hearing on November 15, the Debtors will be soliciting going concern and GOB bids on parallel tracks. To the extent that an equity GOB bid is selected instead of a going concern bid, this milestone would be satisfied. |
| 3. | There should not be an event of default resulting from a successful Challenge Proceeding. | It is reasonable and customary for an event of default to occur if a challenge proceeding is successful and such order is not stayed. *See, e.g., In re Cenveo, Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. March 8, 2018), ECF No. 188-1, at 394 (approving order containing such provision); *In re 21st Century Oncology*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. May 26, 2017), ECF No. 31-1, at 98 (same). |
| 4. | Cash Management Order should be modified to provide the Committee with (i) weekly summaries with respect to Debtor transfers to non-Debtors, and (ii) 5 business days' advance notice | The Debtors are amenable to providing reporting to the Committee, but are evaluating what level is feasible. |

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | before a Debtor transfers more than $1 million to a non-Debtor. | |
| 5. | Permitted Variance should be modified to be a flat $50 million, rather than 15%. Moreover, permitted variance should not include professional fees. | The net cash flow permitted variance test was implemented to create flexibility for the Debtors. In many DIP financings, disbursements, receipts, and inventory receipts are all subject to testing, which is not the case here.<br><br>The Permitted Variance of 15% is reasonable and appropriately scales down the variance as the Debtors' operations decrease as a result of the GOB sales. |
| 6. | Carve-out should be modified to include out-of-pocket expenses of individual members of the Committee and their professionals in connection with their service on the Committee. | Attorney fees of the Committee members are not permitted to be paid under section 503(b)(4) of the Bankruptcy Code. Moreover, given the numerous hats worn by members of the Creditors' Committee, it is unreasonable for the Debtors' estates to pay for fees and expenses of individual members of the Committee.<br><br>Further, it is highly unusual for a carve-out to cover such fees and expenses. *See generally, e.g.*, *In re Cenveo, Inc.*, Case No 18-22178 (RDD) (Bankr. S.D.N.Y. February 6, 2018), ECF No. 51, at 34–35; *In re 21st Century Oncology*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. May 26, 2017), ECF No. 31, at 35; *In re MPM Silicones, Inc.*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. March 23, 2014), ECF No. 253, at 27–29. |
| 7. | The DIP Agent should not have absolute discretion over the following, which should be subject to reasonable discretion:<br>• payment of winddown costs from Winddown Account, the Approved Initial Budget, and the Budget<br>• agreements related to liquidation, appointment of a liquidation consultant and agent, and other sales | The DIP ABL Agents have agreed to delete the requirement that documents related to the rejection or assumption of material executory must be acceptable to the DIP ABL Agent in its sole discretion.<br><br>In addition, following the repayment in full of the obligations under the DIP ABL Facility and the Junior DIP Facility, payments of winddown costs from the Winddown Account will not be subject to the DIP ABL Lenders' sole and absolute discretion.<br><br>Other items over which the DIP Agent has sole and absolute discretion are critical items that have formed the basis for the DIP ABL Lenders' decision to extend additional credit and allow the use of their cash collateral.<br><br>The items referenced by the Committee go directly to the liquidation of the DIP ABL Lenders' |

8

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | • material documents related to assumption or rejection of executory contracts<br>• material documents related to chapter 11 plan<br>• any DIP financing that does not pay the DIP ABL Facility in full<br>• any sale of collateral outside the ordinary course of business<br>• expenses funded during Remedies Notice Period | collateral, the raising of additional financing and the wind-down of the estates.  It is customary for the DIP Agent to have sole and absolute discretion over these provisions, since they have the potential to impair the ability of the DIP Agent to recover on its DIP loans.  *See, e.g.*, *In re Tops Holding II Corporation*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. April 5, 2018), ECF No. 238, at 53–54 (finding that the DIP Agent has sole discretion over payments made during Remedies Notice Period is a provision common to DIP financing); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW) (Bankr. D. Del. March 12, 2018), ECF No. 352, at 43–45 (approving DIP Agent's sole discretion over budget); *Bon-Ton*, ECF No. 352-2, at 1 (approving DIP Agent's sole discretion over selection of fee basis liquidator); *In re Charming Charlie LLC*, Case No. 17-12906 (CSS) (Bankr. D. Del. January 11, 2018), ECF No. 309, at 33 (providing that the DIP Agents have sole discretion over payments during Remedies Notice Period); *id.* at 44 (providing that the DIP Agents have sole discretion over approval of budget). |
| 8. | Credit bidding by DIP ABL Agent should be limited to $300 million in new claims.<br><br>Credit bidding by the Prepetition ABL Credit Parties should be limited to Prepetition ABL Collateral. | Limitations on the DIP ABL Agent's right to credit bid are contrary to section 363(k) of the Bankruptcy Code and are not appropriate here.<br><br>See response above regarding the Rollup. |
| 9. | Preservation of Rights in paragraph 54(b) of the Interim Order should be modified to delete references to Prepetition ABL Obligations. | The Final Order serves as both a DIP order and a cash collateral order.  It is reasonable for the use of cash collateral to terminate if the case is converted or if another order providing adequate protection or use of cash collateral is entered.  Each of these items has strong potential to upset the balance of adequate protections struck as part of the negotiations on the DIP ABL Facility.<br><br>In the event that cash collateral use terminated, the Debtors will be permitted to show that the Prepetition ABL Obligations continue to be adequately protected as a condition to continuing to use cash collateral. |

9

| Issue No. | Committee's Objection | Response |
|---|---|---|
| 10. | Execution of the Junior DIP should not be a precondition to funding under the DIP ABL Credit Agreement. | The DIP ABL Lenders are only willing to provide additional financing if there is also a Junior DIP Facility that ensures the Debtors have sufficient liquidity to execute on their proposed going concern sale strategy.  To the extent that the Junior DIP Facility did not materialize, the Debtors would not have sufficient liquidity to run a going concern sale process, and the DIP ABL Facility would need to be structured differently. |
| 11. | Only Junior DIP amendments that are adverse to the DIP ABL Lenders should require consent of Required Lenders. | Given the importance of the Junior DIP Facility to the Chapter 11 Cases, the Debtors have agreed, in the exercise of their business judgment to give DIP ABL Lenders consent rights over amendments to Junior DIP Financing documents.  The Debtors expect that the DIP ABL Lenders will act responsibly and in good faith as they have to date. |
| 12. | Delete provision providing that adequate protection liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code. | The Prepetition ABL Credit Parties would not be adequately protected in the event that their adequate protection liens or claims are subordinated or avoided.<br><br>The Committee maintains the right to challenge the Prepetition ABL Obligations in accordance with the Challenge Period, in which case the corresponding adequate protection would no longer apply. |
| 13. | Delete provision providing that liens or interests avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be junior to the Prepetition Liens and the Adequate Protection Liens. | In the event that a lien is avoided, the Prepetition ABL Liens and the Adequate Protection Liens should remain in the most senior position.  Under state law, this would already be the effect because the perfected Prepetition ABL Liens would have priority over an unperfected earlier lien.  Moreover, the Adequate Protection Liens are proposed to attach to proceeds of avoidance actions.<br><br>This Court has previously approved the pledge of avoidance action proceeds as collateral for DIP facilities.  *See In re Cenveo Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. March 8, 2018), ECF No. 188, at 34 (providing the DIP lenders with superpriority administrative expense claims on the proceeds of avoidance actions); *In re 21st Century Oncology Holdings, Inc.*, Case No 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017), ECF No. 134, at 25 (same); *In re dELiA*s*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. January 9, 2015), ECF No. 140, at 15 (same); *In re MPM Silicones, LLC*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 23, 2014), ECF No. 253, at 31 (same). |
| 14. | Delete provision requiring a paydown of prepetition amounts if LTV formula is triggered. | The LTV provisions require the Debtors to keep the Prepetition ABL Obligations "within formula."  Because the Prepetition ABL Facility is an asset-based lending facility, the Prepetition ABL Credit Parties extended a certain amount of credit based upon a calculated borrowing base.  In order insure |

10

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | | that the Prepetition ABL Credit Parties are adequately protected as the GOB sales progress, the Debtors are required to remain in formula.<br><br>Additionally, this formula has been modified from the Prepetition ABL Loan Documents.   In calculating availability, availability block of $150 million has been removed and the advance rates have been increased to 87.5%. |
| 15. | Proceeds of subsequent financing should not be applied to the Prepetition ABL Obligations. | To the extent that the Debtors obtain additional financing, the DIP ABL Facility and Prepetition ABL Facility must either consent or be paid off.  The support for the use of cash collateral in the Proposed DIP ABL Final Order is limited as contemplated by this financing package. |
| 16. | "Payment in full" as referenced in the DIP Order should not require (i) the termination of the Challenge Period, or (ii) the entry of an order in a Challenge Proceeding in favor of the applicable secured party. | To the extent that the Prepetition Obligations or the Prepetition Liens have been challenged, they have not been paid in full.  An obligation is by definition not indefeasibly paid in full if it is subject to being unwound pursuant to the Challenge Period. |
| 17. | The Debtors should be permitted to use proceeds of the DIP ABL Facility to incur indebtedness (other than in accordance with the Approved Budget). | The DIP ABL Credit Agreement restricts the incurrence of additional indebtedness, except as permitted under the DIP ABL Credit Agreement's definition of "Permitted Debt."  It is unreasonable to allow the loan proceeds provided under the DIP ABL Facility to be used to violate the terms of that facility. |
| 18. | Proceeds of the DIP ABL Facility should be able to be used to challenge adequate protection payments pursuant to the order.<br><br>Defenses to Adequate Protection Claims and Adequate Protection Liens should not be released. | The DIP ABL Credit Parties should not be required to fund a challenge made to the adequate protection payments made under the order.  The adequate protection payments are necessary to ensure that the Prepetition Credit Parties' collateral position does not erode as the case is prosecuted.<br><br>DIP orders regularly prohibit proceeds of the financing from being used to challenge rights of prepetition lenders.  *See generally, e.g.*, *In re Tops Holding II Corporation*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. April 5, 2018), ECF No. 238, at 69; *In re 21st Century Oncology*, Case No. |

| Issue No. | Committee's Objection | Response |
|---|---|---|
| | | 17-22770 (RDD) (Bankr. S.D.N.Y. May 26, 2017), ECF No. 31, at 39–43. |
| 19. | The Challenge Period should not apply to any challenge as to the value of the DIP ABL Collateral, the Prepetition ABL Collateral, the Prepetition Second Lien Collateral or the extent of any diminution in value. | The Challenge Period should apply to all challenges made to the Prepetition ABL Collateral. <br><br> The Debtors' Stipulations contained in the DIP Order do not speak to the value of collateral or the amount of any diminution in value.  Becuause there is no stipulation on either issue that would bind parties in interest, the Committee is aiming at a target that does not exist. <br><br> Moreover, other DIP orders approved by this Court have not included language proposed by the Committee.  *See generally, e.g.*, *In re Tops Holding II Corporation*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. April 5, 2018), ECF No. 238; *In re dELiA*s, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. January 9, 2015), ECF No. 140. |
| 20. | Order should not require consent of the DIP ABL Agents and Prepetition ABL Agents to grant claims and liens superior to Adequate Protection Claims or to enter an order allowing use of Cash Collateral. | The priority of Adequate Protection Claims and Adequate Protection Liens are an essential part of the bargain struck by the Debtors and the DIP ABL Credit Parties.  In the event that the Debtors were to seek to subordinate these claims and liens, the Prepetition ABL Credit Parties could potentially be left in an undersecured position and subject to impairment, despite being oversecured as of the Petition Date. |

12

## <u>Annex  B</u>

**Non-Committee Objection Summary Chart**

| | ECF No. | Objecting Party | Objection Category | Response |
|---|---|---|---|---|
| 1. | 51 | American Greetings Corporation | Vendor (Consignment) | Consignment goods sold postpetition are addressed through language in Interim GOB Order (ECF No. 337); rights of parties with respect to prepetition proceeds are preserved. |
| 2. | 212 | Clover Technologies Group, LLC | Vendor (Consignment) | Addressed through language in Interim GOB Order (ECF No. 337); rights of parties with respect to prepetition proceeds are preserved. |
| 3. | 318 | Phillips Edison & Company and Levin Management | • Landlords (Payment of stub rent for October 2018 not reflected in Budget)<br><br>• Objecting to 506(c) and 552(b)(2) waivers. | • The Budget did not reflect the October stub rent because it was paid in the beginning of the month. Provided proof of payment to objectors.<br><br>• Objectors are not prejudiced by such waivers. |
| 4. | 329 | Yang Ming (America) Corp. | Lien Priority (Shipper's possessory lien on goods) | Permitted Lien under the DIP ABL Credit Agreement. |
| 5. | 526 | Certain Texas Taxing Authorities | Texas Taxing Authorities Tax Liens | Addressed in ¶ 62 of Proposed DIP ABL Final Order. |
| 6. | 532 | Cross Country Home Services, Inc. | Vendors (Recoupment and Setoff) | Addressed in ¶ 59 of Proposed DIP ABL Final Order. |
| 7. | 537 | NW Properties Landlords | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 8. | 547 | Wilmington Trust, NA (as 2L Notes Indenture Trustee) | Reservation of rights regarding Junior DIP | |

WEIL:\96808680\9\73219.0006

| 9. | 548 | Cape Town Plaza LLC, New Westgate Mall LLC, OND Property, LLC, R.K. Associates #5, Inc., R.K. Hooksett, LLC, STAG IV Cheektowaga, LLC | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
|---|---|---|---|---|
| 10. | 550 | Carl Ireland (Administrator of the Estate of James Garbe) | Lien Priority (existing mortgage lien) | If properly perfected, permitted prior lien under the DIP ABL Credit Agreement. |
| 11. | 557 | Community School District Unit 300 (Archer & Greiner) | Lien Priority (ongoing litigation ) | The Debtors believe this is unliquidated unsecured claim. |
| 12. | 570 | Local Texas Tax Authorities | Texas Taxing Authorities Tax Liens | Addressed in ¶ 62 of Proposed DIP ABL Final Order. |
| 13. | 608 | Simon Property Group | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 14. | 610 | Aviation Mall NewCo, LLC, DGI LS, LLC, Holyoke Mall Company, L.P., JPMG Manassas Mall Owner LLC, Poughkeepsie Galleria LLC, S&R Company of West Seneca Newco, LLC, Salmon Run Shopping Center, L.L.C | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 15. | 616 | Washington Prime Group, Inc. | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 16. | 625 | Taubman Landlords | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 17. | 636 | Federal Realty Investment Trust, Acadia Realty Limited Partnership, and other Landlords. | Landlords (Liens on Leases & Rights of Lenders when exercising remedies)) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 18. | 656 | CAPREF Burbank LLC | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |

| 19. | 720 | CBL & Associates Management | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
|---|---|---|---|---|
| 20. | 733 | American Greetings | Vendors (Consignment) | |
| 21. | 734 | Serta Simmons Bedding, LLC, Serta, Inc., Simmons Bedding Company, LLC and SSB Manufacturing Company | Vendors (Recoupment and Setoff) | Addressed in ¶ 59 of Proposed DIP ABL Final Order. |
| 22. | 755 | Benderson Development Company, LLC, Brookfield Properties Retail Group, Gregory Greenfield & Associates, Ltd. and other Landlords. | Landlords (Liens on Leases & Rights of Lenders when exercising remedies)) | Addressed in ¶¶ 13 and 38, respectively, of Proposed DIP ABL Final Order. |
| 23. | 757 | Luxottica Retail North America Inc. | Vendor (Consignment) | Consignment goods sold postpetition are addressed through language in Interim GOB Order (ECF No. 337); rights of parties with respect to prepetition proceeds are preserved. |
| 24. | 767 | Midwood Management Corp. | Landlords (Liens on Leases) | Addressed in ¶ 13 of Proposed DIP ABL Final Order. |
| 25. | 771 | Propel Trampolines LLC | Landlords (Liens on Leases) | Withdrawn (ECF No. 804) |
| 26. | 773 | Coral Reef Asia Pacific Ltd. | Vendor (Reclamation) | Withdrawn (ECF No. 820) |
| 27. | 781 | Allure Gems, LLC | Vendor (Reclamation/Consignment) | Reclamation issue addressed in ¶ 61 of Proposed DIP ABL Final Order; the Debtors believe that objections related to prepetition consignment proceeds are do not need to be resolved for the approval of the DIP ABL Facility. |
| 28. | 808 | Sakar International Inc. | Vendor (Reclamation) | Addressed in ¶ 61 of Proposed DIP ABL Final Order. |
| 29. | 821 | The Chubb Companies | Insurer (Reservation of Rights) | Debtors and the objector are negotiating reservation of rights language. |

16

| 30. | 822 | SHLD Lendco, LLC | Secured Lender (Carve-Out Priority) | Debtors and the objector are negotiating on reservation of rights language. |
|-----|-----|------------------|-------------------------------------|------------------------------------------------------------------------------|

WEIL:\96808680\9\73219.0006

**<u>Exhibit A</u>**

**Proposed DIP ABL Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors. [1] | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Sears Holdings Corporation ("Holdings") and

its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases") pending in the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking entry

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

of an interim order (the "<u>Interim Order</u>") and a final order (this "<u>Final Order</u>" and, together with

the Interim Order, the "<u>DIP Orders</u>") providing for, among other things, the following relief:

(i)      authorizing Sears Roebuck Acceptance Corp., a Delaware corporation, ("<u>SRAC</u>"), and Kmart Corporation, a Michigan corporation ("<u>Kmart</u>", and together with SRAC, the "<u>DIP ABL Borrowers</u>") to borrow, and each of the other Loan Parties (as defined in the DIP ABL Credit Agreement), to guarantee (in such capacity and together the with the DIP ABL Borrowers, the "<u>DIP ABL Loan Parties</u>"), a senior secured superpriority priming non-amortizing debtor-in-possession asset-based credit facility (the "<u>DIP ABL Facility</u>"), in an aggregate principal amount of up to $1,830,378,380 on the terms and conditions set forth, initially, in the DIP ABL Term Sheet, an execution copy of which is attached to the Motion as <u>Exhibit B</u> (including any subsequent amendments thereto, the "<u>DIP ABL Term Sheet</u>") and, from and after the Final Closing Date (as defined in the DIP ABL Term Sheet), the Superpriority Senior Secured Debtor-In-Possession Asset-Based Credit Agreement (the "<u>DIP ABL Credit Agreement</u>"), among the Debtors, Bank of America, N.A., as administrative agent (in such capacity, the "<u>DIP ABL Administrative Agent</u>"), Bank of America, N.A. and Wells Fargo Bank, National Association, each as a co-collateral agent (each in such capacity, a "<u>DIP ABL Co-Collateral Agent</u>", and together with the DIP ABL Administrative Agent, the "<u>DIP ABL Agents</u>"), the revolving lenders from time to time party thereto (the "<u>DIP ABL Revolving Lenders</u>"), and the term lenders from time to time party thereto (the "<u>DIP ABL Term Lenders</u>", and together with the DIP ABL Revolving Lenders, the "<u>DIP ABL Lenders</u>" and, together with the DIP ABL Agents and the DIP ABL Cash Management/Bank Product Providers, the "<u>DIP ABL Credit Parties</u>") attached hereto as <u>Exhibit A</u>, allocated and made available to the DIP ABL Borrowers as follows:

(a)      upon entry of the Interim Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet and the Interim Order, (x) an asset-based revolving credit facility with aggregate initial commitments of $188,110,759 (such commitments, the "<u>Incremental DIP ABL Revolving Commitments,</u>" the advances made pursuant thereto, the "<u>Incremental DIP ABL Revolving Advances,</u>" and such facility, the "<u>Incremental DIP ABL Revolver</u>"), including (i) a $50 million letter of credit subfacility made available upon entry of the Interim Order (the "<u>Incremental DIP ABL L/C Subfacility</u>"), and (ii) a $25 million discretionary swingline subfacility (the "<u>Incremental DIP ABL Swingline Subfacility</u>", the Incremental DIP ABL Revolving Advances, together with the obligations under the Incremental DIP ABL L/C Subfacility and the Incremental DIP ABL Swingline Subfacility, the "<u>Incremental DIP ABL Revolving Extensions of Credit</u>"), and (y) an asset-based term loan facility in an aggregate initial principal amount of $111,889,241 (the "<u>Incremental DIP ABL Term Loan</u>", and together with the Incremental DIP ABL Revolving Extensions of Credit", the "<u>Incremental DIP ABL Obligations</u>");

(b)      upon entry of this Final Order, subject to the terms and conditions set forth in the DIP ABL Credit Agreement, the DIP ABL Loan Documents (as defined below), and this Final Order, a roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit (as defined below) beneficially owned by the DIP ABL Revolving Lenders that have agreed to participate in the Incremental DIP ABL Revolver (together with their permitted assignees, the "Roll Up DIP ABL Revolving Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Revolving Extensions of Credit", and together with the Incremental DIP ABL Revolving Extensions of Credit, the "DIP ABL Revolving Extensions of Credit"; and such loans, the "Roll Up DIP ABL Revolving Advances", and together with the Incremental DIP ABL Revolving Advances, the "DIP ABL Revolving Advances", the commitments to make such DIP ABL Revolving Advances, the "DIP ABL Revolving Commitments"), which, with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations shall roll into a letter of credit subfacility (the Incremental DIP ABL L/C Subfacility, together with such rolled up participations, the "DIP ABL L/C Subfacility") and any prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (ii) all of the Prepetition ABL Term Loans (as defined below) beneficially owned by the DIP ABL Term Lenders that have agreed to participate in the Incremental DIP ABL Term Loan ((together with their permitted assignees,] the "Roll Up DIP ABL Term Lenders", and together with the Roll Up DIP ABL Revolving Lenders, the "Roll Up DIP ABL Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Term Loans", and together with the Incremental DIP ABL Term Loan, the "DIP ABL Term Loans" and the Roll Up DIP ABL Term Loans together with the Roll Up DIP ABL Revolving Extensions of Credit, the "Roll Up DIP ABL Obligations," and such transactions, the "ABL Roll Up"), and (iii) bank products (other than those under the Prepetition LC Facility Agreement (as defined below)) and cash management obligations entered into with any Prepetition ABL Cash Management/Bank Product Provider (as defined below) (the "Roll Up DIP ABL Cash Management/Bank Product Obligations") outstanding under the Prepetition ABL Credit Agreement (the Roll Up DIP ABL Cash Management/Bank Product Obligations, collectively with Bank Products (as defined in the DIP ABL Credit Agreement) and Cash Management Obligations (as defined in the DIP ABL Credit Agreement) entered into with any DIP ABL Lender, any DIP ABL Agent or any of their respective affiliates as of the Petition Date or at the time of entering into such arrangements (each, a "DIP ABL Cash Management/Bank Product Provider"), the Roll Up DIP ABL Obligations, the Incremental DIP ABL Obligations and all other obligations under the DIP ABL Loan Documents, the "DIP ABL Secured Obligations");

WEIL:\96804508\5\73219.0006

(ii)    authorizing the DIP ABL Loan Parties to execute, deliver and abide by (w) the DIP ABL Term Sheet pending entry of this Final Order, (x) the DIP ABL Credit Agreement upon entry of this Final Order, (y) the DIP Intercreditor Agreement (as defined below), and (z) any other agreements, instruments, pledge agreements, guarantees, control agreements and other loan documents related to any of the foregoing (including any security agreements, intellectual property security agreements, notes, blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements, and all Uniform Commercial Code filings and all filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors) (each of the foregoing, as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP ABL Term Sheet (prior to the date of the Final Order) and the DIP ABL Credit Agreement (after entry of this Final Order), the "DIP ABL Loan Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Loan Documents;

(iii)    authorizing the DIP ABL Administrative Agent to terminate any of its obligations under the DIP ABL Loan Documents upon the occurrence and continuance of a Termination Event (as defined below), which includes an Event of Default (as defined in the DIP ABL Loan Documents);

(iv)    To secure all DIP ABL Secured Obligations, granting to the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all DIP ABL Credit Parties, in accordance with the relative priorities set forth in the DIP Orders and in that certain [DIP Intercreditor Agreement] (the "DIP Intercreditor Agreement"), by and among the DIP ABL Agents and the Junior DIP Agent (as defined below), and acknowledged by the DIP ABL Loan Parties and the Junior DIP Loan Parties (as defined below), and in each case subject to the Carve-Out (as defined below):

(a)    pursuant to sections 364(c)(1), 503(b), and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), superpriority allowed administrative priority expense claims in each of the DIP ABL Loan Parties' Chapter 11 Cases and any Successor Cases (as defined below);

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, an automatically perfected first priority security interest in and lien on all property of the DIP ABL Loan Parties' estates that is not subject to a valid and perfected lien on the Petition Date and, upon entry of this Final Order, the Avoidance Action Proceeds (as defined below);

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, an automatically perfected junior priority security interest in and lien on all property of the DIP ABL Loan Parties' estates (other than Prepetition ABL Collateral (as

defined below)) that is subject to valid and perfected security interests in favor of third parties as of the Petition Date (as defined below); and

(d)     pursuant to section 364(d) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Prepetition ABL Collateral, subject only to any Permitted Prior Liens (as defined below) and the Permitted Liens (as defined in the DIP ABL Credit Agreement) (collectively, the "Senior Permitted Liens");

(v)     authorizing and directing the DIP ABL Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Loan Documents, the Prepetition LC Facility Agreement (as defined below) as they are earned, due and payable in accordance with the terms of the DIP ABL Loan Documents and the DIP Orders;

(vi)    authorizing the DIP ABL Loan Parties, solely in accordance with the Approved Budget (as defined below), the DIP ABL Loan Documents and the DIP Orders, to use the Prepetition ABL Collateral, including "Cash Collateral" (as defined in section 363 of the Bankruptcy Code) of the Prepetition Credit Parties;

(vii)   granting adequate protection to the Prepetition Credit Parties (as defined below) for any diminution in value resulting from the imposition of the automatic stay, the DIP ABL Loan Parties' use, sale, or lease of the Prepetition Collateral and the priming of their respective liens and interests in the Prepetition Collateral (including by the Carve-Out);

(viii)  solely upon entry of this Final Order, the waiver by the DIP ABL Loan Parties of (a) any right to surcharge the DIP ABL Collateral and the Prepetition ABL Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the "equities of the case" exception in section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and Prepetition ABL Collateral;

(ix)    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Orders and the DIP ABL Loan Documents; and

(x)     pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), requesting an initial hearing on the Motion be held before the Bankruptcy Court to consider entry of the Interim Order (the "Interim Hearing") to authorize on an interim basis (a) borrowing under the DIP ABL Loan Documents in an aggregate amount of up to $300 million and (b) the use of the Prepetition ABL Collateral, including Cash Collateral in accordance with the Approved Budget; and

(xi)    scheduling a final hearing (the "Final Hearing") to approve the Motion and consider entry of the Final Order.

WEIL:\96804508\5\73219.0006

The Interim Hearing having been held before the Bankruptcy Court on October 15, 2018 and the Final Hearing having been held before the Bankruptcy Court on November [27], 2018, each pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and upon the record made by the DIP ABL Loan Parties at the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]**

A.    *Petition Date*.  On October 15, 2018 (the "Petition Date"), each of the Debtors except for SHC Licensed Business LLC and SHC Promotions LLC  filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On October 18, 2018, SHC Licensed Business LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On October 22, 2018, SHC Promotions LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.    *Joint Administration*.  On the Petition Date, the Bankruptcy Court entered an order approving the joint administration of the Chapter 11 Cases. On November 6, 2018, the Bankruptcy Court entered an order approving the joint administration of the chapter 11 cases of SHC Licensed Business LLC and SHC Promotions LLC with the other Debtors' chapter 11 cases.

C.    *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[2]    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

WEIL:\96804508\5\73219.0006

**D.** *Official Committees*.   The Official Committee of Unsecured Creditors (a "Creditors' Committee") was appointed in these Chapter 11 Cases on October 24, 2018.

**E.** *Jurisdiction and Venue*.   The Bankruptcy Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

**F.** *Notice*.   Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other further notice of the Motion or the entry of the Interim Order or this Final Order shall be required.

**G.** *Junior DIP Facility*.   Substantially concurrently herewith, the Bankruptcy Court entered the [INTERIM JUNIOR DIP ORDER] (the "Interim Junior DIP Order").  Pursuant to the Interim Junior DIP Order, the DIP ABL Loan Parties have been authorized, on an interim basis, to enter into Junior DIP Credit Agreement (as defined in the Interim Junior DIP Order, the "Junior DIP Credit Agreement"), among the Junior DIP Loan Parties (as defined in the Interim Junior DIP Order, the "Junior DIP Loan Parties"), the Junior DIP Lenders (as defined in the Interim Junior DIP Order, the "Junior DIP Lenders") and GACP Finance Co., LLC, as administrative agent (as defined in the Interim Junior DIP Order, the "Junior DIP Agent" and together with the Junior DIP Lenders and the other "Credit Parties" as defined in the Junior DIP

WEIL:\96804508\5\73219.0006

Credit Agreement, the "Junior DIP Credit Parties").    Pursuant to the Junior DIP Credit Agreement and the other "Loan Documents" (as defined in the Junior DIP Credit Agreement, the "Junior DIP Loan Documents"), in respect of the "Obligations" (as defined in the Junior DIP Credit Agreement, the "Junior DIP Obligations"), the Junior DIP Loan Parties will grant to the Junior DIP Credit Parties certain superpriority claims (the "Junior DIP Superpriority Claims") and liens (the "Junior DIP Liens") as described in the Interim Junior DIP Order, subject in all respects to this Final Order.

      **H.**    *Debtors' Stipulations*.    After consultation with their attorneys and financial advisors, the Debtors, on their behalf and on behalf of their estates, admit, acknowledge, agree, and stipulate to the following (collectively, the "Debtors' Stipulations"), subject to the provisions of paragraphs 41 and 42 and subsection (g) below:

      a.    *Prepetition ABL Credit Facilities*.    Pursuant to the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition ABL Credit Agreement), each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Loan Documents"), by and among (i) SRAC and Kmart, as borrowers (the "Prepetition ABL Borrowers"), (ii) Holdings, as a guarantor (Holdings, together with the "Subsidiary Guarantors" (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties"), (iii) the banks, financial institutions and other institutional lenders from time to time party thereto, as lenders (collectively, the "Prepetition ABL Lenders"), (iv) the "Issuing Lenders" (as defined in the

Prepetition ABL Credit Agreement) from time to time party thereto (the "Prepetition ABL Issuing Lenders"), (v) Bank of America, N.A., as administrative agent (in such capacity, the "Prepetition ABL Administrative Agent"), as a co-collateral agent, and as swingline lender, (vi) Wells Fargo Bank, National Association, as a co-collateral agent (in such capacity, together with Bank of America, N.A. in such capacity, the "Prepetition ABL Co-Collateral Agents", and together with the Prepetition ABL Administrative Agent, the "Prepetition ABL Agents", and the Prepetition ABL Agents together with the Prepetition ABL Lenders, the swingline lender the Prepetition ABL Issuing Lenders, and the Prepetition ABL Cash Management/Bank Product Providers (as defined below) and the Prepetition LC Facility Credit Parties (as defined below), the "Prepetition ABL Credit Parties"), and (vii) the other parties from time to time party thereto, the Prepetition ABL Credit Parties provided the Prepetition ABL Loan Parties with a $1.5 billion asset-based revolving credit facility including a $1.0 billion letter of credit subfacility (the "Prepetition ABL Revolving Facility"), a term loan facility in an aggregate original principal amount of $1 billion (the "Prepetition ABL Term Loan Facility"), a term loan facility in an aggregate original principal amount of $750 million (the "Prepetition ABL 2016 Term Loan Facility"), and a "first-in, last-out" facility in an aggregate original principal amount of $125 million (the "Prepetition ABL 2018 FILO Facility," and the lenders under the Prepetition ABL 2018 FILO Facility, the "2018 FILO Lenders," and the Prepetition ABL 2018 FILO Facility, together with the Prepetition ABL Revolving Facility, the Prepetition ABL Term Loan Facility, and the Prepetition ABL 2016 Term Loan Facility, the "Prepetition ABL Facilities").

b.    ***Prepetition ABL Obligations.***    As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facilities was $1,530,378,380, comprised of (i) $836,034,649 outstanding amount of all Advances, including Swingline

Advances under, and each as defined in, the Prepetition ABL Revolving Facility (the "Prepetition ABL Revolving Advances"); (ii) $123,567,481 million outstanding amount of all L/C Obligations under, and as defined in, the Prepetition ABL Revolving Facility (together with the Prepetition ABL Revolving Advances, the "Prepetition ABL Revolving Extensions of Credit"); (iii) $0 outstanding principal amount of term loans under the Prepetition ABL Term Loan Facility; (iv) $570,776,250 outstanding principal amount of term loans under the Prepetition ABL 2016 Term Loan Facility (the "Prepetition ABL Term Loans"); and (v) $125,000,000 outstanding principal amount of the Prepetition ABL 2018 FILO Facility; and together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Loan Documents, cash management services and bank products (the "Prepetition ABL Cash Management/Bank Product Obligations") entered into with any Prepetition ABL Lender, any Prepetition ABL Agent or any of their respective affiliates (each, a "Prepetition ABL Cash Management/Bank Product Provider"), including all obligations under that certain Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition LC Facility Agreement" and which constitutes a Prepetition ABL Loan Document), among Holdings, the Prepetition ABL Borrowers, JPP, LLC, JPP II, LLC, Crescent 1, L.P., Canary SC Fund, L.P., CYR Fund,

10

L.P., CMH VI, L.P., and Cyrus Heartland, L.P., as L/C lenders (the "Prepetition LC Lenders"),

and Citibank, N.A., as administrative agent and as issuing bank (in such capacity, the

"Prepetition LC Facility Administrative Agent," and together with the Prepetition LC Lenders,

the "Prepetition LC Facility Credit Parties"), under which, as of the Petition Date, $271 million

of letters of credit are outstanding thereunder, and which obligations constitute Bank Products

and an "Other LC Facility" under and as defined in the Prepetition ABL Credit Agreement, and

including all "Obligations" as defined in the Prepetition ABL Credit Agreement, and all other

amounts that may become allowed or allowable under section 506(b) of the Bankruptcy Code,

including interest, fees, prepayment premiums, costs and other charges, (the "Prepetition ABL

Obligations").

        c.    ***Prepetition ABL Liens and Prepetition ABL Collateral.***    Pursuant to the

Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Loan Documents,

each of the Prepetition ABL Guarantors unconditionally guaranteed, on a joint and several basis,

the punctual and complete performance, payment and satisfaction when due and at all times

thereafter of all of the Prepetition ABL Obligations.    Pursuant to the Prepetition ABL Credit

Agreement and the other applicable Prepetition ABL Loan Documents, the Prepetition ABL

Borrowers and the Prepetition ABL Guarantors granted to Bank of America, N. A., in its

capacity as a Prepetition ABL Co-Collateral Agent and as agent for the other Prepetition ABL

Co-Collateral Agent (in such capacity, the "Prepetition ABL Control Co-Collateral Agent"), for

the benefit of itself and all of the other Prepetition ABL Credit Parties, a first priority security

interest in and continuing lien on (the "Prepetition ABL Liens") all of the collateral identified in

the Prepetition ABL Loan Documents, including, but not limited to, inventory, credit card

accounts receivables, pharmacy receivables, prescription lists, deposit accounts, cash and cash

equivalents, and proceeds, insurance claims and supporting obligations of the foregoing, together

with Cash Collateral, in all cases whether then owned or existing of thereafter acquired (but

excluding, for the avoidance of doubt, any Cash Collateral posted to the Prepetition LC Facility

Administrative Agent, in its capacity as issuing bank, by the Prepetition LC Lenders under the

Prepetition LC Facility Agreement) (collectively, the "Prepetition ABL Collateral").

       d.    **Agreement Among Lenders.**  JPP, LLC, JPP II, LLC, GACP II, L.P., and

Benefit Street 2018 LLC, as 2018 FILO lenders, ESL Investments, Inc., Wells Fargo Bank,

National Association, as a Prepetition ABL Co-Collateral agent, and Bank of America, N.A., as

Prepetition ABL Administrative Agent and as a Prepetition ABL Co-Collateral Agent, entered

into an Agreement Among Lenders, dated as of March 21, 2018 (as amended, restated,

supplemented or otherwise modified from time to time prior to the Petition Date, the "Agreement

Among Lenders").

       e.    **Validity, Perfection, and Priority of Prepetition ABL Liens and**

**Prepetition ABL Obligations**.  The Debtors hereby further acknowledge and agree that as of the

Petition Date:

      (i)    The Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the Prepetition ABL Loan Documents;

      (ii)    The Prepetition ABL Liens on the Prepetition ABL Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to the Prepetition ABL Control Co-Collateral Agent, for the benefit of itself and all of the other Prepetition ABL Credit Parties for fair consideration and reasonably equivalent value;

      (iii)    The Prepetition ABL Liens are senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens senior by operation of law or otherwise permitted to be senior under the Prepetition ABL Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date) (the "Permitted Prior Liens");

(iv)    No portion of the Prepetition ABL Liens, the Prepetition ABL Obligations or any payments made to any Prepetition ABL Credit Party or applied to or paid on account of the Prepetition ABL Obligations prior to the Petition Date is subject to any contest, set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), recoupment, recovery, rejection, attack, effect, counterclaims, cross-claims, defenses, or any other challenge or claim (as defined in the Bankruptcy Code) of any kind, any cause of action or any other challenge of any nature under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation or otherwise by any person or entity;

(v)     The Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including any Avoidance Actions, against any of the Prepetition ABL Credit Parties or any of their respective Representatives;

(vi)    The Debtors have, on behalf of each of their estates and any party that may try to claim by, through, or on behalf of the Debtors' estates, waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations or the validity, extent and priority of the Prepetition ABL Liens;

(vii)   The Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code; and

(viii)  The Debtors have been and are in default of their obligations under the Prepetition ABL Loan Documents, including as a result of the Chapter 11 Cases, and an Event of Default (as defined in the Prepetition ABL Credit Agreement) has occurred and is continuing.

f.      ***Intercreditor Agreement.***  The Prepetition ABL Agents, for themselves and the other Prepetition ABL Credit Parties, and the Prepetition Second Lien Collateral Agent, for itself and the other Prepetition Second Lien Credit Parties, entered into a Second Amended and Restated Intercreditor Agreement, dated as of March 20, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Intercreditor Agreement").

g.      ***Application to ESL***.  None of the Debtors' Stipulations shall apply to ESL Investments, Inc. or any of its affiliates (the "ESL Affiliates," and together with ESL Investments, Inc., "ESL").

13

I.    *Certain Second Lien Debt.* The following descriptions are set forth herein for definitional purposes only:

a.    *Prepetition Second Lien 2010 Notes.* Pursuant to the Indenture, dated as of October 12, 2010 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture Documents", together with the Prepetition Second Lien 2018 Indenture Documents (as defined below), the "Prepetition Second Lien Notes Documents"), by and among (i) Holdings, as issuer (in such capacity, and as issuer of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Issuer"), (ii) certain subsidiaries of Holdings, as guarantors (in such capacity, and as guarantors of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Guarantors") and (iii) Wilmington Trust, National Association, as trustee (in such capacity, the "Prepetition Second Lien 2010 Indenture Trustee") and as collateral agent (in such capacity, the "Prepetition Second Lien Collateral Agent"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Notes (as defined in the Prepetition Second Lien 2010 Indenture), due 2018 (together with any Exchange Securities (as defined in the Prepetition Second Lien 2010 Indenture) and any Additional Notes (as defined in the Prepetition Second Lien 2010 Indenture) issued under the Prepetition Second Lien 2010 Indenture, the "Prepetition Second Lien 2010 Notes" and the holders of such Prepetition Second Lien 2010 Notes, the "Prepetition Second Lien 2010 Notes Holders") and, pursuant to an Offering Memorandum (as defined in the Prepetition Second Lien 2010 Indenture), the

Prepetition Second Lien Notes Issuer exchanged some of the Prepetition Second Lien 2010 Notes for the Prepetition Second Lien Convertible Notes (as defined below).

b.   ***Prepetition Second Lien 2010 Notes Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of the obligations in respect of the Prepetition Second Lien 2010 Notes totaling approximately $89 million were outstanding, together with accrued and unpaid interest, costs, fees and expenses (the "<u>Prepetition Second Lien 2010 Notes Obligations</u>").

c.   ***Prepetition Second Lien Convertible Notes.*** Pursuant to the Indenture, dated as of March 20, 2018, (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition Second Lien 2018 Indenture</u>" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition Second Lien 2018 Indenture Documents</u>"), by and among (i) the Prepetition Second Lien Notes Issuer, (ii) the Prepetition Second Lien Notes Guarantors and (iii) Computershare Trust Company, N.A. as trustee (in such capacity, the "<u>Prepetition Second Lien 2018 Indenture Trustee</u>" and, together with the Prepetition Second Lien 2010 Indenture Trustee, the "<u>Prepetition Second Lien Trustees</u>", and, the Prepetition Second Lien Trustees, together with the Prepetition Second Lien Credit Agreement Agent and the Prepetition Second Lien Collateral Agent, the "<u>Prepetition Second Lien Agents</u>" and, together with the Prepetition ABL Administrative Agent, and the Prepetition LC Facility Administrative Agent, the "<u>Prepetition Agents</u>"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 (as defined in the Prepetition Second Lien 2018 Indenture) (together with any PIK Interest Notes (as

15

defined in the Prepetition Second Lien 2018 Indenture) (or any increase in the principal amount of a Global Note (as defined in the Prepetition Second Lien 2018 Indenture) related to PIK Interest (as defined in the Prepetition Second Lien 2018 Indenture)) and any Additional Notes (as defined in the Prepetition Second Lien 2018 Indenture) issued under the Prepetition Second Lien 2018 Indenture, the "Prepetition Second Lien Convertible Notes" and the holders of such Prepetition Second Lien Convertible Notes, the "Prepetition Second Lien Convertible Notes Holders" and, together with the Prepetition Second Lien 2010 Notes Holders, the "Prepetition Second Lien Notes Holders").

d.      *Prepetition Second Lien Convertible Notes Obligations.* As of the Petition Date, according to the Debtors' books and records, certain principal amounts of obligations were outstanding in respect of the Prepetition Second Lien Convertible Notes, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien Convertible Notes Obligations", together with the Prepetition Second Lien 2010 Notes Obligations, the "Prepetition Second Lien Notes Obligations").

e.      *Prepetition Second Lien Credit Agreement.*   Pursuant to the Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and all other agreements and documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement Documents"), by and among (i) Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers (the "Prepetition Second Lien Credit Agreement Borrowers"), (ii)

16

Holdings and the other Guarantors party thereto (as defined in the Prepetition Second Lien Credit Agreement) (the "Prepetition Second Lien Credit Agreement Guarantors" and, together with the Prepetition Second Lien Credit Agreement Borrowers, the "Prepetition Second Lien Credit Agreement Loan Parties", and the Prepetition Second Lien Credit Agreement Loan Parties, together with the Prepetition Second Lien Notes Issuer and the Prepetition Second Lien Notes Guarantors, the "Prepetition Second Lien Loan Parties"), (iii) the lenders from time to time party thereto (collectively, the "Prepetition Second Lien Credit Agreement Lenders"), (iv) JPP, LLC, as administrative agent and collateral administrator (in such capacities, the "Prepetition Second Lien Credit Agreement Agent", together with the Prepetition Second Lien Credit Agreement Lenders and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Credit Agreement Credit Parties" and, the Prepetition Second Lien Credit Agreement Credit Parties, together with the Prepetition Second Lien Trustees and the Prepetition Second Lien Notes Holders, the "Prepetition Second Lien Credit Parties", and, the Prepetition Second Lien Credit Parties, together with the Prepetition ABL Credit Parties, the "Prepetition Credit Parties") and (vi) the other parties from time to time party thereto, the Prepetition Second Lien Credit Agreement Credit Parties provided the Prepetition Second Lien Credit Agreement Borrowers with a secured term loan (the "Prepetition Second Lien Credit Agreement Term Facility"), and line of credit loans (the "Prepetition Second Lien Credit Agreement Line of Credit Facility" and, collectively with the Prepetition Second Lien Credit Agreement Term Facility, the "Prepetition Second Lien Credit Agreement Facilities").

f.      ***Prepetition Second Lien Credit Agreement Facilities Obligations.***  As of the Petition Date, according to the Debtors' books and records, certain principal amounts were outstanding under the Prepetition Second Lien Credit Agreement Facilities, comprised of (i)

WEIL:\96804508\5\73219.0006

certain amounts under the Prepetition Second Lien Credit Agreement Term Facility and (ii) certain amounts under the Prepetition Second Lien Credit Agreement Line of Credit Facility, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Second Lien Credit Agreement Borrowers' or the Prepetition Second Lien Credit Agreement Guarantors' obligations pursuant to, or secured by, the Prepetition Second Lien Credit Agreement Documents, including all "Obligations" as defined in the Prepetition Second Lien Credit Agreement, and all other amounts that may become allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, the "Prepetition Second Lien Credit Agreement Obligations", together with the Prepetition Second Lien Notes Obligations, the "Prepetition Second Lien Obligations", and, together with the Prepetition ABL Obligations, the "Prepetition Obligations").

g.    ***Prepetition Second Lien Facilities Liens and Prepetition Second Lien Facility Collateral.***    Pursuant to the Prepetition Second Lien Notes Documents and the Prepetition Second Lien Credit Agreement Documents (collectively, the "Prepetition Second Lien Credit Documents" and, together with the Prepetition ABL Loan Documents and the Intercreditor Agreement, the "Prepetition Loan Documents"), each of the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Guarantors (collectively, the "Prepetition Second Lien Guarantors") unconditionally guaranteed, on a joint

18

and several basis, the due and punctual payment of all the Prepetition Second Lien Obligations. Pursuant to the Prepetition Second Lien Credit Documents, the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Credit Parties granted to the Prepetition Second Lien Collateral Agent, for the benefit of itself, all of the Prepetition Second Lien Credit Parties, a second priority security interest in and continuing lien on (the "Prepetition Second Lien Facilities Liens", and together with the Prepetition ABL Liens, the "Prepetition Liens") all of the collateral identified in the Prepetition Second Lien Credit Documents, in all cases whether then owned or existing or thereafter acquired (collectively, the "Prepetition Second Lien Collateral," and together with the Prepetition ABL Collateral, the "Prepetition Collateral," and the property that constitutes Prepetition ABL Collateral, but which is not Prepetition Second Lien Collateral, the "Specified Non-Prepetition Second Lien Collateral").

J.    *Validity of Prepetition Second Lien Obligations/Prepetition Second Lien Facilities Liens.*    Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Second Lien Obligation and/or Prepetition Second Lien Facilities Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Second Lien Obligation, Prepetition Second Lien Facilities Lien and/or security interests, *provided*, *however*, no such challenge shall have any effect or impact on the Prepetition ABL Obligations or Prepetition ABL Liens, or any adequate protection granted to the Prepetition ABL Credit Parties. For the avoidance of doubt, solely after the payment in full of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy

19

Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Second Lien Obligations, Prepetition Second Lien Facilities Liens or Prepetition Second Lien Collateral.

**K.**     ***Validity of Prepetition Obligations/Prepetition Collateral related to ESL.***
Nothing herein shall constitute a finding or ruling by this Court in favor of ESL that any Prepetition Obligation and/or Prepetition Lien in respect of any Prepetition Obligations owned by ESL (collectively, the "ESL Debt") is valid, senior, enforceable, prior, perfected, or non-avoidable, *provided*, *however* there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to the terms of this Final Order.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged ESL Debt and/or related security interests, *provided*, *however* there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to the terms of this Final Order.  For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any ESL Debt or collateral securing any ESL Debt, in each case, after payment in full of all DIP ABL Obligations and Prepetition ABL Obligations not constituting ESL Debt.  Nothing in this paragraph shall affect or impact the Prepetition ABL Obligations that are not owned by ESL or Prepetition ABL Liens securing such

obligations, or any adequate protection granted to the Prepetition ABL Credit Parties other than ESL.

**L.    *Cash Collateral.*** The DIP ABL Loan Parties represent that all of the DIP ABL Loan Parties' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition ABL Collateral, constitutes Cash Collateral and is Prepetition ABL Collateral but not Prepetition Second Lien Collateral.

**M.    *Permitted Prior Liens.*** Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP ABL Credit Parties, the Prepetition Credit Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Permitted Prior Liens, *provided that* the lack of such a waiver shall not adversely affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, *provided, further* that any attempts or efforts to invoke the provisions referenced in clauses (a) through (c) of this sentence shall be subject in all respects to the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents until the payment in full in cash of all DIP ABL Obligations and Prepetition ABL Obligations, respectively.

**N.    *Agreement Among Lenders and Intercreditor Agreement.*** Pursuant to section 510 of the Bankruptcy Code, the Agreement Among Lenders, the Intercreditor

Agreement and any other intercreditor or subordination provisions contained in the Prepetition ABL Loan Documents shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of, in the case of the Intercreditor Agreement, the Prepetition Credit Parties, and, in the case of the Agreement Among Lenders, the Prepetition ABL Credit Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under the DIP Orders or otherwise and the modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified by the terms of the DIP Orders or the DIP ABL Loan Documents, unless expressly set forth herein or therein.  Solely for purposes of the Intercreditor Agreement, any repayment of the Prepetition ABL Obligations pursuant to the DIP Orders shall not be deemed to constitute a "Discharge of ABL Obligations" as such term is used in the Intercreditor Agreement.

## O.    *Findings Regarding DIP Financing and Use of Cash Collateral.*

a.    ***Good Cause.***    Good cause has been shown for the entry of this Final Order.

b.    ***Request for Post-Petition Financing and Use of Cash Collateral.***    The DIP ABL Loan Parties have sought authority to enter into the DIP ABL Loan Documents.  The DIP ABL Credit Parties shall have no obligation to make or be deemed to have made loans, advances or other extensions of credit under the DIP ABL Facility except to the extent required under the respective DIP ABL Loan Documents and shall have no obligation to waive any conditions required thereunder.  The DIP ABL Loan Parties have sought authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, to administer their Chapter 11 Cases and fund their operations.

WEIL:\96804508\5\73219.0006

c.      ***Need for Post-Petition Financing and Use of Cash Collateral.***    The Debtors' need to use Cash Collateral and to obtain credit as set forth in the DIP ABL Loan Documents is immediate and critical in order to, among other things, enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships, pay employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP ABL Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, creditors and other stakeholders, and the possibility for maximizing the value of their businesses.  The Debtors do not have sufficient available sources of working capital and financing to operate their business or to maintain their properties in the ordinary course of business without the DIP ABL Facility and continued use of Cash Collateral.  Consummation of the financing contemplated by the DIP ABL Loan Documents and the use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of the DIP Orders therefore are in the best interests of the Debtors' estates.

d.      ***No Credit Available on More Favorable Terms.***    Given their current financial condition, financing arrangements, and capital structure, despite diligent efforts, the DIP ABL Loan Parties are unable to reasonably obtain post-petition financing from sources other than the DIP ABL Lenders on terms more favorable than those set forth in the DIP ABL Loan Documents.  The DIP ABL Loan Parties have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The DIP ABL Loan Parties have also been unable to obtain secured credit from other sources on better terms:  (a) solely having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured only by a lien on

23

property of the DIP ABL Loan Parties and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the DIP ABL Loan Parties and their estates that is already subject to a prepetition lien. Further, the Required Lenders (as defined in the Prepetition ABL Credit Agreement) are supportive of the priming of the Prepetition ABL Liens and the use of their Cash Collateral only to the extent provided herein and under the DIP ABL Loan Documents. Financing on a post-petition basis is not otherwise available without: (x) granting the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other DIP ABL Credit Parties (i) perfected security interests in and liens on (each as provided herein) all of the DIP ABL Loan Parties' existing and after-acquired assets with the priorities set forth herein; (ii) superpriority claims; and (iii) the other protections set forth in the DIP Orders, and (y) upon entry of this Final Order, providing for the roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit beneficially owned by the applicable DIP ABL Revolving Lenders and (ii) all of the Prepetition ABL Term Loans beneficially owned by the applicable DIP ABL Term Lenders, in each case, upon the terms set forth in this Final Order and in the DIP ABL Credit Agreement.

e.    ***Use of Proceeds; Approved Budget.*** As a condition to entry into the DIP ABL Loan Documents, the extensions of credit under the DIP ABL Facility and the authorization to use Cash Collateral, the DIP ABL Lenders and Prepetition ABL Agents require, and the DIP ABL Loan Parties have agreed, that proceeds of the DIP ABL Facility and Cash Collateral shall be used in accordance with the terms of the DIP ABL Loan Documents, including the Approved Budget, which shall be subject to (a) such variances as may be permitted by the DIP ABL Loan Documents, (b) the DIP Orders, and (c) the Carve-Out. The DIP ABL Loan Parties shall not directly or indirectly pay any expense or other disbursement other than

24

those set forth herein, in the Approved Budget or the Carve-Out.  The proceeds of the DIP ABL

Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents

and solely in accordance with the Approved Budget (subject to the Carve-Out), including, to the

extent provided therein, (i) for the ongoing working capital and general corporate purposes of the

DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations

contained in, the Approved Budget; (ii) to pay fees, costs and expenses incurred in connection

with the transactions contemplated hereby and other administration costs incurred in connection

with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and

advisors to the DIP ABL Agents and the DIP ABL Lenders to the extent provided in the DIP

ABL Loan Documents) as set forth in the DIP ABL Loan Documents; (iii) payment of other such

prepetition obligations as set forth in the Approved Budget, and as approved by the Bankruptcy

Court; and (iv) payment of certain adequate protection amounts to the Prepetition ABL Credit

Parties as set forth in paragraph 19 hereof.

      f.     ***Willingness to Provide Financing.*** The DIP ABL Lenders have indicated

a willingness to provide financing to the DIP ABL Loan Parties, conditioned upon entry of this

Final Order, including findings that such financing and use of Cash Collateral is essential to the

DIP ABL Loan Parties' estates, that the DIP ABL Lenders are extending credit to the DIP ABL

Loan Parties as set forth in the DIP ABL Loan Documents in good faith, that the Prepetition

ABL Credit Parties are permitting the use of Cash Collateral in good faith, and that the DIP ABL

Credit Parties' and the Prepetition ABL Credit Parties' claims, superpriority claims, security

interests, liens, rights, and other protections will have the protections provided in section 364(e)

of the Bankruptcy Code and will not be affected by any subsequent reversal, modification,

vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order or any

WEIL:\96804508\5\73219.0006

other order.  As a condition to the entry into the DIP ABL Loan Documents and the extensions

of credit under the DIP ABL Facility, the DIP ABL Loan Parties, the DIP ABL Agents, and the

other DIP ABL Credit Parties have agreed that proceeds of DIP ABL Collateral and all payments

and collections received by the DIP ABL Loan Parties shall be applied solely as set forth in the

DIP ABL Loan Documents and the DIP Orders.

g.    ***Business Judgment and Good Faith Pursuant to Section 364(e).***  The

extension of credit under the DIP ABL Facility and the DIP ABL Loan Documents, and the

authorization to use Cash Collateral on the terms set forth herein, are fair, reasonable, and the

best available to the DIP ABL Loan Parties under the circumstances, reflect the DIP ABL Loan

Parties' exercise of sound and prudent business judgment, are supported by reasonably equivalent

value and consideration, and were entered into at arm's-length, under no duress, and without

undue influence, negligence or violation of public policy or law.  The DIP ABL Loan

Documents, the DIP ABL Facility and the provisions regarding the use of Cash Collateral were

negotiated in good faith and at arm's length among the DIP ABL Loan Parties, certain of the

Prepetition ABL Credit Parties and the DIP ABL Credit Parties, under no duress, and without

undue influence, in respect of all actions taken by them in connection with or related in any way

to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP ABL

Facility, and the use of Cash Collateral, including in respect of the granting of the DIP ABL

Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the

DIP ABL Facility or the use of Cash Collateral, and all documents related to any and all

transactions contemplated by the foregoing.  Use of Cash Collateral and any credit to be

extended as set forth in either of the DIP Orders and in the DIP ABL Loan Documents shall be

deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid

WEIL:\96804508\5\73219.0006

business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and

the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are therefore entitled to the

protections and benefits of section 364(e) of the Bankruptcy Code and the DIP Orders, and

therefore, the claims, security interests, liens, and other protections granted pursuant to the DIP

Orders should be preserved to the extent provided for in the DIP Orders.

h.    ***Priming of Prepetition Liens.***  The priming of the Prepetition Liens on the

Prepetition ABL Collateral by the DIP ABL Liens to the extent set forth in the DIP ABL Loan

Documents and the DIP Orders will enable the DIP ABL Loan Parties to obtain the DIP ABL

Facility and to continue to operate their businesses for the benefit of their estates and creditors.

The Required Lenders (as defined in the Prepetition ABL Credit Agreement) support such

priming liens solely to the extent set forth in the DIP ABL Loan Documents and the DIP Orders,

subject to receipt of adequate protection of their respective interests in the Prepetition ABL

Collateral as set forth herein.  The Required Lenders (as defined in the Prepetition ABL Credit

Agreement) have acted in good faith in supporting the (i) DIP ABL Loan Parties' use of the

Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of the DIP Orders,

(ii) priming of the Prepetition Liens by the DIP ABL Liens on Prepetition ABL Collateral to the

extent set forth in the DIP ABL Loan Documents and the DIP Orders, and (iii) entry of the DIP

Orders and the granting of the relief set forth therein, and their reliance on the assurances

referred to herein is in good faith.

i.    ***Adequate Protection for Prepetition Credit Parties.***  The Prepetition

Credit Parties are entitled to, and shall receive, adequate protection as set forth in paragraphs 17

through 19 below to the extent of the aggregate diminution in value of their interests in the

Prepetition ABL Collateral, pursuant to sections 361, 362, 363, 364 and 507(b) of the

WEIL:\96804508\5\73219.0006

Bankruptcy Code. The adequate protection provided to the Prepetition Credit Parties pursuant to the terms of the DIP Orders are necessary and appropriate in light of, among other things, (a) the DIP ABL Loan Parties' proposed use and sale of the Prepetition ABL Collateral, including Cash Collateral, (b) the granting of priming liens on the Prepetition ABL Collateral in connection with the DIP ABL Facility, (c) the potential decline in the value of the Prepetition ABL Collateral, (d) the imposition of the automatic stay, and (e) the subordination of the Prepetition Obligations to the Carve-Out.

j.      ***Sections 506(c) and 552(b).*** The Debtors waive, for the benefit of the DIP ABL Credit Parties and the Prepetition Credit Parties, of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and the Prepetition ABL Collateral in light of (i) the subordination of their liens and superpriority claims, as applicable, to the Carve-Out, (ii) the use of Cash Collateral and the subordination of the Prepetition Obligations, Prepetition Liens, Adequate Protection Claims (as defined below) and Adequate Protection Liens (as defined below) to the Carve-Out, the DIP ABL Liens and the DIP ABL Superpriority Claims (as defined below), as applicable, and (iii) the Approved Budget covering all administrative costs projected by the DIP ABL Loan Parties.

k.      ***Notice.*** Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest as set forth in the Motion and the Interim Order. The notice given by the Debtors of the Motion, the relief requested therein, and the Final Hearing constitutes adequate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the

28

Local Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. **_Motion Granted._** The Motion is granted on a final basis to the extent set forth herein.

2. **_Use of Prepetition ABL Collateral Approved._** Subject to and consistent with the terms of the DIP ABL Loan Documents, the DIP Orders, and the Approved Budget, the DIP ABL Loan Parties are hereby authorized to use the Prepetition ABL Collateral (including Cash Collateral) until the Termination Date to the extent set forth herein; provided, however, that during the Remedies Notice Period (as defined herein), the DIP ABL Loan Parties may use Cash Collateral solely to meet payroll obligations (but not severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Agents in their sole and absolute discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph 21 of this Final Order.

3. **_Objections Overruled._** All objections to and reservations of rights with respect to the relief sought in the Motion and to the entry of this Final Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.

WEIL:\96804508\5\73219.0006

**DIP ABL Facility Authorization**

4. ***Authorization of the DIP ABL Loan Documents.*** The DIP ABL Loan Parties are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP ABL Loan Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith. The DIP ABL Loan Parties are hereby authorized to borrow money and issue letters of credit under the applicable DIP ABL Loan Documents, on a final basis in accordance with and subject to the terms and conditions of the DIP Orders and the DIP ABL Loan Documents, and to perform all other obligations hereunder and thereunder.

5. ***ABL Roll Up.*** Upon entry of this Final Order, the following transactions will be deemed to take place: (a) all Prepetition ABL Revolving Extensions of Credit beneficially owned by a Roll Up DIP ABL Revolving Lender as of [11:59 p.m. Eastern Time on November 5, 2018] shall be converted to Roll Up DIP ABL Revolving Extensions of Credit, and with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations and letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (b) all Prepetition ABL Term Loans beneficially owned by a Roll Up DIP ABL Term Lender [at 11:59 p.m. Eastern Time on November 5, 2018] shall be converted to Roll Up DIP ABL Term Loans, and (c) Roll Up DIP ABL Cash Management/Bank Product Obligations shall become obligations under the DIP ABL Facility; *provided* that the transactions described in this paragraph shall be subject to the reservation of rights of parties in interest in paragraphs 41 and 42 below, and upon expiration of the Challenge Period (as defined below) without a Challenge Proceeding (as defined below) having been brought, or the final resolution of a Challenge Proceeding brought in compliance with the provisions of the DIP Orders (where such Challenge Proceeding did not have the effect of successfully impairing any of the

Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations), the DIP ABL Loan Parties' ABL Roll Up shall be deemed indefeasible (or, in the event that such a Challenge Proceeding is timely and properly commenced in respect of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations, on the date on which any order entered by the Bankruptcy Court in favor of the applicable Prepetition ABL Credit Party in such Challenge Proceeding becomes final and non-appealable). Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge Proceeding by any party in interest in accordance with paragraph 41 hereof, this Court may unwind the ABL Roll-Up with respect to the applicable Prepetition ABL Obligations to the extent that (i) the ABL Roll-Up resulted in the conversion of any Prepetition ABL Obligations consisting of an unsecured claim or other claim or amount not allowable under Section 502 of the Bankruptcy Code into a DIP ABL Obligation, and (ii) such conversion unduly advantaged the applicable Prepetition ABL Credit Party. Notwithstanding the foregoing, but subject to the proceeding sentence, a successful Challenge Proceeding shall not in any way affect the validity, enforceability or priority of the DIP ABL Obligations or the DIP ABL Liens and no obligation, payment, transfer or grant of security under the DIP ABL Credit Agreement, the other DIP ABL Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

6.      ***Syndication of Commitments and Loans.***  The procedures for syndicating the DIP ABL Facility set forth in <u>Exhibit B</u> hereto are hereby approved (the "<u>Procedures</u>").

Allocations of the DIP ABL Revolver, the DIP ABL Term Loan and the Roll Up DIP ABL

Obligations made by the DIP ABL Administrative Agent in accordance with the Procedures will

be final and binding.  In furtherance of the foregoing and in connection with the consummation

of the DIP ABL Facility, the ABL Roll Up and the related DIP ABL Loan Documents, the

performance of such acts as set forth in the Procedures and related documentation is hereby

authorized and approved.

7.      ***Authorized Action.***  In furtherance of the foregoing and without further

approval of this Court, each Debtor is authorized to perform all acts, to make, execute and

deliver all instruments and documents that may be necessary or required for performance by the

DIP ABL Loan Parties under the DIP ABL Loan Documents and the creation and perfection of

the DIP ABL Liens described in, provided for and perfected by the DIP Orders and the DIP ABL

Loan Documents.  Subject to paragraphs 19(e) and 20(a), the DIP ABL Loan Parties are hereby

authorized to pay, in accordance with the DIP Orders, the principal, interest, fees, expenses and

other amounts described in the DIP ABL Loan Documents as such become due and without need

to obtain further Court approval, including administrative agent fees, underwriting fees,

commitment fees, letter of credit fees, and the fees and disbursements of the DIP ABL Agents'

attorneys, advisers, accountants and other consultants.  All fees shall be payable in accordance

with the DIP ABL Loan Documents.

8.      ***Validity of DIP ABL Secured Obligations.***  The DIP ABL Loan

Documents represent valid, binding and unavoidable obligations of the DIP ABL Loan Parties,

enforceable against the DIP ABL Loan Parties and their estates in accordance with their terms,

subject to the terms of the DIP Orders.  The DIP ABL Loan Documents and the DIP Orders

constitute and evidence the validity and binding effect of the DIP ABL Secured Obligations of

WEIL:\96804508\5\73219.0006

the DIP ABL Loan Parties, which DIP ABL Secured Obligations shall be enforceable, jointly and severally, against the DIP ABL Loan Parties, their estates and any successors thereto, including any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case").  Subject to paragraphs 41 and 42, no obligation, payment, transfer, or grant of a security or other interest to the DIP ABL Control Co-Collateral Agent or any other DIP ABL Credit Party under the DIP ABL Loan Documents or the DIP Orders shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including under sections 502(d), 544, 548 or 549 of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, claim or counterclaim.  The DIP ABL Secured Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the DIP ABL Loan Parties to the DIP ABL Credit Parties under the DIP ABL Loan Documents, all DIP ABL Cash Management/Bank Product Obligations, and, in the case of each of the foregoing, including all principal, interest, costs, fees, expenses and other amounts owed in connection therewith or otherwise pursuant to the DIP ABL Loan Documents.

9.    ***No Obligation to Extend Credit.***  The DIP ABL Credit Parties shall have no obligation to make loans or advances under the DIP ABL Facility unless and until the conditions precedent to the closing and the making of such extensions of credit under the DIP ABL Loan Documents have been satisfied in full or waived in accordance with the terms of the DIP ABL Loan Documents.

10.    ***Use of DIP ABL Facility Proceeds.***  From and after the Petition Date, the DIP ABL Loan Parties are authorized, subject to the satisfaction of the terms and conditions set

33

forth in the DIP ABL Loan Documents, to use proceeds of extensions of credit under the DIP ABL Facility only for the purposes specifically set forth in the DIP Orders and the DIP ABL Loan Documents (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; and (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders).

11.    ***No Obligation to Monitor.***   No DIP ABL Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP ABL Facility, and each DIP ABL Credit Party may rely upon each Debtor's representations that the amount of debtor-in-possession financing requested at any time, and the use thereof, are in accordance with the requirements of the DIP Orders and the DIP ABL Loan Documents.

12.    ***DIP ABL Superpriority Claims.***   Subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP ABL Secured Obligations shall constitute allowed administrative expense claims against each of the DIP ABL Loan Parties' estates, jointly and severally, with priority over any and all administrative expenses, including any superpriority claims associated with any other postpetition financing facility, all Adequate Protection Claims and, to the fullest extent permitted under the Bankruptcy Code, all other claims against the DIP ABL Loan Parties, now existing or hereafter arising, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP ABL Superpriority Claims"), which DIP ABL Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the DIP

WEIL:\96804508\5\73219.0006

ABL Loan Parties and their estates and all proceeds thereof, subject only to liens secured thereby and the Carve-Out.  The DIP ABL Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, amended or otherwise modified, on appeal or otherwise.  The DIP ABL Superpriority Claims shall be of equal priority to the Junior DIP Superpriority Claims.

**DIP ABL Liens and DIP ABL Collateral.**

13.    Effective immediately upon entry of the Interim Order and as more fully set forth in the DIP ABL Loan Documents, as security for the full and prompt performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP ABL Secured Obligations, the DIP ABL Control Co-Collateral Agent was granted, for itself and for the benefit of all of the DIP ABL Credit Parties, continuing valid, binding, enforceable, non-avoidable, automatically and properly perfected, post-petition security interests in and liens (the "DIP ABL Liens") on all DIP ABL Collateral *nunc pro tunc* to the Petition Date without the necessity of the execution by the DIP ABL Loan Parties (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, copyright security agreements, trademark security agreements, patent security agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the DIP ABL Agents or any other DIP ABL Credit Party of any DIP ABL Collateral.  The term "DIP ABL Collateral" means Prepetition ABL Collateral and all other assets of the DIP ABL Loan Parties, whether now owned or hereafter acquired, and all proceeds thereof, including all deposit accounts, securities accounts, cash and cash equivalents of the DIP ABL Loan Parties; *provided,* that DIP ABL Collateral excludes any of the following (collectively, the "Excluded Property"): (i) leases of real property except as permitted in the applicable lease or pursuant to applicable law (but in no event shall DIP ABL Collateral exclude the proceeds of such leases); *provided, however*, in

35

the event that the Debtors subsequently seek by separate motion and obtain by final order liens

on all of their leases of real property in connection with a debtor-in-possession financing facility

other than the DIP ABL Facility (including in connection with the Junior DIP Facility), the DIP

ABL Collateral shall include all leases of real property and the DIP ABL Liens and Adequate

Protection Liens shall be first in priority and senior to any other liens thereon; (ii) the DIP ABL

Loan Parties' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549,

550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the

Bankruptcy Code or similar state law (the "Avoidance Actions"), but does not exclude the

proceeds thereof ("Avoidance Action Proceeds"), (iii) the   voting Equity Interests of any

Subsidiary that is not a Domestic Subsidiary (each such term as defined in the DIP ABL Credit

Agreement) in excess of 65% of the voting Equity Interests in such Subsidiary, (iv) any

Intellectual Property (as defined in the DIP ABL Credit Agreement) consisting of intent-to-use

trademark applications and rights in and to such applications, prior to the filing of a "Statement

of Use" or "Amendment to Allege Use" to the extent that a grant of security interest in such

application would impair validity or enforceability, (v) any property to the extent that the grant

of a security interest therein would violate applicable law, require a consent not obtained of any

Governmental Authority (as defined in the DIP ABL Credit Agreement) or constitute a breach or

default under, or result in the termination of or require a consent not obtained under, any

contract, lease, license or other agreement evidencing or giving rise to such property, or result in

the invalidation of such property or provide any party to such contract, lease, license or

agreement with a right of termination of such contract, lease, license or agreement (in each case,

after giving effect to applicable provisions of the New York UCC, the Bankruptcy Code or other

applicable law), and (vi) proceeds and products of any of the foregoing Excluded Property

36

described in clauses (i), (iii) through (vi) above solely to the extent such proceeds and products would constitute property or assets of the type described in clauses (i), (ii) through (vi) above; *provided that* in each case of property described in clause (v) of this definition, such property shall constitute "Excluded Property" only to the extent and for so long as such contract, lease, license or other agreement or applicable law prohibits the creation of a lien on such property in favor of the DIP ABL Control Co-Collateral Agent, and, upon termination of such prohibition, such property shall cease to constitute "Excluded Property".

**Priority of DIP ABL Liens**

14.     The DIP ABL Liens on the DIP ABL Collateral shall in each case be subject to the Carve-Out and otherwise have the following priority:

    (a)     pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens on and security interests in all DIP ABL Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (collectively, the "Prepetition Unencumbered Assets"), which liens shall be *pari passu* with the Junior DIP Liens on Prepetition Unencumbered Assets which constitute "Specified Collateral" (as defined in the DIP ABL Loan Documents, the "Specified Collateral") but subject to any Senior Permitted Liens;

    (b)     pursuant to section 364(c)(3) of the Bankruptcy Code, junior liens on and security interests in all DIP ABL Collateral (other than Prepetition ABL Collateral) that is not subject to Prepetition ABL Liens but is subject to valid and perfected security interests in favor of third parties as of the Petition Date (the "Prepetition Encumbered DIP ABL Collateral") and any Senior Permitted Liens; and

WEIL:\96804508\5\73219.0006

(c)    pursuant to section 364(d) of the Bankruptcy Code, first priority priming security interests and liens on the Prepetition ABL Collateral of each Debtor on which the Prepetition ABL Lenders held a first priority security interest and lien (such liens and security interests, the "<u>DIP ABL Priming Liens</u>"), in each case to the extent that such Prepetition ABL Collateral is subject to Prepetition ABL Liens and such DIP ABL Priming Liens shall be (x) senior in all respects to the interests in such property of the Prepetition ABL Credit Parties under the Prepetition ABL Credit Agreement and the other "secured parties" referred to therein, (y) senior to the Adequate Protection Liens, and (z) subject to any Senior Permitted Liens.

15.    Notwithstanding anything to the contrary herein, the following table sets forth the relative priorities of the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, the Adequate Protection Liens, and the Prepetition Liens on the DIP ABL Collateral:

| Prepetition ABL Collateral | Prepetition Encumbered DIP ABL Collateral | Prepetition Unencumbered Assets (other than Specified Collateral) | Specified Collateral |
|---|---|---|---|
| Carve-Out | Carve-Out | Carve-Out | Carve-Out |
| Senior Permitted Liens | All valid and perfected security interests in favor of third parties as of the Petition Date, including any Senior Permitted Liens | Senior Permitted Liens | Senior Permitted Liens |
| DIP ABL Liens | DIP ABL Liens | DIP ABL Liens | DIP ABL Liens, *pari passu* with Junior DIP Liens |
| Prepetition ABL Facilities Adequate Protection Liens | Junior DIP Liens | Junior DIP Liens | Prepetition ABL Facilities Adequate Protection Liens |

WEIL:\96804508\5\73219.0006

| | | | |
|---|---|---|---|
| 2018 FILO Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | 2018 FILO Adequate Protection Liens |
| Prepetition LC Facility Adequate Protection Liens | 2018 FILO Adequate Protection Liens | 2018 FILO Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens |
| Prepetition ABL Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens |
| Prepetition Second Lien Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens | |
| Prepetition Second Lien Facilities Liens (except on Specified Non-Prepetition Second Lien Collateral) | | | |
| Junior DIP Liens | | | |

16.    ***Treatment of DIP ABL Liens.***  Other than as set forth herein, the DIP ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Chapter 11 Cases or any Successor Case.  The DIP ABL Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.  No lien or interest avoided and preserved for the benefit of the DIP ABL Loan Parties' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP ABL Liens.

WEIL:\96804508\5\73219.0006

**Adequate Protection**

17.    *Adequate Protection Liens.*

(a)    *Prepetition ABL Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, against any aggregate diminution in value of the Prepetition ABL Credit Parties' (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) interests in the Prepetition ABL Collateral resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition ABL Control Co-Collateral Agent on behalf of itself and all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) to the extent of any ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition ABL Facilities Adequate Protection Liens") all DIP ABL Collateral.  The Prepetition ABL Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens and the DIP ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted

40

Liens), the DIP ABL Liens, and the Junior DIP Liens, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, and the Junior DIP Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(b)    *Prepetition 2018 FILO Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, against any aggregate diminution in value of the 2018 FILO Lenders' interests in the Prepetition ABL Collateral resulting from the DIP ABL Loan Parties' use, sale or lease  (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, the "2018 FILO ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders to the extent of any 2018 FILO ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "2018 FILO Adequate Protection Liens") all DIP ABL Collateral.  The 2018 FILO Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, and the Prepetition ABL Facilities Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of

third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens and the Prepetition ABL Facilities Adequate Protection Liens, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, and the Prepetition ABL Facilities Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(c)      *Prepetition LC Facility Adequate Protection Liens.*    Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, against any aggregate diminution in value of the Prepetition LC Facility Credit Parties' interests in the Prepetition ABL Collateral resulting from the Prepetition LC Facility Credit Parties' use, sale or lease  (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, the "Prepetition LC ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition LC Facility Administrative Agent on behalf of itself and all of the other Prepetition LC Facility Credit Parties to the extent of any Prepetition LC ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition LC Facility Adequate Protection Liens") all DIP ABL Collateral.   The Prepetition LC Facility Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL

42

Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, and the 2018 FILO Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(d)     *Second Lien Facilities Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, against any aggregate diminution in value, if any, resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Second Lien Facilities Liens and the subordination to the Carve-Out (collectively, the "Second Lien Diminution in Value," and, collectively with the ABL Diminution in Value, the 2018 FILO ABL Diminution in Value and the Prepetition LC ABL Diminution in Value, the "Diminution in Value") each Prepetition Second Lien Loan Party, pursuant to the Interim Order, granted and hereby grants to the Prepetition Second Lien Collateral Agent on behalf of itself and the other Prepetition Second Lien Credit Parties to the extent of any applicable Second Lien Diminution in Value, if any, a valid and perfected

43

replacement and additional security interest in, and liens on (the "Prepetition Second Lien Adequate Protection Liens," and together with the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens, the "Adequate Protection Liens") all DIP ABL Collateral. The Prepetition Second Lien Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Prepetition ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(e)     *Treatment of Adequate Protection Liens*.  Other than as set forth in the DIP Orders, the Adequate Protection Liens shall not be made subject to or *pari passu* with

any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case. The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

18.    ***Adequate Protection Superpriority Claims.***

(a)    *Prepetition ABL Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties), pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition ABL Adequate Protection Claims") to the extent of any ABL Diminution in Value. Except as set forth herein, the Prepetition ABL Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code;

45

provided, however, that the Prepetition ABL Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, and (iii) the Junior DIP Superpriority Claims.

(b)    *Prepetition 2018 FILO Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders, pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition 2018 FILO Adequate Protection Claims") to the extent of any 2018 FILO Diminution in Value.   Except as set forth herein, the Prepetition 2018 FILO Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; *provided*, *however*, that the Prepetition 2018 FILO Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, and (iv) the Prepetition ABL Adequate Protection Claims.

(c)    *Prepetition LC Facility Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition LC Facility Administrative Agent, for itself and for the benefit of all of the other Prepetition LC Facility Credit Parties, pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the

46

Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition LC Facility Adequate Protection Claims") to the extent of any Prepetition LC Diminution in Value.  Except as set forth herein, the Prepetition LC Facility Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition LC Facility Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, and (v) the Prepetition 2018 FILO Adequate Protection Claims.

(d)     *Second Lien Facilities Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, including any Cash Collateral, on behalf of itself and the other Prepetition Second Lien Credit Parties, the Prepetition Second Lien Collateral Agent, pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code to the extent of any Second Lien Diminution in Value (the "Prepetition Second Lien Facilities Adequate Protection Claims," and together with the Prepetition ABL Adequate Protection Claims, the Prepetition 2018 FILO Adequate Protection Claims, and the Prepetition LC Facility Adequate Protection Claims, the "Adequate Protection Claims") to the extent that the Prepetition Second Lien Adequate Protection Liens are insufficient to protect the Prepetition Second Lien Credit Parties' interests in the Prepetition Second Lien Collateral.  Except as set forth herein, the Prepetition Second Lien Facilities Adequate Protection Claims shall have priority over all administrative

47

expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition Second Lien Facilities Adequate Protection Claim shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, (v) the Prepetition LC Facility Adequate Protection Claims, and (vi) the Prepetition 2018 FILO Adequate Protection Claims.

19.    ***Additional Adequate Protection.***

(a)    *Prepetition ABL Credit Parties.*  As additional adequate protection of the Prepetition ABL Credit Parties' security interests in the Prepetition ABL Collateral, the DIP ABL Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other disbursements of the Prepetition ABL Administrative Agent, the Prepetition ABL Co-Collateral Agents, and the Prepetition LC Facility Administrative Agent whether incurred before, on or after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 19(e) hereof, Skadden, Arps, Slate, Meagher & Flom LLP, Choate, Hall & Stewart LLP, Davis Polk & Wardwell LLP and Berkeley Research Group, LLC, whether incurred before, on or after the Petition Date; (ii) continued maintenance and insurance of the Prepetition ABL Collateral and the DIP ABL Collateral in amounts and for the risks, and by the entities, as required under the Prepetition ABL Loan Documents, the DIP ABL Loan Documents and the DIP Orders; (iii) reporting and information rights equivalent to those granted to the DIP ABL Lenders pursuant to the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and paragraph 22 of this Final Order;

(iv) cash payment of post-petition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement and the Prepetition LC Facility Agreement as such interest becomes due and payable at the applicable non-default rate thereunder; *provided* that in the event of a final determination that the Prepetition ABL Credit Parties or the Prepetition LC Facility Credit Parties, as applicable are undersecured as of the Petition Date, payments received by the applicable undersecured Prepetition ABL Credit Parties or the Prepetition LC Facility Credit Parties, pursuant to this clause (iv) may be recharacterized and applied as payments of principal; and (v) the DIP ABL Borrowers' daily calculation, reporting and certification to the Prepetition ABL Administrative Agent of, and compliance with, the Maximum Loan to Value (Term/Revolver) Ratio and the Maximum Loan to Value (Prepetition) Ratio (each as defined below).

(b)    If on any day the DIP ABL Loan Parties are not in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, the DIP ABL Loan Parties shall immediately and irrevocably repay in cash (i) first, DIP ABL Revolving Advances until paid in full, (ii) second, to cash collateralize letters of credit under the DIP ABL Facility, (iii) third, to the DIP ABL Term Loans until paid in full (with a pro rata reduction in DIP ABL Revolving Commitments), and (iv) after the payment in full of the DIP ABL Facility, the Prepetition ABL Obligations, in each case, until the DIP ABL Loan Parties are in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, as applicable.  In the case of clause (iv), such amounts shall be paid to the Prepetition ABL Administrative Agent and applied in accordance with Section 6.4 of the Collateral and Guarantee Agreement (as defined in the Prepetition ABL Credit Agreement).  For the avoidance of doubt, a failure of the DIP ABL Borrowers to deliver

to the DIP ABL Administrative Agent or Prepetition ABL Administrative Agent, as applicable, the cash when and in such amounts required in accordance with the immediately preceding sentence shall constitute a Termination Event (as defined below) hereunder, and the DIP ABL Administrative Agent or the Prepetition ABL Administrative Agent, as applicable, shall be permitted to exercise all rights and remedies available pursuant to the DIP ABL Loan Documents or Prepetition ABL Loan Documents, as applicable, and the DIP Orders subject to the terms of paragraphs 33 and 34.

(c)    The "Maximum Loan to Value (Term/Revolver) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of (a) the outstanding principal amount of Advances (as defined in the Prepetition ABL Credit Agreement), plus (b) the outstanding principal amount of Swingline Advances (as defined in the Prepetition ABL Credit Agreement), plus (c) the amount of L/C Obligations (as defined in the Prepetition ABL Credit Agreement), plus (d) the outstanding principal amount of the outstanding 2016 Term Loans (as defined in the Prepetition ABL Credit Agreement) (the sum of clauses (a) through (d), the "Prepetition Revolving/Term Exposure"), plus (e) Total Extensions of Credit (as defined in the DIP ABL Loan Documents), plus (f) Availability Reserves (as defined in the DIP ABL Loan Documents), plus (g) the Borrowing Base Carve-Out Reserve (as defined in the DIP ABL Loan Documents), plus (h) the Prepetition FILO Reserve (as defined in the DIP ABL Loan Documents), at any time to exceed 87.5% of the sum of (1) the aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) the aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) (i) the Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) (other than Eligible Inventory  (as

50

defined in the DIP ABL Loan Documents) at stores to be closed pursuant to Specified Store Closing Sales (as defined in the DIP ABL Loan Documents)) at such time and (ii) the Store Closing Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory at Stores to be closed pursuant to Specified Store Closing Sales at such time (the sum of clauses (1) through (3), the "LTV Formula Amount").

(d)      The "Maximum Loan to Value (Prepetition) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of Prepetition Revolving/Term Exposure, plus the outstanding 2018 FILO Extensions of Credit (as defined in the Prepetition ABL Credit Agreement), plus the Total Extensions of Credit (as defined in the DIP ABL Loan Documents), plus Availability Reserves (as defined in the DIP ABL Loan Documents), plus the Borrowing Base Carve-Out Reserve (as defined in the DIP ABL Loan Documents), plus the Prepetition FILO Reserve (as defined in the DIP ABL Loan Documents), at any time to exceed 97.5% of the LTV Formula Amount at such time.

(e)      Payment of all professional fees and expenses of the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent the Prepetition LC Facility Administrative Agent and the Prepetition Consolidated Loan Agent addressed in this Interim Order shall not be subject to allowance by the Bankruptcy Court. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent, the Prepetition LC Facility Administrative Agent and the Prepetition Consolidated Loan Agent shall deliver a copy of their respective invoices to counsel for any Creditors' Committee, the U.S. Trustee (as defined below), and the DIP ABL Administrative Agent. The invoices for such fees and expenses shall not be required to comply with any particular format and may be in summary form only and may

WEIL:\96804508\5\73219.0006

include redactions. For the avoidance of doubt, the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The DIP ABL Loan Parties or, with respect to invoices received in respect of fees and expenses payable to professionals for the Prepetition Consolidated Loan Agent, the Prepetition Consolidated Loan Parties, shall pay such invoice within ten (10) calendar days (if no written objection is received within such ten calendar day period) after such professional has delivered such invoice to the DIP ABL Loan Parties, the Creditors' Committee, the DIP ABL Administrative Agent, and the U.S. Trustee. Any written objections raised by the DIP ABL Loan Parties, the U.S. Trustee, the DIP ABL Administrative Agent or any Creditors' Committee with respect to such invoices within ten (10) calendar days of receipt thereof will be resolved by the Bankruptcy Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the DIP ABL Loan Parties or, with respect to invoices received in respect of fees and expenses payable to professionals for the Prepetition Consolidated Loan Agent, the Prepetition Consolidated Loan Parties. The fees and expenses subject to the procedures in this paragraph 19(e) shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and shall not be subject to compliance with the U.S. Trustee fee guidelines or the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

20.    ***Costs, Fees, Expenses, and Indemnification.***

(a)    *DIP ABL Credit Parties.*    The DIP ABL Loan Parties are authorized to pay any and all reasonable and documented expenses of the DIP ABL Agents in connection with the DIP ABL Facility and as provided for in the DIP ABL Loan Documents, whether incurred before, on or after the Petition Date and whether or not the transactions

contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including fees and expenses incurred in connection with (i) the preparation, negotiation and execution of the DIP ABL Loan Documents; (ii) the syndication and funding of the DIP ABL Facility; (iii) the creation, perfection or protection of the liens under the DIP ABL Loan Documents (including all search, filing and recording fees); (iv) the on-going administration of the DIP ABL Loan Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Chapter 11 Cases; (v) the enforcement of the DIP ABL Loan Documents; (vi) any refinancing or restructuring of the DIP ABL Facility; and (vii) any legal proceeding relating to or arising out of the DIP ABL Facility or the other transactions contemplated by the DIP ABL Loan Documents, including the Chapter 11 Cases. Payment of all such professional fees and expenses shall not be subject to allowance by the Bankruptcy Court or to the U.S. Trustee guidelines, but shall be subject to the procedures set forth in paragraph 19(e) herein. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(b)    *Indemnification of DIP ABL Credit Parties.*  The DIP ABL Credit Parties shall have no liability to any third party relating to the DIP ABL Loan Documents, the DIP ABL Facility and DIP ABL Loan Parties' use of the financing provided thereunder, and shall not, by virtue of making the extensions of credit under the DIP ABL Facility, extending funds thereunder, or otherwise complying with the DIP ABL Loan Documents,  be deemed to be in control of the operations of Debtors, to owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors.  The DIP ABL Loan Parties shall,

WEIL:\96804508\5\73219.0006

and are hereby authorized to, indemnify and hold harmless the DIP ABL Credit Parties and their

respective affiliates and Representatives from and against all losses, liabilities, claims, damages,

penalties, actions, judgments, suits, expenses or disbursements of any nature whatsoever arising

out of or relating to the DIP ABL Loan Documents, including the syndication of any obligations

thereunder, and the DIP ABL Loan Parties' use of the financing provided thereunder, *provided*,

*however*, that the foregoing indemnity shall not apply to any actions of any indemnified parties

determined in a final non-appealable judgment of a court of competent jurisdiction to constitute

gross negligence or willful misconduct.  This indemnification shall survive and continue for the

benefit of all such persons or entities.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

> 21.    ***Carve-Out.***

> > (a)    *Carve-Out.* As used in this Final Order and the DIP ABL Loan

Documents, the "Carve-Out" shall be comprised of the following components:

> (i)    Clerk and U.S. Trustee Fees.  All fees required to be paid to the Clerk of this Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code and 31 U.S.C. § 3717 (collectively, "Clerk and UST Fees").

> (ii)    Chapter 7 Trustee Fees.  All reasonable fees and expenses up to $500,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Fee Cap").

> (iii)    Allowed Professional Fees Incurred Prior to a Carve-Out Trigger Notice.  To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all paid and accrued and unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional Persons") at any time before or on the date of delivery by the DIP ABL Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by this Court prior to or after delivery of a Carve-Out Trigger Notice.  For purposes of the Carve-Out, Allowed Professional Fees shall exclude (i) any restructuring, sale, consummation, success or similar fee of any Professional Person and (ii) fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee.

WEIL:\96804508\5\73219.0006

(iv)    <u>Allowed Professional Fees Incurred After a Carve-Out Trigger Notice.</u>  Allowed Professional Fees of Professional Persons incurred on and after the first business day following delivery by the DIP ABL Administrative Agent of the Carve-Out Trigger Notice shall be subject to an aggregate cap of $20 million (the "<u>Post Trigger Notice Carve-Out Fee Cap</u>").

(b)    *Carve-Out Trigger Notice.*   Upon the occurrence and during the continuance of any Termination Event, the DIP ABL Administrative Agent may deliver a written notice invoking the Post Trigger Notice Carve-Out Fee Cap (the "<u>Carve-Out Trigger Notice</u>") to the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee, and lead counsel for the Creditors' Committee.  The Carve-Out Trigger Notice may be delivered by email (or any other means permitted under the DIP ABL Loan Documents).

(c)    *Delivery of Weekly Fee Estimates.*   Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "<u>Weekly Statement</u>") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "<u>Calculation Date</u>"), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred through the applicable Calculation Date (collectively, "<u>Estimated Fees and Expenses</u>") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors from the Carve-Out Account (as defined below).  No later than one business day after the delivery of a Carve-Out Trigger Notice, each Professional Person shall deliver one additional statement to the Debtors setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve-Out Trigger Notice.

WEIL:\96804508\5\73219.0006

(d)      *Failure to Deliver Weekly Fee Estimates.*   If any Professional Person fails to deliver a Weekly Statement when due (such Professional Person, a "Defaulting Professional Person"), such Professional Person's entitlement (if any) to any amount of the Carve-Out with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable periods for which such Professional Person failed to deliver a Weekly Statement shall be limited to the aggregate unpaid amount of Allowed Professional Fees for such Professional Person included in the Approved Budget, *provided* that such Defaulting Professional Person may cure its failure to provide a Weekly Statement so long as a Carve-Out Trigger Notice has not been delivered.

(e)      *Carve-Out Reserve.*   The DIP ABL Administrative Agent shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of the following:  (i) estimated amounts for Clerk and UST Fees and the Chapter 7 Trustee Fee Cap, plus (ii) the Post Trigger Notice Carve-Out Fee Cap, plus (iii) the aggregate amount of Allowed Professional Fees in the Approved Budget remaining unpaid through the most recent Calculation Date or, if greater, the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and reported to the DIP ABL Administrative Agent, plus (iv) an amount equal to the Allowed Professional Fees set forth in the Approved Budget for the two-week period occurring after the most recent Calculation Date, plus (v) $[29.5] million less any Permitted Carve-Out Success Fees (as defined below) paid by the Debtors pursuant to an order of the Bankruptcy Court.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP ABL Administrative Agent a report setting forth the Carve-Out Reserve Amount as of such time,

56

and, in setting the Carve-Out Reserve, the DIP ABL Administrative Agent shall be entitled to, but shall not be required to, rely upon such reports in determining the Carve-Out Reserve.

(f)    *Carve-Out Account.*    Upon the entry of the Interim Order, the Debtors established a segregated account with the DIP ABL Administrative Agent (the "Carve-Out Account"), which was and shall continue to be funded in an amount up to the Carve-Out Reserve Amount less (i) the Clerk and UST Fees, (ii) the Chapter 7 Trustee Fee Cap, (iii) the Post Trigger Notice Carve-Out Fee Cap (the "Carve-Out Account Required Balance") first with cash on hand  and any availability or proceeds of any other postpetition financing facility, and if such sources are insufficient to fully fund the Carve-Out Account, with borrowings under the DIP ABL Facility.  Amounts in the Carve-Out Account shall  be held in trust to pay all amounts included the Carve-Out.  On each Friday after the date hereof (or if such day is not a business day, then the next business day), the Debtors shall deposit into the Carve-Out Account an amount sufficient to cause the balance in the Carve-Out Account to equal the Carve-Out Account Required Balance.  All Allowed Professional Fees of Professional Persons shall be paid to the applicable Professional Person first from the Carve-Out Account in accordance with the order or orders of the Court allowing such Allowed Professional Fees.  Notwithstanding anything to the contrary in this or any other Court order, the Carve-Out Account and the amounts on deposit in the Carve-Out Account shall be available and used only to satisfy obligations of Professional Persons benefitting from the Carve-Out, and, thereafter, as provided in paragraph 21(g)(v).  Prior to a Carve-Out Trigger Notice, in no event shall the total balance in the Carve-Out Account ever exceed the Carve-Out Account Required Balance.  The failure of the Carve-Out Account to satisfy Allowed Professional Fees in full shall not affect the priority of the Carve-Out.

WEIL:\96804508\5\73219.0006

(g)    *Carve-Out Funding After a Carve-Out Trigger Notice.*    The following provisions with respect to the Carve-Out Account shall apply only upon delivery of a Carve-Out Trigger Notice:

(i)    On the date of the Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall be deemed to constitute a demand to the Debtors to utilize all cash on hand as of such date and any availability or proceeds of any other postpetition financing facility to fund the Carve-Out Account in an amount equal to the full Carve-Out Reserve Amount (to the extent not previously funded into the Carve-Out Account) to be held in trust to pay all amounts included the Carve-Out.

(ii)    On or after the date of a Carve-Out Trigger Notice, the DIP ABL Administrative Agent shall not sweep or foreclose on cash of the Debtors (including cash received as a result of the sale or other disposition of any assets) until the Carve-Out Account has been fully funded. To the extent such cash on hand and availability and/or proceeds of any other postpetition financing facility are not sufficient to fully fund the Carve-Out Account, the Carve-Out Trigger Notice shall be deemed to constitute a draw request and notice of borrowing by the Debtors for DIP ABL Revolving Advances under the DIP ABL Loan Documents (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) to fully fund the Carve-Out Account.    On the first business day after delivery of the Carve-Out Trigger Notice, notwithstanding anything in the DIP ABL Loan Documents to the contrary, including with respect to the existence of a Default (as defined in the DIP ABL Loan Documents) or Event of Default (as defined in the DIP ABL Loan Documents), the failure of the Debtors to satisfy any or all of the conditions precedent for DIP ABL Revolving Advances under the DIP ABL Revolver, any termination of the commitments thereunder following an Event of Default at the direction of the DIP ABL Administrative Agent, each DIP ABL Revolving Lender with an outstanding DIP ABL Revolving Commitments (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) shall make available to the DIP ABL Administrative Agent such DIP ABL Revolving Lender's pro rata share with respect to the borrowings required to fully fund the Carve-Out Account in accordance with the DIP ABL Revolver; *provided, however,* that in no event shall the DIP ABL Credit Parties be required to fund the Carve-Out Account to the extent such funding would cause Capped Excess Availability (as defined in the DIP ABL Loan Documents and determined as if the DIP ABL Revolving Commitments were not terminated due to an Event of Default (as defined in the DIP ABL Loan Documents)) to be less than zero. Any such funding of the Carve-Out shall be added to, and made a part of, the DIP ABL Secured Obligations secured by the DIP ABL Collateral and shall otherwise be entitled to the protections granted under the DIP Orders, the DIP ABL Loan Documents, the Bankruptcy Code, and applicable law.

(iii)    In no event shall the DIP ABL Administrative Agent or the DIP ABL Lenders be required to (x) extend DIP ABL Revolving Advances to fund the Carve-Out other than pursuant to this paragraph 21(g), (y) extend DIP ABL Revolving Advances pursuant to a deemed draw and borrowing pursuant this paragraph in an aggregate amount exceeding the Carve-Out Reserve

WEIL:\96804508\5\73219.0006

Amount, or (z) pay in the aggregate more than the Carve-Out Reserve Amount for all fees and expenses included in the Carve-Out.

(iv)    All funds in the Carve-Out Account shall be used first to pay the obligations set forth in the definition of the Carve-Out set forth above until paid in full.  All payments and reimbursements made from the Carve-Out Account shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(v)    To the extent any funds remain in the Carve-Out Account after payment of all amounts included in the Carve-Out, such funds shall first be used to pay the DIP ABL Administrative Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Secured Obligations have been indefeasibly paid in full, in cash, all commitments under the DIP ABL Facility have been terminated, and all Letters of Credit (as defined in the DIP ABL Loan Documents) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise backstopped to the satisfaction of the DIP ABL Administrative Agent in its sole and absolute discretion), in which case any such excess shall next be paid to the Prepetition Credit Parties in accordance with their rights and priorities under the DIP Orders.

(h)    *Carve-Out Limitations.*  For purposes of the Carve-Out, (i) any success, restructuring, consummation, sale or other similar fees shall not be included except for such fees in an aggregate amount up to $[19.5] million that become Allowed Professional Fees of Lazard Freres & Co. LLC, M-III Advisory Partners, LP, and/or Houlihan Lokey Capital Inc.[3] (the "Permitted Carve-Out Consummation Fees") or any other success, restructuring, consummation, sale or other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion and (ii) Allowed Professional Fees shall exclude fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee. Further notwithstanding anything to the contrary herein, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or

---

[3]    NTD: subject to receipt and review of the Houlihan Lokey engagement letter by the Debtors and the DIP ABL Agent.

other litigation (i) against any of the DIP ABL Credit Parties, Prepetition ABL Credit Parties,[4] or

any Representatives of any of the foregoing, or (ii) challenging the amount, validity, perfection,

priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations

and the liens and security interests granted under the DIP ABL Loan Documents or, the

Prepetition ABL Loan Documents, including, in each case for lender liability or pursuant to

sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-

bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP ABL

Credit Parties or the Prepetition ABL Credit Parties under the DIP ABL Loan Documents, the

Prepetition ABL Loan Documents or the DIP Orders; (c) attempts to prevent, hinder or otherwise

delay any of the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' assertion,

enforcement or realization upon any of the Prepetition Collateral or DIP ABL Collateral in

accordance with the DIP ABL Loan Documents, the Prepetition ABL Loan Documents, and the

DIP Orders other than to seek a determination that a Termination Event has not occurred or is

not continuing; (d) paying any amount on account of any claims arising before the

commencement of the Chapter 11 Cases unless such payments are specifically approved by an

order of the Bankruptcy Court; (e) any success, completion, back-end or similar fees other than

the Permitted Carve-Out Success Fees or any other success, restructuring, consummation, sale or

other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion; and/or

(f) anything else prohibited by the DIP ABL Loan Documents, the Prepetition ABL Loan

---

[4]  Notwithstanding anything to the contrary in this Final Order, the DIP ABL Loan Documents, or the Prepetition
Loan Documents, but subject to the Approved Budget, the Debtors, acting through the Restructuring Committee
and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings, shall not be prohibited
from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any
of its affiliates, or from funding such actions from the proceeds of the DIP ABL Facility or the Carve-Out so
long as it does not affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, in
each case, other than ESL Investments, Inc.  For purposes of this paragraph 20(h), the Prepetition ABL Credit
Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

WEIL:\96804508\5\73219.0006

Documents or any order of the Bankruptcy Court, as applicable.  In no way shall the Carve-Out, the Carve-Out Account, the Approved Budget or any of the forgoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors or the amount of Allowed Professional Fees that may be allowed by the Bankruptcy Court at any time (whether by interim order, final order or otherwise).

(i)     *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.*  Other than the funding of the Carve-Out with the proceeds of the DIP ABL Facility as provided herein and in the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases, any Successor Cases, or otherwise.  Nothing in the DIP Orders or otherwise shall be construed:  (i) to obligate the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, other than the Carve-Out Reserve Amount; (ii) as consent to the allowance of any fees and expenses of Professional Persons; or (iii) to affect the rights of the DIP ABL Credit Parties, the Prepetition ABL Credit Parties or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(j)     *Payment of Compensation.* The Debtors shall be permitted to pay fees and expenses allowed and payable by order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable from the Carve-Out Account.  Such payments prior to a Carve-Out Trigger Notice shall not reduce the Post Trigger Notice Carve-Out Fee Cap.

22.     ***Budget and Borrowing Base Reporting; Budget Compliance***

(a)      The DIP ABL Loan Parties have delivered and/or shall deliver to the Creditors' Committee, DIP ABL Agents and the DIP ABL Lenders: (i) a budget depicting, on a weekly and line item basis, (1) (A) projected cash receipts (including from asset sales), (B) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtor's professionals and advisors), and any other fees and expenses relating to the DIP ABL Loan Documents), (C) projected Net Cash Flow (as defined below), (D) projected inventory receipts and levels, and (E) the projected Borrowing Base (as defined in the DIP ABL Loan Documents) and Excess Availability (as defined in the DIP ABL Loan Documents), (2) a report listing the stores subject to Specified Store Closing Sales and the other remaining stores, and (3) such other information requested by the Agent or any Co-Collateral Agent for the first thirteen (13) week period from the Petition Date (the "Approved Budget"), The Approved Budget is attached hereto as Exhibit C. Any modifications, updates, supplements, or extensions to the Approved Budget shall be approved by, and in form and substance satisfactory to, the Agent and the Co-Collateral Agents in their sole discretion in accordance with the DIP ABL Loan Documents, (ii) on October 31, 2018 and every Wednesday thereafter, a Budget for the immediately following consecutive 13 weeks (each, a "Rolling Budget"), (iii) on October 31, 2018 and every Wednesday thereafter, reports detailing operating and financial performance (the "Weekly Flash Reporting Package") which shall include cash flow performance compared to the Approved Budget for the previous week together with accompanying schedules supporting line items included in the weekly cash flow results (such as roll-forward of inventory sales and receipts, roll-forward of merchandise and other payables of each DIP ABL Loan Party as of the end of the prior week, in each case, in reasonable detail), (iv) other customary information and documents, including approval rights with respect thereto, to be

set forth in the DIP ABL Loan Documents, and (v) other information as may be reasonably requested by the DIP ABL Agents or the Creditors' Committee.  The DIP ABL Loan Parties shall be required to comply with such Approved Budget, including having made all scheduled payments to the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, as applicable, and when required, subject to the Permitted Variance (as defined below).

(b)    The DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent and the Creditors' Committee a borrowing base certificate presenting the DIP ABL Borrowers' computation of the Borrowing Base (as defined in the DIP ABL Loan Documents) (including appropriate supporting data therefor) (a "Borrowing Base Certificate") as soon as available, but in no event later (i) in the case of a draft of the Borrowing Base Certificate, 5:00 p.m. (Central Time) on Wednesday of each week and (ii) in the case of a final Borrowing Base Certificate, 5:00 p.m. (Central Time) on Thursday of each week (or, if Thursday is not a business day, on the next succeeding business day), in each case, as of the close of business on the immediately preceding Saturday.  The initial Borrowing Base Certificate was delivered as a condition precedent to the Initial Closing Date (as defined in the DIP ABL Term Sheet).  In connection with any disposition or series of related dispositions of any DIP ABL Collateral of a type that is included in the Borrowing Base with a value in excess of $7,500,000 in the aggregate (other than inventory in the ordinary course of business and intercompany transfers among DIP ABL Loan Parties), the DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent a roll forward of Eligible Inventory and pro forma Borrowing Base Certificate giving effect to such sale at least one (1) business day prior to the closing of such sale.  In addition, not later than the tenth (10th) day of each month (or later with the consent of the DIP ABL Agents),

WEIL:\96804508\5\73219.0006

commencing with the first full month immediately following the Petition Date, an updated inventory appraisal shall be delivered to the DIP ABL Administrative Agent.

(c)    The DIP ABL Loan Parties shall also provide a budget variance report (the "Budget Variance Report") for delivery to the DIP ABL Agents and the Creditors' Committee by Wednesday of every week for the most recently ended four-week period included in the Approved Budget showing by line item actual cash receipts, disbursements, inventory receipts and consignment receipts for such four week period, in comparable form to the Approved Budget, noting therein all the variance, on a cumulative basis, of the DIP ABL Borrowers' total net cash flow excluding proceeds from asset sales (except for proceeds from the sale of inventory), and financing related items (the "Net Cash Flow") for such four week period in the Approved Budget, including explanations for any material variance (including whether such variance is permanent in nature or timing related) for such four week period. Each Budget Variance Report delivered following a Budget Testing Date (as defined below) shall contain an analysis demonstrating compliance with the Approved Budget subject to the Permitted Variance. The DIP ABL Borrowers will supplement the Weekly Flash Reporting Package and the Budget Variance Report from time to time upon the request of the DIP ABL Agents or the Creditors' Committee.

(d)    The DIP ABL Loan Parties shall be required to comply with each Approved Budget in all material respects, including having made all scheduled payments to the DIP ABL Credit Parties and the Prepetition ABL Credit Parties, as applicable, as and when required, subject to the following (the "Permitted Variance"): the DIP ABL Borrowers' Net Cash Flow shall not be less than the Net Cash Flow set forth in the Approved Budget minus the Applicable Variance Percentage of the absolute value of the Net Cash Flow set forth in the

64

Approved Budget. "Applicable Variance Percentage" shall mean, until November 10, 2018, 20%; from November 24, 2018 until the Termination Date, 15%. Such covenant shall be tested on Saturday each second week (commencing on November 10, 2018) (but shall be reported each week) on a cumulative basis from the Petition Date until the fourth (4th) week after the Petition Date and then on a rolling four (4) week basis, in accordance with the Budget Variance Report delivered by the DIP ABL Borrowers to the DIP ABL Agents and the Creditors' Committee.

(e)    The DIP ABL Loan Parties shall arrange for separate weekly (unless waived by the DIP ABL Agents and the Creditors' Committee in their sole and absolute discretion) conference calls with the DIP ABL Agents and their professional advisors and the Creditors' Committee's professional advisors discussing and analyzing (A) the Approved Budget or the Budget Variance Reports and/or any other reports or information delivered pursuant to the DIP ABL Loan Documents, (B) the financial operations and performance of the Loan Parties' business, (C) the status of landlord negotiations, (D) the status of any Specified Store Closing Sales, (E) the status of the Chapter 11 Cases generally, (F) progress in achieving compliance with the Case Milestones (as defined below) and the Go Forward Plan (as defined in the DIP ABL Loan Documents) or (G) such other matters relating to the Debtors as the DIP ABL Agents or the Creditors' Committee (or either of their respective agents or advisors) shall reasonably request.

23.    ***Winddown Account.***  Upon the consummation of any sales of Prepetition Unencumbered Assets, the DIP ABL Loan Parties shall deposit the first $200 million of net cash proceeds in respect of such sales into the Winddown Account.  "Winddown Account" shall mean a cash collateral account at Bank of America, N.A. that, prior to the discharge in full of all obligations under the DIP ABL Facility, may only be used to pay winddown costs of the DIP

65

ABL Loan Parties at the discretion of the DIP ABL Loan Parties following entry of this Final Order.

24.     ***Modification of DIP ABL Loan Documents***.  Upon no less than three (3) business days' notice to the Creditors' Committee (only to the extent reasonably practicable), the DIP ABL Loan Parties and the DIP ABL Agents are hereby authorized, subject to the DIP ABL Loan Documents, to implement, in accordance with the terms of the respective DIP ABL Loan Documents, any amendments, waivers, consents or other modifications to or under the DIP ABL Loan Documents (including any change in the number or composition of the DIP ABL Lenders) without further order of this Court unless such amendment, waiver, consent or other modification (a) restricts, limits or prohibits any payments required pursuant to paragraph 19 of this Final Order, or (b) shortens the maturity or the scheduled termination date thereunder.

25.     ***Right to Credit Bid.***  Subject to Section 363(k) of the Bankruptcy Code, the DIP ABL Agent and the Prepetition ABL Administrative Agent (subject to obtaining any required consent or direction of the requisite number or percentage of the Prepetition ABL Credit Parties) shall have the right to "credit bid" up to the full allowed amount of their respective claims and outstanding obligations in connection with any sale of all or any portion of the DIP ABL Collateral, including any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code or otherwise.  For the avoidance of doubt, any such credit bid for all or any portion of the DIP ABL Collateral must, upon closing of such sale transaction, provide for payment in full of all senior security interests in and liens on all of the DIP ABL Collateral being acquired in such sale transaction, absent waiver by the DIP ABL Agents.

66

26.    ***Automatic Perfection of DIP ABL Liens and Adequate Protection Liens.***

(a)    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP ABL Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens and the Adequate Protection Liens, or to entitle the DIP ABL Credit Parties or the Prepetition Credit Parties to the priorities granted herein.

(b)    Notwithstanding the foregoing, the DIP ABL Agents and the Prepetition Agents each are hereby authorized, but not required, to file or record (and to execute in the name of the applicable DIP ABL Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over cash, deposit accounts, securities, or other assets, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP ABL Agents or the Prepetition Agents (as applicable) choose, in their sole discretion, to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over any cash, deposit accounts, securities, or other assets, or otherwise confirm perfection of the liens and security interests granted to the DIP ABL Control Co-Collateral Agent and the Prepetition ABL

67

Control Co-Collateral Agent, respectively, hereunder, such liens and security interests were deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Final Order) immediately upon entry of this Final Order, except as set forth in Paragraphs 41 and 42.

(c)     The DIP ABL Loan Parties are authorized to execute and deliver promptly upon demand to the DIP ABL Agents or the Prepetition Agents all such financing statements, mortgages, control agreements, notices and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request.  The DIP ABL Loan Parties are authorized to, and shall, execute and deliver to the DIP ABL Agents and the Prepetition Agents such agreements, financing statements, mortgages, instruments and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect the DIP ABL Liens or the Adequate Protection Liens; and the failure by the DIP ABL Loan Parties to execute or deliver any documentation relating to the DIP ABL Liens or the Adequate Protection Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

(d)     As set forth in the DIP ABL Loan Documents, Wells Fargo Bank, National Association has appointed Bank of America, N.A., in its capacity as a DIP ABL Co-Collateral Agent, as agent to the DIP ABL Co-Collateral Agents for purposes of filing financing statements, mortgages, control agreements, notices and other documents, in connection with the perfection of a security interest in the DIP ABL Collateral which was granted for the benefit of the DIP ABL Credit Parties (the "DIP ABL Control Co-Collateral Agent"). Each Debtor acknowledges that any and all actions to be taken by the DIP ABL Co-Collateral Agents under the DIP Orders and the DIP ABL Loan Documents, may be taken individually by the DIP ABL

WEIL:\96804508\5\73219.0006

Control Co-Collateral Agent, and all such actions shall have the full force and effect as though taken jointly by both of the DIP ABL Co-Collateral Agents. The financing statements described above may describe the DIP ABL Collateral in the same manner as described herein, in the DIP ABL Term Sheet and in the DIP ABL Credit Agreement, or may contain an indication or description of the DIP ABL Collateral that describes such property in any other manner as the DIP ABL Control Co-Collateral Agent may determine is necessary, advisable or prudent, including describing such property as "all assets and all personal property whether now owned or hereafter acquired" of the applicable Debtor or words of similar effect.

(e)     The DIP ABL Agents and the Prepetition Agents, each in their discretion, may file a photocopy of this Final Order as a financing statement or other notice of lien or similar instrument, with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept and record the photocopy of this Final Order, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Each Debtor is authorized to execute and deliver to the DIP ABL Agents or Prepetition Agents, mortgages in recordable form with respect to any real estate constituting DIP ABL Collateral and identified by any of the DIP ABL Agents or Prepetition Agents on terms reasonably satisfactory to the DIP ABL Agents or Prepetition Agents, as applicable.

27.     ***Other Automatic Perfection Matters.***  To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee or additional insured under any of the DIP ABL Loan Parties' insurance policies, or is the secured party under any Prepetition Loan Document, each of the DIP ABL Agents, for itself and on behalf of the DIP ABL Credit Parties is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the DIP ABL Loan Parties' insurance

69

policies, and the secured party under each such Prepetition Loan Document (in any such case with the same priority of liens and claims thereunder relative to the priority of (a) the DIP ABL Liens, and (b) the Prepetition Liens and Adequate Protection Liens, in each case, as set forth in this Final Order), and shall have all rights and powers in each case attendant to that position (including rights of enforcement but subject in all respects to the terms of this Final Order), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of the DIP Orders and the DIP ABL Loan Documents.  The Prepetition ABL Control Co-Collateral Agent or the Prepetition Second Lien Collateral Agent, as applicable, shall serve as agent for the DIP ABL Agents for purposes of perfecting the DIP ABL Agents' security interests in and liens on all DIP ABL Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.  All existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements constituting Prepetition ABL Loan Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors, which in each case were filed by any Prepetition ABL Agent, shall in each case be deemed to be delivered and/or filed in connection with the DIP ABL Facility, shall constitute DIP ABL Loan Documents and shall remain in full force and effect without any further action by

the Debtors, any DIP ABL Agent or any other person, and in each case the DIP ABL Agents shall be deemed to be a party thereto.

28. ***Proceeds of Subsequent Financing.*** If any of the DIP ABL Loan Parties, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in any of the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt in breach of the DIP ABL Loan Documents, at any time prior to the repayment in full in cash of all DIP ABL Secured Obligations, or all Prepetition ABL Obligations, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the DIP ABL Loan Parties and the DIP ABL Loan Parties' estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agents, or if the DIP ABL Secured Obligations have been paid in full in cash, to the Prepetition ABL Administrative Agent, to be applied in accordance with the this Final Order and the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and the Prepetition Loan Documents, as applicable.

29. ***Maintenance and Disposition of DIP ABL Collateral / Cash Management.*** Until the indefeasible payment in full in cash of all DIP ABL Secured Obligations, and the termination of the obligation of the DIP ABL Credit Parties to extend credit under the DIP ABL Facility, the DIP ABL Loan Parties shall (a) maintain and insure the DIP ABL Collateral in amounts, for the risks, and by the entities as required under the DIP ABL Loan Documents, (b) except as set forth in this paragraph 29, maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP ABL Loan Documents;

(ii) subject to the Cash Management Order,[5] as may be modified, with the prior written consent of the DIP ABL Agents by any order that may be entered by this Court; and (iii) in a manner which, in any event, shall be satisfactory to the DIP ABL Agents.  Other than as expressly required pursuant to the DIP ABL Loan Documents, the Cash Management Order or the DIP Orders, no modifications to the DIP ABL Loan Parties' cash management system existing as of the Petition Date may be made without the prior approval of the DIP ABL Agents. Further, the DIP ABL Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Collateral or Prepetition ABL Collateral other than in the ordinary course of business without the prior consent of the DIP ABL Agents and Prepetition ABL Agents, as applicable (and no consent shall be implied, from any other action, inaction or acquiescence by the DIP ABL Agents or Prepetition ABL Agents, or from any order of this Court), except as otherwise provided for in the DIP ABL Loan Documents or otherwise ordered by the Bankruptcy Court.

30. ***Bank Products and Cash Management Services.***  From and after the date of the entry of the Interim Order, and consistent with the DIP Orders and the DIP ABL Loan Documents in all respects, any DIP ABL Cash Management/Bank Product Provider is deemed a Secured Party (as defined in the DIP ABL Loan Documents) and a DIP ABL Credit Party with respect to any claims related to such Bank Products and Cash Management Services (each as defined under the DIP ABL Loan Documents) to the extent provided for under the DIP ABL Loan Documents, and any such Bank Products and Cash Management Services shall constitute a

---

[5]    "Cash Management Order" means an interim or final order granting the *Motion Of Debtors For Authority To (I) Continue  Using Existing Cash Management System, Bank Accounts,  And Business Forms, (II) Implement Ordinary Course Changes  To Cash Management System, (III) Continue Intercompany Transactions, And (IV) Provide Administrative Expense Priority  For Postpetition Intercompany Claims And Related Relief.*

DIP ABL Obligation.  From and after the date of the entry of the Interim Order, the DIP ABL

Loan Parties were and continue to be authorized to request the continuation of letters of credit

issued under the Prepetition LC Facility Agreement that are outstanding as of the Petition Date

(but no new letters of credit), subject to and in accordance with the terms of the Prepetition LC

Facility Agreement. Claims of the Prepetition LC Facility Credit Parties under the Prepetition LC

Facility Agreement shall continue to be secured by the Prepetition ABL Liens in the Prepetition

ABL Collateral.

31.     ***Application of Proceeds of Collateral, Payments and Collections.***  After

repayment in full in cash of all DIP ABL Secured Obligations, any remaining proceeds of the

DIP ABL Collateral shall be applied to the DIP ABL Loan Parties' remaining outstanding and

unpaid obligations, in a manner consistent with the Bankruptcy Code and, except as may be

otherwise ordered in one or more orders of this Court, in accordance with the rights and priorities

set forth in the DIP Orders.

32.     ***Case Milestones.***  The DIP ABL Loan Parties shall comply with the case

milestones set forth in the DIP ABL Loan Documents (as may be amended from time to time in

accordance with the DIP ABL Loan Documents, the "Case Milestones"). For the avoidance of

doubt, the failure of the DIP ABL Loan Parties to comply with any of the Case Milestones shall

(a) constitute an Event of Default under the DIP ABL Loan Documents and this Final Order; (b)

subject to the expiration of the Remedies Notice Period (as defined below), result in the

automatic termination of the DIP ABL Loan Parties' authority to use Cash Collateral under this

Final Order; and (c) permit the DIP ABL Administrative Agent, subject to paragraph 34, to

exercise the rights and remedies provided for in this Final Order and the DIP ABL Loan

Documents.

WEIL:\96804508\5\73219.0006

33.    ***Termination Event.***    (a) The occurrence of any Event of Default (as defined in the DIP ABL Loan Documents), or (b) noncompliance of the DIP ABL Loan Parties in any material respect or in a manner adverse to the DIP ABL Credit Parties with any of the terms, provisions, conditions, covenants or obligations under the DIP Orders are each referred to herein as a "Termination Event."

34.    ***Rights and Remedies Following a Termination Event.***

(a)    *Termination.* Immediately upon the occurrence and during the continuation of a Termination Event, with no further action of this Court, the DIP ABL Administrative Agent may (or at the direction of the Required Lenders (as defined in the DIP ABL Loan Documents) shall), notify the DIP ABL Loan Parties and the Creditors' Committee in writing that a Termination Event has occurred and is continuing (such notice, a "Termination Notice," and the date of any such notice, the "Termination Notice Date").

(b)    *Notice of Termination.* Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Creditors' Committee, the U.S. Trustee, and counsel to each of the Prepetition Agents. The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "Remedies Notice Period" and the date of the expiration of the Remedies Notice Period, the "Termination Date").

(c)    Without limiting the rights and remedies of the DIP ABL Agents and the other DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Administrative Agent may, at its option, and/or shall, upon the direction of the Required Lenders (as defined in the DIP ABL Loan Documents), as applicable, immediately upon the occurrence of and during the continuation of a Termination Event following the issuance of a Termination

74

Notice, *inter alia*, without notice and unless the Bankruptcy Court orders otherwise, declare (a) subject to expiration of the Remedies Notice Period, all obligations owing under the applicable DIP ABL Loan Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP ABL Loan Parties, (b) the termination, reduction or restriction of any further commitment to extend credit to the DIP ABL Loan Parties to the extent any such commitment remains, (c) terminate the DIP ABL Facility and the applicable DIP ABL Loan Documents as to any future liability or obligation of the DIP ABL Agents, any DIP ABL Lender, or any other DIP ABL Credit Party, but without affecting any of the liens or the obligations and/or (d), declare a termination, reduction or restriction on the ability of the DIP ABL Loan Parties to use any Cash Collateral and exercise all other rights and remedies provided in the DIP ABL Loan Documents and applicable law, including to require the DIP ABL Loan Parties to cash collateralize any letters of credit outstanding under the DIP ABL Facility in accordance with the DIP ABL Loan Documents (any of the actions set forth in the foregoing (a), (b), (c) and (d), a "Termination").

(d)    During the Remedies Notice Period, the DIP ABL Loan Parties shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination or for the contested use of Cash Collateral; *provided* that the sole issues that may be raised before the Bankruptcy Court at such emergency hearing are whether a Termination Event has occurred and/or is continuing and the contested use of Cash Collateral.  During the Remedies Notice Period, the DIP ABL Loan Parties may continue to use the DIP ABL Collateral, including Cash Collateral, solely to meet payroll obligations (excluding any severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP

WEIL:\96804508\5\73219.0006

ABL Administrative Agent in its sole and absolute discretion and it being understood that none of the DIP ABL Credit Parties shall have any obligation to make an extension of credit under the DIP ABL Facility, or otherwise to fund the Carve-Out Account.  Upon expiration of the Remedies Notice Period, the DIP ABL Credit Parties or, upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Credit Parties, shall be permitted to exercise all remedies set forth herein, in the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Bankruptcy Court.  Upon the occurrence and during the continuation of a Termination Event and the expiration of the Remedies Notice Period, the DIP ABL Administrative Agent, or upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Administrative Agent, and any liquidator or other professional acting on their behalf will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the DIP ABL Loan Parties have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP ABL Collateral, including pursuant to any Court approved sale process.   Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

WEIL:\96804508\5\73219.0006

(e)      The exercise of the foregoing rights and remedies shall be subject to section [__] of the DIP Intercreditor Agreement, which provides that the DIP ABL Credit Parties shall not apply proceeds of any Prepetition Unencumbered Assets until after the liquidation and application of proceeds of substantially all of the DIP ABL Collateral constituting Prepetition ABL Collateral.

35.      ***Modification of Automatic Stay.***   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of the DIP Orders, including to (a) permit the DIP ABL Loan Parties to grant the DIP ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims; (b) permit the DIP ABL Agents, the Prepetition LC Facility Administrative Agent, or the Prepetition ABL Agents, as applicable, to take any actions permitted hereunder, including but not limited to the actions set forth in paragraph 26 hereof; and (c) authorize the DIP ABL Loan Parties to pay, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties to retain and apply, payments made in accordance with the DIP Orders.

36.      ***Good Faith***.

(a)      *Good Faith Under Section 364 of the Bankruptcy Code.*  The DIP ABL Credit Parties have acted in good faith in connection with the DIP Orders and their reliance on the DIP Orders is in good faith.  Based on the findings set forth in the DIP Orders and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the DIP Orders are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the DIP ABL Credit Parties are entitled to the protections provided in section 364(e)

WEIL:\96804508\5\73219.0006

of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the DIP ABL Secured Obligations, or any lien, claim or priority authorized or created thereby.  Any liens or claims granted to the DIP ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of the DIP Orders shall be governed in all respects by the original provisions of the DIP Orders, including entitlement to all rights, remedies, privileges and benefits granted therein.

(b)     *Prepetition ABL Credit Parties*.  The Prepetition ABL Credit Parties have acted in good faith in connection with the DIP Orders and their reliance on the DIP Orders is in good faith.  Based on the findings set forth in the DIP Orders and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the DIP Orders are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the Prepetition ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the Prepetition ABL Obligations, or any lien, claim or priority authorized or created thereby.  Any liens or claims granted to the Prepetition ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of the DIP Orders shall be governed in all respects by the original provisions of the DIP Orders, including entitlement to all rights, remedies, privileges and benefits granted therein.

37.     ***Proofs of Claim.***  Any order entered by the Bankruptcy Court establishing a bar date for any claims (including administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to any DIP ABL Credit Party or any Prepetition ABL Credit Party (for purposes of this paragraph 37, in their respective capacities as such).  The DIP ABL

Credit Parties and the Prepetition ABL Credit Parties shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by the DIP Orders in any of the Chapter 11 Cases or any Successor Case, and the provisions of the DIP Orders relating to the amount of the DIP ABL Secured Obligations, the Prepetition ABL Obligations, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to the DIP Orders, the Prepetition ABL Liens, the DIP ABL Liens and the DIP ABL Superpriority Claims shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status.  For the avoidance of doubt, subject to the reservation of rights set forth in paragraphs 41 and 42 hereof, the books and records of the DIP ABL Agents, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent and each of their respective successors and assigns shall be deemed conclusive as to the amount of the claims of each such party.  However, in order to facilitate the processing of claims, to ease the burden upon the Bankruptcy Court and to reduce an unnecessary expense to the DIP ABL Loan Parties' estates, the Prepetition ABL Administrative Agent is authorized, but not directed or required, to file in the Prepetition ABL Loan Parties' lead chapter 11 case, a single, master proof of claim on behalf of themselves and the Prepetition ABL Credit Parties on account of any and all of their respective claims arising under the Prepetition ABL Loan Documents, as applicable, and hereunder (the "Master Proof of Claim") against each of the Prepetition ABL Loan Parties.  Upon the filing of the Master Proof of Claim against each of the Prepetition ABL Loan Parties, the Prepetition ABL Administrative Agent, and the Prepetition ABL Credit Parties, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claim of any type or nature whatsoever with respect to the Prepetition ABL Loan Documents, and the claim of each

WEIL:\96804508\5\73219.0006

Prepetition ABL Credit Party (and each of its respective successors and assigns) named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the applicable Chapter 11 Cases.  The Prepetition ABL Administrative Agent shall not be required to identify whether any Prepetition ABL Credit Party acquired its claim from another party and the identity of any such party or to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 37 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of any Prepetition ABL Credit Party (or its successor in interest) to vote separately on any plan proposed in any of the applicable Prepetition ABL Loan Parties' Chapter 11 Cases. The Prepetition ABL Administrative Agent shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Prepetition ABL Loan Parties to the Prepetition ABL Credit Parties, as applicable, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition ABL Administrative Agent.

38.    ***Rights of Access and Information.***  Without limiting the rights of access and information afforded the DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Loan Parties shall be, and hereby are, required to afford Representatives, agents and/or employees of the DIP ABL Agents reasonable access to: (a) the DIP ABL Loan Parties' premises, (b) knowledgeable officers of the DIP ABL Loan Parties, (c) the DIP ABL Loan Parties' books and records, and (d) the DIP ABL Loan Parties' properties and other collateral of any Debtor against whom such parties are granted DIP ABL Liens, DIP ABL Superpriority Claims, Adequate Protection Liens, or Adequate Protection Claims under the DIP Orders and the

WEIL:\96804508\5\73219.0006

DIP ABL Loan Parties shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. Without limiting any other rights or remedies of the DIP ABL Agents or the other DIP ABL Credit Parties, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Loan Documents unless otherwise ordered by the Bankruptcy Court, upon three (3) business days' written notice to counsel to the DIP ABL Loan Parties, counsel to the Creditors' Committee and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, after the expiration of the Remedies Notice Period, that a Termination Event has occurred and is continuing, the DIP ABL Agents, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP ABL Agents (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the DIP ABL Loan Parties for the purpose of exercising any remedy with respect to DIP ABL Collateral located thereon, and (ii) shall be entitled to all of the DIP ABL Loan Parties' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the DIP ABL Loan Parties, which are owned by or subject to a lien of any third party and which are used by DIP ABL Loan Parties in their businesses, in either the case of (i) or (ii), without interference from lienholders or licensors thereunder; *provided*, *however*, that the DIP ABL Agents (on behalf of the applicable DIP ABL Lenders) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the DIP ABL Loan Parties under, and solely as required by, the applicable lease and any amendments thereto that accrue during the period of such occupancy or actual use by DIP ABL Agents calculated on a per diem basis. Nothing herein shall require the DIP ABL Loan Parties, the DIP ABL Agents or the other DIP ABL Credit Parties, to assume any

lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP ABL Agents and the other DIP ABL Credit Parties herein. Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

39.     ***Intercompany Obligations.***     To the extent any Debtor owes any intercompany obligation or indebtedness to any other Debtor or any direct or indirect subsidiary of any Debtor (the "Intercompany Obligations"), such Intercompany Obligations shall, subject to the reservation of rights set forth in paragraphs 41 and 42 hereof, be subordinated to the DIP ABL Secured Obligations, and the guarantees (if any) thereof, until the DIP ABL Secured Obligations are indefeasibly repaid in full in cash. For the avoidance of doubt, any reference in this Final Order to payment (or repayment) in full shall mean: (a) indefeasible repayment of all outstanding obligations in full in cash, (b) termination or expiration of all commitments under any applicable DIP ABL Loan Documents or Prepetition ABL Loan Documents and termination or expiration of any other commitment of any DIP ABL Credit Parties or Prepetition ABL Credit Parties to make extensions of credit to any of the DIP ABL Loan Parties under any such DIP ABL Loan Documents or Prepetition ABL Loan Documents, respectively, (c) all letters of credit issued or deemed issued under the DIP ABL Loan Documents have been canceled or have expired, and all amounts drawn thereunder have been reimbursed in full in cash (or other

82

arrangements with respect thereto satisfactory to the DIP ABL Agents in their sole discretion shall have been made), and (d) solely with respect to the Prepetition ABL Obligations (i) if no Challenge Proceeding has been timely and properly commenced with respect to the prepetition obligations subject to the ABL Roll Up, the expiration of the Challenge Period, or (ii) the date on which any order entered by the Bankruptcy Court in favor of the applicable secured party in such Challenge Proceeding becomes final and non-appealable. For the avoidance of doubt, any Intercompany Obligations shall be subordinated to the DIP ABL Secured Obligations, the DIP ABL Liens, the Adequate Protection Liens, and the Adequate Protection Claims .

40. ***Prohibited Use of DIP ABL Facility, DIP ABL Collateral, Cash Collateral, Carve-Out, etc***. Notwithstanding anything herein, prior to indefeasible payment in full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, except as otherwise expressly provided in this Final Order, the DIP ABL Facility, the DIP ABL Collateral, the Cash Collateral, the Prepetition ABL Collateral, proceeds of any of the foregoing, and the Carve-Out may not be used:

(a) for the payment of interest and principal with respect to Prepetition Obligations or any other prepetition indebtedness of the Debtors, except for: (i) the Carve-Out; (ii) prepetition employee wages, benefits and related employee taxes as of the Petition Date; (iii) prepetition sales, use and real property taxes; (iv) prepetition amounts due in respect of insurance financings, premiums and brokerage fees; (v) payment of certain expenses (which expenses shall include fees and expenses of professionals) of the Prepetition ABL Agents and the Prepetition ABL Credit Parties (solely as required under the Prepetition Loan Documents); (vi) other "first day" interim and final orders permitting payment of prepetition claims, in the case of (ii) through (vi) pursuant to an order or orders of the Bankruptcy Court in form and substance acceptable to the DIP ABL Agents in their sole and absolute discretion and subject to and in accordance with the Approved Budget; (vii) the ABL Roll Up; and (viii) other indebtedness to the extent authorized by the Bankruptcy Court and set forth in the Approved Budget;

(b)       subject to this Final Order in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation or threatened litigation (including any investigation in connection with such litigation or threatened litigation) of any type adverse to the rights, remedies, claims or defenses of the DIP ABL Credit Parties[6] or the Joint Lead Arrangers under the DIP ABL Loan Documents or the Prepetition ABL Credit Parties under the Prepetition ABL Loan Documents, and/or the DIP Orders, including for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding, challenging, or subordinating, in whole or in part, the DIP ABL Secured Obligations, DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payments pursuant to the DIP Orders; (B) for monetary, injunctive, declarative or other affirmative relief against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties or their respective collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties of any rights and remedies under the DIP Orders, the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties upon any of their respective collateral;

(c)       to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP ABL Agents, unless otherwise set forth in the Approved Budget;

(d)       to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtors (including so-called "topping fees," "exit fees" and other similar amounts), except as approved by the Bankruptcy Court, without prior written consent by the DIP ABL Agents, unless otherwise included in the Approved Budget;

(e)       to object to, contest, or interfere with, in any way, the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' enforcement or realization upon any of the Prepetition ABL Collateral or DIP ABL Collateral once a Termination Event has occurred, except as provided for in the DIP Orders,

---

[6]    For the purposes of this paragraph 40 and paragraph 41, the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

or seek to prevent the DIP ABL Credit Parties or the Prepetition ABL Credit Parties from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

(f)    unless in connection with the repayment in full, in cash of the DIP ABL Facility, or the Prepetition ABL Obligations, as applicable, to use or seek to use Cash Collateral while the DIP ABL Secured Obligations, the Prepetition ABL Obligations and/or any of the DIP ABL Credit Parties' commitments under the DIP ABL Loan Documents remain outstanding, without the consent of the DIP ABL Agents, or the Prepetition ABL Administrative Agent, as applicable, other than during the Remedies Notice Period during which period the DIP ABL Loan Parties may only use Cash Collateral in accordance with the terms of the DIP Orders;

(g)    to use or seek to use any insurance or tax refund proceeds constituting DIP ABL Collateral or Prepetition ABL Collateral other than solely in accordance with the Approved Budget and the DIP ABL Loan Documents;

(h)    to incur indebtedness other than in accordance with the Approved Budget or the DIP ABL Loan Documents without the prior consent of the DIP ABL Agent;

(i)    to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, however, that not more than $100,000 in the aggregate of proceeds of the Carve-Out, any Cash Collateral, or any proceeds of the DIP ABL Facility, the DIP ABL Collateral or the Junior DIP Facility may be used by the Creditors' Committee for purposes of investigating such claims, liens, or interests of the Prepetition ABL Credit Parties pursuant to paragraphs 41 and 42 (but not to litigate any of the foregoing);

(j)    to assert, commence, prosecute or support any claims or causes of action whatsoever, including any Avoidance Action, against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, that the foregoing shall not be construed to prohibit the Debtors from responding to discovery requests as required in their reasonable business judgment in consultation with legal counsel

(k)    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP ABL Secured Obligations, the DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to the DIP Orders or any other rights or interests of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

WEIL:\96804508\5\73219.0006

(l)    to sell or otherwise dispose of the DIP ABL Collateral or the Prepetition ABL Collateral other than as contemplated by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable; or

(m)    for any purpose otherwise limited by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable.

41.    *Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.*  The stipulations and admissions contained in the DIP Orders, including the Debtors' Stipulations, shall be binding on the Debtors and any successors thereto in all circumstances. The Debtors' Stipulations shall be binding on the Debtors' estates and each other party in interest, including the Creditors' Committee, unless, and solely to the extent that (a) any such party in interest, including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors' Committee), and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, with standing and requisite authority, has timely commenced an adversary proceeding (subject to the limitations set forth in paragraphs 41 and 42 hereof) against the Prepetition ABL Credit Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "Representatives") in connection with any matter related to the Prepetition ABL Loan Documents or the Prepetition ABL Collateral (a "Challenge Proceeding") by no later than on or before 60 days after entry of this Final Order (the "Challenge Period"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding, *provided that* in the event that the Creditors' Committee files a motion seeking standing to pursue a Challenge Proceeding against any Prepetition Credit Party by no later than on or before 60 days

WEIL:\96804508\5\73219.0006

after entry of this Final Order, the Challenge Period shall be extended, solely with respect to the

Challenge Proceeding for which the Creditors' Committee seeks standing, to the date that is the

earlier of (i) two (2) days after the Court rules on such standing motion, and (ii) February 25,

2019.   Any complaint or motion for standing filed in, or in connection with, any Challenge

Proceeding shall set forth with specificity the basis for such challenge or claim and include a

substantially final complaint, and any challenges or claims not so specified in the standing

motion shall be deemed forever waived, released, and barred and the Challenge Period shall not

be extended for such challenges or claims.   Upon the expiration of the Challenge Period, without

the filing of a Challenge Proceeding.

(a)     any and all such Challenge Proceedings and objections by any party (including any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred,

(b)     all matters not subject to the Challenge Proceedings, including all findings, the Debtors' Stipulations, all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition ABL Credit Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Case;

(c)     any and all prepetition claims or causes of action against the Prepetition ABL Credit Parties, as applicable, relating in any way to the Prepetition ABL Loan Parties or the Prepetition ABL Loan Documents, as applicable, shall be forever waived and released by the Debtors, the Debtors' estates, all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Case;

(d)     to the extent not theretofore repaid, the Prepetition ABL Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction (except as may be provided by section 506(a) of the Bankruptcy Code), defense or avoidance, for all purposes in these Chapter 11 Cases or any Successor Case;

(e)     the Prepetition ABL Liens on the Prepetition ABL Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid,

87

binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and

(f)     the obligations under the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral shall not be subject to any other or further challenge by the Debtors, the Creditors' Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a chapter 7 or chapter 11 trustee and/or examiner appointed or elected for any of the Debtors with respect thereto).

42.     If any Challenge Proceeding is timely commenced, the admissions and stipulations contained in the DIP Orders, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Creditors' Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final, non-appealable order) in such Challenge Proceeding. Nothing in the DIP Orders vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including claims and defenses with respect to the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral. Notwithstanding anything to the contrary in the DIP Orders, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, none of the Debtors, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings nor the Creditors' Committee shall be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL Facility or the Carve-Out so long as it does not affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, in each case, other than ESL Investments, Inc.

WEIL:\96804508\5\73219.0006

43.    ***No Third Party Rights.***    Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

44.    ***Limitations on Charging Expenses.***    No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP ABL Credit Parties with respect to the DIP ABL Collateral or the Prepetition ABL Credit Parties with respect to the Prepetition ABL Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior written consent of each of the DIP ABL Agents, any DIP ABL Credit Party, and/or any Prepetition ABL Credit Party, as applicable, and no such consent shall be implied from this Final Order or any other action, inaction, or acquiescence by any such agents or lenders.

45.    ***Section 552(b).***    The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, with respect to proceeds, products, offspring or profits of any of the Prepetition ABL Collateral or the DIP ABL Collateral.

46.    ***No Marshaling/Applications of Proceeds.***    Neither the DIP ABL Credit Parties nor the Prepetition ABL Credit Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP ABL Collateral or the Prepetition ABL Collateral.

47.    ***Discharge Waiver.***    The Debtors expressly stipulate, and the Bankruptcy Court finds and adjudicates that, none of the DIP ABL Secured Obligations, the DIP ABL

Superpriority Claims, the DIP ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payment obligations pursuant to the DIP Orders, shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP ABL Secured Obligations and the Adequate Protection Claims have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

48.     ***Rights Preserved.***  Other than as expressly set forth in the DIP Orders, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are preserved.  Nothing contained herein shall be deemed to prevent the Prepetition ABL Credit Parties from requesting additional adequate protection or from arguing that the adequate protection granted herein does in fact adequately protect the Prepetition ABL Credit Parties against any post-petition diminution in value of the Prepetition ABL Collateral.

49.     ***Release.***  Subject to paragraphs 41 and 42 and as further set forth in the DIP ABL Loan Documents, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any Successor Case) and any party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or future DIP ABL Agents and other current or future DIP ABL Credit Parties, the Joint Lead Arrangers (as defined in the DIP ABL Loan Documents), the current or future Prepetition ABL Administrative Agent, Prepetition LC Facility Administrative Agent and other current or future Prepetition ABL Credit Parties and each of their respective participants and each of their respective affiliates, and each of their respective Representatives, from any and all claims,

90

demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP ABL Facility, the DIP ABL Loan Documents, the Prepetition ABL Facility, the Prepetition ABL Loan Documents, or the transactions and relationships contemplated hereunder or thereunder, including (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, the Prepetition LC Facility Administrative Agent and the other Prepetition ABL Credit Parties; and (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP ABL Secured Obligations, the DIP ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any adequate protection payment obligations pursuant to the DIP Orders, *provided*, *however*, that the foregoing release shall not release any claims for fraud or willful misconduct, *provided, further* that ESL in any capacity, shall not be entitled to a release pursuant to this paragraph.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP ABL Loan Documents.

WEIL:\96804508\5\73219.0006

50.    ***No Waiver by Failure to Seek Relief.***    The failure or delay of the DIP ABL Credit Parties or the Prepetition Credit Parties to seek relief or otherwise exercise their respective rights and remedies under the DIP Orders, the Prepetition Loan Documents, the DIP ABL Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Credit Parties or the Prepetition Credit Parties.

51.    ***Binding Effect of Final Order.***    Immediately upon entry by the Bankruptcy Court (notwithstanding any applicable Bankruptcy Rules or any other law or rule to the contrary), the terms and provisions of this Final Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP ABL Credit Parties, and the Prepetition ABL Credit Parties, and their respective successors and assigns.  To the extent there is any applicable stay of this Final Order, it is hereby waived.

52.    ***No Modification of Final Order.***    The Debtors irrevocably waive the right to seek and shall not seek or consent, directly or indirectly without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, which consent of the DIP ABL Agents or Prepetition ABL Agents may be refused in their sole and absolute discretion: (a) any modification, stay, vacatur or amendment to the DIP Orders; (b) other than the Carve-Out, a priority claim for any administrative expense or unsecured claim against the Debtors to the fullest extent permitted under the Bankruptcy Code in the Chapter 11 Cases or any Successor Case, equal or superior to the Adequate Protection Claims and the DIP ABL Superpriority Claims; (c) any order allowing use of Cash Collateral constituting DIP ABL Collateral other than the DIP Orders; (d) any lien on any of the DIP ABL Collateral, with priority equal or superior to

WEIL:\96804508\5\73219.0006

the Adequate Protection Liens (other than the Permitted Prior Liens and the DIP ABL Liens). The Debtors irrevocably waive any right to seek any amendment, modification or extension of the DIP Orders without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition ABL Credit Parties or the DIP ABL Credit Parties.

53.    ***Final Order Controls; Modifications to Junior DIP Orders.***    In the event of any inconsistency between the terms and conditions of the DIP ABL Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.    In the event of any inconsistency between this Final Order, on the one hand, and the Interim Junior DIP Order, the Junior DIP Loan Documents, or any order approving the Junior DIP Facility on a final basis, on the other hand, the provisions of this Final Order shall govern and control.    As set forth in the DIP Intercreditor Agreement, neither the Interim Junior DIP Order nor any order approving the Junior DIP Facility on a final basis shall be modified without the consent of the DIP ABL Agents.

54.    ***Survival.***    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Case; or (d) pursuant to which the Bankruptcy Court abstains from hearing the Chapter 11 Cases or any Successor Case.    The terms and provisions of this Final Order, subject to paragraphs 41 and 42, including the claims, liens, security interests and other protections granted to the Prepetition Credit Parties and the DIP ABL Credit Parties pursuant to this Final Order and/or the Prepetition Loan Documents (other than as modified hereby), notwithstanding

93

the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Final Order until all DIP ABL Secured Obligations, all Prepetition ABL Obligations, all Prepetition Second Lien Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to this Final Order, have been paid in full.

55.    ***Preservation of Rights Granted Under this Final Order***.

(a)    Except as expressly provided herein or in the DIP ABL Loan Documents, no claim (to the fullest extent permitted under the Bankruptcy Code) or lien having a priority senior to or *pari passu* with that granted by the DIP Orders to the DIP ABL Credit Parties shall be granted while any portion of the DIP ABL Secured Obligations remain outstanding, and the DIP ABL Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP ABL Secured Obligations and Prepetition ABL Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP ABL Loan Documents and shall terminate the right of the DIP ABL Loan Parties to use Cash Collateral if any of the Debtors seek, or if there is entered (i) any stay, vacatur, rescission, modification, amendment, or extension of the Interim Order or this Final Order without the prior written consent of the DIP ABL Agents, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP ABL Agents; (ii) an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy

WEIL:\96804508\5\73219.0006

Code or dismissing any of these Chapter 11 Cases; (iii) [reserved]; or (iv) any other order granting adequate protection or authorizing the use of Cash Collateral without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, and no such consent shall be implied by any other action, inaction, or acquiescence by any of the DIP ABL Agents and the Prepetition ABL Agents.  If an order dismissing or converting any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the DIP ABL Superpriority Claims, Adequate Protection Claims and other administrative claims granted under the DIP Orders, the DIP ABL Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in the DIP Orders until all DIP ABL Secured Obligations, all Prepetition Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to the DIP Orders shall have been paid and satisfied in full (and that such DIP ABL Superpriority Claims, Adequate Protection Claims, the other administrative claims granted under the DIP Orders, the DIP ABL Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of the DIP Orders are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP ABL Secured Obligations, the Adequate Protection Claims, or any adequate protection payment obligations pursuant to the DIP Orders incurred prior to the actual receipt of written notice by the DIP ABL Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacatur, or

95

(ii) the validity, priority, or enforceability of the DIP ABL Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of DIP ABL Collateral and Prepetition ABL Collateral (including Cash Collateral), any DIP ABL Secured Obligations, any Adequate Protection Claims, or any adequate protection payment obligations pursuant to the DIP Orders incurred by the DIP ABL Loan Parties to the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, and/or the Prepetition ABL Credit Parties, as the case may be, prior to the actual receipt of written notice by the DIP ABL Agents and/or the Prepetition ABL Agents, as the case may be, of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of the DIP Orders, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the DIP Orders, and pursuant to the DIP ABL Loan Documents with respect to all such uses of the DIP ABL Collateral (including the Cash Collateral), all DIP ABL Secured Obligations, all Adequate Protection Claims, and all adequate protection payment obligations pursuant to the DIP Orders.

56.     *Retention of Jurisdiction*.  The Bankruptcy Court shall retain jurisdiction to enforce this Final Order according to its terms to the fullest extent permitted by applicable law.

**Reservations of Rights**

57.     *Chubb.* For the avoidance of doubt, (i) the DIP ABL Lenders shall not have a security interest or lien on any collateral provided by or on behalf of the Debtors to ACE American Insurance Company and ACE Fire Underwriters Insurance Company (together, with each of their affiliates and each of their and their affiliates' successors, "Chubb"), (ii) the Debtors

may not grant liens and/or security interests in such property to any other party, and (iii) this Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; provided that to the extent any such property reverts to the Debtors, such property shall be subject to the terms of this Final Order.

58.    *United States of America.*

(i)    In determining to make any loan under the DIP ABL Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP ABL Credit Parties' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., as amended, or any similar federal or state statute).

(ii)    Nothing in this Final Order or the DIP ABL Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(iii)    As to the United States, its agencies, departments, or agents, nothing in this Final Order or the DIP ABL Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have, and the Debtors and all other parties in interest, including the DIP ABL Credit Parties, reserve all rights to challenge the validity of any such purported right of setoff or recoupment.

59.    *Setoff and Recoupment.* Except as specifically set forth in paragraph 41(d) with respect to the Prepetition ABL Obligations, notwithstanding anything to the contrary in this Final Order, nothing herein is intended to, and shall not: (a) waive, modify, prejudice, limit or otherwise impair the right of any party to exercise rights of setoff or recoupment, if any, under the Bankruptcy Code (including, without limitation, pursuant to section 553 of the

Bankruptcy Code) or any other applicable non-bankruptcy law, subject, however, to section 546(c) of the Bankruptcy Code, (b) provide any party with any greater or lesser setoff or recoupment rights, if any, than they would have under the Bankruptcy Code or any other applicable non-bankruptcy law, or eliminate the need to seek relief from the automatic stay where required before exercising any such rights, or (c) waive, modify, prejudice, limit or otherwise impair any defenses or objections of the DIP Agents or any of the other DIP Credit Parties, the Prepetition ABL Agents or any of the other Prepetition ABL Credit Parties, the Debtors and any other party in interest to such setoff and recoupment rights or the exercise thereof.

WEIL:\96804508\5\73219.0006

60. ***Prepetition Consolidated Loan Lenders.*** As adequate protection of liens held by SL Agent, LLC, as agent (in such capacity, the "Prepetition Consolidated Loan Agent") under that certain Third Amended and Restated Loan Agreement, dated as of June 4, 2018 (as amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the date hereof, the "Prepetition Consolidated Loan Agreement"), among (i) JPP, LLC, JPP II, LLC and Cascade Investment, L.L.C., collectively, as lenders and (iii) Sears, Roebuck And Co., KMART Stores of Illinois LLC, KMART of Washington LLC, KMART Corporation, SHC Desert Springs, LLC, Innovel Solutions, Inc., Sears Holdings Management Corporation, Maxserv, Inc., Troy Coolidge No. 13, LLC, Sears Development Co., Big Beaver Of Florida Development, LLC and Sears Holdings Corporation (collectively, the "Prepetition Consolidated Loan Parties"), the Prepetition Consolidated Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other disbursements of the Prepetition Consolidated Loan Agent whether incurred before, on or after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 19(e) hereof, Debevoise & Plimpton LLP, (ii) continued maintenance and insurance of the "Collateral" as such term is defined in the Prepetition Consolidated Loan Agreement in amounts and for the risks, and by the entities, as required under the Prepetition Consolidated Loan Agreement and this Final Order and (iii) cash payment of post-petition interest on Note A-1 and Note A-2 (each as defined in the Prepetition Consolidated Loan Agreement) under the Prepetition Consolidated Loan Agreement as such interest becomes due and payable at the applicable non-default rate thereunder from and after the Petition Date. For the avoidance of doubt the foregoing does not apply to any portion of the Prepetition Consolidated Loan held by ESL.

61.  ***Reclamation***.  To the extent a seller of goods (a "Reclamation Creditor") asserts rights of reclamation pursuant to and in accordance with both section 2-702(2) of the Uniform Commercial Code (the "UCC") and section 546(c) of the Bankruptcy Code (each a "Reclamation Claim" and, collectively, the "Reclamation Claims") requesting that the Debtors return certain goods identified in the Reclamation Claims (the "Reclamation Goods"), the rights of such Reclamation Creditor (the "Reclamation Rights") in either Reclamation Goods or the proceeds thereof (the "Reclamation Proceeds") and the priority of such Reclamation Rights as against any other interest in the Reclamation Goods or the Reclamation Proceeds shall be preserved solely to the extent a Challenge Proceeding with respect to the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations has been successfully brought in compliance with the provisions of this Final Order and determined by an order entered by the Bankruptcy Court that becomes final and non-appealable; *provided that* in no event shall any alleged Reclamation Claim or Reclamation Right be deemed or treated hereunder as a Permitted Prior Lien rather, any such alleged Reclamation Claim or Reclamation Right shall have the same rights and priority with respect to the DIP ABL Facility, DIP ABL Liens and DIP ABL Collateral as such rights and claims had with respect to the Prepetition ABL Facilities, Prepetition ABL Liens and Prepetition ABL Collateral (subject to paragraphs 41 and 42 of this Order).  Notwithstanding anything herein to the contrary, nothing herein shall determine, or be deemed a determination of the validity or extent of any Reclamation Rights or Reclamation Claims and all parties rights with respect thereto are expressly reserved.

WEIL:\96804508\5\73219.0006

62. ***Texas Assets.*** As adequate protection for the claims of the Specified Governmental Units,[7] the Debtors either will pay such claims directly or fund a segregated account (the "Specified Governmental Units Account"), in each case from the proceeds of the Store Closing Sales located in the jurisdictions subject to the authority of the Specified Governmental Units. The liens asserted by the Specified Governmental Units shall attach to the Specified Governmental Units Account in the same amount, to the same extent and with the same priority, validity and enforceability, and subject to the same defenses, as the liens the Specified Governmental Units now have against such assets of the Debtors. The Specified Governmental Units Account shall be maintained solely for the purpose of providing adequate protection and shall constitute neither the allowance of the claims of the Specified Governmental Units, nor a floor or cap on the amounts the Specified Governmental Units may be entitled to receive. All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Specified Governmental Units are fully preserved. Funds in the Specified

---

[7] For purposes of this Order "Specified Governmental Units" means Allen ISD, Angelina County, Aransas Count, Atascosa County, Atlanta, Atlanta ISD, Bee County, Bexar County, Blanco CAD, Cameron County, Cleveland ISD, Cypress-Fairbanks ISD, Dallas County, Del Rio, Eagle Pass, Eagle Pass ISD, El Paso, Ellis County, Fort Bend County, Frisco, Galveston County, Grayson County, Gregg County, Harlingen, Harlingen CISD, Harris County, Hidalgo County, Hood CAD, Hopkins County, Hunt County, Irving ISD, Jasper County, Jefferson County, Jim Wells CAD, Kaufman County, Lewisville ISD, Matagorda County, McAllen, McLennan County, Montgomery County, Navarro County, Nueces County, Parker CAD, Pecos County, Pleasanton, Polk County, Rockwall CAD, San Patricio County, Smith County, Stephenville, Stephenville ISD, Sulphur Springs, Sulphur Springs ISD, Tarrant County, Tom Green CAD, Val Verde County, Van Zandt CAD, Victoria County, Wharton Co. Jr. College Dist., Wilson County, Wise CAD, Wise County, Wood County, Nolan County, City Sweetwater, Sweetwater Independent School District (ISD), Palo Pinto County, City Mineral Wells, Mineral Wells ISD, Johnson County, City Cleburne, Cleburne ISD, Arlington ISD, Crowley ISD, Eagle Mountain-Saginaw ISD, City Grapevine, Grapevine-Colleyville ISD, Richardson ISD, Carrollton-Farmers Branch ISD, City of Garland, Lubbock Central Appraisal District, Midland County, Tyler ISD, Cass County, Houston County, Mineola ISD, Nacogdoches County ISD, Austin County Appraisal District, Brazoria County Tax Office, Brazoria County Municipal Utility District (MUD) #35, Brazoria County Tax Office, Fort Bend ISD, Fort Bend County Levee Improvement District #2, First Colony MUD #10, Clear Creek ISD, Galveston County Mgmt. Dist. #1, Dickinson ISD, Interstate MUD, Clear Creek ISD, Galveston County Mgmt Dist. #1, Dickinson ISD, Interstate MUD, Clear Creek ISD, City of Houston, Galena Park ISD, HC MUD 285, Clear Creek ISD, City of Houston, Galena Park ISD, Spring Branch ISD, Spring ISD, Alief ISD, Tomball ISD, City of Tomball, Midtown Mgmt District, City of Jasper, City of Cleveland, Bay City ISD, Kerr County, Kendall County, Fayette County, Maverick County, Uvalde County, Weslaco City, Weslaco ISD, Randall County Tax Office, Potter County Tax Office, Gray County Tax Office, Garland ISD, Humble ISD, Harris County MUD 109, and Maricopa County Treasurer.

Governmental Units Account may be distributed upon agreement between the Specified

Governmental Units and the Debtors, with the consent of the DIP ABL Administrative Agent, or

by subsequent order of the Court, duly noticed to the Specified Governmental Units.


Dated: _____, 2018
White Plains, New York

_____
Robert D. Drain
United States Bankruptcy Judge

WEIL:\96804508\5\73219.0006

**Exhibit A**

DIP ABL Credit Agreement

## **Exhibit B**

Syndication Procedures

## **Exhibit C**

Approved Budget

**<u>Exhibit B</u>**

**Redline of Proposed DIP ABL Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                                  :

                                                       :          Chapter 11

SEARS HOLDINGS CORPORATION, *et al.*,                  :

                                                       :          Case No. 18-23538 (RDD)

                                                       :

Debtors. [1]                                           :          (Jointly Administered)

---------------------------------------------------------------x

~~INTERIM~~FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POST-PETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS
AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE
CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY;
AND (IV) ~~SCHEDULING FINAL HEARING; AND (V)~~ GRANTING RELATED RELIEF

Upon the motion (the ""Motion"") of Sears Holdings Corporation (""Holdings"")

and its affiliated debtors, as debtors and debtors-in-possession (collectively, the ""Debtors"") in

the above-captioned chapter 11 cases (the ""Chapter 11 Cases"") pending in the United States

Bankruptcy Court for the Southern District of New York (the ""Bankruptcy Court"") seeking

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

entry of an interim order (~~this~~ the "Interim Order"") and a final order (~~the~~ this "Final Order""

and, together with the Interim Order, the ""DIP Orders"") providing for, among other things, the

following relief:

(i)  authorizing Sears Roebuck Acceptance Corp., a Delaware corporation, (""SRAC""), and Kmart Corporation, a Michigan corporation (""Kmart"", and together with SRAC, the ""DIP ABL Borrowers"") to borrow, and each of the other ~~Debtors~~ Loan Parties (as defined in the DIP ABL Credit Agreement), to guarantee (in such capacity, ~~the "DIP ABL Loan Guarantors"~~ and, together with the DIP ABL Borrowers, the ""DIP ABL Loan Parties""), a senior secured superpriority priming non-amortizing debtor-in-possession asset-based credit facility (the ""DIP ABL Facility""), in an aggregate principal amount of up to $1,830,378,380 ~~billion~~ on the terms and conditions set forth, initially, in the DIP ABL Term Sheet, an execution copy of which is attached to the Motion as Exhibit B ~~and attached~~ (including any subsequent amendments thereto ~~as Exhibit B (,~~ the ""DIP ABL Term Sheet"") ~~pending entry of the Final Order,~~ and, from and after the Final Closing Date (as defined in the DIP ABL Term Sheet), ~~a credit agreement in the form to be filed prior to the Final Hearing~~ the Superpriority Senior Secured Debtor-In-Possession Asset-Based Credit Agreement (the ""DIP ABL Credit Agreement""), among the Debtors, Bank of America, N.A., as administrative agent (in such capacity, the ""DIP ABL Administrative Agent""), Bank of America, N.A. and Wells Fargo Bank, National Association, each as a co-collateral agent (each in such capacity, a ""DIP ABL Co-Collateral Agent"", and together with the DIP ABL Administrative Agent, the ""DIP ABL Agents""), the revolving lenders from time to time party thereto (the ""DIP ABL Revolving Lenders""), and the term lenders from time to time party thereto (the ""DIP ABL Term Lenders"", and together with the DIP ABL Revolving Lenders, the ""DIP ABL Lenders"" and, together with the DIP ABL Agents and the DIP ABL Cash Management/Bank Product Providers ~~(as defined below)~~, the ""DIP ABL Credit Parties"") attached hereto as Exhibit A, allocated and made available to the DIP ABL Borrowers as follows:

(a)  upon entry of ~~this~~ the Interim Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet and ~~this~~ the Interim Order, (x) an asset-based revolving credit facility with aggregate initial commitments of $188,110,759 (such commitments, the ""Incremental DIP ABL Revolving Commitments,"" the advances made pursuant thereto, the ""Incremental DIP ABL Revolving Advances,"" and such facility, the ""Incremental DIP ABL Revolver""), including (i) a $50 million letter of credit subfacility made available upon entry of the Interim Order (the ""Incremental DIP ABL L/C Subfacility""), and (ii) a $25 million discretionary swingline subfacility (the ""Incremental DIP ABL Swingline Subfacility"", the Incremental DIP ABL Revolving Advances, together with the obligations under the Incremental DIP ABL L/C Subfacility and

the Incremental DIP ABL Swingline Subfacility, the "~~"~~"Incremental DIP ABL Revolving Extensions of Credit~~"~~"), and (y) an asset-based term loan facility in an aggregate initial principal amount of $111,889,241 (the "~~"~~"Incremental DIP ABL Term Loan~~"~~", and together with the Incremental DIP ABL Revolving Extensions of Credit~~"~~", the "~~"~~"Incremental DIP ABL Obligations~~"~~");

(b)          upon entry of ~~the~~this Final Order, subject to the terms and conditions set forth in the DIP ABL ~~Term Sheet~~Credit Agreement, the DIP ABL Loan Documents (as defined below), and ~~the~~this Final Order, a roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit (as defined below) beneficially owned by the DIP ABL Revolving Lenders that have agreed to participate in the Incremental DIP ABL Revolver (together with their permitted assignees, the "~~"~~"Roll Up DIP ABL Revolving Lenders~~"~~"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "~~"~~"Roll Up DIP ABL Revolving Extensions of Credit~~"~~", and together with the Incremental DIP ABL Revolving Extensions of Credit, the "~~"~~"DIP ABL Revolving Extensions of Credit~~"~~"; and such loans, the "~~"~~"Roll Up DIP ABL Revolving Advances~~"~~", and together with the Incremental DIP ABL Revolving Advances, the "~~"~~"DIP ABL Revolving Advances~~"~~", the commitments to make such DIP ABL Revolving Advances, the "~~"~~"DIP ABL Revolving Commitments~~"~~"), which, with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations shall roll into a letter of credit subfacility (the Incremental DIP ABL L/C Subfacility, together with such rolled up participations, the "~~"~~"DIP ABL L/C Subfacility~~"~~") and any prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (ii) all of the Prepetition ABL Term Loans (as defined below) beneficially owned by the DIP ABL Term Lenders that have agreed to participate in the Incremental DIP ABL Term Loan ((together with their permitted assignees,] the "~~"~~"Roll Up DIP ABL Term Lenders~~"~~", and together with the Roll Up DIP ABL Revolving Lenders, the "~~"~~"Roll Up DIP ABL Lenders~~"~~"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "~~"~~"Roll Up DIP ABL Term Loans~~"~~", and together with the Incremental DIP ABL Term Loan, the "~~"~~"DIP ABL Term Loans~~"~~" and the Roll ~~UP~~Up DIP ABL Term Loans together with the Roll Up DIP ABL Revolving Extensions of Credit, the "~~"~~"Roll Up DIP ABL Obligations,~~"~~" and such transactions, the "~~"~~"ABL Roll Up~~"~~"), and (iii) bank products (other than those under the Prepetition LC Facility Agreement (as defined below)) and cash management obligations entered into with any Prepetition ABL Cash Management/Bank Product Provider (as defined below) (the "Roll Up DIP ABL Cash Management/Bank Product Obligations") outstanding under the Prepetition DIP ABL Cash Management/Bank Product Obligations, collectively with Bank Products (as defined in the DIP ABL Credit Agreement) and Cash Management Obligations (as defined in the DIP ABL Credit Agreement) entered into

3

with any DIP ABL Lender, any DIP ABL Agent or any of their respective affiliates as of the Petition Date or at the time of entering into such arrangements (each, a "DIP ABL Cash Management/Bank Product Provider"), the Roll Up DIP ABL Obligations, ~~together with~~ the Incremental DIP ABL Obligations and all other obligations under the DIP ABL Loan Documents, the ""DIP ABL Secured Obligations"), and (iii) Bank Products (as defined under the Prepetition ABL Credit Agreement other than those under the Prepetition LC Facility Agreement (as defined below)) and Cash Management Obligations (as defined under the Prepetition ABL Credit Agreement);");

(ii)            authorizing the DIP ABL Loan Parties to execute, deliver and abide by (~~x~~w) the DIP ABL Term Sheet pending entry of ~~the~~this Final Order, (~~y~~x) the DIP ABL Credit Agreement upon entry of ~~the~~this Final Order, (y) the DIP Intercreditor Agreement (as defined below), and (z) any other agreements, instruments, pledge agreements, guarantees, control agreements and other loan documents related to any of the foregoing (including any security agreements, intellectual property security agreements, notes, blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements, and all Uniform Commercial Code filings and all filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors) (each of the foregoing, as amended, restated, supplemented, waived, and/or modified from time to time ~~prior to the Petition Date~~, and collectively, with the DIP ABL Term Sheet (prior to the date of the Final Order) and the DIP ABL Credit Agreement (after entry of ~~the~~this Final Order), the ""DIP ABL Loan Documents""), and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Loan Documents;

(iii)           authorizing the DIP ABL Administrative Agent to terminate any of its obligations under the DIP ABL Loan Documents upon the occurrence and continuance of a Termination Event (as defined below), which includes an Event of Default (as defined in the DIP ABL Loan Documents);

(iv)           To secure all DIP ABL ~~Obligations and all obligations under any cash management services and bank products, including obligations in respect of the BofA Credit Card Program (as defined in the DIP ABL Term Sheet), but excluding obligations under or in connection with the Prepetition LC Facility Agreement (as defined below) (the "DIP ABL Cash Management/Bank Product Obligations", and collectively with the DIP ABL Obligations, the "DIP ABL~~ Secured Obligations") entered into with any DIP ABL Lender, any DIP ABL Agent or any of their respective affiliates as of the Petition Date or at the time of

WEIL:\96804508\5\73219.0006

entering into such arrangements (each, a "DIP ABL Cash Management/Bank Product Provider"), granting to the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all DIP ABL Credit Parties, in accordance with the relative priorities set forth in the DIP Orders and in that certain [DIP Intercreditor Agreement] (the "DIP Intercreditor Agreement"), by and among the DIP ABL Agents and the Junior DIP Agent (as defined below), and acknowledged by the DIP ABL Loan Parties and the Junior DIP Loan Parties (as defined below), and in each case subject to the Carve-Out (as defined below):

(a)          pursuant to sections 364(c)(1), 503(b), and 507(a)(2) of chapter 11 of title 11 of the United States Code (the ""Bankruptcy Code""), superpriority allowed administrative priority expense claims in each of the DIP ABL Loan Parties' Chapter 11 Cases and any Successor Cases (as defined below);

(b)          pursuant to section 364(c)(2) of the Bankruptcy Code, an automatically perfected first priority security interest in and lien on all property of the DIP ABL Loan Parties' estates that is not subject to a valid and perfected lien on the Petition Date, including and, upon entry of the this Final Order, the Avoidance Action Proceeds (as defined below);

(c)          pursuant to section 364(c)(3) of the Bankruptcy Code, an automatically perfected junior priority security interest in and lien on all property of the DIP ABL Loan Parties' estates (other than Prepetition ABL Collateral (as defined below)) that is subject to valid and perfected security interests in favor of third parties as of the Petition Date (as defined below); and

(d)          pursuant to section 364(d) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Prepetition ABL Collateral, subject only to any Permitted Prior Liens (as defined below) and the Permitted Liens (as defined in the DIP ABL Credit Agreement) (collectively, the "Senior Permitted Liens");

(v)          authorizing and directing the DIP ABL Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Loan Documents, the Prepetition LC Facility Agreement (as defined below) as they are earned, due and payable in accordance with the terms of the DIP ABL Loan Documents and the DIP Orders;

(vi)          authorizing the DIP ABL Loan Parties, solely in accordance with the Approved Budget (as defined below), the DIP ABL Loan Documents and the DIP Orders, to use the Prepetition ABL Collateral, including ""Cash Collateral"" (as defined in section 363 of the Bankruptcy Code) of the Prepetition Credit Parties;

(vii)          granting adequate protection to the Prepetition Credit Parties (as defined below) for any diminution in value resulting from the imposition of the

automatic stay, the DIP ABL Loan Parties' use, sale, or lease of the Prepetition Collateral and the priming of their respective liens and interests in the Prepetition Collateral (including by the Carve-Out);

(viii) solely upon entry of ~~the~~this Final Order, the waiver by the DIP ABL Loan Parties of (a) any right to surcharge the DIP ABL Collateral and the Prepetition ABL Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the ""equities of the case"" exception in section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of ""marshaling"" or any similar doctrine with respect to the DIP ABL Collateral and Prepetition ABL Collateral;

(ix) vacating and modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Orders and the DIP ABL Loan Documents; and

(x) pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), requesting an initial hearing on the Motion be held before the Bankruptcy Court to consider entry of the Interim Order (the ""Interim Hearing"") to authorize on an interim basis (a) borrowing under the DIP ABL Loan Documents in an aggregate amount of up to $300 million and (b) the use of the Prepetition ABL Collateral, including Cash Collateral in accordance with the Approved Budget; and

(xi) scheduling a final hearing (the ""Final Hearing"") to approve the Motion and consider entry of the Final Order.

The Interim Hearing having been held before the Bankruptcy Court on October 15, 2018, and the Final Hearing having been held before the Bankruptcy Court on November [27], 2018, each pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and upon the record made by the DIP ABL Loan Parties at the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor:

6

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[2]

**A.**    *Petition Date*.  On October 15, 2018 (the ""Petition Date""), each of the Debtors except for SHC Licensed Business LLC and SHC Promotions LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On October 18, 2018, SHC Licensed Business LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On October 22, 2018, SHC Promotions LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**B.**    *Joint Administration*.  On the Petition Date, the Bankruptcy Court entered an order approving the joint administration of the Chapter 11 Cases.  On November 6, 2018, the Bankruptcy Court entered an order approving the joint administration of the chapter 11 cases of SHC Licensed Business LLC and SHC Promotions LLC with the other Debtors' chapter 11 cases.

**C.**    *Debtors in Possession*.   The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**D.**    *Official Committees*.  No trustee or examiner orThe oOfficial eCommittee of uUnsecured eCreditors (a ""Creditors' Committee"") or any other statutory committee has beenwas appointed in these Chapter 11 Cases as of the date of this Interim Orderon October 24, 2018.

---

[2]    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

E.    *Jurisdiction and Venue*.    The Bankruptcy Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the ""Local Bankruptcy Rules"").

F.    *Notice*.    Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other further notice of the Motion or the entry of this̶the Interim Order or this Final Order shall be required̶,̶ ̶e̶x̶c̶e̶p̶t̶ ̶a̶s̶ ̶s̶e̶t̶ ̶f̶o̶r̶t̶h̶ ̶i̶n̶ ̶p̶a̶r̶a̶g̶r̶a̶p̶h̶ ̶5̶6̶ ̶b̶e̶l̶o̶w̶.̶ ̶ ̶T̶h̶e̶ ̶i̶n̶t̶e̶r̶i̶m̶ ̶r̶e̶l̶i̶e̶f̶ ̶g̶r̶a̶n̶t̶e̶d̶ ̶h̶e̶r̶e̶i̶n̶ ̶i̶s̶ n̶e̶c̶e̶s̶s̶a̶r̶y̶ ̶t̶o̶ ̶a̶v̶o̶i̶d̶ ̶i̶m̶m̶e̶d̶i̶a̶t̶e̶ ̶a̶n̶d̶ ̶i̶r̶r̶e̶p̶a̶r̶a̶b̶l̶e̶ ̶h̶a̶r̶m̶ ̶t̶o̶ ̶t̶h̶e̶ ̶D̶e̶b̶t̶o̶r̶s̶'̶ ̶e̶s̶t̶a̶t̶e̶s̶.

**G.    *Junior DIP Facility*.  Substantially concurrently herewith, the Bankruptcy Court entered the [INTERIM JUNIOR DIP ORDER] (the "Interim Junior DIP Order").  Pursuant to the Interim Junior DIP Order, the DIP ABL Loan Parties have been authorized, on an interim basis, to enter into Junior DIP Credit Agreement (as defined in the Interim Junior DIP Order, the "Junior DIP Credit Agreement"), among the Junior DIP Loan Parties (as defined in the Interim Junior DIP Order, the "Junior DIP Loan Parties"), the Junior DIP Lenders (as defined in the Interim Junior DIP Order, the "Junior DIP Lenders") and GACP Finance Co., LLC, as administrative agent (as defined in the Interim Junior DIP Order, the "Junior DIP Agent" and together with the Junior DIP Lenders and the other "Credit Parties" as defined in the Junior DIP Credit Agreement, the "Junior DIP Credit Parties").  Pursuant to the Junior DIP Credit**

8

Agreement and the other "Loan Documents" (as defined in the Junior DIP Credit Agreement, the "Junior DIP Loan Documents"), in respect of the "Obligations" (as defined in the Junior DIP Credit Agreement, the "Junior DIP Obligations"), the Junior DIP Loan Parties will grant to the Junior DIP Credit Parties certain superpriority claims (the "Junior DIP Superpriority Claims") and liens (the "Junior DIP Liens") as described in the Interim Junior DIP Order, subject in all respects to this Final Order.

**H.** ~~G.~~ *Debtors' Stipulations*. After consultation with their attorneys and financial advisors, the Debtors, on their behalf and on behalf of their estates, admit, acknowledge, agree, and stipulate to the following (collectively, the "Debtors' Stipulations"), subject to the provisions of paragraphs ~~40 and~~ 41 and 42 and subsection (g) below:

  a.   *Prepetition ABL Credit Facilities*. Pursuant to the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Credit Agreement") and, together with all Loan Documents (as defined in the Prepetition ABL Credit Agreement), each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Loan Documents"), by and among (i) SRAC and Kmart, as borrowers (the "Prepetition ABL Borrowers"), (ii) Holdings, as a guarantor (Holdings, together with the "Subsidiary Guarantors" (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties"), (iii) the banks, financial institutions and other institutional lenders from time to time party thereto, as lenders (collectively, the "Prepetition ABL Lenders"), (iv) the "Issuing Lenders" (as defined in the Prepetition ABL Credit Agreement) from time to time party thereto

9

(the ""Prepetition ABL Issuing Lenders""), (v) Bank of America, N.A., as administrative agent (in such capacity, the ""Prepetition ABL Administrative Agent""), as a co-collateral agent, and as swingline lender, (vi) Wells Fargo Bank, National Association, as a co-collateral agent (in such capacity, together with Bank of America, N.A. in such capacity, the ""Prepetition ABL Co-Collateral Agents"", and together with the Prepetition ABL Administrative Agent, the ""Prepetition ABL Agents""), and the Prepetition ABL Agents together with the Prepetition ABL Lenders, the swingline lender the Prepetition ABL Issuing Lenders, and the Prepetition ABL Cash Management/Bank Product Providers (as defined below) and the Prepetition LC Facility Credit Parties (as defined below), the ""Prepetition ABL Credit Parties""), and (vii) the other parties from time to time party thereto, the Prepetition ABL Credit Parties provided the Prepetition ABL Loan Parties with a $1.5 billion asset-based revolving credit facility (the "Prepetition ABL Revolving Facility") including a $1.0 billion letter of credit subfacility (the ""Prepetition ABL L/CRevolving SubfFacility""), a term loan facility in an aggregate original principal amount of $1 billion (the ""Prepetition ABL Term Loan Facility""), a term loan facility in an aggregate original principal amount of $750 million (the ""Prepetition ABL 2016 Term Loan Facility""), and a ""first-in, last-out"" facility in an aggregate original principal amount of $125 million (the ""Prepetition ABL 2018 FILO Facility,"" and the lenders under the Prepetition ABL 2018 FILO Facility, the ""2018 FILO Lenders,"" and the Prepetition ABL 2018 FILO Facility, together with the Prepetition ABL Revolving Facility, the Prepetition ABL Term Loan Facility, and the Prepetition ABL 2016 Term Loan Facility, the ""Prepetition ABL Facilities"").

      b.     ***Prepetition ABL Obligations.***  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facilities was $1,530,378,380,

comprised of (i) $836,034,649 outstanding amount of all Advances, including Swingline Advances under, and each as defined in, the Prepetition ABL Revolving Facility (the ""Prepetition ABL Revolving Advances""); (ii) $123,567,481 million outstanding amount of all L/C Obligations under, and as defined in, the Prepetition ABL Revolving Facility (together with the Prepetition ABL Revolving Advances, the ""Prepetition ABL Revolving Extensions of Credit""); (iii) $0 outstanding principal amount of term loans under the Prepetition ABL Term Loan Facility; (iv) $570,776,250 outstanding principal amount of term loans under the Prepetition ABL 2016 Term Loan Facility (the ""Prepetition ABL Term Loans""); and (v) $125,000,000 outstanding principal amount of the Prepetition ABL 2018 FILO Facility; and together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Loan Documents, cash management services and bank products (the ""Prepetition ABL Cash Management/Bank Product Obligations"") entered into with any Prepetition ABL Lender, any Prepetition ABL Agent or any of their respective affiliates (each, a ""Prepetition ABL Cash Management/Bank Product Provider""), including all obligations under that certain Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the ""Prepetition LC Facility Agreement"" and which constitutes a Prepetition ABL Loan Document), among Holdings, the

11

Prepetition ABL Borrowers, JPP, LLC, JPP II, LLC, Crescent 1, L.P., Canary SC Fund, L.P., CYR Fund, L.P., CMH VI, L.P., and Cyrus Heartland, L.P., as L/C lenders (the ""Prepetition LC Lenders""), and Citibank, N.A., as administrative agent and as issuing bank (in such capacity, the ""Prepetition LC Facility Administrative Agent,"" and together with the Prepetition LC Lenders, the ""Prepetition LC Facility Credit Parties"") under which, as of the Petition Date, $271 million of letters of credit are outstanding thereunder, and which obligations constitute Bank Products and an "Other LC Facility" under and as defined in the Prepetition ABL Credit Agreement, and including all ""Obligations"" as defined in the Prepetition ABL Credit Agreement, and all other amounts that may become allowed or allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, (the ""Prepetition ABL Obligations"").

c.    ***Prepetition ABL Liens and Prepetition ABL Collateral.*** Pursuant to the Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Loan Documents, each of the Prepetition ABL Guarantors unconditionally guaranteed, on a joint and several basis, the punctual and complete performance, payment and satisfaction when due and at all times thereafter of all of the Prepetition ABL Obligations.  Pursuant to the Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Loan Documents, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to Bank of America, N. A., in its capacity as a Prepetition ABL Co-Collateral Agent and as agent for the other Prepetition ABL Co-Collateral Agent (in such capacity, the ""Prepetition ABL Control Co-Collateral Agent""), for the benefit of itself and all of the other Prepetition ABL Credit Parties, a first priority security interest in and continuing lien on (the ""Prepetition ABL Liens"") all of the collateral identified in the Prepetition ABL Loan Documents, including, but not limited to, inventory, credit card

12

accounts receivables, pharmacy receivables, prescription lists, deposit accounts, cash and cash equivalents, and proceeds, insurance claims and supporting obligations of the foregoing, together with Cash Collateral, in all cases whether then owned or existing of thereafter acquired (but excluding, for the avoidance of doubt, any Cash Collateral posted to the Prepetition LC Facility Administrative Agent, in its capacity as issuing bank, by the Prepetition LC Lenders under the Prepetition LC Facility Agreement) (collectively, the "Prepetition ABL Collateral").

d.     ***Agreement Among Lenders.***  JPP, LLC, JPP II, LLC, GACP II, L.P., and Benefit Street 2018 LLC, as 2018 FILO lenders, ESL Investments, Inc., Wells Fargo Bank, National Association, as a Prepetition ABL Co-Collateral agent, and Bank of America, N.A., as Prepetition ABL Administrative Agent and as a Prepetition ABL Co-Collateral Agent, entered into an Agreement Among Lenders, dated as of March 21, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Agreement Among Lenders").

e.     ***Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations***.  The Debtors hereby further acknowledge and agree that as of the Petition Date:

(i)          The Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the Prepetition ABL Loan Documents;

(ii)          The Prepetition ABL Liens on the Prepetition ABL Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to the Prepetition ABL Control Co-Collateral Agent, for the benefit of itself and all of the other Prepetition ABL Credit Parties for fair consideration and reasonably equivalent value;

(iii)          The Prepetition ABL Liens are senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens senior by operation of law or otherwise permitted to be senior under the Prepetition ABL Loan Documents (solely to the extent any such

13

permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date) (the "*"Permitted Prior Liens"*");

(iv)　　　No portion of the Prepetition ABL Liens, the Prepetition ABL Obligations or any payments made to any Prepetition ABL Credit Party or applied to or paid on account of the Prepetition ABL Obligations prior to the Petition Date is subject to any contest, set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), recoupment, recovery, rejection, attack, effect, counterclaims, cross-claims, defenses, or any other challenge or claim (as defined in the Bankruptcy Code) of any kind, any cause of action or any other challenge of any nature under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation or otherwise by any person or entity;

(v)　　　The Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including any Avoidance Actions, against any of the Prepetition ABL Credit Parties (which shall exclude, for purposes of this stipulation, ESL Investments, Inc. or any of its affiliates) or any of their respective Representatives;

(vi)　　　The Debtors have, on behalf of each of their estates and any party that may try to claim by, through, or on behalf of the Debtors' estates, waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations or the validity, extent and priority of the Prepetition ABL Liens;

(vii)　　　The Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code; and

(viii)　　　The Debtors have been and are in default of their obligations under the Prepetition ABL Loan Documents, including as a result of the Chapter 11 Cases, and an Event of Default (as defined in the Prepetition ABL Credit Agreement) has occurred and is continuing.

f.　　　***Intercreditor Agreement.***　The Prepetition ABL Agents, for themselves and the other Prepetition ABL Credit Parties, and the Prepetition Second Lien Collateral Agent, for itself and the other Prepetition Second Lien Credit Parties, entered into a Second Amended and Restated Intercreditor Agreement, dated as of March 20, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "*"Intercreditor Agreement"*").

14

g.    *Application to ESL*.  None of the Debtors' Stipulations shall apply to ESL Investments, Inc. or any of its affiliates (the "ESL Affiliates," and together with ESL Investments, Inc., "ESL").

**I.**    ~~H.~~ *Certain Second Lien Debt.*  The following descriptions are set forth herein for definitional purposes only:

a.    *Prepetition Second Lien 2010 Notes.* Pursuant to the Indenture, dated as of October 12, 2010 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture Documents", together with the Prepetition Second Lien 2018 Indenture Documents (as defined below), the "Prepetition Second Lien Notes Documents"), by among (i) Holdings, as issuer (in such capacity, and as issuer of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Issuer"), (ii) certain subsidiaries of Holdings, as guarantors (in such capacity, and as guarantors of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Guarantors") and (iii) Wilmington Trust, National Association, as trustee (in such capacity, the "Prepetition Second Lien 2010 Indenture Trustee") and as collateral agent (in such capacity, the "Prepetition Second Lien Collateral Agent"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Notes (as defined in the Prepetition Second Lien 2010 Indenture), due 2018 (together with any Exchange Securities (as defined in the Prepetition Second Lien 2010 Indenture) and any Additional Notes (as defined in the Prepetition Second Lien 2010 Indenture) issued under the

15

Prepetition Second Lien 2010 Indenture, the ""Prepetition Second Lien 2010 Notes"" and the holders of such Prepetition Second Lien 2010 Notes, the ""Prepetition Second Lien 2010 Notes Holders"") and, pursuant to an Offering Memorandum (as defined in the Prepetition Second Lien 2010 Indenture), the Prepetition Second Lien Notes Issuer exchanged some of the Prepetition Second Lien 2010 Notes for the Prepetition Second Lien Convertible Notes (as defined below).

b.    ***Prepetition Second Lien 2010 Notes Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of the obligations in respect of the Prepetition Second Lien 2010 Notes totaling approximately $89 million were outstanding, together with accrued and unpaid interest, costs, fees and expenses (the ""Prepetition Second Lien 2010 Notes Obligations"").

c.    ***Prepetition Second Lien Convertible Notes.*** Pursuant to the Indenture, dated as of March 20, 2018, (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the ""Prepetition Second Lien 2018 Indenture"" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the ""Prepetition Second Lien 2018 Indenture Documents""), by and among (i) the Prepetition Second Lien Notes Issuer, (ii) the Prepetition Second Lien Notes Guarantors and (iii) Computershare Trust Company, N.A. as trustee (in such capacity, the ""Prepetition Second Lien 2018 Indenture Trustee"" and, together with the Prepetition Second Lien 2010 Indenture Trustee, the ""Prepetition Second Lien Trustees"", and, the Prepetition Second Lien Trustees, together with the Prepetition Second Lien Credit Agreement Agent and the Prepetition Second Lien Collateral Agent, the ""Prepetition Second Lien Agents"" and, together with the Prepetition ABL Administrative Agent, and the

16

Prepetition LC Facility Administrative Agent, the "Prepetition Agents"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 (as defined in the Prepetition Second Lien 2018 Indenture) (together with any PIK Interest Notes (as defined in the Prepetition Second Lien 2018 Indenture) (or any increase in the principal amount of a Global Note (as defined in the Prepetition Second Lien 2018 Indenture) related to PIK Interest (as defined in the Prepetition Second Lien 2018 Indenture)) and any Additional Notes (as defined in the Prepetition Second Lien 2018 Indenture) issued under the Prepetition Second Lien 2018 Indenture, the "Prepetition Second Lien Convertible Notes") and the holders of such Prepetition Second Lien Convertible Notes, the "Prepetition Second Lien Convertible Notes Holders" and, together with the Prepetition Second Lien 2010 Notes Holders, the "Prepetition Second Lien Notes Holders").

d. **_Prepetition Second Lien Convertible Notes Obligations._** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of obligations were outstanding in respect of the Prepetition Second Lien Convertible Notes, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien Convertible Notes Obligations", together with the Prepetition Second Lien 2010 Notes Obligations, the "Prepetition Second Lien Notes Obligations").

e. **_Prepetition Second Lien Credit Agreement._** Pursuant to the Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and all other agreements and documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or

otherwise modified from time to time prior to the Petition Date, the ""Prepetition Second Lien Credit Agreement Documents""), by and among (i) Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers (the ""Prepetition Second Lien Credit Agreement Borrowers""), (ii) Holdings and the other Guarantors party thereto (as defined in the Prepetition Second Lien Credit Agreement) (the ""Prepetition Second Lien Credit Agreement Guarantors"" and, together with the Prepetition Second Lien Credit Agreement Borrowers, the ""Prepetition Second Lien Credit Agreement Loan Parties"", and the Prepetition Second Lien Credit Agreement Loan Parties, together with the Prepetition Second Lien Notes Issuer and the Prepetition Second Lien Notes Guarantors, the ""Prepetition Second Lien Loan Parties""), (iii) the lenders from time to time party thereto (collectively, the ""Prepetition Second Lien Credit Agreement Lenders""), (iv) JPP, LLC, as administrative agent and collateral administrator (in such capacities, the ""Prepetition Second Lien Credit Agreement Agent"", together with the Prepetition Second Lien Credit Agreement Lenders and the Prepetition Second Lien Collateral Agent, the ""Prepetition Second Lien Credit Agreement Credit Parties"" and, the Prepetition Second Lien Credit Agreement Credit Parties, together with the Prepetition Second Lien Trustees and the Prepetition Second Lien Notes Holders, the ""Prepetition Second Lien Credit Parties"", and, the Prepetition Second Lien Credit Parties, together with the Prepetition ABL Credit Parties, the ""Prepetition Credit Parties"") and (vi) the other parties from time to time party thereto, the Prepetition Second Lien Credit Agreement Credit Parties provided the Prepetition Second Lien Credit Agreement Borrowers with a secured term loan (the ""Prepetition Second Lien Credit Agreement Term Facility""), and line of credit loans (the ""Prepetition Second Lien Credit Agreement Line of Credit Facility"" and, collectively with the Prepetition Second Lien Credit Agreement Term Facility, the ""Prepetition Second Lien Credit Agreement Facilities"").

18

f.      ***Prepetition Second Lien Credit Agreement Facilities Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts were outstanding under the Prepetition Second Lien Credit Agreement Facilities, comprised of (i) certain amounts under the Prepetition Second Lien Credit Agreement Term Facility and (ii) certain amounts under the Prepetition Second Lien Credit Agreement Line of Credit Facility, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Second Lien Credit Agreement Borrowers' or the Prepetition Second Lien Credit Agreement Guarantors' obligations pursuant to, or secured by, the Prepetition Second Lien Credit Agreement Documents, including all "Obligations" as defined in the Prepetition Second Lien Credit Agreement, and all other amounts that may become allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, the "Prepetition Second Lien Credit Agreement Obligations", together with the Prepetition Second Lien Notes Obligations, the "Prepetition Second Lien Obligations", and, together with the Prepetition ABL Obligations, the "Prepetition Obligations").

g.      ***Prepetition Second Lien Facilities Liens and Prepetition Second Lien Facility Collateral.*** Pursuant to the Prepetition Second Lien Notes Documents and the Prepetition Second Lien Credit Agreement Documents (collectively, the "Prepetition Second Lien Credit Documents" and, together with the Prepetition ABL Loan Documents and the

19

Intercreditor Agreement, the ""Prepetition Loan Documents""), each of the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Guarantors (collectively, the ""Prepetition Second Lien Guarantors"") unconditionally guaranteed, on a joint and several basis, the due and punctual payment of all the Prepetition Second Lien Obligations. Pursuant to the Prepetition Second Lien Credit Documents, the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Credit Parties granted to the Prepetition Second Lien Collateral Agent, for the benefit of itself, all of the Prepetition Second Lien Credit Parties, a second priority security interest in and continuing lien on (the ""Prepetition Second Lien Facilities Liens"", and together with the Prepetition ABL Liens, the ""Prepetition Liens"") all of the collateral identified in the Prepetition Second Lien Credit Documents, in all cases whether then owned or existing ~~of~~or thereafter acquired (collectively, the ""Prepetition Second Lien Collateral,"" and together with the Prepetition ABL Collateral, the ""Prepetition Collateral,"" and the property that constitutes Prepetition ABL Collateral, but which is not Prepetition Second Lien Collateral, the ""Specified Non-Prepetition Second Lien Collateral"").

**J.**      *Validity of Prepetition Second Lien Obligations/Prepetition Second Lien Facilities Liens.*  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Second Lien Obligation and/or Prepetition Second Lien Facilities Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Second Lien Obligation, Prepetition Second Lien Facilities Lien and/or security interests, *provided, however*, no such challenge shall have any effect or impact on the Prepetition ABL Obligations or Prepetition ABL Liens, or any adequate protection granted

20

to the Prepetition ABL Credit Parties.  For the avoidance of doubt, solely after the payment in full of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Second Lien Obligations, Prepetition Second Lien Facilities Liens or Prepetition Second Lien Collateral.

     **K.**    *Validity of Prepetition Obligations/Prepetition Collateral related to ESL.*
Nothing herein shall constitute a finding or ruling by this Court in favor of ESL that any Prepetition Obligation and/or Prepetition Lien in respect of any Prepetition Obligations owned by ESL (collectively, the "ESL Debt") is valid, senior, enforceable, prior, perfected, or non-avoidable, *provided, however* there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to the terms of this Final Order.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged ESL Debt and/or related security interests, *provided, however* there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to the terms of this Final Order.  For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine

WEIL:\96804508\5\73219.0006

of "marshaling" or any similar doctrine with respect to any ESL Debt or collateral securing any ESL Debt, in each case, after payment in full of all DIP ABL Obligations and Prepetition ABL Obligations not constituting ESL Debt.  Nothing in this paragraph shall affect or impact the Prepetition ABL Obligations that are not owned by ESL or Prepetition ABL Liens securing such obligations, or any adequate protection granted to the Prepetition ABL Credit Parties other than ESL.

**L.**    ~~I.~~ *Cash Collateral.*  The DIP ABL Loan Parties represent that all of the DIP ABL Loan Parties' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition ABL Collateral, constitutes Cash Collateral and is Prepetition ABL Collateral but not Prepetition Second Lien Collateral.

**M.**    ~~J.~~ *Permitted Prior Liens.*  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP ABL Credit Parties, the Prepetition Credit Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.~~–~~ For the ~~purposes hereof, the right of a seller of goods to reclaim such goods under~~avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section ~~546~~506(c) of the Bankruptcy Code ~~is not a~~, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Permitted Prior Lien~~s and is expressly subject to~~, *provided that* the lack of such a waiver shall not adversely affect in any manner the Prepetition ABL ~~Liens and DIP ABL Liens (as defined~~

below).Credit Parties or the DIP ABL Credit Parties, *provided, further* that any attempts or efforts to invoke the provisions referenced in clauses (a) through (c) of this sentence shall be subject in all respects to the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents until the payment in full in cash of all DIP ABL Obligations and Prepetition ABL Obligations, respectively.

**N.** ~~K.~~ *Agreement Among Lenders and Intercreditor Agreement.*   Pursuant to section 510 of the Bankruptcy Code, the Agreement Among Lenders, the Intercreditor Agreement and any other intercreditor or subordination provisions contained in the Prepetition ABL Loan Documents shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of, in the case of the Intercreditor Agreement, the Prepetition Credit Parties, and, in the case of the Agreement Among Lenders, the Prepetition ABL Credit Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under ~~this Interim~~the DIP Order~~s~~ or otherwise and the modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified by the terms of ~~this Interim~~the DIP Order~~s~~ or the DIP ABL Loan Documents, unless expressly set forth herein or therein.  Solely for purposes of the Intercreditor Agreement, any repayment of the Prepetition ABL Obligations pursuant to ~~this Interim~~the DIP Order~~s~~ shall not be deemed to constitute a ~~"~~"Discharge of ABL Obligations~~"~~" as such term is used in the Intercreditor Agreement.

**O.**    ~~L.~~ *Findings Regarding DIP Financing and Use of Cash Collateral.*

a.    *Good Cause.*    Good cause has been shown for the entry of this ~~Interim~~Final Order.

b.      ***Request for Post-Petition Financing and Use of Cash Collateral.***  The DIP ABL Loan Parties have sought authority to enter into the DIP ABL Loan Documents.  The DIP ABL Credit Parties shall have no obligation to make or be deemed to have made loans, advances or other extensions of credit under the DIP ABL Facility except to the extent required under the respective DIP ABL Loan Documents and shall have no obligation to waive any conditions required thereunder.  The DIP ABL Loan Parties have sought authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, to administer their Chapter 11 Cases and fund their operations.

c.      ***Need for Post-Petition Financing and Use of Cash Collateral.***  The Debtors' need to use Cash Collateral and to obtain credit as set forth in the DIP ABL Loan Documents is immediate and critical in order to, among other things, enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships, pay employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP ABL Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, creditors and other stakeholders, and the possibility for maximizing the value of their businesses.  The Debtors do not have sufficient available sources of working capital and financing to operate their business or to maintain their properties in the ordinary course of business without the DIP ABL Facility and continued use of Cash Collateral.  Consummation of the financing contemplated by the DIP ABL Loan Documents and the use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of ~~this Interim~~the DIP Order~~s~~ therefore are in the best interests of the Debtors' estates.

WEIL:\96804508\5\73219.0006

d.    ***No Credit Available on More Favorable Terms.***  Given their current financial condition, financing arrangements, and capital structure, despite diligent efforts, the DIP ABL Loan Parties are unable to reasonably obtain post-petition financing from sources other than the DIP ABL Lenders on terms more favorable than those set forth in the DIP ABL Loan Documents.  The DIP ABL Loan Parties have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The DIP ABL Loan Parties have also been unable to obtain secured credit from other sources on better terms:  (a) solely having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured only by a lien on property of the DIP ABL Loan Parties and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the DIP ABL Loan Parties and their estates that is already subject to a prepetition lien.  Further, the Required Lenders (as defined in the Prepetition ABL Credit Agreement) are supportive of the priming of the Prepetition ABL Liens and to the use of their Cash Collateral only to the extent provided herein and under the DIP ABL Loan Documents.  Financing on a post-petition basis is not otherwise available without: (x) granting the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other DIP ABL Credit Parties (i) perfected security interests in and liens on (each as provided herein) all of the DIP ABL Loan Parties' existing and after-acquired assets with the priorities set forth herein; (ii) superpriority claims; and (iii) the other protections set forth in this Interimthe DIP Orders, and (y) upon entry of thethis Final Order, providing for the roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit beneficially owned by the applicable DIP ABL Revolving Lenders and (ii) all of the Prepetition ABL Term Loans beneficially owned by the

WEIL:\96804508\5\73219.0006

applicable DIP ABL Term Lenders, in each case, upon the terms set forth in ~~the~~this Final Order and in the DIP ABL Credit Agreement.

e.    ***Use of Proceeds; Approved Budget.***    As a condition to entry into the DIP ABL Loan Documents, the extensions of credit under the DIP ABL Facility and the authorization to use Cash Collateral, the DIP ABL Lenders and Prepetition ABL Agents require, and the DIP ABL Loan Parties have agreed, that proceeds of the DIP ABL Facility and Cash Collateral shall be used in accordance with the terms of the DIP ABL Loan Documents, including the Approved Budget, which shall be subject to (a) such variances as may be permitted by the DIP ABL Loan Documents, (b) ~~this Interim~~the DIP Order~~s~~, and (c) the Carve-Out.  The DIP ABL Loan Parties shall not directly or indirectly pay any expense or other disbursement other than those set forth herein, in the Approved Budget or the Carve-Out.  The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents and solely in accordance with the Approved Budget (subject to the Carve-Out), including, to the extent provided therein, (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders to the extent provided in the DIP ABL Loan Documents) as set forth in the DIP ABL Loan Documents; (iii) payment of other such prepetition obligations as set forth in the Approved Budget, and as approved by the Bankruptcy Court; and (iv) payment of certain adequate protection amounts to the Prepetition ABL Credit Parties as set forth in paragraph ~~18~~ 19 hereof.

26

f.    ***Willingness to Provide Financing.*** The DIP ABL Lenders have indicated a willingness to provide financing to the DIP ABL Loan Parties, ~~subject to the entry of this Interim Order and~~ conditioned upon entry of ~~the~~this Final Order, including findings that such financing and use of Cash Collateral is essential to the DIP ABL Loan Parties' estates, that the DIP ABL Lenders are extending credit to the DIP ABL Loan Parties as set forth in the DIP ABL Loan Documents in good faith, that the Prepetition ABL Credit Parties are permitting the use of Cash Collateral in good faith, and that the DIP ABL Credit Parties' and the Prepetition ABL Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of ~~this~~the Interim Order, ~~the~~this Final Order or any other order.  As a condition to the entry into the DIP ABL Loan Documents and the extensions of credit under the DIP ABL Facility, the DIP ABL Loan Parties, the DIP ABL Agents, and the other DIP ABL Credit Parties have agreed that proceeds of DIP ABL Collateral and all payments and collections received by the DIP ABL Loan Parties shall be applied solely as set forth in the DIP ABL Loan Documents and the DIP Orders.

g.    ***Business Judgment and Good Faith Pursuant to Section 364(e).***  The extension of credit under the DIP ABL Facility and the DIP ABL Loan Documents, and the authorization to use Cash Collateral on the terms set forth herein, ~~is~~are fair, reasonable, and the best available to the DIP ABL Loan Parties under the circumstances, reflect the DIP ABL Loan Parties' exercise of sound and prudent business judgment, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence or violation of public policy or law.   The DIP ABL Loan

27

Documents, the DIP ABL Facility and the provisions regarding the use of Cash Collateral were negotiated in good faith and at arm's length among the DIP ABL Loan Parties, certain of the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP ABL Facility, and the use of Cash Collateral, including in respect of the granting of the DIP ABL Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP ABL Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Use of Cash Collateral and any credit to be extended as set forth in ~~this Interim~~either of the DIP Orders and in the DIP ABL Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and ~~this Interim~~the DIP Orders, and therefore, the claims, security interests, liens, and other protections granted pursuant to ~~this Interim~~the DIP Orders should be preserved to the extent provided for in ~~this Interim~~the DIP Orders.

h.  ***Priming of Prepetition Liens.***  The priming of the Prepetition Liens on the Prepetition ABL Collateral by the DIP ABL Liens to the extent set forth in the DIP ABL Loan Documents and ~~this Interim~~the DIP Orders will enable the DIP ABL Loan Parties to obtain the DIP ABL Facility and to continue to operate their businesses for the benefit of their estates and creditors.  The Required Lenders (as defined in the Prepetition ABL Credit Agreement) support such priming liens solely to the extent set forth in the DIP ABL Loan Documents and ~~this~~

WEIL:\96804508\5\73219.0006

~~Interim~~the DIP Order~~s~~, subject to receipt of adequate protection of their respective interests in the Prepetition ABL Collateral as set forth herein. The Required Lenders (as defined in the Prepetition ABL Credit Agreement) have acted in good faith in supporting the (i) DIP ABL Loan Parties' use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of ~~this Interim~~the DIP Order~~s~~, (ii) priming of the Prepetition Liens by the DIP ABL Liens on Prepetition ABL Collateral to the extent set forth in the DIP ABL Loan Documents and ~~this Interim~~the DIP Order~~s~~, and (iii) entry of ~~this Interim~~the DIP Order~~s~~ and the granting of the relief set forth therein, and their reliance on the assurances referred to herein is in good faith.

> i.    ***Adequate Protection for Prepetition Credit Parties.***  The Prepetition Credit Parties are entitled to, and shall receive, adequate protection as set forth in paragraphs ~~16~~17 through ~~18~~19 below to the extent of ~~any~~the aggregate diminution in value of their interests in the Prepetition ABL Collateral, pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code. The adequate protection provided to the Prepetition Credit Parties pursuant to the terms of ~~this Interim~~the DIP Order~~s is~~are necessary and appropriate in light of, among other things, (a) the DIP ABL Loan Parties' proposed use and sale of the Prepetition ABL Collateral, including Cash Collateral, (b) the granting of priming liens on the Prepetition ABL Collateral in connection with the DIP ABL Facility, (c) the potential decline in the value of the Prepetition ABL Collateral, ~~and~~ (d) the imposition of the automatic stay, and (e) the subordination of the Prepetition Obligations to the Carve-Out.

> j.    ***Sections 506(c) and 552(b).***  ~~In t~~The ~~Final Order, the~~ Debtors ~~will seek a~~ waive~~r~~, for the benefit of the DIP ABL Credit Parties and the Prepetition Credit Parties, of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any ""equities of the case"" under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of ""marshaling"" or any

29

similar doctrine with respect to the DIP ABL Collateral and the Prepetition ABL Collateral in light of (i) the subordination of their liens and superpriority claims, as applicable, to the Carve-Out, (ii) the use of Cash Collateral and the subordination of the Prepetition Obligations, Prepetition Liens, Adequate Protection Claims (as defined below) and Adequate Protection Liens (as defined below) to the Carve-Out, the DIP ABL Liens and the DIP ABL Superpriority Claims (as defined below), as applicable, and (iii) the Approved Budget covering all administrative costs projected by the DIP ABL Loan Parties.

k. ***Final Hearing.*** At the Final Hearing, the DIP ABL Loan Parties will seek final approval of the proposed post-petition financing arrangements, use of Cash Collateral and the ABL Roll Up pursuant to the Final Order, which shall be in form and substance acceptable to the DIP ABL Agents in their sole and absolute discretion. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order and no further notice, except as provided by this Interim Order, shall be required.

l. ***Immediate Entry.*** The DIP ABL Loan Parties have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Bankruptcy Rule 4001-2. The authorization granted herein on an interim basis to use the Prepetition ABL Collateral, including Cash Collateral, to enter into the DIP ABL Loan Documents, and to borrow under the DIP ABL Facility is necessary to avoid immediate and irreparable harm to the DIP ABL Loan Parties and their estates during the period beginning on the date hereof through and including the earlier to occur of (i) the date of the entry of the Final Order by this Court and (ii) the Termination Date (as defined below). This Court concludes that the entry of this Interim Order is in the best interests of the DIP ABL Loan Parties and their estates and creditors because

~~it will, among other things, allow the DIP ABL Loan Parties to meet payroll and other critical expenses and thereby maximize the value of their estates.~~

k.   ~~m.~~ ***Notice.*** Notice of the ~~Interim~~Final Hearing and the ~~emergency~~ relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest as set forth in the Motion~~.  Under~~ and the ~~circumstances,~~Interim Order.   ~~t~~The notice given by the Debtors of the Motion, the relief requested therein, and the ~~Interim~~Final Hearing constitutes adequate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.   ***Motion Granted.*** The Motion is granted on ~~an interim~~a final basis to the extent set forth herein.

2.   ***Use of Prepetition ABL Collateral Approved.*** Subject to and consistent with the terms of the DIP ABL Loan Documents, ~~this Interim~~the DIP Order~~s~~, and the Approved Budget, the DIP ABL Loan Parties are hereby authorized to use the Prepetition ABL Collateral (including Cash Collateral) until the Termination Date to the extent set forth herein; provided, however, that during the Remedies Notice Period (as defined herein), the DIP ABL Loan Parties may use Cash Collateral solely to meet payroll obligations (but not severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP

31

ABL Agents in their sole and absolute discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph ~~20~~ 21 of this ~~Interim~~Final Order.

3.    ***Objections Overruled.***    All objections to and reservations of rights with respect to the ~~interim~~ relief sought in the Motion and to the entry of this ~~Interim~~Final Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.

**DIP ABL Facility Authorization**

4.    ***Authorization of the DIP ABL Loan Documents.***    The DIP ABL Loan Parties are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP ABL Loan Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith. The DIP ABL Loan Parties are hereby authorized to borrow money and issue letters of credit under the applicable DIP ABL Loan Documents, on ~~an interim~~a final basis in accordance with and subject to the terms and conditions of ~~this Interim~~the DIP Order~~s~~ and the DIP ABL Loan Documents, and to perform all other obligations hereunder and thereunder~~, provided that until the entry of the Final Order, the DIP ABL Loan Parties are only authorized to borrow an aggregate principal amount of up to $300,000,000.00 under the DIP ABL Facility in the form of Incremental DIP ABL Revolving Extensions of Credit and Incremental DIP ABL Term Loans.~~.

5.    ***ABL Roll Up.***    ~~In the~~Upon entry of this Final Order, the ~~Debtors will seek approval of the~~ following transactions~~: (a) each Roll Up DIP ABL Revolving Lender shall be deemed to have made Roll Up DIP ABL Revolving Extensions of Credit in an amount equal to the amount of the~~ will be deemed to take place: (a) all Prepetition ABL Revolving Extensions of

Credit beneficially owned by ~~such~~a Roll Up DIP ABL Revolving Lender ~~at~~as of [11:59 p.m. Eastern Time on November 5, 2018~~, which~~] shall ~~reduce such~~be converted to Roll Up DIP ABL Revolving ~~Lender's Prepetition ABL Revolving~~ Extensions of Credit ~~on a dollar for dollar basis~~, and ~~which shall~~ with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, ~~result in an increase of the Incremental DIP ABL L/C Subfacility to an approximately $123 million DIP ABL L/C Subfacility, and such prepetition~~such participations and letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (b) ~~each Roll Up DIP ABL Term Lender shall be deemed to have made Roll Up DIP ABL Term Loans in an amount equal to the amount of the~~all Prepetition ABL Term Loans beneficially owned by ~~such~~a Roll Up DIP ABL Term Lender [at 11:59 p.m. Eastern Time on November 5, 2018~~, which shall reduce such Roll Up DIP ABL Term Lender's Prepetition ABL Term Loans on a dollar for dollar basis, and (c) Bank Products (as defined under the Prepetition ABL Credit Agreement other than those under the Prepetition LC Facility Agreement) and Cash Management Obligations (as defined under the Prepetition ABL Credit Agreement) shall roll up; *provided* that the making of the Roll Up DIP ABL Revolving Extensions of Credit and~~] shall be converted to Roll Up DIP ABL Term Loans ~~shall~~, and (c) Roll Up DIP ABL Cash Management/Bank Product Obligations shall become obligations under the DIP ABL Facility; *provided* that the transactions described in this paragraph shall be subject to the reservation of rights of parties in interest in paragraphs ~~40 and~~ 41 and 42 below, and upon expiration of the Challenge Period (as defined below) without a Challenge Proceeding (as defined below) having been brought, or the final resolution of a Challenge Proceeding brought in compliance with the provisions of ~~this Interim~~the DIP Order~~s~~ (where such Challenge Proceeding did not have the effect of successfully impairing any of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term

33

Loans or the liens securing any of such obligations), the DIP ABL Loan Parties' ABL Roll Up shall be deemed indefeasible (or, in the event that such a Challenge Proceeding is timely and properly commenced in respect of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations, on the date on which any order entered by the Bankruptcy Court in favor of the applicable Prepetition ABL Credit Party in such Challenge Proceeding becomes final and non-appealable). Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge Proceeding by any party in interest in accordance with paragraph 41 hereof, this Court may unwind the ABL Roll-Up with respect to the applicable Prepetition ABL Obligations to the extent that (i) the ABL Roll-Up resulted in the conversion of any Prepetition ABL Obligations consisting of an unsecured claim or other claim or amount not allowable under Section 502 of the Bankruptcy Code into a DIP ABL Obligation, and (ii) such conversion unduly advantaged the applicable Prepetition ABL Credit Party.  Notwithstanding the foregoing, but subject to the proceeding sentence, a successful Challenge Proceeding shall not in any way affect the validity, enforceability or priority of the DIP ABL Obligations or the DIP ABL Liens and no obligation, payment, transfer or grant of security under the DIP ABL Credit Agreement, the other DIP ABL Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *Syndication of Commitments and Loans.*  The procedures for syndicating the DIP ABL Facility set forth in Exhibit B hereto are hereby approved (the "Procedures").

WEIL:\96804508\5\73219.0006

Allocations of the DIP ABL Revolver, the DIP ABL Term Loan and the Roll Up DIP ABL Obligations made by the DIP ABL Administrative Agent in accordance with the Procedures will be final and binding.  In furtherance of the foregoing and in connection with the consummation of the DIP ABL Facility, the ABL Roll Up and the related DIP ABL Loan Documents, the performance of such acts as set forth in the Procedures and related documentation is hereby authorized and approved.

7. 6. *Authorized Action.*  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents that may be necessary or required for performance by the DIP ABL Loan Parties under the DIP ABL Loan Documents and the creation and perfection of the DIP ABL Liens described in, provided for and perfected by this Interimthe DIP Orders and the DIP ABL Loan Documents.  Subject to paragraphs 1819(e) and 191.1(e)20(a), the DIP ABL Loan Parties are hereby authorized to pay, in accordance with this Interimthe DIP Orders, the principal, interest, fees, expenses and other amounts described in the DIP ABL Loan Documents as such become due and without need to obtain further Court approval, including administrative agent fees, underwriting fees, commitment fees, letter of credit fees, and the fees and disbursements of the DIP ABL Agents' attorneys, advisers, accountants and other consultants. All fees shall be payable in accordance with the DIP ABL Loan Documents.

8. 7. *Validity of DIP ABL Secured Obligations.*  Upon entry of this Interim Order, tThe DIP ABL Loan Documents shall represent valid, binding and unavoidable obligations of the DIP ABL Loan Parties, enforceable against the DIP ABL Loan Parties and their estates in accordance with their terms, subject to the terms of this Interimthe DIP Orders.

35

The DIP ABL Loan Documents and ~~this Interim~~the DIP Order~~s~~ constitute and evidence the validity and binding effect of the DIP ABL Secured Obligations of the DIP ABL Loan Parties, which DIP ABL Secured Obligations shall be enforceable, jointly and severally, against the DIP ABL Loan Parties, their estates and any successors thereto, including any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "__"Successor Case"__"). ~~No~~Subject to paragraphs 41 and 42, no obligation, payment, transfer, or grant of a security or other interest to the DIP ABL Control Co-Collateral Agent or any other DIP ABL Credit Party under the DIP ABL Loan Documents or ~~this Interim~~the DIP Order~~s~~ shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including under sections 502(d), 544, 548 or 549 of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, claim or counterclaim.  The DIP ABL Secured Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the DIP ABL Loan Parties to the DIP ABL Credit Parties under the DIP ABL Loan Documents, all DIP ABL Cash Management/Bank Product Obligations, and, in the case of each of the foregoing, including all principal, interest, costs, fees, expenses and other amounts owed in connection therewith or otherwise pursuant to the DIP ABL Loan Documents.

9. ~~8.~~ ***No Obligation to Extend Credit.***  The DIP ABL Credit Parties shall have no obligation to make loans or advances under the DIP ABL Facility unless and until the conditions precedent to the closing and the making of such extensions of credit under the DIP ABL Loan Documents~~, including the conditions precedent set forth opposite the heading "Conditions Precedent to the Initial Closing"~~ in the DIP ABL Term Sheet, have been satisfied in

36

full or waived in accordance with the terms of the DIP ABL Loan Documents (such date, the "Initial Closing Date"), which date shall occur on or before the earlier of (a) October 19, 2018, and (b) three (3) business days after the entry of this Interim Order.

10. 9. *Use of DIP ABL Facility Proceeds.*  From and after the Petition Date, the DIP ABL Loan Parties are authorized, subject to the satisfaction of the terms and conditions set forth in the DIP ABL Loan Documents, to use proceeds of extensions of credit under the DIP ABL Facility only for the purposes specifically set forth in this Interim the DIP Orders and the DIP ABL Loan Documents (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; and (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders).

11. 10. *No Obligation to Monitor.*  No DIP ABL Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP ABL Facility, and each DIP ABL Credit Party may rely upon each Debtor's representations that the amount of debtor-in-possession financing requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Orders and the DIP ABL Loan Documents, and Bankruptcy Rule 4001(c)(2).

12. 11. *DIP ABL Superpriority Claims.*  Subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP ABL Secured Obligations shall constitute allowed administrative expense claims against each of the DIP ABL Loan Parties' estates, jointly and severally, with priority over any and all administrative expenses, including any

37

superpriority claims associated with any other postpetition financing facility, all Adequate Protection Claims and, to the fullest extent permitted under the Bankruptcy Code, all other claims against the DIP ABL Loan Parties, now existing or hereafter arising, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the ""DIP ABL Superpriority Claims""), which DIP ABL Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the DIP ABL Loan Parties and their estates and all proceeds thereof, subject only to liens secured thereby and the Carve-Out.  The DIP ABL Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this InterimFinal Order or any provision hereof is vacated, reversed, amended or otherwise modified, on appeal or otherwise.  The DIP ABL Superpriority Claims shall be of equal priority to the Junior DIP Superpriority Claims.

**DIP ABL Liens and DIP ABL Collateral.**

13.    12. Effective immediately upon entry of thisthe Interim Order and as more fully set forth in the DIP ABL Loan Documents, as security for the full and prompt performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP ABL Secured Obligations, the DIP ABL Control Co-Collateral Agent is herebywas granted, for itself and for the benefit of all of the DIP ABL Credit Parties, continuing valid, binding, enforceable, non-avoidable, automatically and properly perfected, post-petition security interests in and liens (the ""DIP ABL Liens"") on all DIP ABL Collateral *nunc pro tunc* to the Petition Date without the necessity of the execution by the DIP ABL Loan Parties (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, copyright security agreements, trademark security agreements, patent security agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the

38

DIP ABL Agents or any other DIP ABL Credit Party of any DIP ABL Collateral.  The term ""DIP ABL Collateral"" means Prepetition ABL Collateral and all other assets of the DIP ABL Loan Parties (except Avoidance Actions and Avoidance Action Proceeds (which will only be sought in connection with entry of the Final Order), whether now owned or hereafter acquired, and all proceeds thereof, including all deposit accounts, securities accounts, cash and cash equivalents of the DIP ABL Loan Parties; *provided* the, that DIP ABL Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors'Collateral excludes any of the following (collectively, the "Excluded Property"): (i) leases of real property unless such liens are expresslyexcept as permitted in the applicable lease or pursuant to the underlyingapplicable law (but in no event shall DIP ABL Collateral exclude the proceeds of such leases documents); *provided, however,* in the Final Order may provide for the grant of liens on real property leases. In the proposed Final Order, the Debtors will request that all of the proceeds  (the "Avoidance Action Proceeds") ofevent that the Debtors subsequently seek by separate motion and obtain by final order liens on all of their leases of real property in connection with a debtor-in-possession financing facility other than the DIP ABL Facility (including in connection with the Junior DIP Facility), the DIP ABL Collateral shall include all leases of real property and the DIP ABL Liens and Adequate Protection Liens shall be first in priority and senior to any other liens thereon; (ii) the DIP ABL Loan Parties' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (the ""Avoidance Actions") shall also constitute DIP ABL Collateral."), but does not exclude the proceeds thereof ("Avoidance Action Proceeds"), (iii) the  voting Equity Interests of any Subsidiary that is not a Domestic Subsidiary (each such term as defined in the DIP ABL Credit Agreement) in excess of 65% of the voting

Equity Interests in such Subsidiary, (iv) any Intellectual Property (as defined in the DIP ABL Credit Agreement) consisting of intent-to-use trademark applications and rights in and to such applications, prior to the filing of a "Statement of Use" or "Amendment to Allege Use" to the extent that a grant of security interest in such application would impair validity or enforceability, (v) any property to the extent that the grant of a security interest therein would violate applicable law, require a consent not obtained of any Governmental Authority (as defined in the DIP ABL Credit Agreement) or constitute a breach or default under, or result in the termination of or require a consent not obtained under, any contract, lease, license or other agreement evidencing or giving rise to such property, or result in the invalidation of such property or provide any party to such contract, lease, license or agreement with a right of termination of such contract, lease, license or agreement (in each case, after giving effect to applicable provisions of the New York UCC, the Bankruptcy Code or other applicable law), and (vi) proceeds and products of any of the foregoing Excluded Property described in clauses (i), (iii) through (vi) above solely to the extent such proceeds and products would constitute property or assets of the type described in clauses (i), (ii) through (vi) above; *provided that* in each case of property described in clause (v) of this definition, such property shall constitute "Excluded Property" only to the extent and for so long as such contract, lease, license or other agreement or applicable law prohibits the creation of a lien on such property in favor of the DIP ABL Control Co-Collateral Agent, and, upon termination of such prohibition, such property shall cease to constitute "Excluded Property".

**Priority of DIP ABL Liens**

14.    ~~13.~~ The DIP ABL Liens on the DIP ABL Collateral shall in each case be subject to the Carve-Out and otherwise have the following priority:

40

(a)                pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens on and security interests in all DIP ABL Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (collectively, the "Prepetition Unencumbered Assets"),"), which liens shall be *pari passu* with the Junior DIP Liens on Prepetition Unencumbered Assets which constitute "Specified Collateral" (as defined in the DIP ABL Loan Documents, the "Specified Collateral") but subject to any Senior Permitted Liens;

(b)                pursuant to section 364(c)(3) of the Bankruptcy Code, junior liens on and security interests in all DIP ABL Collateral (other than Prepetition ABL Collateral) that is not subject to Prepetition ABL Liens but is subject to valid and perfected security interests in favor of third parties as of the Petition Date (the ""Prepetition Encumbered DIP ABL Collateral"") and any Senior Permitted Liens; and

41

(c)                    pursuant to section 364(d) of the Bankruptcy Code, first
priority priming security interests and liens on the Prepetition ABL
Collateral of each Debtor on which the Prepetition ABL Lenders held a
first priority security interest and lien (such liens and security interests, the
""DIP ABL Priming Liens""), in each case to the extent that such
Prepetition ABL Collateral is subject to Prepetition ABL Liens
(collectively, the "Primed Liens") and such DIP ABL Priming Liens shall
be (x) senior in all respects to the interests in such property of the
Prepetition ABL Credit Parties under the Prepetition ABL Credit
Agreement and the other ""secured parties"" referred to therein, (y) senior
to the Adequate Protection Liens, and (z) subject to any Senior Permitted
Prior Liens.

15.    14. Notwithstanding anything to the contrary herein, the following table
sets forth the relative priorities of the Carve-Out, the Senior Permitted Prior Liens, the DIP ABL
Liens, the Junior DIP Liens, the Adequate Protection Liens, and the Prepetition Liens on the DIP
ABL Collateral upon effectiveness of this Interim Order:

| Prepetition ABL Collateral | Prepetition Encumbered DIP ABL Collateral | Prepetition Unencumbered Assets (other than Specified Collateral) | Prepetition Unencumbered AssetsSpecified Collateral |
|---|---|---|---|
| Carve-Out | Carve-Out | Carve-Out | Carve-Out |
| Senior Permitted Prior Liens | All valid and perfected security interests in favor of third parties as of the Petition Date, including any Senior Permitted Liens | Senior Permitted Liens | DIP ABLSenior Permitted Liens |
| DIP ABL Liens | DIP ABL LiensDIP ABL Liens | DIP ABL Liens | DIP ABL Liens, *pari passu* with Junior DIP Liens |
| Prepetition ABL Facilities Adequate Protection Liens | Junior DIP Liens | Junior DIP Liens | Prepetition ABL Facilities Adequate Protection Liens |

WEIL:\96804508\5\73219.0006

| | | | |
|---|---|---|---|
| ~~Prepetition ABL Facilities~~2018 FILO Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | 2018 FILO Adequate Protection Liens |
| ~~2018 FILO~~Prepetition LC Facility Adequate Protection Liens | 2018 FILO Adequate Protection Liens | 2018 FILO Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens |
| Prepetition ~~LC Facility Adequate Protection~~ABL Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens |
| Prepetition ~~ABL~~Second Lien Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens | |
| ~~Prepetition Second Lien Adequate Protection Liens~~ | | | |
| Prepetition Second Lien Facilities Liens (except on Specified Non-Prepetition Second Lien Collateral) | | | |
| Junior DIP Liens | | | |

16.    ~~15.~~ ***Treatment of DIP ABL Liens.***  Other than as set forth herein, the DIP

ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore

or hereafter granted in the Chapter 11 Cases or any Successor Case.  The DIP ABL Liens shall

be valid and enforceable against any trustee or other estate representative appointed in the

Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to

a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the

dismissal of any of the Chapter 11 Cases or any Successor Case.  No lien or interest avoided and

preserved for the benefit of the DIP ABL Loan Parties' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP ABL Liens.

**Adequate Protection**

<u>17.</u>    ~~16.~~*Adequate Protection Liens.*

(a)    *Prepetition ABL Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, against any <u>aggregate</u> diminution in value <u>of the Prepetition ABL Credit Parties' (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) interests in the Prepetition ABL Collateral</u> resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "<u>"ABL Diminution in Value</u>""), the DIP ABL Loan Parties<u>, pursuant to the Interim Order, granted and</u> hereby grant to the Prepetition ABL Control Co-Collateral Agent on behalf of itself and all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) to the extent of any ABL Diminution in Value<u>, if any,</u> a valid and perfected replacement and additional security interest in, and liens on (the "<u>"Prepetition ABL Facilities Adequate Protection Liens</u>"") all DIP ABL Collateral.  The Prepetition ABL Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of <u>mortgages,</u> control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the

44

Carve-Out, the Senior Permitted ~~Prior~~ Liens and the DIP ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date, (including an~~y~~d Senior Permitted Liens), the DIP ABL Liens, and the Junior DIP Liens, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, an~~y~~d Senior Permitted Liens, the DIP ABL Liens, and the Junior DIP Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(b)      *Prepetition 2018 FILO Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, against any aggregate diminution in value of the 2018 FILO Lenders' interests in the Prepetition ABL Collateral resulting from the DIP ABL Loan Parties' use, sale or lease  (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, the "2018 FILO ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition ABL Control Co-Collateral Agent, on behalf of ~~-~~ the 2018 FILO Lenders to the extent of any 2018 FILO ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "~~"~~2018 FILO Adequate Protection Liens~~"~~") all DIP ABL Collateral.  The 2018 FILO Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior

Permitted ~~Prior~~ Liens, the DIP ABL Liens, and the Prepetition ABL Facilities Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens and the Prepetition ABL Facilities Adequate Protection Liens, ~~and~~ (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, and the Prepetition ABL Facilities Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(c)      *Prepetition LC Facility Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, against any aggregate diminution in value of the Prepetition LC Facility Credit Parties' interests in the Prepetition ABL Collateral resulting from the Prepetition LC Facility Credit Parties' use, sale or lease  (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, the "Prepetition LC ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition LC Facility Administrative Agent on behalf of itself and all of the other Prepetition LC Facility Credit Parties to the extent of any Prepetition LC ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "~~"~~Prepetition LC Faciliti~~es~~y Adequate Protection Liens~~"~~") all DIP ABL Collateral.  The Prepetition LC Faciliti~~es~~y Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to

the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, and the 2018 FILO Adequate Protection Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, and (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(d)      *Second Lien Facilities Adequate Protection Liens*.   Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, including Cash Collateral, against any aggregate diminution in value, if any, resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Second Lien Facilities Liens and the subordination to the Carve-Out (collectively, the ""Second Lien Diminution in Value"), the

DIP ABL Loan Parties ," and, collectively with the ABL Diminution in Value, the 2018 FILO ABL Diminution in Value and the Prepetition LC ABL Diminution in Value, the "Diminution in Value"), each Prepetition Second Lien Loan Party, pursuant to the Interim Order, granted and hereby grants to the Prepetition Second Lien Collateral Agent on behalf of itself and the other Prepetition Second Lien Credit Parties to the extent of any applicable Second Lien Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the ""Prepetition Second Lien Adequate Protection Liens,"" and together with the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens, the ""Adequate Protection Liens"") all DIP ABL Collateral.  The Prepetition Second Lien Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Prior Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Prepetition ABL Liens, (ii) solely with respect to the Prepetition Encumbered DIP ABL Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and, (iii) solely with respect to Prepetition Unencumbered Assets, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens,

48

the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the Prepetition LC Facility Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(e)    *Treatment of Adequate Protection Liens*.  Other than as set forth hereinin the DIP Orders, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.  The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

18.    17.*Adequate Protection Superpriority Claims.*

(a)    *Prepetition ABL Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties), is herebypursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority

pursuant to section 507(a) and (b) of the Bankruptcy Code (the ""Prepetition ABL Adequate Protection Claims"") to the extent of any ABL Diminution in Value.  Except as set forth herein, the Prepetition ABL Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition ABL Adequate Protection Claims shall be junior to (i) the Carve-Out and, (ii) the DIP ABL Superpriority Claims, and (iii) the Junior DIP Superpriority Claims.

(b)    *Prepetition 2018 FILO Superpriority Claims*. Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders, is hereby pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the ""Prepetition 2018 FILO Adequate Protection Claims"") to the extent of any 2018 FILO Diminution in Value.  Except as set forth herein, the Prepetition 2018 FILO Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; *provided*, *however*, that the Prepetition 2018 FILO Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, and (iii) the Junior DIP Superpriority Claims, and (iv) the Prepetition ABL Adequate Protection Claims.

WEIL:\96804508\5\73219.0006

(c)     *Prepetition LC Facility Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition LC Facility Administrative Agent, for itself and for the benefit of all of the other Prepetition LC Facility Credit Parties, ~~is hereby~~pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the ~~"~~"Prepetition LC Facility Adequate Protection Claims~~"~~") to the extent of any Prepetition LC Diminution in Value.  Except as set forth herein, the Prepetition ~~2018~~LC Facility Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition LC Facility Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, and (~~iv~~v) the Prepetition 2018 FILO Adequate Protection Claims.

(d)     *Second Lien Facilities Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, including any Cash Collateral, on behalf of itself and the other Prepetition Second Lien Credit Parties, the Prepetition Second Lien Collateral Agent ~~is hereby~~, pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (~~the "~~to the extent

51

of any Second Lien Diminution in Value (the "Prepetition Second Lien Facilities Adequate Protection Claims,"" and together with the Prepetition ABL Adequate Protection Claims, the Prepetition 2018 FILO Adequate Protection Claims, and the Prepetition LC Facility Adequate Protection Claims, the ""Adequate Protection Claims"") to the extent that the Prepetition Second Lien Adequate Protection Liens are insufficient to protect the Prepetition Second Lien Credit Parties' interests in the Prepetition Second Lien Collateral.  Except as set forth herein, the Prepetition Second Lien Facilities Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition Second Lien Facilities Adequate Protection Claim shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Prepetition ABL Adequate ProtectionJunior DIP Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, (v) the Prepetition LC Facility Adequate Protection Claims, and (vvi) the Prepetition 2018 FILO Adequate Protection Claims.

19.    18.*Additional Adequate Protection.*

(a)    *Prepetition ABL Credit Parties*.  As additional adequate protection of the Prepetition ABL Credit Parties' security interests in the Prepetition ABL Collateral, the DIP ABL Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other disbursements of the Prepetition ABL Administrative Agent, the Prepetition ABL Co-Collateral Agents, and the Prepetition LC Facility Administrative Agent whether incurred before, on or after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 1819(e) hereof, Skadden, Arps, Slate,

Meagher & Flom LLP, Choate, Hall & Stewart LLP, Davis Polk & Wardwell LLP and Berkeley Research Group, LLC, whether incurred before, on or after the Petition Date; (ii) continued maintenance and insurance of the Prepetition ABL Collateral and the DIP ABL Collateral in amounts and for the risks, and by the entities, as required under the Prepetition ABL Loan Documents, the DIP ABL Loan Documents and ~~this Interim~~the DIP Orders; (iii) reporting and information rights equivalent to those granted to the DIP ABL Lenders pursuant to the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and paragraph ~~21~~ 22 of this ~~Interim~~Final Order; (iv) cash payment of post-petition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement and the Prepetition LC Facility Agreement as such interest becomes due and payable at the applicable non-default rate thereunder; *provided that in the event of a final determination that the Prepetition ABL Credit Parties or the Prepetition LC Facility Credit Parties, as applicable are undersecured as of the Petition Date, payments received by the applicable undersecured Prepetition ABL Credit Parties or the Prepetition LC Facility Credit Parties, pursuant to this clause (iv) may be recharacterized and applied as payments of principal*; and (v) the DIP ABL Borrowers' daily calculation, reporting and certification to the Prepetition ABL Administrative Agent of, and compliance with, the Maximum Loan to Value (Term/Revolver) Ratio and the Maximum Loan to Value (Prepetition) Ratio (each as defined below).

(b)     If on any day the DIP ABL Loan Parties are not in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, the DIP ABL Loan Parties shall immediately and irrevocably repay in cash (i) first, DIP ABL Revolving Advances until paid in full, (ii) second, to ~~replace or~~ cash collateralize letters of credit under the DIP ABL Facility, (iii) third, to the DIP ABL Term Loans until paid in

53

full (with a pro rata reduction in DIP ABL Revolving Commitments), and (iv) after the payment in full of the DIP ABL Facility, the Prepetition ABL Obligations, in each case, until the DIP ABL Loan Parties are in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, as applicable.  In the case of clause ~~(iii)~~(iv), such amounts shall be paid to the Prepetition ABL Administrative Agent and applied in accordance with Section 6.4 of the Collateral and Guarantee Agreement (as defined in the Prepetition ABL Credit Agreement).  For the avoidance of doubt, a failure of the DIP ABL Borrowers to deliver to the DIP ABL Administrative Agent or Prepetition ABL Administrative Agent, as applicable, the cash when and in such amounts required in accordance with the immediately preceding sentence shall constitute a Termination Event (as defined below) hereunder, and the DIP ABL Administrative Agent or the Prepetition ABL Administrative Agent, as applicable, shall be permitted to exercise all rights and remedies available pursuant to the DIP ABL Loan Documents or Prepetition ABL Loan Documents, as applicable, and ~~this Interim~~the DIP Orders subject to the terms of paragraphs ~~32 and~~ 33 and 34.

(c)     The ""Maximum Loan to Value (Term/Revolver) Ratio"" means that the DIP ABL Loan Parties shall not permit the sum of (a) the outstanding principal amount of Advances (as defined in the Prepetition ABL Credit Agreement), plus (b) the outstanding principal amount of Swingline Advances (as defined in the Prepetition ABL Credit Agreement), plus (c) the amount of L/C Obligations (as defined in the Prepetition ABL Credit Agreement), plus (d) the outstanding principal amount of the outstanding 2016 Term Loans (as defined in the Prepetition ABL Credit Agreement) (the sum of clauses (a) through (d), the ""Prepetition Revolving/Term Exposure""), plus (e) Total Extensions of Credit (as defined in the DIP ABL ~~Term Sheet~~Loan Documents), plus (f) Availability Reserves (as defined in the DIP ABL Loan

Documents), plus (g) the Borrowing Base Carve-Out Reserve (as defined in the DIP ABL Loan Documents), plus (h) the Prepetition FILO Reserve (as defined in the DIP ABL Loan Documents), at any time to exceed 87.5% of the sum of (1) the aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) the aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) aggregate(i) the Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) at such time, minus (4) Availability Reserves(other than Eligible Inventory (as defined in the DIP ABL Loan Documents) at such time, minus (5) the Carve-Out Reserve Amount less the current balance of the Carve-Out Account (each as defined below), minus (6) the FILO Reservestores to be closed pursuant to Specified Store Closing Sales (as defined in the DIP ABL Loan Documents)——) at such time and (ii) the Store Closing Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory at Stores to be closed pursuant to Specified Store Closing Sales at such time (the sum of clauses (1) through (3), the "LTV Formula Amount").

(d)    The ""Maximum Loan to Value (Prepetition) Ratio"" means that the DIP ABL Loan Parties shall not permit the sum of Prepetition Revolving/Term Exposure, plus the outstanding 2018 FILO Extensions of Credit (as defined in the Prepetition ABL Credit Agreement), plus the Total Extensions of Credit (as defined in the DIP ABL Term Sheet), at any time to exceed 97.5% of the sum of (1) aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) aggregate Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible

Inventory (as defined in the DIP ABL Loan Documents) at such time minus (4) Availability Reserves (as defined in the DIP ABL Loan Documents) at such time, minus (5) the, plus the Borrowing Base Carve-Out Reserve Amount less the current balance of the Carve-Out Account (each(as defined below), minus (6) thein the DIP ABL Loan Documents), plus the Prepetition FILO Reserve (as defined in the DIP ABL Loan Documents), at any time to exceed 97.5% of the LTV Formula Amount at such time.

(e)    Payment of all professional fees and expenses of the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent  and the Prepetition LC Facility Administrative Agent and the Prepetition Consolidated Loan Agent addressed in this Interim Order shall not be subject to allowance by the Bankruptcy Court. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent and, the Prepetition LC Facility Administrative Agent and the Prepetition Consolidated Loan Agent shall deliver a copy of their respective invoices to counsel for any Creditors' Committee, the U.S. Trustee (as defined below), and the DIP ABL Administrative Agent. The invoices for such fees and expenses shall not be required to comply with any particular format and may be in summary form only and may include redactions. For the avoidance of doubt, the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The DIP ABL Loan Parties or, with respect to invoices received in respect of fees and expenses payable to professionals for the Prepetition Consolidated Loan Agent, the Prepetition Consolidated Loan Parties, shall pay such invoice within ten (10) calendar days (if no written objection is received within such ten calendar day period) after such professional has delivered such invoice to the DIP ABL Loan Parties, the Creditors' Committee, the DIP ABL

56

Administrative Agent, and the U.S. Trustee. Any written objections raised by the DIP ABL Loan Parties, the U.S. Trustee, the DIP ABL Administrative Agent or any Creditors' Committee with respect to such invoices within ten (10) calendar days of receipt thereof will be resolved by the Bankruptcy Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the DIP ABL Loan Parties or, with respect to invoices received in respect of fees and expenses payable to professionals for the Prepetition Consolidated Loan Agent, the Prepetition Consolidated Loan Parties. The fees and expenses subject to the procedures in this paragraph 18(e)19(e) shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and shall not be subject to compliance with the U.S. Trustee fee guidelines or the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

20.    19. *Costs, Fees, Expenses, and Indemnification.*

(a)    *DIP ABL Credit Parties.*    The DIP ABL Loan Parties are authorized to pay any and all reasonable and documented expenses of the DIP ABL Agents in connection with the DIP ABL Facility and as provided for in the DIP ABL Loan Documents, whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including fees and expenses incurred in connection with (i) the preparation, negotiation and execution of the DIP ABL Loan Documents; (ii) the syndication and funding of the DIP ABL Facility; (iii) the creation, perfection or protection of the liens under the DIP ABL Loan Documents (including all search, filing and recording fees); (iv) the on-going administration of the DIP ABL Loan Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the

57

Chapter 11 Cases; (v) the enforcement of the DIP ABL Loan Documents; (vi) any refinancing or

restructuring of the DIP ABL Facility; and (vii) any legal proceeding relating to or arising out of

the DIP ABL Facility or the other transactions contemplated by the DIP ABL Loan Documents,

including the Chapter 11 Cases.  Payment of all such professional fees and expenses shall not be

subject to allowance by the Bankruptcy Court or to the U.S. Trustee guidelines, but shall be

subject to the procedures set forth in paragraph ~~18~~19(e) herein.  Such fees and expenses shall not

be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature

whatsoever.

(b)    *Indemnification of DIP ABL Credit Parties*.  The DIP ABL Credit

Parties shall have no liability to any third party relating to the DIP ABL Loan Documents, the

DIP ABL Facility and DIP ABL Loan Parties' use of the financing provided thereunder, and shall

not, by virtue of making the extensions of credit under the DIP ~~loans~~ABL Facility, extending

funds thereunder, or otherwise complying with the DIP ABL Loan Documents,  be deemed to be

in control of the operations of Debtors, to owe any fiduciary duty to the Debtors, their respective

creditors, shareholders, or estates or to be acting as a ""responsible person"" or managing agent

with respect to the operation or management of the Debtors.  The ~~Debtors~~DIP ABL Loan Parties

shall, and are hereby authorized to, indemnify and hold harmless the DIP ABL Credit Parties and

their respective affiliates and Representatives from and against all losses, liabilities, claims,

damages, penalties, actions, judgments, suits, expenses or disbursements of any nature

whatsoever arising out of or relating to the DIP ABL Loan Documents, including the syndication

of any obligations thereunder, and the DIP ABL Loan Parties' use of the financing provided

thereunder, *provided*, *however*, that the foregoing indemnity shall not apply to any actions of any

indemnified parties determined in a final non-appealable judgment of a court of competent

58

jurisdiction to constitute ~~fraud~~gross negligence or willful misconduct.  This indemnification shall survive and continue for the benefit of all such persons or entities.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

21.    ~~20.~~ *Carve-Out.*

(a)    *Carve-Out.* As used in this ~~Interim~~Final Order and the DIP ABL Loan Documents, the ""Carve-Out"" shall be comprised of the following components:

(i)    Clerk and U.S. Trustee Fees.  All fees required to be paid to the Clerk of this Court and to the Office of the United States Trustee (the ""U.S. Trustee"") under section 1930(a) of title 28 of the United States Code and 31 U.S.C. § 3717 (collectively, ""Clerk and UST Fees"").

(ii)    Chapter 7 Trustee Fees.  All reasonable fees and expenses up to $500,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the ""Chapter 7 Trustee Fee Cap"").

(iii)    Allowed Professional Fees Incurred Prior to a Carve-Out Trigger Notice.  To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all paid and accrued and unpaid fees and expenses (the ""Allowed Professional Fees"") incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (the ""Debtor Professionals"") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (~~the "Committee Professionals" and,~~ together with the Debtor Professionals, the ""Professional Persons"") at any time before or on the date of delivery by the DIP ABL Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by this Court prior to or after delivery of a Carve-Out Trigger Notice. For purposes of the Carve-Out, Allowed Professional Fees shall exclude (i) any restructuring, sale, consummation, success or similar fee of any Professional Person and (ii) fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee (~~collectively, the "Pre-Termination Amount"~~).

(iv)    Allowed Professional Fees Incurred After a Carve-Out Trigger Notice.  Allowed Professional Fees of Professional Persons incurred on and after the first business day following delivery by the DIP ABL Administrative Agent of the Carve-Out Trigger Notice shall be subject to an aggregate cap of $20 million (the ""Post Trigger Notice Carve-Out Fee Cap"").

(b)    *Carve-Out Trigger Notice.*  Upon the occurrence and during the continuance of any Termination Event, the DIP ABL Administrative Agent may deliver a written notice invoking the Post Trigger Notice Carve-Out Fee Cap (the ""Carve-Out Trigger Notice"")

WEIL:\96804508\5\73219.0006

to the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee, and lead counsel for the Creditors' Committee. The Carve-Out Trigger Notice may be delivered by email (or any other means permitted under the DIP ABL Loan Documents).

(c) *Delivery of Weekly Fee Estimates.* Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "**"Weekly Statement**"") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "**"Calculation Date**""), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred through the applicable Calculation Date (collectively, "**"Estimated Fees and Expenses**"") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors from the Carve-Out Account (as defined below). No later than one business day after the delivery of a Carve-Out Trigger Notice, each Professional Person shall deliver one additional statement (the "Final Statement") to the Debtors setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve-Out Trigger Notice.

(d) *Failure to Deliver Weekly Fee Estimates.* If any Professional Person fails to deliver a Weekly Statement when due (such Professional Person, a "**"Defaulting Professional Person**""), such Professional Person's entitlement (if any) to any amount of the Carve-Out with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable periods for which such Professional Person failed to deliver a Weekly Statement shall

60

be limited to the aggregate unpaid amount of Allowed Professional Fees for such Professional Person included in the Approved Budget, *provided* that such Defaulting Professional Person may cure its failure to provide a Weekly Statement so long as a Carve-Out Trigger Notice has not been delivered.

          (e)      *Carve-Out Reserve*.  The DIP ABL Administrative Agent shall be entitled to maintain at all times a reserve (the ""Carve-Out Reserve"") in an amount (the ""Carve-Out Reserve Amount"") equal to the sum of the following:  (i) estimated amounts for Clerk and UST Fees and the Chapter 7 Trustee Fee Cap, plus (ii) the Post Trigger Notice Carve-Out Fee Cap, plus (iii) the aggregate amount of Allowed Professional Fees in the Approved Budget remaining unpaid through the most recent Calculation Date or, if greater, the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and reported to the DIP ABL Administrative Agent, plus (iv) an amount equal to the Allowed Professional Fees set forth in the Approved Budget for the two-week period occurring after the most recent Calculation Date, plus (v) $22[29.5] million less any Permitted Carve-Out Success Fees (as defined below) paid by the Debtors pursuant to an order of the Bankruptcy Court.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP ABL Administrative Agent a report setting forth the Carve-Out Reserve Amount as of such time, and, in setting the Carve-Out Reserve, the DIP ABL Administrative Agent shall be entitled to, but shall not be required to, rely upon such reports in determining the Carve-Out Reserve.

          (f)      *Carve-Out Account*.  Upon the entry of thisthe Interim Order, the Debtors shall established a segregated account with the DIP ABL Administrative Agent (the

"'Carve-Out Account'"), which was and shall continue to be funded in an amount up to the Carve-Out Reserve Amount less (i) the Clerk and UST Fees, (ii) the Chapter 7 Trustee Fee Cap, (iii) the Post Trigger Notice Carve-Out Fee Cap (the "'Carve-Out Account Required Balance'") first with cash on hand  and any availability or proceeds of any other postpetition financing facility, and if such sources are insufficient to fully fund the Carve-Out Account, with borrowings under the DIP ABL Facility.  Amounts in the Carve-Out Account shall  be held in trust to pay all amounts included the Carve-Out.  On each Friday after the date hereof (or if such day is not a business day, then the next business day), the Debtors shall deposit into the Carve-Out Account an amount sufficient to cause the balance in the Carve-Out Account to equal the Carve-Out Account Required Balance.  All Allowed Professional Fees of Professional Persons shall be paid to the applicable Professional Person first from the Carve-Out Account in accordance with the order or orders of the Court allowing such Allowed Professional Fees.  Notwithstanding anything to the contrary in this or any other Court order, the Carve-Out Account and the amounts on deposit in the Carve-Out Account shall be available and used only to satisfy obligations of Professionals Persons benefitting from the Carve-Out, and, thereafter, as provided in paragraph 2021(g)(v).  Prior to a Carve-Out Trigger Notice, in no event shall the total balance in the Carve-Out Account ever exceed the Carve-Out Account Required Balance.  The failure of the Carve-Out Account to satisfy Allowed Professional Fees in full shall not affect the priority of the Carve-Out.

(g)      *Carve-Out Funding After a Carve-Out Trigger Notice*.  The following provisions with respect to the Carve-Out Account shall apply only upon delivery of a Carve-Out Trigger Notice:

(i)      On the date of the Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall be deemed to constitute a demand to the Debtors to utilize all cash on hand as of such date and

any availability or proceeds of any other postpetition financing facility to fund the Carve-Out Account in an amount equal to the full Carve-Out Reserve Amount (to the extent not previously funded into the Carve-Out Account) to be held in trust to pay all amounts included the Carve-Out.

(i)      On or after the date of a Carve-Out Trigger Notice, the DIP ABL Administrative Agent shall not sweep or foreclose on cash of the Debtors (including cash received as a result of the sale or other disposition of any assets) until the Carve-Out Account has been fully funded. To the extent such cash on hand and availability and/or proceeds of any other postpetition financing facility are not sufficient to fully fund the Carve-Out Account, the Carve-Out Trigger Notice shall be deemed to constitute a draw request and notice of borrowing by the Debtors for DIP ABL Revolving Advances under the DIP ABL Loan Documents (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) to fully fund the Carve-Out Account.   On the first business day after delivery of the Carve-Out Trigger Notice, notwithstanding anything in the DIP ABL Loan Documents to the contrary, including with respect to the existence of a Default (as defined in the DIP ABL Loan Documents) or Event of Default (as defined in the DIP ABL Loan Documents), the failure of the Debtors to satisfy any or all of the conditions precedent for DIP ABL Revolving Advances under the DIP ABL Revolver, any termination of the commitments thereunder following an Event of Default at the direction of the DIP ABL Administrative Agent, each DIP ABL Revolving Lender with an outstanding DIP ABL Revolving Commitments (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) shall make available to the DIP ABL Administrative Agent such DIP ABL Revolving Lender's pro rata share with respect to the borrowings required to fully fund the Carve-Out Account in accordance with the DIP ABL Revolver; *provided*, *however*, that in no event shall the DIP ABL Credit Parties be required to fund the Carve-Out Account to the extent such funding would cause Capped Excess Availability (as defined in the DIP ABL Loan Documents and determined as if the DIP ABL Revolving Commitments were not terminated due to an Event of Default (as defined in the DIP ABL Loan Documents)) to be less than zero.  Any such funding of the Carve-Out shall be added to, and made a part of, the DIP ABL Secured Obligations secured by the DIP ABL Collateral and shall otherwise be entitled to the protections granted under ~~this Interim~~the DIP Order~~s~~, the DIP ABL Loan Documents, the Bankruptcy Code, and applicable law.

(ii)     In no event shall the DIP ABL Administrative Agent or the DIP ABL Lenders be required to (x) extend DIP ABL Revolving Advances to fund the Carve-Out other than pursuant to this paragraph ~~20~~21(g), (y) extend DIP ABL Revolving Advances pursuant to a deemed draw and borrowing pursuant this paragraph in an aggregate amount exceeding the Carve-Out Reserve Amount, or (z) pay in the aggregate more than the Carve-Out Reserve Amount for all fees and expenses included in the Carve-Out.

(iii)    All funds in the Carve-Out Account shall be used first to pay the obligations set forth in the definition of the Carve-Out set forth above until paid in full.  All payments and reimbursements made from the Carve-Out Account shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(iv)    To the extent any funds remain in the Carve-Out Account after payment of all amounts included in the Carve-Out, such funds shall first be used to pay the DIP ABL Administrative Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Secured Obligations have been indefeasibly paid in full, in cash, all commitments under the DIP ABL Facility have been terminated, and all Letters of Credit (as defined in the DIP ABL Loan Documents) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise backstopped to the satisfaction of the DIP ABL Administrative Agent in its sole and absolute discretion), in which case any such excess shall next be paid to the Prepetition Credit Parties in accordance with their rights and priorities under ~~this Interim~~the DIP Orders.

(h)    *Carve-Out Limitations.*  For purposes of the Carve-Out, (i) any success, restructuring, consummation, sale or other similar fees shall not be included except for such fees in an aggregate amount up to $~~12~~[19.5] million that become Allowed Professional Fees of Lazard Freres & Co. LLC ~~and/or,~~ M-III Advisory Partners, LP, and/or Houlihan Lokey Capital Inc.[3] (the "~~"~~Permitted Carve-Out ~~Success~~Consummation Fees~~"~~") or any other success, restructuring, consummation, sale or other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion and (ii) Allowed Professional Fees shall exclude fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee. Further notwithstanding anything to the contrary herein, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP ABL Credit Parties, Prepetition ABL Credit Parties,[3 4]

---

[3]    NTD: subject to receipt and review of the Houlihan Lokey engagement letter by the Debtors and the DIP ABL Agent.

[3 4]    Notwithstanding anything to the contrary in this ~~Interim~~Final Order, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, the ~~Company~~Debtors, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, or the Board of Directors of Holdings, shall not be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL ~~Loans~~Facility or the Carve-~~Out~~ ~~Out~~so long as it does not affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, in each case, other than ESL Investments, Inc. For purposes of this paragraph 20(h), the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

64

or any Representatives of any of the foregoing, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP ABL Loan Documents or, the Prepetition ABL Loan Documents, including, in each case for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties under the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or ~~this Interim~~the DIP Order~~s~~; (c) attempts to prevent, hinder or otherwise delay any of the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' assertion, enforcement or realization upon any of the Prepetition Collateral or DIP ABL Collateral in accordance with the DIP ABL Loan Documents, the Prepetition ABL Loan Documents, and the ~~Interim~~DIP Order~~s~~ other than to seek a determination that a Termination Event has not occurred or is not continuing; (d) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are specifically approved by an order of the Bankruptcy Court; (e) any success, completion, back-end or similar fees other than the Permitted Carve-Out Success Fees or any other success, restructuring, consummation, sale or other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion; and/or (f) anything else prohibited by the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or any order of the Bankruptcy Court, as applicable.  In no way shall the Carve-Out, the Carve-Out Account, the Approved Budget or any of the forgoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors or the amount of Allowed Professional Fees that may be allowed by the Bankruptcy Court at any time (whether by interim order, final order or otherwise).

WEIL:\96804508\5\73219.0006

(i)        *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.*  Other than the funding of the Carve-Out with the proceeds of the DIP ABL Facility as provided herein and in the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases, any Successor Cases, or otherwise.  Nothing in ~~this Interim~~the DIP Orders or otherwise shall be construed:  (i) to obligate the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, other than the Carve-Out Reserve Amount; (ii) as consent to the allowance of any fees and expenses of Professional Persons; or (iii) to affect the rights of the DIP ABL Credit Parties, the Prepetition ABL Credit Parties or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(j)        *Payment of Compensation.* The Debtors shall be permitted to pay fees and expenses allowed and payable by order of the Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable from the Carve-Out ~~Reserve~~ Account.  Such payments prior to a Carve-Out Trigger Notice shall not reduce the Post Trigger Notice Carve-Out Fee Cap.

22.    ~~21.~~ ***Budget and Borrowing Base Reporting; Budget Compliance***

(a)        The DIP ABL Loan Parties have delivered and/or shall deliver to the Creditors' Committee, DIP ABL Agents and the DIP ABL Lenders: (i) ~~an initial cash flow forecast together with accompanying schedules supporting line items in such forecast (such as roll forward of inventory sales and receipts, roll forward of merchandise and other payables and~~

66

other documentation which may be requested by the DIP ABL Agents) (a "Budget") for the 13-week period ending after the Initial Closing Date, dated as of a date not more than one (1) business day prior to the Initial Closing Date, which shall be subject to the approval of the Joint Lead Arrangersa budget depicting, on a weekly and line item basis, (1) (A) projected cash receipts (including from asset sales), (B) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtor's professionals and advisors), and any other fees and expenses relating to the DIP ABL Loan Documents), (C) projected Net Cash Flow (as defined below), (D) projected inventory receipts and levels, and (E) the projected Borrowing Base (as defined in the DIP ABL Loan Documents) in their sole and absolute discretion (once so approved, and subject to any update as may be approved by the ABL DIP Agents in their sole and absolute discretion, the "Approved Initial Budget"), attached hereto as Exhibit Aand Excess Availability (as defined in the DIP ABL Loan Documents), (2) a report listing the stores subject to Specified Store Closing Sales and the other remaining stores, and (3) such other information requested by the Agent or any Co-Collateral Agent for the first thirteen (13) week period from the Petition Date (the "Approved Budget"), The Approved Budget is attached hereto as Exhibit C. Any modifications, updates, supplements, or extensions to the Approved Budget shall be approved by, and in form and substance satisfactory to, the Agent and the Co-Collateral Agents in their sole discretion in accordance with the DIP ABL Loan Documents, (ii) on October 31, 2018 and every Wednesday thereafter, a Budget for the immediately following consecutive 13 weeks (each, a ""Rolling Budget""), (iii) on each Wednesday beginning October 31, 2018 and every Wednesday thereafter, reports detailing operating and financial performance (the ""Weekly Flash Reporting Package"") which shall include cash flow performance compared to the Approved Budget for the previous week

67

together with accompanying schedules supporting line items included in the weekly cash flow results (such as roll-forward) of inventory sales and receipts, roll-forward of merchandise and other payables– of each DIP ABL Loan Party as of the end of the prior week, in each case, in reasonable detail), (iv) other customary information and documents, including approval rights with respect thereto, to be set forth in the DIP ABL Loan Documents, and (v) other information as may be reasonably requested by the DIP ABL Agents or the Creditors' Committee.  The DIP ABL Loan Parties shall be required to comply with such Approved Initial Budget, including having made all scheduled payments to the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, as applicable, and when required, subject to the Permitted Variance (as defined below).

(b)    The DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent and the Creditors' Committee a borrowing base certificate presenting the DIP ABL Borrowers' computation of the DIP Borrowing Base (as defined in the DIP ABL Loan Documents) as of the last business day of each week (including appropriate supporting data therefor) (a ""Borrowing Base Certificate"") promptlyas soon as available, but in no event later than the Tuesday following the end of each week(i) in the case of a draft of the Borrowing Base Certificate, 5:00 p.m. (Central Time) on Wednesday of each week and (ii) in the case of a final Borrowing Base Certificate, 5:00 p.m. (Central Time) on Thursday of each week (or, if Thursday is not a business day, on the next succeeding business day), in each case, as of the close of business on the immediately preceding Saturday.  The initial Borrowing Base Certificate shall bewas delivered as a condition precedent to the Initial Closing Date and dated as of a date not more than one (1) business day prior to the Initial Closing Date(as defined in the DIP ABL Term Sheet).  In connection with any material asset saledisposition or series of related dispositions of

68

any DIP ABL Collateral of a type that is included in the Borrowing Base with a value in excess of $7,500,000 in the aggregate (other than inventory in the ordinary course of business and intercompany transfers among DIP ABL Loan Parties), the DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent a roll forward of Eligible Inventory and pro forma Borrowing Base Certificate giving effect to such sale at least threeone (31) business days prior to the closing of such sale. In addition, not later than the tenth (10th) day of each month (or later with the consent of the DIP ABL Agents), commencing with the first full month immediately following the Petition Date, an updated inventory appraisal shall be delivered to the DIP ABL Administrative Agent.

(c)    The DIP ABL Loan Parties shall also provide a qualitative and quantitative budget variance report/reconciliation (the ""Budget Variance Report"") for delivery to the DIP ABL Agents and the Creditors' Committee by Wednesday of every week for the most recently ended four-week period included in the Approved Initial Budget (the "Testing Period") showing by line item actual cash receipts, disbursements, and inventory receipts and consignment receipts for eachsuch four week period, in comparable form and substance to what has been provided to the DIP ABL Agents prior to the Initial Closing Dateto the Approved Budget, noting therein all the variance, on a cumulative basis, of the DIP ABL Borrowers' total net cash flow excluding proceeds from asset sales, (except for proceeds from the sale of inventory), and also excluding financing related items (the ""Net Cash Flow"") for such four week period in the Approved Initial Budget, and shall includeing explanations for any material variance (including whether such variance is permanent in nature or timing related) for such four week period. TheEach Budget Variance Report delivered following a Budget Testing Date (as defined below) shall contain an analysis demonstrating compliance with the Approved Budget subject to the

Permitted Variance.  The DIP ABL Borrowers will supplement the Weekly Flash Reporting

Package and the Budget Variance Report from time to time upon the request of the DIP ABL

Agents or the Creditors' Committee.

(d)     The DIP ABL Loan Parties shall be required to comply with each

Approved Budget in all material respects,- including having made all scheduled payments to the

DIP ABL Credit Parties and the Prepetition ABL Credit Parties, as applicable, as and when

required, subject to the following (the ""Permitted Variance""): the DIP ABL Borrowers' Net

Cash Flow shall not be less than the Net Cash Flow set forth in the Approved Initial Budget

minus the Applicable Variance Percentage of the absolute value of the Net Cash Flow set forth in

the Approved Initial Budget; provided, however, to the extent any amounts owed to

professionals and vendors are permitted to be paid in accordance with the foregoing covenant but

are not actually paid during the subject period, such amounts may be paid during a subsequent

period. "Budget. "Applicable Variance Percentage"" shall mean, from the Initial Closing Date

until November 10, 2018, 20%; from November 24, 2018 until the Termination Date, 15%.

Such covenant shall be tested on Saturday each second week (commencing on November 10,

2018) (but shall be reported each week) on a cumulative basis from the Petition Date until the

fourth (4th) week after the Petition Date and then on a rolling four (4) week basis, pursuant toin

accordance with the Budget Variance Report delivered by the DIP ABL Borrowers to the DIP

ABL Agents and the Creditors' Committee.

(e)     The DIP ABL Loan Parties shall arrange for a weekly separate

weekly (unless waived by the DIP ABL Agents and the Creditors' Committee in their sole and

absolute discretion) conference calls with the DIP ABL Agents and their professional advisors

70

and the Creditors' Committee's professional advisors discussing and analyzing ~~cash flow and related forecasts for the prior week, the financial condition, liquidity and results of operations of each of~~ the DIP ABL Loan Parties, (A) the Approved Budget or the Budget Variance Reports and/or any other reports or information delivered pursuant to the DIP ABL Loan Documents, (B) the financial operations and performance of the Loan Parties' business, (C) the status of landlord negotiations, (D) the status of any Specified Store Closing Sales, (E) the status of the Chapter 11 Cases ~~and~~generally, (F) progress in achieving compliance with the Case Milestones ~~set forth~~(as defined below) and the Go Forward Plan (as defined in the DIP ABL Loan Documents) or (G) such other matters relating to the Debtors as the DIP ABL Agents or the Creditors' Committee (or either of their respective agents or advisors) shall reasonably request.

23.   ~~22.~~ *Windown Account.*   ~~After entry of the Final Order, u~~Upon the consummation of any sales of Prepetition Unencumbered Assets, the DIP ABL Loan Parties shall deposit the first $200 million of net cash proceeds in respect of such sales into the Windown Account.   "*"Windown Account"*" shall mean a cash collateral account at Bank of America, N.A. that, prior to the discharge in full of all obligations under the DIP ABL Facility, may only be used to pay windown costs of the DIP ABL Loan Parties at the discretion of the DIP ABL Loan Parties following entry of ~~the~~this Final Order.

24.   ~~23.~~ *Modification of DIP ABL Loan Documents*.   ~~The~~Upon no less than three (3) business days' notice to the Creditors' Committee (only to the extent reasonably practicable), the DIP ABL Loan Parties and the DIP ABL Agents are hereby authorized, subject to the DIP ABL Loan Documents, to implement, in accordance with the terms of the respective DIP ABL Loan Documents, any amendments, waivers, consents or other modifications to or

71

under the DIP ABL Loan Documents (including any change in the number or composition of the DIP ABL Lenders) without further order of this Court unless such amendment, waiver, consent or other modification (a) restricts, limits or prohibits any payments required pursuant to paragraph 18 19 of this Interim Final Order, or (b) shortens the maturity or the scheduled termination date thereunder.

25.    24.  ***Right to Credit Bid.***  Subject to Section 363(k) of the Bankruptcy Code, the DIP ABL Agent and the Prepetition ABL Administrative Agent (subject to obtaining any required consent or direction of the requisite number or percentage of the Prepetition ABL Credit Parties) shall have the right to ""credit bid"" up to the full allowed amount of their respective claims and outstanding obligations in connection with any sale of all or any portion of the DIP ABL Collateral, including any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code or otherwise.  For the avoidance of doubt, any such credit bid for all or any portion of the DIP ABL Collateral must, upon closing of such sale transaction, provide for payment in full of all senior security interests in and liens on all of the DIP ABL Collateral being acquired in such sale transaction, absent waiver by the DIP ABL Agents or the Prepetition ABL Administrative Agent, as applicable.

26.    25.  ***Automatic Perfection of DIP ABL Liens and Adequate Protection Liens.***

(a)    This Interim Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP ABL Liens and the Adequate Protection Liens, without the necessity of filing or recording financing

statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens and the Adequate Protection Liens, or to entitle the DIP ABL Credit Parties or the Prepetition Credit Parties to the priorities granted herein.

(b)    Notwithstanding the foregoing, the DIP ABL Agents and the Prepetition Agents each are hereby authorized, but not required, to file or record (and to execute in the name of the applicable DIP ABL Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over cash, deposit accounts, securities, or other assets, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.   Whether or not the DIP ABL Agents or the Prepetition Agents (as applicable) choose, in their sole discretion, to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over any cash, deposit accounts, securities, or other assets, or otherwise confirm perfection of the liens and security interests granted to the DIP ABL Control Co-Collateral Agent and the Prepetition ABL Control Co-Collateral Agent, respectively, hereunder, such liens and security interests shall bewere deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this InterimFinal Order) immediately upon entry of this InterimFinal Order, except as set forth in Paragraphs 41 and 42.

73

(c)     The DIP ABL Loan Parties are authorized to execute and deliver promptly upon demand to the DIP ABL Agents or the Prepetition Agents all such financing statements, mortgages, control agreements, notices and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request.  The DIP ABL Loan Parties are authorized to, and shall, execute and deliver to the DIP ABL Agents and the Prepetition Agents such agreements, financing statements, mortgages, instruments and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect the DIP ABL Liens or the Adequate Protection Liens; and the failure by the DIP ABL Loan Parties to execute or deliver any documentation relating to the DIP ABL Liens or the Adequate Protection Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

(d)     As set forth in the DIP ABL ~~Term Sheet~~Loan Documents, Wells Fargo Bank, National Association has appointed Bank of America, N.A., in its capacity as a DIP ABL Co-Collateral Agent, as agent to the DIP ABL Co-Collateral Agents for purposes of filing financing statements, mortgages, control agreements, notices and other documents, in connection with the perfection of a security interest in the DIP ABL Collateral which was granted for the benefit of the DIP ABL Credit Parties (the "~~"~~DIP ABL Control Co-Collateral Agent~~"~~"). Each Debtor acknowledges that any and all actions to be taken by the DIP ABL Co-Collateral Agents under ~~this Interim Order, the Final Order,~~ the DIP ~~ABL Term Sheet,~~Orders and the DIP ABL Loan Documents, may be taken individually by the DIP ABL Control Co-Collateral Agent, and all such actions shall have the full force and effect as though taken jointly by both of the DIP ABL Co-Collateral Agents. The financing statements described above may describe the DIP ABL Collateral in the same manner as described herein, in the DIP ABL Term Sheet and in the DIP

74

ABL Credit Agreement, or may contain an indication or description of the DIP ABL Collateral that describes such property in any other manner as the DIP ABL Control Co-Collateral Agent may determine is necessary, advisable or prudent, including describing such property as "all assets and all personal property whether now owned or hereafter acquired" of the applicable Debtor or words of similar effect.

(e)    The DIP ABL Agents and the Prepetition Agents, each in their discretion, may file a photocopy of this ~~Interim~~Final Order as a financing statement or other notice of lien or similar instrument, with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept and record the photocopy of this ~~Interim~~Final Order, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Each Debtor is authorized to execute and deliver to the DIP ABL Agents or Prepetition Agents, mortgages in recordable form with respect to any real estate constituting DIP ABL Collateral and identified by any of the DIP ABL Agents or Prepetition Agents on terms reasonably satisfactory to the DIP ABL Agents or Prepetition Agents, as applicable.

27.    ~~26.~~ ***Other Automatic Perfection Matters.***    To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee or additional insured under any of the DIP ABL Loan Parties' insurance policies, or is the secured party under any Prepetition Loan Document, each of the DIP ABL Agents, for itself and on behalf of the DIP ABL Credit Parties is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the DIP ABL Loan Parties' insurance policies, and the secured party under each such Prepetition Loan Document (in any

WEIL:\96804508\5\73219.0006

such case with the same priority of liens and claims thereunder relative to the priority of (a) the DIP ABL Liens, and (b) the Prepetition Liens and Adequate Protection Liens, in each case, as set forth in this ~~Interim~~Final Order), and shall have all rights and powers in each case attendant to that position (including rights of enforcement but subject in all respects to the terms of this ~~Interim~~Final Order), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of ~~this Interim~~the DIP Order~~s~~ and the DIP ABL Loan Documents.  The Prepetition ABL Control Co-Collateral Agent or the Prepetition Second Lien Collateral Agent, as applicable, shall serve as agent for the DIP ABL Agents for purposes of perfecting the DIP ABL Agents' security interests in and liens on all DIP ABL Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.  All existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements constituting Prepetition ABL Loan Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors, which in each case were filed by any Prepetition ABL Agent, shall in each case be deemed to be delivered and/or filed in connection with the DIP ABL Facility, shall constitute DIP ABL Loan Documents and shall remain in full

76

force and effect without any further action by the Debtors, any DIP ABL Agent or any other person, and in each case the DIP ABL Agents shall be deemed to be a party thereto.

28.   27. ***Proceeds of Subsequent Financing.***  If any of the DIP ABL Loan Parties, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in any of the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt in breach of the DIP ABL Loan Documents, at any time prior to the repayment in full in cash of all DIP ABL Secured Obligations, or all Prepetition ABL Obligations, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the DIP ABL Loan Parties and the DIP ABL Loan Parties' estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agents, or if the DIP ABL Secured Obligations have been paid in full in cash, to the Prepetition ABL Administrative Agent, to be applied in accordance with the this InterimFinal Order and the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and the Prepetition Loan Documents, as applicable.

29.   28. ***Maintenance and Disposition of DIP ABL Collateral / Cash Management.***  Until the indefeasible payment in full in cash of all DIP ABL Secured Obligations, and the termination of the obligation of the DIP ABL Credit Parties to extend credit under the DIP ABL Facility, the DIP ABL Loan Parties shall (a) maintain and insure the DIP ABL Collateral in amounts, for the risks, and by the entities as required under the DIP ABL Loan Documents, (b) except as set forth in this paragraph 2829, maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP ABL Loan Documents; (ii) subject to the Cash Management Order,⁴⁵ as may be modified, with the prior written consent

---

⁴⁵   "“Cash Management Order"” means an interim or final order granting the *Motion Of Debtors For*

of the DIP ABL Agents by any order that may be entered by this Court; and (iii) in a manner

which, in any event, shall be satisfactory to the DIP ABL Agents.  Other than as expressly

required pursuant to the DIP ABL Loan Documents, the Cash Management Order or ~~this~~

~~Interim~~the DIP Orders, no modifications to the DIP ABL Loan Parties' cash management system

existing as of the Petition Date may be made without the prior approval of the DIP ABL Agents.

Further, the DIP ABL Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose

of any portion of the DIP ABL Collateral or Prepetition ABL Collateral other than in the

ordinary course of business without the prior consent of the DIP ABL Agents and Prepetition

ABL Agents, as applicable (and no consent shall be implied, from any other action, inaction or

acquiescence by the DIP ABL Agents or Prepetition ABL Agents, or from any order of this

Court), except as otherwise provided for in the DIP ABL Loan Documents or otherwise ordered

by the Bankruptcy Court.

30.    ~~29.~~ *Bank Products and Cash Management Services.*  From and after the

date of the entry of the Interim Order, and consistent with ~~this Interim~~the DIP Orders and the

DIP ABL Loan Documents in all respects, any DIP/ ABL Cash Management/Bank Products

Provider ~~shall be~~is deemed a Secured Party (as defined in the DIP ABL Loan Documents) and a

DIP ABL Credit Party with respect to any claims related to such Bank Products and Cash

Management Services (each as defined under the DIP ABL Loan Documents) to the extent

provided for under the DIP ABL Loan Documents, and any such Bank Products and Cash

---

*Authority To (I) Continue  Using Existing Cash Management System, Bank Accounts,  And Business
Forms, (II) Implement Ordinary Course Changes  To Cash Management System, (III) Continue
Intercompany Transactions, And (IV) Provide Administrative Expense Priority  For Postpetition
Intercompany Claims And Related Relief.*

WEIL:\96804508\5\73219.0006

Management Services shall constitute a DIP ~~Secured~~ABL Obligation.  From and after the date of the entry of the Interim Order, the DIP ABL Loan Parties ~~are~~were and continue to be authorized to request the continuation of letters of credit issued under the Prepetition LC Facility Agreement that are outstanding as of the Petition Date (but no new letters of credit), subject to and in accordance with the terms of the Prepetition LC Facility Agreement. Claims of the Prepetition LC Facility Credit Parties under the Prepetition LC Facility Agreement shall continue to be secured by the Prepetition ABL Liens in the Prepetition ABL Collateral.

31.    ~~30.~~  *Application of Proceeds of Collateral, Payments and Collections.* After repayment in full in cash of all DIP ABL Secured Obligations ~~and all Prepetition ABL Obligations~~, any remaining proceeds of the DIP ABL Collateral shall be applied to the DIP ABL Loan Parties' remaining outstanding and unpaid obligations, in a manner consistent with the Bankruptcy Code and, except as may be otherwise ordered in one or more orders of this Court, in accordance with the rights and priorities set forth in ~~this Interim~~the DIP Order~~s~~.

32.    ~~31.~~  *Case Milestones.*  The DIP ABL Loan Parties shall comply with the case milestones ~~set forth on Annex E in the DIP ABL Term Sheet or otherwise~~ set forth in the DIP ABL Loan Documents (as may be amended from time to time in accordance with the DIP ABL Loan Documents, the "~~"~~Case Milestones"~~"~~). For the avoidance of doubt, the failure of the DIP ABL Loan Parties to comply with any of the Case Milestones shall (a) constitute an Event of Default under the DIP ABL Loan Documents and this ~~Interim~~Final Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the DIP ABL Loan Parties' authority to use Cash Collateral under this ~~Interim~~Final Order; and

79

(c) permit the DIP ABL Administrative Agent, subject to paragraph 33~~33~~34, to exercise the rights and remedies provided for in this ~~Interim~~Final Order and the DIP ABL Loan Documents.

33.    ~~32.~~ ***Termination Event.*** (a) The occurrence of ~~(a)~~ any Event of Default (as defined in the DIP ABL Loan Documents), or (b) ~~the failure~~noncompliance of the DIP ABL Loan Parties ~~to perform,~~ in any material respect~~,~~ or in a manner adverse to the DIP ABL Credit Parties with any of the terms, provisions, conditions, covenants or obligations under ~~this Interim~~the DIP Order~~s~~ are each referred to herein as a "~~"~~Termination Event.~~"~~"

34.    ~~33.~~ ***Rights and Remedies Following a Termination Event.***

(a)    *Termination.* Immediately upon the occurrence and during the continuation of a Termination Event, with no further action of this Court, the DIP ABL Administrative Agent may (or at the direction of the Required Lenders (as defined in the DIP ABL Loan Documents) shall), notify the DIP ABL Loan Parties and the Creditors' Committee in writing that a Termination Event has occurred and is continuing (such notice, a "~~"~~Termination Notice,~~"~~" and the date of any such notice, the "~~"~~Termination Notice Date~~"~~").

(b)    *Notice of Termination.* Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to ~~any~~the Creditors' Committee ~~(if any)~~, the U.S. Trustee, and counsel to each of the Prepetition Agents. The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "~~"~~Remedies Notice Period~~"~~" and the date of the expiration of the Remedies Notice Period, the "~~"~~Termination Date~~"~~").

(c)    Without limiting the rights and remedies of the DIP ABL Agents and the other DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Administrative Agent may, at its option, and/or shall, upon the direction of the Required Lenders

80

(as defined in the DIP ABL Loan Documents), as applicable, immediately upon the occurrence of and during the continuation of a Termination Event following the issuance of a Termination Notice, *inter alia*, without notice and unless the Bankruptcy Court orders otherwise, declare (a) subject to expiration of the Remedies Notice Period, all obligations owing under the applicable DIP ABL Loan Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP ABL Loan Parties, (b) the termination, reduction or restriction of any further commitment to extend credit to the DIP ABL Loan Parties to the extent any such commitment remains, (c) terminate the DIP ABL Facility and the applicable DIP ABL Loan Documents as to any future liability or obligation of the DIP ABL Agents, any DIP ABL Lender, or any other DIP ABL Credit Party, but without affecting any of the liens or the obligations and/or (d), declare a termination, reduction or restriction on the ability of the DIP ABL Loan Parties to use any Cash Collateral and exercise all other rights and remedies provided in the DIP ABL Loan Documents and applicable law, including to require the DIP ABL Loan Parties to cash collateralize any letters of credit outstanding under the DIP ABL Facility in accordance with the DIP ABL Loan Documents (any of the actions set forth in the foregoing (a), (b), (c) and (d), a "*"*Termination*"*")~;~.

(d)    During the Remedies Notice Period, the DIP ABL Loan Parties shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination or for the contested use of Cash Collateral~,~; *provided* that the sole issue~s~ that may be raised before the Bankruptcy Court at ~any~ such emergency hearing ~is~are whether a Termination Event has occurred and/or is continuing and the contested use of Cash Collateral. During the Remedies Notice Period, the DIP ABL Loan Parties may continue to use the DIP ABL Collateral, including Cash Collateral, solely to meet payroll obligations (excluding any

81

severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Administrative Agent in its sole and absolute discretion and it being understood that none of the DIP ABL Credit Parties shall have any obligation to make an extension of credit under the DIP ABL Facility, or otherwise to fund the Carve-Out Account.

Upon expiration of the Remedies Notice Period, the DIP ABL Credit Parties or, upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Credit Parties, shall be permitted to exercise all remedies set forth herein, in the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Bankruptcy Court.    Upon the occurrence and during the continuation of a Termination Event and the expiration of the Remedies Notice Period, the DIP ABL Administrative Agent, or upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Administrative Agent, and any liquidator or other professional acting on their behalf will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the DIP ABL Loan Parties have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP ABL Collateral, including pursuant to any Court approved sale process.    Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-

WEIL:\96804508\5\73219.0006

bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

(e)      The exercise of the foregoing rights and remedies shall be subject to section [   ] of the DIP Intercreditor Agreement, which provides that the DIP ABL Credit Parties shall not apply proceeds of any Prepetition Unencumbered Assets until after the liquidation and application of proceeds of substantially all of the DIP ABL Collateral constituting Prepetition ABL Collateral.

35.      34.  **Modification of Automatic Stay.**  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of ~~this Interim~~the DIP Orders, including to (a) permit the DIP ABL Loan Parties to grant the DIP ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims; (b) permit the DIP ABL Agents, the Prepetition LC Facility Administrative Agent, or the Prepetition ABL Agents, as applicable, to take any actions permitted hereunder, including but not limited to the actions set forth in paragraph ~~25~~ 26 hereof; and (c) authorize the DIP ABL Loan Parties to pay, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties to retain and apply, payments made in accordance with ~~this Interim~~the DIP Orders.

36.      35.  **Good Faith**.

(a)      *Good Faith Under Section 364 of the Bankruptcy Code*.  The DIP ABL Credit Parties have acted in good faith in connection with ~~this Interim~~the DIP Orders and their reliance on ~~this Interim~~the DIP Orders is in good faith.  Based on the findings set forth in ~~this Interim~~the DIP Orders and the record made during the Interim Hearing and the Final

83

Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of ~~this Interim~~the DIP Orders are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the DIP ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the DIP ABL Secured Obligations, or any lien, claim or priority authorized or created thereby.  Any liens or claims granted to the DIP ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of ~~this Interim~~the DIP Orders shall be governed in all respects by the original provisions of ~~this Interim~~the DIP Orders, including entitlement to all rights, remedies, privileges and benefits granted therein.

(b)    *Prepetition ABL Credit Parties*.    The Prepetition ABL Credit Parties have acted in good faith in connection with ~~this Interim~~the DIP Orders and their reliance on ~~this Interim~~the DIP Orders is in good faith.  Based on the findings set forth in ~~this Interim~~the DIP Orders and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of ~~this Interim~~the DIP Orders are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the Prepetition ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the Prepetition ABL Obligations, or any lien, claim or priority authorized or created thereby.  Any liens or claims granted to the Prepetition ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of ~~this Interim~~the DIP Orders shall be governed in all

84

respects by the original provisions of ~~this Interim~~the DIP Order~~s~~, including entitlement to all rights, remedies, privileges and benefits granted therein.

37.    ~~36.~~    ***Proofs of Claim.***    Any order entered by the Bankruptcy Court establishing a bar date for any claims (including administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to any DIP ABL Credit Party or any Prepetition ABL Credit Party (for purposes of this paragraph ~~36~~37, in their respective capacities as such). The DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by ~~this Interim~~the DIP Order~~s~~ in any of the Chapter 11 Cases or any Successor Case, and the provisions of ~~this Interim Order, and, upon the entry thereof, the Final~~the DIP Order~~s~~ ~~,~~ relating to the amount of the DIP ABL Secured Obligations, the Prepetition ABL Obligations, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to ~~this Interim~~the DIP Order~~s~~, the Prepetition ABL Liens, the DIP ABL Liens and the DIP ABL Superpriority Claims shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status.  For the avoidance of doubt, subject to the reservation of rights set forth in paragraphs ~~40 and~~ 41 and 42 hereof, the books and records of the DIP ABL Agents, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent and each of their respective successors and assigns shall be deemed conclusive as to the amount of the claims of each such party.  However, in order to facilitate the processing of claims, to ease the burden upon the Bankruptcy Court and to reduce an unnecessary expense to the DIP ABL Loan Parties' estates, the Prepetition ABL Administrative Agent is authorized, but not directed or required, to file in the ~~DIP~~Prepetition ABL Loan Parties' lead chapter 11 case, a single, master proof of claim on

85

behalf of themselves and the Prepetition ABL Credit Parties on account of any and all of their respective claims arising under the Prepetition ABL Loan Documents, as applicable, and hereunder (the ""Master Proof of Claim"") against each of the DIPPrepetition ABL Loan Parties. Upon the filing of the Master Proof of Claim against each of the DIPPrepetition ABL Loan Parties, the Prepetition ABL Administrative Agent, and the Prepetition ABL Credit Parties, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claim of any type or nature whatsoever with respect to the Prepetition ABL Loan Documents, and the claim of each Prepetition ABL Credit Party (and each of its respective successors and assigns) named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each case of these applicable Chapter 11 Cases.  The Prepetition ABL Administrative Agent shall not be required to identify whether any Prepetition ABL Credit Party acquired its claim from another party and the identity of any such party or to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 36 37 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of any Prepetition ABL Credit Party (or its successor in interest) to vote separately on any plan proposed in any of the DIPapplicable Prepetition ABL Loan Parties' Chapter 11 Cases. The Prepetition ABL Administrative Agent shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the DIPPrepetition ABL Loan Parties to the Prepetition ABL Credit Parties, as applicable, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition ABL Administrative Agent.

86

38.    ~~37.~~ ***Rights of Access and Information.***  Without limiting the rights of access and information afforded the DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Loan Parties shall be, and hereby are, required to afford Representatives, agents and/or employees of the DIP ABL Agents reasonable access to: (a) the DIP ABL Loan Parties' premises, (b) knowledgeable officers of the DIP ABL Loan Parties, (c) the DIP ABL Loan Parties' books and records, and (d) the DIP ABL Loan Parties' properties and other collateral of any Debtor against whom such parties are granted DIP ABL Liens, DIP ABL Superpriority Claims, Adequate Protection Liens, or Adequate Protection Claims under ~~this Interim~~the DIP Order~~s~~ and the DIP ABL Loan Parties shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  Without limiting any other rights or remedies of the DIP ABL Agents or the other DIP ABL Credit Parties, or otherwise available at law or in equity, and subject to the terms of the DIP ABL Loan Documents unless otherwise ordered by the Bankruptcy Court, upon three (3) business days' written notice to counsel to the DIP ABL Loan Parties, counsel to the Creditors' Committee and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, after the expiration of the Remedies Notice Period, that a Termination Event has occurred and is continuing, the DIP ABL Agents, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP ABL Agents (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the DIP ABL Loan Parties for the purpose of exercising any remedy with respect to DIP ABL Collateral located thereon, and (ii) shall be entitled to all of the DIP ABL Loan Parties' rights and privileges as lessee or licensee under the applicable license

87

and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the DIP ABL Loan Parties, which are owned by or subject to a lien of any third party and which are used by DIP ABL Loan Parties in their businesses, in either the case of (i) or (ii), without interference from lienholders or licensors thereunder; *provided*, *however*, that the DIP ABL Agents (on behalf of the applicable DIP ABL Lenders) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the DIP ABL Loan Parties under, and solely as required by, the applicable lease and any amendments thereto that accrue during the period of such occupancy or actual use by DIP ABL Agents calculated on a per diem basis. Nothing herein shall require the DIP ABL Loan Parties, the DIP ABL Agents or the other DIP ABL Credit Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP ABL Agents and the other DIP ABL Credit Parties herein. ~~Nothing shall prevent the rights of a landlord to object to the relief being sought in this subparagraph subject to the Final Hearing.~~ Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of ~~its~~ remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

39. ~~38.~~ ***Intercompany Obligations.*** To the extent any Debtor owes any intercompany obligation or indebtedness to any other Debtor or any direct or indirect subsidiary of any Debtor (the "~~"~~Intercompany Obligations~~"~~"), such Intercompany Obligations shall, subject

88

to the reservation of rights set forth in paragraphs ~~40 and~~ 41 and 42 hereof, be subordinated to the DIP ABL Secured Obligations, and the guarantees (if any) thereof, until the DIP ABL Secured Obligations are indefeasibly repaid in full in cash. For the avoidance of doubt, any reference in this ~~Interim~~Final Order to payment (or repayment) in full shall mean: (a) indefeasible repayment of all outstanding obligations in full in cash, (b) termination or expiration of all commitments under any applicable DIP ABL Loan Documents or Prepetition ABL Loan Documents and termination or expiration of any other commitment of any DIP ABL Credit Parties or Prepetition ABL Credit Parties to make extensions of credit to any of the DIP ABL Loan Parties under any such DIP ABL Loan Documents or Prepetition ABL Loan Documents, respectively, (c) all letters of credit issued or deemed issued under the DIP ABL Loan Documents have been canceled or have expired, and all amounts drawn thereunder have been reimbursed in full in cash (or other arrangements with respect thereto satisfactory to the DIP ABL Agents in their sole discretion shall have been made), and (d) solely with respect to the Prepetition ABL Obligations (i) if no Challenge Proceeding has been timely and properly commenced with respect to the prepetition obligations subject to the ABL Roll Up, the expiration of the Challenge Period, or (ii) the date on which any order entered by the Bankruptcy Court in favor of the applicable secured party in such Challenge Proceeding becomes final and non-appealable. For the avoidance of doubt, any Intercompany Obligations shall be subordinated to the DIP ABL Secured Obligations, the DIP ABL Liens, the Adequate Protection Liens, and the Adequate Protection Claims.

40.    ~~39.~~ *Prohibited Use of DIP ABL Facility, DIP ABL Collateral, Cash Collateral, Carve-Out, etc.* Notwithstanding anything herein, prior to indefeasible payment in

full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, except as otherwise expressly provided in this ~~Interim~~Final Order, the DIP ABL Facility, the DIP ABL Collateral, the Cash Collateral, the Prepetition ABL Collateral, proceeds of any of the foregoing, and the Carve-Out may not be used:

(a)           for the payment of interest and principal with respect to Prepetition Obligations or any other prepetition indebtedness of the Debtors, except for: (i) the Carve-Out; (ii) prepetition employee wages, benefits and related employee taxes as of the Petition Date; (iii) prepetition sales, use and real property taxes; (iv) prepetition amounts due in respect of insurance financings, premiums and brokerage fees; (v) payment of certain expenses (which expenses shall include fees and expenses of professionals) of the Prepetition ABL Agents and the Prepetition ABL Credit Parties (solely as required under the Prepetition Loan Documents); (vi) other "'first day'" interim and final orders permitting payment of prepetition claims, in the case of (ii) through (vi) pursuant to an order or orders of the Bankruptcy Court in form and substance acceptable to the DIP ABL Agents in their sole and absolute discretion and subject to and in accordance with the Approved Budget; (vii) the ABL Roll Up; and (viii) other indebtedness to the extent authorized by the Bankruptcy Court and set forth in the Approved Budget;

(b)           subject to this ~~Interim~~Final Order in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation or threatened litigation (including any investigation in connection with such litigation or threatened litigation) of any type adverse to the rights, remedies, claims or defenses of the DIP ABL Credit Parties~~5~~ 56 or the Joint Lead Arrangers under the DIP ABL Loan Documents or the Prepetition ABL Credit Parties under the Prepetition ABL Loan Documents, ~~this Interim~~and/or the DIP Orders, including for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding, challenging, or subordinating, in whole or in part, the DIP ABL Secured Obligations, DIP ABL Liens, the

---

56 For the purposes of this paragraph ~~39~~40 and paragraph 41, the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any of its affiliates.

WEIL:\96804508\5\73219.0006

Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payments pursuant to ~~this Interim~~the DIP Orders; (B) for monetary, injunctive, declarative or other affirmative relief against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties or their respective collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties of any rights and remedies under ~~this Interim~~the DIP Orders, the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties upon any of their respective collateral;

(c)     to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP ABL Agents, unless otherwise set forth in the Approved Budget;

(d)     to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtors (including so-called ""topping fees," "" "exit fees"" and other similar amounts), except as approved by the Bankruptcy Court, without prior written consent by the DIP ABL Agents, unless otherwise included in the Approved Budget;

(e)     to object to, contest, or interfere with, in any way, the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' enforcement or realization upon any of the Prepetition ABL Collateral or DIP ABL Collateral once a Termination Event has occurred, except as provided for in ~~this Interim~~the DIP Orders, or seek to prevent the DIP ABL Credit Parties or the Prepetition ABL Credit Parties from credit bidding in connection with any proposed plan of reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

(f)     unless in connection with the repayment in full, in cash of the DIP ABL Facility, or the Prepetition ABL ~~Secured~~ Obligations, as applicable, to use or seek to use Cash Collateral while the DIP ABL Secured Obligations, the Prepetition ABL Obligations and/or any of the DIP ABL Credit Parties' commitments under the DIP ABL Loan Documents remain outstanding, without the consent of the DIP ABL Agents, or the Prepetition ABL Administrative Agent, as applicable, other than during the Remedies Notice Period during which period the DIP ABL Loan Parties may only use Cash Collateral in accordance with the terms of ~~this Interim~~the DIP Orders;

(g)     to use or seek to use any insurance or tax refund proceeds constituting DIP ABL Collateral or Prepetition ABL Collateral other than

91

solely in accordance with the Approved Budget and the DIP ABL Loan Documents;

(h)        to incur indebtedness other than in accordance with the Approved Budget or the DIP ABL Loan Documents without the prior consent of the DIP ABL Agent;

(i)        to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, however, that, if a Creditors' Committee is appointed, not more than $100,000 in the aggregate of proceeds of the Carve-Out, any Cash Collateral, or any proceeds of the DIP ABL Facility or, the DIP ABL Collateral or the Junior DIP Facility may be used by suchthe Creditors' Committee for purposes of investigating such claims, liens, or interests of the Prepetition ABL Credit Parties pursuant to paragraphs 40 and 41 and 42 (but not to litigate any of the foregoing);

(j)        to assert, commence, prosecute or support any claims or causes of action whatsoever, including any Avoidance Action, against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; *provided, that the foregoing shall not be construed to prohibit the Debtors from responding to discovery requests as required in their reasonable business judgment in consultation with legal counsel*

(k)        to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP ABL Secured Obligations, the DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to this Interimthe DIP Orders or any other rights or interests of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

(l)        to sell or otherwise dispose of the DIP ABL Collateral or the Prepetition ABL Collateral other than as contemplated by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable; or

(m)        for any purpose otherwise limited by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable.

41.     40.  *Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.*  The stipulations and admissions contained in this Interimthe DIP Orders, including the Debtors' Stipulations, shall be binding on the Debtors and any successors thereto in all

92

circumstances. The Debtors' Stipulations shall be binding on the Debtors' estates and each other party in interest, including ~~any~~the Creditors' Committee, unless, and solely to the extent that (a) any such party in interest, including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including ~~any~~the Creditors' Committee), and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, with standing and requisite authority, has timely commenced an adversary proceeding (subject to the limitations set forth in paragraphs ~~40 and~~ 41 and 42 hereof) against the Prepetition ABL Credit Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "~~"~~Representatives~~"~~") in connection with any matter related to the Prepetition ABL Loan Documents or the Prepetition ABL Collateral (a "~~"~~Challenge Proceeding~~"~~") by no later than on or before ~~each of a period of~~ 60 days after entry of ~~the~~this Final Order (the "~~"~~Challenge Period~~"~~"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding, *provided that* in the event that the Creditors' Committee files a motion seeking standing to pursue a Challenge Proceeding against any Prepetition Credit Party by no later than on or before 60 days after entry of this Final Order, the Challenge Period shall be extended, solely with respect to the Challenge Proceeding for which the Creditors' Committee seeks standing, to the date that is the earlier of (i) two (2) days after the Court rules on such standing motion, and (ii) February 25, 2019. Any complaint or motion for standing filed in, or in connection with, any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and include a substantially final complaint, and

93

any challenges or claims not so specified in the standing motion shall be deemed forever waived, released, and barred and the Challenge Period shall not be extended for such challenges or claims. Upon the expiration of the Challenge Period, without the filing of a Challenge Proceeding.

(a)    any and all such Challenge Proceedings and objections by any party (including any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred,

(b)    all matters not subject to the Challenge Proceedings, including all findings, the Debtors' Stipulations, all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition ABL Credit Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Case;

(c)    any and all prepetition claims or causes of action against the Prepetition ABL Credit Parties, as applicable, relating in any way to the Debtors Prepetition ABL Loan Parties or the Prepetition ABL Loan Documents, as applicable, shall be forever waived and released by the Debtors, the Debtors' estates, all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Case;

(d)    to the extent not theretofore repaid, the Prepetition ABL Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction (except as may be provided by Ssection 506(a) of the Bankruptcy Code), defense or avoidance, for all purposes in these Chapter 11 Cases or any Successor Case;

(e)    the Prepetition ABL Liens on the Prepetition ABL Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and

(f)    the obligations under the Prepetition ABL Loan Documents and the Prepetition ABL Facility Liens on the Prepetition ABL Collateral shall not be subject to any other or further challenge by the Debtors, the Creditors' Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a

94

chapter 7 or chapter 11 trustee and/or examiner appointed or elected for any of the Debtors with respect thereto).

42.    41. If any Challenge Proceeding is timely commenced, the admissions and stipulations contained in this Interimthe DIP Orders, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Creditors' Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final, non-appealable order) in such Challenge Proceeding.  Nothing in this Interimthe DIP Orders vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including claims and defenses with respect to the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral.  Notwithstanding anything to the contrary in this Interimthe DIP Orders, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, none of the CompanyDebtors, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings nor the Creditors' Committee shall not be prohibited from investigating or pursuing any estate causes of action against ESL Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the DIP ABL LoansFacility or the Carve-Out Outso long as it does not affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, in each case, other than ESL Investments, Inc.

43.    42. *No Third Party Rights.*  Except as explicitly provided for herein, this InterimFinal Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

95

44.    43. *Limitations on Charging Expenses.*  In the Final Order, the Debtors will request that noNo costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP ABL Credit Parties orwith respect to the DIP ABL Collateral or the Prepetition ABL Credit Parties orwith respect to the Prepetition ABL Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior written consent of each of the DIP ABL Agents, any DIP ABL Credit Party, and/or any Prepetition ABL Credit Party, as applicable, and no such consent shall be implied from this InterimFinal Order or any other action, inaction, or acquiescence by any such agents or lenders.

45.    44. *Section 552(b).*  In tThe Final Order, the Debtors will request that the ""equities of the case"" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, with respect to proceeds, products, offspring or profits of any of the Prepetition ABL Collateral or the DIP ABL Collateral.

46.    45. *No Marshaling/Applications of Proceeds.*  In the Final Order, the Debtors will request that nNeither the DIP ABL Credit Parties nor the Prepetition ABL Credit Parties shall be subject to the equitable doctrine of ""marshaling"" or any other similar doctrine with respect to any of the DIP ABL Collateral or the Prepetition ABL Collateral.

47.    46. *Discharge Waiver.*    The Debtors expressly stipulate, and the Bankruptcy Court finds and adjudicates that, none of the DIP ABL Secured Obligations, the DIP ABL Superpriority Claims, the DIP ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payment obligations pursuant to this Interimthe DIP

Orders, shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP ABL Secured Obligations and the Adequate Protection Claims have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

48.    47. ***Rights Preserved.*** Other than as expressly set forth in ~~this Interim~~the DIP Orders, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are preserved. Nothing contained herein shall be deemed to prevent the Prepetition ABL Credit Parties from requesting additional adequate protection or from arguing that the adequate protection granted herein does in fact adequately protect the Prepetition ABL Credit Parties against any post-petition diminution in value of the Prepetition ABL Collateral.

49.    48. ***Release.*** ~~In the Final Order, the Debtors will seek approval of the following: s~~Subject to paragraphs ~~40 and~~ 41 and 42 and as further set forth in the DIP ABL Loan Documents, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any Successor Case) and any party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or future DIP ABL Agents and other current or future DIP ABL Credit Parties, the Joint Lead Arrangers (as defined in the DIP ABL Loan Documents), the current or future Prepetition ABL Administrative Agent, Prepetition LC Facility Administrative Agent and other current or future Prepetition ABL Credit Parties and each of their respective participants and each of their respective affiliates, and each of their respective Representatives, from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and

97

obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP ABL Facility, the DIP ABL Loan Documents, the Prepetition ABL Facility, the Prepetition ABL Loan Documents, or the transactions and relationships contemplated hereunder or thereunder, including (i) any so-called ""lender liability"" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, the Prepetition LC Facility Administrative Agent and the other Prepetition ABL Credit Parties; and (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP ABL Secured Obligations, the DIP ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any adequate protection payment obligations pursuant to this Interimthe DIP Orders, *provided*, *however*, that the foregoing release shall not release any claims for fraud or willful misconduct, *provided, further* that ESL Investments, Inc., in any capacity, and each of its affiliates shall not be entitled to a release pursuant to this paragraph.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP ABL Loan Documents.

WEIL:\96804508\5\73219.0006

50.    49. *No Waiver by Failure to Seek Relief.*  The failure or delay of the DIP ABL Credit Parties or the Prepetition Credit Parties to seek relief or otherwise exercise their respective rights and remedies under ~~this Interim~~the DIP Order~~s~~, the Prepetition Loan Documents, the DIP ABL Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Credit Parties or the Prepetition Credit Parties.

51.    50. *Binding Effect of ~~Interim~~Final Order.*  Immediately upon entry by the Bankruptcy Court (notwithstanding any applicable Bankruptcy Rules or any other law or rule to the contrary), the terms and provisions of this ~~Interim~~Final Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP ABL Credit Parties, and the Prepetition ABL Credit Parties, and their respective successors and assigns.  To the extent there is any applicable stay of this ~~Interim~~Final Order, it is hereby waived.

52.    51. *No Modification of ~~Interim~~Final Order.*  The Debtors irrevocably waive the right to seek and shall not seek or consent, directly or indirectly without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, which consent of the DIP ABL Agents or Prepetition ABL Agents may be refused in their sole and absolute discretion: (a) any modification, stay, vacatur or amendment to ~~this Interim~~the DIP Order~~s~~; (b) other than the Carve-Out, a priority claim for any administrative expense or unsecured claim against the Debtors to the fullest extent permitted under the Bankruptcy Code in the Chapter 11 Cases or any Successor Case, equal to or superior to the Adequate Protection Claims~~, other than the Carve-Out~~ and the DIP ABL Superpriority Claim~~s~~; (c) any order allowing use of Cash Collateral constituting DIP ABL Collateral other than ~~this Interim Order and~~ the ~~Final~~DIP Order~~s~~; (d) any

lien on any of the DIP ABL Collateral, with priority equal or superior to the Adequate Protection

Liens (other than the Permitted Prior Liens and the DIP ABL Liens).  The Debtors irrevocably

waive any right to seek any amendment, modification or extension of ~~this Interim~~the DIP Order~~s~~

without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, as

applicable, and no such consent shall be implied by any other action, inaction or acquiescence of

the Prepetition ABL Credit Parties or the DIP ABL Credit Parties.

53.      ~~52.  *Interim*~~*Final* **Order Controls***; Modifications to Junior DIP Orders*.

In the event of any inconsistency between the terms and conditions of the DIP ABL Loan

Documents or this ~~Interim~~Final Order, the provisions of this ~~Interim~~Final Order shall govern and

control.  In the event of any inconsistency between this Final Order, on the one hand, and the

Interim Junior DIP Order, the Junior DIP Loan Documents, or any order approving the Junior

DIP Facility on a final basis, on the other hand, the provisions of this Final Order shall govern

and control.  As set forth in the DIP Intercreditor Agreement, neither the Interim Junior DIP

Order nor any order approving the Junior DIP Facility on a final basis shall be modified without

the consent of the DIP ABL Agents.

54.      ~~53.  *Survival*~~.  The provisions of this ~~Interim~~Final Order and any actions

taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any

plan of reorganization in the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a

case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any

Successor Case; or (d) pursuant to which the Bankruptcy Court abstains from hearing the

Chapter 11 Cases or any Successor Case.  The terms and provisions of this ~~Interim~~Final Order,

subject to paragraphs 41 and 42, including the claims, liens, security interests and other

protections granted to the Prepetition Credit Parties and the DIP ABL Credit Parties pursuant to

this ~~Interim~~Final Order and/or the Prepetition Loan Documents (other than as modified hereby),

notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any

Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case,

and shall maintain their priority as provided by this ~~Interim~~Final Order until all DIP ABL Secured

Obligations, all Prepetition ABL Obligations, all Prepetition Second Lien Obligations, all

Adequate Protection Claims, and any adequate protection payment obligations pursuant to this

~~Interim~~Final Order, have been paid in full.

### 55.   ~~54.~~ *Preservation of Rights Granted Under this ~~Interim~~Final Order*.

(a)   Except as expressly provided herein or in the DIP ABL Loan

Documents, no claim (to the fullest extent permitted under the Bankruptcy Code) or lien having a

priority senior to or *pari passu* with that granted by ~~this Interim~~the DIP Orders to the DIP ABL

Credit Parties shall be granted while any portion of the DIP ABL Secured Obligations remain

outstanding, and the DIP ABL Liens shall not be subject to or junior to any lien or security

interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of

the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security

interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)   Unless all DIP ABL Secured Obligations and Prepetition ABL

Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it

shall constitute an Event of Default under the DIP ABL Loan Documents and shall terminate the

right of the DIP ABL Loan Parties to use Cash Collateral if any of the Debtors seek, or if there is

entered (i) any stay, vacatur, rescission, modification, amendment, or extension of ~~this~~the Interim

Order or ~~the~~this Final Order without the prior written consent of the DIP ABL Agents, and no

such consent shall be implied by any other action, inaction or acquiescence by the DIP ABL

Agents; (ii) an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of these Chapter 11 Cases; (iii) [reserved]; or (iv) any other order granting adequate protection or authorizing the use of Cash Collateral without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, and no such consent shall be implied by any other action, inaction, or acquiescence by any of the DIP ABL Agents and the Prepetition ABL Agents.  If an order dismissing or converting any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (x) the DIP ABL Superpriority Claims, Adequate Protection Claims and other administrative claims granted under this Interimthe DIP Orders, the DIP ABL Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interimthe DIP Orders until all DIP ABL Secured Obligations, all Prepetition Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to this Interimthe DIP Orders shall have been paid and satisfied in full (and that such DIP ABL Superpriority Claims, Adequate Protection Claims, the other administrative claims granted under this Interimthe DIP Orders, the DIP ABL Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (y) this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the claims, liens and security interests referred to in clause (x)(x) above.

(c)     If any or all of the provisions of this Interimthe DIP Orders are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP ABL Secured Obligations, the Adequate Protection Claims, or any adequate protection payment obligations pursuant to this

102

Interimthe DIP Orders incurred prior to the actual receipt of written notice by the DIP ABL Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority, or enforceability of the DIP ABL Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of DIP ABL Collateral and Prepetition ABL Collateral (including Cash Collateral), any DIP ABL Secured Obligations, any Adequate Protection Claims, or any adequate protection payment obligations pursuant to the InterimDIP Orders incurred by the DIP ABL Loan Parties to the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, and/or the Prepetition ABL Credit Parties, as the case may be, prior to the actual receipt of written notice by the DIP ABL Agents and/or the Prepetition ABL Agents, as the case may be, of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interimthe DIP Orders, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interimthe DIP Orders, and pursuant to the DIP ABL Loan Documents with respect to all such uses of the DIP ABL Collateral (including the Cash Collateral), all DIP ABL Secured Obligations, all Adequate Protection Claims, and all adequate protection payment obligations pursuant to this Interimthe DIP Orders.

55. *Final Hearing.*  The Final Hearing to consider entry of the Final Order and approval of the DIP ABL Facility on a final basis is scheduled for November 15, 2018 at 10:00 a.m. Eastern Time before the Honorable Robert D. Drain, United States Bankruptcy Judge, the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

WEIL:\96804508\5\73219.0006

56. ~~*Notice of Final Hearing*: Notice of the Final Hearing shall be provided in accordance with the terms of the Case Management Order.~~

57. ~~*Objection Deadline*. Objections, if any, to the relief sought in the Motion with respect to entry of the Final Order shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and served upon: (a) proposed counsel to the Debtors; (b) the U.S. Trustee; (c) proposed counsel to the Creditors' Committee; (d) counsel to the DIP ABL Agents; (e) counsel to the Prepetition ABL Administrative Agent; and (f) counsel to the Prepetition Second Lien Agents, so that such objections are filed with the Bankruptcy Court and received by said parties on or before 4:00 p.m. Eastern Time on November 8, 2018.~~

56. ~~58.~~ *Retention of Jurisdiction*. The Bankruptcy Court shall retain jurisdiction to enforce this ~~Interim~~Final Order according to its terms to the fullest extent permitted by applicable law.

**Reservations of Rights**

57. ~~59.~~ *Chubb ~~Reservation of Rights~~*. For the avoidance of doubt, (i) the DIP ABL ~~Credit Parties~~Lenders shall not have a security interest or lien on any collateral provided by or on behalf of the Debtors to ACE American Insurance Company and ACE Fire Underwriters Insurance Company (together, with each of their affiliates and each of their and their affiliates' successors, ~~"~~"Chubb"~~"~~), (ii) the Debtors may not grant liens and/or security interests in such property to any other party, and (iii) this Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under

104

insurance policies and related agreements; _provided_ that to the extent any such property reverts to the Debtors, such property shall be subject to the terms of this ~~Interim~~Final Order.

58.    ***United States of America.***

(i)                    In determining to make any loan under the DIP ABL Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP ABL Credit Parties' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., as amended, or any similar federal or state statute).

(ii)                    Nothing in this Final Order or the DIP ABL Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(iii)                    As to the United States, its agencies, departments, or agents, nothing in this Final Order or the DIP ABL Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have, and the Debtors and all other parties in interest, including the DIP ABL Credit Parties, reserve all rights to challenge the validity of any such purported right of setoff or recoupment.

59.    ***Setoff and Recoupment.*** Except as specifically set forth in paragraph 41(d) with respect to the Prepetition ABL Obligations, notwithstanding anything to the contrary in this Final Order, nothing herein is intended to, and shall not:  (a) waive, modify, prejudice, limit or otherwise impair the right of any party to exercise rights of setoff or recoupment, if any, under the Bankruptcy Code (including, without limitation, pursuant to section 553 of the Bankruptcy Code) or any other applicable non-bankruptcy law, subject, however, to section 546(c) of the Bankruptcy Code, (b) provide any party with any greater or lesser setoff or

recoupment rights, if any, than they would have under the Bankruptcy Code or any other applicable non-bankruptcy law, or eliminate the need to seek relief from the automatic stay where required before exercising any such rights, or (c) waive, modify, prejudice, limit or otherwise impair any defenses or objections of the DIP Agents or any of the other DIP Credit Parties, the Prepetition ABL Agents or any of the other Prepetition ABL Credit Parties, the Debtors and any other party in interest to such setoff and recoupment rights or the exercise thereof.

60.    ***Prepetition Consolidated Loan Lenders.***  As adequate protection of liens held by SL Agent, LLC, as agent (in such capacity, the "Prepetition Consolidated Loan Agent") under that certain Third Amended and Restated Loan Agreement, dated as of June 4, 2018 (as amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the date hereof, the "Prepetition Consolidated Loan Agreement"), among (i) JPP, LLC, JPP II, LLC and Cascade Investment, L.L.C., collectively, as lenders and (iii) Sears, Roebuck And Co., KMART Stores of Illinois LLC, KMART of Washington LLC, KMART Corporation, SHC Desert Springs, LLC, Innovel Solutions, Inc., Sears Holdings Management Corporation, Maxserv, Inc., Troy Coolidge No. 13, LLC, Sears Development Co., Big Beaver Of Florida Development, LLC and Sears Holdings Corporation (collectively, the "Prepetition Consolidated Loan Parties"), the Prepetition Consolidated Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other disbursements of the Prepetition Consolidated Loan Agent whether incurred before, on or after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 19(e) hereof, Debevoise & Plimpton LLP, (ii) continued maintenance and insurance of the "Collateral" as such term is defined in the Prepetition Consolidated Loan Agreement in amounts and for the risks, and by the entities, as required under the Prepetition Consolidated Loan Agreement and this Final Order and (iii) cash payment of post-petition interest on Note A-1 and Note A-2 (each as defined in the Prepetition Consolidated Loan Agreement) under the Prepetition Consolidated Loan Agreement as such interest becomes due and payable at the applicable non-default rate thereunder from and after the Petition Date.  For the avoidance of doubt the foregoing does not

107

apply to any portion of the Prepetition Consolidated Loan held by ESL.

61.     ***Reclamation***.  To the extent a seller of goods (a "Reclamation Creditor") asserts rights of reclamation pursuant to and in accordance with both section 2-702(2) of the Uniform Commercial Code (the "UCC") and section 546(c) of the Bankruptcy Code (each a "Reclamation Claim" and, collectively, the "Reclamation Claims") requesting that the Debtors return certain goods identified in the Reclamation Claims (the "Reclamation Goods"), the rights of such Reclamation Creditor (the "Reclamation Rights") in either Reclamation Goods or the proceeds thereof (the "Reclamation Proceeds") and the priority of such Reclamation Rights as against any other interest in the Reclamation Goods or the Reclamation Proceeds shall be preserved solely to the extent a Challenge Proceeding with respect to the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations has been successfully brought in compliance with the provisions of this Final Order and determined by an order entered by the Bankruptcy Court that becomes final and non-appealable; *provided that* in no event shall any alleged Reclamation Claim or Reclamation Right be deemed or treated hereunder as a Permitted Prior Lien rather, any such alleged Reclamation Claim or Reclamation Right shall have the same rights and priority with respect to the DIP ABL Facility, DIP ABL Liens and DIP ABL Collateral as such rights and claims had with respect to the Prepetition ABL Facilities, Prepetition ABL Liens and Prepetition ABL Collateral (subject to paragraphs 41 and 42 of this Order).  Notwithstanding anything herein to the contrary, nothing herein shall determine, or be deemed a determination of the validity or extent of any Reclamation Rights or Reclamation Claims and all parties rights with respect thereto are expressly reserved.

62.    ***Texas Assets.***    As adequate protection for the claims of the Specified Governmental Units,[7] the Debtors either will pay such claims directly or fund a segregated account (the "Specified Governmental Units Account"), in each case from the proceeds of the Store Closing Sales located in the jurisdictions subject to the authority of the Specified Governmental Units.  The liens asserted by the Specified Governmental Units shall attach to the Specified Governmental Units Account in the same amount, to the same extent and with the same priority, validity and enforceability, and subject to the same defenses, as the liens the Specified Governmental Units now have against such assets of the Debtors. The Specified Governmental Units Account shall be maintained solely for the purpose of providing adequate protection and shall constitute neither the allowance of the claims of the Specified Governmental Units, nor a floor or cap on the amounts the Specified Governmental Units may be entitled to receive.  All

---

[7] For purposes of this Order "Specified Governmental Units" means Allen ISD, Angelina County, Aransas Count, Atascosa County, Atlanta, Atlanta ISD, Bee County, Bexar County, Blanco CAD, Cameron County, Cleveland ISD, Cypress-Fairbanks ISD, Dallas County, Del Rio, Eagle Pass, Eagle Pass ISD, El Paso, Ellis County, Fort Bend County, Frisco, Galveston County, Grayson County, Gregg County, Harlingen, Harlingen CISD, Harris County, Hidalgo County, Hood CAD, Hopkins County, Hunt County, Irving ISD, Jasper County, Jefferson County, Jim Wells CAD, Kaufman County, Lewisville ISD, Matagorda County, McAllen, McLennan County, Montgomery County, Navarro County, Nueces County, Parker CAD, Pecos County, Pleasanton, Polk County, Rockwall CAD, San Patricio County, Smith County, Stephenville, Stephenville ISD, Sulphur Springs, Sulphur Springs ISD, Tarrant County, Tom Green CAD, Val Verde County, Van Zandt CAD, Victoria County, Wharton Co. Jr. College Dist., Wilson County, Wise CAD, Wise County, Wood County, Nolan County, City Sweetwater, Sweetwater Independent School District (ISD), Palo Pinto County, City Mineral Wells, Mineral Wells ISD, Johnson County, City Cleburne, Cleburne ISD, Arlington ISD, Crowley ISD, Eagle Mountain-Saginaw ISD, City Grapevine, Grapevine-Colleyville ISD, Richardson ISD, Carrollton-Farmers Branch ISD, City of Garland, Lubbock Central Appraisal District, Midland County, Tyler ISD, Cass County, Houston County, Mineola ISD, Nacogdoches County ISD, Austin County Appraisal District, Brazoria County Tax Office, Brazoria County Municipal Utility District (MUD) #35, Brazoria County Tax Office, Fort Bend ISD, Fort Bend County Levee Improvement District #2, First Colony MUD #10, Clear Creek ISD, Galveston County Mgmt. Dist. #1, Dickinson ISD, Interstate MUD, Clear Creek ISD, Galveston County Mgmt Dist. #1, Dickinson ISD, Interstate MUD, Clear Creek ISD, City of Houston, Galena Park ISD, HC MUD 285, Clear Creek ISD, City of Houston, Galena Park ISD, Spring Branch ISD, Spring ISD, Alief ISD, Tomball ISD, City of Tomball, Midtown Mgmt District, City of Jasper, City of Cleveland, Bay City ISD, Kerr County, Kendall County, Fayette County, Maverick County, Uvalde County, Weslaco City, Weslaco ISD, Randall County Tax Office, Potter County Tax Office, Gray County Tax Office, Garland ISD, Humble ISD, Harris County MUD 109, and Maricopa County Treasurer.

109

parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Specified Governmental Units are fully preserved. Funds in the Specified Governmental Units Account may be distributed upon agreement between the Specified Governmental Units and the Debtors, with the consent of the DIP ABL Administrative Agent, or by subsequent order of the Court, duly noticed to the Specified Governmental Units.

Dated: _____, 2018
White Plains, New York

_____
Robert D. Drain
United States Bankruptcy Judge

110

**<u>Exhibit A</u>**

<u>DIP ABL Credit Agreement</u>

**Exhibit B**

Syndication Procedures

**Exhibit C**

Approved Budget

| Summary report: Litéra® Change-Pro TDC 10.1.0.800 Document comparison done on 11/23/2018 12:43:30 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://WEILDMS/WEIL/96804464/1 | |
| **Modified DMS:** iw://WEILDMS/WEIL/96804508/8 | |
| **Changes:** | |
| Add | 1223 |
| Delete | 982 |
| Move From | 20 |
| Move To | 20 |
| Table Insert | 9 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 2255 |

## Exhibit C

**The Illinois Sears EDA Act**

(20 ILCS 620/4) (from Ch. 67 1/2, par. 1004)

Sec. 4. Establishment of economic development project areas; ordinance; notice; hearing; changes in economic development plan. Economic development project areas shall be established as follows:

(a) The corporate authorities of a municipality shall by ordinance propose the establishment of an economic development project area and fix a time and place for a public hearing, and shall submit a certified copy of the ordinance as adopted to the Department.

(b)(1) Notice of the public hearing shall be given by publication and mailing. Notice by publication shall be given by publication at least twice, the first publication to be not more than 30 nor less than 10 days prior to the hearing in a newspaper of general circulation within the taxing districts having property in the proposed economic development project area. Notice by mailing shall be given by depositing such notice together with a copy of the proposed economic development plan in the United States mails by certified mail addressed to the person or persons in whose name the general taxes for the last preceding year were paid on each lot, block, tract, or parcel of land lying within the economic development project area. The notice shall be mailed not less than 10 days prior to the date set for the public hearing. In the event taxes for the last preceding year were not paid, the notice shall also be sent to the persons last listed on the tax rolls within the preceding 3 years as the owners of such property.

(2) The notices issued pursuant to this Section shall include the following:

(A) The time and place of public hearing;

(B) The boundaries of the proposed economic development project area by legal description and by street location where possible;

(C) A notification that all interested persons will be given an opportunity to be heard at the public hearing;

(D) An invitation for any person to submit alternative proposals or bids for any proposed conveyance, lease, mortgage or other disposition of land within the proposed economic development project area;

(E) A description of the economic development plan or economic development project if a plan or project is a subject matter of the hearing; and

(F) Such other matters as the municipality may deem appropriate.

(3) Not less than 30 days prior to the date set for hearing, the municipality shall give notice by mail as provided in this subsection (b) to all taxing districts, of which taxable property is included in the economic development project area, and to the Department. In addition to the other requirements under this subsection (b), the notice shall include an invitation to the Department and each taxing district to submit comments to the municipality concerning the subject matter of the hearing prior to the date of hearing.

(c) At the public hearing any interested person, the Department or any affected taxing district may file written objections with the municipal clerk and may be heard orally with respect to any issues embodied in the notice. The municipality shall hear and determine all alternate proposals or bids for any proposed conveyance, lease, mortgage or other disposition of land and all protests and objections at the hearing, and the hearing may be adjourned to another date without further notice other than a motion to be entered upon the minutes fixing the time and place of the adjourned hearing. Public hearings with

regard to an economic development plan, economic development project area, or economic development project may be held simultaneously.

(d) At the public hearing or at any time prior to the adoption by the municipality of an ordinance approving an economic development plan, the municipality may make changes in the economic development plan. Changes which (1) alter the exterior boundaries of the proposed economic development project area, (2) substantially affect the general land uses established in the proposed development plan, (3) substantially change the nature of the proposed economic development project, (4) change the general description of any proposed developer, user or tenant of any property to be located or improved within the economic development project area, or (5) change the description of the type, class and number of employees to be employed in the operation of the facilities to be developed or improved within the economic development project area shall be made only after notice and hearing pursuant to the procedures set forth in this Section. Changes which do not (1) alter the exterior boundaries of a proposed economic development project area, (2) substantially affect the general land uses established in the proposed development plan, (3) substantially change the nature of the proposed economic development project, (4) change the general description of any proposed developer, user or tenant of any property to be located or improved within the economic development project area, or (5) change the description of the type, class and number of employees to be employed in the operation of the facilities to be developed or improved within the economic development project area may be made without further hearing, provided that the municipality shall give notice of its changes by mail to the Department and to each affected taxing district and by publication in a newspaper or newspapers of general circulation within the affected taxing districts. Such notice by mail and by publication shall each occur not later than 10 days following the adoption by ordinance of such changes.

(e) At any time within 30 days of the final adjournment of the public hearing, a municipality may, by ordinance, approve the economic development plan, establish the economic development project area, and authorize tax increment allocation financing for such economic development project area. Any ordinance adopted which approves an economic development plan shall contain findings that the developer or any of its successor entities and its subsidiaries shall create or retain not less than 4,250 full-time equivalent jobs, that private investment in an amount not less than $100,000,000 shall occur in the economic development project area, that the economic development project will encourage the increase of commerce and industry within the State, thereby reducing the evils attendant upon unemployment and increasing opportunities for personal income, and that the economic development project will increase or maintain the property, sales and income tax bases of the municipality and of the State. Any ordinance adopted which establishes an economic development project area shall contain the boundaries of such area by legal description and, where possible, by street location. Any ordinance adopted which authorizes tax increment allocation financing shall provide that the ad valorem taxes, if any, arising from the levies upon taxable real property in such economic development project area by taxing districts and tax rates determined in the manner provided in subsection (b) of Section 6 of this Act each year after the effective date of the ordinance until economic development project costs and all municipal obligations financing economic development project costs incurred under this

Act have been paid shall be divided as follows:

(1) That portion of taxes levied upon each taxable lot, block, tract or parcel of real property which is attributable to the lower of the current equalized assessed value or the initial equalized assessed value of each such taxable lot, block, tract or parcel of real property in the economic development project area shall be allocated to and when collected shall be paid by the county collector to the respective affected taxing districts in the manner required by law in the absence of the adoption of tax increment allocation financing.

(2) That portion, if any, of such taxes which is attributable to the increase in the current equalized assessed valuation of each taxable lot, block, tract or parcel of real property in the economic development project area over and above the initial equalized assessed value of each property in the economic development project area shall be allocated to and when collected shall be paid to the municipal treasurer who shall deposit such taxes into a special fund called the special tax allocation fund of the municipality for the purpose of paying economic development project costs and obligations incurred in the payment thereof.

(f) After a municipality has by ordinance approved an economic development plan and established an economic development project area, the plan may be amended and the boundaries of the area may be altered only as herein provided. Amendments which (1) alter the exterior boundaries of an economic development project area, (2) substantially affect the general land uses established pursuant to the economic development plan, (3) substantially change the nature of the economic development project, (4) change the general description of any proposed developer, user, or tenant of any property to be located or improved within the economic development project area, or (5) change the description of the type, class and number of employees to be employed in the operation of the facilities to be developed or improved within the economic development project area, shall be made only after notice and hearing pursuant to the procedures set forth in this Section. Amendments which do not (1) alter the boundaries of the economic development project area, (2) substantially affect the general land uses established in the economic development plan, (3) substantially change the nature of the economic development project, (4) change the general description of any proposed developer, user, or tenant of any property to be located or improved within the economic development project area, or (5) change the description of the type, class and number of employees to be employed in the operation of the facilities to be developed or improved within the economic development project area may be made without further hearing, provided that the municipality shall give notice of any amendment by mail to the Department and to each taxing district and by publication in a newspaper or newspapers of general circulation within the affected taxing districts. Such notice by mail and by publication shall each occur not later than 10 days following the adoption by ordinance of any amendments.

(g) Extension of economic development project area; allocations; payment of outstanding claims; changes in equalized assessed valuation.

(1) Notwithstanding anything to the contrary set forth in this Act, upon the effective date of this amendatory Act of the 97th General Assembly, the duration of any existing economic development plan created pursuant to this Act is extended to the duration permitted under this subsection, up to a maximum duration of 15 years.

(2) For the purposes of this section, real estate taxes paid on property within the economic development project area during calendar year 2013 and remitted to the developer and the taxing districts in 2014 shall be the "base amount". Beginning with real estate taxes remitted in 2014, for any economic development plan extended by operation of item (1) of this subsection (g), until such time as all existing obligations, as that term is defined in item (5) of this subsection (g), have been satisfied, the allocation of the special tax allocation fund shall be as follows:

(A) All receipts up to the first $350,000 shall be maintained by the municipality in an escrow account to be used solely for (i) expenses relating to the reports required by Section 4.7 of this Act and (ii) legal expenses incurred in defense of any civil action brought against the municipality relating to the economic development agreement. The escrow account shall be within the scope of the annual audit provided in Section 4.7 of this Act. Each December 31 following a deposit into the escrow account, any unobligated balance in the escrow account shall be distributed to the taxing districts in the same manner and proportion as the most recent distribution by the county collector to the taxing districts in the economic development project area.

(B) After the allocation required pursuant to paragraph (A) of this item (2), the next $5,000,000 of the receipts shall be allocated to the municipality.

(C) After the allocations required pursuant to paragraphs (A) and (B) of this item (2), 55% of the remaining receipts shall be allocated to the developer.

(D) After the allocations required pursuant to parts (A) and (B) of this item (2), 45% of the remaining receipts shall be allocated to the taxing districts located within the economic development project area, excluding the municipality.

(3) For real estate taxes paid in 2012 and remitted to the developer and the taxing districts in 2013 and prior years, the allocation formula contained in any economic development plan in effect immediately prior to the effective date of this amendatory Act of the 97th General Assembly shall apply.

(4) Beginning with real estate taxes paid in 2014 and remitted to the developer and the taxing districts in 2015 and each year thereafter, if the taxes paid within the economic development project area change from the base amount, the allocation of the special tax allocation fund shall be as follows:

(A) If the amount of current year taxes paid is less than the base amount, then the administrative escrow account shall receive the first $350,000 of receipts, the municipality shall receive the next $5,000,000 of receipts, the developer shall receive 55% of receipts over $5,350,000, and the remaining 45% of receipts over $5,350,000 shall be distributed to the taxing districts (excluding the municipality) in the same manner and proportion as the most recent distribution by the county collector to those taxing districts in the economic development project area.

(B) If the amount of current year taxes paid is greater than the base amount, then 75% of the increase in real estate tax receipts shall be payable to the developer and the remaining 25% of the increase in real

estate tax receipts shall be distributed to the taxing
districts (including the municipality) pursuant to the
formula in this subsection.

(5) After (i) all existing obligations and interest
thereon have been satisfied, (ii) any excess moneys have
been distributed pursuant to this subsection, and (iii)
final closing of the books and records of the economic
development project area has occurred, the municipality
shall adopt an ordinance dissolving the special tax
allocation fund for the economic development project area
and terminating the designation of the economic development
project area as an economic development project area. All
excess moneys in the special tax allocation fund shall be
distributed to the taxing districts in the same manner and
proportion as the most recent distribution by the county
collector to those taxing districts in the economic
development project area. For the purpose of this
subsection (g), "existing obligations" means (i) the
obligations of the developer that existed before the base
year, as certified by a sworn affidavit of the principal
financial officer of the developer attesting that the
amounts set forth are true and correct, (ii) obligations of
the municipality relating to the payment of the obligations
of the developer, and (iii) any amounts payable by taxing
districts to the developer for property taxes determined to
have been overpaid, to the extent that those amounts
payable have been carried forward as an interest bearing
note due to the developer. All obligations of the developer
due and payable shall be processed and paid in the order
received, with the oldest notes to be processed and paid
first. Beginning January 1, 2012, all outstanding interest
bearing notes shall bear interest at the rate of 4% until
paid.

(h) Beginning on the effective date of this amendatory Act
of the 97th General Assembly, the taxing districts shall meet
annually 180 days after the close of the municipal fiscal year,
or as soon as the economic development project audit for that
fiscal year becomes available, to review the effectiveness and
status of the economic development project area up to that date.
(Source: P.A. 97-636, eff. 6-1-12.)

## Exhibit D

**Economic Development Area Tax Increment Allocation Act**

(35 ILCS 200/21-75)

Sec. 21-75. Lien for taxes. The taxes upon property, together with all penalties, interests and costs that may accrue thereon, shall be a prior and first lien on the property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied until the taxes are paid or until the property is sold under this Code.

(a) Foreclosure - Property forfeited for 2 or more years. A lien may be foreclosed, in the circuit court in the name of the People of the State of Illinois, whenever the taxes for 2 or more years on the same description of property have been forfeited to the State. The property may be sold under the order of the court by the person having authority to receive County taxes, with notice to interested parties and right of redemption from the sale, (except that the interest or any other amount to be paid upon redemption in addition to the amount for which the property was sold shall be as provided herein), as provided in Sections 21-345 through 21-365 and 21-380, and in conformity with Section 8 of Article IX of the Illinois Constitution.

In any action to foreclose the lien for delinquent taxes brought by the People of the State of Illinois when the taxes for 2 or more years on the same description of property have been forfeited to the State, service of process shall be made in the manner now prescribed by law. All owners, parties interested, and occupants of any property against which tax liens are sought to be foreclosed shall be named as parties defendant, and shall be served in the manner and form as provided by law for the service of defendants in foreclosures of lien or encumbrances upon real estate. In case there are other parties with ownership interests in the property, they shall be named in the notice under the designation "unknown owners".

(b) Redemption interest. The interest to be paid upon redemption from all tax foreclosure sales held under this Section shall be:

(1) If redeemed within 2 months from the date of the sale, 3% per month upon the amount for which the property was sold for each of the first 2 months, or fraction thereof;

(2) If redeemed between 2 and 6 months from the date of the sale, 12% of the amount of sale;

(3) If redeemed between 6 and 12 months from the date of the sale, 24% of the amount of sale;

(4) If redeemed between 12 and 18 months from the date of the sale, 36% of the amount of sale;

(5) If redeemed between 18 and 24 months from the date of the sale, 48% of the amount of sale;

(6) If redeemed after 24 months from the date of sale, the 48% for the 24 months plus interest at 6% per year thereafter.

(c) Enforcement of lien from rents and profits. A lien under this Section may be enforced at any time after 6 months from the day the tax becomes delinquent out of the rents and profits of the land accruing, or accrued and under the control or jurisdiction of a court. This process may be initiated by the county board of the county or by the corporate authorities of any taxing body entitled to receive any part of the delinquent tax, by petition in any pending suit having jurisdiction of the land, or in any application for judgment and order of sale of lands for delinquent taxes in which the land is included, in the name of the People of the State of Illinois.

The process, practice and procedure under this subsection shall be the same as provided in the Civil Practice Law and the

Supreme Court Rules adopted in relation to that Law, except that receivers may be appointed on not less than 3 days' written notice to owners of record or persons in possession. In all petitions the court shall have power to appoint the county collector to take possession of the property only for the purpose of collecting the rents, issues and profits therefrom, and to apply them in satisfaction of the tax lien. When the taxes set forth in the petition are paid in full, the receiver shall be discharged. If the taxes described in the petition are reduced by the final judgment of a court, the county collector shall immediately refund all moneys collected by him or her as receiver over and above the taxes as reduced, and shall deduct that amount from the moneys thereafter distributed to the taxing bodies which received the tax revenue.

In proceedings to foreclose the tax lien, or in petitions to enforce the lien, the amount due on the collector's books against the property shall be prima facie evidence of the amount of taxes against the property. When any taxes are collected, they shall be paid to the county collector, to be distributed by him or her to the authorities entitled to them. All sales made under this Section shall be conducted under the order and supervision of the court by the county collector.

An action to foreclose the lien for delinquent taxes under this Code is an action in rem.
(Source: P.A. 84-551; 88-455.)