Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 18-23538-rdd
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
5  In the Matter of:
6
7  SEARS HOLDINGS CORPORATION,
8
9           Debtor.
10 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
11
12              United States Bankruptcy Court
13              300 Quarropas Street, Room 248
14              White Plains, NY 10601
15
16              November 19, 2018
17              1:08 PM
18
19
20
21 B E F O R E :
22 HON ROBERT D. DRAIN
23 U.S. BANKRUPTCY JUDGE
24
25 ECRO:   UNKNOWN

Page 2

1  HEARING re Notice of Continuation of Hearing on Emergency
2  Motion of Debtors for Order Approving Sale of Medium Term
3  Notes (related document(s)642)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for the Debtors

 5        767 5th Avenue

 6        New York, NY 10153

 7

 8   BY:  JACQUELINE MARCUS

 9        RAY C. SCHROCK

10

11   AKIN GUMP STRAUSS HAUER & FELD LLP

12        Attorneys for the Creditors Committee

13        One Bryant Park

14        Bank of America Tower

15        New York, NY 10036

16

17   BY:  PHILIP C. DUBLIN

18

19   MILBANK, TWEED, HADLEY & MCCLOY LLP

20        Attorneys for Cyrus Capital Management

21        28 Liberty Street

22        New York, NY  10005

23

24   BY:  THOMAS R. KRELLER

25
```

```
 1                  P R O C E E D I N G S
 2            THE COURT:  Good afternoon.  This is in re Sears
 3   Holding Corporation, et al.  I had scheduled a 1:00 hearing
 4   on the Debtor's motion for authority to sell certain medium-
 5   term notes.  I had a very brief conference with the parties
 6   to that motion as well as the creditor's committee.  And
 7   they had each requested that I put off this hearing at least
 8   for a couple of hours until three P.M. today for various
 9   reasons.  So that's what I'm doing.  I'm going to adjourn
10   today's hearing until three P.M.  For those of you on the
11   phone, I guess you can dial back in then.  For those of you
12   in the courtroom, you can try some of the fine cuisine of
13   White Plains and come back at three if you want.
14            MR. DUBLIN:  Thank you, Your Honor.
15            THE COURT:  Okay, thank you.
16       (Recess)
17            THE COURT:  Okay, good afternoon.  We're back on
18   the record in re Sears Holdings Corporation.
19            MS. MARCUS: Good afternoon, Your Honor.
20   Jacqueline Marcus, Weil, Gotschal & Manges on behalf of
21   Sears Holdings Corporation and its affiliated debtors.  With
22   me in court -- I was going to say this morning -- this
23   evening are my partner, Ray Schrock, and my colleague,
24   Jessie Mishkin.
25            THE COURT:  Okay, good afternoon.
```

1            MS. MARCUS:  I'm happy to report, Your Honor, that
2     after a lot of arduous discussion since our hearing on
3     Thursday, we now have resolution of the Debtor's motion for
4     authority to sell the medium-term notes.  Based on some
5     proposed modifications to the order, which I'd like to hand
6     up in a moment, Cyrus has indicated that it will withdraw
7     the objection.  And therefore the motion is unopposed and we
8     would ask that the Court grant the motion.
9            I do want to note on the record, because it's
10    referenced in the proposed order and I don't remember if we
11    mentioned it on Thursday, that Jefferies had agreed to
12    reduce its fees from two percent of the proceeds to 1.75
13    percent of the proceeds.  And that's important for purposes
14    of the order.  But if I may approach?
15           THE COURT:  Okay, yes.  You could hand that up.
16           MS. MARCUS:  Your Honor, the form of the order
17    that you have in front of you isn't actually the order that
18    we'd like to hand up.  Because when Cyrus made its post
19    changes to the order, they didn't work from the revised
20    order that we had filed subsequent to filing the motion.  So
21    with your permission at the conclusion of the hearing what
22    we'd like to do is incorporate these comments into the right
23    version of the motion -- of the order, excuse me, and ask
24    the Court to enter that version.  But I thought it would be
25    helpful to walk through the proposed changes and see if the

Page 6

```
 1   Court had any questions.
 2             So the first change is on Page 2 of the proposed
 3   order.  And it references the withdrawal of the objection of
 4   Cyrus Capital Partners to the motion based on the negotiated
 5   provisions of the proposed order.
 6             THE COURT:  Right.
 7             MS. MARCUS:  At the end of Paragraph two there is
 8   a provision that has a proviso.  After the Court authorizes
 9   the Debtors to sell the medium-term notes, the proviso says,
10   "Provided that such authorization to sell the MTNs shall
11   terminate -- " and Cyrus has asked for a change from the
12   version that you have, " -- at the close of one business day
13   following the date of the auction and any further
14   authorization to sell all or any of the MTNs will be subject
15   to Court approval."
16             THE COURT:  Okay.  And that timing works with the
17   auction?
18             MS. MARCUS:  Yes, it does.
19             THE COURT:  It has to get sold at the auction?
20             MS. MARCUS:  Yes, it does, Your Honor.  And Cyrus
21   has confirmed, and I'm sure Counsel will confirm if
22   necessary, that the definition of the auction is the auction
23   whenever it happens, be it November 26th or December 7th or
24   whatever date that happens.
25             THE COURT:  Okay.
```

1    MS. MARCUS:  In Paragraph three, that's the

2 paragraph that references the true-up.

3    THE COURT:  Right.

4    MS. MARCUS:  And the request is that the order be

5 revised to provide that the true-up mechanism will be

6 subject to the approval of the bankruptcy court.

7    THE COURT:  And you have other language --

8    MS. MARCUS:  That's correct.

9    THE COURT:  -- that you already proposed that

10 involved more parties in coming up with the true-up.

11    MS. MARCUS:  That's correct. That's one of the

12 places, Your Honor, where we'll incorporate that into the

13 new version.

14    THE COURT:  Okay. And I mean, I'm referring to the

15 language that is in my binder, blacklined.

16    MS. MARCUS:  Okay, we'll do that.

17    THE COURT:  Okay.

18    MS. MARCUS:  In Paragraph five, not indicated on

19 your version, but a clarification requested by the

20 creditor's committee is at the very beginning.  So it will

21 read, "Pursuant to Section 363(f) of the Bankruptcy Code,

22 the MTNs shall be sold by the applicable debtors free and

23 clear." And then the rest continues.  And then there's the

24 proviso at the end which says, "Provided, however, that the

25 MTNs are not being sold free and clear of any liens or

1  claims, including without limitation to any counsel claim,
2  defense, or right of set-off held or that may be asserted by
3  SRAC or its estate, and nothing in this order shall impair
4  or prejudice in any way any rights, claims, or defenses that
5  SRAC or its estate may have in connection with the MTNs."
6       THE COURT:  Okay.  I appreciate this has been
7  negotiated, but shouldn't this be provided -- shouldn't this
8  say provided, however, that the MTNs are not being sold free
9  and clear of any liens or claims constituting any
10 counterclaim defense or right of setoff held or that may be
11 asserted by SRAC or any liens or claims of SRAC?
12      MS. MARCUS:  That's exactly the intent, Your
13 Honor.
14      THE COURT:  So any liens or claims of SRAC.  That
15 should be added then, of SRAC.
16      MS. MARCUS:  Okay. So if we put of SRAC and we
17 leave the rest of the language.
18      THE COURT:  Because I mean, I don't know if the
19 DIP lenders have a lien, for example, on the notes.  But it
20 would be free and clear of that.
21      MS. MARCUS:  That was exactly what we were trying
22 to pick up there, Your Honor.
23      THE COURT:  Okay.
24      MS. MARCUS:  In Paragraph six on the carryover
25 page on top of Page 4.  Provided however -- and this was a

1    change.  But one of these changes actually is not going to
2    be put in the order.  The beginning says, "Provided however
3    that notwithstanding the foregoing, the MTNs are not being
4    sold free and clear of any liens, claims, or encumbrances."
5    We'll put the same thing, of SRAC, there.
6             THE COURT:  Right.
7             MS. MARCUS:  And the deletion was something that
8    the creditor's committee objected to.  And Cyrus has agreed
9    not to delete the language that preserves the rights with
10   respect to inappropriate conduct.  So in the order that we
11   submit to you, that language will be there.
12            THE COURT:  The language that's crossed out here.
13            MS. MARCUS:  Correct.
14            THE COURT:  Okay.
15            MS. MARCUS:  And that's it in terms of the order,
16   Your Honor.
17            THE COURT:  Doesn't this language --
18            MS. MARCUS:  It's the same language.
19            THE COURT:  It's the same language.  Okay, all
20   right.
21            MS. MARCUS:  I'm not quite sure why it's there
22   twice.
23            THE COURT:  Two belts and two suspenders, okay.
24            MS. MARCUS:  It wasn't worth fighting that one.
25            THE COURT:  All right, okay.

1          MS. MARCUS:  And Your Honor, with that, if the
2     Court grants the order, as we hope you will today, we intend
3     to conduct the auction tomorrow probably starting at about
4     noon.  And hopefully we'll have some good news to report the
5     next time we're before you.
6          THE COURT:  Okay.  The only question I have, I
7     just want to confirm that SREC really just holds the
8     intercompany claims.  Does it have other significant assets?
9          MS. MARCUS:  It does not, Your Honor.
10         THE COURT:  So the true-up mechanism is really
11    just the type of intercompany claim analysis for --
12         MS. MARCUS:  That's correct, Your Honor.
13         THE COURT:  -- people go through in Chapter 11
14    cases all the time, and it will reflect he actual value of
15    the intercompany claims.
16         MS. MARCUS:  That's correct, Your Honor.
17         THE COURT:  Which may be nothing when you get down
18    to it.
19         MR. DUBLIN:  Your Honor, Phil Dublin, Akin Gump.
20    We're post counsel to the creditor's committee.  We're still
21    evaluating what assets are owned by each individual debtor
22    entity.  So it's possible we have a disagreement as to what
23    SRAC ultimately owns and a true-up mechanism would work.
24    But that should not impact approval of the motion today.
25         THE COURT:  Okay.  But it's not a -- it doesn't --

1    as far as we know it's not a crown-jewel asset that holds,

2    you know, patents and lots of leases and things like that.

3              MR. DUBLIN:  That's correct.

4              THE COURT:  Okay.

5              MR. SCHROCK:  That's -- Your Honor, Ray Schrock.

6    In fact it's a -- you know, was a financing subsidiary.  And

7    notably it's one of the debtors that's liable on nearly all

8    of the debt within the capital structure.

9              THE COURT:  Okay.  All right.  Does anyone have

10   anything further to say on this motion as modified?

11             MR. KRELLER:  Your Honor, just for the record.

12   Thomas Kreller, Milbank, Tweed, Hadley & McCloy on behalf of

13   Cyrus Capital Partners.  Your honor, with the negotiated

14   language, I would confirm, and Debtor's Counsel has

15   accurately articulated all of the various changes that we've

16   talked about and agreed to.  And with those changes, we

17   would withdraw our objection.

18             THE COURT:  Okay.

19             MR. KRELLER:  Not to be argumentative, I think the

20   intercompany claim held by SRAC, while it is -- we would

21   agree that it is an intercompany claim, it's significant in

22   amount.

23             THE COURT:  No, I'm not talking -- when I asked my

24   question, I was focusing on things other than intercompany

25   claim, financial --

Page 12

1         MR. KRELLER: Understood, Your Honor. I just
2    wanted to make --
3         THE COURT: I was focusing on, you know, other
4    types of assets.
5         MR. KRELLER: Understood. It's our position, Your
6    Honor, that is a very material asset.
7         THE COURT: It may. It may be.
8         MR. KRELLER: But we don't need to decide that --
9         THE COURT: Ultimately it's a claim or claims.
10        MR. KRELLER: Thank you, Your Honor.
11        THE COURT: Okay, all right. I will grant the
12   motion as modified. Just to be clear, the language added
13   that it's not free and clear of SRAC's rights. I believe
14   it's consistent with applicable law, including the New York
15   General Obligations Law and what a buyer of a claim gets.
16   So for the reasons stated in the motion, this appears to be
17   an opportunity that is time-sensitive. Although not as
18   time-sensitive as it originally was, it still is time-
19   sensitive for the debtors who own these notes to realize
20   more value than they probably would otherwise realize on
21   them by taking advantage of the pending auction.
22        I think to be safe and consistent with what one
23   might derive from the AMR case and discussion of it
24   (indiscernible) and the language in the indentures that says
25   that while held by affiliates there is no distribution on

1  the notes.  This order should also consensually lift the

2  automatic stay to let the notes be sold.  That would be

3  applicable in SRAC's case under 362(d)(1).

4          MS. MARCUS:  Thank you, Your Honor.

5          THE COURT:  I'm not sure ultimately whether that's

6  necessary, but there's an argument that could be made that

7  it is necessary because it would turn arguably a claim that

8  would not get any distribution into a claim that would at

9  least have a right to a distribution if the value is there

10 at the end of the day.

11         So I'll look for that order.  The record's clear

12 though as to what it should contain based on the hearing

13 today and the blackline that I've previously been given.  So

14 you could get Jefferies working on their marketing.

15         Although one other comment, I'm sorry.  The order

16 just refers to Jefferies' commission. You may want to say

17 1.75 percent commission just so that we don't forget that.

18         MS. MARCUS:  Your Honor, if we may use the

19 conference room for a little while --

20         THE COURT:  Sure.

21         MS. MARCUS:  -- I think we can get the order

22 revised and submitted in short order.

23         THE COURT:  That's fine.  Thank you.

24         MS. MARCUS:  Thank you.

25     (Whereupon these proceedings were concluded at 3:44 PM)

1                            I N D E X

2

3                            RULINGS

4                                                Page      Line

5

6   Debtor's motion for authority to sell

7   the medium-term notes granted                 12        12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 15

1                  C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

...

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  November 20, 2018