UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                              :
                                                   :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*          :
                                                   :        **Case No. 18-23538 (RDD)**
                                                   :
            Debtors. [1]                            :        **(Jointly Administered)**
------------------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Sears Holdings Corporation ("Holdings") and

its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases") pending in the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking entry

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

of an interim order (the "<u>Interim Order</u>") and a final order (this "<u>Final Order</u>" and, together with the Interim Order, the "<u>DIP Orders</u>") providing for, among other things, the following relief:

(i)   authorizing Sears Roebuck Acceptance Corp., a Delaware corporation, ("<u>SRAC</u>"), and Kmart Corporation, a Michigan corporation ("<u>Kmart</u>", and together with SRAC, the "<u>DIP ABL Borrowers</u>") to borrow, and each of the other Loan Parties (as defined in the DIP ABL Credit Agreement), to guarantee (in such capacity and together the with the DIP ABL Borrowers, the "<u>DIP ABL Loan Parties</u>"), a senior secured superpriority priming non-amortizing debtor-in-possession asset-based credit facility (the "<u>DIP ABL Facility</u>"), in an aggregate principal amount of up to $1,830,378,380 on the terms and conditions set forth, initially, in the DIP ABL Term Sheet, an execution copy of which is attached to the Motion as <u>Exhibit B</u> (including any subsequent amendments thereto, the "<u>DIP ABL Term Sheet</u>") and, from and after the Final Closing Date (as defined in the DIP ABL Term Sheet), the Superpriority Senior Secured Debtor-In-Possession Asset-Based Credit Agreement (the "<u>DIP ABL Credit Agreement</u>"), among the Debtors, Bank of America, N.A., as administrative agent (in such capacity, the "<u>DIP ABL Administrative Agent</u>"), Bank of America, N.A. and Wells Fargo Bank, National Association, each as a co-collateral agent (each in such capacity, a "<u>DIP ABL Co-Collateral Agent</u>", and together with the DIP ABL Administrative Agent, the "<u>DIP ABL Agents</u>"), the revolving lenders from time to time party thereto (the "<u>DIP ABL Revolving Lenders</u>"), and the term lenders from time to time party thereto (the "<u>DIP ABL Term Lenders</u>", and together with the DIP ABL Revolving Lenders, the "<u>DIP ABL Lenders</u>" and, together with the DIP ABL Agents and the DIP ABL Cash Management/Bank Product Providers, the "<u>DIP ABL Credit Parties</u>") attached hereto as <u>Exhibit A</u>, allocated and made available to the DIP ABL Borrowers as follows:

(a)   upon entry of the Interim Order, subject to the terms and conditions set forth in the DIP ABL Term Sheet and the Interim Order, (x) an asset-based revolving credit facility with aggregate initial commitments of $188,110,759 (such commitments, the "<u>Incremental DIP ABL Revolving Commitments,</u>" the advances made pursuant thereto, the "<u>Incremental DIP ABL Revolving Advances</u>," and such facility, the "<u>Incremental DIP ABL Revolver</u>"), including (i) a $50 million letter of credit subfacility made available upon entry of the Interim Order (the "<u>Incremental DIP ABL L/C Subfacility</u>"), and (ii) a $25 million discretionary swingline subfacility (the "<u>Incremental DIP ABL Swingline Subfacility</u>", the Incremental DIP ABL Revolving Advances, together with the obligations under the Incremental DIP ABL L/C Subfacility and the Incremental DIP ABL Swingline Subfacility, the "<u>Incremental DIP ABL Revolving Extensions of Credit</u>"), and (y) an asset-based term loan facility in an aggregate initial principal amount of $111,889,241 (the "<u>Incremental DIP ABL Term Loan</u>", and together with the Incremental DIP ABL Revolving Extensions of Credit", the "<u>Incremental DIP ABL Obligations</u>");

2

(b)    upon entry of this Final Order, subject to the terms and conditions set forth in the DIP ABL Credit Agreement, the DIP ABL Loan Documents (as defined below), and this Final Order, a roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit (as defined below) beneficially owned by the DIP ABL Revolving Lenders that have agreed to participate in the Incremental DIP ABL Revolver (together with their permitted assignees, the "Roll Up DIP ABL Revolving Lenders"), at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Revolving Extensions of Credit", and together with the Incremental DIP ABL Revolving Extensions of Credit, the "DIP ABL Revolving Extensions of Credit"; and such loans, the "Roll Up DIP ABL Revolving Advances", and together with the Incremental DIP ABL Revolving Advances, the "DIP ABL Revolving Advances", the commitments to make such DIP ABL Revolving Advances, the "DIP ABL Revolving Commitments"), which, with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations shall roll into a letter of credit subfacility (the Incremental DIP ABL L/C Subfacility, together with such rolled up participations, the "DIP ABL L/C Subfacility") and any prepetition letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (ii) all of the Prepetition ABL Term Loans (as defined below) beneficially owned by (a) the DIP ABL Term Lenders that have agreed to participate in the Incremental DIP ABL Term Loan and make such loan on the Effective Date (as defined in the DIP ABL Credit Agreement) and (b) the Sears Holdings Pension Trust (together with their permitted assignees, the "Roll Up DIP ABL Term Lenders", and together with the Roll Up DIP ABL Revolving Lenders, the "Roll Up DIP ABL Lenders"), in each case, at 11:59 p.m. (prevailing Eastern time) on November 5, 2018 (the "Roll Up DIP ABL Term Loans", and together with the Incremental DIP ABL Term Loan, the "DIP ABL Term Loans" and the Roll Up DIP ABL Term Loans together with the Roll Up DIP ABL Revolving Extensions of Credit, the "Roll Up DIP ABL Obligations," and such transactions, the "ABL Roll Up"), and (iii) bank products (other than those under the Prepetition LC Facility Agreement (as defined below)) and cash management obligations entered into with any Prepetition ABL Cash Management/Bank Product Provider (as defined below) (the "Roll Up DIP ABL Cash Management/Bank Product Obligations") outstanding under the Prepetition ABL Credit Agreement (the Roll Up DIP ABL Cash Management/Bank Product Obligations, collectively with Bank Products (as defined in the DIP ABL Credit Agreement) and Cash Management Obligations (as defined in the DIP ABL Credit Agreement, the "DIP ABL Cash Management/Bank Product Obligations") entered into with any DIP ABL Lender, any DIP ABL Agent or any of their respective affiliates as of the Petition Date or at the time of entering into such arrangements (each, a "DIP ABL Cash Management/Bank Product Provider"), the Roll Up DIP ABL Obligations, the Incremental DIP ABL Obligations, the DIP ABL

3

Cash Management/Bank Product Obligations and all other obligations under the DIP ABL Loan Documents, the "DIP ABL Secured Obligations");

(ii)     authorizing the DIP ABL Loan Parties to execute, deliver and abide by (w) the DIP ABL Term Sheet pending entry of this Final Order, (x) the DIP ABL Credit Agreement upon entry of this Final Order, (y) the DIP Intercreditor Agreement (as defined below), and (z) any other agreements, instruments, pledge agreements, guarantees, control agreements and other loan documents related to any of the foregoing (including any security agreements, intellectual property security agreements, notes, blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements, and all Uniform Commercial Code filings and all filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors) (each of the foregoing, as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP ABL Term Sheet (prior to the date of the Final Order) and the DIP ABL Credit Agreement (after entry of this Final Order), the "DIP ABL Loan Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Loan Documents;

(iii)    authorizing the DIP ABL Administrative Agent to terminate any of its obligations under the DIP ABL Loan Documents upon the occurrence and continuance of a Termination Event (as defined below), which includes an Event of Default (as defined in the DIP ABL Loan Documents);

(iv)    as collateral security for all DIP ABL Secured Obligations, granting to the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all DIP ABL Credit Parties, in accordance with the relative priorities set forth in the DIP Orders and in that certain DIP Intercreditor Agreement (the "DIP Intercreditor Agreement"), by and among the DIP ABL Agents and the Junior DIP Agent (as defined below), and in each case subject to the Carve-Out (as defined below):

(a)     pursuant to sections 364(c)(1), 503(b), and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), joint and several superpriority allowed administrative priority expense claims in each of the DIP ABL Loan Parties' Chapter 11 Cases and any Successor Cases (as defined below); *provided*, *however*, that such claims shall be of equal priority to the Junior DIP Superpriority Claims granted to the Junior DIP Agent under the Junior DIP Order;

(b)     pursuant to section 364(c)(2) of the Bankruptcy Code, an automatically perfected first priority security interest in and lien on all property of the DIP ABL Loan Parties' estates (including proceeds thereof) that is not

4

subject to a valid and perfected lien on the Petition Date and, upon entry of this Final Order, the Avoidance Action Proceeds (as defined below), subject to Senior Permitted Liens (as defined below);

(c)     pursuant to section 364(c)(3) of the Bankruptcy Code, an automatically perfected junior security interest in and lien on all property (including all proceeds thereof) of the DIP ABL Loan Parties' estates (other than Prepetition ABL Collateral (as defined below)) that is subject to valid and perfected security interests in and liens on in favor of third parties existing on the Petition Date (as defined below), subject to (i) such valid and perfected security interests in and liens on such property in favor of such third parties as of the Petition Date, and (ii) Senior Permitted Liens (as defined below); and

(d)     pursuant to section 364(d) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Prepetition ABL Collateral, subject only to any "Senior Permitted Liens" (as defined in the DIP ABL Credit Agreement) (the "<u>Senior Permitted Liens</u>");

(v)     authorizing and directing the DIP ABL Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP ABL Loan Documents as they are earned, due and payable in accordance with the terms of the DIP ABL Loan Documents and the DIP Orders;

(vi)    authorizing the DIP ABL Loan Parties, solely in accordance with the Approved Budget (as defined below), the DIP ABL Loan Documents and the DIP Orders, to use the Prepetition ABL Collateral, including "Cash Collateral" (as defined in section 363 of the Bankruptcy Code) of the Prepetition Credit Parties;

(vii)   granting adequate protection to the Prepetition Credit Parties (as defined below) for any diminution in value resulting from the imposition of the automatic stay, the DIP ABL Loan Parties' use, sale, or lease of the Prepetition Collateral and the priming of their respective liens and interests in the Prepetition Collateral (including by the Carve-Out);

(viii)  solely upon entry of this Final Order, the waiver by the DIP ABL Loan Parties of (a) any right to surcharge the DIP ABL Collateral and the Prepetition ABL Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) any rights under the "equities of the case" exception in section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and Prepetition ABL Collateral;

(ix)    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Orders and the DIP ABL Loan Documents; and

(x)     pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), requesting an initial hearing on the Motion be held before the Bankruptcy Court to consider entry of

the Interim Order (the "<u>Interim Hearing</u>") to authorize on an interim basis (a) borrowing under the DIP ABL Loan Documents in an aggregate amount of up to $300 million and (b) the use of the Prepetition ABL Collateral, including Cash Collateral in accordance with the Approved Budget; and

(xi)    scheduling a final hearing (the "<u>Final Hearing</u>") to approve the Motion and consider entry of the Final Order.

The Interim Hearing having been held before the Bankruptcy Court on October 15, 2018 and the Final Hearing having been held before the Bankruptcy Court on November 27, 2018, each pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and upon the record made by the DIP ABL Loan Parties at the Interim Hearing and the Final Hearing and the representations made thereat; and after due deliberation and consideration and sufficient cause appearing therefor:

### THE BANKRUPTCY COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]

A.    *Petition Date*.  On October 15, 2018 (the "<u>Petition Date</u>"), each of the Debtors except for SHC Licensed Business LLC and SHC Promotions LLC  filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On October 18, 2018, SHC Licensed Business LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  On October 22, 2018, SHC Promotions LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.    *Joint Administration*.  On the Petition Date, the Bankruptcy Court entered an order approving the joint administration of the Chapter 11 Cases. On November 6, 2018, the Bankruptcy Court entered an order approving the joint administration of the chapter 11 cases of

---

[2]    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

SHC Licensed Business LLC and SHC Promotions LLC with the other Debtors' chapter 11 cases.

C.      ***Debtors in Possession***.    The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

D.      ***Official Committees***.    No trustee or examiner has been appointed in these Chapter 11 Cases as of the date of this Final Order.   The Official Committee of Unsecured Creditors (the "Creditors' Committee") was appointed in these Chapter 11 Cases on October 24, 2018 [Docket No. 276].

E.      ***Jurisdiction and Venue***.    The Bankruptcy Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.   Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.   The predicates for the relief set forth herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d), 364(e), 503, 506 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

F.      ***Notice***.    Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of the Interim Order or this Final Order shall be required.

G.      ***Junior DIP Facility***.    Substantially concurrently herewith, the Bankruptcy Court entered the *Interim Junior DIP Order (I) Authorizing The Debtors To (A) Obtain Post-Petition*

7

*Financing And (B) Grant Secured Priming Liens And Superpriority Administrative Expense Claims; (II) Modifying The Automatic Stay; (III) Scheduling Final Hearing; And (IV) Granting Related Relief* (the "<u>Interim Junior DIP Order</u>," and any order approving the Debtors' entry into the Junior DIP Facility on a final basis, the "<u>Final Junior DIP Order</u>," and together with the Interim Junior DIP Order, the "<u>Junior DIP Order</u>"). Pursuant to the Interim Junior DIP Order, the DIP ABL Loan Parties have been authorized, on an interim basis, to enter into Junior DIP Credit Agreement (as defined in the Interim Junior DIP Order, the "<u>Junior DIP Credit Agreement</u>," and such credit facility, the "<u>Junior DIP Facility</u>"), among the Junior DIP Loan Parties (as defined in the Interim Junior DIP Order, the "<u>Junior DIP Loan Parties</u>"), the Junior DIP Lenders (as defined in the Interim Junior DIP Order, the "<u>Junior DIP Lenders</u>") and Cantor Fitzgerald Securities, as administrative agent (as defined in the Interim Junior DIP Order, the "<u>Junior DIP Agent</u>" and together with the Junior DIP Lenders and the other "Credit Parties" as defined in the Junior DIP Credit Agreement, the "<u>Junior DIP Credit Parties</u>"). Pursuant to the Junior DIP Credit Agreement and the other "Loan Documents" (as defined in the Junior DIP Credit Agreement, the "<u>Junior DIP Loan Documents</u>"), in respect of the "Obligations" (as defined in the Junior DIP Credit Agreement, the "<u>Junior DIP Secured Obligations</u>"), the Junior DIP Loan Parties will grant to the Junior DIP Credit Parties certain superpriority claims (the "<u>Junior DIP Superpriority Claims</u>") and liens (the "<u>Junior DIP Liens</u>") as described in the Interim Junior DIP Order, subject in all respects to this Final Order.

     **H.** *Debtors' Stipulations*. After consultation with their attorneys and financial advisors, the Debtors, on their behalf and on behalf of their estates, admit, acknowledge, agree, and stipulate to the following (collectively, the "<u>Debtors' Stipulations</u>"), subject to the provisions of paragraphs 41 and 42 and subsection (g) below:

8

a.    ***Prepetition ABL Credit Facilities***.    Pursuant to the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition ABL Credit Agreement</u>" and, together with all Loan Documents (as defined in the Prepetition ABL Credit Agreement), each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition ABL Loan Documents</u>"), by and among (i) SRAC and Kmart, as borrowers (the "<u>Prepetition ABL Borrowers</u>"), (ii) Holdings, as a guarantor (Holdings, together with the "Subsidiary Guarantors" (as defined in the Prepetition ABL Credit Agreement), the "<u>Prepetition ABL Guarantors</u>" and, together with the Prepetition ABL Borrowers, the "<u>Prepetition ABL Loan Parties</u>"), (iii) the banks, financial institutions and other institutional lenders from time to time party thereto, as lenders (collectively, the "<u>Prepetition ABL Lenders</u>"), (iv) the "Issuing Lenders" (as defined in the Prepetition ABL Credit Agreement) from time to time party thereto (the "<u>Prepetition ABL Issuing Lenders</u>"), (v) Bank of America, N.A., as administrative agent (in such capacity, the "<u>Prepetition ABL Administrative Agent</u>"), as a co-collateral agent, and as swingline lender, (vi) Wells Fargo Bank, National Association, as a co-collateral agent (in such capacity, together with Bank of America, N.A. in such capacity, the "<u>Prepetition ABL Co-Collateral Agents</u>", and together with the Prepetition ABL Administrative Agent, the "<u>Prepetition ABL Agents</u>", and the Prepetition ABL Agents together with the Prepetition ABL Lenders, the swingline lender the Prepetition ABL Issuing Lenders, and the Prepetition ABL Cash Management/Bank Product Providers (as defined below) and the Prepetition LC Facility Credit Parties (as defined below), the "<u>Prepetition ABL Credit Parties</u>"), and (vii) the other parties from time to time party thereto, the Prepetition ABL Credit Parties provided the Prepetition ABL Loan Parties with a $1.5 billion

asset-based revolving credit facility including a $1.0 billion letter of credit subfacility (the "Prepetition ABL Revolving Facility"), a term loan facility in an aggregate original principal amount of $1 billion (the "Prepetition ABL Term Loan Facility"), a term loan facility in an aggregate original principal amount of $750 million (the "Prepetition ABL 2016 Term Loan Facility"), and a "first-in, last-out" facility in an aggregate original principal amount of $125 million (the "Prepetition ABL 2018 FILO Facility," and the lenders under the Prepetition ABL 2018 FILO Facility, the "2018 FILO Lenders," and the Prepetition ABL 2018 FILO Facility, together with the Prepetition ABL Revolving Facility, the Prepetition ABL Term Loan Facility, and the Prepetition ABL 2016 Term Loan Facility, the "Prepetition ABL Facilities").

b.      ***Prepetition ABL Obligations.***    As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facilities was $1,530,378,380, comprised of (i) $836,034,649 outstanding amount of all Advances, including Swingline Advances under, and each as defined in, the Prepetition ABL Revolving Facility (the "Prepetition ABL Revolving Advances"); (ii) $123,567,481 outstanding amount of all L/C Obligations under, and as defined in, the Prepetition ABL Revolving Facility (together with the Prepetition ABL Revolving Advances, the "Prepetition ABL Revolving Extensions of Credit"); (iii) $0 outstanding principal amount of term loans under the Prepetition ABL Term Loan Facility; (iv) $570,776,250 outstanding principal amount of term loans under the Prepetition ABL 2016 Term Loan Facility (the "Prepetition ABL Term Loans"); and (v) $125,000,000 outstanding principal amount of the Prepetition ABL 2018 FILO Facility; and together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification

10

obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Loan Documents, cash management services and bank products (the "<u>Prepetition ABL Cash Management/Bank Product Obligations</u>") entered into with any Prepetition ABL Lender, any Prepetition ABL Agent or any of their respective affiliates (each, a "<u>Prepetition ABL Cash Management/Bank Product Provider</u>"), including all obligations under that certain Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition LC Facility Agreement</u>" and which constitutes a Prepetition ABL Loan Document), among Holdings, the Prepetition ABL Borrowers, JPP, LLC, JPP II, LLC, Crescent 1, L.P., Canary SC Fund, L.P., CYR Fund, L.P., CMH VI, L.P., and Cyrus Heartland, L.P., as L/C lenders (the "<u>Prepetition LC Lenders</u>"), and Citibank, N.A., as administrative agent and as issuing bank (in such capacity, the "<u>Prepetition LC Facility Administrative Agent</u>," and together with the Prepetition LC Lenders, the "<u>Prepetition LC Facility Credit Parties</u>"), under which, as of the Petition Date, $271 million of letters of credit are outstanding thereunder, and which obligations constitute Bank Products and an "Other LC Facility" under and as defined in the Prepetition ABL Credit Agreement, and including all "Obligations" as defined in the Prepetition ABL Credit Agreement, and all other amounts that may become allowed or allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, (the "<u>Prepetition ABL Obligations</u>").

c.      ***Prepetition ABL Liens and Prepetition ABL Collateral.***  Pursuant to the Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Loan Documents, each of the Prepetition ABL Guarantors unconditionally guaranteed, on a joint and several basis, the punctual and complete performance, payment and satisfaction when due and at all times thereafter of all of the Prepetition ABL Obligations.  Pursuant to the Prepetition ABL Credit Agreement and the other applicable Prepetition ABL Loan Documents, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to Bank of America, N. A., in its capacity as a Prepetition ABL Co-Collateral Agent and as agent for the other Prepetition ABL Co-Collateral Agent (in such capacity, the "Prepetition ABL Control Co-Collateral Agent"), for the benefit of itself and all of the other Prepetition ABL Credit Parties, a first priority security interest in and continuing lien on (the "Prepetition ABL Liens") all of the collateral identified in the Prepetition ABL Loan Documents, including, but not limited to, inventory, credit card accounts receivables, pharmacy receivables, prescription lists, deposit accounts, cash and cash equivalents, and proceeds, insurance claims and supporting obligations of the foregoing, together with Cash Collateral, in all cases whether then owned or existing or thereafter acquired (including any such property acquired after the Petition Date) and wherever located (but excluding, for the avoidance of doubt, any Cash Collateral posted to the Prepetition LC Facility Administrative Agent, in its capacity as issuing bank, by the Prepetition LC Lenders under the Prepetition LC Facility Agreement) (collectively, the "Prepetition ABL Collateral").

d.      ***Agreement Among Lenders.***  JPP, LLC, JPP II, LLC, GACP II, L.P., and Benefit Street 2018 LLC, as 2018 FILO lenders, ESL Investments, Inc., Wells Fargo Bank, National Association, as a Prepetition ABL Co-Collateral agent, and Bank of America, N.A., as Prepetition ABL Administrative Agent and as a Prepetition ABL Co-Collateral Agent, entered

12

into an Agreement Among Lenders, dated as of March 21, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Agreement Among Lenders").

        e.      ***Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations***.  The Debtors hereby further acknowledge and agree that as of the Petition Date:

    (i)    The Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the Prepetition ABL Loan Documents;

    (ii)    The Prepetition ABL Liens on the Prepetition ABL Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to the Prepetition ABL Control Co-Collateral Agent, for the benefit of itself and all of the other Prepetition ABL Credit Parties for fair consideration and reasonably equivalent value;

    (iii)    The Prepetition ABL Liens are senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens senior by operation of law or otherwise permitted to be senior under the Prepetition ABL Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date) (the "Permitted Prior Liens");

    (iv)    No portion of the Prepetition ABL Liens, the Prepetition ABL Obligations or any payments made to any Prepetition ABL Credit Party or applied to or paid on account of the Prepetition ABL Obligations prior to the Petition Date is subject to any contest, set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), recoupment, recovery, rejection, attack, effect, counterclaims, cross-claims, defenses, or any other challenge or claim (as defined in the Bankruptcy Code) of any kind, any cause of action or any other challenge of any nature under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation or otherwise by any person or entity;

    (v)    The Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including any Avoidance Actions, against any of the Prepetition ABL Credit Parties or any of their respective Representatives;

    (vi)    The Debtors have, on behalf of each of their estates and any party that may try to claim by, through, or on behalf of the Debtors' estates, waived,

discharged, and released any right to challenge any of the Prepetition ABL Obligations or the validity, extent and priority of the Prepetition ABL Liens;

(vii)    The Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code; and

(viii)    The Debtors have been and are in default of their obligations under the Prepetition ABL Loan Documents, including as a result of the Chapter 11 Cases, and an Event of Default (as defined in the Prepetition ABL Credit Agreement) has occurred and is continuing.

f.    ***Intercreditor Agreement.***    The Prepetition ABL Agents, for themselves and the other Prepetition ABL Credit Parties, and the Prepetition Second Lien Collateral Agent, for itself and the other Prepetition Second Lien Credit Parties, entered into a Second Amended and Restated Intercreditor Agreement, dated as of March 20, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Intercreditor Agreement").

g.    ***Application to ESL***.    None of the Debtors' Stipulations shall apply to ESL Investments, Inc. or any of its affiliates (including any fund in which ESL or any affiliate of ESL acts as investment manager, investment advisor, general partner, managing member or in any similar capacity, the "ESL Affiliates," and together with ESL Investments, Inc., "ESL") or any other insider or such insider's affiliates (a "Non-ESL Insider").  For the avoidance of doubt, any reference to "insider" or "Non-ESL Insider" in this Final Order, shall not include the Sears Holdings Pension Plan.

I.    ***Certain Second Lien Debt.***    The following descriptions are set forth herein for definitional purposes only:

a.    ***Prepetition Second Lien 2010 Notes.***  Pursuant to the Indenture, dated as of October 12, 2010 (as amended, restated, supplemented or otherwise modified from time to

time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2010 Indenture Documents", together with the Prepetition Second Lien 2018 Indenture Documents (as defined below), the "Prepetition Second Lien Notes Documents"), by and among (i) Holdings, as issuer (in such capacity, and as issuer of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Issuer"), (ii) certain subsidiaries of Holdings, as guarantors (in such capacity, and as guarantors of the Prepetition Second Lien Convertible Notes (as defined below), the "Prepetition Second Lien Notes Guarantors") and (iii) Wilmington Trust, National Association, as trustee (in such capacity, the "Prepetition Second Lien 2010 Indenture Trustee") and as collateral agent (in such capacity, the "Prepetition Second Lien Collateral Agent"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Notes (as defined in the Prepetition Second Lien 2010 Indenture), due 2018 (together with any Exchange Securities (as defined in the Prepetition Second Lien 2010 Indenture) and any Additional Notes (as defined in the Prepetition Second Lien 2010 Indenture) issued under the Prepetition Second Lien 2010 Indenture, the "Prepetition Second Lien 2010 Notes" and the holders of such Prepetition Second Lien 2010 Notes, the "Prepetition Second Lien 2010 Notes Holders") and, pursuant to an Offering Memorandum (as defined in the Prepetition Second Lien 2010 Indenture), the Prepetition Second Lien Notes Issuer exchanged some of the Prepetition Second Lien 2010 Notes for the Prepetition Second Lien Convertible Notes (as defined below).

b.      ***Prepetition Second Lien 2010 Notes Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of the obligations in

respect of the Prepetition Second Lien 2010 Notes totaling approximately $89 million were outstanding, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien 2010 Notes Obligations").

c.      *Prepetition Second Lien Convertible Notes.* Pursuant to the Indenture, dated as of March 20, 2018, (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2018 Indenture" and, together with all notes, agreements and other documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien 2018 Indenture Documents"), by and among (i) the Prepetition Second Lien Notes Issuer, (ii) the Prepetition Second Lien Notes Guarantors and (iii) Computershare Trust Company, N.A. as trustee (in such capacity, the "Prepetition Second Lien 2018 Indenture Trustee" and, together with the Prepetition Second Lien 2010 Indenture Trustee, the "Prepetition Second Lien Trustees", and, the Prepetition Second Lien Trustees, together with the Prepetition Second Lien Credit Agreement Agent and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Agents" and, together with the Prepetition ABL Administrative Agent, and the Prepetition LC Facility Administrative Agent, the "Prepetition Agents"), the Prepetition Second Lien Notes Issuer issued 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 (as defined in the Prepetition Second Lien 2018 Indenture) (together with any PIK Interest Notes (as defined in the Prepetition Second Lien 2018 Indenture) (or any increase in the principal amount of a Global Note (as defined in the Prepetition Second Lien 2018 Indenture) related to PIK Interest (as defined in the Prepetition Second Lien 2018 Indenture)) and any Additional Notes (as defined in the Prepetition Second Lien 2018 Indenture) issued under the Prepetition Second Lien

2018 Indenture, the "Prepetition Second Lien Convertible Notes" and the holders of such Prepetition Second Lien Convertible Notes, the "Prepetition Second Lien Convertible Notes Holders" and, together with the Prepetition Second Lien 2010 Notes Holders, the "Prepetition Second Lien Notes Holders").

      d.    ***Prepetition Second Lien Convertible Notes Obligations.*** As of the Petition Date, according to the Debtors' books and records, certain principal amounts of obligations were outstanding in respect of the Prepetition Second Lien Convertible Notes, together with accrued and unpaid interest, costs, fees and expenses (the "Prepetition Second Lien Convertible Notes Obligations", together with the Prepetition Second Lien 2010 Notes Obligations, the "Prepetition Second Lien Notes Obligations").

      e.    ***Prepetition Second Lien Credit Agreement.*** Pursuant to the Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement" and, together with all Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and all other agreements and documents executed or delivered in connection therewith, each as has been or may be amended, restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date, the "Prepetition Second Lien Credit Agreement Documents"), by and among (i) Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers (the "Prepetition Second Lien Credit Agreement Borrowers"), (ii) Holdings and the other Guarantors party thereto (as defined in the Prepetition Second Lien Credit Agreement) (the "Prepetition Second Lien Credit Agreement Guarantors" and, together with the Prepetition Second Lien Credit Agreement Borrowers, the "Prepetition Second Lien Credit Agreement Loan Parties", and the Prepetition Second Lien Credit Agreement Loan Parties,

together with the Prepetition Second Lien Notes Issuer and the Prepetition Second Lien Notes Guarantors, the "Prepetition Second Lien Loan Parties"), (iii) the lenders from time to time party thereto (collectively, the "Prepetition Second Lien Credit Agreement Lenders"), (iv) JPP, LLC, as administrative agent and collateral administrator (in such capacities, the "Prepetition Second Lien Credit Agreement Agent", together with the Prepetition Second Lien Credit Agreement Lenders and the Prepetition Second Lien Collateral Agent, the "Prepetition Second Lien Credit Agreement Credit Parties" and, the Prepetition Second Lien Credit Agreement Credit Parties, together with the Prepetition Second Lien Trustees and the Prepetition Second Lien Notes Holders, the "Prepetition Second Lien Credit Parties", and, the Prepetition Second Lien Credit Parties, together with the Prepetition ABL Credit Parties, the "Prepetition Credit Parties") and (vi) the other parties from time to time party thereto, the Prepetition Second Lien Credit Agreement Credit Parties provided the Prepetition Second Lien Credit Agreement Borrowers with a secured term loan (the "Prepetition Second Lien Credit Agreement Term Facility"), and, line of credit loans (the "Prepetition Second Lien Credit Agreement Line of Credit Facility" and, collectively with the Prepetition Second Lien Credit Agreement Term Facility, the "Prepetition Second Lien Credit Agreement Facilities").

        f.        ***Prepetition Second Lien Credit Agreement Facilities Obligations.***  As of the Petition Date, according to the Debtors' books and records, certain principal amounts were outstanding under the Prepetition Second Lien Credit Agreement Facilities, comprised of (i) certain amounts under the Prepetition Second Lien Credit Agreement Term Facility and (ii) certain amounts under the Prepetition Second Lien Credit Agreement Line of Credit Facility, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees,

appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Second Lien Credit Agreement Borrowers' or the Prepetition Second Lien Credit Agreement Guarantors' obligations pursuant to, or secured by, the Prepetition Second Lien Credit Agreement Documents, including all "Obligations" as defined in the Prepetition Second Lien Credit Agreement, and all other amounts that may become allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, the "Prepetition Second Lien Credit Agreement Obligations", together with the Prepetition Second Lien Notes Obligations, the "Prepetition Second Lien Obligations", and, together with the Prepetition ABL Obligations, the "Prepetition Obligations").

g.     ***Prepetition Second Lien Facilities Liens and Prepetition Second Lien Facility Collateral.***     Pursuant to the Prepetition Second Lien Notes Documents and the Prepetition Second Lien Credit Agreement Documents (collectively, the "Prepetition Second Lien Credit Documents" and, together with the Prepetition ABL Loan Documents and the Intercreditor Agreement, the "Prepetition Loan Documents"), each of the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Guarantors (collectively, the "Prepetition Second Lien Guarantors") unconditionally guaranteed, on a joint and several basis, the due and punctual payment of all the Prepetition Second Lien Obligations. Pursuant to the Prepetition Second Lien Credit Documents, the Prepetition Second Lien Notes Guarantors and the Prepetition Second Lien Credit Agreement Credit Parties granted to the Prepetition Second Lien Collateral Agent, for the benefit of itself, all of the Prepetition Second

Lien Credit Parties, a second priority security interest in and continuing lien on (the "Prepetition Second Lien Facilities Liens", and together with the Prepetition ABL Liens, the "Prepetition Liens") all of the collateral identified in the Prepetition Second Lien Credit Documents, in all cases whether then owned or existing or thereafter acquired (collectively, the "Prepetition Second Lien Collateral," and together with the Prepetition ABL Collateral, the "Prepetition Collateral," and the property that constitutes Prepetition ABL Collateral, but which is not Prepetition Second Lien Collateral, the "Specified Non-Prepetition Second Lien Collateral").

J. *Validity of Prepetition Second Lien Obligations/Prepetition Second Lien Facilities Liens.* Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Second Lien Obligation and/or Prepetition Second Lien Facilities Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or, the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Second Lien Obligation, Prepetition Second Lien Facilities Lien and/or security interests, *provided*, *however*, no such challenge shall have any effect or impact on the Prepetition ABL Obligations or Prepetition ABL Liens, or any adequate protection granted to the Prepetition ABL Credit Parties. For the avoidance of doubt, solely after the payment in full of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Second Lien Obligations, Prepetition Second Lien Facilities Liens or Prepetition Second Lien Collateral.

**K.**    ***Validity of Prepetition Obligations/Prepetition Collateral related to ESL and Any Other Insider.***    Nothing herein shall constitute a finding or ruling by this Court in favor of ESL, or any Non-ESL Insider, that any Prepetition Obligation and/or Prepetition Lien in respect of any Prepetition Obligations owned by ESL (collectively, the "ESL Debt"), or any Non-ESL Insider, is valid, senior, enforceable, prior, perfected, or non-avoidable, *provided*, however there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, or any Non-ESL Insider, (ii) any of the Prepetition ABL Liens, or (iii) any adequate protection granted to the Prepetition ABL Credit Parties pursuant to and in accordance with the terms of the DIP ABL Orders; notwithstanding anything to the contrary herein, with respect to (ii) or (iii) of this proviso, ESL, or any Non-ESL Insider, shall not be entitled to any proceeds or other distributions on account of such Prepetition ABL Liens, Adequate Protection Liens, prepetition claims, or Adequate Protection Claims absent further order of the Bankruptcy Court; *provided* that this sentence shall not apply to the cash payment of post-petition interest on the Prepetition ABL Obligations as adequate protection, subject to any rights of the Debtors or the Creditors' Committee to seek disgorgement of any such adequate protection payments from ESL, any Non-ESL Insider, or any of their respective immediate or mediate transferees. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged ESL Debt and/or related security interests or Prepetition Obligations and/or related security interests owned by any Non-ESL Insiders, *provided*, however there shall be no effect or impact on (i) any Prepetition ABL Obligations owed to any person or entity other than ESL, or any Non-ESL Insider, (ii) any of the Prepetition ABL Liens, or (iii) any Adequate Protection Liens granted to the Prepetition ABL

21

Credit Parties; notwithstanding anything to the contrary herein, with respect to (ii) or (iii) of this proviso, ESL, or any Non-ESL Insider, shall not be entitled to any proceeds or other distributions on account of such Prepetition ABL Liens, Adequate Protection Liens, prepetition claims, or Adequate Protection Claims absent further order of the Bankruptcy Court; *provided* that this proviso shall not apply to the cash payment of post-petition interest on the Prepetition ABL Obligations as adequate protection, subject to any rights of the Debtors or the Creditors' Committee to seek disgorgement of any such adequate protection payments from ESL, any Non-ESL Insider, or any of their respective immediate or mediate transferees. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to any ESL Debt or Prepetition Obligations owned by any Non-ESL Insider, collateral securing any ESL Debt, or Prepetition Obligations owned by Non-ESL Insider, in each case, after payment in full of all DIP ABL Secured Obligations and Prepetition ABL Obligations not constituting ESL Debt or Prepetition Obligations owned by any Non-ESL Insider. Nothing in this paragraph shall affect or impact the Prepetition ABL Obligations that are not owned by ESL, or any Non-ESL Insider, or Prepetition ABL Liens securing such obligations, or any adequate protection granted to the Prepetition ABL Credit Parties other than ESL or any Non-ESL Insider.

L.    ***Cash Collateral.*** The DIP ABL Loan Parties represent that all of the DIP ABL Loan Parties' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition ABL Collateral, constitutes Cash Collateral and is Prepetition ABL Collateral but not Prepetition Second Lien Collateral.

M.     ***Permitted Prior Liens.***  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP ABL Credit Parties, the Junior DIP Credit Parties, the Prepetition Credit Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. For the avoidance of doubt, nothing herein shall be deemed a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, or (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the Permitted Prior Liens, *provided that* the lack of such a waiver shall not adversely affect in any manner the Prepetition ABL Credit Parties, the DIP ABL Credit Parties, or the Junior DIP Credit Parties, *provided, further* that any attempts or efforts to invoke the provisions referenced in clauses (a) through (c) of this sentence shall be subject in all respects to the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents until the payment in full in cash of all DIP ABL Secured Obligations and Prepetition ABL Obligations, respectively.

N.     ***Agreement Among Lenders and Intercreditor Agreement.***  Pursuant to section 510 of the Bankruptcy Code, the Agreement Among Lenders, the Intercreditor Agreement and any other intercreditor or subordination provisions contained in the Prepetition ABL Loan Documents shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of, in the case of the Intercreditor Agreement, the Prepetition Credit Parties, and, in the case of the Agreement Among Lenders, the Prepetition ABL Credit Parties (including the relative priorities, rights and remedies of such parties with respect to the

replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under the DIP Orders or otherwise and the modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified by the terms of the DIP Orders or the DIP ABL Loan Documents, unless expressly set forth herein or therein.  Solely for purposes of the Intercreditor Agreement, any repayment of the Prepetition ABL Obligations pursuant to the DIP Orders shall not be deemed to constitute a "Discharge of ABL Obligations" as such term is used in the Intercreditor Agreement.

**O.**     ***Findings Regarding DIP Financing and Use of Cash Collateral.***

a.     ***Good Cause.***   Good cause has been shown for the entry of this Final Order, each Debtor's decision to seek to obtain such relief is an exercise of good business judgment, and the Debtors have satisfied each of the applicable requirements of section 364 of the Bankruptcy Code in connection therewith.

b.     ***Request for Post-Petition Financing and Use of Cash Collateral.***   The DIP ABL Loan Parties have sought authority to enter into the DIP ABL Loan Documents.  The DIP ABL Credit Parties shall have no obligation to make or be deemed to have made loans, advances or other extensions of credit under the DIP ABL Facility except to the extent required under the respective DIP ABL Loan Documents and shall have no obligation to waive any conditions required thereunder.  The DIP ABL Loan Parties have sought authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, to administer their Chapter 11 Cases and fund their operations.

c.     ***Need for Post-Petition Financing and Use of Cash Collateral.***   The Debtors' need to use Cash Collateral and to obtain credit as set forth in the DIP ABL Loan Documents is immediate and critical in order to, among other things, enable the Debtors to

24

continue operations and to administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships, pay employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP ABL Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, creditors and other stakeholders, and the possibility for maximizing the value of their businesses. The Debtors do not have sufficient available sources of working capital and financing to operate their business or to maintain their properties in the ordinary course of business without the DIP ABL Facility and continued use of Cash Collateral. Consummation of the financing contemplated by the DIP ABL Loan Documents and the use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of the DIP Orders therefore are in the best interests of the Debtors' estates.

    d.  ***No Credit Available on More Favorable Terms.*** Given their current financial condition, financing arrangements, and capital structure, despite diligent efforts, the DIP ABL Loan Parties are unable to reasonably obtain post-petition financing from sources other than the DIP ABL Lenders on terms more favorable than those set forth in the DIP ABL Loan Documents. The DIP ABL Loan Parties have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The DIP ABL Loan Parties have also been unable to obtain secured credit from other sources on better terms: (a) solely having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured only by a lien on property of the DIP ABL Loan Parties and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the DIP ABL Loan Parties and their estates that is already subject to a prepetition lien. Further, the Required Lenders (as defined in the

Prepetition ABL Credit Agreement) are supportive of the priming of the Prepetition ABL Liens and the use of their Cash Collateral only to the extent provided herein and under the DIP ABL Loan Documents.   Financing on a post-petition basis is not otherwise available without: (x) granting the DIP ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other DIP ABL Credit Parties (i) perfected security interests in and liens on (each as provided herein) all of the DIP ABL Loan Parties' existing and after-acquired assets with the priorities set forth herein; (ii) superpriority claims; and (iii) the other protections set forth in the DIP Orders, and (y) upon entry of this Final Order, providing for the roll up of (i) all of the Prepetition ABL Revolving Extensions of Credit beneficially owned by the applicable DIP ABL Revolving Lenders and (ii) all of the Prepetition ABL Term Loans beneficially owned by the applicable DIP ABL Term Lenders, in each case, upon the terms set forth in this Final Order and in the DIP ABL Credit Agreement.

　　　　　　e.    ***Use of Proceeds; Approved Budget.***   As a condition to entry into the DIP ABL Loan Documents, the extensions of credit under the DIP ABL Facility and the authorization to use Cash Collateral, the DIP ABL Lenders and Prepetition ABL Agents require, and the DIP ABL Loan Parties have agreed, that proceeds of the DIP ABL Facility and Cash Collateral shall be used in accordance with the terms of the DIP ABL Loan Documents, including the Approved Budget, which shall be subject to (a) such variances as may be permitted by the DIP ABL Loan Documents, (b) the DIP Orders, and (c) the Carve-Out.   The DIP ABL Loan Parties shall not directly or indirectly pay any expense or other disbursement other than those set forth herein, in the Approved Budget or the Carve-Out.   The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents and solely in accordance with the Approved Budget (subject to the Carve-Out), including, to the

extent provided therein, (i) for the ongoing working capital and general corporate purposes of the DIP ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained in, the Approved Budget; (ii) to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to the DIP ABL Agents and the DIP ABL Lenders to the extent provided in the DIP ABL Loan Documents) as set forth in the DIP ABL Loan Documents; (iii) payment of other such prepetition obligations as set forth in the Approved Budget, and as approved by the Bankruptcy Court; and (iv) payment of certain adequate protection amounts to the Prepetition ABL Credit Parties as set forth in paragraph 19 hereof.

f.     ***Willingness to Provide Financing.*** The DIP ABL Lenders have indicated a willingness to provide financing to the DIP ABL Loan Parties, conditioned upon entry of this Final Order, including findings that such financing and use of Cash Collateral is essential to the DIP ABL Loan Parties' estates, that the DIP ABL Lenders are extending credit to the DIP ABL Loan Parties as set forth in the DIP ABL Loan Documents in good faith, that the Prepetition ABL Credit Parties are permitting the use of Cash Collateral in good faith, and that the DIP ABL Credit Parties' and the Prepetition ABL Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order or any other order.  As a condition to the entry into the DIP ABL Loan Documents and the extensions of credit under the DIP ABL Facility, the DIP ABL Loan Parties, the DIP ABL Agents, and the other DIP ABL Credit Parties have agreed that proceeds of DIP ABL Collateral and all payments

and collections received by the DIP ABL Loan Parties shall be applied solely as set forth in the DIP ABL Loan Documents and the DIP Orders.

g.     ***Business Judgment and Good Faith Pursuant to Section 364(e).*** The extension of credit under the DIP ABL Facility and the DIP ABL Loan Documents, and the authorization to use Cash Collateral on the terms set forth herein, are fair, reasonable, and the best available to the DIP ABL Loan Parties under the circumstances, reflect the DIP ABL Loan Parties' exercise of sound and prudent business judgment, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence or violation of public policy or law.   The DIP ABL Loan Documents, the DIP ABL Facility and the provisions regarding the use of Cash Collateral were negotiated in good faith and at arm's length among the DIP ABL Loan Parties, certain of the Prepetition ABL Credit Parties and the DIP ABL Credit Parties, under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP ABL Facility, and the use of Cash Collateral, including in respect of the granting of the DIP ABL Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP ABL Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.   Use of Cash Collateral and any credit to be extended as set forth in either of the DIP Orders and in the DIP ABL Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and the DIP Orders, and

therefore, the claims, security interests, liens, and other protections granted pursuant to the DIP Orders should be preserved to the extent provided for in the DIP Orders.

        h.     ***Priming of Prepetition Liens.***  The priming of the Prepetition Liens on the Prepetition ABL Collateral by the DIP ABL Liens to the extent set forth in the DIP ABL Loan Documents and the DIP Orders will enable the DIP ABL Loan Parties to obtain the DIP ABL Facility and to continue to operate their businesses for the benefit of their estates and creditors. The Required Lenders (as defined in the Prepetition ABL Credit Agreement) support such priming liens solely to the extent set forth in the DIP ABL Loan Documents and the DIP Orders, subject to receipt of adequate protection of their respective interests in the Prepetition ABL Collateral as set forth herein.  The Required Lenders (as defined in the Prepetition ABL Credit Agreement) have acted in good faith in supporting the (i) DIP ABL Loan Parties' use of the Prepetition ABL Collateral, including Cash Collateral, pursuant to the terms of the DIP Orders, (ii) priming of the Prepetition Liens by the DIP ABL Liens on Prepetition ABL Collateral to the extent set forth in the DIP ABL Loan Documents and the DIP Orders, and (iii) entry of the DIP Orders and the granting of the relief set forth therein, and their reliance on the assurances referred to herein is in good faith.

        i.     ***Adequate Protection for Prepetition Credit Parties.***  The Prepetition Credit Parties are entitled to, and shall receive, adequate protection as set forth in paragraphs 17 through 19 below solely to the extent of the aggregate net diminution in value of their interests in the Prepetition ABL Collateral, pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code.  The adequate protection provided to the Prepetition Credit Parties pursuant to the terms of the DIP Orders are necessary and appropriate in light of, among other things, (a) the DIP ABL Loan Parties' proposed use and sale of the Prepetition ABL Collateral, including Cash

Collateral, (b) the granting of priming liens on the Prepetition ABL Collateral in connection with the DIP ABL Facility, (c) the potential decline in the value of the Prepetition ABL Collateral, (d) the imposition of the automatic stay, and (e) the subordination of the Prepetition Obligations to the Carve-Out.

j.      ***Sections 506(c) and 552(b).***  The Debtors waive, for the benefit of the DIP ABL Credit Parties and the Prepetition ABL Credit Parties, (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and the Prepetition ABL Collateral, except to the extent set forth in paragraph 13 below and with respect to their rights under the DIP Intercreditor Agreement, in light of (i) the subordination of their liens and superpriority claims, as applicable, to the Carve-Out, (ii) the use of Cash Collateral and the subordination of the Prepetition Obligations, Prepetition Liens, Adequate Protection Claims (as defined below) and Adequate Protection Liens (as defined below) to the Carve-Out, the DIP ABL Liens and the DIP ABL Superpriority Claims (as defined below), as applicable, and (iii) the Approved Budget covering all administrative costs projected by the DIP ABL Loan Parties.

k.      ***Notice.***  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest as set forth in the Motion and the Interim Order.  The notice given by the Debtors of the Motion, the relief requested therein, and the Final Hearing constitutes adequate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     ***Motion Granted.***   The Motion is granted on a final basis to the extent set forth herein.

2.     ***Use of Prepetition ABL Collateral Approved.***   Subject to and consistent with the terms of the DIP ABL Loan Documents, the DIP Orders, and the Approved Budget, the DIP ABL Loan Parties are hereby authorized to use the Prepetition ABL Collateral (including Cash Collateral) until the Termination Date to the extent set forth herein; provided, however, that during the Remedies Notice Period (as defined herein), the DIP ABL Loan Parties may use Cash Collateral solely to meet payroll obligations (but not severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Agents in their sole and absolute discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph 21 of this Final Order.

3.     ***Objections Overruled.***   All objections to and reservations of rights with respect to the relief sought in the Motion and to the entry of this Final Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.

**DIP ABL Facility Authorization**

4.     ***Authorization of the DIP ABL Loan Documents.***   The DIP ABL Loan Parties are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP ABL Loan Documents to be delivered pursuant hereto or thereto or in connection

31

herewith or therewith. The DIP ABL Loan Parties are hereby authorized to borrow money and issue letters of credit under the applicable DIP ABL Loan Documents, on a final basis in accordance with and subject to the terms and conditions of the DIP Orders and the DIP ABL Loan Documents, and to perform all other obligations hereunder and thereunder.

5.    ***ABL Roll Up.*** Upon entry of this Final Order, the following transactions will be deemed to take place: (a) all Prepetition ABL Revolving Extensions of Credit beneficially owned by a Roll Up DIP ABL Revolving Lender as of 11:59 p.m. Eastern Time on November 5, 2018 shall be converted to Roll Up DIP ABL Revolving Extensions of Credit, and with respect to participations in prepetition letters of credit issued under the Prepetition ABL Credit Agreement, such participations and letters of credit shall be deemed issued under the DIP ABL L/C Subfacility, (b) all Prepetition ABL Term Loans beneficially owned by a Roll Up DIP ABL Term Lender at 11:59 p.m. Eastern Time on November 5, 2018 shall be converted to Roll Up DIP ABL Term Loans, and (c) Roll Up DIP ABL Cash Management/Bank Product Obligations shall become obligations under the DIP ABL Facility; *provided* that the transactions described in this paragraph shall be subject to the reservation of rights of parties in interest in paragraphs 41 and 42 below, and upon expiration of the Challenge Period (as defined below) without a Challenge Proceeding (as defined below) having been brought, or the final resolution of a Challenge Proceeding brought in compliance with the provisions of the DIP Orders (where such Challenge Proceeding did not have the effect of successfully impairing any of the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations), the DIP ABL Loan Parties' ABL Roll Up shall be deemed indefeasible (or, in the event that such a Challenge Proceeding is timely and properly commenced in respect of the Prepetition ABL Revolving Extensions of Credit, the Prepetition

ABL Term Loans or the liens securing any of such obligations, on the date on which any order entered by the Bankruptcy Court in favor of the applicable Prepetition ABL Credit Party in such Challenge Proceeding becomes final and non-appealable). Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge Proceeding by any party in interest in accordance with paragraph 41 hereof, this Court may unwind the ABL Roll Up with respect to the applicable Prepetition ABL Obligations to the extent that (i) the ABL Roll Up resulted in the conversion of any Prepetition ABL Obligations consisting of an unsecured claim or other claim or amount not allowable under Section 502 of the Bankruptcy Code into a DIP ABL Secured Obligation, and (ii) such conversion unduly advantaged the applicable Prepetition ABL Credit Party.  Notwithstanding the foregoing, but subject to the preceding sentence, a successful Challenge Proceeding shall not in any way affect the validity, enforceability or priority of the DIP ABL Secured Obligations or the DIP ABL Liens and no obligation, payment, transfer or grant of security under the DIP ABL Credit Agreement, the other DIP ABL Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    ***Syndication of Commitments and Loans.***  The procedures for syndicating the DIP ABL Facility set forth in <u>Exhibit B</u> hereto are hereby approved (the "<u>Procedures</u>"). Allocations of the DIP ABL Revolver, the DIP ABL Term Loan and the Roll Up DIP ABL Obligations made by the DIP ABL Administrative Agent in accordance with the Procedures will be final and binding.  In furtherance of the foregoing and in connection with the consummation of the DIP ABL Facility, the ABL Roll Up and the related DIP ABL Loan Documents, the

performance of such acts as set forth in the Procedures and related documentation is hereby authorized and approved. For the avoidance of doubt, ESL shall neither be a permitted assignee of the DIP ABL Credit Parties nor a permitted participant in the DIP ABL Secured Obligations pursuant to the Procedures or otherwise.

7.    ***Authorized Action.***  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents that may be necessary or required for performance by the DIP ABL Loan Parties under the DIP ABL Loan Documents and the creation and perfection of the DIP ABL Liens described in, provided for and perfected by the DIP Orders and the DIP ABL Loan Documents. Subject to paragraphs 19(f) and 20(a), the DIP ABL Loan Parties are hereby authorized to pay, in accordance with the DIP Orders, the principal, interest, fees, expenses and other amounts described in the DIP ABL Loan Documents as such become due and without need to obtain further Court approval, including administrative agent fees, underwriting fees, commitment fees, letter of credit fees, and the fees and disbursements of the DIP ABL Agents' attorneys, advisers, accountants and other consultants. All fees shall be payable in accordance with the DIP ABL Loan Documents.

8.    ***Validity of DIP ABL Secured Obligations.***  The DIP ABL Loan Documents represent valid, binding and unavoidable obligations of the DIP ABL Loan Parties, enforceable against the DIP ABL Loan Parties and their estates in accordance with their terms, subject to the terms of the DIP Orders and the DIP Intercreditor Agreement. The DIP ABL Loan Documents and the DIP Orders constitute and evidence the validity and binding effect of the DIP ABL Secured Obligations of the DIP ABL Loan Parties, which DIP ABL Secured Obligations shall be enforceable, jointly and severally, against the DIP ABL Loan Parties, their estates and

34

any successors thereto, including any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case").  Subject to paragraphs 41 and 42, no obligation, payment, transfer, or grant of a security or other interest to the DIP ABL Control Co-Collateral Agent or any other DIP ABL Credit Party under the DIP ABL Loan Documents or the DIP Orders shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including under sections 502(d), 544, 548 or 549 of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment, claim or counterclaim.  The DIP ABL Secured Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the DIP ABL Loan Parties to the DIP ABL Credit Parties under the DIP ABL Loan Documents, all DIP ABL Cash Management/Bank Product Obligations, and, in the case of each of the foregoing, including all principal, interest, costs, fees, expenses and other amounts owed in connection therewith or otherwise pursuant to the DIP ABL Loan Documents.

9.      ***No Obligation to Extend Credit.***  The DIP ABL Credit Parties shall have no obligation to make loans or advances under the DIP ABL Facility unless and until the conditions precedent to the closing and the making of such extensions of credit under the DIP ABL Loan Documents have been satisfied in full or waived in accordance with the terms of the DIP ABL Loan Documents.

10.     ***Use of DIP ABL Facility Proceeds.***  From and after the Petition Date, the DIP ABL Loan Parties are authorized, subject to the satisfaction of the terms and conditions set forth in the DIP ABL Loan Documents, to use proceeds of extensions of credit under the DIP ABL Facility only for the purposes specifically set forth in the DIP Orders and the DIP ABL

Loan Documents (i) for the ongoing working capital and general corporate purposes of the DIP

ABL Loan Parties, in each case consistent with, subject to, and within the limitations contained

in, the Approved Budget; and (ii) to pay fees, costs and expenses incurred in connection with the

transactions contemplated hereby and other administration costs incurred in connection with the

Chapter 11 Cases (including all fees, charges and disbursements of all counsel and advisors to

the DIP ABL Agents and the DIP ABL Lenders).

11.    ***No Obligation to Monitor.***    No DIP ABL Credit Party shall have any

obligation or responsibility to monitor any Debtor's use of the DIP ABL Facility, and each DIP

ABL Credit Party may rely upon each Debtor's representations that the amount of debtor-in-

possession financing requested at any time, and the use thereof, are in accordance with the

requirements of the DIP Orders and the DIP ABL Loan Documents.

12.    ***DIP ABL Superpriority Claims.***    Subject to the Carve-Out and the last

sentence of this paragraph 12, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the

DIP ABL Secured Obligations shall constitute allowed administrative expense claims against

each of the DIP ABL Loan Parties' estates, jointly and severally, with equal priority to the Junior

DIP Superpriority Claims and otherwise with priority over any and all administrative expenses,

including any superpriority claims associated with any other postpetition financing facility, all

Adequate Protection Claims and, to the fullest extent permitted under the Bankruptcy Code, all

other claims against the DIP ABL Loan Parties, now existing or hereafter arising, whether or not

such expenses or claims may become secured by a judgment lien or other non-consensual lien,

levy, or attachment (the "DIP ABL Superpriority Claims"), which DIP ABL Superpriority

Claims shall be payable from and have recourse to all prepetition and post-petition property of

the DIP ABL Loan Parties and their estates and all proceeds thereof, subject only to liens secured

thereby and the Carve-Out.  The DIP ABL Superpriority Claims shall be entitled to the full

protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any

provision hereof is vacated, reversed, amended or otherwise modified, on appeal or otherwise.

Notwithstanding anything to the contrary herein, the DIP ABL Superpriority Claims shall be of

equal priority to the Junior DIP Superpriority Claims.

**DIP ABL Liens and DIP ABL Collateral.**

13.     Effective immediately upon entry of the Interim Order and as more fully

set forth in the DIP ABL Loan Documents, as security for the full and prompt performance and

payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP ABL

Secured Obligations, the DIP ABL Control Co-Collateral Agent was granted, for itself and for

the benefit of all of the DIP ABL Credit Parties, continuing valid, binding, enforceable, non-

avoidable, automatically and properly perfected, post-petition security interests in and liens (the

"DIP ABL Liens") on all DIP ABL Collateral *nunc pro tunc* to the Petition Date without the

necessity of the execution by the DIP ABL Loan Parties (or recordation or other filing or notice)

of security agreements, control agreements, pledge agreements, copyright security agreements,

trademark security agreements, patent security agreements, financing statements, mortgages,

schedules or other similar documents, or the possession or control by the DIP ABL Agents or

any other DIP ABL Credit Party of any DIP ABL Collateral.  The term "DIP ABL Collateral"

means Prepetition ABL Collateral and all other assets of the DIP ABL Loan Parties, whether

now owned or hereafter acquired, and all proceeds thereof, including all deposit accounts,

securities accounts, cash and cash equivalents of the DIP ABL Loan Parties; *provided, that* DIP

ABL Collateral excludes any of the following (collectively, the "Excluded Property"): (i) (a)

leases of real property except as permitted in the applicable lease or pursuant to applicable non-

bankruptcy law (but in no event shall DIP ABL Collateral exclude the proceeds of such leases),

and (b) any security deposits or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; *provided*, *however,* that solely in the event the Debtors subsequently seek by separate motion and obtain by final order liens on all of their leases of real property in connection with a debtor-in-possession financing facility other than the DIP ABL Facility (including in connection with the Junior DIP Facility), the DIP ABL Collateral shall include all leases of real property and the DIP ABL Liens and Adequate Protection Liens shall be first in priority and senior to any other liens thereon (other than leases of real property that are Specified Collateral which the Junior DIP Liens and DIP ABL Liens shall share pari passu); (ii) the DIP ABL Loan Parties' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (the "Avoidance Actions"), but not the proceeds thereof ("Avoidance Action Proceeds"); *provided*, for the avoidance of doubt, that the DIP ABL Collateral shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions whether by judgment, settlement or otherwise, (iii) any Intellectual Property (as defined in the DIP ABL Credit Agreement) consisting of intent-to-use trademark applications and rights in and to such applications, prior to the filing of a "Statement of Use" or "Amendment to Allege Use" to the extent that a grant of security interest in such application would impair validity or enforceability, (iv) any property to the extent that the grant of a security interest therein would violate applicable law, require a consent not obtained of any Governmental Authority (as defined in the DIP ABL Credit Agreement) or constitute a breach or default under, or result in the termination of or require a consent not obtained under, any contract, non-real property lease, license or other agreement evidencing or giving rise to such

38

property, or result in the invalidation of such property or provide any party to such contract, non-real property lease, license or agreement with a right of termination of such contract, non-real property lease, license or agreement (in each case, after giving effect to applicable provisions of the New York UCC, the Bankruptcy Code or other applicable law), (v) any and all claims or causes of action against current or former directors and officers of any DIP ABL Loan Party, including without limitation, any claim for or relating to a breach of fiduciary duty by any such director or officer (the "D&O Claims"), but not proceeds thereof, (vi) the Carve-Out Account, and (vii) proceeds and products of any of the foregoing Excluded Property described in clauses (i), (iii) through (iv) above solely to the extent such proceeds and products would constitute property or assets of the type described in clauses (i), (iii) through (iv) above; *provided that* in each case of property described in clause (iv) of this definition, such property shall constitute "Excluded Property" only to the extent and for so long as such contract, non-real property lease, license or other agreement or applicable law prohibits the creation of a lien on such property in favor of the DIP ABL Control Co-Collateral Agent, and, upon termination of such prohibition, such property shall cease to constitute "Excluded Property".  Each of the Junior DIP Agent, DIP ABL Agents, their respective lenders and the Debtors are bound by the DIP Intercreditor Agreement; *provided*, that the DIP ABL Agents and the Junior DIP Agent and each of their respective lenders are contractually obligated to comply with the DIP Intercreditor Agreement, and the DIP ABL Agents and DIP ABL Lenders may enforce such agreement against the Junior DIP Agent and its respective lenders in these Chapter 11 Cases without the need for any further order of the Bankruptcy Court; *provided, further,* that the Debtors and their estates shall be deemed to be express third party beneficiaries of, and shall be entitled to enforce the provisions of Section 4.1(b)(iii) and Section 4.1(b)(iv) of the DIP Intercreditor Agreement and the

immediately succeeding sentence of this paragraph 13 (collectively, the "Reverse Marshaling Provisions"), which Reverse Marshaling Provisions shall remain enforceable by the Debtors and their estates until the repayment in full in cash of the DIP ABL Obligations and the Junior DIP Obligations.  The DIP ABL Agents shall not apply proceeds of any Prepetition Unencumbered Collateral received in connection with any Exercise of Secured Creditor Remedies (as defined in the DIP Intercreditor Agreement) or from any sale, transfer or other disposition of such assets pursuant to section 363 or section 1129 of the Bankruptcy Code (or any similar provision under the law applicable to the Chapter 11 Cases or any other Insolvency Proceeding (as defined in the DIP Intercreditor Agreement) or under a court order in respect of measures granted with similar effect under any foreign Debtor Relief Laws (as defined in the DIP Intercreditor Agreement)) to the repayment of obligations under the DIP ABL Facility until (x) all but a de minimis amount of Prepetition ABL Collateral of the type that is eligible to be included in the term "Borrowing Base" in the DIP ABL Credit Agreement as in effect on the date of the DIP Intercreditor Agreement (but without giving effect to any changes or adjustments to the Borrowing Base or the eligibility criteria therefor, in each case, that any DIP ABL Agent may make in its "Permitted Discretion" (as defined in the DIP ABL Credit Agreement as in effect on the date of the DIP Intercreditor Agreement)) has been sold, transferred or otherwise been disposed of and the proceeds thereof applied in accordance with the DIP Intercreditor Agreement or (y) all but a de minimis amount of Prepetition ABL Collateral of the type that is eligible to be included in the term "Borrowing Base" in the DIP ABL Credit Agreement as in effect on the date of the DIP Intercreditor Agreement (but without giving effect to any changes or adjustments to the Borrowing Base or the eligibility criteria therefor, in each case, that any DIP ABL Agent may make in its "Permitted Discretion" (as defined in the DIP ABL Credit Agreement as in effect on

40

the date of the DIP Intercreditor Agreement)) is otherwise no longer available to be used to apply to and satisfy the DIP ABL Secured Obligations; *provided, however,* that if the proceeds of any Prepetition Unencumbered Collateral (including Specified Collateral) are used to satisfy any DIP ABL Secured Obligations or Prepetition ABL Obligations in accordance with this paragraph 13, notwithstanding anything in this Final Order to the contrary, after the Discharge of Senior DIP Obligations and the Discharge of Prepetition ABL Obligations (as each such term is defined in the DIP Intercreditor Agreement), all ensuing proceeds of Prepetition ABL Collateral shall be deemed to be proceeds of Prepetition Unencumbered Collateral (including Specified Collateral) until such proceeds equal the amount of Prepetition Unencumbered Collateral (including Specified Collateral) that were used to satisfy any DIP ABL Secured Obligations or Prepetition ABL Obligations.    No amendment, modification or waiver of the Reverse Marshaling Provisions, Section 7.4 of the DIP Intercreditor Agreement or clause (y) of Section 7.10 of the DIP Intercreditor Agreement, nor consent to any departure of such provisions by any person, shall be effective, nor shall any amendment or modification to any defined term used or incorporated by reference in the Reverse Marshaling Provisions, or any component definition thereof, be given effect in such Reverse Marshaling Provisions, unless in each case it is in a written agreement executed by the Debtors and approved by the Creditors' Committee or the Bankruptcy Court. In addition, no amendment, modification or waiver of Section 4.1(b)(i) or Section 4.1(b)(ii) of the DIP Intercreditor Agreement, nor any consent to any departure of such provisions by any person, shall be effective, nor shall any amendment or modification to any defined term used or incorporated by reference in Section 4.1(b)(i) or Section 4.1(b)(ii) of the DIP Intercreditor Agreement, or any component definition thereof, be given effect in such Section 4.1(b)(i) or Section 4.1(b)(ii) of the DIP Intercreditor Agreement, unless in each case the

Creditors' Committee has been given at least three (3) days prior written notice of such proposed amendment, modification, waiver or departure.

**Priority of DIP ABL Liens**

14.     The DIP ABL Liens on the DIP ABL Collateral shall in each case be subject to the Carve-Out and otherwise have the following priority:

(a)     pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens on and security interests in all DIP ABL Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date (collectively, the "Prepetition Unencumbered Collateral"), which liens shall be *pari passu* with the Junior DIP Liens on Prepetition Unencumbered Collateral which constitute "Specified Collateral" (as defined in the DIP Intercreditor Agreement, the "Specified Collateral") but subject to any Senior Permitted Liens; *provided*, that the proceeds of such Specified Collateral shall be shared by the Junior DIP Lenders and the DIP ABL Credit Parties pro rata based on the aggregate commitment amount under the Junior DIP Facility (i.e., $350,000,000) and aggregate incremental commitments and extensions of credit under the DIP ABL Facility (i.e., $300,000,000) without giving regard to the roll-up portion thereof, respectively;

(b)     pursuant to section 364(c)(3) of the Bankruptcy Code, junior liens on and security interests in all DIP ABL Collateral (other than Prepetition ABL Collateral) that is not subject to Prepetition ABL Liens but is subject to valid and perfected security interests in favor of third parties as of the Petition Date (the "Prepetition Encumbered Collateral") and any Senior Permitted Liens; and

(c)     pursuant to section 364(d) of the Bankruptcy Code, first priority priming security interests and liens on the Prepetition ABL Collateral of each Debtor on which the Prepetition ABL Lenders held a first priority security interest and lien (such liens and security interests, the "DIP ABL Priming Liens"), in each case to the extent that such Prepetition ABL Collateral is subject to Prepetition ABL Liens and such DIP ABL Priming Liens shall be (x) senior in all respects to the interests in such property of the Prepetition ABL Credit Parties under the Prepetition ABL Credit Agreement and the other "secured parties" referred to therein, (y) senior to the Adequate Protection Liens, and (z) subject to any Senior Permitted Liens.

15.     Notwithstanding anything to the contrary herein, the following table sets forth the relative priorities of the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, the

Junior DIP Liens, the Adequate Protection Liens, and the Prepetition Liens on the DIP ABL

Collateral:

| Prepetition ABL Collateral | Prepetition Encumbered Collateral[3] | Prepetition Unencumbered Collateral (Other than Specified Collateral) | Specified Collateral |
|---|---|---|---|
| Carve-Out | Carve-Out | Carve-Out | Carve-Out |
| Senior Permitted Liens | All valid and perfected security interests in favor of third parties as of the Petition Date and any Senior Permitted Liens | Senior Permitted Liens | Senior Permitted Liens |
| DIP ABL Liens | DIP ABL Liens | DIP ABL Liens | DIP ABL Liens, *pari passu* with Junior DIP Liens |
| Prepetition ABL Facilities Adequate Protection Liens | Junior DIP Liens | Junior DIP Liens | Prepetition ABL Facilities Adequate Protection Liens |
| 2018 FILO Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | Prepetition ABL Facilities Adequate Protection Liens | 2018 FILO Adequate Protection Liens |
| Prepetition LC Facility Adequate Protection Liens | 2018 FILO Adequate Protection Liens | 2018 FILO Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens |
| Prepetition ABL Liens | Prepetition LC Facility Adequate Protection Liens | Prepetition LC Facility Adequate Protection Liens | Postpetition Intercompany Liens |
| Postpetition Intercompany Liens | Postpetition Intercompany Liens | Postpetition Intercompany Liens | Prepetition Second Lien Adequate Protection Liens (only with respect to property of Prepetition Second Lien Loan Parties) |

---

[3]    The priorities set forth in this column are subject to paragraph 65.

| Prepetition Second Lien Adequate Protection Liens | Prepetition Second Lien Adequate Protection Liens (only with respect to property of Prepetition Second Lien Loan Parties) | Prepetition Second Lien Adequate Protection Liens (only with respect to property of Prepetition Second Lien Loan Parties) | |
| Prepetition Second Lien Facilities Liens (except on Specified Non-Prepetition Second Lien Collateral) | | | |
| Junior DIP Liens | | | |

16.     ***Treatment of DIP ABL Liens.***  Other than as set forth herein, the DIP ABL Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Chapter 11 Cases or any Successor Case.  The DIP ABL Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.  No lien or interest avoided and preserved for the benefit of the DIP ABL Loan Parties' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP ABL Liens.

**Adequate Protection**

17.     ***Adequate Protection Liens.***

(a)     *Prepetition ABL Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, against the

45

aggregate net diminution in value of the Prepetition ABL Credit Parties' (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) interests in the entirety of the Prepetition ABL Collateral resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value to the extent permitted under the Bankruptcy Code) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, "ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition ABL Control Co-Collateral Agent on behalf of itself and all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) to the extent of any ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition ABL Facilities Adequate Protection Liens") all DIP ABL Collateral.  The Prepetition ABL Facilities Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens and the DIP ABL Liens, (ii) solely with respect to the Prepetition Encumbered Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, and the Junior DIP Liens, (iii) solely with respect to Prepetition Unencumbered Collateral, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, and the Junior DIP Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(b)      *Prepetition 2018 FILO Adequate Protection Liens*.   Pursuant to

sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the

interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral,

against the aggregate net diminution in value of the 2018 FILO Lenders' interests in the entirety

of the Prepetition ABL Collateral resulting from the DIP ABL Loan Parties' use, sale or lease

(or other decline in value to the extent permitted under the Bankruptcy Code) of such collateral,

the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the

subordination to the Carve-Out (collectively, the "2018 FILO ABL Diminution in Value"), the

DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition

ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders to the extent of any 2018

FILO ABL Diminution in Value, if any, a valid and perfected replacement and additional

security interest in, and liens on (the "2018 FILO Adequate Protection Liens") all DIP ABL

Collateral.   The 2018 FILO Adequate Protection Liens are and shall be valid, binding,

enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the

execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements,

pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to

the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior

Permitted Liens, the DIP ABL Liens, and the Prepetition ABL Facilities Adequate Protection

Liens, (ii) solely with respect to the Prepetition Encumbered Collateral, be subject to the Carve-

Out, valid and perfected security interests in favor of third parties as of the Petition Date

(including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens and the

Prepetition ABL Facilities Adequate Protection Liens, (iii) solely with respect to Prepetition

Unencumbered Collateral, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL

Liens, the Junior DIP Liens, and the Prepetition ABL Facilities Adequate Protection Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(c)    *Prepetition LC Facility Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, against the aggregate net diminution in value of the Prepetition LC Facility Credit Parties' interests in the entirety of the Prepetition ABL Collateral resulting from the Prepetition LC Facility Credit Parties' use, sale or lease  (or other decline in value to the extent permitted under the Bankruptcy Code) of such collateral, the imposition of the automatic stay, the priming of the Prepetition ABL Liens and the subordination to the Carve-Out (collectively, the "Prepetition LC ABL Diminution in Value"), the DIP ABL Loan Parties, pursuant to the Interim Order, granted and hereby grant to the Prepetition LC Facility Administrative Agent on behalf of itself and all of the other Prepetition LC Facility Credit Parties to the extent of any Prepetition LC ABL Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition LC Facility Adequate Protection Liens") all DIP ABL Collateral.  The Prepetition LC Facility Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the DIP ABL Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, and the 2018 FILO Adequate Protection Liens, (ii) solely

48

with respect to the Prepetition Encumbered Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, (iii) solely with respect to Prepetition Unencumbered Collateral, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens and the 2018 FILO Adequate Protection Liens, and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral.

(d)    *Second Lien Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, against the aggregate net diminution in value, if any, resulting from the DIP ABL Loan Parties' use, sale or lease (or other decline in value to the extent permitted under the Bankruptcy Code) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Second Lien Facilities Liens and the subordination to the Carve-Out (collectively, the "Second Lien Diminution in Value," and, collectively with the ABL Diminution in Value, the 2018 FILO ABL Diminution in Value and the Prepetition LC ABL Diminution in Value, the "Diminution in Value"), each Prepetition Second Lien Loan Party, pursuant to the Interim Order, granted and hereby grants to the Prepetition Second Lien Collateral Agent on behalf of itself and the other Prepetition Second Lien Credit Parties to the extent of any applicable Second Lien Diminution in Value, if any, a valid and perfected replacement and additional security interest in, and liens on (the "Prepetition Second Lien Adequate Protection Liens," and together with the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, and the

Prepetition LC Facility Adequate Protection Liens, the "Adequate Protection Liens") all DIP ABL Collateral owned by the Prepetition Second Lien Loan Parties.  For the avoidance of doubt, notwithstanding the Interim Order, the Prepetition Second Lien Adequate Protection Liens shall solely attach to property or other interests of the Prepetition Second Lien Loan Parties.  The Prepetition Second Lien Adequate Protection Liens are and shall be valid, binding, enforceable and fully perfected *nunc pro tunc* to the Petition Date (without the necessity of the execution by the Prepetition Second Lien Loan Parties of mortgages, control agreements, security agreements, pledge agreements, financing statements, or other agreements) and shall (i) solely with respect to the Prepetition ABL Collateral, be subject and subordinate only to the Carve-Out, the Senior Permitted Liens, the DIP ABL Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens the Prepetition ABL Liens, and the Post-Petition Intercompany Liens (ii) solely with respect to the Prepetition Encumbered Collateral, be subject to the Carve-Out, valid and perfected security interests in favor of third parties as of the Petition Date (including any Senior Permitted Liens), the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens, and the Post-Petition Intercompany Liens (iii) solely with respect to Prepetition Unencumbered Collateral, subject to the Carve-Out, any Senior Permitted Liens, the DIP ABL Liens, the Junior DIP Liens, the Prepetition ABL Facilities Adequate Protection Liens, the 2018 FILO Adequate Protection Liens, the Prepetition LC Facility Adequate Protection Liens and the Post-Petition Intercompany Liens and (iv) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP ABL Collateral. The Prepetition Second Lien Secured Parties shall not apply proceeds of any Prepetition Unencumbered Collateral to satisfy any

adequate protection claims hereunder until all of the Prepetition Second Lien Collateral has been sold, transferred or otherwise been disposed of or is otherwise no longer available to be used to apply to, or is determined by the Bankruptcy Court to be insufficient to satisfy the Prepetition Second Lien Obligations.

(e)    *Treatment of Adequate Protection Liens*.  Other than as set forth in the DIP Orders, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.  The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

18.    ***Adequate Protection Superpriority Claims.***

(a)    *Prepetition ABL Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties) in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, for itself and for the benefit of all of the other Prepetition ABL Credit Parties (other than the 2018 FILO Lenders and the Prepetition LC Facility Credit Parties), pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan

Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition ABL Adequate Protection Claims") to the extent of any ABL Diminution in Value.  Except as set forth herein, the Prepetition ABL Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition ABL Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, and (iii) the Junior DIP Superpriority Claims.

(b)    *Prepetition 2018 FILO Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the 2018 FILO Lenders in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition ABL Control Co-Collateral Agent, on behalf of the 2018 FILO Lenders, pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition 2018 FILO Adequate Protection Claims") to the extent of any 2018 FILO Diminution in Value.  Except as set forth herein, the Prepetition 2018 FILO Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; *provided*, *however*, that the Prepetition 2018 FILO Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, and (iv) the Prepetition ABL Adequate Protection Claims.

(c)  *Prepetition LC Facility Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LC Facility Credit Parties in the Prepetition ABL Collateral, including Cash Collateral, the Prepetition LC Facility Administrative Agent, for itself and for the benefit of all of the other Prepetition LC Facility Credit Parties, pursuant to the Interim Order, was granted an allowed administrative claim against the DIP ABL Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code (the "Prepetition LC Facility Adequate Protection Claims") to the extent of any Prepetition LC Diminution in Value.  Except as set forth herein, the Prepetition LC Facility Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the DIP ABL Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition LC Facility Adequate Protection Claims shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, and (v) the Prepetition 2018 FILO Adequate Protection Claims.

(d)  *Second Lien Facilities Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Credit Parties in the Prepetition Second Lien Collateral, including any Cash Collateral, on behalf of itself and the other Prepetition Second Lien Credit Parties, the Prepetition Second Lien Collateral Agent, pursuant to the Interim Order, was granted an allowed administrative claim against the Prepetition Second Lien Loan Parties' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(a) and (b) of the Bankruptcy Code to the extent of any Second Lien Diminution in Value (the "Prepetition Second Lien Facilities Adequate

Protection Claims," and together with the Prepetition ABL Adequate Protection Claims, the Prepetition 2018 FILO Adequate Protection Claims, and the Prepetition LC Facility Adequate Protection Claims, the "Adequate Protection Claims") to the extent that the Prepetition Second Lien Adequate Protection Liens are insufficient to protect the Prepetition Second Lien Credit Parties' interests in the Prepetition Second Lien Collateral.  For the avoidance of doubt, notwithstanding the Interim Order, the Prepetition Second Lien Facilities Adequate Protection Claims shall only be against the estates of the Prepetition Second Lien Loan Parties.  Except as set forth herein, the Prepetition Second Lien Facilities Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the Prepetition Second Lien Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted under the Bankruptcy Code; provided, however, that the Prepetition Second Lien Facilities Adequate Protection Claim shall be junior to (i) the Carve-Out, (ii) the DIP ABL Superpriority Claims, (iii) the Junior DIP Superpriority Claims, (iv) the Prepetition ABL Adequate Protection Claims, (v) the Prepetition LC Facility Adequate Protection Claims, (vi) the Prepetition 2018 FILO Adequate Protection Claims, and (vii) the Postpetition Intercompany Obligations (as defined below).

19.     ***Additional Adequate Protection.***

(a)     *Prepetition ABL Credit Parties.*  As additional adequate protection of the Prepetition ABL Credit Parties' security interests in the Prepetition ABL Collateral, the DIP ABL Loan Parties are authorized and directed to provide adequate protection in the form of (i) current cash reimbursement of reasonable and documented fees and expenses and other disbursements of the Prepetition ABL Administrative Agent, the Prepetition ABL Co-Collateral Agents, and the Prepetition LC Facility Administrative Agent whether incurred before, on or

after the Petition Date, including the reasonable documented fees and expenses of its professional advisors subject to the procedures set forth in paragraph 19(f) hereof, Skadden, Arps, Slate, Meagher & Flom LLP, Choate, Hall & Stewart LLP, Davis Polk & Wardwell LLP and Berkeley Research Group, LLC, whether incurred before, on or after the Petition Date; (ii) continued maintenance and insurance of the Prepetition ABL Collateral and the DIP ABL Collateral in amounts and for the risks, and by the entities, as required under the Prepetition ABL Loan Documents, the DIP ABL Loan Documents and the DIP Orders; (iii) reporting and information rights equivalent to those granted to the DIP ABL Agents pursuant to the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and paragraph 22 of this Final Order; (iv) cash payment of post-petition interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement and the Prepetition LC Facility Agreement as such interest becomes due and payable at the applicable non-default rate thereunder; *provided* that in the event of a final determination that the Prepetition ABL Credit Parties or the Prepetition LC Facility Credit Parties, as applicable are undersecured as of the Petition Date, payments received by the applicable undersecured Prepetition ABL Credit Parties or the Prepetition LC Facility Credit Parties, pursuant to this clause (iv) may be recharacterized and applied as payments of principal and may be subject to disgorgement; and (v) the DIP ABL Borrowers' daily calculation, reporting and certification to the Prepetition ABL Administrative Agent of, and compliance with, the Maximum Loan to Value (Term/Revolver) Ratio and the Maximum Loan to Value (Prepetition) Ratio (each as defined below).

(b)    If on any day the DIP ABL Loan Parties are not in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, the DIP ABL Loan Parties shall immediately and irrevocably repay in cash

(i) first, DIP ABL Revolving Advances until paid in full, (ii) second, to cash collateralize letters of credit under the DIP ABL Facility, (iii) third, to the DIP ABL Term Loans until paid in full (with a pro rata reduction in DIP ABL Revolving Commitments), and (iv) after the payment in full of the DIP ABL Facility, the Prepetition ABL Obligations, in each case, until the DIP ABL Loan Parties are in compliance with the Maximum Loan to Value (Term/Revolver) Ratio or the Maximum Loan to Value (Prepetition) Ratio, as applicable.  In the case of clause (iv), such amounts shall be paid to the Prepetition ABL Administrative Agent and applied in accordance with Section 6.4 of the Collateral and Guarantee Agreement (as defined in the Prepetition ABL Credit Agreement).  For the avoidance of doubt, a failure of the DIP ABL Borrowers to deliver to the DIP ABL Administrative Agent or Prepetition ABL Administrative Agent, as applicable, the cash when and in such amounts required in accordance with the immediately preceding sentence shall constitute a Termination Event (as defined below) hereunder, and the DIP ABL Administrative Agent or the Prepetition ABL Administrative Agent, as applicable, shall be permitted to exercise all rights and remedies available pursuant to the DIP ABL Loan Documents or Prepetition ABL Loan Documents, as applicable, and the DIP Orders subject to the terms of paragraphs 33 and 34.

(c)     The "Maximum Loan to Value (Term/Revolver) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of (a) the outstanding principal amount of Advances (as defined in the Prepetition ABL Credit Agreement), plus (b) the outstanding principal amount of Swingline Advances (as defined in the Prepetition ABL Credit Agreement), plus (c) the amount of L/C Obligations (as defined in the Prepetition ABL Credit Agreement), plus (d) the outstanding principal amount of the outstanding 2016 Term Loans (as defined in the Prepetition ABL Credit Agreement) (the sum of clauses (a) through (d), the "Prepetition

Revolving/Term Exposure"), plus (e) Total Extensions of Credit (as defined in the DIP ABL Loan Documents), plus (f) Availability Reserves (as defined in the DIP ABL Loan Documents), plus (g) the Borrowing Base Carve-Out Reserve (as defined in the DIP ABL Loan Documents), plus (h) the Prepetition FILO Reserve (as defined in the DIP ABL Loan Documents), at any time to exceed 87.5% of the sum of (1) the aggregate outstanding Eligible Credit Card Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (2) the aggregate Eligible Pharmacy Receivables (as defined in the DIP ABL Loan Documents) at such time, plus (3) (i) the Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory (as defined in the DIP ABL Loan Documents) (other than Eligible Inventory (as defined in the DIP ABL Loan Documents) at stores to be closed pursuant to Specified Store Closing Sales (as defined in the DIP ABL Loan Documents)) at such time and (ii) the Store Closing Net Orderly Liquidation Value (as defined in the DIP ABL Loan Documents) of Net Eligible Inventory at Stores to be closed pursuant to Specified Store Closing Sales at such time (the sum of clauses (1) through (3), the "LTV Formula Amount").

(d)       The "Maximum Loan to Value (Prepetition) Ratio" means that the DIP ABL Loan Parties shall not permit the sum of Prepetition Revolving/Term Exposure, plus the outstanding 2018 FILO Extensions of Credit (as defined in the Prepetition ABL Credit Agreement), plus the Total Extensions of Credit (as defined in the DIP ABL Loan Documents), plus Availability Reserves (as defined in the DIP ABL Loan Documents), plus the Borrowing Base Carve-Out Reserve (as defined in the DIP ABL Loan Documents), plus the Prepetition FILO Reserve (as defined in the DIP ABL Loan Documents), at any time to exceed 97.5% of the LTV Formula Amount at such time.

(e)    *Second Lien Credit Parties.*  As additional adequate protection of certain of the Prepetition Second Lien Credit Parties' security interest in the Prepetition Second Lien Collateral, the Prepetition Second Lien Loan Parties are authorized and directed to provide adequate protection in the form of  (i) current cash reimbursement of up to $250,000 of reasonable and documented fees and expenses and other disbursements of the Prepetition Second Lien 2010 Indenture Trustee, including the reasonable and documented fees and expenses of Seyfarth Shaw LLP, subject to the procedures set forth in paragraph 19(f) hereof, whether incurred before, on or after the Petition Date, and (ii) reporting and information rights for the Prepetition Second Lien Agents equivalent to those granted to the DIP ABL Agents pursuant to paragraph 22 of this Final Order.

(f)    Payment of all professional fees and expenses of the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent, the Prepetition LC Facility Administrative Agent, the Prepetition Second Lien 2010 Indenture Trustee (subject to the limitations set forth in paragraph 19(e) hereof) and the Prepetition Consolidated Loan Agent addressed in the DIP Orders shall not be subject to allowance by the Bankruptcy Court. Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP ABL Credit Parties, the Prepetition ABL Administrative Agent, the Prepetition LC Facility Administrative Agent, the Prepetition Second Lien 2010 Indenture Trustee and the Prepetition Consolidated Loan Agent shall deliver a copy of their respective invoices to counsel for any Creditors' Committee, the U.S. Trustee (as defined below), and the DIP ABL Administrative Agent.  The invoices for such fees and expenses shall not be required to comply with any particular format and may be in summary form only and may include redactions.  For the avoidance of doubt, the provision of such invoices shall not constitute a

waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  The DIP ABL Loan Parties or, with respect to invoices received in respect of fees and expenses payable to professionals for the Prepetition Consolidated Loan Agent, the Prepetition Consolidated Loan Parties, shall pay such invoice within ten (10) calendar days (if no written objection is received within such ten calendar day period) after such professional has delivered such invoice to the DIP ABL Loan Parties, the Creditors' Committee, the DIP ABL Administrative Agent, and the U.S. Trustee.  Any written objections raised by the DIP ABL Loan Parties, the U.S. Trustee, the DIP ABL Administrative Agent or any Creditors' Committee with respect to such invoices within ten (10) calendar days of receipt thereof will be resolved by the Bankruptcy Court (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the DIP ABL Loan Parties or, with respect to invoices received in respect of fees and expenses payable to professionals for the Prepetition Consolidated Loan Agent, the Prepetition Consolidated Loan Parties. The fees and expenses subject to the procedures in this paragraph 19(f) shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and shall not be subject to compliance with the U.S. Trustee fee guidelines or the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Effective Date (as defined in the DIP ABL Credit Agreement) all costs and expenses of the DIP ABL Credit Parties required to be paid as a condition precedent to the effectiveness of the DIP ABL Credit Agreement without the need for any professional engaged by such parties to first deliver a copy of its invoice as set forth in this paragraph 19(f).

20.    ***Costs, Fees, Expenses, and Indemnification.***

(a)    *DIP ABL Credit Parties*.    The DIP ABL Loan Parties are authorized to pay any and all reasonable and documented fees and expenses of the DIP ABL Agents (including, without limitation, the reasonable and documented fees and expenses of Skadden, Arps, Slate, Meagher & Flom LLP, Choate, Hall & Stewart LLP, and Berkeley Research Group LLC) in connection with the DIP ABL Facility and as provided for in the DIP ABL Loan Documents, whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including fees and expenses incurred in connection with (i) the preparation, negotiation and execution of the DIP ABL Loan Documents; (ii) the syndication and funding of the DIP ABL Facility; (iii) the creation, perfection or protection of the liens under the DIP ABL Loan Documents (including all search, filing and recording fees); (iv) the on-going administration of the DIP ABL Loan Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Chapter 11 Cases; (v) the enforcement of the DIP ABL Loan Documents; (vi) any refinancing or restructuring of the DIP ABL Facility; and (vii) any legal proceeding relating to or arising out of the DIP ABL Facility or the other transactions contemplated by the DIP ABL Loan Documents, including the Chapter 11 Cases.    Payment of all such professional fees and expenses shall not be subject to allowance by the Bankruptcy Court or to the U.S. Trustee guidelines, but shall be subject to the procedures set forth in paragraph 19(f) herein. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(b)    *Indemnification of DIP ABL Credit Parties*.    The DIP ABL Credit Parties shall have no liability to any third party relating to the DIP ABL Loan Documents, the

DIP ABL Facility and DIP ABL Loan Parties' use of the financing provided thereunder, and shall not, by virtue of making the extensions of credit under the DIP ABL Facility, extending funds thereunder, or otherwise complying with the DIP ABL Loan Documents, be deemed to be in control of the operations of Debtors, to owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors. The DIP ABL Loan Parties shall, and are hereby authorized to, indemnify and hold harmless the DIP ABL Credit Parties and their respective affiliates and Representatives from and against all losses, liabilities, claims, damages, penalties, actions, judgments, suits, expenses or disbursements of any nature whatsoever arising out of or relating to the DIP ABL Loan Documents, including the syndication of any obligations thereunder, and the DIP ABL Loan Parties' use of the financing provided thereunder, *provided*, *however*, that the foregoing indemnity shall not apply to any actions of any indemnified parties determined in a final non-appealable judgment of a court of competent jurisdiction to constitute gross negligence or willful misconduct. This indemnification shall survive and continue for the benefit of all such persons or entities.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

        21.    ***Carve-Out.***

        (a)    *Carve-Out*. As used in this Final Order and the DIP ABL Loan Documents, the "Carve-Out" shall be comprised of the following components:

        (i)    Clerk and U.S. Trustee Fees. All fees required to be paid to the Clerk of this Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code and 31 U.S.C. § 3717 (collectively, "Clerk and UST Fees").

        (ii)    Chapter 7 Trustee Fees. All reasonable fees and expenses up to $500,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Fee Cap").

(iii)    Committee Member Expenses.    All reasonable, documented, out-of-pocket expenses of individual members of the Committee solely in their capacity as such (but expressly excluding any and all fees and expenses of professional persons employed by such committee members individually) in an aggregate amount not to exceed $200,000 (the "Committee Member Expense Cap").

(iv)    Allowed Professional Fees Incurred Prior to a Carve-Out Trigger Notice.    To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all paid and earned and accrued and unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors, including the Subcommittee of the Debtors' Restructuring Committee, pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional Persons") at any time before or on the date of delivery by the DIP ABL Administrative Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by this Court prior to or after delivery of a Carve-Out Trigger Notice.  For purposes of the Carve-Out, Allowed Professional Fees shall exclude (i) any restructuring, sale, consummation, success or similar fee of any Professional Person and (ii) fees and expenses of any third party professionals employed by any individual member of the Creditors' Committee.

(iv)    Allowed Professional Fees Incurred After a Carve-Out Trigger Notice.    Allowed Professional Fees of Professional Persons incurred on and after the first business day following delivery by the DIP ABL Administrative Agent of the Carve-Out Trigger Notice shall be subject to an aggregate cap of $20 million (the "Post Trigger Notice Carve-Out Fee Cap").

(b)    *Carve-Out Trigger Notice.*    Upon the occurrence and during the continuance of any Termination Event, the DIP ABL Administrative Agent may deliver a written notice invoking the Post Trigger Notice Carve-Out Fee Cap (the "Carve-Out Trigger Notice") to the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee, and lead counsel for the Creditors' Committee.  The Carve-Out Trigger Notice may be delivered by email (or any other means permitted under the DIP ABL Loan Documents).

(c)    *Delivery of Weekly Fee Estimates.*    Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "Weekly Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through

Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred through the applicable Calculation Date (collectively, "Estimated Fees and Expenses") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors from the Carve-Out Account (as defined below).  No later than one business day after the delivery of a Carve-Out Trigger Notice, each Professional Person shall deliver one additional statement to the Debtors setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve-Out Trigger Notice.

(d)      *Failure to Deliver Weekly Fee Estimates*.  If any Professional Person fails to deliver a Weekly Statement when due (such Professional Person, a "Defaulting Professional Person"), such Professional Person's entitlement (if any) to any amount of the Carve-Out with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable periods for which such Professional Person failed to deliver a Weekly Statement shall be limited to the aggregate unpaid amount of Allowed Professional Fees for such Professional Person included in the Approved Budget, *provided* that such Defaulting Professional Person may cure its failure to provide a Weekly Statement so long as a Carve-Out Trigger Notice has not been delivered.

(e)      *Carve-Out Reserve*.  The DIP ABL Administrative Agent shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of the following:  (i) estimated amounts for Clerk and UST Fees, the Chapter 7 Trustee Fee Cap, and the Committee Member Expense Cap, plus (ii) the Post Trigger Notice Carve-Out Fee Cap, plus (iii) the aggregate amount of Allowed

Professional Fees in the Approved Budget remaining unpaid through the most recent Calculation Date or, if greater, the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and reported to the DIP ABL Administrative Agent, plus (iv) an amount equal to the Allowed Professional Fees set forth in the Approved Budget for the two-week period occurring after the most recent Calculation Date, plus (v) $29.5 million less any Permitted Carve-Out Success Fees (as defined below) paid by the Debtors pursuant to an order of the Bankruptcy Court. Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP ABL Administrative Agent a report setting forth the Carve-Out Reserve Amount as of such time, and, in setting the Carve-Out Reserve, the DIP ABL Administrative Agent shall be entitled to, but shall not be required to, rely upon such reports in determining the Carve-Out Reserve.

(f)    *Carve-Out Account*.    Upon the entry of the Interim Order, the Debtors established a segregated account with the DIP ABL Administrative Agent (the "Carve-Out Account"), which was and shall continue to be funded in an amount up to the Carve-Out Reserve Amount less (i) the Clerk and UST Fees, (ii) the Chapter 7 Trustee Fee Cap, (iii) the Committee Member Expense Cap, (iv) the Post Trigger Notice Carve-Out Fee Cap (the "Carve-Out Account Required Balance") first with cash on hand  and any availability or proceeds of any other postpetition financing facility, and if such sources are insufficient to fully fund the Carve-Out Account, with borrowings under the DIP ABL Facility. Bank of America shall not be responsible or have any liability for, or have any duty to ascertain, inquire into, monitor or enforce, compliance with the Carve-Out Account.  Amounts in the Carve-Out Account shall  be held in trust to pay all amounts included the Carve-Out.  On each Friday after the date hereof (or

if such day is not a business day, then the next business day), the Debtors shall deposit into the Carve-Out Account an amount sufficient to cause the balance in the Carve-Out Account to equal the Carve-Out Account Required Balance. All Allowed Professional Fees of Professional Persons shall be paid to the applicable Professional Person first from the Carve-Out Account in accordance with the order or orders of the Bankruptcy Court allowing such Allowed Professional Fees. Notwithstanding anything to the contrary in this or any other Court order, the Carve-Out Account and the amounts on deposit in the Carve-Out Account shall be available and used only to satisfy obligations of Professional Persons benefitting from the Carve-Out, and, thereafter, as provided in paragraph 21(g)(v). Prior to a Carve-Out Trigger Notice, in no event shall the total balance in the Carve-Out Account ever exceed the Carve-Out Account Required Balance. The failure of the Carve-Out Account to satisfy Allowed Professional Fees in full shall not affect the priority of the Carve-Out.

(g)    *Carve-Out Funding After a Carve-Out Trigger Notice*. The following provisions with respect to the Carve-Out Account shall apply only upon delivery of a Carve-Out Trigger Notice:

(i)    On the date of the Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall be deemed to constitute a demand to the Debtors to utilize all cash on hand as of such date and any availability or proceeds of any other postpetition financing facility to fund the Carve-Out Account in an amount equal to the full Carve-Out Reserve Amount (to the extent not previously funded into the Carve-Out Account) to be held in trust to pay all amounts included the Carve-Out.

(ii)    On or after the date of a Carve-Out Trigger Notice, the DIP ABL Administrative Agent shall not sweep or foreclose on cash of the Debtors (including cash received as a result of the sale or other disposition of any assets) until the Carve-Out Account has been fully funded. To the extent such cash on hand and availability and/or proceeds of any other postpetition financing facility are not sufficient to fully fund the Carve-Out Account, the Carve-Out Trigger Notice shall be deemed to constitute a draw request and notice of borrowing by the Debtors for DIP ABL Revolving Advances under the DIP ABL Loan Documents (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) to fully fund the Carve-Out Account. On the first business day after delivery of the Carve-Out Trigger Notice,

notwithstanding anything in the DIP ABL Loan Documents to the contrary, including with respect to the existence of a Default (as defined in the DIP ABL Loan Documents) or Event of Default (as defined in the DIP ABL Loan Documents), the failure of the Debtors to satisfy any or all of the conditions precedent for DIP ABL Revolving Advances under the DIP ABL Revolver, any termination of the commitments thereunder following an Event of Default at the direction of the DIP ABL Administrative Agent, each DIP ABL Revolving Lender with an outstanding DIP ABL Revolving Commitments (on a pro rata basis based on the then outstanding DIP ABL Revolving Commitments) shall make available to the DIP ABL Administrative Agent such DIP ABL Revolving Lender's pro rata share with respect to the borrowings required to fully fund the Carve-Out Account in accordance with the DIP ABL Revolver; *provided*, *however*, that in no event shall the DIP ABL Credit Parties be required to fund the Carve-Out Account to the extent such funding would cause Excess Availability (as defined in the DIP ABL Loan Documents and determined as if the DIP ABL Revolving Commitments were not terminated due to an Event of Default (as defined in the DIP ABL Loan Documents)) to be less than zero.  Any such funding of the Carve-Out shall be added to, and made a part of, the DIP ABL Secured Obligations secured by the DIP ABL Collateral and shall otherwise be entitled to the protections granted under the DIP Orders, the DIP ABL Loan Documents, the Bankruptcy Code, and applicable law.

(iii)    In no event shall the DIP ABL Administrative Agent or the DIP ABL Lenders be required to (x) extend DIP ABL Revolving Advances to fund the Carve-Out other than pursuant to this paragraph 21(g), (y) extend DIP ABL Revolving Advances pursuant to a deemed draw and borrowing pursuant to this paragraph in an aggregate amount exceeding the Carve-Out Reserve Amount, or (z) pay in the aggregate more than the Carve-Out Reserve Amount for all fees and expenses included in the Carve-Out.

(iv)    All funds in the Carve-Out Account shall be used first to pay the obligations set forth in the definition of the Carve-Out set forth above until paid in full.  All payments and reimbursements made from the Carve-Out Account shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(v)    To the extent any funds remain in the Carve-Out Account after payment of all amounts included in the Carve-Out, such funds shall first be used to pay the DIP ABL Administrative Agent for the benefit of the DIP ABL Lenders, unless the DIP ABL Secured Obligations have been indefeasibly paid in full, in cash, all commitments under the DIP ABL Facility have been terminated, and all Letters of Credit (as defined in the DIP ABL Loan Documents) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise backstopped to the satisfaction of the DIP ABL Administrative Agent in its sole and absolute discretion), in which case any such excess shall next be paid to the Prepetition Credit Parties and/or the Junior DIP Agent in accordance with their rights and priorities under this Final Order and the Junior DIP Order.

(h)    *Carve-Out Limitations.*  For purposes of the Carve-Out, (i) any

success, restructuring, consummation, sale or other similar fees shall not be included except for

such fees in an aggregate amount up to $19.5 million that become Allowed Professional Fees of

Lazard Freres & Co. LLC, M-III Advisory Partners, LP and/or Houlihan Lokey Capital Inc. (the

"Permitted Carve-Out Consummation Fees") or any other success, restructuring, consummation,

sale or other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion

and (ii) Allowed Professional Fees shall exclude fees and expenses of any third party

professionals employed by any individual member of the Creditors' Committee.    Further

notwithstanding anything to the contrary herein, the Carve-Out shall not include, apply to or be

available for any fees or expenses incurred by any party in connection with (a) the investigation,

initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation

(i) against any of the DIP ABL Credit Parties, Prepetition ABL Credit Parties,[4] or any

Representatives of any of the foregoing, or (ii) challenging the amount, validity, perfection,

priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations

and the liens and security interests granted under the DIP ABL Loan Documents or, the

Prepetition ABL Loan Documents, including, in each case for lender liability or pursuant to

sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-

bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP ABL

Credit Parties or the Prepetition ABL Credit Parties under the DIP ABL Loan Documents, the

Prepetition ABL Loan Documents or the DIP Orders; (c) attempts to prevent, hinder or otherwise

delay any of the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' assertion,

---

[4]    Notwithstanding anything to the contrary in this Final Order, the DIP ABL Loan Documents, or the Prepetition
Loan Documents, but subject to the Approved Budget, the Debtors, acting through the Restructuring Committee
and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings, and the Creditors'
Committee shall not be prohibited from investigating or pursuing any estate causes of action against ESL
Investments, Inc., in any capacity, or any of its affiliates, or from funding such actions from the proceeds of the
DIP ABL Facility or the Carve-Out so long as it does not affect in any manner the Prepetition ABL Credit
Parties or the DIP ABL Credit Parties, in each case, other than ESL Investments, Inc.  For purposes of this
paragraph 20(h), the Prepetition ABL Credit Parties do not include ESL Investments, Inc. in any capacity or any
of its affiliates.

enforcement or realization upon any of the Prepetition Collateral or DIP ABL Collateral in accordance with the DIP ABL Loan Documents, the Prepetition ABL Loan Documents, and the DIP Orders other than to seek a determination that a Termination Event has not occurred or is not continuing; (d) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are specifically approved by an order of the Bankruptcy Court; (e) any success, completion, back-end or similar fees other than the Permitted Carve-Out Success Fees or any other success, restructuring, consummation, sale or other similar fees agreed to by the DIP ABL Agents in their sole and absolute discretion; and/or (f) anything else prohibited by the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or any order of the Bankruptcy Court, as applicable.  In no way shall the Carve-Out, the Carve-Out Account, the Approved Budget or any of the forgoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors or the amount of Allowed Professional Fees that may be allowed by the Bankruptcy Court at any time (whether by interim order, final order or otherwise).

(i)     *No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.*  Other than the funding of the Carve-Out with the proceeds of the DIP ABL Facility as provided herein and in the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases, any Successor Cases, or otherwise.  Nothing in the DIP Orders, the Junior DIP Order or otherwise shall be construed:  (i) to obligate the DIP ABL Credit Parties, the Junior DIP Credit Parties, or the Prepetition ABL Credit Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or

68

reimbursement, other than the Carve-Out Reserve Amount; (ii) as consent to the allowance of any fees and expenses of Professional Persons; or (iii) to affect the rights of the DIP ABL Credit Parties, the Junior DIP Credit Parties, the Prepetition ABL Credit Parties or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(j)     *Payment of Compensation.* The Debtors shall be permitted to pay fees and expenses allowed and payable by order of the Bankruptcy Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable from the Carve-Out Account.  Such payments prior to a Carve-Out Trigger Notice shall not reduce the Post Trigger Notice Carve-Out Fee Cap.

22.     ***Budget and Borrowing Base Reporting; Budget Compliance***

(a)     The DIP ABL Loan Parties have delivered and/or shall deliver to the Creditors' Committee, DIP ABL Agents and the DIP ABL Lenders: (i) a budget depicting, on a weekly and line item basis, (1) (A) projected cash receipts (including from asset sales), (B) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees and expenses of the professionals and advisors of the Debtors and the Creditors' Committee), and any other fees and expenses relating to the DIP ABL Loan Documents or the Junior DIP Loan Documents), (C) projected Net Cash Flow (as defined below), (D) projected inventory receipts and levels, and (E) the projected Borrowing Base (as defined in the DIP ABL Loan Documents)  and Excess Availability (as defined in the DIP ABL Loan Documents), (2) a report listing the stores subject to Specified Store Closing Sales and the other remaining stores, and (3) such other information requested by the DIP ABL Agents for the first thirteen (13) week period from the Petition Date (the "Approved Budget"), (ii) on October

31, 2018 and every Wednesday thereafter, a Budget for the immediately following consecutive

13 weeks (each, a "Rolling Budget"), (iii) on October 31, 2018 and every Wednesday thereafter,

reports detailing operating and financial performance (the "Weekly Flash Reporting Package")

which shall include cash flow performance compared to the Approved Budget for the previous

week together with accompanying schedules supporting line items included in the weekly cash

flow results (such as roll-forward of inventory sales and receipts, roll-forward of merchandise

and other payables of each DIP ABL Loan Party as of the end of the prior week, in each case, in

reasonable detail), (iv) other customary information and documents, including approval rights

with respect thereto, to be set forth in the DIP ABL Loan Documents, and (v) other information

as may be reasonably requested by the DIP ABL Agents or the Creditors' Committee.  The DIP

ABL Loan Parties shall be required to comply with such Approved Budget, including having

made all scheduled payments to the Prepetition ABL Credit Parties and the DIP ABL Credit

Parties, as applicable, and when required, subject to the Permitted Variance (as defined below).

The Approved Budget is attached hereto as Exhibit C. The Approved Budget shall be updated,

modified or supplemented by the DIP ABL Loan Parties (x) with the written consent of the DIP

ABL Agent and each DIP ABL Co-Collateral Agent in their sole and absolute discretion and (y)

upon the request of DIP ABL Agent or any DIP ABL Co-Collateral Agent from time to time

(which request may, without limitation, be made in connection with any Specified Transaction or

the commencement, or during the continuation, of the Specified Stores Closing Sales (each as

defined in the DIP ABL Credit Agreement)); *provided, however*, that in the event the DIP ABL

Agent, the DIP ABL Co-Collateral Agents and the DIP ABL Loan Parties cannot agree as to an

updated, modified or supplemented budget, the then current Approved Budget shall continue in

effect, with weekly details for any periods after the 13-week period covered by the then current

Approved Budget to be derived in a manner satisfactory to the DIP ABL Agent and the DIP ABL Co-Collateral Agents in their sole and absolute discretion based on the then current Approved Budget (each such period so approved, an "Extended Budget Period"), and such disagreement shall give rise to an Event of Default upon the later of (x) the end of the period covered by the then current Approved Budget and (y) the end of the then current Extended Budget Period.

(b)    The DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent and the Creditors' Committee a borrowing base certificate presenting the DIP ABL Borrowers' computation of the Borrowing Base (as defined in the DIP ABL Loan Documents) (including appropriate supporting data therefor) (a "Borrowing Base Certificate") as soon as available, but in no event later (i) in the case of a draft of the Borrowing Base Certificate, 5:00 p.m. (Central Time) on Wednesday of each week and (ii) in the case of a final Borrowing Base Certificate, 5:00 p.m. (Central Time) on Thursday of each week (or, if Thursday is not a business day, on the next succeeding business day), in each case, as of the close of business on the immediately preceding Saturday.  The initial Borrowing Base Certificate was delivered as a condition precedent to the Initial Closing Date (as defined in the DIP ABL Term Sheet).  In connection with any disposition or series of related dispositions of any DIP ABL Collateral of a type that is included in the Borrowing Base with a value in excess of $7,500,000 in the aggregate (other than inventory in the ordinary course of business and intercompany transfers among DIP ABL Loan Parties), the DIP ABL Loan Parties shall deliver to the DIP ABL Administrative Agent a roll forward of Eligible Inventory and pro forma Borrowing Base Certificate giving effect to such sale at least one (1) business day prior to the closing of such sale.  In addition, not later than the tenth (10th) day of each month (or later with the consent of the DIP ABL Agents),

commencing with the first full month immediately following the Petition Date, an updated inventory appraisal shall be delivered to the DIP ABL Administrative Agent.

(c)    The DIP ABL Loan Parties shall also provide a  budget variance report (the "Budget Variance Report") for delivery to the DIP ABL Agents and the Creditors' Committee by Wednesday of every week for the most recently ended four-week period included in the Approved Budget showing by line item actual cash receipts, disbursements, inventory receipts and consignment receipts for such four-week period, in comparable form to the Approved Budget, noting therein all the variance, on a cumulative basis, of the DIP ABL Borrowers' total net cash flow excluding proceeds from asset sales (except for proceeds from the sale of inventory) and excluding fees and expenses of the professionals and advisors of the Debtors and the Creditors' Committee, and financing related items (the "Net Cash Flow") for such four-week period in the Approved Budget,  including explanations for any material variance (including whether such variance is permanent in nature or timing related) for such four-week period. Each Budget Variance Report delivered following a Budget Testing Date (as defined below) shall contain an analysis demonstrating compliance with the Approved Budget subject to the Permitted Variance.  The DIP ABL Borrowers will supplement the Weekly Flash Reporting Package and the Budget Variance Report from time to time upon the request of the DIP ABL Agents or the Creditors' Committee.

(d)    The DIP ABL Loan Parties shall be required to comply with each Approved Budget in all material respects, including having made all scheduled payments to the DIP ABL Credit Parties and the Prepetition ABL Credit Parties, as applicable, as and when required, subject to the following (the "Permitted Variance"): the DIP ABL Borrowers' Net Cash Flow shall not be less than an amount equal to the Net Cash Flow set forth in the Approved

Budget minus $42 million. Such covenant shall be tested on Saturday each second week (commencing on November 10, 2018) (but shall be reported each week) on a cumulative basis from the Petition Date until the fourth (4th) week after the Petition Date and then on a rolling four (4) week basis, in accordance with the Budget Variance Report delivered by the DIP ABL Borrowers to the DIP ABL Agents and the Creditors' Committee (each such date, a "Budget Testing Date").

(e)    The DIP ABL Loan Parties shall arrange for separate weekly (unless waived by the DIP ABL Agents and the Creditors' Committee in their sole and absolute discretion) conference calls with the DIP ABL Agents and their professional advisors and the Creditors' Committee's professional advisors discussing and analyzing (A) the Approved Budget or the Budget Variance Reports and/or any other reports or information delivered pursuant to the DIP ABL Loan Documents, (B) the financial operations and performance of the DIP ABL Loan Parties' business, (C) the status of landlord negotiations, (D) the status of any Specified Store Closing Sales, (E) the status of the Chapter 11 Cases generally, (F) progress in achieving compliance with the Case Milestones (as defined below) and the Go Forward Plan (as defined in the DIP ABL Loan Documents) or (G) such other matters relating to the Debtors as the DIP ABL Agents or the Creditors' Committee (or either of their respective agents or advisors) shall reasonably request.

23.    ***Winddown Account.***    (a) Upon the consummation of any sales of Prepetition Unencumbered Collateral, the DIP ABL Loan Parties shall (i) deposit or cause to be deposited the net aggregate cash proceeds in respect of such sales into the Winddown Account[5]

---

[5]    The Winddown Account will be held at Bank of America, N.A. in an account ending in 8965.

until $240,000,000 in the aggregate has been funded into the Winddown Account; *provided* that in no event shall more than $240,000,000 be funded into such account, (ii) deposit or cause to be deposited any remaining net aggregate cash proceeds in respect of such sales into a cash collateral account maintained with Bank of America, N.A. (the "Senior DIP Cash Collateral Account") to secure the payment of the DIP ABL Secured Obligations (including (A) with respect to amounts available to be drawn under outstanding letters of credit issued or deemed issued under the DIP ABL Facility (or indemnities or other undertakings issued pursuant thereto in respect of such outstanding letters of credit), an amount equal to 105% of the aggregate undrawn amount of such letters of credit, and (B) with respect to Bank Products and Cash Management Services (each as defined in the DIP ABL Loan Documents) included in the DIP ABL Secured Obligations (or indemnities or other undertakings issued pursuant thereto in respect thereof), an amount of cash collateral in compliance with the terms of the DIP ABL Credit Agreement), and (iii) upon and after the indefeasible payment in full in cash of the DIP ABL Secured Obligations as described in clause (ii) above, deposit or cause to be deposited any remaining net cash proceeds in respect of such sales into a cash collateral account designated by the Junior DIP Agent (the "Junior DIP Cash Collateral Account") to secure the payment of the Junior DIP Facility, and (b) upon the consummation of any sales of Specified Collateral, the Junior DIP Obligors shall (i) as contemplated in paragraph 23(a)(i), deposit or cause to be deposited the net cash proceeds in respect of such sales into the Winddown Account until $240,000,000 in the aggregate has been funded into the Winddown Account; *provided* that in no event shall more than $240,000,000 be funded into such account, and (ii) deposit or cause to be deposited any remaining net cash proceeds in respect of such sales to the Senior DIP Cash Collateral Account and to the Junior DIP Cash Collateral Account, on a pro rata basis based on

the aggregate commitment under the Junior DIP Facility (i.e., $350,000,000) and the aggregate incremental commitments and extensions of credit under the DIP ABL Facility (i.e., $300,000,000) without giving regard to the roll-up portion thereof, until either the indefeasible payment in full in cash of the DIP ABL Secured Obligations or the Junior DIP Obligations has occurred, after which all such net cash proceeds shall be applied to the payment of the DIP ABL Secured Obligations or the Junior DIP Obligations, respectively, provided that nothing contained in this paragraph 23 shall impair or modify the Reverse Marshaling Provisions and no payments shall be made on the DIP ABL Secured Obligations or the Junior DIP Obligations in contravention thereof.  "Winddown Account" shall mean a deposit account at Bank of America, N.A. that, prior to the discharge and indefeasible payment in full of all obligations under the DIP ABL Facility and the Junior DIP Facility, may only be used to pay winddown costs of the DIP ABL Loan Parties at the discretion of the DIP ABL Loan Parties following entry of this Final Order. Notwithstanding anything to the contrary in this or any other Bankruptcy Court order, the Winddown Account and the amounts on deposit in the Winddown Account shall be available and used only to satisfy winddown costs and shall not be subject to any prepetition liens or any liens or superpriority claims granted hereunder, including liens or superpriority claims granted to the DIP ABL Credit Parties or Junior DIP Credit Parties or as Adequate Protection.  For the avoidance of doubt, the Winddown Account and the amounts on deposit in the Winddown Account shall not constitute DIP ABL Collateral, Junior DIP Collateral or Cash Collateral. Bank of America shall not be responsible or have any liability for, or have any duty to ascertain, inquire into, monitor or enforce, compliance with the provisions of this definition.

24.    ***Modification of DIP ABL Loan Documents***.  Upon no less than three (3) business days' notice to the Creditors' Committee and the Junior DIP Agent (in each case, only to

the extent reasonably practicable), the DIP ABL Loan Parties and the DIP ABL Agents are hereby authorized, subject to the DIP ABL Loan Documents, to implement, in accordance with the terms of the respective DIP ABL Loan Documents, any amendments, waivers, consents or other modifications to or under the DIP ABL Loan Documents (including any change in the number or composition of the DIP ABL Lenders) without further order of this Court unless such amendment, waiver, consent or other modification (a) restricts, limits or prohibits any payments required pursuant to paragraph 19 of this Final Order, (b) shortens the maturity or the scheduled termination date thereunder or (c) effects or relates to the Reverse Marshaling Provisions.

25.    ***Right to Credit Bid.***  Subject to Section 363(k) of the Bankruptcy Code, the DIP ABL Agent and the Prepetition ABL Administrative Agent (subject to obtaining any required consent or direction of the requisite number or percentage of the Prepetition ABL Credit Parties) shall have the right to "credit bid" up to the full allowed amount of their respective claims and outstanding obligations in connection with any sale of all or any portion of the DIP ABL Collateral, including any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code or otherwise.  For the avoidance of doubt, any such credit bid for all or any portion of the DIP ABL Collateral must, upon closing of such sale transaction, provide for payment in full of all senior security interests in and liens on all of the DIP ABL Collateral being acquired in such sale transaction, absent waiver by the DIP ABL Agents.

26.    ***Automatic Perfection of DIP ABL Liens and Adequate Protection Liens.***

(a)    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP ABL Liens and the

Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens and the Adequate Protection Liens, or to entitle the DIP ABL Credit Parties or the Prepetition Credit Parties to the priorities granted herein.

(b)    Notwithstanding the foregoing, the DIP ABL Agents and the Prepetition Agents each are hereby authorized, but not required, to file or record (and to execute in the name of the applicable DIP ABL Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over cash, deposit accounts, securities, or other assets, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP ABL Agents or the Prepetition Agents (as applicable) choose, in their sole discretion, to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over any cash, deposit accounts, securities, or other assets, or otherwise confirm perfection of the liens and security interests granted to the DIP ABL Control Co-Collateral Agent and the Prepetition ABL Control Co-Collateral Agent, respectively, hereunder, such liens and security interests were deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge,

dispute or subordination (subject to the priorities set forth in this Final Order) immediately upon entry of this Final Order, except as set forth in Paragraphs 41 and 42.

(c)     The DIP ABL Loan Parties are authorized to execute and deliver promptly upon demand to the DIP ABL Agents or the Prepetition Agents all such financing statements, mortgages, control agreements, notices and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request.  The DIP ABL Loan Parties are authorized to, and shall, execute and deliver to the DIP ABL Agents and the Prepetition Agents such agreements, financing statements, mortgages, instruments and other documents as the DIP ABL Agents or the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect the DIP ABL Liens or the Adequate Protection Liens; and the failure by the DIP ABL Loan Parties to execute or deliver any documentation relating to the DIP ABL Liens or the Adequate Protection Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

(d)     As set forth in the DIP ABL Loan Documents, Wells Fargo Bank, National Association has appointed Bank of America, N.A., in its capacity as a DIP ABL Co-Collateral Agent, as agent to the DIP ABL Co-Collateral Agents for purposes of filing financing statements, mortgages, control agreements, notices and other documents, in connection with the perfection of a security interest in the DIP ABL Collateral which was granted for the benefit of the DIP ABL Credit Parties (the "DIP ABL Control Co-Collateral Agent"). Each Debtor acknowledges that any and all actions to be taken by the DIP ABL Co-Collateral Agents under the DIP Orders and the DIP ABL Loan Documents, may be taken individually by the DIP ABL Control Co-Collateral Agent, and all such actions shall have the full force and effect as though taken jointly by both of the DIP ABL Co-Collateral Agents. The financing statements described

above may describe the DIP ABL Collateral in the same manner as described herein, in the DIP

ABL Term Sheet and in the DIP ABL Credit Agreement, or may contain an indication or

description of the DIP ABL Collateral that describes such property in any other manner as the

DIP ABL Control Co-Collateral Agent may determine is necessary, advisable or prudent,

including describing such property as "all assets and all personal property whether now owned or

hereafter acquired" of the applicable Debtor or words of similar effect.

(e)     The DIP ABL Agents and the Prepetition Agents, each in their

discretion, may file a photocopy of this Final Order as a financing statement or other notice of

lien or similar instrument, with any filing or recording office or with any registry of deeds or

similar office, and accordingly, each officer is authorized to accept and record the photocopy of

this Final Order, in addition to or in lieu of such financing statements, notices of lien or similar

instrument.   Each Debtor is authorized to execute and deliver to the DIP ABL Agents or

Prepetition Agents, mortgages in recordable form with respect to any real estate constituting DIP

ABL Collateral and identified by any of the DIP ABL Agents or Prepetition Agents on terms

reasonably satisfactory to the DIP ABL Agents or Prepetition Agents, as applicable.

27.     ***Other Automatic Perfection Matters.***   To the extent that any Prepetition

Agent is the secured party under any account control agreements, listed as loss payee or

additional insured under any of the DIP ABL Loan Parties' insurance policies, or is the secured

party under any Prepetition Loan Document, each of the DIP ABL Agents, for itself and on

behalf of the DIP ABL Credit Parties is also deemed to be the secured party under such account

control agreements, loss payee or additional insured under the DIP ABL Loan Parties' insurance

policies, and the secured party under each such Prepetition Loan Document (in any such case

with the same priority of liens and claims thereunder relative to the priority of (a) the DIP ABL

Liens, and (b) the Prepetition Liens and Adequate Protection Liens, in each case, as set forth in this Final Order), and shall have all rights and powers in each case attendant to that position (including rights of enforcement but subject in all respects to the terms of this Final Order), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of the DIP Orders and the DIP ABL Loan Documents.  The Prepetition ABL Control Co-Collateral Agent or the Prepetition Second Lien Collateral Agent, as applicable, shall serve as agent for the DIP ABL Agents for purposes of perfecting the DIP ABL Agents' security interests in and liens on all DIP ABL Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.  All existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements constituting Prepetition ABL Loan Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors, which in each case were filed by any Prepetition ABL Agent, shall in each case be deemed to be delivered and/or filed in connection with the DIP ABL Facility, shall constitute DIP ABL Loan Documents and shall remain in full force and effect without any further action by the Debtors, any DIP ABL Agent or any other person, and in each case the DIP ABL Agents shall be deemed to be a party thereto.

80

28.    ***Proceeds of Subsequent Financing.*** If any of the DIP ABL Loan Parties, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in any of the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt in breach of the DIP ABL Loan Documents, at any time prior to the repayment in full in cash of all DIP ABL Secured Obligations, or all Prepetition ABL Obligations, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the DIP ABL Loan Parties and the DIP ABL Loan Parties' estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agents, or if the DIP ABL Secured Obligations have been paid in full in cash, to the Prepetition ABL Administrative Agent, to be applied in accordance with the this Final Order and the DIP ABL Loan Documents, the Prepetition ABL Loan Documents and the Prepetition Loan Documents, as applicable.

29.    ***Maintenance and Disposition of DIP ABL Collateral / Cash Management.***    Until the indefeasible payment in full in cash of all DIP ABL Secured Obligations, and the termination of the obligation of the DIP ABL Credit Parties to extend credit under the DIP ABL Facility, the DIP ABL Loan Parties shall (a) maintain and insure the DIP ABL Collateral in amounts, for the risks, and by the entities as required under the DIP ABL Loan Documents, (b) except as set forth in this paragraph 29, maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP ABL Loan Documents; (ii) subject to the Cash Management Order,[6] as may be modified, with the prior written consent

---

[6]    "<u>Cash Management Order</u>" means an interim or final order granting the *Motion Of Debtors For Authority To (I) Continue  Using Existing Cash Management System, Bank Accounts,  And Business Forms, (II) Implement Ordinary Course Changes  To Cash Management System, (III) Continue Intercompany Transactions, And (IV) Provide Administrative Expense Priority  For Postpetition Intercompany Claims And Related Relief.*

of the DIP ABL Agents by any order that may be entered by this Court; and (iii) in a manner which, in any event, shall be satisfactory to the DIP ABL Agents. Other than as expressly required pursuant to the DIP ABL Loan Documents, the Cash Management Order or the DIP Orders, no modifications to the DIP ABL Loan Parties' cash management system existing as of the Petition Date may be made without the prior approval of the DIP ABL Agents. Further, the DIP ABL Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Collateral or Prepetition ABL Collateral other than in the ordinary course of business without the prior consent of the DIP ABL Agents and Prepetition ABL Agents, as applicable (and no consent shall be implied, from any other action, inaction or acquiescence by the DIP ABL Agents or Prepetition ABL Agents, or from any order of this Court), except as otherwise provided for in the DIP ABL Loan Documents or otherwise ordered by the Bankruptcy Court.

30. ***Bank Products and Cash Management Services.*** From and after the date of the entry of the Interim Order, and consistent with the DIP Orders and the DIP ABL Loan Documents in all respects, any DIP ABL Cash Management/Bank Product Provider is deemed a Secured Party (as defined in the DIP ABL Loan Documents) and a DIP ABL Credit Party with respect to any claims related to such Bank Products and Cash Management Services (each as defined under the DIP ABL Loan Documents) to the extent provided for under the DIP ABL Loan Documents, and any such Bank Products and Cash Management Services shall constitute a DIP ABL Secured Obligation. From and after the date of the entry of the Interim Order, the DIP ABL Loan Parties were and continue to be authorized to request the continuation of letters of credit issued under the Prepetition LC Facility Agreement that are outstanding as of the Petition Date (but no new letters of credit), subject to and in accordance with the terms of the Prepetition

LC Facility Agreement. Claims of the Prepetition LC Facility Credit Parties under the Prepetition LC Facility Agreement shall continue to be secured by the Prepetition ABL Liens in the Prepetition ABL Collateral.

31. ***Application of Proceeds of Collateral, Payments and Collections.*** After repayment in full in cash of all DIP ABL Secured Obligations, any remaining proceeds of the DIP ABL Collateral shall be applied to the DIP ABL Loan Parties' remaining outstanding and unpaid obligations, in a manner consistent with the Bankruptcy Code and, except as may be otherwise ordered in one or more orders of this Court, in accordance with the rights and priorities set forth in the DIP Orders.

32. ***Case Milestones.*** The DIP ABL Loan Parties shall comply with the case milestones set forth in the DIP ABL Loan Documents (as may be amended from time to time in accordance with the DIP ABL Loan Documents, the "Case Milestones"). For the avoidance of doubt, the failure of the DIP ABL Loan Parties to comply with any of the Case Milestones shall (a) constitute an Event of Default under the DIP ABL Loan Documents and this Final Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the DIP ABL Loan Parties' authority to use Cash Collateral under this Final Order; and (c) permit the DIP ABL Administrative Agent, subject to paragraph 34, to exercise the rights and remedies provided for in this Final Order and the DIP ABL Loan Documents.

33. ***Termination Event.*** (a) The occurrence of  any Event of Default (as defined in the DIP ABL Loan Documents), or (b) noncompliance of the DIP ABL Loan Parties in any material respect or in a manner adverse to the DIP ABL Credit Parties with any of the

terms, provisions, conditions, covenants or obligations under the DIP Orders are each referred to herein as a "Termination Event."

34.   ***Rights and Remedies Following a Termination Event.***

(a)   *Termination.* Immediately upon the occurrence and during the continuation of a Termination Event, with no further action of this Court, the DIP ABL Administrative Agent may (or at the direction of the Required Lenders (as defined in the DIP ABL Loan Documents) shall), notify the DIP ABL Loan Parties, the Junior DIP Agent and the Creditors' Committee in writing that a Termination Event has occurred and is continuing (such notice, a "Termination Notice," and the date of any such notice, the "Termination Notice Date").

(b)   *Notice of Termination.* Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Junior DIP Agent, counsel to the Creditors' Committee, the U.S. Trustee, and counsel to each of the Prepetition Agents. The Remedies Notice Period shall commence on the Termination Notice Date and shall expire five (5) business days after the Termination Notice Date (the "Remedies Notice Period" and the date of the expiration of the Remedies Notice Period, the "Termination Date").

(c)   Without limiting the rights and remedies of the DIP ABL Agents and the other DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Administrative Agent may, at its option, and/or shall, upon the direction of the Required Lenders (as defined in the DIP ABL Loan Documents), as applicable, immediately upon the occurrence of and during the continuation of a Termination Event following the issuance of a Termination Notice, *inter alia*, without notice and unless the Bankruptcy Court orders otherwise, (a) declare, subject to expiration of the Remedies Notice Period, all obligations owing under the applicable

DIP ABL Loan Documents to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP ABL Loan Parties, (b) declare the termination, reduction or restriction of any further commitment to extend credit to the DIP ABL Loan Parties to the extent any such commitment remains, (c) terminate the DIP ABL Facility and the applicable DIP ABL Loan Documents as to any future liability or obligation of the DIP ABL Agents, any DIP ABL Lender, or any other DIP ABL Credit Party, but without affecting any of the liens or the obligations and/or (d) declare a termination, reduction or restriction on the ability of the DIP ABL Loan Parties to use any Cash Collateral and exercise all other rights and remedies provided in the DIP ABL Loan Documents and applicable law, including to require the DIP ABL Loan Parties to cash collateralize any letters of credit outstanding under the DIP ABL Facility in accordance with the DIP ABL Loan Documents (any of the actions set forth in the foregoing (a), (b), (c) and (d), a "Termination").

(d)       During the Remedies Notice Period, the DIP ABL Loan Parties shall be entitled to seek an emergency hearing with this Court for the purpose of contesting a Termination or for the contested use of Cash Collateral; *provided* that the sole issues that may be raised before the Bankruptcy Court at such emergency hearing are whether a Termination Event has occurred and/or is continuing and the contested use of Cash Collateral.  During the Remedies Notice Period, the DIP ABL Loan Parties may continue to use the DIP ABL Collateral, including Cash Collateral, solely to meet payroll obligations (excluding any severance obligations) and pay expenses that the DIP ABL Agents approve as critical to keeping the DIP ABL Loan Parties' business operating in accordance with the Approved Budget, or as otherwise agreed by the DIP ABL Administrative Agent in its sole and absolute discretion and it being understood that none of the DIP ABL Credit Parties shall have any obligation to make an extension of credit under the

DIP ABL Facility, or otherwise to fund the Carve-Out Account.   Upon expiration of the Remedies Notice Period, the DIP ABL Credit Parties or, upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Credit Parties, shall be permitted to exercise all remedies set forth herein, in the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Bankruptcy Court.  Upon the occurrence and during the continuation of a Termination Event and the expiration of the Remedies Notice Period, the DIP ABL Administrative Agent, or upon payment in full of the DIP ABL Secured Obligations, the Prepetition ABL Administrative Agent, and any liquidator or other professional acting on their behalf will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the DIP ABL Loan Parties have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP ABL Collateral, including pursuant to any Court approved sale process.   Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Bankruptcy Court following notice and a hearing.

35.    ***Modification of Automatic Stay.***   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms and provisions of the DIP Orders, including to (a) permit the DIP ABL Loan Parties to grant the DIP ABL Liens, the DIP ABL Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims; (b) permit the DIP ABL Agents, the Prepetition LC Facility Administrative Agent, or the Prepetition ABL Agents, as applicable, to take any actions permitted hereunder, including but not limited to the actions set forth in paragraph 26 hereof; and (c) authorize the DIP ABL Loan Parties to pay, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties to retain and apply, payments made in accordance with the DIP Orders and the DIP Intercreditor Agreement.

36. ***Good Faith***.

(a)      *Good Faith Under Section 364 of the Bankruptcy Code*.  The DIP ABL Credit Parties have acted in good faith in connection with the DIP Orders, including the negotiation and approval of the DIP Intercreditor Agreement, the Interim Junior DIP Order, the Junior DIP Loan Documents and their reliance on the DIP Orders, the Interim Junior DIP Order, the Junior DIP Loan Documents and DIP Intercreditor Agreement is in good faith.  Based on the findings set forth in the DIP Orders and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the DIP Orders are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the DIP ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the DIP ABL Secured Obligations or any lien, claim or priority authorized or created thereby, the DIP Intercreditor Agreement, and/or any of the DIP ABL Documents.  Any liens or claims granted to the DIP ABL Credit Parties hereunder arising prior to the effective date of any such

modification, amendment or vacatur of the DIP Orders shall be governed in all respects by the original provisions of the DIP Orders, including entitlement to all rights, remedies, privileges and benefits granted therein.

(b)     *Prepetition ABL Credit Parties*.   The Prepetition ABL Credit Parties have acted in good faith in connection with the DIP Orders, the Interim Junior DIP Order, the Junior DIP Loan Documents and their reliance on the DIP Orders, Interim Junior DIP Order, and Junior DIP Loan Documents is in good faith.   Based on the findings set forth in the DIP Orders and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the DIP Orders are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the Prepetition ABL Credit Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.   Any such modification, amendment or vacatur shall not affect the validity and enforceability of the Prepetition ABL Obligations, or any lien, claim or priority authorized or created thereby.   Any liens or claims granted to the Prepetition ABL Credit Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of the DIP Orders shall be governed in all respects by the original provisions of the DIP Orders, including entitlement to all rights, remedies, privileges and benefits granted therein.

37.     ***Proofs of Claim.***   Any order entered by the Bankruptcy Court establishing a bar date for any claims (including administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to any DIP ABL Credit Party or any Prepetition ABL Credit Party (for purposes of this paragraph 37, in their respective capacities as such).   The DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall not be required to file proofs of claim

or requests for approval of administrative expenses authorized by the DIP Orders in any of the Chapter 11 Cases or any Successor Case, and the provisions of the DIP Orders relating to the amount of the DIP ABL Secured Obligations, the Prepetition ABL Obligations, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to the DIP Orders, the Prepetition ABL Liens, the DIP ABL Liens and the DIP ABL Superpriority Claims shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status.  For the avoidance of doubt, subject to the reservation of rights set forth in paragraphs 41 and 42 hereof, the books and records of the DIP ABL Agents, the Prepetition ABL Administrative Agent and the Prepetition LC Facility Administrative Agent and each of their respective successors and assigns shall be deemed conclusive as to the amount of the claims of each such party.  However, in order to facilitate the processing of claims, to ease the burden upon the Bankruptcy Court and to reduce an unnecessary expense to the DIP ABL Loan Parties' estates, the Prepetition ABL Administrative Agent is authorized, but not directed or required, to file in the Prepetition ABL Loan Parties' lead chapter 11 case, a single, master proof of claim on behalf of themselves and the Prepetition ABL Credit Parties on account of any and all of their respective claims arising under the Prepetition ABL Loan Documents, as applicable, and hereunder (the "Master Proof of Claim") against each of the Prepetition ABL Loan Parties.  Upon the filing of the Master Proof of Claim against each of the Prepetition ABL Loan Parties, the Prepetition ABL Administrative Agent, and the Prepetition ABL Credit Parties, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claim of any type or nature whatsoever with respect to the Prepetition ABL Loan Documents, and the claim of each Prepetition ABL Credit Party (and each of its respective successors and assigns) named in the

Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the applicable Chapter 11 Cases.  The Prepetition ABL Administrative Agent shall not be required to identify whether any Prepetition ABL Credit Party acquired its claim from another party and the identity of any such party or to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 37 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of any Prepetition ABL Credit Party (or its successor in interest) to vote separately on any plan proposed in any of the applicable Prepetition ABL Loan Parties' Chapter 11 Cases. The Prepetition ABL Administrative Agent shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Prepetition ABL Loan Parties to the Prepetition ABL Credit Parties, as applicable, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition ABL Administrative Agent.

38.    ***Rights of Access and Information.***  Without limiting the rights of access and information afforded the DIP ABL Credit Parties under the DIP ABL Loan Documents, the DIP ABL Loan Parties shall be, and hereby are, required to afford Representatives, agents and/or employees of the DIP ABL Agents reasonable access to: (a) the DIP ABL Loan Parties' premises, (b) knowledgeable officers of the DIP ABL Loan Parties, (c) the DIP ABL Loan Parties' books and records, and (d) the DIP ABL Loan Parties' properties and other collateral of any Debtor against whom such parties are granted DIP ABL Liens, DIP ABL Superpriority Claims, Adequate Protection Liens, or Adequate Protection Claims under the DIP Orders and the DIP ABL Loan Parties shall reasonably cooperate, consult with, and provide to such persons all

such information as may be reasonably requested.  Without limiting any other rights or remedies

of the DIP ABL Agents or the other DIP ABL Credit Parties, or otherwise available at law or in

equity, and subject to the terms of the DIP ABL Loan Documents unless otherwise ordered by

the Bankruptcy Court, upon three (3) business days' written notice to counsel to the DIP ABL

Loan Parties, counsel to the Creditors' Committee and any landlord, lienholder, licensor, or other

third party owner of any leased or licensed premises or intellectual property, after the expiration

of the Remedies Notice Period, that a Termination Event has occurred and is continuing, the DIP

ABL Agents, (i) may, unless otherwise expressly provided in any separate agreement by and

between the applicable landlord or licensor and the DIP ABL Agents (the terms of which shall be

reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the

DIP ABL Loan Parties for the purpose of exercising any remedy with respect to DIP ABL

Collateral located thereon, and (ii) shall be entitled to all of the DIP ABL Loan Parties' rights and

privileges as lessee or licensee under the applicable license and to use any and all trademarks,

trade names, copyrights, licenses, patents, or any other similar assets of the DIP ABL Loan

Parties, which are owned by or subject to a lien of any third party and which are used by DIP

ABL Loan Parties in their businesses, in either the case of (i) or (ii), without interference from

lienholders or licensors thereunder; *provided*, *however*, that the DIP ABL Agents (on behalf of

the applicable DIP ABL Lenders) shall pay only rent and additional rent, fees, royalties, or other

monetary obligations of the DIP ABL Loan Parties under, and solely as required by, the

applicable lease and any amendments thereto that accrue during the period of such occupancy or

actual use by DIP ABL Agents calculated on a per diem basis. Nothing herein shall require the

DIP ABL Loan Parties, the DIP ABL Agents or the other DIP ABL Credit Parties, to assume any

lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to

the DIP ABL Agents and the other DIP ABL Credit Parties herein.    Notwithstanding the foregoing, the DIP ABL Agents' or Prepetition ABL Agents' exercise of remedies pursuant to this paragraph with respect to real property leases shall be subject to: (i) any agreement in writing between any of the DIP ABL Agents or the Prepetition ABL Agents, as applicable, and any applicable landlord, (ii) pre-existing rights of any of the DIP ABL Agents or any of the Prepetition ABL Agents, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Bankruptcy Court following notice and a hearing.

39.    ***Intercompany Obligations.***    To the extent any Debtor owes any post-petition intercompany obligation or indebtedness to any other Debtor (the "Intercompany Obligations"), such Intercompany Obligations shall, subject to the reservation of rights set forth in paragraphs 41 and 42 hereof, be subordinated only to the DIP ABL Secured Obligations, until the DIP ABL Secured Obligations are indefeasibly repaid in full in cash and the Junior DIP Secured Obligations until the Junior DIP Secured Obligations are indefeasibly paid in full.    All Intercompany Obligations incurred after the Petition Date ("Postpetition Intercompany Obligations") shall be secured by an automatically perfected security interest in and lien on, as to any Debtor transferee, all DIP ABL Collateral including all Prepetition ABL Collateral, Prepetition Encumbered Collateral and Prepetition Unencumbered Collateral of the transferee for the benefit of the Debtor transferor (the "Postpetition Intercompany Liens") junior to the Carve-Out, the DIP ABL Liens, the Senior Permitted Liens, the Junior DIP Liens, the Adequate Protection Liens (other than the Prepetition Second Lien Adequate Protection Liens), and the Prepetition ABL Liens, and senior to all other liens, and as to any non-Debtor transferee, liens on all assets and property of such transferee.    For the avoidance of doubt, any reference in this Final

Order to payment (or repayment) in full shall mean: (a) indefeasible repayment of all outstanding obligations in full in cash, (b) termination or expiration of all commitments under any applicable DIP ABL Loan Documents or Prepetition ABL Loan Documents and termination or expiration of any other commitment of any DIP ABL Credit Parties or Prepetition ABL Credit Parties to make extensions of credit to any of the DIP ABL Loan Parties under any such DIP ABL Loan Documents or Prepetition ABL Loan Documents, respectively, (c) all letters of credit issued or deemed issued under the DIP ABL Loan Documents have been canceled or have expired, and all amounts drawn thereunder have been reimbursed in full in cash (or other arrangements with respect thereto satisfactory to the DIP ABL Agents in their sole discretion shall have been made), and (d) solely with respect to the Prepetition ABL Obligations (i) if no Challenge Proceeding has been timely and properly commenced with respect to the prepetition obligations subject to the ABL Roll Up, the expiration of the Challenge Period, or (ii) the date on which any order entered by the Bankruptcy Court in favor of the applicable secured party in such Challenge Proceeding becomes final and non-appealable. For the avoidance of doubt, any Intercompany Obligations shall be subordinated to the DIP ABL Secured Obligations, the DIP ABL Liens, the Adequate Protection Liens (other than Second Lien Facilities Adequate Protection Liens), and the Adequate Protection Claims (other than Second Lien Facilities Superpriority Claims), except to the extent set forth on the lien priority chart in paragraph 15. The Debtors shall establish reasonable procedures (reasonably acceptable to the Creditors' Committee, the DIP ABL Agents, and the Prepetition Second Lien Credit Parties) to trace cash proceeds from the sale of inventory of the Debtors and to track liabilities and payables of the Debtors, including shared services and professional fees and costs (collectively, the "Allocable Costs"), on an entity by entity basis, including without limitation between obligors and non-obligors under the Prepetition Second

Lien Obligations, and to report the same to the Creditors' Committee, the DIP ABL Agents and

the Prepetition Second Lien Credit Parties on a monthly basis. At the time of repayment or

treatment of the Postpetition Intercompany Obligations pursuant to a chapter 11 plan or

otherwise, the Debtors, the Creditors' Committee, the DIP ABL Agents and the Prepetition

Second Lien Credit Parties agree to cooperate in good faith to propose and adopt a fair and

reasonable allocation of all Allocable Costs on an entity by entity basis.

40. ***Prohibited Use of DIP ABL Facility, DIP ABL Collateral, Cash
Collateral, Carve-Out, etc.*** Notwithstanding anything herein, prior to indefeasible payment in

full in cash of the DIP ABL Secured Obligations and the Prepetition ABL Obligations, except as

otherwise expressly provided in this Final Order, the DIP ABL Facility, the DIP ABL Collateral,

the Cash Collateral, the Prepetition ABL Collateral, proceeds of any of the foregoing, and the

Carve-Out may not be used:

(a)    for the payment of interest and principal with respect to Prepetition
Obligations or any other prepetition indebtedness of the Debtors, except
for: (i) the Carve-Out; (ii) prepetition employee wages, benefits and
related employee taxes as of the Petition Date; (iii) prepetition sales, use
and real property taxes; (iv) prepetition amounts due in respect of
insurance financings, premiums and brokerage fees; (v) payment of certain
expenses (which expenses shall include fees and expenses of
professionals) of the Prepetition ABL Agents and the Prepetition ABL
Credit Parties (solely as required under the Prepetition Loan Documents);
(vi) other "first day" interim and final orders permitting payment of
prepetition claims, in the case of (ii) through (vi) pursuant to an order or
orders of the Bankruptcy Court in form and substance acceptable to the
DIP ABL Agents in their sole and absolute discretion and subject to and in
accordance with the Approved Budget; (vii) the ABL Roll Up; and (viii)
other indebtedness to the extent authorized by the Bankruptcy Court and
set forth in the Approved Budget;

(b)    subject to this Final Order in connection with or to finance in any way any
action, suit, arbitration, proceeding, application, motion or other litigation
or threatened litigation (including any investigation in connection with

such litigation or threatened litigation) of any type adverse to the rights, remedies, claims or defenses of the DIP ABL Credit Parties[7] or the Joint Lead Arrangers under the DIP ABL Loan Documents or the Prepetition ABL Credit Parties under the Prepetition ABL Loan Documents, and/or the DIP Orders, including for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (A) invalidating, setting aside, avoiding, challenging, or subordinating, in whole or in part, the DIP ABL Secured Obligations, DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payments pursuant to the DIP Orders; (B) for monetary, injunctive, declarative or other affirmative relief against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties or their respective collateral; or (C) preventing, hindering or otherwise delaying the exercise by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties of any rights and remedies under the DIP Orders, the DIP ABL Loan Documents, the Prepetition ABL Loan Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Bankruptcy Court or otherwise) by the DIP ABL Credit Parties or the Prepetition ABL Credit Parties upon any of their respective collateral;

(c)    to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, without prior written consent of the DIP ABL Agents, unless otherwise set forth in the Approved Budget;

(d)    to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests of the Debtors (including so-called "topping fees," "exit fees" and other similar amounts), except as approved by the Bankruptcy Court, without prior written consent by the DIP ABL Agents, unless otherwise included in the Approved Budget;

(e)    to object to, contest, or interfere with, in any way, the DIP ABL Credit Parties' or the Prepetition ABL Credit Parties' enforcement or realization upon any of the Prepetition ABL Collateral or DIP ABL Collateral once a Termination Event has occurred, except as provided for in the DIP Orders, or seek to prevent the DIP ABL Credit Parties or the Prepetition ABL Credit Parties from credit bidding in connection with any proposed plan of

---

[7]    For the purposes of this paragraph 40 and paragraphs 41, 44, 45 and 46 the Prepetition ABL Credit Parties do not include ESL or any Non-ESL Insider, in any capacity.

reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code;

(f)    unless in connection with the repayment in full, in cash of the DIP ABL Facility, or the Prepetition ABL Obligations, as applicable, to use or seek to use Cash Collateral while the DIP ABL Secured Obligations, the Prepetition ABL Obligations and/or any of the DIP ABL Credit Parties' commitments under the DIP ABL Loan Documents remain outstanding, without the consent of the DIP ABL Agents, or the Prepetition ABL Administrative Agent, as applicable, other than during the Remedies Notice Period during which period the DIP ABL Loan Parties may only use Cash Collateral in accordance with the terms of the DIP Orders;

(g)    to use or seek to use any insurance or tax refund proceeds constituting DIP ABL Collateral or Prepetition ABL Collateral other than solely in accordance with the Approved Budget and the DIP ABL Loan Documents;

(h)    to incur indebtedness other than in accordance with the Approved Budget or the DIP ABL Loan Documents without the prior consent of the DIP ABL Agent;

(i)    to object to or challenge in any way the claims, liens, or interests held by or on behalf of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, however, that not more than $100,000 in the aggregate of proceeds of the Carve-Out, any Cash Collateral, or any proceeds of the DIP ABL Facility, the DIP ABL Collateral or the Junior DIP Facility may be used by the Creditors' Committee for purposes of investigating such claims, liens, or interests of the Prepetition ABL Credit Parties pursuant to paragraphs 41 and 42 (but not to litigate any of the foregoing);

(j)    to assert, commence, prosecute or support any claims or causes of action whatsoever, including any Avoidance Action, against the DIP ABL Credit Parties or the Prepetition ABL Credit Parties; provided, that the foregoing shall not be construed to prohibit the Debtors from responding to discovery requests as required in their reasonable business judgment in consultation with legal counsel;

(k)    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, perfection, priority, or enforceability of, or seek equitable relief from any of the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to the DIP Orders or any other rights or interests of the DIP ABL Credit Parties or the Prepetition ABL Credit Parties;

(l)    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of, or seek equitable relief from, any of the DIP ABL Secured Obligations, the DIP ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Liens, or the DIP ABL Superpriority Claims;

(m)     to sell or otherwise dispose of the DIP ABL Collateral or the Prepetition ABL Collateral other than as contemplated by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable; or

(n)     for any purpose otherwise limited by the DIP ABL Loan Documents or the Prepetition ABL Loan Documents, as applicable.

41.     ***Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.***  The stipulations and admissions contained in the DIP Orders, including the Debtors' Stipulations, shall be binding on the Debtors and any successors thereto in all circumstances. The Debtors' Stipulations shall be binding on the Debtors' estates and each other party in interest, including the Creditors' Committee, unless, and solely to the extent that (a) any such party in interest, including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors' Committee), and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, with standing and requisite authority, has timely commenced an adversary proceeding (subject to the limitations set forth in paragraphs 41 and 42 hereof) against the Prepetition ABL Credit Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "Representatives") in connection with any matter related to the Prepetition ABL Loan Documents or the Prepetition ABL Collateral (a "Challenge Proceeding") by no later than on or before 60 days after entry of this Final Order (the "Challenge Period"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding, *provided that* in the event that the Creditors' Committee files a motion seeking standing to pursue a Challenge Proceeding against any Prepetition Credit Party (a "Standing Motion") by no later

than on or before 60 days after entry of this Final Order, the Challenge Period shall be extended, solely with respect to the Challenge Proceeding for which the Creditors' Committee seeks standing pursuant to the Standing Motion, to the date that is the earlier of entry of a final non-appealable order (i) denying any Standing Motion or (ii) finding against the Creditors' Committee in connection with any Challenge Proceeding; *provided, further,* that the hearing with respect to the Standing Motion shall not be adjourned without the written consent of the DIP ABL Agents unless otherwise ordered by the Bankruptcy Court.  Any complaint or motion for standing filed in, or in connection with, any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and include a substantially final complaint, and any challenges or claims not so specified in the standing motion shall be deemed forever waived, released, and barred and the Challenge Period shall not be extended for such challenges or claims.  Upon the expiration of the Challenge Period, without the filing of a Challenge Proceeding:

(a)     any and all such Challenge Proceedings and objections by any party (including any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred;

(b)     all matters not subject to the Challenge Proceedings, including all findings, the Debtors' Stipulations, all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition ABL Credit Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Case;

(c)     any and all prepetition claims or causes of action against the Prepetition ABL Credit Parties, as applicable, relating in any way to the Prepetition ABL Loan Parties or the Prepetition ABL Loan Documents, as applicable, shall be forever waived and released by the Debtors, the Debtors' estates, all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Case;

(d)    to the extent not theretofore repaid, the Prepetition ABL Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction (except as may be provided by section 506(a) of the Bankruptcy Code), defense or avoidance, for all purposes in these Chapter 11 Cases or any Successor Case;

(e)    the Prepetition ABL Liens on the Prepetition ABL Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and

(f)    the obligations under the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral shall not be subject to any other or further challenge by the Debtors, the Creditors' Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a chapter 7 or chapter 11 trustee and/or examiner appointed or elected for any of the Debtors with respect thereto).

42.    If any Challenge Proceeding is timely commenced, the admissions and stipulations contained in the DIP Orders, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Creditors' Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final, non-appealable order) in such Challenge Proceeding. Nothing in the DIP Orders vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including claims and defenses with respect to the Prepetition ABL Loan Documents and the Prepetition ABL Liens on the Prepetition ABL Collateral. Notwithstanding anything to the contrary in the DIP Orders, the DIP ABL Loan Documents, or the Prepetition Loan Documents, but subject to the Approved Budget, none of the Debtors, acting through the Restructuring Committee and Restructuring Subcommittee, as applicable, of the Board of Directors of Holdings or the Creditors' Committee shall be prohibited from investigating or pursuing any estate causes of action against ESL, in any

capacity, or from funding such actions from the proceeds of the DIP ABL Facility or the Carve-Out so long as it does not affect in any manner the Prepetition ABL Credit Parties or the DIP ABL Credit Parties, in each case, other than ESL.

43. ***No Third Party Rights.*** Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

44. ***Limitations on Charging Expenses.*** No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP ABL Credit Parties with respect to the DIP ABL Collateral or the Prepetition ABL Credit Parties with respect to the Prepetition ABL Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior written consent of each of the DIP ABL Agents, any DIP ABL Credit Party, and/or any Prepetition ABL Credit Party, as applicable, and no such consent shall be implied from this Final Order or any other action, inaction, or acquiescence by any such agents or lenders.

45. ***Section 552(b).*** The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP ABL Credit Parties or the Prepetition ABL Credit Parties, with respect to proceeds, products, offspring or profits of any of the Prepetition ABL Collateral or the DIP ABL Collateral.

46. ***No Marshaling/Applications of Proceeds.*** Neither the DIP ABL Credit Parties nor the Prepetition ABL Credit Parties shall be subject to the equitable doctrine of

"marshaling" or any other similar doctrine with respect to any of the DIP ABL Collateral or the Prepetition ABL Collateral except as set forth herein.

47.    ***Discharge Waiver.***    The Debtors expressly stipulate, and the Bankruptcy Court finds and adjudicates that, none of the DIP ABL Secured Obligations, the DIP ABL Superpriority Claims, the DIP ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, or any adequate protection payment obligations pursuant to the DIP Orders, shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP ABL Secured Obligations and the Adequate Protection Claims have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

48.    ***Rights Preserved.***    Other than as expressly set forth in the DIP Orders, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP ABL Credit Parties and the Prepetition ABL Credit Parties are preserved.  Nothing contained herein shall be deemed to prevent the Prepetition ABL Credit Parties from requesting additional adequate protection or from arguing that the adequate protection granted herein does not in fact adequately protect the Prepetition ABL Credit Parties against any post-petition diminution in value of the Prepetition ABL Collateral.

49.    ***Release.***    Subject to paragraphs 41 and 42 and as further set forth in the DIP ABL Loan Documents, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any Successor Case) and any party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or future DIP ABL Agents and other current or future DIP ABL Credit Parties, the Joint

Lead Arrangers (as defined in the DIP ABL Loan Documents), the current or future Prepetition ABL Administrative Agent, Prepetition LC Facility Administrative Agent and other current or future Prepetition ABL Credit Parties and each of their respective participants and each of their respective affiliates, and each of their respective Representatives (each of the foregoing only in their capacity as such), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP ABL Facility, the DIP ABL Loan Documents, the Prepetition ABL Facility, the Prepetition ABL Loan Documents, or the transactions and relationships contemplated hereunder or thereunder, including (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, the Prepetition LC Facility Administrative Agent and the other Prepetition ABL Credit Parties; and (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP ABL Secured Obligations, the DIP ABL Liens, the DIP ABL Superpriority Claims, the Prepetition ABL Obligations, the Prepetition ABL Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any adequate protection payment

102

obligations pursuant to the DIP Orders, *provided*, *however*, that the foregoing release shall not release any claims for fraud or willful misconduct, *provided, further* that ESL or any Non-ESL Insider, in any capacity, shall not be entitled to a release pursuant to this paragraph; *provided further*, that ESL shall not be permitted to become a DIP ABL Credit Party, other than in its capacity as a Prepetition LC Facility Credit Party, without a further order of the Bankruptcy Court.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP ABL Loan Documents or of ESL or any Non-ESL Insider. Furthermore, any releases or exculpation required to be granted under an Acceptable Plan of Reorganization, as defined in the in the DIP ABL Credit Agreement, shall not be required to include ESL and Non-ESL Insiders.

50.     ***No Waiver by Failure to Seek Relief.***  The failure or delay of the DIP ABL Credit Parties or the Prepetition Credit Parties to seek relief or otherwise exercise their respective rights and remedies under the DIP Orders, the Prepetition Loan Documents, the DIP ABL Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP ABL Credit Parties or the Prepetition Credit Parties.

51.     ***Binding Effect of Final Order; Successors and Assigns.***  Immediately upon entry by the Bankruptcy Court (notwithstanding any applicable Bankruptcy Rules or any other law or rule to the contrary), the terms and provisions of this Final Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP ABL Credit Parties, and the Prepetition ABL Credit Parties, and their respective successors and assigns; *provided* that ESL shall not be permitted to have any interest in any DIP ABL Secured Obligations either directly or indirectly, including by

participation or otherwise, and any such interest shall be void *ab initio*. The DIP ABL Agents shall not be responsible or have any liability for, or have any duty to ascertain, inquire into, monitor or enforce, compliance with the provisions of this Final Order or the DIP ABL Loan Documents relating to whether a prospective transferee, assignee or participant is an eligible assignee or permitted participant, nor shall the DIP ABL Agents have any liability with respect to or arising out of any assignment or participation of loans or commitments, or disclosure of confidential information, to any person that is not an eligible assignee; *provided* that any transfer, assignment, participation or other similar transaction to a person that is not an eligible assignee shall be void *ab initio*. To the extent there is any applicable stay of this Final Order, it is hereby waived.

52. ***No Modification of Final Order.*** The Debtors irrevocably waive the right to seek and shall not seek or consent, directly or indirectly without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, which consent of the DIP ABL Agents or Prepetition ABL Agents may be refused in their sole and absolute discretion: (a) any modification, stay, vacatur or amendment to the DIP Orders; (b) other than the Carve-Out, a priority claim for any administrative expense or unsecured claim against the Debtors to the fullest extent permitted under the Bankruptcy Code in the Chapter 11 Cases or any Successor Case, equal or superior to the Adequate Protection Claims and the DIP ABL Superpriority Claims; (c) any order allowing use of Cash Collateral constituting DIP ABL Collateral other than the DIP Orders; (d) any lien on any of the DIP ABL Collateral, with priority equal or superior to the Adequate Protection Liens (other than the Permitted Prior Liens and the DIP ABL Liens). The Debtors irrevocably waive any right to seek any amendment, modification or extension of the DIP Orders without the prior written consent of the DIP ABL Agents and the Prepetition

ABL Agents, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition ABL Credit Parties or the DIP ABL Credit Parties.

53.     ***Final Order Controls.***    In the event of any inconsistency between the terms and conditions of the DIP ABL Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

54.     ***Survival.***    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Case; or (d) pursuant to which the Bankruptcy Court abstains from hearing the Chapter 11 Cases or any Successor Case.  The terms and provisions of this Final Order, subject to paragraphs 41 and 42, including the claims, liens, security interests and other protections granted to the Prepetition Credit Parties and the DIP ABL Credit Parties pursuant to this Final Order and/or the Prepetition Loan Documents (other than as modified hereby), notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Final Order until all DIP ABL Secured Obligations, all Prepetition ABL Obligations, all Prepetition Second Lien Obligations, all Adequate Protection Claims, and any adequate protection payment obligations pursuant to this Final Order, have been paid in full.

55.     ***Preservation of Rights Granted Under this Final Order***.

(a)     Except as expressly provided herein or in the DIP ABL Loan Documents, no claim (to the fullest extent permitted under the Bankruptcy Code) or lien having a

priority senior to or *pari passu* with that granted by the DIP Orders to the DIP ABL Credit Parties shall be granted while any portion of the DIP ABL Secured Obligations remain outstanding, and the DIP ABL Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP ABL Secured Obligations and Prepetition ABL Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP ABL Loan Documents and shall terminate the right of the DIP ABL Loan Parties to use Cash Collateral if any of the Debtors seek, or if there is entered (i) any stay, vacatur, rescission, modification, amendment, or extension of the Interim Order or this Final Order without the prior written consent of the DIP ABL Agents, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP ABL Agents; (ii) an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of these Chapter 11 Cases; (iii) [reserved]; or (iv) any other order granting adequate protection or authorizing the use of Cash Collateral without the prior written consent of the DIP ABL Agents and the Prepetition ABL Agents, and no such consent shall be implied by any other action, inaction, or acquiescence by any of the DIP ABL Agents and the Prepetition ABL Agents.  If an order dismissing or converting any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered this Court shall retain jurisdiction, to the extent it has jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the claims, liens and security interests referred to paragraph 54.

(c)      If any or all of the provisions of the DIP Orders are hereafter reversed, modified, vacated or stayed or any order is entered dismissing any of the Chapter 11 Cases or converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, such reversal, stay, modification, vacatur, conversion, or dismissal shall not affect (i) the validity, priority or enforceability of any DIP ABL Secured Obligations, the Adequate Protection Claims, or any adequate protection payment obligations pursuant to the DIP Orders incurred prior to the actual receipt of written notice by the DIP ABL Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority, or enforceability of the DIP ABL Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of DIP ABL Collateral and Prepetition ABL Collateral (including Cash Collateral), any DIP ABL Secured Obligations, any Adequate Protection Claims, or any adequate protection payment obligations pursuant to the DIP Orders incurred by the DIP ABL Loan Parties to the DIP ABL Agents, the other DIP ABL Credit Parties, the Prepetition ABL Agents, and/or the Prepetition ABL Credit Parties, as the case may be, prior to the actual receipt of written notice by the DIP ABL Agents and/or the Prepetition ABL Agents, as the case may be, of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of the DIP Orders, and the DIP ABL Credit Parties and the Prepetition ABL Credit Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the DIP Orders, and pursuant to the DIP ABL Loan Documents with respect to all such uses of the DIP ABL Collateral (including the Cash Collateral), all DIP ABL Secured Obligations, all Adequate Protection Claims, and all adequate protection payment obligations pursuant to the DIP Orders.

107

56.    ***Retention of Jurisdiction***.  The Bankruptcy Court shall retain jurisdiction to enforce this Final Order according to its terms to the fullest extent permitted by applicable law.

## Reservations of Rights

57.    ***Chubb.*** For the avoidance of doubt, (i) the DIP ABL Credit Parties shall not have a security interest or lien on any collateral provided by or on behalf of the Debtors to ACE American Insurance Company and ACE Fire Underwriters Insurance Company (together, with each of their affiliates and each of their and their affiliates' successors, "Chubb"), (ii) the Debtors may not grant liens and/or security interests in such property to any other party, (iii) this Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements;  *provided* that to the extent any such property reverts to the Debtors, such property shall be subject to the terms of this Final Order; and (iv) nothing, including the DIP ABL Credit Agreement and/or this Final Order, alters or modifies (a) the terms and conditions of any insurance policies or related agreements issued by Chubb or any notices of non-renewal related thereto; (b) Chubb's right to decline to renew any insurance policies or to decline to issue replacement insurance policies for any expiring insurance policies, or (c) the expiration of any insurance policies issued by Chubb pursuant to their terms or any notices of non-renewal related thereto.

58.    ***United States of America.***

(a)    In determining to make any loan under the DIP ABL Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP ABL Loan Documents, the DIP ABL Credit Parties shall not be deemed to be in control of the operations of the Debtors or to

be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP ABL Credit Parties' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., as amended, or any similar federal or state statute).

(b)     Nothing in this Final Order or the DIP ABL Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)     As to the United States, its agencies, departments, or agents, nothing in this Final Order or the DIP ABL Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have, and the Debtors and all other parties in interest, including the DIP ABL Credit Parties, reserve all rights to challenge the validity of any such purported right of setoff or recoupment.

59.     ***Setoff and Recoupment.*** Except as specifically set forth in paragraph 41(d) with respect to the Prepetition ABL Obligations, notwithstanding anything to the contrary in this Final Order, nothing herein is intended to, and shall not:  (a) waive, modify, prejudice, limit or otherwise impair the right of any party to exercise rights of setoff or recoupment, if any, under the Bankruptcy Code (including, without limitation, pursuant to section 553 of the Bankruptcy Code) or any other applicable non-bankruptcy law, subject, however, to section 546(c) of the Bankruptcy Code, (b) provide any party with any greater or lesser setoff or recoupment rights, if any, than they would have under the Bankruptcy Code or any other applicable non-bankruptcy law, or eliminate the need to seek relief from the automatic stay where required before exercising any such rights, or (c) waive, modify, prejudice, limit or otherwise impair any defenses or objections of the DIP ABL Agents or any of the other DIP ABL Credit Parties, the Prepetition ABL Agents or any of the other Prepetition ABL Credit

Parties, the Debtors and any other party in interest to such setoff and recoupment rights or the exercise thereof.

60.    ***Reclamation***.  To the extent a seller of goods (a "Reclamation Creditor") asserts rights of reclamation pursuant to and in accordance with both section 2-702(2) of the Uniform Commercial Code (the "UCC") and section 546(c) of the Bankruptcy Code (each a "Reclamation Claim" and, collectively, the "Reclamation Claims") requesting that the Debtors return certain goods identified in the Reclamation Claims (the "Reclamation Goods"), the rights of such Reclamation Creditor (the "Reclamation Rights") in either Reclamation Goods or the proceeds thereof (the "Reclamation Proceeds") and the priority of such Reclamation Rights as against any other interest in the Reclamation Goods or the Reclamation Proceeds shall be preserved solely to the extent a Challenge Proceeding with respect to the Prepetition ABL Revolving Extensions of Credit, the Prepetition ABL Term Loans or the liens securing any of such obligations has been successfully brought in compliance with the provisions of this Final Order and determined by an order entered by the Bankruptcy Court that becomes final and non-appealable; *provided that* in no event shall any alleged Reclamation Claim or Reclamation Right be deemed or treated hereunder as a Permitted Prior Lien rather, any such alleged Reclamation Claim or Reclamation Right shall have the same rights and priority with respect to the DIP ABL Facility, DIP ABL Liens and DIP ABL Collateral as such rights and claims had with respect to the Prepetition ABL Facilities, Prepetition ABL Liens and Prepetition ABL Collateral (subject to paragraphs 41 and 42 of this Order).  Notwithstanding anything herein to the contrary, nothing herein shall determine, or be deemed a determination of the validity or extent of any Reclamation Rights or Reclamation Claims and all parties rights with respect thereto are expressly reserved.

61. ***Specified Governmental Unit Assets.*** As adequate protection for the claims of the Specified Governmental Units,[8] the Debtors either will pay such claims directly or fund a segregated account (the "Specified Governmental Units Account"), in each case from the proceeds of the Store Closing Sales located in the jurisdictions subject to the authority of the Specified Governmental Units. The liens asserted by the Specified Governmental Units shall attach to the Specified Governmental Units Account in the same amount, to the same extent and with the same priority, validity and enforceability, and subject to the same defenses, as the liens the Specified Governmental Units now have against such assets of the Debtors. Further, nothing in this Final Order or any final orders with respect to post-petition financing, use of cash collateral, the closing of certain store locations or the sale of debtors' assets shall affect the priority of the ad valorem tax liens of the Specified Governmental Units, if any, which may arise during the pendency of these cases. The Specified Governmental Units Account shall be maintained solely for the purpose of providing adequate protection and shall constitute neither

---

[8] For purposes of this Order "Specified Governmental Units" means Allen ISD, Angelina County, Aransas Count, Atascosa County, Atlanta, Atlanta ISD, Bee County, Bexar County, Blanco CAD, Cameron County, Cleveland ISD, Cypress-Fairbanks ISD, Dallas County, Del Rio, Eagle Pass, Eagle Pass ISD, El Paso, Ellis County, Fort Bend County, Frisco, Galveston County, Grayson County, Gregg County, Harlingen, Harlingen CISD, Harris County, Hidalgo County, Hood CAD, Hopkins County, Hunt County, Irving ISD, Jasper County, Jefferson County, Jim Wells CAD, Kaufman County, Lewisville ISD, Matagorda County, McAllen, McLennan County, Montgomery County, Navarro County, Nueces County, Parker CAD, Pecos County, Pleasanton, Polk County, Rockwall CAD, San Patricio County, Smith County, Stephenville, Stephenville ISD, Sulphur Springs, Sulphur Springs ISD, Tarrant County, Tom Green CAD, Val Verde County, Van Zandt CAD, Victoria County, Wharton Co. Jr. College Dist., Wilson County, Wise CAD, Wise County, Wood County, Nolan County, City Sweetwater, Sweetwater Independent School District (ISD), Palo Pinto County, City Mineral Wells, Mineral Wells ISD, Johnson County, City Cleburne, Cleburne ISD, Arlington ISD, Crowley ISD, Eagle Mountain-Saginaw ISD, City Grapevine, Grapevine-Colleyville ISD, Richardson ISD, Carrollton-Farmers Branch ISD, City of Garland, Lubbock Central Appraisal District, Midland County, Tyler ISD, Cass County, Houston County, Mineola ISD, Nacogdoches County ISD, Austin County Appraisal District, Brazoria County Tax Office, Brazoria County Municipal Utility District (MUD) #35, Brazoria County Tax Office, Fort Bend ISD, Fort Bend County Levee Improvement District #2, First Colony MUD #10, Clear Creek ISD, Galveston County Mgmt. Dist. #1, Dickinson ISD, Interstate MUD, Clear Creek ISD, Galveston County Mgmt Dist. #1, Dickinson ISD, Interstate MUD, Clear Creek ISD, City of Houston, Galena Park ISD, HC MUD 285, Clear Creek ISD, City of Houston, Galena Park ISD, Spring Branch ISD, Spring ISD, Alief ISD, Tomball ISD, City of Tomball, Midtown Mgmt District, City of Jasper, City of Cleveland, Bay City ISD, Kerr County, Kendall County, Fayette County, Maverick County, Uvalde County, Weslaco City, Weslaco ISD, Randall County Tax Office, Potter County Tax Office, Gray County Tax Office, Garland ISD, Humble ISD, Harris County MUD 109, and Maricopa County Treasurer.

the allowance of the claims of the Specified Governmental Units, nor a floor or cap on the amounts the Specified Governmental Units may be entitled to receive.  All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Specified Governmental Units are fully preserved.  Funds in the Specified Governmental Units Account may be distributed upon agreement between the Specified Governmental Units and the Debtors, with the consent of the DIP ABL Administrative Agent, or by subsequent order of the Bankruptcy Court, duly noticed to the Specified Governmental Units.

62.    ***Consignment Merchandise***    To the extent of any conflict between paragraphs 36 through 41 of the *Final Order Approving (I) Procedures For Store Closing Sales And (II) Assumption Of Liquidation Consulting Agreement* [Docket No. 876] (the "GOB Order") and this Final Order, paragraphs 36 through 41 of the GOB Order shall control.

63.    ***American Greetings Corporation.***    Nothing in this Final Order shall affect or impair (i) the rights of American Greetings Corporation and its affiliates ("AG") in and to certain greetings cards and related products sold by AG to the Debtors on a scan-based method of sale (the "AG Products"), (ii) AG's rights in the proceeds of the AG Products (the "AG Proceeds"), (iii) AG's claims against the Debtors, the DIP ABL Lenders, or any other party relating to the AG Products, including, without limitation, AG's claims to recover the AG Proceeds, or (iv) any defenses or objections to such claims or rights that may be asserted by the Debtors, the DIP ABL Lenders or any other party in interest, all of which rights, claims, defenses and objections are hereby preserved.

64.    ***School District Unit 300.***    Notwithstanding anything to the contrary contained herein, and consistent with the record of the hearing held before the Court on

November 28, 2018, all rights of Community Unit School District 300 with respect to any ongoing stayed litigation and the transactions and events referenced therein, including the right to assert a constructive trust or a senior secured lien, and all defenses or objections of the Debtors and/or any and all other parties thereto, shall be preserved, and nothing herein shall waive, modify, prejudice, limit or otherwise impair any such rights, defenses or objections as the case may be, or be deemed a determination as to the validity, priority or extent of any such rights, claims or liens (if any) and all parties' rights with respect thereto are also expressly reserved.

65.    ***SHLD, Cyrus and Relator Carl Ireland.*** Notwithstanding anything to the contrary contained herein (including, but not limited to, paragraphs iv, 14, and  15 hereof), nothing herein, including the Carve-Out, shall be deemed to prime or otherwise made senior or *pari passu* to any valid, perfected and non-avoidable security interests or liens held by (i) SHLD Lendco, LLC or Cyrus Capital Partners, L.P. under the IP/Ground Lease Term Loan, or (ii) Relator Carl Ireland, Administrator of the Estate of James Garbe, and the other parties to the Garbe settlement agreement sharing in that security interest with Garbe (such security interests and liens the "Specified Security Interests").  All parties' rights to object to the priority, validity, amount, and extent of the Specified Security Interests and the claims secured thereby (and all objections and defenses of the holders of the Specified Security Interests) are hereby fully preserved. All rights and remedies of the Debtors in respect of the Specified Security Interests, including, but not limited to, the right to seek to surcharge and to seek to impose the remedy of marshaling (and, in each case, all objections and defenses of the holders of the Specified Security Interests) are hereby fully preserved.  All rights of the holders of the Specified Security Interests to seek relief from the automatic stay of section 362 of the Bankruptcy Code, to seek adequate protection of the Specified Security Interests, and/or other permissible secured creditor rights,

113

including the right to object to any relief sought pursuant to the Debtors' reserved rights, are hereby fully reserved.

66. ***Clover.*** Notwithstanding anything to the contrary contained herein, all rights of Clover Technologies Group, LLC ("Clover") with respect to any proceeds remitted to the Debtors prior to the Petition Date pursuant to that certain agreement between Clover and certain of the Debtors governing the distribution and retail sales of certain inventory on a scan-based trading method of sales (as further described the objection filed by Clover under ECF No. 212) shall be preserved, and the rights of the Debtors and any other party in interest to object are also hereby preserved.

67. ***Luxottica.*** At the time of submission of this Order, the Debtors, the DIP

Agents and Luxottica Retail North America, Inc. ('Luxottica") are continuing to formulate

language addressing the issues raised by Luxottica's objection (ECF No. 757) (the "Luxottica

Objection").  If the Debtors, the DIP Agents and Luxottica reach an agreement on that language,

the Debtors will file a stipulation with the Bankruptcy Court, which stipulation shall govern to

the extent of any inconsistency with this order.  If the Debtors, the DIP Agents and Luxottica

cannot agree on such language, the parties will request a hearing before the Bankruptcy Court.

Neither the entry of this Order nor passage of time shall prejudice the Luxottica Objection in any

way.  In addition, neither the entry of this Order nor the passage of time shall prejudice

Luxottica's right to argue that an agreement resolving the Luxottica Objection was reached, and

further shall not prejudice Luxottica's ability to enforce the terms of such agreement; provided

that the Debtors' and the DIP Agents' rights to object to the same shall be preserved in every

respect.

Dated: November 30, 2018
      White Plains, New York

/s/Robert D. Drain
Robert D. Drain
United States Bankruptcy Judge

## Exhibit A

DIP ABL Credit Agreement

## **Exhibit B**

Syndication Procedures

# **Exhibit C**

Approved Budget