DELBELLO DONNELLAN WEINGARTEN  *Hearing Date: December 20, 2018*
WISE & WIEDERKEHR, LLP  *Hearing Time: 10:00 a.m.*
*Counsel for Greenhorn Ventures LLC*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re  :  Chapter 11
  :
SEARS HOLDINGS CORPORATION, *et al.*,  :  Case No. 18-23538 (RDD)
  :
  :  (Jointly Administered)
  Debtors.  :
------------------------------------------------------------x

**MOTION OF GREENHORN VENTURES LLC FOR ORDER (I) COMPELLING THE DEBTOR TO REJECT A NONRESIDENTIAL REAL PROPERTY LEASE PURSUANT TO 11 U.S.C. § 365(d)(2); OR IN THE ALTERNATIVE (II) ESTABLISHING A DEADLINE BY WHICH THE DEBTOR MUST ASSUME AND CURE ALL DEFAULTS OR REJECT THE LEASE; AND (III) MODIFYING THE AUTOMATIC STAY TO PERMIT GREENHORN VENTURES LLC TO PURSUE ITS RIGHTS, INCLUDING THOSE RELATED TO THE DEBTOR'S CONTINUING DEFAULTS UNDER THE LEASE PURSUANT TO 11 U.S.C. §362(d)(1)**

  Greenhorn Ventures LLC, an Idaho limited liability company, by and through its counsel, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, files this Motion For Order (I) Compelling Debtor to Reject Real Property Lease Pursuant to 11 U.S.C. § 365(d)(2); or in the alternative (II) Establishing a Deadline By Which the Debtor Must Assume and Cure all Defaults Under the Lease or Reject the Lease; and (III) Modifying the Automatic Stay to Permit Greenhorn Ventures LLC to Pursue its Rights, Including Those Related to the Debtor's Continuing Defaults Under the Lease pursuant to 11 U.S.C. §362(d)(1) ("Motion"). In support of its Motion, Greenhorn Ventures LLC states as follows:

1

## PARTIES

1. Sears Holdings Corporation, and its affiliated co-debtor, Kmart Corporation, (collectively, the "Debtors"), are corporations with principal offices located at 3333 Beverly Road, Hoffman Estates, Illinois, 60179.

2. Debtors and certain other affiliates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101 *et seq.*, on October 15, 2018. The Debtors and such affiliates continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C §§ 1107 and 1108.

3. Greenhorn Ventures LLC ("Owner-Landlord") is an Idaho limited liability company, owning certain real property including a commercial building and its additions located at 2258 Addison Avenue East, Twin Falls, ID 83303 ("Property"), which Property is currently leased to and occupied by Kmart Corporation ("Debtor-Tenant") and used to operate a Kmart retail store [store no. 7006].

## JURISDICTION AND VENUE

4. This Honorable Court has jurisdiction over this matter pursuant to Sections 157(a) and 1334 of Title 28 of the United States Code.

5. Venue is proper in this Court pursuant to Section 1409(a) of Title 28 of the United States Code.

6. This is a core proceeding pursuant to Section 157(b) of Title 28 of the United States Code.

## BACKGROUND FACTS

7. On or about September 1, 1989, Debtor-Tenant entered into a certain Amended and Restated Lease (the "Lease") with a predecessor-in-interest of Owner-Landlord, pursuant to which

the Debtor-Tenant agreed to pay base rental amounts to Owner-Landlord for the use of the Property along with performing other agreed upon obligations. A true and correct copy of the Lease and the Amended and Restated Memorandum of Lease recorded in the real property records of Twin Falls County, Idaho on January 28, 1993 are attached as **Exhibits A-1 and A-2** to this Motion.

8. While Debtor-Tenant's monthly base rental obligations under the Lease are current through the date of this Motion, there are certain other continuing substantial defaults under the Lease by Debtor-Tenant as set forth herein.

    **A.**    **Encroachment Upon Adjoining Property.**

9. Paragraph 14 of the Lease allows Debtor-Tenant to, "at its own expense and at any time, erect or construct additional buildings or structures on any portion" of the Property. Such expanded structures or buildings become and remain the property of Owner-Landlord. In this regard, and under the terms of Paragraph 14 and as further described in the fourth through the eighth recitals to the Lease, Debtor-Tenant is specifically authorized to construct an approximately 23,049 square foot addition to the then existing building, which addition is referred to in the Lease as the "Expansion." The "Expansion" is authorized to be constructed on a to-be-acquired parcel of real property referred to as the "Expansion Parcel", which "Expansion Parcel" was acquired by a predecessor-in-interest of Owner-Landlord on or about January 2, 1990.[1] The "Expansion Parcel" was surveyed at the request of Debtor-Tenant in July 1989.

10. Paragraph 27 of the Lease obligates the Debtor-Tenant to "indemnify and save Landlord harmless against all penalties, claims or demand of whatsoever nature arising from Tenant's use of the" Property.

---

[1] The "Expansion Parcel" is Parcel II shown on attached Exhibit A-2, and Parcel 2 shown on Exhibit B.

11.     Following the acquisition of the "Expansion Parcel" in 1990, Debtor-Tenant constructed the "Expansion" on that part of the Property consisting of the "Expansion Parcel." In breach of the Lease, and notwithstanding the prior survey of the "Expansion Parcel," Debtor-Tenant constructed a part of the "Expansion" on the real property of the adjoining landowner to the east of the "Expansion Parcel," i.e., to the east of Parcel 2 as shown on the ALTA survey. This continuing encroachment and trespass exposes Owner-Landlord to a substantial potential liability claim from the adjoining landowner. A true and correct copy of the ALTA survey of the Property and an enlarged excerpt therefrom detailing the encroachment of the "Expansion" are attached as **Exhibits B-1 and B-2** to this Motion.

12.     The continuing encroachment and trespass of the expanded building on the adjoining landowner's property is a continuing breach and default of the terms of the Lease by Debtor-Tenant. Owner-Landlord demands that Debtor-Tenant immediately cure said breach by whatever means are reasonable and necessary and indemnify Owner-Landlord.

13.     Without said timely cure by Debtor-Tenant, Owner-Landlord is entitled to termination of the Lease.

**B.     Exposure to Liability for Environmental Hazardous Conditions.**

14.     Pursuant to a Phase I Environmental Assessment dated September 4, 2018 ("Property Phase I"), certain recognized environmental conditions ("REC") designated as controlled recognized environmental conditions ("CREC") were discovered on the Property relating to underground waste oil and underground gasoline tanks owned, installed, and operated and purportedly removed by Debtor-Tenant from the Property. In particular, one (1) 1000 gallon underground waste oil tank was reported as installed on the Property on or about January 1, 1973 and purportedly removed on or about June 21, 1990 and two (2) 1000 gallon gasoline tanks were

reported installed on the Property on or about December 22, 1988 and reported as closed on or about June 29, 1991 with no supporting documentation.

15. Due to the lack of information provided by or filed by Debtor-Tenant with regulatory authorities, including the exact locations (or former locations) of each of the three (3) underground storage tanks on the Property, compliant testing data and sampling and other documentation with respect to the closure and removal of the underground waste oil tank, any testing data and sampling or other documentation with respect to the closing and purported removal of the two (2) underground gasoline storage tanks, the Property is characterized in the Property Phase I as subject to potential contamination. Relevant excerpts of the Property Phase I are attached as **Exhibit C** to this Motion.

16. Paragraph 17 of the Lease requires that Debtor-Tenant in connection with its use of the Property "shall all observe and comply with all rules, orders, and regulations of all duly constituted public authorities."

17. Paragraph 27 of the Lease obligates the Debtor-Tenant to "indemnify and save Landlord harmless against all penalties, claims or demand of whatsoever nature arising from Tenant's use of the" Property.

18. Despite requests from Owner-Landlord's immediate predecessor-in-interest with respect to the Property, Debtor-Tenant has refused to allow access to the Property or pay for and/or undertake any additional testing and investigation of the Property with regard to the three (3) subject underground storage tanks. A true and correct copy of correspondence documenting Debtor-Tenant's refusal to allow an inspection is attached as **Exhibit D** to this Motion.

19. The Debtor-Tenant's above refusals and its failures to properly report, test (and/or pay for testing), dispose of and/or clean up the environmental conditions associated with the three

(3) underground waste oil and gasoline tanks now exposes the Owner-Landlord to substantial liabilities for additional testing and investigation and potential cleanup and other liabilities and claims as well as a potential diminution in the value of the Property.

20.    The Debtor-Tenant's above refusals and failures are a breach and default under the terms of the Lease by Debtor-Tenant.  Owner-Landlord demands that Debtor-Tenant should immediately cure by whatever means are reasonable and necessary and indemnify Owner-Landlord.

21.    Owner-Landlord is prejudiced by the Debtor-Tenant's continued use of the Property under the Lease as set forth above.

22.    Owner-Landlord is otherwise barred, pursuant to Section 362(a) of the Bankruptcy Code, from sending a Notice of Default under the Lease, but deems this Motion to be sufficient notice of Debtor-Tenant defaults required by Paragraphs 23 and 31 of the Lease.

23.    Owner-Landlord, having been wrongfully excluded from inspection of the Property, reserves the right to amend this Motion with any further defaults which may be discovered and which may otherwise exist or arise.

## REQUESTED RELIEF

24.    The Debtor-Tenant's post-petition leasing and use of Owner-Landlord's Property under the Lease constitutes an executory contract or unexpired lease under Section 365 of the Bankruptcy Code.

25.    Pursuant to Section 365(b)(1)(A) of the Bankruptcy Code, the Debtor-Tenant has a duty to cure and/or provide adequate assurance payments to promptly compensate the Owner-Landlord for defaults created by the Debtor-Tenant under the Lease.  It is not impossible for the Debtor-Tenant to cure such defaults.

26.     Pursuant to Section 365(d)(2) of the Bankruptcy Code, 11 U.S.C.A. § 365(d)(2), upon request of any party to an executory contract, a court may order the debtor in possession to determine within a specified period of time whether to assume or reject an executory contract.

27.     As of the date of filing of this Motion, the Debtor-Tenant has neither assumed nor rejected the Lease.

28.     Although the Debtor-Tenant has not assumed or rejected the Lease, the Debtors have filed a Notice of Filing of Revised Schedule to Omnibus Motion of Debtors to Reject Certain Unexpired Leases (Doc. 290) ("Schedule") which Schedule does not include the Lease.  This infers that the Debtor-Tenant is contemplating at some future time to attempt to assume and assign the Lease at issue in this Motion without complying with its duties to cure the defaults.

29.     Because Owner-Landlord is being greatly prejudiced by the Debtor-Tenant's continued use of the Property and being exposed to claims and liabilities of or created by the Debtor-Tenant; because of the uncertainty of the claims and liabilities going forward; and because this Court may set a specified period of time in which the Debtor-Tenant may assume or reject the Lease, this Honorable Court should set a date of fifteen (15) days from the date of an Order compelling the Debtor-Tenant to reject the Lease as the specified period of time within which the Debtor-Tenant must cure the defaults or reject the Lease.

30.     In the alternative Owner-Landlord requests that the Court establish a deadline by which the Debtor-Tenant must assume the Lease and cure all defaults thereunder or reject the Lease.

31.     In addition, Owner-Landlord seeks an order modifying the automatic stay to permit it to assert all its rights with respect to the Debtor-Tenant's continuing defaults under the Lease. Cause exists to do so as set forth above. The Owner-Landlord is not being adequately protected,

and in fact is suffering continuing damages due to the Debtor-Tenant's defaults. In the alternative, the Court should grant the Owner-Landlord adequate protection by compelling the Debtor to cure the encroachment, reparations and reclamation to the Property.

## CONCLUSION

32. Owner-Landlord requests that this Honorable Court enter an Order compelling the Debtor-Tenant to reject the Lease or in the alternative establishing a deadline for the Debtor to assume the Lease and cure the defaults or reject the Lease, within fifteen (15) days from the date of such Order.

33. Owner-Landlord requests that this Court enter an Order modifying the automatic stay to permit Greenhorn Ventures LLC to enforce its rights with respect to the defaults under the Lease, or in the alternative grant adequate protection pursuant to Section 363(e) of the Bankruptcy Code by compelling the Debtor-Tenant to pay reasonable costs for the cure of the encroachment, reparations, and reclamation to the Property.

Dated: November 30, 2018
      White Plains, New York

                              Respectfully submitted,

                              DELBELLO DONNELLAN WEINGARTEN
                              WISE & WIEDERKEHR, LLP
                              *Counsel for Greenhorn Ventures LLC*
                              One North Lexington Avenue
                              White Plains, New York 10601
                              (914) 681-0200

                              By: */s/   Dawn Kirby, Esq.*
                                    Dawn Kirby, Esq.