## AMENDED AND RESTATED LEASE

THIS AMENDED AND RESTATED LEASE (the "Lease") made and entered into as of this 1st day of September, 1989, between ADDISON REALTY LIMITED PARTNERSHIP, a Tennessee limited partnership, having its principal office at 840 Shady Branch Trail, DeLand, Florida 32724 (herein referred to as "Landlord"), and K MART CORPORATION, a Michigan corporation having its principal office at 3100 West Big Beaver Road, Troy, Michigan 48084 (herein referred to as "Tenant").

W I T N E S S E T H:

WHEREAS, C & W Manhattan Associates, a limited partnership ("C & W"), a predecessor-in-interest to Landlord, and Tenant have heretofore entered into that certain Lease, dated as of June 8, 1972, as amended by that certain First Modification of Lease, by and between C & W and Tenant, dated January 19, 1973, by that certain Second Modification of Lease, by and between C & W and Tenant, dated February 27, 1974, by that certain Agreement for Third Modification of Lease Amendment, Memorandum of Lease, Amendment to Declaration of Establishment of Protective Covenants, Conditions and Restrictions and Grants of Easements, by and among E.M.I. Ltd. No. 6 Associates and E.M.I. Ltd. No. 14 Associates, both Utah limited partnerships (collectively, E.M.I.), also predecessor-in-interest to Landlord, and Tenant, dated September 7, 1976, and by that certain Fourth Modification of Lease, by and between Landlord and Tenant, dated June 15, 1984 (the Lease, as amended, shall be hereinafter referred to as the "Original Lease"), which Original Lease provided for the lease of a certain ten acre parcel, with a 64,588 square foot K mart Department Store, a garden shop and other improvements located thereon, in the City of Twin Falls, County of Twin Falls, State of Idaho (the "Original Lease Parcel"), to Tenant; and

WHEREAS, C & W and Tenant executed and recorded a certain Memorandum of Lease dated June 8, 1972 ("Memorandum"), recorded September 6, 1972 as Instrument No. 639669, Records of Twin Falls County, Idaho.

WHEREAS, Canned Foods, Inc., a California corporation, is the owner of a certain parcel (the "Canned Foods Parcel") located directly adjacent to and contiguous with the Original Lease Parcel; and

WHEREAS, Tenant desires to expand its store by constructing approximately 23,049 additional square feet of retail space onto its existing K mart Department Store (the "Expansion") which will be located on a portion of the Canned Foods Parcel; and

WHEREAS, Tenant and Canned Foods have entered into that certain Real Estate Purchase and Sale Agreement and Receipt for Earnest Money, dated as of August 1, 1989 (the "Purchase Agreement"), which Purchase Agreement provides for the acquisition by Tenant of a portion of the Canned Foods Parcel, as more particularly described therein, to accommodate the Expansion and related parking facilities (the "Expansion Parcel"); and

WHEREAS, Tenant shall provide all the funds necessary for the acquisition of the Expansion Parcel and shall designate Landlord as its assignee under the Purchase Agreement for the purpose of Landlord becoming the fee owner of the Expansion Parcel; and

WHEREAS, upon the consummation of the acquisition of the Expansion Parcel, Tenant shall at its sole cost and expense, commence the construction of the Expansion, and;

1

WHEREAS, Landlord and Tenant desire to amend and restate the Original Lease in order, among other things, to cover both the Original Lease Parcel and the Expansion Parcel (collectively, the "demised premises").

NOW, THEREFORE, in consideration of the foregoing and of the rents, covenants and conditions herein set forth, Landlord and Tenant do hereby covenant, promise and agree as follows:

1. Commencement Date. Landlord and Tenant agree that, subject to the provisions regarding the Tenant's failure to commence the construction of the Expansion described herein, the provisions of this Amended and Restated Lease shall go in force and the provisions of the Original Lease shall be superseded effective upon January 1, 1990 (the "Commencement Date"). Up until the Commencement Date, Tenant shall pay to Landlord for all of the demised premises the rental rate set forth in the Original Lease, including any percentage rental due thereunder, which percentage rental shall be pro rated for the last partial year of the term of the Original Lease up to the Commencement Date. In the event Tenant fails to commence construction of the Expansion before January 1, 1991, then the provisions of this Amended and Restated Lease shall be automatically terminated as of January 1, 1991 without any further action by either of the parties hereto and the provisions of the Original Lease shall be immediately reinstated effective as of said date. Landlord shall reassume all its obligations under the terms of the Original Lease, including its maintenance and repair obligations pursuant to Sections 9 and 14 thereof, and Tenant shall reassume all its obligations under the terms of the Original Lease, including its original rental obligations. Tenant shall deliver to Landlord a written memorandum expressly confirming the date on which Tenant commences construction of the Expansion.

2. Demised Premises. Landlord does hereby demise unto Tenant and Tenant does take from Landlord for the term hereinafter provided, and any extension thereof, the following property: the land comprising eight and seventy-five hundredths (8.75) acres, more or less, inclusive of areas subject to public rights of way, as more particularly described in Exhibit "A", attached hereto and made a part hereof, and all the site improvements located thereon, all as shown on Exhibit "B", attached hereto and made a part hereof, including a K mart Department Store that upon completion of the Expansion will consist of approximately 87,637 square feet of space and an outdoor garden shop, situated in the City of Twin Falls, County of Twin Falls, State of Idaho. Said land, buildings and site improvements, together with the licenses, rights, privileges and easements appurtenant thereto shall hereinafter collectively be referred to as the "demised premises."

3. Term. The term of this lease shall commence on the Commencement Date and shall expire thereafter in twenty five (25) years; provided, however, the term of this lease may be extended by Tenant as provided in Article 11 hereof. The phrase "lease term," as used in this lease, shall be the term of this lease and any extension pursuant to said Article 11.

4. Annual Rental. Tenant shall, during the lease term, pay to Landlord, at such place as Landlord shall designate in writing from time to time, an annual rental of ONE HUNDRED FORTY FIVE THOUSAND DOLLARS $(145,000.00), unless abated or diminished as hereinafter provided, in equal monthly installments of $12,083.33 on the first day of each month, in advance, commencing upon the Commencement Date.

5. Real Estate Tax. Tenant shall pay and discharge all ad valorem real estate taxes and assessments which shall be levied against the demised premises during the lease term. To the extent permitted by law, Tenant may pay any such assessment in annual installments. In the event any such assessment shall be payable either in a lump sum or on an installment basis, Tenant shall have the sole right to elect the basis of payment. If Tenant shall elect to pay such assessment on the installment basis, then Tenant shall pay only those installments which shall become due and payable during the lease term. Any such installment due and payable in the years in which this lease commences and terminates shall be prorated proportionately. Tenant shall not be chargeable with, nor be obligated to pay, any income, profit, inheritance, estate,

-2-

succession, gift, franchise, or transfer taxes which are or may be imposed upon Landlord, its successors or assigns, by whatsoever authority imposed or howsoever designated. Written evidence of the payment of taxes and assessments hereunder shall be furnished by Tenant to Landlord upon Landlord's written request therefor. Tenant shall have the right to participate in all negotiations of assessments. Tenant shall have the right to contest, in good faith, the validity or the amount of any tax or assessment levied against the demised premises by such appellate or other proceedings as may be appropriate in the jurisdiction, and may defer payment of such obligations, pay same under protest, or take such other steps as Tenant may deem appropriate. Landlord shall cooperate in the institution and prosecution of any such proceedings and will execute any documents required therefor. The expense of such proceedings shall be borne by Tenant and any refunds or rebates secured shall belong to Tenant.

6. **Parking and Other Common Areas.** Tenant, its agents, employees, customers, licensees, and invitees shall have the unrestricted use of the land described in Exhibit "A." Subject to the provisions of prior recorded instruments to which Tenant is a party, no other persons shall be permitted to park upon or exercise any other rights over said land, without the prior written consent of Tenant. In the event that unauthorized persons, including tenants or invitees of tenants occupying any building now, or at any future time located beyond the limits of the land described in Exhibit "A," shall utilize said land area for parking or other purposes to an extent which shall be objectionable to Tenant, Tenant may, at its election, take whatever action it deems necessary to prevent such unauthorized utilization, including the erection of fences or other barricades. Tenant shall at its own expense carry out such repairs and maintenance, structural or otherwise, to maintain the improvements in the common areas of the land described in Exhibit "A," said maintenance to include the sweeping, striping, snow removal and seal coating of all parking lots and the sweeping and snow removal of all sidewalks.

7. **Landlord's Representations and Warranties.** Landlord represents and warrants to Tenant that to the best of the knowledge of Landlord, Landlord knows of no reason, fact or circumstance which would cause the following to be untrue, inaccurate or incorrect:

   (1) That the land described in Exhibit "A" is properly zoned for Tenant's intended use for its existing Department Store and the Expansion;

   (2) That all required governmental consents, permits and approvals are available for Tenant in connection with Tenant's intended use upon Tenant's payment of all necessary fees; and

   (3) That the land described in Exhibit "A" shall have the benefit (running with the land) of such easements as may be required (a) for the ingress and egress of vehicular and pedestrian traffic between the demised premises adjacent to and on the western boundary of the demised premises, and (b) for the non-exclusive right of Tenant's customers, invitees, employees and agents to utilize vehicular parking spaces thereon.

8. **Inclusion In Districts.** Tenant shall have the right as Landlord's agent and in Landlord's name, and as agent for and in the name of any succeeding landlord or landlords of the demised premises, to consent to, petition for, and vote for the formation of, and the inclusion of the demised premises or any part thereof within, the boundaries of any improvement district, special assessment district, city, town, or other

-3-

municipal corporation or governmental areas; or, at Tenant's discretion, to protest and vote against the formation of such improvement district, special assessment district, city, town, or other municipal corporation or governmental area, or against the inclusion therein of the demised premises or any part thereof.

9. **Hypothecation.** Landlord agrees and consents that at any time and from time to time during the term of this lease, Tenant may mortgage, encumber, assign, and hypothecate by mortgage or deed of trust or equivalent security instrument (any of which is herein called "mortgage") all or any portion or portions of the right, title and interest of Tenant in the leasehold estate created by this lease to a lender or lenders (herein jointly called "mortgagee").

Except as hereinafter otherwise provided, the mortgage and all rights thereunder shall be subject to each and every covenant, condition, and restriction of this lease and shall also be subject to all rights and interest of Landlord hereunder, none of which shall be deemed waived by the foregoing consent.

Any mortgagee shall have the right at any time during the terms hereof while this lease is in full force and effect:

    (1) To do any act required or permitted of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

    (2) To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial or nonjudicial sale, by power of sale contained in any deed of trust or security instrument, or by deed given in lieu of foreclosure, or otherwise, and thereafter convey or assign title to the leasehold estate so acquired to any other person, firm or corporation.

Landlord shall give written notice to mortgagee of any default by Tenant, specifying the particular act or omission which constitutes a default; provided, however, that Landlord shall be under no obligation to give such notice to mortgagee unless Tenant shall have given to Landlord prior written notice specifying mortgagee's name and mailing address. Any notice to be given shall comply with Article 31 hereof.

Landlord shall not terminate this lease by reason of a default of Tenant, if the mortgagee shall cure such default within thirty (30) days after the expiration of any period of grace provided to Tenant under this lease; or, if the same cannot be cured within thirty (30) days, mortgagee shall commence the curing within said thirty (30) days and shall proceed with diligence to complete such curing, but in no event exceeding a total of sixty (60) days after the expiration of the period of grace provided to Tenant under this lease.

In the event such default is not susceptible of being cured by mortgagee, such default shall be deemed cured if mortgagee shall proceed in a timely and diligent manner to accomplish the foreclosure of Tenant's interest; provided, however that if said foreclosure proceeding shall be subject to leave of any court (as in the case of a bankruptcy proceeding) and such leave shall have been applied for but not obtained by mortgagee, such default shall be deemed cured nevertheless if mortgagee shall have attempted to obtain such leave in a timely and diligent manner. It is agreed, however, that mortgagee shall cure, in the manner and at the time specified in (1) above, the monetary defaults susceptible of being cured and

-4-

shall pay the monetary obligations of Tenant accruing thereafter, it being understood, however, that mortgagee shall not have any personal liability in connection therewith, but the payment and/or payments as aforesaid shall be a condition precedent to Landlord's forbearance of the exercise by mortgagee of its rights and remedies as set forth in this lease. The obligation of mortgagee for the future performance of the terms of this lease, if any, shall terminate upon the sale, transfer, or assignment of the right, title, and interest of mortgagee in the leasehold estate to any other person, firm, or corporation; and any such sale, transfer, or assignment may be made by mortgagee without the consent of Lessor.

Any mortgagee or its assigns may enforce such mortgage and acquire title to the leasehold estate in any lawful manner and, pending foreclosure of any such mortgage, may take possession of and rent the demised premises, and upon foreclosure of such mortgage may, without consent of Landlord, sell, transfer, or assign the leasehold estate or sublet the demised premises in whole or in part. Any person acquiring the leasehold estate or any part thereof from mortgagee shall, as a condition precedent to the enjoyment of the leasehold estate, assume in writing the liability for the performance of the obligations (arising subsequent to the assumption) imposed upon Tenant by the terms of this lease. Mortgagee shall furnish Landlord with an executed original of the instrument of assignment or transfer and an executed original of the undertaking made in accordance with the foregoing provision.

The foregoing provisions do not give any person whatsoever the right to mortgage, hypothecate, or otherwise encumber or to cause any liens to be placed upon the freehold estate of Landlord; nor shall the foregoing provision in any event be construed as resulting in a subordination in whole or in part of the freehold estate of Landlord to any indebtedness of Tenant.

In the event Landlord elects to terminate this lease and Tenant's rights hereunder by reason of Tenant's failure to cure a default within any period of grace provided to Tenant pursuant to the provision of Article 22 of this lease and at the expiration of any subsequent period of grace provided to mortgagee, then Landlord may do so; but Landlord shall first serve written notice of such election on mortgagee, and mortgagee shall have fifteen (15) days after the receipt of such notice within which mortgagee may elect, in addition to remedies set forth above, to demand that Landlord execute a new lease of the demised premises with mortgagee as tenant. In such event, Landlord and mortgagee shall immediately execute a new lease which shall be for the unexpired term of this lease and shall otherwise be identical with the terms of this lease; provided, however, that the mortgagee, its successors and assigns shall pay to Landlord, at the time of the execution and delivery of the new lease, all amounts which would have been then due hereunder except for such termination, less any net income received by Landlord after termination hereof and prior to the new lease, and any then remaining net income shall then be applied to rental thereafter becoming due under the new lease. Landlord's election to so terminate shall not be effective as against mortgagee until after the expiration of such fifteen (15) day period.

Notwithstanding the foregoing provision, until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease or consent to any cancellation or modification thereof.

Landlord understands that Tenant may mortgage, from time to time, all and/or part or parts of the leasehold estate

-5-

created by this lease. In that connection, Landlord agrees that it will execute such amendments to this lease as may reasonably be required by the Tenant's proposed lender or lenders, so long as Landlord's rights under this lease are not adversely affected.

The mortgagee, its successor or assigns, shall have the right, in the event Tenant shall fail to do so, to do any and all things required or permitted by and to exercise any and all rights and privileges of lessee hereunder.

The term "mortgage" shall specifically include a deed of trust and the term "mortgagee" shall specifically include a beneficiary under the deed of trust, it being the intention of the parties to enable Tenant to finance the leasehold and to so encumber the same with a deed of trust or deeds of trust in lieu of a mortgage should Tenant's lender require the use of a deed of trust rather than a mortgage.

10. **Grants Of Easement And Rights-Of-Way.** Landlord agrees that it will from time to time join with Tenant in the granting to municipal entities and public utility companies of easements or rights-of-way for utility lines and public streets, walks, alleys and access ways to the extent such may reasonably be required for the implementation of any site plan for Tenant's use of the demised premises. Landlord further agrees to join in the execution of any reciprocal easement agreements, or other agreements, by which Tenant may desire to subject all or a part of the demised premises to or pursuant to which, among other things, reciprocal parking rights and privileges will be created as will easements, rights and privileges incident to ingress and egress; subject, however, to the approval of Landlord, which approval will not unreasonably be withheld. Landlord further agrees to join in the execution of any subdivision of the property for the purpose of implementing any site plan of Tenant in connection therewith and to cause the demised premises to be separated into a number of parcels, all pursuant to a site plan. The site plan shall, however, be subject to Landlord's prior written approval which shall not unreasonably be withheld or delayed.

11. **Options to Extend Lease.**

(a) Tenant shall have ten (10) successive options to extend the term of this lease for an additional period of five (5) years in each instance, such extended terms to begin respectively upon the expiration of the term of this lease or of this lease as extended and the same terms and conditions as herein set forth shall apply to each such extended term. If Tenant shall elect to exercise any of the aforesaid options, it shall do so by giving notice to Landlord not less than six (6) months prior to the expiration of the lease term.

(b) Regardless of the exercise or nonexercise by Tenant of any or all of the foregoing options, Tenant shall have, unless the last day of the lease term shall be January 31 of any year, the option to extend (or further extend, as the case may be) the term of this lease for such period of time as shall cause the last day of the term of this lease to be January 31 next succeeding the date upon which the term of this lease would expire but for the exercise of this option. This option shall be exercised by notice to Landlord not less than six (6) months prior to the expiration of the lease term. Tenant's rental during this option period shall be the same rental payable under the terms of this lease at the time Tenant notifies Landlord of its intention to exercise this option.

12. **Purchase Options.** Anything in this lease contained to the contrary notwithstanding, and without in any manner affecting or limiting any of the rights, privileges, options or

-6-

estates granted to Tenant under this lease, if the Landlord, at any time during the lease term receives one or more bona fide offers from third parties to purchase the demised premises or property of which the demised premises are a part, and if any such offer is acceptable to the Landlord, then Landlord shall notify Tenant in writing, giving the name and address of the offeror, and the price, terms and conditions of such offer, and Tenant shall have thirty (30) days from and after the receipt of such notice from Landlord in which to elect to purchase the property for the consideration and on substantially the same terms and conditions as are contained in the bona fide offer. If Tenant does not elect to purchase said property and Landlord, thereafter, sells the property the purchaser shall take the property subject to and burdened with the terms, provisions and conditions of this lease, including this Article 12, and the rights of the Tenant under this lease as against the new owner shall not be lessened or diminished by reason of the change of ownership. Tenant's failure at any time to exercise its option under this Article 12 shall not affect this lease or the continuance of Tenant's rights and options under this Article 12 or any other article.

13. **Repairs**. The parties intend that this Lease be a "net" lease. Tenant shall at its own expense, carry out such repairs and maintenance, structural or otherwise, as it deems necessary to keep the demised premises in good order and repair, ordinary wear and tear and damage of fire and other casualty excepted.

14. **Alterations and Additional Construction**. Tenant may, at is own expense and at any time, erect or construct additional buildings or structures on any portion of the demised premises, including (i) the Expansion and (ii) the separate building pad (the "Outlot") in accordance with Section 15 hereof, and make such alterations, additions or changes, structural or otherwise, in and to its buildings as it may deem necessary or suitable. During the term of this Lease, although title to said improvements shall remain in Landlord, Tenant shall be entitled to all federal and state income tax deductions for depreciation expense. In addition, Tenant may at any time raze the whole or any part of any building at any time standing upon the demised premises (except on the Outlot if it has been marketed to a third party user in accordance with Section 15 hereof); provided, however, that should Tenant elect to raze any such improvements during the last ten (10) years of the primary term of the Lease, or during any option period, then, Tenant shall either (i) enter into a written agreement with Landlord to extend the term of the Lease by an additional ten (10) year period, or (ii) exercise sufficient options under Section 11 of this Lease so that the term of the Lease continues for a minimum additional ten (10) year period. Landlord shall cooperate with Tenant in securing building, sign and other permits or authorizations required by appropriate authorities for any work permitted hereunder by Tenant. Any costs connected with filing applications for such permits shall be borne by Tenant.

15. **Future Development of the Outlot**. Tenant hereby authorizes Landlord to develop and market the Outlot to a third party user for the benefit of Tenant, subject to the reasonable approval of Tenant as to its use; provided, however, that if Landlord has not marketed the Outlot to such a third party user within two (2) years from the Commencement Date, Tenant may also market the Outlot to a third party user and Landlord and Tenant agree in good faith to coordinate their marketing activities. Tenant agrees that it shall execute an amendment to this lease, in a form reasonably satisfactory to Tenant, for the purpose of releasing the Outlot from the provisions of this lease in connection with any subsequent sale of the Outlot pursuant to Landlord's marketing program, as approved by

Tenant. In addition, Tenant agrees that it shall permit, and execute a reciprocal easement agreement, in a form reasonably satisfactory to Tenant, for the purpose of enabling the occupant of the Outlot, its agents, employees, customers, licensees, and invitees to park on that part of the land described in Exhibit "A" developed for vehicular parking and to have access to the Outlot; provided such occupant agrees to pay to Tenant its pro rata share of the cost of maintaining such parking area. The term "pro-rata share" as used herein shall be the fractional share determined by the fraction, the numerator of which is the total gross square footage of the floor area of the buildings on the Outlot and the denominator of which is the total gross square footage of the floor area of the buildings on the land described in Exhibit "A." Floor area shall be measured from exterior surface of exterior walls and from the center of common walls or interior demising partitions, and shall exclude: (i) mezzanine stock area, if any, (ii) floor area not enclosed by solid wall and roofs, such as the Tenant's garden shop and (iii) canopy areas; and shall include all subfloors and upper stories. If Tenant develops and markets the Outlot, Landlord agrees that it shall execute such an amendment to this lease to release the Outlot from the provisions of this lease and such a reciprocal easement agreement to provide access and parking to the occupant of the Outlot.

Regardless of which party markets the Outlot, Landlord and Tenant shall evenly divide any sales proceeds or any annual net rental proceeds derived from the development and marketing of the Outlot; provided, however, that the party marketing the Outlot may deduct its actual marketing and development costs, including the costs of any surveys or necessary subdivision maps, prior to the division of the proceeds, so long as such costs are properly documented and verified.

16. **Utilities**. Landlord covenants and agrees that the demised premises shall be properly serviced with gas, electricity, telephone, water, sewer and other utilities sufficient to meet Tenant's requirements at the commencement of the lease term. Tenant shall pay all charges for utility services furnished to the demised premises during the the lease term.

17. **Governmental Regulations**. Tenant shall observe and comply with all rules, orders and regulations of all duly constituted public authorities. Tenant shall have the right, however, to contest, without cost to Landlord, the validity or application of any such rules, orders or regulations and may postpone compliance therewith until the final determination of any such proceeding.

18. **Fire**. From and after the effective date of this Lease, as provided in Article 1 hereof, should Tenant's net worth at any time be less than One Hundred Million Dollars ($100,000,000.00), upon written request of the Landlord or Mortgagee, Tenant shall procure fire insurance with extended coverage endorsement upon the buildings and improvements on the demised premised in an amount equal to eighty percent (80%) of the insurable value of the buildings above the foundation walls. At anytime while Tenant's net worth shall exceed One Hundred Million Dollars ($100,000,000.00), Tenant may elect to self-insure its obligation to restore. Policies of fire insurance procured pursuant to this article shall assure and be payable to Landlord, Tenant and mortgagee, if any, and shall provide for unconditional release of insurance proceeds to Tenant for restoration of improvements.

Landlord and mortgagee, if any, shall be furnished certificates from the insuring company showing the existence of such insurance or self-insurance by Tenant. In case of loss, Tenant is hereby authorized to adjust the loss and execute proof thereof in the name of all parties in interest.

Should the whole or any part of the buildings and improvements on the demised premises be partially or totally destroyed by fire or any other casualty covered by a standard extended coverage endorsement after the commencement date of this lease, the same shall be restored by Tenant without unnecessary delay; provided, however, should over fifty percent (50%) destruction occur to said buildings and improvements during the last five (5) years of the lease term or if Tenant shall suffer damage to its merchandise, fixtures, equipment and other property in excess of One Hundred Thousand Dollars ($100,000.00) during the last two (2) years of the lease term, Tenant shall have the right, at its option, to cancel this lease on at least thirty (30) days written notice to the Landlord. In the event of such cancellation, Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. If Tenant is carrying fire insurance to eighty percent (80%) of the insurable value, all the insurance proceeds shall belong to Landlord and/or Landlord's insured at the time of the loss. If Tenant is not carrying fire insurance, Tenant shall reimburse Landlord and/or the mortgagee for an amount equivalent to the insurance proceeds that would have been paid had such insurance been in force, but not to exceed eighty percent (80%) of the insurable value of the buildings. In the event that this lease shall be terminated as above provided, all unearned rent and other charges paid in advance shall be refunded to Tenant within thirty (30) days after the effective date of such termination.

19. **Eminent Domain.** In the event all of Tenant's buildings or parking shall be expropriated or denial of access thereto be caused by public or quasi-public authority, Tenant shall have the option to terminate this lease as of the date Tenant shall be deprived thereof.

In the event that less than the whole, but more than ten percent (10%) of the Tenant's buildings or parking shall be expropriated by public or quasi-public authority, Tenant shall have the option to terminate this lease as of the date Tenant shall be dispossessed from the part so expropriated by giving notice to Landlord of such election so to terminate within ninety (90) days from the date of such dispossession.

In the event of an expropriation of any portion of Tenant's buildings or parking, if this lease shall not be terminated as hereinabove provided, it shall continue as to that portion of the said buildings or parking which shall not have been expropriated or taken, in which event Landlord shall, at its sole cost and expense, promptly and with due diligence restore said buildings as nearly as practicable to complete units of like quality and character as existed just prior to such expropriation. The annual rental shall abate during the period of demolition and restoration, and thereafter the annual rental shall be reduced in the proportion the ground floor area of the part of Tenant's buildings so expropriated shall bear to the total ground floor area of said buildings prior to such expropriation.

Without limiting the foregoing, in the event that more than ten percent (10%) of the land described in Exhibit "A" shall be expropriated by public or quasi-public authority, regardless of the improvements thereon, Tenant shall have the option to terminate this lease as of the date possession of the land shall be taken by such authority, by giving notice to Landlord of such election within ninety (90) days thereafter.

-9-

In the event this lease shall be terminated pursuant to this Article, any rental paid in advance shall be refunded to Tenant, and Tenant shall have an additional sixty (60) days, "rent free", within which to remove its property from the demised premises. All damages awarded for an expropriation of the Original Lease Parcel and all improvements thereon shall belong to the Landlord and all damages awarded for an expropriation of the Expansion Parcel and all improvements thereon shall belong to the Tenant; furthermore, nothing herein contained, however, shall prevent Tenant from claiming, proving, collecting and retaining any damages awarded for Tenant's fixtures and any leasehold improvements, whether on the Original Lease Parcel or the Expansion Parcel, loss of business, the bonus value of its leasehold estate or for any other damages compensible under the applicable laws of the jurisdiction in which the demised premises are located.

20. **Assignment and Subletting**. The premises hereby demised shall not be used for any unlawful purpose. Tenant may assign this lease or sublet the whole or any part of said demised premises; but, if it does so, it shall remain liable and responsible under this lease.

21. **Signs**. The demised premises shall be referred to by only such designation as Tenant may indicate. Landlord expressly recognizes that the service mark and trademark "K mart" is the valid and exclusive property of Tenant, and Landlord agrees that it shall not either during the term of this lease or thereafter directly or indirectly contest the validity of said mark "K mart," or any of Tenant's registrations pertaining thereto in the United States or elsewhere, nor adopt or use said mark or any term, word, mark of designation which is in any aspect similar to the mark of Tenant. Landlord further agrees that it will not at any time do or cause to be done any act or thing, directly or indirectly, contesting or in any way impairing or tending to impair any part of the Tenant's right, title and interest in the aforesaid mark, and Landlord shall not in any manner represent that it has ownership interest in the aforesaid mark or registration therefor, and specifically acknowledges that any use thereof pursuant to this lease shall not create in Landlord any right, title or interest in the aforesaid mark. Tenant shall have the option to erect pylon-type signs at its cost and expense upon any portion of the premises described in Exhibit "A." Any such sign shall be of such height and other dimensions as Tenant shall determine and shall bear such legend or inscription advertising Tenant's store as Tenant shall determine. Tenant shall have the option to utilize the lighting standards in the parking lot for advertising purposes by attaching, or causing to be attached, signs advertising any and all products and services as Tenant shall elect. Landlord shall not permit any other advertising signs, billboards or posters to be displayed on any portion of the premises described in Exhibit "A" hereof, without the prior written consent of Tenant.

22. **Ingress and Egress**. Landlord warrants, as a consideration for Tenant entering into this lease, that it will initially provide and will maintain during the lease term, ingress and egress facilities to public streets and highways in the number and substantially in the locations depicted on Exhibit "B", subject to unavoidable temporary closings or temporary relocations necessitated by public authority or other circumstances beyond Landlord's control.

23. **Landlord's Remedies**. If the rent reserved in this lease, or any part thereof, shall remain unpaid for a period of (30) days, or if Tenant shall be in default under any other provision of this lease and shall remain so for a period of thirty (30) days after notice to Tenant of said non-payment or other default, then, Landlord may, by giving notice to Tenant

-10-

at any time thereafter during the continuance of such default, either (a) terminate this lease, or (b) re-enter demised premises by summary proceedings, expel Tenant and remove all property therefrom, relet said premises at the best possible rent readily obtainable (making reasonable efforts therefor), and receive the rent therefrom; provided, however, Tenant shall remain liable for the equivalent of the amount of all rent reserved herein less the avails of reletting, if any, after deducting therefrom the reasonable costs of obtaining possession of said premises. Any and all monthly deficiencies so payable by Tenant shall be paid monthly on the date herein provided for the payment of rent. If any default by Tenant (except nonpayment of rent) cannot reasonably be remedied within thirty (30) days after notice of default, then, Tenant shall have such additional time as shall be reasonably necessary to remedy such default before this lease can be terminated or other remedy enforced by Landlord. Except for the legal remedy of damages (provided Landlord shall, in all instances, be required to mitigate damages) and the equitable remedy of an injunction, the remedies of Landlord herein shall be exclusive of any other remedies.

24. **Bankruptcy.** To the extent not prohibited by law, if a petition in bankruptcy shall be filed by Tenant, or if Tenant shall be adjudicated bankrupt, or if Tenant shall make a general assignment for the benefit of creditors, or if in any proceeding based upon the insolvency of Tenant a receiver of all the property of Tenant shall be appointed and shall not be discharged within ninety (90) days after such appointment, then, Landlord may terminate this lease by giving notice to Tenant of its intention so to do; provided, however, neither bankruptcy, insolvency, an assignment for the benefit of creditors nor the appointment of a receiver shall affect this lease or permit its termination so long as the covenants on the part of Tenant to be performed shall be performed by Tenant or someone claiming under it.

25. **Covenant of Title.** Landlord covenants, represents and warrants that it has full right and power to execute and perform this lease and to grant the estate demised herein and that Tenant, on payment of the rent and performance of the covenants and agreements hereof, shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto during the lease term without molestation or hindrance of any person whomsoever. There shall be no merger of this lease or the leasehold estate hereby created with the underlying fee estate by reason of the fact that the same person acquires or holds, directly or indirectly, this lease or the leasehold estate hereby created by any interest herein or in such leasehold estate, as well as the underlying fee estate or any interest therein. Landlord shall, at Tenant's expense, on or prior to August 15, 1989, furnish to Tenant agreements wherein each holder of any lien against the demised premises shall consent to this lease and warrant that Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such holder unless and until this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

26. **Mortgage Subordination.** Upon written request by Landlord and the holder of any first mortgage, Tenant shall execute and deliver an agreement subordinating this lease to any first mortgage upon the demised premises; provided, however, such subordination shall be upon the express condition that the validity of this lease shall be recognized by the mortgagee, and that notwithstanding any default by the mortgagor with respect to said mortgage or any foreclosure thereof, Tenant's possession and right of use under this lease

-11-

in and to the demised premises shall not be disturbed by such mortgagee unless and until this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

27. **Tenant Indemnifies Landlord.** During the lease term, Tenant shall indemnify and save Landlord harmless against all penalties, claims or demand of whatsoever nature arising from Tenant's use of the demised premises, except those which shall result, in whole or in part, and directly or indirectly, from the default or negligence of Landlord or other tenants in the shopping center of which the demised premises are a part.

28. **Tenant's Right to Cure Landlord's Defaults.** In the event Landlord shall neglect to pay when due any obligations on any mortgage or encumbrance affecting title to the demised premises and to which this lease shall be subordinate, or shall fail to perform any obligation specified in this lease, then Tenant may, after the continuance of any such default for seven (7) days after notice thereof by Tenant, pay said principal, interest or other charges or cure such default, all on behalf of and at the expense of Landlord, and do all necessary work and make all necessary payments in connection therewith, and Landlord shall on demand pay Tenant forthwith the amount so paid by Tenant together with interest thereon at the rate of ten percent (10%) per annum, and Tenant may withhold any and all rental payments thereafter due to Landlord and apply the same to the payment of such indebtedness.

Provided the holder of a properly recorded first mortgage shall have notified Tenant in writing that it is the holder of such lien on the demised premises and shall so request, Tenant shall (with respect to any obligations on any mortgage or encumbrance affecting title to the demised premises and to which this lease shall be subordinate) in the event it shall notify Landlord to correct any default, give a similar notice to such holder, and such holder shall be granted sixty (60) days after receipt thereof to correct or remedy Landlord's default.

29. **Condition of Premises at Termination.** At the expiration or earlier termination of the lease term, Tenant shall surrender the demised premises together with alterations, additions and improvements then a part thereof, in good order and condition, ordinary wear, tear and use thereof and loss or damage by casualty excepted. All furniture and trade fixtures installed in said buildings at the expense of Tenant or other occupant shall remain the property of Tenant or such other occupant; provided, however, Tenant shall, at any time and from time to time during the lease term, have the option to relinquish its property rights with respect to such trade fixtures (including, but not limited to air conditioning machinery and lighting fixtures), which option shall be exercised by notice of such relinquishment to Landlord, and from and after the exercise of said option, the property specified in said notice shall be the property of Landlord.

30. **Holding Over.** In the absence of any written agreement to the contrary, if Tenant should remain in occupancy of the demised premises after the expiration of the lease term, it shall so remain as a tenant from month-to-month and all provisions of this lease applicable to such tenancy shall remain in full force and effect.

31. **Notices.** Notices required under this lease shall be in writing and deemed to be properly served on receipt thereof if sent by certified or registered mail to the address set forth below, or to any subsequent address which Landlord or Tenant may designate for such purpose. Date of notice shall be the date seventy-two (72) hours after such notice is deposited

in the post office of the United States Postal Service. Notice shall be given as follows:

| | |
|---|---|
| If to Landlord: | Addison Realty Ltd.<br>840 Shady Branch Trail<br>DeLand, Florida  32724<br>Attn: Alan Quinn |
| With a copy to: | Stuart M. Saft, Esq.<br>Wolf, Haldenstein, Adler,<br>Freeman & Herz<br>270 Madison Avenue, 9th Floor<br>New York, New York  10016 |
| If to Tenant: | K mart Corporation<br>3100 West Big Beaver Road<br>Troy, Michigan  48084<br>Attn: Vice President Real Estate |
| With a copy to: | K mart Corporation<br>1184 North Citrus Avenue<br>Covina, California 91722<br>Attn: Real Estate Department |

32. **Captions and Definitions**. Captions of this lease are solely for convenience of reference and shall not in any way limit or amplify the terms and provisions hereof. The necessary grammatical changes which shall be required to make the provisions of this lease apply (a) in the plural sense if there shall be more than one Landlord, and (b) to any Landlord which shall be either a corporation, an association, a partnership, or an individual, male or female, shall in all instances be assumed as though in each case fully expressed. Unless otherwise provided, upon the termination of this lease under any of the Articles hereof, the parties hereto shall be relieved of any further liability hereunder except as to acts, omission or defaults occurring prior to such termination.

33. **Successors and Assigns**. The conditions, covenants and agreements contained in this lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns. All covenants and agreements of this lease shall run with the land.

34. **Severability**. If any one or more of the provisions contained herein shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, unenforceability shall not affect any other provision of this lease, but this lease shall be construed as if such invalid, illegal or unenforceable provision had not been contained herein.

35. **Choice Of Law**. This Lease shall be construed and enforced in accordance with the laws of the State of Idaho. The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either Landlord or Tenant.

36. **Waiver And Modifications**. The failure of either party to insist in any one or more instances upon the strict performance of any one or more of the agreements, terms, covenants, conditions or obligations of this lease, or to exercise any right, remedy or election herein contained, shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this lease, or the right to exercise such right, remedy or election, but the same shall continue and remain in full force and effect with respect to any subsequent breach, act or omission. This

lease may be changed or amended only by a writing signed by the party against whom enforcement thereof is sought.

37. **Memorandum of Lease.** The parties hereto have simultaneously with the execution and delivery of this lease executed and delivered an Amendment to the Memorandum which Landlord shall at its sole expense cause to be recorded on or prior to August 15, 1989, and returned to Tenant by Landlord within sixty (60) days thereafter.

38. **Estoppel Certificates.** Landlord and Tenant will, from time to time, upon twenty (20) days prior request by the other, cause to be executed, acknowledged and delivered a certificate stating that this lease is unmodified and in full force and effect (or, if there have been modifications, that this lease is in full force and effect as modified, and setting forth such modifications) and the amount of annual rental and the dates to which rental has been paid, the expiration date of the term, and either stating that to the knowledge of the signer of such certificate no default exists hereunder (and that the signer is unaware of any facts that may with the passage of time give rise to a default), or specifying each such default (or factual situation likely to give rise to same) of which the signer has knowledge. Any such certificate may be relied upon by any prospective purchaser, mortgagee, assignee or subtenant of the demised premises, and shall be in form and substance as the prospective purchaser, mortgagee, assignee or subtenant may, from time to time, reasonably request.

39. **Free From Liens.** Tenant agrees to pay and discharge any mechanics', materialmen's or other lien against the demised premises of Landlord's interest therein claimed in respect to any labor, services, materials, supplies or equipment furnished or alleged to have been furnished to or upon the request of Tenant, within thirty (30) days after the filing of any lien for record which Tenant does not contest. Immediately upon entry of final judgment in any such action in which tenant contests any such claim of lien, if such judgment shall establish the validity of the lien, Tenant shall fully pay and discharge such judgment or lien, as the case may be, and Tenant shall reimburse Landlord upon demand for any and all loss, damage and expense, including reasonable attorneys' fees, which Landlord may suffer or be put to by reason thereof.

IN WITNESS WHEREOF, the undersigned have executed these presents in triplicate in their respective capacities as the duly authorized representatives of the parties hereto and have affixed the seals of the parties hereto as of the day and year first above written.

ADDISON REALTY LIMITED
PARTNERSHIP, a Tennessee limited
partnership

By: Q Enterprises Inc., General Partner

By: _____
    Alan H. Quinn, President

K MART CORPORATION, a Michigan
corporation

By: _____
                    Vice President

Attest: _____
                    Assistant Secretary

-14-