THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
John C. Allerding, Esq. (*pro hac vice*)

*Counsel for Luxottica Retail North America Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.* | Case No. 18-23538-RDD |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF LUXOTTICA RETAIL NORTH AMERICA INC. FOR ENTRY OF AN ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, (II) COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT**

Luxottica Retail North America Inc. ("**Luxottica**"), by and through undersigned counsel, hereby moves for entry of an order: (i) pursuant to section 362 of title 11 of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings, Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holding Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Product, Inc.(8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Code (the "**Bankruptcy Code**"), granting relief from the automatic stay to permit Luxottica to terminate the License Agreement (as defined herein); or, in the alternative, (ii) pursuant to section 365(d)(2) of the Bankruptcy Code, compelling Sears, Roebuck and Co. ("**Sears**") to assume or reject the License Agreement (the "**Motion**"). In support of this Motion, Luxottica respectfully states as follows:

I.      **Preliminary Statement**

1.      After years of failing to comply with key terms of the License Agreement (as defined herein), which were designed to protect Luxottica from the very harms discussed herein, Sears now admits that it is unable to comply with those terms. Specifically, the License Agreement provides:

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

License Agreement, § 9.3 (emphasis added).[2] Sears' obligations could not be more clear.

2.      Luxottica recently learned through conversations related to the DIP Financing and Cash Collateral Motion[3] that prior to the petition date, Sears breached its contractual and fiduciary obligations by failing to hold the Trust Funds in trust – instead, commingling the Trust Funds and permitting the same to be used for Sears' own benefit. As a result, Sears failed to return $2.6 million of Luxottica's Trust Funds.

3.      Sears' failure to honor these key protections continues now, post-petition.

---

[2] The cash, checks, and credit sales documents (and the proceeds thereof) provided to Sears pursuant to the License Agreement are collectively referred to herein as the "**Trust Funds**."

[3] *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (ECF No. 7, the "**DIP Financing and Cash Collateral Motion**").

2

4. Setting aside Sears' misguided act of entering into an agreement that it knew it could not perform, and looking past its decision to withhold this fact from Luxottica for years, neither law nor equity permits Sears to continue to reap the benefits of an agreement that it does not honor itself.

5. Pursuant to the terms of the License Agreement, as a result of the above-described actions, Luxottica is entitled to terminate the License Agreement immediately by providing notice of termination. Luxottica does not believe that the automatic stay prevents it from doing so. However, out of an abundance of caution, Luxottica seeks relief from the automatic stay so that it can terminate the License Agreement pursuant to its terms.

6. Alternatively, to the extent that relief from stay is not granted, Luxottica seeks an order compelling assumption or rejection of the License Agreement. Luxottica is mindful that the default deadline for assumption or rejection is the confirmation hearing. However, the Bankruptcy Code expressly contemplates that this deadline may be shortened in compelling circumstances. Such circumstances exist here. If Sears cannot comply with the terms of the License Agreement, it has no choice but to reject.

7. The Court should not encourage the type of underhanded actions taken by Sears – actions that inappropriately shift the risk of its failure to Luxottica. Prior to the Petition Date, Luxottica requested certain provisions to protect it in the event of Sears' failure. Sears willfully ignored those provisions. Luxottica was harmed. Nevertheless, Luxottica was a willing and supportive partner of Sears through its reorganization efforts. And now again, Sears is willfully breaching those same obligations under the License Agreement – pushing the risk of a failed reorganization onto Luxottica.

8. Sears has not provided the reason why it cannot hold the Trust Funds in trust. Sears has not provided the reason why it refused to set up those processes over the past three years. But regardless of those reasons, Luxottica should not be forced into continuing to bear the risk of yet another Sears failure.

## II. Jurisdiction

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory predicates for the relief requested herein are sections 362 and 365(d)(2) of the Bankruptcy Code.

## III. Background

    *A.*     *Sears is required to hold the Trust Funds in Trust.*

12. On or around May 31, 2015, Sears and Luxottica entered into a License Agreement (as amended from time to time, the "**License Agreement**") pursuant to which Sears granted Luxottica a license to operate an optical goods and services business (Sears Optical) within certain Sears' store locations (collectively, the "**On-Premises Locations**"), certain free-standing locations (the "**Off-Premises Locations**"), and via the internet (www.searsoptical.com).[4] License Agreement, § 1.1.

13. Pursuant to the terms of the License Agreement:

    a.     Luxottica was required to have all checks accepted at the On-Premises Locations and Off-Site Premises Locations made payable to Sears or Sears Optical. License Agreement, § 9.1.

---

[4] The License Agreement includes a confidentiality provision that permits disclosure of its terms only in limited circumstances. While those circumstances exist here, permitted disclosure is limited to that which is necessary under those circumstances. As a result, Luxottica has summarized only the terms of the License Agreement and has not attached the License Agreement to this Motion. Luxottica will work with Sears to determine the most appropriate way to provide the Court with a copy of the License Agreement for its review in connection with this Motion.

4

b. Luxottica was required to accept certain credit cards bearing Sears' or a Sears affiliate's name for sales of goods and services at the On-Premises Locations, the Off-Premises Locations, and via the internet. Luxottica was further required to submit the documents relating to such Sears credit card receivables to Sears for settlement (i.e., Sears settled such credit card receivables directly with the issuing bank). License Agreement, § 9.2(a). Luxottica authorized Sears to collect such credit card receivables on Luxottica's behalf. License Agreement, § 9.2(c).

c. Luxottica was required to accept third-party credit cards at the On-Premises Locations and to submit the documents relating to such third-party credit card receivables to Sears for settlement with the respective credit card issuer (i.e., Sears settled such credit card receivables directly with the issuing bank). License Agreement, § 9.2(b).

e. Luxottica was required to process all transactions, including cash, check, and credit card transactions, made at the On-Premises Locations through the Sears Point of Sale System (the "**Sears POS System**").[5] License Agreement, § 9.2(c).

f. At the close of each business day, Luxottica was required to deliver the total of all cash, checks, and credit sales documents for transactions completed that day at the On-Premises Locations to Sears. License Agreement, § 9.3.

g. On a weekly basis, Sears was required to return the cash delivered by Luxottica under the License Agreement, as well as the cash collected by Sears on Luxottica's behalf with respect to the checks and credit card receivables (all credit card receivables for On-Premises Locations and Sears credit card receivables for Off-Site Location and internet transactions), net of a fee (the "**Company Fee**") that Sears was entitled to retain pursuant to the License Agreement. License Agreement, § 9.3.

h. Specifically, with respect to the cash, checks, and credit receivables generated by Luxottica and delivered to Sears pursuant to the License Agreement (i.e., the Trust Funds), the License Agreement provided that

> **[Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."**

---

[5] Portions of the transactions paid by a third-party issuer were excepted from this requirement.

     License Agreement, § 9.3 (emphasis added).

  i. Moreover, Sears collected payments and settlements with respect to checks and credit cards on behalf of Luxottica—not as its own accounts receivable. License Agreement, §§ 9.2(c); 9.3.

 B. *Sears is in breach its contractual and fiduciary obligations by failing to hold the Trust Funds in Trust.*

14. On October 15, 2018 (the "**Petition Date**"), Sears filed for protection under chapter 11 of the Bankruptcy Code. On that same date, Sears filed the DIP Financing and Cash Collateral Motion pursuant to which Sears requested authority to use certain cash for its continued operations and incur $600 million of post-petition financing secured by liens on, among other things, Debtors' cash, accounts, and accounts receivable.

15. On November 15, 2018, Luxottica filed its objection to the DIP Financing and Cash Collateral Motion (ECF No. 757, the "**Objection**"). Luxottica asserted its rights in the Trust Funds and objected to any assertion by Sears that Sears (i) had an interest in the Trust Funds in excess of the rights provided for under Section 9.3 and other relevant sections of the License Agreement; (ii) could provide the proposed DIP Lenders with a lien on the Trust Funds or the accounts in which the same was held; or (iii) could use the Trust Funds for any purpose not stated in the License Agreement. As stated in the Objection, Section 9.3 unambiguously requires Sears to hold all Trust Funds in trust for the benefit of Luxottica. Title to the Trust Funds never passes to Sears under the License Agreement.

16. Through discussions related to Luxottica's Objection, it was revealed that Sears did not – and, more importantly, still does not – hold the Trust Funds in a segregated account free from the liens granted to Sears' lenders. Instead, it was asserted that Sears commingled the Trust Funds with Sears' other funds – and then transferred those funds (or permitted those funds to be swept from the commingled account) to pay down Sears' revolving credit line debt.

6

17. Prior to the Petition Date, Sears held – or should have held – approximately $2.6 million of Trust Funds. It was represented to Luxottica that the above-referenced actions resulted in the transfer of all of these funds to Sears' lenders – leaving Luxottica with a general unsecured claim (which is unlikely to result in a meaningful recovery).

18. Recently, Sears revealed that it <u>continues</u> to engage in similar conduct contrary to the express terms of the License Agreement.

    C.    <u>*Sears committed other post-petition breaches of the License Agreement*</u>.

19. In addition to failing to hold the Trust Funds in trust, Sears committed other post-petition breaches of the License Agreement.

20. The License Agreement requires Sears to return the Trust Funds (minus the Company Fee) back to Luxottica on a weekly basis. License Agreement, § 9.3.

21. On or around November 19, 2018, Sears failed to remit $198,553 of Trust Funds to Luxottica as required by the License Agreement. When Luxottica addressed this issue with Sears, Sears instructed Luxottica to apply funds from a prepetition advance held by Luxottica to secure Sears' prepetition performance of its contractual and fiduciary obligations under the License Agreement. In other words, Sears unilaterally attempted to use Luxottica's cash collateral without permission from either Luxottica or this Court in violation of Section 363 of the Bankruptcy Code.

22. Moreover, violations of the Bankruptcy Code aside, Sears was prohibited from taking such action by the License Agreement itself. The License Agreement provides:

> The Advance will be adjusted by [Sears] on a quarterly basis to maintain an advance equal to 50% of the average weekly settlement to be paid by [Sears] for the applicable fiscal quarter, as calculated consistent with the prior sentence. Any adjustment shall be made <u>on the first day of the applicable [Sears] fiscal quarter</u> by either a payment by [Sears] for an increase in the amount of the

        Advance or an offset by [Sears] against the next weekly settlement for a reduction in the amount of the advance.

License Agreement, § 9.3(b) (emphasis added). In other words, if Sears was trying to adjust the advance, and even if that adjustment was not a violation of the Bankruptcy Code, Sears could not make an adjustment at any time that it wanted. Sears had to make the adjustment "on the first day of the applicable Company fiscal quarter." License Agreement, § 9.3(b).

    D.    *<u>Luxottica is entitled to terminate the License Agreement as a result of Sears' several breaches</u>*.

23. The License Agreement provides Luxottica with the right to immediately terminate the License Agreement (subject only to the requirement to provide Sears with notice) if Sears "attempts to transfer or encumber any property owned by [Luxottica], except as otherwise permitted under applicable Law." License Agreement, § 14.8(e).

24. As noted above, it was represented to Luxottica that Sears subjected – <u>and is continuing to subject</u> – the Trust Funds to the liens of Sears' lenders by placing those funds (or permitting those funds to be placed) in an account subject to the liens of Sears' lenders.

25. In addition, Sears commingled the Trust Funds with its own funds and then transferred the commingled funds to Sears' lenders.

26. The License Agreement also provides Luxottica with the right to terminate the License Agreement, after the expiration of a ten-day cure period, if Sears fails to return the Trust Funds back to Luxottica pursuant to the terms of the License Agreement. License Agreement, § 14.7.1(a). The cure period begins to run on the date that Sears receives notice of the breach. License Agreement, § 14.7.1(a).

27. Not later than November 23, 2018, Luxottica provided notice to Sears of its failure to remit the Trust Funds as referenced in paragraphs 20-23 of this Motion.

8

**IV.    Relief Requested**

28.    By this Motion, Luxottica respectfully requests entry of an order: (i) pursuant to section 365(d)(2) of the Bankruptcy Code, compelling Sears to assume or reject the License Agreement; or, in the alternative, (ii) pursuant to section 362 of the Bankruptcy Code, granting relief from the automatic stay to permit Luxottica to terminate the License Agreement.

**V.    Basis for Relief Requested**

*A.    Cause Exists For Modification Of The Automatic Stay To Permit Luxottica To Terminate The License Agreement.*

29.    Section 362(d)(1) of the Bankruptcy Code states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause." *See Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002). Because the Bankruptcy Code does not define "cause," courts conduct a case-by-case inquiry and look into the totality of the circumstances to determine whether sufficient cause exists to grant relief from the automatic stay. *See, e.g., In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 738 (Bankr. S.D.N.Y. 2004).

30.    It is well settled that the decision to lift the automatic stay is within the discretion of the bankruptcy court. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). In determining whether to lift the automatic stay, courts consider the impact of the stay on the parties and the balance of harm if the stay is lifted. *In re Abrantes Constr. Corp.*, 132 B.R. 234, 238 (N.D.N.Y. 1991).

31.    In the instant case, ample cause exists to lift the automatic stay to permit Luxottica to terminate the License Agreement. Sears breached – <u>and continues to be in breach of</u> – the License Agreement by (i) commingling the Trust Funds with Sears' own funds; (ii)

9

wrongfully utilizing the Trust Funds (or permitting the Trust Funds to be utilized) for Sears' own benefit; (iii) subjecting the Trust Funds to the liens of its lenders; (iv) transferring the Trust Funds (or permitting the Trust Funds to be transferred) to third-parties; and (v) failing to remit the Trust Funds to Luxottica as required pursuant to the terms of the License Agreement.

32. More importantly, Sears alleges that it <u>cannot</u> comply with the terms of the License Agreement that require it to hold the Trust Funds in trust for Luxottica's benefit. While the Court's primary focus is appropriately on Sears' inability to comply with the terms of the License Agreement post-petition, it should not escape the Court's attention that Sears apparently entered into the License Agreement knowing that it would not adhere to its obligations thereunder. Moreover, Sears failed to put systems in place over a three-plus year period that would permit it to comply with the terms of the License Agreement. Instead, Sears hid the non-compliance from Luxottica until it was too late. The equities here do not favor Sears.

33. For these reasons, sufficient cause exists for this Court to lift the automatic stay to permit Luxottica to terminate the License Agreement.

    B.    *<u>The Court should compel Sears to assume or reject the License Agreement</u>.*

34. In the alternative, Luxottica requests that the Court compel Sears to assume or reject the License Agreement immediately. Neither law nor equity permits Sears to subject Luxottica to additional loss as a result of Sears' continuing breach of its contractual and fiduciary obligations.

35. Section 365(d)(2) of the Bankruptcy Code authorizes the Court to require a debtor to assume or reject an executory contract within a specified period of time upon the request of any party to such executory contract. Specifically, section 365(d)(2) states:

> the trustee may assume or reject an executory contract…at any time before the confirmation of a plan…but the court, on request of

> any party to such contract…may order the trustee to determine within a specified period of time whether to assume or reject such contract[.]

11 U.S.C. § 365(d)(2).

36. There is no reasonable dispute that the License Agreement here is executory.[6]

37. The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion "in light of the circumstances of each case." *Theatre Holding Corp. v. Mauro (In re Theatre Holding Corp.)*, 681 F.2d 102, 105 (2d Cir. 1982); *see also In re Dana Corp.*, 350 B.R. 144, 147–48 (Bankr. S.D.N.Y. 2006) (citations omitted).

38. Although the general rule under § 365 is intended to afford a debtor reasonable time in which to make a determination with respect to its executory contracts, such a determination cannot be made without regard to the interest of non-debtor parties to such agreements. Indeed, courts must consider the balance of harms to the litigants in determining when to require a decision on assumption or rejection under § 365(d)(2). *See In re Beker Indus. Corp.*, 64 B.R. 890, 896–97 (Bankr. S.D.N.Y. 1986) (granting motion to compel where uncertainty and harm to non-debtor party outweighed potential benefit to the debtor's estate); *see also In re Enron*, 279 B.R. 695, 709 (Bankr. S.D.N.Y. 2002) (setting date certain by which the debtor must assume or reject contracts). In considering the balance of harms, Courts may look at a variety of factors, including:

---

[6] Although the Bankruptcy Code does not define what constitutes an executory contract, the legislative history to section 365 of the Bankruptcy Code provides that, "though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303. In determining whether a contract is executory, courts within the Second Circuit follow the definition proposed by Professor Countryman, who defines an executory contract as one "under which the obligation of both the bankrupt and the other party to the contract are so far unperfected that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 460 (1973) quoted in *In re Helm*, 335 B.R. 528, 534 (Bankr. S.D.N.Y. 2006); *see also In re Riodizio, Inc.*, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997); *In re 375 Park Ave. Assocs., Inc.*, 182 B.R. 690, 697 (Bankr. S.D.N.Y. 1995); *In re Chateaugay Corp.*, 102 B.R. 335, 344–45 (Bankr. S.D.N.Y. 1989).

      a. the importance of the contracts to the debtor's business and reorganization;

      b. the debtor's failure or ability to satisfy post-petition obligations;

      c. the nature of the interests at stake;

      d. the balance of harm to the litigants and the good to be achieved;

      e. whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan;

      f. the safeguards afforded the litigants;

      g. the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

      h. whether there is a need for judicial determination as to whether an executory contract exists;

      i. whether the exclusivity has been terminated;

      j. whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; and

      k. the purpose of chapter 11, which is to permit successful rehabilitation of debtors.

*In re Dana Corp.*, 350 at 147–48 (citations omitted).

39. Not all of these factors need be considered in every case. Luxottica acknowledges that not all of the factors may weigh in its favor here. But that is not the standard. The Court need not get caught up in counting tally marks. Instead, the particular circumstances of a given case may render some of these factors so important that they cannot be ignored. In these situations, the Court should give great weight to this small but meaningful handful of factors.

40. Here, the most meaningful factors – equity, respect for the bankruptcy process, and the confidence of post-petition vendors willing to do business with a bankrupt debtor and give it a chance at reorganization – weigh in Luxottica's favor.

41. A debtor's desire to assess and obtain a benefit from an executory contract or unexpired lease should not come at the expense of the non-debtor party. *See In re Beker Indus. Corp.*, 64 B.R. at 898–99 (stating "there is no indication that an obligee is to be forced…to fund someone else's desire for [maximizing] benefit" to the debtor's estate). In fact, when enacting section 365(d)(2), it was Congress's intention to provide a means to resolve any uncertainty relating to the status of a debtor's contract with non-debtor parties. *See id.* at 989 (citing H. Rep. No. 95-595, 95th Cong., 1st Sess. 348–49 (1977)). The *Beker* court stated that "[s]uch doubt from the risk of rejection, when it [] jeopardiz[es] a major investment, can be paralyzing, and far outweigh[s] the benefit to be derived by creditors." *Id.* (citing *In re Petur U.S.A. Instrument Co., Inc.*, 35 B.R. 561 (Bankr. W.D. Wash. 1983)).

42. Correspondingly, the goals and protections of chapter 11 extend equally to both debtors and creditors. *See In re Levinsky*, 23 B.R. 210, 215 (Bankr. E.D.N.Y. 1982); *see also Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 119 n. 14 (1939) (acknowledging that "[t]he preservation of business enterprises must not be at the expense of creditors . . .") (citations omitted); *Carvalho v. Fed. Nat'l. Mortgage Bank Ass'n. (In re Carvalho)*, 335 F.3d 45, 51 (1st Cir. 2003) ("Bankruptcy law endeavors to strike an equitable balance between the debtors' needs – especially the need for a fresh start – and the creditors' rights.").

43. Here, it is important that Sears assume or reject the License Agreement at this time. Sears is in breach of its contractual and fiduciary duties – and does not have the ability (nor does it appear willing) to comply with those duties. Sears' prepetition actions exposed Luxottica to millions of dollars of harm. Now, Sears' post-petition actions do the same.

44. For these reasons, Luxottica respectfully requests this Court compel Sears to assume or reject the License Agreement.

13

**Motion Practice**

45.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, Luxottica submits that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

**No Prior Request**

46.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, Luxottica respectfully requests entry of an order granting (i) relief from the automatic stay to permit Luxottica to terminate the License Agreement; or, in the alternative, (ii) compelling Sears to assume or reject the License Agreement on or before December 20, 2018; and granting such other further relief as is just and proper.

Dated: November 30, 2018  
New York, New York

Respectfully submitted,

*/s/ John C. Allerding*  
THOMPSON HINE LLP  
3900 Key Center  
127 Public Square  
Cleveland, Ohio 44114-1291  
Telephone: 216.566.5500  
Facsimile: 216.566.5800  
John C. Allerding (*pro hac vice*)

*Counsel for Luxottica Retail North America Inc.*