IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT - FIRST DISTRICT

| | |
|---|---|
| MARIO ALIANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 CH 16132 |
| | ) (transferred to Municipal Department) |
| SEARS, ROEBUCK AND CO., | ) |
| | ) |
| Defendant. | ) |

### Memorandum Opinion and Order

Mario Aliano ("Aliano") brought suit against Sears, Roebuck and Co. ("Sears") for a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"). While the case was originally filed as a class action, Aliano withdrew his motion for class certification and pursued his claim individually. The case was transferred to the Municipal Department. Following a bench trial, the court found in favor of Aliano and against Sears in the amount of $3.10. Aliano subsequently filed his original fee petition seeking attorney fees pursuant to the fee-shifting provision of the ICFA. 815 ILCS 505/10a(c). Sears appealed the court's award in favor of Aliano before the court ruled on the fee petition ("First Appeal"). Consequently, the appellate court denied the appeal for a lack of jurisdiction. *Aliano v. Sears, Roebuck & Co.*, 2014 IL App (1st) 132622-U, ¶1, ¶12. The court awarded Aliano fees and Sears filed a second appeal, contesting the $3.10 judgement in favor of Aliano and the award of fees ("Second Appeal").

In the Second Appeal, the appellate court affirmed this court's judgment of $3.10 in favor of Aliano. However, the appellate court reversed the fee award. The appellate Court held that this court erred in admitting Aliano's billing statement itemizing the services from October 27, 2011- December 31, 2013 ("2013 records") into evidence because the original handwritten time sheets underlying the statement had been discarded by Aliano's counsel. The matter was remanded with directions to allow Aliano an opportunity to prove the fees to which he is entitled through admissible evidence. *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367, ¶ 34. Aliano may establish the fees he is entitled "by means other than the billing statement." *Id.* Additionally, he may introduce secondary evidence of the contents of the destroyed originals if he "repels every inference of fraudulent design" in the destruction of the original timesheets. *Id. at 34.*

Subsequently, Aliano filed a revised petition which excised paralegal time, seeking $332,320.00 for the fees accrued during the entirety of the litigation (October 27, 2011- June 17, 2016). The court conducted an evidentiary hearing, limited in scope by agreement among the parties, to the fees accrued between October 27, 2011 and December 31, 2013.

Sears contests the reasonableness of the petition. Sears disputes the reasonableness of the

**Exhibit 1**

hourly rates charged by each of Aliano's counsel contending that the materials submitted in support of their rates fail to demonstrate their reasonableness. Sears also claims that the disparity between the rates charged by Sears and Aliano's counsel demonstrates their unreasonableness. Sears contests the admissibility of the 2013 records, arguing that the records are inadmissible because Sears was unable to test their accuracy through cross-examination. Sears also disputes the reasonableness of the legal services performed between October 27, 2011-December 31, 2013. Moreover, Sears argues that Aliano may not recover the fees expended on his original petition or on the First or Second Appeals. Sears disputes the reasonableness of the original petition and the time expended on the Second Appeal. Sears also disputes the reasonableness of the revised petition and contests Aliano's costs.

## *Facts*

At the evidentiary hearing, Aliano called one witness, Thomas Zimmerman (Aliano's lead counsel) and offered many exhibits to support his revised petition. While Aliano submitted the 2013 records, the court reserved ruling on their admissibility. Aliano also submitted evidence of the work performed from January 1, 2014-June 17, 2016. In Aliano's counsel's electronic itemized billing records, each entry specifies the task performed, who performed the task, the date the work was carried out, and the amount of time expended on the task, *lodestar* amount for each entry.

Aliano also submits counsel's resumes, the Laffey Matrix, and declarations from Chicago consumer fraud litigators to support his counsel's rates. Aliano also proffers two declarations from lawyers in class action cases regarding their hourly rates, a memorandum written by Zimmerman supporting a fee petition in a federal class action case, the order awarding fees in that case, and a paid invoice charging a $500 rate. Zimmerman also testified to the reasonableness of the rates charged by the attorneys at Zimmerman Law Offices, that he and his attorneys had charged similar rates for similar work in prior cases.

Zimmerman testified about how the 2013 records were prepared. He testified that the attorneys working on Aliano's case recorded their work by filling out handwritten time sheets on a daily basis. These handwritten sheets provided the name of the case, descriptions of the tasks performed, the date it was performed, the name of the attorney carrying out the task, and the amount of time expended on the task. On a monthly basis, the handwritten sheets were given to the secretary and entered verbatim into a computer program called Timeslips, which produces an itemized statement. The original time sheets were destroyed after being entered into Timeslips. On January 1, 2014, Zimmerman Law Offices abandoned this timekeeping procedure, opting for its attorneys to directly enter their billing information into Timeslips.

Zimmerman admits to destroying the handwritten sheets, but denies doing so in bad faith. He claims that he did not dispose of the handwritten sheets to prevent their use in court, to hide information, or keep them from being used when his petition was contested. He asserts that the information on the handwritten sheets is identical to the information contained on the Timeslips records. He further says that the sole reason he had jettisoned the handwritten sheets was because there was no reason to keep duplicate copies of billing records.

Additionally, Zimmerman testified to the hours worked prior to 2014 by refreshing his recollection with a spreadsheet he prepared to summarize his firm's work. He prepared the spreadsheet after the review of "his prior notes, the pleadings, the time entries, [and] the bills...." He refreshed his recollection by looking at the spreadsheet many times. The spreadsheet entries duplicated many entries found in the 2013 records.

### *Discussion*

A prevailing plaintiff may obtain an award if allocating fees under the ICFA. 815 ILCS 505/10a(c). The market rate for similar services performed by comparable lawyers constitutes a *reasonable hourly rate*. *Demitro v. GMAC*, 388 Ill. App. 3d 15, 23 (1st Dist. 2009). An attorney's actual billing rate for similar work constitutes presumptive evidence of the appropriate market rate. *Jones v. Lockard*, 2011 IL App (3d) 100535, ¶ 46. The petition should contain information supporting the rate requested in the form of (i) an attestation by counsel of the rates charged in other, non-contingent matters and/or fee awards received in other similar litigation, (ii) affidavits of other attorneys in the field attesting to the range of market rates for attorneys of comparable skill and experience, and (iii) a discussion of awards in other reported cases. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 114.

Generally, a plaintiff is entitled only to those fees incurred on his or her prevailing claims. *Cannon v. William Chevrolet/Geo, Inc.*, 341 Ill. App. 3d 674, 686 (1st Dist. 2003). However, the fact that a litigant is not successful on all claims does not extinguish the right to attorney fees. *Powers v. Rockford Stop-N-Go*, 326 Ill. App. 3d 511, 515 (2nd Dist. 2001). To prevail, a party must succeed on a significant issue and achieve some benefit in bringing suit. *Peleton Inc., v. McGivern's Inc.*, 375 Ill. App. 3d 222, 227 (1st Dist. 2007). Courts award fees to parties for their work on appeal provided they prevail on appeal as they did at trial. *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 35. The ICFA authorizes the award of appellate fees to prevailing parties. *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 534 (1st Dist. 1992).

In a fee-shifting case, the fact that the amount of the fees sought exceeds the client's recovery, even by a large margin, does not justify rejection of the amount sought. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 104. Parties seeking fees, however, bear the burden of presenting sufficient evidence establishing reasonableness. *Harris Trust & Savings Bank v. American National Bank & Trust Co.*, 230 Ill. App. 3d 591, 595-96 (1st Dist. 1992). The petition must contain hours that are *reasonably expended* on the litigation; hours that are "excessive, redundant, or otherwise unnecessary" must be excised. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Petitioners must exercise *billing judgment* by making good-faith efforts to exclude excessive and unreasonable hours. *Id.* at 434. The petition must specify the "services performed, by whom they were performed, the time expended theron, and the hourly rate charged therefore." *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984-86 (1st Dist. 1987).

Petitioners must present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. *Id.* at 984. Generally, parties seeking the admission of computer-stored data produced by inputting "information contained in original documents" must present the original documents in court or produce them

to the opposing party. *Aliano v. Sears, Roebuck & Co.,* 2015 IL App (1st) 143367, ¶ 31. However, secondary evidence of computer-stored data may be admissible notwithstanding the absence of the originals. *Id.* Secondary evidence becomes admissible where the proponent shows it destroyed the original without any intention to prevent its use as evidence and by repelling every inference of fraudulent design in its destruction. *Id.* Evidence from "which a fee award may be calculated" must be introduced, but it may be secondary evidence. *Id*

### Hourly Rates

Sears contends that Aliano fails to prove that Zimmerman's $500 hourly rate constitutes a reasonable market rate for an individual consumer fraud case. Aliano submitted the following materials to support Zimmerman's rate: Zimmerman's resume, the Laffey Matrix, two declarations from lawyers in class action cases concerning their hourly rates, two declarations by Chicago consumer fraud litigators, a memorandum written by Zimmerman supporting a fee petition in a federal class action case, the order awarding fees in that case, and Zimmerman's testimony during the evidentiary hearing supporting his hourly rate.

Aliano cites federal district court approval of rates higher than Zimmerman in consumer cases. Further, Aliano states that both the Circuit Court of Cook County and the District Court for the Northern District of Illinois have approved his rates exceeding $500 per hour in multiple consumer cases. Aliano also produces declarations from other consumer fraud attorneys with comparable skills and experience attesting to their rates. For example, Jay Edelson, a Chicago consumer fraud litigator of similar experience to Zimmerman, charges a rate of $675. Like Zimmerman, Edelson has practiced consumer fraud litigation in the Chicago market for nearly twenty years. Further, Aliano produces a paid invoice in a breach of contact case reflecting Zimmerman's $500 rate. Though not a consumer fraud action, the fact that the client paid the bill demonstrates the presumptive reasonableness of the rate. Moreover, Sears fails to demonstrate that the rates charged in class action consumer fraud cases differ from rates charged in individual consumer fraud cases. The court finds that Zimmerman's $500 rate constitutes a reasonable market rate.

Sears disputes the reasonableness of Sharon Harris' $500 rate, Adam Tamburelli's $400 rate. It also disputes Frank Stretz, Nick Hagman, and Matt De Re's $300 rates. Harris has 17 years of experience in consumer litigation and has been approved at $525 per hour in two other cases. Tamburelli's rate has been approved at $400 per hour or higher in multiple consumer cases and had six years of experience at the time of this litigation. De Re and Hagman have both been approved at $325 per hour in eight consumer cases; Stretz was approved at the same rate in two consumer cases. Moreover, the affidavit of Christopher Langone regarding Chicago market hourly rates for consumer fraud litigation further corroborates the reasonableness of these rates. The affidavit states that attorneys in the Chicago legal market with 15-20 years of experience charge $650-$750, 5-10 years of experience charge between $375-$500, and 1-3 years of experience charge $325-$400. Moreover, Sears fails to cite authority supporting its proposition that a plaintiff's counsel's rate should be proportional to the defense counsel's rate.

### Admissibility of the 2013 Records

Aliano contends secondary evidence of the destroyed timesheets becomes admissible because the evidence establishes that Zimmerman destroyed the original without any intention to prevent its use as evidence and by repelling every inference of fraudulent design in its destruction. As secondary evidence, Aliano moves into evidence the 2013 records. Additionally Zimmerman testified to his refreshed recollection of the hours worked. Sears does not argue that Zimmerman destroyed the original with any intention to prevent its use as evidence or that he failed to repel every inference of fraudulent design in its destruction. It objects to the admission of the 2013 records. It vigorously attacks the credibility of Zimmerman's refreshed recollection testimony. It also attacks Zimmerman's credibility that he observed Tamborelli work 4.7 hours on July 11, 2012.

Because Sears was unable to test their accuracy through cross examination, the 2013 records are inadmissible. *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) at ¶ 33. The absence of the original timesheets precludes the admission of the 2013 records. Aliano may only establish the fees he is entitled "by means other than" the 2013 records. *Id.* at 34. However, Aliano may introduce secondary evidence if he "repels every inference of fraudulent design" in the destruction of the original timesheets. *Id.*

During the hearing Zimmerman testified as to the destruction of the original time sheets, stating the he disposed of the sheets once they had been copied into the Timeslips program. He testified as to the authenticity of the Timeslips records, stating that the information contained on the handwritten sheets was transferred directly into the Timeslips program and that the information on the Timeslips bill is identical to the handwritten sheets. He claimed that he did not throw away the handwritten time sheets to prevent their use in court or to hide any information. Zimmerman testified that the sole reason he disposed of the handwritten sheets was because there was no reason to keep duplicate copies of billing records. Apparently ignorant of the requirement that original timesheets be preserved, he ineptly destroyed the precise documents required. Although Zimmerman displays extreme incompetence with respect to the proper preservation of billing records, he exhibited no intent to defraud Sears.

Sears' cross of Zimmerman never suggests the destruction of the timesheets was fraudulent. It never challenges his credibility regarding his good faith in the destruction of the timesheets. Sears never argues that Zimmerman did not work the hours billed. Indeed, it never argues that Aliano failed to repel every inference of fraud. Given his unrebutted and unchallenged testimony regarding his good faith with respect to the destruction of time sheets, the court finds that Zimmerman destroyed the sheets in good faith and repelled every inference of fraudulent design. Consequently, secondary evidence may be admitted.

Zimmerman testified concerning the legal services Zimmerman Law Offices performed prior to 2014. While he possessed no contemporaneous recollection, his recollection was refreshed. Sears does not argue that Zimmerman's recollection was improperly refreshed. Instead, it asks the court to find that the spreadsheet "did not revive the witness' recollection." It

asks the court to discredit Zimmerman's testimony that his recollection was refreshed because the refreshed recollections were too numerous and document used to refresh recollection contains many entries duplicating entries found in the 2013 records.

Zimmerman refreshed his recollection 147 times with a spreadsheet he prepared in advance of the hearing. Sears alleges that entries on the spreadsheet duplicate entries found in the 2013 records 200 times. Because of the numerous refreshed recollections and these duplications, Sears argues the court must discredit Zimmerman's refreshed recollection. While 147 refreshed recollections is unusual, it is not impossible that Zimmerman could call to mind numerous past events after the review of the spreadsheet and, before that, review of "his prior notes, the pleadings, the time entries, [and] the bills…" With reference to the duplications, because Zimmerman used the 2013 records to prepare the spreadsheet, it is not surprising that many entries match. Sears tested "the reliability and accuracy" of Zimmerman's refreshed recollection through a vigorous cross-examination. *Aliano* at 31. He remained unwavering in his insistence that his memory had been revived. The Court finds his memory was revived.

Sears, however, scores one solid blow on cross. It successfully challenges Zimmerman's refreshed recollection regarding the work of Tamborelli. He *recalls* everything Tamborelli did on 7/12/12. He incredibly claims to be with him constantly for 4.7 hours, accompanying him even to the bathroom. The court deletes billing for 4.7 hours from the bill, totaling $1,880.

With that exception, Zimmerman testified credibly. Thus, Aliano proves the hours worked "by means other than" the 2013 records (*Aliano* at 34.) and we must determine the reasonableness of the hours billed prior to 2014.

### Reasonableness of the Hours Prior to 2014

Sears contests the reasonableness of hours prior to 2014. All but two entries contain sufficient detail. The court strikes the following entries for violating *Kaiser*. The 1/26/12 entry: "Prepare for arbitration hearing" is a vague generalized description disapproved in *Kaiser*. Likewise, the 11/1/12 entry: "final trial preparation" fails to provide sufficient detail regarding the nature of the task. The first entry accounted for 2.3 hours billed at a reasonable rate of $500 per hour, the second accounted for 1.2 hours billed at $400 per hour for a lodestar of $1,630. Consequently, the court strikes these entries.

Sears argues that certain legal services performed by Aliano's counsel constitute excessive and unnecessary hours. The 3/1/12 entry: "Conference with client regarding arbitration award" and the entry for 3/26/12: "Conference with client regarding rejection of arbitrator's award" are excessive. Spending 1.5 hours discussing the arbitrator's award with the plaintiff is unnecessary; the court reduces the time to .5 hours. The task was billed at a $500 rate. Consequently, the court reduces Aliano's total fee award by $500, the difference between the original charge of $750 and the court's reduced award of $250.

Because of Zimmerman's extensive experience and knowledge in consumer fraud litigation, the court reduces the following entries for a lack of *billing judgment* under *Hensley*. The court finds the 12/4/12 entry: "Review law relative to sufficiency of our Rule 237 notice"

and the 12/5/12 entry: "Review law relative to judicial notice" excessive. Further, the 4/16/13 entry: "Research public policy of Illinois relative to unfair practice argument in reply brief" is excessive. An attorney with over 20 years of experience litigating consumer fraud cases would be well familiar with this law and policy. The court reduces the total 5.3 hours expended on these tasks to 1.0 hour. The tasks were billed at a $500 rate. The court reduces the amount billed, $2,650, by $2,150, awarding $500 for these entries.

The 2/6/13 entry: "Review law relative to ICFA deceptive acts and practices," the 2/7/13 entry: "Review law relative to ICFA unfair acts and practices," and the 2/8/2013 entry: "Review Law relative to voluntary payment doctrine" constitutes unnecessary, excessive, and redundant hours in light of Zimmerman's extensive experience. Expending 7.1 hours on reviewing and researching the fundamentals of consumer fraud law in such matters constitutes excessive and unreasonable billing. The court reduces the amount to 1.0 hour. These tasks were billed at a $500 rate. The court reduces the amount billed, $3,550, by $3,050, awarding $500 for these tasks

Because of Tamburelli's extensive experience and knowledge regarding consumer fraud litigation, the court reduces the following entries for a lack of *billing judgment*. The 7/11/12 entry: "Legal research regarding attorney fees under the CFA and mootness. Check cites in defendant's brief" is excessive. Because attorney fees make up a routine part of Tamburelli's practice, the court finds 4.7 hours of research excessive. The court finds 1.7 hours reasonable. The task was billed at a $400 rate. The court reduces the amount billed, $1,880, by $1,200, awarding $680 for these tasks.

Further, the entries for 1/10/13: "Legal research regarding deceptive vs. unfair conduct" and "Legal research regarding voluntary payment doctrine as it pertains to the consumer fraud act" constitute excessive billing. Again, these matters make up the core of Tamburelli's practice and should not require extensive research. The court reduces the total 3.2 hours expended to 1.0 hour. The tasks were billed at a $400 rate. The court reduces the amount billed, $1,280, by $880, awarding $400 dollars for these services.

**Fees for the First Appeal**

Aliano argues he prevailed in the First Appeal because his $3.10 judgment ultimately was upheld in the Second Appeal. Aliano also alleges that even if not found to constitute the prevailing party in the First Appeal, he is entitled to the time expended on briefing the First Appeal because it was used as the basis for his appellate brief in the Second Appeal.

The court finds that neither party prevailed in the First Appeal. The First Appeal was dismissed for a lack of jurisdiction. Consequently, no significant issue was decided in the First Appeal. There were no decisions on the merits and no findings upon which either party prevailed. Because neither party constitutes a prevailing party, fees may not be awarded. Moreover, Aliano fails to cite any authority supporting his contention that prevailing party determinations may be based upon aggregated appellate results. Aliano claims to have expended 63 hours on the First Appeal for a lodestar of $30,910. The court denies Aliano's request for fees for the First Appeal, deducting the amount from the award.

**Fees for the Second Appeal and Original Fee Petition**

Sear's contends that both parties prevailed on significant issues in the Second Appeal or, alternatively, that neither party prevailed. Sears argues that it won the most *economically significant claim* because of the reversal of the fee award. However, Sears fails to cite any authority supporting its proposition that the dollar value of the judgment determines an issue's significance. The significant issue in this case was whether Sear's violated the ICFA, the sole cause of action in this litigation. The appellate court affirmed the judgment in favor of Aliano holding that he had proved each element of his ICFA claim. The fee award is incidental to and derivative of whether Sears violated the ICFA. The appellate court awarded 100% of the relief Aliano sought and to which he was entitled under the ICFA. Further, Aliano achieved a benefit in bringing suit. Though the individual sales tax overcharge may be relatively small, the overcharges could aggregate very substantial losses and injury to the public. Consequently, Aliano prevailed and is entitled to fees for the Second Appeal.

Sears argues that Aliano achieved limited success on the Second Appeal and that he fails to differentiate in his petition between hours spent defending his $3.10 judgment and the time spent defending the *unsuccessful* fee award. Though a fee award may be reduced in light of a plaintiff's limited success, here Aliano prevailed on the sole claim and won 100% of the relief sought. While a fee petition must delineate between hours spent on successful claims and unsuccessful claims, Sears cites no authority holding that a petition for fees constitutes a separate cause of action. Sears also contends that Aliano may not recover for the time expended on his original fee petition because it was used as the basis to support the fee award that was reversed in the Second Appeal. Consequently, Sears argues that Aliano was not a prevailing party as to his original fee petition. However, Sears cites no authority that a party must prevail as to an initial petition in order for a court to award fees for the time expended on that document. Consequently, Aliano is entitled to the reasonable fees expended on his original fee petition.

**Reasonableness of Time Spent on the Second Appeal and the Original Fee Petition**

Sears disputes the reasonableness of the time Aliano expended on Second Appeal and his original fee petition. However, the court found no instances of excessive, redundant, or otherwise unnecessary hours expended on the Second Appeal. The court did not find neither duplicative entries nor occurrences of overstaffing. Consequently, the court need not make any deductions from the total fee award for the time expended on the Second Appeal.

With regards to the original fee petition, only one entry is insufficient due to a lack of billing judgment. The 9/27/13 entry: "Review law relative to discovery in fee petition hearing" is excessive. An attorney with over 20 years of experience litigating consumer fraud cases should know the discovery laws concerning his primary practice area. The court reduces the total 2.1 hours expended on this task to .5 hours. The task was billed at a $500 rate. The court reduces the amount billed, $1,080, by $800, awarding $250.

**Reasonableness of the Revised Fee Petition**

Sears disputes the reasonableness of Aliano's revised fee petition. First, Sears argues that the lack of proportionality between the judgment and the requested fee award renders the petition unreasonable on its face. However, the fact that the amount of fees sought exceeds the client's recovery, even by a large margin, does not, standing alone, justify rejection of the amount sought. Second, Sears contends that the petition contains aggregated block billing, vague time descriptions, and redundant work. The majority of Aliano's counsel's entries contain sufficient detail regarding the nature of the tasks, their necessity, and their relation to the litigation. Each entry specifies the task performed, who performed the task, the date the work was carried out, and the amount of time expended on the task. A lodestar amount is calculated for each entry. While some entries aggregated tasks, the court is able to determine their reasonableness because the petition contains a description of the service performed, an hourly rate, and a lodestar calculation.

**Reasonableness of the Time Spent on the Revised Petition**

Certain hours were not *reasonably expended* and some entries fail under *Kaiser*. For example, 43.7 hours were expended on researching and drafting the revised petition at a $500 rate for a lodestar of $21,850. However, pages 5-9 of the revised petition are almost verbatim from pages 2-6 in the original petition. Pages 17-19 are near direct copies of pages 8-11 in the original petition; pages 20-25 duplicate pages 12-14 in the original petition and from pages 19-20 in Aliano's appellate brief. Nearly half of the revised petition is recycled. Moreover, Aliano's counsel expended nearly 8 hours on research relating to the revised petition. However, all but two of the revised petition's authorities had already been included in either the original petition or the appellate brief. Consequently, the 43.7 hours expended on drafting and researching the revised petition constitute excessive, redundant, and unnecessary hours that fail to justify an award of $21,850. The court excises this amount from the requested fee award.

Consequently, the court strikes the following entries as redundant and excessive: 5/12/16: "Begin drafting revised petition for fees." 5/13/16: "legal research regarding fee issues; review appellate briefing and cited cases; revise draft petition for fees." 5/16/16: "Draft requests for production of documents regarding billing since last production; review file regarding previous discovery; and make changes to draft revised fee petition." 6/15/16: "Review pleadings, research issues, and work on revised petition for fees. Revise draft discovery. Work on preparation of exhibits." 6/16/16: "Revise fee petition; research issues; review potential exhibits; revise draft affidavit of Tom Zimmerman; revise interrogatories and document requests."

The court strikes the following entries for (1) violating *Kaiser*, (2) and as excessive. The entry for 5/13/16: "Revise petition for fees" constitutes a vague generalized description condemned by *Kaiser*. The entries for 5/16/16: "Revise fee petition," 6/8/16: "Legal research regarding fee petition," and 6/10/16: "Revise fee petition," fail to provide sufficient detail. The entries for 6/13/16: "Revise petition for fees. Research cases to incorporate quotes into the brief," 6/14/16: "Revise petition for fees," 6/14/16: "Research cases for fee petition," and 6/17/16: "Revise fee petition and affidavit" also fail under *Kaiser*. The court strikes these entries for violating *Kaiser* and as excessive.

**Costs**

Aliano seeks $3,376.48 in costs. The prevailing party shall request a bill of costs from the clerk of the court. 735 ILCS 5/5-121. Subsequently, a party who is dissatisfied by the taxation of any bill of costs may apply to court to have the costs re-taxed. 735 ILCS 5/5-12. Because Aliano failed to obtain a bill of costs, any judicial determination would be premature. Consequently, the court strikes his request for a calculation of costs.

## Conclusion

For the above reasons, the court grants Aliano's fee petition, awarding him $267,470 in attorney fees, striking his request for a calculation of costs.

The clerk shall mail a copy of this order to both parties.

**Entered the 25h of August 2017**
**Chicago, Illinois**  AUG 25 2017

Circuit Court - 1803

**Thomas More Donnelly**
**Associate Judge**
**Circuit Court of Cook County**