| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT | | **Hearing Date:  December 20, 2018** |
| SOUTHERN DISTRICT OF NEW YORK | | **Hearing Time: 10:00 a.m.** |

-------------------------------------------------------   x
                                                            :

In re                                                     :               Chapter 11

                                                              :

SEARS HOLDINGS CORPORATION, *et al.*,    :               Case No. 18-23538 (RDD)

                                                              :

                                      Debtors.     :               Jointly Administered

                                                              :

-------------------------------------------------------   x

**OBJECTION OF THE UNITED STATES TRUSTEE TO APPLICATION OF DEBTORS TO RETAIN AND EMPLOY MCANDREWS, HELD & MALLOY, LTD AS IP COUNSEL NUNC PRO TUNC TO THE COMMENCEMENT DATE**

TO:    **THE HONORABLE ROBERT D. DRAIN,**
        **UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the Debtors' Application (the "Application") for Authority to Retain and Employ McAndrews, Held & Malloy, LTD ("McAndrews") Nunc Pro Tunc to the Commencement Date.  ECF Doc. No. 857.  In support thereof, the United States Trustee respectfully states:

**PRELIMINARY STATEMENT**

The Application is deficient in several aspects.  The Application (1) fails to fully disclose the compensation McAndrews will seek from the Debtors' estates, (2) fails to provide support for its request for pre-approval of fees under Bankruptcy Code Section 328, (3) inexplicably requests a waiver of the requirement to file appropriate time records, (4) permits McAndrews to subcontract work to foreign associates that will not be retained pursuant to an order of this Court, and (5) improperly seeks post-petition retainers that will be replenished as they are drawn down upon.  Accordingly, the Application should be denied.

## BACKGROUND

### General Background

1.      The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy

Code on October 15, 2018 (the "Petition Date").

2.      The Debtors are authorized to continue to operate their businesses and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  ECF

Doc. No. 118.

4.      According to the Debtors, Sears currently operates 687 retail stores in forty-nine

(49) states, Guam, Puerto Rico, and the U.S. Virgin Islands.  See Declaration of Robert A.

Riecker, ECF Doc. No. 3, ¶ 25.

5.      On October 24, 2018, the United States Trustee formed an official committee of

unsecured creditors.

### The Retention Motion

6.      On November 21, 2018, the Debtors filed the Application to retain McAndrews as

intellectual property counsel pursuant to Bankruptcy Code Section 327(e).

7.      As more fully set forth in the Application, the Debtors seek to retain McAndrews

to perform an array of intellectual property legal services (the "Fixed Fee Services").

Application at ¶ 10.

8.      The Debtors also seek to retain McAndrews to perform services that include

"patent idea qualification and preliminary art searches related thereto, the preparation and filing

of patent applications with the United States Patent and Trademark Office and foreign patent offices and the prosecution thereof, through appeal, until the underlying patent is issued or abandoned" (the "Flat Fee Services"). Id at ¶ 11.

9.      McAndrews seeks to be compensated as follows: (i) a monthly fixed fee ("Fixed Fee") of $43,750 for their Fixed Fee Services, (ii) a flat fee ("Flat Fee") of $750 to $11,000 for services rendered in connection with their Flat Fee Services, and (iii) an hourly rate for services that are not included in either the Fixed Fee Services or the Flat Fee Services. Id. at ¶ 20.

10.     The Application does not specifically identify the fee amount for each Flat Fee Service. Rather, the Application merely provides a range of $750 to $11,000 as compensation for Flat Fee Services. Id.

11.     Without providing anything other than conclusory support, McAndrews seeks to limit the review of its monthly Fixed Fee to Bankruptcy Code Section 328. Id. at ¶ 20.

12.     McAndrews also seeks a waiver of the requirement to file time records in 1/10 of an hour increments for its Fixed Fee Services and Flat Fee Services. Id. at ¶ 23. McAndrews does not provide a basis for this request. It is also unclear in what increment McAndrews will file its time records.

13.     Although not specifically stated in the Application, McAndrews will subcontract certain services to "foreign associates that assist [McAndrews] outside of the United States". Id. at ¶ 24.

14.     Finally, McAndrews seeks an (i) $80,000 post-petition retainer for fees incurred for its representation of the Debtors, and a (ii) $50,000 post-petition retainer for post-petition disbursements to foreign associates. Id. at ¶ 24. If the event any portion of the retainers are used, the Application seeks authority for the Debtors to replenish the amount used. Id.

**DISCUSSION**

*Governing Law*

Pursuant to section 327(a) of the Bankruptcy Code a debtor may, subject to court order,

retain a professional who is disinterested and does not hold or represent an interest that is adverse

to the estate.  11 U.S.C. § 327(a).  Further, the debtor may employ the professional "on any

reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a

contingent fee basis."  11 U.S. C. § 328(a).

Section 327(a), however, only provides the minimum requirements which must be met in

order to qualify for appointment as a professional.  See In re Glosser Bros., Inc., 102 B.R. 38, 39

(Bankr. W.D. Pa. 1989).  "[T]he mere fact that a professional satisfies the technical requirements

of §327 does not mandate Court approval."  Id.  Courts must also consider whether the

representation is in the best interest of the debtor's estate.  Id.

The burden of proof is on the moving party to establish that "the terms and conditions are

in the best interest of the estate."  In re Gillett Holdings, Inc., 137 B.R. 452, 455 (Bankr. D. Colo.

1991), quoting In re C & P Auto Transport, Inc., 94 B.R. 682, 686 (Bankr. E.D. Cal. 1988).

Accord In re Chas. A. Stevens & Co., 109 B.R. 853, 854 (Bankr. N.D. Ill. 1990).

*Compensation Rates Should Be Disclosed*

The compensation rates of professionals are universally disclosed in every application for

employment and in every fee application in a bankruptcy case.  That disclosure is mandated by

bankruptcy statutes, rules and administrative orders all designed to provide a transparency to the

compensation process that is available for anyone and everyone to review.  Section 328(a)

specifically provides that a professional may be employed on "reasonable terms and conditions,"

a determination that would not be possible without knowledge of the billing rate of a

professional.  Bankruptcy Rule 2014(a) provides that an application for employment must

include inter alia "any proposed arrangement for compensation."

Beyond the retention process, Section 330(a)(1)(A) authorizes a court to award

"reasonable compensation for actual, necessary services."  Bankruptcy Rule 2016(a) provides

that a professional seeking compensation from the estate "shall file an application setting forth a

detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the

amounts requested".

The Application fails to specifically identify the flat fee for each of the particular Flat Fee

Services.  Rather, the Application merely provides the range of $750 to $11,000 as compensation

for Flat Fee Services.  Accordingly, without more specific disclosure regarding the Flat Fee and

the Flat Fee Services, it is impossible to determine if the retention of McAndrews is reasonable.

Similarly, without knowing the amount McAndrews will charge for specific Flat Fee Services, it

will be impossible to review any fee application filed by the firm.

### *McAndrew Has Not Met its Burden for Section 328 Fee Review*

As noted above, bankruptcy Code § 328(a) authorizes the compensation of a professional

person retained under section 327 "on any reasonable terms and conditions of employment."  11

U.S.C. § 328(a).  The burden of proof to establish that the terms and conditions of employment -

including the imposition of section 328(a) - is on McAndrews, as applicant.  Nischwitz v.

Miskovic (In re Airspect Air, Inc.), 385 F.3d 915, 921 (6th Cir. 2004) (*quoting* Zolfo, 50 F.3d at

262).  To meet its burden, the firm must provide specific evidence to establish that "the terms

and conditions are in the best interest of the estate."  In re Gillett Holdings, Inc., 137 B.R. 452,

455 (Bankr. D. Colo. 1991); see also In re High Voltage Eng'g Corp. 311 B.R. 320 (Bankr. D.

Mass 2004)(burden is on moving party to prove the proposed terms and conditions of a proposed

retention are reasonable under Bankruptcy Code Section 328(a)).  A professional's requested

invocation of Section 328(a) is neither mandatory nor automatic, regardless of the proposed

compensation scheme.  A professional should not automatically expect approval of its retention

under Section 328 just because it asks for it.

Other than conclusory statements, McAndrews has not met its burden of proof to

demonstrate why - or how - the terms and conditions of its Fixed Fee are reasonable under

Section 328(a).  Airspect Air, 385 F.3d at 921 ("burden should rest on the applicant to ensure

that the court notes explicitly the terms and conditions if the applicant expects them to be

established at that early point.").  The Application does not disclose (i) what other, if any,

intellectual property law firms the Debtors contacted for this engagement, (ii) what fees were

sought by the other, if any, firms to undertake this engagement, (iii) what negotiations, if any,

were undertaken by the Debtors to insure that the fees sought by McAndrews are reasonable, and

most importantly (iv) the estimated amount of time to be incurred by McAndrews for Fixed Fee

Services during this engagement.  Accordingly, it is unclear if McAndrew's fee structure is

reasonable or that Section 328 review of its services is appropriate.

### *McAndrews Should File Appropriate Time Records*

As noted above, McAndrews seeks to waive the requirement to file time records in 1/10

of an hour increments for its Fixed Fee Services and Flat Fee Services.  Application at ¶ 23.

McAndrews does not provide support for this request.  It is also unclear in what increment, if

any, McAndrews will file its time records.

Bankruptcy Code Section 330, "instructs the court to look at **...** the ***time*** spent on such

services," among other factors.  In re Citation Corp., 493 F.3d 1313, 1319 (11th Cir. 2007)

(emphasis added).  Accordingly, without the firm's time records, there simply is no mechanism

with which to determine whether the fees at issue are reasonable.  Hensley v. Eckerhart, 461 U.S.

424, 441(1983) (Burger, Chief Justice, concurring) ("[T]he party who seeks payment must keep

records in sufficient detail that a neutral judge can make a fair evaluation of the time expended,

the nature and need for the service, and the reasonable fees to be allowed.").  Accordingly,

McAndrews should be required to submit time records that are in compliance with the General

Order M-447, Amended Guidelines for Fees and Disbursements for Professionals in Southern

District of New York Bankruptcy Cases at (A)(4)(vii) ("Time entries should be kept

contemporaneously with the services rendered in time periods of tenths of an hour.").

*Subcontracting to Third Parties is Not Appropriate*

McAndrews appears to seek to assign or subcontract services to foreign associates that

have not been disclosed, have not filed affidavits of disinterestedness, and whose retentions have

not been approved by order of this Court.  Application at ¶ 24.  What is not clear from the

Application is exactly how these "associates" will be billed to the estates, whether at cost or

otherwise, and whether they will undergo the same conflict checks as required for disclosure

under Bankruptcy Rule 2014.  At the very least, McAndrews must represent that any fees

charged for any subcontractor or employee of an associate will not be subject to a mark-up.  See

General Order M-447 Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York, dated January 29, 2013 at A(5)(v) ("[w]heather expenses

incurred by the applicant to third parties are limited to the actual amounts billed, or paid by, the

applicant on behalf of the estate").  McAndrews must also clarify whether any such associate that

may work on the Debtors' cases will be subject to the same conflict checks and review for

disinterestedness and lack of adverse interest under Section 327(a) as other professionals retained

by the Debtors.  Subcontractors, affiliates and other such entities that do not undergo the formal

retention process required by Section 327(a) should not be permitted.   See In re 245 Associates,

Inc., 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995)(a professional cannot receive compensation

until the bankruptcy court has authorized that professional's employment).

*Post-Petition Retainers Are Not Appropriate*

McAndrews has failed to satisfy its burdens to show that it should be entitled to hold and

replenish its retainers.  The type of retainer at issue is commonly referred to as an "evergreen

retainer."  In re Insilco Technologies, Inc., 291 B.R. 628, 632 (Bankr. D. Del. 2003).  In the

Southern District of New York retained professionals holding retainers draw down on the retainer

upon the Court's approval of the professional's first interim fee application.  See In re Old Carco

LLC (f/k/a Chrysler LLC) Case No. 09-50002 (ALG); Motors Liquidation Company (f/k/s/

General Motors Corporation) Case No. 09-50026 (REG); In re Chemtura Corp., Case No. 09-

11233 (REG).  This immediate draw down is used to balance the rights among the various

constituencies which have claims against the Debtor's post-petition cash.

Evergreen retainers are used to minimize a professional's exposure to the risk of non-

payment. In re Insilico, 291 B.R. at 632. Under the Bankruptcy Code priority scheme, the

administrative claims of retained professionals fall under Section 507(a)(1) and retained

professionals share pari passu.  McAndrews has not demonstrated any basis for being treated

differently than any other administrative creditors.  Indeed, under the Monthly Compensation

Order, see ECF No. 796, McAndrew will receive 80% of their invoiced fees and 100% of their

expenses on a monthly basis.  McAndrew's desire to maintain its retainers in case of the non-

payment, in essence, gives it an unfair monetary advantage, by reallocating the risk of a potential

insufficiency of the Debtors' assets to satisfy administrative claims.  This risk should not be borne

only by the professionals which did not receive retainers, each of whom would share pari passu in

the event of administrative insolvency.

The seminal case on evergreen retainers In re Knudsen Corp., 84 B.R. 668, 672-73 (9th Cir.

B.A.P. 1988), which set forth four findings necessary to approve an evergreen retainer:

1. The case is an unusually large one in which an exceptionally large
   amount of fees accrue each month;
2. The court is convinced that waiting an extended period for
   payment would replace an undue hardship on counsel[i];
3. The court is satisfied that counsel can respond to any reassessment;
   and
4. The fee retainer procedure is, itself, the subject of a noticed
   hearing prior to any payment thereunder.

84 B.R. at 672-73.

In In re Insilco, the Delaware Bankruptcy Court rejected a bright line approach to

evergreen retainers, noting that evergreens must be tailored to the particular circumstances of the

case.  Id., 291 B.R. at 634.  The Insilco Court laid out a five factor test which is broader than the

Knudsen test:

1. Whether the terms of an engagement agreement reflect normal
   business terms in the marketplace ;
2. The relationship between the Debtor and the professionals, i.e.,
   whether the parties involved are sophisticated business entities
   with equal bargaining power who engaged in an arms length
   negotiation;
3. Whether the retention, as proposed, is in the best interests of the
   estate;
4. Whether there is creditor opposition to the retention and retainer
   provisions; and
5. Whether given the size, circumstances and posture of the case, the
   amount of the retainer is itself reasonable, including whether the
   retainer provides the appropriate level of "risk minimization"
   especially in light of the existence of any other "risk minimizing"
   devices, such as an administrative order and/or carve out.

Id. The Court also discussed the "need for greater clarity in engagements the terms of which are intended to include evergreen retainers . . . . Henceforth, if the terms of a proposed engagement include a provision for an evergreen retainer, such term should be highlighted and summarized in the application; moreover a copy of the engagement agreement should be attached as an exhibit to the application containing language which makes it clear that the applicant intends to hold such retainer until the end of the case . . . ." Id. at 636.

Finally, in In re Pan American Hospital, the Court incorporated both the Knudsen and Insilco analyses, by applying the Knudsen approach on the size of the case and the substantiality of counsel's need for the retainer with the Insilco approach on reasonableness. The Court also placed a high evidentiary burden on lawyers seeking multiple risk-minimizing devices to establish the existence of undue hardship and found it sufficient to approve one risk minimizing device, the evergreen retainer, but it is unnecessary and unreasonable under the facts of this case to approve any more such devices." 312 B.R. at 711. The Court also noted the Insilco court's insistence that the engagement agreement be highlighted, summarized and attached as an exhibit to the retention application. Id. at 712 n. 1.

McAndrews' request for the approval of their retainers do not pass scrutiny under any of the tests. This is a large case, but McAndrews will not have to wait an extended period of time to be paid, since each will receive 80% of their fees and 100% of its expenses each month pursuant to the Monthly Compensation Order. Although holding their retainers to the end of the case may be in the best interests of McAndrews, there has been no showing by them as to why this arrangement is in the best interests of the estates. McAndrews also failed to demonstrate any basis for being treated differently, and more favorably, than any other professional. In the event of administrative insolvency, McAndew will not have to share its retainers pari passu with other

10

professionals, but rather it will have more in compensation and reimbursement than the other

professionals.  Finally, the engagement letter between the Debtors and McAndrews has not been

attached to the Application, nor have the specific terms of the retainers been disclosed.  Under

these circumstances, the Court should deny the requests for the post-petition retainers.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the approval of

the Application and grant such other relief as the Court deems fair and just.

Dated: New York, New York
       December 4, 2018

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Paul K. Schwartzberg*
Paul K. Schwartzberg
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500