## IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

ROBERT MALONE, ADMINISTRATOR OF
THE ESTATE OF RHODA MALONE,

**PLAINTIFFS,**

CIVIL ACTION NO.
17-C-159-1
(JUDGE CHRISTOPHER
MCCARTHY)

VS.

DAVID M. ELSBURY, JR.;
LIBERTY TRANSPORTATION, INC.;
HUNTER LEASING, LLC;
IDEALEASE SERVICES, INC.;
IDEALEASE, INC.;
SEARS ROEBUCK & CO.;
INNOVEL SOLUTIONS, INC.;
LANDMARK LEASING, INC.;
LIBERTY DISTRIBUTION, INC.;
COLONIAL PARK LOGISTICS, INC.;
HDH GROUP, INC.; NAVISTAR, INC.;
R.H. SHEPPARD CO., INC., previously known
As R.H. SHEPPARD COMPANY, INCORPORATED;
AND HAPPY WHEELS AUTO AND TRUCK COLLISION,
INC., d/b/a HAPPY WHEELS BODY SHOP and/or HAPPY
WHEELS BODY SHOP; and JOHN DOES 1 THROUGH 10.

**DEFENDANTS.**

### AMENDED COMPLAINT IN CIVIL ACTION
**(Jury Demand Endorsed Herein)**

NOW, come the Plaintiffs, ROBERT MALONE, on behalf of the Estate of RHODA

MALONE, ROBERT MALONE, through their attorneys, CHRISTOPHER WALLACE,

ESQUIRE, and STEVEN M. BARTH, ESQUIRE, file the following amended complaint with the

consent of all parties:

1

## PARTIES

1.      The Plaintiff, Robert Malone (hereafter Plaintiff-husband) is the Administrator of the Estate of his wife, Rhoda Malone, (hereafter the Decedent).   Letters of administration appointing Plaintiff as administrator of the estate were established in Washington County, Pennsylvania.

2.      Defendant, David M. Elsbury, Jr., (hereinafter referred to as "Defendant Elsbury") is an adult individual who resides Masontown, Pennsylvania and at all times relevant hereto was a commercially licensed driver in the Commonwealth of Pennsylvania.

3.      At all times relevant hereto, Defendant Elsbury is an independent contractor who offers his services as a professional and commercially licensed driver.

4.      In the alternative, Defendant Elsbury is an employee, agent and/or servant of Defendant Liberty Transportation Inc., Defendant Landmark Leasing, Inc., Defendant Liberty Distribution, Inc., and/or Colonial Park Logistics, Inc.

5.      Defendant, Liberty Transportation, Inc., is a Pennsylvania Business Corporation with its principal place of business at 955 Reedsdale Avenue, Pittsburgh, Pennsylvania 15212 and also has an office at 838 Croft Road, Greensburg, Pennsylvania 15601and is engaged in the business as a professional commercial carrier company which transports goods across the interstates and highways of various states including West Virginia.

6.      Defendant, Landmark Leasing, Inc., is a Pennsylvania company and/or business entity, with a principal place of business at 838 Croft Road, Greensburg, Pennsylvania 15601 and at all times relevant hereto, is engaged in the business as a professional commercial carrier company which transports goods across the interstates and highways of various states including West Virginia.

7.      Defendant, Liberty Distribution, Inc., is a Pennsylvania company and/or business entity, with a principal place of business at 838 Croft Road, Greensburg, Pennsylvania 15601 and at all times relevant hereto, is engaged in the business as a professional commercial carrier company which transports goods across the interstates and highways of various states including West Virginia.

8.      Defendant, Colonial Park Logistics, Inc., is a Pennsylvania company and/or business entity, with a principal place of business at 838 Croft Road, Greensburg, Pennsylvania 15601 and at all times relevant hereto, is engaged in the business as a professional commercial carrier company which transports goods across the interstates and highways of various states including West Virginia.

9.      At all times relevant hereto, Defendant Liberty Transportation, Inc., Defendant Landmark Leasing, Inc., Liberty Distribution, Inc., and Defendant Colonial Park Logistics, Inc., are business entities that continuously employ, work with, and/or associate with each other in a manner that relates to all aspects of the business of professional commercial carrier companies and the transportation of goods.

10.     At all times relevant hereto, Defendant Liberty Transportation, Inc., Defendant Landmark Leasing, Inc., Liberty Distribution, Inc., and Defendant Colonial Park Logistics, Inc., performed separate functions and/or committed separate acts and/or omissions, as set forth throughout this amended complaint so as to be independently and/or individually cause the injuries and damages to Plaintiff and/or Rhoda Malone as set forth more fully throughout this amended complaint.

11.     In the alternative, Defendant Liberty Transportation, Inc., Defendant Landmark Leasing, Inc., Liberty Distribution, Inc., and Defendant Colonial Park Logistics, Inc., were

3

headquartered at the same place, managed and/or operated by the same corporate officers, family

members, directors, managers, and/or corporate entities under united control and the following:

a.)    Grossly undercapitalized these businesses;

b.)    Failed to comply with the formal requirements to hold annual minutes for these businesses as its corporate officers;

c.)    Intermingled their assets with the assets of these Defendants;

d.)    Utilized uncertain and/or blurred distinctions between these businesses;

e.)    Operated as alter egos;

f.)    In creating said businesses to create confusion about the assets' ownership and/or hide assets.

12.    At all times relevant hereto, Defendant Liberty Transportation, Inc., Defendant

Landmark Leasing, Inc., Liberty Distribution, Inc., and Defendant Colonial Park Logistics, Inc.,

will be collectively referred to as "Liberty Transportation Defendants" throughout this Amended

Complaint.

13.    At all times relevant hereto, Liberty Transportation Defendants have conducted

continuous and substantial business in the state of West Virginia and Harrison County, West

Virginia and at all times relevant were engaged in the business of providing services, loading,

transporting goods, advertising, promoting, distributing, selling and otherwise placing into the

stream of commerce goods and services related to being a professional commercial carrier of

goods.

14.    At all times relevant hereto, Liberty Transportation Defendants contracted with

the Defendant Elsbury as an independent contractor to operate commercial box trucks for their

benefit and on their behalf.

4

15.    In the alternative, at all times relevant hereto, Liberty Transportation Defendants employed Defendant Elsbury as an operator of commercial box trucks for their benefit and on their behalf.

16.    At all times relevant hereto, Liberty Transportation Defendants operate under the Department of Transportation numbers 254513, 300465, and 2984571.

17.    Defendant, Hunter Leasing, LLC, is a Pennsylvania limited liability company and is an affiliate of Idealease and PacLease, two of the largest leasing organizations in the country and has a principal office at 480 Pittsburgh Road, Butler, Pennsylvania 16002 as well as an office at 1 West Alexander Road, Valley Grove, West Virginia 26060 as well as 350 Poplar Street, Pittsburgh, Pittsburgh PA 15223.

18.    At all times relevant hereto, Hunter Leasing, LLC, will be referred to as "Defendant Hunter Leasing".

19.    At all times relevant hereto, Defendant Hunter Leasing was the owner of a 2011 International Durastar, white in color, bearing Pennsylvania registration YZH5336 and/or were in care, custody and control of the above described box truck and were responsible for the maintenance, upkeep, and repair of said vehicle including the maintenance, repair, upkeep and installation of any other equipment necessary to properly operate said box truck.

20.    At all times relevant hereto, the 2011 International Durastar, white in color, bearing Pennsylvania registration YZH5336 will be referred to as "the box truck".

21.    At all times relevant hereto, the box truck was only in the possession of the Liberty Transportation Defendants for only several days before the date of the crash.

22.    At all times relevant hereto, Defendant Hunter Leasing traded and did business as Hunter Idealease and engaged in the business as a leasing organization which leased, rented

and/or provided box trucks and other commercial transportation to companies like the Liberty

Transportation Defendants which transported goods across the interstates and highways of

various states including West Virginia.

23.    Defendant Idealease Services, Inc., is an Illinois corporation with a principal place

of business at 430 North Rand Road, North Barrington, Illinois 60010 and is a leasing

organization which affiliates itself with companies like the Hunter Defendants in order to lease,

rent, and/or provide box trucks and other commercial transportation to companies like Defendant

Liberty Transport which transported goods across interstates and highways of various states

including West Virginia.

24.    Defendant Idealease, Inc., is an Illinois corporation with a principal place of

business at 430 North Rand Road, North Barrington, Illinois 60010 and is a leasing organization

which affiliates itself with companies like the Hunter Defendants in order to lease, rent, and/or

provide box trucks and other commercial transportation to companies like Defendant Liberty

Transport which transported goods across interstates and highways of various states including

West Virginia.

25.    At all times relevant hereto, the Defendants Idealease Services, Inc., and

Idealease, Inc., will be referred to as "Idealease Defendants".

26.    At all times relevant hereto, the Idealease Defendants were the owners of the

above described box truck and/or were in care, custody and control of the above described box

truck and were responsible for the maintenance, upkeep, and repair of said vehicle including the

maintenance, repair, upkeep and installation of any other equipment necessary to properly

operate said box truck.

27.     At all times relevant hereto, Defendant Hunter Leasing and Idealease Defendants operated under the Department of Transportation number 2383163 which was clearly labeled and stated on the side of this above described box truck.

28.     At all times relevant hereto, Defendant Elsbury was an ostensible agent, servant and/or employee of Defendant Hunter Leasing and/or Idealease Defendants on September 9, 2016.

29.     Defendant, Sears Roebuck & Co., is an Illinois limited liability company which operates in West Virginia and Pennsylvania and at all times relevant hereto, hires, contracts and/or utilizes Liberty Transportation Defendants to move goods across state lines including making deliveries in Harrison County, West Virginia.

30.     Defendant, Innovel Solutions, Inc., (hereinafter referred to as "Defendant Innovel") is a member of the Sears Holdings Corporation (NASDAQ: SHLD) family of companies, and is responsible for all logistical activity at more than 2,700 Sears-branded and affiliated stores throughout all 50 states including West Virginia, Puerto Rico and Canada; additionally, the company also provides logistics services to external clients utilizing assets, resources and experience to create value. The principal office of Innovel Soloutions, Inc.  is 3333 Beverly Road, B2-116B, Hoffman Estates, Illinois 60517 and was formerly called Sears Logistics.

31.     At all times relevant hereto, Defendants Sears Roebuck & Co. and Innovel will be referred to collectively as the "Sears Defendants".

32.     At all times relevant hereto, Defendant Elsbury was an ostensible agent, servant and/or employee of the Sears Defendants on September 9, 2016.

7

33.    Defendant, HDH Group, Inc., (hereinafter referred to as "Defendant HDH

Group"), is a Pennsylvania company and/or business entity with a principal place of business at

210 Sixth Avenue, 30th Floor, Pittsburgh, Pennsylvania 15222.

34.    At all times relevant hereto, Defendant HDH Group operates as an insurance

brokerage company which provides the following brokerage services for any and/or all of the

Defendants:

        a.)    Provided consultation services which pertained to safety, regulation
               compliance, and/or risk management for any and/or all of the Defendants;
        b)    Provided trouble shooting/risk assessment/ risk control/ risk control
               operational services to any and/or all of the Defendants;
        c)    Route assessments.

35.    At all times relevant hereto, Defendant Elsbury was an ostensible agent, servant

and/or employee of Defendant HDH Group on September 9, 2016.

36.    Defendant, Navistar, Inc., is the manufacturer of the 2011 Durastar International

4300 box truck and is a company headquartered and/or doing business with a principal place of

business in Illinois at 2701 Navistar Drive, Lisle, Illinois 60532.

37.    At all times relevant hereto, Defendant Navistar, Inc., was in the business of

designing, manufacturing, distributing, providing component parts, selling, and otherwise placing

into the stream of commerce for the general public commercial motor vehicles similar to the 2011

Durastar International 4300 box truck.

38.    Defendant, R.H. Sheppard Co., Inc., previously known as R.H. Sheppard

Company, Incorporated, (hereinafter known as "Defendant R.H. Sheppard Co.") and is a

company headquartered and/or doing business with a principal place of business in Pennsylvania

at 101 Philadelphia Street, Hanover, Pennsylvania 17331-0877.

39.    At all times relevant hereto, Defendant R.H. Sheppard Co. was in the business of designing, manufacturing, distributing, providing component parts, selling, and otherwise placing into the stream of commerce for the general public commercial motor vehicles similar to the 2011 Durastar International 4300 box truck.

40.    Defendant, Hunter Leasing, LLC, is a Pennsylvania limited liability company and is an affiliate of Idealease and PacLease, two of the largest leasing organizations in the country and has a principal office at 480 Pittsburgh Road, Butler, Pennsylvania 16002 as well as an office at 1 West Alexander Road, Valley Grove, West Virginia 26060 as well as 350 Poplar Street, Pittsburgh, Pittsburgh PA 15223.

41.    Defendant, Happy Wheels Auto and Truck Collision, Inc., d/b/a Happy Wheels Body Shop and Happy Wheels Body Shop (hereinafter referred to as "Defendant Happy Wheels Body Shop") is a Pennsylvania company and has a principal office at 1929 McKees Rocks Road, McKees Rocks, Pennsylvania 15136.

42.    At all times relevant hereto, Defendant Happy Wheels Body Shop was hired by the owner of a 2011 Durastar International 4300 box truck, white in color, bearing Pennsylvania registration YZH5336 and/or were in care, custody and control of the above described box truck and were responsible for the maintenance, upkeep, and repair of said vehicle including the maintenance, repair, upkeep and installation of any other equipment necessary to properly operate said box truck.

43.    At all times relevant hereto, Defendant Happy Wheels Body Shop entered into a service contract with the Defendant Hunter Leasing and/or Idealease Defendants whereby it made repairs, provided service, inspected, operated upon, viewed, provided warnings, and/or communicated to Defendant Hunter Leasing and/or Idealease Defendants to vehicles owned by

9

these Defendants which included the 2011 Durastar International 4300 box truck, white in color which was involved in this horrific crash.

44.    The Defendants John Does 1 through 5, the identities of which are currently unknown despite Plaintiff's best efforts, are all other individuals or entities, other than the above named Defendants and their employees or agents, which were responsible for the manufacturing, design, installation, maintenance, upkeep, repair, and replacement of defective parts of the box truck, which caused the below described crash.

45.    The Defendants John Does 6-10, are any manufacturers, sellers, persons and/or entities that with knowledge of the defective nature of the box truck did not warn and/or advise the appropriate parties to not operate said truck did so in a reckless manner.

46.    At all times relevant hereto, all of the Defendants conducted continuous and substantial business in the state of West Virginia and at all times relevant were engaged in the business of providing services and goods, loading, hiring commercial carriers to transport goods, shipping goods, advertising, promoting, distributing, selling and otherwise placing into the stream of commerce goods and services related to being a professional shipper of goods.

47.    At all times relevant hereto, all Defendants acted through their actual, authorized and/or ostensible agents, servants and/or employees.

48.    At all times relevant hereto, all Defendants, either directly and solely and/or by and through actual, apparent, authorized, and/or ostensible agents, employees, and/or servants, including Defendant Elsbury:

        a.)    controlled the subject box truck;
        b.)    operated the subject box truck;
        c.)    bore responsibility for the subject box truck in fact and in law;
        d.)    performed and/or failed to act pertaining to all necessary maintenance of the subject box truck.

49.    At all times relevant hereto, all Defendants acted through actual, apparent,

authorized, and/or ostensible agents, employees, and/or servants, including Defendant Elsbury,

who acted or were acting:

      a.)    within the scope of their agency and/or employment with Defendants;
      b.)    in furtherance of Defendants' business under the actual, apparent, authorized, and/or ostensible authority, control, and/or right of control of Defendants and/or in the service of Defendants.

50.    At all times relevant hereto, Defendant Elsbury, an actual, apparent, authorized,

and/or ostensible agent, employee and/or servant of the Defendants:

      a.)    committed acts and/or omissions of a kind and nature for which he was retained and/or employed to perform;
      b.)    acted and/or failed to act within the authorized time and spatial limits, set and/or established for him by Defendants; and/or
      c.)    acted and/or failed to act during the time frame during which he served the interests and/or purposes of the Defendants.

## FACTS

51.    Each of the above paragraphs is incorporated herein by reference.

### *Lease Requirements*

52.    Prior to September 2016, Liberty Transportation Defendants entered into a full

service lease for commercial vehicles which included the box truck described previously in this

Amended Complaint with the Defendant Hunter Leasing and/or Idealease Defendants which

included the following terms:

      a.)    A full-service lease from Defendant Hunter Leasing and/or the Idealease Defendants allowed Liberty Transportation Defendants to pay even more attention to serving its customers and growing its business.
      b.)    It was represented by Defendant Hunter Leasing and/or Idealease Defendants that they would provide industry-leading vehicles that are backed by superior fleet maintenance.
      c.)    It was represented that 24/7 roadside assistance would be provided.

11

d.)    Professional vehicle maintenance by Defendant Hunter Leasing and/or the
       Idealease Defendants.
e.)    Dedicated Maintenance.
f.)    Mobile Service (at designated locations).
g.)    Periodic state and federal inspections.
h.)    24/7 Roadside Assistance.
i.)    Fleet Services.
j.)    Fuel Card with U.S. and Canada fuel tax reporting.
k.)    Vehicle licensing, permitting, legalization.
l.)    Motor Vehicle Report Service.
m.)    Telematics Services.
n.)    Safety & Compliance training and consultation.
o.)    Driver training to reduce driver turnover.
p.)    Replacement rental vehicles.
q.)    Discounted rental vehicles.

53.    In the alternative, prior to September 2016, Liberty Transportation Defendants

entered into an "oral" full service lease for commercial vehicles which included the box truck

described previously in this Amended Complaint with the Defendant Hunter Leasing and/or

Idealease Defendants.

54.    In the alternative, no lease complying with the Federal Motor Carrier Safety

Administration requirements is present between the Hunter Leasing/Idealease Defendants and

the Liberty Transportation Defendants.

55.    At all times relevant hereto, for a commercial box truck to be turned over to

Liberty Transportation Defendants, and Defendant Hunter Leasing and/or Idealease Defendants

which would potentially shield each Defendant from liability, a Lease/Agreement would need to

be in place with the following:

a.)    Signatures by the parties or by their authorized representatives;
b.)    A copy of the agreement/lease would have been with the subject equipment;
c.)    Specified the time, date or the circumstances which the agreement/lease would
       begin and end;
d.)    It would have provided that Liberty Transportation Defendants had exclusive
       possession, control, and use of the equipment for the duration of the lease, and

12

that the Liberty Transportation Defendants assumed complete responsibility for the operation of the equipment for the duration of the lease;

e.)    It would have provided the amount to be paid by Liberty Transportation Defendants to Defendant Hunter Leasing and/or Idealease Defendants;

f.)    It would have provided who was responsible for removing the Defendant Hunter Leasing and/or Idealease Defendants identification devices from the subject equipment during the term of the lease, and how Liberty Transportation Defendants identification devices would be removed from the equipment upon termination of the lease;

g.)    It would have clearly specified the responsibility of each party with respect to fuel, fuel taxes, empty mileage, obtaining permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items; and

h.)    It would have clearly specify the legal obligation of Liberty Transportation Defendants to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906.

56.    No such lease exists between any of the Defendants.

57.    The following was also never done as per the FMSCR by all relevant Defendants:

a.)    The maintaining and preservation of receipts, specifically, receipts identifying the equipment to be leased and stating the date and time of day possession is transferred;

b.)    Liberty Transportation Defendants who were using the equipment should have identified the equipment as being in their service as follows –

    (i)    During the period of the agreement/lease, Liberty Transportation Defendants should have identified the equipment in accordance with the FMCSA's requirements in 49 CFR Part 390 of this chapter (Identification of Vehicles) and

    (ii)    Unless a copy of the lease is carried on the equipment, Liberty Transportation Defendants should have kept a statement with the equipment during the period of the agreement/lease certifying that the equipment was being operated by them. The statement should have specified the name of the owner, the date and length of the agreement/lease, any restrictions in the agreement/lease relative to the commodities to be transported and the address at which the original lease is kept by the authorized carrier.

*Sears Deliveries*

58.    At all times relevant hereto, Liberty Transportations Defendants and/or all Defendants entered into a contract or contracts with the Sears Defendants, the terms of which include but not limited to:

a.)    Transportation of goods from the Sears Defendants' store locations to destinations in West Virginia.
b.)    Motor Vehicle Report Service.
c.)    Telematics Services.
d.)    Safety & Compliance training and consultation.
e.)    Driver training to reduce driver turnover.
f.)    Insurance requirements of companies transporting Sears' goods.
g.)    Assembling products and/or removing products from homes of Sears's customers.

59.    At all times relevant hereto, Defendant Elsbury was operating the above described box truck as an ostensible agent and/or employee, agent and/or servant for the Sears Defendants, and was dispatched by these Sears Defendants to pick up goods which were to be shipped from Pittsburgh, Pennsylvania location and/or other locations of the Sears Defendants to locations in and/or around and/or through Harrison County, West Virginia.

60.    At all times relevant hereto, the customers of Sears Defendants believed that Defendant Eslbury and his helper during the deliveries, Michael Adams, were agents, servants and/or employees of Sears Defendants.

61.    At all times relevant hereto, these Defendants knew or should have known that the manifest provided to the Liberty Transportation Defendants and/or Defendant Elsbury did not accurately reflect the amount of time needed to provide the services requested by the Sears Defendants upon the Liberty Transportation Defendants and/or Defendant Elsbury.

62.    In fact, the Sears Defendants knew or should have known that the manifest provided could not be complied with as written by any of the Defendants.

14

63.    In the alternative, the Sears Defendants required the Liberty Transportation

Defendants and/or Defendant Elsbury to act outside the required manifest in order to provide the

services it provided to their customers.

*Monitoring of the Box-Truck*

64.    At all times relevant hereto, the box truck which was involved in the crash was

equipped with real time monitoring which allowed third parties to monitor the speed, mileage,

location and/or use of the box truck.

65.    At all times relevant hereto, all Defendants should have had access to this real

time monitoring.

66.    At all times relevant hereto, the box truck should have been equipped with a

remote shut off function which could have been utilized by Defendants to prevent the box truck

from being utilized in a manner which was contrary to Federal Regulations governing

commercial vehicles and labor laws.

67.    At all times relevant hereto, the box truck was equipped with a

program/monitoring system which was called "CyntrX" which was under the sole control of the

Hunter Leasing Defendants and/or Idealease Defendants.

68.    In the alternative, at all times relevant hereto, Defendant Hunter Leasing and/or

Idealease Defendants did not set up a system to inform companies like the Liberty Transportation

Defendants when data, reporting, information and/or intelligence was gathered by CyntrX which

confirmed, showed and/or suspected improper operation of commercial vehicles, violations of

Federal law, and/or a suspected public danger to others on the highways and roads in West

Virginia and/or Pennsylvania.

69.    In the alternative, at all times relevant hereto, the box truck was equipped with a program/monitoring system which was called "CyntrX" which was under the sole control of all Defendants.

70.    At all times relevant hereto, all of the Defendants did not set up a system in which to inform companies like the Liberty Transportation Defendants when data, reporting, information and/or intelligence was gathered by CyntrX which confirmed, showed and/or suspected improper operation of commercial vehicles, violations of Federal law, and/or a suspected public danger to others on the highways and roads in West Virginia and/or Pennsylvania.

71.    At all times relevant hereto, if the box-truck was equipped with an automatic shut off when the operator of the motor vehicle violated state, Federal and/or local laws, all of the Defendants failed to utilize the shut off in order to prevent the crash of September 9, 2016.

72.    In the alternative, "CyntrX" and/or the data/recording/monitoring program installed in this box truck was defective and did not adequately notify the Defendants of Defendant Elsbury's conduct on September 9, 2016 and previous days. All Defendants knew and/or should have known of this monitoring defect, but all Defendants failed to fix the defect and allowing said vehicle to be used on September 9, 2016.

### *Federal Motor Carrier Safety Administration Requirements*

73.    At all times relevant hereto, the Federal Motor Carrier Safety Administration (FMCSA) holds the ultimate responsibility of monitoring and ensuring compliance with motor carrier safety (all carriers) and commercial (for hire, non-exempt carriers) regulations.

74.    All Defendants were subject to the strict FMCSA registration requirements given their individual business operations.

16

75.    The FMCSA requires that any company wanting to operate a commercial motor vehicle in Interstate commerce must register with the FMCSA.

76.    Registration requires that an application be completed and that other various forms of information and documentation be supplied to the FMCSA for consideration.

77.    Applicants must also define during the registration process what their intended business operation will be as provided for under the FMCSR.

78.    Information provided during the registration process is then considered by the FMCSA.

79.    A USDOT number, if issued, can only be utilized by the specific applicant to whom it was issued, in furtherance of that applicant's stated business operation.

80.    Specifically, the operating authority granted by the FMCSA is based on information provided by each specific applicant.

81.    An applicant who obtains a USDOT number cannot let any other entity or person utilize its operating authority.

82.    A USDOT number serves as a unique identifier whenever the FMCSA is (1) collecting and monitoring a specific company's safety information obtained during an inspection and/or audit; (2) performing compliance reviews concerning a specific company; (3) conducting in-person meetings and/or reviews of a specific company; (4) whenever a roadside inspection is conducted concerning a specific company; (5) whenever reviewing renewal paperwork filed with the FMCSA for a specific company or; (6) crash investigation and/or crash reporting for a specific company.

83.    A USDOT number is identifiable with only the company it is issued.

84.    The Liberty Transportation Defendants applied for and were issued USDOT Numbers 254513, 300465, and 2984571.

85.    Defendant Hunter Leasing and/or Idealease Defendants applied for and were issued USDOT number Department of Transportation number 2383163 which was clearly labeled and stated on the side of the box truck which was involved in the crash of September 9, 2016.

86.    The operating authority under the USDOT numbers used by these Defendants was granted by the FMCSA based on specific information provided by these Defendants.

87.    Accordingly, the operating authority was issued by the FMCSA solely for these Defendants' use in furtherance of their stated business operation.

88.    As a result, these Defendants permitted Defendant Elsbury to use their box truck that specifically depicted a federally issued operating authority (USDOT Number 2383163).

89.    As a result, Defendant Elsbury was a permissive user of the above described box truck at the time of the collision of September 9, 2016 for the following Defendants:

　　　　a.)    Defendant Hunter Leasing;

　　　　b.)    Liberty Transportation Defendants;

　　　　c.)    Idealease Defendants;

　　　　d.)    Sears Defendants.

### Entrustment of the Box-Truck to Defendant Elsbury

90.    At all times relevant hereto, Hunter Leasing Defendants, Idealease Defendants, Sears Defendants, and Defendant HDH Group failed to comply with Part 391 of the FMCSR pertaining to Defendant Elsbury which required the following to be determined about Defendant Elsbury:

a.)    He was 21 years old;

b.)    Could read and speak the English language sufficiently to converse with the public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records;

c.)    By reason of experience, training, or both, safely operate the subject vehicle involved in the collision;

d.)    Was physically qualified to drive a commercial motor vehicle in accordance with subpart E – Physical Qualifications and Examinations of Part 391;

e.)    Had a currently valid motor vehicle operator's license issued by one State or jurisdiction;

f.)    Had prepared and furnished a list of violations or the certificate as required by Section 391.27;

g.)    Was not disqualified to drive a commercial motor vehicle under the rules in Section 391.15;

h.)    Had successfully completed a driver's road test and had been issued a certificate of driver's road test in accordance with Section 391.31 or had presented an operator's license or a certificate of road test as equivalent to a road test in accordance with Section 391.33.

91.     At all times relevant hereto, Liberty Transportation Defendants did not comply with any of the requirements to Part 391.

92.     In the alternative, at all times relevant hereto, all Defendants besides the Liberty Transportation Defendants failed to also comply with the following subparts of Part 391:

a.)    Subpart C – Background and Character;

b.)    These Defendants did not ever request from Liberty Transportation Defendants the application for employment completed by Defendant Elsbury prior to his hiring with the company (Section 391.21);

c.)    These Defendants did not ever request any investigations and inquiries made by Liberty Transportation Defendants into Defendant Elsbury prior to hiring (Section 391.23);

d.)    These Defendants did not ever request any annual inquiry and review of Defendant Elsbury's driving record obtained by Liberty Transportation Defendants;

e.)    Subpart D – Tests;

f.)    These Defendants never required Defendant Elsbury to undergo a road test, nor did they ever request from Liberty Transportation Defendants a copy of Defendant Elsbury's road test, or the equivalent of a road test (Sections 391.31 and 391.33);

g.)    Subpart E – Physical Qualifications;

h.)   These Defendants permitted Defendant Elsbury to operate its box-truck without having him undergo and/or requiring proof he had a valid medical certificate certifying that he was physically/medically qualified to operate a box truck;

i.)   Subpart F – Files and Records;

j.)   These Defendants never asked Liberty Transportation Defendants for and/or reviewed the Driver Qualification File for Defendant Elsbury (Section 391.51).

93.    At all times relevant hereto, all Defendants simply allowed Defendant Elsbury to use their commercial box truck without consideration of the specific person to whom would be operating it, or those person's qualifications to do so safely and legally.

94.    At all times relevant hereto, Hunter Leasing Defendants and/or Idealease Defendants simply allowed Liberty Transportation Defendants to use the commercial box-truck without consideration of who would be operating it, or those person's qualifications to do so safely and legally.

95.    At all times relevant hereto, Defendant Elsbury was operating the above described box truck as an ostensible agent, servant and/or employee as well as an authorized agent, servant and/or employee of Liberty Transportation Defendants, Hunter Leasing Defendants, Idealease Defendants, Sears Defendants and/or Defendant HDH Group.

96.    At all times relevant hereto, all Defendants were responsible and/or required to oversee, manage, control and/or direct the actions of Defendant Elsbury on September 9, 2016.

97.    At all times relevant hereto, Defendant Elsbury did not do any pre-inspections before operating said box truck on September 9, 2016.

98.    At all times relevant hereto, all Defendants knew or should have known the following about the Defendant Elsbury and his driver history:

a.)   Defendant Eslbury pled guilty to operating a vehicle without a valid inspection on July 18, 2016;

20

b.)    Defendant Eslbury pled guilty to failure to use a seat belt on July 18, 2016;

c.)    Defendant Eslbury pled guilty to failure to obey traffic control devices on March
15, 2016;

d.)    Defendant Eslbury pled guilty to failure to obey traffic control devices on August
7, 2014.

99.    At all times relevant hereto, all Defendants should have known of the box truck's

maintenance history and/or inspection history and/or operation history which may have shown

that this box truck was not safe for operation on any public state highways.

100.    In the alternative, at all times relevant hereto, all Defendants should have known

and/or knew that drivers of commercial vehicles were limited in hours, miles and/or operation of

said vehicles for specific periods of time.

101.    In the alternative, at all times relevant hereto, all Defendants knew or should have

known of Federal, state and/or local labor laws which prohibits certain conduct which makes it

unsafe to operate motor vehicles.

102.    At all times relevant hereto, no Defendants attempted to have Defendant Elsbury

comply with any Federal, state and/or local requirements when he operated the box-truck on

September 9, 2016.

103.    At all times relevant hereto, all Defendants knew or should have known that the

monitoring program and/or CyntrX.

### *Mechanical and/or Maintenance of the Box Truck*

104.    Defendant Navistar, Inc., Defendant R.H. Sheppard Co., and/or Defendant Happy

Wheels Body Shop and their employees or agents, which were responsible for the manufacturing,

design, installation, maintenance, upkeep, repair, and replacement of defective parts of the box

truck, which caused the below described crash.

105.    These Defendants are some of the manufacturers, sellers, maintenance/repair persons and/or entities that with knowledge of the defective nature of the box truck did not warn and/or advise the appropriate parties to not operate said truck did so in a reckless manner.

106.    At all times relevant hereto, these Defendants knew or should have known of the various maintenance, repairs, upkeep, design, manufacturing, and/or general defects box trucks similar to this one as well as this specific box truck posed as a threat to the safety of operators of said box trucks and/or persons who drove on the same roads, highways, and/or streets as these motor vehicles.

*September 9, 2016*

107.    At all times relevant hereto, all Defendants knew or should have known that Defendant Elsbury and his helper, Michael Adams, worked the following hours prior to September 9, 2016:

   a.)    20 hours on September 7, 2016 – from 2:56 a.m. to 11:06 p.m.

   b.)    19 hours 20 minutes September 8, 2016 – from 3:09 a.m. to 10:35 p.m.

108.    At all times relevant hereto, Defendant Elsbury failed to take 10 consecutive hours off duty between shifts and/or driving.

109.    At all times relevant hereto, all Defendants knew or should have known that on September 9, 2016, Defendant Elsbury and his helper, Michael Adams, worked 15 hours 10 minutes – from 3:06 a.m. to 6:15 p.m., the time of the crash.

110.    At all times relevant hereto, all Defendants knew or should have known that Defendant Elsbury did not take the required time off and as such posed a danger to others on the roads, streets and/or highways he operated the box truck upon on September 9, 2016.

22

111.    On or about September 9, 2016, Defendant Elsbury was operating the above described box truck on Interstate 79 northbound with goods and merchandise of the Sears Defendants.

112.    At all times relevant hereto, the Sears Defendants determined, directed, ordered, controlled and/or instructed Liberty Transportation Defendants and Defendant Elsbury as to how, when, where and what was to be delivered to the Sears Defendants' clients/customers.

113.    In the alternative, all Defendants determined, directed, ordered controlled and/or instructed Defendant Elsbury as to how, when, where and what was to be delivered to the various persons/stops who were scheduled to take place on September 9, 2016.

114.    At all times relevant hereto, Defendant Elsbury improperly operated the above described box truck in the following manner on or about September 9, 2016:

    a.)    0911 hours -   Speeding – 75.9 mph – Interstate 79 Morgantown
    b.)    0915 hours -   Speeding – 80.9 mph – Interstate 79 Morgantown
    c.)    0930 hours -   Speeding – 78.6 – Interstate 79 Fairmont
    d.)    0938 hours -   Watch Moving – 78.9 mph – Interstate 79 Fairmont
    e.)    0948 hours – Speeding – 75.7 mph – Interstate 79 Bridgeport
    f.)    0951 hours -   Speeding – 78.2 mph – Interstate 79 Clarksburg
    g.)    1001 hours – Speeding – 77.2 mph  – Interstate 79 Lost Creek
    h.)    1307 hours – Hard braking – 16.3 mph – Copley Road Weston
    i.)    1313 hours – Hard cornering – 33 mph – Copley Road Weston
    j.)    1319 hours – Hard cornering – 37.2 mph – Copley Road Weston
    k.)    1457 hours – Hard cornering – 26.2 mph – Sand Fork Glenville
    l.)    1743 hours – Hard cornering – 28.9 mph – Smith Run Weston

115.    Prior to entering onto I-79, the Lewis County 911 dispatcher received complaints and information about the box truck being operated by Defendant Elsbury on US Highway 19 North at approximately 5:20/5:30 p.m.:

    a.)    The box-truck was swerving in both lanes;

    b.)    The box-truck almost hit a guardrail and other vehicles head on;

23

c.)    Reckless driving;

d.)    The callers also identified Idealease is on the side of the truck.

116.    On or about September 9, 2016, Defendant Elsbury was traveling northbound on I-79 in Harrison County, West Virginia and continued to be within his scope of agency and/or employment, actual and/or ostensible, of all other Defendants.

117.    At all times relevant hereto, Defendant Elsbury was still required to adhere to the logistics/plans of all other Defendants.

118.    At all times relevant hereto, Defendant Elsbury did not have enough time to make all of the deliveries to the specifications required by all other Defendants.

119.    Based upon the above, the failure to have a written lease and/or interchange agreement in place and all of the Defendants are directly responsible for Defendant Elsbury's actions/inactions when using the box-truck at the time of the collision of September 9, 2016.

120.    Further, based upon the above and below, Defendant Elsbury was a permissive user of the box truck of all Defendants on September 9, 2016.

121.    At all times relevant hereto, the Decedent Rhoda Malone was operating her mini-van in a southbound direction with five (5) passengers, all of whom were going to a church event located in West Virginia.

122.    Suddenly and without warning, Defendant Elsbury left his lane of travel on I-79 northbound in Harrison County, West Virginia, crossed the median and entered the lane of the mini-van operated by the decedent Rhoda Malone and violently struck the mini-van which caused death and injury to the decedent Rhoda Malone.

123.    At all times relevant hereto, the Decedent Rhoda Malone was in the proper lane of travel.

24

124.    Defendant Elsbury was at fault for this collision.

125.    Decedent Rhoda Malone was not at fault for this collision.

126.    After the crash, Defendant Elsbury stated the following to the police:

> Upon arrival I observed vehicle 1 sitting off the roadway facing northbound with heavy damage. I made contact with driver 1. Driver 1 state he was traveling northbound and he said his father asked him what the clicking noise was. Driver 1 state at that time went into the left lane and he could not control the vehicle. Driver 1 state he was attempting to roll the vehicle onto its side but vehicle 1 crossed the median and struck vehicle 2 traveling southbound on I-79. Driver 1 state he believed something broke in the front end causing him to swerve to the left.

127.    The above statement from Defendant Elsbury appears to suggest that this collision took place due to a defect of the box truck and/or a failure to maintain/inspect/repair properly by Defendant Hunter Leasing and/or Defendant Idealease, which caused the steering of the box truck to fail and cause Defendant Elsbury to lose control of the vehicle, which caused him to violently collide with the mini-van of the Decedent Rhoda Malone.

128.    At all times relevant hereto, the only maintenance performed on the box truck was done by the Hunter Defendants and/or Idealease Defendants.

129.    On September 9, 2016 the decedent passed, the primary cause of her death being the multiple injuries sustained in a motor vehicle collision.

130.    At the time of her death the Decedent left three minor children, Irene Malone, R. Logan Malone and Graham Malone. She also left her husband, Robert Malone.

131.    Due to the Decedent's passing the Decedent's husband, Robert Malone became the only legal guardian of Irene Malone, a minor child.

132.    At all times relevant hereto, Defendant Elsbury entered into an agency, employment and/or relationship with all of the Defendants.

25

133.    At all times relevant hereto, Defendant Elsbury worked for, was employed by, and/or contracted with all of the Defendants and/or operated the box-truck, he exceeded the hours of service limitations, imposed by Federal, state law and regulation.

134.    At all times relevant hereto, all other Defendants allowed, directed, and/or permitted Defendant Elsbury to work such long hours, forego sufficient off duty time, and/or violate the FMCSR and/or knew or should have known, through the exercise of reasonable care, that Defendant Elsbury was working such long hours, foregoing sufficient off duty time, and/or violating the FMCSR.

135.    Defendant HDH Group knew and/or should have known that the Liberty Transportation Defendants allowed, directed and/or permitted drivers, such as Defendant Elsbury to work such long hours, forego sufficient off duty time and/or violate the FMCSR and/or knew or should have known, through the exercise of reasonable care, that the Liberty Transportation Defendants' drivers, such as Defendant Elsbury, were working such long hours, foregoing sufficient off-duty time and/or violating the FMCSR.

136.    By allowing, directing and/or permitting Defendant Elsbury to work such long hours, forego sufficient off-duty time, and/or violate the FMCSR, all other Defendants acted outrageously, recklessly, maliciously, willfully and wantonly.

137.    All Defendants knew or should have known to comply with the FMCSR and/or to otherwise act reasonably.

## CAUSES OF ACTION

### COUNT I - NEGLIGENCE
**Plaintiff v. Defendant Elsbury individually and as an agent/servant/employee of All Defendants**

138.    Each of the above paragraphs is incorporated herein by reference.

139.    The aforesaid crash was caused by the negligence of the Defendant Elsbury,

individually and as an agent, servant and/or employee of all Defendants, in general and in the

following particulars:

a.)    In failing to maintain proper control of his vehicle;

b.)    In failing to keep an appropriate lookout for surrounding traffic;

c.)    In continuing to operate his vehicle in a direction towards Rhoda Malone's van when he saw, or in the exercise of reasonable diligence, should have seen that further operation in that direction would result in a collision;

d.)    In that Defendant Elsbury was inattentive and failed to maintain a sharp lookout of the road and the condition of the traffic surrounding him;

e.)    In failing to sound a horn or give other warning of the approach of said vehicle;

f.)    In failing to maintain his lane of travel;

g.)    In failing to operate the brakes in such a manner so that the vehicle could be stopped before colliding with Rhoda Malone and her passengers;

h.)    In failing to yield to Rhoda Malone's right of way;

i.)    In failing to comply with West Virginia law pertaining to operating his vehicle in a willful and wanton disregard for the safety of persons and property;

j.)    In failing to comply with West Virginia law by failing to operate his vehicle with due regard for the rights, safety and position of motorists including Rhoda Malone;

k.)    In failing to comply with West Virginia law by operating his vehicle in a reckless manner;

l.)    In operating the vehicle at a high, dangerous and reckless rate of speed under the circumstances;

m.)    In that the driver was inattentive and failed to maintain a sharp lookout for the presence of all traffic around him;

n.)    In driving distracted and/or falling asleep while driving due to failure to

take the necessary stops required by Federal and state law;

o.)    In failing to operate the brakes in such a manner so that the vehicle could be stopped before striking Rhoda Malone;

p.)    In failing to adhere to all Federal/state/local regulations and laws when operating a commercial vehicle;

q.)    In failing to drive around Rhoda Malone instead of colliding with her;

r.)    In failing to adhere to all Defendants' internal policies and procedures concerning the operation of box trucks;

s.)    In violating the industry standards concerning rest times, hours worked, hours driven, attentiveness, distracted driving, and/or adhering to the traffic laws concerning the operation of commercial box trucks on highways and roads;

t.)    By failing to pull over to the side of the road or stopping the vehicle when he was having control issues with the box truck prior to the crash;

u.)    Failing to inform his employers, masters, and/or general contractors in regards to the condition of the box truck and his inability to control and operate said vehicle safely and reasonably;

v.)    Failing to keep accurate log books, documentation, and/or hours worked as required by Federal, state and/or local law and regulations;

w.)    In complying with internal policies, procedures and/or rules created by the Defendants which he knew or should have known were in violation of Federal, state, and/or local laws and regulations;

x.)    By being distracted and/or inattentive when driving a box truck;

y.)    By operating at speeds that are unsafe for box trucks with mechanical problems;

z.)    By violating and/or failing to meet the minimum safety requirements set forth by the FMCSR and/or aiding, abetting, encouraging, permitting, and/or requiring FMSCR violations;

aa.)    In driving excessive hours imposed by Federal and state law;

bb.)    In working without taking sufficient off duty time;

cc.)    In driving while fatigued, sleepy, and/or drowsy;

dd.)    In driving a delivery schedule which he knew or should have known was not safe and violated all Federal, state and local laws and regulations;

ee.)    Failing to properly anticipate, plan and/or prepare for and/or prevent emergencies and/or equipment failure;

ff.)    Failing to comply with industry best practices and/or safety standards.

140.    Further, Defendant Elsbury's conduct demonstrated a conscious disregard of the known risks to decedent Rhoda Malone, her passengers, and to the rest of the public by operating the box truck in the manner stated.

141.    As a direct and proximate result of Defendant Elsbury's negligence and recklessness, he caused Rhoda Malone to suffer and sustain injuries, death, conscious pain and suffering, and of the injuries and losses of the estate of the decedent.

## COUNT II – NEGLIGENCE PER SE
### Plaintiffs v. Defendant Elsbury individually and as an agent/servant/employee of All Defendants

142.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

143.    Defendant Elsbury violated the Federal law, the laws of West Virginia and its regulations by, among other things, operating his box truck in an unsafe condition; driving at a speed that was too fast for the conditions; failing to maintain his lane of travel; failing to perform the necessary inspections; failing to take required breaks/stops; driving while distracted; and otherwise failed to comply with the laws of the State of West Virginia and Federal law.

29

144.    The aforesaid crash was caused by the negligence per se of the Defendant

Elsbury, individually and as an agent, servant and/or employee of all Defendants, in general and

in the following particulars:

    a.)    Failing to know and comply with FMCSR, as required by 49 C.F.R. Section 390.3(e)(1);

    b.)    Failing to comply with 49 C.F.R. Section 390.3(e)(2);

    c.)    Failing to comply with 49 C.F.R. Section 390.13;

    d.)    Failing to comply with 49 C.F.R. Section 395.3 which imposes limits on operator drive time and/or on duty time and sets mandatory off duty times;

    e.)    Failing to comply with 49 C.F.R. Section 392.3 which prohibits driving when alertness is impaired by fatigue, illness, and/or other causes;

    f.)    Failing to comply with 49 C.F.R. Section 392.6 which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

    g.)    Failing to comply with 49 C.F.R. Section 390.11;

    h.)    Failing to comply with 49 C.F.R. Section 396.7 which prohibits unsafe vehicle operation;

    i.)    Failing to comply with 49 C.F.R. Section 396.13 which requires proper vehicle inspections by the driver;

    j.)    Failing to comply with 49 C.F.R. Section 396.3 which requires proper vehicle inspection, repair and maintenance;

    k.)    Failing to comply with 49 C.F.R. Section 392.7 which requires proper vehicle inspections and confirmation that vehicular systems are in good working order;

    l.)    Failing to comply with Federal, state and local laws and regulations.

145.    As a direct and proximate result of the defendant driver's violations of state and

federal statutes and regulations, the Plaintiffs sustained the damages described in causes of action

above and below.

## COUNT III – VICARIOUS LIABILITY
### Plaintiffs v. All Defendants

146.    Plaintiffs incorporate all allegations and causes of action above into this cause of

action by reference.

147.    At all relevant times, the Defendant Elsbury is an agent, employee, servant, ostensible agent and/or independent contractor of all Defendants and was acting within the course and scope of his employment, under the direct control of these Defendants.

148.    Accordingly, all Defendants are vicariously liable for the Defendant Ellsbury's aforementioned negligence and conduct and all damages proximately caused by such negligence and conduct.

149.    At all times relevant hereto, all Defendants were and/or are deemed to be, by the FMCSR (49 C.F.R. Section 390.5), Defendant Elsbury's employer and/or statutory employer.

## COUNT IV – NEGLIGENCE
### Plaintiffs v. Liberty Transportation Defendants

150.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

151.    Defendant Liberty Transport had a duty to act reasonably in hiring and retaining Defendant Elsbury, and to adopt and enforce policies, procedures, and rules to ensure that its driver(s) acted, and its vehicle(s) were operated and maintained, safely.

152.    In the alternative, and in addition to the above, the aforesaid incident which resulted in the harm and damages suffered by Plaintiff and Rhoda Malone were caused by the negligence of Liberty Transportation Defendants, in general and in the following particulars:

a.)    Failing to provide adequate safety and vehicle operation training to its agents, servants and/or employees in the use of its motor vehicles, particularly Defendant Elsbury;

b.)    In entrusting a box truck leased by these Defendants to the Defendant Elsbury when said company knew or should have known that Defendant Elsbury was not properly trained, certified, instructed and/or able to operate said vehicle and of Defendant Elsbury's inabilities, incompetency, and deficiencies in driving;

31

c.)    In failing to discover or ascertain the inabilities, incompetencies, and deficiencies of Defendant Elsbury related to driving prior to entrusting the aforementioned vehicle;

d.)    Failure to warn the Plaintiff of the Defendant Elsbury's dangerous, negligent and careless propensities in operating a motor vehicle although the Liberty Transportation Defendants had known or had reason to know of the likelihood of such an incident;

e.)    Failure to control Defendant Elsbury when these Defendants learned, or should have learned, he became a threat to the community at large because of his dangerous, negligent and careless propensities in operating a box truck;

f.)    Failing to warn the members of the public including Rhoda Malone of the increased danger of injury occurring because of Defendant Elsbury's dangerous, negligent and careless propensities in the operating a box truck;

g.)    Failure to immediately warn Rhoda Malone that Defendant Elsbury was not qualified and/or able to operate said vehicle;

h.)    Failing to properly control Defendant Elsbury and restrain him from operating a motor vehicle in order to prevent injury to the general public, i.e. Rhoda Malone, when said Defendant knew or should have known of the high likelihood that Defendant Elsbury would operate a motor vehicle in a dangerous, negligent and reckless manner;

i.)    Failing to control and supervise its agent, servant and/or employees, i.e. Defendant Elsbury in such a manner that Rhoda Malone would not be injured as a result of his conduct;

j.)    In failing to investigate and evaluate Defendant Elsbury's medical, driving, and any other relevant background as it related to his employment as a driver for Defendant, especially as it relates the operation of a motor vehicle;

k.)    Failure to inspect, maintain and/or repair its vehicles, i.e. the box truck, which was involved in the collision of September 9, 2016, to make sure that the required and/or relevant equipment needed to operate a motor vehicle safely were in proper working order;

l.)    Failing to develop policies and procedures concerning proper operation of a box truck that relate to control of said vehicle and/or adhering to laws protecting other drivers on the road;

m.)     In failing to properly research the credentials of its employees, agents and/or servants to determine whether they are qualified, licensed, and/or competent to perform the services which Defendants hired them to perform;

n.)     In hiring unqualified, unlicensed, and/or incompetent personnel to perform services which should only be performed by qualified professional drivers and persons;

o.)     In permitting agents, employees and/or servants to perform jobs which its agents, employees and/or servants are not certified, registered, licensed, competent and/or qualified to perform;

p.)     In failing to train, instruct and educate Defendant Elsbury in the proper procedure and technique in the operation of a box truck;

q.)     In failing to train, instruct and educate Defendant Elsbury in all the duties and procedures required when acting as a employee, agent and/or servant of these Defendants;

r.)     In failing to properly plan the route for Defendant Elsbury which would not place members of the public at risk for injury;

s.)     In failing to maintain trucks appropriately;

t.)     In failing to inspect old and/or failing parts of this box truck which may affect the safe operation of these truck;

u.)     In failing to enforce and/or prohibit fatigued drivers from operating a box truck;

v.)     In failing to make sure drivers are attentive and not distracted when operating box truck;

w.)     Failing to make sure that traffic laws were followed by its drivers concerning driving on roads, highways and streets;

x.)     Failing to make sure that loads were not over weight capacity on the day of this incident;

y.)     Failing to adopt policies and procedures to monitor drivers;

z.)     Failing to make sure the driver was complying with all Federal, state, and local regulations and laws;

aa.)     Allowing, directing and/or permitting Defendant Elsbury to work and/or

33

drive excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

bb.)    Allowing, directing and/or permitting Defendant Elsbury to work and/or drive without taking sufficient off duty time;

cc.)    Allowing, directing and/or permitting Defendant Elsbury to drive and/or work on limited sleep, while drowsy, fatigued and/or sleepy;

dd.)    Allowing, directing and/or permitting Defendant Elsbury to undertake a delivery schedule that he could not complete safety and/or in a manner that did not violate the FMCSR;

ee.)    Failing to ensure that its agents, servants and/or employees only drove the specified number of hours as limited by federal, state, local laws and regulations;

ff.)    Failing to comply and know the FMCSR as required by 49 C.F.R. Section 390(e)(1);

gg.)    Failing to instruct Defendant Elsbury on the requirements of the FMCSR, as required by 49 C.F.R. Section 390.3(e)(2);

hh.)    Failing to know and comply with FMCSR, as required by 49 C.F.R. Section 390.3(e)(1);

ii.)    Failing to comply with 49 C.F.R. Section 390.3(e)(2);

jj.)    Failing to comply with 49 C.F.R. Section 390.13;

kk.)    Failing to comply with 49 C.F.R. Section 395.3 which imposes limits on operator drive time and/or on duty time and sets mandatory off duty times;

ll.)    Failing to comply with 49 C.F.R. Section 392.3 which prohibits driving when alertness is impaired by fatigue, illness, and/or other causes;

mm.)    Failing to comply with 49 C.F.R. Section 392.6 which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

nn.)    Failing to comply with 49 C.F.R. Section 390.11 which requires motor carriers to ensure that its drivers, agents, servants and/or employees comply with and/or observe the FMCSR;

34

oo.)   Failing to comply with 49 C.F.R. Section 396.7 which prohibits unsafe
        vehicle operation;

pp.)   Failing to comply with 49 C.F.R. Section 396.13 which requires proper
        vehicle inspections by the driver;

qq.)   Failing to comply with 49 C.F.R. Section 396.3 which requires proper
        vehicle inspection, repair and maintenance;

rr.)    Failing to comply with 49 C.F.R. Section 392.7 which requires proper
        vehicle inspections and confirmation that vehicular systems are in good
        working order;

ss.)   Failing to comply with Federal, state and local laws and regulations;

tt.)    Failing to comply with 49 C.F.R. Section 390.13 which prohibits aiding,
        abetting, encouraging, and/or requiring violations of the FMCSR;

uu.)   Failing to properly anticipate, plan and/or prepare for, and/or prevent
        emergencies and/or equipment failure;

vv.)   Failing to properly train its agents, servants and/or employees to properly
        anticipate, plan and/or prepare for emergencies or equipment failure;

ww.)  Hiring Defendant Elsbury and allowing him to drive;

xx.)   Failing to properly supervise Defendant Elsbury;

yy.)   Failing to properly oversee and/or control Defendant Elsbury when
        Defendants knew or should have known it was necessary and reasonable;

zz.)   Entrusting their box truck to a non CDL driver;

aaa.)  Failing to properly screen and perform background checks on their
        drivers;

bbb.)  Failing to employ a competent and/or qualified safety director;

ccc.)  Failing to adequately staff the safety department;

ddd.)  Failing to properly maintain and care for the vehicles operated and used
        during interstate commerce;

eee.)  Failing to regularly inspect vehicles they own and/or operate
        commercially;

35

fff.)   Failing to conduct or require their drivers to conduct pre-trip, pre-operation, post-trip and post operation inspections;

ggg.)   Using degraded and/or unsafe equipment, including the box truck in this crash;

hhh.)   Using a "lemon" box truck which is not road worthy;

iii.)   Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box truck;

jjj.)   Failing to intervene and/or prevent and/or stop safety violations and/or violations of Federal, state, or local rules, regulations and/or laws by Defendant Elsbury when these Defendants knew or should have known of the same;

kkk.)   Failing to comply with industry best practices and/or safety standards;

lll.)   Violating federal and state law;

mmm.)   Violating federal, state and local safety regulations, including the FMCSR;

nnn.)   Failing to discharge its duty to meet minimum standards of safety for the public and persons like Rhoda Malone;

ooo.)   In allowing their drivers to operate box trucks without proper identification;

ppp.)   In failing to enter into long term leases which set forth the duties of all parties;

qqq.)   In failing to comply with FMCSA regulations under 49 U.S.C. Section 13906;

rrr.)   In failing to comply with all requirements stated previously in this Amended Complaint;

sss.)   In permissively allowing and/or negligently entrusting said box truck to Defendant Elsbury.

36

153.    Defendant Liberty Transport's conduct demonstrated a conscious disregard of the known risks to the decedent and Plaintiffs and to the rest of the public.

154.    Defendant Liberty Transport breached its aforementioned duties, and those breaches directly and proximately caused the damages described in causes of action above and below.

**COUNT V – NELIGENCE PER SE**
**Plaintiffs v. Liberty Transportation Defendants**

155.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

156.    Liberty Transportation Defendants violated—and encouraged all of the Defendants and/or Defendant Elsbury to violate various statutes and regulations as previously and subsequently stated in this Amended Complaint.

157.    As a direct and proximate result of these Defendants' violations of various statutes and regulations that were designed to protect people like the decedent and Plaintiff, the Plaintiff and Rhoda Malone sustained damages described in causes of action above and below.

**COUNT VI – NEGLIGENCE**
**Plaintiffs v. Idealease Defendants and Defendant Hunter Leasing**

158.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

159.    Idealease Defendants and Defendant Hunter Leasing had a duty to act reasonably in hiring and retaining the person and/or entities responsible for the maintenance of the box

truck, inspections and/or any other actions to make sure that the vehicles that were being leased were safe and operational for public driving.

160.    Idealease Defendants and Defendant Hunter Leasing had a duty to reasonable inspect, maintain and/or provide trucks that were safe, operational, and/or acceptable under law for driving upon public roadways and highways and to adopt and enforce policies, procedures, and rules to ensure that its employees, agents and/or servants acted in a manner that reasonably assured that its vehicle(s) were operational as advertised, maintained, safely and inspected.

161.    Idealease Defendants and Defendant Hunter Leasing had a duty to warn all Defendants and/or Defendant Elsbury that its truck was not in good working order and that it would not be safe for operation on any public highway and/or street.

162.    Idealease Defendants and Defendant Hunter Leasing had a duty to monitor the driving, data and/or information generated by its monitoring system in order to makes sure the vehicle was being operated reasonably, safely and/or in compliance with state, local and federal law.

163.    In the alternative, and in addition to the above, the aforesaid incident which resulted in the harm and damages suffered by Plaintiff and Rhoda Malone were caused by the negligence of Defendant Hunter Leasing and Idealease Defendants, in general and in the following particulars:

  a.)    Failing to provide adequate safety and vehicle operation training to its agents, servants and/or employees in the use of its motor vehicles, particularly Defendant Elsbury;

  b.)    In entrusting a box truck owned, managed, and/or leased by these Defendants to the Defendant Elsbury when said company knew or should have known that Defendant Elsbury was not properly trained, certified, instructed and/or able to operate said vehicle and of Defendant Elsbury's inabilities, incompetency, and deficiencies in driving;

c.)    In failing to discover or ascertain the inabilities, incompetencies, and deficiencies of Defendant Elsbury related to driving prior to entrusting the aforementioned vehicle;

d.)    Failure to warn the Plaintiff of the Defendant Elsbury's dangerous, negligent and careless propensities in operating a motor vehicle although the Liberty Transportation Defendants had known or had reason to know of the likelihood of such an incident;

e.)    Failure to control Defendant Elsbury when these Defendants learned, or should have learned, he became a threat to the community at large because of his dangerous, negligent and careless propensities in operating a box truck;

f.)    Failing to warn the members of the public including Rhoda Malone of the increased danger of injury occurring because of Defendant Elsbury's dangerous, negligent and careless propensities in the operating a box truck;

g.)    Failure to immediately warn Rhoda Malone that Defendant Elsbury was not qualified and/or able to operate said vehicle;

h.)    Failing to properly control Defendant Elsbury and restrain him from operating a motor vehicle in order to prevent injury to the general public, i.e. Rhoda Malone, when said Defendant knew or should have known of the high likelihood that Defendant Elsbury would operate a motor vehicle in a dangerous, negligent and reckless manner;

i.)    Failing to control and supervise its agent, servant and/or employees, i.e. Defendant Elsbury in such a manner that Rhoda Malone would not be injured as a result of his conduct;

j.)    In failing to investigate and evaluate Defendant Elsbury's medical, driving, and any other relevant background as it related to his employment as a driver for Defendant, especially as it relates the operation of a motor vehicle;

k.)    Failure to inspect, maintain and/or repair its vehicles, i.e. the box truck, which was involved in the collision of September 9, 2016, to make sure that the required and/or relevant equipment needed to operate a motor vehicle safely were in proper working order;

l.)    Failing to develop policies and procedures concerning proper operation of a box truck that relate to control of said vehicle and/or adhering to laws protecting other drivers on the road;

39

m.)  In failing to properly research the credentials of its employees, agents and/or servants to determine whether they are qualified, licensed, and/or competent to perform the services which Defendants hired them to perform;

n.)  In hiring unqualified, unlicensed, and/or incompetent personnel to perform services which should only be performed by qualified professional drivers and persons;

o.)  In permitting agents, employees and/or servants to perform jobs which its agents, employees and/or servants are not certified, registered, licensed, competent and/or qualified to perform;

p.)  In failing to train, instruct and educate Defendant Elsbury in the proper procedure and technique in the operation of a box truck;

q.)  In failing to train, instruct and educate Defendant Elsbury in all the duties and procedures required when acting as a employee, agent and/or servant of these Defendants;

r.)  In failing to properly plan the route for Defendant Elsbury which would not place members of the public at risk for injury;

s.)  In failing to maintain trucks appropriately;

t.)  In failing to inspect old and/or failing parts of this box truck which may affect the safe operation of these truck;

u.)  In failing to enforce and/or prohibit fatigued drivers from operating a box truck;

v.)  In failing to make sure drivers are attentive and not distracted when operating box truck;

w.)  Failing to make sure that traffic laws were followed by its drivers concerning driving on roads, highways and streets;

x.)  Failing to make sure that loads were not over weight capacity on the day of this incident;

y.)  Failing to adopt policies and procedures to monitor drivers;

z.)  Failing to make sure the driver was complying with all Federal, state, and local regulations and laws;

aa.)  Allowing, directing and/or permitting Defendant Elsbury to work and/or

drive excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

bb.) Allowing, directing and/or permitting Defendant Elsbury to work and/or drive without taking sufficient off duty time;

cc.) Allowing, directing and/or permitting Defendant Elsbury to drive and/or work on limited sleep, while drowsy, fatigued and/or sleepy;

dd.) Allowing, directing and/or permitting Defendant Elsbury to undertake a delivery schedule that he could not complete safety and/or in a manner that did not violate the FMCSR;

ee.) Failing to ensure that its agents, servants and/or employees only drove the specified number of hours as limited by federal, state, local laws and regulations;

ff.) Failing to comply and know the FMCSR as required by 49 C.F.R. Section 390(e)(1);

gg.) Failing to instruct Defendant Elsbury on the requirements of the FMCSR, as required by 49 C.F.R. Section 390.3(e)(2);

hh.) Failing to know and comply with FMCSR, as required by 49 C.F.R. Section 390.3(e)(1);

ii.) Failing to comply with 49 C.F.R. Section 390.3(e)(2);

jj.) Failing to comply with 49 C.F.R. Section 390.13;

kk.) Failing to comply with 49 C.F.R. Section 395.3 which imposes limits on operator drive time and/or on duty time and sets mandatory off duty times;

ll.) Failing to comply with 49 C.F.R. Section 392.3 which prohibits driving when alertness is impaired by fatigue, illness, and/or other causes;

mm.) Failing to comply with 49 C.F.R. Section 392.6 which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

nn.) Failing to comply with 49 C.F.R. Section 390.11 which requires motor carriers to ensure that its drivers, agents, servants and/or employees comply with and/or observe the FMCSR;

41

oo.)     Failing to comply with 49 C.F.R. Section 396.7 which prohibits unsafe
         vehicle operation;

pp.)     Failing to comply with 49 C.F.R. Section 396.13 which requires proper
         vehicle inspections by the driver;

qq.)     Failing to comply with 49 C.F.R. Section 396.3 which requires proper
         vehicle inspection, repair and maintenance;

rr.)     Failing to comply with 49 C.F.R. Section 392.7 which requires proper
         vehicle inspections and confirmation that vehicular systems are in good
         working order;

ss.)     Failing to comply with Federal, state and local laws and regulations;

tt.)     Failing to comply with 49 C.F.R. Section 390.13 which prohibits aiding,
         abetting, encouraging, and/or requiring violations of the FMCSR;

uu.)     Failing to properly anticipate, plan and/or prepare for, and/or prevent
         emergencies and/or equipment failure;

vv.)     Failing to properly train its agents, servants and/or employees to properly
         anticipate, plan and/or prepare for emergencies or equipment failure;

ww.)     Hiring Defendant Elsbury and allowing him to drive;

xx.)     Failing to properly supervise Defendant Elsbury;

yy.)     Failing to properly oversee and/or control Defendant Elsbury when
         Defendants knew or should have known it was necessary and reasonable;

zz.)     Entrusting their box truck to a non CDL driver;

aaa.)    Failing to properly screen and perform background checks on their
         drivers;

bbb.)    Failing to employ a competent and/or qualified safety director;

ccc.)    Failing to adequately staff the safety department;

ddd.)    Failing to properly maintain and care for the vehicles operated and used
         during interstate commerce;

eee.)    Failing to regularly inspect vehicles they own and/or operate
         commercially;

fff.)    Failing to conduct or require their drivers to conduct pre-trip, pre-operation, post-trip and post operation inspections;

ggg.)    Using degraded and/or unsafe equipment, including the box truck in this crash;

hhh.)    Using a "lemon" box truck which is not road worthy;

iii.)    Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box truck;

jjj.)    Failing to intervene and/or prevent and/or stop safety violations and/or violations of Federal, state, or local rules, regulations and/or laws by Defendant Elsbury when these Defendants knew or should have known of the same;

kkk.)    Failing to comply with industry best practices and/or safety standards;

lll.)    Violating federal and state law;

mmm.)    Violating federal, state and local safety regulations, including the FMCSR;

nnn.)    Failing to discharge its duty to meet minimum standards of safety for the public and persons like Rhoda Malone;

ooo.)    In allowing their drivers to operate box trucks without proper identification;

ppp.)    In failing to enter into long term leases which set forth the duties of all parties;

qqq.)    In failing to comply with FMCSA regulations under 49 U.S.C. Section 13906;

rrr.)    In failing to comply with all requirements stated previously in this Amended Complaint;

sss.)    In permissively allowing and/or negligently entrusting said box truck to Defendant Elsbury;

43

ttt.)   In allowing Defendant Elsbury to operate under their US DOT number
without complying with the Federal, state and local laws and/or
regulations;

uuu.)   Renting and/or leasing trucks and/or vehicles to Liberty Transportation
Defendants and/or Defendant Elsbury negligently;

vvv.)   Negligently entrusting the box truck to all Defendants including
Defendant Elsbury;

www.) Renting and/or leasing unsafe equipment to all Defendants;

xxx.)   Renting and/or leasing non road worthy box trucks;

yyy.)   In failing to monitor the data collection generated by CyntrX;

zzz.)   In failing to prevent Defendant Elsbury from operating their box truck
when they knew or should have known from CyntrX and/or other data
monitoring programs that he was in violation of various Federal and state
regulations and laws;

aaaa.)  In failing to real time monitor all Defendants during the use of their box
truck;

bbbb.)  Defendant Eslbury is and/or was the actual, apparent, authorized and/or
ostensible agent, servant and/or employee of these Defendants based upon
case law, statute and/or regulation;

cccc.) These Defendants exercised sufficient control over all Defendants in order
to establish vicarious liability;

dddd.)  The box truck bore the US DOT Number 238163 which opened these
Defendants up to liability;

eeee.)  These Defendants were deemed Defendant Eslbury's employer and/or
statutory employer under Federal and state laws and regulations.

164.    Idealease Defendants and Defendant Hunter Leasing demonstrated a conscious

disregard of the known risks to the Plaintiffs and to the rest of the public.

165.    Idealease Defendants and Defendant Hunter Leasing permissively allowed and/or negligently entrusted Defendant Elsbury to use the box truck and was negligent under all Federal and state and local laws and regulations.

166.    Idealease Defendants and Defendant Hunter Leasing negligently and recklessly breached its aforementioned duties, and those breaches directly and proximately caused the damages described in causes of action above and below.

## VIII – NEGLIGENCE PER SE
### Plaintiffs v. Idealease Defendants and Defendant Hunter Leasing

167.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

168.    Idealease Defendants and Defendant Hunter Leasing violated, and encouraged all of the Defendants and/or defendant driver to violate, various laws and regulations as stated above and below in this Amended Complaint.

169.    As a direct and proximate result of the Idealease Defendants' and Hunter Leasing Defendants' negligent and reckless violations of these various laws and regulations, the Plaintiffs suffered the damages described in causes of action above and below.

## X – NEGLIGENCE
### Plaintiffs v. Sears Defendants

170.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

171.    The Sears Defendants had a duty to act reasonably in advising in the hiring and retaining the defendant driver, and to adopt and enforce policies, procedures, and rules to ensure

that all of the Defendants had the experience, training and knowledge to safely operate a box truck.

172.    In the alternative, and in addition to the above, the aforesaid incident which resulted in the harm and damages suffered by Plaintiff and Rhoda Malone were caused by the negligence of the Sears Defendants, in general and in the following particulars:

a.)    Failing to provide adequate safety and vehicle operation training to its agents, servants and/or employees in the use of its motor vehicles, particularly Defendant Elsbury;

b.)    Failing to monitor the Defendants in real time to make sure deliveries were done in a safe manner;

c.)    In failing to discover or ascertain the inabilities, incompetencies, and deficiencies of Defendant Elsbury related to driving prior to entrusting the aforementioned vehicle;

d.)    Failure to warn the Plaintiff of the Defendant Elsbury's dangerous, negligent and careless propensities in operating a motor vehicle although these Defendants had known or had reason to know of the likelihood of such an incident;

e.)    Failure to control Defendant Elsbury when these Defendants learned, or should have learned, he became a threat to the community at large because of his dangerous, negligent and careless propensities in operating a box truck;

f.)    Failing to warn the members of the public including Rhoda Malone of the increased danger of injury occurring because of Defendant Elsbury's dangerous, negligent and careless propensities in the operating a box truck;

g.)    Failure to immediately warn Rhoda Malone that Defendant Elsbury was not qualified and/or able to operate said vehicle;

h.)    Failing to properly control Defendant Elsbury and restrain him from operating a motor vehicle in order to prevent injury to the general public, i.e. Rhoda Malone, when said Defendant knew or should have known of the high likelihood that Defendant Elsbury would operate a motor vehicle in a dangerous, negligent and reckless manner;

46

i.)    Failing to control and supervise its agent, servant and/or employees, i.e. Defendant Elsbury in such a manner that Rhoda Malone would not be injured as a result of his conduct;

j.)    In failing to investigate and evaluate Defendant Elsbury's medical, driving, and any other relevant background as it related to his employment as a driver for Defendant, especially as it relates the operation of a motor vehicle;

k.)    In scheduling too many deliveries;

l.)    Failing to develop policies and procedures concerning proper operation of a box truck that relate to control of said vehicle and/or adhering to laws protecting other drivers on the road;

m.)    In failing to properly research the credentials of its employees, agents and/or servants to determine whether they are qualified, licensed, and/or competent to perform the services which Defendants hired them to perform;

n.)    In hiring unqualified, unlicensed, and/or incompetent personnel to perform services which should only be performed by qualified professional drivers and persons;

o.)    In permitting agents, employees and/or servants to perform jobs which its agents, employees and/or servants are not certified, registered, licensed, competent and/or qualified to perform;

p.)    In failing to train, instruct and educate Defendant Elsbury in the proper procedure and technique in the operation of a box truck and/or making scheduled deliveries;

q.)    In failing to train, instruct and educate Defendant Elsbury in all the duties and procedures required when acting as a employee, agent and/or servant of these Defendants;

r.)    In failing to properly plan the route for Defendant Elsbury which would not place members of the public at risk for injury;

s.)    In failing to maintain trucks appropriately;

t.)    In failing to inspect old and/or failing parts of this box truck which may affect the safe operation of these truck;

u.)    In failing to enforce and/or prohibit fatigued drivers from operating a box truck and/or making deliveries;

v.)     In failing to make sure drivers are attentive and not distracted when operating box truck;

w.)    Failing to make sure that traffic laws were followed by its drivers concerning driving on roads, highways and streets;

x.)    Failing to make sure that loads were not over weight capacity on the day of this incident;

y.)    Failing to adopt policies and procedures to monitor drivers and/or deliveries;

z.)    Failing to make sure the driver was complying with all Federal, state, and local regulations and laws;

aa.)    Allowing, directing and/or permitting Defendant Elsbury to work and/or drive excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

bb.)    Allowing, directing and/or permitting Defendant Elsbury to work and/or drive without taking sufficient off duty time;

cc.)    Allowing, directing and/or permitting Defendant Elsbury to drive and/or work on limited sleep, while drowsy, fatigued and/or sleepy;

dd.)    Allowing, directing and/or permitting Defendant Elsbury to undertake a delivery schedule that he could not complete safety and/or in a manner that did not violate the FMCSR;

ee.)    Failing to ensure that its agents, servants and/or employees only drove the specified number of hours as limited by federal, state, local laws and regulations;

ff.)    Failing to comply and know the FMCSR as required by 49 C.F.R. Section 390(e)(1);

gg.)    Failing to instruct Defendant Elsbury on the requirements of the FMCSR, as required by 49 C.F.R. Section 390.3(e)(2);

hh.)    Failing to know and comply with FMCSR, as required by 49 C.F.R. Section 390.3(e)(1);

ii.)    Failing to comply with 49 C.F.R. Section 390.3(e)(2);

jj.)    Failing to comply with 49 C.F.R. Section 390.13;

kk.)    Failing to comply with 49 C.F.R. Section 395.3 which imposes limits on
operator drive time and/or on duty time and sets mandatory off duty times;

ll.)    Failing to comply with 49 C.F.R. Section 392.3 which prohibits driving
when alertness is impaired by fatigue, illness, and/or other causes;

mm.)    Failing to comply with 49 C.F.R. Section 392.6 which prohibits
scheduling runs and/or permitting or requiring vehicle operation between
points in such a limited period of time as to necessitate excessive and/or
unreasonable speeds for existing conditions;

nn.)    Failing to comply with 49 C.F.R. Section 390.11 which requires motor
carriers to ensure that its drivers, agents, servants and/or employees
comply with and/or observe the FMCSR;

oo.)    Failing to comply with 49 C.F.R. Section 396.7 which prohibits unsafe
vehicle operation;

pp.)    Failing to comply with 49 C.F.R. Section 396.13 which requires proper
vehicle inspections by the driver;

qq.)    Failing to comply with 49 C.F.R. Section 396.3 which requires proper
vehicle inspection, repair and maintenance;

rr.)    Failing to comply with 49 C.F.R. Section 392.7 which requires proper
vehicle inspections and confirmation that vehicular systems are in good
working order;

ss.)    Failing to comply with Federal, state and local laws and regulations;

tt.)    Failing to comply with 49 C.F.R. Section 390.13 which prohibits aiding,
abetting, encouraging, and/or requiring violations of the FMCSR;

uu.)    Failing to properly anticipate, plan and/or prepare for, and/or prevent
emergencies and/or equipment failure;

vv.)    Failing to properly train its agents, servants and/or employees to properly
anticipate, plan and/or prepare for emergencies or equipment failure;

ww.)    Hiring Defendant Elsbury and allowing him to drive;

xx.)    Failing to properly supervise all Defendants;

yy.)    Failing to properly oversee and/or control all Defendants when Defendants knew or should have known it was necessary and reasonable;

zz.)    Entrusting their box truck and/or goods or merchandise to a non CDL driver;

aaa.)    Failing to properly screen and perform background checks on their drivers and/or carriers;

bbb.)    Failing to employ a competent and/or qualified safety director;

ccc.)    Failing to adequately staff the safety department;

ddd.)    Failing to properly maintain and care for the vehicles operated and used during interstate commerce;

eee.)    Failing to regularly inspect vehicles they own and/or operate commercially;

fff.)    Failing to conduct or require their drivers to conduct pre-trip, pre-operation, post-trip and post operation inspections;

ggg.)    Using degraded and/or unsafe equipment, including the box truck in this crash;

hhh.)    Using a "lemon" box truck which is not road worthy;

iii.)    Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box truck;

jjj.)    Failing to intervene and/or prevent and/or stop safety violations and/or violations of Federal, state, or local rules, regulations and/or laws by Defendant Elsbury when these Defendants knew or should have known of the same;

kkk.)    Failing to comply with industry best practices and/or safety standards;

lll.)    Violating federal and state law;

mmm.)    Violating federal, state and local safety regulations, including the FMCSR;

nnn.)       Failing to discharge its duty to meet minimum standards of safety
            for the public and persons like Rhoda Malone;

ooo.)       In allowing their drivers to operate box trucks without proper
            identification while making deliveries;

ppp.)       In failing to enter into long term leases which set forth the duties of
            all parties;

qqq.)       In failing to comply with FMCSA regulations under 49 U.S.C.
            Section 13906;

rrr.)    In failing to comply with all requirements stated previously in this
         Amended Complaint;

sss.)    In permissively allowing and/or negligently entrusting said box truck to
         Defendant Elsbury;

ttt.)    In allowing Defendant Elsbury to operate under their US DOT number
         without complying with the Federal, state and local laws and/or
         regulations;

uuu.)    Renting and/or leasing trucks and/or vehicles to Liberty Transportation
         Defendants and/or Defendant Elsbury negligently;

vvv.)    Negligently entrusting the box truck to all Defendants including
         Defendant Elsbury;

www.) Renting and/or leasing unsafe equipment;

xxx.)    Using, Renting and/or leasing non road worthy box trucks;

yyy.)    In failing to monitor the data collection generated by CyntrX;

zzz.)    In hiring and/or entrusting goods and merchandise to unqualified carriers
         and/or persons;

aaaa.)  In failing to real time monitor all Defendants during deliveries;

bbbb.)  Defendant Eslbury is and/or was the actual, apparent, authorized and/or
        ostensible agent, servant and/or employee of these Defendants based upon
        case law, statute and/or regulation;

cccc.) These Defendants exercised sufficient control over all Defendants in order
       to establish vicarious liability;

dddd.) Failing to comply with industry best practices and/or safety standards;

eeee.) These Defendants were deemed Defendant Eslbury's employer and/or
statutory employer under Federal and state laws and regulations

ffff.) Determined, directed, ordered, controlled and/or instructed with all
Defendants negligently for goods delivered from them to customers;

gggg.) Not allowing enough time for all Defendants to make deliveries safely
and/or pursuant to law.

173.    The Sears Defendants' conduct demonstrated a conscious disregard of the known

risks to the Plaintiffs and to the rest of the public.

174.    The Sears Defendants negligently and recklessly breached the duties described

above, which directly and proximately caused the damages described in this complaint.

## XI – NEGLIGENCE PER SE
### Plaintiffs v. Sears Defendants

175.    Plaintiffs incorporate all allegations and causes of action above into this cause of

action by reference.

176.    The Sears Defendants had knowledge that all of the Defendants and/or defendant

driver violated federal, state, and local statutes and regulations, encouraged, and was complicit in

these violations.

177.    As a direct and proximate result of the Sears Defendants' negligent and reckless

violations of state and federal statutes and regulations, and knowledge and participation in all of

the Defendants violating state statutes and regulations, the Plaintiffs suffered the damages

described in causes of action above and below.

## IX – VICARIOUS LIABILITY
### Plaintiffs v. Defendant HDH

178.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

179.    At all relevant times, the Defendant HDH was the agent, employer, statutory employer, ostensible agent and/or otherwise responsible for the acts of all of the other Defendants.

180.    Accordingly, the Defendant HDH is vicariously liable for the Defendant's aforementioned negligence and any damages proximately caused said negligence and conduct.

## X – NEGLIGENCE
### Plaintiffs v. Defendant HDH

181.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

182.    The Defendant HDH had a duty to act reasonably in advising in the hiring and retaining the defendant driver, and to adopt and enforce policies, procedures, and rules to ensure that all of the Defendants had the experience, training and knowledge to safely operate a box truck.

183.    The Defendant HDH's conduct demonstrated a conscious disregard of the known risks to the Plaintiffs and to the rest of the public.

184.    The Defendant HDH ostensibly served as the insurance broker for the Liberty Transportation Defendants.

53

185.    At all times relevant hereto, Defendant HDH rendered services and/or consultation beyond insurance brokerage and into the areas of:

a.)    safety consultation, management, and troubleshooting; and

b.)    risk control and risk control operations.

186.    Defendant HDH provided such safety consultation, management and troubleshooting and/or risk control and risk control operations to the Liberty Transportation Defendants before and after the subject crash.

187.    In such role, Defendant HDH negligently, carelessly, recklessly and outrageously: aided, abetted, encouraged, permitted and/or required violations of the FMCSR by the Defendants; undertook to render services to the Liberty Transportation Defendants that Defendant HDH knew or should have known unreasonably exposed others to risk; undertook safety consultation and/or risk control services to/for all Defendants that Defendant HDH failed to adequately or reasonably perform; and acted negligently and recklessly generally.

188.    In the alternative, and in addition to the above, the aforesaid incident which resulted in the harm and damages suffered by Plaintiff and Rhoda Malone were caused by the negligence of Defendant HDH Group Defendants, in general and in the following particulars:

a.)    By enabling all Defendants to obtain the necessary authority, financial responsibility and/or licensing to operate and/or put commercial vehicles and/or trucks on the road when these Defendants knew or should have known that they were not qualified and/or able to do so in a safe and reasonable manner;

b.)    Performed services that facilitated all Defendants' operation and/or continued operation which was not in a qualified manner and/or compliant with Federal or state laws and regulations;

c.)    Made recommendations to the Defendants in the operation of this trucking business which were contrary to law and/or regulations and/or negligent;

d.)    Provided safety management and/or consulting services that enabled an unfit carrier and/or carrier with unfit drivers to obtain and/or maintain the requisite authority, financial responsibility, and/or licensing to operate and/or put commercial vehicles, drivers and/or trucks on the road;

54

e.)     Provided risk control and risk control operations services that enabled an unfit carrier and/or carrier with unfit drivers, agents, employees and/or servants to obtain and/or maintain the requisite authority, financial responsibility, and/or licensing to operate and/or put commercial vehicles, drivers, and/or trucks on the road;

f.)     Aided, abetted, encouraged, permitted and/or required violations of the FMCSR by all Defendants, 49 C.F.R. Section 390.13;

g.)     Undertook to render services to all Defendants that this Defendant knew or should have known unreasonably exposed others to risk, Restatement (Second) of Torts Section 324A;

h.)     Undertook safety consultation and/or risk control services for all Defendants that Defendant HDH Group failed to adequately perform or reasonably perform.

189.    Defendant HDH group negligently and recklessly breached the duties described above, which directly and proximately caused the damages described in this complaint.

## XI – NEGLIGENCE PER SE
### Plaintiffs v. Defendant HDH

190.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

191.    The Defendant HDH had knowledge that all of the Defendants and/or Defendant-driver violated federal, state, and local statutes and regulations, encouraged, and was complicit in these violations.

192.    As a direct and proximate result of the Defendant HDH's negligent and reckless violations of state and federal statutes and regulations, and knowledge and participation in all of the Defendants violating state statutes and regulations, the Plaintiffs suffered the damages described in causes of action above and below.

## XII – NEGLIGENCE
### Plaintiff v. Defendant Navistar, Inc.

193.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

194.  The 2011 Durastar International 4300 box truck and/or component parts used, operated, and put forth to the various Defendants was designed, manufactured, engineered, developed, inspected, tested, marketed, distributed, modified and sold by this Defendant.

195.  Plaintiff's injuries were a direct and proximate result of the negligence of Defendant in the following particulars:

(a)  In failing to discover the safety hazards in the box truck and/or component parts when defendant knew or should have known that such hazards existed;

(b)  In failing to correct the hazardous, unsafe and dangerous condition of the Box truck and/or component parts before distribution of the product;

(c)  In failing to properly design, engineer, and manufacture the box truck and/or component parts that was safe for use in such a way as to avoid injury to Rhoda Malone;

(d)  In failing to provide a product that was safe for all users;

(e)  In failing to take the reasonable steps necessary to ensure the box truck and/or component parts would be non-hazardous for all purposes;

(f)  In failing to adequately warn or inform the Plaintiff and in failing to adequately warn or instruct the public as to the box truck's (including component parts) propensity to seriously harm the operator, the human body and/or other driver's on the road;

(g)  In concealing the dangerous propensity of the box truck and/or similar products/component parts to cause excessive harm to the operators, the human body, and/or other persons on the roadway;

(h)  In failing to employ trained agents, servants and/or employees to properly design, engineer, manufacture, inspect and test the box truck/component parts to prevent injuries to persons when the box truck was used, applied and exposed to other drivers and/or persons;

(i)  In failing to properly test the box truck/component parts for its effects on all types of users and/or conditions;

(j)  In intentionally misrepresenting testing data pertaining to the component parts'/box trucks' risks when used, applied and operated;

(k)  Failing to discover that that the box truck/component parts is particularly dangerous when operated;

(l)  Failing to warn, educate and/or inform persons that the component parts/box truck could not be operated safely;

(m)  Failing to warn, educate and/or inform persons that the component parts/box truck did not have the ability to be fixed and/or repaired;

(n)  Failing to warn, educate, and/or inform persons that this box truck/component parts and similar motor vehicles had a history of malfunctioning, being defective and/or hazardous to users and members of

56

the public sharing the roads with it;

(o)    Failure to properly train its agents, servants and/or employees to inform and warn the public and customers about the box trucks' defective nature when Defendants knew and/or should have known of its existence;

(p)    In failing to properly test and inspect the box truck/component parts before placing it into the stream of commerce;

(q)    In marketing, labeling, advertising, representing and selling the box truck/component parts as safe products when they knew or should have known of the above defects;

(r)    In failing to provide post-sale warnings or instructions to the users of the box truck/component parts;

(s)    In failing to design, manufacture, supply, distribute and market the box truck/component parts in a reasonably safe manner so as to prevent injury to its potential customers and/or members of the public on the road;

(t)    In designing, manufacturing, marketing, and selling a product that is not safe for its intended use and in designing, manufacturing, supplying, distributing and selling a product that contained defects;

(u)    In failing to design, manufacture, supply, distribute and market safe ways to train its customers in the use, maintenance, and/or upkeep of the box truck so as to prevent injury to members of the public;

(v)    In modifying said box truck/component parts to make it unsafe, defective and dangerous;

(w)    In allowing modifications to be done to the box truck and its parts which made it unsafe, defective, and dangerous;

(x)    In concealing that modifications were done to the box truck/component parts which made it unsafe, defective and dangerous;

(y)    In failing to provide a system which provided a real time monitoring of the box truck/component parts;

(z)    The box truck did not have any designs to protect users of the product and/or members of the public;

(aa)    In failing to design and manufacture the box truck and its component parts in a safe and reasonable manner;

(bb)    In the alternative, in failing to design and manufacture the box truck/component parts in a manner which allowed users to have access to the designs and/or diagrams of the box truck and its component parts;

(cc)    By failing to have the box truck operating system designed and manufactured with a warning device whereby users, maintenance persons and/or other in and around the box truck would be notified that defects were present and that there was an increased risk of injury and/or death for others on the road with the box truck;

(dd)    By failing to design and manufacture with a device or mechanism that would shut down or otherwise disable the box truck from running when a necessary safety component was open, missing, or otherwise not operating properly;

(ee)    The box truck and its component parts and system were negligently

designed and manufactured;

(ff)    In failing to include on the box truck and its system itself warnings regarding the increased risk of serious injury from defects, negligent design and the like;

(gg)    In failing to include on the box truck itself warnings regarding the danger the box truck to employees and other individuals operating, working in, with, and around said box trucks;

(hh)    In the alternative, if the box truck/component parts include warnings relative to the known dangers, in failing to include adequately visible and conspicuous warnings relative to the risk and gravity of injury that could result from said box truck/component parts to individuals, members of the public and/or operators;

(ii)    The box truck, its component parts and system were negligently designed and manufactured in violation of various statutes and/or regulations;

(jj)    In the alternative, if the box truck and/or component parts were negligently designed and posed a safety threat to members of the public;

(kk)    The box trucks/component parts were negligently designed and manufactured without the necessary safety properties, warnings, and/or adherence to law.

196.    Defendant Navistar, Inc., negligently and recklessly breached the duties described above, which directly and proximately caused the damages described in this complaint.

## XIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### Plaintiff v. Defendant Navistar, Inc.

197.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

198.    At the time the Defendant sold the box truck/component parts, they warranted, by implied warranty of merchantability, that the box truck/component parts were free from defects and was safe and suitable for the uses for which it was intended.

199.    Defendant breached the aforesaid warranties, both express and implied, by providing the remaining Defendants with a box truck/component parts which were defective as more fully described above, and which was neither adequate nor suitable for the uses for which it was intended.

200.    As the direct result of the Defendant's breach of their express and implied

warranties, the Plaintiff suffered severe and disabling injuries as more fully described above.

201.    Defendants expressly warranted that the box truck and/or component parts were safe for their intended use, including operation by Defendant Elsbury and other Defendants.

202.    The box truck and/or component parts did not conform to the express representations of these Defendants, because the box truck and/or component parts are a more dangerous product than Defendants, R.H. Sheppard Co. and Navistar, Inc. and John Does I through X led the remaining Defendants to believe.

203.    Defendants R.H. Sheppard Co., Navistar, Inc., and John Does I through X impliedly warranted that the box truck and/or component parts were of merchantable quality and safe and fit for its intended and foreseeable uses.

204.    Defendants R.H. Shepard Co. Navistar, Inc., and John Does I through X breached these implied warranties because the box truck and/or component parts were not and is not of merchantable quality or safe and fit for its intended uses.

205.    The breach of the express and implied warranties by the Defendants R.H. Sheppard Co., Navistar, Inc. and John Does I through X serve to create a defective product.

206.    The above referenced breach of the express and implied warranties was a direct and proximate cause of the September 9, 2016 motor vehicle crash and the Plaintiff's losses and injuries as previously set forth herein.

## XIV – STRICT LIABILITY
### Plaintiff v. Defendant Navistar, Inc.

207.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

208.    At all relevant times, Defendant Navistar, Inc. designed, manufactured, marketed, packaged, and/or sold the box truck/component parts and represented to the public, remaining Defendants and other entities in general that the box truck/component parts were safe, non-hazardous and generally safe and suitable for the purposes for which it was intended.

209.    Plaintiff's previously described injuries and damages were caused by the defective condition of the box truck/component parts, which included the following:

(a)    The box truck and/or component parts were defectively designed;

(b)    The box truck and/or component parts were defectively manufactured;

(c)    The box truck and/or component parts were defectively designed and manufactured because the known defects;

(d)    The box truck and/or component parts were unfit for its intended use in the work being performed by Defendant Elsbury and other named Defendants;

(e)    The instructions and warnings which accompanied the box truck failed to adequately warn of all dangers associated with its use;

(f)    The box truck and/or component parts were not properly inspected and/or approved by the appropriate persons and entities prior to it being placed in the stream of commerce;

(g)    The instructions and warnings failed to warn users of its defective nature and that the training, maintenance and/or inspections advocated and instructed by this Defendant of this product lacked each and every element necessary to make it safe for its intended use;

(h)    The box truck and/or component parts did not the necessary warning programs to inform drivers of defects;

(i)    The box truck and/or component parts were designed and manufactured without a warning device whereby drivers and others in the vehicle would be notified that the box truck and/or component parts were malfunctioning and/or defective in nature;

(m)    The diesel roller system was designed and manufactured without a device or mechanism that would shut down or otherwise disable the diesel roller from running when a necessary safety component was open, missing, or otherwise not operating properly;

(n)    The box truck and/or component parts were designed and manufactured without a device or mechanism that would cause the vehicle to inform its users of its inability to operate safely;

(o)    In failing to include on the box truck and/or component parts a system with warnings regarding the increased risk of serious injury if the box truck and/or component parts malfunctioned and/or became defective;

(p)    In failing to include on the box truck and/or component parts itself warnings

regarding the dangerous conditions;

(q)     In the alternative, if the box truck and/or component parts did include warnings about any dangerous conditions and/or defects;

(r)     That the extended use of said box truck and/or component parts required maintenance, repair and upkeep which required the use of non-original parts or accessories which affected the safe operation of the box truck and/or the component parts;

(s)     Not providing manual to the proper users;

(t)     Not providing diagrams and/or plans of the component parts and/or box truck;

(u)     The box truck and/or component parts would operate previously improperly;

(v)     The foreseeable risks exceeded the benefits associated with the product;

(w)     The product was more dangerous than the Defendant could have expected and more dangerous than other products marketed for the same purposes;

(x)     The product did not have adequate, effective warnings and instructions in light of the dangers associated with its use;

(y)     The product was inadequately tested;

(z)     The box truck and/or component parts were inadequately and improperly designed for the foreseeable uses of the above Defendants.

210.    As a direct and proximate result of the defective condition of Defendant's product, Rhoda Malone suffered the injuries and damages as set forth above.

211.    In addition or in the alternative, the product, the box truck and/or component parts, malfunctioned in that it did not act as represented which caused Rhoda Malone to suffer severe and serious injuries to her person.

212.    The box truck and/or component parts were designed, engineered, developed, inspected, tested, marketed, distributed and sold by this Defendant.

213.    The box truck and/or component parts were defective in that it created an unreasonable risk of harm to Rhoda Malone.

214.    The hazardous condition of the box truck and/or component parts existed at the time the product left the Defendants' care, custody and control and was unreasonably dangerous for its intended use.

215.    As the result of the defective nature of the box truck and/or component parts, the

Defendant is strictly liable to the Plaintiff pursuant to § 402A of the Restatement (Second) of Torts.

216.    Defendant is strictly liable to plaintiffs for the injuries and damages Rhoda Malone

suffered.

## XV – NEGLIGENCE
### Plaintiff v. Defendant R.H. Sheppard Co.

217.    Plaintiffs incorporate all allegations and causes of action above into this cause of

action by reference.

218.    The 2011 Durastar International 4300 box truck and/or its component parts used,

operated, and put forth to the various Defendants was designed, manufactured, engineered,

developed, inspected, tested, marketed, distributed, modified and sold by this Defendant.

219.    Plaintiff's injuries were a direct and proximate result of the negligence of

Defendant in the following particulars:

(a)    In failing to discover the safety hazards in the box truck and/or component parts when defendant knew or should have known that such hazards existed;

(b)    In failing to correct the hazardous, unsafe and dangerous condition of the Box truck and/or component parts before distribution of the product;

(c)    In failing to properly design, engineer, and manufacture the box truck and/or component parts that was safe for use in such a way as to avoid injury to Rhoda Malone;

(d)    In failing to provide a product that was safe for all users;

(e)    In failing to take the reasonable steps necessary to ensure the box truck and/or component parts would be non-hazardous for all purposes;

(f)    In failing to adequately warn or inform the Plaintiff and in failing to adequately warn or instruct the public as to the box truck's (including component parts) propensity to seriously harm the operator, the human body and/or other driver's on the road;

(g)    In concealing the dangerous propensity of the box truck and/or similar products/component parts to cause excessive harm to the operators, the human body, and/or other persons on the roadway;

(h)    In failing to employ trained agents, servants and/or employees to properly

design, engineer, manufacture, inspect and test the box truck/component parts to prevent injuries to persons when the box truck was used, applied and exposed to other drivers and/or persons;

(i)    In failing to properly test the box truck/component parts for its effects on all types of users and/or conditions;

(j)    In intentionally misrepresenting testing data pertaining to the component parts'/box trucks' risks when used, applied and operated;

(k)    Failing to discover that that the box truck/component parts is particularly dangerous when operated;

(l)    Failing to warn, educate and/or inform persons that the component parts/box truck could not be operated safely;

(m)    Failing to warn, educate and/or inform persons that the component parts/box truck did not have the ability to be fixed and/or repaired;

(n)    Failing to warn, educate, and/or inform persons that this box truck/component parts and similar motor vehicles had a history of malfunctioning, being defective and/or hazardous to users and members of the public sharing the roads with it;

(o)    Failure to properly train its agents, servants and/or employees to inform and warn the public and customers about the box trucks' defective nature when Defendants knew and/or should have known of its existence;

(p)    In failing to properly test and inspect the box truck/component parts before placing it into the stream of commerce;

(q)    In marketing, labeling, advertising, representing and selling the box truck/component parts as safe products when they knew or should have known of the above defects;

(r)    In failing to provide post-sale warnings or instructions to the users of the box truck/component parts;

(s)    In failing to design, manufacture, supply, distribute and market the box truck/component parts in a reasonably safe manner so as to prevent injury to its potential customers and/or members of the public on the road;

(t)    In designing, manufacturing, marketing, and selling a product that is not safe for its intended use and in designing, manufacturing, supplying, distributing and selling a product that contained defects;

(u)    In failing to design, manufacture, supply, distribute and market safe ways to train its customers in the use, maintenance, and/or upkeep of the box truck so as to prevent injury to members of the public;

(v)    In modifying said box truck/component parts to make it unsafe, defective and dangerous;

(w)    In allowing modifications to be done to the box truck and its parts which made it unsafe, defective, and dangerous;

(x)    In concealing that modifications were done to the box truck/component parts which made it unsafe, defective and dangerous;

(y)    In failing to provide a system which provided a real time monitoring of the box truck/component parts;

(z)    The box truck did not have any designs to protect users of the product and/or members of the public;

(aa)    In failing to design and manufacture the box truck and its component parts in a safe and reasonable manner;

(bb)    In the alternative, in failing to design and manufacture the box truck/component parts in a manner which allowed users to have access to the designs and/or diagrams of the box truck and its component parts;

(cc)    By failing to have the box truck operating system designed and manufactured with a warning device whereby users, maintenance persons and/or other in and around the box truck would be notified that defects were present and that there was an increased risk of injury and/or death for others on the road with the box truck;

(dd)    By failing to design and manufacture with a device or mechanism that would shut down or otherwise disable the box truck from running when a necessary safety component was open, missing, or otherwise not operating properly;

(ee)    The box truck and its component parts and system were negligently designed and manufactured;

(ff)    In failing to include on the box truck and its system itself warnings regarding the increased risk of serious injury from defects, negligent design and the like;

(gg)    In failing to include on the box truck itself warnings regarding the danger the box truck to employees and other individuals operating, working in, with, and around said box trucks;

(hh)    In the alternative, if the box truck/component parts include warnings relative to the known dangers, in failing to include adequately visible and conspicuous warnings relative to the risk and gravity of injury that could result from said box truck/component parts to individuals, members of the public and/or operators;

(ii)    The box truck, its component parts and system were negligently designed and manufactured in violation of various statutes and/or regulations;

(jj)    In the alternative, if the box truck and/or component parts were negligently designed and posed a safety threat to members of the public;

(kk)    The box trucks/component parts were negligently designed and manufactured without the necessary safety properties, warnings, and/or adherence to law.

220.    Defendant R.H. Sheppard Co. negligently and recklessly breached the duties

described above, which directly and proximately caused the damages described in this complaint.

## XVI – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### Plaintiff v. Defendant R.H. Sheppard Co.

221.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

222.    At the time the Defendant sold the box truck/component parts, they warranted, by implied warranty of merchantability, that the box truck/component parts were free from defects and was safe and suitable for the uses for which it was intended.

223.    Defendant breached the aforesaid warranties, both express and implied, by providing the remaining Defendants with a box truck/component parts which were defective as more fully described above, and which was neither adequate nor suitable for the uses for which it was intended.

224.    As the direct result of the Defendant's breach of their express and implied warranties, the Plaintiff suffered severe and disabling injuries as more fully described above.

225.    Defendants expressly warranted that the box truck and/or component parts were safe for their intended use, including operation by Defendant Elsbury and other Defendants.

226.    The box truck and/or component parts did not conform to the express representations of these Defendants, because the box truck and/or component parts are a more dangerous product than Defendants, R.H. Sheppard Co. and Navistar, Inc. and John Does I through X led the remaining Defendants to believe.

227.    Defendants R.H. Sheppard Co., Navistar, Inc., and John Does I through X impliedly warranted that the box truck and/or component parts were of merchantable quality and safe and fit for its intended and foreseeable uses.

228.    Defendants R.H. Shepard Co. Navistar, Inc., and John Does I through X breached these implied warranties because the box truck and/or component parts were not and is not of

65

merchantable quality or safe and fit for its intended uses.

229.    The breach of the express and implied warranties by the Defendants R.H.

Sheppard Co., Navistar, Inc. and John Does I through X serve to create a defective product.

230.    The above referenced breach of the express and implied warranties was a direct

and proximate cause of the September 9, 2016 motor vehicle crash and the Plaintiff's losses and

injuries as previously set forth herein.

## XVII – STRICT LIABILITY
### Plaintiff v. Defendant R.H. Sheppard Co.

231.    Plaintiffs incorporate all allegations and causes of action above into this cause of

action by reference.

232.    At all relevant times, Defendant R.H. Sheppard Co. designed, manufactured,

marketed, packaged, and/or sold the box truck/component parts and represented to the public,

remaining Defendants and other entities in general that the box truck/component parts were safe,

non-hazardous and generally safe and suitable for the purposes for which it was intended.

233.    Plaintiff's previously described injuries and damages were caused by the

defective condition of the box truck/component parts, which included the following:

(a)    The box truck and/or component parts were defectively designed;

(b)    The box truck and/or component parts were defectively manufactured;

(c)    The box truck and/or component parts were defectively designed and
manufactured because the known defects;

(d)    The box truck and/or component parts were unfit for its intended use in
the work being performed by Defendant Elsbury and other named
Defendants;

(e)    The instructions and warnings which accompanied the box truck failed to
adequately warn of all dangers associated with its use;

(f)    The box truck and/or component parts were not properly inspected and/or
approved by the appropriate persons and entities prior to it being placed in
the stream of commerce;

(g)    The instructions and warnings failed to warn users of its defective nature
and that the training, maintenance and/or inspections advocated and

instructed by this Defendant of this product lacked each and every element necessary to make it safe for its intended use;

(h)    The box truck and/or component parts did not the necessary warning programs to inform drivers of defects;

(i)    The box truck and/or component parts were designed and manufactured without a warning device whereby drivers and others in the vehicle would be notified that the box truck and/or component parts were malfunctioning and/or defective in nature;

(m)    The diesel roller system was designed and manufactured without a device or mechanism that would shut down or otherwise disable the diesel roller from running when a necessary safety component was open, missing, or otherwise not operating properly;

(n)    The box truck and/or component parts were designed and manufactured without a device or mechanism that would cause the vehicle to inform its users of its inability to operate safely;

(o)    In failing to include on the box truck and/or component parts a system with warnings regarding the increased risk of serious injury if the box truck and/or component parts malfunctioned and/or became defective;

(p)    In failing to include on the box truck and/or component parts itself warnings regarding the dangerous conditions;

(q)    In the alternative, if the box truck and/or component parts did include warnings about any dangerous conditions and/or defects;

(r)    That the extended use of said box truck and/or component parts required maintenance, repair and upkeep which required the use of non-original parts or accessories which affected the safe operation of the box truck and/or the component parts;

(s)    Not providing manual to the proper users;

(t)    Not providing diagrams and/or plans of the component parts and/or box truck;

(u)    The box truck and/or component parts would operate previously improperly;

(v)    The foreseeable risks exceeded the benefits associated with the product;

(w)    The product was more dangerous than the Defendant could have expected and more dangerous than other products marketed for the same purposes;

(x)    The product did not have adequate, effective warnings and instructions in light of the dangers associated with its use;

(y)    The product was inadequately tested;

(z)    The box truck and/or component parts were inadequately and improperly designed for the foreseeable uses of the above Defendants.

234.    As a direct and proximate result of the defective condition of Defendant's product, Rhoda Malone suffered the injuries and damages as set forth above.

235.    In addition or in the alternative, the product, the box truck and/or component parts,

malfunctioned in that it did not act as represented which caused Rhoda Malone to suffer severe and serious injuries to her person.

236.    The box truck and/or component parts were designed, engineered, developed, inspected, tested, marketed, distributed and sold by this Defendant.

237.    The box truck and/or component parts were defective in that it created an unreasonable risk of harm to Rhoda Malone.

238.    The hazardous condition of the box truck and/or component parts existed at the time the product left the Defendants' care, custody and control and was unreasonably dangerous for its intended use.

239.    As the result of the defective nature of the box truck and/or component parts, the Defendant is strictly liable to the Plaintiff pursuant to § 402A of the Restatement (Second) of Torts.

240.    Defendant is strictly liable to plaintiffs for the injuries and damages Rhoda Malone suffered.

## XVIII – NEGLIGENCE
### Plaintiff v. Defendant Happy Wheels Body Shop

241.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

242.    Defendant Happy Wheels Body Shop had a duty to act reasonably in performing maintenance work, hiring and retaining the person and/or entities responsible for the maintenance of the box truck, inspections and/or any other actions to make sure that the vehicle that were being worked upon were safe and operational for public driving.

243.    Defendant Happy Wheels Body Shop has a duty to reasonable inspect, maintain and/or provide trucks that were safe, operational, and/or acceptable under law for driving upon public roadways and highways and to adopt and enforce policies, procedures, and rules to ensure

that its employees, agents and/or servants acted in a manner that reasonably assured that the
vehicles it serviced were operational as advertised, maintained, safely and inspected.

244.    Defendant Happy Wheels Body Shop has a duty to warn all Defendants and/or
Defendant Elsbury that the box truck and/or component parts were not in good working order
and that it would not be safe for operation on any public highway and/or street.

245.    In the alternative, and in addition to the above, the aforesaid incident which resulted
in the harm and damages suffered by Plaintiff and Rhoda Malone were caused by the negligence
of Defendant Happy Wheels Body Shop, in general and in the following particulars:

a.)    Failing to provide adequate safety and vehicle
operation/maintenance/inspection training to its agents, servants and/or
employees in the upkeep and repair to this box truck;

b.)    In entrusting the maintenance and/or upkeep to agents, servants and/or
employees who were not properly trained, certified, instructed and/or able
to perform work upon said vehicle;

c.)    In failing to discover or ascertain the inabilities, incompetencies, and
deficiencies of their agents, servants and/or employees who were entrusted
with the aforementioned repairs and/or maintenance of this vehicle;

d.)    Failure to warn the appropriate persons/entities of the dangerous, negligent
and careless propensities of the box truck although they knew or had reason
to know of the likelihood of such an incident;

e.)    Failure to control access to the box truck when this Defendant learned, or
should have learned that this box truck became a threat to the community at
large because of its dangerous, negligent and careless propensities;

f.)    Failing to warn the members of the public including Rhoda Malone of the
increased danger of injury occurring because of this box truck due to
dangerous, negligent and careless propensities of this box truck;

g.)    Failure to immediately warn the appropriate persons/entities that they were
not qualified and/or able to perform work, maintenance, repairs, and/or
upkeep upon this vehicle;

h.)    Failing to control and supervise its agent, servant and/or employees in such
a manner that negligent work would not be performed upon the vehicle;

i.)    In failing to investigate and evaluate the true nature of the box truck and
any other relevant background as it related to safe operation and/or repair
of the box truck;

j.)    In failing to prevent the box truck from being put back on the road;

k.)    Failure to inspect, maintain and/or repair this vehicle, i.e. the box truck,
which was involved in the collision of September 9, 2016, to make sure that

69

the required and/or relevant equipment needed to operate a motor vehicle safely were in proper working order;

l.)    Failing to develop policies and procedures concerning proper inspection, maintenance, repairs and/or work upon the box truck that relates to pulling the box truck from the road in order to adhere to laws protecting other drivers on the road;

m.)    In failing to properly research the credentials of its employees, agents and/or servants to determine whether they are qualified, licensed, and/or competent to perform the services which Defendants hired them to perform;

n.)    In hiring unqualified, unlicensed, and/or incompetent personnel to perform services which should only be performed by qualified professional drivers and persons;

o.)    In permitting agents, employees and/or servants to perform jobs which its agents, employees and/or servants are not certified, registered, licensed, competent and/or qualified to perform;

p.)    In failing to train, instruct and educate their workers in the proper procedure and technique in the operation/maintenance/repair/work of a box truck;

q.)    In failing to train, instruct and educate their agents, servants and/or employees in all the duties and procedures required when acting as a employee, agent and/or servant of this Defendant;

r.)    In failing to fulfill the contractual duties they had with other Defendants;

s.)    In failing to maintain trucks appropriately;

t.)    In failing to inspect old and/or failing parts of this box truck which may affect the safe operation of these truck;

u.)    In failing to enforce and/or prohibit fatigued workers from working on said box truck;

v.)    In failing to make sure their agents, servants and/or employees are attentive and not distracted when working, repairing and/or maintaining said box truck;

w.)    Failing to adopt policies and procedures to monitor agents, servants and/or employees;

x.)    Failing to make sure the driver was complying with all Federal, state, and local regulations and laws;

y.)    Failing to comply with 49 C.F.R. Section 390.11 which requires motor carriers to ensure that its drivers, agents, servants and/or employees comply with and/or observe the FMCSR;

z.)    Failing to comply with 49 C.F.R. Section 396.7 which prohibits unsafe vehicle operation;

aa.)    Failing to comply with 49 C.F.R. Section 396.13 which requires proper vehicle inspections by the driver;

bb.)    Failing to comply with 49 C.F.R. Section 396.3 which requires proper vehicle inspection, repair and maintenance;

cc.)    Failing to comply with 49 C.F.R. Section 392.7 which requires proper vehicle inspections and confirmation that vehicular systems are in good working order;

dd.)   Failing to comply with Federal, state and local laws and regulations;

ee.)   Failing to comply with 49 C.F.R. Section 390.13 which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

ff.)   Failing to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

gg.)   Failing to properly train its agents, servants and/or employees to properly anticipate, plan and/or prepare for emergencies or equipment failure;

hh.)   Failing to properly supervise;

ii.)   Failing to properly oversee and/or control their agents, servants and/or employees when this Defendant knew or should have known it was necessary and reasonable;

jj.)   Failing to properly screen and perform background checks on their agents, servants and/or employees;

kk.)   Failing to employ a competent and/or qualified safety management;

ll.)   Failing to adequately staff the safety department;

mm.)   Failing to properly maintain and care for the vehicles operated and used during interstate commerce;

nn.)   Failing to regularly inspect vehicles they were entrusted with;

oo.)   Using degraded and/or unsafe equipment in making repairs, performing maintenance, and/or fulfilling the obligations under the service contracts with the Defendants;

pp.)   Allowing a "lemon" box truck which is not road worthy to be allowed back on the road;

qq.)   Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box truck;

rr.)   Failing to intervene and/or prevent and/or stop safety violations and/or violations of Federal, state, or local rules, regulations and/or laws by any Defendants when this Defendant knew or should have known of the same;

ss.)   Failing to comply with industry best practices and/or safety standards;

tt.)   Violating federal and state law;

uu.)   Violating federal, state and local safety regulations, including the FMCSR;

vv.)   Failing to discharge its duty to meet minimum standards of safety for the public and persons like Rhoda Malone.

246.   Defendant Happy Wheels Body Shop demonstrated a conscious disregard of the known risks to the Plaintiff and to the rest of the public.

247.    Defendant Happy Wheels Body Shop permissively allowed and/or negligently entrusted the other Defendants the use of this box truck even though they knew or should have known that this box truck was not road worthy and that it should not be operated on the road.

248.    Defendant Happy Wheels Body Shop negligently and recklessly breached its aforementioned duties, and those breaches directly and proximately caused the damages described in causes of action above and below.

## XIX – NEGLIGENCE PER SE
### Plaintiffs v. Defendant Happy Wheels Body Shop

249.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

250.    Defendant Happy Wheels Body Shop violated, and encouraged all of the Defendants and/or defendant driver to violate, various laws and regulations as stated above and below in this Amended Complaint.

251.    As a direct and proximate result of the Defendant Happy Wheels Body Shop's negligent and reckless violations of these various laws and regulations, the Plaintiffs suffered the damages described in causes of action above and below.

## XX – LOSS OF CONSORTIUM
### Plaintiff Robert Malone v. All Defendants

252.    Plaintiffs incorporate all allegations and causes of action above into this cause of action by reference.

253.    As a direct and proximate result of Defendants' aforementioned negligence and recklessness, Plaintiff Robert Malone has lost Rhoda Malone's aid, companionship and services.

## DAMAGES

254.    The Plaintiff reiterates and realleges the facts and allegations set forth in the previous paragraphs.

255.    As a direct and proximate result of the above referenced negligence and/or recklessness of all of the Defendants, the Decedent, Rhoda Malone, from the time of recognition of the approaching box truck, through the time of her injuries and until the time of her death, suffered great physical and mental pain, shock, terror and agony.

256.    As a direct and proximate result of the above referenced negligence and/or recklessness of all of the Defendants the Plaintiff seeks to recover those damages available pursuant to West Virginia Code § 55-7-5 and 55-7-6, which include, but are not limited to, damages for:

(A)    Sorrow, mental anguish and solace including society, companionship and comfort, guidance, kindly offices and advice of the Decedent;

(B)    The loss of income from the Decedent;

(C)    The services, protection, care and assistance provided by the Decedent;

(D)    Expenses for the care, treatment and hospitalization of the Decedent including expenses of the Decedent instant to the injuries she suffered resulting in death;

(E)    Reasonable funeral expenses incurred by the Decedent's estate;

(F)    The mental anguish incurred by the Decedent's next of kin.

WHEREFORE, Plaintiffs Robert Malone, on behalf of the Estate of Rhoda Malone, prays for judgment against all of the Defendants, jointly and severally, for an amount to fairly and adequately compensate the Estate for its losses, injuries, punitive damages to deter such future conduct by the Defendants named herein, for attorneys' fees and for costs incurred and for such other further relief as this Court deems just and proper.

Respectfully submitted,

BY: _____
CHRISTOPHER J. WALLACE (7807)
The Wallace Firm, PLLC
3350 Pennsylvania Ave., Suite B
PO Box 2100
Weirton, WV  26062
Ph: (304)723-5005
Fx:  (888)502-8391
cwallace@wallace-firm.com
Counsel for Plaintiff

BY: _____
STEVEN M. BARTH
Counsel for Plaintiff

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**