| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date:  December 14, 2018<br>Hearing Time: 10:00 a.m. |
| ------------------------------------------------------- x<br>    :<br>In re    :<br>    :<br>SEARS HOLDINGS CORPORATION, *et al.*,    :<br>    :<br>Debtors.    :<br>    :<br>------------------------------------------------------- x | <br><br>Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>Jointly Administered |

**OBJECTION OF THE UNITED STATES TRUSTEE
TO MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING DEBTORS'
INCENTIVE AND RETENTION PROGRAMS FOR CERTAIN KEY EMPLOYEES
AND (II) GRANTING RELATED RELIEF**

TO:   **THE HONORABLE ROBERT D. DRAIN,
       UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the Debtors' Motion for Entry of an Order (I) Approving Debtor's Incentive and Retention Programs for Certain Key Employees and (II) Granting Related Relief (the "Bonus Motion").  ECF Doc. No. 766.  In support thereof, the United States Trustee respectfully states:[1]

**PRELIMINARY STATEMENT**

Against the backdrop of running going out of business sales, the shuttering hundreds of stores, and the presumed termination (either now and/or in the near future) of thousands of rank-and-file and hourly employees -- the Debtors are seeking authority to pay significant bonuses to their senior executive officers (the "Incentive Plan Participants") and to senior officers and managers of their various divisions (the "KERP Participants").  In total, the Debtors seek authority to set aside over $25 million (the "Potential Bonus Pool") to compensate the Incentive

---

[1] By agreement with the Debtors, the United States Trustee's objection deadline was extended to December 7, 2018.

Plan and KERP Participants -- the most highly compensated of the Debtors' employees -- many of whom received pay raises on the eve of the bankruptcy filing. These highly compensated employees comprise less than .5% of Debtors' total workforce of over 60,000 employees, many of whom – the true rank-and-file and hourly employees -- are literally working themselves out of jobs in connection with the Debtors' going out of business sales.

Over a third of the Potential Bonus Pool will be allocated to the Incentive Plan Participants, the Debtors' senior officers who comprise the Debtors' "Office of the Chief Executive." The Debtors acknowledge that all of the Incentive Plan Participants are "insiders" as that term is defined in the Bankruptcy Code. The other two thirds of the Potential Bonus Pool will be shared by approximately 325 of the Debtors' senior officers and managers of the Debtors' various divisions, many of whom hold officer titles and are highly compensated employees who arguably are "insiders" as that term is defined in the Bankruptcy Code.

The fact pattern before the Court is precisely why Congress was driven in 2005 to make sweeping changes to the Bankruptcy Code in order to provide for the restriction of bonus payments to a chapter 11 debtors' senior executives, officers and managers. Given that the Debtors here have failed to meet their burden of demonstrating that the proposed bonus plans overcome the restrictions set out by Congress in Section 503(c) of the Bankruptcy Code, the Debtors' Bonus Motion should be denied.

With respect to the purported Incentive Plan, in which the Debtors propose to make payments of up to $8.1 million to 18 senior executives, the Debtors have failed to demonstrate that it is primarily incentive based. A holistic review of the Incentive Plan reveals that instead, its purpose is to reward those senior executives who remain in the Debtors' employee through the sale of the Debtors' assets or a chapter 11 plan is approved with substantial bonuses. For

example, if an Acceleration Event occurs -- that is confirmation of a plan or the sale of substantially all of the Debtors' assets -- the Incentive Plan Participant will have earned the maximum potential bonus without the need to meet any of the alleged incentive-based financial targets.  In other words, the Incentive Plan Participants can earn the maximum potential bonus by doing nothing more than remaining employed by the Debtors until a sale of substantially all of the Debtors' assets is approved or a chapter 11 plan is confirmed.  Moreover, the purported financial incentive metrics or targets are somewhat illusory as they are subject to change in the future if the Debtors' circumstances change and an amended Updated DIP budget is filed with the Court.

In short, because a review of key elements of the purported Incentive Plan demonstrate that its overall purpose is to persuade senior executives to remain employed with the Debtors through approval of a plan or a sale of substantially all of the Debtors assets by promising each participant a hefty bonus if he or she remains in its employee, the Incentive Plan cannot be approved unless the Debtors first satisfy the requirements of section 503(c)(1) of the Bankruptcy Code.  The Debtors have not attempted to meet these requirements and it is not likely that they will be able to do so.

Even if the Debtors can show that the bonuses that apply to Incentive Plan Participants can be earned only if the company achieves certain targets or metrics can be achieved, the Bonus Motion does not explain how the services of each of the Incentive Plan Participants are necessary to reach such goals.  In other words, there is no nexus in the Incentive Plan between the Incentive Plan Participants and the targets.

As to the KERP Plan for the approximately 325 senior officers and managers of the Debtors' various divisions, the Debtors again fail to meet their burden of proof to demonstrate

3

that each one of these senior officers and managers is not an insider of the Debtors. In fact, many of the KERP Participants hold officer titles including titles such as chief financial officer, chief operations officer, vice president and director, and thus, fall into the definition of insider as that term is defined in the Bankruptcy Code. Section 101(31) of the Bankruptcy Code provides that the term insiders include officers. See 11 U.S.C. § 101(31)(B)(ii). The Debtors simply state that the officer participants in the KERP are not insiders because they neither dictate policy nor participate in corporate governance. Bonus Motion at ¶ 43. The Debtors, however, do not provide, among other things, specific information regarding the job descriptions of the KERP Participants, information regarding the number of employees the participants and their subordinates supervise, the details regarding the size of the divisions or departments they control, information regarding who they report to or whether they were Board appointed.[2] The Court, United States Trustee and other parties-in-interest have no facts with which to make a reasoned determination as to whether the characterization of non-insider status to each prospective officer and director is appropriate. Therefore, any proposed bonus to an officer must be analyzed within the framework of section 503(c)(1) – which the Debtors have failed to do.

Accordingly, the Debtors have failed to meet their evidentiary burden of proof to show that the proposed bonus payments comply with Section 503(c) of the Bankruptcy Code.

## BACKGROUND

### General Background

1.  The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on October 15, 2018 (the "Petition Date").

---

[2] The Debtors did provide the United States Trustee with a list of potential KERP participants and their job titles, which, as noted above, included officer titles such as vice president, chief financial officer, chief operating officer and director.

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF Doc. No. 118.

4. According to the Debtors, Sears currently operates 687 retail stores in forty-nine (49) states, Guam, Puerto Rico, and the U.S. Virgin Islands. See Declaration of Robert A. Riecker, ECF Doc. No. 3, ¶ 25.

5. On October 24, 2018, the United States Trustee formed an official committee of unsecured creditors.

6. On the Petition Date the Debtors filed a motion for approval of procedures to close 142 unprofitable stores to eliminate significant cash burn associated with those stores. See Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement at ¶¶ 1 and 5, ECF Doc. No. 23. Although the store closings will no doubt result in the loss of jobs for many of the Debtors' employees, the motion does not disclose the number of employees that will be terminated.

**The Bonus Motion**

7. On November 15, 2018, the Debtors filed the Bonus Motion.

*The Key Employee Incentive Plan (the "KEIP")*

8. Pursuant to the Bonus Motion the Debtors seek approval of a program to award 18 admitted "insiders", as that term is defined under the Bankruptcy Code, with bonuses ranging from $1.06 million per quarter at threshold performance, to $2.12 million per quarter at

maximum performance, on the achievement of targeted budgeted net cash flow for quarterly periods ending January 15, 2019 and April 15, 2019. Bonus Motion at ¶ 1.

9.  In the instance of an Acceleration Event, as described below, Incentive Plan Participants may earn in aggregate up to $8.50 million (or an additional $4.25 million). Id.

10. The threshold level for the award of bonuses to Incentive Plan Participants requires the Debtors to achieve 110% of budgeted net cash flow projected by the Debtor's debtor-in-possession financing budget for the quarters ending January 15, 2019 and April 15, 2019. Id. at ¶ 19.

11. Maximum bonuses are awarded at 120% of net cash flow. Id.

12. In the event the Debtors experience a material change in events, the Debtors may revise the budget without Court approval for purposes of KEIP performance measurements. Id.

13. Upon consummation of either a Chapter 11 plan or the sale of substantially all of the Debtors assets (an "Acceleration Event") each Incentive Plan Participant still employed by the Debtors shall earn a maximum KEIP award amount for the quarter in which the Acceleration Event occurred and for the remaining quarters through October 15, 2019. Id. at ¶ 21(f). However, the award is subject to claw-back if the Incentive Plan Participant does not remain employed with the Debtors for 30 days following any Acceleration Event. Id.

14. Twenty percent (20%) of each KEIP award will be subject to holdback and payable upon the earlier of (i) termination without cause, (ii) 12 months from the Petition Date, (iii) an Acceleration event, or (iv) entry of an order for orderly liquidation of the Debtors' estates. Id. at ¶ 21(k).

15. Finally, as disclosed in the Bonus Motion, six of the admitted insiders received raises prior commencement of these cases. Id. at ¶ 21 n. 18.

*The Key Employee Retention Plan (the "KERP")*

16.     Pursuant to the Bonus Motion the Debtors seek approval of a program to award 322 participants bonuses from a pool of $16.9 million payable on a quarterly basis over 12 months, provided that no participant shall be eligible to receive awards in excess of $150,000 in the aggregate.  Bonus Motion at ¶ 1.

17.     KERP Participants include officers of the Debtors, who along with other titles, hold the titles of Chief Financial Officer, Chief Operating Officer or "Vice President" and earn up to $425,000 in base salary.  Id. at ¶¶ 24 & 27 n.19.

18.     KERP Participants will receive cash awards equal to a percentage (ranging from 30-40%) of their annual salary if they stay employed by the Debtors for the next twelve months.  Id. at ¶ 27(b).

19.     Any remaining amounts from the KERP bonus pool may be awarded by the Restructuring Committee of the Board of Directors as a one-time cash award to KERP Participants or any employee in good standing upon the recommendation of the Chief Restructuring Officer.  Id. at ¶ 27(i).  In no event may this discretionary bonus exceed 100% of the recipient KERP award or $150,000.  Id.

## DISCUSSION

**A.     The Statutory Framework**

Section 503 governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving a debtor's bankruptcy estate."  11 U.S.C. § 503(b)(1)(A).  The two general overriding policies of Section 503 of the Bankruptcy Code are: (i) to preserve the value of the estate for the benefit of its creditors and (ii) to prevent the unjust enrichment of the insiders of the estate at the expense of its creditors.  In re Journal Register Co., 407 B.R. 520,

535 (Bankr. S.D.N.Y. 2009) (citing <u>Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.</u>, 789 F.2d 98. 101 (2d Cir. 1960)) (additional citations omitted).

Section 503(c)(1) of the Bankruptcy Code prohibits any transfer:

> made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business, absent a finding by the court based on evidence in the record that
>
> (A)  the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B)  the services provided by the person are essential to the survival of the business; and
>
> (C)  either –
>
>   (i)   the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>
>   (ii)  if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

11 U.S.C. § 503(c)(1).

A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of Section 503(c)(1) of the Bankruptcy Code to be subject to this subdivision's exception. 4 <u>Collier on Bankruptcy</u> ¶ 503.17 (15th ed. rev. 2007); <u>see also</u> <u>In re Dana Corp.</u>, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2007) ("<u>Dana II</u>") (summarizing the requirements under Section 503(c)(1) of the Bankruptcy Code).

Attempts to characterize what are essentially prohibited retention programs as "incentive" programs to bypass the requirements of Section 503(c)(1) of the Bankruptcy Code are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1) of the Bankruptcy Code. See In re Mesa Air Group, Inc., No. 10-10018, 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citing In re Dana Corp., 351 B.R. 96, 102 n.3 (Bankr. S.D.N.Y. 2006) ("Dana I") (stating that if a bonus proposal "walks like a duck (KERP), and quacks like a duck (KERP), it's a duck (KERP).").

Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives to insiders, including bonuses granted to other employees without factual and circumstantial justification. See Journal Register; 407 B.R. at 535; see also In re Pilgrim's Pride Corp., 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expenses during a chapter 11 case.") (citing In re Airway Indus., Inc., 354 B.R. 82, 87 n.12 (Bankr. W.D. Pa. 2006)) (additional citations omitted); In re Global Home Prods., LLC, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process.").
This section establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business. Dana I, 351 B.R. at 100; 11 U.S.C. § 503(c)(1).

9

The BAPCPA amendments make it abundantly clear that if a proposed transfer falls within Section 503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. Id. The effect of Section 503(c) of the Bankruptcy Code was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. Mesa Air Group, 2010 WL 3810899, at *2 (citing Global Home Prods., 369 B.R. at 785).

### B. The Debtors Have Failed to Satisfy Their Evidentiary Burden to Demonstrate the KEIP is an Incentive Plan

The law is clear that the burden is on the Debtors to either show that the proposed bonus plan complies with the requirements of section 503(c)(1) or that it is not a disguised retention plan. See Dana I, 351 B.R. at 100; Mesa Air Group, 2010 WL 3810899, at *2 (citing Global Home Prods., 369 B.R. at 785).

Retention plans usually are intended "to encourage certain crucial employees to remain with the company through a critical, transitional time period when the exact future of the company is unclear and when those employees would be most likely to search for other employment." Brooklyn Hosp., 341 B.R. 405, 413 (Bankr. E.D.N.Y. 2006). Although the Debtors style the KEIP as an incentive plan, they fail to satisfy the stringent criteria that it is not merely retentive. It is the substance of how and why the proposed payments are made, not the label put on the plan, that is determinative. Mesa Air Group, Inc., 2010 WL 3810899, at *4 (incentive plans are designed to motivate employees to achieve performance goals).

*The KEIP Participants Are Insiders*

As an initial matter, the Debtors acknowledge that the Incentive Plan Participants are "insiders" as that term is fined under the Code. Because these participants are insiders, in order

to show that the more permissive terms of Section 503(c)(3) apply, the Debtors must establish by a preponderance of the evidence that the KEIP is primarily incentivizing, rather than primarily retentive.  In re Residential Capital, LLC, 478 B.R. 154, 170 (Bankr. S.D.N.Y 2012)("Rescap"); see Hawker Beechcraft, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).  That is, in order for the proposed bonuses not to run afoul of Section 503(c)(1), the Debtors must demonstrate that the KEIP is not retention-based, but rather that present significant hurdles which are difficult to achieve.  Rescap, 478 B.R. at 169; Dana I, 358 B.R. at 583; Hawker Beechcraft, 479 B.R. at 313; In re Velo Holdings Inc., 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); Global Home, 369 B.R. at 784; see also Dana II, 358 B.R. at 583) (benchmarks for the debtors' long-term KEIP "are difficult targets to reach and are clearly not 'lay-ups'").

*The Debtors Fail to Demonstrate that the Metrics are Difficult*

The Debtors do not demonstrate that the bonuses associated with the KEIP present difficult targets.   In the instance of an Acceleration Event Incentive Plan Participants will earn $4.25 million in the aggregate, which amount represents no less than one-half of the entire bonus pool, if they are employed with the Debtors through either the consummation of a Chapter 11 plan or the sale of substantially all of the Debtors' assets.  The triggering of the KEIP awards by an Acceleration Event is not tied to any sale price threshold or percentage distribution to creditors under a Chapter 11 plan of reorganization or liquidation.  This award permits participants to earn bonuses as if the Debtors reached 120% budgeted net cash flow, regardless of whether the Debtors reach, or could reach, such cash flow levels, conditioned solely on whether the participant is still employed by the Debtors.   Courts in this district have made it clear that triggering bonus awards solely on the basis of a sale transaction, confirming a plan of reorganization or existing bankruptcy are not sufficient to shift consideration of a bonus plan

11

providing payments to insiders from section 503(c)(1) to section 503(c)(3).  Rescap, 478 B.R. at 171; see also  Velo Holdings, 472 B.R. 472 B.R. at 205–06 (approving KEIP measured by section 363 sales proceeds and financial hurdles); In re Borders Group, Inc., 453 B.R. 459, 465–66 (Bankr. S.D.N.Y. 2011)(approving KEIP that required successful reorganization or going concern sale and meeting substantial cost reduction targets.).  The award of Acceleration Event bonuses for merely being employed by the Debtors is clearly primarily retentive.

Another indication that the Bonus Motion is primarily retentive, insofar as it applies to the Incentive Plan Participants, is to be found in the clawback provision of the KEIP.  The Debtors assure the Court and parties-in-interest that "any paid KEIP Award will be subject to claw-back by the Debtors," but only under circumstances relating to the participants' continued employment, not their performance or whether their efforts contributed to the achievement of the KEIP metrics.  See Bonus Motion, ¶ 21(i).  Specifically, a KEIP Award will be subject to clawback only where "a KEIP Participant terminates employment voluntarily" within a certain time period.  Id.  The Bonus Motion identifies no circumstances under which a KEIP Award could be denied to or clawed back from an Incentive Plan Participants whose performance is not tied to the achievement of the relevant metric.  This provision of the KEIP shows that the link between the participant and the bonus involves the duration of the participants' employment, not the participants' role in Debtors' attainment of the metric.

Similarly, as noted above, 20% of each KEIP award will be subject to holdback and payable upon the earlier of (i) termination without cause, (ii) 12 months from the Petition Date, (iii) an Acceleration event, or (iv) entry of an order for orderly liquidation of the Debtors' estates.  Id. at ¶ 21(k).  The holdback demonstrates that even if the Debtors reach 110% of net

cash flow, an Incentive Plan Participant still needs to remain with the Debtors to receive their award, a clear indication of the retentive nature of the KEIP.

Further, in connection with bonuses to be paid in the event the Debtors reach 110% of net cash flow, the nexus between the proposed bonuses and each insider is not specifically detailed. Accordingly, it is impossible to determine what, if anything, an Incentive Plan Participants must achieve in order to obtain a bonus. See Hawker Beechcraft, 479 B.R. at 313 (finding that the debtors failed to sustain their burden of proof when they did not identify the roles of each plan participant or why, individually or as part of a team, they will contribute services that are necessary to achieve the targets); see also Rescap., 478 B. R. at 173 (the debtor must connect the bonuses to specific metrics that are directly tied to challenging financial and operational goals for the business and that are tailored to the facts and circumstances of the case). Specifically, nowhere does the Bonus Motion connect the Incentive Plan Participants with the achievement of the line items set forth in the DIP Budget.

Additionally, the Bonus Motion provides that, once the Court grants the Motion, the KEIP is subject to modification, apparently without input from the Court. Bonus Motion, ¶ 19. The modification would result from "a material change in circumstance" that would cause the Debtors to "revise the Updated DIP Budget for purposes of KEIP performance measurement. . . ." Id. This KEIP provision, although it assures the Court and parties-in-interest that "the Debtors will work with the UCC's advisors," id., also assures that the Court and other parties-in-interest will play no role in determining whether the KEIP modification resulting from "the Updated DIP Budget" is appropriate under the relevant legal standard.

13

*The Debtors Do Not Adequately Address Section 503(c)(1)(C)*

The Debtors fail to establish that, among other things, any of the Incentive Plan Participants have a <u>bona fide</u> job offer with other companies at the same or greater rates or that either (a) the new proposed payments are less than ten times the mean of similar payments made to non-management employees during the calendar year, or (b) the proposed payments are less than 25 percent of the amount of any similar payments made to the Incentive Plan Participants in the prior year. 11 U.S.C. § 503(c)(1). Accordingly, the Court should conclude that the Debtors have failed to satisfy their burden under section 503(c)(1) and the "incentive" awards should not be approved at this time.

**C.    The Debtors Have Failed to Establish that Section 503(c) Is Not Applicable to Employees Covered by the KERP**

The KERP Participants include admitted officers of the Debtors. Bonus Motion at ¶ 24. Pursuant to the Section 101(31) of the Bankruptcy Code, if a debtor is a corporation, the term "insider" includes an officer of the debtor. 11 U.S.C. § 101(31)(B)(ii). A vice president as an officer is presumptively an insider. <u>In re Foothills Texas, Inc.</u>, 408 B.R. 573, 579 (Bankr. D. Del. 2009). Moreover, regardless of title, a person with broad responsibilities over significant aspects of a debtor's business is considered an insider, even if he or she is not a member of senior management. <u>Id</u>. at 584 (finding vice presidents who were not members of senior management, but who had broad responsibilities over significant aspects of debtor's business, to be insiders); <u>see also</u> <u>Borders Group</u>, 453 B.R. at 469 (Bankr. S.D.N.Y. 2011) ("[i]nsider status can also be determined on a case by-case basis based on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs"); <u>Office of the United States Trustee v. Fieldstone Mortgage Co.</u>, No. CCB-08-755, 2008 WL 4826291, at *5 (D. Md.

Nov. 5, 2008) ("[C]ontrol . . . is an independent additional ground for finding a person an insider, not a feature that officers or directors are required to possess in order to be deemed insiders"); In re Krehl, 86 F.3d 737, 741 (7th Cir. 1996) (definition of insider is illustrative rather than exhaustive); compare In re Kunz, 489 F.3d 1072 (10th Cir. 2007) (it is not simply the title "director" or "officer" that renders an individual an insider; rather it is the set of legal rights that a typical corporate director or officer holds).  Accordingly, unless the Debtors disclose the officers who are KERP Participants, together with a statement as to their job descriptions, whether they were appointed by the Board, and to whom they report, the officers participating in the KERP are presumed to be insiders.  Foothills Texas, Inc., 408 B.R. at 584.  Insiders are subject to the requirements of Section 503(c)(1) and the Debtors have neither met their burden of proof under that subsection nor have they rebutted the presumption of insider status absent a more fulsome discussion of the roles and responsibilities of each KERP Participant.  Accordingly, the KERP should not be approved.

      **D.**    **The KERP Must Be Rejected Because KERP Participants May Receive From the KERP Bonus Pool Payments Not Tied to Any Metric That Would Allow the Court to Determine Whether Such Payments Are Appropriate**

In order for the bonus plan to pass muster under Section 503(c)(3) of the Bankruptcy Code, the movant must show that it is warranted by "the facts and circumstances of the case."  11 U.S.C. § 503(c)(3); In re Dana Corp., 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006)("Dana II").  To meet their burden under Section 503(c)(3), the Debtors must show that there is "sound business judgment" for the compensation plan in question.  See id. at 576-77.

Here, the KERP Participants may receive not only "cash awards equal to a percentage (ranging from 30-40%) of their annual salary if they stay employed by the Debtors for the next twelve months," Bonus Motion, ¶ 27(b), but they may also share in "any remaining amounts

18-23538-rdd    Doc 1082    Filed 12/07/18    Entered 12/07/18 09:59:37    Main Document
Pg 16 of 18

from the KERP bonus pool." Id. at ¶ 27(i). This additional one-time cash award would be based upon the recommendation of the Chief Restructuring Officer, and subject only to the discretion of the Restructuring Committee of the Board of Directors. See id. This discretionary bonus would not exceed 100% of the recipient KERP award or $150,000. Id.

The Debtors offer no standard or metric that would enable the Court to determine whether the payment of this extra "cash award" is reasonable under the "business judgment" or any other standard. Indeed, the additional cash award would be subject to the sole discretion of the Restructuring Committee of the Board of Directors, who would act upon the recommendation of the Chief Restructuring Officer. Id. Given that there is no way to determine the basis for bestowing such cash awards on the KERP Participants, the Bonus Motion offers the Court no way to conclude that the KERP passes muster under the "business judgment" or "facts and circumstances of the case" test that applies to such motions. Accordingly, the Court should decline to approve the KERP.

   **E.**  **Even If the Bonus Plan Were Governed by Sections 503(c)(3) and 363, the Bonus Plan Does Not Satisfy These Statutory Provisions**

Finally, if the Court finds that section 503(c)(1) does not apply, the Court may also consider whether the payments are permissible under section 503(c)(3). Dana II, 358 B.R. at 576. Section 503(c)(3) authorizes judicial discretion with respect to bonus plans motivated primarily by reasons other than retention. Id. Should the Court find that Section 503(c)(1) does not apply, to grant the Motion the Court must find that it passes the test of Section 503(c)(3) – that it is necessary to preserve the value of the Debtor's estate, and is "justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3); In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) (administrative expenses may not be allowed unless they are actual and

necessary to preserve the estate); see also In re Regensteiner Printing Co., 122 B.R. 323 (N.D. Ill. 1990) (reversing approval of severance agreements for key employees, because debtors presented no evidence that severance payments were necessary to preserve bankruptcy estate).[3]

The Debtors have not established that the bonus plans are justified by the facts and circumstances of this case. Even under the less rigorous standards of Sections 503(c)(3) and 363, the benchmarks for the payment of bonuses must be "difficult targets to reach." Dana II, 358 B.R. at 583. In the instant matter, the Acceleration Event bonus will be paid if the participants are merely employed by the Debtor upon an Acceleration Event. The Debtors fail to explain why this is a difficult metric to meet. Additionally, the Debtors do not tie the services of particular individuals to meeting metric thresholds. There is no specific metric or target set for any participant that must be met or accomplish for a bonus award. Without individual targets it will be impossible to determine if the Incentive Plan Participants will have earned the reward. Therefore, there is little relationship between individual efforts and the bonus awards. The Debtors simply have not provided sufficient information for the Court to approve these awards. Moreover, while seeking to pay certain employees bonuses, the Debtors moved on the Petition Date to close 142 stores, no doubt causing the loss of a significant number of jobs. The KEIP is simply not justified by the facts and circumstances of the cases.

Similarly, the Debtors have not established that the KERP is justified by the facts and circumstances of these cases. As discussed above, the KERP Participants include officers. The

---

[3] Although some courts in this district have determined that the standard under Section 503(c)(3) is not different from the business judgment test under Section 363(b), see In re Residential Capital, LLC, 491 B.R. 73, 84 (Bankr. S.D.N.Y. 2013) (additional citations omitted), these courts and others continue to apply the factors listed by Judge Lifland in Dana II, when determining if the structure of a compensation proposal and the process for its development meet with the standard under Section 503(c)(3).

Motion does not provide any information regarding their job descriptions, or for that matter, the job descriptions of any of the KERP Participants. Without this information, as well as more detailed disclosure regarding the amounts to be awarded, the Debtors have failed to show why these individuals are critical to the Debtors' business. Finally, as previously stated, while seeking to pay these bonuses, the Debtors are terminating employees at the 142 stores they moved to close on the Petition Date. The KERP is not justified in these cases.

      WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the approval of the Bonus Motion and grant such other relief as the Court deems fair and just.

Dated:  New York, New York
           December 7, 2018

                                          Respectfully submitted,

                                          WILLIAM K. HARRINGTON
                                          UNITED STATES TRUSTEE, Region 2

                                          By: <u>*/s/ Paul K. Schwartzberg*</u>
                                          Paul K. Schwartzberg
                                          Richard C. Morrissey
                                          Trial Attorneys
                                          201 Varick Street, Room 1006
                                          New York, New York 10014
                                          Tel. (212) 510-0500