UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Sears Holdings Corporation, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-BK-23538 (RDD)<br><br>Jointly Administered |

**MOTION BY XL SPECIALTY INSURANCE COMPANY FOR AN ORDER (1) FINDING THE AUTOMATIC STAY INAPPLICABLE TO THE ADVANCEMENT OF DEFENSE COSTS UNDER A SIDE A D&O INSURANCE POLICY, OR (2) ALTERNATIVELY, LIFTING THE STAY UNDER 11 U.S.C. §362(d) TO ALLOW ADVANCEMENT OF SUCH DEFENSE COSTS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn &Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc.(7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co.(6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

XL Specialty Insurance Company ("XL" or the "Movant") by and through the undersigned counsel, move pursuant to 11 U.S.C. §362(d) and Fed.R.Bankr.P. 4001 for an Order:[2] (1) finding the automatic stay inapplicable to the advancement of defense fees incurred and to be incurred by certain current and/or former directors and officers of Sears Canada, Inc. (the "Covered D&Os") under Cornerstone A-Side Management Liability Policy No. ELU139030-15 (the "Side A Policy")[3], or (2) alternatively, granting relief from the automatic stay to allow the advancement of such defense fees to the Covered D&Os.

## PRELIMINARY STATEMENT

1.  Certain Covered D&Os of Sears Canada, Inc. ("Sears Canada") have incurred and will continue to incur defense costs in connection with matters arising out of the insolvency of Sears Canada pursuant to the Companies' Creditors Arrangement Act (the "CCAA Proceedings"). The Covered D&Os have made claims under the Side A Policy in connection with the CCAA Proceedings.

2.  The Side A Policy, which provides coverage for claims made during the policy period May 15, 2015 to May 15, 2016, affords coverage only to the Covered D&Os in their capacity as current or former officers and directors of Sears Holdings and its subsidiaries. There is no entity coverage, whether for indemnification claims or otherwise, under the Side A Policy. Accordingly, the proceeds of the Side A Policy are not property of the Debtors' bankruptcy estate, and advancement of defense costs to the Covered D&Os does not implicate the automatic stay. Nevertheless, in an abundance of caution and in the event that this Court determines that the automatic stay is applicable to payment of the Covered D&Os' claims under the Side A

---

[2]  A copy of the proposed Order is annexed as Exhibit "A" hereto.
[3]  A copy of the Side A Policy is annexed as Exhibit "B" hereto.

Policy, XL requests that this Court lift the stay to permit it to advance defense costs to the insured officers and directors in accordance with the terms of the Side A Policy.

## JURISDICTION

3. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §157. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G). Venue is proper in this Court pursuant to 28 U.S.C. §1408.

## BACKGROUND

4. On October 15, 2018 (the "Petition Date"), Sears Holdings Corporation ("Sears Holdings") and its debtor affiliates (collectively, the "Debtors"), commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York under Case No. 18-23538 (RDD).

5. Upon the filing of the chapter 11 cases, the automatic stay set forth in Section 362(a) of the Bankruptcy Code (the "Automatic Stay") was triggered. Any new or further actions against the Debtors are automatically stayed pursuant to section 362(a) of the Bankruptcy Code, which provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of, among other things "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case" and "any act to obtain possession of property of the estate or of

property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3).

6. As of the date of the Petition Date, certain Covered D&Os of Sears Canada have incurred and will continue to incur defense costs in connection with matters arising out of the CCAA Proceedings.

7. Sears Holdings has acknowledged that certain former directors and/or officers of Sears Canada were entitled to at least some indemnification from Sears Holdings. Given that Sears Holdings and certain of its affiliates have initiated chapter 11 cases, Sears Holdings is unable to provide indemnification to the Covered D&Os as of the Petition Date.

8. The Debtors purchased the Side A Policy, which provides coverage for the May 15, 2015 to May 15, 2016 policy period for Wrongful Acts allegedly committed by the Covered D&Os in their capacity as current or former directors or officers of Sears Holdings and/or its subsidiaries.

9. Section IV.(P) of the Side A Policy provides:

> In the event that a liquidation or reorganization proceeding is commenced by or against the Company pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the Insured Persons and the Company hereby (1) waive and release any automatic stay or injunction which may apply in such proceeding in connection with this Policy or its proceeds under such Bankruptcy Code or law; and (2) agree not to oppose or object to any efforts by the Insurer or any Insured Person or the Company to obtain relief from any such stay or injunction.

## REQUESTED RELIEF

10. XL believes that the Automatic Stay does not apply to the advancement of defense costs to the Covered D&Os under the Side A Policy. Nevertheless, XL seeks the entry of an order granting relief from the automatic stay provided for in Section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by XL of

defense costs that are, or will become, owing to the Covered D&Os of Sears Canada under the Side A Policy.

### ARGUMENT

**A. The Proceeds of the Side A Policy Are Not Property of Debtors' Estate**

11.     While insurance policies may generally be considered property of the estate, where a policy provides for payment only to a third party, such as payments to officers and directors, or where the debtor has a right of coverage or indemnification, but such right is speculative, courts have held that the proceeds of such a policy are not property of the bankruptcy estate. *See, e.g., In re Adelphia Communications Corp.*, 298 B.R. 49 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re First Cent. Fin. Corp.*, 238 B.R. 9 (Bankr. E.D.N.Y. 1999) (proceeds of director and officer policies are not assets of the estate and belong to directors and officers as beneficiaries); *see also In re World Health Alternatives, Inc.*, 369 B.R. 805 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *In re Allied Digital Techs., Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re Pintlar Corp.*, 124 F.3d 1310 (9th Cir. 1997) (directors' and officers' liability coverage was not property of the estate).

12. In this case, the Side A Policy only provides coverage to certain directors and officers. The Side A coverage does not provide the Debtors with coverage for indemnification claims made by officers and directors or other entity coverage and does not protect any asset of the estate. The proceeds of the Side A Policy are therefore not property of the Debtors' estate.

**B. Cause Exists to Grant the Relief Requested**

13. Even if the proceeds of the Policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the Automatic Stay to allow the payment of defense costs under the Side A Policy. Section 362(d) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . (1) for cause . . . ."

14. The Court of Appeals for the Second Circuit has adopted a list of 12 factors to assist the Court in considering whether to exercise its discretion to grant stay relief to allow litigation to proceed in another forum. *See In re G.S. Distribution, Inc.*, 331 B.R. 552, 566-67 (Bankr. S.D.N.Y. Oct. 2005) (noting 12 factors and granting stay relief to allow pending litigation involving trademark infringement to proceed in another tribunal to liquidate claims). These factors are: (1) whether stay relief would result in partial or complete resolution of issues; (2) lack of any connection or interference with the bankruptcy case; (3) whether other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear cause of action; (5) whether debtor's insurer has assumed full responsibility for defending it; (6) whether the action involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether judgment of claim arising from the other action is subject to equitable subordination; (9) whether movant's success

in the other proceeding in a judicial lien avoidable on the merits; (10) interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Id.* citing *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990). "Not every one of these factors will be relevant in every case." *Id.* citing *In re Bogdanovich*, 292 F.3d 104 (2d Cir. 2002) and *In re Mazzeo*, 167 F.3d 139 (2d Cir. 1999). Similarly, a Court need not accord equal weight to each element. *In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y. 1994).

15. Cause exists to lift the stay (to the extent that the stay is even applicable). Courts in this jurisdiction (and others) recognize the property rights held by officers and directors under D&O insurance policies. Where, as here, no property interest of the debtor is implicated or the officers and directors are afforded a priority right to payment under an insurance policy, courts have not hesitated to lift the stay to permit insurers to advance defenses costs to the insured officers and directors. *See In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 (S.D.N.Y. 2012) (cause exists for granting relief from the automatic stay to permit advancement of defense costs) (collecting cases); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (the individual insureds have a right to use the policy's proceeds to cover their defense costs); *In re Adelphia Communications Corp.*, 298 B.R. 49 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *see also In re Laminate Kingdom, LLC.*, No. 07-10279, 2008 WL 1766637, at * 4 (S.D. Fla. March 13, 2008). Allowing XL to begin processing payment under the Side A Policy will, in fact, benefit the Debtors' estates. Given the complexity of the CCAA Proceedings, it is foreseeable that a finding of wrongdoing or liability against any

of the current and/or former officers of Sears Canada may be used, or attempted to be used, to judicially prejudice or prosecute claims against the Debtors.

16. Granting the requested relief will also alleviate the Covered D&Os of Sears Canada's concerns that they will personally be liable for their own defense costs.

17. In addition, the Covered D&Os of Sears Canada have and will continue to incur significant defense costs, which, if unsatisfied, may potentially be asserted as indemnification claims against the Debtors' estates. To the extent the Covered D&Os suffer adverse judgments because they are unable to fund their defense due to the enforcement of the Automatic Stay, the Covered D&Os of Sears Canada may seek to assert indemnification claims against the estates for such amounts. Consequently, granting the requested relief will reduce or eliminate the claims that could be asserted against the estates.

18. Accordingly, Movant respectfully submits that there are no legal impediments to the direct payment or advancement by XL under the Side A Policy to the Covered D&Os of Sears Canada for their costs of defense.

## CONCLUSION

For all the foregoing reasons, XL respectfully requests that the Court grant XL's motion for relief pursuant to 11 U.S.C. §362(d).

> SKARZYNSKI BLACK LLC
>
> By:  s/ Alexis J. Rogoski
>       Alexi J. Rogoski
>
> One Battery Park Plaza, Fl. 32
> New York, New York 10004
> Telephone: (212) 820-7700
> Facsimile: (212) 820-7740
> Email: arogoski@skarzynski.com
>
> *Attorneys for XL Specialty Insurance Company*

4813-6268-7616, v. 2