# EXHIBIT 2



XL Professional
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone    860-246-1863
Fax      860-246-1899

## CORNERSTONE A-SIDE MANAGEMENT LIABILITY BINDER

| | |
|---|---|
| Date: | May 13, 2015 |
| Name: | Chris Rafferty |
| Company: | Aon |
| From: | Greg Lenihan    Direct: 860-948-1848    gregory.lenihan@xlcatlin.com |

### INSURED INFORMATION

| | |
|---|---|
| Name: | Sears Holdings Corporation |
| Address: | 3333 Beverly Road |
| | Hoffman Estates, IL  60179 |
| Policy Number: | **ELU139030-15** |
| Carrier: | XL Specialty Insurance Company – *DEREGULATED* |

| POLICY FORM | | POLICY PERIOD |
|---|---|---|
| CS 71 00 09 06 | Cornerstone A-Side Management Liability | May 15, 2015 to May 15, 2016 |
| **LIMIT of LIABILITY** | | **OPTIONAL EXTENSION PERIOD** |
| $15,000,000 | Aggregate each Policy Period (including defense expenses) | One year at 200% of the annual premium<br>Two years at 250% of the annual premium<br>Three years at 350% of the annual premium |
| **INSURANCE PROGRAM** | | |
| N/A | | |

PREMIUM:  $520,000.00

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.**

Commission:  10.00%

Premium Due Date:  June 14, 2015

### ENDORSEMENTS:

- Terrorism Insurance Disclosure
- In Witness Endorsement
- OFAC Notice
- Privacy Notice
- Fraud Notice
- IL Notice
- Preamble Correction Endorsement (XL 82 01 07 07)
- Terrorism Premium Endorsement (XL 80 24 03 03)
- IL Amendatory Endorsement (CS 72 04 05 06)
- Amend Mergers and Acquisitions Endorsement (CL 80 34 12 02) – 35%
- Additional Company Endorsement (CL 80 99 03 05)
    - Sears Foundation – March 24, 2005
    - Sears Roebuck & Company – March 24, 2005
- Domestic Partner Endorsement (CL 80 84 11 04)
- Whistleblower Endorsement (CS 83 01 11 06)
- Extradition Costs Endorsement (CL 80 189 06 07)
- Inconsistency Endorsement (XL 80 38 02 05)

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM. THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.



XL Professional
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone    860-246-1863
Fax        860-246-1899

- Pension and Welfare Benefit Plan Fiduciary Liability Endorsement (Manuscript 8130 04 08) – *Amended to include settlor allegations (Manuscript TBD)*
- Amend Definition of Application (XL 80 59 03 08) – 12 Months
- Rating Endorsement (XL 80 60 09 08) – A-
- Independent Outside Director Endorsement (Manuscript 9458 05 09)
- Amend Introductions to Exclusions Endorsement (Manuscript 4088 01 06)
- Amend Exclusion (B)(2) Endorsement (Manuscript 13794 05 12)
- Outside Directorship Endorsement (CL 80 68 06 04) – **As Per Expiring #16 and #43**
- Email Notice Endorsement (CS 80 95 09 09)
- Amend Condition (I)(2) Endorsement  (CL 80 224 04 08)
- Amend Claim Endorsement – Subpoenas (CL 80 176 03 07)
- Amend Definition of Claim Endorsement –  SOL(CS 80 111 02 10)
- Add Insured Person Endorsement (CL 80 27 10 02) – As Per Expiring
- Amend Exclusion (A)(2) Endorsement (Manuscript 15561 05 13)
- Amend Exclusion (B)(1) Endorsement (CL 83 96 01 08)
- Amend Section IV(E)(2) Endorsement (CS 80 37 10 07)
- Amend Insurer's Right's of Subrogation (CS 80 119 06 10)
- Injunctive Relief Endorsement (CS 80 77 09 08)
- Amend Definition of Change in Control Endorsement (CL 80 63 04 04)
- Amend Definition of Loss Endorsement (Manuscript 16693 05 14)
- Amend Condition (B)(1) Endorsement (Manuscript 13806 05 12)
- Amend Representations Clause Endorsement (CL 80 208 11 07)
- Amend Notice Endorsement (CL 80 225 04 08)
- Amend Definition of Claim Endorsement (Manuscript 15562 05 13)
- Former Insured Person (CL 83 75 01 07) – 2 years
- Creditors Committee Endorsement (CS 83 02 12 06)
- Amend Notice of Claim Endorsement (CS 80 195 09 13) – RM/GC
- Amend Definition of Claim – Wells Notice (CS 80 81 01 09)
- Amend Definition of Claim – Subpoena (CS 80 55 02 08)
- Amend Definition of Claim – Mediation (Manuscript 16691 05 14)
- Amend Exclusion (A)(1) Endorsement – Debtor in Possession (Manuscript 16692 05 14)
- Amend Condition (F)(1) Endorsement (Manuscript 16690 05 14)

THE BINDER IS SUBJECT TO RECEIPT, REVIEW, AND ACCEPTANCE OF THE FOLLOWING ITEMS.
- None

*Please note that the XL Global Services, Inc., an affiliate of your XL insurer, has entered into and currently has in place a consulting agreement with an affiliate of your broker, Aon Risk Services Companies, Inc. If you have any questions regarding that consulting agreement, please direct those questions to your broker.*

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.



**XL Professional**
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone    860-246-1863
Fax        860-246-1899

# INVOICE SUMMARY

**Sears Holdings Corporation**
**ELU139030-15**

| PREMIUM AMOUNT | COMMISSION % | COMMISSION AMOUNT | * TAXES/ SURCHARGES | NET PREMIUM DUE | PREMIUM DUE DATE |
|---|---|---|---|---|---|
| $520,000.00 | 10.00% | $52,000.00 | $0.00 | $468,000.00 | June 14, 2015 |

* Taxes/Surcharges if applicable.

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE
COVERAGE FOR NON-PAYMENT OF PREMIUM. THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE
SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.



# XL Catlin – Broker Communication

With the combination of XL and Catlin recently closing on 5/1/15, we are now moving into the exciting phase of joining the two companies to trade as XL Catlin. Our underwriting, operations, and accounting teams are working to integrate XL's and Catlin's business processes to deliver a new market facing approach.  As you can appreciate, this will take some time to implement. So we ask for your patience as we work through this business combination over the coming months.

In regards to your payment of premium or related balances for either XL or Catlin policies, please review and be guided by the following summary of our planned approach.

1. <u>Premium Invoices & Statements</u>

We will continue to provide invoices or statements in the formats used previously. These documents will be updated with the XL Catlin logo and the legal name & address of the XL Catlin entity you've placed business with. In the meantime please continue to follow the locally agreed procedures until we contact you with any updates to this approach. If you are sending bordereaux or account statements to XL Catlin, please continue to do so using current addresses or e-mail contacts.

2. <u>Bank Accounts & Payment Remittance</u>

Initially, our bank accounts, funds clearance and cash accounting processes will remain the same. Therefore, XL policy premium should continue to be remitted to XL bank accounts and Catlin's to Catlin bank accounts.

3. <u>Premium Payment Terms</u>

Your payment terms will continue to be governed by our existing agreements or specific terms noted in risk specific documents or contracts.


If you have any questions regarding, the payment of premium, invoices & statements or our collection processes, please contact:

<u>For former XL North America</u>
Lisa Soto                Tel:    1-610-968-2722        E-mail: lisa.soto@xlcatlin.com

<u>For former Catlin US</u>
Janet Sequeira          Tel:    1-480-755-6846        E-Mail: janet.sequeira@xlcatlin.com

<u>For former Catlin Canada</u>
Churchill Louie         Tel:    1-416-644-3327        E-Mail: churchill.louie@xlcatlin.com





**XL Professional**
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone  860-246-1863
Fax    860-246-1899

June 5, 2015

Chris Rafferty
Aon
200 East Randolph Street
12th Floor
Chicago, IL 60601

Re:  Sears Holdings Corporation
     **Cornerstone A-Side Management Liability Policy**

Dear Chris,

Enclosed, please find the policy for Sears Holdings Corporation.  Thank you for choosing XL Insurance. Please call if you have any questions or concerns.

Sincerely,

Gregory Lenihan

sl

| | |
|---|---|
| **Policy Number:**    ELU139030-15 | **XL Specialty Insurance Company** |
| **Renewal of Number:**    ELU134039-14 | Members of the XL America Companies |

| | |
|---|---|
| **CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY DECLARATIONS** | Executive Offices<br>70 Seaview Avenue<br>Stamford, CT 06902-6040<br>Telephone 877-953-2636 |

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1.**    **Name and Mailing Address of Parent Corporation:**

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL  60179

**Item 2.**    **Policy Period:**    **From:**    May 15, 2015    **To:**    May 15, 2016

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

**Item 3.**    **Limit of Liability:**

$15,000,000  Aggregate each **Policy Period** (including **Defense Expenses**)

**Item 4.**    **Optional Extension Period and Premium:**

| | | | |
|---|---|---|---|
| Length of Optional Extension Period: | One Year | Two Years | Three Years |
| Optional Extension Premium: | $1,040,000.00 | $1,300,000.00 | $1,820,000.00 |

**Item 5.**    **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

**Item 6.**    **Premium:**

| | |
|---|---|
| Premium: | $520,000.00 |
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $520,000.00 |

**Item 7.**    **Policy Forms and Endorsements Attached at Issuance:**

CS 71 00 09 06   XL 82 01 07 07   XL 80 24 03 03   CS 72 04 05 06   CL 80 34 12 02   CL 80 99 03 05
CL 80 84 11 04   CS 83 01 11 06   CL 80 189 06 07   XL 80 38 02 05   Manuscript 17775 06 15
XL 80 59 03 08   XL 80 60 09 08   Manuscript 9458 05 09   Manuscript 4088 01 06   Manuscript 13794 05 12
CL 80 68 06 04   CS 80 95 09 09   CL 80 224 04 08   CL 80 176 03 07   CS 80 111 02 10   CL 80 27 10 02
Manuscript 15561 05 13   CL 83 96 01 08   CS 80 37 10 07   CS 80 119 06 10   CS 80 77 09 08
CL 80 63 04 04   Manuscript 16693 05 14   Manuscript 13806 05 12   CL 80 208 11 07   CL 80 225 04 08
Manuscript 15562 05 13   CL 83 75 01 07   CS 83 02 12 06   CS 80 195 09 13   CS 80 81 01 09
CS 80 55 02 08   Manuscript 16691 05 14   Manuscript 16692 05 14   Manuscript 16690 05 14

**CORNERSTONE A-SIDE MANAGEMENT LIABILITY POLICY**

Countersigned: _____    By: _____
                        Date                              Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

John R. Glancy
President

Kenneth P. Meagher
Secretary

**XL Specialty Insurance Company**

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT: REGULATORY
EXTON, PA 19341-1120
PHONE: 800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

Bernard R. Horovitz
President

Toni Ann Perkins
Secretary

LAD 400 0314 XLS

© 2014 X.L. America, Inc. All Rights Reserved. May not be copied without permission.

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.   Under your existing coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by federal law.  Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is:
$ waived.  Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **ELU139030-15**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons*. This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited. These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran*. This list can be found on the U.S. Department of the Treasury's web site – http://www.treasury.gov/resource-center/sanctions/Programs/Pages/iran.aspx, see List of CISADA and NDAA Prohibitions or Conditions

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 0914

©2014 X.L. America, Inc. All rights reserved. May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS

## PRIVACY POLICY

The XL America, Inc. insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;
- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

## NOTICE TO POLICYHOLDERS

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

### Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

### Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

### Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

### Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

### Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;

PN CW 02 0505                    Page 2 of 3

## NOTICE TO POLICYHOLDERS

- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

**Violation of the Privacy Policy**

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

# NOTICE TO POLICYHOLDERS

### FRAUD NOTICE

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

PN CW 01 0613

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| Rhode Island | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Tennessee | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| Utah | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**ILLINOIS**

This notice is to advise you if you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL:

1-800-622-7311
XL INSURANCE
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040

You may also contact the Public Service Division or its successor at the Department of Insurance at the following address:

Illinois Department of Insurance
Consumer Division
320 W. Washington Street
Springfield, IL 62767

XL 82 01 07 07

**Endorsement No.: 1**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

**Endorsement No.: 2**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6 of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

CS 72 04 05 06

| | |
|---|---|
| Endorsement No.: 3 | Effective: May 15, 2015 |
| Named Insured: Sears Holdings Corporation | 12:01 A.M. Standard Time |
| Policy No.: ELU139030-15 | Insurer: XL Specialty Insurance Company |

# ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

1.  Section II. DEFINITIONS (E) is amended by the addition of the words "Insurer or" before the word "Company's".

2.  Section II. DEFINITIONS (K) is amended by deleting the words "(including pre- & post- judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law)" and by the addition of the following:

In applying the foregoing, only punitive damages awarded for vicarious liability of the Insured Persons is insurable under Illinois law.

3.  Section IV. CONDITIONS (I) Cancellation and Renewal of Coverage (2) is amended by the addition of the following:

Notice of cancellation will also be sent to the Insured Person's broker, if known, and to the mortgagee or lienholder, if any, at their last known address.  The Insurer shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

4.  Section IV. CONDITIONS (I) Cancellation and Renewal of Coverage (3) is amended by deleting the words "deliver or" and by the addition of the following:

A copy of such notice will be sent to the Parent Company's broker, if known, or agent of record for the Insured Persons, if applicable, and to the mortgagee or lienholder, if applicable, at the last mailing address known by the Insurer.  The notice of non-renewal will state the reason for non-renewal.

5.  Section IV. CONDITIONS (J) Optional Extension Period (1) is deleted and replaced by the following:

If either the Insured Persons or the Insurer cancels or does not renew this Policy, the Insured Persons shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any Claim first made during the period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a Wrongful Act occurring prior to the Policy Expiration Date.  The Optional Extension Period offered by the Insurer shall be at least one year in length.

6.  The first sentence of Section IV. CONDITIONS (J) Optional Extension Period (2) is deleted in its entirety.

7.  The third sentence of Section IV. CONDITIONS (K) Representation Clause is deleted and replaced by the following:

In the event that any statements and particulars contained in the Application are untrue, inaccurate or incomplete, no coverage shall be afforded under this insurance to any Insured Person who had actual knowledge as of the Inception Date of facts or information that were not accurately or completely disclosed as required in the Application.

CS 72 04 05 06 (12/10 ed.)

8.        Section IV. CONDITIONS (P) Bankruptcy is amended by the addition of the following:

Provided, however, the bankruptcy or insolvency of the Insured Persons shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.


All other terms and conditions remain unchanged.

CL 80 34 12 02

**Endorsement No.: 4**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND MERGERS AND ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

(1)    If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act occurring after the consummation of the transaction; provided however, if by reason of the transaction (or series of transactions) the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed thirty-five (35%) percent of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act that occurred after the transaction has been consummated.  Coverage beyond the ninety (90) day period will be provided only if:

    (a)    the Insurer receives written notice containing full details of the transaction(s); and

    (b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 99 03 05

**Endorsement No.: 5**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ADDITIONAL COMPANY ENDORSEMENT

In consideration of the premium charged:

(1)    The term "Company," as defined in Section II Definitions (D) of the Policy, is amended to include Sears Foundation but solely with respect to Wrongful Acts committed or allegedly committed by such entity's Insured Persons on or after March 24, 2005.

(2)    No coverage will be available under this Policy for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act committed or allegedly committed by the Insured Persons of Sears Roebuck & Company before March 24, 2005.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 84 11 04

**Endorsement No.: 6**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (I)(3) of the Policy shall include the domestic partner of any person set forth in Section II Definition (I)(1) or (I)(2), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner of such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 83 01 11 06

**Endorsement No.: 7**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# WHISTLEBLOWER ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (A)(1) of the Policy shall not apply to the extent a Claim is brought by an employee of the Company pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 189 06 07

**Endorsement No.: 8**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXTRADITION COSTS ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that, where permitted by law:

    (1)    The term "Claim," as defined in Section II Definitions of the Policy, will include:

        (a)    an official request for Extradition of any Insured Person; and

        (b)    the execution of a warrant for the arrest of an Insured Person where such execution is an element of Extradition.

    (2)    The term "Defense Expenses," as defined in Section II Definitions of the Policy, will include reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the Insurer resulting from an Insured Person lawfully:

        (a)    opposing, challenging, resisting or defending against any request for or any effort to obtain the Extradition of such Insured Person; and

        (b)    appealing any order or other grant of Extradition of such Insured Person.

    (3)    For the purposes of this Endorsement, the term "Extradition" means any formal process by which an Insured Person located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 38 02 05

**Endorsement No.: 9**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INCONSISTENCY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy modified by another endorsement attached to this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of the endorsement which are more favorable to the Insured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 17775 06 15

Endorsement No.: 10                                Effective: May 15, 2015
Named Insured: Sears Holdings Corporation          12:01 A.M. Standard Time
Policy No.: ELU139030-15                            Insurer: XL Specialty Insurance Company

# PENSION AND WELFARE BENEFIT PLAN FIDUCIARY LIABILITY ENDORSEMENT

In consideration of the premium charged:

(1)     In addition to the coverage afforded pursuant to the Insuring Agreement of the Policy, but subject to the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations and the provisions below, the Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period, or, if applicable, the Optional Extension Period, for a Fiduciary Wrongful Act, except to the extent that such Loss is paid by any other Insurance Program or as indemnification from any source.  If Loss is not paid by such other Insurance Program or as indemnification from any source, the Insurer will pay covered Loss on behalf of the Insured Persons, subject to all of the terms, conditions and limitations of the Policy, including but not limited to Section IV. CONDITION (B).

(2)     Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

    (a)     "Administration" means:

        (i)     handling records in connection with Employee Benefits;

        (ii)    effecting enrollment, termination or cancellation of employees under an Employee Benefits program;

        (iii)   giving counsel to employees with respect to Employee Benefits; or

        (iv)    interpreting Employee Benefits.

    (b)     "Employee Benefits" means any Plan, workers' compensation insurance, unemployment insurance, Social Security or disability benefits.

    (c)     "Fiduciary Wrongful Act" means:

        (i)     any actual or alleged breach of duties, responsibilities or obligations imposed upon fiduciaries of any Plan by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), any amendments to any of the foregoing, the common law or statutory law of any jurisdiction governing such Plan, or any rules or regulations promulgated under any of the foregoing;

        (ii)    any actual or alleged negligent act, error or omission by an Insured Person in the Administration of Employee Benefits;

        (iii)   any other matter claimed against an Insured Person solely by reason of his or her service or status as a fiduciary of any Plan; or

        (iv)    any actual or alleged negligent act, error or omission by an Insured Person in connection with the creation, adoption or establishment, amendment or termination of any Plan.

    (d)     "Pension Benefit Plan" means any employee pension benefit plan, as such term is defined in ERISA.

    (e)     "Plan" means:

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

     (i)    any Pension Benefit Plan or Welfare Benefit Plan which is operated solely by a Sponsor Organization or jointly by a Sponsor Organization and a labor organization solely for the benefit of such Sponsor Organization's directors, officers, trustees, governors, management committee members, members of the Board of Managers, general partners, in-house general counsel or employees located anywhere in the world;

     (ii)    any other employee benefit plan or program anywhere in the world which is not subject to ERISA and which is sponsored by a Sponsor Organization solely for the benefit of its directors, officers, trustees, governors, management committee members, managers, members of the Board of Managers, general partners, in-house general counsel or employees, including but not limited to any cafeteria plan, dependent care assistance program, fringe benefit plan, deferred compensation plan, supplemental executive retirement plan, top-hat plan, excess benefit plan or voluntary employees' beneficiary association;

     (iii)    any other plan or program otherwise described in subparagraph (2)(d)(i) or (ii) above while such plan or program is being actively developed, formed or proposed by a Sponsor Organization prior to the formal creation of such plan or program; provided, that no coverage will be afforded under this Policy in respect of any Claim against an Insured Person in a settlor or similar uninsured capacity with respect to any such plan or program; and

     (iv)    any other plan, fund or program specifically identified as a Plan by written endorsement attached to and made a part of this Policy.

The term "Plan" shall not include any multi-employer plan.

(f)    "Sponsor Organization" means the Company while acting in its capacity as a sponsor of a Plan for the benefit of its employees.

(g)    "Welfare Benefit Plan" means any employee welfare benefit plan, as such term is defined in ERISA.

(3)    Solely for the purposes of the coverage provided by this endorsement:

(a)    The term "Claim," as defined in Section II. DEFINITIONS (C) of the Policy, is amended to include:

     (i)    a written notice of the commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation or any similar governmental authority located outside of the United States; or

     (ii)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

against an Insured Person for a Fiduciary Wrongful Act.

(b)    The term "Insured Person," as defined in Section II. DEFINITIONS (I) of the Policy, is amended to include any individual identified in Section II. DEFINITIONS (I)(1) of the Policy while acting in his or her capacity as a fiduciary of a Plan.

(c)    The term "Loss," as defined in Section II. DEFINITIONS (K) of the Policy, will not include benefits due or to become due under the terms of any Plan, unless and then only to the extent that recovery for such benefits is based on a Fiduciary Wrongful Act and is payable as the personal obligation of an Insured Person; provided, that Loss may include Defense Expenses with respect to Claims seeking benefits due or to become due under the terms of any Plan.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

(d)    The term "Loss," as defined in Section II. DEFINITIONS (K) of the Policy, may include civil penalties of up to five percent (5%) imposed pursuant to Section 502(i) of ERISA for inadvertent violation of Section 406 of ERISA, and civil penalties of up to twenty percent (20%) of any settlement or judgment imposed pursuant to Section 502(l) of ERISA for breach of fiduciary duty.

(4)    The term "Interrelated Wrongful Act," as defined in Section II. DEFINITIONS (J) of the Policy, shall include Wrongful Acts and Fiduciary Wrongful Acts based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(5)    No coverage will be available under this endorsement for Loss in connection with Claims for Fiduciary Wrongful Acts:

(a)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged failure by any Insured Person to comply with any law, rule or regulation concerning workers' compensation insurance, unemployment insurance, Social Security or disability benefits, whether or not such failure to comply is willful; provided, that this subparagraph (5)(a) will not apply to any actual or alleged failure by any Insured Person to comply with the Consolidated Omnibus Reconciliation Act of 1985, HIPAA, any amendments thereto or any rules or regulations promulgated thereunder;

(b)    for the failure to collect contributions owed to any Plan from any employer unless such failure is due to the negligence of an Insured Person, or for the return to any employer of any contributions if such amounts are or could be chargeable to a Plan; provided, that this subparagraph (5)(b) shall not apply to Defense Expenses, subject to the maximum aggregate Limit of Liability;

(c)    made by or on behalf of a fidelity insurer against an Insured Person whose conduct has resulted in a Loss which has been paid under a fidelity bond;

(d)    based upon, arising out of, directly or indirectly resulting, in consequence of, or in any way involving any discrimination, retaliation or wrongful termination of employment; provided that this subparagraph (5)(d) with not apply to Claims asserted under Section 510 of ERISA; or

(e)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Fiduciary Wrongful Act which, before the effective date of this endorsement, was the subject of any notice given under any other management liability insurance policy, directors and officers liability policy, pension and welfare benefit plan fiduciary liability insurance policy or similar policy.

(6)    For the purposes of Section IV. CONDITIONS of the Policy, the term "Wrongful Act" shall be deemed to include any Fiduciary Wrongful Act and the term "Company" shall be deemed to include any Sponsor Organization.

(7)    It is agreed that, in the event an Insured Person breaches a fiduciary obligation under ERISA, the Insurer has the right of recourse against any such Insured Person for any amount paid by the Insurer as a result of such breach of fiduciary duty, but the Insurer shall have no such right of recourse if the Policy has been purchased by the fiduciary or by an employer or employee organization.

(8)    In the event that a Claim gives rise to coverage both under this endorsement and under the Insuring Agreement of this Policy, Loss in respect of such Claim shall be paid, first, under the Insuring Agreement of this Policy, subject to its terms, conditions and limitations and all endorsements applicable thereto, and then, to the extent that any such Loss remains unpaid and any amount of the applicable Limit of Liability remains available, under this endorsement.

(9)    Nothing in this endorsement is intended, nor shall it be construed, to increase the Insurer's maximum aggregate Limit of Liability under this Policy, as set forth in ITEM 3 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 17775 06 15                                                                                      Page 3 of 3
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 59 03 08

**Endorsement No.: 11**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# APPLICATION ENDORSEMENT

In consideration of the premium charged, the term "Application," as defined in Section II Definitions of the Policy, shall include any public documents filed by a Company with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)) within the one (1) year period immediately preceding the Inception Date of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 60 09 08

**Endorsement No.: 12**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# RATING ENDORSEMENT

In consideration of the premium charged, it is hereby agreed that notwithstanding anything in this policy that is contrary, this policy may be canceled by the Parent Company, if the Insurer's security rating is downgraded below an A.M. Best's rating of A- and/or a Standard & Poor's rating of A-.

Cancellation shall be effected by giving the Insurer written notice of the effective date of cancellation.

Any unearned premium by the Insurer will be computed pro rata and such return or tender of unearned premium will not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 9458 05 09

Endorsement No.: 13                          Effective: May 15, 2015
Named Insured: Sears Holdings Corporation    12:01 A.M. Standard Time
Policy No.: ELU139030-15                     Insurer: XL Specialty Insurance Company

# INDEPENDENT OUTSIDE DIRECTOR ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (A) and (B) of the Policy shall not apply to any past, present or future independent/non-interested outside director of the Company and those persons serving a functionally equivalent role for the Parent Company or any Subsidiary.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2009 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 4088 01 06

Endorsement No.: 14                           Effective: May 15, 2015
Named Insured: Sears Holdings Corporation     12:01 A.M. Standard Time
Policy No.: ELU139030-15                      Insurer: XL Specialty Insurance Company

# AMEND INTRODUCTIONS TO EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, the introductions to Section III. EXCLUSIONS (A) and (B) of the Policy are amended by the insertion of the words "that portion of" before the words "any Claim."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 13794 05 12

**Endorsement No.: 15**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND EXCLUSION (B)(2) ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (B)(2) of the Policy is amended to read in its entirety as follows:

"(2)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction, event or Wrongful Act which, before the Inception Date of this Policy, was the subject of any notice accepted under any management liability insurance policy, directors' and officers' liability insurance policy, or fiduciary liability insurance policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 80 68 06 04

**Endorsement No.: 16**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# OUTSIDE DIRECTORSHIP ENDORSEMENT

In consideration of the premium charged:

(1)    The term "Outside Entity", as defined in Section II Definitions of the Policy, is amended to include the following entity(ies) (each entity, "Specified Entity"):

Virtual Model
Seritage Growth Properties, Inc.

(2)    The term "Insured Person", as defined in Section II Definitions of the Policy, is amended to include service by the following Insured Person(s) as a director or officer of a Specified Entity, but only during such time that such service is at the specific written request of the Company:

William Gabb
Robert A. Riecker - Rob is VP and Controller/Chief Accounting Officer for SHC
Sam Jeffrey Stollenwerck - Sam is SVP and President - Real Estate for SHC

With respect to the Specified Entity(ies) identified in paragraph (1) above, the term "Insured Person" shall not include service as a director or officer by any Insured Person other than the Insured Person(s) specifically identified in paragraph (2).

(3)    For purposes of determining the coverage available to an Insured Person with respect to one or more Specified Entity(s):

(a)    All coverage under this Policy for Loss from Claims against an Insured Person while acting in their capacity as a director, officer, trustee, regent or governor of a Specified Entity will be specifically excess of and will not contribute with, any other insurance or indemnification available to such Insured Person from any source, including indemnification from such Specified Entity or the Company.

(b)    The certificate of incorporation, charter, partnership agreement or other organizational and operational documents of the Company and such Specified Entity, including bylaws and resolutions, shall be deemed to provide indemnification to the Insured Person for his or her service with respect to such Specified Entity to the fullest extent permitted by law.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 68 06 04

CS 80 95 09 09

**Endorsement No.: 17**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EMAIL NOTICES ENDORSEMENT

In consideration of the premium charged, the last sentence of Section IV Condition (D) of the Policy is amended to read in its entirety as follows:

"All notices under CONDITIONS (D)(1) and (2) must be sent by:

    (a)    certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations:  Attention Claim Department; or

    (b)    electronic mail (email) to:  proclaimnewnotices@xlgroup.com."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2009 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 80 224 04 08

**Endorsement No.: 18**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND CONDITION (I)(2) ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (I)(2) of the Policy is amended to read in its entirety as follows:

"(2)   The Insurer may only cancel this Policy for nonpayment of premium.  The Insurer will provide not less than ninety (90) days written notice stating the reason for cancellation and when the Policy will be canceled.  Notice of cancellation will be sent to the Parent Company and the agent of record for the Insured Person, if applicable."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 80 176 03 07

**Endorsement No.: 19**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND CLAIM ENDORSEMENT

In consideration of the premium charged, the term "Claim," as defined in Section II Definitions, is amended to include an investigation by the Securities and Exchange Commission or any similar state, federal or foreign agency commenced by the service of a subpoena upon an Insured Person.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 80 111 02 10

**Endorsement No.: 20**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, the term "Claim," as defined in Section II Definitions (C) of the Policy, is amended to include a written request or agreement that an Insured Person toll any applicable statute of limitations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 80 27 10 02

**Endorsement No.: 21**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ADD INSURED PERSON ENDORSEMENT

In consideration of the premium charged, the term "Insured Person," as defined in Section II Definitions (I) of the Policy, is amended to include Bill Crowley in his capacity as an advisor to Sears Holdings Corporation and George L. "Mike" Miken III.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 15561 05 13

**Endorsement No.: 22**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND EXCLUSION (A)(2) ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (A)(2) of the Policy is amended to read in its entirety as follows:

"(2)    brought about or contributed to by any:

(a)    intentionally dishonest, deliberately fraudulent, or deliberately criminal act or omission or violation of any statute, rule, or law by any Insured Person; or

(b)    personal profit or remuneration gained by any Insured Person to which such Insured Person is not legally entitled;

as determined by a final, non-appealable adjudication in the underlying action;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 83 96 01 08

**Endorsement No.: 23**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND EXCLUSION (B)(1) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (B)(1) of the Policy is amended to read in its entirety as follows:

"(1)     for any actual or alleged bodily injury, sickness, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including Loss of use thereof.  EXCLUSION (B)(1) shall not apply to any Claim:

      (i)      brought by a security holder of the Company or Outside Entity for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

      (ii)     a derivative action brought by or on behalf of, or in the name or right of, the Company, and brought and maintained independently of, and without solicitation, assistance, participation or intervention of the Company, Insured Person, or Outside Entity."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CS 80 37 10 07

**Endorsement No.: 24**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND SECTION IV (E)(2) ENDORSEMENT

In consideration of the premium charged, Section IV Condition (E)(2) of the Policy is amended to read in its entirety as follows:

"(2)   Upon written request, the Insurer will pay within sixty (60) days of receipt of an invoice any covered Defense Expenses before the disposition of the Claim for which this Policy provides coverage. In the event of such advancement, the Insured Persons agree that they shall repay the Insurer, severally according to their interests, any Loss, including Defense Expenses, paid to or on behalf of the Insured Persons if it is finally determined that the Loss incurred is not covered under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 80 119 06 10

**Endorsement No.: 25**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURER'S RIGHTS OF SUBROGATION

In consideration of the premium charged, it is understood and agreed that, in the event of payment under the Policy, the Insurer will not be subrogated to any Insured Person's potential or actual rights of recovery in connection therewith against any Insured Person unless it is established that Section III Exclusion (A)(2), as amended, applies to such Insured Person, and Section IV Condition (F)(2) will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CS 80 77 09 08

**Endorsement No.: 26**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INJUNCTIVE RELIEF ENDORSEMENT

In consideration of the premium charged, Section II Definition (C) of the Policy will specifically include any written demand for injunctive relief.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 80 63 04 04

**Endorsement No.: 27**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CHANGE IN CONTROL
# ENDORSEMENT

In consideration of the premium charged, Section II Definitions (B)(3) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 16693 05 14

Endorsement No.: 28                               Effective: May 15, 2015
Named Insured: Sears Holdings Corporation         12:01 A.M. Standard Time
Policy No.: ELU139030-15                          Insurer: XL Specialty Insurance Company

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged:

(1)      Section II Definition (K) of the Policy is amended to read in its entirety as follows:

      "(K)    'Loss' means damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiple damages, where insurable by law) and Defense Expenses that the Insured Persons are obligated to pay.  Loss will not include:

            (1)    fines, penalties or taxes imposed by law; provided that Loss will specifically include (subject to the terms, conditions and limitations of this Policy, including but not limited to Section III Exclusion (A)(2)):

                  (a)    civil fines and penalties;

                  (b)    taxes that an Insured Person is obligated to pay if such taxes are insurable by law and imposed in connection with such Insured Person's service with respect to an entity included within the definition of Company that is financially insolvent;

                  (c)    SOX 304/Dodd-Frank 954 Costs; and

                  (d)    Freedom Protection Costs; or

            (2)    matters which are uninsurable under the law pursuant to which this Policy is construed provided that the Insurer will not assert that the portion of any Defense Expenses, settlement or judgment in a Claim arising from an initial or subsequent public offering of the Company's securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

            Note:  With respect to judgments in which punitive, exemplary or multiplied damages, or such civil fines, penalties or taxes as set forth in (K)(1) above, are awarded, the law of the jurisdiction most favorable to the insurability of such amounts shall control."

(2)      Solely for the purposes of this endorsement, "SOX 304/Dodd-Frank 954 Costs" shall mean reasonable and necessary fees, costs and expenses (including the premium or origination fee for a loan or bond) incurred by any Insured Person solely to facilitate the return of amounts required to be repaid by such Insured Person pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.  SOX 304/Dodd Frank 954 Costs shall not include any amounts requested or required to be repaid by an Insured Person pursuant to Section 304(a) or Section 954.

(3)      Solely for purposes of this endorsement, "Freedom Protection Costs" shall mean:

      (a)  reasonable and necessary fees, costs and expenses consented to by the Insurer and incurred by an Insured Person in order for an Insured Person to lawfully seek his or her release from any pre-Claim arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or

      (b)

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

(b)    reasonable and necessary fees, costs and expenses consented to by the Insurer and incurred by an Insured Person for a bond or other financial instrument to guarantee the contingent obligation of the Insured Person for a specified amount required by a court that are incurred or required outside the United States of America during the Policy Period, if such premiums (i) arise out of an actual or alleged Wrongful Act, or (ii) are incurred solely by reason by such Insured Person's status as an Insured Person; and, in either case, no Claim has been made or arrest or confinement occurred prior to the inception of the Policy Period.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 13806 05 12

| | |
|---|---|
| **Endorsement No.: 29** | **Effective: May 15, 2015** |
| **Named Insured: Sears Holdings Corporation** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU139030-15** | **Insurer: XL Specialty Insurance Company** |

# AMEND CONDITION (B)(1) ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (B)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

(a)    all indemnification and advancement to which an Insured Person may be entitled from any source, including but not limited to the Company or any Outside Entity; and

(b)    any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if Loss is not paid by such other insurance or as indemnification or advancement within sixty (60) days of the submission of a request for the payment of such other insurance, indemnification or advancement by the Insured Persons, this Policy will respond on behalf of the Insured Persons as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 80 208 11 07

**Endorsement No.: 30**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND REPRESENTATIONS CLAUSE ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (K) of the Policy is amended to read in its entirety as follows:

"(K)    Representation Clause

The Application for coverage shall be construed as a separate Application for coverage for each Insured Person.  Each Insured Person represents that the statements and particulars contained in the Application are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  No knowledge or information possessed by any Insured Person will be imputed to any other Insured Person for the purposes of determining the availability of coverage with respect to Claims made against any other Insured Person."

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 208 11 07

CL 80 225 04 08

**Endorsement No.: 31**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NOTICE ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the late notice of any Claim to the Insurer, as described in Section IV Condition (D)(1) of the Policy, will not be a defense to coverage unless the Insurer proves that it was actually prejudiced thereby.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 15562 05 13

**Endorsement No.: 32**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, the term "Claim," as defined in Section II Definition (C) of the Policy, is amended to include a written request by a federal, state or foreign governmental entity for an Insured Person to appear for a formal interview with respect to such Insured Person's capacity in the Company or a Company's business activities.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CL 83 75 01 07

**Endorsement No.: 33**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# FORMER INSURED PERSON ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (A)(1) of the Policy shall not apply to the extent a Claim is brought and maintained by an Insured Person:

    (a)    who has not served as a director, officer, member of the Board of Managers, or employee of the Company for at least two (2) years prior to the date such Claim is first made; and

    (b)    who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 83 75 01 07

CS 83 02 12 06

**Endorsement No.: 34**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CREDITORS COMMITTEE ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (A)(1) will not apply to the extent a Claim is brought by any creditors' committee established in any bankruptcy proceeding, receivership, conservatorship, rehabilitation or liquidation with respect to the Company or such Outside Entity.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 80 195 09 13

**Endorsement No.: 35**                          **Effective: May 15, 2015**
**Named Insured: Sears Holdings Corporation**    **12:01 A.M. Standard Time**
**Policy No.: ELU139030-15**                     **Insurer: XL Specialty Insurance Company**

# AMEND NOTICE OF CLAIM ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (D)(1) of the Policy is amended to read in its entirety as follows:

"(1)     As a condition precedent to any right to payment under this Policy with respect to any Claim, the Insured Persons or the Company shall give written notice to the Insurer of any Claim as soon as practicable after it is first made and the Risk Manager or General Counsel of the Parent Company first becomes aware of such Claim."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CS 80 81 01 09

**Endorsement No.: 36**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the term "Claim" will include a civil, criminal, administrative or regulatory investigation of an Insured Person once such Insured Person is identified in writing by a relevant investigating authority as a person against whom a proceeding as described in Section II. DEFINITIONS (C)(1), (2) or (3) may be commenced, including but not limited to any "Wells" or other notice from the Securities and Exchange Commission or a similar state or foreign governmental authority that describes actual or alleged violations of securities or other laws by such Insured Person, and Section II. DEFINITIONS (C) will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2009 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CS 80 55 02 08

**Endorsement No.: 37**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF "CLAIM" ENDORSEMENT

In consideration of the premium charged, the term "Claim," as defined in Section II. DEFINITIONS (C) of the Policy, will be deemed to have been amended to include a subpoena received by an Insured Person in connection with an investigation of the Company by the Securities and Exchange Commission, the United States Department of Justice, or any similar federal, state or foreign governmental agency or authority.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 16691 05 14

**Endorsement No.: 38**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, the term "Claim," as defined in Section II Definition (C) of the Policy is amended to include any mediation proceeding.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 16692 05 14

**Endorsement No.: 39**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND EXCLUSION (A)(1) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (A)(1) of the Policy shall not apply to the extent such Claim is brought by the Company or Outside Entity in its capacity as a debtor in possession under Title 11 of the United States Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 16690 05 14

**Endorsement No.: 40**
**Named Insured: Sears Holdings Corporation**
**Policy No.: ELU139030-15**

**Effective: May 15, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND CONDITION (F)(1) ENDORSEMENT

In consideration of the premium charged, Section IV Condition (F)(1) of the Policy is amended to read in its entirety as follows:

"(1)     The Insured Persons and the Company agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing that in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.  The failure of an Insured Person or the Company to provide information, assistance or cooperation shall not impair the rights of any other Insured Person under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

# CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

## I.    INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification or advancement from any source. In the event that **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions (including, but not limited to, CONDITION (B)) and limitations and without prejudice to the Insurer's excess position.

## II.   DEFINITIONS

(A)    "**Application**" means:

    (1)    the **Application** attached to and forming part of this Policy; and

    (2)    any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)    "**Change In Control**" means:

    (1)    the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets, by another entity such that the **Parent Company** is not the surviving entity;

    (2)    the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)    the court appointment of any person or entity with authority comparable to that of the **Insured Persons**, as defined in DEFINITION (I)(1), to liquidate or reorganize the **Parent Company**.

(C)    "**Claim**" means:

    (1)    a written demand for monetary or non-monetary relief;

    (2)    any civil or criminal judicial proceeding in a court of law or equity, arbitration or other alternative dispute resolution; or

    (3)    a formal civil, criminal, administrative, or regulatory proceeding or formal investigation.

(D)    "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITION (C).

(E)    "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense or investigation of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

CS 71 00 09 06                                                                                                    Page 1 of 8

(G)  "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)  wrongful termination of employment whether actual or constructive;

    (2)  employment discrimination of any kind;

    (3)  sexual or other harassment in the workplace; or

    (4)  wrongful deprivation of career opportunity, employment-related misrepresentation, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)  "**Insurance Program**" means

    (1)  any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance; and

    (2)  any other existing insurance under which coverage may be owed.

(I)  "**Insured Person**" means:

    (1)  any past, present, or future director or officer, general counsel, or member of the Board of Managers of the **Company** and any person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States; and

    (2)  the lawful spouse of any person set forth in DEFINITION (I)(1), but only to the extent the spouse is a party to any **Claim** solely in his or her capacity as a spouse of such person and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and his or her spouse, or property transferred from any such person to his or her spouse.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

(J)  "**Interrelated Wrongful Acts**" means **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events.

(K)  "**Loss**" means damages, judgments, settlements or other amounts (including pre- & post-judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay.  **Loss** will not include:

    (1)  matters which are uninsurable under the law pursuant to which this Policy is construed; or

    (2)  fines, penalties or taxes imposed by law; provided, that this DEFINITION (K)(2) will not apply to fines, penalties or taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with respect to an entity included within the definition of **Company** that is financially insolvent.

Note:  With respect to coverage for punitive, exemplary or multiplied damages or fines, penalties or taxes, the law of the applicable jurisdiction most favorable to the insurability of such amounts shall control.

(L)  "**Outside Capacity Wrongful Act**" means any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, trustee, regent, or governor of any **Outside Entity**, if serving in such capacity at the specific request of the **Company**.

(M)    "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person**, as defined in DEFINITION (I)(1), serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific request of the **Company**.

(N)    "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(O)    "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(P)    "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(Q)    "**Wrongful Act**" means:

    (1)    any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, general counsel, or member of the Board of Managers of the **Company** or a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)    any matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer, general counsel, or member of the Board of Managers of the **Company**;

    (3)    any **Employment Practices Wrongful Act**; and

    (4)    any **Outside Capacity Wrongful Act**.

## III.    EXCLUSIONS

(A)    Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

    (1)    brought by or on behalf of, or at the direction of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity**, except and to the extent such **Claim**:

        (a)    is brought and maintained by a security holder of the **Company** or such **Outside Entity**, but only if such security holder is acting independently of, and without the solicitation, assistance, participation or intervention of, the **Company**, any **Insured Person**, or any **Outside Entity**;

        (b)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or such **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or such **Outside Entity**;

        (c)    is brought and maintained in a non-common law jurisdiction outside the United States of America or its territories or possessions; or

        (d)    is made after the **Parent Company** has undergone a **Change of Control**; or

    (2)    brought about or contributed to in fact by any:

        (a)    intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

        (b)    profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

    as determined by a final adjudication in the underlying action.

(B)    The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**:

(1)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof; provided, that this EXCLUSION (B)(1) shall not apply to any **Claim**:

    (a)    brought by a security holder of the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

    (b)    in the form of a derivative action, but only if such **Claim** is brought by or on behalf of, or in the name or right of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** and is brought and maintained independently of, and without the solicitation, assistance, participation or intervention of the **Company**, any **Insured Person**, or any **Outside Entity**; or

(2)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or other similar insurance.

Note: EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**.

No **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

### (A)    Limit of Liability

The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

### (B)    Indemnification and Other Insurance

(1)    The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

    (a)    all indemnification and advancement to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

    (b)    any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position.

(2)    This Policy shall not be subject to the terms or conditions of any other insurance. The Insurer does not waive, compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification or advancement, including the **Company** and any **Outside Entity**.

### (C)    Mergers and Acquisitions

(1)    If, during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)    With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in CONDITION (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against any **Insured Person** for any **Wrongful Act** in connection with the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary** or liability committed at any time during which such entity, asset, **Subsidiary** or liability is not included within the definition of "**Company**."

(3)    If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4)    If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**, and

   (a)    coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

   (b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D)    **Notice**

(1)    As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)    If, during the **Policy Period**, the **Insured Persons** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

   (a)    provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

   (b)    request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

   then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations;   Attention:  Claim Department.

(E)    **Defense and Settlement of Claims**

(1)    It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**.  No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2)    Upon written request, the Insurer will pay on a current basis any covered **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage.  In the event of such advancement, the **Insured Persons** agree that they shall repay the Insurer, severally according to

their interests, any **Loss**, including **Defense Expenses**, paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)    Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**.

(F)    **Assistance, Cooperation and Subrogation**

(1)    The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons**, including any such rights of recovery against the **Company** or any **Outside Entity**. The **Insured Persons** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)    **Interrelated Claims**

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) or (2) above, if applicable.

(H)    **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **Cancellation and Renewal of Coverage**

(1)    The Chairman of the Board of Directors and the Chief Executive Officer of the **Parent Company** shall have the exclusive right to cancel this Policy on behalf of the **Insured Persons**. Such cancellation may be effected by mailing to the Insurer written notice stating when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may cancel this Policy only for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Persons**, if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(4)    The Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

(J)    **Optional Extension Period**

(1)    If either the **Insured Persons** or the Insurer does not renew this Policy, the **Insured Persons** shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the

period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)   As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full.  The right of the **Insured Persons** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Insured Persons** advising they wish to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)   If the **Insured Persons** elect to purchase the Optional Extension Period as set forth in CONDITIONS (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)   The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)   **Representation Clause**

The **Application** for coverage shall be construed as a separate **Application** for coverage for each **Insured Person**.  Each **Insured Person** represents that, to the best of his or her knowledge, the statements and particulars contained in the **Application** are true, accurate and complete, and each **Insured Person** agrees that this Policy is issued in reliance on the truth of that representation and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  In the event that any statements and particulars contained in the **Application** are untrue, inaccurate or incomplete, this Policy will be void with respect to any **Insured Person** who had actual knowledge as of the Inception Date of facts or information that were not accurately or completely disclosed as required in the **Application**.  No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against such other **Insured Person**.

(L)   **Action Against the Insurer, Assignment, and Changes to Policy**

(1)   No action may be taken against the Insurer unless, as a condition precedent thereto:

(a)   there has been full compliance with all of the terms and conditions of this Policy; and

(b)   the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)   Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Persons** to determine their liability, nor may the **Insured Persons** implead the Insurer in any **Claim**.

(3)   Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)   Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy.  The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)   **Authorization and Notices**

CS 71 00 09 06                                                                                                 Page 7 of 8

It is understood and agreed that, except as provided elsewhere in this Policy, the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)     the payment of the premiums,

(2)     the receiving of any return premiums that may become due under this Policy,

(3)     the giving of all notices to the Insurer as provided herein, and

(4)     the receiving of all notices from the Insurer.

(N)     **Entire Agreement**

The **Insured Persons** agree that the Declarations, the Policy, including any endorsements and attachments, and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** in relation to the insurance.

(O)     **Worldwide Coverage**

In consideration of the premium charged, coverage under this Policy shall extend anywhere in the world.

(P)     **Bankruptcy**

In the event that a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insured Persons** and the **Company** hereby (1) waive and release any automatic stay or injunction which may apply in such proceeding in connection with this Policy or its proceeds under such Bankruptcy Code or law; and (2) agree not to oppose or object to any efforts by the Insurer or any **Insured Person** or the **Company** to obtain relief from any such stay or injunction.