# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

REBECCA RYSEWYK, MARY E. ROOD,
BRIAN VAN VOOREN, and KATIE SMITH,
individually and on behalf of all others similarly
situated,

     Plaintiffs,

v.

SEARS HOLDINGS CORPORATION,
KCD IP, LLC, and SEARS, ROEBUCK AND
COMPANY,

     Defendants.

Civil Action No.:_____

Jury Trial Demanded

## CLASS ACTION COMPLAINT

Plaintiffs Rebecca Rysewyk, Mary E. Rood, Brian Van Vooren, and Katie Smith ("Plaintiffs"), individually and on behalf of all others similarly-situated, bring this action against Defendants Sears Holdings Corporation, KCD IP, LLC, and Sears, Roebuck and Company (collectively, "Sears"). Plaintiffs' allegations are based upon personal knowledge as to their own conduct and on information and belief as to the acts of others.

## NATURE OF THE ACTION

1.     Sears designs, manufactures, sells, and markets a wide range of home products, touting itself as "the leading home appliance retailer, as well as a leader in tools, lawn and garden, fitness equipment and automotive repair and maintenance." *See* Sears Holdings Corporation, Form 10-K, p. 2, for year ended January 31, 2015. One of its key proprietary brands is Craftsman, which Sears refers to as "among the most trusted and preferred brands in the U.S." *See* www.searsholdings.com/about/sears.

2.      Despite Sears' claim that its Craftsman products are among the most trusted in the United States, Sears designed, manufactured, marketed, and sold riding lawnmowers and lawn tractors under the Craftsman name that have a material, serious, and dangerous safety defect. This defect includes, without limitation, that these riding lawnmowers and lawn tractors have a fuel line that is inadequately secured and has a propensity to dislodge from the gas tank during the proper and intended use of the lawnmowers.  Both the fuel line and electrical components are located near the lawnmowers' drive belts and pulleys such that, when either the fuel line dislodges or becomes worn through friction with the belts or pulleys, or the electrical components become worn from friction from the nearby pulleys, the lawnmowers' fuel drips onto the mowing bed and catches on fire (hereinafter, "Defect").

3.      The riding lawnmowers and lawn tractors at issue in this case include all Craftsman riding lawnmowers and tractors sold by Sears that contain the Defect as defined above, or other defect that makes the mowers prone to catch fire, including but not limited to Craftsman Models 917.20383, 917.288515, YTS 3500 Model No. 917.27660, GT 5000 Model No. 917.289453, and all other models identified during the discovery phase of this case (hereinafter, the "Lawnmowers" or "Mowers").

4.      The Defect exists at the point of sale of the Lawnmowers, and when the Defect manifests itself, the gasoline leak can ignite and cause fire while the Lawnmowers are in use or just after the Lawnmowers are stored after use, thus putting both the users and their real and personal property at risk of harm from resulting fire.  And whether or not the Defect manifests itself, for all Lawnmowers sold, the Defect poses a fire hazard to the Lawnmowers and adjacent property, and is a serious safety risk to consumers and the public.

5.      At all relevant times, Sears knew or should have known of the Defect but nevertheless sold the Lawnmowers to consumers, failed to warn consumers of the serious safety risks that the Defect posed, and failed to recall these dangerously defective Lawnmowers despite the risks to life and property that they pose.

6.      As a direct and proximate result of Sears' concealment of the Defect, failure to warn its customers of the Defect and of the inherent safety risks posed by the Lawnmowers, failure to remove the defective Lawnmowers from the stream of commerce, and failure to recall or remedy the defective designs, Plaintiffs and Class members purchased and used Sears' defective and unsafe Lawnmowers.

7.      As discussed in detail below, as a result of the Defect, the fuel line of Plaintiffs' Lawnmowers leaked or is at risk of leaking onto the mowing bed, ignited or was at risk of igniting, and caused Plaintiffs' damages.

8.      Plaintiffs' and the Class members' Lawnmowers contain the same Defect that poses the same substantial safety risk to consumers and the public, and they cannot be used safely for their intended purpose of mowing residential lawns.

## PARTIES

### Plaintiffs

9.      **Plaintiff Rebecca Rysewyk** is a resident and citizen of Tennessee.  On May 9, 2014, Ms. Rysewyk purchased a new Sears Craftsman Riding Lawnmower Model #917.20383 from Sears in Knoxville, Tennessee.  After learning of the problems associated with the Lawnmowers, Ms. Rysewyk contacted Sears to inquire about the defective Lawnmower.  Sears told her that there were no recalls on her Lawnmower.  Regarding Ms. Rysewyk's Lawnmower, by mid-2014, it was apparent that the squeeze metal clamps on the rubber fuel lines could be

turned, which was an indication that they do not have good gripping force. Over time, the ability of the fuel lines to loosen and rub against moving parts is likely to result in fuel leaking onto the mowing bed, presenting a fire hazard. The defective Lawnmower needs to be repaired or replaced in order to prevent the Lawnmower from igniting, and putting Plaintiff and her property at risk of injury and damage.

10. **Plaintiff Mary E. Rood** is a resident and citizen of Tennessee. Ms. Rood purchased a new Sears Craftsman Riding Lawnmower Model #917.288515 in 2011 from Sears in Knoxville, Tennessee. By mid-2014, it was apparent that there were vibration abrasions on the rubber fuel lines, and that the metal spring clamps move freely on the lines. There was also fuel leakage on the connection between the mid-line fuel filter and the fuel line. Further failure of the line could result in contact with the hot muffler and potentially cause a fire. Over time, without repair, it is likely that fuel will leak onto the mowing bed, posing a fire hazard. The defective Lawnmower needs to be repaired or replaced in order to prevent the Lawnmower from igniting, and putting Plaintiff and her property at risk of injury and damage.

11. **Plaintiff Brian Van Vooren** is a resident and citizen of New York. In 2009, Mr. Van Vooren purchased a Sears Craftsman YTS 3500 (Model No. 917.27660) Lawnmower from Sears in Pine Island, New York. On May 5, 2015, Mr. Van Vooren finished mowing his property, parked his Lawnmower just outside of his detached garage, and then went inside his house. Unbeknownst to him, the Lawnmower caught fire just after he walked away. Mr. Van Vooren was contacted by his neighbors that told him that his detached garage was on fire. The burning Lawnmower burned the detached garage to the ground, melted the siding of his house, and burned the back of his truck. In addition, Mr. Van Vooren's tools, car parts, and other equipment and personal property were destroyed by the fire. Although he has insurance, it will

not fully compensate him for all of his losses.  He has not yet received a final settlement with his insurance company.

12.     In May 2015, Mr. Van Vooren made several phone calls to Sears to complain about the defective Lawnmower, to inform Sears that his Lawnmower recently caught fire, and to request compensation for the losses caused by the Lawnmower.  On May 15, 2015, Mr. Van Vooren sent the Sears' Customer Service form to Sears to reiterate his complaints, as set forth above.  *See* www.craftsman.com/contactus/nb-100000000227055.  Despite receiving this notice and request, Sears has not offered any remedy to Mr. Van Vooren.

13.     A photograph of the fire caused by his Lawnmower is attached hereto:



14.    **Plaintiff Katie Smith** is a citizen and resident of Kentucky.  In March 2011, she purchased a new Craftsman GT 5000 Lawnmower (Model No. 917.289453) from Sears in Paducah, Kentucky.  Since that time, the Smiths have stored the Lawnmower in their garage when it was not in use.  On April 25, 2015, Mr. Smith was mowing the lawn when the Mower caught on fire.  He jumped off the Mower and was eventually able to extinguish the fire with a hose.  Although they have insurance, it will not fully compensate Plaintiff for all of her losses suffered.

15.    On May 1, 2015, Ms. Smith called Sears to complain about the defective Lawnmower, and she informed Sears that the Lawnmower caught on fire.  Sears responded that the Lawnmower was no longer under warranty, and that there was nothing that Sears could do for Ms. Smith.  Subsequent to that conversation, on May 18, 2015, Ms. Smith sent an email to Sears where she informed Sears that her Lawnmower caught on fire on April 25, 2015, that the Lawnmower was defective, and that Sears was in breach of its representations regarding the quality and integrity of its products.  Ms. Smith also asked whether Sears would compensate her for the defective Lawnmower and the losses incurred.  In Sears' response dated May 20, 2015, Sears referred to Ms. Smith's Lawnmower catching on fire as an "inconvenience."  It also stated that: "While we do not expect any appliance or product to fail within a pre-determined amount of time, there is always the possibility that this may occur."  Sears further stated that the Lawnmower is not covered by an applicable warranty or any separately-purchased protection agreement, and so "the responsibility of the cost for repair of the appliance or product falls on the consumer."  Sears did not offer Ms. Smith any remedy or compensation for her losses.

## Defendants

16.     **Defendant Sears Holdings Corporation** is a Delaware corporation with its
principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Sears
Holdings Corporation is the parent company for Sears and Kmart, as well as other national
retailers.  Sears Holdings Corporation markets, sells, and services Craftsman tools and
equipment, including the Lawnmowers, through its retail establishments throughout the United
States.  Its stock is traded on NASDAQ as "SHLD."  Sears Holdings Corporation was engaged
in the business of designing, manufacturing, and distributing the Lawnmowers for sale to
consumers in this jurisdiction and others.  Sears Holdings Corporation engages in a continuous
course of business in Illinois, and based upon information and belief, sells thousands of
Lawnmowers in this District every year.  Illinois has a significant relationship to the allegations
and events alleged herein.

17.     **Defendant KCD IP, LLC** is a Delaware limited liability company with its
principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  It is a
special purpose entity created by Sears Holdings for securitization purposes that owns Sears'
house brands, including Craftsman, Kenmore, and DieHard.

18.     **Defendant Sears, Roebuck and Company** is a wholly-owned subsidiary of
Sears Holdings Corporation, with its principal place of business at 3333 Beverly Road,
Hoffman Estates, Illinois 60179.  Sears, Roebuck and Company offers its products and services
through more than 1,320 Sears-branded and affiliated stores in the United States and Canada,
including more than 790 full-line and more than 50 specialty stores in the United States.  Sears,
Roebuck and Company offers consumers leading proprietary brands, including Craftsman.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The matter in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and some members of the Class are citizens of states other than the state in which Defendants are incorporated, and are citizens of states other than where Sears has its principal place of business.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (d) because all Defendants are headquartered in this District, regularly transact business in this District, and have continuous and systematic contacts with the State of Illinois through the sale of Sears' Craftsman products in Illinois.

## COMMON FACTUAL ALLEGATIONS

21.     Sears holds itself out to the public as a leading seller of tools and equipment, especially as related to its proprietary brand, Craftsman.  Sears is engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Lawnmowers labeled under the brand name Craftsman.  The Lawnmowers sold by Sears under the Craftsman name were made in accordance with Sears' specifications.

22.     In connection with its sale of the Lawnmowers, in its Operator's Manual and other written documents accompanying the Lawnmowers upon sale, Sears expressly warranted that the Lawnmowers were free from defects, were made for years of dependable operation, and consisted of merchantable material and workmanship.

23.     Like all Class members (as defined below), Plaintiffs purchased their Lawnmowers reasonably believing that they were properly designed and manufactured, were free from defects, and were safe to use.

24.     Plaintiffs' Lawnmowers were used for their intended purpose of mowing lawns in a manner reasonably foreseeable by Sears.  However, Plaintiffs are now unable to use their Lawnmowers for their intended purposes, or are required to place themselves and their properties at risk when using their Lawnmowers, because a uniform material safety Defect renders them unsafe and causes them to ignite and catch fire.

25.     Like Plaintiffs, the Class members purchased Lawnmowers designed, manufactured, and sold into the stream of commerce by Sears under its Craftsman brand name, and used the Lawnmowers for their intended purpose of mowing residential lawns in a manner reasonably foreseeable by Sears.

26.     Like Plaintiffs, the Class members' Lawnmowers have the same Defect that poses unreasonable risks of fire, property damage, personal injury and/or death during normal use.

27.     Like Plaintiffs, the Class members did not receive the benefit of their bargain when they purchased Lawnmowers which contain a material safety Defect at the point of sale.

28.     Sears knew or should have known of the Defect and of the serious safety risks it posed to the public, but chose to remain silent while concealing its knowledge of the Defect from consumers and members of the public who purchased the Lawnmowers, while selling its Lawnmowers to unsuspecting consumers for a profit.

29.     Had Plaintiffs and Class members known of the serious Defect, they either would not have purchased the Lawnmowers or would have paid significantly less for the Lawnmowers. As a result of Sears' unconscionable conduct, and the Defect existing in the Lawnmowers, Plaintiffs and the Class members have been damaged.  Such damages include, but are not limited to: the failure to receive the benefit of the bargain; the overpayment for the Lawnmowers; the

costs of repairs or replacement of the Lawnmowers; and damages to real and personal property.

Damages for personal injuries are not being sought in this action.

### **The Defect**

30.    The Lawnmowers that Plaintiffs and Class members purchased have a serious material safety Defect that causes or will cause the Lawnmowers to function improperly during the expected and foreseeable useful life of the Lawnmowers.    The Defect represents an unreasonable risk of spontaneous ignition and fire, resulting in property damage, personal injury, and/or death.

31.    The Defect includes, at the very least, the fuel lines and electrical components which are both improperly secured and which are located too close to the Mowers' drive belts and pulleys, or the improper selection of materials to ensure that the fuel lines and electrical components are secured.    Excessive movement of these parts can lead to abrasions and fuel leakage and ignition from the heat produced by the pulleys and/or the nearby electrical components when the Lawnmowers are used for their intended purpose.

32.    The Defect exists at the point of sale of the Lawnmowers, and manifests itself during the useful life of the Lawnmowers, within and without the warranty periods, is substantially likely to prevent the Lawnmowers from being used as intended during their expected useful life, and poses unreasonable risks of property damage, personal injury and/or death.

33.    At the very least, once the Defect has manifested itself, the resulting fire necessitates substantial economic harm, including, without limitation, the expensive replacement of, or costly repairs to, the Lawnmowers.

## Sears' Negligent and Intentional Conduct

34.     Sears failed to adequately design, manufacture, and/or test the Lawnmowers to ensure that they were free from defects before offering them for sale to Plaintiffs and Class members, despite its duty to do so.

35.     The Defect poses a serious and immediate safety risk to consumers and the public and has caused or will cause Plaintiffs' and Class members' Lawnmowers to fail during their expected useful lives.

36.     Plaintiffs' and Class members' Lawnmowers should have been usable for their intended purpose during the intended duration of their expected useful lives.

37.     The Defect existed at the time that the Lawnmowers were sold to Plaintiffs and Class members, and immediately rendered the Lawnmowers unfit for the ordinary and intended purpose for which they were marketed and sold.

38.     Had the Lawnmowers been free from the Defect, Plaintiffs and Class members would not have suffered the economic damages complained of herein.

39.     Sears also had a duty to protect consumers by warning them that the Defect poses unreasonable risks of property damage, personal injury and/or death.

40.     Nonetheless, even though Sears knew or should have known of the Defect existing in its Lawnmowers, it chose to conceal the existence of the Defect, to continue selling Lawnmowers containing the Defect, and to fail to remove the defective Lawnmowers from the marketplace.   Sears took such actions in order to realize the substantial financial benefits of selling the defective Lawnmowers to the public.

41.    Sears knew or should have known that consumers like Plaintiffs and Class members would be unaware of the Defect and could not reasonably be expected to discover the Defect until their Lawnmowers ignited and burned.

42.    Sears knew or should have known that consumers like Plaintiffs and Class members expected the Lawnmowers to be usable without putting consumers' lives and property at risk, and expected that the Lawnmowers were safe to use and store on or in consumers' property.

43.    Sears knew or should have known that consumers expected Sears to disclose any Defects that would prevent the Lawnmowers from safely performing their function prior to the end of their expected useful lives, or Defects that would seriously threaten Plaintiffs' and Class members' safety, as such disclosure by Sears would impact a reasonable customer's decision whether to purchase one of the Lawnmowers.

44.    As a result of Sears' concealment of the Defect, many Class members remain unaware of the existence of the Defect and that it poses unreasonable risks of property damage, personal injury and/or death during normal use.

45.    Had Plaintiffs and Class members been made aware of the serious safety Defect within the Lawnmowers, they would not have purchased the Lawnmowers or would have paid substantially less for the Lawnmowers.

46.    Sears' conduct has harmed Plaintiffs and Class members and has left consumers throughout the United States with a serious safety risk to the consumers' property and persons.

## Sears' Actual or Constructive Knowledge of the Defect

47.     Sears either knew or should have known at the time that it sold the Lawnmowers to the public that they contained a Defect, and that the Defect caused the Lawnmowers to function improperly during their expected useful life, represented an unreasonable risk of igniting, and could cause property damage, personal injury, and death to consumers and the public.

48.     As described herein, Sears was aware that its Lawnmowers were defective, and that the Defect posed unreasonable risks of property damage, personal injury, and/or death during normal use.  Sears' knowledge of such facts is established through, *inter alia,* a consent decree it entered into with the government, various prior recalls of Craftsman lawnmowers prone to catch fire, insurance subrogation claims, and customers' postings and complaints relating to their lawnmowers catching on fire.  Despite its knowledge, Sears did not remedy or eliminate the Defect in its Lawnmowers, or remove the Lawnmowers from the stream of commerce.

49.     For example, in 2004, Defendant Sears, Roebuck and Co. entered into a settlement agreement with the U.S. Consumer Product Safety Commission in connection with Craftsman riding mowers that were sold by Sears.  The lawnmowers were found to contain a defect whereby they leaked fuel, which could ignite and pose a fire hazard to users.  From 1999 to 2001, Sears received approximately 1,600 reports of fuel leakage associated with the lawnmowers.  Pursuant to the settlement, Sears agreed to pay a civil penalty of $500,000.  *See Federal Register*, Vol. 69, No. 195, Oct. 8, 2004.

50.     Significantly, there have been several fire-related recalls of lawnmowers made by Husqvarna Outdoor Products, Inc., which manufactures riding lawnmowers under the Craftsman name, some of which were sold by Sears.  In a recall announced on December 6, 2004, the

lawnmowers were recalled on the grounds that they could develop abrasions on the fuel tank as a
result of the fuel line's clamp location.  Four reports of leaking fuel tanks were received.  *See*
www.cpsc.gov/cpspub/prerel/prhtml05/05061.html.  Also, on July 11, 2006, there was another
announcement of a recall of lawn tractors sold under the Craftsman name by various retailers and
home centers, like Sears.  It was determined that the fuel line on these lawn tractors could
separate from the fuel tank outlet, thus causing fuel to spill out and pose a fire hazard.  Eight
Hundred and Eighty Six (886) reports of separated fuel lines, sixteen (16) reports of fires, and
three (3) reports of personal injuries were received.  About 174,000 affected products were sold
from        September        2005        through        June        2006.        *See*
www.cpsc.gov/cpscpub/prerel/prhtml06/06207.html.  And then, again, on July 27, 2010, another
recall of riding tractors by Husqvarna was announced after determining that the fuel line on the
rear mounted fuel tank is too long and can come in contact with moving parts, thus posing a fire
hazard.   Fifty   three   (53)   reports   of   fuel   line   damage   were   received.   *See*
www.cpsc.gov/cpscpub/prerel/prhtml10/10748.html.

51.     Given that Sears sells lawnmowers under the Craftsman name, some of which
were made by Husqvarna, Sears knew or should have known about these recalls and the fire
hazards that were posed by its Lawnmowers.

52.     There are also several lawsuits that have been brought against Husqvarna - one of
the makers of the Sears' Craftsman riding mowers – in connection with the lawnmowers
catching on fire.  *See, e.g.*, *State Farm Insurance Companies. v. Husqvarna Consumer Outdoor
Products, N.A., Inc.*, No. 12-cv-5122 (S.D.N.Y.); *Neil v. Husqvarna U.S. Holding, Inc.*, No.
4:10-cv-1426-DDN (Circuit Ct. Mo.).

14

53.    In May 2008, Nationwide Mutual Fire Insurance Co. filed an Amended Complaint against Sears, Roebuck and Co. and Husqvarna, whereby Nationwide was acting as subrogee to persons who suffered damage to real and personal property as a result of a fire that was caused by a malfunction in their lawnmower.  Nationwide asserted the legal claim against Sears for negligent manufacture and design of the lawnmower.  *See Nationwide Mutual Fire Insurance Co., v. Sears, Roebuck & Co.*, 2008 WL 2814458 (D. Del. May 13, 2008).

54.    In addition to the customer complaints that prompted the product recalls mentioned above, there are also many customer complaints appearing on the Internet regarding Craftsman riding mowers catching fire, spanning over a period of many years.  As just a few examples of customers' complaints:

a.    "Craftsman Riding Lawnmower caught fire 10/24/2011 while caller's husband was riding on it and cutting grass."  *See* www.saferproducts.gov/View-Incident/1210664.

b.    "I have a Husqvarna LGT 2554 that literally just went up in flames (as in nothing left)."  *See* www.mytractorforum.com/archive/index.php/t-174247.html (Feb. 2011).

c.    "So I started it up, then left it running to get my gloves and when I came back around the corner it was burning underneath the hood.  I ran back and got my fire extinguisher but by that time it was burning pretty well.  I finally got the fire out but by that time it had been burning pretty well for a few minutes.  Flames had spread to the gas tank which luckily had very little fuel in it.    It's a total mess now."  *See* www.tractorbynet.com/forums/craftsman-sears/116343-wow-craftsman-garden-tractor-caught.html (Feb. 2008).

   d.  *See*  www.bangordailynews.com/2011/08/27/news/firefighters-tackle-lawn-mower-fire-in-rumford (Aug. 2011).

   e.  Videos of Craftsman riding mowers which have caught fire also appear on Youtube. *See, e.g.*, www.youtube.com/watch?v = v81iB91tU-Q (Sears' Craftsman, July 2, 2009); www.youtube.com/watch?v=0A76S1pJ7zM (Sears' Craftsman, July 27, 2008); www.youtube.com/watch?v – g8C6dU7Mx6l (Sears' Craftsman GT5000, Sept. 18, 2006).

  55. Based upon the above facts, as well as the fact that Sears has extensive experience in designing and selling riding lawnmowers, Sears knew or should have known that the Lawnmowers contained the material safety Defect which makes them prone to ignite and cause damage.

  56. Sears has a duty to consumers and the public to disclose the defective nature of its Lawnmowers and to not conceal and suppress the defective nature of its Lawnmowers from Plaintiffs and Class members, thereby placing Plaintiffs and Class members at risk of personal injury and property damage.

  57. To this day, Sears continues to sell the defective Lawnmowers, conceals the Defect, fails to notify consumers of the existence of the Defect, fails to recall the Lawnmowers, and fails to offer to replace the defective components with defect-free components or to replace the entire Lawnmowers.

  58. Upon information and belief, Sears has taken no action whatsoever to remedy this safety Defect in the Lawnmowers.

  59. Moreover, Sears continues to falsely represent to purchasers and the public through written warranties that the Lawnmowers are free from defects, will perform dependably for years, and are of merchantable quality.

60.     Sears continues its concealment and misrepresentations so that members of the
Class and potential consumers remain unaware of the Defect and the serious hazard it poses.

61.     Instead of recalling or retrofitting the Lawnmowers, or warning consumers of the
dangers of its Lawnmowers, Sears warrants that its Lawnmowers are free from defects and are of
merchantable material and workmanship.

62.     Upon information and belief, when corresponding with customers, Sears does not
disclose that the Lawnmowers contain a material Defect that can cause fuel leakage and
ultimately fire hazards.  Further, Sears represents to its customers that the Lawnmowers have no
recalls when customers inquire about potential safety defects associated with the Mowers.

63.     As a result, reasonable consumers, including Plaintiffs and Class members,
purchased and continue to purchase the Lawnmowers for residential use, and continue to store
the Lawnmowers on and in their properties although it is unsafe to do so.

64.     Sears has wrongfully placed on Plaintiffs and Class members the burden, expense,
and difficulties involved in diagnosing potential problems with their Lawnmowers, repairing and
replacing the Lawnmowers, as well as paying for the cost of damages the Defect has caused.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this action individually and as a class action pursuant to FED. R.
CIV. P. 23(a), 23(b)(2), and 23(b)(3)[1] on behalf of the following Class:

> During the fullest period allowed by law, all persons in the United States who
> purchased or otherwise acquired a Sears Craftsman Riding Lawnmower (defined
> herein) having the Defect, primarily for personal, family, or household purposes.
> (Hereinafter, the "Class").

66.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this
action, and members of their families; (b) Sears and any entity in which Sears has a controlling

---

[1] Alternatively, Plaintiffs may seek certification pursuant to Fed. R. Civ. P. 23(c)(4).

Case 1:15-cv-04519    Document 1-1    Filed: 05/21/15    Page 18 of 35    PageID #:18

interest, or which has a controlling interest in Sears; (c) the officers, directors or employees of Sears; (d) Sears' legal representatives, assigns and successors; and (e) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

67.    Plaintiffs reserve the right to narrow or expand the foregoing Class definition, or to create subclasses as the Court deems necessary.

68.    Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

69.    <u>Numerosity</u>: While the exact number of Class members cannot be determined without discovery, the Class consists of thousands of people dispersed throughout the United States.  The exact number of Class members can readily be determined upon review of sales information and other records maintained by Sears.  The Class members are therefore so numerous that joinder of all members is impracticable.

70.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class.  These common questions will have common answers for all Class members.  Among the questions of law and fact common to the Class are:

a.    Whether the Lawnmowers designed and/or sold by Sears possess a material Defect;

b.    Whether the Defect represents an unreasonable risk of igniting, burning and causing fire;

c.    Whether Sears knew or should have known that the Lawnmowers possessed the Defect when it placed the Lawnmowers into the stream of commerce;

d.    Whether Sears fraudulently concealed the Defect from consumers;

e.    Whether Sears breached express warranties relating to the Lawnmowers;

f.      Whether Sears breached implied warranties of merchantability relating to the Lawnmowers;

g.      Whether Sears is negligent for designing and selling defective Lawnmowers;

h.      Whether Sears is strictly liable for selling defective Lawnmowers;

i.      Whether Plaintiffs and Class members are entitled to damages, including compensatory, exemplary, and statutory damages;

j.      Whether Plaintiffs and Class members are entitled to replacement or repair of their defective Lawnmowers; and

k.      Whether Plaintiffs and Class members are entitled to equitable relief, including an injunction and requiring that Sears engage in a corrective notice campaign and/or a recall.

71.     Typicality:  Plaintiffs have the same interests in this matter as all other members of the Class, and Plaintiffs' claims arise out of the same set of facts and conduct by Sears as all other members of the Class.  Plaintiffs and all Class members own or owned a Lawnmower designed and/or manufactured by Sears with a uniform Defect that makes them immediately dangerous upon purchase and that causes the Lawnmowers to fail within their expected useful lives and ignite, burn, catch on fire, cause personal injury, and/or burn consumers' homes and other real and personal property.  The claims of Plaintiffs and Class members arise out of Sears' placement into the marketplace of a product that was defective and that caused a safety risk to consumers, and from Sears' failure to disclose that known safety risk and Defect.  As a result of Sears' conduct, Plaintiffs and Class members did not receive the benefit of their bargain.  Also common to Plaintiffs' and Class members' claims is Sears' conduct in designing, manufacturing,

Case: 1:15-cv-04519 Document #: 1 Filed: 05/21/15 Page 20 of 35 PageID #:20

marketing, advertising, warranting and/or selling the defective Lawnmowers; Sears' conduct in concealing the Defect in the Lawnmowers; and Plaintiffs' and Class members' purchases of the Lawnmowers.

72. <u>Adequacy of Representation</u>: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in consumer and product liability class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class members they seek to represent. Plaintiffs have no disabling conflicts with the members of the Class, and will fairly and adequately represent the interests of the Class.

73. <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Sears will continue to commit the unlawful practices alleged herein, and the members of the Class and the general public will continue to remain at an unreasonable and serious personal safety and property damage risk as a result of the Defect. Sears has acted and refused to act on grounds that apply generally to the Class members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

74. <u>Predominance</u>: The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is the superior method for the fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible.

Individualized rulings and judgments could result in inconsistent relief for similarly situated
plaintiffs. Plaintiffs' counsel, who are highly-experienced in class action litigation, foresee little
difficulty in the management of this case as a class action.

### The Statutes of Limitation are Tolled Due to the Discovery Rule, Sears' Fraudulent Concealment of the Defect in its Lawnmowers, and Principles of Estoppel

75.    The claims alleged herein accrued upon discovery of the defective nature of the
Lawnmowers, which manifested itself when the Lawnmowers ignited and caught fire. Because
the Defect alleged herein is hidden, and, as described above, Sears failed to disclose the true
character, nature, and quality of the Lawnmowers, among other reasons, Plaintiffs and Class
members did not discover and could not have discovered the Defect alleged herein through
reasonable and diligent investigation. Plaintiffs' own visual examinations of the Lawnmowers
when purchased, as well as their continued use and maintenance of the Lawnmowers, did not
reveal the defective nature of the Lawnmowers.

76.    Any applicable statutes of limitations have been tolled by Sears' knowledge and
actual misrepresentations and/or concealment and denial of the facts as alleged herein, which
concealment is ongoing. Plaintiffs and Class members could not have reasonably discovered the
true defective nature of the Lawnmowers. As a result of Sears' active concealment of the
Defects and/or failure to inform Plaintiffs and Class members of the defects, any and all statutes
of limitations otherwise applicable to the allegations herein have been tolled.

77.    Alternatively, the facts alleged herein give rise to principles of estoppel. Sears
has actively and fraudulently concealed the defective nature of the Lawnmowers. Sears was and
is under a continuous duty to disclose to Plaintiffs and Class members the true character, quality,
and nature of the Lawnmowers, particularly that they pose a serious risk to public safety and of
igniting, burning and fire. At all relevant times, and continuing to this day, Sears knowingly,

affirmatively, and actively misrepresented and concealed the true character, quality, and nature
of the Lawnmowers. Given Sears' failure to disclose this non-public information about the
defective nature of the Lawnmowers—information over which it has exclusive control—and
because Plaintiffs and Class members could not reasonably have known that the Lawnmowers
were defective, Plaintiffs reasonably relied on Sears' knowing affirmative and/or ongoing
concealment. Based on the foregoing, Sears is estopped from prevailing on any statute of
limitations defense in this action.

78.     Additionally, Sears is estopped from raising any defense of laches due to its own
unclean hands as alleged herein.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF:
### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiffs and the Class)

79.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth
herein.

80.     In connection with its sale of Lawnmowers, Sears expressly warranted that the
Lawnmowers were free from defects, were made for years of dependable operation, and
consisted of merchantable material and workmanship.

81.     Specifically, in Sears' "Repair Parts Manual" that was provided to buyers of the
Lawnmowers upon sale, Sears expressly warranted that: "Congratulations on making a smart
purchase. Your new Craftsman® product is designed and manufactured for years of dependable
operation."

82.     Also, in Sears' "Operator's Manual" that was provided to buyers of the
Lawnmowers upon sale, Sears warranted that the Lawnmowers were free from any defects, and

would remain free from any defects for at least two years.  Sears states:  "Craftsman Full

Warranty.  FOR TWO YEARS from the date of purchase, all non-expendable parts of this riding

equipment are warranted against any defects in material or workmanship.  A defective non-

expendable part will receive free in-home repair or replacement if repair is unavailable."  *See*

www.craftsman.com/cswarranty/nb - Lawn and Garden Equipment, item 38.

83.    This same Manual states: "Warranty Service.  In all cases above, if part repair or

replacement is impossible, the riding equipment will be replaced free of charge with the same or

an equivalent model."

84.    The Manual refers to expendable parts as those that can wear out from normal

use, such as blades, spark plugs, air cleaners, belts and oil filters.

85.    The Lawnmowers' Defect makes the entire Lawnmowers defective, and the

Lawnmowers are covered by Sears' Full Warranty, set forth above.

86.    The Full Warranty made by Sears was uniform among the Lawnmowers sold.

87.    Upon information and belief, each Lawnmower had an identical or substantially

identical warranty, and/or the material terms of the warranties do not differ.

88.    Plaintiffs and members of the Class have privity of contract with Sears through

their purchase of Lawnmowers from Sears, and through the express written and implied

warranties that Sears issued to its customers.  Sears' warranties accompanied the Lawnmowers,

and were intended to benefit the ultimate consumers of the Lawnmowers.

89.    The express written warranties covering the Lawnmowers were material and were

part of the bargain between Sears, on the one hand, and Plaintiffs and Class members, on the

other hand.  At the time it made these express warranties, Sears knew of the purpose for which

the Lawnmowers were to be used.

90.     Sears breached its express warranties when it failed to sell Lawnmowers that were free of defects, were made for years of dependable operation, were of merchantable material and workmanship, and which could be used for their ordinary purpose of mowing grass without failure or risk of fire.  Sears breached its express written warranties to Plaintiffs and Class members in that the Lawnmowers contain a Defect upon the very first day of purchase, create a serious safety risk to Plaintiffs and consumers, and fail to perform as represented by Sears.

91.     Within the express warranty period, all Plaintiffs and Class members purchased Lawnmowers that contained the Defect.

92.     As set forth above, Sears also expressly warranted in writing that it would repair or replace any Defects in the Lawnmowers, or replace the entire Lawnmower if the repairs or replacement of defective parts is impossible.

93.     Sears breached its express warranty to repair or replace the defective Lawnmowers when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for retrofits.

94.     Also, the warranty of repair or replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class members whole, and/or because Sears has failed to provide the promised remedy within a reasonable time.

95.     Many of the damages resulting from the defective Lawnmowers cannot be resolved through the limited remedy of repair or replacement, as those incidental and consequential damages have already been suffered due to Sears' conduct as alleged herein.

96.     Accordingly, recovery by Plaintiffs and Class members is not limited to the limited warranty of repair or replacement, and they seek all remedies allowed by law.

97.     Upon information and belief, Sears received notice and has been on notice of the
Defect and of its breaches of express and implied warranties through customer warranty claims
reporting problems with the Lawnmowers, customer complaints, and its own internal and
external testing.  Sears also received such notice through its consent decree entered into with the
U.S. Consumer Product Safety Commission, various prior recalls of Craftsman mowers prone to
catch fire, insurance subrogation claims, and customers' complaints appearing on the Internet, as
described above.  As detailed above, Sears also received such notice from Plaintiffs, who
complained to Sears about their defective Lawnmowers and the damages that the Lawnmowers
caused.

98.     Despite such notice and its knowledge of the Defect, Sears failed to provide
Defect-free Lawnmowers to Plaintiffs and Class members, failed to provide free repairs of the
defective Lawnmowers, and failed to provide any form of compensation for the damages
resulting from the Defect.

99.     As a result of Sears' breach of its express written warranties, Plaintiffs and Class
members have suffered damages.

**SECOND CLAIM FOR RELIEF:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiffs and the Class)**

100.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth
herein.

101.     The Lawnmowers purchased by Plaintiffs and Class members were defectively
designed and manufactured, and posed a serious and immediate safety risk to consumers and the
public.

25

102.   The Lawnmowers left Sears' facilities and control with a Defect caused by a defective design incorporated into the manufacture of the Lawnmowers.

103.   The Defect places Plaintiffs and Class members at a serious safety and property damage risk upon using the Lawnmowers on their lawns in a manner reasonably foreseeable by Sears, or storing them on or in their properties.

104.   At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer's or seller's product be merchantable and reasonably fit for the ordinary purposes for which such products are used, and that the product be acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis for the bargain between Sears, on the one hand, and Plaintiffs and Class members, on the other hand.

105.   Notwithstanding the aforementioned duty, at the time of delivery, Sears breached the implied warranty of merchantability in that the Lawnmowers were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used of safely mowing grass in a residential setting, and failed to conform to the standard performance of like products used in the trade.

106.   Sears knew or should have known that the Lawnmowers posed a safety risk and were defective, and knew or should have known of these breaches of implied warranties at the time of its sale of the Lawnmowers to Plaintiff and Class members.

107.   In the Operator's Manual that accompanied the Lawnmowers and that was given to buyers upon sale, Sears did not limit or exclude any implied warranties in any way.

108.   Plaintiffs and members of the Class have privity of contract with Sears through their purchase of the Lawnmowers from Sears, and through the express written and implied

warranties that Sears issued to its customers.  Sears' warranties accompanied the Lawnmowers,
and were intended to benefit the ultimate consumers of the Lawnmowers.

109.   As a direct and proximate result of Sears' breaches of its implied warranties,
Plaintiffs and Class members bought the Lawnmowers without knowledge of the Defect or their
serious safety risks.

110.   As a direct and proximate result of Sears' breach of its implied warranties,
Plaintiffs and Class members purchased defective and unsafe Lawnmowers which could not be
used for their intended use of mowing grass in a residential setting.

111.   Upon information and belief, Sears received notice and has been on notice of the
Defect and of its breaches of express and implied warranties through customer warranty claims
reporting problems with the Lawnmowers, customer complaints, and its own internal and
external testing.  Sears also received such notice through its consent decree entered into with the
U.S. Consumer Product Safety Commission, various prior recalls of Craftsman mowers prone to
catch fire, insurance subrogation claims, and customers' complaints appearing on the Internet, as
described above.  As detailed above, Sears also received such notice from Plaintiffs, who
complained to Sears about the defective Lawnmowers and the damages that the Lawnmowers
caused.

112.   Despite such notice and its knowledge of the Defect, Sears failed to provide
Defect-free Lawnmowers to Plaintiffs and Class members, failed to provide free repairs of the
defective Lawnmowers, and failed to provide any form of compensation for the damages
resulting from the Defect.

113.   As a direct and proximate result of Sears' breach of its implied warranties,
Plaintiffs and Class members have suffered damages.

**THIRD CLAIM FOR RELIEF:**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Class)**

114.  Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

115.  Sears owed a duty to Plaintiffs and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Lawnmowers with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class members from foreseeable and unreasonable risk of harm.  Sears breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and selling the Lawnmowers.

116.  Sears also acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought.  In addition, at the time the Lawnmowers left the control of Sears, the Lawnmowers, without an adequate warning or instruction, created an unreasonably dangerous condition that Sears knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable person.  Sears knew or should have known that the Lawnmowers it designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold, in ordinary and foreseeable use, created an unreasonable safety risk and would fail to perform as intended.

117.  At the time of the design or manufacture of the Lawnmowers, Sears acted unreasonably in designing or formulating the product, and this conduct was a proximate cause of the harm for which damages are sought.  Further, at the time the product left the control of Sears, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have

28

prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product. Furthermore, at the time the product left the control of Sears, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

118.  Sears knew or should have known that the Lawnmowers created an unreasonable safety risk as the Lawnmowers had a Defect causing them to ignite and burn. Sears further knew or should have known that the Lawnmowers had a Defect which could cause property damage, personal injury, and/or death.

119.  Based on its knowledge, Sears had a duty to disclose to Plaintiffs and Class members the serious safety risks posed by the Lawnmowers, and a duty to disclose the defective nature of the Lawnmowers.

120.  Sears had a further duty not to put the defective Lawnmowers on the market and has a continuing duty to remove its unsafe Lawnmowers from the market and seek a recall from consumers.

121.  Sears failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Lawnmowers by, among other things, failing to design and manufacture the Lawnmowers in a manner to ensure that, under normal intended usage, a serious safety risk such as the one posed by the Defect did not occur.

122.  Sears failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, users of the Defect in its Lawnmowers.

123.   Sears failed to exercise reasonable care when it knew of the safety risks the
Lawnmowers posed, and actively concealed those risks from Plaintiffs and Class members.

124.   Sears failed to exercise reasonable care when it knew of the safety risks the
Defect posed, and failed to replace, repair or recall Lawnmowers it knew or should have known
were unsafe and defective.

125.   As a direct and proximate result of Sears' negligence, Plaintiffs and Class
members bought the Lawnmowers without knowledge of the Defect or of the serious safety risks
it caused.

126.   As a direct and proximate result of Sears' negligence, Plaintiffs and Class
members purchased defective and unsafe Lawnmowers which could not be used for their
intended use.

127.   As a direct and proximate result of Sears' negligence, Plaintiffs and Class
members have suffered damages.

### FOURTH CLAIM FOR RELIEF:
### UNJUST ENRICHMENT
#### (On Behalf of Plaintiffs and the Class)

128.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth
herein.

129.   This claim is asserted in the alternative on behalf of Plaintiffs and members of the
Class to the extent there is any determination that any contracts do not govern the subject matter
of the disputes with Sears, or that Plaintiffs do not have standing to assert any contractual claims
asserted against Sears.

130.   Plaintiffs and members of the Class conferred a benefit on Sears, of which benefit
Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the

defective Lawnmowers, Sears was unjustly enriched at the expense of Plaintiffs and the members

of the Class.

131.    Plaintiffs' and Class members' detriment and Sears' enrichment were related to

and flowed from the wrongful conduct alleged in this Complaint.

132.    It would be inequitable for Sears to retain the profits, benefits, and other

compensation obtained from its wrongful conduct as described herein in connection with selling

the Lawnmowers.

133.    Plaintiffs and members of the Class seek restitution from Sears and an order of

this Court proportionally disgorging all profits, benefits, and other compensation obtained by

Sears from its wrongful conduct, and establishing a constructive trust from which Plaintiffs and

Class members may seek restitution.

## FIFTH CLAIM FOR RELIEF:
## STRICT LIABILITY – MANUFACTURING AND DESIGN DEFECT AND FAILURE TO WARN
### (On Behalf of Plaintiffs and the Class)

134.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

herein.

135.    Sears designed, manufactured, and/or sold the Lawnmowers to Plaintiff and the

Class.

136.    The Lawnmowers were defective in their manufacture and design, and contained

the Defect when they left Sears' control.

137.    Sears knew or should have known that the Lawnmowers were defective and posed

a serious and real risk of ignition and fire during their regular use.

138.    Sears failed to inform Plaintiffs and the Class about the Lawnmowers'

susceptibility to ignition, thus causing fire and possible explosion.

31

139.     The Lawnmowers were defective due to inadequate warnings, inadequate

inspection and testing, and inadequate reporting regarding the results of quality control testing,

or lack thereof.

140.     Had Plaintiffs and Class members been adequately warned concerning the

likelihood that the Lawnmowers would catch fire, they would have taken steps to avoid damages

by not purchasing them.

141.     Once learning that its Lawnmowers could ignite and catch fire, Sears had a duty

to warn consumers of the possibility that catastrophic injury to persons and property could result

from the Defect in the Lawnmowers, even when used for their intended purpose.

142.     As a direct and proximate result of the defective condition of the Lawnmowers,

Plaintiffs and the Class have incurred or at risk of incurring damages to their persons and to their

personal and real property in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF:**
**INJUNCTIVE AND DECLARATORY RELIEF**
**(On Behalf of Plaintiffs and the Class)**

143.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

herein.

144.     There is an actual controversy between Sears and Plaintiffs concerning the

existence of Defects in the Lawnmowers.

145.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought."

146.     Accordingly, Plaintiffs and Class members seek a declaration that the

Lawnmowers have a common Defect in their design and/or manufacture.

147.     Additionally, Plaintiffs and Class members seek a declaration that this common Defect in the Lawnmowers poses a serious safety risk to consumers and the public.

148.     Sears designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Lawnmowers which contain a material and dangerous Defect as described herein. Based upon information and belief, Sears continues to design, manufacture, produce, test, inspect, market, distribute, and sell Lawnmowers which contain a material and potentially dangerous Defect as described herein.

149.     Based upon information and belief, Sears has taken no corrective action concerning the Defect described herein, and has not issued any warnings or notices concerning the dangerous Defect, nor implemented a product recall.

150.     Plaintiffs and Class members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Defects.  Sears should be required to take corrective action to prevent further injuries, including:  (a) issuing a nation-wide recall of the Lawnmowers; (b) issuing warnings and/or notices to consumers and the Class concerning the Lawnmowers' Defect;  and  (c)  immediately  discontinuing  the  manufacture,  production, marketing, distribution, and sale of the defective Lawnmowers described herein.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.     An Order certifying this action as a class action;

B.     An Order appointing Plaintiffs as Class representatives, and appointing undersigned counsel as Class counsel to represent the Class;

C.     A Declaration that the Lawnmowers are defective;

D.     An Order awarding injunctive relief by requiring Sears to issue corrective actions, including notification, recall, inspection, and, as necessary, repair and replacement of the Lawnmowers;

E.     Payment to Plaintiffs and the Class of all damages associated with or caused by the defective Lawnmowers, in amounts to be proven at trial;

F.     An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

H.     Such other and further relief as this Court may deem just, equitable, or proper.

Dated: May 21, 2015                     RESPECTFULLY SUBMITTED,


                                        /s/ Edward A. Wallace
                                        Edward A. Wallace
                                        Amy E. Keller
                                        WEXLER WALLACE LLP
                                        55 West Monroe, Suite 3300
                                        Chicago, IL 60603
                                        Tel: 312-589-6272
                                        Fax: 312-346-0022
                                        eaw@wexlerwallace.com
                                        aek@wexlerwallace.com

Gregory F. Coleman
Adam Edwards (*pro hac vice* to be filed)
Lisa A. White (*pro hac vice* to be filed)
GREG COLEMAN LAW PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Tel: 865-247-0080
Fax: 865-522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Shanon J. Carson
Michael T. Fantini (*pro hac vice* to be filed)
Jeff Osterwise (*pro hac vice* to be filed)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel: 215-875-3000
Fax: 215-875-4604
scarson@bm.net
mfantini@bm.net
josterwise@bm.net

*Attorneys for Plaintiffs and the proposed Class*