SORLING NORTHRUP
David A. Rolf, of Counsel
Patrick M. Ryan, of Counsel
1 N. Old State Capitol, Suite 200
P.O. Box 5131
Springfield, IL  62705-5131
Telephone:  217-544-1144
Facsimile:  217- 522-3173
Email: darolf@sorlinglaw.com
          pmryan@sorlinglaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SEARS HOLDINGS CORPORATION, *et al*., | ) | Case No. 18-23538 (RDD) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

_____


**NOTICE OF MOTION OF CHARLES PUGH, NICOLE PUGH, JACK PUGH, SAM PUGH, AND CHARLES F. PUGH FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ABSTENTION, AND OPPOSITION TO DEBTORS' <u>MOTION TO EXTEND THE AUTOMATIC STAY</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      A hearing to consider the motion (the "Motion") of Charles Pugh, Nicole Pugh, Jack Pugh, Sam Pugh, and Charles F. Pugh (the "Pugh Individuals"), for relief from the automatic stay, pursuant to Section 362(d)(1) of the United States Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, and Local Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, or in the alternative, for the Court to abstain, pursuant to Sections 1334(c)(1) and (2) of the Bankruptcy Code, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on January 18, 2019, at 10:00 a.m.

2.      Objections, if any, to the Motion must be made in writing, with a hard copy delivered to the Chambers of the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601; conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; be filed with the Bankruptcy Court; and be served in accordance with the provisions of General Order M-399 of this Court on the following parties:

> Chambers of the Honorable Judge Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601;
>
> Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates, Illinois 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.);
>
> Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jaqueline Marcus, Esq. Garret A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors;
>
> The Office for the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.);

Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R. Howard, Esq.), attorneys for Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent;

Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.), attorneys for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility;

Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 (Attn: Sean A. O'Neal, Esq.), attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility;

Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.), attorneys for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes;

Seyfarth Shaw LLP, 620 Eighth Avenue, New York, New York 10018 (Attn: Edward M. Fox, Esq.), attorneys for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes;

Carter Ledyard & Milburn LLP, 2 Wall Street, New York, New York 10015 (Attn: James Gadsden, Esq.), attorneys for The Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes;

Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Brian A. Raynor, Esq.), attorneys for the Pension Benefit Guaranty Corporation;

Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff, Esq., Philip C. Dublin, Esq., Abid Qureshi, Esq., Joseph L. Sorkin, Esq.), attorneys for the Official Committee of Unsecured Creditors;

Prime Clerk LLC (Attn: Adam M. Adler), Claims and Noticing Agent, 830 Third Avenue, 9th Floor, New York, NY 10022;

(a) Goldberg Segalla, LLP, 8000 Maryland Street, Suite 640, St. Louis, Missouri 63105 (Attn: Paul L. Knobbe), attorneys for Defendant Electrolux Home Products, Inc.; (b) Bollinger Connolly Krause LLC, 500 West Madison Street, Suite 2430, Chicago, Illinois 60661 (Attn: Gregory V. Ginex), attorneys for Defendant HomeDeliveryLink, Inc.; (c) O'Hagan, LLC, One East Wacker Drive, Suite 3400, Chicago, Illinois 60601 (Attn: Lucas Sun), attorneys for Defendants A&E Factory Service, LLC and Sears, Roebuck and Co.;

The attorneys for any other committee(s) that may be appointed in these chapter 11 cases;

Any person or entity with a particularized interest in the subject matter of the relevant document; and

All persons and entities that have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002 and the Case Management Procedures,

so as to be actually received by them not later than January 11, 2019 (the "Objection Deadline").

3.      If no objections are timely filed and served, the Pugh Individuals may, on or after

the Objection Deadline, submit the proposed order to the Court substantially in the form attached

hereto, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: December 11, 2018                          SORLING NORTHRUP

                                                 By:  _/s/ Patrick M. Ryan_____
                                                     David A. Rolf
                                                     Patrick M. Ryan
                                                     One North Old State Capitol, Suite 200
                                                     Post Office Box 5131
                                                     Springfield, IL 62705-5131
                                                     Telephone: (217) 544-1144
                                                     Facsimile: (217) 522-3173
                                                     Email: darolf@sorlinglaw.com
                                                             pmryan@sorlinglaw.com

                                                 *Attorneys for Movants Charles Pugh, Nicole Pugh, Jack Pugh, Sam Pugh, and Charles F. Pugh*

SORLING NORTHRUP
David A. Rolf, of Counsel
Patrick M. Ryan, of Counsel
1 N. Old State Capitol, Suite 200
P.O. Box 5131
Springfield, IL  62705-5131
Telephone:  217-544-1144
Fax:  217-522-3173
Email:  darolf@sorlinglaw.com
          pmryan@sorlinglaw.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |


**MOTION OF CHARLES PUGH, NICOLE PUGH, JACK PUGH, SAM PUGH, AND
CHARLES F. PUGH FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE
<u>ALTERNATIVE, FOR ABSTENTION</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     JURISDICTION AND VENUE ................................................................................. 3

III.    BACKGROUND ....................................................................................................... 3

IV.     ARGUMENT ............................................................................................................ 6

        A.      RELIEF FROM THE AUTOMATIC STAY IS WARRANTED ......................... 6

                1.      Standard for Relief to Continue State Court Litigation ............................ 6

                2.      The Sonnax Factors Applicable To This Case Support Lifting The
                        Stay ......................................................................................................... 9

        B.      IN THE ALTERNATIVE, IF THE STAY IS NOT LIFTED AS TO
                DEBTORS, IT SHOULD BE LIFTED AS TO THE NON-DEBTOR
                CODEFENDANTS ............................................................................................ 17

                1.      The Automatic Stay Extends Only To Debtors ...................................... 17

                2.      Absent Unusual Circumstances, Courts Refrain From Extending
                        The Stay To Non-Debtor Codefendants ................................................. 19

        C.      THIS COURT SHOULD ABSTAIN FROM HEARING THE ILLINOIS
                ACTION IF IT IS REMOVED FROM STATE COURT ................................... 21

                1.      Mandatory Abstention Is Required In This Case ...................................... 21

                2.      This Court Should Permissively Abstain From Hearing The Illinois
                        Action If It Is Removed From The Circuit Court .................................... 22

V.      NOTICE .................................................................................................................. 24

VI.     CONCLUSION ....................................................................................................... 25

## Cases

*Acker v. Wilger*, 2012 U.S. Dist. LEXIS 161628, at *2–3 (S.D.N.Y. Oct. 25, 2012) .................. 18

*Demel v. Group Benefits Plan for Employees of Northern Telecom, Inc.*, 07 Civ. 0189
(GBD), 2010 U.S. Dist. LEXIS 2340, at *2 (S.D.N.Y. Jan. 8, 2010)............................. 18

*Hounddog Productions L.L.C. v. Empire Film Group, Inc.*, 767 F. Supp. 2d 480
(S.D.N.Y. 2011) .......................................................................................... 17

*In re 234-6 West 22nd St. Corp.*, 214 B.R. 751 (Bankr. S.D.N.Y. 1997)...................................... 7

*In re Artisanal 2015, LLC*, 2017 Bankr. LEXIS 3813, at *48.............................................. 12, 14

*In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *48 (Bankr.
S.D.N.Y. Nov. 3, 2017) .............................................................................. 12

*In re Balco Ltd.*, 312 B.R. 734 (Bankr. S.D.N.Y. 2004).............................................................. 7

*In re Cicale*, No. 05-14462 (AJG), 2007 Bankr. LEXIS 2252, at *9–10 (Bankr. S.D.N.Y.
June 29, 2007) ................................................................................. 9, 10, 11, 15

*In re Dreier*, 438 B.R. 449 (Bankr. S.D.N.Y. 2010)........................................................... 15

*In re Fiber Optek Interconnect, No. 05-30045 (cgm)*, 2006 Bankr. LEXIS 2961, at *4–7,
*13 (Bankr. S.D.N.Y. Oct. 27, 2006) .......................................................... 13

*In re Hillsborough Holdings Corp.*, 130 B.R. 603 (Bankr. M.D. Fla. 1991) .............................. 18

*In re McCormick*, 381 B.R. 594 (S.D.N.Y. 2008) ........................................................... 18

*In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 Bankr. LEXIS 546, at *10
(Bankr. S.D.N.Y. Feb. 28, 2018) .................................................................. 11

*In re Ne. Indus. Dev. Corp.*, 513 B.R. 825 (Bankr. S.D.N.Y. 2014) ........................................... 22

*In re New York Medical Group, P.C.*, 265 B.R. 408 (Bankr. S.D.N.Y. 2001)...................... 13, 14

*In re Portrait Corporation of America, Inc.*, 406 B.R. 637 (Bankr. S.D.N.Y. 2009).................. 23

*In re Project Orange Associates, LLC*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010) .............. 6, 7, 12, 15

*In re Residential Capital, LLC*, 480 B.R. 529, 544 (Bankr. S.D.N.Y. 2012) ............................ 18

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3726, at *20–
21 (Bankr. S.D.N.Y. Aug. 14, 2012) ............................................................. 11

*In re Sonnax Industries*, 907 F.2d 1280 (2d Cir. 1990) .......................................................... 7, 13

*In re Taub*, 413 B.R. 55 (Bankr. E.D.N.Y. 2009) ................................................................... 10, 16

*In re UNR Industries, Inc.*, 23 B.R. 144 (Bankr. N.D. Ill. 1982) ................................................ 19

*In re Uvaydov*, 354 B.R. 620 (Bankr. E.D.N.Y. 2006) ................................................................ 7

*Montague Pipeline Technologies Corp. v. Grace/Lansing (In re Montague Pipeline Technologies Corp.)*, 209 B.R. 295 (Bankr. E.D.N.Y. 1997) ........................................... 15

*Musso v. Hirsch (In re Hirsch)*, No. 08-cv-4735(CBA), 2011 U.S. Dist. LEXIS 111561, at *34–36 (E.D.N.Y. Sep. 29, 2011) ................................................................................. 11

*Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1 (Bankr. E.D.N.Y. 2006) ............................................................................................................................... 14

*See Manhattan King David Rest. Inc. v. Levine*, 163 B.R. 36 (S.D.N.Y.1993) .............................. 7

*Tenas-Reynard v. Palermo Taxi, Inc.*, 2016 U.S. Dist. LEXIS 42423, at *14–17 (S.D.N.Y. Mar. 30, 2016) ................................................................................... 18, 19, 20

*Wynn v. AC Rochester General Motors, Corp.*, 155 Fed. App'x 528 (2d Cir. 2005) ............. 17, 18

## Statutes

11 U.S.C. § 362 ............................................................................................................. 1, 3, 6-7, 17

28 U.S.C. § 1334 ............................................................................................................. 1-3, 21-24

28 U.S.C. § 1408 ....................................................................................................................... 3

28 U.S.C. § 157 ......................................................................................................................... 3

750 ILCS 60/15 ...................................................................................................................... 5, 9

815 ILCS 505/1 ...................................................................................................................... 5, 9

## Rules

Federal Rules of Bankruptcy Procedure, Rule 4001 ................................................................ 1, 3

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, Rule 4001-1 .................................................................................................. 1

CHARLES PUGH, NICOLE PUGH, JACK PUGH, SAM PUGH, and CHARLES F. PUGH (hereinafter the "Pugh Individuals"), individual persons residing in the State of Illinois, parties in interest to this case, by and through their attorneys, Sorling Northrup, David A. Rolf and Patrick M. Ryan, of Counsel, pursuant to Section 362(d)(1) of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), hereby submits their motion requesting an order: (a) granting relief from the automatic stay to permit the Pugh Individuals to continue the prosecution of the Illinois Action (as defined below) against all of the defendants to that action; or (b) in the alternative, an order declaring that the action may proceed against non-Debtor defendants; and (c) abstaining from hearing this matter pursuant to 28 U.S.C. §§ 1334(c) (1) and (2). In support of this motion the Pugh Individuals state as follows:

## I.    <u>INTRODUCTION</u>

1.      This Motion for Relief from the Automatic Stay imposed by this Court pursuant to 11 U.S.C. § 362 is brought to obtain leave of this Court to permit the Pugh Individuals to continue their prosecution of their claims against debtors Sears, Roebuck & Co. ("Sears") and A&E Factory Service, LLC ("A&E", and together with Sears the "Debtors") in an action already pending in the Circuit Court of Christian County in the State of Illinois (the "Illinois Action"), Case No. 2016-L-3. The Pugh Individuals filed suit in 2016 alleging state law causes of action against Debtors and two other named defendants.

2.      Following the voluntary Chapter 11 cases commenced on October 15, 2018, by Sears Holding Corporation and its affiliates, including the Debtors, and administered jointly on this docket under Case Number 18-23538 (RDD) (the "Bankruptcy Actions"), counsel for

Debtors filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay (the "Notice") in the Illinois Action, asserting that the entirety of that Action was to be stayed pending the administration of the estate at issue in the Bankruptcy Actions (the "Bankruptcy Estate").

3.      This motion arises out of the commencement of the Bankruptcy Actions and the Notice filed by Debtors in the Illinois Action.  Specifically, the Pugh Individuals respectfully request that this Court lift or modify the stay as to the Illinois Action to permit that Action to proceed through discovery and judgment as to all defendants.  The law as concerns the automatic stay provision of the Bankruptcy Code clearly permits such relief where certain factors, such as judicial economy and the appropriateness of the state court forum for resolution of the action, weigh in favor of relief from the stay.

4.      In the event that this Court declines to grant the requested relief, it should nonetheless issue an order stating that the automatic stay does not extend to the non-Debtor defendants in the Illinois Action, and permitting that Action to proceed as to those defendants. As a matter of law, the automatic stay was never intended to extend so far as to protect a debtor's *non-debtor* codefendants in a separate action unrelated to the bankruptcy proceeding. In the Illinois Action, at least two such codefendants exist, and even in the event of a determination that the automatic stay not be lifted or modified as to Debtors in the Illinois Action, there is no legal basis for extending it to non-debtor codefendants.

5.      Furthermore, this Court should abstain from hearing the Illinois Action in the event that it is removed to this Court, pursuant to 28 U.S.C. § 1334(c) **Error! Bookmark not defined.**(2).  The Illinois Action is not a "core proceeding" invoking substantive rights under title 11, and is based solely on state law claims and state law causes of action.  For reasons set forth below, the Illinois Action could not have been commenced in federal district court at all.

6.      For these reasons and those set forth below, the Pugh Individuals respectfully request that this Court issue an order lifting or modifying the automatic stay to allow the Illinois Action to proceed against all defendants to that action, and if not against all defendants, to those non-Debtor defendants, or in the alternative, issue an order declaring that the stay does not extend to bar discovery and judgment against Debtors' non-debtor codefendants in the Illinois Action.  This Court must also abstain from hearing the Illinois Action in the event that any party seeks to remove it to this Court.

## II.      **JURISDICTION AND VENUE**

7.      This Court has jurisdiction of the subject matter hereof pursuant to 28 U.S.C. § 1334 (a) and (b).  This matter is "core" for the purposes of this motion pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).  The bases for this motion are 11 U.S.C. § 362(d)(1), 28 U.S.C. § 1334 (c)(1) and (2), Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-1. Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

## III.      **BACKGROUND**

8.      The factual background that follows is detailed in the Pugh Individuals' amended complaint filed on December 13, 2016 (the "Amended Complaint"), against defendants in the Illinois Action, attached hereto as **Exhibit 1**.  The initial complaint in that Action was filed on April 15, 2016, and was amended to correctly reflect the identity of one of the named defendants. *See* Ex. 1.  The factual allegations and causes of action pleaded in the Illinois Action have been summarized below, as relevant to the instant motion, although the merits of the Illinois Action are not at issue here—rather, this Motion only addresses the issue of whether the automatic stay should be lifted to allow the Pugh Individuals to proceed against Debtors and their non-debtor codefendants in the Illinois Action.

9.      As pleaded in the Amended Complaint, on or about March 15, 2010, the Pugh

Individuals purchased a new Kenmore free-standing natural gas oven from Sears, specifically

placing and paying for such order at the Sears store located in Forsyth, Illinois.  Ex. 1 at ¶ 2.

Pursuant to said purchase, Sears contacted the manufacturer of a Kenmore stove, Electrolux

Home Products, Inc. ("Electrolux H.P."), named as a defendant in the Illinois Action, to order

said stove for manufacture and delivery to the Pugh Individuals' residence in Stonington,

Christian County, Illinois.  Ex. 1 at ¶ 8.  At the time of Pugh Individuals' purchase, Sears

arranged for the delivery and hookup of the unit with HomeDeliveryLink, Inc. ("HDL"), also

named as a defendant in the Illinois Action.  Ex. 1 at ¶ 9.

10.      On or about March 31, 2010, HDL delivered and connected the Kenmore unit to

the gas line at the Pugh Individuals' residence.  Ex. 1 at ¶ 11.  This Kenmore unit bore Serial

No. NF01122028 and Model No. 79075403501, and was manufactured by Electrolux H.P.  Ex. 1

at ¶ 12.  The unit was manufactured in a manner such that it could on installation be set to

operate on either natural gas or liquefied propane gas ("LP gas"), and the Pugh Individuals'

house was at all times served by natural gas, and specifically a natural gas line served the

location where the oven was to be installed.  Ex. 1 at ¶¶ 13-14.

11.      Unbeknownst to the Pugh Individuals, the stove was connected to the gas line

with the gas valve setting in the LP gas position, and its operation on natural gas through an LP

valve setting resulted in an improper burn of the fuel, creating high levels of carbon monoxide at

each use of said Kenmore unit.  Ex. 1 at ¶¶ 17-19.  After the installation, the Pugh Individuals

experienced various maladies and illnesses for which they sought medical diagnosis and

treatment, in connection with their exposure to unnaturally high levels of carbon monoxide, and

A&E, Sears' designated service provider for appliances it sells and a named defendant in the

Illinois Action, received multiple service calls from the Pugh Individuals concerning the oven. Ex. 1 at ¶ 20.  On April 16, 2014, for the first time, the City of Stonington "red tagged" the Kenmore unit, having determined through testing that its operation produced excessive levels of carbon monoxide.  Ex. 1 at ¶ 24.

12.     In the Amended Complaint filed in the Illinois Action, the Pugh Individuals brought claims against all of the named defendants, including Debtors, alleging: strict liability; negligence; principal-agent liability; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; breach of implied warranty; and liability under the Illinois Family Expense Act, 750 ILCS 60/15.  *See* Ex. 1.  In the nearly two years since the Amended Complaint's filing, all named defendants have appeared, and answers and counterclaims have been filed.  The court has issued and amended a case management order concerning discovery, and the parties were engaged in the process of initiating discovery when, on October 15, 2018, Sears Holdings Corporation and its affiliates each voluntarily commenced the instant Chapter 11 proceedings.  This included Debtors.  On October 23, 2018, counsel for Debtors filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay, attached hereto as **Exhibit 2**.  This Notice asserted that section 362(a) of the Bankruptcy Code imposed a stay on the entire action, and all defendants thereto.  *See* Ex. 2.

13.     The Pugh Individuals file this motion to request the lifting of the automatic stay to allow the Illinois Action to proceed through discovery and judgment.  In the alternative, the Pugh Individuals request the issuance of an order declaring that the stay, by law, does not extend to non-Debtor codefendants in the Illinois Action and that the action may proceed against them in all respects.

IV.    **ARGUMENT**

A.    **RELIEF FROM THE AUTOMATIC STAY IS WARRANTED**

1.    **Standard for Relief to Continue State Court Litigation**

14.    Relief from the automatic stay imposed by 11 U.S.C. § 362(a) is governed by 11

U.S.C. § 362(d), which reads, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay—
>
> (1) For cause, including lack of adequate protection of an interest in property of
> such party in interest…

While the movant is initially burdened with showing a *prima facie* case for cause to lift the stay

(*see In re Project Orange Associates, LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010)), the

burden shifts upon such a showing, with Section 362 ultimately allocating the burden of proof in

relief from stay matters to: "(1) The party requesting relief . . . on the issue of the debtor's equity

in the property; and (2) The party opposing such relief . . . on all other issues." 11 U.S.C. §

362(g).  Subsections 362(d) and (g) of the Bankruptcy Code, considered together, govern this

analysis.  The only issue in this matter is where there is "cause" for relief from the automatic stay

pursuant to Section 362(d)(1).  Debtors carry the burden of proof on this issue. As this Court has

stated:

> The party opposing relief has the burden of proof to show that it is entitled to
> continuation of the stay. Section 362(g) places the burden of proof on the debtor
> for all issues other than "the debtor's equity in property."  11 U.S.C. § 362(g)(1).
> *In re Sonnax Industries*, 907 F.2d 1280, 1285 (2d Cir. 1990).  The rationale for
> the burden of proof rule is that the automatic stay is intended only to shift the
> initiative to the creditor to bring the issue before the Bankruptcy Court, and not to
> create any new right in the debtor to stay proceedings.  *In re Terry*, 12 B.R. 578,
> 581 (Bankr. E.D. Wis. 1981) . . . .  Thus, if a creditor seeking relief from the stay
> has made a *prima facie* case of "cause" for lifting the stay, the burden of going
> forward shifts to the debtor pursuant to § 362(g).  *In re Laguna Associates, L.P.*,
> 147 B.R. 709, 714–15 (Bankr. E.D. Mich. 1992), *aff'd*, 30 F.3d 734 (6th Cir.
> 1994).

*In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997); *see also In re*

*Sonnax Industries*, 907 F.2d 1280 (2d Cir. 1990) ("The burden of proof on a motion to lift or

modify the automatic stay is a shifting one.  Section 362(d)(1) requires an initial showing of

cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues

other than 'the debtor's equity in property'") (internal citations omitted).

15.    The bankruptcy court "shall" lift the automatic stay "for cause".  11 U.S.C. §

362(d)(1)*; see In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006); *In re Balco Ltd.*, 312

B.R. 734, 748–49 (Bankr. S.D.N.Y. 2004). The term "cause" is not defined in the Bankruptcy

Code and is determined on a case-by-case basis.  *See Manhattan King David Rest. Inc. v. Levine*,

163 B.R. 36, 40 (S.D.N.Y.1993) (*citing In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir.

1990)). According to this Court in *Levine*, "whether cause exists should be determined on a case

by case basis . . . .  The decision of whether to lift the stay is committed to the sound discretion

of the bankruptcy judge." *Id*. (internal citation omitted).

16.    This Court in *Project Orange*, 432 B.R. at 103 has provided some guidance on the

meaning of cause, holding that:

> Congress intended 'that one of the factors to consider when determining whether
> to modify the stay is whether doing so would permit pending litigation involving
> the debtor to continue in a nonbankruptcy forum,' as '[i]t will often be more
> appropriate to permit proceedings to continue in their place of origin, where no
> great prejudice to the bankruptcy estate would result, in order to leave the parties
> to their chosen forum and to relieve the bankruptcy court from duties that may be
> handled elsewhere.'

*Id*. (*citing*, *inter alia*, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 341 (1977)).

17.    When determining whether "cause" exists to lift the stay for pre-petition

litigation, courts in this jurisdiction consider the following factors (the "*Sonnax* Factors"):

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending [the action];

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) the impact of the stay on the parties and the balance of harms.

*In re Sterling*, 543 B.R. 385, 393 (Bankr. S.D.N.Y. 2015) (*citing In re Sonnax Indus., Inc.*, 907 F.2d at 1286). According to the court in *Sterling*: "Not all of the *Sonnax* Factors are relevant in every case, and 'cause' is a broad and flexible concept that must be determined on a case-by-case basis." *Id.* (*citing Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002)). In *Sterling*, the court found that "the majority of the *Sonnax* Factors that are applicable to this case support lifting the automatic stay so that the Movant can proceed with the Foreclosure Action." *Id.*

18.    Here too, a majority of the applicable *Sonnax* Factors weigh in favor of lifting the stay, and thus the facts and circumstances of this case demonstrate that there is overwhelming

"cause" requiring immediate relief from the automatic stay in this matter. It is Debtors' burden to prove that there is no cause for relief, and Debtors cannot meet this burden. Therefore, the Pugh Individuals are entitled to immediate relief from the automatic stay.

### 2.   The *Sonnax* Factors Applicable To This Case Support Lifting The Stay

19.   Not all of the *Sonnax* Factors are relevant to every case, but among those that are applicable to the case at hand, the balance of the factors weighs in favor of lifting the stay here. Those factors weighing in favor are analyzed below, followed by the remainder, whether they weigh against the requested relief or simply do not apply.

### a.   The Illinois Action would result in a complete resolution of the issues

20.   The first *Sonnax* Factor—the question of whether relief in the form of the state court action would result in a complete resolution of the issues—asks whether disposition in the other case would resolve all issues presented in that action. For example, in *In re Cicale*, No. 05-14462 (AJG), 2007 Bankr. LEXIS 2252, at *9–10 (Bankr. S.D.N.Y. June 29, 2007), the court explored this factor in some detail, holding that resolution of the third-party action in state court would completely resolve all of the state court issues without the need to return to the bankruptcy court for any reason. For this reason, the court held that this *Sonnax* Factor favored lifting the stay.

21.   The claims at issue in the Illinois Action are: strict liability; negligence; principal-agent liability; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; breach of implied warranty; and liability under the Illinois Family Expense Act, 750 ILCS 60/15. These are all claims rooted either in Illinois state common law or Illinois state statutes. Resolution of these claims would necessitate no return to this Bankruptcy

Court for any reason relating to the causes of action brought by the Pugh Creditors in the Illinois Action.  As explained in *Cicale*, this balances the first *Sonnax* Factor in favor of relief from the stay.

> **b.    The limited connection between the bankruptcy case and the Illinois Action counsels in favor of stay relief**

22.     The second *Sonnax* Factor asks whether there is any connection between the bankruptcy action and the parallel state court action.  There is only one apparent "connection" shared by the two cases, and this is that Debtors are parties to both.  *See, e.g.*, *In re Taub*, 413 B.R. 55, 63 (Bankr. E.D.N.Y. 2009).  However, this is hardly the end of the analysis, and does not itself present a sufficiently substantial connection to warrant a denial of stay relief.  In *Taub*, the court held that while the debtor was a central participant in both actions, the grant of stay relief to allow the state court divorce action to proceed would not interfere with the bankruptcy case in any way.  As the court analyzed the issue:  "Indeed the opposite appears more likely. The progress of the bankruptcy case requires the determination of what is the Debtor's and Mr. Taub's marital property and the equitable distribution of that property."  *Id*.  The court went on, saying:

> Stay relief also does not pose a threat to preserving the value of property of the Debtor's Chapter 11 estate. This Court retains jurisdiction over property of the estate and is not abstaining from deciding the issues in the adversary proceeding commenced by the Debtor that concerns the management of certain properties held in the Debtor's name . . . . Accordingly, the Court finds that this factor weighs in favor of relief from the automatic stay.

*Id*.

23.     The exact same analysis presents itself here.  The Bankruptcy Actions require a determination of what assets belong to Debtors and what assets do not.  The resolution of the Illinois Action only aids in this determination, and does *not* obstruct this Court's ultimate

jurisdiction over Debtors' property.  A final judgment in the Illinois Action—whether in

Debtors' favor or against it—clarifies the puzzle of Debtors' assets and liabilities that this Court

is working to solve.  Historically, the potential for such an action to simplify the determinations

required by the bankruptcy court has been considered to weigh in favor of relief from the stay.

*See*, *e.g.*, *In re Cicale*, 2007 Bankr. LEXIS 2252, at *10–11; *In re Mildred Deli Grocery, Inc.*,

No. 18-10077 (MG), 2018 Bankr. LEXIS 546, at *10 (Bankr. S.D.N.Y. Feb. 28, 2018); *Musso v.*

*Hirsch (In re Hirsch)*, No. 08-cv-4735(CBA), 2011 U.S. Dist. LEXIS 111561, at *34–36

(E.D.N.Y. Sep. 29, 2011).

> **c.    The State of Illinois is best-situated to address the state law claims of the Illinois Action**

24.    The fourth *Sonnax* Factor asks about the establishment of a tribunal with the

necessary expertise to hear the cause or causes of action.  Historically, this factor has been

analyzed to ask whether the state court is in a better position to adjudicate the action than the

bankruptcy court.  As this Court held in 2012:

> While this Court may interpret and apply state law in resolving claims through the
> bankruptcy process . . . .  The state court is in the best position to determine
> whether a counterclaim is properly asserted as a defense to the foreclosure claim
> under applicable state law.  Accordingly, the fourth *Sonnax* Factor weighs in
> favor of granting relief from the automatic stay to the extent provided herein.

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3726, at *20–21

(Bankr. S.D.N.Y. Aug. 14, 2012).  The federal courts may interpret and apply state law, but the

state courts of Illinois will almost certainly be better-prepared to adjudicate issues of Illinois state

law than a federal court sitting in New York.

25.    Furthermore, the Illinois Action has proceeded before the state court for a period

of over two years, and in that time, the court, which is otherwise already best-equipped to rule on

issues of Illinois state law, has become well-familiarized with the parties and issues giving rise to

the litigation.  Such specific case familiarity weighs in favor of relief from the stay in the context

of the fourth *Sonnax* Factor . *See*, *In re Project Orange Associates, LLC*, 432 B.R. at 108–09; *In*

*re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *48 (Bankr. S.D.N.Y. Nov.

3, 2017).  While the fourth *Sonnax* Factor might appear on its face to concern some judicial body

more specialized than a state court of general jurisdiction, that is not the way the factor has been

interpreted by the courts—as this Court recently held on a motion to lift the stay brought by a

landlord:  "Although the State Court is not necessarily a 'specialized tribunal' it has familiarity

with the matters at issue in the [state court actions] and, as such, judicial economy will be served

by granting the Landlord stay relief."  *In re Artisanal 2015, LLC*, 2017 Bankr. LEXIS 3813, at

*48.

### d.    Debtors are likely indemnified for their damages, costs, and expenses

26.    The fifth *Sonnax* Factor asks whether a debtor's insurer has assumed full

responsibility for defending it.  The purpose of this factor is, of course, to determine whether the

bankruptcy estate will suffer a loss, and if so of what nature, in the event that relief from the stay

leads to a judgment against the debtor.  Here, Debtors have already asserted that they do not have

to cover their own damages in the event of a judgment against them in the Illinois Action—this

is because of two provisions in the Home Delivery & Shuttle Carrier Agreement (the

"Agreement") between Sears (as well as its affiliates, including A&E) and HDL dated

August 24, 2008, which provide that HDL shall indemnify Sears and A&E from all actions,

liabilities, settlements, losses, costs, and expenses arising out of claims, actions, or proceedings

between HDL and the indemnified parties under the Agreement, or between any indemnified

party and any third party.  This Agreement is attached as Exhibit B to the June 28, 2017, letter

from Debtors' counsel in the Illinois Action to HDL's counsel, attached hereto as **Exhibit 3**.

Because any of Debtors' liabilities, settlements, losses, and/or costs and expenses provided for under the Agreement, it is the same as if an insurer for Debtors had assumed full responsibility. Therefore, the fifth *Sonnax* Factor weighs in favor of stay relief.

### e.    The Illinois Action primarily involves third parties

27.    The sixth *Sonnax* Factor—whether the action primarily involves third parties— very clearly weighs in favor of lifting the stay here. Debtors are but two of nine parties in the Illinois Action.   None of the parties other than Debtors have any involvement in the Sears Bankruptcy, and the actions of defendants Electrolux H.P. and HDL are at least as central to the claims of the Illinois Action, and the facts alleged therein, as Debtors are.   By any means of accounting, then, the Illinois Action is "primarily" composed of parties which constitute third parties to this proceeding, which per *Sonnax*, weighs in favor the requested relief.   *In re Sonnax Indus., Inc.*, 907 F.2d at 1286; *see also In re Fiber Optek Interconnect, No. 05-30045 (cgm)*, 2006 Bankr. LEXIS 2961, at *4–7, *13 (Bankr. S.D.N.Y. Oct. 27, 2006).

### f.    Litigation in state court in Illinois would not prejudice other creditors

28.    The seventh *Sonnax* Factor asks whether the continuation of the state court litigation against Debtors will prejudice the interests of the other creditors.   While, of course, a judgment against Debtors in the Illinois Action could potentially reduce the amount available for distribution to other members of the creditor class, this Court has held that this does not constitute "prejudice" within the meaning of this *Sonnax* Factor.   In *In re New York Medical Group, P.C.*, 265 B.R. 408, 413–14 (Bankr. S.D.N.Y. 2001), this Court rejected the argument that the mere fact that a state court action might result in a judgment against debtor constituted "prejudice" in the sense intended by the seventh *Sonnax* Factor.   As explained by this Court, the argument that dilution of the amount available to creditors fails because:

> [I]t rests on the flawed premise that the payment of large allowed claims
> constitutes legal prejudice. Without doubt, the Saunders claim, allowed in
> any amount, will reduce the recovery available to other creditors. The same, however,
> can be said about every other claim . . . . Saunders, like the Pension Plans and the
> other creditors, has the right to her *pro rata* distribution based on the allowed
> amount of her claim. Conversely, denying her this right would grant a windfall to
> the other creditors.

*Id*. at 414.

29. The mere threat of a judgment against Debtors in the Pugh Individuals' favor does not constitute prejudice to the other creditors. As in *New York Medical Group*, a judgment would have the same effect—for the purposes of the Bankruptcy Estate's accounting—whether rendered tomorrow or after a lengthy stay.

### g. There is no risk of equitable subordination of any judgment here

30. The eighth *Sonnax* Factor asks whether a judgment against the debtor in the non-bankruptcy action would be subject to equitable subordination. Where such a judgment would not be subject to equitable subordination, this Factor weighs in favor of granting movant relief from the stay. *In re Artisanal 2015, LLC*, 2017 Bankr. LEXIS 3813, at *48. Equitable subordination is limited to cases involving: fraud, illegality, or breach of fiduciary duty; undercapitalization; or the use of the debtor as an alter ego for the benefit of the claimholder. *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1 (Bankr. E.D.N.Y. 2006). No such circumstances apply to the claims at issue here, which, as detailed above, consist of common law torts and statutory violations under Illinois state law. Thus, the eighth *Sonnax* Factor weighs in favor of stay relief.

### h. Judicial economy favors relief from the stay

31. The interests of judicial economy alone provide sufficient cause for lifting the automatic stay to allow the Illinois Action to be promptly concluded. This Court has often

favored judicial economy as a particularly strong factor in lifting the stay; it has found, for

example, that "*Most importantly*, the interests of judicial economy will be met by lifting the stay

and moving forward in the State Court." *In re Sterling*, 543 B.R. at 393–94 (*citing In re Cicale*,

2007 Bankr. LEXIS 2252, at *12) (emphasis added); *see also Project Orange*, 432 B.R. at 112.

Judicial economy is not enhanced in any way by the imposition of a lengthy delay of state court

actions.  In *Sterling*, the court's finding that judicial economy was best served by allowing the

stay to be lifted was apparently predicated upon the clarifying effect that the determination in

state court would have on the bankruptcy estate to be administered, and the fact that the state

court proceedings would not delay any ongoing proceedings in the bankruptcy court. *Id*. at 393.

In *Cicale*, this Court held that the tenth *Sonnax* Factor weighed in favor of stay relief, because

allowing the third-party action to proceed would not result in any unreasonable or unforeseeable

delay at the bankruptcy-court level. *In re Cicale*, 2007 Bankr. LEXIS 2252, at *12.

        32.     Where a state court has presided over proceedings subject to the stay for a

significant period of time, and is in the best position to adjudicate the action pending before it—

as discussed above in relation to the fourth *Sonnax* Factor—relief from the stay to allow the state

court action to proceed provides the most rapid and economical means of resolving the issues

presented by the state court cause of action, due to the familiarity of the forum with the legal and

factual issues presented by the case.  *Project Orange*, 432 B.R. at 108–09; *Montague Pipeline*

*Technologies Corp. v. Grace/Lansing (In re Montague Pipeline Technologies Corp.)*, 209 B.R.

295, 306 (Bankr. E.D.N.Y. 1997).  This is not a case in which this Court is deciding which forum

should determine the claims at issue in the Illinois Action (*see*, *e.g.*, *In re Dreier*, 438 B.R. 449,

456 (Bankr. S.D.N.Y. 2010)), but, rather, is merely deciding whether to allow the automatic stay

to halt the claims against Debtors in the Illinois Action indefinitely.  Because the continuation of

the Illinois Action would not hinder or obstruct the bankruptcy proceedings at all, and a disposition of that action can only help clarify the assets and liabilities of the Bankruptcy Estate, the important factor of judicial economy weighs in favor of lifting the stay and allowing the Illinois Action to proceed.

### i.    The balancing of the harms favors relief from the stay

33.    The twelfth and final *Sonnax* Factor asks the court to balance the harms to the various parties to determine whether they weigh for or against relief from the stay.  When the potential harms against the parties here are considered, it is clear that any hardships imposed on the Debtors by the lifting or modification of the automatic stay are far outweighed by the harms to the Pugh Individuals of not doing so.  As the court in *Taub* explained, the resolution of the issues presented in the state court claims could only possibly *assist* in the administration of the bankruptcy, and the interests of the parties to the bankruptcy are not harmed by allowing the state court action to continue, because any enforcement of an eventual judgment would still be subject to the bankruptcy administration by this Court.  *Taub*, 438 B.R. 39, 49–50 (Bankr. E.D.N.Y. 2010).  Additionally, as discussed above, the Pugh Individuals have suffered very real personal injury due to the actions of the defendants to the Illinois Action, including Debtors, and further delay of their compensation for said injuries prolongs the suffering that they have already been forced to endure.

34.    As discussed above, relief from the stay would not prejudice the other creditors to this Bankruptcy Estate, or Debtors themselves, for the simple reason that this is a question of timing—eventually, Debtors' liability to the Pugh Individuals will be ascertained by way of a judgment.  Enforcement of such judgment is another matter, if the bankruptcy administration is

still ongoing at that stage, but for now, no harm is done to Debtors by permitting the Illinois Action to proceed in parallel with this action.

35.    Though there remain certain inapplicable *Sonnax* Factors—e.g., whether either Debtor is a fiduciary; whether the state court action would give rise to a judicial lien on the property of the Bankruptcy Estate—the majority of the applicable *Sonnax* Factors decidedly weigh in favor of lifting or modifying the automatic stay.

## B.    IN THE ALTERNATIVE, IF THE STAY IS NOT LIFTED AS TO DEBTORS, IT SHOULD BE LIFTED AS TO THE NON-DEBTOR CODEFENDANTS

### 1.    The Automatic Stay Extends Only To Debtors

36.    For all the reasons set forth above, this Court should lift the automatic stay for the limited purpose of allowing the Illinois Action to move forward to judgment against Debtors and their codefendants in that action.  However, even if the court declines to grant Pugh Individuals' request for this relief after an analysis of the *Sonnax* Factors, it should nonetheless issue an order declaring that the stay does not extend to the non-Debtor codefendants in the Illinois Action.

37.    The language of 11 U.S.C. § 362(a) clearly states that a petition filed under the sections of that title operates as a stay *as against a debtor*.  However, the district courts of this Circuit, and the district courts of other circuits, have had ample opportunity to interpret this section of the Bankruptcy Code and have done so to the effect of limiting its extent to *debtors*. In *Hounddog Productions L.L.C. v. Empire Film Group, Inc.*, 767 F. Supp. 2d 480, 485 (S.D.N.Y. 2011), the court stated that "The fact that Bornstein has filed for bankruptcy does not stay Plaintiffs' case against the other defendants, as case law makes clear" (*citing Wynn v. AC Rochester General Motors, Corp.*, 155 Fed. App'x 528, 528 (2d Cir. 2005); *Demel v. Group Benefits Plan for Employees of Northern Telecom, Inc.*, 07 Civ. 0189 (GBD), 2010 U.S. Dist.

LEXIS 2340, at *2 (S.D.N.Y. Jan. 8, 2010); *In re McCormick*, 381 B.R. 594, 600 (S.D.N.Y. 2008)).  Per *Wynn*, the law of the Second Circuit is that "the stay [pursuant to Section 362 of the Bankruptcy Code] is not automatically applicable to non-bankrupt co-defendants."  *Id*. at 528 (*citing Teachers Inc. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)).

38.     In *Acker v. Wilger*, 2012 U.S. Dist. LEXIS 161628, at *2–3 (S.D.N.Y. Oct. 25, 2012), the Southern District held that "Generally speaking, stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants . . . .  As the Second Circuit has explained, the automatic stay can apply to non-debtors, but normally does so *only* when a claim against the non-debtor will have an *immediate* adverse economic consequence for the debtor's estate" (emphasis in original) (internal citations and quotation marks omitted).  Similarly, in *Tenas-Reynard v. Palermo Taxi, Inc.*, 2016 U.S. Dist. LEXIS 42423, at *14–17 (S.D.N.Y. Mar. 30, 2016), the Southern District held that the automatic stay did not apply to claims against the debtor's co-defendants where the disposition of those claims would not have a binding effect on the claims against debtor.

39.     Furthermore, a debtor is not entitled to an exemption from discovery in actions proceeding against non-debtors.  According to this Court, it is within the court's discretion to limit or condition discovery from a debtor where that discovery represents an unreasonable burden or expense that threatens the administration of a bankruptcy case.  *In re Residential Capital, LLC*, 480 B.R. 529, 544 (Bankr. S.D.N.Y. 2012).  Further, this Court explained that "in the event a third party moves to lift the stay to permit discovery against the debtor, the *debtor* must demonstrate why discovery should be limited or conditioned."  *Id*.  (emphasis in original).

40.     This position represents the majority approach of District Courts around the country.  In *In re Hillsborough Holdings Corp.*, 130 B.R. 603 (Bankr. M.D. Fla. 1991), the

bankruptcy court not only held that Section 362 did not extend to the debtor's codefendants in another action brought by the City of Atlanta, but also held that the stay did not prevent those codefendants pursuing discovery against debtor in an effort to further their own defenses against the plaintiff.  Similarly, the court in *In re UNR Industries, Inc.*, 23 B.R. 144 (Bankr. N.D. Ill. 1982) held that a previous order lifting the stay as against codefendants of a debtor in a non-bankruptcy action should be vacated as unnecessary, because the automatic stay set forth in Section 362 does not apply to non-debtor codefendants.

41.    Therefore, even if the Illinois Action were to be stayed against Debtors, the Pugh Individuals are still entitled to pursue discovery against them while proceeding in their action against the non-debtor codefendants, Electrolux H.P. and HDL, to whom the reaches of the automatic stay does not extend, and this Court should issue an order declaring that the litigation may continue against them.

### 2.    Absent Unusual Circumstances, Courts Refrain From Extending The Stay To Non-Debtor Codefendants

42.    As noted above, there is an exception to this general rule regarding the extent of the stay for those cases involving unusual circumstances.  For example, in *Tenas-Reynard*, the stay was extended to one of three codefendants of the debtor, because as to that codefendant, a finding of liability would necessarily have resulted in liability for debtor.  As to the other two codefendants, resolution of the claims against them would have had no binding effect on the claims against the debtor.  Cautioning that the mere *possibility* of a later adverse finding against the debtor is not enough to warrant extension of the stay, the court held that: "Even if a finding that [codefendants] Yapi and MCI were not negligent could somehow prove detrimental to [debtor] later, the Second Circuit has rejected the argument that an automatic stay applies to claims against a non-debtor 'solely because of an apprehended later use against the debtor of

offensive collateral estoppel or the precedential effect of an adverse decision.'" (*quoting Queenie Ltd v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003)).

43.    The decision in *Queenie* provides another useful example of such extenuating circumstances.  There, the Second Circuit Court of Appeals extended the stay to one codefendant that was wholly owned by the debtor, but not to other codefendant appellants, even though resolution of the claims against them carried potential offensive collateral estoppel implications in the future. *Id.* at 287–88.  There, the court also provided three examples of immediate adverse economic consequences that might call for extending the stay to a non-debtor:  (1) actions in which the debtor is a guarantor; (2) actions in which the claim is against the debtor's insurer; and (3) "actions where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.'"  *Id.* at 287-88 (*quoting A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

44.    The analysis required to determine whether such factors counsel in favor of extending the stay to non-debtor codefendants asks whether the impact of a holding against the non-debtor codefendants is sufficiently "immediate" or "adverse" to the debtor to justify extending the stay to those codefendants.  *Tenas-Reynard v. Palermo Taxi, Inc.*, 2016 U.S. Dist. LEXIS 42423, at *17.  In *Tenas-Reynard*, as in *Queenie*, the courts determined that except for codefendants against whom a finding of liability would automatically render the debtor liable, or for codefendants wholly owned by the debtor, the extent of the stay is confined to the debtors themselves.

45.    In the Illinois Action, the Pugh Individuals' claims against non-debtor codefendants Electrolux H.P. and HDL present none of the issues at the fore of the extenuating circumstances discussed above.  Neither of these entities is owned wholly or in part by either of

the Debtors, and a finding of liability against one or both on, for example, a negligence or strict liability theory, does not necessitate liability on the part of either Debtor.  Therefore, there is no reason for the automatic stay to extend to these parties, and this Court should issue an order declaring that litigation may proceed against them.

## C.    THIS COURT SHOULD ABSTAIN FROM HEARING THE ILLINOIS ACTION IF IT IS REMOVED FROM STATE COURT

### 1.    Mandatory Abstention Is Required In This Case

46.    The Pugh Individuals also respectfully request that this Court abstain from hearing the Illinois Action in the event that it is removed to this Court. Such abstention is mandatory, per 28 U.S.C. § 1334 (c)(2), which states that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

47.    This Court has determined that there are six prerequisites which determine the appropriateness of mandatory abstention:

(1)    A timely motion is by a party to the proceeding;

(2)    The proceeding is based upon a state law claim or cause of action;

(3)    The proceeding is related to a case under title 11;

(4)    The proceeding does not arise under title 11 or arise in a case under title 11;

(5)    The action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and

(6)    An action has been commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

*In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 837-38 (Bankr. S.D.N.Y. 2014), *adopted sub nom. In re Ne. Indus. Dev. Corp.*, No. 14-CV7056 NSR, 2015 WL 3776390 (S.D.N.Y. June 16, 2015) (*citing IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005)).

48.    The Illinois Action is not a "core" proceeding which invokes the substantive rights provided by title 11, or could by its nature only arise in the context of a bankruptcy case. It is, if anything, a "non-core" proceeding which exists in the broader universe of proceedings related to the bankruptcy cases—the Illinois Action is based solely on state law claims and causes of action.

49.    The Illinois Action *could not* have been commenced in federal district court because no federal question exists, and complete diversity of citizenship is lacking.  Furthermore, the Illinois Action is currently pending before the Circuit Court and can be timely adjudicated before that court.  There is no reason to believe that the necessary timeframe will be shortened by having this Court adjudicate the matter, given the multiplicity of other issues and disputes that this Court will have to resolve during the Bankruptcy Administration.  Principles of comity and judicial economy also warrant a conclusion that the Circuit Court is the proper forum for adjudicating this dispute.

50.    For all of the reasons set forth above, the Pugh Individuals respectfully submit that mandatory abstention is required here pursuant to 28 U.S.C. § 1334 (c)(2).

> ### 2.    This Court Should Permissively Abstain From Hearing The Illinois Action If It Is Removed From The Circuit Court

51.    Even if this proceeding were not subject to the mandatory abstention provisions of 28 U.S.C. §1334 (c)(2), if it were removed from the Circuit Court, this Court should permissively abstain from hearing the Illinois Action.  A court may abstain from hearing an

action "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. §1334 (c)(1).  Bankruptcy courts consider one or more, but not necessarily all, of the following twelve factors when determining whether permissive abstention is appropriate:

(1)      The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2)      The extent to which state law issues predominate over bankruptcy issues;

(3)      The difficulty or unsettled nature of the applicable state law;

(4)      The presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)      The jurisdictional basis, if any, other than U.S.C. § 1334;

(6)      The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)      The substance rather than the form of an asserted "core" proceeding;

(8)      The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)      The burden of [the court's] docket;

(10)      The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

(11)      The existence of a right to a jury trial; and

(12)      The presence in the proceeding of non-debtor parties.

*In re Portrait Corporation of America, Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009) (*citing Rosetta Res. Operating LP Calpine Corp. v. Pogo Producing Co. (In re Calpine Corp.)*, 361 B.R. 665, 669 (Bankr. S.D.N.Y. 2007)).  Not all of these factors need be applied.  *Id.* (*citing Cody, Inc. v. County of Orange & Town of Woodbury (In re Cody, Inc.)*, 281 B.R. 182, 190-91 (S.D.N.Y. 2002)).

52.     Here, the balance of these factors weighs in favor of permissive abstention.   The efficient administration of the estate (factor one) favors abstention.   As to the second factor, the state law issues clearly predominate over bankruptcy issues.   As to the third factor, the difficulty or unsettled nature of the applicable state law weighs in favor of abstention as well.   The presence of the proceeding commenced in state court (factor four) obviously counsels in favor of abstention, as does the lack of a jurisdictional basis other than 28 U.S.C. §1334 (factor five). The remoteness of the Illinois Action from the main bankruptcy case (factor six) is clear, and also warrants abstention.   The Illinois Action is not a "core" proceeding (factor seven) and, in addition, the state law claims can be severed from any core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court (factor eight).   Furthermore, the burden on the bankruptcy court's docket (factor nine) is sufficiently great that this factor weighs in favor of abstention.   The issues present in the Illinois Action reflect no forum shopping (factor ten), and the right to a jury trial exists (factor eleven), as do non-debtor parties (factor twelve), as analyzed in greater detail above concerning the *Sonnax* Factors.

53.     As set forth above, the Illinois Action was commenced pre-petition. This Court should abstain from hearing it if it is removed.

## V.        <u>**NOTICE**</u>

54.     The Pugh Individuals will provide notice of this motion to the "Standard Parties", "Particularized Notice Parties", and "Rule 2002 Parties" in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (the "Amended Case Management Order").   Based upon the foregoing, the Pugh Individuals

respectfully submit that notice of this motion and the relief sought herein is sufficient, and that no additional or further notice should be required.

55.     No prior request for the relief requested in this motion has been made to this Court or any other court.

## VI.     **CONCLUSION**

56.     WHEREFORE, the Pugh Individuals respectfully request that this Court enter an order: (a) granting relief from the automatic stay pursuant to 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1, to permit the Pugh Individuals to continue the prosecution of the Illinois Action against all of the defendants to that action; or (b) in the alternative, an order declaring that the action may proceed against non-Debtor defendants; and (c) abstaining from hearing this matter; and providing such other and further relief as this Court deems just and proper.

Dated:  December 11, 2018

SORLING NORTHRUP

By:  /s/ Patrick M. Ryan
David A. Rolf
Patrick M. Ryan
1 N. Old State Capitol, Suite 200
P.O. Box 5131
Springfield, IL  62705-5131
Telephone:  217-544-1144
Fax:  217-522-3173
Email: darolf@sorlinglaw.com
        pmryan@sorlinglaw.com

*Attorneys for Movants Charles Pugh, Nicole Pugh, Jack Pugh, Sam Pugh, and Charles F. Pugh*