**Hearing Date and Time: December 20, 2018 at 10:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
```
In re                              :      **Chapter 11**
                                   :
**SEARS HOLDINGS CORPORATION**, *et al.*,   :      **Case No. 18-23538 (RDD)**
                                   :
                                   :      **(Jointly Administered)**
            Debtors.[1]            :
                                   :      **Re: Docket No. 1077**
```
---------------------------------------------------------------x
```

## DEBTORS' OBJECTION TO MOTION OF OMEGA ADVISORS INC. REGARDING SALE OF MEDIUM-TERM INTERCOMPANY NOTES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent as follows in support of this Objection (the "**Objection**") to Omega Advisors Inc.'s ("**Omega**") *Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code to Enforce the Court's November 19, 2018 Sale Order and Invalidate The Ultra Vires Sale and Lockup of Medium-Term Intercompany Notes* (ECF No. 1077) (the "**Motion**")[1]:

## PRELIMINARY STATEMENT

1.      Apparently desperate to protect its position as a participant in credit default swaps relating to Sears Roebuck Acceptance Corp. ("**SRAC**"), Omega has resorted in its Motion to a series of omissions, mischaracterizations, and outright falsehoods regarding this Court's November 19, 2018 order (the "**Sale Order**") authorizing the sale of SRAC medium-term notes ("**MTNs**") and the fair and transparent bidding process that took place to effectuate that sale. These misrepresentations should not be countenanced, and the Motion should be denied.

2.      *First*, it is clear that the purpose of the Motion is solely to further Omega's own selfish interests, as the Motion lacks any explanation of how the relief requested would inure to the benefit of the Debtors' estates.  In fact, the assets of the estates were maximized by the sale of approximately $880 million of MTNs to Cyrus Capital Partners L.P. ("**Cyrus**") for a fair and reasonable net price of $82.5 million.

---

[1] Less than 24 hours before the deadline for this Objection, Och-Ziff Capital Structure Arbitrage Master Fund, Ltd. ("**Och-Ziff**") – which claims creditor status but noticeably did not respond to the Sale Motion, appear at the sale hearing, or appeal the Sale Order – filed a Joinder to the Motion (ECF No. 1177) ("**Joinder**").  The Joinder simply repeats the Motion's arguments and inaccuracies rebutted below and, therefore, should be denied for the same reasons.

3.      Indeed, Omega's only allegation that it even has standing as a creditor to bring this Motion is that Omega purchased notes issued by SRAC on November 21, 2018 – directly *after* the auction that is the subject of the Motion.  Motion at ¶ 36.  This nakedly opportunistic, after-the-fact attempt to claim creditor status does not give Omega standing to bring the Motion.

4.      *Second*, contrary to Omega's characterizations, the terms of the Sale Order did not restrict the sale to a specific, limited amount of MTNs.  It is disingenuous, if not misleading, for Omega to claim purported limitations that plainly are not included in the Sale Order.  Motion at ¶ 1-2.

5.      *Third*, Omega completely mischaracterizes the sale process for the MTNs, which was fair, transparent, and competitive.  Indeed, as Omega well knows, the Debtors and their advisors kept Omega and its counsel apprised every step of the way leading up to the bid deadline; Omega was simply outbid.  The intervention of this Court, as sought by the Motion, on behalf of a party that has bidder's remorse is neither an appropriate use of judicial or estate resources, nor relief supported by the Bankruptcy Code.

6.      *Fourth*, Omega's claims that an additional $1.4 billion in MTNs held by non-debtor affiliate Sears Reinsurance Company Ltd. ("**Sears Re**") were "effectively sold" to Cyrus are just untrue.  And, in any event, this Court did not order (nor would it have jurisdiction to order) non-debtor Sears Re either to sell or refrain from selling its MTNs.

7.      *Fifth*, accusations that any representations by the Debtors or their counsel in connection with the Sale Motion or subsequent sale process were false or fraudulent are flatly wrong and frankly outrageous.  Omega's attempt to accuse Debtors of falsely telling the Court

WEIL:\96833285\13\73217.00044

that the Sears Re MTNs would not be listed with ISDA is particularly incredible, because, upon information and belief, it was *Omega* that sought to have Sears Re MTNs listed with ISDA.[2]

8. *Sixth*, the Motion should be denied because it is procedurally improper. Omega seeks an injunction and a declaratory judgment voiding portions of the sale, relief that under Bankruptcy Rule 7001 requires that Omega file an adversary proceeding and complaint, which it has failed to do.

9. For all of these reasons, the Motion should be denied in its entirety.

## BACKGROUND

10. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

12. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

13. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

---

[2] *See* Email from Omega counsel B. Adams to ISDA DC Secretary, dated Nov. 8, 2018 (attached hereto as Exhibit A) (indicating that Omega had made "other submissions…in respect of adding additional Deliverable Obligations to the Supplemental List.").

3

*Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (the "**Riecker Declaration**") (ECF No. 3).[3]

### A.    The MTNs, the Sale Motion, and the Sale Order

14.    As set forth in more detail in the Emergency Motion Of Debtors For Order Approving Sale Of Medium Term Notes, dated November 9, 2018 (ECF No. 642) (the "**Sale Motion**"), the Debtors determined, in their sound business judgment, that Debtors had a unique opportunity to sell the MTNs and maximize their value for the benefit of all creditors.  Sale Motion at ¶¶ 6, 12.  That opportunity existed if a sale could be accomplished expeditiously, given the dynamics of the credit default swap markets, in a broker-assisted sale process executed in advance of an auction ("**Auction**") to be conducted by the International Swaps and Derivatives Association ("**ISDA**").  *Id.* at ¶¶ 6-15.  The Debtors engaged the services of Jefferies to manage and conduct that sale process.  *Id.* at ¶ 16.

15.    This Court held two hearings on the Sale Motion, on November 15, 2018 and November 19, 2018.  Omega's counsel attended both hearings, and regularly met and conferred with the Debtors' counsel regarding the objection that Cyrus filed to the Sale Motion and potential settlement of that objection.  Indeed, Debtors' counsel advised Omega before the November 19, 2018 hearing that settlement negotiations were taking place between Debtors and Cyrus, based on the Debtors' efforts to be as fair and transparent as possible.

16.    At the November 19, 2018 hearing, the Court granted the Sale Motion and approved the modified proposed Sale Order, expressly ruling that the modified language of the proposed order – including that the "MTNs are not being sold free and clear of any Liens or

---

[3] Capitalized terms used but not otherwise defined herein or in the Motion shall have the respective meanings ascribed to such terms in the Riecker Declaration.

Claims of SRAC" – was "consistent with applicable law, including the New York General Obligations Law and what a buyer of a claim gets." Nov. 19, 2018 Hr'g Tr. at 12:11-15.

17.     Immediately after the November 19 hearing, this Court entered the Sale Order, which provides that the relief therein was "supported by a proper exercise of business judgment, provides a benefit to the Debtors and their estates, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest while sufficiently protecting SRAC." Sale Order (ECF No. 826) at p. 2. Specifically, the Sale Order provided that, "The Debtors are authorized, but not directed, in consultation with the Creditors' Committee, to sell the MTNs to the party or parties that provide the highest or best offer and to deposit all net proceeds of the sale(s) into the Winddown Account…." *Id.* at ¶ 3. The Sale Order further provides that "[t]he Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order." *Id.* at ¶ 10.

18.     Notably, the MTNs were defined in the Sale Motion and, therefore, in the Sale Order, as "certain SRAC Medium Term Notes Series B." Sale Motion at ¶ 6. The Sale Motion requested authority to sell the MTNs "issued by Debtor Sears Roebuck Acceptance Corporation ('SRAC') and currently owned by various other Debtors." *Id.* The Sale Motion further disclosed that $1.4 billion of the outstanding $2.3 billion of MTNs were held by non-debtor Sears Re. *Id.* at ¶ 8. Accordingly, it was clear that the MTNs that were the subject of the Sale Motion and Sale Order had a face amount of approximately $900 million. *Id.* Contrary to the implications in the Motion at ¶¶ 1-2, nothing in the Sale Order purports to limit the amount of the MTNs that the Debtors were authorized to sell.

19.     Following the entry of the Sale Order, Omega raised concerns to the Debtors about the language in the Sale Order, and requested that the Debtors take steps to assuage any

5

concerns about the eligibility of the MTNs for the ISDA Auction. And, from the evening of November 19, 2018 to the morning of November 20, 2018, the Debtors exchanged no fewer than eight emails with Omega's counsel and engaged in numerous telephone discussions with them. The Debtors then took steps to demonstrate to the ISDA determinations committee and the market that the MTNs should be deemed deliverable in connection with an ISDA Auction, a process in which Omega's counsel was fully involved.

**B.** **The MTN Auction**

20.   On the morning of November 20, 2018, Jefferies, on behalf of the Debtors, issued an Auction Notice, stating that no more than approximately $251 million of MTNs would be sold and requesting bids by 12:00 noon. *See* Auction Notice, annexed to the Motion at Exhibit B. The amount of MTNs that Jefferies specified for sale in the Auction Notice was determined by Jefferies, in consultation with the Debtors, based on its expertise about the right amount to place on the market to maximize proceeds, without causing a concomitant decrease in value due to oversupply. Jefferies received nine bids for the MTNs by the bid deadline.[4]

21.   Omega complains that neither it nor other bidders knew that additional MTNs were available for sale. However, Omega was well aware that the Debtors owned and were authorized to sell more MTNs, and nothing prevented Omega or any other bidder from offering to purchase more than $251 million of the MTNs. Indeed, the Auction Notice specifically noted that anyone bidding should submit "bids, sizes and any stipulations," and that Sears "reserves the right to sell all, part, or none of the notes," leaving open the door for bidders to tender proposals like the one that Cyrus ultimately offered. Additionally, that Auction Notice included a link to a website for additional information that itself linked to a Schedule of Notes listing $880,696,000

---

[4] Copies of the bids received by Jefferies, with identifying information about all bidders other than Omega, Cyrus, and Och-Ziff redacted, are annexed hereto as Exhibit B.

WEIL:\96833285\13\73217.00044

in MTNs – not just $251 million of MTNs.  *See* https://searsholdings.com/invest/financial-transactions/sears-roebuck-acceptance-corp-medium-term-notes-series-b-documentation     (last visited December 12, 2018).  Accordingly, all bidders were aware, or should have been aware, that they could bid on all of the $880 million MTNs that were the subject of the Sale Motion.

22.      Omega's argument that it would have acted differently if more MTNs had been specifically included in the Auction Notice is belied by the very bid that it made.  Omega did not even bid for a significant part of the MTNs that *were* offered.  Instead, Omega made a bid of 40 cents for only up to $70 million of the MTNs, one tenth of the MTNs purchased by Cyrus, and less than one third of the $251 million that Omega now claims were put up for sale.[5]  And Omega's bid was conditioned upon an ISDA determination that the MTNs were qualified to participate in the ISDA Auction.  In other words, Omega would only have been obligated to close on its $28 million transaction if ISDA determined that the MTNs were deliverable. Accordingly, Omega's bid represented substantially less value to the Debtors' estates than the winning Cyrus bid, and it carried substantial execution risk.

23.      In fact, if all of the bids other than Cyrus's are added together, and ignoring the conditionality of most of the bids, the aggregate amount of MTNs that interested parties were prepared to purchase was only $177 million.  *See generally* Exhibit B.  Based on the bids received, it is simply inconceivable that if the Auction Notice had referenced the full $880 million of MTNs, the outcome of the Jefferies process would have been any different.

24.      In contrast, the Cyrus bid of $82.5 million had no contingencies and also included Cyrus's waiver of a right to payment on $629,450,000 of the MTNs.  That payment waiver represents additional value to the Debtors' estates, when compared to the outcome if a third party

---

[5] Och-Ziff's bid was even worse, as it was for only $14 million in MTNs.  *See* Exhibit B.

WEIL:\96833285\13\73217.00044

were to purchase the additional MTNs, because a third party purchaser would be entitled to assert a claim against SRAC for such MTNs.  Although it is too early in the cases to estimate the amount available for distribution to SRAC's unsecured creditors, even assuming, hypothetically, that an unsecured claim against SRAC were entitled to a 5% distribution under a chapter 11 plan, this feature of the Cyrus purchase would have saved the SRAC estate almost $30 million in value.  The Motion completely ignores the benefit of that incremental value.   Moreover, in an effort to provide maximum flexibility to the Debtors, Cyrus structured its bid with three different alternatives, so that the Debtors could choose the alternative that best suited their goals.

25.     After the bid deadline, Jefferies summarized all of the bids received and made a presentation regarding them to both the Creditors' Committee's advisors and the Debtors' Board of Directors.  The Creditors' Committee's advisors supported the Debtors' business judgment to reject the contingent bids and accept the Cyrus bid, which eliminated any risk of an adverse decision by the ISDA determinations committee.

26.     Based on Jefferies' summary of all the bids tendered and the desire to eliminate the risk attendant to the contingent bids (including Omega's bid), as well as the support of the Creditors' Committee, the Debtors' Board of Directors determined that proceeding with the sale to Cyrus of $880 million of MTNs would be the best way to maximize value to the Debtors' estates.  This decision represented a sound exercise of the Debtors' business judgment, and significantly benefitted the Debtors' estates.

27.     Contrary to the assertions in the Motion, the Debtors did not agree to sell any Sears Re MTNs to Cyrus or any other bidder.  The Debtors did, however, agree not to sell any additional MTNs, because that was necessary to provide Cyrus with the benefit of its bargain. The Debtors determined that agreeing to that limitation was another exercise of sound business

8

judgment because, in exchange, they were receiving a price for the MTNs that far exceeded their expectations.

28.    Although the Court's permission to sell the MTNs owned by Sears Re was not necessary, because Sears Re is not a Debtor, the Debtors accurately represented to the Court at the November 15 hearing that they were not seeking to sell the Sears Re MTNs. Contrary to Omega's assertions, the Debtors did not have Sears Re MTNs "listed" with ISDA for the ISDA Auction; upon information and belief, it was actually *Omega* that requested that ISDA qualify the Sears Re MTNs for the ISDA Auction.

## DISCUSSION

### I.    The Motion Should Be Denied Because it is Based on Numerous False Premises and Would Result in Significant Harm, Rather Than Value, To The Debtors' Estates

29.    Omega's Motion should be denied, because its entire premise rests on readily disproven facts.  Moreover, the relief Omega seeks is not even clear.  If Omega were to prevail, how could the Court unwind just a portion of the sale?  How, if at all, would the price paid by Cyrus be allocated?  Would the Debtors have to refund the entire purchase price?  The Motion answers none of these questions, while seeking relief that would significantly harm the Debtors' estates by voiding a lucrative transaction already approved by the Debtors' Board of Directors, supported by the Creditors' Committee, and consummated.

30.    As an initial matter, as described above, Omega's argument that the sale of the MTNs to Cyrus fell outside the scope of the Sale Order is spurious; the Sale Order simply did not limit the amount of MTNs the Debtors were authorized to sell.  *See* Sale Order at ¶ 3.   The actual notice required by Section 363(b) of the Bankruptcy Code indisputably took place here, given the Sale Motion, the two separate court hearings, and the Sale Order – all carefully

monitored by Omega and its counsel – each of which made transparent the total amount of MTNs available for purchase and the sale process that the Debtors sought to undertake.[6]

31.    Further, Omega's desperation to improve its CDS position despite its having submitted a low bid in the Auction is not an appropriate basis for the relief it seeks.  Unlike *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 762-63 (7th Cir. 2004) (cited in the Motion at ¶ 40), where the Seventh Circuit affirmed a request by the *debtor* to reopen an auction in order to get the "highest and best" results for the estate, there is no sound basis in this case for a losing bidder to successfully void an approved sale that in fact resulted the highest price and lowest execution risk for the Debtors' estates.

32.    Here, the Debtors' advisors, the Debtors' Board of Directors, and the Creditors' Committee and its advisors all considered each of the bids tendered, and made a decision based on a sound business justification as to what would yield the highest or best value to the estates.[7] The sale of the MTNs was a one-time opportunity that maximized value for the estates, while the relief requested in the Motion would result in a clear loss of value for the Debtors' estates, and not benefit anyone other than Omega.

33.    Indeed, the relief requested is not tenable even if it were merited (which it is not). Given the finding the Cyrus was a good faith purchaser entitled to the protections of section 363(m), Cyrus might have a breach of contract claim against the Debtors.[8]  Moreover, the $82.5

---

[6] In contrast, the cases cited by Omega involved transactions where no notice was given via hearing or court order. *See In re Weisser Eyecare, Inc.*, 245 B.R. 844, 847 (Bankr. N.D. Ill. 2000) (challenged transaction was not included in court order nor was notice given to creditors); *In re Barfield*, 2015 WL 401308 at *3 (Bankr. C.D. Ill. Jan. 29, 2015) (sale took place without court-ordered approval while objection was pending).

[7] *Cf. In re Family Christian, LLC*, cited in the Motion at ¶ 40, which turned on the Debtors' lack of any business justification for the sale to *any* bidder, and the fact that the sale was to an insider. 533 B.R. 600, 625 (Bankr. W.D. Mich. 2015).

[8] The Sale Order deemed the purchaser of the MTNs a good-faith purchaser under Section 363(m), meaning that the reversal or modification of the Sale Order on appeal will not affect the validity of the sale, unless such sale was

10

million that was deposited into the Winddown Account was a critical component of the final approval of the DIP ABL Facility and, presumably, factored into lenders' willingness to provide the Junior DIP Financing. Perhaps most importantly, there is no assurance that, if the relief requested is granted, any party would be prepared to pay $82.5 million, let alone more than that, for the MTNs. From the Debtors' point of view, therefore, granting the relief requested in the Motion would be risky.

34.     Omega's argument that the Debtors' agreement *not* to sell the Sears Re MTNs is equivalent to the actual sale of those Sears Re MTNs is an exercise in "magical thinking," and, in any event, is irrelevant. Sears Re continues to own $1.4 billion of MTNs; pursuant to the Debtors' agreement with Cyrus, Sears Re could sell its MTNs after the ISDA Auction.

35.     Omega's contention that Debtors' counsel misled the Court, when, upon information and belief, Omega knew very well that it was *Omega itself* that sought to have the Sears Re MTNs listed with ISDA (Motion at ¶¶ 24 n.7, 29) is completely scurrilous.

36.     In any event, this Court does not have the jurisdiction to restrict or mandate the sale of non-debtor Sears Re's MTNs even if it wanted to (and Omega has offered no reasonable justification for why the Court would have tried to limit such a sale). *See, e.g.*, *Manson v. Friedberg*, No. 08 Civ. 3890(RO), 2013 WL 2896971, at *3 (S.D.N.Y. June 13, 2013) (citing general rule that property of the estate does not encompass the assets of a non-debtor subsidiary); *In re Kolinsky*, 100 B.R. 695, 701 (Bankr. S.D.N.Y 1989) (assets of a non-debtor corporation are not subject to administration under the Bankruptcy Code). The allegations in the Motion regarding the Sears Re MTNs create absolutely no basis for voiding the sale of the SRAC MTNs.

---

stayed pending appeal, which it was not. *See* Sale Order at ¶ 7; *see also* 11 U.S.C. § 363(m); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (recognizing the importance of finality in sales).

WEIL:\96833285\13\73217.00044

37.    Contrary to the conclusory allegations in the Motion, Cyrus is not an "insider" of the Debtors.  A statutory "insider" of a corporate debtor under the Bankruptcy Code is limited to directors, officers, persons in control, a partnership in which the debtor is a general partner, a general partner, or a relative of any of the above.  11 U.S.C. § 101 (31).  Omega has not proffered any basis under which Cyrus could be an insider of the Debtors under this definition, nor could it.  Likewise, the mere speculation that Cyrus "may have had access" to material, confidential information as a potential DIP lender (Motion at ¶ 42, n. 9) is neither true, nor sufficient to render Cyrus an "insider" pursuant to Section 101 of the Bankruptcy Code.

## II.    The Motion Should Be Denied Because Omega Lacks Standing

38.    In addition to the numerous substantive deficiencies in the Motion, it should also be denied because Omega lacks standing.  Omega lacks standing as a creditor, because it is clear that its "creditor" status – which Omega admits is based on its purchase of SRAC Notes on November 21, 2018, *after* the Auction (Motion at ¶ 36) – was a *post-hoc* scheme plainly undertaken to disrupt the sale of the MTNs.   But, such a purchase cannot be used to manufacture standing that did not exist at the time of the Sale Motion (or the MTN sale).  *See Hirsch v. Qingdao Orien Commercial Equip. Co. Ltd.*, No. 12-CV-952 (RRM), 2015 WL 1014352, at *7-9 (E.D.N.Y. Mar. 6, 2015) (holding that a movant "cannot manufacture standing retroactively if none existed" at the "inception" of a lawsuit; *see also In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 530-31 (3d Cir. 1999) (holding a non-winning bidder generally lacks standing to appeal a Bankruptcy Court where the party was not a creditor as of the date of the order).[9]

---

[9] Likewise, even if Omega had brought this Motion as a motion under Rule 60(b), which it has not (*see* Motion at n.3), Omega would still be required to demonstrate standing, which it cannot do for the same reasons stated above. *See also In re Britannia Bulk Holdings Inc. Sec. Litig.*, No. 08 CIV. 9554 (DLC), 2010 WL 446529, at *2 (S.D.N.Y. Feb. 9, 2010) (standing is granted only in extremely rare circumstances for nonparties seeking relief under Rule 60(b)).

12

39.    Omega also fails to demonstrate that it has standing to challenge the MTN sale on the basis of the purported "intrinsic structure of the sale," or alleged "fraud, mistake, or unfairness." *See* Motion at ¶ 36. Omega mischaracterizes the Sale Order, which did not limit the sale of MTNs to a specific amount of such notes. Rather than "fraud" or "unfairness," all Omega can show is that it was not the winning bidder, and did not seek to buy additional MTNs when it clearly could have done so. Indeed, Omega did not even seek to buy most of the MTNs that were included in the Auction Notice, nor did it make any offer unburdened by contingencies carrying significant risk for the Debtors. Omega's own failures are not the basis for a challenge to the "intrinsic structure" of the sale.[10]

### III.    Even If Omega's Allegations Had Merit, Which They Do Not, The Relief Omega Seeks Cannot Be Granted On Its Motion

40.    As discussed above, Omega's Motion is contrary to the facts and the equities, but also suffers from fatal procedural defects. Because the relief requested in the Motion is effectively for an injunction and a declaratory judgment "(i) confirming the scope of the prior order …, (ii) invalidating any portions of the sale that exceeded such scope as ultra vires, and (iii) clarifying that the advance good-faith findings for the purchaser do not extend to unauthorized sales or agreements" (Motion at p.1), Bankruptcy Rule 7001 requires Omega file an adversary proceeding and a complaint for the relief it seeks. Had it done so, the Debtors would have answered the pleading and conducted discovery in due course. Omega's attempt to

---

[10] The case Omega relies on for its assertion of standing based on a challenge to the "intrinsic structure" of the sale (Motion at ¶ 36), further demonstrates why Omega lacks standing here. In *In re Colony Hill Assoc.*, 111 F.3d 269, 274 (2d Cir. 1997), an unsuccessful bidder had standing to allege a purchaser destroyed the "intrinsic fairness" of a sale transaction where it was *entirely excluded* from making a bid despite having been the highest bidder, such that no auction even took place. Here, Omega had the opportunity to bid, bid low, and now essentially asks the Court to declare it the winner despite that low bid – circumstances that do not confer standing on Omega despite its regret at the outcome of the auction.

13

bypass appropriate procedural practice is an additional reason that the Motion should be denied in its entirety.

## CONCLUSION

41.     In conclusion, Omega is seeking to do exactly what it has accused Cyrus of doing – taking action in the chapter 11 cases that is designed to protect Omega's parochial interest as a CDS participant, rather than to protect any interests of the Debtors' estates. The key difference is that Cyrus has provided over $80 million of value to the Debtors' estates – and arguably much more as a result of its waiver of a right to payment on over $600 million of MTNs. Omega was not willing to make a credible offer when it had the chance, and has no cognizable complaint now that should be recognized by the Court.

WHEREFORE the Debtors respectfully request the Court deny the Motion in its entirety and grant Debtors such other and further relief as is just.

Dated:  December 13, 2018
          New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

14

# Exhibit A

**From:** Blair Adams <blairadams@quinnemanuel.com>
**Date:** November 8, 2018 at 12:04:10 PM EST
**To:** "Chivers, Corey" <corey.chivers@weil.com>, "DCSecretary@cdsdeterminationscommittees.org"
<DCSecretary@cdsdeterminationscommittees.org>
**Cc:** "Marcus, Jacqueline" <jacqueline.marcus@weil.com>, "Kronman, Ariel" <ariel.kronman@weil.com>, "Logan, Claire"
<Claire.Logan@weil.com>, "Jon Pickhardt" <jonpickhardt@quinnemanuel.com>, Andrew Corkhill
<andrewcorkhill@quinnemanuel.com>, Ellison Merkel <ellisonmerkel@quinnemanuel.com>, Daniel Cunningham
<danielcunningham@quinnemanuel.com>, Evan Hess <evanhess@quinnemanuel.com>
**Subject: RE: Sears Roebuck Acceptance Corp. Credit Event (Email 1 of 4)**

DC Secretary,

The documents submitted yesterday evening by Mr. Chivers should be considered part of the other
submissions made by Omega Advisors, Inc. in respect of adding additional Deliverable Obligations to the
Supplemental List.  In response to the specific questions set forth below:

1. The Eligible Market Participant submitting this information is Omega Advisors, Inc.
2. The documents provided are public documents and not subject to confidentiality restrictions
3. As part of Omega's submission from yesterday evening, these submissions are covered by
   Omega's agreement to pay any of the reasonable costs related to any successful challenge to
   the inclusion of the Proposed Deliverables that could be incurred under Section 3.3(e) of the DC
   Rules

Respectfully Submitted,
Blair Adams

Blair Adams
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7615 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
blairadams@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named
above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader
of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you
have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you
have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Chivers, Corey [mailto:corey.chivers@weil.com]
**Sent:** Thursday, November 08, 2018 12:01 PM
**To:** DCSecretary@cdsdeterminationscommittees.org
**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Kronman, Ariel <ariel.kronman@weil.com>;
Logan, Claire <Claire.Logan@weil.com>; Blair Adams <blairadams@quinnemanuel.com>
**Subject:** RE: Sears Roebuck Acceptance Corp. Credit Event (Email 1 of 4)

Dear DC Secretary:

In response to your email, I have copied Blair Adams and Jonn Emanuel, who will respond to your queries and confirm on whose behalf the is submission is made.

Best regards,



**Corey R. Chivers**
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
corey.chivers@weil.com
+1 212 310 8893 Direct
+1 212 310 8007 Fax

---

**From:** DCSecretary@cdsdeterminationscommittees.org <DCSecretary@cdsdeterminationscommittees.org>
**Sent:** Wednesday, November 7, 2018 10:13 PM
**To:** Chivers, Corey <corey.chivers@weil.com>
**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Kronman, Ariel <ariel.kronman@weil.com>; Logan, Claire <Claire.Logan@weil.com>; DCSecretary@cdsdeterminationscommittees.org
**Subject:** RE: Sears Roebuck Acceptance Corp. Credit Event (Email 1 of 4)

Dear Corey

Further to the below, we would be grateful if you could confirm the following points:

1. **Identity of Client and Eligible Market Participant requirements**

Please could you confirm the legal entity name of the Eligible Market Participant for whom you are acting?

Under the DC Rules, an Eligible Market Participant means either (i) a party to a Relevant Transaction or (ii) a CCP that has an open interest in Relevant Transactions. Please could you confirm that your client meets either of these criteria?

Please note that under the DC Rules, "Relevant Transaction" is defined as Credit Derivative Transactions that have, or are deemed to have, incorporated the 2014 Definitions or the Updated 2003 Definitions in the relevant Confirmation.

2. **Status of the documents provided**

Please could you also confirm that the documents that you have distributed to the DC Secretary are publically available, and not subject to any confidentiality requirements?

3. **Agreement to pay reasonable costs in the event of a successful challenge**

Lastly, as outlined below and under DC Rule 3.3(c), please confirm that your client agrees to pay any of the reasonable costs related to any successful challenge to the inclusion of such obligation that could be incurred under Section 3.3(e) of the DC Rules.

Please let us know if you have any queries.

Kind regards

DC Secretary

---

**From:** DCSecretary
**Sent:** Wednesday, November 07, 2018 6:10 PM
**To:** 'Chivers, Corey'
**Cc:** 'Marcus, Jacqueline'; 'Kronman, Ariel'; 'Logan, Claire'; DCSecretary
**Subject:** RE: Sears Roebuck Acceptance Corp. Credit Event (Email 1 of 4)

Dear Corey

Many thanks for your email - we will review the documents in line with the DC Rules.

Please could you also notify the Eligible Market Participant on whose behalf you acting that, under DC Rule 3.3(c), the submitter of such an application must agree to pay any of the reasonable costs related to any successful challenge to the inclusion of such obligation that could be incurred under Section 3.3(e) of the DC Rules.

Please note that a Supplemental List will be published by the DC Secretary by 7pm EST tonight.

Kind regards

DC Secretary

---

**From:** Chivers, Corey [mailto:corey.chivers@weil.com]
**Sent:** Wednesday, November 07, 2018 4:34 PM
**To:** DCSecretary
**Cc:** Marcus, Jacqueline; Kronman, Ariel; Logan, Claire; Chivers, Corey
**Subject:** Sears Roebuck Acceptance Corp. Credit Event (Email 1 of 4)

To:  DCSecretary@cdsdeterminationscommittees.org

Dear DC Secretary:

In connection with the Sears Roebuck Acceptance Corp. ("SRAC") credit event, attached please find documentation relating to a proposed supplemental obligation.

Attached herewith please find:

- A schedule of certain outstanding SRAC Medium-Term Notes Series B (and related CUSIPs), currently held by certain SRAC affiliates
- A copy of the Indenture, dated as of October 1, 2002, pursuant to which the Notes were issued
- A 144A Eligibility Letter to make the Notes eligible for resale under Rule 144A

Because of size, we will send the underlying note documentation for each issuance in separate emails, organized by the current Holder specified in the schedule.

Do not hesitate to contact the undersigned with any questions.

Best regards,



**Corey R. Chivers**
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
corey.chivers@weil.com
+1 212 310 8893 Direct
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This email is confidential and may also be privileged. If you are not the intended recipient please delete it and notify us immediately by telephoning or e-mailing the sender. You should not copy it or use it for any purpose nor disclose its contents to any other person.

Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: 212 610 6300
Fax: 212 610 6399
http://www.allenovery.com

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications. A list of the members of Allen & Overy LLP and of the non-members who are designated as partners is open to inspection at its registered office, One Bishops Square London E1 6AD and at the above address.

For further information about how Allen & Overy LLP is regulated, please see our website at www.allenovery.com/aoweb/legal.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# Exhibit B

| | |
|---|---|
| **From:** | ███████████████████████████████ |
| **Sent:** | Tuesday, November 20, 2018 11:58 AM |
| **To:** | Joseph Femenia |
| **Cc:** | █████████████████ |
| **Subject:** | SRAC MTN Bid |

[External Message]

██████████

████ would like to reflect the following bid into the SRAC MTN auction.

**We bid 11 for 1mm of any of the below CUSIPs.**

812404CN9
812404BS9
812404CM1

Stipulations:
1.) A fill on one tranche cancels the other two.
2.) The transaction will be null and void if the Medium Term Notes purchased as a part of this transaction are subject to any quitclaims, any counterclaim, defense, lien, claim, charge, encumbrance, or right of set off as today or for 6 months subsequent to this transaction.

Please let me know of any issues.

Thanks,

████

**From:** ███████████
**Sent:** Tuesday, November 20, 2018 12:00 PM
**To:** Joseph Femenia; ████████████
**Subject:** RE: BWIC Sears Series B MTN's - 12PM EST Nov 20th

[External Message]

████ bids $20 for 15mm of any of the notes below, not subject to any conditions
Alternatively, ████ bids $10 for 30mm of any of the notes below, not subject to any conditions and assuming the bid above is not executed.

████ bids $25 for 20mm of the notes below, subject to the condition that the notes are included on the final list of deliverable obligations, assuming no change to the language in the Order authorizing the 363 sale (no counterclaim, defense, right of setoff)

**From:** Joseph Femenia [mailto:jfemenia@jefferies.com]
**Sent:** Tuesday, November 20, 2018 8:16
**To:** ████████████████████
**Subject:** BWIC Sears Series B MTN's - 12PM EST Nov 20th

This mail originated from outside our organisation - jfemenia@jefferies.com

Thx

Sears Holdings Corporation intends to conduct an auction on no more than 251,245,000  SRAC Medium Term Notes **Today at 12PM EST, Bids must be firm until 4PM EST**. Anyone bidding must be a QIB and should submit bids, sizes and any stipulations. Bids must be submitted by email, partial bids will be allowed.  Sears will evaluate all bids and select buyers based on the highest or best bid in its sole discretion and business judgement. The auction may continue from time to time.  Sears reserves the right to sell all, part or none of the notes dependent upon price and stipulations.

- Notes will be 144A for life
- Buyers will be asked to affirm QIB status
- Each potential buyer must submit their own bid

- SRAC confirms that the Notes were issued to the applicable Debtor/Seller for borrowed money and that, up until the commencement of its chapter 11 case, SRAC made regular interest payments on the Notes to the applicable Debtor/Seller.
- Further, Sears Holdings Corporation and its affiliated Debtors confirm that SRAC is not aware of, and does not intend to pursue, and hereby quitclaims any counterclaim, defense, lien, claim, charge, encumbrance, or right of setoff with respect to any purchaser or transferee of the Notes.

Attached please find the indenture governing the notes as well as the website for additional information.

https://searsholdings.com/invest/financial-transactions/sears-roebuck-acceptance-corp-medium-term-notes-series-b-documentation

| Security | CUSIP | Maturity | Notional |
|---|---|---|---|
| SRAC Medium Term Note Series B | 812404CN9 | 1/28/2020 | 122,500,000 |
| SRAC Medium Term Note Series B | 812404BS9 | 1/31/2020 | 82,800,000 |
| SRAC Medium Term Note Series B | 812404CM1 | 1/24/2020 | 45,946,000 |

Please email Bids: jfemenia@jefferies.com and your Jefferies salesperson

Jefferies archives and monitors outgoing and incoming e-mail. The contents of this email, including any attachments, are confidential to the ordinary user of the email address to which it was addressed. If you are not the addressee of this email you may not copy, forward, disclose or otherwise use it or any part of it in any form whatsoever. This email may be produced at the request of regulators or in connection with civil litigation. Jefferies accepts no liability for any errors or omissions arising as a result of transmission. Use by other than intended recipients is prohibited. In the United Kingdom, Jefferies operates as Jefferies International Limited; registered in England: no. 1978621; registered office: Vintners Place, 68 Upper Thames Street, London EC4V 3BJ. Jefferies International Limited is authorized and regulated by the Financial Conduct Authority.



**Sent:** Tuesday, November 20, 2018 12:20 PM
**To:** Gregory Miesner <gmiesner@jefferies.com>

**Subject:** FW: BWIC Sears Series B MTN's - 12PM EST Nov 20th

[External Message]

**Sent:** Tuesday, November 20, 2018 12:19 PM

**Subject:** RE: BWIC Sears Series B MTN's - 12PM EST Nov 20th

Capitalized terms herein if not defined are defined terms in the 2014 ISDA Credit Derivatives Definitions and the Credit Derivatives Determinations Committee Rules.

███████████ Bid:

███████████ Bid is for $6,140,229 face amount of SRAC Medium Term Notes.  If the ███████████ Bid is selected as a winning bid, ███████████ must be filled on their total size by only one of the following three cusips: 812404CN9, 812404BS9, 812404CM1.

███████████ Bid is **contingent** on the SRAC Medium Term Notes satisfying section 3.2 of the Credit Derivatives Definitions and is contingent on the SRAC Medium Term Notes  being included on the Final List of Deliverable Obligations published by the Americas Credit Derivatives Determinations Committee in relation to the SRAC CDS Auction.  The ███████████ Bid will be canceled and nullified if Americas Credit Derivatives Determinations Committee decides that the SRAC Medium Term Notes  are to be excluded from the Final List of Deliverable Obligations in relation to the SRAC CDS Auction.

At the discretion of ███████████, the bid can be canceled up to 2 business days after the Final List of Deliverable Obligations is published

███████████ Bid is 0.1% of higher than the highest bid received in the auction, with a limit of 35% of the $6,140,229 face amount of SRAC Medium Term Notes.  The limit ensures that the maximum proceeds from ███████████ Bid is $2,149,080.

**From:** Gregory Miesner [mailto:gmiesner@jefferies.com]
**Sent:** Tuesday, November 20, 2018 7:46 AM

**Subject:** BWIC Sears Series B MTN's - 12PM EST Nov 20th

Sears Holdings Corporation intends to conduct an auction on no more than 251,245,000  SRAC Medium Term Notes **Today at 12PM EST, Bids must be firm until 4PM EST**. Anyone bidding must be a QIB and should submit bids, sizes and any stipulations. Bids must be submitted by email, partial bids will be allowed.  Sears will evaluate all bids and select buyers based on the highest or best bid in its sole discretion and business judgement. The auction may continue from time to time.  Sears reserves the right to sell all, part or none of the notes dependent upon price and stipulations.

- Notes will be 144A for life
- Buyers will be asked to affirm QIB status
- Each potential buyer must submit their own bid
- SRAC confirms that the Notes were issued to the applicable Debtor/Seller for borrowed money and that, up until the commencement of its chapter 11 case, SRAC made regular interest payments on the Notes to the applicable Debtor/Seller.
- Further, Sears Holdings Corporation and its affiliated Debtors confirm that SRAC is not aware of, and does not intend to pursue, and hereby quitclaims any counterclaim, defense, lien, claim, charge, encumbrance, or right of setoff with respect to any purchaser or transferee of the Notes.

Attached please find the indenture governing the notes as well as the website for additional information.

https://searsholdings.com/invest/financial-transactions/sears-roebuck-acceptance-corp-medium-term-notes-series-b-documentation

| Security | CUSIP | Maturity | Notional |
|---|---|---|---|
| SRAC Medium Term Note Series B | 812404CN9 | 1/28/2020 | 122,500,000 |
| SRAC Medium Term Note Series B | 812404BS9 | 1/31/2020 | 82,800,000 |
| SRAC Medium Term Note Series B | 812404CM1 | 1/24/2020 | 45,946,000 |

Please email Bids: jfemenia@jefferies.com and your Jefferies salesperson

Jefferies archives and monitors outgoing and incoming e-mail. The contents of this email, including any attachments, are confidential to the ordinary user of the email address to which it was addressed. If you are not the

addressee of this email you may not copy, forward, disclose or otherwise use it or any part of it in any form whatsoever. This email may be produced at the request of regulators or in connection with civil litigation. Jefferies accepts no liability for any errors or omissions arising as a result of transmission. Use by other than intended recipients is prohibited. In the United Kingdom, Jefferies operates as Jefferies International Limited; registered in England: no. 1978621; registered office: Vintners Place, 68 Upper Thames Street, London EC4V 3BJ. Jefferies International Limited is authorized and regulated by the Financial Conduct Authority.

Jefferies archives and monitors outgoing and incoming e-mail. The contents of this email, including any attachments, are confidential to the ordinary user of the email address to which it was addressed. If you are not the addressee of this email you may not copy, forward, disclose or otherwise use it or any part of it in any form whatsoever. This email may be produced at the request of regulators or in connection with civil litigation. Jefferies accepts no liability for any errors or omissions arising as a result of transmission. Use by other than intended recipients is prohibited. In the United Kingdom, Jefferies operates as Jefferies International Limited; registered in England: no. 1978621; registered office: Vintners Place, 68 Upper Thames Street, London EC4V 3BJ. Jefferies International Limited is authorized and regulated by the Financial Conduct Authority.

**From:** ███████████████████
**Sent:** Tuesday, November 20, 2018 11:45 AM
**To:** Joseph Femenia
**Cc:** ████████████████
**Subject:** RE: BWIC Sears Series B MTN's - 12PM EST Nov 20th *** UPDATE ***

[External Message]

Hello, please amend ███████ bid to 25 for 11mm of the Series B MTN's.

**From:** ████████████████
**Sent:** Tuesday, November 20, 2018 10:34 AM
**To:** Joseph Femenia <jfemenia@jefferies.com>
**Cc:** cjairl@jefferies.com; ██████████████████████
**Subject:** RE: BWIC Sears Series B MTN's - 12PM EST Nov 20th

Hello, ██████ bids 15 for 5mm of the Series B MTN's. If you need anything else, please let me know. Thanks

**From:** Joseph Femenia <jfemenia@jefferies.com>
**Sent:** Tuesday, November 20, 2018 8:43 AM
████████████████████████
**Subject:** FW: BWIC Sears Series B MTN's - 12PM EST Nov 20th

██████ – see below

Sears Holdings Corporation intends to conduct an auction on no more than 251,245,000  SRAC Medium Term Notes **Today at 12PM EST, Bids must be firm until 4PM EST**. Anyone bidding must be a QIB and should submit bids, sizes and any stipulations. Bids must be submitted by email, partial bids will be allowed.  Sears will evaluate all bids and select buyers based on the highest or best bid in its sole discretion and business judgement. The auction may continue from time to time.  Sears reserves the right to sell all, part or none of the notes dependent upon price and stipulations.

- Notes will be 144A for life
- Buyers will be asked to affirm QIB status
- Each potential buyer must submit their own bid
- SRAC confirms that the Notes were issued to the applicable Debtor/Seller for borrowed money and that, up until the commencement of its chapter 11 case, SRAC made regular interest payments on the Notes to the applicable Debtor/Seller.
-  Further, Sears Holdings Corporation and its affiliated Debtors confirm that SRAC is not aware of, and does not intend to pursue, and hereby quitclaims any counterclaim, defense, lien, claim, charge, encumbrance, or right of setoff with respect to any purchaser or transferee of the Notes.

Attached please find the indenture governing the notes as well as the website for additional information.

https://searsholdings.com/invest/financial-transactions/sears-roebuck-acceptance-corp-medium-term-notes-series-b-documentation

| Security | CUSIP | Maturity | Notional |
|---|---|---|---|
| SRAC Medium Term Note Series B | 812404CN9 | 1/28/2020 | 122,500,000 |
| SRAC Medium Term Note Series B | 812404BS9 | 1/31/2020 | 82,800,000 |
| SRAC Medium Term Note Series B | 812404CM1 | 1/24/2020 | 45,946,000 |

Please email Bids: jfemenia@jefferies.com and your Jefferies salesperson

Jefferies archives and monitors outgoing and incoming e-mail. The contents of this email, including any attachments, are confidential to the ordinary user of the email address to which it was addressed. If you are not the addressee of this email you may not copy, forward, disclose or otherwise use it or any part of it in any form whatsoever. This email may be produced at the request of regulators or in connection with civil litigation. Jefferies accepts no liability for any errors or omissions arising as a result of transmission. Use by other than intended recipients is prohibited. In the United Kingdom, Jefferies operates as Jefferies International Limited; registered in England: no. 1978621; registered office: Vintners Place, 68 Upper Thames Street, London EC4V 3BJ. Jefferies International Limited is authorized and regulated by the Financial Conduct Authority.

**From:**
**Sent:** Tuesday, November 20, 2018 12:09 PM
**To:** Joseph Femenia
**Cc:**
**Subject:** RE: SRAC auction /

[External Message]

Subject to all trading at same price.

**From:**
**Sent:** Tuesday, November 20, 2018 11:59 AM
**To:** 'jfemenia@jefferies.com' <jfemenia@jefferies.com>
**Cc:** Brian Hewitt (bhewitt@jefferies.com) <bhewitt@jefferies.com>; 'mcunningham1@jefferies.com' <mcunningham1@jefferies.com>
**Subject:** SRAC auction /

We would bid 32 for 5mm

**From:** ████████████████████████████
**Sent:** Tuesday, November 20, 2018 12:09 PM
**To:** Joseph Femenia; ████████████████████
**Cc:** ████████████████████████
**Subject:** RE: Sears MTN bids ████

[External Message]

Pls replace our bid with following:

$20 bid for $40.25mm bonds (same proceeds). Thanks. ) Bid is contingent upon MTNs being approved by the DC as deliverable in the final list of obligation deliverable at the Sears Roedbuck Acceptance CDS auction (for SRAC auction conducted by the ISDA)

---

**From:** ████████████
**Sent:** Tuesday, November 20, 2018 12:00 PM
**To:** 'jfemenia@jefferies.com'; 'aariomand@jefferies.com'
**Cc:** ████████████████████████
**Subject:** RE: Sears MTN bids - ██████████

Pls use language below.

████████████ bids 23$ for 35mm notional of MTNs (any cusip) contingent upon MTNs being approved by the DC as deliverable in the final list of obligation deliverable at the Sears Roedbuck Acceptance CDS auction (for SRAC auction conducted by the ISDA)

---

**From:** ████████████
**Sent:** Tuesday, November 20, 2018 11:58 AM
**To:** 'jfemenia@jefferies.com'; 'aariomand@jefferies.com'
**Cc:** ████████████████████████
**Subject:** Sears MTN bids - ██████████

████████████ bids 23$ for 35mm notional of MTNs (any cusip) contingent on MTNs deemed deliverables in final list (for SRAC auction conducted by the ISDA)

**From:** Rob Lentini <RLentini@CYRUSCAPITAL.COM>
**Sent:** Tuesday, November 20, 2018 12:02 PM
**To:** Mark Horowitz <mhorowitz@jefferies.com>; Joseph Femenia <jfemenia@jefferies.com>
**Subject:** FW: SRAC MTN auction - Cyrus Capital bid
**Importance:** High

[External Message]

**From:** Svetoslav Nikov
**Sent:** Tuesday, November 20, 2018 11:59 AM
**To:** mhorowitz@jefferies.com; jfemenia@jefferies.com; 'jacqueline.marcus@weil.com' <jacqueline.marcus@weil.com>; Brandon Aebersold (brandon.aebersold@lazard.com) <brandon.aebersold@lazard.com>
**Cc:** Rob Jackson <rjackson@cyruscapital.com>; Rob Lentini <RLentini@CYRUSCAPITAL.COM>; Eric Reimer <ereimer@milbank.com>
**Subject:** SRAC MTN auction - Cyrus Capital bid
**Importance:** High

Cyrus bids the following alternatives – the seller can choose either of the three:

Option 1 - Cyrus bids $35mm for all MTNs held by affiliates of SRAC other than SearsRe (approx. $881mm par amount of SRAC MTNs identified by the CUSIPs on the attached schedule). The bid is to be consummated on the terms in the attached note purchase agreement. Cyrus will waive the right to receive distributions or vote with respect to all of the purchased MTNs as described in the attached agreement

Option 2 - Cyrus bids $50mm for all MTNs held by affiliates of SRAC other than SearsRe (approx. $881mm par amount of SRAC MTNs identified by the CUSIPs on the attached schedule). The bid is to be consummated on the terms in the attached note purchase agreement. Cyrus will waive the right to receive distributions or vote with respect to approx. $831mm par amount of MTNs as described in the attached agreement and will retain the right to receive distributions with respect to $50mm par amount of MTNs issued under CUSIP 812404BS9

Option 3 - Cyrus bids $82.5mm for all MTNs held by affiliates of SRAC other than SearsRe (approx. $881mm par amount of SRAC MTNs identified by the CUSIPs on the attached schedule). The bid is to be consummated on the terms in the attached note purchase agreement. Cyrus will waive the right to receive distributions or vote with respect to approx. $630mm par amount of MTNs as described in the attached agreement and will retain the right to receive distributions with respect to approx. $251mm par amount of MTNs issued under CUSIPs 812404CN9 ($122,500,000 par amount), 812404BS9 ($82,800,000 par amount) and 812404CM1 ($45,946,000 par amount)

Bids are good until the earlier of 4pm and the ISDA DC announces that the obligations herein will not be on the Final List of Deliverable Obligations before that time

Svet
_____
Svetoslav Nikov
Cyrus Capital Partners, LP
65 East 55 Street, 35 floor
New York, NY 10022
snikov@cyruscapital.com
(w) 212-380-5822 | (m) 917-520-1090

NOTICE: This email and any attachments are confidential, intended for only the recipient(s) named above and are protected by law. It may contain information that is protected from use or disclosure under the attorney-client privilege, the work product doctrine or other applicable law. This information may also be entitled to legal protection under the United States' Electronic Communications Privacy Act, 18 USC Sections 2510-2521. Sender does not waive confidentiality or privilege. If you have received this email in error, or are not the named recipient(s), you are hereby notified that any use, dissemination, distribution or copying of this email or any attachments is strictly prohibited and may subject you to penalties. Please immediately notify the sender and delete this email and any attachments from your computer. You should not retain, copy or use this email or any attachments for any purpose, or disclose all or any part of the contents to any person. This message is provided for informational purposes and should not be construed as a solicitation or offer to buy or sell securities or any other financial instrument. Any information regarding trading performance must be considered in conjunction with the appropriate disclosure documents. Past performance is not necessarily indicative of future results. Cyrus Capital Partners, L.P. reserves the right to monitor all email communications through its networks.

| | |
|---|---|
| **From:** | Sam Martini <sam@omega-advisors.com> |
| **Sent:** | Tuesday, November 20, 2018 12:18 PM |
| **To:** | Joseph Femenia; Gregory Miesner |
| **Subject:** | SRAC |

[External Message]

We offer to pay _**at least $28m for $70m bonds**_, contingent on the addition of the MTNs being auctioned to Final Deliverable List by the ISDA Determinations Committee ("DC").

This bid is good and _**remains good as long as need be to obtain final approval by the DC and will remain in place until the earlier of 2 business days prior to the final SRAC CDS Auction, this bid being formally rejected by Jefferies or until cancelled by Omega.**_

If any clarifications required please call.

| | |
|---|---|
| **From:** | Reed, Daniel <Daniel.Reed@ozm.com> |
| **Sent:** | Tuesday, November 20, 2018 11:58 AM |
| **To:** | Joseph Femenia; Brian Hewitt |
| **Cc:** | Kelly, Hal; Kallmann, Andrew; Kilfoyle, Colleen |
| **Subject:** | Sears MTN auction bids |

[External Message]

All orders are contingent on the language below:

The order is automatically canceled if prior to the auction conclusion on November 20th, the ISDA Determinations Committee makes any new decision or ruling on the deliverability of the notes (unless such decision or ruling puts the MTN Notes on the Final List of deliverable obligations in the CDS Auction, or otherwise determines that MTN Notes will be deliverable into the CDS Auction).

**Order:**

All these bids are OCO (one cancels other-meaning we can only get filled on any one of the orders):

25 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 23.
24 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 22.
23 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 21.
22 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 20.
21 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 19.
20 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 18.
19 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 17.
18 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 16.
17 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 15.
16 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 14.
15 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 13.
14 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 12.
13 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 11.
12 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 10.
11 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 9.
10 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 8.
9 Bid for 14 million bonds if the lowest bid accepted in the auction isn't below 7.

8 Bid for 15 million bonds if the lowest bid accepted in the auction isn't below 5.
3.5 bid for 50 million bonds

The information contained in this message and any attachment(s) may be privileged, confidential, proprietary or otherwise protected from disclosure and is intended solely for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this message and any attachment is strictly prohibited and may be unlawful. If you have received this message in error, please notify us immediately by replying to this email and permanently delete the message from your computer. Och-Ziff Capital Management Group LLC and its affiliates will use any personal information you give to us in accordance with our Privacy Policy and, where relevant, our GDPR and EU Cookies Policy.

Nothing contained in this message and/or any attachment(s) constitutes a solicitation or an offer to buy or sell any securities.