Hearing Date and Time: December 20, 2018 at 10:00 a.m. (Eastern)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re                                       :
                                            :    Chapter 11
SEARS HOLDINGS CORPORATION, et al.,         :
                                            :    Case No. 18-23538 (RDD)
                                            :
         Debtors.¹                          :    (Jointly Administered)
                                            :
-------------------------------------------------------------x
```

# OBJECTION OF DEBTORS TO
# MOTION FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection in response to the motion for relief from the automatic stay (ECF No. 383) (the "**Motion**") filed by Joyce Franklin ("**Movant**"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. A movant seeking relief from the automatic stay must show cause warranting such relief. 11 U.S.C. § 362(d)(1). If the movant fails to satisfy this burden, then "the [C]ourt should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Here, Movant has failed to satisfy her burden to establish cause to lift the automatic stay.

2. Movant seeks to proceed with a prepetition, state court tort action filed days before the commencement of these chapter 11 cases (the "**Franklin Action**"). The Motion is expressly premised, on information and belief, on the availability of third-party insurance coverage for liability for Movant's claims and any related defense costs. As the Debtors explained to Movant, however, no such coverage is available. If the automatic stay is lifted, the Debtors will be forced to incur all administrative costs associated with this nascent lawsuit. Movant is one of many of the Debtors' prepetition general unsecured creditors (although Movant has yet even to file a requisite proof of claim). It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other general unsecured creditors to expend estate resources on Movant's claim at this time. The Motion should be denied.

2

**BACKGROUND**

A.    **The Franklin Action and Motion to Lift Stay**

3.    On September 24, 2018, Movant filed the Franklin Action, captioned *Franklin v. Kmart Corp., et al.,* No. G-4801-CI-0201803819-000, against K-Mart Corporation, Sears Holdings Corporation, and Sedgwick Claims Management in the Court of Common Pleas, Lucas County, Ohio, seeking an amount in excess of $25,000 in damages for injuries she allegedly suffered fifteen months earlier in a K-Mart store in Toledo, Ohio, on July 8, 2017.  *See* Mot. ¶ 1 & Ex. 1.  On October 15, 2018 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  On the Petition Date, the Debtors filed a notice of bankruptcy filing in the Franklin Action.  On October 19, 2018, the state court acknowledged the stay.  No answer or other responsive pleading had been filed in the Franklin Action.

4.    Two weeks into these cases, on October 31, 2018, Movant filed the Motion, seeking relief from the automatic stay to "permit [Franklin] to proceed in the common pleas action and to proceed against any insurance coverage of the Debtors, Sears Holdings Corporation and/or Kmart Corporation, et al."  Mot. at 8.

B.    **The Debtors' Insurance Coverage**

5.    The Debtors maintained various insurance policies in its history over the prepetition period.  Among them were both a general liability and an umbrella policy that potentially could have applied in the Franklin Action.  The general liability policy applicable to incidents that occurred between August 1, 2016 and August 1, 2017 had a $5 million aggregate limit.  Paid losses to date have exceeded the $5 million limit under that policy.  Accordingly, there is no available coverage under this policy with respect to the Franklin Action; the insurer has no

3

duty to defend the Debtors or pay for the Debtors' losses. A copy of a notice of exhaustion evidencing the foregoing is attached hereto as **Exhibit A**.

6. Coverage under the applicable umbrella policy would only be triggered if there was a judgment against the Debtors in excess of $5 million. In the first instance, the Motion does not assert a claim in excess of $5 million. Even if it had, the insurer would not be obligated to defend such claims. The insurer would be responsible only for the amount of the judgment in excess of $5 million.

7. Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the Franklin Action.

## ARGUMENT

### A. Governing Legal Standards

8. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986). The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986). One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums. *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

9. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined, and the decision whether to modify the stay is left to the discretion of the bankruptcy court. *In re Marketxt Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010). In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted. *See Sonnax*

*Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).[2] Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another. *In re RCM Global Long Term Captial Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

10. Movant bears the initial burden to show cause for lifting the automatic stay. *Sonnax*, 907 F.2d at 1285. "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)). Where, as here, Movant has not satisfied her burden of establishing "cause" under section 362(d)(1), a motion should be denied.

**B.     The Debtors Have Exhausted Any Insurance Coverage Applicable to Movant**

11. The Motion is expressly conditioned on the availability of insurance coverage against liability for Movant's claims. The Motion asserts that "upon information and

---

[2] As noted by Movant, the *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

5

belief, the Debtor has available insurance coverage against liability for the claims in the civil court actions." Mot. ¶ 3. Movant seeks relief from the automatic stay in order to "proceed to recover against [the Debtors'] insurance coverage." Mot. ¶ 4.[3] And Movant asserts that, because "there is available insurance coverage by which to cover the claims of Movant against the Debtor, allowing the civil action litigation to proceed will cause no harm to the Debtor or the bankruptcy estate." Mot. ¶ 5. Because any potentially applicable insurance coverage has been exhausted, the relief sought is unavailable.

12. As a result, there is no support for Movant's application of the *Sonnax* factors, most obviously, the fifth factor, which considers whether the Debtors' insurer has assumed full defense responsibility. If the automatic stay were to be lifted with respect to the Franklin Action, the Debtors would be forced to directly incur the costs of all legal fees and expenses to defend their interests or otherwise default and risk an unjustified, larger damages claim. As additional administrative expense claims, those defense costs are "unquestionably a factor to be given serious consideration" in the cause inquiry. *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

13. The same logic applies with respect to the application of the seventh *Sonnax* factor, which considers whether litigation in another forum would prejudice the interests of other creditors. Movant cannot collect any judgment "solely from applicable insurance proceeds and/or other non-debtor sources." Mot. at 6.[4]

---

[3] *See also* Mot. at 7-8.

[4] Movant again cites several cases which actually support denial of the Motion, given their distinct factual circumstances. *See In re R.J. Groover Constr., LLC*, 411 B.R. 460, 464-65 (Bankr. N.D. Ga. 2008) (cause to lift stay existed where bankruptcy creditors would not be harmed because "any possible recovery will be limited to the available insurance proceeds," and "the estate will not suffer any cost in defending the suit" because the insurer had already assumed defense of the underlying litigation, among other factors); *In re 15375 Memorial Corp.*, 382 B.R. at 689-90 (discussed *supra* n.5); *see also In re G.S. Dist., Inc.*, 331 B.R. 552, 567-68 (Bankr. S.D.N.Y. 2005) (no prejudice to other creditors because movant "cannot enforce any money judgment it may receive without permission

6

14. Movant argued that the second *Sonnax* factor, whether there is a lack of connection or interference with the bankruptcy estate, also weighed in favor of lifting the stay solely because of Debtors' purported insurance coverage. *See* Mot. at 5.[5] The automatic stay is meant to shield debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time when the Debtors' personnel should be focused on the chapter 11 cases. *See, e.g., E. Refactories Co. v. Forty Eight Insulations*, 157 F.3d 169 (2d Cir. 1998).

15. Movant argued that the first *Sonnax* factor, whether relief would result in a partial or complete resolution of the issues, also weighed in favor of lifting the stay because Movant would be able to "proceed and litigate her tort claim to conclusion," thereby ending the relationship between the Debtors and Movant. Mot. at 4. Movant's interpretation of lifting the stay to essentially commence a litigation as a "complete resolution" is simply wrong.

16. Movant argued that the twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, also supported lifting the automatic stay. *See* Mot. at 7. No bar date has been established, but Movant has not even filed a proof of claim asserting a specified demand. At this time, lifting the automatic stay will not expedite any potential

---

from this Court and the other issues in the case have been determined, on the record to date, in a manner adverse to the Debtor").

[5] Movant cites cases which support maintaining the stay. *See In re Peterson*, 116 B.R. 247, 250-51 (D. Colo. 1990) (no abuse of discretion in lifting stay where "the movant has stipulated that any recovery will be sought *from debtor's insurer*" and the bankruptcy court's order "was carefully tailored to prevent any judgment from effecting the debtor's resources" (emphasis added)); *In re 15375 Memorial Corp.*, 382 B.R. 652, 689-90 (Bankr. D. Del. 2008) (stay lifted to allow liquidation of claims as a predicate to recovery from liability insurance, where court had "no reason to believe that the proceeds of the liability insurance policies will be insufficient to satisfy all claims presented," and the record established that recovery would "in no way negatively impact the rights of the handful of other creditors in these cases"); *In re Grace Indus., Inc.*, 341 B.R. 399, 405 (Bankr. E.D.N.Y. 2006) ("The automatic stay does not shield issuers of liability insurance policies from making payments which would otherwise be due under the policy by reason of the insured's bankruptcy . . . . Where, as here, the plaintiffs have agreed that they will not seek recovery from any estate assets, there is no basis for continuing the automatic stay"); *cf. In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D.N.J. 1988) (lifting stay in order to allow Movant to litigate their claims "to the point of judgment," and not "to attach the property of the debtor").

7

recovery on account of a general unsecured claim. The Debtors' postpetition financing is not available to satisfy general unsecured claims at this point in the Debtors' chapter 11 cases. Mot. at 6.

### C.     **Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

17.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, does not weigh in favor of lifting the automatic stay. Lifting the stay would result in the Debtors incurring unnecessary administrative costs to litigate the Franklin Action in a separate action before recoveries to general unsecured creditors are known. Moreover, the Debtors are party to numerous prepetition actions. If the Court were to lift the stay with respect to the Franklin Action, the Debtors and the Court would undoubtedly be inundated with similar requests for stay relief.

18.    The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceeding, also weighs against lifting the automatic stay. The Franklin Action is in its infancy; no responsive pleading has been filed, nor has any scheduling conference taken place or discovery commenced.

### CONCLUSION

19.    For the foregoing reasons, Movant has failed to satisfy her burden to establish cause to lift the automatic stay. Accordingly, the Motion must be denied.

WEIL:\96830509\5\73217.0004

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court deny the Motion.

Dated: December 13, 2018
      New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

**Exhibit A**

WEIL:\96830509\5\73217.0004



Will Elkner  O +213.612.5365
Pacific Region  F +818.428.3588
555 S. Flowers Street, 5th Floor, Los  will.elkner@chubb.com
Angeles, CA 90017
USA

December 13, 2018

**VIA CERTIFIED MAIL & EMAIL**

Robin C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re:   Policy #:            HDO G27853717
      Policy Period:       08/01/2016 -08/01/2017
      Insurer:             ACE American Insurance Company ("ACE")

Dear Ms. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27853717, for the period of 8-1-16 to 08/01/2017. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| **Coverage Form:** | **Limits of Insurance** |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,

duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1. **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

    a.   Medical expenses under Coverage C.
    b.   Damages under Coverage A, and
    c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 213.612.5365.

Sincerely,
ACE American Insurance Company

Will Elkner
Senior Claims Specialist
.

| | | |
|---|---|---|
| cc: | AON: | Carol Murphy, Carol.Murphy@aon.com |
| | Sears: | Laurence Jenchel, Laurence.Jenchel@searshc.com |
| | | David Halffield, David.Halffield@searshc.com |
| | Chubb : | Christine Kloss |
| | | John Edmonds |
| | | Neal Bhatnagar |
| | | Steve Naylor |
| | | Roland Banini |