Hearing Date: December 20, 2018<br>
Time: 10:00 a.m.

Edward M. Fox  
Seyfarth Shaw LLP  
620 Eighth Avenue  
New York, NY 10018  
Telephone: (212) 218-4646  
Facsimile: (917) 344-1339  
Email: emfox@seyfarth.com

*Attorneys for Wilmington Trust, National Association,*  
*as indenture trustee and collateral agent*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL AGENT TO ENTRY OF A FINAL JUNIOR DIP ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING AND (B) GRANT SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) MODIFYING THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

Wilmington Trust, National Association, as indenture trustee and collateral agent

("Wilmington Trust") for the 6-5/8% Senior Secured Notes due 2018 (the "2010 Notes") issued by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "Debtors"). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

52732066v.1

Sears Holdings Corporation ("Sears"), by its undersigned attorneys, files this Limited Objection of Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent to Entry of a Final Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (III) Granting Related Relief, and in support thereof states as follows:

## BACKGROUND

### The 2010 Notes

1. Pursuant to an indenture dated as of October 12, 2010 (as amended from time to time, the "2010 Indenture") between Sears, the Guarantors Party thereto (the "Guarantors") and Wells Fargo Bank, National Association ("Wells Fargo"), as trustee and collateral agent, Sears issued the 2010 Notes.

2. Pursuant to an Instrument of Resignation, Appointment, and Acceptance dated as of June 25, 2014, by and among Sears, Wilmington Trust and Wells Fargo, Wilmington Trust became the successor indenture trustee and collateral agent with respect to the 2010 Notes.

3. Pursuant to the Amended and Restated Security Agreement dated as of March 20, 2018, (the "Security Agreement"), among Sears, the Guarantors, including Sears Home Improvement Products, Inc. ("SHIP"), and Wilmington Trust, as collateral agent, holds a security interest in the Collateral (as defined in the Security Agreement)[2] to secure repayment of the 2010 Notes.

---

[2] Section 2.1 of the Security Agreement states:

    2.1 <u>Collateral; Grant of Security Interest</u>. Each Grantor hereby grants to the Collateral Agent for the equal and ratable benefit of the Secured Parties a security interest in all of the following property now owned, or at any time hereafter acquired, by such Grantor or in which such Grantor now has, or at any time in the future may acquire, any right, title or interest (collectively, the "<u>Collateral</u>"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of such Grantor's Secured Obligations:

    (a) all Credit Card Accounts Receivable;

2

52732066v.1

### The Bankruptcy Filing

4. On October 15, 2018, each of the Debtors filed voluntary petitions for relief under Chapter 11 of title 11, U.S.C. in the United States Bankruptcy Court for the Southern District of New York, (the "Bankruptcy Court").

### DIP Financing and Use of Cash Collateral

5. On November 30, 2018, pursuant to the Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties; and (D) Schedule Second Interim Hearing and Final Hearing, dated October 15, 2018 (Dkt. No. 7) (the "DIP Financing Motion"), the Bankruptcy Court entered the Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief (the "Final DIP Order") (Dkt. No. 995). Pursuant to the Final DIP Order, Wilmington Trust was granted adequate protection of its interest in the Collateral, including replacement liens on the assets of Sears and the Guarantors.

### The Junior DIP

6. Also in the DIP Financing Motion, the Debtors requested authority to obtain a "Junior DIP Loan" in the amount of $200 million from certain affiliates of the Debtors (the "Junior

---

(b) all Inventory;

(c) all Chattel paper relating to Credit Card Accounts Receivable;

(d) all Instruments relating to Credit Card Accounts Receivable;

(e) all Documents relating to any Inventory;

(f) all books and records pertaining to the Collateral; and

(g) to the extent not otherwise included, all Proceeds, insurance claim, Supporting Obligations and products of any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

3

52732066v.1

DIP Lenders"), which amount may be upsized to $300 million subject to certain commitments, and secured by a junior lien on encumbered collateral, a *pari passu* senior lien on certain previously unencumbered assets, and a junior lien on other previously unencumbered assets. The DIP Financing Motion stated that the Debtors would continue negotiating the terms of the Junior DIP Loan and "test the market to determine whether any other lender is prepared to provide the requisite junior financing on more favorable terms or whether more favorable financing can be obtained." DIP Financing Motion ¶ 7.

7. On November 14, 2018, the Debtors filed their *Notice of Filing of Term Sheet Regarding Junior Secured Debtor-In-Possession Multiple Draw Term Loan Facility* (Dkt. No. 735), which included a revised term sheet for the proposed junior DIP financing ("Junior DIP Term Sheet").

8. The Junior DIP Term Sheet indicated that the Debtors anticipated entering into a $350 million junior debtor-in-possession multiple draw term loan, with GACP Financing Co., LLC ("GA"), which would replace ESL Investments, Inc. ("ESL") as the Junior DIP Agent.

9. On November 25, 2018, the Debtors filed the Debtors' Supplemental Motion for Authority to (I) Obtain Junior Postpetition Financing and (II) Schedule Final Hearing (the "Supplemental Junior DIP Motion ") [Dkt. No. 872].

10. On November 26, 2018, the Debtors filed their Notice of Filing of Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement (the November 26 Notice") [Dkt. No. 881], having annexed thereto the Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement (the "Junior DIP Credit Agreement") to be entered into between certain of the Debtors and GA.

52732066v.1

11. On November 27, 2018, the Debtors filed their Notice of Filing of Amended Proposed Interim Junior DIP Order (the "November 27 Notice") (Dkt. No. 891].

### The Changing DIP Lender

12. At the hearing on the Supplemental Junior DIP Motion on November 27, 2018 (the "November 27 Hearing"), the Debtors announced at the hearing that they had determined to enter into the Junior DIP Credit Agreement with Cyrus Capital Partners, LP ("Cyrus"). The Debtors stated on the record of the November 27 Hearing that, based on bidding in the courthouse rotunda immediately prior to the November 27 Hearing, the interest rate on the Junior DIP Loan had been reduced from Libor plus 1150 to Libor plus 1000, the wind down account had been increased from $200 million to $240 million, the liquidator consent right had been changed to a consultation right and the permitted budget variance had been changed from a percentage to a fixed $42 million (the "Enhanced Cyrus Terms"). November 27 Hearing Transcript at 16-17.

### Limited Objection

13. Wilmington Trust has no objection to the Debtors' motion for approval to obtain a Junior DIP Loan. Before the Supplemental Junior DIP Motion is granted, however, the Court must determine that the Debtor is properly exercising its sound business judgment.

14. Courts analyze a debtor's decision to acquire DIP financing under the business judgment rule. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). Courts examine "whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006). "[A]lthough a debtor is not required to seek credit from every possible source, a debtor must show that it has made a reasonable effort to seek other sources of credit available under section 364(a) and (b)." *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). The requirement that a debtor show

that it made a reasonable effort to seek other sources of credit is rendered meaningless if, after that reasonable search, the debtor is free to obtain credit from any source on less favorable terms. "[T]he [C]ourt's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest." *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). When approving debtor-in-possession financing, courts commonly take care to note that the terms and conditions of the financing are "fair, reasonable, and *the best available under the circumstances.*" *See, e.g., In re Apex Silver Mines Ltd.*, No. 09-10182, 2009 Bankr. LEXIS 5154, at *12 (Bankr. S.D.N.Y. Feb. 2, 2009); *In re Ultra Stores, Inc.*, No. 09-11854, 2009 Bankr. LEXIS 5189, at *29 (Bankr. S.D.N.Y. Apr. 29, 2009); *In re Durable Mfg. Co.*, No. 09-14415, 2010 Bankr. LEXIS 3272, at *7 (Bankr. D. Del. May 10, 2010); cf., *Apollo Global Mgmt, LLC v. Bokf, N.A. (In re MPM Silicones, LLC)*, 874 F.3d 787, 800 (2d Cir. 2017) (quoting *Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 n. LaSalle St. P'ship*, 526 U.S. 434, 457), "the best way to determine value is exposure to a market."

15. As described in the Application of GA Capital for Allowance and Payment of Fees and Expenses Pursuant to Bankruptcy Code Sections 503(b)(3)(D) and 503 (b)(4) (the "GA Application") [Dkt. No. 1102], we now know that GA not only matched the Enhanced Cyrus Terms,[3] but indicated to the Debtors that it "would consider additional "asks" from the Debtors." GA Application ¶ 9 at p. 5 (12 of 33). According to GA, however, the Debtors did not pursue any further enhancements with GA.

---

[3] GA is apparently under the impression that Cyrus was able to deliver the agreement of the Prepetition Second Lien Credit Parties (as defined in the Final DIP Order) to give up the proposed Prepetition Second Lien Adequate Protection Liens (as defined in the Final DIP Order) with respect to Debtors who were not Prepetition Second Lien Loan Parties (the "Non-Obligor Debtors"), but Cyrus had nothing to do with that change, which was made to resolve an objection by the Unsecured Creditors Committee.

52732066v.1

16.    Accordingly, before the Court can reach a determination that entry into the Junior DIP Loan with Cyrus is a proper exercise of the Debtors' sound business judgment, assuming GA remains willing to provide the Junior DIP Loan, the Court must first determine, perhaps through a transparent auction in the courtroom, rather than through an opaque auction in the hallway outside the courtroom, that the Debtors have obtained the best available terms for the Junior DIP Loan.

WHEREFORE Wilmington Trust respectfully requests that the Junior DIP Loan not be approved unless the Court first determines that the terms of the proposed Junior DIP Loan are the best available to the Debtors.

Dated: New York, New York
       December 13, 2018

SEYFARTH SHAW LLP

By: /s/ *Edward M. Fox*
    Edward M. Fox
    *Attorneys for Wilmington Trust, National Association,
    as indenture trustee and collateral agent*
    620 Eighth Avenue
    New York, NY 10018
    Telephone: (212) 218-4646