John C. Allerding, Esq.
(*Pro hac vice*)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
Email: John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.* | Case No. 18-23538-RDD |
| Debtors. | (Jointly Administered) |

<u>**OBJECTION OF LUXOTTICA RETAIL NORTH AMERICA INC. TO DEBTORS'
SUPPLEMENTAL MOTION FOR AUTHORITY TO (I) OBTAIN JUNIOR
POSTPETITION FINANCING AND (II) SCHEDULE FINAL HEARING**</u>

Luxottica Retail North America Inc. ("**Luxottica**") hereby files its objection and reservation of rights (the "**Junior DIP Financing Objection**") to the *Debtors' Supplemental Motion for Authority to (i) Obtain Junior Postpetition Financing; and (ii) Schedule Final Hearing*, dated November 25, 2018 (Dkt. No. 872, the "**Junior DIP Financing Motion**"). In support of this Junior DIP Financing Objection, Luxottica respectfully represents as follows:

<u>**INTRODUCTION**</u>

1.      Debtor Sears, Roebuck and Co. ("**Sears**") and Luxottica are parties to a certain License Agreement (as defined herein) that requires Sears to hold certain cash, checks and credit card sales receivables remitted to Sears in trust for the benefit of Luxottica. Specifically, pursuant to the express terms of the License Agreement:

> [Sears] and [Luxottica] agree and intend for the funds reflected in
> the cash, checks, and credit sales documents, minus the Company
> Fee, to be held by [Sears] for the benefit of and in trust for
> [Luxottica] and that title to such funds shall not pass to [Sears].

License Agreement, § 9.3 ("**Section 9.3**").

2.      Luxottica objects to any attempt by the Debtors'[1] to assert any interest in the Trust Funds (as defined herein) in excess of the rights provided for under Section 9.3 and the other relevant sections of the License Agreement (as defined herein), including, without limitation, full ownership interest, an equitable interest, or other interest in excess of that of a trustee with respect to the Trust Funds.

3.      Luxottica further objects to any attempt by the Debtors to assert that any Prepetition Lender (as defined herein) has a security interest, lien, or any other interest in the Trust Funds.

4.      Luxottica further objects to any attempt by the Debtors to grant any Post-Petition Lender (as defined herein) a security interest, lien, claim, or any other interest in the Trust Funds.

5.      Luxottica further objects to any request by the Debtors to use any of the Trust Funds for any purpose not permitted by the License Agreement.

6.      Luxottica further objects to any attempt by the Debtors to suggest that such Trust Funds constitute Cash Collateral, and, to the extent that the Trust Funds are found to constitute Cash Collateral, objects to the Debtors' use of such Cash Collateral.

## **RELEVANT BACKGROUND**

7.      On or around May 31, 2015, Sears and Luxottica entered into a license agreement (as amended from time to time, the "**License Agreement**") pursuant to which Sears granted Luxottica a license to operate an optical goods and services business (Sears Optical) within

---

[1] Capitalized terms not otherwise defined in this Junior DIP Objection shall have the meanings ascribed to them in the Junior DIP Financing Motion.

certain Sears' store locations (collectively, the "**On-Premises Locations**"), certain free-standing

locations (the "**Off-Premises Locations**"), and via the internet (www.searsoptical.com).[2]

License Agreement, § 1.1.

8.      Pursuant to the terms of the License Agreement:

    a.      Luxottica was required to have all checks accepted at the On-Premises
            Locations and Off-Premises Locations made payable to Sears or Sears
            Optical. License Agreement, § 9.1.

    b.      Luxottica was required to accept certain credit cards bearing Sears or a
            Sears affiliate's name for sales of goods and services at the On-Premises
            Locations, the Off-Premises Locations, and via the internet. Luxottica was
            further required to submit the documents relating to such Sears credit card
            receivables to Sears for settlement (i.e., Sears settled such credit card
            receivables directly with the issuing bank). License Agreement, § 9.2(a).
            Luxottica authorized Sears to collect such credit card receivables on
            Luxottica's behalf. License Agreement, § 9.2(c).

    c.      Luxottica was required to accept third-party credit cards at the On-
            Premises Locations and to submit the documents relating to such third-
            party credit card receivables to Sears for settlement with the respective
            credit card issuer (i.e., Sears settled such credit card receivables directly
            with the issuing bank). License Agreement, § 9.2(b).

    d.      Luxottica was required to accept third-party credit cards at the Off-
            Premises Locations and for sales of goods and services on the internet.
            Luxottica was required to submit such third-party credit card receivables
            for settlement with Luxottica's third-party credit card processor. License
            Agreement, § 9.2(b).

    e.      Luxottica was required to process all transactions, including cash, check,
            and credit card transactions, made at the On-Premises Locations through
            the Sears Point of Sale System (the "**Sears POS System**").[3] License
            Agreement, § 9.2(c).

    f.      At the close of each business day, Luxottica was required to deliver the
            total of call cash, checks, and credit sales documents for transactions

---

[2] The License Agreement includes a confidentiality provision that permits disclosure of its terms only in limited circumstances. While those circumstances exist here, permitted disclosure is limited to that which is necessary under those circumstances. As a result, Luxottica has summarized only the necessary terms of the License Agreement and has not attached the License Agreement to this Junior DIP Objection. Luxottica will work with Sears to determine the most appropriate way to provide the Court with a copy of the License Agreement for its review in connection with this Junior DIP Objection.

[3] Portions of transactions paid by a third-party issuer were excluded from this requirement.

completed that day at the On-Premises Locations to Sears. License Agreement, § 9.3.

g.    On a weekly basis, Sears paid Luxottica the cash delivered by Luxottica to Sears under the License Agreement, as well as the cash collected by Sears on Luxottica's behalf with respect to the checks and credit card receivables (all credit card receivables for On-Premises Locations and Sears credit card receivables for Off-Premises Locations and internet transactions), net of a fee (the "**Company Fee**") that Sears was owed pursuant to the License Agreement. License Agreement, § 9.3.[4]

h.    Specifically, with respect to the cash, checks, and credit card receivables generated by Luxottica and delivered to Sears pursuant to the License Agreement (the "**Trust Funds**"), the License Agreement provided that

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

License Agreement, § 9.3.

i.    Moreover, Sears collected payments and settlements with respect to checks and credit cards on behalf of Luxottica – not as its own accounts receivable. License Agreement, §§ 9.2(c); 9.3.

j.    Luxottica was required to make monthly payments to Sears for in-store third-party insurance transactions (not run through the Sears POS System), transactions processed by Luxottica's own POS systems (i.e., Off-Premises Location and internet transactions not involving a Sears credit card), and certain other non-transaction related payments required under the terms of the License Agreement. License Agreement, § 9.3.

k.    Luxottica retained title to all of the inventory at its various locations, and Sears agreed that such inventory was not subject to any blanked liens. License Agreement, § 5.4.

9.    On October 15, 2018, the Debtors filed for protection under chapter 11 of title 11 of the United States Code.

---

[4] At the end of the fiscal month, Sears also included payments necessary to reconcile transactions from prior months.

10.     On that same date, the Debtors filed their *Debtors' Motion for Authority to (A) Obtain Post Petition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (Dkt. No. 7, the "**Senior DIP Financing Motion**") requesting authorization to incur certain senior secured post-petition indebtedness (collectively, the "**Senior DIP Facility**") pursuant to the proposed financial transactions between the Debtors and certain post-petition lenders (collectively, the "**Senior DIP Lenders**") as set forth therein. Senior DIP Financing Motion, ¶ 4.

11.     The Senior DIP Financing Motion indicated that certain of the Debtors' lenders under the Prepetition ABL Facilities (collectively, the "**Prepetition First Lien Lenders**") have a properly perfected first lien on, and security interest in, among other things, inventory, credit card receivables, cash, Cash Collateral, and pharmacy assets (collectively, the **Prepetition Collateral**"). Senior DIP Financing Motion, ¶ 16.

12.     The Senior DIP Financing Motion further indicated that certain of the Debtors' lenders under the Prepetition ABL Facilities (collectively with the Prepetition First Lien Lenders, the "**Prepetition Lenders**" and each of the Prepetition Lenders being a "**Prepetition Lender**") have a subordinate lien on a portion of the Prepetition Collateral (excluding cash and pharmacy assets). Senior DIP Financing Motion, ¶ 16.

13.     To secure the Senior DIP Facility, the Debtors requested authority to grant the Senior DIP Lenders (i) a senior secured priming lien upon, the Prepetition Collateral – including the inventory, credit card receivables, cash, and Cash Collateral; (ii) a senior lien on unencumbered collateral (including Debtors' post-petition deposit accounts, cash and cash equivalents, to the extent that such accounts and cash do not constitute Prepetition Collateral); and a junior lien on previously encumbered collateral (excluding the Prepetition Collateral)

(collectively the "**Senior DIP Collateral**"). Senior DIP Motion, ¶¶ 3, 14. Moreover, the Senior

DIP Motion also requested authority to grant the Senior DIP Lenders a "superpriority claim"

pursuant to 11 U.S.C. § 364(c)(1), such claim having priority over all other administrative

expense claims, all adequate protection claims, and all other claims against Debtors now existing

or thereafter arising (the "**Senior Superpriority Claim**").

14.    On November 15, 2018, Luxottica filed its Objection to Debtor's Senior DIP

Financing Motion (Dkt. No. 757, the "**Senior DIP Financing Objection**") in which Luxottica

raised similar objections to the Senior DIP Facilities as are raised herein with respect to the

Junior DIP Facility.

15.    The Court scheduled a hearing on the Senior DIP Financing Motion for

November 27, 2018 (the "**Senior DIP Financing Hearing**").

16.    On the morning of November 27th, Luxottica's counsel sent Debtors' counsel the

proposed framework of an agreement that would resolve Luxottica's Senior DIP Financing

Objection. *See* Email from J. Allerding to A. Goldstein attached hereto as <u>Exhibit 1</u> (the

"November 27th Email").

17.    At the courthouse, prior to the Senior DIP Financing Hearing, Luxottica's counsel

and Debtors' counsel discussed the terms set forth in the November 27th Email. Debtors'

counsel indicated that the Debtors could not make daily remittances as proposed by such terms,

but that otherwise the framework of the proposal was acceptable to the Debtors – perhaps with

some minor wordsmithing and the inclusion of terms relating to the Debtors' requirement to

issue certain reports to the Senior DIP Lenders.

18.    At the Senior DIP Financing Hearing, Luxottica's counsel addressed the court to

report on this agreement. Specifically, Luxottica's counsel reported the following to the Court:

Before today's hearing I had a conversation with Debtors' counsel in which it was represented to us that the language that we sent over earlier this morning is acceptable to the Debtors and the Debtors' counsel as far as the framework goes . . . . The Debtors and the DIP lenders need to work out some issues between themselves regarding reporting.

That framework would generally, as the Debtors' counsel said, preserve Luxottica's rights, whatever they may be, with respect to prepetition funds that were provided to the debtors under a license agreement would require the segregation of post-petition amounts provided under that license agreement and would clarify that the DIP liens do not attach to the post-petition segregated accounts or amounts, would require – or would clarify that the DIP liens nor the adequate protection liens apply to Luxottica's inventory and goods which it sells at the Sears Optical locations, and would require the Debtors to comply with the terms of the license agreement pending assumption or rejection of that agreement.

Those are the terms as I understood them, and again, I think there was an agreement with respect to those terms. Perhaps some of the language still needs to be worked out.

Transcript of Senior DIP Hearing, Exhibit B, at 39:1-25.[5]

19.     Debtors' team of attorneys was present in the courtroom at the time of the above quoted representation to the Court and were actively engaged in the dialect with the Court. They did not disagree that an agreement was reached between the Debtors and Luxottica, did not dispute that the framework of that agreement was memorialized in the November 27th Email, or raise any other concerns regarding the representations of Luxottica's counsel.

20.     Over the course of the next couple days, the Debtors refused to comply with the terms of the agreement reached on November 27th. Among other things, the Debtors expressed an inability to immediately segregate the post-petition funds – instead demanding that Luxottica agree to weekly funding to a segregated account from Debtors other commingled funds.

---

[5] For the Court's convenience, only the relevant portions of the Transcript of Senior DIP Hearing are attached hereto.

21.     On November 30, 2018, this Court entered its *Final Order (i) Authorizing the Debtors to (a) Obtain Post-Petition Financing, (b) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (c) Utilize Cash Collateral; (ii) Granting Adequate Protection to the Prepetition Secured Parties; (iii) Modifying the Automatic Stay; and (iv) Granting Related Relief* (Dkt. No. 955, the "**Senior DIP Financing Order**"). With respect to Luxottica's Senior DIP Financing Objection, the Senior DIP Financing Order provided:

> At the time of submission of this Order, the Debtors, the DIP Agents and Luxottica Retail North America, Inc. ("Luxottica") are continuing to formulate language addressing the issues raised by Luxottica's objection (ECF No. 757) (the "Luxottica Objection"). If the Debtors, the DIP Agents and Luxottica reach an agreement on that language, the Debtors will file a stipulation with the Bankruptcy Court, which stipulation shall govern to the extent of any inconsistency with this order. If the Debtors, the DIP Agents and Luxottica cannot agree on such language, the parties will request a hearing before the Bankruptcy Court. Neither the entry of this Order nor the passage of time shall prejudice the Luxottica Objection in any way. In addition, neither the entry of this Order nor the passage of time shall prejudice Luxottica's right to argue that an agreement resolving the Luxottica Objection was reached, and further shall not prejudice Luxottica's ability to enforce the terms of such agreement; provided that the Debtors' and the DIP Agents' rights to object to the same shall be preserved in every respect.

Senior DIP Financing Order, ¶ 67.

22.     On that same date, Luxottica filed its *Motion for Entry of an Order (I) Granting Relief from the Automatic Stay or, in the Alternative, (II) Compelling Assumption or Rejection of Executory Contract* (Dkt. No. 981, the "**Stay Relief Motion**") in which it requested, on a precautionary basis, relief from the automatic stay to terminate the License Agreement on the grounds, *inter alia*, that the Debtors' were in post-petition breach of the contractual and fiduciary obligations as a result of their stated inability to hold Luxottica's funds in trust as required under

the terms of the License Agreement. Stay Relief Motion, ¶¶ 14-18. A hearing is scheduled on the Stay Relief Motion for December 20, 2018.

23.     Now, the Debtors seek authorization to incur certain junior secured post-petition indebtedness (the "**Junior DIP Facility**," and collectively with the Senior DIP Facility, the "**DIP Facilities**") pursuant to the proposed financial transactions between the Debtors and certain post-petition lenders (collectively, the "**Junior DIP Lenders**" and collectively with the Senior Secured DIP Lenders, the "**DIP Lenders**," each being referred to herein as a "**DIP Lender**") set forth in the Junior DIP Financing Motion. Junior DIP Financing Motion, ¶ 12.

24.     To secure the Junior DIP Facility, the Debtors request authority to grant the Junior DIP Lenders (i) a junior lien upon, encumbered collateral (including the Senior DIP Collateral, which itself included inventory, credit card receivables, cash, and Cash Collateral); (ii) a *pari passu* senior lien on certain previously unencumbered assets; and a junior lien on other previously unencumbered assets (collectively with the Senior DIP Collateral, the "**DIP Collateral**"). Motion, ¶¶ 6, 15. Moreover, the Motion requests authority to grant the Junior DIP Lenders a "superpriority claim" pursuant to 11 U.S.C. § 364(c)(1), such claim having priority over all other administrative expense claims (other than the Senior Superpriority Claim), all adequate protection claims, and all other claims against Debtors now existing or thereafter arising (collectively with the Senior Superpriority Claim, the "**Superpriority Claims**").

25.     Based on the most recent conversations between Luxottica and Sears, Sears remains in breach of its post-petition contractual and fiduciary obligations and continues to commingle Luxottica's funds with the Debtors' funds. Moreover, upon information and belief, Sears has and is continuing to transfer Luxottica's funds to third-parties for the Debtors' benefit

– a clear violation of its contractual and fiduciary obligations, and Luxottica's rights, under the

License Agreement.

## **OBJECTION**

26.     Luxottica objects to any assertion that the Debtors' have any interest in the Trust Funds in excess of the rights provided for under Section 9.3 and the other relevant sections of the License Agreement.

27.     As set forth in Section 9.3:

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

28.     This provision of the License Agreement is clear and unambiguous on its face: Sears holds all cash, checks and credit sales documents delivered to it in accordance with the License Agreement in trust for the benefit of Luxottica. Title to such cash, checks and credit sales documents never passes to Sears.

29.     Moreover, Sears collection with respect to the checks and credit card receivables delivered to it pursuant to the terms of the License Agreement is on behalf of Luxottica – not on Sears' own behalf. License Agreement, §§ 9.2(c); 9.3. Thus, any accounts receivable generated by Luxottica's sale of merchandise or services are not the Debtors' assets, but rather are accounts of Luxottica collected on Luxottica's behalf by Sears.

30.     Luxottica further objects to any attempt by the Debtors to (i) assert that any Prepetition Lender has a security interest, lien, or any other interest in the Trust Funds; (ii) grant any DIP Lender a security interest, lien, claim, or any other interest in the Trust Funds; and (iii) to suggest that the Trust Funds constitute Cash Collateral.

31.     Pursuant to Section 9.3, title the Trust Funds never passed to Sears – rather, Sears holds the Trust funds in Trust. Property that a bankrupt debtor holds in trust for another is not estate property. *E.g., In re Goldblatt Bros., Inc.* 33 B.R. 1011, 1013, 1015 (N.D. Ill. 1983)

11

("[P]roperty held in trust for another, where the bankrupt has no cognizable legal or equitable interest in such property, is not part of the bankruptcy estate."); *Bunch v. Hopkins Savs. Bank (In re Bunch)*, 249 B.R. 667, 671 (Bankr. D. Md. 2004) ("The filing of a bankruptcy petition by a debtor as trustee or other fiduciary does not bring the assets of the trust or other fiduciary estate within the jurisdiction of the bankruptcy court."). *See also* 11 U.S.C. § 541(b)(1) ("Property of the Estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor.").

32.    Furthermore, the Debtors are prohibited from using the Trust Funds for their own benefit – including using such funds as collateral or payment of their own debts. *Carter-Bernal v. Carter*, 2011 Ill. App. Unpub. LEXIS 244, *25 (App. Ct. Ill. 2011).

> Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith. Further, a trustee owes a fiduciary duty to serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's property for her individual benefit.

*Id.*

33.    It is clear that the Debtors cannot grant a lien or other security interest in property that they do not own – or that is not property of the estate. *See* Transcript of Senior DIP Hearing, at 40:1-23. Because the Debtors did not own the Trust Funds prior to the Petition Date, the Trust Funds were not subject to any pre-petition liens of the Debtors' prepetition lenders. Because the Trust Funds are not estate property, the Debtors cannot now grant the DIP Lenders (including the Junior DIP Lenders) a lien on those funds (or any proceeds thereof).

34.     And while the Debtors may agree that they cannot grant liens on property that they do not own,[6] <u>the problem here is that the Debtors either can't – or refuse – to segregate Luxottica's Trust Funds</u>.

35.     Under Illinois law (which governs the License Agreement), Sears is required to segregate the Trust Funds from its own funds. As stated by the Illinois Supreme Court, "There is a duty resting upon trustees not to commingle their own property with that of beneficiaries." *Winger v. Chicago Bank & Trust Co.* (1946), 394 Ill. 94, 111, 67 N.E.2d 265, 277. In a remarkably similar situation, the U.S. District Court for the Northern District of Illinois, applying Illinois law, stated:

> The law presumes, when one turns over to another proceeds to be held and later returned, that the party receiving the proceeds holds them in a fiduciary capacity and may not commingle them; in other words, there is a presumption that an implied trust has been created. . . .
>
> Implicit in an implied trust is the understanding that the party receiving proceeds holds them in a fiduciary capacity and, consequently, is not to commingle them; to require this understanding to be explicit in all circumstances would render the concept of an implied trust meaningless.

*Goldblatt Bros.,* 33 B.R. at 1013, 1015.[7] Here, this Court need not rely on an implied trust – the express terms of the License Agreement require Sears to hold the Trust Funds in trust for Luxottica's benefit.

---

[6] *See* Transcript of Senior DIP Hearing, at 40:11-23.

[7] In *Goldblatt*, Goldblatt Bros., Inc. ("**Goldblatt**") and Firestone Tire & Rubber co. ("**Firestone**") entered into a license agreement that authorized Firestone to operate tire centers within or near various Goldblatt retail stores. Firestone operated these outlets as an independent contractor, providing inventory, hiring employees, and managing each tire center. The license agreement provided that Goldblatt was to receive a royalty based on a percentage of the net sales generated by Firestone. At the close of each business day, Firestone transferred cash and credit receipts to the manager of the respective Goldblatt store. The license agreement required Goldblatt to return the funds to Firestone, after rendering an accounting of the sales generated and subtracting the royalty payment due to Goldblatt. Prior to filing for chapter 11 bankruptcy, Goldblatt commingled Firestone's funds with its own. While this situation is nearly identical to that provided for under the Luxottica-Sears License Agreement now before this Court, the requirement to segregate is even more clear here, where the License Agreement itself provides that the Trust Funds are to be held by the Debtors in trust for Luxottica's benefit.

36.    The Debtors' inability – or refusal – to segregate the Trust Funds from the moment they come into the Debtors' possession, the commingling of those Trust Funds with non-Trust Funds that are subject to the proposed liens of the DIP Lenders, and the use of the commingled funds for the Debtors' own benefit – perhaps even as payment to the DIP Lenders – require that the Junior DIP Financing Motion be denied.[8]

37.    In addition to its foregoing objections, and without waiving the same or agreeing to any use of the Trust Funds for any purpose (other than for compliance with Sears' obligations to remit those funds to Luxottica), Luxottica objects to any use of the Trust Funds on the grounds that the Motion does not provide Luxottica with adequate protection of its interest in the Trust Funds.

## **CONCLUSION**

38.    Based on the foregoing, the Junior DIP Financing Motion should be denied.


Respectfully submitted,


**THOMPSON HINE LLP**


Dated:    December 14, 2018          /s/ John C. Allerding_____
          Cleveland, Ohio           John C. Allerding (OH Bar No. 0074744)
                                        (*Pro Hac Vice*)
                                     3900 Key Center, 127 Public Square
                                     Cleveland, Ohio 44114-1291
                                     T: 216.566.5500 / F:  216.566.5800
                                     John.Allerding@ThompsonHine.com

                                     *Counsel for Luxottica Retail North America Inc.*

---

[8] Absent the Debtors' ability – or willingness – to segregate the Trust Funds, the Court should amend the Senior DIP Financing Order or to grant Luxottica other relief pursuant to Luxottica's still pending Senior DIP Financing Objection.