FERRAIUOLI LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Counsel for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**MOTION FOR ENTRY OF ORDER FOR THE DEBTOR TO: (i) DISCLOSE STATUS OF INSURANCE CLAIM; (ii) DEPOSIT ANY INSURANCE PROCEED INTO SEPARATE ACCOUNT TO BE USED EXCLUSIVELY TO REPAIR THE INSURED DEMISED PREMISES; AND (iii) ALTERNATIVELY, FIND THE AUTOMATIC STAY INAPPLICABLE TO THE INSURANCE PROCEEDS[1]**

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa Mall"), and respectfully states and prays as follows:

Factual and Procedural Background

1. Santa Rosa Mall is a shopping mall located in Bayamon, Puerto Rico.

2. Pursuant to a *Lease Agreement* executed by Santa Rosa Mall and Sears, Roebuck of Puerto Rico, Inc. ("Sears") on September 22, 1965, Sears leases from Santa Rosa Mall its anchor store ("Store No. 1915" or the "Demised Premises"). We attach the *Lease Agreement* as **Exhibit**

---

[1] Pursuant to Local Rule 5070-1 and Chambers' Rules we proceeded to contact Chambers to obtain a hearing date but we were unable to reach anybody.

**I.**

3.  Section 2.01 of the *Lease Agreement* provides that "all costs, expenses and obligations of any kind relating to the … maintenance, **preservation, care, repair** and operation of the Demised Premises, including all replacements, alterations, and additions … which may arise or become due during the term of this lease shall be paid by [Sears] and [Santa Rosa Mall] shall be indemnified and saved harmless by [Sears] from and against such costs, expenses· and obligations". *Lease Agreement*, **Exhibit I**, § 2.10, p. 12 (emphasis added).

4.  Section 4.01 of the *Lease Agreement* requires Sears to "keep the Demised Premises … in good order and repair and in such condition as may be required by law and by the terms of any insurance policies covering the Demised Premises", including repairs that are "extraordinary as well as ordinary and whether or not such repairs shall be of a structural nature…". *Lease Agreement*, **Exhibit I**, § 4.01, p. 23.

5.  Section 6.01 of the *Lease Agreement* requires Sears to "maintain at [its] sole cost and expense, **for the benefit of [Santa Rosa Mall] and [Sears]**, **insurance with respect to the Demised Premises**" for risks including "windstorm". *Lease Agreement*, **Exhibit I**, § 6.01(a), p. 26 (emphasis added). Such insurance policy "shall be secured promptly and certificates thereof shall be furnished to [Santa Rosa Mall]" and "**shall contain <u>loss payable clause</u> to [Santa Rosa Mall] and [Sears]**". <u>Id.</u>, § 6.02(a), pp. 26-27 (emphasis and underline added). Renewals of the insurance policies are also subject to the foregoing. <u>Id.</u>, 6.02(b), p. 27.

6.  In the event of damage by windstorm or any other casualty to the Demised Premises in an amount over $100,000, Section 6.03(b) of the *Lease Agreement* requires Sears to "proceed **with all reasonable expedition to restore or rebuild**, as the case may be, the building so destroyed or rendered untenantable, free from liens of any kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable…". *Lease*

*Agreement*, **Exhibit I**, § 6.03(b)(2), p. 28 (emphasis added).

7.  In regard to the insurance proceeds, Section 6.03(b)(3) of the *Lease Agreement* mandates as follows:

> **The net sums recovered by [Santa Rosa Mall] and·[Sears] on account of loss or damage whether under the policies taken out as aforesaid, or under other <u>insurance policies</u> taken·out by [Sears] and indemnifying for <u>physical loss</u>** (as distinguished from the loss of use and occupancy. or profits), **shall by <u>deposited in a special account in the name of [Santa Rosa Mall]</u> separate and distinct from all other funds of [Santa Rosa Mall] <u>in a bank or trust company of the City of San Juan, Puerto Rico, approved by [Santa Rosa Mall] and [Sears]</u> to be applied on account of the cost of such restoration or rebuilding**, as the case may be, as the work of restoration or rebuilding progresses, and [Sears] shall pay any and all additional moneys required in such restoration or rebuilding in excess of said net sums recovered, and shall be entitled to receive any surplus, if any, remaining of said deposit after such restoration .. or rebuilding has been completed as aforesaid, provided, however, that should the aforesaid damage by fire or other casualty occur within the last three years of the initial term or any extended term this lease, [Sears] shall have the option to surrender the proceeds of any insurance to [Santa Rosa Mall] and vacate the premises.

*Lease Agreement*, **Exhibit I**, § 6.03(b)(3), pp. 28-29 (emphasis and underline added). The deposit of the insurance proceeds in a separate account is essential and Section 6.03(d) explains its importance:

> If [Sears] does not commence promptly to repair or restore the injury or destruction, or if, having commenced the repair or restoration, [Sears] does not proceed diligently to complete the same, [Santa Rosa Mall] shall be entitled (but shall be under no obligation) at any time thereafter to enter the Demised Premises and repair or restore the injury or destruction and to apply any insurance proceeds in the said special account to the payment of the cost thereof; but if the insurance proceeds are insufficient for the cost of the repair, restoration or reconstruction, [Sears] shall pay to [Santa Rosa Mall], upon demand and as additional rent as the work progresses; such amounts as shall be necessary to complete the repair, restoration or reconstruction.

<u>Id.</u>, § 6.03(d), p. 29.

8.  Section 15.10 of the *Lease Agreement* governs the surrender of the Demised Premises at the expiration of the lease as follows:

> [Sears] shall on the expiration of the term of this lease or any sooner termination

hereof, surrender and deliver of the Demised Premises with the buildings and improvements then erected and maintained thereon into the possession of [Santa Rosa Mall] in good order, condition and repair, free and clear of all liens, tenancies and encumbrances other than those, if any, created by [Santa Rosa Mall] and title of such buildings and improvements shall vest in [Santa Rosa Mall] without any payment or allowance whatever by [Santa Rosa Mall] on account of or for any buildings and improvements of the Demised Premises at the time of the surrender, or for the contents thereof or appurtenances thereto. [Sears] shall execute such instruments as may be required to effectuate the transfer of title to [Santa Rosa Mall].

The aforesaid surrender shall include all fixtures and facilities in the buildings on the Demised Premises, or forming part thereof, which are customarily regarded as real estate and as part of the buildings. Any fixtures, trade fixtures, personal properties or belongings of [Sears] left upon the Demised Premises at the time of such surrender shall be deemed to have been abandoned by [Sears].

*Lease Agreement*, **Exhibit I**, § 15.01, pp. 43-44.

9.  Sears has operated Store No. 1915 at Santa Rosa Mall since 1965 until the passing of Hurricane Maria on September 20, 2017. Hurricane Maria was a Category 5 hurricane that turned into a high-end Category 4 by the time it struck land. The damage to Puerto Rico in its entirety was substantial and catastrophic. This Court may take judicial notice of the passing of Hurricane Maria, as well as its trajectory and aftermath under Fed. R. Evid. 201.

10. Store No. 1915 was no exception to the wreck caused by Hurricane Maria and it has remained closed to the public and inoperative since September 20, 2017.

11. At the time of this massive windstorm, Sears was insured by AIG Europe Limited ("AIG") under Policy No. PTNAM1701557 (the "Insurance Policy"). See *Certificate of Property Insurance* attached hereto as **Exhibit II**. Under the "Additional Remarks Schedule" of such *Certificate*, "**Santa Rosa Mall LLC … [is] included as Loss Payee** in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced location", referring to "Sears Store No. 1915 – Santa Rosa Mall, Bayamon, PR". Id. (emphasis added).

12. On October 26, 2017, Sears informed by letter that it "ha[d] an insurance claim for

this loss" and that "[o]nce the insurance payment [was] received arrangements will be made for it to be deposited with an agreed bank". *Letter from Sears to Santa Rosa Mall dated October 26, 2017* attached hereto as **Exhibit III**.

13. On October 30, 2017, Santa Rosa Mall, through its affiliate CCM Puerto Rico, issued a letter to AIG requesting "to be informed as of the filing of any claim under the policy as well as the processing of the same, and that any insurance proceeds be deposited as required by the Lease Agreement". *Letter from CCM/Santa Rosa Mall to AIG dated October 30, 2017* attached hereto as **Exhibit IV**.

14. To this date, in spite of Santa Rosa's repeated inquiries, no information on the insurance claim has been furnished by Sears to Santa Rosa Mall nor have the insurance proceeds been deposited in a mutually agreed account in accordance with the *Lease Agreement* and Sear's letter (**Exhibit III**). Santa Rosa Mall has no knowledge of the whereabouts of the insurance proceeds for the damages caused by Hurricane Maria on September 20, 2017, that is, 448 days ago.

15. On October 15, 2018, the Debtors filed the instant Chapter 11 bankruptcy petition (Docket No. 1).

16. Upon information and belief, Sears entered into and/or finalized settlement negotiations with AIG regarding the insurance claim in connection with the loses sustained to the Demised Premises and its contents as a result of Hurricane Maria. See *Letter from Sears to Santa Rosa Mall dated October 26, 2017* attached hereto as **Exhibit III**.

Applicable Law and Discussion

(A)    *As a Loss Payee, Santa Rosa Mall is a Third-Party Beneficiary of the Insurance Policy and has a property interest in the insurance negotiations and insurance proceeds*

17. Santa Rosa Mall is a Loss Payee of the Insurance Policy. A "loss payee" in an insurance policy is a "third party beneficiary". Monroe Bank v. State Farm Fire & Cas. Co., 2010 U.S. Dist. LEXIS 119736, at *4, 2010 WL 4668428, at *2 (S.D. Ind. 2010). Hence, even if not 1expressly denominated "insured" under the definitions of an insurance policy, a "loss payee" is a "third party beneficiary" of the contract. Id. As such, a "loss payee" is not a stranger to the contract between the insured and the insurance company. It is neither a third party nor a judgment creditor. In fact, "[o]nce a third-party beneficiary accepts the contract, **all are bound by it and cannot revoke or modify it to the detriment of the third party**." Id. (emphasis added).

18. As a third-party beneficiary/loss payee to the *Insurance Policy*, Santa Rosa Mall has standing to claim coverage under such *Insurance Policy*. See id. It then follows that Santa Rosa Mall is fully entitled to participate in and be made aware of the settlement negotiations between Sears and AIG regarding the insurance proceeds for the Demised Premises. That has not happened in spite of Santa Rosa Mall's inquiries.

19. Property and interests in property are determined with reference to state law in the absence of any controlling federal law. See Butner v. United States, 440 U.S. 48, 54-55 (1979). Like most jurisdictions, Puerto Rico follows the legal doctrine of *lex rei sitae*, meaning that "real [estate] property [is subject] to the laws of the country in which it is situated". Article 10 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 10. In disputes involving real property, the law of the jurisdiction in which the property is located applies. See Weston v. Stuckert, 329 F.2d 681, 682 (1st Cir. 1964).

20. Insurance contracts are governed by the law of the place where the contract was made, especially where the contract was to be performed. See 17 Couch on Insurance § 24:12 (3rd ed. 2018). As such, if the contract is to be performed in the state in which the subject matter is located, "it is governed by the laws of that state, rather than by the laws of another state in which

the action is brought, or in which the insurance company is domiciled." Id. at § 24:14. New York follows a similar posture. In New York, "the 'center of gravity' in an insurance contract dispute is generally the state where the insured risk is located". Liberty Mutual Insurance Company v. Fairbanks Company, 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016) (Koeltl, D.J.). The *Lease Agreement* and the Insurance Policy both hinge on real estate property located in Puerto Rico as well as insurable interests and insured risks in Puerto Rico. Hurricane Maria, the insured casualty, also happened in Puerto Rico. Likewise, the insured risk and the Demised Properties are all in Puerto Rico. As such, both must be interpreted according to Puerto Rico law. Accordingly, we will analyze the "loss payee" figure under Puerto Rico law.

21. Puerto Rico law recognizes a cause of action in favor of third-party beneficiaries, such as a loss payee, to a contract. See M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc., 31 F. Supp. 2d 226, 238 (D.P.R. 1998); Real Legacy Assurance Co. v. Santori Trucking, Inc., 2008 WL 11357822, at *3 (D.P.R. 2008).

22. Article 1209 of the Civil Code of Puerto Rico states in pertinent part that "[s]hould the contract contain any stipulation in favor of a third person [such as a third party beneficiary], **he may demand its fulfilment**, provided he has given notice of his acceptance to the person bound before it may have been revoked." 31 L.P.R.A. § 3374 (West translation, emphasis added). In other words, in Puerto Rico, "[a] stranger to the contractual relationship may demand the fulfillment of a contract successfully only if the contract contains a stipulation in his favor." Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 152 (D.P.R. 2007); In re William Contractor, Inc., 2016 WL 1317434, at *2 (Bankr. D.P.R. 2016).

23. In A.L. Arsuaga, Inc. v. La Hood Const., Inc., 90 P.R.R. 101, 90 D.P.R. 104, 1964 PR Sup. LEXIS 231 (Official Translation) (1964), the Supreme Court of Puerto Rico (its highest court), recognized that a third-party who has not been a party to a contract but to whom stipulations

in his favor have been made, is considered a "third party beneficiary". As such, contracts may contain stipulations in favor of third parties and the latter may demand their fulfillment, subject to notice of acceptance. Notice of acceptance "may be express or implied, by word of mouth or by acts, insofar as one and the other reflect the will of the third person to assume a juridical nexus [with the parties to the contract]." Id. at 107 (quotations omitted). "No matter how the third person manifests his adhesion to the covenant as respects him, he is bound." Id. at 107.

24. In the *Lease Agreement,* Sears and Santa Rosa Mall agreed that the latter had to be included as a loss payee in any insurance policy and/or its renewal. See *Lease Agreement*, **Exhibit I**, § 6.01(a),(b), p. 27. Sears also acknowledged that the insurance proceeds for Store No. 1915 had to be deposited in an account of Santa Rosa Mall's choosing for the insurance proceeds pursuant to the *Lease Agreement*. See *Letter from Sears to Santa Rosa Mall dated October 26, 2017*, **Exhibit III**. Moreover, Santa Rosa Mall also made inquiries to AIG regarding the insurance claim, negotiations and proceeds. *Letter from CCM/Santa Rosa Mall to AIG dated October 30, 2017* attached hereto as **Exhibit IV**. There is no doubt that Santa Rosa Mall accepted the Insurance Policy and duly demanded its fulfillment to both Sears and AIG to no avail.

25. The designation of Santa Rosa Mall as a loss payee of the Insurance Policy constitutes a stipulation specifically for the benefit of Santa Rosa Mall. Its actions thereafter reflect the acceptance of the same. Santa Rosa Mall has sufficient standing to request the disclosure of the insurance settlement negotiations and that its proceeds be placed in a separate account as mandated in Section 6.03(b)(3) of the *Lease Agreement*, **Exhibit I**.

26. At the end of the day, the party with a true insurable interest, and the one who truly suffers a loss by the destruction of the Demised Premises, is the owner, that is, Santa Rosa Mall. This becomes more evident when one considers that at the expiration of the lease, "improvements

[to the Demised Premises] shall vest in Santa Rosa Mall". *Lease Agreement*, **Exhibit I**, § 15.01, pp. 43-44.

(B)     The Insurance Proceeds Belong do not belong the Bankruptcy Estate

27.     As a general rule, Section 541(a)(1) of the Bankruptcy Code provides that when a debtor files for bankruptcy, an estate that is created, comprised of all legal or equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held.  Section 541(a)(6) extends the bankruptcy estate to "proceeds, product, rents of profits or from property of the estate…".

28.     There is no dispute that Sears purchased the Insurance Policy and that it is property of the bankruptcy estate under Section 541 of the Bankruptcy Code.  Insurance policies purchased and paid for by a debtor are property of the bankruptcy estate.  See *e.g.* MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2nd Cir. 1988); In re SN Liquidation, Inc., 388 B.R. 579, 583–84 (Bankr. D. Del. 2008); Ascands, Inc. v. Travelers Cas. and Sur. Co., 435 F.3d 252 (3rd Cir. 2006); Estate of Lellock v. Prudential Ins. Co. of Am., 811 F.2d 186, 189 (3rd Cir. 1987).

29.     But even when a debtor's insurance policies may be property of the bankruptcy estate, the proceeds of those policies may not necessarily be.  "It is well settled that ownership of an insurance policy that is property of a debtor's estate does not necessarily result in a determination that the debtor's estate owns the proceeds from a policy."  In re Hill, 174 B.R. 949 (Bankr. S.D. Ohio 1994).  "The question is not who owns the policies, but who owns the liability proceeds."  In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399 (5th Cir. 1987).

30.     Bankruptcy Courts distinguish between the ownership of the insurance policy and the ownership of the insurance proceeds.  The mere fact that debtor's insurance policy is included

- 9 -

in bankruptcy estate does not necessarily mean that proceeds are also included in estate. See 3A Bankr. Service L. Ed. § 29:235 (2018 update). "[T]he inquiry remains, as it has always been, a fact-specific one." In re OGA Charters, L.L.C., 901 F.3d 599, 603 (5th Cir. 2018). Also see In re Sfuzzi, Inc., 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996) ("[T]he question of whether the proceeds are property of the estate must be analyzed in light of the facts of each case."). A party's right to receive and keep the insurance policy's proceeds is inevitably limited by the insurance and contractual provisions resulting in the purchase of the policy. See *e.g.* In re Jones, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) ("the Debtor's rights to the proceeds of his policy are inevitably subject to the contractual restrictions in his insurance policy and mortgage agreement"). Also see 17A Am. Jur. 2d Contracts § 442 (the rights of a loss payee depend upon the substantive rights under the contracts).

31. In re Amiel Rest. Partners, LLC, 510 B.R. 744 (Bankr. D.N.J. 2014) (Kaplan, B.J.), is a case involving the ownership of the flood insurance proceeds. In that case, the debtor's commercial landlord moved the Bankruptcy Court for an order compelling the debtor to release the insurance proceeds derived from the prepetition destruction of property caused by Hurricane Sandy. The landlord and debtor had entered into a commercial lease agreement that required the debtor to maintain several types of insurance coverage, including property insurance. The Court held that the landlord had an insurable interest at the time the property was destroyed and, as an additional insured on a flood insurance policy purchased by debtor, was entitled to proceeds of flood insurance property. The Court also considered that, like the *Lease Agreement* in this matter, the lease agreement in that case provided that at the expiration of the lease the alterations and improvements to the leased properties would become the "sole property" of the landlord. Compare id. at 753 with the *Lease Agreement*, **Exhibit I**, § 15.01, pp. 43-44. Ultimately, the Court held that under the property rights created by the lease agreement, the proceeds of the flood insurance were

not property of the bankruptcy estate, and the landlord was entitled to the payment of those insurance proceeds. Id. at 753.

32.     Courts within the Second Circuit have ruled in a similar fashion. For instance, in Pine Bush Equipment Co. v. Florian (In re Florian), 233 B.R. 25, 26 (Bankr. D. Conn. 1999) (Krechevsky, B.J.), the plaintiff, a New York corporation in the business of leasing equipment, leased a forklift on a monthly basis pursuant to a rental agreement to the debtor. The rental agreement required the debtor to carry insurance against all risk of physical damage and that such policies of insurance will name the lessor as additional insureds. The debtor purchased, as the named insured, a general liability insurance policy from Travelers Casualty & Surety Co. which included coverage for the rental of the forklift and a certificate of insurance issued by the insurance agency provided that the plaintiff be a "Loss Payee". The forklift was damaged requiring repairs totaling $33,090. The insurance claim was submitted to Travelers Casualty. The Debtor filed a Chapter 7 bankruptcy petition. After the petition, the debtor received the insurance proceeds from the insurance company and submitted them to the Chapter 7 trustee, who refused to deliver them to the plaintiff and instead deposited them into the Chapter 7 Trustee account. The Trustee contended that the insurance proceeds were property of the bankruptcy estate because, pursuant to Section 541(a)(1) of the Bankruptcy Code, the insurance policy purchased by the debtors is property of the bankruptcy estate. The plaintiff argued that, notwithstanding an insurance policy may be property of the estate, the issue was who was entitled to the proceeds of the claim paid by the insurance carrier. The plaintiff contended that it was entitled to the check proceeds. The Court analyzed as follows:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to **receive and keep** those proceeds which the insurer paid on a claim when a payment by the insurer cannot inure to the debtor's pecuniary benefit. Then that payment should neither enhance nor decrease the bankruptcy estate. **In other words, when the debtor had no legally**

- 11 -

>   **cognizable claim to the insurance proceeds, those proceeds are not property of the estate.**

In re Florian, 233 B.R. at 27 (emphasis added), quoting from Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 55 (5th Cir. 1993). The Florian Court decided that "**although the insurance policy was purchased by the debtors, [it] was intended to cover damages to non-estate property** --- the forklift owned by the plaintiff" and ordered the trustee to turn over to the plaintiff the insurance proceeds plus any accrued interests. 233 B.R. at 27 (emphasis added).

33.     Similarly, in In re McLean Industries, Inc., 132 B.R. 271, 284 (Bankr. S.D.N.Y. 1991) (Blackshear, B.J.), the Court determined that the insurance proceeds to cover damages to a damaged cargo ship were <u>not</u> property of the bankruptcy estate inasmuch as the U.S. Department of Transportation, Maritime Administration and Chemical Bank had been assigned the proceeds as loss payee and additional insured, respectively.

34.     Similarly, in In re Suter, 181 B.R. 116, 119 (Bankr. N.D. Ala. 1994), the Court determined that "because AmSouth was the loss payee of the insurance policy, the proceeds of the policy are not property of the bankruptcy estate and are payable to AmSouth, at least to the extent of AmSouth's interest in the property insured."

35.     We move the Court to follow the same reasoning in favor of Santa Rosa Mall. Pursuant to the *Lease Agreement*, the Insurance Proceeds <u>must</u> be "deposited in a special account <u>in the name of [Santa Rosa Mall]</u>, separate and distinct from all other funds of [Santa Rosa Mall] in a bank or trust company of the City of San Juan, Puerto Rico" and such monies must only be used to "be applied on account of the cost of such <u>restoration or rebuilding</u>, as the case may be, as the work of <u>restoration or rebuilding</u> [of the Demised Premises] progresses". *Lease Agreement*, **Exhibit I**, § 6.03(b)(3), p. 28 (underline added). By Sears' own admission to Santa Rosa Mall,

"[o]nce the insurance payment is received arrangements [must] be made for it to be deposited with an agreed bank." *Letter by Sears to Santa Rosa Mall dated October 26, 2017*, **Exhibit III.**

36. We must bear in mind that upon the expiration of the *Lease*, these restorations will be ultimately vested on Santa Rosa Mall. See *Lease Agreement*, **Exhibit I**, § 15.01, p. 44. This is the essence and main reason of the "loss payee" requirement in Section 6.02(a) of the *Lease Agreement* and the other insurance provisions in Sections 6.01-6.05. Id., pp. 26-30. The insurance proceeds must only be used to fix the Demised Premises after the serious physical damages caused by Hurricane Maria back in September 20, 2017.

(C) *Because the Insurance Proceeds are not part of the bankruptcy estate, they are not subject to the automatic stay under 11 U.S.C. § 362(c)*

37. Section 362(c)(1) of the Bankruptcy Code states that the automatic stay continues until the property is no longer property of the bankruptcy estate. If Section 362(c)(1) is applicable, then Section 362(j), a companion statute, mandates that:

> On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

11 U.S.C § 362(j) (underline added). "[B]y its own terms, Section 362(j) mandates the entry of comfort orders only if the request arises under Section 362(c) of the Bankruptcy Code". In re Hill, 364 B.R. 826, 829 (Bankr. M.D. Fla. 2007). An order under Section 362(j) may be granted without notice and a hearing. See In re Jupiter, 344 B.R. 754, 760 (Bankr. D.S.C. 2006).

38. Based on the foregoing, Santa Rosa Mall moves the Court for the entry of an order to determine that the Insurance Proceeds are not part of the bankruptcy estate and thus, not subject to the automatic stay under Sections 362(c)(1) and 362(j) of the Bankruptcy Code.

(D) *Request to Compel Sears to Disclose the Status of the Insurance Claim and, in the Event that Sears has already received the Insurance Proceeds, Request to Compel Sears to Place the them into a Separate Account pursuant to Section 6.03(b)(3) of the Lease Agreement*

39. Santa Rosa Mall has been kept in the dark as to the insurance claim filed by Sears with AIG in spite of the constant requests to know the whereabouts of the proceeds and the status of the repairs to Store No. 1915, which have been completely halted.

40. As stated before, pursuant to the *Lease Agreement*, the Insurance Proceeds <u>must</u> be "deposited in a special account in the name of [Santa Rosa Mall], separate and distinct from all other funds of [Santa Rosa Mall] in a bank or trust company of the City of San Juan, Puerto Rico". *Lease Agreement,* **Exhibit I**, § 6.03(b)(3), p. 28.

41. We move the Court to enter an order to disclose the status of the Insurance Claim with AIG and ultimately order Sears to place the *Insurance Proceeds* into a separate account in compliance with Section 6.03(b)(3) of the *Lease Agreement*.

## Prayer for Relief

WHEREFORE, Santa Rosa Mall respectfully moves the court to enter an order granting the foregoing motion and order Sears to: (i) disclose the status of the insurance claim with AIG and place the insurance proceeds into a separate account pursuant to Section 6.03(b)(3) of the *Lease Agreement* within 7 days; and (ii) declare that the insurance proceeds are not part of the bankruptcy estate and must be exclusively applied to the restoration or rebuilding of the Demised Premises along with any other relief which is just and proper.

[Signatures in the next page]

| | |
|---|---|
| Respectfully submitted.<br>Orlando, Florida.<br>Dated: December 14, 2018. | **Ferraiuoli** LLC<br>390 N. Orange Avenue<br>Suite 2300<br>Orlando, Florida 32801<br>Phone: (407) 982-7310<br>Fax: (787) 766-7001<br>221 Ponce de León Avenue<br>5th Floor, San Juan, PR 00917<br>Telephone: (407) 982-7310<br>Facsimile: (787) 766-7001<br><br>*/s/ Sonia E. Colon Colon*<br>Sonia E. Colón Colón<br>Admitted *Pro Hac Vice*<br>USDC-PR No. 213809<br>scolon@ferraiuoli.com<br><br>*/s/ Gustavo A. Chico-Barris*<br>Gustavo A. Chico-Barris<br>USDC-PR No. 224205<br>*Admission to SDNY pending*<br>gchico@ferraiuoli.com<br><br>Attorneys for<br>*Santa Rosa Mall, LLC* |