# UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In RE: | ) | Chapter 11 Case Number 18-23538 |
| Sears Holdings Corporation | ) | JUDGE: **ROBERT D. DRAIN** |
| Debtor(s) | ) | MOTION FOR RELIEF FROM STAY TO ALLOW CIVIL LITIGATION TO PROCEED |
| | ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Under 11 U.S.C. section 362 (d) and local rule 4001-1, derived from former Local Bankruptcy Rule 44 (a), Jerry Vosburg and Esther Vosburg (collectively, "Movants"), by and through counsel, Sedric E. Banks, respectfully moves this Court for relief from the automatic stay imposed by section 362 (d) of the Bankruptcy Code. In support of this motion, Movants state as follows, to-wit:

## MEMORANDUM IN SUPPORT

1. Movants, Jerry and Esther Vosburg, are plaintiffs in a civil action filed against the Debtor Sears Roebuck & Co. in a complaint styled "Jerry and Esther Vosburg vs. Sears Roebuck & Co." suit no 2008-0568 pending in Fourth District Court, Morehouse Parish, Louisiana. A copy the original petition in said suit is attached hereto as Exhibit 1 and is incorporated herein by reference. Plaintiffs allege in their complaint that they suffered loss, damage and injury when Defendant /Debtor sold plaintiffs a dangerously defective product, namely a Sears Kenmore self-starting microwave oven and failed to warn of the defect in violation of La. Product Liability Act codified in LSA- R.S. 9:2800.51.

2. On or about October15, 2018 the Debtor Sears Roebuck & Co., its parent company, Sears Holding Corporation and each of its affiliated companies filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, which case was assigned Bankruptcy Case No. 18-23538 after it was filed in his court, the Southern District of New York;

3. That upon information and belief, the Debtor has available insurance coverage against liability for the claims in the civil court action referenced above. Moreover, it was discovered and acknowledged in said litigation that Samsung actually manufactured plaintiff-movants' self-starting microwave oven which Sears re-branded and sold as Sears Kenmore. Plaintiff-movants claim their oven self-started and ignited foodstuff in the oven cavity, causing smoke and fire resulting in loss, damage and injury. Upon information and belief, once the trial court determines the amount of damages respectively owed plaintiff-movants, if any, then in such event, fixed damages (i.e. Debtor-Sears' losses) are due plaintiff-movants and recoverable under a written "Universal Indemnity Agreement"  Movants seek to proceed with the civil litigation in Fourth District Court, Morehouse Parish, LA. for discovery purposes and to recover any insurance coverage and/or any sums adjudged due by any non-debtor under any indemnity agreement.

4. Based on the foregoing, Movants seek relief from the automatic stay "for cause" under section 362 (d)(1) to proceed to recover from Debtor's insurance coverage and/or from non-debtor sources.

5.  Upon information and belief, there is available insurance coverage by which to cover Movants' claims against the Debtor, and allowing the civil action litigation to proceed will cause no harm to the Debtor or the bankruptcy estate.

6.  As the legislative history of section 362 shows, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the  parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re Lamberjack*, 149 B.R. 467, 470 (Bankr N.D. Ohio 1992) (citing Senate Report No., 989, 95th Cong., 2d Sess. 50).

7.  In determining whether "cause" exists, most courts "balance the hardship to the creditor, if they are not allowed to proceed with their lawsuit, against potential prejudice to the Debtor, Debtor's estate and other creditors." *In re: Groover Construction LLC*, 411 B.R. 460, 463-64 (Bankr N.D. Ga. 2008). In carrying out this balancing test, Courts have considered numerous factors, including:

   (a)  Whether relief would result in partial or complete resolution of the issues;

   (b)  The lack of any connection with or interference with the bankruptcy case

   (c)  Whether other proceeding involves the Debtor as a fiduciary;

   (d)  Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

   (e)  Whether the Debtor has applicable insurance coverage and said insurer has assumed full responsibility for defending it;

   (f)  Whether the action primarily involves third parties;

   (g)  Whether litigation in another forum would prejudice the interest of other creditors;

(h) Whether the judgment claim arising from the other action is subject to equitable subordination;

(i) Whether the Movants' success in the other proceeding would result in a judicial lien available by the Debtor;

(j) The interests of judicial economy and the expeditious and economical resolution of the litigation;

(k) Whether the parties are ready for trial in the other proceeding; and

(l) The impact of the stay on the parties and the balance of harm.

*In re: New York Medical Group*, P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y.); see also *Sonnax Industries, Inc. v. Tri Component Production Corp. (In re: Sonnaax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *Goya Foods, Inc. v. Unanue-Casual, (In re Unanue-Casual)* 159 B.R. 90, 96 (D.P.R. 1993) aff'd 23 F.3d 395 (1st Cir. 1994); *In re Busch*, 294 B.R. 137,141 n.4 (10th Cir. B.A.P. 2003); *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). In weighing these factors, Courts only consider those factors that are relevant to the particular case at issue and do not assign equal weight to each factor. *In re Mezzeo*, 167 F.3d 139, 143 (2d Cir. 1999). In the instant case, several of the factors are relevant and all weigh heavily in favor of lifting the stay so that Movants can proceed with their claims in the Fourth District Court, Morehouse Parish, LA.

8. That determining whether "cause" exists to permit the Movants to proceed with their state district court litigation is "whether the interests of the estate" are outweighed by "the hardships incurred by the creditor-plaintiff." *In re Indian River*, 293 B.R. 433. Because no harm will result to the Debtor and because Movants may effectively be prejudiced by delaying their claims, a lifting of the stay is proper, here.

**A. LIFTING THE STAY TO ALLOW THE STATE DISTRICT COURT
LITIGATION TO PROCEED WILL COMPLETELY RESOLVE THE ISSUES
BETWEEN THE DEBTOR AND MOVANTS**

This court can completely resolve the issues between the parties by lifting the automatic stay. The only issue that exists between Movants and the Debtor is the underlying civil court action. If the Court lifts the stay and allows Movants to proceed and litigate their product liability claims to conclusion, the relationship between Movants and the Debtor will end.

**B. LIFTING THE STAY WILL NOT INTERFERE WITH BANKRUPTCY ESTATE**

Whether the state court proceeding is connected with or will interfere with the bankruptcy estate also supports lifting the stay. Movants seek to liquidate their claims in district court in Morehouse Parish in order to recover under applicable insurance policies and from other non-debtor sources. Indeed, "numerous Courts have permitted the stay to be lifted when the Movant is simply trying to establish the fact and amounts of the Debtor's liability and, as in the instant case, the Movant has stipulated that any recovery will be sought from the Debtor's insurer or a co-defendant." *In re Peterson*, 116 B.R. 247, 250-251 (D. Colo. 1990) In such cases, there can be no legitimate complaint that the estates will be dissipated by allowing the movants to move forward. In re 15375 Memorial Corp., 382 B.R. 652, 689 (Bankr. D. Del. 2008); "Whereas here, the Plaintiffs have agreed that they will not seek any recovery from estate assets, there is no basis for continuing the automatic stay. " *In re Grace Indus. Inc.,* 341 B.R. 399, 405 (Bankr E.D.N.Y. 2006); see also, *In re; Todd Shipyards Corp.*, 92 B.R. 600, (Bankr. D.N.J. 1988) ("Since the Movants only seek to litigate their claims and obtain proceeds through

the Debtor's available insurance coverage and do not seek relief from the stay in order to attach property of the Debtor, such relief does not interfere with the bankruptcy proceedings.")

## C. DEBTOR HAS AVAILABLE INSURANCE COVERAGE THROUGH INSURANCE CARRIERS AND INDEMNITY AGREEMENT

The next relevant factor is whether the Debtor has applicable insurance coverage and if an insurance carrier has assumed responsibility for defending the state court litigation. If so, then lifting the stay to allow the state court litigation to proceed will not prejudice the Debtor. Upon information and belief, the Debtor not only has multiple contracts of liability insurance which cover the periods of time in which Jerry and Esther Vosburg filed their claims, but, also, has an universal indemnity agreement with a non-debtor which covers plaintiff-movants' damages in the pending state court litigation.

## D. THE DEBTOR IS STILL OPERATING STORES FOR PROFIT

Another factor that supports granting the instant motion is the fact the Debtor, upon information and belief has secured hundreds of millions of dollars in financing to help keep the company operational during bankruptcy. If so, lifting the stay to allow the state court litigation to proceed will not prejudice the Debtor since current insurance will need to be maintained in force in order to continue operations.

## E. LIFTING THE STAY WILL NOT PREJUDICE OTHER CREDITORS

An additional factor supporting lifting the stay is that the state court litigation will not prejudice the interests of other creditors. Movants will collect any judgment against the Debtor solely from the applicable insurance proceeds and/or other non-debtor sources. Thus, other creditors in the bankruptcy will not be harmed by granting the instant motion because Movants will not be able to enforce any judgment directly against

the Debtor or its estate. See *R.J. Groover Construction*, 411 B.R. at 465; *In re Loudon*, 284 B.R. 106, 108 (8th Cir. B.A.P. 2002*); In re G.S. Distribution, Inc.*, 331 B.R. 552, 567-568 (Bankr. S.D.N.Y. 2005) (finding no prejudice to creditors from lifting the stay because Movant will not be able to enforce judgment without permission of Bankruptcy Court); *In re 15375 Memorial Corp.*, 382 B.R. at 690 (lifting the stay because Movants' "recovery against available insurance proceeds will in no way negatively impact the rights of the handful of other creditors in these cases").

## F. CONTINUING THE AUTOMATIC STAY WILL IMPOSE SUBSANTIAL HARDSHIPS ON MOVANTS THAT FAR OUTWEIGH ANY HARDSHIPS ON DEBTORS

Plaintiff-movants have been litigating for more than ten years. Plaintiff-movants may effectively be harmed by further delaying the civil state court action. The mere existence of a bankruptcy action does not deny Movant the opportunity to prosecute his case. *In re Brock Laundry Machine Co.*, 37 B.R. 564, 566-567 (Bankr. N.D. Ohio 1984). In fact, courts have found that making a plaintiff wait to prosecute a claim puts them at a considerable disadvantage due to preservation of evidence and loss of witnesses, as well as the length of time to receive a final award. *Id.* Therefore, courts lift the stay under section *362*(d) and allow plaintiff-movant to recover under any applicable insurance policy coverage. *Id.* Here, the fact plaintiff-movants have endured litigation for more than ten years, weighs heavily in not imposing further hardship on Plaintiff-movants, but rather allow them their day in court to pursue any and all rights and relief available from non-debtor sources, including insurance contracts and indemnity agreements.

## CONCLUSION

"The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of a Debtor's assets. A lifting of the stay to allow a Plaintiff-Creditor to determine liability will not affect the estate. It will only allow the Movants to establish the amount of (their) claim. In this respect, a relief from the stay will not violate the purpose for which it was imposed." *In re Brock Laundry Machine Co.* 37 B.R. at 567. On the other hand, Movers believe the interests of judicial economy will be served by lifting the stay in order to permit the tortious conduct litigation to continue, and if successful, proceed against Debtor's liability carrier(s) for an award of damages, if any. For the reasons stated above, Movants respectfully request this Court grant their instant motion.

WHEREFORE, Movants hereby request and move for an Order granting relief from the automatic stay imposed by 11 U.S.C. section 362 and permitting Movers to proceed in their civil action pending in Fourth District Court, Morehouse Parish, Louisiana, under suit no. 2008-0568, and proceed particularly against any available insurance coverage and non-debtor source(s), including without limitation, contracts of indemnity and/or insurance.

Respectfully submitted,

SEDRIC E. BANKS LBN 2730
Attorney at Law
*Admitted Pro Hac Vice*
1038 North Ninth Street
Monroe, La.
318-388-1655  office
318-388-0227  facsimile
sedbanks@aol.com

Attorney for Movants,
*JERRY and ESTHER VOSBURG*

# CERTIFICATE OF SERVICE

I hereby that the foregoing has been served upon the following parties by U.S. mail on this 26th day of November, 2018.

**By U.S. Mail:**

**Attorney for Defendant (Fourth District Court, Morehouse Parish, La.)**

George Snellings IV, Esq.
1507 Royal Ave.
Monroe, La. 71201

**Attorney for Debtor (Southern District New York):**

Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York, New York 10153
(212)-310-8000; (212) 310-8007
Ray C. Schrock P.C.
Jacqueline Marcus
Garret A. Fail
Sunny Singh

Sedric E. Banks LBN 2730
*(Application pending for Admission Pro Hac Vice)*

## FOR THE SOUTHERN DISTRICT OF NEW YORK

In RE:                                    )          Chapter 11 Case Number 18-23538

Sears Holdings Corporation et al    )          JUDGE: **ROBERT D. DRAIN**

Debtor(s)                             )

## ORDER GRANTING JERRY AND ESTHER VOSBURG'S MOTION TO LIFT AUTOMATIC STAY

THIS MATTER, having been presented to the Court by Sedric E. Banks, counsel admitted pro hac vice for Jerry and Esther Vosburg, on the motion to lift stay; due and adequate notice having been given; and the Court having considered the papers submitted and arguments presented; and for good cause having been shown,

IT IS HERBY ORDERED as follows:

1.  The automatic stay is hereby modified and lifted solely to the extent necessary to permit the continuation of Movants' actions against Debtors in the Fourth District Court, Morehouse Parish, Louisiana, suit no. 2008-0568; provided, however, that Movants (a) may only recover damages from the proceeds of applicable insurance policies and/or non-debtor source such as an indemnity agreement and (b) shall not attempt to execute or enforce against Debtor or their estates any judgment or settlement that they may obtain.

Dated:_____

_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT

1

STATE OF LOUISIANA*PARISH OF MOREHOUSE*4TH JUDICIAL DISTRICT COURT

JERRY VOSBURG AND ESTHER VOSBURG

VERSUS NO. 2008 - 508

SEARS ROEBUCK, AND COMPANY,
LG ELECTRONICS USA, INC.,
THE CITY OF BASTROP,
AND RISK MANAGEMENT, INC.

## PETITION

NOW INTO COURT, through undersigned counsel come, petitioners, JERRY

VOSBURG, appearing herein individually as a major domiciliary of the Parish of

Morehouse, State of Louisiana, and ESTHER VOSBURG, appearing herein individually as

a major domiciliary of the Parish of Morehouse, State of Louisiana, husband and wife, both

of whom respectfully represent the following:

1.

Made defendants herein are the following:

(a) **Sears Roebuck, and Company.**, a foreign corporation, authorized to do
and doing business in the State of Louisiana, having its principal place of
business in Hoffman Estates, Illinois, who at all pertinent times herein held
itself out as the manufacturer and/or distributor of and was in fact the
distributor of a Kenmore microwave oven, model 721.62349202

(b) **L.G. Electronics USA, INC.**, a foreign corporation authorized to do and
doing business in the State of Louisiana, having its principal place of
business at 920 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632, who,
on information and belief, was the manufacturer of the microwave oven,
sold under the Kenmore brand with a model number of 721.62349202

(c) **The City of Bastrop**, a political subdivision which may be served through
the Bastrop City Mayor, Bastrop, Louisiana, who, at all pertinent times
maintained and operated the Bastrop Fire Department and who was the
employer of the various firefighters within the Bastrop Fire Department to a
sufficient point wherein pursuant to the theory of respondeat superior, The
City of Bastrop is answerable and responsible under the law for the acts,
fault, and/or omissions of the Bastrop Fire Department and its employees
and which was insured by a general liability policy of insurance at all
pertinent times herein by Louisiana Municipal Risk Management Agency.

(d) **Risk Management Inc.**, believed to be an insurer authorized to and doing
business in the State of Louisiana, who at all pertinent times herein had in
full force and effect a general liability policy of insurance which provided
coverage to the City of Bastrop and the Bastrop Fire Department whereby
the defendant insured agreed to pay on behalf of Defendant insured all sums
the defendant's insured became legally obligated to pay as damages arising
from the liability of the Bastrop Fire Department.

ASSIGNED TO SECTION 1

2.

The defendants herein, Sears Roebuck, and Co. ("Sears"), LG Electronics, USA, Inc., The City of Bastrop, and Risk Management, Inc. are liable to petitioners JERRY VOSBURG AND ESTHER VOSBURG, for the following reasons, to-wit:

3.

At all times relevant hereto, defendant, Sears, distributed and/or manufactured and/or held itself out as the manufacturer to the public of microwaves under the brand name "Kenmore" and specifically distributed a Kenmore microwave oven, model number 721.62349202 and directly placed that microwave in the stream of commerce directed to the State of Louisiana. Defendant, Sears, regularly transacted business in the State of Louisiana, contracted to supply things in the State of Louisiana, engaged in persistent promotional and marketing activities of its products in the State of Louisiana, and at the time of placing its products in the stream of commerce, realized, expected, and/or anticipated that its products including microwaves could and would be found in the State of Louisiana by reason of its nature and by its marketing practices.

4.

At all times relevant hereto, LG Electronics USA, INC. manufactured and/or distributed microwaves under the brand name "Kenmore" for sale by Sears Roebuck and Company and specifically manufactured a Kenmore Microwave oven, model number 721.62349202 and placed that microwave in the stream of commerce directed to the State Of Louisiana. Defendant LG Electronics, regularly transacted business in the State Of Louisiana, contracted to supply things in the State Of Louisiana and at the time of placing its product in the stream of commerce, realized, expected, and/or anticipated that its products, including microwaves, could and would be found in the State Of Louisiana by reason of its nature and by its marketing practices.

5.

On or about September 7, 2007, Petitioners were in their home, which they share as a married couple, located at 10812 Mimosa Drive, Bastrop, Louisiana

6.

On said date, and at all times relevant to these proceedings, Jerry Vosburg was the owner of a Kenmore microwave oven, model number 721.62349202 purchased by and/or

on behalf of Jerry Vosburg in the Sears store at Pecanland Mall in Monroe, Louisiana on June 13, 2002 and placed in the home at 10812 Mimosa Drive, Bastrop, Louisiana, where he was residing with his brother and the home subsequently purchased from Bruce DeWayne Vosburg on January 5, 2004 and which he has continuously occupied since 1999.

7.

Petitioners show that on the evening of September 7, 2007, between the hours of 9:00 P.M. and 10:00 P.M., as they watched television in bed, their dogs began to bark and the smoke alarm sounded in their home.

8.

Petitioners show that Jerry arose and was met with orange and black smoke when he exited the bedroom and entered the hallway. He then entered the kitchen where he saw 4-5 foot flames shooting in the air from the microwave.

9.

Petitioners show that the microwave was turned off but was plugged into a wall socket nearby.

10.

Petitioners show that Jerry attempted to extinguish the fire himself four times unsuccessfully. He passed out from the smoke and fumes after the second attempt and had to be taken out of the house by his wife, Esther. He went back inside for two further attempts to extinguish the fire.

11.

Petitioners show that the Bastrop Fire Department received a call from the Vosburgs' home at approximately 9:28 P.M. on the night of September 7, 2007. The fire department arrived at 9:32 P.M.

12.

Petitioners show that at no time did the Bastrop Fire Department, nor did any of its responders, offer or provide oxygen or any other medical assistance to the petitioners who were visibly suffering from smoke inhalation while on the scene.

13.

Petitioners show that at no time did the Bastrop Fire Department, nor did any of its responders, advise the petitioners to seek medical attention for smoke inhalation as soon as reasonably possible.

14.

Petitioners show that the Bastrop Fire Department extinguished the fire and cleared the scene by 9:54 P.M. The fire department listed the cause of the fire as a short circuit from the Kenmore microwave oven.

15.

Petitioners show that upon examination of the Kenmore microwave oven following the fire, the ground prong was missing from the male plug. The power cord grommet was displaced from its position on the cabinet. Upon removal of the housing from the Kenmore microwave oven, one end of the fuse holder was found displaced from its nesting place.

16.

Petitioners show that there was evidence of spurious arcing where four wires of the microwave intersected. The arcing caused the insulation to become overheated causing it to swell and blister. Air flow from right to left caused the insulation to burn off of the wires and burned the combustible debris and dust which had accumulated throughout the years.

17.

Petitioners show that the high temperatures caused by the spurious arcing in the Kenmore microwave, growing as the current caused arcs from one conductor to another, caused the fire to begin and rekindle after being extinguished.

18.

Petitioners show that the cause of this fire, in whole or in part, was the wiring configuration of the Kenmore microwave oven, which caused the overheating and ignition of the dust, debris, and other particles near the affected wires, resulting in extensive damage to the kitchen area of the Vosburgs' home and numerous injuries to Jerry and Esther Vosburg.

19.

Petitioners show that as a result of the inhalation of smoke and toxic fumes and exposure to microwave radiation from the fire on September 7. 2007, Petitioners suffered severe irreversible and permanent pulmonary injuries from smoke inhalation requiring treatment.

20.

Petitioners further show that Jerry has had to seek extended medical care for symptoms related to smoke inhalation. He continues to take medication for smoke inhalation. Jerry has also developed unusually high blood pressure due to the effects of the fire.

21.

Petitioners show that Jerry Vosburg has not been medically cleared to return to his job as a truck driver since the date of the fire. The injuries he received as a result of smoke inhalation have prevented him from working as a truck driver or in any capacity and his disability is permanent.

22.

Petitioners show that Esther Vosburg was also treated for smoke inhalation as a result of the fire. She continues to take medication for smoke inhalation as necessary.

23.

Petitioners further show that all damages to their home and injuries to Petitioners resulting from the fire were caused by the malfunction of the wiring configuration and the missing portion of the ground prong of the male plug of the Kenmore microwave oven.

24.

Petitioners show that the personal injuries to Jerry and Esther Vosburg and the fire damage to their home was caused solely or in part by the negligence, manufacturing defect, design defect, failure to warn, breach of expressed and/or implied warranty of defendant, Sears, in the following non-exclusive particulars:

(1) The Kenmore microwave oven was distributed, marketed, and sold by defendant, Sears. Defendant distributor placed into the stream of commerce the Kenmore microwave oven, which reached the plaintiffs in the same or substantially same condition in which it was sold. Upon purchase the product in question was represented to be safe and free from defects.

(2) When the product was delivered, it was designed to be used as a microwave oven with a three-prong male plug. The plug was manufactured without a male

prong plug for proper grounding. It was also designed to have no gaps in between conductors in the wiring configuration to prevent spurious arcing. There was a gap between conductors allowing electrical charges to jump which caused sparking, which ignited particles surrounding the microwave. The wiring configuration of the Kenmore microwave oven was defective in composition, design, and manufacture, causing the microwave to be inherently and unreasonably dangerous as constructed, designed, manufactured, warranted, and sold.

(3) Defendant, Sears, never provided any warning whatsoever that the wiring configuration could ignite when the microwave was plugged in, but turned off.

(4) Defendant, Sears, knew, or in the existence of ordinary care should have known, that the wiring configuration of the microwave was unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used.

(5) Defendant, Sears, was negligent in the particulars set forth in this and the proceeding paragraphs and such negligence was a proximate cause of the occurrence in questions.

(6) Defendant, Sears, owed plaintiffs the duty of reasonable care when they distributed, sold, and marketed the product in question.

(7) Defendant, Sears, violated its duty and was negligent in the particulars set forth above. Each of the aforementioned acts or omissions was a proximate cause of the injuries and damages suffered by plaintiffs.

(8) Defendant, Sears, by and through the sale in question, expressly and impliedly warranted to the public generally, and the plaintiffs specifically, that the microwave oven was fit for the purposes for which it was intended.

(9) Jerry and Esther Vosburg made use of the product as alleged herein, and relied on the expressed and implied warranties of the defendant, Sears. Contrary thereto, the microwave oven was not fit for its intended use, rendering the microwave oven in question unreasonably dangerous.

(10) Defendant, Sears, breached its expressed and implied warranties by the failure of the microwave oven as alleged above, and the improper marketing as to the defendant's failure to warn and failure to instruct purchasers of the danger of a spontaneous ignition of the microwave oven due to the faulty wiring configuration.

(11) Defendant's breach of warranties and the above mentioned defects rendered the microwave oven unreasonably dangerous and was a cause in fact of the occurrence in question and resulting injuries suffered by Jerry and Esther Vosburg and the damage to their home.

### 25.

Petitioners show that the personal injuries to Jerry and Esther Vosburg and the fire damage to their home was caused solely or in part by the negligence, manufacturing defect, design defect, failure to warn, breach of expressed and/or implied warranty and strict liability of defendant, LG Electronics, Inc., in the following non-exclusive particulars:

(1) The Kenmore microwave oven was manufactured and/or distributed, marketed, and sold by defendant, LG Electronics. Defendant manufacturer placed into the stream of commerce the Kenmore microwave oven, which reached the plaintiffs in the same or substantially same condition in which it was sold. Upon purchase the product in question was represented to be safe and free from defects.

(2) When the product was manufactured, it was designed to be used as a microwave oven with a three-prong male plug. It was also designed to have no gaps in between conductors in the wiring configuration to prevent spurious arcing. There was no metallic contact between conductors resulting in a gap allowing electrical charges to jump which caused sparking, which ignited particles surrounding the microwave. The wiring configuration of the Kenmore microwave oven was defective in composition, design, and manufacture, causing the microwave to be inherently and unreasonably dangerous as constructed, designed, manufactured, warranted, and sold. The plug was manufactured without a male prong plug for proper grounding.

(3) Defendant, LG Electronics USA Inc. never provided any warning whatsoever that the wiring configuration could ignite when the microwave was plugged in, but turned off.

(4) Defendant, LG Electronics USA, Inc. knew, or in the existence of ordinary care should have known, that the wiring configuration of the microwave was unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used.

(5) Defendant, LG Electronics USA, Inc. was negligent in the particulars set forth in this and the proceeding paragraphs and such negligence was a proximate cause of the occurrence in question.

(6) Defendant, LG Electronics USA, Inc. owed plaintiffs the duty of reasonable care when they manufactured and/or sold, and/or marketed the product in question.

(7) Defendant, LG Electronics, USA, Inc. violated its duty and was negligent in the particulars set forth above. Each of the aforementioned acts or omissions was a proximate cause of the injuries and damages suffered by plaintiffs.

(8) Defendant, LG Electronics, by and through the sale in question, expressly and impliedly warranted to the public generally, and the plaintiffs specifically, that the microwave oven was fit for the purposes for which it was intended.

(9) Jerry and Esther Vosburg made use of the product as alleged herein, and relied on the expressed and implied warranties of the defendant, LG Electronics. Contrary thereto, the microwave oven was not fit for its intended use, rendering the microwave oven in question unreasonably dangerous.

(10) Defendant, LG Electronics, breached its expressed and implied warranties by the failure of the microwave oven as alleged above, and the improper marketing as to the defendant's failure to warn and failure to instruct purchasers of the danger of a spontaneous ignition of the microwave oven due to the faulty wiring configuration.

(11) Defendant's breach of warranties and the above mentioned defects rendered the microwave oven unreasonably dangerous and was a cause in fact of the occurrence in question and resulting injuries suffered by Jerry and Esther Vosburg and the damage to their home.

26.

Petitioners show that the personal injuries to Jerry and Esther Vosburg were caused solely or in part by the gross negligence of the City of Bastrop, through the Bastrop Fire Department and the responders employed through the Bastrop Fire Department at the scene of the fire in the following non-exclusive particulars:

(1) The failure to provide oxygen or other medical assistance related to smoke inhalation to the petitioners at the scene of the fire is the sole or partial cause of the injuries to the petitioners.

(2) The failure to provide oxygen or any other necessary medical care to smoke inhalation victims at the scene of a fire.

(3) The failure to call for assistance from other emergency medical providers if necessary to assist in providing oxygen or other necessary care to smoke inhalation victims.

(4) The failure to offer or provide oxygen to petitioners, by failing to offer or provide emergency transport via ambulance to petitioners, and by failing to offer or provide any other necessary medical care to petitioners while on the scene or immediately thereafter.

(5) Defendant, the City of Bastrop, its agents and/or employees violated its duty of care and was grossly negligent in the particulars set forth above. Each of the aforementioned acts or omissions was a proximate cause of the injuries and damages suffered by petitioners.

As a result of the City of Bastrop's failure to timely provide oxygen to petitioners at the scene or within a reasonable period of time after petitioners suffered smoke inhalation, petitioners suffered permanent and irreversible pulmonary injuries.

### 27.

Petitioner, Esther Vosburg, in her individual capacity, saw Jerry Vosburg collapse from smoke inhalation as he attempted to put out the fire caused by the Kenmore microwave. Esther physically pulled Jerry from the kitchen in order to minimize the damage that could result from any further smoke inhalation.

### 28.

Accordingly, pursuant to Louisiana Civil Code Article 2315.6, petitioner, Esther Vosburg, has a claim herein for additional mental anguish and/or emotional distress that she suffered as a result of seeing her husband pass out from extreme smoke inhalation. Petitioner shows that the mental anguish and/or mental distress and/or emotional injuries suffered by Esther Vosburg was of such a nature that can reasonably be expected by a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish and emotional distress that she did in fact suffer, was severe, debilitating, and foreseeable.

### 29.

Petitioner, Esther Vosburg, shows that as a result of the accident and its effects on her daily life with Jerry, she has a claim herein for past and future loss of consortium that has been suffered as a result of the injuries and loss of enjoyment of life stemming from the

fire. The normal household duties and chores and/or other things normally associated with the marital relationship, inclusive of marital relations, have ceased. This is a direct result of the pain, suffering, disability and anguish which Jerry has experienced and will continue to experience for an undetermined amount of time.

### 30.

Petitioner, Jerry Vosburg, shows that as a result of the accident herein and injuries and damages sustained by petitioner as a result of the accident, he is entitled to recover the following elements of damages:

(1)   Past and future loss of enjoyment of life;
(2)   Past and future pain and suffering;
(3)   Past and future mental anguish and emotional distress;
(4)   Past and future anxiety;
(5)   Past and future disability;
(6)   Past and future physical impairment;
(7)   Past and future lost wages;
(8)   Past and future loss of earning capacity;
(9)   Damage to property;
(10)  Past and future medical expenses;
(11)  Past and future costs associated with the receipt of appropriate medical care, inclusive of travel expenses;
(12)  Past and future loss of consortium;
(13)  All additional damages to be shown at the trial of this matter.

### 31.

Petitioner, Esther Vosburg, shows that as a result of the accident herein and injuries and damages sustained by petitioner as a result of the accident, she is entitled to recover the following elements of damages:

(14)  Past and future loss of enjoyment of life;
(15)  Past and future pain and suffering;
(16)  Past and future mental anguish and emotional distress;
(17)  Past and future anxiety;
(18)  Past and future disability;
(19)  Past and future physical impairment;
(20)  Past and future lost wages;
(21)  Past and future loss of earning capacity;
(22)  Damage to property;
(23)  Past and future medical expenses;
(24)  Past and future costs associated with the receipt of appropriate medical care, inclusive of travel expenses;
(25)  Past and future loss of consortium;
(26)  All additional damages to be shown at the trial of this matter.

### 32.

Petitioner, Esther Vosburg, individually shows that as a result of the accident herein and witnessing the serious injuries to Jerry and pursuant to Louisiana Civil Code Article 2315.6, she is entitled to recover the following elements of damages:

(1) Mental anguish, distress, and/or emotional distress;

WHEREFORE, PETITIONERS, JERRY VOSBURG and ESTHER VOSBURG, INDIVIDUALLY, PRAY that there be judgment rendered herein in their favor in an amount reasonable in the premises, against the defendant, Sears Roebuck and Company, LG Electronics USA, INC., the City of Bastrop, and Risk Management, Inc. jointly, severally and insolido in order for said petitioners to be fully and completely compensated for the injuries and damages sustained by each of them herein, interest from date of judicial demand, expert witness fees, all costs of these proceedings, and any and all other full, general, and equitable relief as this Honorable Court may deem fit to grant.

RESPECTFULLY SUBMITTED:

Charles E. Herring, Jr.
La. Bar No. 6829
**THE HERRING LAW FIRM, APLC**
343 North Washington Street
Bastrop, LA 71220
(318) 281-6364
ATTORNEY FOR PETITIONERS

SERVICE INSTRUCTIONS:

SEARS ROEBUCK AND COMPANY
through the agent for service process
CT Corporation System,
5615 Corporate Blvd
Suite 400 B
Baton Rouge, LA  70808

LG ELECTRONICS USA, INC
through the agent for service process;
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA  70802-6129

CITY OF BASTROP
Through Mayor Clarence Hawkins
202 East Jefferson
Bastrop, Louisiana 71220

## VERIFICATION

STATE OF LOUISIANA

PARISH OF MOREHOUSE

BEFORE ME, the undersigned authority, duly commissioned and qualified in and for the above named Parish and State, personally came and appeared JERRY VOSBURG, who, after being duly sworn, stated and deposed that;

He is the petitioner in the Petition for Damages; that he has read all of the allegations contained in the Petition and the allegations are true and correct to the best of his knowledge, information and belief.

JERRY VOSBURG

SWORN TO AND SUBSCRIBED before me, Notary, this 6 day of _____, 2008.

NOTARY PUBLIC
Angela W. Mattson
Notary Number: 15618

RISK MANAGEMENT, INC.
Through its agent for service of process,
Tom Ed McHugh
700 North 10th Street
Baton Rouge, Louisiana 70802

## VERIFICATION

STATE OF LOUISIANA

PARISH OF MOREHOUSE

BEFORE ME, the undersigned authority, duly commissioned and qualified in and for the above named Parish and State, personally came and appeared ESTHER VOSBURG, who, after being duly sworn, stated and deposed that;

He is the petitioner in the Petition for Damages; that he has read all of the allegations contained in the Petition and the allegations are true and correct to the best of his knowledge, information and belief.

_Esther Vosburg_

ESTHER VOSBURG

SWORN TO AND SUBSCRIBED before me, Notary, this ___ day of _____, 2008.

_Angela W Matson_

NOTARY PUBLIC

Angela W Matson

Notary Number: _____

## SEDRIC E. BANKS
**ATTORNEY AT LAW**
**1038 NORTH NINTH**
**MONROE, LA 71201**

SEDBANKS@AOL.COM

PHONE (318) 388-1655
FAX (318) 388-0227

November 26, 2018

U.S. Bankruptcy Court
for the Southern District of New York
Clerk of Court
300 Quarropas Street
White Plains, New York 10601

Attention: Li

Re: Sears Holding Corporation, Debtor
Ch 11 case no. 18-23538

Dear Clerk:

Please find enclosed the following, to-wit:

1.    Application for Admission Pro Hac Vice with proposed order

2.    Motion to Lift Automatic Stay with proposed Order

3.    Check payable to Clerk of Bankruptcy Court in the amount of $200

4.    Computer disk containing the above documents in Word format.

I understand that your office will handle electronic service on all creditors and debtor. If I am incorrect, please advise.

Thank you for your kind   assistance.

Sincerely yours,

Sedric E. Banks