# EXHIBIT

# A

# NOTE

August 2, 2000                                                                              New Jersey
[Date]                                    [City]                                            [State]

723 Bem St., Riverside, NJ 08075

[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 50,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Superior Bank FSB

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.96 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 7th day of each month beginning on September 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 7, 2025, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at One Ramland Road, Orangeburg, NY 10962
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 488.61

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT    Form 3200 12/83
-6P (9111).02
VMP MORTGAGE FORMS - (313)283-8100 - (800)521-7291
Page 1 of 2    Initials:

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Blanche Youmans                -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

(Sign Original Only)

Pay to the order of
without recourse
Superior Bank FSB,
By _____
J.A. Soricelli
Vice President

## ADDENDUM TO FNMA NOTE

This ADDENDUM TO NOTE is made this 2nd day of August, 2000, and is incorporated into and amends and supplements the Note, Adjustable Rate Note or Balloon Note of the same date, and any extensions and renewals of that Note, given by the undersigned ("Borrower") to Superior Bank FSB

("Lender")("Note").

In addition to the agreements made in the Note, Borrower and Lender further agree as follows:

1. **Balloon Payment Loan** ☐

   If the box above has been checked, the following provisions are added to the Note:

   A. "THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFIANCING FROM THE SAME LENDER."

   B. The "Payments" section of the Note is amended by deleting the first sentence and replacing it with the following language:
   "I will pay principal and interest by making payments every month. Each of my regular monthly payments, except for the final payment, will be in the amount of U.S. $488.61.

   Assuming all scheduled payments of principal and interest are made on their due dates, the final payment will be U.S. $488.61."

2. The section of the Note entitled, "Borrower's Promise to Pay," is amended by adding the following language after the first sentence: "Any amounts owed under the Security Instrument that is executed in conjunction with this Note are and shall be part of the debt obligation under this Note."

3. If the Note is an adjustable rate Note, the section of the Note entitled, "Interest," is amended by adding the following language at the end of the second sentence: "which, except for odd days' interest, if any, will be applied to a 360 day year consisting of 12 months with 30 days each. Interest will be charged until the principal has been paid in full."

4. If the Note is an adjustable rate Note: a) the section of the Note entitled, "Payments" (A) "Time and Place of Payments," is amended by deleting the sentence which reads, "My monthly payments will be applied to interest before principal." and replacing it with the following language: "Each of my regular monthly payments will be applied first to amounts due for any escrows for taxes and insurance under the Security Instrument, then to accrued and unpaid interest as if the payment is made on its due date, regardless of when the payment is actually received and the remainder, if any, to the unpaid principal balance. Any late charges, collection costs and expenses, dishonored check charges, prepayment charges and payments made by the Note Holder to enforce this Note and/or to protect the Note Holder's interests under the Security Instrument will be assessed separately. This does not take into account any payments for optional mortgage products that are charged to my account." and b) the section of the Note entitled, "Interest Rate and Monthly Payment Changes" (D) "Limits on Interest Rate Changes," is amended by adding the following language, "My interest rate will never be less than

   N/A."

5. If the Note is a fixed rate Note, the section of the Note entitled, "Time and Place of Payments" or alternately "Payments," is amended by deleting (if applicable) the sentence which reads, "My monthly payments will be applied to interest before principal." and by adding the following language before the sentence which contains the maturity date:

   "Each of my regular monthly payments will be applied first to amounts due for any escrows for taxes and insurance under the Security Instrument, then to accrued and unpaid interest to the date of payment and the remainder, if any, to the unpaid principal balance. Any late changes, collection costs and expenses, dishonored check charges, prepayment charges and payments made by the Note Holder to enforce this Note and/or to protect the Note Holder's interests under the Security Instrument will be assessed separately. This does not take into account any payments for optional mortgage products that are charged to my account."

6.A. The section of the Note entitled, "**Borrower's Right to Prepay**" or alternately "**Borrower's Payments Before They Are Due**," is amended by: a) adding to the end of the first sentence the following language, ", but the Note Holder may apply any tendered payments first to any amounts then due and owing under this Note or under the Security Instrument and then to principal not yet due."; b) deleting the sentence which states, "The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note."; and c) adding after the final sentence the following language, "Except as provided in the "**Loan Charges**" section (if any), the Note Holder earns any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule."

B. If a prepayment charge is contracted in connection with this loan, the section of the Note entitled, "**Loan Charges**" (if any) is amended by adding to the end of the final sentence the following language, "without any prepayment charge."

7. In the State of Arizona, a provision is added to the Note as follows:

"**Contracted for Rate of Interest.** I agree to pay an effective contracted for rate of interest equal to the interest rate as provided in this Note and the additional interest resulting from any Additional Sums. The Additional Sums shall consist of all fees, charges, goods, things in action or other sums or things of value (other than interest as provided in this Note) paid or payable by me, whether pursuant to this Note, the Security Instrument securing this Note or any other document or instrument in any way pertaining to this loan, that may be deemed to be interest for the purpose of any law of the State of Arizona that may limit the maximum amount of interest to be charged with respect to this loan. The Additional Sums shall be deemed to be additional interest for the purposes of any such law only."

8. The section of the Note entitled, "**Late Charge for Overdue Payments**," is amended by replacing the word "overdue" in the second sentence with the word "scheduled." If the Note is a fixed rate Note, after the final sentence add the following language, "Any late charge will be in addition to interest on the then outstanding principal for each day the payment is late."

9. The sections of the Note entitled, "**Notice of Default**" and "**Uniform Note**," are amended by changing the notice of default or acceleration to be at least 60 days if the loan is secured by a secondary lien on real property in the State of Connecticut and at least 35 days if the loan is secured by a lien on real property in the State of Oklahoma.

10. If this is an adjustable rate Note, then the subparagraph entitled, "**Transfer of the Property or a Beneficial Interest in Borrower**," is amended by deleting the provisions relating to assumption of the loan.

11. The section of the Note entitled, "**Payment of Note Holder's Costs and Expenses**," is deleted in its entirety and is replaced by the following language:

"If I default, whether or not the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees, collection costs and expenses, servicing fees, and dishonored check charges to the fullest extent not prohibited by applicable law."

12. The section of the Note entitled, "**Obligations/Responsibility of Persons Under This Note**," is amended by adding the following language to the end of the first sentence:

"plus the charges as described in the sections entitled, "**Late Charges for Overdue Payments**" and "**Payment of Note Holder's Costs and Expenses**," and to pay any other charges required in order to close the loan."

13. In the State of Virginia, the first sentence in the section of the Note (Form 3200, 3260 or 3520) entitled, "**Waivers**," is deleted and amended to read as follows:

" I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption."

14. A provision is added to the Note as follows:

"**ADDITIONAL SERVICING FEES**: In addition to charges specified elsewhere in this Note, in the Security Instrument given to secure this Note, or in any other agreement in connection with this Note, I agree to pay, to the fullest extent not prohibited by applicable law, the following if



MULTISTATE ADDENDUM TO 1ST/2ND
FNMA/FHLMC NOTE (2/8/99)                    PAGE 2 OF 3

6.A.  The section of the Note entitled, "Borrower's Right to Prepay" or alternately "Borrower's Payments Before They Are Due," is amended by: a) adding to the end of the first sentence the following language, ", but the Note Holder may apply any tendered payments first to any amounts then due and owing under this Note or under the Security Instrument and then to principal not yet due."; b) deleting the sentence which states, "The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note."; and c) adding after the final sentence the following language, "Except as provided in the "Loan Charges" section (if any), the Note Holder earns any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule."

B.  If a prepayment charge is contracted in connection with this loan, the section of the Note entitled, "Loan Charges" (if any) is amended by adding to the end of the final sentence the following language, "without any prepayment charge."

7.  In the State of Arizona, a provision is added to the Note as follows:

"Contracted for Rate of Interest. I agree to pay an effective contracted for rate of interest equal to the interest rate as provided in this Note and the additional interest resulting from any Additional Sums. The Additional Sums shall consist of all fees, charges, goods, things in action or other sums or things of value (other than interest as provided in this Note) paid or payable by me, whether pursuant to this Note, the Security Instrument securing this Note or any other document or instrument in any way pertaining to this loan, that may be deemed to be interest for the purpose of any law of the State of Arizona that may limit the maximum amount of interest to be charged with respect to this loan. The Additional Sums shall be deemed to be additional interest for the purposes of any such law only."

8.  The section of the Note entitled, "Late Charge for Overdue Payments," is amended by replacing the word "overdue" in the second sentence with the word "scheduled." If the Note is a fixed rate Note, after the final sentence add the following language, "Any late charge will be in addition to interest on the then outstanding principal for each day the payment is late."

9.  The sections of the Note entitled, "Notice of Default" and "Uniform Note," are amended by changing the notice of default or acceleration to be at least 60 days if the loan is secured by a secondary lien on real property in the State of Connecticut and at least 35 days if the loan is secured by a lien on real property in the State of Oklahoma.

10. If this is an adjustable rate Note, then the subparagraph entitled, "Transfer of the Property or a Beneficial Interest in Borrower," is amended by deleting the provisions relating to assumption of the loan.

11. The section of the Note entitled, "Payment of Note Holder's Costs and Expenses," is deleted in its entirety and is replaced by the following language:

"If I default, whether or not the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees, collection costs and expenses, servicing fees, and dishonored check charges to the fullest extent not prohibited by applicable law."

12. The section of the Note entitled, "Obligations/Responsibility of Persons Under This Note," is amended by adding the following language to the end of the first sentence:

"plus the charges as described in the sections entitled, "Late Charges for Overdue Payments" and "Payment of Note Holder's Costs and Expenses," and to pay any other charges required in order to close the loan."

13. In the State of Virginia, the first sentence in the section of the Note (Form 3200, 3260 or 3520) entitled, "Waivers," is deleted and amended to read as follows:

" I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption."

14. A provision is added to the Note as follows:

"ADDITIONAL SERVICING FEES: In addition to charges specified elsewhere in this Note, in the Security Instrument given to secure this Note, or in any other agreement in connection with this Note, I agree to pay, to the fullest extent not prohibited by applicable law, the following if

charged in connection with this loan: any fees imposed by the Lender's discharge or satisfaction of lien(s) (whether upon payment in full, acceleration or maturity); payoff quotes/charges; delivery charges; inspection fees; payment history charges and/or any other servicing fees listed in the schedule of fees in effect at the time the charge is incurred."

15. A provision is added to the Note as follows:

A. "APPLICABLE LAW. This Note shall be governed by federal law and, to the extent not inconsistent with or more restrictive than federal law or regulation governing the Lender, the laws of the jurisdiction in which the property defined in the Security Instrument as the "Property" is located. In the event of a conflict between any provision of this Note and any such law or regulation in effect as of the date of this Note, such law or regulation shall control to the extent of such conflict and the conflicting provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable."

B. In the State of Minnesota, a provision is added to the Note as follows:

"The interest rate on a second mortgage loan is governed by Minnesota Statutes Section 47.20, 47.21 and 12 C.F.R. Section 560.110(b)."

16. A. If the box below has been checked, the section of the Note entitled, "Borrower's Right to Prepay" or alternately "Borrower's Payments Before They Are Due," is deleted in its entirety and replaced with the following language:
☒ "BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE. I have the right to make payments of principal at any time before they are due, but the Note Holder may apply any tendered payments first to any amounts then due and owing under this Note or under the Security Instrument and then to principal not yet due. A payment of principal only is known as a "prepayment." A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

If I make a partial prepayment and this Note is a fixed rate Note, there will be no changes in the due dates or amounts of my monthly payments unless the Note Holder agrees in writing to those changes. If I make a partial prepayment and this Note is an adjustable-rate Note, there will be no changes in the due dates or amounts of my subsequent scheduled monthly payments until the first payment due after the first Change Date following my partial prepayment unless the Note Holder agrees in writing to those changes. If this Note is an adjustable rate Note, my partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment, but any such reduction may be offset by an interest rate increase. If the aggregate amount of principal prepaid in any twelve (12) month period exceeds twenty percent (20%) of the original principal amount of this Note during the first   3   years commencing from the date of this Note, then as consideration for the acceptance of such prepayment, and in addition to any other sum payable hereunder, I agree to pay to the Note Holder a prepayment charge equal to   5%   of the total amount prepaid. I will pay this prepayment charge whether prepayment is voluntary or the result of acceleration due to my default under this Note or the Security Instrument. Except as provided in the section entitled, "Loan Charges," the Note Holder earns any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule."

B. Check box if applicable:
☐ This prepayment charge does not apply if the prepayment is the result of my refinancing of this loan with the Lender or an affiliate of the Lender.

17. If the Note is assigned or transferred, all or a portion of this Addendum to Note may be voided at the option of the assignee or transferee. Any terms and provisions of the Addendum to Note which are voided will be governed by the original terms and provisions of the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum to Note.

_/s/ Blanche Youmans_ (Seal)   _____ (Seal)
Blanche Youmans   Borrower                              Borrower

_____ (Seal)   _____ (Seal)
Borrower                              Borrower

_____ (Seal)   _____ (Seal)
Borrower                              Borrower

MULTISTATE ADDENDUM TO 1ST/2ND          PAGE 3 OF 3
FNMA/FHLMC NOTE (2/8/99)



——————————————————— [Space Above This Line For Recording Data] ———————————————————

This instrument was prepared by:
Superior Direct, A Division Of Superior Bank FSB
Ben Chin

## MORTGAGE

RECORD AND RETURN TO:
Superior Bank FSB
One Ramland Road, Orangeburg, NY 10962

THIS MORTGAGE ("Security Instrument") is given on    August 2, 2000    . The mortgagor is
Blanche Youmans, Unmarried

("Borrower"). This Security Instrument is given to   Superior Bank FSB

which is organized and existing under the laws of    The United States of America    , and whose
principal office and mailing address is   One Ramland Road, Orangeburg, NY 10962

("Lender"). Borrower owes Lender the principal sum of
Fifty Thousand and 00/100

Dollars (U.S. $   50,000.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on August 7, 2025.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, Section 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $   50,000.00   . For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
City of Riverside, Essex   County, New Jersey:
SEE ATTACHED 'SCHEDULE A' FOR LEGAL DESCRIPTION.
THE WITHIN MORTGAGE CONSTITUTES A FIRST LIEN ON THE PREMISES DESCRIBED HEREIN.

which has the address of   723 Bem St., Riverside                                 [Street, City],
New Jersey          08075          [Zip Code]  ("Property Address");
NEW JERSEY-Single Family-FNMA/FHLMC
UNIFORM INSTRUMENT   Form 3031 9/90
VMP -6R(NJ) (9608).02       Amended 8/96
Page 1 of 8      Initials:
VMP MORTGAGE FORMS - (800)521-7291

HB7811 PG001

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

-6R(NJ) (9608).02    Page 4 of 6    Initials: /s/    Form 3031 9/90

HB7811 PG004

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

-GR(NJ) (9808).02                Page 5 of 8                Initials: _____  Form 3031 9/90

MB7811 PG005

23. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☒ Other(s) [specify] Legal Description | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Blanche Youmans_ (Seal)
Blanche Youmans    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

**STATE OF NEW JERSEY,**    Burlington **County** ss:

On this    2nd    day of    August    , 2000    , before me, the subscriber, personally appeared
Blanche Youmans, Unmarried

    who, I am satisfied,
is    the person(s) named in and who executed the within instrument, and thereupon acknowledged that    she
signed, sealed and delivered the same as    her    act and deed, for the purposes therein expressed.

_My C. Grassi_
Notary Public
    MARY E. GRASSI
    NOTARY PUBLIC OF NEW JERSEY
    MY COMMISSION EXPIRES 4/22/01

-6R(NJ) (9508).02    Page 6 of 6    Form 3031 9/90

MB7811 PG006



## SCHEDULE 'A'

ALL THAT CERTAIN LAND AND PREMISES SITUATE IN THE TOWNSHIP OF RIVERSIDE, COUNTY OF BURLINGTON AND THE STATE OF NEW JERSEY:
BEGINNING AT THE INTERSECTION OF THE NORTHEASTERLY LINE OF BEM STREET AND THE NORTHWEST LINE OF PALMER STREET; THENCE (1) NORTHWEST ALONG THE NORTHEAST LINE OF BEM STREET, SIXTY FEET TO A POINT; THGENCE (2) NORTHEAST AT RIGHT ANGLES TO BEM STREET, ONE HUNDRED FEET TO A POINT; THENCE (3) SOUTHEAST PARELLEL WITH BEM STREET, SIXTY FEET TO THE NORTHWEST LINE OF PALMER STREET; THENCE (4) SOUTHWEST ALONG THE NORTHWEST LINE OF PALMER STREET, ONE HUNDRED FEET TO PLACE OF BEGINNING.    BEING KNOWN AS LOT 6, BLOCK 920, TAX MAP OF RIVERSIDE. BEING ALSO KNOWN AS LOTS 26, 27, 28, BLOCK 20, PLAT 9 OF THE PLAN OF RIVERSIDE COTTAGE COMPANY.

## ADDENDUM TO MORTGAGE/DEED OF TRUST DEED TO SECURE DEBT/SECURITY DEED

This ADDENDUM TO MORTGAGE/DEED OF TRUST/DEED TO SECURE DEBT/SECURITY DEED (also known as "Security Instrument") is made this 2nd day of August, 2000, and is incorporated into and amends the Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to Superior Bank FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

723 Bem St., Riverside, NJ 08075
(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further agree as follows:

1. The paragraph of the Security Instrument entitled, "**Application of Borrower's Payments**" or alternately "**Application of Payments**," is deleted in its entirety and the application of payments is governed by the Note.

2. Unless prohibited by applicable law, the paragraph of the Security Instrument entitled, "**Acceleration; Remedies**" or alternately "**Lender's Rights if Borrower Fails to Keep Promises and Agreements**," is supplemented by adding the following provisions:
"Additionally, Lender may require immediate payment in full of the entire amount remaining unpaid under the Note and this Security Instrument, if:
   (1) On application of Lender, two or more insurance companies liscensed to do business in the State in which the Property is located, refuse to issue policies insuring the buildings and improvements on the Property; or
   (2) Borrower fails to make any payment required by a senior mortgage, deed of trust, deed to secure debt or other security instrument encumbering or affecting the Property or fails to keep any other promise or agreement in any senior mortgage, deed of trust, deed to secure debt or other security instrument encumbering or affecting the Property; or
   (3) Any representation made or information given to Lender by Borrower in connection with Borrower's application for the loan evidenced by the Note is false or misleading in any material respect; or
   (4) Borrower allows the Property to be used in connection with any illegal activity."

3.  a.  For a loan secured by Iowa real property:
        The following sentence is added to the end of the paragraph of the Security Instrument entitled, "**Release**" or alternately "**Redemption Period:**"
        "Borrower shall pay any recordation and/or official costs in connection with this mortgage,"
    b.  Language is added to the Security Instrument as follows:
        "NOTICE TO BORROWER

        I UNDERSTAND THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS MORTGAGE, I VOLUNTARILY GIVE UP MY RIGHT TO THIS PROTECTION FOR THIS MORTGAGED PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS MORTGAGE."

4.  The paragraph of the Security Instrument entitled, "**Transfer of the Property or a Beneficial Interest in Borrower,**" is amended by changing the notice of default or acceleration to be at least 60 days if the loan is secured by secondary lien on real property in the State of Connecticut and at least 35 days if the loan is secured by a lien on real property in the State of Oklahoma.

5.  For a loan secured by Kansas real property, if the Security Instrument is Form 3017, the last sentence in the paragraph entitled, "**Acceleration; Remedies,**" is deleted and replaced with the following:
    "**Lender shall be entitled to collect all reasonable expenses incurred in pursuing the remedies provided in this paragraph, including but not limited to, reasonable attorneys' fees, to the extent allowed by applicable law.**"
    In addition, the paragraph entitled, "**Attorneys' Fees,**" is deleted in its entirety.

6.  For a loan secured by Ohio real property, the following language is added after the legal description section of the Security Instrument:
    "This mortgage is given upon the statutory condition. "Statutory Condition" is defined in Section 5302.14 of the Revised Code and provides generally that if Borrower pays the indebtedness and performs the other obligations secured by this mortgage, pays all taxes and assessments, maintains insurance against fire and other hazards and does not commit or permit waste, then this mortgage will become null and void."

MULTISTATE ADDENDUM TO 1ST/2ND
FNMA/FHLMC SECURITY INSTRUMENT          PAGE 2 OF 5                    AMG014A.USM
SUPERIOR (4/30/98)                                                     SR99601B

MB7811·PG009

7.   For a loan secured by South Carolina real property:
     If the Security Instrument is Form 3041, the second sentence of the paragraph. entitled, "Waivers," is deleted. If the Security Instrument is Form 3841 the paragraph entitled, "Waiver of Right of Appraisal," is deleted

8.   The paragraph of the Security Instrument entitled, "Law That Governs This Security Instrument/Mortgage" or alternately "Governing Law; Severability," is amended by deleting the first sentence and replacing it with the following language:
     "This Security Instrument shall be governed by federal law and, to the extent not inconsistent with or more restrictive than federal law or regulation governing Lender, the laws of the jurisdiction in which the Property is located."

9.   If the Security Instrument is a second or junior priority Security Instrument, then a paragraph is added to the Security Instrument as follows:
     "WAIVER OF RIGHT TO INCREASE PRIOR MORTGAGE/DEED OF TRUST. Borrower hereby waives Borrower's rights if any, to increase any senior deed of trust, mortgage or other security instrument on the Property under any provision contained therein governing optional future advances, and to the extent permitted by law, waives Borrower's rights under any law which provides for an increase of said prior deed of trust, mortgage, deed to secure debt or other security instrument to pay for repairs, improvements, replacements, taxes, municipal liens, assessments or other charges on the Property. If, notwithstanding the foregoing waiver, such funds are advanced to or on behalf of Borrower, whether voluntarily or involuntarily, Borrower agrees that Lender, at its option, may accelerate the indebtedness secured hereby."

10.  A provision is added to the Security Instrument as follows:
     "Borrower hereby acknowledges receipt, without charge, of a true copy of the Security Instrument."

11.  Escrow Waiver [x]
     If the box above has been checked, Lender waives the requirement for Borrower to make payment to Lender for the escrow items referred to in the paragraph of the Security Instrument entitled, "Funds/Monthly Payments for Taxes and Insurance." Borrower shall pay these obligations on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph, and receipts evidencing such payment.

MULTISTATE ADDENDUM TO 1ST/2ND
FNMA/FHLMC SECURITY INSTRUMENT        PAGE 3 OF 5                AMG014A.USM
SUPERIOR (4/30/98)                                                SR99601C

MB7811·PG010

Unless otherwise prohibited by applicable law, Lender reserves the right to require Borrower to make payment to Lender for the escrow items referred to in the paragraph of the Security Instrument entitled, "**Funds/Monthly Payments for Taxes and Insurance,**" if Borrower defaults in the payment of such escrow items and such default is not cured within the time set forth in any notice sent to Borrower by Lender. Lender reserves such right even though Lender did not establish such escrow account as a condition to closing the loan. If Lender requires Borrower to make payments to Lender as provided herein, the provisions of the paragraph of the Security Instrument entitled, "**Funds/MonthlyPayments for Taxes and Insurance**" will be in force and effect.

12. A paragraph is added to the Security Instrument as follows:
"**FORCE PLACED INSURANCE.** Unless otherwise prohibited by applicable law, if Borrower does not provide Lender with evidence of insurance coverage (for any type of insurance that is required by Lender), Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's Property. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained the required insurance. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of that insurance, including the insurance premium, interest at the rate provided by the terms of the Note and any other charges that the Lender or the insurer may impose in connection with the placement of the insurance (for example, a fee from the carrier for processing the force placed insurance), until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance and secured by this Security Instrument. The costs may be more than the cost of insurance that Borrower may be able to obtain directly because Lender will be purchasing insurance under a general policy that does not consider Borrower's individual insurance situation."

13. A paragraph is added to the Security Instrument as follows:
"Verification or reverification of the Property's valuation or any other information normally contained in an appraisal may be required as part of Lender's ongoing quality control procedures. Borrower agrees to cooperate fully with Lender and/or its agents, successors or assigns in obtaining and completing a full apraisal in the future at Lender's sole option and expense."

MULTISTATE ADDENDUM TO 1ST/2ND
FNMA/FHLMC SECURITY INSTRUMENT         PAGE 4 OF 5                  AMGO14AUSM
SUPERIOR (4/30/98)                                                  SR99601D

MB7811 PG011

14. If an Adjustable Rate Rider is executed in conjunction with the Security Instrument, such rider is amended by: a) deleting the section entitled, "**Transfer of the Property or a Beneficial Interest in Borrower**" and b) adding to the section entitled, "**Interest Rate and Monthly Payment Changes**" (D) "**Limits on Interest Rate Changes**," the following language: "My interest rate will never be less than   N/A   ."

15. If the Security Instrument is assigned or transferred, all or a portion of this Addendum may be voided at the option of the assignee or transferee. Any terms and provisions of this Addendum which are voided will be governed by the original terms of the Security Instrument.

_____          _____
Blanche Youmans                                                                                                           
                           Borrower                                                      Borrower

_____          _____
                           Borrower                                                      Borrower

_____          _____
                           Borrower                                                      Borrower

MULTISTATE ADDENDUM TO 1ST/2ND
FNMA/FHLMC SECURITY INSTRUMENT          PAGE 5 OF 5          AMG014A.USM
SUPERIOR (4/30/98)                                                                        SR99601E

MB7811 PG012