WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re                                                    :

                                                         :        **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,                :

                                                         :        **Case No. 18-23538 (RDD)**

                                                         :

Debtors.[1]                                              :        **(Jointly Administered)**

                                                         :

                                                         :

-------------------------------------------------------------x

## DEBTORS' OBJECTION TO MOTION
## OF COMMUNITY UNIT SCHOOL DISTRICT 300 FOR RELIEF
## FROM THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, ABSTENTION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "**Sears**" or the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion of Community Unit School District 300 for Relief from the Automatic Stay or, in the Alternative, for Abstention* (ECF No. 652) (the "**Motion**").[2]  In support of the Objection, the Debtors respectfully represent as follows:

### Preliminary Statement

1.      These chapter 11 cases are at a critical junction.  All of the Debtors' efforts are focused on maximizing the value of their estates by executing the sale process and managing their affairs under the demands and challenges of chapter 11—all while running their businesses during the busiest time of the year for any retailer.  This translates to high administrative costs to the estates, and requires the Debtors and their professionals to prioritize issues that are urgent and necessary to achieve the Debtors' immediate objectives.

2.      It is against this backdrop that the Community School District 300 (the "**School District**" or the "**Movant**") has filed its Motion, which seeks relief from the stay in connection with a lawsuit (the "**School District Litigation**") conspicuously filed on October 10, 2018—only five days before these cases commenced, at the time when virtually every news outlet in the nation reported that Sears was on the verge of filing for bankruptcy.  The School District Litigation, filed in the Cook County Circuit Court, State of Illinois (the "**Illinois Court**"), seeks,

---

(9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

among other things, (i) forfeiture of certain funds received by Sears in 2017 and due to Sears in 2018 under the Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1 (the "**Illinois Sears EDA Act**" or the "**Act**"), (ii) entry of an order requiring Sears to repay what the School District alleges to be an amount of approximately $49 million, and (iii) an injunction preventing further distributions to Sears under the Act estimated at approximately $8.7 million for the year 2017.  Any request for repayment of amounts paid prepetition to the Debtors are merely prepetition general unsecured claims that need not be addressed in any manner other than through the claims process.  Allowing the School District to proceed to try to recover its prepetition claim in the Illinois Court will serve no immediate purpose and will open the floodgates for thousands of similarly situated prepetition unsecured creditors to seek relief from the automatic stay.

3.        There is similarly no need to permit the School District to proceed in Illinois Court on the issue of whether future distributions should be made to the Debtors.  These are fundamentally core issues for the Court to determine—specifically, the scope of property of the Debtors' estates.  This Court is well-equipped to handle, and regularly resolves, disputes under state law regarding the Debtors' property rights.  The Debtors do not dispute the importance of proper allocation of funds to schools and other public institutions.  But now is not the time to divert the Debtors' valuable resources to the issues raised in the School District Litigation and the Motion.  Even if the Village of Hoffman Estates makes another distribution to Sears between now and when the dispute is ultimately adjudicated, if the School District is successful the School District will be entitled to recover any funds found to have been improperly allocated to Sears in the form of an administrative claim or such proceeds will be deemed to be outside of the Debtors'

3

estates.[3] As further explained below, the Debtors indisputably will be harmed by having to litigate the School District Litigation now, whereas there is no prejudice to the School District in the absence of the relief sought.

4.    The School District previously appeared before this Court at a hearing held on November 27, 2018 (the "**Final Senior DIP Hearing**") objecting to the Debtors' postpetition financing. The record from the hearing and the orders subsequently entered by this Court (ECF Nos. 951 and 955) reflect that all parties' rights are preserved. Nothing has changed since the Final Senior DIP Hearing. The alleged urgency simply does not exist.

5.    In addition, the balance of factors weighs against granting relief from the automatic stay. For these and other reasons set forth below, the Motion should be denied, and the automatic stay should remain in place with respect to the School District Litigation.

6.    Moreover, the Movant's argument for mandatory or permissive abstention is premature because the Debtors have not removed any actions, including the School District Litigation, from state courts. In any event, the Movant has failed to show that abstention is required or even permissively appropriate. Movant's request for mandatory or permissive abstention should also be denied.

### Relevant Background

7.    The Illinois Sears EDA Act provides certain subsidies to the Debtors and includes a requirement, which was added in connection with a 2012 amendment to extend the Act, that Sears, as the "developer" of the EDA, "create or retain not less than 4,250 full-time equivalent jobs." 20 ILCS 620/4. The Act was originally passed in 1989 to incentivize Sears to relocate its

---

[3] Sears and the Movant have agreed in principle that, subject to the consent of the Village, no distributions will be made pursuant to the EDA until (i) the parties mutually agree, or (ii) ten business days after the Court enters an order on the instant Motion. The parties anticipate executing a letter agreement in the coming days.

4

headquarters from downtown Chicago to undeveloped prairie farmland in the Village of Hoffman Estates (the "**Village**"), where it is currently located. Pursuant to the Illinois Sears EDA Act, the Village and Sears entered into an Economic Development Agreement, under which Sears received subsidies to reimburse it for certain costs related to the building of its corporate campus in the Village and providing certain infrastructure improvements to the EDA in connection therewith. As intended, Sears' move to the Village spurred significant development around the Sears headquarters campus. However, Sears was not fully reimbursed for its expenditures and the Debtors continue to receive annual subsidy payments from the Village, most recently pursuant to a 2012 amendment to extend the Illinois Sears EDA Act, as discussed above.

8.    In the School District Litigation, the School District alleges that during certain periods, Sears failed to "create or retain" the statutorily required number of "fulltime equivalent jobs," yet the Village still remitted subsidiary payments. 20 ILCS 620/4. As a result, the School District argues that the Village is entitled to recapture any such subsidiary payments from the Debtors pursuant to a recapture provision in the Act. Furthermore, the School District expresses concern that, although there is no set time period for when future distributions may be made to the Debtors under the Act, the Debtors may receive a disbursement as early as January 2019 in the amount of approximately $8.7 million.

9.    On October 12, 2018, the School District filed a motion for preliminary injunction (the "**Injunction Motion**") seeking an order directing the Village not to make any further distributions from the Village's special tax allocation fund under the Illinois Sears EDA Act until the rights of the parties are declared by the court. On October 15, 2018 (the "**Petition Date**") Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code.

5

WEIL:\96845524\1\73219.0006

On October 17, 2018 the Illinois Court entered a "Continuance Pending Bankruptcy," continuing the School District Litigation to December 18, 2018.

## Argument

### A.    The Automatic Stay Should *Not* Be Lifted

10.    The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986).  The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

11.    Section 362(d)(1) of the Bankruptcy Code, which provides, in relevant part, that upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1).  Because "cause" is not defined by section 362(d), the decision whether to modify the stay is left to the discretion of the bankruptcy court. *In re Marketxt Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted. *See Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).  The *Sonnax* factors are:

1. whether relief would result in partial or complete issue resolution;

2. lack of connection with or interference with bankruptcy case;

3. whether other proceeding involves debtor as fiduciary;

WEIL:\96845524\1\73219.0006

4. whether specialized tribunal with necessary expertise has been established to hear cause of action;

5. whether debtor's insurer has assumed full defense responsibility;

6. whether the action primarily involves third parties;

7. whether litigation in another forum would prejudice interests of other creditors;

8. whether judgment claim arising from other action is subject to equitable subordination;

9. whether movant's success in other proceeding would result in a judicial lien avoidable by debtor;

10. interests of judicial economy and expeditious and economical resolution of litigation;

11. whether parties are ready for trial in other proceeding; and

12. impact of stay on parties and balance of harms.

*Id.*

12.     Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion to weigh the factors against one another. *See In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

13.     The Movant has failed to establish that these factors weigh in favor of lifting the stay. The Movant bears the initial burden to show cause for lifting the automatic stay, and if the Movant fails to satisfy that initial burden, the Court should deny the request for relief without requiring the Debtors to demonstrate that the continued protection of the automatic stay is proper. *Sonnax*, 907 F.2d at 1285. Because the Movant has not satisfied its burden of establishing "cause" under section 362(d)(1), the Motion should be denied.

7

1.    **Lifting the Automatic Stay Would Not Result in a Complete Resolution of the Issues (Factor One)**

14.    Lifting the stay to allow the School District Litigation to continue would not resolve the issues between the School District and the Debtors. The School District Litigation is in its infancy. Indeed, the School District Litigation was initiated just five days before the Debtors filed for chapter 11 relief, and the pleading phase of the case is not yet complete. This is not, therefore, a circumstance where the issues in the underlying lawsuit are completely—or even nearly—resolved, and only the ministerial task of entering an order remains unfinished. *See e.g. In re Project Orange Associates, LLC*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010). Lifting the automatic stay as requested in the Motion would allow the nascent lawsuit to proceed, risking protracted litigation beyond the pleading phase and through discovery, dispositive motions, and possibly trial, as well as appeals including of any ruling on the Injunction Motion. As such, a lift of the automatic stay would not resolve the issues between the Debtors and the School District. Accordingly, application of the first *Sonnax* factor weighs against granting the relief sought in the Motion.

2.    **Lifting the Automatic Stay Will Interfere with the Bankruptcy Cases (Factor Two)**

15.    Contrary to Movant's assertions, lifting the stay to allow the School District Litigation to proceed will interfere with the Debtors' chapter 11 cases for several reasons. The automatic stay is meant to shield debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time when the Debtors' personnel should be focused on the chapter 11 cases. *See, e.g., E. Refactories Co. v. Forty Eight Insulations*, 157 F.3d 169 (2d Cir. 1998); *In re Residential Capital, LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013). Lifting the automatic stay to allow the School District Litigation to proceed in the Illinois Court in pursuit of what is essentially a prepetition claim will open the floodgates for thousands of other prepetition

8

creditors to seek similar relief against the Debtors.  This will be extremely disruptive to the administration of the Debtors' cases.

16.     Additionally, the Debtors have a fiduciary duty to maximize the value of the estates for the benefit of all their creditors; this includes balancing the ordinary day-to-day operational difficulties in the early stages of a large complex bankruptcy proceeding, and planning for a successful strategy to maximize value for creditors.  Lifting the automatic stay to allow the School District Litigation to proceed would upset this delicate balance by requiring the Debtors to devote substantial time, energy and resources to litigating the School District Litigation.  Further, lifting the automatic stay in these circumstances would create a burdensome distraction from the important operational matters facing the Debtors and impose unnecessary costs on the Debtors' estates.  The second *Sonnax* factor therefore weighs against granting the relief sought in the Motion.

### 3.     Bankruptcy Court Has Sufficient Expertise to Decide the School District Litigation (Factor Four)

17.     The Motion concedes that the Illinois Court "is not a specialized tribunal *per se*" but that because the School District Litigation involves Illinois State Law, the underlying claims are not of the type that "can be determined by the Bankruptcy Court."  Motion ¶ 20.  This is patently false.  Bankruptcy Courts regularly determine matters of state law, especially in the context of determining the scope of property of a debtor's estate.  Moreover, the Illinois Sears EDA Act is a unique provision of Illinois law that has been scarcely, if ever, considered in actions before Illinois state courts.  There is therefore no reason why the Illinois Court would be better equipped than this Court to decide the legal issues in the School District Litigation.

18.     The Illinois Court also is not better equipped to deal with the factual issues in the underlying dispute.  First, the factual issues underlying the School District Litigation are

9

straightforward—the presiding court must determine whether the requisite number of jobs were created or maintained during the relevant time periods in accordance with the requirements of the Illinois Sears EDA Act.  Second, the automatic stay was triggered just days after the complaint was filed, and the Illinois Court has had no opportunity—beyond mere review of the complaint— to analyze and understand the facts of the case.  The Illinois Court is therefore no more specialized than this Court in dealing with the factual issues in the School District Litigation.  Accordingly, the fourth *Sonnax* factor does not support the Movant's argument that relief is appropriate in these circumstances.

### 4.    Lifting the Stay to Allow the School District Litigation to Proceed Will Prejudice Other Creditors (Factor Seven)

19.    There would be significant prejudice to the Debtors if the stay is modified as requested in the Motion.  The Motion glosses over this important factor, stating simply that other creditors will not be prejudiced because "[t]he School District Litigation provides a ready forum for the expeditious resolution of claims" and arguing—in a conclusory fashion—that such expeditious resolution would benefit other creditors.  Motion ¶ 21.  In reality, even if the School District were to prevail in the School District Litigation, it would, at best, receive a monetary judgment based on transactions and occurrences that took place prior to the Petition Date, which would give rise to an unsecured claim against the Debtors' estates.  Contrary to the School District's contention, an outcome in the School District's favor *would* prejudice other creditors because it would further dilute the unsecured claims pool and encourage other prepetition creditors to seek stay relief and litigate their claim disputes prematurely in courts throughout the country. Furthermore, as stated above, expenses to be incurred by the Debtors to litigate and resolve the School District Litigation will necessarily be made on a postpetition basis.  Therefore, the seventh *Sonnax* factor weighs against granting the relief sought in the Motion.

10

**5.    Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation Do Not Favor Modifying the Automatic Stay (Factor Ten)**

20.    Factor ten does not weigh in favor of the Movant because resolving a dispute at this stage of the Debtors' chapter 11 cases is not necessary and, as further explained below, will not harm the School District. *See e.g., In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (finding under similar circumstances that "liquidating the claim now as opposed to later does not promote judicial economy"). Moreover, there has been absolutely no activity in the Illinois Court to even suggest that the interests of judicial economy would be best served by proceedings there. Thus, the tenth *Sonnax* factor cannot be the basis upon which the Court should grant the relief sought in the Motion.

**6.    Continuing the Automatic Stay Will Not Impose Substantial Hardships on the School District Relative to the Hardships Borne by the Debtors Should the Stay Be Lifted (Factor Twelve)**

21.    In *Sonnax*, the Second Circuit affirmed the court's denial of relief from the automatic stay, finding that although the movant would suffer little harm if the stay was left in place, "lifting the stay might doom [debtors'] attempt to reorganize." *Id.* at 1287. Here, the circumstances are similar. The Movant has not alleged any facts that the funds that otherwise would be distributed to Sears were budgeted and relied upon for any other purpose. The School District could not have reasonably relied on a successful outcome of a litigation that was commenced in October for its budget of the same year. It is disingenuous to suggest, as the Movant does, that the payment of any funds to Sears would deprive the School District of funding for any vital needs.

22.    Further, the School District is unlikely to succeed on the merits in the School District Litigation, wherein Movant seeks one count for declaratory judgment related to Sears's alleged breach of the Illinois Sears EDA Act. As discussed above, the Act requires the

11

"developer" to maintain not less than 4,250 "jobs" in the economic development project area (this, in contrast to the Economic Development for a Growing Economy Tax Credit Act (the "EDGE Act"), 35, ILCS 10/5-1, which requires Sears to "employ" a minimum of 4,250 "full-time employees at its corporate headquarters in Illinois" to receive the tax benefit). The School District contends that Sears "failed to maintain the requisite number of jobs from at least May 31, 2017 to December 31, 2017" based on statements Sears made in connection with the EDGE Act. *See* Verified Compl. for Declaratory, Injunctive and Other Relief dated October 10, 2018, attached as Ex. A to the Motion (ECF No. 652), ¶¶ 22–31. But the EDGE and the EDA tax incentives are governed by unique statutes with unique job requirements, and a failure to meet the EDGE requirements simply is not the same thing as a failure to meet the EDA requirements. Indeed, as the Movant alleges in the School District Litigation, Sears certified to the Village that it was in compliance with Illinois Sears EDA Act. Therefore, Movant's claim for declaratory relief in the School District Litigation is fatally flawed, and an order denying the Motion will not prejudice the Movant.

23.    On the contrary, the Debtors would suffer clear harm if the automatic stay were lifted, primarily because the Debtors would be required to use the estate funds to defend the School District Litigation. In addition, given the size and complexity of the Debtors' operations, the Debtors are subject to a multitude of pre-petition proceedings. Allowing the relief sought in the Motion could set a dangerous precedent and impose substantial hardship on the Debtors by encouraging countless other claimants to file their own stay relief motions, forcing the Debtors to expend the limited resources of the estate to address such claims across multiple venues. *See* *SunEdison*, 557 B.R. at 308. Finally, maintaining the stay will not deprive the School District of

12

the disputed funds (if it is ultimately determined that they are in fact owed to the School District)

when the dispute eventually is adjudicated.

24.     Therefore, based on the balancing of the *Sonnax* Factors, the School District

has failed to establish a showing of "cause" sufficient to lift the automatic stay.

**B.     This Court Should Not Abstain**

25.     As stated above, the Debtors have not removed any state causes of action to

the Federal Court.  Therefore, the School District Litigation is not before this Court at this time.

As such, the abstention argument is premature, and would be tantamount to an inappropriate

advisory opinion.  Accordingly, the Debtors reserve all rights to object to abstention if and when

the School District Litigation is ultimately before this Court.  Notwithstanding the foregoing, the

Movant's abstention argument must be denied.

**1.     The School District Failed to Establish that Mandatory
Abstention Is Required**

26.     There are two types of abstention applicable to bankruptcy courts under 28

U.S.C. § 1334(c): mandatory abstention and permissive abstention.  Section 1334(c)(2), which

governs mandatory abstention, sets forth six factors, each of which must be satisfied for mandatory

abstention to apply.  *See* 28 U.S.C. § 1334(c)(2).  The moving party is not entitled to mandatory

abstention unless it proves each of the six statutory requirements.  *See N.Y.C. Emps.' Ret. Sys. v.*

*Ebbers (In re WorldCom, Inc. Sec. Litig.*), 293 B.R. 308, 331 (S.D.N.Y. 2003).  The six factors for

mandatory abstention are:  (i) a party in the proceeding has filed a timely motion for abstention;

(ii) the proceeding is based upon a state law claim; (iii) the proceeding is related to a case under

title 11; (iv) the proceeding does not arise under title 11 or arise in a case under title 11; (v) the

action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. §

WEIL:\96845524\1\73219.0006

1334; and (vi) the action can be timely adjudicated in a state forum of appropriate jurisdiction. *In re Adelphia Communications Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002).

27.    Mandatory abstention is not appropriate in these circumstances because, at the least, the Movant has failed to establish the sixth element: whether the School District Litigation can be timely adjudicated in the Illinois Court.  There are four factors that courts in the Second Circuit review in determining the timeliness of a state court action:  (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate. *See Parmalat Capital Fin. Ltd. v. Bank of America Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).  This inquiry requires a court to consider the "particular factual and procedural circumstances" of the two courts being compared. *Id*.  An application of these factors demonstrates that the underlying issues cannot be "timely adjudicated" as required by section 1332(c)(2), and therefore, that the relief sought in the Motion should be denied.

28.    Timely adjudication depends, in part, on the complexity of the legal issues in the underlying proceedings. *Id*.  ("Where the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion…").  As noted above, the legal issues in the School District Litigation primarily involve interpreting the Illinois Sears EDA Act, which has never been the subject of litigation in the Illinois Court.  Accordingly, the presumption that the state court would resolve the dispute in a more timely fashion is weak in these unique circumstances.

29.    The timeliness inquiry also looks to the complexity of the facts in a case, and asks which court has more familiarity with those facts. *Id*.  The facts of the underlying dispute

14

are not excessively complicated, and because the Illinois Court had just five days before the commencement of the Debtors' chapter 11 cases, there is no basis to support that the Illinois Court is better suited to adjudicate the matter more expeditiously. Accordingly, mandatory abstention under section 1334(c) of the Bankruptcy Code is not appropriate in the circumstances.

**2.    The School District has Failed to Establish That Permissive Abstention is Appropriate**

30.    Finally, the School District argues that, even if mandatory abstention is not appropriate under section 1334(c)(2), the court should permissively abstain from hearing the action under section 1334(c)(1) of the Bankruptcy code. Section 1334(c)(1) permits a court to abstain from hearing an action "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). The overriding theme of permissive abstention is the relationship between state and federal courts, and the court considering permissive abstention will examine the state law character, or federal character of the particular proceeding. If the matters in question are of a "quintessential state law character," it is more likely that a bankruptcy court will decline to hear the case. *See Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 281 B.R. 182, 191 (S.D.N.Y. 2002). If important bankruptcy issues are intertwined with a state law claim, however, the court may decline abstention. *In re Balco Equities Ltd.*, 323 B.R. 85 (Bankr. S.D.N.Y. 2005).

31.    Notably, the Second Circuit emphasizes that federal courts should be sparing in their use of permissive abstention. *See Beal Bank, S.S.B. v. U.S. Bank Nat'l Ass'n*, No. 10-1401 (LTS) (RLE), 2010 WL 2541165, at *3 (S.D.N.Y. June 8, 2010). Moreover, there is a "presumption in favor of the exercise of federal jurisdiction and against [permissive] abstention." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004).

WEIL:\96845524\1\73219.0006

32.      Courts in the Second Circuit generally review a list of 12 factors in determining whether to exercise permissive abstention. Courts are not required to apply each of these factors, but rather should base their decision "on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). These factors are:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re Cody, Inc.*, 281 B.R. at 190-191.

33.      The Motion cites, in a purely conclusory manner, several of these factors as favoring permissive abstention under the circumstances, including: (i) efficient administration of the estate; (ii) state law issues clearly predominate over bankruptcy issues; (iii) the difficulty or unsettled nature of the applicable state law; (iv) the presence of a related proceeding commenced in state court; (v) the lack of a jurisdictional basis other than 28 U.S.C. § 1334; (vi) the remoteness of the proceedings from the main bankruptcy case; (vii) the state law claims can be severed from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; and (viii) the burden on the bankruptcy court's docket. Motion at ¶ 32. The

16

Motion offers no factual or legal support for these bare assertions to demonstrate why permissive abstention is proper.

34.    Courts in the Second Circuit have recognized that abstention should be exercised only in narrow circumstances. *In re Bozel S.A.*, 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010) *citing N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 332 (S.D.N.Y. 2003). Most of the factors cited in the Motion are neutral with regards to abstention. For example, it is not clear that abstention would promote more efficient administration of the estate, or that the Bankruptcy Court docket is overburdened.

35.    The one relevant factor weighs against permissive abstention in the circumstances. Although possibly a question of first impression, the nature of the legal issues in the School District Litigation are not difficult to interpret or overly complex. As described in the analysis of the *Sonnax* factors, the resolution of the School District Litigation depends on a determination of whether a certain number of jobs were in place on a certain date. If the stay were to be lifted (for which the Debtors do not believe there is a basis), the relative ease with which the matter can be adjudicated is best persevered for this Court. Thus, the third factor weighs against permissive abstention.

## Conclusion

36.    For the foregoing reasons, the Movant has failed to satisfy its burden to establish cause to lift the automatic stay. Accordingly, the Motion must be denied, and the Court should (i) require that the automatic stay remain in place as it relates to the School District Litigation, and (ii) find that neither mandatory nor permissive abstention under section 1334(c) of the Bankruptcy Code is proper.

17

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request

that the Court deny the Motion.

Dated: December 17, 2018
       New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

WEIL:\96845524\1\73219.0006