**Hearing Date and Time: December 20, 2018 at 10:00 a.m. (Eastern Time)**

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Jonathan D. Canfield
Sayan Bhattacharyya
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel to Och-Ziff Capital Structure Arbitrage Master Fund, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*,[1] | : | Case No. 18-23538 (RDD) |
| Debtors. | : | (Jointly Administered) |

**REPLY OF OCH-ZIFF CAPITAL STRUCTURE ARBITRAGE MASTER
FUND, LTD. IN FURTHER SUPPORT OF THE MOTION OF OMEGA ADVISORS
INC. AND JOINDER OF OCH-ZIFF CAPITAL STRUCTURE ARBITRAGE MASTER
FUND, LTD. TO INVALIDATE THE *ULTRA VIRES* SALE
AND LOCKUP OF MEDIUM-TERM INTERCOMPANY NOTES**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Och-Ziff Capital Structure Arbitrage Master Fund, Ltd. ("**OZ**"), hereby submits this reply (the "**Reply**")[1] to (x) *Debtors Objection to Motion of Omega Advisors Inc. Regarding Sale of Medium-Term Intercompany Notes* [Docket No. 1196] (the "**Debtors Objection**"); (y) *Joinder of Official Committee of Unsecured Creditors to the Debtors Objection* [Docket No. 1214) (the "**UCC Joinder**") and (z) *Objection of Cyrus Capital Partners, L.P. to Motion of Omega Advisors Inc. Pursuant to Sections 105 and 363 of the Bankruptcy Code to Enforce the Court's November 19, 2018 Sale Order and Invalidate the Ultra Vires Sale and Lockup of Medium-Term Intercompany Notes* [Docket No. 1199] (the "**Cyrus Objection**", and together with the Debtors Objection and the UCC Joinder, the "**Objections**"), and in support hereof, respectfully states as follows:

1.  Among the myriad factual allegations between the parties, two are undisputable: (i) the Debtors and Cyrus intended to prevent Sears Re from engaging in any transactions with respect its MTNs until such a time when they would no longer have an impact on the SRAC CDS auction and, therefore, would have negligible market value; and (ii) the Debtors' notice to potential auction participants was explicit that only $251 million of Debtor MTNs were available for sale, but the Debtors sold $880 million anyway. Based on these facts, the Debtors exceeded their authority on two fronts and the Court should (x) immediately prohibit the Debtors and Cyrus from impeding transactions with Sears Re in any manner, and (y) limit the auction results to the $251 million Debtor MTNs that the Debtors informed the market they were selling, or require a new auction for the Debtor MTNs.

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to them in OZ's December 12, 2018 *Joinder to Omega Advisors Inc.'s December 6, 2018 Motion to Enforce the Court's November 19, 2018 Sale Order and Invalidate the Ultra Vires Sale and Lockup of Medium-Term Intercompany Notes* [Docket No. 1177] (the "**Joinder**").

2.  With respect to standing, OZ clearly has no issues. As a party holding significant claims against the Debtors, OZ unquestionably has standing to raise an objection to the extrajudicial acts undertaken by the Debtors. Cyrus' allegation that OZ does not have standing because it did not object to the Sale Motion or the Sale Order (*see* Cyrus Objection at n. 5) simply misses the point. OZ is not objecting to the procedures the Court approved in the Sale Order, or the process the Debtors outlined in the Sale Motion – in fact, OZ supports the Debtors' efforts to sell the MTNs. Rather, as set forth in the Joinder, OZ objects to the process run by the Debtors, which did not comport with the Sale Motion or Sale Order.

3.  The fundamental problem with the Debtors' actions regarding Sears Re is that such actions were undoubtedly outside of the ordinary course of business and were clearly not authorized by the Sale Order. Sears Re is a non-debtor foreign subsidiary, and the Court has no jurisdiction over its ability to transact. However, in the Auction Results Notice, which the Debtors filed in response to Omega's repeated requests for transparency of the auction results, the Debtors stated that they agreed not to sell, transfer or assign any MTNs "on behalf of themselves ***and their Subsidiaries***" (*i.e.*, Sears Re). *See* Auction Results Notice at ¶ 6 (emphasis added). Accordingly, the Debtors are clearly exercising control over the ability of Sears Re to engage in transactions concerning the MTNs held by it.[2] The decision to prevent Sears Re from selling, transferring or assigning any of its MTNs for value is not within the ordinary course of business for the Debtors. As a result, the Debtors needed specific authorization from the Court to take the extraordinary step of blocking their non-debtor foreign subsidiary from engaging in

---

[2] As described in the Joinder, OZ contacted Sears Re through its Bermudian counsel and provided such counsel with a proposal to purchase certain of the Sears Re MTNs. In response, counsel to Sears Re informed OZ that it had a conflict on the issue and could not act on behalf of Sears Re regarding the proposal. OZ responded by asking for the identity of an employee or lawyer that could speak on behalf of Sears Re, but to date has received no response. While OZ was confused why Sears Re would ignore an opportunity to create value from MTNs that may have limited or no value, given the Debtors' disclosure of its agreement with Cyrus to prevent Sears Re from engaging in transactions concerning the MTNs, the lack of response is now no surprise.

2

value accretive transactions. The Debtors simply never sought nor received such authority from the Court, and any restriction upon the ability of Sears Re to transact in connection with the MTNs held by it must be removed.

4.    The Debtors try to obfuscate the Sears Re issue in their objection. They agree that the Court does not have jurisdiction to restrict or mandate the sale of the Sears Re MTNs even if it wanted to (*see* Debtors Objection at ¶ 36), but they also admit that Sears Re has a temporal restriction on its ability to sell its MTNs that was placed upon Sears Re by virtue of the Debtors' entry into the Cyrus agreement. *See* Debtors Objection at ¶ 34 (stating that "pursuant to the Debtor's agreement with Cyrus, Sears Re could sell its MTNs *after the ISDA Auction*.") (emphasis added). Once again, the Debtors are conceding that through their ownership and control of Sears Re, they are exercising extrajudicial authority and directing Sears Re not to sell its MTNs during the limited period of time in which they will have any value (to the determinant of Sears Re and the Debtors' estates). It is simply implausible on its face for the Debtors to, on the one hand, claim there are no restrictions on the sale of the Sears Re MTNs, while on the other hand, admit they agreed to accept payment *not* to sell them. Furthermore, OZ is perplexed by the seeming lengths the Debtors have gone to in their pleading to conceal this fundamental contradiction, particularly given the obvious value to the estate of monetizing the Sears Re MTNs. As a reminder, similar unsecured bonds currently trade in the market in excess of 70 cents and, due to the large amount of CDS outstanding, an active (albeit temporary) buyer-base exists for these assets.[3]

---

[3] It is also surprising that the Debtors did not disclose the actual "note purchase agreement" that they entered into with Cyrus. While the information in the Auction Results Notice was helpful and the Debtors did disclose an unredacted form of the Cyrus bid e-mail as part of their objection, neither OZ nor the Court know the full extent of the terms to which the Debtors agreed. *See* Debtors Objection at Exhibit B (Cyrus e-mail bid). The Court should have the complete agreement before it in order to understand the full extent of the restrictions, including communication restrictions, that the Debtors placed upon themselves and Sears Re.

5. Despite the Debtors' attempts to confuse the facts regarding the auction process, they are straightforward: on November 9, 2018, the Debtors asked this Court to allow it to conduct an auction for the Debtor MTNs and to retain Jefferies LLC ("**Jefferies**") to broker and close that sale. *See* Sale Motion ¶ 16 (explaining that Jefferies "will contact potentially interested parties and request that they make firm bids to purchase all *or a portion of the Debtors' MTNs*.") (emphasis added). Consistent with that request and the Sale Order, Jefferies, on behalf of the Debtors, announced to prospective bidders (including OZ) that the *only MTNs that would be made available for sale* at the MTN Auction were the $251 million Debtor MTNs listed in the Auction Notice. *See* Exhibit B to the Motion. Notwithstanding this clear directive, the Debtors allowed one bidder – Cyrus – to bid for all $880 million of the Debtor MTNs, and in doing so, made it impossible for any other bidder to compete.[4] No effort was made by either the Debtors or Jefferies to correct this information disparity.

6. The Debtors' post-hoc justification for selling the full lot of Debtor MTNs – that the Auction Notice included a link to a website, which in turn included certain additional information that, among other things, included a link to a "Schedule of Notes" listing the full amount of MTNs (*See* Debtors Objection at ¶ 21) – is nonsensical. After nearly 40 pages of briefing in the Objections, their central point appears to be that bidders should have ignored the plain language that the Debtors would conduct an auction for *"no more than [$]251,245,000"* in favor of a link to their website containing a schedule of notes, an indenture and other standard

---

[4] Notably, this is not the only allegation thus far in these chapter 11 cases of the Debtors changing the goal posts during what should have been a competitive process in favor of Cyrus. *See Limited Objection of Wilmington Trust, National Association, As Indenture Trustee and Collateral Agent to Entry of a Final Junior Dip Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying The Automatic Stay; and (III) Granting Related Relief* [Docket No. 1207] at ¶¶ 15-16 (requesting that the Debtors demonstrate why it was in their best business judgment to accept Cyrus's offer of a Junior DIP loan and to explain why they "did not pursue any further enhancements with GA.")

4

credit documents – as if the mere existence of a listing of notes and a bond indenture would somehow invalidate the clearly stated terms of an auction.

7.  To demonstrate just how incredulous the Debtors' assertions are, OZ has attached as exhibits to this Reply copies of the website to which parties are taken when clicking on the hyperlink provided by the Debtors. An "index" of approximately 35 different documents appears when clicking the first hyperlink (*see* Exhibit A), and the "Schedule of Notes" is then separately accessed by clicking a second hyperlink on the index webpage (*see* Exhibit B). As is obvious from Exhibits A and B, there is nothing on either page advertising the sale of the MTNs, nor is there anything intuitive about either page that would make a prospective bidder think that the Auction Notice it received from Jefferies was inaccurate or otherwise supplemented by the information accessed via the hyperlinks.

8.  If the Debtors intended to sell all of the Debtor MTNs, they, or Jefferies, should have issued a new auction notice or immediately contacted each of the other eight bidders and informed them of the changing circumstances. That neither Jefferies nor the Debtors did so speaks volumes. The Debtors' claim that it is "simply inconceivable" that the outcome would have been different had the Auction Notice referenced the full $880 million of MTNs (*see* Debtors Objection at ¶ 23) has no merit. To justify this statement, the Debtors argue that the combined amount of all other bids (other than the Cyrus bid) only total $177 million face amount of MTNs. *Id.* However, had the Debtors and Jefferies actually conducted a well-run auction process – in which bidders knew the actual amounts of MTNs available for sale and the fact that no additional MTNs would be made available for sale by the Debtors after the conclusion of the auction – then one can only speculate as to what the results would have been. The good news is that the Court need not speculate as to hypotheticals since it now has a unique opportunity to

5

correct these prior mistakes and maximize value for the estates by locking Cyrus into a bid for what the Debtors and Jefferies offered for sale, or by requiring the Debtors to conduct an entirely new auction for the Debtor MTNs.[5] OZ remains ready and willing to engage with the Debtors and Sears Re in good-faith discussions regarding value-maximizing transactions with respect to both the Debtor MTNs and the Sears Re MTNs.

WHEREFORE, for the reasons set forth herein and in the Motion and Joinder, OZ respectfully requests that the Court enter an order invalidating the portions of the MTN Sale that exceeded the scope of the Sale Order and 11 U.S.C. § 363(b) and remove any extrajudicial impediments created by the Debtor and Cyrus with respect to Sears Re, or provide OZ and other aggrieved parties with such other relief as this Court deems fair and just under the circumstances.

Dated: December 18, 2018  
      New York, New York

STROOCK & STROOCK & LAVAN LLP

By: */s/ Kristopher M. Hansen*  
Kristopher M. Hansen  
Jonathan D. Canfield  
Sayan Bhattacharyya  
180 Maiden Lane  
New York, New York 10038-4982  
Telephone: (212) 806-5400  
Facsimile: (212) 806-6006  
Email: khansen@stroock.com  
       jcanfield@stroock.com  
       sbhattacharyya@stroock.com

*Counsel to Och-Ziff Capital Structure Arbitrage Master Fund, Ltd.*

---

[5] Cyrus likewise should not be granted the protections of section 363(m) of the Bankruptcy Code. By its terms, section 363(m) only insulates "good faith" purchasers from the risks of reversal of a sale. As explained more fully in the Motion (*see* Motion at ¶¶ 42-44), Cyrus' conduct throughout this process precludes any 363(m) finding. *See In re GSC, Inc.,* 453 B.R. 132, 180 (Bankr. S.D.N.Y. 2011) (no finding of good faith where there is "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 385 (2d Cir.1997)).

# EXHIBIT A



Home > Investors > Financial Transactions

# Sears Roebuck Acceptance Corp. Medium-Term Notes Series B Documentation

- Schedule of Notes
- Indenture, dated as of October 1, 2002
- Letter dated November 7, 2018 from Sears Roebuck Acceptance Corp. to The Bank of New York Mellon Trust Company, N.A.
- Registered Note - No. FLR-98
- Registered Note - No. FLR-107
- Registered Note - No. FLR - 114
- Registered Note - No. FLR - 81
  Bondholder Consent to Extension dated December 13, 2017
  Letter of Instruction to Trustee dated December 13, 2017
- Registered Note - No. FLR - 84
  Bondholder Consent to Extension dated February 14, 2018
  Letter of Instruction to Trustee dated February 13, 2018
- Registered Note - No. FLR - 123
- Registered Note - No. FLR - 91
  Bondholder Consent to Extension dated May 15, 2018
  Letter of Instruction to Trustee dated May 15, 2018
- Registered Note - No. FLR - 126
- Registered Note - No. FLR - 108
- Registered Note - No. FLR - 111
- Registered Note - No. FLR - 118
- Registered Note - No. FLR - 122
- Registered Note - No. FLR - 124
- Registered Note - No. FLR - 125
- Registered Note - No. FLR - 127
- Registered Note - No. FLR - 99
- Registered Note - No. FLR - 112
- Registered Acered Note - No. FLR - 120
- Registered Note - No. FLR - 88
- Registered Note - No. FLR - 119

Sears Roebuck Acceptance Corp. Medium-Term Notes Series B Documentation | Financi...    Page 2 of 4

18-23538-shl    Doc 1294    Filed 12/18/18    Entered 12/18/18 12:00:47    Main Document
Pg 10 of 14

- Registered Note - No. FLR - 110
- Registered Note - No. FLR - 96 and Bondholder Consent to Extension dated July 17, 2017
- Registered Note - No. FLR - 78, Bondholder Consent to Extension dated December 14, 2017 and Letter of Instruction to Trustee dated December 13, 2017
- Registered Note - No. FLR - 79, Bondholder Consent to Extension dated December 14, 2017 and Letter of Instruction to Trustee dated December 13, 2017
- Registered Note - No. FLR - 80, Bondholder Consent to Extension dated December 14, 2017 and Letter of Instruction to Trustee dated December 13, 2017

Investors Home
Events & Presentations
Annual Reports
Chairman's Letters
Financial Transactions
XBRL Files
Legal Notice

Corporate Governance
    Board of Directors
    Senior Management Team
    Corporate Governance Guidelines
    Code of Conduct
    Board Committees
    Audit Committee Charter
    Compensation Committee Charter
    Nominating Committee Charter
    Code of Conduct for the Board of Directors

U.S. Securities and Exchange Commission
    SEC Filings
    Section 16 Filings

Transfer Agent

For stock & account records
**Computershare Trust Company, N.A.**
P.O. Box 30170
College Station, TX 77842-3170
Tel: 1-800-732-7780
Computershare.com

## QUICK LINKS

Contact Us

Terms of Service

Privacy Policy

California Privacy Rights

California Transparency Act

*Security Incident Update*

## CORPORATE SITES

SHC Speaks

Sears Holdings Alumni

Sears Archives

## SHOP

ShopYourWay.com

Sears.com

Kmart.com

mygofer.com

## SOCIAL MEDIA

©2018 Sears Brands, LLC

# EXHIBIT B

| Security | Cusip | Issuer | Maturity Date | Interest Rate | Indenture | Note/Other Documents | Par Amount of Issue | Holder |
|---|---|---|---|---|---|---|---|---|
| SRAC Medium Term Note Series B | 812404 BP5 | Sears Roebuck Acceptance Corp. | 11/1/2018 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-98 | 28,500,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BQ3 | Sears Roebuck Acceptance Corp. | 3/5/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-107 | 12,500,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BR1 | Sears Roebuck Acceptance Corp. | 8/1/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-114 | 22,300,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BS9 | Sears Roebuck Acceptance Corp. | 1/31/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-81    Bondholder Consent to Extension dated December 13, 2017   Letter of Instruction to Trustee dated December 13, 2017 | 82,800,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BT7 | Sears Roebuck Acceptance Corp. | 3/26/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-84    Bondholder Consent to Extension dated February 14, 2018    Letter of Instruction to Trustee dated February 13, 2018 | 11,500,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BU4 | Sears Roebuck Acceptance Corp. | 5/13/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-123 | 30,300,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BV2 | Sears Roebuck Acceptance Corp. | 7/26/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-91    Bondholder Consent to Extension dated May 15, 2018    Letter of Instruciton to Trustee dated May 15, 2018 | 48,000,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BW0 | Sears Roebuck Acceptance Corp. | 4/28/2021 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-126 | 20,200,000 | Sears Protection Company |
| SRAC Medium Term Note Series B | 812404 BX8 | Sears Roebuck Acceptance Corp. | 3/5/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-108 | 3,000,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 BY6 | Sears Roebuck Acceptance Corp. | 5/29/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-111 | 4,800,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 BZ3 | Sears Roebuck Acceptance Corp. | 1/20/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-118 | 2,250,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 CA7 | Sears Roebuck Acceptance Corp. | 5/13/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-122 | 10,000,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 CB5 | Sears Roebuck Acceptance Corp. | 9/21/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-124 | 5,900,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 CC3 | Sears Roebuck Acceptance Corp. | 1/22/2021 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-125 | 33,000,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 CD1 | Sears Roebuck Acceptance Corp. | 5/25/2021 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-127 | 5,600,000 | Sears Protection Company (Florida LLC) |
| SRAC Medium Term Note Series B | 812404 CE9 | Sears Roebuck Acceptance Corp. | 1/9/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-99 | 75,000,000 | Sears Roebuck & Co. |
| SRAC Medium Term Note Series B | 812404 CF6 | Sears Roebuck Acceptance Corp. | 7/18/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-112 | 19,500,000 | Sears Roebuck & Co. |
| SRAC Medium Term Note Series B | 812404 CG4 | Sears Roebuck Acceptance Corp. | 1/22/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-120 | 33,000,000 | Sears Roebuck & Co. |
| SRAC Medium Term Note Series B | 812404 CP4 | Sears Roebuck Acceptance Corp. | 10/25/2018 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-88 | 90,000,000 | KMART Corporation |
| SRAC Medium Term Note Series B | 812404 CH2 | Sears Roebuck Acceptance Corp. | 1/22/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-119 | 36,100,000 | KMART Corporation |
| SRAC Medium Term Note Series B | 812404 CJ8 | Sears Roebuck Acceptance Corp. | 5/22/2019 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-110 | 18,000,000 | KMART Corporation |
| SRAC Medium Term Note Series B | 812404 CK5 | Sears Roebuck Acceptance Corp. | 11/29/2018 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-96    Bondholder Consent to Extension dated July 17, 2017 | 50,000,000 | Sears Holdings Corporation |
| SRAC Medium Term Note Series B | 812404 CL3 | Sears Roebuck Acceptance Corp. | 1/16/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-78 Bondholder Consent to Extension dated December 14, 2017 Letter of Instruction to Trustee dated December 13, 2017 | 70,000,000 | Sears Holdings Corporation |
| SRAC Medium Term Note Series B | 812404 CM1 | Sears Roebuck Acceptance Corp. | 1/24/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-79    Bondholder Consent to Extension dated December 14, 2017  Letter of Instruction to Trustee dated December 13, 2017 | 45,946,000 | Sears Holdings Corporation |
| SRAC Medium Term Note Series B | 812404 CN9 | Sears Roebuck Acceptance Corp. | 1/28/2020 | Floating Rate | Indenture dated as of October 1, 2002 | Registered Note - No. FLR-80    Bondholder Consent to Extension dated December 14, 2017   Letter of Instruction to Trustee dated December 13, 2017 | 122,500,000 | Sears Holdings Corporation |