John C. Allerding, Esq.
(*Pro hac vice*)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
Email: John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.* | Case No. 18-23538-RDD |
| Debtors.[1] | (Jointly Administered) |

**REPLY IN SUPPORT OF MOTION OF LUXOTTICA RETAIL NORTH
AMERICA INC. FOR ENTRY OF AN ORDER (I) GRANTING RELIEF
FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, (II)
COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings, Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holding Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Product, Inc.(8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## I. Preliminary Statement

1. Sears[2] cannot dispute that it is unable (or refuses) to satisfy its ***post-petition*** fiduciary and contractual duties to Luxottica – so it mischaracterizes the basis for Luxottica's Motion. *See* Objection,[3] ¶ 1 ("[Luxottica] seeks relief from the automatic stay to terminate a very profitable agreement for the Debtors on the basis of an alleged ***prepetition*** breach.") (emphasis added). The post-petition nature of the actions that serve as the bases for Luxottica's Motion is clear:

- "Sears' failure to honor these key protections continues now, post-petition." Motion, ¶ 3.

- "And now again, Sears is willfully breaching those same obligations under the License Agreement – pushing the risk of a failed reorganization onto Luxottica." Motion, ¶ 7.

- "Luxottica should not be forced into continuing to bear the risk of yet another Sears failure." Motion, ¶ 8.

- "Through discussions related to Luxottica's Objection, it was revealed that Sears did not – <u>and, more importantly, still does not</u> – hold the Trust Funds in a segregated account free from the liens granted to Sears' lenders." Motion, ¶ 16 (emphasis in original).

- "Recently, Sears revealed that it <u>continues</u> to engage in similar conduct contrary to the express terms of the License Agreement." Motion, ¶ 18 (emphasis in original).

- "Sears committed other post-petition breaches of the License Agreement." Motion ¶ 19.

- "As noted above, it was represented to Luxottica that Sears subjected – <u>and is continuing to subject</u> – the Trust Funds to the liens of Sears' lenders by placing those funds (or permitting those funds to be placed) in an account subject to the liens of Sears' lenders." Motion, ¶ 24. (emphasis in original).

- "Sears breached – <u>and continues to be in breach of</u> – the License Agreement by (i) commingling the Trust Funds with Sears' own funds; (ii) wrongfully utilizing the Trust Funds (or permitting the Trust Funds to be utilized) for Sears' own benefit; (iii) subjecting the Trust Funds to the liens of its lenders; (iv) transferring the Trust Funds (or permitting the Trust Funds to be transferred) to third-parties; and (v) failing to remit the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Motion of Luxottica Retail North America Inc. for Entry of an Order (I) Granting Relief from the Automatic Stay or, in the Alternative, (II) Compelling Assumption or Rejection of Executory Contract* (ECF No. 981, the "**Motion**").

[3] *Debtors' Objection to Luxottica Retail North America Inc.'s Motion for Entry of an Order (i) Granting Relief From the Automatic Stay or, in the Alternative, (ii) Compelling Assumption or Rejection of Executory Contract* (ECF No. 1241, the "**Objection**").

2

> Trust Funds to Luxottica as required pursuant to the terms of the License Agreement." Motion, ¶ 31 (emphasis in original).

- "More importantly, Sears alleges that it <u>cannot</u> comply with the terms of the License Agreement that require it to hold the Trust Funds in trust for Luxottica's benefit." Motion, ¶ 32 (emphasis in original).

- "While the Court's primary focus is appropriately on Sears' inability to comply with the terms of the License Agreement post-petition, it should not escape the Court's attention that Sears apparently entered into the License Agreement knowing that it would not adhere to its obligations thereunder." Motion, ¶ 32.

2. Sears then engages in clever wordplay in an attempt to confuse this Court into believing that it has offered to segregate Luxottica's Trust Funds. *See* Objection, ¶ 7. What Sears is not telling the Court is that it cannot (or will not) immediately place the Trust Funds into this "segregated account." Instead, Sears proposes to: (i) commingle the Trust Funds with Sears' own funds (subjecting the Trust Funds to the liens of Sears' DIP Lenders); (ii) pay down its revolving loan (i.e., transfer title of the Trust Funds to the DIP Lenders for Sears' own benefit); and then, eventually, (iii) use the revolving line of credit to fund the "segregated account." This proposal does not meet Sears' post-petition fiduciary and contractual obligations to hold the Trust Funds in trust. There is nothing in law or equity that permits Sears to convert Luxottica's funds for its own use; the fact that under Sears' scheme these funds ***might eventually arrive*** in a segregated account does not render its actions legal.

3. So Sears falls back on an interesting twist of the "too big to fail" argument: Sears is too big to comply. Sears argues that it is "subject to several thousand prepetition executory contracts" and that granting Luxottica relief from stay based on Sears' post-petition conversion and inability (or unwillingness) to comply with its post-petition fiduciary and contractual duties could "open the floodgates for similarly situated counterparties to file similar motions and impose significant hardship on the Debtors." Objection, ¶ 15. The Bankruptcy Code gives a

3

debtor substantial protections and latitude in reorganizing its affairs, but it does not authorize a debtor to engage in post-petition conversion – regardless of the size of the debtor.

## II. Luxottica is entitled to relief from stay.

### A. Sears has a post-petition duty to not commingle the Trust Funds or use such Trust Funds for its own benefit.

4. Luxottica seeks relief from stay on the grounds that Sears is unable (or unwilling) to comply with its **post-petition** fiduciary and contractual obligations to hold Luxottica's Trust Funds in trust. Sears' fiduciary and contractual obligations in this sense arise, *inter alia*, under Section 9.3 of the License Agreement:

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

5. Sears does not (and cannot) dispute that the parties intended to create a trust relationship pursuant to the terms of the License Agreement. Objection, ¶ 2 (stating that Section 9.3 "provides that the parties intend to create a trust relationship").

6. Instead, Sears attempts to sidestep its fiduciary and contractual obligations by arguing that no provision of the License Agreement requires the Debtors to segregate and avoid commingling Luxottica's funds with its own. Objection, ¶ 2. Sears' argument is contrary to the well-established law of Illinois (which governs the License Agreement).

7. As stated by the Illinois Supreme Court, "There is a duty resting upon trustees not to commingle their own property with that of beneficiaries." *Winger v. Chicago Bank & Trust Co.* (1946), 394 Ill. 94, 111, 67 N.E.2d 265, 277. In a remarkably similar situation, the U.S. District Court for the Northern District of Illinois, applying Illinois law, stated:

> The law presumes, when one turns over to another proceeds to be held and later returned, that the party receiving the proceeds holds them in a fiduciary capacity and may not commingle them; in other

4

> words, there is a presumption that an implied trust has been created
> . . . .
>
> Implicit in an implied trust is the understanding that the party receiving proceeds holds them in a fiduciary capacity and, consequently, is not to commingle them; to require this understanding to be explicit in all circumstances would render the concept of an implied trust meaningless.

*Goldblatt Bros.,* 33 B.R. at 1013, 1015.[4] The *Goldblatt* Court specifically rejected the argument by the commingling retailer (which was also a bankrupt debtor) that the lack of a provision in the license agreement expressly requiring segregation of the tire center proceeds somehow negated the debtor's obligation to hold such proceeds in trust. Indeed, the law already provides this requirement, and therefore any contractual provision on this point would be duplicative and unnecessary.

8.   Here, the prohibition against commingling is even more clear. This Court need not rely on an implied trust as was the case in *Goldblatt*, because the express terms of the License Agreement indisputably require Sears to hold the Trust Funds ***in trust*** for Luxottica's benefit. Moreover, unlike in *Goldblatt*, no party disputes that the governing agreement (i.e., the License Agreement) was intended to create at trust relationship. *See* Objection, ¶ 2. Accordingly, the holding of *Goldblatt* applies to this scenario with even more force, and requires even absent a contractual provision that Sears hold the Trust Funds in a segregated account that is not, never was, and never will be commingled with Sears' own funds.

---

[4] In *Goldblatt*, Goldblatt Bros., Inc. ("**Goldblatt**") and Firestone Tire & Rubber co. ("**Firestone**") entered into a license agreement that authorized Firestone to operate tire centers within or near various Goldblatt retail stores. Firestone operated these outlets as an independent contractor, providing inventory, hiring employees, and managing each tire center. The license agreement provided that Goldblatt was to receive a royalty based on a percentage of the net sales generated by Firestone. At the close of each business day, Firestone transferred cash and credit receipts to the manager of the respective Goldblatt store. The license agreement required Goldblatt to return the funds to Firestone, after rendering an accounting of the sales generated and subtracting the royalty payment due to Goldblatt. Prior to filing for chapter 11 bankruptcy, Goldblatt commingled Firestone's funds with its own. While this situation is nearly identical to that provided for under the Luxottica-Sears License Agreement now before this Court, the requirement to segregate is even more clear here, where the License Agreement itself provides that the Trust Funds are to be held by the Debtors in trust for Luxottica's benefit.

9. Sears is also prohibited from using the Trust Funds for its own benefit – including using such funds as collateral or for payment of its own debts. Not only does the License Agreement specifically reserve the Trust Funds for Luxottica's benefit, Illinois law similarly prohibits Sears from dealing with the Trust Funds for its own benefit. *See Carter-Bernal v. Carter*, 2011 Ill. App. Unpub. LEXIS 244, *25 (App. Ct. Ill. 2011).

> Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith. Further, a trustee owes a fiduciary duty to serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's property for her individual benefit.

*Id.*

10. In fact, it is axiomatic that property held by a bankrupt debtor in trust for another is not estate property. *E.g., In re Goldblatt Bros., Inc.* 33 B.R. 1011, 1013, 1015 (N.D. Ill. 1983) ("[P]roperty held in trust for another, where the bankrupt has no cognizable legal or equitable interest in such property, is not part of the bankruptcy estate."); *Bunch v. Hopkins Savs. Bank (In re Bunch)*, 249 B.R. 667, 671 (Bankr. D. Md. 2004) ("The filing of a bankruptcy petition by a debtor as trustee or other fiduciary does not bring the assets of the trust or other fiduciary estate within the jurisdiction of the bankruptcy court."). *See also* 11 U.S.C. § 541(b)(1) ("Property of the Estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor.").

11. Luxottica provided Sears with the above-cited law on November 22nd. Perhaps most telling of the frailty of Sears' argument is that it doesn't even make an attempt to address or distinguish this law.

  C. *The proposed "segregated account" does not protect Luxottica.*

  12. Sears next attempts to confuse this Court into believing that it is willing to avoid commingling through the establishment of a "segregated account." *See* Objection, ¶ 7. But Sears fails to tell the Court that it cannot (or will not) place the Trust Funds in this "segregated account" immediately upon receiving those funds. Instead, Sears would have this Court authorize it to commingle the Trust Funds with its own funds (thereby subjecting those Trust Funds to the DIP Lenders' liens). Sears would then take it one step further by actually transferring the commingled funds to its DIP Lenders to pay down its revolving line of credit (i.e., a conversion of the Trust Funds). Then, perhaps as infrequently as once per week, Sears would take funds from its revolving line of credit (to the extent it remains open and available to Sears as a source of funding) and put them into the "segregated account." The funds would then be almost immediately transferred from the "segregated account" to Luxottica.

  13. This is not the equivalent of what Luxottica is entitled to under the License Agreement – the immediate and complete segregation of its funds from Sears' funds (i.e., a complete absence of commingling) and complete freedom from any liens on the Trust Funds. Indeed, the Court need look no further than Sears' pre-petition breach to understand the risk to Luxottica ***post-petition***, as Sears has not denied that it never held Luxottica's funds in trust pre-petition but instead allowed those funds to be paid to the revolving lender (and now, Sears alleges that those funds are, not surprisingly, ***gone***, leaving Luxottica a sizeable claim).

  14. Finally, if Sears fails before the funds make their way back to the "segregated account," Luxottica will be in the same position with respect to those funds as it would have occupied had no "segregated account" existed. Sears attempts to address only this final concern by offering to prefund the "segregated account." Objection, ¶ 7. Sears does not provide sufficient details regarding exactly what it is offering here. Indeed, none of Sears' prior proposals have

7

offered to ensure that the prefunded amount is sufficient to cover the commingled/converted amounts at all times.

      C.      *Luxottica has not been complicit in Sears' breaches of its fiduciary and contractual duties.*

15. Sears argues that "Luxottica was satisfied with the Debtors' performance under the License Agreement for many years, but now, in search for a way to exert leverage against the Debtors is fishing for a technicality under the agreement." Objection, ¶ 2. The truth is that Sears hid the fact that it was breaching its duties under the License Agreement. To now suggest that somehow Luxottica was complicit in what appears to be fraudulent conduct on the part of Sears – Sears having entered into the License Agreement with an apparent understanding that it could not (and would not) comply with its fiduciary and contractual duties thereunder – is disingenuous. Had Luxottica been made aware of Sears' commingling of the Trust Funds, it would have clearly communicated its disapproval to Sears.[5]

      D.      *The Sonnax factors favor granting relief from stay here.*

16. The Debtors argue that the Court should apply the factors set forth in *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990), but then only discuss the application of two of the twelve factors. While Luxottica agrees that not all of the factors are applicable in every case, the Court should certainly consider more than just two of the twelve factors:

---

[5] Moreover, the requirement that Sears hold Luxottica's funds in trust was first included as part of a November 1, 2017 amendment to the License Agreement, which itself was the result of the loss Luxottica suffered as a general unsecured creditor in the Sears Canada bankruptcy proceedings – not because Luxottica was aware of any wrongdoing by Sears. *See* License Agreement, § 9.3. Thus, even if Sears had not hid its breaches from Luxottica, it is simply inaccurate for Sears to state that Luxottica had condoned this behavior for "many years."

8

| Factor | Considerations |
|---|---|
| Will relief result in partial or complete resolution of the pending issue? | Favors Luxottica: Granting Luxottica relief from stay will completely resolve the issues of Sears' inability to comply with its post-petition fiduciary and contractual obligations by permitting Luxottica to terminate the License Agreement. |
| Is there a lack of connection with or interference with the bankruptcy case? | Favors Luxottica: Granting relief from stay will not have a material effect on Sears' bankruptcy case because (i) there is no "too big to comply" equitable argument; and (ii) the License Agreement has minimal (if any) value to Sears. |
| Is the requested relief related to an attempt to enforce the Debtor's fiduciary obligations? | Favors Luxottica: The primary basis for Luxottica's request for relief is Sears' inability (or unwillingness) to comply with its fiduciary duty to hold the Trust Funds in trust for Luxottica's benefit. |
| Has a specialized tribunal with the necessary expertise been established to hear the cause of action? | N/A: There is no need for a specialized tribunal here. |
| Has the debtor's insurer assumed liability for defending it? | N/A: Luxottica has not requested relief to pursue claims against Sears outside of the bankruptcy court. |
| Does the action primarily involve third-parties? | Favors Luxottica: The License Agreement is between only Sears and Luxottica. |
| Will litigation in another forum prejudice the interests of other creditors? | N/A: There is not anticipated to be litigation in another forum. |
| Is the judgment claim arising from the other action subject to equitable subordination? | N/A: Luxottica has not requested relief to pursue claims against Sears outside of the bankruptcy court. |
| Will movant's success in the other proceeding result in a judicial lien avoidable by the debtor? | Favors Luxottica: The termination of the License Agreement will not result in a judicial lien avoidable by Sears. |
| Does granting relief promote judicial economy and the expeditious and economical resolution of litigation? | Favors Luxottica: There is no reason to delay resolving the issue of Sears' inability (or unwillingness) to comply with its duty to hold the Trust Funds in trust. |

9

| Are the parties ready for trial in the other proceeding? | <u>Favors Luxottica</u>: Upon granting the relief, Luxottica will be permitted to immediately terminate the License Agreement pursuant to its terms. |
|---|---|
| What is the impact of the stay on the parties and the balance of the harms? | <u>Favors Luxottica</u>: Forcing a counterparty to continue turning over funds to a debtor that is required to – but refuses to – hold those funds in trust is the equivalent of court ordered conversion. The harms of any such ruling stretch far beyond this case. |

        i.      <u>Granting Luxottica relief from stay will not have a meaningful impact on Sears' bankruptcy case</u>.

17. Sears argues that it is "subject to several thousand prepetition executory contracts" and that granting Luxottica relief from stay based on Sears' inability (or unwillingness) to comply with its post-petition fiduciary and contractual duties could "open the floodgates for similarly situated counterparties to file similar motions and impose significant hardship on the Debtors." Objection, ¶ 15. Neither law nor equity permits a debtor to intentionally convert the funds of a counterparty in breach of the debtor's fiduciary duties. It doesn't matter how big the debtor is. There is no valid "too big to comply" argument here.

18. Moreover, the License Agreement is essentially worthless to the Sears' bankruptcy estate. The License Agreement permits Luxottica to terminate the agreement if the number of Sears Optical locations falls below 300. License Agreement, § 2.1.[6] Sears' Objection acknowledges that it is currently operating only 172 on-premises locations. Objection, ¶ 4. Thus, while the Sears Optical business is a profitable one for Sears – and one that a purchaser of Sears' retail locations will likely want to continue – any potential purchaser will factor in the risk of Luxottica's right to terminate the License Agreement post-assignment.

---

[6] "Notwithstanding the foregoing, [Luxottica] may accelerate the Expiration Date by notice to [Sears] to the date on which Company has less than 300 Designated Company Stores, which will be the date of closing of the Designated Store or Stores that reduce the number of Designated Company Stores to 299 or less." License Agreement, § 2.1.

10

          ii.      <u>Authorizing Sears' illicit actions inflicts significant harm on Luxottica and the bankruptcy process.</u>

19.      On the other hand, forcing a counterparty to turnover its property to a debtor with the actual knowledge that the debtor will convert that property, in breach of the debtor's express fiduciary and contractual duties to hold such property in trust, would be devastating to the integrity of the bankruptcy process. Sears is asking for judicially authorized conversion.

20.      Luxottica would be harmed as well. On a weekly basis, Sears may hold more than $1 million of Luxottica's funds.[7] If Sears stops performing under the License Agreement, it could be several weeks before Luxottica is able to raise the issue with the Court. The Court should refrain from inflicting millions of dollars of exposure on Luxottica on the grounds that Sears cannot (or refuses to) comply with its fiduciary and contractual duties.

21.      Nor does Sears' proposed "segregated account" eliminate the harm to Luxottica. As noted above, Luxottica is exposed to risk that (i) Sears will fail before the funds eventually find their way to the "segregated account;" and (ii) the funds in the proposed "segregated account" are subject to the liens and/or equitable tracing arguments of the DIP Lenders.

22.      For all of these reasons, the Court should soundly reject Sears' attempt at court-authorized conversion and grant Luxottica relief from stay so that it can terminate the License Agreement.

### III.    In the alternative, Luxottica is entitled to immediate assumption or rejection of the License Agreement.

23.      The parties do not dispute that this Court has the authority to compel Sears to assume or reject the contract based on the particular circumstances now before the Court.

---

[7] In fact, Sears already acknowledges that it failed to timely remit a $189,000 post-petition payment to Luxottica under the terms of the License Agreement. Objection, ¶ 16. While Sears calls this a "disputed payment," there is no real dispute. Sears attempted to force Luxottica to use a portion of its prepetition advance (i.e., Luxottica's cash collateral) to make up for its post-petition shortfall. When Luxottica objected, Sears used its withholding of this $189,000 as a bargaining chip in its attempt to resolve Luxottica's other objections. To date, Sears continues to withhold this $189,000. Presumably, if Luxottica's Motion is denied, Sears will continue to withhold these funds.

Motion, ¶ 37; Objection, ¶ 20. Nor do the parties dispute that the factors set forth in *In re Dana Corp.*, 350 B.R. 144, 147–48 (Bankr. S.D.N.Y. 2006) are applicable to such requests.

24.     Sears argues that the "critical factor" here is the effect upon the likelihood of a successful reorganization. Objection, ¶ 21. Interestingly, Sears then doesn't address this factor at all. Instead, Sears discusses the timing of Luxottica's request (i.e., two months after the Petition Date) and the availability of an administrative claim to Luxottica.

25.     Luxottica acknowledges that its request for assumption or rejection at this stage of the bankruptcy proceedings is not entirely typical – although it is not so unusual that other creditors have not requested the same relief in this very case. The unique situation before the Court, however, is also unusual – the debtor is wantonly and willfully converting Luxottica's funds and using those funds for its own benefit in breach of its fiduciary and contractual duties. The very unique circumstances of this case demand that Sears make a decision now regarding assumption.

26.     Luxottica also acknowledges that it will have an administrative claim for the funds converted by Sears. But that is true with respect to every post-petition counterparty. If that were enough to defeat the Motion, it is difficult to envision the circumstances where a creditor could compel assumption or rejection – yet, Congress gave the Court this power in the Bankruptcy Code. Moreover, even with the $240 million carve out for administrative claims, there is no guaranty of administrative solvency in this case. Sears acknowledges that it has "several thousand" similar contracts. Objection, ¶ 15. Luxottica did not negotiate to take credit risk – it negotiated for its funds to be held in trust. If Sears is prohibited from converting the Trust Funds, Luxottica has no exposure to administrative insolvency. Any exposure to such risk

12

is inflicted upon Luxottica by Sears' post-petition conversion and breaches – actions which should not receive court authorization.

27.    Moreover, the most critical of the *Dana Corp.* factors favor Luxottica:

| Factor | Consideration |
| --- | --- |
| The importance of the contracts to the debtor's business and reorganization. | Favors Luxottica: The License Agreement is subject to termination upon assumption – drastically reducing its value to the bankruptcy estate as currently drafted. |
| The debtor's failure or ability to satisfy post-petition obligations. | Favors Luxottica: Sears either cannot or will not comply with its post-petition obligations under the License Agreement. |
| The nature of the interests at stake. | Favors Luxottica: The interests at stake here are fiduciary obligations and Sears' conversion of a contracting counterparty's funds. |
| The balance of the harm to the litigants and the good to be achieved. | Favors Luxottica: Sears seeks to use its delay in assuming a "very profitable" and "important" contract as a sword to continue to convert the Trust Funds and breach its fiduciary and contractual obligations. If Sears is required to assume the License Agreement, it will merely have to comply with its terms or risk termination. Luxottica, on the other hand, seeks to prevent the conversion of its funds and demands that Sears comply with its post-petition fiduciary obligations. |
| Whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary. | Favors Luxottica: Authorizing Sears to continue (i) converting the Trust Funds; (ii) breaching its fiduciary and contractual duties post-petition; and (iii) using the Trust Funds for its own benefit is an action in absolute derogation of Congress's scheme. |
| The purpose of chapter 11, which is to permit successful rehabilitation of debtors. | Favors Luxottica: While permitting a debtor to convert funds and avoid its fiduciary and contractual duties post-petition may appear beneficial to debtors in the short term, the damage done to the integrity of the bankruptcy process will discourage necessary creditors from dealing with debtors post-petition. |

13

### IV. **Luxottica has complied with the License Agreement.**

28.  Sears complains that Luxottica is not performing under the License Agreement. Sears' allegation in this regard is limited solely to the alleged non-payment of a $419,000 claim under the License Agreement. Sears argues that the non-payment of this claim is a violation of the automatic stay. That issue is not before the Court. However, even if it were, the claim is subject to the equitable defense of recoupment – which is not subject to the automatic stay. *New York State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93 (2d Cir. 1997) ("While a 'setoff' is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not.") This is, put simply, a transparent and desperate effort by Sears to paint Luxottica in a poor light. Had Sears not engaged in conversion of Luxottica's funds pre-petition – in express violation of the License Agreement and applicable law – then there would be no need for Luxottica to now exercise its undeniable right of recoupment, which cannot be fairly said to be a violation of the License Agreement under these circumstances.

### CONCLUSION

29.  Neither law nor equity authorizes Sears to commit post-petition conversion of the Trust Funds. Nor is Sears protected by the Bankruptcy Code from its wanton and willful breaches of its fiduciary and contractual duties. Law and equity both favor granting Luxottica's Motion.

Respectfully submitted,

**THOMPSON HINE LLP**

| | |
|---|---|
| Dated: December 18, 2018<br>Cleveland, Ohio | /s/ John C. Allerding<br>John C. Allerding (OH Bar No. 0074744)<br>    (*Pro Hac Vice*)<br>3900 Key Center, 127 Public Square<br>Cleveland, Ohio 44114-1291<br>T: 216.566.5500 / F:  216.566.5800<br>John.Allerding@ThompsonHine.com<br><br>*Counsel for Luxottica Retail North America Inc.* |