**McMANIMON, SCOTLAND**
  **& BAUMANN, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
(973) 622-1800
Sam Della Fera, Jr., Esq.
Richard D. Trenk, Esq. (*Pro Hac Vice* Pending)
*Attorneys for Creditor,*
*LatentView Analytics Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION. INC., *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF MOTION OF LATENTVIEW ANALYTICS**
**CORPORATION FOR THE ENTRY OF AN ORDER, PURSUANT TO**
**11 U.S.C. §§ 365, 503, AND 507 (i) GRANTING AN ADMINISTRATIVE**
**CLAIM; (ii) COMPELLING THE IMMEDIATE PAYMENT OF**
**POSTPETITION ARREARAGES; AND (iii) COMPELLING**
<u>**DEBTORS TO ASSUME OR REJECT THE AGREEMENT**</u>

**PLEASE TAKE NOTICE** that a hearing on the annexed Motion (the "<u>Motion</u>"), dated

December 19, 2019, of LatentView Analytics Corporation ("<u>LVAC</u>"), a creditor of Sears

Holdings Corporation and certain of its affiliates, the debtors and debtors in possession in the

above captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), for entry of an order, pursuant to

sections 365, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (i)

granting LVAC an administrative expense claim against the Debtors for its post-petition

services; (ii) compelling payment of the post-petition arrearages; and (iii) compelling the Debtors

to assume or reject the Agreement by January 31, 2019, all as more fully set forth in the Motion,

will be held before the Honorable Robert D. Drain, U.S.B.J., at the United States Bankruptcy

Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "Bankruptcy Court"), on **January 18, 2019 at 10:00 a.m. (Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that any responses or objections ("Objections") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M–399 (which can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M–399, to the extent applicable, and served in accordance with General Order M-399, so as to be so filed and received no later than **January 11, 2019 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served, LVAC may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: Roseland, New Jersey
December 19, 2018

**MCMANIMON, SCOTLAND
& BAUMANN, LLC**

By: */s/ Sam Della Fera, Jr., Esq.*
Sam Della Fera, Jr., Esq.
Richard D. Trenk (*Pro Hac Vice* Pending)
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
(973) 243-8600

*Attorneys for Creditor,
LatentView Analytics Corporation*

4817-3164-9154, v. 1

**Hearing Date:  January 18, 2019 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  January 11, 2019 at 4:00 p.m. (Prevailing Eastern Time)**

**McMANIMON, SCOTLAND**
  **& BAUMANN, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
(973) 622-1800
Sam Della Fera, Jr., Esq.
Richard D. Trenk, Esq. (*Pro Hac Vice* Pending)
*Attorneys for Creditor,*
*LatentView Analytics Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, INC., *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**MOTION OF LATENTVIEW ANALYTICS CORPORATION**
**FOR THE ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§**
**365, 503, AND 507 (i) GRANTING AN ADMINISTRATIVE**
**CLAIM; (ii) COMPELLING THE IMMEDIATE PAYMENT OF**
**POSTPETITION ARREARAGES; AND (iii) COMPELLING**
<u>**DEBTORS TO ASSUME OR REJECT THE AGREEMENT**</u>

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

LatentView Analytics Corporation ("<u>LVAC</u>"), a creditor of Sears Holdings Corporation,

Inc. and certain of its affiliates, the debtors and debtors in possession in the above captioned

chapter 11 cases (collectively, the "<u>Debtors</u>"), respectfully represents as follows in support of the

motion (the "<u>Motion</u>"):

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and

this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief sought herein are sections 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3.       On October 15, 2018 (the "Petition Date"), the Debtors each commenced a case (collectively, the "Chapter 11 Cases") by filing a petition for relief under the Bankruptcy Code. The Debtors' Chapter 11 Cases are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4.       Since the Petition Date, the Debtors continue to operate their businesses as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.       On October 24, 2018, the Office of the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code.

## THE AGREEMENT

6.       On or about November 18, 2011, LVAC and Sears Holdings Management Corporation ("Sears") entered into a Project Services Agreement (the "Agreement"), whereby LVAC agreed to provide certain data analytics services to Sears.  Under the Agreement, LVAC performs services for Sears pursuant to Statements of Work (each a "SOW").

7.       LVAC and Sears entered into a First Amendment to the Agreement on November 19, 2012, a Second Amendment to the Agreement on February 1, 2015, a Third Amendment to the Agreement on April 11, 2016, and a Fourth Amendment to the Agreement on February 1, 2017.

8.       The Fourth Amendment to the Agreement extended the term of the Agreement to January 31, 2020.

9.     LVAC currently works on three SOWs pursuant to the Agreement (SOW 55, SOW 57, and SOW 62) and is additional SOWs have closed but still have outstanding invoices due (SOW 56, SOW 58, SOW 59, and SOW 60).  The active SOWs expire January 31, 2019.  It is not clear if the Debtors intend to enter into additional SOWs through January 31, 2020.

10.    LVAC is an analytics partner for several Fortune 500 companies, including the Debtors.  LVAC aids consumer-focused businesses in utilizing their data assets to make better business decisions.  With respect to the Debtors, LVAC is engaged with the Home Services division (appliance repairs and parts) and assists the Debtors in analyzing their marketing, financial and operations data.  Some of the key areas that LVAC provides assistance to the Debtors for are: (i) analyzing & tracking the performance of appliance repair business on weekly basis and providing actionable insights; (ii) utilizing micro market forecasting for repair services to efficiently match technician demand and supply to improve service times; and (iii) institutionalizing data drive spend management by creating a customized tool that uses historical data and market trends to measure and improve effectiveness of marketing spends (i.e. maximizing revenue for lower cost).

11.    LVAC employs three people in Illinois and eleven people in India specifically to perform the work requested by the Debtors under the SOWs.  LVAC's employees in the United States are paid on a semi-monthly basis and its employees in India are paid on a monthly basis.

12.    Since the Petition Date, LVAC has continued to perform services for the Debtors under the Agreement.  The following chart lists the amount due to LVAC post-petition for services rendered:

3

| Invoice No. | Invoice Month | SOW Name | SOW No. | Amount |
|---|---|---|---|---|
| LVC-6991-2018 | 15-31 Oct 2018 | Analytics CoE for Demand and Capacity Planning | SOW 55 | $18,370 |
| LVC-6994-2018 | 15-31 Oct 2018 | Marketing Analytics & Tagging | SOW 56 | $2,826 |
| LVC-6993-2018 | 15-31 Oct 2018 | In Home Repair Marketing Analytics | SOW 57 | $31,463 |
| LVC-6992-2018 | 15-31 Oct 2018 | Analytics for HS Finance | SOW 62 | $7,913 |
| LVC-7032-2018 | 30-Nov-18 | Analytics CoE for Demand and Capacity Planning | SOW 55 | $32,500 |
| LVC-7035-2018 | 30-Nov-18 | Marketing Analytics & Tagging | SOW 56 | $5,000 |
| LVC-7034-2018 | 30-Nov-18 | In Home Repair Marketing Analytics | SOW 57 | $55,667 |
| LVC-7033-2018 | 30-Nov-18 | Analytics for HS Finance | SOW 62 | $14,000 |
| | | | | |
| Total | | | | $167,739 |

(collectively, the "Postpetition Invoices").

13.     In addition to the Postpetition Invoices, LVAC believes that it will invoice an additional $93,333 in December and $93,166 in January under the current SOWs.  Thus, the total expected amount due post-petition will be approximately $354,205.

## RELIEF REQUESTED

14.     By this Motion, LVAC seeks entry of an Order, pursuant to sections 365 and 503 of the Bankruptcy Code (i) granting LVAC an administrative expense claim against the Debtors for its post-petition work under the Agreement; (ii) compelling payment of the post-petition arrearages; and (iii) compelling the Debtors to assume or reject the Agreement by January 31, 2019.

15.     A proposed form of order granting the relief set forth in the Motion is annexed hereto as **Exhibit A**.

## BASIS FOR RELIEF REQUESTED

### A.  LVAC is Entitled to an Administrative Expense Claim

16.     Through this Motion, LVAC seeks administrative priority for its claims for accrued post-petition invoices.

4

17.     Section 503(b)(1)(A) of the Bankruptcy Code provides a priority for "the actual, necessary costs and expenses of preserving the estate . . . for services rendered after the commencement of the case."  11 U.S.C. § 503(b)(1)(A).  "This priority is based on the premise that the operation of the business by a debtor-in possession benefits pre-petition creditors; therefore, any claims that result from that operation are entitled to payment prior to payment to 'creditors for whose benefit the continued operation of the business was allowed.'"  *Enron*, 279 B.R. at 704 (citing *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)).

18.     In this District, a claim is accorded administrative status:

> 1) if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and
>
> 2) only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

*Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

19.     The services performed by the claimant must have been "induced" by the debtor-in-possession, not the pre-petition debtor. *Jartran*, 732 F.2d at 587 (citing *Mammoth Mart*, 536 F.2d at 954).  Courts have made clear that, where a "debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to assume or reject the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services."  *In re Patient Education Media, Inc.*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) (quoting *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984)).

20.     The inclusion of the words "actual" and "necessary" in § 503(b)(1)(A) requires that the estate receive a "real benefit from the transaction." *In re Drexel Burnham Lambert Group Inc.*, 134 B.R. 482, 488 (Bankr. S.D.N.Y. 1991).  "Actual use confers a 'concrete benefit

on the estate' thereby entitling a claimant to an administrative expense claim." *Enron*, 279 B.R. at 706 (citing *In re ICS Cybernetics, Inc.*, 111 B.R. 32, 36 (Bankr. N.D.N.Y. 1989)). With respect to an executory contract, the focus is "on whether the debtor *used* the nondebtor's property in the ordinary course of its business, and continued to receive and accept the nondebtor's performance." *Patient Education Media*, 221 B.R. at 102 (emphasis in the original).

21.    The claimant has the burden of establishing entitlement to the priority. *Drexel,* 134 B.R. at 489.

22.    Here, LVAC is entitled to an administrative claim for the services it continues to provide to the Debtors under the Agreement.

23.    First, LVAC's claim arises out of a transaction between LVAC and Sears, one of the debtors in possession in this matter. Indeed, the Agreement was entered into between LVAC and Sears. Further, Sears has demanded that LVAC continue to perform all requested services. Sears has made no payments for postpetition services. Indeed, on November 2, 2018, the Debtors sent a demand letter to LVAC, which states that the terms of the Agreement "remains in full force and effect, pursuant to the provisions of the Bankruptcy Code." Further, the demand letter states that LVAC is required to "continue performing under the [Agreement], and any other executory contracts pending assumption or rejection." Despite this demand, Sears has made no payments for postpetition services rendered.

24.    Second, the services provided to Sears under the Agreement were both supplied to and beneficial to the Debtors. As set forth above, LVAC provides various services to Sears in its home services department, including, but not limited to, (i) analyzing & tracking the performance of appliance repair business on weekly basis and providing actionable insights; (ii) utilizing micro market forecasting for repair services to efficiently match technician demand and

supply to improve service times; and (iii) institutionalizing data drive spend management by creating a customized tool that uses historical data and market trends to measure and improve effectiveness of marketing spends (i.e. maximizing revenue for lower cost). These services have continued for the Debtors post-petition and LVAC continues to provide data analysis to Sears. Sears directly benefits from these services and utilizes LVAC's analyses in order to gain superior consumer insights, greater marketing effectiveness and increased revenues and market share.

25.     Thus, the services provided by LVAC have provided a real benefit to the Debtors. Accordingly, the Motion must be granted.

**B. The Debtors Should be Compelled to Pay LVAC's Administrative Expense Claim**

26.     Because LVAC has established its right to an administrative claim for the Post-Petition Invoices, the Debtors should be compelled to pay the Post-Petition Invoices.

27.     Pursuant to section 507(a)(1) of the Bankruptcy Code, the expenses for administering the estate are afforded a first priority. 11 U.S.C. § 507(a)(1). Thus, expenses the debtor-in possession incurs during the reorganization effort are afforded a first priority. *In re Enron Corp.*, 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002) (citing *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984)).

28.     In Chapter 11 cases, such as this one, all administrative expenses must be paid in full. *Davis v. Elliot Management Corp. (In re Lehman Brothers Holdings Inc.)*, 508 B.R. 283, 289 (S.D.N.Y. 2014).

29.     Here, upon a finding that LVAC is entitled to an administrative expense claim for the Post-Petition Invoices, the Debtors should be required to immediately make payment on such invoices. As an administrative expense, the Debtors are required to pay such claim in full. Moreover, LVAC employs at least 15 personnel in order to provide the services to the Debtors

under the Agreement.  Thus, payment for the continuing services provided is necessary in order to provide such services and to compensate employees.

30.     Accordingly, the Debtors should be compelled to immediately pay the Post-Petition Invoices.

**C. The Debtors Should be Compelled to Assume or Reject the Agreement**

31.     Moreover, because the current SOWs expire on January 31, 2019 but the Agreement does not terminate until January 20, 2020, the Debtors should be compelled to assume or reject the Agreement no later than January 31, 2019.

32.     Pursuant to section 365(d)(2) of the Bankruptcy Code, a debtor may assume or reject an executory contract at any time before the confirmation of the plan, but the court, on request of any party to an executory contract, may order the debtor to determine within a specified period of time whether to assume or reject such contract.  *See* 11 U.S.C. § 365(d)(2). The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case.  *Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105 (2d Cir. 1982).

33.     In determining whether to shorten the period of time in which a debtor must assume or reject an executory contract, courts consider a variety of factors, including

   a.   the importance of the contracts to the debtor's business and reorganization;

   b.   the debtor's failure or ability to satisfy postpetition obligations;

   c.   the nature of the interests at stake;

   d.   the balance of hurt to the litigants and the good to be achieved;

   e.   whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan;

   f.   the safeguards afforded the litigants;

8

      g.  the damage the nondebtor will suffer beyond the compensation available under the Bankruptcy Code;

      h.  whether there is a need for judicial determination as to whether an executory contract exists;

      i.  whether exclusivity has been terminated;

      j.  whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; and

      k.  the purpose of chapter 11, which is to permit successful rehabilitation of debtors.

*In re Dana Corp.*, 350 B.R. 144, 148 (Bankr. S.D.N.Y. 2006) (citations omitted).

34.     The party seeking to shorten the debtor's statutory period to assume or reject the contract bears the burden to demonstrate cause. *Id.* at 147.

35.     Here, the time for the Debtors to assume or reject the Agreement should be shortened so that LVAC can make appropriate staffing decisions. While the services provided by LVAC are important to the Debtor's business, the Debtors have not entered into additional SOWs with LVAC past January 31, 2019. Accordingly, it is unclear whether the Debtors will continue using such services despite the fact that the Agreement does not expire until January 31, 2020.

36.     Moreover, there will not be significant harm to the Debtors, as they should already know their need going forward for the data analytic services needed for the period of January 31, 2019 through January 31, 2020.

37.     Instead, there will be significant harm to LVAC, which will be kept in limbo with respect to staffing needs for an entire year until the Agreement expires. Thus, LVAC will suffer damages beyond the compensation available under the Bankruptcy Code if the Agreement is not assumed or rejected.

38.     Accordingly, the Debtors should be compelled to assume or reject the Agreement

no later than January 31, 2019.

## CONCLUSION

WHEREFORE, LVAC respectfully request that the Court enter an order,  substantially in

the form annexed hereto as **Exhibit A**, granting the relief requested in this Motion and such other

and further relief as may be just and proper.

Dated: Roseland, New Jersey
       December 19, 2018

**MCMANIMON, SCOTLAND
& BAUMANN, LLC**

By: */s/ Sam Della Fera, Jr., Esq.*
    Sam Della Fera, Jr., Esq.
    Richard D. Trenk (*Pro Hac Vice* Pending)
    75 Livingston Avenue, Suite 201
    Roseland, New Jersey 07068
    (973) 243-8600

    *Attorneys for Creditor,*
    *LatentView Analytics Corporation*

4811-4182-5410, v. 1

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, INC., *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**ORDER (i) GRANTING AN ADMINISTRATIVE
CLAIM; (ii) COMPELLING THE IMMEDIATE PAYMENT OF
POSTPETITION ARREARAGES; AND (iii) COMPELLING
DEBTORS TO ASSUME OR REJECT THE AGREEMENT**

Upon the Motion, dated December 19, 2018 (the "Motion"),[1] of LatentView Analytics

Corporation ("LVAC"), a creditor of Sears Holdings Corporation, Inc. and certain of its

affiliates, the debtors and debtors in possession in the above captioned chapter 11 cases

(collectively, the "Debtors"), pursuant to sections 365, 503, and 507 of title 11 of the United

States Code (the "Bankruptcy Code"), (i) granting LVAC an administrative expense claim

against the Debtors for its post-petition services; (ii) compelling payment of the post-petition

arrearages; and (iii) compelling the Debtors to assume or reject the Agreement by January 31,

2019, all as more fully described in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein; and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the Motion is in the best interests of the Debtors,

their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

---

[1] Capitalized terms used but not defined herein shall have the same meaning ascribed to such terms in the Motion.

1.      The Motion is GRANTED as set forth herein.

2.      LVAC is granted an allowed administrative expense claim pursuant to 11 U.S.C.

§ 503(b)(1)(A) for the Post-Petition Invoices.

3.      The Debtors are compelled to make payment on the Post-Petition Invoices within

seven (7) days of entry of this Order

4.      The time period for the Debtors to determine whether to assume or reject the

executory contract with LVAC is hereby shortened to January 31, 2019.

5.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to this Order.

Dated: New York, New York
            _____, 2019


                                                    _____
                                                    HONORABLE ROBERT D. DRAIN
                                                    UNITED STATES BANKRUPTCY JUDGE


4813-0803-0338, v. 1

2