WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :       **Chapter 11**
                                                            :
**SEARS HOLDINGS CORPORATION,** *et al.***,**               :       **Case No. 18-23538 (RDD)**
                                                            :
                            **Debtors.**[1]                 :       **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

WEIL:\96842329\4\73219.0006

**CERTIFICATE OF NO OBJECTION**
**REGARDING APPLICATION OF DEBTORS FOR AUTHORITY**
**TO RETAIN AND EMPLOY A&G REALTY PARTNERS, LLC AS REAL**
**ESTATE CONSULTANT AND ADVISOR, EFFECTIVE AS OF NOVEMBER 6, 2018**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 1746 and Rule 9075-2 of the Local Bankruptcy Rules for

the Southern District of New York (the "**Local Rules**"), the undersigned hereby certifies as

follows:

1.       Beginning on October 15, 2018 (the "**Commencement Date**") and

continuing thereafter, each of Sears Holdings Corporation and its debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**")

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code.

On December 6, 2018, the Debtors filed the *Application of Debtors for Authority to Retain and*

*Employ A&G Realty Partners, LLC as Real Estate Consultant and Advisor, Effective as of*

*November 6, 2018* (ECF No. 1079) (the "**Application**").

2.       The Debtors served the Application as reflected in the affidavit of service

filed at ECF No. 1141.

3.       The Application established a deadline of December 13, 2018 at 4:00 p.m.

(prevailing Eastern Time) (the "**Objection Deadline**") for parties to object or file responses to the

Application.   The *Amended Order Implementing Certain Notice and Case Management*

*Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management**

**Order**") provides that a motion or application may be granted without a hearing, provided that no

objections or other responsive pleadings have been filed, after the passage of the Objection

2

Deadline, and the attorney for the entity who filed the pleadings complies with the terms of the Amended Case Management Order.

4.      The Objection Deadline has passed and, to the best of my knowledge, no objection, responsive pleading, or request for a hearing with respect to the Application has been (a) filed with the Court on the docket of the above-captioned case or (b) served on counsel to the Debtors.

5.      Accordingly, the Debtors respectfully request that the revised proposed order granting the relief requested in the Application annexed hereto as **<u>Exhibit A</u>** (the "**Revised Proposed Order**"), be entered in accordance with the Amended Case Management Order. The Revised Proposed Order reflects informal comments received from the ABL DIP Lenders,[2] and an updated Services Agreement that includes a schedule identifying the leases and/or properties as to which A&G will perform its agreed-upon services. A redline of the Revised Proposed Order marked against the version filed with the Motion is annexed hereto as **<u>Exhibit B</u>**.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the DIP ABL Order (ECF No. 955).

WEIL:\96842329\4\73219.0006

I declare that the foregoing is true and correct.

Dated:  December 19, 2018
        New York, New York

                                    ___/s/ Jacqueline Marcus_____
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York  10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:   (212) 310-8007
                                    Ray C. Schrock, P.C.
                                    Jacqueline Marcus
                                    Garrett A. Fail
                                    Sunny Singh
                                    Jessica Liou

                                    *Attorneys for Debtors*
                                    *and Debtors in Possession*

WEIL:\96842329\4\73219.0006

**<u>Exhibit A</u>**

**Revised Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                        :
In re                                   :        **Chapter 11**
                                        :
**SEARS HOLDINGS CORPORATION,** *et al.,*  :        **Case No. 18-23538 (RDD)**
                                        :
        **Debtors.**[1]                 :        **(Jointly Administered)**
                                        :
---------------------------------------------------------------x

## ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF A&G
## REALTY PARTNERS, LLC AS THE DEBTORS' REAL ESTATE
## CONSULTANT AND ADVISOR, EFFECTIVE AS OF NOVEMBER 6, 2018

Upon the application, dated December 6, 2018 (ECF No. 1079) (the

"**Application**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to

sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and

Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

**Rules**"), for entry of an order authorizing the Debtors to retain and employ A&G Realty Partners, LLC ("**A&G**"), pursuant to the terms of that certain Real Estate Services Agreement dated November 6, 2018, annexed hereto as **Exhibit 1** (the "**Services Agreement**"), all as more fully set forth in the Application; and upon the Declaration of Michael Jerbich in support of the Application annexed to the Application as **Exhibit 2**; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Application having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and no objection having been filed and the Debtors having submitted a certificate of no objection; and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that the relief requested is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted to the extent set forth herein.

2.      The Services Agreement, annexed hereto as **Exhibit 1**, is approved to the extent set forth herein.

2

3.      The Debtors are authorized to employ and retain A&G as their real estate consultant and advisor in these chapter 11 cases in accordance with the terms of the Services Agreement.

4.      A&G is authorized to render the following Services to the Debtors:

(a)     Consult with and advise the Debtors (and, to the extent requested by the Debtors, negotiate with applicable landlords on behalf of the Debtors) in order to assist the Debtors in obtaining modifications of the Leases;

(b)     To the extent expressly requested by the Debtors in writing, negotiate with the applicable landlords and other third parties on behalf of the Debtors in order to assist the Debtors in obtaining Lease Sales;

(c)     To the extent expressly requested by the Debtors in writing, negotiate with third parties on behalf of the Debtors in order to assist the Debtors in obtaining Property Sales; and

(d)     Report periodically to the Debtors regarding the status of the Services.

5.      All of A&G's compensation as set forth in the Services Agreement including, without limitation, the Base Fee, the Lease Sale Fee, and the Property Sale Fee, and the expense reimbursement and indemnification and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and A&G shall be compensated, reimbursed and indemnified pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Services Agreement and this Order.

6.      A&G will submit invoices to the Debtors, the Office of the United States Trustee for Region 2, the Creditors' Committee, and the lenders under the Debtors' postpetition debtor-in-possession secured financing (*see* ECF Nos. 951 and 955) for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Services Agreement when such compensation becomes due and owing and such expenses are incurred.  Such parties shall have fifteen (15) days to review and dispute any such invoice submitted by A&G, and if no

3

such disputes are received, without any further order of the Court, the Debtors shall be authorized to pay such A&G invoices.  If any objection is received, the Debtors shall withhold the payment of the portion of the payment that is objected to and promptly pay the remainder.  All objections that are not resolved shall be preserved and presented to the Court for determination.

7.      A&G shall work cooperatively with other real estate advisors retained by the Debtors in the above-captioned chapter 11 cases to integrate any work conducted by the other professionals on behalf of the Debtors, so as to avoid duplication of services provided by any of the Debtor's other such retained professionals.

8.      A&G shall file a final fee application with a summary of fees earned and expenses incurred along with a summary of the fees and expenses that have been paid.

9.      Notwithstanding anything in the Application or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) DIP ABL Order and the Interim Junior DIP Order (*see* ECF Nos. 951 and 955); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP ABL Order).

10.      To the extent there is any inconsistency between the terms of any of the DIP ABL Order, the Interim Junior DIP Order and this Order, the terms of the DIP ABL Order or the Interim Junior DIP Order, as applicable, shall control.

11.      To the extent there is inconsistency between the terms of the Application, the Services Agreement, and this Order, the terms of this Order shall govern.

4

12.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

13.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
        White Plains, New York

                                    _____
                                    THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

WEIL:\96842329\5\73219.0006

## **Exhibit 1**

**Services Agreement**

FINAL – 11.06.18



# REAL ESTATE SERVICES
# AGREEMENT WITH
# SEARS HOLDING CORPORATION
# (CHAPTER 11)

This Real Estate Services Agreement including the Schedules attached hereto (collectively the "Agreement") is made as of November 6, 2018 (the "Agreement Date") by and between **A&G REALTY PARTNERS**, **LLC**, a New York limited liability company, with its principal place of business at 445 Broadhollow Road, Suite 410, Melville, New York 11797 ("A&G") and **SEARS HOLDINGS CORPORATION,** a Delaware corporation with its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179 ("Sears" and each of A&G and Sears, a "Party" and collectively the "Parties").

WITNESSETH:

**WHEREAS**, Sears and certain of its subsidiaries (collectively, together with Sears, the "Debtor") have filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") seeking relief under Title 11 of the United States Code ("Bankruptcy Code");

**WHEREAS**, the Debtor will continue to operate its businesses and manage its properties as "debtor-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court;

**WHEREAS,** the Debtor leases (each a "Lease" and collectively the "Leases") and owns certain real properties (each a "Property" and collectively the "Properties");

**WHEREAS,** Sears, on behalf of itself and the other entities comprising the Debtor, desires to obtain certain real estate advice and services in relation to the Leases and Properties;

**WHEREAS,** specifically Sears, on behalf of itself and the other entities comprising the Debtor, desires to: (i) reduce its obligations under certain of its Leases by modifying the terms and conditions of the Leases; (ii) sell certain of its Leases (including, all or part of the Leases and the sale of the designation rights) (iii) sell certain of its Properties; and (iv) obtain certain other real estate consulting and advisory services;

**WHEREAS**, the Leases and/or Properties with respect to which Sears, on behalf of itself and the other entities comprising the Debtor, is seeking Services (as defined below) are set forth on Schedule A, which is attached hereto and made a part hereof; and

**WHEREAS**, under the terms and conditions contained in this Agreement Sears, on behalf of itself and the other entities comprising the Debtor, desires to retain A&G and A&G is willing to provide such Services.

2

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.  <u>Services to be Provided</u>.  In accordance with the terms and conditions of this Agreement, A&G will provide the following services (the "<u>Services</u>"):

    a) consult with and advise the Debtor (and, to the extent requested by the Debtor, negotiate with applicable landlords on behalf of the Debtor) in order to assist the Debtor in obtaining modifications of the Leases;

    b) to the extent expressly requested by Sears in writing after the date hereof, negotiate with the applicable landlords and other third parties on behalf of the Debtor in order to assist the Debtor in obtaining Lease Sales (as defined on Schedule B attached hereto);

    c) to the extent expressly requested by Sears in writing after the date hereof, negotiate with third parties on behalf of the Debtor in order to assist the Debtor in obtaining Property Sales (as defined on Schedule B attached hereto); and

    d) report periodically to the Debtor regarding the status of the Services.

2.  <u>Term of Agreement</u>.  Subject to any Bankruptcy Court approval required, this Agreement shall be for a term of two (2) months following the Agreement Date (the "<u>Term</u>").  The Term may be extended or renewed by written agreement of the Parties.

3.  <u>Compensation</u>.  Subject to any Bankruptcy Court approval required, the compensation for the Services is set forth on <u>Schedule B</u>, which is attached hereto and incorporated herein ("<u>Compensation</u>").

4.  <u>Additional Services.</u>  A&G may provide additional services requested by Sears that are not otherwise specifically provided for in this Agreement. Any additional services will be mutually agreed upon by the Parties and documented in a separate agreement.

5.  <u>Recordkeeping</u>.  The Services to be provided by A&G pursuant to this Agreement are, in general, transactional in nature. Accordingly, A&G will not bill Sears by the hour or maintain time records.

6.  <u>Expenses and Disbursements</u>.  A&G shall not be responsible for any transactional costs incurred by it or the Debtor in connection with its retention and Services. Subject to any Bankruptcy Court approval required, Sears shall reimburse A&G for A&G's reasonable and documented out-of-pocket expenses (including, but not

limited to, reasonable and documented out-of-pocket mailing, marketing and travel expenses) incurred in connection with its retention and provision of Services.

7. <u>Separate Engagements</u>.    Sears acknowledges that A&G may be engaged to provide the same or similar services as those referenced herein to other persons or entities and that any such engagement shall not constitute or be deemed to be a violation of this Agreement, provided that it is not a conflict of interest or otherwise materially interferes with A&G's ability to provide the Services. A&G will notify Sears of any potential conflicts as soon as reasonably practicable. A&G hereby acknowledges that the Debtor may retain other persons or entities to provide the same or similar services as those referenced herein to the Debtor and that any such engagement shall not constitute or be deemed to be a violation of this Agreement.

8. <u>Debtor's Representative</u>.    Jane Borden will be the representative of Sears (the "<u>Sears Representative</u>") in dealing with A&G. Sears reserves the right, at any time and from time-to-time, upon written notice to A&G, to designate a successor representative or an additional representative and to limit the authority of the representative in any respect.    A&G will report regularly to the Sears Representative in order to keep her fully apprised of A&G's performance.    The designated principal representatives for A&G will be Michael Jerbich and Emilio Amendola.  If A&G seeks to change its principal representatives, Sears agrees to reasonably consent to any proposed replacement.

9. <u>Debtor Cooperation</u>.    Sears shall provide A&G with all information concerning the Leases and Properties reasonably necessary for the performance of A&G's obligations hereunder, including, but not limited to, copies of the Leases, the current rents, taxes and other charges relating to the Leases and Properties, the premise sizes of the Leases, the commencement and expiration dates of the Leases, any Lease options, up to date landlord contact information (including email and phone number information for each landlord), copies of the Property deeds, any Property condition reports, environmental surveys, any land surveys and any other surveys, reports or other documents relating to the Leases and/or Properties and/or regulations, local ordinances or laws and rules that relate to the Properties and such other information as A&G reasonably requests for the performance of its Services (the "<u>Lease and Property Information</u>"). Sears also agrees to complete Schedule A attached hereto.

It is understood and agreed by the Parties that A&G shall have no obligation to verify the accuracy of such information and that A&G shall have no liability whatsoever resulting from, whether directly or indirectly, the inaccuracy or incompleteness of the Lease and Property Information. Both Parties understand and agree that A&G shall base its Services on the Lease and Property Information and any material inaccuracies, discrepancies or omissions in the information may affect the Services provided, including but not limited to, a delay in the provision of the Services.  Furthermore, both Parties understand and agree that

the commencement of this Agreement and the continuation of its Services are contingent upon A&G's receipt of such information.

10. <u>Use of Debtor Name</u>.  A&G may use the Debtor's name and logo to identify the Debtor as one of A&G's clients.

11. <u>No Authority to Execute Agreements.</u>  A&G shall have no right or power to enter into any agreement in the name of or on behalf of the Debtor or to otherwise obligate the Debtor in any manner unless authorized in writing.

12. <u>Meetings and Written Reports</u>.  After the commencement of the Agreement, A&G shall meet with, in a manner agreed to by the Parties, the Sears Representative(s) to review the Debtor's goals, objectives and financial parameters. Thereafter, A&G will meet with or participate in telephone conferences with the Sears Representative(s) regarding the status of the Services as mutually agreed to by the Parties.

13. <u>Disclosures/Reports</u>.  All opinions and advice (written or oral) given by A&G to the Debtor in connection with this Agreement are intended solely for the benefit and use of the Debtor and no such opinion or advice shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, other than as provided herein, without the prior written consent of A&G.

If the Debtor is required by applicable law, regulation or rule (including, without limitation, in connection with its obligations to seek approval from the Bankruptcy Court) or receives a subpoena, summons or court order by any federal, state or other governmental authority (including any court or regulatory agency) having jurisdiction over the Debtor or any other compulsory legal process relating in any respect to A&G or its Services, the Debtor may disclose the opinions or advice subject thereto, but shall promptly notify A&G, if legally permissible, so that A&G may seek to obtain a protective order for such opinions or advice.  If A&G is unable to obtain a protective order and the Debtor is required to provide such opinions or advice, Sears agrees to provide (and to use commercially reasonable efforts to cause the other entities comprising the Debtor to provide) only those opinions or advice which are legally required and to use reasonable efforts to ensure the confidentiality of such opinions or advice.

A&G agrees to keep confidential all information provided to it by (or on behalf of) the Debtor and any information, data, advice or opinions derived therefrom (collectively, the "<u>Debtor Information</u>") and will not, without the consent of the Debtor, disclose or use, for any purpose other than providing its services hereunder, any of the Debtor Information, unless requested by a regulatory body, required by applicable law, rule or regulation or otherwise compelled by compulsory legal process to disclose the Debtor Information, provided that A&G shall, where legally permitted, promptly notify the Debtor of any such request, requirement or compunction so that it may seek a protective order or other

appropriate remedy prior to disclosure. If the Debtor is unable to obtain a protective order and A&G is required to provide such opinions or advice, A&G agrees to provide only such Debtor Information which is legally required and to use reasonable efforts to ensure the confidentiality of such Debtor Information. In connection with performing A&G's services hereunder, the Debtor may from time to time specifically authorize A&G to discuss the Debtor Information or deliver it to third parties, but any such communication of Information will be similarly confidential. The provisions of this paragraph shall survive termination of this Agreement until the date that is two years after the date of such termination.

14. Independent Contractor. Each Party acknowledges and agrees that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between any entity comprising the Debtor and A&G. A&G shall provide the Services as an independent contractor and not as an employee, agent, partner or joint venture of any entity comprising the Debtor.

15. Early Termination. Either Party may terminate this Agreement upon thirty days' prior written notice to the other Party in accordance with the notice provision below. Additionally, if either Party materially fails to perform its obligations in accordance with the terms herein, and does not cure such failure within a reasonable period of time after written notice of default, the other Party will have the right to terminate this Agreement by notice of termination to the non-performing Party, effective ten (10) calendar days after the date of such notice. Furthermore, if A&G becomes unable to perform its duties as a result of a legal, contractual or regulatory restriction, A&G shall have the right to terminate this Agreement. Any rights or obligations incurred or accrued by either Party prior to termination shall survive termination of this Agreement

16. Assignment. Neither Party may delegate or assign its rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Party.

17. Notices. Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

To any entity comprising the Debtor:

Sears Holding Corporation

6

> 3333 Beverly Road
> Hoffman Estates, Illinois 60179
> Attention:  Jane Borden
> Tel: (847) 286-5922
> Email: Jane.Borden@searshc.com

with a copy (which shall not constitute notice) to:

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, NY 10153
> Attention:  Jacqueline Marcus
> Tel: (212) 310-8130
> Email: Jacqueline.Marcus@weil.com

To A&G:

> A&G Realty Partners, LLC
> 525 W Monroe St, Suite 2330
> Chicago, IL 60661
> Attn:  Michael Jerbich
> Tel: o (312) 454-2057
>        m (773) 294-5354
> Email: michael@agrealtypartners.com

> A&G Realty Partners, LLC
> 445 Broadhollow Rd, Suite 410
> Melville, NY 11747
> Attn:  Emilio Amendola
> Tel: (631) 465-9507
> Email: emilio@agrealtypartners.com

18.    <u>Representations, Warranties and Covenants</u>. Subject to any Bankruptcy Court approval required, each Party has all requisite power and authority to enter into this Agreement. This Agreement has been validly authorized by all necessary corporate action and constitutes a legal, valid and binding agreement of the Sears and A&G.   Subject to any Bankruptcy Court approval required, each Party represents that this Agreement does not and will not violate any applicable law or conflict with any material agreement, instrument, judgment, order or decree to which it is a party or by which it is bound.  Furthermore, each Party agrees that it will comply with all applicable laws, rules, regulations, orders or decrees during the term of this Agreement in performing its obligations hereunder.  Each Party agrees to deal with the other fairly and in good faith so as to allow each Party to perform their duties and earn the benefit of this Agreement.   A&G agrees to

utilize reasonable best efforts and diligence to achieve the purpose of this Agreement.

19.  <u>Bankruptcy</u>.  Sears agrees to promptly apply to the Bankruptcy Court for an order, in a form reasonably acceptable to A&G, authorizing Sears to retain and compensate A&G in accordance with the terms of this Agreement and to use its commercially reasonable efforts to obtain such order.  Sears agrees to seek the hiring and retention of A&G under sections 327 and 328 of the Bankruptcy Code. Sears will provide A&G with a copy of the pleadings requesting retention of A&G prior to submission to the Bankruptcy Court for A&G's review and comments and advise A&G of any objection or hearings pertaining to A&G's retention.  The order authorizing A&G's retention must be reasonably acceptable to A&G and A&G's obligations hereunder are conditioned upon the grant of such order; provided that A&G expects to begin providing the Services as of the date of this Agreement.  Furthermore, if such order is not obtained within sixty days from the date that it is filed, A&G shall have the right to terminate this Agreement at any time thereafter.  If a reasonably acceptable order is not obtained authorizing A&G's services and fees as set forth herein, Sears agrees to amend the application in conjunction with and subject to the approval of A&G and request a hearing to review the amended application.  In the event that Sears is unable to obtain an acceptable order authorizing the hiring and retention of A&G under the terms of this Agreement and the Agreement is terminated, A&G reserves the right to seek a substantial contribution claim for any rights or obligations incurred or accrued prior to such termination.

20.  <u>Survival of Fee</u>.  In the event that within six (6) months following the termination of this Agreement, the Debtor or its successors or assigns, enters into a Lease Sale or Property Sale as to which (a) Sears expressly requested in writing after the date hereof that A&G provide Services, (b) A&G's provision of the Services in connection with such Lease Sale or Property Sale after the date of such request is the proximate cause of such Lease Sale or Property Sale and (c) the consummation of such Lease Sale or Property Sale would have entitled A&G to a fee pursuant to this Agreement if not terminated, then in that event, A&G shall be entitled to and paid its fee pursuant to the terms of this Agreement notwithstanding the fact that the Agreement has terminated.  On or prior to the date of termination of this Agreement, A&G shall deliver to Sears a list of (i) all Lease Sales and Property Sales on which Sears has expressly requested in writing after the date hereof that A&G provide Services and A&G has provided Services following such request and (ii) all third parties with who A&G has initiated discussions in connection with any such Lease Sale or Property Sale.  No fee shall be payable pursuant to this Section 20 with respect to any Lease Sale or Property Sale not described on such list.

21.  <u>Intellectual Property</u>.  A&G may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder. Notwithstanding the delivery of any reports by A&G to

the Debtor, A&G shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services.

22.    <u>Indemnification</u>.    Subject to any Bankruptcy Court approval required, Sears agrees to indemnify A&G and its respective affiliates, officers, directors, employees, agents and independent contractors, and hold each of them harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted against, resulting from (directly or indirectly), or related to the Services or actions or omissions of A&G or Sears taken pursuant to this Agreement, (including, but not limited to, any covenants, representations or warranties contained herein) or in any written agreement entered into in connection herewith except to the extent that such claims or liabilities arise as a direct result of A&G's gross negligence, willful misconduct or material breach of this Agreement.

The Indemnification Provisions set forth above shall be subject during the pendency of Sears' chapter 11 case to the following:

a.    A&G shall not be entitled to indemnification, contribution or reimbursement pursuant to the Services Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Bankruptcy Court;

b.    Sears shall have no obligation to indemnify A&G, or provide contribution or reimbursement to A&G, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&G's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which Sears alleges the breach of A&G's contractual obligations unless the Bankruptcy Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to <u>In re United Artists Theatre Company</u>, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&G's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&G should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Proposed Order; and

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in Sears' case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 case, A&G believes that it is entitled to the payment of any amounts by Sears on account of Sears' indemnification, contribution, and/or reimbursement obligations under this Services Agreement (as modified by any retention application or order issued by the Bankruptcy Court), including without limitation the advancement of defense costs, A&G must file an application with the Bankruptcy Court, and Sears may

9

not pay any such amounts to A&G before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by A&G for indemnification, contribution, or reimbursement, and not a provision limiting the duration of Sears' obligation to indemnify A&G.   All parties in interest shall retain the right to object to any demand by A&G for indemnification, contribution or reimbursement.

23.     <u>Limitation on Liability</u>.   Neither Party shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder.   Neither Party shall be liable if it is unable to perform its responsibilities hereunder as a result of events beyond its control.  Furthermore, in no event shall A&G's liability for a default or breach of this Agreement exceed the amount of fees paid to A&G hereunder.

24.     <u>Binding Effect. No Third Party Beneficiaries</u>.   This Agreement binds and inures to the benefit of the Parties hereto and their respective successors and permitted assigns and except as expressly provided herein, is not intended to confer any rights or remedies upon any person not a party to this Agreement.

25.     <u>Waivers and Amendments</u>.   Waiver by either Party of any default by the other Party shall not be deemed a waiver of any other default. This Agreement (including the Schedule (s) attached hereto) may not be waived, amended, or modified by either Party unless in writing and signed by the Parties hereto.

26.     <u>Severability</u>.   If any provision, or any portion of any provision, contained in this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, then it is the intent of the Parties to modify or limit such provision or portion thereof so as to be valid and enforceable to the extent permitted under applicable law. In the event that such provision or portion thereof cannot be modified, then such provision or portion thereof shall be deemed omitted and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

27.     <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

28.     <u>Counterpart Execution/Facsimile and Electronic Signatures</u>.   This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.  Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

29.     <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of New York without reference to its conflict of laws rules.

The Parties agree that (a) during the pendency of Sears' bankruptcy case, the Bankruptcy Court (and the United States District Court and United States Court of Appeal with appellate jurisdiction over the Bankruptcy Court) and (b) following closure or dismissal of Sears' bankruptcy case, any federal or state court located in the State of New York (and any appellate court therefrom) shall, as applicable, have exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each Party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.  Each Party hereby irrevocably and unconditionally waives any objection to the laying of venue in any such court with respect to any dispute arising out of this Agreement or the transactions contemplated hereby and irrevocably and unconditionally waives the defense of an inconvenient forum.

The provisions of this Section 29 shall survive termination of this Agreement.

30.     <u>Waiver of Jury Trial</u>.  Each of the Parties unconditionally waives, to the extent legally permissible, the right to a jury trial in connection with any claim arising out of or related to this Agreement.

31.     <u>Headings</u>.  The section headings and use of defined terms in the singular or plural tenses in this Agreement are solely for the convenience of the Parties.

32.     <u>No Presumptions</u>.  This Agreement by shall be deemed drafted by both Parties and there shall be no presumption for or against either Party in the interpretation of this Agreement.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Agreement Date.

SEARS HOLDINGS CORPORATION

By: _____
Name: Jane S. Borden
Title: President – Real Estate

A&G REALTY PARTNERS, LLC

By: _____
Name: Michael Jerbich
Title: Principal

**<u>Schedules</u>**

Schedule A    Leases/Properties
Schedule B    Compensation

**SCHEDULE A**
**Leases/Properties**

ATTACHED

| Store # | City | State | Status |
|---|---|---|---|
| 2027 | Wasilla | AK | Restructuring |
| 2306 | Gadsden | AL | Marketing Lease |
| 2126 | Hot Springs | AR | Restructuring |
| 9711 | Russellville | AR | Marketing Lease |
| 3707 | Lake Havasu City | AZ | Restructuring |
| 1728 | Tucson | AZ | Restructuring |
| 4996 | Tucson | AZ | Restructuring |
| 7619 | Atascadero | CA | Restructuring |
| 9608 | Auburn | CA | Restructuring |
| 1018 | Baldwin Hills | CA | Restructuring |
| 7756 | Bishop | CA | Restructuring |
| 1008 | Boyle | CA | Restructuring |
| 7165 | Camarillo | CA | Restructuring |
| 1678 | Carlsbad | CA | Restructuring |
| 3086 | Chico | CA | Restructuring |
| 1098 | Clovis | CA | Restructuring |
| 1368 | Concord | CA | Restructuring |
| 7098 | Concord | CA | Restructuring |
| 1388 | Costa Mesa | CA | Marketing Lease |
| 1309 | Downey | CA | Restructuring |
| 2628 | Eureka | CA | Restructuring |
| 3725 | Freedom | CA | Restructuring |
| 9746 | Grass Valley | CA | Restructuring |
| 2028 | Hemet | CA | Restructuring |
| 3748 | Hollister | CA | Restructuring |
| 4819 | Lakeport | CA | Restructuring |
| 3982 | Lemoore | CA | Marketing Lease |
| 9328 | Long Beach | CA | Restructuring |
| 3345 | Modesto | CA | Marketing Lease |
| 1998 | Montebello | CA | Marketing Lease |
| 4421 | North Hollywood | CA | Restructuring |
| 3842 | Oakdale | CA | Restructuring |
| 3483 | Ontario | CA | Marketing Lease |
| 1378 | Orange | CA | Restructuring |
| 9551 | Paradise | CA | Restructuring |
| 1048 | Pasadena | CA | Restructuring |
| 3501 | Petaluma | CA | Restructuring |
| 1019 | Pleasanton | CA | Marketing Lease |
| 1818 | Rancho Cucamonga | CA | Restructuring |
| 4349 | Redwood City | CA | Restructuring |
| 4706 | Riverside | CA | Marketing Lease |
| 7175 | Riverside | CA | Restructuring |
| 3412 | Salinas | CA | Restructuring |
| 2138 | Santa Barbara | CA | Marketing Lease |
| 9797 | Scotts Valley | CA | Restructuring |
| 9153 | South Lake Tahoe | CA | Restructuring |

| 1288 | Stockton | CA | Restructuring |
| 3174 | Stockton | CA | Restructuring |
| 4751 | Tehachapi | CA | Restructuring |
| 2059 | Tracy | CA | Restructuring |
| 2829 | Victorville | CA | Restructuring |
| 9761 | Visalia | CA | Marketing Lease |
| 2238 | Yuba City | CA | Restructuring |
| 1141 | Aurora | CO | Restructuring |
| 1131 | Centennial | CO | Marketing Lease |
| 1467 | Ft Collins | CO | Restructuring |
| 7329 | Loveland | CO | Restructuring |
| 4453 | Pueblo | CO | Restructuring |
| 1134 | Milford | CT | Marketing Lease |
| 3216 | Vernon | CT | Restructuring |
| 7109 | Watertown | CT | Restructuring |
| 4807 | Bear | DE | Restructuring |
| 3873 | Wilmington | DE | Restructuring |
| 3317 | Boca Raton | FL | Restructuring |
| 1007 | Brandon | FL | Restructuring |
| 2485 | Brooksville | FL | Restructuring |
| 1125 | Coral Gables | FL | Restructuring |
| 4893 | Ellenton | FL | Restructuring |
| 3424 | Gainesville | FL | Marketing Lease |
| 3818 | Hollywood | FL | Restructuring |
| 2315 | JENSEN BEACH | FL | Marketing Lease |
| 9614 | Key Largo | FL | Restructuring |
| 3269 | Lantana | FL | Restructuring |
| 2745 | Leesburg | FL | Restructuring |
| 9224 | Marathon | FL | Restructuring |
| 3793 | Miami | FL | Marketing Lease |
| 4728 | Miami | FL | Restructuring |
| 2056 | Mry Est/Ft Wltn Bch | FL | Marketing Lease |
| 1456 | Oviedo | FL | Restructuring |
| 2145 | Port Charlotte | FL | Restructuring |
| 1066 | The Avenues | FL | Restructuring |
| 7294 | Vero Beach | FL | Restructuring |
| 3713 | Covington | GA | Marketing Lease |
| 3978 | Peachtree City | GA | Marketing Lease |
| 1681 | Honolulu | HI | Restructuring |
| 2148 | Kahului Maui(Sur) | HI | Restructuring |
| 9222 | Cherokee | IA | Marketing Lease |
| 3097 | Council Bluffs | IA | Marketing Lease |
| 7033 | Lewiston | ID | Restructuring |
| 7006 | Twin Falls | ID | Restructuring |
| 4381 | Bridgeview | IL | Restructuring |
| 4297 | Moline | IL | Marketing Lease |
| 9348 | Norridge | IL | Marketing Lease |

| 9124 | Elwood | IN | Restructuring |
|------|--------|-----|---------------|
| 1470 | Greenwood | IN | Marketing Lease |
| 9354 | Griffith | IN | Marketing Lease |
| 3251 | Indianapolis | IN | Marketing Lease |
| 3823 | Jasper | IN | Marketing Lease |
| 7243 | Kokomo | IN | Restructuring |
| 9030 | Peru | IN | Restructuring |
| 7246 | Richmond | IN | Restructuring |
| 2600 | Terre Haute | IN | Marketing Lease |
| 7042 | Valparaiso | IN | Restructuring |
| 9122 | Warsaw | IN | Restructuring |
| 4215 | Kansas City | KS | Marketing Lease |
| 7169 | Salina | KS | Marketing Lease |
| 2546 | Bowling Green | KY | Marketing Lease |
| 3029 | Erlanger | KY | Restructuring |
| 7229 | Grayson | KY | Marketing Lease |
| 1790 | Louisville-Okolona | KY | Marketing Lease |
| 3941 | Russell Springs | KY | Marketing Lease |
| 7255 | Somerset | KY | Restructuring |
| 1226 | Metairie | LA | Restructuring |
| 4810 | Metairie | LA | Restructuring |
| 7223 | Metairie | LA | Marketing Lease |
| 7104 | Acton | MA | Restructuring |
| 1213 | Auburn | MA | Restructuring |
| 3288 | Billerica | MA | Restructuring |
| 1283 | Braintree | MA | Restructuring |
| 4407 | Brockton | MA | Restructuring |
| 1223 | Brockton-Westgate | MA | Restructuring |
| 3040 | Hyannis | MA | Restructuring |
| 3486 | Somerville | MA | Restructuring |
| 9692 | Webster | MA | Restructuring |
| 1725 | Annapolis | MD | Restructuring |
| 3256 | Baltimore | MD | Restructuring |
| 3131 | Frederick | MD | Restructuring |
| 1013 | Glen Burnie | MD | Restructuring |
| 3172 | Hagerstown | MD | Restructuring |
| 3798 | Hyattsville | MD | Restructuring |
| 3807 | Prince Frederick | MD | Marketing Lease |
| 1304 | Silver Spring | MD | Restructuring |
| 4399 | Silver Spring | MD | Restructuring |
| 7673 | Stevensville | MD | Restructuring |
| 2963 | Westminster | MD | Marketing Lease |
| 3021 | Auburn | ME | Restructuring |
| 7133 | Augusta | ME | Restructuring |
| 2203 | Brunswick | ME | Restructuring |
| 3380 | Waterville | ME | Marketing Lease |
| 3155 | Belleville | MI | Restructuring |

| 3820 | Charlevoix | MI | Marketing Lease |
| 9557 | Grayling | MI | Restructuring |
| 3819 | Hastings | MI | Restructuring |
| 3308 | Lake Orion | MI | Marketing Lease |
| 1170 | Lansing | MI | Restructuring |
| 9693 | Marine City | MI | Restructuring |
| 3841 | Marshall | MI | Restructuring |
| 7031 | Menominee | MI | Restructuring |
| 7068 | Midland | MI | Restructuring |
| 9593 | Oscoda | MI | Restructuring |
| 3379 | Waterford Twp. | MI | Restructuring |
| 9689 | International Falls | MN | Restructuring |
| 3405 | Minneapolis | MN | Restructuring |
| 3059 | St. Paul | MN | Restructuring |
| 9353 | Crystal City | MO | Restructuring |
| 3239 | Kansas City | MO | Marketing Lease |
| 4026 | St. Joseph | MO | Marketing Lease |
| 9520 | Gulfport | MS | Restructuring |
| 7030 | Kalispell | MT | Restructuring |
| 3886 | Asheville | NC | Restructuring |
| 4112 | Asheville | NC | Marketing Lease |
| 2105 | Burlington | NC | Restructuring |
| 7208 | Clemmons | NC | Restructuring |
| 1045 | Durham-Northgate | NC | Restructuring |
| 1405 | Fayetteville | NC | Marketing Lease |
| 2225 | Goldsboro | NC | Marketing Lease |
| 3744 | Kill Devil Hills | NC | Restructuring |
| 9619 | Morehead City | NC | Restructuring |
| 9549 | Morganton | NC | Restructuring |
| 1646 | Pineville | NC | Marketing Lease |
| 4450 | Raleigh | NC | Marketing Lease |
| 3808 | Statesville | NC | Marketing Lease |
| 7626 | Waynesville | NC | Restructuring |
| 4272 | Bismarck | ND | Restructuring |
| 4057 | Fargo | ND | Restructuring |
| 4022 | Grand Forks | ND | Restructuring |
| 9319 | Alliance | NE | Restructuring |
| 2023 | Concord | NH | Restructuring |
| 4448 | Salem | NH | Restructuring |
| 7048 | West Lebanon | NH | Restructuring |
| 3438 | Avenel | NJ | Restructuring |
| 7177 | Belleville | NJ | Restructuring |
| 3393 | GLASSBORO | NJ | Marketing Lease |
| 3499 | Kearny | NJ | Restructuring |
| 9463 | Somers Point | NJ | Restructuring |
| 3071 | Toms River | NJ | Restructuring |
| 7602 | Wall | NJ | Restructuring |

| 3056 | Wayne | NJ | Restructuring |
|------|-------|-----|--------------|
| 4470 | West Long Branch | NJ | Restructuring |
| 3202 | Westwood | NJ | Restructuring |
| 2597 | Farmington | NM | Restructuring |
| 2527 | Las Cruces | NM | Restructuring |
| 3301 | Santa Fe | NM | Restructuring |
| 1709 | Henderson | NV | Marketing Lease |
| 1828 | Las Vegas | NV | Marketing Lease |
| 3592 | Las Vegas | NV | Restructuring |
| 4741 | Batavia | NY | Marketing Lease |
| 9589 | Bath | NY | Restructuring |
| 9423 | Bridgehampton | NY | Restructuring |
| 3415 | Buffalo | NY | Restructuring |
| 4871 | Farmingville | NY | Restructuring |
| 1004 | Garden City | NY | Marketing Lease |
| 9274 | Greenwich | NY | Restructuring |
| 7065 | Horseheads | NY | Restructuring |
| 2744 | Horseheads/Elmira | NY | Restructuring |
| 2584 | Lakewood | NY | Marketing Lease |
| 9415 | Mahopac | NY | Marketing Lease |
| 4034 | Mattydale | NY | Restructuring |
| 2593 | Newburgh | NY | Restructuring |
| 4123 | Niagara Falls | NY | Marketing Lease |
| 3600 | Schenectady | NY | Marketing Lease |
| 1924 | Valley Stream | NY | Restructuring |
| 2683 | Watertown | NY | Marketing Lease |
| 7677 | Wellsville | NY | Restructuring |
| 9392 | West Seneca | NY | Marketing Lease |
| 9416 | White Plains | NY | Restructuring |
| 7383 | Barberton | OH | Restructuring |
| 3286 | Brunswick | OH | Restructuring |
| 3013 | Cleveland | OH | Restructuring |
| 7209 | East Liverpool | OH | Marketing Lease |
| 9096 | Fostoria | OH | Restructuring |
| 7397 | Grove City | OH | Restructuring |
| 7644 | Harrison | OH | Restructuring |
| 4257 | Middleburg Heights | OH | Marketing Lease |
| 1564 | Niles | OH | Marketing Lease |
| 2104 | St Clairsville | OH | Restructuring |
| 4782 | Clinton | OK | Restructuring |
| 3839 | Corvallis | OR | Restructuring |
| 2179 | Medford | OR | Restructuring |
| 2119 | Salem(Lancaster) | OR | Marketing Lease |
| 3361 | Allentown | PA | Marketing Lease |
| 2494 | Altoona | PA | Restructuring |
| 4150 | Altoona | PA | Marketing Lease |
| 1454 | Bensalem/Crnwls Hts | PA | Marketing Lease |

| | | | |
|---|---|---|---|
| 9161 | Berwick | PA | Restructuring |
| 1711 | Camp Hill | PA | Restructuring |
| 3225 | Chambersburg | PA | Restructuring |
| 7293 | Clifton Heights | PA | Restructuring |
| 3737 | Doylestown | PA | Restructuring |
| 2124 | Dubois | PA | Marketing Lease |
| 7192 | Easton | PA | Restructuring |
| 3266 | Edwardsville | PA | Restructuring |
| 3963 | Elizabethtown | PA | Restructuring |
| 9662 | Ephrata | PA | Restructuring |
| 4113 | Erie | PA | Restructuring |
| 3597 | Holmes | PA | Restructuring |
| 7470 | Hummelstown | PA | Marketing Lease |
| 1064 | Langhrn/Oxford Vly | PA | Marketing Lease |
| 7372 | Leechburg | PA | Restructuring |
| 3884 | Matamoras | PA | Marketing Lease |
| 7083 | New Castle | PA | Restructuring |
| 4054 | New Kensington | PA | Marketing Lease |
| 4064 | North Versailles | PA | Marketing Lease |
| 3527 | Philadelphia | PA | Marketing Lease |
| 9409 | Phoenixville | PA | Marketing Lease |
| 4010 | Pittsburgh | PA | Marketing Lease |
| 9438 | Pleasant Hills | PA | Marketing Lease |
| 3136 | Shillington | PA | Restructuring |
| 9539 | Thorndale | PA | Marketing Lease |
| 4713 | Towanda | PA | Restructuring |
| 2114 | Washington | PA | Restructuring |
| 7374 | West Chester | PA | Restructuring |
| 3268 | Wilkes-Barre | PA | Restructuring |
| 3390 | Williamsport | PA | Restructuring |
| 3810 | Willow Street | PA | Restructuring |
| 3949 | Wind Gap | PA | Restructuring |
| 4732 | Aguadilla | PR | Restructuring |
| 7566 | Arecibo | PR | Restructuring |
| 7570 | Bayamon | PR | Restructuring |
| 7419 | Caguas | PR | Restructuring |
| 7665 | Carolina | PR | Restructuring |
| 2675 | Guayama | PR | Restructuring |
| 2355 | Hatillo(Arecibo) | PR | Restructuring |
| 3993 | Juana Diaz | PR | Restructuring |
| 1935 | Mayaguez | PR | Restructuring |
| 2385 | Naranjito | PR | Restructuring |
| 3896 | San German | PR | Marketing Lease |
| 4490 | San Juan | PR | Marketing Lease |
| 4494 | Trujillo Alto | PR | Restructuring |
| 7752 | Yauco | PR | Restructuring |
| 4016 | Greenville | SC | Restructuring |

| 7616 | Lexington | SC | Restructuring |
| 7274 | Mauldin | SC | Marketing Lease |
| 7043 | Rock Hill | SC | Marketing Lease |
| 7062 | Sumter | SC | Restructuring |
| 4141 | West Columbia | SC | Restructuring |
| 4170 | Rapid City | SD | Restructuring |
| 1115 | Chattanooga | TN | Marketing Lease |
| 2335 | Clarksville | TN | Marketing Lease |
| 7460 | Knoxville | TN | Marketing Lease |
| 9621 | Lebanon | TN | Restructuring |
| 2156 | MARYVILLE | TN | Marketing Lease |
| 2226 | MURFREESBORO | TN | Marketing Lease |
| 9735 | Sevierville | TN | Restructuring |
| 1395 | West Town | TN | Marketing Lease |
| 1137 | Austin | TX | Marketing Lease |
| 1317 | El Paso | TX | Restructuring |
| 2537 | Harlingen | TX | Marketing Lease |
| 2487 | Killeen | TX | Restructuring |
| 4389 | McAllen | TX | Restructuring |
| 1629 | Pharr | TX | Restructuring |
| 2637 | Port Arthur | TX | Restructuring |
| 1207 | Richardson | TX | Restructuring |
| 1097 | San Antonio | TX | Restructuring |
| 2617 | Victoria | TX | Marketing Lease |
| 9794 | St. George | UT | Restructuring |
| 3471 | Chesapeake | VA | Restructuring |
| 1274 | Chesterfield | VA | Restructuring |
| 1024 | Falls Church | VA | Restructuring |
| 2694 | Fredericksburg | VA | Restructuring |
| 2395 | Manassas | VA | Restructuring |
| 7717 | Waynesboro | VA | Marketing Lease |
| 7259 | Williamsburg | VA | Marketing Lease |
| 2784 | Winchester | VA | Restructuring |
| 7413 | Frederiksted | VI | Restructuring |
| 3972 | St. Croix | VI | Restructuring |
| 3829 | St. Thomas | VI | Restructuring |
| 7793 | St. Thomas | VI | Restructuring |
| 3133 | Bellingham | WA | Marketing Lease |
| 2049 | Everett | WA | Restructuring |
| 2329 | Kennewick(Pasco) | WA | Restructuring |
| 2330 | Puyallup | WA | Marketing Lease |
| 2029 | Union Gap | WA | Restructuring |
| 7034 | Walla Walla | WA | Restructuring |
| 7648 | Mauston | WI | Restructuring |
| 3692 | Oconomowoc | WI | Restructuring |
| 3851 | Racine | WI | Restructuring |
| 7649 | Ripon | WI | Restructuring |

| 3750 | Waupaca | WI | Restructuring |
|------|---------|-----|---------------|
| 4188 | Charleston | WV | Marketing Lease |
| 4442 | Charleston | WV | Restructuring |
| 3484 | Elkview | WV | Restructuring |
| 2304 | Westover/Morgantown | WV | Marketing Lease |
| 2341 | Casper | WY | Marketing Lease |
| 4736 | Casper | WY | Marketing Lease |
| 7139 | Jackson | WY | Restructuring |

## SCHEDULE B
## Compensation

### A.    Definitions

"Designated Commission Rate" – shall be defined as, with respect to the Net Proceeds of any individual Lease Sale or Property Sale, (i) 2.50% of Net Proceeds up to $5 million, (ii) 2.00% of Net Proceeds in excess of $5 million up to $10 million, (iii) 1.50% of Net Proceeds in excess of $10 million up to $20 million and (iv) 1.00% of Net Proceeds in excess of $20 million.

"Lease Sale" - shall be defined as the sale, whether all or part, of a Lease and includes the sale of designation rights with respect thereto.

"Net Proceeds" - shall be defined as the total consideration paid to the Debtor by a landlord, tenant, investor, purchaser or any other party to purchase a Lease or Property or any right related to a Lease or Property in connection with a Lease Sale or Property Sale, in each case net of (i) any amounts paid to third party brokers that might represent a purchaser, (ii) with respect to a Lease Sale, any cure costs payable in connection such Lease Sale; (iii) any expenses incurred by A&G in connection with such Lease Sale or Property Sale that are reimbursable under this Agreement; and (iv) any credits and pro-rations, transfer, recording and title premiums and other fees, costs and expenses split in accordance with custom and born by debtors as sellers . It includes, but is not limited to, any fees and any other form of currency paid or waived by the Landlord, sub-tenant or other third party to the Debtor in relation to such Lease Sale or Property Sale. This list is not meant to be exhaustive and Gross Proceeds shall include any consideration or other quantifiable economic benefit paid or payable to the Debtor in conjunction with such Property Sale or Lease Sale.

"Property Sale" - shall be defined as the sale, whether all or part, of a Property and includes the sale of designation rights with respect thereto.

### B.    Fees

A&G shall be compensated for the Services as follows:

1. Base Fee.  Sears shall pay A&G a base monthly fee in the amount of one hundred thousand dollars ($100,000.00) per month for each of the first two months of A&G's retention.  The first installment shall be due within one (1) business day after the date on which this Agreement is approved by the Bankruptcy Court.  The second installment shall be due on the earlier of (i) the date that is one (1) month after the Agreement Date (or, if such day is not a business day, the immediately following business day) and (ii) the day that is one (1) business day after the date on which this Agreement is approved by the Bankruptcy Court.  The base fee is non-refundable once earned and shall be applied to offset fees and expenses due under this Agreement.

    2.   <u>Lease Sales</u>.  For each Lease Sale that is both actually consummated and obtained by A&G at the express written request of Sears made after the date hereof with respect to the applicable Lease, A&G shall earn and be paid a fee equal to the Designated Commission Rate of the Net Proceeds of such Lease Sale.

    3.   <u>Property Sales</u>.  For each Property Sale that is both actually consummated and obtained by A&G at the express written request of Sears made after the date hereof with respect to the applicable Lease, A&G shall earn and be paid a fee equal to the Designated Commission Rate of the Net Proceeds of such Property Sale.

C.      **<u>Payment of Fees</u>**.

If Sears expressly requests in writing after the date hereof that A&G pursue a Lease Sale or Property Sale with respect to a specific Lease or Property and A&G obtains such a Lease Sale or Property Sale, A&G shall be entitled to the fees specified above in connection therewith upon consummation of such Lease Sale or Property Sale and shall be paid such fees within five (5) days after the consummation of such Lease Sale or Property Sale obtained by A&G.  Notwithstanding anything to the contrary set forth in this Agreement, the decision to consummate any potential Lease Sale or Property Sale shall be left to the sole discretion of Sears and no fee in respect of any Lease Sale or Property Sale shall be payable unless such Lease Sale or Property Sale is consummated.

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                  :

In re                                 :         **Chapter 11**

SEARS HOLDINGS CORPORATION, *et al.*,   :         **Case No. 18-23538 (RDD)**
                                   :

       Debtors.[1]                 :         **(Jointly Administered)**
                                   :

---------------------------------------------------------------x

## ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF A&G
## REALTY PARTNERS, LLC AS THE DEBTORS' REAL ~~ESTATE~~ ESTATE
## CONSULTANT AND ADVISOR, EFFECTIVE AS OF NOVEMBER 6, 2018

Upon the application, dated December 6, 2018 (ECF No. ~~[ ]~~1079) (the

"**Application**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors

in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to

sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and

Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

Rules"), for entry of an order authorizing the Debtors to retain and employ A&G Realty Partners, LLC ("**A&G**"), pursuant to the terms of that certain Real Estate Services Agreement dated November 6, 2018, annexed ~~to the Application~~hereto as **Exhibit 1** (the "**Services Agreement**"), all as more fully set forth in the Application; and upon the Declaration of Michael Jerbich in support of the Application annexed ~~thereto~~to the Application as **Exhibit 2** ~~(the "Jerbich Declaration")~~; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Application having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and ~~the Court having held a hearing to consider the relief requested in the Application (the "Hearing"); and upon the record of the Hearing, and~~no objection having been filed and the Debtors having submitted a certificate of no objection; and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that the relief requested is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Application is granted to the extent set forth herein.

WEIL:\96842776\1\73219.0006WEIL:\96842776\2\73219.0006

2.    The Services Agreement, annexed hereto as **Exhibit 1**, is approved to the extent set forth herein.

3.    ~~2.~~ The Debtors are authorized to employ and retain A&G as their real estate consultant and advisor in these chapter 11 cases in accordance with the terms of the Services Agreement.

4.    ~~3.~~ A&G is authorized to render the following Services to the Debtors:

(a)    Consult with and advise the Debtors (and, to the extent requested by the Debtors, negotiate with applicable landlords on behalf of the Debtors) in order to assist the Debtors in obtaining modifications of the Leases;

(b)    To the extent expressly requested by the Debtors in writing, negotiate with the applicable landlords and other third parties on behalf of the Debtors in order to assist the Debtors in obtaining Lease Sales;

(c)    To the extent expressly requested by the Debtors in writing, negotiate with third parties on behalf of the Debtors in order to assist the Debtors in obtaining Property Sales; and

(d)    Report periodically to the Debtors regarding the status of the Services.

5.    ~~4.~~ All of A&G's compensation as set forth in the Services Agreement including, without limitation, the Base Fee, the Lease Sale Fee, and the Property Sale Fee, and the expense reimbursement and indemnification and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and A&G shall be compensated, reimbursed and indemnified pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Services Agreement and this Order.

6.    ~~5.~~ A&G will submit invoices to the Debtors, the Office of the United States Trustee for Region 2, the Creditors' Committee, and the lenders under the Debtors' postpetition debtor-in-possession secured financing (*see* ECF Nos. 951 and 955) for the payment of compensation for professional services rendered and reimbursement of expenses

3

incurred in connection with these chapter 11 cases in accordance with the terms of the Services Agreement when such compensation becomes due and owing and such expenses are incurred. Such parties shall have fifteen (15) days to review and dispute any such invoice submitted by A&G, and if no such disputes are received, without any further order of the Court, the Debtors shall be authorized to pay such A&G invoices.  If any objection is received, the Debtors shall withhold the payment of the portion of the payment that is objected to and promptly pay the remainder.  All objections that are not resolved shall be preserved and presented to the Court for determination.

7.    6.  A&G shall work cooperatively with other real estate advisors retained by the Debtors in the above-captioned chapter 11 cases to integrate any work conducted by the other professionals on behalf of the Debtors, so as to avoid duplication of services provided by any of the Debtor's other such retained professionals.

8.    7.   A&G shall file a final fee application with a summary of fees earned and expenses incurred along with a summary of the fees and expenses that have been paid.

9.    Notwithstanding anything in the Application or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) DIP ABL Order and the Interim Junior DIP Order (*see* ECF Nos. 951 and 955); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP ABL Order).

WEIL:\96842776\1\73219.0006WEIL:\96842776\2\73219.0006

10.     To the extent there is any inconsistency between the terms of any of the DIP ABL Order, the Interim Junior DIP Order and this Order, the terms of the DIP ABL Order or the Interim Junior DIP Order, as applicable, shall control.

11.     8.  To the extent there is inconsistency between the terms of the Application, the Services Agreement, and this Order, the terms of this Order shall govern.

12.     9.  The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

13.     10.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
       White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\96842776\1\73219.0006WEIL:\96842776\2\73219.0006

Exhibit 1

Services Agreement

WEIL:\96832033\1\73219.0006

FINAL – 11.06.18



# REAL ESTATE SERVICES AGREEMENT WITH SEARS HOLDING CORPORATION (CHAPTER 11)

This Real Estate Services Agreement including the Schedules attached hereto (collectively the "Agreement") is made as of November 6, 2018 (the "Agreement Date") by and between **A&G REALTY PARTNERS**, LLC, a New York limited liability company, with its principal place of business at 445 Broadhollow Road, Suite 410, Melville, New York 11797 ("A&G") and **SEARS HOLDINGS CORPORATION,** a Delaware corporation with its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179 ("Sears" and each of A&G and Sears, a "Party" and collectively the "Parties").

<u>WITNESSETH:</u>

**WHEREAS**, Sears and certain of its subsidiaries (collectively, together with Sears, the "Debtor") have filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") seeking relief under Title 11 of the United States Code ("Bankruptcy Code");

**WHEREAS**, the Debtor will continue to operate its businesses and manage its properties as "debtor-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court;

**WHEREAS,** the Debtor leases (each a "Lease" and collectively the "Leases") and owns certain real properties (each a "Property" and collectively the "Properties");

**WHEREAS,** Sears, on behalf of itself and the other entities comprising the Debtor, desires to obtain certain real estate advice and services in relation to the Leases and Properties;

**WHEREAS,** specifically Sears, on behalf of itself and the other entities comprising the Debtor, desires to: (i) reduce its obligations under certain of its Leases by modifying the terms and conditions of the Leases; (ii) sell certain of its Leases (including, all or part of the Leases and the sale of the designation rights) (iii) sell certain of its Properties; and (iv) obtain certain other real estate consulting and advisory services;

**WHEREAS**, the Leases and/or Properties with respect to which Sears, on behalf of itself and the other entities comprising the Debtor, is seeking Services (as defined below) are set forth on Schedule A, which is attached hereto and made a part hereof; and

**WHEREAS**, under the terms and conditions contained in this Agreement Sears, on behalf of itself and the other entities comprising the Debtor, desires to retain A&G and A&G is willing to provide such Services.

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.  <u>Services to be Provided.</u> In accordance with the terms and conditions of this Agreement, A&G will provide the following services (the <u>"Services"</u>):

    a) consult with and advise the Debtor (and, to the extent requested by the Debtor, negotiate with applicable landlords on behalf of the Debtor) in order to assist the Debtor in obtaining modifications of the Leases;

    b) to the extent expressly requested by Sears in writing after the date hereof, negotiate with the applicable landlords and other third parties on behalf of the Debtor in order to assist the Debtor in obtaining Lease Sales (as defined on Schedule B attached hereto);

    c) to the extent expressly requested by Sears in writing after the date hereof, negotiate with third parties on behalf of the Debtor in order to assist the Debtor in obtaining Property Sales (as defined on Schedule B attached hereto); and

    d) report periodically to the Debtor regarding the status of the Services.

2.  <u>Term of Agreement.</u> Subject to any Bankruptcy Court approval required, this Agreement shall be for a term of two (2) months following the Agreement Date (the "Term"). The Term may be extended or renewed by written agreement of the Parties.

3.  <u>Compensation.</u> Subject to any Bankruptcy Court approval required, the compensation for the Services is set forth on <u>Schedule B,</u> which is attached hereto and incorporated herein (<u>"Compensation"</u>).

4.  <u>Additional Services.</u> A&G may provide additional services requested by Sears that are not otherwise specifically provided for in this Agreement. Any additional services will be mutually agreed upon by the Parties and documented in a separate agreement.

5.  <u>Recordkeeping.</u> The Services to be provided by A&G pursuant to this Agreement are, in general, transactional in nature. Accordingly, A&G will not bill Sears by the hour or maintain time records.

6.  <u>Expenses and Disbursements.</u> A&G shall not be responsible for any transactional costs incurred by it or the Debtor in connection with its retention and Services. Subject to any Bankruptcy Court approval required, Sears shall reimburse A&G for A&G's reasonable and documented out-of-pocket expenses (including, but not

limited to, reasonable and documented out-of-pocket mailing, marketing and travel expenses) incurred in connection with its retention and provision of Services.

7.    <u>Separate Engagements.</u> Sears acknowledges that A&G may be engaged to provide the same or similar services as those referenced herein to other persons or entities and that any such engagement shall not constitute or be deemed to be a violation of this Agreement, provided that it is not a conflict of interest or otherwise materially interferes with A&G's ability to provide the Services. A&G will notify Sears of any potential conflicts as soon as reasonably practicable. A&G hereby acknowledges that the Debtor may retain other persons or entities to provide the same or similar services as those referenced herein to the Debtor and that any such engagement shall not constitute or be deemed to be a violation of this Agreement.

8.    <u>Debtor's Representative.</u> Jane Borden will be the representative of Sears (the "Sears Representative") in dealing with A&G. Sears reserves the right, at any time and from time-to-time, upon written notice to A&G, to designate a successor representative or an additional representative and to limit the authority of the representative in any respect. A&G will report regularly to the Sears Representative in order to keep her fully apprised of A&G's performance. The designated principal representatives for A&G will be Michael Jerbich and Emilio Amendola. If A&G seeks to change its principal representatives, Sears agrees to reasonably consent to any proposed replacement.

9.    <u>Debtor Cooperation.</u> Sears shall provide A&G with all information concerning the Leases and Properties reasonably necessary for the performance of A&G's obligations hereunder, including, but not limited to, copies of the Leases, the current rents, taxes and other charges relating to the Leases and Properties, the premise sizes of the Leases, the commencement and expiration dates of the Leases, any Lease options, up to date landlord contact information (including email and phone number information for each landlord), copies of the Property deeds, any Property condition reports, environmental surveys, any land surveys and any other surveys, reports or other documents relating to the Leases and/or Properties and/or regulations, local ordinances or laws and rules that relate to the Properties and such other information as A&G reasonably requests for the performance of its Services (the "Lease and Property Information"). Sears also agrees to complete Schedule A attached hereto.

It is understood and agreed by the Parties that A&G shall have no obligation to verify the accuracy of such information and that A&G shall have no liability whatsoever resulting from, whether directly or indirectly, the inaccuracy or incompleteness of the Lease and Property Information. Both Parties understand and agree that A&G shall base its Services on the Lease and Property Information and any material inaccuracies, discrepancies or omissions in the information may affect the Services provided, including but not limited to, a delay in the provision of the Services. Furthermore, both Parties understand and agree that

the commencement of this Agreement and the continuation of its Services are contingent upon A&G's receipt of such information.

10.   Use of Debtor Name. A&G may use the Debtor's name and logo to identify the Debtor as one of A&G's clients.

11.   No Authority to Execute Agreements. A&G shall have no right or power to enter into any agreement in the name of or on behalf of the Debtor or to otherwise obligate the Debtor in any manner unless authorized in writing.

12.   Meetings and Written Reports. After the commencement of the Agreement, A&G shall meet with, in a manner agreed to by the Parties, the Sears Representative(s) to review the Debtor's goals, objectives and financial parameters. Thereafter, A&G will meet with or participate in telephone conferences with the Sears Representative(s) regarding the status of the Services as mutually agreed to by the Parties.

13.   Disclosures/Reports. All opinions and advice (written or oral) given by A&G to the Debtor in connection with this Agreement are intended solely for the benefit and use of the Debtor and no such opinion or advice shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, other than as provided herein, without the prior written consent of A&G.

If the Debtor is required by applicable law, regulation or rule (including, without limitation, in connection with its obligations to seek approval from the Bankruptcy Court) or receives a subpoena, summons or court order by any federal, state or other governmental authority (including any court or regulatory agency) having jurisdiction over the Debtor or any other compulsory legal process relating in any respect to A&G or its Services, the Debtor may disclose the opinions or advice subject thereto, but shall promptly notify A&G, if legally permissible, so that A&G may seek to obtain a protective order for such opinions or advice. If A&G is unable to obtain a protective order and the Debtor is required to provide such opinions or advice, Sears agrees to provide (and to use commercially reasonable efforts to cause the other entities comprising the Debtor to provide) only those opinions or advice which are legally required and to use reasonable efforts to ensure the confidentiality of such opinions or advice.

A&G agrees to keep confidential all information provided to it by (or on behalf of) the Debtor and any information, data, advice or opinions derived therefrom (collectively, the "Debtor Information") and will not, without the consent of the Debtor, disclose or use, for any purpose other than providing its services hereunder, any of the Debtor Information, unless requested by a regulatory body, required by applicable law, rule or regulation or otherwise compelled by compulsory legal process to disclose the Debtor Information, provided that A&G shall, where legally permitted, promptly notify the Debtor of any such request, requirement or compunction so that it may seek a protective order or other

5

appropriate remedy prior to disclosure. If the Debtor is unable to obtain a protective order and A&G is required to provide such opinions or advice, A&G agrees to provide only such Debtor Information which is legally required and to use reasonable efforts to ensure the confidentiality of such Debtor Information. In connection with performing A&G's services hereunder, the Debtor may from time to time specifically authorize A&G to discuss the Debtor Information or deliver it to third parties, but any such communication of Information will be similarly confidential. The provisions of this paragraph shall survive termination of this Agreement until the date that is two years after the date of such termination.

14.    <u>Independent Contractor.</u> Each Party acknowledges and agrees that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between any entity comprising the Debtor and A&G. A&G shall provide the Services as an independent contractor and not as an employee, agent, partner or joint venture of any entity comprising the Debtor.

15.    <u>Early Termination.</u> Either Party may terminate this Agreement upon thirty days' prior written notice to the other Party in accordance with the notice provision below. Additionally, if either Party materially fails to perform its obligations in accordance with the terms herein, and does not cure such failure within a reasonable period of time after written notice of default, the other Party will have the right to terminate this Agreement by notice of termination to the nonperforming Party, effective ten (10) calendar days after the date of such notice. Furthermore, if A&G becomes unable to perform its duties as a result of a legal, contractual or regulatory restriction, A&G shall have the right to terminate this Agreement. Any rights or obligations incurred or accrued by either Party prior to termination shall survive termination of this Agreement

16.    <u>Assignment.</u> Neither Party may delegate or assign its rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Party.

17.    <u>Notices.</u> Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

To any entity comprising the Debtor:

Sears Holding Corporation

3333 Beverly Road
Hoffman Estates, Illinois 60179
Attention: Jane Borden
Tel: (847) 286-5922
Email: Jane.Borden@searshc.com

with a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention: Jacqueline Marcus
Tel: (212) 310-8130
Email: Jacqueline.Marcus@weil.com

To A&G:

A&G Realty Partners, LLC
525 W Monroe St, Suite 2330
Chicago, IL 60661
Attn: Michael Jerbich
Tel: o (312) 454-2057
     m (773) 294-5354
Email: michael@agrealtypartners.com

A&G Realty Partners, LLC
445 Broadhollow Rd, Suite 410
Melville, NY 11747
Attn: Emilio Amendola
Tel: (631) 465-9507
Email: emilio@agrealtypartners.com

18.      Representations, Warranties and Covenants. Subject to any Bankruptcy Court approval required, each Party has all requisite power and authority to enter into this Agreement. This Agreement has been validly authorized by all necessary corporate action and constitutes a legal, valid and binding agreement of the Sears and A&G. Subject to any Bankruptcy Court approval required, each Party represents that this Agreement does not and will not violate any applicable law or conflict with any material agreement, instrument, judgment, order or decree to which it is a party or by which it is bound. Furthermore, each Party agrees that it will comply with all applicable laws, rules, regulations, orders or decrees during the term of this Agreement in performing its obligations hereunder. Each Party agrees to deal with the other fairly and in good faith so as to allow each Party to perform their duties and earn the benefit of this Agreement. A&G agrees to

7

utilize reasonable best efforts and diligence to achieve the purpose of this Agreement.

19.  <u>Bankruptcy.</u> Sears agrees to promptly apply to the Bankruptcy Court for an order, in a form reasonably acceptable to A&G, authorizing Sears to retain and compensate A&G in accordance with the terms of this Agreement and to use its commercially reasonable efforts to obtain such order. Sears agrees to seek the hiring and retention of A&G under sections 327 and 328 of the Bankruptcy Code. Sears will provide A&G with a copy of the pleadings requesting retention of A&G prior to submission to the Bankruptcy Court for A&G's review and comments and advise A&G of any objection or hearings pertaining to A&G's retention. The order authorizing A&G's retention must be reasonably acceptable to A&G and A&G's obligations hereunder are conditioned upon the grant of such order; provided that A&G expects to begin providing the Services as of the date of this Agreement. Furthermore, if such order is not obtained within sixty days from the date that it is filed, A&G shall have the right to terminate this Agreement at any time thereafter. If a reasonably acceptable order is not obtained authorizing A&G's services and fees as set forth herein, Sears agrees to amend the application in conjunction with and subject to the approval of A&G and request a hearing to review the amended application. In the event that Sears is unable to obtain an acceptable order authorizing the hiring and retention of A&G under the terms of this Agreement and the Agreement is terminated, A&G reserves the right to seek a substantial contribution claim for any rights or obligations incurred or accrued prior to such termination.

20.  <u>Survival of Fee.</u> In the event that within six (6) months following the termination of this Agreement, the Debtor or its successors or assigns, enters into a Lease Sale or Property Sale as to which (a) Sears expressly requested in writing after the date hereof that A&G provide Services, (b) A&G's provision of the Services in connection with such Lease Sale or Property Sale after the date of such request is the proximate cause of such Lease Sale or Property Sale and (c) the consummation of such Lease Sale or Property Sale would have entitled A&G to a fee pursuant to this Agreement if not terminated, then in that event, A&G shall be entitled to and paid its fee pursuant to the terms of this Agreement notwithstanding the fact that the Agreement has terminated. On or prior to the date of termination of this Agreement, A&G shall deliver to Sears a list of (i) all Lease Sales and Property Sales on which Sears has expressly requested in writing after the date hereof that A&G provide Services and A&G has provided Services following such request and (ii) all third parties with who A&G has initiated discussions in connection with any such Lease Sale or Property Sale. No fee shall be payable pursuant to this Section 20 with respect to any Lease Sale or Property Sale not described on such list.

21.  <u>Intellectual Property.</u> A&G may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder. Notwithstanding the delivery of any reports by A&G to

the Debtor, A&G shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the

Services) and in any working papers compiled in connection with the Services.

22.    <u>Indemnification.</u> Subject to any Bankruptcy Court approval required, Sears agrees to indemnify A&G and its respective affiliates, officers, directors, employees, agents and independent contractors, and hold each of them harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted against, resulting from (directly or indirectly), or related to the Services or actions or omissions of A&G or Sears taken pursuant to this Agreement, (including, but not limited to, any covenants, representations or warranties contained herein) or in any written agreement entered into in connection herewith except to the extent that such claims or liabilities arise as a direct result of A&G's gross negligence, willful misconduct or material breach of this Agreement.

The Indemnification Provisions set forth above shall be subject during the pendency of Sears' chapter 11 case to the following:

a.    A&G shall not be entitled to indemnification, contribution or reimbursement pursuant to the Services Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Bankruptcy Court;

b.    Sears shall have no obligation to indemnify A&G, or provide contribution or reimbursement to A&G, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&G's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which Sears alleges the breach of A&G's contractual obligations unless the Bankruptcy Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to <u>In re United Artists Theatre Company,</u> 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&G's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&G should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Proposed Order; and

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in Sears' case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 case, A&G believes that it is entitled to the payment of any amounts by Sears on account of Sears' indemnification, contribution, and/or reimbursement obligations under this Services Agreement (as modified by any retention application or order issued by the Bankruptcy Court), including without limitation the advancement of defense costs, A&G must file an application with the Bankruptcy Court, and Sears may

not pay any such amounts to A&G before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by A&G for indemnification, contribution, or reimbursement, and not a provision limiting the duration of Sears' obligation to indemnify A&G. All parties in interest shall retain the right to object to any demand by A&G for indemnification, contribution or reimbursement.

23.     <u>Limitation on Liability.</u> Neither Party shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder. Neither Party shall be liable if it is unable to perform its responsibilities hereunder as a result of events beyond its control. Furthermore, in no event shall A&G's liability for a default or breach of this Agreement exceed the amount of fees paid to A&G hereunder.

24.     <u>Binding Effect. No Third Party Beneficiaries.</u> This Agreement binds and inures to the benefit of the Parties hereto and their respective successors and permitted assigns and except as expressly provided herein, is not intended to confer any rights or remedies upon any person not a party to this Agreement.

25.     <u>Waivers and Amendments.</u> Waiver by either Party of any default by the other Party shall not be deemed a waiver of any other default. This Agreement (including the Schedule (s) attached hereto) may not be waived, amended, or modified by either Party unless in writing and signed by the Parties hereto.

26.     <u>Severability.</u> If any provision, or any portion of any provision, contained in this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, then it is the intent of the Parties to modify or limit such provision or portion thereof so as to be valid and enforceable to the extent permitted under applicable law. In the event that such provision or portion thereof cannot be modified, then such provision or portion thereof shall be deemed omitted and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

27.     <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

28.     <u>Counterpart Execution/Facsimile and Electronic Signatures.</u> This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document. Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

29.   <u>Governing Law.</u> This Agreement shall be governed by the laws of the State of New York without reference to its conflict of laws rules.

The Parties agree that (a) during the pendency of Sears' bankruptcy case, the Bankruptcy Court (and the United States District Court and United States Court of Appeal with appellate jurisdiction over the Bankruptcy Court) and (b) following closure or dismissal of Sears' bankruptcy case, any federal or state court located in the State of New York (and any appellate court therefrom) shall, as applicable, have exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each Party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party. Each Party hereby irrevocably and unconditionally waives any objection to the laying of venue in any such court with respect to any dispute arising out of this Agreement or the transactions contemplated hereby and irrevocably and unconditionally waives the defense of an inconvenient forum.

The provisions of this Section 29 shall survive termination of this Agreement.

30.   <u>Waiver of Jury Trial.</u> Each of the Parties unconditionally waives, to the extent legally permissible, the right to a jury trial in connection with any claim arising out of or related to this Agreement.

31.   <u>Headings.</u> The section headings and use of defined terms in the singular or plural tenses in this Agreement are solely for the convenience of the Parties.

32.   <u>No Presumptions.</u> This Agreement by shall be deemed drafted by both Parties and there shall be no presumption for or against either Party in the interpretation of this Agreement.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Agreement Date.


SEARS HOLDINGS CORPORATION

By:
Name: Jane S. Borden
Title: President – Real Estate


A&G REALTY PARTNERS, LLC

By:
Name:  Michael Jerbich
Title:  Principal

**<u>Schedules</u>**

Schedule A Leases/Properties
Schedule B Compensation

## SCHEDULE A

## **Leases/Properties**

***PLEASE
STATE EACH
LEASE/PROPER
TY AND
SERVICE
REQUESTED
****

ATTACHED

| Store # | City | State | Status |
|---|---|---|---|
| 2027 | Wasilla | AK | Restructuring |
| 2306 | Gadsden | AL | Marketing Lease |
| 2126 | Hot Springs | | Restructuring |
| 9711 | Russellville | | Marketing Lease |
| 3707 | Lake Havasu City | AZ | Restructuring |
| 1728 | Tucson | AZ | Restructuring |
| 4996 | Tucson | AZ | Restructuring |
| 7619 | Atascadero | | Restructuring |
| 9608 | Auburn | | Restructuring |
| 1018 | Baldwin Hills | | Restructuring |
| 7756 | Bishop | | Restructuring |
| 1008 | Boyle | | Restructuring |
| 7165 | Camarillo | | Restructuring |
| 1678 | Carlsbad | | Restructuring |
| 3086 | Chico | | Restructuring |
| 1098 | Clovis | | Restructuring |
| 1368 | Concord | | Restructuring |
| 7098 | Concord | | Restructuring |
| 1388 | Costa Mesa | | Marketing Lease |
| 1309 | Downey | | Restructuring |
| 2628 | Eureka | | Restructuring |
| 3725 | Freedom | | Restructuring |
| 9746 | Grass Valley | | Restructuring |
| 2028 | Hemet | | Restructuring |
| 3748 | Hollister | | Restructuring |
| 4819 | Lakeport | | Restructuring |
| 3982 | Lemoore | | Marketing Lease |
| 9328 | Long Beach | | Restructuring |
| 3345 | Modesto | | Marketing Lease |
| 1998 | Montebello | | Marketing Lease |
| 4421 | North Hollywood | | Restructuring |
| 3842 | Oakdale | | Restructuring |
| 3483 | Ontario | | Marketing Lease |
| 1378 | Orange | | Restructuring |
| 9551 | Paradise | | Restructuring |
| 1048 | Pasadena | | Restructuring |
| 3501 | Petaluma | | Restructuring |
| 1019 | Pleasanton | | Marketing Lease |
| 1818 | Rancho Cucamonga | | Restructuring |
| 4349 | Redwood City | | Restructuring |
| 4706 | Riverside | | Marketing Lease |
| 7175 | Riverside | | Restructuring |
| 3412 | Salinas | | Restructuring |
| 2138 | Santa Barbara | | Marketing Lease |
| 9797 | Scotts Valley | | Restructuring |
| 9153 | South Lake Tahoe | | Restructuring |

| | | | |
|---|---|---|---|
| 1288 | Stockton | CA | Restructuring |
| 3174 | Stockton | CA | Restructuring |
| 4751 | Tehachapi | CA | Restructuring |
| 2059 | Tracy | CA | Restructuring |
| 2829 | Victorville | CA | Restructuring |
| 9761 | Visalia | CA | Marketing Lease |
| 2238 | Yuba City | CA | Restructuring |
| 1141 | Aurora | | Restructuring |
| 1131 | Centennial | | Marketing Lease |
| 1467 | Ft Collins | | Restructuring |
| 7329 | Loveland | | Restructuring |
| 4453 | Pueblo | | Restructuring |
| 1134 | Milford | CT | Marketing Lease |
| 3216 | Vernon | CT | Restructuring |
| 7109 | Watertown | CT | Restructuring |
| 4807 | Bear | DE | Restructuring |
| 3873 | Wilmington | DE | Restructuring |
| 3317 | Boca Raton | FL | Restructuring |
| 1007 | Brandon | FL | Restructuring |
| 2485 | Brooksville | FL | Restructuring |
| 1125 | Coral Gables | FL | Restructuring |
| 4893 | Ellenton | FL | Restructuring |
| 3424 | Gainesville | FL | Marketing Lease |
| 3818 | Hollywood | FL | Restructuring |
| 2315 | JENSEN BEACH | FL | Marketing Lease |
| 9614 | Key Largo | FL | Restructuring |
| 3269 | Lantana | FL | Restructuring |
| 2745 | Leesburg | FL | Restructuring |
| 9224 | Marathon | FL | Restructuring |
| 3793 | Miami | FL | Marketing Lease |
| 4728 | Miami | FL | Restructuring |
| 2056 | Mry Est/Ft Wltn Bch | FL | Marketing Lease |
| 1456 | Oviedo | FL | Restructuring |
| 2145 | Port Charlotte | FL | Restructuring |
| 1066 | The Avenues | FL | Restructuring |
| 7294 | Vero Beach | FL | Restructuring |
| 3713 | Covington | | Marketing Lease |
| 3978 | Peachtree City | | Marketing Lease |
| 1681 | Honolulu | HI | Restructuring |
| 2148 | Kahului Maui(Sur) | HI | Restructuring |
| 9222 | Cherokee | IA | Marketing Lease |
| 3097 | Council Bluffs | IA | Marketing Lease |
| 7033 | Lewiston | ID | Restructuring |
| 7006 | Twin Falls | ID | Restructuring |
| 4381 | Bridgeview | IL | Restructuring |
| 4297 | Moline | IL | Marketing Lease |
| 9348 | Norridge | IL | Marketing Lease |
| 9124 | Elwood | IN | Restructuring |

| | | | |
|---|---|---|---|
| 1470 | Greenwood | IN | Marketing Lease |
| 9354 | Griffith | IN | Marketing Lease |
| 3251 | Indianapolis | IN | Marketing Lease |
| 3823 | Jasper | IN | Marketing Lease |
| 7243 | Kokomo | IN | Restructuring |
| 9030 | Peru | IN | Restructuring |
| 7246 | Richmond | IN | Restructuring |
| 2600 | Terre Haute | IN | Marketing Lease |
| 7042 | Valparaiso | IN | Restructuring |
| 9122 | Warsaw | IN | Restructuring |
| 4215 | Kansas City | KS | Marketing Lease |
| 7169 | Salina | KS | Marketing Lease |
| 2546 | Bowling Green | KY | Marketing Lease |
| 3029 | Erlanger | KY | Restructuring |
| 7229 | Grayson | KY | Marketing Lease |
| 1790 | Louisville-Okolona | KY | Marketing Lease |
| 3941 | Russell Springs | KY | Marketing Lease |
| 7255 | Somerset | KY | Restructuring |
| 1226 | Metairie | LA | Restructuring |
| 4810 | Metairie | LA | Restructuring |
| 7223 | Metairie | LA | Marketing Lease |
| 7104 | Acton | | Restructuring |
| 1213 | Auburn | | Restructuring |
| 3288 | Billerica | | Restructuring |
| 1283 | Braintree | | Restructuring |
| 4407 | Brockton | | Restructuring |
| 1223 | Brockton-Westgate | | Restructuring |
| 3040 | Hyannis | | Restructuring |
| 3486 | Somerville | | Restructuring |
| 9692 | Webster | | Restructuring |
| 1725 | Annapolis | | Restructuring |
| 3256 | Baltimore | | Restructuring |
| 3131 | Frederick | | Restructuring |
| 1013 | Glen Burnie | | Restructuring |
| 3172 | Hagerstown | | Restructuring |
| 3798 | Hyattsville | | Restructuring |
| 3807 | Prince Frederick | | Marketing Lease |
| 1304 | Silver Spring | | Restructuring |
| 4399 | Silver Spring | | Restructuring |
| 7673 | Stevensville | | Restructuring |
| 2963 | Westminster | | Marketing Lease |
| 3021 | Auburn | | Restructuring |
| 7133 | Augusta | | Restructuring |
| 2203 | Brunswick | | Restructuring |
| 3380 | Waterville | | Marketing Lease |
| 3155 | Belleville | MI | Restructuring |

| | | | |
|---|---|---|---|
| 3820 | Charlevoix | MI | Marketing Lease |
| 9557 | Grayling | MI | Restructuring |
| 3819 | Hastings | MI | Restructuring |
| 3308 | Lake Orion | MI | Marketing Lease |
| 1170 | Lansing | MI | Restructuring |
| 9693 | Marine City | MI | Restructuring |
| 3841 | Marshall | MI | Restructuring |
| 7031 | Menominee | MI | Restructuring |
| 7068 | Midland | MI | Restructuring |
| 9593 | Oscoda | MI | Restructuring |
| 3379 | Waterford Twp. | MI | Restructuring |
| 9689 | International Falls | MN | Restructuring |
| 3405 | Minneapolis | MN | Restructuring |
| 3059 | St. Paul | MN | Restructuring |
| 9353 | Crystal City | MO | Restructuring |
| 3239 | Kansas City | MO | Marketing Lease |
| 4026 | St. Joseph | MO | Marketing Lease |
| 9520 | Gulfport | | Restructuring |
| 7030 | Kalispell | | Restructuring |
| 3886 | Asheville | NC | Restructuring |
| 4112 | Asheville | NC | Marketing Lease |
| 2105 | Burlington | NC | Restructuring |
| 7208 | Clemmons | NC | Restructuring |
| 1045 | Durham-Northgate | NC | Restructuring |
| 1405 | Fayetteville | NC | Marketing Lease |
| 2225 | Goldsboro | NC | Marketing Lease |
| 3744 | Kill Devil Hills | NC | Restructuring |
| 9619 | Morehead City | NC | Restructuring |
| 9549 | Morganton | NC | Restructuring |
| 1646 | Pineville | NC | Marketing Lease |
| 4450 | Raleigh | NC | Marketing Lease |
| 3808 | Statesville | NC | Marketing Lease |
| 7626 | Waynesville | NC | Restructuring |
| 4272 | Bismarck | | Restructuring |
| 4057 | Fargo | | Restructuring |
| 4022 | Grand Forks | | Restructuring |
| 9319 | Alliance | NE | Restructuring |
| 2023 | Concord | | Restructuring |
| 4448 | Salem | | Restructuring |
| 7048 | West Lebanon | | Restructuring |
| 3438 | Avenel | NJ | Restructuring |
| 7177 | Belleville | NJ | Restructuring |
| 3393 | GLASSBORO | NJ | Marketing Lease |
| 3499 | Kearny | NJ | Restructuring |
| 9463 | Somers Point | NJ | Restructuring |
| 3071 | Toms River | NJ | Restructuring |
| 7602 | Wall | NJ | Restructuring |
| 3056 | Wayne | NJ | Restructuring |

| | | | |
|---|---|---|---|
| 4470 | West Long Branch | NJ | Restructuring |
| 3202 | Westwood | NJ | Restructuring |
| 2597 | Farmington | NM | Restructuring |
| 2527 | Las Cruces | NM | Restructuring |
| 3301 | Santa Fe | NM | Restructuring |
| 1709 | Henderson | NV | Marketing Lease |
| 1828 | Las Vegas | NV | Marketing Lease |
| 3592 | Las Vegas | NV | Restructuring |
| 4741 | Batavia | NY | Marketing Lease |
| 9589 | Bath | NY | Restructuring |
| 9423 | Bridgehampton | NY | Restructuring |
| 3415 | Buffalo | NY | Restructuring |
| 4871 | Farmingville | NY | Restructuring |
| 1004 | Garden City | NY | Marketing Lease |
| 9274 | Greenwich | NY | Restructuring |
| 7065 | Horseheads | NY | Restructuring |
| 2744 | Horseheads/Elmira | NY | Restructuring |
| 2584 | Lakewood | NY | Marketing Lease |
| 9415 | Mahopac | NY | Marketing Lease |
| 4034 | Mattydale | NY | Restructuring |
| 2593 | Newburgh | NY | Restructuring |
| 4123 | Niagara Falls | NY | Marketing Lease |
| 3600 | Schenectady | NY | Marketing Lease |
| 1924 | Valley Stream | NY | Restructuring |
| 2683 | Watertown | NY | Marketing Lease |
| 7677 | Wellsville | NY | Restructuring |
| 9392 | West Seneca | NY | Marketing Lease |
| 9416 | White Plains | NY | Restructuring |
| 7383 | Barberton | | Restructuring |
| 3286 | Brunswick | | Restructuring |
| 3013 | Cleveland | | Restructuring |
| 7209 | East Liverpool | | Marketing Lease |
| 9096 | Fostoria | | Restructuring |
| 7397 | Grove City | | Restructuring |
| 7644 | Harrison | | Restructuring |
| 4257 | Middleburg Heights | | Marketing Lease |
| 1564 | Niles | | Marketing Lease |
| 2104 | St Clairsville | | Restructuring |
| 4782 | Clinton | OK | Restructuring |
| 3839 | Corvallis | OR | Restructuring |
| 2179 | Medford | OR | Restructuring |
| 2119 | Salem(Lancaster) | OR | Marketing Lease |
| 3361 | Allentown | PA | Marketing Lease |
| 2494 | Altoona | PA | Restructuring |
| 4150 | Altoona | PA | Marketing Lease |
| 1454 | Bensalem/Crnwls Hts | PA | Marketing Lease |
| 9161 | Berwick | PA | Restructuring |
| 1711 | Camp Hill | | Restructuring |

| | | | |
|---|---|---|---|
| 3225 | Chambersburg | PA | Restructuring |
| 7293 | Clifton Heights | | Restructuring |
| 3737 | Doylestown | | Restructuring |
| 2124 | Dubois | | Marketing Lease |
| 7192 | Easton | | Restructuring |
| 3266 | Edwardsville | | Restructuring |
| 3963 | Elizabethtown | | Restructuring |
| 9662 | Ephrata | | Restructuring |
| 4113 | Erie | PA | Restructuring |
| 3597 | Holmes | PA | Restructuring |
| 7470 | Hummelstown | | Marketing Lease |
| 1064 | Langhrn/Oxford Vly | | Marketing Lease |
| 7372 | Leechburg | PA | Restructuring |
| 3884 | Matamoras | PA | Marketing Lease |
| 7083 | New Castle | PA | Restructuring |
| 4054 | New Kensington | PA | Marketing Lease |
| 4064 | North Versailles | | Marketing Lease |
| 3527 | Philadelphia | | Marketing Lease |
| 9409 | Phoenixville | | Marketing Lease |
| 4010 | Pittsburgh | | Marketing Lease |
| 9438 | Pleasant Hills | | Marketing Lease |
| 3136 | Shillington | | Restructuring |
| 9539 | Thorndale | | Marketing Lease |
| 4713 | Towanda | | Restructuring |
| 2114 | Washington | | Restructuring |
| 7374 | West Chester | PA | Restructuring |
| 3268 | Wilkes-Barre | PA | Restructuring |
| 3390 | Williamsport | | Restructuring |
| 3810 | Willow Street | PA | Restructuring |
| 3949 | Wind Gap | | Restructuring |
| 4732 | Aguadilla | PR | Restructuring |
| 7566 | Arecibo | PR | Restructuring |
| 7570 | Bayamon | PR | Restructuring |
| 7419 | Caguas | PR | Restructuring |
| 7665 | Carolina | PR | Restructuring |
| 2675 | Guayama | PR | Restructuring |
| 2355 | Hatillo(Arecibo) | PR | Restructuring |
| 3993 | Juana Diaz | PR | Restructuring |
| 1935 | Mayaguez | PR | Restructuring |
| 2385 | Naranjito | PR | Restructuring |
| 3896 | San German | PR | Marketing Lease |
| 4490 | San Juan | PR | Marketing Lease |
| 4494 | Trujillo Alto | PR | Restructuring |
| 7752 | Yauco | PR | Restructuring |
| 4016 | Greenville | SC | Restructuring |
| 7616 | Lexington | SC | Restructuring |
| 7274 | Mauldin | SC | Marketing Lease |
| 7043 | Rock Hill | SC | Marketing Lease |

| | | | |
|---|---|---|---|
| 7062 | Sumter | SC | Restructuring |
| 4141 | West Columbia | SC | Restructuring |
| 4170 | Rapid City | SD | Restructuring |
| 1115 | Chattanooga | TN | Marketing Lease |
| 2335 | Clarksville | TN | Marketing Lease |
| 7460 | Knoxville | TN | Marketing Lease |
| 9621 | Lebanon | TN | Restructuring |
| 2156 | MARYVILLE | TN | Marketing Lease |
| 2226 | MURFREESBORO | TN | Marketing Lease |
| 9735 | Sevierville | TN | Restructuring |
| 1395 | West Town | TN | Marketing Lease |
| 1137 | Austin | TX | Marketing Lease |
| 1317 | El Paso | TX | Restructuring |
| 2537 | Harlingen | TX | Marketing Lease |
| 2487 | Killeen | TX | Restructuring |
| 4389 | McAllen | TX | Restructuring |
| 1629 | Pharr | TX | Restructuring |
| 2637 | Port Arthur | TX | Restructuring |
| 1207 | Richardson | TX | Restructuring |
| 1097 | San Antonio | TX | Restructuring |
| 2617 | Victoria | TX | Marketing Lease |
| 9794 | St. George | UT | Restructuring |
| 3471 | Chesapeake | VA | Restructuring |
| 1274 | Chesterfield | VA | Restructuring |
| 1024 | Falls Church | VA | Restructuring |
| 2694 | Fredericksburg | VA | Restructuring |
| 2395 | Manassas | VA | Restructuring |
| 7717 | Waynesboro | VA | Marketing Lease |
| 7259 | Williamsburg | VA | Marketing Lease |
| 2784 | Winchester | VA | Restructuring |
| 7413 | Frederiksted | VI | Restructuring |
| 3972 | St. Croix | VI | Restructuring |
| 3829 | St. Thomas | VI | Restructuring |
| 7793 | St. Thomas | VI | Restructuring |
| 3133 | Bellingham | WA | Marketing Lease |
| 2049 | Everett | WA | Restructuring |
| 2329 | Kennewick(Pasco) | WA | Restructuring |
| 2330 | Puyallup | WA | Marketing Lease |
| 2029 | Union Gap | WA | Restructuring |
| 7034 | Walla Walla | WA | Restructuring |
| 7648 | Mauston | WI | Restructuring |
| 3692 | Oconomowoc | WI | Restructuring |
| 3851 | Racine | WI | Restructuring |
| 7649 | Ripon | WI | Restructuring |

| | | | |
|---|---|---|---|
| 3750 | Waupaca | WI | Restructuring |
| 4188 | Charleston | WV | Marketing Lease |
| 4442 | Charleston | WV | Restructuring |
| 3484 | Elkview | WV | Restructuring |
| 2304 | Westover/Morgantown | WV | Marketing Lease |
| 2341 | | Casper | Marketing Lease |
| 4736 | | Casper | Marketing Lease |
| 7139 | | Jackson | Restructuring |

## SCHEDULE B
## Compensation

**A.    Definitions**

"Designated Commission Rate" – shall be defined as, with respect to the Net Proceeds of any individual Lease Sale or Property Sale, (i) 2.50% of Net Proceeds up to $5 million, (ii) 2.00% of Net Proceeds in excess of $5 million up to $10 million, (iii) 1.50% of Net Proceeds in excess of $10 million up to $20 million and (iv) 1.00% of Net Proceeds in excess of $20 million.

"Lease Sale" - shall be defined as the sale, whether all or part, of a Lease and includes the sale of designation rights with respect thereto.

"Net Proceeds" - shall be defined as the total consideration paid to the Debtor by a landlord, tenant, investor, purchaser or any other party to purchase a Lease or Property or any right related to a Lease or Property in connection with a Lease Sale or Property Sale, in each case net of (i) any amounts paid to third party brokers that might represent a purchaser, (ii) with respect to a Lease Sale, any cure costs payable in connection such Lease Sale; (iii) any expenses incurred by A&G in connection with such Lease Sale or Property Sale that are reimbursable under this Agreement; and (iv) any credits and pro-rations, transfer, recording and title premiums and other fees, costs and expenses split in accordance with custom and born by debtors as sellers . It includes, but is not limited to, any fees and any other form of currency paid or waived by the Landlord, sub-tenant or other third party to the Debtor in relation to such Lease Sale or Property Sale. This list is not meant to be exhaustive and Gross Proceeds shall include any consideration or other quantifiable economic benefit paid or payable to the Debtor in conjunction with such Property Sale or Lease Sale.

"Property Sale" - shall be defined as the sale, whether all or part, of a Property and includes the sale of designation rights with respect thereto.

**B.    Fees**

A&G shall be compensated for the Services as follows:

1. <u>Base Fee.</u> Sears shall pay A&G a base monthly fee in the amount of one hundred thousand dollars ($100,000.00) per month for each of the first two months of A&G's retention. The first installment shall be due within one (1) business day after the date on which this Agreement is approved by the Bankruptcy Court. The second installment shall be due on the earlier of (i) the date that is one (1) month after the Agreement Date (or, if such day is not a business day, the immediately following business day) and (ii) the day that is one (1) business day after the date on which this Agreement is approved by the Bankruptcy Court. The base fee is non-refundable once earned and shall be applied to offset fees and expenses due under this Agreement.

2. <u>Lease Sales.</u> For each Lease Sale that is both actually consummated and obtained by A&G at the express written request of Sears made after the date hereof with respect to the applicable Lease, A&G shall earn and be paid a fee equal to the Designated Commission Rate of the Net Proceeds of such Lease Sale.

3. <u>Property Sales.</u> For each Property Sale that is both actually consummated and obtained by A&G at the express written request of Sears made after the date hereof with respect to the applicable Lease, A&G shall earn and be paid a fee equal to the Designated Commission Rate of the Net Proceeds of such Property Sale.

C.      **<u>Payment of Fees</u>**.

If Sears expressly requests in writing after the date hereof that A&G pursue a Lease Sale or Property Sale with respect to a specific Lease or Property and A&G obtains such a Lease Sale or Property Sale, A&G shall be entitled to the fees specified above in connection therewith upon consummation of such Lease Sale or Property Sale and shall be paid such fees within five (5) days after the consummation of such Lease Sale or Property Sale obtained by A&G. Notwithstanding anything to the contrary set forth in this Agreement, the decision to consummate any potential Lease Sale or Property Sale shall be left to the sole discretion of Sears and no fee in respect of any Lease Sale or Property Sale shall be payable unless such Lease Sale or Property Sale is consummated