**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

In re                                                      :
                                                           :          **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,   :
                                                           :          **Case No. 18-23538 (RDD)**
                                                           :
                   Debtors.[1]                     :          **(Jointly Administered)**

------------------------------------------------------------ x

## ORDER (I) APPROVING THE SALE OF CERTAIN REAL PROPERTY, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated November 29, 2018 (ECF No. 938) (the "**Motion**")[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363,

and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6004 and 6006 of

the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rule 6004-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), seeking the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

entry of an order (i) authorizing and approving the sale of certain real and personal property of the Debtors described in the Motion (the "**Properties**") free and clear of all liens, claims, interests, and encumbrances, (ii) authorizing and approving the assumption and assignment of certain unexpired leases of nonresidential real property of the Debtors described in the Motion in connection therewith (the "**Assumed Leases**" and, together with the Properties, the "**Acquired Assets**"),[3] and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"), and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on December 20, 2018 (the "**Hearing**"); and the Court having reviewed and considered (i) the Motion, including the Real Estate Sale Contract by and between Sears, Roebuck and Co. and certain of its affiliates as sellers (collectively, the "**Sellers**") and Amerco Real Estate Company as the purchaser (the "**Purchaser**"), dated as of November 29, 2018 (the "**Purchase Agreement**"), attached thereto as **Exhibit A**, and (ii) the Declaration of Roger Puerto, filed on December 5, 2018; and upon the record of and representations made at the Hearing, and upon all of the pleadings filed in connection with the Motion and proceedings had before the Court related thereto; and the Court

---

[3] For the avoidance of doubt, the Acquired Assets do not include any of the properties, contracts or other assets related to the Sparrow Properties (as defined herein).

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and it appearing that the relief requested in the Motion and granted

herein is in the best interests of the Debtors, their estates, their creditors, and all parties in

interest; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.    **Fed. R. Bankr. P. 7052**.    The findings and conclusions set forth herein

constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052

made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.    To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.    The

Court's findings also shall include any oral findings of fact and conclusions of law made by the

Court during or at the conclusion of the Hearing.

B.    **Jurisdiction and Venue**.    This Court has jurisdiction to consider the

Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference

M-431, dated January 31, 2012 (Preska, C.J.).    This matter is a core proceeding pursuant to 28

U.S.C. § 157(b).    Venue is proper before this Court pursuant to 28 U.S.C.   §§ 1408  and 1409.

C.    **Statutory and Rule Predicates**.    The statutory and other legal predicates

for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001, 6004, and 6006, and Local Rule 6004-1.

D.    **Final Order**.    This Order constitutes a final order within the meaning of

28 U.S.C. § 158(a).    In the absence of a stay pending appeal, Purchaser, being a good faith

purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the

WEIL:\96808226\18\73217.0004

Purchase Agreement at any time after entry of this Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

      E.      **Notice and Opportunity to Object**.  As evidenced by the affidavit of service filed with the Court, a fair and reasonable opportunity to object to and to be heard with respect to the Motion, including the proposed assumption and assignment of the Assumed Leases to Purchaser, as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Amended Case Management Order has been provided to all Persons entitled to notice, including, but not limited to, the following: (i) counterparties to the Assumed Leases, (ii) Purchaser, (iii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Acquired Assets, and (iv) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  Such notice was good, sufficient, and appropriate under the circumstances.  No other or further notice of the Motion is required.

      F.      **Title to the Acquired Assets**.  The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

      G.      **Sound Business Purpose**.    The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Motion, the Purchase Agreement, and ancillary agreements thereto including, without limitation, the Occupancy Agreements (as defined herein) (the "**Related Agreements**").  The Debtors' entry into and performance under the Purchase Agreement and the Related Agreements with respect to the Acquired Assets: (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties,

4

(ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances.

H.     **Fair Consideration**.  The consideration to be paid by Purchaser under the Purchase Agreement constitutes reasonably equivalent value, and fair and reasonable consideration for the Acquired Assets.

I.     **No Successor or Derivative Liability**.  The sale and transfer of the Acquired Assets to the Purchaser and the Purchaser's occupation and use of the Acquired Assets will not subject the Purchaser to any liability (including any successor liability) with respect to the operation of any of the Debtors' businesses before Closing or by reason of such transfer. Purchaser shall have no obligations with respect to any liabilities of the Debtors or the Debtors' estates arising out of or related to the Acquired Assets, except as expressly provided in the Purchase Agreement.  The transaction contemplated under the Purchase Agreement (the "**Transaction**") does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates.

J.     **No Fraudulent Transfer**.  The Transaction is not made for the purpose of hindering, delaying, or defrauding creditors.

K.     **Good Faith; No Collusion**.     The Purchase Agreement, the Related Agreements, and the Transaction contemplated therein were negotiated, proposed and entered into by Sellers and Purchaser in good faith, without collusion or fraud and from arm's-length bargaining positions.  Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Sellers nor Purchaser have engaged in collusion or any conduct that would cause or permit the Purchase Agreement to be avoided, or costs, fees or damages to be imposed under

5

section 363(n) of the Bankruptcy Code.  Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between Purchaser and any of the Debtors.

    L.  **Satisfaction of 363(f) Standards**.  The Debtors may sell the Acquired Assets free and clear of all encumbrances, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), interests, and liens, rights, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, possessory interests (including those under section 365(h) of the Bankruptcy Code), other interests, leases, licenses, options, deeds of trust, security interests, condition, sale or other title retention agreements, pledges, other liens (including mechanics', materialmen's and other consensual and non-consensual liens and statutory liens), judgments, demands, rights of first refusal, offsets, set-offs, recoupment, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, tax liabilities, and other interests of any kind or nature whatsoever against any of the Debtors or the Acquired Assets, including, without limitations, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against any of the Debtors and any derivative, vicarious, transferee or successor liability claims, alter ego claims, *de facto* merger claims, rights or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the

6

District of Columbia), whether arising before or after the Commencement Date, whether known or unknown, contingent or matured, liquidated or unliquidated, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to any of the Debtors, any of the Debtors' interests in the Acquired Assets, the operation of any of the Debtors' businesses before the effective time of Closing pursuant to the Purchase Agreement, or the transfer of any of the Debtors' interests in the Acquired Assets to the Purchaser (other than the Permitted Exceptions (as defined in the Purchase Agreement), collectively, the "**Claims**"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Claims who did not timely object (or who ultimately withdrew their objections, if any) to the Transaction or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object that have an interest in the Acquired Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Transaction, subject to any defenses of the Debtors.  All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against Purchaser or any of its assets, property, affiliates, successors, assigns, or the Acquired Assets.

M.    **Assumption and Assignment of Leases**.  The assumption and assignment of the Assumed Leases by the Debtors is integral to the Purchase Agreement, is in the best

7

interests of the Debtors and their estates, and represents the reasonable exercise of the Debtors'
sound business judgment.  Specifically, the assumption and assignment of the Assumed Leases
(i) is necessary to sell the Acquired Assets to Purchaser, (ii) limits the losses suffered by
counterparties to the Assumed Leases, and (iii) maximizes value for all of the Debtors'
stakeholders by limiting the amount of claims against the Debtors' estates by avoiding the
rejection of the Assumed Leases.

N.    **Validity of the Transfer**.  As of the Closing (as defined in the Purchase
Agreement), the transfer of Acquired Assets to Purchaser will be a legal, valid, and effective
transfer of such Assets, and will vest Purchaser with all right, title, and interest of the Debtors in
and to the Acquired Assets, free and clear of all Claims.  The consummation of the Transaction
is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code,
including, section 105(a), 363(b), 363(f), 363(h), and 365(f), and all of the applicable
requirements of such sections have been complied with in respect of the Transaction.

O.    **Corporate Power and Authority.**  The Debtors have full corporate
power and authority to execute and deliver the Purchase Agreement and to perform all of their
respective obligations thereunder, and the Transaction and conveyance of the Acquired Assets
have been duly and validly authorized by all corporate authority necessary to consummate the
Transaction.  No consents or approvals, other than as expressly provided for in the Purchase
Agreement and the entry of this Order, are required by the Debtors to consummate the
Transaction.

P.    **Valid and Binding Contract**.  The Purchase Agreement is a valid and
binding contract between the Debtors and Purchaser and shall be enforceable pursuant to its
terms.    The  Purchase  Agreement,  the  Related  Agreements,  the  Transaction,  and  the

8

consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

Q.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.    The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Transaction, and the Sellers and Purchaser intend to close the Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Purchase Agreement.  Accordingly, there is sufficient cause to lift the 14-day stay of this Order contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the Transaction.

R.    **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion and herein establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    **Motion is Granted**.  The Motion and the relief requested therein is granted and approved, as set forth herein.

2.    **Objections Overruled**.  All objections, to the Motion or the relief requested therein that have not been withdrawn with prejudice, waived or settled as announced to the Court at the Hearing, by stipulation filed with the Court or as set forth in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.

WEIL:\96808226\18\73217.0004

3.      **Notice**.  Notice of the Motion and the Hearing was adequate, appropriate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and the Amended Case Management Order.

4.      **Fair Purchase Price**.  The consideration provided by Purchaser under the Purchase Agreement (a) is fair and reasonable, and (b) constitutes reasonably equivalent value, fair consideration, and fair value for the Acquired Assets.

5.      **Approval of the Purchase Agreement**.  The Purchase Agreement, the Transaction contemplated therein, the Related Agreements, and all of the terms and conditions thereof are hereby approved.  The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.  Notwithstanding anything to the contrary in this Order or the Motion, none of the relief or findings requested therein or contained herein shall in any way govern or approve the sale or transfer of Site #2819 (Fairbanks, Alaska), Site #4371 (Santa Maria, California), Site #4928 (Queensbury, New York), and Site #4147 (Spokane, Washington) (collectively, the "**Sparrow Properties**"), which Sparrow Properties are not owned by any of the Debtors.

6.      **Authorization of Performance by the Debtors**.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered, without further order of the Court, to take any and all actions required by the Debtors that are necessary or appropriate to (a) consummate and close the Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (b) transfer and assign all right, title, and

WEIL:\96808226\18\73217.0004

interest in and to all Acquired Assets to be conveyed pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (c) execute and deliver, perform under, consummate, and implement the Purchase Agreement and the Related Agreements and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Transaction, including any Related Agreements, or as may be reasonably necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Purchase Agreement and the Related Agreements; and (d) take all further action as may be reasonably requested by Purchaser for the purposes of assigning, transferring, granting, conveying, or conferring to Purchaser, or reducing to Purchaser's possession, the Acquired Assets and the Assumed Leases.

7.      The Debtors are authorized to enter into occupancy agreements between Purchaser, as licensor, and the Sellers, as licensee, for certain of the Properties that are owned by the Debtors, in substantially the form attached to Exhibit E of the Purchase Agreement (collectively, the "**Occupancy Agreements**").

8.      **Direction to Creditors and Parties in Interest**.  On the Closing Date (as defined in the Purchase Agreement), each of the Debtors' creditors and the holders of any Claims are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to terminate, discharge or release their Claims in the Acquired Assets, if any, as such Claims may otherwise exist.

9.      **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any

11

documents or instruments or who may be required to report or insure any title in or to the

Acquired Assets, is hereby authorized and directed to accept any and all documents and

instruments necessary and appropriate to consummate the Transaction contemplated by the

Purchase Agreement and approved by this Order.

10.     **Transfer of the Acquired Assets Free and Clear**.  Pursuant to sections

105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer

the Acquired Assets in accordance with the terms of the Purchase Agreement.  The Acquired

Assets shall be transferred to Purchaser, and upon Closing, such transfer shall: (a) be valid, legal,

binding and effective; (b) vest Purchaser with all right, title and interest of the Debtors in the

Acquired Assets; and (c) be free and clear of all Claims in accordance with section 363(f) of the

Bankruptcy Code, with all Claims that represent interests in property to attach to the net proceeds

of the Transaction, in the same amount and order of their priority, with the same validity, force

and effect which they have against the Acquired Assets, and subject to any claims and defenses

the Debtors may possess with respect thereto.  Notwithstanding anything to the contrary in the

Purchase Agreement, in any Related Agreement, or in this Order, the Properties transferred to

Purchaser shall not include any Prepetition ABL Collateral (as defined in the *Final Order (I)*

*Authorizing the Debtors to (A) Obtain Post-Petition, (B) Grant Senior Secured Priming Liens*

*and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting*

*Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and*

*(IV) Granting Related Relief*, entered on November 30, 2018 (ECF No. 955) (the "**Final DIP**

**Order**")).

11.     Except as otherwise provided in the Purchase Agreement, all Persons (and

their respective successors and assigns) including, without limitation, all debt security holders,

WEIL:\96808226\18\73217.0004

equity security holders, governmental, tax and regulatory authorities, lenders, current and former employees, pension plans, labor unions, trade creditors and any other creditors holding Claims against the Debtors or the Acquired Assets, or any of the Debtors' businesses (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, any of the Debtors, the Acquired Assets, or any of the Debtors' businesses before the Closing Date or the transfer of the Acquired Assets to Purchaser, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Purchaser, its affiliates, successors, or assigns, its property or the Acquired Assets, including taking any of the following actions with respect to or based on a Claim:  (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its affiliates, or their respective successors or assigns, assets, or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its affiliates, or their respective successors or assigns, assets, or properties; (c) creating, perfecting, or enforcing any Claims against the Purchaser, its affiliates, or their respective successors or assigns, assets, or properties; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser, its affiliates, or their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof, including the Purchase Agreement.  No such Persons shall assert or pursue against the Purchaser or its affiliates, successors, or assigns any such Claim.

> 12.     This Order shall be effective as a determination that, as of the Closing, all Claims have been unconditionally released, discharged and terminated as to Purchaser and the

Acquired Assets, and that the conveyances and transfers described herein have been effected. Following the Closing of the Transaction, no holder of any Claim shall interfere with Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Claim or based on any actions the Debtors may take in these chapter 11 cases.

13.     Except as expressly set forth in the Purchase Agreement, Purchaser and its successors and assigns shall have no liability for any Claim, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, alter ego or otherwise, of any kind, nature or character whatsoever, including Claims arising under, without limitation:  (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; and (e) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local

14

discrimination laws, (xii) state and local unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws or (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability.

14.    Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory or environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

15.    If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims in or against the

15

WEIL:\96808226\18\73217.0004

Acquired Assets shall not have delivered to the Debtors before Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all Claims against or in the Acquired Assets (collectively, the "**Release Documents**") that the Person holds, then with regard to the Acquired Assets that are purchased by the Purchaser pursuant to the Purchase Agreement and this Order, (a) the Debtors are hereby authorized and directed to, and the Purchaser is hereby authorized to, execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Acquired Assets; and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Acquired Assets; provided that, notwithstanding anything in this Order or the Purchase Agreement to the contrary, the provisions of this Order shall be self-executing, and neither the Sellers nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

16.    **No Successor or Other Derivative Liability**.    Except to the extent expressly set forth in the Purchase Agreement, by virtue of the Transaction, Purchaser shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.

17.     **Assumption and Assignment of Leases**.   Subject to and conditioned upon the occurrence of the Closing Date, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Leases to Purchaser free and clear of all Claims, and to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Leases to Purchaser as provided in the Purchase Agreement.   Upon the Closing, Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Leases and, pursuant to section 365(k) of the Bankruptcy Code, except as expressly set forth in the Purchase Agreement, the Debtors shall be relieved from any further liability with respect to the Assumed Leases.   Upon the Closing, Purchaser shall have no liability or obligation with respect to any Claim or matter accruing or arising under the Assumed Leases before the Closing.   Purchaser acknowledges and agrees that from and after the Closing, subject to and in accordance with the Purchase Agreement, it shall comply with the obligations of the landlord accruing and arising from and after the Closing under each Assumed Lease in its entirety, including any indemnification obligations expressly contained in such Assumed Lease that could arise as a result of events or omissions that occur from and after the Closing, unless any such provisions are not enforceable pursuant to the terms of this Order.

18.     **Ipso Facto Clauses Ineffective**.   The Assumed Leases shall be transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, including all obligations of Purchaser as the assignee of such Assumed Leases, notwithstanding any provision in such Assumed Leases (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.   There shall be no rent accelerations, escalations,

17

assignment fees, increases or any other fees charged to Purchaser or the Debtors as a result of the assumption or assignment of the Assumed Leases.

19.    Upon the Debtors' assignment of the Assumed Leases to Purchaser under the provisions of this Order, no default shall exist under any Assumed Leases, and no counterparty to any Assumed Leases shall be permitted to declare a default by any Debtor or Purchaser or otherwise take action against Purchaser as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Lease.  Any provision in an Assumed Lease that prohibits or conditions the assignment or sublease of such Assumed Lease (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect.  The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assumed Lease shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of such Assumed Lease.

20.    **Statutory Mootness**.  The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  The Transaction contemplated by the Purchase Agreement are undertaken by Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Transaction shall neither affect the validity of the Transaction nor the transfer of the Acquired Assets to Purchaser,

WEIL:\96808226\18\73217.0004

free and clear of Claims, unless such authorization is duly stayed before the Closing of the Transaction pending such appeal.

21.     **No Avoidance of Purchase Agreement**.   Neither the Sellers nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement or Related Agreements to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.   Accordingly, the Purchase Agreement, the Related Agreements, and the Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement, the Related Agreements, or the Transaction.

22.     **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.   Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

23.     **Binding Effect of this Order**.   The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, or shall inure to the benefit of, each of the Debtors, their estates, their creditors, and non-Debtor affiliates, Purchaser, and each of their respective affiliates, successors and assigns, and any affected third parties, including all Persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

WEIL:\96808226\18\73217.0004

24.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Order and the terms of the Purchase Agreement, the terms of this Order shall control.

25.    **Modification of Purchase Agreement**.  The Purchase Agreement, the Related Agreements, and any other documents or other instruments executed in connection therewith, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement or any Related Agreements, or any other documents or other instruments.

26.    **Bulk Sales**.  No bulk sales law or similar law of any state or other jurisdiction (including those relating to taxes other than transfer taxes) shall apply in any way to the Transaction contemplated by the Purchase Agreement, the Motion, and this Order.

27.    **Distribution of Proceeds**.  On the Closing Date, Purchaser shall pay to the Debtors (in accordance with the terms of the Purchase Agreement), the balance of the purchase price remaining due and owing for the Acquired Assets under the Purchase Agreement.  The proceeds from the Transaction (other than (i) the proceeds from the sale of the Sparrow Properties, which are not property of the Debtors' estate, and (ii) the proceeds from the sale of the properties securing the Cascade Real Estate Loan) shall be applied as provided in the Final DIP Order, including to fund the Debtors' Winddown Account (as defined in the Final DIP Order). The Debtors shall (i) establish a reasonable methodology (reasonably acceptable to the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the lenders under the

20

Cascade Real Estate Loan, and the Sparrow Mortgage Lenders,[4] or as otherwise approved by the

Court), consistent with the Final DIP Order and the DIP ABL Loan Documents, to allocate

proceeds of the Transaction on an entity by entity basis, which methodology takes into account

fees, costs, commissions and related expenses (the "**Allocable Costs**"), and (ii) provide such

allocation methodology to the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL

Agents, the lenders under the Cascade Real Estate Loan, and the Sparrow Mortgage Lenders no

later than five (5) business days prior to the closing of the Sale Transaction.  The Debtors, the

Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the lenders under the

Cascade Real Estate Loan, and the Sparrow Mortgage Lenders agree to cooperate in good faith

as it relates to a reasonable allocation of the sale proceeds and all Allocable Costs on an entity by

entity basis, and any disagreement among the Debtors, the Creditors' Committee, the DIP ABL

Agents, the Prepetition ABL Agents, the lenders under the Cascade Real Estate Loan, and the

Sparrow Mortgage Lenders about such allocation shall be resolved by the Court.  For the

avoidance of doubt, nothing herein or in the Purchase Agreement shall prejudice the rights of any

party-in-interest, including the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL

Agents, the lenders under the Cascade Real Estate Loan, or the Sparrow Mortgage Lenders, to

challenge Allocable Costs or allocation methodology.  For the avoidance of doubt, other than any

Allocable Costs as agreed in accordance with this paragraph, (i) all of the proceeds from the sale

of the Sparrow Properties shall be delivered to the Sparrow Entities at closing or as otherwise

directed by the Sparrow Entities in their sole discretion, and (ii) all the proceeds from the sale of

---

[4] As used herein, "**Sparrow Mortgage Lenders**" shall mean the lenders under that certain Credit Agreement, dated March 14, 2018 (as may be amended, restated, amended and restated or otherwise modified from time to time), by and among SRC O.P. LLC, SRC Facilities LLC and SRC Real Estate (TX), LLC, collectively as borrower, the lenders party thereto, UBS AG, Stamford Branch, as administrative agent, and UBS Securities LLC, as Lead Arranger and Bookrunner.

21

the properties securing the Cascade Real Estate Loan shall be held in a segregated account of the Debtors pending further order of the Court.

28. **Final DIP Order**. Notwithstanding anything to the contrary in this Order or in the Purchase Agreement or any other Related Agreement: (i) upon Closing, the liens granted under the Final DIP Order and the DIP ABL Documents and the Prepetition ABL Loan Documents (each as defined in the Final DIP Order) shall be discharged against the Acquired Assets and shall attach to the proceeds of the Transaction in the same amount, to the same extent, and with the same priority as set forth in the Final DIP Order; (ii) unless otherwise ordered by the Court, all proceeds from the Transaction (other than the proceeds from the sale of the properties securing the Cascade Real Estate Loan) shall be used and/or applied in accordance with the Approved Budget (as defined in the Final DIP Order) and the terms and conditions of the Final DIP Order, the DIP ABL Documents, and the Prepetition ABL Loan Documents, as applicable; and (iii) nothing in this Order or in the Purchase Agreement or any other Related Agreement shall amend or modify any provision of the Final DIP Order, or the rights of any party set forth therein.

29. **Cardtronic Assets**. Notwithstanding anything else to the contrary in this Order, the Acquired Assets shall not include the automated teller machines ("**ATMs**") and such ATMs' associated vault cash (collectively, the "**Cardtronics Assets**") located at any of the Occupied Properties (as that term is defined in the Purchase Agreement), pursuant to that certain ATM Placement Agreement, dated September 14, 2012 (as amended) (the "**Cardtronics Placement Agreement**") between SHC Licensed Businesses LLC, by and through its agent Sears Holdings Management Corp., and Cardtronics USA, Inc. ("**Cardtronics**"). The Cardtronics Assets shall remain at all times the property of Cardtronics as provided in the

22

Cardtronics Placement Agreement and shall not be transferred to the Purchaser in connection with the Transaction. Furthermore, Cardtronics may de-install and remove the Cardtronics Assets from the Occupied Properties at any time after the Closing and before the termination of the Occupancy Agreements, in accordance with Cardtronics' rights and remedies under the Cardtronics Placement Agreement; provided, however, Cardtronics shall be responsible for any damages to the Occupied Properties caused by its de-installation and removal of the Cardtronics Assets.  If and to the extent section 362(a) of the Bankruptcy Code may be applicable to the Cardtronics Placement Agreement and/or to the Cardtronics Assets, then the automatic stay pursuant to Section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit Cardtronics to de-install and remove such Cardtronics Assets from the Occupied Properties.

30.    **Automatic Stay**.  If and to the extent that section 362(a) may be applicable to a particular action in connection with the Purchase Agreement, the Related Agreements, and the Transaction, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby vacated with respect to the Debtor to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Purchase Agreement and allow the Purchaser to take any and all actions including, without limitation, exercising any rights and remedies permitted under the Purchase Agreement and the Related Agreements in accordance with the terms and conditions thereof.

WEIL:\96808226\18\73217.0004

31.    **Retention of Jurisdiction**.   This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and as it relates to the Debtors, the Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Order or, to the extent related to the Debtors, the Purchase Agreement (and the Related Agreements or such other documents or other instruments) and to enforce the injunctions set forth herein.

Dated: December 21, 2018
        White Plains, New York

/s/ Robert D. Drain
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\96808226\18\73217.0004