**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                           :
                                                                :    **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,    :
                                                                :    **Case No. 18-23538 (RDD)**
                                                                :
                   Debtors.[1]                           :    **(Jointly Administered)**
------------------------------------------------------------x

**FINAL ORDER AUTHORIZING DEBTORS TO
(I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM,
BANK ACCOUNTS, AND BUSINESS FORMS, (II) IMPLEMENT
ORDINARY COURSE CHANGES TO CASH MANAGEMENT
SYSTEM, (III) CONTINUE INTERCOMPANY TRANSACTIONS,
AND (IV) PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR
POSTPETITION INTERCOMPANY CLAIMS AND GRANTING RELATED RELIEF**

Upon the motion, dated October 15, 2018 (ECF No. 5) (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**"), pursuant to sections 105(a), 363, 364, 503, and 507 of title 11 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing the Debtors to (a) continue their existing cash management system, including, without limitation, the continued maintenance of their existing bank accounts and business forms, (b) implement changes to their cash management system in the ordinary course of business, including, without limitation, opening new or closing existing bank accounts, (c) continue to perform under and honor intercompany transactions with Debtor and non-Debtor affiliates in the ordinary course of business, in their business judgment and at their sole discretion, but subject to the terms and conditions set forth herein, (d) honor obligations with respect to service fees and chargebacks in connection with existing agreements with banks, credit card companies, and non-cash payment processors, and (e) provide administrative expense priority for certain postpetition intercompany claims, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the Final Hearing (defined below) having been provided in accordance with the Amended Case Management Order and as set forth in the affidavit of service filed with respect thereto (ECF No. 58), such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis on October 15, 2018 (the "**Interim Hearing**"); and the Court having entered an order granting the relief requested in the Motion on an interim basis (ECF No. 102) (the "**Interim Order**"); and a final hearing on the Motion having

been scheduled for December 20, 2018 (the "**Final Hearing**"); and the Final Hearing having been held to consider the relief requested in the Motion on a final basis; and upon the record of and representations made at the Interim Hearing and the Final Hearing and all of the related pleadings and proceedings herein; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and all objections to the Motion having either been resolved under the terms of this Order or overruled; and it appearing that the relief requested in the Motion and granted herein is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on a final basis to the extent set forth herein.

2. The Debtors are authorized and empowered pursuant to sections 105(a), 363, 364, 503, and 507 of the Bankruptcy Code to continue using their integrated cash management system described in the Motion (the "**Cash Management System**") and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany funding among Debtor and non-Debtor affiliates.

3. The Debtors are authorized, subject to the DIP Orders and the DIP Loan Documents,[3] to implement administrative changes to the Cash Management System in the ordinary course of business, including the opening of any new Bank Accounts and the closing

---

[3] See *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (ECF No. 955) (the "**Final DIP ABL Order**"), and the *Final Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (IV) Granting Related Relief* (the "**Final Junior DIP Order**," and together with the Final ABL DIP Order, the "**DIP Orders**") and the documents governing the debtor in possession financing thereunder (the "**DIP Loan Documents**").

3

of any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; provided that (a) any such new account is with a bank that is (i) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees and (b) the Debtors provide notice to the DIP ABL Agents and the U.S. Trustee of the opening of such account.

4. The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtors' names, including any new bank accounts, whether or not such Bank Accounts are identified on **Exhibit B** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Order.

5. The Debtors are authorized to (a) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Commencement Date, including, those accounts identified on **Exhibit B** to the Motion; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders, and invoices) (collectively, the "**Business Forms**"), as well as checks and all other documents related to the Bank Accounts existing immediately before the Commencement Date, without reference to the Debtors' status as debtors in possession; provided that in the event the Debtors generate new Business Forms and/or checks during the pendency of these chapter 11 cases, such Business Forms and checks shall include a legend referring to the Debtors as "Debtors-In-

Possession," and, to the extent practicable, the Debtors shall laser print such legend on any Business Forms and checks electronically generated during these cases.

6. The Debtors are authorized and empowered, subject to the DIP Orders and the DIP Loan Documents, to continue performing under and honoring Intercompany Transactions, including Intercompany Transactions with their non-Debtor affiliates, in the ordinary course of business; provided that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during the chapter 11 cases and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions; provided further that (i) any transfers to or for the benefit of a non-Debtor affiliate (whether by cash or otherwise) by a Debtor or (ii) any expense or obligation incurred for the benefit of a non-Debtor affiliate by a Debtor, shall not exceed $1 million per Foreign Affiliate, per month or the amounts set forth in the Foreign Affiliate Budget (as defined below), and be (x) secured on a first priority basis by substantially all of the assets of such non-Debtor affiliate, whether now existing or hereinafter acquired, and wherever located (collectively, the "**Non-Debtor Collateral**"), and (y) evidenced by a promissory note, collateral documentation (including any documentation necessary or desirable under any applicable foreign laws to create and/or perfect a security interest in or lien on the Non-Debtor Collateral) and intercreditor and/or subordination agreements, in each case, in form and substance, reasonably satisfactory to the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Creditors' Committee**"), the DIP ABL Lenders, and the Junior DIP Lenders, and the Debtors shall undertake commercially reasonable actions to execute and file any documents or instruments necessary or desirable (including under any applicable foreign laws) to create and perfect, and maintain the required priority of, the security interest in

or lien on the Non-Debtor Collateral to the extent the Debtors, the Creditors' Committee and the DIP ABL Agents believe it is in the best interests of the Debtors' estates; <u>provided</u> <u>further</u> the Debtors shall provide the Creditors' Committee and the DIP ABL Agents with no less than four (4) business days' advance notice prior to transferring any value in a single or series of transactions in a week (both cash and non-cash) from the Debtors to any *domestic* non-Debtor affiliate in excess of $1 million or $5 million in the aggregate to all domestic non-Debtors for the duration of these chapter 11 cases (other than ordinary course receipts or disbursements in the Debtors' cash concentration system), and the Debtors shall be authorized to make such transfer(s) if the Creditors' Committee and the DIP ABL Agents do not object during this period.

7. The Debtors shall provide the Creditors' Committee and the DIP ABL Agents with a 60-day budget of anticipated cash transfers to, expenses to be incurred on behalf of, or other obligations to be incurred for the benefit of Foreign Affiliates (the "**Foreign Affiliate Budget**") as soon as reasonably practicable, which budget shall be reasonably acceptable to the Creditors' Committee and the DIP ABL Agents, and shall be updated on a bi-weekly basis.

8. The Debtors shall provide the Creditors' Committee and the DIP ABL Agents five (5) business days' advance notice of any payment of a prepetition claim to a non-debtor affiliate, and the Debtors shall not make any such payment if the Creditors' Committee or the DIP ABL Agents object during such period, absent further order of the Court.

9. In accordance with, and on the terms and conditions set forth in, paragraph 39 of the Final ABL DIP Order and paragraph 38 of the Final Junior DIP Order, all Postpetition Intercompany Obligations (as defined in each of the Final DIP ABL Order and the

6

Final Junior DIP Order) shall be secured by the applicable Debtor transferee's DIP ABL Collateral, Prepetition ABL Collateral, Prepetition Encumbered Collateral and Prepetition Unencumbered Collateral, as applicable (in each case as defined in each of the Final DIP ABL Order and the Final Junior DIP Order), with the priority set forth in the Final DIP ABL Order and the Final Junior DIP Order.

10. The Debtors shall maintain records of the Intercompany Transactions. The Debtors shall produce and deliver in accordance with this paragraph a report reflecting, on a net basis, the Intercompany Transactions occurring during a two-week period ending on a Saturday of the week immediately preceding the report date (each report, a "**Bi-Weekly IC Report**"). Each Bi-Weekly IC Report will be subject to period end adjustments reflecting customary reconciliation occurring within 10 business days after completion of the Debtors' monthly accounting reporting periods (each, "**Monthly IC Reconciliation Report**"). Each Bi-Weekly IC Report and each Monthly IC Reconciliation Report shall be supported by documentation that shall provide reasonable level of detail with respect of the Debtor entities, the source, and the time period covered by each reported Intercompany Transaction. The Debtors shall provide the Bi-Weekly IC Reports, on a bi-weekly basis, and the Monthly IC Reconciliation Reports, on a monthly basis, to the professionals retained by (i) the DIP ABL Agents, (ii) the Junior DIP Agent, and (iii) the Creditors' Committee, on a confidential basis.

11. The Debtors are authorized and empowered to pay and honor any amounts due with respect to the Warranty Payments; <u>provided</u> that nothing herein shall authorize the Debtors to make any cash transfers to Sears Reinsurance Company Ltd. without the consent of the Creditors' Committee or the DIP ABL Agents.

12. The Debtors shall account for the movement of cash and any collection/disbursement activity between Debtors and affiliates through intercompany accounting.

13. The Debtors shall provide the Creditors' Committee and the DIP ABL Agents 5 business days' advance notice of any proposed dividend payment by a Debtor to a non-debtor affiliate, and the Debtor shall not make such payment if the Creditors' Committee or the DIP ABL Agents object during such period, absent further order of the Court.

14. Except as otherwise expressly provided in this Order, all banks at which the Bank Accounts are maintained (collectively, the "**Banks**") are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, administer, act as the Debtors' agent to prepare and advise certain letters of credit, and pay any and all checks, drafts, wires, letters of credit and ACH Payments issued by the Debtors and drawn on the Bank Accounts after the Commencement Date to the extent the Debtors have sufficient funds standing to their credit with such Bank; provided that any payments drawn, issued or made prior to the Commencement Date shall not be honored absent direction of the Debtors and a separate order of the Court authorizing such prepetition payment.

15. The Debtors are authorized to pay and honor both prepetition and postpetition Bank Fees, Processing Fees, Service Charges, and Chargebacks (including fees associated with the administration of preparing, advising, and processing of letters of credit), and the Banks, credit card companies, credit card processors, debit card processors, check processors, and gift card processors (collectively, the "**Payment Processing Companies**") are authorized to charge and collect, including, for the avoidance of doubt, by deducting such

8

amounts from any reserve account maintained by the Banks and Payment Processing Companies, as applicable, in accordance with the terms of the governing agreement, whether such amounts accrued before or after the Commencement Date, and any amounts which are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

16. The Payment Processing Companies are authorized to offset or apply and deposit against any Processing Obligations, whether or not they have arisen before the Commencement Date.

17. Each of the Banks is authorized, but not directed, to debit the Debtors' Bank Accounts in the ordinary course of business, to the extent of available funds, without need for further order of this Court for (i) all checks, items, and other payment orders drawn on the Debtors' Bank Accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of the commencement of these chapter 11 cases; (ii) all checks, ACH entries, and other items deposited or credited to one of the Debtors' accounts with such Banks prior to the Commencement Date that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such costs and fees prior to the Commencement Date; and (iii) all prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Service Charges for the maintenance of the Cash Management System.

18. As of the Commencement Date, the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the commencement of these Chapter 11 Cases should be honored

pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein and shall not be deemed to be, nor shall be, liable to any party on account of (a) following the Debtors' representations, instructions, directions, or presentations as to any order of the Court (without any duty of further inquiry); (b) honoring of any prepetition checks, drafts, wires, or ACH payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire, or ACH payments; or (c) a mistake made despite implementation of reasonable handling procedures.  Further the Banks may rely, without a duty of inquiry, upon the failure of the Debtors to issue a stop payment order with respect to any item, whether such item is issued prepetition or postpetition, as a direction by the Debtors that such item will be paid.  To the extent that the Debtors have represented to any of the Banks that a check, draft, wire, or ACH Payment should be dishonored, the Banks are hereby authorized to comply with such representation, either through utilizing the Banks' stop-payment system, or through voiding the check, draft, wire, or ACH Payment using the relevant Banks' internal procedures.  None of the Banks shall have any obligation to monitor the Debtors' compliance with the notice and consent provisions of this Order.

19.     The Debtors' credit and debit card providers are authorized and directed to transfer all credit and debit card receivables payable to the Debtors and to deduct any Service Charges, Bank Fees, Processing Fees, and Chargebacks, whether arising before or after the Commencement Date, payable by the Debtors from such transfers.

20.     The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately

10

and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Commencement Date.

21. Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services, subject to their compliance with applicable law.

22. Those certain existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash-management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. Either the Debtors or the Banks may, without further order of this Court, implement changes to the Debtors' Cash Management System in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, and subject to the DIP Orders and the DIP Loan Documents, including the opening and closing of bank accounts.

23. As soon as practicable after the entry of this Order, the Debtors shall serve a copy of this Order on those Banks that make disbursements pursuant to the Cash Management System.

24. Notwithstanding anything in the Motion, the Interim Order or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the DIP Orders; (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders).

25. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

26. Nothing contained in the Motion or this Order, or any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

27. All Parties' existing rights with respect to the allocation of costs among Debtors and non-Debtors are hereby reserved.

28. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

29. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

30. To the extent applicable, the 14-day stay of this Order under Bankruptcy Rule 6004(h) is waived, for cause, and this Order shall be immediately effective and enforceable upon its entry.

31. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

32. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

WEIL:\96790126\9\73217.0004

Dated: December 21, 2018
      White Plains, New York

                                              /s/ Robert D. Drain
                                              THE HONORABLE ROBERT D. DRAIN
                                              UNITED STATES BANKRUPTCY JUDGE