**Hearing Date and Time: January 18, 2019 at 10:00 a.m.**
**Objection Deadline:  January 11, 2019 at 4:00 p.m.**

Thomas R. Slome
Michael Kwiatkowski
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300, P.O. Box 9194
Garden City, New York 11530-9194
Telephone:  (516) 741-6565
Facsimile:  (516) 741-6706
Email: tslome@msek.com
       mkwiatkowski@msek.com
       and

Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail:  russell@russelljohnsonlawfirm.com
        john@russelljohnsonlawfirm.com

*Co-Counsel for Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Public Service Company of Oklahoma and Southwestern Electric Power Company (collectively, "AEP"), Arizona Public Service Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, City of Ocala, Florida, Consolidated Edison Company of New York, Inc., Orange & Rockland Utilities, Virginia Electric and Power Company d/b/a Dominion Energy Virginia, The Dominion East Ohio Gas Company d/b/a Dominion East Ohio, Connecticut Light & Power Company, Public Service Company of New Hampshire, Yankee Gas Services Company, NStar Electric Company, Eastern Massachusetts and NStar Electric Company, Western Massachusetts, West Penn Power Company, Monongahela Power Company, Potomac Edison Company, Toledo Edison Company, Metropolitan Edison Company, Jersey Central Power & Light Company, Pennsylvania Electric Company, The Cleveland Electric Illuminating Company, Ohio Edison Company, Pennsylvania Power Company, Florida Power & Light Company, Georgia Power Company, Boston Gas Company, Colonial Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy Delivery New York, Massachusetts Electric Company, Narragansett Electric Company, Niagara Mohawk Power Corporation, New York State Electric and Gas Corporation, Rochester Gas & Electric Corporation, Salt River Project, San Diego Gas and Electric Company, Southern California Gas Company, Sacramento Municipal Utility District, Southern California Edison Company, Tucson Electric Power Company, UNS Electric, Inc., UNS Gas, Inc. and Public Service Electric and Gas Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | ) Case No. 18-23538 (RDD) |
|  | ) |
| Debtors. | ) **(Jointly Administered)** |
|  | ) |

## MOTION OF CERTAIN UTILITY COMPANIES TO DETERMINE ADEQUATE ASSURANCE OF PAYMENT PURSUANT TO SECTION 366(c) OF THE BANKRUPTCY CODE

Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Public Service Company of Oklahoma and Southwestern Electric Power Company (collectively, "AEP"), Arizona Public Service Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, City of Ocala, Florida, Consolidated Edison Company of New York, Inc., Orange & Rockland Utilities, Virginia Electric and Power Company d/b/a Dominion Energy Virginia, The Dominion East Ohio Gas Company d/b/a Dominion East Ohio, Connecticut Light & Power Company, Public Service Company of New Hampshire, Yankee Gas Services Company, NStar Electric Company, Eastern Massachusetts, NStar Electric Company, Western Massachusetts, West Penn Power Company, Monongahela Power Company, Potomac Edison Company, Toledo Edison Company, Metropolitan Edison Company, Jersey Central Power & Light Company, Pennsylvania Electric Company, The Cleveland Electric Illuminating Company, Ohio Edison Company, Pennsylvania Power Company, Florida Power & Light Company, Georgia Power Company, Boston Gas Company, Colonial Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy Delivery New

2

York, Massachusetts Electric Company, Narragansett Electric Company, Niagara Mohawk

Power Corporation, New York State Electric and Gas Corporation, Rochester Gas & Electric

Corporation, Salt River Project, San Diego Gas and Electric Company, Southern California Gas

Company, Sacramento Municipal Utility District, Southern California Edison Company, Tucson

Electric Power Company, UNS Electric, Inc., UNS Gas, Inc. and Public Service Electric and Gas

Company (collectively, the "Utilities"), by counsel, for their Motion to Determine Adequate

Assurance of Payment Pursuant to Section 366(c) of the Bankruptcy Code (the "Motion"), state

as follows:

### Introduction

At 7:27 p.m. on Thursday, October 18, 2018, the Debtors filed:  (1) a *Motion of Debtors*

*Requesting Entry of an Order (I) Approving Debtors' Proposed Form of Adequate Assurance of*

*Payment To Utility Providers, (II) Establishing Procedures For Determining Adequate*

*Assurance of Payment For Future Utility Services, and (III) Prohibiting Utility Providers From*

*Altering, Refusing, or Discontinuing Utility Service* (the "Utility Motion")(Docket No. 196); and

(2) a Notice of Hearing for the Utility Motion that provided that the objection deadline was one

week later, October 25, 2018, and that the hearing date was set for November 1, 2018.   The

Debtors improperly served the Utility Motion and Notice of Hearing on the Utilities by first class

mail on payment lock boxes that receive thousands of payments a day, which ensured that the

Utilities would not be provided sufficient time to respond to the Utility Motion or be heard at the

November 1, 2018.  Accordingly, the Court entered the Utility Order that established an

underfunded and illusory Adequate Assurance Account as adequate assurance of payment.

The Adequate Assurance Account is nothing more than an underfunded account, which

remains subject to the lenders' liens, upon which Utilities can seek funds after filing and

3

litigating an administrative expense application with the hope that the funds allocated to them are still in that account and sufficient to cover the monthly amounts that they would be seeking for unpaid post-petition charges.   As an administrative expense claim can no longer be a form of adequate assurance of payment under Section 366(c) of the Bankruptcy Code, an underfunded account that most likely will be insufficient and unavailable to pay such requests should not be considered genuine and proper adequate assurance of payment in this or in any Chapter 11 case.

Pursuant to the procedures in the Utility Order, the Utilities have communicated their requests for adequate assurance of payment to the Debtors and exchanged settlement offers.  The parties, however, were unable to reach a settlement.  Moreover, as the Debtors have already failed to timely pay many of the Utilities' post-petition bills and are in default, the Utilities are filing this Motion to obtain genuine adequate assurance of payment for providing the Debtors with post-petition utility service.

A large number of the Utilities have excess prepetition security in the form of:  (1) excess cash deposits after recoupment against prepetition charges; or (2) excess amounts remaining on letters of credit or surety bonds after satisfaction of prepetition charges.  The Utilities have informed the Debtors that they would like to use those excess amounts toward their adequate assurance of payment requests.  Other Utilities have no excess prepetition security because the Debtors' unpaid prepetition bills exceeded the amount of their security. The adequate assurance of payment sought by the Utilities are set forth in paragraphs 14, 15 and 16 of this Motion. Based on all the foregoing, this Court should grant the Motion and award the Utilities the adequate assurance of payment being sought via this Motion.

## Jurisdiction and Venue

1.     This Court has jurisdiction over this Motion under 28 U.S.C. § 1334(b) and 11 U.S.C. § 366(c).

2.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

3.     Venue of this Motion is proper in this district pursuant to 28 U.S.C. § 1409.

## Procedural Facts

4.     On October 15, 2018 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.     The Debtors' chapter 11 bankruptcy cases are being jointly administered.

6.     On Thursday, October 18, 2018, the Debtors filed a Notice of Hearing for the Utility Motion that provided that the objection deadline was one week later, October 25, 2018 and that the hearing date was set for November 1, 2018.

7.     On October 23, 2018, the Debtors filed an *Affidavit of Service* [Docket No. 261] (the "Affidavit"), which addressed how the Utility Motion was "served" on the Utilities. Specifically, the Affidavit states that the Utility Motion was served by first class mail on the addresses listed in Exhibit R to the Affidavit.  The addresses listed in the Affidavit are post office boxes, which is most cases are payment lock boxes where thousands of payments are received each day.  Not only is the foregoing "service" not proper under Rules 9014 and 7004 of the Federal Rules of Bankruptcy Procedure for the Utilities, which are corporations, it was clearly done in a manner to ensure that the Utilities would not receive proper or timely notice of the objection deadline or the November 1, 2018 hearing.  As Section 366(c)(3) of the Bankruptcy

5

Code provides the Debtors with thirty (30) days to provide the Utilities with adequate assurance

of payment, it is not clear why this Court permitted the Motion to be heard and granted in

violation of the Utilities' due process rights and rights under Section 366 of the Bankruptcy

Code.

8.      On November 5, 2018, the Court entered an Order [Docket No. 461] approving

the Utility Motion (the "Utility Order") that was dated November 1, 2018.

### Additional Adequate Assurance Requests From The Utilities

9.      Although the Utilities believe the Utility Order was entered in violation of their

due process rights and the provisions and requirements of Section 366 of the Bankruptcy Code,

the Utilities elected to proceed with the Additional Adequate Procedures in Exhibit 2 to the

Utility Motion.  Accordingly, the Utilities, by counsel, sent Debtors' counsel and the applicable

notice parties Additional Adequate Requests in a letter dated November 9, 2018, which, without

the attachments, is attached to this Motion as **Exhibit 1** (the "Adequate Assurance Letter").

10.     As additional information was provided to Utilities' counsel by the Utilities,

Utilities' counsel sent Debtors' counsel four supplemental letters on November 14 and 16, 2018.

11.     On November 29, 2018, the Utilities, by counsel, sent Debtors' counsel a

settlement offer for the Utilities.  On November 30, 2018, Debtors' counsel provided Utilities'

counsel with a counter-offer as to certain of the Utilities.

12.     On December 6, 2018, the Utilities, by counsel, sent Debtors' counsel a

comprehensive settlement offer that addressed excess prepetition security held by many of the

Utilities and the Adequate Assurance Account.  The foregoing letter provided the Debtors with a

December 14, 2018 deadline to respond.

13.     On December 17, 2018, Debtors' counsel indicated that the parties were close on

6

settlement, but did not provide any specifics or any further response. Despite several follow up emails from Utilities' counsel after the December 17, 2018 email, Debtors' counsel did not respond to the Utilities' December 6, 2018 offer.

14.    For those Utilities with excess prepetition security to apply toward post-petition adequate assurance of payment, they are seeking the following adequate assurance of payment from the Debtors:

A.    Baltimore Gas and Electric Company ("BGE")

i.    BGE held a prepetition cash deposit in the amount of $134,411 (this includes accrued interest) on the Debtor Sears Roebuck and Company ("Sears") accounts. The prepetition debt owed by Debtor on the Sears accounts was $85,162.26, leaving a credit balance of $49,248.74 (the "BGE Sears Credit"). As adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code, the Debtor Sears shall provide BGE with a two-month cash deposit in the amount of $106,526.50 that shall be paid as follows:

(a)    The Debtors shall agree that BGE can move the $49,248.74 BGE Sears Credit to the Debtors' post-petition accounts with Sears; and

(b)    The Debtors shall tender to BGE a deposit payment in the amount of $57,277.76.

ii.    BGE held a prepetition cash deposit in the amount of $14,427.37 on the two Debtor Kmart Corporation ("Kmart") accounts. The prepetition debt owed by Debtor Kmart was $13,639.17, but there was also a credit on the account that results in a final credit balance after application of the prepetition deposit of $6,348.27 (the "BGE Kmart Credit"). As adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code, Debtor Kmart shall provide BGE with a two-month cash deposit in the amount of $7,891.66 that shall be paid as follows:

(a)    The Debtors shall agree that BGE can move the BGE Kmart Credit to the Debtors' post-petition accounts with Kmart; and

(b)    The Debtors shall tender to BGE a deposit payment in the amount of $1,543.39.

B.    Delmarva Power & Light Company ("Delmarva")

i.    Delmarva held cash deposits of $960, $7,180 and $3,515 on three

7

of the Sears accounts with Delmarva.  After applying the foregoing cash deposits to prepetition charges, there was no credit remaining on those accounts.

        ii.    Delmarva also maintained the following surety bonds, which are the subject of the following demands:

      (a)    $78,867 surety bond for Kmart (the "Delmarva Kmart Bond") - $35,283.95 demand.

      (b)    $97,310 surety bond for Sears (the "Delmarva Sears Bond') - $37,220.52 demand.

        iii.    The Debtors shall tender a two-month cash deposit in the amount of $11,360 for the three Sears accounts that are not covered by the Delmarva Sears Bond to serve as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code for those accounts.

        iv.    The Debtors shall agree to maintain the balances of the Delmarva Kmart Bond and the Delmarva Sears Bond in place as adequate assurance of payment to Delmarva pursuant to Section 366(c) of the Bankruptcy Code.

    C.    <u>Florida Power & Light Company ("FPL")</u>

        i.    FPL maintained a $518,234 cash deposit on the Sears accounts. The final prepetition balance on the Sears accounts was $321,563, leaving a $196,671 credit (the "FPL Sears Credit").

        ii.    FPL maintained a $748,490 cash deposit on the Kmart accounts. The estimated final prepetition balance on the Kmart accounts was $134,780 leaving a $613,710 credit (the "FPL Kmart Credit").

        iii.    FPL has six Florida Builder Appliances accounts.  The two-month cash deposit amount for those six accounts is $16,484.

        iv.    As adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code for FPL, the Debtors shall:

      (a)    For the Debtors' Sears accounts, provide FPL with a two-month cash deposit of $516,000 as follows:

      1.    Allow FPL to move the FPL Sears Credit to the post-petition accounts of Sears as a partial post-petition deposit; and

      2.    Allow FPL to move $319,329 of the FPL Kmart Credit to the post-petition accounts of Sears as the

8

remainder of the post-petition deposit.

 (b) For the six Florida Builder Appliance accounts, allow FPL to move $16,484 of the FPL Kmart Credit to the post-petition accounts to serve as the post-petition deposit.

 (c) For the Kmart accounts, allow FPL to move the balance of the FPL Kmart Credit to the post-petition accounts to serve as the post-petition deposit.

D. Georgia Power Company ("GPC")

 i. GPC maintained a $684,586.45 cash deposit on the Sears accounts. The final prepetition balance on the Sears accounts was $123,858.48. Accordingly, $560,727.97 of the deposit remains that can be applied to post-petition security (the "GPC Sears Credit").

 ii. GPC maintained a $111,339.99 cash deposit on the Kmart Corporation accounts. The final prepetition balance on the Kmart accounts was a $19,601.79 credit. Accordingly, with the credit and the cash deposit, there is $130,941.77 remaining that can be applied to post-petition security (the "GPC Kmart Credit").

 iii. As adequate assurance of payment to Section 366(c) of the Bankruptcy Code for GPC, the Debtors shall:

 (a) Agree that the GPC Sears Credit can be moved to Sears's post-petition accounts with GPC to serve as the post-petition adequate assurance of payment deposit for those accounts.

 (b) Agree that the GPC Kmart Credit can be moved to Kmart Corporation's post-petition accounts with GPC to serve as the post-petition adequate assurance of payment deposit for those accounts.

E. Kentucky Power Company ("Kentucky Power")

 i. Kentucky Power held a $3,128.90 prepetition cash deposit (includes interest) that it applied to the unpaid prepetition charges leaving a $2,522.13 credit balance (the "Kentucky Power Credit"). As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code, the Debtors shall agree to allow Kentucky Power to move the Kentucky Power Credit to the post-petition account to serve as the post-petition adequate assurance of payment deposit.

F. Kingsport Power Company ("Kingsport Power")

 i. Kingsport Power held a $44,518.49 prepetition cash deposit that it

9

applied to the unpaid prepetition charges leaving a $33,352.64 credit balance (the "Kingsport Power Credit"). As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code, the Debtors shall agree to allow Kingsport Power to move the Kingsport Power Credit to the post-petition account to serve as the post-petition adequate assurance of payment deposit.

G.    Salt River Project ("SRP")

i.    SRP maintained a $182,648 surety bond on Debtor Kmart's accounts (the "SRP Kmart Bond"). The SRP Kmart Bond was reduced to $130,000. SRP made a $19,237.44 demand upon this bond, leaving a $110,762.56 balance.

ii.    SRP maintained a $417,508 surety bond on Sears Holding Corporation and affiliates accounts that was reduced to $300,000 (the "SRP Sears Bond"). SRP made a $118,077.03 demand upon this bond, leaving a $181,922.97 balance.

iii.    The Debtors shall agree to maintain the balances of the SRP Kmart Bond and the SRP Sears bond in place as adequate assurance of payment to SRP pursuant to Section 366(c) of the Bankruptcy Code.

iv.    SRP is also holding a credit on a Sears Home Improvement account in the amount of $3,185.51. As adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code, the Debtors shall agree to allow SRP to move the foregoing credit to serve as the post-petition deposit for that account.

v.    For the three accounts in the name of Westar Kitchen Bath, Inc., which are accounts for Debtor StarWest, LLC, the Debtors shall provide SRP with a two-month cash deposit in the amount of $14,030.

H.    San Diego Gas & Electric Company ("SDG&E")

i.    SDG&E maintained a $500,000 letter of credit for the Kmart and Sears accounts (the SDG&E LOC). SDG&E will be making the following demands upon the SDG&E LOC:

(a)    A $82,283.27 demand that was made and satisfied; and

(b)    A $39,048.85 demand, which will leave a balance of $378,667.88.

ii.    As adequate assurance of payment to SDG&E pursuant to Section 366(c) of the Bankruptcy Code, the Debtors shall:

(a)    Agree to maintain the balance of the SDG&E LOC in place; and

(b)    Provide SDG&E with a cash payment in the amount of

10

$43,788 to provide SDG&E with a full $422,456 two-month cash deposit (i.e $378,667.88 balance on the SDG&E LOC, plus $43,788 = $422,456).

I.    Southern California Edison Company ("SCE")

i.    SCE held a $2,347,500 letter of credit (the "SCE LOC") on the Debtors' accounts with SCE.

ii.    SCE has made a $1,048,828.33 demand upon the SCE LOC for unpaid prepetition charges, leaving a balance of $1,298,671.67 on the SCE LOC.

ii.    As adequate assurance of payment to SCE pursuant to Section 366(c) of the Bankruptcy Code, the Debtors shall:

(a)    Agree to maintain the balance of the SCE LOC in place; and

(b)    Provide SCE with a cash payment in the amount of $1,394,768 to provide SCE with a two-month deposit of $2,693,440 (i.e. $2,693,440 two-month cash deposit - $1,298,671.67 balance on the SCE LOC = $1,394,768 payment).

J.    Tucson Electric Power Company ("TEP")

i.    TEP held cash security deposits in the amounts of $34,050, $4,565 and $47,000 on the Sears accounts.   The prepetition charges owed on those accounts was in the amount of $44,136.57, leaving a balance of $41,478.60 (the "TEP Sears Credit").

ii.    TEP held a $65,000 cash security deposit on the Kmart, Inc. account.  The prepetition charges owed on that account was $11,928.74, leaving a balance of $51,071.26 (the "TEP Kmart Credit").

iii.    TEP did not hold a cash deposit on the Westar Corp. account the Debtors included in the Utility Order.

iv.    As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Sears Accounts, the Debtors shall provide TEP with a two-month cash deposit in the amount of $92,598 as follows:

(a)    Allow TEP to move the TEP Sears Credit to the Debtors' Sears accounts with TEP; and

(b)    Provide TEP with a cash payment in the amount of $51,119 (i.e. $92,598 - $41,478.60 = $51,119 payment).

11

v.      For the Debtors' Kmart account with TEP, the Debtors shall agree to allow TEP to move the TEP Kmart Credit to the Debtors' Kmart account as the post-petition deposit for that account.

vi.      For the Westar Corp Account, the Debtors shall provide TEP with a two-month cash deposit in the amount of $10,169.

K.      UNS Electric, Inc. ("UNSE")

i.      UNSE maintained surety bonds in the amounts of $29,180, $1,320 and $52,720 on the Kmart accounts (the "UNSE Bonds").

ii.      UNSE will be making the following demands on the bonds:

(a)      $29,180 bond - $1,501.33

(b)      $1,320 bond - $282.83

(c)      $52,720 bond - $10,634.64

iii.      The Debtors shall agree to maintain the balances of the UNSE Bonds in place as adequate assurance of payment to UNSE pursuant to Section 366(c) of the Bankruptcy Code.

L.      City of Ocala, Florida ("COF")

i.      COF has a prepetition cash security deposit in the amount of $374,346.24 on the Kmart accounts.

ii.      The total prepetition charges on the Kmart accounts total $263,904.66.

iii.      COF shall apply the $374,346.24 cash security deposit to the $263,904.66 in prepetition debt on those Kmart accounts pursuant to Section 366(c)(4) of the Bankruptcy Code, leaving a $110,441.58 deposit credit (the "COF Credit").

iv.      As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Kmart Accounts, the Debtors shall provide COF with a two-month cash deposit in the amount of $262,204 as follows:

(a)      Allow COF to move the COF Credit to the Debtors' Kmart accounts with COP; and

(b)      Provide COF with a cash payment in the amount of $151,762 ($262,404 - $110,441.58 = $151,762 payment).

v.      As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the three Sears Accounts with COF, the Debtors shall provide COF with a two-month cash deposit in the amount of $38,178.

M.    Commonwealth Edison Company ("Com Ed")

i.      Com Ed maintained a surety bond in the amount of $594,495 for Debtor Sears accounts (the "Com Ed Bond"). The final prepetition charges owed by Debtor Sears were in the amount of $452,962.62, leaving a balance of $141,532.38.

ii.      As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Sears Accounts, the Debtors shall provide Com Ed with a two-month cash deposit in the amount of $1,098,710 as follows:

(a)    The $141,532.38 balance of the Com Ed Bond shall remain in place while the Debtors have unpaid charges owed to Com Ed; and

(b)    Provide Com Ed with a cash payment in the amount of $957,178 ($1,098,710 - $141,532.38 = $957,178).

iii.      As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Kmart Accounts, the Debtors shall provide Com Ed with a two-month cash deposit in the amount of $68,332.

N.    Potomac Electric Power Company ("PEPCO")

i.      Pepco maintained a surety bond in the amount of $43,200 for Debtor Sears accounts (the "Pepco Sears Bond"). PEPCO will be making a demand upon the PEPCO Sears Bond in the full amount of the PEPCO Sears Bond because the prepetition claim on those accounts totals $63,634.60.

ii.      As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Sears Accounts, the Debtors shall provide Pepco with a two-month cash deposit in the amount of $21,390.

iii.      PEPCO maintained a $41,960 surety bond on the Debtor Kmart's accounts (the "PEPCO Kmart Bond"). PEPCO will be making a demand upon the PEPCO Kmart Bond in the amount of $26,812.70, leaving a $15,147.30 balance. The Debtor shall agree that the balance of the PEPCO Kmart Bond shall serve as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code for PEPCO's post-petition accounts with Debtor Kmart.

iv.      For the Sears Holding account with Pepco, the credit that remains after applying the $4,065 cash deposit to the final prepetition debt pursuant to Section 366(c)(4)

13

of the Bankruptcy Code is $954.16. The Debtors shall allow PEPCO to movie the $954.16 to the post-petition Sears Holding account with PEPCO to serve as the adequate assurance of payment deposit for that account pursuant to Section 366(c) of the Bankruptcy Code.

O.    Southwestern Electric Power Company ("SWEPCO")

    i.    SWEPCO held the following prepetition cash deposits:

        (a)    $723 on a Sears Holdings Management Corp account that will be applied to prepetition charges on that account that exceed the amount of the deposit.

        (b)    $25,778 and $11,327 cash deposits on two accounts in Louisiana, which after application to prepetition charges left credit balances of $14,879.07 and $6,043.45, respectively (collectively, the "SWEPCO Credit").

    ii.    As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for SWEPCO, the Debtors shall provide SWEPCO with a two-month cash deposit in the amount of $56,244 as follows:

        (a)    Allow SWEPCO to move the $20,922.52 SWEPCO Credit to the Debtors' post-petition accounts with SWEPCO; and

        (b)    Provide SWEPCO with a cash payment in the amount of $35,321 ($56,244 - $20,922.52 = $35,321).

P.    West Penn Power Company ("West Penn")

    i.    West Penn held a prepetition cash deposit in the amount of $91,447 on Debtor Kmart Corporations' accounts. After the $91,447 deposit was applied to those accounts, there is a credit in the amount of $53,115.26 (the "West Penn Kmart Credit").

    ii.    West Penn held a prepetition cash deposit in the amount of $23,742 on the Debtor Sears' accounts. After the deposit was applied to the final prepetition balances on those accounts, there is a credit in the amount of $6,972.40 (the "West Penn Sears Credit").

    iii.    As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Kmart Accounts, the Debtors shall provide West Penn with a two-month cash deposit in the amount of $204,786 as follows:

        (a)    Allow West Penn to move the West Penn Kmart Credit to the Debtors' Sears accounts with West Penn; and

        (b)    Provide West Penn with a cash payment in the amount of

14

$151,671 ($204,786 - $53,115.26 = $151,671).

iv.    As adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code for the Sears Accounts, the Debtors shall provide West Penn with a two-month cash deposit in the amount of $42,476 as follows:

(a)    Allow West Penn to move the West Penn Sears Credit to the Debtors' Sears accounts with West Penn; and

(b)    Provide West Penn with a deposit payment in the amount of $35,504 ($42,476 - $6,972.40 = $35,504).

15.    For the following Utilities that have no excess prepetition security to apply toward their post-petition deposit requests, they seek the following two-month cash deposits from the Debtors as adequate assurance of payment pursuant to Section 366 of the Bankruptcy Code:

A.    Appalachian Power Company – $116,211
B.    Indiana Michigan Power Company – 44,160
C.    Ohio Power Company - $268,726
D.    Public Service Company of Oklahoma - $55,878
E.    Arizona Public Service Company - $209,558
F.    PECO Energy Company – $376,745
G.    Atlantic City Electric Company - $66,550
H.    Consolidated Edison Company of New York, Inc. - $494,866
I.    Orange & Rockland Utilities - $87,946
J.    Virginia Electric and Power Company d/b/a Dominion Energy Virginia - $373,234
K.    The Dominion East Ohio Gas Company d/b/a Dominion East Ohio - $46,102
L.    Connecticut Light & Power Company - $154,449 (1.5-month)
M.    Public Service Company of New Hampshire - $8,040
N.    Yankee Gas Services Company - $25,535 (1.5-month)
O.    NStar Electric Company, Eastern Massachusetts - $140,576
P.    NStar Electric Company, Western Massachusetts - $54,952
Q.    Monongahela Power Company - $16,274
R.    Potomac Edison Company - $46,600
S.    Toledo Edison Company - $8,596
T.    Metropolitan Edison Company - $69,538
U.    Jersey Central Power & Light Company - $167,314
V.    Pennsylvania Electric Company - $95,978
W.    The Cleveland Electric Illuminating Company - $63,920
X.    Ohio Edison Company - $136,132
Y.    Pennsylvania Power Company - $7,552
Z.    Boston Gas Company - $40,440

AA.    Colonial Gas Company - $13,720
BB.    KeySpan Energy Delivery Long Island – $23,228
CC.    KeySpan Energy Delivery New York - $4,100
DD.    Massachusetts Electric Company - $185,942
EE.    Narragansett Electric Company - $1,922
FF.    Niagara Mohawk Power Corporation – $229,604
GG.    New York State Electric and Gas Corporation - $177,660
HH.    Rochester Gas & Electric Corporation - $55,760
II.    Southern California Gas Company - $9,256
JJ.    Sacramento Municipal Utility District - $86,922
KK.    Public Service Electric and Gas Company - $237,626
LL.    UNS Gas, Inc. - $7,334

16.    The Utilities would also ask for the following terms and conditions regarding

adequate assurance of payment:

A.    The Debtors agree to pay all post-petition charges of the Utilities by the applicable due date of the invoice, which is a due date established in accordance with applicable state laws, regulations and/or tariffs.

B.    If the Debtors no longer require service at an account for any reason, including the Debtors' termination of services, the Effective Date of a confirmed plan of reorganization or dismissal of the Debtors' chapter 11 cases, or the closing of sale of assets, the Debtors shall contact the applicable Utility and request that the account be closed.

C.    The Debtors shall provide the Utilities with advance written notice as to when they will no longer require utility goods/services from the Utilities that shall be received by the Utilities at least three (3) business days prior to the date that the Debtors no longer require utility goods/services from the Utilities.

D.    Once the Debtors close an account and pays all post-petition charges for that account, the Utility shall promptly refund to the Debtors the deposit on that account.

### Debtors' Failure To Timely Pay Post-Petition Invoices

17.    The Debtors have not been timely paying their post-petition bills from the Utilities

at the risk of having their post-petition utility service terminated for post-petition payment

defaults.

18.    From Wednesday, November 28, 2018 to December 20, 2018, Utilities' counsel

has provided Debtors' counsel and their payment agent information and/or unpaid post-petition bills in an effort to get these post-petition bills to avoid utility service terminations.

19.    Debtors' counsel and their payment agent have been responsive and are undertaking efforts to pay these past due post-petition invoices.  It, however, is troubling to the Utilities that the Debtors have already failed to timely pay many post-petition invoices at a time when they have access to post-petition financing.

20.    Also concerning to the Utilities is that the Debtors are also not paying other post-petition vendors.  *See* Motion of Latentview Analytics Corporation at Docket No. 1349.

### Debtors' Post-Petition Financing

21.    On the Petition Date, the Debtors filed the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* [Docket No. 7] (the "Debtors DIP Financing Motion").

22.    On November 25, 2018, the Debtors filed the *Debtors Supplemental Motion for Authority to (I) Obtain Junior Postpetition Financing and (II) Scheduling Final Hearing* [Docket No. 872] (the "Junior DIP Financing Motion").

23.    On November 26, 2018, the Debtors filed a *Notice of Filing of Statement of Stipulated Facts in Connection With the Debtors' DIP Financing Motion and Cash Management Motion* [Docket No. 887] (the "Financing Stipulation").  Paragraphs 15 and 16 of the Financing Stipulation provide:

A.    Paragraph 15 – "An analysis, budget or other build up that shows a breakdown of the costs that the Debtors estimate will be covered by the Winddown Account exists, but has not been disclosed because it is privileged work product."

17

B.    Paragraph 16 – "The Debtors' proposed budget requires incremental financing (beyond the DIP Financing and the Junior DIP financing for which the Debtors are seeking approval) beginning the week ending January 19, 2019 and aggregating to approximately $239 million by February 16, 2019 for a going concern sale of 505 stores."

24.    On November 30, 2018, Court entered a *Final Order (I) Authorizing The Debtors To (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 955] (the "Final DIP Order").

25.    The Court scheduled a December 20, 2018 hearing on the Junior DIP Financing Motion.

## Facts Regarding The Utilities

26.    Under the Utilities' billing cycles, the Debtors receive approximately one month of utility goods and/or services before the Utility issues a bill for such charges.  Once a bill is issued, the Debtors have approximately 20 to 30 days to pay the applicable bill.  If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account.  If the Debtors fail to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtors that they must cure the arrearage within a certain period of time or its service will be disconnected.  Accordingly, under the Utilities' billing cycles, the Debtors could receive at least two months of unpaid charges before the utility could cease the supply of goods and/or services for a post-petition payment default.

27.    In order to avoid the need to bring witnesses and have lengthy testimony regarding

18

the Utilities regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of

the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles.  Pursuant to the

foregoing request and based on the voluminous size of the applicable documents, the Utilities'

web site links to the following tariffs and/or state laws, regulations and/or ordinances are set

forth in **Exhibit 2** to this Motion.

**Discussion**

**A.    THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED HEREIN PURSUANT TO SECTION 366(c) OF THE BANKRUPTCY CODE.**

**1.    The Adequate Assurance Account Does Not Provide the Utilities With Adequate Assurance of Payment.**

This Court should not have considered the Adequate Assurance Account as a form of

adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides

that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and

(2) The Bank Account is not a form of adequate assurance of payment recognized by Section

366(c)(1)(A).  Moreover, even if the Court were to consider the Adequate Assurance Account as

to the Utilities, the manner in which it was drafted and approved make it nothing more than an

underfunded source of funds to pay administrative expense claims that is subject to liens and

capable of being reduced or eliminated before the Utilities could make a draw upon it.

Specifically, in the Adequate Assurance Letter to the Debtors, the Utilities raised the following

issues regarding the Adequate Assurance Account:

1.    The Debtors have offered only $0 in the Adequate Assurance Account for certain American Electric Power accounts, APS, SCE and only $128.44 for SDG&E.

2.    If an amount to be contained in the Adequate Assurance Account is only a two (2) week amount for a Utility, then the Utilities object to the amount because the Utilities bill the Debtors' monthly for the prior month's charges and provide generous payment terms for payment and a two (2) week amount is simply

19

insufficient to cover those charges.

3.    Although certain courts, including this Court, have ignored the plain and clear language of Section 366(c) and utility industry custom (no Utility has a tariff provision that provides that a cash deposit is a segregated bank account) to hold that a segregated escrow account somehow equals a cash deposit held by the Utilities, the Utilities take the position that the Adequate Assurance Account is not sufficient because it is not a form of adequate assurance of payment permitted by Section 366(c).  Moreover, as set forth below, the Adequate Assurance Account and the related restrictions are not sufficient adequate assurance of payment because they are illusory and do not provide the Utilities with any real or meaningful security for the payment of the Utilities' post-petition invoices.

4.    The Adequate Assurance Account is subject to the liens of the Debtors' post-petition financing.

5.    The Debtors can remove amounts set aside for the Utilities before final post-petition charges on the applicable account(s) are paid in full.  Specifically, paragraph 4 of the Utility Order provides that the "portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the earlier of (a) the Debtors' payment in full of all postpetition obligations due and owing to the applicable Utility Provider, (b) the Debtors' termination of services with such Utility Provider, or (iii) the conclusion of these chapter 11 cases, if not applied earlier."

   A.    If the Debtors terminate service for an account, the Debtors may still be responsible for previously billed charges, in addition to the charges that will be billed for service provided up to the date that service was terminated.  To have any security for that account returned to the Debtors before payment of the foregoing charges simply because the Debtors closed the account renders the security worthless and non-existent.

   B.    Additionally, it is not clear what the words "conclusion of these chapter 11 cases" means.  Does it mean when the cases are converted to chapter 7 and the chapter 11 proceedings are concluded?  Does it mean when an order is entered closing the cases?  If the Adequate Assurance Deposit is to be something more than a subterfuge, the amount set aside for a Utility should remain in place until the Debtors' certify that they have paid all post-petition charges to that Utility.

6.    Paragraph 7 of the Utility Order provides that in order to make a demand upon the Adequate Assurance Deposit for the amount set aside for that Utility, the Utility must comply with the following requirements:

   A.    A Utility cannot make a demand until the bill is past due and the applicable cure period has passed.

20

B.    The Utility must provide the Debtors with notice of such default. It appears the foregoing notice is in addition to the notice that the Debtors would have already received with the regularly issued bill that was not paid. If that is not correct, please let me know.

C.    If the Debtors do not pay the bill within five business days of receiving this additional notice, the Utility can then draft and file an application with the Court certifying that payment has not been made and request payment from the Adequate Assurance Deposit. It is not clear from the Utility Order whether the Debtors and/or lender (presumably the Debtors' lender is the entity holding the Adequate Assurance Account because it is not specified in the Utility Motion or the Utility Order who is holding these funds) have the obligation to release the funds to the Utility at this point or whether the Utility must schedule their application for a hearing in order to finally get paid, or if the Debtor could contest such an application.

7.    If the Utilities have to schedule a hearing on the foregoing application after going through all of the foregoing steps to get paid, then what the Debtors are offering is nothing more than an administrative expense priority backed up by a two-week segregated account that may or may not have funds to pay the unpaid bill or bills (It most likely will not have sufficient funds if the application is for a full month of charges on multiple accounts). As Section 366(c)(1)(B) specifically provides that an administrative expense priority shall not constitute an assurance of payment, the Debtors' proposed Adequate Assurance Account and the related restrictions that require the Utilities to draft, file and litigate an administrative expense priority application in order to try and obtain limited funds from the Adequate Assurance Account is not a valid form of adequate assurance under the Section 366.

8.    If the Debtors or the lender are required to actually pay on an application, what is the deadline for such payment? There is nothing in the Utility Motion nor the Utility Order that provides when such a payment must be made.

Accordingly, the Adequate Assurance Account is: (a) not the **form** of adequate assurance requested by the Utilities; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance as drafted in the form of the Adequate Assurance Account. Therefore, the Court should grant this Motion and require the Debtors to promptly provide the Utilities with the adequate assurance of payment in the forms and amounts set forth in paragraphs 14, 15 and 16 of this Motion.

**B.    THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power*

*Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense,

without more, could constitute adequate assurance of payment in certain cases.  Section

366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility

services from a provider that holds a monopoly on such services, with the need of the utility to

ensure for itself and its rate payers that it receives payment for providing these essential services.

*See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990).  The deposit or other security "should

bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re*

*Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986).  In making such a

determination, it is appropriate for the Court to consider "the length of time necessary for the

utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d

Cir. 1985).

As set forth above, the Debtors have already failed to timely pay their post-petition bills

to the Utilities and may not be timely paying other post-petition vendors at a time when the

Debtors have access to post-petition financing.  Accordingly, the Debtors face a very uncertain

future with the substantial risk of administrative insolvency.

22

Furthermore, in contrast to the improper treatment proposed to the Debtors' Utilities, the Debtors have made certain that post-petition professionals are favored creditors over the Utilities. Specifically, even though there is no Bankruptcy Code provision guaranteeing the payment in full of professional fees, the Debtors have sought and obtained a carve out from their post-petition financing to ensure the payment in full of certain professional fees upon the delivery of a Carve Out Trigger Notice and an additional $20 million to pay for such fees after the delivery of the Carve Out Trigger Notice. Although the Utilities understand that counsel and professionals for the Debtors and the Unsecured Creditors' Committee want to be paid for their post-petition fees, the full guaranty of payment afforded to those professionals is in stark contrast to the essentially non-existent security that the Debtors have offered to the Utilities in the Utility Order. If professionals with complete knowledge of the Debtors' financial position and future prospects believe they need to fully secure their post-petition fees, then creditors such as the Utilities, without such knowledge, certainly believe they are entitled to more than what the Debtors have offered as adequate assurance of payment.

Therefore, despite the fact that the Utilities continue to provide the Debtors with crucial post-petition utility services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are depriving the Utilities of any meaningful adequate assurance of payment for which they are entitled to for continuing to provide the Debtors with post-petition utility goods/services.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.      Awarding the Utilities the post-petition adequate assurance of payment

pursuant to Section 366 in the amount and form satisfactory to the Utilities, which are the

forms and amounts requested herein; and

2.      Providing such other and further relief as the Court deems just and

appropriate.

Dated: Garden City, New York
        December 21, 2018

                                    MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

                        By:     /s/ Michael Kwiatkowski
                                Thomas R. Slome
                                Michael Kwiatkowski
                                990 Stewart Avenue, Suite 300
                                P.O. Box 9194
                                Garden City, New York 11530-9194
                                (516) 741-6565
                                Email: tslome@msek.com
                                        mkwiatkowski@msek.com

                                and

                                Russell R. Johnson III
                                John M. Craig
                                Law Firm of Russell R. Johnson III, PLC
                                2258 Wheatlands Drive
                                Manakin-Sabot, Virginia 23103
                                (804) 749-8861
                                Email: russell@russelljohnsonlawfirm.com
                                        john@russelljohnsonlawfirm.com

                                *Co-Counsel for Appalachian Power Company,
                                Indiana Michigan Power Company, Kentucky Power
                                Company, Kingsport Power Company, Ohio Power
                                Company, Public Service Company of Oklahoma and
                                Southwestern Electric Power Company, Arizona Public
                                Service Company, Baltimore Gas and Electric Company,
                                Commonwealth Edison Company, PECO Energy
                                Company, The Potomac Electric Power Company,*

*Delmarva Power & Light Company, Atlantic City Electric Company, City of Ocala, Florida, Consolidated Edison Company of New York, Inc., Orange & Rockland Utilities, Virginia Electric and Power Company d/b/a Dominion Energy Virginia, The Dominion East Ohio Gas Company d/b/a Dominion East Ohio, Connecticut Light & Power Company, Public Service Company of New Hampshire, Yankee Gas Services Company, NStar Electric Company, Eastern Massachusetts and NStar Electric Company, Western Massachusetts, West Penn Power Company, Monongahela Power Company, Potomac Edison Company, Toledo Edison Company, Metropolitan Edison Company, Jersey Central Power & Light Company, Pennsylvania Electric Company, The Cleveland Electric Illuminating Company, Ohio Edison Company, Pennsylvania Power Company, Florida Power & Light Company, Georgia Power Company, Boston Gas Company, Colonial Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy Delivery New York, Massachusetts Electric Company, Narragansett Electric Company, Niagara Mohawk Power Corporation, New York State Electric and Gas Corporation, Rochester Gas & Electric Corporation, Salt River Project, San Diego Gas and Electric Company, Southern California Gas Company, Sacramento Municipal Utility District, Southern California Edison Company, Tucson Electric Power Company, UNS Electric, Inc., UNS Gas, Inc. and Public Service Electric and Gas Company*

4195182