# EXHIBIT 1

Attorneys
Russell R. Johnson III
John M. Craig
Lindsay K. Biggs

**LAW FIRM OF RUSSELL R. JOHNSON III, PLC**
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone (804) 749-8861
Facsimile (804) 749-8862
russell@russelljohnsonlawfirm.com

Northern Virginia Office
John M. Craig
14890 Washington Street
First Floor
Haymarket, VA 20169
Phone: (571) 261-5641
Facsimile: (571) 261-5642

November 9, 2018

**By First-Class Mail**

Sears Holdings Corporation
Attn: Stephen Sitley
3333 Beverly Road
Hoffman Estates, Illinois 60179

**Via Email**

Jacqueline Marcus, Esq.
Jessica Liou, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Email: jacqueline.marcus@weil.com
       jessica.liou@weil.com

Jeri Leigh Miller, Esq.
Weil Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Email: jerileigh.miller@weil.com

Paul D. Leake, Esq.
Shana A. Elberg, Esq.
George R. Howard, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036
Email: paul.leake@skadden.com
       shana.elberg@skadden.com
       george.howard@skadden.com

November 9, 2018
Page 2

Paul Schwartzberg, Esq.
Richard Morrissey, Esq.
Office of the United States Trustee for Region 2
201 Varick Street, Suite 1006
New York, New York 10014
Email: paul.schwartzberg@usdoj.gov
       richard.morrissey@usdoj.gov

Subject: *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD)
United States Bankruptcy Court for the Southern District of New York

Counsel:

This firm was recently retained by the following utility companies regarding their requests for adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code in the above-referenced, jointly-administered, Chapter 11 bankruptcy cases, and to address the *Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment To Utility Providers, (II) Establishing Procedures For Determining Adequate Assurance of Payment For Future Utility Services, and (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Service* (the "Utility Order")(Docket No. 461): American Electric Power, which is a doing business as name for the operating companies that have accounts with the Debtors: Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Public Service Company of Oklahoma and Southwestern Electric Power Company ("collectively, AEP"), Arizona Public Service Company ("APS"), Baltimore Gas and Electric Company ("BGE"), Commonwealth Edison Company ("ComEd"), PECO Energy Company ("PECO"), The Potomac Electric Power Company ("Pepco"), Delmarva Power & Light Company ("DPL"), Atlantic City Electric Company ("ACE"), City of Ocala, Florida ("COF"), Consolidated Edison Company of New York, Inc. ("Con Ed"), Orange & Rockland Utilities ("O & R"), Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("DEV"), The Dominion East Ohio Gas Company ("DEO"), NStar Electric Company – East ("NStar East"), West Penn Power Company ("West Penn"), Monongahela Power Company ("Mon Power"), Potomac Edison Company ("PE"), Toledo Edison Company ("TE"), Metropolitan Edison Company ("Met-Ed"), Jersey Central Power & Light Company ("JCP&L"), Pennsylvania Electric Company ("Penelec"), The Cleveland Electric Illuminating Company ("CEI"), Ohio Edison Company ("Ohio Edison"), Pennsylvania Power Company ("Penn Power"), Florida Power & Light Company ("FPL"), Georgia Power Company ("Georgia Power"), Boston Gas Company ("BGC"), Cape Cod Gas Company ("CCG"), Lowell Gas Company ("LGC"), KeySpan Energy Delivery Long Island ("KEDLI"), KeySpan Energy Delivery New York ("KEDNY"), Massachusetts Electric Company ("MEC"), Narragansett Electric Company ("NEC"), Niagara Mohawk Power Corporation (NIMO),[1] New York State Electric and Gas Corporation ("NYSEG"), Rochester Gas & Electric Corporation ("RGE"), Salt River Project ("SRP"), San Diego Gas and Electric Company ("SDG&E"), Southern California Gas Company ("SoCalGas"), Sacramento Municipal Utility District ("SMUD"), Southern California Edison Company ("SCE"), Tucson Electric

---

[1] The Debtors appear to list all of the foregoing National Grid entities as National Grid in the Utility Motion: Boston Gas Company ("BGC"), Cape Cod Gas Company ("CCG"), Lowell Gas Company ("LGC"), KeySpan Energy Delivery Long Island ("KEDLI"), KeySpan Energy Delivery New York ("KEDNY"), Massachusetts Electric Company ("MEC"), Narragansett Electric Company ("NEC"), Niagara Mohawk Power Corporation (NIMO).

November 9, 2018
Page 3

Power Company ("TEP"), UNS Electric, Inc. ("UNSE"), UNS Gas, Inc. ("UNSG"), Public Service Electric and Gas Company ("PSE&G"), The Connecticut Light and Power Company ("CL&P"), Public Service Company of New Hampshire ("PSNH"), Yankee Gas Services Company ("Yankee Gas") and NStar Electric Company – West ("NStar West") (collectively, the "Utilities"). As an initial matter, we are mailing a copy of this letter to Debtor Sears Holding Corporation without the attachments to this letter. If that Debtor wants copies of the attachments, it can obtain them from Debtors' counsel.

The Utilities are making Additional Assurance Requests pursuant to the Adequate Assurance Procedures attached at Exhibit 2 to the Utility Motion. Some of the Adequate Assurance Procedures are contrary to the provisions of Section 366 and will be addressed herein. For example, Section 366(c) specifically provides that the Debtors must provide the Utilities with adequate assurance of payment satisfactory to the utility, not the other way around. Accordingly, without waiving any of their rights under Section 366, the Utilities are making their requests pursuant to Section 366(c) of the Bankruptcy Code.

Section 5 of the Adequate Assurance Procedures sets forth the following regarding Additional Assurance Requests:

A. **Location For Which Utility Services Are Provided**

Attached to this letter are account charts which set forth service locations, estimated prepetition losses and post-petition deposit requests on an account by account basis.

B. **Summary of Debtors' Payment History Relevant To the Affected Account**

Section 366(c)(3)(B) of the Bankruptcy Code provides:

> (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
>
> (i) the absence of security before the date of the filing of the petition;
>
> (ii) the payment by the debtor of charges for utility services in a timely manner before the date of the filing of the petition; or
>
> (iii) the availability of any administrative expense priority.

Accordingly, as information on the Debtors' prepetition payment history and the existence or absence of security are now statutorily irrelevant, the foregoing information will not be provided. Moreover, as the Debtors were able to determine their average monthly utility expenses and the approximate amount of outstanding charges as of the petition date for paragraph 8 of the Utility Motion (Docket No. 196), presumably the Debtors have access to the same information regarding their prepetition payment history and prepetition security and this requirement is nothing more than an additional burden to preclude the Utilities from seeking meaningful adequate assurance of payment.

The Utilities, however, in a supplemental letter to Debtors' counsel will address the prepetition security held by some of the Utilities and issues pertaining to the foregoing security.

November 9, 2018
Page 4

### C. Why The Proposed Adequate Assurance Is Not Sufficient

In the Utility Order, the Debtors have supposedly offered to include two (2) week amounts in the Adequate Assurance Account for the Utilities, "less any amounts already on deposit or supported by a letter of credit with any such Utility Provider that exceed outstanding prepetition amounts owed to such Utility Provider. Reducing supposed two-week amounts contained in the Adequate Assurance Account by what the Debtors believe will be excess deposit credits or amounts remaining on letters of credit does not make sense because the Utilities did not issue final prepetition invoices to the Debtors, and as such, the Debtors do not know what the final prepetition debt amounts for each of the Utilities will be. Indeed, the Utility Service List attached as Exhibit "B" to the Utility Motion provides that the Debtors are offering no adequate assurance of payment whatsoever to American Electric Power, APS, SCE, and only $128.44 to SDG&E because those Utilities held letters of credit, even though the Debtors do not know what the final prepetition debt amounts will be as to those Utilities.

If an amount to be contained in the Adequate Assurance Account is only a two (2) week amount for a Utility, then the Utilities object to the amount because the Utilities bill the Debtors' monthly for the prior month's charges and provide generous payment terms for payment and a two (2) week amount is simply insufficient to cover those charges.

As to the Debtors' proposed form of adequate assurance of payment, although certain courts, including the Court in which these cases are pending, have ignored the plain and clear language of Section 366(c) and utility industry custom (no Utility has a tariff provision that provides that a cash deposit is a segregated bank account) to hold that a segregated escrow account somehow equals a cash deposit held by the Utilities, the Utilities take the position that the Adequate Assurance Account is not sufficient because it is not a form of adequate assurance of payment permitted by Section 366(c). Moreover, as set forth below, the Adequate Assurance Account and the related restrictions are not sufficient adequate assurance of payment because they are illusory and do not provide the Utilities with any real or meaningful security for the payment of the Utilities' post-petition invoices.

With respect to the Adequate Assurance Account, it comes with the following restrictions:

1. It is subject to the liens of the Debtors' post-petition financing.

2. The Debtors can remove amounts set aside for the Utilities before final post-petition charges on the applicable account(s) are paid in full. Specifically, paragraph 4 of the Utility Order provides that the "portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the of (a) the Debtors' payment in full of all postpetition obligations due and owing to the applicable Utility Provider, (b) the Debtors' termination of services with such Utility Provider, or (iii) the conclusion of these chapter 11 cases, if not applied earlier." If the Debtors terminate service for an account, the Debtors may still be responsible for previously billed charges, in addition to the charges that will be billed for service provided up to the date that service was terminated. To have any security for that account returned to the Debtors before payment of the foregoing charges simply because the Debtors closed the account renders the security worthless and non-existent.

November 9, 2018
Page 5

Additionally, it is not clear what the words "conclusion of these chapter 11 cases" means. Does it mean when the cases are converted to chapter 7 and the chapter 11 proceedings are concluded? Does it mean when an order is entered closing the cases? If the Adequate Assurance Deposit is to be something more than a subterfuge, the amount set aside for a Utility should remain in place until the Debtors' certify that they have paid all post-petition charges to that Utility.

3. Paragraph 7 of the Utility Order provides that in order to make a demand upon the Adequate Assurance Deposit for the amount set aside for that Utility, the Utility must comply with the following requirements:

a. A Utility cannot make a demand until the bill is past due and the applicable cure period has passed.

b. The Utility must provide the Debtors with notice of such default. It appears the foregoing notice is in addition to the notice that the Debtors would have already received with the regularly issued bill that was not paid. If that is not correct, please let me know.

c. If the Debtors do not pay the bill within five business days of receiving this additional notice, the Utility can then draft and file an application with the Court certifying that payment has not been made and request payment from the Adequate Assurance Deposit. It is not clear from the Utility Order whether the Debtors and/or lender (presumably the Debtors' lender is the entity holding the Adequate Assurance Account because it is not specified in the Utility Motion or the Utility Order who is holding these funds) have the obligation to release the funds to the Utility at this point or whether the Utility must schedule their application for a hearing in order to finally get paid, or if the Debtor could contest such an application.

4. If the Utilities have to schedule a hearing on the foregoing application after going through all of the foregoing steps to get paid, then what the Debtors are offering is nothing more than an administrative expense priority backed up by a two week segregated account that may or may not have funds to pay the unpaid bill or bills (It most likely will not have sufficient funds if the application is for a full month of charges on multiple accounts). As Section 366(c)(1)(B) specifically provides that an administrative expense priority shall not constitute an assurance of payment, the Debtors' proposed Adequate Assurance Account and the related restrictions that require the Utilities to draft, file and litigate an administrative expense priority application in order to try and obtain limited funds from the Adequate Assurance Account is not a valid form of adequate assurance under the Section 366.

5. If the Debtors or the lender are required to actually pay on an application, what is the deadline for such payment? There is nothing in the Utility Motion nor the Utility Order that provides when such a payment must be made.

6. On an unrelated note, the applicable Utility will most likely terminate service to the applicable account(s) by the time they get through all of these procedures. Accordingly, the Debtors may seriously want to consider if these procedures really make sense when they could lead to service termination for nonpayment of post-petition charges.

November 9, 2018
Page 6

7. Even though there is no Bankruptcy Code provision guaranteeing the payment in full of professional fees, the Debtors are seeking a carve out from their post-petition financing to ensure the payment in full of certain professional fees upon the delivery of a Carve Out Trigger Notice and an additional $20 million to pay for such fees after the delivery of the Carve Out Trigger Notice. Although the Utilities understand that counsel and professionals for the Debtors and the Unsecured Creditors' Committee want to be paid for their post-petition charges, the full guaranty of payment afforded to those professionals is in stark contrast to the essentially non-existent security that the Debtors have offered to the Utilities in the Utility Order. If professionals with complete knowledge of the Debtors' financial position and future prospects believe they need to fully secure their post-petition fees, then creditors such as the Utilities, without such knowledge, certainly believe they are entitled to more than what the Debtors have offered as adequate assurance of payment.

D. **Adequate Assurance Of Payment Requests From The Utilities**

As set forth in the attached account/deposit charts, the Utilities are seeking the following cash deposits from the Debtors, which are amounts that they are authorized to obtain pursuant to applicable state law, tariffs and/or regulations:

(a) AEP - $565,085 (2-month);
(b) APS - $345,717 (2.5-month);
(c) BGE - $114,418 (2-month);
(d) ComEd - $494,865 (2-month);
(e) PECO – (i) Sears - $171,870 (2-month), (ii) Kmart - $204,875 (2-month);
(f) DPL - $144,150 (2-month);
(g) ACE - $101,250 (2-month);
(h) COF - $300,216 (2-month);
(i) Con Ed - $494,865 (2-month);
(j) O&R - $87,946 (2-month);
(k) DEV – (i) Sears - $248,408 (2-month), (ii) Kmart - $124,826 (2-month);
(l) DEO - $25,403 (2-month);
(m) NStar East - $140,576 (2-month);
(n) West Penn – (i) Sears - $42,476 (2-month), (ii) Kmart - $204,048 (2-month);
(o) Mon Power – (i) Sears - $12,778 (2-month), (ii) Kmart - $3,456 (2-month);
(p) PE – (i) Sears - $15,000 (2-month), (ii) Kmart - $31,600 (2-month);
(q) TE – (i) Sears - $8,596 (2-month);
(r) Met-Ed – (i) Sears - $32,686 (2-month), (ii) Kmart - $36,672 (2-month);
(s) JCP&L – (i) Sears - $113,816 (2-month), (ii) Kmart - $31,756 (2-month);
(t) Penelec – (i) Sears - $41,434 (2-month), (ii) Kmart - $54,543 (2-month);
(u) CEI – (i) Sears - $34,176 (2-month), (ii) Kmart - $29,743 (2-month);
(v) Ohio Edison – (i) Sears - $42,162 (2-month), (ii) Kmart - $93,970;
(w) Penn Power – (i) Sears - $1,272 (2-month), (ii) Kmart - $6,280 (2-month);
(x) FPL – (i) Sears - $571,234 (2-month), (ii) Kmart - $176,164;
(y) Georgia Power - $413,545 (2-month);
(z) BGC - $40,440 (2-month);
(aa) CCG - $10,900 (2-month);
(bb) LGC - $2,820 (2-month);
(cc) KEDLI - $23,228 (2-month);
(dd) KEDNY - $4,100 (2-month);

November 9, 2018
Page 7

(ee) MEC - $185,942 (2-month);
(ff) NEC - $187,864 (2-month);
(gg) NIMO - $229,604 (2-month);
(hh) NYSEG - $177,660 (2-month);
(ii) RGE - $55,760 (2-month);
(jj) SRP - $191,950 (2-month);
(kk) SDG&E - $422,455 (2-month);
(ll) SoCalGas -- (i) Sears - $6,975 (2-month), (ii) Kmart - $2,255 (2-month);
(mm) SMUD - $126,278 (2-month;
(nn) SCE – (i) Sears - $1,593,540 (2-month), (ii) Kmart - $475,195 (2-month);
(oo) TEP - $189,568 (2.5-month);
(pp) UNSE - $37,294 (2.5-month);
(qq) UNSG - $9,168 (2.5-month);
(rr) PSE&G - $107,994 (2-month);
(ss) CL&P – Not yet available. To be provided in supplemental letter.
(tt) PSNH – Not yet available. To be provided in supplemental letter.
(uu) Yankee Gas – Not yet available. To be provided in supplemental letter.
(vv) NStar – West – Not yet available. To be provided in supplemental letter.

   Finally, the Debtors' Lease Rejection Procedures Motion (Docket No. 24) does not provide that the Utilities would receive notice of a lease rejection resulting in the Debtors' no longer requiring post-petition utility service at that lease location. The Utilities request that the Debtors provide counsel for the Utilities with notice of lease rejections so that such lease rejections can be forwarded to the applicable Utility.

   After you have had a chance to review this letter with the Debtors, please call me at 804-749-8861 to discuss. Thank you for your assistance.

Sincerely,

Russell R. Johnson III

Attachments