**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                           :

                                :       **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,   :

                                :       **Case No. 18-23538 (RDD)**

                                :

            Debtors.[1]            :       **(Jointly Administered)**

---------------------------------------------------------------x

## ORDER (I) APPROVING THE SALE OF THE SEARS HOME IMPROVEMENT BUSINESS AND (II) GRANTING RELATED RELIEF

Upon the motion, dated November 3, 2018 (ECF No. 450) (the "**Motion**")[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 363 and 365

of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004,

6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "**Local Rules**"), for an order (i)(a) approving the bidding procedures

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

(the "**Bidding Procedures**"), in connection with a sale of the Sears Home Improvement business (the "**SHIP Business**") owned by the Debtors (the "**Sale Transaction**"), (b) authorizing the Debtors to offer certain bid protections (the "**Bid Protections**"), (c) scheduling an auction of the Assets (the "**Auction**") and a hearing for approval of the proposed Sale Transaction (the "**Sale Hearing**"), (d) authorizing and approving the form and manner of notice of the Sale Transaction, Auction, and Sale Hearing (the "**Sale Notice**"), (e) authorizing and approving the procedures for the assumption and assignment of executory contracts, unexpired personal property leases, or unexpired non-residential real property leases of the SHIP Business (collectively, the "**Contracts and Leases**," and such procedures, the "**Assumption and Assignment Procedures**") and approving the notice to each non-Debtor counterparty (each a "**Counterparty**") to a relevant Contract or Lease regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**") (the "**Assumption and Assignment Notice**"), (ii) approving the sale of the SHIP Business in accordance with the Stalking Horse Agreement, and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having taken into consideration this Court's prior order, dated November 16, 2018 (ECF No. 775) (the "**Bidding Procedures Order**"), approving bidding and assumption and assignment procedures for the sale of the SHIP Business (the "**Bidding Procedures**") and granting certain related relief; and no Qualified Bids having been received in accordance with the Bidding Procedures and, therefore, Service.com (the "**Buyer**") having been designated the Successful Bidder (as defined in the Bidding Procedures) for the SHIP Business; and this Court having conducted a hearing to consider the Sale Transaction on December 18, 2018 (the "**Sale Hearing**"), during which all interested parties were offered an opportunity to be heard with respect to the Sale Transaction;

WEIL:\96822338\13\73217.0004

and this Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the

Asset Purchase Agreement, dated as of November 2, 2018, between the Debtors and the Buyer

(as amended on November 13, 2018, the "**Asset Purchase Agreement**"), and (iii) the arguments

of counsel made, and the evidence proffered and adduced, at the Sale Hearing; and due notice of

the Motion, the Sale Hearing and the form of this Order having been provided in accordance

with the *Amended Order Implementing Certain Notice and Case Management Procedures*,

entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"), and

it appearing that no other or further notice need be provided; and it appearing that the relief

requested in the Motion and granted hereby is in the best interests of the Debtors, their estates,

their creditors, and all parties in interest; and after due deliberation and sufficient cause

appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein

constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052

made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.  The

Court's findings also shall include any oral findings of fact and conclusions of law made by the

Court during or at the conclusion of the Hearing.

WEIL:\96822338\13\73217.0004

B.      **Jurisdiction and Venue**.   This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Statutory and Rule Predicates**.   The statutory and other legal predicates for the relief sought in the Motion are sections 363 and 365 of the "Bankruptcy Code, Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Bankruptcy Rules, and Rules 6004-1, 6005-1, and 6006-1 of the Local Rules.

D.      **Final Order**.   This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).   In the absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the Asset Purchase Agreement at any time after entry of this Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

E.      **Notice and Opportunity to Object**.   As evidenced by the affidavit of service filed with the Court, a fair and reasonable opportunity to object to and to be heard with respect to the Motion, including the proposed assumption and assignment of the Contracts and Leases to the Buyer, as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Amended Case Management Order has been provided to all persons entitled to notice, including, but not limited to, the following: (i) counterparties to the Contracts and Leases, (ii) the Buyer, (iii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any assets of the SHIP Business (the "**Transferred Assets**"), and (iv) all parties who have requested notice in these chapter 11 cases pursuant to

4

Bankruptcy Rule 2002.    Such notice was good, sufficient, and appropriate under the circumstances.  No other or further notice of the Motion is required.

F.    **Title to the Transferred Assets**.  The Transferred Assets that are subject to the Asset Purchase Agreement constitute the property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G.    **Sound Business Purpose**.    The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Asset Purchase Agreement and the other agreements, documents, and instruments deliverable thereunder, including, but not limited to, the Services Agreement, the IP Assignment Agreement, the Trademark License Agreement, the Deeds, the Assignment and Assumption of Lease, the Bill of Sale and Assignment and Assumption Agreement, the Escrow Agreement (each as defined in the Asset Purchase Agreement), and the co-occupancy license agreement (collectively, with the Asset Purchase Agreement, the "**Transaction Documents**"), and approval of the Sale Transaction.    The Debtors' entry into and performance under the Transaction Documents (i) constitute a sound and reasonable exercise of the Debtors' business judgment, (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale Transaction include, but are not limited to, the following: (i) the Purchase Price set forth in the Asset Purchase Agreement constitutes the highest or best offer received for the Transferred Assets, (ii) the Asset Purchase Agreement and the transactions contemplated thereby present the best opportunity to maximize the value of the SHIP Business on a going concern basis and avoid decline and devaluation of the SHIP Business, (iii) unless the Sale Transaction and all of the other transactions contemplated by the Asset Purchase Agreement

5

are concluded expeditiously, as provided for pursuant to the Asset Purchase Agreement, certainty of consummating the Sale Transaction will be compromised and recoveries to creditors may be materially diminished, and (iv) the value of the Debtors' estates will be maximized through the sale of the Transferred Assets pursuant to the Asset Purchase Agreement.

H.      **Compliance with Bidding Procedures Order**.   The Debtors and the Buyer complied with the Bidding Procedures Order and the Bidding Procedures in all respects. The Buyer subjected its bid to the competitive Bidding Procedures approved by this Court and the Buyer was designated the Successful Bidder (as defined in the Bidding Procedures) for the Transferred Assets in accordance with the Bidding Procedures Order and Bidding Procedures. Other than the Buyer, no other party submitted a Qualified Bid, and in accordance with the Bidding Procedures, the Debtors were not required to conduct an Auction for the Transferred Assets.  The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Transferred Assets.

I.      **Sale Process**.  (i) The Debtors and their advisors, including Lazard Frères & Co., engaged in a robust and extensive marketing and sale process, both prior to the commencement of these chapter 11 cases and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures, (ii) the Debtors conducted a fair and open sale process, (iii) the sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Transferred Assets, and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures maximized the value of the Transferred Assets for the Debtors and their estates.

WEIL:\96822338\13\73217.0004

J.      **Fair Consideration; Highest or Best Value.**   The consideration to be provided by the Buyer under the Asset Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.   Such consideration constitutes the highest or best bid for the Transferred Assets.

K.      **No Successor or Derivative Liability**.   The sale and transfer of the Transferred Assets to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer and the Buyer's occupation and use of the Transferred Assets will not subject the Buyer to any liability (including any successor liability) with respect to the operation of any of the Debtors' businesses before Closing (as defined in the Asset Purchase Agreement) or by reason of such transfer, except that, upon the Closing, the Buyer shall become liable for the applicable Assumed Liabilities.   Buyer shall have no obligations with respect to any liabilities of the Debtors or the Debtors' estates arising out of or related to the Transferred Assets, except as expressly provided in the Asset Purchase Agreement.   The Sale Transaction contemplated under the Asset Purchase Agreement does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates.

L.      **Good Faith; No Collusion**.   The Transaction Documents and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Debtors and the Buyer in good faith, without collusion or fraud, and from arms'-length bargaining positions. The Buyer is a "good faith purchaser" and is acting in good faith within the meaning of section

WEIL:\96822338\13\73217.0004

363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Effective upon the Closing, it shall be judicially determined that neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The Buyer has proceeded in good faith in all respects in that, among other things, (i) the Buyer recognized that the Debtors were free to deal with any other party interests in acquiring the Acquired Assets, (ii) the Buyer complied with the provisions of the Bidding Procedures Order, (iii) the Buyer's bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order, and (iv) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate. The sale price in respect of the Transferred Assets was not controlled by any agreement among potential bidders and neither the Debtors nor the Buyer have engaged in collusion or fraud or any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, neither the Asset Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to damages or other recovery pursuant to section 363(n) of the Bankruptcy Code. The Buyer is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Buyer and the Debtors.

M.      **Notice**. As evidenced by the certificates of service filed with the Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids and the Auction), the Sale

WEIL:\96822338\13\73217.0004

Hearing, the Sale Transaction, this Order and the other relief requested in the Motion was provided by the Debtors; (ii) such notice was good, sufficient and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, this Order or any of the relief requested in the Motion is required.  With respect to persons whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice in *The New York Times* and *The Wall Street Journal*, on November 23, 2018, was sufficient and reasonably calculated under the circumstances to reach such persons.

N.    **Cure Notice**.  As evidenced by the certificates of service filed with this Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice of the Debtors' intent to assume and assign certain Contracts and Leases and of the related proposed Cure Costs upon each non-Debtor counterparty to the Contracts and Leases (the "**Cure Notice**").  The service of the Cure Notice was timely, good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Contracts and Leases.  All non-debtor parties to the Contracts and Leases have had a reasonable opportunity to object both to the Cure Costs listed on the Cure Notice and to the assumption and assignment of the Contracts and Leases to the Buyer.  No defaults exist in the Debtors' performance under the Contracts and Leases as of the date of this Order other than the failure to pay the Cure Costs, as may be required, or such defaults that are not required to be cured.

O.    **Satisfaction of Section 363(f) Standards**.  The Debtors may sell the Transferred Assets free and clear of all encumbrances, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, liens, mortgages,

WEIL:\96822338\13\73217.0004

deeds of trust, pledges, charges, security interests, rights of first refusal, rights of offset or

recoupment, royalties, and other interests of any kind or nature whatsoever against any of the

Debtors or the Transferred Assets, including, without limitations, any debts arising under or out

of, in connection with, or in any way relating to, any acts or omissions, obligations, demands,

guaranties, rights, contractual commitments, restrictions, product liability claims, environmental

liabilities, employment or labor law claims or liabilities, employee pension or benefit plan

claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims

for taxes of or against any of the Debtors and any derivative, vicarious, transferee or successor

liability claims, alter ego claims, *de facto* merger claims, rights or causes of action (whether in

law or in equity, under any law, statute, rule, or regulation of the United States, any state,

territory, or possession thereof or the District of Columbia), whether arising before or after the

Commencement Date, whether known or unknown, contingent or matured, liquidated or

unliquidated, and whether imposed by agreement, understanding, law, equity or otherwise

arising under or out of, in connection with, or in any way related to any of the Debtors, any of

the Debtors' interests in the Transferred Assets, the operation of any of the Debtors' businesses

before the effective time of Closing pursuant to the Asset Purchase Agreement, or the transfer of

any of the Debtors' interests in the Transferred Assets to the Buyer (collectively, the "**Claims**"),

because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the

Bankruptcy Code has been satisfied.  Those holders of Claims who did not timely object (or who

ultimately withdrew their objections, if any) to the Sale Transaction or the Motion are deemed to

have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Any holders of Claims

that have an interest in the Transferred Assets and who objected to the Motion fall within one or

more of the other subsections of section 363(f) of the Bankruptcy Code; their interests are

WEIL:\96822338\13\73217.0004

adequately protected by having their Claims attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction and as set forth in the Final DIP Order (as defined herein), subject to any defenses of the Debtors.  All persons having Claims of any kind or nature whatsoever against the Debtors or the Transferred Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against Buyer or any of its assets, property, affiliates, successors, assigns, or the Transferred Assets.

P.    **Assumption and Assignment of Assumed Contracts**.    Subject to paragraph 44 hereof, the assumption and assignment of Contracts and Leases designated by the Buyer (the "**Assumed Contracts**") in the *Notice of Assumed and Assigned Contracts Designated by Service.com in Connection with Sale of Sears Home Improvement Business* (ECF No. 1208), filed with this Court on December 13, 2018 (the "**Designation Notice**"), subject to the conditions in such Notice, is integral to the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, and represents the valid and reasonable exercise of the Debtors' sound business judgment.    Specifically, the assumption and assignment of the Assumed Contracts (i) is necessary to sell the SHIP Business to the Buyer, (ii) allows the Debtors to sell the SHIP Business to the Buyer as a going concern, (iii) limits the losses suffered by counterparties to the Assumed Contracts, and (iv) maximizes value for all of the Debtors' stakeholders by limiting the amount of claims against the Debtors' estates that would otherwise arise from the rejection of the Assumed Contracts.    Subject to paragraph 44 hereof, with respect to each of the Assumed Contracts, the Debtors have met all applicable requirements of section 365(b) of the Bankruptcy Code.    Further, the Buyer and/or the Debtors, in accordance with the provisions of the Asset

WEIL:\96822338\13\73217.0004

Purchase Agreement, have cured or will cure on or before the Closing, or have provided or will provide adequate assurance of the prompt cure after the Closing (which adequate assurance may include an agreement by and between the Buyer and the counterparty to the applicable Assumed Contract to enter into a new agreement, provided that any such agreement shall provide for the Buyer's payment of applicable Cure Costs in an amount agreed to by the Buyer and the counterparty, and provided further, that any such agreement shall require the counterparty's waiver of any and all prepetition claims against the Debtors based on the Assumed Contract, and any damage claims arising out of the rejection of any such Assumed Contract) of, any monetary default required to be cured with respect to the Assumed Contracts under section 365(b)(1) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance under the Assumed Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the non-debtor parties to such Assumed Contracts.  Accordingly, the Assumed Contracts may be assumed by the Debtors and assigned to the Buyer as provided for in the Asset Purchase Agreement and herein; provided that, notwithstanding anything in this Order or the Asset Purchase Agreement to the contrary, the contracts identified in the Designation Notice, as assumed "conditional on acceptable agreement regarding payment of cure costs post-closing"  or  "subject to resolution of any cure objection" shall not constitute Assumed Contracts and shall not be assumed and assigned to the Buyer if any such agreement or resolution is not reached by and between the Buyer and the applicable counterparty on or prior to the Closing.  The assumption and assignment of each Assumed Contract is approved notwithstanding any provisions in such Assumed Contract or other restrictions prohibiting its assignment or transfer.

WEIL:\96822338\13\73217.0004

Q.      **Validity of the Transfer**.  As of the Closing, the transfer of Transferred

Assets to the Buyer will be a legal, valid, and effective transfer of such Transferred Assets, and

will vest Buyer with all right, title, and interest of the Debtors in and to the Transferred Assets,

free and clear of all Claims.  The consummation of the Sale Transaction is legal, valid, and

properly authorized under all applicable provisions of the Bankruptcy Code, including, sections

105(a), 363(b), 363(f), 363(h), 365(f), and 365(m), and all of the applicable requirements of such

sections have been complied with in respect of the Sale Transaction.

R.      **Corporate Power and Authority.**  The Debtors have full corporate

power and authority to execute and deliver the Asset Purchase Agreement and to perform all of

their respective obligations thereunder, and the Sale Transaction and the conveyance of the

Transferred Assets have been duly and validly authorized by all corporate authority necessary to

consummate the Sale Transaction.  No consents or approvals, other than as expressly provided

for in the Asset Purchase Agreement and the entry of this Order, are required by the Debtors to

consummate the Sale Transaction.

S.      **Valid and Binding Contract**.  The Asset Purchase Agreement is a valid

and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its

terms.  The Asset Purchase Agreement, the Transaction Documents, the Sale Transaction, and

the consummation thereof shall be specifically enforceable against and binding upon (without

posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter

11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other

person.

T.      **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the

Transferred Assets must be approved and consummated promptly in order to preserve the value

WEIL:\96822338\13\73217.0004

of the Transferred Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Sellers and the Buyer intend to close the Sale Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. Accordingly, there is sufficient cause to lift the 14-day stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the Sale Transaction.

U.     **Personally Identifiable Information**. As contemplated in the Bidding Procedures Order, and subject to the terms of this Order, the sale to the Buyer under the Asset Purchase Agreement of any personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) and private health information about individuals is either consistent with the privacy policy of the Debtors in effect on the date of commencement of these chapter 11 cases or consistent with the recommendations of the consumer privacy ombudsman appointed in these chapter 11 cases and satisfies the requirements of section 363(b)(1)(A).

V.     **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and herein establish just cause for the relief granted herein.

W.     **Necessity of Order**. The Buyer would not consummate the transactions without all of the relief provided for in this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     **Motion is Granted**. The Motion and the relief requested therein is granted and approved, as set forth herein.

WEIL:\96822338\13\73217.0004

2.    **Objections Overruled**.  All objections, if any, to the Motion or the relief requested therein, and any joinders thereto, that have not been withdrawn with prejudice, waived or settled as announced to the Court at the Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.

3.    **Notice**.  Notice of the Motion and the Hearing was adequate, appropriate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and the Amended Case Management Order.

4.    **Fair Purchase Price**.  The consideration provided by the Buyer under the Asset Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

5.    **Approval of the Asset Purchase Agreement**.  The Asset Purchase Agreement and the other Transaction Documents, and all of the terms and conditions thereof are hereby approved.  The failure specifically to include any particular provision of the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Transaction Documents, and the Debtors' entry therein, be authorized and approved in their entirety.

6.    **Authorization of Performance by the Debtors**.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with

the terms of the Transaction Documents and to consummate the Sale Transaction, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Transaction Documents and this Order.

7.      The Debtors, their affiliates, and their respective officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Transaction Documents, including the transfer and the assignment of all the Transferred Assets, and the assumption and assignment of all the Assumed Contracts, and to take all further actions as may be (i) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to the Buyer's possession, the Transferred Assets and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Transaction Documents, all without further order of the Court.

8.      All persons that are currently in possession of some or all of the Transferred Assets are hereby directed to surrender possession of such Transferred Assets to the Buyer as of the Closing.

9.      All persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Transferred Assets to the Buyer in accordance with the Asset Purchase Agreement and this Order; provided that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order.

10.    **Direction to Creditors and Parties in Interest**.  On the Closing Date (as defined in the Asset Purchase Agreement), each of the Debtors' creditors and the holders of any liens, claims, and encumbrances are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to terminate, discharge or release their liens, claims, and encumbrance in the Transferred Assets, if any, as such liens, claims, and encumbrance may otherwise exist.

11.    **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Transferred Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Asset Purchase Agreement and approved by this Order.

12.    **Transfer of the Transferred Assets Free and Clear**.  Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Transferred Assets in accordance with the terms of the Asset Purchase Agreement. The Transferred Assets shall be transferred to Buyer in accordance with the terms of the Asset Purchase Agreement, and upon Closing, such transfer shall: (a) be valid, legal, binding and effective; (b) vest Buyer with all right, title and interest of the Debtors in the Transferred Assets; and (c) be free and clear of all Claims (including Claims of any Governmental Authority) in accordance with section 363(f) of the Bankruptcy Code, with all Claims that represent interests in property to attach to the net proceeds of the Sale Transaction, in the same amount and order of

17

their priority, with the same validity, force and effect which they have against the Transferred Assets and as set forth in the Final DIP Order, and subject to any claims and defenses the Debtors may possess with respect thereto.

13.    Except as otherwise provided in the Asset Purchase Agreement, all persons (and their respective successors and assigns) including, without limitation, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, current and former employees, pension plans, labor unions, trade creditors and any other creditors holding Claims against the Debtors or the Transferred Assets, or any of the Debtors' businesses (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, any of the Debtors, the Transferred Assets, or any of the Debtors' businesses before the Closing or the transfer of the Transferred Assets to the Buyer, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Buyer, its affiliates, successors, or assigns, its property or the Transferred Assets, including, without limitation, taking any of the following actions with respect to or based on a Claim (other than an Assumed Liability):  (a) commencing or continuing in any manner any action or other proceeding against the Buyer, its affiliates, or their respective successors or assigns, assets, or properties;  (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, or their respective successors or assigns, assets, or properties;  (c) creating, perfecting, or enforcing any Claims against the Buyer, its affiliates, or their respective successors or assigns, assets, or properties;  (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer, its affiliates, or their respective successors or assigns;  or (e) commencing or continuing any action

18

in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof, including the Asset Purchase Agreement.  No such persons shall assert or pursue against the Buyer or its affiliates, successors, or assigns any such Claim.

14.    This Order (a) shall be effective as a determination that, as of the Closing, all Claims have been unconditionally released, discharged and terminated as to the Buyer and the Transferred Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Transferred Assets free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**").  All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens and other interests against the Transferred Assets recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Transferred Assets recorded prior to the date of this Order.  All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. Following the Closing, no holder of any Claim shall interfere with the Buyer's title to or use and

enjoyment of the Transferred Assets based on or related to any such Claim or based on any actions the Debtors may take in these chapter 11 cases.

15.    Except as expressly set forth in the Asset Purchase Agreement, the Buyer and its successors and assigns shall have no liability for any Claim, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, alter ego or otherwise, of any kind, nature or character whatsoever, including Claims arising under, without limitation:  (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; and (e) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws or (xiv) any other state, local or

federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability.

16.     Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory or environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.   Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

17.     If any person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims in or against the Transferred Assets shall not have delivered to the Debtors before Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

WEIL:\96822338\13\73217.0004

or, as appropriate, releases of all Claims (collectively, the "**Release Documents**") that the person holds, then with regard to the Transferred Assets that are purchased by the Buyer pursuant to the Asset Purchase Agreement and this Order, (a) the Debtors are hereby authorized and directed to, and the Buyer is hereby authorized to, execute and file such statements, instruments, releases, and other documents on behalf of the person with respect to the Transferred Assets; and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Transferred Assets; provided that, notwithstanding anything in this Order or the Asset Purchase Agreement to the contrary, the provisions of this Order shall be self-executing, and neither the Sellers nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

18.    On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Transferred Assets acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all of the Transferred Assets to the Buyer.

19.    To the maximum extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets and, to the maximum extent

22

available under applicable law and to the extent provided for under the Asset Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing; *provided*, *however*, that, for the avoidance of doubt, nothing in this Order or the Asset Purchase Agreement shall authorize the transfer to the Buyer of any government-issued license, permit, or registration, or governmental authorization or approval without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfer. All existing licenses or permits applicable to the Debtors' business shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable procedures and all aforementioned legal requirements.

20.    **No Successor or Other Derivative Liability**.  Except as expressly set forth in the Asset Purchase Agreement, by virtue of the Sale Transaction, Buyer shall not be deemed or considered to: (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.  Upon the Closing, to the maximum extent available under applicable law, the Buyer's acquisition of the Transferred Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted at the time of the Closing and the Transferred Assets shall not be subject to any Claims arising under, out of, or in connection with any Excluded Asset or Excluded Liability (each as defined in the Asset Purchase Agreement).

21.    **Assumption and Assignment of Assumed Contracts**.  Subject to and conditioned upon the occurrence of the Closing Date, the Debtors are hereby authorized in

WEIL:\96822338\13\73217.0004

accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to the Buyer free and clear of all Claims, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer as provided in the Asset Purchase Agreement.  Upon the Closing, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts; provided that, notwithstanding anything in this Order or the Asset Purchase Agreement to the contrary, the Debtors and the Buyer may agree that the assumption and assignment of certain customer contracts shall not occur until a limited period of time after the Closing while the Buyer obtains any permits or licenses necessary to perform under such Assumed Contact, at which point the Buyer shall promptly take assignment of any such Assumed Contract.  The Buyer acknowledges and agrees that from and after the Closing, subject to and in accordance with the Asset Purchase Agreement, it shall comply with the terms of each Assumed Contract in its entirety, including any indemnification obligations expressly contained in such Assumed Contracts that could arise as a result of events or omissions that occur from and after the Closing, unless any such provisions are not enforceable pursuant to the terms of this Order.  The assumption by the Debtors and assignment to the Buyer of the Assumed Contracts shall not be a default under any such Assumed Contract.  This paragraph is effective with respect to Assumed Contracts covered by the adjourned cure objections addressed in paragraph 44 hereof upon the resolution of such objections.

22.    All Cure Costs that have not been waived by, or that have not been otherwise addressed in an alternate arrangement with, any non-debtor party to an Assumed

WEIL:\96822338\13\73217.0004

Contract, shall be determined in accordance with the Bidding Procedures Order or other

applicable order of this Court, and, as required by the Asset Purchase Agreement, (i) paid in cash

by the Buyer and/or the Debtors, on or before the Closing, or (ii) adequate assurance of the

payment in cash promptly after the Closing has been provided (which adequate assurance may

include an agreement by and between the Buyer and the counterparty to the applicable Assumed

Contract to enter into a new agreement, provided that any such agreement shall provide for the

Buyer's payment of applicable Cure Costs in an amount agreed to by the Buyer and the

counterparty, and provided further, that any such agreement shall require the counterparty's

waiver of any and all prepetition claims against the Debtors based on the Assumed Contract, and

any damage claims arising out of the rejection of any such Assumed Contract), and the Debtors

shall have no liability therefor, other than in accordance with the terms of the Asset Purchase

Agreement; provided that, notwithstanding anything in this Order or the Asset Purchase

Agreement to the contrary, the contracts identified in the Designation Notice, as assumed

"conditional on acceptable agreement regarding payment of cure costs post-closing" or "subject

to resolution of any cure objection" shall not constitute Assumed Contracts and shall not be

assumed and assigned to the Buyer if any such agreement or resolution is not reached by and

between the Buyer and the applicable counterparty on or prior to the Closing.  Payment of the

Cure Costs, the waiver thereof, or compliance with an alternate arrangement with any non-debtor

party to an Assumed Contract, shall be in full satisfaction and cure of any and all defaults under

the Assumed Contracts and is deemed to fully satisfy the Debtors' obligations under sections

365(b) and 365(f) of the Bankruptcy Code.  Each non-Debtor party to an Assumed Contract is

forever barred, estopped, and permanently enjoined from asserting against the Debtors or the

Buyer, their affiliates, successors, or assigns, or the property of any of them, any default existing

as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Buyer, of each of the Assumed Contracts.

23.     To the extent a counterparty to an Assumed Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time and any proof of claim filed or to be filed with respect to any prepetition default under an Assumed Contract shall be deemed expunged with prejudice.

24.     **<u>Ipso Facto Clauses Ineffective</u>**.     Except as otherwise specifically provided for by order of this Court, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, including all rights of the Buyer as the assignee of the Assumed Contracts, notwithstanding any provision in any such Assumed Contracts (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. There shall be no, and all non-Debtor parties to any Assumed Contract are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any defaults, breaches, claims, pecuniary losses, rent accelerations, escalations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of the Assumed Contracts.

25.     Except as otherwise specifically provided for by order of this Court, upon the Debtors' assignment of the Assumed Contracts to the Buyer, no default shall exist under any Assumed Contracts, and no counterparty to any Assumed Contracts shall be permitted to declare

26

a default by any Debtor or the Buyer, or otherwise take action against the Buyer, as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contracts.  Any provision in an Assumed Contract that prohibits or conditions the assignment or sublease of such Assumed Contract in accordance with the Asset Purchase Agreement (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect, but only in connection with the assignment or sublease of such Assumed Contract in connection with the sale to the Buyer approved by this Order.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Contract.

26.    **Statutory Mootness**.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  The Sale Transaction contemplated by the Asset Purchase Agreement  is undertaken by Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Transferred Assets to Buyer, free and clear of Claims, unless such authorization is duly stayed before the Closing of the Sale Transaction pending such appeal.

27.    **No Avoidance of Asset Purchase Agreement**.  Neither the Sellers nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement or Transaction Documents to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Asset Purchase Agreement, the Transaction Documents, and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement, the Transaction Documents, or the Sale Transaction.

28.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

29.    **Personally Identifiable Information**.  After appointment of the consumer privacy ombudsman in these chapter 11 cases, in accordance with section 332 of the Bankruptcy Code, and after giving due consideration to the facts, circumstances and conditions of the Asset Purchase Agreement, as well as the report of the consumer privacy ombudsman filed with the Court which Buyer agrees to comply with, no showing was made that the sale of personally

WEIL:\96822338\13\73217.0004

identifiable information or private health information contemplated in the Asset Purchase Agreement, subject to the terms of this Order, would violate applicable nonbankruptcy law.

30. **Distribution and Application of Sale Proceeds**.  At the Closing, the Buyer shall pay to the Debtors (in accordance with the terms of the Asset Purchase Agreement), the balance of the purchase price remaining due and owing under the Asset Purchase Agreement. The proceeds of the Sale Transaction shall be applied as provided in the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (ECF No. 955) ("**Final DIP Order**"), including to fund the Debtors' Winddown Account (as defined in the Final DIP Order).  The Debtors shall (i) establish a reasonable methodology (reasonably acceptable to the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the Prepetition Second Lien 2010 Indenture Trustee, the Prepetition Second Lien Credit Agreement Agent (each as defined in the Final DIP Order) and the Prepetition IP/GL Agent,[3] or as otherwise approved by the Bankruptcy Court), consistent with the Final DIP Order and the DIP ABL Loan Documents,  to allocate proceeds of the Sale Transaction between Prepetition Collateral and Prepetition Unencumbered Collateral (as such terms are defined in the Final DIP Order), and among the Debtors' estates, each on an entity-by-entity basis, and (ii) provide such allocation methodology to the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the Prepetition Second Lien 2010

---

[3] "Prepetition IP/GL Agent" shall mean JPP, LLC, in its capacity as agent pursuant to that certain Term Loan Credit Agreement, dated as of January 4, 2018 (as at any time amended, restated, amended and restated, supplemented or otherwise modified) by and among Sears Holdings Corporation, as Holdings, Sears Roebuck Acceptance Corporation and Kmart Corporation, as borrowers, certain subsidiaries of Sears Holdings Corporation, as guarantors, and certain financial institutions and other institutional lenders.

WEIL:\96822338\13\73217.0004

Indenture Trustee, the Prepetition IP/GL Agent, and the Prepetition Second Lien Credit Agreement Agent, no later than five (5) business days prior to the closing of the Sale Transaction.  The Debtors, the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the Prepetition Second Lien 2010 Indenture Trustee, the Prepetition IP/GL Agent, and the Prepetition Second Lien Credit Agreement Agent agree to cooperate in good faith as it relates to a reasonable allocation of the sale proceeds between the Prepetition Collateral and the Prepetition Unencumbered Collateral, and any disagreement among the Debtors, the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the Prepetition Second Lien 2010 Indenture Trustee, the Prepetition IP/GL Agent, and the Prepetition Second Lien Credit Agreement Agent about such allocation shall be resolved by the Bankruptcy Court.  For the avoidance of doubt, nothing herein or in the Asset Purchase Agreement shall prejudice the rights of any party-in-interest, including the Creditors' Committee, the DIP ABL Agents, the Prepetition ABL Agents, the Prepetition Second Lien 2010 Indenture Trustee, the Prepetition IP/GL Agent, or the Prepetition Second Lien Credit Agreement Agent, to challenge the allocation methodology.  If any order under section 1112 of the Bankruptcy Code is entered in the cases, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that this Order, including the rights granted to Buyer hereunder, shall remain effective and, notwithstanding such conversion or dismissal, shall remain binding on parties in interest. This Order shall not be modified by any chapter 11 plan confirmed in the cases or by any subsequent orders of the Court.

    31.  Subject to the following sentence, upon the Closing, Buyer shall work in good faith with Sears Home Improvement Products, Inc. ("**SHIP**") and the United States of America to reach an agreement whereby the Buyer accepts assignment of the prospective

30

obligations of SHIP under the Consent Decree in *United States of America v. Sears Home Improvement Products, Inc.*, Case No. 1:16-cv-09302 (N.D. Ill 2016) ("**Consent Decree**"), but not liability for stipulated penalties for days of violations prior to the Closing Date, and resolving any uncertainty about the timeframe or requirements for Buyer's seeking termination under the Consent Decree.  Any agreement shall be presented for approval to the United States District Court overseeing the Consent Decree, and such partial assignment shall not be effective until the District Court's approval is granted.

32.    With respect to the Lease for that certain real property commonly known as Suite 1020 at 3200 Lake Emma Road, Lake Mary, Florida (the "**Kroger Lease**"), the Buyer will be responsible for paying the following charges, with respect to the post-Closing Date obligations only: a) all accruing but unbilled charges under the Kroger Lease, including but not limited to all unpaid year-end and other adjustments and reconciliations (such as adjustments for common area maintenance, taxes and similar charges); b) all regular or periodic adjustment of charges under the Kroger Lease; and c) all insurance, indemnification and other contractual obligations under the Kroger Lease, including but not limited to indemnification obligations relating to currently unknown and/or unasserted claims that presently exist or may exist in the future, for which the tenants under the Lease are be obligated to indemnify and defend The Kroger Co.

33.    With respect to that certain lease of nonresidential real property of premises located at 125 James Drive West, Suite 100, St. Rose, LA (the "**Light 125 Lease**"), (a) with respect to obligations that come due post-closing (regardless of when the obligation accrued), the Buyer will be liable for all obligations to pay accrued, but unbilled or not due rent and charges and indemnity obligations and (b), the assumption and assignment of the Light 125

31

Lease is not free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to the Light 125 Lease or rights that limit or condition the permitted use of the property, such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits that are not executory and run with the land.

34.    Notwithstanding anything to the contrary in this Order including with respect to the sales "free and clear" pursuant to section 363(f) of the Bankruptcy Code contemplated hereby, and unless otherwise agreed by Buyer and Citibank, N.A. ("**Citi**"), (x) if any of the Debtors' interest in any property jointly owned by Citi and the Debtors is transferred under this Order, nothing herein shall impair, invalidate, limit, waive, forfeit or otherwise render ineffective any right or interest of Citi arising under or recognized by that certain Second Amended and Restated Program Agreement (the "**Citibank Credit Card Program Agreement**"), dated as of October 3, 2018, by and among Sears, Roebuck and Co., Sears Brands Business Unit Corporation, the Other Sears Parties (as defined therein) that are parties thereto (collectively, the "**Sears Card Program Parties**") and Citi, with respect to any such property transferred pursuant to this Order, and, with respect to such jointly owned property (if any), the Buyer shall remain bound by any restrictions on the use, disposition or other treatment of such property as if Buyer were a Sears Card Program Party, (y) notwithstanding the grant by Citi of any license or other right to use of any Intellectual Property (as defined in the Citibank Credit Card Program Agreement) to Buyer (if and to the extent that any such license is granted), the Sears Card Program Parties shall continue to be bound by the restrictions and limitations in the Citibank Credit Card Program Agreement with respect to such Intellectual Property and (z) no sale**,** license or grant of right to use of such Intellectual Property authorized

by this Order conveys to Buyer rights in any Intellectual Property beyond those granted to the Sears Card Program Parties or impairs, invalidates, limits, waives, forfeits or otherwise renders ineffective any right or interest of Citibank under the Citibank Credit Card Program Agreement as in effect on the date of this Order.  Notwithstanding the foregoing, nothing herein restricts Buyer from offering, issuing or marketing cards that do not use Sears Licensed Marks (as defined in the Citibank Credit Card Program Agreement) to any person who does not hold an Account (as each such term is defined by the Citibank Credit Card Program Agreement) or, to the extent the Citibank Credit Card Program Agreement is terminated, from offering, issuing or marketing cards that use Sears Licensed Marks (as defined in the Citibank Credit Card Program Agreement) to any person that formerly held an Account that does not hold an Account at such time.

35.    **Binding Effect of this Order**.  The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, each of the Debtors, their estates, their creditors, and non-debtor affiliates, the Buyer, and each of their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

36.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Order and the terms of the Asset Purchase Agreement or any other Transaction Document, the terms of this Order shall control.

WEIL:\96822338\13\73217.0004

37.    **Modification of Asset Purchase Agreement**.    The Asset Purchase Agreement, the Transaction Documents, and any other documents or other instruments executed in connection therewith, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not materially change the terms of the Asset Purchase Agreement or any Transaction Document, or have a material adverse effect on the Debtors' chapter 11 estates.

38.    **Bulk Sales**.    No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction (including those relating to taxes other than transfer taxes) shall apply in any way to the Sale Transaction contemplated by the Asset Purchase Agreement, the Motion, and this Order.

39.    Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including but not limited to environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Asset Purchase Agreement shall in any way diminish the obligation of any entity, including the Debtors, to comply with environmental laws.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

34

40.     Nothing in this Order shall affect the priority of any prepetition *ad valorem* tax liens or the *ad valorem* tax liens, if any, which may arise during the pendency of the Debtors' chapter 11 cases.  Upon establishment of an allocation methodology in accordance with paragraph 30, the Debtors shall inform counsel for the taxing authorities identified in ECF No. 1136, or other similarly situated taxing authorities that request notification, of such allocation methodology.

41.     No provision of this Order, the Motion, or the Asset Purchase Agreement shall authorize the Debtors to: (a) sell, transfer or assign to the Buyer any software, cloud materials, templates, or other intellectual property (collectively "**Proprietary Information**") owned by SAP Industries, Inc. or its affiliates SAP America, Inc., Sybase, Inc., Ariba, Inc., or Concur Technologies, Inc. (collectively, "**SAP**") and licensed or otherwise provided to any Debtor without the consent of SAP; or (b) use the Proprietary Information or any software-related services provided by SAP for the benefit of the Buyer or any other third party, in each case, (a) and (b), to the extent prohibited by the contracts governing such Proprietary Information or software-related services.

42.     **Final DIP Order**. Notwithstanding anything to the contrary in this Order or in the Asset Purchase Agreement or any other Transaction Document: (i) the liens granted under the Final DIP Order and the DIP ABL Documents and the Prepetition ABL Loan Documents (each as defined in the Final DIP Order) shall attach to the proceeds of the Sale Transaction in the same amount, to the same extent, and with the same priority as set forth in the Final DIP Order; (ii) unless otherwise ordered by the Court, all proceeds from the Sale Transaction shall be used and/or applied in accordance with the Approved Budget (as defined in the Final DIP Order) and the terms and conditions of the Final DIP Order, the DIP ABL

35

Documents, and the Prepetition ABL Loan Documents, as applicable; and (iii) nothing in this Order or in the Asset Purchase Agreement or any other Transaction Document shall amend or modify any provision of the Final DIP Order, or the rights of any party set forth therein.

43.     **Automatic Stay**.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Documents or any other sale-related document.   The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

44.     The objections to Cure Costs filed by Eric Richard I.B. Company, LLC (ECF No. 1128), Kroger Co. (ECF No. 1132), Pool 1 SF Business Parks, LLC (ECF No. 1134), Light 125 James West LLC (ECF No. 1146) and Robertson Heating Supply (ECF No. 1161) are hereby adjourned to a date to be determined by the Debtors and the Buyer, only to the extent they assert objections to Cure Costs.

45.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Order or the Asset Purchase Agreement (and the Transaction Documents or such other documents or other instruments) and to enforce the injunctions set forth herein.

Dated: December 21, 2018
       White Plains, New York

                                   _/s/Robert D. Drain_____
                                   THE HONORABLE ROBERT D. DRAIN
                                   UNITED STATES BANKRUPTCY JUDGE

36