| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: January 18, 2019<br>Hearing Time: 10:00 a.m. |

------------------------------------------------------- x
                                                        :
In re                                                   :     Chapter 11
                                                        :
SEARS HOLDINGS CORPORATION, *et al.*,                   :     Case No. 18-23538 (RDD)
                                                        :
                                              Debtors. :     Jointly Administered
                                                        :
------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE
TO APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING
AMENDMENT TO TERMS AND CONDITIONS OF THE DEBTORS' EMPLOYMENT
AND RETENTION OF LAZARD FRERES & CO, LLC AS INVESTMENT BANKER**

TO:   **THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits this objection to the Debtors' Motion for Entry of an Order Approving an Amendment to the Terms and Conditions of the Debtors' Employment and Retention of Lazard Freres & Co. LLC ("**Lazard**") as Investment Banker (the "**Motion to Amend**"). ECF Doc. No. 1435. In support thereof, the United States Trustee respectfully states:

**PRELIMINARY STATEMENT**

The Debtors seek to change the terms of Lazard's engagement and to compensate Lazard for new employment terms by increasing the hard cap on Lazard's fees by an additional seven million dollars. There is no specific information in the Motion to Amend to explain why the Debtors determined that Lazard's scope of employment needs to be expanded and what new duties are to be performed. It appears from the very general information contained in the Motion to Amend that Lazard is being asked to assume further duties with respect to the sale of additional assets of the Debtors. However, when first retained in connection with these cases,

Lazard and the Debtors reached an agreement as to the scope of Lazard's employment and compensation. Consistent with the terms of the engagement, Lazard has been an active participant in the sale of significant assets of the Debtors. At the time that Lazard was retained, it seems likely that Lazard was aware or should have been aware that additional assets of the Debtors may be sold in the future and that this possibility should have been factored into Lazard's employment terms. Accordingly, to the extent that Lazard is being asked to perform work in connection with the sale of additional assets of these Debtors, it is not clear why such duties may require the payment of fees that may amount to as much as additional seven million dollars. Absent further specific information, the Motion to Amend must be denied.

## BACKGROUND

### General Background

1. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on October 15, 2018 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF Doc. No. 118.

4. On October 24, 2018, the United States Trustee formed an official committee of unsecured creditors.

5. According to the Debtors, as of the Petition Date, Sears operated 687 retail stores in forty-nine (49) states, Guam, Puerto Rico, and the U.S. Virgin Islands. *See* Declaration of Robert A. Riecker (the "**Riecker Affidavit**"), ECF Doc. No. 3, ¶ 25.

6. The Debtors and Lazard entered this bankruptcy case with the knowledge that the Debtors might have to partially or completely liquidate. Mr. Riecker stated that "the Company lacks sufficient liquidity to continue normal business operations." Riecker Affidavit at ¶ 8. As of the Petition Date, the Debtors' monthly burn rate was approximately $125 million. *Id*. at ¶ 15. From the commencement of these cases, the Debtors anticipated a section 363 sale of the viable stores. *Id*. at ¶ 15.

**The Lazard Retention**

7. On October 26, 2018, the Debtors filed the *Application of Debtors for Entry of Order (A) Authorizing the Employment and Retention of Lazard Freres &Co. LLC as Investment Banker to the Debtors* (the "**Retention Application**") (ECF Doc. No. 345). Filed with the Retention Application was an engagement letter (the "**Lazard Engagement Letter**"). A copy of the Lazard Engagement Letter is attached as Exhibit A.

8. According to the Lazard Engagement Letter, Lazard was retained for the broad purpose of providing the Debtors "with general restructuring advice and to advise it in connection with any Restructuring, Financing and/or Sale. . . on the terms and conditions set forth herein." *See* Lazard Engagement Letter at p. 1.[1]

---

[1] The United States Trustee endeavors to describe all relevant capitalized terms in this objection, as further set forth below in paragraph 11. All capitalized terms not specifically described in this objection are defined in the Lazard Retention Application or Lazard Engagement Letter.

3

9. Lazard's fee and expense structure (the "**Fee and Expense Structure**") is consistent with an extensive role in this case. Lazard is entitled to many streams of income, including:

   (a) A monthly fee of $200,000 (the "Monthly Fee") payable on October 15, 2018 and the fifteenth day of each month thereafter until the termination of Lazard's engagement, regardless of how many hours Lazard professionals work in a particular month;

   (b) A fee, payable upon the consummation of a Restructuring, equal to 55.0 basis points (0.55%) of the principal amount of the Existing Obligations involved in such Restructuring (the "Restructuring Fee"); provided, however, that the portion of any Existing Obligations owned by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pensions plans shall not be included when calculating the Restructuring Fee payable;

   (c) A fee, payable upon the consummation of a Financing, equal to 55.0 basis points (0.55%) of the aggregate principal amount of new securities, instruments or obligations of the Company (including the committed amount of any new committed revolving credit facilities) incurred in such Financing (the "Financing Fee");

   (d) A fee, payable upon consummation of a Sale Transaction, equal to 55.0 basis points (.55%) of the Aggregate Consideration paid in such Sale Transaction (the "Sale Transaction Fee"); and

   (e) In addition to any fees that may be payable to Lazard, and regardless of whether any transaction occurs, payment of expenses.

*See* Lazard Retention Application at pp. 11 and 12.

10. "In the event of a Bankruptcy Process, the aggregate fees payable to Lazard pursuant to this Agreement (including, without limitation, any Tail Fee, but excluding any Monthly Fees or Amendment Fees) shall not exceed $12,500,000.00." *See* Lazard Retention Application at ¶ 13.

11.   The defined terms also reflect Lazard's extensive involvement in this case:

(a) A Restructuring "shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (any Restructuring of Sears or any of its subsidiaries pursuant to Chapter 11 of the United States Bankruptcy Code, a 'Bankruptcy Process')), repayment and/or recapitalization of all or a portion of the Company's outstanding indebtedness for borrowed money (including bank debt and bond debt) and letters of credit (regardless of whether drawn) and other on and off balance sheet indebtedness, leases (both on and off balance sheet) or other liabilities (collectively, the 'Existing Obligations')." *See* Lazard Engagement Letter at p. 1.

(b) A Financing "means any public or private issuance, sale, or placement of newly-issued (including any sale or placement of securities currently held in treasury) equity, equity-linked or debt securities or bank debt (including (i) committed revolving credit facilities and (ii) any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code)." *See* Lazard Engagement Letter at ft. 1.

(c) A Sale Transaction "means (a) any acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with a third party; (b) any acquisition, directly or indirectly, by a buyer or buyers (which term shall include a 'group' of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended, and shall also include current Stakeholders), of equity interests or options, or any combination thereof, constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers (including current Stakeholders) of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party (including current Stakeholders). For the avoidance of doubt, no issuance of convertible debt obligations (or any issuance of equity as a result of the conversion of such convertible debt obligations) in exchange for Existing Debt Obligations shall in and of itself constitute a Sale Transaction. *See* Lazard Engagement Letter at ft. 2.

(d) An Amendment Fee is "a fee, payable upon the effectiveness of each amendment of the Existing First Lien Credit Facility that does not constitute a Restructuring and is not completed through a Bankruptcy Process with respect to the amendment that is currently being negotiated with the agents and lenders thereunder, in the amount of $350,000." *See* Lazard Engagement Letter, ECF Doc. No. 345 (page 32 or 58 pages).[2]

---

[2] The Lazard Retention Letter is not paginated.

(e) A Tail Fee is a fee owed to Lazard after it is terminated if certain events are "announced or for which a definitive agreement is executed during the period from September 10, 2018 until nine months following such termination." *See* Lazard Engagement Letter, ECF Doc. No. 345 (page 34 of 58).

12. Lazard already appears to have evaluated "candidates for any potential Sale Transaction," a stated reason for the increase in the cap in the Motion to Amend. By application dated November 3, 2018, the Debtors sought to sell all assets related to the Debtors' home improvement business (the "**SHIP Business**" and the "**SHIP Application**"). *See generally* SHIP Application, Doc. No. 450. In the SHIP Application, Lazard is listed as the Debtors' investment banker, charged with, among other things: (a) receiving bids; and (b) fielding diligence questions. A relevant page from the SHIP Application is attached hereto as Exhibit B.

13. The sale in connection with the SHIP Application was approved on or about December 26, 2018. Doc. No. 1417.

### The Motion to Amend Lazard Retention

14. According to the Motion to Amend, the Debtors now describe Lazard's role in this case as "limited." *See* Motion to Amend at ¶ 7. The Motion to Amend is necessary because "[s]ince the commencement of these case, the Debtors have determined that Lazard's sale services are indeed necessary and have requested Lazard's services in connection with all material asset sales." *Id.* As a result, the Debtors seek authorization to raise Lazard's fee cap to $19,500,000. *Id.* at ¶ 7.

### DISCUSSION

The Court should deny the Motion to Amend absent further explanation. Lazard is already retained as the "Investment Banker" of the Debtor. The terms of Lazard's retention appear to conform to the common sense definition of this term. Lazard was retained for the broad purpose of

providing the Debtors "with general restructuring advice and to advise it in connection with any Restructuring, Financing and/or Sale. . . on the terms and conditions set forth herein." *See* Lazard Engagement Letter at p. 1.

In fact, Lazard has been performing these traditional investment bank functions to date. Lazard was the Debtors' investment banker in connection with the sale of the SHIP business. In its role, Lazard was already charged with, among other things: (a) receiving bids; and (b) fielding diligence questions. *See* Bidding Procedures, attached SHIP Application (p. 56 of 171).

Lazard is also getting paid like an investment banker, receiving a handsome fee under numerous categories, including in the event of a Sale or Restructuring. True, Lazard's fees are capped at $12,500,000 million. However, that is the arrangement that Lazard negotiated with the Debtors. It would no doubt have held the Debtors to the arrangement even if the Debtors complained later on that Lazard was not directly involved with the Sale or Restructuring, as those terms are defined in the Lazard Engagement Letter. It is unclear why Lazard needs an additional $7 million to perform its core duties. The Debtors must supplement the Motion to Amend to explain what, if any, additional duties Lazard plans to undertake, with declarations from parties with knowledge. Otherwise, the Court should deny the Motion to Amend.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the approval of the Motion to Amend and grant such other relief as the Court deems fair and just.

Dated: New York, New York
December 31, 2018

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Greg M. Zipes*
Greg M. Zipes
Richard C. Morrissey
Trial Attorneys
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500