**HEARING DATE: January 18, 2019 at 10:00 a.m.**
**OBJECTION DEADLINE: January 11, 2019 at 4:00 p.m.**

**NIXON PEABODY LLP**
Christopher M. Desiderio
55 West 46th Street
New York, NY 10036
Telephone: (212) 940-3000
Facsimile: (212) 940-3111
cdesderio@nixonpeabody.com

and

Richard C. Pedone
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
rpedone@nixonpeabody.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                          :   Chapter 11
In re:                                    :
                                          :
SEARS HOLDING CORPORATION.,               :   Case No. 18-23538 (RDD)
                                          :
            Debtors¹.                     :   (Joint Administration)
                                          :
-------------------------------------------------------x
```

## MOTION OF THE KCD INDENTURE TRUSTEE FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY ON DEBTORS

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (None); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

U.S. Bank National Association, in its capacity as indenture trustee (in such capacity, the "KCD Indenture Trustee") under the Indenture,[2] dated as of May 18, 2006, by and between KCD IP, LLC ("KCD IP") and the KCD Indenture Trustee (as amended, supplemented or modified from time to time, the "Indenture"),[3] by and through its attorneys, hereby moves for entry of an order pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "Motion") directing the Debtors, including, without limitation, Sears Holdings Management Corporation, as Servicer (defined below), to produce to the KCD Indenture Trustee the documents on **Exhibit 1** to the Proposed Order (defined below) no later than seven (7) days after such request is made. In support of the Motion, the Indenture Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      By this Motion, the KCD Indenture Trustee seeks authorization to conduct Bankruptcy Rule 2004 discovery on the Debtors, including, without limitation, Sears Holdings Management Corporation, the Debtor-Servicer, to obtain certain calculations, opinions, documents, data, accountings, books of account, reports and/or other information to which it would otherwise be entitled pursuant to the Servicing Agreement.[4] Since the commencement of these chapter 11 cases, despite demand, the Servicer has failed to comply voluntarily with its obligations under the Servicing Agreement, including, without limitation, its obligation to produce certain information and documents when due.

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Indenture or the Servicing Agreement (defined below), as applicable.

[3]     Due to the voluminous nature of the Indenture and related transaction documents they have not been annexed hereto. Each document was previously annexed to the Lift Stay Motion (defined below) and all exhibits thereto are fully incorporated herein as exhibits by reference.

[4]     On May 18, 2006, the Issuer, the KCD Indenture Trustee and Sears Holdings Management Corporation, as Servicer (the "Servicer") entered into that certain Servicing Agreement (amended, supplemented or modified from time to time, the "Servicing Agreement.")

4852-4904-5379.9

## JURISDICTION AND VENUE

2.　　　　The Court has jurisdiction of the subject matter hereof pursuant to 28 U.S.C.

§1334(a) and the *Amended Standing Order of Reference M-431,* dated January 31, 2012 (Preska,

C.J.).  This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (B), (C), (G) and (O).

3.　　　　The basis for this Motion is Bankruptcy Rule 2004.

## BACKGROUND

### A.　　　Background on Transactions Creating KCD IP and the Related Structure

4.　　　　In May of 2006, KCD IP, a non-debtor affiliate of the Debtors, was assigned

certain rights to the Kenmore, Craftsman, and Diehard trademarks and tradenames (collectively

the "Trademarks") for the purpose of entering into a series of agreements providing for the

issuance of asset-backed securities (the "Notes"). Upon information and belief the Notes are

owned by Sears Reinsurance Company Ltd. ("Sears Reinsurance" or the "Holder").[5]

5.　　　　In connection with the issuance of the Notes, KCD IP licensed the use of the

Trademarks under certain License Agreements, dated May 18, 2006, (collectively, and as the

same may be amended, supplemented or modified from time to time, the "License Agreements")

with Debtors Sears, Roebuck and Co. ("Sears Roebuck") and KMART Corporation ("KMART"

and together with Sears Roebuck, the "Debtor Licensees"), respectively. In addition, to secure its

obligations, KCD IP granted the KCD Indenture Trustee a security interest in, among other

things, the Trademarks, the License Agreements, and all sublicenses with respect to any of the

Trademarks ("Sublicenses"), including any Sublicenses that either of the Debtor Licensees may

enter into with third parties from time to time.[6]

---

[5]　　Sears Reinsurance is a non-debtor affiliate of the Debtors charged with insuring or reimbursing certain of their service, protection and warranty obligations to customers and reinsuring certain insurance risks.

[6]　　On May 18, 2006, the Issuer and the KCD Indenture Trustee entered into that certain Trademark Security Agreement (amended, supplemented or modified from time to time, the "Trademark Security Agreement").

4852-4904-5379.9

6.      Upon information and belief, since the commencement of these chapter 11 cases, the Debtor Licensees have failed to make payments due with respect to their continued use of the Trademarks under the License Agreements and any Sublicenses. Likewise, KCD IP, as Issuer, has failed to make required payments on the Notes. KCD IP's failure to make the required payments constitutes an Event of Default under the Indenture.

7.      Contemporaneously with the execution of the Indenture, with respect to administering, servicing, protecting the integrity of, and enforcing the Trademarks, License Agreements and Sublicenses for the benefit of KCD IP and, to the extent of KCD IP's obligations under the Indenture, the KCD Indenture Trustee and the Holder, (i) Sears Holdings Management Corporation was appointed as Servicer and (ii) Sears Brands Business Unit Corporation was appointed as Manager.[7] Ocean Tomo, LLC, a non-debtor was designated to serve as Back-Up Manager[8] in the event the Manager is removed.

8.      Since the commencement of these chapter 11 cases, the Servicer and Manager have failed to communicate with the KCD Indenture Trustee and, upon information and belief, failed to perform their respective duties under the Servicing Agreement and Management Agreement. Importantly, it appears that the Servicer and the Manager have failed and, despite demand, continue to fail to collect and deposit with the KCD Indenture Trustee payments called for under, and to enforce, the License Agreements, and to provide required calculations and reports, and otherwise perform their duties, under the Servicing Agreement and/or the Management Agreement with respect to the Trademarks, License Agreements and any

---

[7]      On May 18, 2006, the Issuer and Sears Brands Business Unit Corporation (f/k/a Sears Intellectual Property Management Company), as Manager (the "Manager") entered into that certain Management Agreement, (amended, supplemented or modified from time to time, the "Management Agreement").

[8]      On May 18, 2006, the Issuer, the KCD Indenture Trustee and Ocean Tomo, LLC, as Back-Up Manager (the "Back-Up Manager") entered into that certain Back-Up Management Agreement, (amended, supplemented or modified from time to time, the "Back Up Management Agreement").

4

Sublicenses, including without limitation against their affiliates who are licensees or sub-licensees.

9.      The commencement of a chapter 11 case by Debtor Sears Holdings Corporation constitutes the occurrence of a "Servicer Removal Event" under Section 5(j) of the Servicing Agreement and the occurrence of a "Manager Removal Event" under clause (ix) of Section 5(b) of the Management Agreement, respectively, and those agreements and the Indenture require that the Issuer and the KCD Indenture Trustee take certain actions to remove and replace the Servicer and to remove and replace the Manager with the Back-Up Manager.

**B.      The Chapter 11 Cases**

10.      Beginning on October 15, 2018 (the "Commencement Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

12.      The Debtors' chapter 11 cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

*The Sale Process with Respect to Certain Assets of the Debtors*

13.      On November 1, 2018, the Debtors filed their *Motion for Approval of Global Bidding Procedures* [Docket No. 419]. On November 19, 2018, the Court entered its *Order Approving Global Bidding Procedures and Granting Related Relief* [Docket No. 816] (the "Global Bidding Procedures Order").

5

14.     The Global Bidding Procedures Order established December 5, 2018 as the

deadline by which interested parties were required to submit Non-Binding Indications of Interest

(defined in the Global Bidding Procedures Order) with respect to certain assets of the Debtors.

*See* Global Bidding Procedures Order, Section IV(B) of Ex. 1.

15.     As forth in the Global Bidding Procedures Order, the deadline for submitting

Qualified Bids (defined in the Global Bidding Procedures Order) was December 28, 2018 at 4:00

p.m. (Eastern Time) and an auction will take place on January 14, 2019, at 10:00 a.m. (Eastern

Time) with respect to those assets.[9]

16.     In the event the Debtors seek to assume the License Agreements or any other

contracts with the KCD Indenture Trustee or KCD IP, or any Sublicense related thereto, KCD IP

will have until the later of January 24, 2019 or eight (8) days from the filing of the Notice of

Auction Results (defined in the Global Bidding Procedures Order) to object to any proposed cure

costs related to any proposed assumption. Pursuant to the terms of the Servicing Agreement, the

Management Agreement and the Indenture, the Debtor Servicer and Manager, respectively, are

obligated to protect KCD IP's rights and the KCD Indenture Trustee's rights in connection with

any such sale. *See, generally,* Servicing Agreement, Section 2.1; Management Agreement,

Section 2(a); Indenture, Section 4.17.

### The Servicing Agreement and Defaults Thereunder

17.     On May 18, 2006, the Issuer, the KCD Indenture Trustee and the Servicer entered

into the Servicing Agreement. Pursuant to Section 2.1(a) of the Servicing Agreement, the

Servicer is required to "administer and service all Collateral for the benefit of the Issuer and, to

the extent of the Issuer's obligations under the Indenture, for the benefit of the Trustee and

---

[9]     The Debtors did not designate a Stalking Horse Bidder (defined in the Global Bidding Procedures Order) by
the December 15, 2018 deadline.

4852-4904-5379.9

Noteholders." Without limiting the generality of foregoing, pursuant to Section 2.1(d) of the

Servicing Agreement, the Servicer is required, among other things, to:

> supervise the activities of the Manager and shall enforce the Manager's obligations under the Management Agreement. . . [i]f any obligated party shall be in default under any Collateral, the Servicer shall promptly direct the Manager on behalf of the Issuer to take such actions as are consistent with the Manager's normal and customary actions to require such obligated party to remedy such default …undertake and perform all calculations and reports as and when required to be undertaken and performed by the Issuer or the Servicer under and pursuant to the Indenture and shall transfer funds from the Collection Account in accordance with the Indenture and Servicer Reports.

18.     Section 2.2 of the Servicing Agreement provides, in relevant part and among

other things, that the Servicer:

> shall not commingle payments received by it, if any, in respect of the Collateral with any other funds, payments and assets … shall make reasonable efforts to collect all payments called for under the terms and provisions of the Collateral and to cause the same to be deposited in the Collection Account … shall cause to be deposited in the Collection Account on the Business Day of receipt all payments of monies received directly by the Servicer, if any, from any obligated party in respect of the Collateral… shall prepare and file with the Trustee and the Noteholders all reports specified in the Indenture as coming from or required of the Issuer or the Servicer as and when required by the Indenture.

19.     Section 2.3 of the Servicing Agreement provides, in relevant part and among other things, that the Servicer:

> shall retain all data relating directly to or maintained in connection with the servicing of such Collateral at the offices of the Servicer, shall give …the Trustee access to all such data at all reasonable times, upon reasonable prior written notice, and, where possible, shall mark such data in a manner that readily permits its identification as such by… the Trustee.

20.     Section 2.4 of the Servicing Agreement provides, in relevant part and among other things, that the Servicer:

> shall, in addition to the bookkeeping required with respect to the Collateral, maintain as part of the Collateral servicing data, a separate accounting for the purpose of justifying any payments made to the Servicer from the Distribution Account. The Servicer agrees to make its accounting hereunder promptly available to… the Trustee upon request.

21.     Section 3.1 of the Servicing Agreement provides, in relevant part, that:

No later than 5:00 PM Chicago Time, on each Determination Date, the Servicer shall deliver to …the Trustee…the Servicer Report in the form attached as Exhibit A hereto.

22.     Section 4.4(c) of the Servicing Agreement provides, in relevant part and among other things, that the Servicer:

shall, in servicing the Collateral after an Event of Default under the Indenture that has occurred and is continuing (i) promptly report to the Trustee any event or circumstance known to it with respect to the Collateral which may materially and adversely affect the Collateral or the interests of the Trustee therein, (ii) furnish to the Trustee such reports and information with respect to the Collateral as the Trustee may deem reasonably necessary for the Trustee to exercise its rights under the Indenture…

23.     Section 6.7 of the Servicing Agreement provides, in relevant part and among other things, that:

[u]p to one (1) time per calendar year…the Servicer, on reasonable prior notice, shall permit any representative of the… Trustee… during the Servicer's business hours, as applicable, to examine all the books of account, records (including computer records), reports and other papers of the Servicer relating to the Collateral, to make copies and extracts therefrom, to cause such books to be audited…to discuss its affairs, finances and accounts relating to the Collateral with its officers, employees and independent public accountants…and regarding the information including the underlying documentation required to be furnished pursuant to this Agreement or regarding the performance of the Servicer's respective covenants and agreements contained in this Agreement.

24.     Upon information and belief, since the commencement of these chapter 11 cases, the Servicer has failed pursuant to the applicable terms and requirements of the Servicing Agreement to perform any of the foregoing obligations, including, without limitation, delivering to the KCD Indenture Trustee a Servicer Report in accordance with Section 3.1 of the Servicing Agreement.

25.     On December 16, 2018, KCD Indenture Trustee sent a letter to counsel for the Servicer demanding that the Servicer perform its obligations under the Servicing Agreement (the "Servicer Compliance Demand Letter"). To date, the Servicer has not agreed to perform its obligations under the Servicing Agreement.

4852-4904-5379.9

26.      On the same date, the KCD Indenture Trustee also sent a letter to counsel for the Servicer requesting information in accordance with the Section 3.1 of the Servicing Agreement (the "Servicer Information Request"). To date, the Servicer has not complied with the Servicer Information Request.

27.      On December 27, 2018, the KCD Indenture Trustee filed its *Motion for Order (I) Granting Relief from the Automatic Stay and (II) Compelling Debtor Performance as Servicer and Manager of KCD IP,* LLC [Docket No. 1426] ("Lift Stay Motion") seeking entry of order (i) granting relief from the automatic stay to remove and replace the Servicer and the Manager in accordance with the terms and conditions of the respective agreements and (ii) compelling the Servicer and the Manager to perform their respective obligations pending their removal and replacement.

28.      The failure of the Servicer to perform its obligations under the Servicing Agreement, including its failure to deliver a Servicer Report when due, adversely impacts the ability of KCD IP to make payments due under the Notes and the interests of the KCD Indenture Trustee and the Holder in the collateral pledged under the Indenture to secure the Notes, and prejudices the ability of the KCD Indenture Trustee to determine what actions may be appropriate or necessary, if any, with respect to the Indenture, the collateral, the Management Agreement and/or the Servicing Agreement.  Therefore, because the Debtors have not provided this critical information voluntarily in response to the Servicer Information Request, the KCD Indenture Trustee requires Bankruptcy Rule 2004 discovery to obtain what it otherwise would normally be entitled to from the Servicer in accordance with the terms and requirements of the Servicing Agreement.

## RELIEF REQUESTED

29.      By this Motion, the KCD Indenture Trustee respectfully requests entry of an order (substantially in the form as annexed hereto as **Exhibit A**, the "Proposed Order") pursuant to

9

Bankruptcy Rule 2004 directing the Debtors, including, without limitation, Sears Holdings

Management Corporation, as Servicer, to produce to the KCD Indenture Trustee the documents

on **Exhibit 1** to the Proposed Order no later than seven (7) days after such request is made,

unless produced earlier in connection with the Lift Stay Motion. At this time, only document

discovery is sought from the Debtors.[10]

### BASIS FOR RELIEF

30.    Bankruptcy Rule 2004, provides, in relevant part:

a)  Examination on Motion.  On motion of any party in interest, the court may
    order the examination of any entity.

b)  Scope of Examination.  The examination of an entity under this rule or of
    the debtor under § 343 of the Code may relate only to the acts, conduct, or
    property or to the liabilities and financial condition of the debtor, or to any
    matter which may affect the administration of the debtor's estate, or to the
    debtor's right to a discharge . . .

c)  Compelling Attendance and Production of Documentary Evidence.  The
    attendance of an entity for examination and the production of documentary
    evidence may be compelled in the manner provided in Rule 9016 for the
    attendance of witnesses at a hearing or trial.

31.    It is well-established that the scope of an examination under Bankruptcy Rule

2004 is unfettered and broad. *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr.

E.D.N.Y. 1983). Indeed, the examination can "legitimately be in the nature of a 'fishing

expedition.'" *In re M4 Enterprises, Inc.*, 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995). *See also In

re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) ("Rule 2004 permits a

party invoking it to undertake a broad inquiry of the examiner, in the nature of a fishing

expedition"); *In re Frigitemp Corp.*, 15 B.R. 263, 264 n. 3 (Bankr. S.D.N.Y. 1981) (noting that

predecessor to Rule 2004 examinations have been likened to "fishing expeditions").

---

[10]    This Motion is without prejudice to rights of the the KCD Indenture Trustee to request depositions and
any additional documents under Bankruptcy Rule 2004 based on any information that may be revealed as
a result of the discovery provided pursuant to any Order granting this Motion.

4852-4904-5379.9

32.    Examinations under Bankruptcy Rule 2004 may include within their scope, among other things, any matter which may relate to the property and assets of the estate; the financial condition of the debtors; any matter which may affect the administration of a debtors' estates. "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (*citing Cameron v. U.S.*, 231 U.S. 710, 717 (1914)).

33.    Here, it is the understanding of the KCD Indenture Trustee that, since the commencement of these chapter 11 cases, interest payments have not been made by KCD IP with respect to the Notes, the Debtor-Licensees have stopped making royalty payments with respect to the License Agreements, Debtor-affiliates and/or third parties obligated under any Sublicenses may have stopped making payments in respect of their obligations, and the Servicer has not taken actions to collect such amounts called for under such collateral or to deposit such amounts with the KCD Indenture Trustee or otherwise enforce such obligations against such obligated parties. To determine what action may be appropriate or necessary and to evaluate what, if any, cure obligations exist on the Debtors' part if the agreements are to be assumed as part of the sale, the KCD Indenture Trustee requires certain documents and financial information pertaining to the use and performance of the Trademarks and License Agreements (and any Sublicenses).

34.    In addition, KCD Indenture Trustee requires the information to comply with its obligations under the Indenture, Servicing Agreement and Management Agreement in the event relief is granted from the automatic stay to allow it to remove and replace the current Servicer and/or Manager.

35.    Importantly, under the Servicing Agreement, the Servicer is required to deliver to the KCD Indenture Trustee a Servicer Report containing, among other things: a description of

4852-4904-5379.9

monies received, costs related to the collateral, allocation and priority of payments, and the

applicable coverage ratios for and during the period. Indeed, all of the documents and

information sought hereunder are required to be provided by the Debtor-Servicer pursuant to the

explicit terms of the Servicing Agreement, including those appearing in the multiple Sections of

such agreement cited hereinabove. In fact, the KCD Indenture Trustee had received this very

information every prior month since the execution and delivery of the Servicing Agreement in

2006 until the Commencement Date. Here, the burden of producing this information post-

petition, which such information has probably already been made available to potential

purchasers, will be nominal. Accordingly, the KCD Indenture Trustee respectfully submits that

Bankruptcy Rule 2004 discovery is appropriate.

## **NOTICE**

36.     Notice of this Motion will be provided in accordance with the procedures set forth

in the *Amended Order Implementing Certain Notice and Case Management Procedures* (Docket

No. 405) (the "Case Management Order"). The KCD Indenture Trustee respectfully submits that

no further notice is required.

37.     No previous request for the relief sought herein has been made by the KCD

Indenture Trustee to this or any other Court.

4852-4904-5379.9

## CONCLUSION

WHEREFORE, the KCD Indenture Trustee respectfully requests that the Court enter an

order granting relief as set forth herein and providing such other relief as this Court deems just

and proper.

Dated: January 3, 2019                      **NIXON PEABODY LLP**

By: */s/ Christopher M. Desiderio*
Christopher M. Desiderio
55 West 46th Street
New York, NY 10036
Telephone: (212) 940-3000
Facsimile: (212) 940-3111
cdesderio@nixonpeabody.com

-and-

Richard C. Pedone (*pro hac vice*)
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
rpedone@nixonpeabody.com

*Counsel to U.S. Bank National Association,*
 *as Indenture Trustee*

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------x
                                       :   Chapter 11
In re:                                 :
                                       :
SEARS HOLDING CORPORATION.,            :   Case No. 18-23538 (RDD)
                                       :
         Debtors¹.                     :   (Joint Administration)
                                       :
--------------------------------------------------------x
```

## ORDER PURSUANT TO BANKRUPTCY RULE
## 2004 AUTHORIZING DISCOVERY ON DEBTORS

Upon the motion (the "Motion")² of U.S. Bank National Association, in its capacity

as indenture trustee (in such capacity, the "KCD Indenture Trustee") under the Indenture,

dated as of May 18, 2006, by and between KCD IP, LLC ("KCD IP") and the KCD Indenture

Trustee (as amended, supplemented or modified from time to time, the "Indenture"), for entry

of an order pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") authorizing discovery on the Debtors, including, without limitation,

Sears Holdings Management Corporation, as Servicer; and the Court having jurisdiction to

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§

157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion

having been given as provided in the Motion, and such notice having been adequate and

appropriate under the circumstances; and it appearing that no other or further notice of the

Motion need be provided; and the Court having found and determined that the relief

sought in the Motion and granted herein is in the best interests of the Debtors, their

respective estates and creditors, and all parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.     The Motion is granted.

2.     The Debtors, including, without limitation, Sears Holdings Management

Corporation, as Servicer, shall produce all documents on **Exhibit 1** attached hereto by no later

than seven (7) days after such request is made by electronic mail or at a time as mutually agreed

by the KCD Indenture Trustee and the Debtors. If any document is withheld on the basis of

privilege, the applicable Debtor shall provide a privilege log in accordance with Bankruptcy Rule

7026, and deliver such log with the document production.

3.     This Order is without prejudice to the KCD Indenture Trustee's right to file

further motions seeking additional documents and testimony pursuant to Bankruptcy Rule

2004 or any other applicable law and its rights to discovery in connection with any contested

matter or adversary proceeding. To the extent necessary, the KCD Indenture Trustee's rights

3

are reserved to request depositions and any additional documents under Bankruptcy Rule

2004 based on any information that may be revealed as a result of the discovery provided

pursuant to this Order.

4.    This Court shall retain jurisdiction to resolve any disputes arising or related to this

Order including any discovery disputes that may arise between or among the parties and to

interpret, implement, and enforce the provisions of this Order.

Dated: _____
          White Plains, New York


_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

4852-4904-5379.9

# Exhibit 1

## Documents Requested

| Number | Document/Record[1] |
|--------|---------------------|
| 1 | Any documents, items, or data relating to the preparation by (or on behalf of) the Servicer of any Servicer Report (as defined in the Indenture) during the period from September 2018 through the date hereof, including, without limitation, any calculation or statement of monies received, costs, allocation and priority of payments, coverage ratios, and/or amortization schedules for such period.   This request is for all information that would go into a Servicer Report, whether or not any have been prepared for these periods. |
| 2 | Any documents, items, or data relating to the preparation by (or on behalf of) the Servicer of any cash flow statement during the period from September 2018 through the date hereof, including, without limitation, any calculation or statement of net revenues, costs, and/or interest for such period. This request is for all information that would go into a cash flow statement, whether or not any have been prepared for these periods. |
| 3 | Any documents, items, or data relating to monies received by the Servicer with respect to the Collateral (as defined in the Indenture). |
| 4 | Any documents, items, or data relating to the use of the Collateral, including, without limitation, any agreement, License Agreement, and/or Sublicense agreement with respect to the Collateral. |
| 5 | Any communications between the Servicer and any person or party, including with any Debtor, relating to a default of any obligated party with respect to the Collateral. |
| 6 | Any communications between the Servicer and any person or party, including with any Debtor, regarding amounts due with respect to the Collateral, including on any License Agreement or Sublicense. |
| 7 | Any communications between the Servicer and any person or party, including with any Debtor, relating the occurrence of an Event of Default (as defined in the Indenture) under the Indenture, or any event, with giving of notice or the passage of time or both, would constitute such an Event of Default. |
| 8 | Any documents, items, or data relating to the undertaking or performance of any calculation or report required under the Indenture, the Servicing Agreement or the Management Agreement including, without limitation, any documents, items, or data relating to any calculation of coverage ratios made in accordance with Section 4.1 of the Indenture or preparation of any opinion, certificate, or statement in accordance with Section 8.6 of the Indenture. |
| 9 | Any documents, items, or data relating directly or maintained in connection with the servicing of the Collateral, including, without limitation, all data necessary for the servicing of the Collateral. |
| 10 | Any documents, items, or data relating to any lien and/or other security interest with respect to the Collateral, including any note, credit facility, guarantee with respect to any such lien or security interest. |
| 11 | Any documents, items, or data relating to any account maintained in accordance with Section 2.4 of the Servicing Agreement. |

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

| 12 | Any documents, items, or data relating to any default, and/or enforcement or waiver on account of any default or delinquent payments, with respect to the Collateral, including, without limitation, any default or enforcement of any agreement, License Agreement, and/or Sublicense with respect to the Collateral. |
|----|----|
| 13 | Any documents, items, or data relating to compensation for the performance of the Servicer's obligations under the Servicing Agreement, including, without limitation, any documents, items, or data relating to any advance made with respect to or against the Collateral. |
| 14 | Any documents, drafts, or working papers relating to the preparation of a Servicer Report during the period of June 2018 through the date hereof. |
| 15 | Any documents, drafts, or working papers relating to the preparation of a Servicer's Certificate (as defined in the Indenture) during the period of January 2018 through the date hereof. |
| 16 | Any documents, drafts, or working papers relating to the preparation of an Annual Servicer Report (as defined in the Indenture) during the period of January 2018 through the date hereof. |
| 17 | Any documents, drafts, or working papers relating to the preparation of an Annual Accountant's Report (as defined in the Servicing Agreement) during the period of January 2018 through the date hereof. |

4852-4904-5379.9