Hearing Date and Time: January 18, 2019 at 10:00 a.m. (Eastern Time)
Response Deadline: January 11, 2019 at 4:00 p.m. (Eastern Time)

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Gregg M. Galardi
Sam N. Ashuraey
Kimberly J. Kodis

*Attorneys for Apex Tool Group, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                      :    Chapter 11
                                                           :
**SEARS HOLDING CORPORATION**, *et al.*,[1]                :    Case No. 18-23538 (RDD)
                                                           :
            Debtors.                                       :    (Jointly Administered)
----------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF APEX TOOL GROUP, LLC
TO ALLOW AND COMPEL IMMEDIATE PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIM PURSUANT TO 11 U.S.C. 503(b)(1)(A) AND 11 U.S.C. 503(b)(9)**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of Apex Tool Group, LLC ("Apex") to allow and compel payment of administrative expense claim under

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

11 U.S.C. § 503(b)(1)(a) and 11 U.S.C. § 503(b)(9), will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "Bankruptcy Court") on **January 18, 2019 at 10:00 a.m. (Eastern Time)** (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objection ("Objections") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the Amended Order Implementing Certain Notice and Case Management Procedures, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than **January 11, 2019 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, Apex may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: January 4, 2019
      New York, New York

**APEX TOOL GROUP, LLC**

*/s/  Gregg M. Galardi*
Gregg M. Galardi
Sam N. Ashuraey
Kimberly J. Kodis
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Gregg M. Galardi
Sam N. Ashuraey
Kimberly J. Kodis

*Attorneys for Apex Tool Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SEARS HOLDING CORPORATION, *et al.*,[1] | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

**MOTION OF APEX TOOL GROUP, LLC**
**TO ALLOW AND COMPEL IMMEDIATE PAYMENT OF ADMINISTRATIVE**
**EXPENSE CLAIM PURSUANT TO 11 U.S.C. 503(b)(1)(A) AND 11 U.S.C. 503(b)(9)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Apex Tool Group, LLC ("Apex"), by and through its undersigned counsel, hereby requests that this Court grant its motion (the "Motion") to allow its administrative expense claim in an amount no less than $7,190,372.13 pursuant to sections 503(b)(1)(A) and 503(b)(9) of the Bankruptcy Code, and compel the Debtors to immediately pay such claim to the extent it is allowed under section 503(b)(1)(A).

In support of this Motion, Apex states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Apex consents to the Court's entry of a final order or judgment resolving this Motion.

2.      The statutory basis for relief sought herein are sections 503(b)(1) and 503(b)(9) of the Bankruptcy Code.

## BACKGROUND

3.      Apex manufactures "Craftsman" branded professional hand and power tools and other goods that it sold to the Debtors prior the Petition Date and has continued to sell to the Debtors since the Petition Date.

4.      In the ordinary course of business, Apex receives orders from the Debtors for goods, most of which are manufactured in Asia. With respect to goods manufactured in Asia, Apex delivers the goods to common carriers in a port in Asia and these common carriers in turn transport the goods, usually by ship, to ports in the United States. From there, the goods are transported to the Debtors' warehouses for distribution to the Debtors' stores.

5.     Pursuant to the agreement between the Debtors and Apex (as amended, supplemented or modified, the "Apex Agreement"), when Apex transfers the goods to a common carrier in Asia, the Debtors take title to the goods and assume the risk of loss with respect to such goods. On or about that same date, Apex invoices the Debtors for the goods provided to the common carrier, and the Debtors are required to remit payment for such goods within thirty (30) days of the date the invoice is issued. Because, however, the goods are shipped from Asia to ports in the United States and then transported to the Debtors' warehouses, the goods are not actually delivered to the Debtors, i.e., the Debtors do not take actual physical possession of the goods, until approximately 25 days after Apex transfers the goods to the common carrier.[2]

6.     On October 15, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

7.     On the Petition Date, the Debtors filed the *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business* [D.I. 14] (the "Shipping Motion"). The Shipping Motion sought entry of interim and final orders, among other things, "granting administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the Commencement Date and authorizing the Debtors to pay such obligations in the ordinary course

---

[2] As set forth below, Apex also ships goods to the Debtors from Apex, NC. The Debtors take physical possession of the goods shipped from Apex, NC, approximately 7 days after shipment.

3

of business." Shipping Motion ¶ 5. On October 16, 2018, the Court entered an interim order granting the relief sought in the Shipping Motion [D.I. 115] (the "Interim Shipping Order").

8. On November 3, 2018, pursuant to section 546(c), Apex sent a letter to the Debtors demanding the reclamation of all goods shipped to the Debtors within the 45 days prior to the Petition Date. Substantially contemporaneously therewith, Apex filed a notice of such reclamation demand [D.I. 452].

9. On November 8, 2018, Apex filed a response and limited objection to the Shipping Motion [D.I. 558] (the "Limited Objection"). The Limited Objection sought, among other things, clarification of the meaning of the word "delivered" as used in the context of the Shipping Motion and any final order on the Shipping Motion. As explained more fully in the Shipping Motion, Apex was concerned that the Debtors would argue that any final order on the Shipping Motion did not authorize payment for goods not yet delivered to the Debtors' warehouses as of the Petition Date.

10. On November 13, 2018, the Debtors filed a reply to the objections to the Shipping Motion [D.I. 672], including the Limited Objection (the "Reply in Support of the Shipping Motion"). The Reply in Support of the Shipping Motion (i) did not clarify the meaning of the word "delivered," (ii) "caution[ed] parties that may seek to stop shipments of goods to which the Debtors have title that the automatic stay is extant and will be enforced," Reply in Support of the Shipping Motion ¶ 6, and (iii) included a proposed final order granting the relief sought in the Shipping Motion (the "Proposed Final Shipping Order").

11. On November 15, 2018, the Court held a hearing in which it considered the Limited Objection. During the hearing, the Court clarified that the word "deliver" in the Interim Shipping Order and the Proposed Final Shipping Order was used in the colloquial sense, and any statutory

ambiguity over whether payments should be afforded administrative expense status under 503(b)(9) is not relevant to the Proposed Final Shipping Order. The court explained its interpretation as follows:

> "I think there's two levels to it… There's the colloquial word "deliver", and it's just an order. And then there's the statute. As I read it, this order doesn't change anyone's rights under the statute… I think just in terms of the colloquial meaning of the word "deliver", ***anyone who actually did deliver should be pretty comfortable. And the people who transferred title but kept it in their warehouse, they're going to have to talk to their lawyer.***"

11/15/2018 Hr'g Tr. at 123:1-12 (emphasis added).

12. On November 20, 2018, the Court entered the Final Shipping Order [D.I. 843] (the "Final Shipping Order"). Paragraph 8 of the Final Shipping Order provides as follows:

> All undisputed obligations of the Debtors arising from the postpetition delivery or shipment by of goods [*sic*] under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

13. Apex is a creditor whose goods were "actually delivered" after the Petition Date, and despite having transferred title, did not take any steps to keep the goods in its warehouse or preclude the common carrier from physically delivering possession of the goods to the Debtors. Upon information and belief, approximately $5,548,951.11 of goods ordered before the Petition Date were actually delivered to the Debtors' physical possession on and after the Petition Date,[3] and as of January 4, 2019, Apex has received no payment for such goods. In fact, Apex is owed $7,190,372.13 due under the terms of the Apex Agreement, all of which is entitled to

---

[3] This estimate is based on the assumption that the goods shipped from Asia are delivered to the Debtors on the 25th day following shipment, and goods shipped from Apex, NC, are delivered to the Debtors on the 7th day following shipment. To the extent that the process took longer, Apex's administrative claim under Bankruptcy Code section 503(b)(1) would be greater and to the extent the Debtor received the goods in a shorter period, Apex would have an administrative claim under Bankruptcy Code section 503(b)(9).

5

administrative expense priority under either section 503(b)(1) or section 503(b)(9) (the "Apex Unpaid Amounts"). Details regarding the Apex Unpaid Amounts, including amounts owed under each shipment and estimated date of delivery of each shipment, are attached hereto as Exhibit B for those goods shipped from Asia, and as Exhibit C for those goods shipped from Apex, NC.[4]

## RELIEF REQUESTED

14. By the Motion, Apex respectfully requests entry of an Order, substantially in the form attached hereto as Exhibit A, (i) granting administrative expense status to no less than $5,548,951.11 of the Apex Unpaid Amounts pursuant to section 503(b)(1)(A) (the "Apex 503(b)(1) Claim"), (ii) granting administrative expense status to no less than $1,641,421.02 of the Apex Unpaid Amounts pursuant to section 503(b)(9) (the "Apex 503(b)(9) Claim", and together with the Apex 503(b)(1) Claim, the "Apex Administrative Claims"), and (iii) directing the Debtors to immediately pay the Apex 503(b)(1) Claim.

## BASIS FOR RELIEF

*The Apex 503(b)(1) Claim*

15. Section 503(b)(1) provides "after notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). *See*, *e.g.*, *In re Hostess Brand, Inc.*, 499 B.R. 406, 411 (S.D.N.Y 2013). An expense is afforded administrative expense priority if "it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Bethlehem Steel Corp., 479*

---

[4] The Debtors and common carriers that delivered the goods to the Debtors have not provided Apex with confirmation of the dates the goods were delivered to the Debtors' warehouses. Accordingly, Exhibit B estimates that each delivery from Apex's Asian shipments arrives 25 days after shipment, and Exhibit C estimates that each delivery from Apex's Apex, NC, shipments arrive 7 days after shipment.

6

*F.3d 167, 172 (2d Cir. 2007), citing Trustees of Amalgamated Ins. Fund v. Mc Farlin's, 789 F.2d 98, 101 (2d Cir. 1986).*

16.    The Court, by entering the Final Shipping Order, has already authorized the Debtors to pay the Apex 503(b)(1) Claim and to do so in the ordinary course of business.  The Apex 503(b)(1) Claim is precisely the kind of claim intended to paid under the Final Shipping Order, and otherwise satisfies the criteria for an administrative expense under section 503(b)(1)(A).  Apex delivered goods to the Debtors after the Petition Date to fulfill prepetition orders, and Debtors expressly sought authority to pay for these goods because they were necessary for the Debtors to continue operating their businesses in the normal course and pursue their restructuring efforts. Indeed, as the Debtors argued, "obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority because they benefit the estate postpetition."  Shipping Motion ¶ 32.

17.    Moreover, by filing the Shipping Motion and obtaining the Final Shipping Order, there is no question that the Debtors represented to Apex, and all vendors, that any goods delivered after the Petition Date would be afforded administrative expense priority and paid in the ordinary course of business. *E.g.*, Shipping Motion ¶ 32-33; Final Shipping Order ¶ 8. Thus, the Shipping Motion and Final Shipping Order and the assurances therein constituted a postpetition "inducement" by the Debtors upon which Apex could rely to complete transactions that were initiated prepetition. *E.g., In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002) (holding services performed by creditor must have been "induced" by the debtor-in-possession, not the prepetition debtor).

18.    As a result, Apex was entitled to rely on the Debtors' representations in the Shipping Motion and Final Shipping Order and to stand down from taking actions, including

moving to lift the automatic stay and exercising reclamation rights or asserting an "administrative freeze" on deliveries, in exchange for administrative treatment and ordinary course payments for goods delivered to the Debtors under the Apex Agreement on and after the Petition Date.

19.     Apex was further reassured by this Court's understanding of the meaning of the word "delivered" in the Proposed Final Shipping Order. In response to Apex's Limited Objection, the Court clarified that "delivered" in the Final Shipping Order had the colloquial meaning of physical delivery, as distinguished from title passage or any statutory-based interpretation. *See* 11/15/2018 Hr'g Tr. at 123:1-12. Apex therefore understood that amounts owed for any goods the Debtors actually received after the Petition Date would be entitled to administrative expense status and paid in the ordinary course of business.

20.     Accordingly, the Apex 503(b)(1) Claim should be allowed as an administrative expense.

***The Apex 503(b)(9) Claim***

21.     Under section 503(b)(9), "the value of any goods ***received*** by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business" is entitled to administrative expense status. 11 U.S.C. § 503(b)(9) (emphasis added).

22.     While there is no guidance from within the Second Circuit on the meaning of the word "received" as used in section 503(b)(9), the Third Circuit Court of Appeals has held that "received" means physical possession. In *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017), sellers shipped goods to the Debtor "free on board" through a common carrier, so that risk of loss or damage passed to the Debtor upon shipment. Although shipment was made within 20 days of the bankruptcy filing, the Debtor received the goods after the the bankruptcy filing. The court held

8

that "received" under 503(b)(9) requires physical possession because (a) the legal, dictionary, and UCC definitions of "received" require physical possession, and (b) a previous Third Circuit decision, *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 224–25 (3d Cir. 1984), held that the definition of "received" in 546(c) is the same as the UCC "physical possession" definition, and "the interrelationship between 546(c) and 503(b)(9) is explicit in the Bankruptcy Code." *Id. See also In re SRC Liquidation, LLC*, 2017 WL 2992718 (Bankr. D. Del. July 13, 2017) (relying on the same reasoning and holding that vendor is not entitled to a section 503(b)(9) claim for the goods shipped directly to the Debtor's customers because the Debtor never had actual physical or constructive possession of the goods.). The Court in *Ningbo Chenglu Paper Prod. Mfg. Co. v. Momenta, Inc.*, 2012 WL 3765171 (D.N.H. Aug. 29, 2012), arrived at the same conclusion after holding that congress intended for the definition of "received" in section 503(b)(9) to be consistent with "receipt" under section 546(c).

23. The *World Imports* and *Ningbo Chenglu* cases and the reasoning behind those decisions is instructive. In particular, there is a need for consistency between the definition of "receipt" under section 546(c) and "received" under section 503(b)(9), and this Court has already held that "receipt" under section 546(c) means physical possession. *See*, *e.g.*, *In re Flagstaff Foodservice Corp.*, 56 B.R. 910, 914 (Bankr. S.D.N.Y. 1986). As the court in *Ningbo Chenglu* explained, section 503(b)(9) was intended to "create a priority administrative expense as a supplemental remedy *for reclamation sellers*," rather than create a new class of creditors that, as was the case in *Ningbo Chenglu*, never shipped directly to the debtor. *Ningbo Chenglu* at *4.

24. Here, as detailed in Exhibit B and Exhibit C, Apex shipped goods to the Debtors prior the Petition Date, which the Debtors physically received during the 20 days before the

bankruptcy. The value of these goods is no less than $1,641,421.02. This amount is entitled to administrative expense priority under section 503(b)(9).

*Immediate Payment*

25.    As set forth above, Apex acted in reliance on the Debtors' Shipping Motion, the Interim Shipping Order, the Final Shipping Order, and this Court's interpretation of the Final Shipping Order. Apex was not only led to believe that amounts owed under the Apex Agreement are entitled to administrative expense status pursuant to section 503(b)(1)(A), but that these amounts would be paid in the ordinary course of business. As a result, Apex agreed to continue selling goods to the Debtors and to forego exercising its various rights and remedies. Yet the Debtors have not paid Apex in the ordinary course despite numerous representations, and Apex is forced to request that the Court compel payment.

26.    Accordingly, Apex requests that the Court enter an order directing immediate payment of the Apex 503(b)(1) Claim. The Apex 503(b)(1) Claim is a considerable sum that represents a substantial risk to Apex's operations. Moreover, the Debtors have provided no justification for non-payment. Indeed, the Debtors have already argued that these payments must be made in the ordinary course of business, and they have sought and obtained authority to pay vendors for precisely these types of obligations. Shipping Motion ¶ 33; Final Shipping Order ¶ 8. The Debtors have the authority to immediately pay Apex all amounts Apex is due in the ordinary course, and there is no justification for not doing so immediately.

**RESERVATION OF RIGHTS**

27.    This Motion is filed with a full reservation of rights, including the right to amend and/or supplement this Motion in all respects, including to assert that all or part of the claim described herein are secured by additional collateral of the Debtors or its estate, to reflect any

additional claims against the Debtors, or to file proofs of claim for claims that may be based on the same or additional documents or transactions including, without limitation, an administrative expense, secured, or priority claim. In addition, Apex reserves any and all rights of setoff and/or recoupment it may have in connection with the claims asserted in this Motion.

## NOTICE

28.    Notice of this Motion has been provided to (a) counsel to the Debtors, (b) the Office of the United States Trustee for Region 2, (c) counsel to the Official Committee of Unsecured Creditors, (d) all other parties entitled to service pursuant to paragraph 5 of the *Amended Order Implementing Certain Notice and Case Management Procedures* [D.I. 405], and (e) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

*[Text continues on following page]*

**WHEREFORE**, for the foregoing reasons, Apex respectfully request that the Court enter an Order (i) allowing the Apex Administrative Claims as administrative claims under 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9), (ii) directing the Debtors to immediately pay the Apex 503(b)(1) Claim pursuant to 11 U.S.C. § 507(a)(2), and (iii) granting such other relief as the Court deems just and proper.

Dated: January 4, 2019
New York, New York

**APEX TOOL GROUP, LLC**

*/s/ Gregg M. Galardi*
Gregg M. Galardi
Sam N. Ashuraey
Kimberly J. Kodis
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090