**Hearing Date and Time: January 18, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time: January 11, 2019 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                    :

In re                                :        **Chapter 11**
                                      :

**SEARS HOLDINGS CORPORATION**, *et al.*,   :        **Case No. 18-23538 (RDD)**
                                      :

                Debtors.[1]        :        **(Jointly Administered)**
                                      :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF HEARING ON**
**APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN**
**DELOITTE TRANSACTIONS AND BUSINESS ANALYTICS LLP FOR**
**BANKRUPTCY ADVISORY SERVICES *NUNC PRO TUNC* TO OCTOBER 29, 2018**

PLEASE TAKE NOTICE that a hearing on the annexed application (the
"**Application**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in
possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an
order pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"),
Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy
Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District
of New York (the "**Local Rules**"), for authority to retain and employ Deloitte Transactions and
Business Analytics LLP ("**DTBA**") to provide bankruptcy advisory services, *nunc pro tunc* to
October 29, 2018, all as more fully set forth in the Application, will be held before the Honorable
Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the
Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York,
10601-4140 (the "**Bankruptcy Court**") on **January 18, 2019 at 10:00 a.m. (Eastern Time)**
(the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the
"**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and
the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the
Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with
General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other
parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a
hard copy delivered directly to Chambers), in accordance with the customary practices of the
Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in

2

accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than **January 11, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.

        **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: January 4, 2019
      New York, New York

                /s/  Garrett A. Fail
                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York  10153
                Telephone:  (212) 310-8000
                Facsimile:  (212) 310-8007
                Ray C. Schrock, P.C.
                Jacqueline Marcus
                Garrett A. Fail
                Sunny Singh
                Jessica Liou

                *Attorneys for Debtors*
                *and Debtors in Possession*

WEIL:\96813527\7\73217.0004

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11**
                                                            :
**SEARS HOLDINGS CORPORATION,** *et al.*,                   :    **Case No. 18-23538 (RDD)**
                                                            :
               **Debtors.**[1]                              :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).    The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**APPLICATION OF DEBTORS
FOR AUTHORITY TO RETAIN DELOITTE
TRANSACTIONS AND BUSINESS ANALYTICS LLP FOR
BANKRUPTCY ADVISORY SERVICES *NUNC PRO TUNC* TO OCTOBER 29, 2018**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (the "**Application**"):

**Background**

1.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

2

## Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Relief Requested

6.      By this Application, the Debtors request authority, pursuant to section

327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Bankruptcy

Rules for the Southern District of New York (the "**Local Rules**") 2014-1 and 2016-1, to retain

and employ Deloitte Transactions and Business Analytics LLP ("**DTBA**") to provide bankruptcy

advisory services (the "**Bankruptcy Advisory Services**") in accordance with the terms and

conditions set forth in that certain engagement letter, dated November 6, 2018 (the

"**Engagement Letter**").  In support of this Application, the Debtors submit the Declaration of

John W. Little, a principal at DTBA (the "**Little Declaration**").  The Little Declaration is

annexed hereto as **Exhibit A**.  A copy of the Engagement Letter is annexed to the Little

Declaration as **Exhibit 1**.  A proposed form of order granting the relief requested in this

Application is annexed hereto as **Exhibit B** (the "**Proposed Order**").

## DTBA's Qualifications

7.      DTBA is a professional services firm with offices across the United States.

DTBA has significant experience in providing Bankruptcy Advisory Services in large and

complex chapter 11 cases on behalf of debtors throughout the United States, including numerous

large chapter 11 cases in this district.  *See, e.g., Westinghouse Elec. Co., LLC.*, Case No. 17-

10751 (MEW) (Bank. S.D.N.Y. Nov. 16, 2017) (ECF No. 1585); *In re Sabine Oil & Gas Corp.*,

3

Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 16, 2015) (ECF No. 425). Such experience

renders DTBA well-qualified and able to provide Bankruptcy Advisory Services to the Debtors

during the pendency of these chapter 11 cases. DTBA's services fulfill an important need and

are not provided by any of the Debtors' other professionals.

### Scope of Services

8.    It is proposed that DTBA be employed as of October 29, 2018, to act as

the Debtors' bankruptcy advisor, all as set forth more fully in the Engagement Letter, by

performing Bankruptcy Advisory Services as follows:

a)    Provide advice and recommendations to the Debtors in connection with the development of a creditor matrix;

b)    Provide advice and recommendations to the Debtors with regard to their current ledger and accounts payable system for the necessary bankruptcy reporting;

c)    Provide advice and recommendations to the Debtors with respect to the development of their schedules of assets and liabilities;

d)    Provide advice and recommendations to the Debtors with respect to the development of their monthly operating reports;

e)    Provide advice and recommendations to the Debtors with respect to the development of statements of financial affairs;

f)    Provide advice and recommendations to the Debtors with respect to their claims listing and reconciliation process; and

g)    Provide advice and recommendations to the Debtors with respect to general corporate restructuring matters, as requested by the Debtors.

### Efforts to Avoid Duplication of Services

9.    The Bankruptcy Advisory Services performed by DTBA will not

unnecessarily duplicate or overlap with the other services performed by the Debtors' other

retained professionals and advisors. DTBA understands that the Debtors have retained and

may retain additional professionals during the term of the Engagement Letter, and has agreed

to work cooperatively with the Debtors to avoid unnecessary duplication of services.

4

## **Indemnification Provisions**

10.    As part of the overall compensation payable to DTBA under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification provisions set forth in the Engagement Letter (the "**Indemnification Provisions**"), to the extent permitted by applicable law and as modified by the Proposed Order.

11.    The terms of the Engagement Letter and the Indemnification Provisions were fully negotiated at arm's length.    The Debtors respectfully submit that the Indemnification Provisions are reasonable and are appropriate under the circumstances.

12.    Moreover, consistent with the practice in this jurisdiction, the Debtors request that the Court approve the Indemnification Provision reflected in the Engagement Letter subject to the modifications reflected in the Proposed Order.    The Debtors believe that the proposed modifications to the Indemnification Provisions of the Engagement Letter are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

## **DTBA's Disinterestedness**

13.    To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Little Declaration, DTBA has represented that it neither holds nor represents any interest that is adverse to the Debtors' estates in connection with any matter on which it would be employed.

14.    Based upon the Little Declaration, the Debtors submit that DTBA is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.    If DTBA discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

5

15.    Prior to the Commencement Date, Deloitte & Touche LLP ("**Deloitte &
Touche**"), an affiliate of DTBA, provided professional services to the Debtors.  In the ninety
(90) days prior to the Commencement Date, the Debtors paid Deloitte & Touche
approximately $9,000,000 for services performed and/or to be performed.   As of the
Commencement Date, no amounts were outstanding with respect to the invoices issued by
Deloitte & Touche prior to such date.

16.    Moreover, prior to the Commencement Date, Deloitte Tax LLP ("**Deloitte
Tax**"), an affiliate of DTBA, provided professional services to the Debtors.  In the ninety (90)
days prior to the Commencement Date, the Debtors paid Deloitte Tax $21,200 for services
performed.  As of the Commencement Date, approximately $131,000 was outstanding with
respect to the invoices issued by Deloitte Tax.

17.    Some services incidental to the tasks to be performed by DTBA in the
chapter 11 cases may be performed by personnel now employed by or associated with affiliates
of DTBA, such as Deloitte Financial Advisory Services LLP, Deloitte & Touche, Deloitte Tax,
and Deloitte Consulting LLP, or their respective subsidiaries, including subsidiaries located
outside of the United States.

18.    Contemporaneously herewith, the Debtors are also seeking authority to
employ and retain Deloitte Tax to act as the Debtors' tax advisor and Deloitte & Touche to act
as the Debtors' accounting advisor. *See Application of Debtors for Authority to Retain Deloitte
Tax LLP as Tax Services Provider for the Debtors* Nunc Pro Tunc *to the Commencement Date*
and *Application of Debtors for Authority to Retain Deloitte & Touche LLP for Independent
Audit and Advisory Services* Nunc Pro Tunc *to the Commencement Date*, respectively.

6

**Professional Compensation**

19.    As set forth in the Little Declaration, DTBA's retention by the Debtors is conditioned upon its ability to be retained in accordance with the terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Letter.

20.    Pursuant to the Engagement Letter, DTBA agreed to charge the Debtors the applicable hourly billing rates by classification of personnel with respect to such services, set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner / Principal | $775-$925 |
| Managing Director | $700-$925 |
| Senior Manager/Senior Vice President | $600-650 |
| Manager/Vice President | $500-$600 |
| Associate/Senior Associate | $395-$475 |

21.    In addition to the fees set forth above, the Debtors have agreed to compensate DTBA for actual, reasonable, and necessary expenses, including travel and lodging, data processing and storage, and other expenses incurred by DTBA in providing the Bankruptcy Advisory Services.

22.    As set forth in the Little Declaration, and subject to Court approval, DTBA intends to file interim and final fee applications for the allowance of compensation for Bankruptcy Advisory Services rendered and reimbursement of expenses incurred pursuant to the Engagement Letter in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, any applicable orders of the Court, including the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of*

7

*Professionals* (ECF No. 796) (the "**Interim Compensation Order**") and the Order granting this Application, and any applicable guidelines issued by the Office of the United States Trustee.

23.    DTBA will maintain records in support of any fees incurred in connection with the services it performs in these chapter 11 cases by category and nature of the Bankruptcy Advisory Services rendered, and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in providing those services, and the individuals who provided professional services on behalf of the Debtors.

24.    DTBA has received no promises regarding compensation in the chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Little Declaration.  DTBA has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases in accordance with section 504 of the Bankruptcy Code.

## Relief Requested Should Be Granted

25.    Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out the [debtors'] duties under this title."  11 U.S.C. § 327(a).  As discussed above and as further detailed in the Little Declaration, to the best of the Debtors' knowledge, DTBA is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates.

8

26.    Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, [and] any proposed arrangement for compensation . . . .

Fed. R. Bankr. P. 2014.

27.    DTBA has significant experience and extensive knowledge in the field of Bankruptcy Advisory Services.  Moreover, DTBA is familiar with the relevant financial information and other data maintained by the Debtors and is qualified and best positioned to provide the Bankruptcy Advisory Services to the Debtors in an efficient and cost effective manner.  Accordingly, the Debtors believe that DTBA's employment is in the best interests of the Debtors, their estates, and their creditors and, therefore, should be approved.

### *Nunc Pro Tunc* **Relief Is Warranted**

28.    The Debtors believe that employment of DTBA effective *nunc pro tunc* to October 29, 2018 is warranted under the circumstances of these chapter 11 cases so that DTBA may be compensated for its services prior to entry of an order approving DTBA's retention. Further, the Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment because DTBA has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

29.    Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to that requested herein.  *See, e.g.*, *In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Nov. 16, 2017) (ECF No. 1585); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. Apr. 28, 2014) (ECF Nos. 106, 107, 108, and 109).

9

## Notice

30.     Notice of this Application will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**").  The Debtors respectfully submit that no further notice is required.

31.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 4, 2019
        New York, New York

SEARS HOLDINGS CORPORATION
*(for itself and on behalf of its affiliates
as Debtors and Debtors in Possession)*


 /s/ Mohsin Meghji
NAME: Mohsin Meghji
TITLE:  Chief Restructuring Officer

10

## **Exhibit A**

**Little Declaration**

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
In re                                                        :        **Chapter 11**
                                                             :
**SEARS HOLDING CORPORATION, et al.,**                       :        **Case No. 18-23538 (RDD)**
                                                             :
                         **Debtors.**[1]                     :        **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

## DECLARATION OF JOHN W. LITTLE IN SUPPORT OF THE APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN DELOITTE TRANSACTIONS AND BUSINESS ANALYTICS LLP TO PROVIDE BANKRUPTCY ADVISORY SERVICES *NUNC PRO TUNC* TO OCTOBER 29, 2018

I, John W. Little, under penalty of perjury, declares as follows:

1.     I am a principal of the firm of Deloitte Transactions and Business Analytics LLP

("**DTBA**"), which has an office at 2200 Ross Avenue, Suite 1600, Dallas, Texas 75201.  I am

duly authorized to make and submit this declaration (the "**Declaration**") on behalf of DTBA as

bankruptcy advisor for Sears Holdings Corporation and its debtor affiliates, as debtors and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") in support of the *Application of Debtors for Authority to Retain Deloitte Transactions and Business Analytics LLP for Bankruptcy Advisory Services Nunc Pro Tunc to October 29, 2018* (the "**Application**").[2]

2.      The Debtors seek to retain DTBA pursuant to the terms and conditions set forth in that certain engagement letter, effective as of October 29, 2018, to provide certain bankruptcy advisory services for the Debtors (the "**Engagement Letter**").  A copy of the Engagement Letter is attached hereto as **Exhibit 1**.

3.      The statements set forth in this Declaration are based upon my personal knowledge, information and belief, the declaration of Jim Berry (the "**Berry Declaration**") submitted in connection with the Debtors' application to retain Deloitte & Touche LLP ("**Deloitte & Touche**"), an affiliate of DTBA, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of DTBA or its affiliates.

## DTBA's Qualifications

4.      DTBA is a professional services firm with offices across the United States. DTBA has significant experience performing bankruptcy advisory services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States.   Such experience renders DTBA well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases in a cost-effective, efficient, and timely manner.  DTBA's services fulfill an important need and are not provided by any of the Debtors' other professionals.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

2

**Disinterestedness**

5.      Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, DTBA, nor any partner, principal, or managing director of DTBA that is anticipated to provide the services for which DTBA is to be retained (the "**Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors; and (b) DTBA and the Engagement Partners/Principals/Managing Directors have no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in the chapter 11 cases, except as stated herein or in any attachment hereto.

6.      As discussed in the Berry Declaration, in connection with Deloitte & Touche's retention by the Debtors in these chapter 11 cases, Deloitte & Touche undertook a search to determine and to disclose whether it or its affiliates, including DTBA, is or has been employed by, or have any relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "**Potential Parties-in-Interest**"), whose specific names were provided to Deloitte & Touche by the Debtors. To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these chapter 11 cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates, including DTBA, had any relationships with the Debtors or the significant Potential Parties-in-Interest.

7.      DTBA and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, DTBA

3

and/or its affiliates have had, currently have and/or may have in the future banking or other relationships with such parties, or provided, may currently provide, and/or may provide in the future professional services to certain of these parties in matters unrelated to the chapter 11 cases. From time to time, DTBA and its affiliates have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the chapter 11 cases, except as set forth herein or in the attachments hereto. Additionally, certain significant Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to DTBA and/or its affiliates and the Engagement Partners/Principals/Managing Directors in matters unrelated to the chapter 11 cases. A listing of such parties is attached to this Declaration as **Schedule 1**.

8.     DTBA believes that the relationships described herein or reflected on **Schedule 1** have no bearing on the services for which DTBA's retention is being sought by the Debtors in the chapter 11 cases. Furthermore, such relationships do not impair DTBA's disinterestedness, and DTBA does not represent an adverse interest in connection with the chapter 11 cases.

9.     Despite the efforts described above to identify and disclose DTBA's connections with the significant Potential Parties-in-Interest in the chapter 11 cases, because DTBA is a nationwide firm with many employees, DTBA is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if DTBA discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

10.    To the best of my knowledge, based on the internal search discussed above, DTBA has determined that certain relationships should be disclosed as follows:

4

a.  DTBA and/or its affiliates provide services in matters unrelated to the chapter 11 cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 1**.

b.  Law firms identified on **Schedule 1**, including Baker & Hostetler LLP; Cleary Gottlieb Steen & Hamilton LLP; DLA Piper US LLP; Haynes & Boone LLP; Morgan Lewis & Bockius LLP; Orrick Herrington & Sutcliffe LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Steptoe & Johnson LLP; Sullivan & Cromwell LLP; Wachtell, Lipton, Rosen & Katz LLP; and Weil Gotshal & Manges LLP, have provided, currently provide and may in the future provide legal services to DTBA or its affiliates in matters unrelated to the chapter 11 cases, and/or DTBA or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c.  In the ordinary course of its business, DTBA and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in the chapter 11 cases.  For example, from time to time, DTBA and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d.  Certain financial institutions or their respective affiliates (including Allianz Global Risks US Insurance Company; American Express Prepaid Card Management Corporation; AXA Insurance Company; Bank of America, N.A.; Barclays Capital Inc.; BB&T Bank; Capital One Bank; Citibank, N.A.; Citigroup Global Markets, Inc.; HSBC Bank; JPMorgan Chase Bank, N.A.; KeyBank; Life Insurance Company of North America ("Cigna"); Lloyd's of London; National Union Fire Insurance Company of Pittsburgh, PA; Prudential Insurance Co. of America; TD Bank, N.A.; and Wells Fargo Bank, National Association) listed on **Schedule 1** (i) are lenders to an affiliate of DTBA (DTBA is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of DTBA and its affiliates.  In addition, certain institutions or their respective affiliates, including Goldman, Sachs & Co., provide asset management services to DTBA, affiliates of DTBA and/or certain of their pension funds.

e.  Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with DTBA or its affiliates in connection with matters unrelated to the chapter 11 cases.

f.  Deloitte & Touche has provided and continues to provide audit services to certain clients and/or their affiliates in matters unrelated to these chapter 11 cases.  In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course accounting advice and conducts typical audit procedures that may arise from such clients' business arrangements with the Debtors.

WEIL:\96813527\7\73217.0004

g.  Certain firms around the world, including affiliates of DTBA, are members of Deloitte Touche Tohmatsu Limited ("**DTTL**"), a United Kingdom company limited by guaranty. Certain of the non-US member firms of DTTL or their affiliates (the "**DTT Member Firms**"), including the DTT Member Firm located in India, have provided, currently provide or may in the future provide professional services to certain of the Debtors or their affiliates.[3] In particular, DTT Member Firm located in Canada[4] performed audit services and tax services in the ordinary course of business for the Debtors' non-debtor affiliate, Sears Canada.

h.  DTBA and/or its affiliates, including Deloitte Tax LLP ("**Deloitte Tax**") and Deloitte & Touche, performed various professional services for the Debtors in connection with certain prepetition transactions, such as those relating to the separation of Lands' End, Seritage Growth Properties ("**Seritage**"), and Sears Canada and the respective rights offerings associated therewith, as well as debt financing and other transactions. In its capacity as auditor, Deloitte & Touche provided the Debtors with ordinary course auditing services, which included services that arose in connection with the associated transactions. Following the Lands' End and Seritage transactions, Deloitte & Touche was separately retained as the independent auditor of each of Lands' End and Seritage. In addition, Deloitte Tax performed tax-related consulting services for the Debtors related to the aforementioned transactions.

i.  Deloitte Services LP ("**Deloitte Services**"), an affiliate of Deloitte & Touche, is party to an agreement with Debtor Sears Holdings Management Corporation ("**SHMC**"), which permits SHMC to offer its Shop Your Way PERKS program to Deloitte Services' and its affiliates' personnel in the ordinary course of business via Deloitte Services' internal website. Neither Deloitte Services, its affiliates, nor their respective personnel receive compensation from SHMC under this agreement. Additionally, it is likely that personnel of Deloitte & Touche and/or its affiliates, including personnel who may be performing services for the Debtors, have ordinary course consumer relationships with the Debtors, including by being (i) participants in certain customer programs of the Debtors (such as being holders of gift cards or credit accounts or by being participants in the Debtors' Shop Your Way PERKS program) and (ii) the beneficiaries of various warranty arrangements as a result of the purchase of goods or services from the Debtors. Deloitte &

---

[3] Each of the DTT Member Firms is a separate and independent legal entity. It is not DTBA's practice to undertake conflicts checks with DTT Member Firms for the purpose of identifying relationships that they may have with the Debtors and other parties-in-interest and DTBA does not maintain a database for the purpose of identifying all such relationships.

[4] One employee of the DTT Member Firm located in Canada incurred a *de minimis* amount of time on performing services for DTBA in connection with DTBA's engagement with the Debtors. The employee will not be incurring additional time on the engagement, and DTBA does not intend to bill the Debtors' estates for any of this employee's time nor will such time be included in DTBA's fee applications.

6

Touche has not conducted research into the status of its or its affiliates' personnel as customers of the Debtors or their participation in these ordinary course customer programs.

j.   DTBA and/or its affiliates have provided, currently provide, and will continue to provide Bankruptcy Advisory Services to the Pension Benefit Guaranty Corporation (the "**PBGC**").  The Debtors and their pension plans are not the subject of these services for the PBGC.

k.   Deloitte Consulting LLP ("**Deloitte Consulting**"), an affiliate of DTBA, and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to the chapter 11 cases.

11.    Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of DTBA or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in the chapter 11 cases, the U.S. Trustee for Region 2, the Assistant United States Trustee for the Southern District of New York, and the attorney therefor assigned to the chapter 11 cases.

12.    Except as may be disclosed herein, to the best of my knowledge, information, and belief, DTBA and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that DTBA and the Engagement Partners/Principals/Managing Directors are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

### Scope of Services

13.    As set forth more fully **Appendix B** to the Engagement Letter, as requested by the Debtors and agreed to by DTBA, DTBA shall provide professional services for the Debtors in accordance with the terms and conditions set forth in the Engagement Letter, as follows:

a)    Provide advice and recommendations to the Debtors in connection with the development of a creditor matrix;

7

b)      Provide advice and recommendations to the Debtors with regard to their current ledger and accounts payable system for the necessary bankruptcy reporting;

c)      Provide advice and recommendations to the Debtors with respect to the development of their schedules of assets and liabilities;

d)      Provide advice and recommendations to the Debtors with respect to the development of their monthly operating reports;

e)      Provide advice and recommendations to the Debtors with respect to the development of statements of financial affairs;

f)      Provide advice and recommendations to the Debtors with respect to their claims listing and reconciliation process; and

g)      Provide advice and recommendations to the Debtors with respect to general corporate restructuring matters, as requested by the Debtors.

14.     DTBA respectfully requests that its retention be made effective *nunc pro tunc* to October 29, 2018 so that DTBA may be compensated for the professional services it has provided before the Application is heard by the Court.  DTBA has provided services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved *nunc pro tunc* to October 29, 2018.  DTBA submits that these circumstances are of a nature warranting retroactive approval.

## **Professional Compensation**

15.     DTBA's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Letter.

16.     Pursuant to the terms of the Engagement Letter, DTBA agreed to charge the Debtors the applicable hourly billing rates by classification of personnel with respect to such services, set forth in the table below.

| Personnel Classification | Hourly Rates |
|---|---|
| Partner / Principal | $775 - $925 |
| Managing Director | $700 - $925 |
| Senior Manager / Senior Vice President | $600 - $650 |
| Manager / Vice President | $500 - $600 |
| Associate / Senior Associate | $395 - $475 |

17.    Hourly rates are revised periodically in the ordinary course of DTBA's business. DTBA shall advise the Debtors of any new rates should it institute a rate-change during the chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

18.    In addition to the rates set forth above, the Debtors shall reimburse DTBA for all actual, reasonable and necessary expenses incurred by DTBA in connection with the professional services performed, including, but not limited to, expenses incurred on account of travel and lodging, data processing and storage, and communications charges, courier services, and other similar expenses incurred on behalf of the Debtors.

19.    DTBA intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court, including the order granting this application (to the extent compliance is not waived), and/or any applicable guidelines issued by the Office of the U.S. Trustee.

20.    DTBA will maintain records in support of any fees incurred in connection with the services it performs in the chapter 11 cases by category and nature of the services rendered, and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in providing those services, and the individuals who provided

9

professional services on behalf of the Debtors. DTBA will present such records to the Court in its fee applications to the Court. DTBA requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments. I understand that all payments rendered pursuant to DTBA's retention by the Debtors must be approved by an order of this Court and based upon the filing by DTBA of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

21.     As provided in the Berry Declaration, prior to the Commencement Date, Deloitte & Touche provided professional services to the Debtors. In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte & Touche approximately $9,000,000 for services performed and/or to be performed. As of the Commencement Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche.

22.     Prior to the Commencement Date, Deloitte Tax provided professional services to the Debtors. In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte Tax $21,200 for services performed. As of the Commencement Date, approximately $131,000 was outstanding with respect to the invoices issued by Deloitte Tax. It is my understanding that Deloitte Tax will not seek a recovery on any amounts related to such invoices.

23.     Some services incidental to the tasks to be performed by DTBA in the chapter 11 cases may be performed by personnel now employed by or associated with affiliates of DTBA, such as Deloitte Financial Advisory Services LLP, Deloitte & Touche, Deloitte Tax, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States.

10

24.     DTBA may subcontract a portion of advisory services to its indirect wholly-owned subsidiary, Deloitte Transactions and Business Analytics India Private Limited ("**DTBA India**").  In such case, a specifically assigned team of personnel from DTBA India would assist in such services under the supervision, and with the input, of personnel of DTBA.  The hourly rates charged to the clients by DTBA for services performed by DTBA India personnel are comparable to the rates charged for similar services by DTBA, but do not directly correlate with the hourly rates attributed to such services by DTBA India.  The connections of DTBA India (along with the connections of DTBA and its other affiliates) to the parties in interest searched by DTBA are set forth on **Schedule 1** attached hereto.

25.     DTBA has received no promises regarding compensation in the chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  DTBA has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the chapter 11 cases.

### Efforts to Avoid Duplication of Services

26.     The services performed by DTBA will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained professionals.  DTBA understands that the Debtors have retained and may retain additional professionals during the term of the Engagement Letter, and DTBA agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

*[Remainder of Page Intentionally Left Blank]*

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: January 4, 2019
      Dallas, Texas

_____
John W. Little
Principal
Deloitte Transactions and Business Analytics
LLP

13

## Schedule 1

Potential parties-in-interest or their affiliates for whom Deloitte Transactions and Business Analytics LLP or its affiliates has provided or is currently providing services in matters unrelated to the chapter 11 cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| 123Stores Inc. |
| 3M Company Kbe0561 |
| A&E Factory Service |
| A&E Home Delivery, LLC |
| A&E Lawn & Garden, LLC |
| A&E Signature Service, LLC |
| ABRY Partners II, LLC |
| Acadia Realty Limited Partners |
| ACCO Brands USA LLC |
| ACE American Insurance Company |
| ACE Property and Casualty Insurance Company |
| Active Media Services Inc. |
| Adobe Systems |
| ADP RPO |
| ADP, Inc. |
| AEA Investors LP |
| Aetna |
| AFGlobal |
| AFL-CIO |
| Agree Limited Partnership |
| AIG Europe Limited (Lex London) (ACT) |
| Ainsworth Pet Nutrition LLC |
| Akamai Technologies |
| Alan E Robbins |
| Alcon Laboratories Inc |
| Alexander's Rego Shopping Center Inc. |
| AlixPartners |
| Allianz Global Risks US Insurance Company |
| Allied Trade Group Inc |
| Allied World Assurance Company Ltd. |
| Allstate |

| |
|---|
| Ally Bank |
| Ally Commercial Finance LLC |
| Alta Mont Capital |
| Amazon.com, Inc. |
| AmCap Inc. |
| Ameren Missouri |
| American Apparel |
| American Express Prepaid Card Management Corporation |
| American Greetings Corporation |
| American Guarantee & Liability Insurance Company |
| American National Insurance Company |
| American President Lines |
| American Securities LLC |
| American Tire Distributors Inc. |
| American Trust |
| Angelo Gordon & Co. |
| Aon Hewitt |
| AON Risk Consultants Inc. |
| Aon Risk Services Companies |
| Apex Tool Group LLC |
| Apparel Sourcing (HK) Limited |
| Applewood Shopping Center GP |
| Arcelik A.S. |
| Ares Management |
| Ariba |
| Armored Autogroup |
| Aspen Specialty Insurance Company |
| Associated Hygienic Products |
| Assurant |
| Asurion |
| ASW LLC |
| AT&T |
| AT&T Mobility II, LLC |
| Automotive Rentals Inc. |
| Autozone Parts Inc |
| Avalara |
| AXA Insurance Company |
| AXIS Insurance Company |

2

| |
|---|
| Babcock & Brown (Gregory Greenfield) |
| Baker & Hostetler LLP |
| Banco Popular |
| Bancorpsouth Bank |
| Bank Leumi |
| Bank of America, NA |
| Bank of China |
| Bank of Oklahoma |
| Barclays Capital Inc. |
| Bayer Corporation |
| Bayshore Capital Advisors, LLC |
| BB&T Bank |
| BCBG MaxAzria |
| BDO Seidman |
| Beeline |
| Beeline Settlement Company LLC |
| Benderson |
| Benefit Street Partners L.L.C. |
| Benzalem MZL LLC |
| Berkadia Commercial Mortgage |
| Berkowitz, Bruce R. |
| Berkshire Hathaway International Insurance Limited |
| Best Buy Co., Inc. |
| Bestway (Hong Kong) Int'l Ltd |
| Big Beaver of Caguas Development Corporation |
| Big Lots, Inc. |
| Bissell Homecare International |
| BJ's Wholesale Club |
| Bl Intimate Apparel Canada Inc |
| Black & Decker US Inc. |
| Black & Decker Macao Commerc |
| Black Diamond Capital Management, L.L.C. |
| Blackhawk Marketing Services, Inc. |
| Blackstone/DDR JV |
| BlueLight.com, Inc. |
| BNY Midwest Trust Company, as indenture trustee for the SRAC Unsecured Notes |
| Braun Family LLC |
| BRE DDR BR Whittwood CA LLC |

3

| |
|---|
| BRE RC Retail Parent LLC |
| Brixmor (aka Centro) |
| Broadspire |
| Broan-Nutone LLC |
| Brothers Trading Co Inc |
| Brunswick MZL LLC (Katz Properties) |
| BSH Home Appliances Corporation |
| Burlington Stores, Inc. |
| C H Robinson Worldwide |
| Caleres Inc. |
| California Builder Appliances, Inc. |
| Canon Financial Services, Inc. |
| Caparra Center Associates LLC |
| Capital Brands LLC |
| Capital One Bank |
| Capitol Funds Inc |
| Cardinal Health |
| Carlyle Development Group |
| Carr, Alan J. |
| Cascade Investment, L.L.C. |
| Casto |
| CBL and Associates Properties Inc ("CBL") |
| Cbl/Cherryvale I, LLC |
| CCP Credit Acquisition Holdings, L.L.C. |
| Cede & Co. |
| Centennial Bank |
| Centerbridge |
| Central Plaza |
| Centurylink |
| Chamberlain Manufacturing Corp. |
| Chevron (Hk) Limited |
| China Fortune LLC |
| Chubb Bermuda Insurance Ltd. |
| Chubb Custom Insurance Company |
| Chubb Insurance Hong Kong Limited |
| Cigna |
| Cisco Systems |
| Citibank, N.A. |

4

| |
|---|
| CITIC Capital Partners Management Limited |
| Citigroup Global Markets Inc. |
| Citizens Bank |
| Citizens Business Capital, a division of Citizens Asset Finance Inc. |
| Citizens Insurance Company of America |
| Citizens National Bank |
| CJ Segerstrom & Sons / Henry Segerstrom Family |
| Clayton, Dubilier & Rice, LLC |
| Clearlake Capital Group, L.P. |
| Clearwater Paper Corporation |
| Cleary Gottlieb Steen & Hamilton, LLP |
| Cobblestone Victor NY LLC (Schottenstein) |
| Coca Cola Bottling Co. |
| Commercial International Bank (Egypt) S.A.E. |
| Commission Junction |
| Commonwealth of Massachusetts |
| Compucom Systems |
| Computershare Inc. |
| Conair Corporation- Personal C |
| Conopco Inc. |
| Continental Casualty Company |
| Continental Tire The Americas LLC |
| Cookeville Retail Holdings LLC |
| Cooper Tire & Rubber Company |
| Coral Reef Asia Pacific |
| Costco |
| Cott Beverages USA Inc |
| Coyote Logistics |
| Craftsman |
| CREF II Silver City LLC |
| Criteo |
| Crossfire |
| Crossroads Joint Venture LLC |
| Crown Credit Company |
| CT Corporation System |
| CVS Pharmacy |
| Cymax Stores USA LLC |
| Cyrus Capital Partners, L.P. |

WEIL:\96813527\7\73217.0004

| |
|---|
| Dagenais Family |
| Dan Arnold & Fred Keywell Partnership |
| David Hocker & Associates Inc. |
| David Mandelbaum & Peter Levine |
| DDR (SITE Centers Corp) |
| Dell Financial Services L.L.C. |
| Delphi Automotive PLC |
| Demoulas Super Markets Inc. |
| Design International Group Inc. |
| Deutsche Bank Securities Inc. |
| Dillard's, Inc. |
| Direct Energy |
| DLA Piper US LLP |
| D-Link Systems, Inc. |
| Dollar General Corporation |
| Dorel Asia Srl |
| Drivetrain Advisors |
| Duke Realty LP |
| Dunbar Armored |
| Duracell Distributing Inc |
| East Penn Manufacturing Co Inc. |
| Eastland Mall Holdings LLC (Mohammed Al Refaey) |
| Ebay Germany |
| Edwin P. Yates |
| Eldis/ Founder Holdings/Fix.com |
| Electrolux |
| Electrolux Home Products |
| Elizabeth Arden Inc |
| Empire Distributors Ejd Enterp |
| Endurance American Specialty Insurance Company (ACT) |
| Envision Michigan Holdings LLC |
| Equimax/Pentaco Management |
| Equity One Realty & Management Inc. |
| ESL Investments, Inc. |
| ESL Partners, L.P. (73.5%) |
| Euro Pro Sales Company |
| EvCom Holdings LLC & Steadfast Companies |
| Executive Risk Specialty Insurance Company |

6

| |
|---|
| Extell Development Co |
| EyeMed Vision Care |
| F & T Apparel LLC |
| FAA/EyeMed Vision Care, LLC |
| Facebook |
| Fairholme Capital Management, LLC |
| FBA Holdings Inc. |
| Federal Insurance Company |
| Federal Insurance Company (Chubb) |
| Federal Realty Investment Trust |
| Feil Organization, The |
| Ferguson Enterprises, Inc. |
| Ferguson Plc |
| Fifth Third Bank |
| Fila USA Inc. |
| First Allied Corporation |
| First American Title Ins. |
| First Hawaiian Bank |
| First Interstate Bank of Billings |
| First National Bank |
| First Security Bank |
| First State Bank |
| First Tennessee |
| Fisher Price Bds A Div Of Mdii |
| Five Below, Inc. |
| Five Mile Capital / StreetMac / Urban Retail Properties |
| Flagstar |
| Florida Builder Appliances, Inc. |
| Forest City Enterprises |
| Fossil Inc. |
| Fred's Inc. |
| Freeman Spogli Management Co., L.P. |
| FREP Holdings LLC |
| Fulcrum Property (managed by Macerich) |
| G&I VIII CBL Triangle LLC |
| Gap Inc. |
| Garrison (CBL Manages) |
| Gator |

7

| |
|---|
| GBG Beauty LLC |
| Geelong Sales Mco Limited |
| General Electric Capital Corporation |
| General Growth Properties, Inc. |
| General Mills Inc. |
| General Security Indemnity Company of Arizona |
| Genesco Brands, Inc. |
| GFI - c/o Walt Gasser & Associates |
| GGP (Brookfield Properties Retail Group) |
| Ggplp Real Estate Inc. |
| Gibson Brands |
| GK Development |
| Glimcher |
| Global Aerospace, Inc. |
| Golden Gate Capital |
| Goldman, Sachs & Co. |
| Goodyear Tire & Rubber Com, The |
| Google |
| Graham Capital |
| Grand Luck Fujian Footwear Co |
| Great Lakes Reinsurance (UK) PLC (Munich) (ACT) |
| Groupe Seb USA |
| Groupon |
| Grubhub, Inc. |
| GS Portfolio Holdings LLC |
| GVSC LP & Cameo Homes |
| H.I.G. Capital Management, LLC |
| Haddad Apparel Group Ltd. |
| Hallmark Marketing Company LLC |
| Hamilton Beach Brands Inc. |
| Hana Financial Inc. |
| Hanesbrands Inc Bali |
| Hanesbrands Inc. Leggs |
| Hanover Insurance |
| Hansae Co. Ltd. |
| Hart I 55 Industrial LLC |
| Hartz Mountain Corp |
| Harvest Partners, LP |

8

WEIL:\96813527\7\73217.0004

| |
|---|
| Hasbro Inc. |
| Haynes and Boone, LLP |
| HDC Holding Company of Delaware, Inc. |
| Heartland Bank and Trust Company |
| Hershey Chocolate Company |
| Hewitt Associates |
| Hewlett-Packard Financial Services Company |
| Hfc Prestige International U S |
| hhgregg Appliances and Electronics |
| Hilex Poly Co LLC |
| Holmes Group Inc |
| Home Depot, Inc. |
| HomeServe USA Corp. |
| Hoover Inc. |
| Houghton State Bank |
| House of Marley, LLC |
| HSBC Bank |
| Hudson Advisors |
| Hull Property Group |
| Huntington National Bank |
| Husqvarna Outdoor Products |
| Hybrid Promotions LLC |
| ICBC |
| Icon Health and Fitness Inc. |
| Icrossing |
| Illinois National Insurance Company (AIG) |
| Illinois Secretary of State |
| Illinois Union Insurance Company (ACE) |
| Inditex USA |
| Infosys |
| Ingersoll-Rand |
| Inland n/k/a IRC Retail Centers |
| Innovel Solutions, Inc. |
| Insurance Company of the State of Pennsylvania |
| International Brotherhood of Electrical Workers |
| International Brotherhood of Electrical Workers Local #1075 (IBEW) |
| International Union of Operating Engineers |
| International Union, United Automobile, Aerospace and Agricultural Implement |

9

| |
|---|
| Workers of America (UAW) |
| Iowa State Bank |
| Ironshore Specialty Insurance Company |
| J B Hunt Transport |
| J.C. Penney Company, Inc. |
| James Campbell |
| James Lewis |
| Jarden Consumer Solutions |
| Johnson & Johnson Consumer Inc. |
| Johnson Controls Inc. |
| Jordache Limited |
| Jordan Company, L.P., The |
| JP Morgan Chase Bank |
| JPP II, LLC |
| Kadish |
| Kamehameha Schools - Bishop Estate |
| Kamlani, Kunal S. |
| KBL Holding Inc. |
| KBS Real Estate Investment Trust Inc. |
| KCD IP, LLC |
| Kelso & Company |
| Keurig Green Mountain Inc. |
| Key Bank |
| Kik International Inc. |
| Kimberly Clark Corp. |
| Kimberly Clark Puerto Rico Inc. |
| Kimco |
| Kiran Jewels, Inc. |
| Kiss Products Inc. |
| Kitchenaid Inc. |
| KLC, Inc. |
| Kmart |
| Kmart Corporation |
| Kohl's Corporation |
| Kohlberg Kravis Roberts & Co. L.P. |
| KRG Sunland LP |
| Kumho Tires USA Inc. |
| L Brands, Inc. |

10

| |
|---|
| Ladley, Greg |
| Lakewood Shopping Center LLC |
| Lampert, Edward S. |
| Land's End, Inc. |
| La-Z-Boy Incorporated |
| LBA Realty |
| Ledvance LLC |
| Level 3 Communications |
| Lexington Corporate Properties Trust |
| LG Electronics |
| LG Electronics Alabama Inc. |
| Liberty Media |
| Liberty Mutual Insurance Company |
| Liberty Surplus Insurance Corporation |
| Lic Limited |
| Life Insurance Company of North America ("Cigna") |
| LightSquared |
| Limited Stores, LLC |
| Lincoln Gen Inc. Co. |
| Link Snacks Inc. |
| Little Caesars |
| Littlejohn & CO. LLC |
| Lloyd's Syndicates 623/2623 |
| Lm Farm LLC Dba Gardens Alive |
| LNR Partners LLC |
| Loreal Cosmetic and Fragrance |
| Lowe's Companies, Inc. |
| LSREF3 Spartan (Genesee) LLC / Lone Star Funds |
| M S Portfolio LLC |
| M&T Bank |
| Macerich Company |
| Macerich Partnership LP/Chesterfield |
| Macy's |
| Maersk |
| Maidenform Inc. |
| Mann Hummel Purolator Filters |
| March of Dimes |
| Mars Petcare US Inc. |

11

| |
|---|
| Mattel Brands A Div Of Mdii |
| Mattel Toys |
| Maurice Sporting Goods |
| MaxServ, Inc. |
| Maynardville Pike LP |
| Maytag Appliances |
| Mckee Foods Corp. |
| Meijer |
| Menard, Inc. |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated |
| MetaScale Technologies India Private Limited |
| MetLife (Metropolitan Life Insurance Company) |
| MFW Associates |
| Michelin North America Inc. |
| Microsoft |
| Midwood Investment & Development |
| ML-CFC 2006-4 Greeley Retail LLC |
| Mondelez Puerto Rico LLC |
| Monomoy Capital Management, L.P. |
| Morgan Lewis & Bockius |
| Morgan Stanley Capital I Trust |
| MORGAN STANLEY SMITH BARNEY |
| Mountain Laurel Plaza |
| MSD Capital |
| Mt Pleasant Shopping LLC |
| MTD Products Inc. |
| Munjal, Leena |
| Mxd Group |
| MyGofer LLC |
| National Fire & Marine Insurance Company |
| National Union Fire Insurance Co. |
| Navigators Insurance Company |
| Nbty Inc. |
| NCH Marketing Inc. |
| NCR Corporation |
| Nestle Purina Pet Care Company |
| New Market Station LP |
| Nexgrill Industries Inc. |

12

| |
|---|
| Niagara Bottling LLC |
| Norcell |
| Northwood Investors |
| Novae |
| Oak Lawn Center 835 LLC |
| Oakbrook Shopping Center, LLC |
| Oaktree Capital Management, L.P. |
| Oaktree Huntington Investment Fund II, L.P. |
| Oaktree Special Situations Fund, L.P. |
| Och-Ziff Capital Structure Arbitrage Master Fund Ltd. |
| Ohio Bureau of Workers Compensation |
| Old Republic Insurance Company |
| Ollie's Bargain Outlet Holdings, Inc. |
| Olshan Properties |
| OMERS Private Equity U.S.A. Inc. |
| One Jeanswear Group Inc. |
| One World Technologies In |
| Oracle America |
| Orrick Herrington & Sutcliffe |
| Outerstuff Ltd. |
| Parfums De Coeur |
| PartnerRe Ireland Insurance Limited (ACT) |
| Payless Shoesource |
| Pcl Co. Limited |
| Peak Rock Capital, LLC |
| PECO Real Estate Partners (CBL manages) |
| Pension Benefit Guarantee Corporation |
| Permira Advisers LLC |
| Phillips Edison Group LLC |
| Pimkie Apparels Ltd. |
| Platinum Equity Advisors, LLC |
| PMB, Inc. |
| PNC Bank, National Association |
| Port Plaza Realty Trust |
| Positec Macao Comm Offshore Lt |
| PREIT |
| Premierbank |
| Presidio Investors LLC |

13

| |
|---|
| PriceSmart, Inc. |
| Prime Clerk LLC |
| Private Brands, Ltd. |
| Procter & Gamble Distributing |
| Prologis Lp Dba Prologis |
| Protection One Alarm Monitoring |
| Prudent International Ltd. |
| Prudential Insurance Co. of America |
| Public Service Electric & Gas Co. |
| Pyramid Management Group, LLC |
| QBE Insurance Corporation |
| Quaker Oats Company |
| Quality King Distributors Inc |
| Ramco-Gershenson Properties |
| Randstad |
| RBS Partners, L.P. |
| Reese, Ann N. |
| Regency Centers |
| Regency Realty Corp |
| Regions Bank |
| Relay LLC |
| Retailnext Inc. |
| Revlon Consumer Products |
| Rhombus Development, LLC |
| Richardson Company |
| Richline Group, Inc. |
| Riecker, Robert A. |
| Roark Capital Acquisition LLC |
| Robbins Company, The |
| Robert Gallant GP (Providence Group Manages) |
| Robinson Family Trust |
| Rollins, Inc. |
| Rosenthal & Rosenthal Inc. |
| Rouse Properties |
| Royal Appliance Mfg. Co. |
| Rubbermaid Inc. |
| Safeco |
| Samsung Electronics |

14

WEIL:\96813527\7\73217.0004

| |
|---|
| Samsung Electronics America HA |
| Samual T Cohen Sara W Cohen & David Cohen |
| Sas Institute |
| Saul Holdings LP |
| Schindler Elevator |
| Schostak Brothers & Co |
| Schottenstein Realty LLC |
| Schumacher Electric Corp |
| Scott Company Jeff Scott |
| Sealy Mattress Company |
| Sears |
| Sears Protection Company/Wisconsin |
| Searsvale |
| Securian |
| Securian Life Insurance |
| Sedgwick Claims Management Services, Inc. |
| Segerstrom Family |
| Seiko Corporation of America |
| Sentinel Capital Partners, L.L.C. |
| Seritage (PREIT-) |
| Seritage / CBL |
| Seritage / CIM Group |
| Seritage / DDR |
| Seritage / Easement Agmt w/ Wal-Mart |
| Seritage / Federal Realty Inv Trust |
| Seritage / Forest City Enterprises |
| Seritage / GGP |
| Seritage / Glimcher |
| Seritage / Howard Hughes Corp |
| Seritage / Inland n/k/a IRC Retail- |
| Seritage / Macerich |
| Seritage / McKinley Inc-US Bank |
| Seritage / Ramco-Gershenson |
| Seritage / Regency Centers |
| Seritage / Rouse Properties |
| Seritage / Simon |
| Seritage / Starwood |
| Seritage / Starwood Capital |

15

| |
|---|
| Seritage / Taubman Company |
| Seritage / The Feil Organization |
| Seritage / US Mall Holdings-Omninet Capital |
| Seritage / Vintage Capital Group |
| Seritage / Vornado |
| Seritage KMT Finance LLC |
| Seritage SRC Finance LLC |
| Serta Incorporated |
| ServiceLive Direct |
| Servicenow |
| Sgg Inc. |
| SHC Desert Springs LLC |
| SHC Desert Springs, LLC |
| SHC Promotions, Inc. |
| Shearers Foods Burlington LLC |
| Sherwin Alumina Company |
| Shidler/West Finance Partners |
| SHMC, Inc. |
| Shop Your Way Local, LLC |
| Siemens Financial Services, Inc. |
| Sierra Management Corp |
| Simmons Bedding Company, LLC |
| Simmons Company |
| Simon / Washington Prime Group |
| Simon Property Group, Inc. ("Simon") |
| Sitel |
| Sitley, Stephen |
| Skadden, Arps, Slate, Meagher & Flom LLP |
| Skechers USA Inc. |
| SOE, Inc. |
| Sony Pictures Home Entertainment |
| Southland Mall Properties, LLC |
| SPE I Partners, LP (.1%) |
| SPE Master I, LP (.2%) |
| Spectrum Brands Inc. |
| Spg International Ltd. |
| Spin Master Toys Far East |
| Springs Global US Inc. |

16

| |
|---|
| Springs Window Fashion LLC |
| SPS Commerce Inc. |
| SRC Facilities LLC |
| SRC O.P. LLC |
| SRC Real Estate (TX), LLC |
| SRC Sparrow 1 LLC |
| St. Jude Children's Research Hospital |
| Standard Bank Ltd. Mauritius |
| Standard Chartered Bank |
| Stanley Black & Decker, Inc. |
| Starr Indemnity & Liability Company |
| Starr Surplus Lines Insurance Company |
| StarWest, LLC |
| Starwood |
| Starwood - Star-West Chicago Ridge LLC |
| Starwood Ceruzzi LLC (Ceruzzi Holdings) |
| State Insurance Fund |
| State of California - Office of Self Insurance Plans |
| State of Florida, Department of Revenue Out of State/Central Collections Unit |
| State Street Bank and Trust Company |
| Steadfast Companies |
| Steptoe & Johnson LLP |
| Stericycle |
| Sterling Organization |
| STI Merchandising, Inc. |
| Stone Point Capital LLC |
| Stop & Shop Supermarket Company LLC, The |
| Studio 1 |
| Sullivan & Cromwell |
| Sutherland Global Services Private-712344 |
| Sycamore Partners Management, L.P. |
| TA Associates Management, L.P. |
| Target Corporation |
| Tata Consultancy Services Ltd. |
| Taubman |
| TD Bank, N.A. |
| Team Beans LLC |
| Telebrands Corporation |

17

| |
|---|
| Telecheck Services |
| Tempur Pedic North America LLC |
| Teneo Holdings |
| Teradata Operations |
| Thanh Cong Text Gmt Invest Tra |
| The Kroger Co. |
| The Service Master Company |
| THL |
| Thompson Tractor Co., Inc. |
| Timberland A Div Of Vf Outdoor |
| TJX Companies, Inc. |
| Tokio Marine America Insurance Company |
| Topshop USA |
| Torin Inc. |
| Towanda PA Holding LLC |
| TowerBrook Capital Partners L.P. |
| Towers Watson & Co. |
| Toyota Industries Commercial Finance, Inc. |
| Toys "R" Us-Delaware |
| Transier, William L. |
| Travelers Casualty and Surety |
| Trident Limited |
| Trilantic Capital Partners VI (North America) L.P. |
| Trinity Reit, Inc. |
| Triple Crown Operating Trust LP |
| Troy Coolidge |
| Troy Coolidge No. 13, LLC |
| True Value Company |
| Tuesday Morning, Corp. |
| Twentieth Century Fox Home Entertainment LLC |
| U S Realty a/k/a Garden Properties |
| U.S. Bank Trust National Association |
| UBS AG, Stamford Branch, LLC |
| UBS Securities LLC |
| UCI International |
| UE Bruckner Plaza LLC |
| Union Bank |
| Union Center Realty LLC |

18

| |
|---|
| Unique Designs, Inc. d/b/a Kiran Jewels, SDIL, InterJewel |
| United Parcel Services |
| Univest-BTC S&R LLC |
| UPS Capital Corporation |
| Urban Edge Properties LP |
| V Suarez & Co |
| Vanity Fair Intimates |
| Verbatim Americas LLC |
| Verizon Wireless |
| Vintage Capital Group |
| Virginia Surety Company, Inc. |
| Vornado |
| Vtech Communications Inc. |
| W P Carey & Co. |
| Wachovia Securities |
| Wachtell, Lipton, Rosen & Katz |
| Wal-Mart Stores, Inc. |
| Walton Street Capital LLC / Brian T Kelly Principal |
| Warburg Pincus |
| Washington Real Estate Investment Trust |
| Waste Management |
| Watsco, Inc. |
| Waypoint Property Group |
| Weil, Gotshal & Manges LLP |
| Weingarten Realty |
| Wells Fargo Bank, National Association |
| Welspun Global Brands Ltd |
| West Plaza Associates |
| Westchester Fire Insurance Company |
| Western Union Financial Services, Inc. |
| Westfield |
| Westport Insurance Corporation |
| Whirlpool Corporation |
| Widewaters Group Inc. |
| Williamson-Dickie Manufacturing |
| WillisTowersWatson |
| Wilmington Trust, National Association |
| Winning Resources Limited |

| |
|---|
| Winplus North America Inc |
| Wipro |
| Wolverine World Wide Inc. |
| Woodbury Corporation |
| Woodfield Mall LLC (Simon Property Group - Mall Mgr) |
| Woori Bank |
| World Kitchen LLC |
| World Publication |
| WP Glimcher (Simon / WPG & Glimcher) |
| WRI Golden State LLC |
| WRI/Raleigh LP |
| Wynnchurch Capital |
| XL Insurance (Bermuda) Ltd. |
| XL Specialty Insurance Company |
| Xpo Last Mile |
| Yahoo |
| York International |
| YWCA Metropolitan Chicago |

WEIL:\96813527\7\73217.0004

## **Exhibit 1**

**Engagement Letter**

# Deloitte.

**Deloitte Transactions and Business Analytics, LLP**
JPMorgan Chase Tower
2200 Ross Avenue, Suite 1600
Dallas, TX  75201-6778
USA

Tel:  +1 214 840 7000
www.deloitte.com

November 6, 2018

Mr. Robert A. Riecker
Chief Financial Officer
Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re: Terms of Engagement of Deloitte Transactions and Business Analytics LLP as Financial Advisor

Dear Mr. Riecker:

This letter sets forth the agreement between Sears Holdings Corporation and its subsidiaries ("Client" or "you") and Deloitte Risk and Financial Advisory[1] ("Advisor", "our", and "we"), effective as of October 29, 2018, whereby Advisor's personnel will provide to Client the services described herein.  The General Business Terms & Conditions applicable to this engagement are attached to this letter as Appendix A and are incorporated herein by reference. You have advised us that the audit committee of Client, prior to the date hereof and prior to the date that any services began, has provided its approval of this engagement and the services to be provided by Advisor hereunder.

*UNDERSTANDING OF ROLES*

Advisor will provide all or some of the services as detailed in Appendix B and as requested by Client and agreed to by us (the "Services").

You acknowledge and agree that you are responsible for supplying complete and accurate information, representations, and books and records upon which we may rely, and we shall have no responsibility for mistakes or omissions on our part arising as a result of having relied upon information, representations, or books and records provided by you or on your behalf that were inaccurate or incomplete.  In addition, in connection with the Services provided hereunder, we will not audit or otherwise verify the materials provided to us, nor will we provide any assurances concerning the reliability, accuracy, or completeness of any materials provided by or on behalf of you or any other party, and the Services cannot be relied on to disclose errors or fraud should they exist.  We shall have no responsibility for updating the Services unless pursuant to a new engagement letter.

*THE BANKRUPTCY CASE*

Client agrees that it will promptly seek the Bankruptcy Court's approval of this engagement in its chapter 11 bankruptcy proceeding (the "Case").  The application, proposed order and other supporting documents submitted to the Bankruptcy Court (as defined below) seeking its approval of this engagement must be satisfactory to Advisor in all respects.

---

[1] For purposes of this engagement agreement, Deloitte Risk and Financial Advisory shall mean Deloitte Transactions and Business Analytics LLP.

Mr. Riecker
Sears Holding Corporation
Page 2

In addition to Advisor's other rights or remedies, Advisor may, in its sole discretion and
without any liability arising therefrom, terminate this engagement in the event that (a) a
third party objects or threatens to object, or Advisor believes that a third party may object,
in the form of an objection or otherwise, to Advisor's retention by Client in the Case on the
terms and conditions set forth in this engagement letter, (b) a final order authorizing the
employment of Advisor as financial advisors for Client is not issued by the Bankruptcy Court
in the Case on or before sixty (60) days from the date hereof on the terms and conditions
set forth herein or on such other terms and conditions as are satisfactory to Advisor in its
sole discretion, or (c) the application of Client seeking such order is denied by the
Bankruptcy Court in the Case. In any such event, Client hereby agrees to withdraw or
amend, promptly upon Advisor's request, any application filed or to be filed with the
Bankruptcy Court to retain Advisor to provide the Services in the Case.

For purposes of this letter, "Bankruptcy Court" shall mean the United States Bankruptcy
Court for the Southern District of New York.

*ENGAGEMENT STAFFING AND FEES*

I will serve as engagement principal, and maintain overall responsibility for the engagement
on behalf of Advisor. Matt Lew, Senior Vice President from the Dallas office, will serve as
the engagement manager, coordinating daily management of the engagement assisted, as
appropriate, by staff. However, circumstances may occur that could result in changes to
our anticipated staffing for this engagement. Technical support may also be provided by
other professionals who will be identified during the course of this engagement.

You agree that Advisor will be compensated at the applicable hourly rates for professional
time set forth below plus reasonable expenses incurred during this engagement. Our fees
are based on the hours actually expended by Advisor personnel, multiplied by their
applicable hourly billing rate for this engagement. The applicable hourly billing rates by
personnel classification for this engagement are as follows:

| | |
|---|---|
| Partner/Principal | $775 - $925 |
| Managing Director | $700 - $925 |
| Senior Manager/Senior Vice President | $600 - $650 |
| Manager/Vice President | $500 - $600 |
| Associate/Senior Associate | $395 - $475 |

In the normal course of business, Advisor revises its hourly rates to reflect changes in
responsibilities, increased experience, geographical differentials and increased costs of
doing business. Changes in applicable hourly rates for this engagement will be noted on the
statements or invoices, as the case may be, for the first time period in which the revised
rates became effective.

Advisor intends to apply for compensation for professional services rendered and for
reimbursement of expenses incurred, in accordance with applicable provisions of title 11 of
the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy
Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the
United States Trustee Guidelines for Reviewing Applications for Compensation and
Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code. In such event,
payment of fees and reimbursement of expenses will be subject to ultimate allowance and
approval by the Bankruptcy Court. However, in the interim, Client will ask the Bankruptcy
Court for approval to allow Advisor to submit invoices in accordance with the Local Rules.

Mr. Riecker
Sears Holding Corporation
Page 3

Payment of these invoices will be made by Client on an interim basis subject to approval
and allowance upon application to and order by the Bankruptcy Court.  Advisor intends to
submit fee applications seeking approval of its fees and expenses on a quarterly basis.  We
will provide you with an invoice on a regular basis, with the invoice due and payable
pursuant to the appropriate payment mechanism provided by the Bankruptcy Court.

As to expenses, we will be entitled to reimbursement of reasonable expenses incurred in
connection with this engagement, including but not limited to travel, report preparation,
delivery services, photocopying and other costs included in providing the Services.

## DISCLOSURE OF RELATIONSHIPS

As you know, Advisor is a large firm and we, as well as our affiliates, are engaged by new
clients every day.  Therefore, we cannot assure that, following the completion of our
internal conflict search, an engagement for or involving your creditors or other parties-in-
interest or their respective attorneys and accountants will not be accepted by Advisor or its
affiliates.  Should any potential conflict come to the attention of Advisor, we will endeavor to
resolve such potential conflict and will determine what action needs to be taken.  You agree
that you will inform us of the parties-in-interest to this matter or of additions to, or name
changes for, those parties-in-interest whose names you provided.

Further, Advisor and its affiliates may have provided professional services to, may currently
provide professional services to, or may in the future provide such services to, Client's
creditors, other parties-in-interest, and their respective attorneys and accountants who are
known to us to be assisting the parties-in-interest in the Case in matters unrelated to the
Case.  You agree that Advisor and its personnel will have no responsibility to you relating to
such professional services, nor any responsibility to use or disclose information Advisor
possesses by reason of such services, whether or not such information might be considered
material to you.

## LIMITATIONS OF THE SERVICES

The Services will not result in the issuance of any written or oral communications by Advisor
to Client or any third parties expressing any opinion, conclusion, or any other form of
assurance with respect to, among other things, accounting policies, financial data, financial
statements and related footnotes, appropriate application of generally accepted accounting
principles, disclosure, operating or internal controls, compliance with the rules and
regulations of the Securities and Exchange Commission ("SEC") or the Public Company
Accounting Oversight Board ("PCAOB"), compliance with the Sarbanes-Oxley Act of 2002
(the "Act") and related rules and regulations, or any other matters.

You understand that the Services may include access to the work of Client's other
professional advisors, including Advisor's affiliate, Deloitte & Touche LLP, or to financial
statements or financial information or data reported on by such other professional advisors.
Client agrees that such access is not for the purpose of affirming or evaluating the
procedures or professional standards used by such other professional advisors.  In this
regard, we call your attention to the possibility that other professional advisors may perform
procedures concerning the same information or data, and perhaps the same accounts and
records, and reach different observations than Advisor for a variety of reasons, including the
possibilities that additional or different information or data might be provided to them that
was not provided to Advisor, that they might perform different procedures from Advisor, or

Mr. Riecker
Sears Holding Corporation
Page 4

that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

The Services to be provided by Advisor will <u>not</u> include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt.  By signing this letter, Client expressly acknowledges that Advisor does not guarantee, warrant, or otherwise provide any assurances that Client will restructure successfully.

Client recognizes and acknowledges that by performing the Services, Advisor is not acting in any Client management capacity and that Client has not asked Advisor to make, nor has Advisor agreed to make, any business decisions on behalf of Client.  All decisions about Client's business or operations, including, but not limited to, decisions concerning the execution of transactions with other entities and the establishment of terms for such transactions, remain the sole responsibility of Client's management and its Board of Directors.

*OTHER MATTERS*

Client agrees that, without Advisor's prior written permission, any reports, schedules, documents, or other materials provided by Advisor are not to be used, in whole or in part, by Client for any purpose other than in connection with this matter.

This engagement letter, incorporating by reference the attached General Business Terms & Conditions, constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings among the parties, whether written or oral, with respect to the subject matter hereof.

Mr. Riecker
Sears Holding Corporation
Page 5

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it to me; or if you have any questions, please call me at 214-840-7383.  By signing this letter, you represent and warrant that Client has the authority to enter into this engagement letter on behalf of itself and its subsidiaries. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

Deloitte Transactions and Business Analytics LLP

By: _____
     John W. Little

Agreed and Accepted by:
Sears Holdings Corporation on behalf of itself and its subsidiaries

By: _____

Name: _Robert A. Riecker_____

Title: _CFO_____

Date: _11·8·2018_____

Mr. Riecker
Sears Holding Corporation
Page 6

## *Appendix A*

## GENERAL BUSINESS TERMS & CONDITIONS

1. **Services**.

    a) The services (the "Services") provided by Deloitte Risk and Financial Advisory ("Advisor") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but Advisor will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. For purposes of these terms and the Engagement Letter, "Client" shall mean Sears Holdings Corporation and its subsidiaries. Sears Holdings Corporation represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries.

    b) The Deliverables (as defined below) are complete only when presented in their entirety and only for the purpose stated therein. Furthermore, (1) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (2) Advisor will not provide any legal advice or address any questions of law; and (3) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB"), or other regulatory body.

2. **Payment**. Client will compensate Advisor under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of termination of this engagement. Subject to any administrative rules or guidelines established in the Case and/or by the Bankruptcy Court, Advisor's invoices are due upon receipt. If payment is not received within thirty (30) days of the invoice or such other period of time set by the Bankruptcy Court (i) such invoice shall accrue a late charge of the lesser of (a) 1½% per month or (b) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law, and (ii) Advisor may also suspend or terminate the Services. Client shall be responsible for all taxes imposed on the Services or on this engagement, other than income taxes imposed by employment withholding for Advisor's personnel or on Advisor's income or property. In addition, Advisor will be compensated for any time and expenses (including, without limitation, reasonable legal fees and expenses) that Advisor may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this engagement) as a result of or in connection with the Services or the Engagement Letter.

3. **Term**. Unless terminated sooner as set forth below, this engagement shall terminate on the completion of the Services. Either party may terminate this engagement, with or without cause, by giving thirty (30) days prior written notice to the other party. In the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Advisor may terminate this engagement upon written notice to Client if Advisor determines that the performance of any part of the Services would be in conflict with law or independence or professional rules.

4. **Advisor Technology, Property and Deliverables**.

    a) Advisor has rights in, and may, in connection with the performance of the Services, use, create, modify, or acquire rights in, works of authorship, materials, information, and other intellectual property (collectively, the "Advisor Technology").

    b) Upon full payment to Advisor hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of Client and (ii) Advisor hereby grants Client a royalty-free, fully paid-up, worldwide, nonexclusive license to use the Advisor Technology contained in the Deliverables in connection with the use of such Deliverables. Except for the foregoing license grant, Advisor or its licensors retain all rights in and to all Advisor Technology.

    c) To the extent Advisor Technology provided to Client hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such Advisor Technology is licensed to Client by Advisor as agent for Deloitte Transactions and Business Analytics Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any Advisor Technology that is subject to a separate license agreement between Client and any third party (including Advisor's affiliates).

Mr. Riecker
Sears Holding Corporation
Page 7

5. **Limitation on Warranties**. This is a services engagement.  Advisor warranties that it shall perform the Services in good faith and with due professional care. **Advisor DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6. **Limitation on Damages and Indemnification**.

   a)  Advisor, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Client for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Client to Advisor pursuant to this engagement, except to the extent resulting from the bad faith or intentional misconduct of Advisor or its subcontractors.  In no event shall Advisor, its subsidiaries or subcontractors, or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

   b)  Client shall indemnify and hold harmless Advisor, its subsidiaries and subcontractors, and their respective personnel from all Claims, except to the extent resulting from the recklessness, bad faith or intentional misconduct of Advisor or its subcontractors.

   c)  In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, the aggregate liability of Advisor, its subsidiaries and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that the conduct of Advisor and its subcontractors bears to all other conduct giving rise to such Claim.

7. **Client Responsibilities, Third Party Information, and Assumptions**.

   a)  Client shall cooperate with Advisor in the performance of the Services, including providing Advisor with reasonable facilities and timely access to data, information, and personnel of Client.  With respect to the data and information provided by Client to Consultant or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.  If Advisor is provided with access to or use of Client's facilities outside of the United States for the purpose of performing the Services, such facilities may not be dedicated solely for Advisor's use and Advisor will not be deemed a tenant of Client with respect to such facilities.  Client shall be solely responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to Advisor for purposes of the performance of the Services, (c) making all management decisions, performing all management functions, and assuming all management responsibilities, (d) designating a competent management member to oversee the Services, (e) evaluating the adequacy and results of the Services, (f) accepting responsibility for the results of the Services, and (g) establishing and maintaining internal controls, including monitoring ongoing activities.  Advisor's performance is dependent upon the timely and effective satisfaction of Client's responsibilities hereunder and timely decisions and approvals of Client in connection with the Services.  Advisor shall be entitled to rely on all decisions and approvals of Client.

   b)  If Advisor is provided with access to or use of Client's facilities outside of the United States for the purpose of performing the Services such facilities may not be dedicated solely for Advisor's use and Advisor will not be deemed a tenant of Client with respect to such facilities.

   c)  Advisor may use information and data furnished by parties other than Client and its agents if Advisor in good faith believes that such information and data is reliable.  Advisor, however, shall neither be responsible for, nor provide any assurance regarding, the accuracy or completeness of any such information or data.

   d)  Advisor shall be entitled to assume, without independent verification, the accuracy and completeness of any and all assumptions provided to Advisor by or on behalf of Client for purposes of the performance of the Services.

8. **Force Majeure**.  Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9. **Limitation on Actions**.  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing

Mr. Riecker
Sears Holding Corporation
Page 8

such action.

10. **Independent Contractor**. Nothing contained in these terms shall alter in any way the duties imposed by law on Advisor in respect of the Services. It is understood and agreed that Advisor is an independent contractor and that Advisor is not, and will not be considered to be, an agent, partner, or representative of Client.

11. **Confidentiality and Internal Use.**

   a) All Services and Deliverables shall be solely for Client's benefit and are not intended to be relied upon by any person or entity other than Client. Client shall not disclose the Services or the Deliverables or refer to the Services or Deliverables in any communication, to any person or entity. Client understands and agrees that Advisor is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Client filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

   b) To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The disclosing party hereby consents to the receiving party disclosing such information (1) to contractors providing administrative, infrastructure and other support services to the receiving party and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this Section 11(b); (2) as may be required by law, regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (3) to the extent such information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (iii) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (iv) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.   Nothing in this Section 11(b) shall alter Client's obligations under Section 11(a). Advisor, however, may use and disclose any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel. Further, Advisor and its affiliates and related entities shall have the right to use Client's name and logo as part of a general client listing and as a specific citation in proposals or similar directed marketing efforts.

12. **Survival and Interpretation**.   All provisions which are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement. No affiliated or related entity of Advisor, or such entity's personnel, shall have any liability hereunder to Client and Client will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement. Without limiting the foregoing, such affiliated and related entities are intended third-party beneficiaries of these terms, and may in their own right enforce such terms. **Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

13. **Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer, or delegate any of its rights or obligations (including, without limitation, interests or Claims) related to this Agreement or the Services without the prior written consent of the other party. Client hereby consents to Advisor subcontracting or assigning any portion of the Services to any affiliate or related entity, whether located within or outside of the United States. Services performed hereunder by Advisor's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Advisor's personnel, unless otherwise agreed.

14. **Waiver of Jury Trial. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15. **Non-exclusivity.** Advisor may (1) provide any services to any person or entity, and (2) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, Advisor complies with its obligations of confidentiality set forth hereunder.

Mr. Riecker
Sears Holding Corporation
Page 9

16. **Entire Agreement, Amendment, and Notices.**  These terms, and the Engagement Letter, including attachments, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by written agreement signed by the parties.  In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control.  All notices hereunder shall be (a) in writing, (b) delivered to the representatives of the parties at the addresses first set forth in the Engagement Letter, unless changed by either party by notice to the other party, and (c) effective upon receipt.

17. **Governing Law, Jurisdiction, Venue and Severability**.  These terms, the Engagement Letter, including attachment, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof).  Any action or proceeding arising out of or relating to this engagement or the Services shall be brought and maintained exclusively in New York County, the State of New York.  The parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive any defense of inconvenient forum to the venue and maintenance of such action in any such courts.   If any provision of such terms or the Engagement Letter is unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

Mr. Riecker
Sears Holding Corporation
Page 10

## *Appendix B*

## Bankruptcy Advisory Services

### Creditor Matrix Development

- Provide you a list of possible sources for information and a sample electronic data collection form which is mapped to the forms prescribed by the bankruptcy code, rules, or particular court.

- Since Advisor does not access your systems directly, you will submit completed electronic data collection forms to us.

- Read the information and advise you as to completeness and the prescribed informational requirements of the bankruptcy code, rules, or particular court. To the extent necessary, we will recommend updating information to address information completeness or formatting issues.

- Assist you to merge your electronic data collection forms into a draft form prescribed by the bankruptcy code, rules, or particular court (the "Creditor Matrix") for review by your management team and your attorneys.

- Assist you, as needed, regarding potential modifications to the draft Creditor Matrix in connection with the production of a revised draft copy of the Creditor Matrix for review and certification by your management and attorneys.

- Once you have completed your review and approval of the revisions, and certification by management and your attorneys are complete, we will transmit a pdf and electronic copies of the Creditor Matrix to you for certification and transmission by you to the court-appointed noticing agent in support of the appropriate filing with the bankruptcy court.

### Ledger and Accounts Payable System Cutoffs

- Discuss with you and provide advice with regard to your current system for the necessary bankruptcy reporting.

### Statement of Financial Affairs Development

- Provide advice and recommendations as to the nature of typical information submissions and provide you with sample electronic data collection forms which are mapped to the forms prescribed by the bankruptcy code, rules, or particular court as part of the Statement of Financial Affairs (as defined below) standard questionnaire and exhibits.

- Since Advisor does not access your systems directly, you will return completed electronic data collection forms to us.

- You may request, and Advisor will provide, advice and recommendations to management as you undertake to map and format electronically disbursements identified by you in the 90 days prior to commencement of the bankruptcy case.

- You may request, and Advisor will provide, advice and recommendations as you undertake to transfer case styling information (parties, case number, court location, judge, case description, and status) that is currently included in manual files to electronic file format for inclusion in the electronic data collection forms which are mapped to the forms prescribed by the bankruptcy code, rules, or particular court as part of the Statement of Financial Affairs standard questionnaire and exhibits.

- Read all information submitted by you and provide observations with respect to informational completeness and the prescribed informational requirements of the bankruptcy code, rules, or particular court. To the extent necessary, we will provide advice and recommendations to your management team on updating your information to address informational completeness or formatting issues.

- Provide advice and technical assistance to you in relation to merging and mapping your electronic data collection forms into a draft form prescribed by the bankruptcy code, rules, or particular court (the "Statement of Financial Affairs") for review by your management team and attorneys.

- To the extent necessary, provide advice and recommendations to you regarding potential modifications to your draft Statement of Financial Affairs in connection with your production of a revised draft copy of the Statement of Financial Affairs for review and certification by your management and attorneys.

- Once you have completed your review and approval of the revisions, and certification by management and your attorneys are complete, we will transmit pdf copies of the Statement of Financial Affairs to you for certification and transmission by you to your attorneys for filing with the court.

Mr. Riecker
Sears Holding Corporation
Page 11

**Schedules of Assets and Liabilities Development**

- Advise you as to the nature of typical information submissions and provide you with sample electronic data collection forms which are mapped to the forms prescribed by the bankruptcy code, rules, or particular court as part of the Schedules of Assets and Liabilities (as defined below) standard questionnaire and supporting exhibits.

- Since Advisor does not access your systems directly, you will return completed electronic data forms to us.

- You may request, and Advisor will provide, advice and recommendations and suggested data collection templates to management as you undertake to format electronically and map liabilities identified by you as of the commencement date of the bankruptcy case, by vendor code. Your attorneys may choose to use this information or obtain different or modified information through their own processes.

- You may request, and Advisor will provide, advice and recommendations to you as you undertake to transfer executory contract information that you have identified (parties, contract number, terms, etc.) from manual files to electronic file format for inclusion in the electronic data collection forms which are mapped to the forms prescribed by the bankruptcy code, rules, or particular court as part of the Schedules of Assets and Liabilities standard questionnaire and exhibits.

- Read all information submitted by you to us for issues with respect to informational completeness and the prescribed informational requirements of the bankruptcy code, rules, or particular court. To the extent necessary, we will provide advice and recommendations to your management team on updating your information to address informational completeness or formatting issues.

- Provide advice and technical assistance to you in relation to merging and mapping your electronic data collection forms into a draft form prescribed by the bankruptcy code, rules, or particular court (the "Schedules of Assets and Liabilities") for review by your management and attorneys.

- To the extent necessary, advise you regarding potential modifications to the draft Schedules of Assets and Liabilities as a basis for production of a revised draft copy of the Schedules of Assets and Liabilities for review and certification by your management and attorneys.

- When you have represented to us that the revisions by management and your attorneys are complete, we will transmit pdf copies of the Schedules of Assets and Liabilities to you for certification and transmission by you to your attorneys for filing with the court.

**Monthly Operating Report Development**

- Advise you on the nature of typical information submissions and example reports from other cases with respect to the monthly operating reports as required by the bankruptcy code, rules, or particular court.

**Claims Listing**

- You may request, and Advisor will provide advice and recommendations as you undertake to populate, a claims database populated with scheduled liabilities (from the Schedules of Liability discussed above). This database will help you as you undertake your claim reconciliation process. This is not the "official" database, which will be maintained by the clerk of the court or the court-appointed claims agent.

- Assist you as you undertake to perform data integrity procedures such as de-duplication of claims data prior to performing your claims reconciliation process.

- Assist you as you undertake to merge the official claims agent's "filed claim" information into your management claims database.

- You may request, and Advisor will provide, advice and recommendations as you undertake to format the scheduled and the official filed claim information in a format that is aimed at easing your comparison and evaluation of the two sets of claim values.

- You may request, and Advisor will provide, advice and recommendations as you undertake to compare your scheduled claim information to the official filed claim information. We will prepare preliminary notes of observations and recommendations on the comparison for further review and completion by your management (by claim, packet includes information about scheduled claim, proof of claim and supporting information for filed claim, and summary comments from initial clerical review). Our notes are preliminary only, as we cannot be responsible for the development of final claim values.

- Your management will review the information in conjunction with other client records (AP, correspondence, etc.) and be ultimately responsible for preparing and calculating a final claim value.

Mr. Riecker
Sears Holding Corporation
Page 12

- Your management will complete the individual claim packets, including initialing and dating, with instructions regarding claim status (accept claim, object to claim with reason, allow claim with different amount, etc.).

- When your claim packet review and documentation is complete, you may request, and Advisor will provide, advice and recommendations for your consideration as you update the management claims database to incorporate management's evaluations of individual claim values.

- Provide observations and recommendations as you undertake to update claims information from the management claims database to formats prescribed by the bankruptcy code, rules, or particular court as a basis for the preparation of draft amendments to the Schedules of Assets and Liabilities and draft claim objection exhibits for review by your management team and their attorneys. Your attorneys may choose to use this information or obtain different or modified information through their own processes.

- Once you have completed your review and approval of the revisions, and certification by management and your attorneys are complete, we will forward copies of the amended Schedules of Assets and Liability and claim objection exhibits to you for certification and transmission by you to your attorneys in connection with their bankruptcy court filings on your behalf.

- You may request, and Advisor will provide, advice and recommendations to you as you periodically prepare and provide copies of "status reports" produced from management's claims database that summarize management's evaluations of the claim liabilities, by type and by class.

- Provide advice and recommendations on your processes and efforts with respect to your: 1) contract identification; 2) contract disposition through the claims process; 3) assessment of administrative claims (such as 503(b)9 and reclamation); and 4) management of vendor negotiations through the bankruptcy process. We can provide advice and recommendations; however, we will not participate in negotiations, or communicate on your behalf, with third parties.

- Provide observations and recommendations on your processes and efforts to separate creditors into classes of claims.

**General Corporate Restructuring Services**

- You may request, and Advisor will provide, advice and observations as you prepare and provide vendor information identified by you for use in preparation and filing of your disclosure statement and plan of reorganization during the bankruptcy case.

**<u>Exhibit B</u>**

**Proposed Order**

WEIL:\96813527\7\73217.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                        :
In re                                                   :          **Chapter 11**
                                                        :
**SEARS HOLDINGS CORPORATION,** *et al.*,               :          **Case No. 18-23538 (RDD)**
                                                        :
            **Debtors.**[1]                             :          **(Jointly Administered)**
                                                        :
-----------------------------------------------------------------x

## ORDER AUTHORIZING DEBTORS TO RETAIN DELOITTE TRANSACTIONS AND BUSINESS ANALYTICS LLP FOR BANKRUPTCY ADVISORY SERVICES *NUNC PRO TUNC* TO OCTOBER 29, 2018

Upon the application, dated [__] (ECF No. [__]) (the "**Application**")[2] of Sears

Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of

the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i) authorizing the Debtors to retain and employ Deloitte Transactions and Business Analytics LLP ("**DTBA**") as bankruptcy advisor for the Debtors, effective as of October 29, 2018, and upon the declaration of John W. Little, a principal at DTBA, annexed to the Application as **Exhibit A** (the "**Little Declaration**"); and (ii) granting related relief, all as more fully set forth in the Application; and the Court being satisfied, based on the representations made in the Application and the Little Declaration, that DTBA is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that DTBA neither represents nor holds an interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Application having been provided in accordance with the Amended Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Application on January 18, 2019 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and is in the best interests of the

2

Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Application is granted as provided herein.

2.    In accordance with section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Bankruptcy Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain DTBA as the Debtors' bankruptcy advisor in accordance with the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to October 29, and to pay fees and reimburse expenses to DTBA on the terms set forth in the Engagement Letter as modified by this Order.

3.    The terms and conditions of the Engagement Letter are reasonable and, as modified by this Order, are approved.

4.    DTBA shall use reasonable efforts to cooperate with the Debtors to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

5.    DTBA shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, and any applicable orders of this Court (including the Interim Compensation Order).

6.    DTBA shall include in its fee applications, among other things, time records setting forth a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

3

7.      DTBA shall provide reasonable notice to the Debtors, the Office of the United States Trustee, and any statutory committee appointed in these chapter 11 cases of any increase of DTBA's hourly rates from those set forth in the Little Declaration, and such notice will be filed on the docket of these cases.

8.      The Indemnification Provisions set forth in the general business terms attached to the Engagement Letter (the "**General Business Terms**") are approved subject to the following modifications with respect to the Bankruptcy Advisory Services performed thereunder after October 29, 2018 and prior to the effective date of any chapter 11 plan of the Debtors:

a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the Indemnification Provisions shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Provisions, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and other orders of this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the breach of contract, gross negligence, willful misconduct, or fraud of any indemnified parties;

b.      In no event shall any indemnified parties be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's breach of contract, gross negligence, willful misconduct, or fraud of any Indemnified Parties;

c.      In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to DTBA's own interim and final fee applications, and such invoices and time records shall be subject to the applicable United States Trustee guidelines and the approval of the Bankruptcy Court under the standards of section 330 of the

4

WEIL:\96813527\7\73217.0004

Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

d.  Any provision of the Engagement Letter relating to expense policies and reimbursements shall be subject to the applicable guidelines set forth in the Local Rules and general orders of this Court.

9.  The Engagement Letter is further modified with respect to the Bankruptcy Advisory Services provided thereunder from October 29, 2018 through the effective date of any chapter 11 plan of the Debtors, as follows:

a.  The last sentence in subsection a) in the "Limitation on Damages and Indemnification" provision of the General Business Terms of the Engagement Letter shall be deemed deleted.

b.  The last sentence of "Independent Contractor" provision of the General Business Terms of the Engagement Letter shall be deleted and replaced with the following:

It is understood and agreed that each of Advisor and Client is an independent contractor and that neither of them is, nor shall be considered to be, the other's agent, distributor, partner, joint venture, co-owner or representative.

10.  To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, the Little Declaration, and the express terms of this Order, the terms of this Order shall govern.

11.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

5

12.     Notwithstanding anything to the contrary in the Engagement Letter, during the pendency of these chapter 11 cases, the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
            White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

6