WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                           :        **Chapter 11**
:
**SEARS HOLDINGS CORPORATION,** *et al.*,       :        **Case No. 18-23538 (RDD)**
:
Debtors.[1]                                     :        **(Jointly Administered)**
:
---------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## NOTICE OF HEARING ON APPLICATION
## OF DEBTORS FOR AUTHORITY TO RETAIN
## DELOITTE TAX LLP AS TAX SERVICES PROVIDER FOR
## THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

**PLEASE TAKE NOTICE** that a hearing on the annexed application (the "**Application**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), to retain and employ Deloitte Tax LLP ("**Deloitte Tax**") as tax services provider for the Debtors *nunc pro tunc* to the Commencement Date, all as more fully set forth in the Application, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York 10601-4140 (the "**Bankruptcy Court**") on **January 18, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with

2

the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on

November 1, 2018 (ECF No. 405), so as to be filed and received no later than **January 11, 2019**

**at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

    **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and

served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Application, which order may be entered without further notice or opportunity to be heard.

    **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: January 4, 2019
  New York, New York

       /s/ Garrett A. Fail
       WEIL, GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York  10153
       Telephone:  (212) 310-8000
       Facsimile:  (212) 310-8007
       Ray C. Schrock, P.C.
       Jacqueline Marcus
       Garrett A. Fail
       Sunny Singh
       Jessica Liou

       *Attorneys for Debtors*
       *and Debtors in Possession*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                      :
In re                                 :      Chapter 11
                                      :
SEARS HOLDINGS CORPORATION, et al.,   :      Case No. 18-23538 (RDD)
                                      :
         Debtors.¹                    :      (Jointly Administered)
                                      :
-------------------------------------------------------------x
```

### APPLICATION OF DEBTORS FOR AUTHORITY TO
### RETAIN DELOITTE TAX LLP AS TAX SERVICES PROVIDER
### FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (the "**Application**"):

## Background

1.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

## Jurisdiction

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated

2

January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue

is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.     By this Application, the Debtors request authority, pursuant to section

327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Bankruptcy

Rules for the Southern District of New York (the "**Local Rules**") 2014-1 and 2016-1, to retain and

employ Deloitte Tax LLP ("**Deloitte Tax**") as the Debtors' tax services provider in accordance

with the terms and conditions set forth in (i) that certain work order, dated February 1, 2018, to

provide certain tax advisory services related to the Debtors' debt exchange transaction (the

"**Transaction Work Order**"); and (ii) that certain work order, dated October 15, 2018, to provide

certain tax advisory services relating to the Debtors' restructuring (the "**Restructuring Work**

**Order**" and, together with the Transaction Work Order, the "**Work Orders**").  The Work Orders

were issued under and pursuant to the terms of that certain master services agreement between

Debtor Sears Holdings Management Corporation, on behalf of itself and its Affiliates (as defined

in such agreement), and Deloitte Tax, dated January 29, 2010, as amended, for the provision of

tax and tax-related professional services (the "**MSA**").  In support of this Application, the Debtors

submit the Declaration of Thomas C. Hermanson, a managing director at Deloitte Tax (the

"**Hermanson Declaration**").  The Hermanson Declaration is annexed hereto as **Exhibit A**.  Copies

of the Work Orders and the MSA are annexed to the Hermanson Declaration as **Exhibits 1-3**.  A

proposed form of order granting the relief requested in this Application is annexed hereto as

**Exhibit B** (the "**Proposed Order**").

3

### Deloitte Tax's Qualifications

7.      The Debtors seek to employ and retain Deloitte Tax as their tax services provider because of its recognized experience and knowledge in providing tax services. Deloitte Tax is a tax services firm with offices across the United States. Deloitte Tax has significant experience performing tax services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States, including in the following chapter 11 cases: *In re Tops II Holding Corp.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (approving the retention of Deloitte Tax as tax services provider); *In re Magnum Hunter Res. Corp.,* Case No. 15-12533 (KG) (Bankr. D. Del. Mar. 10, 2016) (same); *In re Samson Res. Corp.,* Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) (same); and *In re Rotech Healthcare,* Case No. 13-10741 (PJW) (Bankr. D. Del. June 13, 2013) (same). Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases in a cost-effective, efficient, and timely manner. Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.

8.      In addition, since approximately March 2005, Deloitte Tax has provided various tax-related professional services to the Debtors. In providing such prepetition professional services to the Debtors, Deloitte Tax has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these chapter 11 cases.

4

## **Scope of Services**

9.      Subject to this Court's approval, the Debtors propose to retain and employ Deloitte Tax to perform certain tax advisory services, all as set forth more fully in the Work Orders, including the following:

a)      Performing services pursuant to the Transaction Work Order, expected to consist of:

    i.   Advising the Debtors with respect to the review of the Debtors' debt exchange transaction with respect to the tax effects thereof;

    ii.  Advising the Debtors regarding the preparation of original issue discount calculations, as requested;

    iii. Advising the Debtors with respect to the review of the offering memorandum related to the exchange of certain notes held by certain of the Debtors' creditors to determine tax reporting requirements from a tax perspective; and

    iv.  Advising the Debtors regarding the determination of the federal income tax filing requirements with respect to the aforementioned debt exchange transaction.

b)      Performing services pursuant to the Restructuring Work Order, expected to consist of:

    i.   Advising the Debtors as they consult with their counsel and financial advisors on the cash tax effects of restructuring and bankruptcy transactions and the post-restructuring tax profile tax costs. This will include gaining an understanding of the Debtors' financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

    ii.  Advising the Debtors regarding the restructuring and bankruptcy emergence process from a tax perspective, including the tax work plan;

    iii. Advising the Debtors with respect to any cancellation of debt income for tax purposes under IRC section 108;

    iv.  Advising the Debtors on post-restructuring or post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock, and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors' operating projections, including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

    v.   Advising the Debtors on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers

5

and limitations on their utilization, and the Debtors' ability to qualify for IRC section 382(l)(5);

vi.   Advising the Debtors on net built-in gain or net built-in loss position at the time of "ownership change" (as defined under IRC section 382), including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

vii.   Advising the Debtors as to the treatment of post-petition interest for state and federal income tax purposes;

viii.   Advising the Debtors as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs, including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

ix.   Advising the Debtors with their evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

x.   Advising the Debtors on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions including cancellation of indebtedness calculation, adjustments to tax attributes and limitations on tax attribute utilization;

xi.   Advising the Debtors on responding to tax notices and audits from various taxing authorities;

xii.   Assisting the Debtors with identifying potential tax refunds and advising the Debtors on procedures for tax refunds from tax authorities;

xiii.   Advising the Debtors on income tax return reporting of bankruptcy issues and related matters;

xiv.   Advising the Debtors with their review and analysis of the tax treatment of items adjusted for financial reporting purposes as a result of "fresh start" accounting as required for the emergence date of the U.S. financial statements in an effort to identify the appropriate tax treatment of adjustments to equity (including issuance of new equity, options, and/or warrants), and other tax basis adjustments to assets and liabilities recorded;

xv.   Assisting the Debtors with documenting, as appropriate, the tax analysis, development of the Debtors' opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above;

6

xvi.    Advising the Debtors regarding other state or federal income tax questions that may arise in the course of this engagement, as requested by the Debtors, and as may be agreed to by Deloitte Tax; and

xvii.    Advising the Debtors with their efforts to calculate tax basis of their assets and liabilities in each of the Debtors' subsidiaries or other entity interests.

### Efforts to Avoid Duplication of Services

10.    The services performed by Deloitte Tax will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained professionals. The Debtors are advised that Deloitte Tax understands that the Debtors have retained and may retain additional professionals during the terms of the MSA and Work Orders and has agreed to work cooperatively with the Debtors to avoid unnecessary duplication of services.

### Professional Compensation

11.    Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements set forth in the Work Orders.

12.    Pursuant to the terms of the Transaction Work Order, Deloitte Tax will bill the Debtors fees that are based on the amount of professional time required and the experience level of the professionals involved. Deloitte Tax will charge the Debtors the following hourly rates for services rendered pursuant to the Transaction Work Order:

| Professional Level | Hourly Rates |
| --- | --- |
| National Tax Specialist Partner / Principal /Managing Director | $625 |
| Partner / Principal /Managing Director | $525 |
| Senior Manager | $400 |
| Manager | $320 |
| Senior Associate | $210 |
| Staff | $185 |

WEIL:\96792961\4\73217.0004

13.    Pursuant to the terms of the Restructuring Work Order, Deloitte Tax will bill the Debtors fees that are based on the amount of professional time required and the experience level of the professionals involved.  Deloitte Tax will charge the Debtors the following hourly rates for services rendered pursuant to the Restructuring Work Order:

| Professional Level | Hourly Rates |
|---|---|
| National Tax Specialist Partner / Principal /Managing Director | $975 |
| Partner / Principal /Managing Director | $850 |
| Senior Manager | $725 |
| Manager | $595 |
| Senior Associate | $450 |
| Staff | $325 |

14.    Hourly rates are revised periodically in the ordinary course of Deloitte Tax's business.  Deloitte Tax shall advise the Debtors of any new rates should it institute a rate-change during the chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

15.    In addition to the fees set forth above, actual, reasonable and necessary expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte Tax's services, will be included in the total amount billed.

16.    As set forth in the Hermanson Declaration, and subject to Court approval, the Debtors are advised that Deloitte Tax intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement of expenses incurred pursuant to the Work Orders in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, including the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of*

8

*Professionals* (ECF No. 796) and the order granting this Application, and any applicable guidelines issued by the Office of the United States Trustee.

17.    The Debtors are advised that Deloitte Tax will maintain records in support of any fees incurred in connection with the services it performs in these chapter 11 cases by category and nature of the services rendered, and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in providing those services, and the individuals who provided such services on behalf of the Debtors.

18.    Deloitte Tax has received no promises regarding compensation in the chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Hermanson Declaration.  Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the chapter 11 cases in accordance with section 504 of the Bankruptcy Code.

## **Indemnification Provisions**

19.    As part of the overall compensation payable to Deloitte Tax under the terms of the Work Orders, the Debtors have agreed to certain indemnification and contribution provisions set forth in the MSA under which the Work Orders are issued (the "**Indemnification Provisions**"), to the extent permitted by applicable law and as modified by the Proposed Order.

20.    The terms of the Work Orders and the Indemnification Provisions were fully negotiated at arm's length.  The Debtors respectfully submit that the Indemnification Provisions are reasonable and appropriate under the circumstances.

21.    Moreover, consistent with the practice in this jurisdiction, the Debtors request that the Court approve the Indemnification Provisions subject to the modifications reflected in the Proposed Order.  The Debtors believe that the proposed modifications to the

9

Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

### Deloitte Tax's Disinterestedness

22.    To the best of the Debtors' knowledge, Deloitte Tax and the partners, principals, and managing directors who are anticipated to provide services to the Debtors pursuant to the Work Orders do not have any connection with, or any interest adverse to, the Debtors, its significant creditors, or any other significant party in interest, except as may be set forth in the Hermanson Declaration.

23.    Based upon the Hermanson Declaration, the Debtors submit that Deloitte Tax is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  If Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

24.    Prior to the Commencement Date, Deloitte Tax provided professional services to the Debtors.  In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte Tax $21,200 for services performed.  As of the Commencement Date, approximately $131,000 was outstanding with respect to the invoices issued by Deloitte Tax.  The Debtors have been advised that Deloitte Tax will not seek a recovery on any amounts related to such invoices.

25.    Moreover, prior to the Commencement Date, Deloitte & Touche LLP ("**Deloitte & Touche**"), an affiliate of Deloitte Tax, provided professional services to the Debtors. In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte & Touche approximately $9,000,000 for services performed and/or to be performed.   As of the Commencement Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche.

10

26.     Some services incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP ("**DTBA**"), Deloitte & Touche, and Deloitte Consulting LLP, or their respective subsidiaries, including subsidiaries located outside of the United States.

27.     Contemporaneously herewith, the Debtors are also seeking authority to employ and retain Deloitte & Touche to act as the Debtors' independent auditor and accounting advisor and DTBA to act as the Debtors' advisor with respect to certain bankruptcy matters. *See Application of Debtors for Authority to Retain Deloitte & Touche LLP for Independent Audit and Advisory Services* Nunc Pro Tunc *to the Commencement Date* and *Application of Debtors for Authority to Retain Deloitte Transactions and Business Analytics LLP for Bankruptcy Advisory Services* Nunc Pro Tunc *to October 29, 2018*, respectively.

### Relief Requested Should Be Granted

28.     Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out the [debtors'] duties under this title."  11 U.S.C. § 327(a).  As discussed above and as further detailed in the Hermanson Declaration, to the best of the Debtors' knowledge, Deloitte Tax is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates.

11

29.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, [and] any proposed arrangement for compensation . . . .

Fed. R. Bankr. P. 2014.

30.     Deloitte Tax has significant experience and extensive knowledge in the field of tax advisory services.  Moreover, Deloitte Tax is familiar with the relevant financial information and other data maintained by the Debtors and is qualified and best positioned to provide the tax advisory services to the Debtors in an efficient and cost effective manner.  Accordingly, the Debtors believe that Deloitte Tax's employment is in the best interests of the Debtors, their estates, and their creditors and should be approved.

### *Nunc Pro Tunc* **Relief Is Warranted**

31.     The Debtors believe that employment of Deloitte Tax effective *nunc pro tunc* to the Commencement Date is warranted under the circumstances of these chapter 11 cases so that Deloitte Tax may be compensated for services rendered prior to entry of an order approving Deloitte Tax's retention.  Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of *nunc pro tunc* employment because Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors' estates.

32.     Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to that requested herein.  *See, e.g.*, *In re Tops Holding II Corp.*, No. 18-22279 (Bankr. S.D.N.Y. March 22, 2018) (ECF No. 194); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD)

12

(Bankr. S.D.N.Y. Apr. 28, 2014) (ECF Nos. 106, 107, 108, and 109); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014).

## Notice

33.     Notice of this Application will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**").  The Debtors respectfully submit that no further notice is required.

34.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  January 4, 2019
        New York, New York

                                SEARS HOLDINGS CORPORATION
                                *(for itself and on behalf of its affiliates*
                                *as Debtors and Debtors in Possession)*


                                 /s/ Mohsin Meghji
                                NAME: Mohsin Meghji
                                TITLE:  Chief Restructuring Officer

13

## Exhibit A

**Hermanson Declaration**

WEIL:\96792961\4\73217.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                               :
In re                          :           Chapter 11
                               :
SEARS HOLDINGS CORPORATION, *et al.*, :           Case No. 18-23538 (RDD)
                               :
            Debtors.[1]           :           (Jointly Administered)
                               :
------------------------------------------------------------ x

## DECLARATION OF THOMAS C. HERMANSON IN
## SUPPORT OF THE APPLICATION OF DEBTORS FOR AUTHORITY
## TO RETAIN DELOITTE TAX LLP AS TAX SERVICES PROVIDER
## FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

I, Thomas C. Hermanson, under penalty of perjury, declares as follows:

1.        I am a managing director of the firm of Deloitte Tax LLP ("**Deloitte Tax**"),

which has an office at 111 South Wacker Drive, Chicago, Illinois 60606.  I am duly authorized to

make and submit this declaration (the "**Declaration**") on behalf of Deloitte Tax as tax services

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

provider for Sears Holdings Corporation ("**SHC**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") in support of the *Application of Debtors for Authority to Retain Deloitte Tax LLP as Tax Services Provider Nunc Pro Tunc to the Commencement Date* (the "**Application**").[2]

2.      The Debtors seek to retain Deloitte Tax pursuant to the terms and conditions set forth in (i) that certain work order, dated February 1, 2018, to provide certain tax services related to the Debtors' debt exchange transaction (the "**Transaction Work Order**"); and (ii) that certain work order, dated October 15, 2018, to provide certain tax advisory services relating to the Debtors' restructuring (the "**Restructuring Work Order**" and, together with the Transaction Work Order, the "**Work Orders**").  The Work Orders were issued under and pursuant to the terms of that certain master services agreement between Debtor Sears Holdings Management Corporation, on behalf of itself and its Affiliates (as defined in such agreement), and Deloitte Tax, dated January 29, 2010, amended, for the provision of tax and tax-related professional services (the "**MSA**").  Copies of the MSA and the Work Orders are attached hereto as **Exhibits 1-3**.

3.      The statements set forth in this Declaration are based upon my personal knowledge, information and belief, the declaration of Jim Berry (the "**Berry Declaration**") submitted in connection with the Debtors' application to retain Deloitte & Touche LLP ("**Deloitte & Touche**"), an affiliate of Deloitte Tax, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

### Deloitte Tax's Qualifications

4.      Deloitte Tax is tax services firm with offices across the United States. Deloitte Tax has significant experience performing tax services and has performed such services

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

in large and complex chapter 11 cases on behalf of debtors throughout the United States. Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases in a cost-effective, efficient, and timely manner. Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.

5.       In addition, since approximately March 2005, Deloitte Tax has provided various tax-related professional services to SHC and the Debtors. In providing such prepetition professional services to the Debtors, Deloitte Tax has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during the chapter 11 cases. Accordingly, Deloitte Tax is both well-qualified and able to provide the services for the Debtors during the chapter 11 cases in an efficient and timely manner.

### Disinterestedness

6.       Subject to the foregoing, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte Tax, nor any partner, principal, or managing director of Deloitte Tax that is anticipated to provide the services for which Deloitte Tax is to be retained (the "**Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors; and (b) Deloitte Tax and the Engagement Partners/Principals/Managing Directors have no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in the chapter 11 cases, except as stated herein or in any attachment hereto.

7.       As discussed in the Berry Declaration, in connection with Deloitte &

3

Touche's retention by the Debtors in these chapter 11 cases, Deloitte & Touche undertook searches to determine, and to disclose, whether it or its affiliates, including Deloitte Tax, is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "**Potential Parties-in-Interest**"), whose specific names were provided to Deloitte & Touche by the Debtors. To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these chapter 11 cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates, including Deloitte Tax, had any relationships with the Debtors or the significant Potential Parties-in-Interest.

8.    Deloitte Tax and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, Deloitte Tax and/or its affiliates have had, currently have and/or may have in the future banking or other relationships with such parties, or provided, may currently provide, and/or may provide in the future professional services to certain of these parties in matters unrelated to the chapter 11 cases. From time to time, Deloitte Tax and its affiliates have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the chapter 11 cases, except as set forth herein or in the attachments hereto. Additionally, certain significant Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte Tax and/or its affiliates and the Engagement Partners/Principals/Managing Directors in matters unrelated to the chapter 11 cases. A listing of such parties is attached to this Declaration as **Schedule 1**.

4

WEIL:\96792961\4\73217.0004

9.      Deloitte Tax believes that the relationships described herein or reflected on **Schedule 1** have no bearing on the services for which Deloitte Tax's retention is being sought by the Debtors in the chapter 11 cases.  Furthermore, such relationships do not impair Deloitte Tax's disinterestedness, and Deloitte Tax does not represent an adverse interest in connection with the chapter 11 cases.

10.     Despite the efforts described above to identify and disclose Deloitte Tax's connections with the significant Potential Parties-in-Interest in the chapter 11 cases, because Deloitte Tax is a nationwide firm with many employees, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed.  Deloitte Tax will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise.  In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

11.     To the best of my knowledge, based on the internal search discussed above, Deloitte Tax has determined that certain relationships should be disclosed as follows:

    a.  Deloitte Tax and/or its affiliates provide services in matters unrelated to the chapter 11 cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 1**.

    b.  Law firms identified on **Schedule 1**, including Baker & Hostetler LLP; Cleary Gottlieb Steen & Hamilton LLP; DLA Piper US LLP; Haynes & Boone LLP; Morgan Lewis & Bockius LLP; Orrick Herrington & Sutcliffe LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Steptoe & Johnson LLP; Sullivan & Cromwell LLP; Wachtell, Lipton, Rosen & Katz LLP; and Weil Gotshal & Manges LLP, have provided, currently provide and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to the chapter 11 cases, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

    c.  In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in the chapter 11 cases.  For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage

5

each other for various purposes.

d.  Certain financial institutions or their respective affiliates (including Allianz Global Risks US Insurance Company; American Express Prepaid Card Management Corporation; AXA Insurance Company; Bank of America, N.A.; Barclays Capital Inc.; BB&T Bank; Capital One Bank; Citibank, N.A.; Citigroup Global Markets, Inc.; HSBC Bank; JPMorgan Chase Bank, N.A.; KeyBank; Life Insurance Company of North America ("Cigna"); Lloyd's of London; National Union Fire Insurance Company of Pittsburgh, PA; Prudential Insurance Co. of America; TD Bank, N.A.; and Wells Fargo Bank, National Association) listed on **Schedule 1** (i) are lenders to an affiliate of Deloitte Tax (Deloitte Tax is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates.  In addition, certain institutions or their respective affiliates, including Goldman, Sachs & Co., provide asset management services to Deloitte Tax, affiliates of Deloitte Tax and/or certain of their pension funds.

e.  Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to these chapter 11 cases.

f.  Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates in matters unrelated to these chapter 11 cases.  In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course accounting advice and conducts typical audit procedures that may arise from such Potential Parties-in-Interest's business arrangements with the Debtors.

g.  Certain firms around the world, including affiliates of Deloitte Tax, are members of Deloitte Touche Tohmatsu Limited ("**DTTL**"), a United Kingdom company limited by guaranty.  Certain of the non-US member firms of DTTL or their affiliates (the "**DTT Member Firms**"), including the DTT Member Firm located in India, have provided, currently provide or may in the future provide professional services to certain of the Debtors or their affiliates.[3]  In particular, DTT Member Firm located in Canada performed audit services and tax services in the ordinary course of business for the Debtors' non-debtor affiliate, Sears Canada.

h.  Deloitte Tax and/or its affiliates, including Deloitte & Touche, performed various professional services for the Debtors in connection with certain prepetition transactions, such as those relating to the separation of Lands' End,

---

[3] Each of the DTT Member Firms is a separate and independent legal entity.  It is not Deloitte Tax's practice to undertake conflicts checks with DTT Member Firms for the purpose of identifying relationships that they may have with the Debtors and other parties-in-interest and Deloitte Tax does not maintain a database for the purpose of identifying all such relationships.

6

Seritage Growth Properties ("**Seritage**"), and Sears Canada and the respective rights offerings associated therewith, as well as debt financing and other transactions. In its capacity as auditor, Deloitte & Touche provided the Debtors with ordinary course auditing services, which included services that arose in connection with the associated transactions. Following the Lands' End and Seritage transactions, Deloitte & Touche was separately retained as the independent auditor of each of Lands' End and Seritage. In addition, Deloitte Tax performed tax-related consulting services for the Debtors related to the aforementioned transactions.

i. Deloitte Services LP ("**Deloitte Services**"), an affiliate of Deloitte & Touche, is party to an agreement with Debtor Sears Holdings Management Corporation ("**SHMC**"), which permits SHMC to offer its Shop Your Way PERKS program to Deloitte Services' and its affiliates' personnel in the ordinary course of business via Deloitte Services' internal website. Neither Deloitte Services, its affiliates, nor their respective personnel receive compensation from SHMC under this agreement. Additionally, it is likely that personnel of Deloitte & Touche and/or its affiliates, including personnel who may be performing services for the Debtors, have ordinary course consumer relationships with the Debtors, including by being (i) participants in certain customer programs of the Debtors (such as being holders of gift cards or credit accounts or by being participants in the Debtors' Shop Your Way PERKS program) and (ii) the beneficiaries of various warranty arrangements as a result of the purchase of goods or services from the Debtors. Deloitte & Touche has not conducted research into the status of its or its affiliates' personnel as customers of the Debtors or their participation in these ordinary course customer programs.

j. Deloitte Tax and/or its affiliates have provided, currently provide, and will continue to provide financial advisory services to the Pension Benefit Guaranty Corporation (the "**PBGC**"). The Debtors and their pension plans are not the subject of these services for the PBGC.

k. Deloitte Consulting LLP ("**Deloitte Consulting**"), an affiliate of Deloitte Tax, and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these chapter 11 cases.

12. Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in the chapter 11 cases, the U.S. Trustee for Region 2, the Assistant United States Trustee for the Southern District of New York, and the attorney therefor assigned to the chapter 11 cases.

7

13. Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte Tax and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax and the Engagement Partners/Principals/Managing Directors are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

## Scope of Services

14. As set forth more fully in the Work Orders, Deloitte Tax has agreed to provide professional services for the Debtors in accordance with the terms and conditions set forth in the Work Orders and the MSA, and as requested by the Debtors and agreed to by Deloitte Tax, as follows:

a) Performing services pursuant to the Transaction Work Order, expected to consist of:

  i. Advising the Debtors with respect to the review of the Debtors' debt exchange transaction with respect to tax effects thereof;

  ii. Advising the Debtors regarding the preparation of original issue discount calculations, as requested;

  iii. Advising the Debtors with respect to the review of the offering memorandum related to the exchange of certain notes held by certain of the Debtors' creditors to determine tax reporting requirements; and

  iv. Advising the Debtors regarding the determination of the federal income tax filing requirements with respect to the aforementioned debt exchange transaction.

b) Performing services pursuant to the Restructuring Work Order, expected to consist of:

  i. Advising the Debtors as they consult with their counsel and financial advisors on the cash tax effects of restructuring and bankruptcy transactions and the post-restructuring tax profile tax costs. This will include gaining an understanding of the Debtors' financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

WEIL:\96792961\4\73217.0004

ii.   Advising the Debtors regarding the restructuring and bankruptcy emergence process from a tax perspective, including the tax work plan;

iii.   Advising the Debtors with respect to any cancellation of debt income for tax purposes under IRC section 108;

iv.   Advising the Debtors on post-restructuring or post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock, and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors' operating projections, including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

v.   Advising the Debtors on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, and the Debtors' ability to qualify for IRC section 382(l)(5);

vi.   Advising the Debtors on net built-in gain or net built-in loss position at the time of "ownership change" (as defined under IRC section 382), including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

vii.   Advising the Debtors as to the treatment of post-petition interest for state and federal income tax purposes;

viii.   Advising the Debtors as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs, including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

ix.   Advising the Debtors with their evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

x.   Advising the Debtors on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions including cancellation of indebtedness calculation, adjustments to tax attributes and limitations on tax attribute utilization;

xi.   Advising the Debtors on responding to tax notices and audits from various taxing authorities;

xii.   Assisting the Debtors with identifying potential tax refunds and advising the Debtors on procedures for tax refunds from tax authorities;

9

xiii.  Advising the Debtors on income tax return reporting of bankruptcy issues and related matters;

xiv.  Advising the Debtors with their review and analysis of the tax treatment of items adjusted for financial reporting purposes as a result of "fresh start" accounting as required for the emergence date of the U.S. financial statements in an effort to identify the appropriate tax treatment of adjustments to equity (including issuance of new equity, options, and/or warrants), and other tax basis adjustments to assets and liabilities recorded;

xv.  Assisting the Debtors with documenting, as appropriate, the tax analysis, development of the Debtors' opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above;

xvi.  Advising the Debtors regarding other state or federal income tax questions that may arise in the course of this engagement, as requested by the Debtors, and as may be agreed to by Deloitte Tax; and

xvii.  Advising the Debtors with their efforts to calculate tax basis of their assets and liabilities in each of the Debtors' subsidiaries or other entity interests.

15.  Deloitte Tax respectfully requests that its retention be made effective *nunc pro tunc* to the Commencement Date so that Deloitte Tax may be compensated for the professional services it has provided before the Application is heard by the Court. Deloitte Tax has provided services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved *nunc pro tunc* to the Commencement Date. Deloitte Tax submits that these circumstances are of a nature warranting retroactive approval.

**Professional Compensation**

16.  Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements set forth in the Work Orders.

17.  Pursuant to the terms of the Transaction Work Order, Deloitte Tax will bill the Debtors fees that are based on the amount of professional time required and the experience level of the professionals involved. Deloitte Tax will charge the Debtors the following hourly

10

rates for services rendered pursuant to the Transaction Work Order:

| Professional Level | Hourly Rates |
|---|---|
| National Tax Specialist Partner / Principal /Managing Director | $625 |
| Partner / Principal /Managing Director | $525 |
| Senior Manager | $400 |
| Manager | $320 |
| Senior Associate | $210 |
| Staff | $185 |

18.    Pursuant to the terms of the Restructuring Work Order, Deloitte Tax will bill the Debtors fees that are based on the amount of professional time required and the experience level of the professionals involved.  Deloitte Tax will charge the Debtors the following hourly rates for services rendered pursuant to the Restructuring Work Order:

| Professional Level | Hourly Rates |
|---|---|
| National Tax Specialist Partner / Principal /Managing Director | $975 |
| Partner / Principal /Managing Director | $850 |
| Senior Manager | $725 |
| Manager | $595 |
| Senior Associate | $450 |
| Staff | $325 |

19.    Hourly rates are revised periodically in the ordinary course of Deloitte Tax's business.  Deloitte Tax shall advise the Debtors of any new rates should it institute a rate-change during the chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

20.    In addition to the fees set forth above, actual, reasonable and necessary expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte Tax's services, will be included in the total amount billed.

21.    Deloitte Tax intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement of expenses incurred in

11

accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, including the order granting this application (to the extent compliance is not waived), and/or any applicable guidelines issued by the Office of the U.S. Trustee.

22.     Deloitte Tax will maintain records in support of any fees incurred in connection with the services it performs in these chapter 11 cases by category and nature of the services rendered, and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in provided those services, and the individuals who provided professional services on behalf of the Debtors. Deloitte Tax will present such records to the Court in its fee applications to the Court. Deloitte Tax requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments. I understand that all payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

23.     As noted above, prior to the Commencement Date, Deloitte Tax provided professional services to the Debtors. In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte Tax $21,200 for services performed. As of the Commencement Date, approximately $131,000 was outstanding with respect to the invoices issued by Deloitte Tax. It is my understanding that Deloitte Tax will not seek a recovery on any amounts related to such invoices.

24.     As provided in the Berry Declaration, prior to the Commencement Date,

Deloitte & Touche provided professional services to the Debtors.  In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte & Touche approximately $9,000,000 for services performed and/or to be performed.  As of the Commencement Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche.

25.    Some services incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, Deloitte & Touche, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States.

26.    Deloitte Tax may subcontract a portion of tax compliance services to its indirect wholly-owned subsidiary, Deloitte Tax India Private Limited ("**Deloitte Tax India**").  In such case, a specifically assigned team of personnel from Deloitte Tax India would assist in such services under the supervision, and with the input, of personnel of Deloitte Tax.  The hourly rates charged to the clients by Deloitte Tax for tax compliance services performed by Deloitte Tax India personnel are comparable to the rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India.  The connections of Deloitte Tax India (along with the connections of Deloitte Tax and its other affiliates) to the parties in interest searched by Deloitte Tax are set forth on **Schedule 1** attached hereto.

27.    Deloitte Tax has received no promises regarding compensation in the chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the chapter 11 cases.

WEIL:\96792961\4\73217.0004

## **Efforts to Avoid Duplication of Services**

28.    The services performed by Deloitte Tax will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained professionals.  Deloitte Tax understands that the Debtors have retained and may retain additional professionals during the term of the MSA and each of the Work Orders, and Deloitte Tax agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

[*Remainder of Page Intentionally Left Blank*]

14

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 4, 2019
     Chicago, Illinois

                                                                          
_____
Thomas C. Hermanson
Managing Director
Deloitte Tax LLP

15

## Schedule 1

Potential parties-in-interest or their affiliates for whom Deloitte Tax LLP or its affiliates has provided or is currently providing services in matters unrelated to the Chapter 11 Cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| 123Stores Inc. |
| 3M Company Kbe0561 |
| A&E Factory Service |
| A&E Home Delivery, LLC |
| A&E Lawn & Garden, LLC |
| A&E Signature Service, LLC |
| ABRY Partners II, LLC |
| Acadia Realty Limited Partners |
| ACCO Brands USA LLC |
| ACE American Insurance Company |
| ACE Property and Casualty Insurance Company |
| Active Media Services Inc. |
| Adobe Systems |
| ADP RPO |
| ADP, Inc. |
| AEA Investors LP |
| Aetna |
| AFGlobal |
| AFL-CIO |
| Agree Limited Partnership |
| AIG Europe Limited (Lex London) (ACT) |
| Ainsworth Pet Nutrition LLC |
| Akamai Technologies |
| Alan E Robbins |
| Alcon Laboratories Inc |
| Alexander's Rego Shopping Center Inc. |
| AlixPartners |
| Allianz Global Risks US Insurance Company |
| Allied Trade Group Inc |
| Allied World Assurance Company Ltd. |
| Allstate |

| |
|---|
| Ally Bank |
| Ally Commercial Finance LLC |
| Alta Mont Capital |
| Amazon.com, Inc. |
| AmCap Inc. |
| Ameren Missouri |
| American Apparel |
| American Express Prepaid Card Management Corporation |
| American Greetings Corporation |
| American Guarantee & Liability Insurance Company |
| American National Insurance Company |
| American President Lines |
| American Securities LLC |
| American Tire Distributors Inc. |
| American Trust |
| Angelo Gordon & Co. |
| Aon Hewitt |
| AON Risk Consultants Inc. |
| Aon Risk Services Companies |
| Apex Tool Group LLC |
| Apparel Sourcing (HK) Limited |
| Applewood Shopping Center GP |
| Arcelik A.S. |
| Ares Management |
| Ariba |
| Armored Autogroup |
| Aspen Specialty Insurance Company |
| Associated Hygienic Products |
| Assurant |
| Asurion |
| ASW LLC |
| AT&T |
| AT&T Mobility II, LLC |
| Automotive Rentals Inc. |
| Autozone Parts Inc |
| Avalara |
| AXA Insurance Company |

2

| |
|---|
| AXIS Insurance Company |
| Babcock & Brown (Gregory Greenfield) |
| Baker & Hostetler LLP |
| Banco Popular |
| Bancorpsouth Bank |
| Bank Leumi |
| Bank of America, NA |
| Bank of China |
| Bank of Oklahoma |
| Barclays Capital Inc. |
| Bayer Corporation |
| Bayshore Capital Advisors, LLC |
| BB&T Bank |
| BCBG MaxAzria |
| BDO Seidman |
| Beeline |
| Beeline Settlement Company LLC |
| Benderson |
| Benefit Street Partners L.L.C. |
| Benzalem MZL LLC |
| Berkadia Commercial Mortgage |
| Berkowitz, Bruce R. |
| Berkshire Hathaway International Insurance Limited |
| Best Buy Co., Inc. |
| Bestway (Hong Kong) Int'l Ltd |
| Big Beaver of Caguas Development Corporation |
| Big Lots, Inc. |
| Bissell Homecare International |
| BJ's Wholesale Club |
| Bl Intimate Apparel Canada Inc |
| Black & Decker US Inc. |
| Black & Decker Macao Commerc |
| Black Diamond Capital Management, L.L.C. |
| Blackhawk Marketing Services, Inc. |
| Blackstone/DDR JV |
| BlueLight.com, Inc. |
| BNY Midwest Trust Company, as indenture trustee for the SRAC Unsecured Notes |

3

| |
|---|
| Braun Family LLC |
| BRE DDR BR Whittwood CA LLC |
| BRE RC Retail Parent LLC |
| Brixmor (aka Centro) |
| Broadspire |
| Broan-Nutone LLC |
| Brothers Trading Co Inc |
| Brunswick MZL LLC (Katz Properties) |
| BSH Home Appliances Corporation |
| Burlington Stores, Inc. |
| C H Robinson Worldwide |
| Caleres Inc. |
| California Builder Appliances, Inc. |
| Canon Financial Services, Inc. |
| Caparra Center Associates LLC |
| Capital Brands LLC |
| Capital One Bank |
| Capitol Funds Inc |
| Cardinal Health |
| Carlyle Development Group |
| Carr, Alan J. |
| Cascade Investment, L.L.C. |
| Casto |
| CBL and Associates Properties Inc ("CBL") |
| Cbl/Cherryvale I, LLC |
| CCP Credit Acquisition Holdings, L.L.C. |
| Cede & Co. |
| Centennial Bank |
| Centerbridge |
| Central Plaza |
| Centurylink |
| Chamberlain Manufacturing Corp. |
| Chevron (Hk) Limited |
| China Fortune LLC |
| Chubb Bermuda Insurance Ltd. |
| Chubb Custom Insurance Company |
| Chubb Insurance Hong Kong Limited |

4

| |
|---|
| Cigna |
| Cisco Systems |
| Citibank, N.A. |
| CITIC Capital Partners Management Limited |
| Citigroup Global Markets Inc. |
| Citizens Bank |
| Citizens Business Capital, a division of Citizens Asset Finance Inc. |
| Citizens Insurance Company of America |
| Citizens National Bank |
| CJ Segerstrom & Sons / Henry Segerstrom Family |
| Clayton, Dubilier & Rice, LLC |
| Clearlake Capital Group, L.P. |
| Clearwater Paper Corporation |
| Cleary Gottlieb Steen & Hamilton, LLP |
| Cobblestone Victor NY LLC (Schottenstein) |
| Coca Cola Bottling Co. |
| Commercial International Bank (Egypt) S.A.E. |
| Commission Junction |
| Commonwealth of Massachusetts |
| Compucom Systems |
| Computershare Inc. |
| Conair Corporation- Personal C |
| Conopco Inc. |
| Continental Casualty Company |
| Continental Tire The Americas LLC |
| Cookeville Retail Holdings LLC |
| Cooper Tire & Rubber Company |
| Coral Reef Asia Pacific |
| Costco |
| Cott Beverages USA Inc |
| Coyote Logistics |
| Craftsman |
| CREF II Silver City LLC |
| Criteo |
| Crossfire |
| Crossroads Joint Venture LLC |
| Crown Credit Company |

5

| |
|---|
| CT Corporation System |
| CVS Pharmacy |
| Cymax Stores USA LLC |
| Cyrus Capital Partners, L.P. |
| Dagenais Family |
| Dan Arnold & Fred Keywell Partnership |
| David Hocker & Associates Inc. |
| David Mandelbaum & Peter Levine |
| DDR (SITE Centers Corp) |
| Dell Financial Services L.L.C. |
| Delphi Automotive PLC |
| Demoulas Super Markets Inc. |
| Design International Group Inc. |
| Deutsche Bank Securities Inc. |
| Dillard's, Inc. |
| Direct Energy |
| DLA Piper US LLP |
| D-Link Systems, Inc. |
| Dollar General Corporation |
| Dorel Asia Srl |
| Drivetrain Advisors |
| Duke Realty LP |
| Dunbar Armored |
| Duracell Distributing Inc |
| East Penn Manufacturing Co Inc. |
| Eastland Mall Holdings LLC (Mohammed Al Refaey) |
| Ebay Germany |
| Edwin P. Yates |
| Eldis/ Founder Holdings/Fix.com |
| Electrolux |
| Electrolux Home Products |
| Elizabeth Arden Inc |
| Empire Distributors Ejd Enterp |
| Endurance American Specialty Insurance Company (ACT) |
| Envision Michigan Holdings LLC |
| Equimax/Pentaco Management |
| Equity One Realty & Management Inc. |

6

| |
|---|
| ESL Investments, Inc. |
| ESL Partners, L.P. (73.5%) |
| Euro Pro Sales Company |
| EvCom Holdings LLC & Steadfast Companies |
| Executive Risk Specialty Insurance Company |
| Extell Development Co |
| EyeMed Vision Care |
| F & T Apparel LLC |
| FAA/EyeMed Vision Care, LLC |
| Facebook |
| Fairholme Capital Management, LLC |
| FBA Holdings Inc. |
| Federal Insurance Company |
| Federal Insurance Company (Chubb) |
| Federal Realty Investment Trust |
| Feil Organization, The |
| Ferguson Enterprises, Inc. |
| Ferguson Plc |
| Fifth Third Bank |
| Fila USA Inc. |
| First Allied Corporation |
| First American Title Ins. |
| First Hawaiian Bank |
| First Interstate Bank of Billings |
| First National Bank |
| First Security Bank |
| First State Bank |
| First Tennessee |
| Fisher Price Bds A Div Of Mdii |
| Five Below, Inc. |
| Five Mile Capital / StreetMac / Urban Retail Properties |
| Flagstar |
| Florida Builder Appliances, Inc. |
| Forest City Enterprises |
| Fossil Inc. |
| Fred's Inc. |
| Freeman Spogli Management Co., L.P. |

WEIL:\96792961\4\73217.0004

| |
|---|
| FREP Holdings LLC |
| Fulcrum Property (managed by Macerich) |
| G&I VIII CBL Triangle LLC |
| Gap Inc. |
| Garrison (CBL Manages) |
| Gator |
| GBG Beauty LLC |
| Geelong Sales Mco Limited |
| General Electric Capital Corporation |
| General Growth Properties, Inc. |
| General Mills Inc. |
| General Security Indemnity Company of Arizona |
| Genesco Brands, Inc. |
| GFI - c/o Walt Gasser & Associates |
| GGP (Brookfield Properties Retail Group) |
| Ggplp Real Estate Inc. |
| Gibson Brands |
| GK Development |
| Glimcher |
| Global Aerospace, Inc. |
| Golden Gate Capital |
| Goldman, Sachs & Co. |
| Goodyear Tire & Rubber Com, The |
| Google |
| Graham Capital |
| Grand Luck Fujian Footwear Co |
| Great Lakes Reinsurance (UK) PLC (Munich) (ACT) |
| Groupe Seb USA |
| Groupon |
| Grubhub, Inc. |
| GS Portfolio Holdings LLC |
| GVSC LP & Cameo Homes |
| H.I.G. Capital Management, LLC |
| Haddad Apparel Group Ltd. |
| Hallmark Marketing Company LLC |
| Hamilton Beach Brands Inc. |
| Hana Financial Inc. |

8

| |
|---|
| Hanesbrands Inc Bali |
| Hanesbrands Inc. Leggs |
| Hanover Insurance |
| Hansae Co. Ltd. |
| Hart I 55 Industrial LLC |
| Hartz Mountain Corp |
| Harvest Partners, LP |
| Hasbro Inc. |
| Haynes and Boone, LLP |
| HDC Holding Company of Delaware, Inc. |
| Heartland Bank and Trust Company |
| Hershey Chocolate Company |
| Hewitt Associates |
| Hewlett-Packard Financial Services Company |
| Hfc Prestige International U S |
| hhgregg Appliances and Electronics |
| Hilex Poly Co LLC |
| Holmes Group Inc |
| Home Depot, Inc. |
| HomeServe USA Corp. |
| Hoover Inc. |
| Houghton State Bank |
| House of Marley, LLC |
| HSBC Bank |
| Hudson Advisors |
| Hull Property Group |
| Huntington National Bank |
| Husqvarna Outdoor Products |
| Hybrid Promotions LLC |
| ICBC |
| Icon Health and Fitness Inc. |
| Icrossing |
| Illinois National Insurance Company (AIG) |
| Illinois Secretary of State |
| Illinois Union Insurance Company (ACE) |
| Inditex USA |
| Infosys |

9

| |
|---|
| Ingersoll-Rand |
| Inland n/k/a IRC Retail Centers |
| Innovel Solutions, Inc. |
| Insurance Company of the State of Pennsylvania |
| International Brotherhood of Electrical Workers |
| International Brotherhood of Electrical Workers Local #1075 (IBEW) |
| International Union of Operating Engineers |
| International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) |
| Iowa State Bank |
| Ironshore Specialty Insurance Company |
| J B Hunt Transport |
| J.C. Penney Company, Inc. |
| James Campbell |
| James Lewis |
| Jarden Consumer Solutions |
| Johnson & Johnson Consumer Inc. |
| Johnson Controls Inc. |
| Jordache Limited |
| Jordan Company, L.P., The |
| JP Morgan Chase Bank |
| JPP II, LLC |
| Kadish |
| Kamehameha Schools - Bishop Estate |
| Kamlani, Kunal S. |
| KBL Holding Inc. |
| KBS Real Estate Investment Trust Inc. |
| KCD IP, LLC |
| Kelso & Company |
| Keurig Green Mountain Inc. |
| Key Bank |
| Kik International Inc. |
| Kimberly Clark Corp. |
| Kimberly Clark Puerto Rico Inc. |
| Kimco |
| Kiran Jewels, Inc. |
| Kiss Products Inc. |
| Kitchenaid Inc. |

10

| |
|---|
| KLC, Inc. |
| Kmart |
| Kmart Corporation |
| Kohl's Corporation |
| Kohlberg Kravis Roberts & Co. L.P. |
| KRG Sunland LP |
| Kumho Tires USA Inc. |
| L Brands, Inc. |
| Ladley, Greg |
| Lakewood Shopping Center LLC |
| Lampert, Edward S. |
| Land's End, Inc. |
| La-Z-Boy Incorporated |
| LBA Realty |
| Ledvance LLC |
| Level 3 Communications |
| Lexington Corporate Properties Trust |
| LG Electronics |
| LG Electronics Alabama Inc. |
| Liberty Media |
| Liberty Mutual Insurance Company |
| Liberty Surplus Insurance Corporation |
| Lic Limited |
| Life Insurance Company of North America ("Cigna") |
| LightSquared |
| Limited Stores, LLC |
| Lincoln Gen Inc. Co. |
| Link Snacks Inc. |
| Little Caesars |
| Littlejohn & CO. LLC |
| Lloyd's Syndicates 623/2623 |
| Lm Farm LLC Dba Gardens Alive |
| LNR Partners LLC |
| Loreal Cosmetic and Fragrance |
| Lowe's Companies, Inc. |
| LSREF3 Spartan (Genesee) LLC / Lone Star Funds |
| M S Portfolio LLC |

11

| |
|---|
| M&T Bank |
| Macerich Company |
| Macerich Partnership LP/Chesterfield |
| Macy's |
| Maersk |
| Maidenform Inc. |
| Mann Hummel Purolator Filters |
| March of Dimes |
| Mars Petcare US Inc. |
| Mattel Brands A Div Of Mdii |
| Mattel Toys |
| Maurice Sporting Goods |
| MaxServ, Inc. |
| Maynardville Pike LP |
| Maytag Appliances |
| Mckee Foods Corp. |
| Meijer |
| Menard, Inc. |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated |
| MetaScale Technologies India Private Limited |
| MetLife (Metropolitan Life Insurance Company) |
| MFW Associates |
| Michelin North America Inc. |
| Microsoft |
| Midwood Investment & Development |
| ML-CFC 2006-4 Greeley Retail LLC |
| Mondelez Puerto Rico LLC |
| Monomoy Capital Management, L.P. |
| Morgan Lewis & Bockius |
| Morgan Stanley Capital I Trust |
| MORGAN STANLEY SMITH BARNEY |
| Mountain Laurel Plaza |
| MSD Capital |
| Mt Pleasant Shopping LLC |
| MTD Products Inc. |
| Munjal, Leena |
| Mxd Group |

12

| |
|---|
| MyGofer LLC |
| National Fire & Marine Insurance Company |
| National Union Fire Insurance Co. |
| Navigators Insurance Company |
| Nbty Inc. |
| NCH Marketing Inc. |
| NCR Corporation |
| Nestle Purina Pet Care Company |
| New Market Station LP |
| Nexgrill Industries Inc. |
| Niagara Bottling LLC |
| Norcell |
| Northwood Investors |
| Novae |
| Oak Lawn Center 835 LLC |
| Oakbrook Shopping Center, LLC |
| Oaktree Capital Management, L.P. |
| Oaktree Huntington Investment Fund II, L.P. |
| Oaktree Special Situations Fund, L.P. |
| Och-Ziff Capital Structure Arbitrage Master Fund Ltd. |
| Ohio Bureau of Workers Compensation |
| Old Republic Insurance Company |
| Ollie's Bargain Outlet Holdings, Inc. |
| Olshan Properties |
| OMERS Private Equity U.S.A. Inc. |
| One Jeanswear Group Inc. |
| One World Technologies In |
| Oracle America |
| Orrick Herrington & Sutcliffe |
| Outerstuff Ltd. |
| Parfums De Coeur |
| PartnerRe Ireland Insurance Limited (ACT) |
| Payless Shoesource |
| Pcl Co. Limited |
| Peak Rock Capital, LLC |
| PECO Real Estate Partners (CBL manages) |
| Pension Benefit Guarantee Corporation |

13

| |
|---|
| Permira Advisers LLC |
| Phillips Edison Group LLC |
| Pimkie Apparels Ltd. |
| Platinum Equity Advisors, LLC |
| PMB, Inc. |
| PNC Bank, National Association |
| Port Plaza Realty Trust |
| Positec Macao Comm Offshore Lt |
| PREIT |
| Premierbank |
| Presidio Investors LLC |
| PriceSmart, Inc. |
| Prime Clerk LLC |
| Private Brands, Ltd. |
| Procter & Gamble Distributing |
| Prologis Lp Dba Prologis |
| Protection One Alarm Monitoring |
| Prudent International Ltd. |
| Prudential Insurance Co. of America |
| Public Service Electric & Gas Co. |
| Pyramid Management Group, LLC |
| QBE Insurance Corporation |
| Quaker Oats Company |
| Quality King Distributors Inc |
| Ramco-Gershenson Properties |
| Randstad |
| RBS Partners, L.P. |
| Reese, Ann N. |
| Regency Centers |
| Regency Realty Corp |
| Regions Bank |
| Relay LLC |
| Retailnext Inc. |
| Revlon Consumer Products |
| Rhombus Development, LLC |
| Richardson Company |
| Richline Group, Inc. |

14

| |
|---|
| Riecker, Robert A. |
| Roark Capital Acquisition LLC |
| Robbins Company, The |
| Robert Gallant GP (Providence Group Manages) |
| Robinson Family Trust |
| Rollins, Inc. |
| Rosenthal & Rosenthal Inc. |
| Rouse Properties |
| Royal Appliance Mfg. Co. |
| Rubbermaid Inc. |
| Safeco |
| Samsung Electronics |
| Samsung Electronics America HA |
| Samual T Cohen Sara W Cohen & David Cohen |
| Sas Institute |
| Saul Holdings LP |
| Schindler Elevator |
| Schostak Brothers & Co |
| Schottenstein Realty LLC |
| Schumacher Electric Corp |
| Scott Company Jeff Scott |
| Sealy Mattress Company |
| Sears |
| Sears Protection Company/Wisconsin |
| Searsvale |
| Securian |
| Securian Life Insurance |
| Sedgwick Claims Management Services, Inc. |
| Segerstrom Family |
| Seiko Corporation of America |
| Sentinel Capital Partners, L.L.C. |
| Seritage (PREIT-) |
| Seritage / CBL |
| Seritage / CIM Group |
| Seritage / DDR |
| Seritage / Easement Agmt w/ Wal-Mart |
| Seritage / Federal Realty Inv Trust |

15

| |
|---|
| Seritage / Forest City Enterprises |
| Seritage / GGP |
| Seritage / Glimcher |
| Seritage / Howard Hughes Corp |
| Seritage / Inland n/k/a IRC Retail- |
| Seritage / Macerich |
| Seritage / McKinley Inc-US Bank |
| Seritage / Ramco-Gershenson |
| Seritage / Regency Centers |
| Seritage / Rouse Properties |
| Seritage / Simon |
| Seritage / Starwood |
| Seritage / Starwood Capital |
| Seritage / Taubman Company |
| Seritage / The Feil Organization |
| Seritage / US Mall Holdings-Omninet Capital |
| Seritage / Vintage Capital Group |
| Seritage / Vornado |
| Seritage KMT Finance LLC |
| Seritage SRC Finance LLC |
| Serta Incorporated |
| ServiceLive Direct |
| Servicenow |
| Sgg Inc. |
| SHC Desert Springs LLC |
| SHC Desert Springs, LLC |
| SHC Promotions, Inc. |
| Shearers Foods Burlington LLC |
| Sherwin Alumina Company |
| Shidler/West Finance Partners |
| SHMC, Inc. |
| Shop Your Way Local, LLC |
| Siemens Financial Services, Inc. |
| Sierra Management Corp |
| Simmons Bedding Company, LLC |
| Simmons Company |
| Simon / Washington Prime Group |

16

| |
|---|
| Simon Property Group, Inc. ("Simon") |
| Sitel |
| Sitley, Stephen |
| Skadden, Arps, Slate, Meagher & Flom LLP |
| Skechers USA Inc. |
| SOE, Inc. |
| Sony Pictures Home Entertainment |
| Southland Mall Properties, LLC |
| SPE I Partners, LP (.1%) |
| SPE Master I, LP (.2%) |
| Spectrum Brands Inc. |
| Spg International Ltd. |
| Spin Master Toys Far East |
| Springs Global US Inc. |
| Springs Window Fashion LLC |
| SPS Commerce Inc. |
| SRC Facilities LLC |
| SRC O.P. LLC |
| SRC Real Estate (TX), LLC |
| SRC Sparrow 1 LLC |
| St. Jude Children's Research Hospital |
| Standard Bank Ltd. Mauritius |
| Standard Chartered Bank |
| Stanley Black & Decker, Inc. |
| Starr Indemnity & Liability Company |
| Starr Surplus Lines Insurance Company |
| StarWest, LLC |
| Starwood |
| Starwood - Star-West Chicago Ridge LLC |
| Starwood Ceruzzi LLC (Ceruzzi Holdings) |
| State Insurance Fund |
| State of California - Office of Self Insurance Plans |
| State of Florida, Department of Revenue Out of State/Central Collections Unit |
| State Street Bank and Trust Company |
| Steadfast Companies |
| Steptoe & Johnson LLP |
| Stericycle |

17

| |
|---|
| Sterling Organization |
| STI Merchandising, Inc. |
| Stone Point Capital LLC |
| Stop & Shop Supermarket Company LLC, The |
| Studio 1 |
| Sullivan & Cromwell |
| Sutherland Global Services Private-712344 |
| Sycamore Partners Management, L.P. |
| TA Associates Management, L.P. |
| Target Corporation |
| Tata Consultancy Services Ltd. |
| Taubman |
| TD Bank, N.A. |
| Team Beans LLC |
| Telebrands Corporation |
| Telecheck Services |
| Tempur Pedic North America LLC |
| Teneo Holdings |
| Teradata Operations |
| Thanh Cong Text Gmt Invest Tra |
| The Kroger Co. |
| The Service Master Company |
| THL |
| Thompson Tractor Co., Inc. |
| Timberland A Div Of Vf Outdoor |
| TJX Companies, Inc. |
| Tokio Marine America Insurance Company |
| Topshop USA |
| Torin Inc. |
| Towanda PA Holding LLC |
| TowerBrook Capital Partners L.P. |
| Towers Watson & Co. |
| Toyota Industries Commercial Finance, Inc. |
| Toys "R" Us-Delaware |
| Transier, William L. |
| Travelers Casualty and Surety |
| Trident Limited |

WEIL:\96792961\4\73217.0004

| |
|---|
| Trilantic Capital Partners VI (North America) L.P. |
| Trinity Reit, Inc. |
| Triple Crown Operating Trust LP |
| Troy Coolidge |
| Troy Coolidge No. 13, LLC |
| True Value Company |
| Tuesday Morning, Corp. |
| Twentieth Century Fox Home Entertainment LLC |
| U S Realty a/k/a Garden Properties |
| U.S. Bank Trust National Association |
| UBS AG, Stamford Branch, LLC |
| UBS Securities LLC |
| UCI International |
| UE Bruckner Plaza LLC |
| Union Bank |
| Union Center Realty LLC |
| Unique Designs, Inc. d/b/a Kiran Jewels, SDIL, InterJewel |
| United Parcel Services |
| Univest-BTC S&R LLC |
| UPS Capital Corporation |
| Urban Edge Properties LP |
| V Suarez & Co |
| Vanity Fair Intimates |
| Verbatim Americas LLC |
| Verizon Wireless |
| Vintage Capital Group |
| Virginia Surety Company, Inc. |
| Vornado |
| Vtech Communications Inc. |
| W P Carey & Co. |
| Wachovia Securities |
| Wachtell, Lipton, Rosen & Katz |
| Wal-Mart Stores, Inc. |
| Walton Street Capital LLC / Brian T Kelly Principal |
| Warburg Pincus |
| Washington Real Estate Investment Trust |
| Waste Management |

19

| |
|---|
| Watsco, Inc. |
| Waypoint Property Group |
| Weil, Gotshal & Manges LLP |
| Weingarten Realty |
| Wells Fargo Bank, National Association |
| Welspun Global Brands Ltd |
| West Plaza Associates |
| Westchester Fire Insurance Company |
| Western Union Financial Services, Inc. |
| Westfield |
| Westport Insurance Corporation |
| Whirlpool Corporation |
| Widewaters Group Inc. |
| Williamson-Dickie Manufacturing |
| WillisTowersWatson |
| Wilmington Trust, National Association |
| Winning Resources Limited |
| Winplus North America Inc |
| Wipro |
| Wolverine World Wide Inc. |
| Woodbury Corporation |
| Woodfield Mall LLC (Simon Property Group - Mall Mgr) |
| Woori Bank |
| World Kitchen LLC |
| World Publication |
| WP Glimcher (Simon / WPG & Glimcher) |
| WRI Golden State LLC |
| WRI/Raleigh LP |
| Wynnchurch Capital |
| XL Insurance (Bermuda) Ltd. |
| XL Specialty Insurance Company |
| Xpo Last Mile |
| Yahoo |
| York International |
| YWCA Metropolitan Chicago |

WEIL:\96792961\4\73217.0004

## <u>Exhibit 1</u>

**Transaction Work Order**

**Sears Holdings Management Corporation**

**Work Order**

| Work Order Number: 3-2018 | Authorized Start Date: February 1, 2018 |
|---|---|

This Work Order incorporates the terms and conditions of the Master Services Agreement between Deloitte Tax LLP ("Deloitte Tax" or "our") and Sears Holdings Management Corporation ("Client") dated May 12, 2016, as amended (the "Agreement").

**Description of Services:**

Our services relate to assisting Client related to research, consultation, and analysis with respect to debt, services include:

1. Review of the debt exchange transaction and consideration of the tax effects;
2. Preparation of Original Issue Discount ("OID") calculations, as requested;
3. Review of the Offering Memorandum;
4. Determine the federal income tax filing requirements with respect to the debt exchange transaction.

**Fees and Expenses:**

The Deloitte Tax fees for Services, other than for Services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, are based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will also bill you reasonable out-of-pocket expenses in accordance with the Agreement. Deloitte Tax will submit bills periodically as the Services are performed. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable.

**Client Responsibilities (including changes in provisions of the Agreement):**

Client is responsible for providing the appropriate tax and financial accounting resources and information as required to complete the Service contemplated under this Work Order. Client will respond to all queries to the best of its knowledge.

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Sears Holdings Management Corporation,** on behalf of itself and its subsidiaries and/or affiliates

**Deloitte Tax LLP**

By: _____

Printed

Name: _Lawrence J. Meerschaert_

Title: _Vice President Tax_

Date: _6/13/18_

By: _____

Thomas C. Hermanson

Managing Director

Date: May 14, 2018

Rev 9/12

### Exhibit 2

**Restructuring Work Order**

**Sears Holdings Management Corporation**

**Work Order**

| Work Order Number: BK-001 | Authorized Start Date: October 15, 2018 |
|---|---|

This Work Order incorporates the terms and conditions of the Master Services Agreement between Deloitte Tax LLP ("Deloitte Tax" or "our") and Sears Holdings Management Corporation and its Affiliates, including Sears Holdings Corporation ("Client") dated May 12, 2016, as amended (the "Agreement").

**Description of Services:**

The Services under this Work Order may include the following as requested by Client and agreed to by Deloitte Tax:

1. Advise Client as it consults with its counsel and financial advisors on the cash tax effects of restructuring and bankruptcy transactions and the post-restructuring tax profile tax costs. This will include gaining an understanding of Client's financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

2. Advise Client regarding the restructuring and bankruptcy emergence process from a tax perspective, including the tax work plan;

3. Advise Client on the cancellation of debt income for tax purposes under Internal Revenue Code ("IRC") section 108;

4. Advise Client on post-restructuring or post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock, and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on Client's operating projections; including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

5. Advise Client on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, and Client's ability to qualify for IRC section 382(l)(5);

6. Advise Client on net built-in gain or net built-in loss position at the time of "ownership change" (as defined under IRC section 382), including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

7. Advise Client on the potential "ownership change" under IRC 382 for prior years as well as any emergence transaction;

8. Advise Client as to the treatment of post-petition interest for state and federal income tax purposes, including the applicability of IRC section 163(j);

9. Advise Client as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs, including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

10. Advise Client in Client's evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

11. Advise Client on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions including cancellation of indebtedness calculation, adjustments to tax attributes and limitations on tax attribute utilization;

12. Advise Client on responding to tax notices and audits from various taxing authorities;

13. Assist Client with identifying potential tax refunds and advise Client on procedures for tax refunds from tax authorities;

14. Advise Client on income tax return reporting of bankruptcy issues and related matters;

15. Assist in documenting as appropriate, the tax analysis, development of Client's opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above; and

16. Advise Client regarding other state or federal income or non-income tax questions that may arise in the course of this engagement, as requested by Client, and as may be agreed to by Deloitte Tax; and

17. Advise Client with its efforts to calculate tax basis in the stock in each of Client's subsidiaries or other entity interests.

**Fees and Expenses:**

Notwithstanding the rates set forth in the Agreement, the Deloitte Tax fees for Services under this Work Order only are based on the amount of professional time incurred multiple by the hourly rates below. Additionally, Client will reimburse Deloitte Tax for reasonable out-of-pocket expenses in accordance with the Agreement.   Deloitte Tax will submit bills periodically as the Services are performed subject to any applicable Bankruptcy Court (as defined below) orders, rules or procedures.  The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable.

| | |
|---|---|
| Washington National Tax Specialist | $ 975 |
| Partner/Principal/Managing Director | $ 850 |
| Senior Manager | $ 725 |
| Manager | $ 595 |
| Senior | $ 450 |
| Staff | $ 325 |

**Client Responsibilities (including any changes to provisions of the Agreement):**

Client is responsible for providing the appropriate tax and financial accounting resources and information as required to complete the Service contemplated under this Work Order.

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's and/or its Affiliates tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax.  Client acknowledges that Client's and its Affiliates tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's and its Affiliates consent to disclosure and use of Client's and its Affiliates tax return information in the manner described above.

---

**ADDITIONAL TERMS**

Client agrees that it will promptly seek the Bankruptcy Court's approval of this engagement in Client's chapter 11 bankruptcy proceeding (the "Case"). The application, proposed order and other supporting documents submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.

In addition to Deloitte Tax's other rights or remedies, Deloitte Tax may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax believes that a third party may object, in the form of an objection or otherwise, to Advisor's retention by Client in the Case on the terms and conditions set forth in the Agreement and this Work Order, (b) a final order authorizing the employment of Deloitte Tax as tax services provider under the terms hereof is not entered by the Bankruptcy Court in the Case on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte Tax in its sole discretion, or (c) the application of Client seeking such order is denied by the Bankruptcy Court in the Case. In any such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax to provide the Services in the Case.

For purposes of this letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

**Sears Holdings Management Corporation,** on behalf of itself and its subsidiaries and/or affiliates

By: _____

Printed
Name: _Lawrence J. Maerschpert_

Title: _VP TAX_

Date: _11/6/18_

**Deloitte Tax LLP**

By: _____

Thomas C. Hermanson
Managing Director

Date:  October 15, 2018

## Exhibit 3

**Master Services Agreement**

# MASTER TAX SERVICES AGREEMENT

**THIS MASTER TAX SERVICES AGREEMENT** ("Agreement") is made and entered into as of the 29th day of January, 2010, by and between Deloitte Tax LLP, a limited liability partnership registered under the laws of the State of Delaware ("Deloitte Tax") and SEARS HOLDINGS MANAGEMENT CORPORATION, a corporation organized under the laws of the State of Delaware ("Client") on behalf of itself and on behalf of and for the benefit of its Affiliates. For purposes of this Agreement, "Affiliate(s)" means any individual, entity (e.g., corporation, L.L.C., etc.) that is directly or indirectly controlled by Sears Holdings Corporation.

## WITNESSETH:

**WHEREAS,** Client desires to engage Deloitte Tax to provide certain tax and tax-related professional services; and

**WHEREAS,** Deloitte Tax is willing to provide certain tax and tax-related professional services to assist Client; and

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual promises contained herein, the parties agree as follows:

1. **Engagement.** Client hereby engages Deloitte Tax, and Deloitte Tax hereby accepts the engagement, to provide certain tax and tax-related professional services on the terms and conditions set forth herein. No audit, review, compilation or attest services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants or any successor standard setting organization shall be performed under this Agreement. Client makes no representations as to the amount of business Deloitte Tax can expect under this Agreement.

2. **Services.**

   a)   From time to time during the term of this Agreement as Client, in its sole discretion, determines that it requires tax and tax-related professional services, Client shall request such services from Deloitte Tax. For work that is expected to generate fees in excess of $10,000, such requests shall be pursuant to and in accordance with separate Work Orders, the form of which shall be substantially as set forth in Exhibit A annexed hereto and made a part hereof. Deloitte Tax, in its sole discretion, may agree to provide such services. Once executed by Deloitte Tax and Client, such work order (the "Work Order") shall be binding upon the parties thereto. Each Work Order shall specifically reference this Agreement and shall specify the details of the particular tax and tax-related services to be performed under the Work Order (the "Services"). All rights and obligations of Deloitte Tax and Client hereunder shall be deemed to apply to such Work Order as if fully set forth therein. In the event of any conflict or inconsistency between the terms of this Agreement and the terms of any Work Order, the terms of this Agreement shall control. Notwithstanding the immediately

1

preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Agreement, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Agreement, such provisions of the Work Order shall control.

b)   Deloitte Tax and Client expressly acknowledge and agree that the Work Orders are based on understandings and expectations that apply at the time such Work Orders are executed and that the specific start and stop dates contained in the Work Orders are not firm performance dates, are expected to be revised during the term of any engagement, and are only to be regarded as estimated beginning and completion dates for the tasks and activities as of the date of the Work Orders. Nonetheless, Deloitte Tax agrees to use diligent efforts to meet such dates. Unless otherwise specified in a Work Order, if Deloitte Tax utilizes diligent efforts but is unable to meet such dates, it shall not be considered to have defaulted in its obligations hereunder. Deloitte Tax agrees to notify Client promptly in writing if it expects or encounters significant delays in completing its Services under any Work Order.

c)   It is understood and agreed that the Services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. In connection with the performance of the Services, Deloitte Tax shall be entitled to rely on all decisions and approvals of Client.

d)   Client shall be solely responsible for, among other things: (i) making all management decisions and performing all management functions; (ii) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (iii) evaluating the adequacy and results of the Services performed; (iv) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities and (v) accepting responsibility for the results of the Services.

e)   Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by Client and its representatives will be complete and accurate to the best of Client's knowledge. Deloitte Tax may use information and data furnished by others at the direction of Client; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any financial transaction implemented from Services and will not assume any responsibility for any financial reporting with respect to the Services provided hereunder. Client shall be responsible for all financial information and statements provided with respect to any Services performed hereunder. Deloitte Tax shall have no responsibility to address any legal

2

matters or questions of law, other than tax law in connection with the tax Services provided hereunder.

3. **Compensation.** For the Services provided by Deloitte Tax with respect to any Work Order or otherwise pursuant to this Agreement, Client shall compensate Deloitte Tax in accordance with the rate schedule attached hereto as Exhibit B, unless otherwise agreed pursuant to the terms of such Work Order or as provided in Exhibit C.

4. **Expenses.**

   a) Client shall reimburse Deloitte Tax for all reasonable expenses incurred by Deloitte Tax in performing the Services (including, without limitation, all reasonable travel, meal, lodging, and mileage expenses) in accordance with Client's billing requirements attached hereto as Exhibit C and which may change from time to time; provided that Deloitte Tax shall be given advance written notice of changes to such billing requirements, such billing requirement changes to be deemed acceptable by Deloitte Tax unless rejected by Deloitte Tax in writing within ten (10) business days. Notwithstanding the foregoing, if such billing requirements alter Deloitte Tax's obligations under this Agreement or the applicable Work Order or impose additional costs or require Deloitte Tax to commit additional resources under such Work Order, then Deloitte Tax shall only be required to comply with such billing requirements if either an equitable adjustment to compensation or a work-around solution is mutually agreed upon in a duly executed change order to such Work Order. If the parties are unable to reach agreement on such a change order, then either party may terminate the impacted Work Order for convenience.

   b) Each party shall bear sole responsibility for (a) taxes, assessments and other *ad valorem* levies on its owned or leased property, (b) taxes based on its net income, (c) payroll and related taxes attributable to its employees, and (d) franchise and privilege taxes on its business. Except to the extent Client has provided a properly completed exemption certificate or other appropriate documentation, Deloitte Tax shall add to each invoice, if any, and shall collect any sales, use, excise, value-added, gross receipts, services, consumption, withholding, and any similar transaction taxes however designated that are required by law to be collected by Deloitte Tax on fees and other amounts payable to it pursuant to this Agreement or a Work Order (collectively "Transaction Taxes"). Deloitte Tax shall separately state Transaction Taxes for each jurisdiction by tax category on each invoice (e.g., taxable and non-taxable Services shall be separately stated and type of tax identified). Notwithstanding any other provision of this Agreement, Client shall not be responsible for any Transaction Taxes attributable to Services performed outside the United States unless Client approves in a Work Order or otherwise in writing that the Services shall be performed outside the United States.

   c) Client acknowledges that temporary living reimbursements to Deloitte Tax's personnel may be deemed compensatory under federal, state, and local tax laws if such personnel's assignment in a particular location will exceed or has exceeded one

3

year. The parties shall cooperate in good faith to limit the duration of a person's assignment in a particular location to less than one year. If Client's requirements are such that it becomes necessary for a person's services in a particular location to continue for a year or more and, as a result, such person's living expenses are deemed compensatory for tax purposes, then Client shall pay Deloitte Tax the amount of additional compensation provided to Deloitte Tax's personnel to compensate for taxes imposed therefore as reflected on a corresponding invoice.

5. **Payment of Invoices**. Except as otherwise provided in any Work Order, Deloitte Tax shall invoice Client following the end of each monthly period for fees accrued and expenses incurred by Deloitte Tax in performing the Services under such Work Order. Subject to Paragraph 4(a), all such invoices shall conform to Client's billing requirements attached hereto as Exhibit C. Deloitte Tax's invoices shall be payable within sixty (60) days of the receipt of the invoice.

6. **Term.**

   a)  This Agreement shall commence on the date hereof and, unless sooner terminated in accordance with the provisions hereof, shall terminate on December 31, 2012.

   b)  Notwithstanding the provisions of Paragraph 6(a) hereof, this Agreement may be terminated by either party with or without cause at any time upon giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided, however, that this Agreement shall continue to apply to all Work Orders that are in existence at the effective date of such termination and under which the Services have not been completed. In addition, any Work Order may be terminated by Client or Deloitte Tax at any time with or without cause by giving written notice to the other not less than thirty (30) days before the effective date of termination; provided that in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. If any individual Work Order is terminated pursuant to this section, this Agreement shall continue to apply to all Work Orders that have not been terminated. Deloitte Tax may terminate this Agreement, any Work Order or performance of any part of the Services if it determines that (a) a governmental, regulatory, or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board, or the Securities and Exchange Commission), or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change such that an attest client of Deloitte & Touche LLP or an affiliate of such attest client owns, directly or indirectly, 20% or more of the voting stock of the Client or any of its affiliates. Client may terminate this Agreement or any Work Order if Deloitte Tax becomes insolvent, suffers or permits the appointment of a receiver for its business or assets, or becomes subject to any proceeding under any bankruptcy or

insolvency law, whether domestic or foreign, or is wound-up, dissolved or liquidated, voluntarily or otherwise.

c)   The obligations of Deloitte Tax and Client that have been incurred prior to the effective date of termination (including, without limitation, the obligations of Client under Paragraphs 3 and 4 hereof) shall continue in full force and effect notwithstanding the expiration or termination of this Agreement or any Work Order and whether or not an invoice has been rendered with respect thereto.

7.   **Ownership.**

a)   Deloitte Tax has created, acquired, or otherwise has rights in, and may, in connection with the performance of the Services, employ, provide, modify, create, acquire, or otherwise obtain rights in, works of authorship, materials, information and other intellectual property (collectively, the "Deloitte Tax Technology").

b)   Except as provided below, upon full and final payment to Deloitte Tax hereunder, the tangible items specified as deliverables or work product in the Work Order (the "Deliverables"), excluding any Deliverables that are subject to a separate license agreement between Deloitte Tax and Client, will become the property of Client. To the extent that any Deloitte Tax Technology is contained in any of the Deliverables (other than any Deloitte Tax Technology that is subject to a separate license agreement between Deloitte Tax or one of its affiliates and Client), Deloitte Tax hereby grants Client, upon full and final payment to Deloitte Tax hereunder, a royalty-free, fully paid-up, worldwide, nonexclusive license to use such Deloitte Tax Technology in connection with the Deliverables.

c)   The project files (excluding the Deliverables) created by Deloitte Tax under a Work Order are the sole property of Deloitte Tax. Except for the foregoing license grant, Deloitte Tax or its licensors retain all rights in and to all Deloitte Tax Technology. Deloitte Tax does not agree to any terms that may be construed as precluding or limiting in any way its right to (i) provide consulting or other services of any kind or nature whatsoever to any person or entity as Deloitte Tax in its sole discretion deems appropriate or (ii) develop for itself, or for others, materials that are competitive with those produced as a result of the Services, irrespective of their similarity to the Deliverables.

d)   To the extent any Deloitte Tax Technology provided to the Client hereunder is a product (to the extent it constitutes merchandise within the meaning of section 471 of the Internal Revenue Code), such Deloitte Tax Technology is licensed to the Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions herein.  The assignment and license grant in this paragraph 7(d) do not apply to any Deloitte Tax Technology (including any modifications or enhancements thereto or derivative works based thereon) that is subject to a separate license agreement between the Client and a third party, including without limitation, Deloitte Tax Products Company LLC.

5

8.    **Performance of Services; Limitation on Warranties.**

a)    All Services shall be deemed accepted by Client if not rejected, in writing, within thirty (30) days of receipt of the invoice to which the Services relate.  If, during the term hereof, Client believes that there is a breach of the warranty in paragraph 8 b), Client will notify Deloitte Tax, in writing, within thirty (30) days of the receipt of the invoice to which the Services relate that gave rise to the claimed breach, setting forth the nature of such claimed breach.  Deloitte Tax shall promptly investigate such claim of breach and advise Client of Deloitte Tax's planned corrective action, if any.

b)    **THIS IS A SERVICES AGREEMENT.  DELOITTE TAX REPRESENTS AND WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND IN ACCORDANCE WITH REASONABLE STANDARDS OF CARE, SKILL AND DILIGENCE CONSISTENT WITH THE APPLICABLE STANDARDS OF THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS OR THE STATE ACCOUNTANCY BOARD FOR THE STATE WITHIN WHICH SERVICES ARE TO BE PERFORMED. DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY SUCH CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.  NOTHING IN THIS PARAGRAPH SHALL PRECLUDE CLIENT'S PURSUIT OF CLAIMS AS PROVIDED FOR AND LIMITED UNDER THE FOLLOWING PARAGRAPH 9.**

9.    **Limitation on Damages.** Except with respect to its indemnification obligations arising under Paragraph 13, Client agrees that Deloitte Tax, its affiliates, subcontractors, and their respective personnel shall not be liable to Client for any claims, liabilities, or expenses relating to this Agreement, any Work Order or the Services under any Work Order ("Claims") for an aggregate amount in excess of the fees paid by Client to Deloitte Tax under such Work Order, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In no event shall Deloitte Tax, its affiliates, subcontractors, or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this Agreement, any Work Order, or the Services.  In circumstances where all or any portion of the provisions of this Paragraph 9 or Paragraphs 12(a) or 13 are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its affiliates, subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

10. **Cooperation.**

    a)    In addition to Client's responsibilities as set forth in a Work Order, Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information, and personnel of Client.

    b)    Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services.

    c)    Client acknowledges and agrees that Deloitte Tax's performance is dependent on Client's timely and effective satisfaction of Client's responsibilities under this Agreement and any Work Order and timely decisions and approvals of Client in connection with the Services.

11. **Force Majeure.** Deloitte Tax shall not be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

12. **Confidentiality and Internal Use.**

    a)    Notwithstanding anything to the contrary in this Agreement or any Work Order, any provisions regarding confidentiality and use will not apply to the tax treatment and tax structure of any transaction, tax Services or Deliverables (collectively referred to as "Subject Tax Planning Advice"), if any, provided to Client by Deloitte Tax under any Work Order or otherwise pursuant to this Agreement. Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the Subject Tax Planning Advice described in this Agreement, any related Work Order and Services provided pursuant to this Agreement and any related Work Order. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in a Work Order subject to this Agreement. All Services and Deliverables shall be solely for Client's informational purposes and internal use and neither this Agreement nor any Work Order shall create privity between Deloitte Tax and any person or party other than Client ("third party"). Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely in any manner or for any purpose, on the advice, opinions, reports, or other Services or Deliverables of

7

Deloitte Tax. In the event of any unauthorized reliance resulting from Client's disclosure, Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, reasonable costs and reasonable expenses.

b)  To the extent that, in connection with this Agreement or any Work Order, Deloitte Tax (the "receiving party") comes into possession of any proprietary or confidential information of the Client (the "disclosing party"), Deloitte Tax will not disclose such information to any third party without the disclosing party's consent. The disclosing party hereby consents to the receiving party disclosing such information (i) to its affiliates or subcontractors, whether located within or outside of the United States, that are providing services in connection with a Work Order and that have agreed to be bound by confidentiality obligations similar to those in this Paragraph 12(b), (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation pertaining to this Agreement or any Work Order, or (iii) to the extent such information (A) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure in breach hereof, (B) becomes available to the receiving party on a nonconfidential basis from a source other than the disclosing party which the receiving party believes is not prohibited from disclosing such information to the receiving party by obligation to the disclosing party, (C) is known by the receiving party prior to its receipt from the disclosing party without any obligation of confidentiality with respect thereto, or (D) is developed by the receiving party independent of any disclosures of such information made by the disclosing party to the receiving party. Deloitte Tax shall carry out its obligations under this Paragraph 12(b) using at least the same degree of care as it employs in maintaining in confidence its own proprietary and confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge, and ideas.

13.  **Indemnification.**

a)  **Client Indemnification.** To the fullest extent permitted by law, Deloitte Tax must defend, indemnify and hold harmless Client, its Affiliates and their respective present, former, and future shareholders, personnel, successors and assigns (collectively, "**Indemnified Parties**") against all damages, losses, costs, expenses (including attorneys' fees, costs and expenses) and other liabilities arising out of any claims, demands, suits, or causes of action by third parties (collectively, "**Claims**"), arising out of or in connection with this Agreement which result or are claimed to result in whole or in part from: (i) bodily injury, death or physical damage to real or tangible personal property, to the extent directly and proximately caused by the negligence or wilful misconduct of Deloitte Tax while engaged in

8

the performance of Services hereunder or (ii) the violation of any intellectual property rights of third parties which are directly and proximately caused by the negligence or willful misconduct of Deloitte Tax, its subcontractors or their personnel except to the extent that such violation arises from, or could have been avoided except for (a) the Client's modification of the Deliverable or use thereof in a manner not contemplated by this Agreement, (b) the failure of the Client to use any corrections or modifications made available by Deloitte Tax, (c) information, materials, instructions or specifications provided by or on behalf of the Client, or (d) the Client's distribution, marketing or use for the benefit of third parties of the Deliverables, or (e) the use of the Deliverable in combination with any product or data not provided by Deloitte Tax. If any such work product, or any portion thereof, is found by final, non-appealable order of a court of competent jurisdiction to be such a violation, Deloitte Tax, at its option and expense, shall have the right to (x) procure for the Client the continued use of such work product, (y) replace such work product with non-infringing work product, or (z) modify such work product so it becomes non-infringing; provided that, if (y) or (z) is the option chosen by Deloitte Tax, the replacement or modified work product is capable of performing substantially the same function. If there is also fault on the part of the Indemnified Party, or any entity or individual indemnified hereunder or any entity or individual acting on such indemnified party's behalf, the foregoing indemnification shall be on a comparative fault basis. The foregoing provisions of this paragraph constitute the sole and exclusive remedy of the Client, and the sole and exclusive obligation of Deloitte Tax, relating to a claim that Deloitte Tax's work product infringes any patent, copyright or other intellectual property right of a third party.

b)    **Deloitte Tax Indemnification.** Client shall indemnify and hold harmless Deloitte Tax, its subcontractors, and their respective personnel from all claims, liabilities, and expenses attributable to claims of third parties relating to this Agreement, any Work Order, or the Services under any Work Order, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax, its subcontractors, and their respective personnel.

14. **Insurance.** Deloitte Tax will, at its own expense, obtain and maintain the following insurance:

a)    Commercial General Liability, with coverage including, but not limited to, premises/operations, contractual liability, personal and advertising injury, and products/completed operations liabilities, with limits of at least $3,000,000 per occurrence. Client shall be included as an additional insured, and the policy shall contain a standard "separation of Insureds" provision or an endorsement for cross-liability coverage. The policy shall be endorsed with forms CG 20 10 07 04 and CG 20 37 07 04 or their equivalent, to state that coverage is primary, and non-contributory with other available coverage as respects Deloitte Tax's activities hereunder. Except where prohibited by law, the insurance carrier shall waive all rights of subrogation that the insurer may have against Client and the Indemnified

9

Parties. Deloitte Tax warrants that its subcontractors will maintain Commercial General Liability insurance. Limits of liability requirements may be satisfied by a combination of Commercial General Liability and Umbrella Excess Liability policies.

b)  Workers' Compensation insurance, including coverage for all costs, benefits, and liabilities under Workers' Compensation and similar laws which may accrue in favor of any employee of Deloitte Tax, for all states in which the Deloitte Tax will perform services for Client, and Employer's Liability insurance with limits of liability of at least $100,000 per accident or disease and $500,000 aggregate by disease. Except where prohibited by law, the insurance carrier shall waive all rights of subrogation that the insurer may have against Client and the Indemnified Parties. Such insurance shall contain an Alternate Employer Endorsement including Client as an alternate employer. Deloitte Tax will request that its unaffiliated subcontractors maintain Workers' Compensation and Employer's Liability insurance. Deloitte Tax may self-insure Workers' Compensation only in states where the governing state bureau has issued to the Deloitte Tax a qualified self-insurance license for Workers' Compensation.

c)  Automobile Liability insurance for owned, non-owned and hired vehicles, with limits of at least $1,000,000 per occurrence for bodily injury and property damage. If no vehicles are owned or leased, the Commercial General Liability insurance shall be extended to provide insurance for non-owned and hired automobiles in lieu of separate Automobile Liability insurance. Limits of liability requirements may be satisfied by a combination of Automobile Liability and Umbrella Excess Liability policies.

d)  Professional Liability or Errors & Omissions Insurance with limits of not less than $3,000,000 per claim and annual aggregate, covering all acts, errors, omissions, negligence, infringement of intellectual property (except patent and trade secret) and network risks (including coverage for unauthorized access, failure of security, breach of privacy perils, as well at notification costs and regulatory defense) in the performance of services for Client or on behalf of Client hereunder. Such insurance shall be maintained in force at all times during the term of the agreement. Client shall be given at least 30 days notice of the cancellation of the aforementioned insurance.

15. **Waiver of Jury Trial. DELOITTE TAX AND CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS AGREEMENT, ANY WORK ORDER, OR THE SERVICES UNDER ANY WORK ORDER.**

16. **Independent Contractor**. It is understood and agreed that each of Deloitte Tax and Client is an independent contractor and that neither of them is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner or representative.

Neither Deloitte Tax nor Client shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

17.  **Survival and Interpretation.** All Paragraphs herein relating to compensation, expenses, payment of invoices, ownership, limitation on warranties, limitation on actions, limitation on damages, confidentiality and internal use, indemnification, waiver of jury trial, survival, binding nature, assignment and subcontracting, non-solicitation, interpretation, governing law jurisdiction and venue shall survive the expiration or termination of this Agreement or a Work Order. For purposes of Paragraph 9 of this Agreement only, "Deloitte Tax" shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. **The provisions of Paragraphs 8, 9, 12(a), 13, 14, 15, 17, 25, 26 and 30 shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

18.  **Binding Nature, Assignment and Subcontracting.** This Agreement and each Work Order shall be binding on the respective parties thereto and their respective permitted successors and assigns; provided, however, that, except as provided below, neither Deloitte Tax nor Client may assign, transfer, or delegate any of its rights or obligations under this Agreement or any Work Order (including, without limitation, interests or claims relating to this Agreement or any Work Order) without the prior written consent of the other. Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations under this Agreement or any Work Order to any affiliate or related entity, whether located within or outside of the United States to the extent such assignee or subcontractor agrees to be bound by the terms and conditions similar to those of this Agreement. Deloitte Tax hereby consents to Client assigning or subcontracting any of Client's rights or obligations under this Agreement or any Work Order to any affiliate or related entity. Services performed hereunder by Deloitte Tax's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax's personnel, unless otherwise agreed.

19.  **Notices.** Whenever under this Agreement or any Work Order notice is required or permitted to be given, such notice shall be in writing and effective upon receipt. All notices shall be hand delivered, sent by a reputable commercial overnight courier, or mailed by registered or certified United States mail, return receipt requested, postage prepaid, and addressed to the addressee at its address set forth below.

To Deloitte Tax:

Deloitte Tax LLP
111 S. Wacker Drive
Chicago, IL 60606
Attn: Tom Hermanson

With a copy to:
Deloitte Tax LLP

555 12th Street N.W.
Suite 500
Washington DC 20005
Attn: Associate General Counsel - Tax

To Client:

Sears Holdings Management Corporation
3333 Beverly Road, B2-131B
Hoffman Estates, IL 60179
Attention: Vice President Tax

A party may change its address for notice by giving prior written notice of the new address in conformity with the foregoing and the date upon which such new address will become effective.

20.  **Entire Agreement.** This Agreement, together with the pertinent Work Order, constitutes the entire agreement with respect to the subject matter hereof and supersedes all other oral or written representations, understandings, or agreements relating to the subject matter hereof.

21.  **Severability.** If any provision of this Agreement or any Work Order is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permitted the intent of Deloitte Tax and Client set forth in this Agreement or such Work Order.

22.  **Waivers and Amendments.**

No delay or omission by Deloitte Tax or Client in enforcing its rights or remedies under this Agreement or any Work Order shall impair such right or remedy or be deemed to be a waiver thereof. No waiver of any right or remedy under this Agreement or any Work Order with respect to any occurrence or event on one occasion shall be deemed a waiver of such right or remedy with respect to such occurrence or event on any other occasion. No amendment or waiver of this Agreement or any Work Order shall be valid unless in writing and signed by the parties thereto. From time to time upon mutual written agreement of the parties, services other than tax or tax-related professional services may be provided under a Work Order.

23.  **Non-solicitation.**

During the term of a Work Order and for a period of one (1) year thereafter, each of Deloitte Tax and Client agrees that its personnel (in their capacity as such) who had direct and substantive contact in the course of the performance of Services under such Work Order with personnel of the other shall not, without the other's consent, directly or indirectly

12

employ, solicit, engage or retain the services of such personnel of the other. This provision shall not restrict the right of either Deloitte Tax or Client to solicit or recruit generally in the media.

24. **Paragraph Headings**.   The paragraph headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation hereof.

25. **Governing Law.** This Agreement and each Work Order (and each Exhibit annexed hereto and thereto), and all matters relating to this Agreement and each Work Order (and each Exhibit annexed hereto and thereto), shall be governed by, and construed in accordance with, the laws of the State of Illinois (without giving effect to the choice of law principles thereof).

26. **Jurisdiction and Venue; Deloitte Tax's Affiliated and Related Entities.**   Any action based on or arising out of this engagement or the Services provided or to be provided hereunder shall be brought and maintained exclusively in any court of the State of Illinois or any federal court of the United States, in each case located in Cook County, the State of Illinois. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor, shall have any liability hereunder to the Client or any other person and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax in connection with this Agreement or any Work Order. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of this Agreement, including, without limitation, the limitation on liability and indemnification provisions hereof, and the agreements and undertakings of Client contained in any Work Order. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings.

27. **Accountant / Client Privilege – IRC §7525.**   Client should be aware that certain information discussed with members of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege and Client must notify Deloitte Tax if Client wishes to invoke the confidentiality privilege and Deloitte Tax will cooperate with Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require Client to provide Deloitte Tax in advance with written authority to make such

disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, Client should be aware that the confidentiality privilege under §7525 of the IRC will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify Client and will follow Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. Client agrees to hold Deloitte Tax harmless from and also assumes responsibility for any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of Client's assertion of the confidentiality privilege or Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of Client.

28. **Certain Tax Disclosures and Reporting**. In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in a Work Order as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Agreement and any Work Order executed pursuant to this Agreement and these terms. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

29. **Publicity.** Deloitte Tax will not publicly reveal the existence of this Agreement or disclose that Client is a client of Deloitte Tax in any advertising, promotional activities, sales presentations or publicity releases without the Client's prior written consent.

30. **Audits.**  With fifteen (15) days prior written notice, Deloitte Tax shall permit Client personnel to inspect Deloitte Tax's books of account and records relating to billing and invoices in connection with the Services at any time during normal business hours to the extent necessary to determine compliance with the invoices received and payments made hereunder for Services; provided, however, that such books and records may be redacted by their holder to protect any inherent personal identifying information. Deloitte Tax shall keep and maintain accurate books and records relating to billing and invoices. Subject to the foregoing, Client may review and make copies of such books and records at any reasonable

14

time. Deloitte Tax shall retain such books and records for at least five years plus the current year from the date of creation or until any on-going audits have been settled, if longer. Audits may be conducted by Client or its third party designee (who must be approved in writing in advance by Deloitte Tax). Client and Deloitte Tax will each bear their own costs associated with the audits.

**IN WITNESS WHEREOF,** Deloitte Tax and Client have caused this Agreement to be executed and delivered by their respective duly authorized representatives as of the date first set forth above.

**DELOITTE TAX LLP**

By: _____

Printed
Name: _Thomas C. Hermanson_

Title: _Director_

Date: _2-9-10_

**SEARS HOLDINGS MANAGEMENT CORPORATION,**
**on behalf of itself and its Affiliates**

By: _____

Printed
Name: _James L. Misplon_

Title: _VP Tax_

Date: _2/16/10_

15

**EXHIBIT A**

**WORK ORDER**

Work Order Number: _____ Authorized Start Date: _____

This Work Order incorporates the terms and conditions of the Master Tax Services Agreement between Deloitte Tax LLP ("Deloitte Tax") and Sears Holdings Management Corporation ("Client") dated January 29, 2010 (the "Agreement").

**Services Description:**

**Estimated Timing of Services and Deliverables:**

**Fees and Expenses:**

**Client Responsibilities:**

**Other Terms (including changes in provisions of the Agreement):**

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Work Order, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly for the purpose of providing Services under this Work Order or in connection with the preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more

## EXHIBIT A

limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

**Sears Holdings Management Corporation**    **Deloitte Tax LLP**

By:_____    By:_____

Printed
Name: _____    Printed
Name: _____

Title: _____    Title: _____

Date: _____    Date: _____

**EXHIBIT B**

**RATES**

| Personnel Level | Deloitte Tax |
| --- | --- |
| Washington National Tax Partner/Principal/Director | 625 |
| Local Office Partner/Principal/Director | 525 |
| Senior Manager | 400 |
| Manager | 320 |
| Senior | 210 |
| Associate | 185 |

**Exhibit C**

**Sears Holdings Management Corporation**

3333 Beverly Road – B2-131B

Hoffman Estates, IL 60179

**BILLING REQUIREMENTS**

These Billing Requirements shall supersede any and all prior billing arrangements and practices between Sears Holdings Corporation, Sears Holdings Management Corporation, Sears, Roebuck and Co., Kmart Corp. or any subsidiary or affiliate of the foregoing that is directly or indirectly controlled by Sears Holdings Corporation (collectively, "Sears") and Deloitte Tax LLP ("Deloitte Tax").

1. **Invoicing:**

   a. **Billing Statements:** Billing statements should be submitted monthly to the following location:

      Sears Holdings Management Corporation
      3333 Beverly Road, B2-131B
      Hoffman Estates, IL 60179
      Attention: Vice President Tax

      Failure to send the original invoices to this location will delay payment. Each invoice should provide sufficient detail to identify each of the matters that are the subject of the invoice.

   b. **90-Day Rule:** Sears will not pay for services rendered more than 90 days prior to the date that an invoice is submitted for payment ("Late Charges"). If Deloitte Tax intends to seek payment for Late Charges, it must obtain pre-approval for such charges from Sears prior to submitting the invoice. If Deloitte Tax submits an invoice containing Late Charges without obtaining pre-approval from Sears, **the invoice will be rejected in total** and Deloitte Tax shall submit a revised invoice with the Late Charges removed. Under no circumstances will Late Charges be paid by Sears if they are submitted without obtaining the pre-approval of Sears.

   c. **Invoice Format Requirements:**

    i.  Unless otherwise agreed to separately in a Work Order, individual projects identified on each invoice should provide a summary description of the project activities, identify the professional performing the activity, and the amount of hours worked by each professional.

    ii.  Costs and expenses should be itemized by activity, with any unusual expenses to be followed by an indication as to why the expense was incurred.

d.  **Final Invoices and Post Closing Matters:**  Except where unusual circumstances exist, Sears expects to receive a final invoice for a matter within forty-five (45) days after work on the matter is completed (e.g., the date a project is completed). However, Sears will accept a final invoice for costs as late as ninety (90) days after the costs were incurred. You should not bill for any additional fees or costs after submission of the final invoice without the pre-approval of Sears.

e.  **Unpaid Balances:** Do not add any unpaid balances to current charges on an invoice. Any invoices representing unpaid balances must be resubmitted, excluding any claimed interest charges. Inquiries regarding any unpaid balances should be sent to:

> Sears Holdings Management Corporation
> 3333 Beverly Road, B2-131B
> Hoffman Estates, IL 60179
> Attention:  Vice President Tax

f.  **Overpayments**: Overpayments are to be refunded immediately to Sears and NOT applied to current charges. If it is necessary to return a check, please return it to:

> Sears Holdings Management Corporation
> 3333 Beverly Road, B2-131B
> Hoffman Estates, IL 60179
> Attention:  Vice President Tax

The refund should be accompanied by a letter identifying the check and the invoice number.

g.  **Sears Receivables:** Sears should be advised promptly of all moneys to which Sears becomes entitled during the course of the engagement.

h.  **Payment Terms:**  Sears will use payment terms of net 60 days from the date of the invoice.

2.  **Staffing and Rates:**

a. **General Staffing Guidelines:** Sears expects Deloitte Tax to staff matters with as few timekeepers as possible. At the outset of Deloitte Tax's engagement on each matter, Deloitte Tax shall advise Sears via email of Deloitte Tax timekeepers assigned to the matter, including the timekeepers' names, titles and Sears discounted hourly billing rates.

b. **Requests for Rate Increases:** If Deloitte Tax desires to increase its rates, Deloitte Tax must obtain approval for the new rates from the Sears Vice President Tax prior to adding the rates to invoices submitted to Sears. Requests to increase rates must be made in writing to the Sears Vice President Tax and contain a revised list (similar to the format provided in Exhibit B) of the timekeepers for whom an increase is sought. Rates should never increase more than one time in each twelve (12)-month period. **Invoices submitted to Sears containing rate increases for timekeepers that have not been expressly approved by Sears will be rejected in total** and Deloitte Tax shall submit a revised invoice with the approved rate.

3. **Travel and Entertainment:** Deloitte Tax professionals that require travel and lodging have the responsibility to ensure that their travel expenses are appropriate, reasonable, and documented. All expenses will be reviewed and are subject to Sears' approval. All supporting detail required herein (i.e., receipts, ticket stubs, etc.) must be retained by Deloitte Tax for a period of up to 3 years following the date of the expense and be made available for review by Sears upon request.

| Reimbursable | Not Reimbursable |
|---|---|
| **Air Travel** | |
| • Economy Class travel<br>• Business Class travel over 12 flight hours | • First Class Travel<br>• Airline upgrade charges<br>• Airline offerings, i.e. purchase miles, seats, etc. |
| **Lodging** | |
| • Hotel expense and taxes at moderately-priced hotels, such as Hampton Inn, Holiday Inn Express, Fairfield Inn | • Luxury/premium hotel expenses<br>• Personal incidentals i.e. in-room movies<br>• No show charges |
| **Ground Transportation** | |
| • Taxi or shared limousine to/from the airport<br>• Compact rental car is required unless the size of group requires a larger vehicle<br>• Vehicle damage insurance and liability insurance on **international** rentals only | • Private car limousine or limousine service rented on an hourly or hourly-plus basis<br>• Luxury/Premium rental cars<br>• Rental car insurance on domestic rentals<br>• Convenience refueling when returning rental car |

| | |
|---|---|
| • Rental car refueling prior to returning the vehicle<br>• Mileage allowance beyond normal daily commute will be reimbursed at the current Sears rate | • Mileage for normal daily commute |

| **Meals** | |
|---|---|
| • Meals while on overnight travel status<br>• Meal expenses up to $30 per day plus gratuity<br>• Meal expenses up to $50 per day plus gratuity in Boston, Chicago (downtown only), Honolulu, Los Angeles, New York, San Diego, San Francisco, Seattle, Washington, D.C., all international destinations | • Meals for day trips<br>• Meals in excess of daily limits<br>• Meals for local staff |

| **Miscellaneous** | |
|---|---|
| • Airport parking – Long term<br>• Sears business related telephone expenses<br>• Internet service fees (e.g., hotel/airport wireless, Hot Spot) required for business – up to $10 per day | • Personal travel insurance<br>• Personal entertainment i.e. movies<br>• Health club<br>• Theft or loss of personal property<br>• Laundry or dry cleaning<br>• Valet service<br>• Any unreasonable, unaccounted for, or unexplained expenses |

a. **Reservation Process:** Sears may offer the use of their online travel reservation system, depending on variables such as the amount of travel on Sears business, type of travel required, etc. This will be determined on an individual service provider basis.

b. **Air Transportation**

- When possible, travelers should plan business trips at least 14 days in advance to secure reduced fares.
- Travelers are strongly encouraged to accept the lowest priced flight available within a 2 hour window. This includes alternate airports, connections, one-stop flights, etc. If lowest fares are not utilized, reimbursement may be subject to further review, resulting in partial reimbursement.
- When non-refundable tickets are the least expensive airfare, they should be utilized.
- If a trip is cancelled or postponed, airline tickets must be cancelled before the time of departure to the extent possible.
- Additional airfares, and other fees due to changes, will be reimbursed only if the change was requested by Sears, and the additional expense was approved in advance by Sears.

- Only a reasonable number of travelers will be reimbursed. This is subject to pre-approval.

c.  **Ground Transportation**

- Travelers should use courtesy or other scheduled services provided by the hotel (if available) for travel between the hotel and airport.
- Economy or compact cars should be rented unless the size of the group makes them impractical. Rental cars should be shared whenever feasible.

d.  **Lodging**

- If a reserved room will not be used, it is the traveler's responsibility to notify the hotel directly, prior to the hotel's cancellation deadline. Failure to cancel a hotel reservation will result in a "no-show" charge that will not be reimbursed.
- Special rates have been negotiated with several hotels:

| Hotel | City | Telephone | Breakfast | Shuttle to Office | Free Internet |
|---|---|---|---|---|---|
| Hampton Inn | Elgin | (847) 931-1940 | yes | no | yes |
| Marriott Town Place Suites (extended stay rates available) | West Dundee | (847) 608-6320 | yes | yes | yes |
| Comfort Suites | Elgin | (847) 836-9500 | yes | yes | yes |
| Holiday Inn & Suites | Elgin | (847) 488-9000 | yes | yes | yes |
| Courtyard by Marriott | West Dundee | (847) 429-0300 | no | yes | yes |
| Holiday Inn Hoffman Estates/Schaumburg | Schaumburg | (847) 310-0500 | yes | yes | yes |
| Drury Inn & Suites – Troy, MI  575 W. Big Beaver Rd. | Troy, MI | (248) 528-3330 | yes | yes | yes |
| Holiday Inn Detroit  2537 Rochester Court | Troy, MI | (248) 689-7500 | no | no | yes |
| Radisson Hotel Detroit  39475 Woodward Ave. | Bloomfield Hills, MI | (248) 644-1400 | no | yes | yes |

e. **Meals:** Meal expense limits are as follows:

   i. $30 per day, plus gratuity

      o Individual meal limits of $5 breakfast, $9 lunch and $16 dinner apply when the travel schedule includes partial travel days

   ii. Exceptions: $50 per day, plus gratuity – Boston, Chicago (Downtown only), Honolulu, Los Angeles, New York, San Diego, San Francisco, Seattle, Washington DC, and International destinations, including Puerto Rico and Canada

      o Individual meal limits of $7 breakfast, $13 lunch and $30 dinner apply when the travel schedule includes partial travel days

f. **Miscellaneous:** Miscellaneous charges are the responsibility of Deloitte Tax and will NOT be reimbursed. Below is a partial listing of some miscellaneous expenses that are not reimbursable.

| | |
|---|---|
| - Laundry or dry cleaning | - Movies |
| - Excessive faxes | - Valet service |
| - Non-business related shipping | - Traveler check fees |
| - Child care or pet care fees | - House sitting fees |
| - Non-business related miscellaneous | - Health club |
| - Mini-bar expenses | - Personal travel insurance |
| - Theft of loss of personal property | |

4. **Overhead Fees:** Unless pre-approved by Sears, Sears will not pay for Deloitte Tax timekeeper fees incurred (1) to open or close files and (2) for preparation of invoices or budgets. **Invoices submitted to Sears that contain unapproved charges for any of the foregoing will be rejected in total** and Deloitte Tax shall submit a revised invoice with unapproved charges removed.

5. **Miscellaneous Costs and Expenses:** Sears will reimburse Deloitte Tax only for actual costs and expenses related to matters assigned to Deloitte Tax, subject to the limitations and exceptions set forth below:

a. **Costs and Expenses Excluding Overhead:** Except as otherwise specified in these Billing Requirements, Sears shall reimburse the actual cost, excluding overhead or profit, for reasonable out-of-pocket expenses incurred by Deloitte Tax in performing services. Deloitte Tax shall provide a copy of receipts or other documentation of expenses for amounts of $25 or more and copies of invoices upon request.

b.   **Photocopying:** Sears will not pay for routine photocopying. Photocopying jobs that will exceed 1000 pages must be pre-approved by Sears.

c.   **Facsimile Transmissions:** Sears will not pay for outbound facsimile charges exceeding $.25 per page. Deloitte Tax's invoice shall itemize the number of pages and reflect the date of each facsimile transmission.

d.   **Overtime:** Sears will not pay overtime except under extraordinary circumstances and then only with pre-approval by Sears.

e.   **Meals:** Sears will not pay for meals, food or refreshments for Deloitte Tax employees unless pre-approved by Sears.

f.   **Mail and Overnight Couriers/Postage:** Sears will not pay for overnight express delivery services unless a compelling reason exists. When used, Deloitte Tax should always use the most cost efficient overnight couriers. Sears will not pay for routine postage.

g.   **Cellular Telephone Charges:** Sears will not pay for cellular calls.

h.   **Electronic Research:** Sears will pay for online research only if Deloitte Tax advises Sears in advance that it accesses online research services pursuant to a time-based fee arrangement, i.e., not a fixed or flat fee arrangement.

**<u>Exhibit B</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
In re                                                            :          **Chapter 11**
:
**SEARS HOLDINGS CORPORATION**, *et al.*,      :          **Case No. 18-23538 (RDD)**
:
Debtors.[1]                                                    :          **(Jointly Administered)**
:
-----------------------------------------------------------------x

### ORDER AUTHORIZING THE DEBTORS TO RETAIN DELOITTE TAX LLP AS TAX SERVICES PROVIDER FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the application, dated [__] (ECF No. [__]) (the "**Application**")[2] of Sears

Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of

the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i)

authorizing the Debtors to retain and employ Deloitte Tax LLP ("**Deloitte Tax**") to provide tax

services for the Debtors, effective as of the Commencement Date, and upon the declaration of

Thomas C. Hermanson, a managing director at Deloitte Tax, annexed to the Application as

**Exhibit A** (the "**Hermanson Declaration**"); and (ii) granting related relief, all as more fully set

forth in the Application; and the Court being satisfied, based on the representations made in the

Application and the Hermanson Declaration, that Deloitte Tax is "disinterested" as such term

is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that

Deloitte Tax neither represents nor holds an interest adverse to the Debtors' estates with

respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide

the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and

1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012

(Preska, C.J.); and consideration of the Application and the requested relief being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the

Application having been provided in accordance with the Amended Case Management Order;

such notice having been adequate and appropriate under the circumstances, and it appearing that

no other or further notice need be provided; and the Court having held a hearing to consider

the relief requested in the Application on January 18, 2019 (the "**Hearing**"); and upon the record

of the Hearing, and upon all of the proceedings had before the Court; and the Court having

determined that the legal and factual bases set forth in the Application establish just cause for the

relief granted herein; and is in the best interests of the Debtors, their

2

estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Application is granted as provided herein.

2.      In accordance with section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Deloitte Tax as the Debtors' tax services provider in accordance with the terms and conditions set forth in the MSA and the Work Orders, effective *nunc pro tunc* to the Commencement Date, and to pay fees and reimburse expenses to Deloitte Tax on the terms set forth in the Work Orders as modified by this Order.

3.      The terms and conditions of the MSA and the Work Orders are reasonable and, as modified by this Order, are approved.

4.      Deloitte Tax shall use reasonable efforts to coordinate with the Debtors to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

5.      Deloitte Tax shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, and any applicable orders of this Court (including the Interim Compensation Order).

6.      Deloitte Tax shall include in its fee applications, among other things, time records setting forth a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

3

7.       Deloitte Tax shall provide reasonable notice to the Debtors, the Office of the United States Trustee, and any statutory committee appointed in these chapter 11 cases of any increase of Deloitte Tax's hourly rates from those set forth in the Hermanson Declaration, and such notice will be filed on the docket on these cases.

8.       The Indemnification Provisions set forth in the MSA, under which the Work Orders are issued, are approved subject to the following modifications with respect to services performed thereunder after the Commencement Date and prior to the effective date of any chapter 11 plan of the Debtors:

a.       All requests for payment of indemnity, contribution, or otherwise pursuant to the Indemnification Provisions shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Provisions, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and other orders of this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the breach of contract, gross negligence, willful misconduct, or fraud of any indemnified parties;

b.       In no event shall any indemnified parties be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's breach of contract, gross negligence, willful misconduct, or fraud of any Indemnified Parties;

c.       In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte Tax's own interim and final fee applications, and such invoices and time records shall be subject to the applicable United States Trustee guidelines and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under

4

section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

d.   Any provision of the MSA or the Work Orders relating to expense policies and reimbursements shall be subject to the applicable guidelines set forth in the Local Rules and general orders of this Court.

9.   The MSA is further modified with respect to the services provided thereunder from the Commencement Date through the effective date of any chapter 11 plan as follows:

a.   The second sentence of "Limitation on Damages" provision of the MSA shall be deemed deleted.

b.   The first sentence of "Independent Contractor" provision of the MSA shall be deleted and replaced with the following:

Nothing contained in this Agreement shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services provided under the Agreement. It is understood and agreed that each of Deloitte Tax and Client is an independent contractor and that neither of them is, nor shall be considered to be, the other's agent, distributor, partner, joint venture, co-owner or representative.

10.   To the extent that there may be any inconsistency between the terms of the Application, the MSA, the Work Orders, the Hermanson Declaration, and the express terms of this Order, the terms of this Order shall govern.

11.   The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

12.   Notwithstanding anything to the contrary in the MSA, under which the Work Orders are issued, during the pendency of these chapter 11 cases, the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order. Any provision of the MSA that provides for jurisdiction in a different court shall not be applicable unless this Court lacks or declines to take

5

jurisdiction pursuant to the previous sentence.

Dated: _____, 2019
      White Plains, New York

                                _____
                                THE HONORABLE ROBERT D. DRAIN
                                UNITED STATES BANKRUPTCY JUDGE