**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br>(Jointly Administered)<br><br>Re: Docket No. 1444<br><br>Objection Deadline: January 7, 2019, at 4:00 p.m. (ET)<br>Hearing Date: No Hearing Set |

**LIMITED OBJECTION OF 1 IMESON PARK BLVD, LLC TO NOTICE OF INTENT TO CONDUCT STORE CLOSING SALES AND REQUEST FOR ADEQUATE PROTECTION**

1 Imeson Park Blvd, LLC ("Landlord"),[2] the lessor of debtor-in-possession Sears Holdings Corporation's ("Tenant") approximate 735,000 square foot distribution center/warehouse premises located at 1 Imeson Park Boulevard, Jacksonville, Florida (the "Premises"), hereby files its limited objection (the "Objection") to the *Debtors' Notice of Intent to*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Landlord is affiliated with LBA Realty LLC. Affiliates of LBA Realty LLC, including Landlord, are the lessors of several of Debtors' distribution centers, located throughout the United States.

*Conduct Store Closing Sales* (Docket No. 1444) (the "Notice of Intent"). In support of the Objection, the Landlord respectfully states as follows:

## PRELIMINARY STATEMENT

1. On October 15, 2018, the Debtors filed their *Motion for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* [Docket No. 23] (the "Motion"). The Motion sought to establish "procedures to close any *stores* that [the Debtors] determine, in their business judgment, should be closed in order to preserve liquidity and maximize the value of their estates." Motion, ¶ 3 (emphasis added). While the Debtors did not define the term "stores" in the Motion, the usual definition of a "store" – a retail establishment selling goods to the general public – appears to have been intended; not sales of personal property in a non-retail environment. Consistent with this ordinary definition of a "store," neither the Motion nor the original draft proposed order attached to the Motion provided for the application of the Store Closing Procedures[3] to the Debtors' distributions centers.[4]

2. While the Debtors' did not expressly request the application of the Store Closing Procedures to the Debtors' distribution centers in the original Motion filed with this Court, the Debtors' Notice of Intent seeks to apply the Store Closing Procedure originally proposed for retail stores, to the Premises; an approximately 735,000 square foot non-retail distribution center/warehouse. While Landlord does not object to the Debtors' efforts to liquidate their property located on the Premises generally, the current Store Closing Procedures do not adequately address

---

[3]  Capitalized terms not otherwise defined herein are used in the same sense and with the same meaning as in the Motion.

[4]  While the Motion did not request that the Store Closing Procedures apply to the Debtors' distribution centers, the Debtors filed a revised draft proposed order which amended the definition of Closing Stores to include distribution centers. *See* Docket No. 293, pg. 8 of 62. The *Interim Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* [Docket No. 337] ultimately entered by this Court on October 26, 2018 (the "Interim Order"), included the broader definition of Closing Stores that was not included in the Motion.

the unique issues that could arise in the context of a public "warehouse sale" in a large distribution center/warehouse.  For example, among other issues, the Store Closing Procedures do not adequately address issues related to: (i) public access to areas of the Premises that may have potentially dangerous equipment or machinery, or where hazardous substances may be stored; (ii) compliance with applicable governmental regulations that may impact a liquidation sale at the Premises; (iii) the potential harm to Landlord and the Premises from public access to the Premises and the removal of property from the Premises; (iv) hours of sale and signage plans for a distribution center/warehouse sale in a facility which is not usually open to the general public; (v) provision for parking for the general public in a non-retail facility; and (vi) augmentation of inventory, if any.  While Landlord understands the Debtors' needs to liquidate their property, the Debtors' sales should not be conducted at the expense of the Landlord's rights to due process and fundamental fairness and the bargained-for contractual expectations of the parties.  Landlord is entitled to adequate protection of its interests under section 363(e) of the Bankruptcy Code.  Moreover, Landlord must be protected and held harmless against any harm caused by the Debtors, the public, and third parties in connection with the sale and removal of the Debtors' property from the Premises.

## BACKGROUND

3.     Landlord is the owner of the Premises.  Pursuant to a written Lease dated April 5, 2018 (the "Lease"), Landlord leased the Premises to Tenant for a 10 year term subject to certain early termination rights in favor of Landlord.  In accordance with the express terms of the Lease, subject to the limitation below, the Premises are to be used "solely for the operation of a warehouse and distribution facility . . . ." Lease, ¶ 6(a).  The Lease does, however, give Sears certain limited rights to conduct a "going out of business sale" in the Premises within 120 days of the expiration or earlier termination of the Lease.  Section 5(b) of the Lease provides:

3

>Notwithstanding any other provision herein to the contrary, but subject to the provisions here, Sears shall have the right to conduct a "going out of business sale" to be completed during the one hundred twenty (120) day period prior to the expiration of the Term or earlier termination of this Lease as provided herein and to cease store operations and to remove Sears' Property and prepare for the turnover of possession of the Premises to Landlord pursuant to the provisions of this Lease. With respect to a Sears "going out of business sale" and during the one hundred twenty (120) day period provided above, (i) Sears shall not place or allow the placement of any signage (including, but not limited to, banners, posters, placards and/or stand-alone signs, collectively "GOB Signage") on the exterior of the improvements (or on the interior of the improvements if such GOB Signage is visible from the exterior of the improvements) that contains the words/phrases "going out of business", "everything must go", "store closing", "liquidation sale", "complete liquidation" or phrases of similar wording and/or intent; provided that Sears may place GOB Signage with the words "Sears Store Closing" or "Sears Store Closing Sale" on the exterior of the improvements (or on the interior of the improvements which is visible from the exterior of the improvements) so long as such GOB Signage is professionally prepared and installed, and of a reasonable size; (ii) Sears' GOB Signage may include discount pricing information; and (iii) Sears shall not place or allow the placement of any GOB Signage on the exterior surface of the improvements (except as provided above) or within the common areas of the Property. Lease, ¶ 5(b).

4. On October 15, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On November 1, 2018, the Debtors filed the Motion pursuant to which they sought to establish "procedures to close any stores that [the Debtors] determine, in their business judgment, should be closed in order to preserve liquidity and maximize the value of their estates." Notably, the Motion did not originally define the term "store," presumably intending the common definition of a retail establishment selling items to the general public.

4

6. The Court entered its Interim Order on the Motion on October 26, 2018, which applied the Store Closing Procedures to the Initial Closing Stores. The Interim Order also modified the definition of Closing Stores from the Original Motion to include the Debtors' distribution centers. Interim Order, pg. 2. On December 28, 2018, the Debtors filed their Notice of Intent seeking to apply the Interim Order to, among other things, the liquidation of property located at the Premises.

## ARGUMENT

7. While Landlord does not generally object to the Debtors' efforts to maximize the value of their assets through proposed sales, as set forth in more detail below, the relief sought by the Debtors in the Motion and the Notice of Intent, must be modified and clarified to safeguard Landlord's legitimate interests and bargained for protections. Section 365(d)(3) of the Bankruptcy Code unambiguously requires the Debtors, as the tenant under the Lease, to comply with all of the terms and conditions of the Lease until such time as it has been assumed or rejected. The express language of the Bankruptcy Code goes beyond merely prohibiting the Debtors from ignoring the terms of the Lease; it imposes an affirmative duty upon the Debtors to comply with all of its obligations under the Lease. *See In re New Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); *see also In re C.A.F. Bindery, Inc.*, 199 B.R. 828 (Bankr. S.D.N.Y. 1996). Here, the Lease generally limits the use of the Premises to "the operation of a warehouse and distribution facility . . . ." Lease, ¶ 6(a). Moreover, the Lease expressly requires the Debtors to comply with law. Id. Notwithstanding the provisions of the Lease and applicable law that may regulate the Debtors' proposed sales at the Premises, the proposed Store Closing Procedures seek to abrogate those provisions of the Lease or applicable law which contravene the Store Closing Procedures. See Interim Order, ¶ 12, 13, and 16.

5

8.  While the Lease does grant the Debtors a limited right to conduct a "going out of business sale" at the Premises during the 120 day period prior to the expiration of the term of earlier termination of the Lease (Lease, ¶ 6(b)), the Lease is not presently scheduled to expire until 2028 (Landlord does have some early termination rights) and the Debtors have not indicated that they intend to reject the Lease. Consequently, the Debtors are not within the 120 day period prior to lease termination which would otherwise trigger their right to conduct a "going out of business sale" as provided in the Lease. Even if the exception in the Lease applies to the Debtors' proposed Store Closing Procedures, however, the Lease specifies that the Debtors are required to comply with applicable laws and, among other things, establishes requirements for signage that the Debtors' proposed Store Closing Procedures seek to abrogate.

9.  Landlord recognizes that bankruptcy courts have in limited circumstances abrogated or limited the application of certain lease provisions in the context of a debtor's going out of business sale. However, such courts have long recognized the need to balance a debtor's need to maximize return to creditors of the estate by conducting going-out-business sales against the interests of the landlord. For example, in *In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992), the Bankruptcy Court stated:

> "That is not to say the Code abrogates all lease provisions and statutes conditioning GOB sales. Section 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of GOB sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the [Debtor] to fulfill its fiduciary obligations."

10. Moreover, as recognized by the bankruptcy court in *In re Friedman's, Inc.*, 336 B.R. 880, 883 (Bankr. S.D. Ga. 2005), a landlord has a right to adequate protection. *See also In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (noting that a "landlord's right to adequate protection seems to follow clearly from the language of §363(e)…");

6

*In re Ernst Home Center, Inc.*, 209 B.R. 955, 965-966 (Bankr. W.D. Wash. 1997); *In re MS Freight Distribution, Inc.*, supra, 172 B.R. at 980 fn. 4 ("Section 363(e) by its express terms authorizes an entity whose property is to be leased by the debtor to seek adequate protection.").  Thus, where a court exercises any authority under section 363 to abrogate provisions of a non-residential real property lease, a court is required to condition the proposed use in such a manner as to provide adequate protection of the landlord's interests.  As the bankruptcy court held in *In re Friedman's Inc., supra,* 336 B.R. at 884, adequate protection in this context goes beyond regular rental payments and Court's should fashion appropriate protections to balance the interests of the debtor in possession and landlord.[5]

11. Given the foregoing law, Landlord does not object to the Debtors' ability to conduct reasonable sales of their remaining inventory, machinery, equipment, and other personal property located at the Premises.  However, Landlord does object to the Motion (and related Notice of Intent) to the extent it seeks to contravene any express provision of the Lease or seeks exemptions from applicable law that would apply to the Debtors' proposed sales.  Moreover, given the unique issues that could arise from conducting a public sale in a large distribution center/warehouse facility, Landlord demands adequate protection of its interests under section 363(e) of the Bankruptcy Code.  Consequently, Landlord submits that the proposed Store Closing Procedures should be modified in a number of respects to strike an appropriate balance between the interests of the Debtors, on one hand, and Landlord, on the other hand, as follows:

A. <u>Public Access to the Premises</u>

12. As noted, the Premises are presently used as a distribution center/warehouse and not as a retail store.  The proposed Store Closing Procedures are silent with respect to public

---

[5] Debtors have the burden of proof on the issue of adequate protection.  11 U.S.C. § 363(p)(1).

access to the Premises generally. For example, will the public be permitted (as part of pre-sale or otherwise) access to areas of the Premises that may contain potentially dangerous machinery and equipment or in which hazardous materials may be stored? If so, the Debtors must establish adequate safeguards to protect the public and also landlords' interest in the Premises. In addition, adequate security should be provided.

13. Moreover, it is well-established that "[a] debtor in possession shall manage the property of the estate in accordance with state law." *In re Lauriat's Inc*., 219 B.R. 648, 649 (Bankr. D. Mass. 1998). To the extent that the Debtors' proposed public sale at the Premises triggers application of any applicable laws and ordinances governing such sales, the Debtors should be required to fully comply with such laws, particularly to the extent such laws affect the public health and safety. Just as Bankruptcy Code section 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of retail going-out-of-business sales, thereby providing adequate safeguards to protect landlords and their other tenants, while allowing the debtor to fulfill its fiduciary obligations (*see, e.g., In re Ames Department Stores, Inc., supra*, 136 B.R. at 359), the Court plainly has the discretion here to condition any proposed sales on the Debtors imposing certain safeguards to protect the Premises, public health and safety, and Landlord's interests. Those safeguards should include: (a) conditioning the proposed sales and property removal procedures on the compliance by the Debtors, the Liquidation Consultant, and any purchasers with applicable health and safety laws governing the use of the Premises; and (b) providing Landlord with evidence of such compliance.

14. Finally, the Debtors should be required to comply with all of their applicable insurance obligations in the Lease.

      B.      <u>Procedures for Removal of Purchased Property Should be Clarified to Protect Landlord's Interests</u>

15.      Given the size of the Premises and its use as a distribution center/warehouse, it possible, indeed likely, that buyers will employ contractors or other third party vendors to assist in the removal of certain purchased equipment and trade fixtures. Under those circumstances, third parties, with no prior affiliation with either the Debtors or Landlord, may enter on the Premises and perform removal work. The proposed Store Closing Procedures contain no restrictions or limitations on such access or the activities of these third parties (who lack privity with Landlord).

16.      Section 20 of the Lease provides that Debtors shall not create or permit the imposition of any mechanics' lien or encumbrances. While removal of most personal property should not trigger application of mechanics' liens laws, it is possible that removal of property affixed to the Premises could rise to claims. The Debtors and Liquidation Consultant must take steps to insure that contractors retained by buyers, if any, effectively strangers to the Lease, do not generate claims of mechanics' liens, exposing Landlord and the Premises to substantial liabilities.[6]

17.      Likewise, Section 3(b) of the Lease requires Debtors to repair any damage caused by removal of Sears Property (as such term is defined in the Lease). The Debtors, purchasers and their contractors should be required to repair any damages (and cap utility installations) resulting from the removal of any purchased assets.

18.      The Debtors and the Liquidation Consultant should further require that any purchaser of a significant item of property such as fixtures and equipment (or their contractors)

---

[6]    For example, under Florida law (Fla. Statutes § 713.65), an owner of real property may request from a contractor a list of all subcontractors and suppliers furnishing labor or materials to the owner's property and the contractor's failure to do so may result in a forfeiture of lien rights. Landlord should not lose the benefits of this, and other, statutory rights.

9

expressly indemnify and hold Landlord harmless from liability and damages resulting from any property removal. Successful buyers and their contractors should be required to provide evidence of adequate insurance coverage, naming the Debtors and Landlord as additional insured parties, to cover any damages to the Premises, before undertaking the removal of any significant property from the Premises. Such insurance should be consistent with the standards set forth in the Lease. Any contractors should also be required to provide evidence of current licensing.

        C.      <u>Signage</u>

        19.      The Lease contains express provisions governing the use of signage for a going out of business sale. The Debtors should be required to comply with the Lease signage requirements.

        D.      <u>Sale Hours and Parking</u>

        20.      The proposed Store Closing Procedures provide that the sales will be conducted during normal business hours. The Premises, however, are operated as a non-retail distribution center/warehouse and has no "normal business" hours with respect to retail sales to the public. On what days and at what hours will the sale be conducted? The sale hours must be reasonable and impose no undue burdens on the Premises.

        21.      Similarly, the Premises are not equipped for public parking. How will the Debtors accommodate potential parking issues, particularly in compliance with applicable laws and regulations? The Debtors should be required to expressly set forth reasonable plans for hours and parking at the Premises.

        E.      <u>Augmentation of Debtors' Retail Inventory</u>

        22.      The Motion provides that the Debtors may seek to transfer unproductive inventory from distribution centers to Closing Stores. Motion, ¶ 4. Here, the proposed sales will be conducted at the distribution center itself. Do the Debtors intend to move inventory from the

Closing Stores to the Premises? Is augmentation from other distribution centers or third party sources contemplated? The Debtors should be required to fully disclose all plans for augmentation of inventory at the Premises.

## **RESERVATION OF RIGHTS**

29.     Landlord reserve the right to amend and/or supplement this Objection and to raise any additional objections to the Motion at the hearing to consider the Motion and Notice of Intent based on new information provided by Debtors or new relief sought by Debtors.

## **JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

30.     To the extent not inconsistent with this Objection, Landlord joins in the objections to the Motion and Notice of Intent asserted by other landlords and contract counterparties.

## **CONCLUSION**

**WHEREFORE**, the Landlord requests that the Court enter an order: (i) modifying the Store Closing Procedures, as requested herein; (ii) providing Landlord with adequate protection of its interests, as described herein; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: January 7, 2019
      New York, New York

KELLEY DRYE & WARREN LLP

*/s/    Robert L. LeHane*
Robert L. LeHane, Esq.
Scott L. Fleischer, Esq.
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Michael S. Greger, Esq. (CA Bar No. 156525)
Ivan M. Gold (CA Bar No. 121486)
1900 Main Street, Fifth Floor
Irvine, California 92614-7321
Tel: (949) 553-1313
Fax: (949) 553-8354
Email: mgreger@allenmatkins.com
Email: igold@allenmatkins.com

*Attorneys for* 1 Imeson Park Blvd, LLC

## CERTIFICATE OF SERVICE

I, Scott L. Fleischer, do hereby certify that I am not less than 18 years of age and that on the 7th day of January 2019, I caused a copy of the foregoing LIMITED OBJECTION OF 1 IMESON PARK BLVD, LLC TO NOTICE OF INTENT TO CONDUCT STORE CLOSING SALES to be filed electronically through the Court's CM-ECF system, and served upon the parties listed below in the manner indicated.

*/s/ Scott L. Fleischer*
Scott L. Fleischer

**Via Email**

| | |
|---|---|
| Counsel to Official Committee of Unsecured Creditors<br>Ira S. Dizengoff, Esq.<br>Philip C. Dublin, Esq.<br>Abid Qureshi, Esq.<br>Sara L. Brauner, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>idizengoff@akingump.com<br>pdublin@akingump.com<br>aqureshi@akingump.com<br>sbrauner@akingump.com | Counsel to Debtors<br>Ray C. Schrock, P.C.<br>Jacqueline Marcus, Esq.<br>Garrett A. Fail, Esq.<br>Sunny Singh, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>ray.schrock@weil.com<br>jacqueline.marcus@weil.com<br>garrett.fail@weil.com<br>sunny.singh@weil.com |
| United States Trustee, Southern District of New York<br>Paul Schwartzberg<br>Richard Morrissey<br>201 Varick St.<br>Ste. 1006<br>New York, NY 10014<br>richard.morrissey@usdoj.gov<br>paul.schwartzberg@usdoj.gov | Counsel to Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent<br>Paul Leake, Esq.<br>Shana Elberg, Esq.<br>George R. Howard, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>155 N. Wacker Drive<br>Chicago, IL 60606<br>Paul.Leake@skadden.com<br>Shana.Elberg@skadden.com<br>George.Howard@skadden.com |

**Via First Class Mail**

| United States Bankruptcy Court for the Southern District of New York Sears Chambers Copy US Bankruptcy Court SDNY 300 Quarropas Street, Room 248 White Plains, NY 10601 Chambers of the Honorable Robert D. Drain | Sears Holdings Corporation Headquarters 3333 Beverly Road Hoffman Estates, IL 60179 |
|---|---|