**LEECH TISHMAN FUSCALDO & LAMPL, LLC**
Alan M. Kindred (NY ID #2086189)
Patrick W. Carothers, Esq.
Gregory W. Hauswirth, Esq.
525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
Telephone:  412.606.3182
Facsimile:   412.227.5551
akindred@leechtishman.com
pcarothers@leechtishman.com
ghauswirth@leechtishman.com

*Attorneys for Libby Dial Enterprises, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

**LIMITED OBJECTION OF LIBBY DIAL ENTERPRISES, LLC
TO STORE CLOSING PROCEDURES**

Libby Dial Enterprises, LLC (the "Landlord"), by and through its undersigned counsel, upon receipt of the Notice of Intent to Conduct Store Closings (the "Notice of Intent"), hereby files this limited objection to the Store Closing Procedures[1], averring as follows:

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Store Closing Order.

## INTRODUCTION

Landlord is a party to a certain lease (the "Lease") dated November 25, 1974, as amended, with Kmart Corporation ("Kmart", a Debtor as defined herein) for a stand-alone retail Kmart store located at 1143 Broad Street, Sumter, South Carolina (the "Leasehold"). Landlord does not object to Debtors' request to use the Leasehold to conduct a liquidation sale of its inventory under the terms of the Store Closing Procedures. However, it is unclear to Landlord if the Store Closing Procedures could be read to attempt to prohibit Landlord from invoking its option to terminate the Lease pursuant to Article 4 of the Lease upon Kmart's option to "discontinue the operation of its store." Landlord's ability to avoid a prolonged period of uncertainty, loss of rent based upon the revenue of an operating tenant and a "dark store" were material economic terms negotiated into the Lease. To that end, while, Landlord is willing to wait until the conclusion of the liquidation sale to retake possession of the Leasehold, Landlord desires to provide notice of termination of the Lease now, so that no additional time is lost once the liquidation sale is complete. If the Store Closing Procedures do not provide Landlord this ability, Landlord objects for the reasons more fully set forth herein and requests a hearing on such objection.

## PARTIES

1. Sears Holdings Corporation, and 49 of its affiliated co-debtors (collectively, the "Debtors"), each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 15, 2018 (the "Petition Date") and are jointly administered at Case No. 18-23538-rdd (the "Bankruptcy Proceeding") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.      Landlord is a party in interest to the Notice of Intent. As previously set forth, Landlord and Kmart are parties to the Lease. A true and correct copy of the Lease is attached hereto as <u>Exhibit A</u>.

### **BACKGROUND**

4.      On the Petition Date, Debtors filed the Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement (the "<u>Motion</u>") (Docket No. 23).

5.      On October 26, 2018, the Bankruptcy Court entered an interim order on the Motion (Docket No. 337) (the "<u>Interim Store Closing Order</u>") and on November 26, 2018, entered a final order on the Motion (Docket No. 876) (the "<u>Store Closing Order</u>"), approving certain procedures (the "<u>Store Closing Procedures</u>") that may be used by Debtors to close any of their stores, distribution centers, and other non-retail locations (the "<u>Closing Stores</u>") and sell the inventory, furniture, fixtures, and equipment at the Closing Stores.

6.      Libby did not receive any service of the Motion, the Interim Store Closing Order, the Final Store Closing Order, and by extension the Store Closing Procedures.

7.      On December 28, 2018, Debtors filed and served the Notice of Intent (Docket No. 1444). The Notice of Intent set forth that Debtors intended to close certain of its stores and conduct liquidation sales at the locations designated for closure. The Leasehold was included in the Notice of Intent as one of the stores Debtors intend to close. Pursuant to the Notice of Intent, any party affected by the closure of a store within 10 days of being served with the Notice of Intent may object to the Sales Closing Procedures and request a hearing on such objection.

8.      Landlord does not object to Debtors' desire to close the store that it was operating at the Leasehold, nor does it object to Debtors' request to conduct a liquidation sale at the

Leasehold. However, given the fact that Debtors have made it clear that Kmart is discontinuing its use of the Leasehold as its store, Landlord desire to provide Kmart with a notice of termination under the Lease. Such notice of termination is not the result of a default or penalty against Kmart under the Lease; Landlord's option and right to provide this notice is only triggered upon Kmart's exercising of its own option to discontinue its use of the Leasehold as its store (as it is afforded under the terms of the Lease). Naturally, this termination notice contemplates that Kmart will quit possession of the Leasehold. Landlord will not in any manner seek possession until after the liquidation sale is complete. However, at the point when the liquidation sale is complete, Landlord expects that Kmart will peacefully quit possession. To the extent the Store Closing Procedures intend to prevent such notice from being giving or prevent Landlord from retaking possession of the Leasehold following the liquidation sale, Landlord objects to the Store Closing Procedures. and requests a hearing on such objection.

9. In pertinent part, the Lease under Article 4 sets forth the following:

> Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within ninety (90) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said ninety (90) day period and the Tenant shall be release from any further liability under this lease.
>
> Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the term of this lease shall be rent more particularly set forth in Article 3, and the word "minimum" shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the

preceding paragraph of this article shall be of no further force and effect.

10. Landlord bargained for this provision of the Lease for a significant and material economic reason. Landlord desired at all times to have a store in the Leasehold that was open for business, maximizing revenue. Specifically, the rents due under the Lease are calculated in direct conjunction with the gross sales produced by Kmart.[2] In negotiating the Lease, Kmart desired to have an "out" if it ever elected to discontinue its operations at the store. Therefore, Landlord specifically bargained for a remedy if Kmart voluntarily opted to discontinue its business operations. In this case the Kmart has done just that. Kmart has put Landlord on notice that it will discontinue its store operations at the Leasehold on a permanent basis. To that end, Landlord must be permitted to exercise its option and issue a termination notice. Landlord is willing and will condition the timing of the termination to such time as Kmart concludes its liquidation sale. Any attempt to limit Landlord from providing such notice would be improper.

## ARGUMENT

11. It is well established that courts recognize the balance of interests between parties to commercial agreements in determining whether terms may be excised from the bargained for exchange between parties, and do not support a blanket invalidation of lease provisions. See, e.g., In re Ames Department Stores, Inc., 136 B.R. 357 (Bankr. S.D.N.Y. 1992) (opining that bankruptcy court has discretion to style a remedy to adequately protect the interests of all parties under Section 363); In re Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990) (opining that bankruptcy court did not have authority to excise material and essential terms of lease despite

---

[2] As set forth in Article 4 of the Lease, as amended, in addition to the annual minimum rent, with respect to any lease year under the lease term in which Kmart's "gross sales" at the store exceeded $10,338,592.00, Kmart is required to pay Landlord additional rent in the amount of 1.0% of sales in excess of $10,338,592.00.

5

having some latitude in waiving contract provisions); In re Lisbon Shops, Inc., 24 B.R. 693 (Bankr. E.D. Mo. 1982) (opining that the purpose of restrictive clauses in lease may be preserved through Bankruptcy Court supervision); In re Tobago Bay Trading Co., 112 B.R. 463 (Bankr. N.D. Ga. 1990) (rendering unenforceable certain provisions prohibiting going out of business sales). See also, In re Lee West Enterprises, Inc., 179 B.R. 204 (Bankr. C.D. Cal. 1995) (cessation of business clause is not an *ipso facto* clause and debtor's postpetition cessation barred assignment of agreement); In re Claremont Acquisition Corp., Inc., 113 F.3d 1029 (9th Cir. 1997) (temporary cessation of business prevented assumption and assignment of car dealership franchise agreement).

12. However, any remedies fashioned by a bankruptcy court must remain sensitive to the rights of non-debtor parties and not invade material and essential terms bargained between the parties. For example, in Slocum, the Third Circuit Court of Appeals opined the bankruptcy court did not have the authority to excise a lease provision addressing the landlord and/or tenant's option to terminate a lease dependent upon the average sales generated by the tenant. Slocum at 1091. Specifically, the Court identified the provision must be read together with the terms outlining a formula requiring tenant to pay a percentage of the lease as specified on any amount in excess of the designated gross sales threshold for a given lease-year. When read together, the Court concluded the terms "clearly indicate that a bargained for element in this contract was that tenant…average a certain volume of sales as specified…so that the [l]andlord could accurately calculate the minimum total rent expected." Id. Standing alone, the Court also held the termination option was "an essential bargained for element of this lease agreement because it governs occupancy." Id. The Court also found the termination option fell within the statutory meaning of 'other consideration due' under the lease, and that without the option the Trustee could not give adequate assurance as to future performance under the lease. Id. As a result, the Court

opined that the termination option was "material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange. This clause, intended to benefit both the landlord and the tenant, was negotiated at arm's length to accommodate the commercial expectations of the parties." Slocum at 1092. Indeed, the Court noted that the provisions acted as a "minimum income guarantee" and that "…nothing could be as material or economically significant to landlords as some minimal assurance that there will be a positive return on their investments." Therefore, bankruptcy courts must remain sensitive to the rights of the non-debtor contracting party and policy requiring the non-debtor party receive the full benefit of its bargain. Id.

13. In the instant case, and similar to Slocum, the Lease contains an option to terminate premised upon the gross sales generated by Kmart. Specifically, in the case of the Lease, the termination is not a default provision; it is an option that only arises if Kmart first elects to completely stop producing revenues and discontinue its store. That is what has occurred at this juncture.

14. As Debtors have elected to close the store (as permitted under the terms of the Lease), Landlord will lose the benefit its bargain of the Lease if the Store Closing Procedures purport to render the termination provisions of Article 4 of the Lease unenforceable indefinitely. Accordingly, Landlord requests that the Court clarify for all interested parties that the terms of Article 4 remain in full force and effect and are not excised from the Lease based upon the Store Closing Order and/or the Store Closing Procedures, and that Landlord may provide Kmart with the notice of termination following Kmart's decision to discontinue operations at its store as contemplated under the Lease.

## **CONCLUSION**

15. A store closing is not an optimal scenario for the tenant, landlord, or the community in which the parties' serve. The parties to the Lease negotiated specific terms to effectuate the same, none of which trigger any default under the Lease or negatively impact Debtors' ability to conduct the instant store liquidation sale. To that end, Landlord requests request an Order clarifying that the terms of Article 4 remain in full force and effect and are not excised from the Lease based upon the Store Closing Order and/or the Store Closing Procedures. Landlord further requests a hearing on this limited objection as contemplated in the Notice of Intent and Store Closing Procedures Order.

WHEREFORE, Landlord requests the Bankruptcy Court enter an Order in the form of the Order set forth in <u>Exhibit B</u> attached hereto declaring the terms of Article 4 of the Lease enforceable notwithstanding any other terms of the Store Closing Order or Store Closing Procedures and grant such further relief as the Bankruptcy Court deems just and proper.

Dated: January 7, 2019

LEECH TISHMAN FUSCALDO & LAMPL, LLC

/s/ Alan M. Kindred
Alan M. Kindred (NY ID #2086189)
Patrick W. Carothers
Gregory W. Hauswirth
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
Telephone: 412.606.3182
Facsimile: 412.227.5551
akindred@leechtishman.com
pcarothers@leechtishman.com
ghauswirth@leethctishman.com

*Attorneys for Libby Dial Enterprises LLC*