)

**Exhibit "A"**



FHA CASE NO.

Loan No.:

# NOTE

December 7, 1999                                                                                   Brooklyn, New York

217 MORNINGSTAR ROAD, STATEN ISLAND, New York 10303
[Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Brucha Mortgage Bankers Corp., 5809 16th Avenue Brooklyn, New York 11204, and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Thirty Thousand Three Hundred Sixty-Eight Dollars and 00/100 (U.S. $130,368.00) plus interest, to the order of the Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Nine and One-Half (9.500%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under the Note.

**4. MANNER OF PAYMENT**
   (A) Time
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on February 1, 2000. Any principal and interest remaining on the 1st day of January 2030, will be due on that date, which is called the "Maturity Date".
   (B) Place
   Payment shall be made at 5809 16th Avenue, Brooklyn, New York 11204 or at such other place as Lender may designate in writing by notice to Borrower.
   (C) Amount
   Each monthly payment of principal and interest will be in the amount of U.S. $1,096.21. monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
   (D) Allonge to this Note for Payment Adjustments
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

[ ] Growing Equity Allonge            [ ] Graduated Payment Allonge

[ ] Other [specify]

MULTISTATE FHA FIXED RATE NOTE 6/96
Page 1 of 2

130,368

Loan No.: ▮▮▮▮

### 5. BORROWERS'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If the Lender has not received the full payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.0000%) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

Pay To The Order Of
**FLEET MORTGAGE CORP.**
Without Recourse
BRUCHA MORTGAGE BANKERS CORP.
By: *Irene Genovese*
Irene Genovese
Secondary Marketing Manager

_____
MELODY RAMOS

_____
MELODY I. RAMOS

STATE OF NEW YORK )
) ss:
COUNTY OF KINGS )

On this 7th day of December 1999 before me, the undersigned, personally appeared MELODY RAMOS and MELODY I. RAMOS, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

Pay to the order of
Without Recourse
Fleet Mortgage Corp.
By: _____
LYNN McLEOD
Document Executing Officer

KATHLEEN A RANDALL
Notary Public State of New York
No 01RA4808636
Qualified in Nassau County
Commission Expires June 30, 20__
6/30/2000

MULTISTATE FHA FIXED RATE NOTE 6/96
Page 2 of 2

Without recourse, pay to the order of
_____

WASHINGTON MUTUAL HOME LOANS, INC. *
By _Cynthia Matthews_
Assistant Vice President

* Formerly Known as
Fleet Mortgage Corp



REEL 10008 PAGE 091

_____ (Space Below This Line Reserved For Lender and Recorder) _____

Loan No. _____

Title No. ____ NORTH SHORE N20929R

Title Co. ____ NORTH SHORE ABSTRACT, LTD.

MELODY RAMOS
MELODY I. RAMOS

**RECORD & RETURN TO**

Brucha Mortgage Bankers Corp.
5809 16th Avenue
Brooklyn, New York 11204

to

Brucha Mortgage Bankers Corp.

Town/Village ____ STATEN ISLAND

State of New York, County: RICHMOND

Section ____ 5
Block: ____ 1127
Lot: ____ 10

FHA NEW YORK MORTGAGE 6/96
Recording Page



Loan No.

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on <u>December 7, 1999</u>. The mortgagor is <u>MELODY RAMOS and MELODY I. RAMOS</u> ("Borrower") whose current address is <u>50 COLUMBIA STREET, APT. 8E, NEW YORK, New York 10002</u>. This Security Instrument is given to <u>Brucha Mortgage Bankers Corp.</u>, which is organized and existing under the laws of State of New York, and whose address is <u>5809 16th Avenue, Brooklyn, New York 11204</u> ("Lender"). Borrower owes Lender the principal sum of <u>One Hundred Thirty Thousand Three Hundred Sixty-Eight Dollars and 00/100</u> (U.S. $<u>130,368.00</u>). evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on <u>January 1, 2030</u>. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in <u>RICHMOND County, New York</u>.

''This property is or will be principally improved by a one- or two-family house or dwelling only.''

"Being the same property which was conveyed to the Borrower by deed delivered and intended to be recorded simultaneously with this Mortgage. This Mortgage is a purchase money mortgage given to secure a portion of the consideration expressed in said deed."

It has the following legal description:

[ See Schedule A Herein ]

which has the address of <u>217 MORNINGSTAR ROAD, STATEN ISLAND, New York 10303</u> ("Property Address");

FHA NEW YORK MORTGAGE 6/96
Page 1 of 6

Loan No

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS the Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.**
Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year which the Lender must pay a mortgage insurance premium to the Security of Housing and Urban Development ("Secretary"), or in any year which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amount held by Lender for Escrow Items exceed the amount permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

**3. Application of Payments.**
All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
THIRD, to interest due under the Note;
FOURTH, to amortization of the principal of the Note; and
FIFTH, to late charges due under the Note.

**4. Fire Flood and Other Hazard Insurance.**
Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to

FHA NEW YORK MORTGAGE 6/96
Page 2 of 6

Loan N███████

any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are reffered to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**

Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall be merged unless Lender agrees to the merger in writing.

**6. Condemnation**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.**

Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borroewer shall promptly furnish to Lender receipts evidicining these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other convenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of the disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which the Lender's opinion operate to prevent enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forthe above within 10 days of the giving of notice.

**8. Fees.**

Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for acceleration of Debt.**

**9.1 Default.**

Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

Loan N[redacted]

**9.2 Sale Without Credit Approval.**
Lender shall, if permitted by applicable law (including section 341(d) of the Garn—St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or decent), and
(ii) The Property is not occupied by the Purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**9.3 No Waiver.**
If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**9.4 Regulations of HUD Secretary.**
In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**9.5 Mortgage Not Insured**
Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement**
Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note of this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.**
Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the excercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co—Signers.**
The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co—signs this Security Instrument but does not execute the Note: (a) is co—signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices**
Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.**
This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy**
Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA NEW YORK MORTGAGE 6/96
Page 4 of 6

Loan 

### 16. Hazardous Substances.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential used and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volitile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON—UNIFORM COVENANTS. Borrower and Lender conenant and agree as follows:**

### 17. Assignment of Rents

Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignments of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be intitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender of Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrumet is paid in full.

### 18. Foreclosure Procedure.

If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorney's fees to the amount Borrower owes Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this paragraph 18 only if all of the following conditions are met:

(A) Borrower fails to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to Borrower, in the manner described in paragraph 13 above, a notice that states:

    (i) The promise or agreement that Borrower failed to keep;

    (ii) The action that Borrower must take to correct that default;

    (iii) A date by which Borrower must correct the default. That date must be at least 30 days from the date on which the notice is given;

    (iv) That if the Borrower does not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale.

    (v) That if Borrower meets the conditions stated in paragraph 10 above, Borrower will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

    (vi) That Borrower has the right in any lawsuit for foreclosure and sale to argue that Borrower kept the promises and agreements under the Note and under this Security Instrument, and to present any other defense that Borrower may have.

REEL00087 PAGE 0081

FHA NEW YORK MORTGAGE 6/96
Page 5 of 6


Loan No. ▇

(C) Borrower does not correct the default stated in the notice from Lender by the date stated in that notice.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act")(12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Lender's Obligation to Discharge This Security Instrument.**
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for this discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

**20. Agreements About New York Lien Law.**
Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower receives and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

**21. Riders To This Security Instrument**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) are a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) [specify] | ☒ New York Rider |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in paged 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____
MELODY RAMOS

_____
MELODY I. RAMOS

[Space Below This Line For Acknowledgment]

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF KINGS      )

On this 7th day of December 1999 before me, the undersigned, personally appeared MELODY RAMOS and MELODY I. RAMOS, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

FHA NEW YORK MORTGAGE 6/96
Page 6 of 6

KATHLEEN A RANDALL
Notary Public State of New York
No 01RA4608836
Qualified in Nassau County
Commission Expires June 30, 20 00

Loan No 

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this <u>7th day of December, 1999</u>, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to <u>Brucha Mortgage Bankers Corp., 5809 16th Avenue, Brooklyn, New York 11204</u> (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: <u>217 MORNINGSTAR ROAD, STATEN ISLAND, New York 10303</u>

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument in on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property".

**B. USE OF PROPERTY: COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the rents of the Property; and (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agent upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

WITNESS: _____

_____
MELODY RAMOS

_____
MELODY I. RAMOS

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument MTG 3170 (9/90)
Page 2 of 2

ASSIGNMENT OF MORTGAGE

Fleet

Dated: December 7, 1999

Loan No:

KNOW THAT Brucha Mortgage Bankers Corp., organized under the laws of the State of New York, having an office at 5809 16th Avenue, Brooklyn, New York 11204, assignor, in consideration of TEN AND 00/100 DOLLARS ($10.00), paid by FLEET MORTGAGE CORP. _____ having an office at 2210 ENTERPRISE DRIVE, FLORENCE, SC 29501 _____ assignee, hereby assigns unto the assignee,

Mortgage dated 7th day of December 1999 made by MELODY RAMOS and MELODY I. RAMOS to Brucha Mortgage Bankers Corp., in the principal sum of $130,368.00 and intended to be recorded in the office of the County Clerk of RICHMOND County, State of New York covering premises 217 MORNINGSTAR ROAD, STATEN ISLAND, New York 10303

Assignee sets forth that it is not acting as a nominee of the property and the mortgage continues to secure a bona fide obligation.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

AND the assignor covenants that there is now owing upon said mortgage, without offset or defense of any kind, the principal sum of One Hundred Thirty Thousand Three Hundred Sixty-Eight Dollars and 00/100 (U.S. $130,368.00) with interest thereon at 9.500 per centum per annum from the 7th day of December 1999.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the 7th day of December 1999.

In presence of: _____

Brucha Mortgage Bankers Corp.

By: _____
Irene Genovese

Title: Secondary Marketing Manager

Date: 12-7-99

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF KINGS       )

On this 7th day of December 1999 before me personally came and appeared Irene Genovese to me known, who, being by me duly sworn, did depose and say that he resides at No. Brucha Mortgage Bankers Corp., 5809 16th Avenue, Brooklyn, New York 11204, that she is the Secondary Marketing Manager of Brucha Mortgage Bankers Corp., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed h__ name thereto by like order.

_____
Notary Public

LAURA A. SALA
Notary Public, State of New York
No. 01SA5050739
Qualified in Richmond County
Commission Expires October 16, 20__

RECORD & RETURN TO

- RECORD AND RETURN TO:
- NATIONWIDE TITLE SERVICES
  3540 VETERANS MEMORIAL HIGHWAY
  BOHEMIA, NY 11716
  516-981-1775  FAX 516-580-9080

Page 1 of 1

**LAWYERS TITLE INSURANCE CORPORATION**

No. NZ0929R

### SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Third Ward of the Borough and County of Richmond, City and State of New York, situate, lying and being on the Easterly side of Morningstar Road at Elm Park, and more particularly described as follows:

BEGINNING at a point on said Easterly side of Morningstar Road, distant one hundred and eighty-seven feet five inches (187'5") Northerly along the same from the corner formed by the intersection of the Northerly side of Sherman Street with said Easterly side of Morningstar Road;

RUNNING THENCE Northerly along said Easterly line of Morningstar Road, Forty (40) feet;

THENCE Easterly parallel with said Northerly side of Sherman Street, one hundred and twenty-five (125) feet;

THENCE Southerly, parallel with said Easterly side of Morningstar Road, forty (40 feet);

THENCE Westerly again parallel with said Northerly line of Sherman Street one hundred twenty five (125) feet to the point or place of BEGINNING.

Block: 1127
Lot: 10

BLOCKED 5/12/00
REBLOCKED / /

For conveyancing only,
if intended to be conveyed.

( Together with all right, title and interest of, in and to any streets and
( roads abutting the above described premises, to the center line thereof.

FHA NEW YORK MORTGAGE 8/98
Page 2 of 6





| Office of the Richmond County Clerk 130 Stuyvesant Place Staten Island, NY 10301 | |
|---|---|
| Hon. Stephen J. Fiala, County Clerk | |

Recording and Endorsement Cover Page

Document Type:       ASSIGNMENT OF MORTGAGE
Document Page Count:       2

| PRESENTER: | RETURN TO: |
|---|---|
| DEFAULT ASSIGNMENT TEAM | DEFAULT ASSIGNMENT TEAM |
| 2701 WELLS FARGO WAY | 2701 WELLS FARGO WAY |
| X9998-018 | X9998-018 |
| MINNEAPOLIS,MN 55467 | MINNEAPOLIS,MN 55467 |

PROPERTY DATA       # OF BLOCKS    1       # OF LOTS    1
Block   Lot                Unit
1127    10    Entire Lot

PARTIES

| ASSIGNOR INDEX | ASSIGNEE INDEX |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | WELLS FARGO BANK NA |
| 2210 ENTERPRISE DR | 1 HOME CAMPUS |
| FLORENCE,SC 29501 | DES MOINES,IA 50328 |

PAYMENT DETAIL

Make Checks Payable to:
Richmond County Clerk:                   34.00 Recording Fees
Total Payments For This Document:        34.00    FEES PAID

EXAM  CC    DATE   SEP 12 2014

LAND DOC# 534751
25-ASSIGN,AGREE,REL

09/15/2014    09:04:31 A.M.
RECEIPT: 44910    FEE: $34.00
RICHMOND COUNTY CLERK

RECORDED IN RICHMOND COUNTY

SEP 15 2014

COUNTY CLERK

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: X9998-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9049

## CORPORATE ASSIGNMENT OF MORTGAGE

Richmond, New York
"RAMOS"

Date of Assignment: September 4th, 2014
Assignor: FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON MUTUAL BANK, HENDERSON, NV, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA, SUCCESSOR IN INTEREST TO WASHINGTON MUTUAL HOME LOANS, INC., SUCCESSOR BY MERGER TO FLEET MORTGAGE CORPORATION, BY WELLS FARGO BANK, N.A., AS THEIR ATTORNEY-IN-FACT at 2210 ENTERPRISE DR., FLORENCE, SC 29501
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328
Executed By: MELODY RAMOS AND MELODY I. RAMOS To: BRUCHA MORTGAGE BANKERS CORPORATION
Date of Mortgage: 12/07/1999 Recorded: 03/08/2000 In Book/Reel/Liber: 10008 Page/Folio: 082 In the County of Richmond, State of New York.

-Assigned Wholly by BRUCHA MORTGAGE BANKERS CORPORATION TO FLEET MORTGAGE CORPORATION
Dated: 12/07/1999 Recorded: 05/30/2000 In Book/Reel/Liber: 10282 Page/Folio: 036

Section/Block/Lot STATEN ISLAND-1127-10

Property Address: 217 MORNINGSTAR ROAD, STATEN ISLAND, NY 10303
This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $130,368.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON MUTUAL BANK, HENDERSON, NV, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA, SUCCESSOR IN INTEREST TO WASHINGTON MUTUAL HOME LOANS, INC., SUCCESSOR BY MERGER TO FLEET MORTGAGE CORPORATION, BY WELLS FARGO BANK, N.A., AS THEIR ATTORNEY-IN-FACT POA: 03/25/2014 as Instrument No.: 9912457
On 9/4/14

By: _____
Kelley Christine Butikofer
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On the 4 day of September in the year 2014 before me, the undersigned, personally appeared Kelley Christine Butikofer, Vice President Loan Documentation, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

Ramesch Vardan
Notary Expires: 1/31/2016
Dakota, Minnesota

RAMESCH VARDAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2016

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.