**Hearing Date and Time: January 18, 2019 at 10:00 a.m. (Eastern)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x

## OMNIBUS OBJECTION OF DEBTORS TO
## MOTIONS FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

   Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection in response to the motions for relief from the automatic stay filed by Brian Coke Ng (ECF No. 1006) (the "**Ng Motion**") and Karen Smith (together with Brian Coke Ng, "**Movants**") (ECF No. 1126) (the "**Smith Motion**" and, together with the Ng Motion, the "**Stay Relief Motions**"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

   1. A movant seeking relief from the automatic stay must show cause warranting such relief.  11 U.S.C. § 362(d)(1).  If the movant fails to satisfy this burden, then "the [C]ourt should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Here, Movants have failed to satisfy their burden to establish cause to lift the automatic stay.

   2. Movants seek to proceed with their respective prepetition tort actions filed before the commencement of these chapter 11 cases (the "**Movants' Actions**").  The Stay Relief Motions are premised on the purported availability of third-party insurance coverage for liability for Movants' claims and any related defense costs.  As the Debtors have explained to Movants, however, no such coverage is available with respect to any of the Movants' Actions.  If the automatic stay is lifted, the Debtors will be forced to incur all administrative costs associated with these nascent lawsuits.  Movants are only a few of the Debtors' many prepetition general unsecured creditors (although Movants have yet even to file their requisite proofs of claim).  It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other

WEIL:\96861059\1\73217.0004

general unsecured creditors to expend estate resources on any of Movants' claims at this time. The Stay Relief Motions should be denied.

## **BACKGROUND**

### A.    **The Ng Actions**

3.    On March 28, 2018, Mr. Ng filed a *pro se* Amended Complaint in *Ng v. Kmart Pharmacy, et al.*, No. 100386/18, against Kmart Pharmacy, Kmart Holding Corporation, Sears Holdings Corporation, and Sedgwick Claims Management Services, Inc., in New York State Supreme Court, New York County, seeking damages for alleged actions in 2010 and between January 2013 and May 2017. *See* Ng Mot. ¶ 1 & Ex. 1. On October 12, 2018, the defendants removed the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441. *See* Notice of Removal, *Ng v. Kmart Pharmacy, et al.*, No. 18-CV-9373 (AJN/BCM) (S.D.N.Y. Oct. 12, 2018), ECF No. 1; *see also* Ng Mot. ¶ 4. On October 15, 2018 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On November 6, 2018, the Debtors filed a notice of bankruptcy filing and imposition of automatic stay in the federal action.

4.    On November 30, 2018, Mr. Ng filed the Ng Motion *pro se*, seeking relief from the automatic stay in order to proceed with (i) his previously-filed action and (ii) a new, as-yet-unfiled lawsuit, asserting claims against Kmart Corporation, Kmart Holding Corporation, and Sears Holdings Corporation for breach of fiduciary duty, violation of N.Y.G.B.L. § 349, fraud, and intentional infliction of emotional distress premised on various instances of alleged prepetition conduct (together, the "**Ng Actions**"). *See* Ng Mot. ¶¶ 1, 6 & Ex. 2. Mr. Ng moves for relief from the automatic stay to "permit [Mr. Ng] to proceed in the Supreme Court of the State of New York, County of New York, and the Supreme Court Office of Alternative Dispute Resolution to proceed

3

against any insurance coverage of the Debtors, Sears Holdings Corporation and/or Kmart

Corporation/Kmart Holding Corporation et al." *Id.* at 13.

**B.      The Smith Action**

5.      On November 24, 2015, Ms. Smith filed her complaint in *Smith v. Sears

Logistics Services, Inc., et al.,* No. 13028-2015 (the "**Smith Action**"), against Sears Logistics

Services, Inc. (now known as Innovel Solutions, Inc.), Tim McCann, and Scott Walsh in the Court

of Common Pleas of Luzerne County, Pennsylvania, seeking damages for alleged defamation by

Sears Logistics Services employees in February 2015.  *See* Smith Mot. ¶¶ 1, 2.[2]  On October 16,

2018, the Debtors filed a notice of bankruptcy filing in the Smith Action.  Prior to imposition of

the automatic stay, the state court scheduled a pretrial conference on December 21, 2018, and a

trial to begin March 4, 2019.  *See id.* ¶ 4.  During a telephone conference on January 8, 2019, the

state court adjourned the March 4, 2019 trial date to September 3, 2019.

6.      On December 11, 2018, Ms. Smith filed the Smith Motion,[3] seeking relief

from the automatic stay to "proceed in the Court of Common Pleas[ ]in Luzerne [C]ounty against

any insurance coverage of the Debtor, Sear[s] Logistics, Inc."  Smith Mot. at 4.[4]

---

[2] Ms. Smith did not attach the complaint or other filings from the Smith Action as exhibits to the Smith Motion.  She did, however, attach the Smith Complaint as Exhibit A to her Supplemental Authority for Objections to Debtors' Motion to Extend the Automatic Stay to Non-Debtor Parties (ECF No. 1335-1).

[3] Prior to the filing of the Smith Motion, the Smith Action was listed on the Non-Debtor Party List in the Stay Extension Motion.  On December 18, 2018, Ms. Smith filed an objection to the Stay Extension Motion (ECF No. 1298) (the "**Smith Objection**").  The Stay Extension Motion has been adjourned with respect to the Smith Objection to January 18, 2018.

[4] On December 28, 2018, Ms. Smith submitted a letter to the state court in the Smith Action, arguing that the action should go forward because defendant Sears Logistics Services, Inc. is a non-debtor in the bankruptcy court.  In fact, Sears Logistics Services, Inc. is now known as Innovel Solutions, Inc.—one of the Debtors in this bankruptcy proceeding.

4

### C.    **The Debtors' Insurance Coverage**

7.    The Debtors maintained various insurance policies in their history over the prepetition period.  Among them were both general liability and umbrella policies that potentially could have applied in the Movants' Actions.  As to the Ng Actions, each of the general liability policies applicable to incidents that occurred between August 1, 2010 and August 1, 2011, and between August 1, 2012 and August 1, 2017 had a $5 million aggregate limit.  Likewise, as to the Smith Action, the general liability policy applicable to incidents that occurred between August 1, 2014 and August 1, 2015 also had a $5 million aggregate limit.  Paid losses to date have exceeded the $5 million limit on each of those policies respectively.  Accordingly, there is no available coverage under any policy with respect to any of the Movants' Actions; the insurer has no duty to defend the Debtors or pay for the Debtors' losses.  Copies of the notices of exhaustion evidencing the foregoing are attached hereto as **Exhibit A** (2010-2011), **Exhibit B** (2012-2013), **Exhibit C** (2013-2014), **Exhibit D** (2014-2015), **Exhibit E** (2015-2016), and **Exhibit F** (2016-2017).  Exhibit D is applicable to Movant Smith, while Exhibits A – F are applicable to Movant Ng.

8.    Coverage under the applicable umbrella policies would only be triggered if there was a judgment against the Debtors in excess of $5 million.  In the first instance, none of the Stay Relief Motions assert claims in excess of $5 million.  Even if any had, the insurer would not be obligated to defend such claims.  The insurer would be responsible only for the amount of any judgment in excess of $5 million.

9.    Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the Movants' Actions.

WEIL:\96861059\1\73217.0004

## ARGUMENT

### A.    Governing Legal Standards

10.    The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986).  The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

11.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined, and the decision whether to modify the stay is left to the discretion of the bankruptcy court.  *In re Marketxt Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted.  *See Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).[5]  Not all of the factors will be relevant in a given case, and the Court may disregard

---

[5] As noted by each of the Movants, the *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

WEIL:\96861059\1\73217.0004

irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another. *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

12.    Movants bear the initial burden to show cause for lifting the automatic stay. *Sonnax*, 907 F.2d at 1285. "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

13.    Where, as here, none of the Movants has satisfied the burden of establishing "cause" under section 362(d)(1), a motion should be denied. *Id.*

## B.    The Debtors Have Exhausted Any Insurance Coverage Applicable to Movants

14.    The Stay Relief Motions are expressly conditioned on the availability of insurance coverage against liability for Movant's claims. *See* Ng Mot. ¶ 6 ("Debtors have available insurance coverage against liability for" the Ng Actions); Smith Mot. ¶ 4 ("Debtor has available insurance coverage against liability for the claims in the civil court action referenced above"). Both of the Movants seek relief from the automatic stay in order to "proceed to recover from Debtors' insurance coverage." Ng Mot. ¶¶ 7, 8; *accord* Smith Mot. at 4 (seeking relief to proceed "against any insurance coverage of the Debtor").

15.    Both Movants assert that, because "there is available insurance coverage by which to cover the claims of the Movant against the Debtors," lifting the automatic stay "will cause no harm to the Debtor or the bankruptcy estate." Ng Mot. ¶ 8; *see also* Smith Mot. ¶ 14 (as to the

7

twelfth *Sonnax* factor, "Debtors will not suffer as the Movant seeks the Debtors' available insurance coverage"). However, because any potentially applicable insurance coverage has been exhausted, the relief sought is unavailable.

16.     As a result, there is no support for Movants' application of the *Sonnax* factors, most obviously, the fifth factor, which considers whether the Debtors' insurer has assumed full defense responsibility. If the automatic stay were to be lifted with respect to the Movants' Actions, the Debtors would be forced to directly incur the costs of all legal fees and expenses to defend their interests or otherwise default and risk unjustified, larger damages claims. As additional administrative expense claims, those defense costs are "unquestionably a factor to be given serious consideration" in the cause inquiry. *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

17.     The same logic applies with respect to the application of the seventh *Sonnax* factor, which considers whether litigation in another forum would prejudice the interests of other creditors. Movants cannot collect any judgment "solely from applicable insurance proceeds and/or other non-debtor sources." Ng Mot. ¶ 17.[6]

18.     Movants also argue that the second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—also weighs in favor of lifting the stay

---

[6] The Ng Motion cites several cases which actually support denial of the Stay Relief Motions, given their distinct factual circumstances. *See In re R.J. Groover Constr., LLC*, 411 B.R. 460, 464-65 (Bankr. N.D. Ga. 2008) (cause to lift stay existed where bankruptcy creditors would not be harmed because "any possible recovery will be limited to the available insurance proceeds," and "the estate will not suffer any cost in defending the suit" because the insurer had already assumed defense of the underlying litigation, among other factors); *In re 15375 Memorial Corp.*, 382 B.R. at 689-90 (discussed *supra* n.5); *see also In re G.S. Dist., Inc.*, 331 B.R. 552, 567-68 (Bankr. S.D.N.Y. 2005) (no prejudice to other creditors because movant "cannot enforce any money judgment it may receive without permission from this Court and the other issues in the case have been determined, on the record to date, in a manner adverse to the Debtor"). Movant Smith does not address the seventh *Sonnax* factor in her Motion.

8

solely because of Debtors' purported insurance coverage. *See* Ng Mot. ¶ 14; Smith Mot. ¶ 11.[7]
The automatic stay is meant to shield debtors from creditor harassment and from a multitude of
litigation in a variety of forums at a time when the Debtors' personnel should be focused on the
chapter 11 cases. *See, e.g., E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169 (2d Cir.
1998).

19.     Movants argue that the first *Sonnax* factor—whether relief would result in
a partial or complete resolution of the issues—also weighs in favor of lifting the stay because they
would be able to "proceed and litigate . . . their tort claim to conclusion," thereby ending the
relationship between the Debtors and Movant.  Ng Mot. ¶ 13; *accord* Smith Mot. ¶ 11 ("granting
relief will result in complete resolution of the issues before this Court").  Movants' interpretation
of lifting the stay as a "complete resolution" of their actions is simply wrong.

20.     Movants also argue that the twelfth *Sonnax* factor, which weighs the impact
of the stay on the parties and the balance of the harms, also supports lifting the automatic stay.  *See*
Ng Mot. ¶ 19; Smith Mot. ¶ 14.  No bar date has been established, but neither of the Movants have
even filed a proof of claim asserting a specified demand.  At this time, lifting the automatic stay
will not expedite any potential recovery on account of general unsecured claims.  Moreover, the

---

[7] Again, the Ng Motion cites cases which support maintaining the stay. *See In re Peterson*, 116 B.R. 247, 250-51 (D. Colo. 1990) (no abuse of discretion in lifting stay where "the movant has stipulated that any recovery will be sought *from debtor's insurer*" and the bankruptcy court's order "was carefully tailored to prevent any judgment from effecting the debtor's resources" (emphasis added)); *In re 15375 Memorial Corp.*, 382 B.R. 652, 689-90 (Bankr. D. Del. 2008) (stay lifted to allow liquidation of claims as a predicate to recovery from liability insurance, where court had "no reason to believe that the proceeds of the liability insurance policies will be insufficient to satisfy all claims presented," and the record established that recovery would "in no way negatively impact the rights of the handful of other creditors in these cases"); *In re Grace Indus., Inc.*, 341 B.R. 399, 405 (Bankr. E.D.N.Y. 2006) ("The automatic stay does not shield issuers of liability insurance policies from making payments which would otherwise be due under the policy by reason of the insured's bankruptcy . . . . Where, as here, the plaintiffs have agreed that they will not seek recovery from any estate assets, there is no basis for continuing the automatic stay"); *cf. In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D.N.J. 1988) (lifting stay in order to allow Movant to litigate their claims "to the point of judgment," and not "to attach the property of the debtor").

WEIL:\96861059\1\73217.0004

Debtors' postpetition financing is not available to satisfy general unsecured claims at this point in the Debtors' chapter 11 cases. *See* Ng Mot. ¶ 16.

**C.    Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

21.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, does not weigh in favor of lifting the automatic stay.    Lifting the stay would result in the Debtors incurring unnecessary administrative costs to litigate the Movants' Actions before recoveries to general unsecured creditors are known.  Moreover, the Debtors are party to numerous prepetition actions.  If the Court were to lift the stay with respect to the Movants' Actions, the Debtors and the Court would continue to be inundated with similar requests for stay relief.

22.    The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceedings, also weighs against lifting the automatic stay.  The first Ng action was removed to federal court mere days before the Petition Date, while the second Ng action has *not even been filed*.  And while the Smith Action is past the summary judgment stage, its trial was initially set to begin five months after the Petition Date, and has since been adjourned until September 2019.  Accordingly, none of the Movants' Actions are "ready for trial" as contemplated by *Sonnax*.  Indeed, the Debtors will incur substantial legal costs through months of trial preparation, pretrial motions, and any resulting appellate practice if the stay is lifted with respect to any of the Movants' Actions.  Moreover, even if any of the cases were on the "eve of trial" as of the Petition Date, that fact alone is not dispositive in these circumstances—particularly where, as here, countervailing factors weigh against lifting the stay. *See In re Motors Liquidation Co.*, No. 09-50026 REG, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (no abuse of discretion in denying stay relief in part based on finding that the parties were not ready for trial, where discovery had been completed and dispositive motions were pending for over a year before the automatic stay took effect); *Ivester v.*

*Miller*, 398 B.R. 408, 429 (M.D.N.C. 2008) (upholding denial of stay relief even though

bankruptcy petition was filed "less than a fortnight before the trial date").

## **CONCLUSION**

23.    For the foregoing reasons, Movants have failed to satisfy their burden to

establish cause to lift the automatic stay.  Accordingly, the Stay Relief Motions must be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request

that the Court deny the Stay Relief Motion.

Dated: January 11, 2019
       New York, New York


/s/  Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

11

**<u>Exhibit A</u>**



ACE North America                 818-428-3751 *tel*
ARM Claims                        866-635-5687 *fax*
9200 Oakdale Ave. 8ᵗʰ Floor
Chatsworth, CA 91311              Alma.Magana@acegroup.com
                                 www.ace-ina.com

**Alma B. Magana**
*Assistant Vice President*

October 5, 2011

David Hallfield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Rd.
Hoffman Estates, IL 60179

Re:   Policy #:       HDO G25519826
      Policy Period:  8-1-10 to 08-01-11
      Insurer:        ACE American Insurance Co. (ACE)

Dear Mr. Hallfield;

ACE American Insurance Company ("ACE") insured Sears Holdings Corp under policy # HDO G25519826, for the period of 8-1-10 to 8-1-11. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit; no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined General Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits show, subject to all of the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
| --- | --- |
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products / Completed Operations) | $5,000,000 |
| Products / Completed Operations Aggregate Limit | $5,000,000 |



The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims.  With the payment of losses in excess of $5million there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

### SECTION I – COVERAGES

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and **B.**

Additionally, the policy contains the **COMBINED POLICY AGGREGATE** endorsement. The endorsement states:

#### Section III – LIMITS OF INSURANCE

2.      The General Aggregate Limit is the most we will pay for the sum of:

        a.      Medical expenses under Coverage C.
        b.      Damages under Coverage A, and
        c.      Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Page 2/3



Should you have questions, please contact this writer. The above recitation of ACE' position regarding coverage is neither expected nor intended to be a waiver of ACE American's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE American shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE American expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE American reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE American reserves its right to supplement this letter. ACE American also reserve its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Sincerely,

ACE American Insurance Company
Alma Magana

Copies:

AON - Tim Rothieux
        Carol Murphy

ACE - Ruth Ahlman

Page 3/3

## Exhibit B

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

Keri Lefferts
*Senior Claims Specialist*

July 29, 2013

**VIA EMAIL AND REGULAR MAIL**
David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

| | | |
|---|---|---|
| Re: | Policy #: | HDOG27011871 |
| | Policy Period: | 8/1/12 to 8/1/13 |
| | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27011871, for the period of 8-1-12 to 8-1-13. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been



paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C.

    b.  Damages under Coverage A, and

    c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

Page 2/3



The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

Keri Lefferts

cc: AON:    Tim Routhieaux, Tim.Routhieaux@aon.com

Carol Murphy, Carol.Murphy@aon.com

ACE:    Ruth Ahlman, Ruth.Ahlman@acegroup.com

Page 3/3

**Exhibit C**



818-428-3763 *tel*

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

keri.lefferts@acegroup.c
om
www.acegroup.com

**Keri Lefferts**
*Claims Director*

August 21, 2014

**<u>VIA CERTIFIED MAIL & EMAIL</u>**
Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|  | Re: | Policy #: | HDOG27022327 |
|---|---|---|---|
|  |  | Policy Period: | 8/1/13 to 8/1/14 |
|  |  | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27022327, for the period of 8-1-13 to 8-1-14. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | <u>$5,000,000</u> |
| Products/Completed/Operations Aggregate Limit | <u>$5,000,000</u> |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,



duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.   **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the  COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.    The General Aggregate Limit is the most we will pay for the sum of:

a.    Medical expenses under Coverage C.

b.    Damages under Coverage A, and

c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

*Keri Lefferts*

Keri Lefferts

cc:  AON:      Tim Routhieaux, Tim.Routhieaux@aon.com

Carol Murphy, Carol.Murphy@aon.com

ACE:      Ruth Ahlman, Ruth.Ahlman@acegroup.com

## Exhibit D



ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Director*

August 4, 2015

**VIA CERTIFIED MAIL & EMAIL**
Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|  | | |
|---|---|---|
| Re: | Policy #: | HDOG27334143 |
| | Policy Period: | 8/1/14 to 8/1/15 |
| | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27334143, for the period of 8-1-14 to 8-1-15. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### Section I – COVERAGES

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

### Section III – LIMITS OF INSURANCE

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C,

    b.  Damages under Coverage A, and

    c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue.
ACE reserves its right to assert new, additional or different coverage defenses should new,
additional or different information and/or documents be received that warrant such action. ACE
reserves its right to supplement this letter. ACE also reserves its right to assert additional terms
and conditions of the Policy at issue to its current coverage determination should new, additional
or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-
3763.

Sincerely,

Keri Lefferts

cc: AON:      Tim Routhieaux, Tim.Routhieaux@aon.com

              Carol Murphy, Carol.Murphy@aon.com

    ACE:      Christine Kloss, Christine.Kloss@acegroup.com

**Exhibit E**

WEIL:\96861059\1\73217.0004

# CHUBB

Chubb North American Claims

818-428-3744 tel

Primary Casualty

818-428-3588 fax

P.O. Box 5113

will.elkner@chubb.com

Scranton, PA 18505

**Will Elkner**
*Senior Claims Specialist*

July 22, 2016

## VIA CERTIFIED MAIL & EMAIL

Rob C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|       |                |                                        |
|-------|----------------|----------------------------------------|
| Re:   | Policy #:      | HDOG27334143                           |
|       | Policy Period: | 8/1/15 - 7/31/16                       |
|       | Insurer:       | ACE American Insurance Company ("ACE") |

Dear Mr. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27334143, for the period of 8-1-15 to 7/31/16. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

> In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form:                                             | Limits of Insurance |
|------------------------------------------------------------|---------------------|
| COMMERCIAL GENERAL LIABILITY                               |                     |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000          |
| Products/Completed/Operations Aggregate Limit              | $5,000,000          |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been

paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.  **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.    The General Aggregate Limit is the most we will pay for the sum of:

    a.    Medical expenses under Coverage C.
    b.    Damages under Coverage A, and
    c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE

reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3744.

Sincerely,

ACE American Insurance Company

Will Elkner

Senior Claims Specialist

cc:  AON:       Tim Routhieaux, Tim.Routhieaux@aon.com

              Carol Murphy, Carol.Murphy@aon.com

      ACE:       Christine Kloss, Christine.Kloss@acegroup.com

**Exhibit F**

Will Elkner                                    O  +213.612.5365
Pacific Region                                 F  +818.428.3588
555 S. Flowers Street, 5th Floor, Los          will.elkner@chubb.com
Angeles, CA 90017
USA

July 24, 2017

**<u>VIA CERTIFIED MAIL & EMAIL</u>**

Robin C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179



|          |               |                                          |
|----------|---------------|------------------------------------------|
| Re:      | Policy #:     | HDO G27853717                            |
|          | Policy Period:| 08/01/2016 -08/01/2017                   |
|          | Insurer:      | ACE American Insurance Company ("ACE")   |

Dear Ms. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27853717, for the period of 8-1-16 to 08/01/2017. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form:                                                         | Limits of Insurance |
|------------------------------------------------------------------------|---------------------|
| COMMERCIAL GENERAL LIABILITY                                           |                     |
| General Aggregate Limit (other than Products/Completed/Operations)    | $5,000,000          |
| Products/Completed/Operations Aggregate Limit                          | $5,000,000          |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**
1.  **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

    **Section III – LIMITS OF INSURANCE**

    2.    The General Aggregate Limit is the most we will pay for the sum of:

        a.    Medical expenses under Coverage C.

        b.    Damages under Coverage A, and

        c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 213.612.5365.

Sincerely,

ACE American Insurance Company

2

Will Elkner
Senior Claims Specialist
.

cc:    AON:       Carol Murphy, Carol.Murphy@aon.com

       Sears:      Laurence Jenchel, Laurence.Jenchel@searshc.com
                    David Halffield, David.Halffield@searshc.com

       Chubb :     Christine Kloss
                    John Edmonds
                    Neal Bhatnagar
                    Steve Naylor
                    Roland Banini

3