**SEARS CRAFTSMAN® RIDING LAWN TRACTOR LITIGATION**

**SETTLEMENT AGREEMENT**

**DATED AS OF JULY 20, 2018**

## SETTLEMENT AGREEMENT

Rebecca Rysewyk, Brian Van Vooren and Katie Smith (the "Plaintiffs"), individually and on behalf of all others similarly situated (as defined in Section 1.4 below), by and through undersigned class counsel ("Class Counsel") and Sears Holding Corporation and Sears, Roebuck and Co., and their successors and assigns (collectively "Sears") (Plaintiffs, Class Counsel and Sears collectively the "Parties," and each a "Party"), hereby enter into this Settlement Agreement, together with its Exhibits (the "Agreement" or the "Settlement Agreement"), as of the last date set forth below, providing for settlement pursuant to the terms and conditions set forth herein below, subject to the approval of the Court.

## RECITALS

WHEREAS, the putative class action case captioned *Rysewyk, et al., on behalf of themselves and all others similarly situated v. Sears Holding Corporation, et al.,* No. 15-cv-04519 (United States District Court for the Northern District of Illinois) was filed on behalf of the Plaintiffs and on behalf of a putative class of other individual consumers seeking damages in connection with the purchase and use of certain Sears Craftsman® Riding Lawn Tractors as defined below (collectively the "Litigation");

WHEREAS, Sears has denied and continues to deny any wrongdoing, any defect in its riding lawn tractors, and any liability to Plaintiffs or other members of the putative Class and asserts numerous defenses to the Plaintiffs' claims;

WHEREAS, the Parties to this Agreement, after (i) having litigated the Litigation for approximately three (3) years; (ii) having engaged in substantial discovery, including written discovery, the production of numerous documents, numerous fact and expert depositions, various inspections of riding lawn tractors, and preparation and disclosure of comprehensive expert reports; (iii) having conducted multiple court hearings; (iv) having engaged in numerous arms-length negotiations over the course of several months, have now reached an agreement providing for a resolution of claims that have been or could have been brought in the Litigation against Sears on behalf of the Settlement Class (defined in Section 1.4 below); and (v) having negotiated attorneys' fees and expenses only after having reached agreement on the material terms and benefits affecting the Settlement Class;

WHEREAS, Sears now wishes to settle all of Plaintiffs' claims relating to the purchase of Sears Craftsman® Riding Lawn Tractors described below;

WHEREAS, the Plaintiffs and Class Counsel have conducted a thorough investigation of the law and facts relating to the matter set forth in the Litigation;

WHEREAS, Class Counsel and Sears have engaged in extensive discussion of the issues presented in the Litigation and in arms-length negotiations of the possible terms of settlement of the claims;

1

WHEREAS, after analyzing the relevant facts and applicable law, taking into account the burdens, risks, uncertainties, time, and expense of litigation, as well as the merits of the terms set forth herein, the Plaintiffs, Plaintiffs' undersigned Class Counsel, and Sears have concluded that the settlement set forth in this Agreement is fair, reasonable, adequate and in the best interests of the proposed Settlement Class;

WHEREAS, Sears has concluded that resolving the claims settled under the terms of this Agreement is desirable to reduce the time, risk and expense of defending multiple claims and multiple party litigation, and to resolve finally and completely the claims of the Plaintiffs and the proposed Settlement Class (as defined in Section 1.4 below) without any admission of a defect, wrongdoing, or liability;

NOW, THEREFORE, Plaintiffs, Class Counsel, and Sears stipulate and agree to the terms and conditions set forth herein, which are subject to the Court's approval under Fed. R. Civ. P. 23(e).

1.    **DEFINITIONS**

As used in this Agreement, and in addition to the definitions set forth in the preamble and recitals above, capitalized terms shall have the following definitions and meanings or such definitions and meanings as are accorded to them elsewhere in this Agreement. Terms used in the singular shall be deemed to include the plural and vice versa; the term "person" shall include, as appropriate, legal entities as well as natural persons.

1.1    "Attorneys' Fees and Expenses" means the reasonable attorneys' fees and documented litigation expenses of Class Counsel and any other counsel incurred in connection with the Litigation and this Settlement Agreement that are the subject of an application to the Court for recovery under this Settlement Agreement and which are awarded by the Court, which are described and limited by the provisions of Section 15.

1.2    "Business Day" means any day that is not a Saturday, a Sunday or other day on which commercial banks in the City of New York, New York are required or authorized by law to be closed.

1.3    "Claim" means either (i) a claim submitted to the Settlement Administrator pursuant to this Agreement for reimbursement of certain out-of-pocket expenses within the deadline provided in the Long Form Notice, or (ii) a request following the Effective Date (as defined in Section 1.10) for an Inspection and Repair of a Covered Condition (as defined in Section 2.3) provided pursuant to the Settlement, and the requirements for either of these to be valid are set forth in this Agreement.

1.4    "Class" or "Settlement Class" means that, subject to the Court's approval, and the conditions of this Agreement, the undersigned agree and consent to the certification pursuant to Fed. R. Civ. P. 23(b)(3) of the following class for purposes of settlement only:

2

Case 1:15-cv-04919    Document 185-1    Filed 01/23/18    Page 5 of 39 PageID #:4006

All individuals who between January 1, 2009 and December 31, 2015, purchased from Sears, Roebuck and Co. ("Sears") in the United States certain new Craftsman® Riding Lawn Tractors for primarily personal use, the model numbers of which are attached as Exhibit A to the Settlement Agreement (hereinafter "CRLT").

Excluded from the Settlement Class are (a) officers, directors, and employees of Sears; (b) insurers of members of the Settlement Class; (c) any entity purporting to be a subrogee of a member of the Settlement Class; (d) all suppliers, manufacturers, distributors, shippers, and third-party issuers or providers of extended warranties or service contracts for CRLTs; (e) individuals who previously settled and released claims against Sears with respect to their CRLTs which fall within the definition of "Released Claims" in Section 1.31; (f) individuals other than the Settlement Class Representatives who, as of the date of the Settlement Agreement, have legal damage claims pending against Sears with respect to their CRLTs, and (g) the judge overseeing the proposed settlement and the judge's immediate family.

1.5    "Class Counsel" means the counsel representing the Named Plaintiffs, namely Berger & Montague, P.C.; Greg Coleman Law, P.C.; and Wexler Wallace, LLP, and who, upon appointment by the Court, will be counsel for the Settlement Class.

1.6    "Class Period" means from January 1, 2009 through December 31, 2015, which is the timeframe during which the purchase of a CRLT in the United States had to have occurred in order for the purchaser to be a member of the Settlement Class.

1.7    "Court" means Judge Manish S. Shah of the United States District Court for the Northern District of Illinois who is overseeing the Litigation.

1.8    "Covered Conditions" means a Fuel Leak (as defined in Section 1.14) and/or Loose Fuel Line Connection (as defined in Section 1.17).

1.9    "CRLT" means certain new Craftsman® Riding Lawn Tractors sold by Sears, Roebuck and Co. from January 1, 2009 through December 31, 2015 in the United States for primarily personal use, the model numbers of which are attached as Exhibit A to the Settlement Agreement.

1.10    "Effective Date" shall mean the Business Day following: (A) the entry by the Court of the Final Order and Judgment: (i) affirming certification of the Class; (ii) finding the Settlement Agreement to be fair, adequate and reasonable; (iii) finding that the Notice to the Class of the Settlement Agreement was fair, adequate and reasonable; (iv) resolving any and all objections to the fairness and reasonableness of the Settlement Agreement, if

3

18-23538-shl Doc 1551-1 Filed 01/11/19 Entered 01/11/19 16:16:28 Exhibit A-
Settlement Agreement Pg 5 of 38
Case 3:15-cv-04915 Document 185-1 Filed 07/23/2018 Page 6 of 39 PageID #:1007

CRLT Settlement Agreement

any; and (v) dismissing the Settlement Class Members' Released Claims with prejudice against Released Persons with each Party to bear its own costs, and (B) the expiration of the deadline for seeking appellate review of the Final Order and Judgment if no appeal or writ of certiorari is perfected or sought. However, if an appeal is taken, the Effective Date shall be the day following the date all appellate courts with jurisdiction affirm the Final Order and Judgment with no possibility of further appellate review existing, or such later date as the Parties otherwise agree. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns solely the issue of Class Counsel's request for Attorneys' Fees and Expenses and Named Plaintiff Service Awards.

       1.11   "Exhibit A to the Settlement Agreement" means the document identified as Exhibit A of this Agreement, listing the model numbers of Craftsmen® Riding Lawn Tractors covered by this Settlement. However, the Exhibit A initially included with this Agreement may not be the final list. Therefore, the Parties agree that they are permitted to substitute a revised and updated Exhibit A before the Notice Commencement Date. If the Parties agree on a revised and updated Exhibit A before the Notice Commencement Date, it will be filed with the Court and will become the Exhibit A to the Settlement Agreement and posted on the Settlement Website. If no agreement is reached between the Parties on a revised and updated Exhibit A before the Notice Commencement Date, then the initial Exhibit A attached to this Agreement will remain the Exhibit A to the Settlement Agreement and be posted on the Settlement Website.

       1.12   "Fairness Hearing" shall have the meaning ascribed in Section 6.10.

       1.13   "Final Order and Judgment" means an order and judgment entered by the Court finally approving the settlement set forth in this Settlement Agreement under Fed. R. Civ. P. 23(e), confirming certification of the Class, and making such other findings and determinations as the Court deems necessary and appropriate to approve the settlement and terms of this Settlement Agreement and to release and dismiss with prejudice the Released Claims (as defined below) and Released Claims of Named Plaintiffs (as defined below) by any and all Settlement Class Members and, as applicable, Named Plaintiffs (as defined below) against Sears and all Released Persons (as defined below).

       1.14   "Fuel Leak" means a leak at any Relevant Connection.

       1.15   "Inspection and Repair" shall have the meaning ascribed in Section 2.

       1.16   "Long Form Notice" shall have the meaning ascribed in Section 6.

1.17    "Loose Fuel Line Connection" means that the clamp securing the fuel line at any Relevant Connection moves without the use of tools and with minimal force, or that the fuel line disconnects from any Relevant Connection without the use of tools and with minimal force.

1.18    "Named Plaintiffs" means Rebecca Rysewyk, Katie Smith, Brian Van Vooren, and Mary Rood (former plaintiff).

1.19    "Named Plaintiff Service Awards" shall have the meaning ascribed in Section 16.

1.20    "Notice" shall have the meaning ascribed in Section 6.

1.21    "Notice Commencement Date" means the date on which the Settlement Website containing the Long Form Notice is first available to be accessed on the internet.

1.22    "Objection Deadline" means the deadline set forth in Section 6.13, subject to Court approval, for Settlement Class Members to submit objections to the Settlement pursuant to the procedures established by the Court and set forth in the Long Form Notice.

1.23    "Opt-Out Deadline" means the deadline set forth in Section 6.11, subject to Court approval, for Settlement Class Members to submit requests for exclusion from the Class pursuant to the procedures established by the Court and set forth in the Long Form Notice.

1.24    "Opt-Out Procedure" shall mean the process for a Settlement Class Member to exercise his or her right to be excluded from the Settlement Class and this Settlement in accordance with Fed. R. Civ. P. 23(c)(2) and the procedures set forth in the Long Form Notice.

1.25    "Opt-Outs" shall mean those Settlement Class Members who have timely and properly exercised their right to exclude themselves from the Class pursuant to the Opt-Out Procedure, and therefore are no longer Settlement Class Members.

1.26    "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's owners, members, partners, shareholders, spouse, heirs, predecessors, successors, representatives, and assignees.

1.27    "Preliminary Approval and Settlement Class Certification Order" means an order entered by the Court, preliminarily approving the settlement and certifying the Class for purposes of settlement only, substantially in the form of Exhibit B.

1.28    "Proof of Claim Form" means the document substantially in the form of Exhibit C, which may be submitted by Settlement Class Members to the Settlement Administrator with any supporting documentation to make a claim for reimbursement of out-of-pocket expenses as set forth in Sections 2 and 3 of this Settlement Agreement.

1.29    "Purchased" shall mean the acquisition of a new and previously unused CRLT by the payment of consideration to Sears, Roebuck and Co. for said CRLT.

1.30    "Reimbursement Claim Deadline" shall have the meaning ascribed in Section 6.17.

1.31    "Released Claims" means any and all known or unknown economic injury claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory or statute whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Settlement Class Member, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of or in any way connected with the purchase, use and performance of a CRLT, including but not limited to, (i) all claims for out-of-pocket expense, diminution-in-value, benefit-of-the-bargain, cost-of-repair, cost-of-replacement, cost-of-maintenance, consequential damages, or premium-price damages, arising out of the Settlement Class Member's purchase or use of a CRLT, and (ii) the allegations contained in the Litigation. The Released Claims do not include any claims for property damage, personal injury or death or claims derivative of such claims, nor does this Settlement Agreement revive any such claims.

1.32    "Released Claims of Named Plaintiffs" means any and all known or unknown claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory or statute whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that Plaintiffs Rebecca Rysewyk, Katie Smith, and Brian Van Vooren, and former Plaintiff Mary Rood, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of or in any way connected with the purchase, use and performance of a CRLT, including but not limited to, (i) all claims for property damage, out-of-pocket expense, diminution-in-value, benefit-of-the-bargain, cost-of-repair, cost-of-replacement, cost-of-maintenance, economic loss or injury, consequential damages, or premium-price damages, arising out of the purchase or use of a CRLT, (ii) the allegations contained in the Litigation, and/or (iii) any claim for reimbursement under this Settlement. The Released Claims of Named Plaintiffs do not include any claims for personal injury or death or claims derivative of such claims, nor does this Settlement Agreement revive any such claims.

6

1.33 "Released Persons" means (a) Sears Holding Corporation, (b) Sears, Roebuck and Co., (c) Sears Home Products, Inc., (d) Husqvarna Consumer Outdoor Products N.A., Inc., (e) all manufacturers, distributors, suppliers, wholesalers, retailers, licensors or licensees, and/or any other Person who was in any way involved in or within the chain of distribution of CRLTs, including the chain of design, testing, manufacture, assembly, distribution, marketing, sale, transport, or servicing of CRLTs as well as any warranty service providers involved in servicing the CRLTs purchased or used by a Plaintiff or Settlement Class Member pursuant to a CRLT new product warranty issued by Sears, and (f) the respective past, present, and future parents, subsidiaries, affiliates, joint ventures, officers, directors, shareholders, agents, representatives, servants, employees, attorneys, predecessors and successors in interest, assigns, and insurers of the Persons described in the preceding clauses (a) though (e) above.

1.34 "Relevant Connections" means the connection of the fuel tank grommet to the fuel tank or any other point where the fuel line connects to another part such as the fuel tank, fuel filter, fuel pump (where applicable), or engine.

1.35 "Service Technician" means a qualified service technician authorized by Sears to perform an Inspection and Repair (as defined) of Covered Conditions provided pursuant to this Agreement.

1.36 "Settlement Administrator" shall have the meaning ascribed in Section 11.

1.37 "Settlement Class Member" means all Persons in the Settlement Class who do not exclude themselves from the Class by the Opt-Out Procedure as set forth in the Long Form Notice.

1.38 "Settlement Class Representatives" means the Plaintiffs as set forth in the preamble of this Agreement.

1.39 "Settlement Escrow Account" shall be the escrow account established and funded in accordance with Section 5 to be the means to pay for the reasonable costs and expenses of providing Notice and other administrative and claim processing activities of the settlement, costs of the settlement, and any court awarded Attorneys' Fees and Expenses and Named Plaintiff Service Awards.

1.40 "United States" means the United States of America including the fifty States of the United States, the District of Columbia, and the territories, possessions, and commonwealths of the United States.

7

## 2.    SETTLEMENT CONSIDERATION AND CLAIMS

2.1     Benefits will be provided to members of the Settlement Class following the occurrence of the Effective Date, as follows:

2.2     **Inspections and Repairs of Covered Conditions:** Settlement Class Members will have the benefit of being able to receive, for a defined period as set forth below, inspections and repairs of Covered Conditions if, after performance of a self-inspection pursuant to instructions made available on the Settlement Website, a Covered Condition is observed on their CRLT .

2.3     Settlement Class Members may request an Inspection and Repair for a Covered Condition observed on their CRLT during the periods indicated, each such period to commence on the "Effective Date" of the Settlement Agreement:

2.3.1    Settlement Class Members who purchased their CRLTs from January 1, 2009 through December 31, 2013:  12 months.

2.3.2    Settlement Class Members who purchased their CRLTs from January 1, 2014 through December 31, 2015:  18 months.

2.4     Settlement Class Members whose CRLT is found by the Settlement Class Member to have a Covered Condition may seek an Inspection and Repair of his or her CRLT no more than three (3) times during the period applicable to that Settlement Class Member as referenced in Sections 2.3.1 and 2.3.2.

2.5     After the Effective Date, Settlement Class Members who, upon their own inspection of their CRLT pursuant to instructions made available through the Settlement Administrator's website, identify a Fuel Leak or Loose Fuel Line Connection, will be entitled to request an Inspection and Repair of the Covered Conditions by a Service Technician under the Agreement.

2.6     Once the Effective Date occurs, information on how to make a claim for an inspection and repair of a Covered Condition will be available on the Settlement Website and by calling the settlement toll-free number set forth in the Notices, which shall remain in effect until the time periods in Section 2.3 have expired.  Settlement Class Members shall be required to verify that they have performed a self-inspection and observed a Covered Condition, and provide the month, year, and place of purchase of their CRLT when requesting an inspection and repair and when an inspection and repair takes place.

2.7     When an inspection and repair under this Section occurs, the Service Technician shall inspect for a Fuel Leak and Loose Fuel Line Connection and repair all Fuel Leaks and Loose Fuel Line Connections and

8

replace the parts necessary for such repair(s), at no cost to the Settlement Class Member, except as set forth below in Section 2.8.

2.8    If Settlement Class Members make requests for an inspection and repair of a Covered Condition they have observed on their CRLT during the applicable period, Settlement Class Members will be given the choice of bringing their CRLTs to a Service Technician reasonably located within their geographic area or having the Service Technician come to their homes or other location where the CRLT is stored to perform the Inspection and Repair. For Settlement Class Members who bring their CRLTs to a Service Technician for service, there will be no charge whatsoever for the Inspection and Repair. However, for those Settlement Class Members who choose to have a Service Technician come to their home to perform the Inspection and Repair, there will be a $35.00 charge per at-home service visit, payable to the Service Technician in advance of the Inspection and Repair, to defray the cost of each at-home service visit. The Settlement Class Members will be advised when they request such at-home service that the at-home service fee is non-refundable unless the at-home service appointment is canceled at least 24 hours in advance.

2.9    The Service Technician shall make reasonable efforts to perform the Inspection and Repair within twenty-one (21) days after a Settlement Class Member requests an Inspection and Repair after the Effective Date.

2.10    **Reimbursement of Out-of-Pocket Expenses:** Settlement Class Members who previously incurred out-of-pocket costs for repair of a Covered Condition of their CRLT will be entitled to cash reimbursement for up to $125.00 of such out-of-pocket costs, subject to the following and as more fully described in Section 3:

2.10.1 Submission of a Proof of Claim Form under penalty of perjury that includes the model and serial numbers of the CRLT, the month and year of purchase, and reasonable documentation of the Covered Condition repaired on the CRLT, a receipt for the out of pocket repair costs for the Covered Condition on the CRLT paid by the Settlement Class Member, a description of the repair work performed and parts replaced on the CRLT, and the identification and location of the entity that performed the repair work, or

2.10.2 For Settlement Class Members who do not possess the documentation described in Section 2.10.1, submission of a Proof of Claim Form under penalty of perjury that sets forth the model and serial numbers of the CRLT, the month and year of purchase, the Covered Condition repaired on the CRLT, the out of pocket repair costs relating to the Covered Condition on the CRLT paid by the Settlement Class Member, a description of the repair work performed and parts replaced on the CRLT, and the identification and location of the entity that performed the repair work, along

9

with a statement that the Settlement Class Member made reasonable efforts to obtain a receipt or other documentation for the repair costs from the entity that performed the repair work on the CRLT.

      2.11    In exchange for the benefits being made available by this settlement, Released Persons shall be released by means of the Final Order and Judgment from (i) the Released Claims of the Settlement Class Members and (ii) the Released Claims of Named Plaintiffs.

      2.12    Upon the Effective Date, the Named Plaintiffs and Class Counsel on the one hand, and Released Persons and Defendant's Counsel on the other hand, hereby mutually release each other from any and all claims relating to the institution, prosecution or defense of this Action, including the negotiation of this Settlement Agreement.

## 3.     <u>SETTLEMENT ADMINISTRATION AND LIMITATIONS</u>

      3.1    The Settlement Administrator will be chosen jointly by the parties. The Settlement Administrator will administer the Notice and the reimbursement claims made pursuant to Section 2.10. Sears shall bear the costs of Notice and claims administration.

      3.2    Direct notice shall be issued to Settlement Class Members for whom Sears has reasonably available contact information, along with some form of media notice as agreed upon by the parties necessary to satisfy due process, which will be described in the Notice Plan to be submitted to the Court, all subject to the approval of the Court.

      3.3    Only one Settlement Class Member may seek settlement relief with respect to a particular CRLT. Settlement claims by different Settlement Class Members with respect to the same CRLT will be denied.

      3.4    Settlement Class Members may (a) assert a claim under this Settlement for Reimbursement of Out-of-Pocket Expenses, as set forth above, regarding a particular CRLT, and/or (b) following the Effective Date, request an inspection and repair of a Covered Condition that was observed following a self-inspection of their CRLT according to the instructions available on the Settlement Website.

      3.5    The claimant for Reimbursement of Out-of-Pocket Expenses must provide (a) proof of ownership of the CRLT in the form of (i) a photograph of the CRLT to which the claim is being made showing its serial and model number, or an invoice, receipt, credit card statement, canceled check, or other documentation demonstrating proof and date of purchase and (b) an attestation under penalty of perjury that (i) the proof of ownership provided under subpart (a) is true and correct evidence that the claimant is the owner of the CRLT to which the claim is asserted, (ii) the claimant purchased the CRLT

new during the Class Period, and (iii) that since he/she purchased the CRLT, he/she experienced a Covered Condition and expended out-of-pocket sums for the repair of such Covered Condition.

      3.6     A claimant for Reimbursement of Out-of-Pocket Expenses for repair of his or her CRLT for a Covered Condition must additionally provide sufficient contemporaneous documentary proof to show that he/she paid out-of-pocket costs to repair the CRLT for a Covered Condition prior to June 15, 2018 (e.g., service tickets, receipts, canceled checks) in the amount claimed, up to the $125.00 limit. Only in the absence of such sufficient documentary proof and reasonable efforts to obtain such sufficient documentary proof are undertaken by the Settlement Class Member may a Settlement Class Member who incurred out-of-pocket expenses to repair a Covered Condition on his/her CRLT may make a claim based on the requirements of Section 2.10.2.

      3.7     All Settlement Class Members shall have a period of 90 days from the Notice Commencement Date during which to complete submission of any claims for Reimbursement of Out-of-Pocket Expenses.

      3.8     Each Settlement Class Member who submits a Proof of Claim Form bears the burden of proving to the Settlement Administrator the validity of their claim through the supporting documentation and Proof of Claim Form submitted under penalty of perjury. To be valid, a Claim must be (1) timely submitted with all required information and documentation, (2) submitted by the individual Settlement Class Member or a family member or legal guardian of such Settlement Class Member (no other third-party submissions), (3) timely supplemented with additional information or documentation as required or in response to requests by the Settlement Administrator pursuant to a deficiency notice or an audit of the Claim, and (4) signed by the submitting Settlement Class Member under the penalties of perjury.

      3.9     The Settlement Administrator will determine the adequacy of the proof submitted in support of a claim. Only qualifying amounts paid by the Settlement Class Member submitting a claim (and not any amounts paid or reimbursed by third-party payors or others) will be reimbursed to a Settlement Class Member pursuant to the Settlement's terms. Because Settlement Class Members will be entitled to payments on the basis of actual out-of-pocket expenditures or costs and losses about which they must submit proof under the terms of this Agreement, there is no minimum payment. If repairs for items other than Covered Conditions were made at the same time as repairs for Covered Conditions, then any charges related to travel or other charges that could apply to all repairs will be pro-rated according to the labor time spent on each repair. For example, if the Service Technician providing the repair charged a $100 fee for traveling to the location of the CRLT, and performed two repairs – one a Covered Condition and one a non-Covered Condition – each taking thirty minutes, then only one-half of the $100 fee, or $50, may be reimbursed.

3.10     Sears and/or the Settlement Administrator will have the right to challenge and investigate any questionable requests for reimbursement of out-of-pocket expenses, including contacting the entity that performed the work in order to verify the Settlement Class Member's claim and documentation. Evidence of any false or fraudulent submissions or claims shall result in the denial of the claim and submission of such evidence to the Court and/or other appropriate authorities.

3.11     Attorneys' Fees and Expenses as approved by the Court and limited by Section 15, any Named Plaintiff Service Awards, as approved by the Court and limited by Section 16, the expenses incurred in providing the Court-approved Notice to the Settlement Class of the Settlement Agreement, and the reasonable administrative expenses of the Settlement Administrator incurred in connection with the operation of the Settlement Agreement including, *inter alia*, providing Notice to the Settlement Class, creating and maintaining a Class Settlement Website, processing requests for exclusion from the Settlement Class, and the processing of claims and other administration expenses of the Settlement, as approved by the Court, will be paid by or on behalf of Sears.

3.12     Other than to pay the costs of the Settlement Administrator for the costs of Notice and administration or to pay the Attorneys' Fees and Expenses and Named Plaintiff Service Awards, as approved by the Court pursuant to Sections 15 and 16, no other payments shall be made by Sears prior to (i) the Judgment becoming Final, (ii) the Effective Date of this Settlement Agreement being reached, and (iii) the Claim Filing Deadline having passed.   Also, no payments shall be made on claims that are the subject of any verification efforts or audit until such verification efforts and/or audit have been completed and the claims qualify for payment.

## 4.     PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT

4.1     Plaintiffs and Sears, through their designated counsel, shall cooperate, assist and undertake all reasonable actions to accomplish the steps contemplated by this Settlement Agreement and to implement the settlement on the terms and conditions provided herein.

4.2     Promptly after the execution of this Agreement, Plaintiffs shall submit a motion to the Court for the certification of a Class for purposes of settlement and for preliminary approval of this Settlement Agreement and related matters by means of entry by the Court of an Order for Preliminary Approval and Settlement Class Certification, substantially in the form attached hereto as Exhibit B.  For purposes of settlement, Sears will not oppose this motion.

4.3     Upon entry of a Preliminary Approval and Settlement Class Certification Order, the Parties shall proceed with further steps to

implement the Settlement on the terms and conditions of this Settlement Agreement.

4.4    Certification of the Settlement Class in the Preliminary Approval and Settlement Class Certification Order shall be for settlement purposes only.

4.5    Promptly after the Court issues its Preliminary Approval and Settlement Class Certification Order for settlement purposes only, Defendants shall submit to this Court, and any other appropriate courts, if necessary, unopposed motions to stay this Case pursuant to which stay order(s) the Court shall enjoin and stay, during the pendency of the settlement proceedings contemplated by this Agreement, the commencement and/or prosecution of any and all actions and proceedings (including discovery) brought by anyone for any Released Claims or Released Claims of Named Plaintiffs against any of the Released Persons, including any actions brought on behalf of or through any Settlement Class Members, such stay and injunction to remain effective during the pendency of such settlement proceedings unless modified by further order of the Court. Any stay orders entered in accordance with this provision shall remain in effect until the Effective Date, unless otherwise ordered by the Court.

4.6    In the event the Court fails to enter the Preliminary Approval and Settlement Class Certification Order, in which event it will enter an Order denying the Motion for Preliminary Approval and Settlement Class Certification Order, then the Settlement Agreement is terminated, there is no certification of a Class, and the status of the Litigation shall be as it was prior to the execution of the Agreement without prejudice to any of the positions of the Parties, including on the issue of the appropriateness of class certification in this or other contexts. In such event, the terms and provisions of this Agreement will have no further force or effect with respect to the Parties and will not be used in this Litigation or in any other proceeding for any purpose, and any order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc*.

## 5.    SETTLEMENT ESCROW ACCOUNT AND FUNDING

5.1    The Parties have agreed to the establishment of an escrow account to be the means to pay the reasonable costs and expenses of providing Notice and other administrative and claim processing activities of the settlement, including any court awarded Attorneys' Fees and Expenses and Named Plaintiff Service Awards ("Settlement Escrow Account"). The Settlement Escrow Account also will be used to fund and pay for any cash awards made to Settlement Class Members for reimbursement expenses under Section 2.10.

5.2    All of Sears's payment obligations under the Settlement Agreement, other than for the cost of Inspections and Repairs of Covered

13

Conditions by Service Technicians, will be made from the Settlement Escrow Account.

5.3    Other than to pay the costs of the Settlement Administrator for the costs of Notice and administration as approved by the Court or to refund Sears in the event this Settlement Agreement is not approved or is terminated, no other disbursements shall be made from the Settlement Escrow Account prior to (i) the Judgment becoming Final, (ii) the Effective Date of this Settlement Agreement being reached, and (iii) the Reimbursement Claim Filing Deadline having passed.  Also, no disbursements shall be made to pay claims that are the subject of any verification efforts or audit until such verification efforts and/or audit have been completed and the claims qualify for payment.

5.4    Disbursements from the Settlement Escrow Account shall be made in accord with an escrow agreement to be entered into on behalf of the Class Counsel, Sears, the Settlement Administrator, and the bank for the Settlement Escrow Account pursuant to orders of the Court and in accordance with this Settlement Agreement.

5.5    The Settlement Escrow Account shall be created at the Settlement Administrator to be held at The Huntington National Bank, 41 South High Street, Columbus, OH 43287, or another federally-insured bank agreed upon by Sears and Class Counsel, which escrow account will be subject to the jurisdiction of the Court.  Within ten (10) Business Days after (i) the Court enters an order preliminarily approving the Settlement and (ii) the Settlement Escrow Account is established, whichever date is latest, Sears shall deposit or cause to be deposited $500,000.00 into the Settlement Escrow Account by electronic funds transfer pursuant to instructions of the Settlement Administrator.

5.6    The Settlement Administrator shall be responsible for all administrative, accounting, and tax compliance activities in connection with the Settlement Escrow Account.    Sears and Class Counsel shall provide the Settlement Administrator with all information and documentation necessary to facilitate tax compliance activities.

5.7    Any interest that accrues on amounts in the Settlement Escrow Account shall be deemed to be part of the Settlement Escrow Account.

5.8    If for any reason this Settlement Agreement does not obtain Final Approval, does not become Final, the Effective Date of the Settlement Agreement does not occur, and/or the Agreement is terminated, the amounts paid into the Settlement Escrow Account by Sears (less any amounts paid for the costs of Notice and administration pursuant to the Court-ordered Notice Plan prior to termination of the Settlement Agreement) shall be forthwith refunded with any interest accrued with respect to such amounts to be refunded.

14

5.9    Sears shall make additional deposits to the Settlement Escrow Account from time to time when, and to the extent necessary, to pay valid Settlement Class Member claims, costs of Notice, administrative expenses, and Attorneys' Fees and Expenses, but only to the extent that all of the deposits made by or caused to be made by Sears to the Settlement Escrow Account are in accord with the terms of this Settlement Agreement and related Court orders. However, the Settlement Administrator shall not pay any Settlement Class Member claims, Attorneys' Fees and Expenses, or Named Plaintiff Service Awards (nor shall any deposit of sums into the Settlement Escrow Account for their payment be required) before (i) five (5) Business Days after the Effective Date and (ii) the Court order(s) awarding Attorneys' Fees and Expenses and Named Plaintiff Service Awards are final and no longer subject to the possibility of an appeal.

5.10    In the event there is any residual amount in the Settlement Escrow Account after the payment of all valid claims, Attorneys' Fees and Expenses, Named Plaintiff Service Awards, and the costs of Notice and claims administration, the residual amount shall be refunded with any interest accrued with respect to such residual amount.

## 6.    NOTICE, DEADLINES, AND THE FAIRNESS HEARING

6.1    Concurrently with the filing of the motion referred to in Section 4.2, the Parties shall also submit for the Court's approval a Short Form Notice and Long Form Notice to apprise the Settlement Class Members of the certification of the Settlement Class for settlement purposes, the proposed Settlement Agreement, the Opt-Out Procedure, Opt-Out Deadline, the procedure for filing objections, the Objection Deadline, and the date and place of the fairness hearing, substantially in the forms of Exhibit D ("Short Form Notice"), Exhibit E ("Publication Version of Short Form Notice"), and Exhibit F ("Long Form Notice") (collectively the "Notice") and a Notice Plan. Within forty-five (45) days of the entry of the Preliminary Approval and Settlement Class Certification Order, the Settlement Administrator (as defined in Section 11 below) shall commence dissemination of the Notice to the Settlement Class in the manner so ordered.

6.2    The Notice Plan will direct to Settlement Class Members the best notice that is practicable under the circumstances, satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(b) and due process, and shall consist of the following: (i) the Mailed Form of Notice shall be emailed to the last known email address of Settlement Class Members that can reasonably be identified by Sears from its records, (ii) the Mailed Form of Notice shall be mailed, by first class or priority United States Mail, to the last known address of Settlement Class Members that can reasonably be identified by Sears where Sears does not have an email address for that Settlement Class Member, (iii) the Mailed Form of Notice shall be mailed, by first class or priority United States Mail, to the last known address of Settlement Class Members that can reasonably be identified by

Sears where an email notice to that Settlement Class Member is undeliverable; (iv) the Long Form Notice shall be distributed to those Settlement Class Members by (a) making it available in English (or Spanish) for Settlement Class Members who request it, and (b) posting it online on the Settlement Website, (v) targeted internet ads that will include a link to the Settlement Website, and (vi) a Publication Form of Notice to be published in certain select publications.

6.3    Subsequent to the entry of the Preliminary Approval Order, Sears shall provide to the Settlement Administrator reasonably available mailing addresses and email addresses, along with model and serial number information, contained in Sears's databases in computer readable format and will cooperate with the Settlement Administrator in transmitting this information in the manner that is most efficient for the Settlement Administrator.  Sears will cooperate in making this relevant information from its databases available to the Settlement Administrator to facilitate identification of potential Settlement Class Members.

6.4    The Settlement Administrator will send an electronic copy of the Mailed Form of Notice to all Settlement Class Members for whom an email address is reasonably available.  The Settlement Administrator shall take commercially reasonable steps to complete and/or update email addresses for Settlement Class Members and also engage in a "list cleansing" process prior to disseminating the emails with Mailed Form of Notices.

6.5    The Settlement Administrator will obtain, or cause to be obtained, address updates utilizing a National Change of Address database.  The Settlement Administrator will use any updated addresses obtained for those Settlement Class Members to whom a Mailed Form of Notice will be mailed by United States mail.  The Settlement Administrator will forward Mailed Form of Notices that are returned by the United States Postal Service with a forwarding address.

6.6    The Settlement Administrator also shall develop and manage a toll-free number with an automated system providing information about the Settlement, with the ability to request copies of the Long Form Notice, the Settlement Agreement, the Proof of Claim Form for the period from no later than forty-five (45) days after the entry of the Preliminary Approval and Settlement Class Certification Order up to and including the Reimbursement Claim Deadline.  Also, the Settlement Administrator's website and toll-free number will provide information on the occurrence of the Effective Date. Further, from the Effective Date until the time periods set forth in Section 2.3 have expired, the Settlement Administrator's website and toll-free number will provide information on how a Settlement Class Member may inspect his or her CRLT for a Covered Condition and request an inspection and repair of a Covered Condition observed by the Settlement Class Member on their CRLT.

6.7     The Settlement Administrator also shall develop and manage a website to include for viewing or downloading the settlement-related documents, including the Long Form Notice and Proof of Claim Form, for the period from no later than forty-five (45) days after the entry of the Preliminary Approval and Settlement Class Certification Order up to and including the time upon which this Settlement has been fully implemented ("Settlement Website").

6.8     The Settlement Administrator shall also establish a mailing address to allow Settlement Class Members the opportunity to request the Long Form Notice, Proof of Claim Form and additional information by mail, or submit a Proof of Claim Form with any supporting documentary proof by mail until following the expiration of the Reimbursement Claim Deadline.

6.9     The Notice shall also inform Settlement Class Members of the time, date and place set by the Court for the hearing to determine whether the Settlement Agreement should receive final approval as fair and adequate, whether the certification of the Settlement Class should be re-affirmed, whether Named Plaintiff Service Awards should be issued and in what amount, whether reasonable Attorneys' Fees and Expenses should be awarded to Class Counsel and in what amounts, and whether the Final Order and Judgment should be entered ("Fairness Hearing").

6.10     The Settlement Administrator and the Parties and their counsel will determine in advance the Notice Commencement Date and will calculate the Opt-Out Deadline, Objection Deadline, and Reimbursement Claim Deadline, which deadlines shall be included on the Settlement Website and in all Notices provided pursuant to the Notice Plan.

6.11     The Notice shall provide instructions to individuals who wish to exclude themselves from the Settlement Class regarding the Opt-Out Procedure that must be followed to be excluded from the Settlement Class. Settlement Class Members shall have the ability to submit requests in writing to be excluded from the Settlement Class provided the requests are postmarked no later than sixty (60) days after the Notice Commencement Date ("Opt-Out Deadline"). The Parties, in consultation with the Settlement Administrator, shall determine the Opt-Out Deadline date and include it in all Notices.

6.12     All Settlement Class Members who do not timely exclude themselves from the Settlement Class shall in all respects be bound by all terms of this Settlement Agreement, and the Final Order and Judgment finally dismissing the Released Claims as against Sears and the other Released Persons and shall be permanently barred from commencing, instituting, or prosecuting any action based on any Released Claims (or Released Claims of Named Plaintiffs as to the Named Plaintiffs) against Sears or any other Released Persons in any court of law or equity, arbitration, tribunal or administrative or other forum.

6.13    The Notice also shall state that any Settlement Class Member who wishes to appear to oppose the reasonableness and fairness of the Settlement Agreement at the Fairness Hearing must file an objection in writing, stating the basis of the objection, and then deliver said objection to the Court at the following address:  Clerk of the Court, United States District Court, Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604.  All objections must be filed with the Clerk of the Court and served on counsel for the Parties, received in writing or if mailed postmarked, no later than sixty (60) days after the Class Notice Commencement Date ("Objection Deadline").  The Parties, in consultation with the Settlement Administrator, shall determine the Objection Deadline date and include it in all Notices.

6.14    Any objections must include (i) the Settlement Class Member's full name and current address and telephone number; (ii) the serial number of the CRLT the Settlement Class Member owns or owned; (iii) a description of all of the Class Member's objections, the specific reasons therefore, and any and all supporting papers, including, without limitation, all briefs, written evidence, and declarations; and (iv) the Class Member's signature.

6.15    Settlement Class Members submitting objections who wish to appear either personally or through counsel at the Fairness Hearing and present their objections to the Court orally must include a written statement of intent to appear at the Fairness Hearing in the manner prescribed by the Notice. Only Settlement Class Members who specify in their objections that they intend to appear personally or through counsel at the Fairness Hearing will have the right to present their objections orally at the Fairness Hearing.  Settlement Class Members who do not submit timely written objections will not be permitted to present their objections at the Fairness Hearing.

6.16    Any Settlement Class Member who does not so object by the timely submission of an objection (pursuant to the procedures set forth in the Notice) to the Clerk of the Court, United States District Court, Northern District of Illinois, Chicago office, and to counsel for the Parties, shall be deemed to have waived, and forever shall be foreclosed from raising, any objection to the Settlement Agreement.

6.17    Settlement Class Members must file in person, by mail and have postmarked, or submit via the Settlement Website, completed Proof of Claim Forms with any supporting documentation to the Settlement Administrator within ninety (90) days of the Notice Commencement Date in order to have filed a timely claim for reimbursement of out-of-pocket expenses under this Settlement ("Reimbursement Claim Deadline").

6.18    Parties agree that the form and publication of the Notice as detailed in this Section 6 constitutes fair and adequate notice to the Class and satisfies due process.

6.19    The reasonable costs for the Notice Plan shall be paid from the Settlement Escrow Account as funded by Sears. Class Counsel and the Settlement Administrator shall be responsible for the development of the Notice Plan. However, the Notice Plan (including the content of all Notices) and all expenditures for Notice shall be subject to advance approval by Sears and subject to Court approval.

## 7.    FINAL ORDER AND JUDGMENT, RELEASE

7.1    Plaintiffs, on their own behalf and on behalf of the Settlement Class Members, agree that the Final Order and Judgment entered by the Court shall be substantially in the form of the attached Exhibit G and will contain the following release, waiver and covenant not to sue, which shall take effect upon all members of the Settlement Class on the Effective Date:

Each Settlement Class Member releases and forever discharges and holds harmless the Released Persons of and from any and all Released Claims which the Settlement Class Member has or may hereafter have. Each Settlement Class Member further covenants and agrees not to commence, file, initiate, institute, prosecute, maintain, or consent to any action or proceedings against the Released Persons based on the Released Claims.

7.2    In addition, each Settlement Class Member hereby expressly waives and releases, upon the occurrence of the Effective Date, any and all provisions, rights and benefits conferred by any law of the federal government or of any state or territory of the United States, or principle of common law, which purports to limit the scope and effectiveness of the release of any of the Released Claims provided pursuant to this Agreement without regard to the subsequent discovery or existence of any different or additional facts not known by a Class Member at the time of this Settlement. By way of example, upon the Effective Date, each Settlement Class Member shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law the provisions, rights and benefits of §1542 of the California Civil Code, if any, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

7.3    Each Settlement Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Released Persons under § 17200, et seq., of the California Business and Professions Code or by any law of the United States or

Case 1:18-cv-04529-LGS    Document 196-1    Filed 02/23/19    Page 22 of 61    PageID #: 1023

of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to such provisions.

7.4     In addition to the provisions of this Article 7, upon the Effective Date, Named Plaintiffs Rebecca Rysewyk, Katie Smith, Brian Van Vooren, and Mary Rood (former plaintiff), jointly and severally, release and forever discharge and hold harmless the Released Persons of and from any and all Released Claims of Named Plaintiffs which any of them has or may hereafter have.  The individuals named in this Section 7.4 further covenant and agree not to commence, file, initiate, institute, prosecute, maintain, or consent to any action or proceedings against the Released Persons based on the Released Claims of Named Plaintiffs.

7.5     The individuals named in Section 7.4 also agree to the terms and provisions of Sections 7.2 and 7.3 with respect to the Released Claims of Named Plaintiffs to the extent necessary to apply to all the claims released by them.

7.6     The Parties agree that if, for any reason, the Settlement Agreement is not approved as submitted, or the Final Order and Judgment is not upheld on appeal, (1) the Settlement Class shall be decertified, and the prior certification shall not be used by any person or court as a basis for certifying any class for litigation purposes, and (2) this Settlement Agreement shall be terminated, and the status of the Litigation and the Parties thereto shall be as it was prior to the execution of the Settlement Agreement.

## 8.    DISMISSAL WITH PREJUDICE, EXCLUSIVE REMEDY

8.1     Plaintiffs and Class Counsel agree to seek Court dismissal with prejudice of all Released Claims and Released Claims of Named Plaintiffs against all Released Persons in this Case and any other case when the Final Order and Judgment is entered, with each Party to bear its own costs, except as otherwise provided herein.

8.2     This Settlement Agreement shall be the exclusive remedy for the Settlement Class with respect to Released Claims or Released Claims of Named Plaintiffs, as applicable, as against any and all Released Persons, and that, no Settlement Class Member shall recover, directly or indirectly, any sums from Sears or the other Released Persons for Released Claims or Released Claims of Named Plaintiffs other than the consideration received under the terms of this Settlement Agreement.

8.3     The Parties agree, that upon the Effective Date, this Settlement Agreement will fully and completely settle and release the Released Claims and Released Claims of Named Plaintiffs as against the Released Persons.     Further, the Parties agree that each and every Settlement Class Member, and all other persons and entities claiming by, through, or on behalf of,

a Settlement Class Member, will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Persons with respect to the Released Claims, or as to the Named Plaintiffs, the Released Claims of Named Plaintiffs.

## 9. NO ADMISSION OF LIABILITY

9.1 Neither this Settlement Agreement, whether approved or not approved, nor any exhibit document, or instrument delivered pursuant to this Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, is intended to or may be construed as or deemed to be evidence of (a) an admission or concession by Sears or any Released Person of any liability or wrongdoing, or of the truth of any allegations in the above-described litigation, or of the appropriateness of class certification in any other context, or (b) an admission or concession by any Plaintiff of any lack of merit in the allegations made in Plaintiffs' complaint.

9.2 Pursuant to this Agreement, and pursuant to Federal Rule of Evidence 408, and any other applicable law, rule or regulation, the fact of entering into or carrying out this Agreement, and any negotiations and proceedings related hereto, shall not be construed as, offered into evidence as, or deemed to be evidence of, an admission or concession of liability by or an estoppel against any of the Parties, a waiver of any applicable statute of limitations or repose, and shall not be offered or received into evidence, or considered, in any action or proceeding against any Party in any judicial, quasi-judicial, administrative agency, regulatory or self-regulatory organization, or other tribunal, or proceeding for any purpose whatsoever, other than to enforce the provisions of this Settlement Agreement or the provisions of any related agreement, release, or exhibit hereto.

## 10. REPRESENTATIONS AND WARRANTIES

10.1 Named Plaintiffs represent and warrant that they each have the authority to enter into this Agreement and have not assigned, in whole or in part, any rights or claims in the Litigation or any of the Released Claims of Named Plaintiffs that will be released under the terms of this Agreement. Class Counsel represent and warrant that they have authority to execute this Settlement Agreement.

10.2 Sears has all requisite corporate power and authority to execute, deliver and perform this Settlement Agreement. The execution, delivery and performance by Sears of this Agreement has been duly authorized by all necessary corporate action. This Agreement has been duly and validly executed and delivered by Sears, and constitutes its legal, valid and binding obligation.

10.3    Class Counsel on behalf of the Class, and Sears represent that they:  (i) recommend this Settlement Agreement be approved; and (ii) will undertake the necessary steps to support and effectuate the terms of this Agreement in the event it is approved by the Court.

10.4    Class Counsel and Sears represent and warrant that they shall comply with the terms of the protective order entered in this case regarding the disposition of litigation materials following the occurrence of the Effective Date.

## 11.    SETTLEMENT ADMINISTRATOR

11.1    Subject to approval by the Court, and with the consent of Sears, Class Counsel has designated Angeion Group to be the Settlement Administrator who shall be responsible for the processing of the claims for reimbursement, all reasonable and legitimate settlement administration expenses (including costs of Notice), and all attorneys' fees and expenses and service awards (as directed by the Court) consistent with the specifications of this Settlement Agreement.  If for any reason Angeion Group does not or ceases to function as the Settlement Administrator, Class Counsel shall designate a new Settlement Administrator with the consent of Sears, which consent shall not be unreasonably withheld, and subject to approval by the Court.

11.2    The Settlement Administrator also shall be responsible for giving Notice to the Class in accordance with the Court's Order and the reporting of its activities to the Parties and the Court.

11.3    The Settlement Administrator also shall be responsible for providing the required notice to the appropriate Federal official and appropriate State officials within ten (10) days of the filing of this Settlement Agreement with the Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

11.4    In addition to its other duties described below, the Settlement Administrator shall receive, collect, identify, and process any requests by Settlement Class Members to be excluded from the Settlement Class and shall promptly report to Class Counsel and Sears's counsel the identity and number of those opting out of the Settlement Class.

11.5    Reasonable costs for the administration of the settlement (including administration of the claims process described below) shall be paid by Sears.  Sears shall have the right to approve in advance a budget for Notice and administrative expenses, which shall be subject to Court approval.

## 12.    CLAIMS SUBMISSION AND ADMINISTRATION PROCESS

12.1    A Settlement Class Member may submit one Proof of Claim Form per CRLT to the Settlement Administrator pursuant to the provisions and limitations of Sections 2 and 3.  A Proof of Claim Form that is

not timely submitted, not complete and/or lacks any of the required information or documentation is invalid and will not be paid under the terms of this Settlement Agreement.  Illegible documents or illegible copies of documents are not valid and do not constitute proof under Sections 2 and 3.

12.2    All decisions with respect to the validity and timeliness of all Claims submitted pursuant to this Settlement Agreement, including the adequacy of all documentary proof of purchase or of out-of-pocket expenses, shall be made by the Settlement Administrator in its discretion, after consultation with Sears and Class Counsel, and shall be binding on all the Settlement Class Members and shall be final, except as set forth in Sections 12.5 and 12.6 below.

12.3    Settlement Class Members may submit claims by mail, in person, or electronically to the Settlement Administrator.  Claims may only be submitted by the individual Settlement Class Member and not by third-parties, except a family member or legal guardian of the Settlement Class Member. Claims will be considered timely if submitted by the Claim Deadline.  A claim will be deemed submitted on the date of postmark, hand delivery, or electronic submission to the Settlement Administrator.

12.4    The Settlement Administrator shall maintain a website with which Settlement Class Members may (a) access, download, and print the Settlement Notice, (b) access, download, and print a Proof of Claim Form, (c) electronically submit a completed Proof of Claim Form, (d) upload copies of any of the documented proofs of payment required under Sections 2 or 3, and (e) provide any information required in response to a deficiency notice or under the audit provisions described below.  The Settlement Administrator shall implement any steps necessary to accept valid electronic signatures and the Parties agree to accept electronic signatures as original signatures.

12.5    In the event that the Settlement Administrator deems a timely submitted Proof of Claim Form invalid for being incomplete, the Settlement Administrator shall send a notice of deficiency to the Settlement Class Member describing the deficiency.  Settlement Class Members shall have thirty (30) days from the date of the deficiency notice to cure any deficiency. Any deficiencies cured within thirty (30) days of the date of the deficiency notice shall be deemed timely. If following the submission of additional materials a claim remains deficient or a claim remains deficient following the expiration of thirty (30) days following the date of the deficiency notice, such claims shall be invalid claims and can no longer be supplemented or remedied.  If a Proof of Claim Form is untimely, it will be denied and a notice of denial with be sent to the Settlement Class Member.

12.6    Class Counsel shall have an opportunity to review any notices of claim denial or claim deficiency and request a meet and confer with counsel for Sears and the Settlement Administrator if necessary.  Sears also will be able to review approved claims by the Settlement Administrator upon request.

If necessary, the Settlement Administrator will consult with Class Counsel and Sears's counsel to answer any questions or resolve any disputes that arise.

12.7 To the extent the Settlement Administrator denies a Settlement Class Member's Reimbursement Claim in whole or in part because a claim is in any way deficient or not verifiable, the Settlement Administrator's determination is final, unless revised by the Settlement Administrator for good cause as a result the procedures described in Sections 12.5 and 12.6.

12.8 To the extent a Proof of Claim Form is submitted that is fraudulent or which contains materially false information or false supporting documentation as determined by the Settlement Administrator, the Claim will be denied in its entirety as invalid. Further, the Settlement Administrator shall report to the Court, the Parties, and the appropriate law enforcement authorities, any evidence of claims that are fraudulent or which include false information or false supporting documentation.

12.9 All Claim Forms and any supporting documentation must be submitted (postmarked, if mailed) by the Reimbursement Claim Deadline to be timely.

12.10 All Claims may be subject to verification and/or audit by the Settlement Administrator and/or Sears or its agents, at their discretion.

12.11 The Released Claims of Settlement Class Members and the Released Claims of Named Plaintiffs who do not timely file a request to be excluded from the Settlement Class as required herein are forever barred as specified in the Final Order and Judgment.

12.12 The Released Claims of Settlement Class Members and the Released Claims of Named Plaintiffs are forever barred as specified in the Final Order and Judgment, regardless if the Settlement Class Members file a Reimbursement Claim or request an Inspection and Repair of a Covered Condition provided under this Settlement, or have a Reimbursement Claim denied in whole or in part.

12.13 Plaintiffs' Counsel and Sears shall approve the form, content and methods of claims and document submissions to the Settlement Website. If the Parties are unable to agree on any form, content or methods of claim processing and document submission (but not decisions regarding individual claims), the Parties agree to submit such issues to the Court for final resolution.

12.14 The Settlement Administrator shall provide reports to Plaintiff's Counsel and Sears regarding the implementation of the Notice Plan and the number, substance, and status of claims, claim audits, claim payments, and claim processing expenses, periodically and upon request.

## 13.    INDEMNITY, LIENS AND TAXES

13.1    Sears waives any right of subrogation or any other right belonging to Sears to recover back any settlement amount paid or made available to any Settlement Class Member under this Settlement by virtue of the Settlement Class Member's settlement with any other Person.    The amounts made available and paid to Settlement Class Members under this Settlement are free and clear of any encumbrances now held or later acquired by Sears.

13.2    It is each Settlement Class Member's responsibility to pay any and all valid and enforceable liens, reimbursement claims, or encumbrances held or asserted by any private or governmental lien holders against them. Plaintiffs and each Settlement Class Member on their own behalf, further understand and agree to indemnify, hold harmless and defend the Released Persons from all claims by any state or other government body, employer, attorney, insurer, and/or any other entity for all past, present and future liens or claims asserting a right of subrogation, right of indemnity, right of reimbursement or other such right for amounts paid or to be paid in consideration under this Agreement.

13.3    Plaintiffs and each Settlement Class Member on their own behalf, further understand and agree that each Settlement Class Member is responsible for any tax consequences to each such Settlement Class Member arising from, related to, or in any way connected with the relief afforded to each such Settlement Class Member under the Settlement.

## 14.    CONTINUING JURISDICTION

The Court shall retain jurisdiction over this Case, the Settlement Administrator, the Settlement Escrow Account, the Settlement Agreement, the Final Order and Judgment, the Settlement Class Members, the Plaintiffs, and Sears for the purpose of administering, supervising, construing and enforcing the Settlement Agreement and the Final Order and Judgment.

## 15.    FEES AND EXPENSES OF CLASS COUNSEL AND OTHER COUNSEL

15.1    Class Counsel and any other counsel with a basis to seek the payment of Attorneys' Fees and Expenses may apply to the Court for an award of Attorney's Fees and Expenses in a total aggregate amount not to exceed three million two hundred thirty-three thousand dollars ($3,233,121.00).

15.2    Subject to Court approval, Sears agrees to pay an amount up to three million two hundred thirty-three thousand dollars ($3,233,121.00) in the aggregate for the payment of all Attorneys' Fees and Expenses incurred and awarded by the Court pursuant to Section 15.1.

15.3    Class Counsel agree not to seek or accept from the Court an award of Attorneys' Fees and Expenses that is more than the limitation set forth in Section 15.2. Sears agrees not to oppose application(s) for Attorneys' Fees and Expenses that in the aggregate are consistent with the limitation in Section 15.2. However, Sears reserves the right to oppose any application for Attorneys' Fees and Expenses that is not for reasonable fees and expenses, not consistent with the above limitations, and to appeal any awards of Attorneys' Fees and Expenses that exceed the limitation of Section 15.2.

15.4    The payment of Notice to the Settlement Class and other administrative expenses of the Settlement pursuant to Section 11.5 of this Agreement are not included in the Attorneys' Fees and Expenses subject to the limitation set forth in Section 15.2. The actual award of Attorneys' Fees and Expenses shall be made by the Court following an open and transparent process, including a hearing before the Court open to the public and all Settlement Class Members.

15.5    If the Court approves Class Counsels' application for Attorneys' Fees and Expenses as a part of the Final Judgment and Order, Sears agrees to pay the approved Attorneys' Fees and Expenses in the aggregate, up to the maximum amount set forth in Section 15.2, within five (5) Business Days of the Effective Date. If the Effective Date does not occur, no Attorneys' Fees and Expenses will be paid to any Class Counsel or other counsel by Sears. If the Court awards Attorneys' Fees and Expenses by separate order or if such award is otherwise made the sole subject to an appeal, Sears agrees to pay those approved Attorneys' Fees and Expenses in the aggregate, up to the maximum amount set forth in Section 15.2, within five (5) Business Days of the later occurring event of the following events: (i) the Effective Date and (ii) the Court order awarding Attorneys' Fees and Expenses becoming final and no longer subject to any further appeal.

15.6    Sears is not responsible for any fees or expenses of any other counsel retained by Settlement Class Members. Settlement Class Members are solely responsible for such fees and expenses.

## 16.    NAMED PLAINTIFFS SERVICE AWARDS

16.1    Class Counsel shall petition the Court for, and Sears will not oppose, Named Plaintiff Service Awards in an amount of ten thousand dollars ($10,000) each to Rebecca Rysewyk, Katie Smith, and Brian Van Vooren, and former plaintiff Mary Rood ("Named Plaintiffs") in recognition of their efforts on behalf of the Settlement Class, in return for Released Persons obtaining a release by Final Order and Judgment of the Released Claims of Named Plaintiffs from Rebecca Rysewyk, Katie Smith, and Brian Van Vooren, and former plaintiff Mary Rood, and in satisfaction of any potential reimbursement claim under the Settlement. However, each of these Named Plaintiffs are also Settlement Class Members and shall be entitled to request an

inspection and repair of a Covered Condition they observe on their CRLT to the same extent as other Settlement Class Members. To the extent awarded by the Court, Sears will pay the Named Plaintiff Service Awards, up to the amounts set forth in this Section, within five (5) Business Days after the Effective Date.

## 17.    RIGHTS OF WITHDRAWAL

17.1    If Sears, in accordance with the terms of a Confidential Supplemental Agreement, determines that the number of the Opt-Outs reaches a certain threshold agreed to by the Parties, Sears, in its sole option, shall have the right to withdraw from the settlement and terminate this Agreement in accordance with Section 17.2 below. In addition, if the Court does not approve the Settlement Agreement as submitted, it shall be terminated.

17.2    In the event that Sears wishes to exercise its right to terminate the Settlement Agreement under this Section 17 because the number of the Settlement Class Members who excluded themselves from the Settlement Class reaches a certain threshold agreed to by the Parties, Sears must notify the other Party in writing, within seven (7) days after receipt of the Settlement Administrator's final report on the number and identity of those Settlement Class Members who excluded themselves from the Settlement Class following the Opt-Out Deadline, of Sears's intention to withdraw from the settlement and terminate this Agreement, which shall terminate the Settlement Agreement.

17.3    In the event that this Settlement Agreement is not approved as submitted, does not reach the Effective Date, or otherwise is terminated pursuant to the terms of this Agreement, the Parties will be restored to their respective positions in the Litigation as of the day preceding the date of this Agreement, the terms and provisions of this Agreement will have no further force or effect with respect to the Parties, the Agreement or any of its terms will not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement, including any order to certify the Settlement Class, will be vacated, *nunc pro tunc*, and the status of the Litigation shall be as it was prior to the execution of this Agreement.

## 18.    COMMUNICATIONS REGARDING SETTLEMENT

18.1    Neither Party nor their Counsel shall issue a press release or media statement in any form announcing this Settlement or its terms.

18.2    The Parties or their counsel may make additional disclosures to comply with applicable law or existing contract, or to obtain or defend approval of the Settlement or Application for Attorney's Fees and Expenses or to respond to any objection or appeal of Final Approval of the Settlement or Application for Attorney's Fees and Expenses. Neither the Parties nor their counsel may make any other public statement regarding this Settlement

27

Agreement or Application for Attorneys' Fees and Expenses, except (a) Class Counsel may, in response to press inquiries, direct the press to the Settlement Website, and may otherwise communicate with Settlement Class Members when contacted by Settlement Class Members regarding the substance of the Settlement or Application for Attorneys' Fees and Expenses, and (b) Sears or its outside counsel may, in response to press, investor, or analyst inquiries, direct them to the Settlement Website.

18.3    No Party, Class Counsel, or Sears's counsel, or anyone else acting on behalf of any of them shall make any public statement disparaging any Party or their counsel, or this Settlement Agreement or any application for Attorneys' Fees and Expenses complying with the terms of this Agreement.

## 19.    OTHER OBLIGATIONS; MISCELLANEOUS

19.1    The Parties shall use their best efforts to perform all terms of this Agreement.

19.2    Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, nor any negotiations leading to this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims or Released Claims of Named Plaintiffs, or of any fault, omission, fact, wrongdoing or liability of Sears or other Released Person in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. The Released Persons may file this Agreement and/or the Final Judgment and Order in any action that may be brought against them in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

19.3    All agreements made and orders entered during this Litigation relating to the confidentiality of information survive this Agreement.

19.4    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

19.5    This Agreement, including attached Exhibits, constitutes the entire Agreement by and among the Parties with regard to the subject matter of this Agreement, and shall supersede any previous agreements and understanding among the Parties with respect to the subject matter of this Agreement and the settlement.

19.6    This Agreement may not be modified or amended except in writing signed by all Parties.

19.7   Any notice, request, instruction, or other document to be given by any Party to this Agreement to any other Party to this Agreement, other than the Class Notice, shall be in writing and delivered by an overnight delivery service, with a courtesy copy via electronic mail to:

**If to Plaintiffs and Settlement Class**:

> Gregory F. Coleman, Esq.
> Greg Coleman Law PC
> 800 S. Gay Street,  Suite 1100
> Knoxville, TN 37929
> (865) 247-0080
> Email: Greg@gregcolemanlaw.com>
>
> --and--
>
> Michael T. Fantini, Esq.
> Berger & Montague, P.C.
> 1622 Locust Street
> Philadelphia, PA 19103-6305
> (215) 875-5710
> Email:  mfantini@bm.net

**If to Sears:**

> Richard T. Bernardo, Esq.
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY  10036-6522
> (212) 735-3453
> Email: Richard.Bernardo@skadden.com

19.8   All applications for Court approval or Court orders required under this Agreement shall be made on notice to all Parties to this Agreement.

19.9   This Agreement is the result of a mutual negotiation between counsel for the Parties.  Any ambiguity in this Agreement shall not presumptively be construed in favor of or against any Party as the drafter of the Agreement.

19.10   The provisions of this Agreement are not severable.

19.11   All the terms of this Agreement shall be governed by and interpreted according to the laws of the State of Illinois, except to the extent federal law applies.

29

19.12   References to a Section also includes any other sections or subparts within that Section, e.g., a reference to Section 17, includes Sections 17.1, 17.2 and 17.3.  The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms. Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders.

19.13   All representations, warranties and covenants set forth in this Agreement shall be deemed continuing and shall survive the date of this Agreement, or termination or expiration of this Agreement.

19.14   Each of the Parties agrees, without further consideration, and as part of finalizing the settlement hereunder, to execute and deliver such other documents and take such other actions that may be necessary to consummate and effectuate the subject matter and purpose of this Agreement.

19.15   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement, provided that this Agreement shall not be complete until it has been signed by everyone for whom a signature line has been provided.

19.16   This Agreement and any amendments thereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF file format), shall be treated in all manner and respects as an original Agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement and have caused this Agreement to be executed by Class Counsel.

**NAMED PLAINTIFFS on behalf of themselves and the proposed Settlement Class**

Dated: 07/20/2018 _____

Rebecca Rysewyk

CRLT Settlement Agreement

Dated: 7/20/18

Katie Smith

Dated:_____

Brian Van Vooren

Dated:_____

Mary Rood (former plaintiff)

CRLT Settlement Agreement

Dated:_____

_____
Katie Smith

Dated:__7/20/18____

_____
Brian Van Vooren

Dated:_____

_____
Mary Rood (former plaintiff)

31

CRLI Settlement Agreement

Dated: _____            _____
                                   Katie Smith


Dated: _____            _____
                                   Brian Van Vooren


Dated: 7/20/18                     _____
                                   Mary Rood (former plaintiff)

31

CRLT Settlement Agreement

**COUNSEL FOR NAMED PLAINTIFFS AND
SETTLEMENT CLASS COUNSEL**

By_____     **Dated:** ___7/20/2018_____
    Gregory F. Coleman, Esq.
    Greg Coleman Law PC
    800 S. Gay Street
    Suite 1100
    Knoxville, TN 37929
    (865) 247-0080

By_____     **Dated:** _____
    Shanon J. Carson, Esq.
    Michael T. Fantini, Esq.
    Berger & Montague, P.C.
    1622 Locust Street
    Philadelphia, PA 19103-6305
    (215) 875-5710

By_____     **Dated:** _____
    Edward A. Wallace, Esq.
    Wexler Wallace LLP
    55 West Monroe
    Suite 3300
    Chicago, IL 60603
    (312) 346-2222

CRLT Settlement Agreement

**COUNSEL FOR NAMED PLAINTIFFS AND
SETTLEMENT CLASS COUNSEL**

By_____          Dated: _____
    Gregory F. Coleman, Esq.
    Greg Coleman Law PC
    800 S. Gay Street
    Suite 1100
    Knoxville, TN 37929
    (865) 247-0080

By_____          Dated: _July 20, 2018_
    Shanon J. Carson, Esq.
    Michael T. Fantini, Esq.
    Berger & Montague, P.C.
    1622 Locust Street
    Philadelphia, PA 19103-6305
    (215) 875-5710

By_____          Dated: _____
    Edward A. Wallace, Esq.
    Wexler Wallace LLP
    55 West Monroe
    Suite 3300
    Chicago, IL 60603
    (312) 346-2222

18-23538-shl   Doc 1551-1   Filed 01/11/19   Entered 01/11/19 16:16:28   Exhibit A-e
Case 1:15-cv-04519   Document 185-1   Filed: 01/29/18   Page 98 of 161   PageID #:4039
Settlement Agreement   Pg 37 of 38

CRLT Settlement Agreement

**COUNSEL FOR NAMED PLAINTIFFS AND
SETTLEMENT CLASS COUNSEL**

By_____          Dated: _____
      Gregory F. Coleman, Esq.
      Greg Coleman Law PC
      800 S. Gay Street
      Suite 1100
      Knoxville, TN 37929
      (865) 247-0080

By_____          Dated: _____
      Shanon J. Carson, Esq.
      Michael T. Fantini, Esq.
      Berger & Montague, P.C.
      1622 Locust Street
      Philadelphia, PA 19103-6305
      (215) 875-5710

By_____          Dated: _7/30/18_
      Edward A. Wallace, Esq.
      Wexler Wallace LLP
      55 West Monroe
      Suite 3300
      Chicago, IL 60603
      (312) 346-2222

CRLT Settlement Agreement

**DEFENDANTS:**

**SEARS HOLDINGS CORPORATION**
by its authorized representative:


_____        Dated: _7/20/18_____
Stephen L. Sitley
General Counsel and
Chief Compliance Officer
Sears Holdings Management Corporation
3333 Beverly Road, B6-210B
Hoffman Estates, IL 60179



**SEARS, ROEBUCK AND CO.**
by its authorized representative:


_____        Dated: _7/20/18_____
Stephen L. Sitley
General Counsel and
Chief Compliance Officer
Sears Holdings Management Corporation
3333 Beverly Road, B6-210B
Hoffman Estates, IL 60179