WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                              :
**In re**                                     :        **Chapter 11**
                                              :
**SEARS HOLDINGS CORPORATION**, *et al.*,     :        **Case No. 18-23538 (RDD)**
                                              :
        **Debtors.**[1]                       :        **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

**CERTIFICATE OF NO OBJECTION REGARDING**
**APPLICATION OF DEBTORS FOR AUTHORITY TO**
**RETAIN DELOITTE & TOUCHE LLP FOR INDEPENDENT AUDIT**
**AND ADVISORY SERVICES *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 1746 and Rule 9075-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the undersigned hereby certifies as follows:

1.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code. On January 4, 2019 the Debtors filed the *Application of Debtors for Authority to Retain Deloitte & Touche LLP for Independent Audit and Advisory Services Nunc Pro Tunc to the Commencement Date* (ECF No. 1497) (the "**Application**").

2.      The Debtors served the Application as reflected in the affidavit of service filed at ECF No. 1535.

3.      The Application established a deadline (the "**Objection Deadline**") for parties to object or file responses to the Application for January 11, 2019 at 4:00 p.m. (prevailing Eastern Time). The *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**") provides that a motion or application may be granted without a hearing, provided that no objections or other responsive pleadings have been filed after the passage of the Objection Deadline and the attorney for the entity who filed the pleadings complies with the terms of the Amended Case Management Order.

WEIL:\96871739\2\73217.0004

4.      The Objection Deadline has passed and, to the best of my knowledge, no objection, responsive pleading, or request for a hearing with respect to the Application has been (a) filed with the Court on the docket of the above-captioned case or (b) served on counsel to the Debtors.

5.      Accordingly, the Debtors respectfully request that the proposed order granting the relief requested in the Application, annexed hereto as **Exhibit A**, be entered in accordance with the Amended Case Management Order.  A redline of the proposed order marked against the version filed with the Application is annexed hereto as **Exhibit B**, which reflects non-substantive edits to the proposed order.

I declare that the foregoing is true and correct.

Dated: January 16, 2019
       New York, New York

/s/ Jessica Liou
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

3

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                           :
In re                                      :        **Chapter 11**
                                           :
**SEARS HOLDINGS CORPORATION**, *et al.*,  :        **Case No. 18-23538 (RDD)**
                                           :
        **Debtors.**[1]                    :        **(Jointly Administered)**
                                           :
---------------------------------------------------------------x

**ORDER AUTHORIZING DEBTORS TO RETAIN**
**DELOITTE & TOUCHE LLP FOR INDEPENDENT AUDIT AND**
**ADVISORY SERVICES *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

Upon the application, dated January 4, 2019 (ECF No. 1497) (the "**Application**")[2]

of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title

11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules

of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

(i) authorizing the Debtors to retain and employ Deloitte & Touche LLP ("**Deloitte & Touche**") to provide independent audit and advisory services for the Debtors, effective as of the Commencement Date, and upon the declaration of Jim Berry, a partner at Deloitte & Touche, annexed to the Application as **Exhibit A** (the "**Berry Declaration**"); and (ii) granting related relief, all as more fully set forth in the Application; and the Court being satisfied, based on the representations made in the Application and the Berry Declaration, that Deloitte & Touche is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Deloitte & Touche neither represents nor holds an interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Application having been provided in accordance with the Amended Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and no objection having been filed and the Debtors having submitted a certificate of no objection, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as provided herein.

2.      In accordance with section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Deloitte & Touche as the Debtors' independent auditor and advisor in accordance with the terms and conditions set forth in the Engagement Agreements, effective *nunc pro tunc* to the Commencement Date, and to pay fees and reimburse expenses to Deloitte & Touche on the terms set forth in the Engagement Agreements as modified by this Order.

3.      The terms and conditions of the Engagement Agreements are reasonable and, as modified by this Order, are approved.

4.      Deloitte & Touche shall use reasonable efforts to cooperate with the Debtors to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

5.      Deloitte & Touche shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, and any applicable orders of this Court (including the Interim Compensation Order).

6.      Deloitte & Touche shall include in its fee applications, among other things, time records setting forth a description of the services rendered on behalf of the Debtors, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  Deloitte & Touche will perform services under the following Engagement Agreements during the chapter 11 cases but because as of the Commencement Date, Deloitte & Touche

WEIL:\96871739\2\73217.0004

received payment in full for such services, such services performed under these Engagement Agreements will not be included in any fee application submitted by Deloitte & Touche in these cases:  the SPC Audit Engagement Letter; the Savings Plan Audit Engagement Letter; the Parts Direct Audit Engagement Letter; the Kenmore Audit Engagement Letters; the Subsidiaries' Audit Engagement Letter; the Affiliate/Subsidiaries' Audit Engagement Letter; the Kmart PR and Sears PR Audit Engagement Letters; the Kmart PR Audit Engagement Letter; the Project Sasset Engagement Letters; the SAM Engagement Letter.  For the avoidance of doubt, Deloitte & Touche will perform services for the Debtors under the following Engagement Agreements during these chapter 11 cases for which Deloitte & Touche will request compensation and expense reimbursement through the submission of fee applications:  the Base Audit Engagement Letter, the Restructuring Accounting Advisory Engagement Letter, the System Services Engagement Letters, and the New Standards Accounting Advisory Engagement Letter.

7.      Deloitte & Touche shall provide reasonable notice to the Debtors, the Office of the United States Trustee, and any statutory committee appointed in these chapter 11 cases of any increase of Deloitte & Touche's hourly rates from those set forth in the Berry Declaration, and such notice will be filed on the docket of these cases.

8.      The Indemnification Provisions, set forth in the appendices to certain of the Engagement Agreements, are approved subject to the following modifications with respect to services performed thereunder after the Commencement Date and prior to the effective date of any chapter 11 plan of the Debtors:

      a.     All requests for payment of indemnity, contribution, or otherwise pursuant to the Indemnification Provisions shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Provisions, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and other orders of

4

this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the breach of contract, gross negligence, willful misconduct, or fraud of any indemnified parties;

b.    In no event shall any indemnified parties be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's breach of contract, gross negligence, willful misconduct, or fraud of any Indemnified Parties;

c.    In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte & Touche's own interim and final fee applications, and such invoices and time records shall be subject to the applicable United States Trustee guidelines and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

d.    Any provision of the Engagement Agreements relating to expense policies and reimbursements shall be subject to the applicable guidelines set forth in the Local Rules and general orders of this Court.

9.    The Engagement Agreements are further modified with respect to the services provided thereunder from the Commencement Date through the effective date of any chapter 11 plan of the Debtors, as follows:

a.    The following sentences relating to "Limitation on Liability" shall be deemed deleted:

i.    The second sentence in Section 3(a) of the general business terms attached to the Project Sasset Engagement Letters.

ii.    The second sentence in Section 6(a) of the general business terms attached to the SAM Engagement Letter,

5

Restructuring Accounting Advisory Engagement Letter, and the New Standards Accounting Advisory Engagement Letter.

    iii. The second sentence of the first paragraph of the "Limitation on Liability, Release, and Indemnification" section on page 7 of the System Services Engagement Letter.

b. The "Independent Contractor" provision set forth in:

    i. Paragraph 1 of Appendix D to the Base Audit Engagement Letter, the SPC Audit Engagement Letter, the Savings Plan Audit Engagement Letter, the Parts Direct Audit Engagement Letter, the Kenmore Audit Engagement Letters, the Affiliate/Subsidiaries' Audit Engagement Letter, the Kmart PR and Sears PR Audit Engagement Letters, the Kmart PR Audit Engagement Letters, and the System Services Engagement Letter;

    ii. Paragraph 6 of the general business terms attached as Appendix A to the Project Sasset Engagement Letters;

    iii. Paragraph 10 of the general business terms attached as Exhibit A to the SAM Engagement Letter, the Restructuring Accounting Advisory Engagement Letter, and the New Standards Accounting Advisory Engagement Letter; and

    iv. Page 8 of the System Services Engagement Letter shall be deleted and replaced with the following:

Nothing contained in this agreement shall alter in any way the duties imposed by law on Deloitte & Touche LLP in respect of the Services provided under the agreement. It is understood and agreed that each of Sears Holdings Corporation, the Entity (or Entities, as applicable), the Audit Committee of Sears Holdings Corporation, and the Board of Directors, as may be applicable (collectively, the "**Client-Related Parties**"), and Deloitte & Touche LLP is an independent contractor and that neither the Client-Related Parties nor Deloitte & Touche LLP is, nor shall be considered to be, the other's agent, distributor, partner, joint venture, co-owner or representative.

c. The language in (i) Paragraph 7 of the general business terms attached as Appendix D to the Base Audit Engagement Letter, the SPC Audit Engagement Letter, the Savings Plan Audit Engagement Letter, the Parts Direct Audit Engagement Letter, the Kenmore Audit Engagement Letters, the Affiliate/Subsidiaries' Audit Engagement Letter, the Kmart PR and Sears PR Audit Engagement Letters, the Kmart PR Audit Engagement Letters, and (ii) the "Dispute Resolution" provision on page 9 of the System Services Engagement Letter shall be deemed deleted and replaced with the following:

6

Any Dispute (as defined below) arising out of or relating to services performed under this engagement letter after the commencement of a bankruptcy case by the Company and prior to the effective date of (a) a plan of reorganization of the Company or (b) a court order dismissing the Company's chapter 11 case or cases (the "**Effective Date**") shall be brought in the Bankruptcy Court (or the District Court) (each as defined below), if such District Court withdraws the reference to the Bankruptcy Court).  All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as the immediately following appendix and made a part hereof (the "**Dispute Resolution Provision**").  The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute.  Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute.  The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns.  This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, and (c) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

        d.    The language in (i) the Dispute Resolution Provision attached as Appendix E to the Base Audit Engagement Letter, the SPC Audit Engagement Letter, the Savings Plan Audit Engagement Letter, the Parts Direct Audit Engagement Letter, the Kenmore Audit Engagement Letters, the Affiliate/Subsidiaries' Audit Engagement Letter, the Kmart PR and Sears PR Audit Engagement Letters, the Kmart PR Audit Engagement Letters, and (ii) the "Mediation", "Arbitration Procedures" and "Costs" provisions on pages 9 through 10 of the System Services Engagement Letter shall be deemed deleted and replaced with the following:

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes as set forth in the immediately preceding appendix.

All Disputes not heard by the Bankruptcy Court or the District Court as set forth in the immediately preceding appendix shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions.  If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("**CPR**"), at the written request of a party, shall designate a mediator.

WEIL:\96871739\2\73217.0004

If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York.  The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "**Rules**").

The arbitration shall be conducted before a panel of three arbitrators.  Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules.  No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision.  The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition.  Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules.  Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests.  Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

10.    To the extent that there may be any inconsistency between the terms of the Application, the Engagement Agreements, the Berry Declaration, and the express terms of this Order, the terms of this Order shall govern.

11.    The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

12.    Notwithstanding anything to the contrary in the Engagement Agreements, during the pendency of these chapter 11 cases, the Court shall retain jurisdiction to hear and

determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
      White Plains, New York

                                     _____
                                     THE HONORABLE ROBERT D. DRAIN
                                     UNITED STATES BANKRUPTCY JUDGE

WEIL:\96871739\2\73217.0004

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                   :
In re                                              :        **Chapter 11**
                                                   :
**SEARS HOLDINGS CORPORATION**, *et al.*,          :        **Case No. 18-23538 (RDD)**
                                                   :
        Debtors.[1]                                :        **(Jointly Administered)**
                                                   :
---------------------------------------------------------------x

### ORDER AUTHORIZING DEBTORS TO RETAIN
### DELOITTE & TOUCHE LLP FOR INDEPENDENT AUDIT AND
### ADVISORY SERVICES *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the application, dated ~~[    ]~~January 4, 2019 (ECF No. ~~[    ]~~1497) (the

"**Application**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to

section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and

2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); ~~and~~ Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for an order (i) authorizing the Debtors to retain and employ Deloitte & Touche LLP ("**Deloitte & Touche**") to provide independent audit and advisory services for the Debtors, effective as of the Commencement Date, and upon the declaration of Jim Berry, a partner at Deloitte & Touche, annexed to the Application as **Exhibit A** (the "**Berry Declaration**"); and (ii) granting related relief, all as more fully set forth in the Application; and the Court being satisfied, based on the representations made in the Application and the Berry Declaration, that Deloitte & Touche is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Deloitte & Touche neither represents nor holds an interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Application having been provided in accordance with the Amended Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and ~~the Court having held a hearing to consider the relief requested in the Application on January 18, 2019 (the "~~**~~Hearing~~**~~"); and upon the record of the Hearing~~<u>no objection having been filed and the Debtors having submitted a certificate of no objection</u>, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted

2

herein; and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Application is granted as provided herein.

2.      In accordance with section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Deloitte & Touche as the Debtors' independent auditor and advisor in accordance with the terms and conditions set forth in the Engagement Agreements, effective *nunc pro tunc* to the Commencement Date, and to pay fees and reimburse expenses to Deloitte & Touche on the terms set forth in the Engagement Agreements as modified by this Order.

3.      The terms and conditions of the Engagement Agreements are reasonable and, as modified by this Order, are approved.

4.      Deloitte & Touche shall use reasonable efforts to cooperate with the Debtors to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

5.      Deloitte & Touche shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, and any applicable orders of this Court (including the Interim Compensation Order).

6.      Deloitte & Touche shall include in its fee applications, among other things, time records setting forth a description of the services rendered on behalf of the Debtors, and the

WEIL:\96841336\1\73219.0006 WEIL:\96871739\2\73217.0004

amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. Deloitte & Touche will perform services under the following Engagement Agreements during the chapter 11 cases but because as of the Commencement Date, Deloitte & Touche received payment in full for such services, such services performed under these Engagement Agreements will not be included in any fee application submitted by Deloitte & Touche in these cases: the SPC Audit Engagement Letter; the Savings Plan Audit Engagement Letter; the Parts Direct Audit Engagement Letter; the Kenmore Audit Engagement Letters; the Subsidiaries' Audit Engagement Letter; the Affiliate/Subsidiaries' Audit Engagement Letter; the Kmart PR and Sears PR Audit Engagement Letters; the Kmart PR Audit Engagement Letter; the Project Sasset Engagement Letters; the SAM Engagement Letter. For the avoidance of doubt, Deloitte & Touche will perform services for the Debtors under the following Engagement Agreements during these chapter 11 cases for which Deloitte & Touche will request compensation and expense reimbursement through the submission of fee applications: the Base Audit Engagement Letter, the Restructuring Accounting Advisory Engagement Letter, the System Services Engagement Letters, and the New Standards Accounting Advisory Engagement Letter.

7.       Deloitte & Touche shall provide reasonable notice to the Debtors, the Office of the United States Trustee, and any statutory committee appointed in these chapter 11 cases of any increase of Deloitte & Touche's hourly rates from those set forth in the Berry Declaration, and such notice will be filed on the docket of these cases.

8.       The Indemnification Provisions, set forth in the appendices to certain of the Engagement Agreements, are approved subject to the following modifications with respect to services performed thereunder after the Commencement Date and prior to the effective date of any chapter 11 plan of the Debtors:

4

a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the Indemnification Provisions shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Provisions, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and other orders of this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the breach of contract, gross negligence, willful misconduct, or fraud of any indemnified parties;

b.      In no event shall any indemnified parties be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's breach of contract, gross negligence, willful misconduct, or fraud of any Indemnified Parties;

c.      In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte & Touche's own interim and final fee applications, and such invoices and time records shall be subject to the applicable United States Trustee guidelines and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

d.      Any provision of the Engagement Agreements relating to expense policies and reimbursements shall be subject to the applicable guidelines set forth in the Local Rules and general orders of this Court.

9.      The Engagement Agreements are further modified with respect to the services provided thereunder from the Commencement Date through the effective date of any chapter 11 plan of the Debtors, as follows:

5

    a.   The following sentences relating to "Limitation on Liability" shall be deemed deleted:

        i.   The second sentence in Section 3(a) of the general business terms attached to the Project Sasset Engagement Letters.

        ii.   The second sentence in Section 6(a) of the general business terms attached to the SAM Engagement Letter, Restructuring Accounting Advisory Engagement Letter, and the New Standards Accounting Advisory Engagement Letter.

        iii.   The second sentence of the first paragraph of the "Limitation on Liability, Release, and Indemnification" section on page 7 of the System Services Engagement Letter.

    b.   The "Independent Contractor" provision set forth in:

        i.   Paragraph 1 of Appendix D to the Base Audit Engagement Letter, the SPC Audit Engagement Letter, the Savings Plan Audit Engagement Letter, the Parts Direct Audit Engagement Letter, the Kenmore Audit Engagement Letters, the Affiliate/Subsidiaries' Audit Engagement Letter, the Kmart PR and Sears PR Audit Engagement Letters, the Kmart PR Audit Engagement Letters, and the System Services Engagement Letter;

        ii.   Paragraph 6 of the general business terms attached as Appendix A to the Project Sasset Engagement Letters;

        iii.   Paragraph 10 of the general business terms attached as Exhibit A to the SAM Engagement Letter, the Restructuring Accounting Advisory Engagement Letter, and the New Standards Accounting Advisory Engagement Letter; and

        iv.   Page 8 of the System Services Engagement Letter shall be deleted and replaced with the following:

Nothing contained in this agreement shall alter in any way the duties imposed by law on Deloitte & Touche LLP in respect of the Services provided under the agreement.  It is understood and agreed that each of Sears Holdings Corporation, the Entity (or Entities, as applicable), the Audit Committee of Sears Holdings Corporation, and the Board of Directors, as may be applicable (collectively, the "**Client-Related Parties**"), and Deloitte & Touche LLP is an independent contractor and that neither the Client-Related Parties nor Deloitte & Touche LLP is, nor shall be considered to be, the other's agent, distributor, partner, joint venture, co-owner or representative.

    c.   The language in (i) Paragraph 7 of the general business terms attached as Appendix D to the Base Audit Engagement Letter, the SPC Audit Engagement Letter, the Savings Plan Audit Engagement Letter, the Parts Direct Audit Engagement Letter,

the Kenmore Audit Engagement Letters, the Affiliate/Subsidiaries' Audit Engagement Letter, the Kmart PR and Sears PR Audit Engagement Letters, the Kmart PR Audit Engagement Letters, and (ii) the "Dispute Resolution" provision on page 9 of the System Services Engagement Letter shall be deemed deleted and replaced with the following:

Any Dispute (as defined below) arising out of or relating to services performed under this engagement letter after the commencement of a bankruptcy case by the Company and prior to the effective date of (a) a plan of reorganization of the Company or (b) a court order dismissing the Company's chapter 11 case or cases (the "**Effective Date**") shall be brought in the Bankruptcy Court (or the District Court) (each as defined below), if such District Court withdraws the reference to the Bankruptcy Court. All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as the immediately following appendix and made a part hereof (the "**Dispute Resolution Provision**"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. The foregoing shall be binding up on the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, (b) "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, and (c) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

d.  The language in (i) the Dispute Resolution Provision attached as Appendix E to the Base Audit Engagement Letter, the SPC Audit Engagement Letter, the Savings Plan Audit Engagement Letter, the Parts Direct Audit Engagement Letter, the Kenmore Audit Engagement Letters, the Affiliate/Subsidiaries' Audit Engagement Letter, the Kmart PR and Sears PR Audit Engagement Letters, the Kmart PR Audit Engagement Letters, and (ii) the "Mediation", "Arbitration Procedures" and "Costs" provisions on pages 9 through 10 of the System Services Engagement Letter shall be deemed deleted and replaced with the following:

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes as set forth in the immediately preceding appendix.

All Disputes not heard by the Bankruptcy Court or the District Court as set forth in the immediately preceding appendix shall be first submitted to nonbinding confidential mediation by written notice

to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions.  If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("**CPR**"), at the written request of a party, shall designate a mediator.

If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York.  The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "**Rules**").

The arbitration shall be conducted before a panel of three arbitrators.  Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules.  No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision.  The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition.  Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules.  Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests.  Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

       10.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Agreements, the Berry Declaration, and the express terms of this Order, the terms of this Order shall govern.

       11.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

       12.     Notwithstanding anything to the contrary in the Engagement Agreements, during the pendency of these chapter 11 cases, the Court shall retain jurisdiction to hear and

8

determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
        White Plains, New York

                               _____

                               THE HONORABLE ROBERT D. DRAIN
                               UNITED STATES BANKRUPTCY JUDGE

WEIL:\96841336\1\73219.0006WEIL:\96871739\2\73217.0004