WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | **Case No. 18-23538 (RDD)** |
| | : | |
| | : | **(Jointly Administered)** |
| Debtors.[1] | : | |

---------------------------------------------------------------x

### DEBTORS' REPLY TO OBJECTION OF THE UNITED STATES TRUSTEE TO APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING AMENDMENT TO TERMS AND CONDITIONS OF DEBTORS' EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO, LLC AS INVESTMENT BANKER

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), respectfully represent as follows in support of the *Application of Debtors for Entry of Order Approving Amendment to Terms and Conditions of the Debtors' Employment and Retention of Lazard Frères & Co. LLC as Investment Banker* (ECF No. 1435) (the "**Application**")[1] and in response to the objection to the Application filed by the Office of the United States Trustee (the "**U.S. Trustee**") (ECF No. 1454) (the "**Objection**"):

### Background

1.      The Debtors filed the Application on December 28, 2018 seeking to increase the fee cap for Lazard's services from $12.5 million to $19.5 million.  The Debtors served the Application as reflected in the affidavit of service filed at ECF No. 1482.

2.      The U.S. Trustee filed an objection to the Application on December 31, 2018.  The Debtors received no other formal or informal objections to the Application.

3.      The U.S. Trustee contends that the Debtors have not provided sufficient information to explain why Lazard's scope of employment needs to be expanded or what new duties will be performed.  *See* Objection, p. 1.  Additionally, the U.S. Trustee argues that Lazard should have foreseen the need to provide sale services at the outset of these cases, and states that such a possibility should have been baked in the initial employment terms.  *See* Objection, pp. 1, 6–7.  The U.S. Trustee has requested additional disclosures detailing what additional duties Lazard plans to undertake.  *See* Objection, p. 7.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

WEIL:\96870454\5\73217.0004

**Reply**

4.     The initial engagement letter with Lazard, which was approved by the Court (the "**Initial Engagement Letter**"), focused largely on restructuring-related services. Accordingly, the term "Restructuring" was defined, in pertinent part, as follows:

> "[T]he term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (any Restructuring of Sears or any of its subsidiaries pursuant to Chapter 11 of the United States Bankruptcy Code, a "Bankruptcy Process")), repayment and/or recapitalization of all or a portion of the Company's outstanding indebtedness for borrowed money (including bank debt and bond debt) and letters of credit (regardless of whether drawn) and other on and off balance sheet indebtedness, leases (both on and off balance sheet) or other liabilities (collectively, the "Existing Obligations"), including the Company's Existing Debt Obligations (as defined on Schedule 1 attached hereto), that is achieved, without limitation, through (i) a solicitation of waivers and consents from the holders of Existing Obligations (collectively, together with the Company's equityholders, the "Stakeholders"); (ii) any extension of the maturities of all or a portion of the Existing Obligations; (iii) any change in the interest rates or other significant terms of all or a portion of the Existing Obligations that is favorable to the Company; (iv) any repurchase, settlement, repayment (through proceeds from sales of assets or otherwise) or forgiveness of all or a portion of the Existing Obligations; (v) any conversion of all or a portion of the Existing Obligations into assets or equity; or (vi) any exchange offer involving the issuance of new securities in exchange for Existing Obligations. For purposes hereof, no Sale Transaction shall in and of itself constitute a Restructuring."

*See* Initial Engagement Letter, which is attached hereto as **Exhibit A**.

5.     Indeed, at the time that the Initial Engagement Letter was executed, the Debtors did not know whether they would use the services of Lazard or another firm in connection with sale transactions. As a result of this uncertainty, the Initial Engagement Letter was specifically negotiated to provide that, if it were requested to render additional services in connection with sale transactions, Lazard would have the option as to whether to perform such

3

services. *See* Initial Engagement Letter, § 1(k). ("Subject to Lazard's agreement so to act, assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction.") (footnotes omitted).

6.      Consistent with the foregoing, the Initial Engagement Letter included an aggregate cap on fees of $12.5 million that did not contemplate the provision of any sale services or the payment of any sale fees. *See* Initial Engagement Letter, § 2(f). That cap, moreover, would be significantly below market if sale services, but not sale fees, were included in the scope of the engagement.

7.      Since the agreement on the terms of the Initial Engagement Letter, however, the Debtors have determined that they want to use Lazard for all sale-related services. Thus, Lazard has expended a substantial amount of time advising and negotiating the terms of the sale of the Sears Home Improvement business, the sale of the Parts Direct business, and the sale of the Sears Home Services business. As a result, the Debtors and Lazard have renegotiated the amount of the fee cap to take in account the foregoing sale services and related sale fees. Specifically, in exchange for an increase of the fee cap by $7 million to account for the additional services being provided, Lazard agreed to forego the right to accept or reject additional assignments. *See* Application, ¶ 7. The Debtors believe that the increase in the cap is a fair and appropriate amendment, in light of the additional work being requested of Lazard.

8.      The other parties in interest in the cases — the Official Committee of Unsecured Creditors and the DIP ABL Credit Parties and Junior DIP Credit Parties (each as defined in the *Interim Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense*

4

*Claims; (II) Modifying the Automatic Stay; (III) Scheduling Final Hearing; and (IV) Granting*

*Related Relief*, dated November 30, 2018 (ECF No. 951)) — have agreed to the revised terms of

Lazard's engagement and have not objected to the Application.  In addition, and to its credit,

Lazard has been performing services requested by the Debtors, notwithstanding that its request

for an increase in the fee cap is still pending.

### Conclusion

9.      For all of the foregoing reasons set forth herein and in the declaration of

Mohsin Meghji, the Debtors' Chief Restructuring Officer, filed concurrently herewith, the

Objection should be overruled in its entirety.

WHEREFORE the Debtors respectfully request that the Court overrule the Objection in

its entirety, grant the relief requested in the Application, and grant the Debtors such other and

further relief as is just.


Dated: January 16, 2019
       New York, New York

                                        /s/ Jacqueline Marcus
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York  10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Jacqueline Marcus
                                        Garrett A. Fail
                                        Sunny Singh
                                        Jessica Liou

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

WEIL:\96870454\5\73217.0004

**Exhibit A**

**Initial Engagement Letter**

WEIL:\96870454\5\73217.0004



Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10112

As of October 11, 2018

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Attention:     Mr. Mohsin Y. Meghji
               Chief Restructuring Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Sears Holdings Corporation ("Sears") and its controlled subsidiaries (collectively with Sears and any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its investment banker to provide Sears with general restructuring advice and to advise it in connection with any Restructuring, Financing and/or Sale Transaction (each as defined below) on the terms and conditions set forth herein.  As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (any Restructuring of Sears or any of its subsidiaries pursuant to Chapter 11 of the United States Bankruptcy Code, a "Bankruptcy Process")), repayment and/or recapitalization of all or a portion of the Company's outstanding indebtedness for borrowed money (including bank debt and bond debt) and letters of credit (regardless of whether drawn) and other on and off balance sheet indebtedness, leases (both on and off balance sheet) or other liabilities (collectively, the "Existing Obligations"), including the Company's Existing Debt Obligations (as defined on Schedule 1 attached hereto), that is achieved, without limitation, through (i) a solicitation of waivers and consents from the holders of Existing Obligations (collectively, together with the Company's equityholders, the "Stakeholders"); (ii) any extension of the maturities of all or a portion of the Existing Obligations; (iii) any change in the interest rates or other significant terms of all or a portion of the Existing Obligations that is favorable to the Company; (iv) any repurchase, settlement, repayment (through proceeds from sales of assets or otherwise) or forgiveness of all or a portion of the Existing Obligations; (v) any conversion of all or a portion of the Existing Obligations into assets or equity; or (vi) any exchange offer involving the issuance of new securities in exchange for Existing Obligations.  For purposes hereof, no Sale Transaction shall in and of itself constitute a Restructuring.

*Description of Services:*

1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

(a)    Reviewing and analyzing the Company's assets, liabilities, business, operations, financial statements, liquidity, financial condition, business plans, forecasts and financial projections;

(b)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)    Providing advice and assistance in analyzing and sensitizing the Company's financial projections based upon alternative scenarios;

(d)    Evaluating options relating to a Restructuring and/or other strategic alternatives for the Company;

(e)    Assisting in the determination of a capital structure for the Company;

(f)    Assisting in the determination of a range of values for the Company on a going concern basis;

(g)    Advising and assisting the Company on negotiating with the Stakeholders, including advising on tactics and strategies;

(h)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(i)    Advising the Company on the timing, nature, and terms of new securities, indebtedness or other consideration or other inducements to be offered pursuant to any Restructuring;

(j)    Advising and assisting the Company in evaluating any potential Financing[1] by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

(k)    Subject to Lazard's agreement so to act, assisting the Company in identifying and evaluating candidates for any potential Sale Transaction,

---

[1] As used in this Agreement, the term "Financing" means any public or private issuance, sale, or placement of newly-issued (including any sale or placement of securities currently held in treasury) equity, equity-linked or debt securities or bank debt (including (i) committed revolving credit facilities and (ii) any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code).

advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction[2];

(l)     Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring, and, if requested by the Company, any Financing or Sale Transaction (for which we have agreed to so act);

(m)    Attending meetings of the Board of Directors of Sears with respect to matters on which we have been engaged to advise hereunder;

(n)    Preparing valuation analyses, if necessary, in connection with any Restructuring, and, if requested by the Company, any Financing or Sale Transaction (for which we have agreed to so act);

(o)    Assisting the Board of Directors of Sears in connection with the evaluation of any Restructuring, Financing or Sale Transaction;

(p)    Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(q)    Providing the Company with other financial restructuring advice or services as may from time to time be reasonably requested by the Company in connection with the foregoing.

*Fees:*

2.    As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)    A monthly fee of $200,000 (the "Monthly Fee"), payable in advance on the 15th day of each month commencing with October 15, 2018 until the earlier of the termination of Lazard's engagement pursuant to Section 10. Fifty percent (50%) of the Monthly Fees paid with respect to period commencing on May 15, 2019 shall be credited (without duplication) against any Restructuring Fee, Financing Fee, or Sale Transaction Fee subsequently payable; provided, further, that, in the event of a Bankruptcy Process, to the extent that such Restructuring Fee, Financing Fee or Sale Transaction Fee

---

[2] As used in this Agreement, the term "Sale Transaction" means (a) any acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with a third party; (b) any acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended, and shall also include current Stakeholders), of equity interests or options, or any combination thereof, constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers (including current Stakeholders) of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party (including current Stakeholders). For the avoidance of doubt, no issuance of convertible debt obligations (or any issuance of equity as a result of the conversion of such convertible debt obligations) in exchange for Existing Debt Obligations shall in and of itself constitute a Sale Transaction.

are not approved in entirety by the Bankruptcy Court, if applicable, the amount of such credit shall be reduced by the shortfall in approved fee.

(b)     A fee, payable upon the effectiveness of each amendment of the Existing First Lien Credit Facility that does not constitute a Restructuring and is not completed through a Bankruptcy Process with respect to the amendment that is currently being negotiated with the agents and lenders thereunder, in the amount of $350,000 (the "Amendment Fee").

(c)     A fee, payable upon the consummation of a Restructuring, equal to 55.0 basis points (0.55%) of the principal amount of the Existing Obligations involved in such Restructuring (the "Restructuring Fee"); provided, however, that the portion of any Existing Obligations owned by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pension plans shall not be included when calculating the In-Court Restructuring Fee payable.

(d)     A fee, payable upon consummation of a Financing, equal to 55.0 basis points (0.55%) of the aggregate principal amount of new securities, instruments or obligations of the Company (including the committed amount of any new committed revolving credit facilities) incurred in such Financing (the "Financing Fee"); provided, however, that the portion of any such amount funded or committed by members of the Board of Directors of the Company or their controlled affiliates (including ESL) or either or both of the Company's pension plans shall not be included when calculating the Financing Fee payable; provided that neither the consensual use of cash collateral nor the consummation of a roll-up or roll-over portion of any credit facility shall in and of itself give rise to any Financing Fee; provided, further, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the execution of a definitive agreement with respect to the Financing; and, provided, further, that to the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect to all or any portion of such Financing (or all or any portion of such Financing is for any other reason not available), Lazard shall return to the Company the portion of such fee relating to the portion of such Financing that is not so approved or for any other reason not available (less any Monthly Fees that have accrued and not been paid).

(e)     A fee, payable upon consummation of a Sale Transaction, equal to 55.0 basis points (0.55%) of the Aggregate Consideration (as defined on Schedule 2 attached hereto) paid in such Sale Transaction (the "Sale Transaction Fee"); provided, however, that the portion of any such Aggregate Consideration paid by (i) members of the Board of Directors of the Company or their controlled affiliates (including ESL) or (ii) either or both of the Company's pension plans shall not be included when calculating the Sale Transaction Fee payable with respect to a Sale Transaction that is

not completed in connection with, or during the course of, a Bankruptcy Process;

(f)   For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (b), (c), (d) and (e) above. However, only one fee shall be payable pursuant to clauses (b), (c), (d) and (e) above with respect to any particular portion of the Existing Obligations, which fee shall be the greatest of such fees. In the event of a Bankruptcy Process, the aggregate fees payable to Lazard pursuant to this Agreement (including, without limitation, any Tail Fee, but excluding any Monthly Fees or Amendment Fees) shall not exceed $12,500,000.00.

(g)   In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all reasonable and documented out-of-pocket expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable and documented out-of-pocket fees and expenses of a single primary legal counsel, if any, retained by Lazard; provided that the Company shall have no obligation to reimburse Lazard for any fees or expenses in excess of $50,000 in the aggregate absent express prior written consent of the Company to the incurrence of such fees or expenses, which consent shall not be unreasonably withheld.

(h)   The Company and Lazard entered into an indemnification agreement dated as of January 17, 2018, which agreement remains in full force and effect (the "Indemnification Letter"). The Company and Lazard hereby agree that the Indemnification Letter shall also apply to our engagement hereunder and is incorporated herein in its entirety. For the avoidance of any doubt, it is agreed that the expense limitations set forth in clause (h) above shall not apply to the Indemnification Letter.

(i)   All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3.   In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use reasonable best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court and take such other actions as may be required of it pursuant to the terms of the order approving its retention. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and

proposed order to provide Lazard and its counsel a reasonable opportunity to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is reasonably acceptable to Lazard. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Amendment, Financing or Sale Transaction, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Amendment Fee, Financing Fee, and Sale Transaction Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4.    No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5.    The Company will use commercially reasonable efforts to furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may reasonably request in connection with this engagement, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position to the extent relevant to a Restructuring and, to the extent that the Company has expressly requested that Lazard advise the Company on a Financing or Sale Transaction, such Financing or Sale Transaction. The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete in all material respects at the time it is furnished. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any appraisal of any of the assets or liabilities of the Company or of any third party.

6.    In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Financing, Sale Transaction or other transaction. Lazard shall not have any obligation or responsibility in connection with performing services under this Agreement to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative or cash management improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7.    It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of our affiliates to underwrite, place or purchase

any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8.    The Indemnification Letter shall survive any termination of our engagement hereunder.

9.    In the event that Lazard receives an inquiry concerning any Restructuring, Financing or Sale Transaction, we will promptly inform the Company of such inquiry.

10.    Our engagement hereunder may be terminated by Sears or us at any time without liability or continuing obligation to the Company or us following any termination, except that (I) following any termination of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination and to reimbursement of expenses incurred but not yet reimbursed prior to such termination and (II) in the case of termination by Sears, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof (other than Section 2(a) hereof) in respect of, any Restructuring (solely to the extent relating to any particular portion of the Existing Obligations with respect to which Lazard was not previously paid a fee hereunder pursuant to Restructuring), Financing or Sale Transaction, in each case, that is announced or for which a definitive agreement is executed during the period from September 10, 2018 until nine months following such termination (the "Tail Fee").

11.    Lazard has been retained under this Agreement as an independent contractor to Sears, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than Sears. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than the senior management and Board of Directors of Sears (in their capacities as such), is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting the senior management and Board of Directors of Sears (in their capacities as such) in evaluating the relevant Restructuring, Amendment, Financing or Sale Transaction, as applicable, and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Amendment, Financing or Sale Transaction, as applicable. The Company agrees that, notwithstanding any termination of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard; provided, however, that such advice may be disclosed by Sears (i) for informational purposes to any of its affiliates, and its and their respective attorneys, accountants, consultants, financial advisors, directors, officers, agents and employees (collectively, "Representatives") who have a "need to know" such information and have been required by Sears to maintain the confidential nature of such advice and (ii) if it is requested or legally required to make such disclosure in order to comply with applicable law, rule, regulation, professional standard, ethical requirement or legal, judicial or administrative process, including, without limitation, any rule, regulation, demand, request or policy statement of (A) any organized securities exchange, market or automated quotation system on which its securities are listed or quoted or (B) any regulatory authority or self-regulatory organization having jurisdiction or of which a party is

a member, subject to prior consultation with Lazard to the extent practicable and provided that the Company will request confidential treatment of any information so disclosed (provided, that no notice shall or request shall be required in connection with disclosures to regulatory authorities in connection with a regulatory review of the Company or any of its Representatives that is not specifically targeted at such advice).  Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12.  In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with the terms of the Confidentiality Agreement, dated as of September 7, 2018, between Sears and Lazard.  Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13.  The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter.  No party to this Agreement may assign any of its rights or obligations hereunder without the express prior written consent of the other party hereto.  The Company's obligations pursuant to this Agreement shall be joint and several.  This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein, including the engagement letters between the Company and Lazard dated as of January 17, 2018 and as of September 17, 2018; provided, that, for the avoidance of any doubt, Lazard shall be entitled to retain any fees actually paid prior to the date hereof pursuant to such prior engagement letters and no such fees shall be credited against any fees payable hereunder.  No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby; provided, however, that any consent or instruction required hereunder to be given in writing may be given via email.

14.  This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law.  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts.  Each party hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding.  Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

[Remainder of Page Intentionally Left Blank]

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

Brandon Aebersold
Managing Director

AGREED TO AND ACCEPTED
as of the date first written above:

SEARS HOLDINGS CORPORATION, on behalf of itself
and its controlled subsidiaries

By: _____

Mohsin Y. Meghji
Chief Restructuring Officer

SCHEDULE 1

The "Existing Debt Obligations" captured under the scope of this Agreement shall be limited to the indebtedness outstanding as of the date hereof under the following:

(i) the Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the lenders from time to time party thereto, the issuing lenders from time to time party thereto, Bank of America, N.A., as administrative agent, co-collateral agent and swingline lender, and Wells Fargo Bank, National Association, as co-collateral agent (the "Existing First Lien Credit Facility"); provided that indebtedness outstanding under the Existing First Lien Credit Facility includes the 2016 Term Loan and the 2018 FILO Loan;

(ii) the Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the L/C lenders from time to time party thereto and Citibank, N.A., as administrative agent and issuing bank;

(iii) the Credit Agreement, dated as of March 14, 2018 (as amended, supplemented or otherwise modified from time to time), among SRC O.P. LLC, SRC Facilities LLC and SRC Real Estate (TX) LLC, as borrowers, the lenders from time to time party thereto and UBS AG, Stamford Branch as administrative agent;

(iv) the Term Loan Credit Agreement, dated as of January 4, 2018 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the other guarantors from time to time party thereto, the lenders from time to time party thereto and JPP, LLC, as administrative and collateral administrator;

(v) the Third Amended and Restated Loan Agreement, dated as of June 4, 2018 (as amended, supplemented or otherwise modified from time to time), among Sears, Roebuck and Co., Kmart Stores of Illinois LLC, Kmart of Washington LLC, Kmart Corporation, SHC Desert Springs, LLC, Innovel Solutions, Inc., Sears Holdings Management Corporation, Maxserv, Inc., Troy Coolidge No. 13, LLC, Sears Development Co. and Big Beaver of Florida Development, LLC, as borrowers, JPP, LLC, JPP II, LLC and Cascade Investment, LLC, as lenders, and JPP LLC as administrative agent;

(vi) the term loan, but not the line of credit facility, established pursuant to the Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, supplemented or otherwise modified from time to time), among Sears, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the lenders from time to time party thereto and JPP, LLC, as administrative agent and collateral administrator;

(vii) the Indenture, dated as of March 20, 2018 (as amended, supplemented or otherwise modified from time to time), among Sears, the guarantors from time to time party thereto and Computershare Trust Company, N.A. as trustee, and the 6 5/8% Senior Secured Convertible PIK Toggle Notes due 2019 issued thereunder;

(viii) the Indenture, dated as of October 12, 2010 (as amended, supplemented or otherwise modified from time to time), among Sears, the guarantors from time to time party thereto and Wilmington

Trust, National Association, as successor trustee and collateral agent, and the 6 5/8% Senior Secured Notes due 2018 issued thereunder (the "Second Lien Notes");

(ix) the Mezzanine Loan Agreement, dated as of March 14, 2018 (as amended, supplemented or otherwise modified from time to time), among SRC Sparrow 2 LLC, as borrower, the lenders from time to time party thereto and JPP, LLC as administrative agent;

(x) the Indenture, dated as of November 21, 2014 (as amended, supplemented or otherwise modified from time to time), between Sears and Computershare Trust Company, N.A., as trustee, and the 8% Senior Unsecured Notes due 2019 and 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 issued thereunder (the "Unsecured Notes"); and

(xii) the 7.5% Senior Unsecured Notes due October 2027, 6.750% Senior Unsecured Notes due January 2028, 6.50% Senior Unsecured Notes due December 2028, the 7.0% Senior Unsecured Notes due June 2032, the 7.0% Senior Unsecured Notes due July 2042, the 7.40% Senior Unsecured Notes due February 2043 and the 7.00% / 12.00% PIK-Toggle Notes due 2028, in each case issued by Sears Roebuck Acceptance Corp. and held by persons or entities other than Sears and its subsidiaries (the "SRAC Notes").

## SCHEDULE 2

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) to the Company and its security holders in connection with the Sale Transaction, including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money assumed, cancelled, exchanged or forgiven. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, as part of the Sale Transaction. For purposes of calculating Aggregate Consideration, (i) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the weighted average price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); (ii) the value of securities that have no established public market or other property will be the fair market value of such securities or other property on Valuation Date; (iii) any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock and (iv) in the case of any credit bid, the face amount of the debt so credited shall be the value.  Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed (except to the extent the direct obligations or other guarantees in respect of such monies borrowed are already included), in each case directly or indirectly assumed, cancelled, exchanged or forgiven.  If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by Sears and Lazard in good faith (based upon the expected value of such contingent payments as of the date of consummation of such Sale Transaction) and paid to us upon consummation of the Sale Transaction.