Hearing Date and Time: January 18, 2019 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                       :
                                                            :    Chapter 11
**SEARS HOLDINGS CORPORATION**, *et al.*,                   :
                                                            :    Case No. 18-23538 (RDD)
                                                            :
                    Debtors.[1]                             :    (Jointly Administered)
------------------------------------------------------------x

## DEBTORS' REPLY TO LIMITED OBJECTION OF LIBBY DIAL ENTERPRISES, LLC TO STORE CLOSING PROCEDURES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this reply (the "**Reply**") to the *Limited Objection of Libby Dial Enterprises, LLC to Store Closing Procedures* (ECF No. 1503) (the "**Objection**") filed by Libby Dial Enterprises, LLC ("**Landlord**"), and respectfully represent as follows:

**Relevant Background**

1. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

*The Lease*

5.  On November 25, 1974, David Baker and Lee J. Baker, as predecessor landlord, and S.S. Kresge Company, as predecessor tenant, entered into that certain Lease (together with amendments, the "**Lease**") for the premises located at 1143 Broad Street in Sumter, South Carolina (the "**Leased Premises**"). The Lease provided for S.S. Kresge to build an improvement on the Leased Premises and designate the building as "Kmart". The Lease was amended on December 1, 1990, pursuant to an agreement between Baker and Baker, successor to David Baker and Lee J. Baker, and Kmart Corporation ("**Kmart**"), the successor to S.S. Kresge Corporation. A copy of the Lease is annexed to the Objection as Exhibit A.

6.  Paragraph 4 of the Lease states, among other things:

> Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of it intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within ninety (90) days after the dated of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said ninety (90) day period and the Tenant shall be released from any further liability under this lease.
>
> Should the landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraph of this article shall be of no further force and effect.

Lease, Art. 4 (the "**Termination Provision**").

3

*The GOB Notice*

7.  On October 15, 2018, the Debtors' filed the *Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (ECF No. 23) (the "**Store Closing Procedures Motion**").[2]

8.  On October 26, 2018, the Court entered the *Interim Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (ECF No. 337) (the "**Interim Store Closing Procedures Order**") approving the Store Closing Procedures Motion on an interim basis.

9.  On November 19, 2018, the Court entered the *Final Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (ECF No. 823) (the "**Final Store Closing Procedures Order**" and, together with the "**Interim Store Closing Procedures Order**," the "**Store Closing Procedure Order**") approving the Store Closing Procedures Motion on a final basis.

10. The Store Closing Procedures Order expressly states:

> Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; provided that the Store Closing Sales are conducted in accordance with the terms of this Order, the Store Closing Procedures, and any applicable Landlord Agreement.

Store Closing Procedures Order, ¶ 12.  It further provides that:

> The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Store Closing Procedures Motion.

4

> any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases).

Store Closing Procedures Order, ¶ 13.

11. On December 28, 2018, the Debtors filed the *Notice of Intent to Conduct Store Closing Sales* (ECF No. 1444) (the "**GOB Sales Notice**") identifying, among others, Kmart store number 7062, located at the Leased Premises (the "**Kmart Store**"), as a store in which the Debtors intend to commence Store Closing Sales.

12. On December 28, 2018, the Debtors received an initial bid for their go-forward retail footprint and certain related assets from an affiliate of ESL Investments, Inc. ("**ESL**"). On January 9, 2019, at the Court's direction, ESL submitted an earnest money cash deposit in the amount of $120 million in connection with its bid. ESL subsequently revised its bid and the Kmart Store is included among the "GOB Leased Stores" it seeks to acquire. An auction commenced on January 14, 2019 in connection with the Debtors' go forward store footprint and such auction is continuing. If ESL is declared the successful bidder at the conclusion of the auction, the Debtors will seek Court approval of the sale of the assets designated in the ESL bid at a hearing scheduled for February 1, 2019.

### The Debtors' Reply

13. The Landlord does not oppose the Debtors' liquidation of the inventory and closure of the Kmart Store pursuant to the Court approved Store Closing Procedures. Rather, the Landlord contends that, notwithstanding the Store Closing Procedure Order, the Termination Provision is valid and enforceable. *See* Objection, ¶ 8. Specifically, the Landlord is seeking

5

authority from the Court to issue a notice terminating the Lease pursuant to the Termination Provision because the Debtors have elected to "go-dark".

14. The Objection should be overruled for a number of reasons. First, the Store Closing Procedures Order specifically addresses the type of provision the Landlord is seeking to enforce and this Court already ruled that such provision is unenforceable. Second, the automatic stay prohibits the Landlord from exercising its option to enforce the Termination Provision absent a showing of cause. The Objection is void of any reference to the automatic stay or any of the numerous factors weighed by Courts in this District in determining whether cause exists to lift or modify the automatic stay. Accordingly, the automatic stay should continue to apply so as to prevent the Landlord from engaging in any act to obtain possession of property of the Debtors' estates.

**A.    The Store Closing Procedures Order Should Apply to the Lease**

15. The Store Closing Procedures Order is integral to maximizing the value of the Debtors' estates. To date, the Debtors have utilized the Store Closing Procedure to close over 260 retail store locations and have generated substantial sale proceeds for the benefit of their estates and creditors. The relief afforded to the Debtors under the Store Closing Procedures Order is both necessary and appropriate to effectuate the Debtors' reorganization efforts.

16. Despite well-established case law in this District, including prior rulings of this Court, the Landlord seeks to undermine an essential provision of the Store Closing Procedures Order and hamper the Debtors' sale efforts. Contrary to the Landlord's position, the Termination Provision is not unique and there is no reason for the Landlord to be treated differently from the approximately 1,800 other landlords who were party to the Debtors' unexpired non-residential real property leases at the outset of these cases and who negotiated protective lease provisions prepetition. Indeed, section 365(b)(1)(A) of the Bankruptcy Code specifically addresses operating

covenants in leases and protects landlords from the same concerns raised in the Objection. *See* 365(b)(1)(A) (providing that, if at the time of assumption of a lease, there exists a default that "arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph"). Accordingly, Congress contemplated this very scenario and it fashioned a remedy in favor of landlords to address the perceived harm of a debtor-tenant "going-dark." It would conflict with section 365(b)(1)(A) of the Bankruptcy Code to allow a landlord to terminate an unexpired non-residential real property lease for the very type of default Congress contemplated and addressed.

17.     Further, the Debtors clearly sought relief from this Court for the types of provisions the Landlord is seeking to enforce and the Court granted the Debtors' requested relief. *See* Store Closing Procedures Order, ¶¶ 12 and 13. The Store Closing Procedures Order was heavily negotiated with numerous landlords, including the many that filed formal objections to the Store Closing Procedures Motion. Moreover, the Objection does not raise an issue of first impression. This Court has previously expressed reluctance to allow a landlord to recapture a marketable lease based on the debtor tenant going-dark. *See, e.g.*, *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (ECF No. 353) (deeming unenforceable any restrictions in any lease agreement, restrictive covenant, or similar document that would limit, condition, or impair the Debtors' ability to conduct store closing sales); *The Great Atlantic & Pacific Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 18, 2015) (ECF No. 546) (entering an order that provides that any "continuous operation" or similar lease clauses shall not be a basis to terminate a lease); *The Great Atlantic & Pacific Tea Co., Inc.*, Case

No. 10-24549 (RDD) (Bankr. S.D.N.Y. Mar. 10, 2011) (ECF No. 1004) (relieving the debtors of any restrictions in a lease agreement or similar document that was inconsistent with the store closing procedures).

18. In *In re Ames Department Stores, Inc.*, 136 B.R. 357 (Bankr. S.D.N.Y. 1992), a landlord sought damages from the debtor for its alleged breaches of the lease which included, among others, the debtor's failure to continuously operate its store by conducting a going out of business sale. *Id*. at 359. Faced with an operating covenant similar to the Termination Provision, the Court in *Ames* stated "that to enforce the anti-GOB sale clause of the Lease would contravene overriding federal policy requiring Debtor to maximize estate assets by imposing additional constraints never envisioned by Congress." *Id*. Permitting the Landlord to enforce the Termination Provision would similarly undercut the Debtors' goal of maximizing the value of estate assets and should not be allowed.

19. The Objection does not posit any sound rationale for this Court to allow the Landlord to enforce a provision that effectively results in the forfeiture of valuable property interests from the Debtors' estates. Accordingly, the Store Closing Procedures Order should apply to the Lease and the Termination Provision held unenforceable.

**B.     Landlord Fails to Show Cause to Modify the Automatic Stay To Terminate the Lease**

20. Section 362 of the Bankruptcy Code provides, in pertinent part, that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3).

21. An unexpired lease of real property and a debtor's possessory interest in such real property are property of the debtor's estate. *See* 11 U.S.C. § 541; *see also In re Am.*

*Banknote Corp.*, No. 99-B-11577, 2000 WL 815910, at *2 (S.D.N.Y. June 22, 2000) ("An unexpired lease is such an interest in property and therefore qualifies as property of the estate.") (internal citations omitted).  In recognition of this, many courts have found that landlords have violated the automatic stay by taking action to obtain possession of property leased to a debtor, since a lease is within the ambit of the debtor's estate.  *See In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d. Cir. 1987) (affirming bankruptcy court's ruling that landlord sending lease termination notice to sublessor was in violation of the automatic stay because it would have resulted in the termination of the debtor's subtenancy).  Accordingly, the automatic stay acts to protect the Debtors' interest in the Lease and possession of the Kmart Store and applies to prevent the Landlord from taking any action to obtain possession or control of the Leased Premises, including termination of the Lease.  Despite the clear applicability of the automatic stay, the Objection does not make any reference to modification of the automatic stay to permit the Landlord to terminate the Lease.

22. Courts will only modify the automatic stay pursuant to section 362(d)(1) upon a showing of cause.  11 U.S.C. § 362(d)(1); *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Lord,* 325 B.R. 121, 129 (Bankr. S.D.N.Y. 2005).  The Second Circuit established a set of twelve factors in *Sonnax* (the "**Sonnax Factors**") that have become the standard by which courts in the Second Circuit consider whether to modify the automatic stay.[3]  *See In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138

---

[3] The *Sonnax* Factors are:

    (1) whether relief would result in a partial or complete resolution of the issues;
    (2) lack of any connection with or interference with the bankruptcy case;
    (3) whether the other proceeding involves the debtor as a fiduciary;
    (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
    (5) whether the debtor's insurer has assumed full responsibility for defending it;
    (6) whether the action primarily involves third parties;

(S.D.N.Y. 2010) ("*Sonnax* . . . is routinely referenced as the leading relief from stay precedent in this Circuit."), *aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.,* 402 F. App'x 634 (2d Cir. 2010).

23.    Although the *Sonnax* Court outlined twelve factors, courts need not consider each factor, but may consider only the factors that are relevant to the particular case. *See In re RCM Global Long Term Capital Appreciation Fund, Ltd.,* 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("A court should . . . use only the factors that are deemed relevant . . . ."). In fact, the *Sonnax* Court itself considered only four of the twelve factors as relevant in that case. *Sonnax,* 907 F.2d at 1286. Additionally, courts need not assign equal weight to each factor, and have discretion in weighing the factors against one another. *RCM Global*, 200 B.R. at 526 ("A court should apply these factors on a case-by-case basis . . . assigning to each factor whatever weight the court feels is appropriate.").

24.    The Second Circuit has held that the party seeking to lift or modify the automatic stay bears the initial burden to show cause as to why the stay should be modified or lifted and "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax,* 907 F.2d at 1285. Once the movant has shown cause, the party opposing the motion must show that it is entitled to the continuing protections of the automatic stay. *See Enron*, 306 B.R. 465, 476

---

(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

WEIL:\96871986\5\73217.0004

Pg 11 of 11

(Bankr. S.D.N.Y. 2004) (citing *In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993));

*see also RCM Global*, 200 B.R. at 526.

25. Given the Landord's abject failure to satisfy its initial burden, the Court should deny the Objection.

## CONCLUSION

26. For the foregoing reasons, the Objection should be denied and the Debtors should be authorized to proceed to liquidate and cease operating the Kmart Store.

WHEREFORE the Debtors respectfully request that the Court overrule the Objection.

Dated: January 16, 2019
     New York, New York

                              /s/ Jacqueline Marcus
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:  (212) 310-8007
                              Ray C. Schrock, P.C.
                              Jacqueline Marcus
                              Garrett A. Fail
                              Sunny Singh
                              Jessica Liou

                              *Attorneys for Debtors*
                              *and Debtors in Possession*

WEIL:\96871986\5\73217.0004