WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## STATEMENT OF FINANCIAL AFFAIRS FOR
## INNOVEL SOLUTIONS, INC.
## CASE NO. 18-23548 (RDD)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                              :
                                                   :      **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,          :
                                                   :      **Case No. 18-23538 (RDD)**
                                                   :
            Debtors.[1]                            :      **(Jointly Administered)**
-----------------------------------------------------------------x

### GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Sears Holdings Corporation ("**Sears Holdings**") and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are filing their respective Schedules of Assets and Liabilities (each, a "**Schedule**" and, collectively, the "**Schedules**") and Statements of Financial Affairs (each, a "**Statement**" or "**SOFA**" and, collectively, the "**Statements**" or "**SOFAs**" in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These Global Notes and Statements of Limitations, Methodology and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of all the Schedules and Statements. The Global Notes are in addition to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

specific notes set forth below with respect to particular Schedules and Statements (the "**Specific Notes**" and, together with the Global Notes, the "**Notes**"). These Global Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other professionals and have necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals. Given the scale of the Debtors' businesses, the Debtors' management has not (and could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors.

The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules or Statements and inadvertent errors, omissions, or inaccuracies may exist. Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including, but not limited to, any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1. **Description of the Cases.** The Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code on October 15, 2018 (such Debtors, the "**Initial Debtors**"), and on October 18, 2018, October 22, 2018, and

January 7, 2018 (such Debtors, the "**Additional Debtors**"),[2] each such date, the "**Commencement Date**" for the relevant Debtors. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 16, 2018, the Bankruptcy Court entered an order authorizing the joint administration of the cases of the Initial Debtors pursuant to Bankruptcy Rule 1015(b). On November 1, 2018, November 2, 2018, and January 10, 2019, the Bankruptcy Court applied such order to the cases of the Additional Debtors. On October 24, 2018, the United States Trustee for the Southern District of New York Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Creditors' Committee**").

2.    **Basis of Presentation.**    For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include financial information for Sears Holdings and its subsidiaries, including both Debtors and certain non-debtor affiliates. The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements, neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the proper Debtor entity. However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than by individual legal entity, it is possible that not all assets, liabilities or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the valuation of certain assets and the valuation and nature of certain liabilities, a Debtor may report more assets than liabilities. Such report shall not constitute an admission that such Debtor was solvent on the Commencement Date or at any time before or after the Commencement Date. Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent at the Commencement Date or any time prior to or after the Commencement Date.

3.    **Reporting Date.**    Unless otherwise noted, the Schedules and Statements generally reflect the Debtors' books and records as of the close of business on the

---

[2] The Additional Debtors, along with the last four digits of each Additional Debtor's federal tax identification number are, as follows: (i) SHC Licensed Business LLC (3718) filed on October 18, 2018; (ii) SHC Promotions LLC (9626) filed on October 22, 2018; and (iii) SRe Holding Corporation (4816) filed on January 7, 2019.

Commencement Date, adjusted for authorized payments under the First Day Orders (as defined below).[3]

4.    **Current Values.**  The assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books and records. Unless otherwise noted, the carrying value on the Debtor's books, rather than the current market value, is reflected in the Schedules and Statements.

5.    **Confidentiality.** There may be instances where certain information was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or to protect the privacy of an individual. The omissions and redactions are limited to only what is necessary to protect the Debtor or a third party and will provide interested parties with sufficient information to discern the nature of the listing.

6.    **Consolidated Entity Accounts Payable and Disbursement Systems.** As described in the Cash Management Motion,[4] the Debtors utilize an integrated, centralized cash management system, in the ordinary course of business, to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**").  The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts.

In the ordinary course of business, the Debtors maintain business relationships among each other and with certain non-debtor affiliates, which result in intercompany receivables and payables (the "**Intercompany Claims**") arising from intercompany transactions (the "**Intercompany Transactions**").  As set forth more fully in the Cash Management Motion, the primary Intercompany Transactions giving rise to Intercompany Claims are cash receipts activities, disbursement activities, inventory purchases, and expense allocations. Historically, Intercompany Claims are not settled by actual transfers of cash among the Debtors.  Instead, the Debtors track all Intercompany Transactions in

---

[3] While the Additional Debtors (i) SHC Licensed Business LLC (3718) and (ii) SHC Promotions LLC (9626) filed subsequent to the Initial Debtors' Commencement Date, unless otherwise indicated the information presented in the Schedules and Statements is as of the Initial Debtors' Reporting Date of October 15, 2018.  The Debtor SRe Holding Corporation (4816) filed on January 7, 2019 and the information presented in the Schedules and Statements is as of January 5, 2019, which coincides with the timing of this Debtor's fiscal accounting period that is closest to January 7, 2019.

[4] *Motion of Debtors for Authority to (i) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (ii) Implement Ordinary Course Changes to Cash Management System, (iii) Continue Intercompany Transactions, and (iv) Provide Administrative Expense Priority for Postpetition Intercompany Claims and Related Relief* (ECF No. 5) (the "**Cash Management Motion**").

their accounting system, which concurrently are recorded on the applicable Debtors' balance sheets.

In addition, as defined and discussed in the Cash Management Motion, the Debtors are party to certain Foreign Affiliate Intercompany Transactions, Warranty Payments and Intellectual Property Intercompany Transactions. Unless otherwise noted, the Debtors have reported the aggregate net intercompany balances among the Debtors and their non-debtor affiliates as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate.

7.    **Accuracy.**  Although the Debtors have made reasonable efforts to file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and/or supplement the Schedules and Statements as is necessary or appropriate.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder.  Persons and entities trading in or otherwise purchasing, selling or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared. The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

8.    **Net Book Value of Assets.**  In many instances, current market valuations are not maintained by or readily available to the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets. As such, wherever possible, unless otherwise indicated, net book values as of the Commencement Date are presented for all assets. When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined." Amounts ultimately realized may vary materially from net book value (or other value so ascribed). Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements. As applicable, fixed assets and leasehold improvement assets that fully have been depreciated, amortized or impaired, or were expensed for GAAP accounting purposes, have no net book value, and, therefore, are not included in the Schedules and Statements.

9.    **Currency.**  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

10.   **Payment of Prepetition Claims Pursuant to First Day Orders.**  Shortly after October 15, 2018, the Bankruptcy Court entered orders (collectively, the "**First-Day Orders**"), authorizing, but not directing, the Initial Debtors to, among other things, pay certain prepetition: (i) service fees and charges assessed by the Debtors' banks and debit and credit card companies; (ii) claims of warehousemen and miscellaneous lien claimants; (iii) certain insurance obligations; (iv) obligations to "critical vendors;" (v) customer programs obligations; (vi)

employee wages, salaries, and related items, including, but not limited to, employee benefit programs and independent contractor obligations; (vii) taxes and assessments; and (viii) amounts held in trust or on a consignment basis where the company has collected on behalf of a third party.[5] Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amounts attributable to such claims, such scheduled amounts reflect balances owed as of the Commencement Date. To the extent any adjustments are necessary for any payments made on account of such claims following the commencement of these chapter 11 cases pursuant to the authority granted to the Debtors by the Bankruptcy Court under the First-Day Orders, such adjustments have been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement. The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to the First-Day Orders.

11.    **Other Paid Claims.**   To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

12.    **Setoffs.** The Debtors routinely incur certain setoffs from customers and suppliers in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, customer programs, returns, promotional funding, warranties, refunds, and other disputes between the Debtors and their customers and/or suppliers. These routine setoffs are consistent with the ordinary course of business in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such, are excluded from the Schedules and Statements. Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

13.    **Accounts Receivable.** The accounts receivable information listed on the Schedules includes receivables from the Debtors' customers and are calculated net of any amounts that, as of the Commencement Date, may be owed to such customers in the form of offsets or other price adjustments pursuant to the Debtors' customer program policies and day-to-day operating policies.

---

[5] The First Day Orders were later applied to the Additional Debtors by the Bankruptcy Court.

14.     **Inventory.** Inventories are valued at the lower of cost or market determined primarily using the retail inventory method.   For certain of the Debtors that operate as Kmart, their merchandise inventories are valued under the retail inventory method using primarily a first-in, first-out cost flow assumption. For certain of the Debtors that operate as Sears, their merchandise inventories are valued under the retail inventory method using primarily a last-in, first-out cost flow assumption.

15.     **Property and Equipment.** Property and equipment (including leasehold improvements) are carried at cost, less accumulated depreciation.  Additions and substantial improvements are capitalized and include expenditures that materially extend the useful lives of existing facilities and equipment.  Maintenance and repairs that do not materially improve or extend the lives of the respective assets are expensed as incurred.  Depreciation expense, which includes depreciation on assets under capital leases, is recorded over the estimated useful lives of the respective assets using the straight-line method for financial statement purposes. The range of lives are generally 20 to 50 years for buildings, 3 to 10 years for furniture, fixtures and equipment, and 3 to 5 years for computer systems and computer equipment. Leasehold improvements are depreciated over the shorter of the associated lease term or the estimated useful life of the asset.

The inventories, property and equipment listed in the Schedules are presented without consideration of any mechanics' or other liens.

16.     **Mechanics' & UCC Liens.**  Known, filed mechanics' and UCC liens are listed on Schedule D.  The inventories, property, plant and equipment listed in these Schedules are presented without consideration of any mechanics' or other liens. To the extent the corresponding Debtor is identified within the filed documents, the liens are identified on that Debtor's Schedule D.  Those documents that do not identify a specific debtor are listed on Schedule D for Sears Holdings.

17.     **Excluded Assets and Liabilities.** Certain liabilities resulting from accruals, liabilities recognized in accordance with GAAP and/or estimates of long-term liabilities either are not payable at this time or have not yet been reported. Therefore, they do not represent specific claims as of the Commencement Date and are not otherwise set forth in the Schedules. Additionally, certain deferred assets, charges, accounts or reserves recorded for GAAP reporting purposes only and certain assets with a net book value of zero are not included in the Schedules. Excluded categories of assets and liabilities include, but are not limited to, deferred tax assets and liabilities, deferred income, deferred charges, self-insurance reserves, closed store and warehouse reserves, accrued occupancy related costs for open stores, deferred real estate income, favorable lease rights and unfavorable lease liabilities.   Other immaterial assets and liabilities may have been excluded.

In the ordinary course of business, the Debtors maintain a customer loyalty reward program that entitles customers to receive certain benefits based on the amount they spend with the Debtors and certain partners (the "**Shop Your Way Program**"). As of the Commencement Date, there were approximately 144 million customers enrolled in the Shop Your Way Program. The Debtors received approval under the *Order Authorizing Debtors to (i) Maintain and Administer Prepetition Customer Programs, Promotions, and Practices, and (ii) Pay and Honor Related Prepetition Obligations* (ECF No. 135) (the "**Customer Programs Order**") to continue to honor Shop Your Way program benefits and obligations. Due to the Debtors' concern for their customers' privacy, and because it would be unduly burdensome and costly, the Debtors have not provided this customer list in their response to Schedule A/B Part 10. The Debtors' customer list associated with the Shop Your Way Program is not representative of the customer lists generally identified in the Schedules.

The Debtors also support a number of other customer programs such as the ability for customers to purchase gift cards from the Debtors' stores to be redeemed later for merchandise, offers to customers for markdowns, deals, blue light specials and other offers, and may honor both their own and third-party coupons for discounts on merchandise. The Debtors have received approval under the Customer Programs Order to continue to honor these program benefits.

The Debtors offer their customers an opportunity to purchase protection agreements ("**PAs**") or extended warranties under a number of different in-house programs that cover the repair or replacement cost of a product, including, but not limited to, home appliances, tools, jewelry, tires, electronics, lawn mowers and certain heating, ventilation, and air-conditioning products. The Debtors offer service plans for these various products (retail and aftermarket) at different protection levels known as "Master Protection Agreements." There are millions of customers enrolled in these various PAs. The Debtors received approval under the Customer Programs Order to continue to honor these agreements.

18. **Debtors' Reservation of Rights.** Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, the following:

a. Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

8

c.  The listing of a claim (i) on Schedule D as "secured," (ii) on Schedule E/F as either "priority," or "unsecured priority," or (iii) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken. Except as provided in an order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.  Listing a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules accordingly.

d.  In the ordinary course of their business, the Debtors may lease equipment from certain third-party lessors for use in the daily operation of its business. Any such leases are set forth in Schedule G and any current amount due under such leases that were outstanding as of the Commencement Date is listed on Schedule E/F. The property subject to any of such leases is not reflected in Schedule A/B as either owned property or assets of the Debtor nor is such property reflected in the Debtor's Statement of Financial Affairs as property or assets of third parties within the control of the Debtor. Nothing in the Statements or Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including, but not limited to, the recharacterization thereof.

e.  The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including, but not limited to the right to assert claims objections and/or setoffs with respect to the same.

f.  The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases set forth on the Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

9

g.  The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

h.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements.  However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing.  Where such Guarantees have been identified, they are included in the relevant Schedules and Statements.  Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted. Thus, the Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that additional Guarantees are identified.  In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.  The Debtors have reflected the obligations under the Guarantees for both the primary obligor and the guarantors with respect to their secured financings and debt instruments on Schedule H.  Guarantees with respect to the Debtors' executory contracts and unexpired leases are not included on Schedule H and the Debtors believe that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, other secured financing, debt instruments and similar agreements may exist and, to the extent they do, will be identified upon further review.

i.  Listing a contract or lease on the Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract. The Debtors hereby expressly reserve the right to assert that any contract listed on the Schedules and Statements does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code, as well as the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

j.  To timely close the books and records of the Debtors as of the Commencement Date and to prepare such information on a legal entity basis, the Debtors were required to make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses as of the Commencement Date. The Debtors reserve all rights to amend the reported amounts of assets, liabilities, reported revenue and expenses to reflect changes in those estimates and assumptions.

19.    **Global Notes Control**. In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

**Specific Notes with Respect to the Debtors' Schedules of Assets and Liabilities**

1. **Schedule-Specific Disclosures.** Each of Schedules A/B, D, E/F, G and H contain explanatory or qualifying notes that pertain to the information provided in the Schedules. Those Schedule-specific notes are incorporated herein by reference. The asset totals listed on the Schedules represent all known amounts included in the Debtors' books and records as of the Commencement Date. To the extent there are unknown or undetermined amounts, the actual total may be different from the total listed.

2. **Schedules A/B**

   a. **Part 1.** Details with respect to the Debtors' cash management system are provided in the Cash Management Motion.

   The Debtors are in possession of certain monies related to tenant or subtenant deposits where the Debtors are the lessor. These monies are not segregated in separate accounts and have been reported in the Debtors' cash balances. The Debtors believe that these amounts aggregate to less than $600,000.

   The restricted cash balance ($281.9 million) at Debtor Sears Holdings Corporation represents amounts in an escrow account held for the benefit of PBGC. This restricted cash was disbursed to the PBGC in November 2018.

   **Part 2.** The amounts listed in Part 2 for each Debtor are listed in accordance with the Debtors' books and records. These amounts do not necessarily reflect assets the Debtors will be able to collect or realize.

   The Debtors have numerous deposits with utility companies serving certain geographies with multiple facilities. It has been the Debtors' practice to largely account for these deposits on an operational, rather than on a store location and corresponding legal entity basis, which has resulted in utility deposits being primarily recorded on the balance sheets of debtors Kmart Corporation and Sears, Roebuck and Co. The carrying value of the deposits, as reflected in each Debtors' records, are listed in Part 2.

   The Debtors also maintain deposits to satisfy certain statutory requirements related to PAs, and sales tax requirements for the franchise business. These deposits are included in the Schedules for the appropriate legal entity as either collateral or miscellaneous deposits.

   Prepaid expenses primarily consist of cash in advance amounts paid to numerous vendors and suppliers for the purchase of inventory items. These advances were generally made on an operational basis for a vendor in the total amount for the Debtors, rather than by invoice or individual legal entity. The excess advances

11

above payables have been reclassified as prepaid inventory or prepaid miscellaneous expenses and are subject to reconciliation. The remaining prepaid expenses primarily relate to prepaid advertising, insurance, rent and data processing expenses. It has been the Debtors' practice to largely account for these advances on an operational, rather than a corresponding legal entity basis, which has resulted in the advances being primarily recorded on the balance sheets of Debtors: Sears, Roebuck and Co.; Sears Holdings Management Corporation; Kmart Operations LLC; Sears Operations LLC; and Sears Holdings Corporation.

b.  **Part 3.** The Debtors performed an analysis to estimate their accounts receivable aging on a legal entity basis. This analysis was performed using accounts receivable data as of October 6, 2018, which coincides with the timing of the Debtors' fiscal accounting period that is closest to the Commencement Date. The October 6, 2018 information was utilized to estimate the aging as the level of detail required to perform this estimation was not available as of the Commencement Date.

c.  **Part 4.** Any of the Debtors' ownership interests in subsidiaries, partnerships, and joint ventures are listed in Schedule A/B, Part 4, as undetermined amounts, because the fair market value of such interests is dependent on numerous variables and factors and may differ significantly from the net book value.

Membership or equity interests held by each of the Debtors in the other Debtor entities are contained in the Debtors' corporate ownership interest statements, which were filed in the Debtors' chapter 11 cases (collectively,[6] and as may be amended and supplemented, the "**Corporate Ownership Statements**"), and are hereby incorporated into Schedule A/B, Part 4, by reference. Consequently, such interests are not listed again in these Schedules.

d.  **Part 5.** Amounts presented in the Schedules exclude any amounts of inventory on consignment. Amounts presented as inventory receipts within twenty days of filing have not been reduced to reflect inventory received under cash in advance payment or payments made post-petition under certain First-Day Orders. The amounts listed in this Part 5 should not be interpreted as an estimate of outstanding 11 U.S.C. § 503(b)(9) balances.

e.  **Part 8.** Actual realizable values of the identified leased or owned vehicles, machinery, fixtures and equipment may vary significantly relative to net book values as of the Commencement Date.

---

[6] The Initial Debtors' Consolidated Corporate Ownership Statement can be found at ECF No. 2. Debtors SHC Licensed Business LLC, SHC Promotions LLC, and SRe Holding Corporation commenced voluntary cases under chapter 11 of the Bankruptcy Code October 18, 2018, October 22, 2018, and January 7, 2019 respectively, and are jointly administered with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules. For ownership information pertaining to these three subsidiary legal entities, please refer to ECF No. 2 under Case No. 18-23616, ECF No. 2 under Case No. 18-23630, and ECF No. 2 under Case No. 19-22031 for SHC Licensed Business LLC, SHC Promotions LLC, and SRe Holding Corporation, respectively.

    **f.**  **Part 9.** The values listed for the real property owned and leased by the Debtors are the net book values of the various asset components (land, buildings, leasehold improvements, capital lease assets, etc.) as recorded on the fixed asset register for each applicable Debtor.  A listing of each real property (primarily store locations) owned by each of the Debtors is contained in a Rider to Schedule A/B for each applicable Debtor.  The Debtors have not included the net book value of each Debtor's interest in each owned or leased property as its fixed asset records are maintained on an operational rather than on a store location and corresponding legal entity basis.

       Due to the complexity of certain of the Debtors' leasing and real estate transactions, the Debtors may have inadvertently listed certain properties as real property assets in Part 9 when such properties are in fact properties that are subject of certain of the executory contracts and unexpired leases reported on Schedule G. The Debtors reserve all rights to re-characterize their interests in real property at a later date.  Further, due to the volume of the Debtors' real and personal property holdings, the Debtors may have listed certain assets as real property assets when such holdings are in fact in the nature of personal property holdings.  Debtors may also have listed certain assets as personal property assets when such holdings are in fact real property holdings.  The Debtors are continuing to review all relevant documents and expressly reserve their right to amend, re-categorize and/or re-characterize such asset holdings at a later time to the extent the Debtors determine such holdings were improperly listed.

    **g.**  **Part 10.**  Part 10 identifies the Debtors' patents, copyrights, trademarks and trade secrets. The values presented in Part 10 reflect the net book value, to the extent that such value is reflected in the Debtors' books and records. A number of the trademarks are registered in multiple countries, including the United States.

       Part 10 also includes a best effort listing of the Debtors' registered internet domains and websites. The act of not listing any specific domain or website is not a relinquishing of ownership.  The values presented in this Schedule reflect the net book value, to the extent that such value is reflected in the Debtors' books and records.

    **h.**  **Part 11.**  In Part 11, dollar amounts are presented net of impairments and other adjustments.

        **i.**  ***Tax refunds and unused net operating losses (NOLs).***  The Debtors have significant net operating loss carryforwards and tax credits. The timing and use of such credits cannot be determined at this time.  As a result, the current value is stated as "Undetermined" in Part 11. The use of the word "Undetermined" does not reflect the potential materiality of deferred value.  See also response to SOFA 31, "Consolidated Tax Group" for additional information with respect to Limited Liability Companies.

ii. ***Interests in Insurance Policies or Annuities.*** The Debtors maintain a portfolio of insurance policies against unforeseen incidents and losses. There has been no assessment of the cash surrender value, if any, of such policies, to date. Accordingly, the values ascribed to such policies are reported as Undetermined.

iii. ***Other contingent and unliquidated claims or causes of action of every nature.*** In the ordinary course of business, the Debtors may have accrued, or may subsequently accrue, certain rights to counterclaims, cross-claims, setoffs, refunds with their customers and suppliers, and potential warranty claims against their suppliers, among other claims. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as plaintiffs, or counter-claims and/or cross-claims as defendants.

Despite their reasonable efforts to identify all such assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and neither these Global Notes nor the Schedules shall be deemed a waiver of any such claims, causes of action, or avoidance actions or in any way prejudice or impair the assertion of such claims.

iv. ***Other property of any kind not already listed.*** As discussed in the Cash Management Motion, in the ordinary course of business, the Debtors maintain business relationships with each other and with their non-Debtor affiliates. Such intercompany transactions among entities result in intercompany receivables and payables (the "**Intercompany Claims**"). The Debtors have reported for each Debtor, the aggregate net intercompany balances among the Debtors and their non-debtor affiliates as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate.

The intercompany receivable values reported in Schedule A/B reflect the net intercompany receivables for a particular Debtor entity from all other Debtor and non-Debtor affiliates. Similarly, the intercompany payable values reported in Schedule E/F reflect the net intercompany payable balances from a particular Debtor to all other Debtor and non-Debtor affiliates.

3. **Schedule D.** To the best of the Debtors' knowledge, all claims listed on Schedule D arose, or were incurred, before the Commencement Date.

Except as otherwise agreed pursuant to a stipulation, agreed order or general order entered by the Bankruptcy Court that is or becomes final, the Debtors and/or their estates

reserve their right to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor.  The Debtors scheduled claims of certain creditors as secured claims for informational purposes only, and no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken.  The Debtors have included on Schedule D the results of UCC searches performed prior to the Commencement Date. However, the listing of such results shall not be deemed an admission as to the validity or existence of any lien. The Debtors reserve all rights to dispute or challenge the secured nature of any creditor's claim or the characterization of the structure of any transaction or any document or instrument related to a creditor's claim.

The Debtors scheduled guarantee obligations under loan documents in Schedules D and E/F, as applicable, as contingent and unliquidated obligations, in undetermined amounts.

Any changes to the status of any liens or security rights since the Commencement Date may not be adequately reflected in Schedule D. Therefore, the Debtors may have listed claims with secured status that have changed, or failed to list certain parties whose claims may be secured through rights of setoff, deposits or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights on Schedule D.

Certain claims listed on Schedule D may be subject to setoff rights.  The Debtors have not investigated which of the claims may include such rights, and their population is currently unknown.

To the extent the agreements governing certain security relationships have been listed elsewhere in the Schedules for the applicable Debtors, they have not been listed on Schedule D. The descriptions provided in Schedule D are intended only to be a summary, and the amounts due reflect principal amounts due as of the Commencement Date. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Detailed descriptions of the Debtors' pre-petition debt structure, guarantees and descriptions of collateral relating to each debt contained on Schedule D are contained in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* (ECF No. 3) (the "**CFO Declaration**"). In addition, the naming conventions used to describe the debt in Schedule D and, as applicable, Schedule E/F is consistent with the defined terms in the CFO Declaration.

4. **Schedule E/F**.

   a. **Part 1**.   The Debtors have not listed any tax, wage or wage-related obligations that the Debtors were granted authority to pay pursuant to First-Day Orders on Schedule E/F.  The Debtors believe that all such claims for wages, salaries, expenses, benefits and other compensation as described in the First-Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders. Unpaid amounts for severed employees have not been analyzed to determine

15

whether such amounts should be viewed as priority claims. In addition, for severed employees, there has been no analysis of whether any unpaid amounts exceed the priority claim limit or whether there should be a bifurcation of amounts owed between priority and nonpriority unsecured amounts. Accordingly, such claims are listed in Part 1 of Schedule E/F, and these Schedules identify the amount that may be subject to priority and the amount that may be nonpriority as Undetermined in both parts. The Debtors reserve their right to dispute or challenge whether creditors listed on Schedule E/F are entitled to priority claims.

Claims owing to various taxing and regulatory authorities to which the Debtors may potentially be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to on-going audits and/or the Debtors are otherwise unable to determine with certainty the amount of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as undetermined, pending final resolution of on-going audits or other outstanding issues.

b. **Part 2.** The Debtors have attempted to relate all liabilities to each applicable Debtor. As a result of the Debtors' large and complex operations, however, Schedule E/F for each Debtor should be reviewed in these cases for a complete understanding of the unsecured claims against the Debtors. Certain creditors listed on Schedule E/F may owe amounts to the Debtors and, as such, may have valid setoff and recoupment rights with respect to such amounts. The Debtors have not investigated which of the claims may include such rights, and their population is currently unknown. Therefore, the Debtors did not indicate such potential set off rights. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted. Additionally, certain creditors may assert mechanics', materialsmen's, or other similar liens against the Debtors for amounts listed on Schedule E/F, with respect to which the Debtors reserve all rights. For certain vendors for which the claim amount may not be subject to offset, the Schedule reflect amounts which have been separately reclassified to either prepaid inventory or prepaid expense, as appropriate. Such prepaid amounts are reflected in Schedule A/B.

The Debtors reserve their right to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor. In addition, the Debtors reserve their right to dispute or challenge any priority asserted with respect to any liabilities listed on Schedule E/F. The Debtors have made reasonable efforts to include all trade creditors on Schedule E/F. However, the Debtors believe there are instances where vendors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and therefore have not been included on Schedule E/F.

The Debtors' accounting system tracks vendors by vendor number. Because many vendors conduct business at several of the Debtors' locations and with multiple Debtors, and the Debtors may do business at multiple vendor locations, there are instances where the same vendor has multiple vendor numbers. For purposes of Schedule E/F, the Debtors have attempted to aggregate all claims of such vendors with multiple vendor numbers, by Debtor. However, instances may exist where not all such claims have been identified and the Debtors may have separately listed potentially duplicative claims of such vendors under multiple vendor numbers.

Unless otherwise noted, the claims listed on Schedule E/F are based on the Debtors' books and records as of the Commencement Date. Payments may have been made to certain vendors under applicable First Day Orders. To the extent that any such payments have been made, the amounts paid have been applied to reduce the amount of the claim. If the application of payments made by the Debtors (i) pursuant to a First Day Order, (ii) a cash in advance payment made prior to the Commencement Date, or (iii) relate to other payments to vendors and result in an over-advance, such payments have been listed as a prepaid expenses and included in Schedule A/B Part 2.

Schedule E/F also contains information regarding pending litigation involving the Debtors. In certain instances, the identity of each Debtor that is the subject of the litigation is unclear or undetermined. However, to the extent that litigation involving a particular Debtor has been identified, such information is contained in Schedule E/F for that Debtor. The amounts for these potential claims are listed as undetermined and marked as contingent, unliquidated and disputed in this Schedule. The Debtors have excluded workers' compensation claims from the Statements because the Debtors continue to honor their workers' compensation obligations in the ordinary course in accordance with the *Final Order Authorizing Debtors to (i) Continue, Maintain, and Renew Their Insurance Policies and Workers' Compensation Programs: (ii) Honor All Obligations with Respect Thereto: and (iii) Modify the Automatic Stay With Respect to the Worker's Compensation Programs* (ECF No. 792), entered on November 16, 2018.

The Debtors sell gift cards to customers in the normal course of business. The gift cards can be applied by customers toward purchases of groceries in the Debtors' stores. Due to the volume and frequency of gift card sales, the Debtors are not able to identify (i) all of the individual gift card holders, and (ii) the unredeemed value remaining on the individual gift cards. Accordingly, unredeemed gift card claims have not been included in Schedule E/F.

Schedule E/F includes the aggregate net intercompany payable amounts that may or may not result in allowed or enforceable claims by or against a given Debtor. Listing these payables is not an admission on the part of the Debtors that the intercompany claims are enforceable or collectible. The intercompany payables may be subject to set off, recoupment, netting or other adjustments made pursuant to intercompany policies and arrangements not reflected in the Schedules.

5. **Schedule G.** Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively the "**Agreements**"), review is ongoing and inadvertent errors, omissions or over-inclusion may have occurred. The Debtors may have entered into certain types of Agreements in the ordinary course of their businesses, such as indemnity agreements, non-executory supplemental agreements, amendments/letter agreements, and confidentiality agreements, which may not be set forth in Schedule G. In addition, as described herein, certain confidential information has been omitted from Schedule G.

The Debtors have entered into numerous Universal Terms and Conditions ("**UTC**") arrangements with vendors. For vendors with whom there was at least one open purchase order at the Commencement Date, the Debtors have included such purchase order in Schedule G. The Debtors have not listed all such short-term purchase and sales orders because of their large number and transitory nature.  Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.  Schedule G may be amended at any time to add any omitted Agreements.  Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Commencement Date or is valid or enforceable.  The Agreements listed on Schedule G may have expired or may have been renewed, modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments and agreements, which may not be listed on Schedule G. Executory agreements that are oral in nature  have not been included in Schedule G.

Any and all of the Debtors' rights, claims and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, including, but not limited to, the Debtors' rights to (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G, (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G and (iii) to amend or supplement Schedule G as necessary.

Certain of the Agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors. Each Agreement is included on Schedule G of every named Debtor party. In certain circumstances, the specific Debtor obligor(s) to certain of the Agreements could not be specifically identified. In such cases, the Debtors have made reasonable efforts to identify the correct Debtor's Schedule G on which to list the agreement.  .

6. **Schedule H**.  The Debtors are party to various debt agreements which were executed by multiple Debtors.  The guaranty obligations under prepetition secured credit agreements are noted on Schedule H for each individual Debtor.    In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against the other parties.  To the extent such claims are listed elsewhere in the

Schedules of the applicable Debtors, they have not been set forth on Schedule H. Further, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements to the extent that such agreements are listed elsewhere in the Schedules of the applicable Debtors.  In the event that two or more Debtors are co-obligors with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedules and Statements of each such Debtor at the full amount of such potential claim, and such claim is marked "contingent" and "unliquidated." No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors.  To the extent there are guarantees connected with any joint ventures to which the Debtor may be a party, such agreements are not identified in the Debtors' Schedules.

**Specific Notes with Respect to the Debtors' Statements of Financial Affairs**

1.  **SOFA 1 and SOFA 2.**  The presentation of amounts in the Debtors' responses to SOFA 1 and 2 are consistent with the classification of such amounts in the statements of operations, as disclosed in compliance with GAAP.

    The Debtors operate on a 4-4-5 retail calendar, dividing the year into four (4) quarters. Each quarter has 13 weeks, which are grouped into two (2) four-week "months" and one (1) five-week "month."  The Debtors' fiscal year ends on the Saturday closest to January 31 and consists of 52 weeks or, as is the case with fiscal year 2017, 53 weeks.

    - FY 2016: Comprised of 52 weeks ending January 28, 2017.
    - FY 2017: Comprised of 53 weeks ending February 3, 2018.
    - FY 2018: Comprised of 52 weeks ending February 2, 2019.

2.  **SOFA 3.** As described and defined in the Cash Management Motion, the Debtors utilize an integrated, centralized Cash Management System, in the ordinary course of business, to collect, concentrate and disburse funds generated by their operations.  The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts. The obligations of the Debtors are primarily paid by and through Sears, Roebuck and Co. or Kmart Corporation, notwithstanding that certain obligations may be obligations of one or more of the Debtors consistent with the Cash Management Motion.

    Payment data was extracted from multiple financial systems across the Debtors' organization. In instances where the payment system did not discern which Debtor the payment pertained to, such transactions were assigned to Sears, Roebuck and Co. The payments disclosed in SOFA 3 are based on payments made by the Debtors with payment dates from July 17, 2018 to October 15, 2018.

Amounts still owed to creditors will appear on the Schedules of Assets and Liabilities for each of the Debtors, as applicable.

The Debtor entities utilizes Automatic Data Processing, Inc. ("**ADP**") to process employee compensation and the related jurisdiction taxes associated with compensation payouts. The Debtors make bulk payments which include employee compensation, associated jurisdiction taxes, as well as the service fee ADP would charge for its related services. The various payments systems aren't able to bifurcate the portion related to employee compensation, therefore, amounts listed in response to SOFA 3 represent the total batch payments.

3.  **SOFA 4.** For purposes of the Schedules and Statements, the Debtors define insiders as individuals that, based upon the totality of circumstances, (i) have a controlling interest in, or exercise sufficient control over the respective Debtor so as to unqualifiably dictate corporate policy and the disposition of assets, and/or (ii) are or were listed as participants in the Debtors' key employee incentive plan as approved by the KEIP Order.[7]

    Individuals listed in the Statements as insiders have been included for informational purposes only. The Debtors do not take any position with respect to (i) such individual's influence over the control of the Debtors; (ii) the management responsibilities or functions of such individual; (iii) the decision-making or corporate authority of such individual; or (iv) whether such individual could successfully argue that he or she is not an insider under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose. As such, the Debtors reserve all rights to dispute whether someone identified is in fact an "insider" as defined in section 101(31) of the Bankruptcy Code. For more information regarding each Debtor's officers and directors, please see SOFA 28 and SOFA 29.

    Payments to insiders that have a specific related party interest include M-III Partners LLC ("**M-III**"). M-III pays insider Chief Restructuring Officer Moshin Meghji, and therefore payments to M-III may indirectly benefit Mr. Meghji. Such payments have been listed in the response to SOFA 11.

    The payroll-related amounts shown in response to this question for any salary, bonus or additional compensation, and/or severance payments are net amounts that include reductions for amounts including employee tax and benefit withholdings.

4.  **SOFA 5.** The operating Debtors occasionally return damaged, unsatisfactory, or out-of-specification goods to vendors in the ordinary course of business. Other

---

[7] *Order (I) Approving Debtors' Incentive and Retention Programs for Certain Key Employees and (II) Granting Related Relief* (ECF No. 1437) (the "**KEIP Order**").

than ordinary course items, the Debtors are not aware of any property that has been returned to the seller.

5.  **SOFA 6.**  The Debtors accept payment in their various locations and on their website in the form of credit cards.  As a result of the relationship with the credit card processing companies, the Debtors are involved in setoff transactions on a continuous basis.   Specifically, other than the setoffs noted in SOFA 6, the Debtors maintain reserves with both First Data Corporation ("**First Data**") and American Express Co. ("**American Express**"). First Data and American Express are not owed any amounts because all amounts that are due and payable are offset against amounts that First Data and American Express owe the Debtors in the normal course of settlement.  While this is similar in effect to a set-off, it does not meet the legal criteria for set-off because the amounts never became unpaid.  Additionally, First Data and American Express have a contractual right to withhold from the settlements amounts due to them.  If the net amount due to the Debtors is greater than zero, there is no need for either American Express or First Data to exercise a set-off against the reserve, so the reserve will continue to be in place.  If First Data continues to process gift-card transactions and the Debtors continue to accept American Express credit cards for payment, the Company expects that net amounts due to the Debtors to exceed zero.  Further, the Debtors' relationships with their vendors require setoffs on regular cycles.  Documentation of these setoff transactions for the 90 days prior to the Commencement Date would be onerous and unwieldy.  Consequently, the Debtors have not listed these ordinary course setoffs in SOFA 6.

In the ordinary course of business, the Debtors receive benefits from their trade vendors including, but not limited to, rebates, promotional allowances, dividends, and contractual sharing of profits and discounts. These Debtor receivables are typically settled with the Debtors setting off the receivables against payments to the vendors. In some instances, the amounts are settled in cash. Given the frequency of these transactions, and the burden created in attempting to isolate them from normal course payments, the Debtors have not listed these ordinary course setoffs in SOFA 6.

The operating Debtors engage in certain customer programs, including return and refund programs pursuant to which customers may receive credits. Such transactions were not considered setoffs for the purpose of responding to SOFA 6, although the Debtors reserve all rights with respect thereto and make no admission of waiver thereby.

6.  **SOFA 7.**  The actions described in response to SOFA 7 are the responsive proceedings or pending proceedings of which the Debtors are aware. The actions described in SOFA 7 include, but are not limited to, commercial litigation, personal injury lawsuits, customer credit cases, workers' compensation claims, environmental-related proceedings, potential violations under the Equal Employment Opportunity Commission, potential violations under the

Occupational Safety & Health Administration, as well as investigations under state and federal law.

The Debtors have devoted substantial resources to identify and provide as much information for as many proceedings as possible in response to SOFA 7 using records that were reasonably accessible and reviewable. While the Debtors believe they were diligent in their efforts, information the Debtors were unable to locate for proceedings that were listed was left blank.

The Debtors reserve all of their rights and defenses with respect to all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors. The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.  Further, the Debtors own property in numerous jurisdictions and in the ordinary course of business have disputed property valuations/tax assessments.  The Debtors have not listed such disputes on SOFA 7.

7.  **SOFA 9.**  The donations and/or charitable contributions listed in response to SOFA 9 represent payments made to third parties during the applicable timeframe that were recorded as such within the Debtors' books and records. The Debtors may occasionally have excess prepaid materials related to customized projects at the end of a projects life cycle that they may give away to local charitable organization, rather than holding potential obsolete inventory.  These materials are given away without being recorded as such within the Debtor's book of record, however, the purchase price of material is allocated to its respective project cost.

In addition to the charitable contributions and gifts listed, the Debtors assist local communities by participating in a number of different programs, which include disaster relief, discounted merchandise for the disadvantaged, sporting equipment for local youth athletic teams, and gift cards to support local programs.  These contributions are often made at the discretion of store managers who have authority to make such donations, which are non-cash in nature.  The Debtors track some of these contributions, but given the ad-hoc frequency and nature of these transactions, often do not track certain information such as the recipient counterparties.  Tracking down such information would be burdensome given that these contributions are made at the store level and therefore are not included in the list of charitable contributions and gifts identified.  The Debtors are also affiliated with the Sears-Roebuck Foundation, a 501(c)(3) non-profit organization founded in 1959.  The Sears-Roebuck Foundation is a not a Debtor and therefore, its charitable contributions are also excluded from the list.

Further, as described in the *Motion of Debtors for Authority to (I) Maintain Certain Trust Fund Programs, (II) Release Certain Funds Held in Trust, and (III)*

22

*Continue to Perform and Honor Related Obligations* (ECF No. 15) (the "**Trust Funds Motion**"), in the ordinary course of business, the Debtors collect charitable contributions from customers through cash and credit card contributions at store checkout points. These customer contributions are not property of the Debtors' estates and are passed through to the applicable charitable organizations. The transfer of funds associated with these charitable programs have not been disclosed in SOFA 9 as they do not reflect donations or charitable contributions of property of the Debtors' estate.

8.      **SOFA 10.**  The Debtor did not incur any losses within the year prior to the Commencement Date with respect to fire, theft, or other casualty that exceeded its insurance deductibles. The losses listed may exclude those incurred in the ordinary course of business. Amounts listed may include the value of property or estimated claim amounts for, among other things, shrinkage and damage.

Given the scale of the Debtors' store footprint, certain losses cannot be tracked by the Debtors with complete accuracy and, accordingly, such losses are listed on the Debtors' Statements based on general ledger accounts that capture items such as theft, inventory shrink, and property damage. Additionally, the Debtors only account for general recoveries of such losses, with this general amount being the recovery listed in the Statements for the one year immediately prior to the Petition Date.

9.      **SOFA 11.**  All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Commencement Date were made by Sears Holdings and are, therefore, listed on that Debtor's response to SOFA 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.

In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their post-petition lenders or other parties on account of any applicable fee arrangements.

10.     **SOFA 13.**  The Debtors may, from time to time and in the ordinary course of business, transfer equipment and other assets and/or sell certain equipment and other assets to third parties. These types of ordinary course transfers have not been disclosed in SOFA 13.

To the extent that the Debtors vacated store locations during the three years immediately preceding the Commencement Date, information on these former store locations is contained in the Debtors' response to SOFA 14. As part of the store closure process, the Debtors may sell equipment, hardware and other assets with value to interested parties such as the landlord and/or third party liquidators. The Debtors may also abandon assets in place at the locations for which they have

23

no future use or have been unable to sell to a third party. Certain *de minimis* transfers of assets resulting from such actions may not have been captured in the Debtors' response to SOFA 13.

11.  **SOFA 14.**    The Debtors operate locations both domestically and internationally. The Debtors have included a listing of all current and previous addresses owned or leased by the Debtor. In select instances, the dates of occupancy for certain retail addresses was not readily available. For these instances, the applicable dates are listed as "Unknown."

12.  **SOFA 16.**   In the ordinary course of business, the Debtors collect certain personally identifiable information ("**PII**"), including, but not limited to, their customers' names, home address, and email addresses.  A list of categories of collected PII is included in the response to SOFA 16. The Debtors also maintain prescription-related information on their pharmacy customers. All pharmacy records are kept and maintained in accordance with the privacy and confidentiality requirements mandated by Federal and state law. The Debtors' privacy policy for pharmacy records is available at all of their pharmacy locations.

13.  **SOFA 20.**    The Debtors utilize Iron Mountain Storage Facilities ("**Iron Mountain**") to retain records.  Iron Mountain has various store locations across the United States. The Debtors do not maintain specific Iron Mountain addresses and thus have not listed them in SOFA 20. The Debtors own and operate their distribution centers. Accordingly, the distribution centers do not constitute off-premise storage for purposes of this response.

In addition, the Debtors have not disclosed in response to SOFA 20 (i) inventory for sale being held in the mini-storage units that the Debtors rent from time to time to store excess inventory in the ordinary course of business or (ii) any owned in-transit inventory. The Debtors have determined that the collection of this specific information would be time-consuming and an inefficient use of estate resources.  Further, such inventory is accounted for on the Debtors' Schedules. As such this inventory is not included in SOFA 20.

14.  **SOFA 21.**   In the ordinary course of business, the Debtors' retail locations contain various inventory goods owned by third parties. In addition to regular consignment inventory arrangements, the Debtors may have Scan Based Trading ("**SBT**") agreements with third parties. Goods that fall under SBT agreements are owned by the supplier up until the point of sale. The Debtors do not track the value of the SBT inventory for each supplier and such SBT inventory is held at various retail locations.  Additionally, the Debtors may utilize leased property in their ordinary course of business.  Therefore, the Debtors may hold property subject to leases listed on the Debtors' Schedule G.

15.    **SOFA 22–24.**  The Debtors have devoted substantial resources to identify and provide the required information for as many responsive sites and proceedings as possible in response to SOFA 22–24 using records that were reasonably accessible and reviewable. While the Debtors believe they were diligent in their efforts, it is possible that certain of the matters listed on SOFA 22–24 for a particular Debtor may also relate to another Debtor and may have been inadvertently left off such other Debtor's response to this question. The Debtors have endeavored to disclose all applicable information in response to SOFA 22–24. For ownership of subsidiary legal entities, please refer to the Debtors' Corporate Ownership Statements, which are incorporated into the Statements by reference herein.

With regard to SOFA 23, the Debtors have listed existing store locations for which environmental remediation actions were in process as of the Commencement Date.  The Debtors were in compliance with all remediation requirements as of the Commencement Date.

16.  **SOFA 25.**    The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owned five percent or more of the voting or equity securities within the six years immediately preceding the Commencement Date. In certain instances, however, the dissolution dates of certain entities that are no longer in existence were not readily available and, therefore, are not included in SOFA 25.  All such entities were either merged with other entities owned by the Debtors or were dissolved prior to the Commencement Date.  The Debtors have listed non-debtor subsidiaries on the Statement of the Debtor entity (the "**Proximate Parent Debtor**") that most directly held or otherwise had control over the interests in such non-debtor entities, but not on the Statements of the parent entities of the Proximate Parent Debtor. For the inter-Debtor ownership information, please refer to the Corporate Ownership Statements.

17.    **SOFA 26.**  Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the Debtors have filed with the U.S. Securities and Exchange Commission (the "**SEC**") reports on Form 8-K, Form 10-Q, and Form 10-K. These SEC filings contain consolidated financial information relating to the Debtors.    Additionally, consolidated financial information for the Debtors is posted on the Debtors' website at www.sears.com.  Because the SEC filings and the website are of public record, the Debtors do not maintain records of the parties that requested or obtained copies of any of the SEC filings from the SEC or the Debtors.

In addition, the Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors with financial statements that may not be part of a public filing.  The Debtors do not maintain complete lists to track such disclosures and, therefore, have not listed these recipients in SOFA 26.

18.     **SOFA 27.**   The Debtors inventory product at their various store locations on a continual basis. In an effort to reduce the amount of disclosures that would be otherwise applicable—disclosures that could name in excess of 1,000 store-level managers—the Debtors have provided the regional leads in response to SOFA 27.

In addition, the Debtors perform periodic cycle inventory counts throughout each year and at least one full physical inventory count per year at each individual location.  The total values of each count related to "Sears" and "Kmart" retail and distribution center locations are assigned to their parent entities, Sears, Roebuck and Co. and Kmart Holding Corp., respectively.

Additionally, the Debtors inventory product at their various retail and distribution centers on a regular basis.  The Debtors have only provided the regional leads in response to SOFA 27.

19.     **SOFA 28.**   The Debtors have excluded from SOFA 28 shareholders who hold less than five percent (5%) of each Debtor's voting or equity securities, as is consistent with reporting requirements under SEC Filing 13D.  For inter-Debtor ownership information, please refer to the Corporate Ownership Statements. For each entity, the Debtors have included individuals as of the Commencement Date, identified as directors, officers, members, or managers, as applicable, of such entity in the Debtors' recordkeeping systems or, if no individuals were identified, an entity member, as applicable.

20.     **SOFA 29.**   The disclosures relate specifically to terminated job titles or positions and are not indicative of the individuals' current employment status with the Debtors. For each entity, the Debtors have included the individuals who, during the applicable period, were identified as directors and officers of such entity in the Debtors' recordkeeping systems.

21.     **SOFA 30.**   Any and all known disbursements to Insiders of the Debtors, as defined above, have been listed in the response to SOFA 4.

22.     **SOFA 31.**   Various Debtor limited liability companies ("**LLCs**") are disregarded for tax purposes.  Income generated by an LLC is consolidated at a higher reporting unit level with entities including Sears, Roebuck, and Co., Kmart Corporation, Sears Holdings and others. Only corporations can be "members" of a consolidated group for tax purposes. Because the Debtor LLCs are not corporations for tax purposes, they are identified as not being members of the tax consolidated group in the response to SOFA 31.

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | INNOVEL SOLUTIONS, INC. |
| United States Bankruptcy Court for the: | Southern    District of: New York |
| | {State} |
| Case number (If known): | 18-23548 |

☐ Check if this is an amended filing

# Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/16

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

---

**Part 1:**    **Income**

**1.**    **Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | | Sources of Revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|---|---|
| | | | | ☒ Operating a business | |
| Fiscal Year 2018 | From 2/4/2018 | to | 10/14/2018 | ☐ Other | $            30,930,482.00 |
| | MM/DD/YYYY | | MM/DD/YYYY | | |
| | | | | ☒ Operating a business | |
| Fiscal Year 2017 | From 1/29/2017 | to | 2/3/2018 | ☐ Other | $            34,935,895.00 |
| | MM/DD/YYYY | | MM/DD/YYYY | | |
| | | | | ☒ Operating a business | |
| Fiscal Year 2016 | From 1/31/2016 | to | 1/28/2017 | ☐ Other | $            18,694,767.00 |
| | MM/DD/YYYY | | MM/DD/YYYY | | |

**2.**    **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Not-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each seperately. Do not include revenue listed in line 1.

☐ None

| | | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|---|---|
| Fiscal Year 2018 | From 2/4/2018 | to | 10/14/2018 | Interest and Investment Income | $                8,223.00 |
| | MM/DD/YYYY | | MM/DD/YYYY | | |
| Fiscal Year 2017 | From 1/29/2017 | to | 2/3/2018 | Interest and Investment Income | $                   568.00 |
| | MM/DD/YYYY | | MM/DD/YYYY | | |
| Fiscal Year 2016 | From 1/31/2016 | to | 1/28/2017 | Interest and Investment Income | $                   685.00 |
| | MM/DD/YYYY | | MM/DD/YYYY | | |

**Part 2:**    **List Certain Transfers Made Before Filing for Bankruptcy**

| Debtor | INNOVEL SOLUTIONS, INC. | Case number *(if known)* | 18-23548 |
|---|---|---|---|
| | Name | | |

**3.    Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☒ None

| Creditor's name and address | Dates | Amount or value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.0. | | | |
| _____ | | | ☐ Secured debt |
| Creditor's Name | | | ☐ Unsecured loan repayments |
| _____ | | | ☐ Suppliers or vendors |
| Street | | | ☐ Services |
| _____ | | | ☐ Other _____ |
| City                State        ZIP Code | | | |
| **Total amount or value**.................................................................. | | _____ | |

**4.    Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☒ None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.0. | | | |
| _____ | | | |
| Creditor's Name | | | |
| _____ | | | |
| Street | | | |
| _____ | | | |
| City                State        ZIP Code | | | |
| **Relationship to debtor** | | | |
| _____ | | | |
| **Total amount or value**.................................................................. | | _____ | |

**5.    Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure, transferred by a deed in lieu of forclosure, or returned to the seller. Do not include property listed in line 6.

☒ None

| Creditor's name and address | Description of the property | Date | Value of Property |
|---|---|---|---|

| Debtor | INNOVEL SOLUTIONS, INC. | Case number (if known) | 18-23548 |
|---|---|---|---|
| | Name | | |

| | Creditor's name and address | Description of the property | Date | Value of Property |
|---|---|---|---|---|
| 5.0 | | | | |
| | _____ | | | $ |
| | Creditor's Name | | _____ | _____ |
| | _____ | | | |
| | Street | | | |
| | _____ | | | |
| | City            State        ZIP Code | | | |

## 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☒ None

| | Creditor's name and address | Description of the action creditor took | Date  action was taken | Amount |
|---|---|---|---|---|
| 6.0 | | | | |
| | Creditor's Name | | | $ |
| | _____ | | _____ | _____ |
| | Street | | | |
| | _____ | | | |
| | City            State        ZIP Code | | | |
| | | Last 4 digits of account number: XXXX- _ _ _ _ | | |

| **Part 3:** | **Legal Actions or Assignments** |
|---|---|

## 7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits.

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within one year before filing this case.

☐ None

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.1 | Bartlett, James v. Sears Logistics Services, Inc., nka Innovel Solutions, Inc.; Sears Holdings Management Corporation; and Sears, Roebuck and Co. | General Liability - Litigation | IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY FLORIDA | |
| | **Case Number** | | Name | ☐ Pending |
| | CACE-16-016567, Division 14 | | 201 SE 6TH ST | ☐ On appeal |
| | | | Street | ☒ Concluded |
| | | | FORT LAUDERDALE | |
| | | | City            State        ZIP Code | |

| Debtor | INNOVEL SOLUTIONS, INC. | | Case number (if known) | 18-23548 |
|---|---|---|---|---|
| | Name | | | |

| Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|
| **7.2** Houston, Robert v. Sears, Roebuck and Co.; Innovel Solutions, Inc.; and Warehouse Equipment Co., Inc. aka Used Warehouse Equipment | General Liability - Litigation | IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS | |
| **Case Number** 2018L008259 | | **Name** 1500 MAYBROOK DR | ☒ Pending ☐ On appeal ☐ Concluded |
| | | **Street** MAYWOOD                     IL         60153 | |
| | | City                State     ZIP Code | |

| Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|
| **7.3** Innovel and Sears Roebuck and Company vs. Jackson County Water & Sewage Authority | Tort | SUPERIOR COURT OF JACKSON COUNTY STATE OF GEORGIA | |
| **Case Number** 15CV0516 | | **Name** 5000 JACKSON PKWY | ☒ Pending ☐ On appeal ☐ Concluded |
| | | **Street** JEFFERSON              GA         30549 | |
| | | City                State     ZIP Code | |

| Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|
| **7.4** Yu, Sohyun v. Innovel Solutions | General Liability - Litigation | IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR THE COUNTY OF WASHINGTON | |
| **Case Number** 18SC37378 | | **Name** 145 NE 2ND AVE | ☒ Pending ☐ On appeal ☐ Concluded |
| | | **Street** HILLSBORO               OR         97124 | |
| | | City                State     ZIP Code | |

| Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|
| **7.5** Jas Arkin v. Innovel Solutions | Employment | DEPARTMENT OF INDUSTRIAL RELATIONS DIVISION OF LABOR STANDARDS ENFORCEMENT - RETALIATION COMPLAINT INVESTIGATION UNIT | |
| **Case Number** 51822 - LARCI | | **Name** 415 E BREMER AVE  1 | ☒ Pending ☐ On appeal ☐ Concluded |
| | | **Street** WAVERLY                 IOWA       50677, | |
| | | City                State     ZIP Code | |

| Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|
| **7.6** Jespersen, Rebecca aka Rebecca Cohen v. Costco Wholesale Corporation; Innovel Solutions, Inc. | General Liability - Litigation | LOS ANGELES COUNTY - SUPERIOR COURT - PASADENA CA | |
| **Case Number** 18PDSC04095 | | **Name** 300 E WALNUT ST | ☒ Pending ☐ On appeal ☐ Concluded |
| | | **Street** PASADENA               CA         91101 | |
| | | City                State     ZIP Code | |

| Debtor | INNOVEL SOLUTIONS, INC. | | Case number (if known) | 18-23548 |
|---|---|---|---|---|
| | Name | | | |

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.7 | Romana Uriaz v. Innovel Solutions, Inc. | EEOC Claims | PHOENIX DISTRICT OFFICE | |
| | **Case Number** | | **Name** | ☒ Pending |
| | 540201600898 | | 3300 N CENTRAL AVE 690 | ☐ On appeal |
| | | | | ☐ Concluded |
| | | | **Street** | |
| | | | PHOENIX | |
| | | | City          State          ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.8 | Sabzevari, Cynthia and Mohammad v. Costco; and Innovel Solutions | General Liability - Litigation | | |
| | **Case Number** | | **Name** | ☒ Pending |
| | C5C18-0010 | | | ☐ On appeal |
| | | | | ☐ Concluded |
| | | | **Street** | |
| | | | City          State          ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.9 | Kasavage, Valerie a/s/o State Farm Fire and Casualty Company v. Sears, Robebuck & Co. and Innovel Solutions, Inc d/b/a Sears | General Liability - Litigation | IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY PENNSYLVANIA CIVIL DIVISION | |
| | **Case Number** | | **Name** | ☐ Pending |
| | AR-18-001281 | | 1700 E CARSON ST | ☐ On appeal |
| | | | | ☒ Concluded |
| | | | **Street** | |
| | | | PITTSBURGH          PA          15203 | |
| | | | City          State          ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.10 | Dominyque Hareld v. Innovel Solutions, Inc. | EEOC Claims | CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING | |
| | **Case Number** | | **Name** | ☒ Pending |
| | 555201801306 | | 2218 KAUSEN DR 100 | ☐ On appeal |
| | | | | ☐ Concluded |
| | | | **Street** | |
| | | | ELK GROVE | |
| | | | City          State          ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.11 | Ebony Barnes v. Innovel Solutions, Inc. | EEOC Claims | ILLINOIS DEPARTMENT OF HUMAN RIGHTS | |
| | **Case Number** | | **Name** | ☐ Pending |
| | 846201803883 | | 100 W RANDOLPH ST | ☐ On appeal |
| | | | | ☒ Concluded |
| | | | **Street** | |
| | | | CHICAGO | |
| | | | City          State          ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | Status of case |
|---|---|---|---|---|
| 7.12 | Mary Hickman v. Innovel Solutions, Inc. | EEOC Claims | ALBUQUERQUE AREA OFFICE | |

| Debtor | INNOVEL SOLUTIONS, INC. | | | Case number (if known) | 18-23548 |
|---|---|---|---|---|---|
| | Name | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Case Number** | | | **Name** | | ☒ Pending |
| 846-2017-29613 | | | 4101 INDIAN SCHOOL RD NE | | ☐ On appeal |
| | | | | | ☐ Concluded |
| | | | **Street** | | |
| | | | ALBUQUERQUE | | |
| | | | City | State | ZIP Code |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | | **Status of case** |
|---|---|---|---|---|---|
| 7.13 | Southwestern Bell Telephone Company v. Innovel Solutions, Inc. D/B/A Sears Logistics | Small Claims | MADISON COUNTY - CIRCUIT COURT IL | | |
| | **Case Number** | | **Name** | | ☐ Pending |
| | 18-SC-1815 | | 1700 E BROADWAY | | ☐ On appeal |
| | | | | | ☒ Concluded |
| | | | **Street** | | |
| | | | ALTON | IL | 62002 |
| | | | City | State | ZIP Code |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | | **Status of case** |
|---|---|---|---|---|---|
| 7.14 | Southwestern Bell Telephone Company, d/b/a AT&T Missouri v. Innovel Solutions, Inc. d/b/a Sears Logistics | General Liability - Litigation | IN THE CIRCUIT COURT OF MADISON COUNTY STATE OF ILLINOIS | | |
| | **Case Number** | | **Name** | | ☐ Pending |
| | 2018SC001815 | | 1700 E BROADWAY | | ☐ On appeal |
| | | | | | ☒ Concluded |
| | | | **Street** | | |
| | | | ALTON | IL | 62002 |
| | | | City | State | ZIP Code |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | | **Status of case** |
|---|---|---|---|---|---|
| 7.15 | Emma Piantini v. Innovel Solutions, Inc. | EEOC Claims | PA HUMAN RELATIONS COMMISSION | | |
| | **Case Number** | | **Name** | | ☒ Pending |
| | 17F201760761 | | 333 MARKET STREET 8TH FLOOR | | ☐ On appeal |
| | | | | | ☐ Concluded |
| | | | **Street** | | |
| | | | HARRISBURG | PA | 17101 |
| | | | City | State | ZIP Code |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | | **Status of case** |
|---|---|---|---|---|---|
| 7.16 | Tamora Guyton v. Innovel Solutions, Inc. | EEOC Claims | BIRMINGHAM DISTRICT OFFICE | | |
| | **Case Number** | | **Name** | | ☐ Pending |
| | 846201634671 | | 1130 22ND ST S | | ☐ On appeal |
| | | | | | ☒ Concluded |
| | | | **Street** | | |
| | | | BIRMINGHAM | AL | 35202 |
| | | | City | State | ZIP Code |

| **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | **Status of case** |
|---|---|---|---|

| Debtor | INNOVEL SOLUTIONS, INC. | | Case number (if known) | 18-23548 |
|---|---|---|---|---|
| | Name | | | |

| 7.17 | The Decoteau-Moyers Family Revocable Trust Dated May 16, 2014; Martha Jane Moyers; and Frank Decoteau v. Costco Wholesale Corporation; R & A Deliveries, LLC; Innovel Solutions, Inc.; and NRX Logistics | General Liability - Litigation | DISTRICT COURT BOULDER COUNTY COLORADO | |
|---|---|---|---|---|
| | **Case Number** | | Name | ☒ Pending |
| | 2018CV30878 | | 1777 SIXTH STREET | ☐ On appeal |
| | | | | ☐ Concluded |
| | | | Street | |
| | | | BOULDER                    CO          80302 | |
| | | | City              State          ZIP Code | |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | **Status of case** |
|---|---|---|---|---|
| 7.18 | Gaytha Denise Miller v. Innovel Solutions, Inc. | EEOC Claims | TAMPA FIELD OFFICE FLORIDA | |
| | **Case Number** | | Name | ☐ Pending |
| | 510201703680 | | 501 E POLK ST 1000 | ☐ On appeal |
| | | | | ☒ Concluded |
| | | | Street | |
| | | | TAMPA | |
| | | | City              State          ZIP Code | |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | **Status of case** |
|---|---|---|---|---|
| 7.19 | Gelinas, Anthony aso State Farm General Insurance Company v. LG Electronics U.S.A., Inc.; Costco Wholesale Corporation; Innovel Solutions, Inc. a subsidiary of Sears, Roebuck and Co.; and Does 2-60, [REMOVE DOE 1 - ADD Matthews Transportation LLC] - | General Liability - Litigation | SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES CENTRAL DISTRICT | |
| | **Case Number** | | Name | ☒ Pending |
| | BC635287 | | 1945 S HILL ST | ☐ On appeal |
| | | | | ☐ Concluded |
| | | | Street | |
| | | | LOS ANGELES              CA          90007 | |
| | | | City              State          ZIP Code | |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | **Status of case** |
|---|---|---|---|---|
| 7.20 | Newkirk Avrem L.P. v. Sears, Roebuck and Co. | Real Estate | CIRUITCHANCERY COURT OF TENNESSEE | |
| | **Case Number** | | Name | ☒ Pending |
| | CT-001713-18 | | 140 ADAMS AVE 308 | ☐ On appeal |
| | | | | ☐ Concluded |
| | | | Street | |
| | | | MEMPHIS                    TN          38103 | |
| | | | City              State          ZIP Code | |

| | **Case Title** | **Nature of Case** | **Court or Agency's Name and address** | **Status of case** |
|---|---|---|---|---|
| 7.21 | Tyray Ellington v. Innovel Solutions, Inc. | EEOC Claims | INDIANA CIVIL RIGHTS COMMISSION | |

| Debtor | INNOVEL SOLUTIONS, INC. | | | Case number (if known) | 18-23548 |
|---|---|---|---|---|---|
| | Name | | | | |

| Case Number | | Name | | | ☒ Pending |
|---|---|---|---|---|---|
| 470-2018-01619 | | 100 N SENATE AVE  N300 | | | ☐ On appeal |
| | | | | | ☐ Concluded |
| | | Street | | | |
| | | INDIANAPOLIS | IN | 46204 | |
| | | City | State | ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | | | Status of case |
|---|---|---|---|---|---|---|
| 7.22 | Veronica McCain v. Innovel Solutions, Inc. | EEOC Claims | MIAMI DISTRICT OFFICE | | | |
| | **Case Number** | | Name | | | ☐ Pending |
| | 510201703685 | | 1000 SW 57TH AVE 201 | | | ☐ On appeal |
| | | | | | | ☒ Concluded |
| | | | Street | | | |
| | | | WEST MIAMI | FL | 33144 | |
| | | | City | State | ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | | | Status of case |
|---|---|---|---|---|---|---|
| 7.23 | Vincent Pitts v. Innovel Solutions, Inc. | EEOC Claims | STATE OF MARYLAND COMMISSION | | | |
| | **Case Number** | | Name | | | ☒ Pending |
| | 12F2019-00092 | | 6 ST PAUL ST 1600 | | | ☐ On appeal |
| | | | | | | ☐ Concluded |
| | | | Street | | | |
| | | | BALTIMORE | MD | 21202 | |
| | | | City | State | ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | | | Status of case |
|---|---|---|---|---|---|---|
| 7.24 | Phoenix Warehouse, LLC v. Innovel Solutions, Inc., et al. | Federal | USDC SOUTHERN DISTRICT OF OHIO | | | |
| | **Case Number** | | Name | | | ☐ Pending |
| | 2:15-cv-2834 | | 85 MARCONI BLVD | | | ☐ On appeal |
| | | | | | | ☒ Concluded |
| | | | Street | | | |
| | | | COLUMBUS | OH | 43215 | |
| | | | City | State | ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | | | Status of case |
|---|---|---|---|---|---|---|
| 7.25 | Piantini, Emma v. Innovel Solutions, Inc. | Federal | IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA | | | |
| | **Case Number** | | Name | | | ☒ Pending |
| | 3:18-cv-02120-MEM | | 228 WALNUT ST | | | ☐ On appeal |
| | | | | | | ☐ Concluded |
| | | | Street | | | |
| | | | HARRISBURG | PA | 1701 | |
| | | | City | State | ZIP Code | |

| | Case Title | Nature of Case | Court or Agency's Name and address | | | Status of case |
|---|---|---|---|---|---|---|
| 7.26 | Wayne Marquardt v. Innovel Solutions, Inc. | EEOC Claims | PHILADELPHIA DISTRICT OFFICE - PHILADELPHIA PA | | | |

Debtor    INNOVEL SOLUTIONS, INC.    Case number *(if known)*    18-23548
_____
Name

| Case Number | | Name | | | ☐ Pending |
|---|---|---|---|---|---|
| 530-2018-04751 | | 3 S PENN SQUARE | | | ☐ On appeal |
| | | Street | | | ☒ Concluded |
| | | PHILADELPHIA | PA | 19107 | |
| | | City | State | ZIP Code | |

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☒ None

| 8.0 | Custodian's name and address | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| | Custodian's Name | **Case title** | **Court name and address** |
| | Street | **Case number** | Name |
| | City        State      ZIP Code | **Date of order or assignment** | Street |
| | | | City        State      ZIP Code |

---

**Part 4:    Certain Gifts and Charitable Contributions**

---

**9.  List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing the case unless the aggregate value of the gifts to that recipient is less than $1000**

☒ None

| 9.0 | Recipient's name and address | Description of the gifts or contributions | Dates Given | Value |
|---|---|---|---|---|
| | | | | $ |
| | Recipient Name | | | |
| | Street | | | |
| | City        State      ZIP Code | | | |
| | **Recipient's relationship to debtor** | | | |

---

**Part 5:    Certain Losses**

---

**10.  All losses from fire, theft, or other casualty within 1 year before filing this case.**

☒ None

---

Official Form 207          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**          page  9

Debtor    INNOVEL SOLUTIONS, INC.          Case number *(if known)*  18-23548
_____
Name

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets - Real and Personal Property).* | Date of Loss | Value of property lost |
|---|---|---|---|
| **10.0** | $ | | $ |

---

| **Part 6:** | **Certain Payments or Transfers** |
|---|---|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☒ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| **11.0** | | | |
| **Address** | | | |
| Street | | | |
| City                    State    ZIP code | | | |
| **Email or Website Address** | | | |
| **Who made the payment, if not the debtor?** | | | |

Total amount or value..................................................................................................

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already on this statement.

☒ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| **12.0** | | | |
| **Trustee** | | | |

| Debtor | INNOVEL SOLUTIONS, INC. | Case number *(if known)* | 18-23548 |
|---|---|---|---|
| | Name | | |

**13.  Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☒ Does not apply

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Dates transfers were made | Total amount or value |
|---|---|---|---|
| **Address** | | | |
| Street | | | |
| City              State        ZIP code | | | |
| **Relationship to debtor** | | | |

**Part 7:**     **Previous Locations**

**14.  Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | Address | Dates of occupancy | | |
|---|---|---|---|---|
| 14.1 | 1 IMESON PARK BLVD; BUILDING 200  JACKSONVILLE FL 32218 | From | 11/1/1988 | To | 4/5/2018 |
| 14.2 | 100 FIRST AVENUE  GOULDSBORO PA 18424 | From | 10/1/2016 | To | 3/31/2018 |
| 14.3 | 100 MUSHROOM BLVD  ROCHESTER NY 14623 | From | 10/15/2009 | To | Current |
| 14.4 | 1000 NEW COUNTY ROAD  SECAUCUS NJ 07094 | From | 10/21/2016 | To | Current |
| 14.5 | 1021 CADILLAC CT  MILPITAS CA 95035 | From | 9/15/2003 | To | Current |
| 14.6 | 104 NORTH KINGS COURT  GREENVILLE SC 29607 | From | 12/18/2002 | To | Current |
| 14.7 | 10424 W AERO ROAD SUITE F  SPOKANE WA 99224 | From | 8/19/2014 | To | Current |
| 14.8 | 10425 RIDGEWOOD DR  OLIVE BRANCH MS 38654 | From | 8/1/2016 | To | Current |
| 14.9 | 10490 BUSCH DR  JACKSONVILLE FL 32218 | From | 11/1/1988 | To | Current |
| 14.10 | 1057 HANOVER ST  WILKES BARRE PA 18706 | From | 1/18/1993 | To | Current |
| 14.11 | 1070 HANOVER ST  WILKES BARRE PA 18706 | From | 1/18/1993 | To | Current |
| 14.12 | 11109 LANDMARK 35 DR  SAN ANTONIO TX 78233 | From | 2/1/1954 | To | Current |
| 14.13 | 114 SHERLAKE LANE  KNOXVILLE TN 37922-2328 | From | 7/11/1996 | To | Current |

Debtor  INNOVEL SOLUTIONS, INC.
        Name

Case number (if known)  18-23548

| | Address | Dates of occupancy | | |
|---|---|---|---|---|
| 14.14 | 117 INDUSTRIAL DR  GRANITE CITY IL 62040 | From | 7/1/1983 | To | Current |
| 14.15 | 1172 147th STREET  WAYLAND MI 49348 | From | 11/24/2003 | To | Current |
| 14.16 | 12001 SEARS AVE  LIVONIA MI 48150 | From | 4/30/1969 | To | 10/31/2017 |
| 14.17 | 1235 S HARRISBURG ST  HARRISBURG (STEELTON) PA 17113 | From | 2/2/1998 | To | Current |
| 14.18 | 125 RAILROAD AVE; BUILDING 10  BEACON FALLS CT 06403 | From | 8/1/2018 | To | Current |
| 14.19 | 1321 N COLUMBIA CTR BL STE 455  KENNEWICK WA 99336 | From | 10/4/1988 | To | Current |
| 14.20 | 14090 BALBOA BLVD  SYLMAR CA 91342 | From | 10/2/1967 | To | Current |
| 14.21 | 151 MAYWOOD AVE  MAYWOOD NJ 07607 | From | 1/3/1967 | To | 12/14/2016 |
| 14.22 | 15427 NE AIRPORT WAY  PORTLAND OR 97230 | From | 11/13/2002 | To | Current |
| 14.23 | 1586-1650 PANAMA STREET  MEMPHIS TN 38108 | From | 7/1/2015 | To | 2/10/2017 |
| 14.24 | 1600 N BOUDREAU ROAD  MANTENO IL 60950 | From | 5/1/1990 | To | Current |
| 14.25 | 1615-1621 GEORGESVILLE ROAD  COLUMBUS OH 43228 | From | 12/1/1986 | To | Current |
| 14.26 | 1701 W NORMANTOWN ROAD  ROMEOVILLE IL 60446 | From | 9/1/1999 | To | Current |
| 14.27 | 1801 W. NORMANTOWN ROAD  ROMEOVILLE IL 60446 | From | 1/15/2009 | To | Current |
| 14.28 | 1820 EAST RACE STREET  ALLENTOWN PA 18109-9584 | From | 2/1/1976 | To | Current |
| 14.29 | 1835 FERRY ROAD  NAPERVILLE IL 60563 | From | 1/1/2011 | To | Current |
| 14.30 | 1900 W 65TH ST-STE 10  LITTLE ROCK AR 72209 | From | 7/11/1996 | To | Current |
| 14.31 | 2040 N UNION ST  MIDDLETOWN PA 17057 | From | 8/1/1996 | To | Current |
| 14.32 | 2040 WILLIAMS ROAD  COLUMBUS OH 43207 | From | 11/1/1988 | To | 10/31/2015 |
| 14.33 | 21 PATTON ROAD; BLDG 100, SUITE 200  SAVANNAH GA 31405 | From | 2/5/1996 | To | Current |
| 14.34 | 2115 SINCLAIR AVENUE  STOCKTON CA 95215 | From | 9/1/2008 | To | Current |
| 14.35 | 21612 88TH AVE SOUTH  KENT WA 98032 | From | 10/1/2012 | To | Current |
| 14.36 | 225 ROBBINS LANE  SYOSSET NY 11791 | From | 12/15/1989 | To | Current |
| 14.37 | 2301 MT INDUSTRIAL BLVD  TUCKER GA 30084 | From | 9/1/1971 | To | Current |
| 14.38 | 2302 WEST VALLEY HIGHWAY  AUBURN WA 98001 | From | 9/1/2016 | To | Current |
| 14.39 | 2419 COCKRELL AVENUE  DALLAS TX 75215 | From | 9/1/1999 | To | 7/31/2018 |
| 14.40 | 262 OXMOOR COURT  BIRMINGHAM AL 35209 | From | 1/31/1957 | To | Current |

Debtor   INNOVEL SOLUTIONS, INC.
_____
          Name

Case number (if known)   18-23548
_____

| | Address | | Dates of occupancy | | |
|---|---|---|---|---|---|
| 14.41 | 2700 FRUITLAND AVE  VERNON CA 90058 | From | 1/30/2008 | To | Current |
| 14.42 | 2775 W MILLER ROAD  GARLAND TX 75041 | From | 11/1/1988 | To | 9/27/2017 |
| 14.43 | 279 BROADWAY  MENANDS NY 12204 | From | 10/20/1997 | To | Current |
| 14.44 | 2940 S MINNEAPOLIS AVE  WICHITA KS 67216 | From | 11/10/1997 | To | Current |
| 14.45 | 2969 FAYE ROAD  JACKSONVILLE FL 32226 | From | 2/13/2008 | To | 2/28/2018 |
| 14.46 | 3 QUEST DIRVE UNITS  301-302  BLOOMINGTON IL 61704 | From | 12/1/2007 | To | Current |
| 14.47 | 3111 APOSTOLIC ROAD   VANDENBROEK (APPLETON) WI 54140 | From | 8/3/1998 | To | Current |
| 14.48 | 3125-A HORSESHOE LANE  CHARLOTTE NC 28208 | From | 1/12/2001 | To | Current |
| 14.49 | 31381 POND ROAD  MCFARLAND CA 93250 | From | 1/18/1993 | To | Current |
| 14.50 | 3202 W. SAWYER DRIVE  SAGINAW MI 48603 | From | 2/24/1997 | To | Current |
| 14.51 | 3355 DULLES DRIVE  MIRA LOMA CA 23230 | From | 5/2/1956 | To | 1/31/2017 |
| 14.52 | 349 UNIVERSITY AVE  WESTWOOD MA 02090 | From | 1/27/2000 | To | Current |
| 14.53 | 3509 BASHFORD AVE  LOUISVILLE KY 40218 | From | 3/6/1996 | To | Current |
| 14.54 | 3643 S 73RD EAST AVE  TULSA OK 74145 | From | 7/11/1996 | To | Current |
| 14.55 | 3685 ALUM CREEK ROAD   COLUMBUS OH 43207 | From | 11/1/1988 | To | 10/31/2015 |
| 14.56 | 3688 E. CENTRAL AVENUE  FRESNO CA 93725 | From | 4/9/2015 | To | Current |
| 14.57 | 3831 COMMERCIAL CENTER ROAD  LADSON SC 29456 | From | 7/18/2014 | To | Current |
| 14.58 | 3952 WILLOW LAKE BLVD; BLDG 5  MEMPHIS TN 38118 | From | Unknown | To | Unknown |
| 14.59 | 39B CONCORD  EL PASO TX 79906 | From | 12/8/1997 | To | Current |
| 14.60 | 4 ACORN LANE  COLCHESTER VT 05446 | From | 9/15/1960 | To | Current |
| 14.61 | 400 FIRST AVENUE  GOULDSBORO PA 18424 | From | 9/15/2007 | To | Current |
| 14.62 | 4320 N. 124TH STREET  WAUWATOSA WI 53213 | From | 2/1/2008 | To | Current |
| 14.63 | 4425 SALZMAN ROAD  MONROE OH 45050 | From | 3/6/1996 | To | Current |
| 14.64 | 45065 OLD OX ROAD  DULLES VA 20165 | From | 4/2/2001 | To | Current |
| 14.65 | 4620 HICKLEY INDUSTRIAL PKWY  CLEVELAND OH 44109 | From | 1/1/1957 | To | Current |
| 14.66 | 4725 PACIFIC AVE  EUGENE OR 97405 | From | 3/1/2004 | To | Current |
| 14.67 | 5041 W SILVER SPRINGS BLVD  OCALA FL 34482 | From | 7/15/2003 | To | Current |

Debtor  INNOVEL SOLUTIONS, INC.
        Name

Case number (if known)  18-23548

| Address | Dates of occupancy | | |
|---|---|---|---|
| 14.68 | 5160 W 81ST ST - WEST DOCK  INDIANAPOLIS IN 46268 | From | 12/1/1953 | To | Current |
| 14.69 | 521 STONE ROAD  BENICIA CA 94510 | From | 5/15/1996 | To | Current |
| 14.70 | 5330 CROSSWIND DR; STE A  COLUMBUS OH 43228 | From | 12/1/1988 | To | Current |
| 14.71 | 5691 E PHILADELPHIA; STE 100  ONTARIO CA 91761 | From | 10/1/1990 | To | Current |
| 14.72 | 580 RACO PARKWAY  PENDERGRASS GA 30567 | From | 1/2/2001 | To | Current |
| 14.73 | 5921 MIDWAY PARK BLVD NE  ALBUQUERQUE NM 87109-5806 | From | 1/1/2015 | To | Current |
| 14.74 | 615 WESTPORT PKWY; STE 200  GRAPEVINE TX 76051 | From | 1/1/1983 | To | Current |
| 14.75 | 624 ELMWOOD PKWY  HARAHAN LA 70123 | From | 11/1/1966 | To | Current |
| 14.76 | 65 HOLMES ROAD  NEWINGTON CT 06111 | From | 4/13/1998 | To | Current |
| 14.77 | 651A BRIGHAM ROAD  GREENSBORO NC 27409 | From | 1/1/1987 | To | Current |
| 14.78 | 713 FENWAY AVE; STE D  CHESAPEAKE VA 23323 | From | 5/1/2005 | To | Current |
| 14.79 | 761 NW PARKWAY  RIVERSIDE MO 64150 | From | 10/11/1947 | To | Current |
| 14.80 | 7650 S 228TH ST  KENT WA 98032 | From | 2/1/1970 | To | 8/30/2018 |
| 14.81 | 810 HWY 30 WEST; SUITE F  GONZALES LA 70737 | From | 3/15/2012 | To | Current |
| 14.82 | 828 NEW MEISTER LANE, SUITE 100  PFLUGERSVILLE TX 78660 | From | 8/28/2008 | To | Current |
| 14.83 | 8374 N 4000 EAST ROAD  MANTENO IL 60950-3588 | From | Unknown | To | Unknown |
| 14.84 | 844 N 44TH AVE STE 2  PHOENIX AZ 85043 | From | 8/1/1969 | To | Current |
| 14.85 | 8640 ELM FAIR BLVD  TAMPA FL 33610 | From | 6/30/1975 | To | Current |
| 14.86 | 8700 ROBERT FULTON DRIVE  COLUMBIA MD 21046 | From | 7/1/1966 | To | Current |
| 14.87 | 900 INTERNATIONAL PARKWAY  SUNRISE FL 33325 | From | 10/15/1970 | To | Current |
| 14.88 | 960 SHERMAN ST  SAN DIEGO CA 92110 | From | 8/1/1989 | To | 7/17/2017 |
| 14.89 | 9717 I STREET  OMAHA NE 68114 | From | 7/1/1983 | To | Current |
| 14.90 | 98-600 KAMEHAMEHA HWY  PEARL CITY HI 96782 | From | 2/1/1974 | To | Current |
| 14.91 | ALL SOUTH DELIVERY  FT PIERCE FL 34945 | From | 2/5/1996 | To | Current |
| 14.92 | 175 W 1300 SOUTH  SALT LAKE CTY UT 84115 | From | 3/3/1997 | To | Current |
| 14.93 | 2065 GEORGE ST  MELROSE PARK IL 60160 | From | 10/16/1965 | To | 4/5/2018 |
| 14.94 | 266 ROUTE 125  KINGSTON NH 03848 | From | 9/15/1960 | To | Current |

| Debtor | INNOVEL SOLUTIONS, INC. | Case number *(if known)* | 18-23548 |
|---|---|---|---|
| | Name | | |

| | Address | Dates of occupancy | | | |
|---|---|---|---|---|---|
| 14.95 | 27 51ST ST  PITTSBURGH PA 15201 | From | 2/1/1949 | To | 8/21/2017 |
| 14.96 | 4100 TOMLYN ST  RICHMOND VA 23230 | From | 10/1/2002 | To | 9/11/2017 |
| 14.97 | 500 W WARNER AVE #28  SANTA ANA CA 92707 | From | 5/1/1975 | To | 7/17/2017 |

## Part 8:   Health Care Bankruptcies

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☒ No. Go to Part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.0.00 | | |
| Facility Name | | |
| Street | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept? |
| City          State          ZIP Code | | *Check all that apply*<br>☐ Electronically<br>☐ Paper |

## Part 9:   Personally Identifiable Information

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☒ Yes. State the nature of the information collected and retained.   First Name, Last Name, Email Address, Home Address, Contact Number

Does the debtor have a privacy policy about that information?

☐ No.

☒ Yes.

17. **Within 6 years  before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit sharing plan made available by the debtor as an employee benefit?**

☒ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

☒ No. Go to Part 10.

☐ Yes. Fill in below:

| Name of plan | Employer Identification Number of the Plan |
|---|---|

Debtor    INNOVEL SOLUTIONS, INC.                                      Case number *(if known)*    18-23548
Name

| Name of plan | Employer Identification Number of the Plan |
|---|---|
| | EIN: |

Has the plan been terminated?

☐ No

☐ Yes

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | FIFTH THIRD BANK <br><br>Name <br><br>580 WALNUT STREET <br><br>Street <br> CINCINNATI          OH      45202 <br> City          State      ZIP code | XXXX- 7 0 0 0 | ☐ Checking <br> ☐ Savings <br> ☐ Money Market <br> ☐ Brokerage <br> ☒ Other  Depository | 3/30/2018 | $          0.00 |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☒ None

| | Financial institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|---|
| 19.0. | Name <br><br> Street <br><br> City          State      ZIP code | <br><br> Address | | ☐ No <br> ☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of the building which the debtor does business.

☒ None

| Debtor | INNOVEL SOLUTIONS, INC. | Case number *(if known)* | 18-23548 |
|---|---|---|---|
| | Name | | |

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|

**20.0.**

Name

Street

City            State            ZIP code

Address

☐ No

☐ Yes

---

**Part 11:    Details About Environmental Information**

**21.    Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored, or held in trust. Do not list leased or rented property.

☒ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |

Name

Street

City            State            ZIP code

---

**Part 12:    Details About Environmental Information**

**22.    Has the debtor been a part in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☒ No

☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**22.0.**

Case number

Name

Street

City            State            ZIP code

☐ Pending

☐ On appeal

☐ Concluded

Debtor   INNOVEL SOLUTIONS, INC.                                    Case number *(if known)*   18-23548
_____
Name

---

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☐ No

☒ Yes. Provide details below.

| 23.1. | Site name and address | Governmental unit name and address | Environmental law, if known | Date of Notice |
|---|---|---|---|---|
| | 45417 | SANTA ANA REGIONAL WATER QUALITY CONTROL | California Water Code Section 13385California Water Code Section 13385.1 | 10/18/2018 |
| | Name | Name | | |
| | 5691 E PHILDEPHIA | 3737 MAIN STREET SUITE 500 | | |
| | Street | Street | | |
| | ONTARIO          CA          91761 | RIVERSIDE          CA          92501 | | |
| | City          State          ZIP code | City          State          ZIP code | | |

**24.  Has the debtor notified any governmental unit of any release of hazardous material?**

☐ No

☒ Yes. Provide details below.

| 24.1. | Site name and address | Governmental unit name and address | Environmental law, if known. | Date of Notice |
|---|---|---|---|---|
| | 475 | FDEP | | Unknown |
| | Name | Name | | |
| | 1 IMESON PARK BLVD | 508-A CAPITAL CIRCLE SE | | |
| | Street | Street | | |
| | JACKSONVILLE          FL          32301 | TALLAHASSEE          FL          32301 | | |
| | City          State          ZIP Code | City          State          ZIP Code | | |
| 24.2. | Site name and address | Governmental unit name and address | Environmental law, if known. | Date of Notice |
| | 88714 | NJDEP | | Unknown |
| | Name | Name | | |
| | 151 MAYWOOD AVE | 401 E STATE STREET PO BOX 420 | | |
| | Street | Street | | |
| | MAYWOOD          NJ          08625-0420 | TRENTON          NJ          08625-0420 | | |
| | City          State          ZIP Code | City          State          ZIP Code | | |

**Part 13:      Details About the Debtor's Business or Connections to Any Business**

**25.  Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☒ None

---

Debtor   INNOVEL SOLUTIONS, INC.                                      Case number *(if known)*   18-23548
_____
Name

| 25.0. | Business name and address | Describe the nature of the business | Employer Identification Number |
|---|---|---|---|
| | | | Do not include Social Security number or ITIN |
| | | | EIN: _____ |
| | Name | | |
| | | | **Dates business existed** |
| | Street | | From _____ to _____ |
| | City          State     ZIP Code | | |

**26.   Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐   None

| Name and address | | | Dates of service | | |
|---|---|---|---|---|---|
| 26a.1. | HOLLAR JASON | | From | 1/31/2017 | To | 4/28/2017 |
| | Name | | | | |
| | 3333 BEVERLY ROAD | | | | |
| | Street | | | | |
| | HOFFMAN ESTATES | ILLINOIS | 60179 | | |
| | City | State | ZIP Code | | |

| Name and address | | | Dates of service | | |
|---|---|---|---|---|---|
| 26a.2. | JORDAN JOE | | From | 1/3/2016 | To | 4/14/2018 |
| | Name | | | | |
| | 3333 BEVERLY ROAD | | | | |
| | Street | | | | |
| | HOFFMAN ESTATES | ILLINOIS | 60179 | | |
| | City | State | ZIP Code | | |

| Name and address | | | Dates of service | | |
|---|---|---|---|---|---|
| 26a.3. | PHELAN ROBERT | | From | 7/1/2018 | To | Current |
| | Name | | | | |
| | 3333 BEVERLY ROAD | | | | |
| | Street | | | | |
| | HOFFMAN ESTATES | ILLINOIS | 60179 | | |
| | City | State | ZIP Code | | |

| Name and address | | | Dates of service | | |
|---|---|---|---|---|---|
| 26a.4. | RIECKER ROBERT | | From | 4/21/2017 | To | Current |
| | Name | | | | |
| | 3333 BEVERLY ROAD | | | | |
| | Street | | | | |
| | HOFFMAN ESTATES | ILLINOIS | 60179 | | |
| | City | State | ZIP Code | | |

Debtor    INNOVEL SOLUTIONS, INC.                                        Case number *(if known)*    18-23548
_____Name_____

26b.    List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial
statement within 2 years before filing this case.

☐    None

| 26b.1. | Name and address | Dates of service |
|---|---|---|
| | DELOITTE & TOUCHE LLP | From  10/15/2016    To  Current |
| | Name | |
| | P O BOX 844708 | |
| | Street | |
| | DALLAS          TX          75284 | |
| | City          State          ZIP Code | |

26c.    List all the firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐    None

| 26c.1. | Name and address | If any books of account and records are unavailable, explain why |
|---|---|---|
| | DELOITTE & TOUCHE LLP | |
| | Name | |
| | P O BOX 844708 | |
| | Street | |
| | DALLAS          TX          75284 | |
| | City          State          ZIP Code | |

26d.    List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial
statement within 2 years before filing this case.

☒    None

| 26d.0. | Name and address |
|---|---|
| | Name |
| | Street |
| | City          State          ZIP Code |

27.    **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☒    No

☐    Yes. Give the details about the two most recent inventories

Debtor    INNOVEL SOLUTIONS, INC.                                                    Case number *(if known)*    18-23548
_____
Name

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| 27.0. _____ | _____ | $ _____   _____ |

**Name and address of the person who has possession of inventory records**

_____
Name

_____
Street

_____
City                          State                ZIP Code

Debtor  __INNOVEL SOLUTIONS, INC.__
      Name

Case number *(if known)*  __18-23548__

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| BORDEN JANE | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Vice President | 0% |
| DATTILO ANTHONY F | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | President | 0% |
| MEERSCHAERT LAWRENCE J | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Vice President | 0% |
| MEERSCHAERT LAWRENCE J | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Director | 0% |
| PHELAN ROBERT J | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Treasurer | 0% |
| PRAKASH RAJAT | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Assistant Treasurer | 0% |
| RIDLE JAMES K | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Vice President | 0% |
| RIECKER ROBERT A | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Chief Financial Officer | 0% |
| RIECKER ROBERT A | 3333 BEVERLY ROAD <br> HOFFMAN ESTATES    ILLINOIS   60179 | Director | 0% |

Debtor   INNOVEL SOLUTIONS, INC.
Name

Case number *(if known)*   18-23548

| | | | |
|---|---|---|---|
| ROSE C THOMAS | 3333 BEVERLY ROAD<br><br>HOFFMAN ESTATES       ILLINOIS   60179 | Vice President | 0% |
| SITLEY STEPHEN L | 3333 BEVERLY ROAD<br><br>HOFFMAN ESTATES       ILLINOIS   60179 | General Counsel and<br>Chief Compliance Officer | 0% |
| SWAGER KENNETH J | 3333 BEVERLY ROAD<br><br>HOFFMAN ESTATES       ILLINOIS   60179 | Vice President | 0% |
| VALENTINO LUKE | 3333 BEVERLY BLVD<br><br>HOFFMAN ESTATES       IL       60179 | Corporate Secretary | 0% |

Debtor    INNOVEL SOLUTIONS, INC.                                       Case number (if known)    18-23548
          Name

29.    **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☒ Yes. Identify below.

| Name | Address | Position and nature of any interest | | Period during which position or interest was held | |
|------|---------|-------------------------------------|---|---|---|
| BABB JONATHAN C | 3333 BEVERLY ROAD | Secretary | From 11-28-2016 | To 10/25/2017 |
| | HOFFMAN ESTATES        ILLINOIS   60179 | | | |
| ENNIS DANIEL | 3333 BEVERLY ROAD | Vice President | From 08-20-2015 | To 6/15/2018 |
| | HOFFMAN ESTATES        ILLINOIS   60179 | | | |
| JORDAN JOSEPH F | 3333 BEVERLY ROAD | Vice President and Controller | From 11-16-2017 | To 4/13/2018 |
| | HOFFMAN ESTATES        ILLINOIS   60179 | | | |
| JORDAN JOSEPH F | 3333 BEVERLY ROAD | Vice President | From 11-28-2016 | To 11/16/2017 |
| | HOFFMAN ESTATES        ILLINOIS   60179 | | | |
| RIECKER ROBERT A | 3333 BEVERLY ROAD | Vice President | From 06-19-2014 | To 7/29/2018 |
| | HOFFMAN ESTATES        ILLINOIS   60179 | | | |
| STOLLENWERCK S JEFFREY | 3333 BEVERLY ROAD | Vice President | From 09-08-2010 | To 5/18/2018 |
| | HOFFMAN ESTATES        ILLINOIS   60179 | | | |

Debtor    INNOVEL SOLUTIONS, INC.                                    Case number *(if known)*    18-23548
_____
Name

---

30.  **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☒  No

☐  Yes, see Question 4

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

30.0

_____
Name

_____
Street

_____
City                    State        ZIP Code

**Relationship to debtor**

_____

**Total amount or value**.................................................................

31.  **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐  No

☒  Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| Sears Holdings Corporation | EIN:    20-1920798 |

32.  **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☒  No

☐  Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

Debtor   INNOVEL SOLUTIONS, INC.                                    Case number *(if known)*   18-23548
         Name

---

| Part 14: | Signature and Declaration |

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on    01/17/2019

              MM / DD / YYYY

✘ /s/ Robert A. Riecker                              Printed name   Robert A. Riecker
  Signature of individual signing on behalf of the debtor

                          Office of the CEO,
                          Chief Financial Officer
  Position or relationship to debtor

**Are additional pages to** *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* **(Official Form 207) attached?**

☒ No

☐ Yes

Official Form 207          Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy          page  26