BRIAN COKE NG
40 Ann Street
New York, N.Y. 10038

**Mailing Address:**
Church Street Station
P.O. Box 2723
New York, N.Y 10008
Phone: (646) 820.9238
Fax:    (646) 820.9238
Email: Briancng38@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                          :        Chapter 11
                                               :
SEARS HOLDINGS CORPORATION, et al.,            :        Case No. 18-23538 (RDD)
                                               :
        Debtors.:                              :        (Jointly Administered)
                                               :
                                               :        JUDGE:  Hon. Robert D. Drain
                                               :
Brian Coke Ng                                  :
            Plaintiff                          :        Supreme Court of the State of
        v.                                     :        New York, New York County
Kmart Corporation, et. Al.,                    :         Index No.: 100386/2018
            Defendant(s)                       :
                                               :        Plaintif/Movant's **Reply Brief**
                                               :        in Response to Defendants/Debtors's
                                               :        Omnibus Objection to Relief from Stay

-------------------------------------------------------------x

**To:** The Honorable Robert D. Drain, United States Bankruptcy Judge,

In further support of Plaintiff/Movant's Relief from the Automatic Stay, under 11 U.S.C §362(d)(1) and local rule 4001-1, derived from former Local Bankruptcy Rule 44(a) Brian Coke Ng ("Plaintiff/Movant"), Po se respectfully offers and submits this Reply Brief in Response to Defendants/Debtors Omnibus Objection dated January 11, 2019. And also, for this Court to accept this response as full and complete argument at the hearing scheduled for January 18, 2019. 10:00 A.M. or anytime thereafter, as Plaintiff/Movant suffering from ongoing medical circumstances.

### MEMORANDUM OF LAW, POINTS, ARGUMENT AND AUTHORIES
### IN FURTHER SUPPORT OF MOTION TO LIFT THE AUTOMATIC STAY

1.      As to Defendants/Debtors Preliminary Statement that the Plaintiff/Movant establish and show cause. Under Section 362(d) of the Bankruptcy Code, a Court may grant relief from the automatic stay for cause upon request of a party in interest. See 11 U.S.C. §362(d)(1). As stated and shown in Plaintiff/Movant motion, and herein below with all its accompanying exhibits, the Plaintiff/Movant here, had established and show strong cause warranting relief lifting the Automatic Stay. 11 U.S.C. §362(d)(1).

### BACKGROUND

**PENDING LAWSUIT IN N.Y.S. SUPREME COURT**

2.      On March 28, 2018, Mr. Brian Coke Ng filed a pro se Amended Complaint captioned: Brian Coke Ng -against- Kmart Pharmacy, Kmart Holding Corporation, Sears Holdings Corporation, and Sedgwick Claims Management Services, Inc., in New York State Supreme Court, New York County, Index#100386/2018, seeking damages for improper conduct and wrongdoings on **July 16, 2010.**

**JUDICIAL SUBPOENA DUCES TECUM**

3.      The lawsuit is currently pending before Honorable Judge David B. Cohen. On June 29, 2018, the Right Honorable Judge David B. Cohen had issued a Judicial Subpoena Duces Tecum upon the Defendants/Debtors Pharmacy ("Kmart Pharmacy"). The Subpoena had specifically requested and demanded the following: " Certified copy of each and every part of medication profile and all records maintained relating to the Plaintiff Brian Coke Ng, including all reports, notes, mental health information, known allergies and drug reactions, chronic distress,

List of medications and relevant devices and other information reported to the pharmacist appropriate for counseling an individual regarding use of prescription and over-the-counter drugs, and a certified copy of Kmart Pharmacy Notice of Privacy Practices with effective date September 2, 2014, as well as a certified copy with effective date January 6, 2015, respectively." See a copy of Judicial Subpoena Duces Tecum June 29, 2018, attached as **Exhibit (1)**.

4. The documents and records sought in the Judicial Subpoena Duces Tecum from the Defendants/Debtors Pharmacy is very important and needed for proof and for perfecting additional claims and/or to properly file the new lawsuit against the Defendants/Debtors, and possible others, but the Defendants/Debtors did not complied with the Judicial Subpoena Duces Tecum dated June 29, 2018, issued by Honorable Judge David B. Cohen.

**HEARING PERTAINING TO NON-COMPLIANCE
OF THE JUDICIAL SUBPOENA DUCES TECUM**

5.      On September 20, 2018, the Supreme Court held a hearing on the matter regarding the Defendants/Debtors noncompliance with the Judicial Subpoena Duces Tecum dated June 29, 2018. Defendants/Debtors here, had informed the New York State Supreme Court, County of New York, that they had complied with the Judicial Subpoena Duces Tecum dated June 29, 2018, and had provided the records sought in the Judicial Subpoena to the Plaintiff/Movant, but those were false statements made by the Defendants/Debtors. The Defendants/Debtors had lied, and misled the Honorable Court, in that, hey were not truthful, that is because, on November 6, 2018, and post-petition for bankruptcy, the Defendants/Debtors sent via fax, new and additional, never-seen-before, piecemeal medical records to the Plaintiff/Movant. The Defendants/Debtors improper conduct to lied and misled the Court is willful and deliberate. A copy of the transcript of the hearing is **attached hereto as Exhibit (2)**

6.      As a result of the Defendants/Debtors lies, false statements, and misleading statements to the New York State Supreme Court, to which they gladly and cheerfully informed the Court that they had complied with the Judicial Subpoena Duces Tecum, Honorable Judge David B. Cohen had declined to sign an order in favor of the Plaintiff/Movant. **See Exhibit (2) and Exhibit (3).**

**"PATIENT RECORDS"**

7.      "Patient Records" (as defined in section 101 (40B) of the Bankruptcy Code) are vitally important documents in the health care industry and as such are subject to stringent Federal and State Confidentiality and disclosure regulations.

8.      As stated above, on November 6, 2018, post-petition for bankruptcy, the Defendants/Debtors sent via fax, new and/or additional, never-seen-before, piecemeal medical records to the Plaintiff/Movant. The documents created on November 6, 2018, contains and bears misleading, false and fraudulent information, and had also shed new light to which perfect the Plaintiff/Movant new claim(s), previous claim(s) and to properly file a new lawsuit. A copy of the documents created on November 6, 2018 is **attached hereto as Exhibit (4).**

**DEFENDANTS/DEBTORS ATTEMPTED TO REMOVE STATE COURT ACTION TO UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

9.      On Friday October 12, 2018, the Defendants/Debtors had attempted to remove the New York State Supreme Court action, to the United States District Court for the Southern District of New York.

**PROCEDURAL REQUIREMENTS FOR ANY REMOVAL**

10.      The Defendants/Debtors were required to file with a Notice of Removal, a copy of all process, pleadings, and orders served upon the Defendants/Debtors. 28 U.S.C. §1446(a). Practically speaking, attaching the entire state court file to the Notice of Removal would have satisfy this requirement. Finally, the removing Defendants/Debtors must also provide written

Notice of the removal to all adverse Parties and must file a copy of the Notice with the County Clerk of the State Court. 28 U.S.C §1446(d). It is prudent to attach a copy of the Notice of filing to such notice of Removal. But these vital Procedural Requirements for Removal were not followed or complied with by these Defendants/Debtors. As a result, the New York State Supreme Court properly maintained its calendar, and Plaintiff/Movant upon the Order of the Court, was advised and directed by the Court to appear on December 19, 2018.

11.    Shortly after Honorable Judge David B. Cohen had issued a new Order, which was filed on December 2018, the Defendants/Debtors attorney(s) made up and leveled false statements against the Plaintiff/Movant. Brian Coke Ng has been wrongfully accused of taking prohibited action(s) that violates the automatic stay, so *"to obtain the Order"*. A copy of Honorable Judge David B. Cohen Order is **attached hereto as Exhibit (5).**

12.    The attempt to remove the State Court action to the United States District Court for the Southern District of New York had became an issue with respect to two (2) separate Court Orders that shows a conflict on this one pending lawsuit. See documents filed previously with this Bankruptcy Court (Doc #1387) filed on December 20, 2018 and entered on December 21, 2018.

**DATE OF INCIDENT DISPUTES, CLAIM SUBMISSION,
INSURANCE POLICY PERIOD, AND COVERAGE TERRITORY**

13.    On July 16, 2010, an incident had occurred at the Defendants/Debtors Pharmacy ("Kmart Pharmacy"). Plaintiff/Movant wrote and submitted a Complaint/Letter dated July 23, 2010, to the Defendants/Debtors Pharmacy. A copy of the Complaint/Letter dated July 23, 2010 is attached hereto as Exhibit (6).

14.    Plaintiff/Movant suffers severe distress and other medical problems and issues after ingesting toxic substances from Sertraline overdose on July 18, 2010. Although

Plaintiff/Movant was seen and follow up by his doctor (Dr. John Spiegel) during the time, various medical issues has later developed and became burdensome and difficult day and night to deal with, and essentially affected the Plaintiff/Movant's life overall. A copy of Dr. John Spiegel's medical report is **attached hereto as Exhibit (7).**

15.    Plaintiff/Movant's complaint/letter dated July 23, 2010 was submitted on various occasions to the Defendants/Debtors Pharmacy, both via regular first class mail and i person, including a specific hand delivery made on September 17, 2010 to Defendants/Debtors Pharmacist name (" Darshanie Sankar"). Upon Ms. Darshanie Sankar receipt of the complaint/letter dated July 23, 2010, Ms. Darshanie Sankar had advised the Plaintiff/Movant that all other filling would be made for the Plaintiff/Movant by "higher ups" and that, the Plaintiff/Movant need to take no further action pertaining to the complaint because "the Kmart team will handle it". Upon hearing that the complaint and a claim will be filed on the Plaintiff/Movant behalf, and nothing else to be done by the Plaintiff/Movant, the Plaintiff/Movant was left convinced with such assurance and belief. Although Plaintiff/Movant had made countless follow up telephone calls so to get any status updates, the Plaintiff/Movant did not received any documentation or written response until a new claim were made for latent injury on February 24, 2017. The Plaintiff/Movant received a letter dated 03/03/2017, from Sedgwick CMS ("The Third Party Claims Administrator"), to which contained an apology. Specifically, in separate parts, on quote: ***On behalf of our client, I would like to apologize for any inconvenience this incident may have caused you.***" A copy of Sedgwick letter dated 03/03/2017 is **attached as Exhibit (8)**

16.    To create confusion, they began to misrepresent the facts, Sedgwick CMS had later served a denial letter dated March 21, 2017 bearing incident date 07/30/2010.

However, no decision was issued pertaining to the date of incident: 02/24/2017. Sedgwick CMS wrote in separate parts, of its etter dated March 21, 2017, on quote: *"should you have additional information that has not been presented for review and could impact our denial decision, we ask that you provide that information at this time"*. A copy of their denial letter dated March 21, 2017, bearing incident date 07/30/2010 is **attached hereto as Exhibit (9).**

## PARTIAL RECORDS TURN UP WITH ALTERATIONS AND FALSIFICATIONS

17.    The Plaintiff/Movant had made several request to the Defendants/Debtors for a copy of Plaintiff/Movant medical records and other relevant information that could impact the denial decision, this includes the demands made in the Judicial Subpoena Duces Tecum issued by Honorable Judge David B. Cohen. The records received bears alterations and falsifications.

18.    For example, someone had entered into the Plaintiff/Movant medical records located at the Defendants/Debtors Pharmacy and had altered and falsified the medical records to read and reflect another Pharmacist name "John Hellyer" and put in a date of services to reflect September 22, 2010, instead of the correct Pharmacist name Ms. Darshanie Sankar who had provided the Plaintiff/Movant with the pharmacy services on September 17, 2010, and who had also received the Plaintiff/Movant complaint/letter dated July 23, 200. Then, lo and behold, Sedgwick CMS, wrote and stated that, Defendants/Debtors "has no record of receiving this letter". A copy of Sedgwick CMS letters is **attached as Exhibit (10) and Exhibit (11).**

## FURTHER CAUSE#1: INSURANCE POLICY NO. HDO G24933398

19.    Plaintiff/Movant was able to locate the Defendants/Debtors insurance policy No.: HDO G24933398; Type of policy: General Liability; Date of Inception: 08/01/2009; date of Expiration: 08/01/2010; Insurer: ACE American Insurance Co. (ACE). This Policy is relevant in

that, it covered periods to which the Plaintiff/Movant has claims against the Defendants/Debtors improper conduct on July 16, 2010. Defendants/Debtors had given no detail, and provide no information on this policy. There are no disputes then or now that indicate this policy has exhausted or depleted, and there are no audit report(s).

### FURTHER CAUSE#2: INSURANCE POLICY NO. HDO G71097651

20.     Plaintiff/Movant was able to locate the Defendants/Debtors insurance policy No.: HDO G71097651; Type of policy: General Liability; Date of Inception: 08/01/2018; date of Expiration: 01/01/2019; Insurer: ACE American Insurance Co. (ACE). This Policy is relevant in that, it covered periods to which the Plaintiff/Movant has claims against the Defendants/Debtors improper conduct on August 22, 2018, August 27, 2018, and November 6, 2018. Defendants/Debtors had given no detail, and provide no information on this policy. There are no disputes then or now that indicate this policy has exhausted or depleted and there are no audit report(s).

### FURTHER CAUSE#3: INSURANCE POLICY NO. HDO G71097699

21.     Plaintiff/Movant was able to locate the Defendants/Debtors insurance policy No.: HDO G71097699; Type of policy: General Liability; Date of Inception: 08/01/2018; date of Expiration: 01/01/2019; Insurer: ACE American Insurance Co. (ACE). This Policy is relevant in that, it covered periods to which the Plaintiff/Movant has claims against the Defendants/Debtors improper conduct on August 22, 2018, August 27, 2018, and November 6, 2018. Defendants/Debtors had given no detail, and provide no information on this policy. There are no disputes then or now, that indicate this policy has exhausted or depleted and there are no audit report(s).

## FURTHER CAUSE#4: INSURANCE POLICY NO. HDO G71097730

22.    Plaintiff/Movant was able to locate the Defendants/Debtors insurance policy No.: HDO G71097730; Type of policy: General Liability; Date of Inception: 08/01/2018; date of Expiration: 01/01/2019; Insurer: ACE American Insurance Co. (ACE). This Policy is relevant in that, it covered periods to which the Plaintiff/Movant has claims against the Defendants/Debtors improper conduct on August 22, 2018, August 27, 2018, and November 6, 2018. Defendants/Debtors had given no detail, and provide no information on this policy. There are no disputes then or now, that indicate this policy has exhausted or depleted and there are no audit report(s).

## FURTHER CAUSE#5: INSURANCE POLICY NO. CGO G71097778

23.    Plaintiff/Movant was able to locate the Defendants/Debtors insurance policy No.: CGO G71097778; Type of policy: General Liability; Date of Inception: 08/01/2018; date of Expiration: 01/01/2019; Insurer: ACE American Insurance Co. (ACE). This Policy is relevant in that, it covered periods to which the Plaintiff/Movant has claims against the Defendants/Debtors improper conduct on August 22, 2018, August 27, 2018, and November 6, 2018. Defendants/Debtors had given no detail, and provide no information on this policy. There are no disputes then or now, that indicate this policy has exhausted or depleted and there are no audit report(s).

### FURTHER CAUSE#6: INSURANCE POLICY NO. HDO G71097614

24.    Plaintiff/Movant was able to locate the Defendants/Debtors insurance policy No.:

HDO G71097614; Type of policy: General Liability; Date of Inception: 08/01/2018; date of

Expiration: 01/01/2019; Insurer: ACE American Insurance Co. (ACE). This Policy is relevant in

that, it covered periods to which the Plaintiff/Movant has claims against the Defendants/Debtors

improper conduct on August 22, 2018, August 27, 2018, and November 6, 2018.

Defendants/Debtors had given no detail, and provide no information on this policy. There are no

disputes then or now, that indicate this policy has exhausted or depleted and there are no audit

report(s).

### FURTHER CAUSE#7: DEFENDANTS/DEBTORS UNCLEAN HANDS (A)

25.    First, the Defendants/Debtors has engaged in contumacious conduct and behavior,

in that, they had lied to the New York State Supreme Court, New York County, they had

deliberately, wrongfully and intentionally informed the Court, that they had complied with the

Judicial Subpoena Duces Tecum issued by the Honorable Judge David B. Cohen dated June 29,

2018, when did not. They had willfully, and deliberately, failed to obey the New York State

Supreme Court and honorable Judge David B. Cohen order.

26.    Litigants may not obtain the result they prefer by sabotaging the process the law

requires. The unclean hands doctrine "closes the doors of a court of equity to one tainted with

inequitableness or bad faith relative to the matter in which he seeks relief" (quoting Precision

Instrument Mfg. Co. v. Auto. Maint. Mach. Co.; 324 U.S. 806.814(1945)).

27.    The Defendants/Debtors have engaged in intentionally tortious and fraudulent

conduct and behavior. Not only had they informed the Supreme Court and Judge Cohen that they

complied fully with the Judicial Subpoena, they had altered and falsified the Patient Medical Records.

28.     When a situation with a "Patient Records" becomes a legal issue, it's important to understand that there are two records that will be considered: (1) the patient's actual Medical Records, and (2) the digital artifacts represented by the Metadata, in other words, the record of how the patient's information was kept, stored, and changed over time.

29.     The original records to which was provided to the Plaintiff/Movant during the course of medical treatments and medical counseling, they do not match when compared with records that were created by the Defendants/Debtors on August 22, 2018, August 27, 2018 and November 6, 2018. Also, they did not match medical expenses records created on January 13, 2015, March 24, 2017, and June 15, 2018. Defendants/Debtors had intentionally and willfully altered and falsified the Medical Records that are located at their Pharmacy, in an effort to evade liability. See the Medical Records at **Exhibit (12), Exhibit (13) and Exhibit (14).**

30.     With providing so much alterations, and falsifications and missing records of the notations of the Plaintiff/Movant Complaint/Letter dated July 23, 2010, and further altered the Medical Records to reflect and read another pharmacist name "John Hellyer" instead of the correct pharmacist ("Ms. Darshanie Sankar") who personally took the Plaintiff/Movant Complaint/Letter dated July 23, 2010, then it is therefore completely impossible to provide Sedgwick CMS (their third party administrator) with the "additional information" that they sought that could impact their denial decision dated March 21, 2017.

## DEFENDANTS/DEBTORS UNCLEAN HANDS  (B)

31.    Second, the Defendants/Debtors with their bad faith approach and unclean dirty hands on September 12, 2018, at 9:43A.M., sent an email, that reads in separated parts, on quote: "Lastly, as previously stated our clients is open to alternative dispute resolution, however we have yet to receive a proper numerical settlement demand from you. Please provide a numerical settlement demand after which we will be in a position to discuss same with our client and engage in settlement discussions with you." That same day, the Plaintiff/Movant responded via email and proposed $3.8million. **See Exhibit (15).**

32.    These emails are offered under Federal Rule 408, not to prove or disprove the validity or amount of the claim, nor to impeach a prior inconsistent statement, but "for another purpose", particularly that the Defendants/Debtors did in fact hinder, delay, and/or defraud the Plaintiff/Movant, Mr. Brian Coke Ng, and with their unclean hands.

33.    After the September 12, 2018, Plaintiff/Movant made follow up contact as was instructed, with the Defendants/Debtors on Friday, September 14, 2018 to find out what is on the table. However, there was no response from anyone. On September 17, 2018, the Defendants/Debtors made contact with Plaintiff/Movant via telephone and advised that they have "no authority to settle this case".

34.    On Friday October 12, 2018, three (3) days before the Defendants/Debtors filed for Bankruptcy protection (on Monday October 15, 2018), this very same Defendants/Debtors visited the United States District Court for the Southern District of New York and filed a partial Notice of Removal in an attempt to remove the New York State Supreme Court action that is against them. This show of unclean behavior is patently clear. This here Defendants/Debtors had

no intention to actually open to the Supreme Court Alternative Resolution program to which both sides had agreed to participate with mutually for a peaceful fair settlement, but rather using the ADR approach as a means of having the State Court action remove to Federal District Court.

35.    By email dated October 4, 2018, Plaintiff/Movant sent a Letter/Notice to the Defendants/Debtors, to clearly and patently advised, that Plaintiff/Movant had rejected their behavior and conduct to which had deliberately and willfully sabotaged what supposed to be good faith settlement negotiations and agreements to participate with the New York State Supreme Court Alternative Dispute Resolution (ADR) program. See copy of Plaintiff/Movant Letter/Notice **attached hereto as Exhibit (16).**

36.    "Unclean Hands" is an equitable doctrine under which the Court, in order to protect its own integrity, will deny equitable relief to a party in a transaction if that party, relative to the same transaction, is "guilty of improper conduct no matter now improper the [other party's] behavior may have been." Merimac Co. v. Portland Timber, 259 Or. 573,580,488 p.2d 465 (1971).

37.    In re John Olaf Halvorson, Judge Wallace explains very nicely, that unclean hands can be a bar to the access to Courts, at least when the Court is sitting as a court of equity. He quotes the Supreme Court in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244-45, 54 S. Ct. 146, 78L.Ed.293 (1933): "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in Court he must first show not only that he has a good and meritorious cause of action, but he must come into Court with clean hands ... The governing principle is that whatever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the Court will be

shut against him in limine; the Court will refuse to interfere on his behalf, to acknowledge his

right or to award him any remedy ... A court of equity acts only when and as conscience

commands; and if the conduct of the Plaintiff be offensive to the dictates of natural justice, then,

whatever may be the rights he possesses and whatever use he may make of them in Court of

Law, he will be held remediless in a court of equity."

38.    The purpose of the unclean hands doctrine is not to protect any of the parties, it is

to protect the Court from becoming an aider and abettor or inequity. (citing) Karpenko v.

Leendertz, 619 F.3d. 259,267 (3d Cir. 2010).

39.    See United States v. Howell, 425 F.3d 971,974 (11th Cir. 2005) ("[N]o principles

is better settled than the maxim that he who comes into equity must come with 'clean hands' and

keep them clean throughout the course of the litigation, and that if he violates this rule, he must

be denied all relief whatever may have been the merits of his claim"); Rorrer v. Cleveland Steel

Container Corp., No. 08-0671, 2010 U.S. Dist. LEXIS 99697 (E.D. Pa. 2010); Honeywell Int'l

Inc. v. Universal Avionics Sys. Corp., 398 F. Supp. 2d 305,311 (D. Del. 2005) ("Alternatively,

if unclean hands occurs during litigation, it bars any recovery by the offending party"); Goldstein

v. Lincoln Nat'l Convertible Secs. Fund. Inc., 140 F.Supp. 2d 424,441 (E.D. Pa. 2001); Major v.

Orthopedic Equipment Co., 496 F. Supp. 604, 609 (E.D. Va. 1980) ("From this premise one

deduces the corollary that the defendants hands must remain clean throughout the litigation if he

is to continue to receive the protection or benefit of equitable relief.").

40.    Here, the evidence against the Defendants/Debtors on unclean hands is otherwise

so patently clear and convincing that, it cannot be overlooked, and for this reason, along with the

others above stated, relief from the automatic stay should be granted.

## FURTHER CAUSE#8 MEDICAL ISSUES AND HARDSHIP

41.    As a result of Defendants/Debtors and their improper conduct, as recent as August

22, 2018, August 27, 2018, and November 6, 2018, to which further contributed, aggravating,

exacerbating Plaintiff/Movant pre existing medical conditions, emotional distress, stress, and

depression. Plaintiff/Movant also subjected to tremendous medical cost.See copy of the doctor(s)

medical notes of various medications/medicines and treatments **attached hereto as Exhibit (17).**

42.    The Plaintiff/Movant is having hardship with the various medical expenses, as a

result of the Defendants/Debtors series of improper conduct and misconduct to which willfully,

and intentionally, caused malicious and egregious emotional trauma and mental trauma upon

Plaintiff/Movant. The Defendants/Debtors knew that Plaintiff/Movant was psychologically and

financially vulnerable, and solely for their own personal gain and profit intentionally inflicted

these injury on the Plaintiff/Movant. For  example, one of the recent medical bill total amounts

currently due is **$1797.99** and counting. A copy of recent bills **attached as Exhibit (18).**

## <u>LEGAL ARGUMENT</u>

43.    Plaintiff/Movant also asking this Court to consider the above stated events and

Exhibits herewith to consider that the Defendants/Debtors did, at the very least, hinder and delay.

The "single test" theory is adopted by at least some bankruptcy jurisdictions, see In Re Addison,

540 F3d 805 (8th Cir. 2008). However, other circuits draw a finer line for Section 362 (d)(4),

specifically, in the Seventh Circuit which had drawn a distinction between "defrauding" and

"delaying". In Re Smiley 864 F.2d 562 (7th Cir. 1989) the Court determined that Smiley had not

necessarily defrauded his creditors, but that he had intended to delay and hinder them, and this

satisfied the requirement of the "hinder, delay, or defraud" provision in 11 U.S.C. 727 (a)(2).

The Court in Smiley thus toes the line that a case need not be filed in bad faith, or with fraudulent intent, to nevertheless include an intent to hinder or delay, which allows the Court to disregard the question of how it could confirm the plan as "filed in good faith" under 11 U.S.C. 1325(a)(3), since the two findings would appear mutually exclusive. In any event, in Smiley, it is clear the Debtor must be found to have engaged in some conduct that was not proper, and that the intention must, at least in part, be to prevent creditors from collecting on their claims. Plaintiff/Movant here, asks that this Court find such action in this Defendants/Debtors prior dealings with the Plaintiff/Movant, so as to find the requisite "cause" if more needed for a relief from the automatic stay.

44.    As an alternative, Plaintiff/Movant asks this Court to consider whether it may be possible for the Plaintiff/Movant's proposed settlement demand amounts, that was originally provided per email dated September 12, 2018, in the amounts of three million eight hundred thousand dollars ($3,800,000) to be deemed "liquidated" and treated as a secured debt. In Nicholes v. Johnny Appleseed of Washington, 184 B.R. 82 (B.A.P. 9th Cir. 1995), the Court note that a "debt is liquidated if it is capable of ready determination and precision in computation of the amount due." Id. at 89. The test for this "ready determination" is "whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a single computation." Id. It further note that "the term 'disputed' is board and can encompass either liquidated or unliquidated debts." Id. In other words, "it is the nature of the dispute and not the existence of the dispute, that makes a claim unliquidated." Id. at 90. If it is necessary to have an expert determine the amount of loss, the Plaintiff/Movant does not object to such a finding, and asks that this Reply be deemed a complaint for an adversary proceeding to determine if an

agreement as to the amount can be first, ascertained, and/or agreed to, so as to necessitate Plaintiff/Movant's debt to be added to the schedules, and/or paid as a priority in the plan.

## CONCLUSION

45.   It would be a grave miscarriage of justice if this Court did not allow any relief for the Plaintiff/Movant. Plaintiff/Movant is a real human individual person who has to take medication every day, day by day so to try get help for mental sufferings. While the Defendants/Debtors arguing in their objection about the fairness to the Defendants/Debtors in considering their, apparently astronomical cost of legal fees for representation in the New York State Supreme Court, for defense. Plaintiff/Movant is instead contemplating borrowing money for filing fees. Without relief, the Plaintiff/Movant here, Brian Coke Ng is not made whole. Although the Bankruptcy Code is established on the premise of creating an atmosphere of fairness for the Defendants/Debtors before it, this Court cannot turn a blind eye to fairness for all, including the creditors. Wherefore, Plaintiff/Movant asks and respectfully requests for (1) Relief from the automatic stay, or (2) An adversary proceeding to determine an amount for a liquidated claim on Plaintiff/Movant's behalf due to the showing of "cause" above herein.

Respectfully Submitted

Brian Coke Ng
Pro se Plaintiff/Movant
40 Ann Street
New York, N.Y. 10038

**Mailing Address:**
Church Street Station
P.O. Box 2723
New York, N.Y 10008
Phone: (646) 820.9238
Fax:    (646) 820.9238
Email: Briancng38@gmail.com

BRIAN COKE NG
40 Ann Street
New York, N.Y. 10038

**Mailing Address:**
Church Street Station
P.O. Box 2723
New York, N.Y 10008
Phone: (646) 820.9238
Fax:    (646) 820.9238
Email: Briancng38@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                              :          Chapter 11
                                                   :
SEARS HOLDINGS CORPORATION, et al.,                :          Case No. 18-23538 (RDD)
                                                   :
         Debtors.:                                 :          (Jointly Administered)
                                                   :
                                                   :          JUDGE:   Hon. Robert D. Drain
                                                   :
                                                   :
-------------------------------------------------------------x

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2019 a true and correct copy of the foregoing documents has

been served upon the following parties listed on the annexed **Exhibit A** via email, and in the

manner indicated thereon.


New York, New York

Dated: January 17, 2019

_____
Brian Coke Ng

# EXHIBIT   A

**EXHIBIT A**

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Alston & Bird LLP | Attn: James J. Vincequerra | James.Vincequerra@alston.com |
| Alston & Bird LLP | Attn: Leib M. Lerner | leib.lerner@alston.com |
| Ansell Grimm & Aaron, P.C. | Attn: Anthony J. D'Artiglio, Esq. | ajd@ansellgrimm.com |
| ASK LLP | Attn: Edward E. Neiger, Jennifer A. Christian | eneiger@askllp.com<br>jchristian@askllp.com |
| Ballard Spahr LLP | Attn: Dustin P. Branch | branchd@ballardspahr.com |
| Ballard Spahr LLP | Attn: Paul E. Harner, Alyssa E. Kutner | harnerp@ballardspahr.com<br>kutnera@ballardspahr.com |
| Ballard Spahr LLP | Attn: Leslie C. Heilman, Matthew G. Summers | heilmanl@ballardspahr.com<br>summersm@ballardspahr.com |
| Ballard Spahr LLP | Attn: David L. Pollack | pollack@ballardspahr.com |
| Barclay Damon LLP | Attn: Kevin M. Newman | knewman@barclaydamon.com |
| Bayard, P.A. | Attn: Evan T. Miller | emiller@bayardlaw.com |
| Bell Nunnally & Martin LLP | Attn: Russell W. Mills, R. Kent Love | rmills@bellnunnally.com<br>klove@bellnunnally.com |
| Bialson, Bergen & Schwab | Attn: Lawrence M. Schwab, Thomas M. Gaa | Tgaa@bbslaw.com |
| Blank Rome LLP | Attn: Jeffrey Rhodes | JRhodes@BlankRome.com |
| Blank Rome LLP | Attn: Stanley B. Tarr, Evan J. Zucker | Tarr@BlankRome.com<br>EZucker@BlankRome.com |
| Borges & Associates, LLC | Attn: Wanda Borges, Esq., Sue L. Chin, Esq. | bankruptcy@borgeslawllc.com<br>wborges@borgeslawllc.com<br>schin@borgeslawllc.com |
| Brach Eichler LLC | Attn: Anthony M. Rainone | arainone@bracheichler.com |
| Buchalter, A Professional Corporation | Attn: Shawn M. Christianson | schristianson@buchalter.com |

1

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Cafaro Management Company | Attn: Richard T. Davis | rdavis@cafarocompany.com |
| Cahill Gordon & Reindel LLP | Attn: Joel H. Levitin, Richard A. Stieglitz Jr. | jlevitin@cahill.com<br>rstieglitz@cahill.com |
| Carter Conboy Case Blackmore Maloney & Laird, P.C. | Attn: Michael J. Catalfimo, Esq., John R. Canney, IV, Esq. | mcatalfimo@carterconboy.com |
| Carter Ledyard & Milburn LLP | Attn: James Gadsden, Esq. | gadsden@clm.com<br>bankruptcy@clm.com<br>Dennis.roemlein@bnymellon.com |
| Certilman Balin Adler & Hyman, LLP | Attn: Richard J. McCord, Esq., Robert D. Nosek, Esq. | rmccord@certilmanbalin.com<br>rnosek@certilmanbalin.com |
| Chapman and Cutler LLP | Attn: Laura E. Appleby, Steven Wilamowsky | appleby@chapman.com<br>wilamowsky@chapman.com |
| Chiesa Shahinian & Giantomasi PC | Attn: Beth J. Rotenberg, Scott A. Zuber | brotenberg@csglaw.com<br>szuber@csglaw.com |
| Choate, Hall & Stewart LLP | Attn: Kevin J. Simard, Jonathan D. Marshall | ksimard@choate.com<br>jmarshall@choate.com |
| Choi & Park, LLC | Attn: Hyun Suk Choi, Chull S. Park | hchoi@choiandpark.com<br>cpark@choiandpark.com<br>lkleist@choiandpark.com |
| Chuhak & Tecson, P.C. | Attn: Miriam R. Stein | mstein@chuhak.com |
| CKR Law LLP | Attn: Edward L. Schnitzer | eschnitzer@ckrlaw.com |
| Clark Hill Strasburger | Attn: Duane J. Brescia | duane.brescia@clarkhillstrasburger.com |
| Clark Hill, PLC | Attn: David M. Blau | dblau@clarkhill.com |
| Cleary, Gottlieb, Steen & Hamilton LLP | Attn: Sean A. O'Neal, James L. Bromley, Andrew Weaver | soneal@cgsh.com<br>jbromley@cgsh.com<br>aweaver@cgsh.com |
| Computershare Trust Company, N.A. | Attn: Michael A. Smith, Vice President – Corporate Trust | Michael.smith2@computershare.com |

2

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Connolly Gallagher LLP | Attn: Karen C. Bifferato, Kelly M. Conlan, N. Christopher Griffiths | kbifferato@connollygallagher.com<br>kconlan@connollygallagher.com<br>cgriffiths@connollygallagher.com |
| Cozen O'Connor | Attn: Marl E. Felger | mfelger@cozen.com |
| Cravath, Swaine & Moore LLP | Attn: Paul H. Zumbro | pzumbro@cravath.com |
| Davidoff Hutcher & Citron LLP | Attn: David H. Wander, Esq. | dhw@dhclegal.com |
| Davis Polk & Wardwell LLP | Attn: Marshall S. Huebner, Esq, Eli J. Vonnegut, Esq. | marshall.huebner@davispolk.com<br>eli.vonnegut@davispolk.com<br>sears.service@davispolk.com |
| Debevoise & Plimpton LLP | Attn: Erica S. Weisgerber, My Chi To | mcto@debevoise.com<br>eweisgerber@debevoise.com |
| Environmental Protection Agency | Attn: Matthew Leopold, General Counsel | Leopold.matt@Epa.gov |
| Epicor Software Corporation | Attn: Larry Bercovich | lbercovich@epicor.com |
| Felderstein Fitzgerald Willoughby & Pascuzzi LLP | Attn: Paul J. Pascuzzi | ppascuzzi@ffwplaw.com |
| FisherBroyles, LLP | Attn: Mark E. Wilson | mark.wilson@fisherbroyles.com |
| FisherBroyles, LLP | Attn: Patricia B. Fugée | patricia.fugee@fisherbroyles.com |
| Foley & Lardner LLP | Attn: Derek L. Wright | dlwright@foley.com |
| Foley & Lardner LLP | Attn: Michael Small | msmall@foley.com |
| Fox Rothschild LLP | Attn: Paul J. Labov | plabov@foxrothschild.com |
| Fox Rothschild LLP | Attn: Thomas M. Horan | thoran@foxrothschild.com |
| Fox Rothschild, LLP | Attn: Mark E. Hall, Michael R. Herz | mhall@foxrothschild.com<br>mherz@foxrothschild.com |
| Fried, Frank, Harris, Shriver & Jacobson LLP | Attn: Brad Eric Scheler, Scott B. Luftglass, Peter B. Siroka | brad.eric.scheler@friedfrank.com<br>scott.luftglass@friedfrank.com<br>peter.siroka@friedfrank.com |
| Frost Brown Todd LLC | Attn: Ronald E. Gold & AJ Webb | rgold@fbtlaw.com<br>awebb@fbtlaw.com |

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Frost Brown Todd LLC | Attn: Edward M. King | tking@fbtlaw.com |
| Fultz Maddox Dickens PLC | Attn: Phillip A. Martin, Laura M. Brymer | pmartin@fmdlegal.com<br>lbrymer@fmdlegal.com |
| Gellert Scali Busenkell & Brown LLC | Attn: Gary F. Seitz | gseitz@gsbblaw.com |
| Gibbons P.C. | Attn: Brett S. Theisen, Natasha M. Songonuga | btheisen@gibbonslaw.com<br>nsongonuga@gibbonslaw.com |
| Gibbons P.C. | Attn: Howard A. Cohen | hcohen@gibbonslaw.com |
| Godfrey & Kahn, S.C. | Attn: Timothy F. Nixon | tnixon@gklaw.com |
| Golenbock Eiseman Assor Bell & Peskoe LLP | Attn: Jonathan L. Flaxer, Esq., Michael S. Weinstein, Esq. | jflaxer@golenbock.com<br>mweinstein@golenbock.com |
| Goodwin Procter LLP | Attn: Barry Z. Bazian | gfox@goodwinlaw.com<br>bbazian@goodwinlaw.com |
| Goulston & Storrs PC | Attn: Douglas B. Rosner | drosner@goulstonstorrs.com |
| Goulston & Storrs PC | Attn: Trevor R. Hoffmann | thoffmann@goulstonstorrs.com |
| Greer, Herz & Adams, LLP | Attn: Frederick Black, Tara B. Annweiler, Marc D. Young | tannweiler@greerherz.com |
| Hahn & Hessen LLP | Attn: Janine M. Figueiredo, Esq. | jfigueiredo@hahnhessen.com |
| Halperin Battaglia Benzija, LLP | Attn: Donna H. Lieberman, Esq. | dlieberman@halperinlaw.net |
| Hanesbrands Inc | Attn: Joia Johnson, Chief Administrative Officer and General Counsel | joia.johnson@hanes.com<br>howard.upchurch@hanes.com |
| Harris Beach PLLC | Attn: Kevin Tompsett, Esq. | ktompsett@harrisbeach.com |
| Herrick, Feinstein LLP | Attn: Stephen B. Selbst | sselbst@herrick.com |
| Higgs Fletcher & Mack LLP | Attn: Martin A. Eliopulos, Esq. | elio@higgslaw.com |
| Holland & Knight LLP | Attn: Barbra R. Parlin | barbra.parlin@hklaw.com |
| Hunton Andrews Kurth LLP | Attn: Brett L. Gross | bgross@HuntonAK.com |

| NAME | NOTICE NAME | EMAIL |
|------|-------------|-------|
| Husch Blackwell LLP | Attn: Lynn H. Butler | lynn.butler@huschblackwell.com |
| Internal Revenue Service | Attn: Centralized Insolvency Operation | Mimi.M.Wong@irscounsel.treas.gov |
| Internal Revenue Service | Attn: Centralized Insolvency Operation | Mimi.M.Wong@irscounsel.treas.gov |
| Judith Elkin PLLC | Attn: Judith Elkin | elkinj@mac.com |
| Kelley Drye & Warren LLP | Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., T. Charlie Liu, Esq. | KDWBankruptcyDepartment@KelleyDrye.com bfeder@kelleydrye.com cliu@kelleydrye.com |
| Klestadt Winters Jureller Southard & Stevens, LLP | Attn: Sean C. Southard, Lauren C. Kiss | ssouthard@klestadt.com lkiss@klestadt.com |
| Kurtzman \| Steady, LLC | Attn: Jeffrey Kurtzman | kurtzman@kurtzmansteady.com |
| Langley & Banack, Incorporated | Attn: David S. Gragg | dgragg@langleybanack.com |
| Lasser Hochman, L.L.C. | Attn: Richard L. Zucker | rzucker@lasserhochman.com |
| Latham & Watkins LLP | Attn: Marc A. Zelina | marc.zelina@lw.com |
| Latham & Watkins LLP | Attn: Peter M. Gilhuly, Ted A. Dillman | peter.gilhuly@lw.com ted.dillman@lw.com |
| Law Office of Gilbert A. Lazarus, PLLC. | Attn: Gilbert A. Lazarus | gillazarus@gmail.com |
| Law Office of Kevin S. Neiman, PC | Attn: Kevin S. Neiman | kevin@ksnpc.com |
| Lazarus & Lazarus, P.C. | Attn: Harlan M. Lazarus | hlazarus@lazarusandlazarus.com harlan.lazarus@gmail.com |
| LeCrairRyan, PLLC | Attn: Ilan Markus and Niclas A. Ferland | ilan.markus@leclairryan.com niclas.ferland@leclairryan.com |
| Linebarger Goggan Blair & Sampson, LLP | Attn: Elizabeth Weller | dallas.bankruptcy@publicans.com |
| Linebarger Goggan Blair & Sampson, LLP | Attn: John P. Dillman | houston_bankruptcy@publicans.com |

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Linebarger Goggan Blair & Sampson, LLP | Attn: David G. Aelvoet | sanantonio.bankruptcy@publicans.com |
| Linowes and Blocher LLP | Attn: John T. Farnum, Esq. | jfarnum@linowes-law.com |
| Locke Lord LLP | Attn: Brian A. Raynor, Aaron C. Smith, David W. Wirt | braynor@lockelord.com<br>asmith@lockelord.com<br>dwirt@lockelord.com |
| Lowenstein Sandler LLP | Attn: Bruce Buechler | bbuechler@lowenstein.com |
| McCreary, Veselka, Bragg & Allen, P.C. | Attn: Lee Gordon, Tara LeDay | tleday@mvbalaw.com |
| McGlinchey Stafford, PLLC | Attn: Brian S. McGrath, Kristen D. Romano | bmcgrath@mcglinchey.com<br>kromano@mcglinchey.com |
| McGlinchey Stafford, PLLC | Attn: Mark J. Chaney, Esq., Richard A. Aguilar, Esq., Rudy J. Cerone, Esq. | mchaney@mcglinchey.com<br>raguilar@mcglinchey.com<br>rcerone@mcglinchey.com |
| Missouri Department of Revenue, Bankruptcy Unit | Attn: Steven A. Ginther, Special Assistant Attorney General | sdnyecf@dor.mo.gov |
| Morgan, Lewis & Bockius LLP | Attn: Laura McCarthy | laura.mccarthy@morganlewis.com |
| Morgan, Lewis & Bockius LLP | Attn: Neil E. Herman | neil.herman@morganlewis.com |
| Morris James LLP | Attn: Stephen M. Miller | smiller@morrisjames.com |
| Morris, Nichols, Arsht & Tunnell LLP | Attn: Curtis S. Miller, Joseph C. Barsalona II | cmiller@mnat.com<br>jbarsalona@mnat.com |
| Morrison Cohen LLP | Attn: Joseph T. Moldovan, Robert K. Dakis | bankruptcy@morrisoncohen.com |
| Munsch Hardt Kopf & Harr, P.C. | Attn: Deborah M. Perry | dperry@munsch.com |
| National Association of Attorneys General | Attn: Karen Cordry | kcordry@naag.org |
| Nelson Mullins Riley & Scarborough LLP | Attn: Jody A. Bedenbaugh | jody.bedenbaugh@nelsonmullins.com |
| Nelson Mullins Riley & Scarborough LLP | Attn: Shane G. Ramsey | shane.ramsey@nelsonmullins.com |

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Norton Rose Fulbright US LLP | Attn: Howard Seife, Esq., & Christy Rivera, Esq. | howard.seife@nortonrosefulbright.com christy.rivera@nortonrosefulbright.com |
| Office of the Texas Attorney General | Attn: Rachel R. Obaldo, Assistant Attorney General | rachel.obaldo@oag.texas.gov |
| Office of The United States Trustee for Region 2 | Attn: Paul Schwartzberg, Richard Morrissey | richard.morrissey@usdoj.gov paul.schwartzberg@usdoj.gov |
| OKeefe & Associates Law Corporation, P.C. | Attn: Sean A. O'Keefe | sokeefe@okeefelc.com |
| Paco (China) Garment Ltd | Attn: Lily Wang | lily@pacogarment.com |
| Parker Poe Adams & Bernstein LLP | Attn: Kiah T. Ford IV | chipford@parkerpoe.com |
| Paul Hastings LLP | Attn: Leslie A. Plaskon, Esq., Andrew V. Tenzer, Esq., Shlomo Maza, Esq. | leslieplaskon@paulhastings.com andrewtenzer@paulhastings.com shlomomaza@paulhastings.com |
| Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | Attn: Ebony Cobb | ecobb@pbfcm.com |
| Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | Attn: Laura J. Monroe | lmbkr@pbfcm.com |
| Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | Attn: Owen M. Sonik | osonik@pbfcm.com |
| Pick & Zabicki LLP | Attn: Douglas J. Pick | dpick@picklaw.net |
| Pierce McCoy, PLLC | Attn: Jonathan A. Grasso | jon@piercemccoy.com |
| Price Meese Shulman & D'Arminio, P.C. | Attn: Rick A. Steinberg | rsteinberg@pricemeese.com |
| Prime Clerk LLC | Attn: Herb Baer, Richard M. Allen | searsteam@primeclerk.com serviceqa@primeclerk.com |
| Procopio, Cory, Hargreaves & Savitch LLP | Attn: Gerald P. Kennedy | gerald.kennedy@procopio.com |
| Pryor & Mandelup, L.L.P. | Attn: Robert L. Pryor | rlp@pryormandelup.com |
| Reid and Riege, P.C. | Attn: Charles J. Filardi, Jr. | cfilardi@rrlawpc.com |

7

| NAME | NOTICE NAME | EMAIL |
|------|-------------|-------|
| Reiss+Preuss LLP | Attn: Guy A. Reiss, Erik Tikkanen | greiss@reisspreuss.com<br>etikkanen@reisspreuss.com |
| Robert E. Michael & Associates PLLC | Attn: Robert E. Michael, Aaron Hume | Robert.e.michael.esq@gmail.com<br>Aron.hume@gmail.com |
| Robinson Brog Leinwand Greene Genovese & Gluck P.C. | Attn: Fred B. Ringel, Esq. | fbr@robinsonbrog.com |
| Ropes & Gray LLP | Attn: Gregg M. Galardi, Kimberly J. Kodis, Sam N. Ashuraey | gregg.galardi@ropesgray.com<br>kimberly.kodis@ropesgray.com<br>sam.ashuraey@ropesgray.com |
| Ropes & Gray LLP | Attn: James M. Wilton, Patricia I. Chen | james.wilton@ropesgray.com<br>patricia.chen@ropesgray.com |
| Rosen & Associates, P.C. | Attn: Sanford P. Rosen, Esq. | srosen@rosenpc.com |
| S&D Law | Attn: Steven W. Kelly | skelly@s-d.com |
| Sahn Ward Coschignano, PLLC | Attn: Robert A. Abiuso, Matthew C. McCann | mmccann@swc-law.com<br>rabiuso@swc-law.com |
| Sakar | Attn: Jay Weinblatt | jweinblatt@sakar.com |
| Satterlee Stephens LLP | Attn: Christopher R. Belmonte, Abigail Snow, Pamela Bosswick | cbelmonte@ssbb.com<br>asnow@ssbb.com<br>pbosswick@ssbb.com |
| Saul Ewing Arnstein & Lehr LLP | Attn: Dipesh Patel | dipesh.patel@saul.com |
| Saul Ewing Arnstein & Lehr LLP | Attn: Phillip M. Hudson III, Carmen Contreras-Martinez | phil.hudson@saul.com<br>carmen.contreras-martinez@saul.com |
| Securities & Exchange Commission | Attn: Secretary of the Treasury | secbankruptcy@sec.gov<br>NYROBankruptcy@sec.gov |
| Securities & Exchange Commission – NY Office | Attn: Bankruptcy Department | bankruptcynoticeschr@sec.gov |
| Seyfarth Shaw LLP | Attn: Edward M. Fox | emfox@seyfarth.com |
| Shearman & Sterling LLP | Attn: Fredric Sosnick, Sara Coelho | fsosnick@shearman.com<br>sara.coelho@shearman.com |

8

| NAME | NOTICE NAME | EMAIL |
|------|-------------|-------|
| Sheppard Mullin Richter & Hampton, LLP | Attn: Alan M. Feld, Esq., Ted Cohen, Esq. | afeld@sheppardmullin.com<br>tcohen@sheppardmullin.com |
| Shutts & Bowen LLP | Attn: Ryan C. Reinert, Esq. | rreinert@shutts.com |
| Simon Property Group, L.P. | Attn: Ronald M. Tucker, Esq. | rtucker@simon.com |
| Singer & Levick, P.C. | Attn: Michelle E. Shriro | mshriro@singerlevick.com |
| Skadden, Arps, Slate, Meagher & Flom LLP | Attn: Paul Leake, Esq., Shana Elberg, Esq., and George R. Howard, Esq. | paul.leake@skadden.com<br>shana.elberg@skadden.com<br>george.howard@skadden.com |
| Skadden, Arps, Slate, Meagher & Flom LLP | Attn: Paul Leake, Esq., Shana Elberg, Esq., and George R. Howard, Esq. | Paul.Leake@skadden.com<br>Shana.Elberg@skadden.com<br>George.Howard@skadden.com |
| Skierski Jain PLLC | Attn: Doug Skierski, Kristin H. Jain | enotices@skijain.com |
| Smiley Wang-Ekvall, LLP | Attn: Lei Wang Ekvall, Philip E. Strok | pstrok@swelawfirm.com |
| Sorenson Van Leuven, PLLC | Attn: James E. Sorenson | bk@svllaw.com |
| SRAC Medium Term Notes | Attn: Mary A. Callahan Vice President | mary.callahan@bnymellon.com |
| SRAC Unsecured Notes | Attn: Mary A. Callahan Vice President | mary.callahan@bnymellon.com |
| Stark & Stark, P.C. | Attn: Thomas S. Onder, Joseph H. Lemkin | tonder@stark-stark.com<br>jlemkin@stark-stark.com |
| Stevens & Lee, P.C. | Attn: Constantine D. Pourakis | cp@stevenslee.com |
| Streusand, Landon, Ozburn & Lemon, LLP | Attn: Sabrina L. Streusand | streusand@slollp.com |
| Sullivan & Cromwell LLP | Attn: Andrew G. Dietderich, Brian D. Glueckstein, David R. Zylberberg | dietdericha@sullcrom.com<br>zylberbergd@sullcrom.com |
| Tannenbaum Helpern Syracuse & Hirschtritt LLP | Attn: Michael J. Riela | Riela@thsh.com |

| NAME | NOTICE NAME | EMAIL |
|------|-------------|-------|
| Taubman Landlords | Attn: Andrew S. Conway | aconway@taubman.com |
| The Pension Benefit Guaranty Corporation (PBGC) | Attn: Judith Starr, Kartar S. Khalsa, William McCarron, Jr., & Adi Berger, Director | Starr.Judith@pbgc.gov<br>mccarron.william@pbgc.gov<br>efile@pbgc.gov |
| Thompson Hine LLP | Attn: Curtis L. Tuggle | Curtis.Tuggle@ThompsonHine.com |
| TJ Tianxing Kesheng Leather Products Co Ltd | Attn: Power Wang | powerwangtxks@vip.126.com |
| TN Dept of Revenue | Attn: Herbert H. Slatery III, Marvin E. Clements, Jr. | AGBankNewYork@ag.tn.gov |
| U.S. Bank National Association | Attn: Jose A Galarza, Vice President, Global Structured Finance | jose.galarza@usbank.com |
| US Attorney for Southern District of New York | Attn: Bankruptcy Division | David.Jones6@usdoj.gov<br>Jeffrey.Oestericher@usdoj.gov<br>Joseph.Cordaro@usdoj.gov<br>Carina.Schoenberger@usdoj.gov<br>Lawrence.Fogelman@usdoj.gov<br>Peter.Aronoff@usdoj.gov<br>Linda.Riffkin@usdoj.gov |
| Vedder Price P.C. | Attn: Kevin J. Etzel | ketzel@vedderprice.com |
| Vedder Price P.C. | Attn: Michael L. Schein | mschein@vedderprice.com |
| Waldrep LLP | Attn: Thomas W. Waldrep, Jr. | notice@waldrepllp.com |
| Warner Norcross + Judd LLP | Attn: Gordon J. Toering | gtoering@wnj.com |
| Weil, Gotshal & Manges LLP | Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Garrett A. Fail, Sunny Singh | ray.schrock@weil.com<br>garrett.fail@weil.com<br>jacqueline.marcus@weil.com<br>sunny.singh@weil.com<br>JeriLeigh.Miller@weil.com<br>jessica.liou@weil.com<br>Paloma.VanGroll@weil.com |
| Weiss Zarett Brofman Sonnenklar & Levy, P.C. | Attn: Michael D. Brofman, Esq. | mbrofman@weisszarett.com |
| Whiteford, Taylor & Preston LLC | Attn: Stephen B. Gerald | sgerald@wtplaw.com |

13 of 15

| NAME | NOTICE NAME | EMAIL |
|------|-------------|-------|
| Williams Legal Advisory Group, LLC | Attn: Amy M. Williams | awilliams@williamsadvisors.com |
| Willkie Farr & Gallagher LLP<br>. | Attn: Alan J. Lipkin, Gabriel Brunswick | alipkin@willkie.com<br>gbrunswick@willkie.com |
| Wilmington Trust, National Association | Attn: Steven Cimalore, Vice President | scimalore@wilmingtontrust.com |
| Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP | Attn: Simon Aron | saron@wrslawyers.com |
| Wyatt, Tarrant & Combs, LLP | Attn: Mary L. Fullington | mfullington@wyattfirm.com |

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 100386/18

-----------------------------------------------------------------------------x

BRIAN COKE NG

JUDICIAL SUBPOENA
DUCES TECUM

                         Plaintiffs,
                     -against-

KMART PHARMACY
KMART HOLDING CORPORATION
SEARS HOLDINGS CORPORATION
SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.
                         Defendants.

-----------------------------------------------------------------------------x



TO:     Kmart Pharmacy
        770 Broadway
        New York, N.Y. 10003

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you produce before
Hon. Presiding Justice at New York County Supreme Court, at 60 Centre Street, New York, New York 10007
on or before the 20th day of July 2018, at 9:30 o' clock, in the forenoon, on the part of the Plaintiff, the
following records pertaining to: **BRIAN COKE NG (patient), D/O/B:** ▮▮▮▮▮▮

**Certified copy of each and every part of medication profile and all records maintained relating to the
Plaintiff Brian Coke Ng, including all reports, notes, mental health information, known allergies and
drug reactions, chronic diseases, list of medications and relevant devices and other information reported
to the pharmacist appropriate for counseling an individual regarding use of prescription and over-the-
counter drugs; and a Certified copy of Kmart Pharmacy Notice of Privacy Practices with effective
date September 2,2014, as well as a Certified copy with effective date January 6, 2015 respectively.**

**(Pursuant to the Civil Practice Law and Rules Section 2301, all papers or other items delivered to the
court pursuant to this subpoena shall be accompanied by a copy of this subpoena.)**

Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the
persons on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages
sustained by your failures to comply.

WITNESS. Honorable *David B. Cohen* one of the Justices of said Court, at 60 Centre Street, New York,
New York 10007 the 29th day of June, 2018.

**NO APPEARANCE REQUIRED**
Please forward medication profile
Records along with the attached
Certification of Business Records
Sworn and signed to: New York
County Supreme Court
Subpoenaed Records Room
60 Centre Street, Room 145-M
New York, New York 10007

Brian Coke Ng, (Plaintiff)
40 Ann Street
New York, N.Y. 10038
Tel: 646.318.5571

SO ORDERED

**HON. DAVID B. COHEN**
**J.S.C.**





## *AUTHORIZATION FOR USE AND DISCLOSURE*

MUST BE FILLED OUT COMPLETELY

BY SIGNING THIS FORM I AM INSTRUCTING KMART PHARMACY TO DISCLOSE MY PERSONAL HEALTH INFORMATION AS FOLLOWS:

Patient Name: **BRIAN COKE NG**　　　　　　a/k/a:

Date of Birth: ~~[redacted]~~　　　　Date of Death (if applicable): **N/A**

Address: **40 Ann Street, New York, N.Y. 10038**

I voluntarily authorize and permit disclosure of any and all medical records including pharmacy prescription and expense records for the time period of: **January 2010** through **June 2018** (NOTE: We do **NOT** have records over 10 years old) **a**
co **NOTICE OF PRIVACY PRACTICES Relative To My Medication Profile/records**
If my records contain information about drug and/or alcohol abuse, mental health, HIV, AIDS and or sexually transmitted disease, I agree (b its release, **only if initialed below** (person signing Authorization **must INITIAL** those for which permission to release is given):

Drug Abuse _____　　HIV/AIDS _____　　Sexually Transmitted Disease _____
Alcohol Abuse _____　Mental Health **✓**　Sickle Cell Anemia _____

(2) PLEASE SEND MY RECORDS TO ☐ ME OR TO ☐
**Kmart Notice of Privacy Practices**
Name: **New York County Supreme Court**
**Subpoenaed Records Room**　　Complete Address: **60 Centre Street, Room 145 N**
**New York, N.Y. 10007**

The purpose of this request to release and or disclose the personal health information described above is

☐ Pending litigation, or ☐ Insurance Submission, or ☐ Taxes, or ☐ Other (describe):

This Authorization will expire on **during Pending Litigation or June 2028** (If I fail to specify a date this authorization will automatically expire 90 days from the day of my signature)

I understand that 1) I can revoke this Authorization at any time by giving my written revocation to the Kmart Pharmacy. My revocation is not effective as to disclosures already made and actions already taken in reliance upon this Authorization; 2) Kmart Pharmacy may NOT condition treatment, enrollment in the health plan or eligibility for benefits on whether I sign this Authorization; 3) I am authorizing disclosure of information protected under federal law; 4) This information, once disclosed, may be subject to re-disclosure by the recipient and no longer be protected by state or federal law; 5) I have the right to receive a copy of the authorization; and 6) A photocopy or facsimile of this authorization shall have the same authority as the original and may be substituted in its place.

By my signature I certify that the information provided is true and complete. If signed by the parent or legal guardian, I certify that the patient is not [varies by individual state] married, a member of the armed forces or otherwise an emancipated minor. I understand that Kmart Pharmacy may be prohibited by law from providing certain health information and that this information will be redacted from the health information Kmart provides me.

Signature _[signature]_　　　　　Date **June 29, 2018**

Printed Name **BRIAN COKE NG**　　　**Patient**
　　　　　　　　　　　　　　　Your Relationship to Patient* (Must Be Completed)

*NOTICE    ALL AUTHORIZATIONS EXECUTED BY PERSONS OTHER THAN THE PATIENT ARE REQUIRED TO BE REVIEWED BY THE LAW DEPARTMENT AT CORPORATE HEADQUARTERS. PURSUANT TO THE PROVISIONS OF THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT, 45 CFR §164.500, ET SEQ., UNLESS YOU ARE A PARENT OF AN UNEMANCIPATED MINOR PATIENT, ALL PERSONS WHO EXECUTE THIS AUTHORIZATION ON BEHALF OF THE PATIENT ARE REQUIRED TO PROVIDE DOCUMENTATION WHICH LEGALLY EMPOWERS THEM WITH THE AUTHORITY TO RELEASE THE PERSONAL HEALTH INFORMATION SOUGHT. FAILURE TO PROVIDE SUCH DOCUMENTATION WILL RESULT IN A DENIAL OF THE REQUEST TO RELEASE RECORDS.

### PHARMACIST MUST COMPLETE THIS SECTION:

VERIFICATION OF ID OF PERSON SIGNING AUTHORIZATION:　　PHARMACISTS ACKNOWLEDGEMENT OF ID VERIFICATION:

☐ Driver's License　☒ Passport　☐ Military　　Pharmacist Full Name: _____
☐ State I.D.　☐ School I.D. (Minor Only)
　　　　　　　　　　　　　　　　　　Pharmacist Signature: _____
ID Number & State: _____
　　　　　　　　　　　　　　　　　　Date ID Verified: _____

SHC Pharm-001 Genl (Rev. 6/12)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 100386/18

---------------------------------------------------------------------x

BRIAN COKE NG

**CERTIFICATION OF
BUSINESS RECORDS**

Plaintiffs,

-against-

KMART PHARMACY
KMART HOLDING CORPORATION
SEARS HOLDINGS CORPORATION
SEDGWICK CLAIMS MANAGEMENT SERVICES. INC.

Defendants.

---------------------------------------------------------------------x

STATE OF NEW YORK

COUNTY OF _____

I _____, the undersigned herein, being duly sworn, deposes and says:

1.      I am the duly authorized custodian or other qualified witness of Mr. Brian Coke Ng's medication profile/records. and the Kmart Pharmacy Notice of Privacy Practices to which maintained as business records of Kmart Pharmacy #7777, and located at 770 Broadway, New York, N.Y. 10003, and have the authority to make the certification.

2.      To the best of my knowledge. after reasonable inquiry. Mr. Brian Coke Ng's medication profile/records. and Kmart Pharmacy Notice of Privacy Practices bearing effective date:_____, and bearing the location of: New York or the copies thereof are accurate and genuine versions of the documents described in the subpoena duces tecum that are in the possession, custody or control of Kmart Pharmacy #7777, located at 770 Broadway, New York, N.Y. 10003.

3.      To the best of my knowledge, after reasonable inquiry, Mr. Brian Coke Ng's medication profile/records, and Kmart Pharmacy Notice of Privacy Practices bearing effective date(s):_____, and bearing the location of: New York. represent all the documents described in the subpoena duces tecum. except that the following documents are missing for the reason stated:_____

4.      Mr. Brian Coke Ng's medication profile/records, and Kmart Pharmacy Notice of Privacy Practices bearing effective date(s):_____, and bearing the location of: New York or copies produced were made by the personnel or staff of the Kmart Pharmacy business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter. and that it was the regular course of business to make such records.

_____
Affiant's Signature

SWORN TO AND SUBSCRIBED before me on this the _____ day of _____, 2018.

SEAL

_____
Notary Public
My commission expires: _____

# EXHIBIT   2

2  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF NEW YORK:   CIVIL TERM: PART 58
3  ------------------------------------------X
   BRIAN COKE NG,
4
                         Plaintiff,
5                                                 Index No.
                  -against-                       100386/2018
6
   KMART PHARMACY,
7
                         Defendant.
8  ------------------------------------------X
   Transcript of Motion Proceedings
9                          New York Supreme Court
                           111 Centre Street
10                         New York, New York 10007
                           September 20, 2018
11

12 B E F O R E:

13            HON. DAVID B. COHEN, Justice of the Supreme Court

14

   A P P E A R A N C E S:
15

   BRIAN COKE NG
16 Plaintiff Pro Sé
   40 Ann Street
17 New York, New York 10038

18

   SOBEL PEVZNER, LLC
19 Attorneys for the Defendant
   30 Vesey Street, 8th Floor
20 New York, New York 10007
   BY: HARSHAL JANI, ESQ.

21

22

23

24            *    *    *    *    *    *    *    *    *    *    *    *
                           LAURA L. LUDOVICO
25                         Senior Court Reporter
                         60 Centre Street - Room 420
26                         New York, New York 10007

1                               Proceedings

2                    THE COURT:  Ng versus Kmart.

3                    Note your appearances, please, for the record.

4                    Counsel.

5                    MR. JANI:  MY name is Harshal Jani with the law

6       firm of Sobel Pevzner for the Defendants Kmart Pharmacy,

7       Kmart Holding Corporation --

8                    THE COURT OFFICER:  We're on the record.

9                    THE COURT:  Tell me your name.

10                   MR. COKE NG:  Brian Coke Ng.

11                   THE COURT:  Okay.  Your motion is for contempt?

12                   MR. COKE NG:  Yes, Your Honor.

13                   THE COURT:  Okay.  And what's the contempt you

14      claim, Mr. Coke?

15                   MR. COKE NG:  Well, I've been impeded from my

16      records.  I am not able to have my rights to my record --

17      medical record since 2015.

18                   THE COURT:  These are your pharmaceutical records

19      from Kmart?

20                   MR. COKE NG:  Yes, medication record.

21                   THE COURT:  Specifically, from Kmart Pharmacy?

22                   MR. COKE NG:  Yes.

23                   THE COURT:  Why do you need your medication

24      records?

25                   MR. COKE NG:  I need my medication record in

26      order to prove my case.  I cannot prove my case without a

1                              Proceedings

2       certified copy of my records.

3                THE COURT:  Have you made a demand for those

4       records?

5                MR. COKE NG:  Yes, I have requested since 2015.

6       On January 13, 2015 I received a copy of my record and it

7       was attested to.  However, upon receiving a copy of the

8       records, I recognized that the last date of entry was

9       incorrect, and the pharmacist who had seen me, and the date

10      that -- last date of entry is removed and replaced by

11      another pharmacist.

12               I addressed that with the pharmacist and I was

13      advised to put my dispute in writing, which I did the same

14      day, January 13 2015.  I went back to the pharmacy and I

15      gave her a copy of the dispute regarding the falsification

16      and the alteration.

17               THE COURT:  So what you're saying is they

18      provided you all the records you asked?

19               MR. COKE NG:  No.

20               THE COURT:  They provided you records?

21               MR. COKE NG:  Partial, yes.

22               THE COURT:  They certified those records, but

23      you're claiming they're altered, is that what you're

24      claiming?

25               MR. COKE NG:  They're altered and it was attested

26      to.

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  Okay.  So it was attested to? |
| 3 | MR. COKE NG:  The record. |
| 4 | THE COURT:  Okay.  So you're claiming the records |
| 5 | they sent you weren't accurate? |
| 6 | MR. COKE NG:  It wasn't accurate, and by law -- I |
| 7 | started the -- the last date of entry should have been |
| 8 | September 17, 2010.  I have -- the law required Kmart to |
| 9 | maintain the records for five years.  I went there |
| 10 | January 13, 2015 and the record was altered and falsified. |
| 11 | I take it up with them, like I have indicated |
| 12 | earlier, provided a letter to the pharmacy, as she had |
| 13 | requested I put the dispute in writing.  And the following |
| 14 | day, January 14, 2015, I mail out a copy of the dispute. |
| 15 | THE COURT:  And did you get the records again? |
| 16 | MR. COKE NG:  I went there in 2017 and this time |
| 17 | my address was changed and I received -- |
| 18 | THE COURT:  Did you move? |
| 19 | MR. COKE NG:  No, I did not move.  I did not |
| 20 | request any changes of the records. |
| 21 | The reason being for the records I wanted was to |
| 22 | pursue a matter related to an injury.  Well, I wouldn't say |
| 23 | injury, it was more like a misfill of my prescription, and |
| 24 | I take it up with them.  I wrote a letter. |
| 25 | THE COURT:  Were you harmed in some way? |
| 26 | MR. COKE NG:  Well, I was.  I was directed in the |

1                           Proceedings

2      prescription the wrong directions and they misfilled it,

3      the record.

4                   THE COURT:  Did they give you the right

5      prescription with the wrong instructions or did they give

6      you the right --

7                   MR. COKE NG:  Yes, wrong instruction and I

8      overtook the medicine.

9                   THE COURT:  Okay.  And?

10                  MR. COKE NG:  And I develop a serotinian[sic] and

11     I was to see doctor and everything to that effect.

12                  So shortly thereafter I wrote a letter, a

13     complaint --

14                  THE COURT:  So how much are your damages?

15                  MR. COKE NG:  For my damages?

16                  THE COURT:  Yes, how much did this doctor cost

17     you?

18                  MR. COKE NG:  How much?

19                  THE COURT:  How much did this doctor cost you?

20                  MR. COKE NG:  Well --

21                  THE COURT:  The one that you wouldn't have had to

22     see if not for the medication, according to your claim.

23                  MR. COKE NG:  It wasn't for the medication, it

24     was submitted to Workers' Compensation at the time because

25     I had a preexisting condition at the time when I was

26     taking --

                        Laura L. Ludovico, SCR

1                              Proceedings

2              THE COURT:  Did Workers' Comp pay for that

3    doctor?

4              MR. COKE NG:  Yes, I believe so.

5              THE COURT:  So you had no out-of-pocket loss or

6    you had a --

7              MR. COKE NG:  I did have some out-of-pocket loss.

8              THE COURT:  How much?

9              MR. COKE NG:  That out-of-pocket loss, I don't

10   have that record with me, but I could provide it to the

11   Court later.

12             THE COURT:  Was it more than $1,000?

13             MR. COKE NG:  No.

14             THE COURT:  How much?

15             MR. COKE NG:  It was perhaps, I would say closer

16   to three, $400, but that's not what --

17             THE COURT:  Okay.  Did you suffer any other

18   injury?

19             MR. COKE NG:  I had a latent effect -- a latent

20   injury, which I did not claim at the time because the

21   doctor did not found at the time -- he did not found any

22   injury that I could have make a claim, but I did make a

23   complaint to Kmart that --

24             THE COURT:  And you have an expert who will

25   confirm that this latent injury was caused by something the

26   pharmacy did wrong?

                        Laura L. Ludovico, SCR

1                          Proceedings

2          MR. COKE NG:  Well, the doctor that I have seen

3     recently, I think that was in 2017, I had -- I saw a doctor

4     because of movement disorder and I didn't -- the doctor --

5     I follow up, I still on medication until today, but I don't

6     know if he's expert in this field.  She's[sic] a

7     neurologist.  I don't know if -- I'm not certain if he is

8     specified in this field, but that's not the claim that I

9     wanted to bring to court.

10         THE COURT:  Okay.  What's the claim?

11         MR. COKE NG:  My claim -- my claim is fiduciary

12    duty breach because at the time when I was given the

13    prescription, I was entitled to a Notice of Privacy

14    Practice and I was not given that.  I was given that Notice

15    of Privacy Practice January 13, 2015.

16         THE COURT:  Okay.  Did they breach your privacy

17    in some way?

18         MR. COKE NG:  Yes, because I understood from --

19    the time when I got the Notice of Privacy Practice, that

20    was in January 13, 2015, I realized that where payment

21    should have been made, I paid copayments and I gave them

22    also my Medicaid, my Medicaid card, and I later found out

23    that Medicaid had advised me that they did not receive any

24    claim.  So it went to someone else, which I never give any

25    consent for my medicine to be paid for by anybody, but

26    Medicaid.

                     Laura L. Ludovico, SCR

1                        Proceedings

2          So I also understand that there was another

3     company that's showing up on my receipt, which I questioned

4     that company, what was the name of this company that --

5     actually, Vidal and Rodriguez, that showed up on the

6     receipt, and the pharmacist had indicated to me that it was

7     a marketing company.

8          THE COURT:  Okay.

9          MR. COKE NG:  So having my records -- my mental

10    records forwarded to the various parties, which I did not

11    give consent to, I find very disturbing because I want my

12    records to keep private and --

13         THE COURT:  Thank you, Mr. Coke Ng.

14         Counsel.

15         MR. JANI:  Just briefly.

16         THE COURT:  I have not signed the Order to Show

17    Cause.  It came in a day or two days ago.  I saw that the

18    case was on for conference.  I said I'm going to hold it

19    and see what happens at the conference.  Maybe we can

20    resolve this.

21         MR. JANI:  Yes.  Today is the first day I was on

22    notice of the Order to Show Cause.  I did have an

23    opportunity to review it.  That Order to Show Cause does

24    seek Mr. Coke's medical profile, which, as he said, he's

25    been provided at least three times before, 2015, 2017, and

26    as early as June of 2018.

                     Laura L. Ludovico, SCR

1                    Proceedings

2          THE COURT:  You understand this the same way,

3  though, with respect to the medical records issue that

4  Mr. Coke is not disputing that he received medical records

5  with a certification, he's just claiming that they've been

6  altered by Kmart Pharmacy; is that right?

7          MR. COKE NG:  Correct, correct.

8          THE COURT:  Okay.

9          MR. JANI:  And in terms of the subpoena --

10         THE COURT:  What's your position on that?

11         MR. JANI:  That it's purely speculative.

12  Mr. Coke's summons and complaint goes into data breaches of

13  IBM and also alterations of his actual medical profile

14  regarding dates and doctors.  It's our position that it's

15  purely speculative.  There's been nothing in the record

16  that truly puts forth and establishes that there was any

17  breach of privacy or any alterations regarding his medical

18  records in terms of what we were --

19         THE COURT:  But that's his -- to the extent

20  that's the claim, that seems like a factual issue for the

21  trier.

22         MR. JANI:  Correct.

23         THE COURT:  Right?

24         MR. JANI:  Yes.

25         THE COURT:  And not something that would be the

26  basis of a contempt motion.

1                          Proceedings

2              MR. JANI:  Correct.

3              THE COURT:  You complied with the -- were there

4    subpoenas in the past?  There were subpoenas in the past,

5    right?

6              MR. JANI:  No.

7              THE COURT:  Just requests for the record, you

8    complied and you gave him the records, is that your

9    contention?

10             MR. JANI:  Yes.

11             THE COURT:  It's just a claim that they were

12   altered, which is something Mr. Coke could potentially

13   raise with the trier of fact.

14             MR. JANI:  Agreed, Your Honor.

15             THE COURT:  Okay.  And what about this claim that

16   his privacy was somehow breached, is that your

17   understanding, that that's ultimately the main claim in

18   this action?

19             MR. JANI:  In theory, I think that the main claim

20   as well as Plaintiff has --

21             THE COURT:  So that makes his medical records

22   issue seem to be somewhat of an on-the-side issue, it

23   doesn't go to the direct merits of the case or it does?

24             MR. JANI:  From what I understand, it seems to be

25   two kind of issues; an issue regarding his privacy or a

26   contention that his privacy records were distributed and

                     Laura L. Ludovico, SCR

1                              Proceedings

2        also that his medical profile, in a sense, was altered and

3        there was a breach of fiduciary duty.  But also, our

4        contention stands true that those are speculative and

5        there's establishment of that.

6              In terms of the subpoena that I did read today, I

7        think those are discovery issues regarding providing those

8        requested documents and attesting to those documents.  The

9        issue is regarding alleged falsification, which I think is

10       an issue for the trier.

11             MR. COKE NG:  I would like to add --

12             THE COURT:  Go ahead.

13             MR. COKE NG:  -- that -- I would like to add that

14       on March 24, 2017 I visit Kmart and requested a copy to

15       compare that record with the previous one I had in 2015.

16       The address was changed.

17             The pharmacy had advised me at the time that she

18       had no idea who had changed my address because when she

19       started the work in June of 2015, the record was already

20       changed.  That's what the pharmacist had advised me.

21       However, upon further receipt of my medication records,

22       I've seen where they -- the pharmacy counsel that I

23       received, that they provide me, my original counsel, does

24       not read the same as the one in Kmart that they provide me

25       and that make it very falsified and fraudulent.

26             THE COURT:  Let me stop you.

                         Laura L. Ludovico, SCR

1                          Proceedings

2                    Counsel, now, we're on for conference here,

3        right?

4                    MR. JANI:   Correct.

5                    THE COURT:   Do we have a conference order or

6        you're waiting to see what I do with the Order to Show

7        Cause?

8                    MR. JANI:   I would also request an adjournment.

9        Mr. Coke has moved to amend the caption to add three other

10       defendants, as well, which are pharmaceutical companies and

11       middlemen between pharmacy and actual -- I don't even know,

12       but there's John Does and other defendants that are being

13       added, as well as additional claims against my client for

14       aiding and abetting --

15                   THE COURT:   Now, you want to make a motion?

16                   MR. JANI:   That motion is still being returnable.

17       It's in eFile submission on 10/2.

18                   THE COURT:   So you made a motion?

19                   MR. COKE NG:   No, I made a motion.

20                   MR. JANI:   He made a motion to amend and I want

21       to oppose that motion, so I would like the pre-note

22       conference and I would request that that be adjourned to

23       allow time for at least those issues to be resolved.

24                   THE COURT:   A date in December?

25                   MR. JANI:   That's fair, Your Honor.

26                   MR. COKE NG:   I may add also --

                          Laura L. Ludovico, SCR

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  Yes, Mr. Coke. |
| 3 | MR. COKE NG:  Yes, sir.  I have a copy of the |
| 4 | record for the Court.  I can provide the Court with a copy |
| 5 | of my originals that I had received from Kmart and for the |
| 6 | Court to have an opportunity to compare these records and |
| 7 | see the various alterations and falsification in it, and |
| 8 | I'm happy to provide the Court for the Court to take a look |
| 9 | at it. |
| 10 | THE COURT:  Okay. |
| 11 | (Document was handed to the Court.) |
| 12 | THE COURT:  Thank you, everyone. |
| 13 | Okay.  Mr. Cook Ng, I'm not going to sign your |
| 14 | Order to Show Cause.  The first thing I'll say is that an |
| 15 | Order to Show Cause for contempt is required to have |
| 16 | specific language and present in a specific way.  You don't |
| 17 | have that. |
| 18 | But separate and apart from that, in everything I |
| 19 | hear today, I'm hearing that Kmart provided you the |
| 20 | records, however, that your claim is that the records have |
| 21 | been altered in some way, and that is, at best, an issue |
| 22 | for the trier of fact and not proper for a motion for |
| 23 | contempt. |
| 24 | MR. COKE NG:  Well, it's not on the records, Your |
| 25 | Honor.  It's not -- |
| 26 | THE COURT:  In addition, I'm going to adjourn the |

Laura L. Ludovico, SCR

Proceedings

conference to December 19 at 9:30 pending Plaintiff's

motion to amend the caption.  This is obviously a nonfinal

order and I'm marking it denied.

     Thank you, everyone.

     MR. COKE NG:  Sure.

     MR. JANI:  Thank you, Your Honor.

     THE COURT:  You can take pictures or get a copy

of the order.

     MR. JANI:  Okay.  Thank you, Your Honor.

     THE COURT:  You're welcome.

        *    *    *    *    *

     I, Laura L. Ludovico, a senior court reporter for

the State of New York, do hereby certify that the foregoing

is a true and accurate transcription of my original

stenographic notes.

                     Laura L. Ludovico
                     Senior Court Reporter

Laura L. Ludovico, SCR

# EXHIBIT 3

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. DAVID B. COHEN**
J.S.C.
_____
Justice

PART 58

NG, BRIAN COKE

100386-18

INDEX NO. _____

-v-

MOTION DATE _____

K MART Pharmacy

MOTION SEQ. NO. 4

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is DECLINED TO SIGN FOR REASON STATED ON THE RECORD. RECORDS HAVE BEEN PROVIDED, PLAINTIFF'S CLAIM THAT THEY HAVE BEEN ALTERED IS, AT BEST, AN ISSUE FOR THE TRIER OF FACT. ALSO, MOTION FOR CONTEMPT IS NOT IN PROPER FORM.

CONFERENCE IS ADJOURNED TO 12-19-2018 @ 9:30 AM PENDING PLAINTIFF'S MOTION TO AMEND THE CAPTION.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S): _____

Dated: 9-20-2018

HON. DAVID B. COHEN
J.S.C.

1. CHECK ONE: ............................................ ☐ CASE DISPOSED      ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ....................MOTION IS: ☐ GRANTED  ☒ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ............................................ ☐ SETTLE ORDER      ☐ SUBMIT ORDER

☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

# EXHIBIT   4

Patient: COKE-NG, BRIAN

Last: 11/06/2018 05/15/2010
Total #: 2        $:        15.40

Carrier: RMP         Plan:                    Group: RMP
    Plan Name: RETAIL MAINTENANCE PROGRAM
CardholderID: COKEN7777            CanPHN/AltID:
                                   Medicaid ID:
Billing Seq: 2     Effect:         Expires:            Senior Cit:
Patient Elig: Y   Relation: 1 Dependent:                Pat Sign: 1
    Series:    ADC:    NH:  Clinic:        Student:   Elig Ovr:
    Other Ins:  N     Loc:    SB:   Emp:   B/C Home:
CMS Facility:     Residence:
Pat NoAssign:
Cardholder Information
  Name on Card: COKE-NG, BRIAN
        COKE-NG                  , BRIAN
Card Eligible: Y           Worker's Comp: N
  Effect Date:                   Last: 11/06/2018
  Expire Date:                   Elig: 05/15/2010

Patient: COKE-NG, BRIAN

Last: 11/06/2018  08/16/2010
Total #: 2        $:      15.40

Carrier: HTR          Plan: VRI              Group: UNA4167
  Plan Name: PLEASE USE HTR-GOODRX
CardholderID: COKEN7777           CanPHN/AltID:
                                  Medicaid ID:
  Billing Seq: 3     Effect:        Expires:              Senior Cit:
Patient Elig: Y   Relation: 1 Dependent: 01      Student:     Pat Sign: 1
     Series:     ADC:    NH:   Clinic:          B/C Home:     Elig Ovr:
  Other Ins:     N    Loc:      SB:   Emp:
CMS Facility:      Residence:
Pat NoAssign:
Cardholder Information
  Name on Card: COKE-NG, BRIAN
       COKE-NG                    , BRIAN
Card Eligible: Y                  Worker's Comp: N
  Effect Date:                      Last: 11/06/2018
  Expire Date:                      Elig: 08/16/2010

Patient: COKE-NG, BRIAN

PAGE3

Last: 11/06/2018  09/22/2010
Total #: 2        $:       15.40

Carrier: RXE              Plan: 7777
Plan Name: RXE-AMERICAN HEALTHCARE NTWK          Group: FDCPPA
CardholderID: 8182807202

CanPHN/AltID:
Medicaid ID:
Billing Seq: 1       Effect:              Expires:
Patient Elig: Y   Relation: 1  Dependent:
     Series:      ADC:    NH:  Clinic:              Student:      Senior Cit:
   Other Ins:     N      Loc:     SB:    Emp:       B/C Home:     Pat Sign: 1
CMS Facility:      Residence:                                     Elig Ovr:
Pat NoAssign:

Cardholder Information
   Name on Card: COKE-NG, BRIAN
        COKE-NG
Card Eligible: Y                  , BRIAN
   Effect Date:              Worker's Comp: N
   Expire Date:                  Last: 11/06/2018
                                 Elig: 09/22/2010

# EXHIBIT   5

SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK

BRIAN COKE
N 6                          *Plaintiff(s)*

- against -

KMART PHARMACY
KMART HOUSING CORP.          *Defendant(s).*

INDEX NO. 100786/18

IAS PART    59

~~STIPULATION~~ ORDER

IT IS HEREBY ~~STIPULATED AND AGREED~~ by ~~and between or among the attorneys~~

~~named below as follows:~~

ORDERED All PARTIES TO APPEAR
FOR A STATUS CONFERENCE ON
3/13/19 @ 9:30AM

_____
*Attorney for Plaintiff(s)* _____

_____
*Attorney for Defendant* _____

_____
*Attorney for Defendant* _____

_____
*Attorney for Defendant* _____

Dated: 12/18/18

SO ORDERED:

ENTER: _____
                              J.S.C.

HON. DAVID B. COHEN
                    J.S.C.

**FILED**

DEC 20 2018

COUNTY CLERK'S OFFICE
NEW YORK

# EXHIBIT  6

Brian Cokeng
40 Ann Street
New York, N.Y 10038
Tel: 646.736.2952

July 23, 2010

Kmart Corporation #7777
770 Broadway
New York. N.Y. 10003

COMPLAINT

Dear Sir/Madam,

I am writing to submit a complaint about instructions that was given to me at your pharmacy. This matter is regarding a prescribed medicine (Zoloft/sertraline HC, generic for: zoloft) prescription # 6842949 and the Pharmacist who had fill the prescription on July 16, 2010. Please see attachments to this complaint.

The pharmacist misinterpret directions, and/or fills the prescription in a manner other than the way it was ordered by Dr. Rania Attia M.D. (prescriber). See attached copy of the prescription.

It is the pharmacist responsibility to dispense the correct amounts of medication to a patient. I believe that if there was a misunderstanding between the pharmacist and prescriber because of handwriting issue, then a phone call could be made to perhaps clear up such situation.

The pharmacist took inappropriate steps and then printed Three (3) separate labels, then placed each of those labels on three (3) separate bottles containing sertraline, the labels indicated that each of the bottles contained "Qty:90" furthermore, the pharmacist had given me clear written instructions on each labels, on each of the bottles to " take three tablets by mouth in the evening". I had also asked the pharmacist so to confirm the dosage, and I was again verbally informed to "take three tablets from each bottle by mouth in the evening" the pharmacist went on to wrote on each bottle with a pen (1 of 3) (2 of 3) (3 of 3) and further advised that my doctor had ordered the dosage in such manner.

I then went home and took the medicine as I was instructed and as stated on each of those labels on the bottles. Later, the next day I was in the hospital emergency room with serotonin syndrome as a result of the dosage overdose and wrong strength of the sertraline.

This is unacceptable. I do not believe that I should accept any medical issues from the above events and therefore requesting that your company advise on the above matter. Thank you.

Best Regards,

Brian Cokeng

# EXHIBIT 7

# Doctor's Progress Report

**C-4.2**

### State of New York - Workers' Compensation Board

Use this form to report continuing services: (To report the first time you treated the patient, use Form C-4. To report permanent impairment, use Form C-4.3.)

Please answer all questions completely, attaching extra pages if necessary, and submit promptly to the Board, the insurance carrier and to the patient's attorney or licensed representative, if he/she has one; if not, send a copy to the patient. Failure to do so may delay the payment of necessary treatment, prevent the timely payment of wage loss benefits to the injured worker, create the necessity for testimony, and jeopardize your Board authorization. You may also fill out this form online at www.wcb.state.ny.us

**A**

Date(s) of Examination:  July 19, 2010

WCB Case Number (if known): ~~_____~~            Carrier Case Number (if known): ~~_____~~

## A. Patient's Information

1. Name: COKE NG    BRIAN        2. Date of injury/illness: 12 / 17 / 2007    3. Soc. Sec #: ~~____~~
       Last    First    MI

4. Address (if changed from previous report): 40 ANN STREET    NY    NY    10038
       Number and Street    City    State    Zip Code

5. Patient's Account #: _____

## B. Doctor's Information

1. Your name: SPIEGEL    JOHN    C        2. WCB Authorization #: _____
       Last    First    MI

3. WCB Rating Code: _____    4. Federal Tax ID #: _____    The Tax ID # is the (check one): ☐ SSN  ☐ EIN

5. Office address: 80 VANDAM STREET, 2ND FLOOR    NY    NY    10011
       Number and Street    City    State    Zip Code

6. Billing Group or Practice Name: _____

7. Billing address: _____    _____    _____    1285708974
       Number and Street    City    State    Zip Code

8. Office phone #: ( 212 ) 366-8040    9. Billing phone #: ( ____ ) ____    10. Treating Provider's NPI #:

## C. Billing Information

1. Employer's insurance carrier: _____        2. Carrier Code #: W _____

3. Insurance carrier's address: _____    _____    _____    _____
       Number and Street    City    State    Zip Code

4. Diagnosis or nature of disease or injury:

Enter ICD9 Code:    ICD9 Descriptor:

(1) 294.9    COGNITIVE DISORDER NOS  RELATING TO HIS PRE-EXISTING CONDITIONS

(2) THIS PATIENT HAD ONE EPISODE OF OVERDOSE FROM ZOLOFT ON OR ABOUT JULY 18, 2010

(3) NO INJURY WAS IDENTIFIED AFTER THIS SECOND LATEST TOXIC EXPOSURE FROM OVERDOSE

(4) WITH REASONABLE DEGREE OF MEDICAL CERTAINTY, A LATENT INJURY CAN BE MANIFESTED LATER

Relate ICD9 codes in (1), (2), (3), or (4) to Diagnosis Code column below by line

| From MM DD YY | To MM DD YY | Place of Service | Leave Blank | Procedures Services or Supplies CPT/HCPCS  MODIFIER | Diagnosis Code | $ Charges | Days/ Units | COB | Zip code where service was rendered |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

☐ Check here if services were provided by a WCB preferred provider organization (PPO)

| | Total Charge $ | Amount Paid (Carrier Use Only) $ | Balance Due (Carrier Use Only) $ |

## D. Examination and Treatment

1. Describe any diagnostic test(s) rendered at this visit: PATIENT WAS EXAMINED IN MY OFFICE ON JULY 19, 2010 AFTER INGESTING TOXIC SUBSTANCES FROM ZOLOFT OVERDOSE  PATIENT WAS GIVEN CYPROHEPTADINE

THE WORKERS' COMPENSATION BOARD EMPLOYS AND SERVES PEOPLE
WITH DISABILITIES WITHOUT DISCRIMINATION

Patient's Name: _COKE-NG_ _BRIAN_ _____ Date of injury/onset of illness:___/___/___
Last    First    MI

2. List any changes revealed by your most recent examination in the following: area of injury, type/nature of injury, patient's subjective complaints or your objective findings: _He remains cognitively impaired._ _He is haunted by depressed._  **B**

3. List additional body parts affected by this injury, if any: _____ N/A _____

4. Based on your most recent examination, list changes to the original treatment plan, prescription medications or assistive devices, if any: _none_

5. Based on this examination, does the patient need diagnostic tests or referrals?  ☐ Yes  ☑ No  If yes, check all that apply:

**Tests:**
☐ CT Scan   ☐ EMG/NCS
☐ MRI (specify): _____
☐ Labs (specify): _____
☐ X-rays (specify): _____
☐ Other (specify): _____

**Referrals:**
☐ Chiropractor   ☐ Internist/Family Physician
☐ Occupational Therapist
☐ Physical Therapist
☐ Specialist in _____
☐ Other (specify): _____

*Important: Form C-4 AUTH should be used to request any special medical service over $1000 or for those services requiring pre-authorization pursuant to the Medical Treatment Guidelines for the back, neck, knee and shoulder.*

6. Describe treatment rendered today: _____

7. When is patient's next follow-up visit?  ☐ Within a week  ☐ 1-2 wks  ☑ 3-4 wks  ☐ 5-6 wks  ☐ 7-8 wks  ☐ ___ months  ☐ as needed

## E. Doctor's Opinion (based on this examination)

1. In your opinion, was the incident that the patient described the competent medical cause of this injury/illness?  ☑ Yes  ☐ No
2. Are the patient's complaints consistent with his/her history of the injury/illness?  ☑ Yes  ☐ No
3. Is the patient's history of the injury/illness consistent with your objective findings?  ☑ Yes  ☐ No  ☐ N/A (no findings at this time)
4. What is the percentage (0-100%) of temporary impairment? _____ %
5. Describe findings and relevant diagnostic test results: _Patient is markedly & irreversibly cognitively impaired_

## F. Return to Work

1. Is patient working now?  ☐ Yes  ☑ No  If yes, are there work restrictions?  ☐ Yes  ☐ No  If yes, describe the work restrictions:

How long will the work restrictions apply?  ☐ 1-2 days  ☐ 3-7 days  ☐ 8-14 days  ☐ 15+ days  ☐ Unknown at this time

2. Can patient return to work? (check *only* one):
   a. ☑ The patient cannot return to work because (explain): _his memory is far too impaired_
   b. ☐ The patient can return to work without limitations on _____
   c. ☐ The patient can return to work with the following limitations (check all that apply) on _____
      ☐ Bending/twisting      ☐ Lifting                      ☐ Sitting
      ☐ Climbing stairs/ladders  ☐ Operating heavy equipment   ☐ Standing
      ☐ Environmental conditions ☐ Operation of motor vehicles ☐ Use of public transportation
      ☐ Kneeling              ☐ Personal protective equipment ☐ Use of upper extremities
      ☐ Other (explain): _____

   Describe/quantify the limitations: _____
   How long will these limitations apply?  ☐ 1-2 days  ☐ 3-7 days  ☐ 8-14 days  ☐ 15+ days  ☐ Unknown at this time  ☐ N/A

3. With whom will you discuss the patient's returning to work and/or limitations?  ☐ with patient  ☐ with patient's employer  ☐ N/A

4. Would the patient benefit from vocational rehabilitation?  ☐ Yes  ☐ No

*This form is signed under penalty of perjury.*

Board Authorized Health Care Provider - Check one:
☑ I provided the services listed above.
☐ I actively supervised the health care provider named below who provided these services

Provider's name _____                              Specialty: _Psychiatry_

Board Authorized Health Care Provider signature _JOHN CLIVE SPIEGEL_

_12/29/10_

Name                    Signature                    Specialty                    Date

C-4.2 (12-10) Page 2 of 2                                              www.wcb.state.ny.us

# EXHIBIT  8

Sedgwick CMS
P O Box 14448
Lexington, KY 40512-4448



**Sedgwick CMS**

Sedgwick Claims Management Services, Inc.

Phone: (866)352-1521 Fax: (866)876-7050

03/03/2017

Brian Coke-Ng
Po Box 23723
New York NY 10008

RE:    Claimant Name:    Brian Coke-Ng
       Claim Number:     L1702245137-0001
       Date of Incident:  02/24/2017

Dear Brian Coke-Ng :

This letter is to advise you we have recently received notice of this matter.

Please be advised Sedgwick Claims Management Services, Inc. is the Third Party Claims
Administrator for Kmart Corporation and I am the examiner assigned to your file. On behalf of
our client, I would like to apologize for any inconvenience this incident may have caused you.

If we have not yet had the opportunity to speak, please contact me at 866-352-1521. I can be
reached weekdays between the hours of 8:00 a.m. and 3:00 p.m. Central Time.

Be advised, under Federal Law (the Medicare, Medicaid, and SCHIP Extension Act of 2007), we
have certain reporting requirements to Medicare concerning any and all bodily injury claims.
Therefore, for that reporting purpose and in order to assist in the investigation of your claim,
please complete Sections I and II of the enclosed Medicare Request for Social Security
Number/Health Insurance Claim Number form and return it to me at your earliest convenience.
If you are not a Medicare Beneficiary, please indicate that on the form, sign it and return it to me
as well.

Be further advised, this information is requested for reporting and claims investigation purposes
only and should not be construed as acceptance of the claim. Please feel free to contact me if
you have any questions or to discuss the claim.

Sincerely,

Sandra Brach
Claims Representative
(847)645-0951

Sedgwick CMS
P O Box 14448
Lexington, KY 40512-4448



Phone: (866)352-1521 Fax: (866)876-7050

The Centers for Medicare & Medicaid Services (CMS) is the federal agency that oversees the Medicare program. Many Medicare beneficiaries have other insurance in addition to their Medicare benefits. Sometimes, Medicare is supposed to pay after the other insurance. However, if certain other insurance delays payment, Medicare may make a "conditional payment" so as not to inconvenience the beneficiary, and recover after the other insurance pays.

Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA), a new federal law that became effective January 1, 2009, requires that liability insurers (including self-insurers), no-fault insurers, and workers' compensation plans report specific information about Medicare beneficiaries who have other insurance coverage. This reporting is to assist CMS and other insurance plans to properly coordinate payment of benefits among plans so that your claims are paid promptly and correctly.

We are asking you to the answer the questions below so that we may comply with this law.

Please review this picture of the Medicare card to determine if you have, or have ever had, a similar Medicare card.



Section I

| Are you presently, or have you ever been, enrolled in Medicare Part A or Part B? | ☐Yes | ☐No |
| --- | --- | --- |

If Yes, please complete the following. If no, proceed to Section II.
Print Name exactly and print the name exactly as it appears on your SSA card/Medicare card if available.

| | | | | | | | | | | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Medicare Claim Number: | | Date of Birth (Mo/Day/Year) | | |
| --- | --- | --- | --- | --- |
| Social Security Number: (If Medicare Claim Number is Unavailable) | | | Sex | ☐Female  ☐Male |

Section II

I understand that the information requested is to assist the requesting insurance arrangement to accurately coordinate benefits with Medicare and to meet its mandatory reporting obligations under Medicare law.

Brian Coke-Ng                                           L1702245137-0001
**Claimant Name (Please Print)**                       **Claim Number**

Name of Person Completing This Form If Claimant is Unable (Please Print)

_____                    _____
**Signature of Person Completing This Form**          **Date**

*If you have completed Sections I and II above, stop here. If you are refusing to provide the information requested in Sections I and II, proceed to Section III.*

Section III

Brian Coke-Ng                                           L1702245137-0001
**Claimant Name (Please Print)**                       **Claim Number**

For the reason(s) listed below, I have not provided the information requested. I understand that if I am a Medicare beneficiary and I do not provide the requested information, I may be violating obligations as a beneficiary to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

**Reason(s) for Refusal to Provide Requested Information:**

I had Never had Medicare.
I had only Medicaid in about 1998, Since They NONE.
_Brian Coke_                          April 7, 2017
**Signature of Person Completing This Form**          **Date**

# EXHIBIT 9

Sedgwick Claims Management Services, Inc.
P O Box 14448
Lexington, KY 40512-4448



sedgwick..

Phone: (866)352-1521
Fax: (866)876-7050

March 21, 2017

Brian Coke-Ng
Po Box 23723
New York, NY  10008

RE:   File Number:        L1702245137-0001
      Date of Incident:   07/30/2010
      Store Number:       07777-NEW YORK

Dear Mr. Coke-Ng:

We have carefully investigated the facts and circumstances surrounding the above incident.

I have reviewed the document provided and determined it does not apply to your specific situation.  The document indicates the statute of limitation can be extended for claims involving property on a list of Superfund Sites requiring environmental clean-up as identified by the Environmental Protection Agency because the land had been contaminated by hazardous waste that could pose a health risk.  This is not the case with your claim.

The statute for your claim ran 3 years from the date the prescription was filled, or 7/16/2013.  Because no legal action was taken prior to the statute extinguishing, we must respectfully deny any claim presented against Kmart Corporation relating to this incident.

However, should you have additional information that has not been presented for review and could impact our denial decision, we ask that you provide that information at this time.

Sincerely,
Sandra L. Brach
Claims Representative
Sandra.Brach@sedgwickcms.com
Sedgwick
866-352-1521 ext. 50951






# EXHIBIT  10



# Sedgwick CMS

Sedgwick Claims Management Services, Inc
PO Box 14448
Lexington, KY. 40512-9951
Phone 866-352-1521
Fax 866-876-7050

June 8, 2017

Via Fax: 212-480-6282
New York State Department of Financial Services
One State Street Plaza
New York, NY 10004

RE:    Your File #:        CSB-2017-1206059
           Complainant:     Brian Coke Ng
           Claim No.:        L1702245137-0001

To Whom It May Concern:

Thank you for the opportunity to address the misunderstanding that has developed between Sedgwick Claims Management Services, Inc. and Brian Coke Ng.

Please note that Sedgwick Claims Management Services, Inc. ("Sedgwick") is the third party claim administrator for Kmart Corporation. Sedgwick is not an insurance carrier. In a good faith effort to resolve this complaint, Sedgwick provides the following information for your file.

Mr. Coke alleges that Sedgwick failed to respond to two new claims submitted May 3, 2017. Sedgwick respectfully denies those allegations. On February 24, 2017, Sedgwick received notice of Mr. Coke Ng's claim from our client, Kmart Corporation. On that date, Mr. Coke Ng sent an email to the pharmacy stating he had sent a complaint to Kmart in July 2010. Attached to his email was a copy of a letter written by him, addressed to Kmart, and dated July 23, 2010. Kmart Corporation has no record of receiving this letter. Sedgwick assigned a claim number, L1702245137-0001, to the matter with date of loss July 16, 2010, according to the date of the alleged pharmacy error. *NoT True* *iNCorrect*

Sedgwick's investigation revealed that the statute of limitations had run on July 16, 2013. On March 21, 2017 a letter was sent to Mr. Coke Ng denying his claim and Mr. Coke Ng sent rebuttal emails to Sedgwick dated March 21, 2017, March 29, 2017, March 31, 2017, April 7, 2017, April 28, 2017 and included with those emails were letters dated March 31, 2017 and April 28, 2017. None of the information supplied in Mr. Coke Ng's letters or emails changed the fact that the statute of limitations had run. Sedgwick responded to Mr. Coke Ng reiterating denial of the claim via email on April 28, 2017, March 30, 2017, and March 23, 2017.

The alleged two new claims submitted May 3, 2017 were not new claims. Claim 1 of 2 for Latent Injury: Drug Induced Movement Disorder/Tardive Akathisia was the same claim addressed and for which Sedgwick denied liability on behalf of its client Kmart Corporation under claim number L1702245137-0001.

Claim 2 of 2 for Missing Medical Records, Information, Alteration and Falsification of Medical Records As Well As Professional Misconduct was an additional allegation again related to claim number L1702245137-0001.

Both letters dated May 3, 2017 were addressed to Kmart Corporation and the claim remains denied as it is time-barred.

Again, thank you for the opportunity to respond to Mr. Coke Ng's complaint. Should you require additional information, please contact me at 847-645-0636.

Sincerely,

Bonnie Taskov
Liability Claims Team Lead
Sedgwick

# EXHIBIT 11



## sedgwick

**Sedgwick Claims Management Services, Inc.**
P.O. Box 14448, Lexington, KY 40512-4448
Phone (866) 352-1521  Facsimile (866) 876-7050

September 18, 2017

Via Fax: 212-480-6282
New York State Department of Financial Services
One State Street Plaza
New York, NY 10004

RE:    Your File #:    CSB-2017-1206059
       Complainant:   Brian Coke Ng
       Claim No.:     L1702245137-0001

To Whom It May Concern:

Again, thank you for the opportunity to address the misunderstanding that has developed between Sedgwick Claims Management Services, Inc. and Brian Coke Ng. In response to Mr. Coke Ng's rebuttal dated 08/25/17, Mr. Coke Ng has not provided any new information with regards to this claim. Therefore, our response has not changed.

Please note that Sedgwick Claims Management Services, Inc. ("Sedgwick") is the third party claim administrator for Kmart Corporation. Sedgwick is not an insurance carrier. In a good faith effort to resolve this complaint, Sedgwick provides the following information for your file.

Mr. Coke alleges that Sedgwick failed to respond to two new claims submitted May 3, 2017. Sedgwick respectfully denies those allegations. On February 24, 2017, Sedgwick received notice of Mr. Coke Ng's claim from our client, Kmart Corporation. On that date, Mr. Coke Ng sent an email to the pharmacy stating he had sent a complaint to Kmart in July 2010. Attached to his email was a copy of a letter written by him, addressed to Kmart, and dated July 23, 2010. Kmart Corporation has no record of receiving this letter. Sedgwick assigned a claim number, L1702245137-0001, to the matter with date of loss July 16, 2010, according to the date of the alleged pharmacy error.  *Not Truthful — ——— incorrect*

Sedgwick's investigation revealed that the statute of limitations had run on July 16, 2013. On March 21, 2017 a letter was sent to Mr. Coke Ng denying his claim and Mr. Coke Ng sent rebuttal emails to Sedgwick dated March 21, 2017, March 29, 2017, March 31, 2017, April 7, 2017, April 28, 2017 and included with those emails were letters dated March 31, 2017 and April 28, 2017. None of the information supplied in Mr. Coke Ng's letters or emails changed the fact that the statute of limitations had run. Sedgwick responded to Mr. Coke Ng reiterating denial of the claim via email on April 28, 2017, March 30, 2017, and March 23, 2017.

The alleged two new claims submitted May 3, 2017 were not new claims. Claim 1 of 2 for Latent Injury: Drug Induced Movement Disorder/Tardive Akathisia was the same claim addressed and for which Sedgwick denied liability on behalf of its client Kmart Corporation under claim number L1702245137-0001.

Claim 2 of 2 for Missing Medical Records, Information, Alteration and Falsification of Medical Records As Well As Professional Misconduct was an additional allegation again related to claim number L1702245137-0001.

Both letters dated May 3, 2017 were addressed to Kmart Corporation and the claim remains denied as it is time-barred.

Again, thank you for the opportunity to respond to Mr. Coke Ng's complaint/rebuttal. Should you require additional information, please contact me at 847-645-0939.

Sincerely,

Thomas Leith
Liability Claims Team Lead
Sedgwick

# EXHIBIT  12

Prescription #:        6842949
Prescription For:      COKE-NG, BRIAN
Pharmacist's Name:     JOHN HELLYER
Pharmacy Phone:        (212)253-0347
This drug expires:     05/15/2011

COKE-NG, BRIAN
SERTRALINE HC 50 MG TAB MY
Rx: 6842949   COPAY:     $15.00

4911 1587440

**KMART CORPORATION #7777**   RECEIPT
770 BROADWAY                  (212)253-0347
NEW YORK, NY 10003

Rx: 6842949   Pharmacist: JEH

**COKE-NG, BRIAN**            (646) 738-2952
40 ANN ST
NEW YORK, NY 10038
SERTRALINE HC 50 MG TAB MYLA   NDC:00378-4187-93
Generic For: ZOLOFT 50MG   TAB

Dr. ATTIA, RANIA            Subtotal:   $15.00
Ins.Ref.No# ERX5761501992

05/16/10   Qty: 90           COPAY:     $15.00

RETAIL PRICE:   $83.79
Call your doctor for medical advice about side effects. You
may report side effects to FDA at 1-800-FDA-1088.

DRUG NAME:  SERTRALINE HC 50 MG TAB MYLA

GENERIC NAME:  SERTRALINE (SER-tra-leen)

**COMMON USES:**  This medicine is a selective serotonin reuptake inhibitor
(SSRI) used to treat depression, panic disorder, obsessive-compulsive
disorder (OCD), post-traumatic stress disorder (PTSD), social anxiety disorder (social phobia), and a severe form of
premenstrual syndrome called premenstrual dysphoric disorder (PMDD). It may also be used for other conditions as
determined by your doctor.

**BEFORE USING THIS MEDICINE:  WARNING:** Antidepressants may increase the risk of suicidal thoughts or actions in
children, teenagers, and young adults. However, depression and certain other mental problems may also increase the risk
of suicide. Talk with the patient's doctor to be sure that the benefits of using this medicine outweigh the risks. Family and
caregivers must closely watch patients who take this medicine. It is important to keep in close contact with the patient's
doctor. Tell the doctor right away if the patient has symptoms like worsened depression, suicidal thoughts, or changes in
behavior. Discuss any questions with the patient's doctor. Some medicines or medical conditions may interact with this
medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking.
DO NOT TAKE THIS MEDICINE IF you are taking a fenfluramine derivative (eg, dexfenfluramine); an H1 antagonist (eg,
astemizole, terfenadine); nefazodone; pimozide; sibutramine; or thioridazine. DO NOT TAKE THIS MEDICINE IF you are
taking or have taken a monoamine oxidase inhibitor (MAOI) (eg, phenelzine), selegiline, or St. John's wort within the last
14 days. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking anorexiants (eg,
phentermine); linezolid; metoclopramide; serotonin 5-HT1 receptor agonists (eg, sumatriptan); trazodone; anticoagulants
(eg, warfarin); aspirin; nonsteroidal anti-inflammatory drugs (NSAIDs) (eg, ibuprofen); diuretics (eg, furosemide,
hydrochlorothiazide); tramadol; phenothiazines (eg, chlorpromazine);carbamazepine; cyproheptadine; aripiprazole;
clozapine; digoxin; flecainide; lithium; phenytoin; propafenone; risperidone; tricyclic antidepressants (eg, amitriptyline); or
valproate (eg, valproic acid). DO NOT START OR STOP any medicine without doctor or pharmacist approval. Inform your
doctor of any other medical conditions, including if you have a history of seizures; heart problems; liver problems; stomach
or bowel bleeding; metabolism problems; allergies; pregnancy; or breast-feeding. Tell your doctor if you or a family
member has a history of bipolar disorder (manic-depression), other mental or mood problems, suicidal thoughts or
attempts, or alcohol or substance abuse. Tell your doctor if you are dehydrated, have low blood sodium levels, drink
alcohol, or if you will be having electroconvulsive therapy (ECT). Contact your doctor or pharmacist if you have any
questions or concerns about using this medicine.

**HOW TO USE THIS MEDICINE:** Follow the directions for taking this medicine provided by your doctor. This medicine has a
MEDICATION GUIDE approved by the U.S. Food and Drug Administration. Read it carefully. Ask your doctor, nurse, or
pharmacist any questions that you may have about this medicine. TAKE THIS MEDICINE by mouth with or without food.
STORE THIS MEDICINE at 77 degrees F (25 degrees C) away from heat, moisture, and light. Brief storage at temperatures
between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Do not store in the bathroom. CONTINUE TO TAKE
THIS MEDICINE even if you feel well. Do not miss any doses. Taking this medicine at the same time each day will help you

(MORE)

Follow directions.Do not stop without Dr approval
May cause drowsiness. Do not mix with alcohol
Use caution when driving or operating machinery
Not recommended for use while breast-feeding
Notify your Dr if you intend to become pregnant
Check with Dr. before taking any other medicine
Promptly report unusual symptoms/effects to Dr
If condition persists or worsens notify Dr

| TxMs (Transaction Message) |
|---|
| KMT1000: CLAIM PAID |
| KMT1000: CLAIM PAID RX:6842949 FILL:2010-05-15 BIN:610144 PCN:KMRMP |

| | |
|---|---|
| Prescription #: | 6842949 |
| Prescription For: | COKE-NG, BRIAN |
| Pharmacist's Name: | MARC SPEERT |
| Pharmacy Phone: | (212)253-0347 |
| This drug expires: | 06/14/2011 |

RETAIL PRICE:  $83.79

**Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088.**

DRUG NAME:

KMART CORPORATION #7777          RECEIPT
770 BROADWAY                (212)253-0347
NEW YORK, NY 10003

Rx: 6842949    Pharmacist: MLS

COKE-NG, BRIAN              (846) 736-2952
40 ANN ST
NEW YORK, NY 10038

SERTRALINE HC 50 MG TAB MYLA    NDC:00378-4187-93
Generic For: ZOLOFT 50MG    TAB

Dr. ATTIA, RANIA          Subtotal:    $15.00
Ins.Ref.No# ERX4601116158

06/14/10   Qty: 90        COPAY:    $15.00

Follow directions.Do not stop without Dr approval
May cause drowsiness. Do not mix with alcohol
Use caution when driving or operating machinery
Not recommended for use while breast-feeding
Notify your Dr if you intend to become pregnant
Check with Dr. before taking any other medicine
Promptly report unusual symptoms/effects to Dr
If condition persists or worsens notify Dr

| TxMs (Transaction Message) |
|---|
| KMT1000: CLAIM PAID |
| KMT1000: CLAIM PAID RX:6842949 FILL:2010-06-14 BIN:610144 PCN:KMRMP |

Prescription #:          6842949
Prescription For:        COKE-NG, BRIAN
Pharmacist's Name:       JOHN HELLYER
Pharmacy Phone:          (212)253-0347
This drug expires:       07/16/2011

RETAIL PRICE:    $84.79

Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088.

DRUG NAME:

---

KMART CORPORATION #7777                                    RECEIPT
770 BROADWAY                          (212)253-0347
NEW YORK, NY 10003

Rx: 6842949   Pharmacist: JEH

**COKE-NG, BRIAN**                    (646) 738-2952
40 ANN ST
NEW YORK, NY 10038

SERTRALINE HC 50 MG TAB MYLA      NDC:00378-4187-93
Generic For: ZOLOFT 50MG     TAB

Dr. ATTIA, RANIA                  Subtotal:      $15.00
Ins.Ref.No# ERX3499824459

07/16/10   Qty: 90         COPAY:       $15.00

---

Follow directions.Do not stop without Dr approval
May cause drowsiness. Do not mix with alcohol
Use caution when driving or operating machinery
Not recommended for use while breast-feeding
Notify your Dr if you intend to become pregnant
Check with Dr. before taking any other medicine
Promptly report unusual symptoms/effects to Dr
If condition persists or worsens notify Dr

---

| TxMs (Transaction Message) |
|---|
| KMT1000: CLAIM PAID |
| KMT1000: CLAIM PAID RX:6842949 FILL:2010-07-16 BIN:610144 PCN:KMRMP |

COKE-NG, BRIAN                           Counseling Recd:___ Refused:___
RMP       RETAIL MAINTENANCE PROGRAM          Filled: 08/16/10
Rx: 6845128 _____    __/__/__

Prescription #:       6845128
Prescription For:     COKE-NG, BRIAN
Pharmacist's Name:    TANIA LI
Pharmacy Phone:       (212)253-0347
This drug expires:    08/16/2011

KMART CORPORATION #7777                          RECEIPT
770 BROADWAY                        (212)253-0347
NEW YORK, NY 10003

Rx: 6845128  Pharmacist: TRL

COKE-NG, BRIAN                          (646) 736-2952
40 ANN ST
NEW YORK, NY 10038
SERTRALINE HC 50 MG TAB MYLA    NDC:00378-4187-93
Generic For: ZOLOFT 50MG       TAB

RETAIL PRICE:   $84.79
Call your doctor for medical advice about side effects. You
may report side effects to FDA at 1-800-FDA-1088.

Dr. GOLDSCHMITT, DAVID          Subtotal:      $15.00
Ins.Ref.No# ERX11311793821

DRUG NAME: SERTRALINE HC 50 MG TAB MYLA

GENERIC NAME: SERTRALINE (SER-tra-leen)

08/16/10   Qty: 90              COPAY:     $15.00

**COMMON USES:** This medicine is a selective serotonin reuptake inhibitor
(SSRI) used to treat depression, panic disorder, obsessive-compulsive
disorder (OCD), post-traumatic stress disorder (PTSD), social anxiety disorder (social phobia), and a severe form of
premenstrual syndrome called premenstrual dysphoric disorder (PMDD). It may also be used for other conditions as
determined by your doctor.

**BEFORE USING THIS MEDICINE:** WARNING: Antidepressants may increase the risk of suicidal thoughts or actions in
children, teenagers, and young adults. However, depression and certain other mental problems may also increase the risk
of suicide. Talk with the patient's doctor to be sure that the benefits of using this medicine outweigh the risks. Family and
caregivers must closely watch patients who take this medicine. It is important to keep in close contact with the patient's
doctor. Tell the doctor right away if the patient has symptoms like worsened depression, suicidal thoughts, or changes in
behavior. Discuss any questions with the patient's doctor. Some medicines or medical conditions may interact with this
medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking.
DO NOT TAKE THIS MEDICINE IF you are taking a fenfluramine derivative (eg, dexfenfluramine); an H1 antagonist (eg,
astemizole, terfenadine); nefazodone; pimozide; sibutramine; or thioridazine. DO NOT TAKE THIS MEDICINE IF you are
taking or have taken a monoamine oxidase inhibitor (MAOI) (eg, phenelzine), selegiline, or St. John's wort within the last
14 days. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking anorexiants (eg,
phentermine); linezolid; metoclopramide; serotonin 5-HT1 receptor agonists (eg, sumatriptan); trazodone; anticoagulants
(eg, warfarin); aspirin; nonsteroidal anti-inflammatory drugs (NSAIDs) (eg, ibuprofen); diuretics (eg, furosemide,
hydrochlorothiazide); tramadol; phenothiazines (eg, chlorpromazine);carbamazepine; cyproheptadine; aripiprazole;
clozapine; digoxin; flecainide; lithium; phenytoin; propafenone; risperidone; tricyclic antidepressants (eg, amitriptyline); or
valproate (eg, valproic acid). DO NOT START OR STOP any medicine without doctor or pharmacist approval. Inform your
doctor of any other medical conditions, including if you have a history of seizures; heart problems; liver problems; stomach
or bowel bleeding; metabolism problems; allergies; pregnancy; or breast-feeding. Tell your doctor if you or a family
member has a history of bipolar disorder (manic-depression), other mental or mood problems, suicidal thoughts or
attempts, or alcohol or substance abuse. Tell your doctor if you are dehydrated, have low blood sodium levels, drink
alcohol, or if you will be having electroconvulsive therapy (ECT). Contact your doctor or pharmacist if you have any
questions or concerns about using this medicine.

**HOW TO USE THIS MEDICINE:** Follow the directions for taking this medicine provided by your doctor. This medicine has a
MEDICATION GUIDE approved by the U.S. Food and Drug Administration. Read it carefully. Ask your doctor, nurse, or
pharmacist any questions that you may have about this medicine. TAKE THIS MEDICINE by mouth with or without food.
STORE THIS MEDICINE at 77 degrees F (25 degrees C) away from heat, moisture, and light. Brief storage at temperatures
between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Do not store in the bathroom. CONTINUE TO TAKE
THIS MEDICINE even if you feel well. Do not miss any doses. Taking this medicine at the same time each day will help you

(MORE)

Follow directions.Do not stop without Dr approval
May cause drowsiness. Do not mix with alcohol
Use caution when driving or operating machinery
Not recommended for use while breast-feeding
Notify your Dr if you intend to become pregnant
Check with Dr. before taking any other medicine
Promptly report unusual symptoms/effects to Dr
If condition persists or worsens notify Dr

TxMs (Transaction Message)
KMT1000: CLAIM PAID

COKE-NG, BRIAN          Counseling Recd:__ Refused:__
HTR VRI    HTR/VIDAL & RODRIGUEZ
Rx: 6846142                                    Filled: 09/17/10
_____ __/__/__

| | |
|---|---|
| Prescription #: | 6846142 |
| Prescription For: | COKE-NG, BRIAN |
| Pharmacist's Name: | DARSHANIE SANKAR |
| Pharmacy Phone: | (212)253-0347 |
| This drug expires: | 09/17/2011 |

**KMART CORPORATION #7777**   RECEIPT
770 BROADWAY                         (212)253-0347
NEW YORK, NY 10003

**Rx: 6846142**  Pharmacist: DVS

**COKE-NG, BRIAN**              (646) 736-2952
40 ANN ST
NEW YORK, NY 10338

**BUPROPN HCL 150MG X TAB ANCH**   NDC:10370-0101-03
Generic For: WELLBUTRIN XL 150MG TAB

Dr. KILBANE, EDWARD          Subtotal:   $33.63
Ins.Ref.No# 00006845177701

09/17/10   Qty: 30          COPAY:   $33.63

RETAIL PRICE:   $159.97
Call your doctor for medical advice about side effects. You
may report side effects to FDA at 1-800-FDA-1088.

DRUG NAME:  BUPROPN HCL 150MG X TAB ANCH

GENERIC NAME:  BUPROPION (bue-PROE-pee-on)

COMMON USES:  This medicine is an antidepressant used for treating
depression and seasonal affective disorder (SAD). It may also be used for
other conditions as determined by your doctor.

BEFORE USING THIS MEDICINE:  WARNING: Antidepressants may increase the risk of suicidal thoughts or actions in
children, teenagers, and young adults. However, depression and certain other mental problems may also increase the risk
of suicide. Talk with the patient's doctor to be sure that the benefits of using this medicine outweigh the risks. FAMILY
AND CAREGIVERS MUST CLOSELY WATCH patients who take this medicine. It is important to keep in close contact with
the patient's doctor. Contact the doctor at once if new, worsened, or sudden symptoms such as agitation; hostility;
depressed mood; or any unusual change in mood or behavior occur. Contact the doctor right away if any signs of suicidal
thoughts or actions occur. Discuss any questions with the patient's doctor. Some medicines or medical conditions may
interact with this medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine
that you are taking. DO NOT TAKE THIS MEDICINE IF you are taking another medicine that contains bupropion or if you
are taking or have taken a monoamine oxidase inhibitor (MAOI) (eg, phenelzine) within the last 14 days. ADDITIONAL
MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking amantadine, antipsychotics (eg,
haloperidol, risperidone), corticosteroids (eg, prednisone), cyclophosphamide, efavirenz, HIV protease inibitors (eg,
nelfinavir, ritonavir) insulin, levodopa, nicotine patches, oral hypoglycemics (eg, glipizide), orphenadrine, sympathomimetics
(eg, pseudoephedrine), theophylline, thiotepa, tiagabine, carbamazepine, phenobarbital, phenytoin, rifampin,
antiarrhythmics (eg, propafenone, flecainide), beta-blockers (eg, metoprolol), or phenothiazines (eg, thioridazine), selective
serotonin reuptake inhibitors (SSRI) antidepressants (eg, fluoxetine), or tricyclic antidepressants (eg, nortriptyline). DO NOT
START OR STOP any medicine without doctor or pharmacist approval. Inform your doctor of any other medical conditions,
including diabetes, kidney problems, high blood pressure, heart problems (eg, congestive heart failure), recent heart attack,
allergies, pregnancy, or breast-feeding. Tell your doctor if you have a history of seizure, head injury, tumor in the brain or
spinal cord, or liver problems (eg, cirrhosis). Tell your doctor if you or a family member has a history of bipolar disorder
(manic depression), other mental or mood problems (eg, depression), suicidal thoughts or attempts, or alcohol or
substance abuse. USE OF THIS MEDICINE IS NOT RECOMMENDED if you have a history of an eating disorder (eg,
anorexia, bulimia) or seizures (eg, epilepsy). USE OF THIS MEDICINE IS NOT RECOMMENDED if you are suddenly stopping
the use of alcohol or sedatives (eg, benzodiazepines) after long-term use. Contact your doctor or pharmacist if you have
any questions or concerns about using this medicine.

HOW TO USE THIS MEDICINE:  Follow the directions for taking this medicine provided by your doctor. This medicine has a
MEDICATION GUIDE approved by the U.S. Food and Drug Administration. Read it carefully. Ask your doctor, nurse, or
pharmacist any questions that you may have about this medicine. TAKE THIS MEDICINE by mouth with or without food. If
stomach upset occurs, take with food to reduce stomach irritation. SWALLOW THIS MEDICINE WHOLE. Do not break,
crush, or chew before swallowing. STORE THIS MEDICINE at room temperature, between 59 and 86 degrees F (15 and

(MORE)

Do not chew or crush. Swallow whole
May take with meals if stomach upset occurs.
Avoid alcohol/products containing alcohol
Use caution when driving or operating machinery
Check with Dr. before taking any other medicine
May cause dizziness. Avoid hazardous activity

# EXHIBIT   13

KMART CORPORATION #7777
770 BROADWAY
NEW YORK, NY 10003
(212) 253-0347
DEA: BK5104827
Filed: 05/15/10

Rx: 6842949    Pharmacist: JEH    Ref 01445
COKE-NG, BRIAN
770 BROADWAY NEW YORK, NY 10003

**SERTRALINE 50 MG    TAB MYLA**
**TAKE THREE TABLETS BY**
**MOUTH IN THE EVENING**

Generic For: ZOLOFT 50 MG    TAB    Qty90

Dr. ATTIA, RANIA
No Refills                              Discard After:05/15/11

CAUTION: Federal law PROHIBITS the transfer of this drug to any person other than the patient for whom it was prescribed.

COKE-NG, BRIAN
SERTRALINE 50 MG    TAB MY
I842949    RMP NET DUE    $15.00
19111587440

---

Rx: 6842949   -1507440   #7777    Ref 05/15/10
COKE-NG, BRIAN
PO BOX 23723
NEW YORK, NY 10006

SERTRALINE 50 MG    TAB MYLA
Generic For: ZOLOFT 50 MG    TAB

00378-4187-93
Manuf: MYLAN
Qty:90                              DAW: 0
No Refills                          Disp: JEH

**TAKE THREE TABLETS BY**
**MOUTH IN THE EVENING**

Dr. ATTIA, RANIA        (212)604-7000
N.W WEST 11TH ST
NEW YORK, NY 10011
DEA: AS1837953
RMP NET DUE:    $15.00
RMP
Rx Comments:

NPI: 1378774398

Intake: _____    Process: _____
Fulfill: _____   Dispense: _____

RX#: 6842949

6842949  Filed: 05/15/10
COKE-NG, BRIAN        DOB: _____    Refused: _____
Counseling Recd: _____

Filled By: HELLYER, JOHN
Drug Rx:05/04/10
Drug Manuf: MYLAN
NDC: 00378-4187 93

6842949 05/15/10   JEH   $15.00
COKE-NG, BRIAN

SERTRALINE 50 MG    TA

NO COUPONS
ALLOWED

---

THANK YOU FOR SHOPPING AT KMART

Prescription #:        6842949
Prescription For:      COKE-NG, BRIAN
Pharmacist's Name:     JOHN HELLYER
Pharmacy Phone:        (212)253-0347
This drug expires:     05/15/2011

PEOPLE FEEL BETTER COMING HERE

RETAIL PRICE:    $83.79
DRUG NAME: **SERTRALINE 50 MG    TAB MYLA**
GENERIC NAME:  Sertraline Tablets (SER tra leen)

KMART CORPORATION #7777
770 BROADWAY
NEW YORK, NY 10003
(212)253-0347

Rx: 6842949    Pharmacist: JEH
*COKE-NG, BRIAN                     (646) 820-9238
PO BOX 23723
NEW YORK, NY 10006
SERTRALINE 50 MG    TAB MYLA        NDC:00378-4187-93
Generic For: ZOLOFT 50 MG    TAB

Dr. ATTIA, RANIA
Ins.Ref.No# 17238339278607599

05/15/10    Qty: 90                RMP NET DUE:    $15.00

WARNING:  Drugs like this one have raised the chance of suicidal thoughts or actions in children and young adults. The risk may be greater in people who have had these thoughts or actions in the past. All people who take this drug need to be watched closely. Call the doctor right away if signs like low mood (depression), nervousness, restlessness, grouchiness, panic attacks, or changes in mood or actions are new or worse. Call the doctor right away if any thoughts or actions of suicide occur.  COMMON USES:  It is used to treat low mood (depression). It is used to treat obsessive-compulsive problems. It is used to treat panic attacks. It is used to treat post-traumatic stress. It is used to treat mood problems caused by monthly periods. It is used to treat social anxiety problems. It may be given to you for other reasons. Talk with the doctor.

BEFORE USING THIS MEDICINE:  WHAT DO I NEED TO TELL MY DOCTOR BEFORE I TAKE THIS DRUG? TELL YOUR DOCTOR: If you have an allergy to sertraline or any other part of this drug. TELL YOUR DOCTOR: If you are allergic to any drugs like this one, any other drugs, foods, or other substances. Tell your doctor about the allergy and what signs you had, like rash; hives; itching; shortness of breath; wheezing; cough; swelling of face, lips, tongue, or throat; or any other signs. TELL YOUR DOCTOR: If you have liver disease. TELL YOUR DOCTOR: If you are taking any of these drugs: Linezolid or methylene blue. TELL YOUR DOCTOR: If you are taking pimozide. TELL YOUR DOCTOR: If you have taken certain drugs used for low mood (depression) like isocarboxazid, phenelzine, or tranylcypromine or drugs used for Parkinson's disease like selegiline or rasagiline in the last 14 days. Taking this drug within 14 days of those drugs can cause very bad high blood pressure. TELL YOUR DOCTOR: If you are taking any drugs that can cause a certain type of heartbeat that is not normal (prolonged QT interval). There are many drugs that can do this. Ask your doctor or pharmacist if you are not sure. This is not a list of all drugs or health problems that interact with this drug. Tell your doctor and pharmacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check to make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or change the dose of any drug without checking with your doctor.

HOW TO USE THIS MEDICINE:  HOW IS THIS DRUG BEST TAKEN? Use this drug as ordered by your doctor. Read all information given to you. Follow all instructions closely. Take with or without food. This drug may affect how much of some other drugs are in your body. If you are taking other drugs, talk with your doctor. You may need to have your blood work checked more closely while taking this drug with your other drugs. To gain the most benefit, do not miss doses. Do not stop taking this drug all of a sudden without calling your doctor. You may have a greater risk of side effects. If you need to stop this drug, you will want to slowly stop it as ordered by your doctor. Keep taking this drug as you have been told by your doctor or other health care provider, even if you feel well. In depression, sleep and appetite may get better soon after starting this drug. Other low mood signs may take up to 4 weeks to get better. HOW DO I STORE AND/OR THROW OUT THIS DRUG? Store at room temperature. Keep lid tightly closed. Store in a dry place. Do not store in a bathroom. Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets. Throw away unused or expired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if you have questions about the best way to throw out drugs. There may be drug take-back programs in your area. WHAT DO I DO IF I MISS A DOSE? Take a missed dose as soon as you think about it. If it is close to the time for your next dose, skip the missed dose and go back to your normal time. Do not take 2 doses at the same time or extra doses. CAUTIONS:

(MORE)

KMART CORPORATION #7777
770 BROADWAY
NEW YORK, NY 10003
(212) 253-0347
DEA: BK5104827
Filed: 06/14/10

:6842949          Pharmacist: MLS
OKE-NG, BRIAN

SERTRALINE 50 MG     TAB MYLA
AKE THREE TABLETS BY
OUTH IN THE EVENING

eneric For: ZOLOFT 50 MG     TAB     Qty:90
ATTIA, RANIA
efills

WHEN TAKING THIS MEDICATION
DO NOT DRINK
ALCOHOLIC BEVERAGES

Filled By: SPEERT, MARC
Orig Rx:DS/04/10
Drug Manuf: MYLAN
NDC: 00378-4187-93

Discard After:06/14/11

NO COUPONS
ALLOWED

RX#: 6842949

6842949  Filed: 06/14/10
COKE-NG, BRIAN                    DOB

• 6842949  r=1590335  #7777   r= 06/14/10     Dr. ATTIA, RANIA          (212)604-7000
COKE-NG, BRIAN      #7777    r= 06/14/10      (53 WEST 11TH ST
PO BOX 23723                                  NEW YORK, NY 10011
NEW YORK, NY 10006                            RMP NET DUE:      $15.00     NPI: 1378774398
Generic For: ZOLOFT 50 MG     TAB            RMP
00378-4187-93                                 Rx Comments:
Manuf: MYLAN
Qty:90     QS:30                 DAW:0
No Refills                              Rph: MLS
TAKE THREE TABLETS BY                         Intake: _____     Process: _____
MOUTH IN THE EVENING                          Fulfill: _____    Dispense: _____

Counseling Recd: _____
                            Refused: _____

THANK YOU FOR SHOPPING AT KMART

escription #:        6842949
escription For:      COKE-NG, BRIAN
harmacist's Name:    MARC SPEERT
armacy Phone:        (212)253-0347
his drug expires:    06/14/2011

ETAIL PRICE:         $83.79

RUG NAME:  SERTRALINE 50 MG     TAB MYLA

ENERIC NAME:  Sertraline Tablets (SER tra leen)

KMART CORPORATION #7777
770 BROADWAY
NEW YORK, NY 10003
(212)253-0347

Rx: 6842949      Pharmacist: MLS
*COKE-NG, BRIAN                    (646) 820-9238
PO BOX 23723
NEW YORK, NY 10006
SERTRALINE 50 MG     TAB MYLA      NDC:00378-4187-93
Generic For: ZOLOFT 50 MG     TAB

Dr. ATTIA, RANIA

06/14/10     Qty: 90          RMP NET DUE:     $15.00

PEOPLE FEEL BETTER COMING HERE

ARNING:  Drugs like this one have raised the chance of suicidal thoughts
 actions in children and young adults. The risk may be greater in people
ho have had these thoughts or actions in the past. All people who take
is drug need to be watched closely. Call the doctor right away if signs
e low mood (depression), nervousness, restlessness, grouchiness, panic attacks, or changes in mood or actions are new
 worse. Call the doctor right away if any thoughts or actions of suicide occur.  COMMON USES:  It is used to treat low
ood (depression). It is used to treat obsessive-compulsive problems. It is used to treat panic attacks. It is used to treat
st-traumatic stress. It is used to treat mood problems caused by monthly periods. It is used to treat social anxiety
oblems. It may be given to you for other reasons. Talk with the doctor.

EFORE USING THIS MEDICINE:  WHAT DO I NEED TO TELL MY DOCTOR BEFORE I TAKE THIS DRUG? TELL YOUR
OCTOR: If you have an allergy to sertraline or any other part of this drug. TELL YOUR DOCTOR: If you are allergic to any
ugs like this one, any other drugs, foods, or other substances. Tell your doctor about the allergy and what signs you
d, like rash; hives; itching; shortness of breath; wheezing; cough; swelling of face, lips, tongue, or throat; or any other
gns. TELL YOUR DOCTOR: If you have liver disease. TELL YOUR DOCTOR: If you are taking any of these drugs:
nezolid or methylene blue. TELL YOUR DOCTOR: If you are taking pimozide. TELL YOUR DOCTOR: If you have taken
rtain drugs used for low mood (depression) like isocarboxazid, phenelzine, or tranylcypromine or drugs used for
rkinson's disease like selegiline or rasagiline in the last 14 days. Taking this drug within 14 days of those drugs can
use very bad high blood pressure. TELL YOUR DOCTOR: If you are taking any drugs that can cause a certain type of
artbeat that is not normal (prolonged QT interval). There are many drugs that can do this. Ask your doctor or pharmacist
you are not sure. This is not a list of all drugs or health problems that interact with this drug. Tell your doctor and
armacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check
 make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or
ange the dose of any drug without checking with your doctor.

OW TO USE THIS MEDICINE:  HOW IS THIS DRUG BEST TAKEN? Use this drug as ordered by your doctor. Read all
formation given to you. Follow all instructions closely. Take with or without food. This drug may affect how much of
me other drugs are in your body. If you are taking other drugs, talk with your doctor. You may need to have your blood
ork checked more closely while taking this drug with your other drugs. To gain the most benefit, do not miss doses. Do
t stop taking this drug all of a sudden without calling your doctor. You may have a greater risk of side effects. If you
ed to stop this drug, you will want to slowly stop it as ordered by your doctor. Keep taking this drug as you have been
ld by your doctor or other health care provider, even if you feel well. In depression, sleep and appetite may get better
on after starting this drug. Other low mood  signs may take up to 4 weeks to get better. HOW DO I STORE AND/OR
ROW OUT THIS DRUG? Store at room temperature. Keep lid tightly closed. Store in a dry place. Do not store in a
throom. Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets. Throw away unused or
pired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if
u have questions about the best way to throw out drugs. There may be drug take-back programs in your area. WHAT
 I DO IF I MISS A DOSE? Take a missed dose as soon as you think about it. If it is close to the time for your next dose,
ip the missed dose and go back to your normal time. Do not take 2 doses at the same time or extra doses. CAUTIONS:

(MORE)

KMART CORPORATION #7777    (212) 253-0347
770 Broadway              DEA: BK51C4827
New York, NY 10003        Filed: 07/16/10

Rx: 6842949    Pharmacist: JEH
COKE-NG, BRIAN
PO BOX 23723 NEW YORK, NY 10009

SERTRALINE 50 MG    TAB MYLA
TAKE THREE TABLETS BY
MOUTH IN THE EVENING

Generic For: ZOLOFT 50 MG    TAB    Qty:90
Dr. ATTIA, RANIA
No Refills                Discard After:07/16/11

COKE-NG, BRIAN    6842949 07/16/10    JEH
SERTRALINE 50 MG    TAB MY
$15.00    COKE-NG, BRIAN
SERTRALINE 50 MG    TA

xx 6842949 x1x1593488    #7777    xx 07/18/10    Dr. ATTIA, RANIA    (212)604-7000
NEW YORK, NY 10011
SERTRALINE 50 MG    TAB MYLA    DEA: AS1837053    NPI: 1376774398
Generic For ZOLOFT 50 MG    RMP NET DUE:    $15.00
00378-4187-93    RMP
Manuf: MYLAN    Rx Comments:
Qty:90    DS: 30    DAW:0
No Refills    Rph: JEH

TAKE THREE TABLETS BY    Intake: ____    Process: ____
MOUTH IN THE EVENING    Fulfill: ____    Dispense: ____

RX#: 6842949

6842949 Filled: 07/16/10    Counseling Recd: ____
COKE-NG, BRIAN    DOB: __/__/__    Refused: ____

NO COUPONS
ALLOWED

THANK YOU FOR SHOPPING AT KMART

Prescription #:        6842949
Prescription For:      COKE-NG, BRIAN
Pharmacist's Name:     JOHN HELLYER
Pharmacy Phone:        (212)253-0347
This drug expires:     07/16/2011

KMART CORPORATION #7777    (212)253-0347
770 Broadway
NEW YORK, NY 10003

Rx: 6842949    Pharmacist: JEH
*COKE-NG, BRIAN    (646) 820-9238
PO BOX 23723
NEW YORK, NY 10009
SERTRALINE 50 MG    TAB MYLA    NDC:00378-4187-93
Generic For: ZOLOFT 50 MG    TAB

Dr. ATTIA, RANIA

PEOPLE FEEL BETTER COMING HERE

07/16/10    Qty: 90    RMP NET DUE:    $15.00

RETAIL PRICE:    $84.79
DRUG NAME:    SERTRALINE 50 MG    TAB MYLA
GENERIC NAME:  Sertraline Tablets (SER tra leen)

WARNING: Drugs like this one have raised the chance of suicidal thoughts or actions in children and young adults. The risk may be greater in people who have had these thoughts or actions in the past. All people who take this drug need to be watched closely. Call the doctor right away if signs like low mood (depression), nervousness, restlessness, grouchiness, panic attacks, or changes in mood or actions are new or worse. Call the doctor right away if any thoughts or actions of suicide occur. COMMON USES: It is used to treat low mood (depression). It is used to treat obsessive-compulsive problems. It is used to treat panic attacks. It is used to treat post-traumatic stress. It is used to treat mood problems caused by monthly periods. It is used to treat social anxiety problems. It may be given to you for other reasons. Talk with the doctor.

BEFORE USING THIS MEDICINE: WHAT DO I NEED TO TELL MY DOCTOR BEFORE I TAKE THIS DRUG? TELL YOUR DOCTOR: If you have an allergy to sertraline or any other part of this drug. TELL YOUR DOCTOR: If you are allergic to any drugs like this one, any other drugs, foods, or other substances. Tell your doctor about the allergy and what signs you had, like rash; hives; itching; shortness of breath; wheezing; cough; swelling of face, lips, tongue, or throat; or any other signs. TELL YOUR DOCTOR: If you have liver disease. TELL YOUR DOCTOR: If you are taking any of these drugs: Linezolid or methylene blue. TELL YOUR DOCTOR: If you are taking pimozide. TELL YOUR DOCTOR: If you have taken certain drugs used for low mood (depression) like isocarboxazid, phenelzine, or tranylcypromine or drugs used for Parkinson's disease like selegiline or rasagiline in the last 14 days. Taking this drug within 14 days of those drugs can cause very bad high blood pressure. TELL YOUR DOCTOR: If you are taking any drugs that can cause a certain type of heartbeat that is not normal (prolonged QT interval). There are many drugs that can do this. Ask your doctor or pharmacist if you are not sure. This is not a list of all drugs or health problems that interact with this drug. Tell your doctor and pharmacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check to make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or change the dose of any drug without checking with your doctor.

HOW TO USE THIS MEDICINE: HOW IS THIS DRUG BEST TAKEN? Use this drug as ordered by your doctor. Read all information given to you. Follow all instructions closely. Take with or without food. This drug may affect how much of some other drugs are in your body. If you are taking other drugs, talk with your doctor. You may need to have your blood work checked more closely while taking this drug with your drugs. To gain the most benefit, do not miss doses. Do not stop taking this drug all of a sudden without calling your doctor. You may have a greater risk of side effects. If you need to stop this drug, you will want to slowly stop it as ordered by your doctor. Keep taking this drug as you have been told by your doctor or other health care provider, even if you feel well. In depression, sleep and appetite may get better soon after starting this drug. Other low mood signs may take up to 4 weeks to get better. HOW DO I STORE AND/OR THROW OUT THIS DRUG? Store at room temperature. Keep lid tightly closed. Store in a dry place. Do not store in a bathroom. Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets. Throw away unused or expired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if you have questions about the best way to throw out drugs. There may be drug take-back programs in your area. WHAT DO I DO IF I MISS A DOSE? Take a missed dose as soon as you think about it. If it is close to the time for your next dose, skip the missed dose and go back to your normal time. Do not take 2 doses at the same time or extra doses. CAUTIONS:

(MORE)

KMT131193; RPh NOTICE: GOVT PLANS ARE NOT ELIGIBLE FOR COB BILLING TO ANY
DISCOUNT CARDS.

▼ **FEED FACE DOWN THIS DIRECTION** ▼        ▼ **FEED FACE DOWN THIS DIRECTION** ▼    ◢ Technology

**KMART CORPORATION #7777**
770 BROADWAY          (212) 253-0347
NEW YORK, NY 10003    DEA: BK5104827
                      Filled: 08/16/10

Rx#: **6845128**        Pharmacist: TRL
**COKE-NG, BRIAN**

**SERTRALINE 50 MG      TAB MYLA**
**3 TABLETS BY MOUTH ONCE A**
**DAY AT BEDTIME**

Generic For: ZOLOFT 50 MG    TAB      Qty:90
Dr. GOLDSCHMITT, DAVID
No Refills                  Discard After:08/16/11

COKE-NG, BRIAN              6845128  08/16/10  TRL
SERTRALINE 50 MG   TAB MY
6845128    KMP NET DUE:    $15.00   COKE-NG, BRIAN
                                    SERTRALINE 50 MG   TA

---

Rx #:6845128+s1596568  #7777  ##08/16/10    Dr. GOLDSCHMITT, DAV  (212)312-5070
                                             170 WILLIAM ST          ( )  -
SERTRALINE 50 MG   TAB MYLA                   N.Y. NY 10018
Generic For: ZOLOFT 50 MG    TAB             DEA: BG6162843     NPI:
                                             RMP NET DUE:     $15.00
00378-4187-93                                RMP
Manuf: MYLAN                                  Rx Comments:
Qty:90        DS: 30           DAW:0
No Refills                     Rph: TRL
**3 TABLETS BY MOUTH ONCE A**                Intake: ____      Process: ____
**DAY AT BEDTIME**                           Fulfill: ____     Dispense: ____

RX#: 6845128

6845128  Filled: 08/16/10                    Counseling Recd: ____
COKE-NG, BRIAN              DOB: __/__/19__   Refused: ____

Filled by: LI, TANIA
Drug Mfgr: MYLAN
NDC:00378-4187-93

NO COUPONS
ALLOWED

THANK YOU FOR SHOPPING AT KMART

Prescription #:        6845128                         **KMART CORPORATION #7777**
Prescription For:      COKE-NG, BRIAN          kmart.  770 BROADWAY          (212)253-0347
Pharmacist's Name:     TANIA LI                        NEW YORK, NY 10003
Pharmacy Phone:        (212)253-0347                   Rx #: **6845128**    Pharmacist: TRL
This drug expires:     08/16/2011                      *COKE-NG, BRIAN      (646) 820-9238
                                                       PO BOX 23723
                                                       NEW YORK, NY 10008
                        PEOPLE FEEL BETTER COMING HERE  SERTRALINE 50 MG   TAB MYLA   NDC 00378-4187-93
RETAIL PRICE:     $84.79                                Generic For: ZOLOFT 50 MG    TAB
DRUG NAME:   **SERTRALINE 50 MG    TAB MYLA**           Dr. GOLDSCHMITT, DAVID
GENERIC NAME:   Sertraline Tablets (SER tra leen)
                                                       08/16/10   Qty: 90      RMP NET DUE:   $15.00

**WARNING:** Drugs like this one have raised the chance of suicidal thoughts or actions in children and young adults. The risk may be greater in people who have had these thoughts or actions in the past. All people who take this drug need to be watched closely. Call the doctor right away if signs like low mood (depression), nervousness, restlessness, grouchiness, panic attacks, or changes in mood or actions are new or worse. Call the doctor right away if any thoughts or actions of suicide occur. **COMMON USES:** It is used to treat low mood (depression). It is used to treat obsessive-compulsive problems. It is used to treat panic attacks. It is used to treat post-traumatic stress. It is used to treat mood problems caused by monthly periods. It is used to treat social anxiety problems. It may be given to you for other reasons. Talk with the doctor.

**BEFORE USING THIS MEDICINE:** WHAT DO I NEED TO TELL MY DOCTOR BEFORE I TAKE THIS DRUG? TELL YOUR DOCTOR: If you have an allergy to sertraline or any other part of this drug. TELL YOUR DOCTOR: If you are allergic to any drugs like this one, any other drugs, foods, or other substances. Tell your doctor about the allergy and what signs you had, like rash; hives; itching; shortness of breath; wheezing; cough; swelling of face, lips, tongue, or throat; or any other signs. TELL YOUR DOCTOR: If you have liver disease. TELL YOUR DOCTOR: If you are taking any of these drugs: Linezolid or methylene blue. TELL YOUR DOCTOR: If you are taking pimozide. TELL YOUR DOCTOR: If you have taken certain drugs used for low mood (depression) like isocarboxazid, phenelzine, or tranylcypromine or drugs used for Parkinson's disease like selegiline or rasagiline in the last 14 days. Taking this drug within 14 days of those drugs can cause very bad high blood pressure. TELL YOUR DOCTOR: If you are taking any drugs that can cause a certain type of heartbeat that is not normal (prolonged QT interval). There are many drugs that can do this. Ask your doctor or pharmacist if you are not sure. This is not a list of all drugs or health problems that interact with this drug. Tell your doctor and pharmacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check to make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or change the dose of any drug without checking with your doctor.

**HOW TO USE THIS MEDICINE:** HOW IS THIS DRUG BEST TAKEN? Use this drug as ordered by your doctor. Read all information given to you. Follow all instructions closely. Take with or without food. This drug may affect how much of some other drugs are in your body. If you are taking other drugs, talk with your doctor. You may need to have your blood work checked more closely while taking this drug with your other drugs. To gain the most benefit, do not miss doses. Do not stop taking this drug all of a sudden without calling your doctor. You may have a greater risk of side effects. If you need to stop this drug, you will want to slowly stop it as ordered by your doctor. Keep taking this drug as you have been told by your doctor or other health care provider, even if you feel well. In depression, sleep and appetite may get better soon after starting this drug. Other low mood  signs may take up to 4 weeks to get better. HOW DO I STORE AND/OR THROW OUT THIS DRUG? Store at room temperature. Keep lid tightly closed. Store in a dry place. Do not store in a bathroom. Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets. Throw away unused or expired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if you have questions about the best way to throw out drugs. There may be drug take-back programs in your area. WHAT DO I DO IF I MISS A DOSE? Take a missed dose as soon as you think about it. If it is close to the time for your next dose, skip the missed dose and go back to your normal time. Do not take 2 doses at the same time or extra doses. CAUTIONS:

(MORE)

KMT131193: RPh NOTICE: GOVT PLANS ARE NOT ELIGIBLE FOR COB BILLING TO ANY
DISCOUNT CARDS.

**FEED FACE DOWN THIS DIRECTION** ◀ Technology

KMART CORPORATION #7777 (212) 253-0347
770 BROADWAY DEA: BK5104827
NEW YORK, NY 10003 Filled: 09/22/10

Rx# 6846142 Pharmacist: JEH
COKE-NG, BRIAN
BUPROPN HCL X 150MG TAB PARP
TAKE ONE TABLET BY MOUTH
EVERY MORNING

Generic For: WELLBUTRIN XL 150MG TAB Qty30
Dr. KILBANE, FORWARD
No Refills Discard After:09/22/11

CAUTION: Federal law PROHIBITS the transfer of this drug to any person other than the patient for whom it was prescribed.

COKE-NG, BRIAN 6846142 09/22/10 JEH
BUPROPN HCL X 150MG TAB PA
6846142 $33.63
COKE-NG, BRIAN

NO COUPONS
ALLOWED

SWALLOW WHOLE DO NOT CRUSH OR CHEW

Filled By: HELLYER, JOHN
Drug Rx:0804/10
Drug Manuf: PAR PHARMA
NDC: 10370-0101 03

Dr. KILBANE, EDWARD (212)804 8701
701 WEST 12TH STREET
NY, NY 10211

DEA: NPI: 1225287410
HTR NET DUE: $33.63
HTR VRI
Rx Comments:

COKE-NG, BRIAN 7777 09/22/10
PO BOX 23723
NEW YORK, NY 10008
BUPROPN HCL X 150MG TAB PARP
Generic For: WELLBUTRIN XL 150MG TAB

10370-0101-03
Manuf: PAR PHARMA
Qty:30 DS:30 DAW:0
No Refills Rph: JEH
TAKE ONE TABLET BY MOUTH
EVERY MORNING

Intake: Process:
Fulfil: Dispenso:

RX#: 6846142
6846142 Filled: 09/22/10
COKE-NG, BRIAN DOB: 09/07/1967

Counseling Recd: ____
Refused: ____

THANK YOU FOR SHOPPING AT KMART

Prescription #: 6846142
Prescription For: COKE-NG, BRIAN
Pharmacist's Name: JOHN HELLYER
Pharmacy Phone: (212)253-0347
This drug expires: 09/22/2011

PEOPLE FEEL BETTER COMING HERE

RETAIL PRICE: $159.97
DRUG NAME: BUPROPN HCL X 150MG TAB PARP

GENERIC NAME: Bupropion Extended-Release Tablets (byoo PROE pee on)

KMART CORPORATION #7777 (212)253-0347
770 BROADWAY
NEW YORK, NY 10003

Rx#: 6846142 Pharmacist: JEH
*COKE-NG, BRIAN (646) 820-9238
PO BOX 23723
NEW YORK, NY 10008
BUPROPN HCL X 150MG TAB PARP NDC:10370-0101-03
Generic For: WELLBUTRIN XL 150MG TAB

Dr. KILBANE, EDWARD

09/22/10 Qty: 30 HTR NET DUE: $33.63

WARNING: Drugs like this one have raised the chance of suicidal thoughts or actions in children and young adults. The risk may be greater in people who have had these thoughts or actions in the past. All people who take this drug need to be watched closely. Call the doctor right away if signs like low mood (depression), nervousness, restlessness, grouchiness, panic attacks, or changes in mood or actions are new or worse. Call the doctor right away if any thoughts or actions of suicide occur. COMMON USES: It is used to treat low mood (depression). It is used to treat seasonal affective disorder (SAD). It may be given to you for other reasons. Talk with the doctor.

BEFORE USING THIS MEDICINE: WHAT DO I NEED TO TELL MY DOCTOR BEFORE I TAKE THIS DRUG? TELL YOUR DOCTOR: If you have an allergy to bupropion or any other part of this drug. TELL YOUR DOCTOR: If you are allergic to any drugs like this one, any other drugs, foods, or other substances. Tell your doctor about the allergy and what signs you had, like rash; hives; itching; shortness of breath; wheezing; cough; swelling of face, lips, tongue, or throat; or any other signs. TELL YOUR DOCTOR: If you have ever had seizures. TELL YOUR DOCTOR: If you drink a lot of alcohol and you stop drinking all of a sudden. TELL YOUR DOCTOR: If you use certain other drugs like drugs for seizures or anxiety and you stop using them all of a sudden. TELL YOUR DOCTOR: If you have ever had an eating problem like anorexia or bulimia. TELL YOUR DOCTOR: If you have any of these health problems: Kidney disease or liver disease. TELL YOUR DOCTOR: If you have taken certain drugs used for low mood (depression) like isocarboxazid, phenelzine, or tranylcypromine or drugs used for Parkinson's disease like selegiline or rasagiline in the last 14 days. Taking this drug within 14 days of those drugs can cause very bad high blood pressure. TELL YOUR DOCTOR: If you are taking any of these drugs: Linezolid or methylene blue. TELL YOUR DOCTOR: If you are taking another drug that has the same drug in it. This is not a list of all drugs or health problems that interact with this drug. Tell your doctor and pharmacist about all of your drugs (prescription or OTC, natural products, vitamins) and health problems. You must check to make sure that it is safe for you to take this drug with all of your drugs and health problems. Do not start, stop, or change the dose of any drug without checking with your doctor.

HOW TO USE THIS MEDICINE: HOW IS THIS DRUG BEST TAKEN? Use this drug as ordered by your doctor. Read all information given to you. Follow all instructions closely. Do not take this drug more often than you are told. This may raise the risk of seizures. Be sure you know how far apart to take your doses. Take in the morning if taking once a day. Take with or without food. If you are not able to sleep, do not take this drug too close to bedtime. Talk with your doctor. Swallow whole. Do not chew, break, or crush. To gain the most benefit, do not miss doses. Keep taking this drug as you have been told by your doctor or other health care provider, even if you feel well. If you have trouble swallowing, talk with your doctor. HOW DO I STORE AND/OR THROW OUT THIS DRUG? Store at room temperature. Protect from light. Store in a dry place. Do not store in a bathroom. Keep all drugs in a safe place. Keep all drugs out of the reach of children and pets. Throw away unused or expired drugs. Do not flush down a toilet or pour down a drain unless you are told to do so. Check with your pharmacist if you have questions about the best way to throw out drugs. There may be drug take-back programs in your area. WHAT DO I DO IF I MISS A DOSE? Skip the missed dose and go back to your normal time. Do not take 2 doses at the same time or extra doses.

CAUTIONS: For all patients taking this drug: Tell all of your health care providers that you take this drug. This includes

(MORE)

KM1131193: RPh NOTICE: GOVT PLANS ARE NOT ELIGIBLE FOR COB BILLING TO ANY
DISCOUNT CARDS.

# EXHIBIT   14

Page: 1

**M E D I C A L   E X P E N S E S**

COKEBR1

Patient: COKE-NG, BRIAN                    Pharmacy: KMART CORPORATION #7777
RespPty:                                              770 BROADWAY
        40 ANN ST                                    NEW YORK          NY 10003
                                                     RPh: GOLDENBERG, YELENA
NEW YORK          NY 10038 2440
    Birth: ▟▟▟▟▟▟▟

Prescriptions:                          Date: 01/01/2009 TO 12/31/2014

| LastFill | Rx # | Drug Name | Qty | Physician Name | T/P | Price | RPh |
|----------|------|-----------|-----|----------------|-----|-------|-----|
| 05/15/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | JEH |
| 06/14/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | MLS |
| 07/16/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | JEH |
| 08/16/10 | 6845128 | SERTRALINE 50 MG | 90 | Dr.GOLDSCHMITT | RMP | 15.00 | TRL |
| 09/22/10 | 6846142 | BUPROPN HCL X 150MG | 30 | Dr.KILBANE | HTR | 33.63 | JEH |

Report Date: 01/13/2015                                    $93.63


Attested To By: _____
                Registered Pharmacist

Page: 1

### M E D I C A L   E X P E N S E S

COKEBR1

Patient: COKE-NG, BRIAN                    Pharmacy: KMART CORPORATION #7777
RespPty:                                             770 BROADWAY
        PO BOX 23723                                 NEW YORK        NY 10003
                                                     RPh: HOM, JESSICA
        NEW YORK        NY 10008
  Birth: ██████████

Prescriptions:                             Date: 01/01/2009 TO 01/01/2017

| LastFill | Rx # | Drug Name | Qty | Physician Name | T/P | Price | RPh |
|----------|------|-----------|-----|----------------|-----|-------|-----|
| 05/15/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | JEH |
| 06/14/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | MLS |
| 07/16/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | JEH |
| 08/16/10 | 6845128 | SERTRALINE 50 MG | 90 | Dr.GOLDSCHMITT | RMP | 15.00 | TRL |
| 09/22/10 | 6846142 | BUPROPN HCL X 150MG | 30 | Dr.KILBANE | HTR | 33.63 | JEH |

Report Date: 03/24/2017                                        $93.63


Attested To By:   _Jessica Horn_
                Registered Pharmacist


**7777 Kmart**
770 BROADWAY
NEW YORK, NY 10003

## M E D I C A L   E X P E N S E S

```
         COKEBR1
Patient: COKE-NG, BRIAN              Pharmacy: KMART CORPORATION #7777
RespPty:                                      770 BROADWAY
         PO BOX 23723                         NEW YORK        NY 10003
                                              RPh: HELLYER, JOHN E
    NEW YORK         NY 10008
  Birth:                              Tel: 212-253-0347 Fax: 847-396-3197
Prescriptions:                        Date: 01/01/2010 TO 06/15/2018
```

| LastFill | Rx # | Drug Name | Qty | Physician Name | T/P | Price | RPh |
|----------|------|-----------|-----|----------------|-----|-------|-----|
| 05/15/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | JEH |
| 06/14/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | MLS |
| 07/16/10 | 6842949 | SERTRALINE 50 MG | 90 | Dr.ATTIA | RMP | 15.00 | JEH |
| 08/16/10 | 6845128 | SERTRALINE 50 MG | 90 | Dr.GOLDSCHMITT | RMP | 15.00 | TRL |
| 09/22/10 | 6846142 | BUPROPN HCL X 150MG | 30 | Dr.KILBANE | HTR | 33.63 | JEH |

```
  Report Date: 06/15/2018                                      $93.63


  Attested To By: _____
                  Registered Pharmacist
```

# EXHIBIT   15

Mr. Coke,

Hope all is well. I was out of the office due to the holiday. We have spoken with the custodian of records for Kmart Pharmacy and have been advised that you have been previously provided the documents sought in the Subpoena Duces Tecum from the pharmacist at the Kmart location multiple times in the past. Therefore, the subpoena request has been complied with.

Additionally, as there is a pending motion to amend the Complaint to add additional parties and additional new claims against my client, we suggest amicably working out any issues at the upcoming Preliminary Conference scheduled for September 20, 2018. Lastly, as previously stated our client is open to alternative dispute resolution, however we have yet to receive a proper numerical settlement demand from you. Please provide a numerical settlement demand after which we will be in a position to discuss same with our client and engage in settlement discussions with you.

Best,
Harshal

**Harshal Y. Jani, ESQ.**
SOBEL PEVZNER, LLC.
Attorneys at Law
30 Vesey Street, 8th Floor
New York, New York 10007
P. 212.216.0020
F. 646.688.3646
HJani@sobelpevzner.com

**Subject:**                         FW: Brian Coke Ng v. Kmart Pharmacy et. al Index No. 100386/2018

**From:** Brian AC Ng ·  _____ .....>
**Sent:** Wednesday, September 12, 2018 3:08 PM
**To:** Harshal Y. Jani <hjani@sobelpevzner.com>
**Subject:** Re: Brian Coke Ng v. Kmart Pharmacy et. al Index No. 100386/2018

Mr. Jani,

With all due respect, and as you should know, the Judicial Subpoena Duces Tecum dated June 29, 2018 has not been complied with one way or the other. Whether it's you or the custodian of records for Kmart Pharmacy making such statements that "the documents sought in the Subpoena Duces Tecum" "have been previously provided" by "pharmacist at the Kmart location multiple times in the past." is careless, reckless, dangerous and a complete disregard of the Court issued Ordered Judicial Subpoena Duces Tecum. That's very disrespectful, and you should know better.

You had served an unsworn response to the Notice to Admit, which presented to you the documents from Kmart Pharmacy, which included the altered and falsified medication profile/records that was created on January 13, 2015, and the Kmart Notice of Privacy Practices with effective date September 2, 2014. No one admit to anything.

To be clear, The Court Ordered Judicial Subpoena Duces Tecum dated June 29, 2018, stated that the certified copy of every part of the medication profile/records with the accompanying certification of business records sworn and signed to must be forwarded to the New York County Supreme Court Subpoenaed Records Room 60 Centre Street, Room 145-M, New York, New York 10007. The Kmart Custodian, if any, was careless and reckless and you should have known better not to tell me the things Kmart Custodian had advised your law firm.

With respect to reaching a mutual settlement of all matters and put everything to rest, I previously requested to let us stipulate and invite the Supreme Court office of alternative dispute resolution (ADR) to help us reach a reasonable settlement resolution, that means we would hold off on any and all proceedings or any activities currently pending before the Court in the lawsuit until the end of the ADR. I do not agree for us to first meet with the judge in an initial conference. Certainly, that is not wise to use up Court room time, and the judge very important time, and court room reporters time, and court resources to discuss settlement.

You have insisted that I provide a numerical settlement demand. As we do not engage the ADR yet to help us determine the value of this case, I would like to set forth for a consideration of settlement, and I respectfully says $3.8 million dollars. If this is not acceptable or if you have another offer for settlement please provide such counter offer for consideration as I am still open to a reasonable settlement and alternative dispute resolution. Thank you.

Best Regards,
Brian Coke Ng

On Sep 12, 2018, at 9:43 AM, Harshal Y. Jani <hjani@sobelpevzner.com> wrote:

# EXHIBIT   16

**Subject:** Re: Brian Coke NG.

**From:** Brian Cokeng (bcokebmw@yahoo.co.uk)

**To:** rshulman@sobelpevzner.com; hjani@sobelpevzner.com;

**Date:** Thursday, 4 October 2018, 17:38

Dear Mr. Jani,

Thanks for your email with accompanying attachments yesterday. Please see my response attached, hereto.
Thank you.

Best Regards,
Brian Coke Ng

On Wednesday, 3 October 2018, 13:16, Rimma Shulman <rshulman@sobelpevzner.com> wrote:

Dear Mr. Brian Coke NG.

Enclosed, please find a courtesy copy of our opposition which was mailed to you on October 2, 2018.

Thank you
Rimma

## Rimma M. Shulman

Paralegal
SOBEL PEVZNER, LLC
Attorneys at Law
30 Vesey Street, 8th Floor
New York, New York 10007
P. 212-216-0020
F. 646-688-3646
RShulman@SobelPevzner.com

NOTICE: The information contained in this e-mail is attorney privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee of the agent of the intended recipient, you are hereby notified that any distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and return the original message to the sender at the above address by mail. Thank you

---

**Attachments**

- Brian Coke Ng to Harshal Jani.PDF (2.97 MB)

Brian Coke (Claimant)
Church Street Station, PO Box 2723
New York, N.Y 10008
646.820.9238

Index No.: 100386/2018

October 4, 2018
Via email to: Harshal Jani
SOBEL PEVZNER LLC
30 Vesey Street, 8th Floor
New York, N.Y. 10007

BRIAN COKE NG v. KMART PHARMACY..et, al.
**LETTER/NOTICE**

Dear Mr. Jani,

Thanks for your email yesterday with its attached courtesy copy of your affirmation in opposition to Plaintiff's motion for leave to file a supplemental summons and second amended verified complaint. However, I will not reply to such affirmation, instead, I intend to submit an application to the court to withdraw my pending Notice of Motion for reasons below as follows:

**Plaintiff Position On Good Faith Negotiations Has Been Derailed**

1.    Time Wasted on "settlement Negotiations" and the parties efforts and interests to participate in "alternative dispute resolution" (ADR) program provided by the New York County Supreme Court Commercial Division. Simply put, my good faith negotiations with defense counsel(s) has been Sabotaged by the defendant(s) using a variety of bad faith negotiation tactics. My simple and honest approach has been derailed by the defendant(s) looking to gain an advantage.

**Demands For Disclosure Of Insurance**

2.    On June 11, 2018, your office was served by certified mail, with a copy of plaintiff's demands for the disclosure of the existence and contents of any insurance agreement(s), including umbrella or excess coverage, as described in CPLR §3101(f) up the defendant(s) Kmart Pharmacy. To date, no response receive from defendants Kmart Pharmacy. Simply put, to disclose in good faith creates trust, to conceal may prevent a settlement.

**Demands For Damages**

3.      On July 27, 2018, the defendants by their counsel and plaintiff both had engaged to facilitate both sides interests and did in fact initiated efforts for monetary negotiations. Specifically, defense counsel had demanded settlement amounts. On August 1, 2018, I responded in writing, and one of my specific request is "a reasonable amount(s) not exceeding insurance policy limits. Shortly thereafter, defense counsel during our lengthy telephone conversations, had indicated that my demands was somewhat "Generic" and that he needed real numbers.

4.      As with good faith, I had responded to the defendant(s) by submitting a second written response to defendants demand for a settlement amounts. Defense counsel in follow up telephone conversations stated that he did not understand the settlement amounts I had presented. I had clearly expressed to defense counsel and suggested inviting or engaged the supreme court ADR program that have a good and excellent reputation in resolving matters of this kind.

5.      Although the defendants had not yet complied with plaintiff's demands for Disclosure of Insurance , I did not file any motion to compel them since the parties had been engaged in the settlement negotiations.

**Plaintiff's Continuing Position On Disclosure of Insurance Coverage/Disclaimer/Consent**

6.      Good faith requires that all coverage, both primary and excess be disclosed in advance of the alternative dispute resolution and mediation joint session. If there is a self-insured retention (SIR) that must be exceeded before coverage comes into play—this should also be disclosed. Coverage limits and whether there is a SIR often directly affects the demand that is made by the plaintiff.

7.      If the defendant has a policy of insurance, but there is an issue as to the availability of coverage due to a disclaimer, or if a defense is being provided with a reservation of rights, good faith requires that this be disclosed prior to the alternative dispute resolution and mediation joint session. If a declaratory judgment action has been commenced based on a disclaimer, this should also be disclosed. All too often declaratory judgment actions are commenced on the eve of the alternative dispute resolution and mediation joint session. It is an unacceptable tactic routinely used to diminish the plaintiff's negotiating position and can create very serious ethical issues.

8.      Frequently, in many instances there is the disclosure of the primary policy limits prior to the alternative dispute resolution and mediation joint session but the existence of excess coverage is disclosed for the first time at the alternative dispute resolution and mediation joint session. Again, excess coverage limits may significantly affect the demand made by the plaintiff and must be disclosed in advance. The identity of the excess insurers should also be disclosed so the plaintiff knows who he or she will potentially be negotiating with. Good practice on the part of a plaintiff is to ensure that plaintiff have all of the foregoing information in advance of the alternative dispute resolution and mediation joint session. If there is a representation that there is only primary coverage, plaintiff's need to obtain an affidavit of "no-excess."

9.      A separate issue is that of eroding policy limits. Coverage may be eroded by counsel fees or by other claims that have been paid out during the same policy period. This is common in professional liability, employment, and construction policies, among others. Good faith requires that this be disclosed in advance of the alternative dispute resolution and mediation joint session. In fact, the failure to disclose such if one has knowledge of the existence of the additional coverage is not good faith and, again, raises serious ethical issues.

10.     Finally, if a policy requires the consent of the insured to settle, and consent is an issue, good faith requires that this be disclosed well in advance of the alternative dispute resolution and mediation joint session. It is understandable that the purpose of the alternative dispute resolution and mediation joint session may often be to obtain the insured's consent, but in fairness, all parties should be aware that this is an issue that will eventually have to be addressed at the alternative dispute resolution and mediation joint session.

## Conduct of Counsel During the Negotiation And
## Efforts For Alternative Dispute Resolution

11.     Although I had tried to explain my position with respect to the request for disclosure of Insurance to the defense counsel, on September 12, 2018, the defense counsel had sent me an email and stated in separate parts, on quote: " *Additionally, as there is a pending*

*motion to amend the Complaint to add additional parties and additional new claims against my client, we suggest amicably working out any issues at the upcoming Preliminary Conference scheduled for September 20, 2018. Lastly, as previously stated our client is open to alternative dispute resolution, however we have yet to receive a proper numerical settlement demand from you. Please provide a numerical settlement demand after which we will be in a position to discuss same with our client and engage in settlement discussions with you. "*

12.    Upon this email from defense counsel, I had accepted and agreed with his latest proposal, suggestions and demands, and to which I must provide a **"numerical settlement demand"** I then had replied to his email and had proposed $3.8 million, and had specifically stated in my email to him, that " If this is not acceptable or if you have another offer for settlement please provide such counter offer for consideration as I am still open to a reasonable settlement and alternative dispute resolution."

13.    On September 17, 2018, less than 12, hours before the return date (September 18,2018) pertaining to the Notice of Motion, the defense counsel had made contact with me by telephone and advised that he need time to respond to and/or to submit defendants opposition papers, and had further advised that he will seek to get an adjournment for the Preliminary conference that was on schedule for September 20, 2018, the same conference to which defense counsel had proposed and/or suggested both sides to **"amicably working out any issues"**.

14.    Notably, for the first time, defense counsel had also advised me, during our telephone conversations on September 17, 2018, that he had no authority to settle this case. Such statements were now in direct conflict with his prior statements, including those made in his September 12, 2018 email to me.

## Appearances For September 20, 2018 Preliminary Conference

15    According to the "Special Notice To Counsel Regarding Prenote Blockbuster Conference", that I had received from the Court, it has been noted in separate parts, that, on quote: "Only counsel fully familiar with and authorized to settle, stipulate, or dispose of the case may appear at this conference.". But, lo and behold, the very same defense attorney who had claimed that he has no authority to settle, was indeed the same defense attorney who had appeared at the court and addressed matters pertaining to the case, and got the conference adjourned to December 19, 2018. Such a conduct had also raises serious ethical issues. I do not intend to accept any such conduct.

**I Have Been Misled. My Time Had Been Wasted On These Kind Of Misleading Settlement Negotiations, Proposed Interests For Alternative Dispute Resolution And Certain Efforts To Participate In Mediation**

16.    The conduct described and stated above, is not acceptable. I rejected these kinds of behaviors from you or the defendants, and found it to be inappropriate and not proper. Do not make, create, or lead on settlement negotiations, proposals, or give certain suggestions that you are not fully ready to honor. You've furtherance everything by misrepresentation, and then come to advised at the end that you have no authority to settle the case. I will not accept such behavior.

17.    This matter should be presented to the court. Because, in no way, shape or form, will I ever accept this kind of behavior. Never will.

18.    Please contact me immediately, or as soon as possible, or have someone else make contact to address the above matter, and to properly discuss and find ways for a peaceful resolution of all matters.  Thank you.

Best Regards,

Brian Coke Ng

# EXHIBIT  17

# Xie Yi Medical Office P.C.

### Xie, Yi, MD

| | | | |
|---|---|---|---|
| **139 Centre St.** New York NY 10013 Tel: 917-639-3284 Fax: 917-639-3224 | **5724 7TH AVE** BROOKLYN NY 11214 Tel: 917-639-3284 Fax: 917-639-3224 | **5724 7TH AVE** BROOKLYN NY 11220 Tel: 917-326-9898 Fax: 917-639-3224 | **5724 7TH AVE** BROOKLYN NY 11220 Tel: 917-639-3284 Fax: 917-639-3224 |

**NAME:** COKE NG, BRIAN A **GENDER:** Male **DOB:** ▓▓▓▓▓ **AGE AS OF 01/08/2019:** ▓▓
**ADDRESS:** 40 ANN ST1FL NEW YORK NY 10038 **TEL:** 646-820-9238
**OFFICE VISIT DATE:** 01/08/2019 **Time:** 03:00:00 PM

## Chief Complaint
  **Source of History:** Patient **Reliability:** Good
  **Reason for Visit:**
    INVOLUNTARY LIMB MOVEMENTS
## History of Present Illness:
    This patient COKE NG, BRIAN A is a 56y old Male that reports for a follow up visit.

    Since last visit, the patient had difficulty falling asleep at night due to his involuntary movements but overall, had improved compared to initial visit. He had been taking Lorazepam 0.5MG tablet po qhs prn, and Diphenhydramine 25MG po qhs prn w/o significant improvement. He felt stressed and more depressed in the past 2 weeks due to "false allegations against him." He had decreased appetite and "does not feel like himself." Patient had not followed up psychiatrist "for a while" due to insurance issues.

    Patient had a sudden onset of vomiting for 2 weeks. He was admitted to ED and was told psychogenic vomiting.

    Denied headache, and fever.

    **Interval History:**

    54 YEARS OLD MALE PATIENT PRESENTED WITH INVOLUNTARY MOVEMENTS X 3 MONTHS.

    THE PATIENT STARTED TO HAVE INVOLUNTARY LEG MOVEMENTS IN 12/2016. THE PATIENT HAD JUMPING LEG DURING THE NIGHT AND DAY. THE PATIENT'S WIFE COMPLAINED THE MOVEMENTS WERE FREQUENT AND SEVERE. SHE WAS WOKEN UP FREQUENTLY AT NIGHT DUE TO HIS MOVEMENTS. THE SYMPTOMS WERE GETTING WORSE RECENTLY. THE MOVEMENTS INTERFERED WITH HIS DAILY ACTIVITIES. HE FELT UNSTEADY WHEN HE WAS WALKING AND WAS CONSTANTLY MOVING HIS ARMS AND LEGS WHEN HE WAS SITTING.

    THE PATIENT WAS DIAGNOSED WITH DEPRESSION IN 2010. HE WAS PRESCRIBED ZOLOFT. THE PATIENT HAVE ONE EPISODE OF OVERDOSE ON ZOLOFT. THE PATIENT WENT TO DR. JOHN AND HAD DRUGS FLUSHED OUT OF HIS SYSTEM.

    DENIED SLEEPWALKING, COGNITIVE FUNCTION DECLINE, HALLUCINATIONS AND NUMBNESS OF HIS EXTREMETIES.

## Past Medical History:
  **(1)** Asthma (493.9/J45.909)
  **(2)** Hypertension (401.1/I10)
  **(3)** Diabetes: (Type II)
  **(4)** DEPRESSION, ASTHMA

## Family History:
  No Significant Family History

## Surgical History:
  **(1)** No Significant Surgical History

## Allergy:
  **Medication**
    No Known Medication Allergy
  **Food**
    No known Food Allergy

iClinic MDLAND.com

18-23538-shl   Doc 1721   Filed 01/18/19   Entered 01/18/19 12:07:30   Main Document
COKE NG, BRIAN A (DOB: 09/07/1962) Date of Service: 01/08/2019 Printed on: 09/09/2019    Pg 103 of 107

Printed on: 01/09/2019

**Environmental**
No known Environmental Allergy

**Social History:**
(1) No Significant Social History
Never smoker.

**Active Medication List:**
(1) ADVAIR 250-50 DISKUS (-now)
(2) ADVAIR 250-50 DISKUS **SIG:** 1 INHALATION BLISTERS BID **Disp:** 1 Vial (02/28/2017-now)
(3) AMANTADINE 100 MG CAPSULE (-now)
(4) BENZTROPINE MES 0.5 MG TAB (-now)
(5) Benztropine Mesylate 0.5 MG TABLET **SIG:** 1 TABLET PO BID **Disp:** 60 Tablet **Refill:** 0 (02/28/2017-now)
(6) BUPROPION HCL XL 150 MG TABLET (-now)
(7) CLONAZEPAM 0.5 MG TABLET (-now)
(8) COMBIVENT RESPIMAT INHAL SPRAY 20-100 (02/28/2017-now)
(9) IPRAT-ALBUT 0.5-3(2.5) MG/3 ML 0.5-3MG **SIG:** USE 1 VIAL Q6H PRN **Disp:** 30 Vial (02/28/2017-now)
(10) MIRTAZAPINE 7.5 MG TABLET (-now)
(11) MONTELUKAST SOD 10 MG TABLET **SIG:** 1 TABLET PO QHS **Disp:** 30 Tablet (02/28/2017-now)
(12) PROVENTIL HFA 90 MCG INHALER (02/28/2017-now)
**Notes:**
2010 - SERTRALINE HCL (ZOLOFT) 50 MG TABLET - 1 TABLET PO QHS 2012 - BUPROPION HCL XL 300 MG
TABLET PO QAM, QUETIAPINE PUMARATE 25 MG TABLET PO QHS 2017 - DONEPEZIL HCL 10 MG PO QDAILY

**Problem List:**
(1) 02/28/2017  RESTLESSS LEG SYNDROME  Active  (Yi Xie MD)
(2) 02/28/2017  Hypertension  (ICD: I10)  Active  (Yi Xie MD)
(3) 01/08/2019  Asthma  (ICD: J45.909)  Active  (Yi Xie MD)

**Review of Systems:**
**Constitution:**
denied fever, fatigue
**Allergy/Immun:**
denies hives.
**Breast:**
Denies discharge
**Cardiovas:**
Denies sweeting, heart racing, chest pain
**Endocrine:**
Denies constipation, weight gain or loss.
**ENT:**
Denies ear pain, hearing loss, nasal congestion, sore throat.
**Eyes:**
Denies visual changes, eye pain, or redness .
**GI:**
Denies abdominal pain, difficulty with swallowing, heart burn, BRBPR, melana, or changes in bowel
habits .
**GU (Male):**
Denies dysuria, pyuria, urinary urgency or frequency, bloody urine, bloody sperm, discharge from penis,
scrotal mass

**Head/Neck:**
Denies neck pain or stiffness, noticeable nodes, or mass on neck .
**Heme/Lym:**
Denies swollen glands, bleeding problems, or bruising.
**Muscular/Skeletal:**
Denies joint pain, swelling, muscle weakness.
**Neuro:**
*See HPI*
**Psych:**
*See HPI*
**Resp:**
Denies shortness of breath, cough, wheezes.
**Skin:**
Denies rash

**Vital Signs:**
**Date:** 01/08/2019 02:46 PM, **HT:** 5'7.5" (ft/inches), **WT:** 172 (lbs/oz), **BP:** 124/75 (mmHg), **BMI:** 26.54, **HR:**
72 (/min)

**Physical Exam General:**
**General:** Good

COKE NG, BRIAN A (DOB: 09/07/1962) Date of Service: 01/08/2019 Printed on: 01/09/2019          Printed on: 01/09/2019

## Physical Exam Detail:
### Neurological:
*Mental Status: alert and cooperative. Fully oriented to time, place and person. Remembered out of 3 items immediately and out of 3 items after 10 minutes. Long-term memory was intact. Spoke in complete, grammatically correct sentences with good articulation. Followed verbal requests without difficulty.*

*Cranial Nerves: CN II-Visual fields: intact. The fundi: no papilledema. CN III, IV, VI-PERRL, EOMI. CN V: Facial sensation was intact to light touch. Corneal reflex: +. CN VII: No facial paralysis. CNVIII: Hearing finger rub bilaterally. CN IX: Symmetrical palate elevation. No drooling.   CN XI: Strong shoulder-elevation and head-turning bilaterally. CNXII: Tongue protrusion at midline.*

*Motor: good muscle bulk, no atrophy. Normal tone and 5/5 strength of all extremities. DTR: 3/5 at biceps, triceps, brachioradioallis, knees and ankles. Plantar responses: flexor bilaterally. No ankle clonus.*

*Sensory: decreased to light touch, temperature, pain at distal extremiteis, normal vibration, proprioception.*

***Coordination: patient had involuntary movement.*** *Finger to nose and Heel to shin: no ataxia or dysmetria.* ***Rapid alternate movements: slow. Patient had poor coordination.***

*Gait: Normal gait. Not-able to perform tandem-walking. Rombergs sign: negative*
### Head:
NC/AT skull. No tenderness, palpable mass. Even hair distribution.
### Eyes:
Normal pink conjuntiva; white sclera. PERR, EOM intact. No jaundice or exudates.
### Nose/ears/mouth:
Symmetrical patent nares. No nasal flaring/grunting/or discharge.
### Neck:
Full AROM WNL. No tenderness, JVD, or palpable lymph nodes, masses, or goiter. No bruits auscultated.
### Chest/Lung:
Symmetrical expansion with respiration. No intercostal retractions, or tenderness. Breath sounds CTA bilaterally. No rales/wheezes/rhonchi ausultated.
### Heart:
S1S2 heard. Regular rhythm. No murmurs, thrills, or clicks.
### Abdomen:
Soft, non-tender, non-distended. No palpable masses. No hepatomegaly/splenomegaly. No inguinal hernia or lymph nodes.
### Extremities:
No deformities, clubbing, cyanosis, or edema noted. Bilateral pedal pulses present. No visible joint swelling/erythema. Normal ROM.
### Skin/Membrane:
Skin warm to touch. Normal color. No lacerations or bruises. No rash, eczema, or ulcers.
### Muscular:
Normal tone. Full AROM. No obvious muscular atrophy or hypertrophy. No jerking.
### Psych:
No psychosis

## Diagnosis Code:
(**1**) (R25.8) Other abnormal involuntary movements (R25.8)
(**2**) (F41.3) Other mixed anxiety disorders (F41.3)
(**3**) (F32.89) Other specified depressive episodes (F32.89)
(**4**) (I10) Essential (primary) hypertension (I10)

## Procedure Code:
(**1**) OFFICE/OUTPATIENT VISIT EST (99214)

## Assessment/Plan:
### (R25.8) Other abnormal involuntary movements:
UNKNOWN ETIOLOGY.

THE PATIENT WAS SEEN BY PSYCHIATRIST. NO CONCLUSION IF THIS IS CAUSED BY MEDICATION OR OTHER NON-ORGANIC DISODER.

DRUG INDUCED? NON-ORGANIC? OR OTHER CAUSES?

RECOMMENDATIONS:
1. MOVEMENT DISORDER SPECIALIST REFERRAL (BETH ISREAL)
   EXPLORE UNDERLYING ETIOLOGY.

2. FOLLOW UP WITH PSYCHIATRIST
3. FOLLOW UP AFTER CONSULTATION

COKE NG, BRIAN A (DOB: 09/07/1962) Date of Service: 01/08/2019 Printed on: 01/09/2019                    Printed on: 01/09/2019

**(F41.3) Other mixed anxiety disorders:**
Recommendations:
1. Medications:
    Ativan 0.5MG tablet - 1 tablet po qdaily prn

2. Follow up with psychiatrist

**(F32.89) Other specified depressive episodes:**
RECOMMENDATIONS:
1. Continue current medication
2. Follow up with psychiatrst

**(I10) Essential (primary) hypertension:**
-Cont current regimen to gradually lower BP
-low sodium diet
-regular exercise

**Other Plan/Conclusion**
Benadryl Allergy 25 MG TABLET - 1 tablet po qhs

**Prescription:**
**(1)** Ativan 0.5 MG TABLET **SIG:** 1 tablet po qdaily prn for anxiety **Disp:** 10 Tablet **Refill:** 0 **Sent**
**(2)** Benadryl Allergy 25 MG TABLET **SIG:** 1 tablet po qhs **Disp:** 30 Tablet **Refill:** 0 **Sent**

Attending Provider: Xie, Yi, MD, Covering Provider: Xie, Yi, MD
Electronically signed by Xie, Yi, MD at 1/8/2019 3:12:31 PM
Printed by iClinic (MDLAND.com) at 1/9/2019 4:20:54 PM

# EXHIBIT  18

# NYC HEALTH+ HOSPITALS

BRIAN COKE NG
CHURCH ST ST
PO BOX 2723
NEW YORK NY 10008-2723

## Important Message

Please pay this amount promptly. If you have Medicaid or other insurance, complete the back of this bill; return it to BELLEVUE HOSPITAL CENTER, P.O. BOX 5281 GPO, NEW YORK, NY 10087. If you do not have insurance or are unable to pay this bill, please call (212) 562-6264/6265 or stop by our Financial Counseling Office to discuss our available HHC Options Program.

Tenga la bondad de pagar este monto lo antes posible. Si tiene Medicaid o algun otro seguro, complete el dorso de este formulario; devuelvalo a BELLEVUE HOSPITAL CENTER, P.O. BOX 5281 GPO, NEW YORK, NY 10087. Si no tiene seguro o si no puede pagar esta cuenta, llame al (212) 562-6264/6265  o visite nuestra Oficina de consejeria financiera (Financial Counseling Office) para discutir la disponibilidad de nuestro Programa de opciones de HHC (HHC Options Program).

## Account Summary

Patient Name:  Coke Ng ,Brian
Statement Date:    12/27/18
Service Date(s):    12/22/18-12/22/18 
Account Number:

## Charge Summary

| | |
|---|---|
| Previous Balance: | $.00 |
| New Charges: | $1,797.99 |
| Payments/Adjustments: | $.00 |
| Account Balance: | $1,797.99 |
| **Please Pay This Amt:** | **$1,797.99** |

## Insurance Information

INS 1:
INS 2:
INS 3:
INS 4:

## Contact Us

For questions, please call our office at 212-562-6264/6265.

For more information, visit our website at/ Para obtener mas informacion, visite nuestro sitio web en

http://www.nychealthandhospitals.org/paying-for-your-health-care/hhc-options/

*Please Note: If paying by check, see message on back of coupon.*

---

Make Checks Payable To:  Bellevue Hospital Center

# NYC HEALTH+ HOSPITALS

Bellevue Hospital Center
Attn: Patient Accounts
462 First Ave
New York, NY 10016

ADDRESS SERVICE REQUESTED

☐ Check box if your address or insurance information has changed. Please make changes on back

MDG2018 00008964 01

BRIAN COKE NG
CHURCH ST ST
PO BOX 2723
NEW YORK NY 10008-2723



| Account Number: | Please Pay This Amount: |
|---|---|
| | $1,797.99 |
| Patient Name | Due By |
| Coke Ng ,Brian | 01/06/19 |

☐ VISA  ☐ MasterCard  ☐ DISCOVER  ☐ AMERICAN EXPRESS

Card Number:            CVV2 No.*    Exp. Date:

Signature                Amount Paid:

* The CVV2 Number is the last 3 digits on the back of your credit card, by your signature

BELLEVUE HOSPITAL CENTER
P.O. BOX 5281 GPO
NEW YORK, NY 10087

0356365682441000001797990010165 90