# EXHIBIT "A"

Sears No. 2373
North Dartmouth, MA

## TERMINATION OF LEASE AND AGREEMENT

THIS TERMINATION OF LEASE AND AGREEMENT (this "Agreement") is made and entered into as of this 15TH day of May, 2018 (the "Effective Date"), by and between PR NORTH DARTMOUTH LLC, a Delaware limited liability company ("Landlord"), and SEARS, ROEBUCK AND CO., a New York corporation ("Tenant"), (Landlord and Tenant are collectively referred to in this Agreement as the "Parties").

### RECITALS:

WHEREAS, Landlord, as successor in interest to Frank Properties, Inc., original landlord, and Tenant are the parties to that certain Lease dated November 1, 1966, as amended, supplemented and/or extended by the following documents: (1) Letter Agreement dated February 24, 1967; (2) Letter Agreement dated April 9, 1968; (3) Letter Agreement dated April 29, 1968; (4) Letter Agreement dated March 12, 1969; (5) Letter Agreement dated March 14, 1969; (6) Letter Agreement dated December 3, 1969; (7) Letter Agreement dated February 4, 1970; (8) Letter Agreement dated March 25, 1970; (9) Letter Agreement dated April 22, 1971; (10) Agreement dated August 13, 1971; (11) Lease Amendment dated September 22, 1989; (12) Lease Supplement Expansion Completion Dated Letter dated February 20, 1990, (13) Notice of Extension of Lease dated March 25, 1995; (14) Lease Amendment dated April 2, 1996; (15) Lease Amendment dated June 4, 1999 (inadvertently referred to as June 4, 2004 in the Amendment to Lease dated April 9, 2007); (16) Notice of Extension of Lease dated February 3, 2005; (17) Amendment to Lease dated April 9, 2007; (18) Letter Agreement dated April 10, 2015; (19) Nineteenth Lease Amendment dated as of April 15, 2015; and (20) Letter Agreement dated as of April 27, 2015 (collectively the "Lease") for the "Leased Premises" (as that term is used and defined in the Lease) located at 100 N. Dartmouth Mall, North Dartmouth, Massachusetts, 02747; and

WHEREAS, the term of the Lease currently expires on April 12, 2021 (the "Lease Expiration Date"); and

WHEREAS, Landlord and Tenant desire to terminate the Lease prior to the Lease Expiration Date and release and discharge each other from further performance of the provisions of the Lease as of the Termination Date (hereinafter defined), upon the terms and conditions set forth herein.

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, including, without limitation, any provision regarding the amendment or termination of the Lease, or the restoration or surrender of the Leased Premises, and in consideration of the Recitals set forth above, which are hereby incorporated by reference, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant, intending to be legally bound, hereby agree as follows:

1. Capitalized Terms. Capitalized terms used herein but not defined herein shall have the respective meanings ascribed to such terms as specified in the Lease.

2. Termination of Lease. Landlord and Tenant hereby acknowledge and agree that, subject to the terms and conditions expressly set forth in this Agreement, the Lease and each and all of Landlord's and Tenant's respective rights and obligations thereunder shall terminate, and Tenant shall deliver the keys and surrender possession of the Leased Premises to Landlord in the condition described in Section 5, below, on either (a) August 31, 2019 or (b) January 31, 2020 (either such date, as the case may be, the "Termination Date"), at Landlord's option, exercisable by written notice given to Tenant on or before April 30, 2019. If Landlord shall fail to give such written notice on or before

EXECUTION COPY

April 30, 2019, the Termination Date shall be August 31, 2019. Notwithstanding the foregoing or anything else in this Agreement to the contrary, Tenant shall have the right to cease operations in the Leased Premises upon not less than thirty (30) days' advance written notice to Landlord, in which event the minimum rent payable by Tenant under the Lease shall increase, from and after the date of such written notice and continuing until the Termination Date, by an annual amount equal to One Dollar ($1.00) per square foot of leasable area in the Leased Premises, payable in monthly installments as provided in the Lease and pro-rated for partial calendar months.

3.   Termination Payment. Landlord and Tenant agree that Landlord shall pay to Tenant, as valuable and fair consideration for Tenant's agreement to terminate the Lease in accordance with the terms of this Agreement, and pursuant to wire transfer instructions provided to Landlord by Tenant, the sum of Five Million and No/100 Dollars ($5,000,000.00) (the "Termination Payment") to be paid within two (2) days after the Effective Date. Notwithstanding anything to the contrary in this Agreement, until Tenant receives the Termination Payment in accordance with the terms of this Agreement, Tenant shall not be obligated to surrender possession of the Leased Premises to Landlord.

4.   Tenant Obligations. Except as otherwise specifically provided in this Agreement, until Tenant surrenders and delivers possession of the Leased Premises to Landlord in accordance with Section 5, below, Tenant shall continue to satisfy all of its monetary and non-monetary obligations under the Lease, including, without limitation, Tenant's obligations under the Lease with respect to the payment of rent and percentage rent, indemnity, insurance, utilities, and all other operating expenses of every kind and nature, (the "Tenant Lease Obligations"). Notwithstanding the foregoing, in no event shall Tenant be obligated to make any "Major Repair" during the period between the Effective Date and the Termination Date. A "Major Repair" shall mean (with respect to one event or one item, or a series of directly related events or items, and not an aggregate of separate unrelated events or separate unrelated items) a repair (to the extent not covered by the net proceeds received by Tenant with respect to applicable insurance, if any) or a capital improvement which is not attributable to a condition existing on the Effective Date and costing (or which is reasonably estimated to cost) in any case in excess of $125,000

5.   Surrender. On or before the Termination Date, Tenant shall remove its exterior signs, inventory, trade fixtures, equipment and other personal property ("Personal Property") from the Leased Premises and repair all damage to the Leased Premises caused by Tenant's removal of the Personal Property. However, any Personal Property left in the Leased Premises after the Termination Date shall be deemed abandoned by Tenant; Landlord shall have no liability with respect thereto and Landlord may dispose of and/or demolish any such Personal Property, without compensation to Tenant. In this regard, Tenant hereby waives any statutory or common law rights that would prevent Landlord from demolishing or removing any such Personal Property from the Leased Premises after the Termination Date. Tenant shall cause all utility meters to be read as close to the Termination Date as is feasible, and shall be responsible for all amounts shown due. On or before the Termination Date, Tenant shall cancel all contracts between Tenant and any third party with respect to the Leased Premises or with respect to Tenant's Personal Property. On the Termination Date, provided Landlord has delivered to Tenant the Termination Payment, Tenant shall deliver the keys and surrender possession of the Leased Premises to Landlord in "broom-clean" but otherwise "AS IS, WHERE IS" condition with all faults, whether known or unknown. Landlord hereby acknowledges and agrees that, except as expressly set forth in this Agreement, Landlord is not relying on any representation of Tenant regarding the physical condition of the Leased Premises, any environmental matters affecting the Leased Premises or regarding the suitability of the Leased Premises for any particular purpose. Landlord agrees to accept the Leased Premises from Tenant in such condition. The Parties acknowledge and agree that the provisions of this Agreement may conflict with the terms and conditions of the Lease, and the provisions of this Agreement shall supersede, govern and control.

EXECUTION COPY

6. <u>Rent, Real Estate Taxes, and Other Charges</u>. Within thirty (30) days after the Termination Date, the Parties shall adjust between themselves, as of the Termination Date, any prepaid rent or other charges, including but not limited to real estate taxes and assessments and any additional sums due from Tenant under the terms of the Lease.

7. <u>Possession</u>. Tenant shall deliver exclusive possession of the Leased Premises to Landlord on the Termination Date.

8. <u>Inspection Period</u>. Landlord shall have a period of time from the Effective Date until one hundred fifty (150) days thereafter (the "<u>Inspection Period</u>") to inspect or cause to be inspected the physical and environmental condition of the Leased Premises (collectively, "<u>Inspections</u>"). In the event that any of the Inspections discloses evidence of the presence on the Leased Premises of any Hazardous Material (as defined below) which exceeds industrial commercial standards and is proven to have been caused by Tenant's operation, but not in the event of any other physical or structural condition(s) disclosed by the Inspections, then Tenant shall be obligated, at its sole cost and expense, to remove and dispose of any such Hazardous Material in compliance with all applicable Laws (as defined in <u>Section 10(a)(vi)</u>, below), which obligation of Tenant shall survive the Termination Date for one (1) year. As used in this Agreement, the term "<u>Hazardous Material</u>" shall mean petroleum, polychlorinated biphenyl and any other materials defined as a hazardous substance, hazardous waste, hazardous constituents or solid waste in (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 et seq., and any amendments thereto and regulations thereunder, (b) the Resource Conservation and Recovery Act, 42 U.S.C. §6901 et seq., and any amendments thereto and regulations thereunder, (c) Section 311 of the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq. (33 U.S.C. §1321), and (d) any other federal, state or local environmental statute or regulation provided, however, in no event shall "Hazardous Material" be deemed to include asbestos.

9. <u>Condition of Leased Premises</u>. Except as provided in <u>Section 8</u>, above, Tenant shall maintain the Leased Premises in the same condition that they are in at the end of the Inspection Period from that date until the Termination Date, except for ordinary wear and tear and except for Major Repairs, and except as expressly provided herein. Tenant's covenant in this <u>Section 9</u> shall survive the Termination Date for one (1) year.

10. <u>Representations</u>.

    (a)   <u>Representations of Tenant</u>. Tenant hereby represents to Landlord as follows:

        (i)   <u>Authority</u>. Tenant has the full right and authority to enter into this Agreement and the transactions contemplated herein; and the person signing this Agreement and any other document or instrument contemplated hereby on behalf of Tenant is duly authorized to do so. This Agreement is the legal, valid, and binding obligation of Tenant and is enforceable against Tenant in accordance with its terms.

        (ii)   <u>Performance of Obligations</u>. The execution, delivery, and performance of Tenant's obligations under this Agreement and the consummation of the transactions contemplated hereby (a) will not result in a breach or violation of, or result in an acceleration of, any indebtedness under (or adverse change in) any contract, agreement, or instrument to which Tenant is a party or which affects the Leased Premises or any portion thereof, and (b) do not require any consents, approvals, or authorizations not previously obtained by Tenant.

        (iii)   <u>Ownership of Leasehold</u>. Tenant represents that, as of the Effective Date it is,

3

and as of the Termination Date it shall be, sole owner of the Tenant's interest in the Lease, that it had not made any assignment, lease, transfer, conveyance, hypothecation, or other disposition of the Lease, or any interest therein, and that there are no liens or security interests encumbering Tenant's leasehold estate or its interest in the Lease or any improvements on the Leased Premises.

(iv)    Encumbrances on Landlord's Fee Interest. Tenant represents that on and following the Effective Date it will not cause any lien or other encumbrance to be imposed upon Landlord's fee interest in the Leased Premises.

(v)    Litigation. Tenant represents that as of the Effective Date, to the best of the actual knowledge of Jeffrey Stollenwerck, President of Tenant's Real Estate Business, without due inquiry or investigation, there is no suit, action or litigation, administrative hearing, arbitration, labor controversy or negotiation, or other proceeding or governmental inquiry or investigation against Tenant regarding the Leased Premises pending against Tenant regarding the Leased Premises.

(vi)    Compliance with Law. Tenant represents that as of the Effective Date, to the best of the actual knowledge of Jeffrey Stollenwerck, President of Tenant's Real Estate Business, without due inquiry or investigation, the Leased Premises are, and will be, in compliance with all applicable federal, state, municipal or local laws, statutes, codes, ordinances, orders, decrees, rules, or regulations ("Laws"), and Tenant has not received any written notice of a violation of any Laws with respect to the Leased Premises.

If Tenant's representations are not true and correct in all material respects on the Effective Date and on and as of the Termination Date, Landlord may terminate this Agreement by written notice to Tenant, in which event this Agreement shall be of no further force or effect and neither party shall have any further liability or obligation hereunder.

Tenant's representations contained herein shall survive the Termination Date for one (1) year.

(b)    Representations of Landlord. Landlord hereby represents and warrants to Tenant as follows:

(i)    Authority. Landlord has the full right and authority to enter into this Agreement and the transactions contemplated herein; and the persons signing this Agreement and any other document or instrument contemplated hereby on behalf of Landlord are duly authorized to do so. This Agreement is the legal, valid, and binding obligation of Landlord and is enforceable against Landlord in accordance with its terms.

(ii)    Performance of Obligations. The execution, delivery, and performance of Landlord's obligations under this Agreement and the consummation of the transactions contemplated hereby (a) will not result in a breach or violation of, or result in an acceleration of, any indebtedness under (or adverse change in) any contract, agreement, or instrument to which Landlord is a party or which affects the Leased Premises or any portion thereof, and (b) do not require any consents, approvals, or authorizations not previously obtained by Landlord.

(iii)    No Assignment. As of the Effective Date, neither the Lease nor any interest therein has been, and as of the Termination Date shall not have been, assigned or transferred by Landlord to any person or entity, other than a collateral assignment to secure debt.

Landlord's representations contained herein shall survive the Termination Date for one (1) year.

4

EXECUTION COPY

11. **Notices.** All notices, demands, statements, designations, approvals or other communications (collectively, "**Notices**") given or required to be given by either party to the other hereunder or by law shall be in writing, shall be (a) sent by United States certified or registered mail, postage prepaid, return receipt requested ("**Mail**"), (b) delivered by a nationally recognized overnight courier (with a signature required), or (c) delivered personally. Any Notice will be deemed given (i) three (3) days after the date it is posted if sent by Mail, (ii) the date the overnight courier delivery is made or refused, or (iii) the date personal delivery is made. Notices must be sent or delivered, as the case may be, to the following addresses:

> Landlord:   PR North Dartmouth, LLC
> c/o PREIT Services, LLC
> 200 South Broad Street
> 3rd Floor
> Philadelphia, PA 19102
> Attn: General Counsel
>
> Tenant:   Sears, Roebuck and Co.
> 3333 Beverly Road
> Hoffman Estates, Illinois 60179
> Attn:   Vice President - Real Estate
> and Real Estate Law; Dept. 824RE

12. Default and Remedies.

   (a) **Events of Default.** There shall be a default under this Agreement upon:

   (i) Failure to comply with any term, obligation, covenant or condition contained herein; or

   (ii) Any warranty, representation or statements made or furnished to either party by or on behalf of the other party proving to be false in any material respect when made or furnished.

   (b) **Remedies.** In the event either party defaults by failing to perform any of the conditions and covenants contained herein, or any of its warranties or representations are breached or shall prove to have been false or incorrect when made, the non-defaulting party may, without election, exercise all rights and remedies available to it hereunder or as provided by law or in equity.

13. Miscellaneous.

   (a) **Memorandum for Recording.** The Parties agree that this Agreement shall not be recorded. The Parties further agree that a Memorandum of Lease Termination in the form attached hereto as **Exhibit A** and made a part hereof, shall be filed in the real estate records of the county in which the Leased Premises is located upon the vacation and surrender of possession of the Leased Premises by Tenant in accordance with the terms of this Agreement.

   (b) **Voluntary Agreement.** The Parties have read this Agreement and the mutual releases contained in it, and on advice of counsel they have freely and voluntarily entered into this Agreement.

   (c) **Governing Law.** This Agreement will be construed and enforceable in accordance with the laws of the State or Commonwealth in which the Leased Premises is located. Any lawsuit brought

EXECUTION COPY

by Landlord or Tenant against the other must be filed in a court of general jurisdiction in the State or Commonwealth in which the Leased Premises is located.

(d) Attorneys' Fees. In the event of any legal action or other proceeding between the Parties regarding this Agreement or the Lease (an "Action"), the prevailing party shall be entitled to the payment by the losing party of its reasonable attorneys' fees, court costs and litigation expenses, as determined by the court. The term "prevailing party" as used herein includes, without limitation, a party: (i) who agrees to dismiss an Action on the other party's performance of the covenants allegedly breached, (ii) who obtains substantially the relief it has sought (which includes, without limitation, a party who has an Action voluntarily dismissed against it); or (iii) against whom an Action is dismissed (with or without prejudice) and cannot be refiled. Additionally, the prevailing party in any Action shall be entitled, in addition to and separately from the amounts recoverable under this Section 13(d), to the payment by the losing party of the prevailing party's reasonable attorneys' fees, court costs and litigation expenses incurred in connection with: (y) any appellate review of the judgment rendered in such Action or of any other ruling in such Action; and (z) any proceeding to enforce a judgment in such Action. It is the intent of the Parties that the provisions of this Section 13(d) be distinct and severable from the other rights of the parties under this Agreement, shall survive the Effective Date, shall survive the entry of judgment in any Action and shall not be merged into such judgment. The phrase "reasonable attorneys' fees actually incurred" or similar phrases used in this Agreement and relating to the attorneys' fees the prevailing party in any Action is permitted to recover under the terms of this Agreement shall be deemed to mean reasonable attorney's fees, and shall be deemed to include the cost of enforcing any term or condition of this Agreement, the cost of proving all damages and the cost of proving the amount of and the reasonableness of all attorneys' fees, including, but not limited to, the cost of any experts to prove same. In addition, the term "attorneys' fees" as used throughout this Agreement shall include the fees of third party attorneys and the fees of "in house" legal counsel of Landlord and Tenant, as appropriate.

(e) WAIVER OF TRIAL BY JURY; INJUNCTION. LANDLORD AND TENANT EACH HEREBY WAIVE TRIAL BY JURY OF ANY DISPUTE ARISING UNDER THIS AGREEMENT. IN ADDITION TO ALL OTHER REMEDIES, LANDLORD IS ENTITLED TO THE EQUITABLE REMEMDY OF INJUNCTIVE RELIEF WITH RESPECT TO ALL VIOLATIONS BY TENANT, WHETHER ACTUAL, ATTEMPTED OR THREATENED, OF ANY COVENANT, CONDITION OR PROVISION OF THIS AGREEMENT.

(f) Confidentiality. The Parties agree that all terms of this Agreement as well as any information provided to either party by the other with respect to the transaction contemplated by this Agreement (collectively, "Confidential Information") will remain confidential and will not be divulged by the receiving Party without the written consent of the other Party, such consent not to be unreasonably withheld, conditioned or delayed but may be conditioned, except that Landlord may disclose the Confidential Information without Tenant's consent to Landlord's officers, affiliates, and advisors (including, without limitation, attorneys, accountants, consultants and financial advisors), to its mortgagee or prospective mortgagee and to any servicer of the loan held by any such mortgagee, to any potential user or tenant of the Leased Premises, or any portion thereof, and to any agency (governmental or public) in connection with Landlord's pursuit of any entitlements and/or approvals deemed by Landlord to be necessary for construction, reconstruction and/or redevelopment of the Leased Premises, so long as Landlord informs the receiving parties of the confidential nature of the Confidential Information and directs the receiving parties to treat the Confidential Information confidentially in accordance with this Section 13(f). In addition, Landlord and Tenant hereby agree that Landlord shall have the affirmative right to issue a press release/announcement regarding the execution of this Agreement (the "Announcement"), and the Parties hereby agree to work together in good faith to mutually agree upon the language and of timing the said Announcement. Notwithstanding anything contained herein to the contrary, the obligation of confidentiality does not apply to (i) Confidential

6

Information which is now, or in the future becomes, part of the public domain, other than by breach of the terms of this Section 13(f) or breach of confidentiality by anyone bound under like terms of confidentiality to the Party making such public disclosure, (ii) Confidential Information lawfully obtained from independent sources, and (iii) disclosure specifically authorized by a Party in writing. Without limiting the foregoing, each Party agrees and acknowledges that no copies, summaries, abstracts or other reproductions of this Agreement or its terms will be provided to any third party not advised of the confidential nature of the material as provided in this Section 13(f). The Parties acknowledge and agree that in the event either Party breaches the terms of this Section 13(f), the other Party will be irreparably harmed, but that such other Party's damages in such an event are and will be difficult to calculate and, therefore, such other Party shall be entitled to pursue an action for equitable relief, including, but not limited to, temporary or permanent injunctions, against any actual or threatened breach of this Section 13(f), in addition to all other rights and remedies available at law or in equity. Notwithstanding anything in this Agreement to the contrary, Landlord may divulge Confidential Information without Tenant's consent to a proposed institutional mortgagee in connection with any financing by Landlord of the Leased Premises (who, in turn, may disclose the Confidential Information to its officers, advisors, attorneys, appraisers and other consultants in connection with the approval and documentation of such financing).

(g)  Integration. This Agreement supersedes all prior and contemporaneous agreements and understandings between and among the Parties hereto, and this Agreement constitutes the entire agreement between Tenant and Landlord, and there are no other covenants, agreements, promises, terms, provisions, conditions, undertakings, or understandings, either oral or written, between them concerning the termination of the Lease, other than those herein set forth. No subsequent alteration, amendment, change, deletion or addition to this Agreement shall be binding upon Tenant or Landlord unless in writing and signed by both Tenant and Landlord.

(h)  Headings. The headings, captions, numbering system, etc., are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of this Agreement.

(i)  Binding Effect. All of the provisions of this Agreement are hereby made binding upon and shall inure to the benefit of the personal representatives, heirs, successors, and assigns of both Parties hereto.

(j)  Unenforceable or Inapplicable Provisions. If any provision hereof is for any reason unenforceable or inapplicable, the other provisions hereof will remain in full force and effect in the same manner as if such unenforceable or inapplicable provision had never been contained herein.

(k)  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Where this Agreement has been signed in multiple counterparts, the signature page of such instrument may be detached and reattached to any other which is identical in form.

(l)  Construction. This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that the Agreement may have been prepared primarily by counsel for one of the Parties, it being recognized that both Landlord and Tenant have contributed substantially and materially to the preparation to this Agreement.

(m)  Time is of the Essence. Time is of the essence with respect to the timeliness of all obligations of Landlord and Tenant under this Agreement.

EXECUTION COPY

(n) <u>Further Assurances</u>. Each of Landlord and Tenant agrees, at any time and from time to time after the Effective Date, to execute, acknowledge where appropriate, and deliver such further instruments and documents and to take such other action as the other party may reasonably request in order to carry out the intents and purposes of this Agreement; provided, however, that neither party shall be required to execute any instrument or document pursuant to this <u>Section 13(n)</u> which would increase the liability or obligations of such party over that provided for in this Agreement and the instruments and documents executed by such party pursuant hereto.

(o) <u>Releases</u>. Upon completion of all obligations of Landlord and Tenant, respectively, as specifically set forth in this Agreement (including, without limitation, Tenant's obligations set forth in <u>Section 6</u> hereof) and except for third party claims as indicated below, Landlord and Tenant shall hereby forever release and discharge each other and their respective officers, directors, trustees, members, shareholders, partners, agents, employees and affiliates from any and all claims, obligations, liabilities, damages, losses, demands, and causes of action which either party ever had, now has, or in the future may have against the other party arising from, under, or in any way related to the Lease or the Leased Premises. The termination of the Lease shall not preclude a party from exercising any discovery rights it has against the other party in connection with any civil litigation or arbitration proceedings involving a third party. The releases set forth in this <u>Section 13(o)</u> are intended as full settlements and compromises of each, every and all claims of every kind and nature, except for third party claims as indicated herein.

(p) <u>Mutual Indemnities</u>. Landlord shall indemnify, defend, and hold Tenant harmless from and against any and all claims, obligations, liabilities, damages, losses, demands, and causes of action arising out of, or due to, personal injury and property damage claims by third-parties based upon acts or events occurring prior to the Termination Date on the portion of Dartmouth Mall owned by Landlord and not leased by Tenant. Tenant shall indemnify, defend, and hold Landlord harmless from and against any and all claims, obligations, liabilities, damages, losses, demands, and causes of action arising out of, or due to, personal injury and property damage claims by third-parties based upon acts or events occurring prior to the Termination Date on the portion of Dartmouth Mall owned by Landlord and leased by Tenant.

(q) <u>Contingency</u>. Notwithstanding anything in this Agreement to the contrary, each and every one of the obligations of Landlord and Tenant under this Agreement are and shall be conditioned upon and subject in every respect to Landlord's receipt of the written consent ("<u>Consent</u>"), satisfactory in form and substance to Landlord in Landlord's sole discretion, of Landlord's mortgage lender ("<u>Lender</u>"), or of Lender's designated loan servicer on behalf of Lender, with respect to the transaction contemplated by this Agreement, as required by the provisions of Section 5.13 of that certain Loan Agreement dated as of March 11, 2013 by and between Bank of America, N.A., as lender, and Landlord, as borrower, as the same may thereafter have been amended and/or assigned. In the event that the Consent is not received on or before June 15, 2018, then either Landlord or Tenant shall thereafter have the right and option to terminate this Agreement by written notice delivered to the other.

*[Signatures on following page]*

8

EXECUTION COPY

IN WITNESS WHEREOF, Landlord and Tenant have executed this Termination of Lease and Agreement as of the Effective Date.

**LANDLORD:**

PR NORTH DARTMOUTH LLC, a Delaware limited liability company

By:   PREIT Associates, L.P., a Delaware limited partnership, its member

      By:   Pennsylvania Real Estate Investment Trust, a Pennsylvania business trust, its sole general partner

           By: _____
           Name: Lisa M. Most
           Its: Senior Vice President, General Counsel and Secretary

**TENANT:**

SEARS, ROEBUCK AND CO., a New York corporation

By: _____
Name: JoAnn Catanese
Its: Divisional Vice President, Real Estate

EXECUTION COPY

Sears No. 2373<br>North Dartmouth, MA

## EXHIBIT A

This instrument prepared by
and when recorded return to:

_____
_____
_____
_____

## MEMORANDUM OF LEASE TERMINATION

THIS MEMORANDUM OF LEASE TERMINATION AGREEMENT (this "**Memorandum**") is entered into as of this ___ day of _____, 20__ ("**Effective Date**"), by and between PR NORTH DARTMOUTH LLC, a Delaware limited liability company ("**Landlord**"), and SEARS, ROEBUCK AND CO., a New York corporation ("**Tenant**").

### WITNESSETH:

WHEREAS, Landlord, as successor in interest to Frank Properties, Inc., original landlord, and Tenant are the parties to that certain Lease dated November 1, 1966, as amended, supplemented and/or extended by the following documents: (1) Letter Agreement dated February 24, 1967; (2) Letter Agreement dated April 9, 1968; (3) Letter Agreement dated April 29, 1968; (4) Letter Agreement dated March 12, 1969; (5) Letter Agreement dated March 14, 1969; (6) Letter Agreement dated December 3, 1969; (7) Letter Agreement dated February 4, 1970; (8) Letter Agreement dated March 25, 1970; (9) Letter Agreement dated April 22, 1971; (10) Agreement dated August 13, 1971; (11) Lease Amendment dated September 22, 1989; (12) Lease Supplement Expansion Completion Dated Letter dated February 20, 1990, (13) Notice of Extension of Lease dated March 25, 1995; (14) Lease Amendment dated April 2, 1996; (15) Lease Amendment dated June 4, 1999 (inadvertently referred to as June 4, 2004 in the Amendment to Lease dated April 9, 2007); (16) Notice of Extension of Lease dated February 3, 2005; (17) Amendment to Lease dated April 9, 2007; (18) Letter Agreement dated April 10, 2015; (19) Nineteenth Lease Amendment dated as of April 15, 2015; and (20) Letter Agreement dated as of April 27, 2015 (collectively the "**Lease**") for the "**Leased Premises**" (as that term is used and defined in the Lease) located at 100 N. Dartmouth Mall, North Dartmouth, Massachusetts, 02747; and

WHEREAS, Landlord and Tenant have terminated the Lease and released each other from any and all obligations arising under the Lease as of the Effective Date set forth above, pursuant to a Termination of Lease and Agreement dated as of May ___, 2018 (the "**Agreement**") and wish to place a notice thereof in the public records.

NOW THEREFORE, in furtherance of the Agreement and in consideration of the benefits to be derived therefrom, Landlord and Tenant confirm that the Lease has been terminated according to the terms of the Agreement, effective as of the Effective Date set forth above, and agree that this Memorandum should be recorded in the public records for Bristol County, Massachusetts to clear the public records of the Lease. This Memorandum is notice of the Agreement only and does not serve to vary the terms thereof.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Memorandum of Lease Termination as of the Effective Date.

**LANDLORD:**

PR NORTH DARTMOUTH LLC, a Delaware limited liability company

By: PREIT Associates, L.P., a Delaware limited partnership, its member

By: Pennsylvania Real Estate Investment Trust, a Pennsylvania business trust, its sole general partner

By: _____
Name: Lisa M. Most
Its: Senior Vice President, General Counsel and Secretary

COMMONWEALTH OF PENNSYLVANIA  )
                                ) ss.
COUNTY OF PHILADELPHIA          )

On _____, 20__ before me, a Notary Public in and for said County and Commonwealth, personally appeared Lisa M. Most, being the Senior Vice President, General Counsel and Secretary of Pennsylvania Real Estate Investment Trust, the sole general partner of PREIT Associates, L.P., member of **PR NORTH DARTMOUTH, LLC**, a Delaware limited liability company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument as its free and voluntary act, and as the free and voluntary act and deed of said **PR NORTH DARTMOUTH LLC**, for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(Seal)

_____
Notary Public

<u>TENANT:</u>
SEARS, ROEBUCK AND CO.,
a New York corporation

By: _____
Name: _____
Its: _____

STATE OF ILLINOIS )
                 ) ss.
COUNTY OF COOK   )

On _____, 20___ before me, _____, a Notary Public in and for said County and State, personally appeared _____ being the _____ of SEARS, ROEBUCK AND CO., a New York corporation, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument as his/her free and voluntary act, and as the free and voluntary act and deed of said SEARS, ROEBUCK AND CO., a New York corporation, for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(Seal)

_____
Notary Public

Sears No. 2373
North Dartmouth, MA

## EXHIBIT A
## LEGAL DESCRIPTION

[ATTACHED]