GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212.813.8800
F: 212.355.3333
Gregory W. Fox
Barry Z. Bazian
*Counsel to Waste Management*
*National Services, Inc. and its affiliates*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:**<br><br>**SEARS HOLDINGS CORPORATION,** *et al.*,<br><br>**Debtors.** | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**OBJECTION OF WASTE MANAGEMENT NATIONAL SERVICES, INC. AND ITS AFFILIATES TO (A) NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION; AND (B) THE GLOBAL ASSET SALE TRANSACTION**

Waste Management National Services, Inc. (together with its affiliates, "WM"), hereby files this objection (the "Objection") to (a) the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "Cure Notice"); and (b) the Global Asset Sale Transaction, as described and defined in the *Notice of Successful Bidder and Sale Hearing* [Docket No. 1730] (the "Successful Bidder Notice"). In support of this Objection, WM states as follows:

**BACKGROUND**

1. Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On November 19, 2018, the Court entered the *Order Approving Global Bidding Procedures and Granting Related Relief* [Docket No. 816] (the "Global Bidding Procedures Order").[1]

3. On January 18, 2019, the Debtors filed the Successful Bidder Notice, which, among other things, announced that the Debtors determined that the offer submitted by Transform Holdco, LLC (the "Buyer"), established by ESL Investments, Inc., to acquire all or substantially all of the Global Assets, was the highest or best offer for the Global Assets. A copy of the asset purchase agreement between the Debtors and the Buyer (the "Asset Purchase Agreement") is attached to the Successful Bidder Notice as Exhibit B.

4. On January 18, 2019, the Debtors filed the Cure Notice. Exhibit A to the Cure Notice identifies 53 "contracts" with WM. *See* Cure Notice, Exhibit A, Nos. 7422-7475. Although unclear in the Cure Notice, it appears that the Debtors are proposing an aggregate cure amount for all such contracts in the amount of $1,944,436 (the "Proposed Cure Amount").

**ADDITIONAL BACKGROUND AND OBJECTION**

5. WM provides Services to the Debtors[2] pursuant to that certain Amended and Restated Waste Hauling and Recycling Master Services Agreement dated as of June 19, 2015 but

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Global Bidding Procedures Order.

[2] The following Debtors are parties to the MSA: Sears, Roebuck and Co., Kmart Corporation, Sears Roebuck de Puerto Rico, Inc., Sears Logistics Services, Inc. (which is a name used by Innovel Solutions, Inc.), Sears Home Improvement Products, Inc. A non-Debtor entity, Sears Hometown and Outlet Stores, Inc., is also a party to the MSA.

2

effective as of February 1, 2015 (as amended from time to time, the "MSA"). Pursuant to the MSA, WM provides recurring monthly waste management services to the Debtors. These services include the collection, transportation, disposal, and/or processing of waste and recyclable materials, provision of containers and other necessary equipment (certain of which are the property of WM), and certain ancillary, temporary and non-recurring services (collectively, the "Hauling Services").

6. After the Petition Date, the Debtors and WM entered into an agreement dated as of November 14, 2018 relating to the provision of Hauling Services (the "Post-petition Agreement").[3] Pursuant to the Post-petition Agreement, the Debtors agreed, among other things, to the amount of WM's pre-petition claim at that time, subject to potential future reduction pursuant to the terms of the Post-petition Agreement.

7. As of the date of this Objection, the total amount owing to WM to cure all monetary defaults under the MSA is $2,463,804.38, subject to potential future reduction pursuant to the terms of the Post-petition Agreement (the "Actual Cure Amount").[4] All documentation supporting the Actual Cure Amount is attached to the Post-petition Agreement, a copy of which the Debtors possess.

**A. Objection to Cure Notice**

8. WM objects to the Cure Notice for two reasons. First, the Cure Notice incorrectly identifies the contracts between the Debtors and WM. Aside from the MSA (and the Post-petition Agreement), WM is not aware of any other currently effective contract with the Debtors. Accordingly, the Cure Notice should be revised to reflect only the MSA.

---

[3] As the terms of the MSA and the Post-petition Agreement are confidential, copies are not attached hereto.

[4] If the Actual Cure Amount is reduced at the time of the assumption and assignment of the MSA, WM will provide the Debtors and the Buyer the updated Actual Cure Amount at that time.

3

ACTIVE/98204421.2

9. Second, WM objects to the Proposed Cure Amount set forth in the Cure Notice. In order to assume and assign the MSA to the Buyer, the Debtors or the Buyer must promptly cure all defaults. *See* 11 U.S.C. § 365(b)(1). Notwithstanding the Debtors' Proposed Cure Amount, as previously agreed to in the Post-petition Agreement, the unpaid amount actually owed by the Debtors to WM for pre-petition Hauling Services is the Actual Cure Amount.

B. **Objection to Global Asset Sale Transaction**

10. WM also objects to any arrangement whereby the Buyer may utilize (directly or indirectly) WM's services or equipment after the closing of the Global Asset Sale Transaction without effecting an assignment of the MSA to the Buyer. Specifically, the Asset Purchase Agreement contemplates a "transition services agreement pursuant to which Sellers shall provide Buyer and Buyer shall provide Sellers, as applicable, with certain services for a transitional period following the Closing Date." *See* Asset Purchase Agreement at 8.8(a). As a copy of the transition services agreement has not been filed with the Court, it is not clear at this time whether the Debtors and the Buyer intend to allow the Buyer to utilize WM's Hauling Services during such "transitional period following the Closing Date" without effecting an assignment of the MSA.

11. Any arrangement that allows the Buyer to obtain the benefits of the MSA without taking an assignment of the MSA is an impermissible end-run around the requirements and protections of Section 365 of the Bankruptcy Code, which requires, as a condition to the assumption and assignment of the MSA, that all defaults under the MSA be cured. *See* 11 U.S.C. § 365(b). If the Buyer wishes to obtain the benefits of the MSA after the sale closing— including by utilizing WM's Hauling Services and WM's equipment currently at the Debtors' stores—it must take an assignment of the MSA effective upon the closing and pay the Actual

Cure Amount. *See In re Antwerp Diamond, Inc.*, 138 B.R. 865 (Bankr. N.D. Ohio 1992) (finding that, despite the debtors' intention to not assume and assign their leases, an arrangement whereby the buyer of the debtors' inventory could continue to use the debtors' leased premises post-closing to conduct going out of business sales "would be tantamount to an assignment of the Debtors' interest in those affected premises").

12. Conversely, if the Buyer is not willing to take an assignment of the MSA, WM requests that the order approving the sale provide that upon the closing of the Global Asset Sale Transaction WM is permitted to immediately cease providing Hauling Services to, and retrieve all of WM's equipment from, the stores and other premises that were sold to the Buyer.

## RESERVATION OF RIGHTS

13. WM continues to review the Asset Purchase Agreement, the proposed sale order and other relevant documents and information that have been filed with the Court. In addition, a copy of the transition services agreement has not been filed with the Court, and additional pleadings and information relevant to this Objection may be filed, disclosed or learned after the filing of this Objection. Accordingly, WM expressly reserves the right to amend, supplement, and/or modify this Objection and to file in the future additional appropriate pleadings.

*[Remainder of page intentionally left blank]*

ACTIVE/98204421.2

WHEREFORE, WM respectfully requests that this Court enter an Order: (1) conditioning any assumption and/or assignment of the MSA upon the Debtors' or the Buyer's payment of the Actual Cure Amount; (2) prohibiting any arrangement whereby the Buyer will benefit from the MSA without taking an assignment of the MSA as of the closing of the Global Asset Sale Transaction; (3) in the event the Buyer does not wish to take an assignment of the MSA, permitting WM to immediately cease providing Hauling Services to, and retrieve all of WM's equipment from, the stores and other premises that were sold to the Buyer; and (4) granting to WM such other and further relief as is just and appropriate.

Dated:  New York, New York
        January 24, 2019

         */s/ Gregory W. Fox*
         GOODWIN PROCTER LLP
         The New York Times Building
         620 Eighth Avenue
         New York, New York 10018
         T: 212.813.8800
         F: 212.355.3333
         Gregory W. Fox
         Barry Z. Bazian
         gfox@goodwinlaw.com
         bbazian@goodwinlaw.com
         *Counsel to Waste Management*
         *National Services, Inc. and its affiliates*