David S. Kupetz
Claire K. Wu
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Tel:  (213) 626-2311
Fax: (213) 629-4520

*Counsel for Izek Shomof and Aline Shomof Irrevocable*
*Children's Trust Dated February 11, 1999,*
*Vegas Group, LLC, and East River Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION TO CURE AMOUNT FOR STORE #1008 FILED BY IZEK**
**SHOMOF AND ALINE SHOMOF IRREVOCABLE CHILDREN'S TRUST DATED**
**FEBRUARY 11, 1999, VEGAS GROUP, LLC, AND EAST RIVER GROUP, LLC**

Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999,

Vegas Group, LLC, and East River Group, LLC (collectively, "Landlord"), through its

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).

undersigned counsel, hereby objects (the "Cure Claim Objection") to the Debtors' stated cure

amount, as follows:

1.       Landlord is the lessor and debtor Sears, Roebuck and Co., a New York corporation

("Sears Roebuck" or "Tenant"), is the lessee of part of the iconic Sears building located at 2650

East Olympic Boulevard in Boyle Heights, Los Angeles, California (the "Building"), Store No.

1008 (the "Premises"), under the terms of that certain Amended and Restated Building Lease

dated May 5, 2011 (the "2011 Lease"), as amended pursuant to that certain amendment known as

"Amendment to Amended and Restated Building Lease" between Landlord and Sears Roebuck,

dated as of December 30, 2015 (the "Amendment" and collectively with the 2011 Lease, the

"Lease").

2.       Landlord is the owner of the Building.

3.       Sears Roebuck operates its Store No. 1008 at the Premises.

4.       On January 18, 2019, the Debtors served their "Notice of Cure Costs and Potential

Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with

Global Sale Transactions" (the "Cure Notice") (ECF No. 1731).

5.       At page 1 of 10, No. 2, of Exhibit "B" of the Cure Notice, the Debtors do not list

any amount as the cure amount (the "Cure Amount") for the Lease.

6.       The Cure Amount currently due under the terms of the Lease is an amount not less

than **$1,474,940.61**, which amount is comprised of: (1) CAM charges in the amount of $5,270.31;

(2) property tax reimbursement in the amount of $44,868.68, and (3) remaining reimbursement

balance for Sears TI Construction Expenses in the amount of $1,424,801.62.[2] Copies of

supporting documents for each are attached hereto as **Exhibits A, B,** and **C**, respectively.  **Exhibit**

---

[2] As discussed below, the Cure Amount shall increase substantially if Tenant does not cooperate with Landlord and
enable the commencement of renovation work to be done at the Premises prior to March 16, 2019.

**A is** a copy of an invoice for the outstanding February 2019 CAM charges. **Exhibit B** is a copy

of an invoice for the outstanding 2018-2019 annual property tax reimbursement, including a copy

of the Annual Secured Property Tax Bill and proof of partial payment. **Exhibit C** consists of a

chart showing the beginning amount ($3,250,000) of funds provided by Landlord to be used for

reimbursement of construction expenses at the Premises, the amounts previously reimbursed to

Landlord, and the remaining reimbursement balance for Sears TI Construction Expenses, and also

includes a copy of the Amendment.

      7.     The categorical breakdown of the current Cure Amount is as follows:

| Category | Amount |
|---|---|
| CAM charges for February 2019 | $5,270.31 – See Ex. A. |
| 2018-2019 annual property tax reimbursement | $44,868.68 – See Ex. B. |
| Reimbursement balance for Sears TI Construction Expenses | $1,424,801.62 – See Ex. C. |
| **TOTAL** | **An amount not less than $1,474,940.61.**[3] |

      8.     With respect to the Debtors' construction expense reimbursement obligation, the

sum of $322,649.80[4] is due and owing from Tenant to Landlord at this time and the additional

balance of Landlord's funds being held in the sum of $1,102.151.82 is required to be used to

reimburse Landlord for construction expenses at the Premises and, accordingly, must be

maintained strictly for that purpose and is part of the Cure Amount.

      9.     Additionally, the Building is in immediate need of extensive renovations that

require the cooperation of Tenant and such cooperation (as of this time) has not been

forthcoming. The City of Los Angeles passed Ordinance 183893, which requires the retrofit of

---

[3] *Id*.

[4] See the invoice reflecting this sum attached hereto as **Exhibit D**.

pre-1978 wood-frame soft-story buildings and non-ductile concrete buildings.  The Building is a

non-ductile concrete building that requires structural upgrades.  Pursuant to section 2(e)(ii)(3) of

the Lease, Landlord is required to operate and maintain the Building in accordance with all

applicable law, which would include structural upgrades in conformance with Ordinance 183893.

Landlord is ready, willing, and able to commence necessary renovation construction at the

Building, but has received no cooperation from Tenant since the Debtors' commencement of their

bankruptcy cases.

10.    The lack of cooperation from Tenant regarding the necessary renovations, if it

continues, will be the direct cause of Landlord losing the entitlements it secured from the City of

Los Angeles in March of 2016.  In the event that Landlord loses the entitlements as a result of not

being able to renovate the Building due to the lack of cooperation from Sears Roebuck, Landlord

will suffer a catastrophic financial loss that would result in significant financial liability for the

Debtors and would substantially increase the Cure Amount set forth above.  Landlord's

entitlements will expire unless construction begins prior to March 16, 2019.

11.    In order to assume the Lease, the Debtors must cure the aforementioned

outstanding amounts.

12.    This Cure Claim Objection is without prejudice to the fact that other and additional

cure claim amounts (a) may exist and/or may become known at a future date, and (b) will accrue

on an ongoing basis between the filing of this Cure Claim Objection and any subsequent

assumption of the Lease.  Landlord hereby expressly reserves its right to amend or supplement

this Cure Claim Objection through and including the effective date of any proposed assumption

and assignment of the Lease.

Dated: January 25, 2019          By: _/s/ David S. Kupetz_
       Los Angeles, California          David S. Kupetz
                                **Sulmeyer**Kupetz
                                A Professional Corporation
                                333 South Grand Avenue, Suite 3400
                                Los Angeles, California 90071
                                Tel:  (213) 626-2311
                                Email: dkupetz@sulmeyerlaw.com

                                *Counsel for Izek Shomof and Aline Shomof Irrevocable*
                                *Children's Trust Dated February 11, 1999,*
                                *Vegas Group, LLC, and East River Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection of Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999, Vegas Group, LLC, and East River Group, LLC, to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction was electronically filed and served upon all those who receive electronic notification on January 25, 2019.

/s/David S. Kupetz

# EXHIBIT A

**East River Group LLC**

724 S Spring Street, Suite #802
Los Angeles, CA 90014

# Invoice

| Date | No. |
|------|-----|
| 1/24/2019 | 02-003 |

| Bill To |
|---------|
| SEARS Holdings |
| Accounting Service Center |
| 2301 West Plano Parkway Ste # 201 |
| Plano Texas 75075 |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | FEBRUARY 2019 CAM CHARGES | 5,270.31 | 5,270.31 |
| | PLEASE MAKE CHECK PAYABLE AND SEND TO: | | |
| | **East River Group LLC** | | |
| | 724 S Spring Street, Suite #801 | | |
| | Los Angeles, CA 90014 | | |
| | **Total** | | $ 5,270.31 |

0006

# EXHIBIT B

**East River Group LLC**

724 S Spring Street, Suite #802

Los Angeles, CA 90014

## Statement

| Date | Invoice # |
| --- | --- |
| 1/22/2019 | 01-001PT |

| Bill To |
| --- |
| **SEARS Holdings Management Corporation**<br>Accounting Service Center<br>2301 West Plano Parkway Ste # 201<br>Plano, Texas 75075 |

| Quantity | Description | Rate | Amount |
| --- | --- | --- | --- |
| | 2018-2019 Annual Property Tax for AIN #5169-010-006 18 from July 1, 2018 to June 30, 2019 = $285,314.80 | | |
| | 20% of $285,314.80 2018-2019 Annual Property Tax | 57,062.96 | 57,062.96 |
| | **Less Payment: Ck#140058861 Dated 12/24/18** | | (12,194.28) |
| | PLEASE MAKE CHECK PAYABLE AND SEND TO:<br><br>**East River Group LLC**<br>724 S Spring Street, Suite #801<br>Los Angeles, CA 90014 | | |
| | **Total Amount Due** | $ | 44,868.68 |

0007

**2018**

# ANNUAL SECURED PROPERTY TAX BILL

CITIES, COUNTY, SCHOOLS AND ALL OTHER TAXING AGENCIES IN LOS ANGELES COUNTY

**2018**

## SECURED PROPERTY TAX FOR FISCAL YEAR JULY 1, 2018 TO JUNE 30, 2019

JOSEPH KELLY, TREASURER AND TAX COLLECTOR

FOR ASSISTANCE CALL 1(213) 974-2111 OR 1(888) 807-2111, ON THE WEB AT lacountypropertytax.com

**PROPERTY IDENTIFICATION**
ASSESSOR'S ID.NO. : 5169 010 006 18 000

OWNER OF RECORD AS OF JANUARY 1, 2018
SAME AS BELOW

**MAILING ADDRESS**

0068575-0068575 SNGL 002 1234-- 737856

SHOMOF,ERIC TRS ET AL
I AND A SHOMOF TRUST LESSOR
SEARS ROEBUCK AND CO LESSEE
724 S SPRING ST STE 801
LOS ANGELES CA 90014-2944

**ELECTRONIC FUND TRANSFER (EFT) NUMBER**
ID#:19 5169 010 006 8 YEAR:18 SEQUENCE:000 0
PIN:   941J1J

**SPECIAL INFORMATION**

ASSESSOR'S ID. NO.  YR SEQ   CK

**DETAIL OF TAXES DUE FOR**   **5169 010 006   18 000   90**

| AGENCY | AGENCY PHONE NO. | RATE | AMOUNT |
|---|---|---|---|
| GENERAL TAX LEVY | | | |
| ALL AGENCIES | | 1.000000 | $ 134,283.39 |
| | | | |
| VOTED INDEBTEDNESS | | | |
| CITY-L.A. ADELAN | | .023107 | $ 3,102.89 |
| METRO WATER DIST | | .003500 | 469.99 |
| COMMNTY COLLEGE | | .046213 | 6,205.64 |
| UNIFIED SCHOOLS | | .123226 | 16,547.20 |
| | | | |
| DIRECT ASSESSMENTS | | | |
| FLOOD CONTROL | (626) 458-5165 | | $ 5,127.40 |
| LA STORMWATER | (213) 485-2422 | | 4,087.70 |
| COUNTY PARK DIST | (833) 265-2600 | | 1,381.18 |
| LACO VECTR CNTRL | (800) 273-5167 | | 13.09 |
| LACITY PARK DIST | (213) 847-4708 | | 3,623.80 |
| CITY LT MAINT | (213) 847-1363 | | 4,601.39 |
| RPOSD MEASURE A | (833) 265-2600 | | 27,666.67 |
| TRAUMA/EMERG SRV | (866) 587-2862 | | 78,204.46 |

**PROPERTY LOCATION AND/OR PROPERTY DESCRIPTION**
2650 E OLYMPIC BLVD          LOS ANGELE
TR=9410 POR OF LOT 1 AND TR 6783 POR OF
LOTS 2,3,4 AND 5 BLK 8

| | | |
|---|---|---|
| **TOTAL TAXES DUE** | | **$285,314.80** |
| **FIRST INSTALLMENT TAXES** | DUE NOV. 1, 2018 | **$142,657.41** |
| **SECOND INSTALLMENT TAXES** | DUE FEB. 1, 2019 | **$142,657.39** |

| | VALUATION INFORMATION | |
|---|---|---|
| ROLL YEAR 18-19 | CURRENT ASSESSED VALUE | TAXABLE VALUE |
| LAND | 6,992,131 | 6,992,131 |
| IMPROVEMENTS | 6,436,208 | 6,436,208 |

**ASSESSOR'S REGIONAL OFFICE**
REGION #28 INDEX:          TRA:12704
SPECIAL PROPERTIES
500 W TEMPLE STREET RM. 180
LOS ANGELES CA 90012
(213)974-3108

| | | |
|---|---|---|
| TOTAL | | 13,428,339 |
| LESS EXEMPTION: | | |
| | | |
| NET TAXABLE VALUE | | 13,428,339 |

ACCT. NO.:      PRINT NO.:   65137 BILL ID.:

ANY RETURNED PAYMENT MAY BE SUBJECT TO A FEE UP TO $50.00.

---

**DETACH AND MAIL THIS STUB WITH YOUR 2ND INSTALLMENT PAYMENT**
DO NOT INCLUDE NOTES WITH YOUR PAYMENT
DO NOT STAPLE, TAPE OR CLIP PAYMENT STUB OR CHECK

**ANNUAL**   **2018**

SHOMOF,ERIC TRS ET AL
724 S SPRING ST STE 801
LOS ANGELES CA 90014-2936

ASSESSOR'S ID. NO.  YR SEQ   CK      PK
5169 010 006   18 000   90       2

**FOR MAILING ADDRESS CHANGE**
PLEASE MARK BOX BELOW AND
COMPLETE FORM ON REVERSE SIDE
OF THIS PAYMENT COUPON.

2ND INSTALLMENT DUE      INDICATE AMOUNT PAID

**PAYMENT DUE 02/01/19** ---------------->   **$142,657.39**
IF NOT RECEIVED OR POSTMARKED BY 04/10/19
REMIT AMOUNT OF      $156,933.12

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.
30974

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

1 9318000051690100060014265739001569331297420410

**2ND**

---

**DETACH AND MAIL THIS STUB WITH YOUR 1ST INSTALLMENT PAYMENT**
DO NOT INCLUDE NOTES WITH YOUR PAYMENT
DO NOT STAPLE, TAPE OR CLIP PAYMENT STUB OR CHECK

**ANNUAL**   **2018**

SHOMOF,ERIC TRS ET AL
724 S SPRING ST STE 801
LOS ANGELES CA 90014-2936

ASSESSOR'S ID. NO.  YR SEQ   CK      PK
5169 010 006   18 000   90       1

**FOR MAILING ADDRESS CHANGE**
PLEASE MARK BOX BELOW AND
COMPLETE FORM ON REVERSE SIDE
OF THIS PAYMENT COUPON.

1ST INSTALLMENT DUE      INDICATE AMOUNT PAID

**PAYMENT DUE 11/01/18** ---------------->   **$142,657.41**
IF NOT RECEIVED OR POSTMARKED BY 12/10/18
REMIT AMOUNT OF      $156,923.15

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.
40955

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

1 8418000051690100060014265741001569231595511210

**1ST**

SEARS HOLDINGS MANAGEMENT CORPORATION DUNS NO. 0000-896-5873

**EAST RIVER GROUP, LLC**
(DUNS NUMBER:   00-000-0000)

| | |
|---|---|
| BANK NO:   12 | CHECK DATE   :      12/24/2018 |
| | CHECK NUMBER:        140058861 |
| | CHECK AMOUNT:        12,194.28 |

\* PLEASE RENDER STATEMENT EACH MONTH SHOWING ALL PAST DUE INVOICES AND CREDITS. STORE AND INVOICE NUMBER MUST BE SHOWN
\* OPPOSITE EACH CHARGE. ADDRESS ALL CORRESPONDENCE CONCERNING REMITTANCES TO A/P AUDIT DEPARTMENT.

| STORE NO. | DOCUMENT NUMBER | P.O. NUMBER / FICHE NO(*) | DOC. DATE | ENTRY CODE | DOCUMENT AMOUNT | DISCOUNT AMOUNT | DISCOUNT % CODE | DEPT NO. |
|---|---|---|---|---|---|---|---|---|
| 1008 | PT99918 | | 12/20/18 | | 12,194.28 | .00 | | 400 |

| | DOCUMENT TOTAL | DISCOUNT TOTAL | 1099 | WTAX TOTAL | NET AMOUNT |
|---|---|---|---|---|---|
| | 12,194.28 | .00 | | .00 | 12,194.28 |

DISCOUNT CODE:    A. ANTICIPATION    C. CASH    F. FREIGHT    T. TRADE

---

**SEARS DEBTOR IN POSSESSION**

**Bank of America**

64-1278/611

CHECK NUMBER:   140058861

PAY :   TWELVE THOUSAND ONE HUNDRED NINETY-FOUR AND 28/100 DOLLARS

VOID AFTER 6 MONTHS

TO THE
ORDER OF   EAST RIVER GROUP, LLC
SUITE #801
724 S. SPRING STREET
LOS ANGELES  CA  90014

| CHECK DATE | CHECK AMOUNT |
|---|---|
| 12/24/2018 | $12,194.28 |

THIS DOCUMENT IS PRINTED IN BLUE INK AND CONTAINS SECURITY FEATURES ON BOTH SIDES. DO NOT ACCEPT UNLESS THESE SECURITY FEATURES ARE PRESENT.

⑆ 886 ⑈  ⑆ 0986 ⑈

# EXHIBIT C

**Approve Wires - Confirmation**

**Wire Information**

Wires displayed: 1 of 1

View status definitions

| Message Type | Value Date | Beneficiary Name | Wire Amount | Wire Currency | Debit Amount | Status | Sequence Number | Control Number |
|---|---|---|---|---|---|---|---|---|
| Domestic | 12/30/2015 | Sears Roebuck and Company | 5,250,000.00 | USD | | RELEASED | 9 | |

Continue

| | |
|---|---|
| **Total Wired to Sears** | **$ 5,250,000.00** |
| Land | 2,000,000.00 |
| Sears Rehab | 3,250,000.00 |
| **TOTAL** | **$ 5,250,000.00** |

| | |
|---|---|
| Sears Rehab | $ 3,250,000.00 |
| Total Reimbursed Expenses | (1,825,198.38) |
| **Remaining Balance** | **$ 1,424,801.62** |

| **Reimbursement Payment Details** | **Amount** |
|---|---|
| Ck#848265 Dated 8/18/17 (HVAC) | $ 478,173.75 |
| Ck#848647 Dated 2/7/18 | 983,599.96 |
| Ck#131200470 Dated 6/15/18 | 79,941.17 |
| Ck#131203210 Dated 6/20/18 | 283,483.50 |
| **TOTAL** | **$ 1,825,198.38** |

**AMENDMENT
TO AMENDED AND RESTATED BUILDING LEASE**

This Amendment to Amended and Restated Building Lease ("Amendment" or alternatively, the "Agreement") is made as of December 30, 2015 by and between the Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999, Vegas Group, LLC, a Nevada limited liability company, and East River Group LLC, a California limited liability company (collectively, "Landlord") as successor in interest to 10309 Folsom Blvd., LP, and Sears, Roebuck and Co., a New York corporation ("Tenant").

**RECITALS:**

A.      Landlord and Tenant are parties to that certain "Amended and Restated Building Lease" dated as of May 5, 2011 (the "Lease" or the "Building Lease") for that certain Premises described in the Building Lease located on the Building Parcel within the Entire Tract, as said terms are defined in the Building Lease and as that Building Parcel is legally described in Exhibit A, attached hereto and made part hereof, and as the Entire Parcel is legally described in Exhibit B, attached hereto and made part hereof.

B.      Landlord and its affiliates and Tenant have had a number of issues and disputes with respect to the terms of the Lease that have prompted the parties to enter into this Agreement in order to settle and resolve said disputes.

C.      On certain terms and conditions set forth below, Landlord has agreed to replace and relocate certain wiring and equipment located in and around the Premises, to remove and repair or replace a certain façade of the Premises, to remove and replace certain signage on the Premises, and to do certain seismic work and other work on certain terms and conditions set forth below.

D.      Further, Landlord and Tenant agree to add certain floor area within the Building to the Premises for inclusion in the Building Lease and, in turn, release from the Premises and from the Building Lease other certain floor area currently leased to Tenant under the Building Lease, all on the terms and conditions set forth herein.

E.      Further, Landlord and Tenant seek to enter into certain covenants and agreements related to the Adaptive-Reuse Application filed with the City of Los Angeles (the "City") by East River Group LLC, an entity under common membership and control of Landlord ("East River Group"), known as Application No. ZA2014-3054-ZAD and related applications regarding the redevelopment of the real estate in the vicinity of the Premises owned by Landlord and by Boyle Heights Land Holdings LLC, another entity under common membership and control of Landlord (collectively, the "City Applications"). The parties acknowledge and agree that the aforesaid

84112177\V-22

Adaptive Reuse Application was approved by the Zoning Administrator on December 8, 2015 (the "Zoning Administrator's Determination") and is being appealed by CREED LA.

     F.     Further, the aforesaid other entity under common membership and control of Landlord, known as Boyle Heights Land Holdings LLC, is the landlord under that certain Amended and Restated Auto Center ("TBA") Lease, entered as of May 5, 2011 and amended as of January 31, 2015 (the "TBA Lease") with Sears, Roebuck and Co. as Tenant. This Amendment documents further amendments to the TBA Lease as well as a means to terminate Sears' rights in the TBA Lease, with the result that Boyle Heights Land Holdings LLC has joined in executing this Amendment for the limited purposes set forth on its signature page, below.

     **1.**     **RECITALS.** The recitals set forth above are hereby incorporated into and made a material part of this Amendment. Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them in the Building Lease.

     **2.**     **REPLACEMENT AND RELOCATION OF BUILDING SYSTEMS.** Landlord shall at Landlord's sole cost and expense, design, construct and complete all work contained within this Agreement in compliance with the Demolition and Construction Protocol's attached hereto and made part hereof as Exhibit C (including without limitation work described below in Sections 3, 4, 5, 6, 7, 8, 10, and 11 subject to the terms of Section 9 below), on or before April 1, 2017 unless a different completion date is explicitly set forth below, in which case the different completion date set forth below shall govern, or unless the date is otherwise amended in writing by means of a further amendment to this Agreement. Final plans and specifications shall be reviewed and approved by Tenant pursuant to the Demolition and Construction Protocol even if the work in question is addressed in the Exhibits attached hereto. All Landlord's work pursuant to Sections 3, 4, 5, 6, 7, 10, and 11 shall be in substantial compliance with the related plans and specifications approved pursuant to the Demolition and Construction Protocol and with the schedule, authorized hours of construction activity and remediation for the work in question determined pursuant to the terms of the Demolition and Construction Protocol. Landlord's obligations to perform its design, construction and completion work pursuant to this Agreement is not contingent upon whether or not the Zoning Administrator's Determination is appealed or whether any additional zoning applications or zoning approvals are necessary. Landlord's work pursuant to this Agreement shall be conducted in a manner that creates minimal possible visual and noise inconvenience to Tenant and its customers. Without in any way limiting Sears' rights and remedies hereunder, all expressly reserved herein, the Parties agree that Sears is entitled to injunctive relief and/or specific performance in the event of a breach of the terms herein since the Parties acknowledge that any other remedy may not adequately protect Sears.

84112177/V-22

3.    **LOW VOLTAGE SERVICE**.  Landlord shall relocate and replace all low voltage wiring, fiber optic and other cable servicing the Tenant store and its security cameras located outside and inside the Premises and, in addition, replace the equipment in the Tenant control and server room located on the second floor of the Building within the Premises per the "Scope of Work" described in Exhibit D-1 attached hereto and made part hereof (which parties acknowledge is not complete).  Landlord shall construct the aforesaid new server room for Tenant in the area shown on Exhibit G, which shall be powered by the existing electric feed and with Landlord making such modifications necessary to cause the full existing feed to be available solely for Tenant's exclusive use. Upon Landlord's completion of all the Landlord work pursuant to this Amendment, Tenant shall release any right of easements to access or carry those wires, lines, cable or equipment in areas outside the Premises which were functionally fully replaced by Landlord's completion of the aforesaid work (without prejudice to, and expressly reserving, Tenant's easements for other uses including without limitation other mechanical, electrical and/or plumbing).

4.    **HVAC**.  Landlord shall provide and install new mechanical/HVAC (including new cooling towers as depicted on Exhibit G and facilities accessory thereto) and new branching throughout the store as further described in Exhibit D-2 attached hereto and made part hereof. Upon Landlord's completion of all the Landlord work pursuant to this Amendment, Tenant shall release any right of easements to access or carry equipment in areas outside the Premises which were functionally fully replaced by Landlord's completion of the aforesaid work (without prejudice to, and expressly reserving, Tenant's easements for other uses including without limitation other electrical and/or plumbing not associated with the HVAC).

5.    **PLUMBING**.  Landlord shall provide all new plumbing and said plumbing shall be stubbed to and provided in the Premises at locations designated by Tenant in writing pursuant to the scope of work agreed to by Tenant in Exhibit D-3 attached hereto and made part hereof.  Locations are to include employee and customer restrooms and employee lounge wherever so designated by Tenant within the Premises.  Plumbing work to include new sewer line(s), hot/cold water lines, and water heaters as necessary, shall be stubbed to and provided in the Premises at locations designated by Tenant pursuant to the Demolition and Construction Protocol.

6.    **FAÇADE**.  Tenant consents to the removal by Landlord, at Landlord's sole cost and expense, subject to Section 9, but in no event prior to February 1, 2016, the stone panels and façade that are not original to the Building, provided and on the condition that Landlord restore the original facade to a condition substantially similar to the other façades of Tenant's store on the Premises, at Landlord's sole expense within sixty (60) days after such removal.  Such removal, replacement and relocation and related plans and specifications, work, demolition and construction, authorized hours of construction activity and remediation plan shall occur in substantial compliance with the Plans and Specifications approved by Tenant pursuant to the Demolition and Construction Protocol,

3

84112177\V-22

and include a final restoration of the facade by Landlord in conjunction with Landlord's larger redevelopment.

7.    **SIGNAGE.** Tenant consents to the removal by Landlord, which Landlord agrees to do at Landlord's sole cost and expense, of the four (4) "Tenant" signs identified on Exhibit E-1 hereto and made part hereof for a period not to exceed three (3) weeks, and to repair, restore, refurbish and reinstall the three (3) signs of the four (4) signs identified on Exhibit E-1 with the three (3) refurbished signs as shown on Exhibit E-2 attached hereto and made part hereof, within the aforesaid three (3) week period, subject to the terms of Section 9 below. Tenant further consents to the removal by Landlord, which Landlord agrees to do at Landlord's sole cost and expense at a time which does not overlap with the Landlord's work on the signs identified in the preceding sentence, of the four (4) additional signs each located on each one of the four facades of the "tower" portion of the Building for a period not to exceed three (3) weeks, and to repair, restore, and reinstall each of said (4) signs on said tower within the aforesaid three (3) week period . All repair, restoration and reinstallation pursuant to this Section 7 shall also be at Landlord's sole cost and expense.

8.    **SEISMIC WORK**. Landlord is responsible for all necessary seismic repairs and improvements within and in the vicinity of the Premises and the overall Building. Landlord shall use best efforts to obtain necessary governmental permits to perform such seismic repairs and improvements within twelve (12) months after the City of Los Angeles' approval of Administrator's Determination of the City Applications described in Recital D of this Amendment and complete such seismic repairs and improvements within twelve (12) months of when said permits are issued, subject to the terms of Section 9, below. Notwithstanding anything contained herein to the contrary, all seismic permits and seismic repairs and replacements shall be applied for , installed and completed within such time as required by law or by governmental authorities. The plans and specifications, schedule, authorized hours of construction activity and remediation plan for said seismic work shall be pre-approved by Tenant pursuant to the Demolition and Construction Protocol attached hereto as Exhibit C and conducted in a manner that creates the minimum possible visual and noise inconvenience to Tenant and its customers.

9.    **CHRISTMAS SALES SEASON AND OTHER WORK RESTRICTIONS.** Notwithstanding anything contained herein to the contrary, no construction, renovation or other work shall be performed by or through Landlord during the "Christmas Sales Season", hereby defined as November 15 through January 15 of each calendar year, provided that solely in response to a breach of the warranty described below in Section 14 below, Landlord shall conduct that work at night after business hours and in accordance with a scope pre-approved by Tenant at least ten (10) business days in advance of the commencement of said work.

4

84112177\V-22

10.    **FREIGHT ELEVATOR.**  Landlord shall at its sole cost and expense provide and install a new ADA-compliant freight elevator for Tenant's exclusive use which shall constitute the same approximate dimensions as the existing freight elevator.  The design, installation and completion of the aforesaid freight elevator shall occur pursuant to the terms of the Design and Construction Protocol attached hereto as Exhibit C.

11.    **COMPLIANCE WITH LAWS (INCLUDING UNDER AMERICANS WITH DISABILITIES ACT); INSURANCE AND INDEMNITY; FREIGHT ELEVATOR.**

(a)    Landlord shall design, construct and complete all work pursuant to this Amendment described above and this Section 11 as well as Landlord's other obligations under this Amendment, at Landlord's sole cost and expense, in compliance with the Demolition and Construction Protocol attached hereto as Exhibit C and in a manner compliant with all local, state and federal laws, ordinances and regulations, including without limitation those pertaining to the removal and disposal of Hazardous Materials and the Americans with Disabilities Act (the "ADA") and California's Unruh Civil Rights Act (the "Unruh Act") and those pertaining to required permits.

(b)    On or before March 1, 2016, Landlord and Tenant shall mutually agree upon an ADA and Unruh Act compliance expert to prepare a report at Landlord's expense certified to Landlord and Tenant which identifies conditions within the Premises that require modification in order to comply with the ADA and the Unruh Act either (i) caused by the work being conducted within the Building and the Premises pursuant to this Amendment, or  (ii) required without any reference to such work specified in subpart (i) immediately preceding, excluding, however, any work that is clearly and unambiguously exempt because of express ADA exemptions and Unruh Act exemptions applicable and available to buildings with landmark or historic preservation designations as confirmed by the ADA and Unruh Act compliance expert selected below.  The procedure for agreeing upon an ADA and Unruh Act compliance expert shall be as follows:  Within thirty (30) days of execution of this Agreement, Tenant will provide the identity and contact information for three ADA and Unruh Act compliance experts.  Landlord will then have thirty (30) days to select an ADA compliance expert from among the three ADA compliance experts identified by Tenant to Landlord pursuant to the preceding sentence to perform the necessary reports and identify necessary ADA work and Unruh Act work with reference to Section 11(b)(i) and (ii), above.  Landlord shall use its best efforts to secure permits and complete the aforesaid work in a timely and expedient manner.  The report from the ADA and Unruh Act compliance expert shall be prepared in a manner which best protects its confidentiality and prioritizes modifications in categories such as "severe", "moderate", and "minor", and to the extent the ADA and the Unruh Act prioritize work regarding outside path of travel, interior area where goods and services are provided, restrooms and other measurers, the work shall be performed in such recommended order.

5

84112177\V-22

Subject to the terms of Section 11(b)(1), below, Landlord's work pursuant to this Section 10 shall not apply to the repair or replacement of Tenant's furniture, trade fixtures or equipment such as display cases and cash registers.  On or before the sooner of July 1, 2017 or any earlier deadline required by law, Landlord agrees at its expense to use its best efforts to cause the Premises to be in compliance with all local, state, and federal regulations and laws applicable to persons with disabilities, including pursuant to the ADA and the Unruh Act, and including without limitation (1) the installation of an ADA-qualified chair lift in the Rio Vista Avenue side of the Premises from the Rio Vista Avenue level to the second level of the sales floor after a structural evaluation of the opening that will be cut through the concrete floor of the upper sales floor, with the lift to have 3 levels of access including the lowest level, the west entry level and the upper sales floor level as further described in Exhibit G attached hereto and made part hereof; provided however, that if the ADA compliance expert selected above determines that the aforesaid ADA-qualified chair lift violates City requirements and that a variance cannot be timely and practically obtained regarding the same, the ADA Compliance expert selected above shall work with Landlord and Tenant to promptly arrive at a functional equivalent work-around solution acceptable to Tenant which satisfies applicable both ADA and City requirements at a location acceptable to Tenant; and (2) accessible parking to be placed in the west lot only to the extent permitted by the ADA and the Unruh Act, with directional signs place in the east lot directing people to the west lot; further, the accessible route from the accessible parking to the west entry will need to be verified to be compliant, including signage, slopes and cross slopes, curb ramps, and door accessibility, etc.; and the store directories will need ISA indications for the location of the lift, and signs will need to be placed in the sales floors directing people to the lift.  The Plans and Specifications for demolition and construction, authorized hours of construction activity and remediation plans for all such work will be submitted by Landlord to Tenant for Tenant's prior review and approval pursuant to the Demolition and Construction Protocol attached as Exhibit C.  Landlord will prioritize the aforesaid work in a manner consistent with the priorities set forth in the expert's report, provided that if a governmental body imposes a deadline, Landlord shall treat the condition in question as "severe" regardless of the prioritization category set forth in the expert's report and make its prompt completion a priority so as to avoid notices of violation from governmental bodies as well as fines and penalties.

(c)     All work and other performance of Landlord's obligations under this Amendment shall, despite the location of the work or the location of Landlord's performance in question, be subject to the insurance and indemnity obligations of Landlord to Tenant under Sections 6(a)(1) and 6(c), 6(d), 6(e), 6(f) and 6(g) of the Building Lease with the additional requirement that Landlord shall provide Tenant  prior to the commencement of Landlord's aforesaid activity with current certificates of insurance pursuant to the terms of Section 6(c) of the

6

Lease, with either Landlord or Landlord's contractor(s) naming Tenant as an additional insured pursuant to Section 6(g) of the Building Lease for work done within the Sears Premises.

## 12.    VACANCY DATE; NEW TBA PREMISES ACCEPTANCE DATE; TERM.

(a)    **Inclusion of New Building Floor Area in the Premises.** Effective as of 12:01 AM Pacific Time on December 31, 2015 (the "Initial Substitution Date"), the "To Sears" Floor Area as depicted on the "Revised Floor Plans" attached hereto as Exhibit G and made part hereof shall without further action of the Landlord and Tenant become part of the Premises subject to the Building Lease, with Landlord providing Tenant exclusive possession of the "To Sears" Floor Area in broom clean condition, provided and on the condition that prior to the Initial Substitution Date Landlord shall, at its sole expense, have first provided demising walls and necessary hallways installed and completed at Landlord's expense (but for painting, which painting shall be completed by Landlord within thirty (30) days of the Substitution Date), failing which the "Initial Substitution Date" shall be postponed on a day-for-day basis until Landlord completes such work at its expenses in broom clean condition.

(b)    **Removal of "From Sears" Floor Area from the Premises.** Effective as of 12:01 AM Pacific Time on the Initial Substitution Date, as the same may be postponed pursuant to this Section 11, the "From Sears" Floor Area as depicted on the Revised Floor Plans attached as Exhibit G shall without further action of the Landlord and Tenant be released from the Premises and the Building Lease, with Tenant providing Landlord exclusive possession of the "From Sears" Floor Area at such time on the Initial Substitution Date.

(b-1)    **Removal of "From Sears" Basement Space from the Premises.** Landlord seeks to acquire the release from Sears of approximately 21,000 square feet from the basement of the Premises as described on Exhibit G, attached ("Tenant's Released Basement Premises") , and Tenant agrees to do so on the terms and conditions set forth in this Section 11(b-1) in addition to the provisions generally applicable to Landlord's design, construction and completion work pursuant to this Amendment. Tenant's ability and obligation to release the Tenant's Released Basement Premises will require Landlord, at Landlord's sole expense, to complete the seismic work contemplated in Section 8 and, in addition, to complete at Landlord's sole cost and expense the design, construction and installation of the rehabilitation of the basement space outlined in red as depicted in Exhibit G ("Basement Upgrade Area") to become more efficient through Landlord's installation of new lighting providing consistent levels of illumination consistent with heavy stockroom traffic, and in compliance with applicable laws, codes, ordinance, or regulations, the removal of the block floor and the installation of a new cement layered-floor, or, if one exists already, application of a skim coat to make the floors smooth and level and support heavy stockroom traffic and supporting utility service in order to store the same amount of inventory

7

previously held in the basement in the lesser amount of space contained in the Basement Upgrade Area (hereinafter, "Landlord's Storage Conversion Work"). Landlord's Storage Conversion Work shall follow the Tenant review and approval process set forth in the Design and Construction Protocol. Upon Landlord's completion of the seismic work set forth in Section 8 and Landlord's Storage Conversion Work, Tenant shall on thirty (30) days prior written notice from Landlord move all inventory from Tenant's Released Basement Premises to Tenant's Remaining Basement Premises, with the ensuing day to be comprise the" Final Substitution Date". Effective as of 12:01 AM Pacific Time on the Final Substitution Date, the Tenant's Released Basement Premises as depicted on Exhibit G shall, without further action of Landlord and Tenant, be released from the Premises and the Building Lease, with Tenant providing Landlord exclusive possession of the Tenant's Released Basement Premises at such time on the on the Final Substitution Date.

(b-2)    **Adjustment of Tenant's Share.** Effective as of the Initial Substitution Date and the Final Substitution Date, the floor area and "Tenant's Share" as set forth in the Building Lease shall be equitably remeasured and adjusted by Tenant at Landlord's expense to reflect the net reduction in the floor area of the Premises, including the basement.

(c)    **Title Commitment, Premises the Building Parcel and the Entire Tract.** Notwithstanding anything contained herein to the contrary, upon the parties' execution and delivery of this Amendment Landlord shall provide Tenant with a current leasehold title commitment and policy of the Building Premises and the Entire Tract from First American Title Insurance Company authorized to do business in the State of California with access and extended coverage endorsements in the amount of $3,000,000 establishing that Landlord currently owns the title to the Premises, the Building Parcel and the Entire Tract, and proving that the Premises, the Building Parcel and the Entire Tract is not subject to any mortgage (other than East West Bank), deed of trust, lease (other than the Building Lease) or secured interest, mechanics lien, judgment or other encumbrance, covenant or restriction and in addition, commercially reasonable evidence establishing that Boyle Heights Land Holdings LLC owns title to the real estate described in Exhibit J-1, attached hereto and made part hereof, and that the same is not subject to any mortgage (other than Bank of the West), deed of trust, lease (other than the TBA Lease) or secured interest, mechanics lien, judgment or other encumbrance, covenant or restriction.

(d)    **SNDA.** Notwithstanding anything contained in the Building Lease to the contrary, if the "To Sears" Floor Area is subject to any mortgage, deed of trust, lease (other than the Lease) secured interest, mechanics lien, judgment or other encumbrance, covenant or restriction Landlord shall at Tenant's request on or before the parties' execution and delivery of this Amendment (a) as to any mortgage, deed of trust, lease (other than the Lease) or secured interest provide Tenant with a Subordination, Attornment and Non-Disturbance Agreement in the form attached hereto as Exhibit H and made part hereof (the "SNDA") from and fully executed by each

84112177\V-22

8

0018

such respective mortgagee, Trustee under a deed of trust, or Lessor (as the case may be) and Landlord and Tenant shall also execute and deliver each such SNDA on or before the parties' execution and delivery of this Amendment; and/or (b) cause such mechanics lien, judgment, or other encumbrance, covenant or restriction to be removed of record on or before prior to the parties' execution and delivery of this Amendment. In the event Landlord fails to obtain all SNDAs required above and provide Tenant the same on or before the parties' execution and delivery of this Amendment or fails to cause such mechanics lien, judgment or other encumbrance, covenant or restriction to be removed of record, notwithstanding anything contained in this Amendment to the contrary, the Initial Substitution Date shall be postponed on a day-to-day basis until Landlord provides the aforesaid.

      (e)    **Duration.** Landlord and Tenant further acknowledge and agree that the Term for the "To Sears" Floor Area shall be for the same Term as the balance of the Premises, subject to Tenant's right to elect to sooner terminate the Term of the Building Lease pursuant to Section 2(c) of the Lease. Landlord acknowledges that the Base Rent for the entire Term and the entire Premises, including the "To Sears" Floor Area, in the amount of One Dollar ($1.00) has been prepaid.

      (f)    **As-Is Delivery.** Landlord has previously conducted its own environmental due diligence regarding the "From Sears" Floor Area, including the Tenant's Released Basement Premises. Notwithstanding anything contained in the Building Lease or this Amendment to the contrary, Tenant makes no covenant, representation or warranty regarding any condition, aspect or facet of the "From Sears" Floor Area, including the Tenant's Released Basement Premises, and Tenant's surrender of possession and delivery to Landlord of the "From Sears" Floor Area, including the Tenant's Released Basement Premises, shall be "AS-IS, WHERE IS WITH ALL FAULTS AND DEFECTS, LATENT OR OTHERWISE. LANDLORD EXPRESSLY ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENT OF TENANT HEREIN, AND EXCEPT AS OTHERWISE SPECIFIED HEREIN, NEITHER TENANT NOR ANYONE ACTING ON ITS BEHALF IS MAKING OR HAS MADE ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING BUT NOT LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE, OCCUPANCY OR PURPOSE, WITH RESPECT TO THE "FROM SEARS" FLOOR AREA, INCLUDING THE TENANT'S RELEASED BASEMENT PREMISES, AND LANDLORD IS RELYING UPON LANDLORD'S EXAMINATION OF THE "FROM SEARS" FLOOR AREA, INCLUDING THE TENANT'S RELEASED BASEMENT PREMISES. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE SUBSTITUTION OF THE "TO SEARS" FLOOR AREA FOR THE "FROM SEARS" FLOOR AREA. Except as expressly set forth in this Amendment, no representations or warranties have been made or are made and no responsibility has been or is

84112177\V-22

assumed by Tenant or by any officer, person, firm, agent, attorney, or representative acting or purporting to act on behalf of Tenant as to the condition or repair of the "From Sears" Floor Area, including the Tenant's Released Basement Premises, or the value, expense of operation, or income potential thereof or as to any other fact or condition which has or might affect the "From Sears" Floor Area, including the Tenant's Released Basement Premises, or the condition, repair, value, expense of operation or income potential of the "From Sears" Floor Area, including the Tenant's Released Basement Premises, or any portion thereof. The parties agree that all understandings and agreements heretofore made between them or their respective agents or representatives regarding the condition of the "From Sears" Floor Area, including the Tenant's Released Basement Premises, are merged in this Amendment, and that this Amendment has been entered into after full investigation, or with the parties satisfied with the opportunity afforded for investigation, neither party relying upon any statement or representation by the other unless such statement or representation is specifically embodied in this Amendment. Tenant makes no representations or warranties as to whether the "From Sears" Floor Area, including the Tenant's Released Basement Premises, contains asbestos or petrochemicals, hydrocarbons, or any hazardous materials or harmful or toxic substances, or pertaining to the extent, location or nature of same, if any. Further, to the extent that Tenant has provided to Landlord information from any inspection, engineering or environmental reports concerning asbestos, petrochemicals, hydrocarbons, or any hazardous materials or harmful or toxic substances, Tenant makes no representations or warranties with respect to the accuracy or completeness, methodology of preparation or otherwise concerning the contents of such reports. Landlord acknowledges that Tenant has requested that Landlord rely solely upon the results of Landlord's own inspections or other information obtained or otherwise available to Landlord, rather than any information that may have been provided by Tenant to Landlord.

(g)    **Floor Area.** Landlord hereby releases Tenant from and against any lien, claim, suit, loss, cost or expense (including reasonable attorneys' fees) arising out of the condition of the "From Sears" Floor Area, including the Tenant's Released Basement Areas including without limitation asbestos, petrochemicals, hydrocarbons, or any hazardous materials or toxic substances and Landlord shall indemnity, defend and hold harmless Tenant and its partners, officers, members, managers, employees or agents from and against any lien, claim, suit, loss, cost, expense (including reasonable attorneys' fees), personal injury, damage or action arising from either the existence of the same within the "From Sears" Floor Area, including the Tenant's Released Basement Areas, or from having been released from the "From Sears" Premises, including the Tenant's Released Basement Areas.

13.    **MECHANICS LIENS.** Landlord will indemnify, defend and hold harmless Tenant, Tenant's mortgagees, the Premises, and Tenant's contractors from and against any and all liabilities, claims demands, damages, expenses, fees (including without limitation, attorneys' fees), fines,

10

84112177\V-22

0020

penalties, suits, proceedings, actions and causes of action of any and every kind or nature arising out of mechanics' lien claims, mechanics' liens or other related liens or claims (and all costs associated therewith).    Notwithstanding the preceding and without diminishing Landlord's obligations set forth above, Tenant reserves the right to select its own counsel in defending any such lien, claim, action or proceeding, and Landlord shall immediately reimburse Tenant upon demand for all reasonable fees and expenses incurred in connection therewith.    Landlord will also immediately repair or cause to be repaired, at its expense, all damage caused to the Premises caused by Landlord or Landlord contractors and their subcontractors in connection with Landlord's work and the performance of Landlord's other obligations under the Building Lease.    Further, Tenant shall have the right to post and maintain any notices of non-liability.

### 14.    LANDLORD WARRANTIES.

(a)    Landlord hereby warrants to Tenant: (1) that all work and other tasks to be performed by Landlord under this Amendment shall be performed in a good and workmanlike manner, (2) that all materials, supplies and equipment furnished in connection with the work and other tasks to be performed by Landlord under this Amendment shall be new and of good quality, (3) that the Landlord work and other tasks to be performed by Landlord under this Amendment shall be of good and workmanlike quality and free from defects, (4) that the Landlord work and other tasks to be performed by Landlord under this Amendment shall be performed in compliance (where applicable) with (A) the Plans and Specifications approved by Tenant under the terms of the Demolition and Construction Protocol attached hereto as Exhibit C, in all substantial respects, (B) current first class standards and practices in the City of Los Angeles of the applicable profession, industry or trade for work of a similar value and purpose; and (C) all applicable laws (including, without limitation, the Americans With Disabilities Act of 2010 (as amended), and all applicable building, fire and safety codes and the requirements of fire insurance underwriters, (5) that Landlord is the fee owner of the real property described in Exhibit A and B below and that East West Bank is the sole mortgagee or beneficiary under a Deed of Trust secured by the real property described in Exhibits A and B on the attached hereto, (6) that Boyle Heights Land Holdings LLC, a California limited liability company, is the sole owner of the real property described in Exhibit J-1 attached hereto and made part hereof and that Bank of the West is the sole mortgagee or beneficiary under a Deed of Trust secured by the real property described in Exhibit J-1 attached hereto, (7) that no mortgagee, trustee or other third party consent is necessary for this Amendment to be binding upon Landlord and binding upon Landlord's successor/and assigns, except for the "Consent(s)" required and provided for under the terms of Sections 26 and 27 of this Amendment, and (8) that "Landlord" is comprised solely of the parties identified on page 1, above, and on the signature pages of this Amendment and that no further signatures, authorizations, Lender signatures or consents or authorizations are required to provide Tenant the right to enforce this Amendment against Landlord and as to Section 26 and 27, against Boyle Heights Land Holdings LLC.  With the

11

exception of the warranties in sub-parts (5), (6), (7) and (8) of the preceding sentence, which are not limited by time, the warranties set forth herein shall remain in full force and effect at all times during the two (2) year period immediately following the substantial completion of the Work and other tasks to be performed by Landlord under this Amendment (or, in either case, for such longer period as may be applicable where extended warranties have been specified and provided or are otherwise applicable, to the extent that Landlord receives payment or performance under such warranties (it being acknowledged and agreed that Landlord shall use good faith efforts to enforce such warranties)). If at any time prior to the expiration of the foregoing warranty period, Tenant shall discover any failure or breach of the Landlord's warranties, then Landlord shall, upon written notice from Tenant and at Landlord's sole cost and expense (and not as part of Tenant's CAM Contribution under the Building Lease), in addition to other remedies available to Tenant at law or in equity immediately but in any event within ten (10) days of Tenant's written notice of a non-emergency situation commence and diligently perform the correction of such failure or breach (which corrective action may include, without limitation, any necessary removal, disassembly, reinstallation, repair, replacement, re-assembly, reconstruction, re-testing and/or re-inspection of any portion of the work and other tasks to be performed by Landlord under this Amendment and any other property damaged or affected by such failure, breach or corrective action), all in a manner that minimizes any disruption of or interference to Tenant's use and occupancy of the Premises (and the other areas of the Building that Sears has the right to use under the lease), and in compliance with the terms of the Building Lease.

(b)     Landlord shall obtain construction warranties against defects in labor, materials and equipment of at least two (2) years (or such longer period as is customary with respect to various components of the work and other tasks to be performed by Landlord under this Amendment (e.g., not less than five (5) years in duration for any curtain wall of the Premises)) from Landlord's contractors and subcontractors with respect to all components of the work and other tasks to be performed by Landlord under this Amendment (other than minor components thereof not customarily the subject of construction warranties in the comparable buildings). On completion of the work and other tasks to be performed by Landlord under this Amendment, Landlord shall provide Tenant, at Tenant request, with copies of all warranties on those components, if any, of the work and other tasks to be performed by Landlord under this Amendment which Tenant is responsible for maintaining pursuant to the Building Lease (the "Tenant Maintenance Warranties"). At Tenant's request, Landlord shall use commercially reasonable efforts to enforce the Tenant Maintenance Warranties, or, at Landlord's option, shall assign to Tenant all of Landlord's right, title and interest in and to such Tenant Maintenance Warranties. In addition, on or prior to completion of any component of the work and other tasks to be performed by Landlord under this Amendment which Tenant is required to maintain pursuant to the Building Lease, Landlord shall, at Tenant request, use good faith efforts to arrange for provision to Tenant (at Tenant sole cost and

84112177\V-22

12

expense) by the manufacturer (or other applicable third party issuer of the respective Tenant Maintenance Warranties) of training in the maintenance of such equipment and systems subject to the Tenant Maintenance Warranties, and shall turn over to Tenant copies of all keys, manuals, operating instructions and the like, together with such operating information, maintenance manuals, service contracts and documentation as may be requested by Tenant and as are required under the contract documents entered into by Landlord relating to such work and other tasks to be performed by Landlord under this Amendment.

(c)    Nothing contained in this Amendment shall relieve Landlord from any of Landlord's duties and responsibilities under the Building Lease with respect to the performance of the work and other tasks to be performed by Landlord under this Amendment, and/or the maintenance, repair and operation of the Premises (including the Building).

**15.    EXISTING AGREEMENTS.**  All terms of the Building Lease (also known as that certain "Amended and Restated Building Lease," originally between 10309 Folsom Blvd., L.P., as Landlord's predecessor in title, and Sears, as Tenant, entered into as of May 5, 2011) as the same is amended by means of this Amendment, and all terms of that certain Amended and Restated Auto Center ("TBA") Lease, entered into as of May 5, 2011 and amended as of January 31, 2015 (the "TBA Lease") between Boyle Heights Land Holdings LLC (a party under common membership and control with Landlord), as Landlord, and Tenant, as Tenant, shall as the same is amended by means of Boyle Heights Land Holdings LLC's entry into this instrument with Tenant as set forth below remain in full force and effect and shall govern the relations of the Parties hereto, provided, however, that any rights or obligations under the terms of this Amendment shall control the Building Lease and TBA Lease in the event of an express conflict.

**16.    TERMS NOT DEFINED HEREIN.**  All terms not defined herein shall have the meaning ascribed to them in the Building Lease.

**17.    NO WAIVER.**  Unless expressly waived or released in either the Building Lease or in this Amendment or in a separate writing signed by the waiving party, no provision of either the Building Lease or this Amendment shall be deemed to be a waiver by either party of any rights or claims against the other either arising out of the Building Lease, as amended, or out of any other agreement or circumstances, including without limitation those arising out of either the TBA Lease or including without limitation any pending City Applications or other zoning and entitlement petition requests or applications initiated by Landlord.  If the rule against perpetuities or any other rule of law limits the time within which any provision of this Amendment and the Covenants and Easements must be effective, then each such provision must be effective within twenty-one (21) years after the death of the last survivor of Barack Obama, President of the United States, and all of his children and grandchildren on the date of execution of this Lease.

13

84112177\V-22

0023

**18.    BROKERAGE.** Neither Landlord nor Tenant has dealt with any broker or agent in connection with the negotiation or execution of this Amendment. Tenant and Landlord shall each indemnify the other against all costs, expenses, attorneys' fees, and other liability for commissions or other compensation claimed by any other broker or agent claiming the same by, through, or under the indemnifying party.

**19.    ENTIRE AGREEMENT.** This Amendment sets forth the entire agreement with respect to the matters set forth herein. There have been no additional oral or written representations or agreements. In the case of any inconsistency between the provisions of this Amendment and the Building Lease, the provisions of this Amendment shall control to the extent necessary to resolve any inconsistency. This Amendment shall run with the land and be binding upon and inure to the benefits of the parties and their respective successors and assigns. The parties shall, upon execution and delivery of this Amendment, simultaneously including a written Memorandum of Amendment to Amended and Restated Building Lease in recordable form for recording of Tenant at its expense in the form attached hereto as Exhibit I and made part hereof.

**20.    BINDING SIGNATURES.** This Amendment shall not be binding until executed and delivered by both parties. The parties' signatures represent and warrant to other party that they have the power and authority to sign this Amendment and bind the entities for whom they are acting. Notwithstanding anything contained herein to the contrary, Tenant shall not be obligated to deliver the TBA Lease Termination Agreement attached hereto as Exhibit K, the Substitution Date shall not be deemed to have occurred, and Tenant shall reserve the right in its sole discretion to terminate this Amendment, if within two (2) business days of the execution and delivery of this Agreement, Tenant is not provided with) the various evidence of title described in Section 11(c), the funds to be paid by Landlord pursuant to Section 25, the consents required of East West Bank (both as Beneficiary and Trustee) and Bank of the West after the signatures of Landlord, Tenant, and Boyle Heights Land Holdings LLC's signature pages attached to this amendment, and executed and delivered copies of Exhibits K, I and M to this amendment, failing which Tenant may elect in its sole discretion to terminate this Amendment without liability to Landlord.

**21.    COUNTERPARTS.** This Amendment may be executed in any number of counterparts, any one of which shall be an original, but all of which together shall be one and the same instrument. Furthermore, the parties agree that: (i) this Amendment may be transmitted between them by telecopier or e-mail; (ii) this Amendment may be executed by telecopier or e-mail signature but upon request by either party, original signatures shall be subsequently delivered after e-mail signatures have been circulated; (iii) telecopier and e-mail signatures shall have the effect of original signatures; and (iv) that a faxed or e-mailed Amendment containing the signatures (original, faxed or e-mailed) of all parties hereto shall be binding on a party when the signature page of such party is transmitted to the other party.

14

84112177\V-22

**22.    TIME.**  Time is of the essence with respect to the performance of all obligations arising hereunder; provided, however, if the last day for the giving of any notice or the performance of any obligation shall be a Saturday, Sunday or banking holiday (a "banking holiday" being defined as any day commercial banks in general do not open for business) the time for the giving of such notice or the performance of such obligation shall be extended until midnight of the next full day which is not a banking holiday and which is not a Saturday or Sunday.

**23.    EXTENSIONS OF TIME; EXPRESS WAIVER.**  The parties hereto may, only by an instrument in writing, extend the time for or waive the performance of any obligation of the parties hereto.  Failure on the part of either of the parties to enforce any rights which they may have against the other for the other's breach of this Amendment shall not constitute a waiver of the said right, nor shall any written waiver given by a party pursuant hereto be deemed to constitute a waiver of any other right not expressly waived therein.

**24.    UTILITY SERVICE; DEBRIS.**  Landlord acknowledges Sears' use of the Premises for retail operations.   Throughout Landlord's performance of its demolition and construction activity under this Amendment, Landlord shall provide continuous utility service to the Premises pursuant to the terms of the Building Lease without interruption and promptly arrange and pay for the regular removal of construction debris in a manner which minimizes obstructions and unsightliness in proximity to the Premises and Sears' customers, permittees and invitees.

**25.    TBA LEASE TERMINATION.**  Attached hereto as Exhibit K and made part hereof is a Termination of the TBA Lease, which shall be executed and delivered between Sears, Roebuck and Co. as "Tenant" and Boyle Heights Land Holdings, LLC as "Landlord", simultaneously with the execution and delivery of this Amendment on the following terms and conditions: that Landlord shall wire to Tenant simultaneously with the parties' execution of this Agreement (a) the sum of Two Million Dollars ($2,000,000) ("Termination Fee") to Tenant in consideration for terminating the TBA Lease, and (b) an additional Three Million Two  Hundred Twenty-Five Thousand Dollars ($3,250,000.00) (the "Construction Estimate Deposit") to Tenant to partially secure Landlord's design, repair, construction and completion obligations under this Amendment. Tenant shall in turn within a reasonable time thereafter, but in any event within thirty (30) days of Landlord's written request, deposit the Construction Estimate Deposit with either First American Title Insurance Company or another title insurance company acceptable to Tenant (the "Construction Fund Escrow") to enable Landlord to be able to draw upon those funds in the Construction Fund Escrow to pay for Landlord's design, repair, construction and completion work as required per this Amendment on terms acceptable to Tenant upon joint written instructions given to the escrowee of the Construction Fund Escrow by both Landlord and Tenant after providing Tenant a reasonable opportunity to observe the progress of Landlord's work. The cost of the Construction Fund Escrow shall be paid by Landlord.  Traditional construction escrow services

15

providing for the review of applications for payment, lien waiver review, title date downs and disbursements to contractors shall not be made through the Construction Fund Escrow but rather through a separate traditional construction escrow (the "Contractor Disbursement Escrow") established by Landlord at its expense, with payment funds to be provided by the aforesaid separate Construction Fund Escrow and paid into said Contractor Disbursement Escrow on an as-needed monthly basis. Landlord releases Tenant from any liability associated with Tenant's review and approval of a pay request or any other requested consent under either the Construction Fund Escrow or the Contractor Disbursement Escrow and Landlord shall indemnify, defend and hold Tenant harmless against any liability or threatened liability arising from the same. Landlord's obligation to perform its various construction and other obligations under this Amendment shall not be deemed to be limited to the amount of the aforesaid Construction Estimate Deposit; rather, Landlord shall make additional deposits into the Construction Fund Escrow as necessary to complete all the work required per this Amendment above; and

(b)     that the termination of Sears, Roebuck and Co.'s rights as Tenant under the TBA Lease, including without limitation Sears' right to acquire fee title to Parcel A, shall terminate only upon timely payment of the Termination Fee and Construction Estimate Deposit.

(c)     Notwithstanding anything contained in this Amendment to the contrary, the termination of Tenant's rights under the TBA Lease shall not release Landlord from the performance of Landlord's construction obligations and other obligations under this Amendment including but not limited to any additional costs in excess of the Construction Estimate Deposit necessary to complete the design, construction and completion by Landlord under the terms of this Amendment.

(d)     In the event Landlord does not complete the work contemplated in Sections 3, 4, 6 and 7 by April 1, 2017, the remainder of funds in the Construction Fund Escrow shall be released to Tenant, at Tenant's election, so that Tenant can cause the work to be completed and Tenant shall be entitled to payment by Landlord any additional amounts necessary to complete the work. Upon Landlord's completion of the work described in Sections 3, 4, 5, 6, and 7 in a timely manner and its inspection and acceptance by Tenant, any remaining Construction Estimate Deposit funds shall be dispersed to Landlord subject to the review and approval of the parties regarding the amount in question.

26.     **REGARDING CITY APPLICATIONS; COVENANTS AND EASEMENTS.**

(a)     Landlord and East River Group LLC, an entity with common membership and control as Landlord ("East River Group") have filed the City Applications described in Recital D of this Amendment and approved by the resulting December 8, 2015 Determination Letter from

16

84112177\V-22

the Zoning Administrator, which is being appealed by CREED LA. At present, the City Applications propose to furnish off-street parking to service Landlord's redevelopment of the Building from vacant warehouse space to commercial, retail, office and residential uses in a parking garage structure ("Rio Vista Garage") to be constructed at the location owned by Boyle Heights Land Holdings LLC designated as "Parcel B" on Exhibit J attached hereto and made part hereof, and legally described in Exhibit J-1 attached hereto and made part hereof. However, subsequent to the City's aforesaid approval of the pending City Applications, Landlord, Boyle Heights Land Holdings LLC and East River Group are considering filing additional applications to replace the Rio Vista Garage with a parking garage structure and parking plan depicted on Exhibit L attached hereto and made part hereof ("Soto Garage"), which is hereby included in the defined "City Applications".

   (b) Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease are the grantees of the following covenants and easements from Landlord, East River Group and Boyle Heights Land Holdings LLC in the form of the following "Covenants and Easements" set forth below:

   (1) Landlord covenants and agrees with Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease that the Rio Vista Garage or Soto Garage shall be completed and opened pursuant to certificates of occupancy issued by the City before the occupancy of converted and redeveloped commercial, retail, office and residential uses in the Building or on the Building Parcel (except for the Premises, the Building's second floor if used solely for office use, the annex building and the 6,000 square foot retail pad at the corner of Soto and Olympic).

   (2) Subject to the terms of Section 26(b)(3), below, Landlord further covenants and agrees with Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease that should Landlord pursue a redevelopment option other than the one presented in Exhibit L, that no portion of the Building except for the Premises, the Building's first floor if used solely for warehousing, second floor if used solely for office use, the annex building and the 6,000 retail pad at the corner of Soto and Olympic and no other portion of the Building Parcel will be used and occupied without a subsequent agreement with Tenant acceptable to Tenant in its sole discretion unless Landlord provides first at its expense either the Rio Vista Garage or Soto Garage.

   (3) Landlord, East River Group (in its sole capacity as the zoning applicant) and Boyle Heights Land Holdings LLC each covenant and grant to Tenant, its successors and

17

assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease and to the Tenant's, customers, invitees and permittees of the aforesaid:

      (A)    the non-exclusive easement to park motor vehicles within the portion of the Rio Vista Garage and the Soto Garage designated for non-residential tenants, customers, invitees, permittees, successors and assigns, which designated area available for such non-exclusive use as to Tenant as aforesaid shall consist of at least 600 parking spaces;

      (B)    that either the Rio Vista Garage or the Soto Garage, wherever located, shall have a minimum of 1,500 off-street parking spaces, with the calculation of the aforesaid off-street parking spaces to exclude the not less than 250 surface parking spaces which will, in addition, be provided Tenant on an exclusive basis as Tenant's ("Tenant's Control Area") by Landlord and/or Boyle Heights Land Holdings LLC at the location indicated in Exhibit L;

    (4)    Landlord, as owner of the Building Parcel and the Entire Tract, further grants Tenant, its sublessees, customers, invitees, permittees, successors and assigns the exclusive right and easement for Tenant and its sublessees, its customers, invitees and permittees to park motor vehicles within the revised "Tenant Control Area" depicted on Exhibit L, attached here and made part hereof, with all rights to treat, use and occupy such revised Tenant Control Area as its own exclusive parking area and to use such area in its sole and absolute discretion, and Landlord:

      (i)    shall promptly but in any event on or before the earlier of either December 31, 2017, or the date Landlord opens any part of the Building or the Building Parcel for business pursuant to occupancy permits (except for the Premises, the Building second floor if solely for office use, the annex building and the 6000 square foot retail pad at the corner of Soto and Olympic) construct a tasteful but effective fence and parking ticket validation gate and related facilities and directional and explanatory signs (the "Tenant Control Area Fence and Parking Validation System") which implements the aforesaid exclusive segregated parking for Tenant and its sublessees, its customers, permittees and invitees within the revised Tenant Control Area shown on Exhibit L at no cost to the Tenants, with the design, function of and operational characteristics of the Tenant Control Area Fence and Parking Validation System to be approved by

18

84112177\V-22

0028

Tenant by means of review and approval procedures in the Demolition and Construction Protocol attached hereto as Exhibit C and made part hereof;

(ii)     thereafter Landlord shall operate, maintain, repair and replace the aforesaid Tenant Control Area Fence and Parking Validation system, including related accessories thereto and related utilities with Tenant to pay Tenant's Share of the reasonable cost thereof (as Tenant's Share is defined in Section 1(z) of the Building Lease) as invoiced separately by Landlord on a monthly basis;

(iii)     subject to the terms of Section 26(b)(3)(B)(i), above, notwithstanding the implementation of the foregoing exclusive Tenant parking within the Tenant Control Area described as Exhibit L, and the foregoing non-exclusive parking elsewhere, Landlord shall continue to perform maintenance, repair, replacement and restriping of the Tenant Control Area and of the non-exclusive parking areas in the surface parking lot at Landlord's expense except for permitted Tenant's CAM Contributions; provided no reconfiguration of the Tenant Control Area Fence and Parking Validation System or reconfiguration of the means of access to the Tenant Control Area shall be made without Tenant's prior written consent pursuant to the Tenant review and approval procedures in the Demolition and Construction Protocol attached hereto as Exhibit C, provided that Tenant's consent to such a reconfiguration may be given or withheld by Tenant in Tenant's sole and absolute discretion;

(iv)     Landlord shall at its sole expense take such further commercially reasonable steps as necessary to prevent owners, tenants, sublessees, customers, permittees and invitees other than Tenant, its successors and assigns and Tenant's customers, invitees and permittees from parking in the Tenant Control Area;

(v)     Landlord will provide Tenant the exclusive use of two (2) loading docks and one (1) dumpster space adjacent to the Premises either at their current location or at another location acceptable to Tenant in its sole discretion.

(vi)     in the event either Landlord or Boyle Heights Land Holding s LLC either fails to perform its obligations under this Agreement, including without limitation, this Section 26, in a timely manner, or fails to

19

perform its obligations pursuant to Section 2, above on or before January 1, 2017 or such other date required pursuant to Section 2, among other remedies available at law or in equity, Tenant may on five (5) business days' written notice to Landlord or sooner in the case of emergency elect to engage in self-help to cure said failure to perform,  in which case Landlord and Boyle Heights Land Holdings LLC shall promptly reimburse Tenant within thirty (30) days of Tenant's invoice for the same, with Tenant to have a set-off against Landlord from amounts due from Tenant under the Lease, provided that in the event the interests of Landlord in the Building Parcel are subject to a trust or mortgage of record, Tenant shall in addition use good faith efforts to provide such first mortgagee with the aforesaid required notice to Landlord of Landlord's default as determined by the address last provided by said first mortgagee in its last filing of record with the relevant county recorder or recorder of deeds in order to provide such first mortgagee or trustee with the opportunity to cure within the aforesaid thirty (30) day period.

      (vii)   Landlord will not alter the "Tenant Control Area" within the surface parking area other than restriping the east lot of the Tenant Control Area and building a 6,000 pad as detailed in Exhibit L without Tenant's prior written consent, which may be withheld in its sole discretion. Subject to the foregoing, the Demolition and Construction Protocol shall apply to any redesign or construction work pertaining to the surface parking lot.

     (5)   Without in any way limiting Sears' rights and remedies hereunder, all expressly reserved herein, the Parties agree that Sears is entitled to injunctive relief and/or specific performance in the event of a breach of the terms herein since the Parties acknowledge that any other remedy may not adequately protect Sears.

The aforesaid Covenants and Easements shall run with the land owned by Landlord legally described on Exhibits A and B and shall remain in effect for the benefit of Tenant and the Premises under the Building Lease until the expiration or earlier termination of the Building Lease. The aforesaid Covenants and Easements shall run with the Land owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 and shall remain in effect for the benefit of Tenant until the expiration or earlier termination of the Building Lease.  Tenant's right of occupancy under the easement from Boyle Heights Land Holdings LLC respecting Parcel B shall be subject to the condition precedent that Landlord has elected to proceed with the construction of the Rio Vista Garage.   The aforesaid Covenants and Agreements shall be memorialized as to the real estate

84112177\V-22

owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 in the Memorandum of Covenants and Easement attached hereto as Exhibit M, which shall be signed by Tenant and Boyle Heights Land Holding LLC upon their execution and delivery of this Agreement and shall be recorded by Landlord at Landlord's expense.  Landlord, Boyle Heights Land Holdings LLC and East River Group represent and warrant to Tenant that no mortgagee, trustee or other third party consent is necessary for them to grant Tenant the Covenants and Easements set forth above and for the covenants to be binding upon Landlord, Boyle Heights Land Holdings LLC and East River and their respective successors and assigns, except for the consent of East-West Bank and except for the consent of Bank of the West as set forth below.

Landlord and Boyle Heights Land Holdings LLC acknowledge and agree that, among other remedies available to Tenant at law or in equity, without prior resort to any EDR procedures set forth in Section 18(c) of the Building Lease Tenant may specifically enforce the terms of the Covenants and Easements against Landlord and Boyle Heights Land Holdings LLC and their respective real estate interests as well as obtain temporary, preliminary and permanent injunctive relief for violations of the same.  The losing party in any such action shall pay the prevailing party's reasonable attorneys' fees and costs.

### 27.    RELEASES.

(a)    <u>General Release</u>.  As part of the consideration for the terms herein, the parties hereby fully release and forever discharge each other and their predecessors, successors, assigns, subsidiaries, parents, affiliates, partners, shareholders, officers, directors and employees, attorneys, representatives or agents, (the "Released Parties") from any and all rights, suits, claims, actions, accounts, demands, contracts, debts, controversies, agreements, promises, liabilities, duties, obligations, costs, expenses, damages and causes of action, whether presently known or unknown, vested or contingent, suspected or unsuspected, accrued or yet to accrue, in law or in equity, and which they may now have, own or claim to have among or between them, arising out of or related to the Building Lease or the TBA Lease through the date of execution of this Agreement, provided, however, that nothing herein shall waive or release any claims arising from or related to this Agreement or any claims related to the Building Lease that may accrue after the date of execution of this Agreement (hereinafter, "Released Claims").

(b)    <u>Waiver of Unknown Rights</u>.    The parties recognize and execute this Agreement knowing they may discover in the future circumstances and facts that relate to the subject of this Agreement and that, if known, might have affected their willingness to enter into this Agreement, including the releases included herein.  Despite this, the parties agree this Agreement applies to release the claims as specified herein and specifically waive the provisions of California Civil Code section 1542, which provides that

84112177\V-22

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

This Agreement is intended additionally to waive any rights substantially similar in effect to California Civil Code section 1542.

*[Remainder of page intentionally blank]*

22

**DATED** as of the date first above written.

VEGAS GROUP, LLC,
a Nevada limited liability company

By: _____
Its: _____MANGER_____

THE IZEK SHOMOF IRREVOCABLE CHILDREN'S
TRUST DATED FEBRUARY 11, 1999

By: ___Jonathan Shomof___
Its: Trustee

EAST RIVER GROUP LLC,
a California limited liability company

By: _____
Its: _____MANGER_____

TENANT:

SEARS, ROEBUCK AND CO.,
a New York corporation

By: _____
Its: _____

**DATED** as of the date first above written.

VEGAS GROUP, LLC,
a Nevada limited liability company

By: _____
Its: _____

THE IZEK SHOMOF IRREVOCABLE CHILDREN'S
TRUST DATED FEBRUARY 11, 1999

By: _____
Its:  Trustee

EAST RIVER GROUP LLC,
a California limited liability company

By: _____
Its: _____

TENANT:

SEARS, ROEBUCK AND CO.,
a New York corporation

By: _____
Its: _____SENIOR VICE President____

**BOYLE HEIGHTS**[1]

BOYLE HEIGHTS LAND HOLDINGS LLC,
a California limited liability company

By: _____

Its: _____ MANGER _____

---

[1] Boyle Heights Land Holdings LLC executes and delivers this Amended and Restated Building Lease for the limited purpose of agreeing to, entering, binding itself and Parcel B, as described therein, to the terms of Section 26 above and to granting the "Covenants and Easements" set forth therein in a manner which binds Boyle Heights Land Holdings LLC and Parcel B which Covenants and Easements run with the land as to Parcel B, and in addition, to entering and binding itself and Parcel B, to the Terms of Section 27 above.

84112177/V-02

## ADDENDUM AND RATIFICATION OF AMENDMENT TO
## AMENDED AND RESTATED BUILDING LEASE

The undersigned, being all of the Trustees of the Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated as of February 11, 1999, do hereby join in and ratify as of December 30, 2015 that certain Amendment to Amended and Restated Building Lease dated as of December 30, 2015 (the "Amendment") by and between the Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999, Vegas Group LLC, and East River Group, LLC (collectively "Landlord") and Sears, Roebuck and Co. (as "Tenant").

Per the "Counterparts" provisions in Section 21 of the Amendment, this Addendum and Ratification may be may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be one and the same instrument.

By: Eric Michael Shomof
Its: Trustee

By: Jonathan Shomof
Its: Trustee

By: Jimmy Shomof
Its: Trustee

By: Sara Stephanie Shomof
Its: Trustee

By: Jessica Michelle Shomof
Its: Trustee

94186862\V-1

0036

## CONSENT

East West Bank, as the Trustee under that certain Deed of Trust dated November 20, 2013, and recorded as Instrument No. 201316552232 in the Official Records of the County of Los Angeles, California Recorder by and between the East West Bank and Vegas Group, LLC, a Nevada limited liability company; and Eric Shomof, Sara Shomof, Jonathan Shomof, Jessica Shomof and Jimmy Shomof, Trustees of the Izek Shomof and Aline Shomof Irrevocable Children's Trust; and East River Group LLC, a California limited liability company (collectively, "Trustor") and East-West Investment, Inc., as Beneficiary thereunder, hereby consent to Trustor's entry into the attached Amendment to Amended and Restated Building Lease and to the "Covenants and Easements" set forth therein and agree that the aforesaid Deed of Trust is subject and subordinate to such Section 26, and hereby releases the lien of its Deed of Trust to the "To Sears" Floor Area described in Section 11, above, with a formal recordable Release to be provided to Tenant promptly.

East West Bank, as Beneficiary under Deed of Trust dated November 20, 2013, as aforesaid

By: _____

Its: _____


East-West Bank Investment Inc., as Trustee under the aforesaid Deed of Trust

By: _____

Its: _____

84112177\V-22

0037

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF _____          )

On _____, 2015, before me, _____, a Notary Public in and
for said County and State, personally appeared _____,    who
provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.


                              _____
                              Notary Public


STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF _____          )

On _____, 2015, before me, _____, a Notary Public in and
for said County and State, personally appeared _____,    who
provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.


                              _____
                              Notary Public


84112177/V-22

### CONSENT

Bank of the West, as the _____ under that certain _____ dated _____, and recorded as Instrument No. _____ in the Official Records of the County of Los Angeles, California Recorder by and between Boyle Heights Land Holdings LLC, a California limited liability company ("Boyle Heights"), as _____ and Bank of the West as _____ hereby consent to Boyle Heights' entry into Section 26 of the attached Amendment to Amended and Restated Building Lease and to the "Covenants and Easements" set forth therein and agree that the aforesaid mortgage or deed of trust is subject and subordinate to such Section 26.

Bank of the West, a _____

By: _____

Its: _____

84112177\V-22

STATE OF CALIFORNIA          )
                            ) ss.
COUNTY OF _____  )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____,    who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

84112177\V-22

0040

## EXHIBITS

| | |
|---|---|
| Exhibit A | Legal Description of the Building Parcel Owned by Landlord |
| Exhibit B | Legal Description of the Entire Tract Owned by Landlord |
| Exhibit C | Demolition and Construction Protocol |
| Exhibit D-1 | Description of the Scope of Landlord's Work |
| Exhibit E-1 | Depiction of Four Sears Signs to be Removed |
| Exhibit E-2 | Depiction of Three Sears Signs to be Refurbished and Reinstalled |
| Exhibit F | [Intentionally Omitted] |
| Exhibit G | Revised Floor Plans |
| Exhibit H | Subordination, Attornment and Non-Disturbance Agreement |
| Exhibit I | Memorandum of Amendment to Amended and Restated Building Lease |
| Exhibit J | Depiction of Parcel A and B |
| Exhibit J-1 | Legal Description of Parcel B |
| Exhibit J-2 | Legal Description of Parcel A |
| Exhibit K | TBA Lease Termination |
| Exhibit L | Depiction of Surface Parking (with the Tenant Control Area) and the alternative garage location) |
| Exhibit M | Memorandum of Covenants and Agreements |

29

84112177/V-22

**EXHIBIT A**

**LEGAL DESCRIPTION OF THE BUILDING PARCEL OWNED BY LANDLORD**

PARCEL 1:  (PORTION OF APN: 5169-010-006)

LOT 1 OF TRACT NO. 9410, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 136, PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

84112177/V-22

## EXHIBIT B

## LEGAL DESCRIPTION OF THE ENTIRE TRACT OWNED BY LANDLORD

### LEGAL DESCRIPTION OF ENTIRE TRACT

PARCEL 1: (PORTION OF APN: 5169-010-006)

LOT 1 OF TRACT NO. 9410, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 136, PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2: (PORTION OF APN: 5169-010-006)

THOSE PORTIONS OF LOTS 2, 3, 4 AND 5 IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

COMMENCING AT THE MOST WESTERLY CORNER OF SAID LOT 3; THENCE SOUTH 62° 31' 30" EAST, ALONG THE SOUTHWESTERLY LINE THEREOF, 400 FEET TO THE MOST SOUTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO LOS ANGELES PAPER BOX FACTORY, RECORDED IN BOOK 10041 PAGE 15 OFFICIAL RECORDS, SAID MOST SOUTHERLY CORNER BEING THE TRUE POINT OF BEGINNING; THENCE NORTH 27° 28' 30" EAST ALONG THE SOUTHEASTERLY LINE OF SAID LAND SO DESCRIBED AND THE NORTHEASTERLY PROLONGATION THEREOF, 180 FEET TO THE SOUTHWESTERLY LINE OF TRACT NO. 9410, AS PER MAP RECORDED IN BOOK 136 PAGES 7 AND 8 OF MAPS; THENCE SOUTH 62° 31' 30" EAST ALONG SAID LAST MENTIONED SOUTHWESTERLY LINE, 412.44 FEET TO THE EASTERLY LINE OF SAID LOT 5 (BEING ALSO THE WEST LINE OF SOTO STREET) ; THENCE SOUTH 4° 59' 47" WEST, ALONG SAID EASTERLY LINE; 164.87 FEET TO THE BEGINNING OF A CURVE THEREIN, CONCAVE TO THE NORTH, HAVING A RADIUS OF 20 FEET; THENCE WESTERLY ALONG SAID CURVE, 39.26 FEET TO THE END THEREOF; THENCE NORTH 62° 31' 30" WEST, ALONG THE SOUTHWESTERLY LINES OF SAID LOTS 5, 4 AND 3, A DISTANCE OF 457.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 3: (PORTION OF APN: 5169-010-006)

ALL THOSE PORTIONS OF LOTS 2 AND 3 IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID LOT 3, SOUTH 62° 31' 30" EAST, 100 FEET FROM THE MOST WESTERLY CORNER OF SAID LOT 3; THENCE NORTH 27° 28' 30" EAST, 163 FEET, MORE OR LESS, TO THE INTERSECTION WITH A LINE DRAWN PARALLEL WITH AND DISTANT NORTHEASTERLY 13 FEET, MEASURED AT RIGHT ANGLES FROM THE NORTHEASTERLY LINE OF SAID LOT 3 AND DISTANT SOUTH 62° 31' 30" EAST THEREON, 167.46 FEET FROM THE WEST LINE OF SAID LOT 2; THENCE SOUTH 62° 31' 30" EAST ALONG SAID PARALLEL LINE, 300 FEET; THENCE SOUTH 27° 28' 30" WEST, 163 FEET, MORE OR LESS, TO THE INTERSECTION WITH AFORESAID SOUTHWESTERLY LINE OF LOT 3; THENCE NORTH 62° 31' 30" WEST, ALONG SAID SOUTHWESTERLY LINE, 300 FEET TO THE POINT OF BEGINNING.

PARCEL 4: (PORTION OF APN: 5169-010-006)

31

THOSE PORTIONS OF LOTS 2 AND 4, IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 2; THENCE SOUTH 62° 31' 30" EAST, ALONG THE NORTHEASTERLY LINE OF SAID LOT 2 AND ITS SOUTHEASTERLY PROLONGATION, 724.59 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 4; THENCE SOUTH 4° 59' 47" WEST, ALONG SAID EASTERLY LINE, 194.80 FEET TO THE SOUTHEASTERLY CORNER OF SAID LOT 4; THENCE NORTH 62° 31' 30" WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOT 4, A DISTANCE OF 18.42 FEET TO A POINT IN A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 330.43 FEET, THE TANGENT TO SAID CURVE AT SAID POINT BEARING SOUTH 4° 23' 07" WEST; THENCE NORTHERLY ALONG SAID CURVE, A DISTANCE OF 51.46 FEET; THENCE NORTH 4° 32' 13" WEST 9.93 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 231.99 FEET; THENCE NORTHWESTERLY ALONG SAID CURVE, A DISTANCE OF 234.79 FEET TO A LINE PARALLEL WITH AND DISTANT 17 FEET SOUTHWESTERLY, MEASURED AT RIGHT ANGLES, FROM SAID NORTHEASTERLY LINE OF LOT 2; THENCE NORTH 67° 31' 30" WEST TANGENT TO SAID LAST MENTIONED CURVE, ALONG SAID PARALLEL LINE, 547.87 FEET TO A POINT IN THE WESTERLY

LINE OF SAID LOT 2; THENCE NORTH 4° 59' 47" EAST ALONG SAID WESTERLY LINE, 18.40 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

EXCEPT ANY PORTION OF SAID LAND THAT IS DESCRIBED IN PARCEL 2.

PARCEL 5: (APN: 5169-010-005)

THOSE PORTIONS OF LOTS 2 AND 3 IN BLOCK 8 OF TRACT 6783, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK

99 PAGE 77 ET SEQ. OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF SAID LOT 3; THENCE NORTH 4° 59' 47" EAST, ALONG THE WESTERLY LINES OF SAID LOTS 3 AND 2, 176.40 FEET, MORE OR LESS, TO THE INTERSECTION THEREOF WITH A LINE DRAWN PARALLEL WITH AND DISTANT NORTHEASTERLY 13 FEET; MEASURED AT RIGHT ANGLES, FROM THE NORTHEASTERLY LINE OF SAID LOT 3; THENCE SOUTH 62° 31' 30" EAST, ALONG SAID PARALLEL LINE, 167.46 FEET; THENCE SOUTH 27° 28' 30" WEST, 163.0 FEET, MORE OR LESS, TO A POINT IN THE SOUTHWESTERLY LINE OF SAID LOT 3, DISTANT SOUTH 62° 31' 30" EAST THEREON, 100 FEET

FROM THE POINT OF BEGINNING; THENCE NORTH 62° 31' 30" WEST ALONG SAID SOUTHWESTERLY LINE, 100 FEET TO THE POINT OF BEGINNING.

84112177\V-22

0044

## EXHIBIT C

## DEMOLITION AND CONSTRUCTION PROTOCOL
### (the "Protocol")

1.     In order to achieve agreement on the work to be performed by Landlord pursuant to the Amendment and cause the same to be performed in a good, timely, and workmanlike manner, Landlord and Tenant (collectively, the "Parties"), hereby agree to the following protocol with respect to all demolition and construction work to be performed by Landlord.

2.     **Compliance with Demolition Plans and Specifications Per Prior Notice:** Landlord agrees that no demolition or construction activity will commence without prior written notice to Tenant in conformance with the terms hereof.  In addition to the foregoing:

    A.)     <u>Hazardous Materials</u>.  Landlord shall provide two (2) weeks notice for any environmental work scheduled to commence at the Premises as defined in the Lease, including remediation or removal of hazardous materials, and shall include in that notice the scope of work contemplated and a complete, detailed remediation plan and plans and specifications for the same together with a schedule, authorized hours of construction activity and remediation plan for the same.  Tenant shall have ten (10) business days from receipt of both Landlord's notice and complete, detailed plans and specifications to provide any comments and/or objections.  No reply from Tenant within that period shall constitute approval.  Landlord may proceed with the work in question after complying with the aforesaid procedures provided the work in question is approved by Tenant or deemed approved by Tenant as aforesaid.

    B.)     <u>Non-Hazardous Materials</u>.  Landlord shall provide two (2) weeks notice for any demolition or construction work not involving remediation or removal of hazardous materials at the Building Parcel and shall include in that notice the scope of work contemplated a detailed set of plans and specifications for the same together with a schedule, authorized hours of construction activity and remediation plan for the same.  Tenant shall have ten (10) business days from receipt of Landlord's both notice and complete, detailed plans and specifications to provide any comments and/or objections. No reply from Tenant within that period shall constitute approval.  Landlord may proceed with the work in question after complying with the aforesaid procedures provided the work in question is approved by Tenant or deemed approved by Tenant as aforesaid.

84112177\V-22

C.)   Necessity of Protocol. If Tenant lodges timely objections to any notice hereunder, the Parties hereto must agree upon the scope and course of the work together with a schedule, authorized hours of construction activity and remediation plan for the same before it may proceed. Such consent by Tenant may not be unreasonably withheld.

3.    **Compliance with Laws**. Landlord shall initiate, perform and complete the demolition and construction work as well as Landlord's other obligations under this Protocol, at Landlord's sole cost and expense, in a manner compliant with all local, state and federal laws, ordinances and regulations.

4.    **Landlord's Indemnity and Defense Obligations.**

A.)   Landlord waives any right of contribution and shall indemnify Tenant, its constituent partners, and its and their directors, officers, employees and agents against, and hold Tenant, its constituent partners and its and their directors, officers, employees and agents harmless from, any and all claims, actions, losses, damages, costs, expenses (including, but not limited to, attorneys' fees) and liabilities (except those caused by the willful misconduct or negligent acts or omissions of Tenant, its agents, contractors or employees), arising out of actual or alleged injury to or death of any person or loss of or damage to property in or upon the Premises or Entire Tract (as defined in the Lease) and caused by the willful misconduct or negligent acts of Landlord, its agents, contractors or employees, including injury to or death of, or loss of or damage to any property of, Tenant, its directors, officers, employees, agents, invitees, licensee or others.

B.)   Landlord shall defend Tenant, its constituent partners, and its and their directors, officers, employees and agents against any and all claims and actions described in Section 4(A) hereof.

5.    **Landlord's Insurance**. Throughout the course of the demolition and construction work and for an additional period of two (2) years after its completion, Landlord shall pay for and maintain or cause its general contractor to pay for and obtain the following policies of insurance covering the Premises and the Entire Tract which insurance shall be obtained from insurers rated "A-VIII" or better by Best's Insurance Reports or its equivalent:

A.)   If Landlord uses leased or owned motor vehicles on the Entire Tract, Motor Vehicle Liability Insurance with coverage for all owned, non-owned and hired vehicles with combined single limits of liability of $3,000,000 per occurrence for bodily injury and property damage.

34

84112177\V-22

B.)     Commercial General Liability Insurance covering Landlord's operations at the Leased Premises and the Entire Tract, including, but not limited to, coverage for premises/operations, pollution liability coverage products/completed operations, contractual and personal/advertising injury liabilities with combined singled limits of $5,000,000 per occurrence, for bodily injury and property damage, including Tenant and its managing agent as additional insureds (as defined in ISO 20 26 11 85).

C.)     All-Risk Property Insurance upon all trade fixtures, merchandise, inventory, personal property, fixtures and equipment, including but not limited to those perils generally covered on a Cause of Loss Special Form, including fire, extended coverage, windstorm, vandalism, malicious mischief and sprinkler leak coverage in the amount of 100% of full replacement cost. The policies that Landlord is required to obtain pursuant to this Section shall name Tenant and, upon Tenant' request, any Tenant' Lender as additional insureds and shall be in excess of coverage which Tenant may have.

6.     **No Cancellation**. No insurance policy required of Landlord shall be subject to cancellation or material change without at least 30 days' prior written notice to Tenant. Landlord shall furnish Tenant, or cause to be furnished, concurrently with the execution of this Protocol, and prior to the inception of each successive policy period, insurance certificates evidencing the policies required to be maintained hereunder.

7.     **Tenant as Additional Insured**. Landlord or Landlord's contractor's and/or vendor's shall name Tenant as an additional insured or cause Tenant to be named as an additional insured on all liability insurance policies required hereunder and shall provide certificates thereof to Tenant promptly after the issuance and renewal of all such policy.

8.     **Landlord Warranties**. Landlord hereby warrants to Tenant:

A.)     that all demolition and construction work and other tasks to be performed by Landlord under this Protocol shall be performed in a good, timely, and workmanlike manner,

B.)     that all materials, supplies and equipment furnished in connection with the demolition and construction work and other tasks to be performed by Landlord under this Protocol shall be new and of good quality,

C.)     that the Landlord demolition and construction work and other tasks to be performed by Landlord under this Protocol shall be of good and workmanlike quality and free from defects; and

35

D.)    nothing contained in this Protocol shall relieve Landlord from any of Landlord's duties and responsibilities under the Building Lease with respect to the performance of the demolition work and other tasks to be performed by Landlord under this Protocol, and/or the maintenance, repair and operation of the Premises (including the Building).

9.    **Limited Scope.**  Landlord shall not amend or proceed with any demolition or construction activity except as reviewed and approved by Tenant pursuant to Section 2, above.

10.    **Christmas Sales Season and Other Work Restrictions.**  As set forth in Section 6 of the Amendment, Landlord shall not perform any construction, renovation or other work (including all work mentioned in this Amendment above) by or through Landlord during the "Christmas Sales Season", hereby defined as November 15 through January 15 of each calendar year, provided that solely in response to a breach of the warranty described in Section 14 of the Amendment, Landlord shall conduct that work at night after business hours and in accordance with a scope pre-approved by Tenant at least ten (10) business days in advance of the commencement of said work.

84112177/V-22

**<u>EXHIBITS D-1 through D-3</u>**

**<u>DESCRIPTION OF THE SCOPE OF LANDLORD'S WORK</u>**

37

84112177\V-22

**EXHIBIT D-1**

**Description of the Scope of Landlord's Work for Section 3 (LOW VOLTAGE)**

# Scope of Work

Contractor shall provide the Services and Deliverable(s) as follows:

Complete demolition of existing cables on 2nd and 3rd Floors.

Complete relocation of all voice and data cables, access points (APs), T1's, DS3, fiber, and feeders for pho and phone system to Basement Level.

**Relocate Phone System**
• Relocate main ROLM phone system from 2nd Floor to Basement Level. Phone system will need to be moved starting on a Friday night continuing to Monday day. This includes fourteen (14) 25 pair feeds to system and feeds to work stations which will allow phones to be active.

**Voice Cable Installation**
• Install Cat5e cables (Qty. 200) throughout store Basement Level & 1st Floor.
• Install 100 pair feeder (Qty. 1) for (1-1) from Basement Level to new IDF Room
• Install 100 pair feeder (Qty. 1) for (2-1) from Basement Level to new IDF Room
• Install new RG-58 for new DS3 circuit.

**Relocate Fiber & Access Points (APs)**
• Relocate two (2) 24 strand fiber from 2nd Floor to Basement Level and wireless access points (APs).
• Install cables for T1's and DS3 circuits.

**Access Points (APs) Cable Installation**
• Install Cat5e cables (Qty. 50) for access points (APs)

# Contractor Responsibilities

Contractor will provide complete relocation of all voice and data cables, access points (APs), T1's, DS3, fiber, and feeders for phone cabling and relocation of phone system to Basement Level. Contractor will also be responsible for the coordination of all circuits coming from the LEC (Local Exchange Carrier)

# Client Responsibilities

Client is responsible for informing Contractor of any foreseen changes that may affect the scope of work and allow accessibility to work areas within the jobsite during business or non-business hours as need to complete the work. Client is responsible for getting approval from Sears regarding the new IDF Room location and building out the new IDF Room.

84112177/V-22

**EXHIBIT D-2**

**DESCRIPTION OF THE SCOPE OF LANDLORD'S WORK FOR SECTION 4 (HVAC)**

Landlord shall provide between 250 and 350 tons of cooling capacity for the main retail level which tonnage shall be tied to actual calculations of physical conditions of the affected space . and 4 5 ton units for the lower retail level.

- ☐Sears typical cooling capacity for freestanding retail buildings is in the range of one ton per 300 SF to 350 SF.
- Provide adequate heating, cooling, and ventilation for the entire area of the basement formerly served by AHU-6, approximately 28,500 SF. The Landlord's plans currently do not indicate any provision for the basement HVAC.
- Ensure roof structure can support the weight of new packaged heat pumps. Provide structural reinforcement as required and coordinate any structural modifications with Sears operations.
- Demolish the existing air distribution system to make way for the new air distribution system proposed by the Landlord. Prior to demolition, provide ACM testing, and if detected, subsequent abatement of ACMs.
[NOTE: This was relocated to the loading dock area at the direction of Sears staff.]
- Provide exhaust system for restrooms and janitor closets located in the Sears retail space. A minimum of 70 cfm per fixture is required for CMC 2013. Exhaust terminations shall be a minimum of 10 feet from any fresh air intake.
- Numerous elevators serve the Sears retail space. Provide proper interior climate conditioning measures for any elevator equipment/machine rooms located within the space.
- Return air systems appears to be served by the plenum. All equipment and materials installed in the plenum return ceilings must meet flame spread and smoke developed ratings of 25/50 and be approved for use in plenum return ceilings. Flammable materials are prohibited in plenum return ceilings.
- The new roof top packaged heat pumps will need to be equipped with an airside economizer, demand control ventilation, and at least two speeds of fan control, based on California Title 24 requirements.
- Provide a controls package capable of the above roof top heat pump requirements.
- Provide proper HVAC system testing and balancing measures. Testing and balancing shall be performed by a third party, completely independent of the installing contractor. Testing and Balancing agency shall be certified by one of the following: AABC, NEBB, TABB.

84112177\V-22

**EXHIBIT D-3**

**DESCRIPTION OF THE SCOPE OF LANDLORD'S WORK FOR SECTION 5
(PLUMBING AND ELECTRICAL)**

Electrical Systems:

☐☐Replace existing "Lighting" 4000A switchgear with new 4000A switchgear and transfer any subpanels from the "Power" switchgear to the new "Lighting" switchgear that are solely used by Sears.
• Main electrical room equipment clearances will need to be verified with the new switchgear. Currently the room only has one entrance to the room, so there will need to be twice the working clearance requirement in front of the switchgear in order to comply with the NEC. If the double working clearance is not possible, then the room will need to be modified to provide a 2nd entrance.
• Provide a new separately metered 4000A, 277/480V, 3-phase, 4-wire electrical service into the building to serve Sears new 4000A switchgear.
• Coordinate with local utility to verify building is meeting their requirements for access to the utility meters.
• Transfer any joint-use and non-Sears subpanels from the existing "Lighting" switchgear to the existing "Power" switchgear.
• Provide temporary power to Sears during replacement and switchover of electrical service.
• Connect new mechanical equipment to new 4000A switchgear.
• Install new subpanels in Sears's space and transfer all Sears's related loads from existing joint-use panels to these new panels.
• Replace distribution panels and panelboards, in Sears's spaces, manufactured by Federal Pacific Electric and Zinsco, based on their age and the documented failure of components.
• Replace existing W.A. Benjamin panels in Sears's space. Panels were manufactured in the 1940's or 1950's and have reached the end of their useful life and repair parts are becoming obsolete.
• All new and existing electrical equipment must able to meet Title 24's minimum requirements for separation of electrical load.
• Replace any existing step-down transformers that are not working or ones that are near or have exceeded their useful life expectancy.
• Replace damaged conduit and feeders throughout Sears's space as determined necessary in the field.
°Install minimum lighting controls to comply with Title 24 requirements and ensure compatibility with Sears's existing light fixtures. In the instance that light fixtures are not compatible with current lighting control standards, light fixtures will need replaced with new .

Plumbing Systems:
☐☐Dedicate the existing 4" water service (Service #1), located in the boiler room, to serve only Sears plumbing fixtures. Route new lines to all of Sears plumbing fixtures. Bring service to compliance with current requirements of authority having jurisdiction. Cap lines that serve the Landlords fixtures and reconnect to the existing 5" domestic water service (Service #2) located in Section D.

84112177\V-22

• Dedicate the existing 2" water service (Service #3) currently serving Sears and Landlord fixtures above to only serve Sears. Cap lines on this service that supply landlord fixtures. Reconnect landlord fixtures to Service #2.

• Dedicate the existing 5" domestic water service (Service #2) to serve the landlord fixtures. Disconnect all branches to Landlord fixtures currently fed from Service #1 and Service #3, and reconnect to Service #2.

• Water Service #1 serves existing water tanks on roof. Remove lines that supply the tanks and adjust the existing lines that are connected to the large loop that serving Sears. Remove the loop and reconnect lines to Service #1.

• Remove all unused plumbing equipment, pipes, supports and fixtures located in Sears lease space.

• Ensure all pipe insulation on existing water, sanitary sewer, and storm lines does not contain asbestos material. If so, provide proper abatement techniques and remove it per jurisdictional requirements. Bring existing pipes/insulation to compliance with current code standards.

• Provide condensate drain piping from new roof top heat pumps that will serve Sears and drain to jurisdiction approved drain location. Provide drain receptacles as needed.

• Sears requires an intact vent and sanitary connection at all plumbing fixture locations. Maintain continuity of Sears connection to sanitary sewer main, as well as sanitary vent termination to outdoors. Condition shall be verified and replaced if determined by Sears to be in poor condition.

• Provide new domestic hot water system to all Sears plumbing fixtures requiring a hot water connection.

• Replace all pipes, valves and plumbing fixtures located in the Sears tenant space found to be in poor condition, as determined by Sears.

84112177/V-22

## EXHIBIT E

## DEPICTION OF THREE SEARS' SIGNS TO BE REPLACED PER SECTION 4

Google Maps                                                            Page 1 of 1



https://www.google.com/maps/@34.023775,-118.219914,3a,75y,285.86h,86.47t/data=!3m4...    7/1/2014

84112177/V-22

0054

Google Maps                                                    Page 1 of 1



https://www.google.com/maps/@34.025058,-118.221026,3a,75y,203.8h,108.37t/data=!3m4...    7/1/2014

43

84112177/V-22

Google Maps



https://www.google.com/maps/@34.02467,-118.222751,3a,75y,113.59h,90.98t/data=!3m4!...    7/1/2014

44

84112177\V-22

**EXHIBIT E-1**

**Depiction of Four Sears Signs to be Removed**



84112177\V-22

**Exhibit E -2**

**Depiction of Three Sears Signs to be Refurbished and Reinstalled**



46

0058







47

84112177\V-22

## EXHIBIT F

## [Intentionally Omitted]

48

84112177\V-22

## EXHIBIT G

## REVISED FLOOR PLANS



49



84112177/V-22

0062





51

## EXHIBIT H

### SUBORDINATION, ATTORNMENT AND
### NON-DISTURBANCE AGREEMENT

Prepared by and after recording
return to:

)
)
)
)
)
)
)
)
)
)
)

[This space reserved for recording purposes]

==================================================================

## SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE AGREEMENT

**THIS SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE AGREEMENT** (this "**Lease**") is made and entered into as of the _____ day of _____, 201__, by and between _____ ("**Lender**"), **Sears, Roebuck and Co.**, a New York corporation ("**Tenant**"), and the **Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999, Vegas Group, LLC**, a Nevada limited liability company, and **East River Group LLC**, a California limited liability company (collectively, "**Landlord**").

### RECITALS

Landlord is the owner of certain real property, legally described on Exhibit "A", attached hereto and made a part hereof (the "**Landlord Parcel**"), which is located on Olympic Boulevard and Rio Vista Avenue in the City of Los Angeles, County of Los Angeles and State of California.

Pursuant to the terms of that certain Amended and Restated Building Lease dated May 5, 2011, as amended, between Landlord (as successor in interest to 10309 Folsom Blvd, LP) and Tenant (the "**Lease**"), Landlord and Tenant have substituted for a portion of the premises originally leased pursuant to the Lease (the ""**From Sears**" **Floor Area**") described in Exhibit B, attached hereto and made part hereof) for that certain ""**To Sears**" **Floor Area**" described in Exhibit B together with all easements and rights appurtenant and thereto (hereinafter, the aforesaid "To Sears" Floor Area with the remaining Premises, after taking the removal of the "From Sears" Floor Area into account, with all easements and rights appurtenant thereto being hereinafter referred to as the "**Leased Premises**").

Lender is the holder of a mortgage or beneficiary under a Deed of Trust on the Leased Premises, given to the Lender by Landlord dated as of November 20, 2013 and recorded as Instrument No. 201316552234 in the Official Records of the County of Los Angeles Recorder

· 52

(collectively referred to herein with any other documents evidencing or securing the debt secured by the mortgage as the "**Mortgage**").

Landlord and Tenant have agreed to cause Tenant to subordinate the Lease and its interest in the Leased Premises to the lien of the Mortgage and that Tenant attorn to Lender.

In return for Tenant's agreement to subordinate and attorn on the terms and conditions set forth herein, Tenant requires recognition of and consent to the Lease terms by Lender and to be assured of continued occupancy of the Leased Premises under the terms of the Lease in the event either Lender or a Successor to Lender (as defined herein) succeeds to the rights of Landlord under the Lease pursuant to the terms of the Mortgage.

**NOW, THEREFORE,** in consideration of the mutual covenants hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    The Recitals paragraphs set forth above are hereby incorporated into this Lease.

2.    Lender hereby consents to the Lease.

3.    The Lease is and shall be subject and subordinate to the lien of the Mortgage and to all renewals, replacements and extensions of the Mortgage to the full extent of the principal sum secured thereby and interest thereon.  Notwithstanding anything herein to the contrary, Tenant's rights under the provisions of the Lease regarding insurance proceeds, casualty and eminent domain are not subordinated to the Mortgage and Lender recognizes and accepts those rights.

4.    In the event that Lender shall commence an action to foreclose the Mortgage or to obtain a receiver of the Leased Premises, or shall foreclose the Mortgage by advertisement, entry and sale according to any procedure available under the laws of the state where the Leased Premises are located, Tenant shall not be joined as a party defendant in any such action or proceeding and Tenant shall not be disturbed in its possession of the Leased Premises, provided Tenant is not in default under the Lease beyond any applicable cure period.

5.    In the event that Lender or any bona-fide purchaser (at a foreclosure sale or other proceedings brought to enforce the Mortgage), subsequent owner (receiving title by deed in lieu of foreclosure), successor, or assign (including, without limitation, a successor or assign from Lender in its capacity as the holder of the indebtedness secured by the Mortgage, such purchaser, subsequent owner, successor or assign referred to as "**Successor**") shall acquire the Leased Premises upon foreclosure, or by deed in lieu of foreclosure, or by any other means:

(a)    Lender or its Successor shall recognize and accept the rights of Tenant and shall thereafter assume the obligations of Landlord under the Lease; and

(b)    Tenant shall be deemed to have made a full and complete attornment to Lender or its Successor as the landlord under the Lease so as to establish direct privity between the Lender or its Successor and Tenant, and

(c)    All rights and obligations of Tenant under the Lease shall continue in full force and effect and be enforceable by and against Tenant respectively with the same force

53

84112177\V-22

and effect as if the Lease had originally been made and entered into directly by and between Lender or its Successor (as the case may be) as the landlord thereunder, and Tenant and, in the event the Lease shall automatically terminate pursuant to applicable law, Lender or its Successor (as the case may be) and Tenant shall, upon the request of Tenant, immediately enter into a new lease on the exact same terms and conditions of the Lease.

6.     Nothing herein contained shall impose any obligations upon either Lender or its Successor to perform any of the obligations of Landlord under the Lease, unless and until Lender or its Successor shall become either the owner or mortgagee in possession of the Leased Premises or shall otherwise become entitled to the use and benefit of the rents and profits therefrom.

7.     Lender acknowledges that Base Rent under the Lease for the entire Term in the amount of One Dollar ($1.00) has been prepaid.

8.     Notwithstanding anything contained herein to the contrary, Lender consents to Landlord's execution and delivery of that certain Amendment to Amended and Restated Building Lease dated as of _____, 2015, including without limitation the substitution of the "To Sears" Floor Area as a portion of the Leased Premises for the "From Sears" Floor Area.

9.     Any notice required or desired to be given under this Lease shall be in writing and (a) given by certified or registered mail, return receipt requested, postage prepaid, or (b) sent by reputable overnight air courier service (i.e., Federal Express, Airborne, etc.) with guaranteed overnight delivery; in each instance addressed to the party as provided below. Notices shall be deemed given when actually received by the recipient, receipt thereof is refused by the recipient, or the impossibility of delivery due to the failure to provide a new address as required herein. All notices hereunder shall be addressed as follows.  All notices hereunder shall be addressed as follows:

If to Landlord:          _____
                         _____
                         _____
                         _____

If to Lender:            _____
                         _____
                         _____
                         _____

If to Tenant:            Sears, Roebuck and Co.
                         3333 Beverly Road
                         Hoffman Estates, Illinois  60179
                         Attn:   Vice President - Real Estate
                                 Department 824RE

54

84112177\V-22

0066

With a copy to:                    Sears, Roebuck and Co.
                                   3333 Beverly Road
                                   Hoffman Estates, Illinois  60179
                                   Attn:    Vice President- Real Estate Law
                                            Department 824RE

Either party, at any time and from time to time (by providing notice to the other party in the manner set forth above), may designate a different address or person, or both, to whom such notice may be sent.  Notice of change in address or person shall be effective 10 days after written notice of such change has been sent to Tenant in accordance with the terms of this paragraph.

10.    This Agreement shall be binding upon and inure to the benefit of Lender, its Successors, Landlord and Tenant and their respective legal representatives, successors, administrators and assigns.

11.    Landlord or Lender or its Successor shall give written notice to Tenant of the reconveyance or other release of the Mortgage within thirty (30) days of the date the reconveyance or other release is recorded.

12.    This Agreement and lien of the Mortgage shall not apply to any personalty, real property, fixtures or equipment owned or leased by Tenant which is now or hereafter placed on or installed in the Leased Premises, and Tenant shall have the full right to remove said personalty, real property, fixtures and equipment at the expiration of the Lease term.

13.    **This Agreement constitutes the entire agreement of the parties hereto concerning its subject matter and may not be modified except in writing signed by the parties hereto.**

14.    **The   provisions of this Agreement are valid and enforceable only upon execution by Landlord and Lender of an unmodified counterpart hereof and delivering a fully signed original to Tenant by _____, _____ [insert   date   30   days following delivery].**

*{Remainder of Page Intentionally Left Blank; Signature Pages Immediately Follow}*

84112177\V-22

**IN WITNESS WHEREOF**, this Subordination, Attornment and Non-Disturbance Lease has been signed and sealed on the day and year first above set forth.

**LENDER:**

a_____

By: _____

Name:_____

Title: _____

**TENANT:**

SEARS, ROEBUCK AND CO.,
a New York corporation

By: _____

Name:_____

Title: _____

**LANDLORD:**

VEGAS GROUP, LLC,
a Nevada limited liability company

By: _____
Its: _____

THE IZEK SHOMOF IRREVOCABLE
CHILDREN'S TRUST DATED FEBRUARY 11,
1999

By: _____
Its: Trustee

56

84112177\V-22

0068

EAST RIVER GROUP LLC,
a California limited liability company


By: _____

Its: _____

57

<u>LENDER NOTARY</u>:

STATE OF _____ )
                                ) SS:
COUNTY OF _____ )

On _____, before me, _____ a Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Signature of Notary                             (affix seal here)

84112177\V-22

TENANT NOTARY:

STATE OF ILLINOIS     )
                             ) SS:
COUNTY OF COOK     )

      **THE** undersigned, a Notary Public in and for the County and State aforesaid, does hereby certify that _____, personally known to me to be the _____ of Sears, Roebuck and Co., a New York corporation, the sole member of a Delaware statutory trust, appeared before me this day in person and acknowledged under oath that in such capacity he/she signed and delivered the said instrument pursuant to authority duly given to him/her by said corporation.

      **GIVEN** under my hand and seal this _____ day of _____, 201___.


                                           _____
                                               Notary Public

My Commission Expires:

_____

84112177\IV-22

<u>LANDLORD NOTARY:</u>

STATE OF _____ )
                            ) SS:
COUNTY OF _____ )

On _____, before me, _____ a Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Signature of Notary                                   (affix seal here)

84112177/V-22

**LANDLORD NOTARY:**

STATE OF _____  )

                            ) SS:

COUNTY OF _____  )

On _____, before me, _____ a Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Signature of Notary                                  (affix seal here)

84112177\V-22

**LANDLORD NOTARY:**

STATE OF _____ )
                                          ) SS:
COUNTY OF _____ )

On _____, before me, _____ a Notary
Public, personally appeared _____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Signature of Notary                                          (affix seal here)

62

84112177\V-22

0074

**EXHIBIT A**

PARCEL 1:  (PORTION OF APN: 5169-010-006)

LOT 1 OF TRACT NO. 9410, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED
IN BOOK 136, PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

63

84112177/V-22

# EXHIBIT B

## LEGAL DESCRIPTION OF THE ENTIRE TRACT OWNED BY LANDLORD

### LEGAL DESCRIPTION OF ENTIRE TRACT

PARCEL 1: (PORTION OF APN: 5169-010-006)

LOT 1 OF TRACT NO. 9410, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 136, PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2: (PORTION OF APN: 5169-010-006)

THOSE PORTIONS OF LOTS 2, 3, 4 AND 5 IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

COMMENCING AT THE MOST WESTERLY CORNER OF SAID LOT 3; THENCE SOUTH 62° 31' 30" EAST, ALONG THE SOUTHWESTERLY LINE THEREOF, 400 FEET TO THE MOST SOUTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO LOS ANGELES PAPER BOX FACTORY, RECORDED IN BOOK 10041 PAGE 15 OFFICIAL RECORDS, SAID MOST SOUTHERLY CORNER BEING THE TRUE POINT OF BEGINNING; THENCE NORTH 27° 28' 30" EAST ALONG THE SOUTHEASTERLY LINE OF SAID LAND SO DESCRIBED AND THE NORTHEASTERLY PROLONGATION THEREOF, 180 FEET TO THE SOUTHWESTERLY LINE OF TRACT NO. 9410, AS PER MAP RECORDED IN BOOK 136 PAGES 7 AND 8 OF MAPS; THENCE SOUTH 62° 31' 30" EAST ALONG SAID LAST MENTIONED SOUTHWESTERLY LINE, 412.44 FEET TO THE EASTERLY LINE OF SAID LOT 5 (BEING ALSO THE WEST LINE OF SOTO STREET) ; THENCE SOUTH 4° 59' 47" WEST, ALONG SAID EASTERLY LINE; 164.87 FEET TO THE BEGINNING OF A CURVE THEREIN, CONCAVE TO THE NORTH, HAVING A RADIUS OF 20 FEET; THENCE WESTERLY ALONG SAID CURVE, 39.26 FEET TO THE END THEREOF; THENCE NORTH 62° 31' 30" WEST, ALONG THE SOUTHWESTERLY LINES OF SAID LOTS 5, 4 AND 3, A DISTANCE OF 457.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 3: (PORTION OF APN: 5169-010-006)

ALL THOSE PORTIONS OF LOTS 2 AND 3 IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID LOT 3, SOUTH 62° 31' 30" EAST, 100 FEET FROM THE MOST WESTERLY CORNER OF SAID LOT 3; THENCE NORTH 27° 28' 30" EAST, 163 FEET, MORE OR LESS, TO THE INTERSECTION WITH A LINE DRAWN PARALLEL WITH AND DISTANT NORTHEASTERLY 13 FEET, MEASURED AT RIGHT ANGLES FROM THE NORTHEASTERLY LINE OF SAID LOT 3 AND DISTANT SOUTH 62° 31' 30" EAST THEREON, 167.46 FEET FROM THE WEST LINE OF SAID LOT 2; THENCE SOUTH 62° 31' 30" EAST ALONG SAID PARALLEL LINE, 300 FEET; THENCE SOUTH 27° 28' 30" WEST, 163 FEET, MORE OR LESS, TO THE INTERSECTION WITH AFORESAID SOUTHWESTERLY LINE OF LOT 3; THENCE NORTH 62° 31' 30" WEST, ALONG SAID SOUTHWESTERLY LINE, 300 FEET TO THE POINT OF BEGINNING.

PARCEL 4: (PORTION OF APN: 5169-010-006)

64

THOSE PORTIONS OF LOTS 2 AND 4, IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 2; THENCE SOUTH 62° 31' 30" EAST, ALONG THE NORTHEASTERLY LINE OF SAID LOT 2 AND ITS SOUTHEASTERLY PROLONGATION, 724.59 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 4; THENCE SOUTH 4° 59' 47" WEST, ALONG SAID EASTERLY LINE, 194.80 FEET TO THE SOUTHEASTERLY CORNER OF SAID LOT 4; THENCE NORTH 62° 31' 30" WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOT 4, A DISTANCE OF 18.42 FEET TO A POINT IN A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 330.43 FEET, THE TANGENT TO SAID CURVE AT SAID POINT BEARING SOUTH 4° 23' 07" WEST; THENCE NORTHERLY ALONG SAID CURVE, A DISTANCE OF 51.46 FEET; THENCE NORTH 4° 32' 13" WEST 9.93 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 231.99 FEET; THENCE NORTHWESTERLY ALONG SAID CURVE, A DISTANCE OF 234.79 FEET TO A LINE PARALLEL WITH AND DISTANT 17 FEET SOUTHWESTERLY, MEASURED AT RIGHT ANGLES, FROM SAID NORTHEASTERLY LINE OF LOT 2; THENCE NORTH 67° 31' 30" WEST TANGENT TO SAID LAST MENTIONED CURVE, ALONG SAID PARALLEL LINE, 547.87 FEET TO A POINT IN THE WESTERLY

LINE OF SAID LOT 2; THENCE NORTH 4° 59' 47" EAST ALONG SAID WESTERLY LINE, 18.40 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

EXCEPT ANY PORTION OF SAID LAND THAT IS DESCRIBED IN PARCEL 2.

PARCEL 5: (APN: 5169-010-005)

THOSE PORTIONS OF LOTS 2 AND 3 IN BLOCK 8 OF TRACT 6783, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK

99 PAGE 77 ET SEQ. OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF SAID LOT 3; THENCE NORTH 4° 59' 47" EAST, ALONG THE WESTERLY LINES OF SAID LOTS 3 AND 2, 176.40 FEET, MORE OR LESS, TO THE INTERSECTION THEREOF WITH A LINE DRAWN PARALLEL WITH AND DISTANT NORTHEASTERLY 13 FEET; MEASURED AT RIGHT ANGLES, FROM THE NORTHEASTERLY LINE OF SAID LOT 3; THENCE SOUTH 62° 31' 30" EAST, ALONG SAID PARALLEL LINE, 167.46 FEET; THENCE SOUTH 27° 28' 30" WEST, 163.0 FEET, MORE OR LESS, TO A POINT IN THE SOUTHWESTERLY LINE OF SAID LOT 3, DISTANT SOUTH 62° 31' 30" EAST THEREON, 100 FEET

FROM THE POINT OF BEGINNING; THENCE NORTH 62° 31' 30" WEST ALONG SAID SOUTHWESTERLY LINE, 100 FEET TO THE POINT OF BEGINNING.

65

84112177\V-22

0077

## EXHIBIT I

## MEMORANDUM OF AMENDMENT TO AMENDED
## AND RESTATED BUILDING LEASE

Recording Requested by and
When recorded, return to:

Steven A. Velkei, Esq.
Dentons US LLP
601 S. Figueroa
Suite 2500
Los Angeles, CA  90017

(Space Above for
Recorders Use Only)

State of Illinois
County of Cook

## MEMORANDUM OF AMENDMENT TO
## AMENDED AND RESTATED BUILDING LEASE

THIS MEMORANDUM OF AMENDMENT TO AMENDED AND RESTATED
BUILDING LEASE ("Amended Restated Memorandum") is made and entered into as of
December 30, 2015, by and between the Izek and Aline Shomof Irrevocable Children's Trust
dated February 11, 1999, Vegas Group, LLC, a Nevada limited liability company, and East River
Group LLC, a California limited liability company (collectively, "Landlord"), as successor in title
and interest to 10309 Folsom Blvd., LP, a California limited partnership, and SEARS, ROEBUCK
AND CO., a New York corporation ("Tenant").

## WITNESSETH:

A.     Landlord, through its predecessors in title, and Tenant executed that certain
"Amended Restated Building Lease" dated as of May 5, 2011 ("Lease") for that certain real
property owned by Landlord legally described in Exhibit A to this Memorandum, which is
improved by Building, a portion of which Tenant is currently leasing by means of the Lease (the

66

84112177/V-22

0078

"Premises"). A May 5, 2011 "Amended and Restated Memorandum of Lease" respecting the aforesaid was recorded in the Recorder's Office, Los Angeles County on May 18, 2011 as Document No. 20110699117.

B.    Landlord and Tenant have entered into that certain "Amendment to Amended and Restated Building Lease" dated as of December 30, 2015 (the "Amendment") in order to substitute a portion of the Building (as defined in the Lease) previously not within the Premises in return for a portion of the Building previously within Premises. The Lease and the Amendment taken together is sometimes referred to as the "Amended Restated Leased".

C.    By means of the Amendment, Landlord and Tenant have also agreed to certain "Covenants and Easements" as defined in the Amendment regarding the Landlord's proposed redevelopment of both the Premises and on other property in the vicinity of the Premises that is owned by Landlord legally described in Exhibit B attached hereto and made part hereof.

NOW THEREFORE, for good and valuable information, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant have agreed to memorialize certain features of the Amended Restated Building Lease and grant and memorialize the Covenants and Easements by means of this Amended Restated Memorandum.

1.    From and after recordation of this Amended Restated Memorandum, all prior memorandums shall be deemed amended and restated in their entirety, and the priority of the Lease shall be continued without change. For the avoidance of doubt, neither this Amended Restated Memorandum nor the Amended Restated Lease shall or is intended to be a substitution or novation of any prior memorandum or prior leases, nor do either extinguish or release or in any other way adversely affect the continued priority of any prior memorandum or the prior leases, as the same are more fully declared in that certain Amended and Restated Memorandum of Lease, dated May 18, 2011, as Document 20110699117 with the office of the Clerk of Los Angeles County, California.

2.    The addresses of the parties to the Lease are as follows:

(a)    Landlord -    East River Group
206 W. 6th Street, Suite 100
Los Angeles, CA 90014
Attn: Izek Shomof

(b)    Tenant -    Sears, Roebuck and Co.
3333 Beverly Road
Hoffman Estates, Illinois 60179

67

84112177\V-22

0079

3.      As of December 30, 2015 (the "Substitution Date") the portion of the Premises marked on Exhibit C attached hereto as "From Sears" shall no longer be deemed subject to the Amended Restated Lease, and immediately thereafter as of said December 30, 2015 Substitution Date a portion of the Building adjacent to Premises marked on Exhibit C as "To Sears" shall be deemed subject to the Amended Restated Lease as part of the Premises demised pursuant to the Amended Restated Lease for the remaining Term of the Amended Restated Lease. Landlord and Tenant may at a later point in time execute and deliver a similar Memorandum of Amendment for the "Tenant's Released Basement Premises" described in the Amendment.

4.      By means of the Amendment, among other matters the Landlord grants certain "Covenants and Easements" attached hereto as Exhibit D which bind Landlord, the Premises, and other real property in the vicinity of the Premises owned by Landlord legally described in Exhibit D attached hereto, which Covenants and Easements run with the land, as well as other property owned by Boyle Heights Land Holdings LLC, a California limited liability company, an entity owned and controlled by Landlord, said property owned by Boyle Heights Land Holdings LLC being legally described in Exhibit E attached hereto and made part hereof.

5.      The purpose of this Amended Restated Memorandum is to give notice of the Amended Restated Lease. The terms and provisions of the Amended Restated Lease, including without limitation definitions, are hereby incorporated by reference as if fully set forth herein. Neither the Amended Restated Lease nor this Amended Restated Memorandum shall give any enforcement or other rights or benefits to any third party, other than the rights of successors and assigns to Landlord's and Tenant's respective rights under the Amended Restated Lease.

6.      This Amended Restated Memorandum is not a complete summary of the Amended Restated Lease, nor shall any provisions of this Amendment Restated Memorandum be used in interpreting the provisions of the Amended Restated Lease. In the event of any conflict between this Amended Restated Memorandum and the Amended Restated Lease, the Amended Restated Lease shall control.

7.      This Amended Restated Memorandum is being executed and delivered for recording in the Office of the Clerk of Los Angeles County, California.

8.      This Agreement may be executed by the parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Furthermore, the parties agree that: (i) this Agreement may be transmitted between them by telecopier or email; (ii) this Agreement may be executed by telecopier or e-mail signature but upon request by either party, original signatures shall be subsequently delivered after e-mail signatures have been circulated; (iii) telecopier and e-mail signatures shall have the effect of original signatures, and (iv) that a faxed or e-mailed Agreement containing the signatures of (original, faxed or e-mailed) of all parties hereto shall be binding on a party when the signature page of such party is transmitted to the other party.

68

84112177\V-22

9.     This Amended Restated Memorandum may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement. This Agreement may be executed by the parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Furthermore, the parties agree that: (i) this Agreement may be transmitted between them by telecopier or email; (ii) this Agreement may be executed by telecopier or e-mail signature but upon request by either party, original signatures shall be subsequently delivered after e-mail signatures have been circulated; (iii) telecopier and e-mail signatures shall have the effect of original signatures, and (iv) that a faxed or e-mailed Agreement containing the signatures of (original, faxed or e-mailed) of all parties hereto shall be binding on a party when the signature page of such party is transmitted to the other party.

*[The remainder of this page intentionally blank]*

IN WITNESS WHEREOF, this Memorandum of Amendment to Amended and Restated Lease has been duly executed and delivered as of the day and year first above written.

LANDLORD:

VEGAS GROUP, LLC,
a Nevada limited liability company


By: _____
Its: _____


THE IZEK AND ALINE SHOMOF IRREVOCABLE CHILDREN'S TRUST DATED FEBRUARY 11, 1999


By: _____
Its: Trustee

69

84112177\V-22

0081

EAST RIVER GROUP LLC,
a California limited liability company

By: _____
Its: _____


TENANT:

SEARS, ROEBUCK AND CO.,
a New York corporation

By: _____
Its: _____

84112177\V-22

STATE OF _____ )
                          ) ss.
COUNTY OF _____ )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

71

84112177\V-22

0083

STATE OF _____ )

                                  ) ss.

COUNTY OF _____ )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

                                  _____

                                  Notary Public

84112177\V-22

STATE OF _____ )
                                 ) ss.
COUNTY OF _____ )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

73

STATE OF ILLINOIS      )
                       ) SS:
COUNTY OF COOK      )

**THE** undersigned, a Notary Public in and for the County and State aforesaid, does hereby certify that _____, personally known to me to be the _____ of Sears, Roebuck and Co., a New York corporation, the sole member of a Delaware statutory trust, appeared before me this day in person and acknowledged under oath that in such capacity he/she signed and delivered the said instrument pursuant to authority duly given to him/her by said corporation.

**GIVEN** under my hand and seal this _____ day of _____, 201___.

_____
Notary Public

My Commission Expires:

_____

74

## ADDENDUM AND RATIFICATION OF AMENDMENT TO
## AMENDED AND RESTATED BUILDING LEASE

The undersigned, being all of the Trustees of the Izek Shomof and Aline Shomof Irrevocable Children's Trust, Dated as of February 11, 1999, do hereby join in and ratify as of December 30, 2015 that certain Amendment to Amended and Restated Building Lease dated as of December 30, 2015 (the "Amendment") by and between the Izek Shomof and Aline Shomof Irrevocable Children's Trust, Dated February 11, 1999, Vegas Group LLC, and East River Group, LLC (collectively "Landlord") and Sears, Roebuck and Co. (as "Tenant").

Per the "Counterparts" provisions in Section 21 of the Amendment, this Addendum and Ratification may be may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be one and the same instrument.


_____          _____          _____
By:  Eric Michael Shomof          By:  Jonathan Shomof              By:  Jimmy Shomof
Its:  Trustee                     Its:  Trustee                    Its:  Trustee


_____          _____
By:  Sara Stephanie Shomof        By:  Jessica Michelle Shomof
Its:  Trustee                     Its:  Trustee


74-A

STATE OF _____    )
                             ) ss.
COUNTY OF _____   )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

74-B

STATE OF _____    )
                                     ) ss.
COUNTY OF _____    )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public

74-C

STATE OF _____ )

                                 ) ss.

COUNTY OF _____ )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

74-D

84112177/V-22

STATE OF _____  )
                                 ) ss.
COUNTY OF _____   )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

74-E

STATE OF _____    )
                                    ) ss.
COUNTY OF _____    )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____

Notary Public


74-F

84112177\V-22

## EXHIBIT A

## LEGAL DESCRIPTION OF PREMISES

PARCEL 1: (PORTION OF APN: 5169-010-006)

LOT 1 OF TRACT NO. 9410, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK
136, PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

84112177/V-22

## EXHIBIT B

## LEGAL DESCRIPTION OF THE ENTIRE TRACT OWNED BY LANDLORD

PARCEL 1: (PORTION OF APN: 5169-010-006)

LOT 1 OF TRACT NO. 9410, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 136, PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2: (PORTION OF APN: 5169-010-006)

THOSE PORTIONS OF LOTS 2, 3, 4 AND 5 IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

COMMENCING AT THE MOST WESTERLY CORNER OF SAID LOT 3, THENCE SOUTH 62° 31' 30" EAST, ALONG THE SOUTHWESTERLY LINE THEREOF, 400 FEET TO THE MOST SOUTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO LOS ANGELES PAPER BOX FACTORY, RECORDED IN BOOK 10043 PAGE 15 OFFICIAL RECORDS, SAID MOST SOUTHERLY CORNER BEING THE TRUE POINT OF BEGINNING; THENCE NORTH 27° 28' 30" EAST ALONG THE SOUTHEASTERLY LINE OF SAID LAND SO DESCRIBED AND THE NORTHEASTERLY PROLONGATION THEREOF, 180 FEET TO THE SOUTHWESTERLY LINE OF TRACT NO. 9410, AS PER MAP RECORDED IN BOOK 136 PAGES 7 AND 8 OF MAPS; THENCE SOUTH 62° 31' 30" EAST ALONG SAID LAST MENTIONED SOUTHWESTERLY LINE, 412.44 FEET TO THE EASTERLY LINE OF SAID LOT 5 (BEING ALSO THE WEST LINE OF SOTO STREET), THENCE SOUTH 4° 59' 47" WEST, ALONG SAID EASTERLY LINE, 164.87 FEET TO THE BEGINNING OF A CURVE THEREIN, CONCAVE TO THE NORTH, HAVING A RADIUS OF 20 FEET; THENCE WESTERLY ALONG SAID CURVE, 39.26 FEET TO THE END THEREOF; THENCE NORTH 62° 31' 30" WEST, ALONG THE SOUTHWESTERLY LINES OF SAID LOTS 5, 4 AND 3, A DISTANCE OF 457.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 3: (PORTION OF APN: 5169-010-006)

76

ALL THOSE PORTIONS OF LOTS 2 AND 3 IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID LOT 3, SOUTH 62° 31' 30" EAST, 100 FEET FROM THE MOST WESTERLY CORNER OF SAID LOT 3, THENCE NORTH 27° 28' 30" EAST, 163 FEET, MORE OR LESS, TO THE INTERSECTION WITH A LINE DRAWN PARALLEL WITH AND DISTANT NORTHEASTERLY 13 FEET, MEASURED AT RIGHT ANGLES FROM THE NORTHEASTERLY LINE OF SAID LOT 3 AND DISTANT SOUTH 62° 31' 30" EAST THEREON, 167.46 FEET FROM THE WEST LINE OF SAID LOT 2, THENCE SOUTH 62° 31' 30" EAST ALONG SAID PARALLEL LINE, 300 FEET; THENCE SOUTH 27° 28' 30" WEST, 163 FEET, MORE OR LESS, TO THE INTERSECTION WITH AFORESAID SOUTHWESTERLY LINE OF LOT 3; THENCE NORTH 62° 31' 30" WEST, ALONG SAID SOUTHWESTERLY LINE, 300 FEET TO THE POINT OF BEGINNING.

PARCEL 4: (PORTION OF APN: 5169-010-006)

THOSE PORTIONS OF LOTS 2 AND 4, IN BLOCK 8 OF TRACT NO. 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID LOT 2, THENCE SOUTH 62° 31' 30" EAST, ALONG THE NORTHEASTERLY LINE OF SAID LOT 2 AND ITS SOUTHEASTERLY PROLONGATION, 724.59 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 4, THENCE SOUTH 4° 59' 47" WEST, ALONG SAID EASTERLY LINE, 194.80 FEET TO THE SOUTHEASTERLY CORNER OF SAID LOT 4; THENCE NORTH 62° 31' 30" WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOT 4, A DISTANCE OF 18.42 FEET TO A POINT IN A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 330.43 FEET, THE TANGENT TO SAID CURVE AT SAID POINT BEARING SOUTH 4° 25' 07" WEST; THENCE NORTHERLY ALONG SAID CURVE, A DISTANCE OF 51.46 FEET; THENCE NORTH 4° 32' 13" WEST 9.93 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 231.99 FEET; THENCE NORTHWESTERLY ALONG SAID CURVE, A DISTANCE OF 234.79 FEET TO A LINE PARALLEL WITH AND DISTANT 17 FEET SOUTHWESTERLY, MEASURED AT RIGHT ANGLES, FROM SAID NORTHEASTERLY LINE OF LOT 2; THENCE NORTH 67° 31' 30" WEST TANGENT TO SAID LAST MENTIONED CURVE, ALONG SAID PARALLEL LINE, 547.87 FEET TO A POINT IN THE WESTERLY LINE OF SAID LOT 2; THENCE NORTH 4° 59' 47" EAST ALONG SAID WESTERLY LINE, 18.40 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

EXCEPT ANY PORTION OF SAID LAND THAT IS DESCRIBED IN PARCEL 2.

77

84112177IV-22

0095

PARCEL 5: (APN: 5169-010-005)

THOSE PORTIONS OF LOTS 2 AND 3 IN BLOCK 8 OF TRACT 6783, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 99 PAGE 77 ET SEQ. OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF SAID LOT 3; THENCE NORTH 4° 59' 47" EAST, ALONG THE WESTERLY LINES OF SAID LOTS 3 AND 2, 176.40 FEET, MORE OR LESS, TO THE INTERSECTION THEREOF WITH A LINE DRAWN PARALLEL WITH AND DISTANT NORTHEASTERLY 13 FEET, MEASURED AT RIGHT ANGLES, FROM THE NORTHEASTERLY LINE OF SAID LOT 3; THENCE SOUTH 62° 31' 30" EAST, ALONG SAID PARALLEL LINE, 167.46 FEET; THENCE SOUTH 27° 28' 30" WEST, 163.0 FEET, MORE OR LESS, TO A POINT IN THE SOUTHWESTERLY LINE OF SAID LOT 3, DISTANT SOUTH 62° 31' 30" EAST THEREON, 100 FEET FROM THE POINT OF BEGINNING; THENCE NORTH 62° 31' 30" WEST ALONG SAID SOUTHWESTERLY LINE, 100 FEET TO THE POINT OF BEGINNING.

84112177\V-22

## EXHIBIT C

## FLOOR PLAN RELEASES AND SUBSTITUTIONS



79



84112177\V-22

0098





81

## EXHIBIT D

## REGARDING CITY APPLICATIONS: COVENANTS AND EASEMENTS

**26.     REGARDING CITY APPLICATIONS; COVENANTS AND EASEMENTS.**

(a)     Landlord and East River Group LLC, an entity with common membership and control as Landlord ("East River Group") have filed the City Applications described in Recital D of this Amendment and approved by the resulting December 8, 2015 Determination Letter from the Zoning Administrator, which is being appealed by CREED LA.   At present, the City Applications propose to furnish off-street parking to service Landlord's redevelopment of the Building from vacant warehouse space to commercial, retail, office and residential uses in a parking garage structure ("Rio Vista Garage") to be constructed at the location owned by Boyle Heights Land Holdings LLC designated as "Parcel B" on Exhibit J attached hereto and made part hereof, and legally described in Exhibit J-1 attached hereto and made part hereof.   However, subsequent to the City's aforesaid approval of the pending City Applications, Landlord, Boyle Heights Land Holdings LLC and East River Group are considering filing additional applications to replace the Rio Vista Garage with a parking garage structure and parking plan depicted on Exhibit L attached hereto and made part hereof ("Soto Garage"), which is hereby included in the defined "City Applications".

(b)     Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease are the grantees of the following covenants and easements from Landlord, East River Group and Boyle Heights Land Holdings LLC in the form of the following "Covenants and Easements" set forth below:

(1)     Landlord covenants and agrees with Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease that the Rio Vista Garage or Soto Garage shall be completed and opened pursuant to certificates of occupancy issued by the City before the occupancy of converted and redeveloped commercial, retail, office and residential uses in the Building or on the Building Parcel (except for the Premises, the Building's second floor if used solely for office use, the annex building and the 6,000 square foot retail pad at the corner of Soto and Olympic).

(2)     Subject to the terms of Section 26(b)(3), below, Landlord further covenants and agrees with Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease that should Landlord pursue a redevelopment option other than the one presented in Exhibit L, that no portion of the Building except for the Premises, the Building's first floor if used solely for warehousing, second floor if used solely for office use, the annex building and the 6,000

84112177/V-22

retail pad at the corner of Soto and Olympic and no other portion of the Building Parcel will be used and occupied without a subsequent agreement with Tenant acceptable to Tenant in its sole discretion unless Landlord provides first at its expense either the Rio Vista Garage or Soto Garage.

(3)    Landlord, East River Group (in its sole capacity as the zoning applicant) and Boyle Heights Land Holdings LLC each covenant and grant to Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease and to the Tenant's, customers, invitees and permittees of the aforesaid:

(A)    the non-exclusive easement to park motor vehicles within the portion of the Rio Vista Garage and the Soto Garage designated for non-residential tenants, customers, invitees, permittees, successors and assigns, which designated area available for such non-exclusive use as to Tenant as aforesaid shall consist of at least 600 parking spaces;

(B)    that either the Rio Vista Garage or the Soto Garage, wherever located, shall have a minimum of 1,500 off-street parking spaces, with the calculation of the aforesaid off-street parking spaces to exclude the not less than 250 surface parking spaces which will, in addition, be provided Tenant on an exclusive basis as Tenant's ("Tenant's Control Area") by Landlord and/or Boyle Heights Land Holdings LLC at the location indicated in Exhibit L;

(4)    Landlord, as owner of the Building Parcel and the Entire Tract, further grants Tenant, its sublessees, customers, invitees, permittees, successors and assigns the exclusive right and easement for Tenant and its sublessees, its customers, invitees and permittees to park motor vehicles within the revised "Tenant Control Area" depicted on Exhibit L, attached here and made part hereof, with all rights to treat, use and occupy such revised Tenant Control Area as its own exclusive parking area and to use such area in its sole and absolute discretion, and Landlord:

(i)    shall promptly but in any event on or before the earlier of either December 31, 2017, or the date Landlord opens any part of the Building or the Building Parcel for business pursuant to occupancy permits (except for the Premises, the Building second floor if solely for office use, the annex building and the 6000 square foot retail pad at the corner of Soto and Olympic) construct a tasteful but effective fence and parking ticket validation gate and related facilities and directional and explanatory signs (the "Tenant Control Area Fence and Parking Validation System") which implements the aforesaid exclusive segregated parking for Tenant and its sublessees, its customers, permittees and invitees within the

83

revised Tenant Control Area shown on Exhibit L at no cost to the Tenants, with the design, function of and operational characteristics of the Tenant Control Area Fence and Parking Validation System to be approved by Tenant by means of review and approval procedures in the Demolition and Construction Protocol attached hereto as Exhibit C and made part hereof;

(ii)    thereafter Landlord shall operate, maintain, repair and replace the aforesaid Tenant Control Area Fence and Parking Validation system, including related accessories thereto and related utilities with Tenant to pay Tenant's Share of the reasonable cost thereof (as Tenant's Share is defined in Section 1(z) of the Building Lease) as invoiced separately by Landlord on a monthly basis;

(iii)    subject to the terms of Section 26(b)(3)(B)(i), above, notwithstanding the implementation of the foregoing exclusive Tenant parking within the Tenant Control Area described as Exhibit L, and the foregoing non-exclusive parking elsewhere, Landlord shall continue to perform maintenance, repair, replacement and restriping of the Tenant Control Area and of the non-exclusive parking areas in the surface parking lot at Landlord's expense except for permitted Tenant's CAM Contributions; provided no reconfiguration of the Tenant Control Area Fence and Parking Validation System or reconfiguration of the means of access to the Tenant Control Area shall be made without Tenant's prior written consent pursuant to the Tenant review and approval procedures in the Demolition and Construction Protocol attached hereto as Exhibit C, provided that Tenant's consent to such a reconfiguration may be given or withheld by Tenant in Tenant's sole and absolute discretion;

(iv)    Landlord shall at its sole expense take such further commercially reasonable steps as necessary to prevent owners, tenants, sublessees, customers, permittees and invitees other than Tenant, its successors and assigns and Tenant's customers, invitees and permittees from parking in the Tenant Control Area;

(v)    Landlord will provide Tenant the exclusive use of two (2) loading docks and one (1) dumpster space adjacent to the Premises either at their current location or at another location acceptable to Tenant in its sole discretion.

(vi)    in the event either Landlord or Boyle Heights Land Holdings LLC either fails to perform its obligations under this Agreement, including without limitation, this Section 26, in a timely manner, or fails to

84112177/V-22

perform its obligations pursuant to Section 2, above on or before January 1, 2017 or such other date required pursuant to Section 2, among other remedies available at law or in equity, Tenant may on five (5) business days' written notice to Landlord or sooner in the case of emergency elect to engage in self-help to cure said failure to perform,  in which case Landlord and Boyle Heights Land Holdings LLC shall promptly reimburse Tenant within thirty (30) days of Tenant's invoice for the same, with Tenant to have a set-off against Landlord from amounts due from Tenant under the Lease, provided that in the event the interests of Landlord in the Building Parcel are subject to a trust or mortgage of record, Tenant shall in addition use good faith efforts to provide such first mortgagee with the aforesaid required notice to Landlord of Landlord's default as determined by the address last provided by said first mortgagee in its last filing of record with the relevant county recorder or recorder of deeds in order to provide such first mortgagee or trustee with the opportunity to cure within the aforesaid thirty (30) day period.

> (vii)    Landlord will not alter the "Tenant Control Area" within the surface parking area other than restriping the east lot of the Tenant Control Area and building a 6,000 pad as detailed in Exhibit L without Tenant's prior written consent, which may be withheld in its sole discretion.    Subject to the foregoing, the Demolition and Construction Protocol shall apply to any redesign or construction work pertaining to the surface parking lot.

(5)    Without in any way limiting Sears' rights and remedies hereunder, all expressly reserved herein, the Parties agree that Sears is entitled to injunctive relief and/or specific performance in the event of a breach of the terms herein since the Parties acknowledge that any other remedy may not adequately protect Sears.

The aforesaid Covenants and Easements shall run with the land owned by Landlord legally described on Exhibits A and B and shall remain in effect for the benefit of Tenant and the Premises under the Building Lease until the expiration or earlier termination of the Building Lease.  The aforesaid Covenants and Easements shall run with the Land owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 and shall remain in effect for the benefit of Tenant until the expiration or earlier termination of the Building Lease.  Tenant's right of occupancy under the easement from Boyle Heights Land Holdings LLC respecting Parcel B shall be subject to the condition precedent that Landlord has elected to proceed with the construction of the Rio Vista Garage.  The aforesaid Covenants and Easements shall run with the Land owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 and shall remain in effect for the benefit of Tenant until the expiration or earlier termination of the Building Lease.  The

85

84112177\V-22

aforesaid Covenants and Agreements shall be memorialized as to the real estate owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 in the Memorandum of Covenants and Easement attached hereto as Exhibit M, which shall be signed by Tenant and Boyle Heights Land Holding LLC upon their execution and delivery of this Agreement and shall be recorded by Landlord at Landlord's expense.  Landlord, Boyle Heights Land Holdings LLC and East River Group represent and warrant to Tenant that no mortgagee, trustee or other third party consent is necessary for them to grant Tenant the Covenants and Easements set forth above and for the covenants to be binding upon Landlord, Boyle Heights Land Holdings LLC and East River and their respective successors and assigns, except for the consent of East-West Bank and except for the consent of Bank of the West as set forth below.

Landlord and Boyle Heights Land Holdings LLC acknowledge and agree that, among other remedies available to Tenant at law or in equity, without prior resort to any EDR procedures set forth in Section 18(c) of the Building Lease Tenant may specifically enforce the terms of the Covenants and Easements against Landlord and Boyle Heights Land Holdings LLC and their respective real estate interests as well as obtain temporary, preliminary and permanent injunctive relief for violations of the same.  The losing party in any such action shall pay the prevailing party's reasonable attorneys' fees and costs.

86

## EXHIBIT E

## LEGAL DESCRIPTION OF PARCEL B

THOSE PORTIONS OF LOT 1 OF TRACT 8626, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 121, PAGE 96 ET. SEQ., AND LOT 3 IN BLOCK 1 OF TRACT 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99, PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF SAID LOT 1, THENCE SOUTH 23°13' WEST ALONG THE SOUTHERLY LINE THEREOF, 15.91 FEET TO THE SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD, AS DESCRIBED IN DEED TO THE CITY OF LOS ANGELES, RECORDED IN BOOK 6102 PAGE 49 OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY; THENCE NORTH 79°48' WEST ALONG SAID SOUTHERLY LINE, 42 FEET TO THE WESTERLY LINE OF THE LAND DESCRIBED IN DEED TO OLIVER WYLIE AND WIFE, RECORDED IN BOOK 11179, PAGE 140, OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY,

THENCE SOUTH 10°12' WEST ALONG SAID WESTERLY LINE 135.21 FEET TO AN ANGLE POINT THEREIN;

THENCE SOUTH 06°43'09" WEST ALONG SAID WESTERLY LINE AND THE EASTERLY LINE OF OF THE LAND DESCRIBED IN DEED TO LOS ANGELES & SALT LAKE RAILROAD COMPANY RECORDED IN BOOK 10932, PAGE 135 OF OFFICIAL RECORDS OF SAID COUNTY, 116.65 FEET AND THE TRUE POINT OF BEGINNING;

THENCE CONTINUING ALONG SAID WESTERLY LINE SOUTH 06°43'09" WEST 453.78 FEET TO A POINT IN THE WESTERLY LINE OF SAID LOT 3, DISTANT SOUTH 03°07'45" EAST THEREON 38.58 FEET FROM AN ANGLE POINT IN SAID WESTERLY LINE;

THENCE SOUTH 03°07'45" EAST ALONG SAID WESTERLY LINE, 68.75 FEET;

THENCE SOUTH 84°58'45" EAST 219.04 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 3, DISTANT SOUTHERLY THEREON, 35.98 FEET, MEASURED ALONG SAID EASTERLY LINE, FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID EASTERLY LINE CONCAVE TO THE EAST AND HAVING A RADIUS OF 207.70 FEET;

THENCE NORTHERLY ALONG SAID CURVE 35.98 FEET;

THENCE NORTH 04°59'30" EAST ALONG SAID EASTERLY LINE 485.98 FEET;

THENCE NORTH 85°00'30" WEST 210.86 FEET TO THE TRUE POINT OF BEGINNING.

87

84112177/V-22

**EXHIBIT J**

**DEPICTION OF PARCEL A AND B**



88

## EXHIBIT J-1

## LEGAL DESCRIPTION OF PARCEL B

THOSE PORTIONS OF LOT 1 OF TRACT 8626, IN THE CITY OF LOS
ANGELES, AS PER MAP RECORDED IN BOOK 121, PAGE 96 ET. SEQ., AND
LOT 3 IN BLOCK 1 OF TRACT 6783, IN THE CITY OF LOS ANGELES, AS
PER MAP RECORDED IN BOOK 99, PAGE 77 ET SEQ., OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY,
DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF SAID LOT 1, THENCE
SOUTH 23°13' WEST ALONG THE SOUTHERLY LINE THEREOF,
15.91 FEET TO THE SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD, AS
DESCRIBED IN DEED TO THE CITY OF LOS ANGELES, RECORDED IN
BOOK 6102 PAGE 49 OF OFFICIAL RECORDS, RECORDS OF LOS
ANGELES COUNTY; THENCE NORTH 79°48' WEST ALONG SAID
SOUTHERLY LINE, 42 FEET TO THE WESTERLY LINE OF THE LAND
DESCRIBED IN DEED TO OLIVER WYLIE AND WIFE, RECORDED IN BOOK
11179, PAGE 140, OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES
COUNTY,

THENCE SOUTH 10°12' WEST ALONG SAID WESTERLY LINE 135.21 FEET
TO AN ANGLE POINT THEREIN;

THENCE SOUTH 06°43'09" WEST ALONG SAID WESTERLY LINE AND THE
EASTERLY LINE OF OF THE LAND DESCRIBED IN DEED TO LOS ANGELES
& SALT LAKE RAILROAD COMPANY RECORDED IN BOOK 10932, PAGE 135
OF OFFICIAL RECORDS OF SAID COUNTY, 116.65 FEET AND THE TRUE
POINT OF BEGINNING;

THENCE CONTINUING ALONG SAID WESTERLY LINE
SOUTH 06°43'09" WEST 453.78 FEET TO A POINT IN THE WESTERLY LINE
OF SAID LOT 3, DISTANT SOUTH 03°07'45" EAST THEREON 38.58 FEET
FROM AN ANGLE POINT IN SAID WESTERLY LINE;

THENCE SOUTH 03°07'45" EAST ALONG SAID WESTERLY LINE,
68.75 FEET;

THENCE SOUTH 84°58'45" EAST 219.04 FEET TO A POINT IN THE
EASTERLY LINE OF SAID LOT 3, DISTANT SOUTHERLY THEREON,
35.98 FEET, MEASURED ALONG SAID EASTERLY LINE, FROM THE
NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID EASTERLY
LINE CONCAVE TO THE EAST AND HAVING A RADIUS OF 207.70 FEET;

THENCE NORTHERLY ALONG SAID CURVE 35.98 FEET;

THENCE NORTH 04°59'30" EAST ALONG SAID EASTERLY LINE
485.98 FEET;

THENCE NORTH 85°00'30" WEST 210.86 FEET TO THE TRUE POINT OF
BEGINNING.

84112177\V-22

**EXHIBIT J-2**

**LEGAL DESCRIPTION OF PARCEL A**

THOSE PORTIONS OF LOT 1 OF TRACT 8626, IN THE CITY OF LOS
ANGELES, AS PER MAP RECORDED IN BOOK 121, PAGE 96 ET. SEQ., AND
LOT 3 IN BLOCK 1 OF TRACT 6783, IN THE CITY OF LOS ANGELES, AS
PER MAP RECORDED IN BOOK 99, PAGE 77 ET SEQ., OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY,
DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF SAID LOT 1, THENCE
SOUTH 23°13' WEST ALONG THE SOUTHEASTERLY LINE THEREOF,
15.91 FEET TO THE SOUTHERLY LINE OF OLYMPIC BOULEVARD, AS
DESCRIBED IN DEED TO THE CITY OF LOS ANGELES, RECORDED IN
BOOK 6102 PAGE 49 OF OFFICIAL RECORDS, RECORDS OF LOS
ANGELES COUNTY; THENCE NORTH 79°48' WEST ALONG SAID
SOUTHERLY LINE, 42 FEET TO THE WESTERLY LINE OF THE LAND
DESCRIBED IN DEED TO OLIVER WYLIE AND WIFE, RECORDED IN BOOK
11179, PAGE 140, OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES
COUNTY, AND THE TRUE POINT OF BEGINNING;

THENCE SOUTH 10°12' WEST ALONG SAID WESTERLY LINE 135.21 FEET
TO AN ANGLE POINT THEREIN;

THENCE SOUTH 06°43'09" WEST ALONG SAID WESTERLY LINE AND THE
EASTERLY LINE OF OF THE LAND DESCRIBED IN DEED TO LOS ANGELES
& SALT LAKE RAILROAD COMPANY RECORDED IN BOOK 10932, PAGE 135
OF OFFICIAL RECORDS OF SAID COUNTY, 116.65 FEET;

THENCE SOUTH 85°00'30" EAST 210.86 FEET TO THE EASTERLY LINE OF
SAID LOT 3;

THENCE NORTH 04°59'30"E ALONG SAID EASTERLY LINE 233.37 FEET, TO
THE SAID SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD;

THENCE NORTH 79°48' WEST 197.00 FEET ALONG THE SAID
SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD TO THE TRUE POINT
OF BEGINNING.

84112177\V-22

0108

## EXHIBIT K
## MEMORANDUM OF TERMINATION OF
## AMENDED AND RESTATED AUTO (TBA) LEASE

This Memorandum of Termination of Amended and Restated Auto Center TBA Lease (the "Termination") is made as of December 30, 2015 by and between Boyle Heights Land Holdings LLC, a California limited liability company ("Landlord") as successor in interest to 10309 Folsom Blvd., LP, and Sears, Roebuck and Co., a New York corporation ("Tenant").

RECITALS:

A.    Landlord and Tenant are parties to that certain "Amended Restated Auto Center (TBA) Lease" dated as of May 5, 2011 and amended as of January 31, 2015 (the "TBA Lease") for that certain parcel of real estate owned by Landlord located at the southwest corner of the intersection of Olympic Boulevard and Rio Vista street legally described in Exhibit A attached hereto and made part hereof (hereinafter, the "New TBA Premises" or, alternatively, "Parcel A").

B.    The New TBA Premises is a portion of that certain "West Parcel" owned by Landlord located at the southwest corner of Olympic Boulevard and Rio Vista Avenue legally described in Exhibit B, attached hereto and made part hereof (hereinafter, "Parcel B").

C.    WHEREAS, Landlord and Tenant have entered into that certain "Amendment to Amended and Restated Building Lease" dated as of December 30, 2015, by and between the following entities under common membership and control with Landlord -- i.e., Izek and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999, Vegas Group LLC, a Nevada limited liability company, and East River Group LLC, a California limited liability company -- as landlord, and Sears, Roebuck and Company, as tenant respecting the demise of the Sears store legally described in Exhibit C, attached hereto and made part hereof (hereinafter, the "Building Lease"), which Amendment to Amended and Restated Building Lease was signed and executed by Landlord herein, Boyle Heights Land Holdings LLC, for the purpose of binding itself, Parcel B and other real estate owned by Boyle Heights Land Holdings LLC with respect to the terms of Section 26 and Section 27 of the aforesaid Amendment to Amended and Restated Building Lease for reasons which include an agreement to terminate the TBA Lease but only on certain terms and conditions set forth therein.

NOW THEREFORE, for good and valuable information, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    **RECITALS.** The recitals set forth above are hereby incorporated into and made a material part of this Amendment. Capitalized terms used by not otherwise defined herein shall have the same meaning ascribed to them in the Lease.

2.    **RATIFICATION AND INCORPORATION.** Landlord hereby ratifies its agreements with Sears, Roebuck and Company made by Landlord's execution and entry into the aforesaid Building Lease with respect to Landlord's stated obligations under Section 26 and to the "Covenants and Easements" set forth therein, it being the intention of Landlord and Tenant that

91

84112177/V-22

0109

said Covenants and Agreements bind and run with the Land owned by Landlord known as Parcel B and legally described in Parcel B.

3.    **LEASE TERMINATION.**

a.)    Termination of Lease. By means of this Termination, pursuant to the terms of the Amendment, Landlord and Tenant terminate and surrender, effective as of 11:59 a.m., Central Time, on the date first above written ("Effective Termination Date"), all of their respective obligations, liabilities, rights, title and interest in, to and under the TBA Lease, upon all of the terms and conditions herein set forth. It is mutually understood and agreed between Landlord and Tenant that the Lease is rescinded, terminated, cancelled and of no further force and effect as of the Effective Termination Date. Tenant will surrender possession of Parcel A by the aforesaid time on the Effective Termination Date in its "as is" condition, except as otherwise provided in this Amendment.

b.)    Real Estate Taxes; Utilities; Prorations. It is expressly understood that Tenant shall pay and will be responsible for timely payment of utility charges and Real Estate Taxes under the Lease, if any, relating to Parcel A which accrue prior to the Effective Termination Date. At the request of either party, Landlord and Tenant shall promptly re-prorate, based upon the parties' respective obligations hereunder, measured as of the Effective Termination Date, Real Estate Taxes and utility charges, if any. Subject to the foregoing, Landlord will be responsible for prompt payment of all Real Estate Taxes which are billed after the Effective Termination Date.

4.    **NOTICE UPDATE.** For the purposes of Section 19 of the Lease, hereinafter notices shall be addressed to Landlord as follows:

Boyle Heights Land Holdings LLC
c/o Izek Shomof
206 W. 6th Street, Suite 100
Los Angeles, CA 90014

5.    **RELEASES.**

(a)    General Release. As part of the consideration for the terms herein, Landlord and Tenant hereby fully release and forever discharge each other and their predecessors, successors, assigns, subsidiaries, parents, affiliates, partners, shareholders, officers, directors and employees, attorneys, representatives or agents, (the "Released Parties") from any and all rights, suits, claims, actions, accounts, demands, contracts, debts, controversies, agreements, promises, liabilities, duties, obligations, costs, expenses, damages and causes of action, whether presently known or unknown, vested or contingent, suspected or unsuspected, accrued or yet to accrue, in law or in equity, and which they may now have, own or claim to have among or between them, arising out of or related to the TBA Lease through the date of execution of this Termination, provided, however, that nothing herein shall waive or release any claims arising from or related to this Termination hat may accrue after the date of execution of this Agreement (hereinafter, "Released Claims").

92

84112177/V-22

0110

(b)    Waiver of Unknown Rights.  The Landlord and Tenant recognize and execute this Termination knowing they may discover in the future circumstances and facts that relate to the subject of this Termination and that, if known, might have affected their willingness to enter into this Termination, including the releases included herein.  Despite this, Landlord and Tenant agree this Termination applies to release the claims as specified herein and specifically waive the provisions of California Civil Code section 1542, which provides that

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

This Termination is intended additionally to waive any rights substantially similar in effect to California Civil Code section 1542.

6.    **BROKERAGE**.  Neither Landlord nor Tenant has dealt with any broker or agent in connection with the negotiation or execution of this Amendment.  Tenant and Landlord shall each indemnify the other against all costs, expenses, attorneys' fees, and other liability for commissions or other compensation claimed by any other broker or agent claiming the same by, through, or under the indemnifying party.

7.    **ENTIRE AGREEMENT**.  This Amendment sets forth the entire agreement with respect to the matters set forth herein.   There have been no additional oral or written representations or agreements.  In the case of any inconsistency between the provisions of this Amendment and the Lease, the provisions of this Amendment shall control to the extent necessary to resolve any inconsistency.  This Amendment shall run with the land and be binding upon and inure to the benefits of the parties and their respective successors and assigns.

8.    **BINDING SIGNATURES**.  This Amendment shall not be binding until executed and delivered by both parties.  The parties' signatures represent and warrant to other party that they have the power and authority to sign this Amendment and bind the entities for whom they are acting.

9.    **COUNTERPARTS**.  This Amendment may be executed in any number of counterparts, any one of which shall be an original, but all of which together shall be one and the same instrument. This Agreement may be executed by the parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Furthermore, the parties agree that: (i) this Agreement may be transmitted between them by telecopier or email; (ii) this Agreement may be executed by telecopier or e-mail signature but upon request by either party, original signatures shall be subsequently delivered after e-mail signatures have been circulated; (iii) telecopier and e-mail signatures shall have the effect of original signatures, and (iv) that a faxed or e-mailed Agreement containing the signatures of (original, faxed or e-mailed) of all parties hereto shall be binding on a party when the signature page of such party is transmitted to the other party.

10.    **TIME**.  Time is of the essence with respect to the performance of all obligations arising hereunder; provided, however, if the last day for the giving of any notice or the performance of any obligation shall be a Saturday, Sunday or banking holiday (a "banking holiday"

93

being defined as any day commercial banks in general do not open for business) the time for the giving of such notice or the performance of such obligation shall be extended until midnight of the next full day which is not a banking holiday and which is not a Saturday or Sunday.

11.    **ENFORCEMENT**.   If either party to this Agreement shall fail to fulfill its obligations as set forth herein, the other party hereto may commence a proceeding at law or in equity to enforce this Agreement, and in such event, the successful party in such action shall have the right to recover from the unsuccessful party in such action all of the successful party's costs and expenses of litigation, including, without limitation, reasonable attorneys' fees.

**DATED** as of the date first above written.

LANDLORD:

**BOYLE HEIGHTS LAND HOLDINGS LLC**

By:     _____

Name:   _____

Title:  _____


TENANT:

**SEARS, ROEBUCK AND CO.,**
a New York Corporation

By:     _____

Name:   _____

Title:  _____

94

84112177\V-22

## EXHIBIT A

## LEGAL DESCRIPTION OF THE NEW TBA PREMISES
## ALSO KNOWN AS "PARCEL A"

THOSE PORTIONS OF LOT 1 OF TRACT 8626, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 121, PAGE 96 ET. SEQ., AND LOT 3 IN BLOCK 1 OF TRACT 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99, PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF SAID LOT 1, THENCE SOUTH 23°13' WEST ALONG THE SOUTHEASTERLY LINE THEREOF, 15.91 FEET TO THE SOUTHERLY LINE OF OLYMPIC BOULEVARD, AS DESCRIBED IN DEED TO THE CITY OF LOS ANGELES, RECORDED IN BOOK 6102 PAGE 49 OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY; THENCE NORTH 79°48' WEST ALONG SAID SOUTHERLY LINE, 42 FEET TO THE WESTERLY LINE OF THE LAND DESCRIBED IN DEED TO OLIVER WYLIE AND WIFE, RECORDED IN BOOK 11179, PAGE 140, OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY, AND THE TRUE POINT OF BEGINNING;

THENCE SOUTH 10°12' WEST ALONG SAID WESTERLY LINE 135.21 FEET TO AN ANGLE POINT THEREIN;

THENCE SOUTH 06°43'09" WEST ALONG SAID WESTERLY LINE AND THE EASTERLY LINE OF OF THE LAND DESCRIBED IN DEED TO LOS ANGELES & SALT LAKE RAILROAD COMPANY RECORDED IN BOOK 10932, PAGE 135 OF OFFICIAL RECORDS OF SAID COUNTY, 116.65 FEET;

THENCE SOUTH 85°00'30" EAST 210.86 FEET TO THE EASTERLY LINE OF SAID LOT 3;

THENCE NORTH 04°59'30"E ALONG SAID EASTERLY LINE  233.37 FEET, TO THE SAID SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD;

THENCE NORTH 79°48' WEST 197.00 FEET ALONG THE SAID SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD TO THE TRUE POINT OF BEGINNING.

95

0113

## EXHIBIT B

## LEGAL DESCRIPTION OF THE BALANCE OF THE WEST PARCEL ALSO KNOWN AS "PARCEL B"

THOSE PORTIONS OF LOT 1 OF TRACT 8626, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 121, PAGE 96 ET. SEQ., AND LOT 3 IN BLOCK 1 OF TRACT 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99, PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF SAID LOT 1, THENCE SOUTH 23°13' WEST ALONG THE SOUTHERLY LINE THEREOF, 15.91 FEET TO THE SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD, AS DESCRIBED IN DEED TO THE CITY OF LOS ANGELES, RECORDED IN BOOK 6102 PAGE 49 OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY; THENCE NORTH 79°48' WEST ALONG SAID SOUTHERLY LINE, 42 FEET TO THE WESTERLY LINE OF THE LAND DESCRIBED IN DEED TO OLIVER WYLIE AND WIFE, RECORDED IN BOOK 11179, PAGE 140, OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY,

THENCE SOUTH 10°12' WEST ALONG SAID WESTERLY LINE 135.21 FEET TO AN ANGLE POINT THEREIN;

THENCE SOUTH 06°43'09" WEST ALONG SAID WESTERLY LINE AND THE EASTERLY LINE OF OF THE LAND DESCRIBED IN DEED TO LOS ANGELES & SALT LAKE RAILROAD COMPANY RECORDED IN BOOK 10932, PAGE 135 OF OFFICIAL RECORDS OF SAID COUNTY, 116.65 FEET AND THE TRUE POINT OF BEGINNING;

THENCE CONTINUING ALONG SAID WESTERLY LINE SOUTH 06°43'09" WEST 453.78 FEET TO A POINT IN THE WESTERLY LINE OF SAID LOT 3, DISTANT SOUTH 03°07'45" EAST THEREON 38.58 FEET FROM AN ANGLE POINT IN SAID WESTERLY LINE;

THENCE SOUTH 03°07'45" EAST ALONG SAID WESTERLY LINE, 68.75 FEET;

THENCE SOUTH 84°58'45" EAST 219.04 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 3, DISTANT SOUTHERLY THEREON, 35.98 FEET, MEASURED ALONG SAID EASTERLY LINE, FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID EASTERLY LINE CONCAVE TO THE EAST AND HAVING A RADIUS OF 207.70 FEET;

THENCE NORTHERLY ALONG SAID CURVE 35.98 FEET;

THENCE NORTH 04°59'30" EAST ALONG SAID EASTERLY LINE 485.98 FEET;

THENCE NORTH 85°00'30" WEST 210.86 FEET TO THE TRUE POINT OF BEGINNING.

96

EXHIBIT L

DEPICTION OF SURFACE PARKING AND SOTO STREET GARAGE LOCATION

| PARKING COUNTS | |
|---|---|
| CURRENT PREMISES | 613 |
| PROPOSED SHARED SOTO GARAGE + SURFACE PARKING | 2,025 |
| PROPOSED SEARS EXCLUSIVE (SHADED BLUE) | 270 |
| PROPOSED SEARS SHARED SURFACE PARKING (RIO VISTA) | 27 |
| PROPOSED RETAIL PAD EXCLUSIVE | 12 |
| TOTAL PROPOSED PARKING | 2334 |

PLAN @ GROUND FLOOR

97

0115

841121778-22



**PARKING COUNTS**

| | |
|---|---|
| CURRENT PREMISES | 613 |
| TENANT CONTROL AREA (CURRENT) | 488 |

PLAN @ TYPICAL FLOOR

PROGRAM TO BE DETERMINED

RIO VISTA AVENUE

RIO VISTA AVENUE

OLYMPIC BOULEVARD

5,000 S.F. RETAIL

SOTO STREET

SOTO STREET

NORTH

98

TUCKER ARCHITECTURE
834 S. Los Angeles St. #902
L.A. CA 90014
213.572.3122

project: SEARS LANDMARK

drawing: SOTO GARAGE

date:
scale:

solution: 3.1

0116

## EXHIBIT M

## MEMORANDUM OF COVENANTS AND AGREEMENTS

Recording Requested by and
When recorded, return to:

Steven A. Velkei, Esq.
Dentons US LLP
601 S. Figueroa
Suite 2500
Los Angeles, CA 90017

(Space Above for
Recorders Use Only)

State of Illinois
County of Cook

### MEMORANDUM OF COVENANTS AND EASEMENTS

THIS MEMORANDUM OF COVENANTS AND EASEMENTS ("Memorandum") is made and entered into as of December 30, 2015, by and between BOYLE HEIGHTS LAND HOLDINGS, LLC, a California limited liability company ("Owner"), and SEARS, ROEBUCK AND CO., a New York corporation ("Sears").

### WITNESSETH:

A.     Owner owns the fee interest in "Parcel B" as legally described in Exhibit 1, attached hereto and made part hereof.

B.     The Izek and Aline Shomof Irrevocable Children's Trust dated February 11, 1999, Vegas Group, LLC, a Nevada limited liability company, and East River Group LLC, a California limited liability company (collectively, "Landlord"), which is under common membership ownership and control with Owner, and Sears have entered into that certain "Amendment to Amended and Restated Building Lease" dated as of December 30, 2015 (the "Building Lease") which, among other matters, grant and among certain "Covenants and Easements", as defined in

99

84112177\V-22

0117

the Building Lease regarding the Landlord's proposed redevelopment of both the Premises described in the Building Lease as well as Parcel B, which as indicated above is owned by Owner.

C.    Owner has joined in the execution and delivery of the latest Amendment to Amended and Restated Building Lease for the purpose of binding Owner and Parcel B to the Covenants and Easements and granting the Covenants and Easements which are perpetual and run with the land as to Parcel B, subject to the terms of Section 3, below.

NOW THEREFORE, for good and valuable information, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant have agreed to memorialize certain features of the Amendment to Amended and Restated Building Lease by means of this Amended Restated Memorandum.

1.)    The terms and provisions of the Recitals above are incorporated herein.

The addresses of the parties to this Memorandum are as follows:

(a)    Owner -    Boyle Heights Land Holdings LLC
c/o Izek Shomof
206 W. 6th Street, Suite 100
Los Angeles, CA 94001

(b)    Tenant -    Sears, Roebuck and Co.
3333 Beverly Road
Hoffman Estates, Illinois 60179

2.)    By means of the Amendment to Amended and Restated Building Lease joined by Owner as indicated above in Recital "D" and this Memorandum, among other matters the Owner grants certain perpetual "Covenants and Easements" attached hereto in Exhibit 2 and made part hereof which run with the land as to Parcel B.

3.)    Sears right of occupancy under the Covenants and Easements from Owner respecting Parcel B shall be subject to the condition precedent that Owner has elected to proceed with the construction of the Rio Vista Garage.

4.)    Unless expressly waived or released in the Amendment to Amended and Restated Building Lease or in a separate writing signed by the waiving party, no provision of either the Amendment or this Memorandum shall be deemed to be a waiver by either party of any rights or claims against the other either arising out of the Amendment, or out of any other agreement or circumstances.

84112177/V-22

100

0118

5.)     A purpose of this Memorandum is to give notice.  The terms and provisions of the Amendment to Amended and Restated Building Lease, including without limitation definitions, are hereby incorporated by reference as if fully set forth herein.  Neither the Amendment to Amended and Restated Building Lease nor this Memorandum shall give any enforcement or other rights or benefits to any third party, other than the rights of successors and assigns to Owner's and Sears respective rights under the Amendment to Amended and Restated Building Lease.

6.)     This Memorandum is not a complete summary of the Amendment to Amended and Restated Building Lease, nor shall any provisions of this Memorandum be used in interpreting the provisions of the Amendment to Amended and Restated Building Lease.  In the event of any conflict between this Memorandum and the Amendment to Amended and Restated Building Lease, the Amendment to Amended and Restated Building Lease shall control.

7.)     This Memorandum is being executed and delivered for recording in the Office of the Clerk of Los Angeles County, California.

8.)     This Memorandum may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement.  This Agreement may be executed by the parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Furthermore, the parties agree that: (i) this Agreement may be transmitted between them by telecopier or email; (ii) this Agreement may be executed by telecopier or e-mail signature but upon request by either party, original signatures shall be subsequently delivered after e-mail signatures have been circulated; (iii) telecopier and e-mail signatures shall have the effect of original signatures, and (iv) that a faxed or e-mailed Agreement containing the signatures of (original, faxed or e-mailed) of all parties hereto shall be binding on a party when the signature page of such party is transmitted to the other party.

*[The remainder of this page intentionally blank]*

101

84112177/V-22

0119

IN WITNESS WHEREOF, this Memorandum of Amendment to Amended and Restated Lease has been duly executed and delivered as of the day and year first above written.

OWNER:

BOYLE HEIGHTS LAND HOLDINGS, LLC,
a California limited liability company


By: _____
Its: _____


By: _____
Its: _____


SEARS:

SEARS, ROEBUCK AND CO.,
a New York corporation


By: _____
Its: _____

102

84112177\V-22

0120

STATE OF _____ )
                                 ) ss.
COUNTY OF _____ )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

                              _____
                              Notary Public

103

84112177\V-22

0121

STATE OF _____ )
                                                          ) ss.
COUNTY OF _____ )

On _____, 2015, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

84112177\V-22

## EXHIBIT 1

## LEGAL DESCRIPTION OF PARCEL B

THOSE PORTIONS OF LOT 1 OF TRACT 8626, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 121, PAGE 96 ET. SEQ., AND LOT 3 IN BLOCK 1 OF TRACT 6783, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 99, PAGE 77 ET SEQ., OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF SAID LOT 1, THENCE SOUTH 23°13' WEST ALONG THE SOUTHERLY LINE THEREOF, 15.91 FEET TO THE SOUTHEASTERLY LINE OF OLYMPIC BOULEVARD, AS DESCRIBED IN DEED TO THE CITY OF LOS ANGELES, RECORDED IN BOOK 6102 PAGE 49 OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY; THENCE NORTH 79°48' WEST ALONG SAID SOUTHERLY LINE, 42 FEET TO THE WESTERLY LINE OF THE LAND DESCRIBED IN DEED TO OLIVER WYLIE AND WIFE, RECORDED IN BOOK 11179, PAGE 140, OF OFFICIAL RECORDS, RECORDS OF LOS ANGELES COUNTY,

THENCE SOUTH 10°12' WEST ALONG SAID WESTERLY LINE 135.21 FEET TO AN ANGLE POINT THEREIN;

THENCE SOUTH 06°43'09" WEST ALONG SAID WESTERLY LINE AND THE EASTERLY LINE OF OF THE LAND DESCRIBED IN DEED TO LOS ANGELES & SALT LAKE RAILROAD COMPANY RECORDED IN BOOK 10932, PAGE 135 OF OFFICIAL RECORDS OF SAID COUNTY, 116.65 FEET AND THE TRUE POINT OF BEGINNING;

THENCE CONTINUING ALONG SAID WESTERLY LINE SOUTH 06°43'09" WEST 453.78 FEET TO A POINT IN THE WESTERLY LINE OF SAID LOT 3, DISTANT SOUTH 03°07'45" EAST THEREON 38.58 FEET FROM AN ANGLE POINT IN SAID WESTERLY LINE;

THENCE SOUTH 03°07'45" EAST ALONG SAID WESTERLY LINE, 68.75 FEET;

THENCE SOUTH 84°58'45" EAST 219.04 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 3, DISTANT SOUTHERLY THEREON, 35.98 FEET, MEASURED ALONG SAID EASTERLY LINE, FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID EASTERLY LINE CONCAVE TO THE EAST AND HAVING A RADIUS OF 207.70 FEET;

THENCE NORTHERLY ALONG SAID CURVE 35.98 FEET;

THENCE NORTH 04°59'30" EAST ALONG SAID EASTERLY LINE 485.98 FEET;

THENCE NORTH 85°00'30" WEST 210.86 FEET TO THE TRUE POINT OF BEGINNING.

**EXHIBIT 2**

**COVENANTS AND EASEMENTS**

**26.    REGARDING CITY APPLICATIONS; COVENANTS AND EASEMENTS.**

(a)    Landlord and East River Group LLC, an entity with common membership and control as Landlord ("East River Group") have filed the City Applications described in Recital D of this Amendment and approved by the resulting December 8, 2015 Determination Letter from the Zoning Administrator, which is being appealed by CREED LA.  At present, the City Applications propose to furnish off-street parking to service Landlord's redevelopment of the Building from vacant warehouse space to commercial, retail, office and residential uses in a parking garage structure ("Rio Vista Garage") to be constructed at the location owned by Boyle Heights Land Holdings LLC designated as "Parcel B" on Exhibit J attached hereto and made part hereof, and legally described in Exhibit J-1 attached hereto and made part hereof.  However, subsequent to the City's aforesaid approval of the pending City Applications, Landlord, Boyle Heights Land Holdings LLC and East River Group are considering filing additional applications to replace the Rio Vista Garage with a parking garage structure and parking plan depicted on Exhibit L attached hereto and made part hereof ("Soto Garage"), which is hereby included in the defined "City Applications".

(b)    Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease are the grantees of the following covenants and easements from Landlord, East River Group and Boyle Heights Land Holdings LLC in the form of the following "Covenants and Easements" set forth below:

(1)    Landlord covenants and agrees with Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease that the Rio Vista Garage or Soto Garage shall be completed and opened pursuant to certificates of occupancy issued by the City before the occupancy of converted and redeveloped commercial, retail, office and residential uses in the Building or on the Building Parcel (except for the Premises, the Building's second floor if used solely for office use, the annex building and the 6,000 square foot retail pad at the corner of Soto and Olympic).

(2)    Subject to the terms of Section 26(b)(3), below, Landlord further covenants and agrees with Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease that should Landlord pursue a redevelopment option other than the one presented in Exhibit L, that no portion of the Building except for the Premises, the Building's first floor if used solely for warehousing, second floor if used solely for office use, the annex building and the 6,000 retail pad at the corner of Soto and Olympic and no other portion of the Building Parcel

84112177/V-22

will be used and occupied without a subsequent agreement with Tenant acceptable to Tenant in its sole discretion unless Landlord provides first at its expense either the Rio Vista Garage or Soto Garage.

(3)    Landlord, East River Group (in its sole capacity as the zoning applicant) and Boyle Heights Land Holdings LLC each covenant and grant to Tenant, its successors and assigns for the benefit of Tenant under the Building Lease and for the benefit of the Premises under the Building Lease and to the Tenant's, customers, invitees and permittees of the aforesaid:

(A)    the non-exclusive easement to park motor vehicles within the portion of the Rio Vista Garage and the Soto Garage designated for non-residential tenants, customers, invitees, permittees, successors and assigns, which designated area available for such non-exclusive use as to Tenant as aforesaid shall consist of at least 600 parking spaces;

(B)    that either the Rio Vista Garage or the Soto Garage, wherever located, shall have a minimum of 1,500 off-street parking spaces, with the calculation of the aforesaid off-street parking spaces to exclude the not less than 250 surface parking spaces which will, in addition, be provided Tenant on an exclusive basis as Tenant's ("Tenant's Control Area") by Landlord and/or Boyle Heights Land Holdings LLC at the location indicated in Exhibit L;

(4)    Landlord, as owner of the Building Parcel and the Entire Tract, further grants Tenant, its sublessees, customers, invitees, permittees, successors and assigns the exclusive right and easement for Tenant and its sublessees, its customers, invitees and permittees to park motor vehicles within the revised "Tenant Control Area" depicted on Exhibit L, attached here and made part hereof, with all rights to treat, use and occupy such revised Tenant Control Area as its own exclusive parking area and to use such area in its sole and absolute discretion, and Landlord:

(i)    shall promptly but in any event on or before the earlier of either December 31, 2017, or the date Landlord opens any part of the Building or the Building Parcel for business pursuant to occupancy permits (except for the Premises, the Building second floor if solely for office use, the annex building and the 6000 square foot retail pad at the corner of Soto and Olympic) construct a tasteful but effective fence and parking ticket validation gate and related facilities and directional and explanatory signs (the "Tenant Control Area Fence and Parking Validation System") which implements the aforesaid exclusive segregated parking for Tenant and its sublessees, its customers, permittees and invitees within the

107

84112177/V-22

revised Tenant Control Area shown on Exhibit L at no cost to the Tenants, with the design, function of and operational characteristics of the Tenant Control Area Fence and Parking Validation System to be approved by Tenant by means of review and approval procedures in the Demolition and Construction Protocol attached hereto as Exhibit C and made part hereof;

(ii)    thereafter Landlord shall operate, maintain, repair and replace the aforesaid Tenant Control Area Fence and Parking Validation system, including related accessories thereto and related utilities with Tenant to pay Tenant's Share of the reasonable cost thereof (as Tenant's Share is defined in Section 1(z) of the Building Lease) as invoiced separately by Landlord on a monthly basis;

(iii)    subject to the terms of Section 26(b)(3)(B)(i), above, notwithstanding the implementation of the foregoing exclusive Tenant parking within the Tenant Control Area described as Exhibit L, and the foregoing non-exclusive parking elsewhere, Landlord shall continue to perform maintenance, repair, replacement and restriping of the Tenant Control Area and of the non-exclusive parking areas in the surface parking lot at Landlord's expense except for permitted Tenant's CAM Contributions; provided no reconfiguration of the Tenant Control Area Fence and Parking Validation System or reconfiguration of the means of access to the Tenant Control Area shall be made without Tenant's prior written consent pursuant to the Tenant review and approval procedures in the Demolition and Construction Protocol attached hereto as Exhibit C, provided that Tenant's consent to such a reconfiguration may be given or withheld by Tenant in Tenant's sole and absolute discretion;

(iv)    Landlord shall at its sole expense take such further commercially reasonable steps as necessary to prevent owners, tenants, sublessees, customers, permittees and invitees other than Tenant, its successors and assigns and Tenant's customers, invitees and permittees from parking in the Tenant Control Area;

(v)    Landlord will provide Tenant the exclusive use of two (2) loading docks and one (1) dumpster space adjacent to the Premises either at their current location or at another location acceptable to Tenant in its sole discretion.

(vi)    in the event either Landlord or Boyle Heights Land Holding s LLC either fails to perform its obligations under this Agreement,

108

84112177\V-22

0126

including without limitation, this Section 26, in a timely manner, or fails to perform its obligations pursuant to Section 2, above on or before April 1, 2017 or such other date required pursuant to Section 2, among other remedies available at law or in equity, Tenant may on five (5) business days' written notice to Landlord or sooner in the case of emergency elect to engage in self-help to cure said failure to perform, in which case Landlord and Boyle Heights Land Holdings LLC shall promptly reimburse Tenant within thirty (30) days of Tenant's invoice for the same, with Tenant to have a set-off against Landlord from amounts due from Tenant under the Lease, provided that in the event the interests of Landlord in the Building Parcel are subject to a trust or mortgage of record, Tenant shall in addition use good faith efforts to provide such first mortgagee with the aforesaid required notice to Landlord of Landlord's default as determined by the address last provided by said first mortgagee in its last filing of record with the relevant county recorder or recorder of deeds in order to provide such first mortgagee or trustee with the opportunity to cure within the aforesaid thirty (30) day period.

(vii)    Landlord will not alter the "Tenant Control Area" within the surface parking area other than restriping the east lot of the Tenant Control Area and building a 6,000 pad as detailed in Exhibit L without Tenant's prior written consent, which may be withheld in its sole discretion. Subject to the foregoing, the Demolition and Construction Protocol shall apply to any redesign or construction work pertaining to the surface parking lot.

(5)    Without in any way limiting Sears' rights and remedies hereunder, all expressly reserved herein, the Parties agree that Sears is entitled to injunctive relief and/or specific performance in the event of a breach of the terms herein since the Parties acknowledge that any other remedy may not adequately protect Sears.

The aforesaid Covenants and Easements shall run with the land owned by Landlord legally described on Exhibits A and B and shall remain in effect for the benefit of Tenant and the Premises under the Building Lease until the expiration or earlier termination of the Building Lease. The aforesaid Covenants and Easements shall run with the Land owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 and shall remain in effect for the benefit of Tenant until the expiration or earlier termination of the Building Lease. Tenant's right of occupancy under the easement from Boyle Heights Land Holdings LLC respecting Parcel B shall be subject to the condition precedent that Landlord has elected to proceed with the construction of the Rio Vista Garage. The aforesaid Covenants and Agreements shall be memorialized as to the real estate owned by Boyle Heights Land Holdings LLC as legally described in Exhibit J-1 in the

109

Memorandum of Covenants and Easement attached hereto as Exhibit M, which shall be signed by Tenant and Boyle Heights Land Holding LLC upon their execution and delivery of this Agreement and shall be recorded by Landlord at Landlord's expense.  Landlord, Boyle Heights Land Holdings LLC and East River Group represent and warrant to Tenant that no mortgagee, trustee or other third party consent is necessary for them to grant Tenant the Covenants and Easements set forth above and for the covenants to be binding upon Landlord, Boyle Heights Land Holdings LLC and East River and their respective successors and assigns, except for the consent of East-West Bank and except for the consent of Bank of the West as set forth below.

Landlord and Boyle Heights Land Holdings LLC acknowledge and agree that, among other remedies available to Tenant at law or in equity, without prior resort to any EDR procedures set forth in Section 18(c) of the Building Lease Tenant may specifically enforce the terms of the Covenants and Easements against Landlord and Boyle Heights Land Holdings LLC and their respective real estate interests as well as obtain temporary, preliminary and permanent injunctive relief for violations of the same.  The losing party in any such action shall pay the prevailing party's reasonable attorneys' fees and costs.

110

84112177/V-22

# EXHIBIT D

**East River Group LLC**

206 W 6th Street, Suite #100
Los Angeles, CA 90014

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/23/2019 | 01-001PR |

| Bill To |
|---------|
| SEARS Holdings
Accounting Service Center
2301 West Plano Parkway Ste # 201
Plano, Texas 75075 |

| Quantity | Description | | Rate | | Amount |
|----------|-------------|---|------|---|--------|
| | Sears Property Reimbursement: | | | | |
| | Server Room: | | | | |
| | Equipment | $ 205,266.18  * | | | |
| | IT Room Construction | 69,850.00 | $  275,116.18 | | |
| | HVAC | | 2,600.00 | | |
| | Sears Façade-Glass | | 12,000.00 | | |
| | Consultants: | | | | |
| | Historic Preservation | $   22,171.00 | | | |
| | Structural | 10,762.62 | 32,933.62 | $ | 322,649.80 |
| | | | | | |
| | * NOTE: Assuming Sears did not pay the equipment. | | | | |
| | | | | | |
| | PLEASE MAKE CHECK PAYABLE AND SEND TO: | | | | |
| | East River Group LLC
206 W 6th Street, Suite #100
Los Angeles, CA 90014 | | | | |
| | | | **Total** | $ | **322,649.80** |

## SERVICE LIST

<u>**VIA EMAIL**</u>

I. Bid Notice Parties
    a. Debtors
        Rob Riecker: rob.riecker@searshc.com
        Luke Valentino: luke.valentino@searshc.com
        Mohsin Meghji: mmeghji@miiipartners.com
        General Counsel: counsel@searshc.com

    b. Debtors' counsel
        Ray Schrock, Esq.: ray.schrock@weil,com
        Jacqueline Marcus, Esq.: jacqueline.marcus@weil.com
        Garrett A. Fail, Esq.: garrett.fail@weil.com
        Sunny Singh, Esq.: sunny.singh@weil.com
        Ellen J. Odoner, Esq.: Ellen.Odoner@weil.com
        Gavin Westerman, Esq.: Gavin.Westerman@weil.com

    c. Debtors' investment banker:
        Brandon Aebersold and Levi Quaintance: project.blue.rx@lazard.com

II. Consultation Parties
    a. Bank of America
        Paul Leake, Esq.: Paul.Leake@skadden.com
        Shana Elberg, Esq.: Shana.Eiberg@skadden.com
        George Howard, Esq.: George.Howard@skadden.com

    b. Wells Fargo Bank
        Kevin J. Simard, Esq.: ksimardachoate.com
        Jonathan D. Marshall, Esq.: jmarshall@choate.com

    c. Committee
        Ira S. Dizengoff, Esq.: idizengoff@akingump.com
        Philip C. Dublin, Esq.: pdublin@akingump.com
        Abid Qureshi, Esq.: aqureshi@akingump.com
        Sara L. Brauner, Esq.: sbrauner@akingump.com

III. Buyer Parties
    a. Buyer
        Kunal S. Kamlani: kunal@eslinvest.com
        Harold Talisman: harold@eslinvest.com

    b. Counsel
        Christopher E. Austin, Esq.: caustin@cgsh.com
        Benet J. O'Reilly, Esq.: boreilly@cgsh.com
        Sean A. O'Neal, Esq.: soneal@cgsh.com

**VIA FIRST CLASS MAIL**

Transform Holdco, LLC
c/o ESL Partners, Inc.
Attention: Kunal S. Kamlani and Harold Talisman
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154

Sears Holdings Corporation
Attn: General Counsel
3333 Beverly Road
Hoffman Estates, IL 60179

Weil, Gotshal & Manges LLP
Attention: Ray C. Schrock, P.C.,
Ellen J. Odoner, Gavin Westerman and Sunny Singh
767 Fifth Avenue
New York, New York 10153

Cleary Gottlieb Steen & Hamilton LLP
Attention: Christopher E. Austin,
Benet J. O'Reilly and Sean A. O'Neal
One Liberty Plaza
New York, NY 10006

**VIA FEDEX PRIORITY OVERNIGHT**

Judge Robert D. Drain
U.S. Bankruptcy Court
for the Southern District of New York
300 Quarropas Street
White Plains, New York 10601