EXHIBIT 1

Lawyers Title

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

John D. Gaber, Esq.
**Real Estate Legal Department**
**Kmart Corporation**
3100 West Big Beaver Road
Troy, Michigan  48084

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   | 7    |      |     |      |       |     |       |
|   |   |   |      |      |     |      |       |     |       |
| A | R | L |      |      | COPY | LONG | REFUND | NCHG | EXAM |

Space Above this Line for Recorder's Use Only

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE ("Memorandum") is entered into as of
AUGUST 31 , 2001, between K.C. SCHAAF AND SANDRA L. MITCHELL, AS CO-TRUSTEES OF THE J.W. MITCHELL, JR. AND SANDRA L. MITCHELL FAMILY TRUST DATED APRIL 29, 1982 as amended, dba J.W. MITCHELL INVESTMENT ("Lessor"), and KMART CORPORATION, a Michigan corporation ("Lessee").  All capitalized terms used and not otherwise defined in this Memorandum, but defined in the Lease (as defined below), shall have the same meaning in this Memorandum as in the Lease.

1.    <u>Premises</u>.  For sufficient consideration received, and the terms and conditions more particularly set forth in that certain J.W. Mitchell Investment Standard Industrial/Commercial Single-Tenant Lease – Net, dated SEPTEMBER 1 , 2001, Lessor leases to Lessee and Lessee leases from Lessor, that certain real property described on <u>Exhibit A</u> attached hereto and incorporated herein, as more particularly described in the Lease, and commonly known by the street address of 3100 Milliken Avenue, Mira Loma, County of Riverside, State of California ("Premises"), and all improvements therein, including, but not limited to, a 759,260 square foot concrete tilt-up building and related site improvements.

2.    <u>Term</u>.  The term of the Lease is fifteen (15) years commencing on the date hereof, with two five (5) year option periods.

3.    <u>Incorporation and Conflicts</u>.  All of the terms and conditions of the Lease are incorporated herein by reference as though set forth fully herein.  In the event of any conflict between the terms hereof and of the Lease, the Lease shall prevail.

[signatures on following page]

IN WITNESS WHEREOF, the Memorandum is executed as of the date first above written.

LESSOR:
K.C. Schaaf and Sandra L. Mitchell, as Co-
Trustees of the J.W. Mitchell Family Trust
dated April 29, 1982, as amended, dba J.W.
Mitchell Investment

K.C. Schaaf, Co-Trustee by Nick Mitchell
as Attorney-in-Fact

Sandra L. Mitchell, Co-Trustee by Nick
Mitchell as Attorney-in-Fact

K.C. Schaaf, Co-Trustee by Tim Mitchell as
Attorney-in-Fact

Sandra L. Mitchell, Co-Trustee by Tim
Mitchell as Attorney-in-Fact

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

No. 5907

State of ___CALIFORNIA___

County of ___ORANGE___

On ___DECEMBER 4, 2001___ before me, ___JERILYN L. HALLEY, NOTARY PUBLIC___
DATE                                              NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared ___NICK MITCHELL AND TIM MITCHELL___
NAME(S) OF SIGNER(S)

[XX] personally known to me - OR - ☐ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are
subscribed to the within instrument and ac-
knowledged to me that he/she/they executed
the same in his/her/their authorized
capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s),
or the entity upon behalf of which the
person(s) acted, executed the instrument.

JERILYN L. HALLEY
Commission #1186170
Notary Public - California
Orange County
My Comm. Expires Jun 7, 2002

WITNESS my hand and official seal.

_Jerilyn L Halley_
SIGNATURE OF NOTARY

══════════ **OPTIONAL** ══════════

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)    ☐ LIMITED
               ☐ GENERAL
[XX] ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER:_____
_____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
K. C. SCHAAF AND SANDRA L. MITCHELL
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

MEMORANDUM OF LEASE
TITLE OR TYPE OF DOCUMENT

TWO
NUMBER OF PAGES

AUGUST 31, 2001
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

©1993 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184

IN WITNESS WHEREOF, this Memorandum is executed as of the date first above written.

LESSOR:

K.C. SCHAAF AND SANDRA L. MITCHELL, AS CO-TRUSTEES OF THE J.W. MITCHELL, JR. AND SANDRA L. MITCHELL FAMILY TRUST DATED APRIL 29, 1982, AS AMENDED, DBA J.W. MITCHELL INVESTMENT

By:_____
    Nick Mitchell,
    Attorney-in-fact

By:_____
    Tim Mitchell
    Attorney-in-fact

LESSEE:

KMART CORPORATION, a Michigan corporation

By: _____

Its: _Paul Springthorpe_____
    _Vice President_

**[all signatures must be acknowledged]**

STATE OF MICHIGAN          }
                                        } ss.

COUNTY OF OAKLAND       }

On _September 4, 2001_ , before me _Stacey L. Wisbiski_ , Notary Public, personally
appeared _Paul Springharyer_ personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized capacity, and that by his
signatures on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

Witness my hand and official seal.

(Seal)

_Stacey L. Wisbiski_
Notary Public

STACEY L. WISBISKI
Notary Public, Macomb County, Mich.
Acting in Oakland County, Mich.
My Commission Expires 01-13-2005

4

File No.: 4018291

## EXHIBIT "A"

Parcel 1:

That portion of the West half of the Northwest quarter of Section 6, Township 2 South, Range 6 West, San Bernardino Meridian, in the County of Riverside, State of California, described as follows:

Beginning at the Southwest corner of the West half of the Northwest quarter of said Section 6;

Thence Northerly on the Westerly line of said Section to the Southerly line of Highway conveyed to the County of Riverside, by deed recorded November 7, 1912 in Book 360, Page 48 of Deeds, Records of Riverside County, California;

Thence Easterly, on the Southerly line of said highway to point 250 feet East of the West line of the West half of the Northwest quarter of said Section 6, measured at right angles thereto;

Thence Southerly parallel with the Westerly line of the West half of the Northwest quarter of said Section 6, to a point on the Southerly line thereof;

Thence Westerly on the Southerly line of the West half of the Northwest quarter of said Section 6, 250 feet to the Point of Beginning.

Excepting therefrom the Westerly 60 feet thereof conveyed to the State of California, by deed recorded November 6, 1943 in Book 608, page(s) 17 of Official Records.

Also excepting therefrom the property conveyed to the State of California, by deed recorded February 27, 1945 as Instrument No. 2571 of Official Records.

Said property is also shown on Record of Survey on file in Book 12, Page 57 of Records of Survey, Records of Riverside County, California.

Parcel 2:

That portion of the West half of the Northwest quarter of Section 6, Township 2 South, Range 6 West, San Bernardino Meridian, in the County of Riverside, State of California, as shown by Government Survey, lying South of the Southwesterly line of the land conveyed to the State of California, for highway purposes by deed recorded December 15, 1944 in Book 658, Page 60 of Official Records.

Excepting therefrom that portion of said Northwest quarter lying Westerly of a line which is parallel with and distant Easterly 250.00 feet measured at right angles from the Westerly line of said Section 6.

Said property is also shown on Record of Survey on file in Book 12, Page 57 of Records of Survey, Records of Riverside County, California.

**ORIGINAL**

# STANDARD INDUSTRIAL/COMMERCIAL
# SINGLE-TENANT LEASE-NET

by and between

### J.W. MITCHELL INVESTMENT

"Lessor"

and

### KMART CORPORATION,
a Michigan corporation

"Lessee"

---

**3100 Milliken Avenue**
**Mira Loma, California**

RECEIVED

SEP 1 1 2001

J.W. MITCHELL

# TABLE OF CONTENTS

<u>Page</u>

1. BASIC PROVISIONS. ...................................................................................1
   1.1 Parties ..........................................................................................1
   1.2 Premises .......................................................................................1
   1.3 Term ............................................................................................1
   1.4 Intentionally Omitted. ..................................................................1
   1.5 Base Rent......................................................................................1
   1.6 Base Rent Paid Upon Commencement Date ...................................1
   1.7 Security Deposit ...........................................................................1
   1.8 Permitted Use ...............................................................................1
   1.9 Insuring Party ...............................................................................2
   1.10 Real Estate Broker ........................................................................2
   1.11 Guarantor.....................................................................................2
   1.12 Exhibits........................................................................................2

2. PREMISES. ..............................................................................................2
   2.1 Letting ..........................................................................................2
   2.2 Condition......................................................................................2
   2.3 Compliance with Covenants, Restrictions and Building Code ..........2
   2.4 Acceptance of Premises..................................................................3
   2.5 Acknowledgment ..........................................................................3

3. TERM. .....................................................................................................3
   3.1 Term .............................................................................................3
   3.2 Intentionally Omitted. ...................................................................3
   3.3 Delivery of Possession ...................................................................3

4. RENT. ......................................................................................................3
   4.1 Base Rent ......................................................................................3

5. SECURITY DEPOSIT. ...............................................................................4
   5.1 Letter of Credit ..............................................................................4

6. USE. .........................................................................................................4
   6.1 Use................................................................................................4
   6.2 Hazardous Substances. ..................................................................5
   6.3 Lessee's Compliance with Law ......................................................6
   6.4 Inspection Compliance ..................................................................7

7. MAINTENANCE; REPAIRS; UTILITY INSTALLATIONS; TRADE FIXTURES AND
   ALTERATIONS. ........................................................................................7
   7.1 Lessee's Obligations. .....................................................................7
   7.2 Lessor's Obligations ......................................................................8
   7.3 Utility Installations; Trade Fixtures; Alterations. .............................8
   7.4 Ownership; Removal; Surrender; and Restoration. ..........................10

DOCSOC\844426v3\11533.0135

**TABLE OF CONTENTS**
(continued)

Page

8.  INSURANCE; INDEMNITY................................................................................10
    8.1  Payment For Insurance .....................................................................10
    8.2  Liability Insurance...........................................................................11
    8.3  Property Insurance-Building, Improvements and Rental Value. ................11
    8.4  Lessee's Property Insurance .............................................................12
    8.5  Insurance Policies...........................................................................13
    8.6  Waiver of Subrogation .....................................................................13
    8.7  Indemnity .....................................................................................13
    8.8  Exemption of Lessor from Liability .....................................................14

9.  DAMAGE OR DESTRUCTION..........................................................................14
    9.1  Definitions.....................................................................................14
    9.2  Partial Damage-Insured Loss ............................................................14
    9.3  Partial Damage-Uninsured Loss .........................................................15
    9.4  Intentionally Omitted. ......................................................................15
    9.5  Damage Near End of Term ................................................................16
    9.6  Abatement of Rent; Lessee's Remedies. ...............................................16
    9.7  Intentionally Omitted. ......................................................................16
    9.8  Termination-Advance Payments .........................................................16
    9.9  Waive Statutes ...............................................................................16

10. REAL PROPERTY TAXES.................................................................................16
    10.1  Payment of Taxes ..........................................................................16
    10.2  Advance Payment ..........................................................................17
    10.3  Definition .....................................................................................17
    10.4  Intentionally Omitted. ......................................................................17
    10.5  Personal Property Taxes ..................................................................18

11. UTILITIES....................................................................................................18

12. ASSIGNMENT AND SUBLETTING. ...................................................................18
    12.1  Lessor's Consent Required. ..............................................................18
    12.2  Terms and Conditions Applicable to Assignment and Subletting. ...............18
    12.3  Additional Terms and Conditions Applicable to Subletting .........................20

13. DEFAULT; BREACH; REMEDIES.......................................................................21
    13.1  Default; Breach .............................................................................21
    13.2  Remedies .....................................................................................22
    13.3  Inducement Recapture in Event of Breach ............................................24
    13.4  Late Charges.................................................................................24
    13.5  Breach by Lessor ...........................................................................24

14. CONDEMNATION...........................................................................................25

DOCSOC\844426v3\11533.0135

# TABLE OF CONTENTS
(continued)

Page

15.  BROKER'S FEE. ..........................................................................................................25
     15.1   Broker ...............................................................................................................25
     15.2   Separate Agreement ........................................................................................25
     15.3   Extensions ........................................................................................................25
     15.4   Representations and Warranties .....................................................................26

16.  TENANCY STATEMENT ..........................................................................................26
     16.1   Execution and Delivery ...................................................................................26
     16.2   Financing ..........................................................................................................26

17.  LESSOR'S LIABILITY ...............................................................................................26

18.  SEVERABILITY ..........................................................................................................26

19.  INTEREST ON PAST-DUE OBLIGATIONS ............................................................26

20.  TIME OF ESSENCE ....................................................................................................27

21.  RENT DEFINED ..........................................................................................................27

22.  NO PRIOR OR OTHER AGREEMENTS; BROKER DISCLAIMER ......................27

23.  NOTICES ......................................................................................................................27
     23.1   Delivery ............................................................................................................27
     23.2   Acceptance .......................................................................................................27

24.  WAIVERS .....................................................................................................................27

25.  RECORDING ................................................................................................................28

26.  NO RIGHT TO HOLDOVER ......................................................................................28

27.  CUMULATIVE REMEDIES .......................................................................................28

28.  COVENANTS AND CONDITIONS ............................................................................28

29.  BINDING EFFECT; CHOICE OF LAW .....................................................................28

30.  SUBORDINATION; ATTORNMENT; NON-DISTURBANCE ................................28
     30.1   Subordination ...................................................................................................28
     30.2   Attornment ..:...................................................................................................28
     30.3   Non-Disturbance ..............................................................................................29
     30.4   Intentionally Omitted. .....................................................................................29

31.  ATTORNEYS' FEES ....................................................................................................29

DOCSOC\844426v3\11533.0135

# TABLE OF CONTENTS
(continued)

Page

32.  LESSOR'S ACCESS; SHOWING PREMISES; REPAIR ......................................................29

33.  AUCTION ......................................................................................................................29

34.  SIGNS ..........................................................................................................................29

35.  TERMINATION; MERGER ...........................................................................................30

36.  CONSENTS ...................................................................................................................30
     36.1  Conditions ........................................................................................................30
     36.2  Reasonableness .................................................................................................30

37.  INTENTIONALLY OMITTED. .......................................................................................30

38.  QUIET POSSESSION ....................................................................................................30

39.  OPTION TO EXTEND. ...................................................................................................30
     39.1  Grant of Option ...............................................................................................30
     39.2  Options Personal to Original Lessee ................................................................31
     39.3  Multiple Options ..............................................................................................31
     39.4  Effect of a Default on Option. .........................................................................31
     39.5  Notice of Option ...............................................................................................31
     39.6  Option Rent ......................................................................................................31
     39.7  Lease Provisions Remain in Effect ...................................................................31

40.  MULTIPLE BUILDINGS ...............................................................................................31

41.  SECURITY MEASURES .................................................................................................32

42.  RESERVATIONS ...........................................................................................................32

43.  PERFORMANCE UNDER PROTEST ..............................................................................32

44.  AUTHORITY .................................................................................................................32

45.  CONFLICT ....................................................................................................................32

46.  OFFER ..........................................................................................................................32

47.  AMENDMENTS ............................................................................................................32

48.  MULTIPLE PARTIES ....................................................................................................32

49.  INDEPENDENT CONTRACTORS ..................................................................................33

DOCSOC\844426v3\11533.0135

## TABLE OF CONTENTS
(continued)

Page

50.   LIABILITY OF LESSOR..................................................................................................33

51.   FORCE MAJEURE ........................................................................................................33

52.   GOVERNING LAW........................................................................................................33

53.   LESSOR'S REPRESENTATIONS AND WARRANTIES........................................................33
      53.1    Authority ...........................................................................................................33
      53.2    Good Standing....................................................................................................33
      53.3    Hazardous Substances ........................................................................................34
      53.4    Fee Owner ..........................................................................................................34

54.   LESSEE'S REPRESENTATIONS AND WARRANTIES .......................................................34
      54.1    Authority ...........................................................................................................34
      54.2    Good Standing....................................................................................................34

55.   CONDITIONS PRECEDENT...........................................................................................35
      55.1    Lease Termination Agreement ............................................................................35
      55.2    Prior Lessee's Performance Under the Lease Termination Agreement .................35
      55.3    Lender's Consent ...............................................................................................35

56.   SUBMISSION OF LEASE...............................................................................................35

57.   GRADING....................................................................................................................35


EXHIBIT A - LEGAL DESCRIPTION OF PREMISES
EXHIBIT B - SITE PLAN
EXHIBIT C – BASE BUILDING
EXHIBIT D – GRADING PLANS

DOCSOC\844426v3\11533.0135

**J.W. MITCHELL INVESTMENT**
**STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE-NET**

1.      **BASIC PROVISIONS.**

1.1     **Parties**.   This Lease ("**Lease**"), dated for reference purposes only, September 1, 2001, is made by and between K.C. Schaaf and Sandra L. Mitchell, as co-trustees of the J.W. MITCHELL JR. AND SANDRA L. MITCHELL FAMILY TRUST dated April 29, 1982, as amended, dba J.W. MITCHELL INVESTMENT ("**Lessor**"), and KMART CORPORATION, a Michigan corporation ("**Lessee**") (collectively the "**Parties**," or individually a "**Party**").

1.2     **Premises**.   The Premises shall consist of that certain real property more particularly described on **Exhibit A** attached hereto and as depicted on the site plan attached hereto as **Exhibit B** (the "**Site Plan**"), and commonly known by the street address of 3100 Milliken Avenue, Mira Loma, located in the County of Riverside, State of California (the "**Real Property**"), and all improvements therein or to be provided by Lessor under the terms of this Lease, including, but not limited to, a 759,260 square foot concrete tilt-up building and related site improvements (the "**Building**").

1.3     **Term**.   Fifteen (15) years ("**Original Term**") commencing upon the date that the Conditions Precedent described in Paragraph 55 have been fully satisfied and Lessor has delivered possession of the Premises to Lessee ("**Commencement Date**"), and shall continue until the expiration of fifteen (15) years thereafter ("**Expiration Date**"), unless extended pursuant to the terms and conditions set forth in Paragraph 39 below or sooner terminated as provided in this Lease. If the Expiration Date falls on a day other than the last day of a calendar month, the Expiration Date shall be extended until the last day of such month.  (See Paragraph 3 and Paragraph 39 for further provisions.)

1.4     **Intentionally Omitted**.

1.5     **Base Rent**.   $208,800.00 per month ("**Base Rent**"), payable on the first day of each month commencing on the Commencement Date, with a rent adjustment to $243,000.00 per month commencing as of the sixty-first (61st) month of the Original Term and a rent adjustment to $282,805.00 per month commencing as of the one hundred twenty-first (121st) month of the Original Term.  In the event this Lease commences on a date other than on the first day of a calendar month, the Base Rent for such fractional calendar month shall accrue on a daily basis for each day of such fractional month at a daily rate equal to 1/30 of the total monthly Base Rent.  (See Paragraph 4 for further provisions.)

1.6     **Base Rent Paid Upon Commencement Date**.   $208,800.00 as Base Rent for the first full calendar month of the Original Term.

1.7     **Security Deposit**.   Four Hundred Sixty Thousand Dollars ($460,000.00) ("**Security Deposit**").  (See Paragraph 5 for further provisions.)

1.8     **Permitted Use**.   Office, warehouse and distribution.  (See Paragraph 6 for further provisions.)

Lessor's Initials _____
Lessee's Initials _____

DOCSOC\844426v3\11533.0135

      1.9    **Insuring Party**.  Lessee is the "**Insuring Party**" unless otherwise stated herein.  (See Paragraph 8 for further provisions.)

      1.10    **Real Estate Broker**.  The following real estate broker (the "**Broker**") and brokerage relationship exists in this transaction and is consented to by the Parties:  JM REALTY (Joseph L. McKay) represents Lessor exclusively.  (See Paragraph 15 for further provisions).

      1.11    **Guarantor**.  None.

      1.12    **Exhibits**.  Attached hereto are **Exhibits A, B, C, D and E**, all of which are a part of this Lease.

2.    **PREMISES**.

      2.1    **Letting**.  Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Lease.  Prior to the date of this Lease, Lessor and Lessee have agreed that the square footage set forth in Section 1.2 in calculating rental shall be used for purposes of this Lease.

      2.2    **Condition**.  Lessor shall deliver the Premises to Lessee broom clean and free of debris on the Commencement Date and warrants to Lessee that the structural elements of the roof, bearing walls and foundation of the Base Building (as defined in **Exhibit C**), other than those constructed or to be constructed by Lessee (or the Prior Lessee, as defined in Paragraph 55 below) shall be free from material defects.  If a non-compliance with said warranty exists as of the Commencement Date or within the thirty (30)-day period thereafter, Lessor shall, except as otherwise provided in this Lease, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, rectify same at Lessor's expense.  Subject to the respective maintenance and repair obligations of the Parties provided in this Lease, if Lessee does not give Lessor written notice of a non-compliance with this warranty within thirty (30) days after the Commencement Date, correction of such non-compliance shall be the obligation of Lessee at Lessee's sole cost and expense; provided, however, that Lessor shall assign all warranties (to the extent available) to Lessee with respect to those obligations for which Lessee is responsible for hereunder.

      2.3    **Compliance with Covenants, Restrictions and Building Code**.  Lessor warrants to Lessee (to Lessor's actual knowledge) that the structural elements of the roof, bearing walls and foundation of the Base Building (as defined in **Exhibit C**), other than those constructed or to be constructed by Lessee or the Prior Lessee, complies in all material respects with all applicable covenants or restrictions of record and applicable building codes, regulations and ordinances in effect on the Commencement Date.  Said warranty does not apply to the particular use to which Lessee will put the Premises (as compared to general office and warehouse use) or to any Alterations or Utility Installations (as defined in Paragraph 7.3(a)) made or to be made by Lessee or the Prior Lessee.  If the structural elements of the roof, bearing walls and foundation of the Base Building (as defined in **Exhibit C**) does not comply with said warranty, Lessor shall, except as otherwise provided in this Lease, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, rectify the same at Lessor's expense.  If Lessee does not give Lessor written notice of a non-compliance with this warranty within thirty (30) days following the Commencement Date, correction of that non-compliance shall be the obligation of Lessee at Lessee's sole cost and expense.

-2-

Lessor's Initials
Lessee's Initials

2.4    **Acceptance of Premises**. Lessee hereby acknowledges: (a) that it has been advised by the Lessor and/or the Broker to satisfy itself with respect to the condition of the Premises (including, but not limited to, the electrical and fire sprinkler systems, security, environmental aspects, compliance with the Applicable Law, as defined in Paragraph 6.3) and the present and future suitability of the Premises for Lessee's intended use, (b) that Lessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to Lessee's occupancy of the Premises and/or the term of this Lease, and (c) that neither Lessor, nor any of Lessor's agents, nor any Broker, has made any oral or written representations or warranties with respect to the said matters other than as set forth in this Lease.

2.5    **Acknowledgment**. Notwithstanding any contrary provisions of this Lease, Lessee acknowledges that Lessor's sole obligation with respect to the condition of the Premises shall be to deliver the Base Building (as defined in **Exhibit C**) in the condition required by the provisions of Paragraphs 2.2 and 2.3 above. Except as expressly provided herein, Lessee hereby accepts the Premises in its **"AS-IS"** condition. Lessee further acknowledges and understands that (other than providing the Base Building (as defined in **Exhibit C**) as required by this Lease) Lessor shall in no event be liable for any defect or violation of any Applicable Laws (as defined below) with respect to any Alterations, Trade Fixtures, Utility Installations (as such terms are defined below) or any other improvements made or installed within the Premises by any party (including, without limitation, Lessee and/or the Prior Lessee).

3.    **TERM**.

3.1    **Term**. The Commencement Date, Expiration Date and Original Term of this Lease are as specified in Paragraph 1.3. The Original Term may be extended pursuant to any option rights granted to Lessee as specified in Paragraph 39.

3.2    **Intentionally Omitted**.

3.3    **Delivery of Possession**. Possession of the Premises shall be deemed to have been delivered when the following conditions have been satisfied:

(a)    The Lease is fully executed and delivered by the Parties;

(b)    All Conditions Precedent set forth in Paragraph 55 have been fully satisfied; and

(c)    A form of a Subordination, Non-Disturbance and Attornment Agreement between Lessee and the holder of any existing mortgage to which this Lease is subordinate ("**Existing Lender**"), in form and content mutually agreeable to Lessee and Existing Lender, shall have been approved by Lessee and Existing Lender.

4.    **RENT**.

4.1    **Base Rent**. Lessee shall cause payment of Base Rent and other rent or charges, as the same may be adjusted from time to time, to be received by Lessor in lawful money of the United States, without offset or deduction, on or before the day on which it is due under the terms of this Lease. Base Rent and all other rent and charges for any period during the term hereof which is for less than one (1) full calendar month shall be prorated based upon the actual number of days of

-3-

Lessor's Initials _____
Lessee's Initials _____

the calendar month involved. Payment of Base Rent and other charges shall be made to Lessor at its address stated herein or to such other persons or at such other addresses as Lessor may from time to time designate in writing to Lessee.

5.    **SECURITY DEPOSIT**.

5.1    **Letter of Credit; Cash**. Lessee shall deposit with Lessor within seven (7) days after the execution hereof the Security Deposit set forth in Paragraph 1.7 as security for Lessee's faithful performance of Lessee's obligations under this Lease. In lieu of depositing a cash Security Deposit with Lessor, Lessee may, prior to execution of this Lease, deliver (or cause to be delivered) to Lessor and cause to be in effect during the Term, an unconditional, irrevocable, transferable letter of credit ("**L/C**") in the amount set forth in Paragraph 1.7 (the "**L/C Amount**"). The L/C shall be issued by a national financial institution or banking association ("**Bank**") selected by Lessee and reasonably acceptable to Lessor. The Bank shall have a local Los Angeles, Orange or Riverside County office that will accept deposits, maintain accounts and will honor a draw of the L/C. Lessee shall pay all expenses, points or fees incurred by Lessee in obtaining the L/C. If the term of the L/C shall expire prior to the expiration of the Term, Lessee shall deliver to Lessor, at least thirty (30) days prior to the L/C expiration date, a renewal of the L/C or a replacement L/C which satisfies the conditions of this Paragraph. Lessee may, from time to time, replace any existing L/C with a new L/C, provided that the new L/C (a) becomes effective at least thirty (30) days before the expiration of the L/C being replaced; (b) is in the then-required amount, (c) is issued by a Bank reasonably acceptable to Lessor, and (d) otherwise complies with the requirements of this Paragraph 5. Lessor shall hold the L/C as security for the performance of Lessee's obligations under this Lease. If Lessee Breaches this Lease (as defined in Paragraph 13.1), Lessor may use, apply or retain all or any portion of said Security Deposit (or draw on that portion of the L/C) for the payment of any amount due Lessor or to reimburse or compensate Lessor for any liability, cost, expense, loss or damage (including attorneys' fees) which Lessor may suffer or incur by reason thereof. If Lessee fails to renew or replace the L/C at least thirty (30) days before its expiration, Lessor may, without prejudice to any other remedy it has, draw on the entire L/C. If Lessor uses or applies all or any portion of said Security Deposit (or draw on that portion of the L/C), Lessee shall within ten (10) days after written request therefor deposit monies with Lessor sufficient to restore said Security Deposit (or the L/C, as applicable) to the full amount required by this Lease. Lessor shall not be required to keep all or any part of the Security Deposit separate from its general accounts. Lessor shall, at the expiration or earlier termination of the term hereof and after Lessee has vacated the Premises, return to Lessee (or, at Lessor's option, to the last assignee, if any, of Lessee's interest herein), that portion of the Security Deposit not used or applied by Lessor. Unless otherwise expressly agreed in writing by Lessor, no part of the Security Deposit shall be considered to be held in trust, to bear interest or other increment for its use, or to be prepayment for any monies to be paid by Lessee under this Lease.

6.    **USE**.

6.1    **Use**. Lessee shall use and occupy the Premises only for the purposes set forth in Paragraph 1.8, or any other use which is comparable thereto, and for no other purpose without Lessor's prior written consent, which consent shall not be unreasonably withheld; provided, however, if Lessee's use contemplates the use of any Hazardous Substance other than "Cleaning Supplies" (as defined below), Lessor may withhold its consent in its sole discretion. Lessee shall not use or permit the use of the Premises in a manner that creates waste or a nuisance, or that disturbs owners and/or occupants of, or causes damage to, neighboring premises or properties.

-4-

Lessor's Initials _____
Lessee's Initials _____

6.2    **Hazardous Substances**.

(a)    <u>Reportable Uses Require Consent</u>.    The term **"Hazardous Substance"** as used in this Lease shall mean any product, substance, chemical, material or waste whose presence, nature, quantity and/or intensity of existence, use, manufacture, disposal, transportation, spill, release or effect, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for liability of Lessor to any governmental agency or third party under any applicable statute or common law theory.    Hazardous Substance shall include, but not be limited to, explosives, hydrocarbons, petroleum, gasoline, crude oil or any products, by-products or fraction thereof.    Lessee shall not engage in any activity in, on or about the Premises which constitutes a Reportable Use (as hereinafter defined) of Hazardous Substances without the express prior written consent of Lessor, which consent shall not be unreasonably withheld, and compliance in a timely manner (at Lessee's sole cost and expense) with all Applicable Law (as defined in <u>Paragraph 6.3</u>).    **"Reportable Use"** shall mean (A) the installation or use of any above or below ground storage tank, or (B) the generation, possession, storage, use transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority in or about the Premises by Lessee or its agents, employees, contractors, subtenants or invitees.    Reportable Use shall also include Lessee being responsible for the presence in, on or about the Premises of Hazardous Substance with respect to which any Applicable Law requires that a notice be given to persons entering or occupying the Premises or neighboring properties.    Notwithstanding the foregoing, Lessee may, without Lessor's prior consent, but in compliance with all Applicable Law, use any ordinary and customary cleaning materials reasonably required to be used in the normal course of the permitted use of the Premises set forth in <u>Paragraph 1.8</u>, including, without limitation, office supplies and cleaning products reasonably required to be used by Lessee in the normal course of Lessee's business permitted on the Premises, so long as such use is not a Reportable Use and does not expose the Premises or neighboring properties to any meaningful risk of contamination or damage or expose Lessor to any liability therefor (**"Cleaning Supplies"**).    In addition, Lessor may (but without any obligation to do so) condition its consent to the use or presence of any Hazardous Substance, activity or storage tank by Lessee upon Lessee's giving Lessor such additional assurances as Lessor, in its reasonable discretion, deems necessary to protect itself, the public, the Premises and the environment against damage, contamination or injury and/or liability therefrom or therefor, including, but not limited to the installation (and removal on or before Lease expiration or earlier termination) or reasonable necessary protective modification to the Premises (such as concrete encasements) and/or the deposit of an additional Security Deposit under <u>Paragraph 5</u> hereof.    Lessor hereby expressly reserves the right to require Lessee to use tracers in any Hazardous Substance used by Lessee on the Premises.

(b)    <u>Duty to Inform</u>.    If Lessee knows, or has reasonable cause to believe, that a Hazardous Substance, or a condition involving or resulting from same, has come to be located in, on, under or about the Premises, other than as previously consented to by Lessor, Lessee shall immediately give written notice of such fact to Lessor.    Lessee shall also immediately give Lessor a copy of any statement, report, notice, registration, application, permit, business plan, license, claim, action or proceeding given to, or received from, any governmental authority or private party, or persons entering or occupying the Premises, concerning the presence, spill, release, discharge of, or exposure to, any Hazardous Substance or contamination in, on, or about the Premises, including, but not limited to, all such documents as may be involved in any Reportable Uses involving the Premises.    Without implying any obligation on the part of Lessor to investigate such condition, if

-5-

Lessor's Initials _____
Lessee's Initials _____

Lessor discovers or knows of a Hazardous Substance condition in, on, under or about the Premises, Lessor shall provide written notice of such fact to Lessee.

(c) Indemnification. The Parties shall indemnify, protect, defend and hold the other Party, its agents, employees, lenders, and ground lessor, if any, and the Premises, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, costs, claims, liens, expenses, penalties, permits and attorneys' and consultants' fees arising out of or involving any Hazardous Substance or storage tank brought onto the Premises by or for the indemnifying Party's or persons under indemnifying Party's control. The Parties' obligations under this Paragraph 6 shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by the indemnifying Party, and the cost of investigation (including consultant's and attorneys' fees and testing), removal, remediation, restoration and/or abatement thereof, or any contamination therein involved, and shall survive the expiration or earlier termination of this Lease. No termination, cancellation or release agreement entered into by Lessor and Lessee shall release the indemnifying Party from its obligations under this Lease with respect to Hazardous Substances or storage tanks, unless specifically so agreed by the other Party in writing at the time of such agreement. Notwithstanding the foregoing, if after Lessee takes possession of the Premises, Lessee discovers Hazardous Substances on the Premises in unlawful quantities which were not released on the Premises by Lessee or persons under Lessee's control, Lessor agrees to remediate such condition to the extent required by law.

6.3 **Lessee's Compliance with Law.** Except as otherwise provided in this Lease, including, without limitation, "Lessor's Obligations" (as defined in this Paragraph 6.3), Lessee shall, at Lessee's sole cost and expense, fully, diligently and in a timely manner, comply with all **"Applicable Laws,"** which term is used in this Lease to include all laws, rules, regulations, ordinances, directives, covenants, easements and restrictions of record, permits, the requirements of any applicable fire insurance underwriter or rating bureau, and the recommendations of Lessor's engineers and/or consultants, relating in any manner to the Premises (including, but not limited to, matters pertaining to (a) the Occupational Safety and Health Act of 1970, 29 U.S.C. Section 651 *et seq.* and any analogous legislation in California, (b) Americans With Disabilities Act, 42 U.S.C. Section 12101 *et seq.*, (c) industrial hygiene, (d) environmental conditions on, in, under or about the Premises, including soil and groundwater conditions, and (e) the use, generation, manufacture, production, installation, maintenance, removal, transportation, storage, spill or release of any Hazardous Substance or storage tank), now in effect or which may hereafter come into effect, and whether or not reflecting a change in policy from any previously existing policy with respect to (i) the non-structural interior portions of the Building, (ii) any Alterations by Lessee, and (iii) any Hazardous Substance brought onto the Premises by or for Lessee or persons under Lessee's control. Lessee shall, within five (5) days after receipt of Lessor's written request, provide Lessor with copies of all documents and information, including, but not limited to, permits, registrations, manifests, applications, reports and certificates, evidencing Lessee's compliance with any Applicable Law specified by Lessor, and shall immediately upon receipt, notify Lessor in writing (with copies of any documents involved) of any threatened or actual claim, notice, citation, warning, complaint or report pertaining to or involving failure by Lessee or the Premises to comply with any Applicable Law. Lessee covenants to maintain the Premises, all Trade Fixtures, Alterations, Utility Installations and Other Improvements made by Lessee and/or Prior Lessee in a condition that fully complies with the requirements of all Applicable Laws, including such requirements as would be applicable with respect to agents, employees or contractors of Lessor who may from time to time be present upon the Premises, and Lessee agrees to indemnify, defend and hold Lessor harmless from and against any liability, claim or damages arising as a result of a breach of the foregoing covenant and from all

-6-

Lessor's Initials _____
Lessee's Initials _____

costs, expenses and charges arising therefrom, including, without limitation, reasonable attorneys' fees and court costs incurred by Lessor in connection therewith, which indemnity shall survive the expiration or termination of this Lease. Notwithstanding the foregoing, or anything contained herein to the contrary, Lessor shall, at Lessor's sole cost and expense, fully, diligently and in a timely manner, comply with all Applicable Laws now in effect or which may hereafter come into effect, and whether or not reflecting a change in policy from any previously existing policy with respect to (A) the structural portions of the Building; and (B) any Hazardous Substance or storage tank existing on, in, under or about the Premises or brought onto the Premises by or for Lessor or persons under Lessor's control, except for any Hazardous Substance brought onto the Premises by or for Lessee or persons under Lessee's control (collectively, "**Lessor's Obligation**"); provided, however, Lessor's Obligations shall not include an obligation to comply with Applicable Laws if such obligation arises from Lessee's specific use of the Premises or Alterations or Utility Installations by Lessee or Prior Lessee.

6.4    **Inspection Compliance**. Lessor and Lessor's Lender(s) (as defined in Paragraph 8.3(a)) shall have the right to enter the Premises at any time, in the case of an emergency, and otherwise at reasonable times upon reasonable prior written notice, for the purpose of inspecting the condition of the Premises and for verifying compliance by Lessee with this Lease and all Applicable Laws (as defined in Paragraph 6.3) and to employ experts and/or consultants in connection therewith and/or to advise Lessor with respect to Lessee's activities, including, but not limited to, the installation, operation, use, monitoring, maintenance, or removal of any Hazardous Substance or storage tank on or from the Premises, provided Lessor shall use reasonable efforts to minimize interference with the conduct of Lessee's business upon the Premises. The costs and expenses of any such inspections shall be paid by the Party requesting same, unless a Default or Breach of this Lease, violation of Applicable Law, or a contamination, caused or materially contributed to by Lessee is found to exist or be imminent, or unless the inspection is requested or ordered by a governmental authority as the result of any such existing or imminent violation or contamination. In any such case, Lessee shall upon request reimburse Lessor or Lessor's Lender, as the case may be, for the costs and expenses of such inspections.

7.    **MAINTENANCE; REPAIRS; UTILITY INSTALLATIONS; TRADE FIXTURES AND ALTERATIONS**.

7.1    **Lessee's Obligations**.

(a)    Subject to the provisions of Paragraph 2.2 (Lessor's Warranty as to Condition), Paragraph 2.3 (Lessor's Warranty as to Compliance with Covenants, *etc*.), Paragraph 7.2 (Lessor's Obligation to Repair), Paragraph 9 (Damage and Destruction), and Paragraph 14 (Condemnation), Lessee shall, at Lessee's sole cost and expense and at all times, keep the Premises and every part thereof (excluding the structural portions of the Base Building (as defined in **Exhibit C**) to be repaired by Lessor as provided in Paragraph 7.2) in first class order, condition and repair, non-structural (whether or not such portion of the Premises requiring repair, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises), including, without limiting the generality of the foregoing, all equipment or facilities serving the Premises, such as plumbing, heating, air conditioning, ventilating, electrical, lighting facilities, boilers, fired or unfired pressure vessels, fire sprinkler and/or standpipe and hose or other automatic fire extinguishing system, including fire alarm and/or smoke detection systems and equipment, fire hydrants, fixtures, non-structural walls, ceilings, roof membranes (but not roof

-7-

Lessor's Initials ___
Lessee's Initials ___

structure), floors, windows, doors, plate glass, skylights, landscaping, driveways, parking lots, fences, retaining walls, signs, sidewalks and parkways located in, on, about, or adjacent to the Premises. Lessee shall not cause or permit any Hazardous Substance to be spilled or released in, on, under or about the Premises (including through the plumbing or sanitary sewer system except as may be permitted by Applicable Law) and shall promptly, at Lessee's expense, take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises, the elements surrounding same, or neighboring properties, that was caused or materially contributed to by Lessee, or pertaining to or involving any Hazardous Substance and/or storage tank brought onto the Premises by or for Lessee or under its control. Lessee, in keeping the Premises in first class order, condition and repair shall exercise and perform good maintenance practices. Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in first class order, condition and state of repair. If Lessee occupies the Premises for five (5) years or more, Lessor may require Lessee to repaint the exterior of the buildings on the Premises as reasonably required, but not more frequently than once every seven (7) years.

(b)     Lessee shall, at Lessee's sole cost and expense, procure and maintain contracts, with copies to Lessor, in customary form and substance for and with contractors specializing and experienced in the inspection, maintenance and service of the following equipment and improvements, if any, located on the Premises: (i) heating, air conditioning, and ventilating equipment, (ii) boiler, fired or unfired pressure vessels, (iii) fire sprinkler, and/or standpipe and hose or other automatic fire extinguishing systems, including fire alarm and/or smoke detection, (iv) landscaping and irrigation systems, (v) roof covering and drain maintenance and (vi) asphalt and parking lot maintenance, (vii) electrical systems, (viii) dock levelors, (ix) door office/man/overhead, (x) warehouse flooring.

7.2     **Lessor's Obligations**. Notwithstanding anything contained in Paragraph 7.1 to the contrary, Lessor shall, at its sole cost and expense, (a) repair and replace as necessary the roof structure, structural walls and foundation of the Base Building (as defined in **Exhibit C**) (excluding columns), and (b) make any and all repairs required as a result of the negligence or intentional misconduct of Lessor or its employees, agents and contractors occurring after the Commencement Date. It is the intention of the Parties that the terms of this Lease govern the respective obligations of the Parties as to maintenance, repair, and replacement of the Premises or any portion thereof. Lessee and Lessor expressly waive the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease, or which affords Lessee the right to make repairs at the expense of Lessor or to terminate this Lease by reason of any needed repairs, including, but not limited to, California Civil Code Sections 1932, 1941 and 1942 or any successor provision of law.

7.3     **Utility Installations; Trade Fixtures; Alterations**.

(a)     Definitions; Consent Required. The term **"Utility Installations"** is used in this Lease to refer to all carpeting, window coverings, air lines, power panels, electrical distributions, security, fire protection systems, communication systems, lighting fixtures, heating, ventilating, and air conditioning equipment, plumbing, fencing and all other utility and building systems and equipment in, on or about the Premises. The term **"Trade Fixtures"** shall mean Lessee's or Prior Lessee's machinery and equipment that can be removed without doing material damage to the Premises. The term **"Alterations"** shall mean any modification of the improvements on the Premises that are provided by Lessor under the terms of this Lease, other than Utility

-8-

Lessor's Initials _____
Lessee's Initials _____

Installations or Trade Fixtures, whether by addition or deletion. **"Lessee Owned Alterations and/or Utility Installations"** are defined Alterations and/or Utility Installations made by Lessee or Prior Lessee that are not yet owned by Lessor as defined in Paragraph 7.4(a). Lessee shall not make any Alterations or Utility Installations in, on, under or about the Premises without Lessor's prior written consent, which consent shall not be unreasonably withheld; provided, however, Lessee shall have the right to make non-structural Alterations or Utility Installations to the interior of the Building the cost of which does not exceed Fifty Thousand Dollars ($50,000.00) without Lessor's prior written consent; provided, further, that Lessee shall in no event be permitted to cause any structural changes, or penetrations of the roof, structural walls, columns or slab without Lessor's prior written consent. Lessor's consent shall be limited to whether or not such Alterations or Utility Installations would adversely affect the structural elements of the Building.

(b)    Consent. Any Alterations or Utility Installations that Lessee shall desire to make and which require the consent of the Lessor shall be presented to Lessor in written form with proposed detailed plans. All consents given by Lessor, whether by virtue of Paragraph 7.3(a) or by subsequent specific consent, shall be deemed conditioned upon: (i) Lessee's acquiring all applicable permits required by governmental authorities, (ii) the furnishing of copies of such permits together with a copy of the plans and specifications for the Alteration or Utility Installation to Lessor prior to commencement of the work thereon, and (iii) the compliance by Lessee with all conditions of said permits in a prompt and expeditious manner. Any Alterations or Utility Installations by Lessee during the term of this Lease shall be done in a good and workmanlike manner, with good and sufficient materials, and in compliance with all Applicable Law. Lessee shall promptly upon completion thereof furnish Lessor with "As-Built" drawings and specifications therefor prepared by Lessee's contractor. Lessor may (but without obligation to do so) condition its consent to any requested Alteration or Utility Installation that costs $250,000.00 or more upon (A) Lessee using a contractor approved by Lessor, (B) Lessee's providing Lessor with a lien and completion bond in an amount equal to one and one-half times the estimated cost of such Alteration or Utility Installation, or (C) upon Lessee's posting an additional Security Deposit with Lessor under Paragraph 36 hereof.

(c)    Indemnification. Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use on the Premises, which claims are or may be secured by any mechanics' or materialmen's lien against the Premises or any interest therein. Lessee shall give Lessor not less than ten (10) days' notice prior to the commencement of any work in, on or about the Premises, and Lessor shall have the right to post notices of non-responsibility in or on the Premises as provided by law. If Lessee shall, in good faith, contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense, defend and protect itself, Lessor and the Premises against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof against the Lessor or the Premises. If Lessor shall require, Lessee shall furnish to Lessor a surety bond satisfactory to Lessor in an amount equal to one and one-half times the amount of such contested lien, claim or demand, indemnifying Lessor against liability for the same, as required by law for the holding of the Premises free from the effect of such lien or claim. In addition, Lessor may require Lessee to pay Lessor's attorneys' fees and costs in participating in such action if Lessor shall decide it is to its best interest to do so.

(d)    Lessor's Waiver. Lessor agrees to execute a waiver of Lessor's lien on Lessee's Trade Fixtures, equipment and personal property in favor of Lessee's lender in form and substance reasonably acceptable to Lessor.

-9-

Lessor's Initials _____
Lessee's Initials _____

7.4 **Ownership; Removal; Surrender; and Restoration**.

(a) Ownership. Subject to Lessor's right to require their removal or become the owner thereof as hereinafter provided in this Paragraph 7.4, all Alterations and Utility Installations made to the Premises by Lessee and/or Prior Lessee shall be the property of and owned by Lessee, but considered a part of the Premises. Lessor may, at any time and at its option, elect in writing to Lessee to be the owner of all or any specified part of the Lessee Owned Alterations and/or Utility Installations. Unless otherwise instructed per Subparagraph 7.4(b) hereof, all Lessee Owned Alterations and/or Utility Installations shall, at the expiration or earlier termination of this Lease, become the property of Lessor and remain upon and be surrendered by Lessee with the Premises.

(b) Removal. Unless otherwise agreed in writing, Lessor may require that any or all Lessee Owned Alterations and/or Utility Installations be removed by the expiration or earlier termination of this Lease, notwithstanding that their installation may have been consented to by Lessor or that they were installed by Prior Lessee. Lessor may require the removal at any time of all or any part of any Lessee Owned Alterations and/or Utility Installations made without the required consent of Lessor. Notwithstanding any contrary provisions of this Lease, Lessee shall not be obligated to remove Lessee Owned Alterations and/or Utility Installations if Lessor, at the time Lessor grants its consent therefor, Lessor states in writing that they need not be removed upon expiration or earlier termination of this Lease.

(c) Surrender/Restoration. Lessee shall surrender the Premises by the end of the last day of the Lease term or any earlier termination date, with all of the improvements, parts and surfaces thereof clean and free of debris and in good operating order, condition and state of repair, ordinary wear and tear and damage by casualty excepted. Any repairs and replacements made to the Premises (including, but not limited to, repairs and replacements necessary to restore the Premises to its "Base Building" (as defined in **Exhibit C**) condition after removing Lessee Owned Alterations and/or Utility Installations required to be removed by Lessee) shall be made with materials of equal or better quality as the original materials existing as of the Commencement Date. "Ordinary wear and tear" shall not include any damage or deterioration that would have been prevented by good maintenance practice or by Lessee performing all of its obligations under this Lease. Except as otherwise agreed or specified in writing by Lessor, the Premises, as surrendered, shall include all Alterations and Utility Installations. The obligations of Lessee shall include the repair of any damage occasioned by the installation, maintenance or removal of Lessee's Trade Fixtures, furnishings, equipment, and Alterations and/or Utility Installations, as well as the removal of any storage tank installed by or for Lessee, and the removal, replacement, or remediation of any soil, material or ground water contaminated by Lessee, all as may then be required by Applicable Law and/or good practice. Lessee's Trade Fixtures shall remain the property of Lessee and shall be removed by Lessee subject to its obligation to repair and restore the Premises per this Lease.

8. **INSURANCE; INDEMNITY.**

8.1 **Payment For Insurance**. Regardless of whether the Lessor or Lessee is the Insuring Party, Lessee shall pay for all insurance required under this Paragraph 8 except to the extent of the cost attributable to -liability insurance carried by Lessor in excess of $5,000,000.00 per occurrence. Premiums for policy periods commencing prior to or extending beyond the Lease term shall be prorated to correspond to the Lease term. Payment shall be made by Lessee to Lessor within ten (10) days following receipt of an invoice for any amount due.

-10-

Lessor's Initials
Lessee's Initials

8.2   **Liability Insurance**.

(a)   <u>Carried by Lessee</u>.   Lessee shall obtain and keep in force during the term of this Lease a Commercial General Liability policy of insurance protecting Lessee and Lessor (as an additional insured) against claims for bodily injury, personal injury and property damage based upon, involving or arising out of the ownership, use, occupancy, or maintenance of the Premises and all areas appurtenant thereto.   Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $2,000,000.00 for bodily injury and property damage per occurrence, and $5,000,000.00 General Aggregate, with an "Additional Insured-Managers or Lessors of Premises" Endorsement (also naming Lender as an additional insured) and containing the "Amendment of the Pollution Exclusion Endorsement" for damage caused by heat, smoke or fumes from a hostile fire to be attached to the policy and/or certificates thereof.   The policy shall not contain any intra-insured exclusions as between insured persons or organizations, but shall include coverage for liability assumed under this Lease as an "insured contract" for the performance of Lessee's indemnity obligations under this Lease.   The limits of said insurance required by this Lease or as carried by Lessee shall not, however, limit the liability of Lessee nor relieve Lessee of any obligation hereunder.   All insurance to be carried by Lessee shall be primary to and not contributory with any similar insurance carried by Lessor, whose insurance shall be considered excess insurance only.

(b)   <u>Carried by Lessor</u>.   In the event Lessor is the Insuring Party, Lessor shall also maintain liability insurance described in <u>Paragraph 8.2(a)</u> above, in addition to, and not in lieu of, the insurance required to be maintained by Lessee.   Lessee shall not be named as an additional insured therein.

8.3   **Property Insurance-Building, Improvements and Rental Value**.

(a)   <u>Building and Improvements</u>.   The Insuring Party shall obtain and keep in force during the term of this Lease an ISO Special Form policy or policies in the name of Lessor, with loss payable to Lessor and to the holders of any mortgages, deeds of trust or ground leases on the Premises ("**Lender**"), insuring loss or damage to the Premises.   The Insuring Party shall also obtain insurance coverage for loss or damage resulting from an earthquake.   The amount of such insurance policies shall be equal to the full replacement cost of the Premises or as required by Lender(s) (excluding foundations, footings and excavations), as the same shall exist from time to time, or the amount required by Lenders, but in no event more than the commercially reasonable and available insurable value thereof if, by reason of the unique nature or age of the improvements involved, such latter amount is less than full replacement cost.   If Lessor is the Insuring Party, however, Lessee Owned Alterations and/or Utility Installations shall be insured by Lessee under <u>Paragraph 8.4</u> rather than by Lessor.   If the coverage is available and commercially appropriate, such policy or policies shall insure against all risks of direct physical loss or damage (except the perils of flood unless required by a Lender), including coverage for any additional costs resulting from debris removal and reasonable amounts of coverage for the enforcement of any ordinance or law regulating the reconstruction or replacement of any undamaged sections of the Premises required to be demolished or removed by reason of the enforcement of any building, zoning, safety or land use laws as the result of a covered cause of loss.   Said policy or policies shall also contain an agreed valuation provision in lieu of any coinsurance clause, waiver of subrogation, and inflation guard protection causing an increase in the annual property insurance coverage amount by a factor of not less than the adjusted U.S. Department of Labor Consumer Price Index for all Urban Consumers for the city nearest to where the Premises are located.   If such insurance coverage has a deductible clause, the deductible amount shall not (subject to the further provisions of this Paragraph) exceed the greater of

-11-

Lessor's Initials _____
Lessee's Initials _____

(i) $100,000.00 per occurrence ("**Deductible Amount**"), or (ii) the customary deductible amount for comparable space and location, and Lessee shall be liable for such deductible amount in the event of an Insured Loss, as defined in Subparagraph 9.1(c). Lessee shall be permitted to maintain the Deductible Amount so long as Lessee maintains a tangible net worth of at least One Hundred Million Dollars ($100,000,000.00) ("**Required Net Worth**"), as evidenced by a certified financial statement from Lessee's certified public accountants or other evidence reasonably satisfactory to Lessor. In the event Lessee fails to maintain the Required Net Worth, the applicable deductible amount shall not exceed Ten Thousand Dollars ($10,000.00) per occurrence. For earthquake insurance, Lessee shall have the right, at its option, to be added to Lessor's blanket policy or policies maintained by Lessor for its properties. Notwithstanding any contrary provisions of this Section, the deductible amount for earthquake insurance shall not exceed ten percent (10%) of the loss insured thereby, and such deductible requirement shall be specifically set forth in any insurance certificate required to be delivered to Lessor.

(b) Rental Value. The Insuring Party shall, in addition, obtain and keep in force during the term of this Lease a policy or policies in the name of Lessor, with loss payable to Lessor and Lender(s), insuring the loss of the full rental and other charges payable by Lessee to Lessor under this Lease for one (1) year (including all real estate taxes, insurance costs, and any scheduled rental increases). Said insurance shall provide that in the event this Lease is terminated by reason of an Insured Loss, the period of indemnity for such coverage shall be extended beyond the date of the completion of repairs or replacement of the Premises, to provide for one (1) full year's loss of rental revenues from the date of any such loss. Said insurance shall contain an agreed valuation provision in lieu of any coinsurance clause, and the amount of coverage shall be adjusted annually to reflect the projected rental income, property taxes, insurance premium costs and other expenses, if any, otherwise payable by Lessee, for the next twelve (12)-month period. Lessee shall be liable for any deductible amount in the event of such loss.

(c) Adjacent Premises. If the Premises are part of a larger building, or if the Premises are part of a group of buildings owned by Lessor which are adjacent to the Premises, Lessee shall pay for any increase in the premiums for the property insurance of such building or buildings if said increase is caused by Lessee's acts, omissions, use or occupancy of the Premises.

(d) Lessee's Improvements. If the Lessor is the Insuring Party, Lessor shall not be required to insure Lessee Owned Alterations and/or Utility Installations unless the item in question has become the property of Lessor under the terms of this Lease. If Lessee is the Insuring Party, the policy carried by Lessee under this Paragraph 8.3 shall insure Lessee Owned Alterations and/or Utility Installations.

8.4 **Lessee's Property Insurance**. Subject to the requirements of Paragraph 8.5, Lessee at its cost shall either by separate policy or, at Lessor's option, by endorsement to a policy already carried, maintain insurance coverage on all of Lessee's personal property and Lessee Owned Alterations and/or Utility Installations in, on, or about the Premises similar in coverage to that carried by the Insuring Party under Paragraph 8.3. Such insurance shall be 90% replacement cost coverage with a commercially reasonable deductible. The proceeds from any such insurance shall be used by Lessee for the replacement of personal property or the restoration of Lessee Owned Alterations and/or Utility Installations unless this Lease is terminated as provided in Paragraph 9, in which event Lessee may retain such insurance proceeds, except for the unamortized costs of any allowance provided by Lessor to Lessee which shall be paid to Lessor. Lessee shall be the Insuring Party with

-12-

Lessor's Initials ___
Lessee's Initials ___