Installations or Trade Fixtures, whether by addition or deletion. **"Lessee Owned Alterations and/or Utility Installations"** are defined Alterations and/or Utility Installations made by Lessee or Prior Lessee that are not yet owned by Lessor as defined in Paragraph 7.4(a). Lessee shall not make any Alterations or Utility Installations in, on, under or about the Premises without Lessor's prior written consent, which consent shall not be unreasonably withheld; provided, however, Lessee shall have the right to make non-structural Alterations or Utility Installations to the interior of the Building the cost of which does not exceed Fifty Thousand Dollars ($50,000.00) without Lessor's prior written consent; provided, further, that Lessee shall in no event be permitted to cause any structural changes, or penetrations of the roof, structural walls, columns or slab without Lessor's prior written consent. Lessor's consent shall be limited to whether or not such Alterations or Utility Installations would adversely affect the structural elements of the Building.

(b) <u>Consent</u>. Any Alterations or Utility Installations that Lessee shall desire to make and which require the consent of the Lessor shall be presented to Lessor in written form with proposed detailed plans. All consents given by Lessor, whether by virtue of Paragraph 7.3(a) or by subsequent specific consent, shall be deemed conditioned upon: (i) Lessee's acquiring all applicable permits required by governmental authorities, (ii) the furnishing of copies of such permits together with a copy of the plans and specifications for the Alteration or Utility Installation to Lessor prior to commencement of the work thereon, and (iii) the compliance by Lessee with all conditions of said permits in a prompt and expeditious manner. Any Alterations or Utility Installations by Lessee during the term of this Lease shall be done in a good and workmanlike manner, with good and sufficient materials, and in compliance with all Applicable Law. Lessee shall promptly upon completion thereof furnish Lessor with "As-Built" drawings and specifications therefor prepared by Lessee's contractor. Lessor may (but without obligation to do so) condition its consent to any requested Alteration or Utility Installation that costs $250,000.00 or more upon (A) Lessee using a contractor approved by Lessor, (B) Lessee's providing Lessor with a lien and completion bond in an amount equal to one and one-half times the estimated cost of such Alteration or Utility Installation, or (C) upon Lessee's posting an additional Security Deposit with Lessor under Paragraph 36 hereof.

(c) <u>Indemnification</u>. Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use on the Premises, which claims are or may be secured by any mechanics' or materialmen's lien against the Premises or any interest therein. Lessee shall give Lessor not less than ten (10) days' notice prior to the commencement of any work in, on or about the Premises, and Lessor shall have the right to post notices of non-responsibility in or on the Premises as provided by law. If Lessee shall, in good faith, contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense, defend and protect itself, Lessor and the Premises against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof against the Lessor or the Premises. If Lessor shall require, Lessee shall furnish to Lessor a surety bond satisfactory to Lessor in an amount equal to one and one-half times the amount of such contested lien, claim or demand, indemnifying Lessor against liability for the same, as required by law for the holding of the Premises free from the effect of such lien or claim. In addition, Lessor may require Lessee to pay Lessor's attorneys' fees and costs in participating in such action if Lessor shall decide it is to its best interest to do so.

(d) <u>Lessor's Waiver</u>. Lessor agrees to execute a waiver of Lessor's lien on Lessee's Trade Fixtures, equipment and personal property in favor of Lessee's lender in form and substance reasonably acceptable to Lessor.

-9-

Lessor's Initials _____
Lessee's Initials _____

7.4    **Ownership; Removal; Surrender; and Restoration**.

(a)    Ownership.    Subject to Lessor's right to require their removal or become the owner thereof as hereinafter provided in this Paragraph 7.4, all Alterations and Utility Installations made to the Premises by Lessee and/or Prior Lessee shall be the property of and owned by Lessee, but considered a part of the Premises. Lessor may, at any time and at its option, elect in writing to Lessee to be the owner of all or any specified part of the Lessee Owned Alterations and/or Utility Installations. Unless otherwise instructed per Subparagraph 7.4(b) hereof, all Lessee Owned Alterations and/or Utility Installations shall, at the expiration or earlier termination of this Lease, become the property of Lessor and remain upon and be surrendered by Lessee with the Premises.

(b)    Removal.    Unless otherwise agreed in writing, Lessor may require that any or all Lessee Owned Alterations and/or Utility Installations be removed by the expiration or earlier termination of this Lease, notwithstanding that their installation may have been consented to by Lessor or that they were installed by Prior Lessee. Lessor may require the removal at any time of all or any part of any Lessee Owned Alterations and/or Utility Installations made without the required consent of Lessor. Notwithstanding any contrary provisions of this Lease, Lessee shall not be obligated to remove Lessee Owned Alterations and/or Utility Installations if Lessor, at the time Lessor grants its consent therefor, Lessor states in writing that they need not be removed upon expiration or earlier termination of this Lease.

(c)    Surrender/Restoration.    Lessee shall surrender the Premises by the end of the last day of the Lease term or any earlier termination date, with all of the improvements, parts and surfaces thereof clean and free of debris and in good operating order, condition and state of repair, ordinary wear and tear and damage by casualty excepted. Any repairs and replacements made to the Premises (including, but not limited to, repairs and replacements necessary to restore the Premises to its "Base Building" (as defined in **Exhibit C**) condition after removing Lessee Owned Alterations and/or Utility Installations required to be removed by Lessee) shall be made with materials of equal or better quality as the original materials existing as of the Commencement Date. "Ordinary wear and tear" shall not include any damage or deterioration that would have been prevented by good maintenance practice or by Lessee performing all of its obligations under this Lease. Except as otherwise agreed or specified in writing by Lessor, the Premises, as surrendered, shall include all Alterations and Utility Installations. The obligations of Lessee shall include the repair of any damage occasioned by the installation, maintenance or removal of Lessee's Trade Fixtures, furnishings, equipment, and Alterations and/or Utility Installations, as well as the removal of any storage tank installed by or for Lessee, and the removal, replacement, or remediation of any soil, material or ground water contaminated by Lessee, all as may then be required by Applicable Law and/or good practice. Lessee's Trade Fixtures shall remain the property of Lessee and shall be removed by Lessee subject to its obligation to repair and restore the Premises per this Lease.

8.    **INSURANCE; INDEMNITY.**

8.1    **Payment For Insurance.**    Regardless of whether the Lessor or Lessee is the Insuring Party, Lessee shall pay for all insurance required under this Paragraph 8 except to the extent of the cost attributable to liability insurance carried by Lessor in excess of $5,000,000.00 per occurrence. Premiums for policy periods commencing prior to or extending beyond the Lease term shall be prorated to correspond to the Lease term. Payment shall be made by Lessee to Lessor within ten (10) days following receipt of an invoice for any amount due.

-10-

Lessor's Initials
Lessee's Initials

8.2 **Liability Insurance**.

(a) <u>Carried by Lessee</u>. Lessee shall obtain and keep in force during the term of this Lease a Commercial General Liability policy of insurance protecting Lessee and Lessor (as an additional insured) against claims for bodily injury, personal injury and property damage based upon, involving or arising out of the ownership, use, occupancy, or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $2,000,000.00 for bodily injury and property damage per occurrence, and $5,000,000.00 General Aggregate, with an "Additional Insured-Managers or Lessors of Premises" Endorsement (also naming Lender as an additional insured) and containing the "Amendment of the Pollution Exclusion Endorsement" for damage caused by heat, smoke or fumes from a hostile fire to be attached to the policy and/or certificates thereof. The policy shall not contain any intra-insured exclusions as between insured persons or organizations, but shall include coverage for liability assumed under this Lease as an "insured contract" for the performance of Lessee's indemnity obligations under this Lease. The limits of said insurance required by this Lease or as carried by Lessee shall not, however, limit the liability of Lessee nor relieve Lessee of any obligation hereunder. All insurance to be carried by Lessee shall be primary to and not contributory with any similar insurance carried by Lessor, whose insurance shall be considered excess insurance only.

(b) <u>Carried by Lessor</u>. In the event Lessor is the Insuring Party, Lessor shall also maintain liability insurance described in <u>Paragraph 8.2(a)</u> above, in addition to, and not in lieu of, the insurance required to be maintained by Lessee. Lessee shall not be named as an additional insured therein.

8.3 **Property Insurance-Building, Improvements and Rental Value**.

(a) <u>Building and Improvements</u>. The Insuring Party shall obtain and keep in force during the term of this Lease an ISO Special Form policy or policies in the name of Lessor, with loss payable to Lessor and to the holders of any mortgages, deeds of trust or ground leases on the Premises ("**Lender**"), insuring loss or damage to the Premises. The Insuring Party shall also obtain insurance coverage for loss or damage resulting from an earthquake. The amount of such insurance policies shall be equal to the full replacement cost of the Premises or as required by Lender(s) (excluding foundations, footings and excavations), as the same shall exist from time to time, or the amount required by Lenders, but in no event more than the commercially reasonable and available insurable value thereof if, by reason of the unique nature or age of the improvements involved, such latter amount is less than full replacement cost. If Lessor is the Insuring Party, however, Lessee Owned Alterations and/or Utility Installations shall be insured by Lessee under <u>Paragraph 8.4</u> rather than by Lessor. If the coverage is available and commercially appropriate, such policy or policies shall insure against all risks of direct physical loss or damage (except the perils of flood unless required by a Lender), including coverage for any additional costs resulting from debris removal and reasonable amounts of coverage for the enforcement of any ordinance or law regulating the reconstruction or replacement of any undamaged sections of the Premises required to be demolished or removed by reason of the enforcement of any building, zoning, safety or land use laws as the result of a covered cause of loss. Said policy or policies shall also contain an agreed valuation provision in lieu of any coinsurance clause, waiver of subrogation, and inflation guard protection causing an increase in the annual property insurance coverage amount by a factor of not less than the adjusted U.S. Department of Labor Consumer Price Index for all Urban Consumers for the city nearest to where the Premises are located. If such insurance coverage has a deductible clause, the deductible amount shall not (subject to the further provisions of this Paragraph) exceed the greater of

-11-

Lessor's Initials _____
Lessee's Initials _____

(i) $100,000.00 per occurrence ("**Deductible Amount**"), or (ii) the customary deductible amount for comparable space and location, and Lessee shall be liable for such deductible amount in the event of an Insured Loss, as defined in Subparagraph 9.1(c).  Lessee shall be permitted to maintain the Deductible Amount so long as Lessee maintains a tangible net worth of at least One Hundred Million Dollars ($100,000,000.00) ("**Required Net Worth**"), as evidenced by a certified financial statement from Lessee's certified public accountants or other evidence reasonably satisfactory to Lessor.  In the event Lessee fails to maintain the Required Net Worth, the applicable deductible amount shall not exceed Ten Thousand Dollars ($10,000.00) per occurrence.  For earthquake insurance, Lessee shall have the right, at its option, to be added to Lessor's blanket policy or policies maintained by Lessor for its properties.  Notwithstanding any contrary provisions of this Section, the deductible amount for earthquake insurance shall not exceed ten percent (10%) of the loss insured thereby, and such deductible requirement shall be specifically set forth in any insurance certificate required to be delivered to Lessor.

(b)     Rental Value.  The Insuring Party shall, in addition, obtain and keep in force during the term of this Lease a policy or policies in the name of Lessor, with loss payable to Lessor and Lender(s), insuring the loss of the full rental and other charges payable by Lessee to Lessor under this Lease for one (1) year (including all real estate taxes, insurance costs, and any scheduled rental increases).  Said insurance shall provide that in the event this Lease is terminated by reason of an Insured Loss, the period of indemnity for such coverage shall be extended beyond the date of the completion of repairs or replacement of the Premises, to provide for one (1) full year's loss of rental revenues from the date of any such loss.  Said insurance shall contain an agreed valuation provision in lieu of any coinsurance clause, and the amount of coverage shall be adjusted annually to reflect the projected rental income, property taxes, insurance premium costs and other expenses, if any, otherwise payable by Lessee, for the next twelve (12)-month period.  Lessee shall be liable for any deductible amount in the event of such loss.

(c)     Adjacent Premises.  If the Premises are part of a larger building, or if the Premises are part of a group of buildings owned by Lessor which are adjacent to the Premises, Lessee shall pay for any increase in the premiums for the property insurance of such building or buildings if said increase is caused by Lessee's acts, omissions, use or occupancy of the Premises.

(d)     Lessee's Improvements.  If the Lessor is the Insuring Party, Lessor shall not be required to insure Lessee Owned Alterations and/or Utility Installations unless the item in question has become the property of Lessor under the terms of this Lease.  If Lessee is the Insuring Party, the policy carried by Lessee under this Paragraph 8.3 shall insure Lessee Owned Alterations and/or Utility Installations.

8.4    **Lessee's Property Insurance**.  Subject to the requirements of Paragraph 8.5, Lessee at its cost shall either by separate policy or, at Lessor's option, by endorsement to a policy already carried, maintain insurance coverage on all of Lessee's personal property and Lessee Owned Alterations and/or Utility Installations in, on, or about the Premises similar in coverage to that carried by the Insuring Party under Paragraph 8.3.  Such insurance shall be 90% replacement cost coverage with a commercially reasonable deductible.  The proceeds from any such insurance shall be used by Lessee for the replacement of personal property or the restoration of Lessee Owned Alterations and/or Utility Installations unless this Lease is terminated as provided in Paragraph 9, in which event Lessee may retain such insurance proceeds, except for the unamortized costs of any allowance provided by Lessor to Lessee which shall be paid to Lessor.  Lessee shall be the Insuring Party with

-12-

Lessor's Initials
Lessee's Initials

respect to the insurance required by this Paragraph 8.4 and shall provide Lessor with written evidence that such insurance is in force.

8.5    **Insurance Policies.**  Insurance required hereunder shall be in companies duly licensed to transact business in the state where the Premises are located, and maintaining during the policy term a "General Policyholders Rating" of at least A-:X, or such other rating as may be required by a Lender having a lien on the Premises, as set forth in the most current issue of "Best's Insurance Guide."  Lessee shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 8.  If Lessee is the Insuring Party, Lessee shall cause to be delivered to Lessor certified copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with the insured and loss payable clauses and separate endorsements attached thereto as required by this Lease.  Such policies or certificates shall separately identify the coverage amounts for general liability, Premises damage, earthquake, loss of rental (including all real estate taxes, insurance costs and any scheduled rental increases) for a period of at least one year and Lessee's personal property.  No such policy shall be cancelable or subject to modification except after thirty (30) days (ten (10) days in the event of non-payment of premiums) prior written notice to Lessor.  Lessee shall, at least ten (10) days prior to the expiration of such policies, furnish Lessor with evidence of renewals or "insurance binders" evidencing renewal thereof, or Lessor may, after written notice and the expiration of the applicable cure period (which in no event shall be longer than nine (9) days in the event of non-payment of premiums), order such insurance and charge the cost thereof to Lessee, which amount shall be payable by Lessee to Lessor upon demand.  If the Insuring Party shall fail to procure and maintain the insurance required to be carried by the Insuring Party under this Paragraph 8 after written notice and the expiration of the applicable cure period, the other Party may, but shall not be required to, procure and maintain the same, but at Lessee's expense.

8.6    **Waiver of Subrogation.**  Without affecting any other rights or remedies, Lessee and Lessor ("**Waiving Party**") each hereby release and relieve the other, and waive their entire right to recover damages (whether in contract or in tort) against the other, for loss of or damage to the Waiving Party's property arising out of or incident to the perils required to be insured against under Paragraph 8.  The effect of such releases and waivers of the right to recover damages shall not be limited by the amount of insurance carried or required or by any deductibles applicable thereto.

8.7    **Indemnity.**  Except for Lessor's gross negligence, willful misconduct and/or breach of express warranties, Lessee shall indemnify, protect, defend, and hold harmless the Premises, Lessor and its agents, Lessor's master or ground lessor, partners and Lenders, from and against any and all claims, loss of rents and/or damages, costs, liens, judgments, penalties, permits, attorneys' and consultants' fees, expenses and/or liabilities arising out of, involving, or in dealing with, the occupancy of the Premises by Lessee, the conduct of Lessee's business, any act, omission or neglect of Lessee, its agents, contractors, employees or invitees, and out of any Default or Breach by Lessee in the performance in a timely manner of any obligation on Lessee's part to be performed under this Lease.  The foregoing shall include, but not be limited to, the defense or pursuit of any claim or any action or proceeding involved therein, and whether or not (in the case of claims made against Lessor) litigated and/or reduced to judgment, and whether well founded or not.  In case any action or proceeding be brought against Lessor by reason of any of the foregoing matters, Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense.  Lessor need not have first paid any such claim in order to be so indemnified.  Lessee shall not be liable for any damage or injury to the extent and in the proportion that the same is ultimately determined to be attributable to the gross

-13-

Lessor's Initials
Lessee's Initials

negligence or willful misconduct of Lessor or its designated agents, servants, contractors or employees, and Lessor shall reimburse Lessee its reasonable costs of defense to the extent and proportion of Lessor's negligence or willful misconduct.

8.8     **Exemption of Lessor from Liability**.  Except for Lessor's gross negligence, willful misconduct, Lessor shall not be liable for injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain or from the breakage, leakage, obstruction or other defects of pipes, fires sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the Building, or from other sources or places, and regardless of whether the use of such damage or injury or the means of repairing the same is accessible or not.  Lessor shall not be liable for any damages arising from any act or neglect of any other tenant of Lessor. Notwithstanding Lessor's negligence, Lessor shall under no circumstances be liable for injury to Lessee's business or for any loss of income or profit therefrom.

9.     **DAMAGE OR DESTRUCTION.**

9.1     **Definitions**.

(a)     "**Premises Partial Damage**" shall mean damage or destruction to the improvements on the Premises, other than Lessee Owned Alterations and/or Utility Installations, the repair cost of which damage or destruction is less than fifty percent (50%) of the then Replacement Cost of the Premises immediately prior to such damage or destruction, excluding from such calculation the value of the land and Lessee Owned Alterations and/or Utility Installations.

(b)     "**Premises Total Destruction**" shall mean damage or destruction to the Premises, other than Lessee Owned Alterations and/or Utility Installations the repair cost of which damage or destruction is fifty percent (50%) or more of the then Replacement Cost of the Premises immediately prior to such damage or destruction, excluding from such calculation the value of the land and Lessee Owned Alterations and/or Utility Installations.

(c)     "**Insured Loss**" shall mean damage or destruction to improvements on the Premises, other than Lessee Owned Alterations and/or Utility Installations, which was caused by an event required to be covered by the insurance described in Subparagraph 8.3(a), irrespective of any deductible amounts or coverage limits involved.

(d)     "**Replacement Cost**" shall mean the cost to repair or rebuild the improvements owned by Lessor at the time of the occurrence to their condition existing immediately prior thereto, including demolition, debris removal and upgrading required by the operation of applicable building codes, ordinances or laws, and without deduction for depreciation.

(e)     "**Hazardous Substance Condition**" shall mean the occurrence or discovery of a condition involving the presence of, or a contamination by, a Hazardous Substance as defined in Subparagraph 6.2(a), in, on, or under the Premises.

9.2     **Partial Damage-Insured Loss**.  If a Premises Partial Damage that is an Insured Loss occurs, then Lessor shall, to the extent of the insurance proceeds received by Lessor,

-14-

Lessor's Initials _____
Lessee's Initials _____

DOCSOC\844426v3\11533.0135

repair such damage (but not Lessee's Trade Fixtures or Lessee Owned Alterations and/or Utility Installations) as soon as reasonably possible and this Lease shall continue in full force and effect; provided, however, that Lessee shall, at Lessor's election, make the repair of any damage or destruction the total cost to repair of which is $10,000.00 or less, and in such event, Lessor shall make the insurance proceeds available to Lessee on a reasonable basis for that purpose. Notwithstanding the foregoing, if the required insurance was not in force or the insurance proceeds are not sufficient to effect such repair, the Insuring Party shall promptly contribute the shortage in proceeds (except as to the deductible which is Lessee's responsibility) as and when required to complete said repairs. In the event, however, the shortage in proceeds was due to the fact that, by reason of the unique nature of the improvements, full replacement cost insurance coverage was not commercially reasonable and available, Lessor shall have no obligation to pay for the shortage in insurance proceeds or to fully restore the unique aspects of the Premises unless Lessee provides Lessor with the funds to cover same, or adequate assurance thereof, within ten (10) days following receipt of written notice of such shortage and request therefor. If Lessor receives said funds or adequate assurance thereof within said ten (10) day period, the Party responsible for making the repairs shall complete them as soon as reasonably possible and this Lease shall remain in full force and effect. If Lessor does not receive such funds or assurance within said period, Lessor may nevertheless elect by written notice to Lessee within ten (10) days thereafter to make such restoration and repairs as is commercially reasonable with Lessor paying any shortage in proceeds, in which case this Lease shall remain in full force and effect. If in such case Lessor does not so elect, then this Lease shall terminate sixty (60) days following the occurrence of the damage or destruction. Unless otherwise agreed, Lessee shall in no event have any right to reimbursement from Lessor for any funds contributed by Lessee to repair any such damage or destruction. Premises Partial Damage due to flood or earthquake shall be subject to Paragraph 9.3 rather than Paragraph 9.2, notwithstanding that there may be some insurance coverage, but the net proceeds of any such insurance shall be made available for the repairs if made by either Party.

      9.3    **Partial Damage-Uninsured Loss**. If a Premises Partial Damage that is not an Insured Loss occurs, unless caused by a negligent or willful act of Lessee (in which event Lessee shall make the repairs at Lessee's expense and this Lease shall continue in full force and effect, but subject to Lessor's rights under Paragraph 13), Lessor may at Lessor's option either:  (a) repair such damage as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (b) give written notice to the Lessee within thirty (30) days after receipt by Lessor of knowledge of the occurrence of such damage of Lessor's desire to terminate this Lease as of the date sixty (60) days following the giving of such notice. In the event Lessor elects to give such notice of Lessor's intent to terminate this Lease, Lessee shall have the right within ten (10) days after the receipt of such notice to give written notice to Lessor of Lessee's commitment to pay for the repair of such damage at Lessee's expense and without reimbursement from Lessor (except as otherwise provided herein).  Lessee shall provide Lessor with the required funds or satisfactory assurance thereof within thirty (30) days following Lessee's said commitment.  In such event, this Lease shall continue in full force and effect, and Lessor shall proceed to make such repairs as soon as reasonably possible and the required funds are available and Lessor shall contribute an amount not to exceed One Hundred Thousand Dollars ($100,000.00) for the costs of repair of such damage.  If Lessee does not give such notice and provide the funds or assurance thereof within the time specified above, this Lease shall terminate as of the date specified in Lessor's notice of termination.

      9.4    **Intentionally Omitted**.

Lessor's Initials _____
Lessee's Initials _____

9.5 **Damage Near End of Term.** If at any time during the last six (6) months of the term of this Lease there is damage for which the cost to repair exceeds one (1) month's Base Rent, whether or not an Insured Loss, Lessor may, at Lessor's option, terminate this Lease effective sixty (60) days following the date of occurrence of such damage by giving written notice to Lessee of Lessor's election to do so within thirty (30) days after the date of occurrence of such damage.

9.6 **Abatement of Rent; Lessee's Remedies.**

(a) In the event of damage described in Paragraph 9.2 (Partial Damage-Insured), whether or not Lessor or Lessee repairs or restores the Premises, the Base Rent, Real Property Taxes, insurance premiums, and other charges, if any, payable by Lessee hereunder for the period during which such damage, its repair or the restoration continues, (not to exceed the period for which rental value insurance is required under Subparagraph 8.3(b)), shall be abated in proportion to the degree to which Lessee's use of the Premises is impaired. Except for abatement of Base Rent, Real Property Taxes, insurance premiums, and other charges, if any, aforesaid, all other obligations of Lessee hereunder shall be performed by Lessee, and Lessee shall have no claim against Lessor for any damage suffered by reason of any such repair or restoration.

(b) If Lessor shall be obligated to repair or restore the Premises under the provisions of this Paragraph 9 and shall not commence, in a substantial and meaningful way, the repair or restoration of the Premises within one hundred eighty (180) days after the date of the casualty, Lessee may, at any time prior to the commencement of such repair or restoration, give written notice to Lessor and to any Lenders of which Lessee has actual notice of Lessee's election to terminate this Lease on a date not less than sixty (60) days following the giving of such notice. If Lessee gives such notice to Lessor and such Lenders and such repair or restoration is not commenced with thirty (30) days after receipt of such notice, this Lease shall terminate as of the date specified in said notice. If Lessor or a Lender commenced the repair or restoration of the Premises within thirty (30) days after receipt of such notice, this Lease shall continue in full force and effect. **"Commence"** as used in this Paragraph shall mean beginning of the actual work on the Premises, whichever first occurs.

9.7 **Intentionally Omitted.**

9.8 **Termination-Advance Payments.** Upon termination of this Lease pursuant to this Paragraph 9, an equitable adjustment shall be made concerning advance Base Rent and any other advance payments made by Lessee to Lessor. Lessor shall, in addition, return to Lessee so much of Lessee's Security Deposit as has not been, or is not then required to be, used by Lessor under the terms of this Lease.

9.9 **Waive Statutes.** Lessor and Lessee agree that the terms of this Lease shall govern the effect of any damage to or destruction of the Premises with respect to the termination of this Lease and hereby waive the provisions of any present or future stature to the extent inconsistent herewith.

10. **REAL PROPERTY TAXES.**

10.1 **Payment of Taxes.** Lessee shall pay the Real Property Taxes, as defined in Paragraph 10.3, applicable to the Premises during the term of this Lease. Subject to Paragraph 10.2, all such payments shall be made, at Lessor's election, (a) within thirty (30) days after receipt of paid

-16-

Lessor's Initials
Lessee's Initials

tax bill from Lessor if Lessor elects to pay the Real Property Taxes, or (b) at least ten (10) days prior to the delinquency date of the applicable installment if Lessor requires Lessee to pay the Real Property Taxes directly to the taxing authority. Lessee shall promptly furnish Lessor with satisfactory evidence that such Real Property Taxes have been paid. If any such Real Property Taxes to be paid by Lessee shall cover any period of time prior to or after the expiration or earlier termination of the term hereof, Lessee's share of such Real Property Taxes shall be equitably prorated to cover only the period of time within the tax fiscal year this Lease is in effect, and Lessor shall reimburse Lessee for any overpayment after such proration. If Lessee shall fail to pay any Real Property Taxes required by this Lease to be paid by Lessee, Lessor shall have the right to pay the same, and Lessee shall reimburse Lessor therefor upon demand.

10.2   **Advance Payment**.   In order to insure payment when due and before delinquency of any or all Real Property Taxes, if Lessee fails to pay Rent timely more than once in any consecutive twelve-month period, Lessor reserves the right at Lessor's option, to estimate the current Real Property Taxes applicable to the Premises, and to require such current year's Real Property Taxes to be paid in advance to Lessor by Lessee, either (a) in a lump sum amount equal to the installment due, at least twenty (20) days prior to the applicable delinquency date or, (b) monthly in advance with the payment of Base Rent. If Lessor elects to require payment monthly in advance, the monthly payment shall be that equal monthly amount which, over the number of months remaining before the month in which the applicable tax installment would become delinquent (and without interest thereon), would provide a fund large enough to fully discharge before delinquency the estimated installment of Real Property Taxes to be paid. When the actual amount of the applicable tax bill is known, the amount of such equal months' advance payment shall be adjusted as required to provide the funds needed to pay the applicable taxes before delinquency. If the amounts paid to Lessor by Lessee under the provisions of this Paragraph are insufficient to discharge the obligations of Lessee to pay such Real Property Taxes as the same become due, Lessee shall pay to Lessor, upon Lessor's demand, such additional sums as are necessary to pay such obligations. All moneys paid to Lessor under this Paragraph may be intermingled with other moneys of Lessor and shall not bear interest. In the event of a Breach by Lessee in the performance of the obligations of Lessee under this Lease, then any balance of funds paid to Lessor under the provisions of this Paragraph may, subject to proration as provided in Paragraph 10.1, at the option of Lessor, be treated as an additional Security Deposit under Paragraph 5.

10.3   **Definition**.   As used herein, the term **"Real Property Taxes"** shall include any form of real estate tax or assessment, general , special, ordinary or extraordinary, and any license fee (other than Lessor's business license fee), commercial rental tax, improvement bond or bonds, levy or tax, (other than inheritance, personal income or estate taxes) imposed upon the Premises by any authority having the direct or indirect power to tax, including any city, state or federal government, or any school, agricultural, sanitary, fire, street, drainage or other improvement district thereof, levied against any legal or equitable interest of Lessor in the Premises or in the Real Property, Lessor's right to rent or other income therefrom, and/or Lessor's business of leasing the Premises. The term **"Real Property Taxes"** shall also include any tax, fee, levy, assessment or charge, or any increase therein, imposed by reason of events occurring, or changes in applicable law taking effect, during the term of this Lease, including but not limited to a change in the ownership of the Premises or in the improvements thereon, the execution of this Lease, or any modification, amendment or transfer thereof, and whether or not contemplated by the Parties, reimbursement to Lessor for any third party services to reevaluate and lower Real Property Taxes.

10.4   **Intentionally Omitted**.

-17-

Lessor's Initials
Lessee's Initials

DOCSOC\844426v3\11533.0135

10.5    **Personal Property Taxes**. Lessee shall pay prior to delinquency all taxes assessed against and levied upon Lessee Owned Alterations and/or Utility Installations, Trade Fixtures, furnishings, equipment and all personal property of Lessee contained in the Premises or elsewhere. When possible, Lessee shall cause its Trade Fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Lessor. If any of Lessee's said personal property shall be assessed with Lessor's real property, Lessee shall pay Lessor the taxes attributable to Lessee within ten (10) days prior to delinquency.

11.    **UTILITIES**. Lessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon.

12.    **ASSIGNMENT AND SUBLETTING**.

12.1    **Lessor's Consent Required**.

(a)    Lessee shall not voluntarily or by operation of law assign, transfer, mortgage or otherwise transfer or encumber (collectively, **"Assignment"**) or sublet all or any part of Lessee's interest in this Lease or in the Premises without Lessor's prior written consent given under and subject to the terms of Paragraph 36.

(b)    A change in the control of Lessee shall constitute an assignment requiring Lessor's consent. The transfer, on a cumulative basis, of twenty-five percent (25%) or more of the voting control of Lessee shall constitute a change in control for this purpose.

(c)    An assignment or subletting of Lessee's interest in this Lease without Lessor's specific prior written consent shall be a Default curable after notice per Paragraph 13.1(c).

(d)    Provided that Lessee also remains liable under this Lease, Lessee may, upon written notice to Lessor, but without obtaining Lessor's prior written consent, without constituting a default under this Lease, and without triggering any recapture or termination rights in favor of Lessor, assign this Lease or sublet all or any portion of the Premises to (i) any parent, subsidiary or affiliated entity of Lessee, or (ii) any person or entity that acquires all or substantially all of Lessee's assets. In addition, an assignment shall not include, and Lessor's consent shall not be required for, any sale or other transfer of any shares of Lessee's stock pursuant to any initial or subsequent public offering by Lessee pursuant to the Securities Act of 1933.

12.2    **Terms and Conditions Applicable to Assignment and Subletting**.

(a)    Regardless of Lessor's consent, any assignment or subletting shall not be effective (i) without the express written assumption by such assignee or sublessee of the obligations of Lessee under this Lease, (ii) release Lessee of any obligations hereunder, or (iii) alter the primary liability of Lessee for the payment of Base Rent and other sums due Lessor hereunder or for the performance of any other obligations to be performed by Lessee under this Lease.

(b)    Lessor may accept any rent or performance of Lessee's obligations from any person other than Lessee pending approval or disapproval of an assignment. Neither a delay in the approval or disapproval of such assignment nor the acceptance of any rent or performance shall constitute a waiver or estoppel of Lessor's right to exercise its remedies for the Default or Breach by Lessee of any of the terms, covenants or conditions of this Lease.

-18-

Lessor's Initials
Lessee's Initials

(c)     The consent of Lessor to any assignment or subletting shall not constitute consent to any subsequent assignment or subletting by Lessee or to any subsequent or successive assignment or subletting by the sublessee. However, Lessor may consent to subsequent sublettings and assignments of the sublease or any amendments or modifications thereto without notifying Lessee or anyone else liable on this Lease or sublease and without obtaining their consent, and such action shall not relieve such persons from liability under this Lease or the sublease.

(d)     In the event of any Default or Breach of Lessee's obligations under this Lease, Lessor may proceed directly against Lessee, any Guarantors or anyone else responsible for the performance of the Lessee's obligations under this Lease, including the sublessee, without first exhausting Lessor's remedies against any other person or entity responsible therefor to Lessor, or any security held by Lessor or Lessee.

(e)     Each request for consent to an assignment or subletting shall be in writing, accompanied by information relevant to Lessor's determination as to the financial and operational responsibility and appropriateness of the proposed assignee or sublessee, including, but not limited to, the intended use and/or required modification of the Premises, if any, and if such request for consent is made more than once in any consecutive twenty-four (24)-month period, Lessee shall also deliver a non-refundable deposit of $1,000.00 or one percent (1%) of the current monthly Base Rent, whichever is greater, as reasonable consideration for Lessor's considering and processing the request for consent. Lessee agrees to provide Lessor with such other or additional information and/or documentation as may be reasonably requested by Lessor.

(f)     Any assignee of, or sublessee under, this Lease shall, by reason of accepting such assignment or entering into such sublease, be deemed, for the benefit of Lessor, to have assumed and agreed to conform and comply with each and every term, covenant, condition, and obligation herein to be observed or performed by Lessee during the term of said assignment or sublease, other than such obligations as are contrary to or inconsistent with the provisions of an assignment or sublease to which Lessor has specifically consented in writing.

(g)     The occurrence of a transaction described in Paragraph 12.1(c) shall give Lessor the right (but not the obligation) to require that the Security Deposit be reinstated and/or increased to an amount equal to six (6) times the then monthly Base Rent, and Lessor may make the actual receipt by Lessor of the amount required to establish such Security Deposit a condition to Lessor's consent to such transaction.

(h)     Lessor, as a condition to giving its consent to any assignment or subletting, may require that the amount and adjustment structure of the rent payable under this Lease be adjusted to what is then the market value and/or adjustment structure for property similar to the Premises as then constituted.

(i)     As a reasonable condition to Lessor's consent to any assignment or sublease ("**Transfer**"), Lessee shall pay to Lessor fifty percent (50%) of any Transfer Premium. "**Transfer Premium**" shall refer to all base rent, additional rent, and other consideration actually received by Lessee from Transferee (including key money and bonus money and any payment in excess of fair market value for services rendered by Lessee to Transferee or for assets, fixtures, inventory, equipment, or furniture transferred by Lessee to Transferee in connection with the assignment or sublease) ("**Transfer Rent**"), after deducting the Base Rent payable by Lessee under this Lease for the portion of the Premises subject to Transfer ("**Subject Space**") and all reasonable

-19-

Lessor's Initials _____
Lessee's Initials _____

out-of-pocket costs and expenses incurred by Lessee in such Transfer, including, without limitation, brokerage fees and tenant improvement costs. If part of the Transfer Premium is payable by Transferee other than in cash, Lessor's share of that noncash consideration shall be in a form reasonably satisfactory to Lessor. Lessee shall pay the Transfer Premium on a monthly basis.

(j)    On Lessor's request, Lessee shall furnish a complete statement, certified by an independent certified public accountant or Lessee's chief financial officer, describing in detail the computation of any Transfer Premium that Lessee has derived or will derive from the Transfer. If Lessor's independent certified public accountant finds that the Transfer Premium for any Transfer has been understated, Lessee shall, within thirty (30) days after demand, pay the deficiency and Lessor's costs of that audit. If it is determined that Lessee has intentionally understated the Transfer Premium by more than ten percent (10%) Lessor may, at its option, declare Lessee in Breach of this Lease under <u>Paragraph 13.1</u> of this Lease.

(k)    Despite any other provision of this <u>Paragraph 12</u>, Lessor has the option, by written notice to Lessee ("**Recapture Notice**") within thirty (30) days after receiving notice from Lessee of Lessee's intent to Transfer all or a portion of its interest in the Premises ("**Transfer Notice**") to recapture the Subject Space by terminating this Lease for the Subject Space or taking an assignment or a sublease of the Subject Space from Lessee. A timely Recapture Notice terminates this Lease or creates an assignment or a sublease for the Subject Space for the same term as the proposed Transfer, effective as of the date specified in the Transfer Notice. If Lessor declines or fails timely to deliver a Recapture Notice, Lessor shall have no further right under this <u>Paragraph 12</u> to the Subject Space unless Lessee fails to effect such Transfer within one hundred eighty (180) days or it becomes available again after Transfer by Lessee.

(l)    To determine the new Base Rent under this Lease if Lessor recaptures the Subject Space, the original Base Rent under this Lease shall be multiplied by a fraction, the numerator of which is the rentable square feet of the Premises retained by Lessee after Lessor's recapture and the denominator of which is the total rentable square feet of the Premises before Lessor's recapture. This Lease as so amended shall continue thereafter in full force and effect. Either Party may require written confirmation of the amendments to this Lease necessitated by Lessor's recapture of the Subject Space. If Lessor recaptures the Subject Space, Lessor shall, at Lessor's sole expense, construct any partitions required to segregate the Subject Space from the remaining Premises retained by Lessee. Lessee shall, however, pay for painting, covering, or otherwise decorating the surfaces of the partitions facing the remaining Premises retained by Lessee.

12.3    **Additional Terms and Conditions Applicable to Subletting**. The following terms and conditions shall apply to any subletting by Lessee of all or any part of the Premises and shall be deemed included in all subleases under this Lease whether or not expressly incorporated therein:

(a)    Lessee hereby assigns and transfers to Lessor all of Lessee's interest in all rentals and income arising from any sublease of all or a portion of the Premises heretofore or hereafter made by Lessee, and Lessor may collect such rent and income and apply same toward Lessee's obligations under this Lease; provided, however, that until a Breach (as defined in <u>Paragraph 13.1</u>) shall occur in the performance of Lessee's obligations under this Lease, Lessee may, except as otherwise provided in this Lease, receive, collect and enjoy the rents accruing under such sublease. Lessor shall not, by reason of this or any other assignment of such sublease to Lessor, nor by reason of the collection of the rents from a sublessee, be deemed liable to the sublessee for any

-20-

Lessor's Initials _____
Lessee's Initials _____

failure of Lessee to perform and comply with any of Lessee's obligations to such sublessee under such sublease. Lessee hereby irrevocably authorizes and directs any such sublessee, upon receipt of a written notice from Lessor stating that a Breach exists in the performance of Lessee's obligations under this Lease, to pay to Lessor the rents and other charges due and to become due under the sublease. Sublessee shall rely upon any such statement and request from Lessor and shall pay such rents and other charges to Lessor without any obligation or right to inquire as to whether such Breach exists and notwithstanding any notice from or claim from Lessee to the contrary. Lessee shall have no right or claim against said sublessee, or, until the Breach has been cured, against Lessor, for any such rents and other charges so paid by said sublessee to Lessor.

(b)     In the event of a Breach by Lessee in the performance of its obligations under this Lease, Lessor, at its option and without any obligation to do so, may require any sublessee to attorn to Lessor, in which event Lessor shall undertake the obligations of the sublessor under such sublease from the time from the exercise of said option to the expiration of such sublease; provided, however, Lessor shall not be liable for any prepaid rents or security deposit paid by such sublessee to such sublessor or for any other prior default or breaches of such sublessor under such sublease.

(c)     Any matter or thing requiring the consent of the sublessor under a sublease shall also require the consent of Lessor herein.

(d)     No sublessee shall further assign or sublet all or any part of the Premises without Lessor's prior written consent.

(e)     Lessor shall deliver a copy of any notice of Default or Breach by Lessee to the sublessee, who shall have the right to cure the Default of Lessee within the grace period, if any, specified in such notice. The sublessee shall have a right of reimbursement and offset from and against Lessee for any such Defaults cured by the sublessee.

13.   **DEFAULT; BREACH; REMEDIES**.

13.1    **Default; Breach**. Lessor and Lessee agree that if an attorney is consulted by Lessor in connection with a Lessee Default or Breach (as hereinafter defined), $350.00 is a reasonable minimum sum per such occurrence for legal services and costs in the preparation and service of a notice of Default, and that Lessor may include the cost of such services and costs in said notice as rent due and payable to cure said Default, provided that Lessee is in fact in Default. A "**Default**" is defined as a failure by the Lessee to observe, comply with or perform any of the terms, covenants, conditions or rules applicable to Lessee under this Lessee. A "**Breach**" is defined as the occurrence of any one or more of the following Defaults, followed by the failure by Lessee to cure such Default prior to the expiration of the applicable grace period, which Breach shall entitle Lessor to pursue the remedies set forth in Paragraphs 13.2 and/or 13.3. Any notices provided below in this Paragraph 13.1 shall be in lieu of, and not in addition to, any notices required by any applicable unlawful detainer statutes.

(a)     The vacating of the Premises without the intention to reoccupy same, or the abandonment of the Premises without paying Rent.

(b)     Except as expressly otherwise provided in this Lease, the failure by Lessee to make any payment of Base Rent or any other monetary payment required to be made be

Lessor's Initials
Lessee's Initials

Lessee hereunder, whether to Lessor or to a third party, as and when due, the failure by Lessee to provide Lessor with reasonable evidence of insurance or surety bond required under this Lease, or the failure of Lessee to fulfill any obligation under this Lease which endangers or threatens life or property where any such failure continues for a period of five (5) business days following written notice thereof by or on behalf of Lessor to Lessee

(c)    Except as expressly otherwise provided this Lease, the failure by Lessee to provide Lessor with reasonable written evidence (in duly executed original form, if applicable) of (i) compliance with Applicable Law per Paragraph 6.3, (ii) the inspection, maintenance and service contracts required under Subparagraph 7.1(b), (iii) the rescission of an unauthorized assignment or subletting under Subparagraph 12.1(b), (iv) a Tenancy Statement per Paragraphs 16 or 37, (v) the subordination or non-subordination of this Lease per Paragraph 30, (vi) the guaranty of the performance of Lessee's obligations under this Lease if required under Paragraphs 1.11 and 37, (vii) the execution of any document requested under Paragraph 42 (Easements), or (viii) any other documentation or information which Lessor may reasonably require of Lessee under the terms of this Lease, where any such failure continues for a period of fifteen (15) days following written notice by or on behalf of Lessor to Lessee.

(d)    A Default by Lessee as to the terms, covenants, conditions or provisions of this Lease or the rules adopted under Paragraph 40 hereof, that are to be observed, complied with or performed by Lessee, other than those described in Subparagraphs 13.1(a)13.1(b)13.1(c), above, where such Default continues for a period of thirty (30) days after written notice thereof by or on behalf of Lessor to Lessee; provided, however, that if the nature of Lessee's Default is such that more than thirty (30) days are reasonably required for its cure, then it shall not be deemed to be a Breach of this Lease by Lessee if Lessee commences such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion.

(e)    The occurrence of any of the following events: (i) the making by Lessee of any general arrangement or assignment for the benefit of creditors; (ii) Lessee's becoming a "debtor" as defined in 11 U.S.C. § 101 or any successor statute thereto (unless, in the case of a petition filed against Lessee, the same is dismissed within sixty (60) days ); (iii) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where possession is not restored to Lessee within thirty (30) days; or (iv) the attachment, execution or other judicial seizure of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where such seizure is not discharged within thirty (30) days; provided, however, in the event that any provision of this Subparagraph 13.1(e) is contrary to any Applicable Law, such provision shall be of no force or effect, and not affect the validity of the remaining provisions.

(f)    The discovery by Lessor that any financial statement given to Lessor by Lessee was materially false.

13.2    **Remedies.** If Lessee fails to perform any affirmative duty or obligation of Lessee under this Lease, within fifteen (15) days after written notice to Lessee (or in case of an emergency, without notice), Lessor may at its option (but without obligation to do so), perform such duty or obligation on Lessee's behalf, including, but not limited to, the obtaining of reasonably required bonds, insurance policies, or governmental licenses, permits or approvals. Notwithstanding the foregoing, if, in Lessor's reasonable judgment, an emergency shall exist, Lessor may cure such Default without any prior notice to Lessee except that Lessor shall use reasonable efforts to provide

-22-

Lessor's Initials _____
Lessee's Initials _____

Lessee notice (which may be telegraphic or telephonic).  The costs and expenses of any such performance by Lessor shall be due and payable by Lessee to Lessor within fifteen (15) days after Lessee's receipt of invoice therefor.  If any check given to Lessor by Lessee shall not be honored by the bank upon which it is drawn, Lessor, at its option, may require all future payments to be made under this Lease by Lessee to be made only by cashier's check.  In the event of a Breach of this Lease by Lessee, as defined in Paragraph 13.1, which is not cured within five (5) business days of the delivery of written notice from Lessor specifying such Breach (which notice shall be in addition to and not in lieu of the notice given pursuant to Section 13.1), and without limiting Lessor in the exercise of any right or remedy which Lessor may have by reason of such Breach, Lessor may:

(a)    Terminate Lessee's right to possession of the Premises by any lawful means, in which case this Lease and the term hereof shall terminate and Lessee shall immediately surrender possession of the Premises to Lessor.  In such event Lessor shall be entitled to recover from Lessee: (i) the worth at the time of the award of the unpaid rent which had been earned at the time of termination; (ii) the worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (iii) the worth at the time of award the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the Lessee proves could be reasonably avoided; and (iv) any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, including, but not limited to, the cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises, reasonable attorneys' fees, and that portion of the leasing commission paid by Lessor applicable to the unexpired term of this Lease.  The worth at the time of award of the amount referred to in provision (iii) of the prior sentence shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).  Efforts by Lessor to mitigate damages caused by Lessee's Default or Breach of this Lease shall not waive Lessor's right to recover damages under this Paragraph.  If termination of this Lease is obtained through the provisional remedy of unlawful detainer, Lessor shall have the right to recover all or any part thereof in a separate suit for such rent and/or damages.  If a notice and grace period required under Subparagraphs 13.1(b), 13.1(c)13.1(d) was not previously given, a notice to pay rent or quit, or to perform or quit, as the case may be, given to Lessee under any statute authorizing the forfeiture of Leases for unlawful detainer shall also constitute the applicable notice for grace period required by Subparagraphs 13.1(b), 13.1(c)13.1(d).    In such case, the applicable grace period under Subparagraphs 13.1(b), 13.1(c)13.1(d) and under the unlawful detainer statute shall run concurrently after the one such statutory notice, and the failure of Lessee to cure the Default within the greater of the two such grace periods shall constitute both an unlawful detainer and a Breach of this Lease entitling Lessor to the remedies provided for in this Lease and/or by said statute.

(b)    Continue this Lease and Lessee's right to possession in effect (in California under California Civil Code Section 1951.4) after Lessee's Breach and abandonment and recover the rent as it becomes due, provided Lessee has the right to sublet or assign, subject only to reasonable limitations.  See Paragraphs 12 and 36 for the limitations on assignment and subletting which limitations Lessee and Lessor agree are reasonable.  Acts of maintenance or preservation, efforts to relet the Premises, or the appointment of a receiver to protect the Lessor's interest under this Lease, shall not constitute a termination of Lessee's right to possession.

-23-

Lessor's Initials _____
Lessee's Initials _____

(c)     Pursue any other remedy now or hereafter available to Lessor under the laws or judicial decisions of the state wherein the Premises are located.

(d)     The expiration or termination of this Lease and/or the termination of Lessee's right to possession shall not relieve Lessee from liability under any indemnity provisions of this Lease as to matters occurring or accruing during the term hereof or by reason of Lessee's occupancy of the Premises.

13.3    **Inducement Recapture in Event of Breach**.  Any agreement by Lessor for free or abated rent or other charges applicable to the Premises, or for the giving or paying by Lessor to or for Lessee of any cash or other bonus, inducement or consideration for Lessee's entering into this Lease, all of which concessions are hereinafter referred to as **"Inducement Provisions**," shall be deemed conditioned upon Lessee's full and faithful performance of all of the terms, covenants, and conditions of this Lease to be performed or observed by Lessee during the term hereof as the same may be extended.   Upon the occurrence of a Breach of this Lease by Lessee, as defined in Paragraph 13.1, any such Inducement Provision shall automatically be deemed deleted from this Lease and of no further force or effect, and any rent or other charges, bonus, inducement or consideration theretofore abated, given or paid by Lessor under such an Inducement Provision shall be immediately due and payable by Lessee to Lessor, and recoverable by Lessor as additional rent due under this Lease, notwithstanding any subsequent cure of said Breach by Lessee.   The acceptance by Lessor of rent or the cure of the Breach which initiated the operation of this Paragraph shall not be deemed a waiver by Lessor of the provisions of this Paragraph unless specifically so stated in writing by Lessor at the time of such acceptance.

13.4    **Late Charges**.  Lessee hereby acknowledges that late payment by Lessee to Lessor of rent and other sums due hereunder will cause Lessor to incur costs not contemplated by this Lease.   Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon Lessor by the terms of any ground lease, mortgage or trust deed covering the Premises.   Accordingly, if any installment of rent or any other sum due from Lessee shall not be received by Lessor or Lessor's designee within five (5) days after such amount shall be due more than two (2) times in any consecutive twelve (12)-month period, then, without any requirement for notice to Lessee, Lessee shall pay to Lessor a late charge equal to six percent (6%) of such overdue amount. The Parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of late payment by Lessee.  Acceptance of such late charge by Lessor shall in no event constitute a waiver of Lessee's Default or Breach with respect to overdue amount, nor prevent Lessor from exercising any of the other rights and remedies granted hereunder.  No endorsement or statement on any check or letter accompanying a payment or check shall be considered an accord and satisfaction.  Any payments received by Lessor from Lessee shall be applied first to any existing past due balance with the remainder, if any, applied to current charges.  Where a past due balance exists, application of payments in this manner does not waive Lessor's right to assess and collect late charges.  Lessor's receipt of monies from Lessee after giving notice to Lessee terminating this Lease shall in no way reinstate, continue, or extend the Lease term or affect any Default notice given by Lessor before the receipt of those monies.

13.5    **Breach by Lessor**.  Lessor shall not be deemed in Breach of this Lease unless Lessor fails to perform an obligation required to be performed by Lessor within thirty (30) days after receipt by Lessor, and by the holders of any ground lease, mortgage or deed of trust covering the Premises whose name and address shall have been furnished to Lessee in writing for such purpose, of written notice specifying wherein such obligation of Lessor has not been performed; provided,

-24-

Lessor's Initials _____
Lessee's Initials _____

however, that if the nature of Lessor's obligation is such that more than thirty (30) days after such notice are reasonably required for its performance, then Lessor shall not be in Breach of this Lease if performance is commenced within such thirty (30) day period and thereafter diligently pursued to completion. If Lessor fails to cure such Breach within such thirty (30)-day period, Lessee may, at its option, cure such Breach and Lessor shall reimburse Lessee for all costs and expenses incurred by Lessee in curing such Breach and/or performing Lessor's obligations within thirty (30) days after delivery of an invoice therefor, together with interest thereon as provided in Paragraph 19. If Lessor fails to so reimburse Lessee and Lessee obtains a final, non-appealable judgment therefor, Lessee shall be entitled to offset such judgment against rent and other charges hereunder until such sums are recouped.

14.    **CONDEMNATION**.  If the Premises or any portion thereof are taken under the power of eminent domain or sold under the threat of the exercise of said power (all of which are herein called **"condemnation"**), this Lease shall terminate as to the part so taken as of the date condemning authority takes title or possession, whichever first occurs.  If more than ten percent (10%) of the floor area of the Premises, or more than ten percent (10%) of the land area not occupied by any building is taken by condemnation, Lessee may, at Lessee's option, to be exercised in writing within ten (10) days after Lessor shall have given Lessee written notice of such taking (or in the absence of such notice, within ten (10) days after the condemning authority shall have taken possession) terminate this Lease as of the date the condemning authority takes such possession.  If Lessee does not terminate this Lease in accordance with the foregoing, this Lease shall remain in full force and effect as to the portion of the Premises remaining, except that the Base Rent shall be reduced in the same proportion as the rentable floor area of the Premises taken bears to the total rentable floor area of the Building.  No reduction of Base Rent shall occur if the only portion of the Premises taken is land on which there is no building.  Any award for the taking of all or any part of the Premises under the power of eminent domain or any payment made under threat of the exercise of such power shall be the property of Lessor, whether such award shall be made as compensation for diminution in value of the leasehold or for the taking of the fee, or as severance damages; provided, however, that Lessee shall be entitled to any compensation separately awarded to Lessee for Lessee's relocation expenses and/or loss of Lessee's Trade Fixtures.  In the event that this Lease is not terminated by reason of such condemnation, Lessor shall to the extent of its net severance damages received, over and above the legal and other expenses incurred by Lessor in the condemnation matter, repair any damage to the Premises caused by such condemnation, except to the extent Lessee has been reimbursed therefor by the condemning authority.  Lessee shall be responsible for the payment of any amount in excess of such net severance damages required to complete such repair.

15.    **BROKER'S FEE**.

15.1    **Broker**.  The Broker named in Paragraph 1.10 is the procuring causes of this Lease.

15.2    **Separate Agreement**.  Upon execution of this Lease by both Parties, Lessor shall pay to said Broker a fee as set forth in a separate written agreement between Lessor and said Broker.

15.3    **Extensions**.  Unless set forth in a separate written agreement, there is no commission to Broker for Lease extensions or the sale of the Premises.

-25-

Lessor's Initials _____
Lessee's Initials _____

15.4    **Representations and Warranties**.  Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder (other than the Broker named in Paragraph 1.10) in connection with the negotiation of this Lease and/or the consummation of the transaction contemplated hereby, and that no broker or other person, firm or entity other than said named Broker is entitled to any commission or finder's fee in connection with said transaction.  Lessee and Lessor do each hereby agree to indemnify, protect, defend and hold the other harmless form and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

16.    **TENANCY STATEMENT**.

16.1    **Execution and Delivery**.  Each Party (as **"Responding Party"**) shall within ten (10) days after written notice from the other Party (the **"Requesting Party"**) execute, acknowledge and deliver to the Requesting Party a statement in writing in form similar to the then most current "Tenancy Statement" form published by the American Industrial Real Estate Association, plus such additional information, confirmation and/or statements as may be reasonably requested by the Requesting Party.

16.2    **Financing**.  If Lessor desires to finance, refinance, or sell the Premises, any part thereof, or the Building, Lessee and all Guarantors of Lessee's performance hereunder shall deliver to any potential lender or purchaser designated by Lessor such financial statements of Lessee and such Guarantors as may be reasonably required by such lender or purchaser, including but not limited to Lessee's financial statements for the past three (3) years.  All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

17.    **LESSOR'S LIABILITY**.  The term **"Lessor"** a used herein shall mean the owner or owner at the time in question of the fee title to the Premises, or, if this is a sublease, of the Lessee's interest in the prior Lease.  In the event of a transfer of Lessor's title or interest in the Premises or in this Lease, Lessor shall deliver to the transferee or assignee (in cash or by credit) any unused Security Deposit held by Lessor at the time of such transfer or assignment.  Except as provided in Paragraph 5, upon such transfer or assignment and delivery of the Security Deposit, as aforesaid, the prior Lessor shall be relieved of all liability with respect to the obligations and/or covenants under this Lease thereafter to be performed by the Lessor.  Subject to the foregoing, the obligations and/or covenants in this Lease to be performed by the Lessor shall be binding only upon the Lessor as herein above defined.

18.    **SEVERABILITY**.  The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

19.    **INTEREST ON PAST-DUE OBLIGATIONS**.  Any monetary payment due Lessor hereunder, other than late charges, not received by Lessor within thirty (30) days following the date on which it was due, shall bear interest from the thirty-first (31st) day after it was due at the rate of twelve percent (12%) per annum, but not exceeding the maximum rate allowed by law, in addition to the late charge provided for in Paragraph 13.4.

Lessor's Initials _____
Lessee's Initials _____

20.    **TIME OF ESSENCE**.  Time is of the essence with respect to the performance of all obligations to be performed or observed by the Parties under this Lease.

21.    **RENT DEFINED**.  All monetary obligations of Lessee to Lessor under the terms of this Lease are deemed to be rent ("**Rent**").

22.    **NO PRIOR OR OTHER AGREEMENTS; BROKER DISCLAIMER**.  This Lease contains all agreements between the Parties with respect to any matter mentioned herein and no other prior or contemporaneous agreement or understanding shall be effective.

23.    **NOTICES**.

23.1    **Delivery**.  All notices required or permitted by this Lease shall be in writing and may be delivered in person (by hand or by messenger or courier service) or may be sent by regular, certified or registered mail, or U.S. Postal Service Express Mail, with postage prepaid, or by facsimile transmission and shall be deemed sufficiently given if served in a manner specified in this Paragraph 23.  The addresses noted adjacent to a Party's signature on this Lease shall be that Party's address for delivery or mailing for notice purposes.  Either Party may by written notice to the other specify a different address for notice purposes, except that upon Lessee's taking possession of the Premises, the Premises shall constitute Lessee's address for the purpose of mailing or delivering notices to Lessee.  A copy of all notices required or permitted to be given to Lessor hereunder shall concurrently be transmitted to such party or parties at such addresses as Lessor may from time to time hereafter designate by written notice to Lessee.

23.2    **Acceptance**.  Any notice sent by registered or certified mail, return receipt requested, shall be deemed given on the date of delivery shown on the receipt card, or if no delivery date is shown, the postmark thereon.  If sent by regular mail, the notice shall be deemed given forty-eight (48) hours after the same is addressed as required herein and mailed with postage prepaid.  Notices delivered by United States Express Mail or overnight courier that guarantees next day delivery shall be deemed given twenty-four (24) hours after delivery of the same to the United States Postal Service or courier.  If any notice is transmitted by facsimile transmission or similar means, the same shall be deemed served or delivered upon telephone confirmation or receipt of the transmission thereof, provided a copy is also delivered via delivery or mail.  For notices received on a Sunday or legal holiday, it shall be deemed received on the next business day.

24.    **WAIVERS**.  No waiver by either Party of the Default or Breach of any term, covenant or condition hereof by the other Party, shall be deemed a waiver of any other term, covenant, or condition hereof, or of any subsequent Default or Breach by the defaulting Party of the same or of any other term, covenant or condition hereof.  Each Party's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of such Party's consent to, or approval of, any subsequent or similar act by the other Party, or be construed as the basis of an estoppel to enforce the provision or provisions of this Lease requiring such consent.  Regardless of Lessor's knowledge of a Default or Breach at the time of accepting rent, the acceptance of rent by Lessor shall not be a waiver of any preceding Default or Breach by Lessee of any provision hereof, other than the failure of Lessee to pay the particular rent so accepted.  Any payment given Lessor by Lessee may be accepted by Lessor on account of moneys or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statement and/or conditions shall be of no force or effect whatsoever unless specifically agreed to in writing by Lessor at or before the time of deposit of such payment.

-27-

Lessor's Initials _____
Lessee's Initials _____

25.    **RECORDING**.  Either Lessor or Lessee shall, upon request of the other, execute, acknowledge and deliver to the other a short form memorandum of this Lease for recording purposes. The Party requesting recordation shall be responsible for payment of any fees or taxes applicable thereto.  Within thirty (30) days of request therefor upon termination of this Lease, Lessee shall execute and deliver to Lessor a quitclaim deed or other document evidencing termination of this Lease.

26.    **NO RIGHT TO HOLDOVER**.  Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration or earlier termination of this Lease.  In the event that Lessee holds over in violation of this Paragraph 26 (but with Lessor's prior written consent), then the Base Rent payable from and after the time of expiration or earlier termination of this Lease shall be increased to one hundred twenty-five percent (125%) of the Base Rent applicable during the month immediately preceding such expiration or earlier termination.  Nothing contained herein shall be construed as a consent by Lessor to any holding over by Lessee.

27.    **CUMULATIVE REMEDIES**.  Except as expressly prohibited under this Lease, no remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

28.    **COVENANTS AND CONDITIONS**.  All provisions of this Lease to be observed or performed by Lessee are both covenants and conditions.

29.    **BINDING EFFECT; CHOICE OF LAW**.  This Lease shall be binding upon the Parties, their personal representatives, successors, and assigns and be governed by the laws of the State of California.

30.    **SUBORDINATION; ATTORNMENT; NON-DISTURBANCE.**

30.1    **Subordination**.  This Lease shall be subject and subordinate to any ground lease, mortgage, deed of trust, or other hypothecation or security device (collectively, "**Security Device**"), now or hereafter placed by Lessor upon the Real Property, to any and all advances made on the security thereof, and to all renewal, modifications, consolidations, replacements and extensions thereof, subject to Paragraph 30.3 below.  Lessee agrees that the Lenders holding any such Security Device shall have no duty, liability or obligation to perform any of the obligations of Lessor under this Lease unless and until any such Lenders take possession of the Premises (and only as to the obligations which accrue while such Lenders are in possession of the Premises), either as the result of foreclosure of the Security Device or accepting a deed to the Premises in lieu of foreclosure or otherwise, but that in the event of Lessor's default with respect to any such obligation, Lessee will give any Lender whose name and address have been furnished Lessee in writing for such purpose notice of Lessor's default and allow such Lender thirty (30) days following receipt of such notice for the cure of said default before invoking any remedies Lessee may have by reason thereof. If any Lender shall elect to have this Lease superior to the lien of its Security Device and shall give written notice thereof to Lessee, this Lease shall be deemed prior to such Security Device, notwithstanding the relative dates of the documentation or recordation thereof.

30.2    **Attornment**.  Subject to the non-disturbance provisions of Paragraph 30.3, Lessee agrees to attorn to a Lender or any other party who acquires ownership of the Premises by reason of a foreclosure of a Security Device, and that in the event of such foreclosure of a Security Device, and that in the event of such foreclosure, such new owner shall not:  (i) be liable for any act

-28-

Lessor's Initials _____
Lessee's Initials _____

or omission of any prior Lessor or with respect to events occurring prior to acquisition of ownership, (ii) be subject to any offsets or defenses which Lessee might have against any prior Lessor, or (iii) be bound by prepayment of more than one (1) month's rent.

30.3    **Non-Disturbance**. With respect to Security Devices entered into by Lessor after the execution of this Lease, Lessee's subordination of this Lease shall be subject to receiving assurance (a **"non-disturbance agreement"**) from the Lender that Lessee's possession and this Lease, including any options to extend the term hereof, will not be disturbed so long as Lessee is not in Breach hereof and attorns to the record owner of the Premises. With respect to Security Devices entered into by Lessor before the execution of this Lease, Lessor shall use commercially reasonable efforts to deliver to Lessee a non-disturbance agreement reasonably acceptable to Lessee executed by the Lender within thirty (30) days after the execution of this Lease.

30.4    **Intentionally Omitted**.

31.    **ATTORNEYS' FEES**. If any Party brings an action, proceeding or arbitration to enforce the terms hereof or declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or arbitration, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action, proceeding or arbitration is pursued to decision or judgment. The term **"Prevailing Party"** shall include, without limitation, a Party who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party of its claim or defense. The attorneys' fee award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. Lessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith whether or not a legal action is subsequently commenced in connection with any Default or resulting Breach, provided Lessee was in fact in Default or Breach hereunder.

32.    **LESSOR'S ACCESS; SHOWING PREMISES; REPAIR**. Lessor and Lessor's agents shall have the right to enter the Premises at any time, in the case of an emergency and otherwise at reasonable times for the purpose of showing the same to prospective purchasers, lenders, or lessees, and making such alterations, repairs, improvements or additions to the Premises or to the Building, as Lessor may reasonably deem necessary. Lessor may at any time place on or about the Premises or Building any ordinary "For Sale" signs and Lessor may at any time during the last two hundred forty (240) days of the term hereof place on or about the Premises any ordinary "For Lease" signs. All such activities of Lessor shall be without abatement of rent or liability to Lessee.

33.    **AUCTION**. Lessee shall not conduct, not permit to be conducted, either voluntarily or involuntarily, any auction upon the Premises without first having obtained Lessor's prior written consent. Notwithstanding anything to the contrary in this Lease, Lessor shall not be obligated to exercise any standard of reasonableness in determining whether to grant such consent.

34.    **SIGNS**. Lessee may, with Lessor's prior written consent, install (but not on the roof) such signs as are reasonably required to advertise Lessee's own business. The installation of any sign on the Premises by or for Lessee shall be subject to the provisions of Paragraph 7 (Maintenance, Repairs, Utility Installations, Trade Fixtures and Alterations).

-29-

Lessor's Initials
Lessee's Initials

35.    **TERMINATION; MERGER.**  Unless specifically stated otherwise in writing by Lessor, the voluntary or other surrender of this Lease by Lessee, the mutual termination or cancellation hereof, or a termination hereof by Lessor for Breach by Lessee, shall automatically terminate any sublease or lesser estate in the Premises; provided, however, Lessor shall, in the event of any such surrender, termination or cancellation, have the option to continue any one or all of any existing subtenancies.  Lessor's failure within ten (10) days following any such event to make a written election to the contrary by written notice to the holder of any such lesser interest, shall constitute Lessor's election to have such event constitute the termination of such interest.

36.    **CONSENTS.**

36.1    **Conditions.**  Except for Paragraph 33 hereof (Auctions) or as otherwise provided herein, wherever in this Lease the consent of a Party is required to an act by or for the other Party, such consent shall not be unreasonably withheld or delayed.  Lessor's actual reasonable out-of-pocket costs and expenses (including, but not limited to, architects', attorneys', engineers' or other consultants' fees) incurred in the consideration of, or response to, a request by Lessee for any Lessor consent pertaining to this Lease or the Premises, including, but not limited to, consents to an assignment, a subletting or the presence or use of a Hazardous Substance, practice or storage tank, shall be paid by Lessee to Lessor upon receipt of an invoice and supporting documentation therefor.  Subject to Paragraph 12.2(e) (applicable to assignment or subletting), Lessor may, as a condition to considering any such request by Lessee, require that the Lessee deposit with Lessor an amount of money (in addition to the Security Deposit held under Paragraph 5) reasonably calculated by Lessor to represent the cost Lessor will incur in considering and responding to Lessee's request.  Except as otherwise provided, any unused portion of said deposit shall be refunded to Lessee without interest.  Lessor's consent to any act, assignment of this Lease or subletting of the Premises by Lessee shall not constitute an acknowledgement that no Default or Breach by Lessee of this Lease exists, nor shall such consent be deemed a waiver of any then existing Default or Breach, except as may be otherwise specifically stated in writing by Lessor at the time of such consent.

36.2    **Reasonableness.**  All conditions to Lessor's consent authorized by this Lease are acknowledged by Lessee as being reasonable.  The failure to specify herein any particular condition to Lessor's consent shall not preclude the imposition by Lessor at the time of consent of such further or other conditions as are then reasonable with reference to the particular matter for which consent is being given.

37.    **INTENTIONALLY OMITTED.**

38.    **QUIET POSSESSION.**  Provided Lessee is not in Breach of this Lease, Lessee shall have quiet possession of the Premises for the entire term hereof subject to all of the provisions of this Lease.

39.    **OPTION TO EXTEND.**

39.1    **Grant of Option.**  Lessor hereby grants to Lessee the option ("**Option**") to extend the Original Term of this Lease for two (2) additional sixty (60)-month periods ("**Option Terms**") commencing when the applicable prior term expires, on the terms and conditions set forth herein.  For purposes of this Lease, references to the term of this Lease shall mean the Original Term, together with any Option Terms.

-30-

Lessor's Initials _____
Lessee's Initials _____

39.2    **Options Personal to Original Lessee**. Each Option granted to Lessee in this Lease is personal to the original Lessee named in Paragraph 1.1 hereof, and cannot be voluntarily or involuntarily assigned or exercised by any person or entity other than said original Lessee while the original Lessee is in full and actual possession of the entire Premises and without the intention of thereafter assigning or subletting. The Options granted herein to Lessee are not assignable, either as a part of an assignment of this Lease or separately or apart therefrom, and no Option may be separated from this Lease in any manner, by reservation or otherwise.

39.3    **Multiple Options**. A later Option cannot be exercised unless the prior Option has been validly exercised.

39.4    **Effect of a Default on Option**.

(a)    Lessee shall have no right to exercise an Option, notwithstanding any provision in the grant of Option to the contrary: (i) during the period commencing with the giving of any notice of Default under Paragraph 13.1 and continuing until the noticed Default is cured, (ii) during the time Lessee is in Breach of this Lease, or (iii) in the event that Lessor has given to Lessee three (3) or more notices of Default under Paragraph 13.1, whether or not the Defaults are cured, during the twelve (12)-month period immediately preceding the exercise of the Option.

(b)    The period of time within which an Option may be exercised shall not be extended or enlarged by reason of Lessee's inability to exercise an Option because of the provisions of Subparagraph 39.4(a) above.

(c)    All rights of Lessee under the provisions of an Option shall terminate and be of no further force or effect, notwithstanding Lessee's due and timely exercise of the Option, if after such exercise and prior to the commencement of the applicable Option term, (i) Lessor gives to Lessee three (3) or more notice of Default under Paragraph 13.1 during any twelve (12)-month period, whether or not the Defaults are cured, or (ii) if Lessee commits a Breach of this Lease.

39.5    **Notice of Option**. Any Option to extend the term of this Lease must be exercised by written notice to Lessor no less than three hundred sixty-five (365) days prior to the expiration of the then current term.

39.6    **Option Rent**. The monthly Base Rent for the first Option term shall be Three Hundred Twenty-Nine Thousand One Hundred Thirty Dollars ($329,130.00). The monthly Base Rent for the second Option term shall be Three Hundred Eighty-Three Thousand Forty Dollars ($383,040.00).

39.7    **Lease Provisions Remain in Effect**. In the event that the term of this Lease is extended pursuant to the provisions hereof, all the terms and provisions of this Lease shall extend to and be applicable during the terms so extended, except as specifically set forth in this Paragraph 39 to the contrary.

40.    **MULTIPLE BUILDINGS**. If the Premises are part of a group of buildings controlled by Lessor, Lessee agrees that it will abide by, keep and observe all reasonable rules and regulations which Lessor may make from time to time for the management, safety, care, and cleanliness of the grounds, the parking and unloading of vehicles and the reservation of good order, as well as for the convenience of other occupants or tenants of such other buildings and their invitees,

-31-

Lessor's Initials _____
Lessee's Initials _____

and that Lessee will pay its fair share of common expenses incurred in connection therewith. In the event of any conflict between such rules and regulations and this Lease, this Lease shall prevail.

41.    **SECURITY MEASURES**. Lessee hereby acknowledges that the rental payable to Lessor hereunder does not include the cost of guard service or other security measures, and that Lessor shall have no obligation whatsoever to provide same. Lessee assumes all responsibility for the protection of the Premises, Lessee, its agents and invitees and the property from the acts of third parties.

42.    **RESERVATIONS**. Lessor reserves to itself the right, from time to time, to grant, without the consent or joinder of Lessee, such easements, rights, and dedications that Lessor deems necessary, and to cause the recordation of parcel maps and restrictions, so long as such easements, rights, dedications, maps and restriction do not unreasonably interfere with the use of the Premises by Lessee. Lessee agrees to sign any documents reasonably requested by Lessor to effectuate any such easement rights, dedication, map or restrictions.

43.    **PERFORMANCE UNDER PROTEST**. If at any time a dispute shall arise as to any amount or sum of money to be paid by one Party to the other under the provisions hereof, the Party against whom the obligation to pay the moneys asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said Party to institute arbitration for recovery of such sum. If it shall be adjudged that there was no legal obligation on the part of said Party to pay such sum or any part thereof, said Party shall be entitled to recover such sum or so much thereof as it was not legally required to pay under the provisions of this Lease.

44.    **AUTHORITY**. If either Party hereto is a corporation, trust, or general or limited partnership, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on its behalf. If Lessee is a corporation, trust or partnership, Lessee shall, within thirty (30) days after request by Lessor, deliver to Lessor evidence satisfactory to Lessor of such authority.

45.    **CONFLICT**. Any conflict between the printed provisions of this Lease and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

46.    **OFFER**. Preparation of this Lease by Lessor or Lessor's agent and submission of same to Lessee shall not be deemed an offer to Lease to Lessee. This Lease is not intended to be binding until executed by all Parties hereto.

47.    **AMENDMENTS**. This Lease may be modified only in writing, signed by the parties in interest at the time of the modification. The Parties shall amend this Lease form time to time to reflect any adjustments that are made to the Base Rent or other rent payable under this Lease. As long as they do not materially change Lessee's obligations hereunder, Lessee agrees to make such reasonable non-monetary modifications to this Lease as may be reasonably required by an institutional insurance company, or pension plan lender in connection with the obtaining of normal financing or refinancing of the property of which the Premises are a part.

48.    **MULTIPLE PARTIES**. Except as otherwise expressly provided herein, if more than one person or entity is named herein as either Lessor or Lessee, the obligations of such multiple

-32-

Lessor's Initials _____
Lessee's Initials _____

parties shall be the joint and several responsibility of all persons or entities named herein as such Lessor or Lessee.

49.    **INDEPENDENT CONTRACTORS.**  This Lease shall be construed as though the covenants between Lessor and Lessee are independent and not dependent.  Lessee expressly waives the benefit of any statute to the contrary and agrees that if Lessor fails to perform its obligations under this Lease, Lessee shall not be entitled to make any repairs or perform any acts at Lessor's expense or entitled to any setoff of the rent or other amounts owing under this Lease against Lessor.

50.    **LIABILITY OF LESSOR.**  The liability of Lessor (including all persons and entities that comprise Lessor, and any successor lessor) and any recourse by Lessee against Lessor for breach of this Lease or for any other matter relating to this Lease or the Premises shall be limited to the interest of Lessor and Lessor's successors in interest in and to the Building and Real Property. If Lessor shall fail to perform any covenant, term or condition of this Lease upon Lessor's part to be performed, and as a consequence of such default by Lessor, Lessee shall recover a money judgment against Lessor, such judgment shall be satisfied only out of (a) the proceeds of same received upon execution of such judgment and levy thereon against the right, title and interest of Lessor in the Premises and the Real Property, or any part thereof, or (b) the rents or other income from the Premises and the Real Property, and Lessor shall not be liable for any deficiency.  On behalf of itself and all persons claiming by, through, or under Lessee, Lessee expressly waives and releases Lessor from any personal liability for breach of this Lease; provided, however, that in the event of a failure of Lessor's representations, warranties and covenants in <u>Paragraph 53</u> hereof, or in the event of Lessor's failure to perform any covenant or obligation of Lessor under <u>Paragraph 9 or 14</u> hereof following damage to, or destruction of, or a taking of, all or any part of the Premises, any judgment recovered by Lessee as a consequence thereof may also be satisfied out of Lessor's insurance proceeds payable to Lessor as a result of such failure, damage, destruction or taking.

51.    **FORCE MAJEURE.**  Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials or reasonable substitutes therefor, governmental restrictions, governmental regulations, governmental controls, judicial orders, enemy or hostile governmental action, civil commotion, fire or other casualty, and other causes (except financial) beyond the reasonable control of the party obligated to perform, shall excuse the performance by that party for a period equal to the prevention, delay or stoppage except the obligations imposed with regard to Base Rent, and other rent to be paid by Lessor pursuant to this Lease after the Commencement Date.

52.    **GOVERNING LAW.**  This Lease is deemed to have been made in the State of California, and its interpretation, its construction and the remedies for its enforcement or breach are to be applied pursuant to, and in accordance with, the laws of the State of California for contracts made and to be performed therein.

53.    **LESSOR'S REPRESENTATIONS AND WARRANTIES.**  Lessor represents, warrants and covenants to Lessee as follows:

53.1    **Authority.**  Lessor has the right and lawful authority to enter into this Lease and perform Lessor's obligations hereunder.

53.2    **Good Standing.**  Lessor is a trust, organized and in good standing under the laws of the State of California; Lessor has the requisite power and authority to enter into and perform

-33-

Lessor's Initials _____
Lessee's Initials _____

this Lease; this Lease has been duly authorized by all necessary action on the part of Lessor; Lessor is authorized to transact business in the State of California; the execution and delivery of this Lease and the performance by Lessor of the obligations under this Lease do not conflict with and will not, to Lessor's actual knowledge, constitute a material breach of, or a material default under any contract, undertaking, indenture or other agreement by which Lessor or the Premises is bound or to which Lessor is a party.

53.3    **Hazardous Substances**.  Lessor (a) has no actual knowledge of the presence, release, treatment or disposal at the Real Property of any Hazardous Substances; and (b) has not received from or given to any governmental authority having jurisdiction or other party any notice or other communication or agreement relating in any way to the presence, release, treatment or disposal of any Hazardous Substances on, under or about the Real Property or the Premises.

53.4    **Fee Owner**.  Lessor is the fee owner of the Premises and all improvements located thereon as of the execution of this Lease.

54.    **LESSEE'S REPRESENTATIONS AND WARRANTIES**.    Lessee represents, warrants and covenants to Lessor as follows:

54.1    **Authority**.  Lessee has the right and lawful authority to enter into this Lease and perform Lessee's obligations hereunder.

54.2    **Good Standing**.  Lessee is a corporation, organized in the State of Michigan and in good standing under the laws of the State of California; Lessee has the requisite power and authority to enter into and perform this Lease; this Lease has been duly authorized by all necessary action on the part of Lessee; Lessee is authorized to transact business in the State of California; the execution and delivery of this Lease and the performance by Lessee of the obligations under this Lease do not conflict with and will not, to Lessee's actual knowledge, constitute a material breach of, or a material default under any contract, undertaking, indenture or other agreement by which Lessee or the Premises is bound or to which Lessee is a party.

LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN, AND BY THE EXECUTION OF THIS LEASE SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO.  THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.

IF THIS LEASE HAS BEEN FILLED IN, IT HAS BEEN PREPARED FOR SUBMISSION TO YOUR ATTORNEY FOR HIS APPROVAL, FURTHER, EXPERTS SHOULD BE CONSULTED TO EVALUATE THE CONDITION OF THE PROPERTY AS TO THE POSSIBLE PRESENCE OF ASBESTOS, STORAGE TANKS OR HAZARDOUS SUBSTANCES.    NO REPRESENTATION OR RECOMMENDATION IS MADE BY LESSOR OR BY THE REAL ESTATE BROKER(S) OR THEIR AGENTS OR EMPLOYEES AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS LEASE OR THE TRANSACTION TO WHICH IT RELATED;  THE PARTIES SHALL RELY SOLELY UPON THE ADVICE OF THEIR OWN COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS LEASE.  IF THE SUBJECT PROPERTY IS LOCATED IN A STATE OTHER THAN

Lessor's Initials _____
Lessee's Initials _____