**GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.**
Phillip W. Bohl
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(Tel) 612-632-3019
(Fax) 612-632-4019
Email: phillip.bohl@gpmlaw.com

Attorneys for Little Caesar Enterprises, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
|  | : |  |
| SEARS HOLDINGS CORPORATION, | : |  |
| INC., et al.,[1] | : | Case No. 18-23538 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**OBEJECTION OF LITTLE CAESAR ENTERPRISES, INC. TO DEBTORS' NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

TO:   THE HONORABLE ROBERT D DRAIN,
       UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Se s Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc.(0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**INTRODUCTION**

Little Caesar Enterprises, Inc. (the "**Franchisor**"), by and through its undersigned attorneys, files this objection (this "**Objection**") to the relief requested in the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* [Doc. 1731] (the "**Assignment Notice**") filed by the Debtors in the above-captioned jointly administered cases. Among other things, this Objection constitutes a "Cure Objection" and a request for "Adequate Assurance Information," as those terms are defined in the *Order Approving Global Bidding Procedures and Granting Related Relief* [Doc. 816]. In support of this Objection, the Franchisor states the following:

**FACTUAL BACKGROUND**

1.  On October 15, 2018 (the "**Petition Date**"), Sears Holding Corporation and a number of its affiliates, including Kmart Corporation ("**Kmart**"), filed voluntary petitions under chapter 11 of the Bankruptcy Code.

2.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

3.  The Franchisor and Kmart entered into a Franchise Agreement having an effective date of October 1, 2010, and a First Addendum to Franchise Agreement dated October 1, 2010 (collectively, the "**Franchise Agreement**"). A true and correct copy of the Franchise Agreement is attached to this Objection as **Exhibit A**.

4.  Under the Franchise Agreement, Kmart is licensed to use certain proprietary products and equipment of the Little Caesar franchise system (the "**Little Caesar Franchise System**"). However, Kmart's license is limited to using the Little Caesar proprietary products

2

and equipment in accordance with the Franchisor's specifications, standards and techniques. The proprietary products and equipment include Little Caesar trade names, service marks, trademarks, logos, emblems and indicia of origin (collectively, the "**Little Caesar Franchise System Assets**").

5. Pursuant to the Franchise Agreement, Kmart is licensed to use the Little Caesar Franchise System Assets only in accordance with the Franchisor's specifications, standards and techniques. *See* Franchise Agreement, Section 7.2.1 ("Franchisee shall use only the Proprietary Marks designated by Little Caesar, and shall use them only in the manner authorized and permitted by Little Caesar . . .").

6. To protect the unique nature and the quality of the Little Caesar Franchise System, and specifically the Little Caesar Franchise System Assets, the Franchise Agreement contains restrictions on the transferability of the Franchise Agreement and Kmart's licenses thereunder.

7. Section 12 of the Franchise Agreement provides that Kmart may transfer the Franchise Agreement to a third party only with the Franchisor's "prior written consent" and the transferee's compliance with other enumerated conditions. Specifically, Section 12.2 states the following:

> Franchisee understands and acknowledges that Little Caesar has granted this franchise in reliance on Franchisee's business skill, financial capacity, and management team. Accordingly, Franchisee shall not, without the prior written consent of Little Caesar, transfer, pledge or otherwise encumber this Agreement or any of the rights or obligations of Franchisee under this Agreement with respect to any of the Little Caesar Operations (a "*Transfer*"). Any Transfer, by operation of law or otherwise, that does not have the written consent of Little Caesar required by this Section 12.2 shall be null and void and shall constitute a material breach hereof, for which Little Caesar may then terminate without an opportunity to cure pursuant to Section 13.2.4 hereof.

3

*See* Franchise Agreement, Section 12.2 (as amended by the First Addendum).

8.  On January 18, 2019, the Debtors filed the Assignment Notice, requesting the Court's authority to assume and assign certain executory contracts and unexpired leases, including the Franchise Agreement. *See* Assignment Notice, Exhibit A, Line 4431.

9.  In the Assignment Notice, the Debtors indicated that the Franchise Agreement may be assumed and assigned in connection with the sale of the Global Assets, and asserted that a Cure Amount was due to the Franchisor in the amount of $112,207. *Id.*

10.  Kmart is in monetary default under the Franchise Agreement as of the date of this Objection, as follows:

| Pre-Petition | Post-Petition through 1/24/2019 | Post-Petition from 1/25/2019 through Closing |
|---|---|---|
| $71,761.30 | $196,279.22 | To be determined |

11.  Under the Franchise Agreement, Kmart is obligated to operate in conformance with all methods, standards and specifications applicable to the Little Caesar Franchise System. Specifically, Section 5.3 of the Franchise Agreement provides as follows:

> To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such standards, specifications, and procedures without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System.

*See* Franchise Agreement, Section 5.3.

12.  If and to the extent that Kmart is in default of any of the applicable methods, standards and specifications, such defaults constitute defaults under the Franchise Agreement.

13. Before the Franchise Agreement may be either assumed or assigned, Kmart must cure the aforementioned defaults. Additionally, in order to assume and assign the Franchise Agreement, the assignee must provide adequate assurance of future performance thereunder, and the Franchisor must approve the assignee as a franchisee.

14. As of the date of this Objection, no assignee of the Franchise Agreement has been approved by this Court, and the Franchisor has not given its consent to the assumption and assignment of the Franchise Agreement to any assignee.

## OBJECTIONS

**A.  Kmart Must Cure All Defaults For The Franchise Agreement To Be Assumed Or Assigned.**

15. The Franchise Agreement is an executory contract subject to Section 365 of the Bankruptcy Code.[2] *See Matter of Golconda, Inc.*, 56 B.R. 136, 136 (Bankr. M.D. Fla. 1985) ("there is no doubt . . . that [a] Franchise Agreement is an executory contract . . . [when] some meaningful performance remains due by both parties . . ."); *see also In re Adelphia Commc'ns Corp.*, 359 B.R. 65, 71 (Bankr. S.D.N.Y. 2007) (observing that "franchise agreements . . . are executory contracts").

16. Kmart is in monetary default under the Franchise Agreement. In order for Kmart to assume the Franchise Agreement, it must "cure[], or provide adequate assurance that [it] will promptly cure," all monetary defaults and non-monetary defaults under the Franchise Agreement. 11 U.S.C. § 365(b)(1)(A). *See generally In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985) (upon assuming an executory contract or unexpired lease under section 365, the estate must "cure all defaults"); *see also In re Haven Eldercare, LLC*, 390 B.R. 762, 772 (Bankr.

---

[2] Although the Bankruptcy Code does not define the term "executory contract," the Second Circuit Court of Appeals has defined an executory contract as one "on which performance remains due to some extent on both sides." *In re Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 922 (2d Cir. 1996) (quoting *Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S. Ct. 1188, 79 L.Ed.2d 482 (1984).

D. Conn. 2008) (holding that if there has been a default in an executory contract, the trustee or debtor-in-possession "may not assume such contract" unless the trustee or debtor-in-possession "cures, or provides adequate assurance that the trustee [or debtor-in-possession] will promptly cure, such default").

17. The obligation to cure all defaults under section 365(b)(1)(A) is not limited to monetary defaults; nonmonetary defaults likewise must be cured. *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 690 (Bankr. S.D.N.Y. 2009) (holding a debtor must "cure all material non-monetary defaults" and "if cure is impossible, contract cannot be assumed"); *see also In re New Breed Realty Enterprises, Inc.*, 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002) (same). Accordingly, Kmart must "cure[], or provide adequate assurance that [it] will promptly cure," all monetary defaults and non-monetary defaults before assuming the Franchise Agreement. 11 U.S.C. § 365(b)(1)(A).

**B.    Any Assignee Must Provide Adequate Assurance Of Future Performance For The Franchise Agreement To Be Assigned.**

18. Kmart must provide adequate assurance of future performance under the Franchise Agreement in order to assume the Franchise Agreement. 11 U.S.C. § 365(b)(1)(C). *See generally In re Airlift Int'l, Inc.*, 761 F.2d at 1508 (upon assuming an executory contract or unexpired lease under section 365, the estate must "provide adequate assurance of future performance under the agreement").

19. Furthermore, section 365(f)(2) of the Bankruptcy Code provides that:

> The [debtor in possession] may assign an executory contract . . . of the debtor only if-
>
> (A)   the [debtor in possession] assumes such contract . . . in accordance with the provisions of this section; and

6

   (B)  adequate assurance of future performance by the assignee of such contract . . . is provided, . . .

11 U.S.C. § 365(f)(2).

20. Any potential assignee of any of the Franchise Agreement must demonstrate that it is financially and otherwise capable of performing the obligations of the franchisee under the Franchise Agreement. Demonstrating adequate assurance of future performance under the Franchise Agreement will require, at a minimum, that the potential assignee demonstrate that it meets the Franchisor's requirements to be approved as a franchisee in the Little Caesar Franchise System.

21. As of the date of this Objection, Kmart has not attempted to demonstrate that any potential assignee of the Franchise Agreement will qualify as a potential franchisee and no showing of adequate assurance of future performance under the Franchise Agreement has been made.

22. The Franchisor objects to the Assignment Notice to the extent that Kmart seeks authorization to assume and assign the Franchise Agreement without curing all monetary and non-monetary defaults thereunder, and demonstrating that any proposed assignee has provided adequate assurance of future performance thereunder.

**C. In The Absence Of Approval By The Franchisor, Kmart Cannot Assume And Assign The Franchise Agreement**.

23. Section 365(f)(1) of the Bankruptcy Code generally permits a debtor in possession to assume and subsequently assign to a third party an executory contract, without regard to any contract provision to the contrary or any applicable law that "prohibits, restricts, or conditions the assignment of such contract . . ." 11 U.S.C. § 365(f)(1). However, this general

7

assumption and assignment authority is subject to the carefully crafted exception of Section 365(c)(1) of the Bankruptcy Code. 11 U.S.C. § 365(c)(1).

24.    Section 365(c)(1) provides that a debtor in possession may not assume or assign an executory contract if two conditions are met: (i) "applicable law" excuses the non-debtor party to the executory contract "from accepting performance from or rendering performance to" a party other than the debtor, and (ii) the non-debtor party does not consent to assignment or assumption of the executory contract. *See* 11 U.S.C. § 365(c)(1)(A)-(B). In other words, section 365(c)(1), by its terms, bars a debtor in possession from assuming and assigning an executory contract without the non-debtor party's consent where applicable law precludes assignment of such contract to a third party. *See generally In re James Cable Partners, L.P.*, 27 F.3d 534 (11th Cir. 1994) (observing that section 365(c)(1) of the Bankruptcy Code is an exception to the debtor's authority to assume and assign executory contracts); *see also In re Catapult Ent'm't, Inc.*, 165 F. 3d 747, 749 (9th Cir. 1999) (same); *see also In re Footstar, Inc.*, 323 B.R. 566, 573 (Bankr. S.D.N.Y. 2005) (observing that the purpose of section 365(c)(1) is to "protect the contract counterparty from unlawful assignment of the contract").

25.    The Assignment Notice contemplates the possible assumption and assignment of the Franchise Agreement.

26.    Kmart cannot assume and assign the Franchise Agreement without the Franchisor's express consent because the two conditions of section 365(c)(1) are met: (i) applicable federal trademark law excuses the Franchisor from accepting performance from or rendering performance to a party other than the Kmart under the Franchise Agreement, and (ii) as of the date of this Objection, the Franchisor has not consented to the assumption or assignment of the Franchise Agreement to any potential assignee.

27. "Applicable law" sufficient under section 365(c)(1)(A) to excuse a party from accepting performance or rendering performance under a contract includes intellectual property law governing the assignment of licenses. *See, e.g., In re Wellington Vision*, 364 B.R. 129 (S.D. Fla. 2007) (addressing trademark licenses); *Catapult Entm't*, 165 F.3d at 750 (addressing patent licenses); *In re Golden Books Family Entm't, Inc.*, 269 B.R. 300, 308–10 (Bankr. D. Del. 2001) (addressing copyright licenses).

28. Here, the Franchise Agreement provides Kmart with a non-exclusive trademark license to operate within the Little Caesar Franchise System and utilize the Little Caesar Franchise System Assets.

29. Federal trademark law, including the Lanham Act, governs trademark licenses and provides restrictions for their assignment. *See* 15 U.S.C. § 1051 et seq; *see also In re Travelot Co.*, 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002) (federal trademark law is the "applicable law" under section 365(c)(1) of the Bankruptcy Code "governing the assignment of [trademark] licenses").

30. Federal trademark law excuses a trademark licensor from rendering performance to an entity other than the licensee. *In re Travelot,* 286 B.R. at 455 (since federal trademark law, including the Lanham Act, permits use of a registered trademark only by persons licensed to use it, a trademark license is not freely assignable and "a licensor need not accept performance from or render performance to an entity other than the licensee"); *In re Wellington Vision*, 364 B.R. at 134 (holding that a "franchise agreement is consistent with federal trademark law . . . [if] it restricts assignment without consent of the licensor").

31. The Franchise Agreement is consistent with federal trademark law. Section 12 of the Franchise Agreement prohibits the assignment of the Franchise Agreement, and the Kmart

9

licenses contained therein, without the Franchisor's "prior written consent" and the assignee's compliance with certain other conditions. *See* Franchise Agreement, Section 12.2 (as amended by the First Addendum).

32. Federal trademark law is the "applicable law" for purposes of the first condition required for section 365(c)(1) and consequently excuses the Franchisor from accepting performance from or rendering performance to a party other than Kmart under the Franchise Agreement. *See In re Wellington Vision*, 364 B.R. at 134 (holding that a franchise agreement cannot be assumed and assigned without the franchisor's consent pursuant to section 365(c)(1) of the Bankruptcy Code because federal trademark law governs a franchisor's trademark license and allows such restrictions on assignment).

33. "Where applicable nonbankruptcy law makes an executory contract non-assignable," an executory contract cannot be assumed and assigned without the consent of the non-debtor party. *See e.g., Catapult Entm't*, 165 F.3d at 748; *see also In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011) (it is a "universal rule" that trademark licenses and sublicenses are not assignable in the absence of either a clause expressly authorizing such assignment or the licensor's consent); *In re Travelot Co.*, 286 B.R. at 455 ("[t]he grant of a non-exclusive [trademark] license . . . is one personal to the assignee and thus not freely assignable to a third party"); *In re Rupari Holding Corp.*, 573 B.R. 111, 118 (Bankr. D. Del. 2017) (contractual provisions contemplating or conditioning the assignment of a trademark license are "not the equivalent of a clause expressly allowing assignment without consent"); *In re Rupari Holding Corp.,* 573 B.R. 111, 118 (Bankr. D. Del. 2017) (a provision requiring the licensor's "consent" prior to assignment of the license is consistent with section 365(c)(1) of the Bankruptcy Code).

34. As of the date of this Objection, the Franchisor has not provided its consent to the assumption and assignment of the Franchise Agreement, and therefore the second condition required for section 365(c)(1) is satisfied.

35. The Franchisor objects to the Assignment Notice to the extent that Kmart seeks authorization to assume and assign the Franchise Agreement without the Franchisor's consent to any such assignment.

## CONCLUSION

WHEREFORE, The Franchisor objects to the Debtors' Assignment Notice and requests that this Court:

A. Deny the Debtors' Assignment Notice unless:

   I. Kmarts' rights and interests in the Franchise Agreement are assigned only to an assignee that has been approved by the Franchisor as a franchisee;

   II. All monetary and non-monetary defaults under the Franchise Agreement are cured; and

   III. The proposed assignee of the Franchise Agreement provides adequate assurance of future performance under the Franchise Agreement.

B. Grant the Franchisor such other and further relief as the Court deems just and proper.

Dated: January 25, 2018

**GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.**

By: /s/ *Phillip Bohl*
Phillip Bohl (MN Bar #139191)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3019
Facsimile: (612) 632-4019
phillip.bohl@gpmlaw.com

*Attorneys for Little Caesar Enterprises, Inc.*

11