Franchise #

# LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

# EXHIBIT A

# LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

### TABLE OF CONTENTS

RECITALS ........................................................................................................................................ 1

1.  GRANT ................................................................................................................................ 2
    1.1 - Franchise Grant ........................................................................................................... 2
    1.2 - Location of Restaurant ................................................................................................ 2
    1.3 - Territorial Protection .................................................................................................. 2
    1.4 - Exclusions from Territorial Protection ...................................................................... 2
    1.5 - No Customer Exclusivity ............................................................................................ 3
    1.6 - Modifications to System ............................................................................................. 3

2.  TERM AND RENEWAL ...................................................................................................... 3
    2.1 - Initial Term of Franchise ............................................................................................ 3
    2.2 - Renewal Term of Franchise ........................................................................................ 3

3.  FEES .................................................................................................................................... 4
    3.1 - Franchise Fee .............................................................................................................. 4
    3.2 - Royalty Fee ................................................................................................................. 4
    3.3 - Advertising Fee ........................................................................................................... 4
    3.4 - Time and Manner of Payment; Late Fee .................................................................... 4
    3.5 - Reimbursement of Monies Paid on Behalf of Franchisee .......................................... 5
    3.6 - No Set-off; Application of Payments; Refundability .................................................. 5

4.  DUTIES OF LITTLE CAESAR ........................................................................................... 5
    4.1 - Furnishing Prototype Plans ........................................................................................ 5
    4.2 - Site Selection Assistance ............................................................................................ 5
    4.3 - Loan of Confidential Operating Manuals ................................................................... 5
    4.4 - Training ....................................................................................................................... 6
    4.5 - Marketing, Management, and Operational Assistance ................................................ 6
    4.6 - Inspections and Evaluations ....................................................................................... 6
    4.7 - Relationship to Other Little Caesar Businesses ......................................................... 6

5.  DUTIES OF FRANCHISEE .................................................................................................. 6
    5.1 - Importance of Compliance with System Standards ..................................................... 6
    5.2 - Use of Restaurant Premises ........................................................................................ 6
    5.3 - Conformance to System Standards .............................................................................. 6
    5.4 - Approved Suppliers ..................................................................................................... 7
    5.5 - Maintenance of Restaurant Premises .......................................................................... 8
    5.6 - Refurbishing the Restaurant ....................................................................................... 8
    5.7 - Access to Restaurant ................................................................................................... 8
    5.8 - Franchisee Training ..................................................................................................... 9
    5.9 - Franchisee Employee Policy ....................................................................................... 9
    5.10 - Franchisee Lease Provisions ..................................................................................... 9
    5.11 - Furnishing Lease to Little Caesar ............................................................................. 10
    5.12 - Prices for Goods and Services .................................................................................. 10
    5.13 - Compliance with Governmental Requirements ......................................................... 10
    5.14 - Notification of Legal Proceedings ............................................................................ 11
    5.15 - Attendance at Meetings, Seminars and Conferences ................................................ 11
    5.16 - Franchisee Developments ......................................................................................... 11
    5.17 - Participation in Franchisee Advisory or Other Committees ...................................... 11

6.  CONSTRUCTION OF LEASEHOLD IMPROVEMENTS ..................................................... 11
    6.1 - Obligation to Construct Leasehold Improvements ...................................................... 11

LITTLE CAESAR ENTERPRISES, INC.

# FRANCHISE AGREEMENT

## TABLE OF CONTENTS

(Continued)

|  |  |  |
|---|---|---|
|  | 6.2 - Securing Governmental Approvals | 12 |
|  | 6.3 - Employment of a Qualified Architect or Engineer | 12 |
|  | 6.4 - Employment of a Qualified Contractor | 12 |
|  | 6.5 - Construction of Leasehold Improvements and Securing Approval to Open | 12 |
|  | 6.6 - Time is of the Essence in Construction of Leasehold Improvements | 12 |
|  | 6.7 - Construction Insurance | 12 |
| 7. | PROPRIETARY MARKS | 13 |
|  | 7.1 - Little Caesar Representations Concerning Proprietary Marks | 13 |
|  | 7.2 - Franchisee Use of Proprietary Marks | 13 |
|  | 7.3 - Franchisee Representations Concerning Proprietary Marks | 14 |
| 8. | CONFIDENTIAL MANUALS AND INFORMATION | 15 |
|  | 8.1 - Keeping Manuals Confidential | 15 |
|  | 8.2 - Keeping Manuals Current | 15 |
|  | 8.3 - Protection of Confidential Information | 15 |
|  | 8.4 - Irreparable Injury from Disclosure of Confidential Information | 15 |
|  | 8.5 - Confidentiality Covenants from Individuals Associated with Franchisee | 15 |
| 9. | ADVERTISING | 16 |
|  | 9.1 - Amounts and Recipients of Advertising Contribution | 16 |
|  | 9.2 - CAESAR FUND | 16 |
|  | 9.3 - Advertising Cooperative for Local or Regional Advertising | 17 |
|  | 9.4 - Little Caesar Approval of Advertising | 18 |
|  | 9.5 - Initial Opening Promotion | 18 |
|  | 9.6 - Use of Internet | 18 |
|  | 9.7 - Copyright | 18 |
|  | 9.8 - Advertising for Prospective Franchisees | 18 |
| 10. | INSURANCE | 18 |
|  | 10.1 - Franchisee's Insurance Obligation | 18 |
|  | 10.2 - Franchisee's Insurance Obligation Not Affected by Little Caesar's Insurance | 19 |
|  | 10.3 - Additional Required Endorsements | 19 |
|  | 10.4 - Certificates of Insurance | 19 |
|  | 10.5 - Little Caesar's Right to Secure Insurance on Behalf of Franchisee | 19 |
| 11. | ACCOUNTING AND RECORDS | 19 |
|  | 11.1 - Computer System | 19 |
|  | 11.2 - Maintenance of Computer System | 20 |
|  | 11.3 - Maintenance of Records | 20 |
|  | 11.4 - Submission of Financial Statements and Tax Returns | 20 |
|  | 11.5 - Submission of Periodic Reports | 20 |
|  | 11.6 - Submission of Additional Reports | 20 |
|  | 11.7 - Right to Audit Franchisee Records | 20 |
| 12. | TRANSFER OF INTEREST | 21 |
|  | 12.1 - Transfer by Little Caesar | 21 |

LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

TABLE OF CONTENTS

(Continued)

|  |  |  |
|---|---|---|
| | 12.2 - Transfer by Franchisee | 21 |
| | 12.3 - Prohibited Transfers | 22 |
| | 12.4 - Execution of Covenants by Transferee | 23 |
| | 12.5 - Little Caesar Right of First Refusal | 23 |
| | 12.6 - Death or Mental Incapacity of Franchisee | 24 |
| | 12.7 - Approval of Sale Does Not Constitute Waiver of Rights | 24 |
| | 12.8 - Private Sale of Securities | 24 |
| | 12.9 - Transfer by Franchisee Bankruptcy - Right of First Refusal | 25 |
| 13. | DEFAULT AND TERMINATION | 25 |
| | 13.1 - Termination Upon Occurrence of Bankruptcy or Insolvency | 25 |
| | 13.2 - Termination with Notice and Without Right to Cure | 26 |
| | 13.3 - Termination with Notice and Opportunity to Cure | 28 |
| | 13.4 - Extension of Cure Period by Operation of Law | 28 |
| | 13.5 - Costs | 28 |
| 14. | OBLIGATIONS UPON TERMINATION OR EXPIRATION | 28 |
| | 14.1 - Cessation of Restaurant Operations | 28 |
| | 14.2 - Cessation of Use of Confidential Information and Proprietary Marks | 28 |
| | 14.3 - Cancellation of Assumed Name Registration | 28 |
| | 14.4 - Assignment of Lease | 28 |
| | 14.5 - Modification of Restaurant to Avoid Public Confusion | 29 |
| | 14.6 - Franchisee Payment of Debts | 29 |
| | 14.7 - Franchisee Payment of Little Caesar's Cost in Securing Franchisee Compliance with Post Termination Obligations | 29 |
| | 14.8 - Franchisee Return of Manuals and Other Materials | 29 |
| | 14.9 - Little Caesar Right to Purchase Franchisee Assets | 29 |
| 15. | COVENANTS | 30 |
| | 15.1 - Franchisee to Devote Full Time and Best Efforts to Restaurant | 30 |
| | 15.2 - Non-Competition During Term of Agreement | 30 |
| | 15.3 - Non-Competition After Expiration of Term of Agreement | 30 |
| | 15.4 - Breach of Covenants Cause Irreparable Injury | 31 |
| | 15.5 - Little Caesar Right to Reduce Scope of Covenants | 31 |
| | 15.6 - Enforceability of Covenants Not Affected by Franchisee Claims | 31 |
| | 15.7 - Covenants from Individuals | 31 |
| 16. | FRANCHISEE AS A CORPORATION OR PARTNERSHIP OR LLC | 31 |
| | 16.1 - Corporate Franchisee | 31 |
| | 16.2 - Partnership Franchisee | 31 |
| | 16.3 - Limited Liability Company Franchisee | 32 |
| | 16.4 - Franchisee Shareholders and Members to Execute Personal Guarantees | 32 |
| 17. | TAXES | 32 |
| | 17.1 - Payment of Taxes | 32 |
| | 17.2 - Challenging Tax Assessment | 32 |

iii

LITTLE CAESAR ENTERPRISES, INC.

# FRANCHISE AGREEMENT

## TABLE OF CONTENTS

(Continued)

18. INDEPENDENT CONTRACTOR AND INDEMNIFICATION ................................. 32
    18.1 - No Fiduciary Relationship ..................................................... 32
    18.2 - Public Notice of Independent Status ........................................ 32
    18.3 - Independent Contractor ........................................................ 32
    18.4 - Indemnification ................................................................... 33

19. APPROVALS AND WAIVERS ............................................................. 33
    19.1 - No Waiver ........................................................................ 33
    19.2 – Requests for Waivers, Approvals or Consents ........................... 33
    19.3 – Little Caesar's Reasonable Business Judgment ......................... 34
    19.4 - Remedy for Non-approval ..................................................... 34
    19.5 - Atypical Modifications to System ........................................... 34

20. NOTICES ................................................................................... 34
    20.1 - Notices ........................................................................... 34

21. ENTIRE AGREEMENT; MODIFICATIONS ............................................. 35
    21.1 - Entire Agreement ............................................................... 35
    21.2 – Modification Approved by Majority of Franchised Restaurants ....... 35

22. SEVERABILITY AND CONSTRUCTION ............................................... 35
    22.1 - Severability and Construction ............................................... 35
    22.2 - Survival of Modified Covenants ............................................. 35
    22.3 - Survival of Obligations After Expiration of Agreement ................ 36
    22.4 - Captions ......................................................................... 36
    22.5 - Affiliate and Principal Defined ............................................. 36

23. APPLICABLE LAW AND JURISDICTION; LIMITATION ON LEGAL RIGHTS ......... 36
    23.1 - Choice of Law ................................................................... 36
    23.2 - Venue ............................................................................ 36
    23.3 - Nonexclusivity of Remedy .................................................... 36
    23.4 - Right to Injunctive Relief .................................................... 36
    23.5 - Limitation on Legal Rights .................................................. 37

24. ACKNOWLEDGMENTS AND REPRESENTATIONS ................................... 37
    24.1 - Recognition of Business Risks .............................................. 37
    24.2 - Receipt of Franchise Offering Materials .................................. 37
    24.3 - Review of Franchise Offering Materials ................................... 38
    24.4 - Uniformity of Agreements ................................................... 38
    24.5 - Terrorist and Money Laundering Activities ............................... 38

25. AMENDMENT OF PRIOR AGREEMENTS ............................................. 38
    25.1 –California Stores Only .......................................................... 38
    25.2 - Amendment of Prior Agreements................................................ 39

GUARANTEE .................................................................................... i

iv

# LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

**THIS AGREEMENT**, with an effective date of October 1, 2010, is made by and between **Little Caesar Enterprises, Inc.**, a Michigan corporation with its principal place of business at 2211 Woodward Avenue, Detroit, Michigan 48201 ("*Little Caesar*"), and **Kmart Corporation, a Michigan corporation** with its principal place of business at 333 Beverly Road, B6-260A, Hoffman Estates, IL 60179-0001 ("*Franchisee*").

## RECITALS

A.  Little Caesar, as the result of the expenditure of time, skill, effort, and money, has developed several restaurant concepts, each of which offers to the public a wide variety of pizza, pasta, and related items.

B.  Each restaurant concept includes technical information and expertise relating to the preparation and production of food products; the use of special spices, sauces, and pizza dough, all of which constitute trade secrets and are identified by the public with Little Caesar products; special recipes and menu items; prescribed exterior and interior design, decor, fixtures, and furnishings; standards and specifications for products and supplies; service standards; uniform standards, specifications, and procedures for operations; training and assistance; and advertising and promotional programs (collectively "*Operational Plans*"); all of which may be changed, improved, and further developed by Little Caesar from time to time.

C.  Each restaurant concept shall utilize Little Caesar's Operational Plans, portions of which are the same or similar to the Operational Plans provided by Little Caesar to other restaurant concepts, and portions of which are used by Little Caesar only with the specific restaurant concept. The Operational Plans utilized by the specific restaurant concept to be licensed to Franchisee pursuant to this Agreement are hereinafter referred to as "*System*".

D.  Little Caesar identifies its restaurant concepts by means of certain trade names, service marks, trademarks, logos, emblems, and indicia of origin ("*marks*") as are now or may hereinafter be designated by Little Caesar. Each restaurant concept shall use certain marks which are used only with that concept as well as share other such marks with other restaurant concepts. The marks to be utilized by the specific restaurant concept to be licensed to Franchisee pursuant to this Agreement, are hereinafter referred to as "*Proprietary Marks*".

E.  Franchisee desires to enter into the business of operating a restaurant utilizing the System for a "Little Caesars Carryout" and using the Proprietary Marks ("*Restaurant*"), and wishes to enter into an agreement with Little Caesar for that purpose, and to receive the training and other assistance provided by Little Caesar in connection therewith.

F.  Franchisee acknowledges that Little Caesar franchises and operates other restaurant businesses, some of whose products are similar to those to be offered pursuant to this Agreement.

G.  Franchisee understands and acknowledges the importance of Little Caesar's high standards of quality, cleanliness, appearance, service, and proprietary spices, sauces, and dough, and the necessity of operating its business in conformity with Little Caesar's standards and specifications.

**The parties agree as follows:**

## 1.  GRANT

**1.1 - Franchise Grant**:  Little Caesar hereby grants to Franchisee the right, and Franchisee accepts the obligation, to use the Proprietary Marks and System applicable to a "Little Caesars Carryout" Restaurant solely in connection with the operation of the Restaurant and any activities associated with the Restaurant.

**1.2 - Location of Restaurant**:    The Restaurant shall be located at _____ ("*Approved Location*").  If, at the time of execution of this Agreement, a location for the Restaurant has not been approved by Little Caesar, Franchisee shall lease or otherwise acquire a location subject to Little Caesar's prior written approval; upon such approval, the address of such location shall be inserted above, and become the Approved Location.  Franchisee shall not relocate the Approved Location without the prior written approval of Little Caesar, which approval may be subject to, among other requirements, fulfillment of the obligation set forth in Section 5.6.  Any approvals furnished by Little Caesar pursuant to this Section 1.2 shall not be deemed to be a guarantee or assurance by Little Caesar that the Restaurant shall be profitable or successful.  Franchisee shall pay Little Caesar a relocation fee of Two Thousand Five Hundred ($2,500) Dollars at the time Franchisee submits its relocation request package to Little Caesar.  The relocation fee is refundable only if Little Caesar does not approve Franchisee's relocation request.  Franchisee acknowledges and agrees that Little Caesar shall not approve any relocation outside of the Designated Market Area (as defined by the Nielsen Company) of the Approved Location.

**1.3 - Territorial Protection**:  During the term of this Agreement, unless stated otherwise in an addendum to this Franchise Agreement and except as otherwise provided in Section 1.4, Little Caesar shall not establish or operate, or franchise others to establish or operate, a business using the Proprietary Marks and System at any location within the geographical area enclosed within a circle which:  (a) is drawn around the Approved Location; (b) has the Approved Location at its center; and (c) has a radius of one mile ("*Protected Territory*").

**1.4 - Exclusions from Territorial Protection**:  Franchisee expressly acknowledges and agrees that, except as provided in Section 1.3, the franchise is non-exclusive.  Little Caesar and any Little Caesar affiliate (as the term "affiliate" is defined in Section 22.5) retain the right, among others, in any manner and on any terms and conditions Little Caesar deems advisable, and without granting Franchisee any rights therein:

(a) to own, acquire, establish, and/or operate, and license others to establish and operate, businesses using the Proprietary Marks and System (i) outside the Protected Territory and, (ii) inside the Protected Territory in arenas, sports stadium, shopping malls, department and retail stores, casinos, amusement parks, fairs, schools, factories, hospitals, penal institutions, airports, military bases, and other business premises, where the primary business conducted at such business premises is other than the retail sale of food or food products which are ready for consumption.

(b) to own, acquire, establish and/or operate, and license others to establish and operate, other restaurant concepts now or hereinafter offered by Little Caesar, as well as businesses under proprietary marks other than the Proprietary Marks or other systems, whether such restaurant concepts or businesses are similar to or different from the Restaurant, at any location within or outside the Protected Territory; and

(c) to sell or distribute, at retail or wholesale, directly or indirectly, or license others to sell or distribute, any products under any proprietary marks, including the Proprietary Marks, at any location within or outside the Protected Territory.

**1.5 - No Customer Exclusivity**:  Franchisee expressly acknowledges that all Restaurants (regardless of ownership) may solicit, sell, and/or deliver products to customers without regard to the customers' geographic location, and including customers located in the Protected Territory, if any.

**1.6 - Modifications to System**:  Franchisee acknowledges that the System and the products and services offered by the Restaurant may be modified (such as, but not limited to, the addition, deletion, and modification of menu items, operating procedures, ingredients, recipes, products and services) from time to time by Little Caesar; and Franchisee agrees to comply, at its expense, with all such modifications, including without limitation, all requirements needed to implement the modifications, such as replacement or renovation of equipment, remodeling, redecoration, and modifications to existing improvements, including structural changes.

## 2.  TERM AND RENEWAL

**2.1 - Initial Term of Franchise**:  Except as otherwise provided herein, the term of this Agreement shall commence on the date set forth on page 1 of this Agreement, and shall expire at 11:59 p.m. on the date of the tenth anniversary of the opening date of the Restaurant.  The opening date of the Restaurant shall be established by Little Caesar pursuant to Section 6.5 of this Agreement.

**2.2 - Renewal Term of Franchise**:  Franchisee may, at its option, renew this franchise for one renewal term of ten (10) years, subject to the following prerequisites:

2.2.1    Franchisee shall give Little Caesar written notice of Franchisee's election to renew no fewer than six (6) months nor more than twelve (12) months prior to the end of the initial term;

2.2.2    Franchisee shall renovate and modernize the Restaurant to conform to the then-current standards and image of the System, including, without limitation, renovation, replacement, or installation of signs, furnishings, fixtures, equipment, and decor;

2.2.3    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Little Caesar and its affiliates and shall not be in default of any provision of this Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates, and in the reasonable judgment of Little Caesar, Franchisee shall have substantially and timely complied with all the terms, conditions, and obligations of such agreements during the terms thereof and the Manuals (as defined in Section 4.3);

2.2.4    Franchisee shall present satisfactory evidence that it has the right to remain in possession of the Approved Location for the duration of the renewal term, or shall obtain Little Caesar's

approval of a new location, in accordance with Section 1.2, within any Protected Territory granted by this Agreement provided, however, that the Protected Territory, if any, created pursuant to Section 1.3 for the new Approved Location shall not conflict with any protected territory of any Little Caesar restaurant, and regardless of whether the restaurant is owned by a franchisee or Little Caesar or an affiliate;

2.2.5    Franchisee shall execute Little Caesar's then-current form of renewal franchise agreement, which agreement shall supersede this Agreement in all respects, and the terms of which may differ from the terms hereof and be less advantageous to Franchisee, except that no initial franchise fee shall be payable by Franchisee.

2.2.6    In Little Caesar's reasonable judgment, Franchisee shall have substantially and timely complied with Little Caesar's uniform operating standards as set forth in the Manuals or otherwise in writing and fulfill minimum financial and marketing requirements.

2.2.7    Franchisee shall have executed a general release, in a form satisfactory to Little Caesar, of any and all claims which it may have against Little Caesar and its shareholders, directors, employees and agents, including without limitation, claims arising under federal, state, and local laws and regulations.

2.2.8    Franchisee shall have paid Little Caesar a renewal fee of Two Thousand Five Hundred and 00/100 ($2,500.00).

## 3.  FEES

**3.1 - Franchise Fee**:  Little Caesar acknowledges receipt from Franchisee of an initial franchise fee of _____.  The initial franchise fee shall be deemed fully earned and non-refundable when paid, in consideration of administrative and other expenses incurred by Little Caesar in entering into this Agreement, and for Little Caesar's lost or deferred opportunity to enter into an Agreement with others.

**3.2 - Royalty Fee**:  During the term of this Agreement, Franchisee shall pay to Little Caesar a continuing royalty fee in an amount equal to the greater of (i) six percent (6%) of the Gross Sales for the Restaurant for each one (1) week period, or such other period as Little Caesar may specify from time to time, or (ii) One Hundred ($100) Dollars per each one (1) week period. "**Gross Sales**" shall mean revenue from the sale of all products and services and all other income or consideration of every kind and nature received by the Restaurant, including, without limitation, all revenues associated with delivering and/or selling products or services off- premises to customers and, any proceeds from business interruption insurance, whether for cash or credit, and regardless of collection in the case of credit, less any sales taxes or other taxes collected by Franchisee from its customers and thereafter paid directly to the appropriate taxing authority.

**3.3 - Advertising Fee**:  Franchisee shall make continuing expenditures and contributions to advertising and promotion as specified in Section 9 hereof.

**3.4 - Time and Manner of Payment; Late Fee**:  The continuing royalty and advertising fees pursuant to Sections 3.2, 3.3 and 9 are due weekly, or such other time period as Little Caesar may specify, in the manner prescribed by Little Caesar.  Little Caesar shall have the right to require Franchisee to pay the royalty and/or advertising fee by electronic fund transfer, pre-authorized auto-draft arrangement

("EFT"), or such other methods as Little Caesar shall specify from time to time. Franchisee shall execute the EFT Authorization Documentation attached as Exhibit B-1. Any royalty, advertising or other payment not made to Little Caesar or its affiliates on or before the due date shall be deemed to be overdue; in such event, Franchisee shall pay Little Caesar or such affiliate, in addition to the overdue amount, Little Caesar's or the affiliate's then-current late fee for each unpaid invoice plus interest on such overdue amount from the date it was due until paid, at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, calculated on a daily basis. Entitlement to such interest shall be in addition to any other remedies Little Caesar or the applicable affiliate may have.

**3.5 - Reimbursement of Monies Paid on Behalf of Franchisee**: Franchisee shall pay to Little Caesar, within fifteen (15) days of any written request by Little Caesar which is accompanied by reasonable substantiating material, any monies which Little Caesar has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

**3.6 - No Set-off; Application of Payments; Refundability**: Franchisee's obligations for the full and timely payment of the fees described in this Agreement are absolute and unconditional. Franchisee must not delay or withhold the payment of all or part of those fees based on the alleged non-performance by Little Caesar or for any other reason or put the fees in escrow or setoff against any claims Franchisee may allege against Little Caesar. Little Caesar may apply any payments received from Franchisee for royalty, advertising fees, purchases from Little Caesar, interest, late charges or any other obligation of Franchisee to Little Caesar to the obligation and in the manner chosen by Little Caesar, regardless of any other designation by Franchisee. Payment of all fees, contributions and other amounts will be deemed fully earned and nonrefundable on payment.

## 4.  DUTIES OF LITTLE CAESAR

**4.1 - Furnishing Prototype Plans**: Little Caesar shall make available, at no charge to Franchisee, prototype plans and specifications for the construction of a Restaurant, including exterior and interior design and layout.

**4.2 - Site Selection Assistance**: If no Approved Location has been selected at the time the Agreement is executed, then, at Franchisee's request, Little Caesar shall offer such assistance to Franchisee, as Little Caesar deems appropriate, in selecting a site for the Approved Location. Franchisee acknowledges that the location, selection, procurement and development of a site for the Restaurant is Franchisee's responsibility. Franchisee acknowledges and agrees that Little Caesar's approval of a site for Franchisee's Restaurant is not, and shall not be construed as, a guarantee or assurance that the Restaurant will be profitable or successful.

**4.3 - Loan of Confidential Operating Manuals**: In order to protect the reputation and goodwill of Little Caesar, to maintain uniform standards of the products, services, programs, and
operations offered and sold under Little Caesar's Proprietary Marks, to promote the goodwill of all Restaurants, and the System, Little Caesar has prepared a Confidential Operating Manual, Marketing Manual, and other manuals and written materials (collectively, "*Manuals*"). Little Caesar shall loan one copy of the Manuals to Franchisee during the term of this Agreement. Franchisee acknowledges and agrees that Little Caesar has the right to revise the Manuals to incorporate System changes. Franchisee shall promptly implement any System changes upon receipt of notice thereof from Little Caesar, and shall complete their implementation within such time as Little Caesar may specify.

**4.4 - Training**:  Little Caesar shall offer at the time(s) and location(s) selected by it, a pre-opening training program to Franchisee and to those employees of Franchisee whom Little Caesar deems appropriate and, during the term of this Agreement, at the time(s) and location(s) selected by it, make available such other required and optional training programs as Little Caesar deems necessary and appropriate.

**4.5 - Marketing, Management, and Operational Assistance**:  Little Caesar shall provide such initial and continuing advice and assistance to Franchisee in the marketing, management, and operation of the Restaurant as Little Caesar deems appropriate, at the time(s) and in the manner determined by Little Caesar.  In the event that Franchisee requests assistance in addition to that customarily furnished to franchisees, and Little Caesar chooses to furnish such assistance, then, in such event, Little Caesar shall have the option to impose a reasonable fee, plus expenses, for providing such assistance.

**4.6 - Inspections and Evaluations**:  Little Caesar shall conduct, when and as frequently as it deems appropriate, inspections of Franchisee's business premises and evaluations of the Restaurant management and operations, in order to assist Franchisee and to maintain the System's standards of quality, appearance, and service.

**4.7 - Relationship to Other Little Caesar Businesses**:  In fulfilling its obligations to Franchisee, and in conducting any activities or exercising any rights pursuant to this Agreement, Little Caesar (and its affiliates) shall have the right (i) to take into account, as it sees fit, the effect on, and the interests of, other restaurants in which Little Caesar has an interest, and on Little Caesar's (and its affiliates') own activities; (ii) to share market and product research, and other proprietary and non-proprietary business information, with other restaurants in which Little Caesar has an interest, or with Little Caesar's affiliates; and/or (iii) to introduce products or operational equipment used by the System into other franchised systems in which Little Caesar has an interest, and to allocate new products and/or developments between and among systems, and/or Little Caesar's affiliates, as Little Caesar sees fit.  Franchisee understands and agrees that all obligations of Little Caesar under this Agreement are subject to this Section 4.7, and that nothing in this Section 4.7 shall affect in any way Franchisee's obligations under this Agreement.

## 5.  DUTIES OF FRANCHISEE

**5.1 - Importance of Compliance with System Standards**:  Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality operating standards, (ii) increase the demand for the products and services sold by all franchisees operating
under the System, and (iii) protect Little Caesar's reputation and goodwill.  Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations.

**5.2 - Use of Restaurant Premises**:  Franchisee shall use and occupy the Restaurant premises solely for the operation of the business franchised hereunder, shall refrain from using or permitting the use of the premises for any other purpose or activity; and shall keep the Restaurant open and in normal operation for at least such minimum hours and days as Little Caesar may specify in the Manuals or otherwise in writing, and as may be required by the lease for the Restaurant premises.

**5.3 - Conformance to System Standards**:  To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing.

Franchisee shall refrain from (a) deviating from such standards, specifications, and procedures without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System.

5.3.1    Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar standards and specifications; and shall refrain from using non-conforming items;

5.3.2    Franchisee shall sell or offer for sale only such products and services as meet Little Caesar's uniform standards of quality, as have been expressly approved for sale in writing by Little Caesar, and as have been prepared in accordance with Little Caesar's methods and techniques for product preparation; shall sell or offer for sale, all products, and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System; shall not deviate from Little Caesar's methods, standards, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served; and shall discontinue selling and offering for sale any products or services which Little Caesar disapproves in writing at any time.

5.3.3    Franchisee shall purchase and install, at Franchisee's expense, all fixtures, furnishings, equipment, decor, signs, and other items as Little Caesar may reasonably direct from time to time in the Manuals or otherwise in writing; and shall refrain from installing or permitting to be installed on or about the Restaurant premises, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Little Caesar's standards and specifications.

5.3.4    Franchisee shall display promotional signs or other written promotional materials or participate in other promotions, in the manner requested by Little Caesar. Franchisee agrees to participate in any gift card, electronic gift or money card (E-card), or frequency card programs or other programs specified by Little Caesar and to honor all such cards issued by Little Caesar or a third party designated by Little Caesar.

**5.4 - Approved Suppliers**:
5.4.1    New Franchisees on or after April 1, 2004. New Franchisees on or after April 1, 2004 shall purchase all current and future Little Caesar spec products (and not approved alternative products), ingredients, equipment, supplies, and materials used or sold by the Restaurant, including Little Caesars spice blend, dough mix and vegetable seasonings, solely from Little Caesar's affiliate Blue Line Foodservice Distribution ("Blue Line"), or such other entity as Little Caesar designates in writing.

5.4.2    Existing Franchisees. If Franchisee was an existing franchisee of Little Caesars and operated a franchised Restaurant prior to April 1, 2004, then with respect to the Restaurant operated hereunder, Franchisee shall purchase all products, ingredients, equipment, supplies, and materials used or sold by the Restaurant, solely from suppliers (including manufacturers, wholesalers and distributors) who demonstrate, to Little Caesar's continuing reasonable satisfaction, the ability to meet Little Caesar's reasonable standards and specifications for such items and for the supplier's business operations; who possess adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; and who have been approved by Little Caesar in the Manuals or otherwise in writing and not thereafter disapproved. If Franchisee desires the approval of other suppliers, Franchisee shall submit to Little Caesar a written request to approve the proposed supplier, together with such evidence of conformity with Little Caesar's standards and specifications as Little Caesar may reasonably require. Little Caesar shall have the right to inspect and evaluate the supplier's facilities and business operations and test the item to

be supplied, and Franchisee shall pay all of Little Caesar's reasonable expenses incurred in so doing. Little Caesar may revoke its approval at any time if Little Caesar determines, in its sole discretion, that the supplier no longer meets Little Caesar's standards. Upon receipt of written notice of such revocation, Franchisee shall cease purchasing from any disapproved supplier. Franchisee acknowledges and agrees that Little Caesar, Blue Line or a Little Caesar affiliate is the exclusive source for Little Caesars spice blend, dough mix and vegetable seasonings. Little Caesar reserves the right to restrict the availability of current and future products, and/or ingredients which incorporate quality or taste features unique to Little Caesar, including, but not limited to, secret spices which materially affect the flavor or quality of the System's signature products and a dough blend mix used to prepare pizza, to a supplier or suppliers designated by Little Caesar, in order to better assure the quality and maintain the confidentiality of the trade secrets associated with such items.

5.4.3    Notwithstanding the foregoing, Franchisee must purchase beverage products from the supplier or source that Little Caesar designates in the Manuals or otherwise in writing.

5.4.4    Franchisee acknowledges that Little Caesar and/or its affiliates may make a profit on goods, products and/or services sold to Franchisee. Franchisee also acknowledges that Little Caesar and/or its affiliates may receive consideration from suppliers and/or manufacturers with respect to sales of goods, products or services to Franchisee or in consideration of services rendered or rights licensed to such person. The consideration may or may not be related to services performed by Little Caesar and/or its affiliates. Franchisee agrees that Little Caesar and its affiliates will be entitled to such profits and/or consideration. Franchisee's purchases from Blue Line or other entities will be at the price in effect at that time.

**5.5 - Maintenance of Restaurant Premises**:  Franchisee shall maintain the Restaurant premises (including adjacent public areas) in a clean, orderly condition and in excellent repair; and, in connection therewith, Franchisee shall, at its expense, make such additions, alterations, repairs, and replacements thereto (but no others without Little Caesar's prior written consent) as may be required for that purpose, including, without limitation, such periodic repainting, repairing, repairing, and replacing of obsolete or deteriorated signs, furnishings, fixtures, equipment, and decor as Little Caesar may reasonably direct by written notice to Franchisee. Franchisee shall complete all work specified in the notice within sixty (60) days after receipt of such notice.

**5.6 - Refurbishing the Restaurant**:  Unless sooner required by Franchisee's lease, at any time after the fifth (5th) year of the term, Franchisee shall, at Little Caesar's request, refurbish the Restaurant premises at Franchisee's expense, to conform to the building design, trade dress, color schemes, and presentation of the Proprietary Marks in a manner consistent with the then-current public image for new or remodeled Restaurants, including, without limitation, replacement or renovation of fixtures; remodeling, redecoration, and modifications to existing improvements and reasonable structural changes, provided, however, that the cost to Franchisee for such refurbishment shall not exceed Fifty Thousand ($50,000) Dollars.

**5.7 - Access to Restaurant**:  Franchisee shall grant Little Caesar and its agents entry at normal business hours on the Restaurant premises for the purpose of conducting inspections and testing products; shall cooperate with Little Caesar's representatives in such inspections and testing by rendering such assistance as they may reasonably request; and, upon written notice from Little Caesar or its agents and without limiting Little Caesar's other rights hereunder, shall promptly correct such deficiencies discovered during any such inspection.

**5.8 - Franchisee Training**:  Prior to the opening of the Restaurant, Franchisee (or, if Franchisee is a corporation or other entity, a principal of Franchisee acceptable to Little Caesar) and those employees of Franchisee specified by Little Caesar, shall attend and complete, to Little Caesar's satisfaction, the pre-opening training program offered by Little Caesar.  Little Caesar shall provide training, instructors, a training manual, and other materials without charge; and Franchisee shall be responsible for any and all other expenses incurred during the pre-opening training program, including the costs of transportation, lodging, meals, and any wages.  If, at any time during the term of this Agreement, Franchisee chooses to send additional employees for the pre-opening training program, (with Little Caesar's prior consent) Franchisee shall pay Little Caesar a fee to be determined by Little Caesar, which fee shall not exceed Two Hundred Fifty ($250) Dollars for each attendee.  Little Caesar shall have the right to terminate this Agreement if, at any time during the pre-opening training program, it concludes (in its sole judgment) that Franchisee or its principal (as the term "principal" is defined in Section 22.5) does not appear to possess the skills necessary to properly fulfill and discharge the demands and responsibilities required by the System or this Agreement.  Franchisee and other employees designated by Little Caesar also shall attend such additional training programs as Little Caesar may reasonably require from time to time and at any time. Little Caesar shall not charge any fees for those attending required additional training programs, and may charge a fee for optional training.  Franchisee shall be responsible for any and all other expenses incurred in connection with additional training programs, including the costs of transportation, lodging, meals, and any wages.

Franchisee acknowledges and agrees that no compensation or other benefits will be paid to Franchisee, its principals, owners, managers or employees for any services performed by Franchisee or its principals, owners, managers or employees during training at any Restaurant operated by Little Caesar or any other person.  Franchisee assumes all responsibility for any injuries sustained by Franchisee, its principals, owners, managers or employees while attending training.

**5.9 - Franchisee Employee Policy**:  Franchisee shall maintain a competent and conscientious staff who have been trained in product preparation and general business operations in accordance with the procedures set forth in the Manuals, and who meet required governmental health and employment standards.  Franchisee shall take such steps as are necessary to ensure that its employees preserve good customer relations; render competent, prompt, courteous, and knowledgeable service; and meet such minimum standards as Little Caesar may establish from time to time in the Manuals or otherwise in writing.  Franchisee shall be solely responsible for all employment decisions of the Restaurant, including, without limitation, those related to hiring, firing, remuneration, personnel policies, benefits, record keeping, supervision, and discipline, and regardless of whether Franchisee received advice from Little Caesar on such subjects.

**5.10 - Franchisee Lease Provisions**:  Franchisee shall comply with all terms of its lease, and shall refrain from any activity which may jeopardize Franchisee's right to remain in possession of, or to renew the lease for the Restaurant premises.  Franchisee shall, prior to the execution of any lease or renewal lease, submit it to Little Caesar for its written approval.  Little Caesar's approval, which shall not be deemed to be an endorsement of the legal or business terms of the lease, may be conditioned upon the inclusion of any one or more the following terms and conditions:

5.10.1    That the initial term of the lease, or the initial term together with renewal terms, shall be for at least ten (10) years;

5.10.2    That the lessor consents to Franchisee's use of such Proprietary Marks and signage as Little Caesar may now or hereinafter prescribe for the Restaurant;

5.10.3    That the use of the leased premises be restricted solely to the operation of the Restaurant;

5.10.4    That Franchisee be prohibited from subleasing or assigning all or any part of its occupancy rights or extending the term of or renewing the lease without Little Caesar's prior written consent;

5.10.5    The lessor will furnish to Little Caesar written notice specifying any default and the method of curing any such default under any such lease, and shall allow Little Caesar thirty (30) days after receipt thereof to cure such defaults (except that if such default involves non-payment of rent, Little Caesar shall have fifteen (15) days from receipt of such notice to cure such default);

5.10.6    That Little Caesar have the right to enter the premises to make modifications necessary to protect the Proprietary Marks or the System or to cure any default under the Agreement or under the lease or sublease;

5.10.7    That, in the event of a default, expiration, or termination of this Agreement or the lease, Little Caesar (or Little Caesar's designee) shall have the option, upon notice to the lessor, to assume all of Franchisee's rights under the lease terms, including the right to assign or sublease; and

5.10.8    No amendment to the lease may be made without Little Caesar's prior written consent, which consent shall not be unreasonably withheld.

**5.11 - Furnishing Lease to Little Caesar**:  Franchisee shall furnish Little Caesar with a copy of any executed lease or amendment within ten (10) days after execution thereof.

**5.12 - Prices for Goods and Services**:  Little Caesar may provide guidance on the pricing of the products and services sold by Franchisee.  Franchisee must follow any maximum pricing guidelines specified by Little Caesar, subject to applicable law.  In order to prepare advertising and promotional materials, Little Caesar may establish and maintain suggested prices.  Except for any maximum prices specified by Little Caesar, Franchisee will not be required to follow suggested prices.  However, if Franchisee elects to establish pricing different than Little Caesar's suggested prices, Franchisee will be responsible for any additional costs incurred to produce marketing and promotional materials containing the prices established by Franchisee.

**5.13 - Compliance with Governmental Requirements**:  Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant, shall comply with all federal, state, and local laws, rules, and regulations including but not limited to OSHA, USDA and other food safety regulations, and labor laws, and shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant including, without limitation, licenses to do business, fictitious name registrations, sales tax permits, certificates of occupancy, and fire clearances.  Franchisee shall notify Little Caesar by telephone and facsimile within twenty-four (24) hours after receipt of any notice alleging a possible health or safety problem, and also shall furnish to Little Caesar, within three (3) days after receipt thereof, a copy of any notice alleging non-compliance with the requirements of this Section.

**5.14 - Notification of Legal Proceedings**:  Franchisee shall notify Little Caesar in writing within five (5) days of the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, which may adversely affect the operation or financial condition of the Restaurant.

**5.15 - Attendance at Meetings, Seminars and Conferences**:  Franchisee, a principal of Franchisee or an individual designated by Franchisee and approved by Little Caesar pursuant to Section 15.1, at Franchisee's expense, must attend all meetings, seminars and conferences Little Caesar may specify as mandatory, including, without limitation, all DMA or other marketing area meetings for the marketing area in which the Restaurant is located, all meetings related to new products or product preparation procedures, new System programs, new operations procedures or programs, training, restaurant management, financial management, sales or sales promotion, or similar topics and annual conferences. If none of Franchisee, a principal of Franchisee or an individual designated by Franchisee and approved by Little Caesar pursuant to Section 15.1 is able to attend any such meeting, seminar or conference, Franchisee must so notify Little Caesar before the meeting, seminar or conference and must cause a substitute person from Franchisee's operations to attend and represent Franchisee at the meeting, seminar or conference.

**5.16 - Franchisee Developments**:  If Franchisee or its principals, agents or employees develops any new concept (including any advertising concept or idea), product, process, or improvement or any slogan in the operation or promotion of the Restaurant, Franchisee must promptly notify Little Caesar and provide Little Caesar with all necessary related information, without compensation.  Franchisee and its principals, agents and employees acknowledge and agree that any such new concept (including any advertising concept or idea), product, process, improvement or slogan is the property of Little Caesar, and Franchisee and its principals, agents or employees must sign all documents necessary to evidence the assignment of the concept (including any advertising concept or idea), product, process, improvement or slogan to Little Caesar.  Franchisee acknowledges and agrees that Little Caesar may use this information and disclose and/or license the information for use by others.  Franchisee must not introduce any new concept (including any advertising concept or idea), product, process, improvement or slogan or any additions or modifications of or to the System into the Restaurant without the prior written consent of Little Caesar.

**5.17 - Participation in Franchisee Advisory or Other Committees**:  Little Caesar may establish, from time to time, committees of franchisees to advise Little Caesar on various matters involving the System. Franchisee will be eligible to participate on such committees, in accordance with the rules established by Little Caesar and each committee, but only if Franchisee is a franchisee-in-good-standing at that time and has been a franchisee-in-good-standing for the six month period before serving on the committee.  In order to be a franchisee-in-good-standing, Franchisee must be: (a) current in all obligations to Little Caesar and (b) operating in accordance with all requirements of the Franchise Agreement or the System, including without limitation, requirements relating to quality, cleanliness and service.

## 6.  CONSTRUCTION OF LEASEHOLD IMPROVEMENTS

**6.1 - Obligation to Construct Leasehold Improvements**:  Franchisee shall, at its expense, construct all leasehold improvements to the Restaurant premises in conformance with the prototype or specific design plans and specifications furnished by Little Caesar pursuant to Section 4.1 of this Agreement.

**6.2 - Securing Governmental Approvals**:  Franchisee shall be responsible for obtaining all zoning classifications and clearances which may be required by state or local laws, ordinances or regulations, or which may be necessary or advisable owing to any restrictive covenants relating to the location of the Restaurant.  Franchisee shall obtain all permits, licenses, and certifications required for the lawful construction, occupancy, and operation of the Restaurant (including, but not limited to, compliance with the provisions of the Americans With Disabilities Act), and shall certify in writing to Little Caesar that all such permits, licenses, and certifications have been obtained.

**6.3 - Employment of a Qualified Architect or Engineer**:  Franchisee shall employ a qualified architect or engineer, if requested by Little Caesar, to prepare final plans and specifications for constructing the leasehold improvements based upon the plans and specifications furnished by Little Caesar, shall submit such final plans to Little Caesar, and shall not proceed with any construction until Little Caesar's written approval of such plans has been received. Franchisee shall not deviate from any approved plans and specifications without Little Caesar's prior written approval.

**6.4 - Employment of a Qualified Contractor**:  Franchisee shall employ a qualified, licensed general contractor to perform all construction, and Franchisee shall provide to Little Caesar such periodic progress reports as Little Caesar may require.  During construction, Little Caesar shall have the right to inspect the premises at all reasonable times for the purpose of ascertaining that all work complies with the final plans approved by Little Caesar, and Franchisee shall cooperate and cause its employees and agents to cooperate fully with Little Caesar's inspections.

**6.5 - Construction of Leasehold Improvements and Securing Approval to Open**:  Construction shall commence promptly after Little Caesar's written approval of Franchisee's final plans is received, and continue uninterrupted until all necessary work is completed in accordance with the approved plans. Within five (5) days after work is completed, Franchisee shall submit a written request to Little Caesar to conduct a final inspection of the Restaurant premises and, upon receipt of such request, Little Caesar shall promptly conduct such inspection.  Franchisee shall not open the Restaurant for business without the express written authorization of Little Caesar, which authorization shall specify the opening date of the Restaurant and may be conditioned upon Franchisee's strict compliance with the specifications of the approved final plans and System standards and completion of any pre-opening training required by Little Caesar.

**6.6 - Time is of the Essence in Construction of Leasehold Improvements**:  Time is of the essence in connection with the construction and opening of the Restaurant.  Franchisee shall have the Restaurant under construction within six months from the date of this Agreement.  Franchisee shall open the Restaurant to the public, in conformance with Little Caesar's standards and specifications, no later than nine months from the date of this Agreement.

**6.7 - Construction Insurance**:  Franchisee shall procure, prior to the commencement of any construction, and shall maintain in full force and effect at all times during any construction, at Franchisee's expense, an insurance policy or policies protecting Franchisee, Little Caesar, and its affiliates, and their respective shareholders, directors, employees, and agents, against any demand or claim with respect to personal and bodily injury, death, or property damage, or any loss, liability, or expense whatsoever arising or occurring upon or in connection with the construction of the Restaurant. Such policy or policies shall be written by an insurer or insurers acceptable to Little Caesar, and shall comply with the requirements prescribed by Little Caesar in the Manuals or otherwise in writing.

## 7.  PROPRIETARY MARKS

**7.1 - Little Caesar Representations Concerning Proprietary Marks**:  Little Caesar represents with respect to the Proprietary Marks that:

7.1.1    Little Caesar owns, or has obtained a license to use and to license others to use, the Proprietary Marks;

7.1.2    Little Caesar shall take all steps reasonably necessary to preserve and protect the validity of the Proprietary Marks; and

7.1.3    Little Caesar shall permit Franchisee to use the Proprietary Marks only in accordance with the System and the standards and specifications attendant thereto which underlie the goodwill associated with and symbolized by the Proprietary Marks.

**7.2 - Franchisee Use of Proprietary Marks**:  With respect to Franchisee's use of the Proprietary Marks pursuant to this Agreement:

7.2.1    Franchisee shall use only the Proprietary Marks designated by Little Caesar, and shall use them only in the manner authorized and permitted by Little Caesar;

7.2.2    Franchisee shall use the Proprietary Marks only for the operation of the Restaurant, and only at the Approved Location or in Little Caesar approved advertising for the Restaurant;

7.2.3    Unless otherwise authorized or required by Little Caesar, Franchisee shall operate and advertise the Restaurant only under the Proprietary Marks authorized for use for a "Little Caesars Carryout Restaurant;

7.2.4    Franchisee shall identify itself as an independent franchisee-owner of the Restaurant in conjunction with any use of the Proprietary Marks or the operation of the Restaurant, and shall place a written notice to such effect, in a form approved by Little Caesar, in a conspicuous location on the Restaurant premises;

7.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement;

7.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Little Caesar;

7.2.7    Franchisee shall execute any documents deemed necessary by Little Caesar or its affiliates to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability;

7.2.8    Franchisee shall promptly notify Little Caesar of any suspected unauthorized use of, or any challenge to the validity or use of the Proprietary Marks.  Little Caesar (or its affiliate) shall have the sole right to determine whether any action should be taken, and, if any action is taken, Little Caesar (or its affiliate) shall have the right to direct and control any such action, including the conduct of an administrative proceeding or litigation or other adjudicative proceeding involving the Proprietary Marks,

including any settlement thereof.  Franchisee shall have no right, independent of Little Caesar, to make any demand against any such user or challenger or to prosecute any claim of any kind or nature whatsoever relating to Little Caesar's Proprietary Marks;

7.2.9    Little Caesar (or its affiliate) shall defend Franchisee against any third-party claim, suit, or demand arising out of Franchisee's use of the Proprietary Marks.  If Little Caesar determines that Franchisee has used the Proprietary Marks in accordance with this Agreement, the cost of such defense, including the cost of any judgment or settlement, shall be borne by Little Caesar.  If Little Caesar determines that Franchisee has not used the Proprietary Marks in accordance with this Agreement, the cost of such defense, including the cost of any judgment or settlement, shall be borne by Franchisee.  In the event of any litigation relating to Franchisee's use of the Proprietary Marks, Franchisee shall execute any and all documents and do such acts as may, in the opinion of Little Caesar, be necessary to carry out such defense or prosecution, including, but not limited to, becoming a party to any legal action.  Except to the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Little Caesar agrees to reimburse Franchisee for its out-of-pocket litigation costs in cooperating with Little Caesar with respect to the litigation; and

7.2.10    Franchisee shall not use the Proprietary Marks as part of its corporate or other legal name, or as an internet domain name or URL, including "Caesar," "Caesars" or other name that is likely, in the judgment of Little Caesar, to cause third parties to be confused or mistaken with respect to the separate identities of Little Caesar and Franchisee.

**7.3 - Franchisee Representations Concerning Proprietary Marks**:    Franchisee expressly understands and acknowledges that:

7.3.1    The Proprietary Marks are valid and serve to identify the System and those who are franchised under the System;

7.3.2    During the term of this Agreement and after its expiration or termination, Franchisee shall not directly or indirectly contest the validity or ownership of the Proprietary Marks, nor take any other action which may tend to derogate or jeopardize Little Caesar's interest therein, or Little Caesar's right to use and to license others to use, the Proprietary Marks;

7.3.3    Franchisee's use of the Proprietary Marks pursuant to this Agreement does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks other than the license granted by this Agreement;

7.3.4    Any and all goodwill arising from Franchisee's use of the Proprietary Marks during the term of this Agreement shall inure solely and exclusively to the benefit of Little Caesar and its affiliates, and upon expiration or termination of this Agreement no monetary amount shall be assigned as attributable to any goodwill associated with Franchisee's use of the System or the Proprietary Marks;

7.3.5    Except as specified in Section 1.3 hereof, Little Caesar and its affiliates shall have and retain the rights, among others:  (a) to use the Proprietary Marks themselves in connection with selling products and services; (b) to grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees; and (c) to develop and establish other systems using the Proprietary Marks, similar proprietary marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee; and

7.3.6    Little Caesar reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Little Caesar determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, the use of the substituted proprietary marks shall be governed by the terms of this Agreement, and Little Caesar shall not compensate Franchisee for such substitution. Franchisee shall implement promptly any such substitution.

## 8.  CONFIDENTIAL MANUALS AND INFORMATION

**8.1 - Keeping Manuals Confidential**:  Franchisee shall treat the Manuals, and the information contained therein, as confidential, and shall use all reasonable efforts to maintain such information as secret and confidential.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person. The Manuals shall at all times remain the sole property of Little Caesar.

**8.2 - Keeping Manuals Current**:  Franchisee shall insure that its Manuals are kept current; and in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Little Caesar shall be controlling.

**8.3 - Protection of Confidential Information**:  Franchisee shall not, during or after the term hereof, communicate, divulge, or use for the benefit of any other person, persons, partnership, association, or corporation any confidential information, knowledge, or know-how of Little Caesar which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation hereunder.  The confidential information of Little Caesar includes, but is not limited to, information concerning the marketing, management, or operations plans of the Restaurant, Little Caesar recipes, products, ingredients or product development, training manuals, policy manuals, operations manuals, sales promotion aids, business forms, operational procedures, accounting procedures, marketing reports, supplier information, purchasing or distribution procedures, inventory systems, demographic information, accounting or sales information, past, present and future projects and proposals, customer, prospective customer and vendor information and relationships, marketing techniques, research processes, and financial and economic information.  Franchisee shall divulge such confidential information only to those employees who must have access to it in order to perform their employment responsibilities, and who shall keep such information confidential.  Any and all information, knowledge, know-how, and techniques which Little Caesar designates as confidential shall be deemed confidential for purposes hereof.

**8.4 - Irreparable Injury from Disclosure of Confidential Information**:  Franchisee acknowledges that any failure to comply with the requirements of this Section 8 will cause Little Caesar irreparable injury for which no adequate remedy at law may be available; and Franchisee agrees that Little Caesar may seek, and agrees to pay all court costs and reasonable attorneys' fees incurred by Little Caesar in obtaining, without posting a bond, an *ex parte* order for injunctive or other legal or equitable relief with respect to the requirements of this Section 8.

**8.5 - Confidentiality Covenants from Associates of Franchisee**:  Franchisee shall ensure that anyone associated with Franchisee shall keep confidential all Little Caesar confidential information as described in Section 8.3 above.  At Little Caesar's request, Franchisee shall require anyone who may have access to the confidential information (including but not limited to the persons and entities covered by

Sections 12.4, 15.7 and 16.4 below) to execute covenants that they shall maintain the confidentiality of the confidential information they receive in connection with their association with Franchisee. Such covenants shall be in a form approved by Little Caesar, including, without limitation, specific identification of Little Caesar as a third-party beneficiary of such covenants with the independent right to enforce them.

## 9.  ADVERTISING

Recognizing the value of advertising and promotion, and the importance of the standardization of advertising and promotional programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

**9.1 - Amounts and Recipients of Advertising Contribution**:  Franchisee, and Little Caesar (on behalf of any Restaurant owned or operated by it or an affiliate), shall spend on advertising an amount specified by Little Caesar for a time period specified by Little Caesar; provided, however, that such amount shall not exceed seven percent (7%) of Franchisee's Gross Sales for the applicable time period. The time period specified may be weekly, every four (4) weeks, monthly, quarterly, annually or such other period as Little Caesar may specify.  Little Caesar shall allocate such specified amount among contributions to: (a) a fund currently administered by Caesar Fund, Inc., a Michigan corporation, or another successor advertising fund (collectively "*CAESAR FUND*") that will administer a nationwide advertising program and/or provide collection, administrative and other services for the advertising program, as described in Section 9.2.; (b) a regional or local advertising cooperative ("*Cooperative*"), as described in Section 9.3; and (c) Franchisee's expenditures on local advertising; provided, however, that contributions to CAESAR FUND shall not exceed four percent (4%) of Franchisee's Gross Sales.  Little Caesar may from time to time and at any time, modify both the allocation and amount of each Franchisee's expenditures among CAESAR FUND, the Cooperative, and Franchisee's local advertising. Franchisee must show proof of required local advertising expenditures in the manner and at the times specified by Little Caesar.

**9.2 - CAESAR FUND**:  The following provisions shall apply to CAESAR FUND, or any successor thereof:

9.2.1    CAESAR FUND, all contributions thereto, and any earnings thereon, shall be used exclusively to meet any and all costs of maintaining, administering, directing, conducting and developing the preparation of advertising, marketing, public relations, and/or promotional programs and materials, and any other activities which Little Caesar believes will benefit the System, including, among other things, the costs of preparing and executing advertising campaigns in various media; distribution of marketing materials; preparation of direct mail advertising; market research; employing advertising, sales promotion, and/or public relations agencies to assist therein; hiring consultants or experts; purchasing promotional items; executing and administering in-store promotions; and providing promotional and other marketing materials and services for Restaurants;

9.2.2    Little Caesar shall direct all advertising and promotional programs, with the right to control the creative concepts, materials, and media used in such programs, and the placement and allocation thereof.  Franchisee agrees and acknowledges that one of CAESAR FUND's objectives is to maximize general public recognition and acceptance of the Proprietary Marks for the benefit of the System; and that CAESAR FUND is not obligated to make expenditures for Franchisee which are

equivalent or proportionate to Franchisee's contribution, or to ensure that Franchisee benefits directly or pro rata from the advertising or promotion conducted by CAESAR FUND;

9.2.3    As set forth in Section 3.4, Little Caesar shall have the right to require Franchisee to make all CAESAR FUND payments by electronic fund transfer, pre-authorized auto-draft arrangement, or such other methods as Little Caesar shall specify from time to time. All sums paid to CAESAR FUND shall be maintained in an account separate from the other monies of Little Caesar and shall not be used to defray any expenses of Little Caesar, except for such reasonable costs and overhead, if any, as may be incurred in activities reasonably related to the administration or direction of CAESAR FUND and advertising programs, including, among other things, costs of personnel for creating and/or implementing advertising, promotional, marketing programs, collection of receipts, budgets, and similar types of expenditures. Any monies collected by CAESAR FUND, and any earnings thereon, shall not otherwise inure to the benefit of Little Caesar; and

9.2.4    A financial statement of CAESAR FUND shall be prepared annually using generally accepted accounting principles and made available to Franchisee. CAESAR FUND's books and records shall be audited annually and such audit shall be made available to Franchisee.

9.2.5    CAESAR FUND shall have the right to coordinate activities and/or allocate expenses between itself and (i) any regional advertising cooperative established pursuant to Section 9.3 of this Agreement; or (ii) any other national or regional advertising fund that may be established with respect to any other Little Caesar restaurant concept. Any such coordination and allocation shall be performed in a fair and equitable manner. CAESAR FUND also shall have the right, but not the obligation, to simultaneously perform the activities set forth in this Section 9.2 on behalf of other Little Caesar restaurant concepts, including the co-mingling of contributions and disbursements.

9.2.6    Little Caesar retains the right to terminate CAESAR FUND and/or replace it with another advertising fund at any time; provided, however, that CAESAR FUND shall not be terminated until all monies in it have been expended for advertising and/or promotional purposes or returned to contributors on the basis of their respective contributions.

**9.3 - Advertising Cooperative for Local or Regional Advertising**: Little Caesar shall have the right, but not the obligation, to designate any geographical area, for purposes of establishing a Cooperative, and to determine whether a Cooperative is applicable to the Restaurant. Franchisee and Little Caesar (on behalf of each Restaurant owned by it or an affiliate) shall become a member of and contribute to any Cooperative which is or has been established for a geographical area in which the Restaurant is located. The following provisions shall apply to each Cooperative:

9.3.1    Each Cooperative shall adopt a cooperative agreement governing the organization and operation of the Cooperative, subject to Little Caesar's approval of such agreement. In the event that the members of the Cooperative do not sign an agreement within a reasonable time, Franchisee shall sign Little Caesar's recommended Cooperative Agreement. No changes in the bylaws or other governing documents of a Cooperative shall be made without Little Caesar's prior written consent.

9.3.2    Each Cooperative shall be organized for the exclusive purpose of developing, executing and administering local and regional advertising programs and developing promotional materials for use by the members in local and regional advertising.

9.3.3    No advertising or promotional programs or materials may be used by a Cooperative or furnished to its members without prior approval of Little Caesar pursuant to Section 9.4.

**9.4 - Little Caesar Approval of Advertising**:  All advertising and promotion by Franchisee and the Cooperative shall be in such media and of such type and format as Little Caesar may approve, shall be conducted in a dignified manner, and shall conform to such standards and requirements as Little Caesar may specify.   Franchisee or the Cooperative shall submit samples of all proposed advertising and promotional plans and materials to Little Caesar for its approval (except with respect to prices to be charged), in the manner prescribed in Section 20, unless such plans and materials were prepared by Little Caesar or have been approved by Little Caesar within the last six (6) months.   No advertising or promotional materials shall be used unless and until Little Caesar shall have furnished written notice authorizing such use.   Little Caesar will attempt to provide notice of its approval or rejection of advertising materials within 30 days of receipt of the materials, although in some cases it may take longer. Little Caesar also shall have the right at any time after use of such materials commences, to prohibit further use, effective upon receipt of written notice from it to Franchisee or the Cooperative.

**9.5 - Initial Opening Promotion**:  Franchisee will conduct an initial local advertising and promotion program prepared by Franchisee and approved by Little Caesar in writing.  Franchisee will spend at least Ten Thousand Dollars ($10,000) for such initial advertising and promotion.  The initial local advertising and promotion program must take place within the period beginning 30 days before the opening of the Restaurant and ending 90 days after the opening of the Restaurant.  Franchisee will furnish to Little Caesar, within 180 days after the opening of the Restaurant, such evidence as Little Caesar may reasonably require to verify such approved expenditure.

**9.6  -  Use of Internet**:  Franchisee must not, independently of Little Caesar and without the written consent of Little Caesar, use the Internet or World Wide Web for promotion of the Restaurant.  Little Caesar may maintain an Internet site for the System and allow Franchisee to maintain a separate portion of that site for the Restaurant under guidelines specified by Little Caesar.

**9.7  -  Copyright**: Copyright to all advertising and promotional materials that contain any of the Proprietary Marks or that otherwise relate to the Restaurant shall belong solely to Little Caesar regardless of the party that created those materials.  Franchisee shall (and shall cause its employees and agents to) sign all documents required by Little Caesar to confirm this ownership.

**9.8  -  Advertising for Prospective Franchisees**: Franchisee must display and maintain franchisee recruiting materials in the manner specified by Little Caesar.  Little Caesar will be responsible for providing those materials at its cost.

## 10. INSURANCE

**10.1 - Franchisee's Insurance Obligation**:  Franchisee shall procure, prior to the opening of the Restaurant, and shall maintain in full force and effect at all times during the term of this Agreement, at Franchisee's expense, an insurance policy or policies protecting Franchisee, Little Caesar and its affiliates, and their respective shareholders, directors, employees, and agents against any demand or claim with respect to personal and bodily injury, death, or property damage, or any loss, liability, or expense whatsoever arising or occurring at or in connection with the Restaurant, including automobile liability and business interruption insurance.  Such policy or policies shall:  (i) be written by insurer(s) acceptable to Little Caesar; (ii) name Little Caesar, and its shareholders, directors, employees, and agents as additional

insureds; (iii) comply with the requirements prescribed by Little Caesar at the time such policies are obtained; (iv) provide at least the types and minimum amounts of coverage specified in the Manuals, the Franchise Disclosure Document or such other documentation or materials; and (v) contain a waiver by Franchisee and its insurers of their subrogation rights against Little Caesar and its affiliates, and their respective shareholders, directors, employees and agents.

**10.2 - Franchisee's Insurance Obligation Not Affected by Little Caesar's Insurance**: Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Little Caesar, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 18.4 of this Agreement.

**10.3 - Additional Required Endorsements**: All public liability and property damage policies shall contain a provision that Little Caesar, although named as an additional insured, shall nevertheless be entitled to recover under such policies on any loss occasioned to Little Caesar or its shareholders, directors, employees, and agents by reason of their negligence.

**10.4 - Certificates of Insurance**: At least ten (10) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any policy, Franchisee shall deliver to Little Caesar Certificates of Insurance evidencing the proper types and minimum amounts of coverage. All Certificates shall expressly provide that no fewer than thirty (30) days' prior written notice shall be given Little Caesar in the event of material alteration to or cancellation or non-renewal of the coverages evidenced by such Certificates. Certificates evidencing the insurance required by this Section shall name Little Caesar, and each of its affiliates, shareholders, directors, employees, and agents as additional insureds, and shall expressly provide that any interest of each shall not be affected by any breach by Franchisee of any policy provisions for which such Certificates evidence coverage.

**10.5 - Little Caesar's Right to Secure Insurance on Behalf of Franchisee**: Should Franchisee, for any reason, fail to procure or maintain the insurance required by this Agreement, as such requirements may be revised from time to time by Little Caesar in the Manuals or otherwise in writing, Little Caesar shall have the right and authority (but not the obligation) to immediately procure such insurance and to charge the premium on such insurance to Franchisee, which charges, together with a reasonable fee for Little Caesar's expenses in so acting, shall be payable by Franchisee immediately upon notice. The foregoing remedies shall be in addition to any other remedies Little Caesar may have.

## 11. ACCOUNTING AND RECORDS

**11.1 - Computer System**: At Little Caesar's request, Franchisee, at its expense, shall purchase or lease, and thereafter maintain, such computer hardware and software, required dedicated telephone and power lines, modem(s), printer(s), and other computer-related accessories or peripheral equipment as Little Caesar specifies, for the purpose of, among other functions, recording sales and other record keeping and central functions. Franchisee shall provide such assistance as may be required to connect its computer system with Little Caesar's computer system. Little Caesar shall thereafter have the right from time to time and at any time to retrieve such data and information from Franchisee's computer system as Little Caesar deems necessary or desirable, with the cost of such telephonic retrieval to be borne by Franchisee. In view of the contemplated interconnection of computer systems and the necessity that such

systems be compatible with each other, Franchisee expressly agrees that it will strictly comply with Little Caesar's standards and specifications for all item(s) associated with Franchisee's computer system.

**11.2 - Maintenance of Computer System**:   To ensure full operational efficiency and optimum communication capability between and among computer systems installed by Franchisee, Little Caesar, and other franchisees, Franchisee agrees, at its expense to keep its computer system in good maintenance and repair, and, at its expense, to promptly install such additions, changes, modifications, substitutions and/or replacements to Franchisee's computer hardware, software, telephone and power lines, and other computer-related facilities, as Little Caesar directs.

**11.3 - Maintenance of Records**:   Franchisee shall prepare, during the term of this Agreement, and shall preserve for at least three (3) years from the dates of their preparation, complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Little Caesar from time to time in the Manuals or otherwise in writing.

**11.4 - Submission of Financial Statements and Tax Returns**:   Franchisee shall, at its expense, provide Little Caesar with a copy of Franchisee's financial statements showing the results of operations of the Restaurant for each fiscal year during the term of this Agreement.   The statements shall include a consolidated income statement, individual income statement for each Restaurant, balance sheet, and a statement of cash flows accompanied by a review report, prepared by an independent certified public accountant using generally accepted accounting principles, and shall be furnished within sixty (60) days after the end of each fiscal year of the Restaurant.   Franchisee also shall submit, within five (5) days of their filing, its federal and state tax returns for each year during the term of this Agreement; provided, however, that if Franchisee is not a corporation or partnership, Franchisee may, at its option, submit only those schedules to its personal tax filings which reflect the revenues and expenses of the Restaurant.

**11.5 - Submission of Periodic Reports**:   Franchisee shall, at its expense, provide Little Caesar, on forms and in the manner prescribed by Little Caesar, with (i) weekly reports of Gross Sales; (ii) a quarterly statement of all revenue and expense activity during the preceding quarter; and (iii) such other data and information regarding the operation of the Restaurant as Little Caesar may require, within the time frames established by Little Caesar.   The weekly report of Gross Sales shall be due by noon Wednesday of the following week, or such other time as Little Caesar may specify.   The quarterly statement shall be due within thirty (30) days after the end of each quarter.   Each statement shall be signed by Franchisee's principal financial officer attesting that it is true and correct.   In addition, on or before the date specified by Little Caesar each year, Franchisee must deliver to Little Caesar an annual business plan (including forecasts) and such other information about the Restaurant as Little Caesar specifies.

**11.6 - Submission of Additional Reports**:   Franchisee also shall provide to Little Caesar, for review or auditing, such other forms, sales reports, cash register receipts, records, information, and data as Little Caesar may reasonably request, on the forms and in the manner as are reasonably requested by Little Caesar.

**11.7 - Right to Audit Franchisee Records**:   Little Caesar or its designated agents shall have the right at all reasonable times to examine and copy, at Little Caesar's expense, the books, records, accounts, and business tax returns of Franchisee.   Little Caesar shall also have the right, at any time, to have an independent audit made of the books and records of Franchisee.   If an inspection or audit reveals that any payments due to Little Caesar have been understated in any report to Little Caesar, then Franchisee shall

immediately pay to Little Caesar the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of eighteen percent (18%) per annum calculated monthly, or the maximum rate permitted by law, whichever is less.  If an inspection or audit discloses an understatement in any report of two percent (2%) or more, Franchisee shall, in addition to repayment of monies owed with interest, reimburse Little Caesar for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs).  The foregoing remedies shall be in addition to any other remedies Little Caesar may have because of such under-reporting.

## 12.  TRANSFER OF INTEREST

**12.1 - Transfer by Little Caesar**:  Little Caesar shall have the right to transfer or assign all or any part of its rights or obligations under this Agreement to any person or legal entity.  With respect to any assignment which results in the subsequent performance by the assignee of all of Little Caesar's obligations under this Agreement, the assignee shall expressly assume and agree to perform such obligations, and shall become solely responsible for all obligations of Little Caesar under this Agreement from the date of assignment.  In addition, and without limitation to the foregoing, Franchisee expressly affirms and agrees that Little Caesar may sell its assets, its Proprietary Marks, or its System; may sell its securities in a public offering or in a private placement; may merge, acquire other corporations, or be acquired by another corporation; and may undertake a refinancing, recapitalization, leveraged buy-out, or other economic or financial restructuring.

**12.2 - Transfer by Franchisee**:  Franchisee understands and acknowledges that Little Caesar has granted this franchise in reliance on the business skill, financial capacity, and personal character of Franchisee (or of the direct and  indirect owners of Franchisee, if Franchisee is a corporation or other entity).   Accordingly, neither Franchisee nor any immediate or remote successor to any part of Franchisee's interest in this Agreement, nor any individual, partnership, corporation, or other legal entity which directly or indirectly owns any interest in Franchisee shall, without the prior written consent of Little Caesar, transfer, pledge or otherwise encumber this Agreement, any of the rights or obligations of Franchisee under this Agreement, any interest in Franchisee, any material assets of Franchisee, or all or substantially all of the assets of the Restaurant.  Any purported assignment or transfer, by operation of law or otherwise, not having the written consent of Little Caesar required by this Section 12.2, shall be null and void and shall constitute a material breach hereof, for which Little Caesar may then terminate without an opportunity to cure pursuant to Section 13.2.4 hereof.

Little Caesar shall not unreasonably withhold its consent to a proposed transfer but may impose reasonable conditions.  If the proposed transfer, alone or together with other previous, simultaneous, or proposed transfers, would effect a change of control of Franchisee, Little Caesar shall have the right to require any or all of the following conditions, in addition to any other reasonable conditions of its approval:

12.2.1     All of the transferor's accrued monetary obligations and all other outstanding obligations to Little Caesar, Little Caesar's affiliates; any payments required by Section 3.3 of this Agreement; all obligations to Franchisee's landlord, suppliers and other creditors; and taxes, have been satisfied;

12.2.2     The transferor is not in default of any provision of this Agreement, or any other agreement between Franchisee and Little Caesar or Little Caesar's affiliates;

12.2.3    The transferor shall have executed a general release, in a form satisfactory to Little Caesar, of any and all claims which it may have against Little Caesar and its affiliates, shareholders, directors, employees, and agents, including without limitation, claims arising under federal, state, and local laws and regulations;

12.2.4    At Little Caesar's request, the transferee (and, if the transferee is other than an individual, such owners of a direct or indirect beneficial interest in the transferee as Little Caesar may request) shall either (i) enter into a written assignment, in a form satisfactory to Little Caesar (including the execution of guarantees as provided in Section 16.4), assuming and agreeing to fulfill all of Franchisee's obligations hereunder, or (ii) execute, for a term ending on the expiration of this Agreement and with such renewal term as may be provided in this Agreement, the standard form franchise agreement and any ancillary documents then being offered to new System franchisees (including the execution of guarantees as provided in Section 16.4), the terms of which may differ from the terms of this Agreement including but not limited to higher fees, including higher royalty fees, advertising fees and advertising contributions; provided, however, that the transferee shall not be required to pay any initial franchise fee;

12.2.5    The transferee (and, if the transferee is other than an individual, such owners of a direct or indirect beneficial interest in the transferee as Little Caesar may request) shall demonstrate to Little Caesar's satisfaction that it meets Little Caesar's educational, managerial, and business standards; possesses a good moral character (if an individual), business reputation, and credit rating; has the aptitude, ability, and requisite financial resources and capital to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; and that the terms of the proposed assignment do not place an unreasonable financial or operational burden on the transferee;

12.2.6    The transferee, at its expense, shall within the time specified by Little Caesar, refurbish, remodel, or otherwise change the Restaurant premises to conform to the then-current standards and specifications of the System;

12.2.7    The transferor shall remain liable for all of the obligations to Little Caesar in connection with the Restaurant that arose prior to the effective date of the transfer and shall execute any and all instruments reasonably requested by Little Caesar to evidence such liability;

12.2.8    At transferee's expense, the transferee and those of its employees selected by Little Caesar, shall successfully complete the pre-opening training program described in Section 5.8, including payment of the then-current training fee charged by Little Caesar in those circumstances where Franchisee is required to pay a fee for attendees at the initial training program;

12.2.9    The transferee shall pay a transfer fee of Five Thousand Dollars ($5,000) per Restaurant; provided, however, that, (i) no transfer fee will be required in connection with a transfer from a sole proprietorship or a partnership to a corporation or limited liability company in which the former proprietor or partners own all of the outstanding stock or membership interests, or a transfer pursuant to Section 12.6; and (ii) the transfer fee shall be One Thousand Dollars ($1,000) per Restaurant for a transfer to an existing Little Caesar franchisee;

12.2.10    The transferor shall provide written evidence that the transferee has the right to remain at the Approved Location for the duration of the then-current term of this Agreement; and

12.2.11    Any financing (secured or unsecured) obtained by the transferee in connection with the transfer shall be subordinate to any current or future obligations to Little Caesar or its affiliate.

**12.3 – Prohibited Transfers**: Notwithstanding any other provision of this Section 12:

12.3.1    Franchisee shall not transfer its rights under this Agreement until Franchisee has operated the Restaurant for a period of not less than six (6) months.

12.3.2    Neither this Agreement, nor any ownership interest in Franchisee, nor material assets of Franchisee, nor all or substantially all of the assets of the Restaurant shall be transferred to any Publicly-Traded Entity, as defined below, or to any entity whose direct or indirect parent is a Publicly-Traded Entity.    "Publicly-Traded Entity" means an entity whose securities trade on any securities exchange or are quoted in any publication or electronic reporting service maintained by the National Association of Securities Dealers, Inc. or its successor.

12.3.3    Neither Franchisee nor any direct or indirect owner of Franchisee shall offer securities of Franchisee in a public offering or, except as provided in Section 12.8, in a private offering.

12.3.4    If any direct or indirect owner of Franchisee offers its securities in a public offering or, except as provided in Section 12.8, in a private offering, Little Caesar shall have the right to terminate this Agreement without opportunity to cure in accordance with Section 13.2.4.

12.3.5    It shall be reasonable for Little Caesar to disapprove any proposed transfer if, as a result of the transfer, the beneficial ownership of Franchisee would be, in Little Caesar's reasonable business judgment, so widely held by different persons as to materially compromise the financial stake and dedication of those persons in whose individual or collective character, skill, attitude, and business ability Little Caesar relies on in granting a franchise.

**12.4 - Execution of Covenants by Transferee**:    Little Caesar shall have the right to require as a further condition pre-requisite to its consent to any transfer of interest pursuant to Section 12.2, that the transferee (and all officers, directors, and direct and indirect owners of the transferee, if the transferee is a corporation or other entity) execute the covenants concerning confidentiality, as set forth in Section 8.5, and non-competition, as set forth in Section 15.7 hereof.

**12.5 - Little Caesar Right of First Refusal**:    If any party holding any direct or indirect interest in this Agreement, in Franchisee, or in all or substantially all of the assets of the Restaurant desires to accept any *bona fide* offer from a third party to purchase such interest, Franchisee shall notify Little Caesar of such offer at least forty-five (45) days before such transfer is proposed to take place, and shall provide such information and documentation relating to the offer as Little Caesar may require.    Little Caesar shall have the right and option, exercisable within forty-five (45) days after receipt of such written notification and any background materials concerning the proposed transfer that Little Caesar shall reasonably request, to send written notice to the seller that Little Caesar intends to purchase the seller's interest on the same terms and conditions offered by the third party.    If Little Caesar elects to purchase the seller's interest, the closing on such purchase shall occur within forty-five (45) days from the date of notice to the seller of the election to purchase by Little Caesar.    If Little Caesar declines to purchase the seller's interest, Franchisee shall have ninety (90) days from the earlier of (i) receipt of a notice from Little Caesar declining to exercise its right of first refusal, or (ii) forty-five (45) days after Little Caesar's receipt of the transferor's written notification of the proposed transfer, to close on the transfer of such interest,

subject to Little Caesar's approval pursuant to this Section 12. Failure to effect a transfer with the third party within the ninety (90) day period, or any material change thereafter in the terms of the offer prior to closing, shall constitute a new offer subject to the same rights of first refusal by Little Caesar as in the case of the third party's initial offer. Failure of Little Caesar to exercise the option afforded by this Section 12.5 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12, with respect to a proposed transfer. In the event the consideration, terms, and/or conditions offered by a third party are such that Little Caesar may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Little Caesar may purchase the interest proposed to be sold for the reasonable equivalent in cash. If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, an independent appraiser shall be jointly designated, at Little Caesar's expense, and the appraiser's determination shall be binding.

**12.6 - Death or Mental Incapacity**: Upon the death or mental incapacity of Franchisee (if an individual) or of any person with an interest in Franchisee, the executor or administrator of the estate of such person, or the personal representative of such person, shall transfer within six (6) months after such death or mental incapacity, such interest to a third party approved by Little Caesar. Such transfers, including, without limitation, transfers by devise or inheritance, shall be subject to the same conditions as any *inter vivos* transfer, except that the transfer fee shall be waived. However, in the case of a transfer by devise or inheritance, if the heirs or beneficiaries are unable to meet the conditions in Section 12.2 hereof, Little Caesar shall establish a time frame within which the executor or administrator of the deceased must dispose of the deceased's interest in Franchisee, which disposition shall be subject to all the terms and conditions for transfers contained herein. If the interest is not disposed within the time frame established by Little Caesar, Little Caesar may terminate this Agreement pursuant to Section 13.2.7 hereof.

**12.7 - Approval of Sale Does Not Constitute Waiver of Rights**: Little Caesar's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims it may have against the transferring party, nor shall it be deemed a waiver of Little Caesar's right to demand exact compliance with any of the terms hereof by any transferee.

**12.8 - Private Sale of Securities**: The sale of securities of Franchisee or of any direct or indirect owner of Franchisee (including, without limitation, common or preferred stock, bonds, debentures, general or limited partnership interests, or membership units, whether certificated or uncertificated), is subject to all of the conditions and prohibitions set out in Sections 12.2 and 12.3 hereof. For any proposed securities offering approved in principle by Little Caesar, Franchisee shall submit to Little Caesar for its review all materials required by federal or state law for the offering, including any materials to be used in any exempt offering. No such materials shall be submitted to a government agency or to prospective investors unless and until Little Caesar has furnished its written approval. No offering materials shall imply, by use of the Proprietary Marks or otherwise, that Little Caesar is participating as an underwriter, issuer, or offeror of securities of either Franchisee or Little Caesar, or that Little Caesar has approved the offering prospectus or any other aspect of the offering. Any review by Little Caesar of the offering materials or the information included therein shall be conducted solely for Little Caesar's benefit to determine their conformance with Little Caesar's internal policies, and not to benefit or protect any other person. No investor should interpret such review by Little Caesar, nor shall Franchisee or anyone acting on Franchisee's behalf suggest, that Little Caesar's review constitutes an approval, endorsement, acceptance, or adoption of any representation, warranty, covenant, or projection contained in the materials reviewed; and the offering documents shall include legends and statements, in the form and manner specified by Little Caesar, disclaiming Little Caesar's liability for, or involvement in, the

transaction described in the offering documents.  Should Little Caesar object to any reference to it or its business in such offering literature or prospectus, such literature or prospectus shall not be used unless and until Little Caesar's objections are withdrawn.  Franchisee and other participants in the offering, must fully indemnify, defend and hold harmless Little Caesar, its affiliates and their respective directors, officers, employees, shareholders, and agents from any and all losses and expenses (as defined in Section 18.4) that arise directly or indirectly from, as a result of, or in connection with the offering.  Franchisee agrees that any such indemnification shall be subject to the same terms and conditions as described in Section 18.4 of this Agreement.  For each proposed offering, Franchisee shall pay to Little Caesar a non-refundable fee of Twenty-Five Thousand Dollars ($25,000), at the time that Franchisee submits materials for review by Little Caesar and shall pay additional sums to cover Little Caesar's out-of-pocket costs to review the materials when incurred if greater than Twenty-Five Thousand Dollars ($25,000).  Franchisee shall give Little Caesar written notice at least forty five (45) business days prior to the date of commencement of any offering or other transaction covered by this Section 12.8.  Any such offering shall be subject to Little Caesar's right of first refusal as provided in Section 12.5 hereof.

**12.9 - Transfer by Franchisee Bankruptcy - Right of First Refusal**:  If, for any reason, this Agreement is not terminated pursuant to Section 13.1 and this Agreement is assumed or assignment of the same to any person or entity who has made a *bona fide* offer to accept an assignment of this Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth (a) the name and address of the proposed assignee, and (b)all of the terms and conditions of the proposed assignment and assumption, shall be given to Little Caesar within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date that the application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Little Caesar shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Little Caesar itself, upon the same terms and conditions and for the same consideration, if any, as in the *bona fide* offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.

## 13. DEFAULT AND TERMINATION

**13.1 - Termination Upon Occurrence of Bankruptcy or Insolvency**:  Franchisee shall be deemed to be in default hereunder, and all rights granted herein shall automatically terminate without notice to Franchisee, if the total of Franchisee's debts is greater than the fair value of Franchisee's assets, or if Franchisee is generally not paying its debts as those debts become due, or if Franchisee admits in writing its inability to pay its debts or Franchisee otherwise becomes insolvent or makes a general assignment for the benefit of creditors; or, if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or, if Franchisee is adjudicated as bankrupt or insolvent; or, if a bill in equity or other proceeding for the appointment of a receiver of Franchisee or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or, if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or, if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or, if a final judgment remains unsatisfied or of record for thirty (30) days or longer (unless a *supersedeas* bond is filed); or, if Franchisee is dissolved; or, if execution is levied against Franchisee's business or property; or, if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

**13.2 - Termination with Notice and Without Right to Cure**:  Upon the occurrence of any of the following events, Franchisee shall be deemed to be in default and Little Caesar may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon receipt of notice by Franchisee:

13.2.1    If Franchisee fails to execute a lease for the Restaurant premises, or otherwise acquire the right to do business at the Approved Location, within 90 days after the date of this Agreement; or if Franchisee fails to open the Restaurant within the time-frame provided in Section 6.6 of this Agreement;

13.2.2    If Franchisee at any time ceases to operate or abandons the Restaurant for a period of three (3) consecutive days, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if through no fault of Franchisee, the premises are damaged or destroyed, then Franchisee shall have thirty (30) days within which to apply for Little Caesar's approval to relocate or reconstruct the premises, which approval shall not be unreasonably withheld.  It shall be reasonable for Little Caesar to withhold approval for any relocation or reconstruction if the Restaurant will not be able to re-open within ninety (90) days of the closing of the previous location;

13.2.3    If Franchisee, or any officer, director, or partner of Franchisee, is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Little Caesar believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Little Caesar's interest therein;

13.2.4    Any transfer occurs of any rights or obligations hereunder, or of any direct or indirect ownership interest in Franchisee, or of the assets of the Restaurant, that does not comply with the terms of Section 12 hereof;

13.2.5    If Franchisee fails to comply with the covenants in Section 15.2 hereof or fails to deliver to Little Caesar executed covenants required under Sections 8.5, 12.4 or 15.7 hereof;

13.2.6    If, contrary to the terms of Section 8, Franchisee or any principal of Franchisee discloses or divulges the contents of the Manuals or other confidential information provided to Franchisee by Little Caesar;

13.2.7    If an approved transfer of a person's interest is not effected following death or mental incapacity as required by Section 12.6 hereof;

13.2.8    If Franchisee knowingly maintains false books or records, or knowingly submits any false reports to Little Caesar;

13.2.9    If the lease for the Restaurant premises (i) expires without being renewed; (ii) for any reason is terminated; or (iii) is assumed by Little Caesar pursuant to Section 5.10.7 of this Agreement, unless any such event occurs in connection with a previously approved change in the Restaurant location;

13.2.10    If Franchisee commits three (3) defaults (whether or not cured after notice) within a twelve (12) month period;

13.2.11    If, within ten (10) days after receipt of written notice from Little Caesar that any required payment is overdue, Franchisee does not make such payment to Little Caesar, Little Caesar's affiliates, or to Franchisee's landlord, suppliers, or creditors, unless, with respect to Franchisee's suppliers or creditors, Franchisee notifies Little Caesar of the existence of a *bona fide* dispute and takes immediate action to resolve it;

13.2.12    If Franchisee or any principal of Franchisee has made any material misrepresentations in connection with Franchisee's application to Little Caesar for the franchise granted herein or in connection with the operation of Franchisee's Restaurant or Franchisee's performance under this Agreement;

13.2.13    The perpetration by Franchisee of common law fraud against Little Caesar or any customer or supplier of Franchisee;

13.2.14    The willful or repeated failure of Franchisee to meet any requirements or specifications established by Little Caesar with respect to product quality, physical property, condition of equipment or materials used, products manufactured, menu, or the use of products, packaging or promotional materials that have not been specified or approved by Little Caesar.  Little Caesar may terminate for repeated failures even if Franchisee did not receive written notice of prior failures and/or cured the prior failures;

13.2.15    If Franchisee understates any payment to Little Caesar by five percent (5%) or more, or understates any such payment in any amount, twice in any one year period;

13.2.16    If Franchisee fails to obtain or maintain required insurance coverage;

13.2.17    If Franchisee or any principal of Franchisee fails to successfully complete the initial training program required by Section 5.8;

13.2.18    If Franchisee takes, withholds, misdirects or appropriates for Franchisee's own use any funds withheld from Franchisee's employees' wages for employees' taxes, FICA, insurance or benefits; generally fails to deal fairly and honestly with Franchisee's employees or customers; or knowingly permits or, having discovered the facts, fails to take any action against or to discharge any agent, or employee who has embezzled any funds or property of any customers, Little Caesar, Franchisee, or others;

13.2.19    If Franchisee refuses to permit Little Caesar to inspect Franchisee's Restaurant, books, records, and other documents pursuant to Little Caesar's right to do so under this Agreement;

13.2.20    If Franchisee fails to cure any default under this Agreement which materially impairs the goodwill associated with the Proprietary Marks or presents a health or safety hazard to Restaurant employees or customers, following delivery of a written notice to cure at least twenty-four (24) hours in advance thereof;

13.2.21    If any other franchise agreement between Little Caesar or any of its affiliates (regardless of the type of restaurant established by the franchise agreement) and Franchisee or an affiliate of Franchisee is terminated by Little Caesar or its affiliates for a default under the franchise agreement.

**13.3 - Termination with Notice and Opportunity to Cure**:  Except as provided in Sections 13.1 and 13.2 hereof, Franchisee shall have thirty (30) days after its receipt from Little Caesar of a written notice of default within which to remedy any default hereunder and to provide evidence thereof to Little Caesar.  If any such default is not cured within such time, or such longer period as applicable law may require, Little Caesar may immediately terminate this Agreement.  Franchisee shall be in default hereunder for any failure substantially to comply with any of the requirements imposed by this Agreement, as they may from time to time be supplemented in writing as permitted herein, or to carry out the terms hereof in good faith.

**13.4 - Extension of Cure Period by Operation of Law**:  Notwithstanding the termination provisions set forth above, in the event that any valid, applicable law or regulation of a competent governmental authority having jurisdiction over this Agreement or the parties hereto limits Little Caesar's rights of termination hereunder or shall require longer notice or cure periods than those set forth above, this Agreement shall be deemed amended to conform to the minimum notice or cure periods or restrictions upon termination required by such laws and regulations.  Little Caesar shall not, however, be precluded from contesting the validity, enforceability, or application of such laws or regulations in any action, proceeding, hearing, or dispute relating to this Agreement or the termination thereof.

**13.5 - Costs**:  If Franchisee fails to cure a default within any applicable time period following delivery of notice or if this Agreement is terminated as a result of Franchisee's default, Franchisee shall pay to Little Caesar all damages, costs, and expenses, including reasonable investigation and attorneys' fees, incurred by Little Caesar as a result of the default or termination.

## 14.  OBLIGATIONS UPON TERMINATION OR EXPIRATION

Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate and:

**14.1 - Cessation of Restaurant Operations**:  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Little Caesar.

**14.2 - Cessation of Use of Confidential Information and Proprietary Marks**:  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any products or ingredients which incorporate trade secrets, any confidential methods, procedures, and techniques associated with the System, the Proprietary Marks, and all other proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.

**14.3 - Cancellation of Assumed Name Registration**:  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Marks, and Franchisee shall furnish Little Caesar with evidence satisfactory to Little Caesar of compliance with this obligation within thirty (30) days after termination or expiration hereof.  If Franchisee fails or refuses to do so, Little Caesar may, in Franchisee's name, on Franchisee's behalf, and at Franchisee's expense, execute any and all necessary documents; and Little Caesar is hereby irrevocably appointed by Franchisee as Franchisee's attorney-in-fact to effectuate the foregoing obligation.

**14.4 - Assignment of Lease**:  Franchisee shall, at Little Caesar's request, immediately assign to Little Caesar, effective on the date specified by Little Caesar, any interest which Franchisee has in any lease for

the Restaurant premises and thereafter vacate the premises, rendering all necessary assistance to Little Caesar to enable it to take prompt possession thereof. In the event that Little Caesar does not request an assignment, Franchisee shall make such modifications or alterations to the premises (including, at Little Caesar's option, the assignment of the Restaurant's telephone number(s) to Little Caesar) immediately upon termination or expiration hereof as may be necessary to distinguish the appearance of such premises from that of other Restaurants, and shall make such specific additional changes thereto as Little Caesar may reasonably request for that purpose.

**14.5 - Modification of Restaurant to Avoid Public Confusion**: Franchisee agrees, in the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute the rights of the Little Caesar or its affiliate in and to the Proprietary Marks, and further agrees not to use any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar.

**14.6 - Franchisee Payment of Debts**: Franchisee shall promptly pay all sums owing to Little Caesar and its affiliates, which obligation shall give rise to and remain, until paid in full, a lien in favor of Little Caesar against any and all of the personal property, furnishings, equipment, signs, fixtures, and inventory owned by Franchisee and on the Restaurant premises at the time of default.

**14.7 - Franchisee Payment of Little Caesar's Cost in Securing Franchisee Compliance with Post Termination Obligations**: Franchisee shall pay to Little Caesar all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Little Caesar subsequent to the termination or expiration hereof in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.

**14.8 - Franchisee Return of Manuals and Other Materials**: Franchisee shall immediately return the Manuals and all other documents which contain confidential information relating to the operation of the Restaurant, and furnish Little Caesar with the name and address of all past and current Restaurant suppliers together with the amount(s) due, if any. Franchisee also shall return, at Little Caesar's request, all unused products and ingredients which contain trade secrets, and Little Caesar shall refund the purchase price thereof plus reasonable shipping charges.

**14.9 - Little Caesar Right to Purchase Franchisee Assets**: Little Caesar shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of the Restaurant, at the fair market value for use in a restaurant operation, and all inventory at Franchisee's cost (excluding shipping, insurance, and any other ancillary charges). Such thirty (30) day period will be extended for any period of time in which Franchisee fails to provide a current copy of the Restaurant lease to Little Caesar or otherwise cooperate with Little Caesar with its evaluation of the possible purchase of the above assets. If the parties cannot agree on the price of any such items within fifteen (15) days after the exercise of the option, an independent appraiser shall be jointly designated, and the appraiser's determination shall be final and binding. If Little Caesar elects to exercise any option to purchase herein provided, closing shall take place within fifteen (15) days after the purchase price shall have been established. Little Caesar shall have the right to set off all amounts due from Franchisee, or due from Franchisee to any creditor, and the cost of the appraisal, if any, against the payment price of such items.

## 15. COVENANTS

**15.1 - Franchisee to Devote Full Time and Best Efforts to Restaurant**: Franchisee covenants that during the term hereof, except as otherwise approved in writing by Little Caesar, Franchisee (or if Franchisee is a corporation or other entity, a principal of Franchisee) or an individual designated by Franchisee and approved by Little Caesar (which approval shall be subject to Little Caesar's determination, after review of such background information which it reasonably requests, that the designated individual is qualified to assume the responsibility to operate and manage the Restaurant, and, at Little Caesar's option, that the individual acquire an equity interest in the Franchised Business) shall devote its full time and best efforts to the management and operation of the Restaurant.

**15.2 - Non-Competition During Term of Agreement**: Franchisee acknowledges that it shall receive valuable specialized training and confidential information, including, without limitation, information regarding the operational, sales, promotional, and marketing methods and techniques of Little Caesar and the System. Franchisee covenants that during the term hereof it shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with, any person, persons, or legal entity:

15.2.1    Divert or attempt to divert any business or customer of the Restaurant to any competitor by inducement or otherwise, or do or perform any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;

15.2.2    Own, maintain, advise, operate, engage in, be employed by, make loans to, have any interest in or relationship or association with, a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products; or

15.2.3    Employ or seek to employ, directly or indirectly, any person serving in a managerial position who is at the time or was at any time during the prior six (6) months employed by Little Caesar or its affiliates, or a franchisee of any restaurant concept franchised by Little Caesar or its affiliates, without the prior written consent of the then-current or prior employer. Violations of the Section shall entitle the prior employer to liquidated damages equal to twice the annual salary of the employee (while employed by the prior employer), plus reimbursement of all costs and attorney fees incurred. A prior employer shall be deemed to be a third party beneficiary of this Section, with an independent right to bring an action based upon a violation hereof.

**15.3 - Non-Competition After Expiration of Term of Agreement**: Commencing upon the date of: (a) a transfer permitted under Section 12 of this Agreement; (b) expiration of this Agreement; (c) termination of this Agreement (regardless of the cause for termination); or (d) a final arbitration or court order (after all appeals have been taken) with respect to any of the foregoing events or with respect to enforcement of this Section 15.3, Franchisee shall not, during the time frame and in the geographic areas described below, without Little Caesar's prior written consent, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products. The prohibitions set forth in this Section 15.3 shall apply: (i) for a continuous uninterrupted one year period with respect to the Designated Market Area, as defined by Nielsen, of any Little Caesar restaurant, regardless of concept, and regardless of whether the restaurant is owned by a franchisee of Little Caesar or by Little Caesar or an affiliate; and (ii) for a continuous

uninterrupted two year period with respect to the Designated Market Area in which Franchisee's Restaurant was located.

**15.4 - Breach of Covenants Cause Irreparable Injury**:  Franchisee acknowledges that Franchisee's violation of the terms of this Section 15 would result in irreparable injury to Little Caesar for which no adequate remedy at law may be available, and agrees to pay all court costs and reasonable attorneys' fees incurred by Little Caesar in obtaining any injunctive or other equitable or legal relief with respect to such conduct or action.

**15.5 - Little Caesar Right to Reduce Scope of Covenants**:  Franchisee agrees and acknowledges that Little Caesar shall have the right to reduce the scope of any covenant or any portion thereof set forth in  Sections 15.2 and 15.3 hereof, without Franchisee's consent, effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 21 hereof.

**15.6 - Enforceability of Covenants Not Affected by Franchisee Claims**:  Franchisee expressly agrees that the existence of any claims it may have against Little Caesar, whether or not arising hereunder, shall not constitute a defense to the enforcement by Little Caesar of the covenants in this Section 15.

**15.7 - Covenants from Individuals**:  At Little Caesar's request, Franchisee shall obtain execution of covenants similar to those set forth in this Section 15 (including covenants applicable upon the termination of a person's relationship with Franchisee) from any or all of the following persons:  (1) all officers, directors, and store supervisors of Franchisee; and (2) all persons and entities from which Little Caesar may require a Guarantee pursuant to Section 16.4 below.  Franchisee shall furnish copies of the covenants required by this Section to Little Caesar upon request.  Every covenant required by this Section 15.7 shall be in a form approved by Little Caesar, including, without limitation, specific identification of Little Caesar as a third party beneficiary of such covenants with the independent right to enforce them.

## 16.  FRANCHISEE AS A CORPORATION, PARTNERSHIP OR LLC

**16.1 - Corporate Franchise**:  Except as otherwise approved in writing by Little Caesar, if Franchisee is a corporation, it shall:  (i) confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) maintain stop transfer instructions on its records  against the transfer of any equity securities  and only issue securities upon the face of which a legend appears, in a form satisfactory to Little Caesar, which references the transfer restrictions imposed by this Agreement; (iii) not issue any voting securities or securities convertible into voting securities other than with Little Caesar's consent and in compliance with all other applicable provisions of Section 12; and (iv) maintain a current list of all owners of record and all beneficial owners of Franchisee and furnish the list to Little Caesar upon request.

**16.2 - Partnership Franchise**:  If Franchisee is a partnership it shall:  (i) furnish Little Caesar with copies of its partnership agreement and such other documents as Little Caesar may reasonably request, and any amendments thereto; and (ii) prepare and furnish to Little Caesar, upon request, a current list of all general and limited partners in Franchisee.

**16.3 - Limited Liability Company Franchisee** - If Franchisee is a limited liability company, it shall: (i) furnish Little Caesar with copies of its articles of organization and operating agreement, as well as such other documents as Little Caesar may reasonably request, and any amendments thereto; (ii) prepare and furnish to Little Caesar, upon request, a current list of all members and managers in Franchisee; and (iii) maintain stop transfer instructions on its records against the transfer of any membership units and, if such units are certificated, ensure that the certificates bear a legend, in a form satisfactory to Little Caesar, which references the transfer restrictions imposed by this Agreement.

**16.4 - Direct and Indirect Owners to Execute Personal Guarantees**: The following individuals and entities shall guarantee Franchisee's performance of each and every provision of this Agreement, by executing a Guarantee in the form annexed hereto as **Exhibit A**:

**16.4.1**    Any individual or entity that owns any direct or indirect interest in Franchisee.

**16.4.2**    Any individual that is or becomes the spouse of any natural person required by Section 16.4.1 to execute a Guarantee shall execute the Guarantee jointly and severally with that person.

## 17. TAXES

**17.1 - Payment of Taxes**: Franchisee shall promptly pay to Little Caesar an amount equal to all taxes levied or assessed, including, but not limited to, unemployment taxes, sales taxes, use taxes, withholding taxes, excise taxes, personal property taxes, intangible property taxes, gross receipt taxes, taxes on royalties, any similar taxes or levies, imposed upon or required to be collected or paid by Little Caesar by reason of the furnishing of products, intangible property (including trademarks and trade names) or service by Little Caesar to Franchisee through the sale, license or lease of property or property rights provided by this Agreement.

**17.2 - Challenging Tax Assessment**: In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with the procedures of the taxing authority or applicable law.

## 18. INDEPENDENT CONTRACTOR AND INDEMNIFICATION

**18.1 - No Fiduciary Relationship**: It is understood and agreed by the parties hereto that this Agreement does not create a fiduciary relationship between them; that Franchisee shall be an independent contractor; and, that nothing herein is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, partner, employee, employer, joint employer, enterprise, or servant of the other for any purpose whatsoever.

**18.2 - Public Notice of Independent Status**: Franchisee shall conspicuously identify itself and the Restaurant in all dealings with its customers, contractors, suppliers, public officials, and others, as an independent franchisee of Little Caesar, and shall place such notice of independent ownership in its Restaurant and on all forms, business cards, stationery, advertising, signs, and other materials, and in such fashion, as Little Caesar may specify from time to time in the Manuals or otherwise in writing.

**18.3 - Independent Contractor**: Franchisee acknowledges and agrees that it is not authorized to make any contract, agreement, warranty, or representation on Little Caesar's behalf, or to incur any debt or other obligation in Little Caesar's name; and that Little Caesar shall in no event assume liability for, or

be deemed liable hereunder as a result of, any such action; nor shall Little Caesar be liable by reason of any act or omission of Franchisee in its conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Little Caesar.

**18.4 - Indemnification**: Franchisee shall indemnify, defend and hold harmless to the fullest extent permitted by law, Little Caesar, its affiliates and their respective directors, officers, employees, shareholders, and agents (collectively "*indemnitees*") from any and all losses and expenses (as hereinafter defined) incurred in connection with any litigation or other form of adjudicatory procedure, claim, demand, investigation, or formal or informal inquiry (regardless of whether same is reduced to judgment) or any settlement thereof which arises directly or indirectly from, as a result of, or in connection with (i) Franchisee's operation of the Restaurant including, but not limited to, claims arising as a result of the maintenance and operation of vehicles or the Restaurant premises, and (ii) Franchisee's or its principals', owners', managers' or employees' attendance and participation in training, as described in Section 5.8 (collectively "*event*"), and regardless of whether same resulted from any strict or vicarious liability imposed by law on the indemnitees, provided, however, that this indemnity shall not apply to any liability arising from the gross negligence of indemnitees (except to the extent that joint liability is involved, in which event the indemnification provided herein shall extend to any finding of comparative negligence or contributory negligence attributable to Franchisee). For the purpose of this Section 18.4, the term "*losses and expenses*" shall be deemed to include compensatory, exemplary, or punitive damages; fines and penalties; attorneys' fees; experts' fees; court costs; costs associated with investigating and defending against claims; settlement amounts; judgments; compensation for damages to Little Caesar's reputation and goodwill; and all other costs associated with any of the foregoing losses and expenses. Franchisee shall give Little Caesar prompt notice of any event of which it is aware, for which indemnification is required, and, at the expense and risk of Franchisee, Little Caesar may elect to assume (but under no circumstance is obligated to undertake) the defense and/or settlement thereof, provided that Little Caesar will seek the advice and counsel of Franchisee. Any assumption of Little Caesar shall not modify Franchisee's indemnification obligation. Little Caesar may, in its sole judgment, take such actions as it deems necessary and appropriate to investigate, defend, or settle any event or take other remedial or corrective actions with respect thereof as may be, in Little Caesar's sole judgment, necessary for the protection of the indemnitees or the System.

## 19. APPROVALS AND WAIVERS

**19.1 - No Waiver**: Little Caesar makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee by providing any waiver, approval, consent, or suggestion to Franchisee in connection with this Agreement, or by reason of any neglect, delay, or denial of any request therefor. No delay, waiver, omission, or forbearance on the part of Little Caesar to exercise any right, option, duty, or power arising out of any breach or default by Franchisee, or by any other franchisee, of any of the terms, provisions, or covenants thereof, shall constitute a waiver by Little Caesar to enforce any such right, option, or power as against Franchisee, or as to subsequent breach or default by Franchisee. Subsequent acceptance by Little Caesar of any payments due to it hereunder shall not be deemed to be a waiver by Little Caesar of any preceding or succeeding breach by Franchisee of any terms, covenants, or conditions of this Agreement.

**19.2 - Requests for Waivers, Approvals or Consents**: Whenever Franchisee desires Little Caesar's waiver of any obligation in this Agreement and whenever this Agreement requires Franchisee to obtain Little Caesar's written approval or consent, Franchisee must address its written request for the waiver, approval or consent to National Vice President, Franchise Operations (unless Little Caesar specifies

another individual or department in writing). The request must specify the provision of this Agreement for which a waiver or consent is sought and the basis of the request.

**19.3 - Little Caesar's Reasonable Business Judgment**: Whenever Little Caesar reserves or is deemed to have reserved discretion in a particular area or where Little Caesar agrees or is deemed to be required to exercise its rights reasonably or in good faith, Little Caesar will satisfy its obligations whenever it exercises Reasonable Business Judgment in making its decision or exercising its rights. A decision or action by Little Caesar will be deemed to be the result of Reasonable Business Judgment, even if other reasonable or even arguably preferable alternatives are available, if Little Caesar's decision or action is intended, in whole or significant part, to promote or benefit the Little Caesar System generally even if the decision or action also promotes a financial or other individual interest of Little Caesar. Examples of items that will promote or benefit the Little Caesar System include, without limitation, enhancing the value of the Proprietary Marks, improving customer service and satisfaction, improving product quality, improving uniformity, enhancing or encouraging modernization, and improving the competitive position of the Little Caesar System.

**19.4 - Remedy for Non-approval**: In no event shall Franchisee be entitled to make, nor shall Franchisee make, any claim, and Franchisee hereby waives any claim for money damages, nor shall Franchisee claim any money damages by way of set-off, counterclaim, or defense, based upon any claim or assertion by Franchisee that Little Caesar has unreasonably withheld or unreasonably delayed any consent or approval as required by this Agreement. Franchisee's sole remedy for any such claim shall be an action or proceeding to enforce any such provisions, or for specific performance, or declaratory judgment.

**19.5 - Atypical Modifications to System**: Franchisee acknowledges that because complete and detailed uniformity under many varying conditions may not be possible or practical, Little Caesar specifically reserves the right and privilege as it may deem in the best interests of all concerned in any specific instance, to vary certain standards for the Restaurant, based upon the peculiarities of the Restaurant's customer base, location, density of population, business potential, population of trade area, existing business practices or any other condition which Little Caesar deems to be of importance to the successful operation of the specific Restaurant. Franchisee shall not be entitled to require Little Caesar to disclose or grant to Franchisee a like or similar variation.

## 20. NOTICES

**20.1 - Notices**: Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by telecopier, mailed by certified mail, return receipt requested, or dispatched by overnight delivery envelope, to the respective parties at the following addresses unless and until a different address has been designated by written notice to the other party:

| | |
|---|---|
| Notices to Little Caesar: | Little Caesar Enterprises, Inc.<br>2211 Woodward Avenue<br>Detroit, Michigan 48201-3400<br>Attention: Legal Department |
| Notices to Franchisee: | **Kmart Corporation**<br>**3333 Beverly Road, B6-260A**<br>**Hoffman Estates, IL 60179-0001**<br>**Attention:Dan Germano, Vice President, General Counsel** |

S:\KMART\FA09 3.31.09 - F I N A L.9.14.10.doc

Notices shall be deemed to have been received as follows: by personal delivery or telecopier -- at the time of delivery; by overnight delivery service -- on the next business day following the date on which the Notice was given to the overnight delivery service; and certified mail -- the earlier of the actual date of delivery or three (3) days after the date of mailing. Notices to Little Caesar will not be effective unless sent to the attention of the Legal Department.

## 21. ENTIRE AGREEMENT; MODIFICATIONS

**21.1 - Entire Agreement**: This Agreement, any exhibits and attachments hereto, and any ancillary agreement between Franchisee and Little Caesar or any affiliate of Little Caesar, executed contemporaneously with this Agreement, constitute the entire and complete agreement between Little Caesar and/or its affiliates and Franchisee concerning the subject matter thereof, and supersede any and all prior agreements. Franchisee acknowledges that it is entering into this Agreement, and any ancillary agreement executed contemporaneously herewith, as a result of its own independent investigation of the business franchised hereby and not as a result of any representations made by Little Caesar, persons associated with Little Caesar, or other Little Caesar franchisees, which are contrary to the terms herein set forth or which are contrary to the terms of any franchise disclosure document, or other similar document required or permitted to be given to Franchisee pursuant to applicable law. Except for those permitted hereunder to be made unilaterally by Little Caesar and except as provided in Section 21.2, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.

**21.2 – Modification Approved by Majority of Franchised Restaurants**: Little Caesar has the right to unilaterally modify this Agreement if the modification is approved by a vote or the written consent of a majority of the franchised Restaurants in operation at that time. If a proposed modification is approved by a majority of the franchised Restaurants, Franchisee will be given written notice of the modification and the effective date of the modification. The effective date of the modification will be at least fourteen days after the written notice. Little Caesar's right to modify this Agreement under the provisions of this Section will be in addition to and will not limit or act as a condition on Little Caesar's right to unilaterally modify this Agreement as otherwise permitted in this Agreement.

## 22. SEVERABILITY AND CONSTRUCTION

**22.1 - Severability and Construction**: Except as expressly provided to the contrary herein, each portion, section, part, term, and/or provision hereof shall be considered severable; and if, for any reason, any portion, section, part, term, and/or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation by a court or agency having valid jurisdiction, such shall not impair the operation of, or have any other effect upon, such other portions, sections, parts, terms, and/or provisions hereof as may remain otherwise intelligible; and the latter shall continue to be given full force and effect and bind the parties hereto; and said invalid portions, sections, parts, terms, and/or provisions shall be deemed not to be a part hereof.

**22.2 - Survival of Modified Covenants**: Franchisee expressly agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision hereof, as though it were separately articulated in and made a part hereof, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be

unreasonable and unenforceable in a final decision to which Little Caesar is a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

**22.3 - Survival of Obligations After Expiration of Agreement**: Any provision or covenant of this Agreement by its terms or by reasonable implication are to be performed in whole or in part, after the expiration or termination of this Agreement shall survive such expiration or termination.

**22.4 - Captions**: The Article and Section headings and captions in this Agreement are for convenience only, and shall not affect the construction or interpretation of the terms of this Agreement.

**22.5 - Affiliate and Principal Defined**: For purposes of this Agreement, the term "*affiliate*" shall mean any person or legal entity that directly or indirectly controls, is controlled by, or is under common control with the specified person or legal entity; the term "*principal*" shall mean a shareholder of a corporation, a general or limited partner of a partnership, and a member of a limited liability company.

## 23. APPLICABLE LAW AND JURISDICTION; LIMITATION ON LEGAL RIGHTS

**23.1 - Choice of Law**: This Agreement takes effect upon its acceptance and execution by Little Caesar in Michigan, and shall be interpreted and construed under the laws of Michigan. In the event of any conflict of law, the laws of Michigan shall prevail, without regard to the application of Michigan conflict-of-law rules. If, however, any provision of this Agreement would not be enforceable under the laws of Michigan, and if the Restaurant is located outside of Michigan and such provision would be enforceable under the laws of the state in which the Restaurant is located, then such provision shall be interpreted and construed under the laws of that state. Nothing in this Section 23.1 is intended by the parties to subject this Agreement to any franchise or similar law, rule, or regulation of the State of Michigan to which it would not otherwise be subject.

**23.2 - Venue**: Any action brought by Franchisee or any affiliate or principal against Little Caesar shall be brought exclusively, and any action brought by Little Caesar against Franchisee or any affiliate or principal may be brought, in the federal district court covering the location at which Little Caesar has its principal place of business at the time the action is commenced; provided, however, that if the federal court would not have subject matter jurisdiction had the action been commenced in such court, then, in such event, the action shall (with respect to actions commenced by Franchisee or any affiliate or principal), and may (with respect to actions commenced by Little Caesar), be brought in the state court within the judicial district in which Little Caesar has its principal place of business at the time the action is commenced. The parties waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision. Franchisee, its affiliates and principals shall not dispute jurisdiction or venue in any forum established under this Section and shall not attempt to change venue established under this Section based on forum non conveniens or any other reason.

**23.3 - Nonexclusivity of Remedy**: No right or remedy conferred upon or reserved to Little Caesar hereby is intended to be, nor shall be deemed, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy.

**23.4 - Right to Injunctive Relief**: Nothing herein contained shall bar Little Caesar's right to obtain injunctive relief against threatened conduct that will cause it loss or damages, under the usual equity rules, including the applicable rules for obtaining restraining orders and preliminary injunctions.

**23.5 - Limitation on Legal Rights**:        SUBJECT TO APPLICABLE STATE LAW, LITTLE CAESAR AND FRANCHISEE, ITS AFFILIATES AND PRINCIPALS IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY ANY OF THEM AGAINST THE OTHER, WHETHER OR NOT THERE ARE OTHER PARTIES IN SUCH ACTION OR PROCEEDING.

ALL CLAIMS ARISING UNDER THIS AGREEMENT OR FROM THE RELATIONSHIP BETWEEN THE PARTIES ARE BARRED UNLESS AN ACTION IS FILED WITHIN ONE YEAR FROM THE DATE THE PARTY KNEW OR SHOULD HAVE KNOWN OF THE FACTS CREATING THE CLAIM (AND TIMELY SERVED ON THE OPPOSING PARTY) EXCEPT FOR FINANCIAL OBLIGATIONS OF FRANCHISEE, OR SHORTER PERIOD TO THE EXTENT ANY APPLICABLE LAW OR STATUTE PROVIDES FOR A SHORTER PERIOD OF TIME TO BRING A CLAIM.

EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, LITTLE CAESAR AND FRANCHISEE, ITS AFFILIATES AND PRINCIPALS WAIVE IN ANY JUDICIAL ACTION, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO OR CLAIM OF ANY SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER AND AGREE THAT IN THE EVENT OF A DISPUTE BETWEEN THEM, EACH WILL BE LIMITED TO THE RECOVERY OF ANY ACTUAL DAMAGES SUSTAINED BY THAT PARTY.

ANY JUDICIAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING FROM OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES WILL BE CONSIDERED UNIQUE ON ITS FACTS AND MAY NOT BE BROUGHT AS A CLASS ACTION. FRANCHISEE AND ITS AFFILIATES, PRINCIPALS, OWNERS, OFFICERS, DIRECTORS, MEMBERS, AGENTS AND EMPLOYEES WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO PROCEED AGAINST LITTLE CAESAR BY WAY OF CLASS ACTION.

## 24.  ACKNOWLEDGMENTS AND REPRESENTATIONS

**24.1 - Recognition of Business Risks**:  Franchisee and its principals acknowledge that the business venture contemplated hereby involves business risks, and that Franchisee's success will be largely dependent upon the ability of Franchisee as an independent business person (or the ability of the principals, if Franchisee is a corporation or other entity).  Little Caesar expressly disclaims the making of, and Franchisee and its principals acknowledge that they have not received, any warranty, guarantee, or representation, express or implied, from any employee or agent of Little Caesar, as to the prior, current, or potential sales, income, profits, or success of the business venture contemplated by this Agreement or of other restaurants, or of the suitability of the Approved Location of the Restaurant.

**24.2 - Receipt of Franchise Offering Materials**:  Franchisee acknowledges that it received a Little Caesar Franchise Disclosure Document, as required under federal and applicable state franchise disclosure law, at least fourteen (14) calendar days before signing this Agreement or any other binding agreement, or paying any fees to Little Caesar or its affiliates.  In addition, if Little Caesar materially altered the provisions of this Agreement, including any attachments relating thereto, or any related agreements attached to the Little Caesar Franchise Disclosure Document (except as a result of negotiations Franchisee initiated), Franchisee acknowledges that it received a copy of this Agreement or the related agreement at least seven (7) calendar days before signing it.

**24.3 - Review of Franchise Offering Materials**:  Franchisee acknowledges that it has read and understands this Agreement, the attachments hereto, if any, and that Little Caesar has accorded Franchisee ample time and opportunity to consult with advisors of Franchisee's own choosing about the potential benefits and risks of entering into this Agreement.

**24.4 - Uniformity of Agreements**:  Franchisee acknowledges that it is aware that other franchisees of Little Caesar operate under a number of different forms of franchise agreements that were entered into at different times and that, consequently, the obligations and rights of the parties to such other agreements may differ materially in certain instances from Franchisee's rights and obligations under this Agreement.

**24.5 - Terrorist and Money Laundering Activities**:  Franchisee and its principals, owners, officers, directors, members, partners and agents represent and warrant to Little Caesar that: (a) they are not identified by name or alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" or "Blocked Persons" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (text is currently available at www.treas.gov/offices/enforcemnet/ofac/); (b) they are not directly or indirectly owned or controlled by the government of any country that is subject to a United States embargo; (c) they will not act directly or indirectly on behalf of the government of any country that is subject to a United States embargo; and (d) they are in full compliance with all laws proscribing money laundering and corrupt practices.  Further, Franchisee and its principals, owners, officers, directors, members, partners and agents represent and warrant to Little Caesar that they have not violated and agree not to violate any law prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire  to commit acts of terror against any person or government, including acts prohibited   by   the   USA   Patriot   Act   (text   currently   available   at http://www.epic.org/privacy/terrorism/hr3162.html), U.S. Executive Order 13244 (text currently at http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html), or any similar law.  The foregoing constitute continuing representations and warranties, and Franchisee and its principals, owners, officers, directors, members, partners and agents must immediately notify Little Caesar in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

## 25. AMENDMENT OF PRIOR AGREEMENTS

**25.1 – California Stores Only:**  In the case of a material modification of an existing franchise located in California, California Corporations Code §31101 requires a franchisor to disclose information concerning proposed material modifications of an existing franchise agreement.  If Franchisee (or its affiliates) previously entered into one or more franchise agreements with Little Caesar and/or LC Trademarks, Inc., this Section 25 may include a material modification of those existing franchise agreements.  If that is the case, then, under California law, Franchisee (or its affiliate) has ten business days after receipt of Little Caesar's Franchise Disclosure Document, which includes a copy of this Agreement, to notify Little Caesar in writing that Franchisee (or its affiliate) does not agree to the modification of the existing franchise agreement or that Franchisee (or its affiliate) rescinds this modification of the existing franchise agreement.  If Franchisee (or its affiliate) notifies Little Caesar that Franchisee (or its affiliate) does not agree to (or rescinds) these modifications within the ten business day period, this Franchise Agreement will be null and void and Franchisee will not have the right to develop a franchise under this Franchise Agreement.

**25.2 – Amendment of Prior Agreements**:  In order to obtain uniformity and quality of operation, performance, dispute resolution and other matters, Little Caesar and its affiliates amend their standard Franchise Agreements from time to time.  As a result, this Agreement may be different than other Little

Caesar franchise agreements you may have signed with Little Caesar or its affiliates in the past and may contain revised provisions regarding modifications to the System, manner of payment of fees and late fees, duties of franchisee, protection of trademarks, status and protection of Manuals and confidential information, advertising, insurance, accounting and records, transfers, default and termination, obligations on termination, franchisee covenants, taxes, indemnification, obligations to defend, approvals and waivers, notices, construction of agreement and applicable law. To cooperate with Little Caesar and its affiliates in the achievement of these goals and as a condition of the grant of an additional franchise, Franchisee agrees that all of Franchisee's existing franchise agreements with Little Caesar or an affiliate of Little Caesar and all existing franchise agreements between any affiliate of Franchisee and Little Caesar or an affiliate of Little Caesar (including LC Trademarks, Inc.) are amended to include the following provisions of this Agreement (if the existing franchise agreements do not already include these provisions): Sections 1.6, 3.4, 3.6, 5.1 through 5.3, 5.4.3, 5.5 through 5.17, 7.1 through 7.3.6, 8.1 through 8.5, 9.1 through 9.7, 10.1 through 10.5, 11.1 through 11.7, 12.1 through 12.9, 13.1 through 13.5, 14.1 through 14.9, 15.1 through 15.7, 16.1 through 16.4, 17.1 through 17.2, 18.1 through 18.4, 19.1 through 19.5, 20.1, 21.1, 22.1 through 22.5, and 23.1 through 23.5. **FRANCHISEE ACKNOWLEDGES AND UNDERSTANDS THAT THIS SECTION 25.2 AMENDS ALL OF FRANCHISEE'S EXISTING FRANCHISE AGREEMENTS WITH LITTLE CAESAR OR ANY AFFILIATE OF LITTLE CAESAR (INCLUDING LC TRADEMARKS, INC.) AND THAT ANY SUCH AMENDMENT WILL SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.**

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement on the day and year first above written.

ATTEST:                                          LITTLE CAESAR ENTERPRISES, INC.

_____                          By: _____
                                                 David J. Gray
                                                 Title: National Vice President, Franchise
                                                 Services


ATTEST:                                          Kmart Corporation

_____                          By: _____
                                                 James Haworth,
                                                 Title: Executive Vice President.


Franchise #

## GUARANTEE

As an inducement to **Little Caesar Enterprises, Inc.** ("*Little Caesar*") to execute the Franchise Agreement with Kmart Corporation, ("*Franchisee*") dated  October 1, 2010, and in consideration of Little Caesar executing the Franchise Agreement with Franchisee and other consideration, the receipt of which is hereby acknowledged, Guarantors jointly and severally agree as follows:

1.  Guarantors shall pay or cause to be paid to Little Caesar and its affiliates all monies payable by Franchisee to Little Caesar and its affiliated and related entities, including all monies payable by Franchisee under the Franchise Agreement, as well as all monies owing at anytime by Franchisee to Blue Line Foodservice Distribution (hereafter, collectively, "Franchise Agreement Obligations"), without right of set-off, on the date and in the manner required for payment.

2.  Guarantors unconditionally guarantee full performance and discharge by Franchisee of all Franchise Agreement Obligations on the date and times and in the manner required.

3.  Guarantors agree to be personally bound by the covenants set forth in the Franchise Agreement, including in Sections 5, 7, 8, 11, 14, 15, 18,  23 and 24.

4.  Guarantors shall indemnify, defend and hold harmless Little Caesar and its affiliates, and their respective shareholders, directors, employees, and agents, against and from all losses, damages, costs, and expenses which Little Caesar and its affiliates may sustain, incur, or become liable for by reason of:

    a.  Franchisee's failure to pay the monies payable pursuant to the Franchise Agreement Obligations or to do and perform any other act, matter, or thing required by the Franchise Agreement; or

    b.  any action by Little Caesar to obtain performance by Franchisee of any act, matter, or thing required by the Franchise Agreement.

Guarantors agree that any indemnification pursuant to this paragraph shall be subject to the same terms and conditions as described in Section 18.4 of the Franchise Agreement.

5.  Little Caesar shall not be obligated to proceed against Franchisee or exhaust any security from Franchisee or pursue or exhaust any remedy, including any legal or equitable relief against Franchisee, before proceeding to enforce the obligations of the Guarantors herein set out, and the enforcement of such obligations may take place before, after, or contemporaneously with, enforcement of any debt or Franchise Agreement Obligations of Franchisee.

6.  Without affecting the Guarantors' obligations under this Guarantee, Little Caesar, without notice to the Guarantors, may extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee.  Guarantors waive notice of amendment of the Franchise Agreement and notice of demand for payment or performance by Franchisee.

7.  This Guarantee shall terminate upon the termination or expiration of the Franchise Agreement, except that all obligations and liabilities of the Guarantors which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the Franchisee or the Guarantors, and all covenants which by their terms continue in force after the expiration or termination of the Franchise Agreement shall remain in force according to their terms.  Upon the death of an individual Guarantor, the estate of such Guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of any other Guarantors will continue in full force and effect.

8.   The provisions of Section 23 of the Franchise Agreement shall apply as to any interpretation or enforcement of this Guarantee, and the provisions of Section 20 of the Franchise Agreement shall apply to any notice to either party, except that notice to Guarantors shall be provided as follows:

Notices to Guarantors:

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Franchise Agreement.

WITNESSES:                                                GUARANTORS:

_____          _____
                                                          James Haworth, Executive Vice President.
_____          _____

_____          _____

_____          _____

Countersigned
**LITTLE CAESAR ENTERPRISES, INC.**

By:   _____
      **David J. Gray**
Title:    National Vice President, Franchise Services

Franchise #

## FIRST ADDENDUM TO FRANCHISE AGREEMENT

### October 1, 2010

This **First Addendum to Franchise Agreement** (this "*Addendum*") by and between Little Caesar Enterprises, Inc., a Michigan corporation ("*Little Caesar*"), and Kmart Corporation, a Michigan corporation ("*Franchisee*"), amends and supplements the Franchise Agreement between Little Caesar and the Franchisee dated the date of this Addendum (the "*Franchise Agreement*"). The date of this Addendum provided above is the "*Effective Date*."

### RECITALS

A.    Little Caesar and Franchisee have been parties to an Amended and Restated Little Caesar Franchise Development Agreement dated August 28, 1997, the stated term of which has expired (the "*Previous Agreement*").  Pursuant to the Previous Agreement, Franchisee currently operates 187 Little Caesar foodservice operations inside Kmart retail stores at the locations listed on Attachment 1 to this Addendum (together the "*Existing Operations*").

B.    Franchisee and Little Caesar each wishes to renew the franchise relationship, and for that purpose:  (i) each of them is executing the Franchise Agreement, which is Little Caesar's current standard form of Little Caesar franchise agreement as of September 2009, and this Addendum, which amends the Franchise Agreement; and (ii) Franchisee is executing a General Release in the form of Attachment 2.  Except as otherwise provided in Paragraph 1 of this Addendum, the Franchise Agreement and this Addendum supersede and terminate the Previous Agreement and the Supply Distribution Agreement dated September 3, 1997 between Little Caesar and Franchisee (the "*Supply Agreement*").

C.    Capitalized terms not otherwise defined in this Addendum shall have the same meaning as in the Franchise Agreement.  References herein to the "Franchise Agreement" mean the Franchise Agreement as amended and modified by this Addendum. All references in the Franchise Agreement to "any addendum" include this Addendum.  References in the Franchise Agreement to a "*Restaurant*" shall be understood to refer independently to each Little Caesar Operation, as defined below.

**The parties agree as follows:**

1.    Little Caesar and Franchisee intend and agree that the Franchise Agreement and this Addendum supersede and terminate the Previous Agreement and the Supply Agreement.  Termination of the Previous Agreement and the Supply Agreement does not discharge any outstanding financial or other obligations of Franchisee under those agreements.

2.    Sections 1.1, 1.2, 1.3, and 1.4 (all references to "Sections" in this Addendum are to Sections of the Franchise Agreement) are deleted and replaced with the following:

**1.1  Franchise Grant**: Little Caesar hereby grants to Franchisee the right, and Franchisee accepts the obligation, to use the Proprietary Marks and System solely in connection with the operation of each Little Caesar Operation.  The term "*Little Caesar Operation*" means:  (a)

each of the Existing Operations, and (b) each of the Additional Locations (as defined in Section 1.2 below). Each Little Caesar Operation is considered a separate franchise, even though Little Caesar and Franchisee are not executing a separate Franchise Agreement for each Little Caesar Operation. Each Little Caesar Operation will be governed by the terms of the Franchise Agreement and this Addendum. Franchisee shall promptly update <u>Attachment 1</u> to reflect: (a) any additional Little Caesar Operations approved by Little Caesar under Section 1.2; and (b) any Little Caesar Operations closed for any reason. Franchisee shall provide the current list of locations to Little Caesar quarterly.

**1.2  Additional Locations**: During the term of the Franchise Agreement, Franchisee at its discretion may propose to establish Little Caesar Operations in additional Kmart stores. Franchisee shall notify Little Caesar in writing of each proposed additional location and shall provide such information concerning the proposed Little Caesar Operation as Little Caesar may reasonably request. Little Caesar may give or withhold its approval of each proposed additional location in its sole discretion. Each additional location approved by Little Caesar in accordance with this Section is referred to singly as an "***Additional Location***" and together as the "***Additional Locations***."

**1.3  No Territorial Protection.** Franchisee expressly acknowledges and agrees that the franchise is non-exclusive and Little Caesar and any Little Caesar affiliate (as the term "***affiliate***" is defined in Section 22.5) retain the right, among others, in any manner and on any terms and conditions Little Caesar deems advisable, and without granting Franchisee any rights therein: (a) to own, acquire, establish, and/or operate, and license others to establish and operate, businesses using the Proprietary Marks and System at any location; (b) to own, acquire, establish and/or operate, and license others to establish and operate, other restaurant concepts now or hereinafter offered by Little Caesar, as well as businesses under proprietary marks other than the Proprietary Marks or other systems, whether such restaurant concepts or businesses are similar to or different from the Little Caesar Operations, at any location; and (c) to sell or distribute, at retail or wholesale, directly or indirectly, or license others to sell or distribute, any products under any proprietary marks, including the Proprietary Marks, at any location.

3. Section 2.1 is deleted and replaced with the following:

**2.1  Initial Term of Franchise.** Subject to Section 2.2, the term of the Franchise Agreement is five (5) years beginning on October 1, 2010 and ending on September 30, 2015. Upon expiration of the term, the license to use the Proprietary Marks and System shall cease with respect to each Little Caesar Operation regardless of how long it has been operating.

4. Section 2.2, preamble, is deleted and replaced with the following:

**2.2  Renewal.** Franchisee may, at its option, renew this Agreement for two consecutive terms of three (3) years each, subject to the following prerequisites, which Franchisee shall have satisfied as of the effective date of the renewal:

5. Section 2.2.1 is deleted and replaced with the following:

2

2.2.1    Franchisee shall give Little Caesar written notice of Franchisee's election to renew no fewer than six (6) months nor more than twelve (12) months prior to the end of the initial term or the first renewal term, as the case may be;

6.    Sections 2.2.4 and 2.2.8 are deleted and each is replaced with the following:

[Deleted]

7.    Section 3.1 is deleted and replaced with the following:

[Deleted]

8.    Section 3.2 is deleted and replaced with the following:

**3.2 - Royalty Fee**:  Franchisee shall pay to Little Caesar a continuing royalty fee in an amount equal to six percent (6%) of the Gross Sales of each Little Caesar Operation for each one (1) week period, or such other longer period as Little Caesar may specify from time to time.  Subject to the last sentence of this section, "***Gross Sales***" shall mean all revenue from the sale of Little Caesars Items (as defined below in this section 3.2), whether for cash or credit, and regardless of collection in the case of credit, including but not limited to all revenue associated with products or services bearing or using the Proprietary Marks and the revenue implied by any proceeds from business interruption insurance.  Gross Sales from "bundled offers" of Little Caesar Items with Approved Non-Little Caesar Items (as defined in Section 5.3.2 below) shall be determined by multiplying the "bundled offer" revenue by a fraction, the numerator of which is the full retail menu board prices of the Little Caesar Items and the denominator of which is the sum of the full retail menu board prices of the Little Caesar Items and of the full retail menu board prices of the Approved Non-Little Caesar Items included in the bundled offer.  Gross Sales shall not include:  (a) revenue from Approved Non-Little Caesar Items; (b) sales taxes and other taxes and fees collected by Franchisee from its customers and thereafter paid directly to the appropriate taxing or other governmental authority; (c) refunds and credits to customers for returned Little Caesar Items and Approved Non-Little Caesar Items; and (d) returned-check and similar fees collected by Franchisee from its customers.  "***Little Caesar Items***" means Little Caesar pizzas (including Hot-N-Ready large pizzas and specialty pizzas), Italian Cheese Bread, Caesar Wings, Crazy Combo, Crazy Bread, Subs, lasagna and spaghetti (Hawaii and Guam only), and all other items that Little Caesar authorizes Franchisee to sell, and Franchisee agrees to sell, to Franchisee's customers.  Franchisee acknowledges that Little Caesar may modify the names of such products without affecting their inclusion as Little Caesar Items.

9.    Section 3.4, first sentence, is deleted and replaced with the following:

The continuing royalty and advertising fees pursuant to Sections 3.2, 3.3 and 9 are due weekly, or less frequently as Little Caesar may specify from time to time, in the manner prescribed by Little Caesar in accordance with those sections.

10. Section 4.1 is deleted and replaced with the following:

**4.1 - Furnishing Prototype Plans:**  The approved prototype design for a Little Caesar Operation is shown in <u>Attachment 3</u>.  Attachment 3 may be amended, replaced, or modified from

time to time by Little Caesar. Franchisee shall develop drawings based on Attachment 3 for the various styles of Kmart store. The drawings for each style of Kmart store shall be submitted to Little Caesar for approval. Franchisee shall use only the approved drawings in updating and refurbishing the Existing Operations in accordance with Section 5.6.

11. Section 4.2 is deleted and replaced with the following:

**4.2 - Site Selection**: Franchisee acknowledges that the location, selection, procurement, and development of sites for Additional Locations are Franchisee's responsibility. Franchisee acknowledges and agrees that Little Caesar's approval of a site for Franchisee's Additional Location is not, and shall not be construed as, a guarantee or assurance that the Additional Location will be profitable or successful.

12. The following Sections 4.8 and 4.9 are added:

**4.8 - Compliance with Law**: The execution, delivery and performance by Little Caesar of this Agreement, to the Knowledge of Little Caesar, does not and will not violate or result in a breach of any federal or state law, rule or regulation to which Little Caesar is subject, other than a violation or breach that would not, individually or in the aggregate, have a Material Adverse Effect or materially impair or delay Little Caesar's ability to perform its obligations hereunder. Little Caesar shall use reasonable efforts to notify Franchisee by telephone within twenty-four (24) hours after receipt by Little Caesar of any notice alleging a possible health or safety problem with respect to the manufacture or distribution of the food products sold to Franchisee in accordance with Section 5.4.2. In this Agreement, "Knowledge" means the actual knowledge of one or more senior executives of Little Caesar, and "Material Adverse Effect" means an effect that is materially adverse to the business, financial condition or results of operations of the Little Caesar Operations, it being understood that any impact of less than US$50,000 shall be automatically deemed not to be material.

**4.9 – Proprietary Marks**. Little Caesar represents and warrants that, to the Knowledge of Little Caesar, Franchisee's use of the LITTLE CAESARS mark and the Fanciful Man logo (together, the "Principal Marks") in accordance with the terms and conditions of this Agreement will not infringe any trademark rights of any third party. If Little Caesar acquires Knowledge that Franchisee's use of the Principal Marks constitutes an infringement of any trademark, service mark, or trade name of any other person, Little Caesar shall notify Franchisee in writing within thirty (30) days.

13. Section 5.2 is deleted and replaced with the following:

[Deleted]

14. Section 5.3.2 is deleted and replaced with the following:

5.3.2 Subject to the next sentence, Franchisee shall (a) sell or offer for sale only such products and services as meet Little Caesar's uniform standards of quality, as have been expressly approved for sale in writing by Little Caesar, and as have been prepared in all respects in accordance with Little Caesar's methods and techniques for product preparation; (b) sell or offer for sale all products and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System; (c) not deviate in any respect from Little Caesar's me-

thods, standards, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served; and (d) discontinue selling and offering for sale any products or services which Little Caesar disapproves in writing at any time.  Little Caesar consents to the offer for sale and sale of the following non-Little Caesar items in the Little Caesar Operations: Nathan's Famous Hot Dogs; Icee products; coffee; popcorn; ice cream; nachos; breakfast items; and Pepsi drinks (collectively, the **"Approved Non-Little Caesar Items"**).  Franchisee shall not offer or sell any other non-Little Caesar items in the Little Caesar Operations without the prior written consent of Little Caesar.  Franchisee shall not deliver products outside of the Kmart stores without the prior written approval of Little Caesar, which may be withheld for any reason or no reason at all. Franchisee shall not participate in any school lunch program or fill or bid on group orders (defined as orders of 10 or more pizzas) without the prior written approval of Little Caesar.

15. Section 5.3.4 is deleted and replaced with the following:

5.3.4  Subject to Franchisee's store-signage requirements in effect from time to time, Franchisee shall display promotional signs or other written promotional materials or participate in other promotions, in the manner reasonably requested by Little Caesar.  Subject to the next sentence, Franchisee shall participate in, and honor, any electronic or other gift card program, frequency card program, or other card program reasonably specified by Little Caesar.  Franchisee shall have no obligation to comply with the immediately preceding sentence to the extent such compliance would (a) diminish the benefits of, interfere with, or otherwise adversely affect, any electronic or other gift card program, frequency card program, loyalty program, or other marketing, promotional, or other program in effect from time to time operated or sponsored by or for the benefit of Franchisee or any affiliate of Franchisee, or (b) violate any contractual obligation, in effect on the date of this Agreement, of Franchisee or any affiliate of Franchisee.

16. Section 5.4 is amended to add the following:

As a condition to serving as a vendor to the Little Caesar Operations, Blue Line agrees to execute Franchisee's Universal Terms and Conditions for vendors.

17. Section 5.4.3 is deleted and replaced with the following:

[Deleted]

18. Section 5.6 is amended to add the following:

With respect to the Existing Operations, Franchisee shall undertake refurbishment in accordance with the schedule in <u>Attachment 1</u>.

19. Section 5.8 is deleted and replaced with the following:

[Deleted]

20. Section 5.9, second sentence, is deleted and replaced with the following:

Franchisee shall take such steps as are necessary to ensure that its employees preserve good customer relations and render competent, prompt, courteous, and knowledgeable service. Franchise shall meet hiring standards with respect to the Little Caesar Operations that are no less selective than the hiring standards established by the Franchisee for its other retail-store employees.

21. Sections 5.10 and 5.11 are deleted and each is replaced with the following:

[Deleted]

22. Section 5.14 is deleted and replaced with the following:

**5.14 - Notification of Legal Proceedings**:  Franchisee shall notify Little Caesar in writing within five (5) days of (a) the commencement of any action, suit, or proceeding against Franchisee that, if determined against Franchisee, would materially and adversely affect Franchisee's ability to operate any of the Little Caesar Operations, and (b) the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality against Franchisee that if adversely determined against Franchisee would materially and adversely affect Franchisee's ability to operate any of the Little Caesar Operations.

23. Section 5.15 is deleted and replaced with the following:

**5.15 - Attendance at Meetings, Seminars and Conferences**:  Little Caesar will notify Franchisee at the same time and in the same manner as Little Caesar notifies other franchisees of meetings, seminars, and conferences sponsored or organized by Little Caesar with respect to new products or product preparation procedures, new System programs, new operations procedures or programs, training, restaurant management, financial management, sales and sales promotion, and similar topics.  Franchisee shall have no right to attend any meeting of a Cooperative, however, unless Franchisee has been invited and has agreed to become a member of the Cooperative.  Franchisee may designate an appropriate representative to attend all non-mandatory meetings, seminars, and conferences and shall designate an appropriate representative to attend each meeting, seminar, and conference that Little Caesar notifies its franchisees is mandatory.  All of the travel, lodging, and meal expenses incurred by Franchisee's representatives to attend the meetings, seminars, and conferences shall be at Franchisee's expense.

24. Section 6.1 is deleted and replaced with the following:

**6.1 – Obligation to Construct Leasehold Improvements for Additional Locations**.  Franchisee shall, at its expense, construct all leasehold improvements to the Additional Locations in conformance with the prototype or specific design plans and specifications approved by Little Caesar pursuant to Section 4.1 of this Agreement.

25. Section 6.5 of the Franchise Agreement is deleted and replaced with the following:

**6.5 - Construction of Leasehold Improvements for Additional Locations and Securing Approval to Open**:  Construction for each Additional Location shall commence promptly after Little Caesar's written approval of Franchisee's final plans is received, and continue uninterrupted, other than due to causes beyond Franchisee's control, until all necessary work is

6

completed in accordance with the approved plans. Within five (5) days after work is completed, Franchisee shall submit a written request to Little Caesar to conduct a final inspection of the Additional Location premises and, upon receipt of such request, Little Caesar shall promptly conduct such inspection. Franchisee shall not open the Additional Location for business without the express written authorization of Little Caesar, which authorization shall specify the opening date of the Additional Location and may be conditioned upon Franchisee's compliance with Section 6.1, System Standards, and completion of any pre-opening training required by Little Caesar in accordance with Section 5.8.

26. Section 6.7 is deleted and replaced with the following:

[Deleted]

27. Section 7.2.2 is deleted and replaced with the following:

7.2.2    Franchisee shall use the Proprietary Marks only for the operation of the Little Caesar Operations or in Little-Caesar approved advertising for the Little Caesar Operations;

28. Section 7.2.3 is deleted and replaced with the following:

7.2.3  Except for the Franchisee's use and display of trademarks, trade names, and service marks associated with the Approved Non-Little Caesar Items and except as otherwise authorized or required by Little Caesar, Franchisee shall operate and advertise the Little Caesar Operations only under the Proprietary Marks authorized for use for the System;

29. Section 7.3.6 is deleted and replaced with the following:

7.3.6    Little Caesar reserves the right, upon 60-days' prior written notice to Franchisee, to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Little Caesar determines that substitution of different proprietary marks will be beneficial to the System. In such circumstances (a) the use of the substituted proprietary marks shall be governed by the terms of this Agreement, and Little Caesar shall not compensate Franchisee for such substitution, and (b) Franchisee shall implement any such substitution within the time reasonably prescribed by Little Caesar.

30. Section 8.3 is amended by inserting the following new subsection 8.3.1:

**8.3.1    Protection of Franchisee Confidential Information**:  Little Caesar shall not, during or after the term hereof, communicate, divulge, or use for the benefit of any other person, persons, partnership, association, or corporation any Franchisee Confidential Information, as defined below. "Franchisee Confidential Information" means confidential data, knowledge, or know-how of Franchisee unrelated to the Little Caesar Operations which may be communicated to Little Caesar or of which Little Caesar may be apprised by virtue of Franchisee's operation hereunder, including  but not limited to information concerning the marketing, management, or operations plans of Kmart stores  and, to the extent not related to the Little Caesar Operations, information concerning product development, training manuals, policy manuals, operations manuals, sales promotion aids, business forms, operational procedures, accounting procedures, marketing reports, purchasing or distribution procedures, inventory

systems, demographic information, accounting or sales information, past, present and future projects and proposals, customer, prospective customer and vendor information and relationships, marketing techniques, research processes, and financial and economic information. Little Caesar shall divulge Franchisee Confidential Information only to those employees who must have access to it in order to perform their employment responsibilities and who shall keep such information confidential.

31. Sections 8.4 and 8.5 are deleted and replaced with the following:

**8.4 - Irreparable Injury from Disclosure of Confidential Information**: Little Caesar and Franchisee (each the "***Receiving Party***") each acknowledges to the other (each the "***Disclosing Party***") that any failure to comply with the requirements of this Section 8 will cause the Disclosing Party irreparable injury for which no adequate remedy at law may be available; and the Receiving Party agrees that the Disclosing Party may seek, and agrees to pay all court costs and reasonable attorneys' fees incurred by the Disclosing Party in obtaining, without posting a bond, an *ex parte* order for injunctive or other legal or equitable relief with respect to the requirements of this Section 8.

**8.5 - Confidentiality Covenants from Receiving Party's Associates**: The Receiving Party shall ensure that anyone associated with it shall keep confidential all Disclosing-Party confidential information as described in Section 8.3. Upon the Disclosing Party's reasonable request, the Receiving Party shall require anyone who may have access to the confidential information to execute covenants that they shall maintain the confidentiality of the confidential information they receive in connection with their association with the Receiving Party. Such covenants shall be in a form approved by the Disclosing Party, including, without limitation, specific identification of the Disclosing Party as a third-party beneficiary of such covenants with the independent right to enforce them.

32. Section 9.3 is amended by deleting the preamble and replacing it with the following (the numbered subparagraphs of Section 9.3 remain unchanged):

**9.3 - Advertising Cooperative for Local or Regional Advertising**: Little Caesar shall have the right, but not the obligation, to designate any geographical area for purposes of establishing a Cooperative and to determine whether a Cooperative is applicable to one or more of the Little Caesar Operations. Franchisee shall have no right to become a member of any Cooperative without the prior written approval of Little Caesar. If approved by Little Caesar, Franchisee shall become a member of and contribute to the Cooperative on the same basis as other members. Little Caesar shall become a member of the Cooperative on behalf of each Restaurant owned by it or an affiliate in the geographical area of the Cooperative. The following provisions shall apply to each Cooperative:

33. Section 9.4 of the Franchise Agreement is amended to add the following:

The parties intend and agree that all advertising and promotion of the Little Caesar Operations and Little Caesar products by Franchisee is to be directed to customers inside the Kmart Stores. Franchisee shall not, without Little Caesar's prior written consent, engage in or permit any advertising or promotion of Little Caesar Operations or Little Caesar products outside of the four walls of the Kmart Stores. However, the foregoing sentence shall not apply

to Little Caesar-approved advertising by a Cooperative of which Franchisee becomes a member pursuant to Section 9.3.

34. Section 9.5 is deleted and replaced with the following:

[Deleted]

35. Section 9.8 is deleted and replaced with the following:

[Deleted]

36. Section 10.1 is amended to add the following:

Franchisee may fulfill its obligations under this Section through a self-insurance program, provided that Franchisee furnishes reasonable details of the program to Little Caesar and the program provides protection equivalent to that of third-party insurance policies that would meet the requirements of this Section.

37. Sections 10.3, 10.4 and 10.5 are deleted and each is replaced with the following:

[Deleted]

38. Section 11.1 is deleted and replaced with the following:

**11.1 – Information-Management and Financial-Reporting Systems**:  Franchisee or its affiliates, at their expense, shall maintain information-management and financial-reporting systems as shall enable Franchisee to record sales and other record keeping and central functions for the Little Caesar Operations.

39. Section 11.2 is deleted and replaced with the following:

[Deleted]

40. Section 11.4 is amended by adding the following:

As long as Sears Holdings Corporation, Franchisee's parent company, is subject to the reporting requirements of the Securities Exchange Act of 1934 and in accordance therewith files annual, periodic, and other reports with the U.S. Securities and Exchange Commission, which reports are available at www.sec.gov/edgar/searchedgar/companysearch.html, the availability of such reports shall be deemed to satisfy this Section 11.4.  If Sears Holding Corporation ceases to be a public reporting company, Franchisee shall furnish financial statements to Little Caesar as required by this section.

41. Section 11.5 is deleted and replaced with the following:

**11.5 - Submission of Periodic Reports**:  Franchisee shall, at its expense, provide Little Caesar, on forms and in the manner reasonably prescribed by Little Caesar, with (a) weekly reports of Gross Sales, and (b) quarterly and year-to-date profit-and-loss statements for each Little Caesar Operation.  The weekly report of Gross Sales shall be due by noon Wednesday

of the following week or such later time as Little Caesar may specify. The quarterly and year-to-date profit-and-loss statements shall be due within thirty (30) days after the end of each calendar quarter. Each quarterly statement shall be signed by a duly authorized financial officer of Franchisee or of one of its affiliates attesting that the statement is true and correct.

42. Section 11.7 is deleted and replaced with the following:

**11.7 - Right to Audit Franchisee Records**: Little Caesar or its designated agents shall have the right at all reasonable times to inspect and copy, at Little Caesar's expense, Franchisee's books and records with respect to the Little Caesar Operations. Little Caesar shall also have the right to have an independent audit made of such books and records. An independent audit shall not be requested more often than once every six (6) months, provided that, Little Caesar may require an independent audit at any time if Little Caesar reasonably believes that discrepancies exist in Franchisee's reporting. If an inspection or audit reveals that any payments due to Little Caesar have been understated in any report to Little Caesar, then Franchisee shall immediately pay to Little Caesar the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of eighteen percent (18%) per annum calculated monthly, or the maximum rate permitted by law, whichever is less. If an inspection or audit discloses an understatement in any report of two percent (2%) or more, Franchisee shall, in addition to repayment of monies owed with interest, reimburse Little Caesar for any and all costs and expenses connected with the inspection or audit (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Little Caesar may have because of such under-reporting.

43. Section 12.2 is amended by deleting the introductory paragraphs and replacing them with the following:

**12.2 - Transfer by Franchisee**: Franchisee understands and acknowledges that Little Caesar has granted this franchise in reliance on Franchisee's business skill, financial capacity, and management team. Accordingly, Franchisee shall not, without the prior written consent of Little Caesar, transfer, pledge or otherwise encumber this Agreement or any of the rights or obligations of Franchisee under this Agreement with respect to any of the Little Caesar Operations (a "***Transfer***"). Any Transfer, by operation of law or otherwise, that does not have the written consent of Little Caesar required by this Section 12.2 shall be null and void and shall constitute a material breach hereof, for which Little Caesar may then terminate without an opportunity to cure pursuant to Section 13.2.4 hereof.

Little Caesar shall not unreasonably delay or withhold its consent to a Transfer, but Little Caesar may impose reasonable conditions on the transfer, including but not limited to any or all of the following conditions:

44. Section 12.2, all references to the word "transferor," are deleted and replaced with the word "Franchisee."

45. Section 12.2.4 is deleted and replaced with the following:

12.2.4  At Little Caesar's request, the transferee (and, if the transferee is other than a natural person, such owners of a direct or indirect beneficial interest in the transferee as Little Caesar may reasonably request) shall execute and deliver to Little Caesar (a) a written assignment and assumption agreement in a form reasonably satisfactory to Little Caesar assuming and agreeing to fulfill all of Franchisee's obligations hereunder, and (b) a Guarantee in the form of Attachment 4;

46. Section 12.2.6 is deleted and replaced with the following:

12.2.6  The transferee, at its expense, shall within the time specified by Little Caesar, refurbish, remodel, or otherwise change the premises comprising the Little Caesar Operations to meet the standards and specifications of the System that Franchisee is obligated to meet in accordance with this Agreement;

47. Sections 12.2.9, 12.2.10, and 12.2.11 are deleted and each is replaced with the following:

[Deleted]

48. Section 12.4 is deleted and replaced with the following:

**12.4 - Execution of Covenants by Transferee**:  Little Caesar shall have the right to require as a further condition pre-requisite to its consent to any Transfer pursuant to Section 12.2, that the transferee (and all officers, directors, and direct and indirect owners of the transferee, if the transferee is a corporation or other entity) execute the covenants concerning confidentiality, as set forth in Section 8.5, and non-competition, as set forth in Section 15.7 hereof.

49. Sections 12.5 and 12.6 are deleted and each is replaced with the following:

[Deleted]

50. Section 12.7 is deleted and replaced with the following:

**12.7 - Approval of Sale Does Not Constitute Waiver of Rights**:  Little Caesar's consent to a Transfer shall neither constitute a waiver of any claims it may have against the transferring party nor a waiver of Little Caesar's right to demand compliance with any of the terms hereof by any transferee.

51. Sections 12.8 and 12.9 are deleted and each is replaced with the following:

[Deleted]

52. Section 13.1 is deleted and replaced with the following:

**13.1 - Termination Upon Occurrence of Franchisee's Bankruptcy or Insolvency**:  Franchisee shall be deemed to be in default hereunder, and all rights granted herein shall automatically terminate without notice to Franchisee, if the total of Franchisee's debts is greater than the fair value of Franchisee's assets, or if Franchisee is generally not paying its debts as those debts become due, or if Franchisee admits in writing its inability to pay its debts or Franchisee otherwise becomes insolvent or makes a general assignment for the benefit of creditors;

or if a petition in bankruptcy is filed by Franchisee or such a petition is filed in compliance with applicable law against and not opposed by Franchisee; or if Franchisee is adjudicated as bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver of Franchisee or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any material part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law shall have been instituted by or against Franchisee; or if a court of competent jurisdiction renders, in accordance with applicable law, a judgment against Franchisee, Franchisee is aware of the judgment, it remains unsatisfied or of record for sixty (60) days or longer (unless a *supersedeas* bond is filed), and Franchisee has not filed an appeal with respect to the judgment; or if Franchisee is dissolved; or if execution is levied in compliance with applicable law against Franchisee's business or a material portion of its property; or if the real or personal property comprising the Little Caesar Operations shall be sold after levy thereupon by any sheriff, marshal, or constable in compliance with applicable law.

53. Section 13.2.1 is deleted and replaced with the following:

[Deleted]

54. Sections 13.2.2, 13.2.3, and 13.2.4 are deleted and replaced with the following:

13.2.2  With respect to any Little Caesar Operation, if Franchisee at any time abandons or, through no fault of its own, ceases to operate that Little Caesar Operation for a period of three (3) consecutive days, or otherwise forfeits the right to do or transact business in the jurisdictions where that Little Caesar Operation is located;

13.2.3  If Franchisee or any senior executive of Franchisee with responsibility for the Little Caesar Operations is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Little Caesar reasonably believes is likely to have a materially adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Little Caesar's interest therein;

13.2.4  Any Transfer occurs that does not comply with the terms of Section 12;

55. Section 13.2.6 is deleted and replaced with the following:

13.2.6  If Franchisee or any senior executive of Franchisee with responsibility for the Little Caesar Operations knowingly discloses in violation of Section 8.3 the contents of the Manuals or other confidential information provided to Franchisee by Little Caesar;

56. Section 13.2.7 is deleted and replaced with the following:

[Deleted]

57. Section 13.2.9 is deleted and replaced with the following:

[Deleted]

58. Section 13.2.12 is deleted and replaced with the following:

13.2.12   If Franchisee or any senior executive of Franchisee with responsibility for the Little Caesar Operations knowingly makes any material misrepresentations to Little Caesar in connection with Franchisee's operation of the Little Caesar Operations or Franchisee's performance under this Agreement;

59. Section 13.2.16 is deleted and replaced with the following:

13.2.16   If Franchisee fails to comply with Section 10.1;

60. Section 13.2.17 is deleted and replaced with the following:

[Deleted]

61. Section 13.2.18 is deleted and replaced with the following:

[Deleted]

62. Section 13 is further amended by adding the following new subsections:

**13.6 – Application to Each Individual Little Caesar Operation:**  Little Caesar and Franchisee intend and agree that the provisions of the Franchise Agreement, including but not limited to Sections 13 and 14, shall apply independently to each Little Caesar Operation. Accordingly, in the event of a default by Franchisee, Little Caesar may issue a notice of default and/or notice of termination as to the Franchise Agreement and all Little Caesar Operations or, at Little Caesar's option, only as to a particular Little Caesar Operation without affecting the Franchise Agreement as to the other Little Caesar Operations.

**13.7 - Termination Upon Occurrence of Little Caesar's Bankruptcy or Insolvency:**  Little Caesar shall be deemed to be in default hereunder, and all rights granted herein shall automatically terminate without notice to Little Caesar, if the total of Little Caesar's debts is greater than the fair value of Little Caesar's assets, or if Little Caesar is generally not paying its debts as those debts become due, or if Little Caesar admits in writing its inability to pay its debts or Little Caesar otherwise becomes insolvent or makes a general assignment for the benefit of creditors; or, if a petition in bankruptcy is filed by Little Caesar or such a petition is filed in compliance with applicable law against and not opposed by Little Caesar; or, if Little Caesar is adjudicated as bankrupt or insolvent; or, if a bill in equity or other proceeding for the appointment of a receiver of Little Caesar or other custodian for Little Caesar's business or assets is filed and consented to by Little Caesar; or, if a receiver or other custodian (permanent or temporary) of Little Caesar's assets or property, or any material part thereof, is appointed by any court of competent jurisdiction; or, if proceedings for a composition with creditors under any state or federal law shall have been instituted by or against Little Caesar; or, if a court of competent jurisdiction renders, in accordance with applicable law, a judgment against Little Caesar, Little Caesar is aware if the judgment, it remains unsatisfied or of record for sixty (60) days or longer (unless a *supersedeas* bond is filed), and Little Caesar has not filed an appeal with respect to the judgments; or if Little Caesar is dissolved; or if execution is levied in compliance with applicable law against Little Caesar's business or a material portion of its property; if the real or personal property comprising a material portion of

Little Caesar real or personal property shall be sold after levy thereupon by any sheriff, marshal, or constable in compliance with applicable law.

**13.8 - Termination After Abandonment of Franchise Program**: Franchisee may, at its option, terminate this Agreement, effective ten days after Little Caesar's receipt of written notice of termination, if Little Caesar abandons its franchise restaurant program using the name "Little Caesars".

**13.9 – Termination if Kmart Store Closes or Relocates**.  Franchisee shall have the absolute and unconditional right to terminate a Little Caesar Operation at any time upon thirty-days' prior written notice to Little Caesar if Franchisee or one of its affiliates closes or relocates the Kmart retail store in which the Little Caesar Operation is located.

63.  Section 14.4 is deleted and replaced with the following:

[Deleted]

64.  Section 14.9 is deleted and replaced with the following:

[Deleted]

65.  Section 15.1 is deleted and replaced with the following:

[Deleted]

66.   Section 15.2.2 is deleted and replaced with the following:

15.2.2    Own, operate, or engage in a business (other than a Little Caesar Operation) which is a quick or fast service restaurant engaged in the sale of branded pizza (a **"Competing Business"**). For greater certainty, "branded pizza" means pizza sold under the name of any national, regional or local restaurant, restaurant chain, convenience store chain, grocery store chain, food distributor, or food manufacturer but does not include pizza sold under the Kmart name.  The sale of Approved Non-Little Caesar Items, standing alone, shall not be considered a Competing Business.  For greater certainty, this Section 15.2.2 does not apply to Sears Holdings Corporation and its direct and indirect subsidiaries other than Franchisee (such as Sears, Roebuck and Co., which owns and operates Sears stores), provided that no Franchisee personnel who are involved in the operation of the Little Caesar Operations or who have access to the Manuals or to the confidential information of Little Caesar described in Section 8 are involved in the Competing Business.

67.   Section 15.3 is deleted and replaced with the following:

**15.3 - Non-Competition After Agreement Ends:**  For a period of ninety (90) days after the date of:  (a) a Transfer permitted under Section 12 of this Agreement; (b) expiration of this Agreement; or (c) termination of this Agreement as to one or more Little Caesar Operations (regardless of the cause for termination), Franchisee shall not, without Little Caesar's prior written consent, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, operate, or engage in a Competing Busi-

14

ness within the Designated Market Area (as defined by Nielsen Media Research) of any Little Caesar Operation affected by the Transfer, expiration, or termination, as the case may be.

68. Sections 16.1, 16.2, 16.3 and 16.4 are deleted and each is replaced with the following:

[Deleted]

69. Section 17.2 is deleted and replaced with the following:

**17.2 - Challenging Tax Assessment**:  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or similar indebtedness Franchisee may contest the validity or the amount of the tax or similar indebtedness in accordance with the procedures of the taxing authority or applicable law.

70. Section 21.2 is deleted and replaced with the following:

[Deleted]

71. Sections 23.3 and 23.4 are deleted and replaced with the following:

**23.3 - Nonexclusivity of Remedy**:  No right or remedy conferred upon or reserved to Little Caesar or Franchisee hereby is intended to be, nor shall be deemed, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy.

**23.4 - Right to Injunctive Relief**:  Nothing herein contained shall bar the right of Little Caesar or Franchisee to obtain injunctive relief against threatened conduct that will cause it loss or damages, under the usual equity rules, including the applicable rules for obtaining restraining orders and preliminary injunctions.

72. Section 25.2 is deleted and replaced with the following:

**25.2 – Franchisee Acknowledgment**:  In order to obtain uniformity and quality of operation, performance, dispute resolution and other matters, Little Caesar and its affiliates amend their standard Franchise Agreements from time to time.  As a result, this Agreement may be different than other Little Caesar franchise agreements Franchisee may have signed with Little Caesar or its affiliates in the past and may contain revised provisions regarding modifications to the System, manner of payment of fees and late fees, duties of franchisees, protection of trademarks, status and protection of Manuals and confidential information, advertising, insurance, accounting and records, transfers, default and termination, obligations on termination, franchisee covenants, taxes, indemnification, obligations to defend, approvals and waivers, notices, construction of agreement and applicable law.

73.  Unless expressly provided to the contrary herein, each provision of this Addendum shall be considered severable.  If any provision is determined to be invalid by a court or agency having valid jurisdiction, the invalidity shall not impair the operation of, or have any other effect upon, any other provisions which remain intelligible.  The latter shall continue to be given full force and effect and bind Franchisee and Little Caesar, and the invalid provision shall be deemed not to be a part of this Addendum.

74.  This Addendum and its Attachments are an integral part of the Franchise Agreement.  Except as modified or supplemented by this Addendum, the terms of the Franchise Agreement are hereby ratified and confirmed.

75. The following Attachments are added to the Agreement:

Attachment 1 – Existing Operations and Refurbishment Schedule
Attachment 2 – Release
Attachment 3 – Approved Prototype

[Signatures on next page]

| LITTLE CAESAR ENTERPRISES, INC. | KMART CORPORATION |
|---|---|
| By: | By: |
| Name: David Gray | James Haworth, Executive Vice President - |
| Title: Vice President Franchise Services | Kmart Stores |

17

# EXISTING OPERATIONS AND REFURBISHMENT SCHEDULE

| 28-Mar-09 STORE | State | Location In store | YTD 8 Wk avg | HNR | Capital Expense | | Maintenance and Repair Budget | | | Conversion da |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Hot Box | Signage | Paint Counter | Remove old Mural and Plant | Tables and Chairs Dining | |
| 9338 | MO | Front of Checkouts | $3,507 | HNR | | | | | | |
| 7705 | GU | Entrance | $47,989 | N/A | | | | | | |
| 7478 | HI | Entrance | $22,889 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 7480 | HI | Front of Checkouts | $17,606 | HNR | | | | | | |
| 7680 | HI | Entrance | $14,971 | HNR | | | | | | |
| 9430 | HI | Entrance | $13,070 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 7683 | HI | Entrance | $13,068 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 4705 | CA | Entrance | $13,044 | HNR | | | | | | |
| 7225 | CA | Side, w/Restrooms | $12,812 | HNR | | | | | | |
| 4007 | CA | Front of Checkouts | $12,349 | HNR | | | | | | |
| 4721 | CA | Entrance | $11,577 | HNR | | | | | | |
| 7488 | HI | Entrance | $11,309 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 3968 | CA | Entrance | $11,288 | HNR | | | | | | |
| 7682 | HI | Entrance | $10,895 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 4826 | NC | Entrance | $10,010 | HNR | | | | | | |
| 7711 | FL | Entrance | $9,891 | HNR | | | | | | |
| 3289 | GA | Side | $9,516 | HNR | | | | | | |
| 7420 | NC | Entrance | $9,154 | HNR | | | | | | |
| 4749 | CA | Entrance | $8,669 | HNR | | | | | | |
| 7583 | IA | Side, w/Restrooms | $7,998 | HNR | | | | | | |
| 3793 | FL | Front of Checkouts | $7,711 | HNR | | | | | | |
| 7655 | AZ | Entrance | $7,637 | HNR | | | | | | |
| 3943 | NY | Entrance | $7,305 | HNR | | | | | | |
| 7275 | IL | Side, w/Restrooms | $7,121 | HNR | | | | | | |
| 7622 | NC | Side, w/Restrooms | $7,079 | HNR | | | | | | |
| 4771 | PA | Entrance | $6,990 | HNR | | | | | | |
| 3368 | CA | Side | $6,656 | HNR | | | | | | |
| 7044 | NY | Side | $6,625 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 7654 | NY | Side, w/Restrooms | $6,576 | HNR | | | | | | |
| 4706 | CA | Entrance | $6,442 | HNR | | | | | | |
| 4729 | IL | Front of Checkouts | $6,366 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 3235 | CA | Side | $6,117 | HNR | | | | | | |
| 3272 | OH | Side | $6,103 | HNR | | | | | | |
| 4349 | CA | Side | $5,976 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 7195 | CA | Side | $5,917 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 3287 | IL | Side | $5,551 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 4913 | IN | Side, w/Restrooms | $5,365 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 4753 | KY | Entrance | $5,300 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 3365 | VA | Side, w/Restrooms | $5,266 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2010 |
| 4439 | WA | Side, w/Restrooms | $5,264 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 3594 | IL | Side | $5,245 | HNR | | | | | | |
| 4898 | TN | Entrance | $5,060 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4875 | OH | Entrance | $4,992 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 3922 | CA | Entrance | $4,894 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 3325 | OH | Side | $4,871 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4937 | OH | Side, w/Restrooms | $4,869 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4704 | ND | Entrance | $4,866 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4769 | AL | Entrance | $4,847 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 3276 | CA | Side | $4,751 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4708 | TX | Entrance | $4,667 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4953 | SC | Side, w/Restrooms | $4,662 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 3179 | FL | Side | $4,639 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 3982 | CA | Entrance | $4,636 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May 30th 2010 |
| 4196 | IN | Side, w/Restrooms | $4,625 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 7621 | WA | Side | $4,493 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 7653 | CA | Front of Checkouts | $4,464 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 9770 | PA | Front of Checkouts | $4,437 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 4175 | OH | Side | $4,428 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 4984 | IL | Side, w/Restrooms | $4,388 | HNR | | | | | | |
| 4870 | FL | Entrance | $4,383 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 4857 | CA | Entrance | $4,361 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 3822 | KY | Entrance | $4,281 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 4090 | VA | Side | $4,270 | HNR | | | | | | |
| 7060 | NC | Side | $4,252 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 3371 | IL | Entrance | $4,251 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 9241 | UT | Side | $4,230 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Apr 30th 2010 |
| 4819 | CA | Entrance | $4,225 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 9704 | WI | Side, w/Restrooms | $4,224 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 3598 | VA | Side | $4,216 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 3877 | WV | Entrance | $4,214 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 3914 | IL | Entrance | $4,094 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3265 | OH | Side | $4,085 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 4880 | AZ | Entrance | $4,037 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 4048 | IL | Side | $4,007 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 7608 | NY | Entrance | $3,921 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 7395 | IL | Side, w/Restrooms | $3,907 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 4296 | FL | Side | $3,906 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 4866 | NC | Entrance | $3,888 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 4758 | NC | Side, w/Restrooms | $3,823 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Mar 30th 2010 |
| 4835 | AL | Entrance | $3,773 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 7366 | FL | Entrance | $3,767 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 7708 | PA | Entrance | $3,729 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 3963 | PA | Entrance | $3,663 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 4030 | IL | Side, w/Restrooms | $3,558 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 9438 | PA | Front of Checkouts | $3,422 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 3198 | WV | Side | $3,409 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 4353 | ND | Side, w/Restrooms | $3,403 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 3074 | FL | Side, w/Restrooms | $3,398 | HNR | | | | | | |
| 3170 | OH | Entrance | $3,378 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 7134 | NY | Side | $3,351 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 7372 | PA | Side | $3,242 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 3616 | PA | Side | $3,153 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Feb 28th 2010 |
| 3189 | ID | Side | $3,111 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 4739 | TN | Entrance | $3,103 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 7317 | IN | Side | $3,100 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 7233 | FL | Side, w/Restrooms | $3,092 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 7636 | CA | Entrance | $3,078 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 3407 | OH | Side | $3,057 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 4320 | CA | Entrance | $3,029 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 3774 | WI | Entrance | $3,028 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 4390 | FL | Side | $2,975 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 4893 | FL | Entrance | $2,961 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 3722 | WA | Side | $2,917 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 7547 | OH | Entrance | $2,876 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 7351 | SC | Entrance | $2,868 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Jan 30th 2010 |
| 4747 | OH | Entrance | $2,861 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 7402 | IN | Side | $2,844 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 9769 | PA | Side | $2,788 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 7677 | NY | Entrance | $2,777 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 4332 | CO | Side, w/Restrooms | $2,744 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 4067 | IN | Side | $2,744 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 4433 | IL | Side | $2,726 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 4707 | TX | Entrance | $2,711 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 3644 | TN | Entrance | $2,696 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 7217 | PA | Side | $2,667 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 4874 | PA | Entrance | $2,667 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 3585 | IA | Entrance | $2,663 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | October 30th 2009 |
| 4130 | NE | Side | $2,656 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4311 | FL | Side | $2,638 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4813 | SD | Entrance | $2,634 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4897 | WV | Entrance | $2,594 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4812 | MA | Entrance | $2,575 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4169 | OH | Side | $2,561 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 3897 | MN | Entrance | $2,561 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 3664 | IN | Entrance | $2,559 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 3182 | WI | Side, w/Restrooms | $2,505 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4808 | TX | Entrance | $2,462 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 3931 | AL | Entrance | $2,441 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 9551 | CA | Side | $2,431 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4781 | IL | Entrance | $2,396 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Sept 30th 2009 |
| 4837 | WY | Entrance | $2,388 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 3818 | FL | Entrance | $2,380 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 3115 | NY | Side | $2,378 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 3828 | CA | Entrance | $2,373 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 4840 | PA | Side | $2,347 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 7208 | NC | Entrance | $2,331 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 3067 | OK | Side | $2,307 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 7057 | ID | Side, w/Restrooms | $2,294 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 7288 | KY | Side | $2,271 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 9564 | ND | Side | $2,256 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 9074 | WY | Side | $2,238 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 4713 | PA | Entrance | $2,234 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 4255 | WI | Side | $2,232 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | Aug 30th 2009 |
| 4815 | OH | Entrance | $2,231 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 4727 | FL | Side | $2,222 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4082 | MI | Side | $2,202 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 4147 | WA | Entrance | $2,177 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 4018 | IA | Side | $2,154 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 9463 | NJ | Front of Checkouts | $2,124 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 3624 | FL | Entrance | $2,109 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 7723 | OH | Entrance | $2,106 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 4770 | PA | Entrance | $2,082 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 7303 | CO | Entrance | $2,059 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 7325 | PA | Entrance | $1,966 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 7451 | NY | Entrance | $1,939 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 3141 | PA | Side | $1,935 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 7455 | IN | Entrance | $1,911 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | July 30th 2009 |
| 7656 | WI | Side | $1,885 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4179 | OH | Side | $1,875 | HNR | | | | | | June 30th 2009 |
| 7676 | NY | Entrance | $1,845 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 7624 | UT | Entrance | $1,795 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 3886 | NC | Entrance | $1,761 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 3061 | FL | Side | $1,737 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4867 | CT | Entrance | $1,683 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 7524 | MI | Side | $1,631 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4397 | NJ | Side, w/Restrooms | $1,516 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4460 | ME | Side | $1,476 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4178 | WA | Side, w/Restrooms | $1,462 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4720 | MO | Entrance | $1,442 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4006 | KY | Entrance | $1,402 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | June 30th 2009 |
| 4286 | FL | Side, w/Restrooms | $1,395 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 4331 | MI | Side | $1,363 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 9529 | PA | Side | $1,341 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 3411 | OH | Side | $1,327 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 4340 | CA | Side | $1,172 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 3911 | PA | Entrance | $1,160 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 3885 | PA | Entrance | $1,080 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 9582 | OK | Front of Checkouts | $1,079 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 7432 | NY | Side, w/Restrooms | $804 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 7725 | DE | Entrance | $598 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 3841 | MI | Entrance | $79 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
| 4830 | KY | Side | $40 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |

| 3881 | CA | Entrance | $0 | No HNR | $3,600 | $300 | $250 | $150 | $2,500 | May30th 2009 |
|------|----|----------|-------------|--------|----------|---------|---------|---------|----------|--------------|
|      |    |          | $813,915 |        | $547,200 | $45,600 | $38,000 | $22,800 | $380,000 | $1,033,600 |
|      |    |          |             |        | Total Capital $592,800 | | Total R & M Budget | | $440,800 | |

# RELEASE

As an inducement to **Little Caesar Enterprises, Inc.** ("*Little Caesar*") to execute the Franchise Agreement and the First Addendum to Franchise Agreement, each dated as of October 1, 2010 (together, the "*Franchise Agreement*"), this Release is given by **Kmart Corporation** ("*Franchisee*") to the LCE Parties, defined below, with an effective date of October 1, 2010 ("*Effective Date*"). Capitalized terms used but not otherwise defined in this Release have the same meaning as in the First Addendum to Franchise Agreement to which this Release is attached.

1.    **Release of the LCE Parties.**

    a.    As used herein, the following terms have the following meanings:

        (i)    "**Releasing Parties**" means the undersigned, individually and on behalf of and including their franchised entity, as well as any subsidiaries, affiliates and related entities and all of their respective past, present and future officers, directors, shareholders, employees, agents, representatives, predecessors, successors, and assigns.

        (ii)    "**LCE Parties**" means Little Caesar Enterprises, Inc., LC Trademarks, Inc., their affiliated and related entities (including but not limited to Blue Line Foodservice Distribution), and all of their respective past, present and future officers, directors, shareholders, employees, agents, representatives, predecessors, successors and assigns.

        (iii)    "**Claim**" means any and all complaints, claims, liabilities, damages, losses, injuries, actions, causes of action, suits, debts and expenses (including without limitation attorney fees) of every nature, kind, or description whatsoever, whether known or unknown, suspected, or unsuspected, vested or contingent, direct or indirect, which the Releasing Parties have or may have, arising out of any matter, fact, event, omission, or occurrence whatsoever, including, without limitation, any Claim relating to the Existing Operations, the Previous Agreement, or the Supply Agreement, the Little Caesar stores previously operated by any of the Releasing Parties, and/or any other relationships which any Releasing Party has or had with any LCE Party.

    b.    The Releasing Parties release and forever discharge the LCE Parties from all Claims occurring or omitted prior and up to the Effective Date.

    c.    The undersigned expressly intend that interpretation of the terms of this Release be as broad as permitted by law.

    d.    This Release may be pleaded as a full and complete defense to, and may be used as a basis for an injunction against, any action at law, proceeding in equity, or any other judicial or non-judicial proceeding that a Releasing Party, or any other person or entity claiming an interest in the subject matter of this Release, may initiate, prosecute, maintain, or continue to maintain or prosecute in breach hereof.

    e.    If Section 1542 of the Civil Code of the State of California is deemed to apply to any part of this Release, then the undersigned understands and agrees that this Release extends to all

Claims and the undersigned expressly waives all rights under Section 1542.  Section 1542 reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected the settlement with the debtor."

2.    **Miscellaneous**.  The terms of this Release shall be governed by, and interpreted exclusively under Michigan law, without reference to Michigan conflicts of laws provisions.  Any action between or among the parties concerning this Release shall be brought only in the federal court covering the location at which Little Caesar has its principal place of business at the time the action is commenced or, if the federal court would not have subject matter jurisdiction, the state court within the judicial district in which Little Caesar has its principal place of business at the time the action is commenced. The parties waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.

3.    **Acknowledgement**.  The undersigned, in executing this Release, represent(s) that it, he, she and/or they have carefully read it, know the contents thereof, and execute it voluntarily and with full knowledge of its significance.


**KMART CORPORATION**


By: _____

James Haworth, Executive Vice President-Kmart Stores

Attachment 3
to Kmart Addendum

## APPROVED PROTOTYPE

