K mart #3829 - St. Thomas
U.S. Virgin Islands

**Parties**

THIS LEASE made and entered into as of this       day of         , 1989, between TUTU PARK, LIMITED, a U.S. Virgin Islands Limited Partnership having its principal office at John Foster Real Estate, 42 Norre Gade Street, St. Thomas, U.S. Virgin Islands  00804 (herein referred to as "Landlord"), and K MART CORPORATION, a Michigan corporation having its principal office at 3100 West Big Beaver Road, Troy, Michigan  48084 (herein referred to as "Tenant"),

WITNESSETH:  That in consideration of the rents, covenants and conditions herein set forth, Landlord and Tenant do hereby covenant, promise and agree as follows:

**Demised Premises**

1. Landlord does demise unto Tenant and Tenant does take from Landlord for the lease term the following property:  Tenant's completed building (designated K mart), together with site improvements to be constructed as hereinafter specified by Landlord at its expense together with land comprising not less than seven (7) acres described in Parcel "A" of Exhibit "A", attached hereto and made a part hereof, and situated on the Island of St. Thomas, U.S. Virgin Islands; said building to be in the locations depicted on Exhibit "B" attached hereto and made a part hereof, and of the following dimensions:

K mart Building:  361'6" in width by 239'4" in depth
Total Size:  86,479 sq. ft.

Said land, completed building and site improvements, together with all licenses, rights, privileges and easements, appurtenant thereto shall be herein collectively referred to as the "demised premises".

Landlord hereby gives and grants unto Tenant, in common with others entitled thereto, including Tenant's agents, employees, customers, licensees and invitees the following licenses, rights, privileges and easements:  the use of parking areas, common areas (including rest rooms and other facilities, if any), roadways, sidewalks and accessways to public streets and highways indicated on said Exhibit "B", together with the use of any delivery or servicing areas adjoining Tenant's said buildings or designated as such on Exhibit "B", which areas shall be adequate for the passage, unloading and, if necessary, turning around of trailer trucks and other commercial vehicles.

**Term**

2. The term of this lease shall commence upon the "date of occupancy by Tenant", as that term is defined in Article 11 hereof, and shall terminate upon such date as shall be twenty five (25) years from the last day of the month in which said date of occupancy by Tenant shall occur; provided, however, the term of this lease may be extended as provided in Article 13 hereof. The phrase "lease term", as used in this lease, shall be the term of this lease and any extension thereof pursuant to said Article 13.

**Annual Minimum Rental**

3. Tenant shall, during the lease term, pay to Landlord, at such place as Landlord shall designate in writing from time to time, an annual minimum rental of FIVE HUNDRED EIGHTY-THREE THOUSAND SEVEN HUNDRED THIRTY-THREE DOLLARS ($583,733.00), unless abated or diminished as hereinafter provided, in equal monthly installments on the first day of each month, in advance, commencing upon the first day of the lease term; provided, however, in the event the first day of the lease term shall not be the first day of a calendar month, then the rental for such month shall be prorated upon a daily basis.

**Additional Rental**

4. In addition to the aforesaid annual minimum rental, with respect to any lease year during the lease term in which Tenant's "gross sales", as hereinafter defined, shall exceed the sum of EIGHTEEN MILLION DOLLARS

-1-

($18,000,000.00), Tenant shall pay to Landlord as additional rental an amount equal to one per cent (1%) of gross sales exceeding EIGHTEEN MILLION DOLLARS ($18,000,000.00).

Said additional rental shall be paid on or before the thirtieth (30th) day following the end of each "lease year". For the purposes of this lease, a "lease year" shall be each successive period of twelve consecutive calendar months from the last day of the month in which said lease term shall commence. Sales for any period preceding the first lease year shall be included in gross sales reported for the first lease year. Tenant shall on or before the thirtieth (30th) day following the end of each lease year or lesser period, deliver to Landlord a statement signed by an officer of Tenant certifying the true amount of the gross sales for such lease year or lesser period. The term "lesser period", as used herein, shall be any period beginning on the first (1st) day of any lease year and ending, by reason of the termination of this lease, prior to the end of such lease year. In the event that a period of more or less than twelve (12) months shall be so required to be included in any such statement, then the dollar amounts referred to in the preceding paragraph shall be proportionately increased or decreased, as the case may be.

Should Tenant at its option operate its fountain and lunch counter prior to opening for other business, such operation shall not be an acceptance of the demised premises, or an acknowledgment that the representations and warranties of Article 12 shall have been fulfilled, or an opening for business under Article 11 or any other provision of this lease, but sales from such operation shall be included in Tenant's reported gross sales for the first lease year.

Landlord or its agent may inspect Tenant's record of gross sales annually, provided such inspection shall be made at Tenant's principal office within six (6) months after the statement of sales shall be delivered to Landlord and shall be limited to the period covered by such statement. Except to the extent that disclosure shall be required for any bona fide sale or mortgage of the demised premises or for legal proceedings in any court, at law or in equity, Landlord shall hold in confidence sales figures or other information obtained from Tenant's records.

The term "gross sales", as used herein, shall be the total sales of merchandise or services made by Tenant or any occupant of the demised premises, whether wholesale or retail, cash or credit (including merchandise ordered on the demised premises and delivered from another place) and shall include sales made from trucks, trailers, vans or other temporary facilities used by Tenant on any part of the demised premises, except that the following shall be excluded:

(a) Sales of merchandise subsequently returned for refund or credit, merchandise transferred to a warehouse or another store of Tenant, discounts on merchandise which shall be allowed to employees of Tenant, or merchandise which shall be issued in redemption of trading stamps, if any, which shall have been issued free of charge to Tenant's customers at the time of sale of other merchandise or services;

(b) Any and all taxes levied upon, assessed against, or measured by the receipt or purchase of merchandise by any occupant of said demised premises, and any and all occupational sales taxes and other taxes levied upon, assessed against, based upon, or measured by (i) such occupant's gross receipts, or any part thereof, or (ii) the sale or sales price of merchandise and services, or either, and which shall be payable by such occupant, whether or not collected by such occupant from its customers as reimbursement or as agent of the taxing authority, and whether or not the same shall be commonly

known as a sales tax, use tax, retailers' occupational tax, gross receipts tax or excise tax; provided, however, said taxes to be excluded from gross sales shall not include any net income tax, franchise, or any other tax not levied upon or computed upon gross sales or gross receipts, or any portion thereof; provided further, said taxes to be excluded from gross sales shall be excludable regardless of whether imposed under any existing or future orders, regulations, laws, statutes or ordinances;

(c) Receipts from cigarettes, lockers, stamp machines, public telephones, pay toilets, "kiddie rides", money orders and all licenses sold to the public;

(d) Service and interest charges for time payment accounts and charge accounts; and

(e) All sales of automotive gasoline or diesel fuel.

Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within one hundred twenty (120) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said one hundred twenty (120) day period and the Tenant and Landlord shall be released from any further liability under this lease.

Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 3, and the word "minimum" in said Article 3 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraph of this article shall be of no further force and effect.

Notwithstanding the provisions of the two preceding paragraphs, Tenant shall be entitled, at any time prior to the discontinuance of the operation of its store and the delivery of the notice to Landlord of its election to discontinue its operation (as hereinabove provided) to assign this lease or sublet the whole or any part of the demised premises pursuant to Article 22 hereof; subject, however, to the terms and conditions of this lease including the provisions of Article 4 hereof. Any such assignment or subletting shall not be construed to be a discontinuance of Tenant's operation of its store.

In the event Landlord shall fail to exercise its option to cancel and terminate this lease after receiving notice from Tenant of its intention to discontinue the operation of its store (as hereinabove provided) and Tenant thereafter assigns this lease or sublets the whole or any part of the demised premises pursuant to Article 22, the rent which Tenant or Tenant's assignee shall be obligated to pay to Landlord during the remainder of this Lease shall be the rent more particularly set forth in Article 3 and the word "minimum" in said Article 3 shall be deemed deleted and all the provisions contained in the preceding paragraphs of this Article 4 shall be of no further force and effect. In the event Tenant should reopen as a K mart store or K mart owned store than the percentage rent shall be reinstated in accordance with this Article.

-3-

Real Estate Taxes

5. Tenant shall pay and discharge all ad valorem real estate taxes and all assessments, general or specific, levied against the taxable premises during the term of the Lease, excluding therefrom payment of general or special assessments which are incurred or levied as a result of Landlord's activity in developing the demised premises for Tenant's occupancy.

The term "taxable premises", as used in this lease, shall be that certain land described in Parcel A of Exhibit "A" together with such buildings and other improvements required by Tenant to be constructed thereon by Landlord under the terms of this lease.

Landlord and Tenant shall use their reasonable efforts to obtain a separate tax assessment with respect to the taxable premises. In the event that a separate tax assessment with respect to the taxable premises cannot be obtained, then for purposes of this lease, the parties shall refer to the office records of the assessing authority including but not limited to worksheets and field reports, in order to obtain the relevant land and building valuations required to calculate Tenant's separate liability for the real estate taxes hereunder.

In the event that neither a separate tax assessment for the taxable premises can be obtained nor an accurate tax liability established from the assessing office records can be determined, the taxes allocable to the taxable premises (and K mart's share of taxes attributable to the Common Areas) shall be equal to: (1) Tenant's pro rata share of taxes attributable to the Tenant's Building, plus (2) Tenant's pro rata share of the taxes assessed against the total land described in Exhibit "A". Tenant's pro rata share of taxes attributable to the Tenant's building shall be computed by multiplying the total tax liability against the buildings located within the land described in Exhibit "A" by a fraction the numerator of which shall be the number of square feet of ground floor area of Tenant's building at the end of such real estate fiscal tax year (excluding the garden shop) multiplied by 70% and the denominator of which shall be the total number of square feet of ground floor area of all of the buildings located within the land described in Exhibit "A" (excluding Tenant's building) at the end of such real estate fiscal tax year plus the total number of square feet of ground floor area of Tenant's building at the end of such real estate fiscal year (excluding the garden shop) multiplied by 70%. Tenant's pro rata share of the taxes assessed against the total land described in Exhibit "A" shall be computed by multiplying the total tax liability against the land described in Exhibit "A" by a fraction, the numerator of which shall be the number of square feet of land within the demised premises and the denominator of which shall be the number of square feet of land within the land described in Exhibit "A". In no event shall Tenant be responsible for the payment of taxes and assessments incurred or levied on other buildings existing on the land other than the taxable premises.

The date of levy of all ad valorem real estate taxes shall be deemed to be the date specified by each applicable taxing jurisdiction for which such taxes become a lien on the taxable premises. The Tenant's liability and obligation hereunder to pay such ad valorem real estate taxes shall be fully accrued, fixed and final on the date of levy thereof.

To the extent permitted by law, Tenant may pay any such assessment in annual installments. In the event any such assessment shall be payable in a lump sum or on an installment basis, Tenant shall have the sole right to elect the basis of payment. If Tenant shall elect to pay such assessment on the installment basis, then Tenant shall pay only those installments which shall become due and payable during the lease term. Any such installments due and payable in the years in which this lease commences and terminates shall be prorated proportionately.

-4-

Tenant shall not be chargeable with, nor be obligated to pay any income, profit, inheritance, estate, succession, gift, franchise, or transfer taxes which are or may be imposed upon Landlord, its successors or assigns, by whatsoever authority imposed or howsoever designated.

Written evidence of the payment of taxes and assessments hereunder shall be furnished by Tenant to Landlord upon Landlord's written request therefor.

The amount, if any, by which the ad valorem real estate taxes and assessments payable hereunder exceed THIRTY THOUSAND DOLLARS ($30,000.00) during any lease year, shall be hereinafter referred to as an "excess tax payment". All excess tax payments shall be deductible by Tenant from additional rentals, as defined in Article 4, due and payable for such lease year.

In the event Tenant constructs, as provided in Article 16 hereof, additional buildings or structures on any portion of the land described in Parcel A of Exhibit "A", said additional buildings or structures shall be excluded from the taxable premises. Said additional buildings or other structures shall be separately assessed and all ad valorem taxes and assessments levied thereon shall be paid and discharged by Tenant and shall not be deductible from additional rentals as provided herein.

The Tenant shall have the right to participate in all negotiations of tax assessments. Tenant shall have the right to contest the validity or the amount of any tax or assessment levied against the taxable premises or the Shopping Center by such appellate or other proceedings as may be appropriate in the jurisdiction, and may defer payment of such obligations, pay same under protest, or take such other steps as Tenant may deem appropriate; provided however, Tenant shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises. Landlord shall, at Tenant's expense, cooperate in the institution and prosecution of any such proceedings initiated by the Tenant and will execute any documents required therefor.

Should the Landlord institute proceedings to contest the validity or the amount of any tax or assessment levied against the Shopping Center, the Tenant will cooperate in such proceedings; provided, however, that Landlord shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises which might result in the termination of this Lease.

Should any of the proceedings referred to in the preceding two paragraphs of this Article 5 result in reducing the total annual real estate tax and assessment liability against the taxable premises, the Tenant shall be entitled to receive all refunds paid by the taxing authorities. After payment of all of Landlord's and Tenant's expenses incurred in any such proceeding in which a refund is paid, the Tenant shall pay to the Landlord either the balance of such refund or, alternatively, Tenant shall pay to the Landlord that part of the excess tax payment which may have been deducted from additional rent in the tax year for which the refund was granted, whichever amount shall be the lesser. Any balance of said refund remaining after such payment to Landlord shall belong to the Tenant. If no refund shall be secured in any given proceeding, the party instituting the proceeding shall bear the entire cost.

**New Building by Landlord**    6.    Tenant's said building and site improvements shall be completed and delivered to Tenant promptly and with due diligence. If the performance by Landlord of any of its obligations hereunder is delayed by reason of the act or neglect of Tenant, act of God, inability to procure building materials, strike, labor dispute, boycott, governmental restrictions, riot, insurrection, war, catastrophe, or act of the public enemy, the period for the commencement

-5-

or completion thereof shall be extended for a period equal to such delay. Landlord warrants that a general contract for construction of said buildings and improvements referred to in Articles 1 and 12 hereof shall be let, rough site grading shall be completed and foundations and footings commenced not later than May 1, 1990.  If for any reason whatever Landlord shall fail to comply fully with this warranty, Landlord shall so notify Tenant in writing and in such event Tenant shall have, in addition to other remedies which may be available to it by law or otherwise, the option to terminate this lease within sixty (60) days thereafter by notice to Landlord unless during such period Landlord completes such work; provided, further, in the event that, regardless of the reason therefor, said buildings and site improvements shall not have been completed in accordance with working drawings and specifications prepared by Landlord as approved in writing by Tenant's Construction Department, and possession thereof tendered to Tenant prior to June 1, 1991, then Tenant shall, in addition to other remedies which may be available to it by law or otherwise at any time thereafter, but prior to completion of such work the further option of terminating this lease within thirty (30) days by notice to Landlord.  Notwithstanding anything to the contrary herein contained, in the event that the lease term shall not have commenced prior to such date as shall be seven (7) years from the date of this lease, then this lease shall be automatically terminated without further act of either party hereto.

**Drawings and Specifications**

7.    Tenant's said building and site improvements shall be constructed by Landlord, at its sole cost and expense, in accordance with the working drawings and specifications prepared by Landlord which shall, with respect to standards of construction and division of responsibility for supplying materials and equipment, substantially satisfy the provisions of Tenant's typical store drawings and specifications, prior receipt of which Landlord hereby acknowledges and which are identified as Set No. K-0131 containing such additions, changes, and modifications as are more particularly set forth in that certain letter dated January 25, 1989, written by Stephen K. Li, A.I.A., Manager, Design Division, Construction Department, K mart Corporation to Mr. John Foster, President John Foster Real Estate, 42 Norre Gade Street, St. Thomas, U.S. Virgin Islands 00804, a copy of which letter is attached hereto and marked Exhibit "C".

Said typical plans and specifications are subject to the following exceptions and such other deviations as may be approved in writing by Tenant's Construction Department:

(a)  Such modifications of arrangement of space, location of entrances, exits, and columns and other structural members as shall be indicated on store layout drawings which shall be prepared by Tenant and be delivered to Landlord within thirty (30) days after receipt of Landlord's written request therefor, which request shall be accompanied by preliminary building outlines, together with any available elevations and sections;

(b)  Changes of type and standards of construction and of arrangement to the extent as shall be required by applicable laws, codes or ordinances.

Said working drawings and specifications shall be submitted to Tenant in time to permit a review and approval by Tenant prior to commencement of construction.  Such approval shall not be unreasonably withheld.  Within sixty (60) days after receipt of such working drawings and specifications, Tenant shall in writing, inform Landlord of required revisions or corrections thereto which are necessary to conform said working drawings and specifications to the Tenant's typical store drawings and specifications hereinbefore referred to, and Landlord shall make such revisions or corrections and resubmit them for Tenant's final approval.  In the event Tenant shall not inform Landlord of

-6-

such desired revisions or corrections within said sixty (60) days, said working drawings and specifications shall be deemed approved and accepted for the purposes hereof.

Said typical drawings and specifications, and working drawings and specifications as approved by Tenant shall constitute a part of this lease.

Subsequent to approval of the typical drawings and specifications, in the event that criteria changes to the lease shall be requested by Tenant, which result in a savings to the Landlord in construction costs, then, Landlord shall pay Tenant an amount equal to the savings. In the event such criteria changes result in extra construction costs to the Landlord, then Tenant shall pay Landlord the extra construction costs resulting from such changes.

Guarantee of Materials

8. Landlord shall unconditionally guarantee all work performed by or for the Landlord in the construction of Tenant's building and site improvements against defective workmanship and materials for a period of one (1) year from commencement of lease term or date of final acceptance by Tenant, whichever is later, unless a different period of time is expressly stated under section of the criteria documents and/or job specifications. Landlord shall assign to Tenant any and all guarantees of workmanship and materials which it may receive.

Advance Possession for Fixturing and Merchandising

9. For a period of sixty seven (67) days after completion of Tenant's building by Landlord, as set forth in Article 11 (b), Tenant shall have the privilege, rent free of entering said buildings for the purposes of installing stockroom equipment and salesfloor trade fixtures, storing merchandise, training personnel and other pre-opening activities. The Landlord's completion of the building shall be construed to mean the building is substantially complete except connections to tenants equipment, i.e. permanently enclosed, completely decorated inside and out, floor covering installed, electrical system complete, mechanical systems functioning on controls, toilet facilities complete for both sexes, fire protection system including alarms complete.

Landlord shall advise Tenant's Regional Construction Manager in writing ninety (90) days prior to his projected completion date to allow tenant to place orders for fixtures, arrange for personnel and order merchandise.

Parking and Other Common Areas

10. Prior to commencement of the lease term, Landlord shall construct, in accordance with said working drawings and specifications approved by Tenant, on the premises described in Exhibit "A", all of the sidewalks, service drives, parking areas, driveways, streets, curbs, directional signs (not Tenant's pylon) and related improvements, substantially as shown on said working drawings and specifications (all of which improvements shall hereinafter, along with the land thereon constructed, be referred to as the "common areas").

Landlord shall also construct or cause to be constructed upon certain property or rights-of-way contiguous to the premises described in Exhibit "A", all sidewalks, driveways, streets, curbs, acceleration, deceleration and stacking lanes, traffic controls, and signals, directional signs and related improvements in accordance with said working drawings and specifications and the requirements of any governmental bodies.

Landlord covenants and represents that at the commencement of the lease term, there shall be adequate sidewalks, driveways, roadways and entrances for automotive and pedestrian ingress and egress to and from the demised premises and adjacent public streets and highways, as shown on said working drawings and specifications.

Landlord also covenants that the area within Parcel A of Exhibit A (the demised premises) provided for the parking of automobiles shall during the lease term be sufficient to accommodate not less than three hundred thirty (330) automobiles on basis of arrangement depicted on Tenant's working drawings and specifications.

Landlord further covenants that the aggregate area depicted on Exhibit "B" provided for the parking of automobiles shall during the lease term be sufficient to accommodate not less than twelve hundred thirty (1,230) automobiles on basis of arrangement depicted on Landlord's working drawings and specifications.

At least sixty-seven (67) days prior to the commencement of the lease term, Landlord shall provide in accordance with Tenant's working drawings and specifications as approved by Tenant and as shown on Exhibit B all of the sidewalks, service drives, parking areas and entrances, from adjoining public streets to permit receiving and delivering of fixtures, merchandise and other property and to permit parking for persons involved in the pre-opening activities of the Tenant.

Liability Insurance. During the lease term, Landlord at its sole expense shall keep Tenant insured against all statutory and common law liabilities for damage to property or injuries, including loss of life, sustained by any person or persons within or arising out of said common areas, whether caused by Tenant's negligence or otherwise, in a policy or policies with minimum coverage of One Million and No/100 Dollars ($1,000,000) with respect to injury to any one person and Two Million and No/100 Dollars ($2,000,000) with respect to any one accident or disaster, and Five Hundred Thousand and No/100 Dollars ($500,000) with respect to damage to property. All such policies shall bear endorsements to the effect that Tenant is named an additional insured and that Tenant shall be notified not less than five (5) days in advance of any modification or cancellation thereof. Copies of such policies, so endorsed, or certificates evidencing the existence thereof, shall be promptly delivered to Tenant upon written request therefor.

Indemnification. Landlord further agrees at its sole expense to defend, indemnify and hold Tenant (and all of its officers, agents and employees) harmless against any and all liabilities for damages for claims arising out of said common areas or Tenant's use thereof, by reason of any act, action, neglect or omission on the part of Landlord and/or Tenant.

In the event that unauthorized persons, including tenants or invitees of tenants occupying buildings now or at any future time located beyond the limits of the land described in Exhibit "A" utilize the demised premises for parking or other purposes to an extent which shall be objectionable to Tenant, Landlord shall at its sole expense, upon written request by Tenant, take whatever action as shall be so requested to prevent said unauthorized utilization, including the erection of fences or other barricades.

Should Tenant, at any time, want to utilize portions of the common areas for outdoor shows, entertainment or such other uses which in Tenant's judgment tend to attract the public, Tenant shall request Landlord consent of such intended use not to be unreasonably withheld, a reasonable time in advance thereof, and on request supply Landlord with reasonable proofs of adequate insurance or indemnification against damage to property, injuries to persons and loss of life sustained in connection therewith. In addition, Tenant shall be responsible for any physical damage to said common areas resulting from said use. Rent, if any, from such use shall be included as part of "gross sales" under Article 4 hereof.

**Store Opening**     11. The term "date of occupancy by Tenant", as used in this lease, shall be the first to occur of the following two dates: (a) the date upon which Tenant shall open for business, or (b) the date which shall be sixty-seven

-8-

(67) days (plus a period of time equal to any delays due to conditions beyond Tenant's control) after the date upon which (i) Tenant's building and site improvements shall be completed in accordance with said working drawings and specifications and the possession thereof shall be tendered to Tenant, and (ii) all of the representations and warranties set forth in Article 12 shall be fulfilled; except, however, notwithstanding anything to the contrary in this lease contained, in the event said date of occupancy shall occur during the period between November 1 and the last day of February, the lease term shall not commence until March 1 unless Tenant shall elect to open for business prior to such date. Tenant shall have the option to open for business prior to the completion of the matters set forth in subdivisions (i) and (ii) of this Article 11, and in the event of the exercise of such option, Landlord shall complete said buildings and site improvements as expeditiously as possible; provided, however, if Landlord shall have failed to complete said buildings and improvements according to the said working drawings and specifications within ninety (90) days after Tenant opens for business, Tenant shall thereafter at any time be privileged, but not obligated, to complete, correct, or remedy in all or part any such deficiency, and the cost thereof shall be deducted from the rentals due under this lease, without waiver of Tenant's other remedies hereunder.

**Landlord's Representations and Warranties**

12. Landlord represents, warrants and covenants that it shall, prior to commencement of the lease term, complete the buildings and site improvements substantially in accordance with the site plan depicted on said Exhibit "B", including completion of said common areas in accordance with the provisions of Article 10 hereof. Landlord further covenants that it will not erect any buildings or other structures on the land described in Exhibit "A" except as shown on said Exhibit "B".

Landlord also represents, warrants, and covenants that a supermarket tenant of, at least, 45,000 square feet shall be located within the shopping center premises as depicted on Exhibit B and shall open for business prior to or contemporaneously with Tenant K mart.

Landlord further represents, warrants and covenants that the land described in Exhibit "A" will, at the time of the commencement of construction by Landlord and at the time of the commencement of the lease term, be properly zoned for Tenant's intended use, and that all necessary governmental consents, permits and approvals for such use shall have been obtained. Further, Landlord shall deliver to Tenant a Certificate of Occupancy prior to commencement of the lease term.

The lease term shall not commence and said annual minimum rental and other charges payable under this lease shall not commence to accrue until the foregoing representations and warranties shall have been fulfilled; provided, however, in the event that Tenant shall elect to open for business before the Landlord shall have fulfilled the foregoing representations and warranties, the term of this lease shall commence, but Tenant shall not be obligated to pay the annual minimum rental or the additional rental; provided, further, in lieu thereof, Tenant shall pay monthly in arrears one percent (1%) of said gross sales and Tenant shall continue said payment until Landlord's said representations and warranties shall be fulfilled, at which time Tenant shall commence payment of the rental set forth in Articles 3 and 4 hereof.

In the event Landlord's representations and warranties shall not be fulfilled within ninety (90) days after commencement of the lease term, Tenant thereafter shall have the option of (i) completing said representations and warranties at Landlord's cost and expense including, without limitation, overhead plus interest at the lower rate of eighteen percent (18%) per annum or the highest rate not prohibited by law, (ii) continue to pay monthly in arrears one percent (1%) of said gross sales until Landlord's said representations and warranties shall be fulfilled or (iii) terminating the Lease by notice to Landlord, which notice shall state an effective date of termination of not less than sixty (60) days from the date of such notice.

-9-

Options to Extend Lease

13. (a) Tenant shall have four (4) successive options to extend the term of this lease for an additional period of five (5) years plus the remaining term of the master ground Lease on each such option, such extended term to begin respectively upon the expiration of the term of this lease or of this lease as extended and the same terms and conditions as herein set forth shall apply to each such extended term. If Tenant shall elect to exercise the aforesaid options, it shall do so by giving notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or of this lease as extended.

(b) Regardless of the exercise or nonexercise by Tenant of any or all of the foregoing options, Tenant shall have, unless the last day of the lease term shall be January 31 of any year, the option to extend (or further extend, as the case may be) the term of this lease for such period of time as shall cause the last day of the term of this lease to be the January 31 next succeeding the date upon which the term of this lease would expire but for the exercise of this option. This option shall be exercised by notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or any extension thereof. Tenant's rental during this option period shall be the same rental payable under the terms of this lease at the time Tenant notifies Landlord of its intention to exercise this option.

First Refusal to Purchase Option

14. This Article intentionally deleted.

Repairs and Maintenance

15. Tenant shall make and pay for all maintenance, replacement and repair necessary to keep the demised premises in a good state of repair and tenantable condition, except for the following maintenance, replacement or repair which shall remain the Landlord's sole responsibility:

(a) all maintenance, replacement and repair to the roof, outer walls and structural portion of the buildings which shall be necessary to maintain the buildings in a safe, dry and tenantable condition and in good order and repair; and

(b) all repairs, maintenance or replacement of or to the utility services to the building and any underground storm sewers, sanitary sewers, water lines or electrical lines under the parking areas, service drives, streets, sidewalks, driveways, entrances; and

(c) all repairs and replacement including resurfacing (exclusive of sweeping and striping) necessary to maintain all driveways, sidewalks, street and parking areas free of all settling, clear of standing water, and in a safe, sightly and serviceable condition, free of chuck holes, fissures and cracks.

Notwithstanding the foregoing provisions of Article 15 herein set forth, Landlord shall contract for sweeping and striping for the parking areas, driveways, sidewalks and streets of the premises and maintain same in a clean, safe, sightly and serviceable condition. The Landlord shall further maintain all landscaped areas.

CAM

Tenant shall pay the Landlord its pro-rata share of said costs. Tenant's said share shall be based upon the ratio that the ground floor area of Tenant's building bears to the total gross ground floor area contained in all buildings actually erected on any portion of the land described in Exhibit "A", and depicted on Exhibit "B", excluding Parcel D of Exhibit B which shall be separately maintained by Landlord in a similar condition.

For purposes of this Article, the costs of maintaining the common areas and common facilities shall mean the following: (1) all amounts paid for cleaning and sweeping (which shall be performed as often as necessary but not

-10-