less than once weekly) and restriping (which shall be done not less than once every two years) of the parking areas, sidewalks and driveways, including snow and ice removal, which shall be performed as often as necessary; (2) maintenance and repair of planted or landscaped areas; (3) maintenance, repair and replacement of bulbs and light standards with respect to the parking lot lighting; (4) operation, maintenance of loop sprinkler system; (5) operation and replacement of emergency generator (6) exterior security (7) and wages and salaries of persons directly and actually performing services described herein. The cost of maintaining the common areas and common facilities shall not include real estate taxes, capital expenses, depreciation, permit fees, rubbish removal for other tenants, or other administrative expenses, including overhead.

Landlord shall maintain accurate records with respect to the aforesaid costs and shall submit to Tenant a bill not more often than every 30 days during the term of the lease for the amount required to be paid by Tenant hereunder. Such bill will set forth the items and amounts charged to Tenant in reasonable detail and will reflect the calculations of Tenant's obligation. With such bill, Landlord shall also submit to Tenant copies of paid receipts to support each said item and amount. Tenant shall pay such amounts within thirty (30) days after receipt of Landlord's billing therefor.

Tenant may, upon seven (7) days notice, have Landlord's records of common area expenditures for the previous twelve (12) month period audited by Tenant's accountant; should such audit disclose any overpayment by Tenant, Landlord shall remit said overpayment upon demand.

Notwithstanding anything contained herein to the contrary, Tenant reserves the right, for any reason whatsoever, at any time upon thirty (30) days prior written notice to Landlord to assume the duties of Landlord to maintain the common areas located within Parcel A of Exhibit "A". If Tenant shall elect to maintain the common areas located within Parcel A of Exhibit "A", then, and in such event, Tenant shall not during such period be required to make any contributions to the common area costs as hereinabove defined, however, Landlord shall maintain the remaining portions of the common area described in Exhibit "A".

With respect to parking lot illumination, Landlord shall, at Landlord's sole cost and expense, have that portion of the common facilities lighting standards located within the land described in Parcel A of Exhibit "A" metered directly into Tenant's meter and Tenant shall be responsible for the cost of supplying electricity thereto. The balance of the common facilities lighting standards shall be metered into the meters of Landlord's other tenants as depicted on Exhibit "B" or into Landlord's own meter and Landlord's other tenants or Landlord shall be responsible for the cost of supplying electricity thereto.

In the event buildings or improvements constituting the demised premises or a portion thereof shall be rendered unusable due to Landlord's default or negligence with respect to required repairs, there shall be a just and equitable abatement of said annual minimum rental and all other charges payable under this lease until said premises shall be made usable. Emergency repairs which shall be Landlord's responsibility hereunder, and which shall be necessary to protect the buildings or contents and/or to keep the common areas in a neat, clean, safe and orderly condition may be made by Tenant without notice to Landlord, and the cost of such repairs not to exceed Five Thousand Dollars ($5,000.00) in any one instance, may be deducted by Tenant from rentals subsequently accruing hereunder if Landlord does not reimburse Tenant upon the substantiation of said expenses within 15 days after receipt by Landlord.

-11-

Alterations and Additional Construction

16. Tenant may, at its own expense, from time to time expand its building or make such alterations, additions or changes, structural or otherwise, in and to its buildings as it may deem necessary or suitable; provided, however, Tenant shall obtain Landlord's prior written consent to drawings and specifications for structural alterations, additions or changes; provided, further, Landlord shall not withhold its consent thereto if the design is architectural compatible and the structural integrity of the buildings will not be impaired by such work. The term "structural changes", as used herein, shall not include moving of non-loadbearing partitions, minor plumbing and electrical work, modification and rearrangement of fixtures or other minor changes. Landlord, at Tenant's cost, shall cooperate with Tenant in securing building and other permits or authorizations required from time to time for any work permitted hereunder or installations by Tenant.

Utilities

17. Landlord covenants and agrees that the demised premises shall be properly serviced with propane, electric, telephone, water, sewer and other utilities sufficient to meet Tenant's requirements as of the commencement of the lease term. Tenant shall pay all charges for utility raw materials (gas, water, sewage, telephone, electricity, etc.) furnished to the demised premises during the lease term. Notwithstanding this paragraph Landlord and Tenant agree that Tenant shall assume payment of utilities upon the completion of Landlord's responsibilities with reference to the building.

Landlord may provide a disposal or septic tank system in lieu of public sanitary sewer, subject to Tenant's written approval of plans and specifications and Landlord's continuing obligation to clean and maintain said system at all times in good and serviceable condition at its sole expense.

Governmental Regulations

18. Tenant shall observe and comply with all requirements of rules, orders and regulations of the federal, state and municipal governments or other duly constituted public authority affecting said demised premises including the making of non-structural alterations, insofar as they are due to Tenant's occupancy; provided, however, in the event such rules, orders and regulations shall either (a) require structural changes, including but not limited to, the erection of a fire escape or exit, or (b) require non-structural changes which would have been required irrespective of the nature of the tenancy, then in either such event, the same shall be complied with by Landlord at its sole expense.

Exculpation

19. Anything to the contrary in this lease notwithstanding the covenants contained in this lease to be performed by Landlord shall not be binding personally, but instead said covenants are made for the purpose of binding only the fee simple or leasehold estate which Landlord owns in the demised premises; provided, however, the obligations imposed by Article 8 of this lease shall be personally binding upon Landlord.

Damage to Demised Premises

20. From and after the "date of occupancy by Tenant," as that term is defined in Article 11 hereof, should Tenant's net worth at any time be less One Hundred Million Dollars ($100,000,000.00), upon written request of the Landlord or mortgagee, Tenant shall procure fire insurance with extended coverage endorsement upon the building erected by Landlord pursuant to Article 6 hereof in an amount equal to one hundred per cent (100%) of the replacement value of the building above the foundation walls. At any time while Tenant's net worth shall exceed One Hundred Million Dollars ($100,000,000.00), the Tenant may elect to self-insure its obligation to restore.

Policies of fire insurance procured pursuant to this Article shall assure and be payable to Landlord, Tenant and mortgagee and shall provide for release of insurance proceeds to Tenant for restoration of loss.

Landlord and mortgagee, if any, shall be furnished certificates from the insuring company showing the existence of such insurance. In case of loss, Tenant is hereby authorized to adjust the loss and execute proof thereof in the name of all parties in interest.

-12-

In the event that, at any time during the lease term, the permanent improvements then constituting Tenant's building and site improvements shall be damaged or destroyed (partially or totally) by fire or any other casualty insurable under a standard fire and extended coverage endorsement Tenant shall, at its expense, promptly and with due diligence either (1) repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction or (2) repair, rebuild and restore the same for the same use and purposes but in accordance with such plans and specifications as are then generally in use by Tenant for the construction of K marts and related structures, provided, however, the repaired, rebuilt or replaced building will have a value not less than its value just prior to said loss. Anything herein to the contrary notwithstanding, it is understood and agreed that if (1) as a result of any such damage or destruction during the last two years of the lease term, Tenant's fixtures, equipment or other property shall be damaged or destroyed in an amount exceeding One Hundred Thousand Dollars ($100,000.00), or (2) if such damage or destruction shall have taken place within five years of the then scheduled expiration date of the current term of the lease and if the extent of such damage or destruction is such that the cost of restoration would exceed fifty per cent (50%) of the amount it would have cost to replace the Tenant's building on the demised land in its entirety at the time such damage or destruction took place, then Tenant may terminate this Lease as of the date of such damage or destruction by giving written notice to the Landlord within thirty (30) days thereafter and Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. If Tenant is carrying fire insurance to one hundred per cent (100%) of the replacement value, all the insurance proceeds shall belong to Landlord and/or Landlord's mortgagee as their interest may appear; in the event the property is self-insured at the time of the loss Tenant shall reimburse Landlord and/or the mortgagee for an amount equivalent to the insurance proceeds that would have been paid had insurance been in force, but not to exceed one hundred per cent (100%) of the replacement value of the building. In the event that this Lease shall be terminated as above provided, all unearned rent and other charges paid in advance shall be refunded to Tenant.

In the event that, at any time during the lease term, any building or buildings within the site depicted on Exhibit "B", other than Tenant's building or buildings, shall be damaged or destroyed (partially or totally) by fire, the elements or any other casualty, Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; or alternatively Landlord shall be required to clear, clean and raze the fire damaged buildings.

Each party hereto has hereby remised, released and discharged the other party hereto and any officer, agent, employee or representative of such party of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the party at the time of such loss, damage or injury to the extent of any recovery by the injured party under such insurance.

<u>Eminent Domain</u>    21. In the event all of Tenant's buildings constructed by Landlord shall be expropriated or the points of ingress and egress to the public roadways substantially as depicted on Exhibit "B" be materially impaired by a public or quasi-public authority, Tenant shall have the option to terminate this lease as of the date Tenant shall be deprived thereof.

In the event that less than the whole but more than ten percent (10%) of Tenant's buildings constructed by Landlord shall be expropriated by public or quasi-public authority, Tenant shall have the option to terminate this lease

-13-

as of the date Tenant shall be dispossessed from the part so expropriated, by giving notice to Landlord of such election so to terminate within ninety (90) days from the date of such dispossession.

In the event of an expropriation of any portion of Tenant's buildings, constructed by Landlord, and if this lease shall not be terminated as hereinabove provided, it shall continue as to that portion of the said buildings which shall not have been expropriated or taken, in which event Landlord shall, at its sole cost and expense, promptly and with due diligence restore said buildings as nearly as practicable to complete units of like quality and character as existed just prior to such expropriation. The annual minimum rental and other charges shall abate during the period of demolition and restoration, and thereafter the annual minimum rental and the dollar amounts set forth in the first paragraph of Article 4 shall be reduced in the proportion the ground floor area of the part of Tenant's buildings so expropriated shall bear to the total ground floor area of said buildings prior to such expropriation.

Without limiting the foregoing, in the event that any of the land described in Parcel A of Exhibit "A" shall be expropriated by public or quasi-public authority, Landlord shall make every effort to substitute equivalent and similarly improved lands contiguous to and properly integrated with the remainder of the site depicted on Exhibit "B". If Landlord shall be unable to substitute such lands and if one or more expropriations shall in total deprive Tenant of the use of more than ten percent (10%) of the land described in Parcel A of Exhibit "A", then, in such event, the Tenant shall have the option to terminate this lease at any time within twelve (12) months after such deprivation becomes effective by giving notice to Landlord.

In the event this lease shall be terminated pursuant to this Article, any annual minimum rental and other charges paid in advance shall be refunded to Tenant, and Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. In the event that at the time of any expropriation of Tenant's buildings, Tenant shall not have fully amortized expenditures which it may have made on account of any improvements, alterations or changes to its buildings, Landlord shall assign to Tenant that portion of any award payable as a result of such expropriation as shall equal the unamortized portion of Tenant's said expenditures. Said unamortized portion of Tenant's said expenditures shall be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of remaining years of the lease term at the time of such expropriation and the denominator of which shall be the number of remaining years of the lease term at the time such expenditures shall have been made plus the number of years for which the lease term may have been subsequently extended.

Tenant shall not be entitled to share in any award made by reason of expropriation of Landlord buildings on the demised premises, or any part thereof, by public or quasi-public authority, except as set forth in the preceding paragraph relative to unamortized expenditures by Tenant and then only if the award for such unamortized expenditures shall be made by the expropriating authority in addition to the award for the land, buildings and other improvements (or portions thereof) comprising the demised premises; however, the Tenant's right to receive compensation for damages or to share in any award shall not be affected in any manner hereby if said compensation, damages, or award is made by reason of the expropriation of the land or buildings or improvements constructed or made by Tenant.

Use, Assignment and Subletting    22. The premises hereby demised may be used for any lawful retail purpose. Tenant may assign this lease or sublet the whole or any part of the demised premises, but if it does so, it shall remain liable and responsible under this lease. Notwithstanding this paragraph the premises and adjacent shopping center shall not be used for an adult video or book store, bar, tavern, cocktail lounge, theatre, bowling alley, skating rink, dance hall, pool hall, massage parlor, video arcade or health club.

-14-

Notwithstanding the foregoing, Tenant agrees with Landlord that so long as Florida Super Markets, Inc. d/b/a Sun Supermarkets its affiliates or successors is operating a supermarket or grocery store on the property described in Exhibit "A" Parcel B, Tenant agrees that it will not use the demised premises for the operation of a food supermarket or food department or for the sale of off-premises consumption of groceries, meat, produce, dairy products, baker products or any of these. The foregoing shall not, however, prohibit: (i) the sale by a restaurant operation, lunch counter, deli or fountain of prepared ready to eat food items, either for consumption on or off the premises (ii) the sale by Tenant, its successors and assigns, of candy, cookies and other miscellaneous foods in areas totalling not more than Five Thousand (5,000) square feet of sales area, exclusive of aisle space. This restriction shall be void if Florida Super Markets Inc. d/b/a Sun Supermarkets its affiliates or successors shall fail to operate a supermarket for a continuous period of one hundred eighty (180) days, except for non operation due to fire and casualty.

Signs

23. The demised premises shall be referred to by only such designation as Tenant may indicate. Landlord expressly recognizes that the service mark and trademark "K mart" is the valid and exclusive property of Tenant, and Landlord agrees that it shall not either during the term of this lease or thereafter directly or indirectly contest the validity of said mark "K mart", or any of Tenant's registrations pertaining thereto in the United States or elsewhere, nor adopt or use said mark or any term, word, mark or designation which is in any aspect similar to the mark of Tenant. Landlord further agrees that it will not at any time do or cause to be done any act or thing directly or indirectly, contesting or in any way impairing or tending to impair any part of the Tenant's right, title and interest in the aforesaid mark, and Landlord shall not in any manner represent that it has ownership interest in the aforesaid mark or registrations therefor, and specifically acknowledges that any use thereof pursuant to this lease shall not create in Landlord any right, title or interest in the aforesaid mark.

Tenant shall have the option to erect at its sole cost and expense upon any portion of Tenant's building signs of such height and other dimensions as Tenant shall determine, bearing such legend or inscription as Tenant shall determine.

Landlord shall not permit any other signs, billboards or posters to be displayed on any portion of the demised premises.

Prior to the date of occupancy by Tenant as defined in Article 11 hereof, Landlord shall, subject to Tenant's approval and applicable governmental laws, statutes and ordinances, at Landlord's sole cost and expense, install one (1) shopping center pylon sign at the location designated as "Shopping Center Pylon" on Exhibit B, attached hereto and made a part hereof. Such pylon sign shall be designed to permit the installation of other identification signs on same and Tenant shall have the right to install or have installed its identification sign on such pylon. In the event Tenant shall elect to install or have installed its identification sign on said pylon, Tenant shall reimburse Landlord for a portion of the cost of installing said shopping center pylon; Tenants portion of said cost to be equal to the cost of said installation multiplied by a fraction, the numerator of which shall be the number (1) one and the denominator of which shall be the total number of identification signs installed or to be installed on said pylon, including the shopping center sign. Landlord agrees that it will not allow the placement of other identification signs (other than the shopping center identification sign) on the shopping center pylon that shall be larger than the identification sign permitted to be placed on the shopping center pylon by Tenant and that Tenant's identification sign shall not be subordinate to the identification sign or signs of any of Landlord's other tenants permitted to install identification signs on said pylon. Landlord further agrees that, except for the shopping center identification sign, no identification sign

-15-

other than that of a shopping center tenant shall be placed on said shopping center pylon and that no tenant occupying a building of less than 10,000 square feet shall be permitted to place an identification sign on said shopping center pylon.

Landlord warrants that except for Landlord's ~~one (1)~~ Two (2) said pylon, no additional pylon type signs shall be permitted on any portion of the shopping center premises located within the land described in Exhibit "A".

Ingress and Egress
24. Landlord warrants as a consideration for Tenant entering into this lease it will initially provide and will maintain, for the period of this lease and any extension thereof, ingress and egress facilities to the adjoining public streets and highways in the number and substantially in the locations depicted on Exhibit "B", subject to unavoidable temporary closings or temporary relocations necessitated by public authority or other circumstances beyond Landlord's control.

Landlord's Remedies
25. If Tenant shall be in default under any other provision of this lease and shall remain so for a period of thirty (30) days after notice to Tenant of such default, then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default, either (a) terminate this lease, or (b) re-enter the demised premises by summary proceedings or otherwise, expel Tenant and remove all property therefrom, relet said premises at the best possible rent readily obtainable (making reasonable efforts therefor), and receive the rent therefrom; provided, however, Tenant shall remain liable for the equivalent of the amount of all rent reserved herein less the avails of reletting, if any, after deducting therefrom the reasonable cost of obtaining possession of said premises including reasonable attorney fees and of any repairs and alterations necessary to prepare it for reletting. Any and all monthly deficiencies so payable by Tenant shall be paid monthly on the date herein provided for the payment of rent. If any default by Tenant (except nonpayment of rent) cannot reasonably be remedied within thirty (30) days after notice of default, then Tenant shall have such additional time as shall be reasonably necessary to remedy such default before this lease can be terminated or other remedy enforced by Landlord. Except for the legal remedy of damages (provided Landlord shall, in all instances, be required to mitigate damages) and the equitable remedy of an injunction, the remedies of Landlord herein shall be exclusive of any other remedies.

Bankruptcy
26. If a petition in bankruptcy shall be filed by Tenant, or if Tenant shall be adjudicated bankrupt, or if Tenant shall make a general assignment for the benefit of creditors, or if in any proceeding based upon the insolvency of Tenant a receiver of all of the property of Tenant shall be appointed and shall not be discharged within ninety (90) days after such appointment, then Landlord may terminate this lease by giving notice to Tenant of its intention so to do; provided, however, neither bankruptcy, insolvency, an assignment for the benefit of creditors nor the appointment of a receiver shall affect this lease or permit its termination so long as the covenants on the part of Tenant to be performed shall be performed by Tenant or someone claiming under it.

Covenant of Title
27. Landlord covenants, represents and warrants that it has full right and power to execute and perform this lease and to grant the estate demised herein and that Tenant, on payment of the rent and performance of the covenants and agreements hereof, shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto during the lease term without molestation or hindrance of any person whomsoever, and if at any time during the term hereby demised the title of Landlord shall fail or it be discovered that its title shall not enable Landlord to grant the term hereby demised, Tenant shall have the option at Landlord's expense to correct such defect or to annul and void this lease with full reservation of its right to damages, if any.

-16-

Landlord further covenants, represents and warrants that it is seized of an indefeasible estate in fee simple or has a good and marketable leasehold title to the land described in Parcel A of Exhibit "A", free and clear of any liens, encumbrances, restrictions and violations (or claims or notices thereof), except as follows:

(a) Public utility easements not impairing Tenant's use of the demised premises.

Landlord shall, without expense to Tenant and within thirty (30) days after written request by Tenant, furnish (a) a commitment for an ALTA leasehold policy of Title Insurance in form acceptable to Tenant in an amount not less than One Million Dollars ($1,000,000.00) showing that Landlord's title is as herein represented, (b) an as-built survey by a licensed surveyor of the land described in Parcel A of Exhibit "A", and (c) agreements wherein each holder of any lien against the demised premises shall consent to this lease and warrant that Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such holder unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

In the event Landlord's estate is derived from a leasehold interest in a ground lease, Landlord shall, prior to the commencement of construction of the improvements required hereunder, deliver to Tenant an agreement executed by the fee owner of the demised premises wherein the fee owner recognizes this lease and Tenant's rights hereunder and agrees that, notwithstanding any default by the Landlord and subsequent termination of said ground lease, Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such fee owner unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

**Mortgage Subordination**     28. Upon written request by Landlord, Tenant shall execute and deliver an agreement subordinating this lease to any first mortgage upon the demised premises; provided, however, such subordination shall be upon the express condition that the validity of this lease shall be recognized by the mortgagee, and that, notwithstanding any default by the mortgagor with respect to said mortgage or any foreclosure thereof, Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such mortgagee unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

**Tenant Indemnifies Landlord**     29. During the lease term Tenant shall indemnify and save Landlord and Landlord's ground lessor, if any, harmless against all penalties, claims or demands of whatsoever nature arising from Tenant's use of the Tenant's buildings except those which shall result, in whole or in part, directly or indirectly, from the default or negligence of Landlord or Landlord's ground lessor, if any.

**Tenant's Right to Cure Landlord's Defaults**     30. In the event Landlord shall neglect to pay when due any obligations on any mortgage or encumbrance affecting title to the demised premises and to which this lease shall be subordinate, or shall fail to perform any obligation specified in this lease, then Tenant may, after the continuance of any such default for seven (7) days after notice thereof by Tenant, pay said principal, interest or other charges or cure such default, all on behalf of and at the expense of Landlord, and do all necessary work and make all necessary payments in connection therewith, and Landlord shall on demand, pay Tenant forthwith the amount so paid by Tenant together with reasonable attorney fees and interest thereon at the lower rate of two percent (2%) above prime per annum

-17-

or the highest rate not prohibited by law, and Tenant may to the extent necessary withhold any and all rental payments and other payments thereafter due to Landlord and apply the same to the payment of such indebtedness.

Provided the holder of a properly recorded first mortgage shall have notified Tenant in writing that it is the holder of such lien on the demised premises and shall so request, Tenant shall provide such holder with a duplicate copy of any notice sent to Landlord covering a default hereunder, and such holder shall be granted sixty (60) days after receipt thereof to correct or remedy such default.

**Condition of Premises at Termination**

31. At the expiration or earlier termination of the lease term Tenant shall surrender the demised premises, together with alterations, additions and improvements then a part thereof, in good order and condition except for the following: ordinary wear and tear, repairs required to be made by Landlord, and loss or damage by fire, the elements and other casualty. All furniture and trade fixtures installed in said buildings at the expense of Tenant or other occupant shall remain the property of Tenant or such other occupant; provided, however, Tenant shall, at any time and from time to time during the lease term, have the option to relinquish its property rights with respect to such trade fixtures (including, but not limited to, air conditioning machinery and lighting fixtures), which option shall be exercised by notice of such relinquishment to Landlord, and from and after the exercise of said option the property specified in said notice shall be the property of Landlord.

**Holding Over**

32. In the absence of any written agreement to the contrary, if Tenant should remain in occupancy of the demised premises after the expiration of the lease term, it shall so remain as a tenant, from month-to-month and all provisions of this lease applicable to such tenancy shall remain in full force and effect.

**Investment Tax Credit**

33. Landlord hereby agrees to elect under the applicable provisions of the Internal Revenue Code, as amended, (hereinafter referred to as the "Code") to pass through to the Tenant all investment tax credit which may be available from time to time in respect of the demised premises under said Code. Landlord agrees to timely execute all documents required by said Code, and regulations issued thereunder, to enable Tenant to obtain such investment tax credit.

Landlord further agrees to maintain adequate records to enable Tenant to obtain such tax credit and to provide such records to the Tenant upon written request and otherwise to cooperate with Tenant in said matter. Landlord agrees not to destroy or otherwise dispose of such records until written consent to such destruction or disposal has been obtained from Tenant.

**Notices**

34. Notices required under this lease shall be in writing and deemed to be properly served on receipt thereof if sent by certified or registered mail to Landlord at the last address where rent was paid or to Tenant at its principal office in Troy, Michigan, Attention: Vice President Corporate Facilities or to any subsequent address which Tenant shall designate for such purpose. Date of notice shall be the date on which such notice is deposited in a post office of the United States Postal Service.

**Captions and Definitions**

35. Marginal captions of this lease are solely for convenience of reference and shall not in any way limit or amplify the terms and provision thereof. The necessary grammatical changes which shall be required to make the provision of this lease apply (a) in the plural sense if there shall be more than one Landlord, and (b) to any landlord which shall be either a corporation, an association, a partnership, or an individual, male or female, shall in all instances be assumed as though in each case fully expressed. Unless otherwise provided, upon the termination of this lease under any of the Articles hereof, the parties hereto shall be relieved of any further liability hereunder except as to acts, omissions or defaults occurring prior to such termination.

-18-

Successors and Assigns
36. The conditions, covenants and agreements contained in this lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns. All covenants and agreements of this lease shall run with the land.

Severability
37. If any one or more of the provisions contained herein shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, unenforceability shall not affect any other provision of this Lease, but this Lease shall be construed as if such invalid, illegal or unenforceable provision had not been contained herein.

Choice of Law
38. This Lease shall be construed and enforced in accordance with the laws of the Territory of the U.S. Virgin Islands. The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either Landlord or Tenant.

Waiver and Modifications
39. The failure of either party to insist in any one or more instances upon the strict performance of any one or more of the agreements, terms, covenants, conditions or obligations of this lease, or to exercise any right, remedy or election herein contained, shall not be construed as a waiver or relinquishment for the future of the performance of such one or obligations of this lease or of the right to exercise such right, remedy or election, but the same shall continue and remain in full force and effect with respect to any subsequent breach, act or omission. This lease may be changed or amended only by a writing signed by the party against whom enforcement thereof is sought.

Memorandum of Lease
40. The parties hereto have simultaneously with the execution and delivery of this lease executed and delivered a Memorandum of Lease which Landlord shall at its sole expense cause to be recorded within sixty (60) days following delivery of this lease and returned to Tenant by Landlord within sixty (60) days thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in triplicate as of the day and year first above written.

WITNESSES:

TUTU PARK, LIMITED, a U.S. Virgin Island Limited Partnership, by PID, a U.S. Virgin Island Corporation, General Partner

_Iai H. Hershman_                 By: _[signature]_ PRESIDENT P.I.D INC.

_Richard E. [Grunert]_            By: _[signature]_ Sec. PID

K MART CORPORATION

By: _____
                        Vice President

Attest: _____
                        Assistant Secretary

0210q

-19-

ACKNOWLEDGMENTS

TERRITORY OF THE VIRGIN ISLANDS
~~STATE OF~~                    )
~~COUNTY OF~~                   )ss:
Judicial Division of St. Thomas and St. John

    I do hereby certify that on this  3rd  day of November, 1989, before me,  Richard E. Grunert  , a Notary Public in and for the County and State aforesaid, and duly commissioned, personally appeared  JOHN F. FOSTER  and WILLIAM L. MAHAFFEY  , known to me to be the President and Secretary of  P.I.D., INC  who, being by me duly sworn, did depose and say that ~~they reside in~~                    , ~~respectively; that~~ they are the President and Secretary respectively of  P.I.D., INC  , the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation and by order of its board of directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

    In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

My commission expires:_____       *Richard E. Grunert*
      RICHARD E. GRUNERT                         Notary Public
    Notary Public, Territory of the
    United States Virgin Islands
    Commission Expires July 6, 1991


STATE OF MICHIGAN)
COUNTY OF OAKLAND)ss:

    I do hereby certify that on this         day of            , 19   , before me,                                            , a Notary Public in and for the County and State aforesaid, and duly commissioned, personally appeared                                         and                                         , known to me to be the Vice President and Assistant Secretary of K mart Corporation, who, being by me duly sworn, did depose and say that they reside in                     respectively; that they are the Vice President and Assistant Secretary respectively of K mart Corporation, the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that, on behalf of said corporation and by order of its board of directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

    In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

My commission expires:_____       _____
                                                    Notary Public

-20-