Gerald P. Kennedy (Bar No. 105887)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
*Attorney for Landlord/Creditor*
*MCS Hemet Valley Center LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **SEARS HOLDING CORPORATION,** *et al.*, | Case No. 18-23538 (RDD) |
| **Debtors** | (Joint Administration Requested) |

**OBJECTIONS TO CURE AMOUNT AND ADEQUATE ASSURANCE INFORMATION OF LANDLORD MCS HEMET VALLEY CENTER LLC IN RESPONSE TO NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

MCS Hemet Valley Center LLC ("Landlord"), by its undersigned counsel, hereby submits its objections to the cure amount (the "Cure Objection") and adequate assurance information (the "Adequate Assurance Objection" and collectively, the "Objections"), in response to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* filed January 18, 2019 [ECF No. 1731] (the "Cure Notice"). In support of the Objections, Landlord respectfully states:

1.    On October 15, 2018, the above-captioned debtors and debtors-in-possession ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2.    Landlord is a party to an unexpired lease of nonresidential real property with the Debtors located at 2200 W. Florida Avenue, Hemet CA 92545 identified as store #2028 (the "Hemet Lease").

3.  The Hemet Lease is a lease "of real property in a shopping center" for purposes of 11 U.S.C. §365(b)(3).

4.  Among other terms and restrictions in the Hemet Lease, Section 2 expressly limits the use of the *"Store Building"* as defined thereunder *"solely for the sale of all items or services normally sold in Sears Department Stores"*:

> The Lessee's Store Building, as defined herein, shall be used by Lessee solely for the sale of all items or services normally sold in Sears Department Stores, and the incidental servicing and storing of such merchandise, with an attached Auto Center, as defined herein, to be used for the sale of tires, batteries and other automotive items and services incidental thereto, specifically excluding the sale of gasoline, and for no other purpose. Lessee agrees to comply with all Federal, State and governmental laws, rules, regulations and ordinances applicable to the Demised Premises.

5.  Pursuant to the Cure Notice, the Debtors seek to assume and assign certain of their executory contracts and unexpired leases to Transform Holdco, LLC ("Buyer"), including potentially the Hemet Lease, pursuant to the *Order Approving Global Procedures and Granting Related Relief* filed November 19, 2018 [ECF No. 816] (the "Global Bidding Procedures").

6.  In conjunction with the Global Bidding Procedures, the Debtors filed the Cure Notice, which lists the Debtors' proposed cure amount for the Hemet Lease of "$[0]" (the "Proposed Cure Amount").

7.  Paragraph 9 of the Cure Notice further provides that specific adequate assurance information for the Buyer is to be "distributed to the applicable Counterparties:"

> Adequate Assurance Information for the Buyer will be distributed to the applicable Counterparties. The Buyer's Adequate Assurance Information is intended to provide the Counterparties to the Contracts and Leases with adequate assurance of future performance and to support the Buyer's ability to comply with the requirements of adequate assurance of future performance, including the Buyer's financial wherewithal and willingness to perform under the Contracts and Leases.

8.  On January 23, 2019, the Debtors filed their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1774] (the "Supplemental Cure Notice"). Although neither referenced in nor attached to the Supplemental Cure Notice filed with the

Court, attached as Exhibit C to the Supplemental Cure Notice served by the Debtors on the Landlord was a letter from the Buyer purporting to contain adequate assurance information (the "Adequate Assurance Letter").

9. The Adequate Assurance Letter contains very limited and general financial information concerning the Buyer and its intended use of any leased premises, while further noting the ability of the Buyer to assign -- without specifically identifying -- *"certain of the contracts or leases"* to third parties whose identities *"are not yet known"* (the "Potential Assignee"):

> Certain of the contracts or leases being assumed by the Sellers are being assigned to the Buyer. Buyer also negotiated for the ability to assign certain contracts or leases to any third parties. The identities of any such third parties are not yet known. In the event that a contract or lease is to be assumed and assigned to a party other than Buyer or its affiliates, the identity of the third party assignee and supplemental information satisfying the assignee's requirements for adequate assurance of future performance will be provided to the applicable counterparty to such contract or lease.

## CURE OBJECTION AND BASIS THEREFOR

10. Landlord objects to the Proposed Cure Amount as set forth in the Cure Notice because the correct cure amount due and owing under the Hemet Lease is $47,129.07 as set forth in the lease statement attached hereto as Exhibit "A" (the "Correct Cure Amount").[1]

11. Landlord further objects to the Debtors' Proposed Cure Amount in that it does not take into consideration the passage of time between the filing of the Cure Notice and the effective date of any assumption and assignment of the Hemet Lease by the Debtors. Accordingly, any order that is entered establishing cure amounts with respect to the Hemet Lease must require that the Debtors (i) comply with all obligations under the Hemet Lease pursuant to 11 U.S.C. § 365(d)(3) pending the actual assumption and assignment of the Hemet Lease, and (ii) cure any additional defaults that may occur under the Hemet Lease between the date of this

---

[1] Landlord reserves the right to include additional charges that accrue under the Hemet Lease that are not identified on Exhibit "A" up through the date of any order approving an assumption or assumption and assignment of the Hemet Lease.

Cure Objection and the effective date of any assumption and assignment by the Debtors. See 11 U.S.C. § 365(b)(1).

12.     Landlord further objects to the Debtors' Proposed Cure Amount since it does not include amounts that may become due under the Hemet Lease after the lease is assumed, but which may relate to the pre-assumption period (i.e., real estate tax and common area maintenance reconciliations). Any order establishing the cure amount in connection with the assumption of the Hemet Lease must provide for the payment of all charges due and/or accrued in the ordinary course under the terms of the Hemet Lease, notwithstanding the Debtors' Proposed Cure Amount.

13.     Landlord further objects in that the Hemet Lease provides that the Debtors must indemnify and hold Landlord harmless with respect to any existing claims that may not become known until after the assumption of the lease (i.e., personal injury claims, damage to the leased premises or shopping center caused by the Debtors or their agents). Any order approving the assumption of the Hemet Lease must therefore provide that the assumption is pursuant to the terms of the Hemet Lease, and that the Debtors will continue to be responsible for all such indemnification obligations, regardless of when they arose.

14.     Under the Hemet Lease, Landlord is also entitled to attorneys' fees and costs. These amounts are currently unliquidated because as of the date hereof Landlord cannot be certain whether its Hemet Lease will be assumed and when such assumption will occur. The Correct Cure Amount should therefore also include all of Landlord's attorneys' fees and costs to which it is entitled under the Hemet Lease.

15.     Section 365 of the Bankruptcy Code obligates the Debtors to promptly cure all existing defaults before assuming any unexpired lease of non-residential real property. See 11 U.S.C. § 365(b)(1)(A) and (B); *Agri Star Meat & Poultry, LLC v. Nevel Props. Corp. (In re Nevel Props. Corp.)*, 765 F.3d 846, 849 (8th Cir. 2014) (stating that a lease cannot be assumed unless a cure has been effected); *In re Alipat, Inc.*, 36 B.R. 274, 276 (Bankr. E.D. Mo. 1984) ("[I]f there has been a default in an executory contract or unexpired lease, the trustee may not assume such contract or lease unless he or she cures the default, compensates the other party, and

provides adequate assurance of future performance…"). The Debtors are therefore required to promptly cure all existing defaults by paying Landlord the Correct Cure Amount immediately upon the assumption of the Hemet Lease.

16. Prior to the Hemet Lease actually being assumed, all other amounts that will become due and owing under the lease, including attorneys' fees also need to be cured to the extent such amounts remain unpaid.

## **ADEQUATE ASSURANCE OBJECTIONS AND BASIS THEREFORE**

17. Before assuming a lease of a shopping center that is in default, a debtor must also, *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1). Bankruptcy Code section 365(b)(3) states:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
> (B) that any percentage rent due under such lease will not decline substantially;
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

18. Because the Landlord has received only limited information as to the intended use by the Buyer to satisfy the above requirements, and has yet to receive <u>any</u> adequate assurance information about any Potential Assignee of the Buyer, the Landlord objects to the proposed assumption and assignment of the Hemet Lease for lack of adequate assurance of future performance.

19. Under 11 U.S.C. § 365(b)(1) and (b)(3) and under 11 U.S.C. § 365(f)(2)(B), the Landlord is entitled to "adequate assurance" of future performance by the Buyer and any

Potential Assignee. *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); *c.f., In re Embers 86th Street, Inc.,* 184 B.R. 892, 900-01 (Bankr. S.D.N.Y. 1995) (adequate assurance of payment of cure did not exist where plan was to "meet its projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at increased prices"); *Matter of World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn.1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); *In re Future Growth Enterprises, Inc.*, 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

20. Additionally, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." *In re Joshua Slocum Ltd.,* 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *Id.* "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 299 (3rd Cir. 2000), *cert. denied*, 121 S.Ct. 175 (2000) (citation omitted).

21. The Debtors, Buyer and any Potential Assignee have not provided adequate assurance of future performance of the terms of the Hemet Lease. In particular, that the "Store Building" will continue to be used "solely for the sale of all items or services normally sold in Sears Department Stores."

22. The Landlord further objects to any attempts by the Debtors, Buyer or any Potential Assignee to modify the Hemet Lease or any of the Landlord's rights thereunder. The Hemet Lease must be assumed and assigned without modification, with all of their benefits

and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C). *See Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134 (1946*); In re Jamesway Corp.*, 201 B.R.73, 76 (Bankr. S.D.N.Y. 1996); *Rockland Center Assoc. v. TSW Stores of Nanuet, Inc.* (*In re TSW Stores of Nanuet, Inc.*), 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985).

23.     Since 11 U.S.C. §365(b)(3) requires that the Hemet Lease be assumed "subject to all the provisions thereof," the Landlord further objects to any attempt by the Debtors to assume the Hemet Lease free and clear of the Debtors' indemnity obligations (including, without limitation, accrued obligations for personal injury or negligence claims against the Debtors that could be asserted against the Landlord) under the Hemet Lease. 11 U.S.C. §365(b)(3)(C). The Landlord's claims under the Hemet Lease should therefore be preserved and survive any order authorizing assumption of the Hemet Lease.

24.     Accordingly, any requests by the Debtors to modify clauses in the Hemet Lease to suit the desires of the Buyer and/or any Potential Assignee are without merit and inconsistent with the protections afforded by 11 U.S.C. §365(b)(3) to lessors of real property contained within a shopping center. To the extent this Court authorizes assumption and assignment of the Hemet Lease, the Buyer and/or any Potential Assignee must therefore be required to accept all clauses in the Hemet Lease and continue operating a "Sears Department Store."

## **RESERVATION OF RIGHTS AND JOINDER**

25.     Landlord reserves its right to assert any and all other claims against the Debtors arising out of or related to the Hemet Lease, including without limitation, claims for (a) the costs of any repair that may be necessary after inspection of the interior of the leased premises; (b) post-petition rent and other charges accruing under the Hemet Lease from and after the filing of the Cure Notice, that Landlord has yet to discover and not yet identified on Exhibit "A"; (c) pecuniary losses suffered by Landlord as a result of any defaults by Debtors under the Hemet Lease, including, but not limited to, attorneys' fees and costs incurred as a direct result of any further defaults; and (d) non-monetary defaults of which Landlord does not have knowledge at this time.

26. Landlord further reserves all of its rights to object to adequate assurance information by the Buyer and/or any other Potential Assignee of the Hemet Lease on any basis, to the extent the Debtors and/or Buyer seek to assign the Hemet Lease, as well as any other rights it now has or may have under applicable law with respect to this matter, including but not limited to any rights under Section 365 of the Bankruptcy Code. To the extent not inconsistent herewith, the Landlord hereby joins in the objections raised by other landlords.

## CONCLUSION

27. Landlord respectively submits that: (a) the Correct Cure Amount should be allowed (subject to adjustment by the Landlord) in the amounts set forth on the attached Exhibit "A"; (b) any order approving the assumption and assignment of Hemet Lease be subject to and conditioned upon the Buyer or any other Potential Assignee providing adequate assurance of future performance, including that it will continue to operate a Sears Department Store; and (c) the Court should grant such other relief that the Court finds just and proper.

DATED: January 25, 2019                **PROCOPIO, CORY, HARGREAVES & SAVITCH LLP**


By:  */s/ Gerald P. Kennedy*
     Gerald P. Kennedy (Bar No. 105887)
     525 B Street, Suite 2200
     San Diego, CA 92101
     Telephone: 619.238.1900
     Facsimile: 619.235.0398
     Email: gerald.kennedy@procopio.com

     Attorney for Landlord/Creditor
     MCS Hemet Valley Center LLC

## **CERTIFICATE OF SERVICE**

    I hereby certify, pursuant to 28 U.S.C. §1746, that on January 25, 2019, I caused a true and correct copy of the foregoing Cure Objection to be sent to each of the persons named on the attached Service List, by email (unless otherwise stated).

DATED: January 25, 2019        **PROCOPIO, CORY, HARGREAVES & SAVITCH LLP**

By: */s/ Gerald P. Kennedy*
Gerald P. Kennedy (CA Bar No. 105887)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

# SERVICE LIST

I.  Bid Notice Parties
    a.  Debtors
        Rob Riecker: rob.riecker@searshc.com
        Luke Valentino: luke.valentino@searshc.com
        Mohsin Meghji: mmeghji@miiipartners.com
        General Counsel: counsel@searshc.com

    b.  Debtors' counsel
        Ray Schrock, Esq.: ray.schrock@weil.com
        Jacqueline Marcus, Esq.: jacqueline.marcus@weil.com
        Garrett A. Fail, Esq. garrett.fail@weil.com
        Sunny Singh, Esq. sunny.singh@weil.com

    c.  Debtors' investment banker: project.blue.rx@lazard.com

II. Buyer Parties
    a.  Buyer
        Kunal S. Kamlani: kunal@eslinvest.com
        Harold Talisman: harold@eslinvest.com

    b.  Counsel
        Christopher E. Austin, Esq.: caustin@cgsh.com
        Benet J. O'Reilly, Esq.: boreilly@cgsh.com
        Sean A. O'Neal, Esq.: soneal@cgsh.com

III. Consultation Parties
    a.  Bank of America
        Paul Leake, Esq.: Paul.Leake@skadden.com
        Shana Elberg, Esq.: Shana.Elberg@skadden.com
        George Howard, Esq.: George.Howard@skadden.com

    b.  Wells Fargo Bank
        Kevin J. Simard, Esq.: ksimard@choate.com
        Jonathan D. Marshall, Esq.: jmarshall@choate.com

    c.  Committee
        Ira S. Dizengoff, Esq. : idizengoff@akingump.com
        Philip C. Dublin, Esq.: pdublin@akingump.com
        Abid Qureshi, Esq.: aqureshi@akingump.com
        Sara L. Brauner, Esq.: sbrauner@akingump.com

**[CONTINUED ON NEXT PAGE]**

**[CONTINUED FROM PREVIOUS PAGE]**

| | |
|---|---|
| Transform Holdco, LLC<br>c/o ESL Partners, Inc.<br>Attention: Kunal S. Kamlani and Harold Talisman<br>1170 Kane Concourse, Suite 200<br>Bay Harbor Islands, FL 33154 | Via First Class Mail |
| Sears Holdings Corporation<br>Attn: General Counsel<br>3333 Beverly Road<br>Hoffman Estates, IL 60179 | Via First Class Mail |
| Weil, Gotshal & Manges LLP<br>Attention: Ray C. Schrock, P.C.,<br> Ellen J. Odoner, Gavin Westerman and Sunny Singh<br>767 Fifth Avenue<br>New York, New York 10153 | Via First Class Mail |
| Cleary Gottlieb Steen & Hamilton LLP<br>Attention: Christopher E. Austin,<br> Benet J. O'Reilly and Sean A. O'Neal<br>One Liberty Plaza<br>New York, NY 10006 | Via First Class Mail |

# EXHIBIT "A"

**MCS HEMET VALLEY MALL**  *Revised*
**SEARS**  *01/24/19*
**PRE PETITION/POST PETITION BALANCE DUE**

**PRE-PETITION:**

    2017 Property Tax (CAM Parking)
        2nd 1/2 2016/2017 + 1st 1/2 2017/2018   23,154.81
    2017 CAM Expense
        Expense CAP (.35 x 86,143rsf)   30,150.05
        Less payments on account:   (25,842.96)
    ***SUBTOTAL 2017 CAM EXPENSE DUE:***   **27,461.90**

    2018 Property Tax (Store Parcel) 448420003-3
        1st 1/2 2018/2019  $45,970.69  prorated 07/01/18 - 10/14/18   Paid 12/3/18

    2018 Property Tax (CAM Parking)
        2nd 1/2 2017/2018 + Prorated 1st 1/2 2018/2019   18,241.27

    2018 CAM Expense
        Expense CAP (.35 x 86,143rsf) prorated 01/01/18 - 10/14/18   23,707.03
    TOTAL PREPETITION EXPENSE   41,948.30
        Less payments on account:   (28,714.30)
    ***SUBTOTAL 2018 PREPETITION BALANCE DUE***   **13,234.00**

    **TOTAL PREPETITION BALANCE DUE**   **40,695.90**

**POST-PETITION:**

    Property Tax (Store Parcel) 448420003-3
        1st 1/2 2018/2019  $45,970.69  prorated 10/15/18 - 12/31/18   Paid 12/3/18

    Property Tax (CAM Parking)
     Prorated 1st 1/2 2018/2019 10/15/18 - 12/31/18   4,895.18

    CAM Expense
        Expense CAP (.35 x 86,143rsf) prorated 10/15 - 10/21/18   578.22
        Expense CAP (.40 x 86,143rsf) prorated 10/22 - 12/31/18   6,702.63
    TOTAL POST-PETITION BALANCE DUE   12,176.03
        Less payments on account:   (5,742.86)
    **TOTAL POST-PETITION BALANCE DUE**   **6,433.17**

    Sears store Parcel 1st 1/2   -   **Due 12/10/18  PAID**
    Sears store Parcel 2nd 1/2   45,970.69   Due 04/10/19
        45,970.69