HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
Telephone: (313) 465-7590
Facsimile: (313) 465-7591
Lawrence A. Lichtman (MI Bar #P35403)
*Admitted Pro Hac Vice*
*Attorneys for QKC Maui Owner, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.*,[1] | Case No. 18-23538 (RDD) |
| **Debtors.** | **(Jointly Administered)** |

------------------------------------------------------------------------x

**LIMITED OBJECTION OF QKC MAUI OWNER, LLC TO DEBTORS' (I) NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION; AND (II) GLOBAL ASSET SALE TRANSACTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616, and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

29914973.1

QKC Maui Owner, LLC ("QKC"), by its undersigned counsel, hereby makes the following limited objection (the "Limited Objection") to (i) the Debtors' January 18, 2019 Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases In Connection With Global Sale Transaction [Docket No. 1731] (the "Cure Notice"), and (ii) the Global Asset Sale Transaction as described and defined in the Debtors' January 18, 2019 Notice of Successful Bidder and Sale Hearing [Docket No. 1730] (the "Successful Bidder Notice")[2], and states:

## I. BACKGROUND

1. QKC is a creditor and the landlord of Debtor Sears, Roebuck and Co. (the "Debtor"), with respect to that certain unexpired ground lease of non-residential real property for the purposes of space in a shopping center, being the Debtor's Store No. 2148, which is located at Queen Ka'ahumanu Center, 275 West Ka'ahumanu Avenue, Kahului, Hawaii 96732 (the "Leased Premises").

2. QKC, as Landlord, leases to Debtor, as Tenant, the above-referenced Leased Premises, pursuant to that certain Sublease, dated January 27, 1972, which was amended by First Agreement Supplementing Lease, dated February 16, 1973, First Amendment of Lease and Amendment of Reciprocal Easement Agreement, dated April 5, 1979, and Second Amendment to Sublease, dated December 16, 1980, which agreements were amended and restated as Third Amendment to and Restatement of Ground Lease, dated October 18, 1993 (the "Lease"), which Lease is subject to and modified by that certain Amended and Restated Reciprocal Easement Agreement, dated October 15, 1993, recorded at State of Hawaii Bureau of Conveyances

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Cure Notice and/or the Successful Bidder Notice, respectively.

Registrar of Conveyances, recorded on October 18, 1993, as Document Nos. 93-171353 through 93-171360, as amended by First Amendment to Amended and Restated Reciprocal Easement Agreement, dated October 23, 1999 (the "REA").  The present Lease Term of the Lease expires on October 17, 2023.  Upon information and belief, copies of the Lease and the REA are in the possession of the Debtors.

3.  The Lease is a lease "of real property in a shopping center", within the meaning of Bankruptcy Code § 365(b)(3).

4.  The Successful Bidder Notice, among other things, states that the Debtors determined that the offer submitted by Transform Holdco, LLC (together with any applicable Affiliated Designee, the "Successful Bidder" or "Buyer"), established by ESL Investments, Inc., to acquire all or substantially all of the Global Assets, was the highest or best offer for the Global Assets.

5.  The Debtors' Cure Notice, at Exhibit B, Cure Costs Schedule-Leases for Retail Stores, lists the Lease as an unexpired ground lease subject to potential assumption and assignment and alleges a cure amount of $3,245.  The Cure Notice does not appear to provide for the payment of any attorneys' fees to QKC as part of properly satisfying QKC's cure claim.

6.  The Cure Notice, in pertinent part at Paragraph 9, states:

> Adequate Assurance Information for the Buyer will be distributed to the applicable Counterparties.  The Buyer's Adequate Assurance Information is intended to provide the Counterparties to the Contracts and Leases with adequate assurance of future performance and to support the Buyer's ability to comply with the requirements of adequate assurance of future performance, including the Buyer's financial wherewithal and willingness to perform under the Contracts and Leases.

29914973.1

7. To date, upon information and belief, no Adequate Assurance Information has been distributed to QKC.

## II. OBJECTION TO ALLEGED CURE AMOUNT

8. QKC objects to the proposed cure amount for the reasons set forth below.

9. The accurate cure amount owed to QKC is not less than $183,660.29, consisting of (a) as of January 22, 2019, the balance of $174,824.31 then due and owing under the Lease, as itemized by date and nature of amount owed as set forth in the account statement attached as Exhibit A hereto, exclusive of attorneys' fees and costs, and (b) attorneys' fees and costs of $8,836.08, as incurred by QKC from and after the October 15, 2018 petition date of the Debtors' Chapter 11 cases, and through and including January 23, 2019, with respect to these proceedings; together with additional amounts accruing and/or being chargeable under the Lease, from and after January 23, 2019, and further including, without limitation, amounts that may have accrued but not yet been billed, including periodic reconciliation of certain charges, and additional attorneys' fees and costs.

10. Pursuant to Section 18.1 of the Lease, QKC is entitled to recover its attorneys' fees and costs. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of the Lease, must be paid as a condition of the assumption of the Lease. *See, e.g., Urban Retail Properties v. Lowes Cineplex Entertainment Corporation, et al.,* 2002 WL 5355479 at 152 (S.D.N.Y. April 9, 2002).

11. In order to assume the Lease, the Debtors are required to cure defaults existing under the Lease, pursuant to Bankruptcy Code §365(b)(1)(A), which provides in pertinent part that "[i]f there has been a default in an executory contract or an unexpired lease of the debtor, the

4

trustee may not assume such contract or lease, unless at the time of assumption of such contract or lease, the trustee. . .cures, or provides adequate assurance that the trustee will promptly cure, such default. . .." Id.

12.     The Debtor cannot assume the QKC Lease unless the Debtor pays to QKC the full amount of QKC's cure claim for monetary defaults under Bankruptcy Code §365 as of the date of entry of an appropriate order of this Court approving the Debtor's assumption of the Lease or other effective date of such assumption.

### III. REQUIREMENT OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE; AND REA

13.     The Debtor also cannot assume and assign the Lease unless there is adequate assurance of future performance under the Lease. Bankruptcy Code §365(b)(1)(C); *see also* Bankruptcy Code §365(f)(2).

14.     Because the Lease is a lease of real property in a shopping center, Bankruptcy Code §365(b)(3) also requires that adequate assurance of future performance includes adequate assurance:

> (A)     of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

  (B) that any percentage rent due under such lease will not decline substantially;

  (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center;

  (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

Id.

15. Additionally, the REA is neither a lease agreement nor an executory contract that is subject to assumption or rejection. Rather, the REA is a restrictive reciprocal land covenant which is a property interest running with the land, to which 11 U.S.C. §365 is inapplicable. *See Gouveia v. Tazbir*, 37 F.3d 295, 298-299 (7th Cir. 1994); *In re Three A's Holdings, LLC*, 364 B.R. 550 (Bankr. D. Del. 2007).

16. Nothing in this Limited Objection shall constitute an acknowledgement by QKC that the REA is an executory contract or unexpired lease capable of being assumed or assigned by the Debtors. QKC reserves all rights to dispute any proposed assignment or the characterization of the REA in the event the Debtors are seeking to either: (i) assign the REA in a manner that violates the terms of the REA; or (ii) modify or reject the REA.

17. Based on certain provisions in the Global Bidding Procedures and the Asset Purchase Agreement, it appears that the Debtors are proposing to transfer the Assets, including

29914973.1

the potential assumption and assignment of the Lease, subject to certain permitted encumbrances, including, e.g., easements and the like, which would appear to include the REA within such proposed continuing items.  However, to the extent the Debtors are or may be proposing otherwise, QKC objects to any potential assumption and assignment of the Lease which seeks to modify or reject the REA or otherwise render the REA inapplicable.

18.    Upon information and belief, QKC has not received any Adequate Assurance Information.  On January 23, 2019, QKC's undersigned counsel emailed with Debtors' bankruptcy counsel and requested that he be emailed any Adequate Assurance Information that has been distributed or is available for distribution, but no such Adequate Assurance Information has been received to date by the undersigned.  Therefore, QKC has not had the ability or opportunity to determine whether Successful Bidder can, in fact, satisfy the applicable legal standard for adequate assurance of future performance.  Absent satisfying the adequate assurance requirement, the Lease cannot be assigned to Successful Bidder.

19.    If the Successful Bidder cannot otherwise demonstrate that it possesses the financial and operational wherewithal or capitalization to satisfy the requirements of the QKC Lease, the Successful Bidder should minimally be required to provide (a) a guaranty of future performance from a financially capable affiliated entity; (b) a letter of credit, or (c) a cash security deposit in an amount commercially reasonable in the circumstances.

20.    Although it appears that the Successful Bidder intends to operate the Debtors' remaining stores, including the store subject to the Lease with QKC, on a going concern basis consistent with the existing use of the stores, QKC further objects to any potential change in use

of the premises as provided in the Lease which is not consented to by QKC or otherwise permitted by and consistent with the REA.

21. QKC objects to any provision or term, in the proposed Sale Order or otherwise, including, without limitation, Sale Order Paragraph 36, which might be intended to, or construed as permitting, any modifications to the Lease and/or the REA to permit any use, improvement or other activity which is not presently permitted by the Lease and/or REA, or which might be intended to permit, or construed as permitting, any suspension or limitation of Tenant's obligations to pay and perform consistent with the Lease and/or the REA.

### IV.  JOINDER

22. In addition to the foregoing, QKC joins in any objections filed by the Debtors' other landlords to the extent that such objections have a sound factual and legal basis, and address issues of cure, adequate assurance and preserving existing lease requirements, and are not inconsistent with this Limited Objection.

### V.  RESERVATION OF RIGHTS

23. This Limited Objection is also intended to apply to any proposed assumption and assignment of the QKC Lease to any entity other than the Successful Bidder, in the event that the Debtors propose the assumption and assignment of the QKC Lease to any assignee other than the Successful Bidder.

24. QKC reserves the right to supplement and/or amend this Limited Objection, including, without limitation, to add additional sums that accrue and/or become due to QKC under the QKC Lease from and after January 23, 2019, and further including amounts that may have accrued but not yet been billed, including periodic reconciliation of certain charges, and

otherwise with respect to any additional issues relating to any proposed assignee of the Lease other than the Successful Bidder.

## VI. CONCLUSION

WHEREFORE, for the foregoing reasons, QKC respectfully requests that this Court:

(A) Condition any assumption by the Debtor of the Lease upon the Debtor paying in full the aggregate cure claim of QKC as of the date of entry of any assumption order or other effective date of assumption of the QKC Lease, being not less than $183,660.29, together with any and all additions to QKC's cure claim from and after January 23, 2019, and further including, without limitation, amounts that may have accrued but not yet been billed, including periodic reconciliation of certain charges, and any additional attorneys' fees and costs incurred by QKC in this matter from and after January 23, 2019;

(B) Require that the Successful Bidder, or any other proposed assignee of the Debtor's interest in the Lease, demonstrate adequate assurance of future performance;

(C) Require that the Successful Bidder, or any other proposed assignee of the Debtor's interest in the Lease, be required to abide by the REA, without exception or modification; and

(D) Grant to QKC such other and further relief as may be just and appropriate in the circumstances.

29914973.1

HONIGMAN LLP

Attorneys for QKC Maui Owner, LLC

By: /s/ Lawrence A. Lichtman
    Lawrence A. Lichtman (MI Bar No. P35403)
    *Admitted Pro Hac Vice*
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3583
Telephone: (313) 465-7590
Facsimile: (313) 465-7591
llichtman@honigman.com

Dated: January 25, 2019

29914973.1