COZEN O'CONNOR
*Attorneys for Scents of Worth, Inc.*
Frederick E. Schmidt, Jr.
277 Park Avenue
New York, NY  10172
(212) 883-4900
(646) 588-1552 (fax)
eschmidt@cozen.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF SCENTS OF WORTH, INC. TO NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

Scents of Worth, Inc. ("**SOW**"), by its undersigned counsel, as and for its objection (the "**Objection**") to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF # 1731] (the "**Cure Notice**"), respectfully represents as follows:

**BACKGROUND**

1. On or about January 1, 2014, Kmart Corporation ("**Kmart**") and SOW entered into a *Distribution and Supply Agreement* (as thereafter amended, the "**Contract**") pursuant to which SOW would be the exclusive supplier and distributor of certain fragrances and perfume

products, on a consignment basis. Kmart and SOW had been parties to similar consignment arrangements on an ongoing basis beginning August 31, 2000.

2. SOW filed a UCC financing statement and gave written notice of the consignment and UCC filing to Wells Fargo Bank, NA, which Kmart identified in the Contract as the only creditor having a security interest in any of its inventory at the time.

3. On October 15, 2018 (the "**Petition Date**"), Sears Holdings Corporation and several of its affiliates (collectively, the "**Debtors**") filed voluntary petitions under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

4. On October 26, 2018, the Court entered an *Interim Order Approving (i) Procedures for Store Closing Sales and (ii) Assumption of Liquidation Consulting Agreement* [ECF # 337] (the "**Interim Store Closing Order**") and on November 19, 2018, the Court entered a *Final Order Approving (i) Procedures for Store Closing Sales and (ii) Assumption of Liquidation Consulting Agreement* [ECF # 823] (the "**Final Store Closing Order**" or, together with the Interim Store Closing Order, the "**Store Closing Orders**").

5. The Store Closing Orders each provided, among other things, that consignment vendors were to be paid in the ordinary course of business from the proceeds of post-petition sales of consigned goods, whether the goods were consigned pre- or post-petition. The Store Closing Orders further directed the Debtors to establish a separate, segregated account to be funded with the proceeds of consigned goods sold post-petition, to be held in trust for the benefit of consignment vendors.

6. On January 17, 2019, the Kmart Corporation filed its bankruptcy schedules [ECF # 1630] (the "**Schedules**"). In its Schedules, Kmart lists SOW with a general unsecured claim in the amount of $774,310.52.

7.  On January 18, 2019, the Debtors filed the Cure Notice, setting forth, among other things, executory contracts which may be subject to potential assumption and assignment, including what appears to be the Contract.

8.  The Cure Notice lists the "Cure Amount" in connection with the Contract to be $774,311, the approximate amount of SOW's scheduled pre-petition claim.

9.  The Cure Notice, however, fails to take into account monies that are owed from the Debtors' post-petition sales of SOW's consigned goods. Upon information and belief, the Debtors have sold approximately $1.118 million worth of SOW's consigned goods post-petition.[1]

10. While SOW assumes that the Debtors have been placing the proceeds of such post-petition sales into the segregated bank account to be held in trust for SOW per the Store Closing Orders, they have not made any payment to SOW on account of such post-petition sales.

11. The actual cure amount under the Contract therefore should take into account not only the $774,311 in scheduled pre-petition claims, but also the amount of post-petition sales of SOW consigned goods believed to be approximately $1.118 million, for a total estimated cure amount (the "**Actual Cure Amount**") of $1,862,311.

---

[1] Under the terms of the Contract, the parties agreed to a level of consigned inventory to be maintained at the Kmart stores. As of the Petition Date, the agreed upon consignment inventory level was $2.2 million, and the approximate actual consigned inventory level was approximately $2.3 million. Upon information and belief, Kmart's inventory level as of January 19, 2019 was approximately $1.182 million, representing a reduction in consignment inventory of approximately $1.118 million. In the event that Kmart permanently closes a store, Kmart is to purchase all SOW consigned inventory at that store at 80% of the retail sales price. Alternatively, Kmart may offer the goods as part of a going out of business sale, transfer the goods to other Kmart stores, or sell the goods wholesale. If 10 or more Kmart stores are closed, then the Contract requires SOW and Kmart to agree in good faith to a new inventory level consistent with the number of remaining stores. Any downward adjustment in excess of $200,000 would make the entire adjustment due and payable to SOW within 30 days of such adjustment. Given the store closings that have occurred since the Petition Date, it appears that a substantial downward adjustment of the consignment inventory level is warranted.

## OBJECTION

12. Section 365 of the Bankruptcy Code requires the Debtors' cure of all defaults under the Contract as a condition to their assumption and assignment of it. Specifically, that section provides in relevant part the "[i]f there has been a default in the executory contract or unexpired lease of the debtor, the trustee may not assume such contract unless, at the time of assumption of such contract or lease, the trustee … cures, or provides adequate assurance that the trustee will promptly cure, such default." 11 U.S.C. § 365(b)(1)(A).

13. As set forth above, the Cure Notice understates the actual amount currently due and owing under the Contract. Accordingly, SOW objects to the assumption of the Contract unless it receives the Actual Cure Amount.

## RESERVATION OF RIGHTS

14. SOW expressly reserves all rights to supplement, modify or amend this Objection and make such other and further objections to the Cure Notice or any assumption and assignment of the Contract until such time as a final order is entered approving the Actual Cure Amount with respect to the Contract. This is particularly important as SOW does not know the precise amount of SOW consigned goods that the Debtors have sold post-petition. The Actual Cure Amount, therefore, will likely deviate depending on the accuracy of SOW's estimate that Kmart sold $1.118 million in SOW consigned goods post-petition. Nothing set forth herein shall constitute a waiver, discharge or disallowance of any and all rights, claims, causes of action and defenses that SOW has asserted, or may assert, with respect to any claims, including administrative claims, against the Debtors.

**CONCLUSION**

WHEREFORE, SOW respectfully requests that the Court enter an order (i) establishing that the cure amount for the Contract is $1,862,311 or such other amount as may be determined at a hearing; and (ii) granting such other and further relief as may be just and proper.

Dated:  New York, New York
January 25, 2019

COZEN O'CONNOR
*Attorneys for Scents of Worth, Inc.*

By: */s/ Frederick E. Schmidt, Jr.*
Frederick E. Schmidt, Jr.
277 Park Avenue
New York, NY 10172
Phone: 212-883-4948
Facsimile: 646-588-1552
Email:  eschmidt@cozen.com