Hearing Date: February 4, 2019 (10:00 a.m. EST)
Objection Deadline: January 26, 2019 (4:00 p.m. EST)

**BROWN & CONNERY, LLP**
Julie F. Montgomery, Esquire (admitted *pro hac vice*)
6 North Broad Street, Suite 100
Woodbury, NJ  08096
(856) 812-8900
(856) 853-9933 FAX
jmontgomery@brownconnery.com
*Attorneys for SAP Industries, Inc., SAP America, Inc.,*
*and Concur Technologies, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, *et al.*,**[1] | Case No. 18-23538 (RDD) |
| **Debtors.** | (Jointly Administered) |
| | (Related Doc. Nos. 1730, 1731, and 1774) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE DEBTORS'**
**GLOBAL SALE TRANSACTION AND NOTICE OF CURE COSTS AND**
**POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

74Q051803

SAP Industries, Inc. ("SAP Industries") and its affiliates SAP America, Inc. ("SAP America"), and Concur Technologies, Inc. ("Concur," and collectively with SAP Industries and SAP America, "SAP") hereby file this limited objection and reservation of rights (the "Limited Objection") to the Global Sale Transaction proposed by the Debtors, see *Notice of Successful Bidder and Sale Hearing* [Doc. No. 1730], and the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases with Global Sale Transaction*, as supplemented [Doc. Nos. 1731 & 1774] (the "Cure Notice"), and state as follows:

1. SAP licenses software and other intellectual property, including and cloud materials, and provides software-related services to the Debtors pursuant to numerous contracts with integrated addendums, appendices, schedules, order forms, amendments, etc. The software and services include, but are not limited to, enterprise resource planning software licensed by SAP Industries, BusinessObjects software licensed by SAP America, and software-related intellectual property and/or services provided by Concur.

2. While SAP is not categorically opposed to assumption and assignment of any active agreements between SAP and the Debtors, SAP has concerns regarding the assumption and assignment of the agreements listed in the filed Cure Notice:

    a. The Debtors included in the Cure Notice the Master Software License and Services Agreement between Sears Holdings Management Corporation ("SHMC") and SAP Industries pursuant to which the Debtors license certain SAP ERP software. Assumption and assignment of this agreement requires SAP's consent; absent assumption and assignment, no software licensed thereunder may be transferred to the purchaser.

    b.   The asset purchase agreement filed by the Debtors proposes execution of a Transition Services Agreement between the Debtors and the purchaser. SAP objects to the use of its software and/or services for the benefit of any party other than the licensee/customer unless expressly authorized by the applicable contract.

## THE SALE MOTION AND CURE SCHEDULES

3.    At the time that the Debtors filed their bankruptcy petitions, the Debtors were parties to certain executory contracts with SAP, as is discussed further below.

4.    On November 1, 2018, the Debtors filed the *Motion for Approval of Global Bidding Procedures* [Doc. No. 429] (the "Sale Motion").

5.    Pursuant to the Sale Motion, the Debtors seek approval to enter into an asset purchase agreement with Transform Holdco LLC (the "APA"). See Exhibit B to the *Notice of Successful Bidder and Sale Hearing* [Doc. No. 1730]. Under the terms of the APA, the Debtors will identify contracts that may potentially be assumed and assigned to the purchaser, which will then have the ability to select contracts for assignment up to two business days prior to closing. (APA § 2.7(b)). Additional contracts may be assumed and assigned post-closing, presumably upon subsequent motion. (APA § 2.9).

6.    The APA also includes a provision whereby the parties thereto will execute an as-of-yet undrafted Transition Services Agreement that is reciprocal, i.e., both buyer and seller will provide and receive transition services. (APA § 8.8).

7.    On January 18, 2019, the Debtors filed the initial Cure Notice, which included the following contracts with SAP[2] that may be potentially assumed and assigned to the purchaser:

---

[2] The Cure Notice also included contracts with SAP's affiliate, Ariba, Inc. The Debtors have agreed to remove those contracts from the Cure Notice.

| No | Debtor Counterparty(s) | Counter-party Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 1792 | SEARS HOLDINGS MANAGEMENT CORPORATION | CONCUR TECHNOLOGIES INC-867262263 | SC - CONCUR TECHNOLOGIES - MASTER SOFTWARE AGREEMENT - 2009 | 9/30/2009 | 06/24/2025 | SHCLCW5873 | $92,474 |
| 1793 | SEARS HOLDINGS MANAGEMENT CORPORATION | CONCUR TECHNOLOGIES INC-867262263 | FIN-CONCUR-SOW-2015 | 2/1/2015 | 06/24/2025 | CW2295022 | $- |
| 1794 | SEARS HOLDINGS MANAGEMENT CORPORATION | CONCUR TECHNOLOGIES INC-867262263 | FIN-CONCUR-SOF 9-OCTOBER 2017 | 10/23/2017 | 10/31/2020 | CW2332790 | $- |
| 6082 | SEARS HOLDINGS MANAGEMENT CORPORATION | SAP AMERICA, INC. | SUPPORT SELECTION ADDENDUM (DIRECT) | N/A | N/A | N/A | $- |
| 6083 | SEARS HOLDINGS MANAGEMENT CORPORATION | SAP AMERICA, INC. | SOFTWARE END-USER LICENSE AGREEMENT | N/A | N/A | N/A | $- |

8. On January 24, 2019, the Debtors filed the supplement to the Cure Notice and included the following agreement with SAP:

| No | Debtor Counterparty(s) | Counter-party Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 469 | SEARS HOLDINGS MANAGEMENT CORPORATION | SAP | MASTER SOFTWARE AND LICENSE AGREEMENT | 10/28/2011 | RECURRING | | $- |

9. With the exception of the executory contracts with Concur,[3] SAP does not dispute the cure amounts listed in the Cure Notice.

10. However, as discussed more thoroughly below, the Cure Notice and proposed assumption and assignment pose certain issues that SAP seeks to resolve:

    a. The Master Software License and Services Agreement with SAP Industries may not be assumed and assigned absent SAP's consent.

    b. The executory contracts between SAP and the Debtors do not allow the use of the software and/or services for the benefit of a third party except as expressly set

---

[3] The cure amount listed for Concur is incorrect. The Debtors have agreed to revise this cure amount and to pay those amounts that come due for post-petition services prior to the sale closing in the ordinary course.

4

forth therein. Therefore, neither the Debtors nor the purchaser, as licensee, may use any SAP software and/or services for the benefit of the other except as expressly provided for under the applicable contract document.

**OBJECTIONS RELATED TO ASSUMPTION
AND ASSIGNMENT OF THE SAP CONTRACTS**

I.  **INTELLECTUAL PROPERTY LICENSED UNDER THE MASTER SOFTWARE LICENSE AND SERVICES AGREEMENT CANNOT BE ASSUMED AND ASSIGNED ABSENT SAP'S CONSENT.**

11.  On October 28, 2011, SAP Industries and SHMC entered into a "Master Software License and Services Agreement." That agreement and any and all related agreements, schedules, appendices, and amendments thereto are referred to herein as the "Industries License Agreement."

12.  Pursuant to the terms and conditions of the Industries License Agreement, SAP granted SHMC a non-exclusive, site-specific, perpetual license to use certain Software and other Proprietary Information[4] (collectively, the "Software") owned or licensed by SAP Industries.

13.  The Software licensed to SHMC under the terms of the Industries License Agreement is copyrighted pursuant to the copyright laws of the United States, 17 U.S.C. §§ 101 et seq.

14.  The Industries License Agreement prohibits SHMC from assigning or transferring any of its rights under the Industries License Agreement absent SAP's consent:

> SHMC may not, without SAP's prior written consent which will not be unreasonably withheld or delayed, assign, delegate, pledge, or otherwise transfer this Agreement, or any of its rights or obligations under this Agreement, or the SAP Proprietary Information, to any party, whether voluntarily or by operation of law, including by way of sale of assets, merger or consolidation.

---

[4] All capitalized terms not herein defined are used as defined in the Industries License Agreement.

5

Industries License Agreement ¶ 10.

15.     The Industries License Agreement provides SHMC with the non-exclusive right to use SAP's copyrighted Software through the term of the license. No rights of ownership in the Software were transferred to SHMC under the Industries License Agreement, and SAP retains ownership of the Software. See In re Patient Educ. Media, Inc., 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997).

16.     A non-exclusive license of intellectual property is an executory contract: "Bankruptcy courts have generally treated nonexclusive copyright and patent licenses as executory contracts." In re Patient Educ. Media, 210 B.R. at 241. See also In re Valley Media, Inc., 279 B.R. 105, 135 (Bankr. D. Del. 2002)("The Third Circuit follows the general rule that intellectual property licenses, including copyright licenses, are executory contracts within the meaning of 11 U.S.C. § 365(c) under the Countryman test.").

17.     Pursuant to § 365(c)(1) of the Bankruptcy Code, a debtor may not assign an executory contract if "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties" and such consent is not provided. 11 U.S.C. § 365(c)(1).

18.     Under applicable federal copyright law, a non-exclusive license of copyright rights such as the Industries License Agreement is not assignable without permission of the copyright owner. See In re Valley Media, Inc., 279 B.R. at 135-36; In re Golden Books Family Entm't, Inc., 269 B.R. at 300, 309-10 (Bankr. D. Del. 2001); In re Sunterra Corp., 361 F.3d 257, 262 n.7 (4th Cir. 2004); In re Catapult, 165 F.3d 747, 750 (9th Cir. 1999). As such, pursuant to

6

§ 365(c)(1) of the Bankruptcy Code, the Industries License Agreement may be not be assumed and assigned without the consent of SAP. See In re Patient Educ. Media, 210 B.R. at 242-243 (nonexclusive license of copyrighted material unassignable under § 365(c) absent permission of the copyright holder).

19. To date, the Debtors have neither sought nor obtained SAP's consent for assignment of the Industries License Agreement. SAP does not consent, at this time, to assumption and assignment of the Industries License Agreement to the purchaser. However, SAP will continue to work with the Debtors towards a consensual resolution of this aspect of its Limited Objection.

20. Moreover, any transfer of the Software to the purchaser without SAP's consent would be in direct contravention of the Industries License Agreement, for which the Debtors would be liable to SAP for damages. See, e.g., MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 779 (3d Cir. 1991)("Since a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee, the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license."). SAP objects to the transfer of the Software to the purchaser and to the sale or transfer of the Debtors' computer equipment, hardware, or any other equipment containing any Software unless the Industries License Agreement is assumed and assigned to the purchaser or all Software is permanently deleted from such equipment prior to transfer.

II. **NEITHER THE DEBTORS NOR THE PURCHASER MAY PROVIDE TRANSITION SERVICES TO THE OTHER IN CONTRAVENTION OF THE APPLICABLE CONTRACT DOCUMENTS.**

21. The executory contracts between the Debtors and SAP generally limit the Debtors' use of the software or services licensed or provided therein to the Debtors' own

business(es), and do not provide for use to provide a benefit to third parties. Within the contracts, there may be exceptions to this general rule limited in time and scope.

22. The APA proposes that the Debtors and the purchaser will enter into a Transition Services Agreement under which both buyer and seller will provide services to the other.

23. The Debtors cannot use the Bankruptcy Code to enlarge their contractual rights. ("'[t]he Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms.'" In re Carroll, 903 F.2d 1266, 1271 (9th Cir. 1990)(quoting In re Advent Corp., 24 B.R. 612, 614 (1st Cir. 1982)). Thus, the licensee/customer—whether the Debtors or the purchaser—is prohibited from using SAP's licensed software, intellectual property, or services to provide services to any third parties, including a purchaser, except in accordance with the applicable software license or services agreement.

24. SAP further objects to the use of its software, intellectual property, or services by the Debtors, or as applicable by the purchaser, to provide services to any third party outside of the scope of the applicable SAP contract.

## RESERVATION OF RIGHTS

25. SAP reserves all rights to object to the Sale Motion to the extent that the Debtors seek to assume and assign any contract with SAP or any of its affiliates to any purchaser or third party or to transfer any software to any purchaser or third party.

**WHEREFORE**, SAP Industries, Inc. and its affiliates respectfully request that this Court deny the Sale Motion to the extent that it seeks authority to (i) assume and assign the Industries License Agreement without SAP's consent; (ii) transfer any computer equipment or hardware that contains SAP's software or other intellectual property absent assumption and assignment of

the Industries License Agreement; (iii) allow the Debtors or the purchaser to use SAP's software or services to provide transition services to the other party beyond the scope of the applicable contract document.

**BROWN & CONNERY, LLP**

Dated: January 25, 2019

/s/ Julie F. Montgomery
Julie F. Montgomery, Esq. (admitted *pro hac vice*)
6 North Broad Street, Suite 100
Woodbury, NJ 08096
(856) 812-8900
(856) 853-9933 (fax)
jmontgomery@brownconnery.com

*Attorneys for SAP Industries, Inc., SAP America, Inc., and Concur Technologies, Inc.*