Hearing Date and Time: February 4, 2019 at 10:00 a.m. (Eastern Time)
Objection Date and Time: January 26, 2019 at 4:00 p.m. (Eastern Time)

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)

*Counsel for the Chubb Companies*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | Case No. 18-23538 |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179. The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "Additional Debtors"). The Additional Debtors each filed a motion in their respective chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

**OBJECTION OF THE CHUBB COMPANIES TO
(I) THE GLOBAL ASSET SALE TRANSACTION, AND (II) THE
ASSUMPTION AND ASSIGNMENT OF THE INSURANCE PROGRAMS**

ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Texas Pacific Indemnity, Company Chubb Custom Insurance Company, and Executive Risk Specialty Insurance Company (and, together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this objection (the "Objection") to (i) the Global Sale Asset Transaction;[2] and (ii) the assumption and assignment of the Insurance Programs (as defined herein), and in support of the Objection, the Chubb Companies respectfully state as follows:

## BACKGROUND

**A.    The Bankruptcy Case**

1.    On October 15, 2018 (the "Petition Date"), Sears Holding Corporation and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

**B.    The Global Bidding Motion**

2.    On November 1, 2018, the Debtors filed the *Debtors' Motion For Approval Of Global Bidding Procedures* [Docket No. 429] (the "Global Bidding Motion").

---

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Global Bidding Motion or the Sale Notice (each as defined herein), as applicable.

2

3. Pursuant to the Global Bidding Motion, the Debtors sought approval of certain Global Bidding Procedures through which the Debtors sought to solicit bids for some or all of the Debtors' Assets.

4. On November 16, 2018, the Court approved the Global Bidding Procedures.

**C.    The Global Asset Sale Transaction**

5. On January 18, 2019, the Debtors filed their *Notice of Successful Bidder and Sale Hearing* [Doc. No. 1730] (the "Sale Notice"), designating Transform Holdco, LLC (established by ESL Investments, Inc.) as the Buyer for the Global Assets.

6. Attached to the Sale Notice was the Asset Purchase Agreement between the Debtors and the Buyer.

7. The Asset Purchase Agreement provides that certain insurance proceeds are Acquired Assets. Specifically, the Asset Purchase Agreement provides

> subject to Section 5.1(a)(v), Section 5.1(a)(vi) and Section 9.8(c), any and all insurance proceeds, warranty proceeds, condemnation awards or other compensation in respect of loss or damage to the Business or any Acquired Asset (and any right or claim of Sellers to any such proceeds, awards or other compensation), in each case, to the extent relating to a casualty occurring prior to, on or after the date hereof, and whether received prior to, on or after Closing Date, but less any proceeds in respect of the Acquired Assets set forth on Schedule 2.1(q) in an aggregate amount not to exceed $13,000,000.

Asset Purchase Agreement at Art. 2.1(q).

8. Pursuant to this provision, the Buyer is ostensibly entitled to certain insurance proceeds, but a mechanism for transferring those proceeds to the Buyer is not delineated.

9. Further, the Asset Purchase Agreement is not clear that the Debtors' insurance policies are not Acquired Assets.

10. Also on January 18, 2019, the Debtors filed their *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases In Connection With Global Sale Transaction* [Doc. No. 1731] (the "Contracts List") which lists certain of the Debtors' Contracts and Leases that may be assumed and assigned in connection with the Global Asset Sale Transaction.

11. Numerous insurance policies that are part of the Insurance Programs (as defined below) are listed on the Contracts List as Contracts that may be assumed and assigned to the Buyer in connection with the Global Asset Sale Transaction (collectively, the "Listed Chubb Contracts").

12. Each of the Listed Chubb Contracts is associated with a $0 cure amount.

**D.    The Insurance Programs**

13. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors as named insureds.

14. Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, and Westchester Fire Insurance Company provide, *inter alia*, property, primary casualty, directors and officers, general liability, excess general liability, international casualty, workers' compensation, excess workers' compensation, excess fire, international advantage, umbrella excess, environmental, fiduciary liability, automobile liability, professional liability, construction wrap up, employment practices liability, inland marine and other insurance for

specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

15. Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Texas Pacific Indemnity, Company Chubb Custom Insurance Company, Executive Risk Specialty Insurance Company, and certain other of the Chubb Companies provide, *inter alia*, guild travel accident, boiler and machinery, fire, crime, excess crime, directors and officers, excess, export package, excess retail, fiduciary liability, general liability, property, package, fire, cargo, automobile liability, Customarq, umbrella, workers' compensation, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

16. The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

**OBJECTION**

17. The Chubb Companies file this Objection to the Global Asset Sale Transaction and the assumption and assignment of the Insurance Programs on the basis that (A) the Chubb Companies cannot determine how the Debtors propose to treat the Insurance Programs in connection with the proposed sale; (B) each of the Insurance Programs must be assumed and assigned, if at all, as a whole; (C) to the extent that the Debtors seek to assume and assign the Insurance Programs, the Insurance Programs cannot be assigned without the consent of the Chubb Companies, which consent has not been sought or given; (D) the Contracts List contains a $0 cure amount for each of the Listed Chubb Contracts, but amounts continue to accrue under the Insurance Programs and any cure amount must be evaluated at the time of assumption (*i.e.*, the closing of any Global Asset Sale Transaction); and (E) given the intent of the Debtors to transfer certain insurance proceeds to the Buyer, the Chubb Companies seek clarification that the Chubb Companies are not responsible for determining which entity, as between the Debtors and the Buyer, is entitled to coverage under the Insurance Programs.

    A.    **The Chubb Companies Cannot Determine How The Debtors Propose To Treat The Insurance Programs.**

18. The Global Bidding Motion is silent as to the treatment of the Insurance Programs in connection with the proposed Global Asset Sale Transaction. The Asset Purchase Agreement appears to provide for only the transfer of certain insurance *proceeds* to the Buyer (Asset Purchase Agreement at Art. 2.1(q)), but the Contracts List includes the Listed Chubb Contracts as Contracts that may be assumed and assigned to the Buyer.

19. Given this uncertainty, Chubb cannot determine with clarity how the Insurance Programs will be treated in connection with the Global Asset Sale Transaction, and therefore object to the proposed Global Asset Sale Transaction on this basis.

B. **Each Of The Insurance Programs And The Obligations Thereunder Are Indivisible.**

20. It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "[i]t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'"); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *Bhushan v. Loma Alta Towers Owner's Ass'n, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *see also*, *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "[a]ssumption of the

executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

21.  Accordingly, in order to be entitled to any of the benefits of the Insurance Programs, the Buyer must also remain liable for the obligations thereunder.

22.  Moreover, the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract").

23.  Accordingly, any assumption and assignment or other transfer of either of the Insurance Programs must be in its entirety, and the Chubb Companies therefore object to the Global Asset Sale Transaction and the assumption and assignment of the Insurance Programs to

8

the extent that the Buyer is permitted to pick and choose certain of the Listed Chubb Contracts pursuant to the Assumption and Assignment Procedures.[4]

      **C.**     **The Insurance Programs Cannot Be Assigned Or Otherwise Transferred Without The Prior Written Consent Of The Chubb Companies, Which Has Not Been Sought Or Given.**

24. To the extent that the Debtors seek to assign the Insurance Programs in connection with the Global Asset Sale Transaction, such assignment cannot occur without the express written consent of the Chubb Companies.

25. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

26. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's

---

[4] The Chubb Companies specifically reserve the right to contest the assignment of any individual Policy or Insurance Agreement, including any Policies providing directors and officers liability coverage, and/or any contractual indemnity policy.

consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

27. Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior, written consent of the Chubb Companies.

28. In the event that the Debtors do attempt to transfer all or any part of the Insurance Programs in connection with the Global Asset Sale Transaction, the Chubb Companies have not yet been provided with any information regarding the Buyer in order to be able to assess whether

---

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) of the Bankruptcy Code to the extent they prohibit transfer to a § 524(g) trust); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

it would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb Companies are unable, at this time, to assess whether the Buyer would satisfy those criteria.

29. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Programs, the Debtors and the assignee will be required to execute assumption agreements, in form and substance acceptable to the Chubb Companies. These agreements have not yet been negotiated, let alone executed.

30. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs in connection with the Global Asset Sale Transaction, the Chubb Companies object to any and all such assignments.

### D.     **The Proposed Cure Amount is Improper.**

31. The Debtors currently state that there is no cure amount due to the Chubb Companies on account of the Listed Chubb Contracts identified on the Contracts List that the Debtors may seek to assume and assign in connection with the Global Asset Sale Transaction.

32. However, it is important to note that as more particularly described in the Insurance Programs, the Debtors are required to pay the Obligations, and to the extent that the Insurance Programs are ultimately assumed, amounts may become due and owing under the Insurance Programs, including the Listed Chubb Contracts, either prior to or after the assumption thereof.

33. The Chubb Companies may also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations. By way of example and not limitation, additional premiums may be payable at audit under the terms of the Insurance Programs, based upon factors as they exist throughout the coverage period.

Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional premium that may become due upon completion of audit(s).

34. Accordingly, as a condition for the assignment of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Programs including, without limitation, paying the Obligations as they become due.

35. For this reason, it is improper for the Debtors to set a $0 cure amount with respect to the Listed Chubb Contracts.

### E. The Chubb Companies Are Not Required To Make Coverage Determinations Between the Debtors and the Buyer.

36. As noted above, it is not clear exactly what, if any, portions of the Insurance Programs the Debtors intend to transfer to the Buyer pursuant to the Global Asset Sale Transaction.

37. While it is improper, as discussed above, to split the Insurance Programs themselves, or to split the rights under the Insurance Programs from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Programs to the Buyer is likely to result in coverage disputes between the Buyer and the Debtors.

38. To the extent that the Chubb Companies agree to the assumption and/or assignment of the Insurance Programs in connection with the Global Asset Sale Transaction, the Chubb Companies should not be put in the position to determining, as between the Debtors and the Buyer, which entity is entitled to coverage thereunder in connection with a particular claim.

F. **Proposed Resolution of Objection.**

39. The Chubb Companies hereby request that the language set forth on **Exhibit A** hereto (the "Requested Language") be included in any Order approving the Global Sale Transaction in order to resolve this Objection.[6]

WHEREFORE, the Chubb Companies respectfully request that this Court (a) either (i) enter an Order approving the Global Asset Sale Transaction that includes the Requested Language, or (ii) deny approval the Global Asset Sale Transaction; and (b) grant such other relief as the Court deems appropriate.

Dated: January 25, 2019

Respectfully submitted,

DUANE MORRIS LLP

/s/ Wendy M. Simkulak
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)

and

Catherine B. Heitzenrater, Esq. (PA 205597)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)

*Counsel for the Chubb Companies*

---

[6] The language proposed in Exhibit A has previously been provided to the Debtors.