**BROWN RUDNICK LLP**
Andrew P. Strehle
One Financial Center
Boston, MA 02111
Telephone:     (617) 856-8200
Facsimile:      (617) 856-8201

Gerard T. Cicero
Seven Times Square
New York, NY 10036
Telephone:     (212) 209-4800
Facsimile:      (212) 209-4801

*Counsel to Primark US Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.,* | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
---------------------------------------------------x

**PRIMARK US CORP.'S LIMITED OMNIBUS OBJECTION TO, AND RESERVATION OF RIGHTS RESPECTING: (1) APPROVAL OF DEBTORS' PROPOSED GLOBAL ASSET SALE TRANSACTION TO TRANSFORM HOLDCO, LLC; AND (2) THE PROPOSED CURE AMOUNTS AND ADEQUATE ASSURANCE IN CONNECTION WITH THE GLOBAL ASSET SALE TRANSACTION**

Primark US Corp. ("**Primark**"), by and through its undersigned counsel, hereby submits this limited omnibus objection to, and reservation of rights respecting (the "**Limited Objection**"), the: (1) approval of the Global Asset Sale Transaction and Asset Purchase Agreement as noticed, defined and attached as an exhibit to the *Notice of Successful Bidder and Sale Hearing* (the "**Global Asset Sale Transaction**" and "**APA**", respectively) [ECF No. 1730]; and (2) the proposed Cure Costs and Adequate Assurance as provided in the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases*

*in Connection with Global Sale Transaction* (the "**Potential Assignment Notice**") [ECF No. 1731], filed by the Debtors and respectfully states as follows:

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**

1. Primark recognizes the significant contributions the Debtors and other stakeholders have made to reaching the Global Asset Sale Transaction and does not generally object to the Debtors entering into a going-concern sale of their assets. Primark's concerns are limited to protecting its contractual rights as the Debtors' tenant in two properties. Primark welcomes a going-concern sale that conclusively cures, assumes, and assigns its agreements with the Debtors to Transform Holdco, LLC ("**Buyer**"); the Global Asset Sale Transaction may very well have been intended to do just that. However, the information made publicly available to date is unclear on how the Global Asset Sale Transaction proposes to treat Primark's leases and agreements, necessitating this Limited Objection.

2. Primark is a fashion retailer with more than 360 stores throughout Europe and the United States. Founded 50 years ago, Primark offers reasonable prices to consumers of clothing, footwear, and accessories.

3. Primark and debtor Sears, Roebuck and Co. ("**Sears Roebuck**") are parties to two pre-petition lease agreements whereby Primark serves as tenant or sub-tenant, as applicable, and Sears Roebuck, serves as landlord or sub-landlord, as applicable, for properties located in Willow Grove, Pennsylvania and Braintree, Massachusetts. The relevant agreements between Primark and Sears Roebuck are the following:

- Lease dated October 17, 2014 by and between Sears, Roebuck and Co., as Landlord, and Primark US Corp., as Tenant (as the same may be amended, the "**Braintree Sublease**"), demising to Primark certain premises located in Braintree, Massachusetts and relating to Sears Store No. 1283, as amended by a First Omnibus Amendment to Leases by and between Sears, Roebuck and Co., and Primark US Corp. dated April 8, 2015 (which Omnibus Agreement the

"**Omnibus Amendment**" affects other leases) and as affected by a Non Disturbance And Attornment Agreement From Master Landlord dated 2016 (date of last signature, December 21, 2016) by and between Braintree Properties Associates Limited Partnership, Sears, Roebuck and Co., and Primark US Corp.; and

- Lease dated October 17, 2014 by and between Sears, Roebuck and Co., as Landlord, and Primark US Corp., as Tenant (as the same may be amended, the "**Willow Grove Lease**", and together with the Braintree Sublease, the "**Primark Leases**"), demising to Primark certain premises located in Willow Grove, Pennsylvania and relating to Sears Store No. 1354, as amended by the Omnibus Amendment and by a Second Amendment To Lease dated July 22, 2015 by and between Sears, Roebuck and Co. and Primark US Corp.[1]

4. On January 18, 2019, the Debtors filed their *Notice of Successful Bidder and Sale Hearing* (the "**Sale Notice**") [ECF No. 1730], wherein they disclosed that they are pursuing a going-concern sale of their assets to Buyer through the Global Asset Sale Transaction, executed through the APA attached to the Sale Notice. According to the Sale Notice, the executory contracts and unexpired leases that the Debtors propose to assume and assign to the Buyer under the APA were identified in the Debtors' contemporaneously filed Potential Assignment Notice.

5. The Potential Assignment Notice was filed presumably to satisfy notice requirements to non-debtor counterparties — disclosing that their contracts or unexpired leases *may* be implicated by the proposed approval of the Global Asset Sale Transaction and to provide counterparties with the opportunity to object.[2]

---

[1] The Primark Leases are voluminous and Primark believes that the Debtors are in possession of each of the documents. Primark will make the Primark Leases available to the Debtors or any party in interest upon written request.

[2] Primark understands that both the Debtors and Buyer have reserved their rights to add or subtract which executory contracts and unexpired leases are to be assumed and assigned under the APA, and that such changes may be made even after third-party's initial objection deadline to approval of the Global Asset Sale Transaction passes. *See, e.g.*, APA § 2.7(b)(ii) ("Buyer will be entitled, after consultation with the Sellers, to add (x) any Initial Assigned Agreement to the list of Excluded Assets by providing written notice thereof to Sellers . . . .").

3

6.    Unfortunately, Primark is unable to determine from the Potential Assignment Notice whether the Debtors intended to provide notice to Primark that the Primark Leases are part of the group of unexpired leases and executory contracts that may ultimately be assumed and assigned pursuant to the APA.

7.    For example, we note the following items in the Potential Assignment Notice that may be indicative of Primark's leases and contracts, but provide insufficient information for Primark to understand what the Debtors intended to be included:

- On page 235 of Exhibit A to the Potential Assignment Notice (the "Cure Costs Schedule - Executory Contracts" exhibit) the Debtors disclose in line item 5624 the following contract with "Primark US Corp." without any of the identifying detail that would have been reflected in the "Contract Title" field or other information fields.

| No | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 5624 | SEARS, ROEBUCK AND CO. | PRIMARK US CORP. | | N/A | N/A | N/A | $ - |

- On page 50 of Exhibit A to the Potential Assignment Notice (the "Cure Costs Schedule - Executory Contracts" exhibit) the Debtors disclose in line items 1198 and 1199 two contracts with "Braintree" listed as the counterparty. Braintree is the Massachusetts city in which Primark sub-leases one of the two locations from Sears Roebuck. Hence, it is unclear if these items refer to the Braintree Sublease or something else and there is no additional information in the fields to provide further clarity (other than the Debtor counter-party being Sears Holdings Corp. and not Sears Roebuck).

| No | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 1198 | SEARS HOLDINGS CORPORATION | BRAINTREE | | N/A | N/A | N/A | $ - |
| 1199 | SEARS HOLDINGS CORPORATION | BRAINTREE | | N/A | N/A | N/A | $ - |

- On page 2 of Exhibit B to the Potential Assignment Notice (the "Cure Costs Schedule - Leases for Retail Stores" exhibit) the Debtors disclose a ground lease for Sears Store No. 1283 (which is the Braintree location), a portion of which is

4

subleased to Primark, but no reference appears to be made to the Braintree Sublease.

| No. | Store Number | Obligor(s) | Counter Party Name | Contract Title | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 50 | 1283 | SEARS, ROEBUCK AND CO. | SIMON | GROUND LEASE | 01/31/2025 | S1283-1-B | $ 10,510 |

- There appears to be no specific reference to any leases in respect of Sears Store No. 1354, which is the premises partially leased to Primark under the Willow Grove Lease. Primark's understanding is that Sears Roebuck owns that property in fee, subject in part to the Willow Grove Lease.

8. If the Debtors did intend, by these inclusions to the Potential Assignment Notice or otherwise, to notify Primark that the Primark Leases are intended to be available for assignment under the APA to Buyer, then Primark requests that the Debtors clarify, with specificity, that intention. Primark's counsel contacted Debtors' counsel with that request earlier this week, but has not received a clear response.

9. To the extent that the Debtors intend to assign the Primark Leases under the APA and through the Global Asset Sale Transaction, Primark objects to the extent that the Primark Leases are not assumed and assigned *cum onere* and are not properly cured. Specifically, Primark notes and formally interposes this objection to the assumption and assignment of the Primark Leases absent the Debtors' cure or Buyer's assurance that it will cure the following defaults under the Braintree Sublease and Willow Grove Lease relating to the Debtors' repair and maintenance obligations with respect to the demised premises:[3]

- **Braintree Sublease.** Under the Braintree Sublease, Sears Roebuck is obligated to maintain and repair the roof of the demised premises. *See, e.g.*, Braintree Sublease, at §§ 1.1, 5.5, 7.1. At least two areas of the roof suffer continuing leaks

---

[3] Primark is hopeful that it, together with the Debtors and/or Buyer, can come to an agreeable "cure" or "assurance of cure" for these and other defaults in connection with any assignment of the Braintree Sublease and Willow Grove Lease.

5

      dating back at least several months and are in need of maintenance and repair.[4] Additionally, under the Braintree Sublease, Sears Roebuck is obligated to maintain and repair the heating, ventilation and air conditioning ("**HVAC**") unit serving the demised premises. *See*, *id*. The HVAC unit has been malfunctioning for a sustained period of time and the continuing malfunction results in a loud noise being emitted into Primark's retail space, disturbing both Primark's customers and staff.[5] While the Sears Roebuck's maintenance crew has periodically attempted to remedy this malfunction to the HVAC unit, no final repairs that fix the noise emission have been made.

- **Willow Grove Lease.** Under the Willow Grove Lease, Sears Roebuck is obligated to maintain and repair the loading bay area of the demised premises. *See, e.g.*, Willow Grove Lease, at §§ 1.1, 5.2, 5.5, 7.1. Primark has notified Sears Roebuck that the asphalt floor of the loading bay has deteriorated and has requested that repairs be made. Primark understands that prior to the petition date, Sears Roebuck indicated that it was obtaining quotes for the cost of repairing the asphalt floor of the loading bay, but, to date, those repairs have not been made. Primark has indicated to Sears Roebuck its willingness to fulfill its obligations under the Willow Grove Lease with respect to the requested repairs to the asphalt floor of the loading bay.

      10.    Primark is undertaking a review to determine whether there are other defects to be cured in connection with the assumption and assignment of the Primark Leases and hereby reserves its right to further object to the "cure" amounts proposed by the Debtors in respect of the Primark Leases. Primark also reserves all rights to object to the sufficiency of any adequate assurances of future performance or cure that is proposed to be delivered by the Buyer, including, without limitation, any adequate assurances in respect of Sears Roebuck's maintenance and repair obligations under the Primark Leases detailed above.

---

[4]    Primark has made the Debtors aware of their obligation to repair the roof of the Braintree property under the Braintree Sublease, and has been persistent in its requests that the Debtors fulfill their obligations to maintain and repair the roof.

[5]    Primark has also made the Debtors aware of their obligation to repair and maintain the HVAC unit serving the Braintree property under the Braintree Subease, and has been persistent in its requests that the Debtors fulfill their obligations to maintain and repair the HVAC unit.

11. Separately, and critically, Primark objects to approval of the APA, the Global Asset Sale Transaction, and the proposed Order approving such transaction, to the extent that such approval would permit the sale or assignment of Sears Roebuck's and/or the Debtors' interests in property underlying either of the Primark Leases (*i.e.*, Sears Store Nos. 1283 and 1354, or any other real property related to the Primark Leases), in fee, or in any over-lease, ground lease, master lease, or the like, without the concurrent assumption and assignment of the Primark Leases *cum onere*.

12. Primark also objects to the approval of the APA, the Global Asset Sale Transaction, and the proposed Order approving such transaction, to the extent that such approval would permit the sale or assignment of Sears Roebuck's and/or the Debtors' interests in property underlying either of the Primark Leases (*i.e.*, Sears Store Nos. 1283 and 1354, or any other real property related to the Primark Leases), in fee, or in any over-lease, ground lease, master lease, or the like, free and clear of the Primark Leases. Not only have the Debtors not met their burden under Bankruptcy Code section 365(f) with respect to Primark and Primark's interests, but such sale or assignment would effect (in fact, if not in name) a rejection of the Primark Leases. Primark reserves its rights as a tenant under Bankruptcy Code Section 365(h)(1)(A)(ii) and hereby states its intention to remain as tenant under the Primark Leases, without regard to any legal or de facto rejection of the Primark Leases, pursuant to Bankruptcy Code Section 365(h)(1)(A)(ii).

## RESERVATION OF RIGHTS

13. Primark reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, supplement or withdraw this Limited Objection, to seek discovery, and to raise additional objections during or prior to the hearing.

## CONCLUSION

**WHEREFORE**, Primark respectfully requests that the Court deny the approval of the APA and the Global Asset Sale Transaction to the extent they are inconsistent with the points raised herein, or otherwise modify the order approving the Global Asset Sale Transaction in a manner consistent with the points raised herein; and (2) grant Primark such other or further relief as the Court deems just and proper.

Dated:  January 25, 2019

**BROWN RUDNICK LLP**

/s/ Andrew P. Strehle
Andrew P. Strehle
One Financial Center
Boston, MA 02111
Telephone:(617) 856-8200
Facsimile:  (617) 856-8201

Gerard T. Cicero
Seven Times Square
New York, NY 10036
Telephone:(212) 209-4800
Facsimile:  (212) 209-4801

*Counsel to Primark US Corp.*