**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Jeffrey Rhodes (*admitted pro hac vice*)
Evan J. Zucker

*Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo*
*Limited Partnership; Cansan Company, LLC; Fairsan*
*Company LLC; Floreff LLC; Fundamentals Co LLC;*
*Hareff LLC; Hillsborough Associates; Pasan Trust;*
*Mantkin LLC; Musue LLC; Nathan Alison LLC;*
*Sugencole LLC; Sugengran LLC; and Sugensteve LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

In re:                                              :     **Chapter 11**
                                                    :
**SEARS HOLDINGS CORPORATION, *et al.*,**            :     **Case No. 18-23538 (RDD)**
                                                    :
         Debtors.[1]                                 :     **(Jointly Administered)**
                                                    :
----------------------------------------------------------------- x

## OBJECTION AND RESERVATION OF RIGHTS OF THE KIN LANDLORDS WITH RESPECT TO PROPOSED GLOBAL ASSET SALE TRANSACTION AND NOTICE OF CURE AMOUNTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Kin Properties, Inc. ("Kin Properties") and Aleff LLC; Arcolo Limited Partnership; Cansan Company, LLC; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Mantkin LLC; Musue LLC; Nathan Alison LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC (collectively, and together with Kin Properties, the "Kin Landlords") hereby file this objection and reservation of rights (the "Objection") with respect to (i) the Global Asset Sale Transaction as described in the Debtors' *Notice of Successful Bidder and Sale Hearing* (the "Sale Transaction Notice") [ECF No. 1730] and (ii) the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transactions* [Docket No. 1731] (the "Potential Cure Notice"). In support of this Objection, the Kin Landlords respectfully state as follows:[2]

## BACKGROUND

1.    Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    The Kin Landlords are the owners or managing agents for the owners of numerous single-tenant (and some multi-tenant) retail and industrial properties located throughout the United States and in Canada. Pursuant to leases (each a "Kin Lease" and together the "Kin Leases"), one or more of the Debtors lease or occupy real property in which one or more of the Kin Landlords hold interests for the following locations (also identified on Exhibit A hereto) (the "Premises"):

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Potential Cure Notice or Sale Transaction Notice and exhibits thereto, as applicable.

a.      236 N. Central Ave., Glendale, California and designated by the Debtors as Store Number 1088 (the "<u>Glendale Property</u>");

b.      436 Main Street, Hackensack, New Jersey and designated by the Debtors as Store Number 1094 (the "<u>Hackensack Property</u>");

c.      803 Male Road, Wind Gap, Pennsylvania and designated by the Debtors as Store Number 3949 (the "<u>Wind Gap Property</u>");[3]

d.      660 West Winton Avenue, Hayward, California and designated by the Debtors as Store Number 1248 (the "<u>Hayward Property</u>");

e.      1820 East Race Street, Allentown, Pennsylvania and designated by the Debtors as Store Number 8744 (the "<u>Allentown Property</u>");

f.      One Kresge Road, Falls Township, Morrisville/Fairless Hills, Pennsylvania and designated by the Debtors as Store Number 8275 (the "<u>Fairless Hills Property</u>");

g.      1502 South Fourth Street, Allentown, Pennsylvania and designated by the Debtors as Store Number 3361 (the "<u>South Fourth St. Property</u>");

h.      1600 Boudrea Road, Manteno, Illinois and designated by the Debtors as Store Number 440 (the "<u>Manteno Property</u>"); and

i.      7701/7705 Broadview Road, Seven Hills, Ohio and designated by the Debtors as Store Number 3013 (the "<u>Seven Hills Property</u>").

The Kin Leases were, as of the Petition Date, and continue to be, unexpired leases of non-residential real property.[4]

3.      On January 18, 2019, the Debtors filed the (a) Sale Transaction Notice, attaching the executed asset purchase agreement between the Debtors and Transform Holdco, LLC, an affiliate of ESL Investments, Inc. ("<u>Buyer</u>"), dated January 17, 2019 (the "<u>Asset Purchase Agreement</u>") and (b) the Potential Cure Notice. These notices fixed January 26, 2019 at 4:00 p.m.

---

[3] The Wind Gap Property is leased by the fee owner, Gustine Wind Gap Associates II Ltd. to Kmart Corporation. The Kin Landlord for this property has a mortgage interest in the Wind Gap Property that will spring into a fee interest in the Wind Gap Property upon the maturity of its mortgage.

[4] An affiliate of the Kin Landlords, Cansan Company LLC, and Debtor Kmart Corporation are parties to a lease with respect to former store number 8274 located in Canton Michigan. Prior to the Petition Date, Kmart Corporation assigned its interest under the lease to W.F. Whelan Co. Kmart Corporation continues to remain obligated for lease obligations under the lease.

-3-

as the deadline for objections to the Global Asset Sale Transaction and proposed assumption and assignment of Contracts and Leases (the "Objection Deadline").

4.      The Potential Cure Notice purports to identify, *inter alia*, "[e]ach of the Leases related to the Retail Stores included in the Successful Bid that may be assumed and assigned in connection with the Global Asset Sale Transaction and the Debtors' calculation of the Cure Costs with respect thereto. . . ." Potential Cure Notice at ¶ 6.  The Potential Cure Notice further states that at the time of its filing, the Buyer has not designated any contracts or leases for assumption and assignment to the Buyer, and advises counterparties that "[y]ou will receive an additional notice informing you if your Contract or Lease is designed for assumption or assignment to the Buyer." *Id*. at ¶ 14.  The Debtors further state in the Potential Cure Notice that they will file a supplemental notice for any additional contracts or leases that the Buyer may designate. *Id* at ¶ 6.[5]

5.      As of the date hereof, the Kin Landlords have not been served with any notice designating any of the Kin Leases for assumption and assignment.  According to the terms of the Potential Cure Notice, it appears that the earliest date on which such notices will be served is February 1, 2019, the last business day prior to the hearing scheduled for February 4, 2019 on the

---

[5] Under the Asset Purchase Agreement, the Buyer may further designate certain additional Contracts and Leases at any time prior to the date that is sixty days after the Closing Date, but in no event later than May 3, 2019.  Potential Cure Notice at ¶¶ 12 and 13.  Any additional contracts or leases designated by the Buyer does not change the Purchase Price (as defined in the Asset Purchase Agreement) except to the extent of any increase or decrease in assumed liabilities, *i.e.*, no additional consideration is given for any additional contract or lease.  Asset Purchase Agreement at ¶¶ 2.7(b)(ii) and 2.9.  Similarly, the Buyer may, at any time prior to the second Business Day prior to the Closing Date, remove Contracts and Leases identified as Initial Assigned Agreements by designating them as Excluded Assets, and such designation likewise has no effect on the Purchase Price (except to the extent of any decrease in the assumption of Assumed Liabilities).  Asset Purchase Agreement at ¶¶ 2.7(b)(ii).

proposed Global Asset Sale Transaction, and approximately one week after the Objection Deadline.[6]

6.      The Potential Cure Notice appears to identify four Kin Leases as being potentially subject to assumption and assignment to the Buyer: (i) the Glendale Property (Store No. 1088), (ii) the Hackensack Property (Store No. 1094), (iii) the Wind Gap Property (Store No. 3939) and (iv) the Hayward Property (Store No. 1248).   The Potential Cure Notice also identifies an undated settlement agreement between Kmart Corporation and Kin Properties (the "Settlement Agreement") as a Contract that may be designated for assumption and assignment in connection with the Global Asset Sale Transaction.   The Settlement Agreement relates to both the Manteno Property and the Fairless Hills Property, which properties are not listed in the Potential Sale Notice, but are identified in the Supplemental Notice filed by the Debtors as described below.

7.      On January 24, 2019, the Debtors served their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction* [Docket No. 1774] (the "Supplemental Notice"), identifying additional contracts and leases that might be assumed and assigned in connection with the Global Asset Sale Transaction, and setting January 31, 2019 at 4:00 p.m. as the deadline for filing cure and adequate assurance objections with respect to additional leases and contracts identified therein.   The Supplemental Notice identifies the following additional Kin Leases as being potentially subject to assumption and assignment to the Buyer: (i) the Allentown Property (Store No. 8744), (ii) the South Fourth Street Property (Store No. 3361), (iii) the Seven Hills Property (Store No. 3013), (iv) the Fairless Hills Property (Store No. 8275), and (v) the Manteno

---

[6] The Debtors are required to provide to the Buyer a schedule of potential Contracts and Leases to be assumed and assigned by January 25, 2019 – a date one day prior to the Objection Deadline.  *Potential Cure Notice*. at ¶ 10. Thereafter, the Buyer has five business days, until February 1, 2019, to deliver to the Debtors a list of Contracts and Leases proposed to be assumed and assigned in connection with the Global Asset Sale Transaction.  *Id*. at ¶ 11.

Property (Store No. 440).  The Kin Landlords intend to file, no later than the applicable deadline, a separate objection to the potential assumption and assignment of these additional Kin Leases.

## OBJECTION AND RESERVATION OF RIGHTS

8.      Although the Potential Cure Notice identifies certain agreements with Kin Properties that may potentially be designated for assumption and assignment to the Buyer, no such designation has occurred as of the filing date of this Objection.  Furthermore, under the terms of the Global Asset Sale Transaction and as set forth in the Potential Cure Notice, Buyer may seek to designate additional Contracts and Leases, including through the exercise of Designation Rights, at any time prior to the date that is sixty days after the Closing Date, but in no event later than May 3, 2019.  Asset Purchase Agreement at ¶¶ 2.7 and 2.9; Potential Cure Notice at ¶¶ 12 and 13.  Accordingly, because each of the Kin Leases are subject to potential assumption and assignment after the Objection Deadline, each of the Kin Landlords hereby submit this preliminary Objection and expressly reserve all of their respective rights regarding each of the Kin Leases, including without limitation the right to file further objections to the proposed assumption and assignment of such leases, in response to any subsequent assumption and assignment notice, including without limitation the Supplemental Notice.

## I.      OBJECTION TO PROPOSED CURE AMOUNTS

9.      In order to assume and assign the Kin Leases and Settlement Agreement, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the Kin Leases and Settlement Agreement.  11 U.S.C. § 365(b)(1)(A).  With respect to the Kin Leases this includes, without limitation, any and all defaults with respect to insurance requirements under the Kin Leases, real estate taxes and other charges (accrued or otherwise), amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer

services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Kin Leases that remain undetermined as of the date hereof (the "Unliquidated Obligations").  Thus, for example, the Debtors are not entitled to assume the Kin Leases by merely curing arrearages in rent.  Instead, the Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Kin Leases, including, without limitation, their current and future obligations to maintain the Premises and make repairs and replacements, as a condition to the assumption and assignment of the Kin Leases.  *See* 11 U.S.C. § 365(b)(1).

        10.    The Kin Landlords object to the extent the Debtors seek authorization for the sale or assignment of the Kin Leases free and clear of any liquidated cure amounts or Unliquidated Obligations under the Kin Leases, including without limitation any obligations to satisfy unbilled or accrued taxes or other charges, reconciliations, or adjustments.  Any order approving the assumption and assignment of the Kin Leases should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations under each Kin Lease shall survive, and that the assignee shall take the Kin Leases subject to all of their respective terms and undertake to satisfy all monetary and all non-monetary obligations under the Kin Leases, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Kin Leases.

        11.    Based on currently available information, the liquidated cure amounts with respect to the Kin Leases identified in the Potential Cure Notice – relating to the Glendale Property (Store No. 1088), the Hackensack Property (Store No. 1094), the Wind Gap Property (Store No. 3939)

and the Hayward Property (Store No. 1248) – are consistent with the Kin Landlords' records and appear to be correct. Such liquidated cure amounts, however, do not include any Unliquidated Obligations or other cure amounts that may become due and owing after the date hereof and prior to the time any of the applicable Kin Leases are actually assumed and assigned, or any amounts that are currently unknown or undetermined by the Kin Landlords. Additionally, the results of any inspections that the Kin Landlords have conducted or may conduct at the Premises may reveal additional cure amounts due. For example, the Kin Landlords are informed and therefore believe that there are ongoing environmental conditions affecting the Hackensack Property that may require remedial action. The Kin Landlords accordingly reserve the right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for the result of any inspections, year-end adjustments which have not yet been billed or have not yet become due under the terms of the Kin Leases, amounts that become due and owing after the date hereof and prior to the time the Kin Leases are actually assumed and assigned, or amounts that the Kin Landlords become aware of after the date hereof.

## II.    OBJECTION REGARDING ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

12.    In connection with any lease to be assumed and assigned, the Asset Purchase Agreement requires the Buyer to deliver adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code and that the Debtors are not obligated to assume and assign any lease in which the Buyer fails to satisfy the Bankruptcy Court as to adequate assurance of future performance. Asset Purchase Agreement at ¶ 2.7.

13.    Sections 365(f)(2)(B) and 365(b)(1) of the Bankruptcy Code require that adequate assurance of future performance by a proposed assignee be provided, whether or not there has

been a default under a contract or lease.  The Debtors and the Buyer have the burden of proving

adequate assurance of future performance with respect to the potential assumption and

assignment of the Kin Leases.  *In re Res. Tech. Corp.*, 624 F.3d 376, 384 (7th Cir. 2010) ("As the

party seeking to become the assignee, the Trust had the burden of proving it met the requirements

of § 365(f)."); *In re C.W. Mining Co.*, No. ADV.09-2248, 2010 WL 458914, at *9 (Bankr. D.

Utah Feb. 10, 2010) (stating the "[t]rustee has the burden to prove that the statutory requirements

for assumption and assignment have been met under §§ 365(b)(1) and (f)(2)).

14.    The Kin Landlords have not yet received adequate assurance information within

the meaning of section 365 of the Bankruptcy Code regarding the potential assumption and

assignment of the Kin Leases.  The Kin Landlords hereby reserve all rights, including the right to

amend this objection to the extent that such adequate assurance information is received, and

leaves the Debtors and any assignee to their burden of proving, *inter alia*, that the requirements

of section 365(f)(2)(B) have been satisfied with respect to any proposed assignee, including the

Buyer.

## III.    OBJECTION TO PROPOSED SALE FREE AND CLEAR OF RIGHT OF FIRST REFUSAL

15.    Fairsan Company, LLC ("Fairsan") is the owner of certain improved real property

located at One Kresge Road, Fairless Hills, PA (as defined herein, the "Fairless Hills Property").

As set forth above, Debtor Kmart Corporation, as successor-in-interest to K Mart Enterprises of

Pennsylvania, Inc. ("Kmart") leases the Fairless Hills Property from Fairsan, as successor-in-

interest to Pennsylvania Mart Properties Corp., pursuant to that certain Lease, dated as of March

20, 1975 (as supplemented and amended from time to time, the "Fairless Hills Lease").

16.    Pursuant to the terms of the Fairless Hills Lease, Fairsan and Kmart each granted

to the other mutual rights of first refusal to purchase the other's interest in the Fairless Hills

Property, on the terms and conditions set forth in that certain First Amendment to Lease dated as of March 31, 2017. True and correct copies of the First Amendment to Lease, and the corresponding Memorandum of Amendment to Lease recorded in the Recorders Office of Bucks County, PA, are attached hereto as <u>Exhibit B</u>. Pursuant to the Landlord's right of first refusal granted to Fairsan under the Fairless Hills Lease, Kmart granted Fairsan a right of first refusal to purchase Kmart's leasehold interest on the same terms and conditions contained in an arm's-length, bona fide written offer from a third party. The parties expressly agreed that the mutual rights of first refusal are continuing rights that run with the land. *See* First Amendment to Lease at ¶¶ 3(c) and 4(c). The First Amendment to Lease requires, as a condition to the exercise of the applicable party's right of first refusal, the payment of a right of first refusal fee by the exercising party, which amount is in addition to the purchase price set forth in an applicable offer. Pursuant to that certain Third Amendment to Lease dated as of February 4, 2018, the fee payable to Kmart by Fairsan upon the exercise of the Landlord's right of first refusal is $250,000.00. A true and correct copy of the Third Amendment to Lease, and the corresponding Memorandum of Third Amendment to Lease recorded in the Recorders Office of Bucks County, PA, are attached hereto as <u>Exhibit C</u>.

17.    Pursuant to the terms of the Asset Purchase Agreement, the Debtors seek to sell "Acquired Assets," including "Acquired Lease Rights," free and clear of any and all "Encumbrances," which term is defined to include, *inter alia*, rights of first refusal. *See* Asset Purchase Agreement at ¶¶ 1.1 (Definitions) and 2.1 (Purchase and Sale of the Acquired Assets).

18.    Fairsan objects to the Global Asset Sale Transaction and to any potential assumption and assignment of the Fairless Hills Lease to the extent the Debtors seek to sell such asset free and clear of Fairsan's right of first refusal.

-10-

19.     It is well settled that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens." *In re Leslie Fay Companies, Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); *see also In re Kopel*, 232 B.R. 57, 63 (Bkrtcy. E.D.N.Y. 1999) ("It is axiomatic that an executory contract generally must be assumed *cum onere*."); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits").   The law is further clear that assumption must occur "without any diminution in [debtor's] obligations or impairment of the rights of the lessor in the present or the future." *In re Texaco Inc.*, 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000).  Reformation or modification of contracts through the assumption process is strictly prohibited. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *AGV Productions, Inc. v. Metro-Goldwyn-Mayer, Inc.*, 115 F.Supp.2d 378, 391 (S.D.N.Y. 2000) ("[The debtor] could not have assumed some of the provisions of an agreement and rejected others, because under the law of bankruptcy a contract cannot be assumed in part or rejected in part"); *Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 844, 849 (S.D.N.Y. 1994) ("[U]nder Section 365 of the [Bankruptcy] Code, a debtor may not 'cherry pick' pieces of contracts it wishes to assume."); *see also In re Easthampton Sand & Gravel Co.*, 25 B.R. 193, 198 (Bankr. E.D.N.Y. 1982) ("[E]quity will not countenance debtor's exercise of § 365 to relieve itself of conditions which are clearly vested by the contracting parties as an essential part of their bargain and which do not contravene overriding federal policy).

20.     In the event the Debtors seek to assume and assign the Kin Leases, including without limitation the Fairless Hills Lease, they must assume such leases in their entirety.  Thus, the right of first refusal must necessarily survive any assumption and assignment. *See In re The IT Group, Inc.*, 302 B.R. 483, 488 (D. Del. 2003) (failure to recognize right of first refusal in

bankruptcy sale context would unjustly "usurp a cognizable property right"); *see also In re E-Z Serve Convenience Stores*, 289 B.R. 45, 49 (Bankr. M.D.N.C. 2003) (holding that where lease is assumed, right of first refusal is also assumed and stating that "[w]hen an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens.").

21.    Moreover, section 363(f) of the Bankruptcy Code does not permit the sale or assignment of the Fairless Hills Lease free and clear of the right of first refusal because, *inter alia*, none of the conditions set forth in section 363(f)(1) - (5) can be satisfied:  (1) applicable nonbankruptcy law does not permit the sale of the Fairless Hills Lease free and clear of Fairsan's right of first refusal;[7] (2) Fairsan does not consent; (3) Fairsan's right of first refusal is not a lien; (4) Fairsan's right of first refusal is not in bona fide dispute; and (5) Fairsan cannot be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its right of first refusal.[8]  Similarly, any grant of adequate protection under section 363(e) of the Bankruptcy Code, which in this context would require the realization by Fairsan of the "indubitable equivalent" of the right of first refusal, would necessarily require the prohibition of the sale free and clear of Fairsan's right of first refusal.  *See* 11 U.S.C. § 361(3).  In any event, the Court should not countenance any attempt by the Debtors or the Buyer to use section 363 to circumvent the settled principles of law under section 365 of the Bankruptcy Code that contracts and leases be assumed, if at all, *cum onere.  See generally, Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d

---

[7] *Cf. Warden v. Taylor*, 333 A.2d 992, 923 (Pa. 1975) ("It is settled that contractual rights of first refusal to purchase realty may be enforced by a decree of specific performance.").

[8] *See Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (ruling that existence of possible equitable relief meant that the holder of the interest could not be compelled to accept a money satisfaction under section 365(f)(5) of the Bankruptcy Code); *Baylake Bank v. TCGC, LLC*, 2008 WL 4525009, at *10 (E.D. Wis. Oct. 1, 2008) (holding that holder of a restrictive covenant against debtors' property could not be compelled to accept monetary compensation under section 363(f)(5) when "the restriction gives the [covenantee] a right to act that may be enforced through injunctive relief wholly apart from any monetary damages it may sustain."); *In re 523 E. Fifth St. Hous. Pres. Dev. Fund Corp.*, 79 B.R. 568, 576 (Bankr. S.D.N.Y. 1987) (holder of restrictive covenant could not be compelled to accept money satisfaction for its interest).

Cir. 2001) ("the sale of an executory contract triggers the protections afforded sales of the bankruptcy estate property but also requires satisfaction of the requirements for assuming and/or assigning the same executory contract").

22.    As explained above, as of the date hereof, Fairsan has not received notice of Kmart's designation of the Fairless Hills Lease as an asset to be assumed and assigned to Buyer or another third party, or any other notice of the potential sale of Kmart's leasehold interest in the Fairless Hills Property, and therefore Fairsan's right of first refusal has not been triggered.

23.    Moreover, the Debtors have not provided Fairsan with the notice required pursuant to the Court's *Order Approving Global Bidding Procedures and Granting Related Relief* [Docket No. 816] (the "Bidding Procedures Order").    Paragraph 51 of the Bidding Procedures Order provides as follows:

> Nothing herein shall authorize, absent further order of the Court or agreement among the Debtors and the applicable non-Debtor counterparty, the sale of any real estate rights or assets free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land.  To the extent that the Debtors or any other party seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto. All rights, remedies, and positions of all parties with respect to such relief are preserved.

24.    Fairsan hereby reserves all rights, including without limitation the right to file and serve an objection in response to any notice to assume and assign the Fairless Hills Lease or to sell the Fairless Hills Lease free and clear of the right of first refusal.  Fairsan further reserves the

right to exercise its right of first refusal, in the event it receives written notice of Kmart's designation of the Fairless Hills Lease as an asset to be assumed and assigned to Buyer or another third party, subject to the terms and conditions set forth in the Fairless Hills Lease, including payment of the $250,000.00 fee.

## **GENERAL RESERVATION OF RIGHTS**

25.    The Kin Landlords expressly reserve all of their respective rights under the Kin Leases with respect to any and all obligations of the Debtors and/or any proposed assignee as tenant, including the Kin Landlords' rights to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Premises, unsatisfied liens on the Premises created by the Debtors and/or the proposed assignee and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors and/or any proposed assignee.

26.    The Kin Landlords further reserve all rights to raise further objections, as necessary or appropriate under the circumstances, relating to the Global Asset Sale Transaction, and any proposed assumption and assignment of any Kin Leases, including without limitation any objections relating to the obligations of the Debtors and/or any proposed assignee to cure any defaults under the Kin Leases, and the ability of any proposed assignee to provide adequate assurance of future performance.

**CONCLUSION**

WHEREFORE, the Kin Landlords hereby requests that any order approving the

Global Asset Sale Transaction and assumption and assignment of any of the Kin Leases and

Settlement Agreement incorporate the objections and other relief requested herein, and that they

be granted such other or further relief as is just and appropriate under the circumstances.


Dated: New York, New York
     January 25, 2019

                        **BLANK ROME LLP**

            By:     /s/ Evan J. Zucker
                        Evan J. Zucker
                        The Chrysler Building
                        405 Lexington Avenue
                        New York, New York 10174
                        Telephone:  (212) 885-5000
                        Facsimile:  (212) 885-5001
                        Email:       EZucker@BlankRome.com

                        -and-

                        Jeffrey Rhodes (*admitted pro hac vice*)
                        1825 Eye Street NW
                        Washington, D.C. 20006
                        Telephone:  (202) 420-3150
                        Facsimile:  (202) 420-2201
                        E-mail:      JRhodes@BlankRome.com

*Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo Limited Partnership; Cansan Company, LLC; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Mantkin LLC; Musue LLC; Nathan Alison LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC*

-15-