## **EXHIBIT B**

<u>Kin Property #3439 – Fairless Hills, PA</u>

<u>Kmart #8275</u>

**FIRST AMENDMENT TO LEASE**

THIS FIRST AMENDMENT TO LEASE (the "First Amendment") is made and entered into as of the 31st day of March, 2017, by and between FAIRSAN COMPANY, LLC, a Delaware limited liability company (the "Landlord"), and KMART CORPORATION, a Michigan corporation (the "Tenant").

**W I T N E S S E T H:**

WHEREAS, Landlord (as successor-in-interest to Pennsylvania Mart Properties Corp.) and Tenant (as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc.) are parties to that certain Lease dated as of March 20, 1975, together with Lease Supplement dated as of January 5, 1977 (the "Lease"), whereby Landlord leases to Tenant, and Tenant leases from Landlord, the Leased Property, as defined in the Lease, situate in Falls Township, Bucks County, Pennsylvania, with an address of One Kresge Road, Falls Township, PA; and

WHEREAS, the parties desire to amend the Lease on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

1.  <u>Incorporation of Recitals</u>. The above recitals are true and correct and are incorporated herein as if set forth in full.

2.  <u>General Provisions</u>. All defined terms in this First Amendment shall have the same meaning as in the Lease, except as otherwise noted. Except as amended and modified by this First Amendment, all of the terms, covenants, conditions, and agreements of the Lease shall remain in full force and effect. In the event of any conflict between the provisions of the Lease and the provisions of this First Amendment, this First Amendment shall control.

3.  <u>Tenant's Right of First Refusal</u>.

    (a) Notwithstanding anything to the contrary in the Lease (as modified hereby), if, during the Term, Landlord receives an arms-length, bona fide written offer to purchase the fee simple interest in the Leased Property from a third party purchaser, and Landlord desires to accept such offer (a "Landlord Third-Party Offer"), Landlord hereby grants Tenant a right of first refusal to purchase the Leased Property on the same terms and conditions as are contained in the Landlord Third-Party Offer ("Tenant's First Refusal Right") and on the terms and conditions set forth in this Section 3. Landlord agrees to promptly notify Tenant in writing of the Landlord Third-Party Offer (including delivery of a true and exact copy of the written offer, which will be in the form of a fully executed purchase and sale agreement, with effectiveness subject to Tenant's waiver of Tenant's First Refusal Right hereunder). Tenant shall have thirty (30) days after receipt of Landlord's notice to Tenant to exercise Tenant's First Refusal Right (the "Tenant Acceptance Period"). Tenant may only elect to exercise Tenant's First Refusal Right by delivery of a written notice of its desire on or before the last day of the Tenant Acceptance Period, time being of the essence, and promptly thereafter Landlord and Tenant shall execute an agreement of purchase and sale on the same terms and conditions as set forth in the agreement of purchase and sale comprising the Landlord Third-Party Offer (without condition for the waiver of the Tenant's First Refusal Right). Landlord and Tenant shall thereafter complete said purchase according to the terms of such executed agreement of purchase and sale. To the extent any portion of the price in the Landlord Third-Party Offer is to be paid by non-cash consideration, such consideration shall be valued at the fair market value thereof as certified by an independent certified public accountant acceptable to Landlord and Tenant. If any acceptable Landlord Third-Party Offer shall include property other than the Leased Property, Tenant's First Refusal Right shall be applicable to the Leased Property alone, and the purchase price for the Leased Property shall be calculated based on proportioning the value thereof relative to the entire price offered by the third party for all of the property included in such offer, which shall be done by Landlord in a good faith and commercially equitable manner (and Landlord will provide reasonable back-up documentation supporting such value proportioning at Tenant's request).

(b) Should Tenant by written notice elect not to exercise the Tenant's First Refusal Right, or fail to timely exercise the Tenant's First Refusal Right within the Tenant Acceptance Period, time being of the essence, the same shall lapse and be deemed waived for the applicable Landlord Third-Party Offer, and Landlord shall, subject to terms of the Lease (as modified hereby), be free to consummate the sale to the third party submitting the Landlord Third-Party Offer (or its assignee or designee). Landlord and such third party submitting the Landlord Third-Party Offer (or its assignee or designee) may, subsequent to Tenant's election not to purchase or failure to exercise, modify the terms of the offer, with the exception of an any material modification to the terms of the offer, without the requirement of re-offering the Leased Property to Tenant. In the event of a "Material Modification", Landlord shall promptly provide Tenant with written notification of such modification, and Tenant shall have thirty (30) days following its receipt of Landlord's notice in which to exercise Tenant's First Refusal Right. For the purposes of this Section 3 and Section 4 below, a "Material Modification" will include any modification in the purchase price, a modification in the length of the due diligence period proposed in such offer to the extent same is more than double the length in the original offer, a modification in the closing date such that same is scheduled to occur more than double the number of days after the date that the sale contract is signed than originally scheduled, and other modifications of similar or greater import. In addition, if Landlord fails to consummate the sale pursuant to the Landlord Third-Party Offer within two hundred seventy (270) days after Tenant received the Landlord Third-Party Offer, Landlord will be required to again grant to Tenant the Tenant's First Refusal Right as provided above.

(c) If Tenant fails to or elects not to exercise the Tenant's First Refusal Right and the third party submitting the Landlord Third-Party Offer (or its assignee or designee) does not purchase the Leased Property, the Leased Property shall no longer be subject to the Tenant's First Refusal Right herein contained as to any subsequent Landlord Third-Party Offer submitted to Landlord within two hundred seventy (270) days after Tenant received notice of the initial Landlord Third-Party Offer on the same material terms set forth in the Landlord Third-Party Offer (as same may have been modified with notice to Tenant pursuant to this Section 3). Tenant's First Refusal Right is a continuing right and runs with the land and, except as expressly set forth herein, shall be applicable to transfers during the Term even if the Leased Property was previously transferred following Tenant's election not to exercise Tenant's First Refusal Right or its failure to timely exercise Tenant's First Refusal Right.

(d) In the event Landlord desires to transfer ownership of the Leased Property, or parts thereof or interests therein, to any relative or to any corporation, partnership, limited partnership, limited liability company, limited liability partnership, trust or other legal entity owned or controlled by the principals, partners, beneficiaries, trustees, or shareholders of Landlord and/or any corporation, partnership, limited partnership, limited liability company, limited liability partnership, trust, or other legal entity owned or controlled by any relative of the principals, partners, beneficiaries, trustees or shareholders of Landlord (collectively, "Landlord Affiliates"), then, in such event, the Tenant's First Refusal Right set forth herein shall not apply to such transfer, and Landlord shall be entitled to so transfer ownership of the Leased Property, or parts thereof or interests therein, and Tenant shall continue to have Tenant's First Refusal Right as hereinabove provided following such transfer.

4.  Landlord's Right of First Refusal.

(a) Notwithstanding anything to the contrary in the Lease (as modified hereby), if, during the Term, Tenant receives an arms-length, bona fide written offer to purchase the leasehold interest in the Leased Property from a third party purchaser, and Tenant desires to accept such offer (a "Tenant Third-Party Offer"), Tenant hereby grants Landlord a right of first refusal to purchase Tenant's leasehold interest in the Leased Property on the same terms and conditions as are contained in the Tenant Third-Party Offer ("Landlord's First Refusal Right") and on the terms and conditions set forth in this Section 4. Tenant agrees to promptly notify Landlord in writing of the Tenant Third-Party Offer (including delivery of a true and exact copy of the written offer, which will be in the form of a fully executed purchase and sale agreement, with effectiveness subject to Landlord's waiver of Landlord's First Refusal Right hereunder). Landlord shall have five (5) business days after receipt of Tenant's notice to Landlord to exercise Landlord's First Refusal Right (the "Landlord Acceptance Period"); provided, however, if Tenant shall become a debtor in a case filed under Title 11 of the United States Code as now constituted or hereafter amended (the "Bankruptcy Code"), or any other federal or state bankruptcy, insolvency, receivership or similar law, then the Landlord Acceptance Period shall expire on the date that is five (5) business days after the later of (i) the date that Tenant delivers the Tenant Third-Party Offer to Landlord and (ii) the date that Tenant receives unappealable court approval of the sale of Tenant's leasehold interest in the Leased Property on the terms and conditions set forth in the Tenant Third-Party Offer, as applicable (and delivers notice of same to Landlord). Landlord may only elect to exercise Landlord's First Refusal Right by delivery of a written notice of its desire on or before the last day of the Landlord Acceptance Period, time being of the essence, and promptly thereafter Landlord and Tenant shall execute an agreement of purchase and sale on the same terms and conditions as set forth in the agreement of purchase and sale comprising the

Landlord Third-Party Offer (without condition for the waiver of Landlord's First Refusal Right). Landlord and Tenant shall thereafter complete said purchase according to the terms of such executed agreement of purchase and sale. To the extent any portion of the price in the Tenant Third-Party Offer is to be paid by non-cash consideration, such consideration shall be valued at the fair market value thereof as certified by an independent certified public accountant acceptable to Landlord and Tenant. If any acceptable Tenant Third-Party Offer shall include property other than Tenant's leasehold interest in the Leased Property, Landlord's First Refusal Right shall be applicable to Tenant's leasehold interest in the Leased Property alone, and the purchase price for Tenant's leasehold interest in the Leased Property shall be calculated based on proportioning the value thereof relative to the entire price offered by the third party for all of the property included in such offer, which shall be done by Tenant in a good faith and commercially equitable manner (and Tenant will provide reasonable back-up documentation supporting such value proportioning at Landlord's request).

(b) Should Landlord by written notice elect not to exercise the Landlord's First Refusal Right, or fail to timely exercise the Landlord's First Refusal Right within the Landlord Acceptance Period, time being of the essence, the same shall lapse and be deemed waived for the applicable Tenant Third-Party Offer, and Tenant shall, subject to terms of the Lease (as modified hereby), be free to consummate the sale to the third party submitting the Tenant Third-Party Offer (or its assignee or designee). Tenant and such third party submitting the Tenant Third-Party Offer (or its assignee or designee) may, subsequent to Landlord's election not to purchase or failure to exercise, modify the terms of the offer, with the exception of a Material Modification to the terms of the offer, without the requirement of re-offering the Tenant's leasehold interest in the Leased Property to Landlord. In the event of a Material Modification, Tenant shall promptly provide Landlord with written notification of such modification, and Landlord shall have five (5) business days following its receipt of Tenant's notice in which to exercise Landlord's First Refusal Right. In addition, if Tenant fails to consummate the sale pursuant to the Tenant Third-Party Offer within two hundred seventy (270) days after Landlord received the Tenant Third-Party Offer, Tenant will be required to again grant to Landlord the Landlord's First Refusal Right as provided above.

(c) If Landlord fails to or elects not to exercise the Landlord's First Refusal Right and the third party submitting the Tenant Third-Party Offer (or its assignee or designee) does not purchase the Tenant's leasehold interest in the Leased Property, Tenant's leasehold interest in the Leased Property shall no longer be subject to the Landlord's First Refusal Right herein contained as to any subsequent Tenant Third-Party Offer submitted to Tenant within two hundred seventy (270) days after Landlord received the notice of the initial Tenant Third-Party Offer on the same material terms set forth in the Tenant Third-Party Offer (as same may have been modified with notice to Tenant pursuant to this Section 4). Landlord's First Refusal Right is a continuing right and runs with the land and the Tenant's leasehold interest created by the Lease (as modified hereby) and, except as expressly set forth herein, shall be applicable to transfers during the Term even if the Tenant's leasehold interest in the Leased Property created by the Lease (as modified hereby) was previously transferred following Landlord's election not to exercise Landlord's First Refusal Right or its failure to timely exercise Landlord's First Refusal Right.

(d) In the event Tenant desires to transfer ownership of its leasehold interest in the Leased Property, or parts thereof or interests therein, to any relative or to any corporation, partnership, limited partnership, limited liability company, limited liability partnership, trust or other legal entity owned or controlled by the principals, partners, beneficiaries, trustees, or shareholders of Tenant and/or any corporation, partnership, limited partnership, limited liability company, limited liability partnership, trust, or other legal entity owned or controlled by any relative of the principals, partners, beneficiaries, trustees or shareholders of Tenant (collectively, "Tenant Affiliates"), then, in such event, the Landlord's First Refusal Right set forth herein shall not apply to such transfer, and Tenant shall be entitled to so transfer ownership of the Leased Property, or parts thereof or interests therein, and Landlord shall continue to have Landlord's First Refusal Right as hereinabove provided following such transfer.

5. <u>Right of First Refusal Fee</u>. In the event that Tenant exercises Tenant's First Refusal Right or Landlord exercises Landlord's First Refusal Right, simultaneously with the delivery of the election to so exercise such right, as a condition to such party exercising such right, the exercising party will deliver to First American Title Insurance Company (at one of its national commercial services offices or such other of its office authorized to issue title insurance in Pennsylvania) (the "Title Company") the sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "Right of First Refusal Fee") (which will be in addition to the purchase price set forth in the applicable offer). The Right of First Refusal Fee shall be held in escrow by the Title Company pursuant to a mutually agreed upon escrow agreement (with all parties acting reasonably and in good faith) that contains the following terms and conditions:

(a) The Right of First Refusal Fee is non-refundable to the delivering party except in the event that the non-delivering party fails to execute a purchase and sale agreement with the delivering party pursuant to Section 3 or Section

4 above (a "Right of First Refusal Purchase Agreement"), as applicable, or if closing of the transaction contemplated by the Right of First Refusal Purchase Agreement does not occur due to any failure of the non-delivering party to close in accordance with the terms and conditions set forth in the Right of First Refusal Purchase Agreement for any reason other than a default by the delivering party under the Right of First Refusal Purchase Agreement, whereupon the Right of First Refusal Fee will be refunded to the delivering party.

(b)     The Title Company will pay the Right of First Refusal Fee to the non-delivering party at Closing or upon the termination of the Right of First Refusal Purchase Agreement unless the delivering party is entitled to a refund thereof pursuant to item (a) above.

(c)     Upon any demand for the Title Company to release the Right of First Refusal Fee from escrow by either party, Title Company will deliver the demand to the other party, and if, within five (5) business days after the other party's receipt of such demand from the Title Company, Title Company does not receive an objection or a conflicting demand, then Title Company will release the Right of First Refusal Fee to the demanding party. If the Title Company receives an objection to a demand for a disbursement or conflicting demands, Title Company will continue to hold the Right of First Refusal Fee in escrow until the parties resolve the dispute or Title Company, at its option, shall seek leave of a court of applicable jurisdiction to deposit the Right of First Refusal Fee with the court until the dispute is resolved.

The party that deposits the Right of First Refusal Fee will be responsible for paying the fee to hold the Right of First Refusal Fee in escrow charged by the Title Company.

6.     Memorandum of Amendment to Lease. Simultaneously with the execution and delivery of this First Amendment, Landlord and Tenant will execute and deliver a Memorandum of Amendment to Lease in the form of Exhibit "A" attached hereto and made a part hereof (the "Memorandum of Amendment to Lease"). Each of Landlord and Tenant shall be permitted, at such party's option and expense, to record the Memorandum of Amendment to Lease at any time after the date of this First Amendment (prior to the expiration or earlier termination of the Lease (as modified hereby)).

7.     Addresses for Notices and Rent Payments. Until further notice, Landlord's addresses for notices and rent payments and Tenant's address for notices pursuant to the Lease (as modified hereby) are as follows:

| | |
|---|---|
| Landlord's address for notices: | Fairsan Company, LLC<br>c/o Kin Properties Inc.<br>185 N.W. Spanish River Boulevard, Suite 100<br>Boca Raton, FL 33431<br>Attn: General Counsel |
| Landlord's address for rent payments: | Fairsan Company, LLC<br>c/o Kin Properties Inc.<br>185 N.W. Spanish River Boulevard, Suite 100<br>Boca Raton, FL 33431 |
| Tenant's address for notices: | Kmart Corporation<br>c/o Sears Holdings Management Corporation<br>3333 Beverly Road<br>Hoffman Estates, Illinois 60179<br>Attention: President – Real Estate |
| with a copy to: | Kmart Corporation<br>c/o Sears Holdings Management Corporation<br>3333 Beverly Road<br>Hoffman Estates, Illinois 60179<br>Attention: Associate General Counsel, Real Estate |

-4-

8. <u>Brokerage</u>.  Landlord and Tenant each represent and warrant one to the other that neither of them has employed any broker in connection with the negotiations of the terms of this First Amendment or the execution hereof. Landlord and Tenant hereby agree to indemnify and to hold each other harmless against any loss, expense, or liability with respect to any claims for commissions or brokerage fees arising from or out of any breach of the foregoing representation and warranty.

9. <u>Entire Agreement</u>.  The Lease, as modified by this First Amendment, sets forth the entire agreement between the Landlord and Tenant concerning the Leased Property and Tenant's use and occupancy thereof and there are no other agreements or understandings between them.

10. <u>Counterparts; Facsimile</u>.  This First Amendment may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same agreement.  This First Amendment may be executed by facsimile or e-mail signature which shall, for all purposes, serve as an original executed counterpart of this First Amendment.

[signatures on next page]

IN WITNESS WHEREOF, Landlord and Tenant have executed this First Amendment as of the day and year first above written.

**LANDLORD:**

**FAIRSAN COMPANY, LLC**, a Delaware limited liability company

By: Kinsan Management Corp., a Delaware corporation, its Manager

By: _/s/ Andrew M. Schreier_
Name: ANDREW M. SCHREIER
Its: VICE PRESIDENT


**TENANT:**
**KMART CORPORATION**, a Michigan corporation


By:_____
Name:_____
Its:_____

-6-

IN WITNESS WHEREOF, Landlord and Tenant have executed this First Amendment as of the day and year first above written.

**LANDLORD:**

**FAIRSAN COMPANY, LLC,** a Delaware limited liability company

By:     Kinsan Management Corp., a Delaware corporation, its Manager

       By:_____
       Name:_____
       Its:_____

**TENANT:**
**KMART CORPORATION**, a Michigan corporation

By: *[signature]*
Name: Michael V. Morrie
Its: CFO/DVP - Finance, Real Estate

EXHIBIT "A"

FORM MEMORANDUM OF AMENDMENT TO LEASE

<u>MEMORANDUM OF AMENDMENT TO LEASE</u>

This Document Prepared By and
Upon Recordation Return to:
Fairsan Company, LLC
c/o Kin Properties Inc.
185 N.W. Spanish River Boulevard, Suite 100
Boca Raton, FL 33431
Attention:     General Counsel

**MEMORANDUM OF AMENDMENT TO LEASE**

THIS MEMORANDUM OF AMENDMENT TO LEASE ("Memorandum") is made as of the ___ day of _____, 2017, by and between FAIRSAN COMPANY, LLC, a Delaware limited liability company (collectively, "Landlord"), and KMART CORPORATION, a Michigan corporation ("Tenant").

WITNESSETH:

Landlord (as successor-in-interest to Pennsylvania Mart Properties Corp.) and Tenant (as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc.) are parties to that certain Lease dated as of March 20, 1975, together with Lease Supplement dated as of January 5, 1977 (the "Lease"), whereby Landlord leases to Tenant, and Tenant leases from Landlord, the Leased Property, as defined in the Lease, situate in Falls Township, Bucks County, Pennsylvania, with an address of One Kresge Road, Falls Township, PA and more particularly described on Exhibit "A" attached hereto and made a part hereof. A Memorandum of Lease was recorded in Deed Book 2156, Page 602 in the Bucks County, PA Recorders Office on April 4, 1975.

Landlord and Tenant have entered into a First Amendment to Lease dated as of March 31, 2017 (the "First Amendment") whereby, among other things, Landlord granted to Tenant and Tenant granted to Landlord mutual rights of first refusal to purchase the other's interest in the Leased Property during the Lease Term on the terms and conditions set forth in the First Amendment. The parties confirm that the Term of the Lease has not been extended by the First Amendment.

This Memorandum is for informational purposes only and nothing contained herein shall be deemed to in any way modify or otherwise affect any of the terms and conditions of the Lease (as modified by the First Amendment), the terms of which are incorporated herein by reference. This instrument is merely a memorandum of the First Amendment and is subject to all of the terms, provisions and conditions of the Lease (as modified by the First Amendment). In the event of any inconsistency between the terms of the Lease (as modified by the First Amendment) and this instrument, the terms of the Lease (as modified by the First Amendment) shall prevail.

The rights and obligations set forth herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

This instrument may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature or acknowledgement of, or on behalf of, each party, or that the signature of all persons required to bind any party, or the acknowledgement of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this instrument to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgements of, each of the parties hereto. Any signature or acknowledgement page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgements thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgement pages.

IN WITNESS WHEREOF, the parties have executed this Memorandum of Lease as of the day and year first above written.

**LANDLORD:**

FAIRSAN COMPANY, LLC, a Delaware limited liability company

By:   Kinsan Management Corp., a Delaware corporation, its Manager

By:_____
Name: _____
Title: _____

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF PALM BEACH      )

The foregoing instrument was acknowledged before me this __ day of __ in the year 2017 by _____, _____, as _____ of Kinsan Management Corp., a Delaware corporation, on behalf of the corporation, as Manager of Fairsan Company, LLC, a Delaware limited liability company, on behalf of the limited liability company. He is personally known to me or has produced a driver's license as identification.

Notary: _____
State of Florida
My commission expires:_____

**TENANT:**

KMART CORPORATION, a Michigan corporation

By: _____
Name: _____
Title: _____

STATE OF _____ )
                          ) ss:
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this \_\_ day of \_ in the year 2017 by _____, as _____ of KMART CORPORATION, a Michigan corporation, on behalf of the corporation. She/He is personally known to me or has produced a driver's license as identification.

Notary: _____
State of _____
My commission expires:_____

-3-

EXHIBIT "A" TO MEMORANDUM OF AMENDMENT TO LEASE

LEGAL DESCRIPTION OF LEASED PROPERTY

### One Kresge Drive, Fairless Hills (Morrisville), Pennsylvania

ALL THAT CERTAIN piece or parcel of ground situate in Falls Township, Bucks County, Pennsylvania and described according to a Plan of Property of "96.218 Acres Subdivision in Penn Warner Park" made by Yerkes Associates, Inc. dated 9/23/1974, as follows, to wit:

BEGINNING at a point on the North side of Tyburn Road (120.00 feet wide) L.R. 09136, marking the Southeast corner of the subject tract; said point being the seven following courses and distances measured along the said North side line of Tyburn Road from the end of a radius round corner, having a radius of 75.00 feet on the West side of Newbold Road (100.00 feet wide): (1) South 66 degrees 08 minutes 53 seconds West 770.10 feet to a point of curve; (2) on a line curving to the right with a radius of 153.43 feet, the arc distance of 52.09 feet to a point of tangent; (3) South 85 degrees 34 minutes West 98.48 feet to a point; (4) South 04 degrees 26 minutes East 10.00 feet to a point; (5) South 85 degrees 34 minutes West 200.00 feet to a point; (6) South 04 degrees 26 minutes East 10.00 feet to a point; (7) South 85 degrees 34 minutes West 224.75 feet to said beginning point; thence from said beginning point along the North side line of said Tyburn Road, the two following courses and distances: (1) South 85 degrees 34 minutes West 2139.49 feet to a point of curve; (2) on a line curving to the right with a radius of 3009.55 feet, the arc distance of 352.31 feet to a point; thence partly by lands now or late of Chester Glenn and Thomas R. Owens, partly by land now or late of Marie Pellegrinni the three following courses and distances: (1) North 00 degrees 06 minutes West 107.32 feet to a point; (2) South 87 degrees 14 minutes West 160.00 feet to a point; (3) North 18 degrees 25 minutes West 905.94 feet to a point; thence by land now or late of Casper Beffert, North 44 degrees 53 minutes 57 seconds West 642.28 feet to a point; thence by other land now or late of Warner Company, of which this is a part, the following five courses and distances: (1) North 85 degrees 34 minutes East, partly along the South side line of a proposed road (60.00 feet wide) 3173.56 feet to a point of radius round corner at the intersection of another proposed road (60.00 feet wide); (2) on a line curving to the right with a radius of 45.00 feet, the arc distance of 70.69 feet to a point of tangent; (3) South 04 degrees 26 minutes East, along the West side line of a proposed road (60.00 feet wide) 871.21 feet to a point; (4) thence crossing said proposed road, North 85 degrees 34 minutes East 60.00 feet to a point; (5) South 04 degrees 26 minutes East 583.79 feet to the place of beginning.

CONTAINING 96.218 acres be the same more or less.

BEING COUNTY PARCEL NUMBERS 13-28-62-1 and 13-28-58-1

BEING the same premises which Pennsylvania Mart Limited Partnership by Deed dated 1/23/1998 and recorded in Bucks County in Land Record Book 1540 page 1959 conveyed unto Chester KM Penn LLC, a Delaware limited liabilty company in fee.

*#3939 Fairless Hills, PA*
*Lease - KMart*

# BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania   18901
### (215) 348-6209

Instrument Number - 2017023244
Recorded On 4/24/2017 At 12:25:09 PM                               * Total Pages - 5
* Instrument Type - DEED AGREEMENT - NO PROPERTY TRANSFER
Invoice Number - 867177              User - KGB
* Grantor - FAIRSAN CO L L C
* Grantee - KMART CORP
* Customer - KIN PROPERTIES INC
* FEES
   RECORDING FEES           $76.00
   TOTAL PAID               $76.00

|  |
|---|
| Bucks County UPI Certification On April 24, 2017 By TF |

| This is a certification page |
|---|
| **DO NOT DETACH** |
| This page is now part of this legal document. |

**RETURN DOCUMENT TO:**
KIN PROPERTIES INC

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

12E2EF

This Document Prepared By and
Upon Recordation Return to:
Fairsan Company, LLC
c/o Kin Properties Inc.
185 N.W. Spanish River Boulevard, Suite 100
Boca Raton, FL 33431
Attention:     General Counsel

## MEMORANDUM OF AMENDMENT TO LEASE

THIS MEMORANDUM OF AMENDMENT TO LEASE ("Memorandum") is made as of the 31st day of March, 2017, by and between FAIRSAN COMPANY, LLC, a Delaware limited liability company (collectively, "Landlord"), and KMART CORPORATION, a Michigan corporation ("Tenant").

### WITNESSETH:

Landlord (as successor-in-interest to Pennsylvania Mart Properties Corp.) and Tenant (as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc.) are parties to that certain Lease dated as of March 20, 1975, together with Lease Supplement dated as of January 5, 1977 (the "Lease"), whereby Landlord leases to Tenant, and Tenant leases from Landlord, the Leased Property, as defined in the Lease, situate in Falls Township, Bucks County, Pennsylvania, with an address of One Kresge Road, Falls Township, PA and more particularly described on Exhibit "A" attached hereto and made a part hereof. A Memorandum of Lease was recorded in Deed Book 2156, Page 602 in the Bucks County, PA Recorders Office on April 4, 1975.

Landlord and Tenant have entered into a First Amendment to Lease dated as of March 31, 2017 (the "First Amendment") whereby, among other things, Landlord granted to Tenant and Tenant granted to Landlord mutual rights of first refusal to purchase the other's interest in the Leased Property during the Lease Term on the terms and conditions set forth in the First Amendment. The parties confirm that the Term of the Lease has not been extended by the First Amendment.

This Memorandum is for informational purposes only and nothing contained herein shall be deemed to in any way modify or otherwise affect any of the terms and conditions of the Lease (as modified by the First Amendment), the terms of which are incorporated herein by reference. This instrument is merely a memorandum of the First Amendment and is subject to all of the terms, provisions and conditions of the Lease (as modified by the First Amendment). In the event of any inconsistency between the terms of the Lease (as modified by the First Amendment) and this instrument, the terms of the Lease (as modified by the First Amendment) shall prevail.

The rights and obligations set forth herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

This instrument may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature or acknowledgement of, or on behalf of, each party, or that the signature of all persons required to bind any party, or the acknowledgement of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this instrument to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgements of, each of the parties hereto. Any signature or acknowledgement page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgements thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgement pages.

**IN WITNESS WHEREOF**, the parties have executed this Memorandum of Lease as of the day and year first above written.

**LANDLORD:**

FAIRSAN COMPANY, LLC, a Delaware limited liability company

By:   Kinsan Management Corp., a Delaware
      corporation, its Manager

By: _____
Name:   ANDREW M. SCHREIER
Title:      VICE PRESIDENT

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF PALM BEACH      )

The foregoing instrument was acknowledged before me this 31st day of March in the year 2017 by Andrew M. Schreier, as Vice President of Kinsan Management Corp., a Delaware corporation, on behalf of the corporation, as Manager of Fairsan Company, LLC, a Delaware limited liability company, on behalf of the limited liability company. He is personally known to me or has produced a driver's license as identification.

Notary: _____
State of Florida  Connie M. Lambert
My commission expires: 10-06-2020



**TENANT:**

KMART CORPORATION, a Michigan corporation

By: _____
Name: _Michael V. Morrie_
Title: _CFO/ DVP - Finance, Real Estate_

STATE OF _Illinois_    )
                      ) ss:
COUNTY OF _Cook_       )

The foregoing instrument was acknowledged before me this _31_ day of _March_ in the year 2017 by _Michael V. Morrie_, as _CFO/DVP - Finance, Real Estate_ of KMART CORPORATION, a Michigan corporation, on behalf of the corporation. She/He is personally known to me or has produced a driver's license as identification.

Notary: _____
State of _Illinois_   County: _Cook_
My commission expires: _5/5/2017_
Name: Paula M. Sabino

"OFFICIAL SEAL"
Paula M Sabino
Notary Public, State of Illinois
My Commission Expires 5/5/2017

EXHIBIT "A" TO MEMORANDUM OF AMENDMENT TO LEASE

LEGAL DESCRIPTION OF LEASED PROPERTY

### One Kresge Drive, Fairless Hills (Morrisville), Pennsylvania

ALL THAT CERTAIN piece or parcel of ground situate in Falls Township, Bucks County, Pennsylvania and described according to a Plan of Property of "96.218 Acres Subdivision in Penn Warner Park" made by Yerkes Associates, Inc. dated 9/23/1974, as follows, to wit:

BEGINNING at a point on the North side of Tyburn Road (120.00 feet wide) L.R. 09136, marking the Southeast corner of the subject tract; said point being the seven following courses and distances measured along the said North side line of Tyburn Road from the end of a radius round corner, having a radius of 75.00 feet on the West side of Newbold Road (100.00 feet wide): (1) South 66 degrees 08 minutes 53 seconds West 770.10 feet to a point of curve; (2) on a line curving to the right with a radius of 153.43 feet, the arc distance of 52.09 feet to a point of tangent; (3) South 85 degrees 34 minutes West 98.48 feet to a point; (4) South 04 degrees 26 minutes East 10.00 feet to a point; (5) South 85 degrees 34 minutes West 200.00 feet to a point; (6) South 04 degrees 26 minutes East 10.00 feet to a point; (7) South 85 degrees 34 minutes West 224.75 feet to said beginning point; thence from said beginning point along the North side line of said Tyburn Road, the two following courses and distances: (1) South 85 degrees 34 minutes West 2139.49 feet to a point of curve; (2) on a line curving to the right with a radius of 3009.55 feet, the arc distance of 352.31 feet to a point; thence partly by lands now or late of Chester Glenn and Thomas R. Owens, partly by land now or late of Marie Pellegrinni the three following courses and distances: (1) North 00 degrees 06 minutes West 107.32 feet to a point; (2) South 87 degrees 14 minutes West 160.00 feet to a point; (3) North 18 degrees 25 minutes West 905.94 feet to a point; thence by land now or late of Casper Beffert, North 44 degrees 53 minutes 57 seconds West 642.28 feet to a point; thence by other land now or late of Warner Company, of which this is a part, the following five courses and distances: (1) North 85 degrees 34 minutes East, partly along the South side line of a proposed road (60.00 feet wide) 3173.56 feet to a point of radius round corner at the intersection of another proposed road (60.00 feet wide); (2) on a line curving to the right with a radius of 45.00 feet, the arc distance of 70.69 feet to a point of tangent; (3) South 04 degrees 26 minutes East, along the West side line of a proposed road (60.00 feet wide) 871.21 feet to a point; (4) thence crossing said proposed road, North 85 degrees 34 minutes East 60.00 feet to a point; (5) South 04 degrees 26 minutes East 583.79 feet to the place of beginning.

CONTAINING 96.218 acres be the same more or less.

BEING COUNTY PARCEL NUMBERS 13-28-62-1 and 13-28-58-1

BEING the same premises which Pennsylvania Mart Limited Partnership by Deed dated 1/23/1998 and recorded in Bucks County in Land Record Book 1540 page 1959 conveyed unto Chester KM Penn LLC, a Delaware limited liabilty company in fee.