Robert M. Carson, Esq.
(Admitted *pro hac vice*)
Robert A. Weisberg, Esq.
(Admitted *pro hac vice*)
**CARSON FISCHER, P.L.C.**
4111 Andover Rd., West – 2nd Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832
Email: RCarson@CarsonFischer.com
        RWeisberg@CarsonFischer.com

*Counsel for Forbes/Cohen Florida Properties, L.P.*

Hearing Date: February 4, 2019 at 10:00 a.m.
Objection Deadline: January 26, 2019 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x
In re:                                                           )   Chapter 11
                                                                 )
**SEARS HOLDINGS CORPORATION,** *et al.*,                        )   Case No. 18-23538-RDD
                                                                 )
                        Debtors.[1]                              )   *Jointly Administered*
------------------------------------------------------------------- x

**OBJECTION OF FORBES/COHEN FLORIDA PROPERTIES, L.P. TO (I) THE PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASE IN CONNECTION WITH THE GLOBAL ASSET SALE TRANSACTION; (II) GLOBAL ASSET SALE TRANSACTION; AND (III) RESERVATION OF RIGHTS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

Forbes/Cohen Florida Properties, L.P. ("Forbes"), by its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") with regard to (i) Debtors' proposed assumption and assignment of lease in connection with the Global Sale Transaction, (ii) *Notice Of Cure Costs And Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases In Connection With Global Sale Transaction* [Docket No. 1731], and (iii) the Global Sale Transaction. In support of this Objection, Forbes respectfully states as follows:

## I.    BACKGROUND

1. On October 15, 2018 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (this "Court").

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### A.    The Parties And Their Relationship

3. The Gardens Mall is a highly regarded first-class enclosed mall, located on the PGA Corridor in the City of Palm Beach Gardens ("The Gardens Mall"). There are over 150 stores in The Gardens Mall, five of which, including Debtor Sears, Roebuck and Co. ("Sears"), are anchor or "Major" tenants.

4. Forbes developed and manages The Gardens Mall pursuant to planned unit development ("PUD") regulations and related ordinances

5. Forbes is itself a tenant at The Gardens Mall under a master land lease executed by it and the MacArthur Liquidating Trust in 1984 ("Land Lease").

2

6. Sears is a tenant under what is actually, therefore, a sublease between Sears and Forbes executed in 1987 (the "Sears Lease").  **Exhibit A**.

7. Sears occupies an anchor store location at The Gardens Mall ("Demised Premises") described as "…a portion of the Shopping Center Parcel consisting of approximately 10.6 acres as more particularly described on Exhibit "B" [to the Sears Lease]." **Exhibit A**, Sears Lease, p. 1. The Sears building is comprised of approximately 148,638 square feet on two levels in The Gardens Mall (the "Sears Building").

8. In addition to the Sears Lease, Sears' use of the Demised Premises and the Sears Building is subject to many restrictions and obligations as contained in, minimally, the following related documents:

    A.    *Construction, Operation and Reciprocal Easement Agreement* dated May 29, 1987, as amended ("REA");

    B.    *Supplemental Agreement* dated May 29, 1987, as amended ("Supplemental Agreement");

    C.    the Land Lease; and

    D.    rules, laws, ordinances and provisions, including, but not limited to, the duly enacted Palm Beach Gardens PUD passed through resolution on November 15, 1984 and later amended which governs the development of The Gardens Mall.

All of the forgoing, including the Sears Lease shall be collectively referred to as the "Governing Documents"). The Governing Documents govern and control Sears use and occupancy including, but not limited to, use of leased premises in The Garden Mall by tenants and "Major" anchor tenants, signage, architectural designs, mall standards, operations, maintenance, repair, alterations

and additions to The Gardens Mall, lease and sublease terms, and rights and obligations of tenants, *etc*.

### B.    The Sears Lease

9.    The Sears Lease had an initial "term" of 30 years, through and ending on October 31, 2018. **Exhibit A**, Sears Lease, p. 3, §3(a).

10.    The Sears Lease provided Sears with conditional options to extend, which options are explicitly only available "[p]rovided Tenant shall not be in material default at the time of the exercise of such right or the commencement of such period and shall then be **operating the Demised Premises** for retail purposes…." **Exhibit A**, Sears Lease, p. 4, §3(b)(emphasis added).

11.    The Sears Lease also provides Forbes with a right of first offer/refusal in the event of any proposed assignment of the Sears Lease or subletting of all or substantially all of the Demised Premises (the "ROFR"). **Exhibit A**, Sears Lease, p. 15, §12(c).

12.    Sears failed to provide Forbes an opportunity to exercise its rights under the ROFR in breach of the Sears Lease which should make any purported transfer ineffective. **Exhibit A**, Sears Lease, p. 15, §11(c).

### C.    Sears Pursues "Mini-Mall" And Dick's Sublease In Violation Of Governing Documents

13.    Without any advance notice to Forbes, in 2012 Sears commenced a program to chop up and sublease space within the second floor of the Sears Building, apparently attempting to become a competitive landlord to Forbes and create a mini-mall and falsely representing in marketing materials that it could expand its space within and outside of the second floor of the Sears Building.

14.    In a letter dated July 30, 2012, Forbes advised Sears that Sears' "mini-mall" proposal may violate the rights of other occupants of The Gardens Mall and that Forbes "will not

4

consent to any proposal that is not fully in compliance with all applicable restrictions and fully satisfies all of Tenant's [Sears] obligations." **Exhibit B**, Forbes' letter to Sears, dated July 30, 2012.

15. In addition, and presumably in a further attempt to salvage its failing retail operations, Sears subleased a large portion of the Sears Building (approximately 67,449 square feet of space) to another retailer, Dick's, a national sporting goods retailer. Sears signed a sublease with Dick's (the "Dick's Sublease"[2]). Notwithstanding the ability to sublease its premises without Forbes consent, Sears must still comply with the Sears Lease and the other Governing Documents.

16. Sears has admitted that the Dick's Sublease has been fully executed, is effective, and has taken steps to enforce and implement its provisions. Sears has further turned over legal right to possession, but not physical possession, to that portion of the Demised Premises to Dick's who is taking actions in furtherance of the Dick's Sublease.

17. The Dick's Sublease, and consistent with Sears prior statement of its intent in other court proceedings, is in violation of the Governing Documents and constitutes breaches of the Governing Documents.

18. Responding to Sears actions, Forbes made clear that "it does not seek to prevent your client [Sears] from exercising its rights in a fully compliant transaction," and that "finally and so that there should be no misunderstanding, my client [Forbes] does not and will not insist upon any activity or restriction beyond that applicable under the written agreements between the parties, including the conditions and restrictions referred to therein and required by law. My client [Forbes]

---

[2] The Dick's Sublease was not in the Debtors' sale data room and Forbes only copy of the Dick's Sublease is subject to the terms of a Protective Ordered entered in the 2014 Case and, therefore, is not being attached to this Objection but could be made available for in camera review, if so ordered, or if Sears waives the protections provided by the Protective Order.

5

is under no obligation to do anything in regard to a potential but not fully described transaction, but has every right to exercise its rights and insist that your client live up to the standards and obligations under the applicable agreements between the parties." **Exhibit C**, Forbes' letter dated June 3, 2014, p. 1-2.

19. In pursuit of the Dick's Sublease, Sears filed two (2) different state court actions against Forbes and the City of Palm Gardens (the "City") in the 15th Judicial Circuit Court for Palm Beach County, Florida.

20. In the first case, filed in 2014 (the "2014 Case"), Sears sought a declaratory judgment determining that Sears had a right to sublease to Dick's and a mandatory injunction "ordering Forbes to confirm the validity of the Dick's Sublease and to enjoin Forbes from objecting to the Dick's sublease or otherwise interfering in the finalization and execution of the Dick's Sublease consistent with the [Sears] Lease and REA".

21. Following an evidentiary hearing on December 17, 2014, the Court denied Sears' motion for preliminary injunction.

22. On November 16, 2015, after approximately a year of discovery, the Court heard argument on Sears' dispositive motion and denied Sears' motion, finding that the "'simple statement of Dick's being a retailer and fitting under the contract is not simple at all, because what comes with the trappings of signage, square footage, following the ordinances that have existed for a long time, it takes more than just fitting under the definition'— he was referring to retail 'to create the court making a ruling as a matter of law that somehow Sears has a right to sublease to Dick's that fits this definition.'" **Exhibit** D, 5-17-16 Tr., p. 501, lines 12-21, quoting in part from Judge Hafele's ruling as set forth in the 11-16-15 Tr., p. 26-27.

23. The 2014 Case proceeded to a bench trial, and on June 9, 2016, the Court entered a final judgment in favor of Defendants Forbes and the City. Sears appealed, and on July 12, 2017, the Court of Appeal of the Fourth District for the State of Florida issued an opinion and order which affirmed in part, reversed in part, and remanded with directions. On February 22, 2018, the trial court entered an amended final judgment which incorporated the findings and rulings of the Court of Appeal. Significantly, the Court of Appeal did not approve the terms and conditions of the Dick's Sublease, but rather stated

> Sears has neither asked this court, nor the court below, to explicitly approve of its lease with Dick's in toto, nor do we do so here. Our opinion is limited to our interpretation of the Sears Forbes sublease and the R.E.A., and our conclusion that nothing within those agreements requires Sears to seek approval [from Forbes] before subleasing one floor of its two-story lease, within the mall, to either Dick's or any other retailer. We make no comment on whether aspects of the Sears–Dick's sublease, either as planned or as implemented in the future, violate existing contractual obligations, the P.U.D., or other any law or regulation.

**Exhibit E**, February 22, 2018 amended final judgment entered by trial court and July 12, 2017 Opinion and Order of Court of Appeal of the Fourth District for the State of Florida.

24. Similarly, the Fourth District's decision made clear that "[w]e express no comment as to the architectural review requirements found within the P.U.D. nor do we comment on any other municipal ordinance or code." **Exhibit E**.

25. In litigation filed in 2018 (the "2018 Case"), Sears sought declaratory and injunctive relief with respect to the City's refusal to process an application by Sears to amend the PUD to modify The Gardens Mall, as City's ordinances require applications to be submitted by the property owner rather than a tenant. After both Forbes and the City filed Motions to Dismiss, Sears, after filing the instant bankruptcy case, stipulated to dismiss the 2018 Case and the case was dismissed without prejudice by order dated November 7, 2018.

7

26. To date, Forbes has received no notice or other communication from Sears indicating that Sears no longer intends to pursue the Dick's Sublease.

### D. The Proposed Assumption and Assignment

27. On January 18, 2019, Debtors filed and served the *Notice Of Cure Costs And Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases In Connection With Global Sale Transaction* [Docket No. 1731] (the "Assumption and Cure Notice") wherein the Debtors designated the Sears Lease as a Potential Transferred Agreement (as defined in the Assumption and Cure Notice) [3] –

| No. | Store Number | Obligor(s) | Counter Party Name | Contract Title | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 105 | 1765 | SEARS, ROEBUCK AND CO. | THE FORBES COMPANY (SIDNEY FORBES) | GROUND LEASE | 10/31/2028 | S1765-1-A | $ 13,250 |

*See* Docket No. 1731, Exhibit B thereof, page 336 of 342, item no. 105.

28. As contained in greater detail below, the Sears Lease may not be assumed by Sears and assigned to the Buyer because the term of the Sears Lease expired prior to the Petition Date as Sears failed to properly extend the Term. Accordingly, the Sears Lease is presently, at best, a month-to-month lease.

29. Additionally, assuming, *arguendo*, the Court concludes that the Sears Lease was properly extended (which Forbes disputes), the Sears Lease is subject to the ROFR in favor of Forbes that has not been provided to Forbes. Therefore, the Sears Lease in in default and no transfer can be made without first providing Forbes its rights pursuant to the ROFR.

---

[3] Forbes reserves the right to amend and/or supplement this Objection to reflect and assert such additional amounts or to account for any additional amounts or adjustments that have not yet been billed or have not yet become due under the Sears Lease or otherwise through the date of the closing on any assumption and assignment of the Sears Lease.

8

30. Lastly, assuming, *arguendo*, the Court concludes that the Sears Lease was properly extended (which Forbes disputes), and that the ROFR need not be honored (which Forbes also disputes), Forbes seeks a determination that nothing contained in any order approving the Global Sale Transaction or the assumption and assignment of the Sears Lease shall be deemed to, in any way, impact Forbes rights to continue to dispute and contest the propriety of the Dick's Sublease under the Governing Documents or otherwise and that nothing in any such orders shall be deemed to, in any way, approve or determine any of the respective rights between the parties with regard to the Dick's Sublease.

## II.    ARGUMENT

### A.    The Term Of The Sears Lease Expired Prior To The Petition Date

31. Assignment and assumption of a lease under Section 365 of the Bankruptcy Code applies only to "unexpired" leases. 11 USC 365(a)("Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or **unexpired** lease of the debtor." Emphasis added.)

32. Section 365(c)(3) specifically precludes a trustee from assuming an unexpired lease if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 USC 365(c)(3).

33. In addition, if a tenant's interests in a lease are terminated prior to bankruptcy, the lease does not become part of its bankruptcy estate, and thus the automatic stay would not be applicable. 11 U.S.C. §§ 362 and 541.

34. The initial 30-year Term of the Sears Lease expired on October 31, 2018.

35. The Sears Lease provides Sears with conditional options to extend, which options are only available –

> Provided Tenant shall not be in material default at the time of the exercise of such right or the commencement of such period and shall **then be operating the Demised Premises for retail purposes**…

**Exhibit A**, Sears Lease, p. 4, §3(b)(emphasis added).

36. Consistent with the Sears Lease, in order to exercise a right to extend the Sears Lease, Sears must satisfy 2 conditions: (i) it shall not be in material default of the Sears Lease at the time of the attempted extension; and (ii) **it** shall be operating the Demised Premises for retail purposes. **Exhibit A**, Sears Lease, p. 4, §3(b) (emphasis added).

37. By letter dated October 4, 2017, Sears attempted to exercise the right to extend the Term of the Sears Lease for an additional 10-years. **Exhibit F**. This letter came in spite of Forbes prior notification to Sears that the option to extend was not available.

38. However, as of October 4, 2017 and October 31, 2018, Sears was not operating the Demised Premises (not operating the entire Sears Building which is the material part of the Demised Premises) and thus could not satisfy the conditions in the Sears Lease to exercise the extension. Accordingly, the Sears Lease became a month-to-month lease effective as of November 1, 2018.

39. As of October 4, 2017 and October 31, 2018, Sears had allowed multiple occupants to occupy space and operate their businesses in portions of and within the Sears Building, through at least one sublease and several license agreements, and those occupants are separate businesses and separate operations within the Sears store. **Exhibit** G, Sears' Answers, dated January 19, 2016, to Forbes' Fourth Set of Interrogatories, which at Exhibit A provides a chart summarizing the various entities Sears has allowed and is allowing to operate their businesses within its store.

All such agreements, regardless of whether called subleases or licenses, are "Leases" as defined by the REA.

40. Specifically, as admitted by Sears, the following non-Sears occupants were operating a substantial portion of the Sears Building on or about October 4, 2017 and October 31, 2018 (each a sub-sublease):

| | | | |
|---|---|---|---|
| 1. | Luxottica Optical | - | 1,337 sq. ft. |
| 2. | GN Hearing Care Corp. (d/b/a Beltone Hearing) | - | 676 sq. ft. |
| 3. | Karen Crouse/Watch Repair | - | 338 sq. ft. |
| 4. | Destination Maternity | - | 315 sq. ft. |
| 5. | iCan Health Benefits | - | 999 sq. ft. |
| 6. | Land's End | - | 6,188 sq. ft. |
| | **Total square feet not operated by Sears** | | **9,853 sq. ft.** |

**Exhibit G**, Sears' Answers, dated January 19, 2016, to Forbes' Fourth Set of Interrogatories.

41. The foregoing list is exclusive of Sears' legal obligations to deliver, and Dick's rights to, a substantial portion of the Demised Premises to Dick's pursuant to the Dick's Sublease (making more than 50% of the Demised Premises within the right of third parties).

42. The condition with regard to operation of the Demised Premises by Sears in order to exercise any option to extend was not met and the option could not be exercised as Sears did not operate the Demised Premises, it only operated a part of the Demised Premises.

43. Stated simply, the requirement that Sears (and only Sears) be operating the Demised Premises at time of exercise of extension reflects commercially reality as no owner would grant a 10-year option 30 years out to an unknown entity or operation. If Sears wanted to extend under

11

the option **it** had to be the exclusive operator of the entire Demised Premises. If it did not so operate and wanted to stay it had to then approach the landlord/Forbes, explain its plan and negotiate for a new lease, just like everyone else. It chose not to operate the Demised Premises and, therefore, it chose not to have an option to extend – it was totally Sears choice and totally under Sears control. Sears cannot now complain about its own choice and the explicit consequences of that choice.

44. Thus, Sears' attempted exercise of the right to extend the Sears Lease was, by Sears own choice and action, ineffective and the Sears Lease terminated and/or converted to a month-to-month lease effective as of November 1, 2018.

45. Importantly, Forbes put Sears on notice in the 2014 Case that Sears had not and could not exercise the right to extend the Sears Lease. By way of example only, Forbes identified the inability to exercise the option to extend in, minimally, the following pleadings -

    A.    November 5, 2015, Answer to Second Amended Complaint;

    B.    May 11, 2016, Trial Brief, p. 19-21.

    C.    June 3, 2016, Proposed Findings of Fact and Final Judgment, at p. 13-15, and Appendix of Supporting Facts at p. 5-6 and 14-15

### B. The Right Of First Offer/Refusal (ROFR) Has Not Been Honored

46. The Sears Lease grants to Forbes the ROFR, which has not been honored and constitutes a breach of the Sears Lease and should, therefore, prohibit any assignment of the Sears Lease unless and until that right is honored.

47. Honoring rights of first refusal is not a novel proposition; rights of first refusal have been enforced in other bankruptcies. *See In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 50 (Bankr. M.D. N.C. 2003) (and cases cited therein); and *In re the IT Group, Inc.*, 302 B.R. 483 (D. Del. 2003).

48.  While certain right of first refusals may not have been honored in a bankruptcy case of some notoriety, *In re Adelphia*, the facts and circumstances in this case are clearly distinguishable. *In re Adelphia Communications Corp.*, 359 B.R. 65, 85 – 87 (Bankr. S.D.N.Y. 2007). *In re Adelphia* involved assets that were extremely complex in and of themselves (cable franchise rights) but also in how they related to one another and other executory contracts and counterparties. That is not the case here with regard to one individual Sears location which stands on its own.  In addition, there can be no argument that enforcing the ROFR would "chill bidding" as the bidding on the Debtors' assets has concluded and this expired lease is not material to the proposed Global Sale Transaction.

49.  The Global Sale Transaction triggers the ROFR and Forbes should be provided its bargained right to purchase the Sears Lease.  The failure to honor the ROFR is a default under the Sears Lease and no transfer of the Sears Lease can be effective unless the ROFR is honored.

**C.  Forbes Rights Should Not Be Prejudiced By Entry Of Any Order Herein**

50.  Lastly, assuming, *arguendo*, the Court concludes that the Sears Lease was properly extended or otherwise decided to proceed with the transfer of the Sears Lease, Forbes seeks language in any Order entered on account of the Global Sale Transaction and on assumption of the Sears Lease (to the extent entered) protecting its rights.

51.  To date, Forbes has received no indication from Sears that it is no longer pursuing the Dick's Sublease.  Accordingly, and given the multiple prior state court cases filed by Sears and the anticipated broad language in orders contemplated to be entered in connection with the Global Sale Transaction, Forbes is justly concerned that language contained in any such order(s) could negatively impact its rights vis-à-vis the Dick's Sublease.

13

52. Forbes therefore requests that any orders entered in connection with the Global Sale Transaction or relating to the Sears Lease make clear that such order(s) does not negatively impact or otherwise affect Forbes' rights and remedies with regard to the Dick's Sublease and that all such respective rights and remedies in such regard, including, but not limited to, the right to assert that the Dick's Sublease constitutes a breach of the Sears Lease, are preserved.

### III.    GENERAL RESERVATION OF RIGHTS

53. Forbes expressly reserves its right to amend, modify, or otherwise supplement this Objection in whole or in part at any time. Forbes does not waive any right it may have by filing this Objection, and it also reserves the right to further address (i) the Global Sale Transaction, (ii) Buyers alleged adequate assurance of future performance as no such materials have been provided to Forbes as of the filing of this Objection, and (iii) any other ancillary issues, either by further submission to this Court, at oral argument, or by testimony to be presented at any hearing in such regard.

**WHEREFORE**, Forbes respectfully requests the Court:

1. find that the Sears Lease expired prior to the Petition Date and deny the Debtors' request to assume the Sears Lease; and/or,

2. afford Forbes its bargained for ROFR; and/or,

3. make clear in any orders entered in connection with the Global Sale Transaction or relating to the Sears Lease that such order(s) do not negatively impact or otherwise effect Forbes' rights and remedies with regard to the Dick's Sublease and that all such respective rights and remedies in such regard are preserved; and

4. grant Forbes such other and further relief as is just and proper.

14

          **CARSON FISCHER, P.L.C.**

          */s/ Robert A. Weisberg*
          Robert M. Carson (P11682)
          Robert A. Weisberg (P26698)
          4111 Andover Road, West - Second Floor
          Bloomfield Hills, Michigan 48302
          Telephone: (248) 644-4840
          Facsimile: (248) 644-1832
          E-mail: RCarson@CarsonFischer.com
                    RWeisberg@CarsonFicher.com

January 25, 2019        *Counsel for Forbes/Cohen Florida Properties, L.P*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served via electronic mail and/or first class mail, postage pre-paid on this 25th day of January, 2019 upon the parties listed below and electronically via ECF notification upon all parties requesting service via ECF notification:

**Sears Holdings Management Corporation**
Attn: Rob Riecker (rob.riechker@searshc.com)
Attn: Luke Valentino (luke.valentino@searshc.com)
Attn: Mohsin Meghji (mmeghji@miiipartners.com)
Attn: General Counsel (counsel@searshc.com)
3333 Beverly Road
Hoffman Estates, IL 60179

**Weil, Gotshal & Manges LLP**
Attn: Ray C. Schrock (ray.schrock@weil.com)
Attn: Jacqueline Marcus (jacqueline.marcus@weil.com)
Attn: Garret A. Fail (garrett.fail@weil.com)
Attn: Sunny Singh (sunny.singh@weil.com)
767 Fifth Avenue
New York, NY 10153

**Lazard Fréres & Co., LLC**
Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)
30 Rockefeller Plaza
New York, NY 10112

**Bank of America, N.A.**
**c/o Skadden, Arps, Slate, Meagher & Flom LLP**
Attn: Paul D. Leake (Paul.Leake@skadden.com)
Attn: Shana A. Elberg (Shana.Elberg@skadden.com)
Attn: George R. Howard (George.Howard@skadden.com)
4 Times Square
New York, NY 10036

**Bank of America, N.A.**
**c/o Berkeley Research Group, LLC**
2200 Powell Street, Suite 1200
Emeryville, CA 94608

**Wells Fargo Bank, National Association**
**c/o Choate, Hall & Stewart LLP**
Attn: Kevin J. Simard (ksimard@choate.com)
Attn: Jonathan D. Marshall (jmarshall@choate.com)
Two International Place
Boston, MA 02110

**Akin Gump Strauss Hauer & Feld LLP**
Attn: Philip C. Dublin (pdublin@akingump.com)
Attn: Ira S. Dizengoff (idizengoff@akingump.com)
Attn: Abid Qureshi (aqureshi@akingump.com)
Attn: Sara L. Brauner (sbrauner@akingump.com)
One Bryant Park
New York, NY 10036

**Transform Holdco LLC**
**c/o ESL Partners, Inc.**
Attn: Kunal S. Kamlani (kunal@eslinvest.com)
Attn: Harold Talisman (harold@eslinvest.com)
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154

**Cleary Gottlieb Steen & Hamilton LLP**
Attn: Christopher E. Austin (caustin@cgsh.com)
Attn: Benet J. O'Reilly (boreilly@cgsh.com)
Attn: Sean A. O'Neal (soneal@cgsh.com)
One Liberty Plaza
New York, NY 10006

**Office of the United States Trustee**
Attn: Paul Schwartzberg
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

                                                      */s/ Robert A. Weisberg*
                                                      Robert A. Weisberg

# INDEX OF EXHIBITS

Exhibit A    -    Sears Lease

Exhibit B    -    Forbes July 30, 2012 letter to Sears

Exhibit C    -    Forbes June 3, 2014 letter to Sears

Exhibit D    -    Hearing Transcript from May 17, 2016 hearing in 2014 Case

Exhibit E    -    February 22, 2018 amended final judgment entered by trial court and July 12, 2017 Opinion and Order of Court of Appeal of the Fourth District for the State of Florida.

Exhibit F    -    Sears October 4, 2017 letter to Forbes

Exhibit G    -    Sears' Answers, dated January 19, 2016, to Forbes' Fourth Set of Interrogatories

Exhibit H    -    REA and amendments thereto