# Exhibit A

SUBLEASE

BETWEEN

FORBES/COHEN FLORIDA PROPERTIES LIMITED PARTNERSHIP,
a Michigan limited partnership

"LANDLORD"

AND

SEARS, ROEBUCK AND CO.,
a New York corporation

"TENANT"



Δ π EXHIBIT ___5___
Deponent _____
Date _16·1·15_ Rptr _____
WWW.DEPOBOOK.COM

Exhibit A

F00001

TABLE OF CONTENTS

| Section | | Page |
|---------|---|------|
| Section 1. | Land Lease | 2 |
| Section 2. | Demised Premises – Shopping Center – R.E.A. | 2 |
| Section 3. | Term | 3 |
| Section 4. | Minimum Rent | 4 |
| Section 5. | Payment of Taxes, Assessments and Other Impositions | 4 |
| Section 6. | Rent – General | 8 |
| Section 7. | Mortgaging the Leasehold | 9 |
| Section 8. | Inspection of the Demised Premises by Landlord | 12 |
| Section 9. | Insurance and Indemnify | 12 |
| Section 10. | Compliance with Laws and Insurance Policy Requirements | 14 |
| Section 11. | Assignment and Subletting | 14 |
| Section 12. | Damage or Destruction | 15 |
| Section 13. | Eminent Domain | 15 |
| Section 14. | Liens | 17 |
| Section 15. | Holding Over | 17 |
| Section 16. | Bankruptcy or Insolvency | 18 |
| Section 17. | Default and Remedies | 19 |
| Section 18. | Landlord's Default – Landlord's Limited Liability | 21 |
| Section 19. | Excuses for Non-Performance | 21 |
| Section 20. | Estoppel Certificates | 22 |
| Section 21. | Notices | 22 |
| Section 22. | Quiet Enjoyment | 22a |
| Section 23. | Short Form Lease  (Memorandum of Lease) | 22b |
| Section 34. | Miscellaneous | 22b |

Signatures


A0012g/A0014g

F00002

SUBLEASE

THIS SUBLEASE made and entered into as of the _29th_ day of _May_, 1987, by and between FORBES/COHEN FLORIDA PROPERTIES LIMITED PARTNERSHIP, a Michigan limited partnership, whose address is 27700 Northwestern Highway, Suite 427, Post Office Box 667, Southfield, Michigan 48037-0667 (hereinafter referred to as "Landlord"), and SEARS, ROEBUCK AND CO., a New York corporation, whose address is Sears Tower, Chicago, Illinois 60684 (hereinafter referred to as "Tenant").

W I T N E S S E T H

WHEREAS, Landlord is the Lessee under that certain Ground Lease, dated June 14, 1984, with John E. Corbally, James H. Furman and Philip M. Grace (successor to David M. Murdoch), not personally but solely as Trustees under Trust Agreement dated December 28, 1983, and known as the "MacArthur Liquidating Trust," and their successors and assigns, as Lessor (hereinafter referred to as the "Fee Owner"), as amended by instruments dated July 24, 1986 and _May 29_, 1987 (hereinafter referred to as the "Land Lease"), which covers approximately 100.36 acres in the City of Palm Beach Gardens, Palm Beach County, State of Florida, more particularly described on Exhibit "A" hereto (hereinafter referred to as the "Shopping Center Parcel"); and

WHEREAS, Landlord desires to sublease to Tenant and Tenant desires to sublease from Landlord a portion of the Shopping Center Parcel consisting of approximately 10.6 acres as more particularly described on Exhibit "B" hereto (hereinafter referred to as the "Demised Premises"); and

WHEREAS, Landlord is subleasing a portion of the Shopping Center Parcel consisting of approximately 14.15 acres to Macy's New York, Inc. (hereinafter referred to as "Macy"), which property to be so leased to Macy is more particularly described on Exhibit "C" hereto (hereinafter referred to as the "Macy Parcel"); and

WHEREAS, Landlord is leasing a portion of the Shopping Center Parcel consisting of approximately 15.22 acres to Federated Department Stores, Inc. (hereinafter referred to as "Burdines"), which property to be so leased to Burdines is more particularly described on Exhibit "D" hereto (hereinafter referred to as the "Burdines Parcel"); and

WHEREAS, the balance of the Shopping Center Parcel not constituting the Demised Premises, the Macy Parcel or the Burdines Parcel shall be retained by Landlord and/or subsequently subleased to additional Majors (hereinafter referred to as "Landlord's Parcel"); and

WHEREAS, Landlord, Tenant, Macy and Burdines are simultaneously herewith entering into a Construction, Operation and Reciprocal Easement Agreement relating to the development and operation upon the Shopping Center Parcel of an enclosed mall regional shopping center (such Agreement is hereinafter referred to as the "R.E.A." and such shopping center is hereinafter referred to as the "Shopping Center"); and

WHEREAS, Landlord and Tenant are simultaneously herewith entering into a Supplemental Agreement covering certain additional matters relating to the development and operation of the Shopping Center (hereinafter referred to as the Supplemental Agreement).

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1. Land Lease.

(a) This Lease shall be subject and subordinate to all of the terms, covenants, conditions and provisions of the Land Lease, but not to any amendments thereto unless consented to by Tenant hereunder, and to any new lease of the Shopping Center Parcel as described in Article XV of the Land Lease consistent with the terms of the Land Lease and any such amendment consented to by Tenant, and to all the title and other matters to which the Land Lease is subject or subordinate as set forth on Exhibit "E". Notwithstanding the foregoing, simultaneously with the execution and delivery of this Lease and as a condition precedent to the obligations of Tenant hereunder, Tenant and the Fee Owner have agreed in a separate Agreement that in the event of a termination of the Land Lease as described in Paragraphs 4 and 5 of said Agreement, that so long as Tenant hereunder is not in material default under this Lease, this Lease shall remain in full force and effect and in accordance with its terms shall be a direct lease between the Fee Owner, as landlord, and Tenant hereunder, as tenant unless a new lease shall be granted pursuant to Article 15 of the Land Lease. Pursuant to said Agreement, Tenant agrees in connection therewith to attorn to and pay the rent to the Fee Owner, as landlord, and the Fee Owner agrees to perform and comply with all of the terms, covenants and conditions of said Agreement. Tenant acknowledges receipt of a copy of said Agreement.

(b) Nothing contained in this Lease shall be construed to create privity of estate or of contract between Tenant and the Fee Owner, except as provided in said separate Agreement. Tenant shall in no case have any rights in respect of the Demised Premises greater than Landlord's rights therein under the Land Lease.

(c) To the extent the performance by Landlord of any of the terms and conditions of this Lease upon Landlord's part to be performed shall be subject and dependent upon the performance by the Fee Owner of the terms, covenants and conditions, expressed or implied, of the Land Lease on the part of the Fee Owner to be performed and if Fee Owner shall fail to perform the same, Landlord shall be under no obligation or liability whatsoever to Tenant as a result thereof; provided, however, that Landlord shall use its best efforts to enforce against the Fee Owner such terms, covenants and conditions of the Land Lease, including appropriate litigation.

2. Demised Premises - Shopping Center - R.E.A.

(a) Landlord for and in consideration of the rents to be paid and the covenants and agreements to be kept and performed by Tenant does hereby lease to Tenant the premises situated in the City of Palm Beach Gardens, Palm Beach County, and State of Florida, as is more particularly described on Exhibit "B" hereto. Such premises are leased together with any and all present and future appurtenances, rights, franchises, licenses, privileges and easements benefitting, belonging or pertaining thereto (all of the foregoing are hereinafter sometimes referred to as the "Demised Premises"), subject only to the title exceptions set forth in Exhibit "E" hereto.

(b) The R.E.A. sets forth the basis upon which the Demised Premises, the Macy Parcel, the Burdines Parcel and the Landlord's Parcel are to be developed and operated as an enclosed mall regional shopping center. The R.E.A. also provides for certain mutual and reciprocal easement rights as between the Demised Premises, the Macy Parcel, the Burdines Parcel and the Landlord's Parcel. Anything in this Lease contained to the contrary notwithstanding, no term or provision of this Lease shall be deemed to modify or in any way compromise or mitigate any of the rights or obligations of Landlord or Tenant under and pursuant to the R.E.A. or to effect or remit any of the easement rights therein granted and/or reserved, and Tenant, in entering into this Lease, agrees that it is accepting this Lease subject to and is bound by all terms and conditions of the R.E.A. In the event of any conflict between the terms of this Lease and the terms of the R.E.A., the

-2-

F00004

terms of the R.E.A. shall control, unless otherwise herein specifically provided. All defined terms in the R.E.A. shall have the same meanings herein.

(c) Title to all improvements constructed at Tenant's cost on the Demised Premises shall be and remain in Tenant (with the right, to the extent permitted under federal law, to claim or take deductions for depreciation and credits under the applicable income tax statutes), until the expiration of the term, unless this Lease shall be sooner terminated as herein provided; provided, that upon such expiration or sooner termination of this Lease, title to such portion of the improvements constructed at Tenant's cost as are then remaining shall automatically pass to, vest in, and belong to Landlord without further action on the part of either party and without cost or charge to Landlord as hereinafter provided, except that in the event of the expiration or sooner termination of this Lease, and, if, at that time, any Leasehold Mortgagee shall exercise its option to obtain a new lease for the remainder of the term pursuant to Section 7(d) hereof, then such title thereto shall automatically pass to, vest in and belong to such Leasehold Mortgagee or any designee or nominee of such Leasehold Mortgagee permitted hereunder, until the expiration of the term, unless the term shall thereafter be sooner terminated as otherwise herein provided. The provisions of this Section 2(c) relating to title to the improvements shall not be deemed to supersede the provisions of Section 13 hereof relating to awards for taking by eminent domain. Landlord agrees that if as a lessee, Tenant is entitled to an investment tax credit with respect to certain property being installed or constructed in the Demised Premises by Tenant, at its sole cost, Landlord shall execute such documents as may be reasonably necessary to permit Tenant as lessee to receive such investment tax credit. Effective upon the termination of this Lease, whether by passage of time or otherwise, Tenant, in consideration of the granting of this Lease by Landlord to Tenant, hereby grants and conveys to Landlord all buildings upon the Demised Premises forever from and after the termination of this Lease, whether by passage of time or otherwise, such conveyance to be free and clear of all encumbrances, other than applicable building and zoning ordinances, easements now of record or to which Landlord shall have assented, encumbrances to which Landlord shall have assented and the lien of any real estate taxes assessed but not yet due and payable, the R.E.A. and the matters set forth on Exhibit "E", and the rights of any Leasehold Mortgagee, or subleasees under Paragraphs 7 and 11 hereof to ownership or reconveyance of such buildings.

3.  Term.

(a) The term of this Lease shall commence upon the date hereof (hereinafter referred to as the "Commencement Date") and shall end thirty (30) years from and after the Measuring Date, unless sooner terminated as hereinafter provided. The Measuring Date shall be the later to occur of (i) the date that the department store building to be constructed by Tenant upon the Demised Premises (hereinafter referred to as the "Sears Building") shall be initially opened to the public for business, and (ii) the Center Opening Date. If the Measuring Date is other than the first day of a calendar month, the period from the Measuring Date to the first day of the next succeeding calendar month shall be added to the term of this Lease and the term shall be extended accordingly. Notwithstanding anything to the contrary herein contained, in the event that the Measuring Date shall not have occurred on or before such date as shall be five (5) years from the date of this Lease, then this Lease shall be automatically terminated without any further act of either party hereto, and both parties hereto shall be released from all obligations hereunder.

-3-

F00005

(b) Provided Tenant shall not be in material default at the time of the
exercise of such right or the commencement of such period and shall then be
operating the Demised Premises for retail purposes, Tenant shall have the
right to extend the term of this Lease for four (4) separate periods of ten
(10) years each, upon all of the terms and provisions herein contained;
provided, however, that if the last such period would expire subsequent to
the expiration of the Land Lease, the term shall expire upon the earlier
expiration (but not the earlier termination) of the Land Lease. Tenant
shall exercise such right to extend the term of this Lease, if at all, by
written notice to Landlord at least one (1) year prior to the expiration of
the original term or any extention term, as the case may be. The exercise
of one such right to extend the term of this Lease shall not imply the
exercise of any further right to so extend.

(c) Landlord and Tenant shall acknowledge the expiration date of the
term of this Lease in writing as soon as practical after the Measuring Date
has been determined.

(d) The word "term," as used in this Lease, shall mean the original
term of this Lease and shall also include any and all renewals of the term
pursuant to any options therefor exercised by Tenant.

4. Minimum Rent.

The fixed annual minimum rent (hereinafter referred to as the "Minimum
Rent") for the Demised Premises shall be as follows:

(a) From the Commencement Date through and including December 31, 2000,
no Minimum Rent shall be payable.

(b) Commencing January 1, 2001 and thereafter through and including the
expiration of the term of this Lease, as the same may be extended, the sum
of One Hundred Fifty Nine Thousand Dollars ($159,000) per annum, payable in
equal monthly installments in advance of Thirteen Thousand Two Hundred Fifty
Dollars ($13,250) and prorata for partial years.

5. Payment of Taxes, Assessments and Other Impositions.

(a) Tenant agrees to pay or cause to be paid in the manner set forth in
this Section 5, before any fine, penalty, interest or cost is added thereto
for the nonpayment thereof, all real estate taxes or other ad valorem taxes
on tangible property, assessments, water rents and charges and other
governmental charges, general and special, ordinary and extraordinary,
unforeseen, as well as foreseen, of any kind and nature whatsoever,
including, but not limited to, assessments for public improvements or
benefits (provided, however, that Tenant shall not be required to pay any
such assessments relating to the construction of the roads and drainage
systems and other Offsite Improvements servicing the Shopping Center Parcel
which are installed or required to be installed by Landlord prior to the
Center Opening Date or any assessments relating to the expansion of the
Shopping Center, and Landlord shall be responsible to pay the same) (all of
which taxes, assessments, water rents or charges, levies and other
governmental charges are hereinafter referred to as "Impositions") which are
assessed, levied, confirmed, imposed or become a lien upon the Demised
Premises or become payable during the term of this Lease; provided, however,
that if by law any such Imposition is payable or may at the option of the
taxpayer be paid in installments (whether or not interest shall accrue on
the unpaid balance of such Imposition), Tenant may pay the same (and any
accrued interest on the unpaid balance of such Imposition) in installments
as the same respectively become due and before any fine, penalty, interest

-4-

or cost is added thereto for the nonpayment of any such installments and
interest; and provided, further, that any Imposition relating to a fiscal
period of the taxing authority, a part of which period is included within
the term of this Lease and a part of which is included in a period of time
either prior to the commencement of the term or after the termination of the
term of this Lease shall (whether or not such Imposition shall be assessed,
levied, confirmed, imposed or become a lien upon the Demised Premises or
shall become payable during the term of this Lease) be adjusted as between
Landlord and Tenant as of the commencement or termination of the term of
this Lease, as the case may be, so that Landlord shall pay that proportion
of such Imposition which that part of such fiscal period included in the
period of time before the commencement or after the termination of the term
of this Lease bears to such fiscal period, and Tenant shall pay the
remainder thereof. With respect to any Imposition for public improvements
or benefits which Tenant is required to pay hereunder and which by law is
payable, or at the option of the taxpayer may be paid in installments,
Landlord shall pay the installments thereof which become due and payable
prior to the commencement or subsequent to the termination of this Lease and
Tenant shall pay those installments which become due and payable during the
term of this Lease; provided, however, that if Tenant requests any such
improvements or benefits which are or will be the subject of the Impositions
whose installments are or will be payable following termination of the
Lease, then Tenant shall pay all such installments payable during the term
and thereafter, unless Landlord and the Fee Owner shall have consented to
such improvements or benefits, in which case Landlord shall pay those
installments payable subsequent to the termination of the Lease. | In
addition, Tenant shall pay all dues, assessments, impositions, charges and
other amounts allocable to the Demised Premises payable to any
association(s) of property owners of properties which include the Demised
Premises and of which Tenant is a member.

(b) Until the Demised Premises is separately assessed and taxed, (i) if
the components of Impositions are based on both the Demised Premises and
other property, all of which are unimproved, Tenant shall pay a share of
such Impositions based on the ratio which the area of the Demised Premises
bears to the area of the total property upon which such component of
Impositions is based, (2) if any portion of the Demised Premises or other
property is improved and the assessed valuation and taxes are based on
improved property, then Tenant shall be obligated to pay a share of
Impositions (i) based on acreage as set forth above as to that portion of
Impositions attributable to the land included in the Demised Premises and
other property, and (ii) as to any improvements on the Demised Premises, the
entire portion of Impositions attributable to any improvements to the
Demised Premises. Landlord shall send a copy of said bill to Tenant prior
to the due date for such bill and the parties shall arrange for payment of
their respective shares prior to said due date.

Landlord agrees to file a tax division petition in a timely manner with
respect to the Demised Premises so that the Demised Premises is separately
assessed and taxed for the calendar year in which construction commences.

(c) If at any time during the term hereof a tax or excise on rents or
other tax however described (hereinafter referred to as a "rent tax") is
levied or assessed by the United States of America, the State of Florida,
the County of Palm Beach, or the City of Palm Beach Gardens, or any
political subdivision of any of them, against Landlord on account of the
rents received or payments made hereunder, Tenant covenants to pay and
discharge such rent tax by paying the same to Landlord together with the
rent payable hereunder, or if such rent tax is payable on a periodic basis
other than monthly, at least ten (10) days before any fine, penalty,

-5-

interest or cost may be added thereto for the non-payment thereof.
Notwithstanding the foregoing, during periods that Tenant maintains a valid
consent letter from the Department of Revenue to "self-accrue" rent tax and
is registered under Part I of Chapter 212 of Florida Statutes, Tenant may
remit such tax directly to the State; provided, that such right to remit
such tax directly to the State shall only be effective if such consent
letter exonerates Landlord from liability with respect thereto and such
right shall not apply to any assignee or subtenant unless it has such a
valid consent letter and is so registered.  Attached hereto is a copy of
Tenant's current valid consent letter and Tenant's registration number
is _____.  Upon Landlord's request at any time and from time to time,
Tenant will furnish evidence to Landlord that it has such a valid consent
letter and is so registered and that all applicable taxes have been paid.

(d)  Nothing in this Lease shall require Tenant to pay any franchise,
estate, inheritance, succession, capital levy or transfer tax of Landlord,
or any income, excess profits or revenue tax or any other tax, assessment,
charge or levy upon the rent and other charges payable to Landlord by Tenant
under this Lease, or Landlord's interest under this Lease, except to the
extent provided in Section 5(c) hereof.

(e)  Tenant shall furnish to Landlord ten (10) days prior to the date
whenever any Imposition becomes delinquent, official receipts of the
appropriate taxing authority or other proof reasonably satisfactory to
Landlord evidencing the payment thereof.

(f)  Tenant shall have the right to contest the amount or validity, in
whole or in part, of any Imposition, or to seek a reduction in the valuation
of the Demised Premises as assessed for real estate tax purposes by
appropriate proceedings diligently conducted in good faith, but only after
payment of such Imposition, except that Tenant may postpone or defer payment
of such Imposition if:

(i)  Neither the Demised Premises nor any part thereof would by
reason of such postponement or deferment be in imminent danger of being
foreclosed, forfeited or lost;

(ii)  Such postponement or delay would not hinder any intended sale
or financing by the Fee Owner or Landlord of the Demised Premises or the Fee
Owner's or Landlord's interest under this Lease or inhibit the Fee Owner or
Landlord from obtaining any governmental approval or consent, if a condition
of such approval or consent is payment of all Impositions.  A sale or
financing shall not be deemed to be hindered if the prospective purchaser or
mortgagee is satisfied with postponement of such payment if Tenant complies
with the provisions of Section 5(f) (iii) hereof, or if the prospective
purchaser or mortgagee is satisfied with title insurance protecting said
purchaser or mortgagee against nonpayment of Impositions, and Tenant
purchases such title insurance endorsements or coverages providing such
protection; and

(iii)  Tenant shall either have deposited with Landlord or Tenant's
Leasehold Mortgagee the amount so contested and unpaid, together with all
interest and penalties in connection therewith and all charges that may or
might be assessed against or become a charge on the Demised Premises or any
part thereof, in such proceedings, or in lieu thereof, shall have posted a
bond by a surety company approved by Landlord and Tenant's Leasehold
Mortgagee, whereby such surety undertakes to pay such Imposition, interest,
penalties and charges in the event that Tenant shall fail to pay the same
upon the final disposition of the contest (including appeals), or in the
event the Demised Premises is in imminent danger of being foreclosed,

-6-

forfeited or lost during the pendency of such contest, or if Tenant fails to increase the amount of such bond as hereinafter provided. The initial deposit or bond shall be in an amount equal to one hundred twenty-five percent (125%) of the amount so contested and unpaid. Landlord agrees to invest any funds so deposited with Landlord in securities of the United States Government or as otherwise agreed by Landlord and Tenant.

Notwithstanding the foregoing, Tenant shall not be obligated to deposit such amount or post such a bond otherwise required under Section 5(f)(iii) hereof if (A)(I) an Event of Default does not then exist under this Lease, (II) no Leasehold Mortgagee has required such a deposit or bond, (III) the Impositions being contested relate to only one calendar year or other fiscal period (not to exceed twelve (12) months) for which they are imposed or assessed, and (IV) at the commencement of such proceedings or during the prosecution thereof, no part of the Demised Premises is in imminent danger of being foreclosed, forfeited or lost or (B) Tenant then has a net worth of at least One Hundred Million Dollars ($100,000,000) in "1984 Equivalent Dollars", as hereinafter defined, and Tenant shall have furnished Landlord satisfactory evidence of such net worth. For purposes of this Lease, "1984 Equivalent Dollars" means the equivalent purchasing power at any time of the value of One Dollar ($1.00) in calendar year 1984. The 1984 Equivalent Dollars of any amount shall be determined by multiplying said amount by one (1) plus a fraction, the numerator of which is the difference between (x) the average consumer Price Index (as hereinafter defined) for the twelve months last published prior to the date of such determination and (y) the average Consumer Price Index for the calendar months of 1984 and the denominator of which is the average Consumer Price Index for the calendar months of 1984. As used herein, the terms "Consumer Price Index" shall mean the Consumer Price Index for Urban Wage Earners and Clerical Workers, US Cities Average, All Items (Base Year 1967=100) for the applicable month published by the Bureau of Labor Statistics of the United States Department of Labor or similar index agreed to by the parties hereto if such index is changed or is no longer available.

Upon the termination of any such proceeding (including appeals), or if Tenant should so elect at any time prior thereto, Tenant shall pay the amount of such Imposition or part thereof as finally determined in such proceeding (or appeals), the payment of which may have been deferred during the prosecution of such proceeding (or appeals), together with any costs, fees, interest, penalties or other liabilities in connection therewith, and upon such payment, Landlord shall return, with interest at the rate earned thereon minus fees and costs of investment, any amount deposited with Landlord (and not previously applied by it as hereinafter provided) with respect to such Imposition. Such payment, at Tenant's request, shall be made by Landlord out of the amount deposited with it with respect to such Imposition, to the extent that such amount is sufficient therefor, and any balance due shall be paid by Tenant, and any balance remaining shall be paid to Tenant with interest earned on such balance minus fees and costs of investment.

If, at any time during the continuance of such proceeding, Landlord shall deem the amount deposited with Landlord or Tenant's Leasehold Mortgagee or provided by bond insufficient, Tenant shall, upon demand, make an additional deposit of or increase the amount of its bond by, such additional amount as Landlord may request to cover payment of the items set forth in Section 5(f)(iii) hereof, and upon failure of Tenant to do so, Landlord may require the amount theretofore deposited with Landlord or Tenant's Leasehold Mortgagee to be applied (or Landlord may require application of the bonded amount by the surety company, if a bond has been furnished) to or on account of the payment, removal or discharge of such

-7-

Imposition and the interest and penalties in connection therewith and any
costs, fees or other liability accruing in any such proceeding, or any part
of any of the same, regardless of the effect thereof on Tenant's contest,
and the balance, if any, shall be returned to Tenant with interest at the
rate earned on such balance minus fees and costs of investment.

If, at any time during the continuance of such proceeding, the
Demised Premises, or any part thereof, is, in the reasonable judgment of
Landlord, in imminent danger of being foreclosed, forfeited or lost, or if
any of the events described in Section 5(f)(iii) is likely to occur,
Landlord may require Tenant to pay such Impositions and request that the
amount theretofore deposited with Landlord or Tenant's Leasehold Mortgagee
be applied to the payment of such Imposition (or Landlord may require
application of the bonded amount by the surety company, if a bond has been
furnished) as provided in the preceding sentence. No such deposit held by
Landlord, or any part thereof, shall be returned to Tenant so long as any
Event of Default shall exist hereunder.

(iv) Tenant shall have obtained the prior consent to such
postponement or deferment of any Leasehold Mortgagee if such consent is
required.

6.  Rent - General.

(a)  It is the intention of the parties that the rent payable hereunder
shall be absolutely net to Landlord and that all costs, expenses and
obligations of every kind and nature whatsoever relating to the Demised
Premises or this Lease shall be paid by Tenant, except as otherwise
expressly provided in this Lease, the R.E.A. or the Supplemental Agreement.

(b)  Rental shall be defined in this Lease as Minimum Rent only, which
sums shall be payable in manner provided in this Lease. All other sums of
money or charges required to be paid by Tenant under this Lease shall be
promptly paid by Tenant when the same are due. The Minimum Rent and all
other sums of money or charges required to be paid by Tenant hereunder shall
be paid without any deductions or setoffs whatsoever. Tenant's failure to
pay any such amounts or charges when due shall carry with it the same
consequences as Tenant's failure to pay rent. All such amounts or charges
and Minimum Rent shall be payable to Landlord at the place where notices are
required to be served upon Landlord pursuant to Section 21 hereof.

(c)  Tenant acknowledges that pursuant to the terms of the Land Lease,
Landlord has made a collateral assignment of the rents payable hereunder to
the Fee Owner, subject to any collateral assignment of rents to Landlord's
mortgagee, which assignment to Landlord's mortgagee shall be superior in all
respects to such collateral assignment to the Fee Owner. Such collateral
assignment of rents to the Fee Owner shall become effective only in the
event the Land Lease and the term thereof or Landlord's right to possession
thereunder shall be terminated or cancelled pursuant to the terms and
conditions of the Land Lease, or in the event of the issuance and execution
of a depossess warrant or of any other re-entry or repossession by the Fee
Owner under the provisions of the Land Lease, or if an Event of Default
exists under the Land Lease. Upon notice to Tenant by the Fee Owner of any
of the foregoing and the request that Tenant pay the rent directly to the
Fee Owner, Tenant shall pay the rent payable hereunder to the Fee Owner,
until further notice from the Fee Owner or until receipt of an appropriate
court order.

-8-

F00010

7. <u>Mortgaging the Leasehold</u>.

(a) Tenant is hereby given the right to make a Leasehold Mortgage of
the Demised Premises; provided, (i) that no Event of Default exists under
this Lease, (ii) that no Leasehold Mortgagee or anyone claiming by, through
or under such Leasehold Mortgagee shall by virtue thereof acquire any
greater rights in the Demised Premises or any portion of the Shopping Center
Parcel than Tenant then had or later acquires under this Lease, (iii) that
such Leasehold Mortgage shall be expressly subject and subordinate to all
conditions and covenants of this Lease and to the rights of Landlord
hereunder and the Supplemental Agreement, and (iv) prior to completion of
construction of the Sears Building the Leasehold Mortgage shall not secure
any obligations of Tenant unrelated to Tenant's operations in the Demised
Premises.  The Leasehold Mortgagee shall not become liable upon Tenant's
covenants and obligations of this Lease unless and until it shall become the
owner of the legal or equitable title to the leasehold estate or to the
Sears Building.  The holder of each Leasehold Mortgage shall notify Landlord
in the manner provided in Section 21 hereof of its name and address and
shall furnish Landlord a true and correct copy of its Leasehold Mortgage.

For purposes of this Lease, the term "Leasehold Mortgage" shall
mean a mortgage, deed of trust, a deed to secure debt or other security
instrument by which Tenant's leasehold estate is mortgaged, conveyed,
assigned, pledged or otherwise transferred to secure a debt or other
obligation and the term "Leasehold Mortgagee" shall mean a holder of a
Leasehold Mortgage in respect to which the notice provided for above has
been received by Landlord.

Landlord agrees, however, that in the event such Leasehold
Mortgagee fails to perform any obligation or covenant of Tenant under this
Lease and as a consequence of such default Landlord recovers a money
judgment against such Leasehold Mortgagee, such judgment shall be satisfied
only out of the proceeds of sale received upon execution of such judgment
and levied thereon against the right, title and interest of such Leasehold
Mortgagee in the Demised Premises and out of rents or other income from such
property receivable by such Leasehold Mortgagee, and no such Leasehold
Mortgagee shall have any personal liability for any deficiency or money
judgment.

A Leasehold Mortgage shall be structured so that the same is not,
under Florida law, an indebtedness of Landlord or the Fee Owner.  Neither
Landlord nor the Fee Owner is obligated to subordinate or subject its
interest in the Demised Premises or this Lease to any Leasehold Mortgage.

(b) Nothing in this Lease contained shall preclude Landlord or the Fee
Owner at any time and from time to time with any lender and on any terms
from mortgaging its fee, reversionary interest, estate or leasehold interest
in the Demised Premises or renewing, modifying, consolidating, replacing or
extending any such mortgage, subject to the provisions of this
Section 7(b).  Any and all proceeds of any such mortgage or refinancing
shall belong solely to Landlord or the Fee Owner, as the case may be, and
Tenant shall have no rights whatsoever with respect to such proceeds.  Any
such mortgage (including the fee mortgage or Landlord's mortgage, if any,
covering any portion of the Demised Premises on the Commencement Date or
thereafter) shall be subject to the terms and conditions of this Lease and
the R.E.A. and at Tenant's request Landlord and the Fee Owner shall deliver
acknowledgments thereof from their respective mortgagees; provided, however,
that Tenant hereby agrees to attorn to any fee mortgagee or Landlord's
mortgagee or other person who may obtain the fee or Landlord's interest
hereunder in foreclosure or transfer in lieu of foreclosure, and the heirs,

-9-

successors and assigns of the fee mortgagee, Landlord's mortgagee or such
other person.

(c)  If there is an outstanding Leasehold Mortgage, Landlord agrees not
to amend or modify this Lease so as to materially adversely affect the
Leasehold Mortgagee's interest in this Lease or Tenant's leasehold estate,
or to accept a voluntary surrender or termination of this Lease by Tenant
without the prior written consent of the Leasehold Mortgagee, not to be
unreasonably withheld or delayed.  If there is an outstanding Landlord's
mortgage on the Demised Premises of which Tenant has been notified, Tenant
agrees not to amend or modify this Lease, or to accept a voluntary surrender
or termination of this Lease by Landlord without the prior written consent
of Landlord's mortgagee.

(d)  (1)  Upon any failure or violation hereunder which authorizes the
termination of this Lease or Tenant's possession under this Lease, Landlord
shall give written notice to any Leasehold Mortgagee whose name and address
shall have been provided Landlord, specifying the default and the Leasehold
Mortgagee's right to correct it pursuant to the applicable provisions of
this Lease, and the Leasehold Mortgagee, and its successors and assigns,
shall have the right within thirty (30) days from the date of such notice
(or such reasonable additional time as is required to effect the cure with
due diligence) to correct the failure or violation.  Landlord shall not
exercise its right to terminate this Lease, as herein provided, during the
time that such Leasehold Mortgagee shall require to complete its remedies
under the Leasehold Mortgage, provided, that:

(A)  Such Leasehold Mortgagee proceeds, promptly and with due
diligence, with the remedies under its Leasehold Mortgage on the leasehold
estate and thereafter prosecutes and completes the same with all due
diligence and that such Leasehold Mortgagee notifies Landlord at reasonable
frequencies of its progress in that regard; and

(B)  Such Leasehold Mortgagee shall pay to Landlord the
Minimum Rent and additional annual rent, if any is due, and all other
charges required to be paid by Tenant hereunder and under the Supplemental
Agreement which have accrued and which are due and owing under this Lease.

(II)  If the Leasehold Mortgagee does not correct such default, at
any time after thirty (30) days from the date a notice of such failure or
violation is given to the Leasehold Mortgagee or such reasonable additional
period, as may be required under Section 7(d)(1) hereof, whichever is later,
Landlord may elect to terminate this Lease, provided Landlord shall
simultaneously notify the Leasehold Mortgagee of Landlord's election.  No
such termination notice shall be effective unless simultaneous notice is
given to the Leasehold Mortgagee.  The Leasehold Mortgagee which has a first
and prior Leasehold Mortgage shall have thirty (30) days following notice
from Landlord setting forth the exact date this Lease is terminated, to
elect to take a new lease on the Demised Premises and enter into a new
supplemental agreement; provided, however, that prior to the end of said
thirty (30) day period such Leasehold Mortgagee shall have cured all
defaults on the part of Tenant hereunder (except defaults under Sections 16
and 17(a)(III) and (IV) hereof), including, without limitation, payment of
all amounts specified in Section 7(d)(1)(B) hereof or commenced to prosecute
the cure thereof with due diligence within said thirty (30) day period and
shall have completed the cure within such reasonable additional time as is
required to effect the cure with due diligence and paid all reasonable
expenses, including reasonable attorney's fees, incurred by Landlord by
reason of such termination.  Such new lease shall have a term equal to the
then unexpired portion of the term of this Lease, (including the right to

F00012

extend the term pursuant to Section 3(b) hereof), shall have the same relative priority in time and in right as this Lease, to the extent possible, and such new lease and supplemental agreement shall be on the same terms and conditions as this Lease and Supplemental Agreement (except for requirements which are no longer applicable or have already been performed), and the Leasehold Mortgagee's liability thereon shall not extend beyond its ownership of the leasehold estate created by and its occupancy under such new lease. Landlord shall tender such new lease executed by Landlord in form acceptable for recording and such new supplemental agreement executed by Landlord to the Leasehold Mortgagee within thirty (30) days after a written request for such lease and shall deliver possession of the Demised Premises immediately upon execution of the new lease and supplemental agreement, subject, however, to the rights of such subtenants which may be in possession, with the lessor's interest in such subleases being transferred to the Leasehold Mortgagee simultaneously with its execution, as lessee, of the new lease. The Leasehold Mortgagee shall execute and deliver such new lease and supplemental agreement to Landlord within thirty (30) days after such new lease and supplemental agreement are received by the Leasehold Mortgagee or the right of the Leasehold Mortgagee to obtain such new lease shall terminate.

(iii) Upon the execution and delivery of the new lease, title to all buildings owned by Tenant hereunder upon the Demised Premises, as well as all equipment, fixtures and machinery therein shall automatically vest in the Leasehold Mortgagee, as lessee under the new lease, until the expiration of the term of the new lease unless the new lease shall thereafter sooner be terminated. During the period following the termination of this Lease, until the date of the execution and delivery of the new lease, Landlord shall have all of the right, power and privilege to operate, maintain and control the Demised Premises. Upon execution of the new lease, the new lessee shall be entitled to a credit against rent due and owing under the new lease in an amount equal to the net income, if any, derived from the Demised Premises from the date of termination of this Lease to the commencement of the new lease, provided that the Leasehold Mortgagee or new lessee has cured all defaults, including, without limitation, payment of all amounts specified in Section 7(d)(i)(B) hereof, or if there is a net deficit, the Leasehold Mortgagee shall pay over to the Landlord the net deficit from such operation, both determined in accordance with generally recognized principles of accounting applied to the operation and maintenance of a property of similar size and type. In no event shall the Leasehold Mortgagee be under any obligation or liability whatsoever beyond the period of its ownership of the leasehold interest under any such new lease.

(iv) If prior to the completion of the Sears Building a Leasehold Mortgagee shall acquire the leasehold estate in the Demised Premises by foreclosure of its Leasehold Mortgage, by a new lease as herein provided, or otherwise, then, in such event, the Leasehold Mortgagee:

(A) Shall be responsible in accordance with the provisions of the R.E.A. and the Supplemental Agreement, to complete construction of the Sears Building but shall have the right to transfer such responsibility to any purchaser of the leasehold estate created hereby; and

(B) Shall devote the Demised Premises only to that use permitted under the terms of this Lease, the R.E.A. and Supplemental Agreement as is required of a Mortgagee.

(v) If after the completion of the Sears Building a Leasehold Mortgagee shall acquire the leasehold estate in the Demised Premises by foreclosure of its Leasehold Mortgage by a new lease as herein provided, or otherwise,

-11-

F00013

then, in such event, such Leasehold Mortgagee shall comply with all provisions of this Lease and the Supplemental Agreement or such new lease and supplemental agreement, as the case may be.

(vi) The rights provided for in this Section 7(d) in favor of a Leasehold Mortgagee shall likewise extend to any other party who may have acquired record title to the Leasehold Mortgage who has notified Landlord pursuant to Section 21 hereof of its name and address and evidence of its acquisition of the Leasehold Mortgage.

(vii) After the completion of the Sears Building, a Leasehold Mortgagee having acquired title to the leasehold estate of Tenant by foreclosure of the Leasehold Mortgage or deed in lieu of foreclosure shall have the right, for a three (3) year period after its acquisition of the leasehold estate to assign Tenant's interest under this Lease to an assignee experienced in the operation of a department store similar to the department store theretofore operated on the Demised Premises by Tenant.

(viii) Nothing contained in this Section 7(d) shall in any way limit or restrict Landlord from waiving any default of Tenant hereunder, extending the period for Tenant's performance hereunder or forebearing the exercise of any rights or remedies hereunder without notice to or the consent of the Leasehold Mortgagee.

(ix) The provisions of this Section 7(d) shall not be applicable in the event Landlord elects to purchase the "Tenant's Interest" pursuant to Paragraph 3(b) of the Supplemental Agreement.

(e) The Leasehold Mortgagee shall deliver copies of all notices of default by Tenant under the Leasehold Mortgage to Landlord.

8.  Inspection of the Demised Premises by Landlord.

(a) In the event Landlord and/or the Fee Owner receive notice of a building code violation relating to the Sears Building, Tenant shall permit the authorized representatives of Landlord and the Fee Owner to enter the Demised Premises during usual business hours for the purpose of inspecting the same in connection with such building code violation; provided that such representatives shall conduct inspections in a manner which will not unreasonably interfere with the operation of the Demised Premises.

(b) Landlord and the Fee Owner are hereby given the right during usual business hours to enter the Demised Premises and to exhibit the same in connection with a financing or sale of the Demised Premises, but not more often than twice in any year. During the final two (2) years of the term, Landlord and the Fee Owner shall have the right during usual business hours to enter the Demised Premises for the purpose of exhibiting the Demised Premises to potential tenants, purchasers and lenders in a manner which will not unreasonably interfere with the operation of the Demised Premises.

9.  Insurance and Indemnity.

(a) During the term of this Lease each of Landlord and Tenant shall, at its sole cost and expense, procure and maintain such fire and extended coverage insurance as is required pursuant to the terms of the R.E.A. Any such insurance so obtained shall be deemed to be the sole and exclusive property of the party which obtained the same and the other party hereto shall have no rights with respect thereto. The proceeds of any such insurance shall belong solely to the party who obtained such insurance to be used by such party in accordance with the terms of the R.E.A.

-12-

F00014

(b) During the term of this Lease, each of Landlord and Tenant shall carry public liability and property damage insurance and such other insurance in the amounts and subject to the other provisions set forth in the R.E.A. In the event Tenant shall fail to carry the insurance provided for in Sections 9(a) and (b) hereof for a period in excess of thirty (30) days after notice to Tenant, Landlord may, at its option, obtain such insurance and the cost thereof shall be paid as additional rent due and payable within ten (10) days after Landlord provides Tenant with a statement therefor.

(c) Nothing in this Section 9 shall require either party to carry insurance if such party shall be eligible and shall elect to self-insure under the provisions of the R.E.A.

(d) Each party hereto does hereby release, remise and discharge the other party hereto and the Fee Owner and any officer, director, agent, partner, employee or representative of such party and the Fee Owner of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the insured party at the time of such loss, damage or injury to the extent of any recovery by the insured party under such insurance.

(e) Tenant agrees to defend, indemnify and save the Fee Owner and Landlord, and the respective agents and contractors of the Fee Owner and Landlord harmless against and from all claims, losses, damages, costs and expenses including reasonable attorney's fees, because of personal injury or death of persons or destruction of property resulting from or arising out of or in any manner connected with Tenant's construction or and use, occupancy or possession of the Sears Building, and if Tenant shall be obligated for the maintenance of the Common Area on the Demised Premises as provided in Article X of the R.E.A., Tenant's indemnification above shall extend to any personal injury, death of persons or destruction of property occurring thereafter on the Demised Premises; Landlord agrees to defend, indemnify and save Tenant and its agents, contractors, employees, customers, visitors, invitees, licensees and concessionaires harmless against and from all claims, loss, damages, cost and expense, including reasonable attorneys' fees, because of personal injury, death of persons or destruction of property anywhere in the Shopping Center Parcel with the exception of the Sears Building and the buildings of the other Majors resulting from or arising out of or in any manner connected with (a) the Enclosed Mall, (b) Floor Area on Landlord's Parcel, (c) those portions of the Common Area of the Shopping Center Parcel if and for so long as Landlord is obligated to maintain or cause to be maintained those portions in accordance with Section 10.1 of the R.E.A., (d) other portions of the Common Areas where such personal injury, death of persons or destruction of property results from the negligent or willful acts or omissions of Landlord, its employees or agents, and (e) Landlord's construction activities. However, there shall be included in Tenant's foregoing indemnity of the Fee Owner and Landlord the results of, except as otherwise specifically provided in (b) below, the negligent or willful acts or omissions of Tenant, its employees or agents no matter where in the Shopping Center Parcel done or omitted to be done; and (b) excluded from such indemnity the result of the negligence or willful acts or omissions of Landlord or its employees or agents no matter where in the Shopping Center Parcel done or omitted to be done and claims paid pursuant to the joint policy provided for in Section 17.5 of the R.E.A.; provided, however, notwithstanding the foregoing inclusions and exclusions to the contrary, such inclusions and exclusions shall be null and void and of no effect as fully as though same were entirely omitted from this Lease to the effect that such are inconsistent with and/or would achieve or cause

F00015

a result contrary to the provisions regarding the release and waiver of
subrogation set forth in Section 17.1 of the R.E.A.

10. <u>Compliance with Laws and Insurance Policy Requirements</u>.

Tenant shall throughout the term of this Lease, at Tenant's sole
expense, promptly comply with all laws and ordinances and the orders, rules,
regulations and requirements of all Federal, State, County and municipal
governments and appropriate departments, commissions, boards and officers
thereof (whether or not the same require structural repairs or alterations),
which may be applicable from time to time to the Demised Premises, Tenant
shall likewise observe and comply with the requirements of all policies of
public liability, fire and all other policies of insurance at any time in
force with respect to the Sears Building. Tenant shall have the right to
contest the applicability of any laws, ordinances, orders, rules,
regulations or governmental requests and not comply with same, provided that
(i) Tenant notifies Landlord of its intent to contest and from time to time
of the progress of such contest, (ii) the failure to comply with same during
Tenant's contest shall not cause Landlord or the Fee Owner to be subject to
any criminal liability or Landlord's or the Fee Owner's interest in the
Demised Premises or any part thereof to be in danger of being foreclosed,
forfeited or lost, (iii) Tenant deposits with Landlord an amount deemed
sufficient by Landlord to comply with same or post a bond by a surety
company approved by Landlord in an amount determined by Landlord to comply
with same if Tenant shall be unsuccessful; provided, however, that if Tenant
then has a *net worth of at least One Hundred Million Dollars ($100,000,000)
in 1984 Equivalent Dollars* and Tenant shall have furnished Landlord
satisfactory evidence of such net worth, Tenant may contest the same without
such deposit or bond, and (iv) such contest shall be without expense to
Landlord or the Fee Owner. Tenant hereby agrees to indemnify and hold
Landlord and the Fee Owner harmless from and against all costs, expenses,
claims, loss or damage by reason of or arising or resulting from such
contest or proceeding.

11. <u>Assignment and Subletting</u>.

(a) Tenant shall have the right to assign this Lease and to sublet from
time to time the Demised Premises or any part thereof; subject however, to
the terms and provisions of the R.E.A. No such assignment or subletting
shall relieve Tenant of its obligations under this Lease, except that if
Tenant would be relieved of its obligations under the R.E.A., it shall be
relieved of its obligations hereunder.

(b) Notwithstanding anything herein contained or contained in the
R.E.A. to the contrary and in addition to the requirements set forth in the
REA relating thereto, Tenant shall not assign this Lease or sublet all or
substantially all of the Demised Premises, unless (i) the proposed assignee
or subtenant has experience in operating retail stores such as is then being
operated on the Demised Premises; (ii) the proposed assignee or subtenant by
written instrument reasonably acceptable to Landlord, assumes all of
Tenant's obligations under this Lease except for Tenant's obligation set
forth in the R.E.A. relative to the use of its trade name; and (iii) during
the period of Tenant's operating covenant pursuant to Section 13.1(a)(i) of
the R.E.A., at the time of the assignment or subletting, Tenant assigns or
sells a majority of its stores exceeding 120,000 square feet in southeastern
Florida to one or more entities.

F00016

(c) If Tenant shall desire to assign this Lease or sublet all or substantially all of the Demised Premises other than in connection with the sale of all or substantially all of Tenant's stores in southeastern Florida, Tenant shall give Landlord written notice of the desired terms of such assignment or subletting. Landlord shall keep the desired terms of such assignment or subletting confidential. Landlord shall thereupon have sixty (60) days in which to elect whether or not to receive an assignment of this Lease or a sublease or all or substantially all of the Demised Premises on the terms established by Tenant. If Landlord elects to receive such assignment or sublease, it shall have one hundred twenty (120) days thereafter to complete such transaction. If Landlord shall fail to give written notice to Tenant within the said sixty (60) day period of its intention to accept such assignment or sublease or, if the offer is accepted, to complete the said assignment or sublease within one hundred twenty (120) days after the original notice from Tenant (provided such failure to complete is not caused by any action or inaction of Tenant), Tenant shall thereupon be free to assign this Lease or sublet all or substantially all of the Demised Premises (subject however to the terms and provisions of this Section 11) to any third party for a price not less than ten percent (10%) below the price set forth in Tenant's original notice to Landlord and upon terms not substantially more desirable than that stated in Tenant's original notice, and this Paragraph 11(c) shall automatically terminate and be of no further force or effect thereafter from the completion of such assignment or sublease to such third party in accordance with this Section 11(c). If Tenant shall fail to assign or sublet to any third party as herein provided within one (1) year after Landlord's failure to elect, or failure to complete such assignment or subletting, as the case may be, Tenant shall not thereafter assign this lease or sublet all or substantially all of the Demised Premises without a re-offer to Landlord pursuant to this Section 11(c).

12. Damage or Destruction.

(a) In the event any buildings, structures or improvements upon the Demised Premises are damaged or destroyed, Tenant shall restore or reconstruct the same in accordance with the terms of the R.E.A. If the same are not required to be restored or reconstructed pursuant to the R.E.A. and Tenant elects not to so restore and reconstruct the same, Tenant shall promptly, after the occurrence of any such damage or destruction, clear away any and all debris and take all other action (including landscaping) required by good construction practices so that the area which had been occupied by the razed building or portions thereof will be left in a clean and attractive condition in accordance with the provisions of the R.E.A. All of the foregoing shall be done in a manner so as not to unreasonably interfere with the Landlord's Parcel, the Macy Parcel and/or the Burdines Parcel.

(b) Notwithstanding the foregoing, in the event Tenant exercises all of its options to extend the term of this Lease pursuant to Section 3(b) hereof, and the Shopping Center is materially damaged or destroyed during the last three (3) years of the last such option period, then either Landlord or Tenant shall have the right to terminate this Lease by written notice to the other, Tenant's notice to be given, if at all, within ninety (90) days after the date of such material damage or destruction, and Landlord's notice to be given, if at all, within one hundred fifty (150) days after the date of such material damage or destruction.

13. Eminent Domain.

(a) In the event any portion of the Demised Premises is taken by Condemnation, Tenant shall replace or restore the same as provided in the

-15-

F00017

R.E.A.  If Tenant shall elect to exclude the Demised Premises from the
operation and effect of the R.E.A. as a result of a Condemnation, upon the
effective date of such exclusion, this Lease shall terminate.

(b)  Notwithstanding anything to the contrary contained in the R.E.A.,
in the event that this Lease shall be terminated as a result of a
Condemnation, all damages awarded for such taking shall belong to and be the
property of Landlord whether such damages shall be awarded as compensation
for diminution in value to the leasehold or to the fee of the Demised
Premises; provided, however, that (i) Tenant shall be entitled to the value
of the Sears Building as valued in the Condemnation proceedings, less an
amount equal to such value of the Sears Building (assuming that such value
is equal to the value of the Sears Building at such expiration date)
discounted on a quarterly basis to present value at the annual discount rate
then in effect at the Federal Reserve Bank of Chicago for the period from
the date of such award until the expiration date of this Lease, assuming all
of the options provided for in Section 3(b) hereof have been exercised, and
(ii) any other damages receivable by Tenant pursuant to Florida law;
provided that the claim to or receipt by Tenant of the same will not
adversely affect the award to Landlord or the Fee Owner.

(c)  In the event of a partial taking by Condemnation which does not
result in a termination of this Lease, the award shall be made available to
Tenant for replacement and restoration in accordance with the R.E.A.,
provided that if the amount of such award is more than sufficient for
restoration purposes, a portion of the excess amount of such award equal to
such excess less an amount equal to such excess discounted as provided in
Section 13(b) hereof shall be retained by Tenant, and the balance thereof
shall be paid to Landlord.

(d)  In the event of a partial taking by Condemnation which does not
result in a termination of this Lease, Tenant shall continue to pay the rent
required under this Lease, except that the Minimum Rent shall thereafter be
reduced by one-tenth (1/10) of the amount actually received by Landlord on
account of such partial taking of the Demised Premises.

(e)  Landlord and Tenant shall not settle or compromise the amount of
any award in any such Condemnation proceeding without the Leasehold
Mortgagee's and Landlord's mortgagee's consent, which consent shall not be
unreasonably withheld.  Any mortgagee of Tenant's interest in the Demised
Premises shall be entitled to appear in any such condemnation proceedings
and make claim for such share of any award to which Tenant is entitled by
the terms of this Section 13.  In the event of a partial taking described in
Section 13(c) hereof, such Leasehold Mortgagee shall only be entitled to
that portion of the Tenant's interest in the Condemnation award remaining
after disbursements for restoration of the Demised Premises.

(f)  In the event of a taking for a temporary use, this Lease and the
term created hereby shall continue and the rental thereafter due and payable
shall not be reduced or abated and, except only to the extent that Tenant
may be prevented from doing so pursuant to the terms of the order of the
condemning authority, Tenant shall continue to perform and observe all of the
other covenants, agreements, terms and conditions of this Lease.  Provided
that no Event of Default then exists, Tenant shall be entitled to receive
the entire amount of any proceeds with respect to such temporary taking,
whether paid by way of damages, rent or otherwise, unless such period of
temporary taking shall extend beyond the term of this Lease, in which case
such proceeds shall be apportioned between Landlord and Tenant as of the
expiration date of the term; provided, however, that if the award is payable
in a lump sum, or is payable in any manner other than installments in the

F00018

nature of monthly or quarterly rental payments, then the proceeds shall be
deposited with the Leasehold Mortgagee, or if there is no such Leasehold
Mortgagee, any other institutional lender selected by Tenant and approved by
Landlord (hereinafter referred to as the "Escrow Agent"), it shall retain
such amount as is estimated to be required for the payment of all rental,
premiums on insurance policies and Impositions, and all other charges
payable by Tenant hereunder, for the period of such temporary taking, and
the amounts estimated to assure compliance with the requirements of the
following sentence, and shall be disbursed by it for the payment of such
items as they become due, and any balance over and above the estimated
amount required as aforesaid shall be paid to Tenant. The parties may
direct the Escrow Agent to invest the proceeds, and any interest thereon
shall be added to the proceeds remaining from time to time and disbursed as
proceeds by the Escrow Agent. Tenant covenants that upon the termination of
any such temporary taking, if this Lease shall not have expired or otherwise
terminated, it will restore and replace the improvements to the extent
possible, to the same character as existed immediately prior to such
taking.

14. Liens.

    The interests of neither the Fee Owner nor Landlord in the Demised
Premises shall be subject to liens for improvements made by Tenant. Except
for the On-Site Improvements to be constructed and maintenance to be
performed by Landlord upon the Demised Premises pursuant to the R.E.A.,
Tenant agrees to pay for all labor performed and materials furnished to
Tenant or persons claiming through Tenant in or about the erection and
construction of any buildings and improvements constructed upon the Demised
Premises and will defend or settle, at its own cost and expenses, each and
every lien asserted or claim filed against said premises and/or the
buildings or improvements thereon, or any part thereof, for labor claimed to
have been so performed or material claimed to have been so furnished, and
indemnify and save harmless the Landlord and the Fee Owner, their successors
and assigns, from all and every claim and action on account of such claim,
lien or judgment, in or about such erection, construction or employment.
Tenant shall, upon request of Landlord, provide such bond or other form of
security as may be required to release any such lien from record.

15. Holding Over.

    At the termination of this Lease by lapse of time or otherwise, Tenant
shall yield up immediate possession of the Demised Premises to Landlord and
failing so to do, hereby agrees, at the option of Landlord, to pay to
Landlord for the whole time such possession is withheld, the rent and other
charges at the rates set forth herein; provided, however, that if Tenant
shall exercise all of the options to extend the term pursuant to
Section 3(b) hereof and shall hold over after the expiration of the term as
so extended, Tenant shall pay to Landlord for such period, the amount per
day equal to two hundred percent (200%) of the Minimum Rent computed on a
daily basis plus the daily average amount of Impositions, insurance premiums
and all additional rents and charges paid by Tenant under this Lease and the
Supplemental Agreement during the three (3) highest years of the five (5)
years preceding the termination of this Lease. The provisions of this
clause shall not be held to be a waiver by Landlord of any right of entry or
reentry as set forth in this Lease, nor shall the receipt of said sum, or
any part thereof, or any other act in apparent affirmance of the tenancy,
operate as a waiver of the right to terminate this Lease and the term hereby
granted for the period still unexpired for any breach of Tenant under this
Lease. Any such holding over shall create only a month to month tenancy.

-17-

16. Bankruptcy or Insolvency.

(a) Neither Tenant's interest in this Lease nor any estate hereby created in Tenant nor any interest herein or therein shall pass to any trustee or receiver or assignee for the benefit of creditors or otherwise by operation of law except as may specifically be provided pursuant to the Bankruptcy Code.

(b) In the event the interest or estate created in Tenant hereby shall be taken in execution or by other process of law, or if Tenant's assigns, if any, shall be adjudicated insolvent or bankrupt pursuant to the provisions of any State Act or the Bankruptcy Code or if Tenant is adjudicated insolvent by a Court of competent jurisdiction other than the United State Bankruptcy Court, or if a receiver or trustee of the property of Tenant shall be appointed by reason of the insolvency or inability of Tenant to pay its debts, or if any assignment shall be made of the property of Tenant for the benefit of creditors and any of the foregoing are not set aside or vacated within sixty (60) days after the occurrence thereof, then and in any such event, Landlord shall have the right to terminate this Lease by written notice to Tenant and thereupon this Lease shall terminate with the same force and effect as though the date of such event were the date originally set forth herein and fixed for the expiration of the term, and Tenant shall vacate and surrender the Demised Premises but shall remain liable as herein provided.

(c) Tenant shall not cause or give cause for the appointment of a trustee or reciever of the assets of Tenant and shall not make any assignment for the benefit of creditors, or become or be adjudicated insolvent. The allowance of any petition under any insolvency law except under the Bankruptcy Code or the appointment of a trustee or receiver of Tenant or of the assets of Tenant shall be conclusive evidence that Tenant caused or gave cause therefor, unless such allowance of the petition, or the appointment of a trustee or receiver is vacated within thirty (30) days after such allowance or appointment. Any act described in this Section 16(c) shall be deemed a material breach of Tenant's obligations hereunder and thereupon Landlord shall have the right to terminate this Lease by written notice to Tenant. Landlord does in addition reserve any and all other remedies provided in this Lease or in law.

(d) (1) Upon the filing of a petition by or against Tenant under the Bankruptcy Code, Tenant, as debtor and as debtor in possession, and any trustee who may be appointed agree as follows: (A) to perform each and every obligation of Tenant under this Lease until such time as this Lease is either rejected or assumed by order of the United States Bankruptcy Court; and (b) to pay monthly in advance on the first day of each month as reasonable compensation for use and occupancy of the Demised Premises an amount equal to all Minimum Rent and other charges otherwise due pursuant to this Lease; and (C) to reject or assume this Lease within sixty (60) days of the filing of such petition under Chapter 7 of the Bankruptcy Code or within one hundred twenty (120) days (or such shorter term as Landlord, in its sole discretion, may deem reasonable so long as notice of such period is given) of the filing of a petition under any other Chapter; and (D) to give Landlord at least forty-five (45) days' prior written notice of any proceeding relating to any assumption of this Lease; and (E) to give at least thirty (30) days' prior written notice of any abandonment of the Demised Premises; any such abandonment to be deemed a rejection of this Lease; and (F) to do all other things of benefit to Landlord otherwise required under the Bankruptcy Code; and (G) to be deemed to have rejected this Lease in the event of the failure to comply with any of the above; and (H) to have consented to the entry of an order by an appropriate United

-18-

States Bankruptcy Court providing all of the above, waiving notice and
hearing of the entry of same.

(ii) No Event of Default of this Lease by Tenant, either prior to
or subsequent to the filing of such a petition, shall be deemed to have been
waived unless expressly done so in writing by Landlord.

(iii) It is understood and agreed that this is a Lease of real
property in a shopping center as such a lease is described in Section
365(b)(3) of the Bankruptcy Code.

(iv) Included within and in addition to any other conditions or
obligations imposed upon Tenant or its successor in the event of assumption
and/or assignment are the following: (A) the cure of any monetary defaults
and the reimbursement of pecuniary loss within not more than thirty (30)
days of assumption and/or assignment; and (B) the use of the Demised
Premises as set forth in the R.E.A. is unchanged; and (C) the payment of any
sums which may then be due or which may thereafter become due pursuant to
the provisions of Section 5 hereof; and (D) the reorganized debtor or
assignee of such debtor in possession or of Tenant's trustee demonstrates in
writing that it has sufficient background, including, but not limited to,
substantial retailing experience in shopping centers of comparable size and
financial ability to operate a retail establishment out of the Demised
Premises in the manner contemplated in the R.E.A. and meet all other
reasonable criteria of Landlord as did Tenant upon execution of this Lease;
and (E) the prior written consent of any mortgagee to which this Lease has
been assigned as collateral security; and (E) the Sears Building, at all
times, remains a single store and no physical changes of any kind may be
made to the Demised Premises unless in compliance with the applicable
provisions of this Lease, the R.E.A. and the Supplemental Agreement.

17. Default and Remedies.

(a)  The following events are hereby defined as an "Event of Default":

(i)  The failure of Tenant to pay any installment or rent, or any
other payments of money as herein provided or required when due and the
continuance of such failure for a period of ninety (90) days after notice
thereof in writing (or such additional time permitted a Leasehold Mortgagee
to cure such failure pursuant to Section 7 hereof); provided that Landlord
shall not have the remedies provided for in Section 17(b) hereof unless
Tenant shall fail to pay within forty-five (45) days after receipt of a
second notice given subsequent to the expiration of such ninety (90) day
period; said second notice specifying among other things that Tenant's
failure to make the requested payments may result in a termination of this
Sublease and the forfeiture of the Sears Building;

(ii) The failure of Tenant to (A) construct the Sears Improvements
as required in Sections 7.3 and 7.6 of the R.E.A. and the continuance of
such failure for a period of six (6) months after notice in writing thereof
from Landlord to Tenant, subject to the provisions of Article XX of the
R.E.A. and/or (B) to operate the Demised Premises as provided in
Section 13.1(a)(1) and (2) of the R.E.A., and the continuance of such
failure for a period of ninety (90) days after notice in writing thereof
from Landlord to Tenant, subject to the provisions of Article XX of the
R.E.A.

(iii) (A) The filing of an application by Tenant for a consent to
the appointment of a receiver, trustee or liquidator of itself or of all of
its assets, (B) the filing by Tenant of a voluntary petition in bankruptcy

F00021

or the filing of a pleading in any court of record admitting in writing its
inability to pay its debts as they come due, (C) the making by Tenant of a
general assignment for the benefit of creditors, (D) the filing by Tenant of
an answer admitting the material allegations of, or its consenting to, or
defaulting in answering, a petition filed against it in any bankruptcy
proceeding; and

(iv) The entry of an order, judgment or decree by any court of
competent jurisdiction, adjudicating the Tenant a bankrupt, or appointing a
receiver, trustee or liquidator of it or of all of its assets and such
order, judgment or decree continuing unstayed and in effect for any period
of sixty (60) days.

(b)  Subject to the provisions of Section 7 hereof, Landlord may treat
any one or more of the Events of Default defined in Section 17(a) hereof as
a breach of this Lease and thereupon at its option by serving written notice
on Tenant and on any Leasehold Mortgagee of which Landlord shall have
received notice in writing, in addition to all other remedies provided by
law (including, without limitation, the right to terminate this Lease),
Landlord may terminate Tenant's right of possession and may repossess the
Demised Premises by forcible entry and detainer suit, or otherwise, without
demand or notice of any kind to Tenant (except as hereinabove expressly
provided for) and without terminating this Lease, in which event Landlord
may, but shall be under no obligation so to do, relet all or any part of the
Demised Premises for such rent and upon such terms as shall be satisfactory
to Landlord (including the right to relet the Demised Premises for a term
greater or lesser than that remaining under the stated term of this Lease
and the right to relet the Demised Premises as a part of a larger area and
the right to change the character or use made of the Demised Premises).
Landlord agrees to use commercially reasonable efforts to mitigate
damages.  For the purposes of such reletting, Landlord may make any repairs,
changes, alterations or additions in or to the Demised Premises that may be
necessary, except that Landlord may not make alterations or additions to the
Demised Premises for purposes of reletting the Demised Premises prior to
expiration of the thirty (30) day period in which a Leasehold Mortgagee may
elect to take a new lease on the Demised Premises pursuant to Section 7
hereof; and if Landlord shall fail to relet the Demised Premises, or if the
Demised Premises is relet and a sufficient sum shall not be realized from
such reletting after paying all of the costs and expenses of such repairs,
changes, alterations (if initial construction of the Demised Premises has
not been completed) and additions and the expense of such reletting and the
collection of the rent accruing therefrom, to satisfy the rent above
provided to be paid, then Tenant shall pay to Landlord, on a monthly basis,
as damages a sum equal to the amount of the rental reserved in this Lease
for such period or periods, or, if the Demised Premises has been relet,
Tenant shall satisfy and pay any such deficiency monthly upon demand
therefor from time to time; and Tenant agrees that Landlord may file suit to
recover any sums falling due under the terms of this Section 17 from time to
time and that any suit or recovery of any portion due Landlord hereunder
shall be no defense to any subsequent action brought for any amount not
theretofore reduced to judgment in favor of Landlord.

(c)  Upon the termination of this Lease and the term created hereby, or
upon the termination of Tenant's right of possession, whether by lapse of
time or at the option of Landlord, as aforesaid, Tenant will at once
surrender possession of the Demised Premises to Landlord and remove all
effects therefrom; and if such possession be not immediately surrendered,
Landlord may forthwith re-enter the Demised Premises and repossess itself
thereof as of its former estate and remove all persons and effects
therefrom, using such force as may be reasonably necessary without being
deemed guilty of any manner of trespass or forcible entry or detainer.

-20-

F00022

(d)  Upon the failure of Tenant to perform any of the other terms,
covenants, conditions and agreements of this Lease, the Supplemental
Agreement or the R.E.A. on the part of Tenant to be performed, and the
continuance of such failure for a period of thirty (30) days after notice in
writing thereof from Landlord to Tenant (provided, however, that if such
default shall be of such nature that same cannot be cured with the payment
of money and cannot practically be cured within said time period, and if
Tenant shall within such time period commence with due diligence and
dispatch to cure and perform such defaulted term, covenant, condition or
agreement and shall thereafter prosecute and complete with due diligence and
dispatch the curing and performance of such defaulted term, covenant,
condition or agreement, such time period within which such failure may be
cured and performed shall be extended for such period as may be reasonably
necessary to complete said cure and performance), then Landlord shall have
all rights and remedies available at law and in equity other than the right
to dispossess Tenant or terminate this Lease.

(e)  All amounts owed by Tenant to Landlord pursuant to this Lease shall
bear interest at the annual rate of two percent (2%) plus the prime rate
announced and published from time to time by Chase Manhattan Bank, N.A.,
from the date due until the date of payment, unless a lesser interest rate
shall then be the maximum rate permissible by law with respect thereto, in
which event said lesser rate shall be charged.  Changes in the rate of
interest to be charged hereunder based on such prime rate shall take effect
immediately upon the occurrence of any change in such prime rate.

18. <u>Landlord's Default - Landlord's Limited Liability</u>.

Anything contained in this Lease or the Supplemental Areement to the
contrary notwithstanding, it is understood and agreed that from and after
the completion of the Developer Facilities, that portion of the Common Areas
to be initially constructed by Landlord and the opening of one hundred
eighty-five thousand (185,000) square feet of the Mall Store Building(s),
the covenants in this Lease and the Supplemental Agreement to be performed
by Landlord shall not be personally binding upon Landlord or any partners of
Landlord, but, instead, shall be satisfied only by the assertion by Tenant
of a lien against the Landlord's interest in and to the Shopping Center
Parcel, and all rents, cash flow, profits and proceeds of sale therefrom,
which lien shall be deemed to attach to the Shopping Center Parcel only when
filed.  Any such lien so asserted by Tenant may be foreclosed by Tenant only
upon Tenant's giving Landlord notice of any default by Landlord and thirty
(30) days to cure or if such default cannot be cured within said thirty (30)
day period, to commence the cure and to thereafter diligently cure any such
default.  A copy of such notice to Landlord shall also be sent to Landlord's
mortgagee whose name and address shall have been provided to Tenant, and
such mortgagee shall be given such opportunity to cure.  In no event shall
Tenant have the right to foreclose such lien, if, as a result thereof,
Landlord's ownership, use and occupancy of the Landlord's Parcel shall in
any way be jeopardized as a result thereof or if Macys' or Burdines' use and
occupancy of its respective Parcel shall in any way be jeopardized or if any
of Macys', Burdines' or Landlord's rights under the R.E.A. be jeopardized or
limited.  Subject to the foregoing limitation, Tenant shall have all rights
and remedies available at law and in equity against Landlord for any default
by Landlord under this Lease and/or the Supplemental Agreement.

19. <u>Excuses for Non-Performance</u>.

Notwithstanding anything contained in this Lease, each party shall be
excused from performing any obligation under this Lease, and any delay in
the performance of any obligation under this Lease shall be excused, if and

F00023

so long as the performance of the obligation is prevented, delayed or
otherwise hindered by acts of God, fire, earthquake, floods, explosion,
actions of the elements, war, riots, mob violence, inability to procure or a
general shortage of labor, equipment, facilities, materials or supplies in
the open market, failure of transportation, strikes, lockouts, actions of
labor unions, condemnation, court orders, laws, regulations or orders of
governmental or military authorities or any other cause, whether similar or
dissimilar to the foregoing, not within the control of such party (other
than lack of or inability to procure funds or financing to fulfill its
commitments and obligations under this Lease). This Section 19 shall not
operate to excuse Tenant from the prompt payment of rent or any other
payments required by the terms of this Lease unless there is no practical
way to deliver payment as a result of the foregoing causes.

20. Estoppel Certificates.

Landlord and Tenant each agree at any time and from time to time, so
long as this Lease shall remain in effect, upon not less than thirty (30)
days' prior written request by the other party, to execute, acknowledge and
deliver to the other party a statement in writing certifying that this Lease
is unmodified and in full force and effect (or if there have been
modifications that the same is in full force and effect as modified, stating
the modifications), and the dates to which the rent and other charges have
been paid in advance, if any, and stating whether any notice or default has
been served by the party giving the certificate, and the Commencement Date
and expiration date of this Lease, it being intended that any such statement
delivered pursuant to this Section 20 may be relied upon by any prospective
mortgagee or assignee of either of the parties.

21. Notices.

(a) All notices provided for in this Lease shall be in writing and
shall be sent:

|  |  |
|---|---|
| To Landlord: | Forbes/Cohen Florida Properties<br>Limited Partnership<br>Galleria Officentre<br>27700 Northwestern Highway, Suite 427<br>Post Office Box 667<br>Southfield, Michigan   48037-0667 |
| With a copy to: | William J. Zousmer, Esq.<br>Honigman Miller Schwartz and Cohn<br>2290 First National Building<br>Detroit, Michigan   48226 |
| To Tenant: | Sears, Roebuck and Co.<br>Sears Tower<br>Chicago, Illinois   60684<br>Attn:   National Manager Real Estate<br>           Planning Group, Dept 824 R.E. |
| With a copy to: | Sears, Roebuck and Co.<br>Sears Tower<br>Chicago, Illinois   60684<br>Attn:   General Counsel Merchandising<br>           Group, Dept 766 |

or to such other place or places as hereafter shall be designated in writing
by the respective parties. Each such notice shall be mailed United States

-22-

F00024

Registered or Certified Mail, return receipt requested, postage prepaid or by a recognized overnight delivery service. Notices shall be deemed to have been given when so mailed or sent.

(b) All notices, demands or requests which may be required to be given by Landlord or Tenant to any Leasehold Mortgagee shall be sent in writing, by registered or certified mail, postage prepaid, addressed to such Leasehold Mortgagee at such place as any such Leasehold Mortgagee may from time to time designate in a written notice to Landlord and Tenant. Copies of all such notices shall simultaneously be sent to Tenant or Landlord, as the case may be.

(c) In the event Landlord shall be in default under the terms of this Lease and Tenant intends to seek to terminate this Lease as a result thereof, Tenant shall not have the right to terminate this Lease unless and until it has served notice thereof upon the Fee Owner, as herein provided, and the fee Owner has failed to cure such default within a reasonable time. All such notices to the Fee Owner shall be sent to:

> MacArthur Liquidating Trust
> c/o John D. and Catherine T. MacArthur
>   Foundation
> 140 South Dearborn Street
> Seventh Floor
> Chicago, Illinois  60603

With a copy to:

> Howard Kane, Esq.
> Rudnick & Wolfe
> 30 North LaSalle Street
> Chicago, Illinois  60602

(d) In the event Landlord shall be in default under the terms of this Lease and Tenant intends to seek to terminate this Lease as a result thereof, Tenant shall not have the right to terminate this Lease unless and until it has served notice thereof upon Landlord's mortgagee whose name and address shall have been provided to Tenant and Landlord's mortgagee has failed to cure such default within a reasonable time. Landlord's mortgagee shall be deemed to have cured in a reasonable time if it proceeds promptly and with due diligence with the remedies under its mortgage and thereafter prosecutes and completes the same with all due diligence and if Landlord's mortgagee notifies Tenant at reasonable frequencies of its progress in that regard.

22. Quiet Enjoyment.

Subject to the terms and conditions of this Lease, Landlord covenants that Tenant, on payment of all the aforesaid installments and performing all the covenants aforesaid, shall and may peacefully and quietly have, hold and enjoy the Demised Premises for the term aforesaid.

In the event Landlord acquires the fee interest to any or all of the Demised Premises during the term of this Lease, whether as a result of Section 33.10 of the Land Lease or through any other means, the parties hereto agree that there shall be no forfeiture or merger of estate and this Lease shall continue in full force and effect as a direct lease between Landlord and Tenant as to so much or all of the Demised Premises as is owned by Landlord.

-22a-

F00025

23. Short Form Lease (Memorandum of Lease).

Landlord and Tenant agree to execute a short form lease for recording purposes, setting forth the legal description of the Demised Premises, the term of this Lease, and such other terms as Landlord and Tenant may deem appropriate.

24. Miscellaneous.

(a) Nothing contained in this Lease shall create a partnership or joint venture as between Landlord and Tenant or render Landlord or Tenant in any way responsible for the debts or losses of the other, it being the express intention that the relationship of the parties hereto shall at all times be that of landlord and tenant.

(b) All negotiations and agreements acceptable to both parties have been merged herein and are included herein. There are no other representations or warranties between the parties and all reliance with respect to representations and warranties are contained in this Lease, the R.E.A., the Supplemental Agreement and the Purchase Agreement between Tenant, as seller, and Landlord, as purchaser of even date herewith. Notwithstanding anything to the contrary contained in the R.E.A., the parties acknowledge that Tenant shall not be required to pay any portion of the Total Expenditures pursuant to Section 3.6 of the R.E.A. or otherwise.

(c) The captions of this Lease are for convenience and reference only and in no way define, limit or describe the scope or intent of this Lease.

(d) This Lease shall be construed and enforced in accordance with the laws of the State of Florida.

(e) Time is of the essence of this Lease.

(f) This Lease may be executed in any number of counterparts, all of which shall constitute one and the same instrument.

(g) All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the several respective heirs, executors, administrators, successors and assigns of the said parties, and if there shall be more than one tenant, they shall all be bound jointly and severally by the terms, covenants and agreements herein.

(h) If any provision of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

(i) None of the covenants, terms or conditions of this Lease to be kept and performed by either party to this Lease shall in any manner be waived, modified, changed or abandoned except by a written instrument duly signed, acknowledged and delivered by each party to the other party to this Lease.

-22b-

F00026

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed all as of the day and year first above written.

FORBES/COHEN FLORIDA PROPERTIES LIMITED PARTNERSHIP, a Michigan limited partnership

By   Forbes/Cohen Properties, a Michigan co-partnership

By: _____
    Sidney Forbes

By: _____
    Maurice Cohen
    "Landlord"

ATTEST:

_____
Assistant Secretary

WITNESS:

_____

_____

SEARS, ROEBUCK AND CO., a New York corporation

By: _____

    National Manager
    Real Estate Planning Group

    "Tenant"

R. E. DIRECTOR
LEGAL

This Instrument Drafted By:

William J. Zousmer, Esq.
Honigman Miller Schwartz and Cohn
2290 First National Building
Detroit, Michigan  48226

A0014g

-23-

F00027

EXHIBIT "A"

A Parcel of land lying in the North 1/2 of Section 6, Township 42 South, Range 43 East, City of Palm Beach Gardens, Palm Beach County, Florida, more particularly described as follows:

Commence at the center of said Section 6, thence S. 88°45'08" E. along the South line of the Northeast one-quarter of said Section 6, a distance of 763.55 feet; thence N. 01°14'52" E. a distance of 70.00 feet to a point on the North right-of-way line of P.G.A. Boulevard as recorded in O.R.B. 4442, Pages 861 through 862 of the Public Records of said Palm Beach County and the POINT OF BEGINNING; thence S. 88°45'08" E. along said right-of-way line and through the following courses a distance of 167.97 feet; thence N. 01°14'52" E. a distance of 12.00 feet; thence S. 88°45'08" E. a distance of 162.07 feet; thence N. 43°40'03" W. departing from said right-of-way line a distance of 35.41 feet; thence N. 01°25'01" E. a distance of 167.93 feet; thence S. 88°34'59" E. a distance of 165.49 feet to a point of curvature of a curve concave Northwesterly, having a radius of 225.00 feet; thence Northeasterly along the arc of said curve through a central angle of 24°49'18" a distance of 97.47 feet to a point of tangency thence N. 66°35'43" E. a distance of 487.89 feet; thence S. 29°09'19" E. a distance of 57.23 feet to a point of curvature of a curve concave Northeasterly, having a radius of 150.00 feet; thence Southeasterly along the arc of said curve through a central angle of 37°12'25" a distance of 97.41 feet to a point of tangency; thence S. 66°21'44" E. a distance of 41.84 feet; thence S. 22°58'41" E. a distance of 48.08 feet to a point on a non-tangent curve concave Southeasterly having a radius of 585.87 feet, the chord of which bears N. 32°47'12" E.; thence Northeasterly along the arc of said curve through a central angle of 24°45'39" a distance of 253.19 feet to a point of tangency; thence N. 45°10'02" E. a distance of 20.00 feet; thence N. 46°09'35" E. a distance of 150.00 feet to a point on a non-tangent curve concave Northwesterly, having a radius of 470.87 feet; the chord of which bears N. 18°22'52" E.; thence Northeasterly along the arc of said curve through a central angle of 33°55'42" a distance of 278.83 feet to a point of tangency; thence N. 01°25'01" E. a distance of 368.61 feet to the point of curvature of a curve concave Southeasterly having a radius of 570.87 feet; thence Northeasterly along the arc of said curve through a central angle of 35°04'51" a distance of 349.53 feet to a point of tangency; thence N. 36°29'52" E. a distance of 20.34 feet; thence N. 08°30'08" W. a distance of 49.50 feet; thence N. 53°30'08" W. a distance of 625.68 feet to a point of curvature of a curve concave Southerly having a radius of 1100.92 feet; thence Westerly along the arc of said curve through a central angle of 46°55'16" a distance of 901.57 feet to the point of tangency; thence S. 79°34'36" W. a distance of 1355.52 feet; thence S. 34°04'49" W. a distance of 49.93 feet; thence S. 11°24'59" E. a distance of 175.38 feet to the point of curvature of a curve concave Westerly having a radius of 570.87 feet; thence Southerly along the arc of said curve through a central angle of 12°50'00" a distance of 127.87 feet to the point of tangency; thence S. 01°25'01" W. a distance of 574.96 feet to a point of curvature of a curve concave Northeasterly having a radius of 470.87 feet; thence Southeasterly along the arc of said curve through a central angle of 31°44'44" a distance of 260.89 feet to the point of tangency; thence S. 30°19'43" E. a distance of 420.42 feet to a point of curvature of a curve concave Southwesterly having a radius of 570.87 feet; thence Southeasterly along the arc of said curve through a central angle of 10°29'34" a distance of 104.54 feet; thence N. 70°09'49" E. a distance of 10.00 feet; thence N. 19°33'44" E. a distance of 44.43 feet to a point on a non-tangent curve concave Northwesterly, having a radius of 325.00 feet, the chord bears N. 44°17'59" E. thence Northeasterly along the arc of said curve through a central angle of 29°19'21" a distance of 166.33 feet to the point of tangency; thence N. 29°38'19" E. a distance of 43.82 feet; thence S. 60°31'58" E. a distance of 436.75 feet to the point of curvature of a curve concave Northeasterly having a radius of 500.00 feet; thence Southeasterly along the arc of said curve through a central angle of 25°19'59" a distance of 221.07 feet; thence S. 01°25'01" E. a distance of 181.46 feet; thence S. 46°19'57" W. a distance of 35.30 feet to the POINT OF BEGINNING.

Containing 100.367 Acres, more or less.

A0192g

EXHIBIT "B"

That portion of the North half of Section 6, Township 42 South, Range 43 East in the City of Palm Beach Gardens, Palm Beach County, Florida, described as follows:

Commencing at the center of said Section; thence South 88°45'08" East along the South line of the Northeast Quarter of said Section, a distance of 763.55 feet; thence North 1°14'52" East a distance of 70.00 feet to the North line of P.G.A. Boulevard as described in the deed recorded in Official Record Book 4442, Pages 856 through 874 of the Public Records of said Palm Beach County; thence South 88°45'08" East along said North line a distance of 167.97 feet; thence North 1°14'52" East along said North line a distance of 12.00 feet; thence South 88°45'08" East along said North line a distance of 162.07 feet; thence North 43°40'03" West a distance of 35.41 feet; thence North 1°25'01" East a distance of 167.93 feet; thence South 88°34'59" East a distance of 165.49 feet to the beginning of a curve concave Northerly, having a radius of 225.00 feet; thence Easterly a distance of 97.47 feet along said curve through a central angle of 24°49'18"; thence North 66°35'43" East a distance of 487.89 feet; thence South 29°09'19" East a distance of 57.23 feet to the beginning of a curve concave Northeasterly having a radius of 150.00 feet; thence Southeasterly a distance of 97.41 feet along said curve through a central angle of 37°12'25"; thence South 66°21'44" East a distance of 41.84 feet; thence South 22°58'41" East a distance of 48.08 feet to a point on a non tangent curve concave Southeasterly, having a radius of 585.87 feet, a radial to said point bears North 69°35'38" West; thence Northeasterly a distance of 99.69 feet along said curve through a central angle of 9°44'57" to the POINT OF BEGINNING; thence North 66°21'44" West a distance of 79.64 feet to the beginning of a curve concave Northeasterly, having a radius of 83.50 feet; thence Northwesterly a distance of 62.60 feet through a central angle of 42°57'27"; thence North 23°24'17" West a distance of 104.92 feet; thence North 66°35'43" East a distance of 40.86 feet; thence North 23°24'17" West a distance of 51.50 feet; thence South 66°35'43" West a distance of 8.20 feet; thence North 23°24'17" West a distance of 276.41 feet to a point on a non tangent curve concave Northeasterly having a radius of 580.50 feet, a radial to said point bears South 30°11'30" West; thence Northwesterly a distance of 45.44 feet along said curve through a central angle of 4°29'07"; thence North 55°19'23" West a distance of 24.15 feet; thence North 71°45'08" West a distance of 74.95 feet; thence North 88°10'54" West a distance of 43.85 feet to the beginning of a curve concave Northeasterly having a radius of 259.50 feet; thence Northwesterly a distance of 39.37 feet along said curve through a central angle of 8°41'32"; thence North 18°14'52" East a distance of 346.14 feet; thence North 71°45'08" East a distance of 35.00 feet; thence North 18°14'52" East a distance of 97.66 feet; thence South 72°26'25" East a distance of 187.97 feet; thence North 56°14'52" East a distance of 235.08 feet; thence North 13°45'08" West a distance of 29.80 feet; thence North 56°14'52" East a distance of 17.96 feet; thence North 53°45'08" West a distance of 29.80 feet; thence North 56°14'52" East a distance of 157.60 feet to a point on a non tangent curve concave Westerly having a radius of 532.00 feet, a radial to said point bears North 61°41'19" East; thence Southerly a distance of 276.03 feet along said curve through a central angle of 29°43'42"; thence South 1°25'01" West a distance of 329.36 feet; thence South 88°34'59" East a distance of 48.00 feet; thence South 1°25'01" West a distance of 49.46 feet to the beginning of a curve concave Northwesterly, having a radius of 350.00 feet; thence Southwesterly a distance of 398.15 feet along said curve through a central angle of 65°10'42" thence South 66°35'53" West a distance of 93.63 feet; thence South 65°26'57" West a distance of 50.00 feet; thence South 66°35'43" West a distance of 36.00 feet to the beginning of a curve concave Southeasterly having a radius of 30.00 feet; thence Southwesterly a distance of 47.12 feet along said curve through a central angle of 90°00'00" to its point of tangency with a line parallel with and Northeasterly a distance of 31.50 feet from that certain course described above as North 23°24'17" West a distance of 104.92 feet; thence

South 23°24'17" East along said parallel line a distance of 25.92 feet to
the beginning of curve concave Northeasterly, having a radius of 52.00 feet,
said curve being concentric with a Northeasterly 31.50 feet from that
certain curve described above as having a radius of 83.50 feet and a central
angle of 42°57'27"; thence Southeasterly a distance of 38.99 feet along said
concentric curve through a central angle of 42°57'27"; thence South
66°21'44" East a distance of 56.52 feet to the beginning of a curve concave
Northerly, having a radius of 45.00 feet; thence Easterly a distance of
32.28 feet along said curve through a central angle of 41°05'54" to a non
tangent intersection with the Northeasterly prolongation of that certain
curve described above as being concave Southeasterly, having a radius of
585.87 feet, a radial of said 585.87 foot radius curve to said point bears
North 55°37'52" West; thence Southwesterly a distance of 43.09 feet along
said curve through a central angle of 4°12'49" to the POINT OF BEGINNING.
Containing an area of 10.606 Acres, more or less.

A0198g

F00030

EXHIBIT "C"

That portion of the North half of Section 6, Township 42 South, Range 43
East in the City of Palm Beach Gardens, Palm Beach County, Florida,
described as follows:

Commencing at the center of said Section; thence South 88°45'08" East
along the South line of the Northeast Quarter of said Section, a distance of
763.55 feet; thence North 1°14'52" East a distance of 70.00 feet to the
North line of P.G.A. Boulevard as described in the deed recorded in Official
Record Book 4442, Pages 856 through 874 of the Public Records of said Palm
Beach County; thence South 88°45'08" East along said North line a distance
of 167.97 feet; thence North 1°14'52" East along said North line  a distance
of 12.00 feet to the POINT OF BEGINNING; thence continue North 1°14'52" East
a distance of 257.39 feet; thence North 88°45'08" West a distance of 74.44
feet to the beginning of a curve concave Northerly, having a radius of
612.00 feet; thence Westerly a distance of 301.42 feet along said curve
through a central angle of 28°13'10"; thence North 60°31'58" West a distance
of 29.24 feet; thence North 29°28'02" East a distance of 244.00 feet; thence
North 40°31'58" West a distance of 29.80 feet; thence North 29°28'02" East a
distance of 9.60 feet; thence North 80°31'58" West a distance of 29.80 feet;
thence North 29°28'02" East a distance of 389.36 feet to a point on a non
tangent curve concave Southerly, having a radius of 77.50 feet, a radial to
said point bears North 4°53'25" West; thence Easterly a distance of 30.98
feet along said curve  through a central angle of 22°54'12"; thence North
27°47'36" East a distance of 74.26 feet; thence North 74°14'52" East a
distance of 52.47 feet; thence North 1°14'52" East a distance of 54.38 feet;
thence South 88°45'08" East a distance of 225.00 feet; thence South 1°14'52"
West a distance of 85.40 feet; thence South 71°45'08" East a distance of
126.22 feet; thence South 25°32'54" East a distance of 24.10 feet to a point
on a curve concave Southeasterly, having a radius of 77.50 feet, a radial to
said point bears North 25°32'54" West; thence Easterly a distance of 59.24
feet along said curve through a central angle of 43°47'46"; thence South
71°45'07" East a distance of 25.82 feet; thence South 23°24'17" East a
distance of 618.23 feet; thence South 66°35'43" West a distance of 189.53
feet to the beginning of a curve concave Northerly, having a radius of
750.00 feet; thence Westerly a distance of 322.70 feet along said curve
through a central angle of 24°39'09"; thence North 88°45'08" West a distance
of 44.82 feet; thence North 89°53'54" West a distance of 50.00 feet; thence
North 88°45'08" West a distance of 10.00 feet to the beginning of a curve
concave Southeasterly, having a radius of 45.00 feet; thence Westerly a
distance of 70.69 feet along said curve through a central angle of 90°00'00"
to its point of tangency with a line parallel with and Easterly 40.00 feet
from that certain course described above as North 1°14'52" East a distance
of 257.39 feet; thence South 1°14'52" West along said parallel line a
distance of 126.39 feet to the beginning of a curve concave Northeasterly,
having a radius of 50.00 feet; thence Southerly a distance of 41.65 feet
along said curve through a central angle of 47°43'53" to a line bearing
South 88°45'08" East from the POINT OF BEGINNING; thence North 88°45'08"
West a distance of 56.37 feet to the POINT OF BEGINNING.  Containing an area
of 14.150 acres, more or less.

A0197g

EXHIBIT "D"

That portion of the North Half of Section 6, Township 42 South, Range 43
East in the City of Palm Beach Gardens, Palm Beach County, Florida,
described as follows:

Commencing at the center of said Section; thence South 88°45'08" East
along the South line of the Northeast Quarter of said Section a distance of
763.55 feet; thence North 1°14'52" East a distance of 70.00 feet; thence
North 46°19'57" East a distance of 35.30 feet; thence North 1°25'01" East a
distance of 181.46 feet to a point on a non tangent curve concave Northerly,
having a radius of 500.00 feet, a radial to said point bears South 4°08'03"
West; thence Northwesterly a distance of 221.07 feet along said curve
through a central angle of 25°19'59"; thence North 60°31'58" West a distance
of 436.75 feet; thence South 29°38'18" West a distance of 43.82 feet to the
beginning of a curve concave Northwesterly, having a radius of 325.00 feet;
thence Southwesterly a distance of 166.33 feet along said curve through a
central angle of 29°19'21"; thence South 19°33'44" West a distance of 44.43
feet; thence South 70°09'49" West a distance of 10.00 feet to a point on a
curve concave Southwesterly, having a radius of 570.87 feet, a radial to
said point bears North 70°09'49" East; thence Northwesterly a distance of
73.44 feet along said curve through a central angle of 7°22'15" to the POINT
OF BEGINNING; thence continuing Northwesterly a distance of 31.10 feet along
said curve through a central angle of 3°07'19"; thence North 30°19'43" West
a distance of 18.90 feet to a point on a non tangent curve concave
Northerly, having a radius of 45.00 feet, a radial to said point bears South
22°48'04" West; thence Northeasterly a distance of 43.01 feet along said
curve through a central angle of 54°45'53" to a compound curve concave
Northwesterly having a radius of 247.00 feet; thence Northeasterly a
distance of 122.42 feet along said curve through a central angle of
28°23'53"; thence North 29°38'18" East a distance of 16.50 feet to the
beginning of a curve concave Westerly, having a radius of 30.00 feet; thence
Northerly a distance of 47.21 feet along said curve through a central angle
of 90°10'16"; thence North 60°31'58" West a distance of 98.59 feet; thence
North 51°19'33" West a distance of 75.00 feet to a point on a curve concave
Northeasterly, having a radius of 450.00 feet, a radial to said point bears
South 29°28'02" West; thence Northwesterly a distance of 486.55 feet along
said curve through a central angle of 61°56'59"; thence North 1°25'01" East
a distance of 260.89 feet; thence South 88°34'59" East a distance of 48.00
feet; thence North 1°25'01" East a distance of 144.65 feet to the beginning
of a curve concave Southeasterly, having a radius of 332.00 feet; thence
Northerly a distance of 216.56 feet along said curve through a central angle
of 37°22'26"; thence South 63°29'53" East a distance of 402.67 feet; thence
South 6°30'07" West a distance of 29.80 feet; thence North 63°29'53" West a
distance of 7.28 feet; thence South 46°30'07" West a distance of 29.80 feet;
thence South 63°29'53" East a distance of 234.67 feet to a point on a non
tangent curve concave Southeasterly, having a radius of 1251.62 feet, a
radial to said point bears North 12°22'18" West; thence Easterly a distance
of 46.33 feet along said curve through a central angle of 2°07'16"; thence
South 15°45'08" East a distance of 467.43 feet; thence South 29°28'02" West
a distance of 458.45 feet; thence North 60°31'58" West a distance of 184.50
feet to the Northeasterly prolongation of a line parallel with a
Southeasterly 31.50 feet from that certain course described above as North
29°38'18" East a distance of 16.50 feet; thence South 29°38'18" West along
said prolongation and said parallel line a distance of 106.68 feet to the
beginning of a curve concave Northwesterly, having a radius of 278.50 feet,
said curve being concentric with and Southeasterly 31.50 feet from that
certain curve described above as having a radius of 247.00 feet and a length
of 122.42 feet; thence Southwesterly a distance of 142.53 feet along said
concentric curve through a central angle of 29°19'20"; thence South
58°57'39" West a distance of 34.54 feet to the POINT OF BEGINNING.
Containing an area of 15.221 acres, more or less.

A0196g

EXHIBIT"E"

a.  The Land Lease.

b.  The REA.

c.  Taxes and assessments for the year 1987 and subsequent years
which are not yet due and payable.

d.  Acts suffered by or done by or through or caused by Tenant or
persons claiming by, through or under Tenant.

e.  Zoning and building ordinances, laws, rules and regulations.

A0297g