**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

IN RE:

| | |
|---|---|
| **SEARS HOLDING CORPORATION, INC, et al** | Chapter 11 |
| Debtors. | Case No. 18-23538 (rdd)<br>(jointly administered) |

-------------------------------------------------------X

<u>**AFFIDAVIT OF MOLLY STENGEL IN SUPPORT OF CHURCH STREET, LLC'S (STORE NO. 4016) OBJECTION TO DEBTORS' NOTICE TO CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**</u>

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) |
| | ) ss: |
| COUNTY OF GREENVILLE | ) |

MOLLY STENGEL, being duly sworn deposes and says:

1.) I am a property manager employed by Hughes Development Corporation ("Hughes"). Hughes is property manager for the property located at 1 K-Mart Plaza, Greenville, South Carolina (the "Property"). I submit this affidavit based upon my personal knowledge on behalf of Church Street, LLC's objection to Debtor's Notice to Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases.

2.) Kmart is the tenant at the Property, pursuant to a lease dated January 26, 1962, as amended most recently by the June 8, 2004 Fifth Amendment to Lease (the "Lease"). Attached hereto as Exhibit A are the lease documents for the Property, including all lease amendments, assignments and extensions.

3.) Section 14 of the Lease requires Kmart to maintain the Property "in a good state of repair" and specifically to maintain and repair the HVAC systems and components thereof. (Ex. A, Lease, ¶ 14.) Moreover, in the Fifth Amendment of Lease, dated June 8, 2004, Kmart

1

agreed to, at Kmart's expense, maintain a maintenance contract that "provides for scheduled maintenance of the HVAC System, specifically including the cooling tower equipment." (Ex. A, Fifth Amendment, ¶ 1.)

4.) Based upon the inspection report of Teachey Service Company, a copy of which is attached hereto as Exhibit B, Kmart failed to properly maintain the HVAC system. As a result of such failure, the HVAC system at the Property needs substantial repairs. Attached hereto as Exhibit C is email correspondence between myself and representatives or agents of Kmart discussing the necessity of repairs to the HVAC system and Kmart's responsibility for said repairs. This email correspondence contains an attachment, which is an estimate Hughes received from Hoffman Mechanical Solutions for repair of the HVAC system's exterior drift eliminators at a cost of $17,718. Exhibit D is photographs taken of the HVAC system and its cooling towers on or around January 23, 2019.

5.) Kmart has not made the necessary repairs nor, upon information and belief, has Kmart properly maintained the HVAC system.

6.) Hoffman Mechanical Service has provided a quote of $7,568 for a yearly maintenance contract. Based upon Hughes' contracts at other properties in the same geographic area, we believe that a yearly water treatment contract, which is necessary to maintain the HVAC system, will costs no less than $4,800.

7.) Hoffman Mechanical Service has further advised that further maintenance may be required for the HVAC system, but that this can only be determined after a more thorough inspection. Specifically, Hoffman Mechanical Services has provided me with an estimate of $26,918 to repair the fill media within the HVAC system, which it believes may be necessary.

2

Hoffman Mechanical has also provided me with a replacement quote for $165,000 should the repair efforts reveal that the system is beyond repair.

8.) Accordingly, Hughes believes that the cost to cure Kmart's failure to maintain the HVAC system is likely no less than $57,004. If repair efforts reveal that a complete replacement is required, the cost to cure will be greater than $200,000.

9.) During the term of the Lease, Kmart added a small addition to the building at the Property and agreed that it would be responsible to maintain that addition. Kmart has failed to maintain the addition. The roof to the addition is collapsing, creating unsafe conditions. Attached hereto as Exhibit E are photographs of the addition taken on or about December 12, 2018. Attached as Exhibit F is correspondence between myself and representatives or agents of Kmart in which Kmart's representatives acknowledge their responsibility to maintain the addition.

10.) We have received estimates to repair or remove the building addition from Lane Construction. The estimate to repair the addition is $14,000 and the estimate to remove the addition entirely is $5,000.

11.) Kmart has also failed to maintain a canopy at the rear of the building on the Property. Attached as Exhibit G are photos of the canopy. The first photo was taken on or about December 12, 2018. The second photo was taken on or about January 22, 2019, which was after the Landlord removed the falling portion of the canopy for safety reasons after Kmart had failed to address the issue.

12.) We have received estimates to replace the canopy from Lane Construction. The estimate to replace the canopy is $12,000.

13.) These estimates are based upon visual observation only and are subject to change upon more thorough inspections and after we are able to commence repair work. As Kmart still occupies the Property, Hughes' ability to inspect more thoroughly is limited.

14.) Accordingly, subject to Hughes' ability to acquire further information, we believe the costs of curing Kmart's Lease defaults are no less than $74,004 and may exceed $200,000.

_Molly Stengel_
MOLLY STENGEL

Sworn to before me this
25th day of January, 2019

_____
NOTARY PUBLIC
Michael L. Brearley
Comm. Expires: 10-12-26