Patrick Collins
Veronique A. Urban
FARRELL FRITZ, P.C.
400 RXR Plaza
Uniondale, New York 11556
Tel:   (516) 227-0700
Fax:   (516) 227-0777

*Attorneys for Midwood Management Corp., as agent*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                              :     Chapter 11
                                                    :
SEARS HOLDINGS CORPORATION, *et al.*,               :     Case No. 18-23538 (RDD)
                                                    :     (Jointly Administered)
                                    Debtors.        :
---------------------------------------------------------------x

### OBJECTION OF MIDWOOD MANAGEMENT CORP. TO DEBTORS' NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION

Midwood Management Corp., as agent for Expressway Plaza I, LLC and Farmingville Associates Phase 1, LLC as tenants in common ("Landlord"), hereby submits this objection (the "Objection") to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1731] (the "Notice of Cure Costs and Potential Assumption and Assignment") filed in these cases by the above-captioned debtors and debtors-in-possession (the "Debtors"). In support of its Objection, Landlord submits the Declaration of Steven Brown (the "Brown Declaration"), annexed hereto as *Exhibit A*, and the Declaration of Aaron E. Zerykier (the "Zerykier Declaration"), annexed hereto as *Exhibit B*, and respectfully states as follows:

### PRELIMINARY STATEMENT

1.  In the Notice of Cure Costs and Potential Assumption and Assignment, the Debtors

indicate they may seek to assume their lease (the "Lease") with Landlord for premises in Farmingville, New York (identified by the Debtors as Store 4871) and assign the Lease to Transform Holdco, LLC (the "Buyer") in connection with the Global Asset Sale Transaction.[1]

2. However, the Lease expired by its terms on October 23, 2018 on account of a prepetition default by the Debtors thereunder and Landlord's service of notice, prior to the Petition Date, indicating the Lease would expire ten days later on account of such default under the conditional limitation provision of the Lease. Under section 365(a) of the Bankruptcy Code, a debtor may only assume or reject any executory contract or unexpired lease of the debtor. The Lease may not be assumed or assigned because it has already expired.

3. Even if it were somehow to be determined that the Lease did not expire by its terms on October 23, 2018, the Lease would terminate by its terms on October 31, 2019, because the notice sent in December 2018 by the Debtors to exercise their option to extend the term of the Lease beyond October 31, 2019 was not timely served within the period permitted under the Lease. The Notice of Cure Costs and Potential Assumption and Assignment correctly lists the Lease termination date as October 31, 2019. If the Debtors assert that the Lease termination date is later than October 31, 2019, they should amend their Notice of Cure Costs and Potential Assumption and Assignment now so both the Landlord and Buyer understand the parameters of what the Debtors seek to assume and assign.

4. Finally, the Cure Amount for the Lease is not $0 as asserted in the Notice of Cure Costs and Potential Assumption and Assignment. The Debtors have committed numerous monetary and nonmonetary defaults under the Lease. In fact, the monetary Cure Amount exceeds $250,000 and the estimated costs the Debtors would need to incur make repairs to the Premises to

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Notice of Cure Costs and Potential Assumption and Assignment.

cure their failure to keep the Premises in good and tenantable repair exceed $1.4 million.

5.  For the reasons set forth in this Objection, Landlord objects to (i) the assumption and assignment of the Lease on the grounds that the Lease has already terminated by its terms and is not property of the Debtors' estate and (ii) the Cure Amount stated in the Notice of Cure Costs and Potential Assumption and Assignment is incorrect.

## BACKGROUND

### A.    Kmart's Default under the Lease

6.  Landlord, and Debtor Kmart Corporation ("Kmart") are parties to a lease (as amended and extended, the "Lease"), dated December 20, 1991, under which Kmart leased from Landlord premises located at 2280 North Ocean Avenue, Farmingville, New York (the "Premises").[2] Brown Declaration, ¶ 3. The Premises is located within a shopping center known as Expressway Plaza. *Id.*

7.  On October 10, 2012, Kmart sent to the Landlord a letter of agreement to acknowledge that, pursuant to Article 30 of the Lease, Kmart had exercised its option to perform the Common Area (as defined in the Lease) maintenance on the Premises as of the commencement date of the Lease.[3] *Id.*, at ¶ 4.

8.  Kmart failed to comply with its maintenance obligations under the Lease with respect to the Common Area parking lot and drive lanes. Brown Declaration, ¶ 5. As a result, by Notice dated November 8, 2017,[4] Landlord exercised its rights under Article 25(F) to perform emergency repair work to the parking lot and drive lanes (the "Emergency Work") at Kmart's cost and expense. *Id*.

---

[2] A copy of the Lease is annexed to the Brown Declaration as Exhibit "1".

[3] A copy of the letter dated October 10, 2012 is annexed to the Brown Declaration as Exhibit "2".

[4] A copy of the November 2017 Notice is attached to the Brown Declaration as Exhibit "3".

9. On or about April 4, 2018, Landlord sent Kmart three invoices in the total amount of $215,426.88 for Kmart's share of the costs incurred by Landlord to perform the Emergency Work.[5] Brown Declaration, ¶ 6. Pursuant to Article 25(F) of the Lease, Kmart's share of the sums expended by Landlord, together with interest on the unreimbursed amounts at eighteen (18%) per annum, were deemed additional rent (the "Additional Rent").

10. Kmart failed to pay the invoices sent by Landlord for the Additional Rent. Brown Declaration, ¶ 7.

11. Also in April 2018, Landlord retained Titan Engineers PC to perform a Structural Condition Survey of the Premises. In its report of the results of the Structural Condition Survey, Titan Engineers indicated numerous material physical deficiencies existed at the Premises. Titan Engineers recommended numerous specific actions be taken within 6 months to address these deficiencies and estimated that those repairs would cost approximately $1,439,790.00. Brown Declaration, ¶ 8.

12. On September 12, 2018, Landlord, pursuant to its rights under Article 25 of the Lease, sent to Kmart a "Notice of Default and Thirty (30) Day Notice to Cure".[6] Zerykier Declaration, ¶ 3. In the Notice of Default and Thirty (30) Day Notice to Cure, the Landlord notified Kmart that it was in default under the Lease for its failure to keep the Premises in good and tenantable repair as required under Article 15[7] and Article 30 of the Lease. A copy of the Structural Condition Survey was attached to the Notice of Default and Thirty (30) Day Notice to Cure.

---

[5] Copies of the invoices are attached as Exhibit "4" to the Brown Declaration.

[6] A copy of the Notice of Default and Thirty (30) Day Notice to Cure is annexed to the Zerykier Declaration as Exhibit "A".

[7] Pursuant to Article 15.B of the Lease, Kmart agreed "to keep the entire Demised Premises in good and tenantable condition and repair, including any necessary maintenance, repairs, and replacements to roof, structural and non-structural, interior and exterior portions of the Demised Premises, and plumbing, electrical, HVAC and other systems located in an servicing the Demised Premises."

FF\8065056.2

13. Landlord received no response from Kmart with respect to the Notice of Default and Thirty (30) Day Notice to Cure and it appears to Landlord that none of the deficiencies identified in the report have been repaired. Brown Declaration, ¶ 9.

14. On September 12, 2018, Landlord also sent to Kmart, pursuant to its rights under Article 25 of the Lease, a "Notice of Default and Fifteen (15) Day Notice to Cure".[8] Zerykier Declaration, ¶ 4. The Notice of Default and Fifteen (15) Day Notice to Cure informed Kmart that it was in default under the Lease for its failure to pay the Additional Rent relating to the Emergency Work. The Second Notice of Default further informed Kmart that, pursuant to Article 25 of the Lease, unless Kmart cured the default within fifteen (15) days from service of the notice, the Landlord would serve Kmart with a notice of election to end the term of the Lease at the expiration of ten (10) days from the date of service of such notice.

15. Landlord received no response from Kmart with respect to the Notice of Default and Fifteen (15) Day Notice to Cure and the default was not cured. Brown Declaration, ¶ 9.

### B. Termination of the Lease

16. Having received no response to the Notice of Default and Fifteen (15) Day Notice to Cure, the Landlord, exercising its rights pursuant to Article 25 of the Lease, sent to Kmart a Ten (10) Day Notice of Lease Termination (the "Lease Termination Notice") on October 11, 2018.[9] Zerykier Declaration, ¶ 5.

17. The Lease Termination Notice informed Kmart that, due to its default in fulfilling the covenants of the Lease, and its subsequent failure to remedy the defaults identified in the Notice of Default and Fifteen (15) Day Notice to Cure, the Lease would terminate ten (10) days following

---

[8] A copy of the Notice of Default and Fifteen (15) Day Notice to Cure is annexed to the Zerykier Declaration as Exhibit "B".

[9] A copy of the Lease Termination Notice is annexed to the Zerykier Declaration as Exhibit "C".

the service of the Lease Termination Notice on Kmart. Notably, the Lease Termination Notice, consistent with the terms of the Lease, did not provide that Kmart could cure the defaults during the ten (10) day period.

18. The Lease subsequently expired by its terms on October 23, 2018—taking into account two additional days as required under the Lease because the Lease Termination Notice was served by certified mail. Landlord has received no response from Kmart with respect to the Lease Termination Notice.

19. Notwithstanding the termination of the Lease, Kmart remains in possession of the Premises without the Landlord's consent. Kmart remitted rent to the Landlord for the months of November 2018, December 2018, and January 2019 which the Landlord has not yet accepted.[10] Brown Declaration, ¶ 10.

### C. Landlord's Motion Declaring Automatic Stay Inapplicable to Lease

20. On November 29, 2018, Landlord filed its *Motion to Confirm Termination or Absence of Stay Motion for Order Declaring Automatic Stay Inapplicable to Non-Residential Real Property Lease* [ECF No. 932] (the "Motion") in these chapter 11 cases. In the Motion, Landlord seeks an order of this Court declaring the automatic stay of Section 362(a) of the Bankruptcy Code inapplicable to actions to be undertaken by Landlord to recover the Premises from Kmart following termination of the Lease.

21. Upon the Debtors' requests, the hearing on the Motion has been adjourned twice and is now scheduled to be heard on February 18, 2019.

---

[10] Landlord and the Debtors, through their counsel, have recently agreed that the Landlord may deposit these checks without prejudice to its argument that the Lease has terminated. As a result, Landlord may elect to deposit these checks.

**D.    The Option to Extend Was Not Validly Exercised by the Debtors**

22.     The Lease expired by its terms on October 23, 2018. Even if it were to be determined that the Lease did not expire on that date, the Lease would terminate by its terms on October 31, 2019 because the Debtors failed to timely exercise Kmart's option to extend the term of the Lease beyond that date.

23.     Section 14 of the Lease provides Kmart with four (4) successive options to extend the term of the Lease for an additional period of five (5) years on each such option. Section 14(a) further provides, in relevant part, that "[i]f Tenant shall elect to exercise any of the aforesaid options, it shall do so by giving notice to Landlord not less than one (1) year prior to the expiration of the term of this Lease or of this Lease as extended."

24.     Kmart last exercised its option to renew the Lease on October 17, 2013. As a result of Kmart's timely exercise of that option, the Lease was extended for an additional term of five (5) years, commencing November 1, 2014 to and including October 31, 2019.

25.     Section 108(b) of the Bankruptcy Code states:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

26.     Under the terms of the Lease, Kmart was required to provide notice to Landlord of its exercise of the option to extend the term of the Lease under Section 14 by no later than October

7

FF\8065056.2

31, 2018. As a result of the Debtors' bankruptcy filing, and by application of Section 108(b) of the Bankruptcy Code, Kmart's time to exercise its option to extend the term of the Lease (assuming the Lease had not already terminated) was extended from October 31, 2018 to December 14, 2018—the 60th day after the Petition Date.

27. Section 35 of the Lease, which describes the notice requirements under the Lease, provides, in relevant part, that for notices provided by mail, the "[d]ate of notice shall be two days following the date on which such notice is deposited in a post office of the United States Postal Service…"

28. In accordance with Section 35 of the Lease, in order to timely exercise its option to extend the term of the Lease, Kmart needed to deposit its notice to Landlord in a post office of the United States Postal Service by no later than December 12, 2018.

29. On December 18, 2018, Landlord received by certified mail a letter from Kmart purporting to exercise the option to extend the term of the Lease. Brown Declaration, ¶ 11.

30. Although the letter is dated December 12, 2018, the letter was not deposited in a post office of the United States Postal Service on that date. Rather, the letter was not deposited in a post office of the United States Postal Service until December 13, 2018. Attached as Exhibit "5" to the Brown Declaration are copies of the envelopes delivered to Landlord on December 18, 2018 from the United States Postal Service within which were contained Kmart's notice to the Landlord. Brown Declaration, ¶ 11. It is clear from those envelopes that the stamp of the United States Postal Service shows the date of mailing of the notice by Kmart as "12/13/2018".

31. Kmart's notice to Landlord to extend the term of the Lease was not timely, and was therefore rejected by Landlord. Landlord's counsel sent Kmart a letter on December 20, 2018 rejecting its purported exercise of the option.

32.     As a result, to the extent a court finds that the term of the Lease did not expire on October 23, 2018, the Lease will expire on October 31, 2019.  This is consistent with the Notice of Cure Costs and Potential Assignment and Assumption, which likewise lists October 31, 2019 as the Lease termination date.  It is unclear from the Notice of Cure Costs and Potential Assignment and Assumption, however, whether lease counterparties can rely on the lease termination dates stated in that notice.

**OBJECTION**

**A.     The Lease Has Expired and, Therefore, Cannot be Assumed or Assigned**

33.     Under section 365(a) of the Bankruptcy Code, a debtor, subject to the bankruptcy court's approval, "may assume or reject any executory contract or *unexpired* lease of the debtor" (emphasis added).

34.     Similarly, Section 541(b)(2) of the Bankruptcy Code excludes from property of the estate "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease *during the case*" (emphasis added).

35.     In accordance with Article 35 of the Lease, the Notice of Default and Fifteen (15) Day Notice to Cure was mailed to Kmart on September 12, 2018, by certified mail return receipt requested. Taking into account an additional two days because the Notice of Default and Fifteen (15) Day Notice to Cure was served by certified mail, the date the Notice of Default and Fifteen (15) Day Notice to Cure was deemed given is September 14, 2018.  Pursuant to Article 25(A) of

9

the Lease, an Event of Default occurred thereunder upon Kmart's failure to cure its failure to pay the Additional Rent within 15 days from when the Notice of Default was given.

36. In accordance with Article 35 of the Lease, the Lease Termination Notice was mailed to Kmart on October 11, 2018, by certified mail return receipt requested. Taking into account an additional two days because the Notice of Default was served by certified mail, the date the Lease Termination Notice was given for purposes of the Lease is October 13, 2018.

37. Notwithstanding that the Debtors filed for bankruptcy protection on October 15, 2018, the Lease expired on October 23, 2018.

38. A lease may be terminated under New York law by operation of a conditional limitation. *See TSS-Seedman's, Inc. v. Elota Realty Co.*, 72 N.Y.2d 1024; 534 N.Y.S.2d 925 (1988) (recognizing that, under conditional limitation clause in real property lease, term of lease ends by the passage of time following service of notice by landlord after tenant's default); *In re Artisanal 2015, LLC*, 2017 WL 5125545 at * 9 (Bankr. S.D.N.Y. 2017) (explaining operation of conditional limitation lease clauses under New York law); *In re Musikahn Corp.*, 57 B.R. 938, 940 (Bankr. E.D.N.Y. 1986) (same). When a lease contains a conditional limitation, the landlord may send the tenant in default a notice of termination of the lease, stating that the term of the lease will be deemed to expire upon a specified date due to tenant's default. *See Musikahn,* 57 B.R. at 938. "The lease is thus terminated upon the mere lapse of time, rather than on any further act by the landlord." *Id*.

39. Article 25(B) of the Lease provides:

> Upon the occurrence of an Event of Default, Landlord shall thereafter have and is hereby given the right to serve upon Tenant a notice of cancellation of this Lease at the end of 10 days from the date such notice is given, and upon the expiration of such 10 day period this Lease shall wholly cease and expire (without the delivery of any further notice) in the same manner as if it were the expiration of the term…

This provision is clearly imposes a conditional limitation as it provides for the expiration of the term of the Lease at a fixed time that is earlier than the term that would otherwise be in effect. *See Artisanal 2015* WL 5125545 at * 9 (clause is conditional limitation if it has "the effect of definitely fixing an earlier date for the expiration of the lease than the original term prescribed by the lease ....") (quoting 2 J. Rasch, *New York Landlord and Tenant* § 752 (2d ed. 1971)).

40. The Landlord sent the Lease Termination Notice to Kmart prior to the commencement of the Debtors' bankruptcy cases. The Lease terminated by operation of a conditional limitation, the passage of ten days' time following service of the Lease Termination Notice. The Lease Termination Notice did not provide Kmart any further opportunity to cure the outstanding defaults under the Lease but, rather, terminated the Lease without any further act by the Landlord or Kmart.

41. The Debtors' bankruptcy filing, sandwiched between the serving of the Lease Termination Notice and the termination date of the Lease, did not toll the termination date of the lease. The automatic stay does not toll the running of time under a contract and does not prevent the automatic termination of a contract. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200 (8th Cir. 1984).

42. In the leading case in the Second Circuit addressing these issues, *In re Policy Realty*, 242 B.R. 121 (S.D.N.Y. 1999), *aff'd Policy Realty Corp. v. Trever Realty LLC*, 2000 U.S. App. LEXIS 8846 (2d Cir. 2000), the United States District Court for the Southern District of New York held that Section 362(b)(10)[11] of the Bankruptcy Code applies to leases that expire because

---

[11] Section 362(b)(10) of the Bankruptcy Code provides that the automatic stay does not apply to "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or ***during a case*** under chapter 11 to obtain possession of such property" (emphasis added).

of a conditional limitation following a default and not just to leases for which the non-default term expiration date has been reached.

43. In *Policy Realty*, the landlord terminated a lease with a tenant for failure to pay rent and sent a termination notice to its tenant. Policy Realty, the subtenant on the lease, commenced an action by order to show cause in state court, seeking a temporary restraining order pending a hearing on the termination of the lease. Policy Realty subsequently filed for bankruptcy relief on September 9, 1998, just before the temporary restraining order it had obtained was set to expire. The district court held that the exception to the automatic stay under Section 362(b)(10) applied, and the lease had expired, because the termination notice sent by the landlord caused an expiration of "the stated term of the lease" where the tenant did not have the right to cure during the notice period and all that needed to occur for the termination to become effective was the passage of time. *Id.* at 128. The court reasoned that under New York law, a conditional limitation termination notice satisfied Section 362(b)(10), because "the lease is terminated when the time expires, rather than on any further act by the landlord." *Id.* The state court's temporary restraining order merely tolled the termination date, and did not in any way impact the landlord-tenant relationship. *Id.* The court therefore concluded that the lease was not property of the estate under Section 541(b) and was not subject to the automatic stay.

44. Kmart had its opportunity to cure the default under the Lease when it received the Landlord's Notice of Default and Fifteen (15) Day Notice to Cure. Kmart did not to respond to or act with respect to the Notice of Default. Landlord then sent to Kmart the Lease Termination Notice, as was its right under the terms of the Lease.

45. The Lease terminated on October 23, 2018, ten days after the date of notice for the Lease Termination Notice. The Debtors' bankruptcy filing did not act to toll the passage of the ten day notice period.

46. Pursuant to Sections 365 and 541(b)(2) of the Bankruptcy Code, the Lease is therefore not property of the Debtors' estates and is not an unexpired lease that can be assumed and assigned by the Debtors. *See In re EBC I, Inc.*, 356 B.R. 631, 638 (Bankr. D. Del. 2006) ("[I]f a contract is terminated pre-petition it is no longer executory and section 365 is not applicable.") (citing *In re C & S Grain Co.*, 47 F.3d 233, 237 (7th Cir. 1995) (concluding that because contracts were terminated pre-petition they could not be assumed under section 365) and *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d Cir. 1988) (concluding that "[a] contract may not be assumed under § 365 if it has already expired according to its terms.")).

B. **Objection to Cure Amount**

47. Pursuant to section 365(b) of the Bankruptcy Code, a lease can only be assumed if all monetary defaults are cured by payment, all non-monetary defaults are cured by performance, the non-debtor party is compensated for any losses resulting from such defaults and the non-debtor party is provided with adequate assurance of future performance under the lease. See 11 U.S.C. §§ 365(b)(1)(A)-(C).

48. The Notice of Cure Costs and Potential Assumption and Assignment lists the cure amount for the Lease as $0.

49. However, the correct cure amount is not less than $1,692,134.14.

50. As set forth herein, *supra*, the cure cost is comprised of (i) arrears of Additional Rent due under the Lease arising from Debtors' failure to reimburse Landlord for the Emergency

13

Work carried out by the Landlord at the Premises in the amount of $215,426.88, plus interest in the amount of $36,917.26 through December 31, 2018, as well as interest accruing thereafter; (ii) the repairs the Debtors would need to make to the Premises, at an estimated cost of at least $1,439,790.00, to cure the present default existing under the Lease arising from Debtors' failure to keep the Premises in good and tenantable condition and repair as set forth in the Notice of Default and Thirty (30) Day Notice to Cure, as well as additional maintenance deficiencies recently observed at the Premises[12]; (iii) the cost to cure the Failure to Report Gross Sales Default, as well as any Percentage Rent determined to be due and owing once gross sales are reported (see paragraph 51 below); (iv) the cost to cure the Failure to Indemnify Default (see paragraph 52 below) and (v) attorneys' and engineer's fees and expenses incurred by Landlord because of Debtors' defaults under the Lease (see paragraphs 53-55 below).[13]

51. In addition to the defaults noted in the Notice of Default and Fifteen (15) Day Notice to Cure and the Notice of Default and Thirty (30) Day Notice to Cure, Kmart has also defaulted (the "Failure to Report Gross Sales Default") on its obligations under Article 3 of the Lease by failing to deliver to Landlord by November 30, 2018 a statement of Kmart's gross sales

---

[12] An inspection of the Premises conducted by Landlord on January 25, 2018 revealed that the following maintenance deficiencies exist at the Premises beyond those reported in the Titan Engineers report annexed to the Notice of Default and Thirty (30) Day Notice to Cure.

1) Broken parking lot sign (North Parking Lot Island);
2) Damaged stop sign (South Exit);
3) Broken bail of cardboard in rear loading dock;
4) Refrigerator case and loose debris in rear loading dock
5) Shopping carts being stored against rear wall;
6) Loose debris and pallets between trailers in rear lot;
7) Two new pot holes that were not identified on the original engineers report;
8) Overgrown shrubs on parking lot islands; and
9) Overgrown shrubs on parking lot islands.

Brown Declaration, ¶ 8.

[13] If the checks submitted by the Debtors in payment of the rent for November 2018, December 2018 and January 2019, in the total amount of $161,746.50 do not clear if and when the Landlord deposits them, the cure cost paid by the Debtors must include the amount of these checks.

during the period November 1, 2017 through October 31, 2018 (the "Prior Lease Year"). Brown Declaration, ¶ 13. Kmart must cure this default, and pay any Percentage Rent (as defined in the Lease) determined to be due and owing for the Prior Lease Year based on such statement in order to assume the Lease.

52. Kmart is also in default (the "Failure to Indemnify Default") of its obligations under the Lease for its failure to indemnify Landlord against third-party claims arising from the condition of the Common Area, and specifically the Parking Lot. As noted above, Kmart exercised its option to maintain the Common Area. Yet, Kmart, despite demand from Landlord, has failed to defend or indemnify Landlord against the following claims asserted by third parties against Landlord arising from the condition of the parking lot: (i) Teresa Panico v. Farmingville Associates, Kmart Corporation et al., (ii) Susan Mcinally Farmingville Associates, Kmart Corporation et al. and (iii) Anthony Scullari v. S.A. Bonsignore, et al. (collectively, the "Third Party Claims"). Brown Declaration, ¶ 12. Under Articles 29 and 30 of the Lease and applicable law, Kmart is required to indemnify Landlord against such losses. Landlord has suffered pecuniary loss on account of Kmart's failure to indemnify because Landlord's insurance carrier is taking the Third Party Claims into account when determining the applicable premiums charged to Landlord for the Premises and Landlord will continue to suffer loss going forward unless Kmart defends and indemnifies Landlord against the Third Party Claims and third party claims that may arise in the future.

53. Article 25.F of the Lease provides that "[i]f Landlord, at any time, by reason of such breach, is compelled to incur any expense, including reasonable attorneys' fees, in instituting or prosecuting any action or proceeding to enforce Landlord's rights hereunder, the sum or sums so paid by Landlord, with interest thereon at the Lease Interest Rate.[14] shall be deemed to be

---

[14] The "Lease Interest Rate" is defined in Article 25(F) of the Lease as "the rate of the 18% per annum or such lesser rate as shall be the highest rate legally permissible."

additional rent hereunder and shall be due from Tenant to Landlord on the first day of the month following the payment of such respective sums or expenses."

54. Landlord incurred consulting fees of $4,859.72 for the preparation of the Structural Condition Survey. The Landlord has incurred about $50,000 of attorneys' fees through December 31, 2018 addressing Kmart's defaults under the Lease. Brown Declaration, ¶ 14. The Landlord expects that at least $40,000 of additional attorneys' fees and expenses have been or will be incurred in addressing during these bankruptcy cases, the Debtors' defaults under the Lease. The Landlord's engineer's and attorneys' fees and expenses were incurred on account of the Debtors' breach of their obligations under the Lease and the Landlord is entitled to recover these fees and expenses from the Debtors, as the defaulting party, pursuant to Article 25(F) of the Lease. The Debtors cannot assume the Lease unless they reimburse the Landlord for these fees to compensate the Landlord for its pecuniary losses arising from the Debtors' defaults under the Lease.

55. To the extent that rent, additional attorneys' fees, or other charges become due after the date of this Objection but are not paid, or the Landlord suffers other pecuniary losses under the Lease, the Landlord hereby further reserves its right to amend this Objection to reflect such additional amounts which may not have yet been billed or have not yet become due under the terms of the Lease.[15] The Landlord also reserves all rights to also require the Debtors to cure any other existing non-monetary defaults under the Lease to the fullest extent permitted by the Bankruptcy Code and to assert any claims it may have in the event that the Lease is ultimately not assumed by the Debtors.

---

[15] For instance, because Kmart continues to occupy and use the Premises notwithstanding termination of the Lease, Landlord will be sending Kmart an invoice in the amount of $221,265.26 for Kmart's share of the real property taxes paid by Landlord on the taxable parcel of real property of which the Premises is a part. Under Article 4 of the Lease, Kmart is required to pay this invoice within 30 days of receipt. To the extent Kmart has not paid the invoice by the time of closing of the Global Asset Sale Transaction, the amount of this invoice comprises must be included as a cure cost for the Lease

FF\8065056.2

**C.     The Termination Date is no Later than October 31, 2019**

56.    To the extent that a court somehow finds that the term of the Lease did not expire on October 23, 2018 on account of Landlord's service of the Notice of Default and Fifteen (15) Day Notice to Cure, the Lease will expire on October 31, 2019.  The Debtors did not timely serve their notice to extend the term of the Lease past October 31, 2019.  The Notice of Cure Costs and Potential Assignment and Assumption likewise lists October 31, 2019 as the Lease termination date.  Landlord raises Debtor's untimely exercise of its option to extend the term of the Lease to ensure that Buyer is aware of this limitation before it makes its designation under the Asset Purchase Agreement of which leases are to be assumed by the Debtors and assigned to Buyer.

**RESERVATION OF RIGHTS**

57.    The Landlord reserves the right to supplement this Objection prior to or at the hearing on the Notice of Cure Costs and Potential Assumption and Assignment. In addition, the Landlord reserves all of its rights under the Lease, as a matter of law and/or equity.

WHEREFORE, Landlord requests that the Court sustain its Objection and grant such further relief as it deems fair and appropriate.

Dated:  Uniondale, New York
            January 26, 2019                         FARRELL FRITZ, P.C.


                                                     By:    /s/ *Patrick Collins*
                                                            Patrick Collins
                                                            Veronique A. Urban
                                                            400 RXR Plaza
                                                            Uniondale, New York 11556
                                                            Tel:   (516) 227-0700
                                                            Fax:   (516) 227-0777

                                                            *Attorneys for Midwood Management Corp., as agent for Expressway Plaza I, LLC and Farmingville Associates Phase 1, LLC as tenants in common*

FF\8065056.2