HINSHAW & CULBERTSON LLP
800 Third Avenue
13th Floor
New York, NY  10022
Telephone:  212-471-6209
Alan F. Kaufman
akaufman@hinshawlaw.com

*Attorneys for Pratt Corrugated Holdings, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | |
| SEARS HOLDING CORPORATION, et al,[1] | Chapter 11 |
| Debtors. | Case No. 18-23538 (RDD) |
| | (Jointly Administered) |

## LIMITED OBJECTION OF PRATT CORRUGATED HOLDINGS, INC. TO THE  DEBTORS' NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION

Pratt Corrugated Holdings, Inc. ("Pratt"), by and through its undersigned counsel, hereby

submits this limited objection to the cure amount proposed and certain other matters in

connection with the potential assumption and assignment of the Debtors' agreement with Pratt, as

listed in the *Notice of Cure Costs and Potential Assumption and Assignment of Executory*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears  Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870);  Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

*Contracts and Unexpired Leases in Connection with the Global Sale Transaction* [Dkt. No. 1731] (the "Assumption and Assignment Notice"). In support of this limited objection, Pratt states as follows:

1.    On or about August 15, 2014, Pratt entered into that certain Master Supply Agreement (the "Pratt Agreement") with Debtors Sears Holding Management Corporation, Sears Logistics Services, Inc., Kmart Corporation, Sears, Roebuck and Co., and their Affiliates (as that term is defined in the Pratt Agreement). A true and accurate copy of the Pratt Agreement, as amended, is attached hereto as **Exhibit A**.

2.    The amount due and owing under the Pratt Agreement by the Debtors to Pratt, payment of which is necessary to cure all defaults under the Pratt Agreement before the Debtors may assume and assign the Pratt Agreement, is $159,678.62 (the "Pratt Unpaid Amount").

3.    The Assumption and Assignment Notice proposes a cure amount of $80,166.00 and $35,294, for a total proposed cure amount of $115,460.00. The proposed cure amount is $44,218.62 less than the Pratt Unpaid Amount due and owing under the Pratt Agreement.

4.    It appears the Debtors did not account for and include certain invoices when they calculated the proposed cure amount for the Pratt Agreement. A summary of unpaid invoices is attached hereto as **Exhibit B**. Accounting for and including the amounts due under all of the outstanding invoices would result in a proposed cure amount which accurately reflects the Pratt Unpaid Amount.

5.    Accordingly, Pratt objects to the cure amount proposed in connection with the potential assumption and assignment of the Pratt Agreement to the extent such amount is less than the Pratt Unpaid Amount.

303136641v1 1009146

6.    Additionally, on Exhibit A to the Debtors' Assumption and Assignment Notice, the Debtors listed the Pratt Agreement but failed to include Sears Logistics Services, Inc. as a party to the Pratt Agreement, incorrectly included Pratt Industries USA as a party to the Pratt Agreement, and incorrectly included Innovel Solutions, Inc. as a party to the Pratt Agreement (or if Innovel Solutions, Inc. is an Affiliate under the terms of the Pratt Agreement, then incorrectly identifying Innovel Solutions, Inc. as a party indebted to Pratt under the Pratt Agreement). Accordingly, Pratt objects to the Assumption and Assignment Notice to the extent that these errors should be corrected and Sears Logistics Services, Inc. should be included as a party to the Pratt Agreement, Pratt Industries USA should not be included as a party to the Pratt Agreement, and Innovel Solutions, Inc. should not be included as a party to the Pratt Agreement.

7.    Pratt reserves the right to contest the assumption, assignment or rejection of the Pratt Agreement on any basis other than the proposed cure amount or as otherwise asserted herein. Pratt further reserves the right to file and prosecute a Motion for Allowance of Administrative Expense, and to assert that all or a portion of the Pratt Unpaid Amount, or any other amounts due and owing to Pratt under the Pratt Agreement, are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

Dated: January 25, 2019          HINSHAW & CULBERTSON LLP


By:   /s/ Alan F. Kaufman
      Alan F. Kaufman
      800 Third Avenue
      13th Floor
      New York, NY  10022
      Telephone: 212-471-6209
      E-mail: akaufman@hinshawlaw.com

      *Attorneys for Pratt Corrugated Holdings, Inc.*

3

303136641v1 1009146

**Exhibit A**

Master Supply Agreement dated August 15, 2014

303136641v1 1009146

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B08C7476

# MASTER SUPPLY AGREEMENT
Corrugated

These terms and conditions ("AGREEMENT") are effective as of August 15, 2014 (the "Effective Date") between the undersigned supplier ("Supplier") and Sears Holdings Management Corporation ("SHMC"), Sears Logistics Services, Inc. ("SLS"), Kmart Corporation ("Kmart"), and Sears, Roebuck and Co. ("Sears", together with SHMC and Kmart, the "Company"), or their Affiliates (as defined below). This Agreement applies to all Products (as defined below) provided by or on behalf of the Supplier to Company.

Supplier and Company hereby agree as follows:

1.    **DEFINITIONS.** The following definitions apply in this AGREEMENT: (a) "Affiliate" means any individual, entity (e.g., corporation, L.L.C.) that, at the applicable time, directly or indirectly controls, is controlled with or by or is under common control with, a party; provided that, as to Company, only entities directly or indirectly controlled by Sears Holdings Corporation will be deemed to be Company Affiliates, and provided further that each Affiliate (or portion thereof) that has been or hereafter is divested by Company or its Affiliates will continue to be deemed a Company Affiliate for five years following such divestment, (b) "Agreement" means an Order and this Agreement; (c) "Applicable Laws" means the applicable federal, state and local laws, ordinances, governmental orders, rules, regulations or prohibitions of each jurisdiction applicable to this Agreement including all jurisdictions where Products are created and where Products are to be delivered or used; (d) "Authorized Users" means: (i) Company and its Affiliates, (ii) all persons who are licensed to do business using the Company's or its Affiliates' Marks (e.g., Sears Hometown Stores, Sears Optical), and (iii) Personnel of foregoing entities; (e) "Change of Control" means (i) a sale of all or substantially all of the assets of Supplier, whether in a single transaction or a series of transactions or (ii) any event that results in 50% or more of the total voting power entitled to vote in the election of the board of directors of Supplier or the surviving or new entity (or in the event that Supplier or the surviving or new entity is not a corporation, the equivalent to the board of directors) being held by a person or persons other than either the shareholders or members of Supplier who, individually or as a group, held 50% or more of such voting power immediately prior to such transaction or event, including the merger or consolidation of Supplier with or into a limited liability company, corporation, or other entity, or the merger of a limited liability company, corporation, or other entity into Supplier; (f) "Confidential Information" means: (i) all information relating to Company's sales, pricing, cost, inventory, operations, plans and programs; (ii) all trade secrets of Company including any and all customer lists, customer survey responses and any other information concerning any of Company's customers; (iii) any Specification furnished by Company; (iv) patent applications, and other embodiments of Company's IP Rights; and (v) any other information that is not publicly available that is designated by Company as Confidential Information including all such information disclosed in connection with discussions regarding potential business with Supplier; (g) "IP Rights" means all intellectual property rights, which now or hereafter exist, in any jurisdiction, whether conferred by operation of law, contract or license, including: (i) rights of authorship, including copyrights, moral rights, and mask-works, (ii) Marks, (iii) cosmetic designs, ornamental appearance and trade dress, (iv) trade secret rights, (v) inventions and technology (whether patentable or not and whether or not reduced to practice), (vi) confidential information, (vii) software and databases, (viii) rights of publicity, (ix) patents, designs, algorithms and other industrial property rights, and (x) "rental" rights and rights to remuneration; (h) "Marks" means all domestic and foreign trademarks, service marks, trade names, registrations and applications to register the foregoing, and logos and domain names; (i) "Order" means the particular PO (defined below) under which Products are ordered; (j) "Personnel" means the officers, directors, employees, agents, suppliers, licensors, licensees, contractors, subcontractors, and other representatives, from time to time, of: (i) the applicable entity, and (ii) as to Supplier, its affiliates; (k) "PO" means a written or electronic purchase order issued by Company; (l) "Products" means all goods and materials (of any kind or nature) furnished by Supplier, including software and services provided by Supplier in connection with the business relationship established by this Agreement; (m) "Specifications" means: (i) the detailed description of Products set forth in this Agreement, or otherwise provided by Company in writing, (ii) all industry and government standards applicable to the Products, as modified from time to time (including UL, CPSC and other standards for safety and efficiency), and (iii) all performance claims and representations contained in the Specifications given by Company in writing, by Supplier in writing, or expressed in writing on the Product itself; and (n) "Unauthorized Code" means any feature, routine or device that is intended or designed to disrupt the operation of, destroy, erase, damage or otherwise render inoperable any Company Electronic System (e.g., a malicious program, virus, worm, password checking, CPU serial number checking, or time dependency), either automatically, upon the occurrence of a certain event, upon the taking of or failure to take a certain action, or under the control of a third person. Terms that are not defined in this Agreement have the meanings given them in the Uniform Commercial Code, as in effect in the State of Illinois (the "UCC").

2.    ORDER PROCESS.

2.1    Order Documents. To order Products from Supplier under this Agreement, Company will issue an Order. Orders will be effective upon acceptance by Supplier. A PO will be deemed accepted by Supplier if Supplier takes any action to fulfill the PO. If Supplier does not accept any PO, Supplier shall promptly notify Company in writing, addressed to the Company representative who issued the PO. Unless the Company otherwise agrees in writing after the Effective Date: (a) each Order hereafter by Company automatically incorporates the terms of this Agreement; and (b) this Agreement governs all Products supplied by Supplier, whether or not an Order is actually issued by Company. Company has no obligation to compensate Supplier for Products that are not ordered through an Order.

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B09C7476

2.2.    Order of Precedence.  In the event of a conflict between the terms of this Agreement and an Order, the following terms in a PO (and only these terms) will control over this Agreement: (i) a description of the Products being ordered, (ii) price, (iii) quantity (iv) delivery location, and (v) Specifications.

2.3    Purchase Obligations.  This Agreement does not give rise to any commitment by Company to purchase any Products. A commitment to purchase Products only arises when Company issues a PO.  All estimates or forecasts of Company's future needs for Products that Company may provide to Supplier in connection with this Agreement are for planning purposes only and do not in any way represent a commitment by Company or give rise to any obligation or liability of Company. Company has no obligation to buy its requirements of any Products from Supplier, or any obligation to buy exclusively from Supplier.

2.4    Change Orders.  Company may at any time request a change in delivery, transport or other terms upon written notice to Supplier. To the extent any such change causes a material increase or decrease in cost or time, Supplier shall negotiate in good faith an equitable adjustment of price and terms. Any unit pricing in an Order will apply to changes in the units in a Change Order. Within four days after Company's notice of the change, Supplier will submit to Company a proposed change order (each a "Change Order") to the Order describing the change and its impact, if any, on compensation, schedule and other terms of the Order. Supplier waives any claim for adjustment that is not asserted in writing within 30 days of Supplier's receipt of notice of the change. No Change Order, nor any additional terms or changes to an Order issued by Company, is effective unless such Change Order or altered Order is signed by both parties. Supplier acknowledges that it has factored into the price adequate contingencies for de minimis changes. In the absence of a Change Order, the parties must fulfill their obligations under the Order in accordance with its terms.

2.5    Ordering Affiliates.  Affiliates of Company may procure Products from Supplier under this Agreement, using an Order that identifies the Affiliate and Supplier as the parties. Any Affiliate who enters into an Order with Supplier is deemed to be "Company" for purposes of that Order, Supplier will look solely to the entity that issues an Order (and not to other Company entities) for performance of the Order.

3.    PRICING AND PAYMENT.

3.1    Price and Shipping.  The prices for Products are set forth in Exhibit A and include all costs of developing, producing, packing and delivering Products to the delivery point stated in the Order, including: (a) all duties and taxes, including excise and withholding taxes but excluding sales taxes; (b) any commissions to selling agents; and (c) other incidental charges, whether or not such charges are itemized separately on invoices to Company. Supplier shall ship only the quantities ordered by Company and Supplier shall make no substitutions or changes without Company's prior written approval.

3.2    Taxes.  Supplier will timely calculate, assess, and remit all sales taxes, and Company will pay all sales taxes resulting from an Order. Supplier shall separately state the taxes for each jurisdiction

on the invoice by tax category (e.g., taxable and non-taxable Services will be separately stated). Supplier will honor any valid tax exemption certificate.

3.3    Expenses.  The compensation for all Products will be set forth in the Order and will remain fixed for the duration of the Order. Supplier shall bear all costs that it incurs in performing an Order and Supplier is not entitled to any compensation or reimbursement unless such payment is explicitly set forth in the Order. Reimbursable expenses, if any, must be billed at Supplier's reasonable, out of pocket cost and are subject to Company's expense reimbursement policy, as issued by Company from time to time.

3.4    Timing and Method of Payment.  Company will initiate payment on Supplier's properly submitted invoices 60 days after receipt of invoice. If any payment date is a Saturday, Sunday or bank holiday, then Company is not obligated to initiate payment until the next banking day, Company has no obligation to pay any amount first invoiced more than six months after it accrued. Company is not required to pay any disputed charge until the dispute is resolved. Supplier shall, if Company desires, accept all payments in U.S. Dollars. Company may make payments using "Electronic Funds Transfer" (EFT).

3.5    Records.  Supplier will: (a) retain records that reasonably document the Products provided and Supplier's charges until the later of: (i) five years after billing (or any longer period required by law), or (ii) final resolution of any disputes between the parties relating to Supplier's charges; and (b) upon five days' notice from Company, and will provide Company with reasonable access to such records. Supplier will, at Company's election, either deliver copies of such records to Company or provide access to such records at Supplier's facility. Supplier and Company will bear their respective costs relating to the review.

4.    PRODUCTS.  This Section 4 applies as to any Product delivered to Company.

4.1    Delivery.  Supplier will deliver the Products at the delivery point and at the date specified in the Order, or if no point or time is specified therein, then at the point and time selected by the Company (e.g., F.O.B. Supplier's or Company's dock) (the "Delivery Point"). Supplier will pay all costs associated with delivering the Products to the Delivery Point including freight, rigging, warehousing, and insurance.

4.2    Specifications.  Supplier agrees to use only the Specifications (including any changes or suggestions proposed by Company) provided and approved by the Company. In the event of conflict between the Specifications, those in an Order will control over those incorporated therein. Company's approval of the Specifications, design or materials will not be construed to relieve Supplier of its obligations under this Agreement.

4.3    Title and Risk of Loss.  Title and risk of loss or damage to Products remains with Supplier until Acceptance by Company; except that Supplier remains responsible after Acceptance for damage or loss to Products caused by Supplier's improper packaging or Supplier's Personnel.

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A606B06C7476

4.4     Packaging, Labeling and Applicable Laws.  Supplier will provide packaging, tagging, labeling and packing for the Products suitable for shipment to the ultimate destination. Supplier will obtain all licenses, permits and approvals required by Applicable Laws to ship the Products to the Delivery Point.

4.5     Shipping.  Supplier will not make any substitutions without Company's prior written approval.  Supplier shall ship by the Shipping Dates set forth in the Order. Supplier will establish shipping dates (as close as practicable to Company's requested date) within three business days of receipt of Company's Order. Supplier will promptly notify Company of the final shipping date.

5.     [Reserved]

6.     SUPPLIER RESPONSIBILITIES.  Supplier makes the following representations, warranties and covenants, as of the Effective Date of this Agreement and each Order and continuing in effect throughout the term of each Order:

6.1     Authority and Compliance with Law.  (a) Supplier has full authority to enter into this Agreement and to perform its obligations hereunder; and (b) Supplier's performance in connection with this Agreement will not violate: (i) any Applicable Laws, including the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1 et. seq., as amended, which Supplier acknowledges applies to the business relationship with Company hereunder, and such other national or regional anti-corruption or anti-bribery laws that may apply to Supplier or Supplier's business relationship with Company, or (ii) any other obligations or agreements binding upon Supplier.

6.2     Products.  All Products will: (a) conform to the Specifications; (b) be free from defects in construction, workmanship, materials, design and packaging; (c) be equivalent in materials, quality, finish, workmanship and design to any samples submitted to and approved by Company, (d) be produced, assembled packaged, tagged, labeled, packed, shipped and invoiced in compliance with federal, state and local laws, regulations, administrative orders and rules, and not with the use of child, convict or forced labor; (e) be priced by Supplier (including any allowances made available to Company) in compliance with U.S. antitrust laws, including the Robinson-Patman Act; and (f) be sold to Company at no less than fair value under the United States antidumping law and with no payment by any government of any countervailable subsidy for Products actionable under U.S. law. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED AND THE SUPPLIER MAKES NO WARRANTY THAT THE PRODUCTS ARE MERCHANTABLE OR FIT FOR ANY PARTICULAR PURPOSE. This warranty is expressly made in lieu of any and all warranties, expressed or implied and the sole liability of the Supplier shall be to replace any Products not in conformity with the Specifications or give Company refund or credit as set forth in Section 7.1. During the term of this Agreement, Supplier agrees to supply the Products as ordered by Company from time to time, in accordance with these terms and conditions and the attached Exhibits A through F.

6.3     Other.  (a) All test data and other performance substantiation provided by Supplier will be accurate and properly

described by Supplier, (b) the Products (and associated services and deliverables) will be free, at the time of receipt by Company, of any Unauthorized Code and Supplier will not intentionally introduce any Unauthorized Code into Company's systems, and (c) no additional third party licenses and no license fees other than those specifically itemized in the Order are required in order for Company and its Authorized Users to use the Products.

6.5     Infringement and Third Party Rights.  Supplier has the right to transfer (on the terms set forth in this Agreement) the Products to Company and to otherwise grant to Company all of the rights provided in this Agreement and each Order. Supplier will provide the Products to Company free and clear of any encumbrance. All IP Rights (other than those IP Rights owned by Company or licensed to Company by a third party) used by Supplier (or its Personnel) in connection with Products are either owned by Supplier or Supplier has been and is properly authorized by the owner of such rights to use such intellectual property rights in connection with such Products and to transfer (on the terms provided for in this Agreement) such Products incorporating such IP Rights to Company for use by its Authorized Users. The use of the Products by Company and its Authorized Users will not infringe or misappropriate any IP Rights of any third party. Further, that there is no action, suit, claim, investigation or proceeding pending, or to Supplier's knowledge threatened, against, by or affecting Supplier, the Products which, if adversely decided, might adversely affect: (a) Supplier's ability to enter into this Agreement or an Order; (b) Supplier's performance of its obligations under this Agreement; or (c) Company's and its Authorized Users use of the Products; nor to Supplier's knowledge is there any basis for such an action.

6.6     Notice.  Supplier will, within five business days, give notice to Company and its General Counsel of: (a) any actual or potential conflict of interest that may arise during the Supplier's performance of any Order, and (b) any claim or allegation of infringement or other violation of IP Right in any way related to or affecting Products.

7.     ACCEPTANCE AND WARRANTY PERIODS.

7.1     Acceptance.

(a)     Acceptance Period.  Company will have a reasonable period of time, or such period as is stated in the Order, to inspect and test the Products and to reject or accept the Products (the "Acceptance Period").

(b)     Defects and Correction.  If Company finds defect(s) (each a "Defect") in the Products, Company has the option, in its sole discretion, of rejecting each such item and all related items, or giving Supplier an opportunity to cure each such Defect. If Company permits Supplier an opportunity to cure, Company will provide reasonably notice of the Defect to Supplier. Once notice has been given, the Acceptance Period will be suspended, and Supplier will have a reasonable period (not to exceed 30 days) to correct the Defects. Once Supplier has corrected the Defects and redelivered to Company, the Acceptance Period will resume, and if required, the Acceptance Period will be extended to provide Company at least 30 days to accept or reject the Products and Services after Supplier's correction of the Defects. Acceptance of

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

Products by Company will not relieve Supplier of any of its warranty or other obligations. If Supplier fails to correct a Defect, Company may reject all Products that were purchased in connection with the defective Product, Deliverable or Service, and Supplier will promptly provide Company with a full refund or account credit for all amounts that Company had paid Supplier for such Products with Defects.

7.2    Warranty Period and Defects.  For the period set forth in the Order (or if no Period is specified, 90 days) following the date of acceptance (the "Warranty Period"), Supplier warrants that the Products will conform to the Specifications. The Warranty Period will be extended on a day for day basis during any period that Products are not usable during the Warranty Period due to a defect, Supplier will correct any failure of Products to operate in accordance with this warranty at no additional cost to Company. If Supplier fails to correct a defect within 30 calendar days, Supplier will replace the defective Products with conforming Products or, at Company option, Company may return the non-conforming Products, and then Supplier will promptly refund to Company all of the fees paid by Company for such Products, as applicable. Upon return of the fees set forth above, Company will return or destroy such Products (after a reasonable transition period).

8.    COMPANY'S IP RIGHTS.  Supplier acknowledges that, as between the parties to this Agreement, Company and its Affiliates have the exclusive right, title, and interest in all of IP Rights owned or licensed by Company (other than IP Rights licensed to Company by Supplier, the "Company IP Rights"). This Agreement is not a transfer or assignment of any right, title, or interest in the Company IP Rights to Supplier. Any license to Company IP Right under this Agreement must be expressly stated and any such license will be non-delegable and revocable by Company upon notice to Supplier. Supplier must not represent in any manner that it has any ownership or other interest in the Company IP Rights. Supplier must not do or cause to be done anything that impairs Company's interest in the Company IP Rights. Supplier must not use, modify, duplicate, display or perform any Company IP Rights unless Supplier has obtained Company's prior written approval. Any permitted use by Supplier of the Company IP Rights under an Order is limited to the term of the Order. Upon the expiration or termination of the Order, or upon Company's request, Supplier must immediately cease all use of Company IP rights and promptly return all materials to Company.

9.    DEFENSE AND INDEMNITY.

9.1    Defense.  Supplier shall, at its own cost and expense, defend (i) Company, (ii) all of Company's past, present, and future Affiliates, and (iii) all past, present, and future Authorized Users (each an "Indemnified Party"), against all allegations (including false, fraudulent or groundless allegations) in any claim, action, lawsuit or proceeding between any Indemnified Party and any third party, arising out of or relating to any of the following (collectively, the "Claims"): (a) the infringement, misuse, dilution, misappropriation or other violation of any IP Right in any way relating to or affecting the Products, (b) any other breach by Supplier or its Personnel of this Agreement or any Order, including the violation of any Applicable Law (including any breach of Supplier's representations, warranties and covenants); (c) death of or injury to any person, damage to or loss of any property, or any

other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from Supplier's performance of the Services, or any latent or patent defect in Products, including their workmanship, materials, construction and design; and (d) the assertion by a third party of a security interest, right of replevin, or other legal interest created by a credit arrangement in any amount due Supplier under this Agreement. Despite the foregoing sentence, Supplier is not obligated to defend any Indemnified Party in any action, lawsuit or other proceeding in which the claim is confined to the sole negligence of any Indemnified Party or where the cause of the losses is in no way related to Supplier's Products. Supplier shall retain defense counsel satisfactory to Company and shall diligently and professionally defend each Indemnified Party from each Claim and shall timely provide periodic reports to Company and consult with Company's Personnel in conducting the defense of the Claims and otherwise cooperate fully with the Company's reasonable requests. However, only with respect to Claims under Section 9.1(a) involving Company IP Rights, Company may, at its election and at any time, take control of the defense and investigation of such Claims and employ attorneys (reasonable attorneys' fees) and other consultants, investigators and experts of its own choice to manage and defend such Claims at Supplier's cost and expense.

9.2    Indemnity and Contribution.  Supplier shall hold harmless and indemnify the Indemnified Parties from and against all damages, liabilities, losses, costs and expenses (including reasonable attorneys' fees, disbursements and costs of investigation) incurred by any Indemnified Parties in any demand, claim lawsuit, or other proceeding arising out of or in any way relating to any Claims; except that Supplier is not obligated to indemnify an Indemnified Party for damages awarded based on: (a) the sole negligence of the Indemnified Party, or (b) any use of Company IP Rights in the manner approved by Company.

9.3    Settlement.  Supplier may settle Claims without Company's consent if the only obligation under the settlement is the payment of monies by Supplier and if the settlement provides for a full release of Supplier and the Indemnified Parties. Supplier must obtain Company's prior written consent for any other settlement, including one that would place new or different obligations or restrictions on the Indemnified Parties or restrictions upon the use of the Products.

10.    INSURANCE.

10.1    Coverages.  Supplier shall maintain the following insurance with carriers rated A-/VII or better by A.M. Best Co.:

(a)    Workers Compensation as required by law ("WC"), for all states in which Supplier's employees work and Employer's Liability ("EL") in limits of at least $1,000,000 per accident or disease and $2,000,000 aggregate by disease;

(b)    Commercial General Liability including premise/ operations, contractual, personal and advertising injury, and products/completed operations coverage ("CGL") with limits of at least $1,000,000 combined single limit; and

(c)    Business Auto Liability covering owned, non-owned and hired

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D832-470D-B70F-A506B06C7476

vehicles ("BAL") with limits of at least $1,000,000 per occurrence for bodily injury and property damage combined (if Supplier does not own or lease any vehicles, Supplier may extend its CGL insurance to provide insurance for non-owned and hired automobiles in lieu of separate BAL insurance).

10.2    Requirements. As of the Effective Date and thereafter upon request and upon each policy renewal date, Supplier shall provide Company certificates of insurance and endorsements (each an "**Insurance Certificate**") that show the required coverages and indicate that coverage will not be terminated without at least 30 days prior written notice to Company. In addition, Supplier, itself, shall immediately notify Company of any material change or cancellation in its insurance policies. Supplier will ensure that an up to date Insurance Certificate is on file with Company prior to accepting any Order. None of the following will relieve Supplier of its obligations under this Agreement, including those in Section 9 (Defense and Indemnity): (x) Company's acceptance of Supplier's insurance policies; (y) Supplier's breach of this Agreement, or (z) a loss exceeding Supplier's insurance coverage limits. If at any time Supplier does not provide Company with the required Insurance Certificates or if, in Company's opinion, Supplier's policies do not adequately protect Company and Supplier does not furnish evidence of acceptable coverage within 15 days after Company so notifies Supplier, Company has the right, in addition to its other rights, to withhold any payment until evidence of acceptable coverage is provided. If Supplier is providing Services, Supplier shall name Company and the Indemnified Parties as additional insureds under CGL, using forms CG 20 10 07 04 and CG 20 37 07 04, with Supplier's insurance being primary to any valid and collectable insurance of Company, with the standard separation of insureds clause or cross-liability endorsement. If the Supplier uses subcontractors, Supplier shall require its subcontractors to carry the insurance described above. If a subcontractor does not maintain CGL, Supplier's CGL must insure the subcontractor, with the coverages and limits required under this Section 10. Supplier shall hold harmless the Indemnified Parties from all damages, costs, losses, and liabilities suffered by the Indemnifying Parties as a result of the failure of Supplier or its subcontractors (or both) to maintain the insurance coverages required under this Agreement.

11.    COMPANY REMEDIES. In addition to all other remedies available to Company, any Products may be rejected by Company and abandoned, returned or held at Supplier's expense and risk, when they: (a) are not produced, sold, shipped or delivered in compliance with the applicable Order; (b) allegedly violate any Applicable Laws, or (c) allegedly infringe any IP Rights in any way related to or affecting Products.

12.    TERM AND TERMINATION.

12.1    Term. The term of this Agreement begins on the Effective Date and expires on August 15, 2017, unless it is terminated earlier under Sections 12.2 or 12.3.

12.2    For Convenience. Company has the right to terminate this Agreement or all or any part of any or all Orders (including as to a particular Company location) for any reason or for no reason at all by giving 60 days written notice to Supplier. Upon Company's termination for convenience, nothing is due from Company beyond

fees due for Products accepted by Company through the termination date, and both parties are relieved of any further obligations under the Order except those that by their nature survive or require performance after termination (e.g., Indemnity).

12.3    Termination with Cause. Any Order or this Agreement may be terminated: (a) by either party if the other party: (i) commits under such Order or this Agreement a material breach, which for the Company is limited to the non-payment of a material undisputed amount after notice and opportunity to cure, or (ii) ceases its operations; and (b) by Company if Supplier fails to furnish adequate assurances of future performance upon demand or fails to maintain or produce required Insurance Certificates. Such termination will be effective 30 days after the non-breaching party delivers written notice of the breach to the other party, if breach has not been cured within the 30 day period.

12.4    Obligations upon Termination. Termination of this Agreement results in the termination (as of the date of termination of this Agreement) of all Orders. Upon termination of this Agreement or any Order for convenience, Company will only be liable for: (a) the purchase price of the Products (which will be prorated on a daily basis for Software licensed on a non-perpetual basis), subject to Company's right to reject the Products or seek reimbursement of the purchase price. Within three days of any termination or expiration of an Order, Supplier shall remove all of its property from Company's premises and deliver to Company all of Company's property, whether complete or in-process, related to the terminated or expired activities. Supplier shall not remove, destroy, disable, or otherwise diminish the value or utility of any Products previously delivered to Company by Supplier or by any other party, in connection with termination of this Agreement, any Order, or part of any Order. Upon expiration or termination of this Agreement or any Order by either Company or Supplier for any reason, Supplier shall cooperate with, and use its best commercial efforts to effect a smooth transition to, any replacement contractor chosen by Company so as to prevent interruption to Company's operations. Supplier's transition assistance will include coordinating invoice payment and information transfer to a new provider. Supplier shall provide the final information transfer in connection with termination or expiration of this Agreement without cost or additional fee to Company.

13.    CODE OF CONDUCT. Supplier shall comply with Sears Holdings Corporation's Code of Vendor Conduct ("**Code of Conduct**"), as published by Company from time to time at http:// www.searsholdings.com/govern/SHCCodeofVendorConduct.pdf. Furthermore, Supplier shall support the Code of Conduct, as published by Company from time to time and shall not take any action that may cause an employee to violate the Code of Conduct. Supplier shall report any violations of or attempt to violate the Code of Conduct to the Ethics Hotline or Chief Ethics and Compliance Officer as described in the Code of Conduct.

14.    CONFIDENTIALITY.

14.1    Confidential Information.

(a)    Ownership and Restrictions on Use. All Confidential Information is the exclusive property of Company. Supplier shall not in any manner use, reproduce or disclose, directly or

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

indirectly, to any third party at any time any Confidential Information, except as necessary for Supplier to perform an Order. Supplier shall limit its disclosure of Confidential Information to those of its Personnel who have a need to know it to perform an Order. Supplier will be liable for any improper disclosure by its Personnel. Upon demand by Company, Supplier shall deliver to Company immediately all materials containing Confidential Information in Supplier's possession (whether prepared by Company or Supplier). Company makes no warranty as to the accuracy of any Confidential Information. Supplier will not obtain any rights to (and there will be no restrictions on Company's right to use) Confidential Information as a result of such information being processed, modified, or updated by the Products or any Supplier provided system used in connection therewith.

(b)    *Exceptions.*  The restrictions under this Section 14.1 do not apply to any Confidential Information that Supplier can demonstrate: (i) Supplier possessed, without an obligation of confidentiality, before disclosure in connection with an Order; (ii) is or becomes public through no fault of Supplier, its Affiliates or the Personnel of Supplier or its Affiliates; (iii) is independently developed by Supplier without use of any Confidential Information; or (iv) Supplier received from a third party that does not have an obligation of confidentiality to the Supplier.

14.3    No Publicity.  Supplier shall not disclose the existence or terms of any Order or any other information regarding the Products in any advertising, promotional or sales activity, press release or other public communication unless Company gives its prior written consent to such action and approves any press release or other publicity materials prior to their dissemination.

14.4    Computer Access.  If Supplier is given access, whether on-site or through remote facilities, to any of Company or its Affiliate's computers, electronic data storage systems, electronic files, software or electronic services (collectively, the "**Electronic Resources**") in connection with this Agreement then Supplier shall limit such access and use solely on a strict need to access basis for that purpose. Supplier shall not attempt to reverse engineer any Electronic Resources nor access any Electronic Resources other than those required to perform its obligations under this Agreement. Supplier shall, upon request, advise Company in writing of the name of each Personnel who has been or will be granted such access and shall strictly follow all of Company's security rules and procedures for use of the Electronic Resources. All user identification numbers and passwords disclosed to Supplier and any information obtained by Supplier as a result of Supplier's access to the Electronic Resources are deemed to be, and Supplier shall treat them as, Confidential Information. Supplier shall cooperate with Company in investigating any apparent unauthorized access by Supplier's Personnel (or by third parties using Supplier's Personnel's log-in information) to the Electronic Resources or unauthorized release of Confidential Information by Supplier's Personnel. Supplier shall promptly notify Company of any actual or suspected unauthorized access or disclosure.

15.    MISCELLANEOUS.

15.1    Assignment and Beneficiaries.  This Agreement is personal to Supplier and Supplier shall not assign (by contract, operation of law or otherwise) its rights or obligations under this Agreement or grant a security interest in or pledge as collateral interest in any of them; provided, however Supplier may assign this Agreement to a subsidiary or affiliate without the prior written consent of Company. Any attempted assignment or grant in violation of this Section 15.1 is void and will be deemed a material breach. A Change of Control by Supplier is deemed an assignment under this Agreement. This Agreement binds and inures to the benefit of the parties' successors, representatives and permitted assigns. The Authorized Users are the only third party beneficiaries under this Agreement.

15.2    Severability.  If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction, then that provision will be deemed modified to the extent necessary to make it enforceable. The unenforceability of any portion of Agreement will not affect the enforceability of the remaining provisions of this Agreement.

15.3    Cumulative Rights.  All rights and remedies under the Orders are cumulative, and the exercise of any right or remedy under this Agreement or an Order does not prejudice the exercise of any other right or remedy under this Agreement or any Order, at law or in equity.

15.4    Survival.  All provisions of this Agreement that would, by its nature, survive the expiration or termination of such this Agreement will so survive including: Section 3.5 (Records), Section 3.6 (No Liens), Section 4.2 (Specification), Section 4.3 (Title and Risk of Loss), Section 4.6 (Warranties), Section 4.7 (Company Identification), Section 6 (Supplier Responsibilities), Section 7 (Acceptance and Warranty Periods), Section 8 (Company's IP Rights), Section 9 (Defense and Indemnity), Section 10 (Insurance), Section 11 (Company's Remedies), Section 12.4 (Obligations upon Termination), Section 14 (Confidentiality), and Section 16 (Miscellaneous).

15.5    Governing Law.  The Orders and this Agreement are to be construed and enforced under Illinois law without regard to conflict of law or other legal principles (of Illinois or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Illinois. Supplier and Company agree that the rights and obligations of the parties under this Agreement and each Order are not governed by the United Nations Convention on Contracts for the International Sale of Goods.

15.6    Submission to Jurisdiction.  Supplier and Company consent to the personal and subject matter jurisdiction of the state and federal courts located in Cook County, Illinois and agree that the exclusive venue for any dispute concerning this Agreement and each Order will be in such courts. All objections to such jurisdiction or venue are hereby waived. Supplier consents to service of process as permitted under Illinois law or by certified mail.

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

15.7 Waiver of Jury Trial. Each party to this Agreement hereby irrevocably waives its right to trial by jury in any legal proceedings arising out of or relating to this Agreement.

15.8 Attorneys' Fees. In the event Company substantially prevails in a legal action between the parties for breach of this Agreement, it will be entitled to reimbursement of all of its costs and expenses, including reasonable attorneys' fees and expenses incurred in connection with the action, including any appeal.

15.9 Limitation on Damages. Under no circumstances will the Authorized Users be liable for any consequential, indirect, exemplary, or punitive damages (including lost profits) arising in connection with this Agreement or the performance, omission of performance, or termination of this Agreement without regard to the nature of the claim (e.g., breach of contract, negligence or otherwise), even if the Authorized Users have been advised of the possibility of such damages.

15.10 Injunctive Relief. It is expressly agreed that a material breach of Section 8 (Company's IP Rights) and Section 14 (Confidentiality) will cause irreparable harm to the non-breaching party and that a remedy at law would be inadequate. Therefore, in addition to any and all remedies available at law, the non-breaching party will be entitled to injunctive relief against the breaching party in the event of any threatened or actual violation of such sections of this Agreement.

15.11 Interpretation and Construction. In this Agreement: (a) "including" is inclusive and means "including without limitation," (b) numbered "Section" references refer to sections of this Agreement unless otherwise specified, and (c) section headings and labels of defined terms are for convenience only and have no interpretive force. Supplier acknowledges that this Agreement is to be construed with equal weight against each party, and not against Company, the drafter.

15.12 Independent Contractor. Supplier is an independent contractor under this Agreement, and nothing in this Agreement or any Order creates a joint venture, partnership, agency, franchise, lease, or any arrangement other than as expressly provided in this Agreement or the Order. Supplier must exercise control over its Personnel, and is solely responsible for verifying their identity and employment eligibility, for paying (and for non-employees ensuring payment of) their wages, salaries, benefits and other remuneration, and for paying (and for non-employees ensuring payment of) payroll taxes, contributions for unemployment or workers compensation, social security, pensions, or annuities that are imposed as a result of their employment. Supplier's Personnel are not employees of Company or its Affiliates and are not eligible to participate in any employment benefit plans (e.g., health, welfare, retirement plans) or other conditions of employment sponsored by or made available by Company or its Affiliates to their eligible employees. Supplier must not pledge, credit, incur any obligation or liability, hire any employee, nor purchase any goods or services in the name of Company.

15.13 Supplier Personnel. Supplier shall not use subcontractors without Company's prior written approval. Supplier shall not charge Company any markup or additional costs for the use of subcontractors. Supplier is solely responsible for payments due to its subcontractors. Supplier will remain fully responsible for the performance by its Personnel, including their acts, errors and omissions. Supplier shall, upon Company's request, immediately remove any Personnel objectionable to Company.

15.14 Time of Performance. Time is of the essence in Supplier's performance of each obligation under this Agreement.

15.15 Waiver. No right of Company under this Agreement can be waived except as expressly set forth in writing signed by a Divisional Vice President or higher representative of Company. Company's failure to enforce any of its rights or remedies will not be interpreted as a waiver of subsequent violations of that provision or of any other provision of this Agreement.

15.16 Notices. All notices given by one party to the other under this Agreement must be by: (a) hand delivery; (b) certified mail, return receipt requested; or (c) nationally recognized overnight courier service to the recipient's address on the Order. In addition, Company may give notice to Supplier by telephone facsimile. All notices will be effective: (i) upon actual receipt; (ii) three business days after being sent by certified mail; or (iii) the next business day after being sent overnight by a nationally recognized courier. A party may change its notice address by giving the other party written notice of the change. Notice sent to Company must be addressed to VP of Procurement, Sears Holdings Management Corp., A2-133A, 3333 Beverly Rd., Hoffman Estates, IL 60179, with copy to VP/Deputy General Counsel, Vendor Relationships, Sears Holdings Corp., B6-277A, 3333 Beverly Rd., Hoffman Estates, IL 60179. Notice sent to Supplier must be addressed to Pratt Corrugated Holdings, Inc., 1800-C Sarasota Business Parkway, Conyers, GA 30013, with a copy to Pratt Industries, Inc., 3636 Piedmont Road, Bldg. 14, Suite 440, Atlanta, GA 30305, Attn: Douglas R. Balyeat, CPA, Esq., General Counsel.

15.17 Construction and Amendment. This Agreement supersedes all previous Purchase Terms and Conditions, communications, agreements and understandings that are inconsistent with this Agreement. Company, its Affiliates and its Authorized Users will not be bound by any restriction or other limitation (including limitations on Company's use, display, copy, transfer or resale of the Products) that is not expressly stated in an Order. A prior agreement between Supplier and Company will have effect regarding an Order only if the Order incorporates that agreement by express reference. This Agreement contains the parties' entire understanding regarding the subject matter of the Order and may not be supplemented or modified by course of dealing, course of performance, any oral communication between the parties, or any response by Supplier, whether oral or written, that purports to modify this Agreement unless such modification is consented to in writing by the Company. Without limiting the foregoing, Company and its Personnel will not be bound by any "shrink wrap license," "disclaimers" or "click to approve" terms or conditions contained in any Supplier computer system, software or web site that Company uses in connection with this Agreement. This Agreement and each Order can only be amended or supplemented by a written, document signed by both parties.

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

15.18  Setoff and Supplier Bankruptcy. Each party has the right to set off any amounts it (or its Affiliates) is due from the other against any amounts owed to the other, under any obligation whatsoever. All Orders are a series of installments of one and the same transaction constituting a single contract between Company and Supplier. If any bankruptcy or insolvency proceeding is initiated in respect of Supplier and Supplier, as debtor in possession, elects to perform any outstanding Orders, then Supplier, by so accepting and performing any such Orders, will be deemed to have accepted and assumed this Agreement and Supplier's obligations arising hereunder.

15.19  Electronic Communications. Supplier shall electronically send to Company and receive from Company, the documents and information specified by Company from time to time via a third party e-commerce service provider identified by Company from time to time ("E-Commerce Provider"). Supplier shall acquire and pay for

the licenses, equipment, and service agreements that the E-Commerce Provider requires for the use of its communications portal, record retention system, and other services required by Company from time to time. In the event of any failure in a communication that results from the failure, crash or temporary unavailability of the E-Commerce Provider's service or from Supplier's breach or termination of its agreements with the E-Commerce Provider, Supplier shall promptly notify Company of the failure and complete the communication using other available means. The parties shall give communications transmitted via the E-Commerce Provider the same enforceability as if they were physically delivered signed paper originals. The parties agree that this Agreement and each Order that has been electronically signed via a process approved by Company from time to time (such as, through DocuSign®) will have the same effect as though they were signed by pen on paper.

Signed, by the parties' duly authorized representatives.

SUPPLIER:

PRATT CORRUGATED HOLDINGS, INC.

By: *David Wiser*
 ┌─DocuSigned by:

Name: David Wiser

Title: Vice President & CFO

Date: 8/1/2014

COMPANY:

SEARS HOLDINGS MANAGEMENT CORPORATION
as agent for Sears Logistics Services, Inc., Sears, Roebuck and Co. and Kmart Corporation and their affiliates

By: *Hemant Porwal*
 ┌─DocuSigned by:

Name: Hemant Porwal

Title: Vice President

Date: 8/14/2014

Attachments
Exhibit A and A-1:  Product List and Locations
Exhibit B and B-1: Pricing Methodology
Exhibit C:  Product Specifications
Exhibit D: Key Supplier Performance Program
Exhibit E: Scope of Work

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A508B06C7476

## EXHIBIT A – PRICING

| SHC ITEM NUMBER | SHC CITY | Supplier | Minimum Order Quantity | Minimum Order Quantity - Delivered PRICE Per Item | TIER 2 - 1st Break Quantity | TIER 2 - Delivered PRICE Per Item | TIER 3 - Half truck | TIER 3 - Half Truck Delivered PRICE per Item | TIER 4 - Full Truckload | TIER 4 - Full Truckload Delivered PRICE Per Item | Box Weight | Product Lead Time | Supplier Plant Distance in Miles from SHC Distribution Center | Supplier Plant City & State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5281 | MANTENO | Pratt Industries | 10,000.00 | $1.59 | 10,000.00 | $1.44 | 10,000.00 | $1.44 | 10,000.00 | $1.44 | 3.58 | 7.00 | 60.00 | Valparaiso, IN |
| 5287 | MANTENO | Pratt Industries | 5,000.00 | $0.96 | 5,000.00 | $0.90 | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 2.03 | 7.00 | 60.00 | Valparaiso, IN |
| 5288 | MANTENO | Pratt Industries | 5,000.00 | $1.98 | 5,000.00 | $1.96 | 5,000.00 | $1.96 | 5,000.00 | $1.96 | 2.12 | 7.00 | 60.00 | Valparaiso, IN |
| 5387 | MANTENO | Pratt Industries | 5,000.00 | $1.32 | 5,000.00 | $1.32 | 5,000.00 | $1.32 | 5,000.00 | $1.32 | 2.13 | 7.00 | 60.00 | Valparaiso, IN |
| 551 | MANTENO | Pratt Industries | 10,000.00 | $0.21 | 10,000.00 | $0.21 | 10,000.00 | $0.21 | 10,000.00 | $0.21 | 0.43 | 7.00 | 60.00 | Valparaiso, IN |
| 555 | MANTENO | Pratt Industries | 15,000.00 | $0.78 | 15,000.00 | $0.291 | 15,000.00 | $0.74 | 15,000.00 | $0.74 | 2.12 | 7.00 | 60.00 | Valparaiso, IN |
| 556 | MANTENO | Pratt Industries | 5,000.00 | $1.60 | 5,000.00 | $1.60 | 5,000.00 | $1.60 | 5,000.00 | $1.60 | 2.71 | 7.00 | 60.00 | Valparaiso, IN |
| 558 | MANTENO | Pratt Industries | 5,000.00 | $1.60 | 5,000.00 | $1.60 | 5,000.00 | $1.60 | 5,000.00 | $1.60 | 2.71 | 7.00 | 60.00 | Valparaiso, IN |
| 56A | MANTENO | Pratt Industries | 5,000.00 | $1.76 | 5,000.00 | $1.76 | 5,000.00 | $1.76 | 5,000.00 | $1.76 | 4.00 | 7.00 | 60.00 | Valparaiso, IN |
| 5807 | MANTENO | Pratt Industries | 37.00 | $12.98 | 37.00 | $12.98 | 37.00 | $12.98 | 37.00 | $12.98 | 2.00 | 7.00 | 60.00 | Valparaiso, IN |
| 581 | MANTENO | Pratt Industries | 3,000.00 | $0.20 | 3,000.00 | $0.20 | 3,000.00 | $0.20 | 3,000.00 | $0.20 | 0.43 | 7.00 | 60.00 | Valparaiso, IN |
| 5802 | MANTENO | Pratt Industries | 3,000.00 | $0.50 | 3,000.00 | $0.50 | 3,000.00 | $0.50 | 3,000.00 | $0.50 | 0.06 | 7.00 | 60.00 | Valparaiso, IN |
| 5GD001 | MANTENO | Pratt Industries | 1,000.00 | $1.35 | 1,000.00 | $1.35 | 1,000.00 | $1.35 | 1,000.00 | $1.35 | 2.12 | 7.00 | 60.00 | Valparaiso, IN |
| 5L302 | MANTENO | Pratt Industries | 10,000.00 | $0.61 | 10,000.00 | $0.61 | 10,000.00 | $0.61 | 10,000.00 | $0.61 | 0.99 | 7.00 | 60.00 | Valparaiso, IN |
| 5L326 | MANTENO | Pratt Industries | 1,000.00 | $1.26 | 1,000.00 | $1.26 | 1,000.00 | $1.26 | 1,000.00 | $1.26 | 1.90 | 7.00 | 60.00 | Valparaiso, IN |
| 5L8074 | MANTENO | Pratt Industries | 6,000.00 | $0.43 | 6,000.00 | $0.43 | 6,000.00 | $0.43 | 6,000.00 | $0.43 | 0.89 | 7.00 | 60.00 | Valparaiso, IN |
| 5L376 | MANTENO | Pratt Industries | 5,000.00 | $0.43 | 5,000.00 | $0.43 | 5,000.00 | $0.43 | 5,000.00 | $0.43 | 0.89 | 7.00 | 60.00 | Valparaiso, IN |
| 5M7 | MANTENO | Pratt Industries | 16,000.00 | $0.51 | 16,000.00 | $0.51 | 16,000.00 | $0.57 | 16,000.00 | $0.51 | 0.85 | 7.00 | 60.00 | Valparaiso, IN |
| 5MLV90 | MANTENO | Pratt Industries | 4,300.00 | $2.11 | 4,300.00 | $2.11 | 4,300.00 | $2.11 | 4,300.00 | $2.11 | 4.37 | 7.00 | 60.00 | Valparaiso, IN |
| 5SAV90 | MANTENO | Pratt Industries | 2,000.00 | $2.35 | 2,000.00 | $2.26 | 2,000.00 | $2.26 | 2,000.00 | $2.26 | 2.79 | 7.00 | 60.00 | Valparaiso, IN |
| 5SL882 | MANTENO | Pratt Industries | 500.00 | $1.78 | 500.00 | $1.78 | 500.00 | $1.74 | 500.00 | $1.74 | 8.55 | 7.00 | 60.00 | Valparaiso, IN |
| 572 | WILKES BARR | Pratt Industries | 5,000.00 | $2.71 | 5,000.00 | $2.71 | 5,000.00 | $2.71 | 5,000.00 | $2.71 | 3.45 | 7.00 | 70.00 | Macungie, PA |

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

Exhibit A – Pricing (p.2)

| SHC ITEM NUMBER | SHC CITY | Supplier | Minimum Order Quantity | Minimum Order Quantity-Delivered PRICE Per Item | TIER 2 - 1st Break Quantity | TIER 2 - 1st Break Delivered PRICE Per Item | TIER 3 - Half Truck | TIER 3 - Half Truck Delivered PRICE per Item | TIER 4 - Full Truckload | TIER 4 - Full Truckload Delivered PRICE Per Item | Box Weight | Production Time | Supplier Plant Distance in Miles from SHC Distribution Center | Supplier Plant City & State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51229 | COLUMBUS | Pratt Industries | 4,000.00 | $0.75 | 5,000.00 | $0.21 | 5,000.00 | $0.21 | 5,000.00 | $0.21 | 0.43 | 7.00 | $0.00 | Springfield, OH |
| 51271 | COLUMBUS | Pratt Industries | 5,000.00 | $0.39 | 5,000.00 | $0.37 | 5,000.00 | $0.37 | 5,000.00 | $0.37 | 0.70 | 7.00 | $0.00 | Springfield, OH |
| 51273 | COLUMBUS | Pratt Industries | 2,000.00 | $0.63 | 2,000.00 | $0.57 | 2,000.00 | $0.57 | 2,000.00 | $0.57 | 1.05 | 7.00 | $0.00 | Springfield, OH |
| 51275 | COLUMBUS | Pratt Industries | 1,000.00 | $0.85 | 1,000.00 | $0.85 | 1,000.00 | $0.85 | 1,000.00 | $0.85 | 1.57 | 7.00 | $0.00 | Springfield, OH |
| 51279 | COLUMBUS | Pratt Industries | 1,000.00 | $1.16 | 5,000.00 | $1.06 | 5,000.00 | $1.06 | 5,000.00 | $1.06 | 2.18 | 7.00 | $0.00 | Springfield, OH |
| 51281 | COLUMBUS | Pratt Industries | 5,000.00 | $0.99 | 5,000.00 | $0.98 | 5,000.00 | $0.98 | 5,000.00 | $0.98 | 2.03 | 7.00 | $0.00 | Springfield, OH |
| 51285 | COLUMBUS | Pratt Industries | 3,000.00 | $1.07 | 3,000.00 | $1.07 | 3,000.00 | $1.07 | 3,000.00 | $1.07 | 1.95 | 7.00 | $0.00 | Springfield, OH |
| SPA028 | COLUMBUS | Pratt Industries | 5,000.00 | $1.41 | 5,000.00 | $1.41 | 5,000.00 | $1.41 | 5,000.00 | $1.41 | 2.75 | 7.00 | $0.00 | Springfield, OH |
| 51260 | GARLAND | Pratt Industries | 5,000.00 | $0.21 | 5,000.00 | $0.21 | 5,000.00 | $0.21 | 5,000.00 | $0.21 | 0.43 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51271 | GARLAND | Pratt Industries | 6,000.00 | $0.36 | 6,000.00 | $0.36 | 6,000.00 | $0.36 | 6,000.00 | $0.36 | 0.86 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51273 | GARLAND | Pratt Industries | 2,000.00 | $0.53 | 2,000.00 | $0.53 | 2,000.00 | $0.53 | 2,000.00 | $0.53 | 1.05 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51275 | GARLAND | Pratt Industries | 2,000.00 | $0.85 | 2,000.00 | $0.85 | 2,000.00 | $0.85 | 2,000.00 | $0.85 | 1.57 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51279 | GARLAND | Pratt Industries | 3,000.00 | $1.16 | 3,000.00 | $1.14 | 3,000.00 | $1.14 | 3,000.00 | $1.14 | 2.18 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51276 | GARLAND | Pratt Industries | 3,000.00 | $1.16 | 3,000.00 | $1.14 | 3,000.00 | $1.14 | 3,000.00 | $1.14 | 2.18 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51281 | GARLAND | Pratt Industries | 5,000.00 | $0.86 | 5,000.00 | $0.86 | 5,000.00 | $0.86 | 5,000.00 | $0.86 | 2.03 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51285 | GARLAND | Pratt Industries | 5,000.00 | $0.61 | 5,000.00 | $0.61 | 5,000.00 | $0.61 | 5,000.00 | $0.61 | 1.56 | 7.00 | $0.00 | Ft. Worth, Tx |
| 51285 | GARLAND | Pratt Industries | 6,000.00 | $1.04 | 6,000.00 | $1.04 | 6,000.00 | $1.04 | 6,000.00 | $1.04 | 2.00 | 7.00 | $0.00 | Ft. Worth, Tx |
| 503 | GROVE CITY | Pratt Industries | 5,000.00 | $0.32 | 5,000.00 | $0.32 | 5,000.00 | $0.32 | 5,000.00 | $0.32 | 5.33 | 7.00 | $0.00 | Springfield, OH |
| 501 | GROVE CITY | Pratt Industries | 5,000.00 | $0.69 | 5,000.00 | $0.69 | 5,000.00 | $0.69 | 5,000.00 | $0.69 | 5.12 | 7.00 | $0.00 | Springfield, OH |
| 502 | GROVE CITY | Pratt Industries | 4,000.00 | $0.49 | 4,000.00 | $0.49 | 4,000.00 | $0.49 | 4,000.00 | $0.49 | 0.86 | 7.00 | $0.00 | Springfield, OH |
| 504 | GROVE CITY | Pratt Industries | 5,000.00 | $0.56 | 5,000.00 | $0.56 | 5,000.00 | $0.56 | 5,000.00 | $0.56 | 13.99 | 7.00 | $0.00 | Springfield, OH |
| 505 | GROVE CITY | Pratt Industries | 5,000.00 | $7.34 | 5,000.00 | $7.34 | 5,000.00 | $7.34 | 5,000.00 | $7.34 | 14.30 | 7.00 | $0.00 | Springfield, OH |

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A508B06C7476

Exhibit A – Pricing (p.3)

| SHC ITEM NUMBER | SHC CITY | Supplier | Minimum Order Quantity | Minimum Order Quantity Delivered PRICE Per Item | TIER 1 - Int break Quantity | TIER 2 - 1st break Delivered PRICE Per item | TIER 3 - Half truck | TIER 3 - Half truck Delivered PRICE Per item | TIER 4 - Full Truckload | TIER 4 - Full Truckload Delivered PRICE Per Item | Box Weight | Production Lead Time | Supplier Plant Distance in Miles from SHC Distribution Center | Supplier Plant City & State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S461 | GROVE CITY | Pratt Industries | 5,000.00 | $0.68 | 5,000.00 | $0.68 | 5,000.00 | $0.68 | 5,000.00 | $0.68 | 1.58 | | $0.00 | Springfield, OH |
| S462 | GROVE CITY | Pratt Industries | 4,000.00 | $1.77 | 4,000.00 | $1.77 | 4,000.00 | $1.77 | 4,000.00 | $1.77 | 2.85 | 7.00 | $0.00 | Springfield, OH |
| S463 | GROVE CITY | Pratt Industries | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 12.50 | 7.00 | $0.00 | Springfield, OH |
| S463T | GROVE CITY | Pratt Industries | 5,000.00 | $7.34 | 5,000.00 | $7.34 | 5,000.00 | $7.34 | 5,000.00 | $7.34 | 14.91 | 7.00 | $0.00 | Springfield, OH |
| K1 | MANTENO | Pratt Industries | 20,000.00 | $0.65 | 20,000.00 | $0.65 | 20,000.00 | $0.65 | 20,000.00 | $0.65 | 0.65 | 7.00 | 60.00 | Valparaiso, IN |
| K2 | MANTENO | Pratt Industries | 7,000.00 | $1.00 | 7,000.00 | $1.00 | 7,000.00 | $1.00 | 7,000.00 | $1.00 | 1.11 | 7.00 | 60.00 | Valparaiso, IN |
| K3 | MANTENO | Pratt Industries | 10,000.00 | $0.66 | 10,000.00 | $0.66 | 10,000.00 | $0.66 | 10,000.00 | $0.66 | 1.58 | 7.00 | 60.00 | Valparaiso, IN |
| K4 | MANTENO | Pratt Industries | 6,500.00 | $1.06 | 6,500.00 | $1.06 | 6,500.00 | $1.06 | 6,500.00 | $1.06 | 2.01 | 7.00 | 60.00 | Valparaiso, IN |
| K5 | MANTENO | Pratt Industries | 6,000.00 | $1.00 | 6,000.00 | $1.00 | 6,000.00 | $1.00 | 6,000.00 | $1.00 | 3.04 | 7.00 | 60.00 | Valparaiso, IN |
| K9 | MANTENO | Pratt Industries | 3,000.00 | $1.46 | 3,000.00 | $1.46 | 3,000.00 | $1.46 | 3,000.00 | $1.46 | 3.40 | 7.00 | 60.00 | Valparaiso, IN |
| S12 | MANTENO | Pratt Industries | 10,000.00 | $0.23 | 10,000.00 | $0.23 | 10,000.00 | $0.23 | 10,000.00 | $0.23 | 0.47 | 7.00 | 60.00 | Valparaiso, IN |
| S12S4 | MANTENO | Pratt Industries | 5,000.00 | $1.74 | 5,000.00 | $1.74 | 5,000.00 | $1.74 | 5,000.00 | $1.74 | 2.09 | 7.00 | 60.00 | Valparaiso, IN |
| S17F | MANTENO | Pratt Industries | 10,000.00 | $0.31 | 10,000.00 | $0.31 | 10,000.00 | $0.31 | 10,000.00 | $0.31 | 0.00 | 7.00 | 60.00 | Valparaiso, IN |
| S17T | MANTENO | Pratt Industries | 5,000.00 | $0.40 | 5,000.00 | $0.40 | 5,000.00 | $0.40 | 5,000.00 | $0.40 | 0.61 | 7.00 | 60.00 | Valparaiso, IN |
| S18T | MANTENO | Pratt Industries | 5,000.00 | $0.46 | 5,000.00 | $0.46 | 5,000.00 | $0.46 | 5,000.00 | $0.46 | 1.05 | 7.00 | 60.00 | Valparaiso, IN |
| S18T | MANTENO | Pratt Industries | 5,000.00 | $0.55 | 5,000.00 | $0.55 | 5,000.00 | $0.55 | 5,000.00 | $0.55 | 1.26 | 7.00 | 60.00 | Valparaiso, IN |
| S20T | MANTENO | Pratt Industries | 5,000.00 | $0.23 | 5,000.00 | $0.73 | 5,000.00 | $0.73 | 5,000.00 | $0.73 | 1.54 | 7.00 | 60.00 | Valparaiso, IN |
| S20E | MANTENO | Pratt Industries | 5,000.00 | $1.03 | 5,000.00 | $1.03 | 5,000.00 | $1.03 | 5,000.00 | $1.03 | 2.03 | 7.00 | 60.00 | Valparaiso, IN |
| S24I | MANTENO | Pratt Industries | 10,000.00 | $1.39 | 10,000.00 | $1.39 | 10,000.00 | $1.39 | 10,000.00 | $1.39 | 3.00 | 7.00 | 60.00 | Valparaiso, IN |
| S24J | MANTENO | Pratt Industries | 5,000.00 | $0.93 | 5,000.00 | $0.93 | 5,000.00 | $0.93 | 5,000.00 | $0.93 | 2.94 | 7.00 | 60.00 | Valparaiso, IN |
| S26H | MANTENO | Pratt Industries | 5,000.00 | $1.07 | 5,000.00 | $1.07 | 5,000.00 | $1.07 | 5,000.00 | $1.07 | 2.70 | 7.00 | 60.00 | Valparaiso, IN |
| S26T | MANTENO | Pratt Industries | 5,000.00 | $0.73 | 5,000.00 | $0.73 | 5,000.00 | $0.73 | 5,000.00 | $0.73 | 2.00 | 7.00 | 60.00 | Valparaiso, IN |
| S27H | MANTENO | Pratt Industries | 5,000.00 | $0.76 | 5,000.00 | $0.76 | 5,000.00 | $0.76 | 5,000.00 | $0.76 | 1.62 | 7.00 | 60.00 | Valparaiso, IN |
| S27T | MANTENO | Pratt Industries | 5,000.00 | $0.51 | 5,000.00 | $0.51 | 5,000.00 | $0.51 | 5,000.00 | $0.51 | 1.97 | 7.00 | 60.00 | Valparaiso, IN |

 ©2014 Sears Brands, LLC

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

Exhibit A -- Pricing (p.4)

| SHC ITEM NUMBER | SHC CITY | Supplier | Minimum Order Quantity | Minimum Order Quantity-Delivered PRICE Per Item | TIER 2 - 1st break Quantity | TIER 2 - 1st break Delivered PRICE Per item | TIER 3 - Half truck | TIER 3 - Half Truck Delivered PRICE per item | TIER 4 - Full Truckload | TIER 4 - Full Truckload Delivered PRICE Per Item | Box Weight | Product Lead Time | Supplier Plant Distance in Miles from SHC Distribution Center | Supplier Plant City & State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 528II | MANTENO | Pratt Industries | 10,000.00 | $1.44 | 10,000.00 | $1.44 | 10,000.00 | $1.44 | 10,000.00 | $1.44 | 8.35 | 7.00 | 60.00 | Valpariso, IN |
| 5287 | MANTENO | Pratt Industries | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 5,000.00 | $0.96 | 3.04 | 7.00 | 60.00 | Valpariso, IN |
| 529II | MANTENO | Pratt Industries | 5,000.00 | $1.96 | 5,000.00 | $1.96 | 5,000.00 | $1.96 | 5,000.00 | $1.96 | 3.11 | 7.00 | 60.00 | Valpariso, IN |
| 5367 | MANTENO | Pratt Industries | 5,000.00 | $1.32 | 5,000.00 | $1.32 | 5,000.00 | $1.32 | 5,000.00 | $1.32 | 3.52 | 7.00 | 60.00 | Valpariso, IN |
| 551 | MANTENO | Pratt Industries | 10,000.00 | $0.21 | 10,000.00 | $0.21 | 10,000.00 | $0.21 | 10,000.00 | $0.21 | 0.43 | 7.00 | 60.00 | Valpariso, IN |
| 559 | MANTENO | Pratt Industries | 5,000.00 | $0.74 | 15,000.00 | $0.74 | 15,000.00 | $0.74 | 15,000.00 | $0.74 | 1.22 | 7.00 | 60.00 | Valpariso, IN |
| 566 | MANTENO | Pratt Industries | 5,000.00 | $1.66 | 5,000.00 | $1.66 | 5,000.00 | $1.66 | 5,000.00 | $1.66 | 3.72 | 7.00 | 60.00 | Valpariso, IN |
| 566 | MANTENO | Pratt Industries | 5,000.00 | $1.66 | 5,000.00 | $1.66 | 5,000.00 | $1.66 | 5,000.00 | $1.66 | 3.72 | 7.00 | 60.00 | Valpariso, IN |
| 596 | MANTENO | Pratt Industries | 5,000.00 | $1.76 | 5,000.00 | $1.76 | 5,000.00 | $1.76 | 5,000.00 | $1.76 | 4.00 | 7.00 | 60.00 | Valpariso, IN |
| 597 | MANTENO | Pratt Industries | 32.00 | $12.98 | 32.00 | $12.98 | 32.00 | $12.98 | 32.00 | $12.98 | 2.02 | 7.00 | 60.00 | Valpariso, IN |
| 5501 | MANTENO | Pratt Industries | 3,000.00 | $0.20 | 3,000.00 | $0.20 | 3,000.00 | $0.20 | 3,000.00 | $0.20 | 0.43 | 7.00 | 60.00 | Valpariso, IN |
| 5517 | MANTENO | Pratt Industries | 3,000.00 | $0.56 | 3,000.00 | $0.56 | 3,000.00 | $0.56 | 3,000.00 | $0.56 | 0.43 | 7.00 | 60.00 | Valpariso, IN |
| 5SE8D01 | MANTENO | Pratt Industries | 1,000.00 | $1.35 | 1,000.00 | $1.35 | 1,000.00 | $1.35 | 1,000.00 | $1.35 | 2.12 | 7.00 | 60.00 | Valpariso, IN |
| 5LI82 | MANTENO | Pratt Industries | 10,000.00 | $0.63 | 10,000.00 | $0.63 | 10,000.00 | $0.63 | 10,000.00 | $0.63 | 0.89 | 7.00 | 60.00 | Valpariso, IN |
| 5LI875 | MANTENO | Pratt Industries | 1,000.00 | $1.26 | 1,000.00 | $1.26 | 1,000.00 | $1.26 | 1,000.00 | $1.26 | 2.00 | 7.00 | 60.00 | Valpariso, IN |
| 5LI674 | MANTENO | Pratt Industries | 6,000.00 | $0.49 | 6,000.00 | $0.49 | 6,000.00 | $0.49 | 6,000.00 | $0.49 | 0.89 | 7.00 | 60.00 | Valpariso, IN |
| 5LI78 | MANTENO | Pratt Industries | 6,000.00 | $0.49 | 6,000.00 | $0.49 | 6,000.00 | $0.49 | 6,000.00 | $0.49 | 0.89 | 7.00 | 60.00 | Valpariso, IN |
| 5MI7 | MANTENO | Pratt Industries | 16,000.00 | $0.51 | 16,000.00 | $0.51 | 16,000.00 | $0.51 | 16,000.00 | $0.51 | 0.811 | 7.00 | 60.00 | Valpariso, IN |
| 5NTV6U | MANTENO | Pratt Industries | 1,330.00 | $2.71 | 4,200.00 | $2.11 | 4,200.00 | $2.11 | 4,200.00 | $2.11 | 4.17 | 7.00 | 60.00 | Valpariso, IN |
| 5SAW90 | MANTENO | Pratt Industries | 2,000.00 | $2.25 | 2,000.00 | $2.25 | 2,000.00 | $2.25 | 2,000.00 | $2.25 | 3.78 | 7.00 | 60.00 | Valpariso, IN |
| 5SEXXE | MANTENO | Pratt Industries | 500.00 | $1.79 | 500.00 | $1.79 | 500.00 | $1.79 | 500.00 | $1.79 | 0.95 | 7.00 | 60.00 | Valpariso, IN |
| 572 | WILKES-BARR | Pratt Industries | 5,000.00 | $2.71 | 5,000.00 | $2.71 | 5,000.00 | $2.71 | 5,000.00 | $2.71 | 6.44 | 7.00 | 70.00 | Mocongla, PA |

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

Exhibit A-1 Locations

| LOCN NBR | FACIL NM | STREET NBR | STREET NM | CITY NM | ST CD | POSTAL CD | FACIL TYPE CD | CONTACT NAME | FACIL NBR | CONTACT EXT |
|---|---|---|---|---|---|---|---|---|---|---|
| 420 | COLUMBUS RRC | 4400 | Lockbourne Ind Pkwy | Columbus | OH | 43207 | RRC | | (614) 492-5304 | |
| 425 | JACKSONVILLE RRC | 10512 | Busch Dr N | Jacksonville | FL | 32218 | RRC | | (904) 265-3366 | |
| 440 | MANTENO RRC | 1600 | Boudreau Rd | Manteno | IL | 60950 | RRC | | (815) 468-2000 | |
| 443 | WILKES BARRE RRC | 1005 | Hanover Street | Wilkes Barre | PA | 18706 | RRC | | (570) 831-2020 | |
| 446 | MEMPHIS RRC | 3456 | Meyers Ave | Memphis | TN | 38108 | RRC | | (901) 325-7400 | |
| 447 | GARLAND RRC | 2775 | W Miller Rd | Garland | TX | 75041 | RRC | | (972) 864-2476 | |
| 449 | DELANO RRC | 1700 | Schuster Rd | Delano | CA | 93215 | RRC | | (661) 721-5915 | |
| 470 | MANTENO CDFC | 8374 | N 4000 East | Manteno | IL | 60950 | CDFC | | (815) 352-8218 | |
| 7840 | DART - Kmart | 1835 | Ferry Road | Naperville | IL | 60563 | DART | Art Albin | (630) 416-5300 | 271 |
| 8158 | DART - Brands | 1835 | Ferry Road | Naperville | IL | 60563 | DART | Art Albin | (630) 416-5300 | 271 |
| 8272 | SPARKS DC | 1400 | S MC CARREN BLVD | SPARKS | NV | 89431 | RDC | | (775) 359-2610 | |
| 8273 | LAWRENCE DC | 3051 | LAKEVIEW RD | LAWRENCE | KS | 66049 | RDC | | (785) 842-9600 | |
| 8275 | MORRISVILLE DC | 1 | KRESGE RD PENN WARNER PARK | FAIRLESS HILLS | PA | 19030 | RDC | | (215) 736-8280 | |
| 8287 | ONTARIO DC | 5500 | E AIRPORT RD | ONTARIO | CA | 91761 | RDC | | (909) 390-4515 | |
| 8288 | GREENSBORO DC | 300 | PENRY RD | GREENSBORO | NC | 27405 | RDC | | (336) 621-2111 | |
| 8289 | MANTENO DC | 333 | S SPRUCE ST | MANTENO | IL | 60950 | RDC | | (815) 568-3476 | |
| 8290 | DENVER DC | 18875 | BROMLEY LANE | BRIGHTON | CO | 80601 | RDC | | (303) 654-0054 | |
| 8292 | OCALA DC | 655 | SW 52ND AVE | OCALA | FL | 34478 | RDC | | (352) 873-7377 | |
| 8298 | GEORGIA DC | 60 | HERRING RD | NEWNAM | GA | 30264 | RDC | | (770) 253-1050 | |
| 8305 | WARREN DC | 541 | PERKINS JONES RD | WARREN | OH | 44483 | RDC | | (330) 372-6086 | |
| 8780 | WESTERN REGIONAL SPECIALTY DC | 3100 | MILLIKIN AVENUE | MIRA LOMA | CA | 91752 | RSC | | (951) 727-3200 | |
| 8781 | NORTHEAST REGIONAL SPECIALTY DC | 1475 | NITTERHOUSE ROAD | CHAMBERSBURG | PA | 17201 | RSC | | (717) 267-0356 | |
| 8896 | GROVEPORT DC | 4400 | S HAMILTON RD | GROVEPORT | OH | 43125 | RSC | | (614) 836-5000 | |
| 8897 | FOREST PARK DC | 5265 | OLD DIXIE HIGHWAY | FOREST PARK | GA | 30297 | RSC | | (404) 363-6830 | |
| 9300 | DART - Sears | 1835 | Ferry Road | Naperville | IL | 60563 | DART | Art Albin | (630) 416-5300 | 271 |

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

## EXHIBIT B

### PRODUCT & PRICING INFORMATION

This Exhibit B is incorporated by reference into the Master Supply Agreement by and among Sears Holdings Management Corporation, Sears Logistics Services, Inc., Sears, Roebuck and Co., and Kmart Corporation, and their Affiliates (the "Company") and Pratt Corrugated Holdings, Inc. ("Supplier") dated _____ __, 20__ (the "Agreement").

#### Price Adjustment.

Definitions:

> "Index Value" means the most recent US East Open Market average price for 42# Unbleached Kraft linerboard as published in the Pulp & Paper Week - Price Watch (US$/ton) in the month preceding the Review Date.

> "Neutral Zone" means a difference of $30 per ton, either up or down, between the current Review Date's Index Value and the Index Value used at the last Review Date at which a price adjustment was made, or if none, from the Base Number.

> "Review Date" means each August 1st, November 1st, February 1st, and May 1st.

> "Effective Date of the Adjustment" means the 1st of the month that immediately follows the applicable Review Date (e.g., for the August 1st Review Date the Effective Date of the Adjustment is September 1st).

> "Weighing Factor" means the actual weight of corrugate in each Product as listed in Exhibit A.

> "Effective Date Price" means the price for each product item as of the Effective Date of this Agreement.

> "Index Change" is the difference of (a) the Index Value minus (b) the Base Number.

> "Invoice Price" means the Effective Date Price, until it is adjusted by this adjustment, and thereafter the price for products as adjusted by this adjustment process.

> "Base Number" means 630US$.

> "Ton" is equal to 2000 lbs

On each Review Date, Supplier will make and report to Company the following price calculations. This Price Adjustment procedure has two steps: first, the Neutral Zone calculation, and then, if the Neutral Zone is exceeded, the Price Adjustment Calculation.

1. *Neutral Zone Calculation.* If the difference of the current Review Date's Index Value from the Index Value used at the last Review Date at which a Price Adjustment was made, or if none, from the Base Number, is equal to or less than the Neutral Zone, Supplier will not proceed to calculate an adjustment in price. If that difference exceeds the Neutral Zone, then Supplier will proceed to calculate the adjustment in price.

2. *Price Adjustment Calculation.*

    a. If the Index Change is a negative number Supplier will decrease the Invoice Price of each Product to a price determined by taking the Effective Date Price and subtracting from it an amount equal to the result of: (a) the Weighing Factor of the Product multiplied by (b) the result of (1) the absolute value of the Index Change (2) divided by 2000.

    b. If the Index Change is a positive number Supplier may increase the Invoice Price of each Product to a price determined by taking the Effective Date Price and adding to it an amount equal to the result of: (a) the Weighing Factor of the Product multiplied by (b) the result of (1) the absolute value of the Index Change (2) divided by 2000.

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A606B06C7478

Within 5 days of the Review Date, Supplier will submit to Company: 1) written calculations made pursuant to this section and 2) the resulting adjustments, if any, to the Invoice Price ("Adjusted Invoice Price") in an updated Exhibit A.

The Adjusted Invoice Price will affect any new PO issued by Supplier on or after the Effective Date of the Adjustment.

TABLE 1

| Item Description | MFG Model # | Unit Invoice Price | Weight of Corrugated Cardboard in each Unit | FOB Point | Comments |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A606B06C7476

**Attachment B-1**
**Index/Price Change Form**

The Master Supply Agreement dated _____, 2014, between Pratt Corrugated Holdings, Inc. ("Supplier") and Sears Holdings Management Corporation, Sears Logistics Services, Inc., Sears, Roebuck and Co., and Kmart Corporation, and their Affiliates ("Company") (the "Agreement"), and any amendments related thereto, the terms and conditions of which are hereby incorporated by reference herein, is hereby modified to change the Agreement as set forth below.

The following Increase or Decrease is hereby added to the Agreement:

**Index and Price Adjustment Information**

Review Date:                           _____

Index Value:                    $_____

Base Number:                  $_____

Index Change:                 $_____

Effective Date of Adjustment: _____

The Invoice Prices as set forth in Exhibit A will be adjusted as of the above listed Effective Date of Adjustment.

In all other respects, the Agreement, as amended, if any, remains in full force and effect in accordance with its terms.   The parties have executed this Modification to the Agreement on this _____ day of _____, _____.

SEARS HOLDINGS MANAGEMENT                SUPPLIER:
CORPORATION as agent for Sears
Logistics Services, Inc., Sears, Roebuck
and Co., and Kmart Corporation, and
their Affiliates                                        PRATT CORRUGATED HOLDINGS, INC.

By:_____              By:_____

Printed Name:_____              Printed Name: _____

Title:_____              Title: Chief Financial Officer_____

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D832-470D-B70F-A506B06C7476

# EXHIBIT C - SPECIFICATIONS

Exhibit C - Specifications

| SHC ITEM NUMBER | SHC CITY | Item Name |
|---|---|---|
| S1269 | COLUMBUS | STYLE TP BTM LGT[IN] 12 HGT[IN] 5.2 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1271 | COLUMBUS | STYLE TP RSC STYLE BTM RSC LGT[IN] 27 HGT[IN] 6 WGT[LB] 811 BLNK LGT 17.875 BLNK WD 60.75 BRD COMB LINER 35 BRD COMB MED BRD COMB LINER 35 FLT B TST 32 ECT PRT 1 COLOR JNT GL IN |
| S1273 | COLUMBUS | STYLE TP  STYLE BTM LGT[IN] 18 HGT[IN] 12 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1275 | COLUMBUS | STYLE TP STYLE BTM NO INFO LGT[IN] 20 HGT[IN] 14 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1279 | COLUMBUS | STYLE TP STYLE BTM NO INFO LGT[IN] 24 HGT[IN] 18 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1281 | COLUMBUS | STYLE TP STYLE BTM NO INFO LGT[IN] 26 HGT[IN] 14 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1285 | COLUMBUS | STYLE TP SHEET - STYLE BTM K - LGT[IN] - 48WD[IN]; 66 - HGT[IN]: - WGT[LB]: 8.392 - BLNK LGT: 48 BLNK WD: 96 - BRD COMB L/M/L/M/L: 35/26/35/// |
| SPA07B | COLUMBUS | FLT: C - TST: 26 ECT - PRT: PLAIN JNT: NM |
| S1269 | GARLAND | STYLE TP  STYLE BTM LGT[IN] 12 HGT[IN] 5.2 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1271 | GARLAND | STYLE TP RSC STYLE BTM RSC LGT[IN] 27 HGT[IN] 6 WGT[LB] 811 BLNK LGT 17.875 BLNK WD 60.75 BRD COMB LINER 35 BRD COMB MED BRD COMB LINER 35 FLT B TST 32 ECT PRT 1 COLOR JNT GL IN |
| S1273 | GARLAND | STYLE TP  STYLE BTM LGT[IN] 18 HGT[IN] 12 WGT[LB] BLNK LGT 0[IN] WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1275 | GARLAND | STYLE TP STYLE BTM NO INFO LGT[IN] 20 HGT[IN] 14 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1279 | GARLAND | STYLE TP STYLE BTM NO INFO LGT[IN] 24 HGT[IN] 18 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1281 | GARLAND | STYLE TP STYLE BTM NO INFO LGT[IN] 26 HGT[IN] 14 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1283 | GARLAND | STYLE TP STYLE BTM NO INFO LGT[IN] 27 HGT[IN] 6 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S1285 | GARLAND | STYLE TP STYLE BTM NO INFO LGT[IN] 28 HGT[IN] 18 WGT[LB] BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| S01 | GROVE CITY | STYLE TP: J-LOCK - STYLE BTM: PGAB - LGT[IN] - 12WD[IN]: 9 - HGT[IN]: 6 - WGT[LB]: 0.506 - BLNK LGT: 16.125 BLNK WD; 43.875 - BRD COMB L/M/L/M/L: 33/26/33// - FLT: B - TST: 26 ECT - PRT: 1 COLOR JNT: GL OUT |
| S032 | GROVE CITY | STYLE TP: J-LOCK - STYLE BTM: PGAB - LGT[IN] - 38WD[IN]: 12 - HGT[IN]: 6 - WGT[LB]: 0.846 - BLNK LGT: 19.125 BLNK WD; 61.875 - BRD COMB L/M/L/M/L: 33/26/33/// - FLT: B - TST: 26 ECT - PRT: 1 COLOR JNT: GL OUT |
| S04 | GROVE CITY | STYLE TP1 D/C - STYLE BTM: AB - LGT[IN] - 17WD[IN]: 11 - HGT[IN]: 9 - WGT[LB]: - BLNK LGT: 48 BLNK WD: 58.625 - BRD COMB L/M/L/M/L: 33/26/33// FLT: B - TST: 150 - PRT: PLAIN JNT: GL OUT |
| S05 | GROVE CITY | STYLE TP RSC - STYLE BTM: HSC - LGT[IN] - 48WD[IN]: 40 - HGT[IN]: 54 - WGT[LB]: 16.44 - BLNK LGT: 74.5 BLNK WD: 179.625 - BRD COMB L/M/L/M/L: 350BLW/260BLW/350BLW/// - FLT: B/C - TST: 51 - PRT: 1C JNT: Inside |
| S451 | GROVE CITY | STYLE TP RSC STYLE BTM RSC LGT[IN] 20 WD[IN] 12 HGT[IN] 10 WGT[LB] 1.0 BLNK LGT 22.625 BLNK WD 00 BLNK SQL FT, 56 BRD COMB 26 BRD COMB MED 26 BRD COMB LINER  BRD COMB MED  MSF  FLT C TST 44 ECT 44 PRT PLAIN JNT IN |
| S453 | GROVE CITY | STYLE TP RSC STYLE BTM RSC LGT[IN] 24 WD[IN] 20.125 HGT[IN] 20 WGT[LB] 3.922 BLNK LGT 40.625 BLNK WD 90 BLNK SQ. FT, 56 BRD COMB LINER 26 BRD COMB MED 56 BRD COMB LINER BRD COMB MED MSF FLT C TST 44 ECT 44 PRT PLAIN JNT GL IN |
| S455F | GROVE CITY | STYLE TP HSC STYLE BTM RSC LGT[IN] 48 WD[IN] 40 HGT[IN] 40 WGT[LB] 14.035 BLNK LGT 60.5 BLNK WD 80 BLNK SQ. FT, 35 BRD COMB 26 BRD COMB MED 35 BRD COMB LINER BRD COMB MED MSF FLT B TST 51 ECT 51 PRT PLAIN JNT ST IN |
| S457T | GROVE CITY | STYLE TP HSC STYLE BTM A50 LGT[IN] 90 WD[IN] 40 HGT[IN] 54 WGT[LB] 17.289 BLNK LGT 74.5 BLNK WD 90 BLNK SQL FT, 35 BRD COMB LINER 26 BRD COMB MED 35 BRD COMB LINER BRD COMB MED BRD COMB LINER MSF FLT B TST 51 ECT 51 PRT PLAIN JNT ST IN |
| S011 | GROVE CITY | STYLE TP: J-LOCK - STYLE BTM: PGAB - LGT[IN] - 12WD[IN]: 9 - HGT[IN]: 6 - WGT[LB]: 0.506 - BLNK LGT: 16.125 BLNK WD; 43.875 - BRD COMB L/M/L/M/L: 33/26/33/// - FLT: B - TST: 26 ECT - PRT: 1 COLOR JNT: GL OUT |
| S1254 | MANTENO | STYLE TP: SHEET - STYLE BTM: - LGT[IN] - 48WD[IN]: 96 - HGT[IN]: - WGT[LB]: 9.393 - BLNK LGT: 48 BLNK WD: 96 - BRD COMB L/M/L/M/L: 35/26/35/// - FLT: C - TST: 26 ECT - PRT: PLAIN JNT: NM |
| S51 | MANTENO | STYLE TP RSC - STYLE BTM: RSC LGT[IN] 52 - WD[IN] 8.5 - HGT[IN] 8.5 FLT: B - TST: 92 ECT - PRT: 1 COLOR - JNT: GL IN |
| S12 | MANTENO | STYLE TP RSC STYLE BTM AUTOLOK LGT[IN] 12 HGT[IN] 5.5 WGT[LB] BLNK LGT 14.875 BLNK WD 42.8125 BRD COMB LINER 42 BRD COMB MED 26 BRD COMB LINER 42 FLT B TST 92 ECT PRT PLAIN JNT GL OUT |
| S17T | MANTENO | STYLE TP RSC STYLE BTM RSC LGT[IN] 171 HGT[IN] 6 WGT[LB] BLNK LGT 18.375 BLNK WD 60.8125 BRD COMB LINER 28 BRD COMB MED 26 BRD COMB 1 COLOR JNT GL IN |
| S17T | MANTENO | STYLE TP RSC - STYLE BTM: RSC - LGT[IN] - 27 HGT[IN] 6 WGT[LB] BLNK LGT 18.375 BLNK WD 60.8125 BRD COMB LINER 42 BRD COMB MED 26 BRD COMB 42 FLT B TST 32 ECT PRT PLAIN JNT OIL OUT |
| S18T | MANTENO | STYLE TP RSC - STYLE BTM RSC - LGT[IN] - 38WD[IN]: 12 - HGT[IN]: 12 - WGT[LB]: 1.065 - BLNK LGT: 24.75 BLNK WD: 61.9375 - BRD COMB L/M/L/M/L: 35/23/35/// - FLT: B - TST: 32 ECT - PRT: PLAIN JNT: IN |
| S19T | MANTENO | STYLE TP RSC - STYLE BTM RSC LGT[IN] 18 HGT[IN] 12 WGT[LB] 1.065 BLNK LGT 24.75 BLNK WD 61.9375 BRD COMB LINER 35 BRD COMB MED 23 BRD COMB LINER 35 FLT B TST 32 ECT PRT 1 COLOR JNT GL IN |
| S20T | MANTENO | STYLE TP RSC - STYLE BTM: RSC - LGT[IN] - 20WD[IN]: 16 - HGT[IN]: 14 - WGT[LB]: 1.688 - BLNK LGT: 30.875 BLNK WD: 73.75 - BRD COMB L/M/L/M/L: 35/23/35/// - FLT: B - TST: 32 ECT - PRT: 1 COLOR JNT: GL IN |

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A506B06C7476

## EXHIBIT D - KEY SUPPLIER PERFORMANCE PROGRAM

As part of the ongoing efforts by Company to develop strong relationships with its key suppliers, suppliers will be evaluated on a periodic basis using Company's Key Supplier Management Process. The process will be administered either by a member of the Company's Procurement Team or through a named business stakeholder that may have a closer operational relationship with the supplier.

Included in the Key Supplier Management Process is the ongoing evaluation of the supplier performances based on the Agreement as well as other factors such as:

> - Quality of products and/or services
> - Timeliness of delivery of goods and/or services
> - Responsiveness to problem resolutions
> - Cost comparison relative to competition and industry, including Total Cost of Ownership
> - Innovation and ability to add value

As a "Key Supplier," Supplier agrees to provide monthly or quarterly Reports on products and/or services provided to Company. These reports will be developed in conjunction with a member of the Company Procurement Team and with a Supplier Representative. The reports are designed to provide additional supplier performance metrics as well as to provide an ongoing measure of requirements set forth in the Agreement to the Company Procurement Department. The Supplier Reports may include, but are not limited, to the following types of information:

> - Quality of products and/or services
> - Quantity of products to Company for products and/or services
> - Prices charged to Company for products and/or services
> - Accuracy & timeliness of products and/or services delivered
> - Company's accrual of any qualified Rebates/Discounts based on the Agreement

Company will provide the detailed questions that will be used for the supplier evaluation process. In addition, Company will provide Contractor with the requirements (content, format & frequency) of the Supplier Reports.

Supplier is encouraged to bring opportunities for improvement in the overall Procurement process to Company's attention.

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A508B06C7478

## EXHIBIT E – SCOPE OF WORK

The Company's expectation is to initially receive the lowest available market pricing for corrugated containers and to relatively maintain that throughout the duration of the agreement period.

### SHIPPING REQUIREMENTS

- Supplier must be able to ship to anywhere in the U.S.
- A freight analysis will be conducted after the bidding process to determine the freight method for this program.
- The standard operation process (SOP) allows for a four (4) hour unload time for live loads. SHMC will make every effort to process these corrugate loads as quickly as possible.
- The carrier must have an appointment with the receiving facility before attempting delivery.
- If the carrier arrives earlier than the appointed time they will be accommodated if the facilities schedule allows, if the schedule will not allow an early start the carrier must wait until the appointed time.
- If the carrier arrives after the appointed time, they will be unloaded as time allows or will have the option to schedule another appointment.

### PRODUCT SPECIFICATIONS

- In Exhibit C, you will find information detailing the corrugated boxes:
  - Box number
  - Inside dimensions
  - Box specifications
  - Estimated annual usage
  - Delivery locations

### PRICING REQUIRMENTS

- One price per item based on the agreed prices, regardless of the individual run quantities and/or ordered quantities.
- Pricing should assume ordering by pallet and mixed full truckload deliveries.
- There will be no surcharge or premium on shipments, regardless of amount shipped.
- All printing plates and cutting dies will be provided by Supplier in all cases (regular maintenance, replacements, new items, etc.), except complete graphic revisions requested by Company.
- Any approved price changes (increases/decreases) are to be effective by order date, i.e., if pricing is effective June 1st, orders received prior to June 1st would be at the existing price. New pricing would be effective with orders dated June 2nd. However, prior pricing will be honored only for quantities ordered for shipment at the next available ship date following the order date.

### INVOICING REQUIREMENT

- Invoices will be billed Delivered Cost, with freight included in the cost, but Company also has the option to utilize FOB MFG pricing.
- Vendors will be billed FOB Mfg cost, with freight designated by the vendor and charged at actual cost.

### Supplier will Provide:

- Sales support staff including:
- Selected supplier to provide Single Point of Contact (SPOC)
- Inside sales staff to support buyer concerns/questions
- Technical support and assistance to support the buyer and field personnel
- Provide courteous same day response to all inquiries from end users
- Provide Customer service available during normal business hours and for emergency purposes
- Timely notification of production issues with listing of potential solutions with associated cost and timing
- High on-time fulfillment
- Low error tolerance
- Manufacturing & print quality in-line with our requirements
- All printing plates and cutting dies at no charge
- Testing for cartons for Sears/Kmart and/or Sears vendors, at no additional charge.
- Process and packaging improvements (dedicated technical support).

302723106v1 8691

DocuSign Envelope ID: AE1DC17A-D932-470D-B70F-A606B06C7476

- Electronic monthly and year-to-date shipping reporting in a format of SHMCs choosing, including but not limited to carton id, quantity, quantity per bundle or pallet, dollar amount per each carton and total shipped, total number of orders processed by carton, tonnage and location shipped from and location shipped to, for each facility and a total summary report, which includes all locations.
- Sample cartons as necessary at no cost to SHMC

Supplier will be required to:
- Periodically at the discretion of SHMC meet with and discuss cost savings opportunities with Operations and Procurement.
- Hold formal monthly meetings with supplier account team to review supplier and customer performance.
- Maintain service and quality standards through the course of work performing.
- Agree that Supplier's pricing is not contingent on 100% of the business.
- Ensure that no company logos and/or reference to your company printed on our packaging, without written consent from Company.
- Use SHMC excel format for carton information.  This should include but not limited to the SHMC carton description, measurements, quantity per pallet for each carton being processed or shipped
- No changes to carton specifications or pallet quantities allowed without approval from SHMC Corporate Logistics and Procurement.
- Must submit all detailed CAD drawings electronically for all cartons provided and must include the SHMC carton number and description and include the supplier carton number and description within 30 Days of Award
- When a new carton is requested by SHMC during the term of the agreement, a detailed CAD drawing is to be electronically submitted to SHMC which includes all of the above information

Environmental Requirements
- Comply with all Federal and State and local environmental laws and requirements including the LACEY Act.

302723106v1 8691

DocuSign
SECURED

## Certificate of Completion

Envelope Number: AE1DC17AD932470DB70FA508B06C7476
Subject: Pratt Industries - CW2284970
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 20 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 2 | Initials: 0 | SHC Contract Management |
| AutoNav: Enabled | | 3333 Beverly Rd |
| Envelope Stamping: Enabled | | Hoffman Estates, IL  60179 |
| | | vinod.kallyamurthy@searshc.com |
| | | IP Address: 119.226.198.138 |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: SHC Contract Management | Location: DocuSign |
| 7/31/2014 1:46:21 AM CT | vinod.kallyamurthy@searshc.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| David Wiser<br>dwiser@prattindustries.com<br>CFO<br>Pratt Corrugated Holdings, Inc.<br>Security Level: Email, Account Authentication<br>(None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | *David Wiser*<br>CFEDFBB4159C4FA...<br><br>Using IP Address: 64.47.92.194 | Sent: 7/31/2014 8:09:17 AM CT<br>Viewed: 7/31/2014 8:11:19 AM CT<br>Signed: 8/1/2014 11:51:47 AM CT |
| Vinod Kallyamurthy<br>vinod.kallyamurthy@searshc.com<br>Contract Admin<br>Sears - Procurement<br>Security Level: Email, Account Authentication<br>(None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | Completed<br><br>Using IP Address: 119.226.198.138 | Sent: 8/1/2014 11:51:49 AM CT<br>Viewed: 8/10/2014 9:48:36 PM CT<br>Signed: 8/10/2014 9:50:20 PM CT |
| Hemant Porwal<br>Hemant.Porwal@searshc.com<br>Vice President<br>Sears Holdings<br>Security Level: Email, Account Authentication<br>(None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | *Hemant Porwal*<br>6071SFC5613043D...<br><br>Using IP Address: 166.76.0.1 | Sent: 8/10/2014 9:50:22 PM CT<br>Viewed: 8/14/2014 8:31:38 AM CT<br>Signed: 8/14/2014 8:36:15 AM CT |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

302723106v1 8691

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Marilyn Esslan<br>Marilyn.Esslan@searshc.com<br>Security Level: Email, Account Authentication (None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | COPIED | Sent: 8/1/2014 11:51:49 CT |
| Marilyn Esslan<br>Marilyn.Esslan@searshc.com<br>Security Level: Email, Account Authentication (None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | COPIED | Sent: 8/10/2014 9:50:22 PM CT |
| Marilyn Esslan<br>Marilyn.Esslan@searshc.com<br>Security Level: Email, Account Authentication (None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | COPIED | Sent: 8/14/2014 8:35:17 AM CT |
| SHC Contract Mgmt<br>shccontractmgmt@searshc.com<br>Security Level: Email, Account Authentication (None)<br>Electronic Record and Signature Disclosure:<br>Not Offered<br>ID: | COPIED | Sent: 8/14/2014 8:35:17 AM CT<br>Viewed: 8/14/2014 7:59:41 PM CT |

| Notary Events | | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/14/2014 8:35:17 AM CT |
| Certified Delivered | Security Checked | 8/14/2014 8:35:17 AM CT |
| Signing Complete | Security Checked | 8/14/2014 8:35:17 AM CT |
| Completed | Security Checked | 8/14/2014 8:35:17 AM CT |

302723106v1 8691

DocuSign Envelope ID: 0B6313B3-520B-41D6-8B42-6393215E4880

# FIRST AMENDMENT TO THE MASTER SUPPLY AGREEMENT

THIS FIRST AMENDMENT TO THE MASTER SUPPLY AGREEMENT (he "First Amendment") is to be in effect as of August 11, 2017 ("Effective Date") by and among Sears Holdings Management Corporation ("SHMC"), Sears Logistics Services, Inc. ("SLS"), Kmart Corporation ("Kmart"), and Sears, Roebuck and Co. ("Sears") or their Affiliates ( SHMC, SLS, Kmart and Sears are collectively referred to herein as the "Company"), Pratt Corrugated Holdings, Inc. ("Supplier") (each a "Party" and collectively the "Parties").

WHEREAS, Company and Supplier have heretofore entered into that certain Master Supply Agreement dated August 13, 2014 (the "Agreement") whereby Supplier agreed to supply Products to Company; and

WHEREAS, Company and Supplier mutually desire to amend the Agreement to extend the Term of the Agreement and update the payment terms as set forth herein;

NOW THEREFORE, in consideration of the foregoing and the mutual promises contained herein, the parties hereto agree as follows:

The Agreement is hereby amended as follows:

1.  **Section 12.1 (Term).** Section 12.1 of the Agreement is deleted in its entirety and replaced with the following:

    The term of this Agreement begins on the Effective Date and expires on August 31, 2020, unless it is terminated earlier under Sections 12.2 or 12.3. The term may be extended or renewed for an additional one (1) year term only by written agreement of the parties.

2.  **Section 3.4 (Timing and Method of Payment).** Paragraph 3.4 of the Agreement is deleted in its entirety and replaced with the following:

    Company will initiate payment on Supplier's properly submitted invoices fifteen (15) days after receipt of invoice plus a five (5) day float. If any payment date is a Saturday, Sunday or bank holiday, then Company is not obligated to initiate payment until the next banking day. Company has no obligation to pay any amount first invoiced more than six months after it accrued. Company is not required to pay any disputed charge until the dispute is resolved. Supplier shall, if Company desires, accept all payments in U.S. Dollars. Company may make payments using "Electronic Funds Transfer" (EFT) in which case Supplier shall complete and deliver such applications and authorizations as Company customarily requires for these purposes.

3.  **Supplier's Continuing Obligation to Keep Terms Confidential.** Company and Supplier agree that the terms of this First Amendment are Confidential Information of Company, which Supplier is restricted from disclosing under Section 14 (Confidentiality) of the Agreement. Company and Supplier agree that the terms of this First Amendment shall be confidential and, except as set forth elsewhere in this

Corrugated Pratt Amendment_1 Sept 8 2017.cni

302723106v1 8691

DocuSign Envelope ID: 0B6313B3-820E-41D8-8B42-6393215E4639

Paragraph, will not be disclosed to any third party at any time, except Supplier's attorney and its terms will not be used or disclosed in any legal, equitable or arbitration proceedings, except to enforce any provision of the Agreement or this First Amendment. Any Party may disclose any term of the Agreement or First Amendment in order to comply with any government order, rule or regulation, or as is otherwise required by law; *provided* that the disclosing Party shall first notify the other Party within a reasonable time prior to such disclosure to provide the other Party reasonable opportunity to seek appropriate protective measures. If Supplier violates the terms of this provision it shall be liable to Company for all appropriate damages.

4.  Exhibit A, Pricing. Exhibit A of the Agreement is deleted in its entirety and replaced with Exhibit A, Pricing, attached hereto.

5.  Exhibit A-1, Locations. Exhibit A-1 of the Agreement is deleted in its entirety and replaced with Exhibit A-1, Locations, attached hereto.

6.  The following shall be added as Section 16 to the Agreement:

    "Section 16. Supplier may, solely in its discretion, participate in the Shop Your Way® Vendor Engagement Program further explained on Attachment SYW attached hereto. Company values strong relationships with its suppliers. Company believes that these relationships are strongest when our suppliers and their employees are engaged with Company initiatives and are active users of Company programs, products and services. Supplier may participate in Company's "Shop Your Way Vendor Engagement Program" as set forth in Attachment SYW hereto (Shop Your Way Vendor Engagement Program); and through that program otherwise encourage its employees to participate in Company's Shop Your Way program. Company reserves the right to modify or discontinue, in whole or in part, the Shop Your Way Program and the Shop Your Way Vendor Engagement Program at any time in its sole discretion."

7.  All capitalized terms appearing in this First Amendment shall have the meaning which they have in the Agreement unless otherwise defined herein. Except to the extent specifically provided to the contrary in this First Amendment, all terms and conditions of the Agreement shall remain in full force and effect, without modification or limitation.

Corrugated Pratt Amendment_1 Sept 5 2017 mi

302723106v1 8691

DocuSign Envelope ID: 0B5313B3-020E-41D6-8B42-6303215E4699

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment on the date first above written.

SEARS HOLDINGS MANAGEMENT CORPORATION
SEARS LOGISTICS SERVICES, INC.
SEARS, ROEBUCK AND CO.
KMART CORPORATION
By: Sears Holdings Management
Corporation, their Agent

By: _Tony Dattilo_____ _Tony Dattilo_____

Name: Tony Dattilo

Title: Divisional Vice President


PRATT CORRUGATED HOLDINGS, INC.

By: _____

Name: Stephen Ward

Title: CFO

Corrugated Pratt Amendment_1 Sept 5 2017 rm.

302723106v1 8691

DocuSign Envelope ID: 0B6313B3-8205-41D6-8B42-0393215E4639

Exhibit List:
Exhibit A- Pricing
Exhibit A-1, Locations

## EXHIBIT A - PRICING

| SHELTER NUMBER | SHIP TO Location | Dimensions (L x W x H) & Description | Per Piece Cost (including material freight and delivery) |
|---|---|---|---|
| | CHAMBERSBURG, PA | Inside Dimensions 13 x 9 x 9.1875 STYLE TP D/C STYLE BTM D/C WGT(LB) 0.598 BLNK LGT 19.875 BLNK WD 46.125 BRD COMB L/M/L/M/L 35/26/35/ FLT C TST 32 ECT PRT 1 Color INT GL IN | |
| | CHAMBERSBURG, PA | Inside Dimensions 18 x 12.5 x 10.125 STYLE D/C - STYLE BTM D/C - WGT(LB): 1.179 - BLNK LGT: 24.5 BLNK WD: 63.125 BRD COMB L/M/L/M/L 35/26/35/ - FLT C - TST: 32 ECT - PRT: PLAIN INT: GL IN | |
| | CHAMBERSBURG, PA | Inside Dimensions 20 x 13 x 13.625 STYLE TP: D/C - STYLE BTM: D/C - WGT(LB) 1.48 - BLNK LGT: 28.5 BLNK WD: 68.125 - BRD COMB L/M/L/M/L: 35/26/35/ - FLT: C - TST: 32 ECT - PRT: PLAIN INT: GL IN | |
| | CHAMBERSBURG, PA | Inside Dimensions 24 x 17 x 14.8125 STYLE TP: D/C - STYLE BTM: D/C - WGT(LB): 2.15 - BLNK LGT: 33.5 BLNK WD: 84.125 - BRD COMB L/M/L/M/L: 35/26/35/ - FLT: C - TST: 32 ECT - PRT: PLAIN INT: GL IN | |
| | FAIRLESS HILLS, PA | 13 X 11 X 15 | |
| | FAIRLESS HILLS, PA | 13 X 11 X 5 | |
| | FAIRLESS HILLS, PA | 15 X 7 3/8 x 9 5/8 - 48 ECT BC Flute x K80 Single Battery Box | |
| | FAIRLESS HILLS, PA | 16 X 12 X 6 | |
| | FAIRLESS HILLS, PA | 16 X 14 X 10 | |
| | FAIRLESS HILLS, PA | 17 X 12.5 X 5 | |

Corrugated Pratt Amendment_1 Sept 5 2017 nh

302723106v1 8691

DocuSign Envelope ID: 0B6313B3-820E-41D6-6B42-6393215E4639

| | FAIRLESS HILLS, PA | 16 X 12 X 12 | |
| | FAIRLESS HILLS, PA | 18 X 18 X 18 | |
| | FAIRLESS HILLS, PA | 20 X 14 X 12 | |
| | FAIRLESS HILLS, PA | 20 X 16 X 14 | |
| | FAIRLESS HILLS, PA | 20 X 20 X 20 | |
| | FAIRLESS HILLS, PA | 24 X 18 X 18 | |
| | FAIRLESS HILLS, PA | 25 X 18 X 6 | |
| | FAIRLESS HILLS, PA | 27 X 20 X 18 | |
| | FAIRLESS HILLS, PA | 36 X 16 X 16 | |
| | FAIRLESS HILLS, PA | 8 X 6 X 6 | |
| | Garland, TX | STYLE TP STYLE BTM LGT(IN) 12 HGT(IN) 5.2 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT | |
| | Garland, TX | STYLE TP STYLE BTM LGT(IN) 18 HGT(IN) 12 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT | |
| | Garland, TX | STYLE TP STYLE BTM NO INFO LGT(IN) 20 HGT(IN) 14 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT | |
| | Garland, TX | STYLE TP STYLE BTM NO INFO LGT(IN) 27 HGT(IN) 6 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT | |
| | Garland, TX | STYLE TP STYLE BTM NO INFO LGT(IN) 27 HGT(IN) 6 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT | |
| | Garland, TX | STYLE TP RSC STYLE BTM RSC LGT(IN) 17 HGT(IN) 6 WGT(LB) #11 BLNK LGT 17.875 BLNK WD 60.75 BRD COMB LINER 38 BRD COMB MED 23 BRD COMB LINER 35 FLT B TST 32 ECT PRT 1 COLOR JNT GL IN | |
| | Lawrence, KS | 13 X 11 X 15 | |
| | Lawrence, KS | 13 X 11 X 5 | |
| | Lawrence, KS | 13 X 7 3/8 x 5 3/8 - 48 ECT BC Flute - K&U Single Battery Box | |
| | Lawrence, KS | 16 X 12 X 6 | |
| | Lawrence, KS | 16 X 14 X 10 | |
| | Lawrence, KS | 17 X 12.5 X 5 | |

302723106v1 8691

DocuSign Envelope ID: 0B5313B3-820E-41D0-8B42-6303216E4638

| | | |
|---|---|---|
| | Lawrence, KS | 18 X 12 X 12 |
| | Lawrence, KS | 18 X 18 X 18 |
| | Lawrence, KS | 20 X 14 X 12 |
| | Lawrence, KS | 20 X 16 X 14 |
| | Lawrence, KS | 20 X 20 X 20 |
| | Lawrence, KS | 22 X 11 X 7 |
| | Lawrence, KS | 24 X 18 X 18 |
| | Lawrence, KS | 25 X 18 X 6 |
| | Lawrence, KS | 27 X 20 X 18 |
| | Lawrence, KS | 36 X 16 X 16 |
| | Lawrence, KS | 6 X 6 X 6 |
| | Manteno, IL | 123 Bottom - 20x16x14 - 32 ECT B flute, Joint glued inside, Kraft, 20X 123 Tape. |
| | Manteno, IL | 13x7 3/8 9 3/8 - 48 ECT BC Flute - K80 Single Battery Box |
| | Manteno, IL | 15.75x12.75x6 -32 ECT B flute. Joint glued Inside, White, Med Jewelry |
| | Manteno, IL | 20x13.125x19.75 - 26 ECT C Flute, Joint glued Inside, Kraft, K3 |
| | Manteno, IL | 20x16x14 - 32 ECT B flute. Joint glued Inside, Kraft, 20 Tape |
| | Manteno, IL | DC Top 123 bottom - 24x17x14 7/8 - Joint glued Inside - Kraft K4123 |
| | Manteno, IL | J TOP 123 BOTTOM 24x17x14.875. 32 ECT C flute. Joint glued Inside, Kraft, K4 123 |
| | Manteno, IL | STYLE TP STYLE BTM LGT(IN) 18 HGT(IN) 12 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| | Manteno, IL | STYLE TP STYLE BTM NO INFO LGT(IN) 20 HGT(IN) 14 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER. BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| | Manteno, IL | STYLE TP STYLE BTM NO INFO LGT(IN) 28 HGT(IN) 18 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT JNT |
| | Manteno, IL | STYLE TP RSC STYLE BTM RSC LGT(IN) 17 HGT(IN).6 WGT(LB) B11 BLNK LGT 17.875 BLNK WD 60.75 BRD COMB LINER 35 BRD COMB MED 23 BRD COMB LINER-35 FLT B TST.32 ECT PRT 1 COLOR JNT GL IN |

302723106v1 8691

DocuSign Envelope ID: 0B5313B3-820E-41D6-8B42-639321654639

| | | | |
|---|---|---|---|
| | Manteno, IL | STYLE TP: - STYLE BTM: HSC - LGT(IN) - 46.75WD(IN): 38.75 - HGT(IN): 12 - WGT(LB): 3.448 - BLNK LGT: 173.625 BLNK WD: 26 - BRD COMB L/M/L/M/L: 35/26/35/// - BLT: C - TST: 32 ECT - PRT: 1 COLOR JNT: GL IN | |
| | Manteno, IL | STYLE TP: DC RSC - STYLE BTM: DC RSC - LGT(IN) - 27.125WD(IN): 17 - HGT(IN): 17.0625 - WGT(LB): 3.215 - BLNK LGT: 35.875 BLNK WD: 20.25 - BRD COMB L/M/L/M/L: 96/26/56/// - FLT: C - TST: 44 - PRT: 1C JNT: Inside | |
| | Manteno, IL | STYLE TP: SHEET - STYLE BTM: - LGT(IN) - 48WD(IN): 96 - HGT(IN): - WGT(LB): 3.392 - BLNK LGT: 48 BLNK WD: 96 - BRD COMB L/M/L/M/L: 38/26/38/// - FLT: C - TST: 26 ECT - PRT: PLAIN JNT: NMJ | |
| | Ocala, FL | 13 X 11 X 15 | |
| | Ocala, FL | 13 X 11 X 8 | |
| | Ocala, FL | 13 X 7 3/8 x 9 3/8 - 48 ECT BC Flute - K80 Single Battery Box | |
| | Ocala, FL | 16 X 12 X 6 | |
| | Ocala, FL | 16 X 14 X 10 | |
| | Ocala, FL | 17 X 12.5 X 5 | |
| | Ocala, FL | 18 X 12 X 12 | |
| | Ocala, FL | 18 X 18 X 18 | |
| | Ocala, FL | 20 X 14 X 12 | |
| | Ocala, FL | 20 X 16 X 14 | |
| | Ocala, FL | 20 X 20 X 20 | |
| | Ocala, FL | 22 X 11 X 7 | |
| | Ocala, FL | 24 X 18 X 18 | |
| | Ocala, FL | 25 X 16 X 6 | |
| | Ocala, FL | 27 X 20 X 18 | |
| | Ocala, FL | 36 X 16 X 16 | |
| | Ocala, FL | 6 X 6 X 6 | |
| | Warren, OH | 13 X 11 X 15 | |
| | Warren, OH | 13 X 11 X 8 | |
| | Warren, OH | 13 X 7 3/8 x 9 3/8 - 48 ECT BC Flute - K80 Single Battery Box | |
| | Warren, OH | 16 X 12 X 6 | |
| | Warren, OH | 16 X 14 X 10 | |
| | Warren, OH | 17 X 12.5 X 5 | |
| | Warren, OH | 18 X 12 X 12 | |

Corrugated Pratt Amendment_ 1 Sept 5 2017 rm

302723106v1 8691

DocuSign Envelope ID: 0B5313B3-620E-41D6-8B42-639321EF4639

| | | |
|---|---|---|
| | Wilkes Barre, PA | STYLE TP STYLE BTM NO INFO LGT(IN) 27 HGT(IN) 6 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT INT |
| | Wilkes Barre, PA | STYLE TP STYLE BTM NO INFO LGT(IN) 28 HGT(IN) 18 WGT(LB) BLNK LGT BLNK WD BRD COMB LINER BRD COMB MED BRD COMB LINER FLT TST PRT INT |
| | Wilkes Barre, PA | STYLE TP RSC STYLE BTM RSC LGT(IN) 17 HGT(IN) 6 WGT(LB) 211 BLNK LGT 17.875 BLNK WD 60.75 BRD COMB LINER 36 BRD COMB MED 28 BRD COMB LINER 38 FLT B TST 32 ECT PRT 1 COLOR INT GLIN |

### EXHIBIT A-1, LOCATIONS

| Description | Building No. | City | Address |
|---|---|---|---|
| Sears | RRC #425 | Jacksonville, FL 32218 | 1 Imeson Rk Blvd/Bldg 200 |
| Sears | RRC #440 | Manteno, IL 60950 | 1500 N. Boudreau Rd. |
| Sears | RRC #443 | Wilkes-Barre, PA 18706 | 1058 Hanover St. |
| Sears | RRC #447 | Garland, TX 75041 | 2775 W. Miller Rd |
| Sears | RRC #449 | Delano, CA 93215 | 1700 Schuster Rd. |
| Sears | CDFC# 470 | Manteno, IL 60950 | 8374 N 4000 East |
| Kmart | DART# 7840 | Naperville, IL 60563 | 1835 Ferry Road |
| Brands | Dart #8194 | Naperville, IL 60563 | 1835 Ferry Road |
| Kmart | RDC# 8278 | Lawrence, KS 66049 | 3651 Lakeview Rd |
| Kmart | RDC# 8287 | Ontario, CA 91761 | 5800 E. Airport Road |
| Kmart | RDC# 8289 | Manteno, IL 60950 | 333 S. Spruce Street |
| Kmart | RDC# 8292 | Ocala, FL 34474 | 855 Southwest 52nd Ave |
| Kmart | RDC# 8275 | Fairless Hills, PA 19030 | 1 Kresge Road |
| Kmart | RDC# 8305 | Warren, OH 44488 | 541 Perkins-Jones Rd. |
| W Region DC | RSC# 8760 | Mira Loma, CA 91752 | 3400 Millikin Ave |
| NE Region DC | RSC# 8761 | Chambersburg, PA 17201 | 6475 Nitterhouse Road |
| Sears | Dart# 9300 | Naperville, IL 60563 | 1835 Ferry Road |

Corrugated Pratt Amendment_1 Sept 5 2017 rm

302723106v1 8691

DocuSign Envelope ID: 0B591389-820E-41D6-8B42-8393218E4639

### Attachment SYW
### Shop Your Way Vendor Engagement Program

Supplier agrees to encourage each of its employees to engage in the Shop Your Way Program through Supplier participation in at least 12 promotional efforts (as set forth below) during each calendar year this Agreement is in effect (prorated for any partial year).
Promotional efforts include the following. The number to the left of each item indicates the number of times Supplier has agreed to participate in such effort during each calendar year of this Agreement:

| # | SYW Promotional Effort |
|---|---|
| ___ | Email to Supplier Employees promoting the Shop Your Way Program |
| ___ | Posting signage and/or intranet postings regarding Shop Your Way Program |
| ___ | Articles on Shop Your Way Program in Supplier newsletters |
| ___ | On-Site enrollment opportunities at Supplier locations |
| X | Other promotional efforts mutually agreed to by the parties |

Company will provide electronically all related Shop Your Way program descriptions and materials for these promotions, which will explain the Shop Your Way benefits and any information necessary to enroll. Supplier will not alter program descriptions and materials, but will provide information reasonably necessary for Company to create the program descriptions specific to Vendor employees.

Supplier agrees to begin promotions for the Shop Your Way Program to its employees within sixty (60) days following the execution of this Agreement, or as otherwise agreed by Company should Company require additional time to modify or provide Shop Your Way promotional materials to Supplier. Company reserves the right to request and be granted a periodic review on a quarterly basis with Supplier's executive level members (Vice President level and up) to discuss Supplier's overall promotion and participation in the program.

Supplier has appointed the following individual as its point of contact for the Shop Your Way Vendor Engagement program and this individual will be responsible for overseeing Supplier's efforts to encourage its employees to engage in the Shop Your Way Program. Supplier additionally will maintain an appointed individual in the event of employee turnover.

Name:                Russell Crummett
Title:               Strategic Accounts Manager
Phone number:        678-237-2361
E-mail address:      rcrummett@prattindustries.com
                     *End of Attachment*

302723106v1 8691

## **Exhibit B**

Table of Unpaid Invoices

303136641v1 1009146

**Sears Aging as of January 25, 2019**

| Customer | Customer Name | Invoice Date | Reference Item | Net Due Date | Invoice Number | Days Due | Not due | 0 To 30 | 31 To 60 | 61 To 90 | 91 To 120 | From 121 | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 165651 | SEARS DC# 45384 | 9/28/2018 | 502503596 | 10/13/2018 | 502503596 | 105 | 0.00 | 0.00 | 0.00 | 0.00 | 10,082.40 | 0.00 | 10,082.40 |
| 165651 | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 10,082.40 | 0.00 | 10,082.40 |
| **7553 Grand Rapids** | | | | | | | | | | | | | |
| 190028 | SEARS HOLDING CO DC 45376 | 9/19/2018 | 128309419 | 10/4/2018 | 128309419 | 114 | 0.00 | 0.00 | 0.00 | 0.00 | 22,180.26 | 0.00 | 22,180.26 |
| 190028 | SEARS HOLDING CO DC 45376 | 9/20/2018 | 128309473 | 10/5/2018 | 128309473 | 113 | 0.00 | 0.00 | 0.00 | 0.00 | 8,071.20 | 0.00 | 8,071.20 |
| 190028 | SEARS HOLDING CO DC 45376 | 9/21/2018 | 128309533 | 10/6/2018 | 128309533 | 112 | 0.00 | 0.00 | 0.00 | 0.00 | 3,339.32 | 0.00 | 3,339.32 |
| 190028 | SEARS HOLDING CO DC 45376 | 9/21/2018 | 128309534 | 10/6/2018 | 128309534 | 112 | 0.00 | 0.00 | 0.00 | 0.00 | 1,848.00 | 0.00 | 1,848.00 |
| 190028 | SEARS HOLDING CO DC 45376 | 9/21/2018 | 128309535 | 10/6/2018 | 128309535 | 112 | 0.00 | 0.00 | 0.00 | 0.00 | 7,684.26 | 0.00 | 7,684.26 |
| 190028 | SEARS HOLDING CO DC 45376 | 1/7/2019 | 128312990 | 1/22/2019 | 128312990 | 4 | 0.00 | 8,278.11 | 0.00 | 0.00 | 0.00 | 0.00 | 8,278.11 |
| 190028 | SEARS HOLDING CO DC 45376 | 1/7/2019 | 128312991 | 1/22/2019 | 128312991 | 4 | 0.00 | 7,375.43 | 0.00 | 0.00 | 0.00 | 0.00 | 7,375.43 |
| 190028 | | | | | | | 0.00 | 15,653.54 | 0.00 | 0.00 | 43,123.04 | 0.00 | 58,776.58 |
| | | | | | | | 0.00 | 15,653.54 | 0.00 | 0.00 | 43,123.04 | 0.00 | 58,776.58 |
| **7736 Impress** | | | | | | | | | | | | | |
| 165797 | SEARS HOLDING - GROVE CITY | 9/4/2018 | 507139813 | 9/19/2018 | 507139813 | 129 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,808.13 | 9,808.13 |
| 165797 | SEARS HOLDING - GROVE CITY | 9/14/2018 | 507140119 | 9/29/2018 | 507140119 | 119 | 0.00 | 0.00 | 0.00 | 0.00 | 10,083.84 | 0.00 | 10,083.84 |
| 165797 | SEARS HOLDING - GROVE CITY | 9/24/2018 | 507140374 | 10/9/2018 | 507140374 | 109 | 0.00 | 0.00 | 0.00 | 0.00 | 9,680.17 | 0.00 | 9,680.17 |
| 165797 | SEARS HOLDING - GROVE CITY | 10/4/2018 | 507140669 | 10/19/2018 | 507140669 | 99 | 0.00 | 0.00 | 0.00 | 0.00 | 5,721.80 | 0.00 | 5,721.80 |
| 165797 | SEARS HOLDING - GROVE CITY | 1/7/2019 | 507142982 | 1/22/2019 | 507142982 | 4 | 0.00 | 10,083.84 | 0.00 | 0.00 | 0.00 | 0.00 | 10,083.84 |
| 165797 | SEARS HOLDING - GROVE CITY | 1/15/2019 | 507143192 | 1/30/2019 | 507143192 | -4 | 9,692.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,692.97 |
| 165797 | SEARS HOLDING - GROVE CITY | 1/16/2019 | 507143221 | 1/31/2019 | 507143221 | -5 | 747.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 747.49 |
| 165797 | | | | | | | 10,440.46 | 10,083.84 | 0.00 | 0.00 | 25,485.81 | 9,808.13 | 55,818.24 |
| | | | | | | | 10,440.46 | 10,083.84 | 0.00 | 0.00 | 25,485.81 | 9,808.13 | 55,818.24 |
| **7783 Allentown** | | | | | | | | | | | | | |
| 166025 | SEARS HOLDING CO DC-45384 | 9/20/2018 | 509698067 | 10/5/2018 | 509698067 | 113 | 0.00 | 0.00 | 0.00 | 0.00 | 9,979.20 | 0.00 | 9,979.20 |
| 166025 | SEARS HOLDING CO DC 45384 | 9/27/2018 | 509699236 | 10/12/2018 | 509699236 | 106 | 0.00 | 0.00 | 0.00 | 0.00 | 9,825.60 | 0.00 | 9,825.60 |
| 166025 | SEARS HOLDING CO DC-45384 | 10/4/2018 | 509700130 | 10/19/2018 | 509700130 | 99 | 0.00 | 0.00 | 0.00 | 0.00 | 7,155.30 | 0.00 | 7,155.30 |
| 166025 | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 26,960.10 | 0.00 | 26,960.10 |
| **7785 Valpo** | | | | | | | | | | | | | |
| 166027 | SEARS PROCUREMENT 08289 | 10/10/2018 | 509701016 | 10/25/2018 | 509701016 | 93 | 0.00 | 0.00 | 0.00 | 0.00 | 8,041.30 | 0.00 | 8,041.30 |
| 166027 | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 8,041.30 | 0.00 | 8,041.30 |
| **7785 Valpo** | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 35,001.40 | 0.00 | 35,001.40 |
| | | | | | | | 10,440.46 | 25,737.38 | 0.00 | 0.00 | 113,692.65 | 9,808.13 | 159,678.62 |