Niclas A. Ferland
Ilan Markus
LeClairRyan, PLLC
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut  06511
Telephone:  (203) 672-3212
Facsimile:  (203) 672-3231
ilan.markus@leclairryan.com

Counsel to Westfield, LLC and its
affiliates identified on Schedule A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) ) ) | Case No. 18-23538 |
| Debtors. | ) ) ) | (Jointly Administered) |

**SALE, CURE, AND ADEQUATE ASSURANCE OBJECTION BY
WESTFIELD, LLC AND CERTAIN OF ITS AFFILIATES TO
DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN
UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY**

Westfield, LLC and its affiliates set forth on Schedule A (collectively, the "Landlords"), hereby submit this *Sale, Cure, and Adequate Assurance Objection to the Debtors' Proposed Assumption and Assignment of Certain Unexpired Leases of Non-Residential Real Property* (the "Objection"), and in support thereof, state as follows:

**I.    BACKGOUND**

1.    On October 15, 2016 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

2. The Landlords are the landlords and one or more of the Debtors are the tenants pursuant to unexpired leases (as amended and/or modified, the "Leases") of nonresidential real property (the "Premises") at shopping centers around the country. Many of the Landlords are also parties to applicable reciprocal easement agreements or similar agreements ("REAs").

3. Among the Schedules omitted from the filed Asset Purchase Agreement is Schedule 1.1(j) which identifies Permitted Pre-Closing Encumbrances – which would include any of the REAs to be assumed.

4. The Landlords are unable to determine whether the REAs are among the assets intended to be sold or whether REAs are among the Permitted Pre-Closing Encumbrances which are left undisturbed in this sale process.

5. In the Notice of Sale Hearing, the Debtors seek entry of an attached Order finding that the Debtors have satisfied their due process obligations as to all affected parties.

6. Pursuant to, among other things, the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction*, dated January 18, 2019, and the *Supplemental Notice* filed on January 23, 2019 (collectively, the "Cure Notice")[1], the Debtors seek to assume and assign certain of their unexpired leases of real property, including the Leases, to Transform Holdco, LLC (the "Proposed Assignee").

---

[1] Capitalized terms that are used, but not defined, herein, shall have the meaning ascribed to such words in the Cure Notice.

**II.    CURE AND ADEQUATE ASSURANCE OBJECTIONS**

7.      Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee" (A) cures, or provides adequate assurance that it will promptly cure such default, (B) compensates, or provides adequate assurance that it will promptly compensate the landlord for actual pecuniary loss resulting from the default, and (C) provide adequate assurance of future performance under such lease. 11 U.S.C. § 365(b)(1).

**A.    Any Order Approving Assumption and Assignment of Any of the Leases Must Require the Debtors to Promptly Cure Their Outstanding Rent and Other Obligations Under the Leases That Are to Be Assumed**

8.      As set forth in more detail below, the Debtors have defaulted on their rent and other obligations under the Leases. Accordingly, in order to assume those Leases, the Debtors are required to cure all defaults under the Leases and compensate the relevant Landlords for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b)(1)(A) and (B).

9.      As of the date of the filing of this Objection, but exclusive of (a) any amounts that may become outstanding thereafter, (b) interest, and (c) attorneys' fees, the proper 11 U.S.C. § 365(b) "cure" amounts for the Leases are as set forth in detail on the attached Schedule A and Exhibit 1 (the "Cure Amounts"). The Cure Amounts include unpaid monthly rent and related charges (that remained due as of the date of a few days prior to the filing of this Objection).

10.     In addition to the Cure Amounts set forth on Schedule A, pursuant to the terms of the Leases and 11 U.S.C. § 365(b), the Court should award the Landlords interest and a reasonable amount for attorneys' fees actually incurred as a result of the Debtors' bankruptcy cases, including proceedings that specifically related to or may have impacted the Leases or the Landlords' rights thereunder (e.g., the motion to approve global procedures for assets sales and

3

assumption and rejection of leases and the implementation of such procedures as the relate (or have the potential to relate to) the Leases. In the context of the Leases and these cases, the attorneys' fees and costs incurred by the Landlords already exceed $5,000.00. See, e.g., Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. Co., 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); In re East 44th Realty, LLC, No. 07 Civ. 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) (affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable); In re Beltway Medical, Inc., 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); In re Entertainment, Inc., 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease); In re MS Freight Distribution, Inc., 172 B.R. 976, 978 (Bankr. W.D. Wash. 1994) ("the legislative history of [section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest, late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

      **B.    The Debtors Must Demonstrate That They Will Perform All of Their Obligations Under the Leases**

11.    Under 11 U.S.C. § 365(b)(1), the Landlords are each entitled to "adequate assurance" of future performance by the Debtors. In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed).

4

12. "The law is clear that a debtor who assumes a lease or other executory contract assumes the contract *cum onere*, without any diminution in its obligations or impairment of the rights of the lessor in the present or the future." In re Texaco, Inc., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000).

> The [debtor] ... may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.

In re Italian Cook Oil Corp., 190 F.2d 994, 997 (3d Cir.1951). The *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement." United Air Lines, Inc v. U.S. Bank Trust Nat'l Ass'n (In re UAL Corp.), 346 B.R. 456, 468 n. 11 (Bankr. N.D. Ill. 2006).

13. Additionally, the Debtors should not be permitted to limit the Landlords' rights under the Leases to assert claims for accrued but as yet unbilled adjustments for such items as common area maintenance charges and taxes ("Adjustments"). The Debtors or the Proposed Assignee will receive the benefit of any Adjustments in the tenant's favor under the Leases, so the Debtors and the Proposed Assignee should be required to accept the burdens of any Adjustments in the Landlords' favor.

14. The Landlords also object to any attempt by the Debtors to assume the Leases free and clear of the Debtors' indemnity obligations (including, without limitation, accrued obligations for personal injury or negligence against any of the Debtors that could be asserted against the Landlords) under the Leases (collectively, the "Unliquidated Claims"). Again, if the Leases are to be assumed, then each of them must be assumed "*cum onere*, without any diminution in its obligations or impairment of the rights of the lessor in the present or the future." In re Texaco, Inc., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000). The Landlords' Unliquidated

Claims under the Leases should be preserved and survive any order authorizing assumption of the Leases.

### III. DESIGNATION RIGHTS OBJECTION

15. The Debtors are seeking Court approval to sell "designation rights" to the Proposed Assignee, which would transfer the right to designate certain leases, including the Leases, for assumption and assignment.

16. Any order approving the Debtors' sale of designation rights with respect to the Leases should provide that all of the Landlords' rights are reserved to object to any subsequently proposed assumption and assignment on any grounds, including adequate assurance of future performance and cure amounts. Such order should include an appropriate procedure for the Landlords to assert updated cure amounts as of the proposed Lease assignment date and for the Court to resolve any disputes that may arise in connection with those updated cure amounts. It should also make clear that the Debtors remain liable for all obligations under the Leases pursuant to §365(d)(3) and that there is a clear mechanism and ability to fund the payment of rent during any "designation rights" period.

17. As set forth in more detail above, the Leases must be assumed and assigned "as is" and subject to all of their terms. Any designation rights agreement between the Debtors and the Proposed Assignee should not provide otherwise.

### IV. THE SALE PROCESS DEPRIVES THE LANDLORDS OF THEIR CONSTITUTIONAL DUE PROCESS RIGHTS

18. The Due Process clause of the Fifth Amendment prohibits the United States from depriving any person of property without due process of law.

6

19. Pursuant to the Fifth Amendment, "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).

20. In this case, to the extent the Debtors seek this Court's approval of a conveyance of the Property free and clear of the REAs, the Landlords have been denied notice of any such proposed deprivation of its property rights.

21. In the event the Debtors later provide notice to the Landlords of the intent to deprive the Landlords of their property interests in the REAs, the Landlords reserve the right to further object to such proposed deprivation of their rights.

### VI. THERE CAN BE NO SALE FREE AND CLEAR OF THE REAs

22. The REAs are recorded among the applicable land records and constitute encumbrances of record and obligations that "run with the land."

23. In order to sell property free and clear of an interest, applicable non-bankruptcy law must permit the sale of such property free and clear of such interest. *See* 11 U.S.C. § 363(f)(1).

> "[A] sale 'free and clear of liens and other interests' has no impact on restrictions of record that run with the land. . . . Clearly, 11 U.S.C.A. § 363(f) and Bankruptcy Rule 6004, which refer to the sale of land 'free and clear' from these 'interests,' are not intended to sever easements and other non-monetary property interests that are created by substantive state law. Indeed, absent the consent of the owner of the easement or the easement being in bona fide dispute, the Bankruptcy Code does not even allow the Bankruptcy Court to authorize a sale of the property 'free and clear' of an easement."

*In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 255-56 (E.D.N.Y. 1996).

24. This Court must look to state law to determine the property rights held by the Debtors with respect to third parties. *See Tyler v. Ownit Mortg. Loan Tr., Series 2006-3*, 460 B.R. 458, 462 (E.D. Va. 2011).

7

25. Generally, real property cannot be sold free and clear of a recorded restrictive covenant. Even if the Debtors were to reject the REAs, such rejection would not impact the issue of whether the REAs remain binding on the Property post-sale. *See Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994).

**IV.    Joinder**

26. The Landlords hereby join in the objection of any other similarly situated party in interest to the extent that such objection is not inconsistent herewith.

**V.    Reservation of Rights**

27. The Landlords reserve the right to supplement this Objection and reserve the right to raise any other objections to the proposed sale.

**C.    Request for Evidentiary Hearing and Establishment of a Discovery Schedule**

28. Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, assumption of leases initiates a contested matter under Rule 9014. See Fed. R. Bankr. P. 6006(a) ("[a] proceeding to assume, reject, or assign an … unexpired lease, other than as part of a plan, is governed by Rule 9014").

29. Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings. See Fed. R. Bankr. P. 9014(c).

30. To the extent the Landlords, the Debtors, and the Proposed Assignee are not successful in resolving the issues raised herein by the time of the Sale Hearing, the Landlords respectfully ask this Court to use the Sale Hearing as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on any proposed assumption and assignment of the Leases to the Proposed Assignee.

WHEREFORE, if this Objection has not been resolved in advance of the Sale Hearing, Landlords respectfully request that the Court enter an order:

a.  Sustaining this Objection; or

b.  Approving the assumption and assignment of the Leases only if consistent with this Objection; and

c.  Determining that the proper 11 U.S.C. § 365(b) "cure" amounts for the Leases (as of the date of the filing of the Objection) are as set forth on Schedule A;

d.  Preventing the sale of any real estate free and clear of the REAs; or

e.  Establishing a fair and appropriate discovery and briefing schedule in advance of an evidentiary hearing on the contested assumption and assignment of the Leases to the Proposed Assignee; and

f.  Granting the Landlords such other and further relief as the Court deems appropriate.

Dated: January 25, 2019
New Haven, Connecticut                    **LECLAIRRYAN, A Professional Corporation**

By:   /s/ Ilan Markus
      Ilan Markus
      Niclas A. Ferland
      **LeClairRyan, PLLC**
      545 Long Wharf Drive – 9th Floor
      New Haven, Connecticut  06511
      Telephone:  (203) 672-3212
      Facsimile:  (203) 672-3231
      ilan.markus@leclairryan.com

Counsel to Westfield, LLC and its affiliates identified on Schedule A

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2019, a copy of this Objection was sent via (i) the Court's electronic filing system to all Standard Parties and (ii) electronic mail to counsel for the Bid Notice Parties, the Consultation Parties, and the Successful Bidder, as set forth below.

Bid Notice Parties

    i. the Debtors (rob.riecker@searshc.com; luke.valentino@searshc.com; mmeghji@miiipartners.com);

    ii. counsel to the Debtors (ray.schrock@weil.com; jacqueline.marcus@weil.com; garrett.fail@weil.com; sunny.singh@weil.com); and

    iii. the Debtors' investment banker (project.blue.rx@lazard.com).

Consultation Parties

    i. counsel to Bank of America, N.A., in its capacity as the administrative agent under the First Lien Credit Facility and DIP ABL Agent (Paul.leake@skadden.com; Shana.Elberg@skadden.com; George.Howard@skadden.com);

    ii. counsel to Wells Fargo Bank, National Association, in its capacity as Co-Collateral Agent under the First Lien Credit Facility and Co-Collateral Agent under the DIP ABL Facility (ksimard@choate.com; jmarshall@choate.com); and

    iii. counsel the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (idizengoff@akingump.com; pdublin@akingump.com; aqureshi@akingump.com; sbrauner@akingump.com).

Successful Bidder

    counsel to the Successful Bidder (jbromley@cgsh.com; soneal@cgsh.com; jkpark@cgsh.com).

Dated: January 25, 2019
      New Haven, Connecticut        **LECLAIRRYAN, A Professional Corporation**

                                            By:   /s/ Ilan Markus
                                                  Ilan Markus