# Exhibit 2

068995                BK 1240 PG 0040

New Castle County Tax
Parcel Numbers:

> 06-029.00-008
> 06-019.00-005
> 06-029.00-017
> 06-029.00-018
> 06-020.00-299
> 06-020.00-297
> 06-020.00-298
> 06-020.00-300
> 06-029.00-019
> 06-029.00-027

Document Prepared by:
William S. Gee, Esq.
Saul, Ewing, Remick & Saul
Suite 1200
222 Delaware Avenue
P O Box 1266
Wilmington, DE 19899

## AGREEMENT

CONCORD MALL SHOPPING CENTER

by and between

CONCORD MALL ("Developer")

AND

SEARS, ROEBUCK AND CO.

June 27, 1991

BK1240PG0041

UPON RECORDATION, THIS
INSTRUMENT SHOULD BE RETURNED TO:

CHICAGO TITLE INSURANCE COMPANY
c/o Saul, Ewing, Remick & Saul
222 Delaware Avenue
Post Office Box 1266
Wilmington, Delaware 19899
Attention: William S. Gee, Esq.

---

THIS AGREEMENT (hereinafter "Agreement") is made as of the 27th day of June, 1991, by and between CONCORD MALL ("Developer"), a Delaware general partnership, having its principal place of business at c/o JMB Institutional Realty Corporation, 900 North Michigan Avenue, Chicago, Illinois 60611-1575 and SEARS, ROEBUCK AND CO. ("Sears"), a New York corporation, having its principal place of business at Sears Tower, Chicago, Illinois 60684.

WITNESSETH:

WHEREAS, Developer and Sears have entered into that certain Construction, Operation and Reciprocal Easement Agreement (hereinafter the "REA") dated December 21, 1990, and recorded in the Office of the Recorder of Deeds, in and for New Castle County and State of Delaware at Wilmington (the "Office of the Recorder") which sets forth the rights and obligations of Developer and Sears in connection with the Operation of a Shopping Center located in New Castle County, Delaware; and

WHEREAS, Developer and Sears desire to enter into this Agreement (a) to modify certain dates of performances and other matters described in the REA, (b) to confirm the understanding of the parties to the REA with respect to the meaning of certain provisions contained in the REA as they relate to the rights of any Mortgagee of Developer or Sears under any Mortgage, (c) to confirm the understanding of the parties to the REA with respect to the release of Sears from certain obligations contained in the REA to Rebuild the Sears Building in the event of a Major Casualty, and (d) to confirm Sears consent to the subordination provisions relating to the REA contained in Paragraph 6 of that certain Second Modification Agreement (the "Modification Agreement"), dated as of July 1, 1991, by and among The Penn CMO Corp., a Delaware corporation, Corestates Bank, N.A., formerly known as The Philadelphia National Bank, a national banking association, and Developer, and recorded in the Office of the Recorder. All capitalized terms used herein shall have the meanings set forth for such terms in the REA.

NOW THEREFORE in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, Developer and Sears hereby agree that notwithstanding anything to the contrary contained in the REA:

0978L/0433o/07-26-91                              1.

1. The latest date upon which Developer may complete the Pad Work without giving Sears the right to terminate the REA referred to in the thirteenth line of Section 1.1(aa) of the REA shall be changed from "September 1, 1991" to "December 31, 1991".

2. The reference in Section 2.1(a) of the REA to the "Concord Mall Sears Construction Standards Company Owned General Requirements - Minimum Site Requirements" shall refer to such document dated "September", 1990.

3. The required date of the preparation of the Plans by Developer referred to in the thirteenth line of Section 2.1(c) of the REA shall be changed from "February 1, 1991" to "June 5, 1991".

4. The required date of completion of the Pad Work referred to in the third line of Section 2.3(a)(i) of the REA shall be changed from "April 1, 1991" to "August 31, 1991".

5. The date by which Sears will cause the Architectural Elevations and Design Studies to be prepared and delivered to Developer referred to in the second line of Section 6.1 of the REA shall be changed from "May 31, 1991" to "September 1, 1991".

6. The provision in Section 6.3(c) of the REA describing the amount of time given to Sears to complete the construction of the Sears Building shall be changed from "to use its best efforts (excluding overtime or premium labor costs) to complete the construction of the same within fourteen (14) months of the Sears Construction Commencement Date, but in any event, within sixteen (16) months after the Sears Construction Commencement Date", to "to use its best efforts (excluding overtime or premium labor costs) to complete the construction of same by October 31, 1992".

7. The third line of Exhibit "C" (Building Level Specifications) to the REA shall be modified as follows: "Top of Slab Elevation of Second Floor Sears (anticipated second level Mall) . . . 407.33'".

8. Any Mortgage or any other documents or instruments now or hereafter evidencing or securing all or any part of the indebtedness evidenced and secured by any Mortgage (the "Mortgage Instruments") will not be subject or subordinate to Sections 5.1(c), (d) and (e), and Section 6.9 of the REA.

9. The first sentence of Section 8.1(d) of the REA shall be modified as follows: insert "(i)" after the word "than" in the second line; insert "(ii)" after "Agreement," in the fourth line; insert "or" after "possession," in the fourth line; insert "(iii)" after "successor," in the fifth line; and insert "(iv)" after "Center," in the sixth line of such paragraph 8.1(d) of the REA.

0978L/0433o/07-26-91                    2.

BK 1240 PG 0043

10. Section 11.2 of the REA shall be construed to mean that any lien arising pursuant to said Section 11.2 shall arise as of the actual date such lien is placed on the Shopping Center Site and shall not be deemed to arise as of the date of the REA.

11. Section 11.3 of the REA shall not be construed to mean that a Mortgagee is obligated to cure any default under the REA with respect to which any such Mortgagee has received notice of such default.

12. Section 14.7 of the REA, which requires a Mortgagee to acquiesce in and consent to the provisions of the REA regarding insurance, and Section 19.5 of the REA, which makes the provisions of Section 14.7 applicable to the provisions of Section 19.1 regarding the payment of any condemnation award, shall not affect or impair the lien of any Mortgage or any Mortgage Instrument in and to insurance proceeds paid with respect to the Shopping Center Site. A Mortgagee shall not be obligated to release any insurance proceeds and condemnation awards for repair and restoration of any portion of the Shopping Center Site if there exists, at the time of payment of the insurance proceeds or condemnation awards, any default in a Mortgage Instrument.

13. In the event that a Mortgagee fails to release to Developer any insurance proceeds with respect to a Major Casualty or condemnation awards for repair and restoration of the Mall or Mall Stores, which Developer is obligated to Rebuild under Section 13.3 or Section 19.1 of the REA, and Developer fails to elect to Rebuild the Mall or Mall Stores to the extent required under Section 13.3 or Section 19.1 of the REA, Sears shall have no obligation to Rebuild the Sears Building.

14. Subject to Paragraph 13 hereof, Sears hereby consents to and approves the subordination provisions contained in Paragraph 6 of the Modification Agreement.

15. Section 21.2(a)(i) of the REA is not intended to restrict the rights of Developer to make a Transfer of the Developer Parcel to any Mortgagee.

16. Section 21.2(a)(ii) of the REA shall be construed to mean that any such Mortgage shall be subject and subordinate to the REA, except as specifically provided in the REA and as set forth in this Agreement.

0978L/0433o/07-26-91    3.

BK 1240 PG 0044

17. Section 25.21 of the REA shall be deemed to apply to any Mortgagee which acquires the interest of Developer in the Developer Parcel.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day, month and year first above written.

                CONCORD MALL,
                a Delaware general partnership

                By  JMB GROUP TRUST III,
                      an Illinois trust,
                      General Partner

                      By  JMB INSTITUTIONAL ADVISORS-III,
                          an Illinois general partnership,
                          Investment Manager

[CORPORATE SEAL]          By  JMB INSTITUTIONAL REALTY CORPORATION,
                          an Illinois corporation,
                          Managing Partner

_____
Witness                        By _____
                            Gary M. Somers,
                            Managing Director

                          Attest: _____
                          Its: Assistant Secretary

R. E. Din_____
_____
LEGAL
_____

[CORPORATE SEAL]          SEARS, ROEBUCK AND CO.,
                          a New York corporation

_____            By _____
Witness                            Ronald B. Ruth
                            National Manager
                            Real Estate Planning Group

                          Attest:
                          _____
                          Its: Assistant Secretary

0978L/04330/07-26-91        4.

BK1240PG0045

STATE OF ILLINOIS )
) ss.
COUNTY OF COOK )

This instrument was acknowledged before me on __August 1__, 1991, by Ronadl B. Ruthnd D J Jeruc as the National Manager, Real Estate Planning Group, and Assistant Secretary of SEARS, ROEBUCK AND CO., a New York corporation, the party on behalf of whom the instrument was executed.

WITNESS my hand and official seal this __1__ day of __August__, 1991.

By _____
Notary Public

Lelia P. Isaac
(Notary Printed Name)

My Commission Expires:

August 25, 1993

[Notary seal: "OFFICIAL SEAL" LELIA P. ISAAC, Notary Public, State of Illinois, My Commission Expires 8/25/93]

STATE OF ILLINOIS )
) ss.
COUNTY OF COOK )

This instrument was acknowledged before me on __July 26__, 1991, by Gary M. Sumers, as Managing Director of JMB INSTITUTIONAL REALTY CORPORATION, an Illinois corporation, as Managing Partner of JMB INSTITUTIONAL ADVISORS-III, an Illinois general partnership, as Investment Manager of JMB GROUP TRUST III, the General Partner of CONCORD MALL, a Delaware general partnership, the party on behalf of whom the instrument was executed.

WITNESS my hand and official seal this __26__ day of __July__, 1991.

By _____
Notary Public

Cathleen A Finnegan
(Notary Printed Name)

My Commission Expires:

November 16, 1994

[Notary seal: "OFFICIAL SEAL" CATHLEEN A. FINNEGAN, NOTARY PUBLIC, STATE OF ILLINOIS, MY COMMISSION EXPIRES 11/16/94]

097BL/04330/07-26-91                  5.