JUDITH R. STARR
General Counsel
CHARLES L. FINKE
Deputy General Counsel
WILLIAM MCCARRON, JR.
GARTH D. WILSON
KELLY R. CUSICK
Assistant General Counsels
MICHAEL I. BAIRD
COURTNEY L. MORGAN
ERIN C. KIM
Attorneys
PENSION BENEFIT GUARANTY CORPORATION
Office of the General Counsel
1200 K Street, N.W., Suite 340
Washington, D.C. 20005-4026
Telephone: (202) 326-4020, ext. 6222
Facsimile: (202) 326-4112
Emails: baird.michael@pbgc.gov *and* efile@pbgc.gov

− and −

Brian A. Raynor (*admitted pro hac vice*)
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
Email: braynor@lockelord.com

*Counsel to Pension Benefit Guaranty Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) | Case No. 18-23538 (RDD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839);

## OBJECTION AND RESERVATION OF RIGHTS OF
## PENSION BENEFIT GUARANTY CORPORATION TO DEBTORS' SALE MOTION

Pension Benefit Guaranty Corporation ("PBGC") hereby files its objection and

reservation of rights ("Objection") to the motion filed by the debtors and debtors in possession

(the "Debtors") to sell substantially all their assets (the "Sale Motion") (D.I. 429, 816, 1730).

### Preliminary Statement

The Official Committee of Unsecured Creditors (the "Committee") is filing a significant

objection to the Sale Motion.  PBGC and the Committee have discussed that objection.  PBGC

stands with the Committee and adopts the Committee's objection in full.

With this Objection, PBGC writes separately to highlight, among other things, how

PBGC's significant claims against Debtors and non-Debtors pose acute execution risk for the

proposed sale.  PBGC currently estimates its claims to be in the total amount of $1,737,500,000.

As expressly provided by federal law, these liabilities are held jointly and severally by the

Debtors and their non-Debtor affiliates, as members of Sears Holdings Corporation's ("SHC")

"controlled group"[2] (respectively, the "J&S Pension Claims" and the "Controlled Group

Members").  As discussed below, termination of the Pension Plans[3] due to their abandonment

appears imminent.

---

Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart
Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings
Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC
(None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC
(None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com
LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate
headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]  *See* 29 U.S.C. §§ 1301(a)(14); 1362.

[3]  Sears Holdings Pension Plan 1 (as amended effective December 1, 2016) and the Sears Holdings Pension Plan 2
(effective December 1, 2016) (together, the "Pension Plans").

These liabilities are also contractually supported by a prepetition agreement − the Pension Plan Protection and Forbearance Agreement (the "PPPFA") − executed by and among PBGC, SHC, and certain of SHC's Debtor and non-Debtor affiliates.[4]  The PPPFA preserves value for the two Pension Plans sponsored by SHC by providing PBGC with interests in the Kenmore and DieHard trademarks and the associated licenses, all of which are currently owned by KCD IP, LLC ("KCD"), a non-Debtor SHC subsidiary.

The APA[5] and the proposed Sale Order,[6] in their current form, intentionally undermine PBGC's statutory and contractual Pension Plan protections.[7]  The purpose is clear: to deliver the Kenmore and DieHard trademarks to ESL[8] free and clear of PBGC's interests.  The APA and the Sale Order imbed a four-step framework seeking to accomplish this objective.

First, they manufacture breaches of the PPPFA by the Debtors and non-Debtor KCD to seize control of the inter-company licenses of the Kenmore and DieHard trademarks.  *See* APA, § 9.14.  Second, they require Sears Reinsurance Limited Ltd. ("Sears Re," with KCD, the "Non-Debtor Affiliates"), another non-Debtor subsidiary of SHC (domiciled in Bermuda), to sell the asset-backed securities issued by KCD that are owned by Sears Re (the KCD Notes (as defined

---

[4]  A copy of the PPPFA, as amended, is attached hereto as Exhibit A.  At all relevant times leading up to that agreement, Edward Lampert was the principal shareholder of both SHC and ESL, and was integrally involved in the negotiations.

[5]  Asset Purchase Agreement dated as of January 17, 2019 by and Among Transform Holdco LLC, Sears Holdings Corporation and its Subsidiaries Party Hereto (the "APA") (D.I. 1730, Exh. B).

[6]  [Proposed] Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith and (IV) Granting Related Relief (the "Sale Order") (D.I. 1730, Exh. C).

[7]  The Debtors' proposal to sell substantially all their assets (and purportedly various non-debtor assets) under the APA to a Buyer who would not be assuming the Pension Plans would result in their abandonment.  This is a common scenario in which PBGC is forced to step in and assume responsibility for the plans to protect plan participants.  Indeed, on January 17, 2019, PBGC stepped in by issuing Notices of Determination that the Pension Plans must be terminated with a termination date of January 31, 2019.

[8]  ESL Investments, Inc., together with its acquisition vehicle, Transform Holdco LLC ("ESL" or the "Buyer").

in the APA)) to ESL.  *See* APA, § 2.1(r).  Third, by positioning ESL to be in control of both the

licenses and the KCD Notes if the sale closes, they will allow ESL to thereafter manufacture a

default under the KCD Indenture[9]—the agreement that funnels the license royalties to the holder

of the KCD Notes—so that ESL can foreclose on the Kenmore and DieHard trademarks directly.

Finally, once this occurs, the responsible non-Debtor subsidiaries of SHC, along with ESL, will

presumably point to the Sale Order's "free and clear" protections and related provisions to shield

themselves (and their respective directors and officers) from liability.

This architecture violates the Bankruptcy Code, and as a result, the proposed sale cannot

be approved.  The violations arise principally from the involvement of SHC's two non-Debtor

Affiliates, Sears Re and KCD.  First, the contemplated sale of the KCD Notes from Sears Re to

ESL is not eligible for "free and clear" protections under 11 U.S.C. § 363, or the supplementary

protections set forth in the Sale Order, because the sale would involve the transfer of non-estate

property (the KCD Notes) from a non-Debtor (Sears Re) to another non-Debtor (ESL).  Second,

the contemplated license of the Kenmore and DieHard trademarks from KCD to ESL would

constitute a breach of the PPPFA by SHC and KCD.  If KCD consents to the proposed

"Exclusive License" or the similar constructs imbedded in the APA, KCD, along with ESL,

would be subject to the remedies at PBGC's disposal, because they would be non-Debtors

transferring non-Debtor assets.  As with the sale of the KCD Notes, KCD and ESL cannot use 11

U.S.C. § 363 and the related provisions in the Sale Order to shield themselves from the

consequences of this breach of the PPPFA.  The restrictions on eligibility for protections under

11 U.S.C. § 363 are jurisdictional and categorical, and PBGC hereby objects to every provision

---

[9]  Indenture dated as of May 18, 2006, by KCD as Issuer and U.S. Bank National Association, as Trustee (the "<u>KCD Indenture</u>").

of the Sale Order and APA that ignores these restrictions.

Furthermore, even if there is a resolution to these issues, PBGC objects to the proposed sale to the extent it fails to comply with the Global Bidding Procedures.[10]  As the Committee highlights in its objection, the APA fails to clearly identify and allocate the value being ascribed to each Acquired Asset (as defined in the APA).  This deficiency is especially prejudicial to PBGC, given the existence of its J&S Pension Claims against every Debtor, and PBGC's need to understand where any value obtained by the Debtors by the sale actually resides.

For these reasons, as further discussed below, PBGC objects to the Sale Motion.

## I.    BACKGROUND

### A.    **PBGC and ERISA**

1.    PBGC is the U.S. government agency that administers the nation's pension insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. §§ 1301-1461 (2012 & Supp. V 2017).  The program ensures that participants in covered plans will not suffer the "great personal tragedy" of losing their promised retirement income.  *See Nachman Corp. v. PBGC*, 446 U.S. 359, 374 (1980).

2.    PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA.  When an underfunded plan terminates, PBGC invariably becomes trustee of the plan and supplements any assets remaining in the plan with its insurance funds to pay to the retired employees their pension benefits, subject to statutory limits.  *See* 29 U.S.C. §§ 1321-1322, 1342, 1361.  PBGC's insurance funds are made up of, among other things, (i) the agency's recoveries of a terminated pension plan's underfunding, and (ii) premiums paid by pension plan sponsors.

---

[10]  *See* D.I. 816, Exhibit 1, ¶ 3(b).

3.    ERISA provides the exclusive means for a plan sponsor to terminate a pension plan. *See* 29 U.S.C. § 1341(a)(1); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999).  In cases like this where the Debtors are abandoning their Pension Plans without assumption by the Buyer, PBGC can step in to protect the interests of plan participants by initiating termination of a pension plan under section 4042 of ERISA ("PBGC-initiated termination").  *See* 29 U.S.C. § 1342.  PBGC issued Notices of Determination on January 17, 2019, that the Pension Plans must be terminated under section 4042 of ERISA − once it became clear the Pension Plans would be abandoned.  PBGC may initiate plan termination as an express exception to the automatic stay.  29 U.S.C. § 1342(e); 11 U.S.C. § 362(b)(4).

4.    Once PBGC issues a Notice of Determination, termination is accomplished either by agreement with the plan administrator or by entry of a decree by a federal district court.  29 U.S.C. § 1342.  Given the Pension Plans' imminent abandonment, PBGC has reached out to SHC, the plan administrator, as to whether it will agree to the termination of the Pension Plans and appointment of PBGC as trustee.  SHC has not yet responded that it is willing to do so.  Absent such an agreement by February 1, 2019, PBGC intends to initiate termination proceedings in federal district court to obtain entry of a decree.

5.    Upon a PBGC-initiated termination, the contributing sponsor and its controlled group members become subject to certain liabilities regarding the terminated pension plan, for which they are jointly and severally liable to PBGC.  Most relevant here are: (i) the unfunded benefit liabilities of the pension plan, 29 U.S.C. § 1362(a), (b); and (ii) termination premiums at the rate of $1,250 per plan participant per year for three years, 29 U.S.C. § 1306(a)(7).

6.      Additionally, because PBGC typically becomes the statutory trustee of the terminated pension plan, PBGC has authority to collect all amounts owed to the pension plan. 29 U.S.C. §§ 1082(b)(2), 1342(d); 26 U.S.C. § 412(b)(2).

**B.      The Debtors' Pension Plans**

7.      SHC is the contributing sponsor of the two Pension Plans covering approximately 90,000 participants.  PBGC anticipates filing claims against each Debtor for the following statutory liabilities, as explained above: (i) the unfunded benefit liabilities of the Pension Plans; and (ii) statutory premiums owed to PBGC including termination premiums.

8.      PBGC estimates that its J&S Pension Claims against each Debtor (and each non-Debtor Controlled Group Member) total approximately $1,737,500,000.  Each non-Debtor Controlled Group Member, including KCD and Sears Re, is also jointly and severally liable for the full amounts of those claims.

**C.      PPPFA**

9.      On March 18, 2016, PBGC, SHC, and certain of its subsidiaries including KCD (such subsidiaries, together with SHC, the "Sears Parties") executed the PPPFA.

10.      Pursuant to the PPPFA, PBGC agreed, under certain conditions set forth in the PPPFA, to forbear from initiating any involuntary termination of either Pension Plan pursuant to ERISA Section 4042.  *See* PPPFA, § 7.02.[11]

11.      In exchange, the Sears Parties provided PBGC with certain protections for the Pension Plans.  One form of protection relates directly to the "IP Assets," (*see* PPPFA, Art. IV), which the PPPFA defines as: "all of [KCD's] (i) trademarks and intellectual property licenses

---

[11] On several occasions after the signing of the PPPFA, SHC did not satisfy the conditions requiring PBGC to forbear from initiating plan termination.  Indeed, PBGC has not been required to forbear from initiating termination for more than a year.  As described above, PBGC decided to exercise its discretion to initiate termination of the plans on January 17, 2019.

(including … those related to Kenmore and DieHard), and (ii) rights under ancillary agreements to which it [KCD] is party, all of the foregoing clauses (i) and (ii) whether currently owned or after-acquired." *See* PPPFA, § 1.01.

12.     In May 2006, KCD became the owner of the IP Assets for the purpose of entering into a series of related transactions that ultimately provided for KCD's issuance of asset-backed securities, the KCD Notes. *See* Cash Management Motion, D.I. 5, ¶ 25.[12]  Sears Re currently owns all of the KCD Notes, which have a face principal amount of $900 million. *Id.*

13.     In connection with the KCD Notes issuance, KCD licensed the use of the Kenmore and DieHard trademarks to two Debtors[13] under certain license agreements, dated as of May 18, 2006 (as amended, the "Existing Licensing Agreements").  These licensee-Debtors are required to make royalty payments to KCD, and KCD, in turn, is obligated to use those royalty proceeds to make payments on the KCD Notes to Sears Re.  This structure is memorialized in the KCD Indenture.

14.     Under the PPPFA, SHC covenanted to PBGC that, *inter alia*, SHC would not permit KCD to sell, transfer, or otherwise dispose of the Kenmore trademarks, the DieHard trademarks, or the Existing Licensing Agreements.  *See* PPPFA, § 4.04(a)(1) (covenants not to "Transfer" any "Designated Assets").[14]  KCD, as a non-Debtor party to the PPPFA, provided

---

[12] Motion of Debtors for Authority to (I) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms (II) Implement Ordinary Course Changes to Cash Management System, (III) Continue Intercompany Transactions, and (IV) Provide Administrative Expense Priority for Postpetition Claims and Related Relief ("Cash Management Motion") (D.I. 5).

[13] Sears, Roebuck and Company, and Kmart Corporation.

[14] The PPPFA defines "Transfer" as "to sell transfer, or otherwise dispose." *See* PPPFA, § 1.01.  The PPPFA further defines "Designated Assets" to include the "IP Assets." *Id.* at § 6.02.

PBGC with substantially similar covenants. *Id.*[15]  Additionally, the Debtors permitted PBGC to install an Independent Manager of PBGC's choosing on KCD's Board of Managers.[16]  *See* PPPFA, § 9.02(j)(1).

15.    These covenants, working together with PBGC's J&S Pension Claims against all Controlled Group Members, were intended to provide PBGC with opportunities to realize value from the IP Assets.  This value is realizable vis-à-vis two Controlled Group Members in particular—non-Debtors KCD and Sears Re.

16.    KCD is a special purpose entity.  The KCD Operating Agreement prohibits KCD from incurring substantial liabilities beyond those created by the KCD Indenture and PBGC's statutory claims against it.[17]  Therefore, if the KCD Notes are ever discharged, any residual value in the IP Assets should inure to the benefit of PBGC as the sole or most significant of very few creditors of KCD.

17.    Similar to KCD, Sears Re also owns a valuable asset, the KCD Notes.  Given that PBGC is a creditor with approximately $1,737,500,000 of J&S Pension Claims against Sears Re, and the interconnectedness of the KCD Notes and the IP Assets, PBGC has a vested interest in ensuring that Sears Re maximizes the value of the KCD Notes for the benefit of all of Sears Re's creditors, including PBGC.

18.    These Pension Plan protections in the IP Assets under the PPPFA are what PBGC bargained in consideration for PBGC's willingness to forbear from terminating the Pension Plans

---

[15] Transactions that violate these covenants are, null and void *ab initio*.  *See* PPPFA, § 5.02.  They also trigger PBGC's right under the PPPFA to specific performance.  *Id.* at § 5.01.

[16] "Independent Manager" and "Board of Managers" are defined in the *Limited Liability Company Operating Agreement of KCD IP, LLC*, dated May 18, 2006 (the "KCD Operating Agreement").

[17] *See* KCD Operating Agreement, § 9(j)(v)(C).  KCD has admitted the existence and validity of PBGC's statutory claims against it by executing an Acknowledgement of Joint and Several Liability in connection with the PPPFA.

for almost three years as the Debtors' financial condition worsened.  Now, with the APA and the

Sale Order, the Debtors, working with ESL, are trying to obtain the Court's permission to debase

these protections.

## II.    ARGUMENT

19.    The terms of the APA and the transactions contemplated thereunder demonstrate

that Buyer is intent on owning the Kenmore and DieHard trademarks, and using the bankruptcy

process to obtain them, notwithstanding the limits on bankruptcy court jurisdiction and the

explicit terms of the PPPFA that specifically segregate the IP Assets in a non-Debtor entity for

the benefit of PBGC.  As the Debtors and ESL know, these protections were intended as a

bulwark for the Pension Plans against the very deterioration in SHC and its controlled group that

has materialized.

20.    Despite ESL's objective, it cannot use protections afforded by 11 U.S.C. § 363(f)

to inoculate itself, any cooperating non-Debtors, or their respective officers and directors, from

PBGC's post-sale remedies with respect to non-debtor assets.  To the extent that any term in the

APA or the proposed order purports to afford such protections in connection with the sale of

non-Debtor assets, PBGC objects.  Furthermore, if the sale is approved in any form, it must

respect the corporate separateness of the various Debtors, as well as the command of the Bidding

Procedures Order, by specifying the amount of value that is being allocated to each of purchased

assets.  Otherwise, PBGC's J&S Pension Claims against each Controlled Group Member would

be improperly impaired by a *de facto* substantive consolidation that does not meet this Circuit's

requirements for such extraordinary relief.  *See*, *e.g., In re Augie/Restivo Baking Co.,* 860 F.2d

515, 518 (2d Cir. 1988) (the decision to substantively consolidate bankrupt estates should be considered with the utmost seriousness and employed only sparingly).[18]

**A.**    **The Bankruptcy Court Lacks Jurisdiction to Approve a "Free and Clear" Sale of Any Non-Debtor Assets**

21.    In the Sale Motion, the Debtors rely primarily on sections 105(a), 363(b), and 363(f) of the Bankruptcy Code for asserting this Court's jurisdiction to grant the relief it requests—the sale of substantially all of Debtors' assets and certain non-Debtors' assets "free and clear of any and all liens, claims, encumbrances, and other interests attaching to the proceeds of the sale." *See* Sale Mot. ¶ 48.

22.    But the plain language of Section 363 applies only to the property of the estate, stating that, "after notice and a hearing, [a debtor-in-possession] may use, sell, lease, other than in the ordinary course of business, **property of the estate** . . . ." 11 U.S.C. § 363(b)(1) (emphasis added).   And, "while it is of course true that a bankruptcy court's order of confirmation [of a sale] 'is treated as a final judgment with res judicata effect,' . . . a bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate." *In re Mariner Post-Acute Network, Inc.*, 267 B.R. 46, 59 (Bankr. D. Del. 2001); *see In re Stein*, 281 B.R. 845, 848 (Bankr. S.D. N.Y. 2002) ("Since the trustee can only sell property of the estate under § 363(b), the threshold question is whether the … rights are property of the estate"); *see also In re Stein & Day, Inc.,* 113 B.R. 157, 161-62 (Bankr. S.D.N.Y. 1990 ) ("[I]n order for assets to come within the auspices of § 363 they must be property of the estate.").

---

[18]  Substantive consolidation remains extraordinary relief because of its inherent inequalities and procedural problems. 2 *Collier on Bankruptcy,* § 105.09(1)(d) (16th ed. 2018).  Therefore substantive consolidation "should be a rare event, available only in extremely limited and favorable circumstances," and granted only where "the rights of no creditor or interested party be prejudiced."  *In re Stevenson*, 153 B.R. 52, 53-54 (Bankr. D. Idaho 1993).

23.     A debtor's estate does not encompass the property of a non-debtor subsidiary.

*Feldman v. Trustee of Beck Indus., Inc. (In re Beck Indus. Inc.)*, 479 F.2d 410, 415 (2d Cir.

1973); *Stein & Day, Inc.,* 113 B.R. at 162 ("A bankruptcy court's jurisdiction does not extend to

a wholly-owned subsidiary of the debtor, unless the subsidiary is a 'mere sham or conduit rather

than a viable entity.").

24.     The APA identifies the KCD Notes as an "Acquired Asset" and obligates Sears

Re to sell the KCD Notes to ESL subject to the approval of the Bermuda Monetary Authority.

*See* APA, §§ 2.1(r); 2.8(e).  The consideration that ESL is providing to Sears Re is the

assumption of an estimated $430 million of liabilities.  *Id.* § 2.3(e).  The Debtors have offered no

information to PBGC or other parties in interest suggesting that the Debtors engaged in a value-

maximizing process for the KCD Notes, or that, by extension, the $430 million approaches the

true value of the KCD Notes.

25.     The APA also contractually obligates the Debtors to use their "reasonable best"

efforts" to cause KCD to grant Buyer a "perpetual, irrevocable . . . worldwide, sublicensable, and

transferable" license to Buyer for all of KCD's intellectual property.  *See* APA, § 9.14(b).  And if

that fails, the Debtors must use their "best efforts" to obtain the consent from KCD necessary to

assign to Buyer those "KCD Agreements that are designated for assignment and assumption by

written notice" of Buyer.  APA, § 9.14(c).  The APA labels these transactions as "licenses."  *Id.*

In substance, however, where ESL, the intended licensee, is also intending to acquire the KCD

Notes, these provisions amount to a disposition or sale of all of KCD's rights in the Kenmore and

DieHard trademarks and ancillary license agreements.[19]

---

[19]  Recently the Debtors filed a Notice of Cure Costs and Potential Assumption and Assignment of Executory
Contracts and Unexpired Leases in Connection with Global Sale Transaction, where Debtors assert—despite their
non-payment of the royalty payments to KCD for over three months totaling upon information and belief over

26.     Thus, the Debtors and Buyer are plainly attempting to use 11 U.S.C. § 363 to accomplish a "free and clear" sale of non-Debtor assets to ESL.  This requested relief does not fall within the jurisdictional parameters of 11 U.S.C. § 363 and must be denied.  *See, e.g., In re Signal Hill-Liberia Ave. Ltd. P'ship*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) (holding the trustee lacks authority to sell non-estate property); *In re Manning*, 37 B.R. 755, 760 (Bankr. D. Colo. 1984), *aff'd* 831 F.2d 205 (10th Cir. 1987) (holding that trustee could not sell real property free and clear when it was determined that the debtor's estate did not include an interest in such real property); *In re Taylor*, 198 B.R. 142, 158 (Bankr. D.S.C. 1996) ("Sales of property under [§ 363] are limited to sales of property of the estate.").

27.     The proposed Sale Order is also replete with provisions that attempt to insulate the proposed sale or disposition of non-Debtor assets from collateral attack or challenge.  *See, e.g.,* Sale Order ¶ 12 (prohibiting any actions to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets); ¶ 17 (free and clear provision); ¶ 19 (prohibition against interfering with Buyer's title or use of enjoyment of the Acquired Assets); ¶ 20 (insulating Buyer from a variety of different liabilities, including pension liabilities); ¶ 39 (statutory mootness).  None of these provisions, or any related provisions that apply similar protections are appropriate or enforceable with respect to the non-Debtor assets conveyed to non-Debtor entities.  *See, e.g., Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994).  PBGC objects to their proposed application to the "licenses" and the proposed sale of the KCD

$70,000,000—that the cure costs for the Existing Licenses should be $0.  *See* D.I. 1731, Exhibit A, at 168-69, lines 4028-42.  The APA does not address this anomaly.  It appears that by frivolously stating fictitious cure amounts of $0 for each license from KCD, their non-Debtor affiliate, the Debtors are counting on KCD not to respond to the cure notice (much less exercise the unique rights KCD enjoys as a trademark licensor under Section 365(c)(1) of the Bankruptcy Code), to the detriment of KCD's few creditors like PBGC.

Notes.  PBGC reserves all its rights and remedies with respect to these assets, the non-Debtor

parties to such sales, and their respective officers and directors.

> **B.**    **If the Proposed Sale is Approved in Any Form, the Debtors and Buyer Must Allocate the Consideration Associated With Every Acquired Asset.**

28.    The Global Bidding Procedures state that a "Qualified Bid must clearly identify

… with respect to a bid for multiple Assets, the allocation of value in U.S. dollars that the

Prospective Bidder associates with each Asset … including a description of any significant

assumptions on which such valuation is based."  *See* D.I. 816, Exhibit 1, ¶ 3(b).  The APA does

not comply with this requirement.  The Buyer should be required to rectify that deficiency as a

condition for the approval of the proposed sale in any form.  The Debtors have a complex

corporate structure and the bid provided by the Buyer has a variety of different forms of

consideration.  PBGC, with its J&S Pension Claims against each Debtor and non-Debtor

Controlled Group Member (including KCD and Sears Re), should be able to ascertain the value

on an obligor-by-obligor basis to aid its recovery efforts, and avoid improperly diluting or

otherwise impairing its J&S Pension Claims.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, PBGC objects to the Sale Motion and reserves its rights, as set

forth herein.

DATED: January 26, 2019                     Respectfully submitted,
Washington, D.C.

                                            By: /s/ Michael Baird
                                            JUDITH R. STARR
                                            General Counsel
                                            CHARLES L. FINKE
                                            Deputy General Counsel
                                            WILLIAM MCCARRON, JR.
                                            GARTH D. WILSON
                                            KELLY R. CUSICK
                                            Assistant General Counsels
                                            MICHAEL I. BAIRD
                                            COURTNEY L. MORGAN
                                            ERIN C. KIM
                                            Attorneys
                                            Office of the General Counsel
                                            PENSION BENEFIT GUARANTY
                                            CORPORATION
                                            1200 K Street, N.W.
                                            Washington, D.C.  20005
                                            (202) 326-4020 ext. 6222
                                            (202) 326-4112 (fax)
                                            baird.michael@pbgc.gov and efile@pbgc.gov

                                            − and −

                                            Brian A. Raynor (*admitted pro hac vice*)
                                            LOCKE LORD LLP
                                            111 S. Wacker Drive
                                            Chicago, Illinois 60606
                                            Telephone: 312-443-0700
                                            Facsimile: 312-443-0336
                                            Email: braynor@lockelord.com

                                            *Counsel to Pension Benefit Guaranty Corporation*