**Objection Date and Time: January 26, 2019 at 4:00 p.m. ET**
**Hearing Date and Time: February 4, 2019 at 10:00 a.m. ET**

Ronald E. Gold, Esq.
(Admitted *pro hac vice*)
Ohio Bar No. 0061351
A.J. Webb, Esq.
(Admitted *pro hac vice*)
Ohio Bar No. 0093655
Erin P. Severini, Esq.
New York Bar No. 4311387
**FROST BROWN TODD LLC**
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800
Facsimile: (513) 651-6981
Email: rgold@fbtlaw.com
       awebb@fbtlaw.com
       eseverini@fbtlaw.com

-and-

Seth Van Aalten, Esq.
Sarah Carnes, Esq.
**COOLEY LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: svanaalten@cooley.com
       scarnes@cooley.com

*Counsel for Washington Prime Group Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | **CASE NO. 18-23538-RDD** |
| Debtors. | **(Jointly Administered)** |

**OBJECTION AND RESERVATION OF RIGHTS OF WASHINGTON PRIME GROUP INC. TO: (I) THE GLOBAL ASSET SALE TRANSACTION; AND (II) THE PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACTS IN CONNECTION THEREWITH**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Washington Prime Group Inc. ("WPG"), as managing agent for the owner of the properties identified herein, by its undersigned counsel, FROST BROWN TODD LLC and COOLEY LLP, submits this objection and reservation of rights (this "Objection") to the proposed sale (the "Sale Transaction") of above-captioned debtors (the "Debtors") to Transform Holdco, LLC (the "Proposed Buyer") pursuant to the: (i) *Motion to Approve Global Bidding Procedures* (Docket No. 429) (the "Sale Motion"); (ii) *Notice of Successful Bidder and Sale Hearing* (Docket No. 1730) (the "Notice of Successful Bidder"); (iii) *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1731) (the "First Notice of Potential Assumption and Assignment"); and (iv) *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1774) (the "Second Notice of Potential Assumption and Assignment" and, together with the Sale Motion, the Notice of Successful Bidder, and the First Notice of Potential Assumption and Assignment, the "Sale Pleadings").[1] In support of this Objection, WPG respectfully states:

**PRELIMINARY STATEMENT**

1. Although WPG does not generally object to the Debtors' right to sell substantially all of the Debtors' remaining assets, including but not limited to lease designation rights (the "Proposed

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Pleadings.

2

Designation Rights") to the Proposed Buyer,[2] WPG objects to certain terms of the proposed Asset Purchase Agreement (the "Proposed APA") and certain provisions of the proposed sale order (the "Proposed Sale Order") to the extent that they impair, limit and/or modify WPG's rights under the WPG Leases, the Bankruptcy Code, and applicable law.

2. Specifically, WPG objects to the Sale Transaction on the following grounds:

- If any WPG Lease (defined herein) is deemed an Acquired Lease or Assigned Agreement, as defined in the Proposed APA, the Debtors must assume and assign to the proposed assignee all terms, conditions, covenants, and obligations under the WPG Lease(s), whether monetary or non-monetary, for which the Debtors are responsible pursuant to the WPG Lease(s), whether related to the pre- or post-assignment period, including, but not unlimited to: (a) payment of all accruing but unbilled charges under the WPG Lease(s), including but not limited to all unpaid year-end and other adjustments and reconciliations; (b) payment of all regular or periodic adjustment of charges under the WPG Leases which were not due or had not been determined as of the date of this Objection; (c) all taxes, insurance, indemnification, contribution and other contractual obligations under the WPG Leases; and (d) any and all obligations arising on account of any interests, covenants, or rights applicable to the applicable premises or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits that are not executory or that run with the land.

- The Proposed Sale Order must be revised to preserve the enforceability of Restrictive Covenants, as defined herein and in the Sale Procedures Order (also defined herein), that are not executory or that run with the land.

- The Proposed Designation Rights must be governed by procedures that: (i) include a mechanism and timeline for the delivery of adequate assurance of future performance information to WPG; (ii) provide WPG with sufficient notice and opportunity to object on any and all grounds, including but not limited to, cure amounts, as those amounts may change from and after the commencement of the Designation Rights period, and adequate assurance of future performance information; and (iii) provide that any proposed assignment of a WPG Lease complies with all of the terms, conditions, provisions of the WPG Lease and the Bankruptcy Code.

- The Proposed Sale Order must be revised to include a procedure to determine

---

[2] The Proposed Designation Rights are further described in the proposed Asset Purchase Agreement.

3

the amounts to be segregated by the Debtors for the Debtors' portion of year-end adjustments and reconciliations for Designatable Leases.

- The "go-dark" provisions in the Proposed APA must be curtailed to a reasonable amount of time, not to exceed ninety (90) days.

- WPG must receive timely and sufficient notice of any proposed assignment of the Proposed Buyer's rights under the Proposed APA, to the extent that such assignment affects in any way any WPG Lease.

- Any side letter agreement entered into governing the conduct of store closing sales should continue to control while such sales are ongoing, regardless of the Sale Transaction to the Proposed Buyer.

## BACKGROUND

3. On October 15, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (this "Court").

4. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. WPG is the owner, or the managing agent for the owners of, certain real properties in which the Debtors lease retail space from WPG pursuant to those certain unexpired leases (collectively, the "WPG Leases" and each a "WPG Lease").[3] Specifically, the Debtors are currently leasing retail space from WPG at the locations identified on **Exhibit A** attached hereto and incorporated herein (the "Leased Premises").[4]

---

[3] *See* Footnote 3.

[4] The WPG Leases on Exhibit A include certain operating agreements and other agreements that WPG has entered into with non-debtor party Seritage SRC Finance LLC, identified as "Seritage SRC Finance LLC-Associated Leases" on Exhibit A, as well as certain operating agreements and other agreements that WPG has entered into with the Debtors. WPG is not asserting a cure amount with respect to any Seritage SRC Finance-LLC Associated Lease but is reserving all of its rights accordingly.

6. The Leased Premises are located in "shopping centers" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

7. On November 1, 2018, the Debtors filed their Sale Motion seeking, among other things, approval of procedures to market, auction, and sell the Debtors' real estate and other assets as a going concern, separated into: (i) procedures that apply to certain "go-forward" stores and related assets that the Debtors have deemed profitable; and (ii) global procedures that apply to the Debtors' remaining assets that are not sold as part of the "go-forward" stores.

8. On November 19, 2018, this Court entered its *Order Approving Global Bidding Procedures and Granting Related Relief* (Docket No. 816) (the "Sale Procedures Order") which, among other things, approved procedures to be used by the Debtors in connection with the proposed sale of the Global Assets.

9. Based on information and belief, on January 14, 2019, the Debtors commenced an auction for the sale of the Global Assets whereby the Debtors selected an offer by the Proposed Buyer as the highest and/or best offer for all or substantially all of the Global Assets.

10. In connection with the Sale Procedures Order, on January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* (Docket No. 1730) (the "Notice of Successful Bidder") stating that the Proposed Buyer was the highest and/or best offer for all or substantially all of the Global Assets. Attached to the Notice of Successful Bidder is the Proposed APA between the Proposed Buyer and the Debtors, as well as the Proposed Sale Order.

11. Additionally, on January 18, 2019, the Debtors filed the First Notice of Potential Assumption and Assignment, and on January 23, 2019, the Debtors filed the Second Notice of Potential Assumption and Assignment. The Potential Assumption and Assignment Notices identify

certain executory contracts and unexpired leases that the Debtors might assume and assign as part of the Sale Transaction, including certain of the WPG Leases identified on **Exhibit A** attached hereto and incorporated herein (the "Potentially Assigned WPG Leases").[5]

12. As provided in the Notice of Successful Bidder, objections to, among other things, the Sale Transaction are due by January 26, 2019 at 4:00 p.m. (Eastern) (the "Objection Deadline").[6]

## OBJECTION

### A. *The Proposed Designation Rights Must Comply with the WPG Leases and Protect WPG's Rights*

13. *First*, WPG objects to any attempt by the Debtors to side-step or invalidate the bargained-for protections in the WPG Leases, including, but not limited to, the continuous operating covenants. WPG is entitled to the full benefit of its bargain under the WPG Leases and is entitled to the full protections provided by section 365 of the Bankruptcy Code. *See, e.g.*, *In re Entertainment, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998). The Debtors and the Proposed Buyer must strictly comply with all of the terms and conditions of the WPG Leases during the Designation Rights period until such leases have been assumed, assumed and assigned or rejected. 11 U.S.C. § 365(d)(3); *see, e.g.*, *In re new Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (each recognizing that section 365(d)(3) of the Bankruptcy Code imposes an affirmative duty on a debtor to comply with all of its leasehold obligations).

14. The Debtors' grant of the Proposed Designation Rights to the Proposed Buyer as well

---

[5] The Second Potential Assumption and Assignment Notice schedules three "Master Leases" with WPG, identified as Contract Nos. S2354-1-A, S2361-1-A, and S1202-1-A with expiration dates of November 30, 2020. WPG is unable to specifically identify these "Master Leases" and, accordingly, WPG reserves any and all of its rights with respect to these "Master Leases," including WPG's rights to object, including filing a supplemental objection with this Court, on any grounds to the proposed assumption and assignment of those "Master Leases."

[6] By agreement with counsel for the Debtors, the Objection Deadline has been extended through and including January 28, 2019.

as any proposed assumption and assignment of a WPG Lease and use of the Leased Premises during the Proposed Designation Rights period must be in accordance with all provisions of the WPG Leases and the Bankruptcy Code. *See id*.

15. The Debtors and the Proposed Buyer must both remain fully liable to WPG for the payment of all amounts due and owing to WPG under the WPG Leases during the Proposed Designation Rights period. If this Court approves the grant of the Proposed Designation Rights to the Proposed Buyer, the Proposed Sale Order should be revised to expressly provide that the Debtors and the Proposed Buyer shall timely perform all of the obligations of the Debtors under the WPG Leases and section 365 of the Bankruptcy Code during the Proposed Designation Rights period.

16. The Proposed Buyer and the Debtors must also be required to immediately provide evidence of insurance coverage that complies with the terms of the WPG Leases is in place during the Proposed Designation Rights period, effective as of the first day of the Designation Rights period.

17. WPG objects to the grant of any Proposed Designation Rights if the use and occupancy of the Leased Premises during the Proposed Designation Rights period violates any provision of the WPG Leases, including, but not limited to, any radius, location, use and/or exclusivity provisions contained in the WPG Leases.

18. The Proposed Designation Rights provide that any proposed assignee may "go dark" at the Leased Premises for 150 days. WPG objects to the extent that the "go dark" provisions of the Proposed Sale Order conflict with the terms of the Potentially Assigned Leases that prohibit a proposed assignee from "going dark" at the Leased Premises and, in all other instances, WPG submits that a proposed assignee should be permitted to "go dark" at the Leased Premises for a reasonable period of time, not to exceed ninety (90) days.

19. If the Proposed Buyer elects to exercise its Proposed Designation Rights pursuant to

the Proposed APA and seeks to assume and assign a WPG Lease to a third party, there is no process in place for delivering to WPG adequate assurance information of the third party, including, but not limited to, information on the financial stability and status of the third party, the third party's intended use of the Leased Premises and business plan, and assurances that the third party or any third-party designee will adequately perform under and comply with the WPG Leases. Without this information, it is impossible for WPG to consider and this Court to determine whether any proposed assignee of a WPG Lease will be able to adequately perform under the WPG Leases and otherwise comply with section 365 of the Bankruptcy Code.[7]

20.     Accordingly, if this Court approves the sale of the Proposed Designation Rights to the Proposed Buyer, WPG respectfully request that the Proposed Sale Order be revised (in addition to what is discussed otherwise herein) to reflect designation procedures that provide WPG with sufficient notice of future requests of the Debtors, or of the Proposed Buyer, for approval of any proposed assumption and assignment of a WPG Lease. Such procedures should provide WPG with an opportunity to object, on any basis, to any proposed assumption and/or assignment of a WPG Lease at such time that the Debtors or the Proposed Buyer may seek to actually assume and assign any of the WPG Leases, including but not limited to, allowing WPG (at such time in the future) to assert objections, on any basis, with respect to the proposed assumption and assignment of a WPG Lease, including but not limited to, asserting additional cure amounts (for amounts that may have accrued from and after the filing of this Objection, including those that specifically accrued during the Designation Rights period) and adequate assurance of future performance objections.

B.     ***Specific Objections to Proposed Sale Order and/or the Proposed APA***

21.     ***Second***, paragraph 26 of the Proposed Sale Order provides that payment of the Cure

---

[7] WPG expressly reserves the right to request further adequate assurance information from any assignee of a WPG Lease

Costs constitutes full satisfaction of any monetary *and* non-monetary defaults under the Assigned Agreements. The payment of the Cure Costs only cures *monetary* defaults under the Assigned Agreements and cannot be deemed to cure any other defaults that may exist under the Assigned Agreements. The Debtors are separately required to cure any defaults arising "from a failure to operate in accordance with a nonresidential real property lease." 11 U.S.C. § 365(b)(1)(A). Paragraph 26 should be revised to require the Debtors to cure any non-monetary defaults existing under the WPG Leases at the time of assumption as required by the Bankruptcy Code. *See, e.g.*, *In re Empire Equities Capital Corp.*, 405 B.R. 687 (Bankr. S.D.N.Y. 2009) (explaining curing non-monetary defaults in context of non-residential real property leases and other agreements); *In re Patriot Place, Ltd.*, 486 B.R. 773 (Bankr. W.D. Tex. 2013) (same).

22.    **Third**, neither the Proposed Sale Order nor the Proposed APA allow WPG to receive any of the schedules referenced and/or attached to the Proposed APA, including: (i) the Initial Assigned Agreements Schedule; (ii) the schedule of GOB Leases; (iii) the schedule of GOB Owned Stores; (iv) the schedule of Operating Leases; (v) the schedule of Operating Owned Stores; and (vi) the schedule of Potential Transferred Agreements (collectively, the "Proposed APA Schedules"). At a minimum, WPG should receive notice within one (1) business day of delivery of the Proposed APA Schedules to the Debtors of any WPG Leases contained on the Proposed APA Schedules. Based on information and belief, certain—but not all—of the Proposed APA Schedules have been provided by the Debtors through the Debtors' claims agent. WPG is reviewing this information and reserves all of its rights accordingly.

23.    **Fourth**, the Proposed Sale Order must preserve rights of all parties under easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or

---

that WPG may deem necessary.

permits (collectively, the "Restrictive Covenants") and any unexpired master lease of nonresidential real property to which a Debtor is a party (each a "Master Lease") as mandated by the Sale Procedures Order. The Sale Procedures Order specifically provides that "[t]o the extent that the Debtors *or other any party* seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto. All rights, remedies, and positions of all parties with respect to such relief are preserved." Sale Procedures Order, ¶ 51 (emphasis added). The Proposed Sale Order must be revised to include the provisions regarding Restrictive Covenants and Master Leases consistent with those contained in the Sale Procedures Order, and the Debtors cannot sell the WPG Leases free and clear of a Master Lease or Restrictive Covenants.[8]

24.     ***Fifth***, Section 13.6 of the Proposed APA provides that the Proposed Buyer may assign all or part of its rights to an affiliate of the Proposed Buyer by only providing notice to the

---

[8] It is well-settled that the Debtors cannot sell the WPG Leases, or any of their real estate assets, free and clear of a Master Lease or Restrictive Covenants. *See, e.g.*, *In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (citations omitted) ("When a debtor assumes the lease…it must assume both the benefits and burdens of the contract. Neither the debtor nor the bankruptcy court may exercise material obligations owing to the non-debtor contracting party."); *In re E-Z Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D. N.C. 2003) (citations omitted) ("When an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens…Debtors cannot assume favorable positions of a lease and reject unfavorable provisions or rewrite the terms when assuming a lease."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 128 (Bankr. D. Del. 2008) (debtor could not assume or reject individual leases but had to assume or reject the master lease and all related agreements as a whole, where evidence established that master leases governed all related leases); *In re Kopel*, 232 B.R. 57 (Bankr. E.D. N.Y. 1999) (lease and related agreements constituted an entire transaction; debtor could not assume one agreement without curing defaults on others); *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged….Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignment moves into the shoes of the assignor.") (citations omitted); *U.S. v. Blackman*, 270 Va. 68, 613 S.E.2d 442 (Va. 2005) (holding that an easement appurtenant runs with the land); *In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 255-256 (E.D. N.Y. 1996) ("absent the consent of the owner of the easement or the easement being in a bona fide dispute, the Bankruptcy Code does not even allow the Bankruptcy Court to authorize a sale of the property 'free and clear' of an easement").

Debtors. WPG should receive, at a minimum, eight (8) days' advance notice of any assignment impacting the WPG Leases, along with evidence of adequate assurance of future performance of such affiliate and the opportunity to object to the proposed assignment by the Proposed Buyer.

25. **Sixth**, the Proposed Sale Order should be revised to provide that any side letter agreement entered into governing the conduct of store closing sales at the Leased Premises should continue to control while such sales are ongoing, regardless of the Sale Transaction to the Proposed Buyer.

26. **Seventh**, sections 2.4(b) and 2.5 of the Proposed APA appear to exclude the Proposed Buyer's liability for year-end adjustments under any Acquired Lease for the calendar year in which the assignment occurs to the extent attributable to the period prior to the assignment or any previous calendar year while simultaneously excluding the Debtors' liability for such obligations with respect to the Acquired Leases "regardless of when due and payable". These provisions leave no recourse for landlords of Acquired Leases against either the Debtors or the Proposed Buyer (or an assignee of the Proposed Buyer) with respect to these adjustment obligations in violation of the section 365 of the Bankruptcy Code. The Debtors and/or the Proposed Buyer must be responsible for satisfying any adjustment amounts when due in accordance with the terms of the WPG Leases, regardless of when such adjustment amounts were incurred, and the Proposed Sale Order should be revised accordingly. The Proposed Sale Order should also be revised to include a procedure to determine the amounts to be segregated by the Debtors for the Debtors' portion of year-end adjustments and reconciliations for Designatable Leases.

27. **Eighth,** the Proposed Sale Order should be revised to implement procedures for the Proposed Designation Rights that: (i) include a mechanism and timeline for the delivery of adequate assurance of future performance information to WPG and similarly situated landlords; (ii) provide

11

WPG and similarly situated landlords with sufficient notice and opportunity to object on any and all grounds, including cure amounts, as those amounts may change, and adequate assurance of future performance information; and (iii) make clear that any proposed assignment of a WPG Lease complies with the provisions of the WPG Lease.

### C.    *Debtors and/or Proposed Buyer Must Demonstrate Adequate Assurance of Future Performance and Comply with Section 365 of the Bankruptcy Code*

28.    *Finally*, the assumption and assignment of the WPG Leases must be conditioned on the Debtors' strict compliance with the requirements of section 365 of the Bankruptcy Code including, but not limited to, providing WPG with sufficient information with respect to adequate assurance of future performance and paying all amounts due and owing under each of the WPG Leases through the effective date of the assumption and assignment of the WPG Leases, for which the Debtor carries the burden. *See, e.g.*, *In re R & J, Inc.*, 140 B.R 316 (Bankr. D. Mass. 1992) (discussing that debtor carries burden on adequate assurance of future performance).

29.    On January 24, 2019, counsel for WPG contacted counsel for the Proposed Buyer and obtained certain confidential adequate assurance information from the Proposed Buyer (the "Proposed Adequate Assurance Information"). WPG is reviewing the Proposed Adequate Assurance Information and reserves all of its rights accordingly.

30.    For the avoidance of doubt, and to preserve WPG's rights in the event that the Proposed Adequate Assurance Information fails to satisfy the requirements of the Bankruptcy Code and applicable law, the adequate assurance of future performance information required to be provided as part of the Sale Transaction must demonstrate, among other things, that the heightened standards for adequate assurance of future performance in a shopping center will be satisfied by the Proposed Buyer or a proposed assignee of the WPG Leases, including, but not limited to, compliance with the use

clause, radius and tenant mix provisions in the WPG Leases, all in accordance with section 365 of the Bankruptcy Code. 11 U.S.C. § 365(b)(3); *see, e.g.*, *In re Three A's Holdings, L.L.C.*, 364 B.R. 550 (Bankr. D. Del. 2007) (discussing adequate assurance requirements in the context of a shopping center lease).[9]

31. WPG also objects to the assumption and assignment of the WPG Leases, including the Potentially Assigned Leases, in connection with the Sale Transaction unless and until all amounts due and owing under each of the WPG Leases are paid through the effective date of the assumption and assignment of the WPG Leases, including the Potentially Assigned Leases, as provided by the *Objection of Washington Prime Group Inc. to the Proposed Cure Amounts in Connection with Debtors' Proposed Assumption and Assignment of Leases and Contracts* filed on January 25, 2019 (Docket No. 1945). All of WPG's rights are reserved accordingly.

## JOINDER

32. WPG joins in any objections filed by other landlords to the extent those objections are consistent with this Objection.

## CONCLUSION AND RESERVATION OF RIGHTS

33. For the reasons set forth herein, WPG submits that its concerns regarding the Sale Transaction, the Proposed Designation Rights, and the possible resulting assumption and assignment

---

[9] Additionally, and to preserve WPG's rights in the event that the Proposed Adequate Assurance Information fails to satisfy the requirements of the Bankruptcy Code and applicable law, WPG believes that in connection with the proposed assumption and assignment of the WPG Leases, the Proposed Buyer or a proposed assignee of a WPG Lease must provide information detailing (a) the source of rent and other consideration due under the WPG Leases, and that the financial condition and operating performance of the proposed assignee and any guarantor shall be similar to the financial condition and operating performance of the Debtors and any guarantor of the Debtors at the time the Debtors entered into the WPG Leases; (b) that any percentage rent due under the WPG Leases, if applicable, will not decline substantially; (c) that assumption and assignment of the WPG Leases is subject to all provisions of the WPG Leases, including but not limited to radius, location, use or exclusivity provisions, and will not breach any such provision contained in another lease; and (d) that assumption or assignment of the WPG Leases will not disrupt any tenant mix in the Leased Premises. *See* 11 U.S.C. § 365(b)(3). *See, e.g.*, *In re Three A's Holdings, L.L.C.*, 364 B.R. 550 (Bankr. D. Del. 2007), *supra*.

13

of the WPG Leases, including the Potentially Assigned WPG Leases as part of the Designation Rights, should be addressed by the Debtors and that the Proposed APA and the Proposed Sale Order should be revised consistent with this Objection.

34. Nothing in this Objection is intended to be, or should be construed as, a waiver by WPG of any of its rights under the WPG Leases, the Bankruptcy Code, or applicable law. WPG expressly reserves all such rights including, without limitation, the right to supplement and/or amend this Objection and to assert any additional objections with respect to any possible or proposed assumption and assignment of the WPG Leases on any and all grounds including, but not limited to: (i) any additional objections with respect to any potential assumption and assignment of the WPG Leases and proposed sale procedures; (ii) any additional objections with respect to any request for Proposed Designation Rights by the Proposed Buyer or any other party; and/or (iii) all other objections with respect to the relief requested that may subsequently be sought by the Debtors and/or any other party, as such requested relief relates to the WPG Leases and/or the interests of WPG.

**WHEREFORE**, WPG respectfully requests that this Court enter an order: (a) sustaining this Objection; and (b) granting WPG such other and further relief as this Court deems just and appropriate under the circumstances.

[*Signature page follows*.]

Dated: January 26, 2019

        **FROST BROWN TODD LLC**
        */s/ Ronald E. Gold*
        Ronald E. Gold, Esq.
        (Admitted *pro hac vice*)
        Ohio Bar No. 0061351
        A.J. Webb, Esq.
        (Admitted *pro hac vice*)
        Ohio Bar No. 0093655
        Erin P. Severini, Esq.
        New York Bar No. 4311387
        **FROST BROWN TODD LLC**
        3300 Great American Tower
        301 East Fourth Street
        Cincinnati, Ohio 45202
        Telephone: (513) 651-6800
        Facsimile: (513) 651-6981
        Email: rgold@fbtlaw.com
                 awebb@fbtlaw.com
                 eseverini@fbtlaw.com

        -and-

        Seth Van Aalten, Esq.
        Sarah Carnes, Esq.
        **COOLEY LLP**
        1114 Avenue of the Americas
        New York, NY 10036
        Telephone: (212) 479-6000
        Facsimile: (212) 479-6275
        Email: svanaalten@cooley.com
                 scarnes@cooley.com

        *Counsel for Washington Prime Group Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2019, a copy of the foregoing was served electronically or via First Class Mail, postage prepaid upon all those identified on the Master Service List as of January 26, 2019 in accordance with this Court's: (i) *Amended Order Implementing Certain Notice and Case Management Procedures* entered November 1, 2018 (Docket No. 405); and (ii) *Order Approving Global Bidding Procedures and Granting Related Relief* entered November 19, 2018 (Docket No. 816) and the service requirements established thereby.

          */s/ Ronald E. Gold*
          Ronald E. Gold

# EXHIBIT A

## "WPG Leases"

| *Potentially Assigned WPG Leases* | | |
|---|---|---|
| ***Shopping Center*** | ***Store No.*** | ***City, State*** |
| Boynton Beach Mall (including Auto Center) | 1755, 6820 | Boynton Beach, Florida |
| Charlottesville | 2435 | Charlottesville, Virginia |
| Chautauqua Mall | 2584 | Lakewood, New York |
| Indian Mound Mall | 1081 | Heath, Ohio |
| Longview Mall | 2557 | Longview Mall, Texas |
| Mall at Johnson City | 2265 | Johnson City, Tennessee |
| Morgantown Mall | 2304 | Morgantown, West Virginia |
| Pearlridge | 1578 | Aiea, Hawaii |
| Polaris Fashion Place (including Auto Center) | 1210 | Columbus, Ohio |
| Port Charlotte Town Center | 2145 | Port Charlotte, Florida |
| Southern Hills Mall | 2422 | Sioux City, Iowa |
| Town Center at Aurora | 1141 | Aurora, Colorado |
| Weberstown Mall | 1288 | Stockton, California |
| Westshore Plaza (including Auto Center) | 1745 | Tampa, Florida |
| Whitehall Mall | 1154 | Whitehall, Pennsylvania |
| *Seritage SRC Finance LLC-Associated Leases* | | |
| ***Shopping Center*** | ***Store No.*** | ***City, State*** |
| Bowie Town Center | 2034 | Bowie, Maryland |
| Dayton Mall | 1560 | Dayton, Ohio |
| Edison Mall | 1495 | Ft. Myers, Florida |
| Great Lakes Mall | *Not Scheduled* [10] | Mentor, Ohio |
| Irving Mall | 2147 | Irving, Texas |
| Jefferson Valley Mall | 1944 | Yorktown Heights, New York |
| Lindale Mall | *Not Scheduled* | Cedar Rapids, Iowa |
| Maplewood Mall | *Not Scheduled* | St. Paul, Minnesota |
| Paddock Mall | 1006 | Ocala, Florida |
| University Town Plaza | *Not Scheduled* | Pensacola, Florida |
| Westminster Mall | *Not Scheduled* | Westminster, California |
| *Remaining WPG Leases* | | |
| ***Shopping Center*** | ***Store No.*** | ***City, State*** |
| Anderson Mall | *Not Scheduled* | Anderson, South Carolina |
| Cottonwood Mall | *Not Scheduled* | Albuquerque, New Mexico |
| Northwoods Mall | *Not Scheduled* | Peoria, Illinois |
| Orange Park Mall | *Not Scheduled* | Orange Park, Florida |

---

[10] "Not Scheduled" means not presently scheduled on the Potential Assumption and Assignment Notices.

| *Shopping Center* | *Store No.* | *City, State* |
|---|---|---|
| Rolling Oaks | *Not Scheduled* | San Antonio, Texas |
| Seminole Towne Center | *Not Scheduled* | Sanford, Florida |
| Sunland Park Mall | *Not Scheduled* | El Paso, Texas |
| West Ridge Mall | *Not Scheduled* | Topeka, Kansas |

0028924.0656025   4832-3799-0790v1