John C. Allerding, Esq.
(*Pro hac vice*)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Telephone: 216.566.5500
Facsimile: 216.566.5800
Email: John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.* | Case No. 18-23538-RDD |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF LUXOTTICA RETAIL NORTH AMERICA INC.
TO DEBTORS' NOTICE AND SUPPLEMENTAL NOTICE OF CURE COSTS
AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
<u>GLOBAL SALE TRANSACTION</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings, Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holding Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Product, Inc.(8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "<u>Debtors</u>"). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Luxottica Retail North America Inc. ("**Luxottica**") hereby supplements its *Objection to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (ECF No. 1882, as supplemented, the "**Objection**") to further identify the basis for its objection to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* (ECF No. 1731) (the "**Notice of Cure Costs**") and the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* (ECF No. 1774) (the "**Supplemental Notice of Cure Costs**," and collectively with the Notice of Cure Costs, the "**Cure Notices**") filed by the Debtors.

## BACKGROUND

1. On or around May 31, 2015, Sears, Roebuck and Co. ("**Sears**") and Luxottica entered into a license agreement (as amended from time to time, the "**License Agreement**") pursuant to which Sears granted Luxottica a license to operate an optical goods and services business (Sears Optical) within certain Sears' store locations (the "**Designated Company Stores**" and the Sears Optical locations within such Designated Company Store being referred to herein as the "**On-Premises Locations**"), certain free-standing locations (the "**Off-Premises Locations**"), and via the internet (www.searsoptical.com).[2] License Agreement, § 1.1.

2. Pursuant to the terms of the License Agreement:

    a. Luxottica was required to have all checks accepted at the On-Premises Locations and Off-Premises Locations made payable to Sears or Sears Optical. License Agreement, § 9.1.

---

[2] The License Agreement includes a confidentiality provision that permits disclosure of its terms only in limited circumstances. While those circumstances exist here, permitted disclosure is limited to that which is necessary under those circumstances. As a result, Luxottica has summarized only the necessary terms of the License Agreement and has not attached the License Agreement to this Objection. Luxottica will work with Sears to determine the most appropriate way to provide the Court with a copy of the License Agreement for its review in connection with this Objection.

b. Luxottica was required to accept certain credit cards bearing Sears or a Sears affiliate's name for sales of goods and services at the On-Premises Locations, the Off-Premises Locations, and via the internet. Luxottica was further required to submit the documents relating to such Sears credit card receivables to Sears for settlement (i.e., Sears settled such credit card receivables directly with the issuing bank). License Agreement, § 9.2(a). Luxottica authorized Sears to collect such credit card receivables on Luxottica's behalf. License Agreement, § 9.2(c).

c. Luxottica was required to accept third-party credit cards at the On-Premises Locations and to submit the documents relating to such third-party credit card receivables to Sears for settlement with the respective credit card issuer (i.e., Sears settled such credit card receivables directly with the issuing bank). License Agreement, § 9.2(b).

d. Luxottica was required to accept third-party credit cards at the Off-Premises Locations and for sales of goods and services on the internet. Luxottica was required to submit such third-party credit card receivables for settlement with Luxottica's third-party credit card processor. License Agreement, § 9.2(b).

e. Luxottica was required to process all transactions, including cash, check, and credit card transactions, made at the On-Premises Locations through the Sears Point of Sale System (the "**Sears POS System**").[3] License Agreement, § 9.2(c).

f. At the close of each business day, Luxottica was required to deliver the total of call cash, checks, and credit sales documents for transactions completed that day at the On-Premises Locations to Sears. License Agreement, § 9.3.

g. Specifically, with respect to the cash, checks, and credit card receivables generated by Luxottica and delivered to Sears pursuant to the License Agreement (the "**Trust Funds**"), the License Agreement provided that

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

License Agreement, § 9.3.

---

[3] Portions of transactions paid by a third-party issuer were excluded from this requirement.

    h.    Moreover, Sears collected payments and settlements with respect to checks and credit cards on behalf of Luxottica – not as its own accounts receivable. License Agreement, §§ 9.2(c); 9.3.

    i.    On a weekly basis, Sears was required to remit to Luxottica the cash delivered by Luxottica to Sears under the License Agreement, as well as the cash collected by Sears on Luxottica's behalf with respect to the checks and credit card receivables (all credit card receivables for On-Premises Locations and Sears credit card receivables for Off-Premises Locations and internet transactions), net of a fee (the "**Company Fee**") that Sears was owed pursuant to the License Agreement. License Agreement, § 9.3.[4]

    j.    Luxottica was required to make monthly payments to Sears for in-store third-party insurance transactions (not run through the Sears POS System), transactions processed by Luxottica's own POS systems (i.e., Off-Premises Location and internet transactions not involving a Sears credit card), and certain other non-transaction related payments required under the terms of the License Agreement. License Agreement, § 9.3.

    k.    Luxottica was permitted – but not required – to accelerate the expiration date of the License Agreement to the date on which Sears had less than 300 Designated Company Stores (which date was the date of the closing of the Designated Store or Stores that reduced the number of Designated Company Stores to 299 or less). License Agreement, § 2.1.

3.    Throughout the course of their relationship, Luxottica and Sears (and/or the other Debtors) entered into a series of other agreements centered around the License Agreement and the business conducted pursuant thereto.

4.    On October 15, 2018 (the "**Petition Date**"), the Debtors filed for protection under chapter 11 of title 11 of the United States Code.

5.    On November 1, 2018, the Debtors filed their *Motion for Approval of Global Bidding Procedures* (ECF No. 429) seeking, *inter alia*, procedures for the assumption and assignment of certain executory contracts and unexpired leases.

---

[4] At the end of the fiscal month, Sears also included payments necessary to reconcile transactions from prior months.

6. On November 19, 2018, the Court entered its *Order Approving Global Bidding Procedures and Granting Related Relief* (ECF No. 816), approving the bidding and sale procedures applicable to the Debtors' executory contracts and unexpired leases.

7. On January 14, 2019, the Debtors commenced an auction for the sale of substantially all of their assets – including certain executory contracts and unexpired leases to be identified at a later date. Transform Holdco, LLC ("**Buyer**") was determined to have submitted the highest and best offer for such assets. Notice of Successful Bidder and Sale Hearing (ECF No. 1730), ¶ 4.

8. On January 18, 2019, the Debtors filed their Notice of Cure Costs identifying (i) the following agreements with Luxottica as those that may be assumed by the Debtors and assigned to the Buyer; and (ii) the Debtors' alleged cure costs with respect thereto:

| No. | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 4507 | Sears, Roebuck and Co.; SHC Licensed Business LLC | Luxottica Retail North America Inc. | The First Amendment (First Amendment) To the License Agreement is made as of June 19, | N/A | N/A | N/A | $884 |
| 4508 | Sears Holdings Management Corporation; Sears, Roebuck and Co. | Luxottica Retail North America Inc. | This License Agreement (Together with all schedule hereto, the Agreement) is entered | N/A | 5/30/2020 | N/A | $* |
| 4509 | SHC Licensed Business LLC | Luxottica Retail North America Inc. | This Second Amendment ("Second Amendment) to the License Agreement is made | N/A | N/A | N/A | $* |
| 4510 | Sears Holdings Management Corporation; Sears, Roebuck and Co. | Luxottica Retail North America Inc. | The purpose of this Letter Agreement ("Letter Agreement") is to set forth the terms and | N/A | N/A | N/A | $* |
| 4511 | SHC Licensed Business LLC | Luxottica Retail North America Inc. | This Second Amendment ("Second Amendment") to the License Agreement is | N/A | N/A | N/A | $* |
| 4512 | SYW Relay LLC | Luxottica Retail North America Inc. | This Amendment #1, is made as of November 10, 2017 (Amendment Effective Date) by | N/A | 12/31/2018 | N/A | $* |
| 4513 | SHC Licensed Business LLC | Luxottica Retail North America Inc. | The First Amendment (First Amendment) To the License Agreement is made as of June 19, | N/A | N/A | N/A | $* |
| 4514 | Sears, Roebuck and Co. | Luxottica Retail North America Inc. | This License Agreement (Together with all schedule hereto, the Agreement) is entered | N/A | 5/30/2020 | N/A | $* |
| 4515 | SHC Licensed Business LLC | Luxottica Retail North America Inc. | This SYW Partnership Agreement (Agreement) is entered into and made effective as of | N/A | N/A | N/A | $* |
| 4516 | SHC Licensed Business LLC | Luxottica Retail North America Inc. | This Second Amendment (Second Amendment) to the License Agreement is made | N/A | N/A | N/A | $* |

5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4517 | Sears, Roebuck and Co. | Luxottica Retail North America Inc. | This Fourth Amendment to Master Amendment (this Forth Amendment), | N/A | N/A | N/A | $* |
| 4518 | Sears Holdings Management Corporation | Luxottica Retail North America Inc. | The Purpose of this Letter Agreement ("Letter Agreement") is to set forth the terms and | N/A | N/A | N/A | $* |
| 4519 | Sears, Roebuck and Co. | Luxottica Retail North America Inc. | This Kardashian Online License Agreement (together with all schedule herto, the | N/A | N/A | N/A | $* |

9. On January 23, 2019, Debtors filed their Supplemental Notice of Cure Costs identifying (i) the following agreements[5] with Luxottica as those that may be assumed by the Debtors and assigned to the Buyer; and (ii) the Debtors' alleged cure costs with respect thereto:

| No. | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 356 | SYW Relay LLC | Luxottica Retail North America Inc. | This Amendment #1, is made as of November 10, 2017 (Amendment Effective Date) by Luxottica Retail North America Inc., on behalf of itself and its subsidiaries (collectively, "Luxottica"), and Shop Your Way, on behalf of itself and for the benefit of | | 12/31/2018 | | $* |
| 357 | SHC Licensed Business LLC | Luxottica Retail North America Inc. | This SYW Partnership Agreement (Agreement) is entered into and made effective as of January 1, 2017 (Effective Date) by and between Luxottica Retail North America Inc., and Ohio Corporation D/B/A Sears Optical, with an office located at 4 | | 5/30/2021 | | $* |
| 358 | Sears, Roebuck and Co. | Luxottica Retail North America Inc. | This Kardashian Online License Agreement (together with all schedule herto, the "Agreement") is entered into as of November 21, 2012 (the Effective Date), by Sears Holdings Management Corp., a Delaware Corporation, as agent for Sears, Roebuck and Co., a N | | 5/30/2021 | | $* |

10. On January 25, 2019, Luxottica filed its Objection, pursuant to which it objected to the Cure Notices on the grounds that (i) the Cure Notices did not accurately reflect the amounts necessary to cure the Debtors' prepetition default with respect to the Contracts; and (ii) Luxottica was not provided with adequate assurance of the Buyer's ability to adequately perform its obligations under the Contracts. Luxottica also reserved its right to modify, supplement and/or amend the Objection.

---

[5] The agreements between one or more of the Debtors and Luxottica that are identified on the Cure Notices are collectively referred to herein as the "**Contracts**," each being a "**Contract**").

## BASIS FOR THE OBJECTION

11. 11 U.S.C. § 365(b)(1) provides that a debtor may not assume an executory contract unless, at the time of assumption of such contract, the debtor:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the [debtor] to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arise from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses result from such default shall be compensated in accordance with the provision of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

*The Cure Notices do not propose to cure the pecuniary loss suffered by Luxottica as a result of the Debtors' default under the terms of the License Agreement*

12. The Cure Notices propose a total, collective cure payment of $884 to Luxottica with respect to all of the Contracts.

13. Prior to the Petition Date, one or more of the Debtors failed to remit $2,648,295 to Luxottica as required pursuant to the terms of the License Agreement.

14. On or around November 19, 2018, one or more of the Debtors failed to remit $198,553 to Luxottica as required pursuant to the terms of the License Agreement. As of the date of this Supplemental Objection, the Debtors have not remitted such funds to Luxottica.[6]

15. Pursuant to the terms of the *Final Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* (ECF No. 1436), the Debtors were required to remit certain funds to Luxottica, as calculated pursuant to the terms of the License Agreement, on January 25, 2019. While the Debtors have indicated that they did remit such funds (and Luxottica has no reason to believe that such statement is not true), Luxottica has been unable to confirm receipt of such funds prior to the filing of this Supplemental Objection.

16. As a result, as of the date of this Supplemental Objection, the total amount of pecuniary loss suffered by Luxottica, and that amount which the Debtors are required to cure prior to assumption of the Contracts, is no less than $2,846,848.[7]

*The Cure Notices do not provide adequate assurance that the Buyer will perform its obligations under the License Agreement post-assignment.*

17. The License Agreement provides that Sears is required to hold the cash, checks, and credit card receivables generated by Luxottica and delivered to Sears pursuant to the License Agreement (collectively, the "**Trust Funds**") in trust for Luxottica.

> [Sears] and [Luxottica] agree and intend for the funds reflected in the cash, checks and credit sales documents, minus the Company

---

[6] The Debtors have indicated that they will be remitting the $198,553 to Luxottica during the week of January 28, 2019. To the extent that the Debtors do in fact remit such amount to Luxottica, Luxottica will agree to reduce the required cure payment by such amount.

[7] Luxottica is currently exercising its right to assert the equitable defense of recoupment with respect certain funds due to the Debtors under the License Agreement and is prepared to reduce the required cure payment by such amount upon agreement with the Debtors that Luxottica can apply such funds to the amounts due and owing to Luxottica under the License Agreement.

> Fee, to be held by [Sears] for the benefit of and in trust for [Luxottica] and that title to such funds shall not pass to [Sears]."

License Agreement, § 9.3. Moreover, Sears collection with respect to the checks and credit card receivables delivered to it pursuant to the terms of the License Agreement is on behalf of Luxottica – not on Sears' own behalf. License Agreement, §§ 9.2(c); 9.3.

18. Post-assumption and assignment, the Buyer will be obligated to collect and hold the Trust Funds in trust for Luxottica's benefit.

19. Under Illinois law (which governs the License Agreement), the Buyer will be required to segregate the Trust Funds from its own funds. As stated by the Illinois Supreme Court, "There is a duty resting upon trustees not to commingle their own property with that of beneficiaries." *Winger v. Chicago Bank & Trust Co.* (1946), 394 Ill. 94, 111, 67 N.E.2d 265, 277. In a remarkably similar contractual situation, the U.S. District Court for the Northern District of Illinois, applying Illinois law, stated:

> The law presumes, when one turns over to another proceeds to be held and later returned, that the party receiving the proceeds holds them in a fiduciary capacity and may not commingle them; in other words, there is a presumption that an implied trust has been created. . . .
>
> Implicit in an implied trust is the understanding that the party receiving proceeds holds them in a fiduciary capacity and, consequently, is not to commingle them; to require this understanding to be explicit in all circumstances would render the concept of an implied trust meaningless.

*Goldblatt Bros.,* 33 B.R. at 1013, 1015.[8]

---

[8] In *Goldblatt*, Goldblatt Bros., Inc. ("**Goldblatt**") and Firestone Tire & Rubber co. ("**Firestone**") entered into a license agreement that authorized Firestone to operate tire centers within or near various Goldblatt retail stores. Firestone operated these outlets as an independent contractor, providing inventory, hiring employees, and managing each tire center. The license agreement provided that Goldblatt was to receive a royalty based on a percentage of the net sales generated by Firestone. At the close of each business day, Firestone transferred cash and credit receipts to the manager of the respective Goldblatt store. The license agreement required Goldblatt to return the funds to Firestone, after rendering an accounting of the sales generated and subtracting the royalty payment due to Goldblatt. Prior to filing for chapter 11 bankruptcy, Goldblatt commingled Firestone's funds with its own. The requirement to segregate is even more clear with respect to the Luxottica License Agreement, which expressly provides that the Trust Funds are to be held in trust for Luxottica's benefit.

20. Moreover, as the post-assignment recipient of the Trust Funds, the Buyer will have a fiduciary duty to avoid using the Trust Funds for the Buyer's own benefit. *Carter-Bernal v. Carter*, 2011 Ill. App. Unpub. LEXIS 244, *25 (App. Ct. Ill. 2011).

> Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith. Further, a trustee owes a fiduciary duty to serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's property for her individual benefit.

*Id.*

21. Prior to the Debtors being permitted to assume and assign the Contracts to the Buyers, Luxottica is entitled to adequate assurance that the Buyer is able and willing to comply with the terms of the License Agreement, including without limitation the immediate segregation of all Trust Funds received from Luxottica and the holding of such Trust Funds in a segregated account separate and apart from the Buyer's own funds.

## RESERVATION OF RIGHTS

22. The License Agreement includes a provision that grants Luxottica the right to accelerate the expiration date of that agreement at any point that there are less than 300 Designated Company Stores. License Agreement, ¶ 2.1. There are currently less than 300 Designated Company Stores and, as a result, Luxottica has the right – but not the obligation – to accelerate the expiration date of the License Agreement. As of the date of this Supplemental Objection, Luxottica has not exercised its right to accelerate the expiration date. However, Luxottica reserves all of its rights under the License Agreement and the other Contracts, including without limitation its right to accelerate the expiration date of the License Agreement, and further reserves its right to exercise such rights prior or subsequent to any assumption and/or assignment of the same. Nothing contained herein, nor any action or inaction of Luxottica with

respect to the Debtors, any Contract, or any filing with this Court, is intended to waive or otherwise amend any rights that Luxottica has under any of the Contracts, including the License Agreement.

23. Luxottica is still in the process of reviewing the Contracts and its books and records to identify any other potential defaults that require curing prior to any assumption of such Contract. Luxottica reserves the right modify, further supplement and/or amend its Objection as further information becomes available to it.

Respectfully submitted,

**THOMPSON HINE LLP**

Dated: January 26, 2019
Cleveland, Ohio

/s/ John C. Allerding
John C. Allerding (OH Bar No. 0087025)
    (*Pro Hac Vice*)
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114-1291
T: 216.566.5500 / F:  216.566.5800
John.Allerding@ThompsonHine.com

*Counsel for Luxottica Retail North America Inc.*