NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: 212-318-3000
Facsimile: 212-318-3400
David A. Rosenzweig

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| SEARS HOLDINGS CORPORATION., *et al.*, § | |
| § | Case No. 18-23538 (RDD) |
| Debtors. § | |
| § | (Jointly Administered) |
| § | |

## RESERVATION OF RIGHTS AND LIMITED OBJECTION OF LIVING SPACES FURNITURE, LLC

Living Spaces Furniture, LLC, a Delaware limited liability company ("Living Spaces"), hereby files this reservation of rights and limited objection with respect to its interest in property subject to the proposed Global Asset Sale Transaction, as defined and described in the Debtors' *Notice of Successful Bidder and Sale Hearing* and its attachments, at Bankr. Dkt. No. 1730.

### SUMMARY

1. Living Spaces owns and operates approximately twenty-two (22) retail furniture stores located in California, Arizona, Nevada, and Texas, including three (3) stores at premises that it subleases from the Debtors.

2. Living Spaces does not oppose the Global Asset Sale Transaction or the assumption and assignment of its subleases and related agreements to the proposed Buyer.

3. At this time, however, it is unclear whether the subleases, or related master leases and recognition agreements, will be assumed and assigned to the proposed Buyer or another

1

party pursuant to the Global Asset Sale Transaction.

4. Accordingly, Living Spaces files this statement and limited objection to assert and preserve its rights and interests under its subleases, recognition agreements, applicable state law, and Bankruptcy Code sections 363(e) and 365(h).

## BACKGROUND

5. Debtors Kmart Corporation and Sears, Roebuck, and Co. leased certain retail premises (collectively, the "Premises") located in Glendale, Arizona, Scottsdale, Arizona, and San Leandro, California under certain master leases (collectively, the "Master Leases"),[1] and with respect to which the Debtors subleased all or substantially all of the Premises to Living Spaces pursuant to certain subleases (collectively, the "Subleases").[2] The Premises appear to be identified by the Debtors as Store Nos. 30938, 61901, and 30969, respectively.

6. The Debtors, Living Spaces, and the landlords under the Master Leases are also parties to recognition agreements for each of the Premises (collectively, the "Recognition Agreements").[3]

7. Pursuant to the Recognition Agreements, the Debtors and the landlords recognized Living Spaces' rights and interests in the Premises under the Subleases and further

---

[1] The Master Leases appear to be identified on the Supplemental Cure Notice (as defined herein) as associated with Store Nos. 30938, 30969, and 61901. Bankr. Dk. No. 1774, Exhibit B-1, lines 447, 452, and 462.

[2] The Subleases include the: (i) May 14, 2015 Sublease by and between Living Spaces and Kmart Corporation with respect to the San Leandro Premises; (ii) December 19, 2012 Sublease Agreement by and between Sears, Roebuck and Co. and Living Spaces with respect to the Scottsdale Premises; and (iii) July 16, 2015 Sublease by and between Kmart Corporation and Living Spaces with respect to the Glendale Premises; each as amended, renewed, and/or extended.

[3] The Recognition Agreements include the: (i) August 18, 2015 Recognition Agreement by and between Ralph Dayan and Sarah Dayan (as Trustee of the Dayan Family Revocable Trust), Kmart Corporation, and Living Spaces, with respect to the San Leandro Premises; (ii) December 19, 2012 Recognition Agreement and Amendment of Lease by and between SL-RH Arizona, LLC, Sears, Roebuck and Co., and Living Spaces with respect to the Scottsdale Premises; and (iii) November 13, 2015 Recognition Agreement by and between GFI-Glendale Investments Limited Partnership and WGA-Glendale, Inc., Kmart Corporation, and Living Spaces with respect to the Glendale Premises.

agreed to recognize Living Spaces as the direct tenant or occupant if the Master Leases are terminated, including any termination or rejection in a bankruptcy proceeding commenced by the Debtors.

8. Living Spaces' interests in the Premises under the Recognition Agreements and Subleases were recorded pursuant to Memorandum of Sublease and Recognition Agreements (collectively, the "Memorandums") filed in the relevant state real property records for each of the Premises.[4]

9. On January 18, 2019, the Debtors filed a notice of the proposed Global Asset Sale Transaction with Transform Holdco, LLC, established by ESL Investments, Inc. (the "Buyer") along with a proposed Asset Purchase Agreement.[5] On the same date, the Debtors filed their *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Initial Cure Notice").[6] On January 23, 2019, the Debtors filed their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Supplemental Cure Notice").[7]

10. The Initial and Supplemental Cure Notices identify the contracts and leases that the Debtors may seek to assign to the Buyer and proposed cure amounts.

11. The Supplemental Cure Notice identifies the Master Leases. The Initial Cure

---

[4] The Subleases, Recognition Agreements and Memorandums are voluminous and, in respect of the Subleases and Recognition Agreements, contain confidential information and further may be subject to non-disclosure or confidentiality agreements. Living Spaces will submit true and correct copies of each Sublease, Recognition Agreement and Memorandum as soon as possible and, if necessary, subject to a sealing motion.

[5] Bankr. Dkt. No. 1730.

[6] Bankr. Dkt. Nos. 1731.

[7] Bankr. Dkt. No. 1774.

Notice identifies Living Spaces as a counterparty to contracts or leases subject to assignment, but does not identify the titles, names or types of contracts or leases.[8] As the Initial Cure Notice identifies both of the Debtor counterparties to the Subleases and Recognition Agreements (Kmart Corporation and Sears, Roebuck and Co.) and does not limit the contracts and leases subject to assumption by identifying specific contracts or leases with Living Spaces, Living Spaces assumes that the Initial Cure Notice is intended to include the Subleases and Recognition Agreements[9] with respect to each of the Premises. Indeed, the only agreements with Living Spaces listed by the Debtors in their Schedules of Assets and Liabilities are the Subleases.

12. Nevertheless, as of the dates of this Statement and Limited Objection, it is unclear whether the Debtors will, in fact, assume and assign the Master Leases, Subleases and Recognition Agreements. The assumption and assignment of the contracts and leases identified on the Notices remain subject to the Buyer's election.[10] In addition, the proposed Asset Purchase Agreement provides the Buyer with the right to designate certain leases (including the Master Leases) for assumption and assignment to the Buyer or another party after the Closing Date.

13. Living Spaces contacted the proposed Buyer regarding its intentions with respect to the Master Leases, Subleases, and Recognition Agreements, but, as of the date of this filing, Living Spaces has not received confirmation that the Master Leases and Subleases (and Recognition Agreements) will be assumed and assigned to the Buyer.

14. In light of the uncertainty as to which leases and contracts will ultimately be assumed and assigned, Living Spaces files this reservation of rights and limited objection.

---

[8] Bankr. Dkt. No. 1731, Exhibit A, line 4435.

[9] Living Spaces does not admit that the Recognition Agreements are executory contracts subject to assumption or rejection and instead reserves all rights in this regard.

## RESERVATION OF RIGHTS

15. Living Spaces expressly reserves all rights with respect to Living Spaces' interests in the Premises under the Recognition Agreement, applicable state law, and the Bankruptcy Code, including but not limited to the right to continued possession and occupancy of the Premises. Living Spaces further reserves its right to supplement this statement and limited objection based on additional facts or positions that may become known.

## LIMITED OBJECTION

16. Living Spaces objects to any sale or assignment of the Master Leases to the extent that the Debtors seek to sell or assign the Master Leases free and clear of Living Spaces' Subleases, Recognition Agreements and interests in the Premises.

### A. THE MASTER LEASES CANNOT BE ASSIGNED FREE OF LIVING SPACES' RIGHTS OF CONTINUED OCCUPANCY UNDER SECTION 365(h)

17. Section 365(h)(1) provides that a lessee or subtenant of real property can elect to retain its rights under any such lease upon the debtor's rejection of the lease. 11 U.S.C. § 365(h).[11]

18. An assumption and assignment of the Master Leases without a corresponding assignment of the Subleases would constitute an actual or de-facto rejection of the Subleases,

---

[10] The Successful Bid Notice and Asset Purchase Agreement provides that only those contracts and leases identified on Schedule 2.7(a) to the Asset Purchase Agreement will be assumed and assigned to the Buyer. As of the date of this pleading, Schedule 2.7(a) has not been filed on the docket or otherwise made available to Living Spaces.

[11] The legislative history makes it clear that Section 365(h) protects lessees where the debtor is either the lessor or the sublessor of the premises under a sublease as in this case:

> Subsection (h) protects real property lessees of the debtor if the trustee rejects an unexpired lease under which the debtor is the lessor *(or sublessor)*.

H.R. Rep. No. 95-595, at 349 (1977), reprinted in 1978 U.S.C .C.A.N. 5963, 6305-06 (emphasis added). *See In re Stalter & Co., Ltd.,* 99 B.R. 327, 331 (E.D. La. 1989) (lessee/sub-lessor's assumption of master lease and rejection of sublease under Section 365 would enable sublessee to exercise right to remain in possession under Section 365(h)).

triggering Living Spaces' rights under section 365(h).

19. Living Spaces hereby elects to retain its rights under the Subleases pursuant to section 365(h).

20. Further, Living Spaces' rights under section 365(h) are not affected by section 363(f).

21. Although courts have split on whether real property can be sold free and clear of rights under section 365(h), the better and majority view holds that any such rights are preserved. *See In re Churchill Properties III, Ltd.,* 197 B.R. 283 (Bankr. N.D. Ill. 1996) (the lessee's specific rights under Section 365(h)(1) trump the debtor's general right under Section 363(f) to sell real estate free and clear of interests; the lease and lessee's right, therefore, survive debtor's sale of the real estate under Section 363); *In re Taylor*, 198 B.R. 142 (Bankr. D.S.C. 1996) (same); *see also IDEA Boardwalk, LLC v. Revel Entm't Group (In re Revel AC, Inc.)*, 532 B.R. 216, 227 (Bankr. D.N.J. 2015) (tenants retain rights under section 365(h) notwithstanding a sale of the debtor's assets under section 363); *In re Haskell L.P.*, 321 B.R. 1, 9 (Bankr. D. Mass. 2005) (holding that if a court were to approve a sale free and clear of a leasehold interest pursuant to Section 363(f), "the provisions of § 365(h) would be eviscerated. In other words, the Debtor would be doing indirectly what it could not do directly, namely, dispossessing [lessee]."); *In re Samaritan Alliance, LLC*, 2007 WL 4162918, at *4 (Bankr. E.D. Ky. Nov. 21, 2007) (following *Haskell* and holding that 365(h) "is applicable in the context of a section 363(f) sale").[12]

---

[12] The Seventh Circuit Court of Appeals held in *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537 (7th Cir. 2003) that a debtor may sell its real estate free and clear of a lessee's rights. In that case, however, the lessee failed to object to the sale of the debtor's real estate free and clear of its lease under Section 363(f). Instead, the lessee only raised the issue after the sale was approved by the court and closed by the parties. Here, Living Spaces is objecting to the potential assumption and assignment of the Master Leases free and clear of its rights and, as shown below, none of the provisions of Section 363(f) are met.

22. In any event, with respect to the assignment of leases (opposed to the sale of real property subject to a lease), courts have consistently held that a sublessee's section 365(h) rights survive the assumption and assignment of the master leases notwithstanding section 363(f). *In re Zota Petroleum, LLC*, 482 B.R. 154, (Bankr. E.D. Va. 2012) (rejection of sublease in connection with an order approving the sale and assignment of leases under both section 363 and 365 was governed by section 365 rather than section 363 and therefore section 365(h) rights were preserved). *See also In re Reveal AC,* 532 B.R. at 227-28 ("nothing in section 363(f) trumps, supersedes, or otherwise overrides the rights of" tenants under section 365(h)); *In re Amicus Wind Down Corp.*, 2012 WL 604143, at *2 (Bankr. D. Del. Feb. 24, 2012) (subtenant retained right to possession under section 365(h) following debtor's rejection of the direct lease); *In re Samaritan Alliance, LLC*, 2007 WL 4162918 (section 363(f) sale did not extinguish section 365(h) rights of a subtenant arising from debtor's prior rejection of the sublease).

23. In the *Great Atlantic* case, this Court held that a subtenant did not have rights under section 365(h) in connection with a settlement agreement between the debtor and the landlord that provided for the <u>rejection</u> of a master lease and sublease. *In re The Great Atlantic & Pac. Tea Co., Inc.*, 544 B.R. 43, 56 (Bankr. S.D. N.Y. 2016). The Debtors' case here is much different and distinguishable in several respects. Most importantly, the Debtors, the landlords and Living Spaces are parties to Recognition Agreements. In *Great Atlantic*, the Court expressly noted the absence of a recognition agreement as a salient factor in its overall analysis. *Id.* at 46. Further, unlike in the *Great Atlantic* case, the Debtors are not <u>rejecting</u> the Master Leases. Rather, the Global Asset Sale Transaction seeks to assume and assign the Master Leases, which, this Court noted in *Great Atlantic*, would mean that "the debtor . . . ha[s] an effective continuing interest in leased property to which the subtenant's interest attached even after the debtor

assigned the overlease to a third party." *Id.* at 54. The same applies here where the Debtors may assume and assign the Master Leases: The Debtors retain an interest in the Master Leases; and they would not have any obligation to "surrender" the Premises to the landlord that is inconsistent with Living Spaces' right to continued possession from the Debtors under section 365(h). *Id*. at 53-54.

24. Finally, there is another reason why the Debtors cannot assume and assign the Master Leases free and clear of Living Spaces' interests. Assumption, assignment, and rejection of leases is governed by section 365 rather than section 363[13] and section 365 does not contain a provision analogous to section 363(f)—quite the opposite, section 365 expressly preserves tenant interests under subsection (h).[14]

### B. THE DEBTORS CANNOT ASSIGN THE MASTER LEASES FREE OF LIVING SPACES' INTERESTS UNDER THE RECOGNITION AGREEMENTS AND STATE LAW

25. Assuming *arguendo* that section 363(f) applies, section 363(f) does not permit the Debtors to transfer the Master Leases free and clear of Living Spaces' interests under the Subleases, Recognition Agreements and state law.

26. Bankruptcy Code section 363(f) authorizes a debtor to sell property free and clear of interests only if the debtor can establish one of the criteria set forth under subsections (1)–(5).

---

[13] *See Great Atlantic*, 544 B.R. at 55-56.

[14] It bears noting that the Buyer is comprised of the principal insider of the Debtors. Insiders, in particular, should not be able to use a sale under section 363 as an end-run around the benefits afforded sub-lessees under Section 365(h) by attempting to have the Master Leases assumed and assigned free and clear of the Subleases as opposed to assumed by the Debtors in a chapter 11 plan. The insiders, through the Buyer, should not be able to do "indirectly what they could not do directly" as the Debtors under section 365 in a chapter 11 plan. See *Haskell*, 321 B.R. at 9 (holding that a debtor should not be permitted to do "indirectly what it could not do directly" by selling property free and clear as a means of avoiding a lessee's Section 365(h) protections); *see also In re Bidermann Indus. U.S.A., Inc.,* 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) (holding that "[s]ales to fiduciaries in chapter 11 cases … necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse") (citations omitted).

8

11 U.S.C. § 363(f)(1)–(5).[15]

27.    None of these criteria can be met with respect to Living Spaces' interests.

28.    Section 363(f)(1) is not met since the Subleases, Recognition Agreements, and applicable state law (California and Arizona) do not permit the Debtors to sell or assign their interests in the Master Leases free and clear of Living Spaces' interests. It is boilerplate law that a purchaser takes property subject to preexisting recorded interests.[16] The Memorandums put any potential purchaser on notice of Living Spaces' interest in the Premises under the Recognition Agreements and Subleases. *See In re Patriot Place, Ltd.,* 486 B.R. 773, 817 (Bankr. W.D. Tex. 2013) (holding that similar provision in lease agreement meant that leased property could not be sold under applicable nonbankruptcy law free and clear of the tenant's leasehold interest). Similarly, state law recognizes that an assignment of a master lease is subject to the terms of the sublease.[17]

29.    Section 363(f)(2) is not met since Living Spaces does not consent to any sale or assignment free and clear of its interests.

30.    Section 363(f)(3) is not applicable since Living Spaces' interest is not a lien.

---

[15] Although the *Great Atlantic* opinion held that a lease could be sold free and clear of a sublease under section 363(f), the Court's holding was based on the finding that the subtenant did not have an interest in the master lease since the master lease had been rejected. *Great Atlantic*, 544 B.R. at 56. This is not the case here in light of the Recognition Agreements and the fact that the Master Leases would be assumed and assigned—not rejected.

[16] *See* Cal. Civ. Code § 1214; *In re Daigle*, 2008 WL 11337933, at *6 (S.D. Cal. Jul. 14, 2008); Ariz. Rev. St.. § 33-411-412; *Valley Nat'l Bank of Ariz. v. Avco Dev. Co.*, 480 P. 2d 671, 676 (Ct. App. Ariz. 1971) (purchaser takes mortgage subject to recorded interests); *Schatt-Ajax Inds. v. Churchill,* 411 P.2d 457, 450 (Ct. App. Ariz. 1966) ("A mortgage duly recorded bespeaks notice" and therefore a purchaser that "fails to make inquiry as to title" does so "at his peril.").

[17] See 7 Miller & Starr, CALIFORNIA REAL ESTATE, § 19.67 at p. 178 ("Upon tenant's assignment of the master lease, the assignee receives the lessee's interest **subject to the terms of the sublease.**") (citing cases); *Scott v. Mullins*, 211 C.A.2d 51, 57 (Cal. Ct. App. 1962) (lessee/sublessor's assignment of master lease to assignee "has no bearing on a sublessee's right to enforce covenants in the sublease."). *See also Intergalactic, Inc. v. LNN Enterprises, Inc.*, 2007 WL 5462297 (Ct. App. Ariz. Jul. 10, 2007) (subtenant continued to occupy premises under sublease notwithstanding the sale of the property and termination of the master lease).

31. Section 363(f)(4) is irrelevant since Living Spaces' interest is not and cannot be in bona fide dispute.

32. Finally, Section 363(f)(5) is not met since Living Spaces' could not be compelled to accept money satisfaction of its interests. Living Spaces is aware of no authority under California or Arizona law that would permit the Debtors to compel Living Spaces to accept monetary satisfaction for its interests, particularly in light of the Recognition Agreements, recorded Memorandums, and the absence of a buy-out or liquidated damages clause in the Subleases.[18] Indeed, the Recognition Agreements expressly provide that their terms are binding on "successors and assigns" and further survive termination of the Master Leases.[19]

### C. IN THE ALTERNATIVE, LIVING SPACES IS ENTITLED TO RETAIN POSSESSION OF THE PREMISES AS ADEQUATE PROTECTION

33. Living Spaces requests adequate protection under Bankruptcy Code section 363(e) in the form of continued possession of the Premises under the terms of the Subleases and Recognition Agreements to the extent that the Debtors seek to assume and assign the Master Leases without also assuming and assigning the Subleases and Recognition Agreements.

34. Indeed, courts have frequently held that "adequate protection" in the context of an

---

[18] *Compare In re MMH Automotive Group LLC*, 385 B.R. 370 (Bankr. S.D. Fla. 2008) (holding that Section 365(f)(5) applied to the facts in that case because the lessee had agreed in the applicable lease to monetize the value of its leasehold interest through a cash "buy-out" provision). Unlike *MMH Automotive*, the Subleases here do not contain any cash "buy-out" or similar provision providing for the monetization of Living Spaces leasehold interest.

[19] Courts have consistently held that interests in real property intended to bind successors and assigns cannot be extinguished pursuant to Bankruptcy Code sections 363(f)(1) or (5) or 365. *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 218 (5th Cir. 2013) (bankruptcy court could not sell property free and clear of a covenant running with the land); *Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir. 1994) (covenant could not be extinguished under section 363); *In re Banning Lewis Ranch*, 532 B.R. 335, 346-47 (Bankr. D. Col. 2015) (property cannot be sold free and clear of covenants); *In re Oyster Bay Cove,* 196 B.R. 251, 255 (E.D.N.Y. 1996) ("a sale 'free and clear of liens and other interests' has no impact on restrictions of record that run with the land."); *Skyline Woods Homeowners Ass'n. v. Broekemeier*, 758 N.W.2d 376, 393-93 (Neb. 2008) ("The courts addressing whether a bankruptcy trustee may sell property of an estate free and clear of restrictive covenants under § 363(f) have all concluded that such a sale is not permitted."). *See also In re Todd*, 118 B.R. 432, (Bankr. D. S.C. 1989) (holding that Bankruptcy Code section 363 "affirmatively requires protection" of a right of first refusal).

interest in a lease or sublease means the right of the tenant or subtenant to remain in possession of the property at issue. *Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 711-12 (S.D.N.Y. 2014); *In re Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 899-900 (9th Cir. 2017); *In re Qualitech Steel Corp. & Qualitech Steel Holdings Corp.*, 327 F.3d 537, 548 (7th Cir. 2003).

35. In light of Living Spaces' investments in the Premises and ongoing substantial retail operations on the Premises, continued possession is the only means of protecting Living Spaces' interests.[20]

36. Living Spaces cannot otherwise be adequately protected, as required under Section 363(e) of the Bankruptcy Code, and the Court should therefore deny the relief sought to the extent it seeks to assume and assign the Master Leases free and clear of the Living Spaces' interests under the Subleases and Recognition Agreements. *See Haskell*, 321 B.R. at 9-10 (holding that because lessee's interests could not properly be monetized and that lessee was unlikely to receive any proceeds of the sale, the attachment of its interests could not "constitute adequate protection for its interest … [and] adequate protection [could] only be achieved through continued possession of the leased premises").

---

[20] The Court in the *Great Atlantic* opinion held that the subtenant in that case was not entitled to adequate protection because the debtor was <u>rejecting</u> the master lease (and adequate protection rights do not exist for lessees of rejected leases) and, in addition, if viewed as a sale of the master lease to the landlord, the subtenant had no interest in the master lease. *Id*. at 56. Here, the difference is that (a) the Debtors are assuming and assigning (not rejecting) the Master Leases and (b) unlike the subtenant in *Great Atlantic*, Living Spaces, the Debtors and landlords have executed the Recognition Agreements and Living Spaces has recorded its interests.

WHEREFORE, Living Spaces respectfully requests that the Court: (i) deny the relief sought in the Global Asset Sale Transaction to the extent the Debtors seek to sell, assume and assign the Debtors' Master Leases free and clear of Living Spaces' interests; and (ii) grant Living Spaces any other relief to which it is entitled at law or in equity.

Dated: New York, New York
January 26, 2019

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ David A. Rosenzweig*
David A. Rosenzweig
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: 212-318-3000
Facsimile: 212-318-3400
david.rosenzweig@nortonrosefulbright.com

Bob B. Bruner
1301 McKinney, Suite 5100
Houston, TX 77010
Telephone: 713-651-5216
Facsimile: 713-651-5246
bob.bruner@nortonrosefulbright.com

**ATTORNEY FOR LIVING SPACES FURNITURE, LLC**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on January 26, 2019 through the Court's CM/ECF System on all parties registered to receive service through the Court's CM/ECF system and was caused to be served in accordance with the *Order Approving Global Bidding Procedures and Granting Related Relief* entered November 19, 2018 (Docket No. 816) and the service requirements established thereby.

*/s/ David A. Rosenzweig*
David A. Rosenzweig