**THOMPSON HINE LLP**
Curtis L. Tuggle
Jonathan S. Hawkins
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Phone: 212.344.5680
Fax: 212.344.6101

*Counsel for Virginia Surety Company, Inc.*

**Hearing Date**: Feb. 4, 2019
**Hearing Time**: 10:00 a.m. (EST)
**Objection Deadline**: January 26, 2019

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: | : | Chapter 11 |
| SEARS HOLDINGS CORP., *et al.*,[1] | : | Case No. 18-23538 |
| Debtors. | : | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF VIRGINIA SURETY COMPANY, INC. TO DEBTORS' MOTION FOR APPROVAL OF GLOBAL ASSET SALE TRANSACTION**

Virginia Surety Company, Inc. ("VSC"), by and through counsel, hereby files this limited

objection and reservation of rights to the Debtors' Motion for Approval of Global Asset Sale

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626).

Transaction Pursuant to the Global Bidding Procedures Order, Notice of Filing of Global Process

Letter, Notice of Successful Bidder and Sale Hearing, and Notices of Cure Costs and Potential

Assumption and Assignment of Executory Contracts and Unexpired Leases (Dkt. Nos.  816, 862,

1730, and 1731 respectively).  Additionally, VSC reserves all rights as they pertain to any default

that may arise under any Indemnity Agreement (as that term is defined below), notwithstanding

any provision in the sale order in the form Debtors presently propose (Dkt. No. 1730, Ex. B; as

proposed or ultimately adopted, the "Sale Order").

## BACKGROUND

1.        Debtors filed their voluntary petitions for relief on October 15, 2018 (the "Petition

Date").  On November 1, 2018, the Debtors filed a Motion for the Approval of Global Bidding

Procedures (Dkt. No. 429) which the Court approved on November 16, 2018.

2.         On January 18, 2019, the Debtors filed their Notice of Successful Bidder and

Sale Hearing (Dkt. No. 1730), designating Transfor Holdco, LLC ("Buyer") as the buyer for

substantially all of Debtors' assets pursuant to a certain asset purchase agreement ("APA").

3.        Included within the meaning of the "Acquired Assets" in the APA are certain

insurance proceeds; specifically, the APA purports to convey from Debtors to Buyer "any and all

insurance proceeds, warranty proceeds, condemnation awards or other compensation in respect

of loss or damage to the Business or any Acquired Asset (and any right or claim of Sellers to any

such proceeds, awards or other compensation), in each case, to the extent relating to a casualty

occurring prior to, on or after the date hereof, and whether received prior to, on or after the

Closing Date . . ."  APA § 2.1(q).

4.      Although the Buyer's post-closing entitlement to insurance proceeds appears to be addressed by this provision, the APA is unclear with respect to whether the Debtors' insurance policies are themselves Acquired Assets.

5.      VSC provides contractual liability insurance policies for debtors, Sears Protection Company, Sears Protection Company (Florida) ("Protection Company Debtors") in connection with certain designated service contracts that Protection Company Debtors may, from time to time, sell to its customers for the service and repair of Debtors' products (collectively, the "Policies").    The Policies cover "Claims" for the performance of such designated service contracts.

6.      The Policies are integrated with a concordant Indemnity Agreement dated December 6, 2004 (as thereafter restated and amended, the "Indemnity Agreement") between VSC and the Protection Company Debtors.  The Indemnity Agreement provides that in the event VSC suffers "Losses" in connection with the Policies, the Protection Company Debtors shall reimburse VSC.   The obligations that the Protection Company Debtors may owe VSC by virtue of the Indemnity Agreement are secured with a letter of credit in favor of VSC.

7.      Neither the Policies nor the Indemnity Agreement appear to be identified in any of Debtors' lists of executory contracts that may be assumed and assigned.  *See* Dkt. Nos. 1730 and 1731.   However, out of an abundance of caution, and based on Debtors' purported right to modify such lists, VSC files this limited objection and reservation of rights in order to cause any issues related to the Policies and/or Indemnity Agreement to surface now, rather than after entry of any Sale Order that Debtors or Buyer may purport binds VSC or exculpates any party for the obligations that may come due under the Indemnity Agreement.  Specifically, whether listed on an executory contract schedule or not, the Policies may not be assumed and assigned and, in any

event, assumed and assigned without the rights VSC has under the Indemnity Agreement remaining intact.

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

8.      VSC files this limited objection and reservation of rights because (a) VSC is unable to determine whether Debtors seek to assign the Policies and/or Indemnity Agreement to Buyer under the APA; (b) the Policies and Indemnity Agreement must be assumed *cum onere*, if at all; (c) the Policies may not be assigned without VSC's express consent, which has not been sought or given; (d) the determination of premiums that may be due should occur at the time of assignment, not in advance, particularly in light of the terms of the proposed Sale Order; and (e) VSC should not be required to unilaterally resolve any ambiguity in the APA concerning what entity may or may not be entitled to receive the proceeds of any of the Policies post-closing.

## LEGAL ARGUMENT

**A.      The Policies and Indemnity Agreement Must be Assumed *Cum Onere***

9.      A party to an executory contract may not accept the benefits of such contract without also assuming the burdens thereof.  *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "[i]t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'"); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other

party."); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *Bhushan v. Loma Alta Towers Owner's Ass'n, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *see also*, *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "[a]ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

10.    Integrated agreements are susceptible to this rule. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269

(E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract").

11.     The Policies and Indemnity Agreement must be construed in this fashion, and Debtors, if they intend to assume and assign the Policies, must be required to pay not only all premiums due thereunder, but also honor the obligations set forth in the Indemnity Agreement.

## B.     The Policies May Not be Assigned Without VSC's Consent

12.     Under Section 365(c)(1)(A) and (B) a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance form or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment.

13.     Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins.* Co., 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).  Insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage

for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Policies cannot be assigned without the prior written consent of VSC.

**CONCLUSION**

14.    For the reasons set forth herein, VSC hereby submits this limited objection and reservation of rights.

Dated: January 26, 2019

/s/ Curtis L. Tuggle
Curtis L. Tuggle
Jonathan S. Hawkins
**THOMPSON HINE LLP**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Phone: 212.344.5680
Fax: 212.344.6101

*Counsel for Virginia Surety Company, Inc.*