GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Tel:   (617) 482-1776
Fax:   (617) 574-4112
Douglas B. Rosner, Esq.

885 Third Avenue, 18th Floor
New York, New York 10022
Tel:   (212) 878-6900
Fax:   (212) 878-6911
Trevor R. Hoffmann, Esq.

*Counsel to Cape Town Plaza LLC and
New Westgate Mall LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF CAPE TOWN PLAZA LLC AND NEW WESTGATE MALL LLC TO (I) ENTRY OF THE PROPOSED SALE ORDER AND (II) THE DEBTORS' PROPOSED CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN <u>CONNECTION WITH GLOBAL SALE TRANSACTION</u>**

Cape Town Plaza LLC and New Westgate Mall LLC (each a "<u>Landlord</u>" and collectively, the "<u>Landlords</u>") hereby file this limited objection (the "<u>Limited</u> <u>Objection</u>") to the proposed sale order, the potential assumption and assignment of Landlords' leases and the cure amounts proposed by the above-captioned debtors (the "<u>Debtors</u>") in the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* [Docket No. 1731] (the "<u>Cure Notice</u>"). In further support of this Limited Objection, the Landlords state as follows:

## BACKGROUND

1. On January 18, 2019, the Debtors filed a *Notice of Successful Bidder and Sale Hearing* (the "Sale Notice") [Docket No. 1730], in which the Debtors declared Transform Holdco, LLC (the "Buyer"), to be the successful bidder to acquire substantially all of the Debtors' assets.

2. The Sale Notice contemplates that the Debtors will assume and assign their leasehold interests in the certain unexpired, nonresidential real property leases, potentially including the Leases (defined below), to the Buyer[1] pursuant to Section 365 of the Bankruptcy Code.

3. Each Landlord is a party to the following unexpired, nonresidential real property leases (each a "Lease" collectively, the "Leases")

    a. Cape Town Plaza LLC and Kmart Corporation, as tenant, are parties to that certain lease dated June 29, 1972, as amended from time to time, for premises located at Capetown Plaza, Hyannis, Massachusetts (the "Capetown Lease"); and

    b. New Westgate Mall LLC and Sears, Roebuck and Co., as tenant, are parties to that certain lease dated August 2, 2000, as amended from time to time, for premises located at the Westgate Mall, Brockton, Massachusetts (the "Westgate Lease").

---

[1] For the purposes of this Objection, such term shall include Buyer, its designees, assignees and their respective affiliates, as applicable.

4838-8677-8758

4.      Each Lease is a lease "of real property in a shopping center" within the meaning of Section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

## CURE OBJECTION

5.      In the Cure Notice, the Debtors assert that the cure amounts with respect to the Capetown Lease and Westgate Lease as follows:

| Lease | Proposed Cure Amount |
| --- | --- |
| Capetown Lease | $0.00 |
| Westgate Lease | $0.00 |

6.      As of the date hereof, each Landlord submits that the current arrearages under its Lease are as follows:

   a.   Capetown Lease - The actual arrearages currently owed under the Capetown Lease total at least $37,657.01, representing (i) unpaid real estate taxes allocable to the Lease for the year 2018 in an amount of at least $33,816.41 and (ii) unpaid sewer charges allocable to the Lease for the year 2018 in an amount of at least $3,840.60. See Exhibit A hereto.

   b.   Westgate Lease - The actual arrearages currently owed under the Westgate Lease total at least $4,824.14, representing unpaid real estate taxes allocable to the Lease for the year 2018. See Exhibit B hereto.

7.      In addition to arrearages, the Debtors are required to take into account the actual pecuniary losses suffered by the Landlords resulting from the Debtors' defaults under the Leases. Each Landlord is entitled to be reimbursed under the terms of its Lease, and pursuant to Section 365(b)(1)(B) of the Bankruptcy Code[2], for its actual pecuniary losses, including, but not limited to, attorneys' fees and costs incurred by each in response to and directly resulting from the

---

[2] 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code")

3

4838-8677-8758

Debtors' defaults and request to assume and assign the Leases as part of their contemplated sale process.

8. As of January 23, 2019, post-petition attorneys' fees and costs incurred in connection with (a) the Capetown Lease are at least $25,480.13 (the "Capetown Cure Claim"); and (b) the Westgate Lease are at least $21,269.00 (the "Westgate Cure Claim"). These amounts are subject to increase as and to the extent the Landlords incur additional attorney's fees and costs in these cases.

9. Taking the foregoing cure amounts in the aggregate, each Landlord submits that the minimum cure amount for its Lease, as of the date hereof, is as follows:

| Lease | Arrearages | Legal Fees and Costs | Minimum Cure Amount (as of 1/25/2019) |
|---|---|---|---|
| Capetown Lease | $37,657.01 | $25,480.13 | $63,137.14 |
| Westgate Lease | $4,824.14 | $21,269.00 | $26,093.14 |

10. In addition, the amounts of the Cure Claims remain subject to upward adjustment for amounts that are billed or become due under the Leases after the date hereof including, without limitation, any year-end additional rent true-up amounts and other reconciliations that may later be billed by the Landlord for, among other things, royalties, rents, utilities, taxes, insurance, fees, common area charges, promotional funds and percentage rent (the "Lease Reconciliations"). In paragraph 34 of Proposed Sale Order,[3] however, the Debtors contemplate funding a segregated account (the "Segregated True-Up Account") for each Landlord in an

---

[3] *See* proposed *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith and (IV) Granting Related Relief (*the "Proposed Sale Order"), attached as Exhibit B to the Sale Notice.

amount equal to the Debtors' expected obligations in respect of year-end adjustments. Similarly, the APA (i) provides that the Buyer shall not be responsible for paying the portion of any Lease Reconciliations that are attributable to the period prior to the closing of the sale, and (ii) caps Buyer's liability for Assumed Property Tax Liabilities at $135,000,000. *See* APA at §§ 2.1, 2.5. Additionally, both paragraph 36 of the Proposed Sale Order and Section 2.2 of the APA purport to eliminate Buyer's liability for "Excluded Asset-Sales Taxes" and "Excluded Asset-Reorganization Taxes" (as defined in the APA). *See* Proposed Order at ¶ 36(y); APA at § 2.2.

11.    Section 365 of the Bankruptcy Code and applicable law require the Debtors and Buyer to fully cure the Leases as a pre-condition to assumption and assignment. Accordingly, Section 2.5 of the proposed Asset Purchase Agreement (the "APA") must be revised to reflect Buyer's continuing obligations. The Debtors and affiliated Buyer cannot shift to the Landlords the risk of nonpayment of Lease Reconciliations to the extent the Segregated True-Up Account is not sufficient. The Debtors and affiliated Buyer should estimate these assumed liabilities between themselves and make any appropriate purchase price adjustments. The Buyer should then be liable to pay any Lease Reconciliations as and when they become due and payable under the Leases regardless of when they arose. This is especially important, since the Debtors are obtaining releases (and will have no funds available to fund shortfalls in the future). Additionally, Section 2.1 of the APA, which proposes to cap Assumed Property Tax Liabilities at $135,000,000, must be revised to strike the cap. Buyer is assuming obligations under the Leases, all of which require the tenant thereunder to pay its allocated portion of real estate taxes. Landlords should not have to assume the risk that aggregate real estate taxes might exceed the proposed cap. Similarly, Buyer cannot avoid curing amounts due under the Leases (if any) in connection with Excluded Asset-Sales Taxes or Excluded Asset-Reorganization Taxes, and Buyer's language purporting to do so must be stricken from Paragraph 36 of the Proposed Order.

12. Alternatively, if the Court approves the use of the Segregated True-Up Account as the means by which pre-closing Lease Reconciliations will be paid, the Landlords propose that each Segregated True-Up Account be funded in the amount of 120% of the anticipated 2018 true-up and reconciliation amounts for each Lease. Providing for reasonable cushions should at least reduce the risk that the Landlords will be saddled with underfunded accounts in the event true-ups and reconciliations exceed estimated amounts. For both the Westgate and Capetown Landlords, the Buyer shall continue to be liable to pay all taxes and maintenance of the leased premises pursuant to the Leases regardless of when the charges arose.

13. In addition to the monetary obligations that the Debtors must satisfy under Section 365 of the Bankruptcy Code, the Leases also provide that the Debtors must indemnify and hold harmless each Landlord with regard to existing claims as well as with regard to events which may have occurred before the assumption and assignment of the Leases but which are not made known to the Landlords (and possibly the Debtors) until after the assumption and assignment. Accordingly, the Debtors must be required to evidence, or obtain adequate insurance in order to guaranty (by way of their purchase of a "tail" or otherwise) that the indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for personal injuries at the Premises, where a Landlord is joined as a party defendant, damage and destruction to the Premises by the Debtors or their agents, and claims for environmental damage or environmental clean-up[4].

## ADEQUATE ASSURANCE

14. The only adequate assurance information that the Landlords and their counsel have received is (i) a three-page letter describing the basic structure of the Buyer's bid, (ii) a

---

[4] If the Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" insurance policy, this objection may be satisfied by proof of such insurance by the Debtors for the Landlords' locations.

chart identifying operating or GOB leases and properties, (iii) a form of occupancy agreement, and (iv) a form of lease assignment and assumption agreement. The letter discloses that the Buyer will be entering into a new line of credit for this transaction under which it will have a certain amount of availability, however, the same letter discloses that the Buyer is assuming a host of obligations under the APA, which obligations far exceed availability under the new line of credit. The Landlords have not been provided any projections that would lead Landlords to believe that the circumstances of the Debtors' finances will be any better, or any different, than they have been for the last months and years. Sears will be owned by the same sponsor fund, with the same management. Nothing has been provided that indicates the Debtors will not continue to lose hundreds of millions of dollars in the near future as they have done the last few months.

15. As contemplated in Sections 365(b)(3) and 365(f) of the Bankruptcy Code, the Landlords require that the following additional adequate assurance information be made available to the Landlords and their counsel before the assumption and assignment of the Leases:

- Pro forma financial statements for the proposed tenant and projections evidencing viability of the proposed tenant, along with supporting documentation and any financial support for its obligations (*e.g.*, a letter of credit or deposit supporting its rent obligations)[5];
- The proposed tenant's most recent business plan and cash flow projections for each lease/location;
- Any historical and current financial statements for the proposed tenant;
- The specific name of the proposed tenant and an organizational chart; and
- The specific intended use for the space.

---

[5] Buyer must comply with the requirements of section 365(l) of the Bankruptcy Code. Accordingly, paragraph 48 of the Proposed Sale Order should be revised to clarify that, notwithstanding section 2.1(o) of the APA (pursuant to which Buyer purports to "acquire" Debtors' rights in and to any Security Deposits (as defined in the APA)), all such Security Deposits shall remain in place with respect to any assumed and/or assigned Lease or Contract and used for the sole purpose set forth in the applicable Lease or Contract.

Adequate assurance of future performance is particularly important in a transaction such as the present one, in which a special purpose entity formed by the same fund that presently owns the Debtors will be the acquirer and/or assignee of the Leases.

16. Additionally, the APA purports to have the Seller assume and assign leases and contracts to the Buyer free and clear of all "Encumbrances" (which term includes rights of first refusal, rights of way, easements, and the like). *See, e.g.,* APA §§ 1.1 (definition), 2.1, 5.1(a)(i)(I), 5.2(c), 6.5(a). This is wholly inappropriate. While the Bankruptcy Code generally invalidates anti-assignment provisions, the Court may not re-write the terms of the Leases. *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) (holding that, "[s]hould the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere"); *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 24 (2d Cir. 1996) (same); *AGV Prod., Inc. v. MetroGoldwyn-Mayer, Inc.*, 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2000) (holding that, "[i]f an executory contract is assumed, it is said to be assumed cum onere, with all of its benefits and burdens"). To the extent the Leases contain Landlord options, rights of first refusal or are subject to easements or other interests that run with the land or are superior to the Debtors' leasehold interest, those Encumbrances must survive any assumption and assignment. This is especially true here where the Buyer is controlled by the same fund as the current owner. The Buyer is intimately familiar with all of the Lease terms and in choosing which Leases to retain has presumably recognized the continued existence of any Encumbrances that may exist.

17. Similarly, the Court should not grant the Sale Order with the current language contained in Paragraph 36 to the extent it seeks to modify and ignore provisions of the Leases regarding, among other things, use, alterations, go-dark periods or payment of taxes. Where, as here, the Debtors seek to assume and assign leases for non-residential real properties located in shopping centers, Bankruptcy Code section 365 requires, among other things, that assumption or

8

4838-8677-8758

assignment of such lease is subject to the provisions thereof, including any radius, use, location and exclusivity provisions under the lease; and that the assignment to the proposed assignee would not disrupt any tenant mix or balance in the shopping center. 11 U.S.C. §§ 365(b)(3), (f)(2).

## RESERVATION OF RIGHTS

18.     The Landlords reserve the right to supplement this Limited Objection with additional charges, obligations and costs (including attorney's fees and expenses) that may arise under any of the Leases prior to the effective date of any assumption of such Leases. Nothing herein shall be interpreted as consent by a Landlord to the assumption or assignment of a Lease and all objections and defenses to any request by Debtors to assume or assume and assign a Lease are expressly preserved.

## JOINDER

19.     The Landlords hereby join in any other objections to the sale, Cure Notice and Supplemental Cure Notices filed by other landlords or the Official Committee of Unsecured Creditors, to the extent not inconsistent with this Objection.

WHEREFORE, the Landlords respectfully request that the Court enter an order (i) allowing the Capetown Cure Claim in the amount of at least $63,137.14 (subject to adjustment to account for any charges under the Capetown Lease that become due after the date hereof), (ii) allowing the Westgate Cure Claim in the amount of at least $26,093.14 (subject to adjustment to account for any charges under the Westgate Lease that become due after the date hereof), (iii) providing that Buyer shall be liable to pay any and all Lease Reconciliations as and when they become due and payable under the Leases regardless of when they arose or, alternatively, requiring that the Debtors establish individual Segregated True-Up Accounts for the Capetown Landlord in an amount of 120% of historical 2017 true-up and reconciliation amounts, and that

9

4838-8677-8758

the Buyers shall remain liable for any shortfall for any and all accrued charges, reconciliations, indemnity obligations and other obligations under the Leases, whether or not such charges and obligations relate to a period of time prior to assignment of such Lease, and (iv) granting to the Landlords such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated:  January 28, 2019

/s/ Douglas B. Rosner
Douglas B. Rosner, Esq.
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA  02110-3333
Tel:  (617) 482-1776
drosner@goulstonstorrs.com

Trevor R. Hoffmann
GOULSTON & STORRS PC
885 Third Avenue, 18th Floor
New York, New York 10022
Tel:    (212) 878-6900
Fax:   (212) 878-6911
thoffman@goulstonstorrs.com

4838-8677-8758

## *EXHIBIT A*

**Aged Delinquencies**

**CAPE TOWN PLAZA LLC**
**1/22/2019**

| Invoice Date | Category | Source | Amount |
|---|---|---|---|
| **K-MART** | | | |
| 10/23/2018 | 178 | 3/12/18-6/13/18 Sewer | 1,473.96 |
| 11/27/2018 | 458 | 10/1-12/31/18 RE Taxes | 33,816.41 |
| 1/4/2019 | 178 | 6/30/18-8/21/18 Sewer | 2,366.64 |
| **K-MART Total:** | | | **37,657.01** |

4838-8677-8758

## *EXHIBIT B*

**Aged Delinquencies**

**WESTGATE MALL**
**1/22/2019**

| Invoice Date | Category | Source | Amount |
|---|---|---|---|
| 11/1/2018 | RETA | Real Estate Tax Anchor | $31,701.50 |
| | | Less Check Received | ($26,877.36) |
| **Total Due** | | | **$4,824.14** |

4838-8677-8758

GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Tel: (617) 482-1776
Fax: (617) 574-4112
Douglas B. Rosner, Esq.

885 Third Avenue, 18th Floor
New York, New York 10022
Tel: (212) 878-6900
Fax: (212) 878-6911
Trevor R. Hoffmann, Esq.

*Counsel to Cape Town Plaza LLC, New Westgate Mall LLC,*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Joint Administration Pending) |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January, 2019, I caused a copy of the foregoing pleading to be served via (i) overnight mail delivery to the Chambers of the Honorable Judge Robert D. Drain, and (ii) via ECF, electronic mail or first-class mail to all parties on the attached service list.

/s/ Douglas B. Rosner
Douglas B. Rosner, Esq.
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110-3333
Tel: (617) 482-1776
drosner@goulstonstorrs.com

4815-6040-3590

## Service List

**EMAIL/ECF**

I. **Bid Notice Parties**

a. Debtors
   Rob Riecker: rob.riecker@searshc.com
   Luke Valentino: luke.valentino@searshc.com
   Mohsin Meghji: mmeghji@miiipartners.com
   General Counsel: counsel@searshc.com

b. Debtors' counsel
   Ray Schrock, Esq.: ray.schrock@weil.com
   Jacqueline Marcus, Esq.: jacqueline.marcus@weil.com
   Garrett A. Fail, Esq.: garrett.fail@weil.com
   Sunny Singh, Esq.: sunny.singh@weil.com
   Ellen J. Odoner, Esq.: Ellen.Odoner@weil.com
   Gavin Westerman, Esq.: Gavin.Westerman@weil.com

c. Debtors' investment banker:
   Brandon Aebersold and Levi Quaintance: project.blue.rx@lazard.com

II. **Buyer Parties**

a. Buyer
   Kunal S. Kamlani: kunal@eslinvest.com
   Harold Talisman: harold@eslinvest.com

b. Counsel
   Christopher E. Austin, Esq.: caustin@cgsh.com
   Benet J. O'Reilly, Esq.: boreilly@cgsh.com
   Sean A. O'Neal, Esq.: soneal@cgsh.com

III. **Consultation Parties**

a. Bank of America
   Paul Leake, Esq.: Paul.Leake@skadden.com
   Shana Elberg, Esq.: Shana.Elberg@skadden.com
   George Howard, Esq.: George.Howard@skadden.com

b. Wells Fargo Bank
   Kevin J. Simard, Esq.: ksimard@choate.com
   Jonathan D. Marshall, Esq.: jmarshall@choate.com

    c.       Committee

            Ira S. Dizengoff, Esq.: idizengoff@akingump.com
            Philip C. Dublin, Esq.: pdublin@akingump.com
            Abid Qureshi, Esq.: aqureshi@akingump.com
            Sara L. Brauner, Esq.: sbrauner@akingump.com

**IV.**    **US Trustee**

    (served electronically)
    U.S. Federal Office Building
    201 Varick Street, Suite 1006
    New York, NY 10014
    Paul Schwartzberg
    Richard Morrissey

**Via First Class Mail**

Transform Holdco, LLC
c/o ESL Partners, Inc.
Attention: Kunal S. Kamlani and Harold Talisman
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154

Sears Holdings Corporation
Attn: General Counsel
3333 Beverly Road
Hoffman Estates, IL 60179

Cleary Gottlieb Steen & Hamilton LLP
Attention: Christopher E. Austin,
Benet J. O'Reilly and Sean A. O'Neal
One Liberty Plaza
New York, NY 10006

4815-6040-3590