**Hearing Date and Time: February 4, 2019 at 10:00am (ET)**
**Objection Date and Time: January 28, 2019 at 4:00pm (ET)**

Bruce S. Nathan, Esq.
Jeffrey J. Wild, Esq.
Eric S. Chafetz, Esq.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York, 10020
Tel: (212) 262-6700
Fax: (212) 262-7402
E-mail: bnathan@lowenstein.com
           jwild@lowenstein.com
           echafetz@lowenstein.com

*Counsel to LG Electronics USA, Inc. and LG Electronics Alabama, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | Chapter 11 |
| SEARS HOLDINGS CORPORATION[1], *et al.* | Case No.: 18-23538 (RDD) |
| | Jointly Administered |
| Debtors. | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF LG
ELECTRONICS USA, INC. AND LG ELECTRONICS ALABAMA, INC. TO:
(A) THE GLOBAL ASSET SALE TRANSACTION; (B) NOTICE OF CURE COSTS
AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL
SALE TRANSACTION; AND (C) SUPPLEMENTAL NOTICE OF CURE COSTS
AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL
SALE TRANSACTION**

LG Electronics USA, Inc. ("LGEUS") and LG Electronics Alabama, Inc. ("LGEA," and together with LGEUS, "LG") hereby file their limited objection and reservation of rights (the "Limited Objection")[2] to: the (i) Global Asset Sale Transaction, as described and defined in the *Notice of Successful Bidder and Sale Hearing* (the "Notice of Successful Bidder")[Docket No. 1730]; (ii) *Debtors' Notice of Cure Costs And Potential Assumption And Assignment of Executory Contracts And Unexpired Leases in Connection With Global Sale Transaction* (the "Executory Contracts/Cure Cost Notice")[Docket No. 1731]; and (iii) *Supplemental Notice of Cure Costs And Potential Assumption And Assignment of Executory Contracts And Unexpired Leases In Connection With Global Sale Transaction* (the "Supplemental Executory Contracts/Cure Cost Notice", and together with the Executory Contracts/Cure Cost Notice, the "Cure Notices") [Docket No. 1774]. In support of this Limited Objection, LG respectfully represents as follows:

## INTRODUCTION

1. LG does not object to the approval of the Sale Motion. However, in order to ensure that LG's rights are preserved and protected, LG requires additional clarity and/or

---

[2] Counsel for LG is in discussions with counsel for the Debtors in an effort to resolve the issues raised in this Limited Objection and plans on continuing those discussions.

modifications of the Sale Order[3] and/or Asset Purchase Agreement and the Cure Schedules to address a few issues in connection with LGEUS' recoupment and setoff rights, and LG's executory contracts with the Debtors.

2.  **First**, the Sale Motion, Asset Purchase Agreement and Sale Order purport to allow the sale of substantially all of the Debtors' assets free and clear of all Encumbrances, which term is defined to include setoff and recoupment rights. It is improper for the Sale Order to approve the sale free and clear of setoff and recoupment rights, and, therefore, the definition of Encumbrances must be modified to exclude those rights and instead provide that the sale is explicitly subject to recoupment and setoff rights. This may be a non-issue, as any amounts that LGEUS owes Sears and Innovel Solutions Inc. ("Innovel") giving rise to recoupment and/or setoff rights may not even be included on the list of Specified Receivables that the buyer is purchasing. However, it is impossible for LGEUS to verify this as the list of Specified Receivables has not yet been publicly filed, and the Debtors have not responded to LGEUS' question concerning whether any amounts LGEUS owes Sears are in fact included on the list.

3.  **Second**, the $0 cure amount attributed to the Kenmore Supply Agreement is not technically correct because Sears owes LGEUS certain pre-petition and post-petition obligations related to Safety Stock (as defined in the Kenmore Supply Agreement) that could potentially give rise to a cure obligation. In addition, the $0 cure amount attributed to the MSA is incorrect because as of the Petition Date, Innovel owed LGEUS at least $160,668.70 under the MSA.

4.  **Third**, in the event the Kenmore Supply Agreement is rejected (or if assumed, certain types of breaches of that agreement occur), LGEUS should still be permitted to

---

[3] Capitalized terms not defined in this Introduction shall have the meaning ascribed to such terms later in this Limited Objection.

-3-

exercise the right to sell certain Kenmore branded products consistent with LGEUS' current rights (at a minimum through an implied license) under the Kenmore Supply Agreement. Accordingly, the Sale Order should be modified to preserve LGEUS' intellectual property rights so that the sale does not unfairly prejudice those rights.

5. **Finally**, LG cannot identify all of the contracts that the Debtors may assign to the Buyer based on the descriptions included in the Cure Notices. LG has reached out to the Debtors for additional information, but the information has yet to be provided. Until the Debtors provide the additional information, LG objects to the assignment of these contracts to the Buyer.

## BACKGROUND

6. Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), commenced voluntary chapter 11 cases on October 15, 2018 (the "Petition Date").

**I.    The Kenmore Supply Agreement**

7. LGEUS, Sears, Roebuck and Co. ("Sears"), Kmart Corporation ("Kmart"), and Sears Brands Management ("Sears Brands") are parties to that certain *Supply Agreement For Kenmore Branded Home Appliances* dated October 1, 2018 (the "Kenmore Supply Agreement").

8. Under the Kenmore Supply Agreement, Sears, as "Buyer," undertook certain obligations to LGEUS, as "Seller," including, but not limited to, Sears being required to: (a) provide various types of Forecasts[4], such as Final RAC Forecasts for Sears Branded Products in the RAC Product Category under ¶ 8.C (the "Forecast Obligations"); (b) place Import Orders

---

[4] All Capitalized terms used in paragraphs 8 and 9 that are not otherwise defined shall have the meanings ascribed to such terms in the Kenmore Supply Agreement.

-4-

based on the Final RAC Forecasts under that same provision (the "Import Obligations"); and (c) issue Purchase Orders to purchase any Safety Stock (as defined in the Kenmore Supply Agreement) delivered to LGEUS' U.S. Facility during a fiscal year by no later than March 31st of the following year (the "Safety Stock Obligations").

9. In the event of a breach of the Kenmore Supply Agreement, including, but not limited to, the Forecast Obligations, the Import Obligations and the Safety Stock Obligations, LGEUS had and has various remedies, including, but not limited to, the rights: (a) to sell Buyer Branded Products to third parties under ¶ 8.F (the "Default Sale Right"); and/or (b) to liquidate Safety Stock in accordance with ¶ 8.C.ii (the "Liquidation Right"). These rights would inure to the benefit of Debtors' estates as they would allow LGEUS to mitigate its damages in the event of a rejection of the Kenmore Supply Agreement.

**II. The Alliance Agreement**

10. LG Electronics, Inc., LGEUS, Sears, and Kmart were parties to that certain *Alliance Agreement for Home Appliances* dated May 19, 2008, as amended from time to time (collectively with all such amendments, the "Alliance Agreement"). The Alliance Agreement expired on its own terms on December 31, 2018. As of the Petition Date, Sears owed LGEUS $6,971,340.16 on account of goods sold and delivered to, and accepted by, Sears under the Alliance Agreement. As of the Petition Date, LGEUS also owes an undetermined amount to Sears under the Alliance Agreement, which would give rise to recoupment and/or setoff rights in favor of LGEUS.

**III. The Innovel Agreement**

11. LGEUS and Innovel are parties to that certain *Master Services Agreement* dated October 17, 2016 the ("MSA"). As of the Petition Date, Innovel owed LGEUS at least

$160,668.70 under the MSA. In addition, LGEUS owed sums to Innovel under the MSA as of the Petition Date, which gives rise to recoupment and/or setoff rights in favor of LGEUS. LGEUS and Innovel have also continued to do business with each other post-petition, which gives right to recoupment and/or setoff rights in favor of LGEUS.

### IV. The Notice Of Successful Bidder

12. On January 18, 2019, the Debtors filed the Notice of Successful Bidder identifying Transform Holdco, LLC (the "Buyer") as the winner of the auction. Exhibit B to the Notice of Successful Bidder includes an executed version of the Asset Purchase Agreement between the Debtors and the Buyer (the "Asset Purchase Agreement"). The Acquired Assets include the Acquired Receivables, which in turn is defined to mean: "(i) all Credit Card Accounts Receivable, (ii) all Pharmacy Receivables, (iii) the Specified Receivables, and (iv) the Warranty Receivables." *See* Asset Purchase Agreement at Art. 1, Section 1. The term Specified Receivables is defined to mean "accounts receivable set forth on Schedule 1.1(k)." *Id.* Schedule 1.1(k) has not been publically filed, and despite LGEUS' inquiry, the Debtors have yet to confirm whether any of LGEUS' receivables owing to Sears giving rise to their recoupment and/or setoff rights are even being purchased by the Buyer.

13. Pursuant to Section 2.1 of the Asset Purchase Agreement, the Acquired Assets (as defined in the Asset Purchase Agreement) are being sold free and clear of all Encumbrances[5] of any kind, nature or description and any Claims (as defined in the Asset

---

[5] Encumbrances are defined as:

> all mortgages, pledges, hypothecations, charges, liens, interests, debentures, trust deeds, claims and encumbrances of any type whatsoever (whether known or unknown, secured or unsecured or in the nature **of setoff or recoupment**, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, and whether imposed by agreement, understanding, Law, equity, or otherwise), including Claims, assignments

-6-

Purchase Agreement). As indicated in the definition of Encumbrances, the Buyer is purchasing the Acquired Assets free and clear of, among other things, setoff and recoupment rights and licenses.

14. Exhibit B[6] to the Notice of Successful Bidder includes a proposed *Order (I) Approving The Asset Purchase Agreement Among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free And Clear of Liens, Claims, Interests And Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith And (IV) Granting Related Relief* (the "Sale Order"). The Sale Order seeks approval of the Asset Purchase Agreement in its entirety, including the sale of the Acquired Assets free and clear of all Encumbrances, including setoff and recoupment rights and licenses. *See* Sale Order at ¶ 17.

## LIMITED OBJECTION

### I. The Debtors May Not Sell Free and Clear of Recoupment Rights.

15. Courts are clear that the Debtors may not sell their assets free and clear of LGEUS' recoupment rights. In *In re Folger Adam Security, Inc. v. DeMatteis/Macgregor, JV*, 209 F. 3d 252 (3rd Cir. 2000), the Court discussed a debtor's ability to sell assets free and clear of both recoupment and setoff rights. Regarding recoupment, the Court noted that:

---

by way of security or otherwise, security agreements and interests, conditional sales contracts or other title retention agreements, rights of first refusal, first negotiation or first offer, options to purchase or similar restrictions or obligations, instruments creating a security interest in the Acquired Assets or any part thereof or interest therein, and any agreements, leases, subleases, ***licenses***, occupancy agreements, options, easements, rights of way, covenants, conditions, restrictions, declarations, defects in title, encroachments, exceptions or other encumbrances adversely affecting title to the Acquired Assets or any part thereof or interest therein.

(emphasis added)

[6] The Sale Order (defined herein) appears to have been inadvertently annexed as Exhibit B to the Notice of Successful Bidder, but should have instead been annexed as Exhibit C.

-7-

> Recoupment . . . allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be setoff under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitation of setoff in bankruptcy would be inequitable.

*Folger at 260*. Accordingly, the Third Circuit held that "a right of recoupment is a defense and not an interest and, therefore, is not extinguished by a § 363(f) sale" *Id.* at 261; *see also*, *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003) ("recoupment is not a 'claim' within the meaning of the Bankruptcy Code ..."); *Hispanic Independent Television Sales, LLC n/k/a Hispanic Media Works v. Kaza Azteca America Inc.*, No. 10 CIV 932, 2012 WL 1079959, at *5 (S.D.N.Y. March 30, 2012) (same); *Formtech LLC v. Magna Powertrain USA, Inc. (In re Formtrech Industries, LLC)*, 439 B.R. 352 (Bankr. D. Del. 2010) (recoupment rights are defenses not extinguished under Bankruptcy Code section 363(f)).

16.     Accordingly, the Court may not approve the sale to the extent that it seeks to sell assets free and clear of LGEUS' recoupment rights.

## II. A Sale Free and Clear of Setoff Rights Is Not Permissible Under The Facts of These Chapter 11 Cases.

17.     Section 553 of the Bankruptcy Code provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case" provided certain conditions are met. *See* 11 U.S.C. § 553(a). Section 553 of the Bankruptcy Code "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Pereria v. United Jersey Bank*, 201 B.R. 644, 661 (S.D.N.Y. 1996); *see also Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164-65

-8-

(2d Cir. 1979)(setoff rights should be enforced "unless compelling circumstances . . ." require otherwise); *In re De Laurentiis Entertainment Group Inc.*, 963 F. 2d 1269 (9th Cir. 1992)("setoffs in bankruptcy have been generally favored and a presumption in favor of their enforcement exists); *In re Wiegand*, 199 B.R. 639 (W.D. Mich. 1996)(setoffs in bankruptcy are generally favored and a presumption in favor of their enforcement exists).

18. Section 553 "allows setoff of 'mutual' debts that 'arose before the commencement of the case.'" *Bennett Funding Group*, 146 F.3d 136, 139 (2d Cir. 1998) (emphasis in original). Setoff creditors have a favored position that extends to bankruptcy, *id.* at 139, and lower courts are "not required to deprive [a setoff creditor] of its [setoff] rights in order to increase the chance of recovery of equally innocent creditors." *Id.* at 141. As demonstrated, LGEUS has a valid right to setoff, and the Sale Motion should not be approved unless LGEUS' setoff rights are explicitly preserved.

19. In addition, Bankruptcy Code Section 363 only allows a sale free and clear if the conditions of Bankruptcy Code section 363(f) are met. Initially, the Debtors have not proven that they even meet one of the conditions of section 363(f) in order to sell free and clear of setoff rights. In the Sale Motion, the Debtors only make a general statement that to the extent any interests exist, the holder of such interest could be compelled to accept a monetary satisfaction of that interest. *See* Sale Motion, ¶ 49. Yet, aside from this general statement, the Debtors do not make an effort to meet their burden of proving that the LGEUS could be compelled to accept a monetary satisfaction of its setoff interests. Thus, the Court should disapprove any sale free and clear of the setoff rights on that basis alone.

20. Even if the Debtors did show that LGEUS could be compelled to accept a monetary satisfaction of its setoff rights, the Court should still prohibit or condition the sale on

the Debtors providing LGEUS with adequate protection of their interests. Bankruptcy Code section 363(e) requires the Court to condition or prohibit the proposed sale unless it provides adequate protection of LGEUS' setoff interests. *See e.g. Szmanski v. Wachovia Bank, N.A. (In re Szymanski)*, 413 B.R. 232, 241-42 (Bankr. E.D. Pa. 2009) (setoff is an interest entitled to adequate protection under 11 U.S.C. §363(e)). The need for that protection is particularly acute here. LGEUS believes that the Debtors are hopelessly insolvent (a key argument being made by the Official Committee of Unsecured Creditors in opposition to the sale). Following the proposed sale, the Debtors will have virtually no assets from which they could satisfy LGEUS' claims. Ironically, without appropriate adequate protection, the basis for a sale free and clear – that LGEUS could be compelled to accept monetary satisfaction – is completely meaningless.

21. As indicated earlier, the proposed sale to the Buyer is intended to be free and clear of all Encumbrances. The definition of Encumbrances in the Asset Purchase Agreement explicitly includes both setoff and recoupment rights. If the Debtors and the Buyer intend for the Sale Order to bar setoff claims pursuant to section 553, such application is contrary to the express provisions of section 553 and 363 of the Bankruptcy Code. Accordingly, the Sale Motion and Asset Purchase Agreement must not be approved unless the definition of Encumbrance is modified such that it no longer includes setoff and recoupment rights, which must be recognized under section 553 of the Bankruptcy Code.

### III. LGEUS' Limited Right to Sell Kenmore Marked Products.

22. In addition, while it appears that the Debtors may assume, and the Buyer may take an assignment of, the Kenmore Supply Agreement, based on the contract assumption procedures, there is still a chance that the Kenmore Supply Agreement could be rejected. If a rejection occurs, LGEUS has the right (at a minimum an implied license) under the Kenmore

Supply Agreement to directly sell certain Kenmore marked products under certain circumstances. For example, under LGEUS' Default Sale Right and Liquidation Right included in ¶ 9, *supra*, and/or under the Uniform Commercial Code or other applicable law, LGEUS could have the right to sell Kenmore branded products to third parties. LGEUS is concerned that because the sale is free and clear of Encumbrances, which includes licenses, that provision of the sale could be misinterpreted to extinguish LGEUS' legal right to sell Kenmore branded product under limited circumstances, which should be preserved in the Sale Order. Accordingly, the right of LGEUS to sell certain Kenmore marked products under those circumstances must be preserved, which will benefit all parties in interest because LGEUS will be able to mitigate its damages under the Kenmore Supply Agreement.

23. For these reasons, the Sale Order should be modified to make it clear that no provisions of the Kenmore Supply Agreement (such as the Forecast Obligations, the Import Obligations and/or the Safety Stock Obligations) and no legal rights of LGEUS under that agreement or any other agreement with respect to any past or future breach would be in any way extinguished or impaired by the Sale Order – for example, if the Buyer failed to comply with the Safety Stock Obligations by March 31, 2019 – and LGEUS would still have all of its legal rights and remedies, which would not be extinguished or in any way impaired by the Sale Order.

## V. Cure Notices

24. On January 18, 2019, the Debtors filed the Executory Contracts/Cure Cost Notice. The contracts related to LG in the Executory Contracts/Cure Cost Notice include the following:

| No. | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 4383[7] | SEARS HOLDINGS CORPORATION; SEARS, ROEBUCK AND CO. | LG | OEM PART SUPPLIERS | N/A | N/A | N/A | $0.00 |
| 4384[8] | INNOVEL SOLUTIONS, INC. | LG ELECTRONICS USA | MASTER SERVICES AGREEMENT | N/A | N/A | N/A | $0.00 |
| 4385[9] | A&E FACTORY SERVICE, LLC | LG ELECTRONICS ALABAMA, INC | NONE | 1/1/2016 | 1/1/2021 | CW2340703 | $0.00 |
| 4386[10] | A&E FACTORY SERVICE, LLC | LG ELECTRONICS ALABAMA, INC | NONE | 1/1/2016 | 1/1/2021 | CW2340703 | $0.00 |

---

[7] LG cannot identify this contract and has requested copy of the contract from the Debtors. To the extent that the contract is not provided, LG objects to the assumption and assignment of the contract. To the extent the contract relates to, or is part of, the Alliance Agreement, LGEUS is entitled to a cure claim of $6,971,340.16 that is also subject to LGEUS' recoupment and/or setoff rights. LGEUS also objects to any attempts by the Debtors to assume, or the Buyer to take an assignment of, the Alliance Agreement because the agreement expired by its own terms on December 31, 2018.

[8] LGEUS believes that this contract could be the MSA, but cannot be sure due to the lack additional information included in the Executory Contracts/Cure Cost Notice. To the extent that the contract is not provided, or LGEUS does not obtain confirmation that this contract is the MSA, LGEUS objects to the assumption and assignment of the contract. To the extent Innovel is assuming the MSA, LGEUS is entitled to a cure claim of $160,668.70 as of the Petition Date that is also subject to LGEUS' recoupment and/or setoff rights with respect to sums LGEUS owed Innovel as of the Petition Date. LGEUS also reserves all of its rights of recoupment and/or setoff with respect to LGEUS's post-petition transactions with Innovel.

[9] LG cannot identify this contract and has requested a copy of the contract from the Debtors. To the extent that the contract is not provided, LG objects to the assumption and assignment of the contract. To the extent the contract relates to, or is part of, the Alliance Agreement, LGEUS is entitled to a cure claim of $6,971,340.16 that is also subject to LGEUS' recoupment and/or setoff rights. LGEUS also objects to any attempts by the Debtors to assume, or the Buyer to take an assignment of, the Alliance Agreement because the agreement expired by its own terms on December 31, 2018.

[10] LG cannot identify this contract and has requested a copy of the contract from the Debtors. To the extent that the contract is not provided, LG objects to the assumption and assignment of the contract. To the extent the contract relates to, or is part of, the Alliance Agreement, LGEUS is also entitled to a cure claim of $6,971,340.16 that is subject to LGEUS' recoupment and/or setoff rights. LGEUS also objects to any attempts by the Debtors to assume, or the Buyer to take an assignment of, the Alliance Agreement because the agreement expired by its own terms on December 31, 2018.

25. On January 23, 2019, the Debtors filed the Supplemental Executory Contracts/Cure Cost Notice. The contracts in the Supplemental Executory Contracts/Cure Cost Notice related to LG include the following:

| No. | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure[11] Amount |
|---|---|---|---|---|---|---|---|
| 341 | SEARS, ROEBUCK AND CO, KMART CORPORATION, SEARS BRANDS MANAGEMENT CORPORATION | LG ELECTRONICS USA | SUPPLY AGREEMENT FOR KENMORE BRANDED HOME APPLIANCES | 10/1/2018 | 12/31/2020 | N/A | N/A |
| 342 | SEARS, ROEBUCK AND CO, KMART CORPORATION, SEARS BRANDS MANAGEMENT CORPORATION | LG ELECTRONICS USA INC. | SUPPLY AGREEMENT FOR KENMORE BRANDED HOME APPLIANCES | N/A | 12/31/2020 | N/A | N/A |

### A. The Debtors Must Cure All Defaults as a Condition to Assumption and Assignment.

26. LG's contracts identified on the Cure Notices may be executory contracts subject to Section 365 of the Bankruptcy Code.[12] However, LG cannot identify all of the contracts included in the Cure Notices due to the lack of specific information about many contracts included in the notices. One or more Debtors may be in monetary or non-monetary default under the agreements referenced in the Cure Notices. Accordingly, in order for the

---

[11] As discussed previously, in the event these contracts are the Kenmore Supply Agreement, the cure amount attributed to both of these contracts is not technically correct because Sears owes LGEUS certain pre-petition and post-petition obligations related to the Safety Stock, which are also subject to LGEUS' recoupment and/or setoff rights. These two contracts also appear to be the same agreement.

[12] Although the Bankruptcy Code does not define the term "executory contract," the Second Circuit Court of Appeals has defined an executory contract as one "on which performance remains due to some extent on both sides." *In re Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir. 1996) (*quoting Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S. Ct. 1188, 79 L.Ed.2d 482 (1984).

Debtors to assume any of the contracts, they must "cure[], or provide adequate assurance that [they] will promptly cure," all monetary defaults and non-monetary defaults under the contracts. *See* 11 U.S.C. §365(b)(1)(A). *See generally In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985) (upon assuming an executory contract or unexpired lease under section 365, the estate must "cure all defaults"); *see also In re Haven Eldercare*, LLC, 390 B.R. 762, 772 (Bankr. D. Conn. 2008) (holding that if there has been a default on account of an executory contract, the trustee or debtor-in-possession "may not assume such contract" unless the trustee or debtor-in-possession "cures, or provides adequate assurance that the trustee [or debtor-in-possession] will promptly cure, such default"). In addition, the Debtors' obligation to cure monetary defaults includes all pre-petition sums referenced in this Limited Objection and any post-petition amounts that may become past due or are otherwise owing as of the date of any actual assumption and assignment of any agreements, which are also subject to LGEUS' recoupment and/or setoff rights,

27. The obligation to cure all defaults under section 365(b)(1)(A) is not limited to monetary defaults and nonmonetary defaults likewise must be cured. *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 690 (Bankr. S.D.N.Y. 2009) (holding a debtor must "cure all material non-monetary defaults" and "if cure is impossible, contract cannot be assumed"); *see also In re New Breed Realty Enterprises, Inc.*, 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002) (same). As such, the Debtors must "cure[], or provide adequate assurance that [they] will promptly cure," all monetary defaults and non-monetary defaults before assuming any of LG's agreements included on the Cure Notices. *See* 11 U.S.C. § 365(b)(1)(A).

28. Accordingly, to the extent that the Debtors, as applicable, do not cure any defaults and/or do not provide LG additional information about any of the agreements referenced

on the Cure Notices, LG objects to such agreements' assumption by the Debtors and assignment to the Buyer.

## RESERVATION OF RIGHTS

29. This Limited Objection is filed with a full reservation of rights, including the right to supplement, modify or amend this Limited Objection, incorporate objections filed by other parties in interest in a subsequent joinder filed with this Court, and/or make such other and further objections to the Cure Notices or any assumption or assumption and assignment of the agreements referenced herein until such time as a final order is entered approving the cure costs with respect to the agreements. In addition, to the extent that any proposed cure amounts are not timely paid or other non-monetary cure obligations are not timely fulfilled, LG reserves all respective rights. Nothing set forth herein shall constitute a waiver, discharge or disallowance of any and all rights, claims, causes of action and defenses. In addition, nothing set forth herein shall be construed as a waiver, release, discharge or disallowance of any and all claims LG has against any of the Debtors.

## CONCLUSION

30. Based on the foregoing, the Sale Order should not be entered and the Asset Purchase Agreement should not be approved unless the aforementioned concerns raised by LG herein are addressed.

Dated: January 28, 2019                    **LOWENSTEIN SANDLER LLP**

/s/ *Bruce S. Nathan*
Bruce S. Nathan, Esq.
Jeffrey J. Wild, Esq.
Eric S. Chafetz, Esq.
1251 Avenue of the Americas
New York, New York, 10020

Tel: (212) 262-6700  
Fax: (212) 262-7402  
E-mail: bnathan@lowenstein.com  
jwild@lowenstein.com  
echafetz@lowenstein.com  

*Counsel to LG Electronics U.S.A., Inc. and LG Electronics Alabama, Inc.*

-16-