Peter M. Gilhuly, Esq.
Ted A. Dillman, Esq.
355 South Grand Ave, Ste. 100
Los Angeles, CA 90071-1560
and
Marc A. Zelina, Esq.
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Tel:    (212) 906-1200
Fax:   (212) 751-4864

*Attorneys for Simon Property Group, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| | : | **Chapter 11** |
| **In re** | : | |
| | : | |
| **SEARS HOLDINGS CORPORATION.,** *et al.,* | : | **Case No. 18-23538 (RDD)** |
| | : | |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SRe Holding Corporation, filed as Case No. 19-22031 (the "**Additional Debtor**"). The Additional Debtor filed a motion in its separate chapter 11 case requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

**LIMITED OBJECTION OF SIMON PROPERTY GROUP, L.P.
TO THE PROPOSED SALE AND ASSUMPTION AND ASSIGNMENT OF LEASES
AND ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

Simon Property Group, L.P., as landlord and/or managing agent ("**Simon**" or "**Landlord**"), through its undersigned counsel, submits this limited objection (this "**Limited Objection**") to (i) the Global Asset Sale Transaction, as defined in the Debtors' *Notice of Successful Bidder and Sale Hearing* [Docket No. 1730] (the "**Notice of Auction Results**") and (ii) the proposed assumption and assignment by the Debtors of the Potential Transferred Agreements, as defined in the Debtors' (x) *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "**Original Notice**") and (y) *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1774] (the "**Supplemental Notice**" and, together with Original Notice and the Notice of Auction Results, collectively, the "**Notices**"), in each case, filed in connection therewith. Concurrently herewith, Simon has filed its *Objection to Proposed Cure Amounts and Reservation of Rights* (the "**Cure Objection**"), which is incorporated herein by reference, and in support thereof and hereof, respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Simon (through its wholly-owned or partially owned subsidiaries) owns or operates numerous shopping centers located throughout the United States at which the Debtors lease space pursuant to written leases or operate in space located in Simon's properties under various reciprocal easement agreements (each a "**Lease**" or "**Reciprocal Easement Agreement**") (collectively, the "**Premises**"). Each of the Premises is within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*, 472 B.R. 666, 677 (Bankr. S.D.N.Y. 2012); *In re Joshua Slocum, Ltd.*, 922 F.2d 1081,

1086 (3d. Cir. 1990). Additional information regarding Simon and its relationship with the Debtors is included in the *Limited Objection and Reservation of Rights of Simon Property Group, L.P. to the Debtors' Motions for Approval of Bidding Procedures and Lease Rejection Procedures* [Docket No. 627] (the "**Bidding Procedures Objection**") previously filed by Simon in these chapter 11 cases.

2. Simon files this Limited Objection to address deficiencies and seek clarifications related to (a) the proposed sale transaction[2] with ESL Investments, Inc. and its affiliates (collectively, "**ESL**") under which ESL's newly formed entity, Transform Holdco, LLC, would act as the buyer ("**ESL Newco**" or "**Buyer**") and (b) any proposed order approving the sale and the assumption and assignment of leases and contracts (the "**Sale Order**"). These issues include:

> (a) appropriately addressing cure costs, as more fully discussed in Simon's concurrently filed Cure Objection, and ensuring that certain protections are included in the Sale Order that would require the Debtors and/or their Proposed Assignees to meet their ongoing cure obligations under the Leases, including on account of ongoing monetary and non-monetary obligations arising out of the Leases that may relate to the pre-assignment period, but are unbilled or unknown (the "**Surviving Obligations**"),[3] which may not be impaired in the assignment;
>
> (b) ensuring that certain clarifications that Simon negotiated in the Bidding Procedures Order (defined below) be carried over into the Sale Order to ensure that (i) any sale of real property would be subject to Restrictive Covenants (as defined below) and (ii) the proposed assumption and assignment may not operate to sever any master lease applicable to a property, but must be assumed and assigned *cum onere*;
>
> (c) ensuring that the terms of the Leases are respected as required by section 365(b) of the Bankruptcy Code and applicable law, and the Debtors' rights thereunder are not modified in connection with assignment through the exercise of designation rights or otherwise; and

---

[2] Including the asset purchase agreement filed with the Notice of Auction Results (the "**APA**", and the series of transactions contemplated thereby, the "**ESL Transaction**").

[3] The Surviving Obligations include, among other things, (a) payment of all accruing but unbilled charges under the Leases, including but not limited to all unpaid year-end and other adjustments and reconciliations, (b) payment of all regular or periodic adjustment of charges under the Leases, which were not due or had not been determined as of the date of this Limited Objection, (c) all insurance, indemnification, contribution and other contractual obligations under the Leases, and (d) any and all obligations arising on account of the Restrictive Covenants.

3

(d) requiring that the Debtors, ESL and/or ESL Newco or any other Proposed Assignee (as defined in the Notice of Auction Results) provide reasonable information in support of ESL Newco's and/or any other Proposed Assignee's ability to provide adequate assurance of future performance (which thus far has not been forthcoming).

3. Simon has proposed language set forth below to address these and various other issues related to the proposed Sale Order and the ESL Transaction, and will continue to seek to resolve and/or narrow these issues consensually in advance of the hearing. Further, any sale must be conditioned upon payment in full of the appropriate cure amount, as discussed further in Simon's concurrently filed Cure Objection.

4. Accordingly, Simon objects to the sale and assumption and assignment of the Leases to the proposed buyer and the relief requested unless and until the foregoing issues are appropriately addressed. Further, Simon reserves all rights in connection with the relief requested, including, without limitation, (a) as to any future designation of any Proposed Assignee beyond ESL Newco under the Designation Rights (as defined in the Notices) as to which no information has been provided, (b) as to any of its Leases not included in the Notices.

## BACKGROUND

### A. The Debtors' Chapter 11 Cases

5. On October 15, 2018, the Debtors commenced the above-captioned cases under chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**"). The Debtors are continuing in possession of their property and are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 24, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**"), of which Simon is a member and co-chair.[4] *See Notice of*

---

[4] Simon submits this Limited Objection in its capacity as a landlord and creditor of the Debtors, and not in its capacity as a member or co-chair of the Committee.

*Appointment of Official Committee of Unsecured Creditors* [Docket No. 276]. No trustee or examiner has been appointed in these chapter 11 cases.

**B. The Debtors' Bidding Procedures**

6. On November 1, 2018, the Debtors filed the *Debtors' Motion for Approval of Global Bidding Procedures* [Docket No. 429], which, among other things, requested approval of procedures for the auction of certain leases and the assumption and assignment of such leases.

7. On November 9, 2018, Simon filed the Bidding Procedures Objection, in which Simon requested, among other things, that the proposed form of Bidding Procedures Order be modified to include language preserving Simon's rights with respect to Restrictive Covenants and assignment of master leases.

8. On November 19, 2018, the Court entered an *Order Approving Global Bidding Procedures and Granting Related Relief* [Docket No. 816] (the "**Bidding Procedures Order**"), which included language addressing Simon's concerns with respect to Restrictive Covenants and the assignment of master leases. These modifications provide that, absent separate proceedings, any transfer of real property interests would be subject to all Restrictive Covenants and would not operate to sever or impair any master leases. Specifically, the Bidding Procedures Order includes the following provisions at paragraphs 50-51 (emphasis added):

> Nothing in this Order or the Global Bidding Procedures shall be deemed to authorize or shall be argued to permit the Debtors, their agents or advisors to take any action in connection with an unexpired master lease of nonresidential real property to which a Debtor is a party (each such lease, a "Master Lease") or other relief granted in this Order that is not in compliance with, or that would result in a default or breach under, such Master Lease, without either (a) an amendment to or waiver under such Master Lease, in accordance with its terms and all consents required for such amendment or waiver under such Master Lease or (b) the entry of a further order of the Court, in either case, permitting such action; ***provided that if any property subject to a Master Lease is included in a Sale Transaction and the Debtors or any other party seek to sever a Master***

5

> *Lease applicable to such property, such relief shall be sought by expressly stating that such party is seeking to sever such Master Lease and describing with particularity the Master Lease and any non-Debtor counterparty to that Master Lease will have fourteen (14) calendar days to file and serve an objection to such Sale Transaction*; provided further that all rights, remedies, and positions of all parties to any Master Leases are preserved.
>
> Nothing herein shall authorize, absent further order of the Court or agreement among the Debtors and the applicable non-Debtor counterparty, the sale of any real estate rights or assets free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land. *To the extent that the Debtors or any other party seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto*. All rights, remedies, and positions of all parties with respect to such relief are preserved.

The Debtors have not separately noticed or brought other proceedings seeking the foregoing relief.

C.    **The Sale Notice and Simon's Requests for Adequate Assurances**

9.    On January 18, 2019, the Debtors filed the Original Notice, which indicated, among other things, that certain leases of the Debtors, including certain Leases, may be assigned to a third party in connection with the proposed sale of certain of the go-forward stores to ESL. The Debtors concurrently filed the Notice of Auction Results, which identified ESL Newco "or any other person designated thereby" as the Proposed Assignee of the Leases. *See* Notice of Auction Results, ¶ 7. On January 24, 2019, the Debtors filed the Supplemental Notice, which provided a

6

list of additional contracts and leases (including certain of Simon's Leases) that may be designated for assumption and assignment in connection with the ESL Transaction.[5]

10. Simon has requested adequate assurance information from the Debtors and the Proposed Assignee regarding the financial wherewithal of the Proposed Assignee and the proposed use of the Premises necessary to enable Simon to evaluate (a) whether the Proposed Assignee is capable of meeting its rent and other monetary obligations under the Leases and (b) whether the proposed use of the Premises would be permissible under the Leases or would disrupt the tenant mix or balance in the shopping center.[6]

11. However, the only adequate assurance information that Simon has received to date has been two brief letters from ESL Newco (the "**ESL Adequate Assurance Letters**"), which include only the most cursory indications that the Buyer (a) expects to have availability under the New ABL Loan (as defined in the Notices), (b) intends to continue operating Sears with a smaller footprint of 425 stores and achieve synergies, and (c) provides four lines of entirely unsupported financial projections for ESL Newco's pro forma revenue, EBITDA, operating cash flow, and ABL availability (without any assumptions or support).[7] The information provided in the ESL Adequate Assurance Letters is entirely inadequate to demonstrate adequate assurance of future performance as required by sections 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code.

---

[5] Simon reserves the right to amend or supplement this Limited Objection, including in connection with the January 31, 2019 objection deadline applicable to the Supplemental Notice.

[6] The requested customary adequate assurance information included the following: (i) pro forma financial statements for the proposed tenant and projections showing the viability of the proposed tenant, along with supporting documentation and any financial support for its obligations (e.g., a letter of credit supporting its rent obligations to Simon); (ii) the proposed tenant's most recent business plan and cash flow projections for each Simon lease/location; (iii) any historical and current financial statements for the proposed tenant; (iv) the specific name of the proposed tenant and an organizational chart; (v) the specific intended use for the space; and (vi) evidence of the tenant's insurance coverage for each premises.

[7] Simon has not filed the ESL Adequate Assurance Letters since ESL has taken the position that these letters must remain confidential, notwithstanding the entirely cursory nature of the information provided.

**OBJECTION**

A.      **The Debtors Cannot Assign the Leases Without the Buyer Assuming the Surviving Obligations**

12.     The Debtors must assume and assign the Leases in their entirety and the assignee is subject to the terms and conditions thereof *cum onere*. *See*, *e.g.*, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188, 1199, 79 L. Ed. 2d 482 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere."); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part . . . The trustee must either assume the entire contract, cum onere, or reject the entire contract, shedding obligations as well as benefits."). This requires the Debtors to assume and assign (and the assignee to be responsible for) the Surviving Obligations under the Leases, whether monetary or non-monetary, for which the Debtors are responsible pursuant to the Leases – whether related to the pre- or post-assignment period. The Surviving Obligations include, among other things, (a) payment of all accruing but unbilled charges under the Leases, including but not limited to all unpaid year-end and other adjustments and reconciliations, (b) payment of all regular or periodic adjustment of charges under the Leases, which were not due or had not been determined as of the date of this Limited Objection, (c) all insurance, indemnification, contribution and other contractual obligations under the Leases, and (d) any and all obligations arising on account of the Restrictive Covenants. Each of the Surviving Obligations must be assumed and assigned to the Proposed Assignee (whether ESL Newco or another party). The Debtors and ESL are, of course, free to allocate responsibility for the Surviving Obligations amongst themselves as a matter of their contract, but should not be permitted to place the risk of either party defaulting on third parties – particularly where, as here, there is a substantial risk of administrative insolvency.

13. Accordingly, Simon objects to the transactions contemplated by the Notices to the extent that they purport to permit ESL Newco or any Proposed Assignee to avoid the Surviving Obligations related to ongoing monetary and non-monetary obligations arising out of the Leases that may relate to the pre-assignment period, but are unbilled or unknown.[8] To address this, Simon has proposed the following language for inclusion in the proposed Sale Order:

> Notwithstanding anything in this Sale Order, the Asset Purchase Agreement, or any other related agreements, documents or other instruments to the contrary: the Debtors shall assume and assign to the Buyer or other Assignee (and the Buyer or other Assignee, as applicable, shall assume) all terms, conditions, covenants and obligations (the "Surviving Obligations") under any leases constituting Assigned Contracts (whether assigned to the Buyer or any other Assignee, including in connection with the Designation Rights, the "Assigned Leases"), whether monetary or non-monetary, for which the Debtors are responsible pursuant to the Assigned Leases – whether related to the pre- or post-assignment period. The Surviving Obligations shall include, among other things, (a) payment of all accruing but unbilled charges under the Assigned Leases, including but not limited to all unpaid year-end and other adjustments and reconciliations, (b) payment of all regular or periodic adjustment of charges under the Assigned Leases, which were not due or had not been determined as of the date objections to cure amounts were due, (c) all taxes, insurance, indemnification, contribution and other contractual obligations under the Assigned Leases, and (d) any and all obligations arising on account of any interests, covenants, or rights applicable to the applicable premises or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits that are not executory or that run with the land.
>
> For the avoidance of doubt, any assumption and assignment of any Assigned Lease shall be subject to the requirements of section 365

---

[8] For instance, various provisions of the APA indicate that the ESL Transaction depends on the Proposed Assignee's ability to avoid assuming the Surviving Obligations. *See*, *e.g.*, APA § 2.5 ("[N]either Buyer nor any Assignee shall have any obligations in respect of any portion of any year-end (or other) adjustment (including for royalties, rents, utilities, Taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) any previous calendar year, and Sellers shall fully indemnify and hold harmless Buyer and the applicable Assignee with respect thereto."); *id*. at § 2.3(l) (purporting to limit the scope of tax-related Surviving Obligations to the "Assumed Property Tax Liabilities", which are capped at $135 million).

>   of the Bankruptcy Code, including, without limitation, the Buyer or other Assignee's assumption of all obligations under and in connection with the applicable Assigned Lease, including, without limitation, the obligations identified in connection with section 365(b)(3)(C) and (D).

However, the Debtors and ESL have not yet confirmed that acceptable language will be included in the Sale Order, and Simon objects to the proposed sale and assumption and assignment of Leases absent inclusion of appropriate language to ensure that all of the tenant's obligations under any assumed and assigned Leases are honored.[9]

### B. The Debtors Are Not Permitted to Transfer Real Estate Assets Free and Clear of Restrictive Covenants in the Proposed Sale

14. As noted above, a number of stores that are owned by the Debtors or their affiliates are operated in or adjacent to Simon's properties. Such stores are subject to Reciprocal Easement Agreements and other similar restrictive covenants (collectively, "**Restrictive Covenants**"),[10] which must remain in full force and effect notwithstanding any sale of such stores under applicable law. *See*, *e.g.*, *Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (finding that covenants running with the land are property interests and cannot be extinguished through bankruptcy); *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188 (Ill. 1983) ("Generally, easements "run with the land" where the original parties intended the interest to run with the land, the interest touches and concerns the property, and there is privity of estate between the party claiming the benefit of the covenant and the party burdened by the covenant.").[11] The Debtors

---

[9] Simon has contemporaneously herewith filed a separate Cure Objection with respect to the Debtors' proposed cure amounts with respect to the Leases, which is incorporated herein by reference.

[10] Restrictive Covenants include any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, rights of way, rights of first refusal, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits.

[11] *See also*, *e.g.*, *Mancuso v. Meadowbrook Mall Co. Ltd. P'ship*, 2007 U.S. Dist. LEXIS 23308, at *29-30 (Bankr. N.D. W.Va. March 28, 2007) (holding that certain "use covenants" on space used to operate restaurant were restrictions that ran with land that debtor could not sell free and clear pursuant to § 363(f)(1)); *In re 523 E. Fifth St. House Preservation Dev. Fund Corp.*, 79 B.R. 568, 574-75 (Bankr. S.D.N.Y. 1987) (holding that deed restriction

bear the burden of proving that they are permitted to sell free and clear of any interest. *See In re Flour City Bagels, LLC*, 557 B.R. 53, 88 (Bankr. W.D.N.Y. 2016) (denying debtor's motion to sell property free and clear "[b]ecause [debtor] has not carried its burden of proof" to demonstrate compliance with section 363(f) of the Bankruptcy Code).

15.   The Debtors cannot sell free and clear of Restrictive Covenants under applicable law as such rights have been found to be non-executory (and therefore not subject to rejection) and/or to run with the land.  Moreover, any question regarding whether the Restrictive Covenants run with the land may not be decided in the context of the sale hearing, but instead must be addressed pursuant to a separate adversary proceeding. *See In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), aff'd, 734 F. App'x 64 (2d Cir. 2018) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion."). Accordingly, Simon does not believe that such Restrictive Covenants can generally be stripped as part of the sale process.[12]

16.   Moreover, Simon negotiated (and the Debtors agreed to) specific procedures in the Bidding Procedures Order requiring that "[t]o the extent that the Debtors or any other party seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall

---

requiring that property be used for low-income housing was a covenant that ran with land that could not be sold free and clear of such restriction through § 363(f)(1)); *In re Inwood Heights Hous. Dev. Fund Corp.*, Case No. 11-13322 (MG), 2011 Bankr. LEXIS 3251(Bankr. S.D.N.Y. Aug. 25, 2011) (holding that debtor could not use § 363 (f) (1) "to obviate compliance with any sale restrictions contained in the Deed").

[12] To the extent that the court were to find that any of the Premises may be sold free and clear of any Restrictive Covenants, Simon demands that it be provided with adequate protection pursuant to section 363(e) of the Bankruptcy Code.

US-DOCS\105613233.1

describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto." No such relief has been sought by the Debtors and, accordingly, Simon has requested that the Sale Order include the following language:

> Notwithstanding anything in this Sale Order, the Asset Purchase Agreement, or any other related agreements, documents or other instruments to the contrary: nothing in this Sale Order, the Asset Purchase Agreement, or any other related agreements, documents or other instruments shall authorize the sale of any real estate rights or assets free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, rights of way, rights of first refusal, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land.

However, the Debtors have not yet confirmed that this language will be included in the Sale Order, and Simon objects to any transfer of property free and clear of such Restrictive Covenants.

C.  **The Debtors Are Not Permitted to Sever or Impair Master Leases Through the Sale Process**

17. In accordance with applicable law and the procedural provisions of the Bidding Procedures Order, the Debtors must assume and assign any master lease in its entirety, and the assumption and assignment process cannot be used to sever such leases. *See*, *e.g.*, *In re Adelphia Bus. Sols., Inc.*, 322 B.R. 51, 54 (Bankr. S.D.N.Y. 2005) ("Generally, in order for an unexpired lease to be assumed or rejected, the lease must be assumed or rejected in its entirety."); *see also Bildisco & Bildisco*, 465 U.S. at 531; *MF Glob. Holdings*, 466 B.R. at 241. Moreover, severing master leases would require the Debtors to make an extensive factual and legal showing, subject to adequate procedural safeguards. Accordingly, as with Restrictive Covenants, Simon

negotiated specific language in the Bidding Procedures Order requiring, *inter alia*, separate specifically noticed proceedings should the Debtors seek such relief. *See* Bidding Procedures Order ¶ 50. No such relief has been sought by the Debtors and Simon has therefore requested that the Sale Order include the following language:

> Notwithstanding anything in this Sale Order, the Asset Purchase Agreement, or any other related agreements, documents or other instruments to the contrary: nothing in this Sale Order, the Asset Purchase Agreement, or any other related agreements, documents or other instruments shall be deemed to authorize or shall be argued to permit the Debtors, the Buyer, or any Proposed Assignee, their agents or advisors to (i) take any action in connection with an unexpired master lease of nonresidential real property to which a Debtor is a party (each such lease, a "Master Lease") or other relief granted in this Sale Order that is not in compliance with, or that would result in a default or breach under, such Master Lease, without an amendment to or waiver under such Master Lease, in accordance with its terms and all consents required for such amendment or waiver under such Master Lease or (ii) transfer any property subject to a Master Lease in a manner that would sever a Master Lease applicable to such property.

However, the Debtors have not yet confirmed that this language will be included in the Sale Order, and Simon objects to any sale or assumption and assignment of the Leases that purports to sever a Master Lease.

### D.     The Debtors Must Comply With the Requirements of Section 365 and Applicable Law and May Not Modify or Expand Their Rights Through the Sale

18.     As discussed above, any Proposed Assignee must take the assigned Leases in their entirety. *See, e.g.*, 11 U.S.C. § 365(b)(3)(C); *Adelphia Bus. Sols.*, 322 B.R. at 54; *Bildisco & Bildisco*, 465 U.S. at 531; *MF Glob. Holdings*, 466 B.R. at 241. Moreover, section 365(b)(3) specifically requires that the Debtors show as to any Proposed Assignee of a shopping center Lease, "that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provisions, and will not breach any such provision contained in any other lease, financing agreement, or

master agreement relating to such shopping center," and "that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center." *See* 11 U.S.C. § 365(b)(3)(C)-(D). Notwithstanding the foregoing, and the fact that all of Simon's Leases are "shopping center" Leases, certain provisions of the proposed Sale Order purport to override the terms and conditions of the lease. For instance, paragraph 36 of the proposed Sale Order seeks to mandate that any Proposed Assignee may (i) use the space as a retail store (without any restriction other than section 365(b)(3)), (ii) alter the premises as "deemed necessary or desirable for such Assignee," or (iii) go dark for a period of up to 150 days. The Bankruptcy Code specifically mandates that all assignments of shopping center leases are expressly subject to the terms of the lease and the provisions of the Sale Order that seek to override or alter the terms of the Leases are therefore inappropriate. Moreover, such an advance ruling with respect to future designation rights is unnecessary here – if the Debtors believe that such relief is permissible and necessary, they may seek such relief in the context of a particular Lease assignment to a specified Assignee, and Simon reserves all rights in connection therewith.

E. **The Debtors and Proposed Assignee Have Failed to Meet Their Burden of Demonstrating Adequate Assurance of Future Performance by the Proposed Assignee and Landlords Must be Permitted to Supplement Cure Amounts in Connection with the Designation Rights**

19. Simon objects to any proposed assumption and assignment of its Leases unless the Debtors provide adequate assurance of future performance as to ESL Newco and/or any other Proposed Assignee demonstrating such assignee's ability to comply with all of the requirements of sections 365(d) and (f) of the Bankruptcy Code (each described below). Absent such a showing, the proposed assumption and assignment must be denied. Under section 365(f)(2) of the Bankruptcy Code, a lease may only be assigned if (1) the lease is assumed in accordance with the requirements of section 365(b)(1) of the Bankruptcy Code and (2) the moving party provides

14

adequate assurance of future performance by the proposed assignee of the lease terms. 11 U.S.C. § 365(f)(2). Section 365(b)(1) provides that if there has been a default in an unexpired lease, the trustee may not assume the lease unless, at the time of assumption of such lease, the trustee cures the defaults and provides adequate assurance of future performance under the lease. Similarly, section 365(f)(2) provides that, in order to assign a lease under section 365, adequate assurance of future performance by the assignee must be provided whether or not there has been a default under the lease. The Debtors bear the burden on adequate assurance issues. *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant who may be likely to default on his lease obligations . . . "); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

20. In addition, since the Premises are located in a shopping center, the Debtors must meet heightened requirements of adequate assurance under section 365(b)(3) of the Bankruptcy Code, which are intended "to protect the rights of lessors and the center's other tenants." *In re Joshua Slocum*, 922 F.2d at 1086. Pursuant to section 365(b)(3), the heightened requirements include:

- the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became lessee under the lease. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under such lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provisions, and will not breach any such provision contained

15

> in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and
>
> - that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

The Leases clearly qualify as "shopping center leases" under the Bankruptcy Code. S*ee Androse Assocs.*, 472 B.R. at 677 ("[C]ourts have interpreted the term [shopping center] on a case-by-case basis and generally consider, among other criteria, combination of leases, whether all leases are held by single landlord, presence of common parking area, existence of master lease, and contiguity of stores."); *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000).

21. As of the date of this Limited Objection, the Debtors and Proposed Assignee (whether ESL Newco or otherwise) have not provided Simon with sufficient information to prove (or even to evaluate) adequate assurance of future performance as required by sections 365(b) and (f). Simply put, the information provided in the ESL Adequate Assurance Letters is wholly insufficient to enable Simon to assess the ongoing viability of ESL Newco (let alone any other Proposed Assignee). Furthermore, the Debtors have not specified the proposed use of the Premises by the Proposed Assignee, or confirmed that this will be in compliance with all of the terms and conditions of the Leases.

22. At a minimum, adequate assurance information should include the following as to any Proposed Assignee: (i) pro forma financial statements for the proposed tenant and projections showing the viability of the proposed tenant, along with supporting documentation and any financial support for its obligations (e.g., a letter of credit supporting its rent obligations to Simon); (ii) the proposed tenant's most recent business plan and cash flow projections for each Simon lease/location; (iii) any historical and current financial statements for the proposed tenant;

(iv) the specific name of the proposed tenant and an organizational chart; (v) the specific intended use for the space; and (vi) evidence of the tenant's insurance coverage for each premises. Adequate assurance of future performance under the Leases must also include sufficient assurances of compliance with the applicable requirements and obligations under the Leases (whether arising before or after assignment), including with respect to the Surviving Obligations.

23. Accordingly, the Court should deny the requested assumption and assignment of Simon's Leases or condition such assignment on the Proposed Assignee providing sufficient adequate assurance of future performance.

24. Finally, in connection with designation rights, paragraph 30 of the proposed Sale Order purports to cut off the right to supplement cure amounts unless a counterparty files a timely objection at this time, notwithstanding the fact that such assignment will not happen until some point in the future. *See* Sale Order ¶ 30 ("[U]nless an objection to the proposed Cure Costs was filed and served before the Cure Objection deadline, the applicable Designatable Contract Counterparty is forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the applicable Designatable Lease or Additional Contract…"). Accordingly, this Limited Objection and the Cure Objection should be considered an objection to all cure amounts with respect to Simon's Premises (whether or not included in the Notices), and Simon reserves the right to supplement, amend or modify its requested cure amounts in connection with any assumption and assignment of its Leases now or in the future.

## JOINDER AND RESERVATION OF RIGHTS

25. Simon reserves the right to make such other and further objections as may be appropriate as additional documentation and information is provided. Simon specifically reserves all rights, remedies, and positions with respect to any Proposed Assignee via Designation Rights (as defined in the Notices), including the right to object to any proposed use or change of use of

the Premises once such Proposed Assignee has been identified or to amend or update any cure amounts in connection therewith. Simon hereby joins in the objections filed by the Debtors' other landlords and the Committee to the extent not inconsistent herewith.

## CONCLUSION

WHEREFORE, Simon respectfully requests that the Court (i) deny the assumption and assignment of the Leases unless and until the issues identified herein are addressed, (ii) include Simon's proposed modifications to the Sale Order set forth herein, and (iii) grant such relief as the court deems just and proper.

Dated:  January 28, 2019
       New York, New York

                              */s/ Marc A. Zelina*
                              Peter M. Gilhuly (admitted *pro hac vice*)
                              Ted A. Dillman (admitted *pro hac vice*)
                              LATHAM & WATKINS LLP
                              355 South Grand Avenue
                              Los Angeles, CA 90071
                              Telephone:    (213) 485-1234
                              Facsimile:      (213) 891-8763
                              Email:            peter.gilhuly@lw.com
                                                  ted.dillman@lw.com

                              Marc A. Zelina
                              LATHAM & WATKINS LLP
                              885 Third Avenue
                              New York, NY 10022
                              Telephone:    (212) 906-1200
                              Facsimile:      (212) 751-4864
                              Email:             marc.zelina@lw.com

                              *Attorneys for Simon Property Group, L.P.*