Hearing Date: February 4, 2019
Time: 10:00 a.m.

Edward M. Fox
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 218-4646
Facsimile: (917) 344-1339
Email: emfox@seyfarth.com

*Attorneys for Wilmington Trust, National Association,
as collateral agent*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**RESPONSE OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS
COLLATERAL AGENT TO NOTICE OF SUCCESSFUL BIDDER AND SALE HEARING**

Wilmington Trust, National Association, as collateral agent (the "Collateral Agent") by its undersigned attorneys, files this Response of Wilmington Trust, National Association, as Collateral Agent to Notice of Successful Bidder and Sale Hearing, and in support thereof states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "Debtors"). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

54577889v.1

## BACKGROUND

### The Second Lien Security Agreement

1. Pursuant to the Amended and Restated Security Agreement dated as of March 20, 2018, (the "Security Agreement"), among Sears Holdings Corporation ("Sears") and certain of its subsidiaries and affiliates, (the "Guarantors"), and the Collateral Agent, the Collateral Agent holds a security interest in the Collateral (as defined in the Security Agreement)[2] to secure repayment of, *inter alia*, the Second Lien Credit Agreement, the Second Lien, Lien of Credit Facility, the Second Lien Term Loan, the Second Lien Pik Notes.[3]

### The Bankruptcy Filing

2. On October 15, 2018, each of the Debtors filed voluntary petitions for relief under Chapter 11 of title 11, U.S.C. in the United States Bankruptcy Court for the Southern District of New York, (the "Bankruptcy Court").

---

[2] Section 2.1 of the Security Agreement states:

> 2.1 Collateral; Grant of Security Interest. Each Grantor hereby grants to the Collateral Agent for the equal and ratable benefit of the Secured Parties a security interest in all of the following property now owned, or at any time hereafter acquired, by such Grantor or in which such Grantor now has, or at any time in the future may acquire, any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of such Grantor's Secured Obligations:
> (a) all Credit Card Accounts Receivable;
> (b) all Inventory;
> (c) all Chattel paper relating to Credit Card Accounts Receivable;
> (d) all Instruments relating to Credit Card Accounts Receivable;
> (e) all Documents relating to any Inventory;
> (f) all books and records pertaining to the Collateral; and
> (g) to the extent not otherwise included, all Proceeds, insurance claim, Supporting Obligations and products of any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

[3] Each as defined in the Asset Purchase Agreement Dated as of January 17, 2019 by and among Transform Holdco LLC, Sears Holdings Corporation and its Subsidiaries Party Thereto (the "APA").

2

### The Asset Purchase Agreement

3. Pursuant to the APA, the Debtors propose to sell a substantial portion of their assets to Transform Holdco LLC, an affiliate of ESL (as defined in the APA).

4. The Collateral Agent has no objection to the sale pursuant to the APA.

### The Credit Bid

5. Pursuant to Section 3.1(b)(iv) of the APA, a portion of the consideration for the purchase price under the APA is a credit bid made by the Collateral Agent, pursuant to a direction given by ESL, in accordance with the terms of the Security Agreement.

6. Because the interests of other creditors not affiliated with ESL are also secured by the Security Agreement (the "Non-ESL Second Lien Creditors"), in connection with the credit bid and the closing under the APA, ESL must make certain transfers to the Collateral Agent for the benefit of, or directly to, such Non-ESL Second Lien Creditors to account for their interests secured by the Security Agreement.

### Modifications to Proposed Order Approving APA

7. In order to insure that such transfers are made by ESL to account for the interests of the Non-ESL Second Lien Creditors under the Security Agreement, the Collateral Agent requests that the proposed form of order approving the APA be modified as indicated in Exhibit A annexed hereto.

54577889v.1

WHEREFORE Wilmington Trust respectfully requests that the form of order approving the APA include the modifications set forth on Exhibit A annexed hereto.

Dated: New York, New York
January 28, 2019

SEYFARTH SHAW LLP

By: /s/ *Edward M. Fox*
Edward M. Fox
*Attorneys for Wilmington Trust, National Association, as collateral agent*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 218-4646

# EXHIBIT A

K.  **Secured Claims**.  In accordance with the Asset Purchase Agreement, effective upon the Closing Date, ESL's Claims (as defined below) against the Debtors arising under the (i) IP/Ground Lease Term Loan Facility, (ii) FILO Facility, (iii) Real Estate Loan 2020, (iv) Second Lien Term Loan, (v) Second Lien Line of Credit Facility, (vi) Second Lien PIK Notes, and (vii) Citi L/C Facility (together with the security interests securing any of the Claims *of ESL* described in the preceding sub-clauses (i)-(vii), collectively, the "ESL Claims"), shall each be deemed allowed for all purposes in these chapter 11 cases and under the Bankruptcy Code in the amounts set forth on Exhibit G to the Asset Purchase Agreement, as reduced by the Credit Bid set forth in Section 3.1(b) of the Asset Purchase Agreement.  The assignment of the claims of ESL to the Buyer will take place on the Closing Date.  Pursuant to Section 363(k) of the Bankruptcy Code and this Sale Order, ESL is hereby authorized to credit bid the ESL Claims and to use such ESL Claims as a portion of the Purchase Price (the "Credit Bid Amount") as set forth in Section 3.1(b) of the Asset Purchase Agreement (the "Credit Bid") [Insert 9].  At the Auction, pursuant to the Asset Purchase Agreement, the Buyer agreed to pay the Purchase Price, which includes the Credit Bid Amount that will be transferred to the Buyer at the Closing Date.

L.  **No Successor or Other Derivative Liability**.  The sale and transfer of the Acquired Assets to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer of the Assigned Agreements, will not subject the Buyer or ESL to any liability (including any successor liability) under any laws, including any bulk-transfer laws, or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories, with respect to the operation of the Debtors' business prior to the Closing, and for each Assigned Agreement, the applicable Assumption Effective Date, except that, upon the Closing or such other date as specified in the Asset

9

Insert 9

(subject, in the case of the security interest securing the Claims described in sub-clauses (iv), (v) and (vi) of this Paragraph K, anything in this Order to the contrary notwithstanding, delivery of the written consent of the Collateral Agent for such security interest)

any Claims or causes of action of the Debtors or their estates related to Lands' End, Inc., the "spin-off" (as such term is defined in the Information Statement of Lands' End, Inc. dated March 18, 2014), Seritage Growth Properties, Inc., Seritage Growth Properties, L.P, the "Transaction" (as that term is defined in the registration statement on Form S-11 filed by Seritage Growth Properties, which registration statement became effective on June 9, 2015), any Claim or cause of action involving any intentional misconduct by ESL, or the proceeds of any of the foregoing, (ii) any ESL Claims arising under Section 507(b) of the Bankruptcy Code shall be entitled to distributions of not more than $50 million from the proceeds of any Claims or causes of action of the Debtors or their estates other than the Claims and causes of action described in the preceding clause (c)(i); provided that, in the event that, in the absence of this clause (c)(ii), any such proceeds to the Debtors or their estates would have resulted in distributions in respect of such ESL Claims in excess of $50 million, the right [on account of the ESL claims] to receive such distributions in excess of $50 million shall be treated as an unsecured claim and receive pro rata recoveries with general unsecured claims other than the Claims and causes of action described in the preceding clause (c)(i), and (iii) notwithstanding any order of the Bankruptcy Court to the contrary or section 1129 of the Bankruptcy Code, it shall not be a condition to confirmation of any chapter 11 plan filed in the Bankruptcy Cases that any ESL Claims arising under Section 507(b) of the Bankruptcy Code be paid in full or in part.

    (d)  Section 9.13 of the Asset Purchase Agreement, and all statements or negotiations relating hereto, shall be governed by Federal Rule of Evidence 408 and any corresponding state rules of evidence. Without limiting the foregoing, neither Section 9.13 of the Asset Purchase Agreement nor any statements or negotiations relating hereto shall be offered