IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br>(Jointly Administered)<br><br>Re: Docket No. 1730 and 2063<br><br>Objection Deadline: January 28, 2019 (as extended by agreement with Debtors' counsel) |

### SUPPLEMENTAL OBJECTION OF WEINGARTEN REALTY INVESTORS TO GLOBAL ASSET SALE TRANSACTION, PROPOSED SALE ORDER, AND ASSET PURCHASE AGREEMENT

Landlords affiliated with Weingarten Realty Investors (the "Weingarten Landlords"), by and through its undersigned counsel, hereby submit their supplement (the "Supplemental Objection") to the previously-filed *Alan Robbins, Aston Properties, Benderson Development Company LLC, Brookfield Properties Retail Group, Gregory Greenfield & Associates, Ltd., Gray Enterprises, LP, the Trustees of the Estate of Bernice Pauahi Bishop, d/b/a Kamehameha Schools,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

4822-5338-3302v.1

*LBA Realty, LLC, Nassimi Realty LLC, Radiant partnrs LLC, Realty Income Corp., Regency Centers, Corp., Shopcore Properties, L.P. Site Centers Corp., Sun Valley, Ltd., TLM Realty Corp. and Weingarten Realty Investors' Objection to Global Asset Sale Transaction, Sale Order, and Asset Purchase Agreement* [Docket 2069] (the "Objection") with respect to certain terms of the proposed Asset Purchase Agreement,(the "APA," and the transactions contemplated thereby the "Global Asset Sale Transaction")[2] and the proposed order approving the Global Asset Sale Transaction (the "Sale Order").  In support of this Supplemental Objection, the Weingarten Landlords respectfully state as follows:

**BACKGROUND**

1.      The Weingarten Landlords are lessors of debtor Kmart Corporation with respect to the following shopping centers:

| Debtors' Store # | Landlord | Location |
|---|---|---|
| 7441 | WRI Golden State, LLC | Prospector's Plaza, Placerville, California |
| 3667 | WRI/Raleigh, L.P. | Six Forks Station, Raleigh, North Carolina |

2.      Both of these locations were identified in Schedule 1.1(o) to the APA as among Debtors' "Operating Leases."  It cannot be seriously disputed that Debtors' leases with the Weingarten Landlords are nonresidential real property leases for premises in a "shopping center" as that term is used in Bankruptcy Code section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-1087 (3rd Cir. 1990); *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 360 (Bankr. D. Del. 1999).

---

[2]      Capitalized terms not otherwise defined shall have the same meaning as set forth in the Objection.

4822-5338-3302v.1

**SUPPLEMENTAL OBJECTION**

A. **DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

3. Bankruptcy Code section 365(f)(2)(A) expressly provides that the assumption of an unexpired lease of nonresidential real property or executory contract is a necessary precedent to an assignment. It is well-established that Debtors bear the ultimate burden of presentation and persuasion that a unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Industries, Inc.,* 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Memphis-Fridays Associates,* 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).

4. Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –
>
> A.  cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B.  compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or Lease for any pecuniary loss to such party from such default; and
>
> C.  provides adequate assurance of future performance under such contract or lease.

5. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord, In re Valley View Shopping Center, L.P.,* 260 B.R. 10, 25 (Bankr. D. Kansas 2001).

6. Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc., supra*, 234 B.R. at 370.

7. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Industries, Inc.,* 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.,* at 441. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-149 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

8. The initial burden of presentation as to adequate assurance falls upon Debtors. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration

does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest, supra,* 868 F.2d at 1080.

9.  It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd., supra,* 922 F.2d at 1086. Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

> (A)   of *the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;
>
> (B)   that any percentage rent due under such lease will not decline substantially;
>
> (C)   that *assumption or assignment of such lease is subject to all the provisions thereof, including* (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D)   that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.
>
> (Emphasis added.)

10. This section was added to Section 365 as part of the "Shopping Center Amendments" because:

> "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants."

*In re Joshua Slocum, Ltd.*, *supra*, 922 F.2d at 1085 (internal citations omitted); *see also In re Trak Auto Corporation*, 277 B.R. 655, 665-666 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor.")

11. Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986). "Assignment is impermissible if any of the four elements [of § 365(b)(3)(A)-(D)] is unmet." *In re Heilig-Meyers Company*, 294 B.R. 660, 662 (Bankr. E.D. Va. 2001) (rejecting proposed assignment of shopping center lease because of threat of direct competition to another tenant with an exclusive use operating right).

12. Debtors have not satisfied their burden with respect to adequate assurance of future performance, as required by Bankruptcy Code section 365(b)(3), in connection with the proposed assignment of leases to Buyer. While Buyer has, to date, proffered limited adequate assurance information on a "confidential and proprietary" basis, as has been argued by the Official Committee of Unsecured Creditors [Docket Nos. 640 and 2042], the Buyer has not provided a viable "go forward" business plan for its planned 425 store footprint (although this store count may vary due to Buyer's lease designation rights structure). There is no clear plan to reduce existing selling, general and administrative expenses to provide for a return to profitability of Debtors' business (which Debtors have not enjoyed since 2012). Buyer has not publicly proposed any changes in Debtors' management team, the very same management that led Debtors into Chapter 11. Perhaps, most significantly, as made clear by the publicly filed Schedule 13D of Sears Holdings Corporation, filed January 17, 2019 with the Securities and Exchange Commission,

Buyer has limited its commitment to "provide salary continuation, substantially comparable benefits and [a] prepetition severance program" for approximately 45,000 employees *to only February 1, 2020, the end of Debtors' current fiscal year*. This limited funding commitment to "go forward" employee obligations undermines any proffer of adequate assurance of *future* performance, suggesting the need for further financial restructuring of the business in the near future.

13. Accordingly, Debtors have, to date, failed to demonstrate adequate assurance of future performance necessary to assume and assign its leases with the Weingarten Landlords to Buyer.

**B.  DEBTORS' PROPOSED TREATMENT OF YEAR-END ADJUSTMENTS FAILS TO PROVIDE ADEQUATE ASSURANCE SUCH OBLIGATIONS WILL BE PAID**

14. While the APA contains numerous references to "Cure Costs" payable with respect to Assigned Agreements, Section 2.5 of the APA, entitled "Year-End Adjustments," provides as follows:

> Section 2.5  Year-End Adjustments. For the avoidance of doubt, *notwithstanding anything to the contrary set forth in this Agreement*, *neither Buyer nor any Assignee shall have any obligations in respect of any portion of any year-end (or other) adjustmen*t (including for royalties, rents, utilities, Taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) *arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) any previous calendar year*, and Sellers shall fully indemnify and hold harmless Buyer and the applicable Assignee with respect thereto. Buyer shall be solely responsible for any of the matters described in the preceding sentence for the portion of the calendar year in which the Closing Date occurs following each applicable Lease Assignment and all subsequent calendar years, and Buyer shall fully indemnify and hold Sellers harmless with respect thereto. *Following the applicable Lease Assignment Date, except as expressly set forth in this Agreement or the Approval Order, Sellers*

> *shall have no further liabilities or obligations with respect to each of the Acquired Leases and the other Assigned Agreements* (including obligations related to royalties rents, utilities, Taxes, insurance and common area maintenance, *regardless of when due and payable*) and *Sellers shall be released from all such obligations* and Buyer shall indemnify and hold harmless Sellers with respect thereto.

(Emphasis added.)

15. In addition to monthly rent and related charges, Debtor's leases with the Weingarten Landlords provide for both percentage rental and for certain charges and expenses (defined as "Additional Rental") to be billed on an estimated basis, subject to annual reconciliation and adjustment, including real property taxes. Since year-end adjustments for 2018 have not yet been concluded and 2019 adjustments will not be billed in the ordinary course until 2020, there is no pending default with respect to such obligations that would give rise to an obligation to cure by Debtors or Buyer at this time. The Weingarten Landlords are entitled to adequate assurance that those obligations will be paid when billed in the future. Under Section 2.5 of the APA, which purports to apply "notwithstanding anything to the contrary set forth in this Agreement," neither Debtors not Buyer would have responsibility for such obligations, leaving them unsatisfied and depriving the Weingarten Landlords of the benefit of their bargain, contrary to applicable law. *See*, *e.g.*, *In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.")

16. As a matter of law, however, the Debtors are not entitled to the benefits and protections of Bankruptcy Code section 365(k), releasing the estate from any liability for post-assignment breaches of lease, where Debtors do not assume and assign the lease *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee

8

attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81. Given Buyer's disclaimer of liability for certain pre-assignment lease obligations, there has not been a complete assignment of leases, and adequate assurance of future performance has not been provided.

### B. THE WEINGARTEN LANDLORDS ARE ENTITLED TO ADDITIONAL SECURITY PURSUANT TO BANKRUPTCY CODE SECTION 365(l)

17. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." In re Joshua Slocum, Ltd., supra, 922 F.2d at 1086. Bankruptcy Code section 365(b)(3)(A), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance of "the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease." As discussed above, such information, particularly a comparison of Buyer's financial condition to that of Debtors as of the time of Debtors' entry into various leases, has not been provided.

18. Bankruptcy Code section 365(l) provides as follows:

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

19. In the ordinary course of its business, the Weingarten Landlords and their affiliates require security deposits and guaranties when leasing (or assessing a proposed assignment of a

9

lease) to certain companies based on their financial information and history. In the case of a new company, particularly a recently-capitalized "newco" created for the purpose of acquiring distressed assets, the Weingarten Landlords would ordinarily seek security in the form of cash deposits or letters of credit covering monetary obligations under assigned leases for <u>at least</u> one month's rent and charges, potentially increasing depending on the financial information provided by the proposed tenant/assignee. Alternatively, when a parent holding company forms a new entity without an operating history that seeks an initial lease from the Weingarten Landlords, the landlord would typically seek a continuing guaranty of lease obligations from a parent company with sufficient assets to meet those guaranty obligations.

20. Here, no security or credit enhancement has been proposed. If the proposed assumption and assignment of Debtors' leases with the Weingarten Landlords to Buyer is approved, the Weingarten Landlords are entitled to security in one of the forms outlined above.

4822-5338-3302v.1

WHEREFORE, the Weingarten Landlords request that the Court (1) deny approval of the Global Assets Sale Transaction unless the Sale Order and the APA are revised as provided herein and in the Objection, and (2) grant such other and further relief as is just and proper.

Dated: New York, New York
January 28, 2019

        KELLEY DRYE & WARREN LLP

By: /s/ *Robert L. LeHane*
Robert L. LeHane
Maeghan J. McLoughlin
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: rlehane@kelleydrye.com
mmcloughlin@kelleydrye.com

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Ivan M. Gold (CA Bar No. 121486)
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Tel: (415) 837-1515
Fax: (415) 837-1516
Email: igold@allenmatkins.com

*Attorneys for Weingarten Realty Investors*

4822-5338-3302v.1