**Hearing Date and Time:  February 4, 2019 at 10:00am (ET)**
**Objection Date and Time:  January 28, 2019 at 4:00pm (ET)**

Bruce S. Nathan, Esq.
Eric S. Chafetz, Esq.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York, 10020
Tel: (212) 262-6700
Fax: (212) 262-7402
E-mail: bnathan@lowenstein.com
echafetz@lowenstein.com

*Counsel to Valvoline LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | Chapter 11 |
| SEARS HOLDINGS CORPORATION[1], *et al.* | Case No.: 18-23538 (RDD) |
| Debtors. | Jointly Administered |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC

**AMENDED LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
VALVOLINE LLC TO: (A) THE GLOBAL ASSET SALE TRANSACTION; AND (B)
NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
GLOBAL SALE TRANSACTION**

Valvoline LLC ("Valvoline") hereby files this amended limited objection and reservation of rights (the "Limited Objection")[2] to Debtors: (i) Global Asset Sale Transaction, as described and defined in the *Notice of Successful Bidder and Sale Hearing* (the "Notice of Successful Bidder")[Docket No. 1730]; (ii) *Debtors' Notice of Cure Costs And Potential Assumption And Assignment of Executory Contracts And Unexpired Leases in Connection With Global Sale Transaction* (the "Executory Contracts/Cure Cost Notice")[Docket No. 1731].[3] In support of this Limited Objection, Valvoline respectfully represents as follows:

**INTRODUCTION**

1. Valvoline does not object to the approval of the Sale Motion.[4] However, in order to ensure that Valvoline's rights are effectively preserved, Valvoline requires more information concerning and/or modifications of the Sale Order and/or Asset Purchase Agreement and the Executory Contracts/Cure Cost Notice to address (a) Valvoline's recoupment and setoff

---

Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Counsel for Valvoline is in discussions with counsel for the Debtors in an effort to resolve the issues raised in this Limited Objection and plans on continuing those discussions.

[3] This Limited Objection amends the *Limited Objection and Reservation of Rights of Valvoline LLC to: (A) The Global Asset Sale Transaction; and (B) Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction* (the "Original Limited Objection") filed at Docket Number 2073 to correct the amount Valvoline owed to Sears as of the Petition Date as set forth in footnote 6. The substantive arguments contained herein remain unchanged from those set forth in the Original Limited Objection.

[4] Capitalized terms not defined in this Introduction shall have the meaning ascribed to such terms later in this Limited Objection.

rights under the Master Purchase Agreement[5], (b) the cure amount associated with the Master Purchase Agreement, and (c) the adequate assurance information provided by the Buyer. In addition, Valvoline reserves all of its rights – against either the Buyer or Sears, as applicable – in connection with goods in transit that may not have been invoiced or received at the time of the closing of the sale.

2.   **First**, the Sale Motion, Asset Purchase Agreement and Sale Order purport to allow the sale of substantially all of the Debtors' assets free and clear of all Encumbrances, which term is defined to include setoff and recoupment rights. It is improper for the Sale Order to approve the sale free and clear of setoff and recoupment rights, and, therefore, the definition of Encumbrances must be modified to exclude those rights and instead provide that the sale preserves all recoupment and setoff rights. This may be a non-issue, as any amounts that Valvoline owes Sears giving rise to recoupment and/or setoff rights in favor of Valvoline may not even be included on the list of Specified Receivables that the Buyer is purchasing. However, it is impossible for Valvoline to verify this as the list of Specified Receivables has not yet been publicly filed, and the Debtors have not responded to Valvoline's question concerning whether any amounts Valvoline owes Sears are in fact included on the list.

3.   **Second**, the $2,944,162 cure amount attributed to the Master Purchase Agreement is not correct because it does not account for a pre-petition recoupment and/or setoff taken by Valvoline prior to the Petition Date and also does not account for Sears' post-petition obligations to Valvoline. Sears' post-petition obligations to Valvoline include (i) unpaid post-

---

[5] For the avoidance of doubt, all references to the Master Purchase Agreement include the seven amendments to the Master Purchase Agreement, the most recent of which, amendment No. 7, was entered into on October 25, 2018. Valvoline objects to the assumption and/or assignment of the Master Purchase Agreement to the extent that not all seven amendments are being assumed and/or assigned.

petition invoices for goods that Valvoline had sold and delivered to Sears subsequent to the Petition Date for which Valvoline had issued invoices to Sears, and (ii) claims based on goods sold to Sears subsequent to the Petition Date received by, or currently in transit to, Sears stores for which Valvoline had not yet issued invoices. Valvoline objects to the assumption and assignment of the Master Purchase Agreement unless all of Valvoline's pre-petition and post-petition claims are paid and reserves its recoupment and/or setoff rights with respect to all of these claims.

4. **Third,** Valvoline objects to the assumption and/or assignment of the Master Purchase Agreement to the extent that all seven of the amendments to the Master Purchase Agreement are not included.

## BACKGROUND

5. Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), commenced voluntary chapter 11 cases on October 15, 2018 (the "Petition Date").

### I. The Master Purchase Agreement

6. Valvoline and Sears, Roebuck and Co. ("Sears") are parties to that certain *Master Purchase Agreement (Bulk Automotive Motor Oil Products)* effective as of July 1, 2013, as amended from time to time (collectively with the 7 aforementioned amendments, the "Master Purchase Agreement")

7. On the Petition Date, Sears owed Valvoline $2,544,109.73[6] under the Master Purchase Agreement (the "Valvoline Cure Amount"), which is subject to Valvoline's recoupment and/or setoff rights.

---

[6] Prior to the Petition Date, on October 13, 2018, Sears owed Valvoline $2,980,158.15. On

-4-

8. In addition to the Valvoline Cure Amount, as of January 25, 2019, Sears owes Valvoline the sum of $63,158.00, together with all post-petition invoices issued thereafter (the "Post-Petition Valvoline Invoice Claims") based on invoices owing by Sears to Valvoline on account of Valvoline's post-petition sales and deliveries of goods to Sears. Valvoline also has a significant additional post-petition claim against Sears based on Valvoline goods that Sears had ordered post-petition that are either in transit or in Sears' possession for which Valvoline has not yet issued invoices (the "Post-Petition Valvoline In Transit Goods Claim"). The Post-Petition Valvoline Invoice Claims and Post-Petition Valvoline In Transit Goods Claim are subject to Valvoline's recoupment and/or setoff rights. Valvoline reserves all of its rights against both Sears and the Buyer to obtain payment of the Post-Petition Valvoline Invoice Claims and Post-Petition Valvoline In Transit Goods Claim, in addition to the Valvoline Cure Amount, as a condition to the assumption and assignment of the Master Purchase Agreement.

## II. The Notice Of Successful Bidder

10. On January 18, 2019, the Debtors filed the Notice of Successful Bidder identifying Transform Holdco, LLC (the "Buyer") as the winner of the auction. Exhibit B to the Notice of Successful Bidder includes an executed version of the Asset Purchase Agreement between the Debtors and the Buyer (the "Asset Purchase Agreement"). The Acquired Assets include the Acquired Receivables, which in turn is defined to mean: "(i) all Credit Card Accounts Receivable, (ii) all Pharmacy Receivables, (iii) the Specified Receivables, and (iv) the

---

October 13, 2018, Valvoline exercised its recoupment and/or setoff rights under the Master Services Agreement and applied $436,048.42 that Valvoline had owed Sears against the aforementioned $2,980,158.15 Sears owed Valvoline under the Master Purchase Agreement. After accounting for this pre-petition recoupment and/or setoff, the amount owed by Sears to Valvoline on the Petition Date is the Valvoline Cure Amount, or $2,544,109.73. Further, Valvoline owed Sears an additional $419,096.24 on the Petition Date, which amount is also subject to Valvoline's recoupment and/or setoff rights.

Warranty Receivables." *See* Asset Purchase Agreement at Art. 1, Section 1.  The term Specified Receivables is defined to mean "accounts receivable set forth on Schedule 1.1(k)." *Id.*  Schedule 1.1(k) has not been publically filed, and despite Valvoline's inquiry, the Debtors have yet to confirm whether any of Valvoline's receivables owing to Sears giving rise to their recoupment and/or setoff rights are even being purchased by the Buyer.

          11.      Pursuant to Section 2.1 of the Asset Purchase Agreement, the Acquired Assets (as defined in the Asset Purchase Agreement) are being sold free and clear of all Encumbrances[7] of any kind, nature or description and any Claims (as defined in the Asset Purchase Agreement).  As indicated in the definition of Encumbrances, the Buyer is purchasing the Acquired Assets free and clear of, among other things, setoff and recoupment rights.

---

[7] Encumbrances are defined as:

> all mortgages, pledges, hypothecations, charges, liens, interests, debentures, trust deeds, claims and encumbrances of any type whatsoever (whether known or unknown, secured or unsecured or in the nature ***of setoff or recoupment***, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, and whether imposed by agreement, understanding, Law, equity, or otherwise), including Claims, assignments by way of security or otherwise, security agreements and interests, conditional sales contracts or other title retention agreements, rights of first refusal, first negotiation or first offer, options to purchase or similar restrictions or obligations, instruments creating a security interest in the Acquired Assets or any part thereof or interest therein, and any agreements, leases, subleases, licenses, occupancy agreements, options, easements, rights of way, covenants, conditions, restrictions, declarations, defects in title, encroachments, exceptions or other encumbrances adversely affecting title to the Acquired Assets or any part thereof or interest therein.

(emphasis added)

12.     Exhibit B[8] to the Notice of Successful Bidder includes a proposed *Order (I) Approving The Asset Purchase Agreement Among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free And Clear of Liens, Claims, Interests And Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith And (IV) Granting Related Relief* (the "Sale Order").  The Sale Order seeks approval of the Asset Purchase Agreement in its entirety, including the sale of the Acquired Assets free and clear of all Encumbrances, including setoff and recoupment rights.  *See* Sale Order at ¶ 17.

## LIMITED OBJECTION

### I.    The Debtors May Not Sell Free and Clear of Valvoline's Recoupment Rights.

13.     Courts are clear that the Debtors may not sell their assets free and clear of Valvoline's recoupment rights that arise from obligations due to/due from Valvoline and Sears under the same Master Purchase Agreement.  In *In re Folger Adam Security, Inc. v. DeMatteis/Macgregor, JV*, 209 F. 3d 252 (3rd Cir. 2000), the Court discussed a debtor's ability to sell assets free and clear of both recoupment and setoff rights.  Regarding recoupment, the Court noted that:

> Recoupment . . . allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be setoff under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitation of setoff in bankruptcy would be inequitable.

*Folger* at 260.  Accordingly, the Third Circuit held that "a right of recoupment is a defense and not an interest and, therefore, is not extinguished by a § 363(f) sale" *Id.* at 261; *see also*, *Daewoo*

---

[8] The Sale Order (defined herein) appears to have been inadvertently annexed as Exhibit B to the Notice of Successful Bidder, but should have instead been annexed as Exhibit C.

-7-

*Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003) ("recoupment is not a 'claim' within the meaning of the Bankruptcy Code ..."); *Hispanic Independent Television Sales, LLC n/k/a Hispanic Media Works v. Kaza Azteca America Inc.*, No. 10 CIV 932, 2012 WL 1079959, at * 5 (S.D.N.Y. March 30, 2012) (same); *Formtech LLC v. Magna Powertrain USA, Inc. (In re Formtrech Industries, LLC)*, 439 B.R. 352 (Bankr. D. Del. 2010) (recoupment rights are defenses not extinguished under Bankruptcy Code section 363(f)).

14. Accordingly, the Court may not approve the sale to the extent that it seeks to sell assets free and clear of Valvoline's recoupment rights under the Master Purchase Agreement.

## II. A Sale Free and Clear of Setoff Rights Is Not Permissible Under The Facts of These Chapter 11 Cases.

15. Section 553 of the Bankruptcy Code provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case" provided certain conditions are met. *See* 11 U.S.C. § 553(a). Section 553 of the Bankruptcy Code "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Pereria v. United Jersey Bank*, 201 B.R. 644, 661 (S.D.N.Y. 1996); *see also Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164-65 (2d Cir. 1979)(setoff rights should be enforced "unless compelling circumstances . . ." require otherwise); *In re De Laurentiis Entertainment Group Inc.*, 963 F. 2d 1269 (9th Cir. 1992)("setoffs in bankruptcy have been generally favored and a presumption in favor of their enforcement exists); *In re Wiegand*, 199 B.R. 639 (W.D. Mich. 1996)(setoffs in bankruptcy are generally favored and a presumption in favor of their enforcement exists).

16. Section 553 "allows setoff of 'mutual' debts that 'arose before the commencement of the case.'" *Bennett Funding Group*, 146 F.3d 136, 139 (2d Cir. 1998). Setoff creditors have a favored position that extends to bankruptcy, *id.* at 139, and lower courts are "not required to deprive [a setoff creditor] of its [setoff] rights in order to increase the chance of recovery of equally innocent creditors." *Id.* at 141. As demonstrated, even if Valvoline does not have a valid right of recoupment, which is not the case, Valvoline has a valid right to setoff, and the Sale Motion should not be approved unless Valvoline's setoff rights are explicitly preserved.

17. In addition, Bankruptcy Code Section 363 only allows a sale free and clear if the conditions of Bankruptcy Code section 363(f) are met. Initially, the Debtors have yet to prove that they even meet one of the conditions of section 363(f) in order to sell free and clear of setoff rights. In the Sale Motion, the Debtors only make a general statement that to the extent any interests exist, the holder of such interest could be compelled to accept a monetary satisfaction of that interest. *See* Sale Motion, ¶ 49. Yet, aside from this general statement, the Debtors do not make an effort to meet their burden of proving that Valvoline could be compelled to accept a monetary satisfaction of its setoff interests. Thus, the Court should disapprove any sale free and clear of the setoff rights on that basis alone.

18. Even if the Debtors did show that Valvoline could be compelled to accept a monetary satisfaction of its setoff rights, the Court should still prohibit or condition the sale on the Debtors providing Valvoline with adequate protection of their interests. Bankruptcy Code section 363(e) requires the Court to condition or prohibit the proposed sale unless it provides adequate protection of Valvoline's setoff interests. *See e.g. Szmanski v. Wachovia Bank, N.A. (In re Szymanski)*, 413 B.R. 232, 241-42 (Bankr. E.D. Pa. 2009) (setoff is an interest entitled to adequate protection under 11 U.S.C. §363(e)). The need for that protection is particularly acute

here. Valvoline believes that the Debtors are hopelessly insolvent (a key argument being made by the Official Committee of Unsecured Creditors in opposition to the sale). Following the proposed sale, the Debtors will have virtually no assets from which they could satisfy Valvoline's claims. Ironically, without appropriate adequate protection, the basis for a sale free and clear – that Valvoline could be compelled to accept monetary satisfaction – is completely futile and unfairly prejudicial to Valvoline.

19. As indicated earlier, the proposed sale to the Buyer is intended to be free and clear of all Encumbrances. The definition of Encumbrances in the Asset Purchase Agreement explicitly includes both setoff and recoupment rights. If the Debtors and the Buyer intend for the Sale Order to bar setoff claims pursuant to section 553, such application is contrary to the express provisions of section 553 and 363 of the Bankruptcy Code. Accordingly, the Sale Motion and Asset Purchase Agreement must not be approved unless the definition of Encumbrances is modified such that it no longer includes setoff and recoupment rights, which must be recognized under section 553 of the Bankruptcy Code.

### III. Cure Notices

20. On January 18, 2019, the Debtors filed the Executory Contracts/Cure Cost Notice. The contracts related to Valvoline in the Executory Contracts/Cure Cost Notice include the following:

| No. | Debtor Counterparty(s) | Counterparty Name | Contract Title | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 837 | SEARS, ROEBUCK AND CO. | ASHLAND INC C/O VALVOLINE LLC | None | 7/1/2013 | 6/30/2019 | SHCLCW3162 | $0.00 |
| 7259 | SEARS, ROEBUCK AND CO. | VALVOLINE LLC | None | 7/1/2013 | 6/30/2019 | SHCLCW3162 | $2,944,162 |

-10-

### A. The Debtors Must Cure All Defaults as a Condition to Assumption and Assignment.

21. To the extent Valvoline's contract(s) identified on the Executory Contracts/Cure Cost Notice is/are the Master Purchase Agreement, the agreement is an executory contract subject to Section 365 of the Bankruptcy Code.[9] Valvoline objects to any assumption and assignment of the Master Purchase Agreement unless all seven amendments are included. In addition, while the two contracts included in the above chart appear to be the same or similar, aside from the "Counterparty" and "Cure Amount", Valvoline cannot be one hundred percent sure and requests confirmation from Sears prior to the assumption and/or assignment.

22. Further, to the extent the agreement(s) referenced in the Executory Contracts/Cure Cost Notice is/are the Master Purchase Agreement, Sears is undoubtedly in monetary default. Accordingly, in order for Sears to assume the contract(s), it must "cure[], or provide adequate assurance that [it] will promptly cure," all monetary defaults and non-monetary defaults under the contracts. *See* 11 U.S.C. §365(b)(1)(A). *See generally In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985) (upon assuming an executory contract or unexpired lease under section 365, the estate must "cure all defaults"); *see also In re Haven Eldercare*, LLC, 390 B.R. 762, 772 (Bankr. D. Conn. 2008) (holding that if there has been a default on account of an executory contract, the trustee or debtor-in-possession "may not assume such contract" unless the trustee or debtor-in-possession "cures, or provides adequate assurance that the trustee [or debtor-in-possession] will promptly cure, such default"). In addition, Sears' obligation to cure

---

[9] Although the Bankruptcy Code does not define the term "executory contract," the Second Circuit Court of Appeals has defined an executory contract as one "on which performance remains due to some extent on both sides." *In re Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir. 1996) (*quoting Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S. Ct. 1188, 79 L.Ed.2d 482 (1984).

monetary defaults includes all pre-petition sums referenced in this Limited Objection and any post-petition amounts that may become past due or are otherwise due and owing as of the date of any actual assumption and assignment of any agreement(s), which is/are also subject to Valvoline's recoupment and/or setoff rights.

23. The obligation to cure all defaults under section 365(b)(1)(A) is not limited to monetary defaults and nonmonetary defaults likewise must be cured. *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 690 (Bankr. S.D.N.Y. 2009) (holding a debtor must "cure all material non-monetary defaults" and "if cure is impossible, contract cannot be assumed"); *see also In re New Breed Realty Enterprises, Inc.*, 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002) (same). As such, Sears must "cure[], or provide adequate assurance that [it] will promptly cure," all monetary defaults and non-monetary defaults before assuming Valvoline's agreement(s) included on the Executory Contracts/Cure Cost Notice. *See* 11 U.S.C. § 365(b)(1)(A).

24. As discussed previously, the $2,944,162 cure amount referenced in the Executory Contracts/Cure Cost Notice is incorrect. Prior to the Petition Date, on October 13, 2018, Sears owed Valvoline $2,980,158.15. On October 13, 2018, Valvoline exercised its recoupment and/or setoff rights and applied $436,048.42 that Valvoline had owed Sears against the aforementioned $2,980,158.15 owed by Sears to Valvoline under the Master Purchase Agreement. After accounting for this recoupment and/or setoff, on the Petition Date, Sears owed Valvoline the Valvoline Cure Amount, or $2,544,109.73, which is also subject to Valvoline's recoupment and/or setoff rights.

25. Valvoline has additional cure claims based on the Post-Petition Valvoline Invoice Claims and Post-Petition Valvoline In Transit Goods Claim which must be paid as part

of any assumption and assignment of the Master Purchase Agreement and are also subject to Valvoline's recoupment and/or setoff rights.

26. Accordingly, Valvoline objects to the assumption by Sears of any Sears' agreements to which it is a party or the assignment of any such agreements to the Buyer to the extent that: (a) Sears does not cure all defaults, and/or (b) the Buyer does not agree to pay all of Valvoline's claims as described in this Limited Objection, and (c) Sears does not confirm that the agreement(s) referenced on the Executory Contracts/Cure Cost Notice is the Master Purchase Agreement and the seven amendments thereto. In addition, Valvoline reserves all of its rights to collect the Valvoline Cure Amount, the Post-Petition Valvoline Invoice Claims, and the Post-Petition Valvoline In Transit Goods Claim from the Buyer or Sears, as applicable, and also reserves Valvoline's recoupment and/or setoff rights with respect to all of these undisputed aforementioned obligations owed by Sears.

## **RESERVATION OF RIGHTS**

27. This Limited Objection is filed with a full reservation of rights, including the right to supplement, modify or amend this Limited Objection, incorporate objections filed by other parties in interest in a subsequent joinder filed with this Court, and/or make such other and further objections to the Executory Contracts/Cure Cost Notice or any assumption or assumption and assignment of the agreements referenced herein until such time as a final order is entered approving the cure costs with respect to the agreement(s). In addition, to the extent that the cure amounts requested herein are not timely paid or other non-monetary cure obligations are not timely fulfilled, Valvoline reserves all of its respective rights. Nothing set forth herein shall constitute a waiver, discharge or disallowance of any and all rights, claims, causes of action and

-13-

defenses. In addition, nothing set forth herein shall be construed as a waiver, release, discharge or disallowance of any and all claims Valvoline has against any of the Debtors.

## **CONCLUSION**

28. Based on the foregoing, the Sale Order should not be entered and the Asset Purchase Agreement should not be approved unless the aforementioned concerns raised by Valvoline herein are addressed.

Dated: January 28, 2019                    **LOWENSTEIN SANDLER LLP**

/s/   *Bruce S. Nathan*
Bruce S. Nathan, Esq.
Eric S. Chafetz, Esq.
1251 Avenue of the Americas
New York, New York, 10020
Tel: (212) 262-6700
Fax: (212) 262-7402
E-mail: bnathan@lowenstein.com
        echafetz@lowenstein.com

*Counsel to Valvoline LLC*