## EXHIBIT A - LEASE

-

**LEASE**

BY AND BETWEEN

**SEARS, ROEBUCK AND CO.,** as tenant

AND

**RICHARDS CANAL STREET PROPERTY, L.L.C.,** as landlord

Dated as of [_____], 2018

Property: 4400 Veterans Memorial Boulevard in Metairie, Louisiana (Store No. 1226)

WEIL:\96641938\6\73219.0007

## LEASE

**THIS LEASE** (this "**Lease**") is made as of the 31st day of July, 2018 ("**Effective Date**"), between **RICHARDS CANAL STREET PROPERTY, L.L.C.**, a Louisiana limited liability company having a principal place of business at 4436 Veterans Memorial Blvd, Metairie, LA 70006 ("**Landlord**") and **SEARS, ROEBUCK AND CO.,** a New York corporation, having an office at c/o Sears, Roebuck and Co., 3333 Beverly Road, Dept. 824RE, Hoffman Estates, Illinois 60179 ("**Sears**").

## W I T N E S S E T H:

**WHEREAS**, pursuant to that certain Purchase and Sale Agreement dated as of June 28, 2018, between SRC Facilities, LLC, an affiliate of Sears, as seller, and Landlord, as buyer, as amended by that certain First Amendment to Purchase and Sale Agreement dated as of July 3, 2018, (the "**PSA**"), Sears agreed to sell to Landlord, and Landlord agreed to purchase from Sears the land more particularly described on **Exhibit A** attached hereto, containing approximately 13.994 acres or 609,576 square feet, and the other property described in the PSA (collectively, the "**Property**");

**WHEREAS**, as a condition to the closing pursuant to the PSA, immediately following the sale of the Property by Sears to Landlord, Landlord is required to lease to Sears, and Sears is required to lease from Landlord, the Premises (as defined below) pursuant to the terms and conditions of this Lease; and

**WHEREAS**, the closing under the PSA occurred on the Effective Date and Sears and Landlord wish to enter into this Lease to complete the transaction.

**NOW, THEREFORE**, Sears and Landlord agree as follows:

1. **Demise**.

(a)      Landlord hereby leases to Sears, and Sears hereby leases from Landlord, the Premises for the Term. From the Effective Date until the date that is One Hundred Twenty (120) days after the Effective Date ("**Auto Center Period**"), the "**Premises**" shall be defined as that certain two-story building located on the Property described as "Sears Two-Story, containing approximately 92,268 square feet ("**Sears Building**"), and that certain one-story building located on the Property described as "Sears Automotive One-Story", containing approximately 18,109 square feet ("**Auto Center**"), all as depicted on **Exhibit B-1** attached hereto. After the Auto Center Period, the "**Premises**", as used herein, shall exclude the Auto Center.. The leasing of the Premises under this Lease shall also include Sears' non-exclusive right to use all parking, access and common areas located on the Property and useful in connection with the Premises ("**Common Areas**"). Notwithstanding Tenant's non-exclusive right to use the Common Areas, Landlord reserves the right from time to time to make changes, alterations, repairs, additions, and/or eliminations (the "**Alterations**") to the Common Areas, as the Landlord or its architect, engineers, designers or planners may deem feasible, necessary, reasonable and/or desirable in connection with the redevelopment of the Property; provided, however, no such change, alteration, repair, addition and/or elimination will be made to the Property (including the Common Areas) which would:  (a)  substantially and adversely interfere with Tenant's business operations; and/or (b)

diminish the parking on the Property that would reduce the number of parking spaces below any parking ratios necessary for Tenant's use as required by the Parish of Jefferson; and/or (c) adversely interfere with access to or visibility of the Premises or the Tenant's existing sign(s). In addition to the foregoing, any Alterations that are to be made to that certain portion of the Property highlighted in yellow on **Exhibit C** attached hereto (the "**Critical Area**") shall require the prior written approval of Sears.  The parties also acknowledge and agree that any Alterations to the loading docks servicing the Premises would substantially and adversely interfere with Tenant's business operations. Tenant acknowledges and agrees that nothing contained in this Section 1 of the Lease shall entitle Lessee to any abatement of rent or constitute an eviction, provided such changes do not materially and adversely affect Tenant's operations at the Premises or access to the Premises and/or do not affect the Critical Area without Sears' prior written approval. All Leases listed on the attached **Schedule 1** together with any license agreements and/or subleases of portions of the Premises (collectively, the "**Sears Leases**") shall continue to inure to the sole benefit of Sears through the Termination Date.  For the avoidance of doubt, Sears expressly retains all rights, remedies and privileges in and to the Sears Leases for the duration of the Term, including all rents payable under the Sears Leases.

       (b)       The parties hereto understand and agree that after the expiration of the Auto Center Period, Landlord shall take possession of the Auto Center and any parking and/or land required to serve such Auto Center as set forth and shaded in blue on **Exhibit B-2** attached hereto, containing approximately 2.152 acres or 93,750 square feet (the "**Auto Center Premises**") [or as the parties shall reasonably agree, provided that the main access to the Property shall remain as part of the Premises] and shall be responsible for all costs incurred by or in connection therewith. For the avoidance of doubt, after the Auto Center Period, in no event shall Sears be responsible for any costs incurred in connection with the Auto Center Premises, and to the extent that Sears shall be required to pay for any such costs, Landlord shall reimburse Sears within five (5) Business Days of demand of payment by Sears. Landlord agrees that the use of or any work conducted at the Auto Center Premises shall not materially and adversely affect Sears' access, use or operation of the Premises.

      2.    **Term**.

       (a)       The term of this Lease shall commence on the Effective Date and shall expire at midnight on the last day of the fifth (5th) Lease Year, unless sooner terminated as provided in this Lease. The time period during which this Lease shall actually be in effect is referred to as the "**Term**".

       (b)       If the date otherwise scheduled for termination or expiration of this Lease is not a Business Day, the Termination Date shall be on the first Business Day thereafter.  A "**Business Day**" means any day other than a Saturday, Sunday or other day on which banks are authorized or required by law to be closed in the jurisdiction in which the Property is located.  A "**Lease Year**" means each successive twelve (12) calendar month period commencing on the first day of a calendar month.  The first Lease Year shall be the twelve (12) month period commencing on the first day of the calendar month immediately succeeding the month in which the Term of this Lease commences plus any partial calendar month during the calendar month in which the Term of this Lease commences.

WEIL:\96641938\6\73219.0007

3.    **Early Termination; Surrender of Possession**.

(a)    **Early Termination By Landlord.**  In addition to any early termination of this Lease that may arise under any other section of this Lease, Landlord may elect to terminate this Lease, but only if such termination is effective after the expiration of the second (2nd) Lease Year (the "Minimum Term"; provided, that as a condition precedent to such termination, Landlord shall provide not less than one hundred eighty (180) days' prior written notice of termination ("Landlord Termination Notice") to Sears.  The Landlord Termination Notice shall indicate the date of the termination of this Lease, which must be a Business Day that does not occur between November 15 of a calendar year and January 15 of the next following calendar year and which must be after the last day of the Minimum Term. For the avoidance of doubt, the Landlord Termination Notice may be delivered to Sears during the Minimum Term.

(b)    **Early Termination by Sears**.  In addition to any early termination of this Lease that may arise under any other section of this Lease, Sears may elect to terminate this Lease, but only if such termination is effective after the last day of the Minimum Term; provided, that as a condition precedent to such termination, Sears shall provide not less than one hundred eighty (180) days' prior written notice of termination ("Sears Termination Notice") to Landlord. Landlord, its agents, contractors, employees, servants and licensees, shall keep the receipt of a Sears Termination Notice and knowledge of such termination confidential for at least ten (10) Business Days after the receipt of the Sears Termination Notice. For the avoidance of doubt, the Sears Termination Notice may be delivered to Landlord during the Minimum Term.

(c)    **Surrender of Possession**.  Upon the first to occur of (i) the expiration of the Term, or (ii) any sooner termination of this Lease pursuant to any other section of this Lease, or (iii) any earlier date as noted in a validly delivered Landlord Termination Notice or a Sears Termination Notice, as applicable (the first of such dates being the "**Termination Date**"), Sears shall surrender possession of the Premises in its "AS-IS," "WHERE-IS" and "WITH ALL FAULTS" condition, free of all subtenants, licensees, leases, subleases, concessionaires and other occupants claiming by, through or under Sears, including the Sears Leases, if any, and without any obligation by Sears to remove any fixtures, furnishings or equipment or other Personal Property. On or prior to the Termination Date, Sears may remove any or all of Sears' fixtures, furnishings, equipment, merchandise, inventory and other personal property (collectively, "**Sears' Property**"), and any of the same remaining after the Termination Date may be removed by Landlord at Landlord's expense. Any fixtures, furnishings or equipment or other Personal Property remaining in the Premises after the Termination Date shall be deemed abandoned by Sears.

4.    **Rent**.

(a)    As consideration for this Lease, Sears shall pay to Landlord annual fixed rent ("**Annual Fixed Rent**") during each Lease Year in the aggregate amounts set forth on **Schedule 2** attached hereto.  The Annual Fixed Rent then in effect shall be payable in equal monthly installments ("**Monthly Fixed Rent**") in advance on or prior to the fifth (5th) day of each month, without previous demand therefor and without any setoff or deduction whatsoever. Monthly Fixed Rent shall be prorated on a per diem basis for any portion of a month.  Any late payment of Monthly Fixed Rent shall incur a fee of 5% of the Monthly Fixed Rent.

WEIL:\96641938\6\73219.0007

(b)    As "**Additional Rent**" Sears shall also pay, during the Auto Center Period, the following:

(i)    with respect to the Taxes (as defined below) assessed against the Property, on or prior to the fifth (5th) day of each month, a fixed monthly amount equal to $20,896.51, which represents $1/12^{th}$ of the aggregate amount of Taxes paid for the calendar year 2017 ;and

(ii)    with respect to Insurance Costs (as defined below), (1) an amount equal to $20,331.82 payable within five (5) Business Days from the Effective Date, which represents Insurance Costs incurred by Landlord to date, and (2) any Insurance Costs incurred thereafter within five (5) Business Days after Landlords' written demand for payment thereafter, subject to adjustment as hereinafter provided.

(c)    From and after the last day of the Auto Center Period, Sears shall instead pay, as Additional Rent, on or prior to the fifth (5th) day of each month, the following:

(i)    Sears' Pro Rata Share (as defined below) of Taxes assessed against the Property; and

(ii)    Sears' Pro Rata Share (as defined below) of Insurance Costs.

(d)    For purposes of this Section 4, the following definitions shall apply:

(i)    Sears' "**Pro Rata Share**" means 84.62%, being a fraction, the numerator of which shall be the total number of square feet of the Premises, and the denominator of which shall be the total amount of square feet of the Property. Notwithstanding the foregoing, if prior to the expiration of the Auto Center Period, a survey of the Auto Center Premises (by either Landlord or Tenant) discloses that the actual square foot area of the Auto Center Premises is less than or more than that stated in the Lease, or if in connection with any Alterations conducted by Landlord or its agents, the square footage of the Premises is reduced, Sears' Pro Rata Share calculations based thereon shall be proportionately reduced or increased. Nevertheless, any increase or decrease in Sears' Pro Rata Share based on the survey as set forth under this section shall not be more or less than five (5%) percent than what is stated in Section 1(b) of the Lease.

(ii)    "**Taxes**" shall mean all taxes and impositions relating to the ownership, leasing and operation of the Property, or any portion thereof, including the land, but excluding any excess profits taxes, franchise taxes, gift taxes, inheritance and succession taxes, estate taxes, documentary transfer taxes, federal or state income taxes, corporate, capital stock or capital gains taxes, penalties incurred as a result of Landlord's failure to pay taxes or to file any tax or informational returns and other taxes to the extent applicable to Landlord's general or net income (as opposed to rents, receipts or income attributable to operations at the Property).

(iii)    "**Insurance Costs**" shall mean the costs incurred by Landlord for insurance premiums, inclusive of any and all charges, costs or expenses incurred by Landlord in connection with the financing of any such premium, for insurance coverages applicable to the Property required to be procured by Landlord under Section 9 of the Lease.

WEIL:\96641938\6\73219.0007

(e)      Landlord shall give prompt notice to Sears of all Taxes and Insurance Costs, payable by Sears hereunder of which Landlord at any time has knowledge and shall send copies of all bills and notices received by Landlord to Sears together with all relevant backup information and materials.   Promptly after receipt of such notice and any additional relevant backup information or materials reasonably requested by Sears, the actual amount of Additional Rent in respect of Taxes and Insurance Costs will be adjusted between Landlord and Sears in cash. Provided that Sears is not then in default under this Lease (beyond applicable notice and cure periods), Sears reserves the right to audit the books and records of Landlord with respect to any component of Additional Rent within one (1) year of the expiration of the year to which such Additional Rent relates.  If the Termination Date occurs on any day other than the last day of a calendar month, Sears will be entitled to a refund in an amount equal to Monthly Fixed Rent and Additional Rent theretofore paid under this Lease allocable on a per-diem basis to the remainder of the month. Notwithstanding anything set forth to the contrary herein, in the event the Taxes on the Premises increase as a result of Landlord's use, redevelopment, work or otherwise on the Auto Center Parcel, Landlord shall pay the cost of such increase.

(f)      Annual Fixed Rent, Monthly Fixed Rent and Additional Rent shall be collectively referred to herein as "**Rent**."

(g)      Subject to Section 4, all Taxes applicable to the last year of the Term shall be prorated between the parties on a per diem basis based on the most recent and available tax bill and adjusted in cash once actual taxes are known.  Landlord shall give prompt notice to Sears of all Taxes payable by Sears hereunder of which Landlord at any time has knowledge.

5.      **Alterations; "Going out of Business Sale"; Signage**.

(a)      Except as otherwise provided herein, without first obtaining Landlord's prior written consent (such consent not to be unreasonably withheld, conditioned or delayed), Sears shall not make or cause to be made any alterations to the building structure or building systems or any other material alterations or install any additional permanent fixtures to the Premises. Notwithstanding the preceding sentence, Sears (and any of its subtenants, licensees or other occupants) shall not be required to obtain any consent from Landlord for (1) any minor or non-structural alterations to the Premises, (2) placing temporary signs on the Premises in connection with its store-closing operations or (3) any non-structural alterations to the Premises in connection with any Necessary Curtailments, or any other reduction in business operations or reduction in utilizing space within the Premises. "**Necessary Curtailments**" means repairs, alterations, Ordinary Repairs and any Major Repair/Capital Improvement, Casualty, customary acts or events of force majeure, and events beyond the reasonable control of Sears.   Notwithstanding the foregoing, Sears, at its expense, may at any time and from time to time make alterations and/or additions to the Premises provided that (A) the market value of the Premises shall not be reduced or its usefulness impaired, (B) the work shall be done expeditiously and in a good and workmanlike manner, (C) Sears shall comply with all legal requirements applicable to the work and (D) Sears shall promptly pay all costs and expenses and discharge any and all liens arising in connection with the work in accordance with the terms hereof. Notwithstanding the foregoing, Sears, at its expense, may install or assemble or place on the Premises, and remove and substitute, any items of machinery, equipment, furniture, furnishings, trade fixtures or other Sears' Property, including,

6

but not limited to, all conveyer and material handling systems and related equipment, used or useful in Sears' business.

(b)    Notwithstanding any provision herein to the contrary, at any time during the Term of this Lease, Sears shall have the right to conduct a "going out of business sale" and to cease store operations and to remove Sears' Property and prepare for the turnover of possession of the Premises to Landlord pursuant to the provisions of this Lease. In the event that Sears shall cease store operations prior to the expiration of the Minimum Term, Sears shall provide Landlord with notice at least one hundred eighty (180) days' prior to the date that Sears shall cease operations ("**Cessation Date**"), and Landlord, in its sole and absolute discretion, may elect to (i) take possession of the Premises after the Cessation Date, upon providing Sears with notice at least sixty (60) days' prior to the date that Landlord shall take possession of the Premises ("**Recapture Date**"), in which event, Sears shall only be obligated to pay Rent under this Lease until the Recapture Date, or (ii) not take possession of the Premises and instead require Sears to pay Rent for the remainder of the Minimum Term.

(c)    Sears shall have the option to erect and maintain, subject to Landlord's prior written consent as well as applicable legal requirements and matters of title to which this Lease is subordinate, at its sole cost and expense, upon any portion of the Premises, signs of such height and other dimensions bearing such legend or inscription as Sears may determine.

6.    **Use; Operation**.  Except as expressly provided in this Lease, Sears shall not have any obligation to operate or use or conduct business in or on any of the Premises, provided however, Sears may use the Premises, if it operates at all, solely as a Sears retail store and for no other purpose or use without Landlord's prior written consent, which consent shall not be unreasonably denied, withheld or delayed.

7.    **Access and Cooperation**.  Upon reasonable prior notice to Sears, Landlord and its representatives shall have access to the Premises for purposes of a visual inspection during normal business hours; provided, however, that in emergency circumstances Landlord and its representatives may have immediate access to the Premises at any time after making all reasonable attempts to contact Sears, but otherwise without the necessity of prior notice.  In connection with any such access or entry, Landlord and its representatives shall (a) not unreasonably interfere with Sears' or any subtenant's, licensee's or other occupant's business operations at the Premises (including the business operations pursuant to any Sears Leases), (b) not conduct any physical testing or invasive studies, and (c) promptly restore or repair any damage occasioned by such access or entry.

8.    **Services and Repairs; Utilities**.

(a)    Sears shall accept the Premises in its existing condition as of the Effective Date, "as is," "where is," and "with all faults" and without any written or verbal representations or warranties whatsoever, whether express or implied, other than representations and warranties expressly set forth in this Lease.

(b)    Subject to the foregoing and the following provisions of this <u>Section 8</u> and the other terms and conditions of this Lease, Landlord shall have no obligation to supply any

services or make any ordinary repairs to the Premises or Property, the parties expressly intending that subject to the further provisions of this Section 8 and the other terms and conditions of this Lease, Sears' current arrangements for all other services and general maintenance and ordinary repairs shall continue at Sears' election unaffected during the Term (and Landlord shall not interfere with same) provided that, Landlord agrees to maintain the Common Areas of the Property in a manner reasonably consistent with the Common Areas of the Clearview Mall located immediately adjacent and contiguous to the Property and Sears shall pay to Landlord Sears' Pro Rata of the reasonable costs of such maintenance. For the avoidance of doubt, in the event Sears' Pro Rata Share decreases in connection with Landlord's Alterations or otherwise pursuant to this Lease, Sears shall only pay Common Area costs based on the reduced Pro Rata Share.

(c)       Subject to the provisions hereinafter set forth and Section 5, Sears and not Landlord shall be responsible for the ordinary repair and maintenance of the Premises in a manner substantially consistent with Sears' past practice with respect to the Premises; provided that, subject to the provisions hereinafter set forth, (i) Sears shall not be responsible for funding any Major Repair/Capital Improvement, and (ii) Sears shall be responsible for funding any repair (excluding any item of regular or general maintenance to the Premises) which is not a Major Repair/Capital Improvement and which is not covered by net proceeds received by Sears with respect to applicable insurance, if any ("**Ordinary Repairs**"), subject to an aggregate cap of $75,000 for such Ordinary Repairs in any consecutive twelve (12) month period (the "**Repair/Capital Threshold**"). Any Ordinary Repairs reasonably necessary above such cap will be considered to be a Major Repair/Capital Improvement. In the event that a repair is required solely as a result of the gross negligence or intentional omissions of Sears, then Sears shall be required to make such repair, irrespective of the Repair/Capital Threshold or Major Repair/Capital Improvement cap set forth below.

(i)       A "**Major Repair/Capital Improvement**" shall mean (with respect to one event or one item, or a series of directly related events or items, and not an aggregate of separate unrelated events or separate unrelated items) a repair (to the extent not covered by the net proceeds received by Sears with respect to applicable insurance, if any) or a capital improvement costing (or which is reasonably estimated to cost) in any case in excess of $200,000. In the event Sears and Landlord, both acting in good faith,  determines that a Major Repair/Capital Improvement is reasonably necessary to continue business operations by Sears in such a manner as being conducted as of the date of said Major Repair/Capital Improvement became necessary, Sears may elect not to fund the Major Repair/Capital Improvement and terminate this Lease upon not less than ninety (90) days' prior written notice to Landlord, but, prior to exercising such termination right, Sears must notify Landlord of the necessity for any such Major Repair/Capital Improvement and the cost (or reasonably estimated cost) of such Major Repair/Capital Improvement. Landlord shall have the opportunity for a period of ten (10) days after receipt of such notice from Sears to notify Sears that Landlord irrevocably commits to fund the amount of such Major Repair/Capital Improvement in excess of $200,000 (with Sears funding the first $200,000). If Landlord timely elects to fund and actually funds such excess within ten (10) days after it provides its election to fund notice to Sears, then Sears shall not have a termination right as it relates to such Major Repair/Capital Improvement and shall be obligated to make any such Major Repair/Capital Improvement (subject to the terms and provisions of this Lease and subject to reimbursement by Landlord as set forth above).

(ii)    As set forth above, Sears' responsibility for funding Ordinary Repairs is subject to the Repair/Capital Threshold. The Repair/Capital Threshold shall be implemented as provided in this Section 8(c)(ii). In the event that Sears has expended, or is reasonably expected to expend, funds (in a consecutive twelve (12) month period) on Ordinary Repairs in excess of the Repair/Capital Threshold, Sears may elect not to fund any further Ordinary Repairs for the balance of the twelve (12) consecutive month period at issue and terminate this Lease upon not less than ninety (90) days' prior written notice to Landlord. However, prior to exercising such termination right, Sears must notify Landlord of the necessity (as reasonably determined jointly by Sears and Landlord, both acting in good faith) for any such Ordinary Repairs and the cost (or reasonably estimated cost) of such Ordinary Repairs. Landlord shall have the opportunity for a period of ten (10) days after receipt of such notice from Sears to notify Sears that Landlord irrevocably commits to fund the amount of such Ordinary Repairs in excess of the Repair/Capital Threshold for the balance of the twelve (12) consecutive month period at issue. If Landlord timely elects to fund and actually funds such excess within ten (10) days after Landlord provides its election to fund notice to Sears, then Sears shall not have a termination right as it relates to such Ordinary Repairs for that twelve (12) consecutive month period and shall be obligated to make any such Ordinary Repairs (subject to the terms and provisions of this Lease and subject to reimbursement by Landlord as set forth herein).

(iii)    Except as expressly set forth above and elsewhere in this Lease, Sears shall have no obligation to make any repairs or replacements or capital expenditures of whatever nature during the Term (except as and to the extent necessitated by Sears' failure to perform general maintenance with respect to the Premises in accordance with the terms hereof), but Sears may do so at any time at its election. Sears may continue to exercise and enforce exclusively any and all rights of the owner or landlord under the Sears Leases and the Service Contracts (including, without limitation, with respect to maintenance and upkeep of the Premises), and Landlord agrees to reasonably cooperate with Sears at no cost to Landlord in connection therewith.

(d)    Sears shall pay directly to the utility company(ies), the cost of all utilities consumed by Sears during the Term. For the avoidance of doubt, after the Auto Center Period, Sears shall only be responsible for the payment of utilities consumed by Sears in connection with the Premises, and any utilities incurred in connection with the Auto Center Premises and paid by Sears shall be reimbursed to Sears by Landlord, within five (5) Business Days after Sears' demand of payment thereof. Further, after the Auto Center Period, Sears agrees to take any and all action reasonably necessary to disconnect the utilities serving the Auto Center or the Auto Center Premises, provided its shall bear no expenses in connection therewith.

9.    **Insurance; Casualty**.

(a)    Sears shall maintain all personal property and liability insurance programs presently in effect or as replaced by Sears from time to time in accordance with its general corporate policies throughout the Term. Landlord shall maintain commercial general public liability insurance for the common area of the Property and all-risk property damage insurance covering the Premises and other building improvements on the Property (including, but not limited to, earthquake, terrorism and/or flood insurance, if purchased by Landlord), and such other types and amounts of coverage that commercially reasonable and consistent with the types and amounts

WEIL:\96641938\6\73219.0007

of coverages that would be purchased by prudent owners of properties similar in type to and in the general vicinity of the Property, and Sears shall pay to landlord the costs of such insurance maintained by Landlord with respect to the Premises in accordance with Section 4.

(b)    This Lease shall terminate at the election of Sears upon the occurrence of a fire or other casualty ("**Casualty**") which results in material damage to the Premises (i.e., the portion of the Premises that is destroyed or damaged is twenty-five percent (25%)or more of the heated floor area of the Premises or materially affects the use and occupancy of the Premises, with an appropriate prorated refund to Sears on a per-diem basis of all prepaid Monthly Fixed Rent and Additional Rent. If Sears elects not to terminate this Lease in the event of a Casualty which results in material damage to the Premises, all Monthly Fixed Rent and Additional Rent with respect to the portion of the Premises which is damaged shall be abated on a per-square-foot basis. If this Lease is terminated as provided herein, Sears, at Sears' election, shall have a period of up to one hundred twenty (120) Business Days (as elected by Sears), for the purpose of winding down its business operations and removing any or all of Sears' Property at its election from the Property without payment of any Rent. In no event shall Sears or Landlord be obligated to make any repairs or restorations in the event of damage to the Premises resulting from a Casualty.

(c)    If Landlord shall be advised by a condemning authority or otherwise has knowledge of a proposed condemnation or other taking of the Property (or a portion thereof), then Landlord shall promptly give notice thereof to Sears. Upon any actual exercise by any governmental power (by legal proceedings or otherwise), by any public or quasi-public authority or by any other Person having the right of eminent domain or a voluntary sale or transfer by Landlord to any of the foregoing either under the threat of exercise of eminent domain or while legal proceedings for condemnation are pending with respect to a material portion of the Premises (i.e., twenty-five percent (25%) or more of the heated floor area of the Premises or the portion of Property taken materially affects the use and occupancy of the Premises) (collectively, a "**Condemnation Action**"), this Lease shall automatically terminate, except as provided below, as of the date on which title to the property subject to the Condemnation Action is vested in the condemnor. Sears, at Sears' election, shall have a period of up to one hundred twenty (120) Business Days (as elected by Sears) after Sears receives notice a Condemnation Action (but in no event later than the date of the actual Condemnation Action) during which to wind down its business operations and remove any or all of Sears' Property at its election from the Premises without payment of any Rent.

10.    **Default**.

(a)    **By Sears**.

(i)    Defaults by Sears are: (A) failing to timely pay Monthly Fixed Rent or Additional Rent, if such Monthly Fixed Rent and/or Additional Rent is not paid within seven (7) Business Days after receipt of written notice from Landlord of nonpayment; or (B) failing to observe or perform any other material obligations of Sears hereunder for a period of thirty (30) days after receipt of written notice from Landlord of such failure (or such longer period as may be reasonably required to cure such failure, provided that Sears is diligently prosecuting such cure to completion). As a remedy for a default by Sears, Landlord may give Sears written notice of Landlord's intention to terminate this Lease (the "**Default Termination Notice**") at the end of the

WEIL:\96641938\6\73219.0007

expiration of thirty (30) days from the date of the giving of such Default Termination Notice, and, in such event, this Lease and the Term shall terminate upon the expiration of such thirty (30) days with the same effect as if the last of such thirty (30) days was the date originally set forth herein for the expiration of the Term.  No default shall be deemed to exist under clause (B) during any time the curing thereof is prevented by Necessary Curtailments provided that upon the cessation of such Necessary Curtailments (subject to <u>Section 9</u>) Sears shall prosecute such cure without further delay.

(ii)     If (A) Sears becomes bankrupt, makes an assignment for the benefit of creditors, or applies for or consents to the appointment of a trustee or receiver for Sears or for the major part of its property; (B) a trustee or receiver is appointed for Sears or for the major part of its property; or (C) any voluntary or involuntary proceedings are filed by or against Sears under any bankruptcy, insolvency or similar laws, Landlord may give Sears written notice of intention to terminate this Lease (the "**<u>Bankruptcy Termination Notice</u>**") at the end of the expiration of thirty (30) days from the date of giving such Bankruptcy Termination Notice, and in such event, this Lease and the Term shall terminate upon the expiration of such thirty (30) days with the same effect as if the last of such thirty (30) days was the date originally set forth herein for the expiration of the Term.

(iii)     Subject to the provisions of <u>Section 10(a)(iv)</u> below, upon the termination of this Lease in accordance with the provisions of this <u>Section 10(a) or otherwise,</u> Sears shall remain liable to Landlord for any portion of the Monthly Fixed Rent and Additional Rent due through the end of the Minimum Term (less the net proceeds, if any, of any reletting of the Premises or any part thereof and the avails of any continuing Sears Leases) plus any expenses or costs incurred by Landlord for the ordinary repair and maintenance of the Premises and Property necessary during the period of any such default by Sears..  In any event, Landlord shall make reasonable efforts to mitigate damages.

(iv)     Except as provided in Section 10(a)(iii) above and Section 25, Sears shall not be liable in damages of any kind for any default under this Lease by Sears, including any consequential, special, punitive or other damages, or any other costs, fees or expenses.  Further, Landlord acknowledges that Landlord's remedies for any default or breach of this Lease by Sears shall be, at its sole election, either: (i) Landlord's right to terminate this Lease as set forth in <u>Section 10(a)(i) and Section 10(a)(ii), or (ii) Landlord's right to collect any amounts due under Section 10(a)(iii) in any manner not inconsistent with applicable law.</u>  Neither Sears nor any member, partner (general or limited), manager, officer, director, shareholder or principal of Sears shall have any personal liability whatsoever for the payment or collection of any judgment requiring the payment of money by Sears in the event of a default by Sears with respect to the terms, covenants and conditions of this Lease to be observed and/or performed by Sears.

(v)     Failure of Landlord to declare immediately upon occurrence of a default by Sears or delay in taking action in connection therewith shall not waive such default, but Landlord shall have the right to declare default by Seras at any time; no waiver or any default shall alter Sears' obligations under the Lease with respect to any other existing or subsequent default by Sears.

WEIL:\96641938\6\73219.0007

(b)    **By Landlord.**    Defaults by Landlord are (i) failing to timely pay any amount to be paid by Landlord hereunder, if such amount is not paid within seven (7) Business Days after receipt of written notice from Sears of nonpayment; or (ii) failing to observe or perform any other material obligations of Landlord hereunder for a period of thirty (30) days after receipt of written notice from Sears of such failure (or such longer period as may be reasonably required to cure such failure, provided that Landlord is diligently prosecuting such cure to completion). In the event of any default by Landlord, Sears may give Landlord written notice ("**Sears Notice**") of Sears' intention to cure any or all non-monetary defaults of Landlord, in which event Landlord shall pay to Sears the reasonable cost of curing the same upon demand. Any payment due to Sears hereunder for reasonable cure costs shall be reimbursed by Landlord within thirty (30) days after receipt by Landlord of written demand for payment together of copies of all invoices evidencing any costs due to Sears. However, except as set forth below, under no circumstances, may Sears off-set or apply any amounts owed by Sears against payments or rents due by Sears to Landlord. It is specifically understood and agreed that there shall be no personal liability of Landlord's agents and/or members with respect to any of the covenants, conditions, or provisions of this Lease. In the event of a breach or default by Landlord of any of its obligations under this Lease, Sears may collect any amounts due under this Section 10(b) in any manner not inconsistent with applicable law; provided, however, Sears shall look solely to the assets of the Landlord for the satisfaction of Sears' remedies. Notwithstanding the foregoing, in the event that Landlord fails to observe or perform any obligations hereunder with respect to the Critical Area, in addition to the remedies set forth above, Sears shall have the right to (x) set off against the Rent and all other sums due or becoming due from Sears to Landlord hereunder, the amount of all sums as to which Landlord is in default, together with the reasonable cost of curing all non-monetary defaults of Landlord in the event Sears elects to cure the same or (y) in the Sears Notice, terminate this Lease at the end of the expiration of thirty (30) days from the date of giving such Sears Notice, and in such event, this Lease and the Term shall terminate upon the expiration of such thirty (30) days with the same effect as if the last of such thirty (30) days was the date originally set forth herein for the expiration of the Term; provided however, Sears shall have until the date that is One Hundred Twenty (120) days after the date of such expiration to close the Sears store and remove its property from the Premises. The provisions of this Section 10(b) shall survive the expiration or sooner termination of this Lease.

11.    **Assignment/Subleasing**.

(a)    Sears shall not have the right to assign or sublet, all or any portion of its leasehold interest during the Term without Landlord's prior approval, which approval shall not be unreasonably withheld, denied or delayed, provided however, Sears shall have the right to grant licenses and concessions, department arrangements and other rights in connection with the operation of the business without Landlord's consent.

(b)    Sears shall also have the right, without Landlord's approval, to (i) assign this Lease to Parent or any Subsidiary of Sears; (ii) assign or transfer all of Sears' rights and obligations under this Lease (either directly or indirectly, by operation of law or through a merger or other corporate transaction) to any other Person that (1) acquires all or substantially all of the assets of Sears Holdings Corporation ("**Parent**"), (2) is the surviving entity of a merger with Parent, or (3) results from a consolidation, reorganization or recapitalization of Parent with a solvent corporation, partnership or other legal entity; or (iii) assign or transfer all of Sears' rights

12

and obligations under this Lease to any Person that concurrently acquires not less than ten (10) Sears' stores (including the Premises) by purchase, consolidation, merger or spin-off; provided, that in each case the successor tenant (if not the named tenant herein, the "**Unrelated Successor Tenant**") assumes all of Sears' obligations under this Lease (except that any such Unrelated Successor Tenant shall not be required to comply with any operating covenant provided for herein). In the case of an assignment or transfer in connection with clause (iii) above, Sears shall be released from all liability under this Lease provided the assignee has a net worth of not less than $22,000,000 as of the effective date of such assignment or transfer and the assignee assumes in writing the obligations of Sears under this Lease which arise on and after the date upon which the assignment becomes effective. As used in this Lease, (x) "**Subsidiary**" means, as to any Person, (i) any corporation more than fifty percent (50%) of whose stock of any class or classes having by the terms thereof ordinary voting power to elect a majority of the directors of such corporation (irrespective of whether or not at the time stock of any class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time of determination owned by such Person and/or one or more Subsidiaries of such Person, and (ii) any partnership, limited liability company, association, joint venture or other entity in which such person and/or one or more Subsidiaries of such person has more than a fifty percent (50%) equity interest at the time of determination and (y) "**Person**" or "**person**" means any natural person, partnership, limited partnership, limited liability company, corporation, trust, estate, association, unincorporated association or other entity.

(c)    Regardless of Landlord's consent, no subletting or assignment shall release Sears of Sears' obligations or alter the primary liability of Sears (i) to pay all Annual Fixed Rent, all Additional Rent, and all other sums due under the Lease; and (ii) to perform all other obligations of Sears hereunder. The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision hereof. Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting. In the event of default by any assignee of Sears or any successor of Sears, in the performance of any of the terms hereof, Landlord may proceed directly against Sears without the necessity of exhausting remedies against said assignee. In the event of a sale or conveyance by Landlord of the Premises (or any portion thereof), the same shall be made subject to this Lease (and any Sears Leases) and Landlord shall only be released from any liability under this Lease accruing after the date of any such conveyance, provided the assignee shall assume and agree to keep and perform all of the terms of this Lease on the part of Landlord to perform from and after the date of any such conveyance and a copy of the assignment and assumption agreement executed by Landlord and assignee shall be delivered to Sears.

12.    **Governing Law.**  This Lease shall be governed by and construed in accordance with the laws of the state in which the Property is located applicable to agreements made, and to be wholly performed, in such state.

13.    **Waiver of Trial by Jury.**  LANDLORD AND SEARS EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THEM AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE OR THE LANDLORD-TENANT RELATIONSHIP, WHETHER ARISING IN CONTRACT, IN TORT OR OTHERWISE.

WEIL:\96641938\6\73219.0007

14.     **Binding Effect.**  Subject to <u>Section 11</u> above, this Lease shall bind and inure to the benefit of the parties hereto and their respective permitted successors and assigns.

15.     **Complete Agreement; No Oral Modification.**  This Lease may not be altered or terminated, nor may its provisions be waived, except in a writing signed by Sears and Landlord. This Lease, together with the PSA and the documents referred to in the PSA or executed in connection with the Closing thereunder, represents the entire agreement and understanding of the parties with respect to the subject matter hereof, and completely supersedes and integrates any and all other promises, understandings and agreements between the parties (including all of the same by and between any of the parties' agents and representatives on behalf of the parties), both oral and written.

16.     **Counterparts.**  This Lease may be executed in two or more counterparts and by facsimile or electronic signatures which taken together shall constitute collectively one agreement. In making proof of this Lease it shall not be necessary to produce or account for more than one such counterpart with each party's original, facsimile or electronic signature.

17.     **Invalidity.**  If any term or provision of this Lease shall to any extent or for any reason be held invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease, but this Lease shall be valid and enforceable to the fullest extent permitted by law, subject to such modification hereof as may be necessitated by such invalidity, illegality or unenforceability provided that the purpose and intent hereof is not in any way abrogated.

18.     **Notices.**

(a)     Notices shall be either (i) personally delivered, (ii) sent by a nationally recognized overnight courier delivery service, or (iii) mailed by United States registered or certified mail, return receipt requested, postage prepaid, deposited in a United States post office or a depository for the receipt of mail regularly maintained by the post office.  If personally delivered, then such notices shall be effective when received as evidenced by affidavit of the Person making such delivery; if sent by overnight courier delivery service then such notices shall be deemed to have been received by the addressee on the next Business Day following the date so sent; if mailed, then such notices or other communication shall be deemed to have been received by the addressee on the fifth (5th) Business Day following the date deposited with the United States mail.  The inability to make delivery because of changed address of which no notice was given or by reason of rejection or refusal to accept delivery of any notice shall be deemed to be receipt of the notice as of the date of such inability to deliver or rejection or refusal to accept.  All notices, demands or requests made pursuant to, under or by virtue of this Lease must be in writing and addressed as follows:

If to Sears:

c/o Sears Holdings Corporation
3333 Beverly Road, Dept. 824RE
Hoffman Estates, IL 60179

WEIL:\96641938\6\73219.0007

Attention:  President, Real Estate
Telephone:  (847) 286-5303

With copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention:  W. Michael Bond, Esq.
Telephone: (212) 310-8035
Email:  Michael.Bond@Weil.com

and

c/o Sears Holdings Corporation
3333 Beverly Road, Dept. 824RE
Hoffman Estates, IL 60179
Attention: Associate General Counsel, Real Estate
Telephone: (847) 286-1719

If to Landlord:

Richards Canal Street Property, LLC
4436 Veterans Memorial Blvd.
Metairie, Louisiana 70006
Attention: Thomas E. Richards
Telephone: 504-885-0202
Email:  trichards@clearviewmall.com

With a copy to:

Richards, Higdon, Huguet & Campani, LLC
69090 Highway 190 East Service Road, Suite 200
Covington, Louisiana 70433
Attention:  Christina Huguet
Telephone: 985-327-7227
Email:  chuguet@rhhclaw.com

(b)     All notices (i) shall be deemed to have been given on the date that the same shall have been delivered in accordance with the provisions of this Section and (ii) may be given either by a party or by such party's attorneys.  Any party may, from time to time, specify as its address for purposes of this Lease any other address upon the giving of five (5) days' prior notice thereof to the other parties.

19.   **Subject to Existing Agreements.**

(a)     Intentionally Omitted.

WEIL:\96641938\6\73219.0007

(b)     Landlord may, from time to time, upon thirty (30) days' prior written notice to Sears (at Landlord's cost and expense) and provided that, the Critical Area is not affected: (a) grant easements and other rights in the nature of easements, (b) release existing easements or other rights in the nature of easements which are for the benefit of the Property, (c) subdivide or parcelize all or a portion of the Property, (d) dedicate or transfer unimproved portions of the Property for road, highway or other public purposes, (e) execute petitions to have the Property annexed to any municipal corporation or utility district, (f) execute amendments to any covenants and restrictions affecting the Property, and Sears shall execute and deliver to any person any instrument appropriate to confirm or effect such grants, releases, subdivisions, parcelizations, dedications and transfers to the extent of its interest in the Property (or execute such instrument in its own name); provided, however, that the rights granted to Landlord pursuant to the provisions of this Subsection (and the obligation of Sears to execute such instrument) are subject to thirty (30) days' prior written notice to Sears which notice shall include (x) a certificate of an authorized person of Landord (A) describing such grant, release, subdivision, parcelization, dedication, transfer, petition or amendment, (B) stating that such grant, release, subdivision, parcelization, dedication, transfer, petition or amendment is not detrimental to the proper conduct of the business of Sears on the Property and does not materially impair the usefulness of the Property for the purposes contemplated and permitted hereby,  and (y) duly authorized and binding unconditional undertakings of Landlord that it will remain obligated hereunder to the same extent as if such grant, release, subdivision, parcelization, dedication, transfer, petition or amendment had not been made, and that Landlord will perform all obligations of Landlord under such instrument during the Term.

**20.**    **Mechanic's Liens.**    Sears shall not permit any mechanic's, laborer's or materialman's lien to be filed at any time against the Premises or any part thereof by reason of work performed with prior authorization by or on behalf of Sears or any agent or contractor claiming by, through or under Sears, which are not bonded or discharged within the later of sixty (60) days (a) of filing or (b) Sears' actual notice thereof.

**21.**    **Estoppels.**    At any time and from time to time, upon not less than ten (10) Business Days' prior request, either party (the "**Requesting Party**") may request that the other party (the "**Certifying Party**") furnish to the Requesting Party (and its lenders or purchasers) a certificate (signed by a person duly authorized to sign on behalf of the Certifying Party) certifying as follows: (a) that this Lease is unmodified and in full force and effect (or that this Lease is in full force and effect and modified and setting forth the modifications), (b) the dates to which the Monthly Fixed Rent and any Additional Rent have been paid and the amount thereof then payable, (c) that the Certifying Party does not know of any default in the performance of any provisions of this Lease or specifying any default of which the Certifying Party may have knowledge and stating what action the defaulting party is taking or proposes to take with respect thereto and (d) any other information reasonably requested by the Requesting Party.

**22.**    **Indemnification; Waiver of Subrogation**.

(a)     Sears shall indemnify, defend and hold Landlord harmless from and against all claims, actions, damages, liability and expense, including reasonable attorneys' fees ("**Loss**"), in connection with bodily injury, the loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Premises to the extent caused by any act or omission of Sears and its agents, contractors, employees, servants or licensees, except to the extent that such

16

Loss is caused by the wrongful or negligent acts or omissions of Landlord, its agents, contractors, employees, servants or licensees (as to all of which Loss Landlord shall indemnify, defend and hold harmless Sears) and except to the extent that the exclusion of any such liability on behalf of Landlord, its agents, contractors, employees, servants or licensees is prohibited by Louisiana law. The comprehensive general liability maintained by Sears pursuant to Section 9 of the Lease shall specifically insure the contractual obligations of Sears as set forth in this Section and/or as provided in this Lease. Sears, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to persons, in, upon or about the Premises arising from any cause, and Sears hereby waives all claims in respect thereof against Landlord.

(b)    Landlord shall indemnify, defend and hold Sears harmless from and against any Loss, in connection with bodily injury, the loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Property (exclusive of the Premises) to the extent caused by any act or omission of Landlord and its agents, contractors, employees, servants or licensees, except to the extent that such Loss is caused by the wrongful or negligent acts or omissions of Sears, its agents, contractors, employees, servants or licensees (as to all of which Loss Sears shall indemnify, defend and hold harmless Landlord).

(c)    Each party releases and waives any and every claim and right of recovery against the other which arises or may arise in its favor and against the other party during the Term for any and all loss of or damage to any of its property located within or upon or constituting a part of its respective premises, which loss or damage is customarily covered by the property insurance carried by each party under this Lease, or would have been covered if each party had carried the insurance that such party is required to carry under this Lease. This mutual waiver shall be in addition to, and not in limitation or derogation of, any other waiver or release contained in this Lease with respect to any loss of or damage to property of the parties. Landlord and Sears agree to furnish to each insurance company which has or will issue property damage policies on its premises, notice of the terms of the mutual waivers and to have the insurance policies properly endorsed, if necessary, to acknowledge the subrogation waivers.

(d)    The provisions of this Section shall survive the Termination Date.

**23.    Hold Over.**  No holding over by Sears nor acceptance of Monthly Fixed Rent, Additional Rent or other charges by Landlord shall operate as a renewal or extension of this Lease without the written consent of Landlord. Should Sears hold over after the Termination Date without the consent of Landlord (excluding the possible extensions in Section 9, Section 22 or elsewhere in this Lease), this Lease shall continue in force from month to month, subject to all of the provisions hereof, except that Sears shall owe 200% of the Annual Fixed Rent for the period of any such holdover.

**25.    No Restrictions On Sears Financing.**  Sears may continue to finance all receivables, inventory and other Personal Property and enter into financing leases of movable property and equipment, in the ordinary course of business.

17

24.     **Subordination; Quiet Enjoyment**.

(a)     Subject to and expressly conditioned upon the provisions of Section 25(b), including receipt of an SNDA from each Landlord's Mortgagee and each Ground Lessor in accordance with Section 24(b) below, this Lease and all rights of Sears hereunder hereby are made and shall be subject and subordinate in all respects to the lien of all present and future ground leases (collectively, "**Ground Leases**") and mortgages (collectively, "**Landlord's Mortgages**") which may now or hereafter encumber Landlord's interest in the Property, provided that no such Ground Leases or Landlord's Mortgages shall increase any liabilities or obligations nor decrease any rights or remedies of Sears under or with respect to this Lease.

(b)     Notwithstanding the foregoing or any such subordination, or any other provision contained in this Lease to the contrary, so long as Sears shall not be in default of the express provisions of this Lease (without reference to any such Ground Leases or Landlord's Mortgages) beyond any applicable grace, notice or cure period, Landlord covenants and agrees that Sears shall peacefully and quietly possess and enjoy the Premises and all rights of Sears under this Lease in accordance with all terms and conditions hereof (without reference to Section 24(a) hereof), without hindrance or disturbance and free from all rights and claims of Landlord and all of all Persons claiming by or through Landlord, including under any such Ground Leases and Landlord's Mortgages. As a condition precedent to the subordination of this Lease to the interest of the holders of any such Landlord's Mortgages (collectively, the "**Landlord's Mortgagees**") and the ground lessors under any such Ground Leases (collectively, the "**Ground Lessors**"), Landlord must obtain from each of any such Landlord's Mortgagees and Ground Lessors (each an "**SNDA Party**"), an SNDA which shall (x) provide, among other things, that such SNDA Party, as well as any person who acquires any portion of the Premises in a foreclosure or similar proceeding or in a transfer in lieu of any such foreclosure or a successor owner of the Property (each, a "**Foreclosure Purchaser**"), will not disturb either Sears' leasehold interest or possession of the Premises in accordance with the terms hereof, nor any of Sears' rights, privileges and options, and shall give effect to this Lease as if such SNDA Party or Foreclosure Purchaser were the landlord under this Lease so long as there is not then any outstanding and continuing default by Sears under this Lease which has remained uncured beyond the time periods specified in Section 10 (except that (a) such SNDA Party or Foreclosure Purchaser shall not be subject to any prior offsets or defenses which Sears might have against Landlord except related to a Landlord default under Section 10(b)(ii) (but subject to such SNDA Party's or Foreclosure Purchaser's continuing obligations as landlord); (b) such SNDA Party or Foreclosure Purchaser shall not be bound by any rent or additional rent which Sears might have paid more than one (1) month in advance to Landlord; (c) such SNDA Party or Foreclosure Purchaser shall not be bound by any escrow deposit for taxes, insurance, maintenance, single or payment made under this Lease (including, without limitation, any security deposit) unless such SNDA Party or Foreclosure Purchaser shall have taken actual possession of such sums; (d) such SNDA Party or Foreclosure Purchaser shall not be bound by any prior obligation under this Lease to make any payment to Sears; (e) such SNDA Party or Foreclosure Purchaser shall not be bound by any surrender or termination or any amendment or modification of this Lease which is made without such SNDA Party's or Foreclosure Purchaser's consent; and (f) such SNDA Party or Foreclosure Purchaser shall not be obligated to commence, complete and perform any construction and make any contributions and allowances toward construction or installation of any improvements upon the

WEIL:\96641938\6\73219.0007

Property required under this Lease and any expansion or rehabilitation of existing improvements thereon), and (y) also be in form and substance reasonably satisfactory to Sears.

**25.    Attorneys' Fees**.  In the event of litigation between the parties to enforce this Lease or if any legal action is instituted as a result of a default by either party under this Lease that is not cured within the applicable cure period, the prevailing party in such action shall be entitled to recover from, or be reimbursed by the other party for, its reasonable and actual attorneys' fees and costs through all levels of proceedings.

**26.    Sears Rights**.  Intentionally Omitted.

**27.    Lease Not to Be Recorded**.  The parties agree that this Lease shall not be recorded.

**28.    Discretion**.  Except as otherwise expressly provided herein, any agreement, approval, consent or other determination shall not be effective unless it is in writing and shall be in the sole and absolute discretion of such party.

**29.    Section Headings**.  The headings of the various sections of this Lease have been inserted only for purposes of convenience, are not part of this Lease and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Lease.

**30.    General Definitional Provisions.**

(a)    Unless the context of this Lease otherwise requires, (i) words of any gender are deemed to include each other gender, (ii) words using the singular or plural number also include the plural or singular number respectively, (iii) the terms "hereof," "herein," "hereby," "hereto," and derivative or similar words refer to this entire Lease, (iv) the terms "Article," "Section," "Subsection," "Paragraph" or "clause" refer to the specified Article, Section, Subsection, Paragraph or clause of this Lease, and (v) all references to "dollars" or "$" refer to currency of the United States of America.  The term "including" as used herein shall in all instances mean "including, but not limited to."

(b)    Initially capitalized terms used in this Lease are defined on the respective pages indicated in the following list and if not defined in this Lease shall have the respective meanings ascribed to them in the PSA.

| | | | |
|---|---|---|---|
| Premises | 2 | Certifying Party | 25 |
| Property | 2 | Condemnation Action | 17 |
| Additional Rent | 5, 8 | Default Termination Notice | 18 |
| Adjacent Mall | 24 | Effective Date | 2 |
| Ancillary Rights and Agreements | 13 | Extension Option | 3 |
| Annual Fixed Rent | 5, 7, 8 | Extension Term | 3 |
| Auto Center Property | 13 | Foreclosure Purchaser | 30 |
| Bankruptcy Termination Notice | 18 | GOB Signage | 12 |
| Business Day | 4 | Ground Leases | 29 |
| CAM | 7 | Ground Lessors | 30 |
| Casualty | 16 | Initial Term | 3 |

WEIL:\96641938\6\73219.0007

Landlord..............................................2
Landlord Termination Notice .....................4
Landlord's Mortgagees.............................30
Landlord's Mortgages.............................29
Lease ..................................................2
Lease Year ............................................4
Loss...................................................27
Major Repair/ Capital Improvement..........15
Mall....................................................24
Minimum Term.......................................4
Monthly Fixed Rent............................5, 7, 8
Necessary Curtailments ............................11
Operating Covenant .................................13
Ordinary Repairs....................................15
Parent.................................................20
Premises...............................................2
Pro Rata Share .....................................7, 9

Property................................................2
PSA....................................................2
Rent....................................................10
Repair/Capital Threshold..........................15
Requesting Party ....................................25
Sears...................................................2
Sears Leases...........................................3
Sears Notice ..........................................19
Sears Termination Notice ..........................5
Sears' Property........................................5
SNDA ..................................................28
SNDA Party ..........................................30
Subsidiary .............................................20
Taxes................................................8, 9
Term.................................................3,
Termination Date ....................................5
Unrelated Successor Tenant ......................20

31.     **Joint Drafting**.  Each of Sears and Landlord has been represented by counsel in the negotiation and execution of this Lease, and each of Sears and Landlord had input in the drafting of this Lease.  For all purposes, this Lease shall be considered to have been jointly drafted by Sears and Landlord.

32.     **Other Documents**.  Each of the parties agrees to sign such other and further documents as may be necessary or appropriate to carry out the intentions expressed in this Lease.

**[Signatures appear on the following pages]**

WEIL:\96641938\6\73219.0007

**IN WITNESS WHEREOF,** Landlord and Sears have executed and delivered this Lease to each other as of the Effective Date.

**WITNESSES:**

**SEARS:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation

Print Name: _Danser Nash_

By: _____
    Name: Robert A. Riecker
    Title: Chief Financial Officer

Print Name: _Melinda Jesse-Smith_

Sworn to and subscribed before me
this _30_ day of July, 2018.

Print Name: _GWEN A. SANDSTROM_
Notary Public No.: _580191_
My commission expires: _8/7/19_

```
OFFICIAL SEAL
GWEN A SANDSTROM
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/07/19
```

[Signature Page to Metairie, LA Lease]

**IN WITNESS WHEREOF,** Landlord and Sears have executed and delivered this Lease to each other as of the Effective Date.

**WITNESSES:**

**LANDLORD:**

RICHARDS CANAL STREET PROPERTY, L.L.C., a Louisiana limited liability company

Print Name: Tara Ledoux

By: _____
   Name: Ellenor Roger Clay
   Title: Manager

Print Name: Pamela G. Hubrand

By: _____
   Name:  Sally Sackett Richards
   Title:  Manager

By: _____
   Name:  Thomas E. Richards
   Title:  Manager

Sworn to and subscribed before me this 31st day of July, 2018.

_____
Print Name: _____
Notary Public No.: _____
My commission expires: _____

CHRISTINA HUGUET GAUDIN
NOTARY PUBLIC #84241
LBN 30515
STATE OF LOUISIANA
My Commission Is For Life

**IN WITNESS WHEREOF,** Landlord and Sears have executed and delivered this Lease to each other as of the Effective Date.

**WITNESSES:**

Print Name: _Justin Crosby_

Print Name: _Amie F. Paul_

**LANDLORD:**

RICHARDS CANAL STREET PROPERTY, L.L.C.,
a Louisiana limited liability company

By:_____
    Name: Ellenor Roger Clay
    Title: Manager

By: _Sally Sackett Richards_
    Name:  Sally Sackett Richards
    Title:  Manager

By:_____
    Name:  Thomas E. Richards
    Title:  Manager

Sworn to and subscribed before me
this _31_ day of July, 2018.

Print Name: _Richard Walter Albright_
Notary Public No.: _201610200062_
My commission expires: _4/10/2021_

Richard Walter Albright
Notary Public
Buncombe County, NC

## EXHIBIT A

### Legal Description

That portion of ground in the Parish of Jefferson, State of Louisiana, in that part known as Pontchartrain Gardens Subdivision, Section "A" within the area thereof bounded by Veterans Memorial Highway, Clearview Parkway, Interstate Highway, Sanford Street, Woodlawn Avenue, Trenton Street and the East line of the subdivision, which portion of ground comprises part of original Squares 44, 37, 36 and 29 of Section "A", Pontchartrain Gardens Subdivision a portion of Quincy Street lying next to and separating original Squares 44 and 37 closed by Ordinance No. 4549, a portion of Rye Street lying next to and separating original Squares 37 and 36 closed by Ordinance No. 7368, and a portion of Sanford Street lying next to and separating original Squares 36 and 29, to be closed by Ordinance No. 7592. The portion of ground herein described is shown on a survey made by J. L. Fontcuberta, Surveyor, dated December 30, 1965, revised January 7, 13 and 26, and 27, 1966, and is described as follows:

Commencing at the intersection of the South right of way line of Veterans Memorial Highway as monumented with the East line of Clearview Parkway, said point also being the Northwest corner of original Square 43; thence running along said South right of way line of Veterans Memorial Highway South 86 degrees 24 minutes 52 seconds East, 903.11 feet to the point of beginning; thence South 03 degrees 35 minutes 08 seconds West, 350.00 feet; thence South 86 degrees 24 minutes 52 seconds East, 50.00 feet thence South 03 degrees 35 minutes 08 seconds West, 565.07 feet; thence South 86 degrees 24 minutes 52 seconds East, 261.11 feet; thence South 10 degrees 31 minutes 52 seconds East, 362.15 feet to the North line of Trenton Street; thence running along said North line of Trenton Street South 86 degrees 21 minutes 28 seconds East, 355.03 feet to the East line of the subdivision (west line of the drainage area); thence along said East line of the subdivision (west line of the drainage area) North 09 degrees 55 minutes 50 seconds West, 1302.71 feet to the South right of way line of Veterans Memorial Highway; thence running along said South right of way line of Veterans Memorial Highway North 86 degrees 24 minutes 52 seconds West, 450.00 feet to the point of beginning.

WEIL:\96641938\6\73219.0007

**EXHIBIT B-1**

**ATTACHED**

WEIL:\96641938\6\73219.0007



## VICINITY MAP
(NOT TO SCALE)

## SCHEDULE B-2 EXCEPTIONS

## GENERAL SURVEY NOTES:

## ZONING INFORMATION

## LAND AREA:

## LEGEND OF SYMBOLS:



## SURVEYOR'S CERTIFICATE

## RECORD LEGAL DESCRIPTION
(from commitment)

## LIST OF POSSIBLE ENCROACHMENTS



COORDINATED BY:

## ALTA/NSPS LAND TITLE SURVEY

SEARS
STORE #1226
4400 VETERANS MEMORIAL BOULEVARD
METAIRIE, JEFFERSON PARISH, LOUISIANA



Sheet No. 1 of 1

## **EXHIBIT B-2**



WEIL:\96641938\6\73219.0007

# EXHIBIT C

**Critical Area**



## SCHEDULE 1

### Sears Leases

1. Luxottica Retail North America, Inc., d.b.a. Sears Optical
2. Jackson Hewitt Inc., d.b.a. Jackson Hewitt Tax Service
3. Avis Budget Car Rental LLC, d.b.a. Avis Budget Car Rental (Detached SAC 6326)
4. Universal Vending Management, LLC, d.b.a. Universal Vending (Coin-Operated Snack and Drink Vending)

WEIL:\96641938\6\73219.0007

## SCHEDULE 2

### Annual Fixed Rent

| Lease Year | Annual Fixed Rent | Monthly Fixed Rent |
|------------|-------------------|--------------------|
| 1-5        | $600,000          | $50,000            |

WEIL:\96641938\6\73219.0007