# EXHIBIT B

## AMENDMENT TO LEASE AND CONSENT AGREEMENT

THIS AMENDMENT TO LEASE AND CONSENT AGREEMENT ("Consent Agreement") is entered into this 28th of February, 1997 by and between KMART CORPORATION, a Michigan corporation, whose address is 3100 West Big Beaver Road, Troy, Michigan 48084 ("Kmart") and Z.A. Sneeden's Sons, Inc., a North Carolina Corporation, whose address is 101 North Front Street, Suite 402, Wilmington, NC 28402 ("Landlord"), and Brinker North Carolina, Inc., a Delaware Corporation, whose address is 6820 LBJ Freeway, Dallas, TX 75240, Attention: General Counsel ("Tenant").

### WITNESSETH:

WHEREAS, by Lease dated September 7, 1972 (the "Kmart Lease"), Kmart leased from Landlord a certain parcel of land located in the City of Wilmington, County of New Hanover, State of North Carolina, more particularly described on Exhibit A and attached hereto and made a part of hereof (the "Kmart Demised Premises"); and

WHEREAS, Landlord desires to lease to Tenant a certain parcel of land containing approximately 0.918 acre located within the Kmart Demised Premises, said parcel described on Exhibit B and shown on Exhibit C, both exhibits being attached hereto and made a part hereof ("Tenant's Demised Premises"); and

WHEREAS, Tenant plans to construct a building containing approximately 5,604 square feet of floor area and associated improvements, including 41 parking spaces, on Tenant's Demised Premises (collectively, the "Improvements").

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties hereto agree as follows:

1. **Kmart's Acknowledgment of Ground Lease.** Kmart hereby consents to the lease between Landlord and Tenant attached hereto and made a part hereof, a copy of which lease is attached hereto as Exhibit D (the "Tenant Lease"). Landlord and Tenant agree to perform their respective obligations under the Tenant Lease. Kmart shall not be responsible for or obligated to perform any of the obligations of Landlord or Tenant under the Tenant Lease, or be liable for any default thereunder by Landlord or Tenant. Landlord hereby discharges and releases Kmart from all obligations under the Kmart Lease with respect to Tenant's Demised Premises, and Kmart's Demised Premises is hereby amended to exclude the Tenant's Demised Premises therefrom; provided, however, should the

1

Tenant Lease terminate, or be rejected in bankruptcy for any reason and the Kmart Lease continue, the Landlord shall be obligated to obtain Kmart's consent, which consent shall not be unreasonably withheld, for any subsequent use of the Tenant's Demised Premises on terms consistent with the provisions and conditions of this Agreement. In the event the Tenant Lease is rejected in bankruptcy or terminates, expires or ceases for any reason and the Tenant's Demised Premises are re-leased or sold, Kmart shall not be entitled to any additional rent reductions with respect to the Tenant's Demised Premises, but Kmart shall continue to receive the Rent Reduction set forth in Paragraph 3, herein.

2. <u>Payment to Broker</u>. J.R. Dill/ PACE was the procuring broker for this transaction and is therefore entitled to a brokerage commission of 5% of the rent due under the Tenant Lease for the initial fifteen year (15) term. The 5% brokerage commission equals thirty six thousand dollars ($36,000.00), which represents all commissions payable by Landlord and Kmart with respect to the Tenant Lease. Tenant shall pay the entire $36,000.00 brokerage commission in full upon Tenant's receipt of its certificate of occupancy. Provided that Tenant pays the $36,000.00 brokerage commission in full upon receipt of its certificate of occupancy, the Tenant's Base Rent, payable under Paragraph 4 of the Tenant Lease, shall be abated for nine months, the number of months necessary to recoup the $36,000.00 brokerage commission paid by the Tenant. Tenant's obligation to pay the Percentage Rent under Article 4 of the Tenant Lease shall not be so abated.

3. <u>Kmart's Rent Reduction</u>. As consideration and compensation for this consent, commencing on the first day of the Tenant's Primary Term, as defined by Article 1 of the Tenant Lease or on the first day of the tenth month of Tenant's Primary Term if Tenant pays the $36,000.00 brokerage commission in full upon receipt of its certificate of occupancy, and continuing throughout the term of the Kmart Lease, Kmart's annual rental obligation under Article 3 of the Kmart Lease is hereby reduced by an amount equal to $24,000.00 per annum plus one half of the percentage rent the Landlord actually receives from the Tenant per annum pursuant to Article 4 of the Tenant Lease. Should Kmart exercise an option or options to extend the initial term under the Kmart Lease, the Kmart Rent Reduction of $24,000.00 per annum plus one half of the percentage rent the Landlord actually receives from the Tenant per annum pursuant to Article 4 of the Tenant Lease shall continue to apply. The Rent Reduction shall not cease if the Kmart Lease is assigned. Further, regardless of whether the Tenant exercises a Renewal Option as defined in Article 2 of the Tenant Lease, Kmart's Rent Reduction shall be increased as follows: a) commencing on the first day of Tenant's First Renewal Term, as defined by Article 2 of the Tenant Lease, and continuing throughout the Tenant's First Renewal Term, as defined by Article 2 of the Tenant Lease, Kmart's Rent Reduction shall be increased by an additional $4,800 per annum to a total Rent Reduction of $28,800.00 per annum plus one half of the percentage rent the Landlord actually receives from the Tenant per annum pursuant to Article 4 of the Tenant Lease; b) commencing on the first day of Tenant's Second Renewal Term, as defined by Article 2 of the Tenant Lease, and continuing throughout Tenant's Second Renewal Term, as defined by Article 2 of the Tenant Lease, Kmart's Rent Reduction shall again be increased by an additional $2880.00 per annum to a total Rent Reduction of $31,680.00 per annum plus one half of the percentage rent the Landlord actually receives from the Tenant per annum pursuant to Article 4 of the Tenant Lease; and c) commencing on the first day of Tenant's

2

Third Renewal Term, as defined by Article 2 of the Tenant Lease, and continuing throughout Tenant's Third Renewal Term, as defined by Article 2 of the Tenant Lease, Kmart's Rent Reduction shall again be increased by an additional $3,169.92 per annum to a total Rent Reduction $34,849.92 per annum plus one half of the percentage rent the Landlord actually receives from the Tenant per annum pursuant to Article 4 of the Tenant Lease. If the first day of any or all of Tenant's Primary Term, Tenant's First Renewal Term, Tenant's Second Renewal Term, or Tenant's Third Renewal Term (the "Effective Date") occurs on a day other than the first day of the year, then Kmart's Rent Reduction shall be prorated. The Landlord shall report the amount of percentage rent received within thirty days of its receipt.

4. Remedies. In the event of Landlord's default hereunder, Kmart shall have all remedies available to Kmart in law or equity as a result of Landlord's default hereunder.

5. Access. Kmart, Tenant, and Landlord hereby give and grant unto one another and their respective employees, agents, customers, licensees and invitees, full license, right and privilege to use the common areas existing, from time to time on each party's interest in the respective property described in Exhibits A and B as depicted on Exhibit C, in common with the other party and any other persons entitled to such use. Notwithstanding the terms of the preceding sentence, Tenant shall establish and maintain on Tenant's Demised Premises (independent of parking available on any other portion of the property depicted on Exhibit C) parking of at least 40 parking spaces. Both Tenant and Kmart covenant and agree that each party shall prohibit their respective employees from parking on those portions of the other party's property designated "Prime Parking Spaces" on Exhibit C.

6. Construction of Improvements. (a) No buildings or improvements shall be constructed on Tenant's Demised Premises except in accordance with: (i) the site plan, elevation and exterior detail plans therefor approved by Kmart in writing prior to the commencement of construction, which approval shall not be unreasonably withheld; (ii) the terms and conditions of all matters of record as set forth in the Title Report, as defined in Paragraph 11; and (iii) the conditions set forth in Paragraph 6(b) expressly permitting Tenant to construct an addition no greater than five hundred fifty (550) square feet. No construction activity on Tenant's Demised Premises shall materially interfere with the operation or use of the Kmart Demised Premises. No signs or exterior lighting may be erected or placed on Tenant's Demised Premises except as have been previously approved by Kmart in writing, which approval shall not be unreasonably withheld, and as are in conformance with all the requirements of all laws, ordinances, codes, orders, rules and regulations of all governmental authorities having jurisdiction over Tenant's Demised Premises ("Government Regulations").

(b) Kmart has already approved the plans for the initial Improvements in a letter from Carla Campbell of Kmart to Monte Rosenberger of Brinker North Carolina dated January 20, 1997 (the "Approved Plans"). The following paragraph applies to any construction undertaken once the initial Improvements have been completed and to any construction which is not in conformity with the Approved Plans for the initial Improvements. Tenant shall be permitted to construct, at its election, except as limited by the requirement to seek Landlord's consent as set forth in Paragraph 14 of the Tenant Lease, an addition (not to exceed one story) to its building no greater than five hundred fifty

3

(550) square feet attached to either side of its building, not the back or front of the building, which addition shall cover no more than five (5) parking spaces, if any. Provided that Tenant's proposed addition complies fully with the preceding guidelines, it need not seek Kmart's consent or approval to construct the addition. If Tenant's proposed addition or new construction does not fully comply in any manner with the preceding guidelines, Tenant shall submit to Kmart, for Kmart's approval, which approval shall not be unreasonably withheld, complete plans and specifications for the proposed construction, including, without limitation, dimensions for the Tenant's proposed building, the placement, size and configuration of signs and satisfactory evidence that Tenant's Demised Premises can accommodate the new construction and retain adequate parking, and information concerning Tenant's procedure for mobilization, phasing and storage of materials and equipment, sufficient for Landlord to ascertain any interference with customary operations of the site which may occur as a result of Tenant's construction activities ("Tenant's Plans and Specifications"). If Kmart disapproves Tenant's Plans and Specifications, Kmart shall provide Tenant with a detailed statement as to the changes required for approval. Tenant shall have fifteen days after Tenant's receipt of Kmart's disapproval to submit revised plans and specifications to Kmart that comply with Kmart's detailed statement of required changes. If Tenant's Plans and Specifications are accompanied by written notice stating the deadline for response and the consequence for failure to timely respond, Kmart's failure to give notice to Tenant of its approval or disapproval within forty-five (45) days after its receipt of Tenant's Plans and Specifications, when required to do, shall be deemed Kmart's approval. Notwithstanding anything herein to the contrary, no building or other structure to be constructed by Tenant or to be caused to be constructed by Tenant on any portion of Tenant's Demised Premises shall exceed one (1) story or twenty-four (24) feet in height, whichever is smaller.

(c) The requirement that Tenant seek Kmart's consent for new construction as set forth in Paragraph 6(b) shall no longer apply if either (i) the Kmart Lease terminates or (ii) Kmart assigns the Kmart Lease to a party not a Kmart affiliate, parent, subsidiary, agent or other related entity, and such party does not intend to operate a business that is controlled by a Kmart affiliate, parent, subsidiary, agent or other related entity.

7. Construction Activity. Tenant covenants and agrees that the Improvements shall be constructed without cost or expense to Landlord, Kmart or Landlord's mortgagee and, in accordance with all Government Regulations. Such construction shall be performed in a manner that will not interfere materially with the business and use of the Kmart Demised Premises by Kmart and any other owners or occupants thereof. Throughout the duration of this Consent Agreement, Tenant agrees that the Improvements, including, but not limited to all plumbing, electrical, heating, air conditioning and ventilation equipment and systems, and all other equipment, will be installed, operated and maintained in accordance with all laws, regulations and requirements of any and all Government Regulations, at Tenant's sole cost and expense. During the construction of the initial Improvements or of the addition permitted by Paragraph 6(b), Tenant shall make the Approved Plans and any or all other plans for the Improvements or the addition available to Kmart's on site representatives, at their request.

4

8. <u>Real Estate Taxes</u>. (a) Tenant shall pay or cause to be paid, as and when same shall become due, all real property taxes, assessments, use and occupancy taxes, development fees, impact fees, fees in lieu of taxes, water and sewer charges, rates and rents, charges for public utilities, excises, license and permit fees and other charges, real and personal, general and special, ordinary and extraordinary, foreseen and unforeseeable, of any kind and nature whatsoever, which shall or may during the term of the Tenant Lease be assessed, levied, charged, confirmed, or imposed upon or become payable out of or become a lien on Tenant's Demised Premises, the Improvements or Tenant's property or any part thereof (the "Impositions").

(b) Kmart shall pay or cause to be paid, as and when same shall become due, all real property taxes, assessments, use and occupancy taxes, development fees, impact fees, fees in lieu of taxes, water and sewer charges, rates and rents, charges for public utilities, excises, license and permit fees and other charges, real and personal, general and special, ordinary and extraordinary, foreseen and unforeseeable, of any kind and nature whatsoever, which shall or may during the term of the Kmart Lease and the Tenant Lease be assessed, levied, charged, confirmed, or imposed upon or become payable out of or become a lien on the Kmart Demised Premises, the Improvements or Kmart's property or any part thereof (the "Kmart Impositions").

9. <u>Insurance</u>. During the entire term that both the Tenant Lease and the Kmart Lease shall be continuing, Tenant and Kmart shall each keep in full force and effect policies of commercial general liability insurance for the mutual benefit of Landlord, Kmart and Tenant. Tenant's policy shall insure Tenant's Demised Premises, and Kmart's shall insure the Kmart Demised Premises. Both policies will have limits of not less than TWO MILLION DOLLARS ($2,000,000.00) in the event of bodily injury or death to one (1) person and not less than THREE MILLION DOLLARS ($3,000,000.00) in the event of bodily injury or death to any number of persons in any one accident, and with limits of not less than ONE MILLION DOLLARS ($1,000,000.00) for damages or injury to property. Such insurance shall be carried with insurance company or companies having a Best's key Rating of at least B++VII and may be carried under a policy or policies covering other liabilities and locations with respect to both Tenant and Kmart. Such policies shall name Landlord, Kmart and Tenant and any other parties in interest designated by Landlord, Kmart and Tenant as additional insureds as their interests may appear and shall contain a clause that the insurer will not cancel or change the insurance without first giving Landlord and Kmart thirty (30) days prior written notice with respect to Tenant's insurance policy, and without first giving Landlord & Tenant thirty (30) days prior written notice with respect to Kmart's insurance policy. From time to time, Tenant shall furnish to Landlord and Kmart such evidence as Landlord or Kmart may require, and Kmart shall furnish to Landlord and Tenant such evidence as Landlord or Tenant may require, in the form of a certificate of insurance or certificate of self-insurance, proof that the foregoing insurance is in full force and effect and that the premiums therefor have been paid. Kmart may elect to self-insure its obligations under this paragraph at any time while its net worth shall exceed One Hundred Million Dollars ($100,000,000.00). Tenant may elect to self-insure its obligations under this paragraph at any time while its net worth shall exceed One Hundred Million Dollars (100,000,000.00). In addition to the coverages addressed above, Kmart's and Tenant's insurance policies or self insurance shall also provide coverage for worker's compensation insurance having such limits, terms, and conditions as are required by applicable law for their own employees. Further, during the period of any

5

construction, reconstruction or alteration of any Improvements upon either Tenant's Demised Premises or the Kmart Demised Premises, the party undertaking such construction, reconstruction or alteration shall provide coverage for builder's risk insurance in an amount equal to the completed value of such Improvements. In addition to the coverages addressed above, Tenant's insurance policies or self insurance shall also provide coverage for liquor liability with minimum limits of liability in the amounts of Five Hundred Thousand Dollars ($500,000.00) for bodily injury, personal injury or death to any one person, One Million Dollars ($1,000,000.00) for bodily injury, personal injury or death to more than one person, and Fifty Thousand Dollars ($50,000.00) with respect to damage to property.

10. <u>Indemnification</u>. (a) Tenant and Landlord, jointly and severally, shall defend, indemnify and hold harmless Kmart, its successors and assigns, from and against (i) any and all claims, actions, damages, liability, cost and expense, including reasonable attorney's fees, in connection with loss of life, personal injury and/or damage arising from or out of any occurrence in, upon or at Tenant's Demised Premises, except to the extent that such claims, actions, damages, liability, cost and expense arises from Kmart's and/or its employees', agents', customers', licensees' and/or invitees' use of Tenant's Demised Premises pursuant to the rights of access granted under Paragraph 5 herein, or to the extent that such claims, actions, damages, liability, cost and expense arises from Kmart's and/or its employees', agents', licensees' negligence or misconduct, or in connection with the construction of any improvements, use, occupation, possession or management of Tenant's Demised Premises, (ii) any and all Impositions owing on Tenant's Demised Premises, and (iii) all expenses, liens or claims incurred or asserted by reason of or with respect to any construction activity and any environmental investigations on or for the benefit of Tenant's Demised Premises.

(b) Kmart and Landlord, jointly and severally, shall defend, indemnify and hold harmless Tenant, its successors and assigns, from and against (1) any and all claims, actions, damages, liability, cost and expense, including reasonable attorney's fees, in connection with loss of life, personal injury and/or damage arising from or out of any occurrence in, upon or at the Kmart Demised Premises, except to the extent that such claims, actions, damages, liability, cost and expense arises from Tenant's and/or its employees', agents', customers', licensees' and/or invitees' use of the Kmart Demised Premises pursuant to the rights of access granted under Paragraph 5 herein, or to the extent that such claims, actions, damages, liability, cost and expense arises from Tenant's and/or its employees', agents', licensees' negligence or misconduct, or in connection with the construction of any improvements, use, occupation, possession of management of the Kmart Demised Premises, (ii) any and all impositions owing on the Kmart Demised Premises, and (iii) all expenses, liens or claims incurred or asserted by reason of or with respect to any construction activity, any environmental investigations on or for the benefit of the Kmart Demised Premises.

11. <u>Evidence of Title</u>. Prior to or promptly after the execution of this Consent Agreement, Tenant, at its sole cost and expense, shall furnish to Kmart a preliminary title report or other evidence of title reasonably satisfactory to Tenant and Kmart (the "Title Report"). Such report or evidence of title shall show the legal description of Tenant's Demised Premises and any easements, encumbrances or other matters affecting Tenant's Demised Premises. Within thirty (30) days following the full execution of this Consent Agreement, Tenant, at its sole cost and expense, shall

also furnish to Kmart a survey of Tenant's Demised Premises by a duly licensed surveyor which shall show the location, area boundaries, and dimensions and total area of the Tenant's Demised Premises, its relative location with respect to streets or highways, the location of utilities, building setbacks, easements or reservations (including, the recording information of each item), and that there are not encroachments of any improvements adjoining Tenant's Demised Premises.

12. <u>Eminent Domain.</u>  (a) In the event of a taking of the whole or substantially all of Tenant's Demised Premises, Kmart's Rent Reduction shall continue, and Kmart shall not be entitled to receive any of the award for the taking of Tenant's Demised Premises.

(b)   In the event of a taking that does not result in a termination of the Tenant Lease, Kmart's Rent Reduction shall continue, and Kmart shall not be entitled to receive any of the award for the taking of Tenant's Demised Premises.

13. <u>Use Operation and Maintenance of Premises</u>. (a)Tenant and Kmart shall promptly comply with all laws and ordinances and lawful orders and regulations affecting, respectively, Tenant's Demised Premises and the Kmart Demised Premises and the cleanliness, safety, occupancy and use of same. Tenant and Kmart shall keep, respectively, Tenant's Demised Premises and the Kmart Demised Premises orderly, neat, safe and clean and free from rubbish and dirt at all times, shall store all merchandise, supplies and equipment within the building or other structures located from time to time on, respectively, Tenant's Demised Premises and the Kmart Demised Premises, and shall store all trash and garbage outside said building or other structures in a dumpster within an enclosure adjacent to said buildings or structures. Neither Tenant nor Kmart shall not burn any trash or garbage at any time on, respectively, Tenant's Demised Premises or the Kmart Demised Premises.

(b)   Neither the Kmart Demised Premises nor Tenant's Demised Premises shall be used for (i) entertainment or recreational purposes, which for purposes hereof include without limitation a bowling alley, skating rink, health studio or gym, billiard room, game arcade or amusement center, theater, bar or tavern, dance hall or disco (except where incidental to the operation of a restaurant or delicatessen), or massage parlor or (ii) a "training or educational facility", which for purposes hereof shall include without limitation a beauty school, barber college, reading room, place of instruction or any other operation catering primarily to students or trainees rather than to customers. Tenant's Demised Premises shall be not used for (i) a pharmacy, (ii) a discount shoe store, (iii) a business specializing in the sale of automobile accessories or automobile service and repair, (iv) a restaurant whose primary menu item is pizza; or (v) any sale of meat, dairy products, baked goods or other food for off-premises consumption, except that "take-out" of any of the foregoing items in connection with its restaurant operations shall not be construed as "off-premises consumption" for the purposes herein. Tenant's or its affiliate's or franchisee's operation of its home meal replacement concept called EatZi's Market & Bakery shall not violate the terms of this Paragraph (b). The Kmart Demised Premises shall be not used for a "varied menu theme", "hamburger theme, "Mexican theme", and/or "Southwestern theme" restaurant specializing in the sale of hamburgers, Mexican food and/or Southwestern cuisine as the primary entrees on its menu, including, without limitation, an Applebee's, a Bennigan's, a Red Robin, a Ruby Tuesday's or a TGI Friday's restaurant. A fast-

7

food hamburger restaurant or a steakhouse restaurant shall not violate the foregoing exclusive and are expressly permitted. Further, the foregoing exclusive clause extends solely to a store which proposes to do business as a "varied theme", "hamburger theme", "Mexican theme", and/or "Southwestern theme" restaurant and does not award Tenant the exclusive right to sell hamburgers, Mexican food and Southwestern cuisine in the Shopping Center.

(c) Kmart shall not erect, construct or install any additional pylon signage, buildings, or other improvement on, or make any material traffic flow or access road changes to, the area designated as the "No Build Area" on Exhibit C.

14. Environmental Matters. (a) Tenant and Kmart represent and warrant that they will not use, store, generate or permit, in, on, about or under, respectively, Tenant's Demised Premises and the Kmart Demised Premises in any form any material defined as a hazardous, radioactive or toxic substance or a pollutant or contaminant by any law, ordinance, rule or regulation of any governmental authority ("Hazardous Substance") in violation of any law, ordinance, rule or regulation of any governmental authority regarding the use, control, regulation or prohibition of any Hazardous Substance ("Environmental Law"). Tenant and Kmart shall immediately provide each other with copies of any order, notice, permit, application or any other communication from or to any entity or person, including governmental agencies, regarding the environmental condition of, respectively, Tenant's Demised Premises or the Kmart Demised Premises.

(b) Tenant shall defend, indemnify and hold Kmart harmless from and against all claims, loss, damage, liabilities, judgments, penalties, fines, costs or expenses, whatsoever, including attorneys' fees and costs, from Hazardous Materials existing, or caused by Tenant, its employees, agents, representatives, contractors, or invites to be on, in, at, under, or about Tenant's Demised Premises. The terms of this Paragraph 14 will survive the expiration or earlier termination of this Consent Agreement.

(c) Kmart shall defend, indemnify and hold Tenant harmless from and against all claims, loss, damage, liabilities, judgments, penalties, fines, costs or expenses, whatsoever, including attorneys' fees and costs, from Hazardous Materials existing, or caused by Kmart, its employees, agents, representatives, contractors, or invitees to be on, in, at, under, or about the Kmart Demised Premises. The terms of this Paragraph 14 will survive the expiration or earlier termination of this Consent Agreement.

(d) Tenant may perform a standard ASTM Phase I Environmental Site Assessment on Tenant's Demised Premises. However, Tenant may not perform any Phase II environmental investigation without Kmart's and Landlord's prior written consent.

15. Consent of Landlord's Mortgagee. This Agreement shall not be binding in any respect on any of the parties to it unless, within 10 days of the execution of this Agreement, the Landlord's Mortgagee shall execute a consent agreement in substantially the form attached as Exhibit E

establishing the Mortgagee's approval and acceptance of the amendments to the Kmart Lease, including, without limitation, its approval of Kmart's Rent Reduction, set forth in this Agreement.

16. <u>Conflict</u>  In the event of any inconsistency or conflict between the terms and provisions of this Consent Agreement and the Tenant Lease, the terms and provisions of this Consent Agreement shall govern and be binding.

17. <u>Notices</u>.  Any notices, consents, approvals or demands given under this Consent Agreement or pursuant to any law or governmental regulation, by or to Kmart, Landlord or Tenant shall be in writing. Unless otherwise required by law or governmental regulation, any such notice, consent, approval or demand shall be deemed given if sent by a recognized overnight courier service, United States certified mail, return receipt requested, postage prepaid or by facsimile provided that a copy of such notice, consent, approval or demand is sent by certified mail as hereinabove provided:

    (a)    to Kmart to the attention of the Vice President, Real Estate Department, at the address of Kmart as hereinabove set forth or such other address as Kmart may designate by notice to the other parties hereto;

    (b)    to Landlord at the address of Landlord as hereinabove set forth or such other address as Landlord may designate by notice to the other parties hereto; or

    (c)    to Tenant at the address of Tenant hereinabove set forth or such other address as Tenant may designate by notice to the other parties hereto.

Any notice, consent, approval or demand sent as hereinabove provided shall be deemed to have been received on the day following the date of sending if sent by overnight courier service, on the third day following the mailing thereof if sent by United States certified mail, and on the date of sending if sent by facsimile and the receipt thereof is confirmed.

18. <u>Complete Agreement</u>. This Consent Agreement and the Exhibits attached hereto and made a part hereof, set forth the entire agreement and understanding of the parties hereto with respect to the subject matter hereof. This Consent Agreement may not be modified orally or in any manner other than an agreement in writing signed by the parties hereto or their respective successors and assigns.

19. <u>Successors and Assigns</u>. This Consent Agreement shall bind and inure to the benefit of the parties hereto and to their respective successors and assigns, and the agreements and the covenants herein contained are intended to run with and bind all lands affected thereby.

20. <u>Governing Law</u>. This Consent Agreement shall be construed and enforced in accordance with the laws of the State where Tenant's Demised Premises is located.

21. <u>No Relationship</u>. The foregoing provisions of this Consent Agreement are not intended to create, nor shall they be in any way interpreted to create a joint venture, partnership or any other similar relationship among the parties hereto.

22. <u>Recording</u>. No party shall record this Consent Agreement. Kmart, Landlord and Tenant shall, however, simultaneously herewith, enter into a short form memorandum of this Consent Agreement, in suitable form for recording under the laws of the State where Tenant's Demised Premises are located, the same to be recorded at the expense of Tenant.

23. <u>Pylon Sign</u>. Kmart shall not erect a pylon sign on Tenant's Demised Premises, for so long as the Tenant Lease is in force.

IN WITNESS WHEREOF, the parties hereto have duly executed this Consent Agreement as of the day and year first above written.

KMART CORPORATION ("Kmart")

By: _____

Its: Vice President

Real Estate Rep: _____
Dickinson, Wright:
Approved: _____
Reviewed (see comments): _____

ATTEST:

By: _____

Its: Assistant Secretary

IMPRESS CORPORATE SEAL
HERE

Z.A. SNEEDEN'S SONS, INC. ("Landlord")

By: Stuart E Sneeden

Its: Vice President

10

ATTEST:

By: _____

Its: Secretary

IMPRESS CORPORATE SEAL

HERE

BRINKER NORTH CAROLINA, INC. ("Tenant")

By: _____

Its: VICE PRESIDENT

ATTEST:

By: _____

Its: Asst. Sec.

IMPRESS CORPORATE SEAL

HERE

11

## ACKNOWLEDGMENT

STATE OF MICHIGAN )
) ss.
COUNTY OF OAKLAND )

I, _Victoria L. Boekhout_, Notary Public for the County and State aforesaid, certify that _Di K. Burdick II_ personally came before me this day and acknowledged that she is an Assistant Secretary of Kmart Corporation, a Michigan corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its Vice President, sealed with its corporate seal and attested by herself as its Assistant Secretary.

Witness my hand and official stamp or seal, this 11th day of _March_, 1997.

My commission expires: _____

_____
Notary Public

**VICTORIA L. BOEKHOUT**
Notary Public, Macomb County, Mich.
Acting in Oakland County
My Commission Expires: Sept.14,1998

## ACKNOWLEDGMENT

STATE OF NORTH CAROLINA )
)
COUNTY OF NEW HANOVER )

I, _Susan West Greer_, Notary Public for the County and State aforesaid, certify that _Agnes T. Jones_ personally came before me this day and acknowledged that (s)he is _Secretary_ of Z. A. Sneedon's Sons, Inc., a North Carolina Corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _Vice President_, sealed with its corporate seal and attested by _herself_ as its _Secretary_.

Witness my hand and official stamp or seal, this 25th day of _February_, 1997.

My commission expires: 12/19/2001

Notary Public
_Susan West Greer_

12

## ACKNOWLEDGMENT

STATE OF TEXAS )
)
COUNTY OF DALLAS )

I, _Wendy Gholson_, Notary Public for the County and State aforesaid, certify that _Barbara L. Mahoney_ personally came before me this day and acknowledged that (s)he is _Asst. Secretary_ of Brinker North Carolina, Inc., a Delaware Corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _Vice President_, sealed with its corporate seal and attested by _herself_ as its _Asst. Secretary_.

Witness my hand and official stamp or seal, this _3rd_ day of _March_, 1997.

My commission expires: _2-18-98_.

Notary Public
_Wendy Gholson_

WENDY GHOLSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 2-18-98

13

# LIST OF EXHIBITS

Exhibit A - Legal Description of Kmart Demised Premises

Exhibit *B* - Legal Description of Tenant's Demised Premises

Exhibit C - Site Plan

Exhibit D - Lease between Master Landlord and Tenant

Exhibit E - Consent of Landlord's Mortgagee

00A5F50B 11335/4171 BL01 136303-1
AA00B634A3 11335/4171 BL01 136303-6 (2/27/97)

14

EXHIBIT A

BEGINNING at a concrete monument in the eastern line of South College Road (N. C. Highway No. 132, 200 foot right-of-way), the northernmost corner of the tract conveyed to MacMillan Buick Company by Deed recorded in Book 847 at Page 646 of the New Hanover County Registry, said monument being N. 24° 10' E. a chord distance of 380.2 feet from an iron pipe at the intersection of said line of said road with the northeastern line of Old Meares Road (30 foot right-of-way), said tract and said intersection being shown on the map of the Mrs. Mary S. Beasley property recorded in Map Book 10 at Page 29 of said registry; running thence from said Beginning point northwardly along the eastern line of South College Road as it curves to the east to a concrete monument that is N. 29° 25' E. 600.58 feet from the preceding point; thence S. 58° 4' E. 150.45 feet to a concrete monument; thence N. 31° 56' E. 150 feet to a concrete monument; thence S. 58° 4' E. 625.95 feet to a concrete monument; thence S. 31° 56' W. 750 feet to a concrete monument that is S. 58° 4' E. 150 feet from a concrete monument at the easternmost corner of said MacMillan Buick Company tract; thence N. 58° 4' W. 150 feet said easternmost corner; thence N. 58° 4' W. along the northeastern line of said MacMillan Buick Company tract 600 feet to the point of Beginning; the same containing 12.70 acres, and being a portion of the Mrs. Mary S. Beasley property as shown on the aforementioned map recorded in Map Book 10, Page 29 of the New Hanover County Registry.

## EXHIBIT B

### Premises

Beginning at an iron pin in the eastern line of College Road (NC Highway No. 132, 200' right-of-way), the northern-most corner of the tract conveyed to MacMillian Buick Company by deed recorded in Book 847 at Page 646 of the New Hanover County Registry, said iron pin being North 24 degrees 10 minutes East a chord distance of 380.2 feet from an iron pipe at the intersection of the said line of said road with the northeastern line of Old Meares Road (30 Foot right-of-way), said intersection and said tract being shown on the map of Mrs. Mary S. Beasley Property recorded in Map Book 10 at Page 29 of said registry, thence with the eastern right-of-way line of NC Highway 132 along a curve to the right having a radius of 5630 feet and a curve length of 155.35 and a chord of North 26 degrees 57 minutes 35 seconds East 155.35 feet to a point; thence, leaving the right-of-way of Highway No. 132, South 59 degrees 55 minutes 28 seconds East a distance of 255.48 feet to a point, thence along a line South 30 degrees 16 minutes 24 seconds West a distance of 163.07 feet to a point on the northern line of the said MacMillian property; thence along said MacMillian property line North 58 degrees 04 minutes 40 seconds West a distance of 246.60 feet to the point of beginning. Tract contains 0.918 more or less acres.

