David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
Pollack@ballardspahr.com

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

*Attorneys for Acadia Realty Limited Partnership, Avenues Mall, LLC, Brixmor Operating Partnership, L.P., CBL-Shops at Friendly, LLC,* Cedar – Valley Plaza, LLC, *CenterCal Properties, LLC, FBA Holdings, Inc., Federal Realty Investment Trust, GS Pacific ER, LLC, Hart I-55 Industrial LLC, Heidenberg Properties, Kravco Company, Passco Hanford Mall, LLC, PGIM Real Estate, S-Tract LLC, Starwood Retail Partners LLC, The Macerich Company, Vintage Real Estate, LLC, WBCMT 2007-C33 Independence Center LLC, Weitzman – Helios IV, LLC, and White Plains Galleria Limited Partnership*

Obj. Deadline: January 26, 2019 at 4:00 p.m. ET[1]
Hearing Date: February 4, 2019 at 10:00 a.m. ET

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
Email: heilmanl@ballardspahr.com

Paul E. Harner, Esquire
Alyssa E. Kutner, Esquire
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: (646) 346-8075; Fax: (212) 223-1942
E-mail: harnerp@ballardspahr.com
       kutnera@ballardspahr.com

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
SEARS HOLDINGS CORPORATION, *et al.*,                          :    Case No. 18-23538 (RDD)
                                                               :
                                                               :    (Jointly Administered)
       Debtors.                                    :
---------------------------------------------------------------x

---

[1] The objection deadline was extended to January 29, 2019 by agreement of counsel for the Debtors and Landlords. To the extent any leases or real properties in or adjacent to properties owned by Landlords were inadvertently omitted from this Objection, those locations shall be deemed to be included in this Objection.

**LIMITED OBJECTION OF ACADIA REALTY LIMITED PARTNERSHIP, AVENUES MALL, LLC, BRIXMOR OPERATING PARTNERSHIP, L.P., CBL-SHOPS AT FRIENDLY, LLC, CEDAR – VALLEY PLAZA, LLC, CENTERCAL PROPERTIES, LLC, FBA HOLDINGS, INC., FEDERAL REALTY INVESTMENT TRUST, GS PACIFIC ER, LLC, HART I-55 INDUSTRIAL LLC HEIDENBERG PROPERTIES, KRAVCO COMPANY, PASSCO HANFORD MALL, LLC, PGIM REAL ESTATE, S-TRACT LLC, STARWOOD RETAIL PARTNERS LLC, THE MACERICH COMPANY, VINTAGE REAL ESTATE, LLC, WBCMT 2007-C33 INDEPENDENCE CENTER LLC, WEITZMAN – HELIOS IV, LLC, AND WHITE PLAINS GALLERIA LIMITED PARTNERSHIP TO MOTION OF DEBTORS FOR ENTRY OF ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SEARS HOME IMPROVEMENT BUSINESS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR AND HEARING TO APPROVE SALE OF SEARS HOME IMPROVEMENT BUSINESS, (D) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (II) APPROVING THE SALE OF SEARS HOME IMPROVEMENT BUSINESS IN ACCORDANCE WITH THE STALKING HORSE AGREEMENT AND (III) GRANTING RELATED RELIEF**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY COURT JUDGE:**

Acadia Realty Limited Partnership, Avenues Mall, LLC, Brixmor Operating Partnership, L.P., CBL-Shops at Friendly, LLC, Cedar – Valley Plaza, LLC, CenterCal Properties, LLC, FBA Holdings, Inc., Federal Realty Investment Trust, GS Pacific ER, LLC, Hart I-55 Industrial LLC, Heidenberg Properties, Kravco Company, Passco Hanford Mall, LLC, PGIM Real Estate, S-Tract LLC, Starwood Retail Partners LLC, The Macerich Company, Vintage Real Estate, LLC, WBCMT 2007-C33 Independence Center LLC, Weitzman – Helios IV, LLC, and White Plains Galleria Limited Partnership (collectively the "Landlords"), by their undersigned attorneys, hereby make this Objection (the "Objection") to Motion Of Debtors For Entry Of Order (I)(A) Approving Bidding Procedures For Sale Of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction For And Hearing To Approve Sale Of Sears Home Improvement Business, (D) Approving Form And Manner Of Notice Of Sale, Auction, And Sale Hearing, (E) Approving Assumption And Assignment Procedures, (Ii) Approving The Sale Of Sears Home Improvement Business In Accordance With The Stalking

Horse Agreement And (III) Granting Related Relief [Docket No. 450] (the "Sale Motion"),[2] and in support thereof aver:

I. **BACKGROUND FACTS**

1. Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2. The Debtors lease retail space (the "Premises") from Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping centers (the "Centers") set forth on the attached Schedule A.

3. The vast majority of Premises referred to in Exhibit A are premises located in shopping centers (the "Premises"), as that term is used in 11 U.S.C. § 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990). [4]

---

[2] Terms not otherwise defined here shall have the meanings ascribed to them in the Sale Motion, Bid Procedures, and accompanying documents.

[3] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") unless otherwise specified in this Motion.

[4] Although "shopping center" is not a term defined by the Bankruptcy Code, courts making the determination of what development constitutes a shopping center have considered a variety of factors. *See Joshua Slocum*, 922 F.2d at 1086-1087, *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999), and *In re Goldblatt Bros., Inc.*, 766 F.2d 1136, 1140-41 (7th Cir. 1985). The leading bankruptcy treatise found that "the most important characteristic will be a combination of leases held by a single landlord, leased to commercial retail distributors of goods, with the presence of a common parking area." *Joshua Slocum*, 922 F.2d at 1088, *citing* 2 Collier on Bankruptcy ¶ 365.04[3]. Landlords have the initial burden of proving that the Centers are shopping centers for purposes of Section 365(b)(3). Courts making the determination of what development constitutes a shopping center have considered a variety of factors. Those factors include, but are not limited to:

    (a) the existence of a combination of leases for the stores;
    (b) the fact that all leases are held by single landlord;

3

4.  The Debtors filed the Sale Motion [Docket No. 450] on November 3, 2018. On January 14 – 15, 2019, the Debtors held an auction to determine if there was a feasible going concern bid for some of all of the Debtors' assets. Late in the evening on January 18, 2019, the Debtors filed their Notice of Successful Bidder and Sale Hearing (the "Sale Notice") [Docket No. 1730], which identified that the Debtors had selected Transform Holdco, LLC (the "Successful Bidder"), established by ESL Investments, Inc., as the highest or best offer for substantially all of the assets of the Debtors.

5.  The Sale Notice sets an extremely aggressive schedule for objections and a sale hearing, especially in light of the lack of information provided by the Debtors or Successful Bidder to date. The Debtors granted Landlords an extension until January 29 for the filing of this Objection. Concurrently with the Sale Notice, the Debtors filed their Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Leases in Connection with the Global Sale Transaction [Docket No. 1731], and the Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction on January 23, 2019 [Docket No. 1774]

---

(c) the fact that all tenants are engaged in commercial retail distribution of goods;
(d) the presence of common parking area;
(e) the purposeful development of premises as shopping center;
(f) the existence of a master lease;
(g) the existence of fixed hours during which all stores are open;
(h) the existence of joint advertising;
(i) the contractual interdependence of tenants, as evidenced by restrictive use provisions in their leases;
(j) the existence of percentage rent provisions in leases;
(k) the right of tenants to terminate their leases if anchor tenant terminates its lease;
(l) the joint participation by tenants in trash removal and other maintenance;
(m) existence of tenant mix, and
(n) a contiguity of stores.

*See Joshua Slocum,* 922 F.2d at 1086-1087, and *Sun TV and Appliances, Inc.,* 234 B.R. 356, and *Goldblatt Bros., Inc.*, 766 F.2d at 1140-41. The Leases are in shopping centers under the criteria set forth above, and if disputed, Objecting Landlords are prepared to establish that the Leases are shopping center leases as that term is used in Section 365, by either an offer of proof or direct testimony.

(collectively, the "Cure Notice").  The Landlords have filed their objections to the Cure Notice contemporaneously with this Objection, and hereby incorporate those objections in full as if set forth in full herein.

6. Landlords bring this Objection because the proposed asset purchase agreement (the "APA") and form of proposed Sale Order fail to provide Landlords with critical protections to which they are entitled under the Leases and Bankruptcy Code.  The Bankruptcy Code requires that an assignee provide Landlords with adequate assurance of future performance, and that any assignee assume all the obligations – and not just the benefits – of acquired leases and property.  The only adequate assurance information provided on behalf of the Successful Bidder was a two-page letter exhibit providing projected revenue, operating cash flow, and net availability from certain lenders.  In addition, the Debtors and Successful Bidders have yet to identify the treatment of specific properties. While the APA identifies different groups of leases (Operating Leases, GOB Leases, and Designatable Leases), the Debtors do not identify which leases may subject to immediate assumption and assignment (if any), and which will be subject to designation rights, and do not identify the actual assignee(s) in either case.  While Landlords do not oppose designation rights generally, the procedures set forth in the APA are inadequate and require modification.  As a result, the Landlords file this preliminary objection to the sale, and reserve the right to supplement the Objection once they receive additional and detailed adequate assurance information relating to the Successful Bidder.

## II.   ARGUMENT

**A.   The Debtors must provide Landlords with Adequate Assurance Information that satisfies Section 365(b)(1) & (b)(3) prior to any objection deadline.**

7. The APA and Cure Notice indicate that the Debtors may seek to assume

and assign the leases identified on the Cure Notice to the Successful Bidder at the February 4th Sale Hearing. The Cure Notice also indicates that the Leases may be designated for later assumption and assignment. Landlords do not object to the Successful Bidder's purchase of designation rights, subject to the objections raised herein. However, Landlords have not received – and will not have any meaningful opportunity to review and assess – detailed adequate assurance of future performance information (the "<u>Adequate Assurance Information</u>") of the Successful Bidder prior to the scheduled sale hearing. Moreover, neither the Successful Bidder nor Debtors have provided any information on the proposed actual assignee of the Leases. Because Landlords have not received any Adequate Assurance Information from the Successful Bidder, Landlords do object to any proposed assumption and assignment of their Leases to the Successful Bidder at the sale hearing. The Debtors cannot assign the Leases unless Debtors and/or such proposed assignee complies with all of the requirements of Sections 365(b) and (f) of the Bankruptcy Code, including the provision of Adequate Assurance Information.

8. In order to satisfy the adequate assurance requirements of Section 365(b)(1), as well as the heightened requirements of Section 365(b)(3), the Debtors must provide Landlords with the Adequate Assurance Information. Landlords must receive, at a minimum, the following information, and a reasonable timeframe to review such information, if Debtors are to satisfy this burden:

(i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store;
(ii) the potential assignee's intended use for the space;
(iii) audited financial statements and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto;
(iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Leases subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Leases;

6

(v) all documents and other evidence of the potential assignee's retail experience and experience operating stores in a shopping center; and

(vi) a contact person for the proposed assignee that Landlords may directly contact in connection with the adequate assurance of future performance.

9. The Successful Bidder and all proposed assignees of the Leases must provide, at a minimum, basic information on their ability to perform under the Lease(s), the intended use for the Premises, the name of the proposed tenant, a contact person, and their experience operating in a retail shopping center environment. The above is a non-exclusive list of the minimum information that should be included in any bid package that Landlords will need to assess a potential assignee's viability. Landlords reserve the right to request further information they deem necessary to make an informed decision as to the ability of a potential assignee to satisfy the requirements of Section 365.

10. The Debtors may not assume and assign the Leases unless there is adequate assurance of future performance under the Leases. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See* In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by maneuvering the assumption and assignment process through a sale process.

11. Courts require a specific factual showing through competent evidence to determine whether a debtor demonstrates adequate assurance of future performance. *See e.g.*, Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented). To determine whether a party provides adequate assurance of future performance

7

under Section 365(b), courts have looked to sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee. In re Belize Airways, 5 B.R. 152 (Bankr. S.D. Fla. 1980); In re Lafayette Radio Electronics Corp., 9 B.R. 993 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986).

12. Section 365 requires that the Debtors provide adequate assurance of future performance information to carry their burden under Section 365, and without receipt of such information, the Landlords cannot assess the *bona fides* of any proposed assignee.[5] To date, Landlords have received very minimal Adequate Assurance Information on behalf of the Successful Bidder, and no information concerning proposed assignees of Leases, and have no way to assess this newly formed entity's ability to operate under the Leases on a going forward basis and, therefore, object to any assumption and assignment of the Leases at this time. Landlords ask that the Court require the Debtors and the Successful Bidder to comply with the requirements of Section 365(b) and demand strict proof of the ability to provide adequate assurance of future performance at any hearing considering assumption and assignment of their Leases.

**B.    The Debtors must provide heightened Adequate Assurance Information required by Section 365(b)(3) for shopping center leases.**

13. The vast majority of the Leases are shopping center leases, requiring a heightened demonstration of adequate assurance of future performance than is required by the general provision of Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356,

---

[5] If the Landlords do not have sufficient information (or time) to make a determination as to a proposed assignee, or if the proposed assignee is unacceptable, the Landlords must object to the proposed sale and prepare for an evidentiary hearing. In preparation of such evidentiary hearing, Landlords must conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information gleaned from whatever information the Debtors, or any successful bidder, actually produces.

359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A)-(D). *See* Joshua Slocum, 922 F.2d at 1086; *see also* L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the Lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the Lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and
- that assumption and assignment of the Lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

14. These heightened requirements must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). Sun TV and Appliances, Inc., 234 B.R. at 370. Courts also require a specific factual showing through competent evidence to determine whether the Debtors can satisfy Section 365(b)(3)'s heightened adequate assurance of future performance requirements. Matter of Haute Cuisine, Inc., 58 B.R. at 394. There is no evidence to make such a determination, and Landlords object to any request to assume and assign the Leases at the Sale Hearing.

**C.    Any assumption and assignment must comply with the terms of the Leases.**

15. Through the BAPCPA[6] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code

---

[6] The Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (the "BAPCPA") clarifies, *inter alia*, the protections that Landlords are entitled to under 11 U.S.C. § 365.

9

does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). Senator Hatch explains this change as follows:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

16. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record demonstrate the intent behind Section 365(b) and 365(f):

> A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

17. The Congressional intent that bankruptcy courts strictly enforce the use and other provisions in the Leases is echoed by comments from the House of Representatives:

> Section 404(b) amends § 365(f)(1) to assure that § 365(f) does not override any part of § 365(b). Thus, § 404(b) makes a trustee's [debtor-in-possession's] authority to assign an executory contract or unexpired lease subject not only to § 365(c), but also to § 365(b), which is given full effect. <u>Therefore, for example, assumption or assignment of a lease of real property in a shopping center must be subject to the provisions of the lease, such as use clauses</u>. (Emphasis added)

H.R. Rep. No. 109-31, pt. 1, at 87, reprinted in 2005 U.S. Code Cong. & Admin. News 153.

18. The BAPCPA clarified Section 365 to reflect the Congressional intent that the language of Section 365(f), and any ability to assume and assign the Leases, is subject to the

10

protections of Section 365(b)(1) and (3). It does not modify Section 365(b). <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)). Therefore, any assignment must remain subject to all provisions of the Leases, including but not limited to those provisions concerning use, radius, exclusivity, and tenant mix and balance.

19. Paragraph 36 of the Sale Order seeks a prospective ruling rendering provisions of Leases unenforceable in violation of Section 365. The revisions to Section 365 make it clear that the Debtors cannot use Section 365(f) to render lease provisions unenforceable. While certain provisions may indirectly limit the assignment of the Leases, Section 365(b) specifically protects these provisions. Provisions governing use, radius and the permitted conduct upon the Premises, therefore, are not anti-assignment provisions and Section 365(f) does not render them unenforceable. These are provisions negotiated in good faith that legitimately preserve the Landlords' control over their shopping centers. Section 365(b)(3) no longer permits even insubstantial breaches of provisions such as use, radius, location or exclusivity. These critical lease terms are enforceable under Section 365(b), and this Court should deny any attempted assignment that fails to strictly comply with such provisions, and strike any language in an order that prospectively renders such lease provisions unenforceable. To the extent that any provision of a Lease may be rendered unenforceable, it is only unenforceable in connection with the assignment in bankruptcy and not with respect to any future assignments by a non-debtor third party.

**D.    The APA and Sale Order should not modify agreements such as master leases, or provide for a sale free and clear of restrictive covenants.**

20. The Bidding Procedures Order included specifically negotiated language

11

with respect to master leases that require an amendment or a court order prior to taking any action with respect to such master lease agreement. In addition, the Bidding Procedures Order had specific language prohibiting the sale of real estate assets free and clear of restrictive covenants (such as REAs and easements), unless an affected Landlord was provided with notice and an opportunity to object. This language should carry through to any final sale order. The question of whether property may be sold free and clear of property interests such as restrictive covenants, easements, rights of way, *etc*. is determined under applicable non-bankruptcy law. As a result, whether any assignment or sale of property may be made free and clear of such agreements should not be made on a prospective basis, but only on an individual basis after a careful review of the agreement in question and applicable non-bankruptcy law.

**E.    Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations.**

21.    The Sale Order requests that the sale be free and clear of liens, claims and encumbrance and lacks clarity on future obligations that will come due under the Leases. Section 2.4(b) and 2.5 of the APA provides that the Successful Bidder will have no responsibility for any obligation under a lease that pre-dates the assignment, including those for year-end adjustments for charges such as taxes, CAM, insurance, utilities, etc. The APA also provides that Debtors must indemnify the Successful Bidder for these charges (even though the Successful Bidder is not paying them). Either the Debtors or the Successful Bidder must be responsible for these charges. To further complicate matters, the Sale Order also provides that the Successful Bidder is not responsible for pre-assignment adjustments, but the Sale Order requires the Debtors to establish an escrow to pay these adjustments. Landlords are not opposed to an escrow process, but the Sale Order must provide an actual process to establish appropriate escrow amounts for pre-Closing adjustment billings that ensures that Landlords with assigned Leases are

12

paid in full for these charges and not subject to any arbitrary cap. While such changes are not required to be paid as cure since they are not yet in default, making arrangements for the payment of same is a part of providing adequate assurance of future performance.

22. The Landlords object to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. The Debtors continue to be responsible for all such unbilled charges as they come due under the Leases, and the Debtors, or any assignee, must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Leases cannot cut off the Landlords' right to recover unbilled charges that have accrued, or are accruing, under the Leases. If the sale is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will ever be paid to the Landlords.

23. In addition, the Leases provide that the Debtors must indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as environmental remediation, or personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents, as well as environmental obligations that may have accrued or are accruing under the Leases. Any order approving the assumption and assignment of the Leases must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that it can satisfy the indemnification obligations under the Leases for

13

any such claims that relate to the period prior to any assumption and assignment of the Leases.

    24.  Finally, the APA provides a broad definition of encumbrances, and Landlords object to the sale free and clear of many of these items as per the above. Specifically, the Debtors expanded definition of encumbrances includes rights of first refusal, first negotiation or first offer, option to purchase, leases subleases, licenses, occupancy agreements, options, easements, rights of way, covenants, conditions, restrictions, declarations, defects in title, encroachments, exceptions or other encumbrances. As set forth above, the Debtors may not sell property free and clear of many of these restrictions under applicable state law, and the Debtors should not be able to use an overinclusive definition of encumbrance to circumvent the rights of other parties.

### III. OBJECTION TO DESIGNATION RIGHTS PROCEDURES

    25.  Landlords do not object to the designation rights in general to provide the Successful Bidders and Landlords time to explore additional assumption and assignment of leases. Any such designation rights, however, must protect Landlords' rights in the event of a potential assumption and assignment of their respective Leases.

    26.  Landlords object to any restriction in their ability to object to the assumption and assignment of the Leases, for any reason. Designation rights emanate only from the rights of the Debtors under the Bankruptcy Code, (s*ee* In re Ames Dep't Stores, Inc., 287 B.R. 122 (Bankr. S.D.N.Y. 2002)), and there is no such limitation on a Landlords' ability to object under Section 365. Landlords must be able to raise all objections in connection with a request to assume and assign the Leases.

    27.  In addition, any party that has filed an objection to proposed cure amounts must have the ability to amend those amounts, regardless of when such charge arose. The cure

14

objection filed by Landlords specifically preserves that right, and Landlords have no doubt that the Debtors are not agreeing to be bound by their scheduled cure amounts if they later determine that they believe their proposed amount is overstated.

28.     It is evident that a party other than the Debtors will be operating the business in certain Premises during a designation period. Any such party must comply with all terms of the Leases during any such period in all respects and the proposed Occupancy Agreement between the Debtor contract party and the proposed Licensee must be subject, in all respects, to the applicable Lease and any related documents such as REAs, COREAs, rights of way, *etc*. In addition, said party must be responsible for all obligations during the time that it controls the Lease, in addition to Debtors' joint liability therefor.

29.     There is no direct relationship between anyone other than Debtors and the respective Landlords until the Lease has been assumed and assigned. Therefore, it is unclear what remedy a Landlord may have in the event of failure to perform by the party in possession. Any final Sale Order must protect the Landlords during any proposed designation period. The Court should require that sufficient funds remain with the Debtors to cover lease obligations (both monetary and non-monetary) during any such designation period in the event the Licensee fails to perform under the Lease. Moreover, The Sale Order and the Occupancy Agreement should provide the Landlords with a direct right of action against the Licensee for any breaches of the Lease during the occupancy period.

30.     Any order approving the sale should not include any prospective ruling on the enforceability of any provision of the Leases. There is no pending dispute concerning the assumption and assignment of any lease that has raised a current controversy with respect to any lease provision. Therefore, any request to render a lease provision unenforceable at this time is

an impermissible request for an advisory opinion by this Court. Therefore, it is inappropriate to make any determination of the enforceability of any lease provisions until there is an actual dispute over the assumption and assignment of a specific lease that raises one of these provisions.

## IV. AN UNDERCAPITALIZED ASSIGNEE SHOULD PROVIDE LANDLORDS' ADDITIONAL SECURITY.

31.   If the Successful Bidder, or any other proposed assignee, does not possess sufficient operating experience or capitalization to satisfy Landlords' requirements, the assignee should provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from a financially capable parent entity; (ii) a letter or credit; or (iii) a cash security deposit. Pursuant to Section 365(l), the Landlords may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Leases in the event that the assignee fails to perform on a going-forward basis. This is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of an ultimate assignee with no operating history.

## V. LANDLORDS OBJECT TO ANY WAIVER OF RULES 6004(h) AND 6006(d).

32.   The Landlords object to any waiver of requirements of Federal Rule of Bankruptcy Procedure ("Rule") 6004(h) and 6006(d), especially to the extent it adversely affects the Landlords' appellate rights thereunder. Such a waiver is unnecessary and inequitable. These subsections were added to the Rules specifically to protect the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under Sections 363 or 365. Landlords should not have their appellate

rights compromised by an unnecessary and advance waiver of these protections, especially where the Debtors seek such a truncated sale process and where Debtors have not established any cause for such a waiver.

## VI. **RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS AND JOINDER**

33. This Objection is without prejudice to Landlord's ability to raise further objections at the Sale Hearing and the Landlords reserve all rights to: (i) raise all objections to any request to assume and assign the Leases on any grounds, including objections based upon adequate assurance of future performance and the proposed use for any Premises; (ii) require any attempted assignment to comply with all terms of the Leases, and (iii) to assert any and all cure amounts, for any period, at the time that any of the Leases are designated for potential assumption and assignment.

34. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## VII. **CONCLUSION**

The Court should continue any request to assume and assign the Leases at the Sale Hearing to provide Landlords with adequate assurance of future performance information, as well as modify the designation rights procedures and proposed sale order as set forth above. The Landlords also requests that the Court incorporate the modifications raised by this Objection, and grant such further relief as the Court deems proper.

Dated: January 29, 2019  
New York, New York

Respectfully submitted,

*/s/ Paul E. Harner*  
Paul E. Harner, Esquire  
Alyssa E. Kutner, Esquire  
**Ballard Spahr LLP**  
919 Third Avenue  
New York, NY 10022  
Direct: (646) 346-8075  
Fax: (212) 223-1942  
Email: harnerp@ballardspahr.com  
        kutnera@ballardspahr.com

- and -

David L. Pollack, Esquire  
**Ballard Spahr LLP**  
1735 Market Street, 51st Floor  
Philadelphia, PA 19103  
Direct: (215) 864-8325  
Pollack@ballardspahr.com

- and -

Dustin P. Branch, Esquire  
**Ballard Spahr LLP**  
2029 Century Park East, Suite 800  
Los Angeles, CA 90067-2909  
Direct: (424) 204-4354  
Fax: (424) 204-4350  
Email: branchd@ballardspahr.com

- and –

Leslie C. Heilman, Esquire  
**Ballard Spahr LLP**  
919 N. Market Street, 11th Floor  
Wilmington, DE 19801  
Direct: (302) 252-4465  
Email: heilmanl@ballardspahr.com

*Attorneys for Acadia Realty Limited Partnership, Avenues Mall, LLC, Brixmor Operating Partnership, L.P., CBL-Shops at*

*Friendly, LLC, Cedar – Valley Plaza, LLC, CenterCal Properties, LLC, FBA Holdings, Inc., Federal Realty Investment Trust, GS Pacific ER, LLC, Hart I-55 Industrial LLC, Heidenberg Properties, Kravco Company, Passco Hanford Mall, LLC, PGIM Real Estate, S-Tract LLC, Starwood Retail Partners LLC, The Macerich Company, Vintage Real Estate, LLC, WBCMT 2007-C33 Independence Center LLC, Weitzman – Helios IV, LLC, and White Plains Galleria Limited Partnership*