**Hearing Date: March 21st, 2019 at 10:00 am**
**Objection Dateline: March 14, 2019 at 4:00 pm**

TSEITLIN & GLAS, P.C.
345 Seventh Avenue, 21st Floor
New York, New York 10001
646-833-1639
Eduardo J. Glas, Esq.
Attorneys for Natalie and Edward Parker

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** |
| In re:<br><br>SEARS HOLDINGS CORPORATION, et al.<br><br><br><br>                            Debtor. |

Chapter 11

Case No. 18-23538 (RDD)
(Jointly Administered)

---

### NATALIE AND EDWARD PARKER'S MOTION TO LIFT THE AUTOMATIC STAY SO THAT THEIR STATE COURT PERSONAL INJURY ACTION CAN PROCEED TO TRIAL

---

Natalie and Edward Parker (together, the "Parkers"), by and through their counsel,

Tseitlin & Glas, move for an order pursuant to Section 362(d)(1) of the Bankruptcy Code to lift

the automatic stay so that their pending personal injury action in New Jersey State court against

the Debtor can proceed to trial.  In support of their motion, the Parkers represent as follows:

### Background

1.    On October 15, 2018, (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.

**Jurisdiction**

2.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) (motions to terminate,

annul, or modify the automatic stay).  Venue is proper before this Court pursuant to 28 U.S.C. §§

1408 and 1409.

**Relief Requested**

3.    By this Motion, the Parkers seek an order lifting the automatic stay pursuant to

section 362(d)(1) of the Bankruptcy Code, to proceed with their pending personal injury action

against the Debtor in New Jersey State court (the "State Court Action"), which was scheduled for

trial before the Debtor filed its bankruptcy case.

**The State Court Action**

4.    The Parkers filed their original complaint (the "Complaint") commencing the State

Court Action on March 2, 2017.  See Certification of Paul J. Bartolomeo, Jr., Esq., in support of

motion, ¶ 2.

5.    The complaint alleges that Natalie Parker slipped and fell due to some liquid

negligently left on the floor of a Sears' store in Deptford, New Jersey.  Ms. Parker suffered

physical injuries as a result of the fall.  Id. at ¶ 3.

6.    On or about April 27, 2017, Sears filed an answer (the "Answer") to the Complaint.

Id. at ¶ 4.

7.    On or about July 27, 2017, the Parkers filed an amended complaint (the "Amended

Complaint"), adding Kellermeyer Building Services, LLC ("KBS") as a defendant in the case.

KBS is Sears' contractor that performed cleaning services at the Sears' Deptford store. Id. at ¶ 5.

8.    On August 7, 2017, Sears filed an Answer to the Amended Complaint, as well as Cross-Claims against KBS.  The Cross-Claims against KBS were based upon: 1) The Joint Tortfeasors Act/Comparative Negligence; 2) Vicarious Liability; 3) Contract (for defense and indemnification); 4) Breach of Contract for failure to procure insurance; 5) Declaratory Judgment; and 6) Breach of Contract for Failure to Perform Work and Provide Services in Good and Workmanlike Manner. Id. at ¶ 6.

9.    The contract between Sears and KBS provides, in relevant part:

> To the fullest extent permitted by law, [KBS] shall protect, indemnify, and hold harmless [Sears] … from and against any and all claims… resulting from or arising out of any injury to or death of any person… related to the following: (1) the Services or any acts, errors or omissions of [KBS]…

Id. at ¶ 7 and Exhibit C.

10.    Section 4.5 of the Agreement also provides in relevant part:

> [KBS] will not be relieved of the foregoing indemnity and related obligations by allegations or claims that [Sears] was negligent or that an injury or loss occurred as a result of the concurrent negligence of [Sears], [KBS] and or a Subcontractor. Notwithstanding the foregoing, [KBS] shall not be liable for indemnification to the extent the injury, damage or loss is finally judicially determined by a court of competent jurisdiction to have been caused by the negligence or willful misconduct of [Sears] or its employees.

Id.

11.    Section 5.1(c) of the Agreement also provides that KBS is to name Sears as an additional insured on the policy of insurance of not less than $5 million, covering KBS, on a primary, non-contributory basis.  Id.  Sears has no applicable liability insurance of its own for this claim.  It is self-insured up to $5 million.  Id.

12.   On or about September 5, 2017, KBS filed an Answer to the Amended Complaint. Id. at ¶ 10.

13.   Sears filed a Third-Party Complaint against Zurich American Insurance Co. ("Zurich"), the carrier for KBS, seeking a declaratory judgment that Zurich insure Sears, and provide Sears with a defense and indemnification.  Id. at ¶ 11 and Exhibit B.

14.   By letter dated August 8, 2017, Zurich accepted the tender of Sears with a reservation of rights. Id. at ¶ 12 and Exhibit D.

15.   Discovery ended in the State Court Action on June 21, 2018.  Id. at ¶ 13.

16.   Trial in the State Court Action had been scheduled for November 13, 2018.  Id. at ¶ 14.

17.   KBS filed a Motion for Summary Judgment based upon liability, and Sears cross-moved for summary judgment on the contractual claims.  Both motions were denied by Order of the State Court dated October 2, 2018.  Id. at ¶ 15 and Exhibit E.

18.   In its decision denying the summary judgment motions, the State Court noted: "there appears enough evidence to assign at least some blame to Sears" and the indemnity clause did not indemnify Sears for its own negligence.  A trial would be needed to apportion any liability between Sears and KBS.  Id.

19.   On October 18, 2018, Sears filed a Notice of Bankruptcy and Imposition of the Automatic Stay in the State Court Action. Id. at ¶ 17 and Exhibit F.

20.   The State Court informed the Parkers' counsel that the trial would proceed with the remaining parties since the automatic stay did not apply to them.  Id. at ¶ 18.

21.   On October 24, 2018, the Parkers' counsel requested an adjournment of the trial for sixty days to allow the filing of the present motion for relief from the automatic stay.  Id. at ¶ 19.

22.   On the same date, KBS filed a motion to stay all proceedings for sixty days because the absence of Sears from the trial would result in irreparable harm to the other parties. Id. at ¶ 20 and Exhibit G.

23.   On November 9, 2018, KBS's motion to stay all proceedings was granted. Id. at ¶ 21 and Exhibit H.

**The Stay Should Be Lifted to Permit the State Court Action to Proceed to Trial**

24.   Section 362(d)(1) of the Bankruptcy Code permits a court to modify the stay for "cause." "The party opposing stay relief has the ultimate burden of disproving the existence of 'cause,' *see* 11 U.S.C. § 362(g)(2), but the movant has the initial burden to show that 'cause' exists." In re New York Medical Group, P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). Where a party seeks stay relief to commence or continue litigation in another forum, the bankruptcy court must weigh the request against the following factors in determining if "cause" exists:

> (1) Whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of the action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balances of harms.

In re Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax), 907 F.2d 1280,

1286 (2d Cir. 1990); Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142-43 (2d Cir. 1999).

25.    The decision to lift the stay is committed to the court's discretion.  Sonnax, 907 F.2d

at 1286.  Not all the factors are relevant in every case.  Mazzeo, 167 F.3d at 143.  The court need

not assign equal weight to each of the factors.  New York Medical Group, 265 B.R. at 413.   As

shown below, the applicable Sonnax factors all weigh in favor of the Parkers.  Therefore, the

Court should lift the automatic stay to allow the State Court Action to proceed to trial.

26.    The first Sonnax factor is decidedly in favor of the Parkers.   The state court is the

forum where the parties can get complete resolution of the issues.  Indeed, the bankruptcy court

is precluded from deciding personal injury claims.  See 28 U.S.C.A. § 157(b)(2)(B); New York

Medical Group, 265 B.R. at 412 (bankruptcy court lacks jurisdiction to liquidate a personal

injury claim).   Equally in favor of the Parkers are factors ten and eleven:  The State Court

Action is ready for trial, and the State Court is already familiar with the case.  It has presided

over discovery and summary judgment motions.  The lifting of the stay therefore will promote

judicial economy and the expeditious resolution of this matter.  Similarly, factor five also weighs

on the Parkers' favor.  Although the Debtor is not directly insured, its contractor, KBS is and its

policy covers the Debtor as an additional insured.  Indeed, KBS's carrier had been paying for the

Debtor's defense of the State Court Action.  Nor can it credibly argue that the litigation in the

State Court would prejudice the interests of other creditors (factor seven).  "… any prejudice to

other creditors caused by a trial on the merits in a court other than this court would be caused by

the dictates of Section 157(b)(5) rather than by any stay relief granted here."  In re Ice Cream

Liquidation, 281 B.R. 154, 166 (Bankr.D.Conn. 2002).  Finally, the impact of the stay and the

balance of the harms also favor the Parkers.  The State Court Action is already ready for trial in

New Jersey.  The stay is imposing an undue delay on the Parkers and the other defendant, KBS, in the State Court Action while this Court cannot provide any relief to Plaintiff or KBS while the stay is in place.  In contrast, the lifting of the stay would impose no cognizable harm upon the estate.  The legal expenses of the Debtor will continue to be covered by KBS' s carrier.  Moreover, to the extent the Debtor is adjudged liable in the State Court Action, the Parkers would only seek payment from KBS' s carrier.  In short, the Sonnax factors weigh heavily in favor of the Parkers.  Accordingly, the Court should grant the motion lifting the stay.

**WHEREFORE**, the Parkers respectfully requests that the Court lift the stay, allowing the State Court Action to proceed to trial, and permitting the Parkers to enforce whatever judgment they may obtain in the State Court Action against the proceeds of the KBS's policy.

Dated:  January 30, 2019

Respectfully submitted,

TSEITLIN & GLAS, P.C.

By: /s/*Eduardo J. Glas*
        Eduardo J. Glas

345 Seventh Avenue, 21st Floor
New York, New York 10001
(646)833-1639

Attorneys for the Parkers