# EXHIBIT B – Recognition Agreements

# EXHIBIT B-1
# San Leandro

## RECOGNITION AGREEMENT

THIS RECOGNITION AGREEMENT (the "Agreement"), dated as of August 18, 2015 (the "Effective Date"), is made and entered into by and between RALPH DAYAN and SARAH DAYAN, as Trustees of the Dayan Family Revocable Trust dated December 31, 1991 (collectively, "Master Landlord"), KMART CORPORATION, a Michigan corporation ("Sublandlord"), and LIVING SPACES FURNITURE, LLC, a Delaware limited liability company ("Subtenant"), with reference to the following facts:

A.   Master Landlord and Sublandlord previously entered into that certain Lease, by and between Eltinge, Graziadio and Sampson Development Co., a partnership, predecessor-in-interest to Master Landlord, as landlord, and S.S. Kresge Company, a Michigan corporation, predecessor-in-interest to Sublandlord, as tenant, dated May 17, 1976, a memorandum of which was filed of record in the Official Records of Alameda County, California (the "Official Records") on December 23, 1976 at Reel 4654, Image 678 as Instrument Number 76-218275, as amended by (i) that certain First Amendment to Kmart Lease, dated September 28, 1977, (ii) that certain First Memorandum of Lease, dated September 28, 1977, (iii) that certain Modification of Memorandum of Lease and Amendment to K Mart Lease [sic], dated March 31, 1981, (iv) that certain Third Modification of Lease, dated as of January 26, 1992, (v) that certain Amendment to Lease, dated as of March 1, 2003, and (vi) that certain Fifth Amendment to Lease, dated as of August 10, 2012 (as further amended, assigned and/or extended from time to time, collectively the "Master Lease"), for premises located in the City of San Leandro, County of Alameda, State of California, commonly known and described as 250 Floresta Boulevard and more particularly described in the Master Lease (the "Premises").

B.   Sublandlord, as sublandlord, and Subtenant, as subtenant, have entered into that certain Sublease, as amended (the "Sublease") for the sublease of the entire Premises. A redacted copy of the Sublease is attached hereto as Exhibit "A."

C.   Sublandlord and Subtenant desire that Master Landlord confirm its agreement to recognize Subtenant's rights under the Sublease, as set forth in this Agreement.

1.   Recognition of Sublease. Subject to the provisions of this Agreement, the Sublease and all the rights of Sublandlord and Subtenant under it are subject and subordinate to the Master Lease. Except in those instances where the Master Lease is terminated in accordance with its terms on account of damage to or destruction or condemnation of the Premises, in the event that the Master Lease is terminated for any reason, including without limitation any termination or rejection in connection with any bankruptcy/insolvency proceeding, Master Landlord shall recognize Subtenant under the Sublease as the direct tenant or occupant of Master Landlord in and to the Premises, under all of the terms and conditions contained in the Sublease. Master Landlord shall execute and deliver such additional documents as may be reasonably requested by Subtenant to effect the recognition of Subtenant contemplated by this Agreement.

2.   Confirmation of Master Lease. Master Landlord hereby certifies, warrants, and represents to Sublandlord and Subtenant as follows:

1

    **2.1**    Master Landlord currently is the landlord under the Master Lease, Sublandlord currently is the tenant of the Premises under the Master Lease, and the Master Lease has not been assigned nor, to the best of Master Landlord's knowledge, have the Premises been subleased.

    **2.2**    As of the date of this Agreement, the Master Lease is in full force and effect and has not been terminated.

    **2.3**    The Master Lease constitutes the entire agreement between Sublandlord and Master Landlord for the Premises, and no amendments to the Master Lease (except as set forth therein), either written or oral, currently exist.

    **2.4**    As of the date of this Agreement, there exist no defaults under the Master Lease by Sublandlord, and to Master Landlord's knowledge no event has occurred which with the passage of time or the giving of notice or both would constitute a default under the Master Lease by Sublandlord.

**3.**    Miscellaneous.

    **3.1**    <u>Attorneys' Fees</u>. If any legal action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties is entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to other relief to which it or they may be entitled. Attorneys' fees incurred by any party to this Agreement in enforcing any judgment on any action brought to resolve any controversy arising under this Agreement, to enforce any of its terms or for breach of this Agreement, are recoverable by the prevailing party. Such right to recover post-judgment attorneys' fees is separate and distinct from the right to recover prejudgment attorneys' fees.

    **3.2**    <u>Notices</u>. Any notice, demand, request, consent, approval, or other communication that any party desires or is required to give to the other party(ies) shall be in writing and served personally, sent by recognized overnight courier (<u>e.g.</u>, Federal Express), or sent by prepaid, first-class mail. Any notice, demand, request, consent, approval or other communication that any party desires or is required to give to the other party(ies) shall be addressed to the other party(ies) at the address(es) set forth in the Master Lease, except that Subtenant's address is as set forth for notice purposes in the Sublease. Any party may change its address by notifying the other parties of the change of address. Notice shall be deemed communicated on delivery if hand delivered, on the next business day if delivered by overnight courier, or within three (3) business days from the time of mailing if mailed as provided in this paragraph.

    **3.3**    <u>Successors</u>. This Agreement shall be binding on and inure to the benefit of the parties hereto and their successors and assigns.

    **3.4**    <u>Recitals</u>. The recitals set forth in the introductory paragraph and in Section 1, are incorporated herein by reference.

2

**3.5**   Authority. Each person executing this Agreement on behalf of itself or on behalf of a party to this Agreement hereby represents and warrants that it has authority to execute this Agreement on behalf of itself or such party and the terms, covenants and obligations contained herein are binding upon itself or such party, as the case may be.

**3.6**   Counterparts. This Agreement may for convenience be signed in any number of counterpart copies with the same effect as if the signature to each such counterpart copy were upon a single instrument. Each counterpart shall be deemed an original as to any party whose signature it bears and all of such counterparts taken together shall constitute one document. An executed electronic (pdf) or facsimile of this Agreement shall be have the same force and effect as an original executed copy of this Agreement.

**3.7**   Survival. The expiration or termination of this Agreement and/or the Master Lease shall not affect (in whole or in part) any rights, claims or causes of action based on this Agreement and/or the Master Lease, all of which shall survive the expiration or termination of this Agreement and/or the Master Lease.

**3.8**   Continuing Effect. Except as set forth in this Agreement, all the provisions of the Master Lease shall remain unchanged and in full force and effect.

**3.9**   Memorandum of Agreement. If requested by Subtenant, the parties shall execute and acknowledge a memorandum of this Agreement in a commercially reasonable form as the parties shall reasonably agree upon, which Subtenant shall have the right to record in the Official Records of Alameda County, California.

[Signature Page to Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**MASTER LANDLORD:**

*/s/ Ralph Dayan*
RALPH DAYAN, as Trustee of the Dayan Family Revocable Trust dated December 31, 1991

*/s/ Sarah Dayan*
SARAH DAYAN, as Trustee of the Dayan Family Revocable Trust dated December 31, 1991

**SUBLANDLORD:**

KMART CORPORATION, a Michigan corporation

By: */s/ S. Jeffrey Stollenwerck*
S. Jeffrey Stollenwerck, Senior Vice President and President, Real Estate



**SUBTENANT:**

LIVING SPACES FURNITURE, LLC, a Delaware limited liability company

By: */s/ Grover G. Geiselman*
Grover G. Geiselman, Manager

# EXHIBIT B-2

# Scottsdale

### RECOGNITION AGREEMENT AND AMENDMENT OF LEASE
(Scottsdale, Arizona Store #1901)

THIS RECOGNITION AGREEMENT AND AMENDMENT OF LEASE ("Agreement"), dated as of December 19th, 2012 ("Execution Date"), is made by SL-RH ARIZONA LLC, a New York limited liability company ("Master Landlord"), SEARS, ROEBUCK AND CO., a New York corporation ("Sublandlord") and LIVING SPACES FURNITURE, LLC, a Delaware limited liability company ("Subtenant"), who agree as follows:

1.  Recitals. This Agreement is made with reference to the following facts and objectives:

    1.1   Sublandlord, as tenant, and Master Landlord, as landlord, entered into that certain Ground Lease, dated December 28, 1998, as amended by that certain First Amendment to Lease dated January 26, 1999, that certain Second Amendment to Lease dated February 8, 1999, and Supplemental Agreement dated as of November, 1999 (collectively, the "Master Lease"), where Sublandlord leases from Master Landlord a portion of that certain approximately 13 acre tract more accurately identified in the Master Lease (the "Master Premises") located in Maricopa County.

    1.2   Sublandlord and Subtenant are entering into a sublease (the "Sublease") in the form attached hereto as Exhibit A, covering the portion of the Master Premises shown on the attached Exhibit B (the "Premises").

    1.3   Sublandlord and Subtenant desire that Master Landlord confirm its agreement to recognize Subtenant's rights under the Sublease, and the parties hereto desire to agree on and to confirm various matters pertaining to the Master Lease and the Sublease, all as set forth in this Agreement.

2.  Recognition of Sublease. The Sublease and all the rights of Sublandlord and Subtenant under it are subject and subordinate to the Master Lease, subject to the provisions of this Agreement. Except in those instances where the Master Lease is terminated in accordance with its terms on account of damage or destruction, condemnation, or the default of Subtenant under the Sublease where such default is not cured within applicable cure periods, in the event for any reason the Master Lease is terminated (including without limitation any termination or rejection in connection with any bankruptcy/insolvency proceeding), Master Landlord shall recognize Subtenant under the Sublease as the direct tenant or occupant of Master Landlord under all terms and conditions contained in the Sublease. Master Landlord shall execute and deliver such additional documents as may be reasonably requested by Subtenant to effect the recognition of Subtenant contemplated by this Agreement, including, without limitation, an amendment to the recorded Memorandums of Lease.

3.  Amendment to Master Lease - Options. Master Landlord and Sublandlord hereby agree to amend the terms of Section 3(b) of the Master Lease to convert the three (3) options for 10 years each into six (6) options of 5 years each. The terms for exercising the options, the rent to be paid during the option period lease years, and all other terms of the Master Lease with respect to the options shall remain in full force and effect. By Master Landlord's and

BH01\1689134.3
ID\KRH - 10024510199

1

Sublandlord's execution of this Agreement, Sublandlord (with Master Landlord's consent) hereby exercises the first of the six (6) options, thereby extending the current Term of the Master Lease through October 31, 2024.

4. **Confirmation of Master Lease.** Master Landlord hereby certifies, warrants, and represents to Sublandlord and Subtenant as follows:

4.1 **Parties.** Master Landlord currently is the landlord under the Master Lease, Sublandlord currently is the tenant of the Premises under the Master Lease, and the Master Lease has not been assigned.

4.2 **Master Lease.** A true and correct copy of the Master Lease is attached to this Agreement as **Exhibit C**, and constitutes the entire agreement between Sublandlord and Master Landlord for the Premises, and no amendments to the Master Lease (except as set forth herein), either written or oral, currently exist. Master Landlord shall not amend the Master Lease without Subtenant's prior written consent.

4.3 **Full Force of Master Lease.** As of the date of this Agreement, the Master Lease is in full force and effect and has not been terminated.

4.4 **No Defaults.** As of the date of this Agreement, there exist no defaults under the Master Lease by Sublandlord, and, to Master Landlord's current actual knowledge, no event has occurred which with the passage of time or the giving of notice or both would constitute a default under the Master Lease by Sublandlord.

5. **Miscellaneous.**

5.1 **Attorneys' Fees.** If any legal action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties is entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to other relief to which it or they may be entitled. Attorneys' fees incurred by any party to this Agreement in enforcing any judgment on any action brought to resolve any controversy arising under this Agreement, to enforce any of its terms or for breach of this Agreement, are recoverable by the prevailing party. Such right to recover post-judgment attorneys' fees is separate and distinct from the right to recover prejudgment attorneys' fees.

5.2 **Notices.** Any notice, demand, request, consent, approval, or other communication that any party desires or is required to give to the other party(ies) shall be in writing and served personally, sent by recognized overnight courier (e.g., Federal Express), or sent by prepaid, first-class mail. Any notice, demand, request, consent, approval or other communication that any party desires or is required to give to the other party(ies) shall be addressed to the other party(ies) at the address(es) set forth in the Master Lease, except that Subtenant's address is set forth following its signature below. Any party may change its address by notifying the other parties of the change of address. Notice shall be deemed communicated on delivery if hand delivered, on the next business day if delivered by overnight courier, or within **three (3)** business days from the time of mailing if mailed as provided in this paragraph.

BH01\1689134.3
ID\KRH - 100245\0199

2

5.3     **Successors.** This Agreement shall be binding on and inure to the benefit of the parties hereto and their successors and assigns.

5.4     **Recitals.** The recitals set forth in the introductory paragraph and in Section 1, are incorporated herein by reference.

5.5     **Authority.** Each person executing this Agreement on behalf of itself or on behalf of a party to this Agreement hereby represents and warrants that it has authority to execute this Agreement on behalf of itself or such party and the terms, covenants and obligations contained herein are binding upon itself or such party, as the case may be.

5.6     **Counterparts.** This Agreement may for convenience be signed in any number of counterpart copies with the same effect as if the signature to each such counterpart copy were upon a single instrument. Each counterpart shall be deemed an original as to any party whose signature it bears and all of such counterparts taken together shall constitute one document.

5.7     **Survival.** The expiration or termination of this Agreement and/or the Master Lease shall not affect (in whole or in part) any rights, claims or causes of action based on this Agreement and/or the Master Lease, all of which shall survive the expiration or termination of this Agreement and/or the Master Lease.

5.8     **Continuing Effect.** Except as set forth in this Agreement, all the provisions of the Master Lease shall remain unchanged and in full force and effect.

5.9     **Facsimile/Email Signatures.** A signed copy of this Agreement transmitted via facsimile or email to one or more of the other parties hereto shall be binding upon the signatory thereto.

5.10    **Memorandum of Consent.** Upon the Execution Date, the parties shall execute and acknowledge the Memorandum of Sublease and Recognition of Sublease attached hereto as Exhibit D, which Subtenant shall have the right to record with the Recorder's Office of the County of Maricopa, Arizona.

[Signature Page to Follow]

[Signature Page to Recognition Agreement and Amendment to Lease]

**"MASTER LANDLORD"**

SL-RH ARIZONA LLC, a New York limited liability company

By: *[signature]*
Name: Stephen Lerner
Title: managing member

**"SUBLANDLORD"**

SEARS, ROEBUCK AND CO., a New York corporation

By: _____
Name: _____
Title: _____

**"SUBTENANT"**

LIVING SPACES FURNITURE, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

Subtenant's Address:

P.O. Box 2309
Buena Park, CA 90261
Telephone: _____
Facsimile: _____
Attention: Jeff Seabrook

BH01\1689134.3
ID\KRH - 100245\0199

4

[Signature Page to Recognition Agreement and Amendment to Lease]

**"MASTER LANDLORD"**

SL-RH ARIZONA LLC, a New York limited liability company

By: _____
Name: _____
Title: _____

**"SUBLANDLORD"**

SEARS, ROEBUCK AND CO., a New York corporation

By: _/s/_____
Name: Jeffrey Stollenwerck
Title: SVP Real Estate

[R.E. MANAGER / LEGAL stamp with initials]

**"SUBTENANT"**

LIVING SPACES FURNITURE, LLC, a Delaware limited liability company

By: _/s/_____
Name: Grover Geiselman
Title: CEO

Subtenant's Address:

P.O. Box 2309
Buena Park, CA 90261
Telephone: 909-821-1664
Facsimile: 714-670-4558
Attention: Jeff Seabrook

# EXHIBIT A

## THE SUBLEASE

BH01\1689134.3
ID\KRH - 10024510199

1

# EXHIBIT B-3

# Glendale

RECOGNITION AGREEMENT

THIS RECOGNITION AGREEMENT (the "Agreement"), dated as of November 13, 2015 (the "Effective Date"), is made and entered into by and among GFI-GLENDALE INVESTMENTS LIMITED PARTNERSHIP, a Utah limited partnership ("GFI Landlord"), WGA-GLENDALE, INC., a Utah corporation ("WGA Landlord") (GFI Landlord and WGA Landlord are referred to herein collectively as "Master Landlord"), KMART CORPORATION, a Michigan corporation ("Sublandlord"), and LIVING SPACES FURNITURE, LLC, a Delaware limited liability company ("Subtenant"), with reference to the following facts:

A.  GFI Landlord and Sublandlord previously entered into that certain Lease, by and between GFI Landlord, as landlord, and Sublandlord, as tenant, dated March 12, 1993, a memorandum of which was filed of record in the Official Records of Maricopa County, Arizona (the "Official Records") on August 25, 1993 as Instrument Number 93-0567731, as amended by (i) that certain First Amendment to Memorandum of Lease, dated as of March 12, 1993, and (ii) that certain First Amendment to Lease, dated as of April 9, 1994 (as further amended, assigned and/or extended from time to time, collectively the "GFI Lease").

B.  WGA Landlord and Sublandlord previously entered into that certain Lease, by and between WGA Landlord, as landlord, and Sublandlord, as tenant, dated October 18, 2005 (as further amended, assigned and/or extended from time to time, collectively the "WGA Lease").

C.  The GFI Lease and the WGA Lease are referred to herein collectively as the "Master Lease," which Master Lease is for premises located in the City of Glendale, County of Maricopa, State of Arizona, commonly known and described as 6767 W. Bell Road, Glendale, Arizona and more particularly described in the Master Lease (the "Premises").

D.  Sublandlord, as sublandlord, and Subtenant, as subtenant, entered into that certain Sublease dated as of July 16, 2015, as amended by that certain First Amendment to Sublease dated October 14, 2015, that certain Second Amendment to Sublease dated October 27, 2015, that certain Third Amendment to Sublease dated November 4, 2015, and that certain Fourth Amendment to Sublease dated November 6, 2015 (collectively, the "Sublease"), a redacted copy of which is attached hereto as Exhibit A, for the sublease of the entire Premises, excluding the "GFI Pad," as that term is defined and depicted in the Declaration of Covenants, Conditions and Restrictions Grant of Easements, by and between GFI Landlord and Dos Compadres Associates, an Arizona general partnership, dated July 28, 1993 and filed of record in the Official Records on August 25, 1993 as Instrument Number 93-0567730, as amended by that certain First Amendment to Declaration of Covenants, Conditions and Restrictions Grant of Easements dated October 14, 2005 and filed of record in the Official Records on October 18, 2005 as Instrument Number 20051549535, and that certain Second Amendment to Declaration of Covenants, Conditions and Restrictions Grant of Easements dated August 21, 2012 and filed of record in the Official Records on August 23, 2012 as Instrument Number 20120755738 (the foregoing recorded documents being referred to herein collectively as the "Declaration").

E.  The entire Premises, excluding the GFI Pad, is defined herein as the "Subleased Premises."

1

F.  Sublandlord and Subtenant desire that Master Landlord confirm its agreement to recognize Subtenant's rights under the Sublease, as set forth in this Agreement.

1.  Recognition of Sublease. Subject to the provisions of this Agreement, the Sublease and all the rights of Sublandlord and Subtenant under it are subject and subordinate to the Master Lease. Except in those instances where the Master Lease is terminated in accordance with its terms on account of damage to or destruction or condemnation of the Premises, in the event that the Master Lease is terminated for any reason, including without limitation any termination or rejection in connection with any bankruptcy/insolvency proceeding, Master Landlord shall recognize Subtenant under the Sublease as the direct tenant or occupant of Master Landlord in and to the Subleased Premises, under all of the terms and conditions contained in the Sublease. Master Landlord shall execute and deliver such additional documents as may be reasonably requested by Subtenant to effect the recognition of Subtenant contemplated by this Agreement.

2.  Confirmation of Master Lease. Master Landlord hereby certifies, warrants, and represents to Sublandlord and Subtenant as follows:

2.1  Master Landlord currently is the landlord under the Master Lease, Sublandlord currently is the tenant of the Premises under the Master Lease, and the Master Lease has not been assigned nor, to the best of Master Landlord's knowledge, have the Premises been subleased, except pursuant to the Sublease.

2.2  As of the date of this Agreement, the Master Lease is in full force and effect and has not been terminated.

2.3  A true and correct copy of the Master Lease is attached as Exhibit "H" to the Sublease, and the Master Lease constitutes the entire agreement between Sublandlord and Master Landlord for the Premises, and no amendments to the Master Lease (except as set forth therein), either written or oral, currently exist.

2.4  As of the date of this Agreement, there exist no defaults under the Master Lease by Sublandlord, and to Master Landlord's knowledge no event has occurred which with the passage of time or the giving of notice or both would constitute a default under the Master Lease by Sublandlord.

3.  No Release of Liability. The execution of this Agreement and Sublandlord's subleasing of the Subleased Premises to Subtenant shall not serve to release Sublandlord from any liability to Master Landlord under the Master Lease.

4.  Parking Lot Repairs. Subtenant covenants and warrants to Master Landlord that prior to opening for business to the public at the Subleased Premises, Subtenant shall, at its sole cost and expense, substantially complete all of the parking lot repairs recommended in the Pavement Inspection Report attached hereto as **Exhibit B**. Notwithstanding the foregoing, Subtenant shall have no obligation to perform any repairs to portions of the parking lot that are located outside of the boundaries of the Subleased Premises.

2

5. **Subtenant's Sales Reporting.** Subtenant covenants and warrants to Master Landlord that prior to opening for business to the public at the Subleased Premises, Subtenant shall provide Master Landlord with an initial sales projection for Subtenant's store at the Subleased Premises. Thereafter, Subtenant shall provide Master Landlord with an annual report of its sales for its store at the Subleased Premises every February for the previous calendar year. The obligations of Subtenant contained in this Section 5 are conditioned upon Master Landlord's execution and delivery to Subtenant of the Non-Disclosure and Confidentiality Agreement attached hereto as **Exhibit C**.

6. **Restriction on GFI Pad.** So long as Subtenant (a) is not in default under the Sublease, and (b) has not ceased selling mattresses at the Subleased Premises for a period of twelve (12) or more consecutive months, Master Landlord and its successors and assigns shall not (x) sell or lease any portion of the GFI Pad to, or (y) operate or permit under any circumstances to be operated upon or within the GFI Pad, any store or other business that sells or rents mattresses or displays mattresses for sale or rental. The parties to this Agreement consent to including the foregoing restriction in the recorded memorandum of this Agreement.

7. **Bell Road Monument Sign.** Sublandlord and Subtenant each agree not to acquire or attempt to acquire the right to any additional sign panels on Sign "A" (as defined in the Declaration) located on Bell Road (the "Bell Road Monument Sign") in excess of those to which they are currently entitled. Sublandlord and Subtenant each further agree that they shall not object to Master Landlord's acquisition or attempted acquisition of the right to any additional sign panels on the Bell Road Monument Sign. Master Landlord acknowledges that Sublandlord continues to have the right to use the top sign panel on the Bell Road Monument Sign pursuant to the terms of the Declaration and the Master Lease and that Sublandlord has granted Subtenant the right to use such sign panel under the terms of the Sublease.

8. **Miscellaneous.**

   8.1 **Attorneys' Fees.** If any legal action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties is entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to other relief to which it or they may be entitled. Attorneys' fees incurred by any party to this Agreement in enforcing any judgment on any action brought to resolve any controversy arising under this Agreement, to enforce any of its terms or for breach of this Agreement, are recoverable by the prevailing party. Such right to recover post-judgment attorneys' fees is separate and distinct from the right to recover prejudgment attorneys' fees.

   8.2 **Notices.** Any notice, demand, request, consent, approval, or other communication that any party desires or is required to give to the other party(ies) shall be in writing and served personally, sent by recognized overnight courier (e.g., Federal Express), or sent by prepaid, first-class mail. Any notice, demand, request, consent, approval or other communication that any party desires or is required to give to the other party(ies) shall be addressed to the other party(ies) at the address(es) set forth in the Master Lease, except that Subtenant's address is as set forth for notice purposes in the

3

Sublease. Any party may change its address by notifying the other parties of the change of address. Notice shall be deemed communicated on delivery if hand delivered, on the next business day if delivered by overnight courier, or within three (3) business days from the time of mailing if mailed as provided in this paragraph.

8.3     Successors. This Agreement shall be binding on and inure to the benefit of the parties hereto and their successors and assigns.

8.4     Recitals. The recitals set forth in the introductory paragraphs and in Section 1, are incorporated herein by reference.

8.5     Authority. Each person executing this Agreement on behalf of itself or on behalf of a party to this Agreement hereby represents and warrants that it has authority to execute this Agreement on behalf of itself or such party and the terms, covenants and obligations contained herein are binding upon itself or such party, as the case may be.

8.6     Counterparts. This Agreement may for convenience be signed in any number of counterpart copies with the same effect as if the signature to each such counterpart copy were upon a single instrument. Each counterpart shall be deemed an original as to any party whose signature it bears and all of such counterparts taken together shall constitute one document. An executed electronic (pdf) or facsimile of this Agreement shall be have the same force and effect as an original executed copy of this Agreement.

8.7     Survival. The expiration or termination of this Agreement and/or the Master Lease shall not affect (in whole or in part) any rights, claims or causes of action based on this Agreement and/or the Master Lease, all of which shall survive the expiration or termination of this Agreement and/or the Master Lease.

8.8     Continuing Effect. Except as set forth in this Agreement, all the provisions of the Master Lease shall remain unchanged and in full force and effect.

8.9     Memorandum of Agreement. If requested by Subtenant, the parties shall execute and acknowledge a memorandum of this Agreement in a commercially reasonable form as the parties shall reasonably agree upon, which Subtenant shall have the right to record in the Official Records of Maricopa County, Arizona at any time following Sublandlord's public announcement of the closure of its store located at the Premises.

[Signature Page to Follow]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**MASTER LANDLORD:**

GFI-GLENDALE INVESTMENTS LIMITED PARTNERSHIP, a Utah limited partnership

By: WGA-Glendale, Inc., a Utah corporation
Its: General Partner

By: _/s/ G. Walter Gasser_
Name: G. Walter Gasser
Title: President

WGA-GLENDALE, INC., a Utah corporation

By: _/s/ G. Walter Gasser_
Name: G. Walter Gasser
Title: President

**SUBLANDLORD:**

KMART CORPORATION,
a Michigan corporation

By: _/s/ JoAnn Catanese_
Name: JoAnn Catanese
Title: DVP, Real Estate

[Stamp: REAL ESTATE / LEGAL]

**SUBTENANT:**

LIVING SPACES FURNITURE, LLC,
a Delaware limited liability company

By: _/s/_
Grover G. Geiselman, Manager

5