Stephen M. Miller (admitted *pro hac vice*)
Douglas N. Candeub
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

Attorneys for Greensboro Lease Management, L.L.C.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                              :

**In re**                         :      **Chapter 11**

                              :

**SEARS HOLDINGS CORPORATION,** *et al.*,  :      **Case No. 18-23538 (RDD)**

                              :

                **Debtors.**[1]      :      **(Jointly Administered)**

                              :
------------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF GREENSBORO LEASE
MANAGEMENT, L.L.C. TO THE DEBTORS' SUPPLEMENTAL NOTICE OF CURE
COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND TO THE GLOBAL SALE TRANSACTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Greensboro Lease Management, L.L.C., through its Liquidating Trustee, John H. Newcomer, Jr.[2] ("Greensboro"), the landlord of a lease with debtor Kmart Corporation ("Kmart") as tenant, located in Greensboro, North Carolina, hereby files this limited objection and reservation of rights (this "Objection") to the *Debtors' Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction* (ECF No. 1774) (the "Cure Notice"),[3] and, insofar as it affects Greensboro's Lease, the Global Sales Transaction to which said Cure Notice pertains. Greensboro respectfully states as follows:

## BACKGROUND

1. Sears Holdings Corporation, and it affiliated co-debtors, including Kmart (together, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) on October 15, 2018. They have continued to operate their businesses and manage their properties as debtors-in-possession, pursuant to 11 U.S.C. §§ 1107(a) and 1108.[4]

2. Following an auction that commenced on January 14, 2019, the Debtors executed an asset purchase agreement on or about January 17, 2019, with the successful bidder for the Debtors' "Global Assets." The Debtors refer to the transaction as the "Global Asset Sale Transaction."

3. The Debtors filed a "Notice of Successful Bidder and Sale Hearing" (ECF No. 1730) (the "Sale Notice") on January 18, 2019.

4. In connection with the Global Asset Sale Transaction, the Debtors filed an initial cure notice (ECF No. 1731) on January 18, 2019. That initial notice does not list Greensboro.

---

[2] John H. Newcomer, Jr., Esq., not in his individual capacity but solely as Liquidating Trustee under the Amended and Supplemented Order Appointing Liquidating Trustee dated August 29, 2017 in the *Matter of Arbitration between Holtzman Family Partnership and Net Lease Management Partners, L.L.C. ("NLMP"), et al.*, American Arbitration Association, Case No. 01-14-0001-6795 SL.

[3] Terms not otherwise defined herein shall have the meanings ascribed to them in the Cure Notice.

[4] Unless otherwise specified, all statutory references to "Section" are to the Bankruptcy Code.

2

5. The Debtors supplemented their initial notice with the Cure Notice, which was filed on January 23, 2019. It lists executory contracts and unexpired leases that the Debtors may (or may not) designate for assumption and assignment to the Successful Bidder.

6. Greensboro is the lessor of premises leased by debtor Kmart, pursuant to an unexpired lease (the "Lease") dated March 20, 1997, for nonresidential real property at 300 Penry Road, Greensboro, NC (the "Premises").[5] The Premises, which consist of a warehouse (not a retail store), are identified in the Lease as Kmart lease #8288. Subsequently, Sears changed the location number in its internal records, and currently refers to the property as #30961.

7. Kmart has sub-leased the Premises to a subtenant, National Distribution Centers, LLC ("NDC") that uses the Premises for the operation of general office and warehousing; storage and distribution; third-party logistics; outside storage of trailers; and related and other uses permitted without a variance under the local zoning ordinance.[6]

8. Within the Debtors' Cure Notice, on its Exhibit B-1 [Cure Costs Schedule – Additional Leases], the Lease is among the leases listed. It is identified as store no. 30961. The cure amount for the Lease is set forth as $ -- .

9. Although the Cure Notice, as filed with the Court, did not include Adequate Assurance Information for the Buyer, that information was separately emailed to Greensboro's counsel, in the form of a confidential letter from the Successful Bidder, Transform Holdco LLC, c/o ESL Investments, Inc., addressed to the Counterparties to the Proposed Assumed Contracts,.

10. The Adequate Assurance letter from Transform Holdco provides general information

---

[5] The Debtors' Cure Notice erroneously refers to the lease counter-party as "Brentwood Holdings (Benetti)" rather than Greensboro.

[6] NDC has, separately, filed an Objection to the Cure Notice, docketed as ECF No. 1864 (the "NDC Cure Objection").

10726203/3

about financial capacity, without disclosing the extent of the claims that would need to be satisfied from those funds. The information provided of future performance with respect to the Lease and in particular, the Buyer's ability to perform the repair obligations with respect to the roof, is insufficient to provide adequate assurance of future performance.

11. The Lease between Greensboro and Kmart is "triple-net." Among other things, it requires Kmart to pay for any necessary repairs to the roof. Section 8 of the Lease provides as follows:

> "8. <u>Maintenance and Repair</u>. <u>Lessee at its expense will keep the Leased Property</u> and all roadways, sidewalks and curbs appurtenant thereto and under Lessee's control <u>in good order and repair</u> (ordinary wear and tear excepted), <u>and</u> subject to the provisions of Section 17.3(b), with reasonable promptness, <u>make all necessary and appropriate repairs thereto of every kind and nature, whether interior or exterior, structural or non-structural</u>, ordinary or extraordinary, foreseen or unforeseen. All repairs shall, to the extent possible, be at least equivalent in quality to the original work. Lessee will not take or omit to take any action the taking or omission of which might impair the value or the usefulness of the Leased Property or any part thereof or commit any waste of the Leased Property or any part thereof." (Emphasis added.)

12. NDC asserts that the roof of the Premises is in substantial disrepair and that pre-petition, Kmart was notified by NDC of substantial damage to the roof. NDC has asserted that estimates of the cost to repair or replace the roof range from $6.2 million to $9.4 million. *See* NDC Cure Objection, ¶7.

13. To date, Kmart has not undertaken the necessary roof repair or set aside the funds needed to pay for it.

### OBJECTIONS

**A.    To Assume and Assign the Lease. the Debtors Must Cure All Defaults**

14. In order to assume and assign a lease, a chapter 11 debtor must promptly cure all "defaults" – *i.e.*, all the monetary obligations under the lease as to which it is out of compliance. *See* 11 U.S.C. § 365(b)(1); *In Re Big M, Inc.*, 2014 WL 5822655, at *2 (Bankr. D.N.J. Nov. 6, 2014)

(because Debtor's obligation to pay rent, tax, and CAM charges arose under the Lease, the landlord's right to these amounts was "clearly covered" as a claim for "additional cure or other monetary obligations with respect to such unexpired lease or executory contract"); *In re HNRC Dissolution Co.,* No. 02–14261, 2006 WL 3883326 at *3 (Bankr.E.D.Ky. Mar. 1, 2006) ("A purported administrative expense claim may be subsumed in a cure claim . . . where. . . the administrative expense claim is for amounts due under the contract at issue, i.e., the Lease.").

15. Greensboro has not declared an "Event of Default" pursuant to Article XIX of the Lease. However, Debtor Kmart has been placed on notice by its sublessee NDC that a costly repair of the roof will be needed. Under the Lease, Kmart or the assignee, as the lessee, bears full responsibility to pay for the roof repair required to maintain the Premises in good condition. As such, the Debtors need to provide for a "cure" of the roof's defective condition.

16. Prior to any assignment of the Lease, the Debtors need to cure the defective roof themselves or provide in any order entered that the roof repair identified by NDC shall be an obligation of any assignee of the Lease.

17. The necessity to accomplish the cure in advance of the assignment is especially critical because, under the Debtors' proposed form of order approving the sale of their Global Assets to the Successful Bidder, the Lease (and other leases) would be assigned free and clear of all obligations that precede the Designation Assignment Date.

18. To the extent that the Debtors do not themselves complete the required roof repair, they must set aside the funds for the roof repair to be completed or make other arrangements acceptable to Greensboro. *See, e.g.*, *In re The Great Atlantic & Pacific Tea Co., Inc.*, No. 10-24549-RDD, 2011 WL 6014589 at ¶ "F" (Bankr. S.D.N.Y. Oct. 11, 2011) (in its Order approving the sale of certain Superfresh Stores and the assumption and assignment of certain unexpired leases in

connection therewith, the Court approved this resolution of a disputed cure amount: "Store Number 979 - Washington, D.C.: The Debtors shall reserve $145,000 for costs related to the replacement and/or repair of the roof at the store number 979.").[7]

### B. The Debtors Cannot Assume and Assign the Lease Without Preserving the Lessee's "Triple Net" Obligations under the Lease

19. It is a "well settled rule of law that if a debtor elects to assume an executory contract he must assume all of its benefits and obligations. A debtor cannot pick and choose those parts he deems desirable and reject the unwanted portions." *In re Gardinier, Inc*., 50 B.R. 491, 493 (Bankr. M.D. Fla. 1985), subsequently aff'd, 831 F.2d 974 (11th Cir. 1987).

20. The Debtors' proposed order approving the Global Asset Sale Transaction indicates that the Debtors are seeking to transfer any assumed leases free and clear of liens, claims and encumbrances as of the date of the assignment.

21. Greensboro objects to any assumption and assignment of the Lease, free and clear of the obligations to satisfy unbilled taxes, reconciliations, or unbilled charges that may have accrued under the Lease prior to its assignment, but which have not yet been billed. Similarly, Greensboro objects to any assumption and assignment of the Lease "free and clear" of the continuing obligation of the lessee to maintain and repair the Premises, including without limitation repair of the roof, regardless of whether any deterioration of or damage to the Premises arose before or after the date of the Lease assignment.

22. Debtor Kmart continues to be responsible for all such unbilled charges as they come due under the Lease, and the Debtor or the Successful Bidder must continue to satisfy all charges

---

[7] In the absence of an assumption and assignment of the Lease, the Debtors would still be responsible for paying for the roof repair, as necessary for the continued functioning of the warehouse. *See, e.g., In re Fleming Companies, Inc*., 2006 WL 2320974, at *8 (Bankr. D. Del. Aug. 9, 2006) (allowing administrative claim for cost of roof repair to operating grocery store).

6

due under the Lease, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Similarly, the Debtor or the Successful Bidder for the Lease will remain financially responsible for damage to the Premises that may currently exist, but only becomes known after the assumption and assignment of the Lease.

23. Any assumption and assignment of the Lease cannot cut off Greensboro's right to recover unbilled charges that have accrued, or are accruing, under the Lease. The proposed Sale Order, as written, could be used to undermine Greensboro's continued right to require the lessee to pay for these legitimate lease charges.

24. Greensboro objects to any assignment that would absolve the Successful Bidder of its ongoing obligation under the Lease to perform all necessary repairs to the structure of the Premises, including the roof. Any assignment of the Lease to the Successful Bidder must not negate that provision of the Lease.

25. Any order approving the sale and assignment should make clear that such charges and obligations will survive the assumption and assignment of the Lease.

26. Further, the Debtors are not entitled to the benefits and protections of Section 365(k), releasing the estate from any liability for post-assignment breaches of lease, where Debtors do not assume and assign the lease *cum-onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). Where an agreement between a debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* At 81.

C. **The Successful Bidder's Information on Adequate Assurance of Future Performance Must Reflect Its Specific Ability to Perform the Roof Repair**

27. In the event that the Debtors do not themselves perform the roof repair before the

assumption and assignment, and are not otherwise compelled to do so, the Successful Bidder will be required to perform the roof repair if it takes assignment of the Lease.

28. The Debtors may not assume and assign the Lease unless there is adequate assurance of future performance under the Lease. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See, e.g., In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990).

29. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See e.g., In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D.N.Y. 1986) (court granted motion to assume and assign based in part on assignee's expressed willingness to devote sufficient funding to give new restaurant a strong likelihood of succeeding).

30. The Adequate Assurance letter provided by Transform Holdco fails to provide the necessary assurance. Transform Holdco is a newly-formed entity, with no prior history of how it has paid landlords. The Adequate Assurance letter did not include a financial statement. Rather, it described the scope of loans that it will be receiving to complete the purchase of the assets. That information fails to assure Greensboro that the warehouse roof will be repaired. *Cf. In re Resource Technology Corp.*, 2008 WL 4876846, at *4 (N.D. Ill. Nov. 7, 2008), *aff'd,* 624 F.3d 376 (7th Cir. 2010) (bankruptcy court's determination that proposed assignee of several landfill contracts of the Debtor's "had failed to provide adequate assurance of its future performance" of those contracts "was not clearly erroneous").

31. To receive assignment of the Lease, the Successful Bidder must be required to establish specifically that it is prepared to pay for the substantial roof repair on the Premises.

8

32. To the extent that the Debtors do not themselves set aside the funds for the roof repair to be completed, those funds should be set aside by the Successful Bidder. *Cf. In re The Great Atlantic & Pacific Tea Co., Inc.*, 2011 WL 6014589, *supra*.

### D. The Lease With Greensboro Must Be Assumed Before, or Contemporaneously With, an Assumption of the Sublease with NDC

33. If the Successful Bidder decides to assume the NDC sublease of the Premises, the Debtors must first, or contemporaneously, assume the Lease with Greensboro. *See generally, In re The Great Atlantic & Pacific Tea Company, Inc.*, 544 B.R. 43, 56 (Bankr. S.D.N.Y. 2016).

34. To the extent that the Debtors seek to assume and assign the sublease without at the same time assuming the Lease, Greensboro objects.

### RESERVATION OF RIGHTS

35. Greensboro reserves all rights: (i) to raise additional objections in connection with the sale and any assumption and assignment of the Lease, if the Lease is in fact designated for assumption and assignment; and (ii) to raise further objections to an assignment of the Lease to the Successful Bidder upon receipt of its additional adequate assurance of future performance information.

36. Greensboro further reserves its right to supplement this cure notice Objection, in the event it acquires new or additional information pertinent to obligations of Kmart under the Lease and/or learns of new charges for which Kmart as lessee is responsible.

### JOINDER

37. To the extent not inconsistent with this Objection, Greensboro joins in the objections raised by other landlords against the initial cure notice and supplemental Cure Notice.

10726203/3

## **CONCLUSION**

**WHEREFORE,** Greensboro respectfully requests that the Court deny approval of the Global Sale Transaction to the extent that the Debtors intend to assume and assign the Lease to the Successful Bidder (A) without (i) expressly providing for, and setting aside funds for, the repair of the roof of the Premises or providing for other accommodation acceptable to Greensboro; (ii) providing expressly that the assignment of the Lease will not be "free and clear" of any of the "triple net" responsibilities of the lessee thereunder including, without limitation, the assignee's obligation to repair the roof with respect to any damage to the roof, irrespective of whether the damage occurred pre- or post-assignment; and (iii) providing adequate assurance that the Successful Bidder will perform the ongoing obligations to Greensboro under the Lease; and (B) granting such further relief as the Court deems just and proper.

Dated:  January 31, 2019                                                          **MORRIS JAMES LLP**

By: /s/ *Stephen M. Miller*
Stephen M. Miller (*Admitted Pro Hac Vice*)
Douglas N. Candeub
500 Delaware Ave., Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email:  smiller@morrisjames.com

*Attorneys for Greensboro Lease Management, L.L.C., through its Liquidating Trustee, John H. Newcomer, Jr.*