RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com
*Counsel for Manlaw Investment Company, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
In re:                                          :    Chapter 11
                                                :
SEARS HOLDINGS CORPORATION, *et al.*,[1]        :    Case No.: 18-23538 (RDD)
                                                :
          Debtors.                              :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OBJECTION OF MANLAW INVESTMENT COMPANY, LTD.
TO SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Manlaw Investment Company, Ltd. ("Manlaw"), by and through its undersigned counsel, submits this objection and reservation of rights (the "Objection") to the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sales Transaction* (the "Supplemental Cure Notice") [ECF No. 1774]. In support of this Objection, Manlaw respectfully represents as follows:

## BACKGROUND

1.  On October 15, 2018, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**The Lease**

2.  Manlaw is the landlord under that certain Lease dated as of August 9, 1967 (as amended, the "Lease") between Manlaw and Kmart Corporation (the "Debtor"), as tenant, for the non-residential real property located at 17840 Bagley Road, Middleburg Heights, Ohio, and known as Kmart Store No. 4257 (the "Premises"). The Premises contains a 93,333 square feet Big Kmart retail store operated by the Debtor, which adjoins a smaller sports and recreation outfitter retail store.

3.  In addition to the Debtor's obligation to pay monthly rent, the Lease provides that the Debtor shall pay to Manlaw, as additional rent, (i) the Debtor's annual fixed common area maintenance charges, payable in monthly installments; (ii) the Debtor's *pro rata* share of annual property insurance premiums, payable in quarterly installments beginning February 1st of each year; and (iii) the Debtor's *pro rata* share of annual real estate taxes, payable in arrears on a bi-annual basis.

4.  The Lease further provides that the Debtor is responsible for the nonstructural interior portions of the Premises, including, but not limited to, plumbing and HVAC systems.

2

5. On or about January 11, 2019, the Debtor ceased its operations at the Premises and closed Kmart Store No. 4257.

6. By notice dated January 21, 2019, the Debtor exercised its right to extend the Lease for an additional term of three years, commencing February 1, 2020, through January 31, 2023.

**Recent Damage Caused to the Premises**

7. Approximately ten days following the Debtor's cessation of its operations at the Premises, on the evening of January 22, 2019, Manlaw received a call from the tenant adjoining the Premises advising that water was pouring out from the Premises. The fire department was called to the Premises and confirmed to Manlaw that a water leak from a burst pipe resulted in flooding, leaving the entire floor of the 93,000 square foot Premises submerged in water.

8. Manlaw immediately contacted the Debtor and its counsel upon learning that the incident had occurred.

9. Despite initial communications to the contrary, the Debtor advised Manlaw that it will not clean up or restore the Premises. As a result, Manlaw has engaged vendors to conduct the substantial clean up and restoration efforts, at significant cost. Manlaw has had to take extensive and costly measures to stabilize the building in order to prevent further deterioration of the Premises, and to minimize the risk of a similar incident occurring again. By way of example of the extent of the damage the building has sustained, over a quarter of all of the ceiling tiles needed to be removed. In the meantime, as a result of the incident, the Premises does not have an operating boiler. Accordingly, Manlaw has been forced to provide large mobile heaters to heat the Premises, because the Debtor has failed to do so.

**The Supplemental Cure Notice**

10. On January 18, 2019, in connection with a sale transaction between the Debtors and Transform Holdco, LLC (the "Buyer") pursuant to an Asset Purchase Agreement dated January

3

17, 2018 (the "APA"), the Debtors filed a *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sales Transaction* (the "Initial Cure Notice") [ECF No. 1731]. The Lease was not included in the Initial Cure Notice.

11. The Debtors filed the Supplemental Cure Notice on January 23, 2019. The Lease is listed on Exhibit B-1 to the Supplemental Cure Notice, together with a scheduled cure amount of $0.

**OBJECTION**

12. Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). It is well-settled that, when a debtor elects to assume an executory contract or lease under section 365 of the Bankruptcy Code, it assumes the contract or lease *cum onere*, meaning that the debtor must assume all of the benefits, burdens and obligations attendant thereto. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-21 (1984); *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 24 (2d Cir. 1996). Section 365(b) is designed to ensure that the parties receive the benefit bargained for if a lease or a contract is assumed. *In re Ionosphere Clubs, Inc.* 85 F.3d 992, 999 (2d Cir. 1996).

13. If there has been a default in an executory contract or unexpired lease, the debtor may not assume such contract or lease unless, at the time of assumption, the debtor: (i) cures, or provides adequate assurance that the debtor will cure, such default, (ii) compensates, or provides adequate assurance of prompt compensation, for any actual pecuniary loss resulting from such default, and (iii) provides adequate assurance of future performance under such contract or lease. 11 U.S.C. § 365(b). The debtor must cure all defaults whether such defaults occurred pre- or post-petition. *See In re Genuity, Inc.*, 323 B.R. 79, 84 (Bankr. S.D.N.Y. 2005); *In re Network Access Solutions*, *Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005).

14. In addition, pursuant to section 365(f)(2) of the Bankruptcy Code, in order to assign an executory contract or unexpired lease, a debtor must provide adequate assurance of the assignee's future performance under such executory contract or lease. 11 U.S.C. § 365(f)(2). As such, a non-debtor party to an executory contract or lease is entitled to both the cure of all defaults under such contract and the future performance of all outstanding obligations under such contract or lease (including obligations relating to claims that have accrued but are not yet in default). Any proposed assumption and assignment that does not provide for the payments of all outstanding amounts owed under the contract and/or lease to be assumed clearly violates the Bankruptcy Code.

15. As movants, the Debtors bear the ultimate burden of persuasion regarding satisfaction of the requirements under section 365 of the Bankruptcy Code. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143, 147 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 308 (Bankr. E.D.N.Y. 1981).

16. Here, the Debtor may not assume and assign the Lease, because the Debtor has failed to satisfy its burden of proof to demonstrate compliance with all of the requirements for assumption and assignment under section 365 of the Bankruptcy Code.

17. First, the Debtor does not satisfy the requirement to cure all defaults under the Lease, because the proposed cure payment of $0 is incorrect. The first bi-annual real estate tax reimbursement payment for the Debtor's *pro rata* share of taxes in the amount of $49,632.18 is due. Additionally, the first quarterly payment for the Debtor's *pro rata* share of insurance premiums in the amount of $3,827.65 will be due shortly. Furthermore, certain amounts for which the Debtor is responsible under the Lease are accrued and paid for after reconciliation or adjustment. The Debtor also remains responsible for all amounts that accrue and are paid for after reconciliation and adjustment under the Lease, and must pay such charges when due.

18. If the Lease is to be assumed, it must be assumed subject to all post-petition claims, including amounts or obligations that accrue under the Lease but may not be in default as of the (currently unknown) date of assumption, which must be satisfied in the ordinary course of business following assumption as and when they become due under the Lease. Manlaw respectfully submits that any order approving assumption of the Lease should clearly state that the Debtor is assuming all of its obligations under the Lease, including those that may come due at a later date, and if the Lease is assigned, those obligations are assigned to the assignee as well. Additionally, any provision in a Court order purporting to provide a release of the Debtor from further liability based on payment of cure amounts should include language making it clear that the release does not apply to accrued but unbilled amounts that come due under the Lease after the closing date.

19. Second, Manlaw objects to the Debtor's proposed cure amount in that it does not take into consideration the passage of time between the filing of the Supplemental Cure Notice

6

and the effective date of any assumption of the Lease by the Debtor. Accordingly, any order that is entered establishing cure amounts with respect to the Lease must require that the Debtor (i) comply with all obligations under the Lease pursuant to section 365(d)(3) of the Bankruptcy Code, pending the actual assumption of the Lease; and (ii) cure any additional defaults that may occur under the Lease between the date of this Objection and the effective date of any assumption of the Lease. *See* 11 U.S.C. § 365(b)(1).

20. Third, Manlaw objects to the Debtor's proposed cure amount because it does not include amounts that may become due under the Lease after the Lease is assumed, but which may relate to the pre-assumption period (*e.g.*, real estate tax, property insurance premiums, common area maintenance reconciliations, pre-assumption property damage repair costs). Any order establishing the cure amount in connection with the assumption of the Lease must provide for the payment of all charges due and/or accrued in the ordinary course under the terms of the Lease, notwithstanding the Debtor's proposed cure amount. This is particularly relevant here, because the Debtor is responsible for the nonstructural interior portions of the Premises, including plumbing and HVAC, which appear to be the source of the recent pipe burst incident that caused extensive water damage. The Debtors should remain liable and any assignee should become liable for these obligations.

21. Moreover, not all of the facts and circumstances concerning the incident or the property damage are known at this time, as repair efforts are ongoing, but more information about these claims will likely become known in the future. Liability for Manlaw's claims in this regard must be assumed and assigned to any assignee if there is to be an assumption and assignment of the Lease. There is no indication whether the Debtor has made potential assignees of the Lease aware of the recent water damage to the Premises, the costs of cleanup, repair and remediation of

7

the damages it has caused, and if so, whether any proposed assignee intends to assume the liabilities for such damage. It is imperative that any proposed assignee of the Debtor's interest under the Lease demonstrate a willingness and ability to assume these liabilities, as required by section 365(f)(2) of the Bankruptcy Code.

22. Lastly, Manlaw objects to the assumption and assignment of the Lease to the extent that the APA would relieve the Debtor and the Buyer, as assignee of the Lease, from performing certain post-closing obligations. While the APA contains numerous references to "Cure Costs" payable with respect to Assigned Agreements, Section 2.5 of the APA, entitled "Year-End Adjustments," provides as follows:

> For the avoidance of doubt, *notwithstanding anything to the contrary set forth in this Agreement*, *neither Buyer nor any Assignee shall have any obligations in respect of any portion of any year-end (or other) adjustment* (including for royalties, rents, utilities, Taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) *arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) any previous calendar year*, and Sellers shall fully indemnify and hold harmless Buyer and the applicable Assignee with respect thereto. Buyer shall be solely responsible for any of the matters described in the preceding sentence for the portion of the calendar year in which the Closing Date occurs following each applicable Lease Assignment and all subsequent calendar years, and Buyer shall fully indemnify and hold Sellers harmless with respect thereto. *Following the applicable Lease Assignment Date, except as expressly set forth in this Agreement or the Approval Order, Sellers shall have no further liabilities or obligations with respect to each of the Acquired Leases and the other Assigned Agreements* (including obligations related to royalties rents, utilities, Taxes, insurance and common area maintenance, *regardless of when due and payable*) and *Sellers shall be released from all such obligations* and Buyer shall indemnify and hold harmless Sellers with respect thereto.

APA § 2.5 (emphasis added).

23. In addition to monthly rent and related charges, the Lease provides for both additional to be billed on an estimated basis, subject to annual reconciliation and adjustment,

including real property taxes. Since year-end adjustments for 2018 have not yet been concluded and 2019 adjustments will not be billed in the ordinary course until 2020, there is no pending default with respect to such obligations that would give rise to an obligation to cure by the Debtor or Buyer at this time. Manlaw is entitled to adequate assurance that those obligations will be paid when billed in the future. But under Section 2.5 of the APA, which purports to apply "notwithstanding anything to the contrary set forth in this Agreement," neither the Debtor nor the Buyer would have responsibility for such obligations, leaving them unsatisfied and depriving Manlaw of the benefit of its bargain, contrary to applicable law. *See*, *e.g.*, *In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.").

24. As a matter of law, however, the Debtor is not entitled to the benefits and protections of Bankruptcy Code section 365(k), releasing the estate from any liability for post-assignment breaches of a lease, where the Debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. *See American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of section 365(k). *Id.* at 81. Given the Buyer's disclaimer of liability for certain pre-assignment lease obligations, the Lease may not be assumed and assigned because adequate assurance of future performance has not been provided.

25. Assumption and assignment of the Lease is, pursuant to statute, conditioned on the Debtor's compliance with the requirements of section 365 of the Bankruptcy Code, including, but not limited to, curing both monetary and non-monetary defaults. Manlaw, therefore, submits that

the terms of both the APA and any order authorizing assumption and assignment should be modified to provide that:

(a) Until the effective date of the assumption and assignment (the "Assignment Date"), the Debtor shall remain liable for, among other things: (i) post-petition rent and other charges under the Lease; (ii) amounts accruing under the Lease that may be unbilled as of the date hereof; (iii) any regular or periodic adjustment of charges under the Lease; (iv) any non-monetary defaults; and (v) insurance, indemnification, and other contractual obligations under the Lease. *See* 11 U.S.C. § 365(b)(1).

(b) From and including the Assignment Date and thereafter, the assignee must be responsible for all Lease obligations, including year-end adjustments and other charges that may have accrued during or relate to (in whole or in part) the period prior to the Assignment Date, but be billable and/or payable after that date. The APA at Sections 2.4(b) and 2.5 appears to eliminate such Lease obligations.

(c) The APA also appears to improperly eliminate Manlaw's right to seek indemnification under the Lease by releasing the Debtor from all liability and obligation to Manlaw upon the Assignment Date, but specifically providing that the Assignee is not liable for events that occurred prior to the Assignment. Therefore, for example, in the event of a third-party claim relating to an incident that occurred at the Premises prior to the Assignment Date, it appears that neither the Debtor nor its assignee would honor the tenant's indemnification obligations.

## **RESERVATION OF RIGHTS**

26. Manlaw reserves the right to amend and/or supplement this Objection, and to review and object, if appropriate, to any proposed adequate assurance of future cure or of performance that may be provided by the Debtors in the future should they seek to assume and assign the Lease. Manlaw reserves the right to amend the cure amount as necessary to include any additional or presently unknown charges, including subsequent rent defaults, or adjustments or reconciliations that post-date the filing of this Objection.

27. Manlaw further reserves its right to assert any and all other claims against the Debtor arising out of or related to the Lease, including, without limitation, claims for (i) the costs of cleanup and any repair that may be necessary after inspection of the Premises, and costs for

providing heat to the Premises following the pipe burst incident; (ii) post-petition rent and other charges accruing under the Lease that Manlaw has yet to discover; (iii) pecuniary losses suffered by Manlaw as a result of any defaults by the Debtor under the Lease, including, but not limited to, attorney's fees and costs incurred as a result of any further defaults; and (iv) non-monetary defaults of which Manlaw does not have knowledge at this time.  Manlaw reserves all rights to object to any proposed assignee of the Lease on any basis, to the extent the Debtor seeks to assign the Lease, as well as any other rights it now has or may have under applicable law with respect to this matter, including, but not limited to, any rights under section 365 of the Bankruptcy Code.

## JOINDER

28.    To the extent not inconsistent with this Objection, Manlaw hereby joins in the objections raised by other landlords.

## CONCLUSION

WHEREFORE, Manlaw respectfully requests that the Court sustain this Objection, and that the Court grant Manlaw such other and further relief as the Court deems just and proper.

Dated:  January 31. 2019

                                        Respectfully submitted,

                                        */s/ Paul A. Rubin*
Paul A. Rubin
Hanh V. Huynh
RUBIN LLC
345 Seventh Avenue, 21st Floor
New York, NY 10001
(212) 390-8272
Fax: (212) 390-8273
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com