**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Jeffrey Rhodes (*admitted pro hac vice*)
Evan J. Zucker

*Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo Limited Partnership; Cansan Company, LLC; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Mantkin LLC; Musue LLC; Nathan Alison LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------ x

**OBJECTION AND RESERVATION OF RIGHTS OF THE KIN LANDLORDS WITH RESPECT TO INITIAL AND SUPPLEMENTAL NOTICES OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Kin Properties, Inc. ("Kin Properties") and Aleff LLC; Arcolo Limited Partnership; Cansan Company, LLC; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Mantkin LLC; Musue LLC; Nathan Alison LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC (collectively, and together with Kin Properties, the "Kin Landlords") hereby file this objection and reservation of rights (the "Objection") with respect to the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1774] (the "Supplemental Potential Cure Notice"), and to supplement the Kin Landlords' previously filed *Objection and Reservation of Rights of the Kin Landlords With Respect to Proposed Global Asset Sale Transaction and Notice of Cure Amounts and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* [ECF No. 1930] (the "Initial Objection"). In support of this Objection, the Kin Landlords respectfully state as follows:

## BACKGROUND

1. Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Kin Landlords are the owners or managing agents for the owners of numerous single-tenant (and some multi-tenant) retail and industrial properties located throughout the United States and in Canada. Pursuant to leases (each a "Kin Lease" and together the "Kin Leases"), one or more of the Debtors lease or occupy real property in which one or more of the Kin Landlords hold interests for the following locations (also identified on Exhibit A hereto) (the "Premises"):

  a. 236 N. Central Ave., Glendale, California and designated by the Debtors as Store Number 1088 (the "Glendale Property");

  b. 436 Main Street, Hackensack, New Jersey and designated by the Debtors as Store Number 1094 (the "Hackensack Property");

  c. 803 Male Road, Wind Gap, Pennsylvania and designated by the Debtors as Store Number 3949 (the "Wind Gap Property");[2]

  d. 660 West Winton Avenue, Hayward, California and designated by the Debtors as Store Number 1248 (the "Hayward Property");

  e. 1820 East Race Street, Allentown, Pennsylvania and designated by the Debtors as Store Number 8744 (the "Allentown Property");

  f. One Kresge Road, Falls Township, Morrisville/Fairless Hills, Pennsylvania and designated by the Debtors as Store Number 8275 (the "Fairless Hills Property");

  g. 1502 South Fourth Street, Allentown, Pennsylvania and designated by the Debtors as Store Number 3361 (the "South Fourth St. Property");

  h. 1600 Boudreau Road, Manteno, Illinois and designated by the Debtors as Store Number 440 (the "Manteno Property"); and

  i. 7701/7705 Broadview Road, Seven Hills, Ohio and designated by the Debtors as Store Number 3013 (the "Seven Hills Property").

The Kin Leases were, as of the Petition Date, and continue to be, unexpired leases of non-residential real property.[3]

  3. On January 18, 2019, the Debtors filed the (a) *Notice of Successful Bidder and Sale Hearing* (the "Sale Transaction Notice") [ECF No. 1730], attaching the executed asset purchase agreement between the Debtors and Transform Holdco, LLC, an affiliate of ESL Investments, Inc. ("Buyer"), dated January 17, 2019 (the "Asset Purchase Agreement") and (b) the

---

[2] The Wind Gap Property is leased by the fee owner, Gustine Wind Gap Associates II Ltd. to Kmart Corporation. The Kin Landlord for this property has a mortgage interest in the Wind Gap Property that will spring into a fee interest in the Wind Gap Property upon the maturity of its mortgage.

[3] An affiliate of the Kin Landlords, Cansan Company LLC, and Debtor Kmart Corporation are parties to a lease with respect to former store number 8274 located in Canton Michigan. Prior to the Petition Date, Kmart Corporation assigned its interest under the lease to W.F. Whelan Co. Kmart Corporation continues to remain obligated for lease obligations under the lease.

*Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "<u>Initial Potential Cure Notice</u>").

4. In the Initial Potential Cure Notice, the Debtors identified four Kin Leases as being potentially subject to assumption and assignment to the Buyer: (i) the Glendale Property (Store No. 1088), (ii) the Hackensack Property (Store No. 1094), (iii) the Wind Gap Property (Store No. 3939) and (iv) the Hayward Property (Store No. 1248). The Initial Potential Cure Notice also identified an undated settlement agreement between Kmart Corporation and Kin Properties (the "<u>Settlement Agreement</u>") as a Contract that may be designated for assumption and assignment in connection with the Global Asset Sale Transaction.

5. On January 25, 2019, the Kin Landlords filed their Initial Objection with respect to the Global Asset Sale Transaction and the Initial Potential Cure Notice, opposing, among other things, any potential assumption and assignment of the lease with respect to the Fairless Hills Property to the extent the Debtors seek to sell such asset free and clear of Fairsan Company LLC's right of first refusal under such lease. The Kin Landlords further reserved their rights, among other things, to supplement the Initial Objection, including without limitation to amend or supplement any statements of cure amounts. The Kin Landlords hereby incorporate the objections and reservations of rights set forth in the Initial Objection as if fully set forth herein.

6. On January 24, 2019, the Debtors served the Supplemental Potential Cure Notice, identifying additional contracts and leases that might be assumed and assigned in connection with the Global Asset Sale Transaction. The Supplemental Notice identifies the following additional Kin Leases as being potentially subject to assumption and assignment to the Buyer: (i) the Allentown Property (Store No. 8744), (ii) the South Fourth Street Property (Store No. 3361),

(iii) the Seven Hills Property (Store No. 3013), (iv) the Fairless Hills Property (Store No. 8275), and (v) the Manteno Property (Store No. 440).

7. The Supplemental Potential Cure Notice states that at the time of its filing, the Buyer has not designated any contracts or leases for assumption and assignment to the Buyer, and advises counterparties that "[y]ou will receive an additional notice informing you if your Contract or Lease is designed for assumption or assignment to the Buyer." *Id*. at ¶ 15. The Debtors further state in the Supplemental Potential Cure Notice that they will file a supplemental notice for any additional contracts or leases that the Buyer may designate. *Id* at ¶ 7.[4]

8. On January 28, 2019, the Kin Landlords received from the Buyer's counsel a letter, designated as confidential and proprietary, that purports to demonstrate Buyer's adequate assurance of future performance.

9. As of the date hereof, the Kin Landlords have not been served with any notice designating any of the Kin Leases for assumption and assignment.

## OBJECTION TO PROPOSED CURE AMOUNTS

10. In order to assume and assign the Kin Leases, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the respective leases. 11 U.S.C. § 365(b)(1)(A). This includes, without limitation, any and all defaults with respect to insurance requirements under the Kin Leases, real estate taxes and other charges (accrued or otherwise), amounts payable under

---

[4] Under the Asset Purchase Agreement, the Buyer may further designate certain additional Contracts and Leases at any time prior to the date that is sixty days after the Closing Date, but in no event later than May 3, 2019. Supplemental Potential Cure Notice at ¶¶ 12 and 13. Any additional contracts or leases designated by the Buyer does not change the Purchase Price (as defined in the Asset Purchase Agreement) except to the extent of any increase or decrease in assumed liabilities, *i.e.*, no additional consideration is given for any additional contract or lease. Asset Purchase Agreement at ¶¶ 2.7(b)(ii) and 2.9. Similarly, the Buyer may, at any time prior to the second Business Day prior to the Closing Date, remove Contracts and Leases identified as Initial Assigned Agreements by designating them as Excluded Assets, and such designation likewise has no effect on the Purchase Price (except to the extent of any decrease in the assumption of Assumed Liabilities). Asset Purchase Agreement at ¶¶ 2.7(b)(ii).

-5-

reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Kin Leases that remain undetermined as of the date hereof (the "Unliquidated Obligations").  Thus, for example, the Debtors are not entitled to assume the Kin Leases by merely curing arrearages in rent.  Instead, the Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Kin Leases, including, without limitation, their current and future obligations to maintain the Premises and make repairs and replacements, as a condition to the assumption and assignment of the Kin Leases.  *See* 11 U.S.C. § 365(b)(1).

11. The Kin Landlords object to the extent the Debtors seek authorization for the sale or assignment of the Kin Leases free and clear of any liquidated cure amounts or Unliquidated Obligations under the Kin Leases, including without limitation any obligations to satisfy unbilled or accrued taxes or other charges, reconciliations, or adjustments.  Any order approving the assumption and assignment of the Kin Leases should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations under each Kin Lease shall survive, and that the assignee shall take the Kin Leases subject to all of their respective terms and undertake to satisfy all monetary and all non-monetary obligations under the Kin Leases, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Kin Leases.

12. Statements of liquidated cure amounts known by the Kin Landlords with respect to the Kin Leases identified in the Initial Potential Cure Notice are attached hereto as Exhibit B,

and statements of liquidated cure amounts known by the Kin Landlords with respect to the Kin Leases identified in the Supplemental Potential Cure Notice are attached hereto as <u>Exhibit C</u>. Based on currently available information, the amounts set forth on Exhibits B and C must be paid to the Kin Landlords in connection with any proposed assumption and assignment of the Kin Leases.  Such liquidated cure amounts, however, do not include any Unliquidated Obligations or all cure amounts that may become due and owing after the date hereof and prior to the time any of the applicable Kin Leases are actually assumed and assigned, or any amounts that are currently unknown or undetermined by the Kin Landlords.  Additionally, the results of any inspections that the Kin Landlords have conducted or may conduct at the Premises may reveal additional cure amounts due.  The Kin Landlords accordingly reserve the right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for the result of any inspections, year-end adjustments which have not yet been billed or have not yet become due under the terms of the Kin Leases, amounts that become due and owing after the date hereof and prior to the time the Kin Leases are actually assumed and assigned, or amounts that the Kin Landlords become aware of after the date hereof.

### OBJECTIONS REGARDING ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

13.     In connection with any lease to be assumed and assigned, the Asset Purchase Agreement requires the Buyer to deliver adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code and that the Debtors are not obligated to assume and assign any lease in which the Buyer fails to satisfy the Bankruptcy Court as to adequate assurance of future performance.  Asset Purchase Agreement at ¶ 2.7.

14. Sections 365(f)(2)(B) and 365(b)(1) of the Bankruptcy Code require that adequate assurance of future performance by a proposed assignee be provided, whether or not there has been a default under a contract or lease. The Debtors and the Buyer have the burden of proving adequate assurance of future performance with respect to the potential assumption and assignment of the Kin Leases. *In re Res. Tech. Corp.*, 624 F.3d 376, 384 (7th Cir. 2010) ("As the party seeking to become the assignee, the Trust had the burden of proving it met the requirements of § 365(f)."); *In re C.W. Mining Co.*, No. ADV.09-2248, 2010 WL 458914, at *9 (Bankr. D. Utah Feb. 10, 2010) (stating the "[t]rustee has the burden to prove that the statutory requirements for assumption and assignment have been met under §§ 365(b)(1) and (f)(2)).

15. On January 28, 2019, the Kin Landlords received a letter from the Buyer's counsel, designated as "confidential and proprietary," setting forth limited and general financial information that purports to demonstrate adequate assurance of the Buyer's ability to continue performing the Debtors' obligations under the Kin Leases. The scant information provided to date is insufficient for the Buyer to satisfy its burden of adequate assurance of future performance because, among other things, the financial information provided is qualified in its entirety and is not accompanied by any detail or supporting information. *See also Objection of the Official Committee of Unsecured Creditors to Sale of Substantially All of the Debtors' Assets to ESL Investments, Inc.*, at 48 - 63 [ECF No. 2042] (addressing insufficiency of adequate assurance information based on, among other things, ESL's flawed and unrealistic business plan). The Kin Landlords hereby reserve all rights with respect to Buyer's obligation to provide adequate assurance of future performance, and leave the Debtors and any assignee to their burden of proving, *inter alia*, that the requirements of section 365(f)(2)(B) have been satisfied with respect to any proposed assignee, including the Buyer.

## GENERAL RESERVATION OF RIGHTS

16. The Kin Landlords expressly reserve all of their respective rights under the Kin Leases with respect to any and all obligations of the Debtors and/or any proposed assignee as tenant, including the Kin Landlords' rights to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Premises, unsatisfied liens on the Premises created by the Debtors and/or the proposed assignee and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors and/or any proposed assignee.

17. The Kin Landlords further reserve all rights to raise further objections, as necessary or appropriate under the circumstances, relating to the Global Asset Sale Transaction, and any proposed assumption and assignment of any Kin Leases, including without limitation any objections relating to the obligations of the Debtors and/or any proposed assignee to cure any defaults under the Kin Leases, and the ability of any proposed assignee to provide adequate assurance of future performance. The Kin Landlords further join in objections raised by other landlords to the extent such objections are not inconsistent herewith.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

WHEREFORE, the Kin Landlords hereby requests that any order approving the assumption and assignment of any of the Kin Leases incorporate the objections and other relief requested herein and in the Kin Landlords' Initial Objection, and that they be granted such other or further relief as is just and appropriate under the circumstances.

Dated: New York, New York
January 31, 2019

**BLANK ROME LLP**

By:  /s/ Evan J. Zucker
Evan J. Zucker
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Email: EZucker@BlankRome.com

and

Jeffrey Rhodes (*admitted pro hac vice*)
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202) 420-3150
Facsimile: (202) 420-2201
E-mail: JRhodes@BlankRome.com

*Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo Limited Partnership; Cansan Company, LLC; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Mantkin LLC; Musue LLC; Nathan Alison LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC*