IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br>(Jointly Administered)<br><br>Re: Docket No. 1730 and 2063<br><br>Objection Deadline: January 31, 2019 |

**OBJECTION OF LANDLORDS AFFILIATED WITH LBA REALTY LLC
TO DEBTORS' NOTICES OF CURE COSTS AND POTENTIAL
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE
TRANSACTION**

Landlords affiliated with LBA Realty LLC (the "LBA Landlords"), by and through their undersigned counsel, hereby submit hereby submit this objection (the "Objection") to the Debtors' Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

4844-9341-6838v.1

Contracts and Unexpired Leases In Connection With Global Sale Transaction ("Cure Notice").[2] In support of this Objection, the LBA Landlords respectfully state as follows:

## PRELIMINARY STATEMENT

The LBA Landlords are not opposed to the Debtors attempts to sell substantially all of their assets as a going concern, but have several objections to the proposed form of Order and the terms of the Asset Purchase Agreement[3] that are addressed in a separately filed sale objection [Docket No. 2063]. This Objection specifically addresses the Debtors' obligations in connection with the possible assumption and assignment of the Leases (as defined below) to: (i) pay the necessary cure amounts plus any additional pecuniary losses suffered by the Landlords; (ii) cure all defaults, including Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Leases; (iii) provide adequate assurance of future performance; and (iv) provide appropriate security as required by section 365(l) of the Bankruptcy Code.

## BACKGROUND

1. The LBA Landlords, pursuant to written leases (each, a "Lease," and, collectively, the "Leases"),[4] are the lessors of the Debtors distribution center/warehouses listed below:

| Debtors' Store # | Landlord | Location |
| --- | --- | --- |
| 425 | 1 Imeson Park Blvd, LLC | 1 Imeson Park Boulevard Jacksonville, Florida |

---

[2] Docket No. 1774.

[3] Capitalized terms not otherwise defined herein are used in the same sense and with the same meaning as in the Cure Notice.

[4] The Leases contain confidentiality provisions. As such, the Leases are not being filed with the Court. The LBA Landlords will make the Leases available for admission into evidence, to the extent necessary, at the hearing on the Cure Notice and sale motion.

| 443 | 1055 Hanover, LLC | 1055 Hanover Street<br>Wilkes Barre, Pennsylvania[5] |
|---|---|---|
| 8720 | 2065 George Street, LLC | 2065 George Street<br>Melrose Park, Illinois |
| 8748 | 500 Warner Avenue, LLC and 960 Sherman Street, LLC | 960 Sherman Street<br>San Diego, California |
| 8870 | 1600 Roe Street, LLC | 1600 Roe Street<br>Dallas, Texas |
| 8808 | 500 Warner Avenue, LLC and 960 Sherman Street, LLC | 500 West Warner Avenue<br>Santa Ana, California |
| 8825 | 3825 Forsyth, LLC | 3825 Forsyth Road<br>Winter Park, Florida |

2.     All of these locations were identified in Schedule 1.1(o) to the Asset Purchase Agreement as among Debtors' "Operating Leases."

3.     On October 15, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     On November 19, 2018, the Debtors sought and obtained Bankruptcy Court approval of procedures for the sale of substantially all of the Debtors' assets (the "Bidding Procedures") in accordance with the Order Approving Global Bidding Procedures and Granting Related Relief.[6]

---

[5]  In the Cure Notice, the Debtors incorrectly state that Robert K. Mericle is the landlord of this site.

[6]  Docket No. 816.

3

4844-9341-6838v.1

5.  In connection with the Bidding Procedures, the Debtors' largest prepetition secured lender, ESL Investments Inc. and its affiliates (collectively, "ESL") established Transform Holdco LLC (the "Buyer") as a vehicle to acquire substantially all of the Debtors' assets at an auction.

6.  After a two-day auction, the Buyer was ultimately declared the winning bidder on January 16, 2019, and the Notice of Successful Bidder and Sale Hearing was filed on January 18, 2019.[7]

7.  On January 23, 2019, the Debtors filed the Cure Notice, which set forth the proposed cure amount for many of the Debtors' leases and contracts. Attached as an Exhibit to the Cure Notice were the Debtors' proposed cure amounts for the Leases (collectively, the "Debtors' Proposed Cure Amounts").

## OBJECTION

### A.   THE DEBTORS' PROPOSED CURE AMOUNTS ARE INCORRECT

8.  The Landlords dispute several of the Debtors' Proposed Cure Amounts. The correct cure amounts for each of the Leases, as of January 31, 2019, are set forth below in the column titled "Landlord Cure Amount," which do not include an estimate of attorneys' fees incurred to date, discussed further below (collectively, the "Landlords' Cure Amounts"):

| Debtors' Store # | Debtors' Proposed Cure Amounts | Landlords' Cure Amount |
| --- | --- | --- |
| 425 | $32,453.99 | $88,808.65 |
| 443 | $305,032.51 | $306,706.70 |
| 8720 | $0 | $0 |
| 8748 | $0 | $37,573.40 |
| 8870 | $156.12 | $0 |

---

[7] Docket No. 1730.

4

| 8808 | $0 | $105,881.46 |
|------|-----|-------------|
| 8825 | $0 | $111,011.64 |

9. In addition to the cure amounts, the Debtors have not provided evidence of current insurance coverage complying with the terms of the Leases. Such insurance coverage must be provided as condition of assumption. Moreover, the Winter Park lease required the Debtor to repair certain damage to the premises caused by Hurricane Irma. The Debtors are in the midst of such repairs and the Buyer must be responsible for assuming the obligation to perform and complete all such work. The Landlords reserve their right to amend the cure amounts to include additional fees and expenses which continue to accrue and any other obligations that arise and/or become known to the Landlords prior to assumption or assumption and assignment of the Leases.

10. Pursuant to the Leases, the Debtors are obligated to pay regular installments of fixed monthly rent, as well as a share of common area maintenance costs, real estate taxes, and insurance. Prior to assumption of the Leases, the Debtors are required by section 365(b)(1) of the Bankruptcy Code to cure all outstanding defaults under the Leases and compensate the Landlords for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B). Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See*, *e.g.*, *In re Rachels Industries, Inc.*, 109 B.R. 797, 811-812 (Bankr. W.D. Tenn. 1990). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care Centers, Inc.* (9th Cir. BAP 1999) 234 B.R. 762, 765; *accord*, *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 48 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults." [emphasis in original]).

5

11. Attorneys' fees due under the Leases are compensable. *See, e.g., LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). As part of the LBA Landlords' pecuniary losses, compensable under Bankruptcy Code section 365(b)(2)(B), they are entitled to attorneys' fees in connection with the Debtors' obligation to cure all monetary defaults under the Leases, which, to date, are in excess of $20,000.00. The LBA Landlords each reserve the right to supplement this response to provide such detailed attorneys' fees information as may be requested by Debtors.

12. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the LBA Landlords suffer other pecuniary losses with respect to the Leases, the LBA Landlords hereby reserve the right to amend the Landlords' Cure Amounts to reflect such additional amounts or to account for year-end adjustments and other reconciliations, including, without limitation, adjustments for 2018 (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Leases.

B.   **THE LEASES MUST BE ASSUMED AND ASSIGNED *CUM ONERE***

13. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption or assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ."11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See*, *e.g.*, *In*

*re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003). As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 175 n.3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach."). The Debtors are not entitled to the benefits and protections of section 365(k) unless the Leases are assumed and assigned cum onere – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

14.     Accordingly, as adequate assurance of future performance under the Leases, the Buyer must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of whether such Adjustment Amounts were incurred before or after assumption and assignment of the Leases. In addition, the Buyer must be responsible for completion of all repair work for the Hurricane Irma damages to the Winter Park premises. The requirement of adequate assurance of future performance is not limited to monetary obligations. *See, e.g.*, *In re Rachels Industries, Inc.*, *supra*, 109 B.R. at 803.

15.     The Debtors must also be required to comply with all contractual obligations to indemnify and hold the LBA Landlords harmless with regard to events which occurred before assumption or assumption and assignment but which were not known to the LBA Landlords as of the date of the assumption or assumption and assignment.  This includes, but is not limited to, (i) claims for personal injury that occurred at the applicable premises, (ii) damage and destruction to the applicable premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up.  To cure possible pre-assumption and assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) the Buyer must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Buyer must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment.  Such claims for indemnity could include claims for personal injury occurring at the applicable premises where the LBA Landlords are joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

C.  **DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

16.     Bankruptcy Code section 365(f)(2)(A) expressly provides that the assumption of an unexpired lease of nonresidential real property or executory contract is a necessary precedent to an assignment.  It is well-established that Debtors bear the ultimate burden of presentation and persuasion that a unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met.  *In re Rachels Industries, Inc., supra,* 109 B.R. at 802; *In re Memphis-Fridays*

*Associates,* 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).

17. Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –
>
> A. cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B. compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or Lease for any pecuniary loss to such party from such default; and
>
> C. provides adequate assurance of future performance under such contract or lease.

18. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord, In re Valley View Shopping Center, L.P.,* 260 B.R. 10, 25 (Bankr. D. Kansas 2001).

19. Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc., supra*, 234 B.R. at 370.

20. While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each

9

case." *In re Natco Industries, Inc.,* 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.,* at 441. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-149 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980).

21. The initial burden of presentation as to adequate assurance falls upon the Debtors. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest, supra,* 868 F.2d at 1080.

22. Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g., Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.,* 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986).

23. The Debtors have not satisfied their burden with respect to adequate assurance of future performance, as required by Bankruptcy Code section 365(b)(1)(C), in connection with the proposed assignment of the Leases to Buyer. While Buyer has, to date, proffered limited adequate assurance information on a "confidential and proprietary" basis, as has been argued by the Official

10

Committee of Unsecured Creditors [Docket Nos. 640 and 2042], the Buyer has not provided a viable "go forward" business plan for its planned 425 store footprint (although this store count may vary due to Buyer's lease designation rights structure). There is no clear plan to reduce existing selling, general and administrative expenses to provide for a return to profitability of Debtors' business (which Debtors have not enjoyed since 2012). Buyer has not publicly proposed any changes in the Debtors' management team, the very same management that led the Debtors into Chapter 11. Perhaps, most significantly, as made clear by the publicly filed Schedule 13D of Sears Holdings Corporation, filed January 17, 2019 with the Securities and Exchange Commission, Buyer has limited its commitment to "provide salary continuation, substantially comparable benefits and [a] prepetition severance program" for approximately 45,000 employees *to only February 1, 2020, the end of Debtors' current fiscal year*. This limited funding commitment to "go forward" employee obligations undermines any proffer of adequate assurance of *future* performance, suggesting the need for further financial restructuring of the business in the near future.

24. Accordingly, the Debtors have, to date, failed to demonstrate adequate assurance of future performance necessary to assume and assign its leases with the LBA Landlords to Buyer.

D. **THE LBA LANDLORDS ARE ENTITLED TO ADDITIONAL SECURITY PURSUANT TO BANKRUPTCY CODE SECTION 365(l)**

25. Bankruptcy Code section 365(l) provides as follows:

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

26. In the ordinary course of its business, the LBA Landlords and their affiliates require security deposits, guaranties, and other credit enhancements when leasing (or assessing a proposed

11

assignment of a lease) to certain companies based on their financial information and history. For example, because of the Debtors' financial condition at the time the Leases were executed, each of the LBA Landlords' required the Debtors to prepay a certain amount of base rent due under the Leases. The amount of prepaid rent varied from 7 to 18 months depending on the Lease and was to be applied to specific future monthly base rent due during the terms of each Lease. Much of the prepaid rent has already been applied in accordance with the express terms of the Leases and the remaining prepaid rent is reducing on a monthly basis postpetition. A chart showing the original amount of prepaid rent for each Lease (excluding Sherman Street and Warner Avenue as such leases expire by their terms in June of 2019) and the prepaid rent remaining for each Lease follows:

| Debtors' Store # | Original Amount of Prepaid Rent | Unapplied Prepaid Rent Remaining |
| --- | --- | --- |
| 425 | $2,385,798.90 | $1,798,163.70 |
| 443 | $3,720,035.10 | $2,803,770.30 |
| 8720 | $795,736.92 | $599,742.60 |
| 8870 | $2,311,396.50 | $0 |
| 8825 | $524,876.76 | $524,876.76 |

27. As set forth above in connection with the adequate assurance objection, Buyer has only provided limited financial information and has not provided a viable plan for its go forward stores. Given Buyer's financial condition, the LBA Landlords would require credit enhancements at least equal to those provided by the Debtors in connection with the original Lease transactions. Here, no security or credit enhancement has been proposed. If the proposed assumption and assignment of the Debtors' Leases with the LBA Landlords to Buyer is approved, the LBA

4844-9341-6838v.1

Landlords are entitled to additional security equal to the original aggregate amount of prepaid rent. As a result, in accordance with section 365(l), Buyer should be required to restore all prepaid rent (other than for the Sherman Street and Warner Avenue Leases) to the full original amount.

**E.    JOINDER**

28.    To the extent not inconsistent with the foregoing, the LBA Landlords join in the objections of Debtors' other landlords to the proposed Global Sale Transaction, including, without limitation, Docket No. 2063, as well as the adequate assurance of future performance objections raised by the Official Committee of Unsecured Creditors [*see* Docket No. 2042 at pp. 59-63].

WHEREFORE, the LBA Landlords request that the Court deny approval of the Global Assets Sale Transaction unless: (i) all defaults under the Leases are cured; (ii) the LBA Landlords are compensated for all damages they suffered including attorneys' fees; (iii) the Buyer provides adequate assurance of its ability to perform under the Leases; and (iv) the Court grants such other and further relief as is just and proper.

4844-9341-6838v.1

Dated: January 31, 2019                            KELLEY DRYE & WARREN LLP

                                             By: /s/ *Robert L. LeHane*
                                                Robert L. LeHane
                                                Maeghan J. McLoughlin
                                                101 Park Avenue
                                                New York, New York 10178
                                                Telephone: (212) 808-7800
                                                Facsimile:  (212) 808-7897
                                                Email: rlehane@kelleydrye.com
                                                                      mmcloughlin@kelleydrye.com


ALLEN MATKINS LECK GAMBLE MALLORY
& NATSIS LLP
Ivan M. Gold  (CA Bar No. 121486)
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111
Tel:  (415) 837-1515
Fax:  (415) 837-1516
Email:  igold@allenmatkins.com

*Attorneys for the LBA Realty Landlords*

4844-9341-6838v.1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the foregoing instrument has been served via electronic mail and/or first class mail, postage pre-paid on this 31st day of January, 2019 upon the parties listed below and electronically via ECF notification upon all parties requesting service via ECF notification:

Sears Holdings Management Corporation
Attn: Rob Riecker (rob.riechker@searshc.com)
Attn: Luke Valentino (luke.valentino@searshc.com)
Attn: Mohsin Meghji (mmeghji@miiipartners.com)
Attn: General Counsel (counsel@searshc.com)
3333 Beverly Road
Hoffman Estates, IL 60179

Weil, Gotshal & Manges LLP
Attn: Ray C. Schrock (ray.schrock@weil.com)
Attn: Jacqueline Marcus (jacqueline.marcus@weil.com)
Attn: Garret A. Fail (garrett.fail@weil.com)
Attn: Sunny Singh (sunny.singh@weil.com)
767 Fifth Avenue
New York, NY 10153

Lazard Fréres & Co., LLC
Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)
30 Rockefeller Plaza
New York, NY 10112

Bank of America, N.A.
c/o Skadden, Arps, Slate, Meagher & Flom LLP
Attn: Paul D. Leake (Paul.Leake@skadden.com)
Attn: Shana A. Elberg (Shana.Elberg@skadden.com)
Attn: George R. Howard (George.Howard@skadden.com)
4 Times Square
New York, NY 10036

Bank of America, N.A.
c/o Berkeley Research Group, LLC
2200 Powell Street, Suite 1200
Emeryville, CA 94608

Wells Fargo Bank, National Association
c/o Choate, Hall & Stewart LLP
Attn: Kevin J. Simard (ksimard@choate.com)
Attn: Jonathan D. Marshall (jmarshall@choate.com)
Two International Place
Boston, MA 02110

4844-9341-6838v.1

Akin Gump Strauss Hauer & Feld LLP
Attn: Philip C. Dublin (pdublin@akingump.com)
Attn: Ira S. Dizengoff (idizengoff@akingump.com)
Attn: Abid Qureshi (aqureshi@akingump.com)
Attn: Sara L. Brauner (sbrauner@akingump.com)
One Bryant Park
New York, NY 10036

Transform Holdco LLC
c/o ESL Partners, Inc.
Attn: Kunal S. Kamlani (kunal@eslinvest.com)
Attn: Harold Talisman (harold@eslinvest.com)
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154

Cleary Gottlieb Steen & Hamilton LLP
Attn: Christopher E. Austin (caustin@cgsh.com)
Attn: Benet J. O'Reilly (boreilly@cgsh.com)
Attn: Sean A. O'Neal (soneal@cgsh.com)
One Liberty Plaza
New York, NY 10006

Office of the United States Trustee
Attn: Paul Schwartzberg
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014


*/s/ Maeghan J. McLoughlin*
Maeghan J. McLoughlin

16