GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212.813.8800
F: 212.355.3333
Michael H. Goldstein *(pro hac vice pending)*
Barry Z. Bazian
mgoldstein@goodwinlaw.com
bbazian@goodwinlaw.com
*Counsel to Urban Edge Properties LP
and its subsidiaries*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**SEARS HOLDINGS CORPORATION,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**OBJECTION OF URBAN EDGE PROPERTIES LP TO
NOTICE AND SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

ACTIVE/98242928.7

Urban Edge Properties LP ("Urban Edge"), on behalf of UE Bruckner Plaza LLC ("UE Bruckner"), UE Montehiedra Acquisition LP ("UE Montehiedra"), Urban Edge Caguas LP ("UE Las Catalinas"), and UE 839 New York Avenue LLC ("UE Huntington") (collectively, the "UE Landlords"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "Initial Cure Notice") and the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1774] (the "Supplemental Cure Notice" and together with the Initial Cure Notice, the "Cure Notices"). In support of this Objection, Urban Edge submits the declaration of Mei Cheng, who manages the accounts receivable owing to the UE Landlords, attached hereto as Exhibit A (the "Cheng Declaration"), and the Declaration of Artem Skorostensky, an associate of Goodwin Procter LLP, attached hereto as Exhibit B (the "Skorostensky Declaration"), and states as follows:

## BACKGROUND

1. Urban Edge and certain of its affiliates directly or indirectly own UE Bruckner, UE Montehiedra, UE Las Catalinas and UE Huntington.

2. UE Bruckner, as landlord, and Kmart Corporation, as tenant, are parties to that certain lease dated July 2, 1982 (as amended from time to time, the "Bruckner Lease"), covering certain premises commonly known as Bruckner Commons, 1998 Bruckner Blvd., Bronx, NY 10473, which premises the Debtors have designated as Store # 9420. Kmart Corporation became the lessee under the Bruckner Lease by way of that certain Assignment and Assumption Agreement dated March 17, 1999.

2

3.     UE Montehiedra, as landlord, and Kmart Corporation, as tenant, are parties to that certain lease executed by the predecessor landlord on April 28, 1997 and by Kmart Corporation on July 8, 1997 (as amended from time to time, the "Montehiedra Lease"), covering certain premises located in The Outlets at Montehiedra (also known as the Montehiedra Town Center) in San Juan, Puerto Rico, which premises the Debtors have designated as Store # 4844.

4.     UE Las Catalinas, as landlord, and Kmart Corporation, as tenant, are parties to that certain lease dated October 29, 1998 (as amended from time to time, the "Las Catalinas Lease"), covering certain premises located in the Las Catalinas Shopping Center in Caguas, Puerto Rico, which premises the Debtors have designated as Store # 4858.

5.     UE Huntington, as landlord, and Kmart Corporation, as tenant, are parties to that certain First Amended and Restated Lease entered into as of September 9, 1999 but as of September 9, 1998 (as amended from time to time, the "Huntington Lease" and together with the Bruckner Lease, the Montehiedra Lease and the Las Catalinas Lease, the "Leases" and the premises that are subject to such Leases, the "Kmart Premises"),[2] covering certain premises commonly known as Huntington Commons, 839 New York Avenue, Huntington, NY 11743, which premises the Debtors have designated as Store # 9381.

6.     All of the Kmart Premises are located in "shopping centers" for purposes of 11 U.S.C. § 365(b)(3).[3]

---

[2]     Upon information and belief, the Debtors possess copies of the Leases. However, Urban Edge will provide the Debtors with copies of the Leases upon request.

[3]     Although "shopping center" is not a term defined by the Bankruptcy Code, courts making the determination of whether a group of stores constitutes a "shopping center" regularly use the criteria test set forth by the Third Circuit in *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1087-88 (3d Cir. 1990). *See, e.g., In re Ames Dep't Stores, Inc.*, 348 B.R. 91, 95 (Bankr. S.D.N.Y. 2006) (applying the *Joshua Slocum* criteria). The Kmart Premises are in "shopping centers" under the *Joshua Slocum* criteria. Each of the shopping centers in which the Kmart Premises

3

7. Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have been operating and managing their businesses as debtors-in-possession.

8. On January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* [Docket No. 1730] (the "Successful Bidder Notice"), which, among other things, announced that the Debtors determined that the offer submitted by Transform Holdco, LLC (together with any of its affiliates, the "Buyer"), established by ESL Investments, Inc., to acquire all or substantially all of the Global Assets (as defined in the Successful Bidder Notice), was the highest or best offer for the Global Assets. A copy of the asset purchase agreement between the Debtors and the Buyer (the "Asset Purchase Agreement") is attached to the Successful Bidder Notice as Exhibit B.

9. On January 18, 2019, the Debtors filed the Initial Cure Notice. Exhibit B to the Initial Cure Notice identifies (a) the Bruckner Lease with a proposed cure amount of "$ - "; and (b) the Montehiedra Lease with a proposed cure amount of $11,362. *See* Initial Cure Notice, Exhibit B, Line Nos. 265, 343.

10. On January 23, 2019, the Debtors filed the Supplemental Cure Notice. Exhibit B-1 to the Supplement Cure Notice identifies (a) the Las Catalinas Lease with a

---

are located contain a mix of many other retailers—many of which are engaged in the commercial retail distribution of goods—each of which are subject to separate leases with a single landlord (i.e., the applicable UE Landlord). Each of the shopping centers were developed as shopping centers, have common parking areas and have fixed hours during which all or substantially all of the stores are open. Moreover, the Leases at issue here, as well as certain other leases in the shopping centers, contain restrictive use provisions and, except for the Huntington Lease, contain percentage rent provisions. In addition, all tenants in the shopping centers are required, pursuant to their leases, to pay a portion of the costs of trash removal and other maintenance. *See* Cheng Declaration.

4

proposed cure amount of "$ - "; and (b) the Huntington Lease with a proposed cure amount of $116,068.79. *See* Supplemental Cure Notice, Exhibit B-1, Line Nos. 250, 427.

11. As detailed below, Urban Edge objects to the cure amounts listed in the Cure Notices, as the amounts set forth therein are incorrect in numerous material respects.

## **OBJECTION**

12. Urban Edge objects to the assumption and assignment of the Leases on two grounds. First, with respect to certain of the Leases, the proposed cure amounts set forth in the Cure Notices understate the actual amounts necessary to cure all defaults under such Leases, and with respect to all Leases, the cure must explicitly include (a) the payment of all pre-petition and post-petition known and liquidated amounts (the "Known Obligations") that are due as of the date of such assumption, for which the Debtors and the Buyer (or, if the Buyer is not the assignee, any other proposed assignee) should each be jointly and severally liable; and (b) an assumption by the Buyer or any other proposed assignee of all Undetermined Obligations (as defined below), regardless of when such obligations accrued or arose.

13. Second, Urban Edge objects to assumption and assignment of the Leases to the Buyer or any other proposed assignee due to the failure to provide adequate assurance of future performance under the Leases as required by sections 365(b)(3) and 365(f)(2) of the Bankruptcy Code.

**A. Cure Objection**

14. In order to assume and assign the Leases, the Debtors must cure all defaults thereunder. *See* 11 U.S.C. § 365(b)(1). Such cure includes all Known Obligations and Undetermined Obligations.

5

### i. The Known Obligations

15.  The total pre-petition and post-petition Known Obligations due and owing to each UE Landlord under its Lease, are as follows:

### a. Bruckner Lease

16.  The Known Obligations due and owing to UE Bruckner under the Bruckner Lease as of the Petition Date is $315,297.40, which is comprised as follows:

| Category of Obligation | Relevant Section of Lease | Amount Owing |
|---|---|---|
| Base Rent | *See* Bruckner Lease, § 4. | ($51,178.32) |
| Common Area Maintenance | *See* Bruckner Lease, § 7. | $89,920.45 |
| Real Estate Taxes | *See* Bruckner Lease, § 9. | $273,090.27 |
| Pass Through Billing[4] | | $3,465.00 |
| **Total Pre-Petition Amounts Due** | | **$315,297.40** |

17.  In addition to the above amounts, real estate taxes and other charges totaling $719,070.06 has become due after the Petition Date (through the date of this Objection), which is comprised as follows:

| Category of Obligation | Amount Owing |
|---|---|
| Common Area Maintenance (from the Petition Date through January 2019) | $22,443.43 |
| Real Estate Taxes | $696,326.63 [5] |
| Pass Through Billing | $300.00 [6] |
| **Total Post-Petition Amounts Due** | **$719,070.06** |

### b. Montehiedra Lease

18.  There are no Known Obligations due and owing to UE Montehiedra under the Montehiedra Lease as of the Petition Date. There is an existing pre-petition net credit owing to

---

[4]  Pass through billing includes New York City fire prevention fees.

[5]  Includes real estate taxes (a) in the amount of $200,713.42 for the period from the Petition Date through December 31, 2018; and (b) real estate taxes in the amount of $495,613.21 for the period of January 2019 through June 2019.

[6]  Pass through billing includes New York City violation fee.

6

ACTIVE/98242928.7

Kmart Corporation in the amount of ($28,233.82). However, UE Montehiedra is owed $6,971.44 on account of real estate taxes that have become due after the Petition Date (through the date of this Objection), which amount is comprised as follows:

| Category of Obligation | Category of Obligation | Amount Owing |
|---|---|---|
| Common Area Maintenance | *See* Montehiedra Lease, § 13. | ($334.37) |
| Real Estate Taxes | *See* Montehiedra Lease, § 4. | $8,447.50 |
| Other Credits | | ($1,141.69) |
| **Total Post-Petition Amounts Due** | | **$6,971.44** |

  c. **Las Catalinas Lease**

19. The total Known Obligations due and owing to UE Las Catalinas under the Las Catalinas Lease as of the Petition Date is $72,407.49, which is comprised as follows:

| Category of Obligation | Relevant Section of Lease | Amount Owing |
|---|---|---|
| Common Area Maintenance | *See* Las Catalinas Lease, § 13 and Maintenance Agreement[7] | ($43,377.61) |
| Real Estate Taxes | *See* Las Catalinas Lease, § 4. | $115,785.10 |
| **Total Pre-Petition Amounts Due** | | **$72,407.49** |

20. In addition to the above amounts, real estate taxes and common area maintenance charges totaling $122,399.65 have become due after the Petition Date (through the date of this Objection), which is comprised as follows:

| Category of Obligation | Amount Owing |
|---|---|
| Common Area Maintenance (from the Petition Date through January 2019) | $46,607.90 |
| Real Estate Taxes | $75,791.75 [8] |
| **Total Post-Petition Amounts Due** | **$122,399.65** |

  d. **Huntington Lease**

21. The total Known Obligations due and owing to UE Huntington under the Huntington Lease as of the Petition Date is $119,277.99, which is comprised as follows:

---

[7] The Maintenance Agreement is dated as of October 29, 1998.

[8] Such real estate taxes are for the period of January 2019 through June 2019.

7

ACTIVE/98242928.7

| **Category of Obligation** | **Relevant Section of Lease** | **Amount Owing** |
|---|---|---|
| Common Area Maintenance | *See* Huntington Lease, § 15. | ($180,917.31) |
| Real Estate Taxes | *See* Huntington Lease, § 4. | $181,371.30 |
| Capital Expenditure Charges | *See* Huntington Lease, § 15. | $118,823.99 |
| **Total Pre-Petition Amounts Due** | | **$119,277.99** |

22.    In addition to the above amounts, real estate taxes and other charges totaling $272,645.18 have become due after the Petition Date (through the date of this Objection), which is comprised as follows:

| **Category of Obligation** | **Amount Owing** |
|---|---|
| Common Area Maintenance (from the Petition Date through January 2019) | ($21,511.24) |
| Real Estate Taxes | $272,095.04 [9] |
| Capital Expenditure Charges | $22,061.39 |
| **Total Post-Petition Amounts Due** | **$272,645.18** |

### ii.    Additional Undetermined Obligations

23.    The amounts described above reflect Known Obligations as of the date of this Objection and do not include (a) monetary obligations that have accrued for periods prior to the date of this Objection but are not yet known, determined or billed, including on account of year-end adjustments and reconciliations; (b) post-petition monetary obligations that will accrue and become due after the date of this Objection, including, but not limited to, rent, taxes, and common area maintenance charges; and (c) unknown, contingent or unliquidated monetary obligations and non-monetary obligations under the Leases, including but not limited to insurance, contribution and indemnification obligations under the Leases,[10] that accrued or arose

---

[9]    Includes real estate taxes (a) in the amount of $48,997.96 for the period from the Petition Date through November 2018; and (b) real estate taxes in the amount of $223,097.08 (which amount is subject to further review and adjustment) for the period of December 2018 through May 2019.

[10]    Debtor Kmart Corporation has various indemnification obligations under the Leases. *See, e.g.*, Bruckner Lease, §§ 13(c), 13(f), 40 (containing tenant's indemnification obligations); Montehiedra Lease, §§ 26, 37 (same); Las Catalinas Lease, §§ 1(b), 26, 37 (same); Huntington Lease §§ 13, 19, 27 (same). There are pending litigations against certain of the UE Landlords (certain of which have been stayed; *see* Docket No. 1528) and there may be other claims that accrued prior to or after the Petition Date that are not known or have not yet been asserted for

8

before or after the date of this Objection (such obligations described in (a), (b) and (c) the "<u>Undetermined Obligations</u>"). The Undetermined Obligations must be paid as part of the cure on the date of assumption to the extent known as of the date of any such assumption, and to the extent they are unknown or unliquidated as of the date of assumption, such Undetermined Obligations must be assumed by the Buyer or any other proposed assignee.[11]

24. As currently proposed, pursuant to the Asset Purchase Agreement, the Buyer is only assuming "all Liabilities <u>arising on or after the Closing Date or Designation Assignment Date</u>, as applicable, relating to the payment or performance of obligations with respect to the Assigned Agreements" and is expressly not assuming "all Liabilities relating to the payment or performance of obligations <u>arising solely out of facts or circumstances in existence prior to the Closing Date or Designation Assignment Date</u>, as applicable, with respect to the Assigned Agreements". *See* Asset Purchase Agreement, §§ 2.3(b), 2.4(b) (emphasis added).

25. In addition, the Asset Purchase Agreement provides that the Buyer or other proposed assignee will not be obligated to pay for any year-end or other adjustments "for the calendar year in which the applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) any previous calendar year . . ." *See* Asset Purchase Agreement, § 2.5.

---

which Debtor Kmart Corporation is required to indemnify the UE Landlords, and are thus part of the obligations to be cured as part of any assumption of the Leases.

[11] A similar issue was raised by Simon Property Group in the *Limited Objection of Simon Property Group, L.P. to the Proposed Sale and Assumption and Assignment of Leases and Adequate Assurance of Future Performance* [Docket No. 2082] (the "<u>Simon Property Objection</u>"). To address the issue, Simon Property Group proposed language for inclusion in the proposed sale order. *See* Simon Property Objection, ¶ 13. Urban Edge agrees and hereby requests that such proposed language be included in any order approving the assumption and/or assignment of the Leases.

26. Despite the provisions in the Asset Purchase Agreement, any order approving any assumption and assignment of the Leases must, to meet the requirements of Bankruptcy Code Section 365, provide that (a) the Debtors and the Buyer (or, if the Buyer is not the assignee, any other proposed assignee) are each jointly and severally liable to pay all the pre-petition and post-petition Known Obligations described above, and (b) the Buyer or any other assignee shall assume all Undetermined Obligations under the Leases. If the Buyer or any other assignee wishes to take an assignment of the Leases, all defaults must be cured and it must take them in their entirety, with all the benefits and burdens thereunder. *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *In re New York Skyline, Inc.*, 432 B.R. 66, 76 (Bankr. S.D.N.Y. 2010) ("When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.") (quoting City *of Covington v. Covington Landing Ltd. Pship.*, 71 F.3d 1221, 1226 (6th Cir. 1995)); *In re S.E. Nichols Inc.,* 120 B.R. 745, 747 (Bankr. S.D.N.Y. 1990) ("It is well-settled that a debtor cannot assume part of an unexpired lease while rejecting another part; the debtor must assume the lease *in toto* with both the benefits and burdens intact.").

**B. Adequate Assurance Objection**

27. Urban Edge also objects to assignment of the Leases because the Debtors and the Buyer (or any other proposed assignee) have failed to provide the UE Landlords adequate assurance of future performance under the Leases as required by the Bankruptcy Code.[12]

---

[12] To the extent that the Leases are the subject of the proposed Designation Rights being sold to the Buyer and the Debtors or the Buyer propose an assignee of the Leases other than one affiliated with the Buyer, Urban Edge reserves all of its rights to further object to such other proposed assignment, including on account of adequate assurance of future performance.

ACTIVE/98242928.7

28. Bankruptcy Code Section 365 governs the assumption and assignment of unexpired leases. "In all cases the debtor must cure any defaults, compensate the lessor for any pecuniary injury, and provide 'adequate assurance of future performance.'" *In re Martin Paint Stores*, 199 B.R. 258 (Bankr. S.D.N.Y. 1996) (quoting 11 U.S.C. §§ 365(b)(1), 365(f)(2)); *see also In re RS Legacy Corp.*, 2015 Bankr. LEXIS 2206, *1 (Bankr. D. Del. June 25, 2015) (observing that to win approval of assumption and assignment of a lease, the debtor and proposed assignee must provide adequate assurance of future performance under the operative lease). Where an assumed lease is proposed to be assigned, section 365(f)(2)(B) provides that a debtor may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." While adequate assurance of future performance is not defined in the Bankruptcy Code, "courts have determined that whether adequate assurance of future performance has been provided is determined by the facts and circumstances of each case." *In re Great Atlantic & Pacific Tea Co., Inc.*, 472 B.R. 666, 674 (S.D.N.Y. 2012) (citing *In re M. Fine Lumber Co.,* 383 B.R. 565, 572 (Bankr. E.D.N.Y. 2008). At the same time, courts have noted that the "the primary focus of adequate assurance concerns the assignee's ability to fulfill the financial obligations under the lease." *Martin*, 199 B.R. at 263 (collecting cases); *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985) ("[T]he obvious purpose of this section . . . is to afford landlords with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy.").

29. Moreover, where, as is the case here, the Leases are "shopping center" leases, an additional and heightened demonstration of adequate assurance of future performance is required as set forth in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum Ltd.*, 922 F.2d

11

at 1086 ("The Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers.") (citing 11 U.S.C. § 365(b)(3)); *Great Atlantic*, 472 B.R. at 676 (observing the same); *see also In re Sun TV & Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999) ("In order to assume and assign a lease or executory contract, a debtor typically need only cure any arrearages and provide adequate assurance of future performance of the lease or contract. 11 U.S.C. § 365(b)(1). In the case of shopping center leases, however, Congress has placed additional restrictions on the right to assume and assign."). The heightened adequate assurance requirements include the following:

- the source of rent and assurance that the financial condition and opening performance of the proposed assignee and its guarantors, if any, <u>must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee</u>. *See* § 365(b)(3)(A) (emphasis added);

- that any percentage rent due under the lease will not decline substantially. *See* § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* § 365(b)(3)(D).

30. "The debtor bears the burden of showing that the requirements for assumption under § 365 have been met." *In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citing *In re Embers 86th St.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995)). And in the case of a shopping center lease, courts require that the debtor make a specific factual showing through competent evidence to determine whether the debtor has satisfied section 365(b)(3)'s heightened adequate assurance of future performance requirements. *See In re Service Merchandise*

12

*Company, Inc.*, 297 B.R. 675, 682 (Bankr. M.D. Tenn. 2002) (describing debtor's burden under section 365(b)(3)(A) of the Bankruptcy Code); *Matter of Haute Cuisine, Inc.,* 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986). As of the date of this Objection, the Debtors and the Buyer (and any other proposed assignee) have failed to provide adequate assurance of future performance under the Leases under the required standard.[13]

31. The Buyer proposes that a post-sale enterprise ("Sears NewCo") will emerge and begin operating the remaining store locations, but the specific proposed assignee of the Leases has not yet been identified.[14] Although Urban Edge is not privy to the same information as the Official Committee of Unsecured Creditors (the "Creditors' Committee") of the Debtors, Urban Edge echoes the Creditors' Committee's well-reasoned concerns put forth in the *Objection of the Official Committee of Unsecured Creditors to Sale of Substantially all of the Debtors' Assets to ESL Investments, Inc.* [Docket No. 2042] (the "UCC Objection") regarding the "promised" operational prowess of the Sears NewCo. *See* UCC Objection, ¶¶ 95-116.[15]

---

[13] The Debtors have provided Urban Edge, on a confidential basis, certain information purporting to satisfy the Debtors' adequate assurance burden as to the Buyer. To the extent that the Debtors do not make such information a part of the record in connection with any hearing on the assumption and assignment of the Leases, Urban Edge reserves the right to do so. Moreover, no information has been provided as to any other proposed assignee and, as such, Urban Edge objects to any such assignment to any other proposed assignee based upon a failure to establish adequate assurance of future performance.

[14] Indeed, section 13.6 of the Asset Purchase Agreement provides that the Buyer "shall be permitted upon prior notice to Sellers but without consent of Sellers, to assign all of any part of its rights or obligations hereunder to an Affiliate". *See* Asset Purchase Agreement, § 13.6. It is thus unclear whether the Buyer or an affiliate of the Buyer will be the assignee of the Leases. The Buyer has not provided any adequate assurance information regarding any such affiliates.

[15] As stated by the Creditors' Committee: "Here, adequate assurance of future performance is clearly lacking as neither ESL nor the Debtors have established that Buyer or Sears NewCo intends to perform, or is capable of performing, under the assumed contracts and leases after Closing. The ESL Business Plan is built on faulty and unrealistic assumptions that leave contract counterparties with no assurance that there will be sufficient free cash flow to avoid financial distress in the near future. . . . Neither the Debtors nor ESL can demonstrate that the go forward business will have the financial wherewithal necessary to satisfy the obligations under the assumed leases and contracts. Indeed, the more likely outcome will be that Sears NewCo will continue the longstanding, downward trajectory of divesting assets, cutting jobs and losing money." UCC Objection, ¶ 113.

13

32. Moreover, the Debtors and the Buyer have not identified the specific proposed assignee or provided information as to its balance sheet, business plan, or projections. Similarly, the general confidential information provided to Urban Edge regarding the Buyer is devoid of the specific information required to evaluate the adequate assurance test – e.g., detailed financial statements, detailed projections (with explanatory footnotes), and a detailed business plan.

33. Further, the limited publicly disclosed information regarding the Buyer is exclusively focused on its financing of the proposed transaction, and thus is of no relevance to the post-closing operations of the Buyer or Sears NewCo, let alone any other unidentified proposed assignee. *See, e.g.*, Sears Holdings Corp., General Statement of Acquisition of Beneficial Ownership (Form SC 13D/A, Ex.99.86) (Jan. 18, 2019) (describing generally the proposed sale to the Buyer).

34. In short, from the scant information provided, it cannot be reasonably concluded that the Buyer or any other proposed assignee has a similar credit profile as Kmart Corporation did when it became a lessee under the Leases and will be able to perform under the Leases. There is no demonstrated adequate assurance that the Buyer will not itself become a chapter 11 debtor – as the Creditors' Committee documents in the UCC Objection. Vague and speculative data falls far short of the Debtors' burden of proof that the proposed assignee has the capacity to turn around an enterprise that has experienced a near decade-long decline in highly competitive conditions, and can meet its obligations under the Leases for the remainder of their terms. *See, e.g.*, *RS Legacy*, 2015 Bankr. LEXIS 2206 at *6 (court finding unaudited financials and projections are insufficient for the proposed assignee to carry its burden to prove adequate assurance of future performance). This is especially concerning since there are no details around the Buyer's or any other assignee's capitalization or ability to turn around a business that has

14

been suffering a multi-year decline, or a demonstration that the Buyer or other assignee has a similar credit profile of Kmart Corporation when it became a lessee under the Leases. Rather, instead of proving adequate assurance of future performance, what is being requested is that the UE Landlords take a leap of faith of performance.

35. It is telling that the Debtors have not even attempted to satisfy the added adequate assurance requirement in section 365(3)(b)(A) of the Bankruptcy Code for leases located in a shopping center, such as the Leases here. That section requires proof that the Buyer or other proposed assignee is in a similar "financial condition and operating performance" as Kmart Corporation was when it became a tenant under the Leases, which occurred in 1999 with respect to the Bruckner Lease, 1997 with respect to the Montehiedra Lease, 1998 with respect to the Las Catalinas Lease and 1999 with respect to the Huntington Lease. *See, e.g.*, *Service Merchandise Company*, 297 B.R. at 682 ("In order to meet the burden under section 365(b)(3)(A), the debtor must establish that the financial condition and operating performance of [the assignee] are similar to the debtors' at the time of lease signing."); *In re Casual Male Corp.*, 120 B.R. 256 (Bankr. D. Mass. 1990) ("[T]he financial condition and operating performance of [the assignee] must be at least as strong as was the Debtors' [at the time they became the lessee under the lease]"). The Debtors have not provided such proof. When Kmart Corporation entered into the Leases it was one of the world's largest mass merchandisers that for many years ranked as this nation's second largest discount retailer and either the second or third largest general merchandise retailer. Kmart Corporation's Annual Reports Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the Fiscal years ended January 28, 1998, January 27, 1999, and January 26, 2000 are attached as Exhibits 1, 2, and 3, to the Skorostensky Declaration. In relevant part, Kmart Corporation's financial condition for the relevant years can be

15

summarized as follows:

| Fiscal Year Ended | Sales Revenue (in millions) | Net Income (in millions) | Cash and Cash Equivalents (in millions) | Shareholders' Equity (in millions)[16] |
|---|---|---|---|---|
| January 28, 1998 | $32,183 | $249 | $498 | $5,434 |
| January 27, 1999 | $33,674 | $518 | $710 | $5,979 |
| January 26, 2000 | $35,925 | $403 | $344 | $6,304 |

36.  The Debtors have ignored their burden to establish the Buyer's or other proposed assignee's financial condition and operating performance are similar to those of Kmart Corporation during the relevant years. *See Service Merchandise Company*, 297 B.R. at 682-686 (holding that a combination of assignee's projected unpledged cash flows from subleases, absolute guarantees by assignee's members with substantial assets and shareholders' equity, additional guarantees from subtenants, and extensive and successful operating history and performance of the assignee's members and other guarantors, satisfied burden under section 365(b)(3)(A) of the Bankruptcy Code). Accordingly, the Debtors have not met their burden under section 365(b)(3)(A) of the Bankruptcy Code.

37.  In addition, neither the Buyer nor any other proposed assignee has provided Urban Edge any information regarding the proposed use of the premises, which is necessary for Urban Edge to determine whether the proposed use is permissible under the Leases and whether such use would disrupt the tenant mix or balance in the shopping center. Accordingly, the

---

[16] For the fiscal year ended January 28, 1998, Shareholder Equity is comprised of the aggregate of the following Balance Sheet line items: Common Stock, Capital in Excess of Par Value, Retained Earnings, Treasury Shares, Restricted Stock and Foreign Currency Translation Adjustment. *See* Kmart Corp., Annual Report (Form 10-K), at 34 (April 14, 1998). For fiscal year ended January 27, 1999 and fiscal year ended January 26, 2000, Shareholder Equity is comprised of the aggregate of the following Balance Sheet line items: Common Stock, Capital in Excess of Par Value and Retained Earnings. *See* Kmart Corp., Annual Report (Form 10-K), at 49 (April 15, 1999); Kmart Corp., Annual Report (Form 10-K), at 29 (April 19, 2000).

ACTIVE/98242928.7

Debtors have not met their burden under section 365(b)(3)(C) and 365(b)(3)(D) of the Bankruptcy Code.

38.   Based on the foregoing, Urban Edge respectfully requests that the Court deny the proposed assignment of the Leases unless the Debtors or the Buyer (or any other proposed assignee) satisfy the burden of proof of adequate assurance of future performance under the Leases by the Buyer or other proposed assignee, as required by 365(b)(3) and 365(f)(2) of the Bankruptcy Code.

## JOINDER

39.   Urban Edge hereby joins in the objections filed by the Debtors' other landlords to the extent not inconsistent herewith. In addition, Urban Edge requests that any order approving the sale incorporate the language proposed by Simon Property Group with regard to Restrictive Covenants and Master Leases, which are set forth in paragraphs 16 and 17 of the Simon Property Objection.

## RESERVATION OF RIGHTS

40.   Urban Edge expressly reserves the right to amend, supplement, and/or modify this Objection and to file in the future additional appropriate pleadings. In addition, to the extent the Buyer designates the Leases for potential assumption and assignment to a third party, Urban Edge demands immediate notice to it and its undersigned counsel of any such designation, including the identity of any proposed assignee and its adequate assurance package, in order to evaluate the propriety of any such assignment.

*[Remainder of page intentionally left blank]*

WHEREFORE, Urban Edge respectfully requests that this Court enter an Order (1) providing that, as a condition to any assumption and assignment of the Leases, the Debtors and the Buyer (or, if the Buyer is not the assignee, any other proposed assignee) shall each be jointly and severally liable to pay all Known Obligations that are due and owing under the applicable Lease as of such assumption as detailed herein, subject to adjustment as required, and that the Buyer or other proposed assignee shall assume all Undetermined Obligations (regardless of when such obligations accrued or arose); (2) denying any assignment of the Leases to the Buyer or any other proposed assignee unless the Debtors and such assignee provide to Urban Edge adequate assurance of future performance as required by sections 365(b)(3) and 365(f)(2) of the Bankruptcy Code; and (3) granting to Urban Edge such other and further relief as is just and appropriate.

Dated:  New York, New York
        January 31, 2019

></br>
/s/ Michael H. Goldstein
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212.813.8800
F: 212.355.3333
Michael H. Goldstein *(pro hac vice pending)*
Barry Z. Bazian
mgoldstein@goodwinlaw.com
bbazian@goodwinlaw.com
*Counsel to Urban Edge Properties LP
and its subsidiaries*