FERRAIUOLI, LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Obj. Deadline: January 31, 2019 at 4:00 pm
Hearing Date: February 4, 2019 at 10:00 am

Attorneys for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**SANTA ROSA MALL'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO
DEBTORS' SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPRIED
LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

TO THE HONORABLE COURT:

Santa Rosa Mall, LLC ("Santa Rosa Mall"), by and through its undersigned counsel, hereby objects to the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "*Supplemental Notice of Cure Costs*") [Dkt. No. 1774], and in support thereof states as follows:

Factual and Procedural Background

1.     Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 15, 2018 ("Petition Date").  Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.     Sears, Roebuck de Puerto Rico, Inc. ("Sears" or "Debtor") leases retail space from Santa Rosa Mall in Bayamón, Puerto Rico ("Store No. 1915" or "Demised Premises") pursuant to a *Lease*

1

*Agreement* executed on September 22, 1965. A copy of the *Lease Agreement* is attached hereto as **Exhibit I**, and is incorporated herein by reference.

3.      In addition to the fixed rent, the *Lease Agreement* includes other monetary and non-monetary obligations typical of commercial leasing agreements, including the payment of common area maintenance fees. See, *Lease Agreement*, **Exhibit I**, at § 2.01, p. 12; § 2.03, p. 14.

4.      As part of its non-monetary obligations, the *Lease Agreement* requires Sears to "keep the Demised Premises [] in good order and repair and in such condition as may be required by law and by the terms of any insurance policies covering the Demised Premises", including repairs that are "extraordinary as well as ordinary and whether or not such repairs shall be of a structural nature []". Id. § 4.01, p. 23.

5.      Section 4.01 of the *Lease Agreement* further extends Sears' obligation for maintenance and repair, and requires that:

> [Sears] pay and discharge, and indemnify and save harmless [Santa Rosa Mall] against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable attorneys' fees, which may be imposed upon to incurred by or asserted against [Santa Rosa Mall] by reason of [] [a]ny work or thing done in, on or about the Demised Premises or any part thereof; [a]ny [] maintenance, repair or management of the Demised Premises []; [and/or] [a]ny failure on the part of [Sears] to perform or comply with any of the covenants, agreements, terms or conditions contained in [the] lease on its part to be performed or complied with.

Id. § 4.03, pp. 23-24.

6.      Section 6.01 of the *Lease Agreement further* requires that Sears "maintain at [its] sole cost and expense, for the benefit of [Santa Rosa Mall] and [Sears], insurance with respect to the Demised Premises" for risks including "windstorm". Id. § 6.01(a), p. 26. Such insurance policy "shall be secured promptly and certificates thereof shall be furnished to [Santa Rosa Mall]" and "shall contain loss payable clause to [Santa Rosa Mall] and [Sears]". Id., § 6.02(a), pp. 26-27. Renewals of the insurance policies are also subject to the foregoing. Id., 6.02(b), p. 27.

7.      In the event of damage by windstorm or any other casualty to the Demised Premises in an amount over $100,000, such as that caused by Hurricanes Irma and Maria, Section 6.03(b)(2) of the *Lease Agreement* requires Sears "**proceed with all reasonable expedition to restore or rebuild [] the building**

**so destroyed or rendered untenantable**, free from liens of any kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable []". Id., § 6.03(b)(2), p. 28 (emphasis added). Section 6.03(b)(2) activates the requirements specified in Section 5.02 of the *Lease Agreement*, which requires that Sears "furnish to [Santa Rosa Mall] a duplicate set of the working plans, sketches and specifications for the proposed work", "at its own cost and expense obtain or cause to be obtained all the insurance coverage specified in Section 3.04", and that "[a]ny alteration or addition [] be carried out in such a way as to interfere as little as is reasonably possible with the operations of the Shopping Center []". Id., § 5.02(a), (c) and (d), p. 25.

8.      Section 6.03(b)(3) of the *Lease Agreement* further mandates as follows:

> **The net sums recovered by [Santa Rosa Mall] and·[Sears] on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by [Sears] and indemnifying for <u>physical loss</u>** (as distinguished from the loss of use and occupancy. or profits), **shall by <u>deposited in a special account in the name of [Santa Rosa Mall]</u> separate and distinct from all other funds of [Santa Rosa Mall] <u>in a bank or trust company of the City of San Juan, Puerto Rico, approved by [Santa Rosa Mall] and [Sears]</u> to be applied on account of the cost of such restoration or rebuilding**, as the case may be, as the work of restoration or rebuilding progresses, and [Sears] shall pay any and all additional moneys required in such restoration or rebuilding in excess of said net sums recovered, and shall be entitled to receive any surplus, if any, remaining of said deposit after such restoration .. or rebuilding has been completed as aforesaid, provided, however, that should the aforesaid damage by fire or other casualty occur within the last three years of the initial term or any extended term this lease, [Sears] shall have the option to surrender the proceeds of any insurance to [Santa Rosa Mall] and vacate the premises.

Id., § 6.03(b)(3), pp. 28-29 (emphasis and underline added).

9.      The deposit of the insurance proceeds in a separate account is essential and Section 6.03(d) explains its importance:

> If [Sears] does not commence promptly to repair or restore the injury or destruction, or if, having commenced the repair or restoration, [Sears] does not proceed diligently to complete the same, [Santa Rosa Mall] shall be entitled (but shall be under no obligation) at any time thereafter to enter the Demised Premises and repair or restore the injury or destruction and to apply any insurance proceeds in the said special account to the payment of the cost thereof; but if the insurance proceeds are insufficient for the cost of the repair, restoration or reconstruction, [Sears] shall pay to [Santa Rosa Mall], upon demand and as additional rent as the work progresses; such amounts as shall be necessary to complete the repair, restoration or reconstruction.

Id., § 6.03(d), p. 29.

3

10.     Section 9.02 of the *Lease Agreement*, which governs the assignment of said lease, states as

follows:

> [] [Sears] shall not assign this lease in whole or in part [] without the prior written consent
> of [Santa Rosa Mall]. [] [I]t is understood that [Santa Rosa Mall] shall not consent to any
> assignment [] unless [Santa Rosa Mall] is reasonably satisfied that the prospective assignee
> [] has the standing and experience to conduct a department store business substantially
> equivalent to that specified in Section 8.1 hereof, or such other business as is commensurate
> with the objective of the Shopping Center and does not conflict with contractual obligations
> of the Landlord to other tenants in the Center.

Id., § 9.02, p. 35. In the event of assignment, the assignee:

> [S]hall execute and deliver to [Santa Rosa Mall] an agreement in writing assuming all the
> terms, covenants and conditions of the part of [Sears]to be kept and performed under this
> lease. **No assignment** [], nor the acceptance of rents or other payments from, nor any other
> dealing by [Santa Rosa Mall] with any assignee [] **shall release [Sears] from its obligation
> to pay [Santa Rosa Mall] a monthly rental equivalent to the average monthly rental
> paid by [Sears] to [Santa Rosa Mall] during the twelve months' period last preceding
> such assignment** [], but in no event shall such liability be less than the fixed rentals
> hereinabove provided to be paid from time to time during the existing term of the lease and
> any renewal thereof.

Id., § 9.03, pp. 35-36 (emphasis added).

11.     Further still, subject to the provisions outlined in Section IX above, the *Lease Agreement*

"shall insure to the benefit of and be binding upon the parties hereto and their respective successors and

assigns." Id., § 23.03, p. 49.

12.     Sears has operated Store No. 1915 at Santa Rosa Mall since 1965 until the passing of

Hurricane Maria on September 20, 2017, when it closed its doors.  The Court may take judicial notice of

the passing of Hurricane Maria, as well as its trajectory and aftermath under Fed. R. Evid. 201.[1]

13.     Store No. 1915 has been, and continues to be, the "anchor" of this property. As such, it is

the main driver of traffic for other tenants who have suffered from Store No. 1915's closure and may

exercise their right to terminate their respective leases if Sears, an assigned, or a replacement tenant does

not operate the Demised Premises soon.

14.     The thirteen-month period between the passing of Hurricane Maria and the Petition Date,

---

[1] We incorporate by reference Santa Rosa's *Motion to Compel Insurance Proceeds* [ECF No. 1240] and its *Standing
Objection to Global Asset Sale Transaction* [ECF No. 2013], as if fully transcribed herein.

4

Sears had ample time to rebuild the Demised Premises and reopen the store, however, the scope of the work completed was limited to demolition, clean up and roof replacement.

15.    After the Petition Date, the Debtor suspended all reconstruction efforts in the Demised Premises.[2]

16.    As of today, the *Lease Agreement* has not been rejected or assumed.  See Santa Rosa Mall's *Motion for Reconsideration* (Docket No. 937) and *Amended Motion for Reconsideration* (Docket No. 1189).

17.    On November 1, 2018, Sears filed a *Motion for Approval of Global Bidding Procedures* (the "*Global Bidding Procedures Motion*", Docket No. 429) in connection with a sale or disposition of certain assets of Sears and its debtor affiliates (the "*Global Bidding Procedures*").

18.    On November 16, 2018, the Court entered an *Order* (the "*Order*", Docket No. 776) granting the *Motion for Extension of Time*, thereby extending the time to assume or reject unexpired leases until May 13, 2019.

19.    On November 19, 2018, the Court entered an *Order Approving Global Bidding Procedures and Granting Related Relief* (the "*Global Bidding Procedures Order*", Docket No. 816) regarding the sale/disposition of certain assets, scheduling auctions and hearings for approval of proposed sale transactions and approving the procedures for the assumption and assignment of executory contract or unexpired non-residential lease.

20.    On November 21, 2018, Sears filed a *Notice of Filing of Global Bidding Procedures Process Letter* (the "*Process Letter*", Docket No. 862) soliciting bids for all or some of Sears' stores and related assets identified as "Go Forward Stores", either on a going concern basis or on a liquidation basis. Pursuant to the asset schedule attached thereto, Sears identified Santa Rosa Mall as a "Go Forward Store".

---

[2] Note that the Demised Property was covered by an insurance policy issued by AIG Europe Limited, under Policy No. PTNAM1701557 (the "*Insurance Policy*").  See *Certificate of Property Insurance* attached hereto as **Exhibit II**. The limit of such *Insurance Policy* is of $50,000,000. Id. Under the "Additional Remarks Schedule" of such *Certificate*, "**Santa Rosa Mall LLC … [is] included as Loss Payee** in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced location", referring to "Sears Store No. 1915 – Santa Rosa Mall, Bayamon, PR".  Id. (emphasis and underline added).

Id., p. 43, line no. 381.

21.      On December 20, 2018, Santa Rosa Mall filed a *Motion for Entry of Order for the Debtor to: (i) Disclose Status of Insurance Claim; (ii) Deposit Any Insurance Proceed into Separate Account to be Used Exclusively to Repair the Insured Demised Premises; and (iii) Alternatively, Find the Automatic Stay Inapplicable to the Insurance Proceeds* (the "*Motion to Compel Insurance Proceeds*", Docket No. 1240) for the Court to determine that the insurance proceeds are not part of the bankruptcy estate and must be exclusively applied to the restoration or rebuilding of the Demised Premises in accordance to the *Lease Agreement*.  A hearing to consider the *Motion to Compel Insurance Proceeds* is scheduled for February 14, 2018 (Docket No. 1363).

22.      On January 14, 2019, Sears commenced an Auction for the assets identified as "Go Forward Stores" in connection with the *Global Bidding Procedure* Order.  See Docket No. 816, p. 32; Docket No. 1730, p. 2, ¶ 4.

23.      On January 18, 2019, Sears filed a *Notice of Successful Bidder and Sale Hearing* (Docket No. 1730).  Attached thereto as Exhibit A (Docket No. 1730) is a copy of the *Asset Purchase Agreement* ("*Asset Purchase Agreement*") executed by and between Sears and Transform Holdco LLC (the "Buyer"), for the purchase of the *Acquired Assets*, as defined therein, on January 17, 2019.  Id. at p. 2, ¶ 4.  On January 26, 2019, Santa Rosa Mall filed a *Standing Objection to Global Asset Sale Transaction* (Docket No. 2013), objecting to the proposed $13,000,000.00 insurance proceed cap set forth in the *Asset Purchase Agreement*, which, allegedly, Sears believes it may retain under such global sale transaction.  It appears that Sears and the insurance companies have reached a global settlement among themselves for all insurance claims, thereby globally capping coverage across the board for all stores alike, including Store No. 1915, without making any disclosures to the loss payees under the policies or seeking court approval, or taking into account the damages of each individual store or the individual coverage afforded under each insurance policy. Now, Sears is attempting to retain $13,000,000.00 in insurance proceeds that should be used for the reconstruction of the Demised Premises or be deposited in escrow with the Landlord, pursuant to the Lease Agreement in the case of Santa Rosa Mall.

6

24.     Pursuant to the *Asset Purchase Agreement,* Sears shall sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered, to the Buyer or an applicable Assignee, all right, title and interest of Sears, in, to, or under all assets, properties and rights related to the business other than excluded assets (collectively, the "*Acquired Assets*") free and clear of any and all encumbrances of any kind, nature or description and any claims. See Docket No. 1730, § 2.1. p. 55.

25.     *Acquired Assets* include, *inter alia*, all real property rights and all other rights and interests of the tenant under a Lease (the "*Acquired Lease Rights*") that is assumed by Sears and assigned to the Buyer pursuant to the terms of the *Asset Purchase Agreement* (the "*Acquired Lease*"). Id. at § 1.1, p. 23. A "Lease" is defined, collectively, as the "Initial Assigned Leases," *inter alia*. Id. at § 1.1, p. 41. In turn, the *Initial Assigned Leases* are those proposed to be assigned to Buyer or assumed by Sears and assigned to Buyer (the "Potential Transferred Agreements"). Id. at § 2.7(a)-(b), p. 45-46. *Acquired Assets* is further defined as including those agreements or leases proposed to be assigned to the Buyer or assumed by Sears and assigned to the Buyer (the "*Assigned Agreements*" or the "*Initial Assigned Agreements*"). Id. at § 2.1. p. 55, and § 2.7(a)-(b), pp. 65-66.

26.     Additionally, *Acquired Assets* was defined to include:

> **any and all insurance proceeds**, warranty proceeds, condemnation awards or other compensation **in respect of loss or damage to [] any Acquired Asset** (and any right or claim of [Sears] to any such proceeds, awards or other compensation), **in each case**, to the extent **relating to a casualty occurring prior to**, on, or after **the Asset Purchase Agreement date**, and whether received prior to, on, or after the Closing Date, **in an aggregate amount not to exceed $13,000,000**.

Id. at § 2.1(q), p. 57 (emphasis and underline added).[3]

---

[3] We incorporate herein by reference our *Motion to Compel Insurance Proceeds* (Docket No. 1240) and our *Standing Objection to Global Asset Sale Transaction* (Docket No. 2013), as if fully transcribed herein. As asserted in the Standing Objection to Global Asset Sale Transaction, a loss payee under the *Insurance Policy*, Santa Rosa is entitled to the totality of the insurance proceeds for the damages of Store No. 1915 under Policy No. PTNAM1701557. See *Certificate of Property Insurance*, **Exhibit II**. The coverage limit of the *Insurance Policy* for Store No. 1915 is $50,000,000 (id.), not $13,000,000 or any lesser amount. Sears cannot cap the damages sustained by Store No. 1915 through an agreement with the Buyer especially when Santa Rosa Mall, as loss payee, has been excluded and kept in the dark of such negotiations in spite of its numerous requests to participate in the insurance negotiations and has repeatedly inquired of the status of the insurance claim since the passage of Hurricane Maria over a year ago. See Santa Rosa Mall's *Motion to Compel Insurance Proceeds* (Docket No. 1240).

7

27.    In turn, the Buyer, or an applicable Assignee, shall assume, as of the closing of the sale, transfer, assignment, conveyance and delivery of Sears' right, title and interest in, to, and under the *Acquired Assets*, and shall timely perform and discharge certain of Sears' liabilities (collectively, the "*Assumed Liabilities*") with respect to such *Acquired Assets*. Id. at § 2.3, p. 39.

28.    *Assumed Liabilities* include, *inter alia,* all liabilities of Sears or any of its subsidiaries "arising out of the ownership of the *Acquired Assets* or operation of the Business or the *Acquired Assets* on or after the Closing Date that are Related to any *Acquired Asset*", and **all amounts payable in order to cure any monetary defaults required to be cured** under section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate the assumption of the *Assigned Agreements* (the "Cure Costs") solely with respect to the *Assigned Agreements*. Id. at § 2.3(a) and (g), pp. 59 and 60, respectively (emphasis added).  This may potentially include Store No. 1915, if the Lease is assumed by the Buyer or assumed by Sears and assigned to the Buyer.

29.    Also, on January 18, 2019, Sears filed with the Court a *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transactions* (the "*Notice of Cure Costs*", Docket No. 1731).  Each of the unexpired nonresidential leases included in the Successful Bid that may be assumed and assigned by the Buyer, or its designated assignee, are set forth in Exhibit "B" thereto.  The *Notice of Cure Costs* proposed a cure amount of $30,500.00, for Santa Rosa Mall.  Id. at p. 336, line 116.

30.    On January 23, 2019, Sears filed with the Court a *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "*Supplemental Notice of Cure Costs*", Docket No. 1774).  In Exhibit "B-2" thereto, Sears included revised cure amounts for leases included in the *Notice of Cure Costs*.  The *Supplemental Notice of Cure Costs* amended the proposed cure amount to a blank amount for Santa Rosa Mall.  Id. at p. 61, line 116. The *Supplemental Notice of Cure Costs* now reads:

| No. | Store Number | Debtor Counterparty(s) | Counter Party Name | Contract Title | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 116 | 1915 | SEARS, ROEBUCK DE PUERTO RICO, INC. | SANTA ROSA MALL LLC | GROUND LEASE | 09/30/2023 | S1915-1-A | $    - |

31.    Pursuant to both the *Notice of Cure Costs* and *Supplemental Notice of Cure Costs*,

The cure costs set forth on Exhibit A and Exhibit B hereto shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable contract or lease under Bankruptcy Code Section 365(b), notwithstanding anything to the contrary in the contract or lease, or any other document, and the applicable counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such contract or lease against [Sears], any successful bidder, or the property of any of them.

Id. at p. 5, § A; Docket No. 1731, p. 5, § A (original in all caps, emphasis supplied).

II.    Discussion

32.    As a condition to the assumption and assignment of the *Lease Agreement*, Debtors are required to cure existing defaults pursuant to section 365 of the Bankruptcy Code, which provide in relevant part that "[i]f there has been a default in the executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract, the trustee… cures, or provides adequate assurance that the trustee will promptly cure, such default…" 11 U.S.C. § 365(b)(1)(A).

33.    As set forth above, the Supplemental Cure Notice understated the Debtors' cure obligation by simply placing a "—" as to the amount allegedly owed under the *Lease Agreement*, instead of acknowledging and quantifying (or even estimating) the monetary and nonmonetary obligations that Debtors need to cure under the *Lease Agreement*.  Sears controls the information, has access to the casualty damage reports performed for its own corporate and insurance purposes, exchanged information and documentation with the insurance companies while negotiating the alleged global settlement agreement, retained certain contractors after the passing of the Hurricane Maria who should have provided estimates for the construction work, and has the internal personnel and experience to estimate the cost to rebuild a Class A department store.  Despite the foregoing, Sears amended the proposed cure amount in the *Supplemental Notice of Cure Cost,* to a blank amount for Santa Rosa Mall.

34.    Nonetheless,  Section 6.03(b)(2) of the *Lease Agreement* requires that in the case of damage by windstorm, as was caused by Hurricane Maria, Sears "proceed with all reasonable expedition to restore or rebuild [] the building so destroyed or rendered untenantable…" a situation which hasn't occurred as all

9

the reconstruction of the premises stopped soon after the Petition Date and Store No. 1915 remaining closed since the passing of Hurricane Maria on September 20, 2017. *Lease Agreement*, **Exhibit I**, § 6.03(b)(2), p. 28.

35.     Similarly, Section 6.03(b)(3) of the *Lease Agreement* requires that the "net sums recovered by [Santa Rosa Mall] and·[Sears] on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by [Sears] and indemnifying for <u>physical loss</u> (as distinguished from the loss of use and occupancy. or profits), shall by <u>deposited in a special account in the name of [Santa Rosa Mall]</u> separate and distinct from all other funds of [Santa Rosa Mall] <u>in a bank or trust company of the City of San Juan, Puerto Rico, approved by [Santa Rosa Mall] and [Sears]</u> to be applied on account of the cost of such restoration or rebuilding."

36.     As of today, the Demised Premises, still remain closed <u>498 days after the passing of Hurricane Maria</u>, unrepaired, and Sears seeks to assume the *Lease Agreement* but fails to recognize it has caused any damages under the *Lease Agreement* or that it have to cure any monetary or non-monetary defaults under the *Lease Agreement*.

37.     As a result of the monetary and non-monetary defaults, Santa Rosa Mall has a claim against the Debtor under the referred *Lease Agreement* in the estimated amount of at least <u>$16,500,000</u> (the "Santa Rosa Claim").[4]  Given the fact that the Debtors have withheld all the information regarding the condition of the facilities, the scope, extent and cost of the restoration work, and the documentation and reports exchanged with the insurance company under the *Insurance Policy*, it is impossible to calculate the actual amount without obtaining access to the documentation and/or to the premises, the latter of which was just recently granted for a short visual inspection, but not with specialists or contractors.

38.     This Cure Claim Objection is without prejudice to the fact that other and additional cure

---

[4]  To the extent that Santa Rosa Mall's claim is an initial estimate made in order to accelerate the process and get the store reopened, Santa Rosa Mall reserves its right to amend its claim to reflect its actual monetary and non-monetary damages. The amount of $16,500,000.00, only includes the restoration work going forward, and shall not be used as part of what has been spent already.

claim amounts (a) may exist and/or may become known at a future date and (b) will accrue on an ongoing basis between the filing of this motion and any subsequent assumption of the *Lease Agreement*.  Santa Rosa Mall expressly reserves its right to amend or supplement its Cure Claim Objection through and including the effective date of any proposed assumption and assignment of the *Lease Agreement*.

39.    To assume the *Lease Agreement*, the Debtor must cure the monetary and non-monetary defaults under the Lease Agreement which are still being estimated at this time.

40.    Further, Santa Rosa Mall reserves its right to amend its claim to reflect its actual loss as (and if) the insurance proceeds are received and deposited in the required accounts as per the *Lease Agreement.*

41.    The filing of this claim is not intended as, and shall not be construed as, a waiver of any claim under the *Insurance Policy* with respect to the Demised Premises, or as a waiver or release by Santa Rosa Mall of its rights as a Loss Payee under the *Insurance Policy*.

Prayer for Relief

WHEREFORE, Santa Rosa Mall respectfully requests the entry of an order pursuant to 11 U.S.C. § 365(b)(1) requiring that prior to assuming and assigning the *Lease Agreement*, the Debtor cures the monetary and nonmonetary defaults under the *Lease Agreement* together with any and all other cure amounts due under the *Lease Agreement* that arise prior to the actual date that the *Lease* is assumed, as well as such other and further relief as is just and proper.

[Signatures in the next page]

11

Respectfully submitted.
Dated: January 31, 2019.

**Ferraiuoli** LLC

221 Ponce de León Avenue
5th Floor, San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

*/s/ Sonia E. Colon Colon*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

Attorneys for
*Santa Rosa Mall, LLC*