**Hearing Date and Time:  February 4, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time:  January 31, 2019**
**(By Extension of the Debtors)**

BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:  (315) 413-7115
Facsimile:  (315) 703-7349
Kevin M. Newman

*Attorneys for DGI LS, LLC, Shillington Plaza, LLC*
*and Light 125 James West, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

In re:                                                                  Chapter 11
                                                                            Case No. 18-23538-rdd
SEARS HOLDING CORPORATION, *et al.*          Jointly Administered

                                        Debtors.
-------------------------------------------------------------

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF DGI LS, LLC,**
**SHILLINGTON PLAZA, LLC AND LIGHT 125 JAMES WEST, LLC TO THE**
**DEBTORS' (1) NOTICE OF SUCCESSFUL BIDDER AND SALE HEARING; (2)**
**GLOBAL ASSET SALE TRANSACTION; (3) PROPOSED ASSET PURCHASE**
**AGREEMENT; AND (4) PROPOSED ORDER (I) APPROVING THE ASSET**
**PURCHASE AGREEMENT AMONG SELLERS AND BUYER, (II) AUTHORIZING**
**THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF**
**LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND**
**LEASES IN CONNECTION**
**THEREWITH AND (IV) GRANTING RELATED RELIEF**

DGI LS, LLC, Shillington Plaza, LLC and Light 125 James West, LLC (each a

"Creditor"; collectively, the "Creditors"), through their attorneys, submit this limited objection

and reservation of rights (the "Limited Objection") to the Debtors' (1) Notice of Successful

Bidder and Sale Hearing (the "Sale Notice") (Dkt. 1730); (2) Global Asset Sale Transaction; (3)

Proposed Asset Purchase Agreement; and (4) Proposed Order (I) Approving the Asset Purchase

Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith and (IV) Granting Related Relief (the "Proposed Sale Order"). In support of this Limited Objection, the Creditors respectfully submit as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

2.      On October 15, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court.

3.      The Creditors and certain of the Debtors (the "Debtors") are parties to various agreements, including unexpired leases of nonresidential real property and reciprocal easement agreement (the "Agreements") with regard to the following premises (the "Premises"):

| Landlord | Shopping Center | Location | Store # |
|---|---|---|---|
| DGI LS, LLC | LogistiCenter | Logan Township, NJ | 8835 |
| Light 125 James West LLC | | St. Rose, LA | 24564 |
| Shillington Plaza, LLC | Shillington Plaza | Shillington, PA | 3136 |

4.      On November 1, 2018, the Debtors filed a Motion for Approval of Global Bidding Procedures (Dkt. 429). On November 19, 2018, the Court entered an Order Approving Global Bidding Procedures and Granting Related Relief (the "Bidding Procedures Order") (Dkt. 816).

5.      An auction commenced on January 14, 2019.  On January 18, 2019, the Debtors filed the Sale Notice, which identified Transform Holdco, LLC (the "Buyer") as the successful bidder at the auction (Dkt. 1730).   The Sale Notice included a copy of the executed Asset Purchase Agreement (the "Proposed APA") without necessary schedules thereto (Dkt. 1730, Ex. B),[1] and the Proposed Sale Order (Dkt. 1730, Ex. C).

6.      Pursuant to the Proposed APA and as set forth in the Debtors' First Cure Notice and Second Cure Notice (defined herein), the Buyer is required to identify the executory contracts and unexpired leases that it intends to be assumed and assigned on the closing date by February 1, 2019 (the "Initial Assigned Agreements").  To date, the Debtors have not filed the list of Initial Assigned Agreements.  All other leases are to be subject to the Buyer's designation rights (the "Designatable Leases").

7.      On January 18, 2019, the Debtor filed a Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction (the "First Cure Notice"), identifying the lease between Shillington Plaza LLC and the Debtor (the "Shillington Lease") for potential assumption and assignment to the Buyer or a designated third party (Dkt. 1731).

8.      On January 23, 2019, the Debtor filed a Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction (the "Second Cure Notice" and together with the First Cure Notice, the "Cure Notices"), identifying the lease between DGI LS, LLC and the Debtor (the "DGI Lease") for potential assumption and assignment to the Buyer or a designated third party (Dkt. 1774).

---

[1] The Creditors  have since been provided with some of the Schedules to the Proposed APA.

9.      The Cure Notices did not include adequate assurance information for the Buyer or any other assignee other than a three-page letter regarding the Buyer that did not include any financial statements, which was included in the Second Cure Notice.  On January 25, 2019, the Buyer provided certain limited financial information as its purported adequate assurance of future performance.  However, under the Proposed APA, the Buyer has the right to assign all or any part of its rights and obligations under the Proposed APA to its "Affiliated Designees," and to designate the Designatable Leases for assignment to third parties (the "Designatable Leases"). To date, no adequate assurance information has been provided for any such third party assignees.

10.      Light 125 James West LLC's lease (the "Light 125 Lease") was to be assumed and assigned as part of the sale of the Sears Home Improvement business to Service.com (the "SHIP Sale") (*see* Dkt. 1208).  Pursuant to the Order (I) Approving the Sale of the Sears Home Improvement Business and (II) Granting Related Relief (the "SHIP Sale Order"), the Light 125 Lease was to be assumed and assigned effective upon closing. Upon information and belief, the SHIP Sale failed to close on or before the outside closing date of January 22, 2019.  The Proposed APA provides for the assumption and assignment of the "Acquired Assets," which is defined to include leases to be assumed and assigned under the SHIP Purchase Agreement (*see* Dkt. 1730, Proposed APA at § 2.1[z]).  Therefore, upon information and belief, the  Light 125 Lease may be included in the assets that may be assumed and assigned to the Buyer or designated for assignment to a third party.

## OBJECTION

11.    The Creditors object to the proposed cure amounts set forth in the Cure Notices[2] and to the terms of the proposed sale of assets pursuant to the Proposed APA and Proposed Sale Order, as set forth below.

*A. Any Assumption and Assignment and Sale of the Assigned Agreements Must Be Cum Onere.*

12.    It is well settled that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens, "without any diminution in its obligations or impairment of the rights of the lessor in the present or the future." *See In re Texaco Inc*., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000); *In re David Orgell, Inc*., 117 B.R. 574, 575-76 (Bankr. C.D. Cal. 1990); *In re Pizza Time Theatre, Inc*., 1990 U.S. Dist. LEXIS 17939, at *14 (Bankr. N.D. Cal. July 13, 1990) (*quoting NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984), superseded on other grounds); *In re Fleming Cos*., 499 F.3d 300, 308 (3d Cir. 2007) (*quoting In re Italian Cook Oil Corp*., 190 F.2d 994, 997 (3d Cir. 1951).  The requirement that lease assumption be cum onere applies equally to assignment, as assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365." *In re Sunterra Corp*., 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)); *see also In re Best Payphones, Inc*., 2007 Bankr. LEXIS 1677, at *36 (Bankr. S.D.N.Y. May 8, 2007) ("The trustee can only assign what he assumes, and the assignee cannot impose terms, implicitly or explicitly, that render performance less onerous to the assignee or more onerous to the non-debtor party to the contract.").

13.    By the Proposed APA and Proposed Sale Order, the Debtors seek (1) authority to modify the Agreements and/or render invalid or unenforceable certain use, exclusivity and other provisions contained in the Agreements, and provisions that prohibit or condition alterations to

---

[2] The Creditors are also filing an Objections to the proposed cure amounts set forth in the Cure Notices.

the Premises (the "Contract Limitations"); and (2) to potentially convey their interests in the

Assigned Agreements[3] free and clear of any liens, claims, rights, liabilities, mortgages, deeds of

trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, rights

of offset or recoupment, royalties, conditional sales or title retention agreements, hypothecations,

preferences, debts, easements, suits, licenses, options, rights-of-recovery, judgments, orders and

decrees of any court or foreign domestic governmental entity, taxes (including foreign, state and

local taxes), covenants, restrictions, indentures, instruments, leases, options, off-sets,

recoupments, claims for reimbursement or subrogation, contribution, indemnity or exoneration,

encumbrances and other interests of any kind or nature whatsoever.

14.    The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

("BAPCPA") amended Section 365(f)(1) of the Bankruptcy Code to ensure that all requirements

of Section 365(b) are complied with and that Section 365(f) does not override Section 365(b).

*See* 151 Cong. Rec. S. 2459, 2461-62 (daily ed. Mar. 10, 2005); *see also* H.P. Rep. No. 109-31,

pt. 1, at 87, reprinted 2005 U.S. Code Cong. & Admin. News 153.  The BAPCPA amendments

were specifically designed to preserve the shopping center landlords' rights to enforce lease

restrictions, including use restrictions, and to grant shopping center landlords "broad leeway to

determine the mix of retail tenants." *Id.*   Thus, as clear from the Congressional intent, Section

365(f) is subject to the protections of Section 365(b); it does not modify Section 365(b). *In re

Trak Auto Corp.*, 367 F.3d 237, 243-44 (4th Cir. 2004).

> *i.    Any Assumption and Assignment and Sale of the Agreements Must Be As Is,
> Subject to and In Full Compliance with the Contract Limitations.*

15.    The Proposed Sale Order purports to modify the terms of leases, stating:

> Except as otherwise expressly agreed by the Buyer and the applicable
> Designatable Contract Counterparty, notwithstanding any provision in any

---

[3] Capitalized terms not defined herein shall have the same meaning as set forth in the Proposed APA.

Designatable Lease that purports to prohibit, restrict or condition such action, upon the assumption and assignment of such Designatable Lease to an Assignee in accordance with the terms of the Asset Purchase Agreement, (x) the applicable Assignee shall be authorized to (i) use the applicable Lease Premises (as defined in the Asset Purchase Agreement), subject to section 365(b)(3) of the Bankruptcy Code, as a retail store (and related goods and services) upon consummation of the assumption and assignment of such Designatable Lease to such Assignee in accordance with the terms of the Asset Purchase Agreement, (ii) operate such Lease Premises under the Buyer's trade name or any other trade name which the Buyer owns or is authorized to use (including any of the Debtors' trade names), (iii) make such alterations and modifications to the applicable Lease Premises (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including panels on all pylons, monuments, directional and other ground and off-premises signs where Sellers are presently represented) deemed necessary by such Assignee (subject to applicable municipal codes) as are necessary or desirable for such Assignee to conform such Lease Premises to the prototypical retail store (or such Assignee's typical retail store), (iv) remain "dark" with respect to such Lease Premises after such assumption and assignment until the date that is necessary to permit such Assignee to remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above (so long as such date is not more than one hundred fifty (150) days after the applicable Designation Assignment Date) or such later date as may be reasonably required for the restoration of the such Lease Premises following any applicable Casualty / Condemnation Event, and (v) exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated Agreement (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Agreement or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name) and (y) neither the Buyer nor the applicable Assignee shall have any responsibility or liability for any Excluded Asset-Sale Taxes and Excluded Asset-Reorganization Taxes.

(Dkt. 1730, Ex. C at ¶ 36).

16.     As set forth above, assumption and assignment must be *cum onere*, accepting both its benefits and burdens (*see supra* ¶ 13).  Further, Section 365(b)(3)(C) of the Bankruptcy Code provides that assumption and assignment is subject to all of the provisions of the lease being assumed, including exclusivity, radius, location and use provisions.  *See* 11 U.S.C. § 365(b)(3)(C).     Further, adequate assurance of future performance must include adequate

assurance "(C) that assumption and assignment . . . will not breach any such provision contained in any lease, financing agreement, or master agreement relating to such shopping center; and (D) that assumption and assignment will not disrupt any tenant mix or balance in such shopping center." 11 U.S.C. § 365(b)(3)(C), (D).

17.    The Agreements between Creditors and the Debtors prohibit one or more of the authorizations proposed to be granted in paragraph 36 of the Proposed Sale Order. By way of example (but not limitation), the leases with DGI LS, LLC and Light 125 James West LLC limit the uses of the Premises to warehousing and distribution:

    a.  The DGI Lease provides:  "The Premises may be used and occupied only for Tenant's Permitted Use (as defined in <u>Section 1.06</u> and for no other purpose" (Exhibit A, § 7.01).  "Tenant's Permitted Use" is defined as "[w]arehousing and distribution associated with delivery and pick-up of merchandise (the foregoing, the "<u>Intended Use</u>"), ancillary office activities and all other lawful uses on a 24-hour, seven day work week" (*see* Exhibit A, § 1.06).

    b.  The Light 125 Lease provides:  "Tenant shall use the Premises only for Tenant's Permitted Use as set forth in Section 1.10 above and shall not use or permit the Premises to be used for any other purpose . . ." (Exhibit B, § 6.01). "Tenant's Permitted Use" is defined as "<u>general office and storage and distribution of non-hazardous materials</u> and no other use" (*id.* at § 1.10).  The Light 125 Lease further requires the Debtor to obtain the consent of the landlord for any alterations, additions or improvements to the Premises (*id.* at § 9.01).

18.    These and all other provisions of the Agreements, to the extent they are assumed and assigned to the Buyer or any other third party, must be assumed *cum onere*.

   ii. *Conveyance of the Assigned Agreements Cannot Be Free and Clear of "Encumbrances."*

19.    Section 2.1 of the Proposed APA provides for the conveyance of title to the Assigned Agreements "free and clear of any and all Encumbrances of any kind, nature or description and any Claims, in each case other than Permitted Post-Closing Encumbrances" (Dkt. Ex. B at § 2.1[b]), defined to include Restrictive Covenants (Dkt. 1730, Ex. B at § 1.1).

20.    Any and all interests, covenants or rights applicable to real estate assets or rights that limit or condition the permitted use of the property such as easements, rights of way, rights of first refusal, reciprocal easement agreements, operating or redevelopment agreemetns, covenants, licenses or permits (the "Restrictive Covenants") must remain in full force and effect notwithstanding any transfer or assignment.

21.    The Restrictive Covenants must remain in full force and effect notwithstanding any assumption and assignment and sale pursuant to the Proposed APA and Proposed Sale Order. *See, e.g., Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (stating that covenants and restrictions run with the land and create a "property right in each grantee and any subsequent grantees" that cannot be extinguished in bankruptcy); *see also Mancuso v. Meadowbrook Mall Co. Ltd. P'Ship*, 2007 U.S. Dist. LEXIS 23308, at *29-30 (Bankr. N.D. W.Va. Mar. 28, 2007) (use covenants run with the land); *In re 523 E. Fifth St. House Preservation Dev. Fund Corp.*, 79 B.R. 568, 574-75 (Bankr. S.D.N.Y. 1987); *In re Inwood Heights Hous. Dev. Fund Corp.*, 2011 Bankr. LEXIS 3251, at *22 (Bankr. S.D.N.Y. Aug. 25, 2011).

22.    Thus, the Debtors should not be permitted to assume and assign and sell the Assigned Agreements free and clear of the Restrictive Covenants.These Restrictive Covenants

are essential for the preservation and maintenance of the shopping center in which the parties share space, are non-executory and run with the land, and cannot be invalidated pursuant to a proposed sale of the Assigned Agreements to the Buyer or any other third party.

23.    Further, Section 363(f) provides for the sale of property "free and clear of any interest in such property of an entity other than the estate, only if" certain conditions are met.  11 U.S.C. § 363(f).  The Debtors bear the burden of establishing that the conditions of Section 363(f) have been met.  *See In re Flour City Bagels, LLC*, 557 B.R. 53, 88 (Bankr. W.D.N.Y. 2016).  The Debtors have failed to satisfy their burden, as (1) such Restrictive Covenants run with the land and, thus, applicable nonbankruptcy law would not permit a sale free and clear of the Restrictive Covenants; (2) the Creditors have not consented to a sale free and clear of the Restrictive Covenants; (3) the interests of the Creditors are not liens; (4) there can be no dispute as to the interests of the Creditors in the Premises or the existence of the Restrictive Covenants; and (5) the Creditors could not be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their Restrictive Covenants.

24.    Finally, Section 363(e) provides that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, . . . the Court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Here, the Restrictive Covenants are undeniably essential to the profitable and orderly operation of the centers, and cannot be replaced by a monetary award or replacement lien.  Pursuant to Section 361 of the Bankruptcy Code, that would require the Court to grant "such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361(3).  The only "indubitable equivalent" is to prohibit or condition the sale subject to the Restrictive Covenants.

*iii.    The Debtors Have Failed to Comply With the Bidding Procedures Order.*

25.    The Debtors have failed to comply with the terms of the Bidding Procedures Order, which provides:

> Nothing herein shall authorize, absent further order of the court or agreement among the Debtors and the applicable non-Debtor counterparty, the sale of any real estate rights or assets free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets or rights that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land.  To the extent that the Debtors or any other party seek to sell any real estate rights or assets free and clear of any Restrictive Covenant, the Debtors shall describe with particularity the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto.  All rights, remedies, and positions of all parties with respect to such relief are preserved.

(Dkt. 816 at ¶ 51).

26.    The Debtors should not be permitted to ignore these bargained for protections and the Court's Order.  As set forth below, due process requires that the Creditors be provided with notice and an opportunity to be heard with respect to any conveyance of the Agreements free and clear of the Restrictive Covenants.  The Creditors have not been provided required due process.

*iv.    The Proposed Sale Order Must Be Amended to Provide that the Assumption and Assignment and Sale of the Assigned Agreements is Cum Onere.*

27.    In accordance with the foregoing, the Proposed Sale Order should be amended to expressly provide that the assumption and assignment and sale of the Assigned Agreements is not free and clear of any Restrictive Covenants, but is subject to and shall not extinguish or otherwise diminish any interests, covenants, or rights applicable to such Assigned Agreements or rights that limit or condition the permitted uses of the Premises such as easements, rights of way,

rights of first refusal, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses or permits that are not executory and run with the land.

B. *The Proposed Sale Order Fails to Adequately Address the Payment of Accrued, But Unbilled or Not Yet Due Adjustments and Reconciliations.*

28.    The Proposed Asset Purchase Agreement purports to limit the "Assumed Liabilities" to liabilities (whether payment or performance) accruing after the Closing and all Cure Costs (Dkt. 1730, Ex. B at § 2.3), and expressly excludes liabilities that accrued "prior to the Closing Date other than Cure Costs, Other Payables, the Assumed 503(b)(9) Claims, Severance Reimbursement Obligations, and Ordered Inventory" (*id.* at § 2.4[a]), and "all Liabilities relating to the payment or performance of obligations arising solely out of facts or circumstances in existence prior to the Closing Date or Designation Agreement Date, as applicable, with respect to the Assigned Agreements" (*id.* at § 2.4[b]), and "all Liabilities . . . arising out of the Assumed Liabilities, the Acquired Assets or the operation of the Business prior to the closing Date or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing prior to the Closing Date" (*id.* at § 2.4[c]).

29.    Section 2.5 of the Proposed Asset Purchase Agreement expressly provides that the Buyer (or any assignee thereof) will not be liable for

> any year-end (or other) adjustment (including for royalties, rents, utilities, Taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such lease Assignment or (y) any previous calendar year, and Sellers shall fully indemnify and hold harmless Buyer and the applicable Assignee with respect thereto."

(Dkt. 1730, Ex. B at § 2.5; *see also* Dkt. 1730, Ex. C at ¶¶ 25, 34).

12

30.     As set forth above, the Buyer (and any other assignee designated thereby) must assume the Assigned Agreements *cum onere* (*see supra* ¶ 13).  The Agreements between the Creditors and the Debtor include continuing obligations to pay adjustments and reconciliations for the Debtor's proportionate share of common area and building maintenance expenses, real property taxes, insurance and utilities, which have accrued or will accrue under the Agreements, but are not yet billed or due.  Adjustments and reconciliations for 2018 have not been (and are not required to be) billed to date, and adjustments and reconciliations for 2019 will not be (and are not required to be) billed until the year 2020.  Therefore, any default in the payment of those adjustments and reconciliations will not occur until after the Closing Date, but relate to a period prior to the Closing Date, and thus are excluded from "Assumed Liabilities."

31.     Additionally, the Agreements obligate the Debtor to indemnify and hold the Creditors harmless from and against various claims, liabilities and expenses, which may have arisen, but may not now be known to the Debtor and/or Creditors.  Such indemnity obligations may arise post-closing, notwithstanding that they relate to a period prior to the Closing Date, and thus are excluded as "Assumed Liabilities."

32.     While the Proposed APA provides for indemnification of the Buyer (and any other assignee designated thereby) for such adjustments and reconciliations and indemnity obligations, the Debtors are seeking to be relieved as of the Closing Date from "any further liability" under the Initial Assigned Agreements (Dkt. 1730, Ex. C at ¶ 25), and to "be relieved of any liability for breach of such Designated Agreements occurring after the applicable Designation Assignment Date or Additional Contract Assignment Date pursuant to section 365(k) of the Bankruptcy Code" (Dkt. 1730, Ex. C at ¶ 34).

33.    Although the Proposed Sale Order provides for the escrow of funds in a segregated account to pay such year-end adjustments and reconciliations (there is no escrow for indemnification obligations, or requirement that the Debtors maintain insurance) (*see* Dkt. 1730, Ex. C at ¶ 34), such escrow provision is limited to (1) later designated assigned leases, and does not include those contracts that are included in the Initial Assigned Agreements; (2) only secures payment for the adjustments and reconciliations for "the calendar year in which the applicable Designation Assignment Date occurs," thereby excluding reconciliations for the 2018 calendar year; and (3) fails to provide (i) a mechanism for determining the amount of funds to be segregated (other than "as mutually agreed by the Debtors and the applicable Landlord or . . . as determined by the Court"), (ii) a timeline by which the Debtors and the applicable Landlord will come to such a mutual agreement, or (iii) a procedure if no such mutual agreement is reached. Further, it is not certain that the Debtors will be in existence in 2020 to pay the 2019 adjustments and reconciliations when they are finalized and billed.

34.    The obligation to pay adjustments and reconciliations and to satisfy indemnity obligations is essential to the Creditors' entitlement, pursuant to Section 365(b)(1) of the Bankruptcy Code, to adequate assurance of future performance, and must be assumed by any assignee, *cum onere.*  The Proposed Sale Order must be modified to provide any assignee remains liable for adjustments and reconciliations and indemnity obligations, in order to protect the Creditors from an insolvent Debtor when the obligation to make those payments arises. Paragraph 26 of the Proposed Sale Order should also be modified to provide for the cure of non-monetary defaults, not just the payment of cure amounts.

35.    In the alternative, to the extent the Court determines that the proposed plan to escrow funds to pay future obligations is acceptable, the Court should amend the Proposed Sale

14

Order to (1) provide that the Debtors must escrow funds for all Assigned Agreements, not just the Designated Agreements; (2) require that the escrow funds be earmarked for payment of both 2018 and 2019 adjustments and reconciliations; (3) require that the account be funded in an amount that is no less than 120% of the anticipated 2018 and 2019 year-end adjustments and reconciliations, and provide a better mechanism for the determination of the required amount of funding and the payment of claims through 2020; and (4) require that such funds remain in such segregated escrow account until the statute of limitations expires on any personal injury claims.

C.  *Adequate Assurance of Future Performance as to the Buyer and any Buyer.*

36.    The Creditors reserve all rights with regard to adequate assurance of future performance as to the Buyer's financial condition.

37.    The Proposed APA purports to convey to the Buyer at closing certain Designation Rights with respect to Designatable Leases (*see* Dkt. 1730, Ex. B at §§ 1.1, 2.6).  "Designatable Leases" is defined to include the "GOB Leases" as set forth in Schedule 1.1(m) and the "Operating Leases" as set forth in Schedule 1.1(o).  Each of the Premises governed by the Agreements are included in Schedule 1.1(m).

38.    The Proposed APA further provides for the assignment of "Additional Contracts" (Dkt. 1730, Ex. B at § 2.9), which may include the Light 125 Lease, which is not included in the Cure Notices.  The Proposed APA permits the Buyer to designate such Additional Contracts for assumption and assignment upon "written notice delivered to the Sellers" (*id.*).  While the Proposed APA requires the Debtors to "pay[] all Expenses accrued post-Closing and all Cure Costs associated with such Additional Contract" (*id.*), there is no mechanism in place for the Additional Contract counterparties to object to the proposed cure amounts or supplement any previous objection to the proposed cure amounts.

39.    "The fundamental requisites of due process are adequate notice and the opportunity to be heard." *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 910 (4th Cir. 1981); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).   The Creditors are entitled to adequate notice and a sufficient opportunity to object to the treatment of the Agreements, and the failure of such notice and opportunity to be heard constitutes a violation of the Creditors' fundamental due process rights.   In order to exercise their due process rights, the Proposed Sale Order must compel the Debtors and/or Buyer to strictly comply with the terms of Section 365 of the Bankruptcy Code with respect to any proposed assignee of a Designatable Lease on at least fourteen (14) days' notice and provide for an opportunity to be heard in opposition to such proposed assignment

40.    Pursuant to Section 365 of the Bankruptcy Code, assumption and assignment requires adequate assurance that an assignee has the ability to perform under the terms of the Agreements and satisfies the requirements of sections 365(b)(3) and 365(l) of the Bankruptcy Code.   11 U.S.C. §§ 365(b)(1)(C), (b)(3), (f)(2) and (l).   Therefore, to the extent the Warehouse Leases are designated by the Buyer for assumption and assignment, the Debtors and/or the Buyer are required to satisfy the requirements of Section 365(b) of the Bankruptcy Code.

41.    Unlike a typical lease assignment, "an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants*." In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086 (3d Cir. 1990).   Therefore, shopping center landlords are afforded "special protection" from debtors' attempts to assign a shopping center lease without first providing adequate assurance of future performance.   *See In re Trak Auto Corp.*, 367 F.3d 237, 243 (4th Cir. 2004); see also 11 U.S.C. §§ 365(b)(1), (3) and (f).

42.    "The Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of real property in shopping centers. *In re Ames Dep't Stores, Inc.*, 348 B.R. 91, 94 (Bankr. S.D.N.Y. 2006); *see also In re Joshua Slocum Ltd.*, 922 F.2d at 1086 (citing 11 U.S.C. § 365(b)(3)); *In re Heilig-Meyers Co.*, 294 B.R. 660, 662 (Bankr. E.D. Va. 2001). The purpose of these heightened restrictions is based upon the "recogni[tion] that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *In re Ames Dep't Stores, Inc.*, 348 B.R. at 94).

43.    Whether in the context of an assumption (see 11 U.S.C. § 365(b)(1)) or an assignment (see 11 U.S.C. § 365(f)(1)), "the 'adequate assurance of future performance' must include specific assurances that are spelled out in the Code" (*In re Trak Auto Corp.*, 367 F.3d at 243), including adequate assurance

a.    "(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

b.    (B) that any percentage rent due under such lease will not decline substantially;

c.    (C) that assumption and assignment is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center;

17

   d. (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center."

11 U.S.C. § 365(b)(3).

  44.  The party seeking to assume and assign bears the initial burden of proving adequate assurance of future performance. *See In re Vitanza*, 1998 Bankr. LEXIS 1497, at \*50 (Bankr. E.D. Pa. Nov. 13, 1998); *see also Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080 (9th Cir. 1989); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 166 (D. Md. 2001); *In re Great NW Recreation Center, Inc.*, 74 B.R. 846, 853 (Bankr. Mont. 1993) (*citing Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir. 1985)); *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. Jan. 24, 1990).

  45.  The Proposed Sale Order must compel the Debtors and/or Buyer to provide the following information on any Buyer of a Designatable Lease on at least fourteen (14) days' notice and provide for an opportunity to be heard in opposition to such proposed assignment:

   a. The identity of the bidder (and its contact person), proposed assignee (if different) (and its contact person) and any proposed guarantor(s);

   b. Audited financial statements and annual reports for the proposed assignee and any proposed guarantor(s), including balance sheets and income statements for the last three years;

   c. The proposed assignee's business plan and cash flow projections for the next three years;

   d. Evidence of the proposed assignee's retail experience, including experience operating in line stores in shopping centers, the identity and qualifications of

management, the intended use of the Premises, the trade name to be used, and a list of the bidder's current store locations; and

e. Copies of any purchase or transfer agreement and assignment agreement.

46.     Further, the Proposed Sale Order prematurely provides that the Debtors have met all applicable requirements of Section 365(b) of the Bankruptcy Code with respect to the Assigned Agreements.  Further, any Affiliated Designees of the Buyer (who would be included in the term "Buyer" (*see* Dkt. 1730, Ex. B at 1)) has not provided adequate assurance of future performance (Dkt. 1730, Ex. C at ¶ U).

47.     Further, with respect to the Designatable Leases, the determination of cure costs has not been satisfied, as the cure costs are subject to change between the date of the Cure Notices and the date of assumption and assignment.   The Proposed Sale Order should be modified to address the issues of adequate assurance of future performance and to allow supplementation of cure objections with respect to Designatable Leases (*see* Dkt. 1730, Ex. C at ¶¶ 30-32).

48.     Similarly, the Proposed Sale Order should be modified to the extent that it purports to approve not only the Proposed APA, but also "Related Agreements" and "transactions contemplated therein" (Dkt. 1730, Ex. C at ¶ X).   Until the requirements above have been satisfied, approval of any assumption and assignment of the Designatable Leases subsequent to closing is, or to any assignee other than the Buyer, is premature.

D. *The Buyer Should Not Be Permitted to Assign Its Rights and Obligations Under the Proposed APA to Any Assignee Without Strict Compliance with Section 365 of the Bankruptcy Code.*

49.     The Proposed APA provides that the Buyer or "its Affiliated Designees" will be appointed to manage, control and operate each of (1) the Acquired Properties, (ii) Occupancy Leased Premises and (iii) the Sparrow Properties . . . at which Management Services are being provided" (Dkt. 1730, Ex. B at § 8.8[b]), pursuant to an Occupancy Agreement.  The Proposed APA also provides for the assignment of the Buyer's rights and obligations under the Proposed APA to an Affiliated Designee, with notice only to the Debtors (*see* Dkt. 1730, Ex. B at § 13.6). As with assumption and assignment generally, any assignment of the Buyer rights and obligations under the Proposed APA requires advance notice to the Creditors, strict compliance with Section 365 of the Bankruptcy Code and an opportunity to be heard with respect to such proposed assignment  (*see supra* Point C).

50.     Further, the Proposed Sale Order should make clear that, notwithstanding the Occupancy Agreement or any transition services agreement, all obligations of the Creditors under the Agreements shall be timely performed.

*E.   The Proposed Sale Order Improperly Seeks to Render Provisions of the Assigned Agreements Unenforceable.*

51.     Paragraph 38 of the Proposed Sale Order provides:

"Any provision in an Assigned Agreement that prohibits or conditions the assignment or sublease of such Assigned Agreement (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition or renewal or extension, refuse to renew, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect."

(Dkt. 1730, Ex. C at ¶ 38).  Paragraph 35 proposes similar restrictions on the enforceability of the terms of the Assigned Agreements (Dkt. 1730, Ex. C at ¶ 35).

20

52.    The Court may not re-write or abrogate lease provisions.  Section 365 of the Bankruptcy Code does not render anti-assignment clauses generally unenforceable.  Rather, Section 365(f) provides that a lease may be assumed and assigned notwithstanding provisions in the lease or applicable law that prohibit, restrict or condition assignment of the lease.  Unexpired leases and executory contracts must be assumed *cum onere*, or not at all.  *In re ANC Rental Corp.*, 277 B.R. 226, 238-239 (Bankr. D. Del. 2002).  The Agreements can only be assumed and assigned "as is" and in accordance with all of their terms.

53.    Paragraph 38 of the Proposed Sale Order must also be limited to an assignment, not a sublease, and only to assignments pursuant to the sale order.  Further, it should be modified such that provisions that prohibit the tenant from pledging or granting a lien on its leasehold interest are not included as purported anti-assignment provisions, and that such provisions must be assumed by any assignee (*see supra* Point A).

*F.  There Is No Basis for Invalidating Section 365(l) of the Bankruptcy Code.*

54.    Paragraph 48 of the Proposed Sale Order provides that "Buyer shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any Assigned Agreement" (Dkt. 1730, Ex. C at ¶ 38).  "Buyer" is defined in the Proposed APA as "Transform Holdco LLC, a Delaware Limited Liability Company (together with any applicable Affiliated Designee . . .)" (Dkt. 1730, Ex. B at 1).  As set forth above (*see supra* Point D), the Buyer has not provided adequate assurance information for any Affiliated Designee.

*G.  The Proposed APA Improperly Limits the Pre-Assignment Real Property Tax Liability.*

55.    Section 2.3(l) provides for the assumption by the Buyer of the "Assumed Property Tax Liabilities," defined as "all Liabilities for Property Taxes payable with respect to any

Acquired Property for Pre-Assignment Tax Periods, not to exceed $135,000,000" (Dkt. 1730, Ex. B at § 1.1).  Neither the Debtors nor the Buyer have been unable to provide any justification for the cap on its liability to pay real property taxes assessed against the Premises.

#### JOINDER AND RESERVATION OF RIGHTS

56.    The Creditors join in the objections of other landlords of the Debtors to the extent they are not inconsistent with this Limited Objection.

57.    The Creditors reserve their rights to supplement this Limited Objection and to make such other and further objections as they deem necessary or appropriate, including, but not limited to, any amendment to the Proposed Sale Order and to the assumption and assignment and sale of the Agreements to any assignee.

#### CONCLUSION

**WHEREFORE,** the Creditors respectfully request that the Court enter an Order consistent with this Limited Objection, and grant the Creditors any additional and further relief the Court deems just and proper.

Dated: January 31, 2019
Syracuse, New York

**BARCLAY DAMON LLP**

By:  /s/Kevin Newman
Kevin M. Newman, Esq.
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202-2020
Telephone:  (315) 413-7115
Facsimile:  (315) 703-7349

*Attorneys for DGI LS, LLC, Shillington Plaza, LLC and Light 125 James West, LLC*