# EXHIBIT A

# Sears, Roebuck and Co.
## (Sears)

### DP PARTNERS
### STANDARD INDUSTRIAL LEASE
### (NET-NET-NET)

Lease Preparation Date: January 20, 2009

DP Partners Logan II K, LLC, Landlord
and
Sears, Roebuck and Co., Tenant

LogistiCenter at Logan

PHBF/ 649807.13

**DP Partners Logan II K, LLC**
**STANDARD INDUSTRIAL LEASE**
**(NET-NET-NET)**

For Landlord Use Only:
Building #:
L/A:

Lease Preparation Date: January _20_, 2009

Landlord: DP Partners Logan II K, LLC, a Delaware limited liability company, located at 1200 Financial Boulevard, Reno, Nevada 89502.

Tenant: Sears, Roebuck and Co., a New York corporation.

1. LEASE TERMS.

    1.01 Premises: The Premises referred to in this Lease contain approximately 87,321 square feet within Building "K" (the "Building") as shown on Exhibit A attached hereto and made a part hereof. The address of the Premises is: 2100 Center Square Road, Suite 125, Logan Township, New Jersey 08085.

    1.02 Project: The Project in which the Premises are located is known as "LogistiCenter at Logan," located in Logan Township, Gloucester County, New Jersey, and presently consists of approximately 212 developed acres shown in Exhibit A.

    1.03 Parcel: The parcel of land within the Project upon which the Building is located, together with the Building and all other improvements thereon.

    1.04 Tenant's Notice Address: Tenant's Notice Address is Sears, Roebuck and Co., 3333 Beverly Road, Department 824 RE, Hoffman Estates, Illinois 60179, Attn: Vice President, Real Estate; with a copy to: Roebuck and Co., 3333 Beverly Road, Department 824 RE, Hoffman Estates, Illinois 60179, Attn: Associate General Counsel, Real Estate.

    1.05 Landlord's Notice Address: 1200 Financial Boulevard, Reno, Nevada 89502 (tel. 775-858-8080).

    1.06 Tenant's Permitted Use: Warehousing and distribution associated with delivery and pick-up of merchandise (the foregoing, the "Intended Use"), ancillary office activities and all other lawful uses on a 24-hour, seven day work week.

    1.07 Initial Lease Term: The Initial Lease Term is for seven (7) years and commences on the Commencement Date and expires at 11:59 PM, local time, on the day immediately preceding the seventh (7th) anniversary of the Commencement Date (the "Expiration Date").

    1.08 Commencement Date: The "Commencement Date" shall be on the date which is the later to occur of: (i) May 1, 2009; or (ii) the date that Landlord has Substantially Completed (as defined in "Work Letter" attached hereto as Exhibit B) the Landlord's Work (as defined in the Work Letter) (except for items relating to Tenant's racking and material handling system;

- 1 -

PHBF/ 649807.13

replacing, substituting for, or in addition to any tax previously included within the definition of real property tax; and (vi) the Landlord's reasonable cost of any tax protest relating to any of the above. Notwithstanding the foregoing, Real Estate Taxes: (1) shall not include Landlord's federal or state income, franchise, inheritance or estate taxes; (2) shall not include any special or extraordinary assessments arising from any capital improvements or replacements affecting the Parcel or the Building made by any governmental authority, unless the cost or charges for such capital improvements or replacements, as reflected in such assessments, at Landlord's election, in Landlord's reasonable business judgment, have been spread over (x) the useful life, determined in accordance with GAAP, of the capital improvement or replacement, (y) if such assessment may be paid in installments, the maximum number of installments that Landlord is permitted by the taxing authority to elect, or (z) a number of periodic payments as reasonably determined by Landlord; and (3) shall include only such periodic payment relating to special or extraordinary assessments becoming due and payable during the Term.

B.  Tenant shall pay to Landlord Tenant's Proportionate Share of the Real Estate Taxes. Such payment shall be paid by Tenant monthly as Additional Rent, in advance, the amount which Landlord reasonably estimates to be Tenant's Proportionate Share of the Real Estate Taxes. Landlord shall periodically determine Tenant's share of the actual Real Estate Taxes, and in the event that the amount which Tenant has paid to Landlord on account of the Real Estate Taxes is less than Tenant's share of such actual Real Estate Taxes, Tenant shall pay such difference to Landlord on the next rent payment date. In the event that Tenant has paid to Landlord more than Tenant's Proportionate Share of such actual Real Estate Taxes, the amount of such difference, at Tenant's direction, shall be credited against Tenant's payment of Real Estate Taxes next due or refunded to Tenant.

C.  Tenant will pay all taxes charged against trade fixtures, furnishing, equipment or any other personal property belonging to Tenant. Tenant will have personal property taxes billed separately from the Project. If any of Tenant's personal property is taxed with the Project, Tenant will pay Landlord the taxes for the personal property upon demand by Landlord.

6.    INTENTIONALLY OMITTED.

7.    USE OF PREMISES; HAZARDOUS WASTES.

    7.01  Use.

A.  The Premises may be used and occupied only for Tenant's Permitted Use (as defined in Section 1.06) and for no other purpose, without obtaining Landlord's prior written consent, which Landlord may deny for any reasonable business purpose. Tenant will comply with (i) all current and future statutes, laws, ordinances, orders, policies, rules and regulations of any federal, state, county or municipal governmental (or quasi-governmental) body, bureau, department, court or agency affecting the Premises (collectively, "Legal Requirements"), other than those Legal Requirements for which is Landlord is responsible to comply under this Lease and Legal Requirements related to the condition of the Premises which were violated as of the Commencement Date, and (ii) the Declarations except where expressly contrary to the terms of this Lease. Tenant will not perform any act or carry on any practices that are likely to injure the Parcel or the Premises or be a nuisance or menace, or disturb the quiet enjoyment of other

- 9 -

tenants in the Parcel, including but not limited to equipment which causes vibration, use or storage of chemicals, or heat or noise which is not properly insulated. Tenant will not cause, maintain or permit any outside storage on or about the Premises.

B.   Tenant will not allow any condition or thing to remain on or about the Premises which causes Tenant, Landlord or any other party to be in breach or default of any terms or conditions of any Declaration. Furthermore, Tenant shall comply with the Declarations as the same may be applicable to it and as the same may be amended in a commercially reasonable manner, pursuant to the terms thereof, from time to time, and, without limiting the generality of the foregoing, to perform all of the obligations of a Secondary Tenant in Pureland under the Declarations, and not to act or neglect to act in any way that will cause Landlord to violate any of the obligations of the Landlord as a Site Owner in Pureland. All capitalized terms used in this paragraph without definition shall have the meanings ascribed to them in the Declarations.

7.02   Hazardous Wastes. As used in this Section, the term "Hazardous Waste" means:

A.   Those substances defined as "hazardous substances," "hazardous materials," "toxic substances," "regulated substances," "solid waste," "asbestos-containing materials," "lead-based paint" or "petroleum by-products" in the following or like statues, as now in effect or as hereinafter amended or supplemented, and all rules and regulations now in effect or hereafter promulgated with respect to each of the following or like statues: the Toxic Substance Control Act, 15 U.S.C. § 2601 et seq. ("TSCA"); the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq. ("CERCLA"); the Resource, Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901 et seq. ("RCRA"); the Federal Hazardous Substances Act, 15 U.S.C. § 1261 et seq. ("FHSA"), the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. ("OSHA"); the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq. ("HMTA"); and the Industrial Site Recovery Act of the State of New Jersey, N.J.S.A. 13:K-6, et seq. ("ISRA").

B.   Any and all elements, compounds, chemical mixtures, contaminants, pollutants or other substances identified as "hazardous substances" under CERCLA, HSCA, ISRA or any comparable statutes and/or regulations of the State of New Jersey, or any petroleum or petroleum products, or asbestos;

C.   Those substances listed in the United States Department of Transportation table (49 CFR § 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto); and

D.   Such other substances, mixtures, materials and waste which are regulated under, or which are classified as hazardous or toxic under, any applicable Legal Requirements.

All Legal Requirements referenced in Paragraphs A, B, C and D of this Section 7.02 are collectively referred to as "Environmental Laws." However, Hazardous Wastes as described in Paragraphs A, B, C, and D of this Section 7.02 shall not include any lubricating oil or similar substance used for or placed on Tenant's products to prevent corrosion or on lift trucks for routine maintenance application, provided same are used and stored in compliance with all applicable Environmental Laws.

- 10 -

PHBF/ 649807.13

## SIGNATURE PAGE TO TENANT WORK LETTER

**LANDLORD:**

DP PARTNERS LOGAN II K, LLC,
a Delaware limited liability company

By: /s/ Michael Alderman

Name: Michael Alderman

Title: Partner-Member

**TENANT:**

SEARS, ROEBUCK AND CO., a New York corporation

By: /s/ James B. Terrell

Name: James B. Terrell

Title: Vice President Real Estate

[Stamp: REAL ESTATE / MRD / LEGAL / SMS/OC]

# EXHIBIT B

INDUSTRIAL LEASE

between

FIRST INDUSTRIAL, L.P.,
a Delaware limited partnership

(Landlord)

and

SPRAY-TECH, INC.,
a Florida corporation

(Tenant)

4.05    Payment. Concurrently with the execution hereof, Tenant shall pay Landlord Base Rent for the first calendar month of the Lease Term. Thereafter the Base Rent described in Section 1.07, as adjusted in accordance with Section 4.02, shall be payable in advance on the first day of each calendar month. If the Commencement Date is other than the first day of a calendar month, the prepaid Base Rent for such partial month shall be prorated in the proportion that the number of days this Lease is in effect during such partial month bears to the total number of days in the calendar month. All Rent, and all other amounts payable by Tenant to Landlord pursuant to the provisions of this Lease, shall be paid to Landlord, without notice, demand, abatement, deduction or offset, in lawful money of the United States at Landlord's office in the Building or to such other person or at such other place as Landlord may designate from time to time by written notice given to Tenant. No payment by Tenant or receipt by Landlord of a lesser amount than the correct Rent due hereunder shall be deemed to be other than a payment on account; nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed to effect or evidence an accord and satisfaction; and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance or pursue any other remedy in this Lease or at law or in equity provided.

4.06    Late Charge; Interest. Tenant acknowledges that the late payment of Base Rent or any other amounts payable by Tenant to Landlord hereunder (all of which shall constitute additional rent to the same extent as Base Rent) will cause Landlord to incur administrative costs and other damages, the exact amount of which would be impracticable or extremely difficult to ascertain. Landlord and Tenant agree that if Landlord does not receive any such payment on or before five (5) business days after the date the payment is due, Tenant shall pay to Landlord, as additional rental, (a) a late charge equal to five percent (5%) of the overdue amount to cover such additional administrative costs; and (b) interest on the delinquent amounts at the lesser of the maximum rate permitted by law if any or twelve percent (12%) per annum from the date due to the date paid.

4.07    Additional Rental. For purposes of this Lease, all amounts payable by Tenant to Landlord pursuant to this Lease, whether or not denominated as such, shall constitute additional rental hereunder. Such additional rental, together with the Base Rent and Rent Adjustments, shall sometimes be referred to in this Lease as "Rent".

4.08    Additional Taxes. In addition to the Rent and other charges to be paid by Tenant hereunder, Tenant shall reimburse Landlord upon demand for all taxes payable by or imposed upon Landlord upon or with respect to: any fixtures or personal property located in the Premises; any leasehold improvements made in or to the Premises by or for Tenant; the Rent payable hereunder, including, without limitation, any gross receipts tax, license fee or excise tax levied by any governmental authority; the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy of any portion of the Premises (including, without limitation, any applicable possession interest taxes); or this transaction or any document to which Tenant is a party creating or transferring an interest or an estate in the Premises.

## ARTICLE V - SECURITY DEPOSIT

5.01    Upon the execution of this Lease, Tenant shall deposit with Landlord the Security Deposit described in Section 1.09 above. The Security Deposit is made by Tenant to secure the faithful performance of all the terms, covenants and conditions of this Lease to be performed by Tenant. If Tenant shall default with respect to any covenant or provision hereof, Landlord may use, apply or retain all or any portion of the Security Deposit to cure such default or to compensate Landlord for any loss or damage which Landlord may suffer thereby. If Landlord so uses or applies all or any portion of the Security Deposit, Tenant shall immediately upon written demand deposit cash with Landlord in an amount sufficient to restore the Security Deposit to the full amount hereinabove stated. Landlord shall not be required to keep the Security Deposit separate from its general accounts and Tenant shall not be entitled to interest on the Security Deposit. Within thirty (30) days after the expiration of the Lease Term and the vacation of the Premises by Tenant, the Security Deposit, or such part as has not been applied to cure the default, shall be returned to Tenant. In the event of any bankruptcy or other proceeding initiated by or against Tenant, it is agreed that all such Security Deposit held hereunder shall be deemed to be applied by Landlord to rent, sales tax and all other charges due from Tenant to Landlord for the last month of the Term and each preceding month until such Security Deposit is fully applied.

## ARTICLE VI - USE OF PREMISES

6.01    Tenant's Permitted Use. Tenant shall use the Premises only for Tenant's Permitted Use as set forth in Section 1.10 above and shall not use or permit the Premises to be used for any other purpose without the prior written consent of Landlord which consent shall not be unreasonably withheld, delayed or conditioned. Tenant shall, at its sole cost and expense, obtain all governmental licenses and permits required to allow Tenant to conduct Tenant's Permitted Use. Landlord disclaims any warranty that the Premises are suitable for Tenant's use and Tenant acknowledges that it has had a full opportunity to make its own determination in this regard.

6.02    Compliance With Laws and Other Requirements.

(A)    Tenant shall cause the Premises to comply in all material respects with all laws, ordinances, regulations and directives of any governmental authority having jurisdiction pertaining to Tenant's particular use of the Premises, including without limitation any certificate of occupancy and any law, ordinance, regulation, covenant, condition or restriction affecting the Building or the Premises which in the future may become applicable to the Premises (collectively "Applicable Laws").

Landlord represents and warrants that at the time of tender possession of the Premises to Tenant and throughout the term, the Premises and the Building (excluding any alterations by Tenant) shall comply with all federal, state, municipal and all other laws, ordinances, rules and regulations applicable to the Premises and the Building and improvements therein.

(B)    Tenant shall not use the Premises, or permit the Premises to be used, in any manner which: (a) violates any Applicable Law; (b) causes or is reasonably likely to cause damage to the Building or the Premises; (c) violates a requirement or condition of any fire and extended insurance policy covering the Building and/or the Premises, or increases the cost of such policy; (d) constitutes or is reasonably likely to constitute a nuisance, annoyance or inconvenience to other tenants or occupants of the Building or its equipment, facilities or systems; (e) interferes with, or is reasonably likely to interfere with, the transmission or reception of microwave, television, radio, telephone or other communication signals by antennae or other facilities located in the Building; or (f) violates the Rules and Regulations described in Article XX.

(C)    In addition to any other amounts payable by Tenant to Landlord hereunder, Tenant shall pay to Landlord, as and when billed to Tenant and as additional rental, Tenant's Percentage Share of the cost of any improvements, capital expenditures, repairs or replacements to the Building, or any equipment or machinery used in connection with the Building, if

Initial

- 4 -

8.04   Tenant shall not commit or allow any waste or damage to be committed on any portion of the Premises, and at the termination of this Lease, by lapse of time or otherwise, Tenant shall deliver the Premises to Landlord, broom clean with all debris removed, in as good condition as at the date of first possession of Tenant, ordinary wear and tear excepted. Tenant understands the "ordinary wear and tear" does not mean Tenant shall be relieved of performing its obligations under this Lease relating to maintenance, repairs and replacements as provided for in the Lease. The cost and expense or any repairs necessary to restore the condition of the Premises shall be borne by Tenant, and if Landlord undertakes to restore the Premises, it shall have a right of reimbursement against Tenant.

8.05   **Landlord's Rights.**   Landlord and its contractors shall have the right, at all reasonable times, <u>and with a representative of Tenant present except in case of emergency,</u> to enter upon the Premises to make any repairs to the Premises or the building reasonably required or deemed reasonably necessary by Landlord and to erect such equipment, including scaffolding, as is reasonably necessary to effect such repairs. During the pendency of such repairs, Landlord shall use reasonable efforts to minimize any material interruption of Tenant's business; provided, that if such repairs by Landlord are required to remedy an emergency situation or to cure a breach or default by Tenant under this Lease, Landlord shall not be obligated try to minimize such interruption.

### ARTICLE IX - ALTERATIONS, ADDITIONS AND IMPROVEMENTS

9.01   **Landlord's Consent; Conditions.**   Tenant shall not make or permit to be made any alterations, additions, or improvements in or to the Premises ("Alterations") without the prior written consent of Landlord which consent shall not be unreasonably withheld, delayed or conditioned. Subject to the foregoing, Landlord may impose without <u>limitation the following</u> as a condition to such consent such requirements as Landlord in its sole discretion deems necessary or desirable including without limitation: Tenant's submission to Landlord, for Landlord's prior written approval, of all plans and specifications relating to the Alterations; Landlord's prior written approval of the time or times when the Alterations are to be performed; Landlord's prior written approval of the contractors and subcontractors performing work in connection with the Alterations; Tenant's receipt of all necessary permits and approvals from all governmental authorities having jurisdiction over the Premises prior to the construction of the Alterations; Tenant's written notice of whether the Alterations include the Handling of any Hazardous Materials, pursuant to Section 6.03; Tenant's delivery to Landlord of such bonds and insurance as Landlord shall reasonably require; and Tenant's payment to Landlord of all costs and expenses incurred by Landlord because of Tenant's Alterations, including but not limited to costs incurred in reviewing the plans and specifications for, and the progress of, the Alterations.

9.02   **Performance of Alterations Work.**   All work relating to the Alterations shall be performed in compliance with the plans and specifications approved by Landlord, all applicable laws, ordinances, rules, regulations and directives of all governmental authorities having jurisdiction and the requirements of all carriers of insurance on the Premises and the Building, the Board of Underwriters, Fire Rating Bureau, or similar organization. All work shall be performed in a diligent, first-class workmanlike manner and so as not to unreasonably interfere with any other tenants or occupants of the Building. All costs incurred by Landlord relating to the Alterations shall be payable to Landlord by Tenant as additional rent upon demand.

9.03   **Liens.**   Tenant shall pay when due all costs for work performed and materials supplied to the Premises <u>by or on account of Tenant.</u> Tenant shall keep Landlord, the Premises and the Building free from all liens, stop notices and violation notices relating to the Alterations or any other work performed for, materials furnished to or obligations incurred by Tenant and Tenant shall protect, indemnify, hold harmless and defend Landlord, the Premises and the Building of and from any and all loss, cost, damage, liability and expense, including attorneys' fees, arising out of or related to any such liens or notices. Further, Tenant shall give Landlord not less than seven (7) business days prior written notice before commencing any Alterations in or about the Premises to permit Landlord to post appropriate notices of non-responsibility. Tenant shall also secure, prior to commencing any Alterations, at Tenant's sole expense, a completion and lien indemnity bond satisfactory to Landlord for such work. During the progress of such work, Tenant shall, upon Landlord's request, furnish Landlord with sworn contractor's statements and lien waivers covering all work theretofore performed. Tenant shall satisfy or otherwise discharge all liens, stop notices or other claims or encumbrances within ten (10) twenty (20) days after Landlord notifies Tenant in writing that any such lien, stop notice, claim or encumbrance has been filed. If Tenant fails to pay and remove such lien, claim or encumbrance within such ten (10) twenty (20) days, Landlord, at its election, may pay and satisfy the same and in such event the sums so paid by Landlord, with interest from the date of payment at the rate set forth in Section 4.06 hereof for amounts owed Landlord by Tenant shall be deemed to be additional rent due and payable by Tenant at once without notice or demand.

9.04   **Lease Termination.**   Except as provided in this Section 9.04, upon expiration or earlier termination of this Lease Tenant shall surrender the Premises to Landlord in the same condition as when received, subject to reasonable wear and tear. All Alterations shall become a part of the Premises and shall become the property of Landlord upon the expiration or earlier termination of this Lease, unless Landlord shall, by written notice given to Tenant <u>at least thirty (30) days prior to the Expiration Date</u>, require Tenant to remove some or all of Tenant's Alterations, in which event Tenant shall promptly remove the designated Alterations and shall promptly repair any resulting damage, all at Tenant's sole expense. All business and trade fixtures, machinery and equipment, furniture, movable partitions and items of personal property owned by Tenant or installed by Tenant at its expense in the Premises shall be and remain the property of Tenant; upon the expiration or earlier termination of this Lease, Tenant shall, at its sole expense, remove all such items and repair any damage to the Premises or the Building caused by such removal. If Tenant fails to remove any such items or repair such damage promptly after the expiration or earlier termination of the Lease, Landlord may, but need not, do so with no liability to Tenant, and Tenant shall pay Landlord the cost thereof upon demand.

### ARTICLE X - INDEMNIFICATION AND INSURANCE

10.01   Indemnification. Tenant and Tenant's officers and directors agrees to protect, indemnify, hold harmless and defend Landlord <u>and its</u> and any mortgagee or ground lessor, and each of their respective partners, directors, officers, agents and employees, successors and assigns, regardless of any negligence of, or imputed to Landlord as owner of the Building, Premises or underlying real property involved in an injury, from and against: <u>with respect to any liability arising out of Tenant's occupancy of said Premises</u> including without limitation the following:

(A)   any and all loss, cost, damage, liability or expense as incurred (including but not limited to actual attorneys' fees and legal costs) arising out of or related to any claim, suit or judgment brought by or in favor of any person or persons for damage, loss or expense due to, but not limited to, bodily injury, including death, or property damage sustained by such person or persons which arises out of, is occasioned by or is in any way attributable to the use or occupancy of the Premises or any portion of the Building by Tenant or the negligent acts or omissions of Tenant or its agents, employees, contractors, clients, invitees or subtenants except that caused by the sole active negligence of Landlord or its agents or employees. Such loss or damage shall include, but not be limited to, any injury or damage to, or death of, Landlord's employees or agents or damage to the Premises or any portion of the Building.

Initial

- 7 -

~~agreement within the meaning of the Uniform Commercial Code as in effect in the State of Louisiana. Landlord, in addition to the rights prescribed in this Lease, shall have a lien upon, and Tenant grants to Landlord an interest in, all of Tenant's property now or hereafter located upon the Premises including without limitation all of Tenant's equipment, inventory, fixtures, accounts, general intangibles and other items of personal property or fixtures located upon the Premises whether now owned or hereafter acquired, and all additions, substitutions, replacements and accessions thereto, and all proceeds of the foregoing, to secure the payment to Landlord of the various amounts provided in this Lease. The Tenant agrees to and shall execute and deliver to Landlord such "Financing Statements," continuation statements, and provide such further assurances as Landlord may from time to time consider necessary or desirable to create, perfect and preserve the lien and security interest described above and all additions, substitutions, replacements and accessions thereto, and all proceeds of its or their sale or other disposition. The Landlord, at the expense of Tenant, may cause such Financing Statements, continuation statements, and assurances to be recorded and re-recorded, filed and re-filed, and renewed or continued, at such times and places as may be required or permitted by law to create, perfect and preserve such liens and security interests. In the event Tenant fails to promptly execute and return to Landlord such Financing Statements or continuation statements as Landlord may request to create, preserve and perfect its lien, Tenant shall and does hereby designate Landlord to act as Tenant's agent for the sole and limited purpose of executing and filing such Financing Statements or continuation statements and any such execution by Landlord pursuant to this Lease shall be effective and binding upon Tenant as though executed originally by Tenant, and under such circumstances Tenant authorizes Landlord to sign such financing and continuation statements. Tenant's designation of Landlord as agent hereunder shall not be subject to revocation until this Lease is terminated.~~

WITNESS WHEREOF, the parties hereto have executed this lease as of the date first above written.

| TENANT: | LANDLORD: |
|---|---|
| SPRAY-TECH, INC., a Florida corporation | FIRST INDUSTRIAL, L.P., a Delaware limited partnership |
| | By: FIRST INDUSTRIAL REALTY TRUST, INC. a Maryland corporation, its general partner |
| By: *[signature]* | *[signature]* |
| Ronald P. Douglass | Daniel P. Roulin, CCIM |
| Its: Authorized Agent | Its: Regional Director |

ATTEST:

WITNESSES:

*[signatures]*

WITNESSES:

*[signatures]*

**SELF INSURANCE**

Intervention per Section 10.09 above:
For the purposes of Section 10.09 of this Lease only and not as: (i) a Tenant under this Lease; and (ii) a Guarantor of this Lease, Sears, Roebuck and Co. hereby signs this Lease.

SEARS, ROEBUCK AND CO.

By: *[signature]*
Ronald P. Douglass
Its: Vice President Real Estate

WITNESSES:

*[signatures]*

Initial

- 17 -