HEARING DATE: March 21, 2019 at 10:00 a.m.
OBJECTION DEADLINE: March 14, 2019 at 4:00 p.m.

Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

Matthew A. Olins (admission *pro hac vice* pending)
Ellen M. Chapelle (admission *pro hac vice* pending)
Vanessa R. Tiradentes (admission *pro hac vice* pending)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
312.236.3003
molins@gouldratner.com
echapelle@gouldratner.com
vtiradentes@gouldratner.com

*Attorneys for 233 S. Wacker, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF MOTION OF 233 S. WACKER, LLC
FOR RELIEF FROM AUTOMATIC STAY**

PLEASE TAKE NOTICE OF THE FOLLOWING:

A hearing to consider the Motion (the "*Motion*") of 233 S. Wacker, LLC ("*233*") for Relief from the Automatic Stay will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on March 21, 2019 at 10:00 a.m.

Objections, if any, to the Motion must be made no later than March 14, 2019 at 4:00 p.m. (the "*Objection Deadline*") and be in writing, with a hard copy delivered to the Chambers of the

Honorable Judge Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601 and The Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.); conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; be filed with the Bankruptcy Court; and be served in accordance with the provisions of the Amended Order Implementing Certain Notice and Case Management Procedures and General Order M-399 of this Court on the following parties:

1. The Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates IL 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.);

2. Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors;

3. Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10036 (Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R. Howard, Esq.), attorneys for Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent;

4. Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, NY, 10017 (Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.), attorneys for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility;

5. Cleary, Gottlieb, One Liberty Plaza, New York, NY, 10006 (Attn: Sean A. O'Neal, Esq.), attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility;

6. Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178 (Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.), attorneys for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes;

7. Seyfarth Shaw LLP, 620 Eighth Avenue, New York, NY 10018 (Attn: Edward M. Fox, Esq.), attorneys for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes;

8. Carter Ledyard & Milburn LLP, 2 Wall Street, New York, NY 10015 (Attn: James Gadsden, Esq.), attorneys for The Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes;

9. Locke Lord LLP, 111 South Wacker Drive, Chicago, IL 60606 (Attn: Brian A. Raynor, Esq.), attorneys for the Pension Benefit Guaranty Corporation;

10. Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.), attorneys for the Official Committee of Unsecured Creditors (the "*Creditors' Committee*"); and

11. Gould & Ratner LLP, 222 North LaSalle Street, Suite 800, Chicago, IL 60601, Attn: Matthew A. Olins, Ellen M. Chapelle, Vanessa R. Tiradentes, molins@gouldratner.com, echapelle@gouldratner.com, vtiradentes@gouldratner.com, attorneys for 233 S. Wacker, LLC.

If no objection is timely filed and served in accordance with the Case Management Procedures, then 233 may, on or after the Objection Deadline, submit the proposed order to the Court substantially in the form attached to the Motion, which may be entered without further notice or opportunity to be heard.

Dated:  February 1, 2019

Respectfully submitted,
**233 S. WACKER, LLC**

By:/s/ Mark Frankel
    One of Its Attorneys
Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

By:/s/ Matthew A. Olins
    One of Its Attorneys
Matthew A. Olins (admission *pro hac vice* pending)
Ellen M. Chapelle (admission *pro hac vice* pending)
Vanessa R. Tiradentes (admission *pro hac vice* pending)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
312.236.3003
molins@gouldratner.com echapelle@gouldratner.com
vtiradentes@gouldratner.com

HEARING DATE: **March 21, 2019 at 10:00 a.m.**
OBJECTION DEADLINE: **March 14, 2019 at 4:00 p.m.**

Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

Matthew A. Olins (admission pro hac vice pending)
Ellen M. Chapelle (admission pro hac vice pending)
Vanessa R. Tiradentes (admission pro hac vice pending)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
312.236.3003
molins@gouldratner.com
echapelle@gouldratner.com
vtiradentes@gouldratner.com

*Attorneys for 233 S. Wacker, LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

### MOTION OF 233 S. WACKER, LLC
### FOR RELIEF FROM AUTOMATIC STAY

233 S. Wacker, LLC ("*233*"), by and through its attorneys, Backenroth Frankel & Krinsky, LLP and Gould & Ratner, LLP, moves this Court for relief from the automatic stay, pursuant to section 362(d)(1) of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), so that 233 may assert and prosecute its counterclaim (the "*Counterclaim*") and take any other necessary action in state court litigation that is being prosecuted by certain Debtors in these jointly administered bankruptcy cases. In support of this Motion, 233 respectfully states as follows:

## INTRODUCTION

1.    Debtors Sears, Roebuck and Co. ("*Sears, Roebuck*") and Sears Holdings Corporation (collectively, "*Sears*") are aggressively pursuing their Illinois state court lawsuit (the "*State Court Litigation*") seeking to compel 233 to sell Sears a 60-foot high sculpture from the 1970s (the "*Sculpture*") that was formerly in the lobby of the Willis Tower located in Chicago, Illinois and that now sits in storage. Sears should not prevail in the State Court Litigation; however, even if it does, Sears will be required to pay 233 $3,860,625.00 plus the additional costs of removing and storing the Sculpture.

2.    It is unclear why Sears chooses to spend its limited resources engaging in art speculation and collection, or even if it has the necessary funds or Court authorization to do so. However, so long as Sears seeks affirmative relief as a plaintiff in the State Court Litigation, 233 must have the right to defend itself. This includes 233's right to pursue its Counterclaim against Sears for Sears's breach of its duty of good faith and fair dealing in connection with its obligations to market the Sculpture and share the proceeds of a sale with 233.

3.    This Court should not permit Sears to use the protective shield of the automatic stay as a sword. Rather, this Court should find, consistent with the caselaw cited below, as well as basic due process, that cause exists to grant 233 relief from the stay so that 233 may pursue its Counterclaim and take any other necessary act in the State Court Litigation. Additionally, complete adjudication of the State Court Litigation, judicial economy, and lack of hardship to Sears are further examples of cause to grant 233 relief form the automatic stay. Finally, even the factors used by the United States Court of Appeals for the Second Circuit when considering a plaintiff's request for stay relief to pursue litigation against a debtor in another forum establish cause for granting 233 relief from the stay.

## FACTUAL BACKGROUND

4. In 2010, Sears, Roebuck attempted to exercise its option under a certain Option Agreement (the "*Option Agreement*") to purchase the Sculpture, which is owned by 233 and was formerly installed in the lobby of the Building. The Building was formerly owned by 233. The Sculpture was made in 1974, and one of its parts is 60 feet tall. The current owner of the Building, who is in the process of renovating and modernizing its lobby, was not interested in acquiring the Sculpture when it bought the Building from 233.[1]

5. Sears and 233 entered into a Settlement Agreement dated July 1, 2013 (the "*Settlement Agreement*") that resolved prior litigation concerning the Sculpture and the Option Agreement. Pursuant to the Settlement Agreement, Sears agreed to attempt to effectuate a sale of the Sculpture to a third party during a two-year sale period with the proceeds of such sale to be split between Sears and 233 pursuant to the terms of the Settlement Agreement. In the event that Sears was unable to sell the Sculpture, Sears could acquire title to the Sculpture from 233 by paying a sum specified by the Settlement Agreement. Although the Settlement Agreement gave Sears sole control and complete discretion with respect to any and all efforts to effectuate a sale to a third party, such discretion is, of course, limited by the implied duty of good faith and fair dealing under Illinois law.

6. On March 27, 2015, at the end of the contemplated sale period, Sears failed to sell the Sculpture, and the parties agreed to extend the sale period under the Settlement Agreement to June 30, 2016. Close to the end of the extension period, Sears received an offer to purchase the Sculpture, which would have resulted in proceeds to 233 greater than $3.8 million, but Sears summarily and unreasonably rejected the offer with no counter.

7. On June 30, 2016, Sears served notice to 233 that Sears would purchase the

---

[1] The Sculpture is now in storage pending the outcome of the State Court Litigation.

- 3 -

Sculpture for $3,860,625.00, which would have deprived 233 of the benefit of its share of the prior offer that Sears rejected. Sears's rejection of the offer it received and attempt to purchase the Sculpture for itself constituted a breach of the Settlement Agreement relieving 233 of any obligation to sell the Sculpture to Sears.

8. On August 4, 2016, Sears initiated State Court Litigation in the Circuit Court of Cook County, Illinois, Chancery Division (the "*State Court*"), Case No. 2016-CH-10308. 233 then filed the Counterclaim for Sears's breach of its duty of good faith and fair dealing in connection with Sears's marketing efforts and rejection of the offer it received.

9. After the State Court denied Sears's motion to dismiss 233's Counterclaim, the parties engaged in extensive discovery, which is almost completed.

10. On October 15, 2018, Sears and certain of its affiliates (collectively with Sears, the "*Debtors*") commenced voluntary cases under chapter 11 of the Bankruptcy Code in this Court. The filing of these cases automatically stayed 233's Counterclaim pursuant to section 362(a) of the Bankruptcy Code. 233's Counterclaim is essential to its defense and the adjudication of the State Court Litigation.

11. Sears has informed 233 and the State Court that it wishes to proceed with the State Court Litigation, and this Court has approved the Debtors' retention of counsel in the State Court Litigation to do so. To the extent Sears prevails in the State Court litigation and the State Court orders specific performance of the sale, the Debtors will be required to pay 233 $3,860,625.00 plus costs of removal and storage in exchange for the Sculpture. Although it is not apparent from the documents filed in this case that the Debtors have available funds or authorization to spend millions of dollars to purchase art, counsel for Sears in the State Court

Litigation has informed counsel for 233 that such funds will be available if Sears prevails.[2]

## JURISDICTION AND VENUE

12. This court has jurisdiction of the subject matter hereof pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

13. The statutory bases for this Motion are section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001.

## RELIEF REQUESTED AND BASES THEREFOR

14. 233 requests that this Court grant 233 relief from the automatic stay for cause pursuant to section 362(d)(1) of the Bankruptcy Code so that 233 may assert and prosecute its Counterclaim and take any other action necessary in the State Court Litigation.

15. Section 362(d)(1) of the Bankruptcy Code provides "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay… such as by terminating, annulling, modifying or conditioning such stay – (1) for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define the term "cause;" however, courts recognize "cause" as an intentionally broad and flexible concept that must be determined on a case-by-case basis. *In re Project Orange Assocs.*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citing In re Brown, 311 B.R. 409, 412-13 (E.D. Pa. 2004. The decision of whether to grant relief from an automatic stay is ultimately a matter of the court's discretion. *Sonnax Industries, Inc. v. Tri*

---

[2] It is unclear why the Debtors would choose to use their limited resources for art speculation and collection rather than pay creditors and keep more of their stores open. However, if the Debtors are in fact authorized to pay their State Court counsel what their State Court counsel estimates to be $20,000 per month, *see* Docket No. 1334 at p. 5 of 6, for the highly unlikely opportunity to spend $3,860,625.00 plus removal and storage costs (if, and only if Sears prevails) to purchase the Sculpture, then 233 must be allowed to defend itself. However, to the extent that Sears's counsel's representation that the Debtors have $3,860,625.00 available to purchase the Sculpture is revealed to be untrue, 233 reserves its rights and remedies as it is now forced to incur legal fees and expenses in connection with the this case and the State Court Litigation.

*Component Products Corp. (In re Sonnax Industries)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

I.   **Cause Exists To Grant 233 Relief From the Automatic Stay Because 233 Must Be Able To Defend Itself And Because The State Court Must Be Able To Adjudicate The State Court Litigation Properly.**

16.   Sears, and not 233, is insisting upon continuing the State Court Litigation. But Sears may not use the shield of the automatic stay as a sword to prevent 233 from defending itself. Therefore, cause exists for this Court to lift the automatic stay so that 233 may assert its Counterclaim and take any other necessary action. Further, the Counterclaim is an essential part of the State Court Litigation. Therefore, cause exists for this Court to lift the automatic stay so that the State Court may adjudicate the State Court Litigation properly.

17.   A central purpose of the automatic stay is to "give the debtor a breathing spell from his creditors." H.R.Rep. No. 95-595, 95th Cong., 1st Sess. at 340 (1977). A debtor should never be able to invoke the shield of the automatic stay, and then turn it in to a sword to deprive a defendant of its due process right to defend itself. *See Construction Corp., v. City of New York (In re Jandous Electric)* 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989) ("A debtor may not use the automatic stay as a sword when the debtor is the plaintiff in a pending nonbankruptcy suit. The purpose of the stay is the protection of the debtor, but when the debtor is in the position of the assailant rather than the defendant, it would be inequitable to invoke the stay against the defendant's counterclaim…."); *In re Overmyer*, 32 B.R. 597, 601 (Bankr. S.D.N.Y. 1983) ("Where a debtor seeks affirmative relief as a plaintiff in a lawsuit and then invokes the protection of the automatic stay on a counterclaim, the situation warrants very careful scrutiny. In such instance, a court must be cautious to avoid a decision which would convert Code § 362 from a shield into a weapon.").

18.   Indeed, courts in this district have looked to the Second Circuit pre-Bankruptcy Code case of *Bohack Corp. v. Borden, Inc.* for caution against permitting a debtor/plaintiff to

invoke the stay when faced with counterclaims. *See Bohack Corp*, 599 F.2d 1160, 1168 (2nd Cir. 1979). Accordingly, when a "debtor brings a lawsuit and then invokes the automatic stay to prevent the defendant from asserting counterclaims, the Second Circuit has stated that the 'the situation warrants a very thoughtful scrutiny.'" *In re Wedtech Corp.*, 87 B.R. 279, 289 (Bankr. S.D.N.Y. 1988) (quoting *Fox & Co. v. Saxon Industries (In re Saxon Industries, Inc.*), 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) (quoting *Bohack Corp.*, 599 F.2d at 1168)). "The purpose of the (automatic stay) is the protection of the debtor, but when the debtor is in the position of assailant rather than victim, the potential for abuse of that purpose is manifest." *Saxon Industries*, 43 B.R. at 67 (quoting *Bohack* 599 F.2d at 1168). Additionally, "there is ample caselaw in this Circuit supporting the [counter-plaintiff's] argument that counterclaims asserted against a debtor do not violate the automatic stay." *Gruber v. Victor*, No. 95 CIV 2285, 1996 WL 492991 at *4 (S.D.N.Y. Aug. 28, 1996).

19. For example, in *Wedtech*, the non-debtor/defendant sought relief from the stay to assert counterclaims against the debtor/plaintiff because the debtor "has placed itself in the role of an 'assailant' rather than the victim," judicial economy, the balance of hardships, and the allegations at issue. *Wedtech*, 87 B.R. at 290. This Court agreed with the non-debtor/defendant, noting that where the debtor/plaintiff was the "assailant, it must consent," (and it even had consented at least for certain purposes) to relief from stay. *Id.* This Court further noted that were the stay not to be lifted for *all* purposes, the result would be "highly inequitable in light of [the debtor's] suit against [non-debtor/defendant]." *Id.* In fact, this Court went even further than what 233 seeks here by allowing the non-debtor/defendant to implead the debtor in certain civil actions. *Id.* at 290.

20. *Wedtech*, cites *Saxon Industries*, an earlier decision by this Court that also found that "it would clearly be inequitable to allow [the debtor/plaintiff] to use § 362 to prevent [the

non-debtor/defendant] from pressing counterclaims" and also allowed the non-debtor to implead the debtor in other litigation. *Saxon Industries,* 43 B.R. at 67.

21. Like the courts in the cases cited above, this Court should not permit the inequity of allowing Sears to use the shield of the automatic stay as a sword. Rather, so long as Sears insists on prosecuting its claims in the State Court Litigation, justice and due process require that 233 be able to defend itself, which is the point of the Counterclaim. Additionally, a complete adjudication of the State Court Litigation requires the State Court, which is already familiar with the facts at issue in the State Court Litigation and is knowledgeable about the area of law, to considerer the Counterclaim and all other defenses 233 has in connection with the Sears's claims, which all arise from the same transaction and events. Therefore, judicial economy favors granting relief from the stay. Finally, there will be no hardship on Sears as it is the one insisting on pursuing the State Court Litigation,   Therefore, cause clearly exists to lift the automatic stay.

**II.    The *Sonnax* Factors Also Show Cause For This Court To Grant Relief From The Automatic Stay.**

22. 233 is the defendant in the State Court Litigation and, as discussed above, is entitled to relief from the stay to assert its defenses (which include the Counterclaim) in the State Court Litigation that Sears insists on pursing. However, even if this Court were to use the factors that the United States Court of Appeals for the Second Circuit applied to a case where the non-debtor/plaintiff sought stay relief to pursue its action in another forum, cause still exists to grant 233 relief from the stay.

23. When considering whether cause exists to lift the stay upon the plaintiff's request to continue litigation in another forum against the debtor, the Second Circuit, and other courts following it, have used a non-exclusive list of factors that may be relevant for courts to consider:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized

tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286 (citing *In re Curtis*, 40 B.R. 795, 799-80 (Bankr. D. Utah 1984). *See also In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) ("In *Sonnax*, however, the Court adopted twelve factors, enunciated in [*Curtis*], which are weighed to determine whether to allow a creditor to continue litigation in another forum"); *In re Personal Communications Devices,* LLC, 556 B.R. 45, 59-60 (Bankr. S.D.N.Y. 2016) (citing *Sonnax*, 907 F.2d at 1286). However, not all of the factors are relevant in every case. *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir.1999). Only those factors that are relevant need be considered, and the court need not assign them equal weight. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994) (citing *Sonnax*, 907 F.2d at 1285; *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992). "When applying [the Sonnax factors] and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

    A.    **Stay Relief Will Result in a Complete Resolution of the Issues.**

24.    The entire dispute between the parties is encapsulated in the State Court Litigation. However, consideration of 233's Counterclaim is essential for the resolution of the State Court Litigation. The issues presented in both the Sears's complaint and the Counterclaim in the State Court Litigation involve the same facts and circumstances and are so are so intertwined that a complete resolution of the issues is impossible without lifting of the automatic

- 9 -

stay. 233's Counterclaim must be heard by the State Court in order for the State Court to resolve the litigation fully.

      **B.    233's Pursuit of Its Counterclaim Lacks any Connection, and Will Not Interfere, with the Debtors' Bankruptcy Cases.**

25.    233's defense of itself in the State Court Litigation is entirely unrelated to the matters at issue in the Debtors' bankruptcy cases. Indeed, the State Court Litigation predated these bankruptcy cases and concerns events entirely unrelated to them. Additionally, it is Sears that insists on pursuing the State Court Litigation. If the State Court Litigation interfered with its own bankruptcy cases, it would not pursue it.

      **C.    The State Court Litigation Is Before A Specialized Court.**

26.    The State Court Litigation is currently pending before the State Court, which is the Chancery Division of the Circuit Court of Cook County, Illinois. The Chancery Division hears equitable matters, such as claims for specific performance. It is the most familiar with Illinois equity law, and the court most qualified to decide the State Court Litigation and the Counterclaim.

      **D.    The Counterclaim Does Not Prejudice the Interests of other Creditors.**

27.    The only creditor with an interest in the Counterclaim is 233. No other creditors will be prejudiced by the adjudication of the State Court Litigation by the State Court.

      **E.    The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation Favor Stay Relief.**

28.    The State Court is already familiar with the facts at issue in the State Court Litigation and is most knowledgeable about the area of law. Sears's claim and the Counterclaim all arise from the same transaction and events. Therefore, judicial economy, and the expeditious and economical resolution of the State Court Litigation, favor granting relief from the stay.

    **F.    The Parties Are Almost Done with Discovery and Are Almost Ready for Dispositive Motions and Trial If Necessary.**

29.    Since Sears filed the State Court Litigation, the parties have engaged in extensive written and fact discovery. Prior to the Debtors' bankruptcy petition date, the parties were at the tail end of the discovery process, having exchanged rebuttal expert disclosures. There remains only limited discovery before the parties will be ready to proceed with dispositive motions and trial if necessary, assuming Sears insists on pursuing the State Court Litigation.

    **G.    Lifting the Stay Does Not Unjustly Impact the Parties and Balances the Harm that Would Be Imposed on 233 Were the Stay Not Lifted.**

30.    Sears seeks to continue the State Court Litigation. Permitting 233 to defend itself does not impose any unjust impact upon Sears. To the contrary and as discussed above, not lifting the stay to permit 233 to defend itself would allow Sears use the shield of the automatic stay as a sword, and deprive 233 of its due process rights.

31.    Clearly a sufficient number of *Sonnax* factors are relevant here, and they all weigh in favor of granting to 233 relief from the stay to pursue the Counterclaim and take any other necessary action in State Court Litigation.

**III.    The Fourteen-Day Stay Provision Of Federal Rule of Bankruptcy Procedure 4001(a)(3) Should Be Waived.**

32.    233 further requests that the fourteen-day stay provision of Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived. A stay of an order granting it relief from the automatic stay is unnecessary under the circumstances.

**NOTICE**

33.    Notice of this Motion will be provided in accordance with the procedures set forth in the Amended Order Implementing Certain Notice and Case Management Procedures [Docket No. 405]. 233 respectfully submits that no further notice is required.

**NO PRIOR REQUEST**

34.No previous request for the relief sought herein has been made by 233 to this or any other Court.

WHEREFORE, 233 respectfully requests that this grant this Motion and enter an order in the proposed form attached hereto (i) granting 233 relief from the automatic stay to assert and prosecute its Counterclaim and to take any other action necessary in the State Court Litigation, (ii) waiving the fourteen-day stay provision of Federal Rule of Bankruptcy Procedure 4001(a)(3), and (iii) granting 233 such other and further relief as this Court deems just.

Dated:  February 1, 2019Respectfully submitted,
**233 S. WACKER, LLC**


By:/s/ Mark Frankel
    One of Its Attorneys
Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

By:/s/ Matthew A. Olins
    One of Its Attorneys
Matthew A. Olins (admission *pro hac vice* pending)
Ellen M. Chapelle (admission *pro hac vice* pending)
Vanessa R. Tiradentes (admission *pro hac vice* pending)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
312.236.3003
molins@gouldratner.com echapelle@gouldratner.com
vtiradentes@gouldratner.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SEARS HOLDING CORPORATION, *et al.*, | ) Case No. 18-23538 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**ORDER GRANTING MOTION OF 233 S. WACKER, LLC**
**FOR RELIEF FROM AUTOMATIC STAY**

Upon the motion of Motion (the "*Motion*") of 233 S. Wacker, LLC ("*233*") for Relief from Automatic Stay, the Court having jurisdiction to consider the Motion and the relief requested therein; consideration of the Motion and the relief requested therein being a core proceeding; venue being proper before this Court; due and proper notice of the Motion having been provided, and no other or further notice need be provided; the Court having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS ORDERED THAT**:

1.    The Motion is granted.

2.    Pursuant to 11 U.S.C. § 362(d)(1), the automatic stay of 11 U.S.C. § 362 is terminated with respect to 233's assertion and prosecution of its counterclaim in Case No. 2016-CH-10308 pending in the Circuit Court of Cook County, Illinois, Chancery Division (the "*State Court Litigation*") and with respect to 233 taking any other necessary act in the State Court Litigation.

3. The fourteen-day stay provision of Federal Rule of Bankruptcy Procedure 4001(a)(3) with respect to this Order is hereby waived.

Dated:_____

_____, New York

_____
UNITED STATES BANKRUPTCY JUDGE