**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| SEARS HOLDING CORPORATION, *et al.*,[1] ) | Case No. 18-23538 (RDD) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**OBJECTION AND RESERVATION OF RIGHTS OF WHIRLPOOL CORPORATION TO DEBTORS' ASSUMPTION AND ASSIGNMENT OF CONTRACT AND PROPOSED CURE AMOUNT**

Whirlpool Corporation ("Whirlpool"), by and through undersigned counsel, hereby submits this Objection ("Objection") to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction* [ECF No. 1731] ("Notice of Cure") and the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sales Transaction* [ECF No. 1774] ("Supplemental Notice of Cure"), and respectfully states as follows.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2 148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591 ); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); K.LC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531 ); Sears Brands Business Unit Corporation ( 4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRE Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

**Preliminary Statement**

1.  Whirlpool and Debtors, Sears Roebuck & Co. and Kmart Corporation (collectively, "Sears"), are parties to an Alliance Agreement for Home Appliances (the "Alliance Agreement"). Under the Alliance Agreement, Whirlpool manufactured and supplied Sears with Kenmore-branded appliances and related products. The Alliance Agreement allowed Sears to purchase on credit, subject to a credit limit. During the prepetition period, Sears took full advantage of this financial accommodation. As of its bankruptcy filing, Sears was more than $10 million in default on its payment obligations under the Alliance Agreement.

2.  Sears has recently given notice that it may seek to assume and assign the Alliance Agreement to Transform Holdco LLC ("Buyer" or "New Sears"), the successful bidder at the Debtors' recent auction of their assets. Buyer is a newly-formed entity that was created by ESL Investments, Inc. ("ESL") specifically for the purpose of acquiring Debtors' assets, including the Sears business and Kenmore brands.

3.  Whirlpool has concerns about Buyer's ability to provide adequate assurance of future performance. Accordingly, Whirlpool objects to any request by Sears to assume and assign the Alliance Agreement on its current terms, which provide for a significant provision of financial accommodation. Such assumption and assignment would be improper for two reasons.

4.  First, as a condition of assigning the Alliance Agreement to Buyer, Sears must provide adequate assurance of future performance by Buyer. *See* 11 U.S.C. § 365(f)(2). While Buyer has provided some limited information to Whirlpool, such information has been insufficient to date. In particular, Buyer has offered certain projections of future revenue, EBITDA, and operating cash flow for the next several years. Given the challenges ESL has faced realizing earlier projections, however, Whirlpool cannot reasonably rely on such projections as adequate assurance.

2

5.      Buyer has also pointed out that the New Sears will have a substantially stronger balance sheet than Sears upon closing. A stronger balance sheet, however, does not provide Whirlpool with meaningful assurance in the event that New Sears encounters significant liquidity challenges, which is Whirlpool's concern.

6.      Importantly, there are several ways that Buyer could provide Whirlpool with adequate assurance of future performance, including agreeing to purchase with cash-in-advance ("CIA"). While Whirlpool believes that CIA would best serve both parties' interests, it has also proposed alternative forms of adequate protection to Buyer, including forms of adequate assurance that would allow New Sears to purchase on credit. To date, however, Buyer has not accepted any of Whirlpool's proposals.

7.      Second, even apart from adequate assurance, Section 365(c)(2) of the Bankruptcy Code provides that a debtor may not assume a contract "to make a loan, or extend other debt financing or other financial accommodations." 11 U.S.C. § 365(c)(2). Here, the Alliance Agreement provides for financial accommodation to Sears insofar as it requires Whirlpool to finance Sears's purchases. Case law recognizes that where, as here, such financing is "integral" to a vendor contract, the contract constitutes a financial accommodation that is not subject to assumption. As a financial accommodation, the Alliance Agreement cannot be assumed (and assigned to Buyer) without Whirlpool's consent.[2]

8.      Finally, Whirlpool reserves its right to object to the sufficiency of the Debtors' proposed cure amount for the Alliance Agreement. The Debtors have proposed two separate and inconsistent cure amounts for that contract. Initially, the Debtors proposed a cure amount of

---

[2] The terms of the Alliance Agreement are confidential and commercially sensitive. To the extent that Whirlpool cannot resolve this objection with Buyer, Whirlpool will file relevant excerpts of the Alliance Agreement under seal with the Court.

$13,434,856 for the Alliance Agreement, but then filed a supplemental notice of proposed cure amount that proposed $0 for the Alliance Agreement as amended. Whirlpool has sought clarification from the Debtors on this change, but the Debtors have yet to respond. Accordingly, Whirlpool files this objection to reserve its right to obtain prompt cure of all amounts owing under the Alliance Agreement as a condition of assumption and assignment of that contract.

**Background**

9. On January 18, 2019, Debtors announced that the ESL-created Buyer was the successful bidder at the auction the Debtors had conducted pursuant to the Global Bidding Procedures Order (ECF No. 816), and gave notice that the hearing for approval of the sale had been scheduled for February 4, 2019. *See* ECF No. 1730. On the same day, Debtors filed the Notice of Cure. *See* ECF No. 1731.

10. The Notice of Cure identified the Alliance Agreement as among the executory contracts that the Debtors could seek to assume and assign to Buyer and proposed a total cure amount of $13,434,856. *See id.*, Ex. A at 316.

11. On January 22, 2019, Sears served Whirlpool with a Notice of Cure that appended as an exhibit what was described as Adequate Assurance Information in the form of a letter from Buyer dated January 18, 2019 ("Adequate Assurance Letter").[3]

12. The Adequate Assurance Letter did not provide Whirlpool with sufficient assurance. Under the Alliance Agreement, Whirlpool could be required to extend substantial credit to Buyer. The Adequate Assurance Letter did not explain how Buyer would satisfy its obligations

---

[3] Whirlpool understands that Buyer takes the position that the specific adequate assurance information provided on behalf of Buyer is confidential pursuant to paragraph 317 of the Global Bidding Procedures Order (ECF No. 816). In deference to but without necessarily agreeing with that position, Whirlpool has not disclosed any of the specific adequate assurance information provided by the Buyer.

going forward under the Alliance Agreement. Instead, the letter only described in general terms Buyer's plans for the Sears business.

13. The letter, moreover, did not offer any of the detailed information that Whirlpool would typically require before extending credit, even for a company with a strong financial history.

14. Indeed, the Adequate Assurance letter did not propose any of the commonly-accepted means of providing adequate assurance to counterparties. Buyer, for example, did not offer to provide any guarantee from a financially-secured third party to Whirlpool in the event that New Sears defaulted on its obligations. Nor did Buyer identify a reserve or other security for its obligations under the Alliance Agreements.

15. The Adequate Assurance did not even reference the Alliance Agreement. Whirlpool thus has no insight on the Buyer's plans for the agreement.

16. Upon receiving the Adequate Assurance Letter, Whirlpool advised both Sears and Buyer that the Adequate Assurance Information was insufficient. Whirlpool made clear that, unless Buyer could provide the adequate assurance required by the Bankruptcy Code, it would object to the assumption and assignment of the Alliance Agreement. In addition, Whirlpool explained that, because the Alliance Agreement provided a financial accommodation to Sears, the contract could not be assumed or assigned without Whirlpool's consent.

17. On January 24, 2019, Buyer sent Whirlpool additional adequate assurance information. The additional information consisted of projections of New Sears's revenue, EBITDA, operating cash flow, and net availability under the proposed revolving credit facility. Whirlpool reviewed this information carefully but explained to Buyer that it could not rely on their future projections as adequate assurance.

18. Buyer responded that, even apart from its projected operating results, New Sears would have a stronger balance sheet than Sears. But as Whirlpool explained, reduced leverage did not necessarily address the operational issues that drove Sears into bankruptcy. Nor could an improved balance sheet provide adequate assurance to Whirlpool in the absence of any security that Whirlpool would have access to New Sears's de-levered assets in the event that New Sears experienced significant liquidity issues.

19. Whirlpool nevertheless has engaged Buyer's representatives, on both the legal side and the business side, in discussions regarding ways that the Buyer could provide adequate assurance of future performance to Whirlpool. To date, the parties have not been able to reach agreement. Whirlpool accordingly files this objection to reserve its rights.

## **Objection**

**I.    The Court Should Deny Debtors' Request to Assume and Assign the Alliance Agreement to Buyer**

    **A.    Debtors Have Failed to Provide Adequate Assurance of Future Performance as Required to Assume and Assign the Alliance Agreement**

20. To assume and assign the Alliance Agreement, Debtors have the burden of providing Whirlpool with adequate assurance of Buyer's future performance. *See* 11 U.S.C. § 365(f)(2). "Whether 'adequate assurance of future performance' has been provided is determined by the facts and circumstances of each case." *In re M. Fine Lumber Co.*, 383 B.R. 565, 572 (Bankr. E.D.N.Y. 2008). While an absolute guarantee of future performance is not required, the Debtors must show by a preponderance of the evidence that "future performance is likely." *In re Res. Tech., Corp.*, No. 08 C 2425, 2008 WL 4876846, at *4 (N.D. Ill. Nov. 7, 2008), *aff'd sub nom. In re Res. Tech. Corp.*, 624 F.3d 376 (7th Cir. 2010).

6

21.     Here, Debtors have not shown that Buyer's future performance of the Alliance Agreement is likely. In particular, Debtors rely on ESL's projections of New Sears's financial results. Given ESL's history of missing projections and the substantial challenges facing New Sears, these projections cannot serve as adequate assurance to Whirlpool. Even under the best formulated business plan, New Sears will be facing an extremely challenging business environment. Whirlpool should not be forced to assume the financial risk in the event that the plan is not successful.

22.     In addition to the uncertainty of New Sears's projections, other factors weigh against a finding of adequate assurance. As this court has noted, in assessing adequate assurance of future performance, "courts look for evidence of profitability such as demonstrated reductions in operating costs, payroll, and inventory coupled with an increase in sales. . . a plan which would earmark money exclusively for the [counterparty]; or the willingness and ability of debtor or debtor's assignee to fund the cure payments." *In re Embers 86th St., Inc.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995) (citations omitted).

23.     Here, there is no evidence of profitability. Instead, Debtors' recent operating reports show that Sears continues to lose money. *See* Debtors Monthly Operating Report [ECF No. 1989] (showing consolidated net losses of $193 million for the month ending January 5, 2019). Further, Buyer has not offered to provide Whirlpool a guarantee, reserve, or any other means of securing Whirlpool's right to repayment under the Alliance Agreement.

24.     Because Whirlpool has not been provided the adequate assurance of future performance to which it is entitled under the Bankruptcy Code, Debtors' request to assume and assign the Alliance Agreement to Buyer should be denied, at least absent an order requiring Buyer to provide adequate assurance through CIA payment or comparable security. *See In re*

7

*Metromedia Fiber Network, Inc.*, 335 B.R. 41, 65-66 (Bankr. S.D.N.Y. 2005) (denying proposed assumption of executory contract where debtor failed to provide adequate assurance of future performance).

      **B.**      **As a Financial Accommodation, the Alliance Agreement is Not Subject to Assumption and Assignment**

25.      Section 365(c)(2) of the Bankruptcy Code provides that a debtor may not assume "a contract to make a loan, or extend other debt financing or other financial accommodations, to or for the benefit of the debtor." 11 U.S.C. § 365(c)(2). "The term 'financial accommodation' has been defined as the extension of money or *credit* to accommodate another." *In re Sun Runner Marine, Inc. v. Citibank, N.A.*, 945 F.2d 1089, 1092 (9th Cir. 1991) (emphasis added). Courts have held that, where credit forms an integral component of a vendor contract, the contract constitutes a financial accommodation for purposes of Section 365(c)(2). *See In re Cole Bros., Inc. v. Cole Bros. Inc.*, 154 B.R. 689, 692 (W.D. Mich. 1992) (holding that the bankruptcy court erred in finding that dealership agreements were not financial accommodations, where the "extension of credit" through financing was "an integral component of the dealership arrangement").

26.      Here, the Alliance Agreement provides a financial accommodation insofar as it commits Whirlpool to finance Sears's purchases. Subject only to a credit cap, the Alliance Agreement requires Whirlpool to extend credit to Sears. And because Sears has the ability to make all of its purchases under the agreement on credit—and, historically, has done so—Whirlpool's extension of credit should be deemed integral to the contract.

27.      Debtors may rely on cases from other jurisdictions holding that Section 365(c)(2) "appears to apply to agreements that have extension of credit as their primary purpose." *In re UAL Corp.*, 293 B.R. 183, 187 (Bankr. N.D. Ill. 2003). But these cases are neither controlling nor

persuasive. There can be no dispute that a bank or other lender could not be compelled to finance New Sears's going-forward purchases of inventory. The mere fact that Whirlpool agreed to finance such purchase in the context of a broader vendor agreement should not deprive Whirlpool of the same protections. Whirlpool respectfully submits that, rather than engaging in a subjective inquiry into the "primary purpose" of an agreement, a court instead should consider whether credit terms are a material element of a contract. Where, as here, a contract requires a material extension of credit by a supplier, it should be deemed a financial accommodation under Section 365(c)(2).

28. For these reasons, the Alliance Agreement constitutes a financial accommodation and therefore cannot be assumed and assigned without Whirlpool's consent.

**II.    Whirlpool Reserves Its Right With Respect to the Debtors' Proposed Cure Amount**

29. In addition to providing adequate assurance of future performance, as a condition of assuming and assigning the Alliance Agreement, Debtors must cure (or provide adequate assurance of prompt cure) all defaults under that agreement. *See* 11 U.S.C. § 365(b)(1). It is unclear whether Debtors are prepared to do so.

30. As noted above, the January 18, 2019 Notice of Cure proposed a cure amount for the Alliance Agreement of $13,434,856. But the Supplemental Notice of Cure, served on January 23, 2019, proposed cure amount that listed no cure amount for "Amendment #20 and Addendum #9 to Alliance Agreement for Home Appliances." ECF No. 1774, Ex. A at 31. It is unclear whether Debtors are distinguishing between the Alliance Agreement (referenced in the January 18 notice) and the most recent amendment and addendum to that agreement (as referenced in the January 23 notice). If so, Debtors are mistaken: There is one operative Alliance Agreement. The most recent amendment to that agreement is Amendment No. 20, but it remains the same agreement. To assume the Alliance Agreement, as amended, the Debtors must cure all amounts that are owed under that agreement (or provide adequate assurance of prompt cure).

31. While, as discussed above, the amount owed under the Alliance Agreement is subject to an ongoing reconciliation process, this reconciliation will produce a cure amount substantially greater than the zero proposed in the Supplemental Notice of Cure. Accordingly, Whirlpool objects to the assumption and assignment of the Alliance Agreement absent a prompt cure of all outstanding amounts owed under the agreement.

### Reservation of Rights

32. Whirlpool's review of Adequate Assurance Information is ongoing. Whirlpool is also continuing to seek additional information from both Sears and Buyer that is relevant to this Objection. Whirlpool anticipates that future pleadings may also disclose additional relevant information. Accordingly, and consistent with the understanding Whirlpool has reached with Buyer, Whirlpool reserves the right to amend, supplement, and/or modify this Objection.

### Conclusion

33. For the reasons above, the Court should deny Debtors' request to assume and assign the Alliance Agreement. In the alternative, the Court should allow assumption and assignment subject to (1) the Debtors' provision of adequate assurance of future performance by Buyer through an agreement to pay CIA (or equivalent assurance); and (2) prompt payment of all amounts owed under the agreement.

[*Remainder of page intentionally left blank.*]

Dated:  February 1, 2019 /s/ Bradley R. Schneider
Bradley R. Schneider

**MUNGER TOLLES & OLSON LLP**
Thomas B. Walper (admitted pro hac vice)
Bradley R. Schneider (admitted pro hac vice)
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
thomas.walper@mto.com
bradley.schneider@mto.com

Counsel for **WHIRLPOOL CORPORATION**

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2019, I caused a copy of Objection of Whirlpool Corporation to Debtors' Assumption and Assignment of Contract and Proposed Cure Amount to be electronically filed with the Clerk of Court using CM/ECF system and to be served via this system on all parties who have consented to electronic service.

I further certify that I served the Objection by email on the following "Objection Recipients," as identified in Exhibit 1 to this Court's *Order Approving Global Bidding Procedures and Granting Related Relief,* D.I. 816:

**I.    Bid Notice Parties**

    a.    <u>Debtors</u>
          Rob Riecker: rob.riecker@searshc.com
          Luke Valentino: luke.valentino@searshc.com
          Mohsin Meghji: mmeghji@miiipartners.com
          General Counsel: counsel@searshc.com

    b.    <u>Debtors' counsel</u>
          Ray Schrock, Esq.: ray.schrock@weil.com
          Jacqueline Marcus, Esq.: jacqueline.marcus@weil.com
          Garrett A. Fail, Esq.: garrett.fail@weil.com
          Sunny Singh, Esq.: sunny.singh@weil.com
          Ellen J. Odoner, Esq.: Ellen.Odoner@weil.com
          Gavin Westerman, Esq.: Gavin.Westerman@weil.com

    c.    <u>Debtors' investment banker</u>
          Brandon Aebersold and Levi Quaintance: project.blue.rx@lazard.com

**II.    Buyer Parties**

    a.    <u>Buyer</u>
          Kunal S. Kamlani: kunal@eslinvest.com
          Harold Talisman: harold@eslinvest.com

    b.    <u>Counsel</u>
          Christopher E. Austin, Esq.: caustin@cgsh.com
          Benet J. O'Reilly, Esq.: boreilly@cgsh.com
          Sean A. O'Neal, Esq.: soneal@cgsh.com

**III.    Consultation Parties**

a.  <u>Bank of America</u>
Paul Leake, Esq.: Paul.Leake@skadden.com
Shana Elberg, Esq.: Shana.Eiberg@skadden.com
George Howard, Esq.: George.Howard@skadden.com

b.  <u>Wells Fargo Bank</u>
Kevin J. Simard, Esq.: ksimard@choate.com
Jonathan D. Marshall, Esq.: jmarshall@choate.com

c.  <u>Committee</u>
Ira S. Dizengoff, Esq.: idizengoff@akingump.com
Philip C. Dublin, Esq.: pdublin@akingump.com
Abid Qureshi, Esq.: aqureshi@akingump.com
Sara L. Brauner, Esq.: sbrauner@akingump.com

Dated:  February 1, 2019                       */s/ Bradley R. Schneider*
                                               Bradley R. Schneider

**MUNGER TOLLES & OLSON LLP**
Thomas B. Walper (admitted pro hac vice)
Bradley R. Schneider (admitted pro hac vice)
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
thomas.walper@mto.com
bradley.schneider@mto.com

Counsel for **WHIRLPOOL CORPORATION**