Benesch, Friedlander, Coplan & Aronoff LLP
39 Broadway, 25th Floor
New York, New York 10006
(302) 442-7010
Michael J. Barrie (No. 5057450)
Kevin M. Capuzzi (admitted *pro hac vice*)

*Attorneys for MCG VA Sears, LLC, VCP Hampton Sears, LLC, MCG Rock Hill, LLC, and VCP Rock Hill Storage, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                                        :    Chapter 11
                                                              :
**SEARS HOLDINGS CORPORATION, *et al.*,**                     :    Case No. 18-23538 (RDD)
                                                              :
Debtors.[1]                                                   :    (Jointly Administered)
                                                              :
------------------------------------------------------------ x

**OBJECTION AND RESERVATION OF RIGHTS OF THE MCG LANDLORDS WITH RESPECT TO SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

Now come MCG VA Sears, LLC, VCP Hampton Sears, LLC, MCG Rock Hill, LLC, and VCP Rock Hill Storage, LLC (collectively, the "MCG Landlords"), and hereby file this objection and reservation of rights (the "Objection") with respect to the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

*Connection with Global Sale Transaction* (the "Supplemental Potential Cure Notice"). [ECF No. 1774]. In support of this Objection, the MCG Landlords respectfully state as follows:

## BACKGROUND

1. Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The MCG Landlords are the owners certain commercial real property located in Rock Hill, South Carolina and Hampton, Virginia.

3. Pursuant to written leases (each a "Lease" and together the "Leases"), one or more of the Debtors lease or occupy real property owned by the MCG Landlords at the following locations:

   a. 2302 Cherry Road, Rock Hill, South Carolina and designated by the Debtors as Store Number 7043 ("Store 7043"); and

   b. 100 Newmarket Fair Mall, Hampton, Virginia and designated by the Debtors as Store Number 1575 ("Store 1575," and together with Store 7043, the "Stores");

The Leases were, as of the Petition Date, and continue to be, unexpired leases of non-residential real property.

4. The Stores are not being operated, are vacant, and are not among the approximately 400 stores that the Debtors defined as "Go Forward Stores" in the *Debtors' Motion for Approval of Global Bidding Procedures* (the "Sale Motion"). [ECF No.429].[2]

---

[2] The Sale Motion defined "Go Forward Stores" as the Debtors' stores that "are capable of continuing as a going concern." *See*, *Sale Motion*, p. 7 of 97. The Sale Motion also referred to the approximately 400 "Go Forward Stores" as the Debtors' stores that "are four-wall EBITDA positive…and other viable stores…[that can be operated] as a going concern." *Id*. at p. 6 of 97.

## SALE BACKGROUND

4. On November 19, 2018, the Court granted the Sale Motion and entered its *Order Approving Global Bidding Procedures and Granting Related Relief*, [ECF No. 816], which governs the terms of a sale of the Debtors' assets (the "Bid Procedures Order"). The Bid Procedures Order established certain Assumption and Assignment Procedures related to the proposed assumption and assignment of contracts and leases. *See*, Bid Procedures Order, pp. 15-21, ¶¶ 28-42.

5. In pertinent part, the Assumption and Assignment Procedures set the following deadlines related to cure and adequate assurance objections: (a) fourteen (14) days after service of an assumption and assignment notice for proposed assumed contracts in a Stalking Horse Bid for the Go Forward Stores, (b) eight (8) days after service of an assumption and assignment notice for proposed assumed contracts related to the sale of Go Forward Stores if not contained in a Stalking Horse Bid, and (c) fourteen (14) days after service of an assumption and assignment notice for proposed assumed contracts with respect to all other Assets. *See*, Bid Procedures Order, p. 16, ¶ 31 & pp. 19-20, ¶ 38.

6. On January 18, 2019, the Debtors filed the (a) *Notice of Successful Bidder and Sale Hearing* (the "Sale Transaction Notice"), [ECF No. 1730], attaching the executed asset purchase agreement between the Debtors and Transform Holdco, LLC, an affiliate of ESL Investments, Inc. ("Buyer"), dated January 17, 2019 (the "Asset Purchase Agreement") and (b) the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Initial Potential Cure Notice"). [ECF No. 1731].

7.   In the Initial Potential Cure Notice, the Debtors did not identify either of the Leases related to the Stores as contracts that may be designated for assumption and assignment in connection with the Global Asset Sale Transaction.

8.   On January 24, 2019, the Debtors served the Supplemental Potential Cure Notice, which identified the Leases as being potentially subject to assumption and assignment to the Buyer.

9.   Notwithstanding paragraphs 31 & 38 of the Bid Procedures Order, and the fact that the Leases are not related to Go Forward Stores, the Supplemental Potential Cure Notice stated that all objections were to be filed by January 31, 2019. The Supplemental Potential Cure Notice does not contain a certificate or affidavit of service.[3]

10.  The Supplemental Potential Cure Notice also states that at the time of its filing, the Buyer has not designated any contracts or leases for assumption and assignment to the Buyer, and advises counterparties that "[y]ou will receive an additional notice informing you if your Contract or Lease is designed for assumption or assignment to the Buyer." *Id*. at ¶ 15. The Debtors further state in the Supplemental Potential Cure Notice that they will file a supplemental notice for any additional contracts or leases that the Buyer may designate. *Id* at ¶ 7.[4]

---

[3] The Debtors purportedly served the counterparties to the pertinent leases with notice of the Supplemental Potential Cure Notice on January 24, 2019 according to the affidavit of service filed on January 29, 2019. [ECF No. 2162]. While neither of the MCG Landlords was served with the Supplemental Potential Cure Notice, Madison Capital Group, LLC ("Madison Capital"), an affiliate of the MCG Landlords, was listed on the affidavit of service. Even if that service was effective, the Debtors still did not satisfy the minimum requirements of the Bid Procedures Order. Specifically, the Supplemental Potential Cure Notice arbitrarily set January 31, 2019 as the cure and adequate assurance objection deadlines. To the extent any party objects to this Objection as untimely, the Court should reject any such arguments. Since the Leases are not related to "Go Forward Stores," the MCG Landlords should have had 14 days from service of the assumption and assignment notice to file an objection. Even if the Leases fell within the 8 day objection period related to the sale of Go Forward Stores that were not contained in a Stalking Horse Bid, the Supplemental Potential Cure Notice: (a) was not served on the MCG Landlords, (b) only provided, at most, seven (7) days' notice of the purported deadline, and (c) assuming service by mail on Madison Capital was effective, the MCG Landlords would still have an additional three (3) days to file this Objection pursuant to Bankruptcy Rule 9006(f).

[4] Under the Asset Purchase Agreement, the Buyer may further designate certain additional Contracts and Leases at any time prior to the date that is sixty days after the Closing Date, but in no event later than May 3, 2019. Supplemental Potential Cure Notice at ¶¶ 12 and 13. Any additional contracts or leases designated by the Buyer does not change the Purchase Price (as defined in the Asset Purchase Agreement) except to the extent of any increase or decrease in assumed liabilities, *i.e.*, no additional consideration is given for any additional contract or

11. The MCG Landlords have not received any information from the Buyer, or its counsel, that purports to demonstrate Buyer's adequate assurance of future performance. Nor has the identity of the potential designee of any assigned Lease been identified.

12. Finally, as of the date hereof, the MCG Landlords have not been served with any notice designating either of the Leases for assumption and assignment.

## APPLICABLE LAW

13. In order to assume and assign the Leases, the Debtors "at the time of assumption" shall: (a) cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the respective leases, (b) compensate or provide adequate assurance of the prompt compensation for all pecuniary loss suffered by the MCG Landlords, and (c) provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(A)-(C).

14. In addition, Section 365(f)(2)(B) of the Bankruptcy Code requires that adequate assurance of future performance by a proposed assignee be provided, whether or not there has been a default under a contract or lease. 11 U.S.C. § 365(f)(2)(B).

15. The Debtors and the Buyer have the burden of proving adequate assurance of future performance with respect to the potential assumption and assignment of the Leases. *In re Res. Tech. Corp.*, 624 F.3d 376, 384 (7th Cir. 2010) ("As the party seeking to become the assignee, the Trust had the burden of proving it met the requirements of § 365(f)").

## OBJECTIONS

16. The MCG Landlords hereby object to the Supplemental Potential Cure Notice and the purported cure and adequate assurance provisions for the following reasons:

---

lease. Asset Purchase Agreement at ¶¶ 2.7(b)(ii) and 2.9. Similarly, the Buyer may, at any time prior to the second Business Day prior to the Closing Date, remove Contracts and Leases identified as Initial Assigned Agreements by designating them as Excluded Assets, and such designation likewise has no effect on the Purchase Price (except to the extent of any decrease in the assumption of Assumed Liabilities). Asset Purchase Agreement at ¶¶ 2.7(b)(ii).

MWH: 99997.001; 00019987.2                -5-

a. The Supplemental Potential Cure Notice fails to comply with the Bid Procedures Order because it failed to provide adequate notice of the deadlines to object to the proposed cure amounts and the proposed adequate assurance of future performance;

b. A determination of any cure amounts due under the applicable Leases as well as adequate assurance of future performance under the Leases is premature at this juncture because the Leases have not even been designated for assumption and assignment to the Buyer and, any such determinations must be made "at the time of assumption" to comply with Section 365(b)(1) of the Bankruptcy Code;

c. In the event the Debtors and Buyer eventually designate the Leases to be assumed and assigned to the Buyer, then the Debtors and the Buyer must cure all arrearages under the Leases including, without limitation, paying all rent due under the Leases, all defaults with respect to insurance requirements under the Leases, real estate taxes and other charges (accrued or otherwise), amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the MCG Leases that are due as of the date of assumption;

d. The MCG Landlords have not received any information to allow them to evaluate whether the Debtors or a proposed assignee are capable of future performance under the Leases;

e. Neither the Debtors nor the Buyer have even identified the proposed actual assignee(s) of the Leases;

f. Neither the Debtors nor the Buyer have satisfied or even attempted to satisfy the heightened adequate assurance requirements for shopping center leases set forth in section 365(b)(3) of the Bankruptcy Code;

g. In order to comply with section 365(f) of the Bankruptcy Code, any assignment of the Leases must remain subject to all provisions of the Leases including, without limitation, those provisions of the Leases governing use, radius and permitted conduct;

h. The MCG Landlords object to any sale or assignment of the Leases to the Buyer free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. Any assumption and assignment of the Leases should not and cannot cutoff the MCG Landlords' right to recover unbilled charges that have accrued or are accruing under the Leases; and

i. If the Leases are assigned to a Buyer that does not possess sufficient operating experience or creditworthiness to satisfy the MCG Landlords' requirements, then pursuant to section 365(l) of the Bankruptcy Code, the MCG Landlords reserve the right to request additional adequate assurance, such as: (i) a guaranty from a financially capable parent company, (ii) a letter of credit, or (iii) as cash security deposit.

## **GENERAL RESERVATION OF RIGHTS**

17. The MCG Landlords expressly reserve all of their respective rights under the Leases with respect to any and all obligations of the Debtors and/or any proposed assignee as tenant, including the MCG Landlords' rights to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed, unsatisfied liens on the properties created by the Debtors and/or the proposed assignee and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors and/or any proposed assignee.

18. The MCG Landlords further reserve all rights to raise further objections, as necessary or appropriate under the circumstances, relating to the Global Asset Sale Transaction, and any proposed assumption and assignment of the Leases, including without limitation any objections relating to the obligations of the Debtors and/or any proposed assignee to cure any defaults under the Leases, and the ability of any proposed assignee to provide adequate assurance of future performance. The MCG Landlords further join in objections raised by other landlords to the extent such objections are not inconsistent herewith.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the MCG Landlords hereby request that the Court sustain the objections set forth herein, and that they be granted such other or further relief as is just and appropriate under the circumstances.

Dated: New York, New York
       February 3, 2019

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By:      */s/ Michael J. Barrie*
         Michael J. Barrie (No. 5057450)
         Kevin M. Capuzzi (admitted *pro hac vice*)
         39 Broadway, 25th Floor
         New York, NY 10006
         (302) 442-7010
         mbarrie@beneschlaw.com
         kcapuzzi@beneschlaw.com

and

**MOON WRIGHT AND HOUSTON, PLLC**

By:      */s/ Andrew T. Houston*
         Andrew T. Houston (NC Bar No. 36208)
         *(Pro Hac Vice Admission Forthcoming)*
         121 West Trade Street, Suite 1950
         Charlotte, North Carolina 28202
         Telephone: (704) 944-6560
         Facsimile:  (704) 944-0380

*Counsel to the MCG Landlords*