## Exhibit A

**Initial Lease Termination Agreement**

## TERMINATION OF LEASE
## AGREEMENT
*Kent, WA; Kmart #3413*

**THIS TERMINATION OF LEASE AGREEMENT** (this "**Agreement**") is made and entered into as of this _____ *Oct. 1* _____ , 2018 (the "**Effective Date**"), by and between Yoder-17th Street Properties, LLC, a Washington limited liability company ("**Landlord**"), and Kmart of Washington, LLC, a Washington limited liability company ("**Tenant**") (Landlord and Tenant are collectively referred to in this Agreement as the "**Parties**").

### RECITALS

**WHEREAS**, Landlord (by and through its predecessors-in-interest) and Tenant (by and through its predecessor-in-interest) are parties to that certain Lease dated December 9, 1976 ("**Lease**") for the space currently containing approximately 84,180 square feet located at 24800 W. Valley Highway, in the City of Kent, State of Washington (the "**Demised Premises**");

**WHEREAS,** the Lease by its terms is scheduled to expire on November 30, 2022 (the "**Lease Expiration Date**").

**WHEREAS,** Landlord and Tenant desire to terminate the Lease prior to the Lease Expiration Date and release and discharge each other from further performance of the provisions of the Lease as of the date set forth below upon the terms and conditions set forth herein.

**NOW, THEREFORE**, notwithstanding anything to the contrary contained in the Lease, including, without limitation, any provision regarding the amendment or termination of the Lease, or the restoration or surrender of the Demised Premises, and in consideration of the Recitals set forth above, which are hereby incorporated by reference, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

1.    **Capitalized Terms.** Capitalized terms used herein but not defined herein shall have the respective meanings ascribed to such term as specified in the Lease.

2.    **Termination of Lease**.  Landlord and Tenant hereby acknowledge and agree that, except as expressly set forth in this Agreement, the Lease and each and all of Landlord's and Tenant's respective rights and obligations thereunder shall terminate at 11:59 p.m. EST on December 31, 2018 (the "**Termination Date**").  Within thirty (30) days after the Termination Date, Landlord shall refund to Tenant any prepaid rent or other charges, including but not limited to real estate taxes and assessments which are unearned and any additional sums due Tenant under the terms of the Lease.

3.    **Termination Payment.** Landlord and Tenant agree that subject to Tenant surrendering possession of the Demised Premises in accordance with the terms of this Agreement and paying all sums due under the Lease and this Agreement when due, Landlord shall pay to Tenant, pursuant to wire transfer instructions provided to Landlord by Tenant, three (3) business days after the Surrender Date (as defined below), the sum of One Million and No/100 Dollars ($1,000,000.00) (the "**Termination Payment**"), less the Holdback Amount (as defined below), as valuable and fair consideration for Tenant's agreement to terminate the Lease in accordance with the terms of this Agreement.  Notwithstanding anything to the contrary in this Agreement, in the event Tenant has performed its obligations under this Agreement and does not receive the Termination Payment in accordance with the terms of this Agreement, Tenant shall not be obligated to surrender possession of the Demised Premises to Landlord until the Termination Payment is received by

1

Tenant and such possession by Tenant shall not be deemed a "hold over" and all Tenant Lease Obligations (as defined below), excluding the right to possession, shall cease on the Termination Date.

**4.    Tenant Obligations.**    Except as otherwise provided in this Agreement and notwithstanding Tenant's surrender of possession of the Demised Premises prior to the Termination Date, Tenant shall continue to satisfy all of the obligations due Landlord from Tenant under the Lease through the Termination Date as and when required under the Lease (collectively, the "**Tenant Lease Obligations**"), including, without limitation, Tenant's Lease Obligations with respect to rent, indemnity, insurance, taxes, common area maintenance and other maintenance and landscape charges, utilities, and all other operating expenses of every kind and nature. The parties acknowledge that:

(a)    Tenant has paid the first installment of 2018 real estate taxes directly to the taxing authority and the second installment is due October 31, 2018. Tenant shall be responsible for payment of the second installment of 2018 real estate taxes and such payment shall be made by Tenant directly to the taxing authority.

(b)    Tenant has paid its share of common area maintenance ("**CAM**") expenses through June 30, 2018. Landlord will invoice Tenant for its share of 2018 third quarter CAM expenses in October 2018 and Tenant shall reimburse Landlord within thirty (30) days of receiving such invoice from Landlord. Tenant's reimbursement obligation shall survive termination of the Lease. The parties agree that Tenant's share of 2018 fourth quarter CAM expenses shall be $15,000.00 and such amount shall be final and shall be paid by Tenant on or before December 1, 2018. The amount of $15,000.00 shall be included in the Holdback Amount until such time as Tenant issues payment to Landlord.

Notwithstanding the foregoing, Tenant Lease Obligations from and after the Effective Date thru the Surrender Date, shall not include, and Tenant shall not be responsible for, the costs of any extraordinary repair, replacement or maintenance costs, it being understood that Landlord is accepting the Demised Premises in the condition described in Section 6 below. For the purposes hereof, "extraordinary repair, replacement and maintenance costs" shall mean such costs above and beyond those costs Tenant would have incurred in its normal course of maintenance for a closed or "dark" retail store. Further, from and after the Surrender Date, Tenant shall no longer be responsible for the repair and maintenance of the Demised Premises. Tenant's obligation to satisfy all of its obligations under the Lease as set forth in this Agreement shall survive termination of the Lease.

**5.    Landlord Obligations.** Except as otherwise provided in this Agreement, Landlord shall continue to satisfy all of the obligations due Tenant from Landlord under the Lease through the Termination Date as and when required under the Lease (collectively, the "**Landlord Lease Obligations**"). Tenant anticipates ceasing operations at the Demised Premises on or about October 31, 2018. For purposes hereof, the date Tenant ceases operations at the Demised Premises shall be considered the "Go Dark Date". Notwithstanding the foregoing, from and after the Surrender Date through the Termination Date, Landlord shall not be obligated to perform any Landlord Lease Obligations.

**6.    Surrender.**    On or before November 15, 2018 (the "**Surrender Date**"), Tenant shall remove its interior and exterior signs, inventory, trade fixtures, equipment (including, without limitation all racking and shelving located within the Demised Premises), trash, debris and other personal property ("**Personal Property**") from the Demised Premises and repair all damage to the Demised Premises caused by Tenant's removal of the Personal Property. The parties shall walk through the Premises seven (7) business days' prior to the Surrender Date to confirm the Premises is in broom clean condition as required by this Agreement, including an obligation that Tenant shall not leave any Personal Property in the Demised Premises as of the Surrender Date that will cause the Landlord to incur more than $2,500.00 to dispose of and/or demolish such Personal Property. Landlord shall have no liability with respect thereto and Landlord

may dispose of and/or demolish any such Personal Property. Tenant shall cause all utility meters to be read as close to the Surrender Date as is feasible, and shall be responsible for all amounts shown due. On or before the Termination Date, Tenant shall cancel all contracts between Tenant and any third party with respect to the Demised Premises or with respect to Tenant's Personal Property. On or before the Termination Date, Tenant shall pay all amounts due under the Lease through the Termination Date, except for such amounts billed by Landlord to Tenant pursuant to Section 4 above, which Tenant shall pay as set forth therein. On or before the Termination Date, Tenant shall surrender possession of the Demised Premises to Landlord in "broom-clean" condition with all Personal Property removed from the Demised Premises. Except as expressly provided in this Agreement, Landlord shall accept surrender of the Premises in its "AS IS," "WHERE IS" condition with all faults, whether known or unknown.

7.      **Holdback Amount.** It is anticipated that Tenant will owe certain obligations under the Lease (December rent of $24,000.00 and fourth quarter CAM expenses of $15,000 as set forth in Section 4(b) above) as of the date Landlord is obligated to pay the Termination Payment due under this Agreement. Landlord may withhold the amount of Thirty-Nine Thousand and 00/100 ($39,000.00) ("**Holdback Amount**") from the Termination Payment until such amounts are paid by Tenant. Landlord shall pay Tenant the Holdback Amount within 15 days of Tenant paying December rent and fourth quarter CAM expenses.

8.      **Representations.**

   (a)   Representations of Tenant. Tenant hereby represents to Landlord as follows:

      (i)      Authority. Tenant has the full right and authority to enter into this Agreement and the transactions contemplated herein; and the person signing this Agreement and any other document or instrument contemplated hereby on behalf of Tenant is duly authorized to do so. This Agreement and all other documents to be executed by Tenant in connection herewith are legal, valid, and binding obligations of Tenant and are enforceable against Tenant in accordance with their respective terms.

      (ii)     Performance of Obligations. The execution, delivery, and performance of Tenant's obligations under this Agreement and the consummation of the transactions contemplated hereby (a) will not result in a breach or violation of, or result in an acceleration of, any indebtedness under (or adverse change in) any contract, agreement, or instrument to which Tenant is a party or which affects the Demised Premises or any portion thereof, and (b) do not require any consents, approvals, or authorizations not previously obtained by Tenant.

      (iii)    Ownership of Leasehold. Tenant represents that, as of the Termination Date, it was sole owner of the Tenant's interest in the Lease, and that it had not made any assignment, sublease, transfer, conveyance, hypothecation, or other disposition of the Lease, or any interest therein.

   (b)   Representations of Landlord. Landlord hereby represents and warrants to Tenant as follows:

      (i)      Authority. Landlord has the full right and authority to enter into this Agreement and the transactions contemplated herein; and the persons signing this Agreement and any other document or instrument contemplated hereby on behalf of Landlord are duly authorized to do so. This Agreement and all other documents to be executed by Landlord in connection herewith are legal, valid, and binding obligations of Landlord and are

enforceable against Landlord in accordance with their respective terms.

(ii)    Performance of Obligations.    The execution, delivery, and performance of Landlord's obligations under this Agreement and the consummation of the transactions contemplated hereby (a) will not result in a breach or violation of, or result in an acceleration of, any indebtedness under (or adverse change in) any contract, agreement, or instrument to which Landlord is a party or which affects the Demised Premises or any portion thereof, and (b) do not require any consents, approvals, or authorizations not previously obtained by Landlord.

(iii)    No Assignment.    As of the Termination Date, the Lease (or any part thereof or interest therein) had not been assigned or transferred to any person or entity.

**9.    Notices.**  All notices, demands, statements, designations, approvals or other communications (collectively, "**Notices**") given or required to be given by either party to the other hereunder or by law shall be in writing, shall be (a) sent by United States certified or registered mail, postage prepaid, return receipt requested ("**Mail**"), (b) delivered by a nationally recognized overnight courier (with a signature required), or (c) delivered personally.  Any Notice will be deemed given (i) three (3) days after the date it is posted if sent by Mail, (ii) the date the overnight courier delivery is made or refused, or (iii) the date personal delivery is made.  Notices must be sent or delivered, as the case may be, to the following addresses:

| | | |
|---|---|---|
| **Landlord:** | | Yoder-17th Street Properties, LLC<br>c/o Pacific Asset Advisors<br>14205 SE 36th Street, Suite 215<br>Bellevue, WA  98006 |
| | Copy to: | Jameson Babbitt Stites & Lombard, PLLC<br>801 Second Avenue, Suite 1000<br>Seattle, WA 98104<br>Attention: Sean Durbin |
| **Tenant:** | | Kmart of Washington, LLC<br>c/o Sears Holdings Management Corporation<br>Department 824RE<br>3333 Beverly Road<br>Hoffman Estates, Illinois 60179<br>Attention: President, Real Estate |
| | Copy to: | Kmart of Washington, LLC<br>c/o Sears Holdings Management Corporation<br>Department 824RE<br>3333 Beverly Road<br>Hoffman Estates, Illinois 60179<br>Attention:  Associate General Counsel, Real Estate |

**10.    Bankruptcy.**  In the event this Agreement, or the payments as provided for hereunder, are avoided under any bankruptcy or insolvency proceeding, or recovered, in whole or in part, from Tenant or Landlord in any similar proceeding, then, at Landlord's election, any release hereunder in favor of Tenant, and/or the

terms of this Agreement may be deemed null and void and Landlord shall maintain all rights and remedies under the Lease.

## 11.    Default and Remedies.

(a)    Events of Default.  There shall be a default under this Agreement upon:

(i)    Failure to comply with any term, obligation, covenant or condition contained herein in any material fashion; or

(ii)    Any warranty, representation or statements made or furnished to either party by or on behalf of the other party proving to be false in any material respect when made or furnished.

(b)    Remedies.  In the event either party defaults by failing to perform any of the conditions and covenants contained herein, or any of its warranties or representations are breached or shall prove to have been false or incorrect when made in any material respect, the non-defaulting party may, without election, exercise all rights and remedies available to it hereunder or as provided by law or in equity.

## 12.    Miscellaneous.

(a)    Memorandum for Recording.  The Parties further agree that Landlord and Tenant shall execute the Memorandum of Lease Termination attached hereto as Exhibit A and made a part hereof. Landlord shall, at its sole cost and expense, cause the Memorandum of Lease Termination to be filed in the real estate records of the county in which the Demised Premises is located after the Termination Date.  Landlord and Tenant shall reasonably cooperate with each other and such third parties as is necessary (including providing documents evidencing chain of title) to ensure that the Lease is terminated effective as of the Termination Date.

(b)    Voluntary Agreement.  The Parties have read this Agreement and the mutual releases contained in it, and on advice of counsel they have freely and voluntarily entered into this Agreement.

(c)    Governing Law.  This Agreement will be construed and enforceable in accordance with the laws of the State where the Demised Premises is located.  Any lawsuit brought by Landlord or Tenant against the other must be filed in a court of general jurisdiction where the rules of civil procedure for the State where the Demised Premises is located will apply.

(d)    Attorneys' Fees.  In the event of any legal action or other proceeding between the Parties regarding this Agreement or the Lease (an "Action"), the prevailing party shall be entitled to the payment by the losing party of its reasonable attorneys' fees, court costs and litigation expenses, as determined by the court.  The term "prevailing party" as used herein includes, without limitation, a party: (i) who agrees to dismiss an Action on the other party's performance of the covenants allegedly breached, (ii) who obtains substantially the relief it has sought (which includes, without limitation, a party who has an Action voluntarily dismissed against it); or (iii) against whom an Action is dismissed (with or without prejudice) and cannot be refiled.  In addition, the prevailing party in any Action shall be entitled, in addition to and separately from the amounts recoverable under this Section, to the payment by the losing party of the prevailing party's reasonable attorneys' fees, court costs and litigation expenses incurred in connection with: (y) any appellate review of

the judgment rendered in such Action or of any other ruling in such Action; and (z) any proceeding to enforce a judgment in such Action. It is the intent of the Parties that the provisions of this Section be distinct and severable from the other rights of the parties under this Agreement, shall survive the Effective Date, shall survive the entry of judgment in any Action and shall not be merged into such judgment. The phrase "reasonable attorneys' fees actually incurred" or phrases of similar meanings regarding attorneys' fees used in this Agreement and other Sections of the Lease relating to the attorneys' fees the prevailing party in any Action is permitted to recover under the terms of this Agreement shall be deemed to mean reasonable attorney's fees, and shall be deemed to include the cost of enforcing any term or condition of this Agreement, the cost of proving all damages and the cost of proving the amount of and the reasonableness of all attorneys' fees, including, but not limited to, the cost of any experts to prove same. In addition, "attorneys' fees" as used throughout this Agreement shall include the fees of third party attorneys and the fees of "in house" legal counsel of Landlord and Tenant, as appropriate.

(e)    WAIVER OF TRIAL BY JURY; INJUNCTION. LANDLORD AND TENANT EACH HEREBY WAIVE TRIAL BY JURY OF ANY DISPUTE ARISING UNDER THIS AGREEMENT. IN ADDITION TO ALL OTHER REMEDIES, LANDLORD IS ENTITLED TO THE RESTRAINT BY INJUNCTION OF ALL VIOLATIONS BY TENANT, WHETHER ACTUAL, ATTEMPTED OR THREATENED, OF ANY COVENANT, CONDITION OR PROVISION OF THIS AGREEMENT.

(f)    Confidentiality. Landlord agrees that all financial terms of this Agreement as well as any information provided to Landlord pertaining to Tenant (the "**Confidential Information**") will remain confidential and will not be divulged by Landlord without the written consent of Tenant, except that Landlord may disclose the Confidential Information without Tenant's consent to Landlord's respective officers, affiliates, and advisors (including, without limitation, attorneys, accountants, consultants, lenders and financial advisors), so long as the confidentiality obligations of Landlord are binding upon all of the foregoing and Landlord informs the receiving parties of the confidential nature of the Confidential Information and directs the receiving parties to treat the Confidential Information confidentially in accordance with this Section 12(f). Notwithstanding anything contained herein to the contrary, the obligation of confidentiality does not apply to (i) Confidential Information which is now, or in the future becomes, part of the public domain, other than by breach of the terms of this Section 12(f) or breach of confidentiality by anyone bound under like terms of confidentiality to the party making such public disclosure, (ii) Confidential Information lawfully obtained from independent sources, and (iii) disclosure specifically authorized by Tenant in writing. If Landlord seeks Tenant's consent to the disclosure of the Confidential Information, Tenant shall not unreasonably withhold its consent. Without limiting the foregoing, Landlord agrees and acknowledges that no copies, summaries, abstracts or other reproductions of this Agreement or its terms will be provided to any third party not subject to the same confidentiality obligation as Landlord. In the event Landlord breaches the terms of this Paragraph, Landlord acknowledges and agrees that Tenant will be irreparably harmed, but that Tenant's damages are difficult to calculate and, therefore, Tenant shall be entitled to pursue an action for equitable relief, including, but not limited to, temporary or permanent injunctions, against any actual or threatened breach of this Section 12(f), in addition to all other rights and remedies available at law or in equity. Notwithstanding anything in this Agreement to the contrary, Landlord may divulge Confidential Information without Tenant's consent to a proposed institutional mortgagee in connection with any financing by Landlord of the Demised Premises or in connection with this Agreement (who, in turn, may disclose the Confidential Information to its officers, advisors, attorneys, appraisers and other consultants in connection with the approval and documentation of such financing or the terms of this Agreement), or as otherwise required by law.

(g)     Integration. This Agreement supersedes all prior and contemporaneous agreements and understandings between and among the parties hereto, and, except as otherwise set forth herein, this Agreement constitutes the entire agreement between Tenant and Landlord, and there are no other covenants, agreements, promises, terms, provisions, conditions, undertakings, or understandings, either oral or written, between them concerning the Demised Premises other than those herein set forth.  No subsequent alteration, amendment, change, deletion or addition to this Agreement shall be binding upon Tenant or Landlord unless in writing and signed by both Tenant and Landlord.

(h)     Headings.  The headings, captions, numbering system, etc., are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of this Agreement.

(i)     Binding Effect.  All of the provisions of this Agreement are hereby made binding upon and shall inure to the benefit of the personal representatives, heirs, successors, and assigns of both parties hereto.

(j)     Unenforceable or Inapplicable Provisions.    If any provision hereof is for any reason unenforceable or inapplicable, the other provisions hereof will remain in full force and effect in the same manner as if such unenforceable or inapplicable provision had never been contained herein.

(k)     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Where this Agreement has been signed in multiple counterparts, the signature page of such instrument may be detached and reattached to any other which is identical in form.

(l)     Construction.   This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that the Agreement may have been prepared primarily by counsel for one of the parties, it being recognized that both Landlord and Tenant have contributed substantially and materially to the preparation to this Agreement.

(m)     Time is of the Essence. Time is of the essence with respect to the timeliness of all obligations of Landlord and Tenant under this Agreement.

(n)     Further Assurances.  Each of Landlord and Tenant agrees, at any time and from time to time after the Effective Date, to execute, acknowledge where appropriate, and deliver such further instruments and documents and to take such other action as the other party may reasonably request in order to carry out the intents and purposes of this Agreement; provided, however, that neither party shall be required to execute any instrument or document pursuant to this Section 10(n) which would increase the liability or obligations of such party over that provided for in this Agreement and the instruments and documents executed by such party pursuant hereto.

(o)     Releases.  Upon completion of all obligations of Landlord and Tenant, respectively, as specifically set forth in this Agreement and except for third party claims as indicated below, Landlord and Tenant shall hereby forever release and discharge each other and their respective officers, directors, members, shareholders, partners, agents, employees and affiliates from any and all claims, obligations, liabilities, damages, losses, demands, and causes of action which either party ever had, now has, or in the future may have against the other party arising from, under, or in any way related to the Lease or the Demised Premises.  The termination of the Lease shall not preclude a party from exercising any discovery rights it has against the other party in connection with any civil litigation or arbitration proceedings involving a third party.  The releases set forth in this

Section 12(o) are intended as full settlements and compromises of each, every and all claims of every kind and nature, except for the third party claims as indicated herein or claims under this Agreement.

(p)      Third Party Claims. Notwithstanding Section 11(o) above, nothing in this Agreement shall release either party from the indemnification obligations contained in Section 29 of the Lease and any other indemnification obligations under the Lease which are intended by the express terms of the Lease to survive the expiration or earlier termination of the Lease, any third party claims related to a party's obligations under the Lease, or any obligations set forth in this Agreement which by the express terms of this Agreement are intended to survive the expiration or termination of the Lease, including without limitation, any environmental claims resulting from Tenant's use of the Demised Premises. Tenant's indemnification obligations under Section 29 of the Lease shall survive termination of the Lease.

(q)      Waiver of Audit Rights.  Except for the 2018 third quarter CAM expenses to be billed to Tenant by Landlord, Landlord and Tenant hereby waive any and all audit rights, inspection rights or similar rights, if any, contained in the Lease (including, by way of example only and without limitation, any such rights in connection with the parties' books and/or records relating to gross sales, percentage rent, pass-through expenses, taxes and insurance, or any other expenses or additional rent payable under the Lease).

*(Remainder of Page Intentionally Left Blank. Signature pages to follow)*

IN WITNESS WHEREOF, Landlord and Tenant have executed this Termination of Lease Agreement as of the Effective Date.

**WITNESS:**

By: _Susan M. Scalo_

Name: _Susan M. Scalo_

REAL ESTATE
CSu
LEGAL
SMS

**TENANT:**

Kmart of Washington, LLC,
a Washington limited liability company

By:  Kmart Corporation, a Michigan corporation

By: _JoAnn Catanese_

Name: _JoAnn Catanese_

Its: _Divisional Vice President, Real Estate_

STATE OF _Illinois_  )
                                      ) ss.
COUNTY OF _Cook_  )


On _October 1_ , 2018 before me, _Scott Nierman_ , a Notary Public in and for said County and State, personally appeared _JoAnn Catanese_ , being the _Divisional Vice President · RE_ of _Kmart of Washington, LLC_ , who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument as his free and voluntary act, and as the free and voluntary act and deed of said _LLC_ , for the uses and purposes therein set forth.

I certify under PENALTY OF PERJURY under the laws of the State of _Illinois_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(Seal)

_____
Notary Public

OFFICIAL SEAL
SCOTT NIERMAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/22/22

**WITNESS:**

By: _____

Name: _J. KEARNEY_____

**LANDLORD:**

Yoder-17[th] Street Properties, LLC,
a Washington limited liability company

By: _____

Name: _Clarke A Smith_____

Its: _Manager_____

STATE OF _____    )

                      ) ss.

COUNTY OF _____)

SEE ATTACHED
NOTARIAL CERTIFICATE

On _____, 2018 before me, _____, a Notary Public in and for said County and State, personally appeared _____, being the _____, _____ for _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument as his free and voluntary act, and as the free and voluntary act and deed of said _____, for the uses and purposes therein set forth.

WITNESS my hand and official seal.

(Seal)

_____

Notary Public

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                )
County of _Orange_                                )

On _28 September 2018_ before me, _Tony Gana, Notary Public_ ,
　　　　　*Date* 　　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared _Clarke A. Smith_
　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

```
TONY GANA
Notary Public - California
Orange County
Commission # 2148987
My Comm. Expires Apr 14, 2020
```

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　*Signature of Notary Public*

　　　　　*Place Notary Seal Above*
────────────────────── **OPTIONAL** ──────────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Termination of Lease Agreement_ Document Date: _9/28/18_
Number of Pages: _10_ Signer(s) Other Than Named Above: _Witness_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Clarke A. Smith_
☒ Corporate Officer — Title(s): _Manager_
☐ Partner — ☐ Limited  ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　　☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _Yoder - 17th Street Properties LLC_

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　　☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

## Exhibit B

**Amendment to Termination of Lease Agreement**

## AMENDMENT TO
## TERMINATION OF LEASE AGREEMENT

This Amendment to Termination of Lease Agreement (this "<u>Amendment</u>") is entered into as of January 28, 2019 by and between Yoder-17th Street Properties, LLC ("<u>Landlord</u>") and Kmart of Washington, LLC ("<u>Tenant</u>") (Landlord and Tenant are collectively referred to in this Amendment as the "<u>Parties</u>").

### W I T N E S S E T H :

**WHEREAS,** Landlord and Tenant entered into that certain Termination of Lease Agreement, dated as of October 1, 2018 (the "<u>Original Agreement</u>"; as amended hereby and as further amended, or restated, or otherwise modified from time to time, the "<u>Agreement</u>"), pertaining to that certain Lease, dated December 9, 1976, for the space currently containing approximately 84,180 square feet located at 24800 W. Valley Highway, in the City of Kent, State of Washington (the "<u>Demised Premises</u>"); and

**WHEREAS**, the Parties desire to amend the Original Agreement as provided below.

**NOW, THEREFORE,** the Parties agree as follows:

1.  <u>Amendment of the Original Agreement</u>.

    (a)  Section 2 of the Original Agreement is hereby deleted and replaced with the following:

    "**<u>Termination of Lease</u>**.  Landlord and Tenant agree that, except as expressly set forth in this Agreement, the Lease and each and all of Landlord's and Tenant's respective rights and obligations thereunder shall terminate at the earlier of (i) 11:59 p.m. (Eastern Time) on December 31, 2018 or (ii) the time and date of the approval by the United States Bankruptcy Court for the Southern District of New York (the "**<u>Bankruptcy Court</u>**") of the Approval Order (the "**<u>Termination Date</u>**")."

    (b)  Section 3 of the Original Agreement is hereby deleted and replaced with the following:

    "**<u>Termination Payment</u>**. Landlord and Tenant agree that Landlord shall pay to Tenant, pursuant to wire transfer instructions provided to Landlord by Tenant, the sum of One Million and 00/100 Dollars ($1,000,000) less the Holdback Amount (as defined below) (the "**<u>Termination Payment</u>**") as valuable and fair consideration for Tenant's agreement to terminate the Lease in accordance with the terms of the Agreement. The Termination Payment shall be paid to Tenant on or before the date that is ten (10) business days after approval by the Bankruptcy Court in the Chapter 11 bankruptcy case of In re Sears Holdings Corporation, et al., Case No. 18-23538 (RDD) (Jointly Administered), of the Stipulation, Agreement, and Order, filed January 28, 2019 (the "**<u>Stipulation</u>**") approving the Agreement and authorizing Tenant to carry out the Agreement."

(c)      Section 4 of the Original Agreement is hereby deleted and replaced with the following:

"**Tenant Obligations**. The Parties hereto acknowledge and agree that Tenant has satisfied all obligations to Landlord under the Lease except (i) the transfer to Landlord of the Utility Services for the Demised Premises, and (ii) the payment of December 2018 rent in the amount of Twenty Four Thousand and 00/100 Dollars ($24,000) and the payment of common area maintenance ("**CAM**") expenses for the fourth (4th) quarter of 2018 in the amount of Fifteen Thousand Dollars and 00/100 ($15,000). Landlord shall deduct the aggregate amount of these expenses ($39,000.00) (the "**Holdback Amount**") from the Termination Payment in satisfaction of Tenant's outstanding rent and CAM obligations."

(d)      Section 5 of the Original Agreement is hereby deleted and replaced with the following:

"**Landlord Obligations**.  The Parties acknowledge and agree that the Landlord has satisfied all obligations to Tenant under the Lease."

(e)      Section 6 of the Original Agreement is hereby deleted and replaced with the following:

"**Surrender**. The Parties hereto acknowledge and agree that on November 5, 2018, Tenant surrendered the Demised Premises in a manner and condition acceptable to Landlord and no obligations with respect to Tenant's surrender of the Demised Premises remain outstanding other than the transfer by Tenant to Landlord of the Utility Services for the Demised Premises and Tenant shall transfer to Landlord the Utility Services for the Demised Premises upon the Bankruptcy Court's approval of the Stipulation."

(f)      Section 8(a)(i) of the Original Agreement is hereby deleted and replaced with the following:

"**Authority**.  Subject to the Bankruptcy Court's approval of the Stipulation, (a) Tenant has or will have the full right and authority to enter into this Agreement and the transactions contemplated herein; and the person signing this Agreement and any other document or instrument contemplated hereby on behalf of Tenant is or will be duly authorized to do so; and (b) this Agreement and all other documents to be executed by Tenant in connection herewith are legal, valid, and binding obligations of Tenant and are enforceable against Tenant in accordance with their respective terms."

(g)      Section 12(o) of the Original Agreement is hereby deleted and replaced with the following:

"**Releases**.   Upon completion of all obligations of Landlord and Tenant, respectively, as specifically set forth in this Agreement and except for third party

2

claims as indicated below, Landlord and Tenant shall hereby forever release and discharge each other and their respective officers, directors, members, shareholders, partners, agents, employees and affiliates from any and all claims, obligations, liabilities, damages, losses demands, and causes of action (including without limitation any causes of action under Chapter 5 of the Bankruptcy Code) which either party ever had, now has, or in the future may have against the other party arising from, under, or in any way related to the Lease or the Demised Premises.  The termination of the Lease shall not preclude a party from exercising any discovery rights it has against the other party in connection with any civil litigation or arbitration proceedings involving a third party.  The releases set forth in this Section 12(o) are intended as full settlements and compromises of each, every and all claims of every kind and nature, except for the third party claims as indicated herein or claims under this Agreement."

2.     <u>Assumption of the Original Agreement.</u>    Within one (1) business days of execution of this Amendment by the Parties, the Tenant shall file with the Bankruptcy Court the Stipulation providing for, among other things, the assumption of the Original Agreement as amended by this Amendment pursuant to section 365 of the Bankruptcy Code and, the approval of and authority to enter into, this Amendment.  At the expiration of the notice period provided for under Rule 6006-1 of the Local Bankruptcy Rules for the Southern District of New York and the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405), Tenant shall submit the Stipulation to the Bankruptcy Court to be So Ordered.

3.     <u>Counterparts</u>.  This Amendment may be executed and delivered (including by facsimile transmission or in portable document format (PDF)) in one or more counterparts, each of which, when executed, shall be deemed to be an original, and all of which taken together shall constitute one and the same agreement, with the same effect as if the signatures thereto and hereto were upon the same instrument.

4.     <u>No Modification</u>.  Except as modified by this Amendment, all of the terms, covenants, conditions and provisions of the Original Agreement shall remain and continue unmodified, in full force and effect.  From and after the date hereof, the term "Agreement" shall be deemed to refer to the Original Agreement, as amended by this Amendment.  If and to the extent that any of the provisions of this Amendment conflict or are otherwise inconsistent with any provisions of the Original Agreement, the provisions of this Amendment shall prevail.

5.     <u>Amendment</u>.  This Amendment cannot be modified in any manner except by a written agreement signed by Tenant and Landlord.

6.     <u>Governing Law</u>. The governing law of this Amendment shall be in accordance with Section 12(c) of the Agreement.

IN WITNESS WHEREOF, this Amendment has been duly executed and delivered by or on behalf of each of the parties as of the date first written above.

WEIL:\96830212\14\73219.0006

**LANDLORD:**

**YODER-17TH STREET PROPERTIES, LLC**

By: _____

Name: Clarke A Smith
Title: Manager

**TENANT:**

**KMART OF WASHINGTON, LLC**

By: _____

Name:
Title:

4

LANDLORD:

YODER-17TH STREET PROPERTIES, LLC

By: _____
    Name:
    Title:

TENANT:

KMART OF WASHINGTON, LLC,
a Washington limited liability company
By:  Kmart Corporation, a Michigan corporation,
    Its sole member

By: _____
    Name: Jane S. Borden
    Title: President, Real Estate

4