**Hearing Date and Time: February 14, 2019 at 10:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

------------------------------------------------------------ x

## DEBTORS' OBJECTION TO MOTION OF
## CERTAIN UTILITY COMPANIES FOR ADEQUATE ASSURANCE

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and together with their non-debtor affiliates, the "**Company**"), hereby object to (a) the *Motion of Certain Utility Companies to Determine Adequate Assurance of Payment Pursuant to Section 366(c) of the Bankruptcy Code* (ECF No. 1395) (the "**Motion**") filed by Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Public Service Company of Oklahoma and Southwestern Electric Power Company, Arizona Public Service Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, City of Ocala, Florida, Consolidated Edison Company of New York, Inc., Orange & Rockland Utilities, Virginia Electric and Power Company d/b/a Dominion Energy Virginia, The Dominion East Ohio Gas Company d/b/a Dominion East Ohio, Connecticut Light & Power Company, Public Service Company of New Hampshire, Yankee Gas Services Company, NStar Electric Company, Eastern Massachusetts, NStar Electric Company, Western Massachusetts, West Perm Power Company, Monongahela Power Company, Potomac Edison Company, Toledo Edison Company, Metropolitan Edison Company, Jersey Central Power & Light Company, Pennsylvania Electric Company, The Cleveland Electric Illuminating Company, Ohio Edison Company, Pennsylvania Power Company, Florida Power & Light Company, Georgia Power Company, Boston Gas Company, Colonial Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy

2

Delivery New York, Massachusetts Electric Company, Narragansett Electric Company, Niagara Mohawk Power Corporation, New York State Electric and Gas Corporation, Rochester Gas & Electric Corporation, Salt River Project, San Diego Gas and Electric Company, Southern California Gas Company, Sacramento Municipal Utility District, Southern California Edison Company, Tucson Electric Power Company, UNS Electric, Inc., UNS Gas, Inc. and Public Service Electric and Gas Company (collectively, the "**Movants**"); and (b) the Joinder to the Motion filed by Jackson Electric Membership Corporation (ECF No. 1533) ("**Jackson EMC**," and, together with the Movants, the "**Objecting Utilities**") and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Objecting Utilities rehash arguments previously made—and lost—before this Court, in the hopes that the Court will disregard its prior rulings issued under similar circumstances and, this time, grant the relief requested. *See In re Great Atl. & Pac. Tea Co. Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Oct. 14, 2015) (hereinafter *A&P II*); *In re The Great Atl. and Pac. Tea Co.*, Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 13, 2011) (hereinafter *A&P I*).   As previously decided by this Court and as affirmed by the District Court, the Debtors' offer of two weeks adequate assurance in a segregated, interest bearing account—a standard practice in the Southern District of New York and other sophisticated districts—is a sufficient form of adequate assurance under section 366 of the Bankruptcy Code.

2.      As provided in the Utility Order, the Debtors have deposited a minimum of $9.2 million—which represents an average spend of two weeks of utility service—into a newly created, segregated, interest-bearing bank account as adequate assurance of postpetition utility service payments.   The Objecting Utilities have

3

nevertheless demanded that the Debtors provide them with cash deposits equivalent to <u>two months</u>' worth of prepetition payments. Ultimately, granting the Objecting Utilities request would require the Debtors to set aside ***an additional $7.25 million of cash*** during a crucial period in these cases to guarantee payment of postpetition amounts to only a handful of the Debtors' hundreds of utility providers. This is not what section 366 of the Bankruptcy Code requires.

3.      The Objecting Utilities have not provided any valid reasons, and cannot demonstrate any real risk of postpetition non-payment on the part of the Debtors, that warrants the Debtors providing more than what has already been offered, let alone acquiescing to their demands for excessive Adequate Assurance made by the Objecting Utilities. The cash available to the Debtors is put to better use in the administration of the Debtors' estates and operation of their businesses rather than being set aside as a *de facto* guarantee for the Objecting Utilities.

4.      For these reasons and the reasons set forth more fully below, the Objecting Utilities' Motion should be denied.

## ARGUMENT[2]

### A.      The Court-Approved Deposit is Adequate Assurance of Payment

5.      The Objecting Utilities argue that a deposit equal to two weeks' worth of payments does not constitute "adequate assurance" under section 366 of the Bankruptcy Code. Yet, many of the same utilities have been overruled on this exact same argument at least two prior times by this Court. *See A&P II* (ECF No. 1370),

---

[2] To the extent the Objecting Utilities make any procedural arguments not expressly addressed herein, such arguments should be dismissed. Entry of the Utility Order has not prejudiced the Objecting Utilities in seeking additional adequate assurance or consideration of such issues by this Court.

attached hereto as **Exhibit A**; *A&P I* (ECF No. 503), attached hereto as **Exhibit B**. Nothing has changed since the Court issued its rulings in *A&P I* or *A&P II*. The law in this district still only requires courts to approve "an amount that is adequate enough to insure against unreasonable risk of nonpayment," but not give "the equivalent of a guaranty in payment in full." *A&P I*, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (citing *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 81 (Bankr. S.D.N.Y. 2002)).

6.      Contrary to the argument made by the Objecting Utilities the Adequate Assurance Account is not underfunded. In determining what constitutes adequate assurance in the context of section 366, courts must, in "a given case . . . focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. at 81 (quoting *Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997)). Thus, the needs of the utility must be balanced against the Debtors' need to maintain liquidity, which could be jeopardized by "a mechanical imposition of requirements for deposits." *Id.* at 82.

7.      In the instance of Arizona Public Service Company, Southern California Edison Company, and San Diego Gas and Electric Company—three accounts the Objecting Utilities point to as proof of underfunding (*see* Motion at 19)—the Debtors' records show prepetition credits for these utilities in excess of both outstanding prepetition bills and two weeks of postpetition service. As a result, the Debtors did not include additional money in escrow for these utilities as adequate assurance.

8.      In the case of other utilities, where the Objecting Utilities complain that tariffs prove the inadequacy of the amounts provided, this Court has already held that it is not bound by state or local law, regulations, or tariffs.  *See A&P I* (ECF No. 503).  This holding was affirmed on appeal.  *See A&P I*, 2011 WL 5546954, at *5 ("As to Appellants' first argument—that "public utility tariffs have specifically set forth the procedures for obtaining cash deposits, maintaining those deposits . . . and accounting to customers concerning those deposits' and therefore govern what qualifies as adequate assurance—there is ample authority to the contrary."); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. at 80 ("[B]ankruptcy courts are not bound by local or state tariff regulations."); *see also In re Steinebach*, 303 B.R. 634, 644 (Bankr. D. Ariz. 2004) ("[T]he determination of what constitutes adequate assurance is a federal bankruptcy law question.  While the state regulatory scheme may inform that determination, state law does not control.") (internal citation omitted).   As it has done so before, this Court should reject the Objecting Utilities' attempt to use state and local regulations and tariffs to displace the plain language of section 366(c)(1)(A).  *See* Motion at 22.

9.      The Objecting Utilities additionally argue that the adequate assurance provided is inadequate because the Adequate Assurance Account is subject to the liens of the debtor-in-possession financing lenders (the "**DIP Financing Lenders**"). *See* Motion at 20.  Although true, such a lien is not unusual for a chapter 11 case with debtor-in-possession financing.   Moreover, in this case, the DIP Financing Lenders agreed to certain budgeted items, including the amount needed to fully fund the Adequate Assurance Account as well as ongoing payment of the postpetition utility costs as part of the rolling 13-week cash flow forecast.  *See Final Junior DIP Order (I) Authorizing the*

6

*Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (III) Granting Related Relief*, § 6.03; Exhibit A (included in line item "Total Other Non-Operating Disbursements") (ECF No. 1436) (the "**Junior DIP Order**"); *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief*, §6.03; Exhibit C (included in line item "Total Other Non-Operating Disbursements") (ECF No. 955) (the "**Senior DIP Order**").  As Debtors are bound by a covenant to comply with the rolling budget, there are sufficient amounts set aside to cover the utilities' postpetition payments for the near term.  *See* Junior DIP Order, § 6.03(b); Senior DIP Order, § 6.03(b).

10.    Additionally, while the Adequate Assurance Account is not "Excluded Property" under the Junior DIP Order and Senior DIP Order, and therefore is subject to debtor-in-possession liens, the Adequate Assurance Account is not subject to a cash sweep under the Senior DIP Order nor is it subject to account control agreements under either debtor-in-possession financing facility.  *See* Junior DIP Order, § 6.01(m)(ii); Senior DIP Order, § 6.01(m)(ii).  As a result, the utilities effectively have a structurally senior claim to funds deposited in the Adequate Assurance Account for their benefit.

11.    This Court has previously noted that lenders' willingness to agree in a budget to an adequate assurance amount and continued payment for postpetition utility services lends itself to finding such assurance sufficient under section 366.  *See*

*A&P II*, Hr'g Tr. 119:17–120:21 (Sept. 21, 2015) (ECF No. 1506), excerpts attached as

**Exhibit C**.  In *A&P II*, the objecting utilities argued that the lien on the adequate

assurance account, along with the lack of an explicit carve out similar to a professionals

carve out under section 364(d), demonstrated the insufficiency of the proposed adequate

assurance account.  In dismissing this argument, this Court noted "if the secured lenders

and the DIP lenders weren't prepared to, in essence, have a carve-out that's in the budget

for [the adequate assurance account and the ongoing payment of utilities for postpetition

services], I think I'd be much more amenable to a bigger deposit."  *See A&P II*, Hr'g Tr.

119:20–23 (Sept. 21, 2015).[3]

12.     Here the Court should again disregard the Objecting Utilities

concerns.  As in *A&P II*, the Senior DIP Order and Junior DIP Order contain a line-item

budget that reserves an adequate assurance deposit for utilities and for the ongoing

payment of utilities for their postpetition services.  *See* Junior DIP Order, Exhibit A

(included in line item "Total Other Non-Operating Disbursements"); Senior DIP Order,

Exhibit C (same).  In light of such reserve, the Objecting Utilities' request for a larger

deposit is unwarranted.  *See A&P II*, Hr'g Tr. 119:20–23 (Sept. 21, 2015).

13.     Furthermore,  most, if not all, of the accounts at issue will remain

the responsibility of the Debtors for only a limited period of time.  The Debtors are

seeking to sell substantially all of their assets in the very near term and to wind-down the

Debtors' estates.  Thus, the Objecting Utilities' demand for two months' cash deposit to

be held by the Objecting Utilities unnecessarily leaches cash from the Debtors to their

detriment during a transition period where the bulk of the Debtors' operating business,

---

[3] The Court clarified in the next exchange that it did not mean a denominated carve-out, but rather a line
item in the budget.  *See A&P II*, Hr'g Tr. 120:5–7 (Sept. 21, 2015).

and the Debtors' use of ongoing utility services in connection therewith, will cease. Moreover, to the extent there is a material adverse change in the Debtors' financial condition within this short period, the Utility Order expressly provides that a utility may seek relief from the Court to request additional assurance. *See* Utility Order ¶ 11.

### B.        The Debtors Have Been Paying All Postpetition Bills

14.        The Debtors' postpetition payment history does not warrant an increase in adequate assurance.  Shortly after the Debtors filed for bankruptcy, several of the Objecting Utilities' accounts fell behind due to missing invoices or disagreements regarding proration of the bill into a prepetition and postpetition period.  The Debtors, and their third party service provider, Engie Insight Services Inc. ("**Engie**"), worked diligently with the Objecting Utilities to address these issues, resulting in the past due accounts being brought current.  The Debtors have, and Engie manages, approximately 6,500 accounts.  Every now and again, it is not unusual for a business of this size to inadvertently fail to timely pay an invoice due to, among other things, a utility mailing an invoice to the wrong location.  To the extent the Debtors become aware of a late payment, however, the Debtors have been diligent in bringing the impacted account current as soon as possible.

### C.        The Court-Approved Deposit is a Valid Form of Assurance Under Section 366(c)

15.        Disregarding the prior ruling of this Court and the District Court's affirmance, the Objecting Utilities contend that the form of adequate assurance is improper because a segregated bank account is not expressly set forth in section 366(c)(1)(A) and because deposits are not held separately by each of the Objecting Utilities.

16.     Courts interpreting section 366(c)(1)(A) of the Bankruptcy Code have found that segregated, interest-bearing accounts, identical in form to the Adequate Assurance Account, qualify as a proper form of assurance of payment.  *See, e.g., In re Crystal Cathedral Ministries*, 454 B.R. 124, 130 (C.D. Cal. 2011) (finding that the bankruptcy court's determination that a segregated bank account is a "cash deposit" does not run afoul of the plain meaning of the statutory language)); *In re Chrysler LLC*, Case No. 09-50002, 2009 WL 1357949, at *2 (Bankr. S.D.N.Y. May 14, 2009) (approving initial adequate assurance deposit of two weeks' worth of payments held in a segregated bank account); *In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr. E.D. Va. Jan. 14, 2009).  Courts also have rejected the argument that an account does not qualify as adequate assurance simply because it is not held by the objecting utility provider.  *See, e.g., In re Crystal Cathedral Ministries*, 454 B.R. at 131–32.  Both this Court and the District Court in *A&P* agreed with these authorities in overruling these same arguments:

> I find the Crystal Cathedral Ministries court's reasoning instructive and persuasive.  At the Final Hearing, Judge Drain heard arguments from the parties concerning whether the Adequate Assurance Account was a cash deposit within the meaning of the Bankruptcy Code.  In response to Appellants' argument that "[i]t's not a cash deposit we're holding.  It's not cash that we have," Judge Drain responded, "[i]t's in escrow.  The escrow says, you know, present the escrow, say we're drawing on it because of our bill." . . . Conversely when Appellees' counsel suggested that the Adequate Assurance Account was akin to a letter of credit, which is expressly provided as an assurance of payment under Section 366(c)(1)(A), Judge Drain agreed, stating "effectively you're getting a letter of credit . . ." The Bankruptcy Court reasonably found that the Adequate Assurance Account was a cash deposit or akin to a letter of credit within the meaning of the Bankruptcy Code, and

there was no persuasive reason why the utility providers,
rather than an escrow agent, needed to control it.

*The Great Atl. & Pac. Tea Co*., 2011 WL 5546954, at \*6.

17.     The Objecting Utilities offer no reasons for the Court to deviate
from this precedent.

### D.     The Objecting Utilities' Remaining Objections

18.     In addition to the Objecting Utilities' request to substantially
increase and modify the form of the Debtors' proposed adequate assurance, they request
certain other terms and conditions be placed on the adequate assurance of payment.   *See*
Motion ¶ 16.

19.     The Debtors have been in regular communication with counsel to
the Objecting Utilities regarding a resolution of the Objecting Utilities' proposed terms
and conditions.   The Debtors agree that they will provide the Objecting Utilities with
notice of any termination of services for any reason.   In addition, the Debtors agree to pay
the undisputed portion of any prepetition invoices by the applicable due date.

## CONCLUSION

20.     The Debtors respectfully request that the Court deny the Motion

and find the adequate assurance provided under this Court's Utility Order is sufficient.

Dated: February 7, 2019
      New York, New York

           */s/* Jessica Liou
           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York  10153
           Telephone:  (212) 310-8000
           Facsimile:  (212) 310-8007
           Ray C. Schrock, P.C.
           Jacqueline Marcus
           Garrett A. Fail
           Sunny Singh
           Jessica Liou

           *Attorneys for Debtors and Debtors in Possession*

**Exhibit A**

**A&P II -  (ECF No. 1370)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re                                                    :
                                                         :        **Chapter 11**
**THE GREAT ATLANTIC & PACIFIC TEA**                     :
**COMPANY, INC.,** *et al.*,                             :        **Case No. 15-23007 (RDD)**
                                                         :
                    **Debtors.**[1]                      :        **(Jointly Administered)**
-------------------------------------------------------------------x

## ORDER DENYING THE MOTION OF CERTAIN UTILITY COMPANIES TO: (A) VACATE, AND/OR RECONSIDER, AND/OR MODIFY THE ORDER PURSUANT TO 11 U.S.C. § 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, AND (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICE

Upon the (a) motion (the "**Motion**") of Consolidated Edison Solutions, Inc.,

Jersey Central Power & Light Company, New York State Electric and Gas Corporation, Orange

and Rockland Utilities, Inc., PECO Energy Company, Public Service Electric and Gas Company,

Rockland Electric Company, The Connecticut Light and Power Company d/b/a Eversource

Energy, and Yankee Gas Service Company d/b/a Eversource Energy (ECF No. 363)

(collectively, the "**Movants**"), (b) the Joinder to the Motion filed by Consolidated Edison

Company of New York, Inc., The Brooklyn Union Gas Company d/b/a National Grid NY, and

Keyspan Gas East Corporation (ECF No. 366), (c) the Joinder to the Motion filed by Public

Service Enterprise Group Long Island (ECF No. 711), and (d) Joinder to the Motion filed by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599).  The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

Plymouth Rock Energy LLC, NY (ECF No. 853) (together, with the Movants, the "**Utilities**") for

an order vacating, reconsidering, and/or modifying the *Order Pursuant to 11 U.S.C. §§ 105(a)*

*and 366 (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility*

*Providers, (II) Establishing Procedures for Determining Adequate Assurance of Payment for*

*Future Utility Services, and (III) Prohibiting Utility Providers from Altering, Refusing, or*

*Discontinuing Utility Service* (ECF No. 203) (the "**Utilities Order**")[2], all as more fully set forth

in the Motion; and upon the Debtors' objection to the Motion (the "**Objection**") (ECF No. 956);

and the Court having jurisdiction to decide the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of

Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C.§ 157(a)-(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of

the hearing held before the Court on September 21, 2015 (the "**Hearing**"); and based on the

findings and conclusions of the Court and for the reasons stated by the Court on the record at the

Hearing, it hereby is

ORDERED that the Motion is denied except to the extent set forth herein; and it

is further

ORDERED that the amounts that shall be held in the Adequate Assurance Deposit

for the Utilities, as defined herein, are set forth in Schedule 1 to this Order; and it is further

ORDERED that, notwithstanding anything to the contrary in the Utilities Order,

the portion of the Adequate Assurance Deposit attributable to each Utility shall be returned to the

Debtors on the earlier of (a) after the Debtors have satisfied in full all postpetition obligations

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms
in the Utilities Order.

due and owing to the applicable Utility and (b) the conclusion of these chapter 11 cases, if not applied earlier; and it is further

ORDERED that the Debtors shall furnish to each affected Utility Provider reasonably advance notice[3] of an account closing and anticipated closing date so that the applicable Utility can promptly close the account when the Debtors no longer require service at the account and issue a final billing statement for the closed account; and it is further

ORDERED that, upon issuance of an updated budget pursuant to the final order authorizing the Debtors to, among other things, obtain third lien postpetition financing (ECF No. 531) (the "**Final DIP Order**"), the Debtors shall confirm to counsel for the Movants that sufficient funds for the timely payment of all postpetition utility charges are included in the Debtors' Budget (as defined and contemplated by the Final DIP Order) and provide a redacted copy of the Budget, if requested, by the Movants' counsel, subject to appropriate confidentiality restrictions acceptable to the Debtors; and it is further

ORDERED that the terms and conditions set forth in this Order immediately shall be effective and enforceable upon its entry; and it is further

ORDERED that, except as expressly set forth herein, the Utilities Order shall remain in full force and effect; and it is further

---

[3] The Debtors will endeavor to provide up to two weeks advance notice to the extent practicable.

3

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: October 13, 2015
       White Plains, New York

                                       _/s/Robert D. Drain_____
                                     UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| Utility Provider | Two-Week Deposit |
|---|---|
| Consolidated Edison Company of New York, Inc. | $634,445.00 |
| Consolidated Edison Solutions, Inc. | $382,000.00 |
| The Connecticut Light and Power Company (d/b/a Eversource Energy) | $47,808.00 |
| Yankee Gas Service Company (d/b/a Eversource Energy) | $22,540.00 |
| Jersey Central Power & Light Company | $84,275.00 |
| The Brooklyn Union Gas Company (d/b/a National Grid NY) | $17,283.00 |
| KeySpan Gas East Corporation | $37,091.00 |
| New York State Electric and Gas Corporation | $53,912.00 |
| Orange and Rockland Utilities, Inc. | $26,763.00 |
| PECO Energy Company | $258,335.00 |
| Public Service Electric and Gas Company | $289,782.00 |
| Public Service Enterprise Group Long Island | $326,926.00 |
| Rockland Electric Company | $38,338.00 |

**Exhibit B**

**A&P I – (ECF No. 503)**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| THE GREAT ATLANTIC & PACIFIC TEA | ) | Case No. 10-24549 (RDD) |
| COMPANY, INC., *et al.* | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER DETERMINING ADEQUATE
## ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

Upon the motion (the "***Motion***")[1] of The Great Atlantic & Pacific Tea Company, Inc.

("***A&P***") and certain of its affiliates, as debtors and debtors in possession (collectively, the

"***Debtors***"),[2] for entry of an order (this "***Order***") determining adequate assurance of payment for

future utility services; and upon the Declaration of Frederic F. Brace, Chief Administrative

---

[1]  All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL
Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW
Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best
Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars
Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart,
Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC
(9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape
Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp.
(7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster
Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard
Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale
Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc.
(9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring
Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491);
Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc.
(4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South
Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper
Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599).  The location of the Debtors' corporate headquarters is
Two Paragon Drive, Montvale, New Jersey 07645.

Officer and Chief Restructuring Officer of The Great Atlantic & Pacific Tea Company, Inc., in

Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "**Brace Declaration**");

and the Court having found that this Court has jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334; and the Court having found that the Motion is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and the Court having found that venue of this case and the Motion in this District is

proper pursuant to 28 U.S.C. § 1408; and there being due and sufficient notice of the Motion, no

other or further notice of the Motion being required; and upon the objections to the Motion; and

upon the record of the January 10, 2011 hearing on the Motion (the "**Hearing**"); and the Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and any objections to the relief requested herein

having been withdrawn, resolved as provided in this Order or overruled on the merits for the

reasons stated by the Court at the Hearing; and after due deliberation and sufficient cause

appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      Absent compliance with the procedures set forth in the Motion and this Order, the

Debtors' utility providers (the "**Utility Providers**") are prohibited from altering, refusing or

discontinuing service on account of any unpaid prepetition charges and are deemed to have

received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

3.      As Adequate Assurance, the Debtors shall deposit the sum of $7.45 million (the

"**Adequate Assurance Deposit**") into a newly-created, segregated, interest-bearing bank escrow

account (the "**Adequate Assurance Account**"); *provided, however*, that to the extent any Utility

Provider receives any value from the Debtors on account of adequate assurance, the Debtors may

reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account by such

2

amount.  Subject to the foregoing proviso, the Adequate Assurance Amount shall be payable to each Utility Provider upon demand and presentment of unpaid, overdue utility bills by each such Utility Provider, in an amount not to exceed the two weeks projected payments for such Utility Provider upon which the Debtors calculated the proposed $7.45 million deposit amount.

4.      The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the earlier of (a) the Debtors' termination of services from such provider, *provided*, *however*, that such deposit may continue to be held by, or for the benefit of, a Utility Provider, until such time as the Debtors have satisfied outstanding postpetition utility bills with respect to such Utility Provider or (b) the conclusion of these chapter 11 cases, if not applied earlier.

5.      In the light of all of the relevant facts and circumstances and based on the Court's assessment of the degree of risk of nonpayment given the Debtors' cash flow from operations, cash on hand and proceeds from the DIP Facility, the Adequate Assurance Deposit and the Cash Deposits under paragraph 16 hereof with the Deposit Utility Providers (together, the "***Adequate Assurance***") constitute adequate assurance of the Debtors' ability to pay for future utility services to the Utility Providers in the ordinary course of business, and are deemed to be "adequate assurance" of payment as the term is used in section 366 of the Bankruptcy Code.

6.      Any Utility Provider desiring assurances of payment in addition to the Adequate Assurance, in the form of deposits, prepayments or otherwise, must serve a request (an "***Additional Assurance Request***") in accordance with the procedures set forth on Exhibit 1 attached hereto (the "***Adequate Assurance Procedures***") upon the following parties at the following addresses:  (a) The Great Atlantic & Pacific Tea Company, Inc., Two Paragon Drive, Montvale, New Jersey 07645, Attn.:  Paul Davidovicz; (b) Kirkland & Ellis LLP, 601 Lexington

3

Avenue, New York, New York 10022-4611, Attn.: Paul M. Basta, Attn.: Ray C. Schrock, Attn.:

Nikki R. Thomas; (c) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005, Attn.: Dennis F. Dunne, Attn.: Matthew S. Barr, Attn.: Abhilash M.

Raval; (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017,

Attn.: Donald S. Bernstein, Attn.: Marshall S. Huebner; and (e) the Office of the United States

Trustee for the Southern District of New York at 33 Whitehall Street, 21st Floor, New York,

New York 10004 (collectively, the "***Notice Parties***").

7.      Any Additional Assurance Request must (a) be made in writing, (b) set forth the

location for which utility services are provided, (c) include a summary of the Debtors' payment

history relevant to the affected account(s), including any security deposits and (d) explain why

the Utility Provider believes the Adequate Assurance is not sufficient adequate assurance of

future payment.

8.      Upon the Debtors' receipt of any Additional Assurance Request, the Debtors shall

have the greater of (a) twenty (20) days from the receipt of the Additional Assurance Request

and (b) thirty (30) days from the date of entry of this Order (collectively, the

"***Resolution Period***") to negotiate with the Utility Provider to resolve the Utility Provider's

Additional Assurance Request.

9.      The Debtors may, in their sole discretion, resolve any Additional Assurance

Request by mutual agreement with the Utility Provider and without further order of the Court,

and may, in connection with any such agreement, in their sole discretion, provide a Utility

Provider with additional adequate assurance of future payment, including but not limited to cash

deposits, prepayments or other forms of security, without further order of this Court if the

Debtors believe such additional assurance is reasonable; *provided*, *however*, that the Debtors

4

shall provide the Committee and the administrative agent for the Debtors' postpetition secured lenders (the "**Agent**") with notice of the resolution of any Additional Assurance Request.

10.     If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors or the Utility Provider, during or immediately after the Resolution Period, will request a hearing before this Court on proper notice to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code.

11.     Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be restrained from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Adequate Assurance.

12.     On the twentieth (20th) day following the entry of this Order, all Utility Providers who have not filed a timely Adequate Assurance Request shall be (a) deemed to have adequate assurance of payment "satisfactory" to such Utility Provider within the meaning of section 366 of the Bankruptcy Code; and (b) restrained from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance unless and until: (x) the Debtors, in their sole discretion, agree to an alternative assurance of payment with the Utility Provider; or (y) the Court enters an order requiring that additional adequate assurance of payment be provided.

13.     The Debtors are authorized, in their sole discretion, with reasonable prior notice to the Committee and the Agent, to amend the utility service list attached as <u>Exhibit 2</u> hereto (the

"*Utility Service List*") to add or delete any Utility Provider, and the Order shall apply to any Utility Provider that is subsequently added to the Utility Service List.

14.     For those Utility Providers that are subsequently added to the Utility Service List, the Debtors will (a) add an amount to Adequate Assurance Deposit equal to two weeks of projected utility charges (unless previously added to such Deposit or already on deposit or otherwise serving as adequate assurance for such Utility Provider) and (b) serve a copy of this Order on the subsequently added Utility Provider.  Subsequently added entities shall have twenty (20) days from the date of service of the Order to make an Additional Assurance Request.

15.     Any Utility Provider who fails to request additional assurance in accordance with the procedures set forth on Exhibit 1 attached hereto shall be deemed to consent to the Adequate Assurance Procedures and shall be bound by this Order.

16.     The Debtors shall fund as soon as reasonably practicable a two-week cash deposit (the "*Cash Deposit*"), in an amount to be agreed upon by the parties as soon as reasonably practicable, to the respective parties that objected ("the *Deposit Utility Providers*") to the Motion and pursued such objection at the Hearing; provided that, if any of the respective parties and the Debtors are unable to agree to such amount, the Court shall hear such parties on the issue of the proper two-week amount at the February 1, 2011 omnibus hearing.

17.     Upon the delivery of a Carve Out Notice as defined under the DIP Order, the Debtors shall fund the respective Cash Deposits in an amount equal to an additional projected bill for two weeks utilities service to be agreed upon by the parties (the "*Carve-Out Deposit Amount*"); provided that, if the parties are unable to agree to the Carve Out Deposit Amount, the Court shall hear the parties on the issue at the February 1, 2011 omnibus hearing.

6

18.     Upon receipt of the Carve Out Notice, the Debtors shall promptly send such notice to the Deposit Utility Providers.

19.     Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtors or an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

20.     To the extent there may be any inconsistency between the terms of the Interim DIP Order or the Final DIP Order, if and when entered, and this Order, the terms of the Interim DIP Order or Final DIP Order, as applicable, shall govern.

21.     Nothing in the Motion or this Order, nor as a result of any payment or deposit made pursuant to this Order, shall be deemed or construed as a waiver of the right of the Debtors, the Agent, or the Committee, or shall impair the ability of the Debtors, the Agent or the Committee, to contest the validity and amount of any payment or deposit made pursuant to this Order.

22.     The wholly-owned subsidiaries of Verizon Communications Inc. (collectively, "*Verizon*") and Cellco Partnership and its controlled affiliates, collectively doing business as Verizon Wireless ("*Verizon Wireless*"), filed an objection [D.E. #334] to the Motion. Notwithstanding anything else contained herein, the Motion is adjourned solely as to Verizon and Verizon Wireless to the next omnibus hearing date in this case, which is February 1, 2011 at 10:00 a.m.  All rights of the Debtors, and all objections of Verizon and Verizon Wireless to the Motion, are hereby preserved pending such hearing.  Prior to the disposition of the Motion as to Verizon and Verizon Wireless, neither Verizon nor Verizon Wireless shall discontinue, alter or

7

10-24549-rdd    Doc 303    Filed 01/13/11    Entered 01/13/11 10:46:43    Main Document
Pg 8 of 18

refuse service to, or discriminate against, the Debtors on the basis of the commencement of these chapter 11 cases or as a result of any unpaid prepetition charges.

23.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

24.    The requirements set forth in Local Rule 9013-1(b) are satisfied by the contents of the Motion.

25.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  White Plains, New York
      January 12, 2011                                 /s/Robert D. Drain
                                               United States Bankruptcy Judge

K&E 18214502.7

18-23538-shl    Doc 503    Filed 02/13/19    Entered 02/13/19 10:46:43    Main Document
Pg 29 of 36

**EXHIBIT 1**

**Adequate Assurance Procedures**

James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

    - and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Proposed Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| THE GREAT ATLANTIC & PACIFIC TEA | ) | Case No. 10-24549 (RDD) |
| COMPANY, INC., *et al.* | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

## ADEQUATE ASSURANCE PROCEDURES

On December 12, 2010 (the "***Commencement Date***"), The Great Atlantic & Pacific Tea Company, Inc. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, "***A&P***" or the "***Debtors***"),[1] filed chapter 11 petitions commencing chapter 11 cases

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape

under title 11 of the United States Code (the "***Bankruptcy Code***"), in the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"). On the Commencement Date, the Debtors filed their *Motion for Entry of Order Determining Adequate Assurance of Payment for Future Utility Services* [Docket No. 11] (the "***Motion***"). On [_____], the Bankruptcy Court entered the Order Determining Adequate Assurance of Payment for Future Utility Services [Docket No. _____] (the "***Utilities Order***").

## A.    Proposed Adequate Assurance

1.    The Debtors will deposit an amount equal to $7.45 million <u>minus</u> the amount that otherwise would have been so deposited for Utilities who receive adequate assurance in another manner (the "***Adequate Assurance Amount***") into a newly-created, segregated, interest-bearing bank escrow account (the "***Adequate Assurance Account***"). This amount represents a sum equal to the cost of two weeks worth of the estimated aggregate monthly amount of utility services provided by all of the Utility Providers set forth on the Utility Service List, based on the Debtors' average usage for the fiscal year ending 2010; *provided, however,* that to the extent any Utility Provider receives any value from the Debtors as adequate assurance of payment, the Debtors may reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account by such amount. Subject to the foregoing proviso, the Adequate Assurance Amount shall be payable upon demand and presentment of unpaid, overdue utility bills by each such Utility Provider , in an amount not to exceed the two weeks projected payments for such Utility Provider upon which the Debtors calculated the proposed $7.45 million deposit amount.

---

Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599). The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

K&E 18214502.7

B.    **Adequate Assurance Procedures**

2.    The Debtors will fax, e-mail, serve by overnight mail, or otherwise expeditiously send a copy of the Motion and Order, which includes the proposed Adequate Assurance Procedures, to each Utility Provider within three (3) business days after entry of the Order by the Court.

3.    The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the earlier of (i) the Debtors' termination of services from such provider, *provided*, *however*, that such deposit may continue to be held by, or for the benefit of, a Utility Provider until such time as the Debtors have satisfied outstanding postpetition utility bills with respect to such Utility Provider, or (ii) the conclusion of these chapter 11 cases, if not applied earlier.

4.    Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "***Additional Assurance Request***") so that it is received by the Debtors at the following addresses:  (i) The Great Atlantic & Pacific Tea Company, Inc., Two Paragon Drive, Montvale, New Jersey 07645, Attn.:    Paul Davidovicz; (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022-4611, Attn.: Paul M. Basta, Attn.: Ray C. Schrock, Attn.: Nikki R. Thomas; (iii) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn.:  Donald S. Bernstein, Attn.:  Marshall S. Huebner; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn.:  Dennis F. Dunne, Attn.:  Matthew S. Barr, Attn.:  Abhilash M. Raval; and (v) the Office of the United States Trustee for the Southern District of New York at 33 Whitehall Street, 21st Floor, New York, New York 10004 (collectively, the "***Notice Parties***").  The Additional Assurance Request must be sent to all of the above Notice Parties to be deemed valid.

5.    Any Additional Assurance Request must (i) be made in writing, (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

6.    Any Additional Assurance Request must be made and actually received by all the Notice Parties listed above by no later than 20 days after entry of the Order by this Court.  If a Utility Provider fails to file and serve a timely Additional Assurance Request, it shall be:  (i) deemed to have received adequate assurance of payment satisfactory to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) forbidden to discontinue, alter, or refuse service to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

3

7.      Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have the greater of (i) 20 days from the receipt of such Additional Assurance Request or (ii) 30 days from the date of entry of the Order (collectively, the "**Resolution Period**") to negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

8.      The Debtors may, in their sole discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their sole discretion, provide a Utility Provider with additional adequate assurance of future payment, including but not limited to cash deposits, prepayments or other forms of security, without further order of this Court if the Debtors believe such additional assurance is reasonable; *provided*, *however*, that the Debtors shall provide the Committee and the administrative agent for the Debtors' postpetition secured lenders (the "**Agent**") with notice of the resolution of any Additional Assurance Request.

9.      If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors or the Utility Provider, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code.

10.     Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider is restrained from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

## C.     Subsequent Modifications

11.     The terms of the Utilities Order apply to any subsequently identified Utility Provider.  For those Utility Providers that are subsequently added to <u>Exhibit 2</u> attached to the Order (the "**Utility Service List**"), with reasonable prior notice to the Committee and the Agent, the Debtors will serve a copy of the Order on such subsequently added Utility Provider.  Utility Providers subsequently added to the Utilities Service List shall have twenty (20) days from service of the Order to make an objection.

4

**Exhibit C**

**A&P II – Excerpts of Hr'g Tr. (Sept. 21, 2015) (ECF No. 1506)**

1    significant.  The ones that are past due right now I was

2    going to deal with debtors' counsel on it.  So there is no

3    evidence in the record that they're timely paying bills.

4    And, in fact, there was some evidence there are some bills

5    that are being slow paid or not being paid by the deadline

6    already.  But --

7         THE COURT:  But the DIP includes as part of its really

8    required  uses  --  I  mean,  they're  supposed  to  perform

9    according to the budget.  The DIP lenders don't want them

10   spending the money for something else.  I would have to

11   assume that they're actually going to use it for that

12   purpose.

13        MR. JOHNSON:  I understand that, Your Honor.  But, I

14   mean, that's an issue between them and the lender.  It's not

15   really an issue between --

16        THE COURT:  Well, no.  It's an issue for me.  I mean,

17   that is part of the -- I mean, that's -- ultimately, I have

18   to assess whether there's a reasonable risk that your

19   clients will be left with an unpaid post-petition amount.

20   And if the secured lenders and the DIP lender weren't

21   prepared to, in essence, have a carve-out that's in the

22   budget for that, I think I'd be much more amenable to a

23   bigger deposit.  I basically have to say, well, I'd force

24   them now to carve out that way instead of providing it

25   through a DIP.

1        MR. JOHNSON:  Right.  But the carve-out that the

2   professionals have is significant --

3        THE COURT:  No.  I'm not talking --

4        MR. JOHNSON:  -- different of --

5        THE COURT:  I'm not talking about a carve-out --

6   denominated carve-out 'cause the budget is really separate

7   from that.  That money is -- you know, they're not objecting

8   to that money being paid.  And in fact, they're insisting it

9   be paid, that one of the covenants in the DIP is that the

10  debtor perform according to the budget.

11       MR. JOHNSON:  I understand, Your Honor, but I guess, my

12  clients are still left out in the cold if they don't do

13  that --

14       THE COURT:  Well, I know, but it's like, you know --

15  it's one thing to be saying you're going to be left out in

16  the cold if someone hasn't provided a sleeping bag.  But I

17  think the budget provides the sleeping bag.

18       MR. JOHNSON:  If they use those funds to pay my

19  clients.

20       THE COURT:  Right.  But that's sort of inherent in the

21  term "budget".

22       MR. JOHNSON:  I understand your point, Your Honor.  I

23  just --

24       THE COURT:  Okay.

25       MR. JOHNSON:  -- think at the end of the day, it's the