Thomas R. Slome  
Michael Kwiatkowski  
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.  
990 Stewart Avenue, Suite 300  
P.O. Box 9194  
Garden City, New York 11530-9194  
Telephone: (516) 741-6565  
Facsimile: (516) 741-6706  
Email: tslome@msek.com  
       mkwiatkowski@msek.com  

and  

Russell R. Johnson III (VSB No. 31468)  
John M. Craig (VSB No. 32977)  
Law Firm Of Russell R. Johnson III, PLC  
2258 Wheatlands Drive  
Manakin-Sabot, Virginia  23103  
Telephone: (804) 749-8861  
Facsimile: (804) 749-8862  
E-mail: russell@russelljohnsonlawfirm.com  
        john@russelljohnsonlawfirm.com  

Hearing Date and Time: February 14, 2019 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) Case No. 18-23538 (RDD) |
| Debtors. | ) (Jointly Administered) |

**DECLARATION OF STEPHANIE LEMMOND IN SUPPORT MOTION OF CERTAIN UTILITY COMPANIES TO DETERMINE ADEQUATE ASSURANCE OF PAYMENT PURSUANT TO SECTION 366(c) OF THE BANKRUPTCY CODE [Docket No. 1395]**

I, Stephanie Lemmond, declare as follows:

1.    I am a Supervising Customer Service Representative for Sacramento Municipal Utility District ("SMUD") and have been in that position for 1 years and with SMUD for 22 years. In my current position with SMUD, I assist in the credit and bankruptcy operations.

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, my review of SMUD's business documents, correspondence and relevant documents, or my opinion based upon my experience concerning the operations of SMUD. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. On behalf of SMUD, I submit this Declaration in support of the *Motion of Certain Utility Companies To Determine Adequate Assurance of Future Payment Motion* (the "Motion") [Docket No. 1395]

4. In making this Declaration, I am familiar with the contents of the Motion (Docket No. 1395), *Motion of Debtors Requesting Entry of an Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment To Utility Providers, (II) Establishing Procedures For Determining Adequate Assurance of Payment For Future Utility Services, and (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Service* (the "Utility Motion")(Docket No. 196) (the "Utility Order") and the *Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment To Utility Providers, (II) Establishing Procedures For Determining Adequate Assurance of Payment For Future Utility Services, and (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Service* [Docket No. 461] (the "Utility Order").

5. It is part of my job responsibility with SMUD to: (A) review customer accounts with SMUD; (B) address credit issues with SMUD's customers; and (C) address issues concerning customers that file for bankruptcy protection, including requests for adequate assurance of payment.

6. SMUD's relationship with the Debtors is governed by regulations (the "SMUD Tariffs") that can be obtained at: https://www.smud.org/en/Rate-Information/Business-rates

7. The SMUD Tariffs establish: (a) the amount of security that SMUD is entitled to seek from its customers under applicable state law; (b) that SMUD must bill the Debtors monthly; and (c) the billing and payment terms for all of SMUD's customers. Specifically, under the billing cycle established by the SMUD's Tariffs, a customer receives approximately one month of utility goods and/or services before SMUD issues a bill for such service, which is due on presentation. If payment is not made within 3 days of the invoice due date, a late payment charge at the rate of 1.5% percent per monthly billing period is applied to the account. Service may be terminated upon a customer's failure to pay a bill for utility service within 19 days from the date payment is due, but not until SMUD has provided the customer with written notice that is mailed to the customer at the premises where service is rendered and 6 days to cure the payment default. Accordingly, a customer's account will not be terminated for non-payment of bills until at least 38 days after the service is provided.

8. As of the Petition Date, the Debtors owed SMUD $74.911.47 for billed and unbilled charges.

9. SMUD provided the Debtors with utility goods and services prior to the Petition Date and continues to provide post-petition utility goods and services to the Debtors at the Debtors' accounts that are listed on the chart attached to this Declaration as **Exhibit "A."**

10. Pursuant to the SMUD Tariffs, SMUD is entitled to seek adequate assurance of payment from the Debtors in the form of a two-month cash deposit in the amount of $126.278.00, which is the amount SMUD is seeking from the Debtors in these cases for the 11 post-petition accounts that the Debtors have with SMUD.

11. SMUD is seeking a two-month deposit in this case because: (1) of the exposure

created by its billing cycle; and (2) the importance of SMUD, as a customer owned public utility, to treat all of its customers the same.

12. SMUD held prepetition deposits, which, with interest, totaled $0.00. SMUD recouped, pursuant to Section 366(c)(4) of the Bankruptcy Code, the $0.00 prepetition deposit against the $74,911.47 prepetition debt owed by the Debtors to SMUD leaving a balance of $74,911.47.

13. For its non-bankrupt customers, SMUD accepts security in the form of cash deposits, letters of credit or surety bonds, which are forms of security maintained by SMUD.

14. Although SMUD does not want its post-petition security to be in the form of money maintained in the Adequate Assurance Account, if the Court were to hold that the security provided to SMUD is to be in that form, SMUD would ask that the Utility Order be amended to include the following additional provisions to ensure that the money held in the Adequate Assurance Account is sufficient in amount and would be available for payment of unpaid post-petition bills:

    A. The amount for SMUD be increased to $126,278.00, which is two times the highest bills for the 11 active accounts that the Debtors still have with SMUD.

    B. The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors after the Debtors' payment in full of all postpetition obligations due and owing to the applicable Utility Provider, which the Debtors shall confirm in writing with the applicable Utility Provider.

    C. The Debtors agree to pay all postpetition charges of SMUD by the applicable due date of the invoice, which is a due date established in accordance with applicable

state laws, regulations and/or tariffs.

D. If the Debtors fail to pay a utility bill when due (including the passage of any cure period), the relevant Utility Provider shall provide notice of such default to the Debtors, and if within five (5) business days of such notice, the bill is not paid, the Utility Provider may file an application with the Court certifying that payment has not been made and requesting the amount due up to an aggregate maximum equal to the Adequate Assurance Deposit allocable to such Utility Provider.

E. Notwithstanding anything in the Motion, the Order or (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"); (ii) the other documentation governing the Debtors' use of cash collateral and post-petition financing facilities; and (iii) the Approved Budget (as defined in the DIP Orders) to the contrary, there shall be no liens on the amounts in the Adequate Assurance Account for the Utility Providers that are higher in priority to the Utility Providers' rights and interests in the amounts contained and allocated in the Adequate Assurance Account for the Utility Providers. Moreover, the amounts contained in the Adequate Assurance Account shall remain available to the Utility Providers for the payment of post-petition charges, even if the Debtors cases are converted to cases under Chapter 7 of the Bankruptcy Code.

15. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 4 day of February 2019, in the city and county of Sacramento, California.

*Stephanie Lemmond*
Stephanie Lemmond

**Exhibit "A"**

| | Old Acct# | New Acct# | Address | HIGHEST BILL |
|---|---|---|---|---|
| Sears Robuck and Co #1408 | ▮4513 | ▮2233 | 5901 FLORIN RD SAC, CA 95823 | $22,885.00 |
| Sears Roebuck Co | ▮2323 | ▮2236 | 1601 ARDEN WAY SAC, CA 95815 | $18,643.00 |
| Sears Roebuck & Co | ▮9275 | ▮2239 | 1210 BLUMENFELD DR (NIGHT LIGHT) SAC, CA 95815 | $43.00 |
| Sears Roebuck Co | ▮9302 | ▮2260 | 1210 BLUMENFELD DR (NIGHT LIGHT) SAC, CA 95815 | $171.00 |
| Sears Roebuck & Co | ▮7762 | ▮2262 | 5901 SUNRISE MALL CITRUS HEIGHTS, CA 95610 | $2,045.00 |
| Sears Home Improvement Products | ▮1638 | ▮2282 | 1200 DEL PASO RD UNIT 100 SAC, CA 95834 | $1,834.00 |
| Sears Roebuck & Co Unit 8253 | ▮3351 | ▮2283 | 4326 FORUM AVE BLDG 642 MCCLELLAN AFB, CA 95652 | $3,123.00 |
| California Builder Appliances Inc | ▮8987 | ▮2287 | 11340 WHITE ROCK RD UNIT 150 RANCHO CORDOVA, CA 95742 | $1,210.00 |
| Sears Roebuck Co | ▮0577 | ▮2292 | 1200 BLUMENFELD DR SAC, CA 95815 | $10,292.00 |
| Sears Roebuck Co | ▮1673 | ▮2293 | 1200 BLUMENFELD DR (FIRE PUMP) SAC CA, 95815 | $31.00 |
| Sears Roebuck Co | ▮8983 | ▮2294 | 10379 FOLSOM BLVD RANCHO CORDOVA, CA 95670 | $2,862.00 |
| | GRAND TOTAL | | | $63,139.00 |
| | ADEQUATE ASSURANCE REQUESTING (2 TIMES HIGHEST BILL) | | | $126,278.00 |