Hearing Date and Time: February 14, 2019 at 10:00 a.m. (Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner

*Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** : | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, *et al.*,** : | Case No. 18-23538 (RDD) |
| Debtors.[1] : | (Jointly Administered) |

# LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTORS PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE TO EXTEND EXCLUSIVE PERIODS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365) ); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to *Motion of Debtors Pursuant to Section 1121(d) of the Bankruptcy Code to Extend Exclusive Periods* [ECF No. 2312] (the "Exclusivity Motion").² In support of this Limited Objection, the Creditors' Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1. Given the expected imminent closing of the sale of substantially all of the Debtors' assets to ESL (the "ESL Sale") and the estates' risk of administrative insolvency, these cases must proceed promptly toward consummation of a consensual liquidating chapter 11 plan. The Debtors' request for a four month extension of the Exclusive Periods does not progress that objective. The Debtors frame their request for an extension of the Exclusive Periods as standard procedure in these "large" and "complex" cases—a necessary next step in light of their accomplishments to date. Yet, upon the closing of the sale, (i) the Debtors no longer will have any operating businesses for which the Chapter 11 Cases are a disruption, (ii) the only assets of any significance that will remain in the Debtors' estates will be litigation claims and (iii) the estates will be at risk of being administratively insolvent. In short, the Debtors are winding down and will be liquidating their remaining assets, principally litigation claims, through a trust

---

² Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Exclusivity Motion.

2

to be established under a chapter 11 plan. These changed circumstances are not cause for a four month extension of the Exclusive Periods.[3]

2. As a result, the Court should limit any extension of the Debtors' Exclusive Periods to no more than 30 days in order for the Debtors and the Creditors' Committee to work together to reach consensus on the terms of a liquidating chapter 11 plan. Indeed, it is the Creditors' Committee's constituency that will be the primary beneficiary of the assets to be transferred to the liquidating trust under such a plan, which assets will consist primarily of significant claims and causes of action against ESL, ESL affiliates (including Lands' End and Seritage) and avoidance actions. Working swiftly with the Debtors to negotiate and document such a liquidating chapter 11 plan is of paramount importance to the Creditors' Committee's constituency and is a necessity based on the Debtors' expected financial position following the anticipated consummation of the ESL Sale. Only after substantial progress is made toward agreeing on the terms of a consensual liquidation plan, should an additional extension of the Exclusive Periods be considered, if necessary.

## BACKGROUND

3. On October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No request has been made for the appointment of a trustee or an examiner.

---

[3] Prior to filing this Limited Objection, the Creditors' Committee engaged the Debtors in discussions regarding a consensual shorter extension of the Exclusive Periods. As of the filing of this Limited Objection, no agreement has been reached but the Creditors' Committee will continue such discussions with the Debtors in advance of the hearing on the Exclusivity Motion.

3

4.      On October 24, 2018, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102 [ECF No. 276].[4]

5.      On November 1, 2018, the Debtors filed the *Debtors' Motion for Approval of Global Bidding Procedures* [ECF No. 429], and began a process to market and sell their assets. As expected, ESL was the only party to submit a bid for substantially all of the Debtors' assets on a go forward basis. After rejecting ESL's prior bids, on January 16, 2019, the Debtors designated ESL as the successful bidder. *See Notice of Successful Bidder and Sale Hearing* [ECF No. 1730].

6.      On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [ECF No. 2507]. The closing of the ESL Sale is expected to occur imminently. Indeed, each day that goes by without the ESL Closing results an additional administrative expenses burdens on these estates. Upon the closing of the ESL Sale, all that will be remaining of the Debtors' assets are "certain non-core assets" and the preserved claims and causes of action that are "Excluded Assets" from the ESL Sale.

---

[4] The Creditors' Committee currently comprises: (i) Apex Tool Group, LLC; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A., as indenture trustee; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation; (vi) Simon Property Group L.P.; (vii) The Bank of New York Mellon Trust Company, N.A., as indenture trustee; and (viii) Winiadaewoo Electronics America, Inc.

**LIMITED OBJECTION**

A.   **The Standard for Extending the Exclusive Periods**

7.   The Bankruptcy Code limits the period of time during which a debtor has the exclusive right to file a plan of reorganization and solicit acceptances thereof to 120 and 180 days, respectively. *See* 11 U.S.C. § 1121(b), (c). A party seeking an extension of exclusivity bears the burden of proving that requisite cause exists to warrant the extension. *See In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 601-02 (Bankr. S.D.N.Y. 2014) (finding debtors had not met burden of establishing cause to extend the exclusivity period); *In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) ("The burden of proving cause to reduce or increase exclusivity is on the moving party."); *In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) (finding debtor had not made necessary "clear showing of 'cause'" to extend the exclusivity period).

8.   In evaluating whether "cause" to extend or to terminate exclusivity exists, courts have distilled the relevant considerations into a number of factors. For example, the court in *In re Adelphia Commc'n Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) examined the following factors:

   i.   the size and complexity of the case;
   ii.  the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
   iii. the existence of good faith progress toward reorganization;
   iv.  whether the debtor is paying its bills as they become due;
   v.   whether the debtor has demonstrated reasonable prospects for filing a viable plan;
   vi.  whether the debtor has made progress in negotiations with its creditors;
   vii. the amount of time that has elapsed in the case;

5

      viii.    whether the debtor is using exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

      ix.    whether an unresolved contingency exists.

*See id.*, 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006) (citing *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997)) (explaining that while "cause" is not defined in the Bankruptcy Code, courts have developed a list of factors to inform the inquiry, which have come to be called the "*Adelphia* factors").

    9.    The mere existence of one or more of the *Adelphia* factors is not sufficient to justify an extension. *See In re Mid-State Raceway, Inc.*, 323 B.R. 63, 67-68 (Bankr. N.D.N.Y. 2005) (citation omitted) ("[T]he court is mindful that whether or not to grant an extension of exclusivity pursuant to Code § 1121(d) is a matter of discretion based on all the facts and circumstances"). In *Adelphia*, the court further elaborated that the primary consideration should be whether such termination "will move the case forward" materially. *See Adelphia*, 352 B.R. at 590 (citations omitted); *see also In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002) (holding that "a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution."). This amounts to "a practical call that can override a mere toting up of the factors." *Adelphia*, 352 B.R. at 590; *Borders*, 460 B.R. at 827 (citing practical considerations as determinative in considering whether to extend or terminate exclusivity). In other words, "the test is [best] expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that would [not] otherwise be the case." *Adelphia*, 352 B.R. at 590. Of course, "practical considerations or other considerations in the interest of justice, could override, in certain cases, the results after analysis of the nine factors" that courts typically consider in determining whether to extend or terminate exclusivity. *Id.*

10. Further, courts have cautioned that extensions of exclusivity should "be granted neither routinely nor cavalierly," even in the context of a debtor's first extension request. *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y 1987); *see also Borders*, 460 B.R. at 822 (Bankr. S.D.N.Y. 2011) ("A court's decision to extend a debtor's exclusive period is a serious matter[.]"). Underlying this caution, the legislative history shows the concern that "unlimited exclusivity gave a debtor 'undue bargaining leverage,' because it could use the threat of delay to force unfair concessions." *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 102 (3d Cir. 1988) (*quoting* House Report, 1978 U.S.C.C.A.A.N. at 6191) (emphasis omitted); *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("An extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory.") (quoting S. Re. No. 95-989, 95th Cong. 2d Sess. 118 (1978)). Accordingly, courts have concluded that a fundamental purpose of Bankruptcy Code section 1121 is "to limit the delay that makes creditors the hostages of Chapter 11 debtors." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 (5th Cir. 1987) (characterizing Bankruptcy Code section 1121 as "a congressional acknowledgement that creditors, whose money is invested in the enterprise no less than the debtor's, have a right to a say in the future of that enterprise"), *aff'd*, 484 U.S. 365 (1988).

11. The Debtors rely on the non-exclusive list of factors set forth in *Adelphia* in support of an extension of the Exclusive Periods. While the Creditors' Committee does not dispute that certain of the factors are present, the most relevant *Adelphia* factors do not support an extension of the Exclusive Periods. Accordingly, for the reasons set forth below, the Debtors have not satisfied their burden of demonstrating that cause exists to extend the Exclusive Periods for four months. Rather, at this time, the Exclusive Periods should be extended for a period of

7

no more than 30 days to enable to the Debtors and the Creditors' Committee, the statutory fiduciary for the primary constituency that will be entitled to proceeds from the assets to be transferred to a liquidating trust and the constituency most incentivized to minimize claims against these estates, to agree on the terms of a liquidating chapter 11 plan.

B.   **The *Adelphia* Factors Do Not Support Further Extension of Exclusivity**

   1.   **These Cases Will No Longer Be Large or Complex.**

   12.   The Debtors assert that the size and complexity of these Chapter 11 Cases alone warrant the requested extension. Exclusivity Motion ¶ 18. In support of this contention, the Debtors point to the 687 stores, 68,000 employees, thousands of vendors, thousands of real property leases and executory contracts and complex capital structure that existed as of the Petition Date. Exclusivity Motion ¶ 1. With the expected closing of the ESL Sale on the horizon, this description is no longer applicable to these cases. Other than in connection with providing transition services to ESL, the Debtors will have no stores and will have no operational employees. ESL will control decisions with respect to real estate leases and executory contracts, and, in light of ESL's credit bid and the payoff or rollover of the Debtors' DIP financings, the only claims under the Debtors' prepetition secured credit facilities will be unsecured deficiency claims. Accordingly, while the Debtors may have entered bankruptcy as a large and complex enterprise, that will simply not be the case upon closing of the ESL Sale, *see GMG Capital Partners III, L.P.*, 503 B.R. at 601 (finding that, among other things, because the debtor does not operate and, aside from limited assets, has no other assets for disposition, no leases or contracts, no employees, no secured or priority creditors and no business to restructure, an extension of exclusivity was unwarranted), thus rendering the Debtors' arguments over the size and complexity of these Chapter 11 Cases largely moot.

### 2. The Debtors Have Had Sufficient Time to Negotiate a Plan, Yet Have Not Made Good Faith Progress toward Reorganization or Demonstrated Reasonable Prospects for Filing a Viable Plan

13. While this is the Debtors' first request for an extension of their Exclusive Periods and the Debtors have been occupied with their sale efforts, they nevertheless have had the opportunity to begin negotiations with the Creditors' Committee regarding the terms of a chapter 11 plan, but have yet to seize on those opportunities. Indeed, while the Debtors cite to the efforts they have undertaken to date in the Chapter 11 Cases, none of those efforts involve negotiating and progressing toward reorganization and no plan discussions have been initiated. Exclusivity Motion ¶¶ 24-29; *see also* Dec. 18, 2018 Hr'g Tr. 17:13-20 ("[W]e talked previously about beginning work around a Chapter 11 plan, regardless of the ultimate path chosen [*i.e.*, a going concern or a liquidation] . . . we expect to initiate those discussions with stakeholders in January and push that process forward expeditiously.").

14. Formulation of a chapter 11 liquidating plan should not be a time-consuming event.[5] The Debtors' request for a four-month extension is not well grounded and could be used to exert undue leverage on the Debtors' unsecured creditors with respect to, for example, governance issues related to liquidating trust that will need to be formed under a chapter 11 plan, and the opportunity for delay would create greater risk of administrative insolvency.

### 3. The Debtors Soon Will Not be Able To Pay Bills as They Are Due.

15. The Debtors state in the Exclusivity Motion that, "the Debtors have the liquidity, are paying administrative expenses as they come due, and will continue to do so." Exclusivity Motion ¶ 37. Creditors can take no comfort in such statements, however. The Debtors' projections regarding administrative solvency have been a moving target and there has been

---

[5] As this Court observed, "[The Debtors] have a lot of incentive here to get a plan done very fast. They just want to set up a litigation trust basically." Feb. 7, 2019 Hr'g Tr. 830:9-12.

9

substantial concern raised by the Court, the Creditors' Committee and the Debtors themselves with respect to the Debtors' ability to satisfy their postpetition obligations, thus warranting only a short extension of the Exclusive Periods to ensure parties are focused properly on the negotiating and filing a consensual chapter 11 plan as soon as possible.

    **4.**    **There Are No Contingencies that Remain.**

16.    The Debtors recite a litany of contingencies that remain to be resolved by the Debtors in support of their requested four month extension. Exclusivity Motion ¶ 34. Significantly, however, not one of these unresolved contingencies are external to these cases. *See GMG Capital Partners*, 503 B.R. at 603 ("Generally, an unresolved contingency refers to some event *external* to the case that must occur or not occur in order for the case to succeed.") (emphasis added) (citations omitted). Instead, each of the contingencies listed by the Debtors—such as setting a bar date—are completely *internal* to the Debtors' bankruptcy process. With the approval of the ESL Sale, there is no external contingency that prevents the Debtors from filing a consensual liquidating plan now to limit administrative expenses and maximize unsecured creditor recoveries. *Id.*

**C.**    **Extending Exclusivity for Four Months Will Not Move These Cases Forward**

17.    Finally, practical considerations weigh against the Debtors' request for a four month extension of the Exclusive Periods. Fundamentally, a limited extension of the Exclusive Periods will enable these cases to move towards a more efficient and just resolution and hopefully minimize the administrative costs. First, any "cause" the Debtors may cite to for support of its request for an extension will necessarily has diminished substantially since the Court approved the ESL Sale. From this point on, the Debtors' unsecured creditors are the key remaining economic stakeholders of these estates and the Creditors' Committee has demonstrated its readiness to prosecute the litigation claims that will be the estates' primary

remaining assets.  Second, although admittedly busy, the Debtors have not engaged the Creditors' Committee in any plan-related discussions.[6]  Third, the concerns attendant to a reorganization (*e.g.*, feasibility) simply do not apply to a liquidating chapter 11.  Finally, the Debtors state that the extension of the Exclusive Periods for four months will not prejudice any party.  Exclusivity Motion ¶ 36.  This is not true.  Any delay in the formulation and prosecution of a consensual liquidating chapter 11 will increase dramatically the administrative claims, thereby harming the Debtors' unsecured creditors.

[*Remainder of page left blank intentionally.*]

---

[6] The Creditors' Committee will provide the Debtors with a plan term sheet prior to the hearing on the Exclusivity Motion that the Creditors' Committee hopes will form the basis for a consensual plan.

WHEREFORE, for all of the foregoing reasons, the Creditors' Committee respectfully requests that this Court limit any extension of the Debtors' Exclusive Periods to no more than 30 days in order for the Debtors and the Creditors' Committee to formulate and propose a consensual liquidating chapter 11 plan, and grant the Creditors' Committee such other relief as the Court deems just, proper and equitable.

New York, New York
Dated:  February 11, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/  Ira S. Dizengoff
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail: idizengoff@akingump.com
        pdublin@akingump.com
        sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*