Dustin P. Branch, Esquire
*(admitted pro hac vice)*
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: 424.204.4354
E-mail: branchd@ballardspahr.com

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: 215.864.8325
E-mail: Pollack@ballardspahr.com

*Attorneys for Centennial Real Estate Co.
and The Macerich Company*

**Obj. Deadline: February 11, 2019 at 4:00 p.m. ET**
**Hearing Date:  TBD[1]**

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: 302.252.4465
E-mail: heilmanl@ballardspahr.com

Alyssa E. Kutner, Esquire
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: 646.346.8075
E-mail: kutnera@ballardspahr.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re                                                      :        Chapter 11
                                                            :
SEARS HOLDINGS CORPORATION, *et al.*,      :        Case No. 18-23538 (RDD)
                                                            :
                                        Debtors.        :        (Jointly Administered)
                                                            :
-------------------------------------------------------------x

**LIMITED OBJECTION OF CENTENNIAL REAL ESTATE CO. AND THE
MACERICH COMPANY TO DEBTORS' SECOND SUPPLEMENTAL NOTICE OF
CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION
WITH GLOBAL SALE TRANSACTION**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY COURT JUDGE:**

Centennial Real Estate Co. and The Macerich Company (collectively the "Landlords"),

by their undersigned attorneys, hereby make this Objection (the "Objection") to Debtors' Second

Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory

---

[1] The Second Supplemental Notice uses store numbers for various properties that are in inconsistent with those previously identified by the Debtors. As a result, Landlords continue to have difficulty properly identifying the stores the Debtors include in their cure notices.  To the extent any leases or real properties in or adjacent to properties owned by Landlords have not appeared on the Cure Notice, Supplemental Notice, or Second Supplemental Notice, or have appeared in such notices but were inadvertently omitted from this or any prior Objection, those locations shall be deemed to be included in this Objection and cure numbers will be provided to the Debtors if and when identified or such leases or real properties become subject to notices of sale or assignment.

Contracts and Unexpired Leases in Connection With Global Sale Transaction [Docket No. 2314] (the "Second Supplemental Notice") and Supplemental Notice, and in support thereof aver:

## I.    BACKGROUND FACTS

1.    Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping centers (the "Centers") set forth on the attached Schedule A.

3.    The vast majority of Premises referred to in Schedule A are premises located in shopping centers (the "Premises"), as that term is used in 11 U.S.C. § 365(b)(3). *See* In Re: Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990).

4.    Debtors filed and served the Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction (the "Cure Notice") on January 18, 2019 [Docket No. 1731].  The Debtors filed and served their first supplemental cure notice (the "Supplemental Notice") on January 23, 2019 [Docket No. 1774].[3]   Landlords previously filed their objection to those properties listed on the Cure Notice and Supplemental Notice [Docket No. 2147], and hereby incorporate the facts and arguments contained in that cure objection as if fully set forth herein.[4]

---

[2]  All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Unless otherwise specified in this Motion.

[3] The Landlords have filed their sale objection contemporaneously with this Objection, and hereby incorporate those objections in full as if set forth in full herein.

[4] There are certain locations that were listed on the Cure Notice and Supplemental Notice that also appear on the Second Supplemental Notice. Since Landlords already filed cure objections relating to those locations that appear on the Cure Notice and Supplemental Notice, those locations are not included here, and Landlords' previous cure objection is incorporated herein by this reference.

5.      The Second Supplemental Notice was filed on January 31, 2019.  The amounts set forth in the Second Supplemental Notice do not reflect all outstanding balances due and owing to Landlords, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future.  The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

## II.      CURE OBJECTION

### A.      The Debtors' proposed cure amounts do not provide for payment of all obligations due under the Leases.

6.      The Landlords' cure, as compared to the Debtors' cure, is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1 through 3, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtor's Cure | Landlords' Cure[5] | Ex. No. |
|---|---|---|---|---|---|
| Centennial | Pueblo Mall (Sears) | 1281 | Not Included[6] | $71,005.40 | 1 |
| Centennial | Vancouver Mall (Sears) | 3889[7] | $0.00 | $15,567.31 | 2 |
| Macerich | Arden Fair Mall (Sears) | 1798 | Not Included | $28,834.49 | 3 |

---

[5] The Landlords' Cure does not include charges that are billed or come due after January 31, 2019 or charges that are billed directly to the Debtors, including in some cases, real estate taxes.  To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts.  The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Leases through the date of any cure payment.

[6] Where the Debtors' cure is listed as "Not Included," the property listed has not appeared on the Cure Notice, Supplemental Notice, or Second Supplemental Notice.  However, in light of the sale approval and outstanding balances that are owed at these properties, these properties are included in this Objection out of an abundance of caution.  Landlords reserves all rights to amend or supplement these amounts when and if these locations are identified for assumption and assignment or sale.

[7] The Debtors previously identified the Vancouver Mall store as Store No. 2239.  As with the other store numbers included in the Second Supplemental Notice, the store number in the Second Supplemental Notice does not match the prior store number provided by the Debtors.

3

7.      In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as cure or when properly billed under the Leases.

i.      *Year-end adjustments and reconciliations*

8.      In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.   In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2018 have not yet have been billed at most locations, and such charges that are accruing for 2019 will not be billed until 2020).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

9.      Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases.

4

The Debtors (or successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease. Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

10. In addition, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents, as well as environmental obligations that may have accrued or are accruing under the Leases. Any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases. Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

*ii.* *Attorneys' fees, costs, and interest*

11. The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938,

941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

12.     The Debtors (or successor) take the Leases *cum onere* – subject to existing burdens.   The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their Leases.   In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993).   If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors.   *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996).   The "full benefit of the bargain" principle has been held to require payment of interest.   "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.   One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."   In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%).   Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990).   Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases.   Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases.   Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

13.     Landlords have incurred significant attorneys' fees in connection with protecting their interests in these cases, which fees are not less than $10,000.00 per Lease. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy

these lease charges as part of the assumption or assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted).  There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154.  The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has also upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

**B.    The Cure Amounts Serve Only As Estimates.**

14.    Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

**C.    The Debtors or Assignee Must Pay Undisputed Cure Amounts Immediately.**

15.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption.  To the extent there is a dispute over the total

7

cure obligation for any Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

## III.   JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

16.   To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## IV.   CONCLUSION

The Landlords request that the Court (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, and (iii) grant such further relief as the Court deems proper.

Dated:  February 11, 2019
Los Angeles, California

Respectfully submitted,

*/s/ Dustin P. Branch*
Dustin P. Branch, Esquire
*(admitted pro hac vice)*
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: 424.204.4354
Fax: 424.204.4350
E-mail: branchd@ballardspahr.com

- and -

Alyssa E. Kutner, Esquire
**Ballard Spahr LLP**
919 Third Avenue
New York, NY 10022
Direct: 646.346.8075
E-mail: kutnera@ballardspahr.com

- and –

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: 215.864.8325
E-mail: Pollack@ballardspahr.com

- and -

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: 302.252.4465
E-mail: heilmanl@ballardspahr.com

*Attorneys for Centennial Real Estate Co.
and The Macerich Company*

## SCHEDULE A

| Centennial Real Estate Co. | | |
|---|---|---|
| Store No. 1281 | Pueblo Mall | Pueblo, CO |
| Store No. 2239<br>(listed as Store No. 3889) | Vancouver Mall | Vancouver, WA |
| The Macerich Company | | |
| Store No. 1798 | Arden Fair Mall | Sacramento, CA |

CERTIFICATE OF SERVICE

I, Dustin P. Branch, Esquire, do hereby certify that, on this 11th day of February 11, 2019, I caused a true and correct copy of the foregoing *LIMITED OBJECTION OF CENTENNIAL REAL ESTATE CO. AND THE MACERICH COMPANY TO DEBTORS' SECOND SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION* to be served  (i) via the Court's CM/ECF system upon all parties requesting electronic notice of all filings in this case; and (ii) the following parties on the attached service list in the manner indicated.

Dated: February 11, 2019

/s/ *Dustin P. Branch*
Dustin P. Branch
BALLARD SPAHR LLP

Debtors
Sears Holding Corporation
Attn: Stephen Sitley, Esq.
Luke J. Valentino, Esq.
333 Beverly Road
Hoffman Estates, IL 60179
E-mail: stephen.sitley@searshc.com
E-mail: luke.valentino@searshc.com
VIA U.S. MAIL

Weil, Gotshal & Manges LLP
Attn: Ray C. Schrock, P.C.
Jacqueline Marcus, Esq.
Garret A. Fail, Esq.
Sunny Singh, Esq.
767 Fifth Avenue
New York, NY 10153
E-mail: ray.schrock@weil.com
E-mail: jacqueline.marcus@weil.com
E-mail: garrett.fail@weil.com
E-mail: sunny.singh@weil.com
VIA U.S. MAIL

Cleary Gottlieb Steen & Hamilton LLP
Attn: James L. Bromley, Esq.
Sean A. O'Neal, Esq.
Jennifer Kennedy Park, Esq.
Andrew Weaver, Esq.
Rahul Mukhi, Esq.
One Liberty Plaza
New York, NY 10006
E-mail: jbromley@cgsh.com
E-mail: soneal@cgsh.com
E-mail: jkpark@cgsh.com
E-mail: aweaver@cgsh.com
E-mail: rmukhi@cgsh.com
VIA U.S. MAIL

Honorable Robert D. Drain
United States Bankruptcy Court
 for the Southern District of New York
300 Quarropas Street, Room 248
White Plains, NY 10601
VIA FEDEX

Office of the United States Trustee
Attn: Paul Schwartzberg, Esq.
Richard Morrissey, Esq.
201 Varick Street, Suite 1006
New York, NY 10014
VIA U.S. MAIL

Davis Polk & Wardell LLP
Attn: Marshall S. Huebner, Esq.
Eli J. Vonnegut, Esq.
450 Lexington Avenue
New York, NY 10017
E-mail: marshall.huebner@davispolk.com
E-mail: eli.vonnegut@davispolk.com
VIA U.S. MAIL

Skadden Arps Slate Meagher & Flom LLP
Attn: Paul D. Leake, Esq.
Shana A. Elberg, Esq.
George R. Howard, Esq.
4 Times Square
New York, NY 10036
E-mail: paul.leake@skadden.com
E-mail: shana.elberg@skadden.com
E-mail: george.howard@skadden.com
VIA U.S. MAIL

Akin Gump Strauss Hauer & Feld LLP
Attn: Ira S. Dizengoff, Esq.
Philip C. Dublin, Esq.
Aid Qureshi, Esq.
Joseph L. Sorkin, Esq.
One Bryant Park
New York, NY 10036
E-mail: idizengoff@akingump.com
E-mail: aqureshi@akingump.com
E-mail: pdublin@akingump.com
E-mail: jsorkin@akingump.com
VIA U.S. MAIL

Seyfarth Shaw LLP
Attn: Edward M. Fox, Esq.
620 Eighth Avenue
New York, NY 10018
E-mail: emfox@seyfarth.com
VIA U.S. MAIL

Locke Lord LLP
Attn: Brian A. Raynor, Esq.
111 South Wacker Driver
Chicago, IL 60606
E-mail: braynor@lockelord.com
VIA U.S. MAIL

Kelley Drye & Warren LLP
Attn: Eric R. Wilson, Esq.
Benjamin D. Feder, Esq.
T. Charlie Liu, Esq.
101 Park Avenue
New York, NY 10178
E-mail: ewilson@kelleydrye.com
E-mail: bfeder@kelleydrye.com
VIA U.S. MAIL

Paul Weiss Rifking Wharton & Garrison LLP
Attn: Paul M. Basta, Esq.
1285 Avenue of the Americas
New York, NY 10019
E-mail: pbasta@paulweiss.com
VIA U.S. MAIL

Carter Ledyard & Milburn LLP
Attn: James Gadsden, Esq.
2 Wall Street
New York, NY 10015
E-mail: gadsden@clm.com
VIA U.S. MAIL

Lazard Freres & Co., LLC
Attn: Levi Quaintance
30 Rockefeller Plaza
New York, NY 10112
E-mail: project.blue.rx@lazard.com
VIA U.S. MAIL