CLARK HILL PLC
Joel D. Applebaum
John R. Stevenson
151 South Old Woodward Avenue, Suite 200
Birmingham, MI 48009
Telephone (248) 988-5883
Facsimile (248) 988-2503
japplebaum@clarkhill.com
jstevenson@clarkhill.com

CLARK HILL PLC
Nola Rooney Bencze
210 Carnegie Center, Suite 102
Princeton, NJ 08540
Telephone (609) 785-2924
Facsimile (609) 785-2973
nbencze@clarkhill.com

*Attorneys for Milton Manufacturing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                                       :
                                                             :   **Chapter 11**
**SEARS HOLDING CORPORATION,** *et al.*,                     :
                                                             :   **Case No. 18-23538 (RDD)**
                                                             :
           Debtors.                                          :   **(Jointly Administered)**
-------------------------------------------------------------x

**MILTON MANUFACTURING, LLC'S REPLY TO DEBTORS' OBJECTION**
**TO: (I) MOTION TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE**
**EXPENSE CLAIM UNDER 11 U.S.C. § 503(b) [ECF NO. 1477] AND (II) MOTION**
**TO COMPEL THE DEBTOR TO ASSUME OR REJECT PURCHASE ORDERS**
<u>**AND GRANT RELATED RELIEF [ECF. NO. 1479]**</u>

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Milton Manufacturing, LLC ("<u>Milton</u>") respectfully files this reply to Debtors' Objection

[ECF No. 2481] (the "<u>Objection</u>") to *Motion of Milton Manufacturing, LLC to Allow and*

*Compel Payment of Administrative Expense Claim under 11 U.S.C. § 503(b) for Craftsman*

*Branded Goods Delivered to the Debtor Postpetition* [ECF No. 1477] (the "Motion to Allow") and *Motion of Milton Manufacturing, LLC to (I) Compel the Debtor to Assume or Reject Purchase Orders Related to Craftsman Branded Goods Order by the Debtor Being Warehoused in Taiwan, and (II) Grant Related Relief* [ECF No. 1479] (the "Motion to Compel", and, with the Motion to Allow, the "Motions"),[1] and in support thereof, states as follows:

## Introduction

1.  Nothing in the Debtors' Objection supports denial of either the Motion to Allow or the Motion to Compel. Importantly, with respect to the Motion to Allow, the Debtors do not contest, nor could they contest, the following facts:

- the Debtor ordered various goods from Milton prepetition (the "Goods");[2]

- the Debtor commenced its chapter 11 case on October 15, 2018;

- the Goods were delivered to the Debtors postpetition on October 18, 2018 and November 9, 2018;

- the Debtors accepted the Goods postpetition;

- the Goods provided benefit, and continue to provide benefit, to the Debtors' estates since, *inter alia*, the Debtors are selling the Goods postpetition; and

- the Debtor owes Milton $377,132.16 for the Goods.

Based on these facts alone, Milton is entitled to an administrative expense claim in the amount of $377,132.16 under the Final Order[3] and section 503(b)(1)(A) of the Bankruptcy Code, and the

---

[1] Capitalized terms used but not defined herein and defined in the Motions shall have the meanings ascribed to such terms in the Motions.

[2] The Goods are described in paragraph 3 of the Motion to Allow and listed in the Purchase Orders attached as Exhibit A thereto.

[3] *Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business* [ECF No. 843].

Debtors should be compelled to immediately pay Milton the same.

2.      Furthermore, with respect to the Motion to Compel, the Debtors do not dispute that Milton has incurred substantial costs in manufacturing the products ordered by the Debtor currently being warehoused in Taiwan, has incurred, and continues to incur, storage fees, and has been threatened with lawsuits since it has been unable to pay certain of its suppliers in full due to the Debtor's nonpayment.  The harm to Milton in having to wait for additional weeks or months to have the purchase orders assumed or rejected is significant.  In contrast, the potential harm to the Debtors in having to assume or reject the purchase orders now is minimal.  The Debtors and, if necessary, the potential purchaser of the Debtors' assets, should be able to make a determination whether they want the goods being warehoused in Taiwain or not.  If they do, they can assume the purchase orders.  If they do not, they can reject them.  Milton should not be burdened with threats of lawsuits, or actual lawsuits, and having to continue to pay additional storage fees, while the Debtors unnecessarily delay a decision to assume or reject the purchase orders.

3.      In their Objection, the Debtors mischaracterize Milton's Motion to Allow from the very opening line.  The Debtors state that Milton demands that the Court determine the validity, priority and amounts of Milton's claims.  Objection at ¶ 1.  This is a mischaracterization.  There is no dispute as to the validity and amount of Milton's claim for goods delivered postpetition.  Nor is Milton seeking allowance of its administrative expense claim "ahead of the interests of all other creditors in these cases," as alleged by the Debtors. Milton is merely seeking to be treated the same as all other postpetition creditors, **consistent**

**with the treatment requested by the Debtors in the First Day Motion,[4] and granted by the Court in the Final Order.**[5]

4.  The Debtors fault Milton for wanting to assert its rights in this case by going forward with its Motions. However, Milton already agreed to one adjournment of the Motion to Allow. Moreover, Milton should not have to wait for some indeterminate time to receive payment for goods delivered postpetition which benefitted the estate, while other suppliers of postpetition goods receive payment in the ordinary course of business, particularly when, as has been reported by the Debtors, there may be a significant administrative shortfall.

5.  Furthermore, the Debtors' proposed procedures to reconcile prepetition claims have no bearing on Milton's request for an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code.[6]

6.  No other party in interest has objected to the relief requested in the Motions; not the Official Committee of Unsecured Creditors, not the potential purchaser, not a single creditor. As the Debtors have not and cannot set forth any valid reason to deny the Motions, the Motions should be granted.

---

[4] *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business* [ECF No. 14].

[5] Through the Objection, the Debtors have filed essentially a non-responsive response, stating brazenly that they "have not reviewed or considered fully the detail of Milton's requests" and that they "decline to voluntarily engage in litigation that will encourage a cascade of other claimants seeking similar relief." Objection at ¶ 6. Nothing in the Bankruptcy Code grants the Debtors the right to unilaterally determine what motions to respond to. If the Debtors wanted to adjourn the Motions, they should have timely moved the Court to adjourn them.

[6] Milton has requested an administrative expense claim under section 503(b)(9) *in the alternative* so that it would not have to expend further costs and legal fees in establishing its right to an administrative expense claim.

### I. The Court Should Enforce Its Final Order And Grant Milton An Administrative Expense Claim Under Section 503(b)(1)(A) Of The Bankruptcy Code.

7.  In order to induce its prepetition suppliers to continue to supply goods to the Debtors in bankruptcy, and not to recall shipments of goods, the Debtors requested in the First Day Motion, and the Court granted in its Final Order, that all undisputed obligations arising from the postpetition delivery or shipment of goods under prepetition orders are granted administrative expense priority status pursuant to section 503(b)(1)A) of the Bankruptcy Code. It is uncontested that the Goods were delivered to the Debtors postpetition, and the Debtors owe Milton $377,132.16 for the Goods. Accordingly, Milton is entitled to an administrative expense claim in the amount of $377,132.16 under the Final Order and section 503(b)(1)A) of the Bankruptcy Code.

8.  The Debtors characterize this language, language that they proposed, and that the Court thereafter adopted, as "comfort language." *See* Objection at ¶ 7. That "comfort language," however, is binding language in a court order that settled a legal issue in the case. Suppliers relied on that language and this Court's order. It is more properly characterized as the Court's ruling. Under the Court's ruling and section 503(b)(1)(A), Milton is entitled to an administrative expense claim.

### A. Milton's Claim Is The Type Of Claim That Was Intended To Be Paid Under The Final Order.

9.  Milton's claim is exactly the type of claim that was intended to be allowed and paid under the Final Order. Milton provided goods that were delivered to the Debtors postpetition, and the Debtors then used those goods in their business.

10. Contrary to the Debtors' assertion, Milton is not asserting that the Final Order "enhanced the status" of Milton's claim. The Final Order simply provides the specific

5

requirements, which Milton meets, for granting administrative expense priority for obligations arising from the postpetition delivery or shipment of goods under prepetition orders.

### B. The Court Should Not Countenance The Debtors' Attempt To Attack The Court's Final Order Through An Objection To Milton's Motion.

11.     The Court should not countenance the Debtors' attempt to attack the Court's Final Order through an objection to the Motion to Allow.  In the First Day Motion, the Debtors requested that the Court grant administrative expense status to all undisputed obligations of the Debtors arising from the postpetition delivery of goods ordered prior to the Commencement Date.  First Day Motion at ¶ 5.  The Court granted this request and ruled that all undisputed obligations of the Debtors arising from the postpetition delivery of goods under prepetition orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.  Final Order at ¶ 8.  The Debtors are now attacking this ruling, arguing that prepetition completion of obligations, transferring of title, and invoicing bear on the entitlement to administrative expense priority for undisputed obligations of the Debtors arising from the postpetition delivery of goods ordered prior to the Commencement Date.  Objection at ¶ 7.  The time to appeal the Final Order has long since lapsed, and the Debtors should not be permitted to attack the Final Order which they drafted and prosecuted through an objection to Milton's claim.

12.     Moreover, the Debtors are estopped from arguing that there are other, additional requirements for entitlement to administrative expense priority for undisputed obligations of the Debtors arising from the postpetition delivery of goods ordered prior to the Commencement Date.[7]  In the First Day Motion, the Debtors asked the Court to grant administrative priority

---

[7] The Debtors are estopped by judicial estoppel.  As noted by the United States Supreme Court, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to

6

status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the Commencement Date. First Day Motion at ¶ 5. The Debtors are now asking the Court to deny Milton an administrative expense claim for an undisputed obligation arising from the postpetition delivery of goods ordered prior to the Commencement Date. This is clearly inconsistent with its prior position stated in the First Day Motion, and highly prejudicial to Milton.

13.     Furthermore, the ruling in the Final Order may not be challenged since it is law of the case. *See*, *e.g.*, *In re Kollel Mateh Efraim, LLC*, 456 B.R. 185 (S.D.N.Y. 2011) ("The doctrine of law of the case holds that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citation omitted).

### C. Milton's Claim Satisfies All Requirements For An Administrative Expense Claim Under Section 503(b)(1)(A) Of The Bankruptcy Code.

14.     Section 503(b)(1)(A) provides "after notice and a hearing, there shall be allowed administrative expenses…including the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In order for an expense to be granted administrative expense status under section 503(b)(1)(A), two requirements must be met. First, "an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession." *Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (citing *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984) (other citation omitted). Second, an expense is administrative "only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the

---

the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

operation of the business." *Id*. (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976) (also citing *Jartran*, 732 F.2d at 587) (other citations omitted). Milton's claim satisfies both of these requirements.

### 1. Milton's Claim Satisfies The Transaction With The Debtor In Possession Requirement.

15. The "transaction with the debtor in possession requirement" is satisfied not only where the debtor in possession "induces" the postpetiton transaction, *see*, *e.g.*, *Jartran*, 732 F.2d at 587, but also where the postpetition benefit is knowingly "accepted" by the postpetition debtor in possession. *See*, *e.g.*, *In re Adelphia Business Solutions, Inc.*, 296 B.R. 656, 664-65 and n. 14 (Bankr. S.D.N.Y. 2003); *Jartran*, 732 F.2d at 588.

16. As noted by Judge Gerber in the *Adelphia Business Solutions* case:

> *Jartran* imposed the "inducement" requirement to deal with a situation in which the purveyor of the directory services had provided a post-petition benefit, but where the services had been ordered pre-petition, and the post-petition debtor-in-possession had not sought the services, and did not accept them. The "inducement" requirement is very much a requirement in the law, but it must be construed in accordance with common sense—to filter out, as in *Jartran*, claims for administrative expense treatment where the post-petition benefit is requested pre-petition and/or unwanted by the post-petition debtor-in-possession, **but to require administrative expense treatment where the post-petition benefit is knowingly accepted and desired, post-petition, by the post-petition debtor-in-possession**.

*Adelphia Business Solutions, Inc.*, 296 B.R. at 656 (emphasis added).[8]

17. In this case, the Debtors both *induced* the postpetition transaction and *accepted* the postpetition benefit.

18. The Debtors *induced* the postpetition transaction by asking the Court postpetition

---

[8] Judge Gerber further noted in the *Adelphia Business Solutions* case that "the full expression utilized by the *Jartran* court was 'any act of acceptance or inducement,' [Jartran, 732 F.2d at 588]—indicating that either would suffice, and that a post-petition act of acceptance would be a satisfactory substitute for a post-petition act of inducement." *Adelphia Business Solutions*, 296 B.R. at 666, n. 14.

to grant administrative expense priority status to all undisputed obligations of the Debtors arising from the postpetition delivery or shipment of goods under prepetition orders. This was a clear indication to the Debtors' suppliers that they could complete transactions that were commenced prepetition, and refrain from recalling shipments of goods in transit.

19. Moreover, the Debtors accepted the postpetition benefit by accepting delivery of the Goods postpetition (on October 18, 2018 and November 9, 2018). In sharp contrast to the debtor in *Jartran*, the Debtors accepted the postpetition benefit by affirmatively accepting the Goods postpetition.

20. The Debtors seem to imply that whether title to the goods transferred prepetition or postpetition is relevant to the issue of Milton's right to administrative expense status. Objection at ¶ 7. It is not. First, the Final Order makes no such distinction. Second, even if title to the Goods passed to the Debtor prepetition, Milton retained its rights to stop delivery of the Goods in transit until they were received by the Debtors. *See* U.C.C. § 2-705(1), (2)(a)[9]; *see also In re National Sugar Refining Co.*, 27 B.R. 565, 569 (Bankr. S.D.N.Y. 1983) ("The fact that [seller] had passed to [debtor buyer] title to the sugar did not affect the former's right to stop in transit."). Thus, whether title transferred to the Debtor prepetition or postpetition is irrelevant to Milton's right to administrative expense status.

21. The Debtors induced the postpetition transaction and accepted the postpetition benefit. Accordingly, this requirement is satisfied.

---

[9] UCC § 2-705(1) provides that "[t]he seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent…." UCC § 2-705(2) provides that "[a]s against such buyer the seller may stop delivery until (a) receipt of the goods by the buyer…."

### 2. Milton's Claim Satisfies The Postpetition Benefit Requirement.

22. The Debtors have not, and cannot, deny that the Goods have benefited the Debtors' estates. The Debtors are selling the Goods in the ordinary course of business. Therefore, this requirement is satisfied.

**II. *Alternatively*, If The Court Does Not Grant Milton An Administrative Expense Claim Under Section 503(b)(1)(A) Of The Bankruptcy Code, Milton Should Be Granted An Administrative Expense Claim Under Section 503(b)(9) Of The Bankruptcy Code.**

23. If Milton is not granted an administrative expense claim under section 503(b(1)(A), Milton should be granted an administrative expense claim under section 503(b)(9). As noted in the Motion to Allow, the Goods shipped within 20 days of the Commencement Date on September 25, 2018 and October 7, 2018. *See* Motion to Allow at ¶ 4.

24. Milton has already incurred significant legal fees and costs in trying to obtain payment for the Goods delivered to the Debtors postpetition. Milton should not be forced to expend further costs and fees in establishing its right to an administrative expense claim under section 503(b)(9), if its claim for administrative expense priority under section 503(b)(1)(A) is denied.

**III. With Respect To Milton's Motion To Compel, The Balance Of Harm Decidedly Weighs In Favor Of Compelling The Debtor To Assume Or Reject The Purchase Orders Related To The Goods Being Warehoused In Taiwan.**

25. The Debtors do not dispute that Milton has incurred substantial costs in manufacturing the products ordered by the Debtor which are being warehoused in Taiwan, has incurred, and continues to incur, storage fees, and has been threatened with lawsuits since it has been unable to pay certain of its suppliers in full due to the Debtor's nonpayment. The harm to Milton in having to wait for additional weeks or months to have the purchase orders assumed or rejected is significant. In contrast, the potential harm to Debtors in having to assume or reject

the purchase orders now is minimal. The Debtors and, if necessary, the potential purchaser of the Debtors' assets, should be able to make a determination whether they want the goods being warehoused in Taiwain or not. If they do, they can assume the purchase orders. If they do not, they can reject them. Milton should not be burdened with threats of lawsuits, or potentially actual lawsuits, and having to continue to pay additional storage fees, while the Debtors unnecessarily delay a decision to assume or reject the purchase orders.[10]

---

[10] The Debtors have not contested that the purchase orders relating to the goods warehoused in Taiwan are executory. *See* Objection at ¶ 8 ("The Debtors take no position now as to whether the Purchase Orders are executory."). The Bankruptcy Code does not define the term "executory contract." The Second Circuit has characterized an executory contract as "a contract 'on which performance remains due to some extent on both sides.'" *Eastern Airlines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir. 1996) (quoting *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6 (1984)). These purchase orders are executory since performance remains to some extent on both sides.

**Conclusion**

For the foregoing reasons, and those set forth in the Motions, Milton respectfully requests that the Court (a) grant the Motions, and (b) grant such other and further relief to Milton as the Court deems just and proper.

Respectfully submitted,

CLARK HILL PLC

By: /s/ Joel D. Applebaum
Joel D. Applebaum
John R. Stevenson
151 South Old Woodward Avenue, Suite 200
Birmingham, MI 48009
Telephone (248) 988-5883
Facsimile (248) 988-2503
japplebaum@clarkhill.com
jstevenson@clarkhill.com

and

Nola Rooney Bencze
210 Carnegie Center, Suite 102
Princeton, NJ 08540
Telephone (609) 785-2924
Facsimile (609) 785-2973
nbencze@clarkhill.com

Date: February 12, 2019        *Attorneys for Milton Manufacturing, LLC*