WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                     :    **Chapter 11**
:
**SEARS HOLDINGS CORPORATION,** *et al.*,  :    Case No. 18-23538 (RDD)
:
Debtors.[1]                               :    (Jointly Administered)
:
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DECLARATION OF BRADLEY PUKAS IN SUPPORT OF
DEBTORS' OBJECTION TO MOTION FOR ORDER DECLARING
AUTOMATIC STAY INAPPLICABLE TO NON-RESIDENTIAL REAL
PROPERTY LEASE (2280 NORTH OCEAN AVENUE, FARMINGVILLE, NEW YORK)**

I, Bradley Pukas, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am the Real Estate Asset Manager at Sears Holdings Corporation ("**Sears**" and, together with its debtor affiliates, the "**Debtors**", and together with its non-debtor affiliates, the "**Company**").

2. I submit this declaration (the "**Declaration**") in support of the *Debtors' Objection to Motion for Order Declaring Automatic Stay Inapplicable to Non-Residential Real Property Lease (2280 North Ocean Avenue, Farmingville, New York)*, filed on February 8, 2019 (ECF No. 2497) (the "**Objection**").[2] I am authorized by the Debtors to submit this Declaration and, unless otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my experience, my review of relevant documents, or information provided to me by members of the Debtors' management or their advisors. If called upon to testify, I could and would testify to the facts and opinions set forth herein.

**Background and Qualifications**

3. I have approximately thirty-five years of experience managing and leasing assets in the commercial real estate industry. I joined Sears in January 2013 as Real Estate Asset Manager. Prior to each of the Debtors commencing with this Court a voluntary case under chapter 11 of the Bankruptcy Code, in my role as a Real Estate Asset Manager at Sears, I

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Objection.

2

primarily reviewed leases to determine Sears' obligations thereunder, interfaced with landlords and developers on all owned and leased properties regarding any property-related issues, managed various maintenance related dispatch requests, and tended to the real estate related needs of various other internal departments. As Real Estate Asset Manager, I also oversee the Company's non-retail portfolio, including warehouses, which involves negotiating leases and lease renewals pertaining to such non-retail assets.

4. I am personally familiar with Sears' real estate properties and the specifics of numerous leases, including with respect to the Lease and the Leased Premises that are the subject of the Motion filed by Midwood Management Corp., as agent for Expressway Plaza I, LLC and Farmingville Associates Phase I, LLC, as tenants in common (the "**Landlord**"), on November 29, 2018 (ECF No. 932).

### The Lease and Relevant Prepetition Events

5. Kmart has been a tenant at the Leased Premises for twenty-seven years.

6. I have been informed that between February 2017 and November 2017, the Landlord made several offers to Kmart to recapture the Lease. Such offers ranged in amount from $750,000 to $1 million. Kmart declined the Landlord's offer. A copy of the e-mail, dated November 15, 2017, declining the Landlord's offer and reflecting the rejection of the offers made by the Landlord in February 2017, April 2017, May 2017, and November 2017, is annexed to the Objection as **Exhibit A**.

7. On November 8, 2017, the Landlord served a notice on Kmart requesting certain maintenance work to be performed to the parking lot and drive lanes of the Leased Premises by November 21, 2017 (the "**2017 Maintenance Notice**"). Kmart was informed that the maintenance work described in the 2017 Maintenance Notice was required by the City and

3

constituted an "emergency." The 2017 Maintenance Notice states, in pertinent part, that "Landlord hereby exercises its right pursuant to Section 25(F) of the Lease to perform Tenant's obligations at the cost and expense of Tenant and, given the timing imposed by the Town of Brookhaven, this constitutes an emergency under Section 25(F) which does not permit Tenant the cure period provided by the Lease."

8. After reviewing the 2017 Maintenance Notice, on November 14, 2017, I spoke with Mr. Peter Pollani, the Landlord's portfolio manager, to discuss the contents of the notice. During our conversation, I advised Mr. Pollani that Kmart needed (i) photos substantiating the alleged conditions of the parking lot and driving lanes, (ii) an itemization of the costs associated with resurfacing the parking lot and driving lanes, and (iii) any correspondence from the City of Farmingville directing the work to be completed in 2017. Additionally, from comments made by Mr. Pollani during our call, it was my understanding that the Landlord wanted to lease the adjacent property to a new tenant but the City of Farmingville prevented the leasing until the drive lanes on Kmart's property were resurfaced, and, as a result, the Landlord claimed Kmart was in default. Following my conversation with Mr. Pollani, I sent an e-mail correspondence to his attention on November 14, 2017, memorializing aspects of our discussion and reiterating my requests for documentation. A copy of my e-mail, together with related e-mails between Mr. Pollani and myself, is annexed to the Objection as **Exhibit B**.

9. On November 19, 2017, in response to my requests for additional information, Mr. Pollani e-mailed me certain photos of the work described in the 2017 Maintenance Notice. Mr. Pollani noted that the photos were not inclusive of all emergency work needed and he also provided a detailed proposal of costs associated with the maintenance work to be performed. I also received from Mr. Pollani a diagram identifying areas that an inspector for

the city of Farmingville allegedly required needed to be immediately repaired. A copy of Mr. Pollani's e-mail and photos of the work described in the 2017 Maintenance Notice are annexed to the Objection as **Exhibit B**.

10. I replied to Mr. Pollani via e-mail on November 20, 2017, stating that further review of the Landlord's maintenance requests was underway by Kmart's facilities team. I emphasized in my reply that the documentation provided demonstrated that no "emergency repair" was needed and that there was no justification for putting Kmart in a default situation. Furthermore, I noted that the 2017 Maintenance Notice was the first communication by the Landlord that there were any concerns about the condition of the parking lot and/or drive lanes associated with the Leased Premises. Lastly, I repeated Kmart's request for documentation from the municipality confirming its mandate of the maintenance work to be completed immediately. I believe that my correspondence with Mr. Pollani made clear that Kmart's position regarding the 2017 Maintenance Notice. The Landlord did not respond to my email. A copy of my e-mail sent on November 20, 2017 is annexed to the Objection as **Exhibit B**.

11. One day after my e-mail challenging the "emergency" nature of the maintenance work, on November 21, 2017, thirteen days after issuing the 2017 Maintenance Notice and before the expiration of Kmart's thirty day cure period provided for under Article 25(A) of the Lease, the Landlord performed the repairs referenced therein.

12. On April 4, 2018, five months after the Landlord performed the alleged "emergency" maintenance repairs, the Landlord sent invoices to Kmart requesting payment in the aggregate amount of $215,426.88 (the "**April Invoices**"). The amount sought in the April Invoices supposedly reflected Kmart's portion of the costs due for the work undertaken by the Landlord in connection with the 2017 Maintenance Notice.

13. On September 12, 2018, the Landlord issued a notice of default and informed Kmart that, pursuant to the terms of the Lease, it had fifteen (15) days from service of the notice to pay all amounts sought under the April Invoices (the "**September Default Notice**"). The September Default Notice did not reference Kmart's dispute that the work performed by the Landlord in connection with the 2017 Maintenance Notice was not an "emergency" and it did not provide support for the Landlord exercising self-help before expiration of the time allotted under the Lease for Kmart to cure any alleged defaults. I viewed the September Default Notice as mostly restating the issues Kmart addressed five months prior.

14. On October 11, 2018, the Landlord served the Termination Notice on Kmart (the "**Termination Notice**").

15. Kmart remains in possession of the Leased Premises. It is my understanding that the Debtors have continued to pay monthly rent to the Landlord pursuant to the Lease terms.

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 12, 2019, in Hoffman Estates, Illinois.

/s/ Bradley Pukas
Bradley Pukas
Real Estate Asset Manager,
Sears Holdings Corporation

6

WEIL:\96906350\5\73217.0004