UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)
-----------------------------------------------------------X
In re:

    Sears Holdings Corporation, *et al.*,       Chapter 11
                                                     Case No. 18-23538-rdd

                          Debtors.      (Jointly Administered)
-----------------------------------------------------------X

STATE OF __TX__
COUNTY OF __Dallas__         ss.

### AFFIDAVIT IN SUPPORT OF
### MOTION FOR RELIEF FROM STAY

I, __Joanna Lopez__, declare as follows:

1. I am a __Bankruptcy Administrator__ (job title) for TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC. Movant herein, and I am authorized to make the following declaration.

2. I am one of the custodians of the books, records and files of Movant as to those books, records, and files that pertain to loans, leases and extensions of credit given to Debtor, Sears Holdings Corporation aka Sears Home Improvement Products, Inc., concerning the collateral herein. I have worked on Movant's books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to accurately record such. I am personally responsible for the handling all of collection activity in connection with the account of Debtor and I have reviewed Movant's books and records in connection with this matter. I have knowledge of the facts contained herein and, if called upon to testify, I could and would competently testify thereto.

3. On or about January 4, 2017, the above-captioned Debtor, Sears Holdings Corporation aka Sears Home Improvement Products, Inc., entered into a Lease Agreement ("Agreement") with TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC. for the following Collateral: a 2012 Toyota Forklift, (Model number 8FGCU25-40215). Pursuant to the Agreement, Debtor is required to make payments of $250.51 per month. A true and accurate copy of the Lease Agreement is attached hereto as Exhibit "A".

4. The account is due for the October 22, 2018 payment. The last payment received was 12/27/2018. The delinquency as of January 22, 2019 is $1,335.85.

5. The fair market value of the subject Collateral is $14,842.00. A copy of the Green Guide appraisal is attached hereto as Exhibit "B".

6. The balance on the account as of January 22, 2019 is $13,512.40.

I declare under penalty of perjury under the laws of the State of ___TX___ and the United States that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

_____Joanna Loy_____
Affiant

Sworn to before me in and subscribed in my presence this 4th day of February, 2019.

_____Sharmaine Walker_____
___Texas___, Notary Public
Commission Expires: 4-15-2020

SHARMAINE WALKER
Notary Public, State of Texas
Comm. Expires 04-15-2020
Notary ID 130621549

WWR #040192611

App# ▓▓▓▓
Setup# ▓▓▓▓

# EQUIPMENT LEASE AGREEMENT

| | | |
|---|---|---|
| **LESSEE** | Legal Name: SEARS HOME IMPROVEMENT PRODUCTS, INC.<br>DBA<br>Address: 1024 FLORIDA CENTRAL PKWY LONGWOOD, FL 32750-7579<br>Billing Address: P.O. Box 2217, Omaha, NE 68103<br>State of Organization, Entity Type, and County: Florida, Corporation, SEMINOLE<br>Address of Equipment Location and County: 46985 Enterprise Court Suite 500 Wixom, MI 48393 County: Oakland | |
| **LESSOR** | Legal Name: Atlas Toyota Material Handling, LLC<br>Address: 1815 Landmeier Rd, Elk Grove Village, IL 60007 | |

| EQUIPMENT | Quantity | Make | Model | New/Used | Serial Number(s) | Attachment(s) per Item of Equipment | Delivery Date |
|---|---|---|---|---|---|---|---|
| | 1 | Toyota | 8FGCU25 | Used | 8FGCU25-40215 | | 1-3-17 |

### PAYMENT TERMS PER ITEM OF EQUIPMENT

| Lease Term (in Months) | First Payment Due Date | Lease Payment (Does Not Include Applicable Taxes) | Maintenance Payment Included in Lease Payment? | Security Deposit | Annual Operating Hours | Overtime Usage Fee Per Hour |
|---|---|---|---|---|---|---|
| 60 | 12/22/2016 | 250.51 | Yes ☐ No ☑ | 0.00 | 2000 | 0.75 |

THIS LEASE IS EFFECTIVE UPON SIGNING BY BOTH PARTIES. THIS LEASE IS NON-CANCELLABLE BY LESSEE. LESSEE REPRESENTS THAT ALL ACTIONS REQUIRED TO AUTHORIZE THE EXECUTION OF THIS LEASE ON BEHALF OF LESSEE BY THE SIGNATORY BELOW HAVE BEEN TAKEN. LESSEE ACCEPTS THE EQUIPMENT AS OF THE DELIVERY DATE. Lessee acknowledges that Lessor has assigned to Toyota Industries Commercial Finance, Inc. ("TICF") all of its rights (but none of its obligations) under this Lease. Lessor remains obligated to perform its obligations under this Lease. All payments due under this Lease are to be made to TICF at 8951 Cypress Waters Blvd, Suite 300, Dallas, TX 75019-4793. LIKE KIND EXCHANGE NOTICE: For any equipment referenced herein that is to be leased under a true lease by Toyota Industries Commercial Finance, Inc. as Lessor (TICF), with exception of equipment acquired from a Toyota Industries North America, Inc. owned subsidiary, TICF has assigned its rights, but not its obligations, in the purchase and sale agreement for such equipment to TIQI Exchange, LLC, in its capacity as a qualified intermediary, as part of a like-kind exchange program.

| | | | | |
|---|---|---|---|---|
| **LESSEE** | Signature: *Emeria Del Rio* Date: 1/4/2017<br>Name/Title: Emeria Del Rio, Dir. of Finance | **LESSOR** | Signature: *[signature]* Date: 1/18/17<br>Name/Title: GEORGE SEFER / VP OF SALES | |

THIS LEASE AGREEMENT ("Lease") is effective as of the date specified in the signature box above by the lessor identified above and its successors and assigns (collectively, "Lessor") and the lessee specified above, its successors and permitted assigns (collectively, "Lessee"). Lessor and Lessee agree to the following terms and conditions:

1. **LEASE.** Lessor hereby leases to Lessee the property described above (together with all replacements, additions, accessions, accessories incorporated and/or affixed, and all related operating manuals, maintenance records, and similar information, the "Equipment") for the Lease Term. Lessee will pay the Lease Payment each month for use of the Equipment during the Lease Term. The Lease Payment will be due and payable on the same day of the month as in the First Payment Due Date. Lessee's Lease Payment and other obligations under this Lease are absolute, unconditional, and not subject to cancellation, reduction, setoff, or counterclaim.

2. **INTERIM RENT; LATE CHARGES.** If the Delivery Date occurs before the First Payment Due Date, rent per day for such partial first month will be equal to 1/30th of the Lease Payment and payable on the First Payment Due Date. If any Lease Payment is received more than 10 days after its scheduled due date, Lessee will pay a late charge equal to 5% of the Lease Payment amount (or such lesser amount as is the maximum amount allowable under applicable law).

3. **TITLE; DISCLAIMER.** Lessee agrees that: (a) title to the Equipment will at all times remain in Lessor; (b) Lessee grants Lessor a security interest in the Equipment, the cash comprising any security deposit, and the proceeds thereof to secure Lessee's obligations, and Lessor is authorized to take all appropriate legal measures (including the filing of UCC financing statements) to protect Lessor's rights and interests; (c) Lessor did not select, manufacture, or supply the Equipment, and Lessor acquired the Equipment from the manufacturer or distributor ("Manufacturer") selected by Lessee; and (d) Lessee is entitled to the warranties provided by the Manufacturer and may communicate with the Manufacturer to receive an accurate and complete statement of all promises and warranties, including any disclaimers and limitations of them or of remedies. THE EQUIPMENT IS LEASED "AS IS", AND LESSOR HAS NOT MADE, AND HEREBY DISCLAIMS LIABILITY FOR, AND LESSEE WAIVES ALL RIGHTS AGAINST LESSOR RELATING TO, ANY AND ALL WARRANTIES, REPRESENTATIONS, OR OTHER OBLIGATIONS OF ANY KIND WITH RESPECT TO THE EQUIPMENT, EITHER EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING (1) MERCHANTABILITY OR FITNESS FOR PARTICULAR USE OR PURPOSE, (2) COURSE OF DEALING OR USAGE OR TRADE OR (3) COMPLIANCE WITH APPLICABLE LAW. All assignable warranties made by the Manufacturer to Lessor are assigned to Lessee during the Lease Term, and Lessee agrees to resolve all such claims directly with the Manufacturer. Any such claim will not affect in any manner the unconditional obligation of Lessee to make all Lease Payments.

4. **REDELIVERY; HOLDOVER.** At termination or expiration of the Lease Term, Lessee will re-deliver the Equipment and all maintenance records as instructed by Lessor. If Lessee fails to return the Equipment, the Lease will continue on a month-to-month basis (terminable by Lessor), until the Equipment is returned to Lessor, at a monthly rent equal to the last applicable Lease Payment of the Lease Term. Lessee will cause the Equipment to be returned in "Safe Operating Condition," which means the Equipment, when loaded at rated capacity, (a) has no missing or broken components; (b) starts under its own power and idles, (c) does not leak oil, water, fuel, or any other fluids; (d) moves through its normal speed ranges in both forward and reverse, (e) steers normally right and left in both forward and reverse; (f) has serviceable tires with remaining tread and without chunking or flat spots; (g) has an operational horn, parking brake, and lights; (h) is able to stop by means of service brakes in both forward and reverse; (i) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (j) has any equipped attachments perform required functions. Lessee is responsible for any repairs necessary to place the Equipment in Safe Operating Condition.

5. **USE AND MAINTENANCE.** Lessee will (a) use the Equipment within the United States solely for business purposes, and (b) operate, maintain, service, and repair the Equipment in accordance with operating manuals and applicable laws, so as to cause the Equipment to be in at least the same condition as when delivered to Lessee (excepting ordinary wear and tear). Lessee acknowledges that TICF is not providing maintenance services to Lessee, and TICF is not responsible for maintenance obligations under any maintenance agreement or arrangement between Lessee and a servicing entity. If applicable, TICF will forward maintenance payments received from Lessee to the designated servicing entity. If the Equipment is operated for more hours than the allotted Annual Operating Hours set forth above, Lessor will bill Lessee the applicable Overtime Usage Fee for each excess hour, which Lessee will pay within 30 days of billing. Lessee will keep the Equipment in a covered area when not in use. Lessee will ensure the Equipment is operated by competent, fully-trained employees or contractors of Lessee, within rated capacity, according to the Operating Conditions stated above, and with Manufacturer's safety equipment as installed or attached to the Equipment on delivery. Lessee will provide written notice to Lessor prior to any location change of the Equipment and will not make material alterations to the Equipment or attach or incorporate the Equipment to or in any other property. Except as set forth in Section 8, Lessee will provide, upon Lessor's request, prompt access to the Equipment and maintenance records for inspection.

6. **FEES AND TAXES.** Lessee shall be liable for all sales, use, property, excise, privilege, gross receipts, value-added and other taxes, fees, fines, or other charges of any nature whatsoever, including any penalties or interest on any of the above, imposed by any governmental authority. Lessor will file all returns and remit all personal property taxes applicable to the Equipment and Lessor will bill Lessee for such charges. Lessor may also bill Lessee for the remaining Taxes and Fees at the expiration or termination of the Lease. Lessee will pay such bills within 30 days of receipt.

7. **RISK OF LOSS AND INSURANCE.** Lessee assumes the entire risk of loss of or damage to the Equipment from all causes during the Lease Term and thereafter until redelivery to Lessor. Lessee shall be responsible for any losses or injuries caused by the Equipment, and Lessee shall indemnify, defend and save Lessor, its agents, employees, successors and assigns harmless from any and all liability, claims, allegations, damages, or losses (other than such as may result from the gross negligence or intentional misconduct of Lessor) (any of the foregoing, a "Claim"), arising out of this Lease or the Equipment, including without limitation, (a) the acquisition, rejection, control, use, ownership, selection, possession, leasing, operation (regardless of where, how, and by whom operated), local, state, or federal environmental compliance mandates and regulations, condition (including latent and other defects), maintenance, delivery, and return of the Equipment, (b) any claim in tort for negligence or strict liability or any environmental damage, and (c) all matters relating to the disclaimer in Section 3. Lessee will maintain: all-risk insurance equal to the replacement cost of the Equipment (the proceeds of which may be applied by Lessor to any total loss of the Equipment) and bodily injury and property damage liability insurance. All insurance will name Lessor and Lessee as loss payees as their interest may appear, and Lessor as additional insured. Lessee will, upon request, furnish evidence of such coverage satisfactory to Lessor.

8. **DEFAULT; REMEDIES.** If Lessee breaches any obligation under this Lease or any bankruptcy or similar proceeding is initiated by or against Lessee, this Lease is in default and Lessor will have the right to: (a) cancel this Lease and/or recover from Lessee all past due and future Lease Payments, plus the residual value Lessor has placed on the Equipment, and any other amounts Lessee owes Lessor; (b) repossess and dispose of the Equipment, and apply the net proceeds to Lessee's obligations; (c) apply any security deposit; and (d) exercise all other rights and remedies available to Lessor at law or in equity. Lessee will pay for reasonable attorney's fees and costs incurred by Lessor for enforcement of this Lease or exercise of these remedies. All remedies of Lessor are cumulative and may be exercised concurrently or separately. No failure by Lessor to exercise a right will be deemed a waiver thereof or to modify this Lease.

9. **ASSIGNMENT.** Lessee agrees not to transfer, sell, sublease, assign, or encumber either the Equipment or any rights under this Lease. Lessor may sell, assign, or transfer the Lease or any of its rights under this Lease, and Lessee shall not assert against the new owner claims, defenses, or setoffs that Lessee may have against Lessor.

10. **MISCELLANEOUS.** THIS LEASE WILL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF CALIFORNIA. LESSEE SUBMITS TO THE JURISDICTION OF STATE OR FEDERAL COURTS LOCATED IN CALIFORNIA and agrees that a final judgment in any such action will be conclusive and may be enforced in any other jurisdiction. This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof; and will not be rescinded, amended, or modified except by a written, duly executed amendment. No provision deemed unenforceable will invalidate any other provision(s) of this Lease, all of which will remain in full force and effect. The indemnities and obligations of Lessee provided in Sections 5, 6 and 7, and all of Lessor's related rights will survive and continue in full force and effect notwithstanding the expiration or cancellation of this Lease. This Lease may be executed in counterparts. Photocopies or facsimile transmissions of signatures will be deemed original signatures and will be fully binding on the parties to the same extent as original signatures. Lessee hereby authorizes Lessor to insert in this Lease identification data pertaining to the Equipment, dates, and other omitted factual matters (including the Delivery Date

**EquipmentWatch**

EXHIBIT "B"

www.equipmentwatch.com

All prices shown in US$

October 23, 2018

# Green Guide®

**Toyota 8FGCU25**
I.C. Cushion Tire Lift Trucks

Size Class:
**5,000 - 5,999 lbs**
Weight:
**8,000 lbs.**
Current Original Price:
**$55,844** (December 2017)



## Configuration for 8FGCU25

### Green Guide Values

Model Year: 2012

|  | Original Price | FMV | OLV | FLV |
|---|---|---|---|---|
| 2012 Published Data | $50,579 | $14,842 | $7,362 | $5,937 |
| **Adjustment** | | | | |
| Region () | | - | - | - |
| Usage () | | - | - | - |
| Condition (Good) | | - | - | - |
| Options/Extras | | - | - | - |
| FMV (100%) | | - | | |
| OLV (124%) | | | - | |
| FLV (100%) | | | | - |
| **Total Adjusted Price** | **$50,579** | **$14,842** | **$7,362** | **$5,937** |

Date Last Updated: Oct 13, 2018

OLV calculated using EquipmentWatch standard of 124% of FLV

The equipment represented in this report has been exclusively prepared for MITZI CALISE (mitzi.calise@toyotacf.com)

All material herein © 2003-2018 Penton All rights reserved.