Hearing Date: TBA
Time: TBA

Edward M. Fox
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 218-4646
Facsimile: (917) 344-1339
Email: emfox@seyfarth.com

*Attorneys for Wilmington Trust, National Association,
as indenture trustee and collateral agent*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**LIMITED OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL AGENT TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) ESTABLISHING DEADLINE TO FILE PROOFS OF CLAIM AND PROCEDURES RELATING THERETO, (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (III) APPROVING PROCEDURES FOR THE RESOLUTION AND SATISFACTION OF CLAIMS ASSERTED PURSUANT TO 11 U.S.C. § 503(b)(9), AND (IV) PROHIBITING VENDORS FROM <u>PURSUING SUCH CLAIMS OUTSIDE THE PROCEDURES</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "Debtors"). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

55171398v.1

Wilmington Trust, National Association, as indenture trustee and collateral agent ("Wilmington Trust") for the 6-5/8% Senior Secured Notes due 2018 (the "2010 Notes") issued by Sears Holdings Corporation ("Sears"), by its undersigned attorneys, files this Limited Objection of Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent to Motion of Debtors for Entry of an Order (I) Establishing Deadline to File Proofs of Claim and Procedures Relating Thereto, (II) Approving the Form and Manner of Notice Thereof, (III) Approving Procedures for the Resolution and Satisfaction of Claims Asserted Pursuant to 11 U.S.C. § 503(b)(9), and (IV) Prohibiting Vendors From Pursuing Such Claims Outside the Procedures (the "Motion"), and in support thereof states as follows:

## BACKGROUND

### The 2010 Notes

1. Pursuant to an indenture dated as of October 12, 2010 (as amended from time to time, the "2010 Indenture") between Sears, the Guarantors Party thereto (the "Guarantors") and Wells Fargo Bank, National Association ("Wells Fargo"), as trustee and collateral agent, Sears issued the 2010 Notes.

2. Pursuant to an Instrument of Resignation, Appointment, and Acceptance dated as of June 25, 2014, by and among Sears, Wilmington Trust and Wells Fargo, Wilmington Trust became the successor indenture trustee and collateral agent with respect to the 2010 Notes.

3. Pursuant to the Amended and Restated Security Agreement dated as of March 20, 2018, (the "Security Agreement"), among Sears, the Guarantors and Wilmington Trust, as collateral agent, holds a security interest in the Collateral (as defined in the Security Agreement)[2] to secure repayment of the 2010 Notes.

---

[2] Section 2.1 of the Security Agreement states:

2

55171398v.1

### The Bankruptcy Filing

4. On October 15, 2018, each of the Debtors filed voluntary petitions for relief under Chapter 11 of title 11, U.S.C. in the United States Bankruptcy Court for the Southern District of New York, (the "Bankruptcy Court").

### DIP Financing and Use of Cash Collateral

5. On November 30, 2018, pursuant to the Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties; and (D) Schedule Second Interim Hearing and Final Hearing, dated October 15, 2018 [Dkt. No. 7] (the "DIP Financing Motion"), the Bankruptcy Court entered the Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief (the "Final DIP Order") [Dkt. No. 995]. Pursuant to the Final DIP Order, Wilmington Trust was granted adequate protection of its interest in the Collateral, including replacement liens on the assets of Sears and the Guarantors.

---

2.1 Collateral; Grant of Security Interest. Each Grantor hereby grants to the Collateral Agent for the equal and ratable benefit of the Secured Parties a security interest in all of the following property now owned, or at any time hereafter acquired, by such Grantor or in which such Grantor now has, or at any time in the future may acquire, any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of such Grantor's Secured Obligations:

(a) all Credit Card Accounts Receivable;

(b) all Inventory;

(c) all Chattel paper relating to Credit Card Accounts Receivable;

(d) all Instruments relating to Credit Card Accounts Receivable;

(e) all Documents relating to any Inventory;

(f) all books and records pertaining to the Collateral; and

(g) to the extent not otherwise included, all Proceeds, insurance claim, Supporting Obligations and products of any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

55171398v.1

6. The Final DIP Order included an operating budget (the "Budget") through the week of February 16, 2019, which was annexed to the Final DIP Order. [Dkt. No. 955-3.]

### The Junior DIP

7. Also in the DIP Financing Motion, the Debtors requested authority to obtain a "Junior DIP Loan" in the amount of $200 million from certain affiliates of the Debtors (the "Junior DIP Lenders"), which amount could be upsized to $300 million subject to certain commitments, and secured by a junior lien on encumbered collateral, a *pari passu* senior lien on certain previously unencumbered assets, and a junior lien on other previously unencumbered assets. The DIP Financing Motion stated that the Debtors would continue negotiating the terms of the Junior DIP Loan and "test the market to determine whether any other lender is prepared to provide the requisite junior financing on more favorable terms or whether more favorable financing can be obtained." DIP Financing Motion ¶ 7.

8. Ultimately, the Debtors agreed to enter into a Junior DIP Loan (the "Junior Dip") with Cyrus Capital Partners, LP ("Cyrus").

9. The Junior DIP with Cyrus was approved by order entered December 28, 2018 (the "Junior DIP Order"). The same Budget annexed to the Final DIP Order was annexed to the Junior DIP Order. [Dkt. No. 1436-1.]

### The Bar Date Motion

### Bar Order

10. By the Motion, the Debtors seek entry of a bar order fixing a date by which proofs of claim must be filed and setting procedures for doing so. Wilmington Trust has provided the Debtors with certain procedural comments concerning the proposed order but otherwise has no objection to that portion of the Motion.

55171398v.1

### 503(b)(9) Allowance and Payment

11.     The Motion also requests that the Court authorize certain procedures for the filing and allowance of claims asserted pursuant to 11 U.S.C. § 503(b)(9). Wilmington Trust objects to two aspects of the relief requested by the Debtors with respect to Section 503(b)(9).

### Proposed Allowance Procedures Should Provide Additional Notice

12.     First, the Debtors seeking authority to agree with vendors to allow 503(b)(9) claims subject only to the consent of the Creditors Committee (the "Committee"), which consent cannot be unreasonably withheld, and to enter into stipulations allowing such 503(b)(9) claims, which stipulations the Debtors will not be required to file on the docket of these cases.

13.     Although Wilmington Trust has no objection to a streamlined process for resolution of 503(b)(9) claims, which may be substantial, any stipulations to be entered into by the Debtors, at least where the allowed amount of the claim exceeds a threshold of, for instance, $100,000, should, at a minimum, be provided to the "Standard Parties" as defined in the Amended Order Implementing Certain Notice and Case Management Procedures [Dkt. No. 405], on ten (10) days' negative notice, allowing such Standard Parties to raise any objection they may have to such stipulation within such time period.

### Payment of 503(b)(9) Claims Should Not Be Permitted At This Time

14.     The Debtors further seek authority, subject to the Committee's consent, to actually pay 503(b)(9) claims "if the Debtors determine it is in the estates' best interests to do so . . . ." In such event, the Debtors would be required to provide the United States Trustee, but no one else, three days' advance notice and opportunity to object, before paying any 503(b)(9) claim in an amount greater than $100,000.

5

15. The Debtors should not be authorized by the proposed bar order to pay any 503(b)(9) claims at this time. It is not clear what, if any, unencumbered funds are available in the estates for any such payments,[3] and there are likely superpriority claims pursuant to 11 U.S.C. § 507(b) for diminution in value of collateral which have priority in all of the Debtors' assets over administrative expense claims. Moreover, based on arguments made at the hearing for approval of the sale of substantially all of the Debtors' assets, it appears that the Debtors may be administratively insolvent, in which event, 503(b)(9) claims would share pro rata with other administrative expense claims.

16. Although paragraph 20 of the proposed bar order provides that any payments of 503(b)(9) claims are subject to the Final DIP Order, it is not at all clear, given the sale of substantially all of the Debtors' assets and their change in circumstances, whether, and to what extent, any budget authorizing use of cash collateral exists or remains operative. The Budget, by its terms, only runs through the week of February 16, 2019. To the extent any further budget was agreed to by the Debtors and the debtor-in-possession lenders, it is not clear what that budget might be, and the sale of substantially all of the Debtors assets, which recently closed, would make any such further budget obsolete. Moreover, additional adequate protection may now be required in light of the Debtors' changed circumstances.

17. Moreover, although Wilmington Trust objects to any such payments being made, to the extent the Court agrees that any such payments may be made, at least ten (10) days negative notice should be given to the indenture trustee for the Second Lien Notes and to the other Standard Parties before any such payment is made, to give them an opportunity to object to such payments. Notice to the U.S. Trustee, alone, is not sufficient.

---

[3] Wilmington Trust has not received any financial reporting from the Debtors for any period after January 30, 2019.

55171398v.1

WHEREFORE Wilmington Trust respectfully requests that the Motion be denied unless the proposed 503(b)(9) procedures described above are revised to address the issues raised in this limited objection.

Dated: New York, New York
February 20, 2019

SEYFARTH SHAW LLP

By: /s/ *Edward M. Fox*
    Edward M. Fox
    *Attorneys for Wilmington Trust, National Association,*
    *as indenture trustee and collateral agent*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 218-4646