# EXHIBIT A

# Master Lease Agreement

THIS IS A NON-CANCELABLE, LEGALLY BINDING CONTRACT



| Master Lease Number: | | | | |
|---|---|---|---|---|
| Lessee (Leasing Customer) – Use exact registered name if a corp., LLC or LP | Lessee's Chief Executive Office – Street 6472 Collier St. | | | City Lewis Center |
| Sears Home & Business Franchises, Inc. | State OH | County Delaware | Zip Code 43035 | Lessee's Telephone 740-201-3005 |
| Tax ID # [redacted] | | | | |

In this Master Lease Agreement ("Master Agreement"), the words "You" and "Your" mean the Lessee named above. "We", "Us" and "Our" mean VAR Resources, Inc. "Schedule" means the form of lease schedule attached hereto as Exhibit A. "Supplier" means the equipment supplier supplying the Equipment (defined below) leased under a Schedule. This Master Agreement, together with each Schedule entered into pursuant hereto and the related and supporting documents entered into directly with Us in connection with the transaction represented by a Schedule ("Other Documents"), represent the final and only agreement between You and Us regarding the leasing of the Equipment identified in such Schedule and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements. There are no unwritten oral agreements between You and Us. No other provision of this Master Agreement nor any Schedule may be further changed except by a written agreement between You and Us. Other agreements not stated in this Master Agreement, Schedules and Other Documents (including those contained in any purchase agreement or order between You and the Supplier) are not binding on Us. If you provide a telephone number for a cellular phone or other wireless device, for business purposes, now or in the future, you are expressly consenting to receiving communications (for NON- marketing or solicitation purposes) at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system from VAR Resources, Inc. and its affiliates and agents. These calls and messages may incur access fees from your cellular provider.

1. **LEASE OF EQUIPMENT.** Each Schedule executed by You represents your agreement to lease from Us the equipment listed therein (together with all existing and future accessories, embedded software programs, attachments, replacements, additions and repairs) upon the terms stated in such Schedule and this Master Agreement. Each Schedule shall be substantially in the form of Exhibit A and shall be deemed to be a separate lease transaction (a "Lease") between You and Us. In the event of any conflict between the provisions of this Master Agreement and the provisions of any Schedule, the provisions of the Schedule shall control. You promise to pay to Us the Lease Payments shown on each Schedule in accordance with the payment schedule set forth therein, plus all other amounts stated herein and therein. Each Schedule is binding on You as of the date You sign it. Notwithstanding anything to the contrary contained in the Lease, after You sign a Schedule, We may (i) insert the Lease number thereon and any other information missing in such Schedule, including but not limited to correcting the Equipment description to accurately reflect the description provided for on the final invoice(s), (ii) make corrections to Your proper legal name and address, and (iii) change the Lease Payment amount by not more than 15% due to a change in the Equipment configuration, cost, or a payment miscalculation. No Schedule is binding on Us until We sign it. If You are other than a sole proprietorship, Your signature on this Master Agreement and on each Schedule constitutes Your representation that the execution and delivery by You of this Master Agreement, the Schedule and the Other Documents, and the performance of Your obligations hereunder and thereunder, have been authorized by all necessary company action, and that the person(s) signing this Master Agreement, the Schedule and the Other Documents has been duly authorized to do so.

2. **UNCONDITIONAL OBLIGATION TO PERFORM.** With respect to each Schedule, You agree that: (a) You, not We, selected the Equipment and the Supplier, (b) We are a separate company from the Supplier, manufacturer and any other vendor (collectively, "Vendors"), the Vendors are NOT Our agents, and no statement, representation or warranty by any Vendor is binding on Us, (c) Your duty to perform Your obligations under the Master Agreement and the Schedule is unconditional despite any equipment failure, the existence of any law restricting the use of the Equipment, or any other adverse condition whatsoever, (d) If You are a party to any maintenance, service, supplies or other contract with any Vendor, We are NOT a party thereto, such contract is NOT part of any Lease (even though We may, as a convenience to You and a Vendor, bill and collect monies owed by You to such Vendor), and no breach by any Vendor will excuse You from fully performing Your payment and other obligations to Us, and (e) If the Equipment is unsatisfactory or if any Vendor fails to provide any service or maintenance or fulfill any other obligation to You, You shall not make any claim against Us and shall continue to perform Your payment and other obligations to Us.

3. **ORIGINAL TERM; END OF TERM OPTIONAL RENEWAL PROVISIONS.** The original term of each Lease represented by a Schedule will begin on a date designated by Us after We accept and sign the Schedule (the "Commencement Date") and will continue for the number of months shown in the Schedule ("Original Term"). As used herein, "Present Term" means the term presently in effect, whether it is the Original Term or a Renewal Term (as defined below). Unless You notify Us in writing at least 90 days but not more than 120 days before the end of a Present Term that, at the end of such Present Term, You intend to (i) return the Equipment, or (ii) exercise the purchase option, if any, specified in the Schedule, then: (a) the Schedule will automatically renew for an additional three-month Term (each, a "Renewal Term"), and (b) the Lease Payment amount and the other terms of the Schedule and of this Master Agreement and Other Documents will continue to apply. If You do notify Us in writing within the time set forth above that You intend to return the Equipment or purchase the Equipment at the end of such Term, then, immediately upon the expiration of such Term, You shall return the Equipment subject to the Schedule pursuant to Section 13 of this Master Agreement or purchase the Equipment pursuant to Section 19 of the Schedule, as applicable.

4. **LEASE PAYMENTS.** With respect to each Schedule, Customer agrees to pay a prorated Lease Payment for the period between the Equipment installation date (i.e. the date of the related delivery and acceptance certificate) and the Commencement Date. This prorated or partial payment will be based on the Lease Payment shown on the related Schedule prorated on a 30-day calendar month and will be added to the Customer's first invoice. With respect to each Schedule, Lease Payments plus applicable taxes and other charges provided for herein are payable in advance periodically as stated herein and therein. Restrictive endorsements on checks will not be binding on Us. All payments received will be applied to past due amounts and then to the current amount due, in such order as We determine. We may add finance charges to any amount We advance on Your behalf, including, without limitation, taxes and insurance premiums, if any. Any security deposit or estimated future Governmental Charge (as defined in Section 10 below) that You pay is non-interest bearing, may be commingled with Our funds, may be applied by Us at any time to past-due amounts, and the unused portion will be returned to You within 90 days after the end of the final Present Term of the applicable Schedule. If We do not receive a payment in full on or before its due date, You shall pay (i) a fee equal to the greater of 10% of the amount that is late or $29.00, plus (ii) interest on the part of the payment that is late in the amount of 1.5% per month ("Time-Value Interest") from the due date to the date paid. If any check is dishonored, You shall pay Us a fee of $20.00.

5. **DELIVERY, LOCATION, OWNERSHIP, USE, MAINTENANCE OF EQUIPMENT.** We are not responsible for delivery or installation of the Equipment relating to any Schedule. You are responsible for Equipment maintenance. You shall not remove the Equipment from the Equipment Location designated in the applicable Schedule unless You first get Our permission. You shall give Us access to each Equipment Location so that We may inspect the Equipment, and You agree to pay Our costs in connection therewith, whether performed prior to or after the Commencement Date of the applicable Schedule. We will own and have title to all Equipment (excluding any software) throughout the Term of each Schedule. You agree that all Equipment is and shall remain personal property. You shall not permit it to become (i) attached to real property or (ii) subject to liens or encumbrances of any kind whatsoever. You represent that all Equipment will be used solely for commercial purposes and not for personal, family or household purposes. You shall use all Equipment in accordance with all laws, operation manuals, service contracts (if any) and insurance requirements, and shall not make any permanent alterations. At Your own cost, You shall keep the Equipment in good working order and warrantable condition, ordinary wear and tear excepted ("Good Condition").

6. **NO WARRANTIES; FINANCE LEASE.** WITH RESPECT TO EACH SCHEDULE, WE ARE LEASING THE EQUIPMENT TO YOU "AS IS". WE HAVE NOT MADE AND HEREBY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. You agree that the transaction represented by each Schedule is a "finance lease" as defined in Article 2A of the Uniform Commercial Code ("UCC"). To the extent permitted by law, You hereby waive any and all rights and remedies conferred upon You under UCC Sections 2A-303 and 2A-508 through 522. It is determined that the transaction represented by any Schedule is other than a "lease" as defined in Article 2A, then You hereby grant to Us a security interest in the Equipment and all proceeds thereof. You authorize Us to record (and amend, if appropriate) a UCC financing statement to protect Our interests. With respect to any one or more Schedules, You may be entitled under Article 2A to the promises and warranties (if any) provided to Us by the Vendor(s) in connection with or as part of the contract(s), if any, by which We acquire the Equipment. You may contact the Vendor(s) for an accurate and complete statement of these promises and warranties (if any), including any disclaimers and limitations of them or of remedies. We hereby transfer to You, without recourse to Us, all automatically transferable promises and warranties, if any, made to Us by the Vendor(s).

**NO SCHEDULE MAY BE TERMINATED EARLY. THE TERMS OF THIS MASTER LEASE ARE CONTINUED ON THE REVERSE OR NEXT PAGE →**

| Accepted by VAR Resources, Inc. at: | Lessee: Sears Home & Business Franchises, Inc. |
|---|---|
| 2330 Interstate 30, Mesquite, TX 75150 | By: X [signature] 11/11/15 (Date) |
| [signature] Shen Ashwood, 12/7/15 (Date) | Print Name: John Hessey     Title: President |

7. ***LIABILITY; INDEMNIFICATION.*** We are not liable [redacted] any claims, actions, damages (whether direct, indirect, incidental or consequential [redacted] bilities, losses or costs made against or incurred by You relating to the delivery, in[redacted]lation, possession, use, return, loss of use, defect or malfunction of any Equipment (collectively, "Equipment Matters") with respect to any Schedule. You shall indemnify and defend Us against, and hold Us harmless for, any and all claims, actions, damages, liabilities, losses, and costs (including reasonable attorneys' fees) made against or incurred by Us relating to Equipment Matters.

8. ***LOSS; DAMAGE; COLLATERAL PROTECTION; INSURANCE*** You are responsible for the risk of loss or for any destruction of or damage to the Equipment. No such loss or damage relieves you from the payment obligations under this Agreement. You agree to promptly notify us in writing of any loss or damage and you will then pay to us the present value of the total of all unpaid payments for the full term all discounted at two percent. Any proceeds of insurance will be paid to us and credited against the outstanding balance. You agree to keep each item of Equipment fully insured against loss, naming us as lender's loss payee, in an amount not less than replacement cost until this Agreement is terminated as to such item. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You will provide 10 days advance written notice to us of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. If you fail to comply with this requirement within 30 days after the start of this Agreement, we may charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk and administrative and other costs, as would be further described on a letter from us to you. We may make a profit on this program. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF RESPONSIBILITY FOR LIABILITY INSURANCE ON THE EQUIPMENT.

9. ***ASSIGNMENT.*** YOU SHALL NOT SELL, TRANSFER, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER (collectively, "Transfer") THIS MASTER AGREEMENT OR ANY SCHEDULE, OR TRANSFER OR SUBLEASE ANY EQUIPMENT, IN WHOLE OR IN PART. We may, without notice to You, Transfer Our interests in this Master Agreement, any one or more Schedules and/or any or all Equipment leased thereunder, in whole or in part, to a third party (a "New Owner"), in which case the New Owner will, to the extent of such Transfer, have all of Our rights and benefits but will not have to perform any of Our obligations (if any). You agree not to assert against the New Owner any claim, defense or offset You may have against Us or any predecessor in interest.

10. ***TAXES AND OTHER FEES.*** You are responsible for all taxes (including, without limitation, sales, use and personal property taxes, and excluding only taxes based on Our income), levies, assessments and license and registration fees and other governmental charges relating to each Lease and the ownership, leasing, sale, possession or use of the Equipment leased under each Schedule (collectively, "Governmental Charges"). We may periodically bill you for, and You agree to promptly pay, estimated future Governmental Charges. You authorize Us to pay any Governmental Charges when and as they may become due, and You agree to reimburse Us promptly upon demand for the full amount (less any estimated amounts previously paid by You). After You sign a Schedule, We may change the Lease Payment amount due to a change in the tax amount. You hereby appoint Us as Your attorney-in-fact to sign Your name to any document for the purpose of filing tax returns. You agree to pay Us a fee for preparing and filing personal property tax returns. With respect to each Schedule, You also agree to pay Us upon demand (i) for all costs of filing, amending and releasing UCC financing statements and a fee for each filing and (ii) a processing fee of $75.00 for each Lease to cover Our investigation, documentation and other administrative costs in originating the Lease. You agree that the fees set forth in this Master Agreement and in the Schedules may include a profit component.

11. ***SAVINGS CLAUSE.*** If it is determined that any amount charged or collected with respect to a Lease is greater than the amount allowed by law, including, without limitation, any amount that is determined to exceed applicable usury limits (an "Excess Amount"), then (i) any Excess Amount charged but not yet paid will be waived by Us and (ii) any Excess Amount collected will be applied to any amount then due and owing by You with respect to such Lease, adjusted to conform with applicable law, or, if there is no such amount then due and owing by You, will be refunded to You.

12. ***DEFAULT.*** You will be in default under a Schedule if, with respect to such Schedule, this Master Agreement or any other Schedule or agreement between You and Us, You fail to pay any amount within 15 days of the due date or fail to perform or observe any other obligation. If You are in default, We may do any one or more of the following, at Our option, concurrently or separately: (A) cancel the Lease represented by such Schedule and any one or more Lease(s) represented by any other Schedules, (B) require You to return the Equipment leased under any one or more Schedule([redacted] rsuant to Section 13 of this Master Agreement, (C) take possession of and/or ren[redacted] inoperable the Equipment leased under such Schedule(s), and for such purposes You hereby authorize Us and Our designees to enter Your premises, with or without prior notice or other process of law, (D) with respect to any one or more Schedules, require You to pay to Us, on demand, an amount equal to the sum of (i) all Lease Payments and other amounts then due and past due, (ii) all Lease Payments for the then-remaining Present Term(s) of such Schedules plus Our residual interest in the Equipment as indicated by Our records, discounted at a rate of 2% per annum (or the lowest rate permitted by law, whichever is higher), (iii) interest at the rate of Time-Value Interest on the amounts specified in clauses "i" and "ii" above from the date of demand to the date paid, and (iv) all other amounts that may thereafter become due hereunder to the extent that We will be obligated to collect and pay such amounts to a third party (such amounts specified in sub-clauses "i" through "iv" referred to below as the "Balance Due"), and/or (E) exercise any other remedy available to Us under law. You also agree to reimburse Us on demand for all reasonable expenses of collection and enforcement (including, without limitation, reasonable attorneys' fees and other legal costs) and reasonable expenses of repossessing, holding, preparing for disposition, and disposition ("Remarketing") of the Equipment, plus Time-Value Interest on the foregoing amounts from the date of demand to the date paid. In the event We are successful in Remarketing the Equipment with respect to any Schedule, We shall give You a credit against the Balance Due under such Schedule in an amount equal to the present value of the proceeds received and to be received from Remarketing minus the above-mentioned costs (the "Net Proceeds"). If the Net Proceeds are greater than the Balance Due, We shall pay You such surplus. If the Net Proceeds are less than the Balance Due, You shall be liable for such deficiency. Any delay or failure to enforce Our rights under the Lease shall not constitute a waiver thereof.

13. ***RETURN OF EQUIPMENT.*** If You are required to return the Equipment under any Schedule, You shall, at Your expense, send the Equipment to any location(s) that We may designate. The Equipment must be properly packed for shipment, freight prepaid and fully insured, and must be received in Good Condition (as defined in Section 5 of this Master Agreement). If You are required to return the Equipment under Section 12 of this Master Agreement, You shall do so promptly upon demand. If You are required to return the Equipment under Section 3 of this Master Agreement, then (i) it must be received by Us in Good Condition within 15 days after the expiration of the then Present Term, (ii) if it is not received within 15 days of the date of demand, You agree to continue paying Lease Payments and all other amounts due hereunder until it is received and accepted by Us in Good Condition, and (iii) You agree to pay a handling and restocking fee of $250.00 promptly upon demand. If You are required to return the Equipment under any provision of this Master Agreement and it is not in Good Condition when it is received by Us, You agree to pay Our reasonable costs that We incur in connection with repairing or restoring the Equipment to Good Condition (as defined in Section 5 of this Master Agreement).

14. ***APPLICABLE LAW; VENUE; JURISDICTION.*** The parties agree that this Master Agreement, each Schedule and Other Document shall be treated as though executed and performed in Dallas County, Texas, or the home state of the assignee, and any legal actions relating to this Agreement, any Schedule or any Other Document must be instituted in the courts of Dallas County, Texas or the United States District Court for the Northern District of Texas, or the home state of the assignee which shall have exclusive jurisdiction. YOU AND WE HEREBY WAIVE YOUR AND OUR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY LEGAL ACTION. Each provision of this Master Agreement and of each Schedule shall be interpreted to the maximum extent possible so as to be enforceable under applicable law. If any provision is construed to be unenforceable, such provision shall be ineffective only to the extent of such unenforceability without invalidating the remainder of the Lease.

15. ***MISCELLANEOUS.*** You represent and covenant to Us that this Master Agreement is, and each Schedule will be, enforceable against You in accordance with its terms, and You acknowledge that this representation and covenant was a material inducement to Us to acquire the Equipment to be leased under each Schedule and to enter into this Master Agreement and each Schedule. This Master Agreement and any one or more Schedules may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same document. You acknowledge that You have received a copy of this Master Agreement, and You agree that a facsimile or other copy of this Master Agreement and of any Schedule and Other Document containing Your faxed or copied signature shall be as enforceable as the original executed document.

# SOFTWARE ADDENDUM TO MASTER LEASE AGREEMENT

MASTER LEASE #[redacted]

The following is only an addendum and shall only alter the terms and conditions of the Master Lease Agreement (the "Master Lease") as provided herein. All other terms and conditions remain in full force and effect.

With respect to Equipment that is identified as "Software" on any Schedule the following provisions shall be applicable to such Software. Software shall be defined to include any financed software, software licenses, software support, software maintenance, and/or implementation, integration, training, technical consulting, and/or professional services in connection with a software product. ("Software," which is included in the word "Equipment" unless separately stated.)

Notwithstanding any other terms and conditions of the Master Lease, in the event that any Schedule under the Master Lease includes Software, the Lessee agrees that as to such Software only: a) Lessor has not had, does not have, nor shall have, any title to such Software, but instead is only providing financing for the same; b) Lessee has executed or will execute a separate Software agreement which the Lessor is not a party to, nor has any responsibilities whatsoever in regards to such Software agreements, e.g. fees or other payments; c) Lessee has selected such Software; LESSOR MAKES ABSOLUTELY NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING SUCH SOFTWARE AND HAS NO RESPONSIBILITY FOR THE FUNCTION OF SUCH SOFTWARE OR ANY DEFECTS; d) Lessee shall indemnify, defend and hold harmless Lessor from and against any loss, cost, expense (including, without limitation, legal fees and costs) or liability incurred by the Lessor under the Master Lease or any Schedule or otherwise in any way related to or connected with the above said Software agreement(s) and in the event Lessor incurs or is threatened by such liability, then upon request of Lessor; Lessee shall promptly accelerate and pay all lease payments due under the Master Lease and LESSEE'S LEASE PAYMENTS AND OTHER OBLIGATIONS UNDER THIS MASTER LEASE SHALL IN NO WAY BE DIMINISHED ON ACCOUNT OF OR IN ANY WAY BE RELATED TO THE ABOVE SAID SOFTWARE AGREEMENT. None of the foregoing terms of this paragraph are intended to diminish the Lessee's obligation under the other terms and conditions of this Master Lease.

Lessee grants Lessor a security interest in the Software, the Software agreement, including without limitation, Lessee's rights in the Software granted thereunder, all rights to payment under the Software agreement and all proceeds of the foregoing to secure all amounts Lessee owes Lessor under any agreement with Lessor.

The following shall be additional events of default under the Master Lease: (i) Lessee fails to perform in accordance with the covenants, terms and conditions of the Software agreement, or (ii) the Software agreement is terminated, suspended, materially restricted or limited.

Lessee: Sears Home & Business Franchises, Inc.

By: [signature]

Name: John Hassey

Title: President

Date: 11/4/15

## Exhibit A

## Equipment Lease Schedule No. 1

ORIGINAL

This Equipment Lease Schedule (this "Schedule") is made and entered into as of the day of , , by and between VAR Resources, Inc. (hereinafter "We," "Us" or "Our") and Sears Home & Business Franchises, Inc. (hereinafter "You" or "Your"). This Schedule is entered into subject to that certain Master Lease Agreement No. (the "Master Agreement") between You and Us. All of the terms and conditions set forth in the Master Agreement are hereby reaffirmed and incorporated in and made part of this Schedule, as if fully set forth herein. *The Master Agreement, together with this Schedule and the related and supporting documents entered into in connection with this Schedule, represent the final and only agreement between You and Us regarding the leasing of the Equipment identified below and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements. There are no unwritten oral agreements between You and Us relating to the leasing of the Equipment. Other agreements (including, without limitation, those contained in any purchase agreement or order between You and the Supplier of Equipment) not stated in the Master Agreement or in the Schedule or other supporting documents are not binding on Us.* This Schedule, inclusive of the terms and conditions set forth in the Master Agreement, constitutes a separate lease between You and Us. Any amendment to the Master Agreement subsequent to the date of this Schedule shall be ineffective as to this Schedule unless otherwise expressly stated in such amendment.

1. We hereby agree to lease to You, and You hereby agree to lease from Us, the following-described Equipment upon the terms and conditions set forth in this Schedule and in the Master Agreement:

Description of Equipment – INCLUDE MAKE, MODEL AND SERIAL NUMBERS (ATTACH ADDITIONAL PAGE IF NECESSARY)

See attached Schedule A

*Notwithstanding anything to the contrary contained herein, We may (i) insert the Lease number and any other information missing in this Schedule, including but not limited to correcting the Equipment description to accurately reflect the description provided for on the final invoice(s), (ii) make corrections to Your proper legal name and address, and (iii) change the Lease Payment amount by not more than 15% due to a change in the Equipment configuration, cost, or a payment miscalculation.*

2. Equipment Supplier: VAR Resources, Inc.
3. Equipment Location Address: 8472 Cotter St., Lewis Center, OH 43035
4. Original Term: 36 Months
5. Commencement Date of this Lease: ____
6. Lease Payment Option: $2,403.24 per: ☒ Month ☐ Quarter ☐ Year ☐ Other:
7. Check here ☐ if Lease Payment amount includes sales/use tax
8. $0.00 Lease Payment(s) is(are) due at the time this Schedule is signed, which shall be applied to the: ☐ First Lease Payment ☐ First and Last Lease Payments ☒ Other: Zero advance payments
9. Security Deposit: $_____
10. Purchase Option at end of Original Term: ☐ None ☐ One Dollar ($1.00) ☒ Fair Market Value as of end of Original Term ☐ Other:

The above equipment purchase options may be exercised by You only at the end of the Original Term. If you are in default under the Master Agreement or this Schedule at the time you desire to exercise a purchase option, You must cure such default to Our satisfaction before having the right to exercise such option. If the "One Dollar" purchase option is checked above, then the last two sentences of Section 3 of the Master Agreement shall not apply to this Lease (in other words, the "automatic renewal" provisions in Section 3 shall not apply to this Lease). If the "Fair Market Value" option is checked above, then the purchase price will be the fair market retail value of the Equipment, as determined by Us in our sole but reasonable judgment, as of the end of the Original Term.

11. This Schedule is not binding upon Us unless and until We accept this Schedule by signing below. A facsimile copy of this Schedule shall have the same force and effect as the original. This Schedule is non-cancelable and may not be terminated early.

| VAR Resources, Inc. | You: Sears Home & Business Franchises, Inc. |
| --- | --- |
| By: X Shew Ashwood | By: X [signature] |
| Date: 12/7/15 | Name (Print): John Hassey |
| Accepted and signed in Mesquite, TX | Title: President |
| | Date Signed: 12/11/15 |

# SCHEDULE "A"

ORIGINAL

**Sears Home & Business Franchises, Inc.**

| Quantity | Manufacturer | Description |
|---|---|---|
| 1 | | Recovery 823S Recovery Appliance with 3 Year Support Unitrends |
| 1 | | IR-823 Installation Service (Remote) |
| 16 | Unitrends | Unitrends Cloud Long-Term Retention Option for 500GB of Protected Capacity with a Contract Duration of 3 Years Total of 8TB Unitrends |

Lessee: Sears Home & Business Franchises, Inc.

Signature: [signature]

Title: President

## Equipment Acceptance

Certificate of Acknowledgment and Acceptance of Leased Equipment
Lease Number: [redacted]

Lessee hereby acknowledges receipt of the equipment described in its Lease with Lessor (the "Equipment") and accepts the Equipment after full inspection thereof as satisfactory for all purposes of the Lease. Lessee acknowledges that Lessor has fully and satisfactorily performed all covenants and conditions to be performed by Lessor.

X November 30, 2015
(Date of Delivery)

X
(Date of Lease)

Sears Home & Business Franchises, Inc.
(Lessee)

X [signature]
(Signature) (Title)

Jeffrey Rockwell
(Print name of signer)

BILLING CONTACT INFORMATION
(Person in Charge of your Payables, Ex. A/P Clerk, Controller, etc.)

(Contact Name and Title)

(Contact Direct Phone Number and Ext.)

(Contact E-Mail Address)