**Hearing Date and Time:  March 21, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  March 14, 2019 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
                                              :
  **In re**                                   :
                                              :        **Chapter 11 Case No.**
  **SEARS HOLDINGS CORPORATION,** *et al.,*   :
                                              :        **18-23538 (RDD)**
      **Debtors.[1]**                         :
                                              :        **(Jointly Administered)**
                                              :
----------------------------------------------------------------X

## NOTICE OF TRANSFORM HOLDCO LLC'S MOTION TO ASSIGN MATTER TO MEDIATION

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion to Assign Matter to Mediation* (the "Motion"), *Declaration of Katherine R. Lynch*, and exhibits thereto.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC(6546); Sears Operations LLC(4331); Sears, Roebuck and Co. (0680); Service Live Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); My Gofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); Star West, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on **March 21, 2019 at 10:00 a.m. (Eastern Time)** before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Court"), 300 Quarropas Street, Courtroom No. 118, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the *Amended Order Implementing Certain Notice and Case Management Procedures* [Docket No. 405], shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures* [Docket No. 405], entered on November 1, 2018, so as to be filed and received no later than **March 14, 2019 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objections are filed and received as of the Objection Deadline, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the hearing, and failure to appear may result in relief being granted upon default.

Dated: March 6, 2019
        New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Abena A. Mainoo*
Lewis J. Liman
Sean A. O'Neal
Luke A. Barefoot
Abena A. Mainoo
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Transform Holdco LLC*

**Hearing Date and Time:  March 21, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  March 14, 2019 at 4:00 p.m. (Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
: 
In re                                                              : 
: 
**SEARS HOLDINGS CORPORATION,** *et al.,*      :         **Chapter 11 Case No.**
: 
Debtors.[2]                                      :         **18-23538 (RDD)**
: 
:         **(Jointly Administered)**
: 
X
-----------------------------------------------------------------

## TRANSFORM HOLDCO LLC'S MOTION TO ASSIGN MATTER TO MEDIATION

---

[2]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC(6546); Sears Operations LLC(4331); Sears, Roebuck and Co. (0680); Service Live Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); My Gofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); Star West, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Transform Holdco LLC (the "Buyer"), the buyer under a certain Asset Purchase

Agreement, dated as of January 17, 2019, by and among Sears Holdings Corporation ("SHC"),

each of SHC's subsidiaries party thereto (together with SHC, the "Sellers," collectively with

respect to SHC's chapter 11 affiliates, the "Debtors," and together with the Buyer, the "Parties")

and the Buyer (as may be amended, restated, supplemented or modified from time to time, the

"APA"),[1] hereby moves for the entry of an order substantially in the form attached hereto as

Exhibit A, assigning to mediation various matters related to the Parties' obligations with respect to

the APA and the Sellers' alleged breaches of the APA (the "Motion").  In support of this Motion,

the Buyer respectfully states as follows:

## **PRELIMINARY STATEMENT**

1.      After the end of the auction process for the sale of the Debtors' assets in

January 2019, having been chosen as the successful bidder to acquire the Debtors' retail stores

and other key businesses on a going concern basis, the Buyer carefully negotiated a purchase

agreement with the Sellers and worked tirelessly to close the transaction, as the first steps

towards implementing a plan to preserve jobs and provide a viable path forward for the business.

Those efforts resulted in the approval by the Court and closing of the sale in February 2019.

2.      The Buyer now believes that Sellers have breached the APA in a number

of important respects.  Those breaches impair the Buyer's going-forward strategy and frustrate

the good faith expectations of Buyer based on the APA and the Debtors' representations to this

---

[1]      The APA refers to the Asset Purchase Agreement filed as Ex. B to the *Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection therewith and (IV) Granting Related Relief* [Docket No. 2507] (the "Sale Order"), as amended by the Amendment No. 1 to Asset Purchase Agreement filed as Ex. E to the *Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement* [Docket No. 2599] (the "Notice of Filing of Amendment No. 1 to the APA").  All capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA.

Court.[2]  Since the closing, the Buyer has continued to negotiate in good faith with the Sellers to attempt to resolve the disputes to little avail.  In order to ensure that those disputes are resolved in an efficacious and just manner that preserves both the assets of the estates and the Buyer's ability to execute on its going-forward plan, the Buyer requests, in the first instance, that a mediator be appointed to facilitate further discussions between the Parties.  The Sellers have dismissed, without principled basis, the Buyer's proposal to seek to resolve the disputes through mediation.

3.      Specifically, the Buyer submits that a mediator could provide assistance in fostering discussions concerning Sellers' compliance with their obligations under the APA.  A mediator may be able to provide constructive and independent guidance on issues including, but not limited to, obligations with respect to (i) Sellers' covenant to operate in the Ordinary Course of Business, (ii) the amount of Other Payables assumed by the Buyer, (iii) whether reserves associated with agreements with financial institutions servicing credit cards were "Credit Card Accounts Receivable" under the APA and (iv) shortfalls in various assets delivered to the Buyer, including with respect to Prepaid Inventory, Specified Receivables and Warranty Receivables.

4.      These issues should be resolved expeditiously and without the delays and expense of formal litigation to best serve the interests of the estates and permit the Buyer to focus on turning around the acquired business.  Further delays in reaching a resolution will be costly to all parties, including the Debtors, that are burdened by the substantial expenses of these ongoing cases and are without significant remaining revenue-generating operations.  The mediation process will be an efficient means for the parties to work towards an amicable resolution, and will help avoid the incurrence of substantial costs, delay and burden on judicial

---

[2]      Although certain of these issues were identified prior to the closing, the Buyer advised the Sellers before the closing that it was preserving and not waiving all rights and remedies under the APA, including claims for breaches by the Sellers.

resources that would be inevitable if the parties are forced to resort to litigation to resolve these complex issues.

## JURISDICTION

5.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and General Order M-452 (the "General Order").

## BACKGROUND AND RELEVANT FACTS

6.        On October 15, 2018, each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  No trustee has been appointed in these Chapter 11 cases.

7.        On November 1, 2018, the Debtors filed the *Debtors' Motion For Approval of Global Bidding Procedures* [Docket No. 429] (the "Sale Motion") setting forth proposed bidding procedures for the sale of go-forward stores and other assets.  The Court entered the *Order Approving Global Bidding Procedures and Granting Related Relief* on November 19, 2018 [Docket No. 816].

8.        On November 21, 2018, the Debtors filed the *Notice of Filing of Global Bidding Procedures Process Letter* [Docket No. 862] soliciting bids on the Debtors' retail stores on a going concern or liquidation basis and certain individual businesses (the

"Global Assets").

9.    On January 14, 2019, the Debtors commenced an auction for the sale of the Global Assets, and on January 18, 2019, they named the offer submitted by the Buyer, established by ESL Investments, Inc., as the successful bid representing "the highest or best offer" and filed a copy of the executed APA.  *Notice of Successful Bidder and Sale Hearing* ¶ 4 [Docket No. 1730].  The hearing to consider approval of the sale of the Global Assets was scheduled to commence on February 4, 2019.  Id.  ¶ 8.

10.    The Buyer expended a tremendous amount of resources negotiating with the Debtors to ensure the success of the going concern.  The negotiations resulted in various updates to the proposed order approving the Sale Motion and to the APA.[3]

11.    The Court conducted a hearing on the Sale Motion on February 4, 6 and 7, 2019.  On February 8, 2019, the Court approved the sale and entered the Sale Order.

12.    The sale pursuant to the APA closed on February 11, 2019 ("Closing"). The Debtors filed an executed amendment to the APA on February 14, 2019.  Notice of Filing of Amendment No. 1 to the APA.

---

[3]    See *Notice of Filing Revised Proposed Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith and (IV) Granting Related Relief* [Docket No. 2332]; *Notice of Filing Second Revised Proposed Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith and (IV) Granting Related Relief* [Docket No. 2378]; *Notice of Filing Third Revised Proposed Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith and (IV) Granting Related Relief* [Docket No. 2430]; *Notice of Filing Fourth Revised Proposed Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith and (IV) Granting Related Relief* [Docket No. 2454]; *Notice of Filing Amendment to the Asset Purchase Agreement* [Docket No. 2456].

## RELIEF REQUESTED

13.     The Buyer hereby moves the Court, pursuant to section 105 of the Bankruptcy Code, Local Rule 9019-1, and the General Order, for an order assigning the matters described in this Motion to mediation to assist the Parties in resolving the disputes regarding their obligations under the APA.

## BASIS FOR THE RELIEF

14.     Local Rule 9019-1 governs the process for referring matters to mediation in this Court through the General Order.  The General Order in turn authorizes the Court to refer matters to mediation *sua sponte*, upon a motion by any party in interest, or by stipulation of counsel.  General Order ¶¶ 1.1-1.2.  The types of matters eligible for mediation under Local Rule 9019-1 and the General Order are broad, encompassing any adversary proceeding, contested matter, or any other dispute.  General Order ¶ 1.3.

15.     Bankruptcy courts commonly refer parties to mediation to resolve disputes.  In a number of recent cases, courts have appointed a mediator to address various disputes arising in connection with the proceedings.[4]

16.     The General Order provides that, after a matter is assigned to mediation, a seven-day period to select a mediator will begin, followed by mediation process as ordered by the mediator.  General Order ¶¶ 2.2, 3.1, 3.2.  Pursuant to the General Order, the mediation will proceed on a confidential and non-binding basis.  General Order ¶¶ 3.4, 5.1, 5.2.

---

[4]     See, e.g., In re NewPage Corp., Case No. 11-12804 (KG) (Bankr. D. Del. Aug. 14, 2012) (Docket No. 2155) (appointing Judge Drain as mediator to resolve "certain issues and impediments relating to the formulation of a chapter 11 plan . . . ."); In re Tribune Co., Case No. 08-13141 (KJC) (Bankr. D. Del. Sept. 1, 2010) (Docket No. 5591) (Judge Gross appointed as mediator to resolve disputes associated with resolution of certain causes of action associated with the debtors' prior leveraged buyout).

## **ARGUMENT**

17.     The Buyer has sought to engage in good faith negotiations – both formal and informal – with the Sellers to attempt to address the significant concerns that have arisen with respect to the APA.  As described further below, the Buyer has raised its concerns to the Sellers with respect to the Sellers' compliance with the APA, and has requested meetings and mediation to work towards resolution of these concerns.  Unfortunately, the Sellers have taken an increasingly adversarial position with respect to the concerns raised by the Buyer and have rejected the suggestion of mediation.

18.     Based on the Sellers' rejection of the Buyer's attempts to amicably resolve the outstanding issues with respect to the APA, the Buyer believes that a mediator is necessary to ensure productive and prompt resolution of the disputes in the interests of both the estates and the Buyer.  The Buyer hopes that such a mediation will facilitate a resolution of disputes under the APA (described below), without the costs and delay of litigation.

### ***Sellers' Breaches of Certain of Their Obligations under the APA***[5]

19.     **Payment of Payables in the Ordinary Course**.  The Sellers breached their obligations under the plain terms of the APA to manage their accounts payable in accordance with their pre-petition cash management policies and practices in the Ordinary Course of Business.  Daily cash reports prepared by the Sellers show that they intentionally delayed payment of millions of dollars of accounts payable that were contractually due prior to the Closing until <u>after</u> the Closing in order to artificially reduce cash outlays and meet their conditions for the Closing.  <u>See</u> Ex. A to the Declaration of Katherine R. Lynch, dated March 6, 2019 and filed herewith ("<u>Lynch Decl.</u>"), February 25, 2019 Letter from the Buyer's

---

[5]     The Buyer reserves its right to supplement its initial analysis with respect to all of the issues raised in the instant Motion.

counsel to the Sellers' counsel.  The Buyer has already been required to pay approximately

$110,000,000 to satisfy payables that existed at the Closing.  The Buyer is not responsible for

satisfying accounts payable that are the result of the Sellers' intentional delays in payment

prior to the Closing, and has delayed any further payments until it is able to determine the

amount by which the payables were artificially inflated.

20.     Moreover, the APA provides that the Buyer has <u>only</u> assumed Other

Payables with respect to Ordered Inventory, and further provides that the Buyer's obligations

with respect to Other Payables shall not exceed $166,000,000 in the aggregate.  The Sellers

assert that the APA obligates the Buyer to assume up to $166,000,000 in Other Payables

<u>unrelated</u> to Ordered Inventory.  The Sellers' interpretation of the Buyer's obligations with

respect to Other Payables is contrary to not only the terms of the APA, but also the Parties'

correspondence prior to the Closing.

21.     **Prepaid Inventory**.  The Sellers agreed in the APA to manage their

Inventory in the Ordinary Course and as a result the Parties contemplated that the Buyer

would receive $147,000,000 of Prepaid Inventory at Closing.  The Sellers breached this

obligation by failing to order Inventory in the Ordinary Course of Business.  As a result, the

Buyer has only received approximately $41,000,000 of Prepaid Inventory to date, and expects

to receive only up to $28,000,000 in the future, leaving a shortfall of at least $78,000,000.

22.     This breach is not entirely compensated by the adjustments

contemplated by the APA, as, by intentionally reducing Prepaid Inventory, the Sellers have

accelerated the Buyer's need to make payments to vendors immediately after Closing,

reducing the liquidity that the Buyer bargained for under the APA.

23.     **Specified Receivables**.  In the course of negotiations and in return for

the Buyer's assumption of certain liabilities, the Sellers purported to transfer to the Buyer at

Closing certain accounts receivable – the "Specified Receivables" – with a book value of $255 million.  It now appears, however, that, a substantial portion of the purported Specified Receivables are not accounts receivable at all.

24.    For example, and based only on the Buyer's initial analysis, and reserving the right to supplement this analysis as more illusory "accounts receivable" are identified, the Sellers included a number of items in the Specified Receivables that were not owed to the Sellers and thus cannot constitute Specified Receivables including:  (1) erroneous accounting entries that do not represent amounts due, for example, an alleged $3,800,000 receivable from the Sellers' counsel; (2) accounting entries that simply track Prepaid Inventory, which does not constitute accounts receivable; and (3) an entire $67,000,000 category with no description other than "All Other Receivables."

25.    This shortfall in Specified Receivables is not entirely addressed by the adjustment contemplated by the APA.

26.    **Characterization as "Credit Card Accounts Receivable" of reserves held by financial institutions servicing credit cards**.  Prior to the Sale, the Sellers reflected as assets on their books reserves taken by certain financial institutions in connection with the processing of credit cards.  As a result, the reserves withheld as security by these credit card processors are Acquired Assets now owned by the Buyer pursuant to Section 2.1(o) of the APA, which entitles the Buyer to "other assets, charges, setoffs, . . . and other security . . . to the extent related to any Acquired Asset."

27.    Shortly prior to the Closing, SHC's Chief Restructuring Officer represented that the Sellers expected to be able to deliver at Closing Credit Card Accounts Receivable of $73 million, but that the amount of Credit Card Accounts Receivable would include certain reserves of approximately $35 million.  See Ex. B to Lynch Decl., February

10, 2019 Letter from Mohsin Meghji to the Buyer.  Since the Closing, the Sellers'

representatives have also requested the return of $14.6 million in cash recovered by the Buyer

on a purported "excess" in Credit Card Accounts Receivable delivered at Closing.

28.    Credit card receivables are generally amounts paid by processors to the

company 3-5 days after a customer's credit card is charged.  Reserves, however, constitute

security retained by credit card processors for items such as chargebacks (i.e., where a

customer disputes and receives a refund for a transaction).  Unsurprisingly, given that they

are security deposits, the reserves are not described in the schedules of the APA or other

materials prepared by the Sellers prior to the Closing as being "credit card receivables."

Because the reserves are amounts withheld as security by credit card processors whose

contracts have been assumed by the Buyer, the reserves are not Credit Card Accounts

Receivable but rather a separate category of Acquired Assets under Section 2.1(o).

29.    Based on their mischaracterization of the reserves, the Sellers now

allege that "excess" Credit Card Accounts Receivable were delivered to the Buyer at Closing

and the Sellers are entitled to receive back from the Buyer this excess amount pursuant to

Section 10.9 of the APA.

30.    Because the reserves are not Credit Card Accounts Receivable, there is

no "excess" in Credit Card Accounts Receivable that the Sellers could recover.  But even if

the reserves were Credit Card Accounts Receivable, the reserves (and any other Credit Card

Accounts Receivable) are not Excluded Assets pursuant to Section 10.9.  The Sellers never

purported to retain any Credit Card Accounts Receivable at Closing, and in any event, the

Sellers did not deliver in excess of $1,553 million in Acquired Inventory, meaning they were

not entitled to retain any Credit Card Accounts Receivable as Excluded Assets per the last

clause of Section 10.9.  As such, all of the Credit Card Accounts Receivable, including any

reserves allegedly included in that category, were transferred to the Buyer at Closing as
Acquired Receivable pursuant to Section 2.1(d). The Sellers are therefore not entitled to any
return of cash in respect of Credit Card Accounts Receivable, even if there were an excess at
Closing.

31.    **Warranty Receivables Shortfall**. The APA identifies certain
accounts receivable as "Warranty Receivables." The Sellers delivered only $52,300,000 in
Warranty Receivables at the Closing, resulting in a Warranty Receivables shortfall amount of
$1,300,000 under the APA.

32.    **Aggregate DIP Shortfall**. The APA defines the "Aggregate DIP
Shortfall Amount," which takes into account available cash as of the Closing. The Buyer
believes that the Sellers may have held available cash on the Closing Date, which would
create an Aggregate DIP Shortfall Amount in the amount of such available cash, and seeks
confirmation of the amount of available cash held by the Sellers as of the Closing date.

33.    At the Sellers' request, in a letter dated February 25, 2019, the Buyer
raised all of the above concerns relating to the Sellers' conduct with respect to the APA to the
Sellers' counsel. <u>See</u> Ex. A to Lynch Decl., February 25, 2019 Letter from the Buyer's
counsel to the Sellers' counsel. The Buyer requested a meeting in the interest of resolving the
issues raised. The Buyer also made a proposal for the Parties to seek to resolve the disputes
through mediation, which the Sellers dismissed, without providing substantive explanation.
<u>See</u> Ex. C to Lynch Decl., Email correspondence between the Buyer's counsel and the
Sellers' counsel, dated from February 25 to February 28, 2019.

34.    The Sellers waited until March 6, 2019, nearly 10 days after Buyer's
February 25 letter, to provide their response. <u>See</u> Ex. D to Lynch Decl., March 6, 2019 Letter
from the Sellers' counsel to the Buyer's counsel. In that letter, the Sellers included a demand

-11-

that the Buyer agree by close of business to pay over $57 million to the estates by noon the following day as a condition to any further discussion of the issues raised in the Buyer's February 25 letter.  The Sellers threatened to race to the Court to litigate the dispute if their demand was not met.   The March 6 letter makes plain that they have no intention to mediate on acceptable terms.  See id.; see also Ex. E to Lynch Decl., Email correspondence between the Sellers' counsel and the Buyer's counsel, dated March 6, 2019.

35.     Mediation will benefit all Parties by helping to resolve these substantial ongoing disputes as promptly as possible without incurring the time and expense of formal litigation.[6]

36.     There would be no benefit to delaying entry of a mediation order. Although the Sellers have refused the Buyer's efforts to attempt to resolve the disputes, see Ex. C to Lynch Decl., Email correspondence between the Buyer's counsel and the Sellers' counsel, dated from February 25 to February 28, 2019, the Buyer submits that beginning the process of arranging for mediation at this juncture will not harm the Sellers in any way.  Once the Court orders mediation, there will be a seven-day period for the parties to select a mediator.

37.     Moreover, the Buyer is greatly concerned that valuable time is passing without any progress towards resolution, and any further delays in reaching agreement will be harmful to the creditors' interests.  The estates are now substantially without assets or revenue generating operations, but are burdened by the substantial expenses of these ongoing cases.   Every day of further delay and also of professional fees only further dissipates the few

---

[6]     For the avoidance of doubt, the Buyer's request for mediation includes the matters related to the demand made by the Sellers in their March 6 letter.  The Parties also have certain other disputes relating to a purported settlement between the Sellers and the Pension Benefit Guaranty Corporation (the "PBGC").  The Buyer has written to the Sellers regarding its concerns on this matter, and has not received a substantive response.  The Buyer reserves the right to expand the scope of the proposed mediation to address the PBGC settlement-related issues.

remaining assets in the estates to the detriment of all creditors.  These disputes also represent a distraction from the Buyer's focus on turnaround of the business operations purchased pursuant to the APA for the benefit of all stakeholders.

38.    Furthermore, any mediator will need time to review and digest the information necessary to provide helpful guidance on these issues.  Moreover, the Buyer is cognizant that because the Sellers have indicated that they intend to oppose mediation, there will be only further delays to allow for notice and resolution of the contested matter this Motion will initiate.  Due to the breadth of the information underlying the disputed issues, and in contemplation of the time required for a contested hearing on this Motion, now is the appropriate time for the Court to start the process of arranging for a mediator to be appointed.

## CONCLUSION

39.    For the reasons set forth above, the Buyer respectfully submits that ample authority and cause exist to support a finding that the assignment of these disputes to mediation is appropriate to assist the Parties' efforts to amicably and expediently resolve the disputes under the APA.

## NOTICE

40.    The Buyer has provided notice of this Motion in accordance with *Amended Order Implementing Certain Notice and Case Management Procedures* [Docket No. 405], entered on November 1, 2018.

## NO PRIOR REQUEST

41.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Buyer respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and granting such other relief as is just and proper.

Dated: March 6, 2019
      New York, New York

                  CLEARY GOTTLIEB STEEN & HAMILTON LLP

                  */s/ Abena A. Mainoo*
                  Lewis J. Liman
                  Sean A. O'Neal
                  Luke A. Barefoot
                  Abena A. Mainoo
                  One Liberty Plaza
                  New York, New York 10006
                  Telephone: (212) 225-2000
                  Facsimile: (212) 225-3999

                  *Attorneys for Transform Holdco LLC*

-14-

## Exhibit A

## Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
In re                                                             :        Chapter 11 Case No.
                                                                  :
SEARS HOLDINGS CORPORATION, *et al.*,                             :
                                                                  :        18-23538 (RDD)
Debtors.[1]                                                       :
                                                                  :        (Jointly Administered)
                                                                  :
------------------------------------------------------------------X

[PROPOSED] ORDER ASSIGNING MATTER TO MEDIATION

Upon the motion (the "Motion")[2] of Transform Holdco LLC ("the Buyer"), the buyer

under certain Asset Purchase Agreement, dated as of January 17, 2019, by and among Sears

Holdings Corporation ("SHC"), each of SHC's subsidiaries party thereto (together with SHC,

the "Sellers," collectively with respect to SHC's chapter 11 affiliates, the "Debtors") and the

Buyer (as may be amended, restated, supplemented or modified from time to time, the "APA")

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation
(3116); Kmart Operations LLC(6546); Sears Operations LLC(4331); Sears, Roebuck and Co. (0680);
Service Live Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E
Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel
Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears
Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business
Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C.
(7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection
Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc.
(3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC
(None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding
Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart
Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); My Gofer LLC (5531); Sears Brands
Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection
Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); Star West, LLC
(5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034);
Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed
Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365).
The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.
[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

for the assignment of certain disputes that have arisen in connection with the APA to mediation; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Buyer, the Debtors, their estates, their creditors and other parties in interest; and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules, the Local Rules, and the *Amended Order Implementing Certain Notice and Case Management Procedures* [Docket No. 405] for these Chapter 11 cases, and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to section 105(a) of the Bankruptcy Code, Local Rule 9019-1, and the General Order, the matter is hereby assigned to mediation in accordance with the General Order.

3.      The Sellers and the Buyer ("Mediation Parties") are hereby directed to participate in the mediation in accordance with the procedures set forth in the General Order.

4.      Without limiting the applicability of Local Rule 9019-1 or the General Order, all (a) discussions among any of the Mediation Parties, including discussions with or in the presence of the Mediator, (b) any mediation statements and any other documents or information provided to the Mediator or the Mediation Parties in the course of the mediation, and (c) correspondence,

2

draft resolutions, offers, and counteroffers produced for or as a result of the mediation shall be strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding, and no person or party participating in the mediation, whether a direct participant or member of a committee or group, including counsel for any Mediation Party or any other party, shall in any way disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, offer or counteroffer that may be made or provided in connection with the mediation, unless otherwise available and not subject to a separate confidentiality agreement that would prevent its disclosure or as authorized by this Court.

    5.    This Court shall retain jurisdiction with respect to all matters arising from or related to the scope, interpretation or enforcement of this Order.

 Dated: March __, 2019
         White Plains, New York

_____
      THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE

3