Alan M. Feld, Esq.
Ted Cohen, Esq. *Admitted Pro Hac Vice*
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel:  (212) 653-8700
Fax: (212) 653-8701

*Counsel for Everlast World's Boxing Headquarters Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS, *et. al.*[1],<br><br>                Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>Jointly Administered<br><br>Hearing Date:      March 21, 2019, 10:00 a.m. ET<br>Objection Deadline:  March 15, 2019, 4:00 p.m. ET |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF HEARING ON MOTION OF EVERLAST WORLD'S BOXING
HEADQUARTERS CORP. UNDER BANKRUPTCY CODE SECTIONS 365(d)(2) AND
363(e) TO COMPEL: (1) ASSUMPTION OR REJECTION OF LICENSE AGREEMENT
FORTHWITH, AND (2) PAYMENT OF ADMINISTRATIVE CLAIM AS ADEQUATE
PROTECTION**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of

Everlast World's Boxing Headquarters Corp. ("Everlast" or "Licensor") under Bankruptcy Code

Sections 365(d)(2) and 363(e) to Compel: (1) Assumption or Rejection of License Agreement

Forthwith, and (2) Payment of Administrative Claim as Adequate Protection, all as more fully set

forth in the Motion, will be held before the Honorable Robert D. Drain, United States

Bankruptcy Judge, at the United State Bankruptcy Court for the Southern District of New York,

Courtroom 118, 300 Quarropas Street, White Plains, New York 10061-4140 (the "Bankruptcy

Court") on March 21, 2019 at 10:00 a.m. (Eastern Time) (the "Hearing"), or as soon thereafter as

counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the

"Objections") to the Motion shall be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court,

including attorneys admitted pro hac vice, electronically in accordance with General Order M-

399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a

CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered

directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and

General Order M-399, to the extent applicable, and shall be served in accordance with the *Order

Implementing Certain Notice and Case Management Procedures*, entered on October 17, 2018

(ECF No. 139), so as to be filed and received no later than March 15, 2019 at 4:00 p.m. (Eastern

Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, Licensor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: March 7, 2019
        Los Angeles, California        **SHEPPARD MULLIN RICHTER & HAMPTON LLP**

By: */s/ Ted Cohen*
Alan M. Feld, Esq.
Ted Cohen, Esq.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: afeld@sheppardmullin.com
        tcohen@sheppardmullin.com

*Counsel for Everlast World's Boxing Headquarters Corp.*

Alan M. Feld, Esq.
Ted Cohen, Esq. *Admitted Pro Hac Vice*
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel:  (212) 653-8700
Fax: (212) 653-8701

*Counsel for Everlast World's Boxing Headquarters Corp.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS, *et. al.*[2],<br><br>         Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>Jointly Administered<br><br>Hearing Date:     March 21, 2019, 10:00 a.m. ET<br>Objection Deadline:  March 15, 2019, 4:00 p.m. ET |

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**MOTION OF EVERLAST WORLD'S BOXING HEADQUARTERS CORP.
UNDER BANKRUPTCY CODE SECTIONS 365(d)(2) AND 363(e) TO COMPEL: (1)
ASSUMPTION OR REJECTION OF LICENSE AGREEMENT FORTHWITH, AND (2)
PAYMENT OF ADMINISTRATIVE CLAIM AS ADEQUATE PROTECTION**

Everlast Worldwide's Boxing Headquarters Corp. ("Everlast" or "Licensor") files this

Motion To Compel: (1) Assumption or Rejection of License Agreement Forthwith, and (2)

Payment of Administrative Expense Claim as Adequate Protection (the "Motion"), and

respectfully represents in support of the Motion:

**Introduction**

1.       Everlast is the licensor to debtors Sears, Roebuck & Co. ("Sears") and Kmart

Corporation (collectively with Sears, "Licensees") as licensees under an August 18, 2010

Trademark License Agreement for the "Everlast" and related trademarks (collectively, the

"Everlast Marks").  Under the License Agreement, Licensees are authorized through February 1,

2020 to order the manufacture of, and to sell, specified Everlast branded products in the United

States and its territories on further terms set forth in the License Agreement.

2.       Under the License Agreement, Licensor is entitled to payment of royalties, with

an annual minimum guaranteed royalty ("AMGR") of $4,500,000.  Licensees likely did not have

enough sales to generate at least $4,500,000 of royalties in fiscal year 2018 (from February 1,

2018 through January 31, 2019),[3] meaning that their royalty liability for the year is $4,500,000.

Licensees have paid Licensor $1,748,960.06, leaving a balance of $2,751,039.94, $2,158,856.55

of which became due March 4, 2019 and is entitled to administrative priority.

---

[3] Because Licensees, in post-petition breach of the License Agreement, have not provided the royalty report for the
fourth quarter of fiscal year 2018, which was due March 4, 2019, Licensor does not know Licensees' earned
revenues (and Licensor's resulting royalties) for the year.  Based on the AMGR, the least amount owed under the
License Agreement is $4,500,000.

3.      Based on the foregoing, Licensees are in post-petition breach of their obligations under the License Agreement and are continuing to accrue administrative liability to Licensor under the License Agreement, with no assurances that Licensor will be paid in full on its administrative claim.  Licensees and their counsel have gone silent and failed to respond to several requests from Licensor to obtain information and confer regarding the License Agreement.  Moreover, Transform Holdco LLC ("Buyer"), the buyer of assets from Licensees and the other debtors (collectively, "Debtors") in a sale that closed February 11, 2019 (the "Sale"), has informed Licensor that Buyer does not want to take an assignment of the License Agreement, yet Debtors' motion filed earlier today to reject certain contracts did not include the License Agreement.

4.      Under Bankruptcy Code Section 365(d)(2) and applicable case law, an order from this Court compelling Licensees forthwith to assume or reject the License Agreement (and have the License Agreement be deemed terminated concurrent with the rejection if Licensees reject the License Agreement, without a waiver of Licensor's administrative and unsecured claims) is warranted for the foregoing reasons and the following additional reasons:

a.      Licensees have failed to make post-petition payments for post-petition obligations and provide royalty and other reporting, all of which was due March 4, 2019.

b.      There is no reorganization that will occur, so there is no need to wait until plan confirmation for Licensees to assume or reject the License Agreement.  In the Sale, Buyer acquired all of Debtors' operating stores.  On information and belief, the only remaining stores are "GOB", or going out of business, stores.

c.      Licensor has no information from Licensees, despite repeated requests, regarding (i) what Everlast branded inventory was sold to Buyer in the Sale, and (ii) what

additional Everlast branded inventory Licensees are ordering and selling, both of which sales of inventory generate royalties to which Licensor is entitled.

        d.      Licensor is precluded from finding a new licensee for the Everlast Marks because of Licensees' exclusive right to use the Everlast Marks in the United States. Licensor provided exclusivity to Licensees because of the $4,500,000 AMGR - - Licensor was willing to provide exclusivity based on being assured $4,500,000 in annual royalties. Currently, Licensees are not paying their post-petition obligations and Licensor cannot find a new licensee if Licensees are going to reject the License Agreement. Yet Licensees are getting the benefit of the exclusive right to use the Everlast Marks in the United States.

        5.      Moreover, under persuasive case law, until Licensees assume or reject the License Agreement, Licensees may be ordered to keep current their post-petition obligations to Licensor as adequate protection under Bankruptcy Code Section 363(e). In particular, Licensees should be compelled to pay Licensor the $2,158,856.55 administrative claim Licensor holds to continue to use the Everlast Marks, which are property in which Licensor has an interest, i.e., Licensor owns them.

        6.      Based on the foregoing, Licensor respectfully requests that the Bankruptcy Court enter the proposed order appended hereto granting the Motion and compelling Licensees to assume or reject the License Agreement forthwith and make adequate protection payments to Licensor pending Licensees' decision to assume or reject.

## Facts[4]

### The License Agreement

7.          On August 18, 2010, Licensor and Licensees entered into that certain Trademark License Agreement (as amended by amendments dated October 8, 2013 and November 11, 2015, the "License Agreement") (Kivett Dec., par 4; Exh. 1). Pursuant to the License Agreement, among other things:

a.          Licensees, through February 1, 2020, are authorized, on an exclusive basis, to promote, distribute and sell specified products bearing the Everlast Marks in the United States and its territories (License Agreement, Section 2);

b.          The fiscal year under the License Agreement runs from February 1 through January 31. Licensees shall pay Licensor a royalty on Everlast branded products equal to (i) 2.75% of sales revenue in each fiscal year up to $100 million, (ii) 2.25% of sales revenue in each fiscal year between $100.01 million and $200 million, and (iii) 2% of sales revenue in each fiscal year above $200 million (License Agreement, definition of "Royalty").

c.          The License Agreement also has annual minimum guaranteed royalty payments ("AMGR"). For fiscal year 2018 (which ran from February 1, 2018 through January 31, 2019), the AMGR was $4,500,000 (License Agreement, Schedule 4).

d.          Licensees are required to work with Licensor, and obtain Licensor's consent, to implement business plans and obtain Licensor's design and manufacturing approval of Everlast branded products. Licensor also has oversight over the standard of quality of Everlast branded products (License Agreement, Sections 5, 7, 8).

---

[4] The support for these facts is set forth in the concurrently filed Declarations of Margaret Kivett and Ted Cohen.

e.        On a quarterly basis for each fiscal year, within 30 days after the end of each quarter, Licensees are required to provide royalty reporting and make royalty payments for the preceding quarter.  In particular, for the quarter February 1 through April 30, the royalty payment and reporting are due by May 30; for the quarter May 1 through July 30, the royalty payment and reporting are due by August 30; for the quarter August 1 through October 30, the royalty payment and reporting are due by November 30; and for the quarter November 1 through January 31, the royalty payment and reporting are due by March 2 (License Agreement, Sections 4.1, 6).  If the due date falls on a non-business day, the due date is extended to the next business day.

f.        In addition, at the same time that the quarterly royalty payment and reporting are due for the quarter November 1 through January 31, Licensees must pay Licensor the difference, if any, between the AMGR and royalties on actual sales revenues for the preceding fiscal year (the "AMGR Shortfall") (License Agreement, Section 4.2).

8.        By providing Licensees with an exclusive (as opposed to a non-exclusive) license, Licensor is precluded from licensing the Everlast Marks in the United States and its territories to anyone else for the types of products authorized under the License Agreement.  This of course limits Licensor's ability to generate income from the Everlast Marks other than through Licensees.  Licensor was willing to grant an exclusive license to Licensees based on Licensees' representations as to the amount of revenues they could generate from sales under the License Agreement, as manifested in the AMGR.  In other words, Licensor's willingness to grant Licensees exclusivity was based in significant part on the amount of the AMGR - - if Licensees did not achieve their projections, they would still have to pay a minimum royalty (Kivett Dec., par. 5).

## Revenues and Royalties for Fiscal Year 2018

9.      Royalties for actual revenues for the first three quarters of fiscal year 2018 totaled $2,341,143.45.  The third quarter straddled Licensees' bankruptcy petition date of October 15, 2018.  Licensees have paid Licensor a total of $1,748,960.06 toward those royalties.  The portion of the $2,341,143.45 remaining unpaid, all of which was for pre-petition periods, totals $592,183.39.  This is the unsecured portion of Licensor's claim (Kivett Dec, par. 6 and Exhibit 2).

10.     While the fourth and final quarter of fiscal year 2018 ended on January 31, 2019, and the fourth quarter royalty report, fourth quarter royalty payment, and payment of the AMGR Shortfall were due on March 4, 2019 (March 2, 2019 was a Saturday), as of today, Licensees have not provided to Licensor the fourth quarter royalty report, fourth quarter royalty payment, or AMGR Shortfall payment.  Therefore, Licensor does not know what Licensees' royalties based on actual revenues for the fourth quarter of fiscal year 2018 are and Licensees are in post-petition breach of the License Agreement (Kivett Dec., par. 7).

11.     The AMGR for fiscal year 2018 is $4,500,000.  Licensees have already paid Licensor $1,748,960.06 for the first three quarters of fiscal year 2018.  The difference between those amounts is $2,751,039.94.  Assuming that actual royalties owed on actual revenues for the fourth quarter of fiscal year 2018 are $2,751,039.94 or less, the amount owed to Licensor through January 31, 2019 is $2,751,039.94[5], $592,183.39 of which is pre-petition.  That leaves a balance of $2,158,856.55 owed post-petition, and in post-petition default (Kivett Dec., par. 8 and Exh 2).

---

[5] This assumes that royalties based on actual revenues for all of fiscal year 2018 are equal to or less than the $4,500,000 AMGR.  If royalties for all of fiscal year 2018 based on actual revenues for all of fiscal year 2018 are higher than $4,500,000, then the fourth quarter payment due would be higher.

12.    Moreover, royalties continue to accrue on and after February 1, 2019.  For example, Licensees will owe Licensor royalties based on the sale of Everlast branded products to Buyer in the Sale, as well as royalties based on Licensees' other sales of Everlast branded products from and after February 1, 2019.  And the AMGR for fiscal year 2019 is also $4,500,000 (Kivett Dec., par. 9).

### Licensees' Complete Silence and Failure to Respond and Buyer's Statement that It Does Not Want to Take an Assignment of the License Agreement

13.    On January 31, 2019, Licensor requested that Licensees complete and return the royalty report for the fourth quarter of fiscal year 2018.  Licensees never responded despite the fact that Licensor sent the request to the same person at Licensees who had completed such reports in the past (Kivett Dec., par. 10 and Exh. 3).  Moreover, Licensor's primary business contact at Licensees left Licensees (Kivett Dec., par. 11).  Around the time of the Sale to Buyer, Licensor was contacted by Franck Gourlin and Elissa Robertson, but Licensor did not know whether they worked for Debtors or Buyer.  Representatives of Licensor met in person with Ms. Robertson (Mr. Gourlin attended by telephone) on February 25, 2019, and had a follow-up call with both of them on February 28, 2019.  During the meeting and the subsequent telephone call, Ms. Robertson and Mr. Gourlin stated and confirmed that:

a.    Ms. Robertson, Mr. Gourlin and the individual who handled royalty reports for Sears under the License Agreement no longer work for Sears, and only work for Buyer, having been hired by Buyer in connection with the Sale.  They speak for and represent only Buyer, and do not speak for or represent Sears.

b.    Ms. Robertson and Mr. Gourlin do not know who Licensor can contact at Sears to obtain, among other things, (i) the royalty report for the fourth quarter of fiscal year 2018, (ii) payment of the AMGR Shortfall, (iii) a list of the Everlast branded product that was

- 11 -

sold to Buyer in the Sale, or (iv) what additional Everlast branded product, if any, Licensees intend on ordering moving forward.

c.      Ms. Robertson and Mr. Gourlin do not know what or how much Everlast branded product Buyer acquired in the Sale.

d.      Ms. Robertson acknowledged that Buyer does not have the right to order the manufacture of Everlast branded products.

e.      Buyer does not want to assume the License Agreement and Licensor will have to obtain payment of the AMGR Shortfall from Licensees (Kivett Dec., par. 11).

14.      During Licensor's meeting and call with Ms. Robertson and Mr. Gourlin, Licensor reminded Ms. Robertson and Mr. Gourlin that so long as the License Agreement between Licensor and Licensees is still in effect, Licensor cannot enter into a new license of the Everlast Marks with Buyer (Kivett Dec., par. 12).

15.      Licensor has been unable to obtain contact information for anyone at Licensees who can discuss the License Agreement with Licensor.  Moreover, in addition to attempts to contact Licensees at the business level, Licensor's counsel has attempted to obtain information from Licensees' counsel.  Licensees' counsel has been non-responsive (Cohen Dec., pars. 3-6).

### Licensees Should Assume or Reject the License Agreement Forthwith

16.      Pursuant to Bankruptcy Section 365(d)(2), while the debtor ordinarily has until plan confirmation to assume or reject an executory contract, "the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."  Under Bankruptcy Code Section 365(d)(2), the court may determine a reasonable period of time to assume or reject a contract or lease based on the facts and circumstances. *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2nd Cir.

1982); *In re Lionel Corp.*, 23 B.R. 224, 226 (Bankr. S.D.N.Y. 1982) (where counterparty vigorously prosecutes its rights, debtor will have 20 days to make a decision whether to assume or reject the contract); *In re Utex Communications Corp.*, 457 B.R. 549, 569-570 (Bankr. W.D. Tex. 2011) (while relief from stay to allow termination of the contract is not warranted, debtor will be required to assume or reject the contract earlier for failure to make contractually required post-petition payments).

17. In this case, compelling Licensees to assume or reject the License Agreement forthwith is warranted. Among other things:

a. Licensees have breached their post-petition obligations by failing to make contractually required post-petition payments (including fourth quarter royalties and the AMGR Shortfall) and failing to provide required royalty reporting.

b. Based on the Sale to Buyer of Debtors' operating stores, and Debtors' going out of business sales with respect to the GOB Stores, there is nothing left for Debtors to reorganize. Therefore, they do not need time to decide whether to assume or reject depending on their reorganization plans.

c. Debtors are continuing to increase their administrative liability to Licensor with no assurances of payment to Licensor. Licensor should not be required to sit by with its hands tied while Licensees continue to enjoy the benefits of exclusive use the Everlast Marks for free.

d. Buyer has indicated that it does not want to take an assignment of the License Agreement and Debtors are going out of business, yet Licensor is precluded from finding a new licensee for the Everlast Marks if Licensees are going to reject (rather than assume) the License Agreement.

e.      Licensees and their counsel have gone silent.  Licensor has no information from Licensees, despite repeated requests, of (i) what Everlast branded inventory was sold to Buyer in the Sale, and (ii) what additional Everlast branded inventory Licensees are ordering and selling, both of which sales of inventory generate royalties to which Licensor is entitled.

18.      Based on the foregoing, compelling Licensees to assume or reject the License Agreement forthwith is warranted.

**<u>Pending Licensees' Decision, Adequate Protection Payments Are Warranted</u>**

19.      Pending Licensees' decision to assume or reject the License Agreement, adequate protection payments are warranted under Bankruptcy Code Section 363(e).  Pursuant to Bankruptcy Code Section 363(e), "at any time, on request of an entity that has an interest in property used, sold or leased, . . . , the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  Pursuant to Bankruptcy Code Section 361(1), adequate protection in the form of cash payment or periodic cash payments is warranted.

20.      In this case, Licensor has an interest in - - in fact owns - - property being used by Licensees, i.e., the Everlast Marks.  Therefore, Bankruptcy Code Section 363(e) is applicable.  In *In re DeSantis*, 66 B.R. 998 (Bankr. E.D. Pa. 1986), the court concluded that a court may require a debtor to keep post-petition payments current as adequate protection while the debtor is deciding whether to assume or reject a contract.  Necessarily following from such conclusion is that even if a debtor ultimately rejects the contract, the contract counterparty is entitled to adequate protection payments during the "in limbo" period before the debtor has determined whether to assume or reject the contract.

21.     If the debtor "elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, . . . , which, depending on the circumstances of a particular contract, may be what is specified in the contract." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984).

22.     In this case, payment by Licensees of the post-petition obligation of $2,158,856.55 (representing the post-petition amount of the fiscal year 2018 AMGR Shortfall without knowing the amount of Licensees' earned revenues for the fourth quarter) as adequate protection is warranted.  Like in *DeSantis*, this amount represents the amount of Licensees' post-petition failure to make post-petition payments.  Moreover, that amount is reasonable value provided by Licensor to Licensees.  Among other things, that amount represents the price of the bargained-for exclusivity provision of the License Agreement.  In exchange for Licensor providing Licensees exclusivity, Licensees agreed that the $4,500,000 AMGR was a reasonable estimate of the value of such exclusivity.

23.     Based on the foregoing, the Bankruptcy Court should compel Licensees to pay Licensor $2,158,856.55 as adequate protection while Licensees determine whether to assume or reject the License Agreement.

### Notice

26.     Notice of this Motion will be provided in accordance with the procedures set forth in the Order Implementing Certain Notice and Case Management Procedures (ECF 139). Licensor submits that no further notice is required.

27.     No previous request for the relief sought herein has been made by Licensor to this or any other Court.

WHEREFORE, Licensor respectfully requests entry of the Proposed Order appended

hereto as Exhibit A granting the relief requested herein and such other and further relief as is

just.

Dated: March 7, 2019
      Los Angeles, California          **SHEPPARD MULLIN RICHTER &**
                                      **HAMPTON LLP**

                                  By: *_/s/ Ted Cohen_____*
                                  Alan M. Feld, Esq.
                                  Ted Cohen, Esq.
                                  30 Rockefeller Plaza
                                  New York, New York 10112
                                  Tel: (212) 653-8700
                                  Fax: (212) 653-8701
                                  E-mail: afeld@sheppardmullin.com
                                            tcohen@sheppardmullin.com

                                  *Counsel for Everlast World's Boxing Headquarters*
                                  *Corp.*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS, *et. al.*[6], | Case No. 18-23538 (RDD) |
| Debtors. | Jointly Administered |
| | Hearing Date:          March 21, 2019, 10:00 a.m. ET |
| | Objection Deadline:  March 15, 2019, 4:00 p.m. ET |

**ORDER GRANTING MOTION OF EVERLAST WORLD'S BOXING
HEADQUARTERS CORP. UNDER BANKRUPTCY CODE SECTIONS 365(d)(2) AND
363(e) TO COMPEL: (1) ASSUMPTION OR REJECTION OF LICENSE AGREEMENT
FORTHWITH, AND (2) PAYMENT OF ADMINISTRATIVE CLAIM AS ADEQUATE
PROTECTION**

Upon the motion, dated March 7, 2019, of Everlast Worldwide's Boxing Headquarters

Corp. ("Licensor") Under Bankruptcy Code Sections 365(d)(2) and 363(e) to Compel: (1)

Assumption or Rejection of License Agreement Forthwith, and (2) Payment of Administrative

Claim as Adequate Protection (the "Motion"); and the Court having jurisdiction to decide the

---

[6] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Motion and the relief requested therein pursuant to 28 U.S.C. Sections 157(a)-(b) and 1334(b)

and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.);

and consideration of the Motion and requested relief therein being a core proceeding pursuant to

28 U.S.C. Section 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

Sections 1408 and 1409; and due and proper notice of the relief requested in the Motion having

been provided in accordance with the Case Management Order; such notice having been

adequate and appropriate under the circumstances, and it appearing that no other or further notice

need be provided; and the Court having held a hearing to consider the relief requested in the

Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had

before the Court; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and that the relief sought in the Motion

is in the best interests of the Debtors, their assets, their creditors, and all parties in interest; and

after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      Debtors shall assume or reject the License Agreement (as defined in the Motion)

on or before _____, 2019.

3.      If Debtors reject the License Agreement, without further action or order,

termination of the License Agreement shall be effective concurrent with rejection of the License

Agreement, without a waiver or relinquishment by Lessor of Lessor's administrative and

unsecured claims under the License Agreement, in these bankruptcy cases, or otherwise.

4.      As adequate protection of Licensor's interest in the Everlast Marks (as defined in

the Motion) while Debtors determine whether to assume or reject the License Agreement,

Debtors shall pay Licensor the sum of $_____ on or before _____, 2019.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
White Plains, New York


_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE