**Proposed Hearing Date and Time:  March 21, 2019 at 10:00 AM (Eastern Time)**
**Proposed Objection Date and Time:  March 18, 2019 at 4:00 PM (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :        Chapter 11
                                                            :
**SEARS HOLDINGS CORPORATION, *et al.*,**                   :        Case No. 18-23538 (RDD)
                                                            :
            Debtors. [1]                                    :        (Jointly Administered)
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF (I) HEARING ON DEBTORS' MOTION TO (A) ENFORCE
ASSET PURCHASE AGREEMENT AND AUTOMATIC STAY AGAINST
TRANSFORM HOLDCO LLC AND (B) COMPEL TURNOVER OF ESTATE
PROPERTY, AND (II) RESPONSE TO TRANSFORM HOLDCO
LLC'S MOTION TO ASSIGN MATTER TO MEDIATION**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "**Motion**")

of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order (a) enforcing

the Asset Purchase Agreement and the automatic stay against Transform Holdco LLC and

(b) compelling Transform Holdco LLC to turnover Estate funds, as more fully set forth in the

Motion, will be requested to be held before the Honorable Robert D. Drain, United States

Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York,

Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy

Court**") on **March 21, 2019 at 10:00 AM (Eastern Time)** (the "**Hearing**"), or as soon thereafter

as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the

"**Objections**") to the Motion will be requested to be in writing, conform to the Bankruptcy Rules

and the Local Rules, be filed with the Bankruptcy Court (a) by attorneys practicing in the

Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with

General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties

in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy

delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy

Court and General Order M-399, to the extent applicable, and be served in accordance with the

*Amended Order Implementing Certain Notice and Case Management Procedures*, entered on

November 1, 2018 (ECF No. 405), so as to be filed and received no later than **March 18, 2019 at

4:00 PM (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: March 11, 2019
     New York, New York

*/s/ Sunny Singh*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**Proposed Hearing Date and Time:  March 21, 2019 at 10:00 AM (Eastern Time)**
**Proposed Objection Date and Time:  March 18, 2019 at 4:00 PM (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
```

| | |
|---|---|
| **In re**                                           : | |
|                                                     : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*,           : | |
|                                                     : | **Case No. 18-23538 (RDD)** |
|                                                     : | |
| **Debtors.**[1]                                     : | **(Jointly Administered)** |
|                                                     : | |
|                                                     : | |

```
-------------------------------------------------------------x
```

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' (I) MOTION TO (A) ENFORCE ASSET PURCHASE AGREEMENT AND
AUTOMATIC STAY AGAINST TRANSFORM HOLDCO LLC AND (B) COMPEL
TURNOVER OF ESTATE PROPERTY, AND (II) RESPONSE TO
TRANSFORM HOLDCO LLC'S MOTION TO ASSIGN MATTER TO MEDIATION**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), the sellers under that certain Asset Purchase Agreement, dated January 17, 2019 (as amended on February 11, 2019, and as amended or modified from time to time, the "**APA**"),[2] by and among Transform Holdco LLC (the "**Buyer**"), the Debtors and certain of its subsidiaries (collectively, the "**Sellers**"), respectfully represent as follows in support of (i) this motion to enforce the APA and automatic stay against the Buyer and compel immediate turnover of $57.5 million of Estate funds being unlawfully withheld by the Buyer (the "**Motion to Enforce**") and (ii) the Debtors' response to the Buyer's *Motion to Assign Matter to Mediation* (ECF No. 2766) (the "**Motion to Mediate**"):

## PRELIMINARY STATEMENT

1.      The Debtors bring this Motion to Enforce to address egregious conduct by the Buyer in violation of not only the governing APA but also the automatic stay, all of which is depriving the Debtors of $57.5 million of Estate property.

2.      The Buyer, an affiliate of ESL Investments, Inc., the Debtors' former controlling shareholder, is in violation of the automatic stay and breach of its contractual obligations under the APA by refusing to deliver $57.5 million that are the property of the Debtors under the Court-approved APA and Sale Order (as defined herein).  The Debtors request that the Court order the Buyer to immediately turn over these funds to the Estate.  The Buyer's request for

---

[2] All capitalized terms used but not defined herein shall have the meaning set forth in the APA.  The APA was attached as Exhibit B to the Sale Order (as defined herein).

mediation is nothing more than an attempt to delay turning Estate property over to the Debtors by conflating unrelated post-closing disputes (to which the Debtors have fully responded) with the Buyer's refusal to deliver $57.5 million that plainly belongs to the Debtors per the APA, despite the Debtors' repeated demands. Remarkably, the Buyer's Motion to Mediate fails to even mention the threshold issue of the $57.5 million being withheld by the Buyer from the Debtors in clear violation of the automatic stay, the APA, and the Sale Order.

3.      Further, the Buyer is well aware of the extent to which the Debtors have limited resources to engage in protracted litigation. The $57.5 million in funds improperly retained by the Buyer are critical to maintaining administrative solvency and the Buyer is jeopardizing the Debtors' ability to timely file a chapter 11 plan by withholding these funds. Rather than simply turn over the Estate assets, or seek guidance from this Court (which is intimately familiar with the APA and its terms), the Buyer instead conflates its obligation to turn over Estate property with a litany of unsubstantiated claims of misrepresentations and breaches by the Debtors, and requests a mediation that would, at best, delay resolution of any of these issues by more than a month.

4.      As the Debtors stated to the Buyer before it filed its Motion to Mediate, and as this Court has shown throughout the course of these cases, if there is a dispute, the Debtors would prefer to keep these issues front and center with this Court, which is most familiar with the APA and the issues facing the Debtors and their Estates, as well as the dynamics currently affecting the Estates. The Motion to Mediate should be seen for what it is: the Buyer's transparent attempt to delay the transfer of Estate assets to gain leverage in its ongoing effort to sidestep the liabilities which Buyer assumed under the APA, including the $166 million in assumed accounts payable that this Court previously indicated the Buyer would be very unlikely to avoid.[3] This unfortunate

---

[3] The Debtors do not address the merits of the underlying disputes in this Motion and, instead, set forth their positions in the letter dated March 6, 2019 (the "**March 6 Letter**"), a true and correct copy of which is attached as Exhibit D to

distraction only delays the filing of a chapter 11 plan—which should be the parties' primary focus—while unnecessarily expending the Debtors' limited remaining resources.

5.      This Court is more than capable of satisfying the Buyer's stated justification for mediation—resolving the dispute "expeditiously and without the delays and expense of formal litigation to best serve the interests of the Estates and permit the Buyer to focus on turning around the acquired business." *See* Motion to Mediate ¶ 4. As the Debtors advised the Buyer, as soon as the Buyer transfers the $57.5 million to the Debtors as required by the APA, the Debtors are willing to sit down with the Buyer regarding the remaining issues, which may obviate the need for costly litigation or mediation.

6.      For these reasons and those set forth below, the Debtors respectfully request that the Court enter an order (i) enforcing the APA and automatic stay and compelling the Buyer to turnover to the Debtors $57.5 million in funds being withheld by the Buyer in violation of sections 362(a)(3) and 542 of the Bankruptcy Code, the express terms of the APA, and this Court's Sale Order, and (ii) denying the Buyer's Motion to Mediate. In support of the Motion, the Debtors have filed the Declaration of Mohsin Meghji, dated Mar. 11, 2019 (the "**Meghji Decl.**") contemporaneously herewith.

## **BACKGROUND**

7.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are

---

the *Declaration of Katherine R. Lynch in Support of Transform Holdco LLC's Motion to Assign Matter to Mediation*, dated March 6, 2019 (ECF No. 2767) (the "**Lynch Decl.**"). The Debtors fully and expressly reserve their rights regarding the same.

authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.    On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

9.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## MOTION BACKGROUND

10.    On January 14, 2019, the Debtors conducted an auction for the sale of certain assets.  The Debtors selected the bid submitted by Buyer. and filed a copy of the executed APA on January 18, 2019.  *See Notice of Successful Bidder and Sale Hearing* (ECF No. 1730).

11.    The Court began hearings on the contested sale on February 4, 2019, ultimately approving the sale on February 8, 2019.  *See Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507) (the "**Sale Order**").

12.    On February 11, 2019, the sale closed pursuant to the APA.  In connection with the Closing, the Debtors executed an amendment to the APA, which was filed with the Court on February 14, 2019.  *See Notice of Filing Amendment to the Asset Purchase Agreement* (ECF No. 2456).

13.    Prior to the time of Closing, the Buyer advised that it had not done the work necessary to implement its own cash management system or to set up its own bank accounts.  *See*

Meghji Decl. at ¶ 6. As a concession to the Buyer—in order to alleviate the risk to Closing and in an effort to help facilitate a seamless transition of the going-concern business in the interests of, among others, the Debtors' employees and key stakeholders—the Debtors agreed to give the Buyer possession and control of the Debtors' cash management system, including its bank accounts as of the Closing Date. *Id.* ¶ 7.

14.     Certain issues needed to be addressed, however, before the Buyer took control of the cash management system. *Id.* ¶ 8. For example, the Debtors knew that delays in credit card processing, cash deposits, and cash sweeps from regional and foreign bank accounts would inevitably cause proceeds from pre-Closing transactions—explicitly carved out in the APA and retained by the Debtors' Estates—to enter the transferred bank accounts post-Closing. *Id.* ¶¶ 8–9. However, in the interest of ensuring the timely close of the transaction and mitigating Closing risk, the Debtors, per the Buyer's request, agreed to cede control of the accounts at Closing and work with the Buyer's financial advisors, Ernst & Young ("**E&Y**"), to implement a post-Closing reconciliation process for cash and credit card proceeds that were ultimately the property of the Debtors and the Debtors' Estates. *Id.* ¶ 9.

15.     In sum, as a condition of handing the Buyer the transferred accounts and control of the cash management system, the Buyer understood and agreed that the Buyer would remit to the Debtors all funds currently in, or that subsequently came into, that cash management system that were not acquired by the Buyer under the APA and therefore remained assets of the Estate. *Id.* ¶ 13. In fact, the Debtors and the Debtors' advisors approved a cash reconciliation memorandum prepared by the Buyer's advisor E&Y, which outlined the process by which the Debtors were to efficiently recover all cash balances once the transaction had closed (the "**E&Y**

6

Memo").[4]  *Id.* ¶ 9.  But the Buyer now is refusing to remit these Estate assets back to the Estate.[5]

*Id.* ¶ 15.

16.  The assets owed to the Debtors in the cash management system—which are

each expressly carved out in the APA and retained by the Debtors' Estates[6]—total approximately

$41.3 million, and include:

- approximately $14.6 million in credit card proceeds from transactions that occurred prior to Closing;

- approximately $18.5 million in cash proceeds from transactions that occurred prior to Closing, but that were still in transit from regional banks or the stores until after Closing;

- approximately $4.5 million of cash in transit from the Debtors' Israeli bank accounts prior to Closing; and

- approximately $3.7 million in credit card proceeds for GOB Store proceeds.

*Id.* ¶ 14.

17.  Each of these categories is either cash or proceeds from transactions that

occurred pre-Closing, but that had not yet arrived in the Debtors' bank accounts.  Accordingly,

they are not Acquired Assets under the APA and remain Estate property.  *Id.* ¶ 15; *see also* APA

§§ 2.1(ee), 2.2(f), 2.2(d), 9.11(a), 10.9.  The Buyer also is withholding GOB Store proceeds that,

likewise, were not acquired by the Buyer under the APA.  *See* Meghji Decl. at ¶ 15.

---

[4] *See* Exhibit A to the Meghji Decl.

[5] On Friday, March 8, 2019, the Buyer offered to transfer to the estate approximately $3.4 million of cash from Israeli bank accounts as well as approximately $3.3 million from GOB proceeds, but only if the Estate simultaneously releases to the Buyer pharmacy receipts from an account that has remained with Kmart until the Buyer can get its own pharmacy licenses.  *See* Exhibit B to the Meghji Decl.  Despite the Buyer's insinuation that Debtors had placed a "block" on the Pharmacy Receivables, the Debtors responded on March 11, 2019 that the Debtors would establish a procedure to transfer the Pharmacy Receivables—which the Buyer is entitled under the APA—without conditioning that transfer on any reciprocal action by the Buyer.

[6] An explanation of the entire $57.5 million improperly withheld by the Buyer and each category of the asset's respective treatment under the APA is attached to this Motion to Enforce at Schedule 1.

18.      To be clear, the Buyer has refused to provide the information and reconciliations to confirm these funds and, therefore, refused to remit the funds in each of the categories it discussed with the Debtors during the pre-Closing discussions of the cash management system.  *Id.*  Had the Debtors not provided this accommodation to the Buyer (despite the Buyer's assurances that the Estate would not be prejudiced), $41.3 million would now be under the Debtors' control, *id.* ¶ 16, and the Buyer would have to assert a claim for any disputed amounts.

19.      In addition to the $41.3 million in assets retained by the Debtors' Estate in the APA, the Buyer also is withholding an approximately $16.2 million Rent Proration payment for February 2019.  *Id.* ¶ 17.  Because the Debtors had already paid rent for the full month of February as of the Closing Date, the APA entitles the Debtors to a prorated rent payment from the Buyer for February 2019 for the portion of the month after Closing during which the Debtors were no longer in possession of certain leased premises.  APA § 9.11(d).

20.      Prior to the Closing, the Debtors' advisors provided the Buyer's advisors with a copy of the rent proration schedule required under the APA (later finalizing the schedule, as contemplated under the APA).  Meghji Decl. at ¶ 17.  Despite the Debtors' adherence to the scheduling and notice requirements under the APA, as well as the Buyer's advisors' agreement that the payment would be made,[7] the Buyer now refuses to make the rent proration payment ten business days after it was due under the APA.  *Id.* ¶ 18.  There can be no dispute—let alone justification—for the Buyer's refusal to transfer the Rent Proration payment.  The Rent Proration is not subject to any setoff or netting under the APA.

21.      The Debtors have made repeated attempts to recover the Estate assets from the Buyer, most recently in the March 6 Letter that also addressed all the unrelated post-Closing

---

[7] *See* Exhibit C to the Meghji Decl.

issues raised by the Buyer in a letter to the Debtors on February 25, 2019.[8]  *Id.* ¶ 22.  These unrelated issues include the Buyer's unsubstantiated allegations of misrepresentations and breaches of the APA by the Debtors.[9]  The March 6 Letter explained that the Debtors' immediate concern is to collect the Estate assets, but that the Debtors are willing to work through the Buyer's issues in good faith once the Estate assets—unrelated to the Buyer's allegations—are received. The Buyer responded almost immediately with its Motion to Mediate based on issues unrelated to the Debtors' recovery of the Estate assets.

22.     With the knowledge that the Debtors have minimal revenue expectations and depleted reserves to meet their post-Closing obligations and wind-down of the Estates, the Buyer now refuses to transfer the Estate assets that have aggregated in the transferred bank accounts and that it would not possess but for the Debtors' accommodation to give the Buyer control of the cash management system in order to close.  Further, ten business days have lapsed since February 22, when the Buyer was obligated to make the Rent Proration payment.

## RELIEF REQUESTED

23.     For the foregoing reasons, the Debtors respectfully request that the Court issue an order (i) enforcing the APA and automatic stay pursuant to 11 U.S.C. § 362(a)(3) and compel the Buyer to turn over the Debtors' property pursuant to the APA pursuant to 11 U.S.C. § 542(a), and (ii) denying the Motion to Mediate.

24.     A proposed form of order granting the relief requested in the Motion to Enforce is attached hereto as **Exhibit A** (the "**Proposed Order**").

---

[8] *See* Exhibit D to the Lynch Decl.

[9] The Debtors vigorously contest all of the Buyer's meritless allegations regarding the Debtors' conduct, none of which is germane to either the issues before the Court on these motions.  For the record, the Debtors' positions with respect to these allegations are set forth in their March 6 letter to the Buyer, which may be supplemented.  *See id.*

# ARGUMENT

## I.    The Buyer is Violating the APA and Automatic Stay by Withholding Estate Assets

25.    Pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoins all entities from, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3). Pursuant to section 541(a) of the Bankruptcy Code, "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).

26.    The injunction contained in section 362 of the Bankruptcy Code is self-executing.  "The scope of the stay is broad, encompassing 'almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy estate].'"  *In re Salov*, 510 B.R. 720, 725 (Bankr. S.D.N.Y. 2014) (quoting 3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. 2014) (alterations in original)).  "Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out the provisions of the Bankruptcy Code."  *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000).

27.    In addition to ignoring the conditions upon which the Debtors permitted the Buyer to take over the cash management system (*see* Meghji Decl. at ¶¶ 13, 15), as well as the terms of the APA, the Buyer is in violation of the injunction imposed by the automatic stay.  The GOB proceeds and cash in transit are, without question, property of the Debtors' Estate.  The $14.6 million in credit card proceeds were excluded assets under the APA as the aggregate amount of the Acquired Inventory, Credit Card Receivables and Pharmacy Receivables (each as defined in the APA) delivered at Closing was in excess of $1,657 million.  *See* APA § 10.9.  The $18.5 million in pre-Closing cash transactions proceeds and $4.5 million cash in transit from Israeli bank

accounts were excluded as "cash and cash equivalents." *Id.* §§ 2.2(f), 2.2(ee). And, the $3.7 million in GOB Store proceeds implicate the APA's exclusions of certain inventory and GOB revenues. *Id.* §§ 2.2(d), 9.1(a).

28.    It is a violation of the automatic stay for a non-debtor to seek to exercise its right to setoff by withholding funds or placing an administrative freeze on bank accounts without first seeking relief from the automatic stay. *See In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010); *In re Adomah*, 340 B.R. 453, 458–59 (Bankr. S.D.N.Y. 2006); *see also Small Bus. Admin. v. Rinehart*, 887 F.2d 165, 169 (8th Cir. 1989). As such, the Buyer cannot justify its conduct based on its meritless allegations of misrepresentation and breach of the APA by the Debtors. The Buyer is exercising possession and control over those assets, and frustrating the purpose of the automatic stay—to provide the Debtors with a "breathing spell from his creditors [and permit] the debtor to attempt a . . . reorganization plan." *See*, *e.g.*, *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996) (quoting S. Rep. No. 95-989, at 54-55 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840-41).

29.    Accordingly, the Debtors respectfully request that the Court enforce the automatic stay and order the Buyer to turn over the Estate property immediately.

## II.    This Court Has the Authority to Compel the Buyer to Turn Over the Estate Property Belonging to the Debtors

30.    Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include all "interests of the debtor in property" "wherever located and by whomever held." 11 U.S.C. § 541(a). The Bankruptcy Code provides various tools to marshal the assets of an estate for the benefit of the estate's creditors. One such tool is turnover, pursuant to 11 U.S.C. § 542. *See Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013). "A

turnover action's essence is in bringing the estate's property into its custody" by invoking "the court's most basic equitable powers to gather and manage property of the estate." *Id.*

31.     Further, section 105 of the Bankruptcy Code allows courts to "enforce or implement" its earlier lawful orders—i.e., to "vindicate[] the interests of the court." *See NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004). In the Sale Order, this Court found that the "Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms." Sale Order at ¶ Y. The Buyer now is violating the Sale Order by refusing to comply with its obligations in the APA.

32.     Section 542(a) provides that an entity in possession, custody, or control of estate property "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." The party seeking turnover of estate property must therefore show: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of [11 U.S.C. §] 363; and (3) the property has more than inconsequential value to the debtor's estate." *Kramer v. Mahia (In re Khan)*, No. 10-46901-ESS, 2014 WL 10474969, at *26 (E.D.N.Y. Dec. 24, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011)).

33.     The Debtors satisfy all three requirements for turnover pursuant to Section 542 of the Bankruptcy Code. No party can dispute that these assets remain in the Buyer's possession and control. The withheld payments are undeniably Estate property, which may be used in accordance with § 363. *See supra* ¶¶ 16, 21. And the value is highly consequential to the Debtors' Estate. As noted above, the Buyer concedes as much in its Motion to Mediate.

34.     As discussed above, the funds from the cash management system that the Buyer is unlawfully refusing to turn over to the Estate were not acquired by the Buyer under the express provisions of the APA.  The Buyer's purported basis for withholding these assets is meritless and based on unrelated assertions that the Debtors have breached the APA.  Even if there was any merit to the Buyer's allegations of misrepresentations or breach by the Debtors—there is not—those allegations do not change the underlying character or ownership of the property; nor do they give the Buyer a legal justification to exercise possession or control of the Estate assets. *See, e.g.*, *LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, 582 B.R. 46, 118 (Bankr. S.D.N.Y. 2018) (denying motion to dismiss § 542 turnover claim, where party seeking turnover offered facts showing its interest in cash proceeds of equity sales that it had given to another party to hold, despite the opposing party's repeated insistence that title to the cash proceeds was in dispute), *amended on reconsideration on other grounds*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

35.     With respect to the Debtors' assets in the cash management system, the Buyer improperly is seeking to use Estate property to effect a set-off of unrelated amounts it now claims entitlement to based on its meritless allegations of misrepresentation and breach by the Debtors.  The Buyer's conduct is particularly egregious given that the Buyer only has control of such funds because of the voluntary accommodation made by the Debtors to give the Buyer control of the cash management system so that the sale could close as expeditiously as possible and as contemplated by the APA and the Sale Order.  But this was done with express understanding and assurances by the Buyer that Estate property, not acquired by the Buyer, in the cash management system would immediately be transferred to the Debtors in accordance with the E&Y Memo.

36.      Likewise, the Rent Proration amounts the Buyer is withholding must be turned over immediately.  The Buyer has taken various inconsistent positions with respect to these amounts, some of which conflict with its own advisors.  On February 20, 2019, the Buyer's own advisors confirmed that the Rent Proration schedule was satisfactory and that payments to the Debtors should be made by February 22, 2019 as set forth in the APA.[10]  Meghji Decl. at ¶ 17. The Buyer failed (or refused) to make such payments by that deadline.

37.      In the Buyer's February 25, 2019 letter, it claimed to be withholding this payment "because [Debtors] did not timely deliver the Initial Prorations Schedule prior to Closing."[11]  That is incorrect.  Notably, following the Debtors' March 6 Letter, the Buyer asserted a new basis for why it had failed to timely transfer the Rent Proration, now claiming in response that "[t]he $16.2 million in respect of February rent proration is not yet final and, among other things, does not include proration of amounts paid by the Buyer after the Closing."  *Id.* at ¶ 19.[12] Emails between counsel for the Buyer and counsel for the Debtors, dated March 6, 2019, reflect this.[13]

38.      The Buyer's purported concerns regarding amounts it may have paid after Closing are baseless.  *Id.* ¶ 20.  The APA expressly provides for a two-part proration process:  first, initial settlement on the eighth business day after the Closing Date based on proration items asserted prior to the Closing Date or within the first seven Business Days thereafter; and then, for a true-up to be made 75 days after the Closing Date to address any additional post-closing

---

[10] *See* Exhibit C to the Meghji Decl.

[11] *See* Exhibit A to the Lynch Decl.

[12] *See* Exhibit D to the Meghji Decl.

[13] *See id.*

payments or other post-Closing proration items. *Id.* The Buyer cannot unilaterally withhold the payment on that basis. Doing so constitutes a breach of the APA and violates the automatic stay.

39. Accordingly, the Debtors respectfully request that the Court compel the Buyer to turn over all Estate property immediately.

### III. Mediation is Inappropriate at This Time and This Court Has Repeatedly Shown in This Very Matter That It is More than Capable of Resolving Disputes among the Parties on an Expedited Basis

40. The Bankruptcy Court has discretion concerning whether to order parties to mediation and should issue such an order only where mediation would be in the best interests of the Debtors and their estates, creditors, and stakeholders. *See* 11 U.S.C. § 105(a) (providing, *inter alia*, that "[t]he court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code) (emphasis added)); Hr'g Tr., *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Jan. 16, 2014) (ECF No. 757) at 15:12-20; 16:6 (refusing to order the parties to mediation where, *inter alia*, there was not "consensus [or] commitment to the process on . . . all parts to order the parties to mediation"); Order Appointing Mediator, *In re NewPage Corp.*, Case No. 11-12804 (KG) (Bankr. D. Del. Aug. 14, 2012) (ECF No. 2155) (ordering mediation after "having determined that referral to Mediation . . . [was] in the best interests of the Debtors, their estates, creditors and stakeholders . . . after due deliberation and sufficient cause appearing"). Sufficient grounds to order mediation regarding this dispute do not exist.

41. The Court should exercise its discretion to deny the Buyer's Motion to Mediate. Mediation would not be in the best interests of the Debtors or their estates, creditors, or stakeholders but, rather, is merely an effort by the Buyer to delay the Buyer's turnover of Estate assets. The APA provides that "the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may be based upon . . .

any breach or default." APA § 13.8(b). Further, this Court "retain[ed] exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the [APA]." Sale Order at ¶ 58.

42. The Buyer's violations of the automatic stay and the Court-approved APA and Sale Order requires immediate resolution by the Court, not mediation. Once the funds are turned over to the Debtors, as stated, the Debtors are willing to meet with the Buyer to resolve their post-Closing disputes. Those discussions may be successful and obviate any need for litigation or mediation.

43. Moreover, the two orders (characterized as numerous and recent but which are, in fact, few and old) that the Buyer references in its Motion to Mediate, Mot. at 6 n.4, do not advance its argument. The Order Appointing Mediator in the *Tribune* chapter 11 cases makes clear that the disputes at issue in those cases centered on "the formulation and proposal of a confirmable plan of reorganization," including the resolution of various causes of action. *See* Order Appointing Mediator, *In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del. Sept. 1, 2010) (ECF No. 5591) at 1. In the *NewPage* cases, as well, the disputes referred to mediation related to "the formulation and confirmation of a chapter 11 plan." *NewPage* Order Appointing Mediator at 1. In *Tribune*, several objections to plan confirmation had been filed by the time the bankruptcy court issued an order appointing a mediator. *See, e.g.*, Objections to Confirmation of Plan, *In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del. July 29-30, Aug. 11, 2010, Aug. 27, 2010) (ECF Nos. 5184, 5188, 5207, 5215, 5336, 5546, 5548).

44. This is not a plan dispute between multiple parties. This is a violation by the Buyer of the automatic stay and the just-approved APA and Sale Order that should be addressed immediately by the Court.

## CONCLUSION

45.     For the foregoing reasons, the Debtors respectfully request that the Court issue an order (i) enforcing the APA and automatic stay pursuant to 11 U.S.C. § 362(a)(3) and compelling the Buyer to turn over the Debtor's property pursuant to the APA pursuant to 11 U.S.C. § 542(a), and (ii) denying the Motion to Mediate.

## RESERVATION OF RIGHTS

46.     The Debtors reserve all of their rights, claims, defenses, and remedies, including, without limitation, their rights to amend, modify, or supplement this Motion, to seek discovery, and introduce any evidence in any hearing with respect to this Motion.  Further, the Debtors reserve all claims, causes of action, damages, rights, remedies, and/or defenses in connection with the Buyer's violation of the automatic stay.

## NOTICE

47.     Notice of this Motion to Enforce will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"), including to the Buyer.  The Debtors respectfully submit that no further notice is required.

48.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

*[Remainder of Page Intentionally Left Blank.]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just.

Dated: March 11, 2019
          New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

## SCHEDULE 1

The total amounts owed to the Debtors, approximately $57.5 million, are set out below:

| *Description* | *Amount (mm)* | *Treatment in APA* |
|---|---|---|
| Credit card proceeds from transactions that occurred prior to Closing | **$14.6** | Oldest of certain Credit Card Accounts Receivable are Excluded Assets. § 10.9 |
| Cash proceeds from transactions that occurred prior to Closing | **$18.5** | "All cash and cash equivalents" excluded. § 2.2(f)<br><br>Cash in transferred bank accounts excluded. § 2.1(ee) |
| Cash in transit from Israeli bank accounts | **$4.5** | "All cash and cash equivalents" excluded. § 2.2(f)<br><br>Cash in transferred bank accounts excluded. § 2.1(ee) |
| Credit card proceeds for GOB Store proceeds | **$3.7** | Excluded Inventory (including all Inventory at any GOB Store) is an Excluded Asset. § 2.2(d)<br><br>GOB revenues excluded. § 9.11(a) |
| February Rent Proration payment | **$16.2** | Obligation of Buyer. § 9.11(d) |
| **Amount Owed to Debtors** | **$57.5** | |

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                    :

In re                              :             **Chapter 11**

                                    :

**SEARS HOLDINGS CORPORATION,** *et al.*,     :             **Case No. 18-23538 (RDD)**

                                    :

           **Debtors.**[1]                  :             **(Jointly Administered)**

                                    :
------------------------------------------------------------x

## ORDER ENFORCING ASSET PURCHASE AGREEMENT AND AUTOMATIC STAY AGAINST THE BUYER AND COMPELLING TURNOVER OF ESTATE PROPERTY

Upon the motion, dated [___], 2019 (ECF No. [___]) (the "**Motion**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order (the "**Order**") enforcing the APA and automatic stay, compelling turnover of estate funds, and denying Transform Holdco LLC's *Motion to Assign Matter to Mediation* (ECF No. 2766), pursuant to sections 105, 362, 541, and 542 of chapter 11 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

"**Bankruptcy Code**"); and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on _____, 2019 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      Transform Holdco LLC is directed to turn over to the Debtors $57,500,000 being withheld by Transform Holdco LLC within one (1) business day of the entry of this Order.

3.      The Motion to Mediate is denied.

4.       The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
        White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE