AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Joseph L. Sorkin
Sara L. Brauner

*Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' (I) MOTION TO (A) ENFORCE ASSET PURCHASE AGREEMENT AND AUTOMATIC STAY AGAINST TRANSFORM HOLDCO LLC AND (B) COMPEL TURNOVER OF ESTATE PROPERTY, AND (II) RESPONSE TO TRANSFORM HOLDCO LLC'S MOTION TO ASSIGN MATTER TO MEDIATION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365) ); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its undersigned counsel, hereby files this joinder (the "Joinder") to the *Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation* [ECF No. 2796] (the "Motion to Enforce").[2]  In support of this Joinder, the Creditors' Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1.  Beginning shortly after the February 11, 2019 closing of the sale of substantially all of the Debtors' assets to Transform Holdco, LLC ("Buyer" and, together with its affiliates and principals, including ESL Investments, Inc., "ESL") and continuing thereafter, ESL has withheld $57.5 million of the Debtors' cash, while asserting that the Debtors breached the APA warranting a reduction of the liabilities it agreed to assume in connection with the sale by hundreds of millions of dollars.  There are no legal or factual bases for ESL retaining such cash or for substantially all of ESL's assertions that a massive purchase price adjustment, which would solidify the Debtors' administrative insolvency, is warranted.  Indeed, among the "disputes" for which ESL seeks mediation is ESL's obligation to pay $166 million in liabilities related to the "Other Payables"—an issue that this Court addressed preliminarily at the sale hearing and found no basis for ESL's strained interpretation of its obligation.  The creation of these "disputes" by ESL—which, apparently existed since the sale closed, but inexplicably were

---

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Motion to Enforce.

2

only brought to the Creditors' Committee's attention hours before the Motion to Mediate[3] was filed[4]—are, at best, a leverage play by ESL to take advantage of the Debtors' precarious financial position in an attempt to force the Debtors to allow ESL to pay even less for the assets it acquired primarily through its credit bid of disputed claims.  At worst, the Motion to Mediate is an attempt to gain leverage to force a settlement of myriad valuable claims and causes of action against ESL that were not released in connection with the sale, the proceeds of which will redound to the benefit of unsecured creditors.  Regardless of the motivation, it is evident that ESL has ignored this Court's urging to "take actions that . . . would in fact, be of great meaning to the Debtors' constituents."  *See* Feb. 7, 2019 Hr'g. Tr. 246:1-18.  Instead, ESL has continued its pre-petition pattern of questionable conduct and exacerbated such conduct by forcing the Debtors to incur unnecessary administrative expenses in responding to the Motion to Mediate, filing the Motion to Enforce and litigating disputes that should not exist all while ESL withholds estate property and takes positions clearly inconsistent with the terms of the APA.

2.    ESL's rhetoric over resolving these disputes "expeditiously" and in an "amicable" manner through mediation should not obscure the fact that there is no mutual benefit here:  each gain for ESL is a loss for the Debtors' estates and their creditors, as ESL's self-serving conduct threatens the Debtors' administrative solvency and their ability to confirm a chapter 11 plan that will provide for the prosecution of claims against ESL for the benefit of unsecured creditors.

---

[3] *Transform Holdco LLC's Motion to Assign Matters to Mediation* [ECF No. 2766] (the "Motion to Mediate").

[4] The Creditors' Committee first learned of these disputes through receipt of a letter dated March 6, 2019 (the "March 6 Letter") sent by Weil Gotshal & Manges LLP ("Weil")  in response to a letter sent by Cleary Gottlieb Steen & Hamilton LLP ("Cleary") on February 25, 2019 (the "February 25 Letter") identifying apparent disputes between the Buyer and Sellers.  The February 25 Letter references earlier correspondence between Weil and Cleary regarding these disputes, including, among others, letters dated February 21, 2019 and February 11, 2019 from Cleary to Weil.  On March 7, 2019, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") made the Creditors' Committee's concerns regarding the lack of transparency known to the Debtors in a responsive letter (the "March 7 Letter").  By the March 7 Letter, Akin Gump requested that all prior correspondence regarding the alleged post-closing disputes be disclosed to the Creditors' Committee.  Notwithstanding this request, the Creditors Committee has yet to receive such communications.

These are not the methods of a party seeking an "amicable resolution." Motion to Mediate ¶ 4. Rather, the Motion to Mediate is a clear attempt by ESL to forum shop, take advantage of the Debtors' precarious financial position and manufacture disputes that the Debtors' estates can ill-afford to fight. The Motion to Mediate should be seen for what it is: a blatant attempt to withhold value and avoid assuming liabilities that Buyer is obligated to remit and pay in order to exert undue pressure on the Debtors.

3. Accordingly, the Creditors' Committee expressly adopts, joins and incorporates the arguments set forth in the Debtors' Motion to Enforce and requests that this Court enter an order (i) enforcing the automatic stay against ESL and compelling the turnover to the Debtors of any estate property that ESL holds and (ii) denying the Motion to Mediate.

## JOINDER

**A.    ESL Is Wrongfully Withholding $57.5 Million from the Debtors**

4. As set forth in the Motion to Enforce, ESL is in violation of the automatic stay by withholding $57.5 million that is property of the Debtors' estates. *See* Motion to Enforce ¶¶ 25-29. The Debtors gave ESL control of their cash management system at closing in an attempt to close the sale as expeditiously as possible and in express reliance on a cash reconciliation memorandum prepared by ESL's advisors. *See id.* ¶¶ 15, 35. Despite these assurances and the steps taken to ensure that the property of the estates would be reconciled appropriately after closing, ESL has continued to withhold $57.5 million with no explanation of how such funds are not Excluded Assets under the APA or otherwise property of the Debtors' estates. *See id.* ¶ 27.

5. Furthermore, ESL's refusal to turn over assets that belong to the Debtors' estates threatens to render the Debtors administratively insolvent and impair creditor recoveries such that they may not be able to receive the benefits of the sale to ESL. At the hearing on February

7, 2019, this Court discussed in detail the execution risks inherent in the APA and the potential administrative insolvency of the Debtors' estates as a result of the sale. Although in approving the sale to ESL, this Court ultimately found the execution risk associated with the various closing conditions and liability assumptions under the APA to be reasonable, this Court recognized that the "Debtor need[ed] to be left with resources to ensure that the transaction's benefits will be received [by the Debtors' estates]." Feb. 7 Hr'g. Tr. 220:20-21, 241:6-7. At the hearing, the Court expressed a belief that "the parties will deal with each other in good faith to enable those conditions to happen, particularly given the identification of ESL with [the Sears business] and the consequences that would happen to it . . . if they do not deal with . . . each other in good faith to resolve those conditions to closing." *Id.* at 243:1-10.

6. As this Court is aware, the Creditors' Committee has always been concerned about administrative solvency. The imminent prospect of administrative insolvency occasioned by ESL's motion and assertions, together with the indisputable fact that the $57.5 million of withheld funds belong to the Debtors' estates, demonstrates that ESL's actions are nothing more than a thinly veiled attempt to extract further concessions from the Debtors for ESL's sole benefit. Indeed, ESL's conduct is in direct contravention of this Court's instruction that the parties work in good faith to ensure that the numerous conditions under the APA are satisfied. *See id*. at 243:1-10. Accordingly, this Court should enter an order enforcing the automatic stay and directing ESL to turn over the $57.5 million to the Debtors' estates.

**B.    The Court Should Deny ESL's Request to Mediate**

7. For the reasons set forth herein and in the Motion to Enforce, this Court should deny the Motion to Mediate as not in the best interests of the Debtors' estates or their creditors. It should come as no surprise that ESL wants to avoid bringing these matters before this Court. Predictably, ESL would rather take the dispute to mediation where it can leverage its control and

possession of assets that are vital to the Debtors in order to renegotiate the terms of the APA in ESL's own favor and to the detriment of all other interested parties. ESL claims that there is no principled basis for opposing mediation. Motion to Mediate ¶ 2. In truth, there are numerous compelling reasons not to submit the present disputes to mediation.

8. *First*, the disputes concern the terms and interpretation of the APA, an agreement with which this Court is intimately familiar. For example, one of the disputes involves ESL's obligation to assume up to $166 million in "Other Payables." *See* APA § 2.3(k)(v). Specifically, section 2.3(k) of the APA provides that the Buyer "shall assume, effective as of the Closing . . . Other Payables." APA § 2.3(k).[5] Immediately prior to the hearing on the ESL Sale, however, ESL raised a dispute over the meaning of its obligation to pay the Other Payables. Accordingly, counsel for the Debtors brought the matter to this Court's attention, and this Court heard testimony from the Debtors on the meaning of section 2.3(k) of the APA. *See, e.g.*, Feb. 6, 2019 Hr'g. Tr. 56:18-20 (Mr. Meghji testifying that his understanding was that ESL would assume up to $166 million of merchandise and non-merchandise payables that were post-petition payments). After hearing argument from ESL with respect to its contrary position on the meaning of its obligation, this Court stated, "I don't see ambiguity. You can't make one under New York law by saying the parties disagree about what they meant unless the document itself is ambiguous." Feb. 7 Hr'g. Tr. at 207:22-25.

9. Although, as a procedural matter, this Court could not make a dispositive ruling on the issue, it provided indicative guidance to the parties that

> it is reasonable to assume that the Debtors' interpretation of § 2.3 would prevail in a proper litigation. Namely, that the parties defined separately the concept of Other Payables from all payment obligations with respect to Ordered Inventory . . . [and] that the cap of $166 million would apply only

---

[5] The APA provides that the "Other Payables shall mean the accounts payable set forth on Schedule 1.1(g)." APA § 1.1. In turn, Schedule 1.1(g) of the APA lists "Other Payables" in the amount of $166 million. *Id.*

>           to Other Payables, not to the phrase . . . 'all payment obligations with
>           respect to ordered inventory.' I'm more than reasonably confident that
>           that would be the result in a contested matter brought before the Court
>           under the Part 7 rules.

*Id.* at 242:4-17. For this reason, this Court is in the best position to resolve any dispute in connection with the APA effectively and efficiently.

10.   *Second*, the costs of mediation would further diminish the already-limited assets of the Debtors' estates. Nowhere in the Motion to Mediate does ESL explain how the costs of mediation will be shared or what steps the parties may take to reduce such costs. In touting the benefits of mediation, ESL fails to consider the possibility that mediation may be unsuccessful. In such event, the parties will have expended significant time and resources to engage in fruitless mediation only to find themselves before this Court at some later date, effectively in the same position as they are in today.

11.   *Lastly*, ESL's request for mediation should be seen for what it is: a transparent attempt to renegotiate its obligations under the APA without repercussion while withholding property of the estates from the Debtors. These efforts should not be countenanced, and ESL should be held to the bargain it struck rather than the one it wishes it had.

12.   Accordingly, this Court should deny the Motion to Mediate.

WHEREFORE, for all of the foregoing reasons, the Creditors' Committee respectfully requests that this Court enter an order enforcing the automatic stay against ESL to turn over estate property, deny the Motion to Mediate and grant the Creditors' Committee such other relief as the Court deems just, proper and equitable.

New York, New York
Dated:  March 13, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/ *Ira S. Dizengoff*
Ira S. Dizengoff
Philip C. Dublin
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail: idizengoff@akingump.com
           pdublin@akingump.com
           jsorkin@akingump.com
           sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*