<u>GROUND LEASE</u>

THIS INDENTURE OF LEASE ENTERED into this __30th__ day of
_September_ , 197_4_ , by and between ALLEN B. KIPPER, a
single man, and RAYMOND E. GROVE and AUDREY F. GROVE, his wife,
414 Mid-Continent Bank Building, Kansas City, Missouri 64112,
hereinafter referred to as "Landlord," and MALAN CONSTRUCTION
COMPANY, a Michigan corporation, of 17356 Northland Park Court,
Southfield, Michigan 48075, hereinafter referred to as "Developer."

W I T N E S S E T H:

1. Landlord does hereby lease and demise unto Developer,
and Developer does hereby lease from Landlord, under the terms
and conditions hereinafter set forth, the real estate described
on "Exhibit A" attached hereto and made a part hereof as if set
out herein in full.  Said property, together with all licenses,
rights, privileges and easements appurtenant thereto, shall
hereinafter collectively be referred to as "Demised Premises."
Developer contemplates the development of a building project on
the demised premises, which said project, including the improve-
ments to be constructed thereon, is herein referred to as the
"Project," and Developer further contemplates erecting a building
on a portion of said premises, sometimes hereinafter referred to
as "K-MART PREMISES," and leasing said building or buildings on
said K-Mart premises to the S. S. KRESGE COMPANY, a Michigan
corporation, which shall hereinafter be referred to as "Subtenant,"
and leasing other buildings or portions thereof for other
businesses.  A copy of the proposed Sublease to the Subtenant,
S. S. Kresge Company, is attached hereto, made a part hereof as
"Exhibit B," portions of which are referred to and incorporated
into this Ground Lease by reference thereto.

2. The term of this Ground Lease shall commence on the
first day of the month immediately following the date of commence-
ment of construction of the K-MART Store for Subtenant, and the
primary term of this Lease shall terminate ten (10) years from the

EXHIBIT A

date on which the primary lease term of Subtenant terminated in accordance with the terms thereof; Subtenant's primary term to be for a minimum of twenty-five (25) years; in addition to the said primary term of this Lease and notwithstanding the termination of its Sublease by Subtenant, Developer, if all of the terms and conditions of this Ground Lease to be performed by Developer shall have been performed, shall have eight (8) successive options to extend the term of this Lease for an additional five (5) years on each option, each such extended term to begin, respectively, upon the expiration of the term of this Lease or the expiration of the immediately preceding option period, as the case may be, and except as provided in paragraph 7 hereof, the said terms and conditions as herein set forth shall apply to each extended term. Developer must give five (5) months advance written notice to Landlord of exercise of each respective option.

3. Developer shall pay to Landlord, at such place as the Landlord shall designate in writing, as annual minimum rental the sum of Thirty-five Thousand Dollars ($35,000.00) payable in equal monthly installments on the first day of each calendar month for the entire term of this Lease and any extensions thereof.

4. In addition to the aforesaid annual minimum rental, Developer does hereby agree to pay to Landlord as additional rental twenty-five per cent (25%) of all additional rentals payable by Subtenant to Developer under the terms and covenants of "Exhibit B" attached hereto. It is understood that percentage rentals will be paid on gross sales in excess of Nine Million Two Hundred Thousand Dollars ($9,200,000.00) per lease year as the terms "gross sales" and "lease years" are defined in "Exhibit B." The additional rentals due to the Landlord, as stated herein, by the Developer shall be paid on or before

the 60th day following the expiration of each lease year.  Land-
lord, or their agent, may inspect Subtenant's records of gross
sales annually, provided that such inspection shall be made at
Subtenant's principal office within five (5) months after the
receipt of said additional rentals, as provided in this Lease,
but such inspection shall be limited to the lease year immedi-
ately last past.  Landlord shall hold in their confidence the
sales figures or other information obtained from Subtenant's
records.

5.  It is contemplated by Developer to have the buildings
and site improvements completed and delivered to Subtenant with
due diligence and in compliance with any time requirement set
forth in "Exhibit B."  In the event Subtenant terminates its
lease with Developer under the provisions of "Exhibit B," the
Developer shall thereupon have the option to terminate this
Lease by notice to the Landlord, provided that the Developer
leaves the demised premises free of any improvements whatsoever,
and the expense to so leave said premises as required herein
shall be borne by the Developer.  Developer agrees that, prior
to constructing any improvements on said leased (demised)
premises, it will give evidence of financial ability to fully
pay for such improvements before contracts for such construction
shall be let.

6.  At all times under this Ground Lease, Developer shall
keep Landlord insured against all statutory and common law
liabilities for damages on account of injuries to person or
property, including death, sustained by any person or persons
while within the said demised premises, in a policy or policies
in the amount of One Million Dollars ($1,000,000.00) with respect
to injury to any one person and in the amount of Three Million
Dollars ($3,000,000.00) with respect to any one accident or
disaster, and in the amount of Five Hundred Thousand Dollars
($500,000.00) with respect to damage to property, and Developer

does hereby indemnify and hold harmless the Landlord from any claim, demand, cause of action, expense of defense and court costs made or brought against the Landlord due to or arising out of, directly or indirectly, any act, event or occurrence allegedly occurring on the demised premises, or as the result of the activities of the Developer or Subtenant or any other person lawfully in possession or occupying the demised premises. All policies required by this paragraph shall bear endorsements to the effect that the Landlord shall be notified not less than twenty-five (25) days in advance of any modification or cancellation thereof. Copies of such policies, as endorsed, or certificates evidencing the existence thereof, shall at all times be on deposit with the Landlord. During construction of any improvements on the demised premises, the Developer shall carry builders' risk and liability insurance, naming the Landlord as insured thereon, in the amounts above set forth, with certifi-cates of such coverage to be placed on deposit with the Landlord before construction commences. All premiums for any policy set forth in this paragraph 6 shall be paid in advance by the Developer, so that the same shall be in force and effect at all times herein required.

7. Developer does hereby guarantee to Landlord the addi-tional rental to be payable to Landlord by Developer under paragraph 4 of this Ground Lease shall be no less than the rate of Thirty Thousand Dollars ($30,000.00) per annum from the period commencing twenty-six (26) years from the commencement of the term of the said Sublease to Subtenant, as such commencement of said term to said Subtenant is provided for in "Exhibit B" at-tached hereto. If the Subtenant shall exercise any of its options to extend the term of the Sublease, then Developer shall give notice to Landlord of the extensionof said Sublease, which notice to Landlord shall not be less than five (5) months prior to the

-4-

expiration of the primary term of the Sublease or the expiration
of any then existing extension of said sublease term. Regard-
less of the extension of the expiration date of the Sublease,
the Developer shall have, unless the last date of the Ground
Lease term shall be January 31 of any year, the option to extend
(or further extend as the case may be) the term of this Lease
for such period of time as shall cause the last day of the term
of said Lease to be the January 31 next succeeding the date
upon which the term of this Lease would expire but for the exer-
cise of this option. This option shall be exercised by notice
to Landlord by the Developer not less than five (5) months prior
to the expiration of the term of this Ground Lease or extension
thereof. All terms and conditions of this Ground Lease shall
remain in force and effect during such extension to the next
succeeding January 31, except for any options of extensions for
five-year terms otherwise that would have been available to the
Developer.

8. Developer shall pay all real estate taxes and ad valorem
taxes and special assessments hereafter levied against said de-
mised premises and said project, and all construction, mainte-
nance and upkeep expenses during the term of this Lease, com-
mencing with the start of any construction of any improvements
on said demised premises. All taxes or forms of governmental
revenue or excise taxes assessed against Developer, which may
be a lien against the title of the demised premises or any
right of occupancy thereof, shall be paid before the same shall
become delinquent, and the Developer shall evidence such payment
on demand by Landlord.

9. The Developer shall observe and comply with all rules,
orders and regulations of the Federal, State and Municipal
governments or other duly constituted public authority affecting
said buildings and demised premises. Developer shall cause the

lease premises to be maintained in a neat and clean condition
at all times; in the event default under this provision pertain-
ing to proper maintenance of the premises continues for fifteen
(15) days after written notice thereof, the Landlord shall have
the right to cure such default at the expense of the Developer.

10.  The Developer shall at all times insure buildings
upon said premises (demised) against damage or destruction by
fire or other casualties insurable under a standard extended
coverage endorsement.  Said insurance shall be in an amount
equal to the full replacement value of the permanent above-
ground improvements.  All such policies shall bear endorsements
to the effect that Landlord shall be notified not less than
twenty-five (25) days in advance of modification or cancellation
thereof.  Copies of such insurance policies or certificates
evidencing the existence thereof, so endorsed, shall be promptly
delivered to Landlord.  Irrespective of the cause thereof, Land-
lord shall not be liable for any loss or damage to said building
resulting from any reason or cause whatsoever.  Landlord shall
not be obligated nor required at any time to secure or pay for
any insurance of any kind pertaining to the improvements of
demised premises.  Landlord shall be named as an insured on all
fire and extended coverage policies, and such policies shall
provide that the proceeds payable thereunder shall be used for
the restoration of the demised premises in satisfaction of
Developer's obligation to rebuild, restore or repair the demised
premises or the improvements thereon as herein contained or as
required in "Exhibit B" attached hereto.  Annual estimates of
cost of replacement shall be made by Developer and a copy filed
with Landlord.

In the event that, at any time during the lease term, the
permanent improvements then constituting Developer's buildings
and site improvements shall be damaged or destroyed (partially

or totally) by fire, the elements or any other casualty, the
Developer, at its own expense, promptly and with due diligence,
shall repair, rebuild and restore the same as nearly as practic-
able to the condition existing just prior to such damage or
destruction; provided, however, as a result of said damage or
destruction during the last two years of the term of the Sub-
lease, if Subtenant's fixtures, equipment or other property
shall be damaged or destroyed in an amount exceeding $25,000.00,
then Developer may terminate this Ground Lease by giving written
notice to the Landlord within seventy (70) days thereafter, and
Developer shall have an additional sixty (60) days within which
to remove its property from the demised premises, and rental
shall be paid for the period of time that the Developer con-
tinues to occupy the demised premises.  In the event of such
termination, any insurance proceeds payable by reason of said
loss or damage to the demised premises or improvements thereon.
shall be made available for satisfaction of the outstanding bal-
ance on the mortgage, and Developer shall be required at the
expense of Developer to clear and level remaining improvements
completely to ground level, leaving said lease premises free of
debris and any liens whatsoever, except current real estate
taxes.

Notwithstanding any such termination of this Lease by
Developer, as provided in this paragraph, Developer shall have
the right to exercise any option to extend the term hereof to
the next succeeding January 31, as provided hereinbefore in this
Lease.

Each party hereto does hereby remise, release and discharge
the other party hereto, and any officer, agent, employee or
representative of such party, of and from any liability whatso-
ever hereafter arising from loss, damage or injury caused by
fire or other casualty for which insurance (permitting waiver

of liability and containing the waiver of subrogation) is carried
by the party at the time of such loss, damage or injury to the
extent of any recovery by the injured party under such insurance.

11.  In the event all of the demised premises or project is
taken by condemnation or eminent domain by any public or quasi
public authority, or the points of ingress and egress to the
public roads substantially as depicted on "Exhibit D" be mate-
rially impaired by a public or quasi public authority, this Lease
shall terminate as of the date Developer shall be deprived thereof.

In the event that less than the whole but more than ten per
cent (10%) of Developer's buildings shall be taken by condemna-
tion or eminent domain by a public or quasi public authority,
Developer shall have the option to terminate this Lease as of
the date Developer shall be dispossessed from the part so expro-
priated by giving notice to Landlord of such election to termi-
nate within one hundred (100) days from the date of such dis-
possession.

In the event of a taking, by condemnation or eminent domain
by public or quasi public authority, of any portion of the
Developer's buildings, and this Lease shall not be terminated
as hereinabove provided, it shall continue as to that portion of
said building which shall not have been taken or expropriated,
in which event Landlord shall, from the proceeds of condemnation
or eminent domain, promptly and with due diligence restore said
building or buildings as nearly as practicable to complete units
of like quality and character as existed just prior to such tak-
ing or expropriation.  The annual minimum rental and other
charges shall abate during the period of demolition and restora-
tion, and thereafter the annual minimum rental and the dollar
amounts as set forth in paragraph 4 of this Lease shall be
reduced in proportion to the ground floor area of the part of
Developer's buildings so expropriated shall bear to the total
ground floor of said buildings prior to such expropriation or
taking.

Without limiting the foregoing, in the event that any of the land described in "Exhibit A" shall be expropriated by public or quasi public authority, Landlord shall make every effort to substitute equivalent and similarly improved lands contiguous to and properly integrated with the remainder of the site depicted on "Exhibit A." If Landlord shall be unable to substitute such lands and if one or more expropriations shall in total deprive Developer of the use of more than ten per cent (10%) of the land described in "Exhibit A," then, in such event, the Developer shall have the option to terminate this Lease at any time within thirteen (13) months after such deprivation becomes effective by giving notice to Landlord.

In the event this Lease shall be terminated pursuant to this article, any annual minimum rental and other charges paid in advance shall be refunded to Developer, and Developer shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. In the event that at the time of any expropriation of Developer's buildings, Developer shall not have fully amortized expenditures which it may have made on account of any improvements, alterations or changes to its buildings, Landlord shall assign to Developer so much of any award payable as a result of such expropriation as shall equal the unamortized portion of Developer's said expenditures. Said unamortized portion of Developer's said expenditures shall be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of remaining years of the lease term at the time of such expropriation and the denominator of which shall be the number of remaining years of the lease term at the time such expenditures shall have been made plus the number of years for which the lease term may have been subsequently extended.

12. The demised premises may be used by the Developer for any lawful purpose. Developer may assign this Lease or sublet

the whole or any part of the demised premises, but said assign-
ment shall not in any way relieve the Developer of any of the
obligations, covenants or agreements herein agreed to by it.

13.  If the rent reserved in this Lease, or any part
thereof, shall remain unpaid for a period of forty (40) days,
or if Developer shall be in default under any other provision
of this Ground Lease, and shall remain so for a period of forty
(40) days after notice to Developer, then Landlord, by giving
notice to Developer at any time thereafter during the continu-
ance of such default, may either (a) terminate this Lease or
(b) re-enter the demised premises, by summary proceedings or
otherwise, and expel Developer and remove all property therefrom
and relet said premises, if Landlord so desires in its sole
discretion, and receive the rent therefrom; provided the
Developer shall remain liable for all the rents required to
be paid under the terms of this Ground Lease, less the avails
of reletting, if any, after deducting therefrom the reasonable
costs of obtaining possession of said demised premises, and of
any repairs or alterations necessary to prepare it for relet-
ting.  If any default of Developer (except the non-payment of
rent) cannot reasonably be remedied within forty (40) days
after notice of default, then Developer shall have additional
time as shall be reasonably necessary, to remedy such default
before this Ground Lease can be terminated or any other remedy
enforced by Landlord.

14.  Landlord covenants, represents and warrants that it
has full right and power to execute and perform this Ground
Lease and to grant the estate demised herein, and that Developer,
on payment of rent and performance of the covenants and agree-
ments hereof, shall peacefully and quietly have, hold and enjoy
the demised premises and all the rights, easements, appurte-
nances and privileges belonging or in anywise appertaining thereto
during the lease term without molestation or hindrance of any

person whomsoever claiming by, through or under Landlord or
the owner of the fee interest in the premises, and, at any time
during the term hereby demised, if the title of Landlord shall
fail or it be discovered that its title shall not enable Land-
lord to grant the term hereby demised, the Developer shall have
the option, at Landlord's expense, to correct such defect or
to annul and void this Lease with full reservation of its rights
to damages, if any.

Landlord further covenants, represents and warrants that
it is seized of an indefeasible estate in fee simple to the
land described in "Exhibit A", which is attached hereto and made
a part hereof, free and clear of any  liens, encumbrances, re-
strictions and violations (or claim or notice thereof), except
for current real estate taxes.

Landlord agrees with the Developer that Landlord shall not
suffer, grant nor permit any liens or encumbrances to arise
against the premises, except as specifically described, contem-
plated or permitted under this Ground Lease, except for current
real estate taxes, and Developer's possession and right of use
under this Ground Lease in and to the demised premises shall
not be disturbed by the Landlord or any subsequent fee owner,
unless and until Developer shall breach any of the provisions
hereof, and Developer's right to possession hereunder shall have
been terminated in accordance with the terms of this Ground
Lease.

15.  To enable Developer to obtain financing for the
construction of the Subtenant's buildings and for subsequent
enlargements, alterations or other construction on the demised
premises, subject to the terms and conditions hereinafter set
forth, Landlord shall execute any mortgages or security agree-
ments or subordination agreements, secured by the premises or
part thereof, and any improvements thereon, as may be required

by any lending institution (said term to include welfare and pension funds, both employer and employee) as a condition of making a loan to the Developer, and the Landlord agrees to execute, from time to time, such documents and forms of agreement as may be required by any lending institution as a condition of making a loan to the Developer, provided, however, that the Landlord shall not be required to execute any document that shall directly or indirectly impose personal liability upon the Landlord for the repayment of any loan made to the Developer.

The initial mortgage shall be for the property subleased to S. S. KRESGE COMPANY and shall not exceed the sum of Two Million Five Hundred Forty Thousand Dollars ($2,540,000.00). Developer covenants and agrees that the balance due on any such mortgage or mortgages on the property subleased to S. S. KRESGE COMPANY at the expiration of the said Subtenant's primary lease term shall not exceed ten per cent (10%) of the original principal amount of said mortgage and the entire principal of such mortgage (s) shall be payable not more than twenty-six (26) years from the date of occupancy by the Subtenant, as the "date of occupancy" is defined in "Exhibit B," unless the term of such sublease shall then have been extended to provide minimum rentals so that such mortgage (s) shall be paid in full on or before the expiration of such extended term of said sublease.

Subsequent real estate mortgages shall be for such portions of the demised premises as Developer deems advisable, for the purposes set forth above, and each such mortgage shall be to a lending institution (said term to include welfare and pension funds, both employer and employee) and shall not exceed a sum equal to either (a) the cost of such project as certified by Developer, in which case the mortgage shall contain a provision substantially stating that this mortgage is given to secure a construction loan to be made in installments in the future as

work progresses and that the mortgagee shall make installment advances only if satisfied that it is for work and/or materials utilized on the mortgaged premises (the mortgagee being specifically not liable for any installment payment not in fact utilized for said project) or (b) in the event of a non-construction mortgage, the cost of such project as certified by a certified public accountant.

Form and content of any such mortgage in which Landlord shall be requested to join shall be subject to the approval of Landlord, which approval shall not be withheld so long as the terms and provisions of such mortgage are consistent with the provisions hereof, and such mortgage, without limitation by reason of specifications containing provisions to the following effect;

(i) shall state that the Landlord and fee owner join therein solely and exclusively for the purpose of subordinating and subjecting their interest in the demised premises to the lien of such mortgage, and for no other purpose, and notwithstanding their inclusion as mortgagors therein without assuming any liability for the payment of the note or other indebtedness secured by such mortgage, or for the performance of any of the covenants or agreements contained in the note or other indebtedness of this mortgage;

(ii) shall provide that, in the event of the default in the performance or observance of any of the terms and conditions of the mortgage, or the note or other indebtedness secured thereby, the mortgagee shall give notice to the Landlord and fee owner, the same notices as required thereunder to be given to the mortgagor;

(iii) shall or may provide for the assignment to the mortgagee of the Sublease, and of any rents due and payable to the Developer under any sublease of the premises.

Should any party file a mechanic's lien or claim for mechanic's lien against said premises for any lienable item under the laws of the State of Missouri, said lien encumbrance shall not be considered a default under the terms of this Ground Lease if the Developer, within thirty (30) days after notice of such lien is given to Developer by Landlord, shall (a) deposit with Landlord or with PIONEER NATIONAL TITLE INSURANCE COMPANY one and one-half times the amount of the claim for mechanic's lien, or (b) furnish Landlord with an owner's commitment for title insurance guaranteeing over said lien or encumbrance, or (c) furnish Landlord with a certificate from the mortgage lending institution that there are adequate mortgage funds with which to satisfy said claim and it will withhold sufficient mortgage funds for the payment thereof.

16. In the event Developer shall fail to pay any obligation or any mortgage or encumbrance affecting title to the demised premises and to which this Ground Lease may be subordinated, or if Developer shall fail to perform any obligation specified in this Ground Lease, then the Landlord may, but is under no legal obligation to do so, after the continuance of any such default for thirty (30) days after notice thereof by Landlord to Developer, pay said principal, interest or other charges, or otherwise cure such default on behalf of and at the expense of the Developer, and do all necessary work and make all necessary payments in connection therewith, and on demand, pay Landlord forthwith the amount of moneys so paid by Landlord, together with interest thereon at the rate of ten per cent (10%) per annum. Developer agrees to furnish Landlord within ten (10) days after receipt thereof a copy of any notice or order affecting the premises.

17. The covenants contained in this Ground Lease are to be performed by the Developer and shall bind the Developer and the leasehold estate which the Developer owns in the demised

premises, but, in addition thereto, the Developer shall be
liable for the timely and full performance of the covenants of
this Lease in the following way, and not otherwise:

(a)  The Developer shall be primarily liable for the
payment of all rentals due under this Ground Lease until
such time as the Subtenant shall have accepted without
condition the improvements upon the demised premises and
the acknowledgment of the mortgagee of the Subtenant's
commitment to pay ground rental directly is subject to
default provisions under assignment of rentals to mortgagee.

(b)  The Developer shall be primarily liable for the
completion of the improvements on said demised premises,
free of any mechanic's liens or other liens or encum-
brances, except a first mortgage as otherwise provided in
this Ground Lease.

(c)  The Developer shall be primarily liable for the
furnishing of all insurance coverage required by the Ground
Lease until said improvements are accepted without condi-
tion by the Subtenant.

(d)  The Developer does hereby agree to indemnify and
hold harmless the Landlord from any and all claims, demands,
causes of action and judgments, including the expenses of
defense and court costs, brought against the Landlord, due
to or arising out of, directly or indirectly, any act,
event or occurrence occurring prior to the time that Sub-
tenant shall accept the improvements, without condition, to
be built on the demised premises according to "Exhibit B,"
except when caused by the misfeasance or non-misfeasance
of the Landlord.

(e)  Anything to the contrary notwithstanding, from and
after such time as (a) Developer, Landlord and Subtenants
enter into a written agreement to cause the Ground Lease
rentals hereunder to be paid directly to Landlord by

Subtenants, or indirectly through a rental collection agent,
which agreement Landlord hereby agrees to execute, and (b)
Subtenants indicate their acceptance of the premises by
delivery of a letter wherein Subtenants acknowledge that
their buildings have been constructed in accordance with
their Sublease, that the said Sublease is in full force and
effect and that no default exists thereunder, Developer shall
not be personally liable for any of the covenants and condi-
tions of this Ground Lease.

18. At the expiration of the lease term by maturity or
earlier termination, as provided herein, Developer shall sur-
render the demised premises, together with alterations, additions
and improvements then a part thereof, in good order and condi-
tion, except for the ordinary wear and tear and loss or damage
by fire, the elements or other casualties. All furniture and
trade fixtures installed in said building at the expense of
Developer or other occupant shall remain the property of Developer
or other occupant; provided, however, that any Sublessee, at the
expiration of the lease term by maturity or other termination of
the lease term under the terms of this Agreement, or at any time
or from time to time during the lease term, shall have the option
to relinquish the property rights with respect to such trade
fixtures (including but not limited to air conditioning, machinery
and lighting fixtures), which option shall be exercised by notice
of relinquishment to the Landlord, and from and after the exer-
cise of said option, the property specified in said notice shall
be the property of the Landlord.

19. In the absence of any written agreement to the contrary,
if Developer should remain in occupancy of the demised premises
after the expiration of the lease term, it shall so remain as a
tenant from month to month, and all provisions of this Lease
applicable to such tenancy shall remain in full force and effect.

20. If and in the event the Developer shall be in default

in the terms and conditions of this Lease, and if said default
is not corrected, as provided in paragraph 13 of this Lease,
and if Landlord shall elect to re-enter the demised premises,
as provided in (b) of paragraph 13 of this Lease, then, in such
event, the Landlord shall give written notice to the Developer,
MALAN CONSTRUCTION COMPANY, at 17356 Northland Park Court,
Southfield, Michigan 48075, of its intention to so re-enter the
demised premises, and then, upon such event, the Landlord shall
be entitled to possession of all of the leasehold property of
the Developer used in conjunction with the project, subject only
to outstanding rights of Subtenant and mortgagee, and no charge
or rent shall be made upon the Landlord for such occupancy, but
Landlord may receive a management fee in an amount customary to
receive in the area of the demised project, and said occupancy
by the Landlord shall continue until the default is fully cor-
rected.   In addition, the Landlord, if default is not cured as
provided in paragraph 13, may elect to terminate this Lease by
giving Developer thirty-five (35) days' written notice of failure
to comply with paragraph 13, that default has not been corrected
and announcing Landlord's intention to terminate all of De-
veloper's interest in and to the demised premises after the
expiration of thirty-five (35) days from mailing of such notices
by certified mail, postage prepaid, plainly addressed to
Developer at the address provided herein, and if said default
still remains uncured, then Landlord, at its option, may file
an affidavit with Developer stating that said default remains
uncured or uncorrected, and then Developer shall convey to Land-
lord or Landlord's assignee all of Developer's rights, interest
and title to the demised premises.

21.  Notices required under this Lease shall be in writing
and be deemed to be properly served if sent by certified or
registered mail to Landlord at the last address where rent was
paid, or to Developer at its principal office, or to any subsequent

address which Developer or Landlord may designate for such
purpose.

22.  The necessary grammatical changes which will be re-
quired to make the provisions of this Lease apply (a) in the
plural sense, if there should be more than one Landlord, and
(b) to any Landlord which shall be either a corporation, an
association, a partnership, a trust, or an individual, male or
female, shall in all instances be assumed as though in each case
fully expressed. Unless otherwise provided upon termination of
this Lease under any of the articles thereof, the parties hereto
shall be relieved of any further liability hereunder except as
to acts, omissions or defaults occurring prior to such termina-
tion.

23.  Landlord, upon request of Developer, shall execute
and deliver an Attornment Agreement as requested by S. S. KRESGE
COMPANY, as Subtenant, which Attornment Agreement will be in
the form substantially similar to "Exhibit C" attached hereto
and made a part hereof.  Landlord, upon request of Developer,
shall execute and deliver Attornment Agreements from time to
time for the various subtenants of Developer, which shall be
substantially similar in form to said "Exhibit C."

24.  Landlord shall pay all taxes and assessments heretofore
levied against the demised premises, but, as hereinbefore pro-
vided, beginning on the date Developer's obligation to pay rent
commences, the Developer shall pay all real estate taxes and
assessments levied against said demised premises, whether payable
during the term of this Lease or after the expiration of this
Lease.  Any general real estate taxes for the last year of the
term of this Lease shall be appropriately prorated between the
parties.

25.  The conditions, covenants and agreements contained in
this Lease shall be binding upon and inure to the benefit of the

parties hereto and their respective heirs, executors, adminis-
trators, successors and assigns.  All covenants and agreements
of this Lease shall run with the land.

    26.  No payment by Developer or receipt by Landlord of a
lesser amount than the monthly rent herein stipulated shall be
deemed to be other than on account of the earliest stipulated
rent, nor shall any endorsement or statement on any check, or
letter accompanying any check, or payment as rent be deemed as
accord in satisfaction, and Landlord may accept such check or
payment without prejudice to Landlord's right to recover the
balance of such rent or pursue any other remedy provided in
this Ground Lease.

    27.  This Lease sets forth all of the covenants, promises,
agreements, conditions and undertakings between the Landlord
and Developer concerning the demised premises, and there are
no covenants, promises, agreements, conditions or understand-
ings, neither oral nor written, between them other than as
herein set forth.  No subsequent alteration, amendment, change
nor addition to this Ground Lease shall be binding upon the
Landlord or Developer, unless reduced to writing and signed by
them.  "Exhibit B" which is attached hereto, is not made a full
part of this Lease, but only such parts of "Exhibit B" as are
referred to expressly in the terms of this Lease or incorporated
hereby, and any such additional provisions as are necessary to
properly interpret the incorporated provisions.

    28.  Developer will not record this Lease without the
written consent of the Landlord; however, upon the request of
either party hereto, the other party shall join in the execution
of a Memorandum or "short form" of this Lease for the purposes
of recording.  Said Memorandum or "short form" shall describe
the parties, the leased premises and the term of the Lease and
shall incorporate the remaining terms and conditions of this

Lease by reference only, a copy of said Memorandum or "short form" of lease being attached hereto and marked "Exhibit E."

29. Anything herein to the contrary notwithstanding, Developer shall not be obligated to commence construction of the K-MART store nor shall Developer incur any liability for the payment of rent hereunder unless and until each of the following conditions have been satisfied:

(a) Landlord provides a certification from PIONEER NATIONAL TITLE INSURANCE COMPANY that Landlord holds title to all of the demised premises set out on "Exhibit A-1" hereof, in fee simple, free and clear of all liens and encumbrances with the exception of utility easements and rights-of-way, and that a valid Driveway Access Easement exists over, upon and across the portion of the demised premises set out on "Exhibit A-2" hereof, free and clear of all liens and encumbrances.

(b) Landlord provides satisfactory evidence of proper zoning for use of the demised premises as a retail mercantile establishment.

(c) Issuance to Developer of a building permit from the proper authority for the construction of the buildings set forth on "Exhibit D."

(d) Developer and Subtenant executing the Sublease referred to herein as "Exhibit B" within ninety (90) days after the execution of this Lease.

(e) Landlord has secured rights of access, ingress and egress, between the demised premises and the Interstate 29 service drive at the point depicted on the plot plan attached hereto as "Exhibit D."

30. In addition to the aforesaid annual minimum rental as set forth in paragraph 3 and the additional rental pursuant to the S. S. KRESGE COMPANY Sublease as set forth in paragraph 4,

Developer does hereby agree to pay over to Landlord, as addi-
tional rental, twenty-five per cent (25%) of all percentage
rents paid by any other subtenants to Developer under the terms
and covenants of such subleases as Developer may from time to
time enter into with other subtenants. It is understood that
percentage rentals will be paid on gross sales or such other
method as may be agreed upon by Developer and such other sub-
tenant and/or subtenants. Nothing herein shall be construed to
require Developer to pay additional rental on base rents received
under such subleases or to require percentage lease clauses in
such other subleases. The additional rentals due to the Land-
lord, as stated herein, by the Developer shall be paid on or
before the 30th day following the receipt of such percentage
rentals, if any, by developer from subtenant. Landlord, or its
agent, may inspect such subtenant's records of gross sales
annually, provided that such inspection shall be made at sub-
tenant's principal office within four (4) months after the receipt
of said additional rentals, as provided in this Agreement, but
such inspection shall be limited to the lease year immediately
last past. Landlord shall hold in its confidence sales figures
or other information obtained from subtenants' records. Developer
shall, on request, furnish Landlord a copy of all subleases.

31. Developer warrants that the proposed Sublease of S. S.
KRESGE COMPANY ("Exhibit B") contains the same terms and condi-
tions that will be contained in the final Sublease between S. S.
KRESGE COMPANY and the Developer except for "Exhibits A, A-1, B,
C and D", which exhibits do not alter or modify the terms of
said Sublease. Developer will furnish Landlord with a copy of
said exhibits when the final Sublease is executed between the
Developer and S. S. KRESGE COMPANY.

32. This Lease is made to correct certain terms and condi-
tions contained in a Lease dated September 19, 1973, by and

between Allen B. Kipper, Raymond E. Grove and Audrey F. Grove,
as Landlord, and E. N. Maisel and Associates, as Developer, and
a letter of even date therewith addressed to Allen B. Kipper,
Raymond E. Grove and Audrey F. Grove and executed by E. N.
Maisel and Associates providing certain modifications in the
lease provisions.  The Lease and paragraphs 2 and 3 of the
letter of September 19, 1973, are declared null and void as of
the date hereof, and the parties to said Lease and letter con-
sent to cancellation thereof, all as set out on "Exhibit F"
attached hereto and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have caused this
instrument to be executed on the day and year first above
written pursuant to the proper and lawful authority vested in
them as required by law.

LANDLORD:

_____
Allen B. Kipper

_____
Raymond E. Grove

_____
Audrey F. Grove

DEVELOPER:

MALAN CONSTRUCTION COMPANY

By _____
President

ATTEST:

_____
Secretary

STATE OF MISSOURI  )
                   ) SS.
COUNTY OF JACKSON  )

On this 30th day of September, 1974, before me, the
undersigned, a Notary Public, personally appeared Allen B.
Kipper to me known to be the person described in and who executed
the foregoing instrument, and acknowledged that he executed the

-22-

same as his free act and deed.  And the said Allen B. Kipper

further declared himself to be single and unmarried.

IN WITNESS WHEREOF, I have hereunto set my hand and

affixed my official seal at my office in Kansas City, Missouri,

the day and year last above written.

*Elaine Lynn*

Notary Public

My commission expires *Aug 21, 1977*.

STATE OF MISSOURI   )
                    ) SS.
COUNTY OF JACKSON   )

On this 30th day of *September*, 1974, before me, the

undersigned, a Notary Public, personally appeared Raymond  E.

Grove and Audrey F. Grove, his wife, to me known to be the per-

sons described in and who executed the foregoing instrument, and

acknowledged that they executed the same as their free act and

deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed

my official seal at my office in Kansas City, Missouri, the day

and year last above written.

*Elaine Lynn*

Notary Public

My commission expires *Aug 21, 1977*.

STATE OF MICHIGAN   )
                    ) SS.
COUNTY OF OAKLAND   )

On this 25th day of *September* 1974, before me

appeared *Robert A Lamden* to me personally known, who being

by me duly sworn, did say that he is the President of Malan

Construction Company, a corporation, and that the seal affixed

to the foregoing instrument is the corporate seal of said corpora-

tion, and that said instrument was signed and sealed in behalf

of said corporation by authority of its Board of Directors, and

-23-

said _Robert A. Lancer_ acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at my office in _Southfield_ Michigan, the day and year last above written.

_Mabel Diane Buckholz_
Notary Public _Wayne County_
(Acting in Oakland County)

My commission expires _April 12, 1978_.

EXHIBIT "A"

1. A tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33 Kansas City, Platte County, Missouri described as follows: Commencing at the Northwest corner of said Northwest Quarter thence N 89° 31' 30" E along the North line of said Northwest Quarter a distance of 1,686.38 feet thence S 0° 25' 30" E a distance of 215.69 feet to the point of beginning. Thence N 89° 34' 30" E a distance of 245.00 feet; thence N 54° 20' 00" E a distance of 85.58 feet; thence S 35° 40' 00" E a distance of 660.49 feet; thence S 0° 25' 30" E a distance of 148.26 feet; thence S 46° 26' 21" W a distance of 230.00 feet; thence S 43° 33' 39" E a distance of 200.00 feet; thence S 76° 16' 34" E a distance of 25.80 feet; thence S 20° 50' 00" W a distance of 82.00 feet; thence N 43° 33' 39" W a distance of 227.15 feet; thence S 74° 00' 29" W a distance of 249.04 feet; thence S 89° 34' 30" W a distance of 265.00 feet; thence N 0° 25' 30" W a distance of 925.33 feet to the point of beginning. Containing 530,382 square feet or 12.176 acres.

and

2. A DRIVEWAY ACCESS EASEMENT –a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri described as follows: Commencing at the Northwest corner of said Northwest Quarter thence N 89° 31' 30" E along the North line of said Northwest Quarter a distance of 1,686.38 feet thence S 0° 25' 30" E a distance of 30.00 feet to the point of beginning. Thence S 0° 25' 30" E a distance of 291.00 feet; thence S 89° 31' 30" W a distance of 42.03 feet; thence N 0° 31' 55" W a distance of 291.00 feet; thence N 89° 31' 30" E a distance of 42.57 feet to the point of beginning. Containing 12,310 square feet or 0.283 acres.

8328
Recorded.

7701

### MEMORANDUM OF LEASE

In consideration of the rents, covenants and agreements contained in an Indenture of Lease entered into concurrently herewith, Landlord leases to Developer the following described land in Kansas City, Platte County, Missouri, to-wit:

A tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri, described as follows: Commencing at the Northwest corner of said Northwest Quarter; thence North 89 degrees 31' 30" East along the North line of said Northwest Quarter a distance of 1,686.38 feet; thence South 0 degrees 25' 30" East a distance of 215.69 feet to the point of beginning; thence North 89 degrees 34' 30" East a distance of 245.00 feet; thence North 54 degrees 20' 00" East a distance of 85.58 feet; thence South 35 degrees 40' 00" East a distance of 660.49 feet; thence South 0 degrees 25' 30" East a distance of 148.26 feet; thence South 46 degrees 26' 21" West a distance of 230.00 feet; thence South 43 degrees 33' 39" East a distance of 200.00 feet; thence South 76 degrees 16' 34" East a distance of 25.80 feet; thence South 20 degrees 50' 00" West a distance of 82.00 feet; thence North 43 degrees 33' 39" West a distance of 227.15 feet; thence South 74 degrees 00' 29" West a distance of 249.04 feet; thence South 89 degrees 34' 30" West a distance of 265.00 feet; thence North 0 degrees 25' 30" West a distance of 925.33 feet to the point of beginning; And,

A Driveway Access Easement - a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri, described as follows: Commencing at the Northwest corner of said Northwest Quarter, thence North 89 degrees 31' 30" East along the North line of said Northwest Quarter a distance of 1,686.38 feet; thence South 0 degrees 25' 30" East a distance of 30.00 feet to the point of b eginning; thence South 0 degrees 25' 30" East a distance of 291.00 feet; thence South 89 degrees 31' 30" West a distance of 42.03 feet; thence North 0 degrees. 31' 55" West a distance of 291.00 feet; thence North 89 degrees 31' 30" East a distance of 42.57 feet to the point of beginning;

for a base term of thirty-five (35) years with provision for eight successive five-year options thereafter. The commencement of the term of said Lease and the amount of rental to be paid, as well as other terms and conditions, are contained in an Indenture of Lease executed concurrently herewith.

IN WITNESS WHEREOF, the parties hereto have set their

hands and seals this _30th_ day of _September_,
197_4_.

                              LANDLORD:

                              _____
                                  Allen B. Kipper

                              _____
                                  Raymond E. Grove

                              _____
                                  Audrey F. Grove


                              DEVELOPER:

                              MALAN CONSTRUCTION COMPANY

                              By _____
                                            President

ATTEST:
_____
     , Secretary


STATE OF MISSOURI  )
                   ) SS.
COUNTY OF JACKSON  )

     On this _30th_ day of _September_, 197_4_, before me,

the undersigned, a Notary Public, personally appeared Allen

B. Kipper to me known to be the person described in and who

executed the foregoing instrument, and acknowledged that he

executed the same as his free act and deed.  And the said Allen

B. Kipper further declared himself to be single and unmarried.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed

my official seal at my office in Kansas City, Missouri, the day

and year last above written.

                          _____
                              Notary Public     Elaine Lynn

My commission expires _Aug 31, 1977_.

STATE OF MISSOURI  )
                   ) SS.
COUNTY OF JACKSON  )

     On this _30th_ day of _September_, 197_4_, before me, the

undersigned, a Notary Public, personally appeared Raymond E.

Grove and Audrey F. Grove, his wife, to me known to be the persons

                                -2-

described in and who executed the foregoing instrument, and
acknowledged that they executed the same as their free act and
deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
affixed my official seal at my office in Kansas City, Missouri,
the day and year last above written.

*Elaine Lynn*
Notary Public    Elaine Lynn

My commission expires *Aug 31, 1977* .

STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF *Oakland* )

On this *25th* day of *September* , 197*4* , before me
appeared *Robert A Landor* to me personally known, who
being by me duly sworn, did say that he is the President of
Malan Construction Company, a corporation, and that the seal
affixed to the foregoing instrument is the corporate seal of said
corporation and that said instrument was signed and sealed in
behalf of said corporation by authority of its Board of Directors,
and said *Robert A Landor* acknowledged said instrument
to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my notarial seal at my office in *Southfield*
Michigan, the day and year last above written.

*Mabel Diane Buckholz*
Notary Public *Wayne County*
*(Acting in Oakland County)*
Mabel Diane Buckholz

My commission expires *April 12, 1978* .

<table>
<tr><td>

STATE OF MISSOURI } ss.
County of Platte }

I, Leslie E. Dyer, Clerk of the Circuit Court and ex-
officio Recorder of said County, do hereby certify that
the within instrument of writing was, on the *18th*
day of *Oct.* A.D. 19 *74* at *10* o'clock *A* M.
minutes *A* M. duly filed for record in this office
and is recorded in the Records of this office in
Book *454* at page *73* .

IN WITNESS WHEREOF, I have hereunto set
my hand and affixed my official seal at Platte
City, Mo. this *18th* day of *Oct.* A.D., 19 *74*

*Leslie E. Dyer*
Recorder

By *Inez Barnes*
Deputy

</td><td>

# 8328
Re-corded

STATE OF MISSOURI } ss.
County of Platte }

I, Leslie E. Dyer, Clerk of the Circuit Court and ex-
officio Recorder of said County, do hereby certify that
the within instrument of writing was, on the *4th*
day of *Dec.* A.D. 19 *74* at *3* o'clock *45*
minutes *P.* M. duly filed for record in this office
and is recorded in the Records of this office in
Book *457* at page *378* .

IN WITNESS WHEREOF, I have hereunto set
my hand and affixed my official seal at Platte
City, Mo. this *4th* day of *Dec.* A.D., 19 *74*

*Leslie E. Dyer*
Recorder

By *Inez Barnes*
Deputy

</td></tr>
</table>

THOMSON TITLE CORP.
(816) 792-0077

Kansas City, Missouri

**0007265**

### FIRST AMENDMENT TO GROUND LEASE

This First Amendment to Ground Lease (this "Amendment"), made this 24th day of December , 1994, by and between Audrey F. Grove, Karen G. Westcott, David A. Westcott, Anna G. Stone and Steven D. Stone, whose address is Route 4 Box 3531 Reeds Spring, mo 65737 ("Landlord") and Malan Realty Investors, Inc., a Michigan corporation, whose address is 30200 Telegraph, Suite 105, Birmingham, Michigan 48025-4503 ("Developer"), is based upon the following:

A.    Through mesne assignments, Developer has succeeded to all of the right, title and interest of the tenant under that certain ground lease, dated September 30, 1974, between Allan B. Kipper, Raymond E. Grove and Audrey F. Grove, as landlord, and Kansas City Partners and Company, Limited, a Quebec limited partnership, as tenant, as is more particularly described on Exhibit A, attached hereto and made a part hereof (the "Lease").

B.    Landlord has succeeded to all of the right, title and interest of the landlord under the Lease.

C.    Landlord and Developer have agreed to amend the Lease in the manner set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and suffiiency of which are hereby acknowledged, and intending to be legally bound, Landlord and Developer hereby agree as follows:

1.    The Lease is hereby amended by adding the following after paragraph 15 thereof:

"15A. LEASEHOLD MORTGAGEES; ESTOPPEL CERTIFICATES
    (a)    If Developer shall mortgage, pledge, hypothecate, or grant a deed of trust with respect to its interest in this Ground Lease and/or its interest in the Demised Premises (any security instrument evidencing the foregoing being herein referred to as a "Leasehold Mortgage") and if the mortgagee, pledgee, transferee, or beneficiary in the case of a deed of trust, thereunder (herein referred to as a "Leasehold Mortgagee") shall send by certified mail, return receipt requested, to Landlord at its address hereinabove set forth, a copy of the Leasehold Mortgage together with written notice specifying the name and address of such Leasehold Mortgagee, Landlord agrees that until written notice of satisfaction is given by the holder thereof to Landlord (at the address and in the manner described in subparagraph (1) below), the following provisions shall apply:
        (1)    Landlord will give the Leasehold Mortgagee a copy of any notice of default from Landlord to Developer hereunder at the time

of giving such notice to Developer. Such notice of default shall be sent (by prepaid certified or registered mail, return receipt requested) to the address designated by the Leasehold Mortgagee from time to time to Landlord, provided that each Leasehold Mortgagee may receive notice only at two addresses at any one time. No notice of default sent by Landlord to Developer shall be effective as against the Leasehold Mortgagee unless a copy thereof is also sent to the Leasehold Mortgagee as provided herein. Landlord will not exercise any right, power or remedy with respect to any default hereunder unless the Developer or the Leasehold Mortgagee shall have failed to remedy such default within the applicable grace period set forth in this Ground Lease (which grace period shall commence, with respect to the Leasehold Mortgagee, upon receipt by such Leasehold Mortgagee of the notice of default) and for an additional 15 days thereafter (the "Mortgagee Grace Period"). Notwithstanding anything contained herein to the contrary, a Leasehold Mortgagee shall not be required to cure or remedy any default which cannot be cured by the Leasehold Mortgagee (including, but not limited to, Developer's bankruptcy or wrongful assignment of this Ground Lease or subletting of the Demised Premises), and upon foreclosure or other acquisition of the Developer's interest in this Ground Lease by the Leasehold Mortgagee, all such defaults under this Ground Lease shall be deemed to have been fully cured.

(2)    Landlord shall not amend, modify, terminate, cancel or permit or accept a surrender of this Ground Lease for any reason whatsoever without the Leasehold Mortgagee's prior written consent. In the event Developer and Landlord desire to enter into any of the aforementioned agreements, it shall be the responsibility of Developer to obtain the Leasehold Mortgagee's consent.

(3)    Any Leasehold Mortgagee, its designee or agent or any purchaser of the Developer's interest in this Ground Lease at a foreclosure sale may, but is not required to, make any payment or perform any act as required hereunder to be made or performed by Developer with the same effect as if made or performed by Developer provided that no entry by the Leasehold Mortgagee upon the Demised Premises for such purpose shall constitute or be deemed to be an eviction of Developer and shall not waive or release Developer from any obligation or default hereunder (except any obligation or default which shall have been fully performed or corrected by such payment or performance by the Leasehold Mortgagee).

(4)    In the event of the termination of this Ground Lease or of any succeeding lease made pursuant to the provisions of this Ground Lease prior to its stated expiration date by reason of a default of Developer or rejection of this Ground Lease by Developer in a bankruptcy proceeding or otherwise, Landlord will enter into a new lease of the Demised Premises with the Leasehold Mortgagee (or, if there is more than one Leasehold Mortgagee, then with the most senior, in terms of priority, Leasehold Mortgagee), or, at the request of such Leasehold Mortgagee, with a corporation or other entity formed by or on behalf of such Leasehold Mortgagee, for the remainder of the term, effective as of

BOOK 0830 PAGE 208

the date of such termination, at the rent and upon the covenants,
agreements, terms, options, provisions and limitations herein contained
and with the same priority as this Ground Lease, provided such Leasehold
Mortgagee makes written request to Landlord for such new lease within
thirty (30) days from the date it receives notice of such termination
and such written request is accompanied by payment to Landlord of all
amounts then due to Landlord from Developer (other than any accelerated
rents, penalties or interest on such amounts due Landlord). Landlord
shall be under no obligation to remove Developer or anyone holding under
Developer or any other occupant whose interest is not prior to the
interest to be acquired by the Leasehold Mortgagee under such new lease
from the Demised Premises, and the new tenant shall take subject to the
possessory rights, if any, of such tenants or occupants. It is
specifically acknowledged and agreed that all covenants, duties and
obligations of Developer hereunder shall survive the execution of any
such new lease between Landlord and the Leasehold Mortgagee or its
designee pursuant to this subparagraph and that such execution shall not
release or be deemed to release Developer from any liability for failure
to perform any such covenant, duty or obligation. In the event Landlord
enters into such a new lease, Landlord shall assign all of its right,
title and interest as landlord under any subleases of the Demised
Premises or any portion thereof to such Leasehold Mortgagee and Landlord
agrees not to terminate, modify, or take any action which would
otherwise affect any such subleases.

        (5)    There shall be no merger of this Ground Lease nor of
the leasehold estate created by this Ground Lease with the fee simple
estate in the Demised Premises or any part thereof by reason of the fact
that the same person, firm, corporation or other entity may acquire or
own or hold, directly or indirectly: (i) this Ground Lease or the
leasehold estate created by this Ground Lease or any interest in this
Ground Lease or in any such leasehold estate, and (ii) the fee simple
estate in the Demised Premises or any part thereof or any interest in
such fee estate; and no such merger shall occur unless and until all
persons, corporations, firms and other entities, having (A) any interest
in this Ground Lease or the leasehold estate created by this Ground
Lease (excluding subtenants but including any Leasehold Mortgagee) and
(B) any fee simple interest in the Demised Premises or any part thereof;
shall join in a written instrument effecting such merger and shall duly
record the same.

        (6)    No Leasehold Mortgagee (or its affiliate as may have
acquired Developer's leasehold estate) shall become personally liable
under the agreements, terms, covenants or conditions of this Ground
Lease unless and until it becomes the holder of Developer's leasehold
estate. Upon any assignment of this Ground Lease by a Leasehold
Mortgagee, or such affiliate, the assignor (but not the assignee or any
subsequent assignor, purchaser or transferee) shall be relieved of any
further liability which may accrue hereunder from and after the date of
such assignment provided that the assignee shall execute and deliver to
Landlord a recordable instrument of assumption wherein such assignee

BOOK 0830 PAGE 208

shall assume and agree to perform and observe the covenants and
conditions in this Ground Lease contained on Developer's part to be
performed and observed, it being the intention of the parties that once
the Leasehold Mortgagee (or such affiliate) shall succeed to Developer's
interest hereunder, a subsequent assignment by such Leasehold Mortgagee
(or such affiliate) shall effect a release of such Leasehold Mortgagee's
liability hereunder.

(7)    The Landlord agrees to send the Leasehold Mortgagee,
in the manner set forth above, notice of the Developer's failure or
refusal to timely exercise any renewal options under this Ground Lease
and, in such event further agrees to accept the exercise of such renewal
option by the Leasehold Mortgagee as the Developer's attorney-in-fact
within sixty (60) days of such notice.  If the Leasehold Mortgagee is
unable, for reasons other than its own actions or inaction, to
effectively exercise the power of attorney set forth in the preceeding
sentence, the Leasehold Mortgagee shall have the same rights with
respect to a termination of this Ground Lease resulting from the
Developer's failure or refusal to timely exercise any renewal options as
are set forth in subparagraph 15A(a)(4) hereof.

(b)    Landlord shall, without charge, at any time and from time to
time, within thirty (30) days after receipt of written request therefor
from Developer or from any mortgagee, subtenant or purchaser (or
prospective mortgagee, subtenant or purchaser) of the Demised Premises
or of any property of which the Demised Premises are a part, deliver, in
recordable form, a duly executed and acknowledged certificate or
statement to the parties requesting said certification or statement or
to such other party, firm or corporation designated by Developer,
certifying:

(i)    That this Ground Lease is in full force and effect;

(ii)    The expiration date of the then current term of this
Ground Lease and whether any renewal options are available to Developer;

(iii)    That rent is paid current, subject to audit on
percentage rentals;

(iv)    The dates to which the rent and other charges payable
hereunder by Developer have been paid, and the amount of rent and other
charges, if any, paid in advance;

(v)    Whether or not Developer is in default under this
Ground Lease and, if so, specifying the nature thereof; and

(vi)    To Landlord's knowledge, any other matters relating to
the status of this Ground Lease as shall be requested by Developer or
any such mortgagee, subtenant or purchaser (or prospective mortgagee,
subtenant or purchaser) from time to time. "

2.    Notwithstanding anything in the Lease to the contrary, in the
event the Leasehold Mortgagee or its designee acquires title to the leasehold
estate under the Lease, the Leasehold Mortgagee can assign or sublet the
premises without restriction and such rights will run to the Leasehold
Mortgagee's successors and assigns. The foregoing right shall not affect or
impair any other right the Leasehold Mortgagee or such successors may have to

4

assign or sublet the premises pursuant to the terms of the Lease or any replacement thereof.

3.    Except as modified by the foregoing, the Lease shall remain in full force and effect and is hereby ratified and confirmed.

4.    This Amendment may be executed in any number of counterparts, all of which as so executed shall constitute but one and the same Amendment, binding on all of the parties hereto, notwithstanding that all of the parties are not signatories to the original or the same counterpart.

IN WITNESS WHEREOF, Landlord and Developer have executed this Amendment as of the day and year first above written.

WITNESSES:

_____          _____
                                          Audrey F. Grove

_____          _____
                                          Karen G. Westcott

                                          _____
                                          David A. Westcott

                                          _____
                                          Anna G. Stone

                                          _____
                                          Steven D. Stone

_____          MALAN REALTY INVESTORS, INC.,
Nancy A. Verstraete                       a Michigan corporation

_____          BY: _____
                                               Michael Kaline
                                          ITS: Vice President

**ACKNOWLEDGMENT OF LANDLORD**

STATE OF _Missouri_

                         ss

COUNTY OF _Stone_

The foregoing instrument was acknowledged before me this _24th_ day of _December_, 1994 by Audrey F. Grove, Karen G. Westcott, David A. Westcott, Anna G. Stone and Steven D. Stone.

                         _Stephen Leon McSwenner_

                         ,Notary Public
                     _STONE_ County, _MISSOURI_
                 My Commission Expires _July 16, 1995_

**ACKNOWLEDGMENT OF DEVELOPER**

STATE OF MICHIGAN )
                        ) ss
COUNTY OF OAKLAND )

The foregoing instrument was acknowledged before me this _16th_ day of _January_, 1995 by Michael Kaline , the Vice President of Malan Realty Investors, Inc., a Michigan corporation, on behalf of said corporation.

                         _Mabel D. Buckholz_
                 Mabel D. Buckholz, Notary Public
                 Wayne County, Michigan
                 (Acting in Oakland County)
                 My Commission Expires 1/8/97

BOOK 0830 PAGE 208

# EXHIBIT A

7701

8328
Recto concelled.

## MEMORANDUM OF LEASE

In consideration of the rents, covenants and agreements contained in an Indenture of Lease entered into concurrently herewith, Landlord leases to Developer the following described land in Kansas City, Platte County, Missouri, to-wit:

A tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri, described as follows: Commencing at the Northwest corner of said Northwest Quarter; thence North 89 degrees 31' 30" East along the North line of said Northwest Quarter a distance of 1,686.38 feet; thence South 0 degrees 25' 30" East a distance of 215.69 feet to the point of beginning; thence North 89 degrees 34' 30" East a distance of 245.00 feet; thence North 54 degrees 20' 00" East a distance of 85.58 feet; thence South 35 degrees 40' 00" East a distance of 660.49 feet; thence South 0 degrees 25' 30" East a distance of 148.26 feet; thence South 48 degrees 26' 21" West a distance of 230.00 feet; thence South 43 degrees 33' 39" East a distance of 200.00 feet; thence South 76 degrees 16' 34" East a distance of 25.80 feet; thence South 20 degrees 50' 00" West a distance of 82.00 feet; thence North 43 degrees 33' 39" West a distance of 227.15 feet; thence South 74 degrees 00' 29" West a distance of 249.04 feet; thence South 89 degrees 34' 30" West a distance of 265.00 feet; thence North 0 degrees 25' 30" West a distance of 925.33 feet to the point of beginning; And,

A Driveway Access Easement - a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri, described as follows: Commencing at the Northwest corner of said Northwest Quarter, thence North 89 degrees 31' 30" East along the North line of said Northwest Quarter a distance of 1,686.38 feet; thence South 0 degrees 25' 30" East a distance of 30.00 feet to the point of beginning; thence South 0 degrees 25' 30" East a distance of 291.00 feet; thence South 89 degrees 31' 30" West a distance of 42.03 feet; thence North 0 degrees 31' 55" West a distance of 291.00 feet; thence North 89 degrees 31' 30" East a distance of 42.57 feet to the point of beginning;

for a base term of thirty-five (35) years with provision for eight successive five-year options thereafter. The commencement of the term of said Lease and the amount of rental to be paid, as well as other terms and conditions, are contained in an Indenture of Lease executed concurrently herewith.

IN WITNESS WHEREOF, the parties hereto have set their

B 8328

0830 PAGE 208

**0007265**

STATE OF MISSOURI | SS
COUNTY OF PLATTE |
I CERTIFY INSTRUMENT RECEIVED
*Gloria Soye Deputy*
1995 JUN 27  P 3: 33.1

RECORDED BOOK 830 PAGE 208
IDA COX, PLATTE CO. RECORDER

described in and who executed the foregoing instrument, and
acknowledged that they executed the same as their free act and
deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
affixed my official seal at my office in Kansas City, Missouri,
the day and year last above written.

*Elaine Lynn*
Notary Public    Elaine Lynn

My commission expires *Aug 31, 1977*.

STATE OF MICHIGAN  )
COUNTY OF *Oakland* ) SS.

On this *25th* day of *September*, 197_1_, before me
appeared *Robert A. Landa* to me personally known, who
being by me duly sworn, did say that he is the President of
Malan Construction Company, a corporation, and that the seal
affixed to the foregoing instrument is the corporate seal of said
corporation and that said instrument was signed and sealed in
behalf of said corporation by authority of its Board of Directors,
and said *Robert A. Landa* acknowledged said instrument
to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my notarial seal at my office in *Southfield*,
Michigan, the day and year last above written.

Notary Public *Wayne County*
*acting in Oakland County*
Mabel Diane Buckholz

My commission expires _____

STATE OF MISSOURI
County of Platte }  ss.

I, Leslie E. Dyer, Clerk of the Circuit Court and ex-
officio Recorder of Deeds in and for said county, do hereby certify that
the writing hereto attached was filed for record in my office on the 18th
day of Oct A.D. 19 74 at 10 o'clock 00 minutes A.M. and duly recorded in my office in
Book 454 of Deeds at page 973.

City, Mo. this 18th day of Oct A.D. 19 74
Recorder
By _____ Deputy

STATE OF MISSOURI
County of Platte }  ss.

I, Leslie E. Dyer, Clerk of the Circuit Court and ex-
officio Recorder of Deeds in and for said county, do hereby certify that
the writing hereto attached was filed for record in my office on the 3rd
day of Oct A.D. 19 74 at 3 o'clock 45 minutes P.M. and duly recorded in my office in
Book 454 of Deeds at page 978.

City, Mo. this 3rd day of Oct A.D. 19 74
Recorder
By _____ Deputy

BOOK **0830** PAGE **208**

hands and seals this _30th_ day of _September_
197_4_.

LANDLORD:

_____
Allen B. Ripper

_____
Raymond E. Grove

_____
Audrey F. Grove

DEVELOPER:

MALAN CONSTRUCTION COMPANY

By _____
President

ATTEST:

_____
Secretary

STATE OF MISSOURI  )
                   ) SS.
COUNTY OF JACKSON   )

On this _30th_ day of _September_, 197_4_, before me,
the undersigned, a Notary Public, personally appeared Allen
B. Ripper to me known to be the person described in and who
executed the foregoing instrument, and acknowledged that he
executed the same as his free act and deed. And the said Allen
B. Ripper further declared himself to be single and unmarried.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my official seal at my office in Kansas City, Missouri, the day
and year last above written.

_____
Notary Public    Elaine Lynn

My commission expires _Aug 31, 1977_.

STATE OF MISSOURI  )
                   ) SS.
COUNTY OF JACKSON   )

On this _30th_ day of _September_, 197_4_, before me, the
undersigned, a Notary Public, personally appeared Raymond E.
Grove and Audrey F. Grove, his wife, to me known to be the person

19948

## ASSIGNMENT OF LESSEE'S INTEREST IN GROUND LEASE

FOR VALUABLE CONSIDERATION the receipt and ade-
quacy of which is hereby acknowledged the undersigned,
MALAN CONSTRUCTION COMPANY, hereby sells, assigns,
transfers and sets over to PLATTE COUNTY K M P all of
its right, title and interest as Developer (Lessee)
in a certain Ground Lease dated September 30, 1974,
wherein MALAN CONSTRUCTION COMPANY is the Developer
(Lessee) and Allen B. Kipper, a single man, and Raymond
E. Grove and Audrey F. Grove, his wife, is the Landlord
(Lessor).

MALAN CONSTRUCTION COMPANY,
a Michigan corporation,

BY: _Robert A. Lander_
    Robert A. Lander, President

ATTEST:

DATED: April 24, 1975   _Marion August_
                        Marion August, Asst. Secretary

## ACCEPTANCE OF ASSIGNMENT

The undersigned, being the Assignee named in the fore-
going Assignment, hereby accepts the Assignment by the Lessee
of all of its right, title and interest as Developer in the
Ground Lease and hereby expressly assumes and agrees to per-
form the terms, covenants, provisions, conditions and agree-
ments which are to be performed by the Landlord under said
Lease for the remainder of the term and any extensions or
renewals thereof to the same extent and in the same manner
as if it had been designated as the original Developer named
in said Ground Lease.

PLATTE COUNTY K M P,
a Michigan Limited Partnership
BY: E. N. MAISEL & ASSOCIATES

BY: _____
H. A. DORFMAN, Partner

Dated: _April 24, 1975_

ACKNOWLEDGMENTS

STATE OF MICHIGAN)
                 ) ss.
COUNTY OF OAKLAND)

On this _24th_ day of _April_ , A.D. 19 _76_ , before me per-
sonally appeared Robert A. Lander who, being by me duly sworn
did say that they are respectively the President of MALAN
CONSTRUCTION COMPANY, the corporation named in and which exe-
cuted the within instrument, and that the seal affixed to
said instrument is the corporate seal of said corporation,
and that said instrument was signed and sealed in behalf of
said corporation by authority of its Board of Directors; and
said Robert A. Lander acknowledged said instrument to be the
free act and deed of said corporation.

In Witness Whereof, I have hereunto set my hand and affixed
my official seal the day and year in this certificate first
above written.

                        MABEL DIANE BUCKHOLZ, Notary Public
                        Wayne County, Michigan
                        (Acting in Oakland County)

MY COMMISSION EXPIRES:

_____

                    Filed for Record this ___19th___ Day
                    of ____Oct.____ 19 _76_
                    at _3_ o'clock _16_ minutes _P_ M.

STATE OF MICHIGAN)
                 ) ss.          _Bessie Harris_
COUNTY OF OAKLAND)                           Recorder

                    Per _Joey Harris_          Deputy
                    Recorder's Fee $_3_  Book _493_ Page _844_

On this _24th_ day of _April_ , A.D. 19 _76_ , before me
personally appeared __H. H. DOREMAN__ , who, being by me
duly sworn did say that he is a partner in E. N. Maisel &
Associates, which is the General Partner of Platte County K M,
and that the said instrument was signed in behalf of said
partnership by authority of its articles of agreement; and
the said partner acknowledged the said instrument to be the
free act and deed of said partnership.

In Witness Whereof, I have hereunto set my hand and affixed
my official seal the day and year in this certificate first
above written.

                        MABEL DIANE BUCKHOLZ, Notary Public
                        Wayne County, Michigan
                        (Acting in Oakland County)

MY COMMISSION EXPIRES:

_____

Kansas City, MO

### ASSIGNMENT OF LEASE WITH ASSUMPTION

PLATTE COUNTY KMP, a Michigan limited partnership ("Assignor"), in consideration of One Dollar ($1.00) and other good and valuable consideration paid by KANSAS CITY PARTNERS AND COMPANY, LIMITED, a Quebec limited partnership ("Assignee"), hereby transfers and assigns unto the Assignee all of Assignor's right, title and interest, as tenant, in and to that certain ground lease (the "Lease") identified on Exhibit A attached hereto and made a part hereof, covering certain premises located in Kansas City, Platte County, Missouri, being more particularly described on Exhibit B attached hereto and made a part hereof.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns from and after the date hereof for all the rest of the term mentioned in the Lease, subject to the rents, terms, covenants, conditions and provisions therein contained.

Assignee hereby assumes and agrees to perform and keep all of the terms, covenants and conditions of the Lease on the part of the tenant therein to be performed and kept, from and after the date hereof, as if the Assignee had signed the Lease originally as Tenant named therein.

Assignor hereby agrees to indemnify and hold Assignee harmless from and against any and all claims, demands, actions, causes of action, loss, damage, and/or expense, including reasonable attorneys' fees, in connection with, arising out of, or in any manner related to (a) any acts or omissions of Assignor, its agents or employees, prior to the date hereof in connection with the Lease and/or the property demised thereunder, and (b) the failure prior to the date hereof by Assignor to perform and keep all of the terms, promises, covenants and conditions of the Lease on the part of tenant therein to be performed and kept.

Assignee hereby agrees to indemnify and hold Assignor harmless from and against any and all claims, demands, actions, causes of action, loss, damage, and/or expense,

-1-

including reasonable attorneys' fees, in connection with, arising out of, or in any manner related to, any acts or omissions of Assignee, its agents or employees, successors and assigns, on and after the date hereof in connection with the Lease and/or the property demised thereunder.

Assignee hereby agrees that the obligations herein assumed by Assignee shall inure jointly and severally to the Landlord named in the Lease and to the Assignor herein.

**IN WITNESS WHEREOF,** the parties hereto have executed this Assignment of Lease with Assumption this _17TH_ day of _DECEMBER_, 1986.

PLATTE COUNTY KMP, a Michigan limited partnership

By: E. N. MAISEL & ASSOCIATES, a Michigan limited partnership

Its: General Partner

By: _____
     GENE/A  MAISEL

Its: Designated Signatory

                    "Assignor"

KANSAS    CITY    PARTNERS    AND COMPANY, LIMITED, a Michigan limited partnership

By: KANMISS INVESTORS, INC., a Canadian corporation

Its: General Partner

By: _____
     KENNETH  KRAUS

Its: _DULY AUTHORIZED SIGNATORY_
                    "Assignee"

## ACKNOWLEDGEMENT

STATE OF MICHIGAN    )
COUNTY OF OAKLAND   )

The foregoing instrument was acknowledged before me this _17TH_ day of December, 1986, by _GENEVA MAISEL_ of _E.N. MAISEL_ _+ ASSOCIATES_, on behalf of said _LIMITED PARTNERSHIP_.

_Ruth E. Dalrymple_
Notary Public,         County,      RUTH E. DALRYMPLE
My Commission expires:      Notary Public, Oakland County, MI
                            My Commission Expires Mar. 12, 1990
_____, 19____


## ACKNOWLEDGEMENT

STATE OF MICHIGAN    )
COUNTY OF OAKLAND   )

The foregoing instrument was acknowledged before me this _17TH_ day of December, 1986, by _KENNETH KRAL'S_ of _KANHISS_ _INVESTORS, INC_, on behalf of said _CORPORATION_.

_Ruth E. Dalrymple_
Notary Public,         County,      RUTH E. DALRYMPLE
My Commission expires:      Notary Public, Oakland County, MI
                            My Commission Expires Mar. 12, 1990
_____, 19____


This instrument was prepared by:

Laurence E. Winokur
Miro Miro & Weiner, P. C.
500 North Woodward Ave.  Ste 200
P. O. Box 908
Bloomfield Hills, Michigan 48303-0908

After recording, this instrument should be returned to:

Ground Lease, dated September 30, 1974, by and between Allen B. Kipper, a single man, and Raymond E. Grove and Audrey F. Grove, his wife, as Landlord, and Malan Construction Company, a Michigan corporation, as Developer (Lessee), evidenced by Memorandum of Lease recorded October 18, 1974 in Book 454, Page 93 and rerecorded December 4, 1974 in Book 457, Page 378 as Document No. 8328; assigned to Platte County KMP by Assignment of Lessee's Interest in Ground Lease, recorded October 19, 1976 in Book 493, Page 844, as Document No. 19948.

Exhibit B

## LEGAL DESCRIPTION

Lot 2, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri; together with Driveway Access Easement, ALSO Lot 5, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri, according to the recorded plat thereof.

Lot 3, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri, also described as:

Commencing at the Northwest corner of said Northwest Quarter; thence South 89 degrees 10'57" East along the North line of said Northwest Quarter a distance of 1,643.75 feet to the Northwest corner of K-Mart Plaza Subdivision; thence continuing along said North line South 89 degrees 10'57" East a distance of 239.90 feet; thence South 34 degrees 22'27" East, a distance of 552.18 feet to the Point of Beginning of Lot 3; thence South 34 degrees 22'27" East a distance of 312.17 feet; thence South 0 degrees 52'03" West, a distance of 148.25 feet; thence South 47 degrees 43'53" West, a distance of 230 feet; thence South 42 degrees 16'06" East a distance of 200.00 feet; thence South 74 degrees 59'02" East a distance of 25.80 feet; thence South 22 degrees 07'33" - West a distance of 82.00 feet; thence North 42 degrees 16'06" West a distance of 227.15 feet; thence South 75 degrees 18'02" West a distance of 249.04 feet; thence North 89 degrees 07'57" West a distance of 265.00 feet; thence North 0 degrees 52'03" East a distance of 596.33 feet; thence South 89 degrees 07'57" East a distance of 383.00 feet; thence North 55 degrees 37'33" East a distance of 162.71 feet to the Point of Beginning of Lot 3.

ALSO a Driveway Access Easement — a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri, described as follows: Commencing at the Northwest corner of said Northwest Quarter; thence North 89 degrees 31'30" East along the North line of said Northwest Quarter a distance of 1,686.38 feet; thence South 0 degrees 25'30" East a distance of 30.00 feet to the Point of Beginning; thence South 0 degrees 25'30" East a distance of 291.00 feet; thence South 89 degrees 31'30" West a distance of 42.03 feet; thence North 0 degrees 31'55" West a distance of 291.00 feet; thence North 89 degrees 31'30" East a distance of 42.57 feet to the Point of Beginning.

Kansas City, Missouri

## ASSIGNMENT OF GROUND LEASE

KANSAS PARTNERS AND COMPANY, LIMITED, a Quebec limited partnership (the "Assignor"), in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby assign and transfer unto MALAN REALTY INVESTORS, INC., a Michigan corporation (the "Assignee"), all of Assignor's right, title and interest, as tenant, in, to and under that certain ground lease (the "Lease") identified on Exhibit A, attached hereto and made a part hereof, covering certain land, located in the City of Kansas City, County of Platte, Missouri, being more particularly described on Exhibit B, attached hereto and made a part hereof.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns, from and after the date hereof, subject to the terms, covenants, conditions and provisions contained in the Lease.

Assignee hereby assumes and agrees to perform and keep all of the terms, covenants and conditions of the Lease on the part of the tenant thereunder to be performed and kept, from and after the date hereof, as if the Assignee had signed the Lease as the tenant named therein.

This Assignment of Ground Lease is being executed and delivered in connection with the dissolution of Assignor into Assignee as a result of Assignee becoming the sole partner, general and limited, of Assignor.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of Ground Lease this _____ day of June, 1994.

In the Presence of:

KANSAS PARTNERS AND COMPANY, LIMITED, a Quebec limited partnership

By:     Malan Realty Investors, Inc., a Michigan corporation, sole general and limited partner

**TIMOTHY D. LINK**

**Teresa L. Dreer**

By:     _____
        Anthony S. Gramer

Its:    President

"Assignor"

MALAN REALTY INVESTORS, INC., a Michigan corporation

**TIMOTHY D. LINK**

**Teresa L. Dreer**

By:     _____
        Anthony S. Gramer

Its:    President

"Assignee"

## ACKNOWLEDGEMENTS

STATE OF MICHIGAN          )
                                              )ss.
COUNTY OF OAKLAND     )

    The foregoing instrument was acknowledged before me this _24th_ day of June, 1994, by Anthony S. Gramer, the President of Malan Realty Investors, Inc., a Michigan corporation, sole general and limited partner of Kansas Partners and Company, Limited, a Quebec limited partnership, on behalf of said partnership.

> TERESA L. DREER
> Notary Public, Macomb County, Michigan
> Acting in Oakland County
> My Commission Expires March 4, 1997

_____
, Notary Public
_____ County, Michigan
My commission expires:_____


STATE OF MICHIGAN          )
                                              )ss.
COUNTY OF OAKLAND     )

    The foregoing instrument was acknowledged before me this _24th_ day of June, 1994, by Anthony S. Gramer, the President of Malan Realty Investors, Inc., a Michigan corporation, on behalf of said corporation.

> TERESA L. DREER
> Notary Public, Macomb County, Michigan
> Acting in Oakland County
> My Commission Expires March 4, 1997

_____
, Notary Public
_____ County, Michigan
My commission expires:_____


Drafted by and when recorded
return to:

Chris B. Heaphy, Esq.
Miro Miro & Weiner
500 North Woodward Avenue
Suite 100
Bloomfield Hills, MI  48304

# EXHIBIT A

## Lease

Ground Lease - Kansas City, Missouri

A.   Ground Lease dated September 30, 1974 by and between Allan B. Kipper, Raymond E. Grove and Audrey F. Grove ("Landlord") and Malan Construction Company, a Michigan Corporation ("Developer")

B.   Memorandum of Lease dated September 30, 1974 and recorded October 18, 1974 in Book 454, Page 93 and re-recorded December 4, 1974 in Book 457, Page 378 as Document No. 8328

C.   Assignment of Lessee's Interest in Ground Lease dated April 24, 1975 from Developer (Lessee) to Platte County KMP

D.   Assignment of Lease with Assumption dated December 17, 1986 from Platte County KMP to Kansas City Partners and Company, Limited, a Quebec limited partnership, recorded February 17, 1987 as Document No. 37555 in Book 697 at Page 433

**EXHIBIT B**

**Legal Description**


A tract of land located in the Northwest Quarter of Section
19, Township 51, Range 33 Kansas City, Platte County, Missouri
described as follows:  Commencing at the Northwest corner of
said Northwest Quarter thence N 89° 31' 30" E along the North
line of said Northwest Quarter a distance of 1,686.38 feet
thence S 0° 25' 30" E a distance of 215.69 feet to the point
of beginning.  Thence N 89° 34' 30" E a distance of 245.00
feet; thence N 54° 20' 00" E a distance of 85.58 feet; thence
S 35° 40' 00" E a distance of 660.49 feet; thence S 0° 25' 30"
E a distance of 148.26 feet; thence S 46° 26' 21" W a distance
of 230.00 feet; thence S 43° 33' 39" E a distance of 200.00
feet; thence S 76° 16' 34" E a distance of 25.80 feet; thence
S 20° 50' 00" W a distance of 82.00 feet; thence N 43° 33' 39"
W a distance of 227.15 feet; thence S 74° 00' 29" W a distance
of 249.04 feet; thence S 89° 34' 30" W a distance of 265.00
feet; thence N 0° 25' 30" W a distance of 925.33 feet to the
point of beginning.  Containing 530,382 square feet or 12.176
acres.


and


A DRIVEWAY ACCESS EASEMENT – a tract of land located in the
Northwest Quarter of Section 19, Township 51, Range 33,
Kansas City, Platte County, Missouri described as follows:
Commencing at the Northwest corner of said Northwest Quarter
thence N 89° 31' 30" E along the North line of said Northwest
Quarter a distance of 1,686.38 feet thence S 0° 25' 30" E a
distance of 30.00 feet to the point of beginning.  Thence S 0°
25' 30" E a distance of 291.00 feet; thence S 89° 31' 30" W
a distance of 42.03 feet; thence N 0° 31' 55" W a distance of
291.00 feet; thence N 89° 31' 30" E a distance of 42.57 feet
to the point of beginning.  Containing 12,310 square feet or
0.283 acres.

**Kansas City, Missouri**

## ASSIGNMENT OF GROUND LEASE

MALAN REALTY INVESTORS, INC., a Michigan corporation (the "Assignor"), in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby assign and transfer unto MALAN MORTGAGOR, INC., a Michigan corporation (the "Assignee"), as a contribution to capital, all of Assignor's right, title and interest, as tenant, in, to and under that certain ground lease (the "Lease") identified on Exhibit A, attached hereto and made a part hereof, covering certain land, located in the City of Kansas City, County of Platte, Missouri, being more particularly described on Exhibit B, attached hereto and made a part hereof.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns, from and after the date hereof, subject to the terms, covenants, conditions and provisions contained in the Lease.

Assignee hereby assumes and agrees to perform and keep all of the terms, covenants and conditions of the Lease on the part of the tenant thereunder to be performed and kept, from and after the date hereof, as if the Assignee had signed the Lease as the tenant named therein.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of Ground

Lease this _____16_____ day of _____AUGUST_____, 1995.

In the Presence of:

MALAN REALTY INVESTORS, INC., a
Michigan corporation

By: _____

Its: _____

"Assignor"

MALAN MORTGAGOR, INC., a
Michigan corporation

By: _____

Its: _____

"Assignee"

## ACKNOWLEDGEMENTS

STATE OF MICHIGAN        )
                         )ss.
COUNTY OF OAKLAND        )

The foregoing instrument was acknowledged before me this _____ day of _____, 1995, by Michael Kaline, the Vice-President of Malan Realty Investors, Inc., a Michigan corporation, on behalf of said corporation.

_____
_____, Notary Public
_____County, Michigan
My commission expires:_____

STATE OF MICHIGAN        )
                         )ss.
COUNTY OF OAKLAND        )

The foregoing instrument was acknowledged before me this _____ day of _____, 1995, by Michael Kaline, the Vice-President and Secretary of Malan Mortgagor, Inc., a Michigan corporation, on behalf of said corporation.

_____
_____, Notary Public
_____County, Michigan
My commission expires:_____

Drafted by and when recorded
return to:

Chris B. Heaphy, Esq.
Miro Miro & Weiner
500 North Woodward Avenue
Suite 100
Bloomfield Hills, MI 48304

MMW-BH\90402.1

# EXHIBIT A

## Lease

Ground Lease - Kansas City, Missouri

A.   Ground Lease dated September 30, 1974 by and between Allan B. Kipper, Raymond E. Grove and Audrey F. Grove ("Landlord") and Malan Construction Company, a Michigan Corporation ("Developer")

B.   Memorandum of Lease dated September 30, 1974 and recorded October 18, 1974 in Book 454, Page 93 and re-recorded December 4, 1974 in Book 457, Page 378 as Document No. 8328

C.   Assignment of Lessee's Interest in Ground Lease dated April 24, 1975 from Developer (Lessee) to Platte County KMP

D.   Assignment of Lease with Assumption dated December 17, 1986 from Platte County KMP to Kansas City Partners and Company, Limited, a Quebec limited partnership, recorded February 17, 1987 as Document No. 37555 in Book 697 at Page 433

E.   Assignment of Ground Lease dated June 24, 1994 from Kansas City Partners and Company, Limited, a Quebec limited partnership, to Malan Realty Investors, Inc., a Michigan corporation, recorded July 8, 1994 as Document No. 0010938 in Book 0815 at Page 685

F.   First Amendment to Ground Lease dated December 24, 1994 by and between Audrey F. Grove, Karen G. Westcott, David A. Westcott, Anna G. Stone, and Steven D. Stone, as Landlord, and Malan Realty Investors, Inc., a Michigan corporation, as Tenant, recorded on June 27, 1995 in Book 830 at Page 208

**EXHIBIT B**

Lot 2, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri; together with Driveway Access Easement, ALSO Lot 5, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri, according to the recorded plat thereof.

Lot 3, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri, also described as:

Commencing at the Northwest corner of said Northwest Quarter; thence South 89 degrees 10 minutes 57 seconds East along the North line of said Northwest Quarter a distance of 1,643.75 feet to the Northwest corner of K-Mart Plaza Subdivision; thence continuing along said North line South 89 degrees 10 minutes 57 seconds East a distance of 239.90 feet; thence South 34 degrees 22 minutes 27 seconds East, a distance of  552.18 feet to the Point of Beginning of Lot 3; thence South 34 degrees 22 minutes 27 seconds East a distance of 312.17 feet; thence South 0 degrees 52 minutes 03 seconds West, a distance of 148.25 feet; thence South 47 degrees 43 minutes 53 seconds West, a distance of  230 feet; thence South 42 degrees 16 minutes 06 seconds East, a distance of 200.00 feet; thence South 74 degrees 59 minutes 02 seconds East, a distance of 25.80 feet; thence South 22 degrees 07 minutes 33 seconds West a distance of 82.00 feet; thence North 42 degrees 16 minutes 06 seconds West, a distance of 227.15 feet; thence South 75 degrees 18 minutes 02 seconds West a distance of 249.04 feet; thence North  89 degrees 07 minutes 57 seconds West a distance of 265.00 feet; thence North 0 degrees 52 minutes 03 seconds East a distance of 596.33 feet; thence South 89 degrees 07 minutes 57 seconds East a distance of 383.00 feet; thence North 55 degrees 33 minutes 33 seconds East a distance of 162.71 feet to the point of beginning of Lot 3.

ALSO A DRIVEWAY ACCESS EASEMENT - a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri described as follows:  Commencing at the Northwest corner of said Northwest Quarter thence N 89 degrees 31' 30" E along the North line of said Northwest Quarter a distance of 1,686.38 feet; thence S 0 degrees 25' 30" E a distance of 30.00 feet to the point of beginning.  Thence S 0 degrees 25' 30" E a distance of 291.00 feet;  thence S 89 degrees 31' 30" W a distance of 42.03 feet; thence N 0 degrees 31' 55" W a distance of 291.00 feet; thence N 89 degrees 31' 30" E a distance of 42.57 feet to the point of beginning.

Form 4100

## MEMORANDUM OF ASSIGNMENT OF GROUND LEASE

This Memorandum of Assignment of Ground Lease, made this _1_ day of June, 2000, by AUDREY F. GROVE (the "Assignor"), a single person, in consideration of Ten Dollars ($10.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, has assigned and transferred and does hereby assign and transfer unto KAREN G. WESTCOTT and her husband, DAVID A. WESTCOTT, as tenants by entireties, an undivided interest one-half interest, and unto ANNA G. STONE and her husband, STEVEN D. STONE, as tenants by entireties, an undivided interest one-half interest (the "Assignees"), all of Assignor's right, title and interest, as Landlord, in, to and under that certain Ground Lease, dated September 30, 1974 by and between Allan B. Kipper, Raymond E. Grove and Audrey F. Grove and Malan Construction Company, a Michigan Corporation, as subsequently amended and further assigned, covering certain land, located in the City of Kansas City, County of Platte, State of Missouri, being more particularly described on Exhibit A, attached hereto and made a part hereof.

TO HAVE AND HOLD the same unto the Assignees, their heirs, successors and assigns, from and after the date of the conveyance of the described real property to the Assignees pursuant to Warranty Deed, dated December 5, 1994 and recorded December 27, 1994 in Book 0822 at Page 798, subject to the terms, covenants, conditions and provisions contained in the Ground Lease.

Assignees assume and agree to perform and keep all of the terms, covenants and conditions of the Ground Lease on the part of the Landlord.

IN WITNESS WHEREOF, the parties have signed this Memorandum of Assignment of Ground Lease the day and year above written.

ASSIGNOR:

_Audrey F. Grove_

AUDREY F. GROVE

ASSIGNEES:

_Karen G. Westcott_

KAREN G. WESTCOTT

_David A. Westcott_

DAVID A. WESTCOTT

_Anna G. Stone_

ANNA G. STONE

_Steven D. Stone_

STEVEN D. STONE

STATE OF MISSOURI    )
                     )
COUNTY OF _Stone_    )

On this _31st_ day of _May_____, 2000, before me, a Notary Public, personally appeared AUDREY F. GROVE, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed, and the said AUDREY F. GROVE further declared herself to be single and unmarried.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year last above written.

_Carol L. Nelson_

Notary Public

My Commission Expires:

_August 22, 2003_

CAROL L. NELSON
NOTARY PUBLIC
NOTARY SEAL STATE OF MISSOURI
STONE COUNTY
My Commission Expires Aug. 22, 2003

STATE OF MISSOURI    )
                     )
COUNTY OF *Stone*    )

On this *31st* day of *May*_____, 2000, before me, a Notary Public, personally appeared KAREN G. WESTCOTT and DAVID A. WESTCOTT, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year last above written.

*Carol L. Nelson*
Notary Public

My Commission Expires:

*August 22, 2003*

CAROL L. NELSON
NOTARY PUBLIC
NOTARY SEAL STATE OF MISSOURI
STONE COUNTY
My Commission Expires Aug. 22, 2003

STATE OF MISSOURI    )
                     )
COUNTY OF *Stone*    )

On this *31st* day of *May*_____, 2000, before me, a Notary Public, personally appeared ANNA G. STONE and STEVEN D. STONE, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year last above written.

*Carol L. Nelson*
Notary Public

My Commission Expires:

*August 22, 2003*

CAROL L. NELSON
NOTARY PUBLIC
NOTARY SEAL STATE OF MISSOURI
STONE COUNTY
My Commission Expires Aug. 22, 2003

**EXHIBIT A**

**Legal Description**

A tract of land located in the Northwest Quarter of Section
19, Township 51, Range 33 Kansas City, Platte County, Missouri
described as follows:  Commencing at the Northwest corner of
said Northwest Quarter thence N 89° 31' 30" E along the North
line of said Northwest Quarter a distance of 1,686.38 feet
thence S 0° 25' 30" E a distance of 215.69 feet to the point
of beginning.  Thence N 89° 34' 30" E a distance of 245.00
feet; thence N 54° 20' 00" E a distance of 85.58 feet; thence
S 35° 40' 00" E a distance of 660.49 feet; thence S 0° 25' 30"
E a distance of 148.26 feet; thence S 46° 26' 21" W a distance
of 230.00 feet; thence S 43° 33' 39" E a distance of 200.00
feet; thence N 76° 16' 34" E a distance of 25.80 feet; thence
S 20° 50' 00" W a distance of 82.00 feet; thence N 43° 33' 39"
W a distance of 227.15 feet; thence S 74° 00' 29" W a distance
of 249.04 feet; thence S 89° 34' 30" W a distance of 265.00
feet; thence N 0° 25' 30" W a distance of 925.33 feet to the
point of beginning.  Containing 530,382 square feet or 12.176
acres.


and


A DRIVEWAY ACCESS EASEMENT – a tract of land located in the
Northwest Quarter of Section 19, Township 51, Range 33,
Kansas City, Platte County, Missouri described as follows:
Commencing at the Northwest corner of said Northwest Quarter
thence N 89° 31' 30" E along the North line of said Northwest
Quarter a distance of 1,686.38 feet thence S 0° 25' 30" E a
distance of 30.00 feet to the point of beginning.  Thence S 0°
25' 30" E a distance of 291.00 feet; thence S 89° 31' 30" W
a distance of 42.03 feet; thence N 0° 31' 55" W a distance of
291.00 feet; thence N 89° 31' 30" E a distance of 42.57 feet
to the point of beginning.  Containing 12,310 square feet or
0.283 acres.

0016827

STATE OF MISSOURI ss
COUNTY OF PLATTE
I CERTIFY INSTRUMENT RECEIVED

2002 AUG 22 P 3: 02 8

RECORDED BOOK 978 PAGE 307
IDA COX, PLATTE CO. RECORDER

*Gloria Boyer*                24.75
*Deputy*                      16.25

## Assignment of Ground Lease

**THOMSON TITLE CORP.**
**(816) 792-0077**

DATED: August 6,  2002

GRANTOR(S): Malan Mortgagor, Inc..

GRANTEE(S): Malan Standby LLC

GRANTEE'S (S') MAILING ADDRESS: 1050 Wilshire Dr. Suite 310, Troy MI 48084

LEGAL DESCRIPTION: See Exhibit "B"

REGARDING BOOK: 457    PAGE: 378

This document has been recorded in the
Platte County Recorder's Office. Contact this
office for certified copies: Recorder of Deeds
· Ida Cox, 415 3rd St., Suite 70, Platte City,
MO 64079, (816) 858-3326

BK 0 9 7 ● PG _ 3 0 7

Kansas City, MO

## ASSIGNMENT OF GROUND LEASE

MALAN MORTGAGOR, INC., a Michigan corporation ("Assignor"), in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby assign and transfer unto MALAN STANDBY LLC, a Michigan limited liability company ("Assignee"), all of Assignor's right, title and interest as tenant, in, to and under that certain ground lease (the "Lease") identified on Exhibit A, attached hereto and made a part hereof, covering certain land, located in the City of Kansas City, County of Platte, Missouri, being more particularly described on Exhibit B, attached hereto and made a part hereof.

TO HAVE AND TO HOLD the same unto Assignee, its sucessors and assigns, from and after the date hereof, subject to the terms, covenants, conditions and provisions contained in the Lease.

Assignee hereby assumes and agrees to perform and keep all of the terms, covenants and conditions of the Lease on the part of the tenant thereunder to be performed and kept, from and after the date hereof, as if the Assignee had signed the Lease as the tenant named therein.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of Ground Lease this 6 __ day of August, 2002.

MALAN MORTGAGOR, INC, a
Michigan corporation

By: _____
Elliott J. Broderick

Its: _Chief Financial Officer_

"Assignor"

MALAN STANDBY LLC, a
Michigan limited liability company

By: Malan Realty Investors, Inc., a
Michigan corporation

By: _____
Elliott J. Broderick, Chief Financial Officer

"Assignee"

STATE OF MICHIGAN )
)ss.
COUNTY OF OAKLAND )

On this _8th_ day of August, 2002, before me appeared Elliott J. Broderick, to me personally known, who being duly sworn, did say that he is the CFO, Treasurer and Secretary of Assignor described in the aforesaid instrument and acknowledged that he executed said instrument by the authority of said Assignor's Board of Directors and as the free act and deed of said officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

_Ann Marie Lewis_
Notary Public

My Commission Expires: _2/28/04_

ANN MARIE LEWIS
NOTARY PUBLIC WAYNE CO., MI
MY COMMISSION EXPIRES Feb. 28, 2004
ACTING IN OAKLAND COUNTY, MI

STATE OF MICHIGAN )
)ss.
COUNTY OF OAKLAND )

On this _8th_ day of August, 2002, before me appeared Elliott J. Broderick, to me personally known, who being duly sworn, did say that he is the Chief Financial Officer, Treasurer and Secretary of Malan Realty Investors, Inc., the sole member of Assignee described in the aforesaid instrument and acknowledged that he executed said instrument by the authority of said sole member's Board of Directors and as the free act and deed of said officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

_Ann Marie Lewis_
Notary Public

My Commission Expires: _2/28/04_

ANN MARIE LEWIS
NOTARY PUBLIC WAYNE CO., MI
MY COMMISSION EXPIRES Feb. 28, 2004
ACTING IN OAKLAND COUNTY, MI

WHEN RECORDED RETURN TO:
LANDAMERICA
NCS Division
1050 Wilshire Dr., Ste. 310
Troy, MI 48084
Case No. 093391

**Exhibit A**

**The Lease**

A. Ground Lease dated September 30, 1974 by and between Allan B. Kipper, Raymond E. Grove and Audrey F. Grove ("Landlord") and Malan Construction Company, a Michigan corporation ("Developer")

B. Memorandum of Lease dated September 30, 1974 and recorded October 18, 1974 in Book 454, Page 93 and re-recorded December 4, 1974 in Book 457, Page 378 as Document No. 8328

C. Assignment of Lessee's Interest in Ground Lease dated April 24, 1975 from Developer ("Lessee") to Platte County KMP

D. Assignment of Lease with Assumption dated December 17, 1986 from Platte County KMP to Kansas City Partners and Company, Limited, a Quebec limited partnership, recorded February 17, 1987 as Document No. 37555 in Book 697 at Page 433

E. Assignment of Ground Lease dated June 24, 1994 from Kansas City Partners and Company, Limited, a Quebec limited partnership, to Malan Realty Investors, Inc., a Michigan corporation, recorded July 8, 1994 as Document No. 0010938 in Book 0815 at Page 685

F. First Amendment to Ground Lease dated December 24, 1994 by and between Audrey F. Grove, Karen G. Westcott, David A. Westcott, Anna G. Stone, and Steven D. Stone, as Landlord, and Malan Realty Investors, Inc., a Michigan corporation, as Tenant, recorded on June 27, 1995 in Book 830 at Page 208.

G. Memorandum of Assignment of Ground Lease, dated June 1, 2000, from Audrey Grove to Karen G. Westcott and David A. Westcott (undivided 1/2 interest as tenants by entireties) and Anna G. Stone and Steven D. Stone (undivided ½ interest as tenants by entireties)

## EXHIBIT B

### LEGAL DESCRIPTION

LEASEHOLD ESTATE CREATED BY THAT CERTAIN GROUND LEASE DATED SEPTEMBER 30, 1974, NOTICE OF WHICH IS GIVEN BY THE MEMORANDUM OF LEASE RECORDED OCTOBER 18, 1974, IN BOOK 454, PAGE 93 AND RE-RECORDED DECEMBER 4, 1974, IN BOOK 457, PAGE 378.

WHICH GROUND LEASE ENCUMBERS THE REAL PROPERTY DESCRIBED AS FOLLOWS:

LOT 2, K-MART PLAZA SUBDIVISION, A SUBDIVISION IN KANSAS CITY, PLATTE COUNTY, MISSOURI ; TOGETHER WITH DRIVEWAY ACCESS EASEMENT, ALSO LOT 5, K-MART PLAZA SUBDIVISION, A SUBDIVISION IN KANSAS CITY, PLATTE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF.

LOT 3, K-MART PLAZA SUBDIVISION, A SUBDIVISION IN KANSAS CITY, PLATTE COUNTY MISSOURI, AND DESCRIBED AS:

COMMENCING AT THE NORTHWEST CORNER OF SAID NORTHWEST QUARTER; THENCE SOUTH 89 DEGREES 10 MINUTES 57 SECONDS EAST ALONG THE NORTH LINE OF SAID NORTHWEST QUARTER A DISTANCE OF 1,643.75 FEET TO THE NORTHWEST CORNER OF K-MART PLAZA SUBDIVISION; THENCE CONTINUING ALONG SAID NORTH LINE SOUTH 89 DEGREES 10 MINUTES 57 SECONDS EAST A DISTANCE OF 239.90 FEET; THENCE SOUTH 34 DEGREES 22 MINUTES 27 SECONDS EAST, A DISTANCE OF 552.18 FEET TO THE POINT OF BEGINNING OF LOT 3; THENCE SOUTH 34 DEGREES 22 MINUTES 27 SECONDS EAST, A DISTANCE OF 312.17 FEET; THENCE SOUTH 0 DEGREES 52 MINUTES 03 SECONDS WEST, A DISTANCE OF 148.25 FEET; THENCE SOUTH 47 DEGREES 43 MINUTES 53 SECONDS WEST, A DISTANCE OF 230 FEET; THENCE SOUTH 42 DEGREES 16 MINUTES 06 SECONDS EAST, A DISTANCE OF 200.0 FEET'; THENCE SOUTH 74 DEGREES 59 MINUTES 02 SECONDS EAST, A DISTANCE OF 25.80 FEET; THENCE SOUTH 22 DEGREES 07 MINUTES 33 SECONDS WEST A DISTANCE OF 82.00 FEET; THENCE NORTH 42 DEGREES 16 MINUTES 06 SECONDS WEST, A DISTANCE OF 227.15 FEET; THENCE SOUTH 76 DEGREES 18 MINUTES 02 SECONDS WEST A DISTANCE OF 249.04 FEET; THENCE NORTH 89 DEGREES 07 MINUTES 57 SECONDS WEST A DISTANCE OF 265.00 FEET; THENCE NORTH 0 DEGREES 52 MINUTES 03 SECONDS EAST A DISTANCE OF 596.33 FEET; THENCE SOUTH 89 DEGREES 07 MINUTES 57 SECONDS EAST A DISTANCE OF 383.00 FEET; THENCE NORHT 55 DEGREES 37 MINUTES 33 SECONDS EAST A DISTANCE OF 162.71 FEET TO THE POINT OF BEGINNING OF LOT 3.

ALSO A DRIVEWAY ACCESS EASEMENT - A TRACT OF LAND LOCATED IN THE

BUOK 78 PG 0307

0016327

NORTHWEST QUARTER OF SECTION 19, TOWNSHIP 51, RANGE 33, KANSAS CITY, PLATTE COUNTY, MISSOURI DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHWEST CORNER OF SAID NORTHWEST QUARTER THENCE N 89 DEGREES 31' 30' E ALONG THE NORTH LINE OF SAID NORTHWEST QUARTER A DISTANCE OF 1,686.38 FEET; THENCE S 0 DEGREES 25' 30' E A DISTANCE OF 30.00 FEET TO THE POINT OF BEGINNING. THENCE S 0 DEGREES 25' 30' E A DISTANCE OF 281.00 FEET; THENCE S 89 DEGREES 31'30' W A DISTANCE OF 42.03 FEET; THENCE N 0 DEGREES 31 55' W A DISTANCE OF 291.00 FEET; THENCE N 89 DEGREES 31'30 ' E A DISTANCE OF 42.57 FEET TO THE POINT OF BEGINNING.



## MALAN REALTY INVESTORS, INC.

30200 TELEGRAPH RD.   SUITE 105   BINGHAM FARMS, MICHIGAN 48025-4503   PHONE (248) 644-7110   FAX (248) 644-7880

March 25, 2004                                             Certified

Ms. Karen G. Westcott
Mr. David A. Westcott
984A Doubleday Loop
Reeds Spring, MO 65737

Ms. Anna G. Stone
Mr. Steven D. Stone
2529 Stone County Road
Galena, MO 65656

Re: Prairie View Shopping Center
    Location: Kansas City, Missouri

Dear Ground Lessor:

Effective March 25, 2004, Malan's interest in the Ground Lease dated September 30, 1974 was assigned to Troy Coolidge No. 18, LLC, a Michigan limited liability company, see attached assignment..  Information regarding Troy Coolidge No. 18, LLC, is as follows:

    1.   All correspondence, formal notices to and communications with the Lessee under the Ground Lease shall be directed to:

        Troy Coolidge No. 18, LLC
        c/o Kmart Corporation
        3100 W. Big Beaver Road
        Troy, Michigan 48084
        ATTN:  Vice President - Real Estate
        Fax No. 248-463-2689
        Telephone No. 248-463-1000

If you have any questions, please do not hesitate to call.

Sincerely,
Seller:
Malan Realty Investors, Inc., a Michigan corporation,
(successor by merger to Malan Standby LLC, a Michigan
limited liability company)

BY: _____
        Mabel D. Buckholz
Its:  Assistant Vice President

cc: Mr. William L. Hubbard   w/encl..

## ASSIGNMENT OF GROUND LEASE

MALAN REALTY INVESTORS, INC., a Michigan corporation, successor by merger to MALAN STANDBY LLC a Michigan limited liability company ("Assignor"), in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby assign and transfer unto TROY COOLIDGE NO. 18, LLC, a Michigan limited liability company ("Assignee"), all of Assignor's right, title and interest, as tenant, in, to and under that certain ground lease (the "Lease") identified on Exhibit A, attached hereto and made a part hereof, covering certain land, located in the City of Kansas City, County of Platte, Missouri, being more particularly described on Exhibit B, attached hereto and made a part hereof.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns, from and after the date hereof, subject to the terms, covenants, conditions and provisions contained in the Lease.

Assignor shall indemnify, defend and hold harmless Assignee, its directors, officers, employees and agents from and against any and all claims, demands, suits, liabilities, losses, costs and expenses, including, but not limited to reasonable attorneys fees, suffered by Assignee as a result of Assignor's acts or omissions prior to the date of this assignment.

Assignee hereby assumes and agrees to perform and keep all of the terms, covenants and conditions of the Lease on the part of the tenant thereunder to be performed and kept, from and after the date hereof, as if the Assignee had signed the Lease as the tenant named therein.

Assignee shall indemnify, defend and hold harmless Assignor, its directors, officers, employees and agents from and against any and all claims, demands, suits, liabilities,

losses, costs and expenses, including, but not limited to reasonable attorneys fees, suffered by

Assignor as a result of Assignee's acts or omissions from and after the date of this assignment.

011.1186166.3

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of

Ground Lease this ~~25th~~ day of March, 2004.

MALAN REALTY INVESTORS, INC.,
a Michigan corporation

By: _____

Its: _Chief Executive Officer_____


TROY COOLIDGE NO. 18 LLC,
a Michigan limited liability company

By: _____

Its: _____

3

losses, costs and expenses, including, but not limited to reasonable attorneys fees, suffered by

Assignor as a result of Assignee's acts or omissions from and after the date of this assignment.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of

Ground Lease this _____ day of March, 2004.

MALAN REALTY INVESTORS, INC.,
a Michigan corporation

By: _____

Its: _____

TROY COOLIDGE NO. 18 LLC,
a Michigan limited liability company

By: _____

Its: VICE PRESIDENT

STATE OF _____      §
                            §
COUNTY OF _____      §
            On this _____ day of March, 2004, personally came Jeffrey Lewis and
acknowledged to me that he executed the within and foregoing instrument in his
capacity as President and CEO of MALAN REALTY INVESTORS, INC., a Michigan
corporation, on behalf of said corporation.
            Given under my hand and seal of office the day and year last above
written.

_____
Notary Public, State of _____

_____
Printed Name of Notary

My Commission Expires:

_____

STATE OF _Michigan_ §

COUNTY OF _Oakland_ §

On this _28th_ day of March, 2004, personally came Jeffrey Lewis and acknowledged to me that he executed the within and foregoing instrument in his capacity as President and CEO of MALAN REALTY INVESTORS, INC., a Michigan corporation, on behalf of said corporation.

Given under my hand and seal of office the day and year last above written.

Notary Public, State of _____

Printed Name of Notary

MABEL D. BUCKHOLZ
Notary Public, Wayne County, MI
My Commission Expires March 1, 2005
Acting in Oakland County, MI

My Commission Expires:

4

011.1186166.3

STATE OF MICHIGAN        §
                         §
COUNTY OF OAKLAND        §

On this 24TH day of March, 2004, personally came Jeffrey Stollenwerck and acknowledged to me that he executed the within and foregoing instrument in his capacity as Vice President of TROY COOLIDGE NO. 18, LLC., a Michigan limited liability company, on behalf of said company.

Given under my hand and seal of office the day and year last above written.

_Carol a. Downes_

Notary Public, State of _____

_____
Printed Name of Notary

My Commission Expires:

_____

CAROL A. DOWNES
Notary Public, Oakland County, Michigan
My Commission Expires May 18, 2005

# EXHIBIT A

## Lease

### Ground Lease – Kansas City

Unrecorded Leased dated September 30, 1974 originally made by Allen B. Kipper, Raymond E. Grove and Audrey F. Grove, Lessors, to Malan Construction Company, Lessee

Memorandum of Lease dated September 30, 1974, filed October 18, 1974, under Document No. 7701, in Book 454 Page 93, and re-recorded on December 4, 1974, as Document No. 8328, in Book 457, Page 378, made by Allen B. Kipper, Raymond E. Grove and Audrey F. Grove, Lessors, to Malan Construction Company, Lessee.

Instrument dated April 24, 1975, filed October 19, 1976 as Document No. 19948, in Book 493, Page 844, Lessee's interest in the foregoing Lease was assigned to Platte County K M P.

Instrument dated March 6, 1979, filed March 12, 1979, as Document No. 40217, in Book 557, Page 552, the interest of Allen B. Kipper in the foregoing Lease was assigned to Raymond E. Grove and Audrey F. Grove, Husband and Wife.

Instrument dated December 17, 1986, filed February 17, 1987, as Document No. 37555, in Book 697, Page 433, Lessee's interest in the foregoing Lease was assigned to Kansas City Partners and Company, Limited.

Instrument dated June 24, 1994, filed July 8, 1994, as Document No. 10938, in Book 815, Page 685, Lessee's interest in the foregoing Lease was assigned to Malan Realty Investors, Inc.

"First Amendment to Ground Lease" filed: June 27, 1995, recorded in Book: 830, at Page: 208.

Instrument dated August 16, 1995, filed August 22, 1995, as Document No. 9919, in Book 832, Page 839, Lessee's interest in the foregoing Lease was assigned to Malan Mortgagor, Inc.

Instrument dated August 6, 2002, filed August 22, 2002, as Document No. 16327, in Book 978, Page 307, Lessee's interest in the foregoing Lease was assigned to Malan Standby LLC.

5

011.1186166.3

## EXHIBIT B

### Legal Description

Lot 2, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri; together with Driveway Access Easement, ALSO Lot 5, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri, according to the recorded plat thereof.

Lot 3, K-MART PLAZA SUBDIVISION, a subdivision in Kansas City, Platte County, Missouri, also described as:

Commencing at the Northwest corner of said Northwest Quarter; thence South 89 degrees 10 minutes 57 seconds East along the North line of said Northwest Quarter a distance of 1,643.75 feet to the Northwest corner of K-Mart Plaza Subdivision; thence continuing along said North line South 89 degrees 10 minutes 57 seconds East a distance of 239.90 feet; thence South 34 degrees 22 minutes 27 seconds East, a distance of 552.18 feet to the Point of Beginning of Lot 3; thence South 34 degrees 22 minutes 27 seconds East a distance of 312.17 feet; thence South 0 degrees 52 minutes 03 seconds West, a distance of 148.25 feet; thence South 47 degrees 43 minutes 53 seconds West, a distance of 230 feet; thence South 42 degrees 16 minutes 06 seconds East, a distance of 200.00 feet; thence South 74 degrees 59 minutes 02 seconds East, a distance of 25.80 feet; thence South 22 degrees 07 minutes 33 seconds West a distance of 82.00 feet; thence North 42 degrees 16 minutes 06 seconds West, a distance of 227.15 feet; thence South 75 degrees 18 minutes 02 seconds West a distance of 249.04 feet; thence North 89 degrees 07 minutes 57 seconds West a distance of 265.00 feet; thence North 0 degrees 52 minutes 03 seconds East a distance of 596.33 feet; thence South 89 degrees 07 minutes 57 seconds East a distance of 383.00 feet; thence North 55 degrees 37 minutes 33 seconds East a distance of 162.71 feet to the point of beginning of Lot 3.

ALSO A DRIVEWAY ACCESS EASEMENT – a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri described as follows:  Commencing at the Northwest corner of said Northwest Quarter thence N 89 degrees 31'30" E along the North line of said Northwest Quarter a distance of 1,686.38 feet; ~~thence S 0 degrees 25'30" E a distance of 30.00 feet~~ to the point of beginning.  Thence S 0 degrees 25'30" E a distance of 291.00 feet; thence S 89 degrees 31'30" W a distance of 42.03 feet; thence N 0 degrees 31'55" W a distance of 291.00 feet; thence N 89 degrees 31'30" E a distance of 42.57 feet to the point of beginning.

B U Y E R (S)    S E T T L E M E N T    S T A T E M E N T
4/01/2004   16:49:29

OLD REPUBLIC TITLE KANSAS CITY
1300 Baltimore Avenue                    File Number...: 04010155
Kansas City, MO   64105-1910             Closing Date..: 4/01/2004
                                         Proration Date: 4/01/2004
Buyer(s): North K I-29 2004 LLC
          c/o 605 W. 47th street
          # 100                          Seller(s): Audrey F. Grove
          Kansas City, MO 64112

Lender..: CSB BANK

                                         Property.: 7100 NW Prairie View Road
                                                    Kansas City, MO

                                                      Charges          Credits

Contract sales price ...............................  789,500.00

Plus Charges:
Loan Origination Fee to CSB Bank (1/2%)
Loan Administration Fee to CSB Bank ................    3,500.00
Settlement or closing fee ..........................      150.00
Title Insurance ....................................      300.00
Lender's coverage on $700,000.00 Prem $250.00
Courthouse Copies (2 sets) .........................      250.00
Recording Fees .....................................       54.00
Endorsements (8.1/Del. of CRs) .....................      170.00
Wiring Fees (In/Out) ...............................      200.00
Attorney Fees to Thad Batson .......................       30.00
Attorney Fees to Sonnenschein Nath .................    6,650.00
Survey Fee to NOI Three LLC ........................    4,900.00
Environmental Audit/Roof to NOI Three LLC ..........    3,570.00
Appraisal Fee to Gretzinger ........................      120.00
Escrow Hold-Back Fee ...............................    2,750.00
Additional Rent Credit (Escrow Hold-Back) ..........      100.00
   Additional Rental Guaranteed at $30,000 (11/12)    27,500.00
   around June/July, to be held in Escrow until such payment
   is received.

Less Credits:
Principal amount of new loan(s) ....................                   700,000.00
Earnest Money w/ ORT ...............................
Phase I Report Credit Buyer ........................                    15,000.00
   which Buyer paid to Underground Environmental Services Inc.
Survey Fee Credit to Buyer .........................                     1,500.00
   which Buyer has paid to Viking Surveys
NO TAX PRO-RATIONS (TRIPLE NET LEASE) ..............                     1,950.00
   NO RENT PRO-RATIONS.

Balance due from Buyer: ............................                   121,294.00

      Totals:
                                                      839,744.00       839,744.00

Please make Cashier check(s) payable to  OLD REPUBLIC TITLE KANSAS CITY

I (we) hereby approve this closing statement and agree to adjust any error
or omission that may be discovered.

North K I-29 2004 LLC

Closer: Cheryl Becker

S E L L E R (S)   S E T T L E M E N T   S T A T E M E N T
4/01/2004   16:49:30

OLD REPUBLIC TITLE KANSAS CITY
1300 Baltimore Avenue
Kansas City, MO   64105-1910

File Number...: 04010155
Closing Date..: 4/01/2004
Proration Date: 4/01/2004

Buyer(s): North K I-29 2004 LLC
c/o 605 W. 47th street
# 100
Kansas City, MO 64112

Seller(s): Audrey F. Grove

Lender..: CSB BANK

Property.: 7100 NW Prairie View Road
Kansas City, MO

|  | Charges | Credits |
|---|---|---|
| Contract sales price | | 789,500.00 |
| Plus Credits: | | |
| Less Charges: | | |
| Division of Commission | | |
|   5.000% to Block & Company, Inc. | 39,475.00 | |
| Settlement or closing fee | 300.00 | |
| Title Insurance | | |
| Owner's coverage on $789,500.00 Prem $1,122.00 | 1,122.00 | |
| Escrow Hold-Back Fee | 100.00 | |
| April Rent (Escrow Hold-Back) | 2,916.66 | |
|   Based on $35,000.00 base annual rental, to be held in escrow | | |
|   until rents are received. | | |
| Phase I Report Credit Buyer | 1,500.00 | |
|   which Buyer has paid to Underground Environmental Services | | |
| Survey Fee Credit to Buyer | 1,950.00 | |
|   which Buyer has paid to Viking Surveys | | |
| NO TAX PRO-RATIONS (TRIPLE NET LEASE) | | |
|   NO RENT PRO-RATIONS. | | |
| Net amount due to seller: | 742,136.34 | |
| Totals: | 789,500.00 | 789,500.00 |

Please make Cashier check(s) payable to OLD REPUBLIC TITLE KANSAS CITY

I (we) hereby approve this closing statement and agree to adjust any error
or omission that may be discovered.

*Audrey F. Grove*
Audrey F. Grove

*Cheryl Beeker*
Closer: Cheryl Beeker

## GROUND LEASE ESTOPPEL CERTIFICATE

"Malan"
Malan Standby LLC
Malan Realty Investors, Inc.
30200 Telegraph Road, Suite 105
Bingham Farms, Michigan 48025

"Purchaser"
Prom North K I-29 LLC
North K I-29 2004 LLC
Suite 100
605 W. 47th Street
Kansas City, Missouri 64112

"Buyer"
Troy Coolidge No.18, LLC
3100 W. Big Beaver Road
Troy, MI 48084

"Purchaser's Lender"
CSB Bank
445 E. 69 Highway
Claycomo, Missouri 64119

Re:  Ground leased property located in Kansas City,
Missouri/K-Mart Plaza (the "Property")

Ladies and Gentlemen:

The undersigned KAREN G. WESTCOTT and DAVID A. WESTCOTT, her husband, and ANNA G. STONE and STEVEN D. STONE, her husband (collectively, together with their respective predecessors-in-interest, if any, "Lessor"), as lessor under that certain ground lease (as amended, the "Lease"), dated September 30, 1974 between Lessor and Malan Standby LLC, a Michigan limited liability company and its predecessors-in-interest ("Lessee"), as lessee, covering a portion of the Property therein described (the "Premises"), and Lessee hereby warrant, represent and certify as follows, as of the date(s) set forth below:

1.    The initial term of the Lease commenced on May 1, 1974, and expires on April 30, 2010 together with eight options to extend for five years each.

2.    The fixed minimum annual rent under the Lease is $35,000 per annum, payable in installments, which is current through the date hereof. Lessor is entitled to receive certain percentage rent under certain circumstances pursuant to the terms of the Lease. No additional rent, such as percentage rent, or charge (including, without limitation, as applicable, taxes, maintenance, operating expenses or otherwise) that has been billed to Lessee by Lessor is overdue. There are no provisions for, and Lessor has no rights with respect to, terminating the Lease or increasing the rent payable thereunder, except as expressly set forth in the Lease.

3.    The Lease is in full force and effect and has not been assigned, modified, supplemented or amended in any way whatsoever, except, if at all, as described on Exhibit A attached hereto and made a part hereof. There are no other agreements, whether oral or written, between Lessee and Lessor concerning the Premises or the Property. A true, correct and complete description of the documents constituting the Lease is set forth on Exhibit A.

4.    Lessor has not delivered or received any notices of default under the Lease; to the best knowledge of Lessor, there is no default by Lessee or Lessor under the Lease, nor has any event or omission occurred which, with the giving of notice or the lapse of time, or both, would constitute a default thereunder. To the best knowledge of Lessor, Lessee has no defense set-offs, basis for withholding rent, claims or counterclaims against Lessor for any failure of performance of any of the terms of the Lease.

Lessee has not delivered or received any notices of default under the Lease; to the best knowledge of Lessee, there is no default by Lessee or Lessor under the Lease, nor has any event or omission occurred which, with the giving of notice or the lapse of time, or both, would constitute a default thereunder. To the best knowledge of Lessee, Lessor has no defense set-offs, basis for withholding rent, claims or counterclaims against Lessor for any failure of performance of any of the terms of the Lease.

5.    Any improvements required by the terms of the Lease to be made by Lessee have been completed to the satisfaction of Lessor, and Lessee's current use and operation of the Premises complies with any use covenants or operating requirements contained in the Lease.

6.    Except as disclosed in Item 1 above, Lessee has no options, rights of first refusal, termination, renewal or extension, exclusive business rights or other rights to extend or otherwise modify the Lease.

7.    Lessor is the record and beneficial owner of the Premises, and the Lease is not subordinate, and has not been subordinated by Lessor, to any mortgage, lien or other encumbrance. Lessor has not assigned, conveyed, transferred, sold, encumbered or mortgaged its interest in the Lease or the Premises, and there are

2

no mortgages, deeds of trust or other security interests, encumbering the ground lessor's fee interest in the Premises.

8.   No third party has any option or preferential right to purchase all or any part of the Premises.

9.   Lessor has not received written notice of any pending eminent domain proceedings or other governmental actions or any judicial actions of any kind against Lessor's interest in the Property.   Lessee has not received written notice of any pending eminent domain proceedings or other governmental actions or any judicial actions of any kind against Lessee's interest in the Property.

10.   Lessor has not received written notice that it is in violation of any governmental law or regulation applicable to its interest in the Premises and its operation thereon, including, without limitation, any environmental laws or the Americans with Disabilities Act, and has no reason to believe that there are grounds for any claim of any such violation.   Lessee has not received written notice that it is in violation of any governmental law or regulation applicable to its interest in the Premises and its operation thereon, including, without limitation, any environmental laws or the Americans with Disabilities Act, and has no reason to believe that there are grounds for any claim of any such violation.

11.   Neither Lessee nor any affiliate of Lessee has any direct or indirect ownership interest in Lessor or any affiliate of Lessor.

12.   Lessor, and the person or persons executing this certificate on behalf of Lessor, have the power and authority to execute this certificate.   Lessee, and the person or persons executing this certificate on behalf of Lessee, have the power and authority to execute this certificate.

Malan, Buyer, Buyer's Lender, Lessor, Purchaser, Purchaser's Lender and their successors and assigns may rely upon the truth and accuracy of the certifications contained herein, and said certifications shall be binding upon Lessor and its successors and assigns and Lessee and its successors and assigns, and inure to

3

the benefit of Malan, Buyer, Buyer's Lender, Lessor, Purchaser and Purchaser's Lender and their successors and assigns. This Certificate shall not be deemed to alter or modify any of the terms and conditions of the Lease.

"Lessee"

MALAN STANDBY LLC
BY: Malan Real Estate
Investors, Inc.

By: _____

Name: _____

Title: _____

Date: _____

"Lessor"

_____
Karen G. Westcott

_____
David A. Westcott

_____
Anna G. Stone

_____
Steven D. Stone

Date: _____

4

the benefit of Malan, Buyer, Buyer's Lender, Lessor, Purchaser and Purchaser's Lender and their successors and assigns. This Certificate shall not be deemed to alter or modify any of the terms and conditions of the Lease.

"Lessee"                                    "Lessor"

MALAN STANDBY LLC
BY: Malan Real Estate
Investors, Inc.                             _____
                                            Karen G. Westcott

By: _____
                                            _____
Name: __Jeffrey D. Lewis_____             David A. Westcott

Title: _Chief Executive Officer_

Date: ___March 23 , 2004_____             _____
                                            Anna G. Stone


                                            _____
                                            Steven D. Stone

                                            Date: _____


4

# SEARS HOLDINGS

3333 Beverly Road
Hoffman Estates, IL 60179

October 15, 2014

**VIA CERTIFIED MAIL/**
**RETURN REQUESTED**
**#7010 2780 0003 6033 0174**

North K 1-29 2004, LLC
605 West 47th Street, Suite 200
Kansas City, MO 64112
Attn: David Block

Re:    Ground Lease dated September 30, 1974, as amended, for the premises located at 7100 NW Prairie View Rd., Kansas City, MO, and known as Kmart #3239 (former Sears Grand # 4321)

Dear Landlord:

The undersigned hereby elects to extend the subject Lease for an additional term of five (5) years, commencing May 1, 2015, to and including April 30, 2020, upon the terms, conditions, and rental as set forth in said Lease, as amended.

Sincerely,

KMART CORPORATION,
a Michigan corporation

By: _____
Jeffrey Stollenwerck
Sr. Vice President of Real Estate

JS/cm

cc:    J. Catanese
Lease File

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7010 2780 0003 6033 1249**

Altera Bank
Account: North K 1-29 2004, LLC
11120 W. 135th Street
Orland Park, KS 66221

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7010 2780 0003 6033 1256**

CSB Bank
445 NE US Highway 69
Kansas City, MO 64119

# COMMERCIAL EXCLUSIVE RIGHT TO REPRESENT
## SELLER/LANDLORD AGREEMENT

DATE of this Contract: ~~November 21, 2014~~ _September 1_

The undersigned SELLER/LANDLORD and BROKER hereby agree that the property described below (the "Property") is listed for sale/lease by SELLER/LANDLORD with BROKER, and that BROKER shall have the sole and exclusive right to sell/lease the Property for a period beginning with the date of this Contract and ending on ~~November 21, 2016~~, OWNER MAY CANCEL AGREEMENT WITH TEN (10) DAYS NOTICE. _2020 JW_

**1. THE PROPERTY.**

    a. Address of Property, City, County, State, Zip: 7100 NW Prairie View Road, Kansas City, Platte County, Missouri 64151

    b. Property Description:  approximately 104,440 sf multi-tenant retail building (currently K-Mart)

**2. TERMS AND CONDITIONS OF SALE/LEASE.**

    a. Sale Price: n/a

    b. Rental Rate: $ _8_ Per _SF_ on ____ basis

    c. Terms and other conditions: n/a _Deslived And_

**3. COMPENSATION TO BROKER.**

    SELLER/LANDLORD agrees to pay BROKER a commission of:

    ~~a. If a sale: _____ percent (_____%) of the final sale price of the Property (the "Commission"). Closing agents hereby have the authority to pay such commission in the form of cash, a cashier's check or other forms acceptable to Broker at the Closing of the sale.~~

    ~~SELLER further agrees to pay BROKER the above described commission if the Property is sold by SELLER or any other party during the term of this Contract, or within thirty (30) days after the expiration date of this Contract to any party to whom the Property was submitted and whose name was disclosed to SELLER by BROKER, in writing, within thirty (30) days after the expiration of this Contract. SELLER further agrees to exclude such buyers from any subsequent "Right To Sell/Lease Agreements" with any other broker for a period of one hundred twenty (120) days from the date of the expiration of this Contract.~~

    b. If a lease: _Six_ percent ( _(6_%) of the total value of the lease up to the first five (5) years (the "Commission") payable upon tenant opening for business and payment of rent.

LANDLORD further agrees to pay BROKER the above described commission if the Property is leased by LANDLORD or any other party during the term of this Contract, or if the Property is leased within thirty (30) days after the expiration of this Contract to any party to whom the Property was submitted and whose name was disclosed to LANDLORD by BROKER, in writing, within thirty (30) days after the expiration of this Contract, or if the Property is transferred by reason of condemnation or threat thereof during the term of this Contract. In the event the Property is sold during the term of any lease for which commissions are payable hereunder, LANDLORD agrees that the terms of such sale shall include the assumption by the purchaser of LANDLORD'S obligation to pay commissions hereunder. LANDLORD further agrees to exclude such tenants from any subsequent "Right To Sell /Lease Agreements" with any other broker for a period of one hundred twenty (120) days from the date of the expiration of this Contract.

Commission shall also be paid by LANDLORD to BROKER on all amounts paid to LANDLORD under any extensions and/or renewals of the lease term and for enlargement or substitution of the leased premises, when such occurs. If the Property is sold to tenant or related party during the tenant's occupancy or within one hundred twenty (120) days after termination, LANDLORD shall pay to BROKER an additional commission of __0__ percent ( _0_ %)of the sale price, but will credit against such additional commission the amount of lease commissions previously paid, but unamortized, to BROKER by LANDLORD. LANDLORD'S obligation to pay the above described commission shall survive the expiration of this Contract. In the event a deposit is made on a sale or lease contract and is then forfeited, one-half of the deposit shall be paid to BROKER, but said payment shall not be in excess of the fee to which BROKER otherwise would have been entitled to receive.

**4. SELLER/LANDLORD'S OBLIGATIONS.** SELLER/LANDLORD agrees to refer all inquiries and prospects SELLER/LANDLORD may receive, directly or indirectly, to BROKER, and SELLER/LANDLORD hereby gives permission to BROKER to enter the Property at reasonable times to show it to prospects.

**5. BROKER AGREES TO:**

    (a) Perform the terms of this Contract, exercise reasonable skill and care for SELLER/LANDLORD, and promote the interests of SELLER/LANDLORD with the utmost good faith, loyalty and fidelity unless acting as a transaction broker.

    (b) Seek a price and terms acceptable to SELLER/LANDLORD.

    (c) Present all written offers, counteroffers, and back-up offers in a timely manner. BROKER shall not be obligated to continue to market the Property or present subsequent offers after an offer has been accepted by SELLER/LANDLORD unless the sales Contract permits SELLER/LANDLORD to continue to market the Property and consider other offers until Closing.

Notwithstanding the above, if the Property is in Missouri, all written offers MUST be presented regardless of whether the Property is subject to a sales contract or not.

(d) Disclose to SELLER/LANDLORD all adverse material facts actually known (or should have known, in Missouri) by Broker about Buyer.

(e) Disclose to SELLER/LANDLORD any facts known by BROKER which are omitted from or contradict any information included in a written report prepared by a qualified third party.

(f) Comply with all applicable federal, state, and local laws, rules and regulations, and ordinances, including fair housing and civil rights statutes and rules and regulations.

(g) Keep all information about SELLER/LANDLORD confidential unless: disclosure is authorized under this Contract; disclosure is required by statute, rule or regulation; failure to disclose would constitute a fraudulent misrepresentation; or disclosure is necessary under Missouri law to defend the affiliated licensee against an action of wrongful conduct in an administrative or judicial proceeding or before a professional committee.

(h) Disclose to any Buyer all adverse material facts actually known (or should have known, in Missouri) by BROKER including but not limited to environmental hazards affecting the Property, material defects in the physical condition of the Property or title thereto, and any material limitation on SELLER'S/LANDLORD'S ability to perform under the terms of a sales Contract.

(i) Assist with the Closing of the sale of the Property.

(j) Account in a timely manner for all money and property received.

**6. BROKER'S RIGHT TO PLACE SIGNAGE.** SELLER/LANDLORD agrees that BROKER may, during the term of this Contract, place a "For Sale" or "For Lease" sign on the Property through the closing of the sale of commencement of the lease with the designation "exclusive" thereon and that any other "For Sale" or "For Lease" signs shall be removed by SELLER/LANDLORD. SELLER/LANDLORD shall provide BROKER an advertising allowance of $_____ ($0.00 if left blank) or a marketing plan agreed to by SELLER/LANDLORD and BROKER

**7. LEGAL AND PROFESSIONAL ADVICE.** BROKER suggests SELLER/LANDLORD seek legal, tax, and other professional advice relative to any real estate transaction. BROKER makes no representation or warranty respecting the advisability of any transaction. BROKER is not an expert in matters relating to law, tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. SELLER/LANDLORD is encouraged to seek expert help in such areas. BROKER will cooperate with experts engaged by SELLER/LANDLORD, but BROKER shall have no liability to SELLER pertaining to such matters.

**8. BROKERAGE RELATIONSHIP DISCLOSURE.** SELLER/LANDLORD understands and agrees that BROKER can show the Property and obtain offers from all prospective Buyers, including Buyers with whom BROKER has a brokerage relationship. BROKER shall notify SELLER/LANDLORD and Buyer of BROKER'S intention to represent both of them (Disclosed Dual Agency is available only in Missouri), to represent neither but to assist both the Buyer and SELLER/LANDLORD (Transaction Brokerage is available in both Kansas and Missouri), or designate an agent for the Buyer and another to represent SELLER/LANDLORD (Designated Agency is available in both Kansas and Missouri). SELLER/LANDLORD also understands and agrees that as part of the marketing of the Property, BROKER will be showing Buyers properties other than the Property and providing Buyers with information on selling prices in the area. SELLER/LANDLORD understands that BROKER may show alternative properties not owned by SELLER/LANDLORD to prospects and may list competing properties for sale without breaching any duty or obligation to SELLER.

- **Transaction Broker.** (Kansas and Missouri). SELLER/LANDLORD acknowledges that BROKER may have Buyer clients who have retained BROKER to represent them in the acquisition of property. If one of these clients becomes interested in making an offer on the Property, BROKER would be in the position of representing the Buyer and SELLER/LANDLORD in the same transaction. Unless designated agents have been appointed as provided below, this representation would constitute a dual agency (Missouri only). With the informed consent of both SELLER/LANDLORD and the Buyer, BROKER may act as a Transaction Broker. As a Transaction Broker, BROKER would assist the parties with the real estate transaction without being an agent or advocate for the interests of either party. A Transaction Broker has the duty to perform the terms of any written or oral agreement made with any party to the transaction; to exercise reasonable skill, care and diligence as a Transaction Broker, including but not limited to: presenting all offers and counteroffers in a timely manner regardless of whether the Property is subject to a Contract for sale or lease or a letter of intent; keeping the parties fully informed regarding the transaction and suggesting that such parties obtain expert advice as to material matters about which the Transaction Broker knows but the specifics of which are beyond the expertise of such broker; accounting in a timely manner for all money and property received; disclosing to each party to the transaction any adverse material facts of which the Transaction Broker has actual notice or knowledge; and assisting the parties in complying with the terms and conditions of any Contract. The parties to a transaction brokerage transaction shall not be liable for any acts of the Transaction Broker. The following information shall not be disclosed by a Transaction Broker without the informed consent of the party or parties disclosing such information to the BROKER: that a Buyer is willing to pay more than the Purchase Price offered for the Property; that a SELLER/LANDLORD is willing to accept less than the asking price for the Property; what the motivating factors are for any party buying, selling or leasing the property; that the SELLER/LANDLORD or a Buyer will agree to financing terms other than those offered; any confidential information about the other party, unless disclosure of such information is required by law, statute, rules or regulations or failure to disclose such information would constitute fraud or dishonest dealing. (A separate Transaction Broker Amendment must be signed by all parties when this arrangement is used.)

- **Sub-Agency.** A sub-agent is the agent of an agent. A sub-agent owes the same obligations and responsibilities as the agent.

- **Disclosed Dual Agency. (Missouri only).** BROKER may have Buyer clients who have retained BROKER to represent them in connection with the acquisition of property. If a Buyer represented by BROKER becomes interested in making an

offer on the Property, BROKER is in the position of representing both SELLER/LANDLORD and the Buyer in that transaction. This representation, known as dual agency, can create inherent conflicts of interest. The same is true if the listing agent is also the selling agent. A Dual Agent shall be a limited agent for both the SELLER/LANDLORD and a Buyer and shall have the duties of a SELLER'S or a Buyer's agent except that a Dual Agent may disclose any information to one client that the licensee gains from the other client if the information is material to the transaction unless it is confidential information that has not been made public or becomes public by the words or conduct of the client to whom the information pertains or by a source other than the licensee. A Dual Agent may not disclose, without the consent of the client to whom the information pertains: that a Buyer is willing to pay more than the Purchase Price offered for the property; that SELLER/LANDLORD is willing to accept less than the asking price for the property; what the motivating factors are for any client, buying or selling the Property; that a client will agree to financing terms other than those offered and/or the terms of any prior offers or counter offers made by any party. A Dual Agent shall not disclose to other client any confidential information about the other client unless the disclosure is required by statute, rule or regulation or failure to disclose the information would constitute a misrepresentation or unless disclosure is necessary to defend the affiliate licensee against an action of wrongful conduct in any administrative or judicial procedure or before a professional committee. A separate Disclosed Dual Agency Amendment must be signed by the SELLER/LANDLORD and the Buyer when this form of agency is used.

- **Designated Agency. (Kansas and Missouri).** A Designated Agent is a licensee affiliated with BROKER who has been designated by BROKER, or BROKER'S authorized representative, to act as the agent of a Buyer represented by BROKER or a seller represented by BROKER to the exclusion of all other affiliated licensees of BROKER. The use of a Designated Agent is an alternative to a Disclosed Dual Agency in Missouri or a Transaction Broker in Kansas or Missouri. A Designated Seller's Agent will perform all of the duties of a Seller's Agent.

If a Designated Agent is appointed to represent SELLER/LANDLORD, SELLER/LANDLORD understands and agrees that:
(1) The Designated Agent will perform all of the duties of a SELLER'S/LANDLORD'S Agent and will be SELLER'S/LANDLORD'S legal agent to the exclusion of all other licensees affiliated with BROKER.
(2) Another licensee with the BROKER may act as a Designated Agent for a Buyer in the sale of the Property.
(3) The supervising broker (or branch broker, if applicable) will act as a Transaction Broker and will not advocate for the interests of either party and will not, without prior consent of both parties, disclose any information or personal confidences about a party which might place the other party at an advantage. The supervising broker (or branch broker, if applicable) may appoint an affiliated licensee to act in the transaction as a Transaction Broker.
(4) If the Designated Agent for SELLER/LANDLORD is also the Designated Agent of a Buyer who is interested in purchasing the Property, the Designated Agent cannot represent both SELLER/LANDLORD and Buyer. With the informed consent of both the SELLER/LANDLORD and Buyer, the Designated Agent may act as a Transaction Broker and assist the parties with the real estate transaction without being an agent or advocate for the interests of either party.
(5) If a Buyer who is represented by a Designated Agent of BROKER wants to see a property which was personally listed by the supervising broker, the supervising broker, with the written consent of SELLER/LANDLORD, may specifically designate an affiliated licensee who will act as the Designated Agent for SELLER/LANDLORD.
Appointment of Designated Agent: BROKER or BROKER'S authorized representative hereby designated
_____ to act as a Designated Agent on SELLER'S/LANDLORD'S behalf. (BROKER'S signature required _____), SELLER/LANDLORD consents to the above-named Designated Agent acting as SELLER'S/LANDLORD'S Designated Agent or as a Transaction Broker or Disclosed Dual Agent (Missouri Only) if such Designated Agent is also the Designated Agent for the Buyer, subject to both SELLER/LANDLORD and Buyer signing a Transaction Broker Amendment or Disclosed Dual Agency Amendment (Available in Missouri Only) with BROKER, which must be signed by SELLER/LANDLORD prior to signing the Contract and a Buyer prior to writing an offer to purchase the Property.

**9. BROKERAGE RELATIONSHIPS CONFIRMATION:** Unless otherwise provided herein, the SELLER/LANDLORD authorizes the designated broker to cooperate with and compensate other designated brokers.
☒ Yes ☐ No   SELLER/LANDLORD consents to Seller Agency.
☒ Yes ☐ No   SELLER/LANDLORD consents to a Transaction Broker and agrees, if applicable, to sign a Transaction Broker Addendum.
☒ Yes ☐ No   SELLER/LANDLORD consents to a Designated Agency relationship. (In Kansas, Supervising Broker acts as a Transaction Broker)
☒ Yes ☐ No   SELLER/LANDLORD consents to the appointment of a Designated Agent for a Buyer in sale of the SELLER'S/LANDLORD'S Property. (In Kansas, Supervising Broker acts as a Transaction Broker)
☐ Yes ☒ No   SELLER/LANDLORD consents to a Dual Agent and agrees, if applicable, to sign a Disclosed Dual Agency Agreement. (Missouri Only)
☒ Yes ☐ No   SELLER/LANDLORD consents to Sub agency.

**10. SELLER/LANDLORD** hereby states and affirms that, SELLER/LANDLORD has good and marketable title to the Property, and to the best of SELLER'S/LANDLORD'S actual knowledge, and except as otherwise specified below that SELLER/LANDLORD has good and marketable title to the Property; there are no material, physical, structural, or mechanical defects in the Property; and there are no hazardous substances, pollutants, or contaminants on the Property, the presence or disposal of which is subject to federal, state or local environmental regulation, nor is there any equipment, storage tank, container, or structural element on the Property that contains or utilizes, and has released or could release, any such hazardous substance, pollutant or contaminant into the environment or the interior of any building on the Property.

**11. Electronic Signatures and Fax Signatures.** Hand signatures transmitted by fax or electronic mail (such as PDF) are permitted as binding signatures to this Agreement. Signatures may be signed in counterpart, on separate pages, and then assembled as the complete agreement of the parties.  All parties agree that this transaction can be conducted by electronic means, including email, according to the Uniform Electronic Transaction Act as adopted in Kansas and Missouri.

CAREFULLY READ THE TERMS HEREOF BEFORE SIGNING.  WHEN SIGNED BY ALL PARTIES, THIS DOCUMENT BECOMES PART OF A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING. THE PARTIES EXECUTING THIS CONTRACT REPRESENT AND WARRANT THAT THEY ARE LEGALLY AUTHORIZED TO EXECUTE THIS CONTRACT.

Broker:  Block & Company, Inc., Realtors              Seller/Landlord:  North K I-29 2004 LLC

Signature:                                             Signature:

Print Name:  David M. Block                           Print Name:  David M. Block

Address:  605 W. 47th Street, Suite 200               Address:  605 W. 47th Street, Suite 200
          Street                                                 Street

          Kansas City, MO        64112                          Kansas City, MO        64112
          City, State            Zip                            City, State            Zip

                                                      Telephone #:      816-753-6000

Telephone #:  816-753-6000                            Email Address:    dblock@blockandco.com


**SIGNATURE PAGE TO LISTING AGREEMENT BETWEEN North K I-29 2004 LLC
SELLER/LANDLORD) AND Block & Company, Inc., Realtors (BROKER)
for the property located at 7100 NW Prairie View Road, Kansas City, MO 64151.**

Commercial Exclusive Right to Represent Seller/Landlord January 2014
Page 4 of 4