**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------- x
In re                                                      :
                                                          :        **Chapter 11**
**SEARS HOLDINGS CORPORATION, *et al.*,**                 :
                                                          :        **Case No. 18-23538 (RDD)**
        Debtors[1].                                       :
                                                          :        **(Jointly Administered)**
--------------------------------------------------------- x


## DECLARATION OF NATHANIEL SHAW

Pursuant to 28 U.S.C. § 1746, under penalty of perjury, Nathaniel Shaw declares:

1.      My name is Nathaniel Shaw.  I am the Chief Commercial Officer (õCCOö) for

Kellermeyer Bergensons Services, LLC (õKellermeyerö) and its subsidiary companies, including

its wholly-owned subsidiary Innovative Facilities Services, LLC (õIFSö and together with

Kellermeyer, õKBSö).  I have been employed by Kellermeyer for more than six years.  I was the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
    identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation
    (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680);
    ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E
    Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204);
    FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc.
    (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management
    Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement
    Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859);
    Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck
    Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (19870); Wally
    Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None);
    California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc.
    (1295); KLC ,Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart
    Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands
    Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection
    Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None): SOE, Inc. (9616); StarWest, LLC
    (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc.
    (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears
    Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the
    Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Executive Vice President for Sales and Marketing before being promoted to CCO at the beginning of 2018.

2.      I submit this Declaration in support of the Motion of KBS for an Order (i) compelling the above-captioned debtors (the "Debtors") to immediately assume or reject their agreements with KBS and pay post-petition amounts due (or overdue) under those agreements. In my capacity as CCO, I am familiar with KBS's relationship and agreements with the Debtors, as well as the amounts due to KBS under the agreements. Except as otherwise specifically indicated, all facts set forth in this Declaration are based upon my personal knowledge, and my review of the contracts, books and records of Kellermeyer and IFS, which are maintained by me or by persons working under my supervision. The information contained herein is true to the best my knowledge, except as to the matters herein stated to be made upon information and belief, and as to those matters I believe them to be true.

3.      Kellermeyer and IFS provide housekeeping and janitorial services to the Debtors at certain of their facilities pursuant to the following agreements:

- **Housekeeping Services Master Service Agreement (the "Kellermeyer Master Agreement") made as of February 24, 2017 and effective March 1, 2017 between Kellermeyer and Sears, Roebuck and Co. ("Sears"), Sears Operations, LLC ("Sears Ops"), K-mart Corporation ("K-Mart"), and Kmart Operations LLC ("K-Mart Ops" and Sears, Sears Ops, K-Mart, and Kmart Ops being jointly referred to as the "Contract Debtors").** The Kellermeyer Master Agreement currently governs cleaning and janitorial services and personnel provided at two hundred eighty (280) of the Contract Debtors' stores. We have been advised that forty (40) of those stores will close by the end of March.

- **Housekeeping Services Agreement between Kellermeyer and Sears (the "Kellermeyer Auto Center Agreement") effective as of June 1, 2017.** Pursuant to this agreement, Kellermeyer provides cleaning services and personnel at free-standing Sears' automotive centers. Kellermeyer presently provides services under the Kellermeyer Auto Center Agreement to seven (7) standalone Sears' auto centers.

- **Housekeeping Services Master Service Agreement between IFS and the Contract Debtors (the "<u>IFS Agreement</u>" and together with the Kellermeyer Master Agreement and the Kellermeyer Auto Center Agreement, the "<u>Agreements</u>") made as of November 5, 2015**. The IFS Agreement is substantially similar to the Kellermeyer Master Agreement, and services are currently provided to six (6) stores under the IFS Agreement.[2]

4.      The employees and contractors who provide the services are part-time workers who are paid at or slightly above the minimum wage rate.  They work in the early morning hours before the stores and auto centers open, to empty trash, and clean floors, carpeting, and restrooms.  They are hard-working, low-paid individuals who are among the most economically vulnerable individuals in our society, and KBS continues to pay these individuals for their work at the Debtors' stores and auto centers despite KBS not being paid by the Debtors.

5.      In accordance with the Kellermeyer Master Agreement and the Kellermeyer Auto Center Agreement, KBS timely submitted numerous invoices to the Contract Debtors for services provided in January 2019.  True and accurate copies of the KBS' January invoices, totaling $493,864.95, are attached hereto as Exhibit 1.  Payment on these invoices was due on or before February 20, 2019 if the Debtors wanted to take advantage of the agreements' early payment discount, or on March 2, 2019 without that discount.  To date, Kellermeyer has not received any payment on these invoices.

6.      In accordance with the IFS Agreement, IFS also timely submitted numerous invoices to the Contract Debtors for services provided in January 2019.  True and accurate copies of the IFS' January invoices, totaling $49,353.83, are attached hereto as Exhibit 2.  Payment on these invoices was to be initiated and made by March 2, 2019.  To date, IFS has not received any

---

[2] KBS is prepared to file the Agreements with the Court, but has not attached them to this Declaration or the Motion because of confidentiality provisions in the Kellermeyer Master Agreement.  If the Debtors waive those provisions, the Agreements will be promptly submitted.

payment on these invoices.  The total amount past due and unpaid in connection with services provided to the Debtors in January 2019 is $543,218.78.

7.      KBS and IFS personnel working under my supervision periodically check the online portal the Debtors make available to their vendors and service providers to check on the status of expected payments.  On February 20, 2019, the portal indicated that the Kellermeyer January invoices were processed and set to be paid within the early payment discount terms on February 19, 2019 with Check #790026215.  The portal further indicated that IFS January invoice #INV0019505 was processed and set to be paid on February 19, 2019 with Check #790026205.  These payments appear to have been halted, as the funds never appeared in the Kellermeyer or IFS bank accounts.  When we subsequently checked the portal, the line items referencing the payment obligations to Kellermeyer and IFS had disappeared.  They seem to no longer exist in the Debtors' payables system.

8.      We then made numerous efforts to contact the Debtors, emailing and leaving voice mail messages about the nonpayment and the change to the portal.  We also had our counsel contact the Debtors' counsel.  We heard nothing until Saturday, March 9th, when I contacted and spoke to David Acquaviva, who I had dealt with periodically in his role as a Divisional Vice President, Procurement for Sears.  Mr. Acquaviva told me that he is now an employee of the company that bought the assets of the Debtors (the "Buyer").  He also told me that there is a dispute between the Debtors and the Buyer about who is obligated to pay the January bills of Kellermeyer and IFS, and that he did not know when or if the invoices would be paid.

9.      I asked Mr. Acquaviva what the Buyer intended to do with our contracts, and he stated that the Buyer does not intend to have the Agreements assigned to it, as it does not want to pay the õcureö amounts owed to KBS.

10.     I note that KBSøs invoices for the period February 1 through February 15, 2019 were submitted on February 28, 2019.  Those invoices have been paid.  Invoices for the period February 16 through February 28, 2019, or for certain services, for the period February 1 through February 28, 2019, were submitted on February 28th, and payment of more than $440,000 is due in late March.

11.     Finally, at my direction, KBS employees calculated approximately how much would be owed to KBS for post-petition services under the Agreements by April 12, 2019, which I am advised is the Buyerøs deadline for making decisions about contracts and leases.  The estimate includes the unpaid January invoices, the amounts billed and presently unpaid for February and estimates for the period March 1st through April 12th.  (I instructed my staff to assume that the forty stores we were told would close by the end of March do in fact close.)  Our calculation of the amounts due for that period, excluding the February payment that was received, is in excess of $2.2 million.

Dated:  March 14, 2019

_____
                Nathaniel Shaw
                Chief Commercial Officer