WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                        :
                                             :    **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,    :
                                             :    **Case No. 18-23538 (RDD)**
                                             :
Debtors.[1]                                  :    **(Jointly Administered)**
                                             :
                                             :
------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION OF EVERLAST WORLD'S**
**BOXING HEADQUARTERS CORP. UNDER BANKRUPTCY**
**CODE SECTIONS 365(D)(2) AND 363(E) TO COMPEL: (1) ASSUMPTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

### OR REJECTION OF LICENSE AGREEMENT FORTHWITH, AND (2) PAYMENT OF ADMINISTRATIVE CLAIM AS ADEQUATE PROTECTION

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), hereby file this objection (the "**Objection**") to the *Motion of Everlast World's Boxing Headquarters Corp. Under Bankruptcy Code Sections 365(d)(2) and 363(e) to Compel: (1) Assumption Or Rejection of License Agreement Forthwith, and (2) Payment of Administrative Claim As Adequate Protection* [ECF No. 2779] (the "**Motion**")[2] filed by Everlast World's Boxing Headquarters Corp. ("**Everlast**"):

### Preliminary Statement

1. Despite a Court-approved procedure for assumption and assignment of the Debtors' unexpired leases and executory contracts, Everlast attempts to jump ahead of other creditors and vendors by seeking to prematurely compel the Debtors to assume or reject its License Agreement and pay Everlast's alleged administrative expense claim. But granting Everlast's request would disturb the intricate bargain struck by the Debtors and Transform (as defined herein) on the Court-sanctioned sale and the related transitional arrangements. It would also open the floodgate for other vendors and creditors to attempt to do the same by forcing the Debtors to respond to demands for allowance of each and every claim, or make a determination as to the treatment of thousands of leases and contracts, thereby seriously threatening the orderly administration of the Debtors' estates.[3] Moreover, granting the relief sought in the Motion would

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

[3] Indeed, on March 14, 2019, another vendor of the Debtors already followed suit and filed a motion seeking similar relief. *See Motion of Kellermeyer Bergensons Services, LLC and Innovative Facility Services for Entry of an Order*

2

be improper, because the Motion has not been adequately noticed. In contrast, as explained further below, the relief sought in the Motion will be properly addressed without prejudice to Everlast if the Motion is considered at the omnibus hearing currently scheduled for April 18, 2019, by which time Transform will have decided whether it wants the Debtors to assume and assign the License Agreement, and the Debtors will have had an opportunity to diligence the administrative expense claim Everlast asserts. Accordingly, the Court should deny the Motion without prejudice or, at the very least, adjourn the Motion to April 18, 2019.

## Background

2. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all their assets to Transform Holdco LLC ("**Transform**").

4. The sale to Transform closed on February 11, 2019. Pursuant to the Asset Purchase Agreement (as defined in the Motion, the "**APA**"), Transform has until April 12, 2019

---

*(i) Compelling the Debtors to Immediately Assume or Reject the Kellermeyer and Innovative Contracts and Pay Post-Petition Amounts Due Under the Contracts, and (ii) Granting Related Relief* [Docket No. 2837].

(the "**Designation Rights Period**") to advise the Debtors which executory contracts and unexpired leases it wants the Debtors to assume and assign.

5.      Under the APA, Transform has the obligation to pay the cure costs relating to assumed contracts and leases. *See* APA, § 2.3(g). In addition, although the subject of a pending dispute between the Debtors and Transform, Transform is obligated to pay Other Payables (as defined in the APA) up to $166 million in the aggregate. *See* APA, § 2.3(k).

### The Motion Should be Denied

**A.      Everlast Has Failed to Comply with the Required Notice Procedures**

6.      In the Motion, Everlast seeks two forms of relief. The first form of relief being sought – an order compelling the Debtors to assume or reject the License Agreement – indisputably required that the Debtors be provided with 21 days' notice. See the *Amended Case Management Order* [Docket No. 405], ¶ 32 (requiring that a motion to compel assumption or rejection of an executory contract be "noticed for consideration on the Omnibus Hearing Date that is at least twenty-one (21) days after the motion is filed and notice thereof is served upon the Debtors). The Motion was filed on March 7, 2019; therefore, it should not be heard at the omnibus hearing that will be held on March 21, 2019 (the "**March Omnibus Hearing**").

7.      When advised by the Debtors that insufficient notice of the Motion was provided, Everlast requested that the Motion be heard at the March Omnibus Hearing with respect to the second form of relief requested – an order granting Everlast adequate protection in the form of payment of its alleged administrative expense claim. The Debtors submit that bifurcation of the Motion as suggested is, likewise, procedurally improper and imposes an undue burden upon the Court and the Debtors.

8.      In similar circumstances, courts have denied motions that combine distinct requests on due process grounds. For example, in *In re Fort Wayne Foundry Corp.*, a vendor

4

creditor filed a single motion seeking three different forms of relief: adequate protection, the allowance and immediate payment of post-petition claims, and an order compelling the debtor to assume or reject equipment leases. No. 09-12423, 2009 WL 2524493, at *1 (Bankr. N.D. Ind. July 23, 2009). The court noted that these forms of relief would require the court to process them in "three different ways, on different notice to different constituencies," and allowing the motion to proceed would confront the court with a "procedural conundrum" and a "logistical nightmare trying to identify and satisfy all of the different notice and hearing and timing requirements that might apply to the motion's different components." *Id.* at *2. Accordingly, the court concluded that the "most appropriate thing to do" was to "deny the motion, without prejudice, and give counsel the opportunity to begin again and do things in the right way." *Id.* at *2-3; *see also In re Seminole Walls & Ceilings Corp.*, No. 6:01-BK-01966-KSJ, 2014 WL 6808316, at *1 (Bankr. M.D. Fla. Dec. 2, 2014) (declining to "do the work for the [m]ovant" by untangling a motion that sought five "distinct and separate reliefs" and denying the motion without prejudice and granting leave to refile); *In re New Energy Corp.*, No. 12-33866 HCD, 2013 WL 1192774, at *10 (Bankr. N.D. Ind. Mar. 14, 2013), *report and recommendation adopted*, No. 12-33866, 2013 WL 1192664 (N.D. Ind. Mar. 22, 2013) ("The usual action for a court, in such a circumstance [where a motion seeks distinct reliefs subject to different procedural requirements], would be to deny the [m]otion in its present form, without prejudice, and to let the moving party begin again and do things in the right way.").

9.  At the very least, the Motion should be adjourned to the next omnibus hearing date so that all Everlast's requests can be heard at the same time, all parties receive sufficient notice, and the resources of the Court and the estates are preserved.

**B.      The Relief Sought in the Motion Requires Factual Determinations and Consideration Thereof Is Premature**

10.     The Motion requests the immediate payment of administrative expenses. *See* Motion, ¶ 6. The Debtors have not had an opportunity to thoroughly review Everlast's untimely Motion to determine the alleged status and amount of Everlast's purported administrative expense claim. Since the closing of the Debtors' sale to Transform, the Debtors have been focused on transitioning the businesses and employees to Transform, identifying numerous unexpired leases and executory contracts that will be assumed and assigned or rejected, and preparing a plan of liquidation to wind down the Debtors' estates and close the Chapter 11 Cases. However, after a preliminary review of the Motion, the Debtors are not currently in a position to conclude that Everlast's asserted administrative expense claim in the amount of $2,158,856.55 is the correct calculation of the amount due or is entitled to administrative priority, in full or in part.[4]

11.     The mere fact that claims become due after the Commencement Date, as is the case for the AMGR Shortfall, is not dispositive as to whether such claims are entitled to administrative status. For that treatment, Everlast must prove (a) that their asserted administrative expense claims arose out of a post-petition transaction with the Debtors and (b) that the consideration supporting Everlast's right to payment was both supplied to and beneficial to the Debtors' estates in the operation of their businesses. *See Trustees of Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (citing *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir.1976)); *In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 192 (S.D.N.Y. 2011) (describing test).

---

[4] The Debtors reserve the right to supplement their objection to Everlast's administrative expense claim after an opportunity to conduct a thorough review.

6

12. Notably, this standard is narrowly construed. *See McFarlin's, Inc.*, 789 F.2d at 100 ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed."); *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 478 (Bankr. S.D.N.Y. 2006) ("When determining whether a particular claim or class of claims is entitled to priority, a court must be guided in reaching [its] decision by the equal distribution objective underlying the Bankruptcy Code, and the corollary principle that provisions allowing preferences must be tightly construed.") (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006)).

13. In the context of contractual minimum royalty payment for trademark usage, courts have applied the same stringent standard to the determination of the allowed amount of administrative expense claims. In *In re Home Interiors & Gifts, Inc.*, No. 08-31961-11-BJH, 2008 WL 4772102, at *10 (Bankr. N.D. Tex. Oct. 9, 2008), for example, the court calculated the creditor's allowed administrative expense claim as the "[minimum] royalty amount provided for in the License Agreement, prorated for the days of actual usage of the trademark during the post-petition, pre-rejection period." Similarly, in *In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 91 (Bankr. S.D. Fla. 2000), the court granted an administrative expense claim for the creditor's pro rata share of the minimum royalty payment after the creditor satisfied its burden of demonstrating actual "benefit" to the Chapter 11 estate from debtor's postpetition use of its licensed trademarks.

14. Like *Home Interiors* and *Beverage Canners*, Everlast must prove that its asserted AMGR Shortfall arose out of post-petition transactions with the Debtors and that it has appropriately taken into account the portion of the AMGR Shortfall that should be allocated to the prepetition period. In the event that Everlast fails to satisfy this burden, its request seeking to

afford administrative priority to the entire AMGR Shortfall for the 2018 fiscal year, including the period prior to the Commencement Date, must be denied.

15.   Moreover, a determination at this juncture of the status and amount of Everlast's administrative expense claim and an order directing immediate payment thereof at the March Omnibus Hearing would potentially prejudice the Debtors' other stakeholders by impacting their recoveries.  If the Debtors were compelled to pay every alleged and disputed administrative expense claim as it arises, it would inevitably create an unknown amount of additional administrative expense claims that have not been accounted for in the Debtors' liquidity forecast and, potentially, deprive the Debtors of the benefit of their bargain with Transform, which already has agreed to assume certain of these liabilities.  The Debtors will need additional time to investigate Everlast's claim, and all parties in interest will benefit from an orderly administration of the Debtors' estates rather than a free-for-all race to the courthouse.

16.   Finally, to the extent that Everlast's License Agreement is assumed and assigned to Transform, most, if not all of the relief requested in the Motion, will be rendered moot. Everlast will know the status of its License Agreement and Transform, and not the Debtors, will be responsible for the cure costs.  If the amounts sought by Everlast relate to post-petition liabilities, the appropriate treatment of those may already have been resolved in the litigation between Transform and the Debtors.  Given that most, if not all, of these issues will be resolved in a matter of weeks, judicial resources would be preserved by delaying consideration of the Motion. Accordingly, at the very least, the Court should adjourn the Motion to the next omnibus hearing date so as to allow the Court-approved Designation Rights Period to run its course and ensure the orderly administration of the Debtors' estates.

## **Conclusion**

17. For the foregoing reasons, the Court should adjourn or otherwise deny the

Motion without prejudice.

Dated: March 15, 2019
      New York, New York

                        /s/ Jacqueline Marcus
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile:  (212) 310-8007
                        Ray C. Schrock, P.C.
                        Jacqueline Marcus
                        Garrett A. Fail
                        Sunny Singh

                        *Attorneys for Debtors*
                        *and Debtors in Possession*