Hearing Date and Time: March 21, 2019 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :    **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                   :
                                                            :    **Case No. 18-23538 (RDD)**
                                                            :
Debtors.[1]                                                 :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' OBJECTION TO MOTION OF WC INDEPENDENCE
CENTER, LLC FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE
CLAIM PURSUANT TO 11 U.S.C. § 365(D)(3) AND PAYMENT THEREOF**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation, and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion of WC Independence Center, LLC for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 365(d)(3) and Payment Thereof*, dated February 13, 2019 (ECF No. 2579) (the "**Motion**"),[2] filed by WC Independence Center, LLC (the "**Landlord**"). In support of the Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. On October 15, 2018, the Debtors commenced these chapter 11 cases and filed, among other things, a motion seeking to reject certain burdensome, unexpired non-residential real property leases and related subleases that were not needed for their restructuring efforts (ECF No. 25) (the "**Lease Rejection Motion**"). Among the 217 leases identified in the Lease Rejection Motion was the Debtors' lease agreement, dated July 17, 1998, between Kmart and the Landlord (together with any amendments, modifications, renewals and guaranties, the "**Lease**"). In pertinent part, the Debtors sought to reject the Lease as of October 15, 2018, because they had formally surrendered possession of the premises to the Landlord on such date. As of the proposed rejection date, the Debtors ceased using the premises, and neither party to the Lease continued to

---

[2] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

perform thereunder. An order approving the Lease Rejection Motion and the Debtors' rejection of the Lease was entered on November 19, 2018 (ECF No. 810).[3]

2. Despite the Debtors unequivocally surrendering possession of the premises on October 15, 2018, and the Landlord retaining rent in the amount of $138,724.82 for the full month of October 2018, the Landlord has filed the Motion contesting the proposed rejection date in a veiled attempt to extract even more post-rejection rent to the detriment of the Debtors, theirs estates and their creditors.

3. For the reasons set forth herein, the Motion, demanding $38,572.36, solely based on the actions of a wholly unrelated third party, which would inflate the windfall the Landlord already received, should be overruled.

## BACKGROUND

*The Debtors' Chapter 11 Cases*

4. Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Commencement Date**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

---

[3] The Landlord filed an objection to the Lease Rejection Motion (ECF No. 525) (the "**Initial Objection**") and appeared at the hearing on November 15, 2018. At the hearing, the Landlord withdrew the Initial Objection and stated that "[the parties] have a dispute as to when the premises were surrendered . . . my suggestion would be we . . . file a request for administrative expense in which we may choose to add that nine days of November in which the premises were not available to us." Hr'g. Tr. at 112:23–113:6 (Bankr. S.D.N.Y. Nov. 15, 2018).

6. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

7. On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC.

8. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

*The Rejected Lease*

9. The Landlord owns the premises located at 4023 S. Noland, Independence, Missouri 64055 (the "**Premises**"). Beginning on July 17, 1998, Kmart leased the Premises from the Landlord pursuant to the terms of the Lease.

10. On August 14, 2018, Kmart entered into a short-term sublease agreement with Spirit Halloween for the period August 1, 2018 to November 9, 2018 (the "**Sublease Agreement**"). Pursuant to the Sublease Agreement, Spirit Halloween paid Kmart a total amount of $46,000 for use of the Premises, payable in three installments of $16,000 at signing for utility related costs and $15,000 on September 1 and October 1 for rent.

11. On October 1, 2018, the Debtors remitted payment to the Landlord for the full amount of rent due under the Lease for the month of October. *See* Motion at ¶ 11.

4

12. On the Commencement Date, the Debtors filed the Lease Rejection Motion, whereby the Debtors sought relief from the Court to reject the Lease and Sublease as of October 15, 2018. Also on the Commencement Date, the Debtors sent the Landlord a surrender notice (the "**Surrender Notice**") notifying the Landlord, in relevant part, that (i) the Debtors filed the Lease Rejection Motion and (ii) the Debtors surrender possession of the Premises. A copy of the Surrender Notice is annexed hereto as **Exhibit A**.

13. On November 8, 2018, the Landlord filed the Initial Objection, pursuant to which the Landlord sought entry of an order (i) that the Rejection Date was the date Spirit Halloween vacated and surrendered possession of the Premises to the Landlord, and (ii) requiring the Debtors to pay the Landlord rent and other expenses until the date Spirit Halloween vacated and surrendered the Premises. *See* Initial Objection, Section IV.

14. Upon information and belief, Spirit Halloween vacated the Premises on November 9, 2018. The Debtors are unaware of any efforts taken by the Landlord to remove Spirit Halloween from the Premises before November 9, 2018.

15. On February 13, 2019, the Landlord filed the Motion, seeking nearly identical relief as set forth in the Initial Objection. The Debtors have made several attempts to resolve the claims raised by the Landlord in the Initial Objection and the Motion and the Landlord has either declined all such offers or refused to respond. In a further effort to compromise, the Debtors propose a rejection date of October 31, 2018 and a payment to the Landlord of $4,099, reflecting the amount Spirit Halloween would have paid for nine days of occupancy in November.

## The Motion Should be Overruled

**A.    Subtenant Possession Does Not Negate the Debtors' Surrender**

16. The Motion contends that the surrender of the Premises by the Debtors was not effective until Spirit Halloween also vacated. This argument is nothing more than a red herring

5

and an attempt to eviscerate the Debtors' statutory right to reject the Lease and contain and limit needless administrative expenses. Even if a subtenant remains on leased premises after a debtor's rejection of the prime lease, the debtor's obligation to surrender the premises of a rejected lease does not extend to subtenants. *See* 11 U.S.C. § 365(d)(4) (requiring only that the trustee immediately surrender nonresidential real property to the lessor).

17. As an initial matter, the Debtors' rejection of the Lease associated with the Premises operated to terminate the Sublease. *See, e.g., In re The Great Atlantic & Pacific Tea Company*, 544 B.R. 43, 54 (Bankr. S.D.N.Y. 2016) ("As a sublessee, [subtenant] has no possessory interest to preserve following the debtor's rejection of the prime lease.") (internal citations omitted); *In re The Great Atlantic & Pacific Tea Company*, Case No. 10-24549, Hr'g. Tr. at 243:14-20 (RDD) (Bankr. S.D.N.Y. Jun. 14, 2011) ("It's really belt and suspenders to actually reject the sublease"); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) ("[w]hen a prime lease fails, so does the sublease.") (internal citations omitted); *In re Dial-A-Tire, Inc.*, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (finding rejection of a lease must result in the sublease being deemed rejected as well); *In re Elmhurst Transmission Corp.*, 60 B.R. 9, 10 (Bankr. E.D.N.Y. 1986) (finding that subtenants do not have standing in Bankruptcy Court after the rejection of the debtor's lease); *see also Four Bros. Boat Works, Inc. v. S&SF, Inc.*, 5 S.W.3d 12, 15 (Tex. App. Houston 1st Dist. 2001) ("As a general rule, a subtenant's right of occupancy under a sublease ends when the underlying master lease ends."); *Forest Park Lanes, Ltd., v. Keith,* 441 S.W.2d 920, 939 (Tex. App. 1969) (finding that termination of master lease "brought into effect, by operation of law, the termination of all subleases, validity of which was dependent upon continuation of the primary lease."). Accordingly, the Debtors' rejection of the Lease automatically resulted, without further action, in the rejection of the Sublease Agreement.

6

18. The Landlord should not be permitted to enhance its claim status by imposing hurdles not required under the Bankruptcy Code. Therefore, this Court should hold that any claim against the Debtors arising from Spirit Halloween maintaining possession of the Premises for the period subsequent to the Rejection Date is disallowed. *See In re Cardinal Export Corp.*, 30 B.R. 682, 685 (Bankr. E.D.N.Y. 1983) ("If the landlord is to receive compensation for the period subsequent to the surrender of the premises by the trustee, he must look elsewhere to those persons that benefitted from such occupancy.").

**B.    The Motion Is Not Supported By Section 365(d)(3) of the Bankruptcy Code**

19. As stated above, the Landlord is seeking an additional nine days of rent stemming from Spirit Halloween's continued occupancy and possession of the Premises post-rejection pursuant to section 365(d)(3) of the Bankruptcy Code. The Landlord's requested relief is improper and overreaching, especially given that no benefits were conferred to the Debtors and their estates in connection with Spirit Halloween's continued possession. Indeed, the Landlord concedes that the Debtors paid the full October rent amount, despite the Lease's Rejection Date of October 15, 2018. *See* Motion, ¶ 11 ("Debtors paid [Landlord] the Rent for October totaling $138,724.82. Of this amount, $69,362.41 falls within the Administrative Claim Period"). Moreover, even though the Sublease Agreement does not provide for rent to be paid for the month of November, the Debtors' are offering to pay the Landlord the amount of rent Spirit Halloween would have paid if rent were calculated on a daily basis. The request for additional amounts is simply inequitable and not supported by section 365(d)(3) of the Bankruptcy Code.

20. Section 365(d)(3) of the Bankruptcy Code, in pertinent part, states that "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this

title." 11 U.S.C. § 365(d)(3). Section 365 of the Bankruptcy Code was enacted to address scenarios where a debtor vacates space but has not yet decided whether to assume or reject the lease and the landlord continues to provide current services. According to Senator Hatch's commentary to the 1984 Act, section 365(d)(3) of the Bankruptcy Code was amended to ensure that landlords received "current payment" for the "current services." *See In re Child World*, 161 B.R. 571, 575 (Bankr S.D.N.Y. 1993) (citing to H.R. Conf. Rep. No. 98-882, at 598-99 (1984), reprinted in 1984 U.S.C.C.A.N. 576). The term "current services" was defined to include use of the leased premises and providing utilities, security, and other services. *Id*. Neither the language of the statute nor the legislative history reveals a Congressional intent for a landlord to receive a windfall at the expense of other creditors.

21. The Debtors' intention to reject the Lease was unambiguous and was evidenced by the Debtors (i) filing the Lease Rejection Motion, (ii) sending the Surrender Notice to the Landlord, and (iii) fully vacating and surrendering possession of the Premises to the Landlord as of the Commencement Date. The Debtors did not engage in any conduct that would give rise to a continued obligation to make postpetition lease payments pursuant to section 365(d)(3) of the Bankruptcy Code. Moreover, given the Debtors' surrender of the Premises, the Landlord ceased having to perform and provide any "current services" under the Rejected Lease.

22. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code.]" 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets. *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the

power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.") (citations omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances."). The Landlord's Motion contravenes the purpose and spirit of section 365(d)(3) of the Bankruptcy Code in that it seeks to inequitably extract from the Debtors' estates post-rejection, administrative claim amounts. Accordingly, it would be an appropriate use of the Court's power under section 105 of the Bankruptcy Code to deny the Motion.

23. The Motion should be overruled and no further or other amounts should be paid by the Debtors for any actions attributable to a third party.

## CONCLUSION

24. For the reasons set forth herein, the Motion should be overruled and the Objection should be approved.

Dated: March 15, 2019
    New York, New York

        /s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

# Exhibit A

**Surrender Notice**

18-23538-shl    Doc 2850    Filed 03/15/19    Entered 03/15/19 17:24:38    Main Document
Pg 10 of 11

# Nierman, Scott

| | |
|---|---|
| **From:** | Nierman, Scott |
| **Sent:** | Monday, October 15, 2018 5:11 PM |
| **To:** | lbyrd@worldclassproperty.com |
| **Cc:** | Nierman, Scott |
| **Subject:** | Lease for property #K9336 Independence MO and K9351 Belleville IL |

Ms. Byrd:

- As you may be aware, on October 15, 2018 (the "Petition Date"), the Debtor and certain of its affiliates commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The cases are being jointly administered under chapter 11 case number 18-23538 (RDD).
- As you may also be aware, on the Petition Date, the Debtor filed a motion to reject the Lease pursuant to section 365 of the Bankruptcy Code effective as of the Petition Date.
- The Debtors hereby surrender the premises by providing the codes below.

| # | K/S | Name | State | Lockbox Code | Alarm Code | LL |
|---|---|---|---|---|---|---|
| 9336 | K | Independence | MO | 4321 | 3663 | WC Independence Center LLC |
| 9351 | K | Belleville | IL | 4188 | 3663 | WC MRP Belleville Center, LLC |

Regards

Scott Nierman
Sr. Real Estate Strategist

Sears Holdings Corporation
3333 Beverly Road, BC-095B
Hoffman Estates, IL  60179
Phone: (847) 286-2311
Fax:  (847) 286-2286
Email: Scott.Nierman@searshc.com