Landlord's possession or control or within the possession or control of Landlord's agents, employees, contractors or attorneys.

4.06    Available Utilities.    All utilities, including gas, electric, telephone, water and sewer sufficient to meet Tenant's Site Criteria, are available at the Premises.

## V - LANDLORD'S OPERATIONAL PROVISIONS

5.01    Parking.    Landlord shall not charge for the use of any parking spaces on the Landlord's Parcel except as may be required by law.    Landlord shall not change the location or configuration of any access points into the Shopping Center shown on the Site Plan to be within Tenant's Control Area except with the written consent of Tenant, which consent may be given or withheld by Tenant in Tenant's sole and absolute discretion, or as may be required by law. Landlord shall provide sufficient surface parking on the Landlord's Parcel to provide not less than five (5) parking spaces (having a width of not less than nine feet) per 1,000 square feet of Gross Leasable Area (the **"Required Parking Ratio"**) on the Landlord's Parcel, in accordance with the Site Criteria.

5.02    Landlord's Operating Covenant.    Landlord shall throughout the Term operate and maintain the Entire Tract as a first-class shopping center as provided in Section 7.03.

(a)    Landlord shall use commercially reasonable efforts to keep all store space in the Shopping Center leased and substantially used for retail sales and services of the type typically found in first class shopping centers in the Las Vegas and Reno, Nevada areas.

(b)    No kiosks, push carts or other vending facilities of any type shall be permitted within Tenant's Control Area, except in the locations specifically designated on the Site Plan, if any, or as approved in writing between Landlord and Tenant.

5.03    Future Development/Excluded Uses.

(a)    Except within the areas designated as "Permissible Building Area" on the Site Plan, Landlord shall not construct or permit the construction of any improvements on the Entire Tract without the written consent of Tenant, which consent may be given or withheld by Tenant in Tenant's sole and absolute discretion.

(b)    So long as Tenant is operating  a Sears department store within Tenant's Store Building, Landlord shall not lease or sell any building or space within the Shopping Center for any other department store use. For purposes of this Lease, "department store" shall mean a retail store occupying at least 120,000 square feet of gross leasable area in the Shopping Center for the sale of a variety of hard and/or soft goods and miscellaneous merchandise and services, substantially similar to those department stores found in shopping centers containing at least 500,000 square feet of GLA in the Las Vegas, Nevada metropolitan area.  The foregoing restriction is not intended to exclude merchants who carry such products or merchandise as an incidental portion of their business within the

Shopping Center.

5.04   Access Roads.   Landlord shall not restrict, alter or otherwise impede the flow of truck traffic along the rear (south) of the Shopping Center, fronting Kelso Dunes Road, or vehicular traffic along the roadway immediately in front of the Major Store buildings.

## VI - TENANT'S OPERATIONAL PROVISIONS

6.01   Opening Date.   Subject to force majeure events, Tenant shall open Tenant's Store Building to the public for business not later than 365 days after the Turnover Date; provided, however, that:

(a)   All of Landlord's Improvements, other than seasonal landscaping, have been substantially completed; and

(b)   Tenant shall not be obligated to open Tenant's Store Building to the public for business during a Blackout Period.

6.02   Continuous Operation.   For purposes of Section 6.03, to "continuously operate" means to keep floor area within the Shopping Center fully stocked and open to the public for business during reasonable business hours, excluding periods of reconstruction, renovation, repair or alteration and such other reasonable interruptions as may be incidental to the conduct of its business.

6.03   Tenant's Operating Covenant.   Subject to the other provisions of this Lease, Tenant will, from and after the Opening Date and for the first ten (10) years of the Initial Term after the Opening Date, continuously operate or cause to be operated in Tenant's Store Building a retail store, under the name of Sears or such other name as Sears may then be operating in the majority of its like retail stores in the State of Nevada ("**Tenant's Operating Covenant**"). Tenant's Operating Covenant is subject to the following conditions:

(a)   Landlord is not in default of Landlord's Operating Covenant; or

(b)   At least 75% of the floor area of the Major Store space at the Shopping Center is leased and operating; provided, Landlord may cure a breach of this condition by entering into a contract with a replacement tenant to operate in not less than 50% of the floor area of the Major Store space it is replacing within twelve (12) months thereafter, so long as such replacement tenant has opened for business within the Major Store space within eighteen (18) months after the initial cessation of continuous operations.

(c)   If, at any time during Tenant's Operating Covenant, Landlord has not met all of the foregoing conditions, then Tenant's Operating Covenant shall terminate.

(d)   Tenant's Operating Covenant is personal to Landlord and not assignable, except to a successor Landlord who acquires title to the Premises or to a mortgagee in possession.

(e)    Tenant's Operating Covenant is conditioned upon Landlord not entering into an agreement with a third party whereby the third party is granted the right, either directly or indirectly, to enforce Tenant's Operating Covenant.

6.04    Licensees, Subtenants, Concessionaires.    Subject to the provisions of Section 1.20, Tenant may operate Tenant's Store Building in whole or in part by licensees, subtenants or concessionaires.

6.05    No Restrictions Outside the Shopping Center.  Nothing contained herein shall be deemed to impose any radius or other restriction on the activities of Tenant outside of the Shopping Center.

6.06    Tenant's Store Operations/Hours. The hours of business, the number and types of departments to be operated in Tenant's Store Building, the particular contents, wares and merchandise to be offered for sale and the services to be rendered, the methods and extent of merchandising and storage thereof, and the manner of operating Tenant's Store Building shall, in every respect whatsoever, be within the sole and absolute discretion of Tenant.

6.07    Parking.    Tenant shall not charge for the use of any parking spaces on the Premises except as may be required by law.  Tenant shall not change the location or configuration of any access points into the Shopping Center shown on the Site Plan to be within the Premises except with the written consent of Landlord, which consent may be given or withheld by Landlord, in Landlord's sole and absolute discretion, or as may be required by law. Tenant shall provide sufficient surface parking on the Premises in order to comply with the Required Parking Ratio.

6.08    Future Development. Except within the areas designated as "Permissible Building Area" on the Site Plan, Tenant shall not construct or permit the construction of any improvements on the Premises without the written consent of Landlord, which consent may be given or withheld by Landlord in Landlord's sole and absolute discretion.

6.09    Signs.  Landlord shall assist with and cooperate with Tenant's efforts to obtain signage permits, including, but not limited to, the following:

(a)    Pre-Opening.    Subject to compliance with applicable laws, and before the Opening Date, Tenant may place and maintain temporary signs and banners on the Premises and outside Tenant's Store Building to announce Tenant's opening. Tenant shall remove such temporary signs on or promptly after the Opening Date.

(b)    After Opening.    Subject to compliance with applicable laws, Tenant may install and maintain signage on the Premises consistent with signage at Tenant's stores similar to Tenant's Store Building.  Tenant's sign panel shall be displayed on at least one pylon sign and two monument signs along Warm Springs Road.

(c)    Tent Sales.  Tenant shall have the right to place temporary signs and banners on the Premises to promote its periodic tent sales.  Such tent sales shall be:  i) within the area of the Premises shown on the Site Plan; ii) conducted no more often than

four (4) times in any calendar year; iii) each shall extend no more than 30 days in duration; and iv) none shall be conducted in the period of 11/15 through 12/31.

    (d)    <u>Shopping Center Signage.</u> Signage for other tenants or owners of the Entire Tract shall be subject to the provisions of Section VII of this Lease.

6.10    <u>Utilities</u>. Tenant shall contract in its own name and promptly pay for all water, sewer, gas, heat, light, power, telephone service and other public utilities of every kind that Tenant desires to be furnished to the Premises throughout the Term and Landlord shall have no responsibility of any kind for any thereof.

6.11    <u>Compliance with Law</u>. Tenant shall comply with all federal, state and local governmental laws, rules, regulations and ordinances applicable to Tenant's use of the Premises.

6.12    <u>Merchants' Association/Marketing Fund.</u>

    (a)    Commencing on the Commencement Date and continuing for three (3) years thereafter, Tenant shall maintain membership in the Shopping Center Merchants' Association and/or marketing fund. Tenant's sole obligation for such membership shall be to pay to Landlord or to such Association, as the case may be, an annual contribution of $2,000.00 per year, in equal monthly installments. All monies received by Landlord or said Association pursuant to this Section shall be used solely for the purpose of advertising the Shopping Center and for promotional services in connection with the Shopping Center.

    (b)    Landlord shall have no obligation to establish a Merchants' Association or marketing fund. Except as set forth above, in no event shall Tenant be required to be a member of any Shopping Center Merchants' Association or to make any payment to a promotional fund or marketing fund. After the third anniversary of the Commencement Date, Tenant shall not be required to maintain its membership or to make any contribution.

6.13    <u>Landlord's Right to Recapture</u>.

    (a)    Should Tenant for a period in excess of twelve (12) consecutive months cease operating its retail store at the Shopping Center, other than as provided in this Lease, Landlord shall have the right, but not the obligation, on prior notice to Tenant, to recapture the Premises at its then appraised fair market value. If within thirty (30) days of Landlord's written notice electing this option the parties are unable to agree on a value then Landlord shall designate an M.A.I. appraiser who is engaged in appraisal work in the State of Nevada and who is experienced in the appraisal of similar properties. Within ten (10) days following Landlord's appointment of an appraiser, Tenant shall appoint an M.A.I. appraiser who is engaged in appraisal work in the State of Nevada and who is experienced in the appraisal work of similar properties. The two M.A.I. appraisers so selected shall, within ten (10) days following the selection of the second of such appraisers, together select an M.A.I. appraiser who is engaged in appraisal work in the State of Nevada and who is experienced in the appraisal of similar properties. If the first two M.A.I. appraisers are unable to select a third M.A.I. appraiser, the Chief

Judge of the U.S. District Court where the Premises is located, upon application of either Landlord or Tenant, shall select the third M.A.I. appraiser.

(b)  Each of the three (3) appraisers shall forthwith proceed, separately, individually and independently, to appraise and fix and report in writing to Landlord and Tenant the fair market value of the Premises, Tenant's Store Building, and Tenant's leasehold created by this Lease in its then condition without ongoing retail operation within Tenant's Store Building. Each appraiser shall submit in writing to each of Landlord and Tenant a copy of his final written appraisal as promptly as possible, and in all events not later than thirty (30) days after the designation of the third appraiser. Landlord and Tenant shall pay the cost of their respective designated appraiser. The cost of the third appraiser shall be borne equally by Landlord and Tenant.

(c)  The fair market value of the Premises, Tenant's Store Building, and Tenant's leasehold created by this Lease shall be the average of the three appraisals; provided that if any one appraisal varies from the average of the two appraisals closest in value by more than 15%, then that appraisal shall be disregarded and the average of the two appraisals closest in value shall determine the value (the **"Recapture Purchase Price"**).

(d)  Landlord shall have thirty (30) days after the determination of the Recapture Purchase Price within which to confirm its intent to purchase the Premises from Tenant at the Recapture Purchase Price.

(e)  If Landlord makes such election as provided herein, the parties shall close the transaction within thirty (30) days after the date of Landlord's notice at a time and place mutually acceptable to the parties. At the closing, the parties shall execute a termination of this Lease and Tenant shall quit claim its interest in the Tenant's Store Building to Landlord, without warranty, and this Lease shall be terminated as of that date. Landlord shall pay to Tenant the Recapture Purchase Price.

(f)  If Landlord elects not to purchase the Premises for the Recapture Purchase Price or fails to give any notice of its election within the time provided, then Landlord shall have no further right thereafter to the recapture the Premises pursuant to the terms of this section, and Landlord shall pay the cost of its appraiser and the third appraiser; Tenant shall pay for its appraiser only.

6.14  Access Roads. Tenant shall not restrict, alter or otherwise impede the flow of truck traffic along the rear (south) of the Shopping Center, fronting Kelso Dunes Road or vehicular traffic along the roadway immediately in front of Tenant's Store Building.

## VII - SHOPPING CENTER CONTROLS / MAINTENANCE

7.01  After Landlord's initial construction of the Common Areas, as shown on the Site Plan, Landlord and Tenant agree that Tenant shall be responsible for the maintenance of the

Common Areas on the Premises and Landlord shall be responsible for the maintenance of the Common Areas on the Landlord's Parcel. Landlord agrees that so long as any of the improvements constructed by Landlord in the Common Areas on the Premises are under warranty, or if any defect shall arise related to materials or installation of such improvements, then after notice from Tenant, Landlord shall pursue such remedy or warranty before Tenant shall be obligated to pay any such costs; provided, if Landlord is unable, after good faith efforts, to cause such work to be completed under such warranty within sixty (60) days, then the responsible party shall perform such work, subject to reimbursement, if available, from the contractor or supplier.

7.02    Shopping Center Controls.    Subject to the terms of Tenant's Control Area, the parties agree as follows:

(a)    Building Area.    Except for appurtenant loading or delivery docks, buildings and building appurtenances shall only be located within the limit lines for the Permissible Building Areas shown on the Site Plan.

(b)    Floor Area.    Except for Tenant's Store Building, no building shall exceed 120,000 square feet of gross leasable area unless approved by Tenant in writing, which approval may be arbitrarily withheld.

(c)    Maximum Height.    Except for towers, parapets, screening (including architectural elements to screen roof-top equipment) and other similar structures, no building shall exceed twenty eight (28) feet in height.

(d)    Maintenance.    After completion of construction, Landlord and Tenant each covenant and agree to maintain and keep the building improvements and building appurtenances (hereinafter, "building improvements"), if any, located on its Parcel in first-class condition and state of repair, in compliance with all governmental laws, rules, regulations, orders, and ordinances exercising jurisdiction thereover, and in compliance with the provisions of this Lease. Specific standards for maintenance of Common Areas shall be as provided for in this Section.

(e)    Maintenance of Julia Drive.    Should Julia Drive become a private roadway and Landlord is obligated to maintain Julia Drive, then Tenant agrees to pay the lesser of (i) $.08 per square foot of GLA in Tenant's Store Building, and (ii) Tenant's Pro Rata Share of the actual maintenance costs incurred by Landlord (the **"Julia Drive Payment"**). Tenant shall make such payment within thirty (30) days after its receipt of an invoice from Landlord with reasonable supporting documentation. The Julia Drive Payment shall increase by $0.02 per square foot of GLA of Tenant's Store Building at the end of every five year period of the Term, commencing as of the first day of the sixth Lease Year and then at the end of each five Lease Years thereafter. As an example, as of the start of the sixth Lease Year, the Julia Drive Payment shall increase from $0.08 per square foot of GLA of Tenant's Store Building to $0.10 per square foot of GLA of Tenant's Store Building.

(f)     Casualties.  Subject to the provisions of this Lease, in the event any of the building improvements are damaged by fire or other casualty (whether insured or not), the party upon whose Parcel such building improvements are located immediately shall remove the debris resulting from such event and provide a sightly barrier, and within a reasonable time thereafter shall either (i) repair or restore the building improvements so damaged to a complete unit, such repair or restoration to be performed in accordance with all provisions of this Lease, (ii) erect other building improvements in such location, such construction to be performed in accordance with all provisions of this Lease, or (iii) demolish the damaged portion and/or the balance of such building improvements and restore the cleared area to either a hard surface condition or a landscaped condition in which event the area shall be Common Area until a replacement building is erected.

(g)     Parking Area Levies.  Neither Landlord nor Tenant shall impose, or permit imposition of, any charge or fee on, or exact or permit exaction of any other consideration in exchange for the right to enter or depart from the Shopping Center, or park a motor vehicle in the parking areas, unless such charge or fee is lawfully ordered by appropriate governmental authority having jurisdiction over the Shopping Center.

(h)     Shopping Center Signs.  Subject to compliance with applicable codes and laws, signage at the Shopping Center shall conform with the criteria designated at **Exhibit "I"**, attached hereto and made a part hereof.  Notwithstanding the foregoing, Tenant shall have the right to approve any signage within Tenant's Control Area.  Landlord shall maintain the common signage at the entrances of the Shopping Center, as shown on the Site Plan.

(i)     Common Area Lighting.  Lighting for the Common Area on each party's Parcel (other than lighting required for Shopping Center security) shall remain on each day commencing at least one-half (1/2) hour before darkness and thereafter until 10:00 p.m. (or such later time as agreed to by the parties).  Common Area security lighting shall remain on each day during hours of darkness for security purposes.  If any applicable law, rule, statute or ordinance then in effect restricts the hours or amount of lighting herein specified, then the standard prescribed by such restriction shall be adhered to while in effect. The cost of electrical service for Common Area lighting for the Landlord's Parcel and the Premises shall be paid by Landlord and Tenant, respectively.

(j)     Right of Landlord or Tenant to Take Over Common Area Maintenance.  If either Landlord or Tenant fails to maintain the Common Areas on its Parcel in the manner provided for in this Section, then the other party may give written notice of such failure.  If the party to whom the notice is sent does not commence to cure such failure within thirty (30) days from the date of such notice, then the other party may send a second notice.  If the party to whom the notice is sent does not commence to cure such failure within fifteen (15) days from the date of such

second notice, then the other party shall have the right, but not the obligation, to perform such maintenance or cause a third party contractor to perform such maintenance of the other party's parcel. All costs reasonably incurred by such curing party shall be paid and/or reimbursed by the other party within 30 days of receipt of an invoice for such costs, with reasonable supporting documentation. If such charges are not paid within such thirty day period, then it shall be deemed additional rent, if the other party is Tenant, or if Landlord, Tenant shall have the right to off-set such costs from rent or other charges otherwise due to Landlord under the terms of this Lease.

(k)     Parking Ratio and Requirements. The parties agree that the Shopping Center as a whole, and the Premises and Landlord's Parcel individually, shall comply with the Required Parking Ratio. Notwithstanding the foregoing, any use that may require a greater ratio of parking shall conform with such required ratio. Each party shall have the right to reconfigure parking within its Parcel, so long as the Required Parking Ratio is maintained, provided that the layout and size of parking within the Tenant's Control Area shall not be reconfigured without the prior written consent of the Tenant.

7.03   Maintenance. The Common Areas shall be maintained to the following standards:

(a)     all hard-surfaced portions of the Common Areas and improvements shall be swept at reasonable intervals sufficient to maintain the same in a clean condition before the retail stores within the Entire Tract open for daily business with the public;

(b)     all sidewalks shall be swept and washed at intervals sufficient to maintain the same in a clean condition, and all surface waters shall be promptly removed;

(c)     all public trash and rubbish containers located in the Common Areas for the use of invitees shall be emptied at reasonable intervals, and shall be washed at intervals sufficient to maintain the same in a clean condition;

(d)     all landscaping shall be properly maintained, including irrigation, removal of weeds and foreign matter, and trimming, removal and replacement of dead plant materials;

(e)     all hard-surfaced markings shall be inspected at regular intervals and promptly repainted as they become unsightly or indistinct from wear and tear or other cause;

(f)     all sewer catch basins shall be cleaned on a schedule sufficient to maintain all sewer lines in a free flowing condition; and all mechanical equipment which is part of storm and sanitary sewer facilities shall be regularly inspected and kept in proper working order;

(g)     all asphalt paving shall be inspected at regular intervals and maintained in a good condition;

(h)     all surface utility facilities servicing the Common Areas, including, but not by way of limitation, hose bibs, standpipes, sprinklers and domestic water lines shall be inspected at regular intervals and promptly repaired or replaced, as the occasion may require, or upon the occurrence of any defect or malfunctions;

(i)     all common utility facility amenities, benches and institutional, directional, traffic and other signs shall be inspected at regular intervals and maintained in a clean and attractive condition; and

(j)     all lamps on lighting standards or otherwise on the Common Areas shall be inspected at regular intervals, and all lamps shall be promptly replaced when no longer properly functioning.

## VIII - DAMAGE AND DESTRUCTION

8.01    Damage and Destruction of Shopping Center

(a)     Common Areas. If there is a casualty to any of the elements comprising the Common Areas, then the party on whose parcel such damage has occurred shall be responsible for the repair or replacement of such damage.  On any such casualty, each party shall be required to repair or restore such Common Areas located on such party's respective Parcel.

(b)     Major Stores. If there is a casualty to any of the buildings identified as Major Stores, then, if such casualty occurs during Tenant's Operating Covenant, Landlord shall be obligated to repair or restore at least 60% of the aggregate Gross Leasable Area of the Major Stores as existed prior to the casualty. Notwithstanding the foregoing, Landlord may, on written request to Tenant, request either a different configuration to the Major Store buildings or request to consolidate or reduce the size of such Majors.  Tenant shall respond to such request within thirty (30) days of receipt, so long as the request includes reasonable detail as to the proposed changes to the Major Stores. Notwithstanding the foregoing, the reconfigured Major Stores cannot be consolidated to more than 120,000 s.f. in any one building space, and shall otherwise conform with the applicable provisions of this Lease.

(c)     Pads. If there is a casualty to any improvements located on the pads at the Shopping Center, or to Shops B or Building D-1, Landlord shall have no obligation to replace such buildings, provided that the site is promptly cleared and paved over by Landlord for parking.  In such event, the pad shall be considered Common Area and maintained as provided for in this Lease.

(d)     Tenant's Right to Terminate. If Landlord fails to replace any building required to be replaced within a reasonable period of time after the date of the casualty, then Tenant may send notice to Landlord.  If Landlord does not then complete such repair within one hundred twenty (120) days after the date of such notice from Tenant subject to force majeure events, then Tenant shall have the right to

terminate this Lease.

(e)   <u>Construction Requirements</u>.  Any building or other improvements that Landlord is required to rebuild or repair pursuant to this Lease will be rebuilt and ready for occupancy within 18 months from the time of the loss or destruction subject to force majeure events.  Work, repair or reconstruction, once started by Landlord, will be carried through continuously and diligently to conclusion.

8.02   <u>Damage and Destruction of Tenant's Store Building</u>

(a)   <u>Restoration</u>.  If Tenant's Store Building is damaged or destroyed by fire or other catastrophe during the first eight years of Tenant's Operating Covenant, then Tenant shall replace or restore Tenant's Store Building within 24 months from the date of the casualty, subject to force majeure events.  After the expiration or earlier termination of Tenant's Operating Covenant, Tenant shall have no obligation to rebuild and restore Tenant's Store Building.

(b)   <u>Recapture</u>.  If Tenant's Store Building is damaged or destroyed by fire or other catastrophe after the first eight years of Tenant's Operating Covenant, and Tenant does not operate in Tenant's Store Building for twelve consecutive months after such casualty (excluding periods during which Tenant is seeking permits or approvals to rebuild, or is in the process of rebuilding Tenant's Store Building), the Landlord shall have the right to elect to recapture the Premises, in its "as is" condition, in the manner provided in Section VI of this Lease.

(c)   <u>Tenant's Lease Obligations</u>.  Except as provided in Section 8.01(d) and Section 8.02(b) hereof, the damage, destruction or partial destruction of any building or other improvement which is part of the Premises shall not release Tenant from its obligations under this Lease.

8.03   <u>Site Clearance</u>.  If any buildings are not required to be rebuilt pursuant to Section 8.01 or Section 8.02, the properties will be promptly cleared and left in a sightly and safe condition.


## IX - INDEMNIFICATION AND INSURANCE

9.01   <u>Indemnification</u>

(a)   <u>Landlord's Indemnity and Defense Obligations</u>.

(i)   Landlord waives any right of contribution and shall indemnify Tenant, its directors, officers, employees and agents against, and hold Tenant, its directors, officers, employees and agents harmless from, all claims, actions, losses, damages, costs, expenses and liabilities (except those caused by the willful misconduct or negligent acts or omissions of Tenant,

its agents, contractors or employees), arising out of actual or alleged injury to or death of any person or loss of or damage to property in or upon the Landlord's Parcel or caused by the willful misconduct or negligent acts of Landlord, its agents, contractors or employees, including injury to or death of, or loss of or damage to any property of, Tenant, its directors, officers, employees, agents, invitees, licensees or others.

(ii)    Landlord shall defend Tenant, its directors, officers, employees and agents against any and all claims and actions described in Section 9.01(a)(i) hereof.

(b)    <u>Tenant's Indemnity and Defense Obligations</u>

(i)    Tenant waives any right of contribution and shall indemnify Landlord, its constituent partners, and its and their directors, officers, employees and agents against, and hold Landlord, its constituent partners, and its and their directors, officers, employees and agents harmless from, all claims, actions, losses, damages, costs, expenses (including, but not limited to, attorneys' fees) and liabilities (except those caused by the willful misconduct or negligent acts or omissions of Landlord, its agents, contractors or employees), arising out of actual or alleged injury to or death of any person or loss of or damage to property in or upon the Premises or caused by the willful misconduct or negligent acts of Tenant, its agents, contractors or employees, including injury to or death of, or loss of or damage to any property of, Landlord, its directors, officers, employees, agents, invitees, invitees, licensees or others.

(ii)    Tenant shall defend Landlord, its constituent partners, and its and their directors, officers, employees and agents against any and all claims and actions described in Section 9.01(b)(i) hereof.

9.02    <u>Tenant's Insurance</u>.  Subject to Tenant's right to self-insure, Tenant shall pay for and maintain, during the Term of this Lease, the following policies of insurance covering the Premises, which insurance shall be obtained from insurers rated "A-VIII" or better by Best's Insurance Reports or its equivalent:

(a)    Workers' Compensation Insurance covering all costs, benefits and liabilities under State Workers' Compensation and similar laws for employees of Tenant and Employer's Liability Insurance, with limits of $500,000 per accident or disease and $500,000 aggregate by disease.

(b)    Commercial General Liability Insurance covering Tenant's operations at the Premises, including, but not limited to, coverage for premises/operations, products/completed operations, contractual and personal/advertising injury liabilities with combined single limits of $5,000,000 per occurrence, for bodily injury and property damage, including Landlord as additional insureds (as defined in ISO 20 26 11 85).

(c)     "All-Risk" Property Insurance upon Tenant's Store Building, building improvements, personal property owned by Tenant and improvements on the Premises owned by Tenant, including, but not limited to, those perils generally covered on a Causes of Loss - Special Form, including fire, extended coverage, windstorm, vandalism, malicious mischief, and sprinkler leakage coverage in the amount of 90% of full replacement cost, including Landlord as an additional insured, as its interest may appear.

Subject to Tenant's right to self-insure, Tenant shall pay for and maintain, or require its contractor to maintain, during the construction of Tenant's Store Building, a policy of builder's risk insurance on Tenant's Store Building in an amount equal to the full replacement cost of such improvements, including Landlord as an additional insured, as its interest may appear.

Anything contained herein to the contrary notwithstanding, Tenant has the right to self-insure any of Tenant's insurance obligations under this Lease provided that Tenant has a net worth of at least $100,000,000.

No insurance policy obtained by Tenant to satisfy the requirements of this Section 9.02 shall be subject to cancellation or material change without at least 30 days' prior written notice to Landlord. The insurance provided by such insurance policy shall be deemed primary insurance with respect to the Premises, and any insurance provided by or on behalf of Landlord shall be in excess of any insurance provided by such policy. On written request of Landlord, Tenant shall furnish Landlord insurance certificates evidencing the polices required to be maintained hereunder (or, in the event Tenant has elected to self-insure, a statement that Tenant has elected to self-insure and evidence of the amount of Tenant's net worth).

9.03   <u>Landlord's Insurance</u>. Landlord shall pay for and maintain, from the date of this Lease through the end of the Term, the following policies of insurance covering the Landlord's Parcel, which insurance shall be obtained from insurers rated "A-/VIII" or better as defined in the then-current edition of Best's Insurance Reports (or the equivalent thereof if Best's Insurance Reports is no longer published):

(a)     If Landlord has employees working on the Entire Tract, Workers' Compensation Insurance covering all costs, statutory benefits and liabilities under State Workers' Compensation and similar laws for employees of Landlord, and Employer's Liability Insurance with limits of $500,000 per accident or disease and $500,000 aggregate by disease. In addition, Landlord shall require that all contractors hired by Landlord maintain the same Workers' Compensation Insurance and Employer's Liability Insurance for such contractor's employees and will require all subcontractors to maintain such insurance and Landlord agrees to indemnify, defend and hold Tenant harmless from any loss, injury, damage or liability that Tenant may suffer as a result of any such contractor or subcontractor failing to maintain such insurance.

(b)     Commercial General Liability Insurance covering Landlord's operations on the Landlord's Parcel with coverage for premises/operations, products/completed operations, contractual and personal/advertising injury liabilities with combined

single limits of $5,000,000 per occurrence for bodily injury and property damage, including Tenant as an additional insured (as defined in ISO Form CG 20 26 11 85 or its equivalent).

(c)     If Landlord uses leased or owned motor vehicles on the Landlord's Parcel, Motor Vehicle Liability Insurance with coverage for all owned, non-owned and hired vehicles with combined single limits of liability of $3,000,000 per occurrence for bodily injury and property damage.

(d)     "All-Risk" property insurance with commercially reasonable deductibles upon all buildings, building improvements and personal property owned by Landlord and all alterations on the Landlord's Parcel, including but not limited to, those perils generally covered by Causes of Loss - Special Form, including fire, extended coverage, wind storm, vandalism, malicious mischief, sprinkler leakage, flood and earthquake coverage in the amount of 90% of the full replacement cost and with ordinance and law coverage.

The specified limits of insurance may be satisfied by any combination of primary or excess/umbrella liability insurance policies.

No insurance policy obtained by Landlord to satisfy the requirements of this Section 9.03 shall be subject to cancellation or material change without at least 30 days' prior written notice to Tenant. The coverage provided by such insurance policy shall be deemed primary insurance as to the Entire Tract (other than the Premises) and any insurance provided by or on behalf of Tenant shall be in excess of any insurance provided by such policy. Landlord shall furnish Tenant, or cause to be furnished to Tenant, concurrently with the execution of this Lease, and prior to the inception of each successive policy period, insurance certificates evidencing the insurance required to be maintained hereunder. Landlord may carry all insurance required hereunder under one or more blanket policies.

9.04    Waivers of Subrogation.  Any other provisions herein to the contrary notwithstanding, Landlord and Tenant each releases the other and, on behalf of its insurers, waives its entire right to recovery against the other for loss or damage to the waiving party and its property located on the Entire Tract to the extent that the loss or damage is customarily insurable by a Special Form property insurance policy, including any bodily injury, personal injury, death, or loss of use, to the extent covered by insurance. Landlord and Tenant agree to furnish to each insurance company that has or will issue Special Form policies on their respective portions of the Entire Tract notice of the terms of the mutual waivers contained herein and to have the insurance policies properly endorsed, if necessary, to acknowledge the subrogation waivers contained herein.

## X - REAL ESTATE TAXES AND ASSESSMENTS

10.01   Real Estate Taxes on the Shopping Center.  Landlord shall pay, prior to delinquency, all Real Estate Taxes and special assessments against the Entire Tract and the Premises, except as provided for in Section 10.02. Tenant shall have no obligation to pay Real Estate Taxes on any part of the Shopping Center except the Premises.

10.02   Real Estate Taxes on the Premises.   From and after the Commencement Date, Tenant shall be responsible for Real Estate Taxes (but not special assessments other than as related to Tenant's Store Building) and any tax on the personal property of Tenant related to the Premises.

(a)   Creation of Separate Tax Parcel.   Landlord shall use reasonable efforts to cause the Premises (including Tenant's Improvements) to be assessed for Real Estate Taxes as a separate tax parcel on or before the Commencement Date.

(b)   Taxes with Separate Tax Parcel.   Tenant shall pay directly to the taxing authority Real Estate Taxes on the Premises (including Tenant's Improvements) for any period after the Commencement Date during which the Premises constitute a separate tax parcel.   With Landlord's consent, which shall not be unreasonably withheld, Tenant may contest any such Real Estate Taxes and, if permitted under applicable law, may withhold payment pending resolution of such contest.

(c)   Taxes without Separate Tax Parcel.   Landlord shall pay Real Estate Taxes levied on the Entire Tract (or any real property that includes the Premises) and Tenant's Improvements with respect to any period during which the Premises are not separately assessed for Real Estate Taxes.   In such event, Tenant shall reimburse Landlord for that portion of Real Estate Taxes paid by Landlord levied with respect to the Premises for the period after the Commencement Date, subject to Tenant's right to audit.   The amount of such reimbursement shall be negotiated between Landlord and Tenant on an equitable basis.   Tenant shall pay Landlord any reimbursement due under this Section 10.02(c) after receiving evidence of payment of such Real Estate Taxes by Landlord and within thirty (30) days after the parties have agreed upon the amount due from Tenant.

(d)   Disposition of Rebates.   Tenant shall be entitled to receive its pro rata share of any net rebates awarded to Landlord on account of any taxes paid by Landlord for which Landlord has been reimbursed by Tenant.   Landlord will, on the request of Tenant, execute any receipts, assignments or other acquittances that may be necessary to secure the recovery of any such rebates, and will pay over to Tenant any such rebates that may be received by Landlord, after deducting the reasonable costs incurred by Landlord.

10.03   Tax Incentives.   Any tax or financial incentives which are received by Landlord attributable to Tenant's presence at the Shopping Center (including, but not limited to sales tax and property tax rebates, property tax exemptions, and refunds based upon incremental sales) shall be passed through to Tenant by Landlord.

10.04   Indemnity by Landlord.   Landlord shall indemnify Tenant against and hold Tenant harmless from any Real Estate Taxes levied on the Entire Tract, except for Real Estate Taxes payable by Tenant hereunder.

10.05   Indemnity by Tenant.   Tenant shall indemnify Landlord against and hold Landlord harmless from any Real Estate Taxes payable by Tenant hereunder.

## XI - DEFAULTS AND REMEDIES

11.01 <u>Defaults</u>

(a) <u>Non-Payment of Rent</u>. If Tenant defaults in the payment of rent or any other amount payable to Landlord hereunder and fails to cure the default within 30 days of its receipt of written notice of default by Tenant, Landlord may bring suit to recover rent due, plus interest at the Prime Rate, and unpaid after the 30-day period. Landlord's suing to recover rent shall not waive or affect any other right or remedy that Landlord may have at law or in equity.

(b) <u>Failure to Meet other Obligations</u>. If Tenant is in default in performing any of the terms or provisions of this Lease, other than the provisions for the payment of rent or any other amount payable to Landlord hereunder, receives written notice of the default from Landlord, and fails to cure the default within 30 days after receipt of such notice by Tenant or, if such default is of a character as to require more than 30 days to cure and Tenant fails to use reasonable diligence in curing the default after receipt of such notice, then Landlord, in addition to any other remedies that Landlord may have, may cure the default and recover from Tenant the full amount so expended by Landlord plus interest at the Prime Rate.

(c) <u>Landlord's Default</u>. If Landlord is in default in performing any of the terms or provisions of this Lease, receives written notice of such default from Tenant, and fails to cure such default within 30 days after receipt of such notice or, if such default is of a character as to require more than 30 days to cure and Landlord fails to use reasonable diligence in curing such default after receipt of such notice, then Tenant, in addition to any other remedies that Tenant may have, may cure such default, at the expense of Landlord, and may deduct from all amounts payable by Tenant under this Lease all sums expended by Tenant in connection therewith, plus interest at the Prime Rate, until Tenant is reimbursed in full.

(d) <u>Equity Proceedings</u>. If any of the covenants, conditions or other provisions of this Lease are breached, Landlord or Tenant shall have the right to obtain an injunction or other appropriate judicial relief against the other.

(e) <u>Tenant's Performance of Landlord's Obligations</u>. If, at any time, Tenant (i) in good faith takes the position that Landlord has failed to perform its obligations under this Lease; (ii) undertakes to cure such failure on the part of Landlord to perform such obligations; and (iii) withholds rent and/or other charges to the extent permitted under the terms of this Lease after Tenant cures a default of Landlord in order to receive reimbursement for the funds expended in undertaking such cure, then, in such event, Landlord shall not have the right to terminate this Lease or to evict Tenant for the non-payment of rent or other charges nor shall Landlord have the right to commence a proceeding for forcible entry and detainer or other similar action to recover possession of the Premises from Tenant for such non-payment until such dispute is resolved. In the event that a court of competent jurisdiction rules that Tenant did not have the right to withhold rent or other payments to Landlord under the terms of this Lease, then, upon the issuance of such a judgment, Tenant shall pay to Landlord the amount so withheld plus interest at the Prime Rate.

11.02  Remedies

    (a)    All remedies conferred on Landlord and Tenant shall be deemed cumulative and no one exclusive (unless otherwise provided herein) of the other, or of any other remedy conferred by law.

    (b)    At any time that Sears, Roebuck and Co., or an affiliate, is no longer tenant under this Lease, then in addition to the remedies stated herein for a default by Tenant, Landlord shall have the right of eviction and other rights as may be provided under applicable law.

## XII - EMINENT DOMAIN

12.01  Total Condemnation.  If the entire Premises and/or all or substantially all of the Major Store space on the Landlord's Parcel are appropriated or taken under the power of eminent domain by any public or quasi-public authority, or if access to the Shopping Center from any of the Access Points is taken and not adequately replaced or relocated, in Tenant's commercially reasonable determination, then the Term of this Lease shall terminate and expire as of the date of such taking, and Landlord and Tenant shall thereupon be released from any liability thereafter accruing hereunder.

12.02  Partial Condemnation.

    (a)    If a portion of the Premises shall be so appropriated or taken and the remainder of the Premises shall not, in Tenant's reasonable commercial determination, be suitable for the use then being made of the Premises by Tenant, or if any portion of the parking area of the Premises is taken such that the parking ratio on the Premises would be reduced to less than 4.5 spaces/1000 s.f. of GLA, or any Access Point is taken and not replaced or substituted by Landlord to Tenant's reasonable satisfaction, or if such taking reduces the number of parking spaces within Tenant's Parcel Pick-up Area, as shown on the Site Plan, to less than 15 spaces, then Tenant shall have the right to terminate this Lease as of the date of such taking on giving to Landlord notice of such termination within 45 days after Landlord has given Tenant notice of such appropriation or taking.  If Tenant does not exercise such right of termination, then this Lease shall continue in full force and effect as to the part not taken, and Landlord or Tenant, as applicable, shall restore the remainder of the Common Areas of the Shopping Center, and Fixed Rent shall be adjusted proportionately as to any loss of the Premises.

    (b)    If all or a portion of the improvements, other than the Major Stores,  on the Landlord's Tract are taken, then Landlord shall promptly replace, and restore the Shopping Center, or raze the improvements which have been adversely impacted and clear and pave the affected areas as parking areas.

12.03  Condemnation Awards.  In any condemnation, Landlord and Tenant each may seek and obtain separate awards.

## XIII - HAZARDOUS MATERIALS

13.01   <u>Landlord's Representations and Warranties</u>.  Landlord hereby represents and warrants to Tenant that to Landlord's actual knowledge, except as may be disclosed in the materials listed in **Exhibit "G"** attached hereto, no Hazardous Material has been used, disposed of or is located on or in either the buildings constructed, if any, in the Entire Tract or the soil and ground water on or under the Entire Tract and that there are no underground storage tanks on or under the Entire Tract.

13.02   <u>Landlord's Covenants</u>

    (a)   Landlord shall comply with all Environmental Laws with respect to  the Entire Tract (other than Tenant's Hazardous Material), including, without limitation, any requirement to perform repair, cleanup or detoxification work or prepare any closure or other plans, and shall diligently pursue to completion all such work. Landlord shall pay all costs and expenses of such compliance and performance except for costs and expenses relating to Tenant's Hazardous Material.

    (b)   Landlord waives any right of contribution and shall indemnify Tenant, its directors, officers, employees and agents against, and hold Tenant, its directors, officers, employees and agents harmless from, any and all claims, actions and liabilities arising from (i) Hazardous Material brought or released (or permitted to be brought or released) onto the Entire Tract by Landlord, its agents, contractors or employees or (ii) the breach of any representation, warranty or covenant contained in Section 13.01 hereof or this Section 13.02, and all costs and expenses, including attorneys' fees, paid or incurred by Tenant in defending or otherwise responding to, such claims, actions and liabilities.

    (c)   Landlord shall diligently pursue any responsible parties in connection with the performance of any cleanup, repair, detoxification or other remedial action with respect to Hazardous Material to which Landlord is not obligated to take any action.

13.03   <u>Tenant's Covenants</u>.  Tenant hereby covenants to Landlord as follows:

    (a)   Tenant shall comply with all Environmental Laws with respect to Tenant's Hazardous Material including, without limitation, performance of any repair, cleanup or detoxification work and the preparation of any closure or other plans, and shall diligently pursue to completion all such work and shall pay all costs and expenses of such compliance and performance.

    (c)   Tenant waives any right of contribution and shall indemnify Landlord, it constituent partners and its and their officers, employees and agents against, and hold Landlord, its constituent partners and its and their directors, officers, employees and agents harmless from, any and all claims, actions and liabilities arising from Tenant's Hazardous Material and all costs and expenses, including attorneys' fees, paid or incurred by Landlord in defending or otherwise responding to, such claims, actions and liabilities.

## XIV - END OF TERM

14.01   <u>Effect of Tenant's Holding Over</u>.  Any holding over after the expiration of the Term of this Lease shall be construed to be a tenancy from month to month, at 150% of the monthly rental required to be paid by Tenant for the period immediately prior to such expiration and shall otherwise be on the terms and conditions herein specified, so far as applicable.

14.02   <u>Redelivery of Premises</u>.  Tenant shall, at the expiration or sooner termination of the Term of this Lease, peaceably and quietly quit and surrender to Landlord the Premises in broom clean condition subject to the other provisions of this Lease.

14.03   <u>Disposition of Improvements at End of Term</u>.   Upon expiration or termination of the Term, Landlord shall become the owner of Tenant's Improvements.

## XV - GENERAL PROVISIONS

15.01   <u>Notices</u>.  Notices shall be in writing and shall be deemed given:  (a) two business days after being deposited with the United States Postal Service, as registered or certified mail, return receipt requested, bearing adequate postage, or (b) one business day after being deposited with a reputable overnight express carrier (e.g. Federal Express, Airborne, Express Mail, UPS) for guaranteed next business day delivery, or (c) upon receipt if personally delivered.  Notices shall be addressed as follows:

| | |
|---|---|
| Tenant: | Sears, Roebuck and Co.<br>3333 Beverly Road<br>Department 824RE<br>Hoffman Estates, Illinois  60179<br>Attn: Vice President - Real Estate |
| Copy to: | Sears, Roebuck and Co.<br>3333 Beverly Road<br>Department 766X<br>Hoffman Estates, Illinois  60179<br>Attn: Associate General Counsel - Real Estate |
| For Real<br>Estate Tax<br>Invoices: | Sears, Roebuck and Co.<br>Real Estate Taxes<br>Department 768TAX<br>3333 Beverly Road<br>Hoffman Estates, Illinois  60179 |
| For Rent and<br>Other Real<br>Estate Invoices: | Sears, Roebuck and Co.<br>Real Estate Payments<br>Department 824RE<br>3333 Beverly Road<br>Hoffman Estates, Illinois  60179 |

|  |  |
|---|---|
| With a copy to: | Sears Store Manager<br>Sears, Roebuck and Co. |
| Landlord: | Warm Springs Promenade, L.L.C.<br>c/o Kimco Realty Corporation<br>3333 New Hyde Park Road, Suite 100<br>New Hyde Park, New York 11042-0020 |
| With a copy to: | Warm Springs Promenade, L.L.C.<br>c/o Kimco Realty Corporation<br>3333 New Hyde Park Road, Suite 100<br>New Hyde Park, New York 11042-0020<br>Attn: Legal Dept. |

or to any other address furnished in writing by any of the foregoing. However, any change of addresses furnished shall comply with the notice requirements of this Section 15.01 and shall include a complete outline of all current addresses to be used for all parties.

15.02    Waiver.  No provision of this Lease will be deemed waived by either party unless expressly waived in writing signed by the waiving party.  No waiver shall be implied by delay or any other act or omission of either party.  No waiver by either party of any provision of this Lease shall be deemed a waiver of such provision with respect to any subsequent matter relating to such provision, and consent respecting any action by a party shall not constitute a waiver of the requirement for obtaining such party's consent respecting any subsequent action.  Acceptance of rent by Landlord shall not constitute a waiver of any breach by Tenant of any term or provision of this Lease.  No acceptance of a lesser amount than the rent herein stipulated shall be deemed a waiver of Landlord's right to receive the full amount due, nor shall any endorsement or statement on any check or payment or any letter accompanying such check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the full amount due.

15.03    Memorandum of Lease and Transfer and Recording Taxes.  Upon execution of this Lease, a memorandum of this Lease in the form of **Exhibit "J"** attached hereto and by this reference incorporated herein shall be executed by both parties and Landlord shall record such memorandum.  Landlord will pay all transfer and recording taxes, charges and assessments levied, assessed or incurred upon execution, delivery or recordation of this Lease or such memorandum, as they become due.

15.04    Assignment and Subletting.  Subject to the terms of Tenant's Operating Covenant, Tenant shall have the right to assign this Lease or sublease Tenant's Store Building, without the prior consent of Landlord.  In such event, Tenant shall still remain liable for all obligations under the Lease for the remainder of the initial term as well as any exercised

option periods.

15.05    Successors and Assigns.  The covenants and conditions herein contained shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

15.06    Encumbrance of Tenant's Leasehold Interest.  Tenant may, without Landlord's consent, grant a lien on or a security interest in its leasehold interest in the Premises, its right, title and interest in this Lease and in any and all buildings and improvements thereon (a **"Leasehold Encumbrance"**), as security for any indebtedness or obligation of Tenant provided that the grantee of such Leasehold Encumbrance is an institutional lender (a **"Leasehold Lender"**).  If a Leasehold Lender shall have given Landlord notice of the creation of a Leasehold Encumbrance, Landlord shall give to such Leasehold Lender a copy of each notice of any claimed default by Tenant at the same time and whenever any such notice is given to Tenant, addressed to such Leasehold Lender at the address last furnished to Landlord.  Such Leasehold Lender shall thereupon have a period of 30 days more, after service of such notice upon it, for remedying the default or causing the same to be remedied, than is given Tenant after service of such notice upon it.  Such Leasehold Lender, in case Tenant shall be in default hereunder, shall, within such period and otherwise as herein provided, have the right to remedy such default, or cause the same to be remedied.  Landlord will accept performance by the Leasehold Lender of any covenant, condition or agreement on Tenant's part to be performed hereunder with the same force and effect as though performed by Tenant.  If the Leasehold Lender cannot reasonably take the action required to cure the default without being in possession of the Premises, the time of Leasehold Lender to cure the default shall be deemed extended to include the period of time required by such Leasehold Lender to obtain such possession with due diligence; provided, however, that during such period all other obligations of Tenant under this Lease, including the payment of rent and other sums required to be paid by Tenant, are being duly performed.  No Leasehold Lender shall become liable under the provisions of this Lease, unless and until such time as it becomes, and then only for as long as it remains, the owner of the Leasehold Estate.

15.07    Time of the Essence.  Time is of the essence of this Lease, and of each and every covenant, term, condition and provision hereof.

15.08    Broker.  Landlord and Tenant represent to each other that neither has dealt with any broker in connection with the negotiation or execution of this Lease.  Each party hereto shall indemnify, defend and hold the other party harmless from and against any loss, cost, expense or damage arising from any claim for commission or other compensation made by any broker with whom the indemnifying party has dealt.

15.09    Captions.  The captions used in this Lease are for convenience only and are not a part of this Lease and do not in any way limit or amplify the terms and provisions of this Lease.

15.10    Governing Law.  This Lease shall be interpreted and construed under the laws of the State of Nevada.

15.11 <u>No Partnership</u>.  Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent or of partnership or of joint venture or of any association between Landlord and Tenant and neither the method of computation of rent nor any other provision contained in this Lease or any acts of the parties hereto shall be deemed to create any relationship between Landlord and Tenant other than the relationship of landlord and tenant.

15.12 <u>Severability</u>.  Any provision or provisions of this Lease that are or become illegal or legally void shall in no way affect, impair or invalidate any other provision hereof, and the remaining provisions of this Lease shall nevertheless remain in full force and effect.

15.13 <u>Authority</u>.  Each party hereto represents and warrants to the other that it has all requisite corporate or partnership authority, as the case may be, to enter into and perform this Lease.

15.14 <u>Subordination, Non-disturbance and Attornment Agreement</u>.  Landlord shall not record any mortgage or deed of trust against the Sears Parcel without Tenant's prior written consent.  If Tenant does consent, then any lender (a **"Mortgagee"**) shall enter into an agreement with Landlord and such Mortgagee substantially in the form of **Exhibit "K"** attached hereto and by this reference incorporated herein.

15.15 <u>Estoppel Certificates</u>.  Either party shall, within 30 days after receipt of a written request from the other, provide an estoppel certificate substantially in the form of **Exhibit "L"** attached hereto and by this reference incorporated herein.

15.16 <u>Construction</u>.  Each party hereto has participated in the preparation of this Lease and it should be interpreted without reference to any rule of construction requiring that it be construed against the drafter.

15.17 <u>Survival of Indemnities</u>.  Each obligation of either party to this Lease to indemnify, defend or hold the other party harmless from any claim or liability shall survive the expiration or termination of the Term of this Lease.

15.18 <u>Non-Recourse to Landlord</u>.  Notwithstanding anything to the contrary contained in this Lease, in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of this Lease to be observed, honored or performed by Landlord, Tenant shall look solely to the estate and property of Landlord in the land and buildings owned by Landlord comprising the Entire Tract, including any rent or other income derived therefrom, for the collection of any judgment (or any other judicial procedures requiring the payment of money by Landlord), it being agreed that Landlord shall not be personally liable for any such judgment and no other property or assets of Landlord shall be subject to levy, execution or other procedures for the satisfaction of Tenant's remedies.

15.19 <u>Enforcement Costs.</u>  In the event legal action is instituted by Landlord or Tenant to enforce the terms of this Lease or arising out of the breach of any covenant or condition contained in this Lease, the prevailing party will be entitled to receive from the other

party all costs incurred, including, but not limited to, reasonable attorney's fees to be determined by the court in which the action is brought.

IN WITNESS WHEREOF, the parties have caused this Lease to be duly executed and delivered as of the day and year first above written.

**WARM SPRINGS PROMENADE, L.L.C.**
By:  KIMCO DEVELOPERS, INC.
Its: Managing Member

By: _____
      Jerald Friedman
Its:    ~~Executive Vice~~ President

**SEARS, ROEBUCK AND CO.**

By: _____

Exhibits:

| | |
|---|---|
| Exhibit "A" | Site Plan |
| Exhibit "B" | Site Criteria |
| Exhibit "C" | Legal Description of Premises |
| Exhibit "D" | Excluded Uses |
| Exhibit "E" | Prohibited Uses |
| Exhibit "F-1" | Encumbrances Affecting Premises |
| Exhibit "F-2" | Encumbrances Affecting Entire Tract |
| Exhibit "G" | Pad Certification |
| Exhibit "H" | Environmental Reports and Test Results |
| Exhibit "I" | Signage Standards |
| Exhibit "J" | Form of Memorandum of Lease |
| Exhibit "K" | Form of Non-Disturbance Agreement |
| Exhibit "L" | Estoppel Certificate |

# EXHIBIT "A"

SITE PLAN

To be shown:

Recital A – Entire Tract

1.01    Access Points

1.24    PBA

2.02     Premises

2.03    Tenant's Control Area

3.01    On Site and Off Site Improvements

6.09    Tent Sales Area

7.02(g) Shopping Center Signs

12.02(a)  Parcel Pick-Up Area