# EXHIBIT A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    SEARS HOLDINGS CORPORATION,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    February 14, 2019

17                    10:03 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  NAROTAM RAI

**Page 2**

1    HEARING re Notice of Agenda of Matters Scheduled for Hearing

2    on February 14, 2019

3

4    Motion to Extend Exclusivity Period for Filing a Chapter 11

5    Plan and Disclosure Statement / Motion of Debtors Pursuant

6    to Section 1121(d) of the Bankruptcy Code to Extend

7    Exclusive Periods (document #2312)

8

9    Limited Objection of the Official Committee of Unsecured

10   Creditors (document #2544)

11

12   Motion Midwood Management Corp. to Confirm Termination or

13   Absence of Stay Motion for Order Declaring Automatic Stay

14   Inapplicable to Non-Residential real Property Lease

15   (document 932)

16

17   Debtors' Objection (document #2497)

18

19   Midwood Reply (document #2578)

20

21   Motion to Confirm Termination or Absence of Stay Motion for

22   Order Declaring Automatic Stay Inapplicable to Non-

23   Residential Real Property Lease filed by Veronique Urban on

24   behalf of Midwood Management Corp. (document #932)

25

Page 3

1    Motion to Compel Immediate Payment of Postpetition

2    Arrearages; Granting an Administrative Claim; and Compelling

3    Debtors to Assume or Reject Agreement (document #1477)

4

5    Motion of Milton Manufacturing, LLC to (I) Compel the Debtor

6    to Assume or Reject Purchase Orders Related to Craftsman

7    Branded Goods Ordered by the Debtor Being Warehoused in

8    Taiwan, and (II) Grant Related Relief filed by Joel D.

9    Applebaum on behalf of Milton Manufacturing, LLC (document

10   #1479)

11

12   Debtors' Objection (document #2481)

13

14   Debtors' Objection (document #1547)

15

16   Motion for Relief from Stay to Allow Civil Litigation in

17   Action (1) and for Action, (2) To Proceed, and for the

18   Parties to Proceed with Alternative Dispute Resolution (ADR)

19   and Settlement Negotiations to which had Begun Since July

20   27, 2018, with Certificate of Service (document #1006)

21

22   Response of Cyrus Capital Partners, L.P. (document #2470)

23

24   Limited Objection of OCO Capital Partners, L.P. (document

25   #2471)

Page 4

1    Joinder of Och-Ziff Capital Structure Arbitrage Master Fund,

2    Ltd. (document #2474)

3

4    Ex-Parte Motion of the Official Committee of Unsecured

5    Creditors for the Entry of an Order Pursuant to Bankruptcy

6    Code Sections 105 and 1103 and Bankruptcy Rules 2004 and

7    9016, Authorizing the Examination of the CDS Participants

8    (document #1557)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 5

1    A P P E A R A N C E S :

2

3    WEIL, GOTSHAL & MANGES LLP

4        Attorneys for the Debtor

5        767 Fifth Avenue

6        New York, NY 10153

7

8    BY:  SUNNY SINGH

9        RAY S. SCHROCK

10       CANDACE M. ARTHUR

11       GARRETT FAIL

12

13   AKIN GUMP STRAUSS HAUER & FELD LLP

14       Attorneys for UCC

15       One Bryant Park

16       New York, NY 10036

17

18   BY:  PHILIP C. DUBLIN

19       SARA L. BRAUNER

20

21

22

23

24

25

Page 6

1    MILBANK, TWEED, HADLEY & MCCLOY LLP

2         Attorney for Cyrus Partners

3         2029 Century Park East - 33rd Floor

4         Los Angeles, CA 90067

5

6    BY:  THOMAS R. KRELLER

7

8    CLARK HILL

9         Attorney for Milton Manufacturing LLC

10        210 Carnegie Center

11        Suite 102

12        Princeton, NJ 08540

13

14   BY:  NOLA R. BENCZE

15

16   HERRICK, FEINSTEIN LLP

17        Attorney for Proposed Special Conflicts Counsel

18        To the Official Committee of Unsecured Creditors

19        Two Park Avenue

20        New York, NY 10016

21

22   BY:  STEVEN B. SMITH

23        SEAN E. O'DONNELL

24

25

Page 7

1    FARRELL FRITZ P.C.

2        Attorney for Midwood Management Corp.

3        400 RXR Plaza

4        Uniondale, NY 11556

5

6    BY:  PATRICK T. COLLINS

7

8    SEYFARTH SHAW LLP

9        Attorneys for Wilmington Trust, NA as Indenture Trustee

10        and Collateral Agent

11        620 Eighth Avenue

12        New York, NY 10018

13

14    BY:  EDWARD M. FOX

15

16    UNITED STATES DEPARTMENT OF JUSTICE

17        Attorneys for the U.S. Trustee

18        201 Varick Street, Suite 1006

19        New York, NY 10014

20

21    BY:  PAUL SCHWARTZBERG (TELEPHONICALLY)

22

23    APPEARING TELEPHONICALLY:

24    XY PANG

25    ARLENE R. ALVES

1    RAPHAEL ANDREWS

2    NEGISA BALLUKU

3    ALIX BROZMAN

4    SARA COELHO

5    JASON DIBATTISTA

6    TED A. DILLMAN

7    DANIEL M. EGGERMANN

8    WILLIAM P. FENNELL

9    DEBORAH L. FLETCHER

10    GREGG M. GALARDI

11    IVAN M. GOLD

12    KRISTOPHER M. HANSEN

13    TAYLOR B. HARRISON

14    CATHERINE HEIZENRATER

15    ANA LUCIA HURTADO

16    KELLY E. KLEIST

17    MATTHEW KOCH

18    STEVEN KOSSON

19    ZACHARY D. LANIER

20    STEPHANIE C. LIEB

21    TERESA LII

22    MICHASEL G. LINN

23    KATHERINE E. MASSEY

24    MICHAEL MITTELMAN

25    BYRAN OBERG

1   THOMAS ONDER

2   SEAN O'NEAL

3   RICHARD PEDONE

4   JASON M. PIERCE

5   RYAN REINERT

6   JOSH F. SAUL

7   COURTNEY A. SCHAEL

8   PAUL SCHWARTZBERG

9   PETER B. SIROKA

10  CHRIST STAUBLE

11  BRAD SWEENEY

12  EVAN J. ZUCKER

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page 10**

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay, good morning.

3      In re Sears Holdings Corporation.

4              MR. SCHROCK:  Good morning, Your Honor.  Ray

5      Schrock of Weil Gotshal & Manges.  I'm here on behalf of the

6      Debtors.  It's good to be in front of you again, Your Honor,

7      with a substantially smaller audience.

8              THE COURT:  Yes, we could have used the other

9      courtroom, but in any event, here we are.

10             MR. SCHROCK:  Your Honor, first on the agenda is

11     the Debtors' Motion to Extend the Exclusivity Period.  As we

12     notified your Chambers yesterday, we did resolve the limited

13     objection of the Official Unsecured Creditors Committee.

14             THE COURT:  Great.

15             MR. SCHROCK:  I have a revised order.  May I

16     approach?

17             THE COURT:  So, it's, in essence, a 60-day

18     extension?

19             MR. SCHROCK:  It's a 60-day extension, Your Honor,

20     it's a -- we agreed to provide an update on the plan

21     process, which we would anyway, at the next omnibus hearing

22     on March 21st, and for the record, of course, we're going to

23     agree to negotiate with the UCC on the plan in good faith,

24     which we would always do.

25             THE COURT:  Okay.

Page 17

1              THE COURT:  I don't need it.  I think that you've

2      summarized it, unless any of the other parties who

3      (indiscernible) want to add anything.  Okay.  So, you can

4      email that over to Chambers.

5              MR. O'DONNELL:  Thank you, Your Honor.

6              THE COURT:  Thank you.

7              MR. SCHROCK:  Your Honor, I believe we have a

8      couple of third-party motions, but in the vein of minimizing

9      administrative expenses, may I be excused?

10             THE COURT:  Yes.

11             MR. SCHROCK:  Okay.

12             THE COURT:  Okay, thank you.  Okay, so, we were

13     going back to the agenda now, and I think the next matter on

14     the agenda is the Midwood Management Motion.

15             MR. COLLINS:  Good morning, Your Honor.  Patrick

16     Collins, Farrell Fritz on behalf of Midwood Management Corp.

17             THE COURT:  Good morning.

18             MR. COLLINS:  Midwood Management is the agent for

19     Expressway Plaza I and Farmingville Associates.  They are

20     the tenants-in-common, the owners of the property out in

21     Farmington, New York.  There's a shopping center there known

22     as Expressway Plaza.  One of the tenants in the shopping

23     center is Kmart, under a lease entered into in 1991.  A copy

24     of the lease is next to our Motion.  We filed the Motion

25     seeking entry of an order pursuant to § 362(b)(10) of the

Page 18

1   Bankruptcy Code, declaring that the automatic stay does not

2   apply to Landlord's efforts to recover the leased premises

3   from Kmart.  The automatic stay does not apply because the

4   term of the lease is expired.  The term expired by operation

5   of Condition of Limitation provision in the lease, an

6   uncured pre-petition default, in Landlord's pre-petition

7   service of a Notice of Election to treat the term of the

8   lease as expired within ten days on account of a default.

9          THE COURT:  Default is a payment default, right?

10         MR. COLLINS:  Failure to pay additional rent for

11   the Landlord's costs to carry out maintenance at the leased

12   premises, that's correct.

13         THE COURT:  Under 25(a) of the lease?

14         MR. COLLINS:  Correct.  Under New York law, as a

15   result of the condition limitation, the term of the lease

16   was shortened upon landlord's service of the Lease

17   Termination Notice.  The term is shortened from the

18   termination date stated in the lease, to ten days from the

19   date notice was given.

20         THE COURT:  Well, can we stop on that point?

21         MR. COLLINS:  Sure.

22         THE COURT:  What New York law are you referring

23   to?  I mean, the Debtors dispute whether there actually was

24   a default, under 25(a) and (f), that would tender the

25   obligation to pay more of the rent, the roughly over --

Page 19

1   well, over $215,000 of additional rent.

2           MR. COLLINS:  Correct, it has been --

3           THE COURT:  So, what is the -- I mean, that's

4   still in dispute, so, how did it terminate?

5           MR. COLLINS:  It terminated because the Landlord

6   did not respond to -- the Tenant did not respond to the

7   Landlord's Notice of Default and opportunity to cure at all,

8   neither to protest, neither to pay, neither to ask for more

9   time.

10          THE COURT:  Well, it's doing it now.  It's

11  disputed that there was a default.

12          MR. COLLINS:  It is doing it now, after the

13  expiration of the ten-day period in the Lease Termination

14  Notice.  If the Court rules that § 362(b)(10) were to apply,

15  we would, of course, then go to State Court and commence a

16  Landlord-Tenant Action to evict Kmart, and Kmart can arrange

17  whatever defenses it wants in the Landlord-Tenant Action.

18          THE COURT:  So, the reason I asked is, I don't

19  think you cited to me any New York cases that stand for the

20  proposition that, if the Debtor disputes the underlying

21  default that causes the conditional termination, the

22  Landlord automatically has the right to assume that the

23  lease is terminated for all purposes.  Doesn't it have to be

24  a Court determination of that dispute?

25          MR. COLLINS:  As I said, the right of Kmart to

**Page 20**

1    contest the default is still there.  They can assert that in

2    State Court, if they so choose.

3              THE COURT:  Okay.  All right, so --

4              MR. COLLINS:  Or here, if it -- or here.

5              THE COURT:  -- what is the -- but then it hasn't

6    terminated, because that dispute still is live, isn't it?

7              MR. COLLINS:  No, it's terminated, depending on

8    who's right and who's wrong.

9              THE COURT:  But I know, but that hasn't been

10   decided yet, so it's hard for me to see how it's actually

11   terminated, since that issue is still an open issue.

12             MR. COLLINS:  I guess, my view is that if the

13   Landlord is correct, the lease is terminated.

14             THE COURT:  Well, that's right, and if the Debtor

15   is correct, it hasn't.

16             MR. COLLINS:  That's right.

17             THE COURT:  So, it's hard to say it has

18   terminated, because it's an open issue.

19             MR. COLLINS:  But the events have already

20   occurred.  I mean, the events --

21             THE COURT:  That's fair.

22             MR. COLLINS:  -- the events that will lead to a

23   determination as to whether the lease is terminated or not

24   have already occurred.

25             THE COURT:  But you're saying it actually has

Page 21

1    terminated.

2            MR. COLLINS:  Yes.

3            THE COURT:  Are you asking me for a determination

4    today that it has?

5            MR. COLLINS:  I'm asking the Court for a

6    determination of § 362(b)(10), under that provision, that

7    the automatic stay does not apply because the lease is

8    terminated.

9            THE COURT:  But, are you asking on the basis of

10   saying that you want me to decide whether your client is

11   correct that there was, in fact, the default that gave rise

12   to the payment obligation, or that -- or, in the

13   alternative, that the Debtor is correct and I need to decide

14   that issue, or are you basically saying that I should assume

15   that, if the Landlord asserts there's a default, then that's

16   enough for a termination?

17           MR. COLLINS:  We don't dispute that the issue

18   needs to be decided somewhere.

19           THE COURT:  All right.

20           MR. COLLINS:  And that can be here, that can be in

21   Landlord-Tenant court in State Court.

22           THE COURT:  All right.  So, it doesn't seem to me

23   that it's actually terminated.

24           MR. COLLINS:  Once again, I --

25           THE COURT:  For the purposes of this hearing.

Page 22

1              MR. COLLINS:  Well, I --

2              THE COURT:  Which -- I'm not trying to get you to

3     say that your position is incorrect.  I fully understand

4     your position.  All I'm saying is, it doesn't seem to me

5     that it actually has terminated because there's still an

6     open issue.

7              MR. COLLINS:  It's still an open issue, but there

8     are open issues in the other cases where courts --

9              THE COURT:  Actually, I disagree with that

10    completely.  And I also disagree with the meaning of §

11    362(b)(10), which doesn't say, "has terminated," it says,

12    "stated term".

13             MR. COLLINS:  Correct.

14             THE COURT:  When I look at the lease, the term of

15    the lease is stated in Paragraph 2, not in Paragraph 25.

16             MR. COLLINS:  But that's what Policy Realty is all

17    about, Your Honor.

18             THE COURT:  Policy Realty is not really about

19    that.  Policy Realty is about the fact that when a lease

20    terminates for any reason --

21             MR. COLLINS:  Right.

22             THE COURT:  -- it can't be assumed because it's no

23    longer a lease.  That's different than (b)(10).  At least,

24    that's what the editors of Collier's say, and the majority

25    of cases.

Page 23

1          MR. COLLINS:  But Policy Realty dealt with the

2     conditional limitation that -- that's the nature of a

3     conditional limitation, it shortens --

4          THE COURT:  That has already been decided.

5          MR. COLLINS:  -- it shortens the terms of the

6     lease.

7          THE COURT:  There are two different points.

8          MR. COLLINS:  Right, okay.

9          THE COURT:  And, frankly I don't think this was

10    necessary for the decision in Policy Realty, or, I don't

11    think, even briefed to the District Court or the Court of

12    Appeal -- or the Second Circuit.  There -- and Collier's

13    makes this clarification, too: there are two different

14    concepts pertaining to termination of a lease than the

15    Debtors' ability to continue with the lease.  Concept one is

16    really the concept that was issue in Policy Realty, which

17    is, you can't assume a lease that is over, that is done, and

18    you know it's done, because there's no remaining issue.  You

19    can't create a new lease, in other words, you have to live

20    with the lease you have.  That's a function of just the

21    definition in § 365, which is the word, "lease".  If you

22    don't have a lease anywhere because it's over, you don't

23    have it.

24          So, the case law is quite clear, you can't revive

25    a lease if it's over, although, even there, the courts say,

Page 24

1    under New York law, you actually can revive a lease under

2    RPAPL 749 because there's an ability to go back to State

3    Court and say, we consider the issuance of the word,

4    "eviction," Judge, the Debtor is ready to assume the lease

5    under 365, and there are plenty of cases that deal with

6    that: Mad Lolo, Joker Enterprises, et cetera.  That's one

7    set of issues, is the lease over or not?

8            There's a separate set of issues, which are

9    covered by § 362(b)(10), and § 541(b)(2), and that's a much

10   more limited provision that says, if the lease is expired by

11   its stated term, not that it is terminated, but expired by

12   its stated term, then the stay doesn't apply and it's not

13   property of the Estate.  Now, it's pretty easy for people to

14   figure out, including judges.  Even judges could figure this

15   out, that if a lease runs for ten years, that's its stated

16   term, the lease runs for ten years, and you're now in Year

17   11, the lease is over its stated term, it's over.  And

18   Congress said, well, at least in those circumstances, we're

19   not going to engage in any more speculation.  It's over.

20           That's what, I think, § 362(b)(10) and the same

21   provision in 541, are dealing with, not a conditional

22   termination or consequential termination, which are dealt

23   with in the cases that deal with whether you still have a

24   lease or not.  But, all of those cases, and it's the same

25   under New York law, that's why we have Yellowstone

Page 25

1    injunctions, is, if a landlord says the lease is over

2    because you've defaulted and we have this default provision,

3    we can send a notice and if it's not cured, then the lease

4    is terminated, that's a whole separate set off issues where

5    you have controversies.  You have them all the time.  You

6    know, no, Judge, there wasn't a default, you know, they --

7    this is a pretext.  We've been living up to our lease.  And

8    so, that's a whole separate set of issues, and those leases

9    aren't over until it's over.  And that has to be decided by

10    someone.  I don't -- I believe -- I know there are a few

11    cases going the other way, but I believe that Congress

12    understood that distinction, and by using the phrase,

13    "stated term," made it.

14          So, I think you're absolutely right that Policy

15    Realty stands for the proposition that if the lease really

16    is over, for whatever reason, whether it's because the

17    stated term has run, or because there's a you know, a

18    consequential termination, the Debtor can't revive it,

19    although, frankly, there's a lot within that phrase, "the

20    lease is over," because we know that it actually can be

21    revived, even if the Warrant of Eviction is issued, because

22    that's what Mad Lolo and 749 of the RPAPL say.  But, in

23    Policy Realty, that's what it was: it was a consequential

24    breach, it wasn't a term breach, and it was over.  I

25    appreciate that they quote -- they cite 362, but they didn't

Page 26

1    need to, and I think if anyone had actually made the

2    argument to them, they would have gotten it, and I view that

3    application as dicta, as far as § 362(b)(10) and §

4    541(a)(2), though.  It's just a separate -- it's not

5    necessary, and it's against the majority of case law, the

6    leading commentator, and the plain language of the statute.

7             MR. COLLINS:  I would point out to you, it's a

8    District Court decision that was affirmed by the Second

9    Circuit.

10            THE COURT:  I know, but it didn't -- it's dicta on

11   that point, because the lease was over.

12            MR. COLLINS:  But the reason --

13            THE COURT:  And the law is really clear, that if

14   you know the lease is over, if there's no issue about the

15   dispute, then -- I'm not alone in this.  In the Artisanal

16   case, Judge Garrity reached the same result.  It's not over.

17   It's a consequential default, it's disputed.  And there are

18   plenty of other judges that have done the same thing.

19            MR. COLLINS:  Understood.  But I would submit that

20   the reasoning of Policy Realty is sound.  I mean, that's

21   what a conditional limitation is.

22            THE COURT:  It's totally sound in terms of the

23   proposition that, if a lease is truly terminated, for

24   whatever reason, then it cannot be revived.  That's -- it's

25   totally sound on that point.  And that's what the -- you

**Page 27**

1    know, everything else under that case is dicta.

2         MR. COLLINS:  On Policy Realty, it hadn't

3    completely terminated as of the filing date.  The TRO is

4    said to expire later that day, so --

5         THE COURT:  But there was nothing to do.  There

6    was nothing -- there's no way to extend it.  There was no

7    dispute about the default.  They were done, and they weren't

8    in possession.

9         MR. COLLINS:  And they were not in possession.

10        THE COURT:  So, it's -- you know, it's -- listen,

11   you may appreciate that this is not the first time I've

12   dealt with these arguments.

13        MR. COLLINS:  Mm hmm.

14        THE COURT:  And that I think that, obviously,

15   landlord attorneys love Policy Realty, and they frequently

16   cite it for more than it stands for.  I don't blame them for

17   doing that, but you know, it's -- the statute's clear, I

18   believe.  We have to decide this issue, whether there's a

19   consequential default, eventually --

20        MR. COLLINS:  You mentioned Artisanal and Lolo,

21   Your Honor.

22        THE COURT:  Right.

23        MR. COLLINS:  In both of those cases, the outcome,

24   in both of those cases, was that the Court ruled that §

25   362(b)(10) did not apply --

1          THE COURT:  Right.

2          MR. COLLINS:  -- but that the stay was lifted --

3          THE COURT:  Right.

4          MR. COLLINS:  -- to allow litigation somewhere to

5     determine --

6          THE COURT:  That's right.

7          MR. COLLINS:  -- to determine the underlying

8     issue, so --

9          THE COURT:  But you haven't sought that relief.

10          MR. COLLINS:  Well, because -- because 362 --

11     well, because the Sonnax Factors that they cited were in a

12     different context.

13          THE COURT:  I know, but there's no motion for a

14     relief of the stay in front of me.

15          MR. COLLINS:  The Court has discretion to award

16     alternate remedies in the course of the outcome, here.

17          THE COURT:  Well, I don't know -- I haven't even

18     looked at that.  Is there an arbitration provision in the

19     lease, for example?  I don't know, if there's some sort of

20     ABR in the lease that would be relevant to me?  Related to

21     that, I don't even know when this lease is stated to be

22     assumed, or are they looking to reject it?  I mean, that's

23     clearly a Sonnax Factor.  There's no reason to send this to

24     a State Court litigation if it's going to be rejected

25     anyway.  Then, I'm just -- then I would decide the damages,

**Page 29**

1    if you really want to pursue them, through a proof of claim.

2    So, I think it's premature to -- I mean, I understand why

3    you didn't move for the stay, because I think it's

4    premature.

5              MR. COLLINS:  So, as long as our rights to -- as

6    to the issue as to whether the lease is terminated is

7    preserved, Your Honor.

8              THE COURT:  Oh, clearly.  Clearly is, and you may

9    -- you may be right about that, ultimately.  It may be that

10   your client was perfectly within its rights to declare an

11   emergency and do the parking lot work and bill $215,000 at

12   18 percent interest, which actually, where is that

13   provision, the 18 percent provision?

14             MR. COLLINS:  In 25(f), Your Honor.

15             THE COURT:  Okay.  All right.

16             MR. COLLINS:  If you keep reading, it says that --

17             THE COURT:  All right.  So, it may be perfectly

18   appropriate, but it's a -- given the emails, the Debtors did

19   dispute it when it first -- when they first got the notice.

20             MR. COLLINS:  Yeah, we don't read the emails that

21   way.

22             THE COURT:  Well, I mean, the guy says, we don't

23   think it's an emergency.

24             MR. COLLINS:  Well, the work was done, and they

25   don't dispute that the work needed to be done.

1          THE COURT:  I don't know.  You know, that's for

2     another day, I think.  So, I will deny the Motion insofar it

3     seeks a declaration that the stay doesn't apply to the

4     Landlord's actions to terminate the lease, and to enforce

5     its rights under the lease, including eviction, and related

6     proposition that, under § 541, the lease isn't property of

7     the Estate.  That denial, though, is clearly without

8     prejudice to the Landlord's contention that, on a proper

9     record, with you know, proper procedures, which I'm assuming

10    would include discovery under the Part VII rules, that, in

11    fact, the default that resulted in the assertion that

12    another $215,000 and change was owing, in fact, did occur,

13    and was -- that there's no defense to that default.

14          There is a related proposition that I haven't

15    given a whole lot of thought to, which is that the default

16    here is a payment default, and the Notice in respect of the

17    termination because of the payment default, didn't occur

18    until the post-petition period.  You may well have a

19    response to that.  I think I understand what it is, but that

20    may affect the analysis, too, as opposed to a performance

21    default that, frankly, can't -- you know, you can't rewrite

22    that, if it, in fact, occurred.  But I'm going to, therefore

23    -- you know, the Debtor can send in an Order to that effect.

24    They should run it by you to make sure, you know, the

25    reservation -- I'm not a big one on reserving rights, but I

Page 31

1    think it's worth putting into the Order here.

2            MR. COLLINS:  I think the ruling is clear that the

3    right to argue that the lease is terminated is preserved,

4    and I --

5            THE COURT:  Absolutely is.

6            MR. COLLINS:  -- I appreciate it, Your Honor.

7            THE COURT:  But I -- just to close out the record

8    on this, then, the Motion before me seeks a determination

9    that the lease between the parties here terminated, for

10   purposes of § 363(b)(10), either -- well, in fact, it

11   terminated post-petition.  But § (b)(10) says that the

12   filing of a petition under the Bankruptcy Code does not

13   operate as a stay under subsection (a) of this section, of

14   any act by a Lessor, under a lease of non-residential real

15   property, that has terminated by the expiration of the

16   stated term of the lease before the commencement of, or

17   during a case under this title, to obtain possession of such

18   property.  I'm going to go back and emphasize the phrase:

19   "and has terminated by the expiration of the stated term of

20   the lease".  The leading treatise on bankruptcy, Collier on

21   Bankruptcy, notes, at Paragraph 362(b)(10), quote: "It

22   should be noted that this exception is limited to leases

23   under which the stated term expires, not to leases

24   terminated for other reasons.  Leases completely terminated

25   pre-petition should not be considered property of the Estate

**Page 32**

1   because the Debtor retains to legal or equitable interest

2   after termination, expect, perhaps, possession, to which the

3   automatic stay would apply.  However, a Lessor should be

4   stayed from terminating a lease for non-payment of rent, or

5   other cause, after commencement of a bankruptcy case.

6   Moreover, the Lessor remains stayed from seeking to retake

7   the premises, even after automatic termination of a lease

8   upon an event of default the termination occurs post-

9   petition.  Only when the termination is based on expiration

10   of the agreed term of the lease, may the stay be

11   disregarded," close quote.

12          The most recent case to construe this section, and

13   there's a parallel section in § 541(b)(2) of the Bankruptcy

14   Code, I think, is in re Hotel Equities, LLC, 586 B.R. 870

15   (Bankr. E.D. Mich.) 586 B.R. -- I'm sorry, 2008.  Now, in

16   that case, the lease actually did terminate pre-petition,

17   but not because of the expiration of its stated term.  It

18   terminated because of the consequential termination

19   provision for a breach, and the Court there noted that a

20   number of courts have taken the position that termination,

21   under those circumstances, fits within § 362(b)(10), but

22   takes the view with, I think, the majority of the courts in

23   Collier's that (b)(10), by its plain terms, is much more

24   narrow, and just refers to the stated term of the lease, as

25   opposed to a consequential termination or simple

**Page 33**

1  termination.  The law is somewhat confused in some of the

2  cases cited for the contrary proposition that the Michigan

3  Court disagreed with.  They exacerbate that confusion by the

4  two very related concepts that are articulated by Collier's.

5  One is, termination of a stated term, the other is

6  termination because the lease is over, in other words, for a

7  consequential default.

8      And that's complicated here by the fact that the

9  actual termination did occur post-petition, although the --

10  for a payment default, although the notice was sent pre-

11  petition, following a Default Notice that was pre-petition.

12  But, as I said during your oral arguments, I think some of

13  those cases that don't make the distinction that Collier's

14  makes, and I think that the statute requires, rely, in large

15  part, on in re Policy Realty Corp., 2000 U.S. App. LEXIS

16  8846 (2d Cir. May 2, 2000) in the lower Court District Court

17  opinion that appears at 242 B.R. 121 (S.D.N.Y. 1999).

18      But in that case, there was really nothing left,

19  and the Debtor didn't have possession anyway, so, the second

20  proposition stated by Collier's applies, in the application

21  of § 362(b)(10), I view, as dictum.  That, I believe, is

22  confirmed by a number of opinions, including Judge Garrity's

23  opinion recently in, in re Artisanal 2015, LLC., which is at

24  2017 Bankr. LEXIS 3813, (Bankr. S.D.N.Y. Nov. 3, 2017) at

25  pages 29-33, and Judge Garrity's discussion about how, under

Page 34

1    New York law, the issue of consequential defaults, which

2    this is -- which is what this is, in the facts before me,

3    are dealt with through the Yellowstone injunction process

4    and, even under that process, the fact that a Yellowstone

5    injunction expires does not mean that the lease has been

6    terminated as a result of the consequential default because

7    there has not yet been a determination by a Court that the

8    default occurred.

9           As stated by Warren's Weed New York Real Property,

10   § 82.30, subparagraph 281: "A tenant served with a notice to

11   cure an alleged violation of a lease has two options.  She

12   can either comply with the landlord's demands or litigate

13   the matter.  However," with the landlord's -- "complying

14   with the landlord's demands can be burdensome, however, the

15   lease contains a conditional limitation permitting the

16   landlord to terminate the lease in the event of a tenant's

17   failure to cure the breach prior to the deadline for the

18   cure, the tenant who fails to cure in time will be subject

19   to eviction."  But then, and this is the important part of

20   the section: "In the event the Court ultimately determines

21   that the tenant's conduct constituted a breach of the

22   lease."  That hasn't happened here yet.  There hasn't even

23   been a Warrant of Eviction.  There hasn't been a lawsuit

24   started over the dispute.

25           So, the lease here, I believe, until the dispute

Page 35

1    is resolved some way, and it may be resolved very quickly

2    under some of the theories that the landlord stated in its

3    reply brief, but until the dispute is resolved, the lease is

4    not terminated under the default provisions, and therefore,

5    can still be a live lease where the automatic stay applies.

6    That is separate and apart from the fact that the Debtor

7    here is still in possession, unlike the Debtor in Policy

8    Realty.  Now, their possession may well simply lead to a

9    very quick lift stay order, but it's not, arguably, covered

10   by Policy Realty either.  But I think the main point is

11   that, there is a live lease until the dispute is decided,

12   and therefore the stay still applies.  § 362(b)(10) doesn't

13   apply, it's still property of the Estate, 541(b)(2),

14   therefore, doesn't apply, and the Motion will be denied on

15   that basis.

16           I'll note that, whether a live lease is or isn't -

17   - whether a lease is still alive or not, is a tricky

18   question, even after the issuance of a Warrant of Eviction,

19   given that courts in the Southern District have permitted

20   Debtors, even after the issuance of a Warrant of Eviction,

21   that have convinced the judge to approve assumption on the

22   condition of their warrant being vacated under § 749 of

23   R.P.A.P.L., that the court will still keep the stay in place

24   to let the Debtor under appropriate circumstances, go back

25   to State Court and seek the vacatur of the Warrant of

1    Eviction, as discussed by a number of courts, including

2    Judge Glenn in the Mad Lolo case that the parties have

3    cited.  So, I'm going to ask the Debtors to prepare an

4    order, as I said, and they should run it by you before

5    submitting it to Court.

6        MR. COLLINS:  One housekeeping matter, Your Honor.

7    The Debtor has been paying, and the landlord has been

8    accepting --

9        THE COURT:  I think the landlord should certainly

10   feel free to cash the check without prejudice to these

11   rights.

12       MR. COLLINS:  Yeah, the --

13       THE COURT:  You're not going to getting lured into

14   a finding that you've waived the default by cashing a check.

15       MR. COLLINS:  We would ask that that premise be

16   applied to the real estate taxes, which are now --

17       THE COURT:  Well, if it's covered by the lease, I

18   mean, that's part of the rent.  That's -- you know.

19       MR. COLLINS:  Thank you, Your Honor.

20       THE COURT:  Okay.  That doesn't require the Debtor

21   to pay the $215,000 because that's -- we don't know whether

22   that's actually owing or not.

23       MR. COLLINS:  I understand.

24       THE COURT:  Okay.

25       MR. COLLINS:  Thank you, Your Honor.

Page 37

1            THE COURT:  Okay, thank you.

2            MR. FAIL:  Thank you, Your Honor.  The next item

3    on the agenda are the Motions filed by Milton Manufacturing,

4    LLC.  I'm not sure if Milton's attorneys -- oh, its

5    attorneys are here.

6            MS. BENCZE:  Yes.  Okay.  Nola Bencze of Clark

7    Hill on behalf of Milton Manufacturing, LLC.  Your Honor,

8    we're here on two motions today.  The first Motion is to

9    Compel the Payment of Administrative Expense, Pursuant to §

10   503(b)(1), or in the Alternative, Pursuant to § 503(b)(9).

11   I do note --

12            THE COURT:  And that's with respect to certain

13   purchase orders?

14            MS. BENCZE:  Correct, Your Honor, certain --

15            THE COURT:  Prior to the Motion.

16            MS. BENCZE:  -- of the Craftsman -- Craftsman

17   Tools.

18            THE COURT:  Right.  That were delivered to Sears

19   in California on October 18th.

20            MS. BENCZE:  Correct, Your Honor.

21            THE COURT:  Okay.  Pursuant to pre-petition

22   purchase orders.

23            MS. BENCZE:  Right, correct.  I mean, I think,

24   Your Honor, you know, not to sort of jump into it, but I

25   could jump into it.  There doesn't seem to be a dispute that