# Exhibit A

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

| | |
|---|---|
| STEVEN R. WOLF, AS ADMINISTRATOR OF THE ESTATE OF BREANNA N. AFRICA, DECEASED, | ) No. 2017-1725 ) ) |
| | ) Type of Pleading: |
| Plaintiff, | ) **COMPLAINT IN CIVIL ACTION** ) |
| vs. | ) Judge: Unassigned ) |
| | ) Filed on Behalf of Plaintiff, |
| HUNTER LEASING, LLC, IDEALEASE SERVICES, INC., IDEALEASE, INC., LIBERTY TRANSPORTATION, INC., LANDMARK LEASING, INC., LIBERTY DISTRIBUTION, INC., COLONIAL PARK LOGISTICS, INC. D/B/A LIBERTY TRANSPORTATION, INC., DAVID ELSBURY, HDH GROUP, INC., INNOVEL SOLUTIONS, INC., SEARS LOGISTICS SERVICES, INC., and SEARS OUTLET STORES, LLC, | ) **ESTATE OF BREANNA N. AFRICA, DECEASED** ) ) Counsel for this Party: ) ) Paul A. Tershel, Esquire ) Pa. I.D. No. 30444 ) ) Mary Chmura Conn, Esquire ) Pa. I.D. No. 65488 ) ) ) Jarrod T. Takah, Esquire ) Pa. I.D. No. 208953 |
| Defendants. | ) ) ) |
| | ) **TERSHEL & ASSOCIATES** ) Helena Professional Building ) 55 South Main Street ) Washington, PA 15301 ) ) (724) 228-4700 ) ) ) ) ) **JURY TRIAL DEMANDED** |

**FILED**

MAR 14 2018

J.S. RANKO
PROTHONOTARY

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

| | |
|---|---|
| STEVEN R. WOLF, AS ADMINISTRATOR OF THE ESTATE OF BREANNA N. AFRICA, DECEASED, ) ) ) | No. 2017-1725 |
| ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) ) | |
| HUNTER LEASING, LLC, IDEALEASE SERVICES, INC., IDEALEASE, INC., LIBERTY TRANSPORTATION, INC., LANDMARK LEASING, INC., LIBERTY DISTRIBUTION, INC., COLONIAL PARK LOGISTICS, INC. D/B/A LIBERTY TRANSPORTATION, INC., DAVID ELSBURY, HDH GROUP, INC., INNOVEL SOLUTIONS, INC., SEARS LOGISTICS SERVICES, INC., and SEARS OUTLET STORES, LLC, ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | **JURY TRIAL DEMANDED** |

**NOTICE**

YOU HAVE BEEN SUED in court. IF YOU WISH TO DEFEND against the claims set forth in the following pages, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.

You are warned that IF YOU FAIL to do so, the case may proceed without you and A JUDGMENT may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff. YOU MAY LOSE MONEY OR PROPERTY or other rights important to you.

2

You should take this paper to your lawyer at once.

If you do not know a lawyer, contact:

Lawyer Referral Service
119 South College Street
Washington, Pa. 15301
(724) 225-6710


    3 - 7 . 18
_____
Date

If you cannot afford a lawyer, contact:

Southwestern Pennsylvania Legal Aid
10 West Cherry Avenue
Washington, Pa. 15301
(724) 225-6170


_____
Jarrod T. Takah, Esquire
*Attorney for Plaintiff*

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Steven R. Wolf, as Administrator of the Estate of

Breanna N. Africa, deceased, by and through his undersigned attorneys, **TERSHEL &**

**ASSOCIATES**, Paul A. Tershel, Esquire, Mary Chmura Conn, Esquire, and Jarrod T. Takah,

Esquire, and files this Complaint in Civil Action. In support thereof, Plaintiff avers as follows:

### -Parties-

1.      Plaintiff, Steven R. Wolf ("Mr. Wolf" and/or "Plaintiff"), has been appointed

Administrator of the Estate of Breanna N. Africa, deceased ("Ms. Africa'), by Order of Court,

dated December 8, 2016.   Mr. Wolf maintains a professional address at Kusturiss, Wolf &

Kusturiss, 12 N. Jefferson Ave., Canonsburg, Washington County, Pennsylvania 15317.

2.      Defendant, Liberty Transportation, Inc. ("Defendant-Liberty"), is a Pennsylvania

company and/or business entity, with a principal place of business at 838 Croft Rd., Greensburg,

Westmoreland Co., Pennsylvania 15601.   At all times material hereto, Defendant-Liberty is in

the business of shipping and transporting products by truck and/or vehicle commercially and/or

in interstate commerce.   Defendant-Liberty is registered as an interstate motor carrier for hire

with the United States Department of Transportation (U.S. DOT), is assigned U.S. DOT No.

254513, has operating privileges from U.S. DOT and/or has interstate operating privileges from

U.S. DOT by virtue of MC No. 180417, and/or operates as an interstate motor carrier for hire as

defined by the Federal Motor Carrier Safety Regulations (FMCSR).   At all material times,

Defendant-Liberty acts through its actual, apparent, authorized, and/or ostensible agents,

employees, and/or servants and regularly conducts business throughout the state of Pennsylvania,

including Washington County.

4

3.      Defendant, Landmark Leasing, Inc. ("Defendant-Landmark"), is a Pennsylvania company and/or business entity, with a principal place of business at 838 Croft Rd., Greensburg, Westmoreland Co., Pennsylvania 15601.  At all times material hereto, Defendant-Landmark is in the business of shipping and transporting products by truck and/or vehicle commercially. Defendant-Landmark is registered as an intrastate motor carrier with the U.S. DOT, is assigned U.S. DOT No. 300465, has operating privileges from U.S. DOT, and/or operates as an intrastate motor carrier as defined by FMCSR.  At all material times, Defendant-Landmark acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

4.      Defendant, Liberty Distribution, Inc. ("Defendant-Distribution"), is a Pennsylvania company and/or business entity, with a principal place of business at 838 Croft Rd., Greensburg, Westmoreland Co., Pennsylvania 15601.  At all times material hereto, Defendant-Distribution is in the business of shipping and transporting products by truck and/or vehicle commercially and/or in interstate commerce.  Defendant-Distribution acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

5.      Defendant, Colonial Park Logistics, Inc., d/b/a Liberty Transportation, Inc. ("Defendant-Colonial"), is a Pennsylvania company and/or business entity, with a principal place of business at 838 Croft Rd., Greensburg, Westmoreland Co., Pennsylvania 15601.  At all times material hereto, Defendant-Colonial is in the business of shipping and transporting products by truck and/or vehicle commercially and/or in interstate commerce.  Defendant-Colonial is registered as an interstate motor carrier for hire and/or broker with the U.S. DOT, is assigned U.S. DOT No. 2984571, has operating privileges from U.S. DOT and/or has interstate operating

5

privileges from U.S. DOT by virtue of MC No. 15994, and/or operates as an interstate motor carrier for hire and/or broker as defined by the FMCSR. At all material times, Defendant-Colonial acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

6.      Plaintiff believes that, at all material times, Defendant-Liberty, Defendant-Landmark, Defendant-Distribution, and/or Defendant-Colonial performed separate functions and/or committed separate acts and/or omissions, as set forth throughout this Complaint, so as to independently and/or individually cause the injuries and damages to Plaintiff and/or Ms. Africa, as set forth more fully throughout this Complaint.

7.      In the alternative, Plaintiff believes that, at all material times, Defendant-Liberty, Defendant-Landmark, Defendant-Distribution, and/or Defendant-Colonial were headquartered at the same place, managed and/or operated by the same directors, managers, and/or officers under united control, were undercapitalized, had uncertain and/or blurred distinctions, and/or were alter-egos.

8.      Defendant-Liberty,     Defendant-Landmark,     Defendant-Distribution,     and/or Defendant-Colonial are hereinafter referred to as, collectively, "the Liberty-Defendants," unless otherwise identified individually.

9.      Defendant, Hunter Leasing, LLC ("Defendant-Hunter"), is a Pennsylvania limited liability company and/or business entity, with a principal place of business located at 480 Pittsburgh Rd., Butler, Butler Co., Pennsylvania 16002. Defendant-Hunter is in the business of operating trucks and/or vehicles commercially and/or in interstate commerce and/or in making trucks and/or vehicles available for lease and use commercially and/or in interstate commerce.

Defendant-Hunter is registered as an interstate motor carrier with the U.S. DOT, is assigned U.S. DOT No. 2383163, has operating privileges from U.S. DOT, and/or operates as an interstate motor carrier as defined by the FMCSR. At all times material hereto, Defendant-Hunter acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

10.     Defendant-Hunter affiliates with the Idealease-Defendants, as described more fully throughout this Complaint, which is a large leasing organization that provides commercial motor vehicle leasing and rental services across North America, including the United States of America and Pennsylvania. At all material times, Defendant-Hunter traded and did business as "Hunter-Idealease" through which it operated trucks and/or vehicles commercially and/or in interstate commerce and/or made trucks and/or vehicles, bearing "Idealease" markings, logos, and/or identification devices, available for lease and use commercially and/or in interstate commerce.

11.     Idealease Services, Inc. ("Defendant-Services"), is an Illinois corporation, with a principal place of business located at 430 North Rand Rd., North Barrington, Lake Co., Illinois 60010. Defendant-Services is in the business of affiliating with companies, such as Defendant-Hunter, to lease, rent, and/or provide tractors, trucks, box-trucks, and/or commercial vehicles to be used commercially and/or in interstate commerce. Defendant-Services is registered as an interstate motor carrier/lease company with the U.S. DOT, is assigned U.S. DOT No. 703496, has operating privileges from U.S. DOT, and/or operates as an interstate motor carrier/lease company as defined by the FMCSR. At all times material hereto, Defendant-Services acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

7

12.    Idealease Inc. ("Defendant-Idealease"), is an Illinois corporation, with a principal

place of business located at 430 North Rand Rd., North Barrington, Lake Co., Illinois 60010.

Defendant-Idealease is in the business of affiliating with companies, such as Defendant-Hunter,

to lease, rent, and/or provide tractors, trucks, box-trucks, and/or commercial vehicles to be used

commercially and/or in interstate commerce. At all times material hereto, Defendant-Idealease

acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants

and regularly conducts business throughout the state of Pennsylvania, including Washington

County.

13.    Defendant-Services and/or Defendant-Idealease are hereinafter referred to as,

collectively, "the Idealease-Defendants."

14.    Plaintiff believes and, therefore, avers that, at all material times, the Idealease-

Defendants owned, operated, and/or exclusively controlled and possessed Defendant-Hunter by

virtue of ownership, franchising, licensing, agency, actual, apparent, authorized, and/or

ostensible authority, and/or a business relationship.

15.    Defendant, David Elsbury ("Defendant-Elsbury"), an adult individual, resides at

234 Kennedy Ave., Masontown, Greene Co., Pennsylvania 15461. Plaintiff believes and,

therefore, avers that, at all material times hereto, Defendant-Elsbury operated the subject box-

truck, as described more fully throughout this Complaint, as an actual, apparent, authorized,

and/or ostensible agent, employee, and/or servant of Defendants, as described more fully

throughout this Complaint, who were, at all material times, motor carrier(s) and/or shipper(s), as

defined by the FMCSR.

16.    Defendant, Innovel Solutions, Inc. ("Defendant-Innovel"), is a member of the

Sears Holdings Corporation (NASDAQ: SHLD) family of companies with a principal place of

business located at 3333 Beverly Rd., B2-116B, Hoffman Estates, Cook Co., Illinois 60517.

Plaintiff believes and, therefore, avers that Defendant-Innovel was formerly identified and/or

known as Sears Logistics. Defendant-Innovel is a registered shipper with the U.S. DOT, is

assigned U.S. DOT No. 2796701, has operating privileges from U.S. DOT and/or has interstate

operating privileges from U.S. DOT by virtue of MC No. 914527, and/or operates as a shipper,

as defined by the FMCSR. Plaintiff believes and, therefore, avers that, at all times material

hereto, Defendant-Innovel bears responsibility for all logistical and/or shipping activity at more

than 2,700 Sears-branded and affiliated stores throughout all 50 states, including Pennsylvania,

as well as Puerto Rico and Canada. Plaintiff further believes and, therefore, avers that

Defendant-Innovel provides logistics and/or shipping services to external clients utilizing assets,

resources, and experience to create value. At all material times, Defendant-Innovel acts through

its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and

regularly conducts business throughout the state of Pennsylvania, including Washington County.

17.    Defendant, Sears Logistics Services, Inc. ("Defendant-Sears Logistics"), is a

member of the Sears Holdings Corporation (NASDAQ: SHLD) family of companies with a

principal place of business located at 3333 Beverly Rd., A3-220A, Hoffman Estates, Cook Co.,

Illinois 60517. Plaintiff believes and, therefore, avers that, at all times material hereto,

Defendant-Sears Logistics conducts all logistical and/or shipping activity at more than 2,700

Sears-branded and affiliated stores throughout all 50 states, including Pennsylvania, as well as

Puerto Rico and Canada. Plaintiff further believes and, therefore, avers that Defendant-Sears

Logistics provides logistics and/or shipping services to external clients utilizing assets, resources,

and experience to create value. At all material times, Defendant-Sears Logistics acts through its

9

actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

18.    Defendant, Sears Outlet Stores, LLC ("Defendant-Sears Outlet"), is an Illinois limited liability company, which operates a scratch and dent Sears outlet store at 27 51st St., Pittsburgh, Allegheny Co., Pennsylvania 15201. Plaintiff believes and, therefore, avers that, at all times material hereto, Defendant-Sears Outlet is in the business of moving goods in Pennsylvania and across state lines and/or in hiring, contracting with, and/or utilizing carriers, such as Defendant-Liberty and/or Defendant-Hunter, to deliver goods in Pennsylvania and across state lines in interstate commerce. At all material times, Defendant-Sears Outlet acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

19.    Defendant-Innovel, Defendant-Sears Logistics, and/or Defendant-Sears Outlet are hereinafter referred to as, collectively, the "Sears-Defendants."

20.    Defendant, HDH Group, Inc. ("Defendant-HDH"), is a Pennsylvania company and/or business entity, with a principal place of business at 210 Sixth Ave., 30th Floor, Pittsburgh, Allegheny Co., Pennsylvania 15222. Plaintiff believes and, therefore, avers that Defendant-HDH ordinarily performs insurance brokerage services. However, Plaintiff believes and, therefore, avers that, at all times material hereto, Defendant-HDH rendered safety consultation, management, and/or trouble-shooting and/or risk control and risk control operational services to the Liberty-Defendants, as set forth more fully throughout this Complaint. At all material times, Defendant-HDH acts through its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants and regularly conducts business throughout the state of Pennsylvania, including Washington County.

21. Plaintiff believes and, therefore, avers that, at all material times, Defendant-Hunter and/or the Idealease-Defendants owned the subject box-truck, which is described more fully throughout this Complaint.

22. Plaintiff believes and, therefore, avers that Defendant-Hunter and/or the Idealease-Defendants rented and/or leased the subject box-truck to Defendant-Landmark alone and/or, alternatively, to the Liberty-Defendants.

23. As a result, Plaintiff believes and, therefore, avers that, at all material times, Defendant-Landmark, the Liberty-Defendants, and/or Defendant-Elsbury were authorized and/or permitted to operate the subject box-truck and/or were entrusted with the subject box-truck.

24. Plaintiff believes and, therefore, avers that the Liberty-Defendants and/or Defendant-Elsbury operated the subject box truck in order to execute and/or carry out orders for the Sears-Defendants and/or in furtherance of the business interests of the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or the Sears-Defendants.

25. Plaintiff believes and, therefore, avers that the subject box-truck was the second box-truck rented, leased, and/or entrusted by Defendant-Hunter and/or the Idealease-Defendants to the Liberty-Defendants and Defendant-Elsbury in August/September 2016 as the first box-truck was returned to Defendant-Hunter and/or the Idealease-Defendants due to mechanical issues.

26. Plaintiff believes and, therefore, avers that the Sears-Defendants oversaw, directed, and/or arranged for the delivery and/or trip ("subject delivery and/or trip"), which resulted in the crash, which is described more fully throughout this Complaint.

27. Plaintiff believes and, therefore, aver that, at all times material hereto, the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or the Sears-Defendants, either

11

directly and solely and/or by and through actual, apparent, authorized, and/or ostensible agents,

employees, and/or servants, including Defendant-Elsbury:

    a.  controlled the subject box-truck;

    b.  operated the subject box-truck;

    c.  bore responsibility for the subject box-truck in fact and in law; and/or

    d.  performed – and/or failed to perform – all necessary maintenance of the subject box-truck.

28.    At all times material hereto, the Liberty-Defendants, Defendant-Hunter, the

Idealease-Defendants, and/or the Sears-Defendants acted through actual, apparent, authorized,

and/or ostensible agents, employees, and/or servants, including Defendant-Elsbury, who acted

and/or was acting:

    a.  within the scope of his agency and/or employment with Defendants; and/or

    b.  in furtherance of Defendants' business under the actual, apparent, authorized, and/or ostensible authority, control, and/or right of control of Defendants and/or in the service of Defendants.

29.    At all material times, Defendant-Elsbury, an actual, apparent, authorized, and/or

ostensible agent, employee, and/or servant of Defendants:

    a.  committed acts and/or omissions of a kind and nature for which he was retained and/or employed to perform;

    b.  acted and/or failed to act within the authorized time and spatial limits, set and/or established for him by Defendants; and/or

    c.  acted and/or failed to act during the time frame during which he served the interests and/or purposes of Defendants.

## - INCIDENT FACTS -

30.    At all material times, Defendant-Elsbury operated a 2011 Durastar International box-truck ("the subject box-truck"), which bore Pa. license plate no. YZH5336.

31.    Plaintiff believes and, therefore, avers that, at all material times generally and/or at the time of the subject delivery and/or trip specifically, Defendant-Elsbury was the only driver to whom the subject box-truck was provided and/or entrusted.

32.    At all material times, the subject box-truck had a gross vehicle weight (GAW) in excess of at least 11.5 tons and was used in commercial trucking and/or interstate commerce.

33.    On September 9, 2016, the first recorded CyntrX activity data/reporting of the subject box-truck – from the CyntrX fleet/truck tracking information – occurred at 3:06 a.m. in Adah, Pennsylvania, on the Fayette County side of the Monongahela River.

34.    Based on such CyntrX activity data/reporting, Defendant-Elsbury, as the actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or the Sears-Defendants, started the subject box-truck and thus began driving, driving time, work duty, and/or on-duty time – as the same are defined by the FMCSR – on September 9, 2016 at, at least, 3:06 a.m.

35.    CyntrX activity data/reporting that day shows that Defendant-Elsbury arrived at the Sears-Defendants' 51st Street location at 5:00 a.m. and departed again at 6:11 a.m.

36.    Then, following routes and deliveries determined, directed, ordered, controlled, and/or instructed by the Sears-Defendants and/or the Liberty-Defendants, Defendant-Elsbury visited clients/customers of the Sears-Defendants and/or made deliveries to clients/customers of the Sears-Defendants across state lines into northwest West Virginia.

37.    Plaintiff believes and, therefore, avers that, at all material times, Defendant-Elsbury was required to adhere to the logistics/plans, selected for and/or dictated to him by the Sears-Defendants and/or Liberty-Defendants.

38.    Plaintiff further believes and, therefore, avers that Defendant-Elsbury did not have enough time to safely make all of the deliveries assigned to him:

    a. by and through the logistics/plans/specifications, selected for and/or dictated to him by the Liberty-Defendants and/or the Sears-Defendants; and/or

    b. in a manner that did not violate the FMCSR.

39.    Over the course of September 9, 2016, CyntrX activity data/reporting captured Defendant-Elsbury driving the subject box-truck in the following manner:

    a. 0911 hours – Speeding – 75.9 mph – Interstate 79 Morgantown
    b. 0915 hours – Speeding – 80.9 mph – Interstate 79 Morgantown
    c. 0930 hours – Speeding – 78.6 mph – Interstate 79 Fairmont
    d. 0938 hours – Watch Moving – 78.9 mph – Interstate 79 Fairmont
    e. 0948 hours – Speeding – 75.7 mph – Interstate 79 Bridgeport
    f. 0951 hours – Speeding – 78.2 mph – Interstate 79 Clarksburg
    g. 1001 hours – Speeding – 77.2 mph – Interstate 79 Lost Creek
    h. 1307 hours – Hard braking – 16.3 mph – Copley Road Weston
    i. 1313 hours – Hard cornering – 33 mph – Copley Road Weston
    j. 1319 hours – Hard cornering – 37.2 mph – Copley Road Weston
    k. 1457 hours – Hard cornering – 26.2 mph – Sand Fork Glenville
    l. 1743 hours – Hard cornering – 28.9 mph – Smith Run Weston

40.    At approximately 6:15 p.m., on September 9, 2016 – over 15 hours after Defendant-Elsbury began driving, driving time, work duty, and/or on-duty time – as the same are defined by the FMCSR – he was still working, driving the subject box-truck, carrying goods, and/or performing work-related activities for the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or the Sears-Defendants.

41.    At such time, Defendant-Elsbury operated the subject box-truck in a northerly direction on Interstate-79 northbound, an interstate highway, in Harrison Co., West Virginia.

42.     At the same time, Rhoda Malone ("Mrs. Malone") operated her 2015 Chrysler Town and Country mini-van in a southerly direction on Interstate-79 southbound, an interstate highway, in Harrison Co., West Virginia.

43.     At all times material hereto, Ms. Africa occupied Mrs. Malone's mini-van.

44.     At and/or near mile marker 123, Defendant-Elsbury, suddenly and without warning, left the northbound lanes of travel, crossed the grassy median that divided the northbound and southbound lanes of travel, and traveled into the southbound lanes of travel in the wrong direction.

45.     As a result, a violent collision occurred between the subject box-truck and Mrs. Malone's mini-van when, due to Defendants' negligence, carelessness, recklessness, and/or outrageousness, as set forth more fully throughout this Complaint, Defendant-Elsbury left his proper lane of travel, crossed the entire grassy median, entered into the southbound lanes of travel in the wrong direction, traveled in the southbound lanes of travel in the wrong direction, and struck Mrs. Malone's mini-van head-on.

46.     The subject collision caused fatal injuries to Ms. Africa, 17 years old.

47.     As a direct and proximate result of Defendants' negligence, carelessness, recklessness, and/or outrageousness, as set forth more fully throughout this Complaint, Plaintiff and/or Ms. Africa suffered those injuries and damages, as set forth more fully throughout this Complaint.

48.     Ms. Africa sustained death, serious injuries, scarring and/or disfigurement, as defined by the Pa. Motor Vehicle Financial Responsibility Law and, therefore, is deemed to have selected the full-tort option for the purposes of this crash and/or has selected and/or is deemed to have a full-tort option under the Pa. Motor Vehicle Financial Responsibility Law.

15

## - AUTHORITY FOR WRONGFUL DEATH ACTION -

49.    Plaintiff incorporates herein by reference all of the preceding paragraphs of this Complaint in Civil Action as if each and every one was set forth herein and at length.

50.    Plaintiff, as the Administrator of Ms. Africa's Estate, brings this action and is authorized to do so, pursuant to the Pa. Wrongful Death Act, 42 Pa. C.S.A. § 8301 and Rules 2201, *et seq.*, of the Pa. Rules of Civil Procedure.

51.    Neither Plaintiff nor Ms. Africa commenced any other actions during Ms. Africa's lifetime, and no other actions for her death have been commenced, against the above-named Defendants.

52.    At the time of her death, Ms. Africa had no issue.

53.    Plaintiff brings the within action to recover, on behalf of Ms. Africa's Estate, all damages legally available, including, but not limited to:

> a.    Pecuniary losses, including damages for loss of earnings and/or earning capacity suffered by Ms. Africa, her Estate, and/or her beneficiaries;
>
> b.    Loss of financial support and/or contribution suffered by her Estate and/or beneficiaries;
>
> c.    Funeral and burial expenses;
>
> d.    Medical expenses;
>
> e.    Loss of aid, services, society, comfort, companionship, assistance, and contributions to Ms. Africa's Estate, beneficiaries, and/or next-of-kin;
>
> f.    Administrative expenses, incurred to process her Estate; and
>
> g.    Any and all other damages recoverable under the Pa. Wrongful Death Act.

16

## - AUTHORITY FOR SURVIVAL ACTION -

54.     Plaintiff incorporates herein by reference all of the preceding paragraphs of this
Complaint in Civil Action, as if each and every one were set forth herein and at length.

55.     Plaintiff, as the Administrator of Ms. Africa's Estate, brings this action, pursuant
to the Pa. Survival Act, 42 Pa. C.S.A. § 8302 and 20 Pa. C.S. § 3373.

56.     Plaintiff brings the within action to recover, on behalf of Ms. Africa's Estate, all
damages legally available, including, but not limited to:

       a.   Death;

       b.   Pre-death terror, fear, and suffering;

       c.   Mental and physical pain and suffering;

       d.   Loss of past and future earnings, income, employment-related benefits, and/or
          employment-related fringe benefits;

       e.   Past and future pecuniary losses;

       f.   Loss of enjoyment of life and life's pleasures;

       g.   Great mental suffering, anguish, humiliation, anxiety, and inconvenience; and

       h.   Any and all other damages recoverable under the Pa. Survival Act.

## - KNOWING AND CONSCIOUS DISREGARD FOR SAFETY OF PUBLIC/OTHER MOTORISTS -

57.     Plaintiff believes and, therefore, avers that Defendant-Elsbury entered an agency
and/or employment contract and/or relationship with Defendant-Landmark and/or the Liberty-
Defendants on or about August 27, 2016.

58.     Under such agency and/or employment contract and/or relationship, Defendant-
Elsbury performed services for the Liberty-Defendants, Defendant-Hunter, and/or the Idealease-
Defendants and/or in the subject box-truck on September 7, 8, and 9.

17

59.     On every day that Defendant-Elsbury worked for, was employed by, and/or contracted with the Defendants and/or operated the subject box-truck, he exceeded the hours of service limitations, imposed by federal and state law and regulation.

60.     Specifically, according to CyntrX activity data/reporting, the subject box-truck was operated and, thus, Defendant-Elsbury was driving, on driving time, on work duty, and/or on-duty time – as the same are defined by the FMCSR – for:

      a.   20 hours on September 7, 2016 – from 2:56 a.m. – 11:06 p.m.

      b.   19 hours, 20 minutes on September 8, 2016 – from 3:09 a.m. – 10:35 p.m.

      c.   15 hours, 10 minutes on September 9, 2016 – from 3:06 a.m. – 6:15 p.m., the time of the crash.

61.     According to the same CyntrX activity data/reporting, Defendant-Elsbury failed to take 10 consecutive hours off-duty between shifts and/or driving.

62.     Based on CyntrX activity data/reporting, the subject crash occurred:

      a.   15 hours after Defendant-Elsbury started duty;

      b.   13 hours after he first arrived at the Sears-Defendants 51st St. location;

      c.   12 hours after he departed such location; and

      d.   during a shift that began without him first taking sufficient off-duty time.

63.     The Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or the Sears-Defendants allowed, directed, and/or permitted Defendant-Elsbury to work such long hours, forego sufficient off-duty time, and/or violate the FMCSR and/or knew or should have known, through the exercise of reasonable care, that Defendant-Elsbury was working such long hours, foregoing sufficient off-duty time, and/or violating the FMCSR.

64.     Plaintiff believes and, therefore, avers that Defendant-HDH knew and/or should have known that the Liberty-Defendants allowed, directed, and/or permitted drivers, such as

Defendant-Elsbury, to work such long hours, forego sufficient off-duty time, and/or violate the

FMCSR and/or knew or should have known, through the exercise of reasonable care, that the

Liberty-Defendants' drivers, such as Defendant-Elsbury, were working such long hours,

foregoing sufficient off-duty time, and/or violating the FMCSR

65.    By allowing, directing, and/or permitting Defendant-Elsbury to work such long

hours, forego sufficient off-duty time, and/or violate the FMCSR, the Liberty-Defendants,

Defendant-Hunter, the Idealease-Defendants, Defendant-Sears, and/or Defendant-HDH acted

outrageously, maliciously, willfully, and wantonly.

66.    By working such long hours, foregoing sufficient off-duty time, and/or violating

the FMCSR, Defendant-Elsbury acted outrageously, maliciously, willfully, and wantonly.

67.    Involved in commercial transportation and/or interstate commerce and/or subject

to the FMCSR, Defendants knew and/or should have known of the requirement to comply with

the FMCSR and/or to otherwise act reasonably.

68.    The FMCSR aims to promote safety in interstate commerce and to set minimum

safety requirements for entities that transport property and persons in interstate commerce.

69.    By violating and/or failing to meet the minimum safety requirements, set by the

FMCSR, and/or by aiding, abetting, encouraging, permitting, and/or requiring FMCSR

violations, Defendants knowingly and consciously:

   a.  disregarded the rights and safety of the public and/or other motorists,
       including Mrs. Malone and her passengers, including Ms. Africa; and/or

   b.  acted with reckless indifference to the rights and safety of the public and/or
       other motorists, including Mrs. Malone and her passengers, including Ms.
       Africa.

19

## - CAUSES OF ACTION -

### COUNT I – NEGLIGENCE

### PLAINTIFF V. DEFENDANT-LIBERTY, DEFENDANT-LANDMARK, DEFENDANT-DISTRIBUTION, AND DEFENDANT-COLONIAL

70.    Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

71.    All of the injuries and damages, suffered by Plaintiff and/or Ms. Africa, are the direct and proximate result of the Liberty-Defendants' negligence, carelessness, recklessness, and/or outrageousness, in the following particulars:

   a. Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

   b. Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive without taking sufficient off-duty time;

   c. Allowing, directing, and/or permitting Defendant-Elsbury to drive and/or work on limited sleep, while drowsy, fatigued, and/or sleepy;

   d. Allowing, directing, and/or permitting Defendant-Elsbury to undertake a delivery schedule that he could not complete safely and/or in a manner that did not violate the FMCSR;

   e. Failing to ensure that its agents, employees, and/or servants only drove the specified numbers of hours, as limited by federal and state law and regulation;

   f. Failing to know and comply with the FMCSR, as required by 49 C.F.R. §390.3(e)(1);

   g. Failing to instruct Defendant-Elsbury on the requirements of the FMCSR, as required by 49 C.F.R. §390.3(e)(2);

   h. Negligence per se generally and in the following specifics:

      i. 49 C.F.R. §390.13, which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

    ii. 49 C.F.R. §395.3, which imposes limits on operator drive and/or on-duty times and/or sets mandatory off-duty times;

    iii. 49 C.F.R. §392.3, which prohibits driving and/or permitting agents, employees, and/or servants to drive when his/her alertness is impaired by fatigue, illness, and/or any other cause;

    iv. 49 C.F.R. §392.6, which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

    v. 49 C.F.R. §390.11, which requires motor carriers to ensure that its drivers, agents, servants, and/or employees comply with and/or observe the FMCSR;

    vi. 49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    vii. 49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    viii. 49 C.F.R. §396.13, which requires proper vehicle inspections by drivers;

    ix. 49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order"; and

    x. WV Code 17C-6-1, which prohibits driving at a speed greater than is reasonable and prudent under existing circumstances.

i. Failing to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

j. Failing to properly train its agents, employees, and/or servants to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

k. Hiring Defendant-Elsbury and/or allowing him to drive;

l. Failing to properly supervise Defendant-Elsbury;

m. Failing to properly oversee and/or control Defendant-Elsbury when Defendants knew and/or should have known of:

    i. its ability to oversee and/or control Defendant-Elsbury; and/or
    ii. the need and opportunity to use such oversight and/or control.

n. Entrusting its trucks and/or vehicles to non-CDL drivers, including Defendant-Elsbury;

o. Failing to properly screen and/or perform background checks on its drivers, including Defendant-Elsbury;

p. Failing to employ a competent and/or qualified safety director;

q. Failing to adequately staff a safety department;

r. Failing to properly maintain and care for vehicles it owned and/or operated commercially and/or in interstate commerce;

s. Failing to regularly inspect vehicles it owned and/or operated commercially and/or in interstate commerce;

t. Failing to conduct or require its drivers to conduct pre-trip, pre-operation, post-trip, and/or post-operation inspections;

u. Using degraded and/or unsafe equipment, including the subject box-truck, commercially and/or in interstate commerce;

v. Using the subject box-truck, which was not road-worthy, commercially and/or in interstate commerce;

w. Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box-truck;

x. Failing to hire competent and skilled agents, employees, and/or servants in that the Liberty-Defendants' agents, employees, and/or servants did not possess the skill, knowledge, training, education, and/or experience required to:

    i. safely operate the subject box-truck;
    ii. maintain the subject box-truck in safe working order; and/or
    iii. comply with applicable federal and state regulations and/or accepted industry practices;

y. Failing to intervene and/or prevent and/or stop safety violations and/or violations of federal and state law and/or regulation by Defendant-Elsbury when the Liberty-Defendants knew of and/or should have known of the same;

z. Failing to comply with industry best practices and/or safety standards;

aa. Violating federal and state law and/or safety law;

bb. Violating federal and state safety regulation, including the FMCSR;

cc. Failing to discharge its duty to meet minimum standards for the safety of the public and/or other motorists, including Ms. Africa; and/or

dd. Under the doctrine of Res Ipsa Loquitor, the subject box-truck would not have struck Mrs. Malone's mini-van but for Defendants' negligence, carelessness, recklessness, and/or outrageousness.

72.    As a direct and proximate result of the Liberty-Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive* *damages* against the Liberty-Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT II – VICARIOUS/AGENCY LIABILITY

### PLAINTIFF V. DEFENDANT-LIBERTY, DEFENDANT-LANDMARK, DEFENDANT-DISTRIBUTION, AND DEFENDANT-COLONIAL

73.    Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

74.    The Liberty-Defendants are vicariously liable for the negligent, careless, reckless, and/or outrageous acts and/or omissions of Defendant-Elsbury because:

a.    Defendant-Elsbury is and/or was the actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of the Liberty-Defendants;

b.    the Liberty-Defendants exercised sufficient control over Defendant-Elsbury as to constitute a master-servant and/or principal-agent relationship;

23

    c.   at all material times, the Liberty-Defendants were and/or are deemed to be, by the FMCSR (49 C.F.R. §390.5), Defendant-Elsbury's employer and/or statutory employer; and/or

    d.   federal and state law and/or regulation impose such vicarious liability on the Liberty-Defendants for the negligence, carelessness, recklessness, and/or outrageousness of its agent, employee, and/or servant, Defendant-Elsbury.

75.     All of the injuries and damages, suffered by Plaintiff and/or Ms. Africa, are the direct and proximate result of Defendant-Elsbury's negligence, carelessness, recklessness, and/or outrageousness – for which the Liberty-Defendants are responsible – as described more fully in **Count VII** of this Complaint and incorporated herein.

76.     As a direct and proximate result of such negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against the Liberty-Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT III – NEGLIGENCE

### PLAINTIFF V. DEFENDANT-HUNTER

77.     Plaintiff incorporates herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

78.     All of the injuries and damages, suffered by Plaintiff and/or by Ms. Africa, are the direct and proximate result of Defendant-Hunter's negligence, carelessness, recklessness, and/or outrageousness, in the following particulars:

    a.   Failing to properly maintain and care for vehicles it owned and/or operated commercially and/or in interstate commerce;

24

b. Failing to properly maintain and care for vehicles it made available for use commercially and/or in interstate commerce;

c. Renting and/or leasing trucks and/or vehicles to the Liberty-Defendants and/or Defendant-Elsbury;

d. Negligently entrusting trucks and/or commercial vehicles, including the subject box-truck, to the Liberty-Defendants and/or Defendant-Elsbury;

e. Using, renting, and/or leasing unsafe equipment, including the subject box-truck;

f. Using, renting, and/or leasing the subject box-truck, which was not road-worthy;

g. Failing to fully and/or carefully inspect all components of the subject box-truck before driving in violation of federal and state law and/or regulation;

h. Failing to fully and/or carefully inspect all components of the subject box-truck before making it available for use commercially and/or in interstate commerce;

i. Failing to regularly inspect the subject box-truck;

j. Failing to conduct or require its drivers to conduct pre-trip, pre-operation, post-trip, and/or post-operation inspections;

k. Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

l. Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive without taking sufficient off-duty time;

m. Allowing, directing, and/or permitting Defendant-Elsbury to drive and/or work on limited sleep, while drowsy, fatigued, and/or sleepy;

n. Allowing, directing, and/or permitting Defendant-Elsbury to undertake a delivery schedule that he could not complete safely and/or in a manner that did not violate the FMCSR;

o. Failing to ensure that its agents, employees, and/or servants only drove the specified numbers of hours, as limited by federal and state law and regulation;

p. Failing to know and comply with the FMCSR, as required by 49 C.F.R. §390.3(e)(1);

q.  Failing to instruct Defendant-Elsbury on the requirements of the FMCSR, as
required by 49 C.F.R. §390.3(e)(2);

r.  Failing to maintain equipment in accordance with the requirements of the
FMCSR, as required by 49 C.F.R. §390.3(e)(3);

s.  Negligence per se generally and in the following specifics:

    i.  49 C.F.R. §390.13, which prohibits aiding, abetting, encouraging,
and/or requiring violations of the FMCSR;

    ii.  49 C.F.R. §395.3, which imposes limits on operator drive and/or on-
duty times and/or sets mandatory off-duty times;

    iii.  49 C.F.R. §392.3, which prohibits driving and/or permitting agents,
employees, and/or servants to drive when his/her alertness is
impaired by fatigue, illness, and/or any other cause;

    iv.  49 C.F.R. §392.6, which prohibits scheduling runs and/or permitting
or requiring vehicle operation between points in such a limited
period of time as to necessitate excessive and/or unreasonable speeds
for existing conditions;

    v.  49 C.F.R. §390.11, which requires motor carriers to ensure that its
drivers, agents, servants, and/or employees comply with and/or
observe the FMCSR;

    vi.  49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    vii.  49 C.F.R. §396.3, which requires proper vehicle inspection, repair,
and maintenance;

    viii.  49 C.F.R. §396.13, which requires proper vehicle inspections by
drivers;

    ix.  49 C.F.R. 392.7, which requires proper vehicle inspections and
confirmation that vehicular systems are in "good working order"; and

    x.  WV Code 17C-6-1, which prohibits driving at a speed greater than is
reasonable and prudent under existing circumstances.

t.  Failing to properly anticipate, plan and/or prepare for, and/or prevent
emergencies and/or equipment failure;

u.  Failing to properly train its agents, employees, and/or servants to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

v.  Hiring Defendant-Elsbury and/or in allowing him to drive;

w.  Failing to properly supervise Defendant-Elsbury;

x.  Failing to properly oversee and/or control Defendant-Elsbury and/or the Liberty-Defendants when Defendant-Hunter knew and/or should have known of:

    i.  its ability to oversee and/or control Defendant-Elsbury and/or the Liberty-Defendants; and/or
    ii.  the need and/or opportunity to use such oversight and/or control.

y.  Entrusting its trucks and/or vehicles to non-CDL drivers, including Defendant-Elsbury;

z.  Failing to properly screen and/or perform background checks on its drivers, including Defendant-Elsbury;

aa. Failing to employ a competent and/or qualified safety director;

bb. Failing to adequately staff a safety department;

cc. Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box-truck;

dd. Failing to hire competent and skilled agents, employees, and/or servants in that Defendant-Hunter's agents, employees, and/or servants did not possess the skill, knowledge, training, education, and/or experience required to:

    i.  safely operate the subject box-truck;
    ii.  maintain the subject box-truck in safe working order; and/or
    iii.  comply with applicable federal and state regulations and/or accepted industry practices;

ee. Failing to intervene and/or prevent and/or stop safety violations and/or violations of federal and state law and/or regulation by Defendant-Elsbury when Defendant-Hunter knew of and/or should have known of the same;

ff. Failing to comply with industry best practices and/or safety standards;

gg. Violating federal and state law and/or safety law;

hh. Violating federal and state safety regulation, including the FMCSR;

ii. Failing to discharge the duty to meet minimum standards for safety of the public and other motorists, including Ms. Africa; and

jj. Under the doctrine of Res Ipsa Loquitor, the subject box-truck would not have struck Mrs. Malone's mini-van but for Defendants' negligence, carelessness, recklessness, and/or outrageousness.

79.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against Defendant-Hunter, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT IV – VICARIOUS/AGENCY LIABILITY

### PLAINTIFF V. DEFENDANT-HUNTER

80.    Plaintiff incorporates the previous paragraphs of this Complaint, as if each and every one were individually set forth completely herein and at length.

81.    Defendant-Hunter is vicariously liable for the negligent, careless, reckless, and/or outrageous acts and/or omissions of Defendant-Elsbury because:

a. Defendant-Elsbury is and/or was the actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of Defendant-Hunter;

b. Defendant-Hunter exercised sufficient control over Defendant-Elsbury as to constitute a master-servant and/or principal-agent relationship;

c. at all material times, the subject box-truck bore the identification, logo/insignia, U.S. DOT No. 2383163, and/or U.S. DOT placard of Defendant-Hunter only such as to:

28

      i.  operate the subject vehicle under Defendant-Hunter's U.S. DOT authority and thus responsibility;

      ii.  create the appearance that Defendant-Elsbury was the actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of Defendant-Hunter and/or the Idealease-Defendants; and/or

      iii.  cause members of the public to reasonably rely on Defendant-Elsbury's status as an actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of Defendant-Hunter and/or the Idealease-Defendants.

d.  at all material times, Defendant-Hunter was and/or is deemed to be, by the FMCSR (49 C.F.R. §390.5), Defendant-Elsbury's employer and/or statutory employer; and/or

e.  federal and state law and/or regulation impose such vicarious liability on Defendant-Hunter and/or the Idealease-Defendants for the negligence, carelessness, recklessness, and/or outrageousness of its agent, employee, and/or servant, Defendant-Elsbury.

82.    According to Federal Motor Carrier Safety Administration (FMCSA) Safety Management System (SMS), Defendant-Hunter owns nearly 900 vehicles but employs only 18 drivers such that Defendant-Hunter relies on companies, like Defendant-Liberty and its drivers like Defendant-Elsbury, in furtherance of its business. As such, Defendant-Hunter benefits from reliance on companies, like the Liberty-Defendants and drivers, like Defendant-Elsbury, such that it bears responsibility for dangers to public safety by such companies and drivers and/or by the trucks and vehicles it owns and operates and/or permits to be operated commercially and/or in interstate commerce.

83.    As a result, Defendant-Hunter is vicariously liable for the negligence, carelessness, recklessness, and/or outrageousness of its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants, including Defendant-Elsbury, for such acts and omissions as more fully described in **Count VII** of this Complaint.

84.    As a direct and proximate result of such negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against Defendant-Hunter, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT V – NEGLIGENCE

### PLAINTIFF V. DEFENDANT-SERVICES AND DEFENDANT-IDEALEASE

85.    Plaintiff incorporates herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

86.    All of the injuries and damages, suffered by Plaintiff and/or by Ms. Africa, are the direct and proximate result of the Idealease-Defendants' negligence, carelessness, recklessness, and/or outrageousness, in the following particulars:

    a.    Failing to properly maintain and care for vehicles it owned and/or operated commercially and/or in interstate commerce;

    b.    Failing to properly maintain and care for vehicles it made available for use commercially and/or in interstate commerce;

    c.    Renting and/or leasing trucks and/or vehicles to the Liberty-Defendants and/or Defendant-Elsbury;

    d.    Negligently entrusting trucks and/or vehicles to the Liberty-Defendants and/or Defendant-Elsbury;

    e.    Using, renting, and/or leasing unsafe equipment, including the subject box-truck;

    f.    Using, renting, and/or leasing the subject box-truck, which was not road-worthy;

    g.    Failing to fully and/or carefully inspect all components of the subject box-truck before driving in violation of federal and state law and/or regulation;

h.  Failing to fully and/or carefully inspect all components of the subject box-truck before making it available for use commercially and/or in interstate commerce;

i.  Failing to regularly inspect the subject box-truck;

j.  Failing to conduct and/or requires its drivers to conduct pre-trip, pre-operation, post-trip, and/or post-operation inspections;

k.  Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

l.  Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive without taking sufficient off-duty time;

m.  Allowing, directing, and/or permitting Defendant-Elsbury to drive and/or work on limited sleep, while drowsy, fatigued, and/or sleepy;

n.  Allowing, directing, and/or permitting Defendant-Elsbury to undertake a delivery schedule that he could not complete safely and/or in a manner that did not violate the FMCSR;

o.  Failing to ensure that its agents, employees, and/or servants only drove the specified numbers of hours, as limited by federal and state law and regulation;

p.  Failing to know and comply with the FMCSR, as required by 49 C.F.R. §390.3(e)(1);

q.  Failing to instruct Defendant-Elsbury on the requirements of the FMCSR, as required by 49 C.F.R. §390.3(e)(2);

r.  Failing to maintain equipment in accordance with the requirements of the FMCSR, as required by 49 C.F.R. §390.3(e)(3);

s.  Negligence per se generally and in the following specifics:

    i.  49 C.F.R. §390.13, which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

    ii.  49 C.F.R. §395.3, which imposes limits on operator drive and/or on-duty times and/or sets mandatory off-duty times;

    iii.  49 C.F.R. §392.3, which prohibits driving and/or permitting agents, employees, and/or servants to drive when his/her alertness is impaired by fatigue, illness, and/or any other cause;

31

    iv.   49 C.F.R. §392.6, which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

    v.   49 C.F.R. §390.11, which requires motor carriers to ensure that its drivers, agents, servants, and/or employees comply with and/or observe the FMCSR;

    vi.   49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    vii.   49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    viii.   49 C.F.R. §396.13, which requires proper vehicle inspections by drivers;

    ix.   49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order"; and

    x.   WV Code 17C-6-1, which prohibits driving at a speed greater than is reasonable and prudent under existing circumstances.

t.  Failing to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

u.  Failing to properly train its agents, employees, and/or servants to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

v.  Hiring Defendant-Elsbury and/or in allowing him to drive;

w.  Failing to properly supervise Defendant-Elsbury;

x.  Failing to properly oversee and/or control Defendant-Elsbury and/or the Liberty-Defendants when the Idealease-Defendants knew and/or should have known of:

    i.   its ability to oversee and/or control Defendant-Elsbury and/or the Liberty-Defendants; and/or
    ii.   the need and/or opportunity to use such oversight and/or control.

y.  Entrusting its trucks and/or vehicles to non-CDL drivers, including Defendant-Elsbury;

z.  Failing to properly screen and/or perform background checks on its drivers, including Defendant-Elsbury;

aa.  Failing to employ a competent and/or qualified safety director;

bb.  Failing to adequately staff a safety department;

cc.  Failing to timely and properly inspect, maintain, ensure proper functioning of and/or safe operation of, make necessary repairs, adjustments, and/or replacement of worn, broken, defective, and/or damaged parts and/or components of the subject box-truck;

dd.  Failing to hire competent and skilled agents, employees, and/or servants in that the Idealease-Defendants' agents, employees, and/or servants did not possess the skill, knowledge, training, education, and/or experience required to:

  i.  safely operate the subject box-truck;
  ii.  maintain the subject box-truck in safe working order; and/or
  iii.  comply with applicable federal and state regulations and/or accepted industry practices;

ee.  Failing to intervene and/or prevent and/or stop safety violations and/or violations of federal and state law and/or regulation by Defendant-Elsbury when the Idealease-Defendants knew of and/or should have known of the same;

ff.  Failing to comply with industry best practices and/or safety standards;

gg.  Violating federal and state law and/or safety law;

hh.  Violating federal and state safety regulation, including the FMCSR;

ii.  Failing to discharge the duty to meet minimum standards for safety of the public and other motorists, including Ms. Africa; and

jj.  Under the doctrine of Res Ipsa Loquitor, the subject box-truck would not have struck Mrs. Malone's mini-van but for Defendants' negligence, carelessness, recklessness, and/or outrageousness.

87.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive*

*damages* against the Idealease-Defendants, in an amount in excess of Fifty-Thousand Dollars

($50,000), plus interest and costs.

## COUNT VI – VICARIOUS/AGENCY LIABILITY

### PLAINTIFF V. DEFENDANT-SERVICES AND DEFENDANT-IDEALEASE

88.    Plaintiff incorporates the previous paragraphs of this Complaint, as if each and

every one were individually set forth completely herein and at length.

89.    The Idealease-Defendants are vicariously liable for the negligent, careless,

reckless, and/or outrageous acts and/or omissions of Defendant-Elsbury because:

    a.  Defendant-Elsbury is and/or was the actual, apparent, authorized, and/or
ostensible agent, employee, and/or servant of the Idealease-Defendants;

    b.  the Idealease-Defendants exercised sufficient control over Defendant-Elsbury
as to constitute a master-servant and/or principal-agent relationship;

    c.  at all material times, the subject box-truck bore the "Idealease" identification
and/or logo/insignia such as to:

        i.  create the appearance that Defendant-Elsbury was the actual, apparent,
authorized, and/or ostensible agent, employee, and/or servant of the
Idealease-Defendants; and/or

        ii.  cause members of the public to reasonably rely on Defendant-
Elsbury's status as an actual, apparent, authorized, and/or ostensible
agent, employee, and/or servant of the Idealease-Defendants.

    d.  at all material times, the Idealease-Defendants were and/or are deemed to be,
by the FMCSR (49 C.F.R. §390.5), Defendant-Elsbury's employer and/or
statutory employer; and/or

    e.  federal and state law and/or regulation impose such vicarious liability on
Defendant-Hunter and/or the Idealease-Defendants for the negligence,
carelessness, recklessness, and/or outrageousness of its agent, employee,
and/or servant, Defendant-Elsbury.

90.    As a result, the Idealease-Defendants are vicariously liable for the negligence, carelessness, recklessness, and/or outrageousness of its actual, apparent, authorized, and/or ostensible agents, employees, and/or servants, including Defendant-Elsbury, for such acts and omissions as more fully described in **Count VII** of this Complaint.

91.    As a direct and proximate result of such negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against the Idealease-Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

### COUNT VII – NEGLIGENCE

### PLAINTIFF V. DEFENDANT-ELSBURY

92.    Plaintiff incorporates herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

93.    All of the injuries and damages, suffered by Plaintiff and/or Ms. Africa, are the direct and proximate result of Defendant-Elsbury's negligence, carelessness, recklessness, and/or outrageousness in the following particulars:

   a.    Working and/or driving excessive hours and/or hours that exceed the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

   b.    Working and/or driving without taking sufficient off-duty time;

   c.    Driving on limited sleep, while drowsy, fatigued, and/or sleepy;

   d.    Negligence per se generally and in the following specifics:

35

    i.   49 C.F.R. §390.13, which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

    ii.   49 C.F.R. §395.3, which imposes limits on operator drive and/or on-duty times and/or sets mandatory off-duty times;

    iii.   49 C.F.R. §392.3, which prohibits a driver from driving when his/her alertness is impaired by fatigue, illness, and/or any other cause;

    iv.   49 C.F.R. §392.6, which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

    v.   49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    vi.   49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    vii.   49 C.F.R. §396.13, which requires proper vehicle inspections by drivers;

    viii.   49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order"; and

    ix.   WV Code 17C-6-1, which prohibits driving at a speed greater than is reasonable and prudent under existing circumstances.

e. Failing to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

f. Operating the subject box-truck in a negligent, careless, reckless, and/or outrageous manner;

g. Operating the subject box-truck without due regard to the rights, safety, and position of other motorists, including Mrs. Malone and her passengers, including Ms. Africa;

h. Traveling too fast for the conditions;

i. Traveling too fast as to be unsafe;

j. Traveling at excessive and/or unsafe speeds;

k. Failing to obey the speed limit;

l. Failing to utilize proper caution while operating the subject box-truck;

36

m. Failing to properly maintain the position of the subject box-truck within the northbound lanes of travel;

n. Leaving the northbound lanes of travel;

o. Crossing the grassy mediation, which separates the southbound and northbound lanes of travel of Interstate 79;

p. Entering into and traveling in the southbound lanes of travel in the wrong direction;

q. Failing to stop, slow down, and/or turn aside the subject box-truck or take any other evasive action so as to avoid a collision with Mrs. Malone and her passengers, including Ms. Africa;

r. Failing to brake in time to avoid striking Mrs. Malone and her passengers, including Ms. Africa;

s. Failing to properly control the subject box-truck by failing to stop before striking Mrs. Malone and her passengers, including Ms. Africa;

t. Striking Mrs. Malone and her passengers, including Ms. Africa;

u. Failing to fully and/or carefully inspect all components of the subject box-truck before driving in violation of federal and state law and/or regulation;

v. Failing to properly maintain and care for the subject box-truck;

w. Failing to regularly inspect the subject box-truck;

x. Failing to comply with industry best practices and/or safety standards;

y. Violating federal and state law and/or federal and state safety law;

z. Violating federal and state safety regulation, including the FMCSR;

aa. Failing to discharge the duty to meet minimum standards for the safety of the public and/or other motorists, including Ms. Africa; and

bb. Under the doctrine of Res.Ipsa Loquitor, the subject box-truck would not have struck Mrs. Malone's mini-van but for Defendant's negligence, carelessness, recklessness, and/or outrageousness.

94.    As a direct and proximate result of the Defendant's negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

37

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive* *damages* against Defendant-Elsbury, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

### COUNT VIII - NEGLIGENCE

### PLAINTIFF V. DEFENDANT-INNOVEL, DEFENDANT-SEARS LOGISTICS, AND DEFENDANT-SEARS OUTLET

95.    Plaintiff incorporates herein by reference all the preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

96.    All of the injuries and damages, suffered by Plaintiff and/or Ms. Africa, are the direct and proximate result of the Sears-Defendants' negligence, carelessness, recklessness, and/or outrageousness in the following particulars:

    a.  Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive excessive hours and/or hours that exceeded the limits imposed by federal and state law and regulation and/or hours that are not reasonable;

    b.  Allowing, directing, and/or permitting Defendant-Elsbury to work and/or drive without taking sufficient off-duty time;

    c.  Allowing, directing, and/or permitting Defendant-Elsbury to drive and/or work on limited sleep, while drowsy and/or sleepy;

    d.  Allowing, directing, and/or permitting Defendant-Elsbury to undertake a delivery schedule that could not be safely completed in a manner that did not violate the FMCSR;

    e.  Failing to ensure that its agents, employees, and/or servants only drove the specified number of hours, permitted by federal and state law and regulation;

    f.  Negligence per se generally and in the following specifics:

        i.  49 C.F.R. §390.13, which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

        ii.  49 C.F.R. §395.3, which imposes limits on operator drive and/or on-duty times and/or sets mandatory off-duty times;

    iii.  49 C.F.R. §392.3, which prohibits driving and/or permitting agents, employees, and/or servants to drive when his/her alertness is impaired by fatigue, illness, and/or any other cause;

    iv.  49 C.F.R. §392.6, which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

    v.  49 C.F.R. §390.11, which requires motor carriers and/or those with U.S. DOT authority to ensure that its drivers, agents, servants, and/or employees comply with and/or observe the FMCSR;

    vi.  49 C.F.R. §396.7, which prohibits unsafe vehicle operation;

    vii.  49 C.F.R. §396.3, which requires proper vehicle inspection, repair, and maintenance;

    viii.  49 C.F.R. §396.13, which requires proper vehicle inspections by drivers;

    ix.  49 C.F.R. 392.7, which requires proper vehicle inspections and confirmation that vehicular systems are in "good working order"; and

    x.  WV Code 17C-6-1, which prohibits driving at a speed greater than is reasonable and prudent under existing circumstances.

g.  Scheduling too many deliveries;

h.  Failing to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

i.  Hiring carriers that fail to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

j.  Hiring the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or Defendant-Elsbury;

k.  Failing to properly supervise the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or Defendant-Elsbury;

l.  Hiring carriers, such as the Liberty-Defendants, Defendant-Hunter, and/or the Idealease-Defendants, that utilize non-CDL drivers;

m.  Failing to hire a competent carrier and/or driver;

n. Hiring an incompetent carrier and/or driver;

o. Failing to exercise reasonable care and/or due diligence when hiring and/or working with a carrier and/or driver;

p. Failing to hire a carrier with safe and/or fully functioning equipment;

q. Hiring a carrier with limited equipment;

r. Hiring a carrier with a limited number of agents, employees, and/or servants;

s. Unnecessarily exposing others, including Mrs. Malone and her passengers, including Ms. Africa, to an unqualified carrier, and/or to unnecessary risk;

t. Failing to hire a carrier with the necessary knowledge, skill, expertise, and available equipment to safely perform the subject delivery and/or trip;

u. Failing to properly oversee and/or control the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or Defendant-Elsbury when Defendants knew and/or should have known of:

    i. its ability to oversee and/or control the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or Defendant-Elsbury; and/or

    ii. the need and/or opportunity to use such oversight and/or control.

v. Failing to appropriately vet the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or Defendant-Elsbury;

w. Hiring the Liberty-Defendants when other, more qualified, carriers exist and were available;

x. Failing to implement and abide by a system of assessing and/or monitoring carrier and/or driver fitness and safety compliance;

y. Failing to ensure that its carriers follow, abide by, and/or comply with the FMCSR;

z. Failing to inspect the equipment to be used by the Liberty-Defendants, Defendant-Hunter, and/or the Idealease-Defendants, including the subject box-truck;

aa. Failing to intervene and/or prevent and/or stop safety violations and/or violations of federal and state law and/or regulation by the Liberty-Defendants, Defendant-Hunter, the Idealeaes-Defendants, and/or Defendant-

40

Elsbury when the Sears-Defendants knew of and/or should have known of the same;

bb. Failing to comply with industry best practices and/or safety standards;

cc. Violating federal and state law and/or safety law;

dd. Violating federal and state safety regulation, including the FMCSR;

ee. Failing to discharge its duty to meet minimum standards for the safety of the public and/or other motorists, including Ms. Africa; and

ff. Under the doctrine of Res Ipsa Loquitor, the subject box-truck would not have struck Mrs. Malone's mini-van but for Defendants' negligence, carelessness, recklessness, and/or outrageousness.

97.    As a direct and proximate result of the Defendants' negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against the Sears-Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT IX – VICARIOUS LIABILITY

### PLAINTIFF V. DEFENDANT- INNOVEL, DEFENDANT-SEARS LOGISTICS, AND DEFENDANT-SEARS OUTLET

98.    Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

99.    Plaintiff believes and, therefore, avers that the Sears-Defendants:

a. oversaw, directed, and/or arranged for the subject delivery and/or trip, which resulted in the crash, which is described more fully throughout this Complaint;

b. determined, directed, ordered, controlled, and/or instructed Defendant-Elsbury and/or the Liberty-Defendants:

41

        i.   how, when, and where to conduct the subject delivery and/or trip;

        ii.   what was to be delivered to the clients/customers of the Sears-Defendants;

        iii.   when deliveries were to be made to clients/customers of the Sears-Defendant; and

    c.   monitored and/or had the authority and ability to monitor the progress and/or location of Defendant-Elsbury and/or the Liberty-Defendants during the subject delivery and/or trip.

100.   Plaintiff believes and, therefore, avers that the Liberty-Defendants' drivers' work schedules are dictated by manifests and/or customer delivery windows, created and/or ordered by the Sears-Defendants.

101.   Plaintiff believes and, therefore, avers that Defendant-Elsbury did not have enough time to safely make all of the deliveries assigned to him:

    a.   by and through the logistics/plans/specifications, selected for and/or dictated to him by the Sears-Defendants and/or Defendant-Liberty; and/or

    b.   in a manner that did not violate the FMCSR.

102.   Plaintiff believes and, therefore, avers that, at all material times, Defendant-Elsbury was required by the Sears-Defendants and/or by the contract between the Sears-Defendants and the Liberty-Defendants to wear a dark navy blue shirt, embroidered with "Authorized Delivery" in a specific gold thread on the left side, and dark navy blue pants. Such mandated uniform demonstrated, indicated, and/or gave the impression that Defendant-Elsbury was an actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of the Sears-Defendants and/or caused members of the public to reasonably rely on Defendant-Elsbury's status as an actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of the Sears-Defendants.

103.   Plaintiff believes and, therefore, avers that, at all material times, Defendant-Elsbury was required by the Sears-Defendants and/or by the contract between the Sears-Defendants and the Liberty-Defendants to carry a personal tablet to track and record deliveries and/or delivery progress.

104.   Plaintiff believes and, therefore, avers that Defendant-Elsbury was paid per trip at a rate set by the Sears-Defendants that he could not negotiate.

105.   Plaintiff believes and, therefore, avers that the Sears-Defendants offer monetary incentives for good customer service and survey scores and that the Sears-Defendants pay such incentives to the Liberty-Defendants to be passed through to its drivers, like Defendant-Elsbury.

106.   Plaintiff believes and, therefore, avers that the Liberty Transportation Load Payout Sheets, for Defendant-Elsbury on September 7, 2016 and September 8, 2016, have spaces for "Sears Specials/Comments" and "Liberty Specials/Comments" such that Defendant-Elsbury was subject to the control of not only the Liberty-Defendants, but also the Sears-Defendants.

107.   The Sears-Defendants are vicariously liable for the negligent, careless, reckless, and/or outrageous acts and/or omissions of Defendant-Elsbury because:

   a.   Defendant-Elsbury is and/or was the actual, apparent, authorized, and/or ostensible agent, employee, and/or servant of the Sears-Defendants;

   b.   the Sears-Defendants exercised sufficient control over the Liberty-Defendants, Defendant-Hunter, the Idealease-Defendants, and/or Defendant-Elsbury as to constitute a master-servant and/or principal-agent relationship;

   c.   at all material times, while operating the subject box-truck, Defendant-Elsbury wore a uniform, mandated by the Sears-Defendants, and/or carried a Sears-issued tablet to track and record deliveries and/or delivery progress;

   d.   at all material times, the Sears-Defendants were and/or are deemed to be, by the FMCSR (49 C.F.R. §390.5), Defendant-Elsbury's employer and/or statutory employer; and/or

43

e. federal and state regulations and/or laws impose such vicarious liability on the Sears-Defendants for the negligence, carelessness, recklessness, and/or outrageousness of its agent, employee, and/or servant, including Defendant-Elsbury.

108.   All of the injuries and damages, suffered by the Plaintiff and/or Ms. Africa, are the direct and proximate result of Defendant-Elsbury's negligence, carelessness, recklessness, and/or outrageousness – for which the Sears-Defendants are responsible – as described more fully in **Count VII** of this Complaint and incorporated herein.

109.   As a direct and proximate result of such negligence, carelessness, recklessness, and outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive damages* against the Sears-Defendants, in an amount in excess of Fifty-Thousand Dollars ($50,000), plus interest and costs.

## COUNT X – NEGLIGENCE

### PLAINTIFF V. DEFENDANT-HDH GROUP

110.   Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint, as if each and every one were individually set forth herein and at length.

111.   At all material times, Defendant-HDH ostensibly served as the insurance broker for the Liberty-Defendants. Yet, at all material times, Defendant-HDH rendered services and/or consultation beyond insurance brokerage and into the areas of:

a. safety consultation, management, and troubleshooting; and/or

b. risk control and risk control operations.

44

112.   Defendant-HDH provided such safety consultation, management, and troubleshooting, and/or risk control and risk control operations to the Liberty-Defendants before and after the subject crash.

113.   In such role, Defendant-HDH:

    a.   conducted mock U.S. DOT audits, during which it identified safety and/or compliance deficiencies and violations, including in the areas of:

        i.   driver competency;
        ii.   driver fitness and/or unfitness; and/or
        iii.   hours of service;

    b.   knew and/or should have known of the Liberty-Defendants' history, pattern, and/or practice of:

        i.   hiring drivers of limited/questionable competency;
        ii.   hiring unfit drivers and/or drivers of limited/questionable fitness; and/or
        iii.   exceeding allowable hours of service;

    c.   failed to improve and/or require improvement in safety and/or compliance deficiencies and violations about which Defendant-HDH knew and/or should have known;

    d.   researched and counseled the Liberty-Defendants on:

        i.   risk exposure;
        ii.   operational policies and practices;
        iii.   effective documentation;
        iv.   U.S. DOT safety compliance;
        v.   the FMCSR; and/or
        vi.   FMCSR safety compliance.

    e.   participated in safety calls/meetings with the Liberty-Defendants;

    f.   provided safety resources and counseling to the Liberty-Defendants;

    g.   participated in and/or counseled the Liberty-Defendants on U.S. DOT safety compliance reviews; and/or

    h.   reviewed, researched, and provided feedback to the Liberty-Defendants on CSA/SMS scoring.

114.   By providing such services to the Liberty-Defendants, Defendant-HDH:

    a.   enabled the Liberty-Defendants to obtain the necessary authority, financial responsibility, and/or licensing to operate and/or put commercial vehicles and/or trucks on the road;

    b.   performed services that facilitated the Liberty-Defendants' operation and/or continued operation;

    c.   made recommendations that facilitated the Liberty-Defendants' operation and/or continued operation;

    d.   provided safety management and/or consulting services that enabled an unfit carrier and/or a carrier with unfit drivers, agents, employees, and/or servants to obtain and/or maintain the requisite authority, financial responsibility, and/or licensing to operate and/or put commercial vehicles and/or trucks on the road; and/or

    e.   provided risk control and risk control operations services that enabled an unfit carrier and/or a carrier with unfit drivers, agents, employees, and/or servants to obtain and/or maintain the requisite authority, financial responsibility, and/or licensing to operate and/or put commercial vehicles and/or trucks on the road.

115.   As such, Defendant-HDH negligently, carelessly, recklessly, and/or outrageously:

    a.   aided, abetted, encouraged, permitted, and/or required violations of the FMCSR by the Liberty-Defendants, 49 C.F.R. §390.13; and/or

    b.   undertook to render services to the Liberty-Defendants that Defendant-HDH knew or should have known unreasonably exposed others to risk, Restatement (Second) of Torts §324A; and/or

    c.   undertook safety consultation and/or risk control services to/for the Liberty-Defendants that Defendant-HDH failed to adequately or reasonably perform, *Id.*

116.   As a direct and proximate result of such negligence, carelessness, recklessness, and/or outrageousness, Plaintiff and/or Ms. Africa have suffered those injuries and damages, as set forth more fully throughout this Complaint.

WHEREFORE, based on the foregoing, Plaintiff demands *compensatory* and *punitive*

*damages* against the Defendant-HDH Group, in an amount in excess of Fifty-Thousand Dollars

($50,000), plus interest and costs.

Respectfully submitted,

TERSHEL & ASSOCIATES

Jarrod T. Takah, Esquire
*Attorney for Plaintiff*

47

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF WASHINGTON

:
:    SS:
:

## **A F F I D A V I T**

Before me, the undersigned authority, personally appeared <u>Steven R. Wolf</u>,

who being duly sworn according to law, depose(s) and say(s) that the facts set forth in the

forgoing <u>Complaint in Civil Action</u> are true and correct to the best of

<u>his</u> personal knowledge, information and belief, and that

<u>he</u> understand(s) that false statements herein

are made subject to the penalties of 18 Pa. C.S. section 4904, relating to unsworn falsification to

authorities.

_____

Steven R. Wolf, as Administrator to the Estate of
Breanna Nicole Africa

SWORN TO AND SUBSCRIBED

Before me this _____ 7th

Day of March , 20 18

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Valerie E. Ivery, Notary Public
City of Washington, Washington County
My Commission Expires July 2, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## CERTIFICATE OF SERVICE

I, Jarrod T. Takah, Esquire, hereby certify that a true and correct copy of the foregoing

Complaint in Civil Action has been served, by first-class mail, postage prepaid, upon the

following individuals, this ⁷ day of _March_, 2018:

*Liberty Transportation*:

Christopher T. Yoskosky, Esq.                Victor J. Flanagan, Esq.
Joseph F. Butcher, Esq.                      Jonathan Jacks, Esq.
Zimmer Kunz                                  Pullin Fowler Flanagan
310 Grant St., Suite 3000                        Brown & Poe
Pittsburgh, Pa. 15219                        2414 Cranberry Square
                                             Morgantown, WV 26508

*Hunter Leasing LLC*:

Kathryn Kenyon, Esq.                         Matthew Elshiaty, Esq.
Meyer, Unkovic & Scott                       Kay Casto & Chaney
535 Smithfield St., Suite 1300              1085 Van Voorhis Rd.
Pittsburgh, Pa. 15222                        Suite 100
                                             Morgantown, WV 26505

*David Elsbury*:

Mark Lane, Esq.                              Tanya Kesner, Esq.
Dell Moser Lane & Loughney                   Kesner & Kesner
2 Chatham Center, Suite 1500                 112 Capitol St.
112 Washington Place                         Charleston, WV 25301
Pittsburgh, Pa. 15219

*the Sears-Defendants*:

Michael Moore, Esq.
Moore & Biser
317 5ᵗʰ Ave.
S. Charleston, WV 25303

I, Jarrod T. Takah, Esquire, hereby further certify that a true and correct copy of the

foregoing Complaint in Civil Action has been served, in a manner that complies with the

Pa.R.C.P., upon the following entities/individuals, this _7_ day of _March_ , 2018:

the Liberty-Defendants:

> Landmark Leasing Inc.
> Liberty Distribution Inc.
> Colonial Park Logistics d/b/a Liberty Transportation Inc.
> 838 Croft Rd.
> Greensburg, Pa. 15601

the Idealease-Defendants:

> Idealease Services Inc.
> Idealease Inc.
> 430 North Rand Rd.
> North Barrington, Il. 60010

the Sears-Defendants:

> Innovel Solutions Inc.
> 3333 Beverly Rd.
> B2-116B
> Hoffman Estates, Il. 60517

> Sears Logistics Services Inc.
> 3333 Beverly Rd.
> A3-220A
> Hoffman Estates, Il. 60517

> Sears Outlet Stores LLC
> 27 51st St.
> Pittsburgh, Pa. 15201

HDH-Group Inc.:

> HDH Group Inc.
> 210 Sixth Ave., 30th Fl.
> Pittsburgh, Pa. 15222

TERSHEL & ASSOCIATES

Jarrod T. Takah, Esquire
Attorney for Plaintiff

49

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Jarrod T. Takah, Esquire, Attorney for</u>
<u>Plaintiff, Steven R. Wolf, Esq., as the Administrator of the</u>
<u>Estate of Breanna N. Africa, deceased,</u>

Signature: _____

Name:       <u>Jarrod T. Takah, Esquire</u>

Attorney No.: <u>208943  </u>