**LEECH TISHMAN FUSCALDO & LAMPL, LLC**
Alan M. Kindred, Esq. (NY ID # 2086189)
Patrick W. Carothers, Esq.
Gregory W. Hauswirth, Esq.
545 Fifth Avenue
New York, NY 10017
Telephone: 412.606.3182
Facsimile: 412.227.5551
akindred@leechtishman.com
pcarothers@leechtishman.com
ghauswirth@leechtishman.com

*Hearing Date:*
*April 18, 2019 at 10:00 a.m.*

*Response Deadline:*
*April 11, 2019 at 4:00 p.m.*

*Attorneys for Libby Dial Enterprises, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------x
| In re | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors: | : | (Jointly Administered) |
------------------------------------------------x

**MOTION OF LIBBY DIAL ENTERPRISES, LLC**
**FOR AN ORDER: (i) CONFIRMING INAPPLICABILITY OF**
**THE AUTOMATIC STAY; OR (ii) TO THE EXTENT NECESSARY,**
**AN ORDER GRANTING *NUNC PRO TUNC* RELIEF FROM THE AUTOMATIC STAY**

Libby Dial Enterprises, LLC ("Movant"), by and through its undersigned counsel, hereby files the within Motion: (i) confirming the inapplicability of the automatic stay; or (ii) to the extent necessary, seeking *nunc pro tunc* relief from the automatic stay imposed by 11 U.S.C. § 362(a), to permit Movant to exercise an option pursuant to the express terms of an unexpired lease of non-residential real property with Kmart Corporation ("Kmart"), one of the Debtors in this jointly-administered Chapter 11 proceeding (the "Motion"). In support of the Motion, Movant avers as follows:

I.  **INTRODUCTION**

By this Motion, Movant seeks to confirm the inapplicability of the automatic stay to its exercise of a contractually-granted option under its non-residential real property lease agreement with Kmart. To the extent relief from the automatic stay is required, Movant seeks relief so that it may issue a timely notice of termination in order to exercise a contractually-granted option that it was granted and allows it to terminate its lease of non-residential real property with Kmart and secure certain rent thresholds for its real-property.

Movant also wants to be clear that it in no way through any action or requested action seeks to stop, halt or in any manner limit the going out of business sale being currently conducted by Kmart at the store. Movant will allow Kmart to fully conduct such sale to its uninterrupted completion. Movant only seeks to preserve its rights and options granted to it under its lease agreement at the conclusion of the going out of business sale. As to the instant Motion, Movant believes that the automatic stay is inapplicable to the issuance of the Notice (as defined herein) because Movant is entitled to exercise its option and terminate its lease agreement with Kmart pursuant to the terms of the lease agreement and Kmart cannot use its bankruptcy filing to expand its rights under such lease agreement. Further, Kmart will suffer no harm from the exercise of such option because Movant's exercise of its option does not interfere with Kmart's going out of business sale and would not impact Kmart's actual use of this non-residential real property. Indeed, the impact of the Notice will only have an effect at a time after Kmart has already determined that they are no longer operating at the store (and have elected to not assume their lease pursuant to 11 U.S.C. § 365).

To that end, Movant has issued the Notice on the date hereof and contemporaneously files this Motion out of an abundance of caution. To the extent the automatic stay does apply,

Movant asserts that relief from the automatic stay to provide the Notice is proper. The Notice does not in any manner attempt to enforce a prepetition debt, nor is the option under its lease agreement (triggered by Kmart's notice to discontinue the operations of its business at the leasehold) an invalid *ipso facto* clause, as it does not require or involve a declaration that Kmart is in default and does not result in the imposition of any financial penalty upon Kmart by reason of its bankruptcy or its financial condition. Rather, the option is a contractually agreed-upon remedy that was granted to Movant for the express purpose of responding to a written declaration of Kmart's intention to completely cease doing business at the leased location, which remedy allows Movant to obtain the benefit of its bargain. Movant is now only seeking to elect such remedy.

**II.    PARTIES**

1.    Sears Holding Corporation, together with forty-nine of its affiliated co-debtors (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C §§ 101 et seq. (the "Bankruptcy Code"), on October 15, 2018 (the "Petition Date").

2.    The Debtors' cases are being jointly administered in the above-captioned Chapter 11 case.

3.    The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.    Movant is the successor in interest to the landlord under that certain Lease, dated November 25, 1974, between David Baker and Lee J. Baker, as Landlord, and S.S. Kresge Company, as tenant, as such lease has subsequently been amended from time to time (the

3

"Lease," a true and correct copy of which is attached hereto as Exhibit A). Kmart, one of the Debtors, is the successor in interest to S.S. Kresge as tenant under the Lease. The Lease relates to a stand-alone retail Kmart store located at 1143 Broad Street, Sumter, South Carolina (the "Leasehold").

### III.   BACKGROUND

5.   On the Petition Date, the Debtors filed a *Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (the "Store Closing Motion") (Docket No. 23).

6.   On October 26, 2018, this Court entered an interim order on the Store Closing Motion (the "Interim Store Closing Order") (Docket No. 337), and on November 26, 2018, this Court entered a final order on the Store Closing Motion (the "Store Closing Order") (Docket No. 876), approving certain procedures (the "Store Closing Procedures") that the Debtors could use to close any of their stores, distribution centers, and other non-retail locations (the "Closing Stores") and to sell the inventory, furniture, fixtures, and equipment at the Closing Stores.

7.   Movant did not receive any service of the Store Closing Motion, the Interim Store Closing Order, the final Store Closing Order, and, by extension, the Store Closing Procedures.

8.   On December 28, 2018, the Debtors filed a *Notice of Intent to Conduct Store Closing Sales* (the "Notice of Intent") (Docket No. 1444). The Notice of Intent set forth the Debtors' intent to close certain of their stores and to conduct liquidation sales at those locations. Movant was served with a copy of the Notice of Intent, which identified the Leasehold as one of the stores that Kmart intended to close. Pursuant to the Notice of Intent, any party affected by the closure of a store could object to the Sales Closing Procedures and request a hearing on such objection within ten days of being served with the Notice of Intent.

4

9. Movant did not have any objection to Kmart's desire to close the store that was being operated at the Leasehold or to Kmart's request to conduct a liquidation sale at the Leasehold. However, given the fact that the Notice of Intent made it clear that Kmart would be discontinuing its use of the Leasehold as a store, Movant sought to clarify its ability to respond as contemplated under the Lease.

10. Specifically, Article 4 (Additional Rent) of the Lease provides in relevant part as follows:

> ***Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within ninety (90) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease.*** If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said ninety (90) day period and the Tenant shall be released from any further liability under this lease.
>
> Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 3, and the word "minimum" in said Article 3 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraph of this article shall be of no further force and effect.

Lease at Article 4 (emphasis added).

11. Because the Notice of Intent constituted a notice in writing of Kmart's election and intention to discontinue the operation of its store at the Leasehold, Movant sought to clarify its ability to exercise its resulting option under Article 4 of the Lease to cancel and terminate the Lease. Accordingly, on January 7, 2017, Movant filed and served its *Limited Objection of Libby*

5

*Dial Enterprises, LLC to Store Closing Procedures* (the "Limited Objection") (Docket No. 1503).

12. On January 16, 2019, the Debtors' filed the *Debtors' Reply to Limited Objection of Libby Dial Enterprises, LLC to Store Closing Procedures* (the "Reply") (Docket No. 1582). In the Reply, the Debtors asserted that Movant could not issue a notice of termination under Article 4 of the Lease both because of the provisions of the Store Closing Order and due to the automatic stay imposed by Section 362(a)(3) of the Bankruptcy Code.

13. On January 18, 2019, Movant and the Debtors filed a *Stipulation, Agreement and Order Resolving Limited Objection of Libby Dial Enterprises, LLC to Store Closing Procedures* (the "Stipulation") (Docket No. 1724). Pursuant to the Stipulation, Movant agreed that the Debtors could conduct a Store Closing Sale at the Leasehold without delay, withdrawing any objection thereto. Stipulation at ¶¶ 1, 3. However, the parties reserved all their respective remaining rights under the Lease, and Movant withdrew its assertions as to its rights to terminate the Lease without prejudice to raise such issues again at a later date. Id. at ¶¶ 2, 4.

14. On January 23, 2019, the Debtors filed a *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Cure Notice") (Docket No. 1774). The Cure Notice identified certain leases, including the Lease, for potential assumption and assignment. In the Cure Notice, the Debtors asserted that the cure amount for the Lease is $0.00 (the "Proposed Cure Amount").

15. On January 31, 2019, Movant filed its *Objection of Libby Dial Enterprises, LLC to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sales Transaction* (the "Cure Objection") (Docket No. 2291). In the Cure Objection, Movant objected to the Proposed Cure Amount on the basis

that no less than $53,080.58 in property taxes remain due and outstanding under the terms of the Lease, and additional amounts may be due and owing at the time of the eventual assumption of the Lease. As of the date of this Motion, the Cure Objection has not been resolved by the parties or this Court.

16. On February 8, 2019, the Court entered an Order approving the Debtors' sale of substantially all of their assets to ESL Investments, Inc. (the "Sale Order") (Docket No. 2507). Under the related asset purchase agreement, the Lease is listed as a "Designatable Lease," which may be designated by ESL Investments, Inc. for assumption and assignment in accordance with the terms of the Sale Order during the "Designation Rights Period." As set forth in the related asset purchase agreement, the "Designation Rights Period" ends on the earliest of (i) five (5) Business Days after delivery of an applicable buyer rejection notice, (ii) the date on which an applicable agreement is assumed and assigned to an assignee, (iii) the date which is sixty (60) days after the closing date (of the asset purchase agreement) and (iv) May 3, 2019. The "Closing Date" of the asset purchase agreement related to the Sale Order took place on February 11, 2019.

17. The time by which the Debtors must assume or reject unexpired leases is the earlier of (i) May 13, 2019 and (ii) the date of entry of an order confirming a chapter 11 plan for the Debtors (Docket No. 776).

18. As of March 26, 2019, Kmart has not elected to assume the Lease, and ESL has not designated the Lease for assumption and assignment in accordance with the Sale Order.

19. On March 27, 2019, Movant exercised its contractually-granted option under Paragraph 4 of the Lease (the "Notice"), triggered by the Notice of Intent previously served by Kmart on Movant. A true and correct copy of the Notice is attached hereto as Exhibit B.

### IV.  ARGUMENT

#### A. The Automatic Stay Does Not Apply to Movant's Contractual Right to Exercise an Option Granted Under the Lease, Triggered by a Contractual Right Exercised by Kmart Under the Lease

20.  Following the commencement of a debtors' bankruptcy proceeding, the automatic stay does not apply to a party's absolute right to terminate a lease entered into with the debtor prepetition. Rather, the party is entitled to exercise its option and terminate a lease, without relief from the automatic stay, in accordance with the lease's provisions. See In re Unidigital Inc., 2000 WL 33712306, at *2 (Bankr. D. Del. Dec. 8, 2000) ("[T]he intervening filing of a petition for relief [does not] give the lessee a right to extend a contract beyond its original terms. The Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms. The Bankruptcy Court cannot recreate an interest for the Debtor where none exists."); Valley Forge Plaza Assocs. v. Schwartz, 114 B.R. 60, 62 (E.D. Pa. 1990) ("A debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside bankruptcy.")

21.  In the instant case, Movant has a contractual right to exercise an option granted under Article 4 (Additional Rent) of the Lease, in order to preserve the additional rent due under the Lease and to terminate the Lease upon the occurrence of certain events. This is an unambiguous contractually agreed-upon remedy that was granted to Movant under Article 4 of the Lease to the extent Kmart would choose to cease doing business at the Leasehold. The Notice merely expresses Movant's option to select its remedies. Kmart clearly has chosen to cease doing business at the Leasehold following the going out of business sale. Movant clearly now has the right to exercise its corresponding remedies. If Movant is not permitted to elect its option to enforce its remedies, it would lose a material bargained for right under the Lease and

8

Kmart would clearly enlarge its rights beyond those granted to them in the Lease, solely as a result of its bankruptcy. Specifically, Movant would be forced to lease the Leasehold, while the store is not operational, while the tenant pays a lower rent for the entire duration of the Lease (potentially decades under the successive options to extend the term pursuant to Article 13 of the Lease). Both of these results are clearly substantial detriments to Movant. Indeed, Movant clearly has a vested interest in not having a commercial leasehold sit "dark" for an indefinite period of time. The reasons are obvious and include, safety, waste, loss of value to the land, etc. Similarly, Movant expressly bargained for a percentage of gross sales (1% of sales in excess of $10,338,592 with no limit) as additional rent under the Lease in addition to the "annual minimal rental." Movant has bargained to protect these rights under the Lease and has the express option now to prevent these undesirable results. Kmart would obtain an irreversible windfall if Movant is denied these rights. Such result would be improper and yield an outcome contrary to the purpose of the automatic stay. The Notice is merely the mechanism whereby Movant is expressing its choice to enforce its option rights. As a result, Movant asserts that expressing its choice is not barred by the automatic stay.

22.     Further, Movant's contractual rights to exercise the option under Article 4 are not altered by the Debtors' bankruptcy filing. The exercise of Movant's option at this juncture does not impact the Debtors' use and enjoyment of the Leasehold, nor does it impact Kmart's going out of business sale being conducted at the Leasehold. Movant has also agreed and once again desires to make itself clear that it does not and will not seek to have Kmart vacate the Leasehold until its going out of business sale is complete. As a result, the automatic stay under Section 362(a) of the Bankruptcy Code is inapplicable to Movant's exercise of its option under Article 4 of the Lease and issuance of the Notice to Kmart.

9

**B. Relief from the Automatic Stay is Warranted to the Extent the Automatic Stay is Applicable**

23.  To the extent this Court determines the automatic stay under Section 362(a) of the Bankruptcy Code does apply to Movant's exercising of its option under Article 4 of the Lease, *nunc pro tunc* relief from the automatic stay for Movant for issuance of the Notice is warranted.

24.  "A party moving to lift the stay under section 362(d)(1) 'must initially produce evidence establishing "cause" for the relief he requests.'" In re Project Orange Assocs., LLC, 432 B.R, 89, 103 (Bankr. S.D.N.Y. 2010) (quoting In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)). "Once the moving party establishes a prima facie case for 'cause,' the burden shifts to the debtor to disprove its existence." Id. (citing Burger Boys, Inc. v. South St. Seaport Ltd. Partnership (In re Burger Boys, Inc.), 183 B.R. 682, 687 (S.D.N.Y. 1994), and In re Touloumis, 170 B.R. at 828).

25.  Although the Bankruptcy Code does not define "cause," courts have stated that it "is viewed as a broad and flexible concept." In re M.J. & K Co., 161 B.R. 586, 593-95 (Bankr. S.D.N.Y. 1993) (granting motion for relief from automatic stay for "cause" because exclusive agreement was terminable at will by either party). Cause has also "been defined to mean 'any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding.'" In re Martens, 331 B.R. 395,398 (8th Cir. BAP 2005) (citing In re Food Barn Stores, Inc., 159 B.R. 264, 266 (Bankr. W. D. Mo. 1993). "In determining whether the stay should be modified or terminated for cause, courts in the Second Circuit and elsewhere either (1) analyze twelve factors enumerated by the Second Circuit in Sonnax; or (2) engage in fact-intensive inquiries which appear to be loosely based on the Sonnax

factors, mainly attempting to maintain the prepetition *status quo ante* between the parties." Id. The twelve "Sonnax" factors are as follows:

1) whether relief would result in a partial or complete resolution of the issues;
2) lack of any connection with or interference with the bankruptcy case;
3) whether the other proceeding involves the debtor as a fiduciary;
4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5) whether the debtor's insurer has assumed full responsibility for defending it;
6) whether the action primarily involves third parties;
7) whether litigation in another forum would prejudice the interests of other creditors;
8) whether the judgment claim arising from the other action is subject to equitable subordination;
9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
10) the interests of judicial economy and the expeditious and economical resolution of litigation;
11) whether the parties are ready for trial in the other proceeding; and impact of the stay on the parties and the balance of harms.

Id. at 104 (quoting Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990)). "A court need only apply the factors that are relevant to the particular case and does not need to give each factor equal weight." Id. In the instant case, because the issuance of the Notice does not involve litigation in another forum, only the first, second, and twelfth Sonnax factors require any consideration by the Court.

26.     The first Sonnax factor, whether relief would result in a partial or complete resolution of the issues, weighs in favor of granting the requested relief. The issuance of the Notice in accordance with the terms of Article 4 of the Lease would essentially end the relationship between Movant and Kmart following the going out of business sale, and no further claims for rent would exist under the Lease following Kmart's departure from the Leasehold.

27.     The second <u>Sonnax</u> factor, the lack of any connection with or interference with the bankruptcy case, also weighs in favor of granting the requested relief. Kmart has informed Movant that it intends to cease operating its store at the Leasehold following its going out of business sale. It appears Kmart wishes to "move on". Although Kmart has identified the Lease as a "potential" lease to be assumed and assigned, without the ability to operate a store at the Leasehold after the going out of business sale, it's unclear what it would assume. While Kmart could try to negotiate a deal with Movant to stay at the Leasehold (discussions Movant would participate in), such possibility would not be a sufficient reason to prevent Movant from preserving its rights by providing the Notice pursuant to Article 4 of the Lease.

28.     The third and final <u>Sonnax</u> factor applicable in the instant case is the impact of the automatic stay on the parties and the balance of harms. Such factor also weighs in favor of granting the requested relief. In considering the balance of harms, it is important to note that Movant's option to terminate is not the result of a financial default by Kmart under the Lease and does not impose a penalty upon Kmart by reason of either the bankruptcy filing or Kmart's financial condition. See <u>In re Lee West Enterprises, Inc.</u>, 179 B.R. 204, 209 (Bankr. C.D. Cal. 1995) (holding that cessation of business clause was not an invalid ipso facto clause because "the default is not based upon the Debtor's financial condition or the filing of bankruptcy, but rather on the closure of the dealerships' operations"). Rather, Movant's option and resulting right to provide Kmart with a notice of termination has only been triggered Kmart's independent decision to discontinue its use of the Leasehold, an option that it is expressly afforded under the terms of the Lease. Notably, Kmart has thus far benefitted from the automatic stay and Movant's prior Stipulation, enjoying continuous and uninterrupted possession of the Leasehold for the purpose of conducting its liquidation sale. Now, however, as the going out of business sale is nearing

completion and inevitably the store will "go dark", Movant would be faced with the looming potential expiration of its option to give notice of termination pursuant to Article 4 of the Lease.

29. Indeed, Article 4 of the Lease was bargained for and included for significant and material economic reasons by the parties in order to avoid harm to either party. As a landlord, Movant (and its predecessors) desired to have a store in the Leasehold that is open for business at all times, thereby maximizing revenue. As a result, the overall rent calculation is directly related to the gross sales produced by Kmart. In turn, Kmart (and its predecessors), as tenant, desired to have an "out" if it ever elected to discontinue its operation of the store, so that it would not remain obligated for rent for an indefinite period of time. As a result, the Lease specifically provides for the right for Kmart to voluntary opt to discontinue its business operations, with a corresponding remedy for Movant. Kmart has now done just what was anticipated, putting Movant on notice that Kmart is discontinuing its store operations at the Leasehold on a permanent basis. To that end, Movant must be permitted to exercise its corresponding option and issue the Notice.

30. Finally, it is well established that courts recognize the balance of interests between parties to commercial agreements in determining whether terms may be excised from the bargained-for exchange between parties, and do not support the blanket invalidation of lease provisions. See, e.g., In re Joshua Slocum Ltd., 922 F.2d 1081, 1090-91 (3d Cir. 1990) (holding that the bankruptcy court did not have the authority to excise material and essential rent and occupancy term of a lease despite having some latitude in waiving contract provisions under Section 365). Any remedies fashioned by a bankruptcy court must remain sensitive to the rights of non-debtor parties and not invade material and essential terms bargained between the parties. For example, in Slocum, the Third Circuit Court of Appeals held that the bankruptcy

court lacked the authority to excise a lease provision that provided the landlord and the tenant with an option to terminate the lease dependent in the event that average sales above specified thresholds were not generated by the tenant. Slocum, 922 F.2d at 1091. Specifically, the Court indicated that the provision must be read together with a clause requiring the tenant to pay percentage rent on gross sales in excess of the specified threshold for a given lease year. When these provisions were read together, the Court concluded that they "clearly indicate that a bargained for element in this contract was that tenant . . . average a certain volume of sales . . . so that the Landlord could accurately calculate the minimum total rent expected. . . ." Id. Standing alone, the Court also held the termination option was "an essential bargained for element of this lease agreement because it governs occupancy." Id. The Court rejected an argument that the provision was not material, stating that it was "material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange. This clause, intended to benefit both the landlord and the tenant, was negotiated at arm's length to accommodate the commercial expectations of the parties." Id. at 1092. Indeed, the Court noted that the provisions acted as a "minimum income guarantee" for the landlord, stating that "nothing could be as material or economically significant to landlords as some minimal assurance that there will be a positive return on their investments." Id. Therefore, bankruptcy courts must remain sensitive to the rights of the non-debtor contracting party and policy requiring the non-debtor party receive the full benefit of its bargain.

31.   In the instant case, similar to in Slocum, the Lease contains an option to terminate premised indirectly upon the gross sales generated by Kmart. Importantly, in the case of the Lease, the termination is not a default provision, but is an option that only arises if Kmart first

14

elects to completely stop producing revenues and discontinue its store. That is exactly what has occurred at this juncture.

32. In conclusion, a store closing is not an optimal scenario for the tenant, landlord, or the community in which the parties operate. However, the parties to the Lease negotiated specific terms to effectuate the same, none of which trigger any default or penalty under the Lease or have negatively impacted Kmart's ability to conduct its going out of business sale. To that end, because Kmart has elected to close the store at the Leasehold (as permitted under Article 4 of the Lease), Movant will lose the benefit of its bargain under the Lease if it is not permitted to exercise its option to terminate by issuing the Notice. Accordingly, to the extent required, Movant requests that this Court grant *nunc pro tunc* relief from the automatic stay to the extent necessary to permit Movant's issuance of the Notice to Kmart in accordance with Article 4 of the Lease.

WHEREFORE, Movant respectfully requests that this Court enter an Order, substantially in the form submitted herewith, affirming that the automatic stay does apply to the Notice; or in the alternative, granting Movant *nun pro tunc* relief from the automatic stay to permit Movant's issuance of the Notice to Kmart in accordance with Article 4 of the Lease.

Dated: March 27, 2019

LEECH TISHMAN FUSCALDO & LAMPL, LLC

/s/ Alan M. Kindred
Alan M. Kindred, Esq. (NY ID # 2086189)
Patrick W. Carothers, Esq.
Gregory W. Hauswirth, Esq.
525 Fifth Avenue
New York, NY 10017
Telephone: 412.606.3182
Facsimile: 412.227.5551

*Attorneys for Libby Dial Enterprises, LLC*