# Exhibit "A"



**Parties**

THIS LEASE made and entered into as of this 25th day of November 1974 between David Baker and Lee J. Baker

~~a~~ ~~corporation~~ having ~~its principal office~~ their mailing address, at P. O. Box 11700, Columbia, South Carolina 29211 (herein referred to as "Landlord"), and S. S. KRESGE COMPANY, a Michigan corporation having its principal office at 3100 West Big Beaver Road, Troy, Michigan 48084 (herein referred to as "Tenant"),

WITNESSETH: That in consideration of the rents, covenants and conditions herein set forth, Landlord and Tenant do hereby covenant, promise and agree as follows:

**Demised Premises**

1. Landlord does demise unto Tenant and Tenant does take from Landlord for the lease term the following property: Tenant's completed building ~~or buildings~~ (designated K mart ~~and Food Market~~), together with site improvements to be constructed as hereinafter specified by Landlord at its expense together with land comprising not less than eleven plus ( 11+ ) acres described in Exhibit "A" attached hereto and made a part hereof, and situated in the City of Sumter , County of Sumter , State of South Carolina ; said building ~~or buildings~~ to be in the locations depicted on Exhibit "B" attached hereto and made a part hereof, and of the following dimensions:



A one-story building having a width of 321'4" by a depth of 223', plus a garden shop with dimensions of 66'3" x 133', plus loading dock; said building designated "k mart" on Exhibit "B" and containing a gross ground floor area of 71,657 square feet, more or less.

(except that portion of said land upon which buildings, other than Tenant's buildings, shown on said Exhibit "B", are erected).

Said land, completed buildings and site improvements, together with all licenses, rights, privileges and easements, appurtenant thereto shall be herein collectively referred to as the "demised premises".

**Term**

2. The term of this lease shall commence upon the "date of occupancy by Tenant", as that term is defined in Article 11 hereof, and shall terminate upon such date as shall be TWENTY-FIVE ( 25 ) years from the last day of the month in which said date of occupancy by Tenant shall occur; provided, however, the term of this lease may be extended as provided in Article 13 hereof. The phrase "lease term", as used in this lease, shall be the term of this lease and any extension thereof pursuant to said Article 13.



**Annual Minimum Rental**

3. Tenant shall, during the lease term, pay to Landlord, at such place as Landlord shall designate in writing from time to time, an annual minimum rental of TWO HUNDRED NINE THOUSAND SIX HUNDRED FORTY ————————————————————————DOLLARS ($ 209,640.00 ), unless abated or diminished as hereinafter provided, in equal monthly installments on the first day of each month, in advance, commencing upon the first day of the lease term; provided, however, in the event the first day of the lease term shall not be the first day of a calendar month, then the rental for such month shall be prorated upon a daily basis.



**Additional Rental**

4. In addition to the aforesaid annual minimum rental, with respect to any lease year during the lease term in which Tenant's "gross sales", as hereinafter provided, shall exceed the sum of SIX MILLION SIX HUNDRED FIFTY THOUSAND ———————————— ———————— DOLLARS ($ 6,650,000.00 ), Tenant shall pay to Landlord as additional rental an amount equal to one percent (1%) of gross sales exceeding SIX MILLION SIX HUNDRED FIFTY THOUSAND————————————————————————DOLLARS ($ 6,650,000.00 ) up to but not in excess of ELEVEN MILLION FIVE HUNDRED FIFTY THOUSAND————————————————————DOLLARS ($11,550,000.00 ); and Tenant shall pay to Landlord as additional rental an amount equal to five-tenths of one percent (.5%) of gross sales for such lease year exceeding ELEVEN MILLION FIVE HUNDRED FIFTY THOUSAND ——————————————————— DOLLARS ($ 11,550,000.00 ) up to but not in excess of FOURTEEN MILLION FOUR HUNDRED FORTY THOUSAND —————————— DOLLARS ($ 14,440,000.00












**Additional Rental (continued)**

thirtieth (30)

Said additional rental shall be paid on or before the ~~twenty-first (21st)~~ day following the end of each "lease year". For the purposes of this lease, a "lease year" shall be each successive period of twelve (12) consecutive calendar months from the last day of the month in which said lease term shall commence. Sales for any period preceding the first lease year shall be included in gross sales reported for the first lease year. Tenant shall on or before the ~~twenty-first (21st)~~ day following the end of each lease year or lesser period, deliver to Landlord a statement signed by an officer of Tenant certifying the true amount of the gross sales for such lease year or lesser period. The term "lesser period", as used herein, shall be any period beginning on the first (1st) day of any lease year and ending, by reason of the termination of this lease, prior to the end of such lease year. In the event that a period of more or less than twelve (12) months shall be so required to be included in any such statement, then the dollar amounts referred to in the preceding paragraph shall be proportionately increased or decreased, as the case may be.

Should Tenant at its option operate its fountain and lunch counter prior to opening for other business, such operation shall not be an acceptance of the demised premises, or an acknowledgment that the representations and warranties of Article 12 shall have been fulfilled, or an opening for business under Article 11 or any other provision of this lease, but sales from such operation shall be included in Tenant's reported gross sales for the first lease year.

Landlord or its agent may inspect Tenant's record of gross sales annually, provided such inspection shall be made at Tenant's principal office within six (6) months after the statement of sales shall be delivered to Landlord and shall be limited to the period covered by such statement. Except to the extent that disclosure shall be required for any bona fide sale or mortgage of the demised premises or for legal proceedings in any court, at law or in equity, Landlord shall hold in confidence sales figures or other information obtained from Tenant's records.

The term "gross sales", as used herein, shall be the total sales of merchandise or services made by Tenant or any occupant of the demised premises, whether wholesale or retail, cash or credit (including merchandise ordered on the demised premises and delivered from another place) and shall include sales made from trucks, trailers, vans or other temporary facilities used by Tenant on any part of the land described in Exhibit "A", except that the following shall be excluded:

(a) Sales of merchandise subsequently returned for refund or credit, merchandise transferred to a warehouse or another store of Tenant, discounts on merchandise which shall be allowed to employees of Tenant, or merchandise which shall be issued in redemption of trading stamps, if any, which shall have been issued free of charge to Tenant's customers at the time of sale of other merchandise or services;

(b) Any and all taxes levied upon, assessed against, or measured by the receipt or purchase of merchandise by any occupant of said demised premises, and any and all occupational sales taxes and other taxes levied upon, assessed against, based upon, or measured by (i) such occupant's gross receipts, or any part thereof, or (ii) the sale or sales price of merchandise and services, or either, and which shall be payable by such occupant, whether or not collected by such occupant from its customers as reimbursement or as agent of the taxing authority, and whether or not the same shall be commonly known as a sales tax, use tax, retailers' occupational tax, gross receipts tax or excise tax; provided, however, said taxes to be excluded from gross sales shall not include any net income tax, franchise, or any other tax not levied upon or computed upon gross sales or gross receipts, or any portion thereof; provided further, said taxes to be excluded from gross sales shall be excludable regardless of whether imposed under any existing or future orders, regulations, laws, statutes or ordinances;

(c) Receipts from cigarettes, lockers, stamp machines, public telephones, pay toilets, "kiddie rides", money orders and all licenses sold to the public;

(d) Service and interest charges for time payment accounts and charge accounts;

(e) ~~All sales of merchandise or services made by any food market which shall occupy any portion or portions of the demised premises; and~~

(f) All sales of automotive gasoline or diesel fuel.



2

**Additional Rental (continued)**

Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention so to do and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within ninety (90) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said ninety (90) day period and the Tenant shall be released from any further liability under this lease.

Should the Landlord fail to exercise its said option and should the Tenant at any time thereafter discontinue the operation of its said store then and in any such event, anything in this lease to the contrary notwithstanding, it is hereby mutually agreed that the rent which Tenant shall pay to the Landlord during the remainder of the term of this lease shall be the rent more particularly set forth in said Article 3, and the word "minimum" in said Article 3 shall be deemed deleted. Upon the discontinuance of the operation of said store, all of the covenants and provisions contained in the preceding paragraph of this article shall be of no further force and effect.

**Real Estate Taxes**

5. Tenant shall pay and discharge all ad valorem real estate taxes and assessments which shall be levied against the taxable premises during the lease term, excluding therefrom payment of assessments which are incurred or levied as a result of Landlord's activity in developing the demised premises for Tenant's occupancy.

To the extent permitted by law, Tenant may pay any such assessment in annual installments. In the event any such assessment shall be payable in a lump sum or on an installment basis, Tenant shall have the sole right to elect the basis of payment. If Tenant shall elect to pay such assessment on the installment basis, then Tenant shall pay only those installments which shall become due and payable during the lease term. Any such installments due and payable in the years in which this lease commences and terminates shall be prorated proportionately.

Tenant shall not be chargeable with nor be obligated to pay any tax of any kind whatsoever which may be imposed on the Landlord, the rents payable hereunder or the demised premises except the ad valorem real estate taxes and assessments mentioned in the first paragraph of this Article 5.

The amount, if any, by which the ad valorem real estate taxes and assessments payable hereunder exceed **SIX THOUSAND THREE HUNDRED**

DOLLARS ($ 6,300.00 ) during any lease year, shall be hereinafter referred to as an "excess tax payment". All excess tax payments shall be deductible by Tenant from additional rentals, as defined in Article 4, due and payable for such lease year. In the event the excess tax payment for any lease year exceeds said additional rental due and payable during the same lease year, the amount by which said excess tax payment exceeds said additional rental shall be carried forward and be deductible from additional rentals due and payable for succeeding lease years on a cumulative basis.
**\* See Addendum attached hereto.**

The taxable premises, as defined below, shall be separately assessed if practicable from any contiguous lands and from any additional lands and improvements incorporated into the demised premises in the future.

In the event Tenant constructs, as provided in Article 16 hereof, additional buildings or structures on any portion of the land described in Exhibit "A", said additional buildings or structures shall be excluded from the taxable premises. Said additional buildings or other structures shall be separately assessed and all ad valorem taxes and assessments levied thereon shall be paid and discharged by Tenant and shall not be deductible from additional rentals as provided herein.

The Tenant shall have the right to participate in all negotiations of tax assessments. Tenant shall have the right to contest the validity or the amount of any tax or assessment levied against the taxable premises by such appellate or other proceedings as may be appropriate in the jurisdiction, and may defer payment of such obligations, pay same under protest, or take such other steps as Tenant may deem appropriate; provided, however, Tenant shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises. Landlord shall cooperate in the institution and prosecution of any such proceedings initiated by the Tenant and will execute any documents required therefor.

Should the Landlord institute proceedings to contest the validity or the amount of any tax or assessment levied against the taxable premises, the Tenant will cooperate in such proceedings.

(SEMI-GROSS) 5/23/72

**Real Estate Taxes (continued)**

Should any of the proceedings referred to in the preceding two paragraphs of this Article 5 result in reducing the total annual real estate tax and assessment liability against the taxable premises, the Tenant shall be entitled to receive all refunds paid by the taxing authorities. After payment of all of Landlord's and Tenant's expenses incurred in any such proceeding in which a refund is paid, the Tenant shall pay to the Landlord either the balance of such refund or, alternatively, Tenant shall pay to the Landlord that part of the excess tax payment which may have been deducted from additional rent in the tax year for which the refund was granted, whichever amount shall be the lesser. Any balance of said refund remaining after such payment to Landlord shall belong to the Tenant. If no refund shall be secured in any given proceeding, the party instituting the proceeding shall bear the entire cost.

The term "taxable premises", as used in this lease, shall be that certain land described in Exhibit "A" together with such buildings and other improvements required by Tenant to be constructed thereon by Landlord under the terms of this lease.

**New Building by Landlord**

6. Tenant's said buildings and site improvements shall be completed and delivered to Tenant promptly and with due diligence. If the performance by Landlord of any of its obligations hereunder is delayed by reason of the act or neglect of Tenant, act of God, strike, labor dispute, boycott, governmental restrictions, riot, insurrection, war, catastrophe, or act of the public enemy, the period for the commencement or completion thereof shall be extended for a period equal to such delay. Landlord warrants that a general contract for construction of said buildings and improvements referred to in Articles 1 and 12 hereof shall be let, rough site grading shall be completed and foundations and footings commenced not later than February 1, 1975. If for any reason whatever Landlord shall fail to comply fully with this warranty, Landlord shall so notify Tenant in writing and in such event, Tenant shall have, in addition to other remedies which may be available to it by law or otherwise, the option to terminate this lease within sixty (60) days thereafter by notice to Landlord; provided, further, in the event that, regardless of the reason therefor, said buildings and site improvements shall not have been completed in accordance with working drawings and specifications prepared by Landlord as approved in writing by Tenant's Construction Department, and possession thereof tendered to Tenant prior to September 15, 1975, then Tenant shall, at any time thereafter, have the further option of terminating this lease by notice to Landlord. Notwithstanding anything to the contrary herein contained, in the event that the lease term shall not have commenced prior to such date as shall be seven (7) years from the date of this lease, then this lease shall be automatically terminated without further act of either party hereto.

**Drawings and Specifications**

7. Tenant's said buildings and site improvements shall be constructed by Landlord, at its sole cost and expense, in accordance with the working drawings and specifications prepared by Landlord which shall, with respect to standards of construction and division of responsibility for supplying materials and equipment, substantially satisfy the provisions of Tenant's typical store drawings and specifications, prior receipt of which Landlord hereby acknowledges and which are identified as Set No. 2385, containing such additions, changes and modifications as are more particularly set forth in those certain letters dated May 22, 1974 and August 27, 1974, written by Mr. James A. Kilgore, A.I.A., Manager of Design Division of Tenant's Construction Department to Baker & Baker, P. O. Box 11700, Columbia, South Carolina, copies of which are attached hereto and marked as Exhibit "C".

(a) Said working drawings are subject to the following exceptions and such other deviations as may be approved in writing by Tenant's Construction Department.

(b) Changes of type and standards of construction and of arrangement to the extent as shall be required by applicable laws, codes or ordinances.

4

**Drawings and Specifications (continued)**

Said working drawings and specifications shall be submitted to Tenant for approval prior to commencement of construction and such approval shall not be unreasonably withheld. Within sixty (60) days after receipt of such working drawings and specifications, Tenant shall in writing, inform Landlord of required revisions or corrections thereto which are necessary to conform said working drawings and specifications to the Tenant's typical store drawings and specifications hereinbefore referred to, and Landlord shall make such revisions or corrections and resubmit them for Tenant's final approval. In the event Tenant shall not inform Landlord of such desired revisions or corrections within said sixty (60) days, said working drawings and specifications shall be deemed approved and accepted for the purposes hereof.

Said typical drawings and specifications, and working drawings and specifications as approved by Tenant shall constitute a part of this lease.

**Guarantee of Materials**

8. Landlord shall unconditionally guarantee all work performed by or for Landlord in the construction of Tenant's buildings and site improvements against defective workmanship and materials for the period of one (1) year from the commencement of the lease term. Landlord shall assign to Tenant any and all guarantees of workmanship and materials which it may receive.

**Advance Possession for Fixturing**

9. For a period of thirty (30) days prior to completion of Tenant's buildings by Landlord, as set forth in Article 11(b), Tenant shall have the privilege, rent free, of entering said buildings for the purposes of installing storage bins, storing merchandise, and other of Tenant's construction activities in conjunction with Landlord's preparation for Tenant's acceptance of said buildings, which shall not create unreasonable interference with the work of the Landlord. Such entry shall not be construed as an acceptance of the demised premises by the Tenant under the provisions of this lease or as a waiver of any of the provisions hereof.

**Parking and Other Common Areas**

10. Prior to commencement of the lease term, Landlord shall construct, in accordance with said working drawings and specifications approved by Tenant, on the premises described in Exhibit "A", all of the sidewalks, service drives, parking areas, driveways, streets, curbs, directional signs (not Tenant's pylon) and related improvements, substantially as shown on said working drawings and specifications (all of which improvements shall hereinafter, along with the land thereon constructed, be referred to as the "common areas"). * **See Addendum attached hereto.**

Landlord shall also construct or cause to be constructed upon certain property or rights-of-way contiguous to the premises described in Exhibit "A", all sidewalks, driveways, streets, curbs, acceleration, deceleration and stacking lanes, traffic controls, and signals, directional signs and related improvements in accordance with said working drawings and specifications and the requirements of any governmental bodies.

Landlord covenants and represents that at the commencement of the lease term, there shall be adequate sidewalks, driveways, roadways and entrances for automotive and pedestrian ingress and egress to and from the demised premises and adjacent public streets and highways, as shown on said working drawings and specifications.

Landlord further covenants that the aggregate area provided for the parking of automobiles shall during the lease term be sufficient to accommodate not less than **six hundred six** ( **606** ) automobiles on basis of arrangement depicted on Tenant's working drawings and specifications.

At least sixty (60) days prior to the commencement of the lease term, Landlord shall provide paved driveways running from the adjoining public streets around the front, sides and rear of Tenant's buildings in order to secure convenient ingress and egress from said public streets to the front and rear entrances of Tenant's buildings for the purpose of receiving and delivering fixtures, merchandise and other property. Such driveways shall be of sufficient width to permit the passage, unloading, and if necessary, the turning around of trailer trucks and other commercial vehicles.

During the lease term, Landlord shall keep Tenant insured against all statutory and common law liabilities for damages on account of damage to property or injuries and loss of life sustained by any person or persons within said common areas, in a policy or policies in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) with respect to injury to any one person and in the amount of One Million Dollars ($1,000,000.00) with respect to any one accident or disaster, and in the amount of One Hundred Thousand Dollars ($100,000.00) with respect to damage to property; and Landlord shall also indemnify and save Tenant harmless against any such liability. Any such policies shall bear endorsements to the effect that Tenant shall be notified not less than five (5) days in advance of any modification or cancellation thereof. Copies of such policies, so endorsed, or certificates evidencing the existence thereof, shall be promptly delivered to Tenant upon written request therefor.

5

(SEMI-GROSS) 5/23/72

**Parking and Other Common Areas (continued)**

In the event that unauthorized persons, including tenants or invitees of tenants occupying buildings now or at any future time located beyond the limits of the land described in Exhibit "A" utilize the demised premises for parking or other purposes to an extent which shall be objectionable to Tenant, Landlord at its sole expense, upon written request by Tenant, shall take whatever action as shall be so requested to prevent said unauthorized utilization, including the erection of fences or other barricades.

Should Tenant, at any time, utilize portions of the common areas for outdoor shows, entertainment or such other uses which in Tenant's judgment tend to attract the public, Tenant shall give Landlord notification of such intended use, a reasonable time in advance thereof, and on request supply Landlord with reasonable proofs of adequate insurance or indemnification against damage to property, injuries to persons and loss of life sustained in connection therewith. In addition, Tenant shall be responsible for any physical damage to said common areas resulting from said use. Rent, if any, from such use shall be included as part of "gross sales" under Article 4 hereof.

**Store Opening**

11. The term "date of occupancy by Tenant", as used in this lease, shall be the first to occur of the following two dates: (a) the date upon which Tenant shall open for business, or (b) the date which shall be sixty (60) days (plus a period of time equal to any delays due to conditions beyond Tenant's control) after the date upon which (i) Tenant's buildings and site improvements shall be completed in accordance with said working drawings and specifications and the possession thereof shall be tendered to Tenant, and (ii) all of the representations and warranties set forth in Article 12 shall be fulfilled; except, however, notwithstanding anything to the contrary in this lease contained, in the event said date of occupancy shall occur during the period between November 1 and the last day of February, the lease term shall not commence until March 1 unless Tenant shall elect to open for business prior to such date. Tenant shall have the option to open for business prior to the completion of the matters set forth in subdivisions (i) and (ii) of this Article 11, and in the event of the exercise of such option, Landlord shall complete said buildings and site improvements as expeditiously as possible; provided, however, if Landlord shall have failed to complete said buildings and improvements according to the said working drawings and specifications within ninety (90) days after Tenant opens for business, Tenant shall thereafter at any time be privileged, but not obligated, to complete, correct, or remedy in all or part any such deficiency, and the cost therof shall be deducted from the rentals due under this lease, without waiver of Tenant's other remedies hereunder.

**Landlord's Representations and Warranties**

12. Landlord represents, warrants and covenants that it shall, prior to commencement of the lease term, complete the buildings and site improvements substantially in accordance with the site plan depicted on said Exhibit "B", including completion of said common areas in accordance with the provisions of Article 10 hereof. Landlord further covenants that it will not erect any buildings or other structures on the land described in Exhibit "A" except as shown on said Exhibit "B".

Landlord further represents, warrants and covenants that the land described in Exhibit "A" will, at the time of the commencement of construction by Landlord and at the time of the commencement of the lease term, be properly zoned for Tenant's intended use, and that all necessary governmental consents, permits and approvals for such use shall have been obtained. Further, Landlord shall deliver to Tenant a Certificate of Occupancy prior to commencement of the lease term.   "See Addendum attached hereto"

The lease term shall not commence and said annual minimum rental and other charges payable under this lease shall not commence to accrue until the foregoing representations and warranties shall have been fulfilled; provided, however, in the event that Tenant shall elect to open for business before the Landlord shall have fulfilled the foregoing representations and warranties, the term of this lease shall commence, but Tenant shall not be obligated to pay the annual minimum rental or the additional rental; provided, further, in lieu thereof, Tenant shall pay monthly in arrears one percent (1%) of said gross sales, and Tenant shall continue said payment until Landlord's said representations and warranties shall be fulfilled, at which time Tenant shall commence payment of the rental set forth in Articles 3 and 4 hereof.

In the event Landlord's said representations and warranties shall not be fulfilled within ninety (90) days after commencement of the lease term, Tenant thereafter shall have the option of either completing said representations and warranties at Landlord's cost and expense, or, alternatively, Tenant shall have an option to terminate this lease by notice to Landlord, which notice shall state an effective date of termination of not less than sixty (60) days from the date of such notice.

**Options to Extend Lease**

13. (a) Tenant shall have ten (10) successive options to extend the term of this lease for an additional period of five (5) years on each such option, such extended term to begin respectively upon the expiration of the term of this lease or of this lease as extended and the same terms and conditions as herein set forth shall apply to each such extended term. If Tenant shall elect to exercise the aforesaid options, it shall do so by giving notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or of this lease as extended.

**Options to Extend Lease (continued)**

(b) Regardless of the exercise or nonexercise by Tenant of any or all of the foregoing options, Tenant shall have, unless the last day of the lease term shall be January 31 of any year, the option to extend (or further extend, as the case may be) the term of this lease for such period of time as shall cause the last day of the term of this lease to be the January 31 next succeeding the date upon which the term of this lease would expire but for the exercise of this option. This option shall be exercised by notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or any extension thereof. Tenant's rental during this option period shall be the same rental payable under the terms of this lease at the time Tenant notifies Landlord of its intention to exercise this option.

**First Refusal to Purchase Option**

14. Anything in this lease contained to the contrary notwithstanding, and without in any manner affecting or limiting any of the rights, privileges, options or estates granted to Tenant under this lease, it is agreed that if the Landlord at any time during the term of this lease (excepting the first lease year) receives one or more bona fide offers from third parties to purchase the demised premises or property of which the demised premises are a part, and if any such offer is acceptable to the Landlord, then Landlord agrees to notify Tenant in writing, giving the name and address of the offeror, and the price, terms and conditions of such offer, and Tenant shall have thirty (30) days from and after the receipt of such notice from Landlord in which to elect to purchase the property for the consideration contained in the bona fide offer. If Tenant does not elect to purchase said property and Landlord thereafter sells the property, the purchaser shall take the property, subject to and burdened with all the terms, provisions and conditions of this lease, including this Article 14 and the rights of the Tenant under this lease as against the new owner shall not be lessened or diminished by reason of the change of ownership. Tenant's failure at any time to exercise its option under this Article 14 shall not affect this lease or the continuance of Tenant's rights and options under this Article 14 or any other article.

In the event Tenant elects to purchase the property as provided in this lease, then Landlord shall, within thirty (30) days after receipt of such notice of election by Tenant, deliver to Tenant a title insurance policy in the amount of the consideration set forth in such offer, issued by a responsible title guarantee company, showing a good and marketable title in Landlord. If Landlord fails or refuses to furnish the title policy, then Tenant may, at its election, procure the same at Landlord's expense, and in the amount of the purchase price, and deduct the cost thereof from the cash consideration to be paid for the property. Tenant shall have thirty (30) days after receipt of the title policy in which to examine the title and notify the Landlord whether or not the title is acceptable to Tenant. If Tenant is willing to accept Landlord's title and consummate the purchase, then Landlord shall, within ten (10) days after written notice thereof from Tenant, convey the premises to Tenant by full warranty deed, free and clear of all liens and encumbrances except highway easements, private road easements and restrictions of record which were of record as of the date of Tenant's acceptance of the premises hereunder or incorporated in an amendment to this lease, if any, and deliver such deed to Tenant upon tender of the consideration.

Notwithstanding any other provisions of this lease, the provisions of this Article 14 will not apply to any sale of the demised premises or any property of which the demised premises are a part at foreclosure, and shall not be binding upon any purchaser at foreclosure, any mortgagee in possession, or any holder of a deed in lieu of foreclosure or the successors or assigns of any of the foregoing, or to any sale of the demised premises by Landlord in connection with sale and leaseback financing.

If Tenant is not willing to accept Landlord's title, Tenant shall make any objections thereto in writing to Landlord and Landlord shall be allowed one hundred twenty (120) days to utilize its best efforts to make such title acceptable to Tenant. If such title is not rendered marketable within one hundred twenty (120) days from the date of said written objections thereto, Tenant may, at its election, take such action, including instigation of legal process (in which the Landlord agrees to participate) to remedy any such defect in title making such acceptable to Tenant, and to deduct all costs thereof from the cash consideration to be paid for the property. If the Tenant is unable to correct such defects in title or elects not to attempt such remedy, neither party shall be held liable for damages to the other party and both parties shall be released of all liabilities and obligations under this Article 14.

\* See Addendum attached hereto

**Repairs and Maintenance**

15. Tenant shall make and pay for all maintenance, replacement and repair necessary to keep the demised premises in a good state of repair and tenantable condition, except for the following maintenance, replacement or repair which shall remain the Landlord's sole responsibility:

(a) all maintenance, replacement and repair to the roof, outer walls and structural portion of the buildings which shall be necessary to maintain the buildings in a safe, dry and tenantable condition and in good order and repair; and

(b) all repairs, maintenance or replacement of or to the demised premises, including but not limited to, underground utility installations and underground electrical conduit and wire, which are occasioned by settlement of the premises or a portion thereof, or caused by soil conditions; and

7

**Repairs and Maintenance (continued)**

(c) all repairs and replacement (exclusive of sweeping, striping and snow and ice removal) necessary to maintain all driveways, sidewalks, street and parking areas free of all settling, clear of standing water, and in a safe, sightly and serviceable condition free of chuck-holes, fissures and cracks.

In the event buildings or improvements constituting the demised premises or a portion thereof shall be rendered unusable due to Landlord's default or negligence with respect to required repairs, there shall be a just and equitable abatement of said annual minimum rental and all other charges payable under this lease until said premises shall be made usable. Emergency repairs which shall be Landlord's responsibility hereunder, and which shall be necessary to protect the buildings or contents and/or to keep the common areas in a neat, clean, safe and orderly condition may be made by Tenant without notice to Landlord, and the cost of such repairs not to exceed Two Thousand Dollars ($2,000.00) in any one instance, may be deducted by Tenant from rentals subsequently accruing hereunder.

**Alterations and Additional Construction**

16. Tenant may, at its own expense, from time to time make such alterations, additions or changes, structural or otherwise, in and to its buildings as it may deem necessary or suitable; provided, however, Tenant shall obtain Landlord's prior written consent to drawings and specifications for structural alterations, additions or changes; provided, further, Landlord shall not withhold its consent thereto if the structural integrity of the buildings will not be impaired by such work. The term "structural changes", as used herein, shall not include moving of non-loadbearing partitions, minor plumbing and electrical work, modification and rearrangement of fixtures or other minor changes. Landlord, at Tenant's cost, shall cooperate with Tenant in securing building and other permits or authorizations required from time to time for any work permitted hereunder or installations by Tenant.

Tenant may, at its own expense, at any time, erect or construct additional buildings or structures on any portion of the demised premises. In such event gross sales made in or from said additions shall be excluded from gross sales as defined in Article 4 of this lease and provided further, said additional building or structure shall be excluded from the taxable premises and all ad valorem taxes and assessments levied thereon shall not be deductible from additional rents payable under the terms of Article 4 hereof. Tenant shall reimburse Landlord for any increase in insurance premiums attributable solely thereto. Tenant shall also be solely responsible for exterior and interior repairs thereto, except those necessitated by fire, the elements or other casualty. In the event Tenant constructs any such additions or new construction, Landlord shall not be obligated to furnish additional parking areas in substitution of areas thereby built over, and the number of parking spaces required under Article 10 shall be reduced by the number of spaces covered by such additional buildings or structures.

**Utilities**

17. Landlord covenants and agrees that the demised premises shall be properly serviced with gas, electric, telephone, water, sewer and other utilities sufficient to meet Tenant's requirements as of the commencement of the lease term. Tenant shall pay all charges for utility services furnished to the demised premises during the lease term.

Landlord may provide a disposal or septic tank system in lieu of public sanitary sewer, subject to Tenant's written approval of plans and specifications and Landlord's continuing obligation to clean and maintain said system at all times in good and serviceable condition at its sole expense.

**Governmental Regulations**

18. Tenant shall observe and comply with all requirements of rules, orders and regulations of the federal, state and municipal governments or other duly constituted public authority affecting said demised premises including the making of non-structural alterations, insofar as they are due to Tenant's occupancy; provided, however, in the event such rules, orders and regulations shall either (a) require structural changes, including but not limited to, the erection of a fire escape or exit, or (b) require non-structural changes which would have been required irrespective of the nature of the tenancy, then in either such event, the same shall be complied with by Landlord at its sole expense.

**Exculpation**

19. Anything to the contrary in this lease notwithstanding the covenants contained in this lease to be performed by Landlord shall not be binding personally, but instead said covenants are made for the purpose of binding only the fee simple or leasehold estate which Landlord owns in the demised premises; provided, however, the obligations imposed by Article 8 of this lease shall be personally binding upon Landlord.

**Damage to Demised Premises**

20. From and after the date on which Tenant shall be privileged to enter upon the demised premises for the purposes specified in Article 9 hereof, Landlord shall insure the buildings depicted on Exhibit "B", including Tenant's buildings, against damage or destruction by fire and other casualties insurable under a standard extended coverage endorsement. Said insurance shall be in an amount equal to not less than eighty percent (80%) of the insurable value of the permanent improvements thereof. All such policies shall bear endorsements to the effect that Tenant shall be notified not less than five (5) days in advance of modification or cancellation thereof and that the assured has waived right of recovery from Tenant. Copies of such insurance policies or certificates evidencing the existence thereof so

**Damage to Demised Premises (continued)** endorsed, shall be promptly delivered to Tenant upon written request therefor. Irrespective of the cause thereof, Tenant shall not at any time be liable for any loss or damage to said buildings resulting from fire, explosion or any other casualty.

In the event that, at any time during the lease term, the permanent improvements then constituting Tenant's buildings and site improvements shall be damaged or destroyed (partially or totally) by fire or any other casualty insurable under a standard fire and extended coverage endorsement Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; provided, however, if as a result of any such damage or destruction during the last two (2) years of the lease term, Tenant's fixtures, equipment or other property shall be damaged or destroyed in an amount exceeding ~~Twenty-five Thousand Dollars ($25,000.00)~~, then either party may terminate this lease as of the date of such damage or destruction by giving written notice to the other party within thirty (30) days thereafter and Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. Notwithstanding any such termination of this lease by Landlord as provided in this Article, Tenant shall have the right to exercise any option to extend the term hereof in accordance with the provisions of Article 13 within thirty (30) days after the date of the receipt of Landlord's notice of termination, and upon the exercise of any such option (other than the option set forth in paragraph (b) of Article 13) by Tenant, then this lease shall continue in full force and effect despite such notice of termination by Landlord and Landlord shall repair, rebuild and restore the said permanent improvements as above provided. In the event that this lease shall be terminated as above provided, all unearned rent and other charges paid in advance shall be refunded to Tenant.

**One Hundred Thousand Dollars ($100,000.00)**

During any period commencing upon the date of any such damage or destruction by fire, the elements or any other casualty whatsoever, and ending upon the "date of reoccupancy by Tenant", the annual minimum rental and any other charges payable under this lease shall abate in the proportion that the part of Tenant's buildings which shall be untenantable shall bear to the whole. The term "date of reoccupancy by Tenant", as used herein, shall be the first to occur of the following two dates: (a) the date upon which Tenant shall open for business in that part of Tenant's buildings rendered untenantable by such damage or destruction, or (b) the date which shall be sixty (60) days (plus a period of time equal to any delays due to conditions beyond Tenant's control) after the date of completion of the repairs, rebuilding and restoration required of Landlord herein.

In the event that, at any time during the lease term except the last two (2) years thereof, any building or buildings within the site depicted on Exhibit "B", other than Tenant's building or buildings, shall be damaged or destroyed (partially or totally) by fire, the elements or any other casualty, Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; or Landlord may, at its option, elect to raze any buildings so damaged or destroyed and pave the area formerly occupied by said buildings so as to provide additional parking facilities, said areas to be paved, marked, lighted, drained and maintained in the same manner as required in Articles 10 and 15 hereof for other parking areas in the demised premises.

Each party hereto has hereby remised, released and discharged the other party hereto and any officer, agent, employee or representative of such party of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the party at the time of such loss, damage or injury to the extent of any recovery by the injured party under such insurance.

**Eminent Domain**    21. In the event all of Tenant's buildings constructed by Landlord shall be expropriated or the points of ingress and egress to the public roadways substantially as depicted on Exhibit "B" be materially impaired by a public or quasi-public authority, this lease shall terminate as of the date Tenant shall be deprived thereof.

In the event that less than the whole but more than ten percent (10%) of Tenant's buildings constructed by Landlord shall be expropriated by public or quasi-public authority, Tenant shall have the option to terminate this lease as of the date Tenant shall be dispossessed from the part so expropriated, by giving notice to Landlord of such election so to terminate within ninety (90) days from the date of such dispossession.

(SEMI-GROSS) 5/23/72

**Eminent Domain (continued)**

In the event of an expropriation of any portion of Tenant's buildings, constructed by Landlord, and if this lease shall not be terminated as hereinabove provided, it shall continue as to that portion of the said buildings which shall not have been expropriated or taken, in which event Landlord shall, at its sole cost and expense, promptly and with due diligence restore said buildings as nearly as practicable to complete units of like quality and character as existed just prior to such expropriation. The annual minimum rental and other charges shall abate during the period of demolition and restoration, and thereafter the annual minimum rental and the dollar amounts set forth in the first paragraph of Article 4 shall be reduced in the proportion the ground floor area of the part of Tenant's buildings so expropriated shall bear to the total ground floor area of said buildings prior to such expropriation.

Without limiting the foregoing, in the event that any of the land described in Exhibit "A" shall be expropriated by public or quasi-public authority, Landlord shall make every effort to substitute equivalent and similarly improved lands contiguous to and properly integrated with the remainder of the site depicted on Exhibit "B". If Landlord shall be unable to substitute such lands and if one or more expropriations shall in total deprive Tenant of the use of more than ten percent (10%) of the land described in Exhibit "A", then, in such event, the Tenant shall have the option to terminate this lease at any time within twelve (12) months after such deprivation becomes effective by giving notice to Landlord.        /fifteen (15%)

In the event this lease shall be terminated pursuant to this Article, any annual minimum rental and other charges paid in advance shall be refunded to Tenant, and Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. In the event that at the time of any expropriation of Tenant's buildings, Tenant shall not have fully amortized expenditures which it may have made on account of any improvements, alterations or changes to its buildings, Landlord shall assign to Tenant that portion of any award payable as a result of such expropriation as shall equal the unamortized portion of Tenant's said expenditures. Said unamortized portion of Tenant's said expenditures shall be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of remaining years of the lease term at the time of such expropriation and the denominator of which shall be the number of remaining years of the lease term at the time such expenditures shall have been made plus the number of years for which the lease term may have been subsequently extended.

Tenant shall not be entitled to share in any award made by reason of expropriation of Landlord buildings on the demised premises, or any part thereof, by public or quasi-public authority, except as set forth in the preceding paragraph relative to unamortized expenditures by Tenant and then only if the award for such unamortized expenditures shall be made by the expropriating authority in addition to the award for the land, buildings and other improvements (or portions thereof) comprising the demised premises; however, the Tenant's right to receive compensation for damages or to share in any award shall not be affected in any manner hereby if said compensation, damages, or award is made by reason of the expropriation of the land or buildings or improvements constructed or made by Tenant.

**Use, Assignment and Subletting**

22. The premises hereby demised may be used for any lawful purpose. Tenant may assign this lease or sublet the whole or any part of the demised premises, but if it does so, it shall remain liable and responsible under this lease.

**Signs**

23. The demised premises shall be referred to by only such designation as Tenant may indicate. Landlord expressly recognizes that the service mark and trademark "K mart" is the valid and exclusive property of Tenant, and Landlord agrees that it shall not either during the term of this lease or thereafter directly or indirectly contest the validity of said mark "K mart", or any of Tenant's registrations pertaining thereto in the United States or elsewhere, nor adopt or use said mark or any term, word, mark or designation which is in any aspect similar to the mark of Tenant. Landlord further agrees that it will not at any time do or cause to be done any act or thing directly or indirectly, contesting or in any way impairing or tending to impair any part of the Tenant's right, title and interest in the aforesaid mark, and Landlord shall not in any manner represent that it has ownership interest in the aforesaid mark or registrations therefor, and specifically acknowledges that any use thereof pursuant to this lease shall not create in Landlord any right, title or interest in the aforesaid mark.

Tenant shall have the option to erect at its sole cost and expense upon any portion of the demised premises signs of such height and other dimensions as Tenant shall determine, bearing such legend or inscription as Tenant shall determine. Tenant shall have the option to utilize the lighting standards in the parking lot for advertising purposes by attaching, or causing to be attached, signs advertising any and all products and services as Tenant shall elect.

Landlord shall not permit any other signs, billboards or posters to be displayed on any portion of the demised premises.

**Ingress and Egress**

24. Landlord warrants as a consideration for Tenant entering into this lease it will initially provide and will maintain, for the period of this lease and any extension thereof, ingress and egress facilities to the adjoining public streets and highways in the number and substantially in the locations depicted on Exhibit "B", subject to unavoidable temporary closings or temporary relocations necessitated by public authority or other circumstances beyond Landlord's control.

**Landlord's Remedies**

25. If Tenant shall be in default under any other provision of this lease and shall remain so for a period of thirty (30) days after notice to Tenant of such default, then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default, either (a) terminate this lease, or (b) re-enter the demised premises by summary proceedings or otherwise, expel Tenant and remove all property therefrom, relet said premises at the best possible rent readily obtainable (making reasonable efforts therefor), and receive the rent therefrom; provided, however, Tenant shall remain liable for the equivalent of the amount of all rent reserved herein less the avails of reletting, if any, after deducting therefrom the reasonable cost of obtaining possession of said premises and of any repairs and alterations necessary to prepare it for reletting. Any and all monthly deficiencies so payable by Tenant shall be paid monthly on the date herein provided for the payment of rent. If the default by Tenant (except nonpayment of rent) cannot reasonably be remedied within thirty (30) days after notice of default, then Tenant shall have such additional time as shall be reasonably necessary to remedy such default before this lease can be terminated or other remedy enforced by Landlord. Except for the legal remedy of damages (provided Landlord shall, in all instances, be required to mitigate damages) and the equitable remedy of an injunction, the remedies of Landlord herein shall be exclusive of any other remedies.

**Bankruptcy**

26. If a petition in bankruptcy shall be filed by Tenant, or if Tenant shall be adjudicated bankrupt, or if Tenant shall make a general assignment for the benefit of creditors, or if in any proceeding based upon the insolvency of Tenant a receiver of all of the property of Tenant shall be appointed and shall not be discharged within ninety (90) days after such appointment, then Landlord may terminate this lease by giving notice to Tenant of its intention so to do; provided, however, neither bankruptcy, insolvency, an assignment for the benefit of creditors nor the appointment of a receiver shall affect this lease or permit its termination so long as the covenants on the part of Tenant to be performed shall be performed by Tenant or someone claiming under it.

**Covenant of Title**

27. Landlord covenants, represents and warrants that it has full right and power to execute and perform this lease and to grant the estate demised herein and that Tenant, on payment of the rent and performance of the covenants and agreements hereof, shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto during the lease term without molestation or hindrance of any person whomsoever, and if at any time during the term hereby demised the title of Landlord shall fail or it be discovered that its title shall not enable Landlord to grant the term hereby demised, Tenant shall have the option at Landlord's expense to correct such defect or to annul and void this lease with full reservation of its right to damages, if any.

Landlord further covenants, represents and warrants that it is seized of an indefeasible estate in fee simple or has a good and marketable leasehold title to the land described in Exhibit "A", free and clear of any liens, encumbrances, restrictions and violations (or claims or notices thereof), except as follows:

(a)  Public utility easements not impairing Tenant's use of the demised premises.

(b) ——————————————————————————————

Landlord shall, without expense to Tenant and within thirty (30) days after written request by Tenant, furnish (a) a certification by an attorney acceptable to Tenant that Landlord's title is as herein represented and certifying that the premises depicted on Exhibit "B" are within the bounds of the property described in Exhibit "A", (b) a survey by a licensed surveyor of the land described in Exhibit "A", and (c) agreements wherein each holder of any lien against the demised premises shall consent to this lease and warrant that Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such holder unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

11

(SEMI-GROSS) 5/23/72

In the event Landlord's estate is derived from a leasehold interest in a ground lease, Landlord shall, prior to the commencement of construction of the improvements required hereunder, deliver to Tenant an agreement executed by the fee owner of the demised premises wherein the fee owner recognizes this lease and Tenant's rights hereunder and agrees that, notwithstanding any default by the Landlord and subsequent termination of said ground lease, Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such fee owner unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

**Mortgage Subordination**

28. Upon written request by Landlord, Tenant shall execute and deliver an agreement subordinating this lease to any first mortgage upon the demised premises; provided, however, such subordination shall be upon the express condition that the validity of this lease shall be recognized by the mortgagee, and that, notwithstanding any default by the mortgagor with respect to said mortgage or any foreclosure thereof, Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such mortgagee unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

**Tenant Indemnifies Landlord**

29. During the lease term Tenant shall indemnify and save Landlord and Landlord's ground lessor, if any, harmless against all penalties, claims, or demands of whatsoever nature arising from Tenant's use of the Tenant's buildings except those which shall result, in whole or in part, directly or indirectly, from the default or negligence of Landlord or Landlord's ground lessor, if any.

**Tenant's Right to Cure Landlord's Defaults**

30. In the event Landlord shall neglect to pay when due any obligations on any mortgage or encumbrance affecting title to the demised premises and to which this lease shall be subordinate, or shall fail to perform any obligation specified in this lease, then Tenant may, after the continuance of any such default for seven (7) days after notice thereof by Tenant, pay said principal, interest or other charges or cure such default, all on behalf of and at the expense of Landlord, and do all necessary work and make all necessary payments in connection therewith, and Landlord shall on demand, pay Tenant forthwith the amount so paid by Tenant together with interest thereon at the rate of seven per-cent (7%) per annum or the then current prime rate, whichever is the higher, and Tenant may to the extent necessary withhold any and all rental payments and other payments thereafter due to Landlord and apply the same to the payment of such indebtedness.

Provided the holder of a properly recorded first mortgage shall have notified Tenant in writing that it is the holder of such lien on the demised premises and so request, Tenant shall provide such holder with a duplicate copy of any notice sent to Landlord covering a default hereunder, and such holder shall be granted sixty (60) days after receipt thereof to correct or remedy such default.

**Condition of Premises at Termination**

31. At the expiration or earlier termination of the lease term Tenant shall surrender the demised premises, together with alterations, additions and improvements then a part thereof, in good order and condition except for the following: ordinary wear and tear, repairs required to be made by Landlord, and loss or damage by fire, the elements and other casualty. All furniture and trade fixtures installed in said buildings at the expense of Tenant or other occupant shall remain the property of Tenant or such other occupant; provided, however, Tenant shall, at any time and from time to time during the lease term, have the option to relinquish its property rights with respect to such trade fixtures (including, but not limited to, air conditioning machinery and lighting fixtures), which option shall be exercised by notice of such relinquishment to Landlord, and from and after the exercise of said option the property specified in said notice shall be the property of Landlord.

**Holding Over**

32. In the absence of any written agreement to the contrary, if Tenant should remain in occupancy of the demised premises after the expiration of the lease term, it shall so remain as a tenant, from month-to-month and all provisions of this lease applicable to such tenancy shall remain in full force and effect.

**Notices**

33. Notices required under this lease shall be in writing and deemed to be properly served on receipt thereof if sent by certified or registered mail to Landlord at the last address where rent was paid or to Tenant at its principal office in Troy, Michigan, or to any subsequent address which Tenant shall designate for such purpose. Date of notice shall be the date on which such notice is deposited in a post office of the United States Postal Service.

(SEMI-GROSS) 5/23/72

SEP-28-2004 09:21 FROM:MALONE MIDDLEMAN PC  724-934-6666     TO:724 935 3462      P.002/004

09/27/2004 15:19 FAX 8032840808      BAKER & BAKER        → CIR            ☑002

**Captions and Definitions**

34. Marginal captions of this lease are solely for convenience of reference and shall not in any way limit or amplify the terms and provision thereof. The necessary grammatical changes which shall be required to make the provision of this lease apply (a) in the plural sense if there shall be more than one Landlord, and (b) to any landlord which shall be either a corporation, an association, a partnership, or an individual, male or female, shall in all instances be assumed as though in each case fully expressed. Unless otherwise provided, upon the termination of this lease under any of the Articles hereof, the parties hereto shall be relieved of any further liability hereunder except as to acts, omissions or defaults occurring prior to such termination.

**Successors and Assigns**

35. The conditions, covenants and agreements contained in this lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns. All covenants and agreements of this lease shall run with the land.

**Memorandum of Lease**

36. The parties hereto have simultaneously with the execution and delivery of this lease executed and delivered a Memorandum of Lease which Landlord shall at its sole expense cause to be recorded within sixty (60) days following delivery of this lease and returned to Tenant by Landlord within sixty (60) days thereafter.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in triplicate as of the day and year first above written.

WITNESSES:

_(signatures)_

By: _(signature)_

By: _(signature)_

S. S. KRESGE COMPANY

By: _(signature)_
J. W. JOHNSON          Vice President

Attest: _(signature)_
BEATRICE L. McGAW     Assistant Secretary

APPROVED _(stamp)_

STATE OF MICHIGAN )
                 )
OAKLAND COUNTY   )

      PERSONALLY appeared before me Marie E. Sullivan and
made oath that she saw the within-named J. P. Johnson and
Beatrice L. McGaw sign, seal and, as their act and deed,
deliver the within-written instrument for the uses and purposes
therein mentioned and that she, with Elizabeth Gutwald witnessed
the execution thereof.

SWORN to before me this    )
17th day of December, 1974. )
                           )
                           )
                           )
                           )
Notary Public of Oakland County
            Michigan

MARY E. HARKER
Notary Public, Oakland County, Mich.
My Commission Expires June 12, 1977

*Addendum K-Mart*

## ADDENDUM

Attached to and forming part of Lease dated November 25, 1974 by and between David Baker and Lee J. Baker, as Landlord, and the S. S. Kresge Company, as Tenant.

### Article 5 - Real Estate Taxes

Notwithstanding anything to the contrary hereinabove provided, it is agreed and understood that in the event Landlord constructs buildings or structures, other than Tenant's building or buildings, as shown on Exhibit "B" hereto, Tenant shall only pay and discharge all ad valorem real estate taxes and assessments which shall be levied against Tenant's building or buildings and Tenant shall further pay its pro rata share of all ad valorem real estate taxes and assessments which shall be levied against the land described in Exhibit "A" hereto.

### Article 10 - Parking and Other Common Areas

Notwithstanding anything to the contrary herein contained, it is expressly agreed and understood that tenants, other than Tenant herein, at the shopping center depicted on Exhibit "B" hereto shall have the right in common with Tenant to use the said common areas.

### Article 12 - Landlord's Representation and Warranties

Landlord further represents, warrants and covenants that prior to the commencement of the lease term:

(a) The proposed four lane road depicted on Exhibit "B" on the southerly boundary of the demised premises will be paved, lighted and dedicated for four lanes of vehicular traffic (two directional) from its point of intersection with U. S. Hwy. 76 and 378 to the westerly most boundary of the demised premises and paved and dedicated for two lanes of vehicular traffic (two directional) from the westerly most boundary of the demised premises to the frontage road of U. S. Hwy. Bypass 378

(b) The proposed traffic signal at the intersection of the aforementioned proposed road and U. S. Hwy. 76 and 378, as depicted on Exhibit "B", will be a standard stop and go signal and fully operational during Tenant's business hours.

(c) The right-of-way, depicted on Exhibit "B", over and across the land in the extreme northeast portion of the demised premises will be graded, paved and lighted from Tenant's rear service drive to the frontage road of U. S. Bypass 378 in accordance with Tenant's typical plans and specifications.

(d) Landlord shall use its best efforts to obtain the permission of the Highway Department for right turns from the demised premises at the curb cut to Hwy. 76-378.

### Article 15 - Repairs and Maintenance

Tenant shall make and pay for all maintenance, replacement and repair necessary to keep the demised premises and the sidewalks, service drives, parking areas, driveways, streets, curbs directional signs and related improvements which Landlord is required, under the provisions of Article 10 hereof, to construct on the premises described in Exhibit "A", in a good state of repair and tenantable condition, except for the following maintenance, replacement or repair which shall remain the Landlord's sole responsibility:

Addendum – Page 2

(a)  all maintenance, replacement and repair to the roof, outer walls and structural portion of the buildings which shall be necessary to maintain the buildings in a safe, dry and tenantable condition and in good order and repair; and

(b)  all repairs, maintenance or replacement of or to the premises described in Exhibit "A", including but not limited to, underground utility installations and underground electrical conduit and wire, which are occasioned by settlement of the premises or a portion thereof, or caused by soil conditions; and

(c)  all repairs and replacement (exclusive of maintaining all landscaping, sweeping, striping and snow and ice removal) necessary to maintain all driveways, sidewalks, street and parking areas free of all settling, clear of standing water, and in a safe, sightly and serviceable condition, free of chuck holes, fissures and cracks; and

(d)  all maintenance, replacement and repair necessary to keep the building labeled "Landlord Food Store" on Exhibit "B" and located on the premises described in Exhibit "A" in a good state of repair.

Notwithstanding the foregoing provisions of this Article 15, Landlord shall reimburse Tenant annually for Landlord's pro rata share of Tenant's cost for cleaning, striping, snow and ice removal, and illumination of the parking and common areas, maintenance and replacement of the "In", "Out" and other parking control signs, maintenance of landscaping and other related operating costs which Tenant shall have undertaken under the provisions of this Article 15. Said pro rata share shall be based upon the ratio· that the floor area of Tenant's building (71,657 sq. ft. bears to the total gross floor area of all buildings (exclusive of additional buildings or structures erected by Tenant under the provisions of Article 16 hereof) at any time existing on the premises described in Exhibit "A".

In the event buildings or improvements constituting the demised premises or a portion thereof shall be rendered unusable due to Landlord's default or negligence with respect to required repairs, there shall be a just and equitable abatement of said annual minimum rental and all other charges payable under this lease until said premises shall be made usuable.  Emergency repairs which shall be Landlord's responsibility hereunder, and which shall be necessary to protect the buildings or contents and/or to keep the common areas in a neat, clean, safe and orderly condition may be made by Tenant without notice to Landlord, and the cost of such repairs not to exceed Two Thousand Dollars ($2,000.00) in any one instance, may be deducted by Tennat from rentals· subsequently accruing hereunder.



## FIRST AMENDMENT TO LEASE

This First Amendment to Lease is made this *1st* day of *December*, 1990, by and between Baker and Baker, a South Carolina General Partnership (the "Landlord"), and Kmart Corporation, a Michigan corporation (the "Tenant").

Whereas, David Baker and Lee J. Baker, as Landlord, and S.S. Kresge Company, as Tenant, entered into a written Lease dated November 25, 1974, whereby the Landlord leased to Tenant a one-story building containing approximately 71,657 gross square feet, located in Sumter County, South Carolina, as is more particularly described in the Lease; and

Whereas, Baker and Baker, a South Carolina General Partnership is the successor to David Baker and Lee J. Baker, and Kmart Corporation is the successor to S.S. Kresge Corporation; and

Whereas, the parties hereto desire to amend the aforesaid Lease to expand the existing demised premises by adding thereto the adjoining one-story building containing approximately 22,400 gross square feet, upon such terms and conditions as are more fully set forth herein.

Now, Therefore, for and in consideration of Ten Dollars ($10.00) the provisions hereof, and other good and valuable consideration, the receipt and sufficiency of which is hereby accepted and acknowledged, the parties hereby agree that the written Lease dated November 25, 1974, is amended and modified as follows:

1.    Article 1, entitled "Demised Premises" is deleted in its entirety, and the following Article 1, is substituted therefore:

Demised Premises    1. Landlord does demise unto Tenant and Tenant does take from Landlord for the lease term the following property:    Tenant's completed buildings (designated Kmart and L.L. Food Store), together with site improvements, together with land comprising not less than eleven plus (11+) acres described in Exhibit "A" attached hereto, and made a part hereof, and situated in the City of Sumter, County of Sumter, State of South Carolina; said buildings approximately located as depicted on Exhibit "B" attached hereto and made a part hereof, and of the following dimensions:

A one-story building having a width of 321'4" by a depth of 223', plus a garden shop with dimensions of 66'3" by 133', plus loading dock; said building designated "Kmart" on Exhibit "B" and containing a gross ground floor area of 71,657 square feet, more or less; and, a one-story building of approximately 140' in width by 160' in depth; said building designated "L.L. Food Store" on Exhibit "B"

and containing a gross ground floor area of 22,400 square feet, more or less (the gross square footage and dimensions being incorrectly depicted on Exhibit "B").

Said land, completed buildings and site improvements, together with all licenses, rights, privileges and easements, appurtenant thereto shall be herein collectively referred to as the "demised premises".

2.   Article 3, entitled "Annual Minimum Rent" is amended to increase the annual minimum rental to Two Hundred Seventy-Seven Thousand Seven Hundred Twenty Dollars ($277,720.00).  The payment of the increase in the annual minimum rental shall commence with the monthly installment due on December 1, 1990.

3.   Article 4, entitled "Additional Rental" is amended by deleting the first full paragraph thereto, and substituting therefore the following paragraph:

"In addition to the aforesaid annual minimum rental, commencing with the fourth (4th) lease year after completion of the expansion into the area formerly occupied as a Winn-Dixie grocery store, and upon opening said expansion area for business to its customers, Tenant shall pay to Landlord as additional rental each lease year, an amount equal to one percent (1.0%) of gross sales, as hereinafter defined, which exceed the Landlord's gross sales during the third lease year after completion of, and opening of the expansion area for business to its customers."

4.   Article 5, entitled "Real Estate Taxes" is amended by deleting the last full paragraph thereto, and substituting therefore the following paragraph:

The term "taxable premises", as used in this Lease, shall be that certain land described in Exhibit "A" together with the buildings and other improvements constructed by Landlord, and shown on Exhibit "B."

5.   Article 15, entitled "Repairs and Maintenance", contained in the Addendum to the lease amended and modified as follows:

(i)   Subparagraph (d) is deleted in its entirety.

(ii)   the first full paragraph immediately following subparagraph (d) is deleted in its entirety.

~~6.   Article 20, entitled "Damage to Demised Premises", is~~ amended and modified by adding to the end of the first paragraph the following sentence:   *INITIALED*

~~Tenant shall pay to Landlord during each year of the term, as additional rent, the cost of such insurance~~

~~coverage, said payment to be made within thirty (30) days~~
after delivery to Tenant ~~of a copy of~~ the paid premium
~~receipt.~~

7.    Except as amended and modified hereby, the written Lease
dated November 25, 1974, between Landlord and Tenant remains
unmodified, and in full force and effect.

In Witness Whereof, the parties hereto have executed this
First Amendment to Lease as of the day, month and year first
written above.

WITNESSES:

KMART CORPORATION          (SEAL)

BY: _____
    M. L. SKILES, Vice President
    ITS: Vice President

ATTEST: _____
    Assistant Secretary
    C. E. LOTZAR, JR., ASST. SECRETARY

BAKER AND BAKER, A SOUTH
CAROLINA GENERAL PARTNERSHIP
                          (SEAL)

BY: _____
    David Baker
    Managing General Partner

BY: _____
    Lee J. Baker
    Managing General Partner

STATE OF SOUTH CAROLINA                )
                                       )          **PROBATE**
COUNTY OF RICHLAND                     )

    PERSONALLY appeared before me _Shannon R Dilcher_ ,
who being duly sworn says that (s)he saw Baker and Baker, a South
Carolina General Partnership by, David Baker and Lee J. Baker its
Managing General Partners sign, seal and execute and as their act
and deed deliver the foregoing First Amendment to Lease, and that
(s)he with _Steven M Amstasion_ witnessed the due execution and
delivery thereof.

                                      _Shannon R Dilcher_

SWORN TO BEFORE ME THIS
_20_ day of November, 1990.

_Stev. M. Amstn_ (L.S.)
Notary Public for
My Commission Expires: _7-31-74_


STATE OF MICHIGAN                      )
                                       )          **PROBATE**
COUNTY OF OAKLAND                      )

    I do hereby certify that on this _11th_ day of _December_ ,
1990, before me, _Mary A. Schnitzler_ , a Notary Public in
and for the County and State aforesaid, and duly commissioned,
personally _M. L. Skiles_ appeared and _
A. E. Fotzau, Jr._ , known to me to be the Vice President and
Assistant Secretary of Kmart Corporation, who, being by me duly
sworn, did depose and say that they reside in _Rochester and
Burmingham_, respectively; that they are the Vice President and
Assistant Secretary respectively of Kmart Corporation, the
corporation described in and which executed the foregoing
instrument; that they know the seal of said corporation; that the
seal affixed to said instrument is the corporate seal of said
corporation; that, on behalf of said corporation and by order of
its board of directors, they signed, sealed and delivered said
instrument for the uses and purposes therein set forth, as its and
their free and voluntary act; and that they signed their names
thereto by like order.

    In Witness Whereof, I have hereunto set my hand and affixed
my official seal the day and year in this certificate first above
written.

My commission expires: _____        _Mary A. Schnitzler_
                                       Notary Public

      MARY A. SCHNITZLER
      Notary Public, Oakland County, Mich.
      My Commission Expires May 20, 1991

EXHIBIT "A"

All that certain piece, parcel or tract of land, situate, lying and being in
Sumter County, South Carolina, containing 11.01 acres, and being more fully
described as follows:

BEGINNING at an iron located at the southwesternmost corner of the subject
property, whereon the same corners with property now or formerly of The
Citizens and Southern National Bank of South Carolina, said iron being located
on the eastern boundary of the right of way for U. S. 521; thence from said
point of beginning along the eastern boundary of the right of way for U. S. 521,
N 28° 07' W for 69.06 feet to an iron; thence continuing along said eastern
boundary for U. S. 521 in a curved line for a distance of 407.4 feet to an iron
(the chord distance of said curve measuring N 13° 02' W for 402.7 feet with a
radius of 773.5 feet); thence turning and running along property now or formerly
of R. A. Porter N 63° 18' E for 235.4 feet to an iron; thence continuing along
said property N 62° 53' E for 89.7 feet to an iron; thence turning and running
along property now or formerly of J. H. Myers N 62° 49' E for 675.8 feet to an
iron, which iron is located on the southern boundary of the frontage road for
Highway 378 Bypass; thence turning and running along said southern boundary
S 85° 04' E for 122.9 feet to an iron; thence continuing along said southern
boundary S 81° 38' E for 7.8 feet to an iron, whereon the subject property
corners with property now or formerly of Carobow Properties, Ltd., thence
turning and running along property now or formerly of Carobow Properties,
Ltd. S 62° 49' W for 454.9 feet to an iron; thence turning and continuing along
said property S 27° 11' E for 649.9 feet to an iron; thence turning and running
along property now or formerly of Carobow Properties, Ltd. S 69° 01' W for 515.0
feet to an iron, whereon the subject property corners with property now or
formerly of The Citizens and Southern National Bank of South Carolina; thence
turning and running along property now or formerly of The Citizens and Southern
National Bank of South Carolina N 28° 07' W for 181.0 feet to an iron; thence
turning and continuing along said property S 69° 01' W for 240.0 feet to an
iron, this being the point of beginning.