**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x   Chapter 11
In re:
                                                                Case No. 18-23538 (RDD)
SEARS HOLDINGS CORPORATION, et al.
                                                                (Jointly Administered)
                                       Debtors
                                                                Hearing Date: April 18, 2019, 10:00 a.m. ET
                                                                Objection Deadline: April 11, 2019, 4:00 p.m. ET
-----------------------------------------------------------x
```

**MOTION OF DEDEAUX INLAND EMPIRE PROPERTIES TO COMPEL DEBTOR IN POSSESSION TO ASSUME AND ASSIGN, OR, ALTERNATIVELY, TO REJECT, UNEXPIRED LEASE ON REAL PROPERTY (Sears Contract No. S8729-73-A)**

**Dedeaux Inland Empire Properties** ("**Dedeaux Properties**") by and through its undersigned counsel, makes this motion ("**Motion**") for entry of an order, pursuant to §§ 105(a), 365(d)(2) and 503(b)(1)(A) of Title 11 of the United States Code (the "Bankruptcy Code") to compel Debtor-in-Possession, **Innovel Solutions, Inc., fka Sears Logistics, Inc.** ("**Innovel**"), to immediately assume and assign, or, alternatively, to reject the unexpired lease regarding the facility located at 5691 Philadelphia Avenue, Ontario, California 91761 ("the **Ontario Lease**" and "the **Ontario Warehouse**" respectively).

Dedeaux Properties has not made any prior motion for the relief sought herein before this or any other court.

In support of its Motion, **Dedeaux Properties** respectfully states the following:

**STATEMENT OF THE FACTS AND OF THE CASE**

1. On October 15, 2018, Sears Holdings Corporation, et al. (collectively "Debtors") filed voluntary Chapter 11 petitions under the 11 U.S.C. (the "Bankruptcy Code").

2. On November 16, 2018, the Court entered an order extending the time for the

- 1 -

Debtors to assume or reject unexpired leases to May 13, 2019. That order further provided the Debtors could request additional such extensions (Dkt. 776).

3. On February 8, 2019, the Court also made and entered its order approving the Asset Purchase Agreement ("APA") between the Debtors and Transform HoldCo LLC ("**Transform HoldCo**") (Dkt. 2507). The sale order and the APA included provisions whereby the Debtors and Transform HoldCo would "designate" various executory contracts and unexpired leases as "Potential Transferred Agreements." The Debtors, in turn, as the seller, would ultimately assume and assign only such of those 'potential' agreements that Transform HoldCo elected to take as buyer. See, e.g., Dkt. 2507, p.14. However, nothing in the sale order or in the January 18, 2019 Notice of Potential Assumption and Assignment (Dkt. 1731) required the Debtors to assume or Transform HoldCo to take an assignment of any specific lease or contract. See, e.g., Dkt. 1731, ¶7.

4. Dedeaux Properties is informed and believes the sale closed on February 11, 2019 and that, while certain executory contracts and leases were assumed and assigned to the Buyer on the closing date, a much longer list of contracts and leases, including the Ontario Lease have not yet been either assumed/assigned or rejected. Dedeaux Properties is further informed that under the sale agreement and related documents, Transform HoldCo as buyer has a "designation rights period" of sixty days from the closing date in which to make decisions about which executory contracts and leases it wishes to have assigned to it. As with the extensibility of the May 13, 2019 date on which the Debtors are supposed to have assumed or rejected all executory contracts and unexpired leases, Dedeaux Properties believes the Debtors and Transform HoldCo may move for a further extension of "designation rights period" which would otherwise expire

April 12, 2019.

5. As to the specifics of the Ontario Lease, Dedeaux Properties is the lessor and Debtor, Innovel Solutions, Inc. fka "Sears Logistics, Inc." ("Innovel"), is the lessee under an unexpired lease of nonresidential real property located at 5691 Philadelphia Avenue, Ontario, California 91761 (the "Ontario Lease"). The Ontario Lease covers a warehouse and fulfillment center ("the Ontario Warehouse") and the Debtors have designated it as Lease No. 347, Contract No. S8729-73-A (see Exhibit B-1 to Sears' January 24, 2019 Supplemental Cure Notice [Dkt. 1774, p.55]).

6. Dedeaux Properties and Innovel originally entered the Ontario Lease in 1993, with a term to run to 2009. The lease was amended and extended in 2009 and again in 2014 and the current term runs out on June 30, 2024. A true and correct copy of the Ontario Lease, as amended and extended, is attached as Exhibit A to the accompanying Declaration of Ashok Aggarwal.

7. As discussed below, Innovel is in post-petition default on the Ontario Lease. Dedeaux Properties filed an objection on January 29, 2019 (Dkt. 2169) to the proposed amount the Debtors (or the Buyer) were to pay to cure the defaults. The sale order (Dkt. 2507, ¶35) tabled the question of curing the defaults in the agreements Transform HoldCo finally decided to take as assignee, pending first, a decision on taking the assignment and, second, negotiations to be held between Transform HoldCo and the counterparties of the leases HoldCo finally takeon.

8. As reflected in the Ashok Aggarwal declaration, Transform HoldCo has opened a negotiation with respect to the Ontario Lease by demanding that Dedeaux Properties accept a significant reduction in the ongoing rent due under the current lease and that it accept Transform

HoldCo's future (reduced) rent payments to constitute the required cure. Dedeaux has rejected this proposal. Aggarwal Dec. ¶¶5-6.

9. Paragraphs 8 and 10 of the Ontario Lease require Innovel as lessee to periodically maintain and upgrade the warehouse facility. Under ¶8(b) the lessee is required to maintain overhead doors, dock ramps and levelers. Under ¶8(g) if a lessee fails to do the door and dock maintenance, Dedeaux Properties as landlord can perform these items and add them to the lessee's obligations. Paragraph ¶10 of the lease requires Dedeaux Properties to obtain insurance on the Ontario Warehouse and Innovel is required to pay the premiums for that insurance. See Exhibit A, pp. DART000012-16, 18-20), Aggarwal Dec., **¶7-8.**

10. Despite repeated requests from Dedeaux Properties, Innovel has not maintained the overhead doors, dock ramps and levelers. This not simply a default on the Ontario Lease, it imperils Dedeaux Properties' ability to maintain the required warehouse insurance. The insurer for the property recently performed its annual audit and advised Dedeaux Properties the failure to repair and update the doors and docks is a security issue, making the warehouse more vulnerable, exposes Innovel to risk of inventory theft/loss. The insurer has, accordingly, informed Dedeaux if the repairs are not promptly made, the insurance premiums will increase and it of course is possible coverage could be cancelled. Innovel's failure to have made the required repairs on its own will shortly compel Dedeaux Properties to make the repairs and upgrades, the current estimate of the costs of these maintenance items is approximately $400,000. Aggarwal Dec. ¶¶7-8.

11. Innovel's failure to perform the necessary maintenance has also caused Dedeaux Properties' line of credit lender and mortgage lender to question whether Dedeaux is in full

compliance with its obligations as a borrower to keep the Ontario Warehouse in good operating condition.  As with the insurance, this means Dedeaux Properties must either perform the work itself and incur a $400,000 bill it has questionable prospect of getting reimbursed by the Debtors or Transform HoldCo.  Dedeaux Properties could face higher borrowing costs. Aggarwal Dec. ¶9.

12.    In addition to the problems with the doors and docks, Dedeaux Properties has been informed by the San Bernardino County Storm Water Authority that the Ontario site is out of compliance with run-off regulations.  As with the above cited maintenance issues, compliance with government code/regulations, is a condition of the Ontario Lease that Innovel pay the costs of the storm water upkeep.  Innovel has not complied with this governmental regulations. Aggarwal Dec. ¶10.

13.    Dedeaux Properties has repeatedly raised the issue of the lagging maintenance with Innovel and since the APA sale order, with Transform HoldCo but, to date, Dedeaux Properties has not received any assurances the problems would be cured or even that Transform would proceed to make permanent the potential assignment to it of the Ontario Lease.  Instead, as discussed above and in the Aggarwal declaration, Dedeaux Properties has only received a proposal that the lease should be completely rewritten in Transform's favor.

**DEDEAUX PROPERTIES IS ENTITLED TO A
RESOLUTION OF THE STATUS OF THE ONTARIO LEASE**

**Jurisdiction and Venue**

14.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The legal predicates for the relief requested herein are §§ 105(a), 365(d)(2) and 503(b)(1)(A) of the Bankruptcy Code and FRBP 6006.

**A.    Debtor's Right to Defer a Decision on Assumption or Rejection is not Unlimited**

16. Under § 365(d)(2) of the Bankruptcy Code, a Debtor generally may assume or reject an executory contract any time before confirmation of a plan of organization. Under this court's local rule 6006-1(c), of course, that period is shortened to 120 days post-petition; but, as noted above, this court extended that 120 day period to May 13, 2019 and left open the possibility of further extensions of the deadline.

17. Whether running to the date of confirmation or only to 120 days post-petition, the breathing space afforded a debtor in possession for the assumption or rejection of executory contracts and unexpired leases is not without limits. Section 365(d)(2) itself provides that a court may, on the request of a party to such contract or lease, shorten the period of time within which the debtor in possession or trustee must make a decision. Moreover, given that Transform HoldCo is the true party in interest in this regard, there are fewer policy arguments for why it should have a quasi-unlimited time in which to decide whether it will take an assignment of the Ontario Lease.

18. In addition to the direct authority from § 365, there is also authority from § 105(d)(2) of the Bankruptcy Code for the court to make necessary orders regarding proper administration of a case under the code's provisions.

19. Congress recognized the purpose of section 365(d) is to "prevent parties in contractual or lease relationships with a Debtor from being left in doubt concerning their status vis-a-vis the estate." House Report No. 95-595, 95th Cong. 1st Sess. at 348 (1977). Although

the general rule is that the Debtor is afforded a reasonable time within which to decide whether to assume or reject an executory contract, the time is not unlimited and it is left to the bankruptcy court's discretion as to how much time is reasonable. *In re Enron Corp.,* 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002).

20. In determining whether to accelerate a debtor or trustee's decision, a court must balance the interests of the counter party against those of the debtor and its estate. The relevant considerations in the balancing include (i) the damage the non-Debtor party will suffer beyond the compensation available under the Bankruptcy Code, (ii) the importance of the contract to the Debtor's business and reorganization and (iii) whether the Debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan. *In re Teligent, Inc.,* 268 B.R. 723, 738 (Bankr. SDNY 2001).

21. Weighing the foregoing factors with the facts here militates in favor of shortening the Debtors' time to assume or reject the Ontario Lease and compelling the Debtors (and Transform HoldCo) to make their decision immediately. Dedeaux Properties is owed more than $400,000 on the Ontario Warehouse which it has been blocked from pursuing because of the Debtors' bankruptcy filings. Debtor, in fact, has conditionally sold the Ontario Lease to Transform HoldCo, but because of the number of escape hatches built into the APA, Transform HoldCo cannot yet be said to have irrevocably taken assignment of the lease. And, as indicated in the Aggarwal declaration, Transform appears to be using the uncertainty over the final disposition to attempt to strong-arm Dedeaux Properties to write a brand new lease on terms much less favorable to this Lessor.

/ / /

22.  Dedeaux Properties further notes that at this point in the Chapter 11 cases, the Ontario Warehouse Lease and operation is largely for the convenience of the Buyer.  The sale of the Debtors' assets has closed, and we are in the post-closing "designation rights" period during which the Buyer can think about which contracts and leases it wants (or perhaps try to convince counter-parties to waive cure claims). It is not the Debtors that will be determining what will be assumed and rejected; it is the Buyer.

23.  By requiring the Debtors to assume the Ontario Lease and for the Buyers to take an assignment of it immediately, this Court would ensure that the Debtors and perhaps the Buyer are not unjustly enriched at Dedeaux Properties's expense.  If the Ontario Lease is assumed and assigned, and Dedeaux Properties is afforded the prompt cure payment required under the Bankruptcy Code, then Dedeaux Properties will be compensated for the benefit it has provided through the lease (albeit belatedly). If the Debtors and the Buyer choose to reject the Ontario Lease, Dedeaux will at least be able to find a new tenant and end the uncertainty caused by the Sears bankruptcy and stop its losses at the hand of the Debtor and its Buyer.

**B.     The Payment of Dedeaux Properties's Administrative Expense Claim as Cure on the Lease**

24.  Dedeaux Properties also seeks the payment of the costs of repairing the doors, docks, and storm water channels, full payment on the past due insurance premium(s), all of which are a valid and overdue administrative expenses, amounts that have accrued and may be left unpaid as of the rejection date.

25.  The filing of this motion is not in any way a waiver with respect to the cure issue. Accordingly, if Transform HoldCo elects to take assignment of the Ontario Lease, Dedeaux Properties will expect it to make a prompt cure payment.

## CONCLUSION

Dedeaux Properties respectfully prays for the following relief:

1. For an order, substantially in the format as the proposed Order attached to this motion, compelling the Debtors to immediately reject the Ontario Lease and to pay Dedeaux Properties' administrative expense claim; or, alternatively,

2. For an order requiring the Debtors to immediately and irrevocably assume the Ontario Lease, assign it to Transform HoldCo and that either the Debtors or Transform be ordered to pay the amount necessary to cure the defaults on the Ontario Lease; and

3. Dedeaux Properties prays for such other and further relief as this Court deems just and proper.

Dated: March 28, 2019
San Diego, CA

LAW OFFICE OF WILLIAM P. FENNELL, APLC


By: /s/William P. Fennell
William P. Fennell, Esq.
401 West A Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 325-1560
Facsimile: (619) 325-1558
Email: william.fennell@fennelllaw.com

*Attorneys for* **Dedeaux Properties** *Inland Empire Properties*

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ---------------------------------------------------------------x<br>In re:<br><br>SEARS HOLDINGS CORPORATION, et al.<br><br>Debtors<br><br>---------------------------------------------------------------x | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**[PROPOSED] ORDER COMPELLING THE DEBTORS TO IMMEDIATELY ASSUME OR REJECT THEIR LEASE WITH DEDEAUX INLAND EMPIRE PROPERTIES AND PAY POST-PETITION AMOUNTS DUE UNDER THE CONTRACTS**

Upon consideration of Dedeaux Inland Empire Properties' ("Dedeaux Properties") motion for entry of an order, pursuant to §§ 105(a), 365(d)(2) and 503(b)(1)(A) of the Bankruptcy Code compelling the Debtors to immediately assume or reject their unexpired lease regarding real property located at 5691 Philadelphia Avenue, Ontario, California 91761 (which lease the Debtors have designated as Sears Contract No. S8729-73-A); and good and adequate notice having been provided of the Motion; and upon consideration of the Motion, the full record of these cases and the hearing on this Motion; and after due deliberation thereof;

It is HEREBY ORDERED THAT:

    1.    The Motion is granted;

    2.    The Debtors, and in particular, Debtor Innovel Solutions, Inc. ("Innovel") shall file a notice of assumption and assignment, or, in the alternative, rejection of the Ontario Lease within three (3) calendar days after entry of this order;

    3.    In the event the Debtors assume and assign the Ontario Lease, the Debtors, the Buyer; and Dedeaux Properties are directed to consult regarding an agreement to promptly pay

the cure amount and cure any other defaults under the Lease.

    4.    In the event the Debtors reject the Ontario Lease, for the avoidance of doubt, Dedeaux Properties shall have no further obligations under such Lease from and including the date of the notice of rejection and Dedeaux shall be deemed to hold an administrative expense claim for the amounts the Debtors are in default under the Lease.

Dated:
    White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE