Hearing Date and Time: April 18, 2019 at 10:00 a.m. EST
Objection Deadline: April 11, 2019 at 4:00 p.m. EST

GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212.813.8800
F: 212.355.3333
Gregory W. Fox
Barry Z. Bazian
*Counsel to Waste Management*
*National Services, Inc. and its affiliates*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**SEARS HOLDINGS CORPORATION,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**MOTION OF WASTE MANAGEMENT NATIONAL SERVICES, INC.
FOR AUTHORIZATION TO CEASE PROVIDING SERVICES TO
THE BUYER THROUGH THE SERVICES AGREEMENT BETWEEN
THE BUYER AND THE DEBTORS ABSENT AN ASSUMPTION AND
ASSIGNMENT OF THE AMENDED AND RESTATED WASTE HAULING
AND RECYCLING MASTER SERVICES AGREEMENT TO THE BUYER**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Waste Management National Services, Inc. (together with its affiliates, "WM"), by and through its attorneys, hereby files this motion (the "Motion") for an order, substantially in the form attached hereto as **Exhibit A**, authorizing WM to cease providing services to the Buyer through the Services Agreement between the Buyer and the Debtors absent an assumption and assignment of the MSA to the Buyer and payment of the Actual Cure Amount (capitalized terms as defined below). In support of this Motion, WM submits the declaration of Angelo Costantini, Controller of WM, a copy of which is attached hereto as **Exhibit B**, and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. The statutory predicates for the relief requested herein are §§ 105(a) and 365(b) and (d)(2) of the Bankruptcy Code and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

### *WM's Relationship to the Debtors*

4. WM provides services to the Debtors[2] pursuant to that certain Amended and Restated Waste Hauling and Recycling Master Services Agreement dated as of June 19, 2015 but

---

[2] The following Debtors are parties to the MSA: Sears, Roebuck and Co., Kmart Corporation, Sears Roebuck de Puerto Rico, Inc., Sears Logistics Services, Inc. (which is a name used by Innovel Solutions, Inc.), Sears

2

effective as of February 1, 2015 (as amended from time to time, the "MSA").  Pursuant to the MSA, WM provides recurring monthly waste management services to the Debtors.  These services include the collection, transportation, disposal, and/or processing of waste and recyclable materials, provision of containers and other necessary equipment (certain of which are the property of WM), and certain ancillary, temporary and non-recurring services (collectively, the "Hauling Services").

5. After the Petition Date, the Debtors and WM entered into an agreement dated as of November 14, 2018 relating to the provision of Hauling Services (the "Post-petition Agreement").[3]  Pursuant to the Post-petition Agreement, the Debtors agreed, among other things, to the amount of WM's pre-petition claim at that time, subject to potential future reduction pursuant to the terms of the Post-petition Agreement.  The Post-petition Agreement is structured as a supplement to the MSA and is not independently operative.   Thus, if the Debtors seek to assume and/or assign the Post-petition Agreement, the Debtors must also assume and/or assign with it the MSA.

6. As of the date of this Motion, the total amount owing to WM to cure all monetary defaults under the MSA is approximately $2.3 million, subject to potential future reduction pursuant to the terms of the Post-petition Agreement (the "Actual Cure Amount").[4]  All documentation supporting the Actual Cure Amount is attached to the Post-petition Agreement, a copy of which the Debtors possess.

---

Home Improvement Products, Inc.  A non-Debtor entity, Sears Hometown and Outlet Stores, Inc., is also a party to the MSA.

[3] As the terms of the MSA and the Post-petition Agreement are confidential, copies are not attached hereto.

[4] If the Actual Cure Amount is reduced at the time of the assumption and assignment of the MSA, WM will provide the Debtors and the Buyer the updated Actual Cure Amount at that time.

### *The Sale to the Buyer and the Services Agreement*

7. On January 18, 2019, the Debtors filed a notice, which, among other things, announced that the Debtors determined that the offer submitted by Transform Holdco, LLC (the "Buyer"), established by ESL Investments, Inc., was the highest or best offer to acquire substantially all of the Debtors' assets.

8. On January 24, 2019, WM filed the *Objection of Waste Management National Services and its Affiliates to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1783] (the "WM Objection").

9. In the WM Objection, WM objected to, among other things, the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "Initial Cure Notice"), which the Debtors filed on January 18, 2019. As more fully set forth in the WM Objection, WM objects to the Initial Cure Notice because (a) the Initial Cure Notice incorrectly identifies the contracts between the Debtors and WM; and (b) the proposed cure amounts set forth in the Initial Cure Notice are incorrect.[5]

10. In the WM Objection, WM also preemptively objected to any arrangement whereby the Buyer may utilize through a transition services agreement WM's services or

---

[5] On February 11, 2019, WM filed the S*upplemental Objection of Waste Management National Services, Inc. and its Affiliates to Second Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 2547] (the "WM Supplemental Objection"). As more fully set forth in the WM Supplemental Objection, WM objects to the Second Supplemental Cure Notice, which identifies the Post-petition Agreement for potential assumption and assignment, to the extent the Debtors are seeking to assume and/or assign the Post-petition Agreement—which is a supplement to the MSA and is not independently operative—without also assuming and/or assigning the MSA and without paying the Actual Cure Amount to WM at the time of any such assumption.

4

equipment after the closing of the sale without effecting an assignment of the MSA. *See* WM Objection at ¶¶ 10-12.

11. On February 7, 2018, the Debtors filed the *Notice of Services Agreement* [Docket No. 2455], which attached a draft of a proposed Services Agreement that the Debtors and the Buyer proposed to enter into (as subsequently amended and executed, the "Services Agreement").

12. On February 8, 2019, the Court entered an order approving the sale of substantially all of the Debtors' assets to the Buyer [Docket No. 2507] (the "Sale Order"). The Sale Order contained language specifically drafted to preserve WM's arguments with respect to the Services Agreement that were raised in the WM Objection. Specifically, the Sale Order provides that the rights of all parties impacted by the Services Agreement are expressly reserved and that if any party "raises an issue with respect to the terms of the Services Agreement, which cannot be resolved by agreement of the parties, such issue will be heard by the Court on an expedited basis." Sale Order, ¶ 26(a).

13. Upon information and belief, the closing of the sale to the Buyer occurred on February 11, 2019.

14. On February 14, 2018, the Debtors filed a *Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement* [Docket No. 2599], which attached thereto as Exhibit C a copy of the executed Services Agreement, dated as of February 11, 2019, entered into by the Debtors and the Buyer.

15. The Services Agreement sets forth the terms and conditions pursuant to which the Debtors and the Buyer will provide, or cause their third party vendors to provide, services to each other after the sale closing. The Services Agreement does not specifically identify WM as a

vendor expected to provide services under the Services Agreement. However, Schedule A-1 to the Services Agreement identifies "Waste Services and Recycling" as a "Seller Service" to be provided to the Buyer for a period of 60 days following the sale closing. *See* Services Agreement, Schedule A-1, No. 1 (Provision of critical contract services). In addition, Schedule A-2 to the Services Agreement identifies "waste services" as a "Buyer Service" to be provided to the Sellers (*i.e.*, the Debtors) after assignment of the relevant contract to the Buyer until the "End of the GOB Period". *See* Services Agreement, Schedule A-2, No. 8 (Contracts Support). The Services Agreement provides that the "Services Period"—which is the period for which the Seller and the Buyer have agreed to provide services to each other—may be extended for "any longer period mutually agreed to by the Parties." Services Agreement, § 1.1.

16.    Pursuant to the Sale Order, since the closing of the sale to the Buyer, WM has attempted to negotiate a consensual resolution of WM's cure objection and preserved objections with respect to the Services Agreement, but the parties have not been able to reach an agreement.

## RELIEF REQUESTED

17.    As described above, the Services Agreement provides that the Sellers/Debtors will provide, or cause their vendors (such as WM) to provide, "Waste Services and Recycling" to the Buyer for a period of 60 days following the sale closing, which period ends on April 12, 2019 (hereinafter, the "Cessation Date").

18.    For the reasons set forth in WM's prior objections and as set forth herein, it is inappropriate to require to WM to provide services to the Buyer under the Services Agreement. WM has continued to provide services to the Debtors and to the Buyer after the sale closing as a showing of good faith while the parties attempted to negotiate a consensual resolution of WM's objections. As the parties have not reached an agreement, WM has no choice but to press

forward with its objections.

19.  WM is willing to continue providing services to the Buyer through the Cessation Date as contemplated by the Services Agreement in order to give the Buyer additional time to find an alternative vendor to provide waste hauling and recycling services, but, absent an assignment of the MSA to the Buyer and payment to WM of the Actual Cure Amount, WM should not be required to continue to provide services to the Buyer after the Cessation Date.[6]

20.  Accordingly, WM requests, pursuant to sections 105(a) and 365(b) and (d) of the Bankruptcy Code, entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing WM to immediately cease providing services for, and retrieve all of WM's equipment from, the stores and other premises that were sold to the Buyer (or immediately upon the transfer of any stores and other premises that may be sold to the Buyer in the future) unless: (a) by the Cessation Date (April 12, 2019) the MSA is assumed by the Debtors and assigned to the Buyer; and (b) the Actual Cure Amount is paid to WM upon such assignment.

**BASIS FOR RELIEF**

21.  Section 365 of the Bankruptcy Code affords a debtor the right to utilize its executory contracts pending a decision to assume or reject such contracts.  Section 365 also permits a debtor to assume and assign its contracts to a third party, subject to certain requirements and protections of the contract counterparty, including that all defaults be cured upon such assignment.  *See* 11 U.S.C. § 365(b).  However, no section of the Bankruptcy Code permits a third party that is not a party to the contract to utilize a debtor's contracts absent an assumption by the debtor and an assignment of the contract to the third party.  Accordingly, if a

---

[6]  WM expects that the Debtors will require WM's Hauling Services and equipment after the date of any assignment of the MSA to the Buyer.  WM does not object to continuing to provide services to the Debtors under the Services Agreement as a "Buyer Service" for a reasonable period of time after the MSA is assigned to the Buyer

third party wishes to obtain the benefits of a debtor's contract, it may only do so by taking an assignment of the contract pursuant to section 365.

22. Through the Services Agreement, the Debtors and the Buyer have circumvented the requirements of Section 365 by requiring WM to provide Hauling Services and equipment to the Buyer—which is not a party to the MSA and with which WM has no privity—without effecting an assignment of the MSA to the Buyer. The Services Agreement thus allows the Buyer to obtain all of the benefits of the MSA—including by utilizing WM's Hauling Services and WM's equipment—while avoiding paying the Actual Cure Amount to WM as section 365 of the Bankruptcy Code requires. The Court should not permit this *de facto* assignment of the MSA to Buyer, which deprives WM of the protections of section 365 of the Bankruptcy Code. *See In re Antwerp Diamond, Inc.*, 138 B.R. 865 (Bankr. N.D. Ohio 1992) (arrangement whereby the buyer of the debtors' inventory could continue to use the debtors' leased premises post-closing to conduct going out of business sales where the debtors did not intend to assume and assign such leases "would be tantamount to an assignment of the Debtors' interest in those affected premises").

23. To make matters worse, although the Services Agreement indicates that WM is expected to provide services to the Buyer for 60 days after the sale closing (*i.e.*, until the Cessation Date), the Services Agreement also provides that such 60 day period can be extended by the parties to the Services Agreement (*i.e.*, the Debtors and the Buyer), without consent or even notice to WM.

24. Thus, pursuant to the Services Agreement, absent relief from this Court, WM might be required to provide services to the Debtors and the Buyer for an indefinite period of

---

as long as the Buyer is obligated to pay, and does timely pay, for all such services.

time without any protections afforded by section 365. While WM is amenable to continue providing services to the Buyer through the Cessation Date in order to provide the Buyer with additional time to find an alternative vendor to provide waste hauling and recycling services, WM should not be required to provide services to the Buyer after the Cessation Date, absent an assignment of the MSA to the Buyer and a payment of the Actual Cure Amount to WM.

25. Accordingly, WM requests that, absent an assignment of the MSA to the Buyer by the Cessation Date and payment to WM upon such assignment, the Court authorize WM to immediately cease providing services for, and retrieve all of WM's equipment from, the stores and other premises that were or are in the future sold to the Buyer.

## RESERVATION OF RIGHTS

26. WM expressly reserves all of its rights to amend, supplement, and/or modify this Motion and to file in the future additional appropriate pleadings, including in reply to any responses to this Motion, and to object to any proposed assumption and assignment of the MSA to the Buyer or other third party.

*[Remainder of Page Left Intentionally Blank]*

## **CONCLUSION**

For the foregoing reasons, WM respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A** (a) authorizing WM to immediately cease providing services for, and retrieve all of WM's equipment from, the stores and other premises that were sold to the Buyer (or immediately upon the transfer of any stores and other premises that may be sold to the Buyer in the future) unless: (i) by the Cessation Date the MSA is assumed by the Debtors and assigned to the Buyer; and (ii) the Actual Cure Amount is paid to WM upon such assignment; and (b) granting to WM such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         March 28, 2019

>                                */s/ Gregory W. Fox*
>                                GOODWIN PROCTER LLP
>                                The New York Times Building
>                                620 Eighth Avenue
>                                New York, New York 10018
>                                T: 212.813.8800
>                                F: 212.355.3333
>                                Gregory W. Fox
>                                Barry Z. Bazian
>                                gfox@goodwinlaw.com
>                                bbazian@goodwinlaw.com
>                                *Counsel to Waste Management*
>                                *National Services, Inc. and its affiliates*