## **EXHIBIT B**

Declaration of Angelo Costantini

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**SEARS HOLDINGS CORPORATION,** *et al.*,<br><br>      **Debtors.** | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**DECLARATION OF ANGELO COSTANTINI IN SUPPORT OF
MOTION OF WASTE MANAGEMENT NATIONAL SERVICES, INC.
FOR AUTHORIZATION TO CEASE PROVIDING SERVICES TO
THE BUYER THROUGH THE SERVICES AGREEMENT BETWEEN
THE BUYER AND THE DEBTORS ABSENT AN ASSUMPTION AND
ASSIGNMENT OF THE AMENDED AND RESTATED WASTE HAULING
AND RECYCLING MASTER SERVICES AGREEMENT TO THE BUYER**

I, Angelo Costantini, being duly sworn, depose and say:

1. Since September 29, 2014 I have served as Controller in WM's[1] Strategic Business Solutions unit. In this role I lead the accounting and finance teams at WM and am responsible for business partnering and analysis, general ledger accounting, financial controls, and accounting process improvement.

2. I hold MS and BS degrees in accounting from the University of Connecticut at Storrs and am a licensed CPA. Prior to joining WM, I served as Senior Director of Finance and Director of Commercial Operations at HD Supply Power Solutions in Atlanta, Georgia. I began my career in the audit department of the accounting firm PricewaterhouseCoopers LLP.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the *Motion of Waste Management National Services, Inc. for Authorization to Cease Providing Services to the Buyer Through the Services Agreement Between the Buyer and the Debtors Absent an Assumption and Assignment of the Amended and Restated Waste Hauling and Recycling Master Services Agreement to the Buyer* ("Motion"), which is being filed simultaneously herewith.

1

3.  As part of my responsibilities at WM as Controller, I am generally familiar with WM's billing practices as well as WM's contractual and business relationships with the Debtors and with the Debtors' accounts receivable.

4.  I submit this declaration in support of WM's Motion, which is being filed contemporaneously herewith.

5.  WM provides services to the Debtors[2] pursuant to that certain Amended and Restated Waste Hauling and Recycling Master Services Agreement dated as of June 19, 2015 but effective as of February 1, 2015 (as amended from time to time, the "MSA").  Pursuant to the MSA, WM provides recurring monthly waste management services to the Debtors.  These services include the collection, transportation, disposal, and/or processing of waste and recyclable materials, provision of containers and other necessary equipment (certain of which are the property of WM), and certain ancillary, temporary and non-recurring services (collectively, the "Hauling Services").

6.  After the Petition Date, the Debtors and WM entered into an agreement dated as of November 14, 2018 relating to the provision of Hauling Services (the "Post-petition Agreement").[3]  Pursuant to the Post-petition Agreement, the Debtors agreed, among other things, to the amount of WM's pre-petition claim at that time, subject to potential future reduction pursuant to the terms of the Post-petition Agreement.  The Post-petition Agreement is structured as a supplement to the MSA and is not independently operative.  Thus, if the Debtors seek to

---

[2] The following Debtors are parties to the MSA:  Sears, Roebuck and Co., Kmart Corporation, Sears Roebuck de Puerto Rico, Inc., Sears Logistics Services, Inc. (which is a name used by Innovel Solutions, Inc.), Sears Home Improvement Products, Inc.  A non-Debtor entity, Sears Hometown and Outlet Stores, Inc., is also a party to the MSA.

[3] As the terms of the MSA and the Post-petition Agreement are confidential, copies are not attached hereto.

2

assume and/or assign the Post-petition Agreement, the Debtors must also assume and/or assign with it the MSA.

7.  As of the date of this declaration, the total amount owing to WM to cure all monetary defaults under the MSA is approximately $2.3 million, subject to potential future reduction pursuant to the terms of the Post-petition Agreement (the "Actual Cure Amount").[4] All documentation supporting the Actual Cure Amount is attached to the Post-petition Agreement, a copy of which the Debtors possess.

8.  Pursuant to the Sale Order, since the closing of the sale to the Buyer, WM has attempted to negotiate a consensual resolution of WM's cure objection and preserved objections with respect to the Services Agreement between the Debtors and the Buyer, but the parties have not been able to reach an agreement.

9.  WM has continued to provide services to the Debtors and to the Buyer after the sale closing as a showing of good faith while the parties attempted to negotiate a consensual resolution of WM's objections. As the parties have not reached an agreement, WM has no choice but to press forward with its objections.

10. WM is willing to continue providing services to the Buyer through the Cessation Date as contemplated by the Services Agreement in order to give the Buyer additional time to find an alternative vendor to provide waste hauling and recycling services, but, absent an assignment of the MSA to the Buyer and payment to WM of the Actual Cure Amount, WM is not willing to continue to provide services to the Buyer after the Cessation Date.

11. If the MSA is assumed and assigned to the Buyer, WM expects that the Debtors

---

[4] If the Actual Cure Amount is reduced at the time of the assumption and assignment of the MSA, WM will provide the Debtors and the Buyer the updated Actual Cure Amount at that time.

3

will require WM's Hauling Services and equipment after the date of any such assignment. WM does not object to continuing to provide services to the Debtors under the Services Agreement as a "Buyer Service" for a reasonable period of time after the MSA is assigned to the Buyer as long as the Buyer is obligated to pay, and does timely pay, for all such services.

12. Accordingly, WM requests that the Court authorize WM to immediately cease providing services for, and retrieve all of WM's equipment from, the stores and other premises that were sold to the Buyer (or immediately upon the transfer of any stores and other premises that may be sold to the Buyer in the future) unless: (a) by the Cessation Date the MSA is assumed by the Debtors and assigned to the Buyer; and (b) the Actual Cure Amount is paid to WM upon such assignment.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: March 28, 2019

_____
Angelo Costantini