Hearing Date: April 18, 2019
Hearing Time: 10:00 AM ET
Objection Deadline: April 11, 2019
at 4:00 PM ET

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
In re                                                                )    **Chapter 11**
                                                                          )
SEARS HOLDINGS CORPORATION, *et al.*    )    **Case No. 18-23538 (RDD)**
                                                                          )
                                                        Debtors.    )    **(Jointly Administered)**
-------------------------------------------------------X

# MOTION FOR PAYMENT OF PRE-PETITION PACA TRUST CLAIM

Now comes <u>Caito Foods, LLC</u> ("Movant") and hereby respectfully moves this Court for an order directing Debtors Kmart Corporation and/or Kmart Stores of Illinois, LLC ("Debtors") to immediately pay the pre-petition priority trust claim of the Movant in the amount of $41,222.41, which consists of full principal plus accrued interest, with leave of Court to submit a fee petition.

Movant's claim arises under the Perishable Agricultural Commodities Act ("PACA") [7 U.S.C. §499(e)] statutory trust wherein it maintains the highest of priorities.

Movant relies upon this Court's interim and final orders (Doc. Nos. 115 and 843) giving the Debtors full authorization to pay their pre-petition PACA trust claims consistent with the Debtors' first day motion (Doc. No. 14) on PACA claims. Movant has made numerous oral and written demands in accordance with the Court Orders, but payment still has not been made, thereby necessitating the preparation and filing of the instant Motion.

In support of its Motion, Movant respectfully submits its Notice of Hearing/Notice of Motion, a Memorandum of Law in Support, the Declaration of Julie Hollenback of Caito Foods, LLC in Support and a Proposed Order, all of which are being filed concurrently herewith.

Dated: April 1, 2019								Respectfully submitted,


								*/s/ Mark A. Amendola*
								MARK A. AMENDOLA
								  Ohio Bar I.D. No. 0042645
								  Admitted herein *Pro Hac Vice*
								MARTYN AND ASSOCIATES
								820 W. Superior Avenue, Tenth Floor
								Cleveland, Ohio  44113
								(216) 861-4700 - telephone
								(216) 861-4703 - facsimile
								Email:  mamendola@martynlawfirm.com

								Attorney for Movant Caito Foods, LLC

Hearing Date: April 18, 2019
Hearing Time: 10:00 AM ET
Objection Deadline: April 11, 2019
at 4:00 PM ET

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
In re                                                                    ) **Chapter 11**
                                                                           )
SEARS HOLDINGS CORPORATION, *et al.*    ) **Case No. 18-23538 (RDD)**
                                                                           )
                                                        Debtors.    ) **(Jointly Administered)**
---------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CAITO FOODS, LLC'S MOTION FOR PAYMENT OF PRE-PETITION PACA TRUST CLAIM

### I.    PRELIMINARY STATEMENT

#### A.    Movant's Produce Sales to the Debtor

1. Caito Foods, LLC ("Caito Foods" or "Movant") is a produce company based in Indianapolis, IN engaged in the business of buying and selling wholesale quantities of fresh produce through interstate commerce. A substantial part of Movant's business is with retail establishments such as Debtors Kmart Corporation and Kmart Stores of Illinois, LLC ("Kmart" or "Debtors").

2. Caito Foods is licensed by and subject to the Perishable Agricultural Commodities Act division of the U.S. Department of Agriculture and, at all times material hereto, held PACA license number 20170299 in good and active standing. Similarly, the Debtors are also licensed by and subject to the Perishable Agricultural Commodities Act division of the U.S. Department of Agriculture and, at all times material hereto, held PACA license number 20030998 in good and active standing. *See*, Declaration of Julie Hollenback of Caito Foods, LLC ("Hollenback Declaration") annexed hereto, at ¶2 and 3.

3. Pre-petition, at Debtors' request, Caito Foods sold to the Debtors on credit perishable agricultural commodities with an invoice value of $37,445.44. Debtors received and accepted the produce, yet failed and refused to issue payment despite due demand. *See*, Hollenback Declaration at ¶5, 6 and 7.

4. All sales transactions between the Movant and the Debtors were properly and

timely invoiced, and all of Movant's invoices issued to the Debtors contained the required statutory language of 7 USC §499(e)(c)4 to preserve and perfect Movant's interest in the PACA statutory trust. *See*, Hollenback Declaration at ¶9.

5.      Movant also included on the face of its invoices, as terms and conditions of sale, express contractual rights to accrued interest at 1½% per month (18% per year) and attorney fees necessary to collect overdue accounts. *See*, Hollenback Declaration at ¶9. Interest and attorney fees are "sums owing in connection with" the sales transaction pursuant to 7 USC §499(e)(c)2. As such, interest and attorney fees are paid part and parcel with the underlying PACA trust claim.

### B.      Procedural Background

1.      On October 15, 2018, Debtors commenced this bankruptcy case through the filing of a Chapter 11 Petition. Debtors are managing their affairs as debtors in possession. No Trustee has been appointed.

2.      On October 15, 2018, the Debtors filed their first-day motion for interim and final authority to pay, inter alia, pre-petition PACA trust claims ("First Day PACA Motion") (Doc. No. 14).

3.      On October 16, 2018, this Court granted the Debtors' First Day PACA Motion on an interim basis ("Interim PACA Order") (Doc. No. 115).

4.      On November 20, 2018, this Court granted the Debtors' First Day PACA Motion on a final basis ("Final PACA Order") (Doc. No. 843). Thus, the Debtors have full Court authority to pay the PACA claims to which they acknowledge have the utmost in priority.

5.      Since the entry of the Interim PACA Order and the Final PACA Order, Movant has taken numerous actions with Debtors' counsel in efforts to get Movant's PACA trust claim paid. First, on October 17, 2018, undersigned sent Debtors' lead counsel a written demand letter, in accordance with the Interim PACA Order, which contained a fully documented PACA trust claim. There was no response. On October 25, 2018, undersigned followed up with another of Debtors' lead counsel on this case, who referred the matter to the associate in charge of

2

administering and paying the PACA claims. The associate never contacted undersigned. On November 5, 2018, undersigned contacted the associate directly and was advised that Movant's claim was being reviewed, and that further contact would be made following an upcoming conference with the Debtors. Undersigned again followed up with the associate on November 16, 2018 and was advised that payment was in process. Undersigned again followed up with the associate on November 28, 2018 and was advised that he is looking into it. Undersigned contacted the associate again twice in December and was not favored with a response. On January 25, 2019, undersigned contacted Debtors' lead counsel once again, and there has been no response. As the Court can see, the Debtors have been on actual written notice of Caito Foods' PACA trust claim since at least October 17, 2018, and all efforts to extract payment pursuant to the Court authority granted in the Final PACA Order have been unsuccessful, thereby necessitating the preparation and filing of the instant Motion.

6. On March 14, 2019 and on March 29, 2019, Caito Foods filed its verified and documented Proofs of Claim with Prime Clerk, evidencing a priority PACA trust claim of $41,222.41.

7. Debtors continue to operate their businesses, yet they have given no intention as to when Movant's pre-petition PACA trust claim will be paid. Despite the inflow and outflow of millions and millions of dollars through the Debtors' accounts, junior creditors have been paid and continue to be paid unlawfully ahead of Caito Foods' super-priority PACA trust claim.

8. On an ongoing basis, the Debtors continue to use Movant's PACA trust assets to operate their business and continue to dissipate PACA trust assets all to Caito Foods' detriment. As supported by the statutory and case law set forth herein, Caito Foods files the instant motion to obtain its PACA trust assets on a priority and expedited basis.

9. This Court has jurisdiction to consider this motion under 28 U.S.C. §1334. Venue lies in this district under 28 U.S.C. §§1408 and 1409(a). This is a core proceeding under 28 U.S.C. §157(b)2.

## II.    ALL REQUIREMENTS FOR ESTABLISHING A PACA TRUST CLAIM HAVE BEEN SATISFIED IN THE CASE AT BAR

### A.    **PACA Establishes a Trust for the Benefit of All PACA Trust Beneficiaries**

Congress enacted PACA in 1930 "to promote fair trading practices in the marketing of perishable agricultural commodities, largely fruits and vegetables" *Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F. 3d. 1374, 1377-77 (3rd Cir. 1994); *H.R. Rep. No. 98-543, at 3 (1983).*

The PACA trust is created by operation of law upon the first delivery of perishable agricultural commodities. In enacting PACA, Congress recognized the importance of protecting the unpaid seller's perishable agricultural commodities. In particular, PACA states as follows:

> It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which…dealers…who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, *and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.* (7 U.S.C. §499e(c)(1)) (Emphasis added)

Therefore, upon the buyer's receipt of the produce, PACA creates a statutory trust in favor of the unpaid sellers on all perishable agricultural commodities, all inventories of food or other products derived from perishable agricultural commodities as well as any receivables or proceeds from the sale of such commodities or products. 7 U.S.C. §499e(c)(2). Specifically, PACA mandates as follows:

> Perishable agricultural commodities received by a…dealer…in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such…dealer…in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. (7 U.S.C. §499e(c)(2))

Accordingly, as soon as the Debtors herein received any produce shipped from any PACA trust beneficiary, the PACA trust was created by operation of law, and continues to exist until all unpaid suppliers are paid in full. Therefore, the PACA trust exists in full effect today.

### B. There is No Tracing Requirement for the PACA Trust

Because trust assets are to be preserved as a non-segregated "floating trust," and the PACA acknowledges that commingling is contemplated, the PACA does not require tracing. If a dispute arises regarding the identification of the trust assets, <u>the debtor has the burden to establish what, if any, assets are *not* subject to the PACA trust</u>. *See*, *In re Fresh Approach*, *Inc.*, 51 B.R. 412, 422 (Bankr. N.D. Texas 1985) ["*Fresh Approach II*"].

*Sanzone-Palmisano Co. v. M. Seamen Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993) is particularly instructive here, as the court addressed the issue of tracing a retail grocer's assets where proceeds from the sale of produce are commingled with proceeds from the sale of other commodities. At the outset, the *Sanzone-Palmisano* court noted that "[u]nder PACA, sellers of produce are protected," reasoning that "unsecured creditors – and even secured creditors – must still suffer the 'harsh effect' of the produce suppliers being elevated from the status of unsecured creditors to trust beneficiaries" *Id*. at 1012, 1014. Finding that there was "no reason to shift the tracing burden to the produce supplier when the purchaser commingles produce proceeds with the proceeds from the sale of other commodities," the Sixth Circuit held:

> We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. This holding is consistent with PACA's statutory language, the legislative history, and past court decisions interpreting PACA. We recognize that in most cases it will be **virtually impossible** for a PACA debtor to trace the origin of the disputed assets. *Id*. at 1014; citing *In re Gotham Provision Co., Inc.*, 669 F.2d 1000, 1011 (5th Cir. 1982). (Emphasis Added)

The *Sanzone-Palmisano* court concluded: "Although this outcome may be characterized by some as harsh, it is the outcome that Congress intended" *Id*. at 1013.

*In re Kornblum & Co., Inc.,* 81 F.3d 280 (2nd Cir. 1996) is likewise instructive because of

5

its analysis of the issue of what property makes up the PACA trust. The *Kornblum* court confirmed that a single PACA trust exists for the benefit of all of the sellers to a produce debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full. The *Kornblum* court further concluded that in order to prove that the property is not part of the PACA trust, the debtor has the burden to establish either that (1) no PACA trust existed when the specific property was purchased; (2) even though a PACA trust existed at that time, the property was not purchased with trust assets; or (3) although a PACA trust existed when the property was purchased and the property was purchased with trust assets, the debtor thereafter paid all unpaid sellers in full prior to the transactions involving the creditors, thereby terminating the trust.

Additionally, in *In re Atlantic Tropical Market Corporation*, 118 B.R. 139 (Bankr. S.D. Fla. 1990), the court held that the PACA trust fund is established upon the commencement of the purchaser's produce related business. The court held that <u>any business assets purchased by one who is in the business of buying and selling produce will be presumed to have been purchased with PACA trust assets, and any such assets may thus be viewed as collateral until the PACA trust claim has been paid in full</u>. *Accord, Sanzone-Palmisano.*

In *J.E. Besteman Company v. Carter's, Inc.*, 439 F. Supp. 2d 774 (W.D. Mich. 2006) the Court held that, applying the principles of *Sanzone-Palmisano* and *Kornblum*, the res of the PACA trust in favor of the unpaid seller extended to <u>all</u> assets of a debtor that operated a chain of grocery stores (emphasis added).

Here, the entire commingled accounts and assets of the Debtors are considered PACA trust assets, up to the universe of trust claims, unless the Debtors can prove that some portion of the assets arose from a non-trust source, which is "virtually impossible." Sales proceeds from the Debtors' retail operations, including proceeds from the sale of the subject perishable agricultural commodities, being PACA trust assets, were commingled with all other sales proceeds, thereby making all the Debtors' assets commingled with both trust and non-trust monies. As a result of this commingling, the sales proceeds from those perishable agricultural commodities were used to purchase other corporate assets, for example FF&E, which now also becomes part of the trust

6

res.

To the extent any dispute arises regarding the trust assets, it is the Debtors who must prove which assets, if any, are not subject to the trust. *Sanzone-Palmisano*, *supra*. The Debtors are required by federal statute to hold all perishable agricultural commodities, the inventories of food or other products derived from the perishable agricultural commodities and the receivables and proceeds from the sale of the perishable agricultural commodities in trust for the PACA beneficiary. In the event these liquid and intangible assets are insufficient to fully satisfy Movant's trust claim, Movant may look to other assets of the Debtors for security of its trust claim.

Furthermore, individual officers and directors of the company that were in positions to control the trust assets, and who failed to preserve them, may be held personally liable for breach of fiduciary duty. *Coosemans Specialties, Inc. v. Gargiulo*, 485 F. 3d 701 (2nd Cir. 2007).

There is no question that the Debtor herein has failed or otherwise refused to perform its statutory duties and Movant is therefore entitled to immediate turnover and payment.

### C. Debtors are "Dealers" as Defined by the Perishable Agricultural Commodities Act and are Subject to the PACA

Debtors are operating as dealers under PACA. The relevant section of the definition of a "dealer" under PACA reads: "The term 'dealer' means any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce" 7 U.S.C. §499a(b)(6).

Furthermore, Debtor Kmart Corporation has subjected itself to the governing rules and regulations of PACA by acquiring a PACA license with the U.S. Department of Agriculture, being License Number 20030998. The license was first issued on May 9, 2003, has a current anniversary/renewal date of May 9, 2021, and remains in good/active status today. The reported

7

Principals on the PACA license are ESL Investments, Inc., Ann N. Reese, Lawrence J. Meerschaert, Edward S. Lampert and Thomas J. Tisch[1].

Thus, the Debtors qualify as dealers through their credit purchases from Movant and through their PACA license, and therefore are unquestionably subject to PACA and also subject to <u>all</u> of the PACA rules and regulations.

### D. Movant Perfected Its Rights to PACA Trust Benefits by Issuing Invoices That Contain All Language Necessary to Preserve its PACA Trust Rights in Compliance with 7 U.S.C. §499e(c)(4)

Movant currently is, and during all material times herein has been, a PACA license. *See* Hollenback Declaration at ¶2. PACA licensees, such as Movant herein, may preserve PACA trust rights by using ordinary and usual invoice statements to provide notice of the licensee's intent to preserve its trust benefits. 7 U.S.C. §499e(c)(4). Thus, a licensee who includes the following statement on the face of its invoices will have perfected its PACA trust rights:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, l930 (7 U.S.C. §499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. 7 U.S.C. §499e(c)(4).

As is self-evident from the authenticated representative unpaid invoice annexed to the Hollenback Declaration, Movant included the above-quoted statutory language on the face of its invoices for which it is claiming PACA trust protection. Consequently, Movant qualifies as a trust beneficiary under the PACA for all sales transactions that are the subject of those invoices. *See also*, Hollenback Declaration at ¶9. Therefore, this threshold requirement for a PACA trust claim has been satisfied.

---

[1] Debtors also maintain additional PACA licenses. Kmart of Michigan, Inc. holds PACA license number 20030999 with multiple trade names and Kmart Operations, LLC holds PACA license number 20150825 with multiple trade names.

8

E.  **Debtors Failed to Establish a PACA Trust in Favor of the PACA Trust Beneficiary**

Debtors did not create a PACA trust to protect the PACA beneficiaries, including Movant, and to preserve the trust assets. Debtors were required by PACA to hold:

> [a]ll inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products…in trust for the benefit of…[the PACA Beneficiary] until *full payment* of the sums owing in connection with such transactions has been received by…[the PACA Beneficiary]. (7 U.S.C. §499e(c)(2)) (Emphasis added)

Despite repeated oral and written demands, both pre-petition and post-petition, Debtors failed and refused to pay the full amounts protected under the trust, notwithstanding the fact that the Final PACA Order provided them full authority to make such payment. In fact, the last payment received by Movant from the Debtors was on October 1, 2018. *See,* Hollenback Declaration at ¶11. As such, Debtors are in violation of 7 U.S.C. §499e, *et seq. See also, In re Al Nagelberg & Co., Inc.*, 84 B.R. 19 (Bankr. S.D. NY 1988), which confirms that dissipation of PACA trust assets results from *any* act which *could* result in the diversion of such assets or which *could* prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions. *See also*, 7 C.F.R. §46.46(b)(2).

For the foregoing reasons, Movant has established that Debtors failed to hold and pay trust assets and that it is entitled to recover on its trust claim against the Debtors for perishable agricultural commodities for which Movant preserved its PACA trust rights.

III.  **THE PACA TRUST ASSETS WHICH ARE THE SUBJECT OF THIS MOTION ARE NOT PART OF THE BANKRUPTCY ESTATE AND RIGHTFULLY BELONG TO THE PACA TRUST BENEFICIARY**

PACA regulations provide that if a buyer or receiver declares bankruptcy, PACA trust assets are <u>not</u> to be considered part of the estate to be distributed to other creditors or sold unless and until all trust beneficiaries have been paid in full. *See,* 49 Fed. Register at 45738, which states:

> If a buyer or receiver declares bankruptcy, makes an assignment for the

9

benefit of creditors, declares its intentions to sell under the bulk sales law or otherwise terminates its business, **<u>trust assets are not to be considered part of the estate to be distributed to other creditors unless all trust beneficiaries have been paid</u>**. (Emphasis added) (49 Fed. Register at 45738)

As such, PACA trust assets are *excluded* from the bankruptcy estate as a matter of law. *See also, Stowe Potato Sales, Inc. v. Terry's, Inc.*, 224 B.R. 329 (W.D. Va. 1998). Because PACA trust assets are not property of the bankrupt's estate, it is beyond question that those assets must be set aside for distribution and turnover to the trust beneficiary. *In re Southland & Keystone* 132 B.R. 632 (9th Cir. BAP 1991); *In re Megafoods Stores, Inc.*, 163 F.3d. 1063 (9th Cir. 1998); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1988); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. N.D. Texas 1985); *In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991); *Matter of United Fruit & Produce Co., Inc.*, 86 B.R. 14 (Bankr. D. Conn. 1988). *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D. Pa. 1987).

Particularly instructive is the analysis of the court in *Fresh Approach, supra*. Specifically, the court stated:

> It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a priority status for unpaid produce claimants <u>priming even the administrative claims which normally stand first in line in a bankruptcy distribution</u>. (Emphasis added.) (*Id.* at 420)

Based on this analysis, the *Fresh Approach* court concluded that the PACA trust creditor was entitled to *immediate* payment from the debtor. In accord, *see In re W.L. Bradley Co., Inc., supra*, where the bankruptcy court concluded that the funds which were subject to the PACA trust did <u>not</u> become property of the estate when the debtor filed a petition and that the unpaid produce seller was unquestionably entitled to relief from stay and immediate payment of such funds. In reaching this conclusion, the bankruptcy judge stated:

> My decision [to order immediate payment from the debtor to the unpaid produce supplier] is based on the legislative purpose in the enactment of the PACA trust provision, which was to assur[e] … that raw products will

be paid for promptly. (*Bradley*, 75 B.R. at 513-514)

Movant has to pay its own creditors, many of which are also PACA trust beneficiaries. One of the main purposes of the PACA trust is to prevent any potential "domino effect" and require that PACA trust claims be promptly paid, even when a debtor files for bankruptcy protection. Moreover, in light of Congress' clear mandate, this Court need not look to any other source other than the PACA itself and its Regulations, which dictate that the requested order for payment be issued. *See* specifically, *Stowe Potato Sales, Inc. v. Terry's, Inc., supra*, where the court states at page 133:

> [T]here is no question of [PACA's] effect, or of Congress' power to enact it. Accordingly, I have no choice but to enforce the statute as written, **regardless of the resulting hardship in a particular case.** (Emphasis added.)

For each of these reasons, the assets, which Movant seeks to recover from the Debtors, are PACA trust assets that are not part of the Debtors' estate and not available to pay any other creditor class. As a matter of law, Movant is therefore entitled to immediate turnover and payment.

### IV. MOVANT'S PACA TRUST CLAIMS ARE SUPERIOR TO AND TAKE PRIORITY OVER ALL OTHER SECURED OR UNSECURED CLAIMS, INCLUDING AHEAD OF ADMINISTRATIVE CLAIMS

The agriculture industry is unique because of the short life span of agriculture products and thus Congress has recognized that the industry itself must be protected by granting priority status to sellers of produce over other creditor classes, particularly ahead of lenders who take liens on accounts, inventory and the proceeds thereof. [7 U.S.C. §499 e(c)(1)] (Supp. 1986). Thus, the unambiguous wording of PACA compels this Court to give Movant's trust claims priority over all other secured or unsecured claims against the Debtors.

In addition to PACA itself, judicial decisions nationwide have consistently affirmed that a PACA trust claim has priority over other secured and unsecured claims. *See*, *Consumer's Produce*, 16 F. 3d at 1379; *In re Magic Restaurants, Inc.,* 205 F. 3d 108 at 112 (3d Cir. 2000); *accord*, *In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991); *See also*, *In re Prange Foods*

11

*Corp.*, 63 B.R. 211 (Bankr. W.D. Mich. 1986). *See also*, *Fresh Approach II*, *supra*, at p. 420-422, which specifically held that PACA trust claims prime even administrative claims that normally stand first in line in a bankruptcy distribution. *Id.* at 420.

The Second Circuit has stated that unpaid sellers are "afforded a highly unusual trust beneficiary status that permits them, in the case of defaults, to trump the buyer's other creditors, including secured ones." *American Banana Co., Inc. v. Republic National Bank*, 362 F. 3d 33 (2nd Cir. 2004). "As beneficiaries of a PACA trust, growers and sellers of perishable agricultural commodities retain the right to recover against PACA Trustees [Debtors] superior to all creditors, including secured creditors." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063 (2nd Cir. 1995).

Based upon the foregoing authorities, it cannot seriously be disputed that the PACA trust beneficiary enjoys priority status over all other creditors, including ahead of secured and administrative creditors.

### V.    THE PACA TRUST BENEFICIARY IS ENTITLED TO RECOVER PRINCIPAL AMOUNTS DUE PLUS ACCRUED INTEREST AND ATTORNEY FEES PURSUANT TO THE PROVISIONS OF THE PACA TRUST AND SPECIFIC AGREEMENT

The invoices which constituted the sales agreements for the subject transactions between Movant and the Debtors included a specific and unequivocal provision for recovery of finance charges at the rate of 1.5% per month (18% annually) plus the recovery of attorney fees. *See,* Hollenback Declaration at ¶9, with authenticated representative unpaid invoice annexed thereto. U.C.C. 2-207 applies to terms on all invoices that accompany or follow the delivery of goods. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F. 2d 1102, 1107 (3rd Cir. 1992). Under these circumstances, Circuit level courts have held that attorney's fees incurred by an unpaid produce supplier in connection with enforcing PACA trust rights plus recovery of finance charges are all to be included within the PACA trust claim. *Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701 (2nd Cir. 2007); *Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220 (9th Cir. 2002) (when invoices provide for recovery of attorney's fees and finance charges, those fees and charges are to be considered sums 'in connection with' the produce

transactions); *Country Best v. Christopher Ranch, LLC,* 361 F.3d 629 (11th Cir. 2004) (holding attorneys' fees and interest become part of a PACA trust claim). *See also*, *In re Fleming Companies, Inc.*, 316 B.R. 809, 815 (D. Del. 2004);

For these reasons, Movant is entitled to include all accrued finance charges as part of its PACA trust claim. The accrued interest on the principal PACA trust claim is liquidated at $3,776.97 and evidenced on the authenticated spreadsheet attached to the Hollenback Declaration, ¶10.

## VI. CONCLUSION

For all the foregoing reasons, Movant Caito Foods respectfully requests that the Court grant its motion for an order compelling an immediate turnover and payment in the amount of $41,222.41 which includes principal and interest. The court should direct the Debtors to make payment to the Movant within fourteen (14) days of entry of an order. Movant respectfully requests leave of Court to submit its fee petition within twenty-one (21) days of entry of an order. A proposed order granting the instant motion is included herewith.

Dated: April 1, 2019

Respectfully submitted,

*/s/ Mark A. Amendola*
MARK A. AMENDOLA
Ohio Bar I.D. No. 0042645
Admitted herein *Pro Hac Vice*
MARTYN AND ASSOCIATES
820 W. Superior Avenue, Tenth Floor
Cleveland, Ohio 44113
(216) 861-4700 - telephone
(216) 861-4703 - facsimile
Email: mamendola@martynlawfirm.com

Attorney for Movant/PACA Trust Creditor
Caito Foods, LLC

13