HEARING DATE:    April 18, 2019
TIME:    10:00 a.m.
OBJECTION DUE DATE: April 11, 2019
    4:00 p.m.

Edward M. Fox
Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
Phone: 212-218-5500
Fax: 212-218-5526
Email: emfox@seyfarth.com

*Attorneys for Wilmington Trust, National Association,*
*As indenture trustee and collateral agent*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.,*<br><br>Debtors.[1] | ) Chapter 11<br>)<br>) Case No. 18-23538 (RDD)<br>)<br>) (Jointly Administered)<br>) |

### NOTICE OF MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL AGENT TO PROHIBIT OR CONDITION DEBTORS' CONTINUED USE OF COLLATERAL, INCLUDING CASH COLLATERAL

PLEASE TAKE NOTICE that a hearing on the Motion of Wilmington Trust,

National Association, as Indenture Trustee and Collateral Agent to Prohibit or Condition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "Debtors"). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Debtors' Continued Use of Collateral, Including Cash Collateral (the "Motion"), Wilmington

Trust, National Association, as Indenture Trustee and Collateral Agent ("Wilmington Trust")

will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, in

Courtroom 118, at the United States Bankruptcy Court for the Southern District of New York,

300 Quarropas Street, White Plains, New York, on April 18, 2019 at 10:00 a.m. (Eastern Time),

or as soon thereafter as counsel may be heard (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the United States Bankruptcy Court for the Southern District of New York, and shall be filed

with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court") electronically in accordance with General Order M-242 (General Order M-242 and the

User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov),

by registered users of the Bankruptcy Court's case filing system and, by all other parties in

interest, on a CD-ROM, in text-searchable Portable Document Format (PDF) (with hard copy

delivered directly to Chambers), and shall be served in accordance with the Amended Order

Implementing Certain Notice and Case Management Procedures entered on November 1, 2018

[Dkt. No. 405] and upon: (a) Seyfarth Shaw LLP, 620 Eighth Avenue, New York, New York

10018 (Attn: Edward M. Fox); and (b) the Office of the United States Trustee, 201 Varick Street,

Room 1006, New York, New York 10014, so as to be received no later than April 11, 2019 at

4:00 p.m. (Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and

served with respect to the Motion, Wilmington Trust may, on or after the Objection Deadline,

2

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that the hearing regarding this Motion may be adjourned without further notice other than the announcement of such adjournment in open court or by the filing of a notice of such adjournment on the docket in the above-captioned adversary proceeding.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, but you need not appear at the Hearing regarding the Motion if you do not object to the relief requested in the Motion.

Dated: New York, New York        SEYFARTH SHAW LLP
      April 4, 2019

By: */s/ Edward M. Fox*
    Edward M. Fox
    *Attorneys for Wilmington Trust National*
    *Association, as indenture trustee and*
    *collateral agent*
    620 Eighth Avenue
    New York, New York 10018
    Phone: 212-218-5500
    Fax:   212-218-5526
    Email: emfox@seyfarth.com

3

Edward M. Fox
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 218-4646
Facsimile:  (917) 344-1339
Email:  emfox@seyfarth.com

*Attorneys for Wilmington Trust, National Association,
as indenture trustee and collateral agent*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.,* | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL AGENT TO PROHIBIT OR CONDITION DEBTORS' CONTINUED USE OF COLLATERAL, INCLUDING CASH COLLATERAL

Wilmington Trust, National Association, as indenture trustee ("Wilmington Trust") for the

6-5/8% Senior Secured Notes due 2018 (the "2010 Notes") issued by Sears Holdings Corporation

("Sears"), and as collateral agent, by its undersigned attorneys, files this Motion of Wilmington

Trust, National Association, as Indenture Trustee and Collateral Agent to Prohibit or Condition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "Debtors").  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Debtors' Continued Use of Collateral, including Cash Collateral (the "Motion"), and in support
thereof states as follows:

## BACKGROUND

### The 2010 Notes

1.    Pursuant to an indenture dated as of October 12, 2010 (as amended from time to
time, the "2010 Indenture") between Sears, the Guarantors Party thereto (the "Guarantors") and
Wells Fargo Bank, National Association ("Wells Fargo"), as trustee and collateral agent, Sears
issued the 2010 Notes.

2.    Pursuant to an Instrument of Resignation, Appointment, and Acceptance dated as of
June 25, 2014, by and among Sears, Wilmington Trust and Wells Fargo, Wilmington Trust became
the successor indenture trustee  (the "Prepetition Second Lien 2010 Indenture Trustee") with respect
to the 2010 Notes.

### The Security Agreement

3.    Pursuant to the Amended and Restated Security Agreement dated as of March 20,
2018, (the "Security Agreement"), among Sears, the Guarantors and Wilmington Trust, as collateral
agent (the "Prepetition Second Lien Collateral Agent"), the Prepetition Second Lien Collateral
Agent holds a security interest in the Collateral (as defined in the Security Agreement),[2] including

---

[2] Section 2.1 of the Security Agreement states:

2.1 Collateral; Grant of Security Interest.  Each Grantor hereby grants to the Collateral Agent for the
equal and ratable benefit of the Secured Parties a security interest in all of the following property now
owned, or at any time hereafter acquired, by such Grantor or in which such Grantor now has, or at any
time in the future may acquire, any right, title or interest (collectively, the "Collateral"), as collateral
security for the prompt and complete payment and performance when due (whether at the stated
maturity, by acceleration or otherwise) of such Grantor's Secured Obligations:

(a)  all Credit Card Accounts Receivable;

(b)  all Inventory;

(c)  all Chattel paper relating to Credit Card Accounts Receivable;

(d)  all Instruments relating to Credit Card Accounts Receivable;

2

56017955v.1

Cash Collateral (as defined in 11 U.S.C. § 363(a)), to secure repayment of the fees and expenses of

the Prepetition Second Lien Collateral Agent,[3] to secure repayment of the fees and expenses of the

Prepetition Agents, and to secure repayment of the Prepetition Second Lien Obligations.

### The Bankruptcy Filing

4.     On October 15, 2018, each of the Debtors filed voluntary petitions for relief under

Chapter 11 of title 11, U.S.C. in the United States Bankruptcy Court for the Southern District of

New York, (the "Bankruptcy Court").

### DIP Financing and Use of Cash Collateral

5.     On November 30, 2018, pursuant to the Debtors' Motion for Authority to (A) Obtain

Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition

Secured Parties; and (D) Schedule Second Interim Hearing and Final Hearing, dated October 15,

2018 [Dkt. No. 7] (the "DIP Financing Motion"), the Bankruptcy Court entered the Final DIP

Order.

6.     The DIP Financing Motion sought entry of an order, *inter alia*,

> authorizing the DIP ABL Loan Parties, solely in accordance with
> the Approved Budget (as defined below), the DIP ABL Loan
> Documents and the DIP Orders, to use the Prepetition ABL
> Collateral, including "Cash Collateral" (as defined in section 363
> of the Bankruptcy Code) of the Prepetition Credit Parties.

---

(e)  all Documents relating to any Inventory;

(f)  all books and records pertaining to the Collateral; and

(g)  to the extent not otherwise included, all Proceeds, insurance claim, Supporting Obligations and
products of any and all of the foregoing and all collateral security and guarantees given by any Person
with respect to any of the foregoing.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Final Order
(I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and
Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the
Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief (the "Final DIP
Order") [Dkt. No. 955].  See Declaration of Edward M. Fox in support of the Motion of Wilmington Trust, National
Association, as Indenture Trustee and Collateral Agent to Prohibit or Condition Debtors' Continued Use of Collateral,
including Cash Collateral (the Fox Declaration"), Exhibit A.

3

Final DIP Order, Preamble (vi).  Emphasis added.

7.      Pursuant to the Final DIP Order, Wilmington Trust, as Prepetition Second Lien

Collateral Agent, was granted adequate protection of its interest in the Collateral, including

replacement liens on the assets of Sears and the Guarantors.

8.      The Final DIP Order provides that:

> The DIP ABL Loan Parties have sought authority to use Cash
> Collateral on the terms described herein, and in accordance with
> the Approved Budget, to administer their Chapter 11 Cases and
> fund their operations.

Order ¶ O.b.  Emphasis added.

9.      The Final DIP Order further provides that

> The proceeds of the DIP ABL Facility and Cash Collateral shall be
> used solely as provided in the  DIP ABL Loan Documents and solely
> in accordance with the Approved Budget (subject to the Carve-
> Out) . . . .

Order ¶ O. e.  Emphasis added.

10.     The Order further provides that "the DIP ABL Loan Parties shall be required to

comply with such Approved Budget . . . subject to the Permitted Variance (as defined below)."

Order ¶ 22(a).  Emphasis added.

11.     The Order further provides:

> Subject to and consistent with the terms of the DIP ABL Loan
> Documents, the DIP Orders, and the Approved Budget, the DIP
> ABL Loan Parties are hereby authorized to use the Prepetition
> ABL Collateral (including Cash Collateral) until the Termination
> Date to the extent set forth herein . . . .

Order ¶ 2.  Emphasis added.

12.     The Approved Budget, which was attached to the Final DIP Order as Exhibit C [Dkt.

No. 955-3] see Fox Declaration, Exhibit A, covered the 13 week period through February 16, 2019.

4

56017955v.1

Final DIP Order ¶ 22(a).  The Approved Budget was never extended or otherwise modified.  Fox

Declaration ¶ 5, Exhibit B.

13.    Although the Approved Budget could be changed or extended, the Final DIP Order

requires the DIP ABL Loan parties to obtain the consent of the DIP ABL Agent and the DIP ABL

Co-Collateral Agents to do so.

> The Approved Budget shall be updated, modified or supplemented
> by the DIP ABL Loan Parties (x) with the written consent of the
> DIP ABL Agent and each DIP ABL Co-Collateral Agent in their
> sole and absolute discretion . . . *provided*, *however*, that in the
> event the DIP ABL Agent, the DIP ABL Co-Collateral Agents and
> the DIP ABL Loan Parties cannot agree as to an updated, modified
> or supplemented budget, the then current Approved Budget shall
> continue in effect, with weekly details for any periods after the 13-
> week period covered by the then current Approved Budget to be
> derived in a manner satisfactory to the DIP ABL Agent and the
> DIP ABL Co-Collateral Agents in their sole and the absolute
> discretion based on the then current Approved Budget (each such
> period so approved an "Extended Budget Period"), and such
> disagreement shall give rise to an Event of Default upon the later
> of (x) the end of the period covered by the then current Approved
> Budget and (y) the end of the then current Extended Budget
> Period.

Final DIP Order ¶ 22(a).

14.    Thus, if the DIP ABL Agent, the DIP ABL Co-Collateral Agents and the DIP ABL

Loan Parties could not agree on a proposed modification or extension of the Approved Budget, such

disagreement gives rise to an Event of Default[4] at the end of the period covered by the then current

Approved Budget, which was February 16, 2019.

---

[4] An Event of Default constitutes a Termination Event.

*Termination Event.*  (a) The occurrence of any Event of Default (as defined in the DIP ABL Loan Documents), or
(b) noncompliance of the DIP ABL Loan Parties in any material respect or in a manner adverse to the DIP ABL Credit
Parties with any of the terms, provisions, conditions, covenants or obligations under the DIP Orders are each referred to
herein as a "Termination Event."

Final DIP Order ¶ 33.

56017955v.1

**The Junior DIP**

15.     Also in the DIP Financing Motion, the Debtors requested authority to obtain a

"Junior DIP Loan" in the amount of $200 million from certain affiliates of the Debtors (the "Junior

DIP Lenders"), which amount could be upsized to $300 million subject to certain commitments, and

secured by a junior lien on encumbered collateral, a *pari passu* senior lien on certain previously

unencumbered assets, and a junior lien on other previously unencumbered assets.  The DIP

Financing Motion stated that the Debtors would continue negotiating the terms of the Junior DIP

Loan and "test the market to determine whether any other lender is prepared to provide the requisite

junior financing on more favorable terms or whether more favorable financing can be obtained."

DIP Financing Motion ¶ 7.

16.     Ultimately, the Debtors agreed to enter into a Junior DIP Loan (the "Junior Dip")

with Cyrus Capital Partners, LP ("Cyrus").

17.     The Junior DIP with Cyrus was approved by order entered December 28, 2018 (the

"Junior DIP Order").  The same Approved Budget annexed to the Final DIP Order was annexed to

the Junior DIP Order.  [Dkt. No. 1436-1.]

**Asset Sale**

18.     On February 11, 2019, the Debtors sold substantially all of their assets, leaving

mainly inventory, which constitutes Collateral, at going out of business stores (the "GOB Stores")

as the Debtors' substantial remaining asset.

19.     Upon information and belief, the remaining inventory at GOB Stores has essentially

all been sold and reduced to cash.

6

**RELIEF REQUESTED**

20.    By this Motion, Wilmington Trust seeks entry of an order pursuant to 11 U.S.C.

§ 105(a), (i) requiring the Debtors, pursuant to 11 U.S.C. § 363(c)(4), to segregate and account for

the Cash Collateral and (ii) prohibiting the Debtors from using Cash Collateral in which the

Prepetition Second Lien Collateral Agent has an interest unless and until the Debtors are able to

reach agreement with the Prepetition Second Lien Collateral Agent on a budget for the use of such

Cash Collateral and on the provision of satisfactory adequate protection for the continued use of the

Collateral, including Cash Collateral.

**ARGUMENT**

21.    The Approved Budget covered the period through February 16, 2019. Accordingly,

even absent a Termination Event, the Debtors cannot satisfy the Final DIP Order's requirement that

Cash Collateral be expended only in accordance with the terms of an Approved Budget.

22.    Moreover, the Debtors did not obtain the approval of the DIP ABL Agent and the

DIP ABL Co-Collateral Agents to extend the term of the Approved Budget beyond February 16,

2019. Nor can they. The DIP ABL Loan, as well as the Junior DIP, was repaid in connection with

the closing of the sale of the Debtors' assets on February 11, 2019, Consequently, the Debtors are

no longer able to obtain approval of any such extension.

23.    The fact that the Debtors are unable to obtain approval of an Approved Budget for

the period after February 16, 2019, does not give them license to simply ignore the requirements of

the Final DIP Order and use Cash Collateral as they see fit pursuant, if at all, to a budget that the

Debtors create on their own without approval from anyone.

24.    Rather, the Debtors can only use Cash Collateral in accordance with the terms of the

Final DIP Order, *see* 11 U.S.C. § 363(c), and if they are unable to comply with the terms of the

7

Final Dip Order due to changed circumstances, then they must return to the Court and seek to revise it. They are not free to ignore it.

25.     Here, however, it seems the Debtors have done exactly that. They have continued to use Cash Collateral since February 16, 2019 with no limitations whatsoever. This is not what the Final DIP Order authorized.

26.     Even if the Debtors could somehow claim that they are entitled to use Cash Collateral notwithstanding the absence of an effective Approved Budget, the Final DIP Order must be modified to reflect the reality that the DIP ABL Lenders have been repaid and only Prepetition Second Lien obligations remain outstanding.

27.     Moreover, because Sears and the Guarantors have reduced their remaining inventory at the GOB Stores to cash and do not appear to have additional unencumbered assets to pledge in order to provide adequate protection for the continued use of the Collateral, including Cash Collateral, in which the Second Lien Collateral Agent has an interest, the Holders of Prepetition Second Lien Obligations will not be adequately protected by the continued use of the Collateral, including Cash Collateral, by the Debtors.

28.     Bankruptcy courts can modify prior orders where changed circumstances warrant a modification. In re Texlon Corp., 596 F.2d 1092, 1101 (2d Cir. 1979) (describing the "rule which permits the vacation or modification of bankruptcy orders where subsequent events present during administration demonstrate the necessity therefor; and to do so would not be inequitable"); see also In re Olsen, 861 F.2d 188, 189-90 (8th Cir. 1988) ("Bankruptcy courts have general authority to change the terms of their own orders when equity so requires . . . such as a change of condition [that] justifies relief from [an order] to prevent manifest injustice"); Big Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. 272, 282-84 (N.D. Ga. 1985) (holding that "[i]t is well settled that a

8

bankruptcy court has the power to vacate or modify its orders, as long as it equitable to do so" and affirming vacatur of consent order where subsequent orders "had superseded the consent order").

29.     Bankruptcy courts can exercise this power to modify an order pursuant to 11 U.S.C. § 105(a). ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); *In re Argose, Inc.*, 377 B.R. 148, 149-50 (Bankr. D. Del. 2007) ("The Court has the power under section 105(a) of the Code to modify an order if equity so requires," and can do so where new facts warrant modification and "a modification will not offend any provision of the Code").

30.     Because the Debtors have sold substantially all of their assets and cannot offer adequate protection for the use of the Collateral, including Cash Collateral, and because the Debtors can no longer obtain the approval of the DIP ABL Lenders to extend or amend the Approved Budget, the Final DIP Order is predicated on conditions which either no longer exist or can no longer be satisfied. Accordingly, even if it were otherwise operative, the Final DIP Order must be modified to prohibit the Debtors' use of Cash Collateral unless and until the Debtors reach agreement with the Prepetition Second Lien Collateral Agent as to a new Approved Budget, assuming the Debtors can establish a need to use Cash Collateral at this time and can provide satisfactory adequate protection for the continued use of the Collateral, including the Cash Collateral, given the Debtors' changed circumstances.

WHEREFORE, Wilmington Trust requests that the Court enter an order in the form annexed hereto as Exhibit A directing the Debtors to (i) segregate and account for the Cash Collateral, and (ii) prohibit the Debtors from using the Cash Collateral in which the Second Lien Collateral Agent has an interest, unless and until the Debtors are able to reach agreement with the Prepetition Second Lien Collateral Agent on a budget for the use of such Cash Collateral and on the provision of

56017955v.1

satisfactory adequate protection for the continued use of the Collateral, including the Cash

Collateral.

Dated: New York, New York
     April 4, 2019

                       SEYFARTH SHAW LLP

                       By: */s/ Edward M. Fox*
                           Edward M. Fox
                           *Attorneys for Wilmington Trust, National Association,*
                           *as indenture trustee and collateral agent*
                       620 Eighth Avenue
                       New York, NY  10018
                       Telephone:  (212) 218-4646

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| | ) | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.,* | ) |  |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) |  |

## ORDER PROHIBITING OR CONDITIONING DEBTORS' CONTINUED USE OF COLLATERAL, INCLUDING CASH COLLATERAL

Upon the Motion of Wilmington Trust, National Association, as Indenture Trustee

and Collateral Agent to Prohibit or Condition Debtors' Continued Use of Collateral, including

Cash Collateral, dated April 4, 2019 (Dkt. No. [___]) (the "Motion")[2] for an order pursuant to 11

U.S.C. §§ 105(a) and 363(c), (i) requiring the Debtors, pursuant to 11 U.S.C. § 363(c)(4), to

segregate and account for the Cash Collateral and (ii) prohibiting the Debtors from using Cash

Collateral in which the Prepetition Second Lien Collateral Agent has an interest unless and until

the Debtors are able to reach agreement with the Prepetition Second Lien Collateral Agent on a

budget for the use of such Cash Collateral and on the provision of satisfactory adequate

protection for the continued use of the Collateral, including Cash Collateral, all as more fully set

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365) (collectively, the "Debtors"). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing

Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the

Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)

and (M); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the relief requested in the Motion having been provided in accordance

with the Amended Case Management Order; and such notice having been adequate and

appropriate under the circumstances, and it appearing that no other or further notice need be

provided; and the Court having held a hearing on April 18, 2019 to consider the relief requested

in the Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the

proceedings had before the Court; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor,

It is hereby

ORDERED that the Debtors are directed to segregate and account for the Cash

Collateral in which the Second Lien Collateral Agent has an interest; and it is further

ORDERED that the Debtors are prohibited from using the Collateral, including

Cash Collateral, in which the Second Lien Collateral Agent has an interest, unless and until the

Debtors are able to reach agreement with the Prepetition Second Lien Collateral Agent on a

budget for use of such Cash Collateral and on the provision of satisfactory adequate protection

for the continued use of the Collateral, including Cash Collateral, given the Debtors' changed

circumstances; and it is further

2

ORDERED that the Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation, and/or enforcement of this

Order.

Dated: White Plains, New York
     April ___, 2019

 

HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

56038128v.1