WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re** | : |  |
|  | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : |  |
|  | : | **Case No. 18-23538 (RDD)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------x

### SECOND SUPPLEMENTAL DECLARATION OF MOHSIN Y. MEGHJI IN SUPPORT OF THE DEBTORS' MOTION TO ENFORCE

I, Mohsin Meghji, make this declaration under 28 U.S.C. § 1746:

1.       I submit this declaration ("**Second Supplemental Declaration**") in support of the *Debtors' Supplemental Memorandum of Law in Further Support of Their Motion to Enforce the Automatic Stay* ("**Supplemental Response**"), filed concurrently with this Supplemental Declaration, and as a supplement to the *Declaration of Mohsin Y. Meghji in Support of Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation* [ECF No. 2797] ("**Declaration**"), and the

*Supplemental Declaration of Mohsin Y. Meghji in Support of the Debtors' Motion to Enforce* [ECF No. 2914] (the "**Supplemental Declaration**").[1]

2.    I am the Chief Restructuring Officer ("**CRO**") of the Debtors[2] and the Managing Partner of M-III Advisory Partners, LP ("**M-III**").[3] Except as otherwise indicated, all statements in this Second Supplemental Declaration are based upon my personal knowledge of the Debtors' pre-Closing operations and finances gleaned during the course of my engagement with the Debtors; my discussions with the Debtors' senior management, other members of the M-III team, and the Debtors' other advisors; my review of relevant documents; and my views based upon my experience. If called to testify, I would testify competently to each of the facts set forth in this Second Supplemental Declaration. I am authorized to submit this Second Supplemental Declaration on behalf of M-III for the Debtors.

3.    Prior to the Closing, the Debtors had sought the release of the First Data Reserve Account and had contemplated using those funds in connection with paying down the DIP

---

[1] All capitalized terms not otherwise defined in this Second Supplemental Declaration shall have the meanings prescribed to them in the Declaration, the Supplemental Declaration, or the Supplemental Response as applicable.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (None); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[3] Additional information regarding my background, including the events leading up to the Debtors' Motion to Enforce, can be found in the Declaration, which is fully incorporated in this Second Supplemental Declaration by reference.

to a level of $850 million, which was a closing condition that the Debtors had to meet pursuant to § 10.10 of the APA.  However, despite repeated requests from the Debtors, the Buyer refused to provide First Data with the necessary financial information.  This is the same type of information that the Debtors had, prior to the bankruptcy filing, regularly provided both pursuant to the First Data Agreement and in the ordinary course of business.  And this information likely would have made the First Data Reserve Account immediately payable. *See* Supplemental Declaration ¶ 5.

4.      On or about February 3, 2019, more than a week before Closing, the Debtors abandoned their plan to use the Reserves to meet the DIP requirement.  The Debtors then advised the Buyer that the $35 million of Reserve Accounts would be included as part of the aggregate Credit Card Accounts Receivable delivered to Buyer at Closing.  Attached hereto as **Exhibit A**, is a true and correct copy of the February 3, 2019 Transform Transaction – Weekly Tracking Presentation that was provided to the Buyer's financial advisors.  The Buyer was made aware that these proceeds were included in assets the Debtors were delivering under § 10.9 during a phone call on February 5, 2019, and the Reserve Accounts were included in the Final Inventory and Receivables Tracker sent to Buyer at Closing.  Attached hereto as **Exhibit B**, is a true and correct copy of the Final Inventory and Receivables Tracker provided to counsel for Buyer on February 10, 2019.  The Debtors subsequently paid down the DIP balance with other funds.

5.      As the parties moved toward Closing, the Buyer was aware that the Debtors would deliver an excess of aggregate inventory.  This included $1.557 billion in Inventory, $60 million of Credit Card Accounts Receivable, and $47 million of Pharmacy Receivables and Pharmacy Script Value, for an aggregate value of $1.664 billion.  The Buyer requested that the Debtors retain the excess above $1.657 billion by taking $7 million in prepaid inventory—rather than the oldest Credit Card Accounts Receivable to which the Debtors were entitled under the

formula in § 10.9. Attached hereto as **Exhibit C**, is a true and correct copy of the e-mail correspondence reflecting treatment of the excess $7 million between counsel for Debtor and counsel for Buyer from February 10, 2019 to February 11, 2019. [4] Despite multiple requests by the Debtors' financial advisors, the Buyer has not yet delivered the $7 million of prepaid inventory to the Debtors.


Dated: April 8, 2019                        By: /s/ Mohsin Y. Meghji
          New York, New York                      Mohsin Y. Meghji
                                                  Chief Restructuring Officer
                                                  Debtors and Debtors in Possession

---

[4]

# *EXHIBIT A*



**Privileged & Confidential**
**Prepared at the Request of Counsel**
**Subject to F.R.E. 408**

# Transform Transaction - Weekly Tracking

February 3 2019

SEARS HOLDINGS

**Privileged & Confidential**
**Prepared at the Request of Counsel**
**Subject to F.R.E. 408**

# Admin Solvency Tracker

| | Original Estimate | ESL Assumed Liabilities | Original Gap | Change in Estimates | Identified Variance | Revised Gap | Potential Mitigating Items | Notes |
|---|---|---|---|---|---|---|---|---|
| **Claims** | | | | | | | | |
| 503(b)9 | $ 173 | $ (139) | $ (34) | $ (10) | $ - | $ (44) | $ 5 | (1) |
| Accounts Payable | 196 | (166) | (30) | - | 27 | (3) | - | (2) |
| Accrued Payroll | - | - | - | - | (39) | (39) | - | |
| Other Liability Accruals | - | - | - | - | - | - | - | |
| Severance & WARN | 28 | (43) | - | 8 | - | - | - | (3) |
| Franchise Taxes | 3 | - | (3) | - | - | (3) | - | |
| Property Taxes | 135 | (135) | - | - | - | - | - | |
| RemainCo Winddown Costs | 80 | - | (80) | - | - | (80) | - | |
| ABL DIP | 950 | (850) | (100) | 10 | 30 | (60) | 34 | (4) |
| Company Cash Available at Close | - | - | - | - | 27 | 27 | 5 | |
| Net Projected DIP Balance | - | - | - | - | (33) | (33) | $ 39 | |
| Junior DIP | 350 | (350) | - | - | - | - | - | (5) |
| Professional Fees | 108 | - | (108) | 5 | - | (103) | - | |
| Cure Costs | 200 | (200) | - | - | - | - | - | |
| Transfer Taxes (Purchase Price Deduction) | 19 | (19) | - | - | - | - | - | |
| Mechanics' Liens (Purchase Price Deduction) | 4 | (4) | - | - | - | - | - | |
| Specified Receivables Shortfall | - | - | - | - | - | - | - | |
| Warranty Receivable Shortfall | 3 | - | - | (3) | - | (3) | - | |
| Prepaid Inventory Shortfall | - | - | - | (49) | 23 | (26) | - | |
| UCC Release Cash Consideration | 35 | (35) | - | - | - | - | - | |
| **Total** | **2,283** | **(1,941)** | **(355)** | **(39)** | **41** | **(334)** | **44** | |
| **Additional Value Identified** | | | | | | | | |
| Company Cash Available Post Close | 29 | - | 29 | 12 | - | 41 | 5 | |
| Professional Fee Carve-Out Account | 108 | - | 108 | (5) | - | 103 | - | |
| MTN Sale Proceeds | 81 | - | 81 | - | - | 81 | - | |
| U-Haul Sale Proceeds | 7 | - | 7 | - | - | 7 | - | |
| Insurance Proceeds | 13 | - | 13 | (13) | - | - | - | |
| SHIP Security Deposit | 6 | - | 6 | - | - | 6 | - | |
| Specified Receivables | - | - | - | - | - | - | 20 | (6) |
| Prepaid Rent | - | - | - | - | 25 | 25 | - | |
| Prepaid Insurance | - | - | - | - | - | - | - | |
| Prepaid Marketing | - | - | - | - | - | - | - | |
| Other Asset Accruals | - | - | - | - | - | - | - | |
| GOB Inventory Post-Close | - | - | - | - | 35 | 35 | 56 | (7) |
| **Total** | **244** | **-** | **244** | **(6)** | **60** | **298** | **81** | |
| **Solvency / (Gap)** | | | **$ (111)** | **$ (44)** | **$ 101** | **$ (35)** | **$ 125** | |

*Under the revised estimates, the Company is projecting a ~($35mm) administrative shortfall; the Company has identified ~$125mm of potential mitigating items*

**Notes:**
(1) New estimate reflects movement of $20mm in critical vendor payments to ABL DIP; potential mitigating items reflect $5mm in opportunity identified through the application of trapped vendor credits, and mitigation of amounts owed to 503(b)9 claimants through identified cure
(2) Severance paid through payroll system so accrued payroll includes ~$8mm of January severance payments
(3) Reduced by $8mm to reflect January severance payments paid through payroll system
(4) Pipeline estimate of $34mm relate to $15mm of Operating Receipts, $10mm of Operating Disbursements, and $9mm of Amazon Inventory
(5) Revised to reflect latest professional fee estimate
(6) Assumes 50% collection of $41mm overage on specified receivables
(7) Consists of $11mm upside to existing 80 store GOB forecast and 90% NOLV on $50mm of inventory transferred due to delivering $50mm excess New ABL Collateral as shown on page 3 ($1,707mm vs $1,657mm)

**Privileged & Confidential**
**Prepared at the Request of Counsel**
**Subject to F.R.E. 408**

## Conditions to Close Summary

| Conditions to Close | | | | | | Potential Mitigating Items | Notes |
|---|---|---|---|---|---|---|---|
| | Projected Balance at Close | Target per APA | Cushion / (Gap) | Identified Favorable Variance | Revised Cushion / (Gap) | | |
| New ABL Collateral | $ 1,707 | $ 1,657 | $ 50 | $ - | $ 50 | $ 3 | (1) |
| Specified Receivables | 296 | 255 | 41 | - | 41 | - | (A) |
| Warranty Receivables | 51 | 54 | (3) | - | (3) | - | (A) |
| Prepaid Inventory | 98 | 147 | (49) | - | (49) | - | (A) (B) |
| ABL DIP | 940 | 850 | (90) | 30 | (60) | $ 34 | (2) |
| Junior DIP | $ 350 | $ 350 | $ - | $ - | $ - | $ - | |

**Notes:**

(1)  Inventory balance of $1,597mm per SHC Inventory Management. Credit card and pharmacy receivables of $48mm per 1/23 Rolling DIP Budget. Assumes $11.00/Script Pharmacy Asset Valuation, Mitigating Item of increase to $13.00/Script for 3.3mm Scripts

(2)  Pipeline initiatives of $34mm relate to $15mm of Operating Receipts, $10mm of Operating Disbursements, $9mm of Amazon Inventory; in addition, the Company is forecasting cash available at close of $32mm, which could potentially offset any DIP shortfall

(A)  In the event the Company delivers less than the target amount for these items, there will be a dollar for dollar reduction in ESL's obligation to first assume Severance liabilities, then 503(b)(9) claims. To the extent the Company delivers excess Prepaid Inventory or Warranty Receivables at close, this excess amount can be used to offset any shortfall in the other dollar for dollar.

(B)  Updated to reflect 1/31/19 estimate from SHC Accounting

Privileged & Confidential
Prepared at the Request of Counsel
Subject to F.R.E. 408

## Opportunity and Actions

| | Identified Favorable Variance | Identified Opportunity | Potential Actions | Responsible Parties | Comments |
|---|---|---|---|---|---|
| **RX Scripts** | $12mm | $3mm | Script Appraisal | Rob Riecker<br>Brian Griffith | Currently estimated at $11.00/script, opportunity to increase to $13.00/script |
| **Inventory** | NA | $50mm | Sale of excess inventory<br>Transfer to GOB<br>Reduce or cancel P.O.s<br>Increase receiving days to 6 days per week | TJ Koreis<br>Brian Griffith<br>Chris Good | Inventory potentially higher in DIP budget than target |
| **Specified Receivables** | NA | $20mm | Negotiate credit balance down with vendors or convert to cash | Trent Bonnell<br>Jon Boffi<br>Chris Good<br>Bob Phelan | Convert A/R to cash to the extent above required target<br>Use 503(b)(9) negotiation to reduce A/R credits<br>Look at timing of SHO, Citi and other AR payments |
| **503(b)(9)** | NA | $5mm | Prioritize based on<br>trapped vendor credits<br>Mitigate through vendor cures | Trent Bonnell<br>Enrique Acevedo | Use critical vendor payments to reduce 503(b)(9) liability<br>Potential to use A/R credits to offset balances |
| **Accounts Payable** | NA | NA | Maintain current AP ($169mm) | Jeff Butz<br>Chris Good | Manage down disputed payables and reduce non-essential spend<br>Look at cash prepetition cash deposits with vendors |
| **Property Tax** | NA | NA | Active management of property taxes | Mike Morrie<br>Brian Griffith | Property-by-property review of tax liability in process; updated view by mid-week ending 1/25/19 |
| **Prepaid and Other Assets** | NA | NA | Monetization of any additional assets | Chris Good<br>Jon Boffi | Prepaid and other assets on the balance sheet not identified in APA |
| **Cash** | NA | NA | Company Cash<br>Excess Store Cash | Rajat Prakash<br>Chris Good<br>Naren Sinha | Cash in-transit, in regional banks and stores; ESL will pay for a maximum of $17mm in store cash |
| **Senior DIP Balance** | $40mm | $34mm | Operating Receipts ($15mm)<br>Operating Disbursement ($10mm)<br>Amazon Inventory ($9mm) | Rob Riecker<br>Naren Sinha<br>Rajat Prakash<br>Bob Walsh<br>Brian Griffith<br>Wesley Sima<br>TJ Koreis | Actively managing operating disbursements and potential conservatism in SG&A forecast, as well as receipt outperformance |
| | NA | $35mm | Holdback Receivables ($35mm) | Mo Meghji | Credit card holdback release<br>Look at other holdback release opportunities |

4

# *EXHIBIT B*

| | |
|---|---|
| **From:** | Munz, Naomi |
| **To:** | O"Reilly, Benet J.; Allen, Charles W. |
| **Cc:** | Project Blue Sasset M&A |
| **Subject:** | Closing figures |
| **Date:** | Sunday, February 10, 2019 10:28:32 PM |
| **Attachments:** | 190210 - Final Closing Inventory and Receivables Tracker.pdf |

See attached, as discussed.

---

**From:** O'Reilly, Benet J. <boreilly@cgsh.com>
**Sent:** Sunday, February 10, 2019 11:08 PM
**To:** Munz, Naomi <Naomi.Munz@weil.com>
**Cc:** Allen, Charles W. <callen@cgsh.com>
**Subject:** RE: closing figures

Can we have a group call now to discuss?  We need the borrowing base finalized right now or we are missing tomorrow, and the proposal you suggested won't work.

Who should we include on the call?  We will have Kunal, Moelis and Charlie and I.

———

**Benet J. O'Reilly**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: srodriguez-feliciano@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2746 | F: +1 212 225 3999 | M: +1 917 916 5500
boreilly@cgsh.com  | clearygottlieb.com

PRIVILEGED AND CONFIDENTIAL; PREPARED AT THE REQUEST OF COUNSEL; SUBJECT TO FRE 408

## *Value under Article X, Section 10.9*

*($ in Millions)*
*(Tracker as of February 10, 2019)*

| Borrowing Base Start Date for Roll-Forward | 2/2/2019 |
| --- | --- |

### Inventory as of 2/10/19

| | Beginning | Receipts | COGS | Ending |
| --- | --- | --- | --- | --- |
| Total Stock Ledger Inventory as of February 2, 2019 | | | | $1,637 |
| Total Inventory Receipts and COGS on February 3, 2019 | 1,637 | 4 | (10) | 1,631 |
| Total Inventory Receipts and COGS on February 4, 2019 | 1,631 | 7 | (8) | 1,630 |
| Total Inventory Receipts and COGS on February 5, 2019 | 1,630 | 7 | (8) | 1,628 |
| Total Inventory Receipts and COGS on February 6, 2019 | 1,628 | 7 | (8) | 1,628 |
| Total Inventory Receipts and COGS on February 7, 2019 | 1,628 | 11 | (8) | 1,631 |
| Total Inventory Receipts and COGS on February 8, 2019 | 1,631 | 5 | (9) | 1,627 |
| Total Inventory Receipts and COGS on February 9, 2019 | 1,627 | 0 | (13) | 1,615 |
| Total Inventory Receipts and COGS on February 10, 2019 | 1,615 | 4 | (9) | **$1,609** |
| Less: Remaining GOB Inventory: | | | | ($62) |
| Plus: Amazon Inventory | | | | 9 |
| Adj. Total Stock Ledger Inventory as of February 10, 2019: | | | | **$1,557** |

### Est. Credit Card Receivables as of 2/10/19

| | Ending |
| --- | --- |
| First Data Receivables | $101 |
| Amex Receivables | 9 |
| Discover Receivables | 4 |
| Citi Receivables | 1 |
| Adjustment for Unposted Transactions | (55) |
| **Total Credit Card Receivables** | **$60** |

### Pharmacy Receivables as of 2/8/19

| | |
| --- | --- |
| Pharmacy Receivables | $11 |
| Pharmacy Scripts | 37 |
| **Total Pharmacy Receivables** | **$47** |

### Summary - Total Value under Article X

| | |
| --- | --- |
| **Deliverable Value under Article X, Section 10.9** | **$1,664** |
| **Closing Threshold** | **$1,657** |
| *Cushion / (Gap)* | 7 |

# *EXHIBIT C*

| | |
|---|---|
| **From:** | O'Reilly, Benet J. |
| **To:** | Odoner, Ellen |
| **Cc:** | Munz, Naomi; Allen, Charles W.; Project Blue Sasset M&A |
| **Subject:** | RE: Closing figures |
| **Date:** | Monday, February 11, 2019 1:08:29 AM |

I don't think we want the change the APA amendment, especially if it is a change to the closing condition (which will require bank approval, etc.).  I view this as an agreement for us to swap $7M of prepaid in-transit inventory for $7M of prepaid inventory that is not yet in transit, and think we can document in a sideletter, or between emails between counsel.  We can reflect that at closing.

In terms of timing, our understanding is that there will be operational calls beginning at 8 am tomorrow to work through the final pieces to make sure things are set up for closing.  These calls will largely be lead by the bank operational folks, and will involve the company.  Once those calls have occurred (and assuming everything is set and buyer is prepared to close), we will reach out to schedule a closing call.

——

**Benet J. O'Reilly**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: srodriguez-feliciano@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2746 | F: +1 212 225 3999 | M: +1 917 916 5500
boreilly@cgsh.com  |  clearygottlieb.com

---

**From:** Odoner, Ellen [mailto:ellen.odoner@weil.com]
**Sent:** Monday, February 11, 2019 2:01 AM
**To:** O'Reilly, Benet J. <boreilly@cgsh.com>
**Cc:** Munz, Naomi <Naomi.Munz@weil.com>; Allen, Charles W. <callen@cgsh.com>; Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** Re: Closing figures

Ok good. Would it be ok to insert those words into Naomi's proposed amendment of 10.9 ( which I think is neatest) or how else would you like to reflect?

Sent from my iPhone

On Feb 11, 2019, at 1:51 AM, O'Reilly, Benet J. <boreilly@cgsh.com> wrote:

Okay – Moelis has confirmed your understanding.

——

**Benet J. O'Reilly**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: srodriguez-feliciano@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2746 | F: +1 212 225 3999 | M: +1 917 916 5500
boreilly@cgsh.com  |  clearygottlieb.com

**From:** Odoner, Ellen [mailto:ellen.odoner@weil.com]
**Sent:** Monday, February 11, 2019 1:34 AM
**To:** O'Reilly, Benet J. <boreilly@cgsh.com>; Munz, Naomi <Naomi.Munz@weil.com>;
Allen, Charles W. <callen@cgsh.com>
**Cc:** Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** RE: Closing figures

This crossed with Naomi's but is to the same effect.

---

**From:** Odoner, Ellen <ellen.odoner@weil.com>
**Sent:** Monday, February 11, 2019 1:32 AM
**To:** O'Reilly, Benet J. <boreilly@cgsh.com>; Munz, Naomi <Naomi.Munz@weil.com>;
Allen, Charles W. <callen@cgsh.com>
**Cc:** Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** RE: Closing figures

We understand that M-lll has discussed with Moelis that this is not the right
description. We understand the two agree; please touch base with Moelis. Our
understanding of the arrangment is that the $7 million will come from inventory that
has been paid for by Sears before the Closing Date but as to which Sears has not yet
taken title or delivery.

---

**From:** O'Reilly, Benet J. <boreilly@cgsh.com>
**Sent:** Monday, February 11, 2019 1:16 AM
**To:** Munz, Naomi <Naomi.Munz@weil.com>; Allen, Charles W. <callen@cgsh.com>
**Cc:** Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** RE: Closing figures

I would rather not change the agreement, as I've learned that we do not always
understand what you think these terms mean.

We can agree that we will reduce the Inventory by directing $7M of "Inventory paid for
in advance of shipment" to a GOB Leased Store or GOB Owned Store, as requested by
Sellers.


**Benet J. O'Reilly**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: srodriguez-feliciano@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2746 | F: +1 212 225 3999 | M: +1 917 916 5500
boreilly@cgsh.com | clearygottlieb.com

---

**From:** Munz, Naomi [mailto:Naomi.Munz@weil.com]
**Sent:** Monday, February 11, 2019 1:08 AM
**To:** O'Reilly, Benet J. <boreilly@cgsh.com>; Allen, Charles W. <callen@cgsh.com>

**Cc:** Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** RE: Closing figures

Benet and Charlie

To confirm – we understood that in exchange for the "excess" to the $1657M being delivered at closing, the estate will receive Prepaid Inventory (i.e., inventory which has been ordered and paid for but not yet delivered).  As mentioned on the phone, this agreement is subject to this being the last issue to resolve (other than mechanics) before losing tomorrow. Below is a revised version of Section 10.9 intended to reflect the arrangement.

Section 10.9 Inventory and Receivables. The aggregate amount of (i) the Inventory Value of the Acquired Inventory (excluding any Pending Inventory), (ii) the amounts due to Seller with respect to (A) the Credit Card Accounts Receivable and (iii) the Pharmacy Receivables shall be at least $1,657,000,000. To the extent that the aggregate amount of items (i) through (iii) in the foregoing sentence exceeds $1,657,000,000 on the Closing Date, Sellers may reduce such amount to be equal to $1,657,000,000 by first, with respect to the first $7,000,000 of such excess, accepting Prepaid Inventory that would otherwise be Acquired Inventory (in an amount of $7,000,000) and directing that it be delivered to a GOB Leased Store or a GOB Owned Store or any other location designated by Sellers that is not a Property, second, transferring (at Sellers' expense and in consultation with Buyer) Inventory that would otherwise be Acquired Inventory to a GOB Leased Store or a GOB Owned Store or any other location designated by Sellers that is not a Property, until the Inventory Value of the Acquired Inventory is equal to $1,553,000,000 and ~~second~~third, retaining as an Excluded Asset the oldest of any Credit Card Accounts Receivable or Pharmacy Receivables.

---

**From:** O'Reilly, Benet J. <boreilly@cgsh.com>
**Sent:** Sunday, February 10, 2019 11:37 PM
**To:** Munz, Naomi <Naomi.Munz@weil.com>; Allen, Charles W. <callen@cgsh.com>
**Cc:** Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** RE: Closing figures

Thanks.  As discussed, we would reduce the inventory by $7M of "Inventory paid for in advance of shipment" to make the numbers hit.

Cullen will be separately reaching out with the info he needs to finalize the borrowing base certificate.

—

**Benet J. O'Reilly**

Cleary Gottlieb Steen & Hamilton LLP
Assistant: srodriguez-feliciano@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2746 | F: +1 212 225 3999 | M: +1 917 916 5500
boreilly@cgsh.com | clearygottlieb.com

**From:** Munz, Naomi [mailto:Naomi.Munz@weil.com]
**Sent:** Sunday, February 10, 2019 11:28 PM
**To:** O'Reilly, Benet J. <boreilly@cgsh.com>; Allen, Charles W. <callen@cgsh.com>
**Cc:** Project Blue Sasset M&A <ProjectBlueSassetM&A@weil.com>
**Subject:** Closing figures

See attached, as discussed.

---

**From:** O'Reilly, Benet J. <boreilly@cgsh.com>
**Sent:** Sunday, February 10, 2019 11:08 PM
**To:** Munz, Naomi <Naomi.Munz@weil.com>
**Cc:** Allen, Charles W. <callen@cgsh.com>
**Subject:** RE: closing figures

Can we have a group call now to discuss?  We need the borrowing base finalized right now or we are missing tomorrow, and the proposal you suggested won't work.

Who should we include on the call?  We will have Kunal, Moelis and Charlie and I.

---

**Benet J. O'Reilly**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: srodriguez-feliciano@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2746 | F: +1 212 225 3999 | M: +1 917 916 5500
boreilly@cgsh.com | clearygottlieb.com

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.