# EXHIBIT A

## (Debtor's Lease and Extensions)

## LEASE

**THIS LEASE** is made this _2/3_ day of _June_____, 1995, between **CAPITOL VENTURES**, an Illinois partnership ("Landlord") and **SEARS, ROEBUCK AND CO.**, a New York corporation ("Tenant"). The parties agree:

1. **Premises**

   (a) Landlord leases to Tenant and Tenant takes from Landlord the following premises situated in the City of Bridgeview, County of Cook, State of Illinois, more particularly described as:

   the certain building space consisting of approximately 24,480 square feet, identified as the area shaded in blue on the attached <u>Exhibit "A-1"</u> ("Demised Premises") located on the property of Landlord, including ingress and egress to the public roadways as depicted in green, on the attached <u>Exhibit "A-1"</u> ("Entire Tract"). The Demised Premises consist of a portion of the building(s) located in the Harlem Corners Shopping Center. The Demised Premises are located upon a portion of Landlord's property outlined in red on the Site Plan (the "Landlord Parcel") which property is owned by Landlord and located within the Shopping Center.

   (b) Landlord also leases and grants to Tenant all privileges, appurtenances, equipment, machinery, fixtures and any other improvements now or hereafter situated on, belonging or appertaining to the Demised Premises. Landlord grants Tenant a non-exclusive easement for parking the vehicles of Tenant, its customers, employees and business invitees, and for access, use of, ingress and egress for vehicles and pedestrians in common with the other tenants of the Landlord Parcel, over all parking areas, alleys, roadways, sidewalks, walkways, landscaped areas and surface water drainage systems and for use of parking lot lighting, as shown on the attached <u>Exhibit "A-1"</u> ("Common Areas"). Said Common Areas are outlined in yellow on the attached <u>Exhibit "A-1"</u>. Landlord also grants to Tenant a non-exclusive easement for parking the vehicles of Tenant, its customers, employees and business invitees, and for access, use of, ingress and egress for vehicles and pedestrians in common with the other tenants of the Entire Tract.

   (c) The gross leasable area of the Landlord Parcel is approximately 78,180 square feet ("Gross Leasable

Area").   Landlord shall notify Tenant in writing if the Gross Leasable Area is changed.

(d)  The number of square feet in the Demised Premises and the Gross Leasable Area is subject to verification by Tenant.  If Tenant's architect certifies that there are fewer leasable square feet in the Demised Premises than set forth in Subsection 1(a) above, then the rent payable by Tenant under Section 4 and Tenant's pro rata share of the adjustments payable under Section 10 shall be reduced accordingly.  If Tenant's architect certifies that there are more leasable square feet of Gross Leasable Area than set forth in Subsection 1(c) above, then Tenant's pro rata share of the adjustments payable under Section 10 shall be reduced accordingly.

## 2.  Use

The Demised Premises may be used by Tenant for the sale, servicing and storing of merchandise and all other items or services normally sold in Sears Stores, including, but not limited to, providing parts and repairs  for gasoline engines and other mechanical and electrical devices, and all other lawful uses.  Tenant shall have exclusive use of the outside store area and any parking spaces adjacent to the rear dock door of the Demised Premises building.  Tenant agrees to comply with Federal, State and local governmental laws, rules, regulations and ordinances applicable to Tenant's use of the Demised Premises.  Tenant will set its hours and days of operation.

## 3.  Term

The term of this Lease shall commence on the Commencement Date and terminate ten (10) Lease Years thereafter ("Term"). The Commencement Date shall be the earlier of:  (i) the date Leasehold Improvements are substantially complete and Tenant has received a certificate of occupancy; or (ii) the date Tenant opens for business to the public in the Demised Premises.   The parties shall specify the Commencement Date by supplemental agreement.  Notwithstanding the date set for the commencement of the Term, all provisions of this Lease Agreement shall be effective as of the date hereof.

(a)  Landlord grants to Tenant three  (3) consecutive five year options to extend the Term, which options shall be exercisable on written notice by Tenant to Landlord no later than one hundred eighty (180) days prior to the expiration of the Term; provided, however, that if Tenant shall fail to give any such notice within such 180-day time limit, Tenant's right to exercise its option shall nevertheless continue until thirty (30) days after Landlord shall have given Tenant notice of Landlord's election to terminate such option, and Tenant

may exercise such option at any time until the
expiration of said 30-day period. It is the intention
of the parties to avoid forfeiture of Tenant's rights to
extend the Term of this Lease under any of the options
set forth in this Section 3 through inadvertent failure
to give notice thereof within the time limits
prescribed. During any extension, all Sections of this
Lease will be effective, and references to Term will
incorporate the extensions.

(b) Upon the expiration of this Lease, or its termination,
Tenant will surrender to Landlord possession of the
Demised Premises in as good condition as the same shall
be upon the Commencement Date (excluding ordinary wear
and tear and changes in condition due to fire or other
casualty loss).

(c) If Tenant remains in possession of the Demised Premises
after expiration of this Lease, or termination of this
Lease, as provided herein, Tenant's holding over shall
constitute a month-to-month tenancy, at 200% of the rent
payable under this Lease immediately prior to the
expiration or termination.

(d) Notwithstanding anything contained in this Lease to the
contrary, Tenant does not expressly or impliedly,
directly or indirectly, agree to operate a business in
the Demised Premises.

(e) "Lease Year" means each consecutive twelve (12) calendar
month period commencing on the date the Initial Rental
Payment falls due if that day is the first day of a
calendar month. If the Initial Rental Payment does not
fall due on the first day of a calendar month, then the
first Lease Year will commence on the first day of the
next succeeding calendar month after the Initial Rental
Payment falls due, and each Lease Year thereafter shall
commence on the anniversary thereof.

## 4.   Rent

Rent shall begin to accrue from, and the initial rental
payment ("Initial Rental Payment") shall be due to Landlord
on the Commencement Date.

(a) Tenant agrees to pay rent under the following schedule
as of the Initial Rental Payment date:

Lease Years 1-5 $15,300.00/mo. ($7.50/sq. ft. annually)

Lease Years 6-10 $16,830.00/mo. ($8.25/sq. ft. annually)

or a proportionate sum during partial months, (calculated
based upon the actual number of days in such partial month)
in advance, on the first day of each month. Landlord will

designate one person, firm or corporation to receive rent payments. The rent shall be made payable to Landlord and mailed to Landlord's address as outlined in the "Notice" Section of this Lease until the payee or address is changed by written notice from Landlord. Landlord's Federal Employer Identification Number is 36-3566813.

(b) If Tenant exercises its first option to extend this Lease, Tenant agrees to pay as rent during the first extension period the sum of $18,360.00 per month ($9.00/sq. ft. annually) under the same conditions as set forth in Subsection 4(b) above.

(c) If Tenant exercises its second option to extend this Lease, Tenant agrees to pay as rent during the second extension period the sum of $19,890.00 per month ($9.75/sq. ft. annually) under the same conditions as set forth in Subsection 4(b) above.

(d) If Tenant exercises its third option to extend this Lease, Tenant agrees to pay as rent during the third extension period the sum of $21,420.00 per month ($10.50/sq. ft. annually) under the same conditions as set forth in Subsection 4(b) above.

## 5. Construction by Landlord

(a) Tenant has submitted to Landlord its "Sears Design Criteria Service Center" dated November 9, 1994, "Sears Construction Standards" dated November 8, 1994 ("Design Criteria"), and Sears final fixture plan dated April 11, 1995 attached hereto as Exhibit A-2 and made a part hereof ("Fixture Plan") (such documents shall be referred to as "Leasehold Improvement Documents" and Landlord's portion of the work completed in accordance with these Leasehold Improvement Documents shall be referred to as "Landlord Improvements").

(b) Upon execution of this Lease, Landlord shall, at its expense, promptly commence and diligently prosecute the completion of construction plans for that portion of the remodeling of the Demised Premises building required to be completed by Landlord. Landlord shall submit completed construction plans to Tenant for approval, and after approved such plans shall be referred to as "Construction Plans". Landlord shall complete Landlord Improvements within sixty (60) days after Tenant's approval of Landlord's Construction Plans.

(c) Landlord shall, at its sole cost, complete Landlord Improvements, as highlighted in yellow on the Fixture Plan, in accordance with Landlord's Construction Plans. Landlord Improvements shall include, without limitation,

the items listed on Exhibit "A-3" attached hereto and made a part hereof.

(d) In the event of labor disputes in connection with construction, alterations, repairs or replacements, curing of defects or restoration of the Demised Premises pursuant to provisions of this Lease, Landlord will promptly adjust and settle such disputes to avoid unfavorable publicity and unnecessary delay, in a manner reasonably satisfactory to Tenant.

(e) Landlord and Tenant recognize that during the course of construction of the improvements and alterations, Tenant may desire to amend or revise Landlord's Construction Plans.    Tenant may, therefore, amend or revise Landlord's Construction Plans after they have been approved; provided the amending or revising does not increase Landlord's cost of the improvements.    Landlord shall have the right to approve any proposed revision or modification affecting the exterior appearance of the Demised Premises to insure the building, as modified, is architecturally harmonious with the remainder of the Entire Tract.    Landlord shall bear all additional costs which result from these    revisions    and    modifications; however, Tenant will be obligated to pay any additional costs incurred due to the amending or revising; provided the excess costs are directly attributable to revisions or modifications requested by Tenant.    All the amendments or revisions proposed by Tenant shall be submitted to Landlord's architect, who shall obtain from the general contractor a cost for the work which shall be promptly    submitted in    writing    to    Tenant    and Landlord.    Work on the amendment or revision will not start until a construction change order is approved by Tenant's National Construction Manager, Department 824, or his authorized representative.    Immediately upon approval, Tenant shall forward a copy to Landlord.

(f) During    Landlord's    construction    period,    after    the execution of this Lease, Tenant shall have the right to place signs on and adjacent to the Demised Premises announcing    Tenant's    forthcoming    occupancy    and intentions.

(g) Landlord shall, at its sole cost:

(i) Cause all work conducted under this Section, throughout the Term, to comply with all building, environmental, zoning and all other applicable laws of the Federal, State, County, Municipal and all other authorities having jurisdiction over the Demised Premises.    (Landlord's failure to comply with this Subsection shall give Tenant the immediate right to terminate this Lease, at any

time, effective upon Tenant giving Landlord written notice of its intention to do so); and

(ii) Throughout the Term, indemnify, protect, defend and hold Tenant harmless from all losses, damages, liabilities, costs and expenses (including attorneys' fees and court costs) incurred by any and all parties for work, labor, repairs, alterations, improvements, services and/or materials supplied pursuant to this Section by or at the direction of Landlord; and

(iii) Unconditionally guarantee all work performed pursuant to this Section by or for Landlord against defective workmanship and materials for the period of one (1) year from the commencement of the Term. Landlord hereby assigns to Tenant all guarantees of workmanship and materials.

## 6. Improvements by Tenant

(a) Tenant's portion of the work completed in accordance with the Lease Improvement Documents shall be referred to as "Tenant Improvements". Tenant shall promptly prepare its plans and specification documents for its portion of the Leasehold Improvements in accordance with such Leasehold Improvement Documents.

(b) Tenant shall, at its sole cost:

(i) Construct, or cause to be constructed, all its interior improvements in accordance with the Leasehold Improvement Documents; and

(ii) Tenant shall obtain all necessary governmental consents, permits and approvals for the construction of the Tenant Improvements and Tenant's operations in the Demised Premises. Landlord shall use its best efforts to assist Tenant in obtaining such permits and approvals, when necessary; and

(iii) Promptly commence construction upon the execution of this Lease and diligently pursue and complete construction of the Tenant Improvements in the Demised Premises.

## 7. Landlord's Warranties

Landlord warrants and represents that presently, and during the Term:

(a) Landlord has the full power and authority to execute and deliver this Lease and to perform its obligations under this Lease; and

(b) Landlord holds good and marketable title to the Landlord Parcel and to all improvements, equipment, fixtures and all other personal property appertaining thereto, free and clear of all restrictions, covenants, easements, mortgages, tenancies and occupancies in the Demised Premises, and any other encumbrances other than those encumbrances listed in _Exhibit "B"_ ("Permitted Encumbrances"); and

(c) The execution and delivery of this Lease shall not be precluded by or cause a breach of any other agreement, mortgage, contract or other instrument or document to which Landlord is a party; and

(d) The Demised Premises is and will be in good condition and repair, and in full compliance with all applicable laws, regulations, environmental standards, and building and health codes. Landlord shall obtain all necessary governmental consents, permits, approvals for Landlord Improvements, and shall provide Tenant with evidence of satisfactory zoning for the use described in Section 2 above; and

(e) Landlord shall provide Tenant with a copy of any covenants, declarations, by-laws, associations, rules and regulations and any other restrictions ("Restrictions") that currently, or are planned which govern or shall in the future govern the Demised Premises. On and after the Commencement Date, there shall be no Restrictions that will prohibit Tenant from using the Demised Premises in accordance with Tenant's intended use as described in Section 2 hereof. Landlord, further agrees that it shall not enact or modify such Restrictions without Tenant's prior written approval, which approval shall not be unreasonably withheld or delayed.

(f) Tenant, upon paying the rent and performing its obligations as herein provided, shall and may peaceably and quietly have, hold and enjoy the Demised Premises; and

(g) All utilities, including gas, electric, telephone, water, sanitary sewer and other utilities sufficient to meet Tenant's requirements shall be available in the Demised Premises, at Landlord's cost. Landlord shall supply and maintain adequate, separate meters for the purpose of measuring all utilities payable by Tenant and consumed by Tenant in the Demised Premises. Tenant agrees to pay charges for utility services furnished and used by Tenant in the Demised Premises during the Term, excluding any and all connection fees, hook-up charges, impact fees and other similar costs related to the

initial start-up expenses for providing such services to the Demised Premises; and

(h)   The Common Areas, including the paved areas, and any parking and sidewalks, shall be in first class condition and repair and usable for the purposes intended; and

(i)   Landlord shall not reduce the ratio of parking spaces to the number of square feet of Gross Leasable Area, nor charge for any of the parking spaces, nor relocate or reconfigure the parking spaces on the Landlord Parcel, nor lessen the total number of parking spaces, which is 370, without the prior written consent of Tenant. Tenant has the exclusive right to any available parking adjacent to the rear dock door of the Demised Premises. Tenant has the right to use whatever legal means necessary to enforce such exclusive right, including, but not limited to the posting of signs and/or marking the pavement; and

(j)   The Demised Premises will be equipped with a heating and air-conditioning plant, radiation and controls and a distribution system sufficient to maintain temperature and ventilation as required in Tenant's Design Criteria provided to Landlord by Tenant pursuant to Section 5 above; and

(k)   Landlord shall operate and maintain the Landlord Parcel as an integrated portion of a first class shopping center.

## 8.   **Taxes**

Landlord shall pay when due all real estate taxes, general and special assessments and any other charges, levies or impositions levied or assessed upon the Landlord Parcel. (Tenant's contribution prorated in the Adjustment Section.)

## 9.   **Tenant's Alterations and Signs**

(a)   Tenant shall have the right, at any time, to make non-structural alterations, additions, improvements or replacements in the Demised Premises, including but not limited to lighting and electrical wiring. Landlord, at Tenant's cost, shall assist Tenant in securing building and other permits or authorizations for said alterations.

(b)   Tenant may, at its cost, install exterior signs on the exterior walls of the Demised Premises, of a design usually employed in its stores having a use similar to that described in Section 2. Should the local signage code exclude Tenant's typical signage, Landlord, at Landlord's expense, will solicit on Tenant's behalf, a

sign code variance to allow Tenant's signage. Landlord shall obtain all necessary zoning or variances for Tenant's signs by the time the Leasehold Improvements are completed or Tenant may, at its option, delay acceptance of the Demised Premises until said zoning authorization is procured, or terminate this Lease and all obligations thereunder by giving written notice to Landlord.

(c) Tenant shall have the right to place its sign panel(s) on the existing pylon sign(s) (owned by Landlord or shared with other owners in the Entire Tract) on Harlem Avenue and/or 87th Street. Landlord shall pay for the cost of maintaining such pylon sign(s), and Tenant shall pay for the manufacture and installation of its sign panel(s), and Tenant shall pay its prorata share of electricity used to operate the existing pylon sign (as part of common area maintenance costs) on which Tenant's sign panel has been placed. Landlord shall prepare the sign drawings and submit such drawings to Tenant and the appropriate municipal authorities for approval prior to commencing construction of the Demised Premises.

(d) If no pylon sign exists, or if there is no space available for Tenant's sign panel on the existing pylon sign(s), Landlord shall obtain an easement from adjacent owners, if necessary, construct a pylon sign which is visible from Harlem Avenue and/or 87th Street on which Tenant may place its sign panel. Landlord shall pay for the cost of constructing and maintaining such pylon sign, and Tenant shall pay for the installation of its sign panel. In the event Landlord constructs a pylon sign, Landlord shall separately meter Tenant's pylon sign, and Tenant shall pay the cost of electricity to operate its sign panel.

(e) The alterations set forth in this Section 9 shall be designated as Tenant's Improvements. Those which are so permanently attached or affixed to the Demised Premises that their removal would cause substantial damage to the Demised Premises shall become the property of Landlord upon the expiration of this Lease, unless Tenant, in its sole discretion, removes them and repairs the damage caused by their removal. All trade fixtures, machinery, equipment and personal property shall be the property of Tenant upon the expiration of this Lease, and Tenant shall be entitled, but not obligated to remove them.

## 10. **Repairs and Maintenance**

(a) Landlord shall, at its cost, during the Term:

    (i) Maintain, repair and/or replace when necessary all structural members, walls, floors, exterior

painting, foundations, roofs, heating, ventilating and air-conditioning ("H.V.A.C.") equipment, electrical wiring and plumbing lines affecting, relating to or in the Demised Premises, plate glass damaged by building settlement (and for damage covered by the insurance Landlord is required to carry under Section 11), and floor and ceiling tiles damaged due to structural damage or deterioration of the Demised Premises. Landlord shall further be responsible for any H.V.A.C. repair cost equal to or greater than $50.00 per service call; and

(ii) Maintain, repair and/or replace when necessary all storm, sewage and drainage systems, other utility facilities, parking lot areas, lighting and other Common Areas which affect, relate to or benefit the Demised Premises; and

(iii) Make all repairs or replacements necessary due to or arising out of the negligence of Landlord, its agents, employees or other tenants in the Landlord Parcel, or by reason of the breach of this Lease by Landlord; and

(iv) Perform all work not expressly identified in Subsection 10(b); and

(v) Indemnify, protect, defend and hold Tenant harmless from all losses, damages, liabilities, costs and expenses (including attorneys' fees and court costs) which may occur, result from or arise out of the failure of Landlord to properly make required repairs or perform maintenance; and

(vi) Use its best efforts to enforce all warranties and guaranties received in connection with the Demised Premises. Notwithstanding such efforts, Landlord shall not be relieved from any obligations herein.

(b) Tenant shall, at its cost, during the Term:

(i) Make repairs and/or replacements (except such repairs or replacements that are Landlord's responsibility or become necessary as a result of any loss by fire or other casualty) within the Demised Premises which become necessary during Tenant's occupancy of the Demised Premises by reason of the fault or neglect of Tenant, and repair or replace plate glass damaged other than by building settlement; and

(ii) Keep the Demised Premises in a clean condition, including interior painting as required after

Landlord's initial painting of interior walls, meeting applicable city ordinances and, upon the termination of this Lease, deliver the Demised Premises to Landlord in good condition, excepting ordinary wear and tear or loss or damages caused by fire or other casualty; and

(iii) Tenant shall obtain from a licensed heating and air conditioning contractor, an annual H.V.A.C. limited routine maintenance contract, limited solely to cleaning, oiling, changing of filters and annual seasonal inspections of the heating and air conditioning system (but excluding costs for CFC's, HCFC's or other refrigerants), all of which will be done according to manufacturer's recommendations. Further, Tenant shall be responsible for H.V.A.C. repairs under $50.00 per service call.

(iv) Perform day-to-day minor maintenance of exposed plumbing lines and electrical wiring, (i.e., changing faucet gaskets, light bulbs, ballasts, and automatic door openers/closers.

(c) After making an attempt to contact Landlord, Tenant shall have the right at all times, at its sole option, without prior notice to Landlord, to make emergency repairs or replacements as Tenant deems necessary. Upon demand by Tenant, Landlord shall pay Tenant (unless specified otherwise in Subsection 10(b)) an amount equal to the cost of the repair. If Landlord fails to pay to Tenant the repair cost, then Tenant may deduct it from rent and other charges owed by Tenant to Landlord.

(d) Landlord shall, upon prior notice to Tenant, have access to the Demised Premises, at reasonable intervals during normal business hours, for examining or repairing it, and Landlord may enter at any time for emergency repairs. Notwithstanding the foregoing, Landlord shall not interfere with the conduct of Tenant's business.

(e) If Landlord fails to promptly perform the obligations in Subsection 10(a) hereof, after being given written notice by Tenant, Tenant shall have the right to make any repairs or cure any defaults thereunder and to recover Tenant's cost from Landlord. If the cost is not paid within fifteen (15) days of demand, Tenant shall have the right to deduct it from any installments of rent or other charges payable by Tenant to Landlord.

## 11. **Adjustments**

Tenant agrees, during the Term, to reimburse Landlord for Tenant's proportionate share of:

(a)  Real estate taxes levied on the Landlord Parcel, but no
     other taxes or assessments.  Tenant shall make monthly
     payments in the amount of 1/12th of the annual estimated
     real estate taxes directly to Landlord's Mortgagee to
     hold in a tax escrow; provided, however that Landlord or
     Landlord's mortgagee provides Tenant with proof of such
     tax escrow within thirty (30) days after payment so long
     as Tenant is making monthly payments.   In the event;
     during the Term, Tenant does not receive said proof
     within such 30-day period, Tenant shall, at its option,
     immediately discontinue monthly payments to Landlord's
     Mortgagee, and Tenant shall reimburse Landlord for real
     estate taxes at the end of the year in lieu of monthly
     tax escrow payments.   Real estate taxes for the year of
     discontinuance shall be payable to Landlord thirty (30)
     days after presentation of receipts marked paid in full.
     When Tenant receives the paid real estate bill, Tenant
     shall deduct from its proportionate share the full
     amount paid by Tenant to Landlord's Mortgagee during the
     year.   In subsequent years and during the balance of the
     Term, the reimbursement for real estate taxes shall be
     payable thirty (30) days after presentation of receipts
     marked paid in full; and

(b)  Insurance premiums for insurance required in Section 12
     of this Lease, thirty (30) days after presentation of
     receipts marked paid in full; and

(c)  Exterior Common Area Maintenance ("CAM") costs, which
     shall be defined as routine maintenance expenditures
     limited to actual cash expenditures and without
     administrative charges or management fees, undertaken to
     repair and preserve and operate the Landlord Parcel, and
     not including capital costs undertaken to improve and
     add to the value of the Landlord Parcel.   During the
     initial Term and any extension periods, Tenant's
     proportionate share of CAM costs in any one Lease Year
     shall not increase more than five percent (5%) over
     Tenant's share of such costs in the immediately
     preceding Lease Year ("CAM Cap").   Notwithstanding
     anything to the contrary contained herein, snow removal
     costs shall not be included in CAM costs and as such
     shall not be subject to the CAM Cap on Tenants
     proportionate share of CAM costs.   Tenant shall
     reimburse Landlord for Tenant's proportionate share of
     Landlord's actual out of pocket costs to remove snow
     from the Landlord Parcel during the Term of the Lease
     upon delivery to Tenant of paid receipts for such costs.

Tenant shall, on the first day of each month, pay Landlord
its proportionate share of estimated CAM costs for that
month based on the prior Lease Year's actual costs for the
same period.   At the end of each Lease Year, Landlord shall

adjust these charges to reflect actual costs, and reimburse Tenant for any overpayments.

Landlord shall permit Tenant or Tenant's auditors, with reasonable notice, to inspect all records for CAM costs. Landlord shall promptly repay Tenant for any overpayments or unsupported costs which Tenant or its auditors identify.

Except as expressly limited in Subsection 11(c), Tenant's proportionate share for this Section shall be defined as the sum due for the Landlord Parcel multiplied by a fraction, the numerator of which shall be the number of leasable square feet in the Demised Premises, and the denominator of which shall be the Gross Leasable Area.

## 12. **Insurance**

Landlord shall pay for and maintain, from the date of commencement of the construction of the Leasehold Improvements through the end of the Term, the following policies of insurance covering the Landlord Parcel, which insurance shall be obtained from companies currently rated "A-/VII" or better as defined in the then-current edition of Bests Insurance Reports (or the equivalent thereof if Bests Insurance Reports is no longer published):

(a)  Workers' Compensation Insurance covering all costs, statutory benefits and liabilities under State Workers' Compensation and similar laws for employees of Landlord, and Employer's Liability Insurance with limits of not less than $500,000.00 per accident or disease, with a waiver of subrogation in favor of Tenant. In addition, Landlord agrees to require and warrants that all contractors hired by Landlord will maintain the same Workers' Compensation Insurance and Employer's Liability Insurance for such contractor's employees and will require all subcontractors to maintain such insurance, and Landlord agrees to indemnify, defend and hold Tenant harmless from any loss, injury, damage or liability which Tenant may suffer as a result of any such contractor or subcontractor failing to maintain such insurance.

(b)  Commercial General Liability Insurance covering Landlord's operations on the Entire Tract with coverage for premises/operations, products/completed operations, contractual liability, and personal injury and advertising injury liability with combined single limits of not less than $2,000,000.00 per occurrence for death, bodily injury or property damage, including Tenant as an additional insured (as defined in ISO Form CG 20 26 11 85 or its equivalent).

(c) "All-Risk" Property Insurance upon all buildings, building improvements, personal property owned by Landlord, and alterations on the Landlord Parcel, including, but not limited to, those perils generally covered on a Causes of Loss - Special Form, including fire, extended coverage, windstorm, vandalism, malicious mischief, sprinkler leakage, flood and earthquake coverage in the amount of ninety percent (90%) of full replacement cost and with "increased cost of construction" and "extra expense" endorsements.

(d) Business Auto Liability Insurance with coverage for all owned, non-owned and hired vehicles with combined single limits of liability of $1,000,000 per occurrence for bodily injury and property damage.

Each policy shall expressly provide that it shall not be subject to cancellation or material change at least thirty (30) days prior to such cancellation or material change. At the end of each five (5) Lease Years of the initial Term, and at the beginning of each extension period, or upon Tenant's request, Landlord shall review with Tenant the coverages and limits of and cause such coverages and liability limits to be adjusted as reasonably agreed upon by Landlord and Tenant in view of reasonable exposure anticipated over the remainder of the Term. Landlord shall furnish Tenant, or cause to be furnished to Tenant, concurrently with the execution of this Lease and prior to the inception of each successive policy period insurance certificates evidencing the insurance, required to be maintained hereunder.

Tenant shall maintain a Commercial General Liability Insurance policy for claims arising out of Tenant's operations in the Demised Premises, with combined single limits of $2,000,000.00 per occurrence for bodily injury and/or property damage. Tenant shall also maintain Workers' Compensation on insurance on its employees and insurance on its inventory and fixtures. Sears, Roebuck and Co., as Tenant may meet these obligations by maintaining a program of self-insurance.

13. **Subrogation**

Notwithstanding any other provisions herein, Landlord and Tenant each releases the other and, on behalf of its insurers, waives its entire right to recovery against the other for loss or damage to the waiving party and its property to the extent that the loss or damage is required to be insured under the "All-Risk" Property Insurance policy described in Section 12(c) above. Landlord and Tenant agree to furnish to each insurance company which has or will issue policies of "All-Risk" Property Insurance on the Demised Premises, notice of the terms of the mutual waivers

contained herein and to have the insurance policies properly endorsed, if necessary, to acknowledge the subrogation waivers contained herein. This waiver shall not be effective to relieve Landlord of liability if Landlord fails to maintain such "All-Risk" Property Insurance.

## 14. Indemnity

(a) Landlord agrees to indemnify, protect, defend and hold Tenant, its directors, officers, employees and agents harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused solely by the willful or negligent acts or omissions of Tenant), arising out of actual or alleged injury to or death of any person or loss of or damage to property in or upon the Landlord Parcel (excluding the Demised Premises), including the person and property of Tenant, its directors, officers, employees, agents, invitees, licensees or others.

(b) Tenant agrees to indemnify, protect, defend and hold Landlord, its directors, officers, employees and agents harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused solely by the willful or negligent acts or omissions of Landlord), arising out of actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees or others.

## 15. Damage or Destruction

(a) If during the Term the Demised Premises are partially damaged or destroyed by fire or any other casualty, Landlord shall, at Landlord's expense, promptly, with due diligence, but in no instance greater than ninety (90) days from the date of the casualty, rebuild, repair and restore the Demised Premises to substantially the same condition existing just prior to the damage or destruction. If Landlord fails to do so, Tenant may terminate this Lease at any time thereafter by giving written notice to Landlord. From the date of the damage or destruction, rent and all other charges payable by Tenant shall abate in the proportion that the square footage of the part of the Demised Premises destroyed or rendered unfit for Tenant's use bears to the total square footage in the Demised Premises.

(b) If during the Term the Demised Premises are totally destroyed by fire or other casualty, or the Demised Premises are rendered unfit for Tenant's use by fire or casualty:

(i)   Rent and all other charges payable by Tenant shall abate, from the date of the fire or casualty, until the Demised Premises have been restored as herein provided;

(ii)  Landlord shall promptly pay to Tenant any unearned rent or charges paid, or Tenant shall promptly pay to Landlord any rent then earned;

(iii) Either Landlord or Tenant shall have the right, within ninety (90) days thereafter, upon written notice to the other, to terminate this Lease as of the date of the fire or other casualty;

(iv)  If neither Landlord nor Tenant terminates this Lease, Landlord shall, at Landlord's sole cost, promptly and with due diligence, rebuild and restore the Demised Premises to substantially the same condition existing just prior to the destruction or damage.

## 16. Eminent Domain

(a)  If any part or all of the Demised Premises are involved in a taking or condemnation, the rights of Landlord and Tenant to share in the proceeds of any award shall be determined as follows:

(i)   The court in the condemnation proceedings shall, if not prohibited by law, be requested by both Landlord and Tenant to make separate awards to Landlord and Tenant.

(ii)  If the court is unwilling or unable to make separate awards, the award shall be divided between Landlord and Tenant in proportion to the fair market value of their respective interests. If Landlord and Tenant are unable to agree upon the division, it shall be resolved by appraisal conducted by a mutually acceptable neutral appraiser

(b)  Tenant shall have, at its option, the right to terminate this Lease upon a taking or condemnation of any of the following:  any part or all of the Demised Premises, fifteen percent (15%) or more of the parking area located on the Landlord Parcel or points of ingress and egress to the public roadways as depicted in green on Exhibit "A".

(c)  If Tenant elects to terminate this Lease under this Section, Tenant shall notify Landlord in writing of this election within sixty (60) days after the taking

effective on the date title vests in the condemnor.
Tenant's rental obligation shall cease as of the date
title vests in the condemnor, and Landlord shall
promptly refund rental and other charges paid by Tenant
for periods beyond that date.

(d)  If Tenant does not elect to terminate this Lease,
Landlord shall, at its sole cost, promptly and
diligently repair, alter, raze and restore the remaining
part of the Demised Premises, replace the parking area
taken and/or replace the points of ingress and egress
taken, so the improvements are made into a complete
architectural unit and the Demised Premises, parking
areas and points of ingress and egress are returned to,
as nearly as reasonably possible, the condition existing
prior to the taking or condemnation. Tenant shall not
be obligated to make any payment or contribution toward
the repair or restoration work. Tenant's obligations to
pay rent and other charges shall be proportionately
reduced by the percentage of the Demised Premises taken.

## 17. **Merchants Association**

Tenant shall not be required to join, participate in or
contribute to, a merchants association, throughout the Term.

## 18. **Tenant's Defaults**

Landlord may reenter the Demised Premises, recover
possession and dispossess Tenant in the manner prescribed by
statute if, after receiving written notice from Landlord,
Tenant fails: (i) to make within fifteen (15) days of
receipt of such written notice any rental payment past due
hereunder; or (ii) to start performance within thirty (30)
days of receipt of such written notice or within such
additional time as may be necessary, of any other covenant
or agreement to be performed by Tenant herein. If Tenant,
after receiving written notice, proceeds to cure the
default, then no default shall be deemed continuing.

## 19. **Subordination, Non-Disturbance and Attornment**

If at the commencement of this Lease or during the Term, the
Demised Premises shall be, or becomes, subject to one or
more mortgages:

(a)  Landlord, or its mortgagee, and Tenant, upon written
request, shall execute a Subordination, Non-Disturbance
and Attornment Agreement in the form attached hereto as
Exhibit "C";

(b)  Tenant shall, at all reasonable times, upon thirty (30)
days prior written request from Landlord, provide an
estoppel certificate in the form attached hereto as

Exhibit "D", for the exclusive use of the lender or a prospective purchaser of the Landlord Parcel, whereby Tenant shall only state, to the best of its knowledge, whether: the Lease is in effect; there are amendments to the Lease; Landlord is in default;

(c) No personalty or fixtures of Tenant shall be subject to a mortgage lien.

## 20. Assignment and Sublease

Tenant shall have the right, with Landlord's prior written approval, which shall not be unreasonably withheld or delayed, to assign this Lease or sublet the Demised Premises. In such event, Tenant shall remain responsible for the payment of rent and the performance of its other obligations, but not beyond the Term to which Tenant has agreed in writing and specifically excluding any option period not exercised by Tenant prior to such assignment or sublease.

## 21. Cancellation Right

Tenant shall have the right to terminate this Lease effective at any time after the first sixty (60) months of the initial Term of the Lease by giving Landlord at least six (6) months prior written notice of its intention to do so; provided Tenant pays Landlord a fee in accordance with the unamortized real estate commission and any Landlord Improvements specific to Tenant as detailed in the Amortization Schedule on Exhibit "F" attached hereto and made a part hereof. Tenant shall further have the right to terminate this Lease effective at any time during any option period with at least six (6) months prior written notice to Landlord, and Tenant shall not be required to pay a fee or penalty of any kind for termination of the Lease under this Section during any option period.

## 22. Notices

Notices shall be in writing and shall be deemed properly served, when deposited with the United States Postal Service, as registered or certified mail, return receipt requested, bearing adequate postage, or when sent by overnight express carrier (e.g. Federal Express, Purolator Courier, Express Mail) with a request that the addressee sign a receipt evidencing delivery, and addressed as follows:

Tenant-            Sears, Roebuck and Co.
                  3333 Beverly Road
                  Hoffman Estates, Illinois  60179
                  Attn: Vice President, Real Estate
                        Department 824RE

```
Copy to:              Sears, Roebuck and Co.
                      3333 Beverly Road
                      Hoffman Estates, Illinois  60179
                      Attn: Assistant General Counsel
                           Department 766

Landlord-             Capital Ventures
                      610 Windsor Road
                      Inverness, Illinois  60067
                      Attn:  Harry Giotas
```

or to any other address furnished in writing by any of the foregoing. However, any change of addresses furnished shall comply with the Notice requirements of this Section and shall include a complete outline of all current notice of addresses to be used for all parties.

### 23. <u>Time of Essence</u>

Time is of the essence in this Lease.

### 24. <u>Entire Agreement</u>

This Lease and the attached exhibits constitute the entire agreement between Landlord and Tenant with respect to the Demised Premises.  Neither this Lease nor any of its provisions may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the parties.

### 25. <u>Choice of Law</u>

This Lease shall be construed in accordance with and governed by the laws of the state in which the Entire Tract is located.

### 26. <u>Binding Effect</u>

Subject to the restrictions on transfer herein, this Lease shall inure to the benefit of and be binding upon Landlord and Tenant and their respective heirs, executors, legal representatives and successors and assigns.

### 27. <u>Rules and Regulations</u>

Tenant will, only to the extent consistent with this Lease and only so long as Landlord enforces such Rules and Regulations consistently against all tenants in the Entire Tract, comply with the attached and incorporated Rules and Regulations <u>(Exhibit "E")</u> which are incorporated herein by reference, which shall not be changed without Tenant's prior written approval. Landlord agrees to enforce such Rules and Regulations against all tenants of the Entire Tract on a consistent basis.

## 28. Broker

Landlord and Tenant represent to each other that neither has dealt with any broker in connection with the negotiation or execution of this Lease other than Arthur Goldner & Associates, Inc. and Century 21 Mike Ham & Associates (collectively "Broker"). Landlord agrees to pay any fee or commission due Broker if, as and when due in accordance with a separate agreement between Landlord and Broker. Landlord shall indemnify and hold Tenant harmless from and against any loss, cost, expense or damage arising from any claim for commission or other compensation made by Broker.

## 29. Partnership

Nothing contained in this Lease shall be construed to make Landlord and Tenant partners or joint venturers or to render either party liable for the debts or the obligations of the other.

## 30. Third Party Beneficiaries

Except as herein specifically provided, no other person, subtenant, customer, employee or invitee of Tenant or any other third party shall be deemed to be a third party beneficiary of any of the provisions herein.

## 31. Partial Invalidity

If any section, paragraph, subparagraph, sentence, clause or phrase of this Lease shall be declared or judged invalid or unconstitutional, such adjudication shall not affect the other sections, paragraphs, subparagraphs, sentences, clauses or phrases.

## 32. Recordings

Either party may require the other to execute all documents necessary to record a short form of this Lease.

## 33. Headings

The section headings are for convenience and are not a part of this Lease.

**IN WITNESS WHEREOF**, the parties have caused this Lease to be executed:

WITNESS:                          LANDLORD:

                                  **CAPITAL VENTURES,**
                                  an Illinois partnership

By: _____       By: _____
                                      Harry Giotas, General Partner

By: _____       By: _____
                                      Litsa Giotas, Partner

ATTEST:                           TENANT:

                                  **SEARS, ROEBUCK AND CO.**

By: _____       By: _____
    Assistant Secretary for           Barry D. Kaufman
    Sears, Roebuck and Co.            Vice President
                                      Real Estate

**List of Exhibits:**

A - 1  Site Plan
A - 2  Fixture Plan
A - 3  Landlord Improvements
B -    Permitted Encumbrances
C -    Subordination, Non-Disturbance and Attornment Agreement
D -    Estoppel Certificate
E -    Rules and Regulations
F -    Unamortized Improvements Schedule

```
                        Illinois
STATE OF _____     )
                             )  SS:
COUNTY OF __Cook__           )
```

I, the undersigned, a Notary Public, in and for the County
and State aforesaid, do hereby certify, that __Harry Cioka__
and __Litsa Cioka__ personally known to me/to be the
__Partners__ and _____
of __Capitol Ventures__, an __Illinois Partnership__
corporation, and personally known to me to be the same persons
whose names are subscribed to the foregoing instrument, appeared
before me this day in person and acknowledged under oath that as
such __Partners__ and _____ they
signed and delivered the said instrument pursuant to authority
duly given to them by said __Partnership__ .

Given under my hand and seal this _____ day of _____,
199__ .

_____
Notary Public

"OFFICIAL SEAL"
MARY KAY SMITH
Notary Public, State of Illinois
My Commission Expires 2/15/99

My Commission Expires

__2/15__ , 199_9_ .

STATE OF ILLINOIS    )
                     )  SS:
COUNTY OF COOK       )


I, the undersigned, a Notary Public, in and for the County and State aforesaid, do hereby certify, that Barry D. Kaufman and _SHIRL WOLTER_ personally known to me to be the Vice President, Real Estate and Assistant Secretary of **SEARS, ROEBUCK AND CO.**, a New York corporation, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged under oath that as such the Vice President, Real Estate and Assistant Secretary, they signed and delivered the said instrument pursuant to authority duly given to them by said corporation.


Given under my hand and seal this _27th_ day of _June_, 1995.

```
OFFICIAL SEAL
NANCY K BURTON
NOTARY PUB    STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/06/97
```

_Nancy K Burton_
            (Notary) Public


My Commission Expires

_____, 199__ .



EXHIBIT 1    SITE PLAN

### EXHIBIT "A-3"    PART 2

### LANDLORD IMPROVEMENTS

1. Construct one (1) men's restroom which shall include three (3) toilets, three (3) urinals and four (4) sinks, and said restroom will be in full compliance with Title III of the Americans with Disability Act of 1990, all regulations issued thereunder and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto, as the same are in effect on the date hereof and may be hereafter modified, amended or supplemented (the "ADA").

2. Construct one (1) women's restroom which shall include six (6) toilets and six (6) sinks. Such restroom shall comply with ADA requirements.

3. Reduce the size of the mezzanine on the west side of the Demised Premises building to allow space for the restrooms in Subsection 5(c) of the Lease. Relocate existing western mezzanine stair as shown on the Fixture Plan. Modify existing sprinkler, lights and H.V.A.C. units as related to restroom construction and mezzanine reconfiguration.

4. Install three (3) new double doors in the front of the Demised Premises building according to Tenant's specifications, and replace one (1) existing door with glass, close up the cart return half door, relocate two (2) existing automatic doors, and guardrail. Remove glass vestibule on west door.

5. Remove the existing raised platform in the center of the Demised Premises building floor, and replace the area damaged by such removal with floor tile, if requested by Tenant. In the event Tenant does not want tile in the damaged floor area, Landlord shall prepare said area for Tenant so that the area is ready for Tenant to install floor tile or other floor covering as determined by Tenant.

6. Remove three (3) angular walls (two (2) at both rear corners of the interior of the Demised Premises building and one (1) at the southwest corner of the Demised Premises building). Restore ceiling over corners where such walls have been removed.

7. Repaint the exterior facade of the Demised Premises building so that the outline of the former F&M sign no longer appears, and so that the exterior facade is repainted to Tenant's satisfaction.

8. Provide required roof penetration for exhaust vents in the lawn & garden repair shop.

9. Provide floor drains, stubbed-in hot and cold supplies, drain for sink, and sump pit with drain in lawn & garden repair shop.

10. Provide drains and stubbed-in hot and cold supplies to sinks in the break room area.

11. Provide floor drains for air compressor dryer.

12. Re-work H.V.A.C. system requirements if necessary to provide heating and cooling to meet Tenant's Design Criteria specifications.

13. Replace two (2) dented bottom panels on overhead doors in the back of the building.

14. Replace red floor tile or missing tile as needed with white tile to match existing white tile.

15. Remove concrete shopping cart stops located inside the building that run along the floor at the front of the building.

## EXHIBIT "B"

### PERMITTED ENCUMBRANCES

1. Indenture of Establishment of Protective Covenants, Conditions and Restrictions, and Grant of Easements dated June 20, 1977 between Exchange National Bank, Trustee under the provisions of a Trust Agreement dated June 14, 1976 and known as Trust Number 31142, and Exchange National Bank, (i) Trustee under the provisions of a Trust Agreement dated November 26, 1968, and known as Trust Number 22187, (ii) dated August, 1971, and known as Trust Number 25576, and (iii) dated March 30, 1975, and known as Trust Number 30119.

2. Grant of Easements and Declaration Establishing Covenants, Conditions and Restrictions dated December 30, 1986, between LaSalle National Bank, Frank's Nursery & Crafts, Inc., and Merchandising Factors, Inc.

## EXHIBIT "C"

## SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE AGREEMENT

**THIS SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE AGREEMENT** ("Agreement") is made and entered into as of the _____ day of _____, 199__, by and between _____ ("Lender") and **SEARS, ROEBUCK AND CO.**, 3333 Beverly Road, Hoffman Estates, Illinois 60179 ("Tenant").

### WITNESSETH

**WHEREAS**, by the Lease dated _____, 19__ (the "Lease"), the Tenant has leased from _____ ("Landlord") certain premises (the "Demised Premises"), containing approximately _____ square feet located in the _____ which Shopping Center is legally described on Exhibit "A" attached hereto (the "Entire Tract"), together with various easements and rights over the Entire Tract.

**WHEREAS**, Lender is the holder of a mortgage on the Demised Premises, given to the Lender by Landlord dated as of _____, recorded on _____, 19__, in the Office of the Recorder of Deeds [Registrar of Titles] of _____ County, _____ in Book _____ at Page _____, as Document No. _____ (collectively referred to herein with any other documents securing the debt secured by the mortgage as the "Mortgage").

**NOW, THEREFORE**, in consideration of the mutual covenants hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Lender hereby consents to the Lease.

2.    The Lease is and shall be subject and subordinate at all times to the lien of the Mortgage and to all renewals, replacements and extensions of the Mortgage to the full extent of the principal sum secured thereby and interest thereon.

3.    In the event that Lender shall commence an action to foreclose the Mortgage or to obtain a receiver of the Demised Premises, or shall foreclose the Mortgage by advertisement, entry and sale according to any procedure available under the laws of the state where the Entire Tract is located, Tenant shall not be joined as a party defendant in any such action or proceeding and Tenant shall not be disturbed in its possession of the Demised Premises.

4.   In the event that Lender shall acquire the Demised Premises upon foreclosure, or by deed in lieu of foreclosure, or by any other means:

(a)  Tenant shall be deemed to have made a full and complete attornment to Lender as the landlord under the Lease so as to establish direct privity between the Lender and Tenant;

(b)  All rights and obligations of Tenant under the Lease shall continue in full force and effect and be enforceable by and against Tenant respectively with the same force and effect as if the Lease had originally been made and entered into directly by and between Lender as the landlord thereunder, and Tenant; and

(c)  Lender shall recognize and accept the rights of Tenant and shall thereafter assume the obligations of Landlord under the Lease.

5.   Nothing herein contained shall impose any obligations upon Lender to perform any of the obligations of Landlord under the Lease, unless and until Lender shall become owner or mortgagee in possession of the Demised Premises.

6.   Any notice required or desired to be given under this Agreement shall be in writing and shall be deemed given (a) upon receipt if delivered personally; (b) two (2) business days after being deposited into the U.S. mail if being sent by certified or registered mail, return receipt requested, postage prepaid; or (c) one (1) business day after being sent by reputable overnight air courier service (i.e., Federal Express, Airborne, etc.) with guaranteed overnight delivery, and addressed as follows:

**If to Lender:** _____

_____

_____

_____

**If to Tenant:**      **Sears, Roebuck and Co.**
Department 824RE
3333 Beverly Road
Hoffman Estates, Illinois  60179
Attention:  Barry D. Kaufman
Vice President
Real Estate

**With a copy to:**   **Sears, Roebuck and Co.**
Department 766RE
3333 Beverly Road
Hoffman Estates, Illinois  60179
Attention:  Assistant General Counsel

Either party, at any time and from time to time (by providing notice to the other party in the manner set forth above), may designate a different address or person, or both, to whom such notice may be sent.

7.   This Agreement shall be binding upon and inure to the benefit of any person or entity acquiring rights to the Demised Premises by virtue of the Mortgage, and the successors, administrators and assigns of the parties hereto.

8.   No personalty or fixtures of the Tenant are subject to the lien of the Mortgage.

**IN WITNESS WHEREOF,** Agreement has been signed and sealed on the day and year first above set forth.

ATTEST:

_____          By: _____

ATTEST:                            **SEARS, ROEBUCK AND CO.**

_____          By: _____
Assistant Secretary                   Barry D. Kaufman
                                       Vice President
                                       Real Estate

**Prepared by and return to when recorded:**


_____
Sears, Roebuck and Co.
Department 766
3333 Beverly Road
Hoffman Estates, Illinois  60179

STATE OF _____ )
                          ) ss:
COUNTY OF _____ )


    **THE** undersigned, a Notary Public, in and for the County and
State aforesaid, does hereby certify, that _____ and
_____ personally known to me to be the
of _____, a _____,
and personally known to me to be the same persons whose names are
subscribed to the foregoing instrument, appeared before me this
day in person and acknowledged under oath that as such
_____ and _____
they signed and delivered the said instrument pursuant to
authority duly given to them by said
_____.


    Given under my hand and seal this _____ day of _____,
199__.


                                   _____
                                      Notary Public


My Commission Expires:


_____

```
STATE OF ILLINOIS    )
                     ) ss:
COUNTY OF COOK       )
```

    **THE** undersigned, a Notary Public, in and for the County and State aforesaid, does hereby certify, that Barry D. Kaufman and _____ personally known to me to be the Vice President Real Estate and Assistant Secretary of **SEARS, ROEBUCK AND CO.**, a New York corporation, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged under oath that as such Vice President Real Estate and Assistant Secretary, they signed and delivered the said instrument pursuant to authority duly given to them by said corporation.

    Given under my hand and seal this _____ day of _____, 199__.


                            _____

                                Notary Public


My Commission Expires:


_____

## EXHIBIT "D"

### ESTOPPEL CERTIFICATE

DATE_____

TO:  _____
     _____
     _____

RE:  _____
     _____
     _____

    The undersigned, Sears, Roebuck and Co., as the tenant under that certain lease dated _____, as modified by _____ (the "Lease"), by and between _____, as Landlord, and Sears, Roebuck and Co., as Tenant, covering the premises commonly known as _____ (the "Premises"), hereby certifies that as of the date hereof:

1.    The Lease is in full force and effect and has not been modified or amended, except as stated above.

2.    The term of the Lease commenced on _____ and will continue until _____, subject to _____ rights as provided in the Lease.

3.    No rent has been paid more than one month in advance.

4.    Tenant has not received nor has Tenant given any notice of default pursuant to the terms of the Lease.

    This Estoppel Certificate is given solely for your information and may not be relied upon by any other person or entity, nor shall it in any way create any liability in, or provide any right of action against Sears, Roebuck and Co., its officers, directors, agents, employees and representatives.

                    SEARS, ROEBUCK AND CO.

            By: _____
                    Barry D. Kaufman
                    Vice President
                    Real Estate

## EXHIBIT "E"

### RULES AND REGULATIONS

Per the landlord there are none

**EXHIBIT "F"**

**AMORTIZATION SCHEDULE**

**(TO BE ADDED BY LANDLORD)**

Exhibit "G"  Cancellation Penalty

| Lease Month | Penalty Payment | Lease Month | Penalty Payment | Lease Month | Penalty Payment |
|---|---|---|---|---|---|
| -- | $70,000.00 | 43 | 52,415.57 | 86 | 27,290.58 |
| 1 | 69,658.28 | 44 | 51,927.31 | 87 | 26,592.95 |
| 2 | 69,313.71 | 45 | 51,434.98 | 88 | 25,889.50 |
| 3 | 68,966.27 | 46 | 50,938.55 | 89 | 25,180.19 |
| 4 | 68,615.93 | 47 | 50,437.98 | 90 | 24,464.97 |
| 5 | 68,262.68 | 48 | 49,933.24 | 91 | 23,743.79 |
| 6 | 67,906.48 | 49 | 49,424.30 | 92 | 23,016.60 |
| 7 | 67,547.31 | 50 | 48,911.11 | 93 | 22,283.35 |
| 8 | 67,185.15 | 51 | 48,393.65 | 94 | 21,543.99 |
| 9 | 66,819.97 | 52 | 47,871.87 | 95 | 20,798.47 |
| 10 | 66,451.75 | 53 | 47,345.75 | 96 | 20,046.74 |
| 11 | 66,080.46 | 54 | 46,815.24 | 97 | 19,288.74 |
| 12 | 65,706.07 | 55 | 46,280.32 | 98 | 18,524.42 |
| 13 | 65,328.57 | 56 | 45,740.93 | 99 | 17,753.74 |
| 14 | 64,947.92 | 57 | 45,197.05 | 100 | 16,976.63 |
| 15 | 64,564.09 | 58 | 44,648.64 | 101 | 16,193.05 |
| 16 | 64,177.07 | 59 | 44,095.65 | 102 | 15,402.93 |
| 17 | 63,786.83 | 60 | 43,538.06 | 103 | 14,606.24 |
| 18 | 63,393.33 | 61 | 42,975.82 | 104 | 13,802.90 |
| 19 | 62,996.55 | 62 | 42,408.90 | 105 | 12,992.87 |
| 20 | 62,596.47 | 63 | 41,837.25 | 106 | 12,176.09 |
| 21 | 62,193.05 | 64 | 41,260.84 | 107 | 11,352.50 |
| 22 | 61,786.27 | 65 | 40,679.63 | 108 | 10,522.05 |
| 23 | 61,376.10 | 66 | 40,093.57 | 109 | 9,684.68 |
| 24 | 60,962.51 | 67 | 39,502.63 | 110 | 8,840.33 |
| 25 | 60,545.48 | 68 | 38,906.76 | 111 | 7,988.94 |
| 26 | 60,124.97 | 69 | 38,305.93 | 112 | 7,130.46 |
| 27 | 59,700.95 | 70 | 37,700.09 | 113 | 6,264.83 |
| 28 | 59,273.41 | 71 | 37,089.20 | 114 | 5,391.98 |
| 29 | 58,842.30 | 72 | 36,473.22 | 115 | 4,511.86 |
| 30 | 58,407.59 | 73 | 35,852.11 | 116 | 3,624.40 |
| 31 | 57,969.27 | 74 | 35,225.82 | 117 | 2,729.55 |
| 32 | 57,527.29 | 75 | 34,594.32 | 118 | 1,827.24 |
| 33 | 57,081.63 | 76 | 33,957.55 | 119 | 917.41 |
| 34 | 56,632.26 | 77 | 33,315.47 | 120 | (0.00) |
| 35 | 56,179.14 | 78 | 32,668.05 | | |
| 36 | 55,722.24 | 79 | 32,015.22 | | |
| 37 | 55,261.54 | 80 | 31,356.96 | | |
| 38 | 54,796.99 | 81 | 30,693.22 | | |
| 39 | 54,328.58 | 82 | 30,023.94 | | |
| 40 | 53,856.26 | 83 | 29,349.08 | | |
| 41 | 53,380.01 | 84 | 28,668.60 | | |
| 42 | 52,899.79 | 85 | 27,982.45 | | |

## LEASE SUPPLEMENT

**THIS LEASE SUPPLEMENT** ("Supplement") is made on _~ ~ ✓✓ ~ ✓✓_, 1995, between **CAPITOL VENTURES**, a Illinois partnership ("Landlord") and **SEARS, ROEBUCK AND CO.**, a New York corporation ("Tenant").

**WHEREAS,** Landlord and Tenant entered into a Lease agreement (the "Lease") on June 21, 1995, for property in the City of Bridgeview, County of Cook, State of Illinois, more specifically described in the Lease; and

**WHEREAS,** Section 3 of the Lease provides that Landlord and Tenant shall specify the Commencement Date of the Lease by supplemental agreement; and

**WHEREAS,** Section 3 of the Lease provides that the Commencement Date shall be the earlier of (a) the date Tenant opens its store for business or (b) the date on which Tenant is granted possession; and

**WHEREAS,** Section 4(a) of the Lease provides that Rent shall begin to accrue and the Initial Rental Payment shall be due to Landlord on the Commencement Date.

**NOW, THEREFORE,** Landlord and Tenant agree to supplement the Lease as follows:

1.    Tenant opened for business on November 13, 1995.

2.    The parties agree that the Commencement Date of the Lease is November 13, 1995.

3.    The Term of the Lease is November 13, 1995, through November 12, 2005.

4.    The Initial Rental Payment Date is November 13, 1995.

5.    The Lease, except as herein supplemented, is in all other respects fully ratified and confirmed.

6.    Except as otherwise defined herein, all capitalized terms used in this Supplement shall have the meaning ascribed to such terms in the Lease.

7.    Landlord represents and warrants that Landlord has full right, power and authority to enter into this Supplement.

(Harlsup)

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Supplement to be executed:

Witness:                                    Landlord:

**CAPITAL VENTURES**

By: _____

Printed Name: _____

Title: _____

Attest:                                    Tenant:

**SEARS, ROEBUCK AND CO.**

Assistant Secretary (for
Sears, Roebuck and Co.)

By: _____

Fred Rosenberg
Vice President
Facilities Planning

## ASSIGNMENT AND ASSUMPTION OF LEASES
### (Bridgeview, Illinois)

This Assignment and Assumption of Lease is made and entered into as of January 2, 2006, by and between CK PROPERTIES, INC., an Illinois corporation, successor landlord to Capitol Ventures, an Illinois partnership, as assignor ("Assignor"), and DEMETRIOS L. KOZONIS Trustee of the Demetrios L. Kozonis Trust dated January 29, 1996, sole beneficiary with power of direction of PARKWAY BANK AND TRUST, AS TRUSTEE, UNDER TRUST AGREEMENT DATED DECEMBER 11, 2001 AND KNOWN AS TRUST NUMBER 13151, as assignee ("Assignee").

A.     Assignor and Assignee have entered into an agreement regarding the transfer of certain real property located at the Harlem Corners Plaza, 7224-7350 West 87th Street, Bridgeview, Cook County, Illinois 60455.

B.     Pursuant to the aforesaid agreement, Assignor agreed to assign to Assignee, all of Assignor's interest, as Landlord, in and to all of the leases and tenancies at Harlem Corners Plaza (collectively the "Leases").

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein, the parties hereby agree as follows:

1.     Assignment.   Assignor hereby assigns, conveys, transfers and sets over unto Assignee all of Assignor's right, title and interest in, to and under the Leases, including, without limitation, all of Assignor's right, title and interest in and to security, cleaning or other deposits and in and to any claims for rent, arrears rent or any other claims arising under the Leases against any tenant thereunder, subject to the rights of the tenants under the Leases.

2.     Assumption.   Assignee hereby assumes all of Assignor's rights, interests and obligations in, to and under the Leases, and agrees to perform all of Assignor's obligations under or with respect to the Leases accruing from and after the date hereof.

3.     Mutual Indemnification.   Assignor hereby agrees to indemnify, defend and hold Assignee harmless from any loss or liability resulting from any breach by Assignor of its obligations as Landlord under the Leases occurring prior to the date hereof.   Assignee hereby agrees to indemnify, defend and hold Assignor harmless with respect to any loss or liability resulting from any breach by Assignee of its obligations as Landlord under the Leases occurring from and after the date hereof.

4.     Miscellaneous.   This Assignment may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same instrument.   This Assignment shall be binding upon the parties and their respective successors and assigns.   If any action or proceeding is commenced by either party with respect to this Assignment, the prevailing party in such action or proceeding shall be entitled to recover its costs and expenses incurred in such action or proceeding, including attorney's fees and costs.

IN WITNESS WHEREOF, this Assignment and Assumption Agreement is made and entered into as of the date first set forth above.

ASSIGNOR:

CK PROPERTIES, INC., an Illinois corporation

By: _____
Name: Chrisoula Kozonis, President

ASSIGNEE:

PARKWAY BANK AND TRUST AS TRUSTEE UNDER TRUST AGREEMENT DATED DECEMBER 11, 2001 AND KNOWN AS TRUST NUMBER 13151

By: _____
Name: Demetrios L. Kozonis
     sole beneficiary with power of direction

BRIDGEVIEW, ILLINOIS
7310 West 87th Street
(Sears PRS and CCN No. 8350)

## FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE (this "Amendment") is made as of this 22nd day of July, 2005, by and between **CK PROPERTIES, INC.**, an Illinois corporation, as successor in interest to Capitol Ventures, an Illinois partnership ("Landlord"), and **SEARS, ROEBUCK AND CO.**, a New York corporation ("Tenant").

## RECITALS:

A. Capitol Ventures, an Illinois partnership (the **"Prior Landlord"**) and Tenant entered into a Lease dated as of June 21, 1995 which has been amended by a Lease Supplement dated December 18, 1995 (hereinafter collectively referred to as the **"Lease"**) for the lease by Tenant of certain property, with improvements located thereon, consisting of that certain building space of approximately 24,480 square feet, located at 7310 West 87th Street, in the City of Bridgeview,  County of Cook, State of Illinois, which property is more specifically described in the Lease (the **"Demised Premises"**) together with all privileges, appurtenances, equipment, machinery, fixtures and any other improvements now or hereafter situated on, belonging or appertaining to the Demises Premises, ingress and egress to the public roads, rights in the Common Areas (as that term is used and defined in the Lease) and such other rights and easements as more fully set forth in the Lease.

B. Landlord is the successor in interest to the Prior Landlord as the Landlord under the Lease.

C. Currently, Tenant is leasing the Demised Premises from Landlord in accordance with the terms and conditions of the Lease for the term (**"Term"**) which commenced on November 13, 1995 and which will end on November 12, 2005.

D. In accordance with Section 3(a) of the Lease, Tenant hereby elects to exercise the first option term for a period of two (2) years rather than for a period of five (5) years as set forth in the Lease (the **"First Option Term"**).

E. Landlord and Tenant hereto desire to recognize the exercise of the First Option Term as modified herein and amend the Lease in certain respects as provided herein.

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree that the Lease is extended and amended as follows:

1. **Incorporation of Recitals**. The foregoing recitals are hereby incorporated as if fully rewritten and restated at length herein.

2. **Capitalized Terms**. Capitalized terms used, but not defined in this Amendment, shall have the same meaning ascribed to such defined terms in the Lease.

3. **Exercise of the First Option Term**. Section 3(a) (Term) of the Lease is hereby modified to provide that the First Option Term shall be for a period of two (2) years, commencing on November 13, 2005 and ending on November 12, 2007, rather than for a period of five (5) years. The First Option Term, as modified herein, is hereby exercised by the Tenant. The two (2) remaining options as set forth in this Section shall be for a period of five (5) years as indicated therein.

All references in the Lease to the word "Term" shall now mean the "First Option Term" as defined herein as the context and circumstances require.

4. **Rent for the First Option Term**. Section 4 (Rent) of the Lease is hereby amended to provide that the rent due and payable by Tenant to Landlord for the First Option Term shall be at the rate set forth in Section 4(b) of the Lease (e.g. $18,360.00 per month ($9.00 square foot annually)).

5. **Notices.**

Notices shall be in writing and shall be deemed properly served, either (a) when personally served (personal service on Tenant must be delivered to an officer of Tenant), or (b) two (2) business days after being deposited with the United States Postal Service, as registered or certified mail, return receipt requested, bearing adequate postage, or (c) one (1) business day after being deposited with a reputable overnight express carrier (e.g. Federal Express, UPS, Airborne Express) for next business day delivery with a request that the addressee sign a receipt evidencing delivery, and addressed as follows:

      **Tenant:**      **Sears, Roebuck and Co.**
                         3333 Beverly Road
                         Hoffman Estates, Illinois  60179
                         Attn:  Vice President
                                 Real Estate
                                 Department 824RE

Copy to:        **Sears, Roebuck and Co.**
                3333 Beverly Road
                Hoffman Estates, Illinois  60179
                Attn:   Assistant General Counsel
                        Real Estate
                        Department 766X

Landlord:       **CK Properties, Inc.**
                4949 North Milwaukee Avenue
                Suite 302
                Chicago, Illinois  60630

or to any other address furnished in writing by any of the foregoing.  However, any change of addresses furnished shall comply with the notice requirements of this Section and shall include a complete outline of all current addresses to be used for all parties.

6.    **Miscellaneous.**

(a)  The Lease, except as amended herein, is in all other respects fully ratified and confirmed and is and remains in full force and effect.

(b)  Except as defined herein, all capitalized items used in this Amendment to Lease shall have the meanings ascribed to such terms in the Lease.

(c)  Landlord represents and warrants that it is the successor in interest to the Prior Landlord as the landlord under the Lease, and that Landlord has the full power and authority to enter into this Amendment to Lease and to amend the Lease and that Landlord does not need the consent of any lender holding a mortgage or a deed of trust on the Demised Premises or any other party.

**IN WITNESS WHEREOF**, the parties have executed this First Amendment to Lease as of the day and year first above written.

**ATTEST OR WITNESS:**

Shirley Polinske

**ATTEST:**

By: _____
        Assistant Secretary

**LANDLORD:**
**CK PROPERTIES, INC.**

By: _____
Title:    VICE PRESIDENT

**TENANT:**
**SEARS, ROEBUCK AND CO.**

By: _____
        Richard Kotarba, Director
        Real Estate Facilities and Services

C:\Documents and Settings\Administrator\Local Settings\Temporary Internet Files\OLKC9\DMLIB-#59913-v1-Bridgeview_IL_-_(Sears_Store_No__8350)_-_First_Amendment_to_Lease.DOC

BRIDGEVIEW, ILLINOIS
7310 West 87th Street
(Sears PRS and CCN No. 8350)

## SECOND AMENDMENT TO LEASE

**THIS SECOND AMENDMENT TO LEASE** (this **"Amendment"**) is made as of this 29th day of June, 2007, by and between **DEMETRIOS L. KOZONIS**, Trustee of the Demetrios L. Kozonis Trust dated January 29,1996, sole beneficiary with power of direction of Parkway Bank and Trust Company, Trust Number 13151 dated December 11, 2001, as successor in interest to Capitol Ventures, an Illinois partnership (**"Landlord"**), and **SEARS, ROEBUCK AND CO.**, a New York corporation (**"Tenant"**).

## RECITALS:

A. Capitol Ventures, an Illinois partnership (the **"Prior Landlord"**) and Tenant entered into a Lease dated as of June 21, 1995 which has been amended by a Lease Supplement dated December 18, 1995 and First Amendment to Lease dated July 22, 2005 (hereinafter collectively referred to as the **"Lease"**) for the lease by Tenant of certain property, with improvements located thereon, consisting of that certain building space of approximately 24,480 square feet, located at 7310 West 87th Street, in the City of Bridgeview, County of Cook, State of Illinois, which property is more specifically described in the Lease (the **"Demised Premises"**) together with all privileges, appurtenances, equipment, machinery, fixtures and any other improvements now or hereafter situated on, belonging or appertaining to the Demises Premises, ingress and egress to the public roads, rights in the Common Areas (as that term is used and defined in the Lease) and such other rights and easements as more fully set forth in the Lease.

B. Landlord is the successor in interest to the Prior Landlord as the Landlord under the Lease.

C. Currently, Tenant is leasing the Demised Premises from Landlord in accordance with the terms and conditions of the Lease for the term (**"First Option Term"**) which commenced on November 13, 2005 and which will end on November 12, 2007.

D. In accordance with Section 3(a) of the Lease, as amended, Tenant hereby elects to exercise the option term for a period of five (5) years as set forth in the Lease (the **"Second Option Term"**).

E. Landlord and Tenant hereto desire to recognize the exercise of the Second Option Term as modified herein and amend the Lease in certain respects as provided herein.

DMLIB-#124437-v1-Bridgeview__IL_#8350_Second_Amendment_to_Lease

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree that the Lease is extended and amended as follows:

1. **Incorporation of Recitals**. The foregoing recitals are hereby incorporated as if fully rewritten and restated at length herein.

2. **Capitalized Terms**. Capitalized terms used, but not defined in this Amendment, shall have the same meaning ascribed to such defined terms in the Lease.

3. **Exercise of the Second Option Term**. Section 3(a) (Term) of the Lease is hereby modified to provide that the Second Option Term shall be for a period of five (5) years, commencing on November 13, 2007 and ending on November 12, 2012. The Second Option Term, as modified herein, is hereby exercised by the Tenant. The parties agree that Tenant shall retain the two (2) remaining options as set forth in this Section, both of which are for a period of five (5) years as indicated therein.

All references in the Lease to the word "Term" shall now mean the "Second Option Term" as defined herein as the context and circumstances require.

4. **Rent for the Second Option Term**. Section 4 (Rent) of the Lease is hereby amended to provide that the rent due and payable by Tenant to Landlord for the Second Option Term shall be $19,980.00 per month ($9.75 square foot annually).

5. **Landlord's Work.** Landlord agrees, at its sole cost and expense to promptly re-paint and re-carpet the approximately 12,000 square feet, call center portion of the Demised Premises (hereinafter **"Call Center"**) as shown on Exhibit A, attached hereto and made part hereof (**"Landlord's Work"**). Landlord shall perform Landlord's Work at a time agreed upon in writing by Tenant in order to ensure little disruption to Tenant's business operations. If Landlord fails to complete Landlord's Work within ninety (90) days from the date of this Second Amendment, then Tenant shall have the right, at Tenant's sole option, to complete Landlord's Work, in which event Tenant may deduct from any rent or adjustments otherwise due to Landlord the costs expended by Tenant in so completing Landlord's Work, plus interest of 3% plus the Prime Rate.

6. **Termination Right.** Tenant shall have the right to terminate this Lease on the Call Center portion of the Demised Premises only, effective anytime after November 12, 2010, by giving Landlord 180 days advance written notice and paying a termination fee equal to the unamortized costs of: (1) the paint and carpet on the call center portion of the Demised Premises; (2) half of the cost for the dividing wall separating the electric and building washrooms in the remaining portion of the Demised Premises; and (3) broker commissions on the Call Center portion of the Demised Premises.

7. **Broker.**    Landlord and Tenant represent to each other that neither has dealt with any broker in connection with the negotiation or execution of this Second Amendment other than CB Richard Ellis ("**Broker**").    Landlord agrees to pay any fee or commission due Broker if, as and when due in accordance with a separate agreement between Landlord and Broker.    Landlord shall indemnify and hold Tenant harmless from and against any loss, cost, expense or damage arising from any claim for commission or other compensation made by Broker.

8. **Miscellaneous.**

(a) The Lease, except as amended herein, is in all other respects fully ratified and confirmed and is and remains in full force and effect.

(b) Except as defined herein, all capitalized items used in this Second Amendment to Lease shall have the meanings ascribed to such terms in the Lease.

(c) Landlord represents and warrants that it is the successor in interest to the Prior Landlord as the landlord under the Lease, and that Landlord has the full power and authority to enter into this Second Amendment to Lease and to amend the Lease and that Landlord does not need the consent of any lender holding a mortgage or a deed of trust on the Demised Premises or any other party.

**IN WITNESS WHEREOF**, the parties have executed this Second Amendment to Lease as of the day and year first above written.

**ATTEST OR WITNESS:**

**LANDLORD:**

By:
Demetrios L. Kozonis,
As Trustee as aforesaid

**ATTEST:**

By: _____
    Assistant Secretary

**TENANT:**
**SEARS, ROEBUCK AND CO.**

By: _____
    Jeffrey Stollenwerck
    SVP Real Estate

EXHIBIT
A

## THIRD AMENDMENT TO LEASE
### *(Sears PRS and CCN No. 8350, Bridgeview, IL)*

    **THIS THIRD AMENDMENT TO LEASE** (this **"Amendment"**) is made as of this 29th day of November, 2012, by and between **DEMETRIOS L. KOZONIS, TRUSTEE OF THE DEMETRIOS L. KOZONIS TRUST DATED JANUARY 29, 1996**, sole beneficiary with power of direction of Parkway Bank and Trust, as Trustee, under Trust Agreement dated December 11, 2001 and known as Trust Number 13151(**"Landlord"**), and **SEARS, ROEBUCK AND CO.**, a New York corporation (**"Tenant"**).

## RECITALS:

A.  Capitol Ventures, an Illinois partnership (the **"Original Landlord"**) and Tenant entered into a Lease dated as of June 21, 1995 which has been amended by a Lease Supplement dated December 18, 1995 and First Amendment to Lease dated July 22, 2005, and which was assigned by Original Landlord to CK Properties, Inc., an Illinois corporation (**"Prior Landlord"**), and further assigned by said Prior Landlord to Landlord (hereinafter collectively referred to as the **"Lease"**) for the lease by Tenant of certain property, with improvements located thereon, consisting of that certain building space of approximately 24,480 square feet, located at 7310 West 87th Street, in the City of Bridgeview, County of Cook, State of Illinois, which property is more specifically described in the Lease (the **"Demised Premises"**) together with all privileges, appurtenances, equipment, machinery, fixtures and any other improvements now or hereafter situated on, belonging or appertaining to the Demises Premises, ingress and egress to the public roads, rights in the Common Areas (as that term is used and defined in the Lease) and such other rights and easements as more fully set forth in the Lease.

B.  Currently, Tenant is leasing the Demised Premises from Landlord in accordance with the terms and conditions of the Lease for the term (**"Second Option Term"**) which commenced on November 13, 2007 and which ended on November 12, 2012.

C.  Landlord and Tenant desire to retroactively extend the expiration date of the Second Option Term for a period of six (6) months (the **"Extension Term"**) while Landlord and Tenant negotiate a reduction in the square footage of the Demised Premises under the Lease.

D.  Landlord and Tenant hereto desire to recognize the granting of the Extension Term and amend the Lease in certain respects as provided herein.

    **NOW THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree that the Lease is extended and amended as follows:

1. **Incorporation of Recitals**.  The foregoing recitals are hereby incorporated as if fully rewritten and restated at length herein.

2. **Capitalized Terms**.  Capitalized terms used, but not defined in this Amendment, shall have the same meaning ascribed to such defined terms in the Lease.

3. **Extension of the Second Option Term**.  Section 3(a) (Term) of the Lease provides that the Second Option Term shall be for a period of five (5) years, commencing on November 13, 2007 and ending on November 12, 2012.  The expiration date of Second Option Term is hereby extended for six (6) months, commencing on November 13, 2012 and ending on May 12, 2013, and such six-month term shall be referred to hereafter as the Extension Term. The parties agree that Tenant shall retain the two (2) remaining options as set forth in Section 3(a) of the Lease, both of which are for a period of five (5) years as indicated therein.

4. **Rent for the Extension Term**.  The rent due and payable by Tenant to Landlord for the Extension Term shall remain at $19,980.00 per month ($9.75 square foot annually).

5. **Miscellaneous.**

a)  <u>Continuance of Lease</u>.  The Lease, as amended hereby, shall be deemed to be continuing and in full force and effect, and this Amendment is not intended to be a new contract between the parties.

b)  <u>Successors and Assigns</u>.  This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

c)  <u>Entire Agreement</u>.  This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein.  There have been no additional oral or written representations or agreements with respect to the matters set forth herein.  In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

d)  <u>Time is of the Essence</u>.  Time is of the essence for this Amendment and the Lease and each provision hereof.

e)  <u>No Presumption Against Drafter</u>.  This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document.  The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

f)  <u>Tenant's Authority</u>.  Tenant represents and warrants that Tenant has the full right, power and authority to enter into this Amendment and does not need the consent of any party.

g)    <u>Landlord's Authority</u>. Landlord represents and warrants that it is the successor in interest to the Prior Landlord as the landlord under the Lease, and that Landlord has the full power and authority to enter into this Amendment and to amend the Lease and that Landlord does not need the consent of any lender holding a mortgage or a deed of trust on the Demised Premises or any other party.

h)    <u>Severability</u>.  If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

i)    <u>Counterpart Signatures</u>.  This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument.  Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be binding upon any party until this document has been executed by all parties thereto.


    **IN WITNESS WHEREOF**, the parties have executed this Third Amendment to Lease as of the day and year first above written.

                    **LANDLORD:**

                    **THE DEMETRIOS L. KOZONIS TRUST DATED JANUARY 29, 1996**, sole beneficiary with power of direction of Parkway Bank and Trust, as Trustee, under Trust Agreement dated December 11, 2001 and known as Trust Number 13151

                    By: _____
                         DEMETRIOS L. KOZONIS, TRUSTEE


                    **TENANT:**

                    **SEARS, ROEBUCK AND CO.,**
                    a New York corporation


                    By: _____
                         James B. Terrell
                         Vice President – Real Estate

DMLIB-#399794-v1-Bridgeview_IL_PRS#8350_Third_Amendment_to_Lease

## FOURTH AMENDMENT TO LEASE
### *(Sears PRS and CCN No. 8350, Bridgeview, IL)*

**THIS FOURTH AMENDMENT TO LEASE** (this **"Amendment"**) is made as of this 30th day of June, 2013, by and between **DEMETRIOS L. KOZONIS, TRUSTEE OF THE DEMETRIOS L. KOZONIS TRUST DATED JANUARY 29, 1996**, sole beneficiary with power of direction of Parkway Bank and Trust, as Trustee, under Trust Agreement dated December 11, 2001 and known as Trust Number 13151(**"Landlord"**), and **SEARS, ROEBUCK AND CO.**, a New York corporation (**"Tenant"**).

## RECITALS:

A.  Capitol Ventures, an Illinois partnership (the **"Original Landlord"**) and Tenant entered into a Lease dated as of June 21, 1995 which has been amended by a Lease Supplement dated December 18, 1995 and First Amendment to Lease dated July 22, 2005, and which was assigned by Original Landlord to CK Properties, Inc., an Illinois corporation (**"Prior Landlord"**), and further assigned by said Prior Landlord to Landlord (hereinafter collectively referred to as the **"Lease"**) for the lease by Tenant of certain property, with improvements located thereon, consisting of that certain building space of approximately 24,480 square feet, located at 7310 West 87th Street, in the City of Bridgeview, County of Cook, State of Illinois, which property is more specifically described in the Lease (the **"Demised Premises"**) together with all privileges, appurtenances, equipment, machinery, fixtures and any other improvements now or hereafter situated on, belonging or appertaining to the Demises Premises, ingress and egress to the public roads, rights in the Common Areas (as that term is used and defined in the Lease) and such other rights and easements as more fully set forth in the Lease.

B.  Currently, Tenant is leasing the Demised Premises from Landlord in accordance with the terms and conditions of the Lease for the term (**"Second Option Term"**), as extended by the Third Amendment to Lease dated November 29, 2012, which commenced on November 13, 2007 and which ended on May 12, 2013.

C.  Landlord and Tenant desire to retroactively extend the expiration date of the Second Option Term, as previously extended, for a period of three (3) years (the **"Extension Term"**).

D.  Landlord and Tenant hereto desire to recognize the granting of the Extension Term and amend the Lease in certain respects as provided herein.

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree that the Lease is extended and amended as follows:

1. **Incorporation of Recitals**.  The foregoing recitals are hereby incorporated as if fully rewritten and restated at length herein.

2. **Capitalized Terms**.  Capitalized terms used, but not defined in this Amendment, shall have the same meaning ascribed to such defined terms in the Lease.

3. **Extension of the Second Option Term**.  Section 3(a) (Term) of the Lease provides that the Second Option Term shall be for a period of five (5) years, commencing on November 13, 2007 and ending, as extended by the Third Amendment to the Lease dated November 29, 2012, on May 12, 2013.  The expiration date of Second Option Term is hereby extended for three (3) years, commencing on May 13, 2013 and ending on May 12, 2016, and such three-year term shall be referred to hereafter as the Extension Term. The parties agree that Tenant shall retain one (1) remaining option as set forth in Section 3(a) of the Lease, which is for a period of five (5) years as indicated therein.

4. **Premises for the Extension Term**.  Section 1(a) of the Lease is hereby amended to provide that during the Extension Term, and any further extended terms, the Demised Premises shall be reduced to 17,608 square feet, consisting of approximately 13,409 square feet located on the first floor and 4,199 square feet located on the mezzanine level, as identified on the attached Exhibit A.

5. **Rent for the Extension Term**.  Section 4 (Rent) of the Lease is hereby amended to provide that rent due and payable by Tenant to Landlord for the Extension Term shall be $13,341.33 per month, and payable upon the same terms and conditions contained in the Lease. Rent shall increase at a rate of three percent (3%) per annum during the option term, if any, and payable upon the same terms and conditions contained in the Lease.

6. **Improvements**.  Landlord shall at its sole cost and expense demise the reduced Demised Premises (including demising wall, separate utility meters and dedicated HVAC units) (the "**Landlord's Work**").  Landlord's Work shall be completed in a good and workmanlike manner, and shall be in compliance with all applicable laws, codes and regulations of the City of Bridgeview, County of Cook and State of Illinois.  Tenant agrees to cooperate with Landlord, Landlord's contractors and/or representatives by providing access to the Demised Premises during Landlord's Work.  Such Landlord's Work shall be completed by Landlord within ninety (90) days of the date hereof (the "**Completion Date**").  Landlord shall perform Landlord's Work at a time agreed upon, in writing, in order to minimize any disruption to Tenant's business operations.  If Landlord fails to so complete any portion or stage of Landlord's Work by the Completion Date, as defined herein, then Tenant shall have the right, at Tenant's sole option, to extend the period within which Landlord may complete Landlord's Work, or any portion thereof.

7. **H.V.A.C.**  During the Extension Term (and any further extended terms), Landlord shall continue to maintain, repair and/or replace the H.V.A.C. in the new Demised Premises pursuant to Section 10(a)(i) of the Lease.  During the Extension Term (and any further extended terms), Tenant shall continue to maintain and/or repair the H.V.A.C. in the new Demised Premises pursuant to Section 10(b)(iii) of the Lease.

8. **Tenant's Proportionate Share.**  During the Extension Term, (and any further extended terms), Tenant's proportionate share of common area expenses, real estate taxes, insurance, utilities and the like (as defined in the Lease), shall be adjusted accordingly and based upon the square footage of the reduced Demised Premises.

9. **Miscellaneous.**

a)  Continuance of Lease.  The Lease, as amended hereby, shall be deemed to be continuing and in full force and effect, and this Amendment is not intended to be a new contract between the parties.

b)  Successors and Assigns.  This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

c)  Entire Agreement.  This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein.  There have been no additional oral or written representations or agreements with respect to the matters set forth herein.  In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

d)  Time is of the Essence.  Time is of the essence for this Amendment and the Lease and each provision hereof.

e)  No Presumption Against Drafter.  This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document.  The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

f)  Tenant's Authority.  Tenant represents and warrants that Tenant has the full right, power and authority to enter into this Amendment and does not need the consent of any party.

g)  Landlord's Authority.  Landlord represents and warrants that it is the successor in interest to the Prior Landlord as the landlord under the Lease, and that Landlord has the full power and authority to enter into this Amendment and to amend the Lease and that Landlord does not need the consent of any lender holding a mortgage or a deed of trust on the Demised Premises or any other party.

h)  Severability.  If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

i)      Counterpart Signatures.  This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument.  Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be binding upon any party until this document has been executed by all parties thereto.

**IN WITNESS WHEREOF**, the parties have executed this Third Amendment to Lease as of the day and year first above written.

LANDLORD:

**THE DEMETRIOS L. KOZONIS TRUST DATED JANUARY 29, 1996,** sole beneficiary with power of direction of Parkway Bank and Trust, as Trustee, under Trust Agreement dated December 11, 2001 and known as Trust Number 13137

By: _____
     DEMETRIOS L. KOZONIS, TRUSTEE

TENANT:

**SEARS, ROEBUCK AND CO.,** a New York corporation

By:_____
     James B. Terrell
     Vice President – Real Estate

REAL ESTATE
J. M.
LEGAL
VR

## FIFTH AMENDMENT TO LEASE
*(Sears PRS and CCN No. 8350, Bridgeview, IL)*

**THIS FIFTH AMENDMENT TO LEASE** (this "**Amendment**") is made as of this *18th* day of *December*, 2015, by and between **DEMETRIOS L. KOZONIS, TRUSTEE OF THE DEMETRIOS L. KOZONIS TRUST DATED JANUARY 29, 1996**, sole beneficiary with power of direction of Parkway Bank and Trust, as Trustee, under Trust Agreement dated December 11, 2001 and known as Trust Number 13151("**Landlord**"), and **SEARS, ROEBUCK AND CO.**, a New York corporation ("**Tenant**").

## RECITALS:

A. Capitol Ventures, an Illinois partnership (the "**Original Landlord**") and Tenant entered into a Lease dated as of June 21, 1995 which has been amended by a Lease Supplement dated December 18, 1995, First Amendment to Lease dated July 22, 2005, Second Amendment to Lease dated July 29, 2007, Third Amendment to Lease dated November 29, 2012, and Fourth Amendment to Lease dated June 30, 2013, and which was assigned by Original Landlord to CK Properties, Inc., an Illinois corporation ("**Prior Landlord**"), and further assigned by said Prior Landlord to Landlord (hereinafter collectively referred to as the "**Lease**") for the lease by Tenant of certain property, located at 7310 West 87th Street, in the City of Bridgeview, County of Cook, State of Illinois, which property is more specifically described in the Lease (the "**Demised Premises**") together with all privileges, appurtenances, equipment, machinery, fixtures and any other improvements now or hereafter situated on, belonging or appertaining to the Demises Premises, ingress and egress to the public roads, rights in the Common Areas (as that term is used and defined in the Lease) and such other rights and easements as more fully set forth in the Lease.

B. The current term of the Lease expires May 12, 2016 (the "**Term**").

C. Landlord and Tenant desire to extend the expiration date of the Term for a period of three (3) years.

D. The Parties desire to extend and amend the Term of the Lease upon the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree that the Lease is extended and amended as follows:

1. **Incorporation of Recitals**. The foregoing recitals are hereby incorporated as if fully rewritten and restated at length herein.

2. **Capitalized Terms**. Capitalized terms used, but not defined in this Amendment, shall have the same meaning ascribed to such defined terms in the Lease.

3.  **Extension of Term**. The Lease Term is hereby extended for a period of three (3) years, from May 13, 2016 up to and including May 12, 2019 (the "**Extended Term**") on the terms and conditions set forth in the Lease, as amended hereby.  Landlord and Tenant agree that all options to extend the Term of the Lease previously granted to Tenant are no longer in effect.  All references in the Lease to the "Term" shall be deemed to include the Extended Term.

4.  **Rent.**  Section 4 of the Lease is amended to provide that during the Extended Term, the Rent is a follows:

| Period | Monthly | Annual |
|---|---|---|
| 5/13/2016 through 5/12/2017 | $13,646.20 | $163,754.40 |
| 5/13/2017 through 5/12/2018 | $13,987.36 | $167,848.32 |
| 5/13/2018 through 5/12/2019 | $14,337.04 | $172,044.48 |

Rent during the Extended Term shall be payable at the times and in the manner set forth in the Lease.

5.  **Miscellaneous.**

a)  Continuance of Lease.  The Lease, as amended hereby, shall be deemed to be continuing and in full force and effect, and this Amendment is not intended to be a new contract between the parties.

b)  Successors and Assigns.  This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

c)  Entire Agreement.  This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein.  There have been no additional oral or written representations or agreements with respect to the matters set forth herein.  In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

d)  Time is of the Essence.  Time is of the essence for this Amendment and the Lease and each provision hereof.

e)  No Presumption Against Drafter.  This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document.  The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

f)  Tenant's Authority.  Tenant represents and warrants that Tenant has the full right, power and authority to enter into this Amendment and does not need the consent of any party.

g)      <u>Landlord's Authority</u>. Landlord represents and warrants that it is the successor in interest to the Prior Landlord as the landlord under the Lease, and that Landlord has the full power and authority to enter into this Amendment and to amend the Lease and that Landlord does not need the consent of any lender holding a mortgage or a deed of trust on the Demised Premises or any other party.

h)      <u>Severability</u>.  If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

i)      <u>Counterpart Signatures</u>.  This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument.  Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be binding upon any party until this document has been executed by all parties thereto.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

**IN WITNESS WHEREOF**, the parties have executed this Third Amendment to Lease as of the day and year first above written.

**LANDLORD:**

**THE DEMETRIOS L. KOZONIS TRUST DATED JANUARY 29, 1996**, sole beneficiary with power of direction of Parkway Bank and Trust, as Trustee, under Trust Agreement dated December 11, 2001 and known as Trust Number 13151

By:_____
　　　DEMETRIOS L. KOZONIS, TRUSTEE

**TENANT:**

**SEARS, ROEBUCK AND CO.**, a New York corporation

By:_____
Name:_____ Alan F. Shaw
Its:_____ Authorized Representative

REAL ESTATE
LEGAL