**Hearing Date and Time: April 18, 2019 at 10:00 a.m. (Eastern Time)**
**Response Deadline: April 11, 2019 at 4:00 p.m. (Eastern Time)**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Sean A. O'Neal, Esq.
Luke A. Barefoot, Esq.
Katherine R. Lynch, Esq.
*Attorneys for ESL Investments Inc. and certain of its affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | |
| | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | |
| | **Case No. 18-23538 (RDD)** |
| **Debtors.[1]** | **(Jointly Administered)** |

# JOINDER OF ESL INVESTMENTS, INC. TO MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**AGENT TO PROHIBIT OR CONDITION DEBTORS' CONTINUED USE OF COLLATERAL, INCLUDING CASH COLLATERAL**

ESL Investments, Inc. and certain of its affiliated entities (including JPP, LLC and JPP II, LLC (collectively, "ESL")) in their capacities as creditors of Sears Holdings Corporation and certain of its affiliates (collectively, "Sears" or the "Debtors"), by its undersigned counsel, hereby files this joinder (the "Joinder") to the *Motion of Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent to Prohibit or Condition Debtors' Continued Use of Collateral, Including Cash Collateral* (the "Wilmington Motion") (ECF No. 3050). In support of this Joinder, ESL respectfully states as follows:

**PRELIMINARY STATEMENT**

1. ESL joins the Wilmington Motion in order to preserve the benefit of Prepetition Second Lien Adequate Protection Liens[2] and to prevent the continued diminution of ESL's collateral in contravention of this Court's orders and the Bankruptcy Code's priority scheme. ESL is the largest holder of Prepetition Second Lien Notes, the security for which was primed when the Debtors received debtor-in-possession financing. As a result, Second Lien Notes Holders were granted adequate protection in the form of super-priority replacement liens. Despite these protections, the collateral that is subject to the Prepetition Second Lien Adequate Protection Liens has been used by the Debtors to fund their ongoing operating and restructuring expenses, which are junior in right, without regard to the protections that the Final DIP Order was intended to ensure. ESL joins in the relief sought by the Wilmington Motion, and requests that the Court enter an order prohibiting or conditioning the Debtors' continued use of such

[2] Initially capitalized terms in this preliminary statement have the meanings accorded to them herein.

collateral until the parties agree on a budget and on the provision of sufficient adequate protection.

## BACKGROUND

2. On November 30, 2018 the Bankruptcy Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay and (IV) Granting Related Relief* (the "Final DIP Order")[3] (ECF No. 955).

3. Pursuant to section 507(b) of the Bankruptcy Code, the Final DIP Order grants as adequate protection of the interests of the Prepetition Second Lien Credit Parties, including ESL, in Prepetition Second Lien Collateral, valid and perfected replacement and additional security interests in, and liens on, all DIP ABL Collateral owned by the Prepetition Second Lien Loan Parties ("Prepetition Second Lien Adequate Protection Liens"). *See* Final DIP Order ¶ 17(d). Therefore, the Prepetition Second Lien Adequate Protection Liens include liens on, among other things, the Debtors' inventory.

4. The Prepetition Second Line Adequate Protection Liens are senior in priority to all administrative claims. *See* 11 U.S.C. § 507(b); *see also* Final DIP Order ¶ 18(d) ("Except as set forth herein, the Prepetition Second Lien Facilities Adequate Protection Claims shall have priority over all administrative expense claims and priority general unsecured claims against the Prepetition Second Lien Loan Parties or their estates, now existing or hereafter arising, to the fullest extent permitted by the Bankruptcy Code . . . .").

[3] Capitalized terms used but not defined herein have the meaning ascribed to them in the Final DIP Order.

5.  The Final DIP Order also established a Winddown Account, to be funded with the sales of Prepetition Unencumbered Collateral up to $240,000,000. *See* Final DIP Order ¶ 23. This money was to be separate from the DIP ABL Collateral, Junior DIP Collateral and Cash Collateral and to be " used only to satisfy winddown costs." *See id.* To further protect the interests of the Prepetition Second Lien Credit Parties, the Final DIP Order required the Debtors to "establish reasonable procedures . . . to trace cash proceeds from the sale of inventory of the Debtors and to track liabilities and payables of the Debtors, including shared services and professional fees and costs . . . and to report the same to Creditors' Committee, the DIP ABL Agents and the Prepetition Second Lien Credit Parties on a monthly basis." *Id.* ¶ 39.

6.  With respect to the to the use of Prepetition ABL Collateral (including Cash Collateral), the Final DIP Order authorized the use of such Collateral "[s]ubject to and consistent with" among other conditions, the terms of an Approved Budget. *Id.* ¶ 2; *see also id.* ¶ O(e) ("The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents and <u>solely in accordance with the Approved Budget</u> . . . .") (emphasis added).

7.  Upon information and belief, the DIP ABL Collateral owned by the Prepetition Second Lien Loan Parties has diminished in value by hundreds of millions of dollars since the Petition Date. Indeed, ESL's replacement collateral continues to diminish in value each day. Specifically, as the Debtors have continued to sell their inventory, the property to which the Prepetition Second Lien Adequate Protection Liens has attached has steadily been converted to cash. However, rather than segregate or account for these proceeds of the Prepetition Second Lien Adequate Protection Liens (or use the Winddown Account for its Court-approved purpose),

the Debtors have continued to use this cash to fund operating losses and the expenses of case administration.

8. On March 20, 2019, ESL, in an effort to preserve its interests in the Prepetition Second Lien Adequate Protection Liens, sent a letter to the Debtors' counsel requesting, among other relief, the establishment of a budget that would govern future use by the Debtors of the assets subject to the Prepetition Second Lien Adequate Protection Liens, to be approved by the Prepetition Second Lien Credit Parties, and an accounting of the current amounts of the proceeds of such collateral and of the Winddown Account. *See* Ex. A to Declaration of Katherine R. Lynch in Support of Joinder, dated April 11, 2019 and filed herewith ("Lynch Decl."), March 20, 2019 Letter from ESL's Counsel to the Debtors' Counsel.

9. The Debtors' counsel responded by letter dated April 4, 2019, and asserted without any accompanying support that they "do not believe there has been any diminution in value of ESL's collateral" and "the onus is on ESL to prove otherwise." *See* Ex. B to Lynch Decl., April 4, 2019 Letter from the Debtors' Counsel to ESL's Counsel at 2. The Debtors further took the position that they maintain a post-sale transaction budget, which has been undisclosed, but that they are willing to share with ESL. This communication also represented that the Winddown Account continues to contain approximately $93 million. *Id.* at 3-4.

10. ESL responded by letter dated April 9, 2019. Among other points, ESL noted that the unofficial and undisclosed post-sale transaction budget proffered by the Debtors' counsel does not satisfy the requirement in the Final DIP Order authorizing the Debtors to use the Prepetition ABL Collateral (including Cash Collateral) <u>only</u> "subject to and consistent with" among other conditions, the terms of an Approved Budget. *See* Ex. C to Lynch Decl., April 9, 2019 Letter from ESL's Counsel to the Debtors' Counsel at 1 (quoting Final DIP Order ¶ 2).

Additionally, the Debtors' accounting of the Winddown Account suggests that the Debtors are not currently drawing any funds from such account to pay their substantial ongoing expenses, but instead are using the very Cash Collateral that comprises Prepetition Collateral, without the consent of the Collateral Agent or the Prepetition Second Lien Notes Holders. *Id.* at 2.[4]

## JOINDER

11. As set forth in the Wilmington Motion and explained further below, the Debtors' current use of the Cash Collateral fails to comply with the terms (much less the intent) of the Final DIP Order and section 507(b) of the Bankruptcy Code. Instead, such use of Cash Collateral renders illusory the protections that the Final DIP Order provides to Prepetition Second Lien Notes Holders.

12. First, the Debtors do not retain authority to use the Prepetition ABL Collateral (including Cash Collateral) because the Approved Budget expired on February 16, 2019, and the Final DIP Order only authorizes the use of such Collateral "subject to and consistent with" among other conditions, the terms of the Approved Budget. Final DIP Order ¶ 2; *see also id.* ¶ O(e). ("The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents and solely in accordance with the Approved Budget . . . .") (emphasis added). While the Debtors now purport to be operating under some "post-sale transaction budget" of their own devise, *see* Ex. B to Lynch Decl., April 4, 2019 Letter from the Debtors' Counsel to ESL's Counsel at 3, an unapproved and undisclosed budget cannot substitute for the Final DIP Order's explicit requirement that the Debtors' operate in accordance

[4] As of the date of this Joinder, the Debtors have not responded to ESL's April 9 Letter.

with an Approved Budget. Nor can a budget that has been undisclosed and unapproved serve the purposes it was intended to serve – namely, to protect and preserve the Cash Collateral.

13. Second, the Debtors' position ignores the priority established by section 507(b) of the Bankruptcy Code and the Final DIP Order by allowing them to use or sell the assets securing the senior Prepetition Second Lien Adequate Protection Liens to pay ongoing junior administrative expense claims. Upon information and belief, the Debtors' key assets following the Sale Transaction include inventory at the GOB stores, which forms part of the Prepetition ABL Collateral, and which the Debtors have since reduced to Cash Collateral. Any use by the Debtors of this Cash Collateral resulting from the sale of inventory directly diminishes the value of the Prepetition Second Lien Adequate Protection Liens.

14. Rather than use the Cash Collateral comprising Prepetition ABL Collateral, the Debtors should be using the Winddown Account to pay their substantial ongoing expenses.[5] Indeed, as set forth in the Final DIP Order, the Winddown Account was funded with the cash proceeds of sales of Prepetition Unencumbered Collateral, and was established precisely for the payment of such winddown expenses following the closing of the Sale. *See* Final DIP Order ¶ 23.[6] However, the Debtors' accounting of the Winddown Account includes all of the proceeds of such sales since the Petition Date, and none of such proceeds have been used for the Debtors'

---

5 *See* Hr'g. Tr. 51:15-16, Mar. 21, 2019 (Counsel for the Debtors stated that need for disputed funds was not immediate because "[t]here is cash. You know, there's the wind-down account that has close to $90 million.").

6 A "wind down" period is commonly understood to be the period in which a debtor gradually closes and liquidates its operations. *See In re Caldor, Inc.–NY*, 240 B.R. 180, 183 (Bankr. S.D.N.Y. 1999) (describing period in which chapter 11 debtor gradually closed its business operations and sold its inventory and substantially all assets as "wind-down" period), *aff'd sub nom. Pearl–Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575 (S.D.N.Y. 2001); *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 353 (S.D.N.Y. 2012) (describing "Wind-Down Order" that approved a loan "to finance the wind-down in bankruptcy of the estate's assets and liabilities after the sale of its viable assets"); *Wind down*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/wind%20down (last visited Apr. 10, 2019) ("to draw gradually toward an end").

ongoing wind-down. *See* Ex. B to Lynch Decl., April 4, 2019 Letter from the Debtors' Counsel to ESL's Counsel at 4.[7] Accordingly, the Debtors are not using the Winddown Account for its intended purpose, and instead appear to be drawing from the Cash Collateral that is subject to the Prepetition Second Lien Facilities Adequate Protection Claims, in clear violation of the Bankruptcy Code's superpriority treatment afforded to adequate protection liens and claims. The continued use of this collateral only underscores the critical and urgent need for the relief sought by the Wilmington Motion.

15. This is no trivial matter, as the Debtors' ongoing administrative expenses are substantial. The amounts being spent out of the Cash Collateral, while leaving the Winddown Account untouched, include a total of approximately $85 million in professional fees to date, of which over $15 million was billed for January 2019 alone.[8] While the Debtors suggest no diminution in value, each and every payment rendered further diminishes the value of the Prepetition Second Lien Adequate Protection Liens.

---

[7] *See also Order (I) Approving the Sale of Certain Real Property, (II) Authorizing the Assumption and Assignment of Certain Unexpired Leases in Connection Therewith, and (III) Granting Related Relief*, ECF No. 1392 (funding the Winddown Account with approximately $7 million in proceeds from the "U-Haul" sale); *Order Denying Motion to Invalidate the Sale of Lockup of Medium-Term Intercompany Notes and Granting Retroactive Approval of Lockup Provision*, ECF No. 1481 (funding the Winddown Account with approximately $81 million from the proceeds of the sale of Sears Roebuck Acceptance Corp. medium term notes); *Order Approving Bidding Procedures for Sale of Sears Home Improvement Business, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for and Hearing to Approve Sale of Sears Home Improvement Business, (D) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (E) Approving Assumption and Assignment Procedures, (II) Approving the Sale of Sears Home Improvement Business in Accordance with the Stalking Horse Agreement and (III) Granting Related Relief*, ECF No. 775 (establishing a ten percent good faith deposit for the sale of the Sears Home Improvement Business, which would be forfeited should the sale not be consummated).

[8] *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 through January 31, 2019*, ECF No. 3063 (requesting approximately $6 million in fees and expenses after 20% holdback); *Second Monthly Fee Statement of Wachtell, Lipton, Rosen & Katz for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for Debtors for The Period from January 1, 2019 Through March 18, 2019*, ECF No. 3085 (requesting approximately $300,000 in fees and expenses after holdback); *Fourth Monthly Fee Statement of Weil, Gotshal & Manges LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for Debtors for the Period from January 1, 2019 through January 31, 2019*, ECF No. 3084 (requesting approximately $9.5 million in fees and expenses after holdback).

16.     Moreover, even though the Debtors claim that the burden is on ESL to demonstrate how its collateral is diminishing in value, the Debtors are in breach of their own obligations under the Final DIP Order to trace and provide monthly accountings of the cash proceeds of the sale of inventory. The Final DIP Order states:

> The Debtors shall establish reasonable procedures (reasonably acceptable to the Creditors' Committee, the DIP ABL Agents, and the Prepetition Second Lien Credit Parties) to trace cash proceeds from the sale of inventory of the Debtors and to track liabilities and payables of the Debtors, including shared services and professional fees and costs (collectively, the "Allocable Costs"), on an entity by entity basis, including without limitation between obligors and non-obligors under the Prepetition Second Lien Obligations, and to report the same to the Creditors' Committee, the DIP ABL Agents and the Prepetition Second Lien Credit Parties on a monthly basis.

Final DIP Order ¶ 39. To date, neither ESL nor the Collateral Agent has received any reports, monthly or otherwise, regarding the Debtors' use of the Cash Collateral, nor any information regarding the procedures that the Debtors are using to trace the proceeds of the sale of Prepetition ABL Collateral.

17.     The holders of the Prepetition Second Lien Facilities Adequate Protection Claims have an equitable and legal right to repayment of any Collateral that is subject to the Prepetition Second Lien Adequate Protection Liens that was used in violation of the Final DIP Order and the Bankruptcy Code priority scheme. To the extent that any such Collateral was used when the Winddown Account funds should have been used, the Prepetition Second Lien Credit Parties should be repaid, or at a minimum such funds should be held in reserve for payment under the chapter 11 plan. Nothing in the Final DIP Order excuses the Debtors from their obligation under the Bankruptcy Code to observe the priority scheme and pay section 507(b) claims in full.

WHEREFORE, for all of the foregoing reasons, ESL respectfully requests that this Court (a) grant the Wilmington Motion, (b) enter an order prohibiting or conditioning the Debtors' continued use of the Prepetition ABL Collateral (including Cash Collateral), unless and until the

Debtors are able to reach an agreement with the Prepetition Second Lien Collateral Agent and the Prepetition Second Lien Credit Parties on a budget for use of such Cash Collateral, and (c) grant such other relief as the Court deems just, proper and equitable.

Dated: April 11, 2018
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ Sean O'Neal

Sean A. O'Neal
Luke A. Barefoot
Katherine R. Lynch
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for ESL*