UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                          :
In re:                                    :        Chapter 11
                                          :
SEARS HOLDINGS CORPORATION, *et al.*,[1]  :
                                          :        Case No. 18-23538-rdd
                    Debtors.              :
                                          :        (Jointly Administered)
                                          :
------------------------------------------------------------X

### DECLARATION OF KATHERINE R. LYNCH IN SUPPORT OF ESL INVESTMENTS, INC'S JOINDER TO MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL AGENT TO PROHIBIT OR CONDITION DEBTORS' CONTINUED USE OF COLLATERAL, INCLUDING CASH COLLATERAL

I, Katherine R. Lynch, declare under penalty of perjury as follows:

1.     I am an attorney duly admitted to practice before this Court, and I am an associate

of the law firm Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), counsel for ESL

Investments, Inc. and certain of its affiliated entities (including JPP, LLC and JPP II, LLC

(collectively "ESL")).  I respectfully submit this declaration in connection with the ESL's

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

*Joinder to Motion of Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent to Prohibit or Condition Debtors' Continued Use of Collateral, Including Cash Collateral* (ECF No. 3050) (the "Wilmington Motion").

2.      Attached hereto as Exhibit A is a true and correct copy of the Letter from Cleary Gottlieb to Weil, Gotshal & Manges LLP ("Weil"), dated March 20, 2019.

3.      Attached hereto as Exhibit B is a true and correct copy of the Letter from Weil to Cleary Gottlieb, dated April 4, 2019.

4.      Attached hereto as Exhibit C is a true and correct copy of the Letter from Cleary Gottlieb to Weil, dated April 9, 2019.


Executed on April 11, 2019 in New York, New York.


Respectfully submitted,


*/s/ Katherine R. Lynch*
Katherine R. Lynch

# Exhibit A

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2829
lbarefoot@cgsh.com

March 20, 2019

<u>VIA E-MAIL</u>

Ray C. Schrock, P.C.
Sunny Singh, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Re: <u>Adequate Protection</u>

Dear Messrs. Schrock and Singh:

We write on behalf of ESL Investments, Inc. and its affiliated investment funds (together, "<u>ESL</u>") in connection with the bankruptcy of Sears Holdings Corporation and certain of its affiliates (together, the "<u>Debtors</u>"). As you will recall, on November 30, 2018, the Bankruptcy Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief*, ECF No. 952 (the "<u>Final ABL DIP Order</u>").[1]

Pursuant to paragraph 18(d) of the Final ABL DIP Order, the Prepetition Second Lien Credit Parties, including ESL, were granted valid and perfected replacement and additional security interests in, and liens on (the "<u>Prepetition Second Lien Adequate Protection Liens</u>"), all DIP ABL Collateral owned by the Prepetition Second Lien Loan Parties. With respect to the Prepetition ABL Collateral, which includes, among other things, inventory, the Prepetition Second Lien Adequate Protection Liens were junior only to the Carve-Out, Senior Permitted Liens, DIP ABL Liens, Prepetition ABL Facilities Adequate Protection Liens, 2018 FILO Adequate Protection Liens, Prepetition LC Facility Adequate Protection Liens, Prepetition ABL

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Final ABL DIP Order.

Mr. Schrock,
Mr. Singh, p. 2

Liens and Postpetition Intercompany Liens.  With the exception of the Postpetition
Intercompany Liens, the obligations benefitting from liens senior to the Prepetition Second Lien
Adequate Protection Liens have now been paid in full or are otherwise not outstanding.

In addition, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition
Second Lien Adequate Protection Liens are senior in priority to all administrative claims.  *See* 11
U.S.C. § 507(b).  The Final DIP Order reinforces the order of priority established by section
507(b) by stating "[e]xcept as set forth herein, the Prepetition Second Lien Facilities Adequate
Protection Claims *shall have priority over all administrative expense claims* and priority general
unsecured claims against the Prepetition Second Lien Loan Parties or their estates, now existing
or hereafter arising, to the fullest extent permitted by the Bankruptcy Code. . . ."  Final DIP
Order, ¶ 18(d) (emphasis added). Despite the Debtors' past assertions to the contrary, there is no
reasoned support for the argument that the Debtors may ignore the order of priority established
by section 507(b) or the Final DIP Order by simply using or selling the assets securing these
claims and liens.

The Prepetition ABL Collateral has diminished in value by hundreds of millions
of dollars since the Petition Date and the value of ESL's replacement collateral continues to
diminish in value every day.  Section 363(e) permits an entity with an interest in property that is
being used or sold to request that such sale or use be prohibited or otherwise conditioned to
provide adequate protection.  Accordingly, we hereby demand that the Debtors immediately take
steps to protect the value of the Prepetition Second Lien Adequate Protection Liens and avoid
further diminution without ESL's consent.  Such steps should include, *inter alia*, (1) a budget
that shall govern future use by the Debtors of the assets subject to the Prepetition Second Lien
Adequate Protection Liens, to be approved by the Prepetition Second Lien Credit Parties, (2) a
reserve fund for the repayment of the Prepetition Second Lien Obligations and (3) an accounting
of the current amount of the Winddown Account, as well as any uses of, or claims asserted
against, the Winddown Account.

We believe these measures are appropriate given our claims' seniority and the
rapidly declining value of our client's collateral but we remain available to discuss other forms
of protection that the Debtors may propose.  We look forward to your response.

Sincerely,

Luke A. Barefoot

# Exhibit B

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Ray C. Schrock, P.C.**
+1 (212) 310-8210
ray.schrock@weil.com

April 4, 2019

VIA E-MAIL

Luke A. Barefoot
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 1006-1470

Re:    *In re Sears Holdings Corporation,* et al.

Dear Luke:

    We are in receipt of your letter dated March 20, 2019 (the "**Mar. 20 Letter**") requesting additional adequate protection from Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**" or "**Sears**") on behalf of from ESL Investments, Inc. and its affiliated investment funds (together, "**ESL**").

    First, we note your failure to recognize that the Debtors maintain authority to use Prepetition ABL Collateral (including Cash Collateral)[1] in accordance with the terms of the Final DIP Order, including the Court-approved adequate protection package for the Prepetition Second Lien Credit Parties.  The provisions of the Final DIP Order, which provide the Debtors with authorization to use Cash Collateral, remain in full effect:

> "Subject to and consistent with the terms of the DIP ABL Loan Documents, the DIP Orders, and the Approved Budget, the DIP ABL

---

[1] Capitalized terms used herein but not otherwise defined shall have such meaning as set forth in the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [ECF No. 955] (the "**Final DIP Order**").

**Weil, Gotshal & Manges LLP**

Page 2

> Loan Parties are hereby authorized to use the Prepetition ABL Collateral
> (including Cash Collateral) until the Termination Date to the extent set
> forth herein. . ."

Final DIP Order ¶ 2. There was no Termination Notice delivered and no Termination Date has
occurred. The Debtors' current use of Cash Collateral is in compliance with the applicable provisions of
the Final DIP Order. The Debtors are therefore not "ignoring the priority" established by section 507(b)
of the Bankruptcy Code or the Final DIP Order by "using or selling the assets" securing the Prepetition
Second Lien Adequate Protection Liens. On the contrary, the Debtors have express permission pursuant
to the Final DIP Order to use collateral securing the Prepetition Second Lien Adequate Protection Liens
and Prepetition Second Lien Facilities Adequate Protection Claims.

Further, the Final DIP Order already provides for adequate protection of the interests of the
Prepetition Second Lien Credit Parties. Final DIP Order ¶¶ 17-19. The Debtors are perplexed that ESL
is now asserting additional requested adequate protection, without any basis. That is particularly the
case given that ESL has not established *any* diminution in the value of their collateral notwithstanding its
bald and baseless assertion of hundreds of millions of dollars in diminution. As a secured creditor, ESL
bears the burden of proving an adequate protection claim based on diminution of value. *In re
Residential Capital, LLC*, 501 B.R. 549, 591 (Bankr. S.D.N.Y. 2013). The Debtors do not believe that
there has been any diminution in value of ESL's collateral and that their interests are more than
adequately protected by the adequate protection provisions already contained in the Final DIP Order.
The onus is on ESL to prove otherwise. The Debtors are willing to consider any evidence and authority
ESL wishes to provide; unsupported assertions will not suffice.

ESL is free to move for relief from the Court if it wishes to modify the Final DIP Order. The
Debtors believe, however, that any relief is unwarranted.

That being said, and with all rights being reserved, the Debtors respond to the specific requests
contained in the Mar. 20 letter as follows:

**Weil, Gotshal & Manges LLP**

Page 3

- **Budget**.  The Debtors currently produce a 13-week cash flow budget ("**Post-Sale Transaction Budget**").  In the interest of transparency and cooperation, the Debtors are prepared to share the Post-Sale Transaction Budget with ESL.

- **Reserve Fund**.  As noted above, the Prepetition Second Lien Credit Parties' interests are already adequately protected by the Final DIP Order and there is no basis for a new reserve fund to be created.  Further, Debtors' estates already are effectively a reserve holding the Debtors' remaining cash pending the filing and confirmation of a chapter 11 plan, which the Debtors expect to file before the next omnibus hearing.  The Debtors will distribute such funds only once a chapter 11 plan is confirmed and becomes effective, and then only in accordance with the approved terms of the chapter 11 plan.

- **Winddown Account**.  As a reminder, the Prepetition Second Lien Adequate Protection Liens do not attach to the Winddown Account.  The Final DIP Order specifically provides:

> "Notwithstanding anything to the contrary in this or any other Bankruptcy Court order, the Winddown Account and the amounts on deposit in the Winddown Account shall be available and used only to satisfy winddown costs and shall not be subject to any prepetition liens or any liens or superpriority claims granted hereunder, including liens or superpriority claims granted to the DIP ABL Credit Parties or Junior DIP Credit Parties or as Adequate Protection. For the avoidance of doubt, the Winddown Account and the amounts on deposit in the Winddown Account shall not constitute DIP ABL Collateral, Junior DIP Collateral or Cash Collateral. Bank of America shall not be responsible or have any liability for, or have any duty to ascertain, inquire into, monitor or enforce, compliance with the provisions of this definition."

Final DIP Order ¶ 23.

**Weil, Gotshal & Manges LLP**

Page 4

ESL has no rights to the Winddown Account or any use of the proceeds therein, therefore, this request is irrelevant.  That said, in the interest of transparency, please be informed that the Winddown Account currently contains approximately $93 million, which is comprised of (i) approximately $7 million from the proceeds of the "U-Haul" sale approved by the Bankruptcy Court on December 21, 2018 (ECF No. 1393), (ii) approximately $81 million from the proceeds of the sale of the Sears Roebuck Acceptance Corp. medium term notes approved by the Bankruptcy Court on January 3, 2019 (ECF No. 1481), and (iii) approximately $5 from the deposit escrow amount retained by the Debtors pursuant to the terminated sale transaction with Service.com for the sale of the Sears Home Improvement business.

Sincerely,

Ray C. Schrock, P.C.

Cc:    Ira Dizengoff
       Philip Dublin
       Paul Basta
       Ann Reese
       Alan Carr
       William Transier
       Paul DePodesta

# Exhibit C

CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2829
lbarefoot@cgsh.com

April 9, 2019

<u>VIA E-MAIL</u>

Ray C. Schrock, P.C.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

     Re:  <u>Adequate Protection</u>

Mr. Schrock:

     We write on behalf of ESL Investments, Inc. and its affiliated investment funds (together, "<u>ESL</u>") in reply to your letter dated April 4, 2019 (the "<u>April 4 Letter</u>"), which responds to ESL's request by letter dated March 20, 2019 (the "<u>March 20 Letter</u>") for Sears Holdings Corporation and its affiliated debtors and debtors in possession (together, the "<u>Debtors</u>") to take steps to protect the value of the Prepetition Second Lien Adequate Protection Liens[1] and to avoid further diminution in value without ESL's consent.

     <u>First</u>, Debtors do not retain authority to use the Prepetition ABL Collateral (including Cash Collateral) because the Final DIP Order <u>only</u> authorizes the use of such Collateral "subject to and consistent with" among other conditions, the terms of the Approved Budget.  Final DIP Order ¶ 2; <u>see also</u> <u>id.</u> ¶ O.e. ("The proceeds of the DIP ABL Facility and Cash Collateral shall be used solely as provided in the DIP ABL Loan Documents and <u>solely in accordance with the Approved Budget</u> . . . .") (emphasis added).  The Approved Budget covers only the 13-week period through February 16, 2019, and the Final DIP Order provides that, in the event that the DIP ABL Agent, the DIP ABL Co-Collateral Agents and the DIP ABL Loan

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief*, ECF No. 952 (the "Final DIP Order").

Mr. Schrock, p. 2

Parties "cannot agree as to an updated, modified or supplemental budget" prior to the expiration of the Approved Budget, then "such disagreement shall give rise to an Event of Default." Final Dip Order ¶ 22(a). Merely continuing under a budget that no one has approved, as you have suggested, is inconsistent with the terms of the Final DIP Order and renders any protection illusory.

Second, ESL does not bear the burden of proving a diminution in value of the Prepetition Second Lien Adequate Protection Liens, because, unlike the creditor in *In re Residential Capital, LLC*, 501 B.R. 549, 591 (Bankr. S.D.N.Y. 2013), ESL is not requesting new adequate protection claims. Instead, ESL seeks merely to preserve the value of the existing protection for the Prepetition Second Lien Facilities Adequate Protection Claims.

Third, Debtors' assertion that they "do not believe that there has been any diminution in value of ESL's collateral" strains credulity. This is particularly the case where your April 4 Letter suggests that Debtors are not currently drawing any funds from the Winddown Account, and instead are using the very Cash Collateral that comprises Prepetition ABL Collateral to pay Debtors' substantial ongoing operating expenses. The Winddown Account was established precisely for the payment of such winddown expenses following the closing of the Sale. *See* Final DIP Order ¶ 23. Instead, the amounts being spent out of the Cash Collateral, while leaving the Winddown Account untouched, include a total of approximately $85 million in professional fees to date, of which over $15 million was billed for January 2019 alone.[2]

Fourth, Debtors' characterization of the estates as "effectively a reserve holding the Debtors' remaining cash," ignores the fact that the purpose of a reserve is to prevent the precise type of diminution of value that is occurring now as Debtors continue to spend down the last remaining Cash Collateral held by the estates to pay professional fees and other expenses. *See In re Chemtura Corp.*, 448 B.R. 635, 651 (Bankr. S.D.N.Y. 2011) (noting that reserves are designed to protect a claimant's "ability to recover on its claim"). Even the Creditors' Committee implicitly recognized the need for such a reserve in order to progress negotiations on a chapter 11 plan. Indeed, at the March 21, 2019 Omnibus Hearing, counsel for the Creditors' Committee informed the Court that the "507(b) claims . . . are serious issues that cause concern" and "weigh on the ability for us to confirm the plan or pursue a plan," and also noted that there is uncertainty with respect to whether there will be "actually a pot of money that's left" after resolution of these claims.[3]

---

[2]        *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 through January 31, 2019*, ECF No. 3063 (requesting approximately $6 million in fees and expenses after 20% holdback); *Second Monthly Fee Statement of Wachtell, Lipton, Rosen & Katz for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for Debtors for The Period from January 1, 2019 Through March 18, 2019*, ECF No. 3085 (requesting approximately $300,000 in fees and expenses after holdback); *Fourth Monthly Fee Statement of Weil, Gotshal & Manges LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for Debtors for the Period from January 1, 2019 through January 31, 2019*, ECF No. 3084 (requesting approximately $9.5 million in fees and expenses after holdback).

[3]        Mar. 21, 2019 Hearing Tr. 15:16—21.

Mr. Schrock, p. 3

       <u>Fifth</u>, despite the Debtors' offer to share the Post-Sale Transaction Budget with ESL, we have not yet received it and hereby request that it be provided promptly. ESL also requests a copy of the draft plan of reorganization, which we understand is being provided to other parties in interest, and should be provided to ESL as the largest creditor of the Debtors' estates.

       Lastly, we hereby request an accounting of expenses pursuant to the Final DIP Order, which as you know requires Debtors to "establish reasonable procedures . . . to trace cash proceeds from the sale of inventory of the Debtors and to track liabilities and payables of the Debtors, including shared services and professional fees and costs . . . and to report the same to Creditors' Committee, the DIP ABL Agents and the Prepetition Second Lien Credit Parties on a monthly basis." Final DIP Order ¶ 39. To our knowledge, no such procedures have been established, and ESL has received no such reports.

       In the meantime, ESL remains available to discuss appropriate measures to protect the value of its Prepetition Second Lien Adequate Protection Liens.

       Sincerely,

       Luke A. Barefoot