Eric R. Reimer (admitted *pro hac vice*)
Thomas R. Kreller (admitted *pro hac vice*)
Robert J. Liubicic
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

Andrew M. Leblanc
MILBANK LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006
 Telephone: (202) 835-7500

Craig M. Price
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel to Cyrus Capital Partners, L.P.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| Debtors. | : | (Jointly Administered) |
| | : | Re: Docket No. 3050 |

**JOINDER OF CYRUS CAPITAL PARTNERS, L.P. TO MOTION
OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE AND COLLATERAL AGENT TO PROHIBIT OR CONDITION DEBTORS'
CONTINUED USE OF COLLATERAL, INCLUDING CASH COLLATERAL**

Cyrus Capital Partners, L.P. ("Cyrus") respectfully submits this joinder to the *Motion of*

*Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent to Prohibit or*

*Condition Debtors' Continued Use of Collateral, Including Cash Collateral* [Docket No. 3050],

filed on April 4, 2019 (the "Motion").  Cyrus reserves all rights to be heard before the Court in connection with the Motion.

1.       Wilmington Trust, National Association, serves as indenture trustee and as collateral agent ("Wilmington Trust") for the 6-5/8% Senior Secured Notes due 2018 (the "2010 Notes") issued by Sears Holdings Corporation ("Sears").  Cyrus was a significant holder of the 2010 Notes but in March of 2018 exchanged those 2010 Notes for a new series of 6-5/8% Senior Secured Notes due 2019 (the "2019 Notes").  The 2019 Notes are secured by the same collateral as the 2010 Notes but are senior to the 2010 Notes pursuant to the pertinent documents.

2.       In addition, Cyrus was a Required Lender under the Junior DIP Facility (the "Junior DIP"), which was approved by order of this Court on December 28, 2018 (the "Junior DIP Order") [Docket No. 1436].  The same Approved Budget annexed to the Final DIP Order was also annexed to the Junior DIP Order, and the "budget provisions that apply to Junior DIP Obligors, the Junior DIP Documents, and this Final Junior DIP Order shall be identical (other than changes to reflect the applicable parties) as those set forth in paragraph 22 of the DIP ABL Order and the DIP ABL Documents."  Junior DIP Order at ¶ 21.

3.       Cyrus joins in the Motion for the reasons set forth below.

4.       Following the closing of the sale of substantially all of the Debtors' assets on February 11, 2019, the Debtors appear unilaterally to have been using Collateral (including Cash Collateral) in which Cyrus and other prepetition second lien lenders (collectively, the "Second Lien Lenders") assert liens, including postpetition adequate protection liens granted by this Court under the Final DIP Order, in contravention of the Final DIP Order and without regard for the adequate protection provided for in the Final DIP Order.  Wilmington Trust's Motion is a timely

demand that the Debtors' activities be brought back for appropriate scrutiny and oversight by the

Court.  Among other things:

      a.      **To the extent the Debtors had authority to use Cash Collateral, such authority lapsed when the Approved Budget expired on February 16, 2019.**  The ability of the Debtors to use the Cash Collateral of the Second Lien Lenders was always subject to the conditions built into the Final DIP Order and the Junior DIP Order.  Those conditions included that such use could only occur pursuant to an Approved Budget.  The Approved Budget expired on February 16, 2019, and the Debtors have had no authority to utilize *any* Cash Collateral since then.

      b.      **The Debtors are impermissibly using Cash Collateral to fund their operations and pay their professional fees and costs rather than funds from the Winddown Account**.  The Winddown Account was established to pay the various costs of winding down the Debtors' estates.  See Junior DIP Order ¶ 22.  Rather than use the funds contained in the Winddown Account, the Debtors instead appear to be using Cash Collateral to pay the Debtors' substantial post-sale wind down expenses – effectively marshalling cash in a manner designed to dissipate the Second Lien Lenders' adequate protection liens and claims while  permitting the Debtors to avoid utilizing the Winddown Account.  This conduct ignores the carefully and extensively negotiated balance that was reached in the Final DIP Order and Junior DIP Order between the adequate protection rights granted to the Second Lien Lenders and the protections given to the Debtors via the establishment of the Winddown Account.  The Debtors should not now be permitted to simply ignore the structure that was so carefully crafted and embedded in both the Final DIP Order and Junior DIP Order.

c.      **The more the Debtors dissipate Cash Collateral, the more they increase the Section 507(b) Claims of the Second Lien Lenders.**  The Second Lien Lenders were granted liens on the Cash Collateral to adequately protect the Second Lien Lenders from any diminution in value of their prepetition collateral.  To the extent those liens attach to Cash Collateral (or other Collateral), the Second Lien Lenders have secured, postpetition claims.  To the extent the diminution in value of the Second Lien Lenders exceeds the value of those secured claims, the Second Lien Lenders were granted section 507(b) superpriority claims (the "Section 507(b) Claims") to compensate for the "failed" adequate protection.  As a result, as the Debtors improperly dissipate the Cash Collateral, they necessarily increase the (already significant) magnitude of the Section 507(b) Claims.  The Debtors should not be permitted to convert secured claims into Section 507(b) Claims in this manner – both because it impermissibly violates the Second Lien Lenders' adequate protection rights and because it impermissibly prefers the "regular" administrative claimants who are being paid in full out of Cash Collateral at the expense of the postpetition secured claims and the superpriority claims of the Second Lien Lenders.  In effect, the Debtors are turning upside down the waterfall of secured, superpriority and "regular" administrative claims by using Cash Collateral to pay administrative expenses from the Cash Collateral of the Second Lien Lenders.  It is also worth noting that this strategy does nothing to advance the Debtors' prospects of confirming a chapter 11 plan, because while dissipating the Cash Collateral has the effect of reducing the amount of the Second Lien Lenders' secured claims, it also results in growing the Section 507(b) Claims that must be paid in full, in cash if a plan is to be confirmed.  In other words, the Debtors are simply

- 4 -

treading water for the benefit of the administrative claims that are being paid currently and directly at the expense of the Second Lien Lenders.

5.      Finally, the Final DIP Order requires the Debtors "establish reasonable procedures …. to trace cash proceeds from the sale of inventory of the Debtors and to track liabilities and payable of the Debtors, including shared services and professional fees and costs …. and to report the same to the Creditors' Committee, the DIP ABL Agents and the Prepetition Second Lien Credit Parties on a monthly basis." Junior DIP Order ¶ 39.  The Debtors have failed to establish any such procedures and likewise have failed to produce any such reports.  Given their clear duty to provide such reports, and blatant disregard for the terms of the Junior DIP Facility, in addition to requesting that the Court segregate the Cash Collateral and prohibit the Debtors from using such Cash Collateral unless an agreement is reached regarding a budget, Cyrus requests that the Debtors be ordered to provide an accounting of the Debtors' use of Cash Collateral, expenses and costs, and tracing to show the origins of the money being spent by the Debtors.

WHEREFORE, for the reasons set forth in the Motion, Cyrus respectfully requests that this Court enter an order directing the Debtors to: (i) segregate and account for the Cash Collateral, and (ii) prohibit the Debtors from using the Cash Collateral in which the Second Lien Collateral Agent has an interest, unless and until the Debtors are able to reach agreement with the Prepetition Second Lien Collateral Agent on a budget for the use of such Cash Collateral and on the provision of satisfactory adequate protection for the continued use of the Collateral, including the Cash Collateral.

Dated: April 11, 2019
New York, New York

**MILBANK LLP**

By: /s/ Thomas R. Kreller

- 5 -

Eric R. Reimer (admitted *pro hac vice*)
Thomas R. Kreller (admitted *pro hac vice*)
Robert J. Liubicic
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

Andrew M. Leblanc
1850 K Street, NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

Craig M. Price
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel to Cyrus Capital Partners, L.P.*