Hearing Date and Time: April 18, 2019 at 10:00 a.m. (Eastern)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :
                                                              :    **Chapter 11**
**SEARS HOLDINGS CORPORATION, *et al.*,**                      :
                                                              :    **Case No. 18-23538 (RDD)**
                                                              :
         Debtors.[1]                                          :    **(Jointly Administered)**
                                                              :
---------------------------------------------------------------x

## SECOND OMNIBUS OBJECTION OF DEBTORS TO MOTIONS FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the motions seeking relief from the automatic stay filed by Mario Aliano (ECF No. 987) (the "**Aliano Motion**"), Jerry and Esther Vosburg (ECF No. 1763) (the "**Vosburg Motion**"), Stephen Tuttle (ECF No. 2498) (the "**Tuttle Motion**"), Jeffrey Pfeiffer (ECF No. 2633) (the "**Pfeiffer Motion**" and, collectively, the "**Stay Relief Motions**," and all of the movants thereto, collectively, the "**Movants**"), and respectfully represent as follows:

## Preliminary Statement

1.      A movant seeking relief from the automatic stay must show cause warranting such relief. 11 U.S.C. § 362(d)(1). If the movant fails to satisfy this burden, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Here, Movants have failed to satisfy their burden to establish cause to lift the automatic stay.

2.      Movants seek to proceed with their respective prepetition actions (collectively, the "**Actions**").[2] The Stay Relief Motions are premised on the purported availability of third-party insurance or other coverage for liability for Movants' claims and related defense costs. As the Debtors have explained to Movants, however, no such coverage is available with respect to the Actions. If the automatic stay is lifted, the Debtors will be forced to incur all administrative and defense costs associated with these claims and lawsuits. Movants are only a few of the Debtors' many thousands of prepetition general unsecured creditors. It would be

---

[2] Movants Aliano, Vosburg, and Tuttle filed actions before the commencement of these chapter 11 cases. Movant Pfeiffer is seeking to commence an action based on the on a prepetition claim. *See* Pfeiffer Mot. at *2.

2

premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other general unsecured creditors to expend estate resources on any of Movants' claims at this time. The Stay Relief Motions should be denied.[3]

### Background

3.    Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

5.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.    On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the

---

[3] Several other parties filed motions for relief from the automatic stay after the Court entered the Stay Procedures Order (defined below), which provides a process requiring the submission of an Inquiry (defined below) to the Debtors in advance of filing a motion seeking relief. The following movants (the "**Inquiry Movants**") filed a motion prior to submitting an Inquiry: Stephen R. Wolf, Esq., as Administrator of the Estate of Breanna N. Africa (ECF No. 2961); Martha West (ECF No. 2992); and Gabriel Young (ECF No. 3028). The Debtors have informed the Inquiry Movants they consider the Inquiry Movants' motions to be automatically adjourned until the appropriate review periods under the Stay Procedures Order have expired. The Debtors reserve all rights to object to their motions.

WEIL:\96895822\6\73217.0004

Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

7.      On March 1, 2019, the Court entered the *Order Approving Procedures for Modification of the Automatic Stay Under Certain Circumstances* (ECF No. 2720) (the "**Stay Procedures Order**").  The Stay Procedures Order approved procedures for the Debtors to review requests to lift the automatic stay to proceed with prepetition actions with recovery limited to available insurance proceeds (the "**Stay Procedures**").  Stay Procedures Order ¶ 2(a).  The Stay Procedures provide that a party seeking to lift the automatic stay submit a form inquiry that was annexed as Exhibit 1 to the Stay Order (an "**Inquiry**").  *Id.* ¶ 2(a).  The Debtors are afforded 45 calendar days to review and respond to an Inquiry and parties may file a motion for relief from the automatic stay if the Debtors do not respond to an Inquiry after the expiration of the 45-day period. *Id.* ¶ 2(e).

8.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

### Jurisdiction

9.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

WEIL:\96895822\6\73217.0004

**Actions Subject to Stay**

A.    **The Aliano Action**

10.    Movant Mario Aliano is the plaintiff in a pre-petition action against Debtor Sears, Roebuck & Co. ("**Sears**") for attorney fees, currently pending on appeal in the Appellate Court of Illinois (the "**Appellate Court**"), captioned as *Mario Aliano v. Sears, Roebuck & Co.*, Case No. 09 CH 16132, Appeal No. 1-17-2325 (the "**Aliano Action**").

11.    Mr. Aliano filed the Aliano Motion on December 3, 2018, seeking relief for the Aliano Action to proceed before the Appellate Court, on the basis that an appeal bond is available to cover the amount of the judgment. *See* Aliano Mot. at *3.

B.    **The Vosburg Action**

12.    On August 8, 2008, Jerry and Esther Vosburg (the "**Vosburgs**") filed a complaint styled *Jerry Vosburg and Esther Vosburg v. Sears Roebuck, and Company, Lg Electronics USA, Inc., the City of Bastrop, and Risk Management, Inc.*, in the Fourth District Court, Morehouse Parish, Louisiana ("**Louisiana State Court**"), seeking damages allegedly suffered on or about September 7, 2007, in connection with a microwave in the Vosburgs' home (the "**Vosburg Action**").

13.    The Vosburgs filed the Vosburg Motion on January 23, 2019, seeking relief from the automatic stay to proceed with their claims solely to seek recovery from non-debtor sources, including insurance and indemnity policies. Vosburg Mot. ¶ 4.[4]

---

[4] The Debtors remain in negotiations with the Vosburgs over a potential stipulation that would resolve the Vosburg Motion.

WEIL:\96895822\6\73217.0004

### C.    The Tuttle Action

14.    Movant Stephen Tuttle alleges that he was injured on December 8, 2011, when he was unloading a truck containing merchandise secured by Debtor Innovel Solutions, Inc. ("**Innovel**"). At the time, Mr. Tuttle was employed by M&M Tuttle, LLC ("**M&M Tuttle**"). Mr. Tuttle filed a lawsuit in the District Court of Bryan County, Oklahoma, Case No. CJ-2013-186 (the "**Byran County Case**"), seeking to recover damages from Innovel. The Bryan County Case proceeded to trial in November 2017. Judgment was entered in favor of Innovel, and Mr. Tuttle appealed on December 20, 2017. The appeal is currently pending in the Oklahoma Court of Civil Appeals, captioned as *Stephen Tuttle vs. Innovel Solutions, Inc*., Case No. DF-116639 (the "**Tuttle Action**").

15.    Mr. Tuttle filed the Tuttle Motion on February 8, 2019, seeking relief from the automatic stay "for the limited purposes of allowing the appeal described above to proceed to a conclusion and allowing the Bryan County Case to proceed to the extent of liability insurance coverage, in the event the trial court judgment is reversed in whole or part." Tuttle Mot. ¶ 5.   Mr. Tuttle alleges that Travelers Insurance Company ("**Travelers**"), the insurer of M&M Tuttle, assumed the defense and indemnity of Innovel under an indemnity agreement entered into between M&M Tuttle and another non-debtor entity.

### D.    The Pfeiffer Claim

16.    Movant Jeffrey Pfeiffer filed the Pfeiffer Motion on February 15, 2019, seeking relief from the automatic stay "to file and prosecute a civil action against Kmart Corporation and or any other debtor or affiliate found to be the proper party at interest . . . as well as Monsanto . . . in the Circuit Court of Cook County Illinois for the purpose of liquidating his claim." Pfeiffer Mot. at *2.   Mr. Pfeiffer alleges that exposure to Roundup® purchased from a

WEIL:\96895822\6\73217.0004

Kmart store at 1006 N. Keller Drive, Effingham, Illinois from approximately 1988 through 2014 resulted in his diagnosis with acute myeloid leukemia. Mr. Pfeiffer filed a proof of claim in these cases for the same prepetition claim asserted in the Pfeiffer Motion in the amount of $50,000.01 (Proof of Claim No. 8839).

17.    Mr. Pfeiffer argues that relief is warranted in the circumstances because "[i]f the movant obtains a recovery or judgment against the Debtor or its affiliates, the movant will seek to enforce it solely against the proceeds of insurance and will not seek to enforce the recovery or judgment against the debtor or its affiliates." *Id.*

### The Debtors' Insurance Coverage

18.    The Debtors maintained various insurance policies in their history over the prepetition period. Among them were both general liability and umbrella policies that potentially could have applied in the Movants' Actions. The Debtors' general liability policy had a $5 million aggregate limit for each annual period beginning on August 1 and ending on August 1 the following year. Paid losses to date have exceeded the $5 million limit on each of those policies for the following periods, which are applicable to one or more of the actions: (a) Aug. 1, 2007 – Aug. 1, 2008; (b) Aug. 1, 2010 – Aug. 1, 2011; (c) Aug. 1, 2011 – Aug. 1, 2012; (d) Aug. 1, 2012 – Aug. 1, 2013; (e) Aug. 1, 2013 – Aug. 1, 2014; (f) Aug. 1, 2014 – Aug. 1, 2015; (g) Aug. 1, 2015 – Aug. 1, 2016; and (h) Aug. 1, 2016 – Aug. 1, 2017. Accordingly, where a Movant's Action falls within the applicable period where coverage is exhausted, there is no available coverage under the general liability and umbrella policies. In these instances the insurer has no duty to defend the Debtors or pay for the Debtors' losses. Copies of the notices of exhaustion evidencing the foregoing are attached hereto as **Exhibit A** (2007–2008), **Exhibit B** (2010–2011), **Exhibit C** (2011–2012), **Exhibit D** (2012–2013), **Exhibit E** (2013–2014), **Exhibit F** (2014–2015), **Exhibit G** (2015–2016), and **Exhibit H** (2016–2017).

7

19.     The following table summarizes the Actions that assert that insurance coverage is available, and lists the applicable letters of exhaustion that demonstrate a lack of coverage:

| Cause of Action | Date of Incident | Asserted Claim | Applicable Dates of Insurance Policy | Applicable Letter of Exhaustion |
|---|---|---|---|---|
| Vosburg Action | Sept. 7, 2007 | Unliquidated | 8/1/2007–8/1/2008 | Exhibit A |
| Tuttle Action | Dec. 8, 2011 | N/A | 8/1/2011–8/1/2012 | Exhibit C |
| Pfeiffer Claim | 1988–2014 | $50,000.01 | 1988–2014 | Exhibits A, B, C, D, E, F, G, H[5] |

20.     Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the applicable Movants' Actions.

### Argument

### A.     Governing Legal Standards

21.     The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986).  The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate . . . ." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

---

[5] Mr. Pfeiffer claims a relevant period from 1988 to 2014. The Debtors' general liability policy records date back to April 1, 2005.  The Debtors believe that there is no available coverage for the period dating back to April 1, 2005.  Further, the Debtors believe that any claims for the preceding period may be discharged as a result of the January 22, 2002 bankruptcy filing of Kmart Corporation (Case No. 02-02474). The Debtors have requested an adjournment of the hearing on the Pfeiffer Motion in order to confirm whether any insurance coverage is available for any portion of the 1988–2014 period.  Mr. Pfeiffer has not agreed to adjourn the hearing on the Pfeiffer Motion.

22.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined, and the decision whether to modify the stay is left to the discretion of the bankruptcy court.  *In re Marketxt Holdings Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted.  *See Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).[6]  Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors.  *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).  Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another.  *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

23.    Movants bear the initial burden to show cause for lifting the automatic stay.  *Sonnax*, 907 F.2d at 1285.  "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."  *In re Mildred Deli Grocery, Inc.*, No. 18-

---

[6] As noted by several of the Movants, the *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

24.     However, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Chittur & Assocs., P.C.,* No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5–6  (S.D.N.Y. Dec. 18, 2018).

25.     Here, none of the Movants have satisfied the burden of establishing "cause" under section 362(d)(1), and as a result, the Stay Relief Motions should be denied.

**B.     The Debtors Insurance Coverage Applicable to the Actions is Exhausted or Unavailable**

26.     The Stay Relief Motions are expressly conditioned on the availability of insurance coverage against liability for a Movant's claims or other assumption of litigation and judgment costs (*i.e.*, the fifth *Sonnax* factor).  *See, e.g.*, Pfeiffer Mot. at *3 (seeking to enforce judgment "against the [debtor's] policy of insurance"); Vosburg Mot. ¶ 4; Tuttle Mot. at *5 ("Mr. Tuttle is only asking that the stay be lifted to the extent of liability coverage."); Aliano Mot. at *5 ("Argonaut has assumed full responsibility to pay Aliano pursuant to the Appeal Bond."). Movants seek relief from the automatic stay in order to proceed to recover from insurance coverage for which Debtors are beneficiary or are otherwise indemnified. Furthermore, certain of the Movants assert that Debtors will not suffer any harm if the stay is lifted because they seek only the Debtors' available insurance coverage. *See, e.g.*, Pfeiffer Mot. at *5.

27.     As discussed above, the Debtors have determined that applicable insurance is exhausted or unavailable for the Vosburg, Tuttle, and Pfeiffer Actions.  As a result, there is little support for Movants' application of the *Sonnax* factors, including—most obviously—the fifth

10

factor, which considers whether the Debtors' insurer has assumed full defense responsibility.  If the automatic stay were to be lifted with respect to the Movants' Actions for which no insurance is available, the Debtors would be forced to directly incur the costs of all legal fees and expenses to defend their interests or otherwise default and risk unjustified, larger damages claims.  As additional administrative expense claims, those defense costs are "unquestionably a factor to be given serious consideration" in the cause inquiry.  *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

28.    Separately, in the Aliano Motion, Mr. Aliano argues, among other things, that the fifth *Sonnax* factor applies in this case, because, according to Mr. Aliano, "Argonaut has assumed full responsibility to pay Aliano pursuant to the Appeal Bond." Aliano Mot. at *5. However, Mr. Aliano misstates the nature of Argonaut Insurance Company's ("**Argonaut**") appeal bond.  On September 28, 2017, Argonaut executed an appeal bond for Sears, in the amount of the judgment that was entered in Mr. Aliano's favor by the Circuit Court of Cook County, Illinois on August 25, 2017, plus a statutory post-judgment interest rate of nine percent per annum, for one year.  Sears's motion for approval of the appeals bond was granted on October 23, 2017.

29.    Contrary to Mr. Aliano's assertions, Argonaut has not assumed any responsibility for defending the action for Sears; Argonaut provided the appeals bond for the judgment itself.  Sears remains responsible for any defense costs in the Aliano Action.  To get this matter to a judgment, Sears would have to prepare for and participate in oral arguments before the Appellate Court, and potentially other proceedings, if required by the Appellate Court.  Sears remains responsible for all associated costs.

30.    In the Vosburg Motion, the Vosburgs argue that they should be entitled to relief from the automatic stay to pursue recoveries from non-Debtor sources including insurers or

11

third parties.  The Vosburgs submit that insurance and/or indemnity agreements exist that would allow the Vosburgs to recover against non-Debtor sources.  The Debtors are not aware of any insurance agreement that provides first-dollar coverage to the Debtors that would be available for the Vosburgs.  While the Vosburgs identify the possibility of excess insurance policies, the insurers of such policies are not required to defend the Debtors, pay the Debtors' expenses or pay any judgment against the Debtors until the applicable policy amount is paid out.  Accordingly, lifting the automatic stay in these circumstances would prejudice the Debtors.  *See, e.g.*, *In re Columbia Gas Trans. Corp.*, 219 B.R. 716, 720–21 (D.W.V. 1998) (refusing to allow claimant to bring post-discharge suit when Debtor would have to pay defense costs); *In re EnCap Golf Holdings, LLC*, No. 08-18581, 2008 WL 3193786, at *4 (Bankr. D.N.J. 2008) (finding no cause to lift the automatic stay if self-insured retention is not exhausted). The Debtors are still investigating whether any valid indemnity agreements would cover Vosburgs' claims. Nothing herein shall be deemed an admission by the Debtors in the event the Debtors identify a source of coverage for the Vosburgs' Action.

31.    The Debtors can identify no third parties that will absorb the full costs of litigation or of a potential judgment in a Movant's favor.  Therefore, the fifth—and most relevant—*Sonnax* factor weighs against granting the Stay Relief Motions.

## C.    Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay

32.    Movants argue that the first *Sonnax* factor—whether relief would result in a partial or complete resolution of the issues—weighs in favor of lifting the stay because proceeding with the Movants' Actions would allow them to establish liability and damages.  *E.g.*, Vosburg Mot. ¶ 3.  But lifting the stay merely for this purpose is not necessarily a guarantee of finality or resolution.  *See, e.g.*, *E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 171 (2d Cir. 1998) (creditor filing multiple lawsuits against debtors spent the "better part of three years

12

in a fruitless effort" to obtain agreement or judgment for coverage from asserted third party). Lingering issues would necessitate Debtor involvement and be a further drain on estate assets.

33.    Furthermore, courts in this District have ruled that satisfaction of the first *Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost, or may take a long time.  *See In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision denying relief from the stay, and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

34.    The second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—does not weigh in favor of lifting the stay.  Where there is a lack of insurance, or even a dispute over the availability of insurance, the Debtors would inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of the cases, interfering with the administration of their estates. The automatic stay is meant to shield debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time when the Debtors' personnel should be focused on the chapter 11 cases.

35.    The fourth *Sonnax* factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, does not support lifting the stay.  The Actions here do not present specialized issues that require a specialized tribunal.  The state courts

WEIL:\96895822\6\73217.0004

are not required to be uniquely equipped in order to deal with the straightforward factual issues in the underlying disputes. Moreover, for those Movants' Actions are that are in their early stages, the state courts have had little opportunity to analyze and understand the facts and legal issues of the cases to the extent that would make them "specialized". Accordingly, the fourth *Sonnax* factor does not support granting relief in these circumstances.

36.    The seventh *Sonnax* factor, which considers whether litigation in another forum would prejudice the interests of other creditors, similarly weighs against granting the Stay Relief Motions. Lifting the stay where there is no insurance coverage would result in the Debtors incurring unnecessary administrative costs to litigate the Movants' Actions before recoveries to general unsecured creditors become available to them. Should the Lift Stay Motions be granted, given the scale of the Debtors' prepetition business, an increase in filings of motions to lift the automatic stay is likely to occur. Simply negotiating and responding to such motions by itself creates administrative costs that consume estate assets that would otherwise be available for unsecured creditors. This result would be particularly impactful at this time when the Debtors are nearing the final stages of their chapter 11 plan proposal process, and where administrative costs will have a meaningful impact on creditor recoveries. Absent "extraordinary circumstances" the Movants should be treated in the same manner and on the same timeline as other unsecured creditors. *See Leibowitz*, 147 B.R. at 345.

37.    Specifically with respect to the Pfeiffer Motion, Mr. Pfeiffer filed a proof of claim in these cases asserting the same claim that he seeks to assert in a post-petition action based on his pre-petition claim. Mr. Pfeiffer has offered no reasoning for why the claim should be liquidated as a postpetition action in Illinois, rather than as part of these bankruptcy cases in due course.

14

38.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, also does not weigh in favor of lifting the automatic stay.  The Debtors are party to numerous prepetition actions.  If the Court were to lift the stay with respect to the Movants' Actions, the Debtors and the Court would continue to be inundated with similar requests for stay relief.  Indeed, dozens of motions lifting the automatic stay have already been filed in these chapter 11 cases and, in addition, the Debtors are assessing multiple Inquiries being submitted to the Debtors under the Stay Procedures.

39.    The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceedings, also weighs against lifting the automatic stay in certain circumstances.  In the Tuttle Action, an appeal is pending and, if the Movant is successful, the case would return to the lower court for litigation or settlement.  Tuttle Mot. at *2.  Accordingly, this Movants' Action is not 'ready for trial' as contemplated by the eleventh *Sonnax* factor.

40.    The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay.  Movants might argue, for example, that the claims are small compared to the Debtors' overall obligations.  As explained above, however, the Debtors are party to numerous lawsuits.  Indeed, this response addresses only a handful of the stay relief motions filed against the Debtors in these cases, demonstrating only a small portion of the volume of actions pending.  Taken together, such lawsuits constitute a meaningful unsecured creditor constituency that the Debtors have an obligation to maximize value for as a whole.  Although creditor recoveries are yet to be determined, the administrative costs expended on defending prepetition actions have a disproportionate negative impact on any constituency receiving less than full recovery.  In particular, Movant Tuttle has not filed a proof of claim asserting a claim associated with their underlying Actions and

15

Movant Pfeiffer has filed proofs of claim in unliquidated amounts. At this time, lifting the automatic stay would not expedite any potential recovery on account of these unsecured claims nor would it help to identify recovery amounts.

## Conclusion

41.    For the foregoing reasons, Movants have failed to satisfy their burden to establish cause to lift the automatic stay. Accordingly, the Stay Relief Motions should be denied.


WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court deny the Stay Relief Motion.

Dated: April 11, 2019
        New York, New York


   /s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

WEIL:\96895822\6\73217.0004

**Exhibit A**

WEIL:\96895822\6\73217.0004

**CHUBB**

525 W. Monroe, Chicago, Il. 60661
O 312-612-8804  F 866-635-5688
dan.digioia@chubb.com
**Please Mail All Correspondence to:**
Chubb North America, P.O. Box 5120, Scranton, PA 18505

October 10, 2018

**VIA CERTIFIED MAIL, OVERNIGHT MAIL & EMAIL**
Larry Jenchel
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re:    Policy #: HDOG21745078
       Policy Period: 08/01/2007 -08/01/2008
       Insurer: ACE American Insurance Company ("ACE")

Dear Mr. Jenchel:

Chubb North American Claims ("Chubb") is now responsible for handling claims
previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears
Holding Corp. under policy # HDOG21745078, for the period of 08/01/2007 to
08/01/2008. The policy was written with a Combined General Aggregate Limit of $5
million. It has been determined that paid losses falling within this Aggregate are in excess
of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General
Aggregate limit, no coverage exists under this policy. Any additional loss in this policy
period falls outside the scope of coverage granted under this policy. ACE has no
obligation to pay for any loss within this policy period in excess of the Combined
Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the
limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY
COVERAGE FORM states that there is no duty to defend or indemnify an Insured once
the limits have been paid in settlement or judgment of claims. With the payment of losses
in excess of $5 million, there is no longer a duty for ACE to provide coverage under this
policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not
covered. Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other
person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company
providing this insurance. The word "insured" means any person or organization qualifying as such under Section II – Who Is An
Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**
1.  **Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of
        "bodily injury" or "property damage" to which this insurance applies. We will have the right and
        duty to defend the insured against any "suit" seeking those damages. However, we will have no duty
        to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage"
        to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and
        settle any claim or "suit" that may result. But:
        (1) The amount we will pay for damages is limited as described in Section III – Limits Of
            Insurance; and
        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in
            the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under
            Coverage **C**.
        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly
        provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement.
The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C.
    b.  Damages under Coverage A, and
    c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the
policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's
position regarding coverage is neither expected nor intended to be a waiver of ACE's
right to assert any other rights or defenses it may have under the Policy, legally, equitably
or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is
not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action. Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 312-612-8804.

Sincerely,

*Dan Digioia*

Dan Digioia
Assistant Vice President
Casualty Claim Manager, North America Claims

Cc: AON:    Tim Routhieaux, tim.routhieaux@aon.com
              Carol Murphy, carol.murphy@aon.com
      ACE:    Rowland Banini, rowland.banini@chubb.com

**<u>Exhibit B</u>**



ACE North America                  818-428-3751 *tel*
ARM Claims                         866-635-5687 *fax*
9200 Oakdale Ave. 8ᵗʰ Floor
Chatsworth, CA 91311               Alma.Magana@acegroup.com
                                   www.ace-ina.com


**Alma B. Magana**
*Assistant Vice President*

October 5, 2011

David Hallfield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Rd.
Hoffman Estates, IL 60179


Re:    Policy #:        HDO G25519826
       Policy Period:   8-1-10 to 08-01-11
       Insurer:         ACE American Insurance Co. (ACE)


Dear Mr. Hallfield;

ACE American Insurance Company ("ACE") insured Sears Holdings Corp under policy # HDO
G25519826, for the period of 8-1-10 to 8-1-11. The policy was written with a Combined General
Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are
in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit;
no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of
coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in
excess of the Combined General Aggregate Limit. We hope the references below will more fully illustrate
ACE's position.

The Declarations of the above cited policy states:


In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s)
at the limits show, subject to all of the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products / Completed Operations) | $5,000,000 |
| Products / Completed Operations Aggregate Limit | $5,000,000 |



The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5million there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

### SECTION I – COVERAGES

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

Additionally, the policy contains the **COMBINED POLICY AGGREGATE** endorsement. The endorsement states:

### Section III – LIMITS OF INSURANCE

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C.
   b. Damages under Coverage A, and
   c. Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Page 2/3



Should you have questions, please contact this writer. The above recitation of ACE' position regarding coverage is neither expected nor intended to be a waiver of ACE American's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE American shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE American expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE American reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE American reserves its right to supplement this letter. ACE American also reserve its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Sincerely,

ACE American Insurance Company
Alma Magana

Copies:

AON -  Tim Rothieux
          Carol Murphy

ACE -  Ruth Ahlman

Page 3/3

**<u>Exhibit C</u>**

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Specialist*

September 18, 2012

David Hallfield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

> Sears Holdings Corp.
> Risk Management
>
> SEP 2 4 2012
>
> ROUTED *Liz*

|  Re: | Policy #: | HDOG25530962 |
| --- | --- | --- |
| | Policy Period: | 8/1/11 to 8/1/12 |
| | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Hallfield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG25530962, for the period of 8-1-11 to 8-1-12. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

> In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
| --- | --- |
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been



paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1. **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

   a.   Medical expenses under Coverage C.
   b.   Damages under Coverage A, and
   c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.



The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

Keri Lefferts

cc: AON:    Tim Routhieaux, Tim.Routhieaux@aon.com

Carol Murphy, Carol.Murphy@aon.com

ACE:    Ruth Ahlman, Ruth.Ahlman@acegroup.com

Page 3/3

**<u>Exhibit D</u>**

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

Keri Lefferts
*Senior Claims Specialist*

July 29, 2013

**VIA EMAIL AND REGULAR MAIL**
David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|      | | |
|------|--------------|---------------------------------------|
| Re:  | Policy #:       | HDOG27011871 |
|      | Policy Period: | 8/1/12 to 8/1/13 |
|      | Insurer:       | ACE American Insurance Company ("ACE") |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27011871, for the period of 8-1-12 to 8-1-13. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|----------------|---------------------|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been



paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C.

    b.  Damages under Coverage A, and

    c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.



The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

Keri Lefferts

cc: AON:      Tim Routhieaux, Tim.Routhieaux@aon.com

          Carol Murphy, Carol.Murphy@aon.com

    ACE:      Ruth Ahlman, Ruth.Ahlman@acegroup.com

Page 3/3

**Exhibit E**

# A

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Director*

August 21, 2014

## <u>VIA CERTIFIED MAIL & EMAIL</u>

Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|       |                |                                            |
|-------|----------------|--------------------------------------------|
| Re:   | Policy #:      | HDOG27022327                               |
|       | Policy Period: | 8/1/13 to 8/1/14                           |
|       | Insurer:       | ACE American Insurance Company ("ACE")     |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27022327, for the period of 8-1-13 to 8-1-14. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

> In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form:                                               | Limits of Insurance |
|--------------------------------------------------------------|---------------------|
| COMMERCIAL GENERAL LIABILITY                                 |                     |
| General Aggregate Limit (other than Products/Completed/Operations) | <u>$5,000,000</u>   |
| Products/Completed/Operations Aggregate Limit                | <u>$5,000,000</u>   |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

**1.    Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the  COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

**2.**    The General Aggregate Limit is the most we will pay for the sum of:

   a.    Medical expenses under Coverage C.

   b.    Damages under Coverage A, and

   c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

Page 2/3



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

*Keri Lefferts*

Keri Lefferts

cc:  AON:      Tim Routhieaux, Tim.Routhieaux@aon.com

              Carol Murphy, Carol.Murphy@aon.com

      ACE:      Ruth Ahlman, Ruth.Ahlman@acegroup.com

**<u>Exhibit F</u>**



ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Director*

August 4, 2015

## VIA CERTIFIED MAIL & EMAIL
Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

| Re: | Policy #: | HDOG27334143 |
|---|---|---|
| | Policy Period: | 8/1/14 to 8/1/15 |
| | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27334143, for the period of 8-1-14 to 8-1-15. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### Section I – COVERAGES

**1.    Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

### Section III – LIMITS OF INSURANCE

**2.**    The General Aggregate Limit is the most we will pay for the sum of:

    a.    Medical expenses under Coverage C,

    b.    Damages under Coverage A, and

    c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue.
ACE reserves its right to assert new, additional or different coverage defenses should new,
additional or different information and/or documents be received that warrant such action. ACE
reserves its right to supplement this letter. ACE also reserves its right to assert additional terms
and conditions of the Policy at issue to its current coverage determination should new, additional
or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-
3763.

Sincerely,

Keri Lefferts

cc: AON:     Tim Routhieaux, Tim.Routhieaux@aon.com

            Carol Murphy, Carol.Murphy@aon.com

    ACE:     Christine Kloss, Christine.Kloss@acegroup.com

**Exhibit G**

**CHUBB**

Chubb North American Claims                    818-428-3744 tel

Primary Casualty                                        818-428-3588 fax
P.O. Box 5113                                           will.elkner@chubb.com
Scranton, PA 18505

**Will Elkner**
*Senior Claims Specialist*

July 22, 2016

**VIA CERTIFIED MAIL & EMAIL**

Rob C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|  | Re: | Policy #: | HDOG27334143 |
|---|---|---|---|
|  |  | Policy Period: | 8/1/15 - 7/31/16 |
|  |  | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27334143, for the period of 8-1-15 to 7/31/16. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

> In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been

paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.   **Insuring Agreement**

     a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

          (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

          (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

          No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

     a.   Medical expenses under Coverage C.
     b.   Damages under Coverage A, and
     c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE

reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3744.

Sincerely,

ACE American Insurance Company

Will Elkner

Senior Claims Specialist

cc:  AON:      Tim Routhieaux, Tim.Routhieaux@aon.com

              Carol Murphy, Carol.Murphy@aon.com

     ACE:      Christine Kloss, Christine.Kloss@acegroup.com

## Exhibit H

Will Elkner                                    O  +213.612.5365
Pacific Region                                 F  +818.428.3588
555 S. Flowers Street, 5th Floor, Los          will.elkner@chubb.com
Angeles, CA 90017
USA



April 11, 2019

**VIA CERTIFIED MAIL & EMAIL**

Robin C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re:   Policy #:            HDO G27853717
      Policy Period:       08/01/2016 -08/01/2017
      Insurer:             ACE American Insurance Company ("ACE")

Dear Ms. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27853717, for the period of 8-1-16 to 08/01/2017. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,

duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.  **Insuring Agreement**

     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

          (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

          (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.  The General Aggregate Limit is the most we will pay for the sum of:

     a.  Medical expenses under Coverage C.

     b.  Damages under Coverage A, and

     c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 213.612.5365.

Sincerely,

ACE American Insurance Company

Will Elkner
Senior Claims Specialist

.

cc:   AON:   Carol Murphy, Carol.Murphy@aon.com

      Sears:   Laurence Jenchel, Laurence.Jenchel@searshc.com
               David Halffield, David.Halffield@searshc.com

      Chubb :   Christine Kloss
                John Edmonds
                Neal Bhatnagar
                Steve Naylor
                Roland Banini