# EXHIBIT 2

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

AN ACT concerning revenue.

# Be it enacted by the People of the State of Illinois, represented in the General Assembly:

Article 1. Findings

Section 1-1. Legislative findings.

(1) The House of Representatives adopted House Resolution 110 on March 8, 2011, setting forth the estimates of general funds the House expects to be available during State fiscal year 2012.

(2) In determining the estimates of general funds expected to be available during State fiscal year 2012, the House Revenue & Finance Committee assumed that the State would not collect approximately $600,000,000 of income tax revenues due to the allowance of special bonus depreciation rules approved by the federal government.

(3) The House of Representatives adopted House Resolution 158 on March 30, 2011, which provides that if the actual amount of funds from State sources that become available during State fiscal year 2012 exceeds the House's estimates set forth in House Resolution 110, then that excess shall first be used to reduce the backlog of unpaid State obligations to the extent authorized by law.

(4) These concepts are prudent and should be continued for

Public Act 097-0636

SB0397 Enrolled                          LRB097 04209 HLH 44248 b

State fiscal year 2013 and beyond.

(5) As the House Revenue & Finance Committee develops the estimates of general funds expected to be available during State fiscal year 2013, an estimated $250,000,000 of income tax revenues in excess of the State fiscal year 2012 budgeted amount will become available due to the phasing out of the allowance of special bonus depreciation rules approved by the federal government.

(6) Therefore, the General Assembly finds that a tax incentive package that does not exceed $250,000,000 in State fiscal year 2013 can be approved without any negative impact to the State budget in State fiscal years 2012 and 2013 while providing tax relief to a large number of Illinois individual and business taxpayers.


Article 5. Illinois Independent Tax Tribunal Act


Section 5-1. Short title. This Article may be cited as the Illinois Independent Tax Tribunal Act.


Section 5-5. Independent Tax Tribunal Board; Department of Revenue.

(a) On and after July 1, 2013, the Department of Revenue, or any successor agency, shall no longer hear and act upon any protests of notices of tax liability or deficiencies for all taxes administered by the Department of Revenue.

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

partnership, limited liability company, or Subchapter S
corporation, the tax credit award is allowed to the partners,
unit holders, or shareholders in accordance with the
determination of income and distributive share of income under
Sections 702 and 704 and Subchapter S of the Internal Revenue
Code.

    (c) A sale, assignment, or transfer of the tax credit award
may be made by the taxpayer earning the credit within one year
after the credit is awarded in accordance with rules adopted by
the Department of Commerce and Economic Opportunity.

    (d) The Department of Revenue, in cooperation with the
Department of Commerce and Economic Opportunity, shall adopt
rules to enforce and administer the provisions of this Section.

    (e) The tax credit award may not be carried back. If the
amount of the credit exceeds the tax liability for the year,
the excess may be carried forward and applied to the tax
liability of the 5 tax years following the excess credit year.
The tax credit award shall be applied to the earliest year for
which there is a tax liability. If there are credits from more
than one tax year that are available to offset liability, the
earlier credit shall be applied first. In no event may a credit
under this Section reduce the taxpayer's liability to less than
zero.


                    Article 15. Amendatory Provisions

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

Section 15-5. The Economic Development Area Tax Increment Allocation Act is amended by changing Sections 3, 4, 5, 8, 9, and 11 and by adding Sections 4.5 and 4.7 as follows:

(20 ILCS 620/3) (from Ch. 67 1/2, par. 1003)

Sec. 3. Definitions. In this Act, words or terms shall have the following meanings unless the context or usage clearly indicates that another meaning is intended.

(a) "Department" means the Department of Commerce and Economic Opportunity.

(b) "Economic development plan" means the written plan of a municipality which sets forth an economic development program for an economic development project area. Each economic development plan shall include but not be limited to (1) estimated economic development project costs, (2) the sources of funds to pay such costs, (3) the nature and term of any obligations to be issued by the municipality to pay such costs, (4) the most recent equalized assessed valuation of the economic development project area, (5) an estimate of the equalized assessed valuation of the economic development project area after completion of an economic development project, (6) the estimated date of completion of any economic development project proposed to be undertaken, (7) a general description of any proposed developer, user, or tenant of any property to be located or improved within the economic development project area, (8) a description of the type,

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

structure and general character of the facilities to be
developed or improved in the economic development project area,
(9) a description of the general land uses to apply in the
economic development project area, (10) a description of the
type, class and number of employees to be employed in the
operation of the facilities to be developed or improved in the
economic development project area, and (11) a commitment by the
municipality to fair employment practices and an affirmative
action plan with respect to any economic development program to
be undertaken by the municipality.

(c) "Economic development project" means any development
project in furtherance of the objectives of this Act.

(d) "Economic development project area" means any improved
or vacant area which (1) is located within or partially within
or partially without the territorial limits of a municipality,
provided that no area without the territorial limits of a
municipality shall be included in an economic development
project area without the express consent of the Department,
acting as agent for the State, (2) is contiguous, (3) is not
less in the aggregate than three hundred twenty acres, (4) is
suitable for siting by any commercial, manufacturing,
industrial, research or transportation enterprise of
facilities to include but not be limited to commercial
businesses, offices, factories, mills, processing plants,
assembly plants, packing plants, fabricating plants,
industrial or commercial distribution centers, warehouses,

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

repair overhaul or service facilities, freight terminals,
research facilities, test facilities or transportation
facilities, whether or not such area has been used at any time
for such facilities and whether or not the area has been used
or is suitable for other uses, including commercial
agricultural purposes, and (5) which has been approved and
certified by the Department pursuant to this Act.

(e) "Economic development project costs" mean and include
the sum total of all reasonable or necessary costs incurred by
a municipality incidental to an economic development project,
including, without limitation, the following:

(1) Costs of studies, surveys, development of plans and
specifications, implementation and administration of an
economic development plan, personnel and professional service
costs for architectural, engineering, legal, marketing,
financial, planning, police, fire, public works or other
services, provided that no charges for professional services
may be based on a percentage of incremental tax revenues;

(2) Property assembly costs within an economic development
project area, including but not limited to acquisition of land
and other real or personal property or rights or interests
therein, and specifically including payments to developers or
other nongovernmental persons as reimbursement for property
assembly costs incurred by such developer or other
nongovernmental person;

(3) Site preparation costs, including but not limited to

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

clearance of any area within an economic development project
area by demolition or removal of any existing buildings,
structures, fixtures, utilities and improvements and clearing
and grading; and including installation, repair, construction,
reconstruction, or relocation of public streets, public
utilities, and other public site improvements within or without
an economic development project area which are essential to the
preparation of the economic development project area for use in
accordance with an economic development plan; and specifically
including payments to developers or other nongovernmental
persons as reimbursement for site preparation costs incurred by
such developer or nongovernmental person;

    (4) Costs of renovation, rehabilitation, reconstruction,
relocation, repair or remodeling of any existing buildings,
improvements, and fixtures within an economic development
project area, and specifically including payments to
developers or other nongovernmental persons as reimbursement
for such costs incurred by such developer or nongovernmental
person;

    (5) Costs of construction, acquisition, and operation
within an economic development project area of public
improvements, including but not limited to, publicly owned
buildings, structures, works, utilities or fixtures; provided
that no allocation made to the municipality pursuant to
subparagraph (A) of paragraph (2) of subsection (g) of Section
4 of this Act or subparagraph (A) of paragraph (4) of

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

subsection (g) of Section 4 of this Act shall be used to
operate a convention center or similar entertainment complex or
venue;

(6) Financing costs, including but not limited to all
necessary and incidental expenses related to the issuance of
obligations, payment of any interest on any obligations issued
hereunder which accrues during the estimated period of
construction of any economic development project for which such
obligations are issued and for not exceeding 36 months
thereafter, and any reasonable reserves related to the issuance
of such obligations;

(7) All or a portion of a taxing district's capital costs
resulting from an economic development project necessarily
incurred or estimated to be incurred by a taxing district in
the furtherance of the objectives of an economic development
project, to the extent that the municipality by written
agreement accepts and approves such costs;

(8) Relocation costs to the extent that a municipality
determines that relocation costs shall be paid or is required
to make payment of relocation costs by federal or State law;

(9) The estimated tax revenues from real property in an
economic development project area acquired by a municipality
which, according to the economic development plan, is to be
used for a private use and which any taxing district would have
received had the municipality not adopted tax increment
allocation financing for an economic development project area

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

and which would result from such taxing district's levies made
after the time of the adoption by the municipality of tax
increment allocation financing to the time the current
equalized assessed value of real property in the economic
development project area exceeds the total initial equalized
value of real property in said area;

(10) Costs of job training, advanced vocational or career
education, including but not limited to courses in
occupational, semi-technical or technical fields leading
directly to employment, incurred by one or more taxing
districts, provided that such costs are related to the
establishment and maintenance of additional job training,
advanced vocational education or career education programs for
persons employed or to be employed by employers located in an
economic development project area, and further provided that
when such costs are incurred by a taxing district or taxing
districts other than the municipality they shall be set forth
in a written agreement by or among the municipality and the
taxing district or taxing districts, which agreement describes
the program to be undertaken, including but not limited to the
number of employees to be trained, a description of the
training and services to be provided, the number and type of
positions available or to be available, itemized costs of the
program and sources of funds to pay the same, and the term of
the agreement. Such costs include, specifically, the payment by
community college districts of costs pursuant to Sections 3-37,

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

3-38, 3-40 and 3-40.1 of the Public Community College Act and
by school districts of costs pursuant to Sections 10-22.20a and
10-23.3a of The School Code;

(11) Private financing costs incurred by developers or
other nongovernmental persons in connection with an economic
development project, and specifically including payments to
developers or other nongovernmental persons as reimbursement
for such costs incurred by such developer or other
nongovernmental person, provided that:

(A) private financing costs shall be paid or reimbursed by
a municipality only pursuant to the prior official action of
the municipality evidencing an intent to pay or reimburse such
private financing costs;

(B) except as provided in subparagraph (D), the aggregate
amount of such costs paid or reimbursed by a municipality in
any one year shall not exceed 30% of such costs paid or
incurred by the developer or other nongovernmental person in
that year;

(C) private financing costs shall be paid or reimbursed by
a municipality solely from the special tax allocation fund
established pursuant to this Act and shall not be paid or
reimbursed from the proceeds of any obligations issued by a
municipality;

(D) if there are not sufficient funds available in the
special tax allocation fund in any year to make such payment or
reimbursement in full, any amount of such interest cost

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

remaining to be paid or reimbursed by a municipality shall accrue and be payable when funds are available in the special tax allocation fund to make such payment; and

(E) in connection with its approval and certification of an economic development project pursuant to Section 5 of this Act, the Department shall review any agreement authorizing the payment or reimbursement by a municipality of private financing costs in its consideration of the impact on the revenues of the municipality and the affected taxing districts of the use of tax increment allocation financing.

(f) "Municipality" means a city, village or incorporated town.

(g) "Obligations" means any instrument evidencing the obligation of a municipality to pay money, including without limitation, bonds, notes, installment or financing contracts, certificates, tax anticipation warrants or notes, vouchers, and any other evidence of indebtedness.

(h) "Taxing districts" means counties, townships, municipalities, and school, road, park, sanitary, mosquito abatement, forest preserve, public health, fire protection, river conservancy, tuberculosis sanitarium and any other municipal corporations or districts with the power to levy taxes upon property located within the economic development project area.

(Source: P.A. 94-793, eff. 5-19-06.)

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

(20 ILCS 620/4) (from Ch. 67 1/2, par. 1004)

Sec. 4. Establishment of economic development project areas; ordinance; notice; hearing; changes in economic development plan. Economic development project areas shall be established as follows:

(a) The corporate authorities of a municipality shall by ordinance propose the establishment of an economic development project area and fix a time and place for a public hearing, and shall submit a certified copy of the ordinance as adopted to the Department.

(b) (1) Notice of the public hearing shall be given by publication and mailing. Notice by publication shall be given by publication at least twice, the first publication to be not more than 30 nor less than 10 days prior to the hearing in a newspaper of general circulation within the taxing districts having property in the proposed economic development project area. Notice by mailing shall be given by depositing such notice together with a copy of the proposed economic development plan in the United States mails by certified mail addressed to the person or persons in whose name the general taxes for the last preceding year were paid on each lot, block, tract, or parcel of land lying within the economic development project area. The notice shall be mailed not less than 10 days prior to the date set for the public hearing. In the event taxes for the last preceding year were not paid, the notice shall also be sent to the persons last listed on the tax rolls

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

within the preceding 3 years as the owners of such property.

(2) The notices issued pursuant to this Section shall
include the following:

(A) The time and place of public hearing;

(B) The boundaries of the proposed economic development
project area by legal description and by street location where
possible;

(C) A notification that all interested persons will be
given an opportunity to be heard at the public hearing;

(D) An invitation for any person to submit alternative
proposals or bids for any proposed conveyance, lease, mortgage
or other disposition of land within the proposed economic
development project area;

(E) A description of the economic development plan or
economic development project if a plan or project is a subject
matter of the hearing; and

(F) Such other matters as the municipality may deem
appropriate.

(3) Not less than 30 days prior to the date set for
hearing, the municipality shall give notice by mail as provided
in this subsection (b) to all taxing districts, of which
taxable property is included in the economic development
project area, and to the Department. In addition to the other
requirements under this subsection (b), the notice shall
include an invitation to the Department and each taxing
district to submit comments to the municipality concerning the

Public Act 097-0636

SB0397 Enrolled                                LRB097 04209 HLH 44248 b

subject matter of the hearing prior to the date of hearing.

(c) At the public hearing any interested person, the
Department or any affected taxing district may file written
objections with the municipal clerk and may be heard orally
with respect to any issues embodied in the notice. The
municipality shall hear and determine all alternate proposals
or bids for any proposed conveyance, lease, mortgage or other
disposition of land and all protests and objections at the
hearing, and the hearing may be adjourned to another date
without further notice other than a motion to be entered upon
the minutes fixing the time and place of the adjourned hearing.
Public hearings with regard to an economic development plan,
economic development project area, or economic development
project may be held simultaneously.

(d) At the public hearing or at any time prior to the
adoption by the municipality of an ordinance approving an
economic development plan, the municipality may make changes in
the economic development plan. Changes which (1) alter the
exterior boundaries of the proposed economic development
project area, (2) substantially affect the general land uses
established in the proposed economic development plan, (3)
substantially change the nature of the proposed economic
development project, (4) change the general description of any
proposed developer, user or tenant of any property to be
located or improved within the economic development project
area, or (5) change the description of the type, class and

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

number of employees to be employed in the operation of the
facilities to be developed or improved within the economic
development project area shall be made only after notice and
hearing pursuant to the procedures set forth in this Section.
Changes which do not (1) alter the exterior boundaries of a
proposed economic development project area, (2) substantially
affect the general land uses established in the proposed
economic development plan, (3) substantially change the nature
of the proposed economic development project, (4) change the
general description of any proposed developer, user or tenant
of any property to be located or improved within the economic
development project area, or (5) change the description of the
type, class and number of employees to be employed in the
operation of the facilities to be developed or improved within
the economic development project area may be made without
further hearing, provided that the municipality shall give
notice of its changes by mail to the Department and to each
affected taxing district and by publication in a newspaper or
newspapers of general circulation within the affected taxing
districts. Such notice by mail and by publication shall each
occur not later than 10 days following the adoption by
ordinance of such changes.

    (e) At any time within 30 days of the final adjournment of
the public hearing, a municipality may, by ordinance, approve
the economic development plan, establish the economic
development project area, and authorize tax increment

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

allocation financing for such economic development project
area. Any ordinance adopted which approves an economic
development plan shall contain findings that the developer or
any of its successor entities and its subsidiaries economic
development project shall create or retain not less than 4,250
2,000 full-time equivalent jobs, that private investment in an
amount not less than $100,000,000 shall occur in the economic
development project area, that the economic development
project will encourage the increase of commerce and industry
within the State, thereby reducing the evils attendant upon
unemployment and increasing opportunities for personal income,
and that the economic development project will increase or
maintain the property, sales and income tax bases of the
municipality and of the State. Any ordinance adopted which
establishes an economic development project area shall contain
the boundaries of such area by legal description and, where
possible, by street location. Any ordinance adopted which
authorizes tax increment allocation financing shall provide
that the ad valorem taxes, if any, arising from the levies upon
taxable real property in such economic development project area
by taxing districts and tax rates determined in the manner
provided in subsection (b) of Section 6 of this Act each year
after the effective date of the ordinance until economic
development project costs and all municipal obligations
financing economic development project costs incurred under
this Act have been paid shall be divided as follows:

Public Act 097-0636

SB0397 Enrolled                                          LRB097 04209 HLH 44248 b

(1) That portion of taxes levied upon each taxable lot, block, tract or parcel of real property which is attributable to the lower of the current equalized assessed value or the initial equalized assessed value of each such taxable lot, block, tract or parcel of real property in the economic development project area shall be allocated to and when collected shall be paid by the county collector to the respective affected taxing districts in the manner required by law in the absence of the adoption of tax increment allocation financing.

(2) That portion, if any, of such taxes which is attributable to the increase in the current equalized assessed valuation of each taxable lot, block, tract or parcel of real property in the economic development project area over and above the initial equalized assessed value of each property in the economic development project area shall be allocated to and when collected shall be paid to the municipal treasurer who shall deposit such taxes into a special fund called the special tax allocation fund of the municipality for the purpose of paying economic development project costs and obligations incurred in the payment thereof.

(f) After a municipality has by ordinance approved an economic development plan and established an economic development project area, the plan may be amended and the boundaries of the area may be altered only as herein provided. Amendments which (1) alter the exterior boundaries of an

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

economic development project area, (2) substantially affect
the general land uses established pursuant to the economic
development plan, (3) substantially change the nature of the
economic development project, (4) change the general
description of any proposed developer, user, or tenant of any
property to be located or improved within the economic
development project area, or (5) change the description of the
type, class and number of employees to be employed in the
operation of the facilities to be developed or improved within
the economic development project area, shall be made only after
notice and hearing pursuant to the procedures set forth in this
Section. Amendments which do not (1) alter the boundaries of
the economic development project area, (2) substantially
affect the general land uses established in the economic
development plan, (3) substantially change the nature of the
economic development project, (4) change the general
description of any proposed developer, user, or tenant of any
property to be located or improved within the economic
development project area, or (5) change the description of the
type, class and number of employees to be employed in the
operation of the facilities to be developed or improved within
the economic development project area may be made without
further hearing, provided that the municipality shall give
notice of any amendment by mail to the Department and to each
taxing district and by publication in a newspaper or newspapers
of general circulation within the affected taxing districts.

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

Such notice by mail and by publication shall each occur not later than 10 days following the adoption by ordinance of any amendments.

(g) Extension of economic development project area; allocations; payment of outstanding claims; changes in equalized assessed valuation.

(1) Notwithstanding anything to the contrary set forth in this Act, upon the effective date of this amendatory Act of the 97th General Assembly, the duration of any existing economic development plan created pursuant to this Act is extended to the duration permitted under this subsection, up to a maximum duration of 15 years.

(2) For the purposes of this Section, real estate taxes paid on property within the economic development project area during calendar year 2013 and remitted to the developer and the taxing districts in 2014 shall be the "base amount". Beginning with real estate taxes remitted in 2014, for any economic development plan extended by operation of item (1) of this subsection (g), until such time as all existing obligations, as that term is defined in item (5) of this subsection (g), have been satisfied, the allocation of the special tax allocation fund shall be as follows:

(A) All receipts up to the first $350,000 shall be maintained by the municipality in an escrow account to be used solely for (i) expenses relating to the reports required by Section 4.7 of this Act and (ii) legal expenses

Public Act 097-0636

SB0397 Enrolled                           LRB097 04209 HLH 44248 b

incurred in defense of any civil action brought against the municipality relating to the economic development agreement. The escrow account shall be within the scope of the annual audit provided in Section 4.7 of this Act. Each December 31 following a deposit into the escrow account, any unobligated balance in the escrow account shall be distributed to the taxing districts in the same manner and proportion as the most recent distribution by the county collector to the taxing districts in the economic development project area.

(B) After the allocation required pursuant to paragraph (A) of this item (2), the next $5,000,000 of the receipts shall be allocated to the municipality.

(C) After the allocations required pursuant to paragraphs (A) and (B) of this item (2), 55% of the remaining receipts shall be allocated to the developer.

(D) After the allocations required pursuant to parts (A) and (B) of this item (2), 45% of the remaining receipts shall be allocated to the taxing districts located within the economic development project area, excluding the municipality.

(3) For real estate taxes paid in 2012 and remitted to the developer and the taxing districts in 2013 and prior years, the allocation formula contained in any economic development plan in effect immediately prior to the effective date of this amendatory Act of the 97th General Assembly shall apply.

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

(4) Beginning with real estate taxes paid in 2014 and remitted to the developer and the taxing districts in 2015 and each year thereafter, if the taxes paid within the economic development project area change from the base amount, the allocation of the special tax allocation fund shall be as follows:

(A) If the amount of current year taxes paid is less than the base amount, then the administrative escrow account shall receive the first $350,000 of receipts, the municipality shall receive the next $5,000,000 of receipts, the developer shall receive 55% of receipts over $5,350,000, and the remaining 45% of receipts over $5,350,000 shall be distributed to the taxing districts (excluding the municipality) in the same manner and proportion as the most recent distribution by the county collector to those taxing districts in the economic development project area.

(B) If the amount of current year taxes paid is greater than the base amount, then 75% of the increase in real estate tax receipts shall be payable to the developer and the remaining 25% of the increase in real estate tax receipts shall be distributed to the taxing districts (including the municipality) pursuant to the formula in this subsection.

(5) After (i) all existing obligations and interest thereon have been satisfied, (ii) any excess moneys have been

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

distributed pursuant to this subsection, and (iii) final
closing of the books and records of the economic development
project area has occurred, the municipality shall adopt an
ordinance dissolving the special tax allocation fund for the
economic development project area and terminating the
designation of the economic development project area as an
economic development project area. All excess moneys in the
special tax allocation fund shall be distributed to the taxing
districts in the same manner and proportion as the most recent
distribution by the county collector to those taxing districts
in the economic development project area. For the purpose of
this subsection (g), "existing obligations" means (i) the
obligations of the developer that existed before the base year,
as certified by a sworn affidavit of the principal financial
officer of the developer attesting that the amounts set forth
are true and correct, (ii) obligations of the municipality
relating to the payment of the obligations of the developer,
and (iii) any amounts payable by taxing districts to the
developer for property taxes determined to have been overpaid,
to the extent that those amounts payable have been carried
forward as an interest bearing note due to the developer. All
obligations of the developer due and payable shall be processed
and paid in the order received, with the oldest notes to be
processed and paid first. Beginning January 1, 2012, all
outstanding interest bearing notes shall bear interest at the
rate of 4% until paid.

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

(h) Beginning on the effective date of this amendatory Act of the 97th General Assembly, the taxing districts shall meet annually 180 days after the close of the municipal fiscal year, or as soon as the economic development project audit for that fiscal year becomes available, to review the effectiveness and status of the economic development project area up to that date.

(Source: P.A. 86-38.)

(20 ILCS 620/4.5 new)

Sec. 4.5. Recapture.

(a) In the event that the developer terminates all of its operations and vacates the redevelopment area within 60 months after the effective date of this amendatory Act of the 97th General Assembly, the developer shall be required to remit to the Department an amount equal to the payments disbursed to the developer in 2014 and subsequent years under the Agreement. Within 30 days after receipt, the Department shall remit such funds to the county collector. The county collector shall thereafter make distribution to the respective taxing districts in the same manner and proportion as the most recent distribution by the county collector to those taxing districts of real property taxes from real property in the economic development project area.

(b) In the event the developer fails to maintain 4,250 jobs at any time before the termination of the economic development

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

project area, except as provided in subsection (c), the
developer shall forfeit an amount of its allocations from the
special tax allocation fund for that time period in which the
developer failed to maintain 4,250 jobs. The amount forfeited
shall equal the percentage of the year that the developer
failed to maintain 4,250 jobs multiplied by the amount the
developer would have received if they maintained 4,250 jobs for
the entire year. Any funds that are forfeited shall be
distributed to the taxing districts in the same manner and
proportion as the most recent distribution by the county
collector to those taxing districts (inclusive of the
municipality) in the economic development project area.

    (c) In the event that the developer maintains no jobs at
any time before the termination of the economic development
project area, the municipality shall adopt an ordinance
dissolving the special tax allocation fund for the economic
development project area and terminating the economic
development project area as an economic development project
area. That ordinance shall be adopted no later than one year
after the date that the developer maintains no jobs within the
economic development project area. All excess moneys in the
special tax allocation fund shall be distributed to the taxing
districts in the same manner and proportion as the most recent
distribution by the county collector to those taxing districts
in the economic development project area.

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

(20 ILCS 620/4.7 new)

Sec. 4.7. Municipal reports. After the effective date of
this amendatory Act of the 97th General Assembly, a
municipality shall submit in an electronic format all of the
following information for each economic development project
area (i) to the State Comptroller and (ii) to all taxing
districts overlapping the economic development project area no
later than 180 days after the close of each municipal fiscal
year or as soon thereafter as the audited financial statements
become available:

(1) Any amendments to the economic development plan or
the economic development project area.

(2) Audited financial statements of the special tax
allocation fund once a cumulative total of $100,000 has
been deposited into the fund.

(3) Certification of the Chief Executive Officer of the
municipality that the municipality has complied with all of
the requirements of this Act during the preceding fiscal
year.

(4) An opinion of legal counsel that the municipality
is in compliance with this Act.

(5) An analysis of the special tax allocation fund that
sets forth:

(A) the balance in the special tax allocation fund
at the beginning of the fiscal year;

(B) all amounts deposited in the special tax

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

allocation fund by source;

(C) an itemized list of all expenditures from the special tax allocation fund by category of permissible economic development project cost; and

(D) the balance in the special tax allocation fund at the end of the fiscal year, including a breakdown of that balance by source and a breakdown of that balance identifying any portion of the balance that is required, pledged, earmarked, or otherwise designated for payment of or securing of obligations and anticipated economic development project costs; any portion of that ending balance that has not been identified or is not identified as being required, pledged, earmarked, or otherwise designated for payment of or securing of obligations or anticipated economic development project costs shall be designated as surplus as set forth in Section 8 of this Act.

(6) A description of all property purchased by the municipality within the economic development project area including:

(A) street address;

(B) approximate size or description of property;

(C) purchase price; and

(D) the seller of the property.

(7) A statement setting forth all activities undertaken in furtherance of the objectives of the economic

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

development plan, including:

    (A) any project implemented in the preceding
fiscal year;

    (B) a description of the economic development
activities undertaken;

    (C) a description of any agreements entered into by
the municipality with regard to the disposition or
redevelopment of any property within the economic
development project area;

    (D) additional information on the use of all funds
received under this Act and steps taken by the
municipality to achieve the objectives of the economic
development plan;

    (E) information regarding contracts that the
municipality's tax increment advisors or consultants
have entered into with entities or persons that have
received, or are receiving, payments financed by tax
increment revenues produced by the same economic
development project area; and

    (F) a review of public and, to the extent possible,
private investment actually undertaken on or after the
effective date of this amendatory Act of the 97th
General Assembly and prior to the date of the report
and estimated to be undertaken during the following
fiscal year; this review shall, on a project by project
basis, set forth the estimated amounts of public and

Public Act 097-0636

SB0397 Enrolled                           LRB097 04209 HLH 44248 b

private investment incurred after the effective date
of this amendatory Act of the 97th General Assembly and
provide the ratio of private investment to public
investment to the date of the report and as estimated
to the completion of the economic development project.

(8) With regard to any obligations issued by the
municipality:

(A) copies of any official statements; and

(B) an analysis prepared by a financial advisor or
underwriter setting forth: (i) the nature and term of
those obligations; and (ii) projected debt service
including required reserves and debt coverage.

(9) For special tax allocation funds that have
experienced cumulative deposits of incremental tax
revenues of $100,000 or more, a certified audit report
reviewing compliance with this Act performed by an
independent certified public accountant licensed by the
authority of the State of Illinois. The financial portion
of the audit must be conducted in accordance with Standards
for Audits of Governmental Organizations, Programs,
Activities, and Functions adopted by the Comptroller
General of the United States (1981), as amended, or the
standards specified by Section 8-8-5 of the Illinois
Municipal Auditing Law of the Illinois Municipal Code. The
audit report shall contain a letter from the independent
certified public accountant indicating compliance or

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

noncompliance with the requirements of subsection (e) of
Section 3 of this Act.

(10) A list of all intergovernmental agreements in
effect during the fiscal year to which the municipality is
a party and an accounting of any moneys transferred or
received by the municipality during that fiscal year
pursuant to those intergovernmental agreements.

(20 ILCS 620/5) (from Ch. 67 1/2, par. 1005)

Sec. 5. Submission to Department; certification by
Department; limitation on number of permissible economic
development project areas. (a) The municipality shall submit
certified copies of any ordinances adopted approving an
economic development plan, establishing an economic
development project area, and authorizing tax increment
allocation financing for such economic development project
area to the Department, together with (1) a map of the economic
development project area, (2) a copy of the economic
development plan as approved, (3) an analysis, and any
supporting documents and statistics, demonstrating that the
developer or any of its successor entities and its subsidiaries
economic development project shall create or retain not less
than 4,250 2,000 full-time equivalent jobs and that private
investment in the amount of not less than $100,000,000 shall
occur in the economic development project area, (4) an estimate
of the economic impact of the economic development project and

Public Act 097-0636

SB0397 Enrolled                            LRB097 04209 HLH 44248 b

the use of tax increment allocation financing upon the revenues
of the municipality and the affected taxing districts, (5) a
record of all public hearings had in connection with the
establishment of the economic development project area, and (6)
such other information as the Department by regulation may
require.

(b) Upon receipt of an application from a municipality the
Department shall review the application to determine whether
the economic development project area qualifies as an economic
development project area under this Act. At its discretion, the
Department may accept or reject the application or may request
such additional information as it deems necessary or advisable
to aid its review. If any such area is found to be qualified to
be an economic development project area, the Department shall
approve and certify such economic development project area and
shall provide written notice of its approval and certification
to the municipality and to the county clerk. In determining
whether an economic development project area shall be approved
and certified, the Department shall consider (1) whether,
without public intervention, the State would suffer
substantial economic dislocation, such as relocation of a
commercial business or industrial or manufacturing facility to
another state, territory or country, or would not otherwise
benefit from private investment offering substantial
employment opportunities and economic growth, and (2) the
impact on the revenues of the municipality and the affected

Public Act 097-0636

SB0397 Enrolled                               LRB097 04209 HLH 44248 b

taxing districts of the use of tax increment allocation financing in connection with the economic development project.

(c) On or before the date which is 18 months following the date on which this Act becomes law, the Department shall submit to the General Assembly a report detailing the number of economic development project areas it has approved and certified, the number and type of jobs created or retained therein, the aggregate amount of private investment therein, the impact on the revenues of municipalities and affected taxing districts of the use of tax increment allocation financing therein, and such additional information as the Department may determine to be relevant. On or after the date which is 20 months following the date on which this Act becomes law the authority granted hereunder to municipalities to establish economic development project areas and to adopt tax increment allocation financing in connection therewith and to the Department to approve and certify economic development project areas shall expire unless the General Assembly shall have authorized municipalities and the Department to continue to exercise the powers granted to them hereunder.

(Source: P.A. 86-38.)


    (20 ILCS 620/8) (from Ch. 67 1/2, par. 1008)

    Sec. 8. Issuance of obligations for economic development project costs. Obligations secured by the special tax allocation fund provided for in Section 7 of this Act for an

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

economic development project area may be issued to provide for
economic development project costs. Those obligations, when so
issued, shall be retired in the manner provided in the
ordinance authorizing the issuance of the obligations by the
receipts of taxes levied as specified in Section 6 of this Act
against the taxable property included in the economic
development project area and by other revenue designated or
pledged by the municipality. A municipality may in the
ordinance pledge all or any part of the funds in and to be
deposited in the special tax allocation fund created pursuant
to Section 7 of this Act to the payment of the economic
development project costs and obligations. Whenever a
municipality pledges all of the funds to the credit of a
special tax allocation fund to secure obligations issued or to
be issued to pay economic development project costs, the
municipality may specifically provide that funds remaining to
the credit of such special tax allocation fund after the
payment of such obligations shall be accounted for annually and
shall be deemed to be "surplus" funds, and such "surplus" funds
shall be distributed as hereinafter provided. Whenever a
municipality pledges less than all of the monies to the credit
of a special tax allocation fund to secure obligations issued
or to be issued to pay economic development project costs, the
municipality shall provide that monies to the credit of the
special tax allocation fund and not subject to such pledge or
otherwise encumbered or required for payment of contractual

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

obligations for specific economic development project costs
shall be calculated annually and shall be deemed to be
"surplus" funds, and such "surplus" funds shall be distributed
as hereinafter provided. All funds to the credit of a special
tax allocation fund which are deemed to be "surplus" funds
shall be distributed annually within 180 days of the close of
the municipality's fiscal year by being paid by the municipal
treasurer to the county collector. The county collector shall
thereafter make distribution to the respective taxing
districts in the same manner and proportion as the most recent
distribution by the county collector to those taxing districts
of real property taxes from real property in the economic
development project area.

    Without limiting the foregoing in this Section the
municipality may, in addition to obligations secured by the
special tax allocation fund, pledge for a period not greater
than the term of the obligations towards payment of those
obligations any part or any combination of the following: (i)
net revenues of all or part of any economic development
project; (ii) taxes levied and collected on any or all property
in the municipality, including, specifically, taxes levied or
imposed by the municipality in a special service area pursuant
to "An Act to provide the manner of levying or imposing taxes
for the provision of special services to areas within the
boundaries of home rule units and non-home rule municipalities
and counties", approved September 21, 1973, as now or hereafter

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

amended; (iii) the full faith and credit of the municipality;
(iv) a mortgage on part or all of the economic development
project; or (v) any other taxes or anticipated receipts that
the municipality may lawfully pledge.

Such obligations may be issued in one or more series
bearing interest at such rate or rates as the corporate
authorities of the municipality shall determine by ordinance,
which rate or rates may be variable or fixed, without regard to
any limitations contained in any law now in effect or hereafter
adopted. Such obligations shall bear such date or dates, mature
at such time or times not exceeding 38 ~~20~~ years from their
respective dates, but in no event exceeding 38 ~~23~~ years from
the date of establishment of the economic development project
area, be in such denomination, be in such form, whether coupon,
registered or book-entry, carry such registration, conversion
and exchange privileges, be executed in such manner, be payable
in such medium of payment at such place or places within or
without the State of Illinois, contain such covenants, terms
and conditions, be subject to redemption with or without
premium, be subject to defeasance upon such terms, and have
such rank or priority, as such ordinance shall provide.
Obligations issued pursuant to this Act may be sold at public
or private sale at such price as shall be determined by the
corporate authorities of the municipalities. Such obligations
may, but need not, be issued utilizing the provisions of any
one or more of the omnibus bond Acts specified in Section 1.33

Public Act 097-0636

SB0397 Enrolled                                 LRB097 04209 HLH 44248 b

of "An Act to revise the law in relation to the construction of
the statutes", approved March 5, 1874, as now or hereafter
amended. No referendum approval of the electors shall be
required as a condition to the issuance of obligations pursuant
to this Act except as provided in this Section.

   Whenever a municipality issues bonds for the purpose of
financing economic development project costs, the municipality
may provide by ordinance for the appointment of a trustee,
which may be any trust company within the State, and for the
establishment of the funds or accounts to be maintained by such
trustee as the municipality shall deem necessary to provide for
the security and payment of the bonds. If the municipality
provides for the appointment of a trustee, the trustee shall be
considered the assignee of any payments assigned by the
municipality pursuant to the ordinance and this Section. Any
amounts paid to the trustee as assignee shall be deposited in
the funds or accounts established pursuant to the trust
agreement, and shall be held by the trustee in trust for the
benefit of the holders of the bonds, and the holders shall have
a lien on and a security interest in those bonds or accounts so
long as the bonds remain outstanding and unpaid. Upon
retirement of the bonds, the trustee shall pay over any excess
amounts held to the municipality for deposit in the special tax
allocation fund.

   In the event the municipality authorizes the issuance of
obligations pursuant to the authority of this Act secured by

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

publication of the ordinance, the ordinance shall be in effect.
However, if within that 21 day period a petition is filed with
the municipal clerk, signed by electors numbering not less than
15% of the number of electors voting for the mayor or president
at the last general municipal election, asking that the
question of issuing obligations using full faith and credit of
the municipality as security for the cost of paying for
economic development project costs, or of pledging such ad
valorem taxes for the payment of those obligations, or both, be
submitted to the electors of the municipality, the municipality
shall not be authorized to issue obligations of the
municipality using the full faith and credit of the
municipality as security or pledging such ad valorem taxes for
the payment of those obligations, or both, until the
proposition has been submitted to and approved by a majority of
the voters voting on the proposition at a regularly scheduled
election. The municipality shall certify the proposition to the
proper election authorities for submission in accordance with
the general election law.

The ordinance authorizing the obligations may provide that
the obligations shall contain a recital that they are issued
pursuant to this Act, which recital shall be conclusive
evidence of their validity and of the regularity of their
issuance.

In the event the municipality authorizes issuance of
obligations pursuant to this Act secured by the full faith and

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

the full faith and credit of the municipality, or pledges ad
valorem taxes pursuant to clause (ii) of the second paragraph
of this Section, which obligations are other than obligations
which may be issued under home rule powers provided by Article
VII, Section 6 of the Illinois Constitution or which ad valorem
taxes are other than ad valorem taxes which may be pledged
under home rule powers provided by Article VII, Section 6 of
the Illinois Constitution or which are levied in a special
service area pursuant to "An Act to provide the manner of
levying or imposing taxes for the provision of special services
to areas within the boundaries of home rule units and non-home
rule municipalities and counties", approved September 21,
1973, as now or hereafter amended, the ordinance authorizing
the issuance of those obligations or pledging those taxes shall
be published within 10 days after the ordinance has been
adopted, in one or more newspapers having a general circulation
within the municipality. The publication of the ordinance shall
be accompanied by a notice of (1) the specific number of voters
required to sign a petition requesting the question of the
issuance of the obligations or pledging such ad valorem taxes
to be submitted to the electors; (2) the time within which the
petition must be filed; and (3) the date of the prospective
referendum. The municipal clerk shall provide a petition form
to any individual requesting one.

    If no petition is filed with the municipal clerk, as
hereinafter provided in this Section, within 21 days after the

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

credit of the municipality, the ordinance authorizing the
obligations may provide for the levy and collection of a direct
annual tax upon all taxable property within the municipality
sufficient to pay the principal thereof and interest thereon as
it matures, which levy may be in addition to and exclusive of
the maximum of all other taxes authorized to be levied by the
municipality, which levy, however, shall be abated to the
extent that monies from other sources are available for payment
of the obligations and the municipality certifies the amount of
those monies available to the county clerk.

A certified copy of the ordinance shall be filed with the
county clerk of each county in which any portion of the
municipality is situated, and shall constitute the authority
for the extension and collection of the taxes to be deposited
in the special tax allocation fund.

A municipality may also issue its obligations to refund, in
whole or in part, obligations theretofore issued by the
municipality under the authority of this Act, whether at or
prior to maturity. However, the last maturity of the refunding
obligations shall not be expressed to mature later than 38 23
years from the date of the ordinance establishing the economic
development project area.

In the event a municipality issues obligations under home
rule powers or other legislative authority, the proceeds of
which are pledged to pay for economic development project
costs, the municipality may, if it has followed the procedures

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

in conformance with this Act, retire those obligations from funds in the special tax allocation fund in amounts and in such manner as if those obligations had been issued pursuant to the provisions of this Act.

No obligations issued pursuant to this Act shall be regarded as indebtedness of the municipality issuing those obligations or any other taxing district for the purpose of any limitation imposed by law.

Obligations issued pursuant to this Act shall not be subject to the provisions of "An Act to authorize public corporations to issue bonds, other evidences of indebtedness and tax anticipation warrants subject to interest rate limitations set forth therein", approved May 26, 1970, as amended.

(Source: P.A. 86-38.)


(20 ILCS 620/9) (from Ch. 67 1/2, par. 1009)

Sec. 9. Powers of municipalities. In addition to powers which it may now have, any municipality has the power under this Act:

(a) To make and enter into all contracts necessary or incidental to the implementation and furtherance of an economic development plan.

(b) Within an economic development project area, to acquire by purchase, donation, lease or eminent domain, and to own, convey, lease, mortgage or dispose of land and other real or

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

personal property or rights or interests therein; and to grant or acquire licenses, easements and options with respect thereto, all in the manner and at such price the municipality determines is reasonably necessary to achieve the objectives of the economic development project. No conveyance, lease, mortgage, disposition of land or other property acquired by the municipality, or agreement relating to the development of property, shall be made or executed except pursuant to prior official action of the municipality. No conveyance, lease, mortgage or other disposition of land, and no agreement relating to the development of property, shall be made without making public disclosure of the terms and disposition of all bids and proposals submitted to the municipality in connection therewith.

(c) To clear any area within an economic development project area by demolition or removal of any existing buildings, structures, fixtures, utilities or improvements, and to clear and grade land.

(d) To install, repair, construct, reconstruct or relocate public streets, public utilities, and other public site improvements within or without an economic development project area which are essential to the preparation of an economic development project area for use in accordance with an economic development plan.

(e) To renovate, rehabilitate, reconstruct, relocate, repair or remodel any existing buildings, improvements, and

Public Act 097-0636

SB0397 Enrolled                                LRB097 04209 HLH 44248 b

fixtures within an economic development project area.

(f)   To   construct, acquire, and operate   public
improvements, including but not limited to, publicly owned
buildings, structures, works, utilities or fixtures within any
economic development project area, subject to the restrictions
of item (5) of subsection (e) of Section 3 of this Act.

(g) To issue obligations as provided in this Act provided.

(h) To fix, charge and collect fees, rents and charges for
the use of any building, facility or property or any portion
thereof owned or leased by the municipality within an economic
development project area.

(i) To accept grants, guarantees, donations of property or
labor, or any other thing of value for use in connection with
an economic development project.

(j) To pay or cause to be paid economic development project
costs. Any payments to be made by the municipality to
developers or other nongovernmental persons for economic
development project costs incurred by such developer or other
nongovernmental person shall be made only pursuant to the prior
official action of the municipality evidencing an intent to pay
or cause to be paid such economic development project costs. A
municipality is not required to obtain any right, title or
interest in any real or personal property in order to pay
economic development project costs associated with such
property. The municipality shall adopt such accounting
procedures as may be necessary to determine that such economic

Public Act 097-0636

SB0397 Enrolled                                LRB097 04209 HLH 44248 b

development project costs are properly paid.

(k) To exercise any and all other powers necessary to
effectuate the purposes of this Act.

(l) To create a commission of not less than 5 or more than
15 persons to be appointed by the mayor or president of the
municipality with the consent of the majority of the corporate
authorities of the municipality. Members of a commission shall
be appointed for initial terms of 1, 2, 3, 4, and 5 years,
respectively, in such numbers as to provide that the terms of
not more than 1/3 of all such members shall expire in any one
year. Their successors shall be appointed for a term of 5
years. The commission, subject to approval of the corporate
authorities, may exercise the powers enumerated in this
Section. The commission shall also have the power to hold the
public hearings required by this Act and make recommendations
to the corporate authorities concerning the approval of
economic development plans, the establishment of economic
development project areas, and the adoption of tax increment
allocation financing for economic development project areas.
(Source: P.A. 91-357, eff. 7-29-99.)


(20 ILCS 620/11) (from Ch. 67 1/2, par. 1011)

Sec. 11. Payment of project costs; revenues from
~~governmental~~ municipal property. Revenues received by a taxing
district ~~municipality~~ from any property, building or facility
owned, leased or operated by the taxing district ~~municipality~~

Public Act 097-0636

SB0397 Enrolled                                LRB097 04209 HLH 44248 b

or any agency or authority established by the taxing district
municipality may be used to pay economic development project
costs, or reduce outstanding obligations of the taxing district
municipality incurred under this Act for economic development
project costs. The taxing district municipality may place those
revenues in the special tax allocation fund which shall be held
by the municipal treasurer of the taxing district or other
person designated by the taxing district municipality. Revenue
received by a taxing district the municipality from the sale or
other disposition of real or personal property or rights or
interests therein acquired by a taxing district the
municipality with the proceeds of obligations funded by tax
increment allocation financing may be used to acquire and
operate other governmental property that is within the economic
development project area or that provides services within the
economic development project area, subject to the restrictions
of item (5) of subsection (e) of Section 3 of this Act. shall
be deposited by the municipality in the special tax allocation
fund.

(Source: P.A. 86-38.)


    Section 15-7. The New Markets Development Program Act is
amended by changing Section 50 as follows:


    (20 ILCS 663/50)
    Sec. 50. Sunset. For fiscal years following fiscal year

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

with, the provisions of any other Section of this Act shall

have the same meaning as in such other Section.

(Source: P.A. 96-641, eff. 8-24-09; 97-507, eff. 8-23-11.)


Section 15-15. The Economic Development for a Growing
Economy Tax Credit Act is amended by changing Section 5-15 as
follows:


(35 ILCS 10/5-15)

Sec. 5-15. Tax Credit Awards. Subject to the conditions set
forth in this Act, a Taxpayer is entitled to a Credit against
or, as described in subsection (g) of this Section, a payment
towards taxes imposed pursuant to subsections (a) and (b) of
Section 201 of the Illinois Income Tax Act that may be imposed
on the Taxpayer for a taxable year beginning on or after
January 1, 1999, if the Taxpayer is awarded a Credit by the
Department under this Act for that taxable year.

(a) The Department shall make Credit awards under this Act
to foster job creation and retention in Illinois.

(b) A person that proposes a project to create new jobs in
Illinois must enter into an Agreement with the Department for
the Credit under this Act.

(c) The Credit shall be claimed for the taxable years
specified in the Agreement.

(d) The Credit shall not exceed the Incremental Income Tax
attributable to the project that is the subject of the

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

Agreement.

(e) Nothing herein shall prohibit a Tax Credit Award to an Applicant that uses a PEO if all other award criteria are satisfied.

(f) In lieu of the Credit allowed under this Act against the taxes imposed pursuant to subsections (a) and (b) of Section 201 of the Illinois Income Tax Act for any taxable year ending on or after December 31, 2009, the Taxpayer may elect to claim the Credit against its obligation to pay over withholding under Section 704A of the Illinois Income Tax Act.

(1) The election under this subsection (f) may be made only by a Taxpayer that (i) is primarily engaged in one of the following business activities: water purification and treatment, motor vehicle metal stamping, automobile manufacturing, automobile and light duty motor vehicle manufacturing, motor vehicle manufacturing, light truck and utility vehicle manufacturing, heavy duty truck manufacturing, motor vehicle body manufacturing, cable television infrastructure design or manufacturing, or wireless telecommunication or computing terminal device design or manufacturing for use on public networks and (ii) meets the following criteria:

(A) the Taxpayer (i) had an Illinois net loss or an Illinois net loss deduction under Section 207 of the Illinois Income Tax Act for the taxable year in which the Credit is awarded, (ii) employed a minimum of 1,000

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

full-time employees in this State during the taxable
year in which the Credit is awarded, (iii) has an
Agreement under this Act on December 14, 2009 (the
effective date of Public Act 96-834), and (iv) is in
compliance with all provisions of that Agreement;

(B) the Taxpayer (i) had an Illinois net loss or an
Illinois net loss deduction under Section 207 of the
Illinois Income Tax Act for the taxable year in which
the Credit is awarded, (ii) employed a minimum of 1,000
full-time employees in this State during the taxable
year in which the Credit is awarded, and (iii) has
applied for an Agreement within 365 days after December
14, 2009 (the effective date of Public Act 96-834);

(C) the Taxpayer (i) had an Illinois net operating
loss carryforward under Section 207 of the Illinois
Income Tax Act in a taxable year ending during calendar
year 2008, (ii) has applied for an Agreement within 150
days after the effective date of this amendatory Act of
the 96th General Assembly, (iii) creates at least 400
new jobs in Illinois, (iv) retains at least 2,000 jobs
in Illinois that would have been at risk of relocation
out of Illinois over a 10-year period, and (v) makes a
capital investment of at least $75,000,000;

(D) the Taxpayer (i) had an Illinois net operating
loss carryforward under Section 207 of the Illinois
Income Tax Act in a taxable year ending during calendar

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

year 2009, (ii) has applied for an Agreement within 150
days after the effective date of this amendatory Act of
the 96th General Assembly, (iii) creates at least 150
new jobs, (iv) retains at least 1,000 jobs in Illinois
that would have been at risk of relocation out of
Illinois over a 10-year period, and (v) makes a capital
investment of at least $57,000,000; or

(E) the Taxpayer (i) employed at least 2,500
full-time employees in the State during the year in
which the Credit is awarded, (ii) commits to make at
least $500,000,000 in combined capital improvements
and project costs under the Agreement, (iii) applies
for an Agreement between January 1, 2011 and June 30,
2011, (iv) executes an Agreement for the Credit during
calendar year 2011, and (v) was incorporated no more
than 5 years before the filing of an application for an
Agreement.

(1.5) The election under this subsection (f) may also
be made by a Taxpayer for any Credit awarded pursuant to an
agreement that was executed between January 1, 2011 and
June 30, 2011, if the Taxpayer (i) is primarily engaged in
the manufacture of inner tubes or tires, or both, from
natural and synthetic rubber, (ii) employs a minimum of
2,400 full-time employees in Illinois at the time of
application, (iii) creates at least 350 full-time jobs and
retains at least 250 full-time jobs in Illinois that would

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

have been at risk of being created or retained outside of
Illinois, and (iv) makes a capital investment of at least
$200,000,000 at the project location.

(1.6) The election under this subsection (f) may also
be made by a Taxpayer for any Credit awarded pursuant to an
agreement that was executed within 150 days after the
effective date of this amendatory Act of the 97th General
Assembly, if the Taxpayer (i) is primarily engaged in the
operation of a discount department store, (ii) maintains
its corporate headquarters in Illinois, (iii) employs a
minimum of 4,250 full-time employees at its corporate
headquarters in Illinois at the time of application, (iv)
retains at least 4,250 full-time jobs in Illinois that
would have been at risk of being relocated outside of
Illinois, (v) had a minimum of $40,000,000,000 in total
revenue in 2010, and (vi) makes a capital investment of at
least $300,000,000 at the project location.

(1.7) Notwithstanding any other provision of law, the
election under this subsection (f) may also be made by a
Taxpayer for any Credit awarded pursuant to an agreement
that was executed or applied for on or after July 1, 2011
and on or before March 31, 2012, if the Taxpayer is
primarily engaged in the manufacture of original and
aftermarket filtration parts and products for automobiles,
motor vehicles, light duty motor vehicles, light trucks and
utility vehicles, and heavy duty trucks, (ii) employs a

Public Act 097-0636

SB0397 Enrolled                              LRB097 04209 HLH 44248 b

minimum of 1,000 full-time employees in Illinois at the
time of application, (iii) creates at least 250 full-time
jobs in Illinois, (iv) relocates its corporate
headquarters to Illinois from another state, and (v) makes
a capital investment of at least $4,000,000 at the project
location.

(2) An election under this subsection shall allow the
credit to be taken against payments otherwise due under
Section 704A of the Illinois Income Tax Act during the
first calendar year beginning after the end of the taxable
year in which the credit is awarded under this Act.

(3) The election shall be made in the form and manner
required by the Illinois Department of Revenue and, once
made, shall be irrevocable.

(4) If a Taxpayer who meets the requirements of
subparagraph (A) of paragraph (1) of this subsection (f)
elects to claim the Credit against its withholdings as
provided in this subsection (f), then, on and after the
date of the election, the terms of the Agreement between
the Taxpayer and the Department may not be further amended
during the term of the Agreement.

(g) A pass-through entity that has been awarded a credit
under this Act, its shareholders, or its partners may treat
some or all of the credit awarded pursuant to this Act as a tax
payment for purposes of the Illinois Income Tax Act. The term
"tax payment" means a payment as described in Article 6 or

Public Act 097-0636

SB0397 Enrolled                                    LRB097 04209 HLH 44248 b

Article 8 of the Illinois Income Tax Act or a composite payment
made by a pass-through entity on behalf of any of its
shareholders or partners to satisfy such shareholders' or
partners' taxes imposed pursuant to subsections (a) and (b) of
Section 201 of the Illinois Income Tax Act. In no event shall
the amount of the award credited pursuant to this Act exceed
the Illinois income tax liability of the pass-through entity or
its shareholders or partners for the taxable year.

(Source: P.A. 96-834, eff. 12-14-09; 96-836, eff. 12-16-09;
96-905, eff. 6-4-10; 96-1000, eff. 7-2-10; 96-1534, eff.
3-4-11; 97-2, eff. 5-6-11.)


    Section 15-17. The Business Location Efficiency Incentive
Act is amended by changing Section 25 as follows:


    (35 ILCS 11/25)

    (Section scheduled to be repealed on December 31, 2011)

    Sec. 25. Repeal. This Act is repealed on December 31, 2016
2011.

(Source: P.A. 94-966, eff. 1-1-07.)


    Section 15-18. The Small Business Job Creation Tax Credit
Act is amended by changing Sections 10 and 25 as follows:


    (35 ILCS 25/10)

    Sec. 10. Definitions. In this Act: