Hearing Date and Time: April 18, 2019 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re                                          :
                                               :   Chapter 11
SEARS HOLDINGS CORPORATION, et al.,            :
                                               :   Case No. 18-23538 (RDD)
                                               :
              Debtors.¹                        :   (Jointly Administered)
                                               :
-----------------------------------------------------------------x
```

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' OBJECTION TO
APPLICATION OF MAULDIN AT BUTLER, LLC
(STORE NO. 7274) FOR PAYMENT OF ADMINISTRATIVE EXPENSES**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation, and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Application of Mauldin at Butler, LLC (Store No. 7274) for Payment of Administrative Expenses* (ECF No. 2690) (the "**Motion**"),[2] filed by Mauldin at Butler, LLC (the "**Landlord**"). In support of the Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. Debtor Kmart Corporation ("**Kmart**") and Landlord are parties to that certain lease, dated April 14, 1978 (together with any amendments, modifications, renewals and guaranties, the "**Lease**"), for premises located at 129 West Butler Road, Mauldin, South Carolina (the "**Premises**").

2. On October 15, 2018, the Debtors filed a motion seeking to establish procedures for rejecting certain burdensome, unexpired non-residential real property leases and related subleases that were not needed for their restructuring efforts (ECF No. 24) (the "**Lease Rejection Procedures Motion**" and, the procedures set forth therein, the "**Lease Rejection Procedures**"). An order approving the Lease Rejection Procedures Motion was entered on November 16, 2018 (ECF No. 800). Pursuant to the Lease Rejection Procedures, on February 26,

---

[2] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

2019, the Debtors filed a notice of rejection of, among others, the Lease (ECF No. 2695) (the "**Lease Rejection Notice**").

3. The Motion was filed the same day the Debtors filed the Lease Rejection Notice seeking to reject the Lease. In the Motion, the Landlord seeks payment of approximately $88,600 in real estate taxes (the "**2018 Real Estate Taxes**") as an administrative expense pursuant to sections 503(a), 503(b)(1)(A), and 507(a)(2) of the Bankruptcy Code. *See* Motion, ¶ 13. The lion's share of the 2018 Real Estate Taxes are attributable to the prepetition period. The Landlord's demand for payment of the prepetition claim is improper, would provide a significant windfall to the Landlord, and should be denied.

## BACKGROUND

*The Debtors' Chapter 11 Cases*

4. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

6. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

7. On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

*(III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC.

8.  Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

*The Rejected Lease*

9.  The Landlord owns the Premises, and is the successor in interest under the Lease. Beginning on April 14, 1978, Kmart leased the Premises pursuant to the terms of the Lease. Section 36 of the Lease provides that Kmart is to pay real estate taxes during the lease term. An excerpt of the Lease setting forth the parties' real estate tax obligations is annexed hereto as **Exhibit A**.

10. On April 24, 2014, Kmart and the Landlord entered into the ninth amendment of the Lease (the "**Ninth Lease Amendment**"). Pursuant to the Ninth Lease Amendment, in exchange for allowing Chick-fil-A to occupy a portion of the Premises, the Landlord was required to pay Kmart one-half of the monthly rent from Chick-fil-A, in the amount of $3,333.33 (the "**Subtenant Rent**"). A copy of the Ninth Lease Amendment is annexed hereto as **Exhibit B**.

11. On or about November 30, 3018, the Landlord invoiced Kmart for the 2018 Real Estate Taxes, totaling $88,660.08. *See* Motion, ¶ 5.

12. On February 26, 2019, the Debtors filed the Lease Rejection Notice, pursuant to which the Debtors sought to reject the Lease as of February 26, 2019 (the "**Rejection**

4

**Date**"). On March 13, 2019, the Bankruptcy Court entered the order approving the rejection of the Lease, among others (ECF No. 2805).

13. The Debtors believe that they have remitted payment of all postpetition rent, CAM, and real estate tax amounts owed to the Landlord from the Commencement Date to the Rejection Date, other than real estate taxes for the period from January 1, 2019 to the Rejection Date, which have not been billed yet and are estimated to be approximately $15,000 (the "**2019 Real Estate Taxes**").

14. The Landlord has withheld the Subtenant Rent from the Debtors and has asserted a right to recoupment with respect thereto. The Debtors do not dispute the Landlord's right to assert a right of recoupment against amounts the Debtors may owe for the 2019 Real Estate Taxes. Application of the Subtenant Rent to the 2019 Real Estate Taxes would leave a postpetition amount due of less than $2,000. Other than that de minimis amount, the Debtors believe the only unresolved issue raised in the Motion is the prepetition portion of the 2018 Real Estate Taxes.

15. Despite the Debtors' belief that the Landlord is not entitled to payment of the 2018 Real Estate Taxes, the Debtors have made several attempts to consensually resolve the Motion so as not to unnecessarily waste resources of the Court and the Debtors' estates. The Landlord has declined all such offers.

## **THE MOTION SHOULD BE DENIED**

16. The Debtors do not dispute that section 503(b)(1)(A) of the Bankruptcy Code provides for the allowance of administrative expenses for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). But the Landlord's demand for payment of the 2018 Real Estate Taxes goes far beyond what is required or permitted under section 503(b)(1)(A) or section 365(d)(3) of the Bankruptcy Code.

5

17.     As a threshold matter, and as stated above, the Debtors have remitted payment to the Landlord for all billed postpetition obligations under the Lease up to the Rejection Date, including the postpetition portion of the 2018 Real Estate Taxes.  The remaining unpaid 2018 Real Estate Taxes are solely for prepetition amounts.

### A.     Payment of the 2018 Real Estate Taxes Did Not Benefit the Estate

18.     The sole support for the relief requested in the Motion is the Landlord's naked assertion that the "[Landlord's] payment of those taxes was a direct benefit to Kmart and the estate." Motion, at ¶ 13.

19.     It is hard to imagine how the Landlord's payment of prepetition real estate taxes benefited Kmart or any other Debtor.  On that basis alone, the Motion should be denied.

### B.     The 2018 Real Estate Taxes Should be Prorated.

20.     Section 365(d)(3) of the Bankruptcy Code, in pertinent part, states that "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).  The purpose of the section is to ensure that landlords would not be disadvantaged by providing postpetition services to a debtor; to "fix the amount to be paid by debtor-tenants pending assumption or rejection at the amount provided in the lease; to require payments to be made at the time required under the lease; and to remove the bankruptcy court's power to review the amount to be paid as administrative rent for reasonableness." *In re Ames Dep't Stores, Inc.*, 306 B.R. at 69.

21.     The majority of the courts in the Second Circuit calculate a debtor's obligations under section 365(d)(3) using the proration method, rather than the billing date method, for amounts that staddle the prepetition/postpetition periods but become due postpetition and pre-

6

rejection. For instance, in *In re Child World, Inc.*, 161 B.R. 571 (S.D.N.Y. 1993), the United States District Court for the Southern District of New York held that real estate taxes that were billed during the postpetition, pre-rejection period should be prorated so that the debtor need only pay the postpetition portion. 161 B.R. at 577. In reaching its conclusion, the Court noted:

> Nothing in the legislative history indicates that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date . . . . Allowing landlords to recover for items of rent which are billed during the postpetition, prerejection period, but which represent payment for services rendered by the landlord outside this time period, would grant landlords a windfall payment, to the detriment of other creditors, without any support from the legislative history.

*Id.* at 575–76, *rev'g* 150 B.R. 328 (Bankr. S.D.N.Y. 1993); *see also In re McCrory Corp.*, 210 B.R. 934, 938–39 (S.D.N.Y. 1997) (quoting *Child World* and following its reasoning); *Ames Dep't Stores, Inc.*, 306 B.R. 43, 69 (Bankr. S.D.N.Y. 2004) (same).

22. Similarly, in *In re McCrory Corp.*, the United States District Court for the Southern District of New York affirmed the bankruptcy court's decision to prorate real estate taxes, a significant portion of which would be for the post-rejection period. The *McCrory* court unambiguously concluded that "the debtor-tenant's obligations under the lease to pay real estate taxes accrues on a daily basis and that, under § 365(d)(3), postpetition bills must be prorated so that the debtor only pays those charges accruing during the postpetition, pre-rejection period." *Id.* at 940. Further, the court observed that "[r]eliance strictly on the billing date would result in a windfall either to the landlord or to the debtor-tenant." *Id.* In other words, the proration method, when applied, achieves a fair result for both the debtor and landlord.

23. There are some unique circumstances in which courts in this Circuit have held that the billing date method, rather than the proration method, should be applied. But those cases involve unusual facts and are readily distinguishable from the facts in the instant case. *See,*

7

*e.g.*, *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 U.S. Dist. LEXIS 6186, at *7 (S.D.N.Y. 2002) (finding that a lump sum payment of $1 million set forth in the lease, representing a reimbursement for construction costs, should not be prorated); *R.H. Macy & Co. v. Lakewood Mall Shopping Ctr.*, 1994 U.S. Dist. LEXIS 21364, at *30 (S.D.N.Y. 1994) (applying the billing date method for payment of reassessed real estate taxes, all of which related to the prepetition tax period, triggered by a change of control of the lessee). Even those courts, however, recognize that the proration method is the preferable approach when the particular facts of a case involve "obligations that, by agreement, accrued over time, *such as the obligations of tenants to pay real estate taxes*, common area maintenance expenses, and other additional rent items." *Loews Cineplex Entm't Corp.*, 2002 U.S. Dist. LEXIS 6186, at *19 (emphasis added).

24.     Here, no unique or extenuating circumstances warrant the application of the billing date method in lieu of the proration method. Rather, as the *Loews Cineplex* court expressly stated, such obligations "by their very terms accrue[] on a daily basis." *Id*. at *20. Accordingly, the proration method should be applied in determining the amount of the 2018 Real Estate Taxes owed to the Landlord during the postpetition, pre-rejection period pursuant to section 365(d)(3) of the Bankruptcy Code. Such a result prevents a windfall to the Landlord, at the expense of other creditors. Given that the Debtors have already paid the prorated postpetition portion of the 2018 Real Estate Taxes, the Court should deny payment of any additional 2018 Real Estate Taxes to the Landlord.

WEIL:\96988318\6\73217.0004

## **CONCLUSION**

25.    For the reasons set forth herein, the Motion should be denied.

Dated:  April 12, 2019
         New York, New York

                                                /s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

9

WEIL:\96988318\6\73217.0004

## Exhibit A

## The Lease Excerpt

WEIL:\96988318\6\73217.0004

| | |
|---|---|
| OPTIONS TO EXTEND LEASE (Substitution of Article 12) | 12A. (a) Tenant shall have ten successive options to extend the term of this lease for an additional period of five (5) years on each such option, such extended term to begin respectively upon the expiration of the term of this lease or of this lease as extended and the same terms and conditions as herein set forth shall apply to each such extended term. If Tenant shall elect to exercise the aforesaid options, it shall do so by giving notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or of this lease as extended. |
| | (b) Regardless of the exercise or nonexercise by Tenant of any or all of the foregoing options, Tenant shall have, unless the last day of the lease term shall be January 31 of any year, the option to extend (or further extend, as the case may be) the term of this lease for such period of time as shall cause the last day of the term of this lease to be the January 31 next succeeding the date upon which the term of this lease would expire but for the exercise of this option. This option shall be exercised by notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or any extension thereof. Tenant's rental during this option period shall be the same rental payable under the terms of this lease at the time Tenant notifies Landlord of its intention to exercise this option. |
| REAL ESTATE TAXES | 36. Tenant shall pay and discharge all ad valorem real estate taxes and assessments which shall be levied against the taxable premises during the lease term, excluding therefrom payment of assessments which are incurred or levied as a result of Landlord's activity in developing the demised premises for Tenant's occupancy. |
| | To the extent permitted by law, Tenant may pay any such assessment in annual installments. In the event any such assessment shall be payable in a lump sum or on an installment basis, Tenant shall have the sole right to elect the basis of payment. If Tenant shall elect to pay such assessment on the in- |

-1-

stallment basis, then Tenant shall pay only those installments which shall become due and payable during the lease term. Any such installments due and payable in the years in which this lease commences and terminates shall be prorated proportionately.

Tenant shall not be chargeable with nor be obligated to pay any tax of any kind whatsoever which may be imposed on the Landlord, rents payable hereunder or the demised premises except the ad valorem real estate taxes and assessments mentioned in the first paragraph of this Article 36.

The amount, if any, by which the ad valorem real estate taxes and assessments payable hereunder exceed TWENTY-ONE THOUSAND DOLLARS ($21,000) during any lease year, shall be hereinafter referred to as an "excess tax payment". All excess tax payments shall be deductible by Tenant from additional rentals, as defined in Article 4, due and payable for such lease year. In the event the excess tax payment for any lease year exceeds said additional rental due and payable during the same lease year, the amount by which said excess tax payment exceeds said additional rental shall be carried forward and be deductible from additional rentals due and payable for succeeding lease years on a cumulative basis.

The taxable premises, as defined below, shall be separately assessed if practicable from any contiguous lands and from any additional lands and improvements incorporated into the demised premises in the future.

In the event Tenant constructs, as provided in Article 15 hereof, additional buildings or structures on any portion of the land described in Exhibit "A", said additional buildings or structures shall be excluded from the taxable premises. Said additional buildings or other structures shall be separately assessed and all ad valorem taxes and assessments levied thereon shall be paid and discharged by Tenant and shall not be deductible from additional rentals as provided herein.

The Tenant shall have the right to participate in all negotiations of tax assessments. Tenant shall have the right to contest the validity or the amount of any tax or assessment levied against the taxable premises by such appellate or other proceedings as may be appropriate in the jurisdiction, and

-2-

may defer payment of such obligations, pay same under protest, or take such other steps as Tenant may deem appropriate; provided, however, Tenant shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises. Landlord shall cooperate in the institution and prosecution of any such proceedings initiated by the Tenant and will execute any documents required therefor.

Should any of the proceedings referred to in the preceding two paragraphs of this Article 35 result in reducing the total annual real estate tax and assessment liability against the taxable premises, the Tenant shall be entitled to receive all refunds paid by the taxing authorities. After payment of all of Landlord's and Tenant's expenses incurred in any such proceeding in which a refund is paid, the Tenant shall pay to the Landlord either the balance of such refund or, alternatively, Tenant shall pay to the Landlord that part of the excess tax payment which may have been deducted from additional rent in the tax year for which the refund was granted, whichever amount shall be the lesser. Any balance of said refund remaining after such payment to Landlord shall belong to the Tenant. If no refund shall be secured in any given proceeding, the party instituting the proceeding shall bear the entire cost.

The term "taxable premises", as used in this lease, shall be that certain land described in Exhibit "A" together with such buildings and other improvements required by Tenant to be constructed thereon by Landlord under the terms of this lease.

-3-

## Exhibit B

## Ninth Lease Amendment

Kmart #7274
Mauldin, SC

## NINTH AMENDMENT TO LEASE

THIS NINTH AMENDMENT TO LEASE is made and entered into this 24th day of APRIL, 2014 between **MAULDIN AT BUTLER, LLC,** a South Carolina Limited Liability Company, having a mailing address c/o Hughes Development Corporation, P.O. Box 2567, Greenville, SC 29602 ("Landlord"), and **KMART CORPORATION,** a Michigan corporation, having its principal office at 3333 Beverly Road, Hoffman Estates, IL 60179 ("Tenant").

### WITNESSETH:

WHEREAS, by lease agreement dated April 14, 1978, Eastside Development, Inc., a South Carolina corporation, leased to Tenant a building together with site improvements and land at a shopping center located at 129 West Butler Road, Mauldin SC, as more fully described in Exhibit A to the Lease; and

WHEREAS, the lease agreement was modified by First Amendment to Lease dated May 4, 1978; by Letter Amendment serving as Second Amendment to Lease dated October 25, 1978; by Third Amendment to Lease dated April 30, 1980; by Fourth Amendment to Lease dated April 21, 1986; by Fifth Amendment to Lease dated December 28, 1990; by Sixth Amendment to Lease dated January 26, 1994; by Seventh Amendment to Lease dated March 11, 2004; and by Eighth Amendment to Lease dated April 29, 2013. The lease agreement, as amended, is herein referred to as the "Lease"; and

WHEREAS, Landlord has succeeded to the Lessor's interest of Eastside Development, Inc., in the Lease; and

WHEREAS, Landlord and Tenant desire to further amend and modify the Lease as herein provided;

NOW, THEREFORE, in consideration of the mutual agreement of the parties, the sufficiency of which is acknowledged, Landlord and Tenant agree as follows:

1. The attached Exhibit B-1 is added to the Lease. Tenant hereby approves the location of the new Chick-fil-A restaurant and the modifications of the Common Facilities as shown on the revised Exhibit B-1, including the new signs and the changes to the sidewalks, driveways and parking areas in the vicinity of the new Chick-fil-A restaurant. Except as modified on the attached Exhibit B-1, Exhibit B continues to apply to the remainder of the shopping center.

2. Tenant agrees to execute an amendment, satisfactory in form and content to Landlord, Tenant and Chick-fil-A, of its Memorandum of Lease dated April 14, 1978, and recorded in the Register of Deeds Office for Greenville County SC on July 12, 1978, as subsequently amended, to evidence its approval under the preceding paragraph.

3. As provided in the Eighth Amendment, Landlord agrees to pay Tenant one-half of the rent from the ground lease with Chick-fil-A, or from any future lease of the Chick-fil-A space, so long as the Kmart lease remains in effect. During the initial nine months of the Chick-fil-A lease term, when Chick-fil-A's rent will be abated pursuant to the terms of its lease with Landlord, Landlord will pay Tenant the sum of Three Thousand Three Hundred Thirty-Three

1292085                                    1

and 33/100ths Dollars ($3,333.33) each month in lieu of its portion of the Chick-fil-A rent. This agreement shall run with the land and be binding on Landlord and its successors and assigns.

4. The Lease, as hereby amended, is hereby ratified and confirmed by Landlord and Tenant. Except as expressly amended hereby, the Lease shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Ninth Amendment to Lease, which is to be effective as of the date first set forth above.

Signed in our Presence:                    MAULDIN AT BUTLER, LLC [SEAL]

_Jack H. Tedards, Jr._                     By: _[signature]_ VP

_[signature]_                              Title: _Vice President_

STATE OF SOUTH CAROLINA    §
                          §                **ACKNOWLEDGMENT**
COUNTY OF GREENVILLE       §

The foregoing instrument was acknowledged before me this _24th_ day of _APRIL_, 2014, by _JAYNE L. McCALL_, as _VICE PRESIDENT_ of Mauldin at Butler, LLC, a South Carolina Limited Liability Company, on behalf of the company.

_Jack H. Tedards, Jr._
Notary Public for South Carolina

My Commission Expires: _9-15-2014_

[SIGNATURES CONTINUED ON NEXT PAGE]

1292085                              2

_[signature]_                                KMART CORPORATION [SEAL]

_[signature]_                                By: _[signature]_
                                                  James B. Terrell
                                             Title: Vice President Real Estate

                                             REAL ESTATE
                                             LEGAL
                                             _[initials]_

STATE OF ILLINOIS      §
                       §       **ACKNOWLEDGMENT**
COUNTY OF COOK         §

The foregoing instrument was acknowledged before me this 18th day of April, 2014, by James B. Terrell, as Vice President Real Est of Kmart Corporation, a Michigan corporation, on behalf of the corporation.

_[signature: Amanda P. Williams]_
Notary Public for ILLINOIS
My Commission Expires: 9/10/2017

"OFFICIAL SEAL"
AMANDA S WILLIAMS
Notary Public, State of Illinois
My Commission Expires 9/10/2017

1292085                                3



EXHIBIT B-1