# EXHIBIT A

*Claim No. 14323, against Sears, Roebuck and Co.*

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | | |
|---|---|---|---|---|
| ☐ Sears Holdings Corporation (18-23538) | ☐ Kmart Corporation (18-23549) | ☐ Sears, Roebuck de Puerto Rico, Inc. (18-23561) | ☐ MyGofer LLC (18-23573) | ☐ Kmart.com LLC (18-23585) |
| ✓ Sears, Roebuck and Co. (18-23537) | ☐ MaxServ, Inc. (18-23550) | ☐ SYW Relay LLC (18-23562) | ☐ Sears Brands Business Unit Corporation (18-23574) | ☐ Sears Brands Management Corporation (18-23586) |
| ☐ Kmart Holding Corporation (18-23539) | ☐ Private Brands, Ltd. (18-23551) | ☐ Wally Labs LLC (18-23563) | ☐ Sears Holdings Publishing Company, LLC (18-23575) | ☐ SHC Licensed Business LLC (18-23616) |
| ☐ Kmart Operations LLC (18-23540) | ☐ Sears Development Co (18-23552) | ☐ Big Beaver of Florida Development, LLC (18-23564) | ☐ Kmart of Michigan, Inc. (18-23576) | ☐ SHC Promotions LLC (18-23630) |
| ☐ Sears Operations LLC (18-23541) | ☐ Sears Holdings Management Corporation (18-23553) | ☐ California Builder Appliances, Inc. (18-23565) | ☐ SHC Desert Springs, LLC (18-23577) | ☐ SRe Holding Corporation (19-22301) |
| ☐ ServiceLive, Inc (18-23542) | ☐ Sears Home & Business Franchises, Inc. (18-23554) | ☐ Florida Builder Appliances, Inc. (18-23566) | ☐ SOE, Inc. (18-23578) | |
| ☐ A&E Factory Service, LLC (18-23543) | ☐ Sears Home Improvement Products, Inc. (18-23555) | ☐ KBL Holding Inc. (18-23567) | ☐ StarWest, LLC (18-23579) | |
| ☐ A&E Home Delivery, LLC (18-23544) | ☐ Sears Insurance Services, L.L.C. (18-23556) | ☐ KLC, Inc. (18-23568) | ☐ STI Merchandising, Inc (18-23580) | |
| ☐ A&E Lawn & Garden, LLC (18-23545) | ☐ Sears Procurement Services, Inc. (18-23557) | ☐ Sears Protection Company (Florida), L.L.C. (18-23569) | ☐ Troy Coolidge No. 13, LLC (18-23581) | |
| ☐ A&E Signature Service, LLC (18-23546) | ☐ Sears Protection Company (18-23558) | ☐ Kmart of Washington LLC (18-23570) | ☐ BlueLight.com, Inc. (18-23582) | |
| ☐ FBA Holdings Inc. (18-23547) | ☐ Sears Protection Company (PR) Inc. (18-23559) | ☐ Kmart Stores of Illinois LLC (18-23571) | ☐ Sears Brands, L.L.C. (18-23583) | |
| ☐ Innovel Solutions, Inc. (18-23548) | ☐ Sears Roebuck Acceptance Corp. (18-23560) | ☐ Kmart Stores of Texas LLC (18-23572) | ☐ Sears Buying Services, Inc. (18-23584) | |

RECEIVED
APR 05 2019
PRIME CLERK LLC

[  ] Date Stamped Copy Returned
[  ] No Self-Addressed Stamped Envelope
☒ No Copy Provided

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:    Identify the Claim**

| | |
|---|---|
| **1. Who is the current creditor?** | Nina and Gerald Greene, on behalf of themselves and the certified Classes<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? _____ |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Deborah R. Gross, Esq.<br>Kaufman, Coren & Ress, P.C.<br>2001 Market Street, Suite 3900<br>Philadelphia, PA 19103<br><br>Contact phone  (215) 735-8700<br>Contact email  dgross@kcr-law.com | Where should payments to the creditor be sent? (if different)<br><br><br><br>Contact phone _____<br>Contact email _____ |
| **4. Does this claim amend one already filed?** | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____  Filed on ___ / ___ / ___<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

Proof of Claim



page 1

Claim Number: 14323

182353880006744

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____ |
| 7. **How much is the claim?** | $_To be determined_ . **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Service agreements sold; See Addendum |
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:  _____<br><br>**Basis for perfection:**  _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**  $_____<br><br>**Amount of the claim that is secured:**  $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property:  _____ |

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:*<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.<br><br>* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | **Amount entitled to priority**<br><br><br>$_____<br><br><br>$_____<br><br><br><br>$_____<br><br><br>$_____<br><br>$_____<br><br>$_____ |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | <br><br>$_____ |

## Part 3:  Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | Check the appropriate box:<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date   04/03/2019   (mm/dd/yyyy)<br><br>_____<br>Signature<br><br>**Print the name of the person who is completing and signing this claim:** |

Name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Deborah R. Gross, Esq. | | |
| | First name | Middle name | Last name |
| Title | Of Counsel | | |
| Company | Kaufman, Coren & Ress, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2001 Market Street, Suite 3900 | | |
| | Number        Street | | |
| | Philadelphia | PA | 19103 |
| | City | State | ZIP Code |
| Contact phone | (215) 735-8700 | Email | dgross@kcr-law.com |

### ADDENDUM TO PROOF OF CLAIM OF NINA AND GERALD GREENE, ON BEHALF OF THEMSELVES AND THE CERTIFIED CLASSES

Nina Greene and Gerald Greene (the "Greenes"), on behalf of themselves and the certified Classes (defined herein), file this Addendum to their Proof of Claim against Sears Holdings Corporation (Case No. 18-23538), Sears, Roebuck and Co. (Case No. 18-23537), and Sears Protection Company (Case No. 18-23558).

### General Background

1.    Sears Protection Company ("SPC"), Sears, Roebuck and Co. ("SRC"), and Sears Holdings Corporation ("SHC," and, together with SPC and SRC, collectively, "Sears") sell Master Protection Agreements ("MPAs") which are purportedly intended to provide repair and replacement coverage for products in customers' homes.  Between 2010 and 2016, Sears sold 35,615,237 MPAs, resulting in over $12.4 billion in net sales.  Approximately half of MPAs are "retail" transactions – when a customer adds protection coverage onto his purchase of the product at a Sears' store, for example.  The other half of MPA sales are "aftermarket" transactions – i.e., sold after the point-of-sale purchase of the product, such as by phone through a Sears' call center.

2.    The Greenes entered into eleven different MPAs with Sears between 1999 and 2014.[1]

3.    On March 25, 2015, the Greenes filed a Class Action Complaint against SPC, SRC, and SHC in the United States District Court for the Northern District of Illinois (the "Illinois District Court"), styled *Greene v. Sears Protection Company, et al.*, Case No. 1:15-cv-02546 (the "Class Action").  On March 11, 2016, the Greenes filed a First Amended Class

---

[1]    Copies of the Greenes' MPAs are attached to the Amended Complaint, which is attached hereto as Exhibit 1.

Action Complaint (the "Amended Complaint"), a true and correct copy of which is attached hereto as Exhibit 1.

4.    The Amended Complaint asserts claims against SPC, SRC, and SHC for breach of express contract, unjust enrichment, violation of the Illinois Consumer Fraud Act, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  On March 27, 2017, Judge Jorge L. Alonso of the Illinois District Court issued a Memorandum Opinion and Order which (i) dismissed all claims against SHC, and (ii) dismissed the Illinois Consumer Fraud Act claim against SPC and SRC.[2]  A true and correct copy of Judge Alonso's March 27, 2017 Memorandum Opinion and Order is attached hereto as Exhibit 2.

5.    The breach of contract, unjust enrichment, and consumer fraud claims against Sears are based on Sears' longstanding practice of selling MPA coverage on appliances which, unbeknownst to the public, Sears had internally identified as ineligible for service and had no intention of actually repairing or replacing.

6.    On July 28, 2017, the Greenes moved for certification of two classes pursuant to Federal Rule of Civil Procedure 23.  On March 8, 2018, Magistrate Judge Michael T. Mason of the Illinois District Court issued his Report and Recommendation recommending that the Greenes' motion for class certification be granted.  On June 25, 2018, Judge Alonso issued a Memorandum Opinion and Order in which he agreed with Magistrate Judge Mason's recommendation, but modified the class period for the Nationwide Class (defined herein).[3]  In a subsequent order dated August 29, 2018, Judge Alonso also modified the class period for the Pennsylvania Class (defined herein).  True and correct copies of Judge Alonso's June 25, 2018

---

[2]    The Greenes do not waive any appeal rights in connection with the claims against SHC or the Illinois Consumer Fraud Act claim.

[3]    Sears sought permission from the Seventh Circuit to appeal the Illinois District Court's June 25, 2018 Order, which the Seventh Circuit denied on August 21, 2018.

Memorandum Opinion and Order and August 29, 2018 Minute Entry are attached hereto as Exhibits 3 and 4, respectively.

7.    With respect to the breach of contract and unjust enrichment claims, the following nationwide class has been certified:

> All individuals and entities who paid for aftermarket MPAs on March 25, 2005 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

(the "Nationwide Class"). *See* Exhibit 3, Memorandum Opinion and Order, p. 9.

8.    With respect to the Pennsylvania Unfair Trade Practices and Consumer Protection Law claim, the following Pennsylvania-only class has been certified:

> All residents of Pennsylvania who paid for aftermarket MPAs on March 25, 2009 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

(the "Pennsylvania Class").[4] *See* Exhibit 3, Memorandum Opinion and Order, pp. 9-10; Exhibit 4, Minute Entry.

9.    On October 15, 2018, Sears and its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, as a result of which the Class Action was automatically stayed pursuant to Section 362(a) of the Bankruptcy Code.

### Amount of Claim

10.    The Class Action seeks relief on behalf of the Classes, for which the Greenes serve as class representatives.

---

[4]    The Nationwide Class and Pennsylvania Class are referred to herein, collectively, as the "Classes."

3

11.    As set forth in the class definitions referenced above, damages for the Nationwide

Class are to be calculated from March 25, 2005 to the present, and damages for the Pennsylvania

Class are to be calculated from March 25, 2009 to the present.

12.    The Greenes' various MPAs since March 25, 2005 cost a total of $12,874.52.  *See*

Amended Complaint, ¶ 33.  Coverage under the Greenes' final MPA (No. 0334550422200088)

commenced after March 25, 2009, at a cost of $4,218.85.  *See id.*

13.    In connection with class certification, the Greenes' damages expert Christopher

Jackman determined that a standard and reliable methodology exists that would enable him to

measure damages across the Classes, using data and information in Sears' possession.[5]

Specifically, Mr. Jackman determined that, using historical versions of Sears' "Eligible Brands

List" as well as other information contained in Sears' databases, he could create MPA datasets

identifying products that were included as part of an aftermarket MPA sold by Sears but were not

actually eligible for coverage.  He could then determine the prices paid by customers for that

MPA coverage, factoring in any refunds or credits received as necessary.  Mr. Jackman's

methodology is premised not only on documents produced during discovery, but also upon the

existence of certain data contained in various Sears' databases, about which Sears' employees

testified during discovery.  *See* Exhibit 5, Jackman Report, pp. 6-8.  With access to that

information, Mr. Jackman determined that damages across the Classes could be measured

without resorting to individualized inquiry.

---

[5]    A true and correct copy of Mr. Jackman's Expert Report is attached hereto as Exhibit 5.
The Illinois District Court denied Sears' motion to exclude Mr. Jackman's report.  *See* Exhibit 3,
June 25, 2018 Memorandum Opinion and Order, pp. 3-6.

14.     Given that much of the information required to definitively calculate damages sustained by the Classes is currently within Sears' sole possession, the extent of damages claimed by the Greenes on behalf of the Classes is currently unknown.

### Reservation of Rights

15.     The Greenes reserve the right to amend, update, or supplement this Proof of Claim in any respect.

16.     Nothing contained in this Proof of Claim shall be construed as a waiver of any claim the Greenes or the Classes have or may have against SPC, SRC, SHC, or any other Sears affiliate, as a waiver of any defense the Greenes or the Classes have or may have to arguments raised by SPC, SRC, or SHC in the Class Action or in response to this Proof of Claim, or as a waiver of any appeal rights the Greenes or the Classes have or may have in the Class Action.

# EXHIBIT 1

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 11 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 1 of 17 PageID #:225

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NINA GREENE AND GERALD GREENE, | ) | No. 1:15-cv-02456 |
| | ) | |
| Plaintiffs, | ) | Judge Jorge L. Alonso |
| | ) | |
| v. | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| SEARS PROTECTION Company, SEARS, | ) | |
| ROEBUCK and Co. and SEARS | ) | |
| HOLDINGS Corporation, | ) | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | ) | |
| | ) | |

### <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs, Nina Greene and Gerald Greene (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, allege, upon their own knowledge and otherwise upon information and belief formed after a reasonable inquiry by counsel:

### <u>NATURE OF THE CASE</u>

1.      This case involves a dishonest business practice perpetrated by companies operating under the established and trusted Sears name. This dishonest business practice involves illusory service protection agreements sold by the Sears companies.

2.      Plaintiffs entered into numerous service protection agreements with Sears Protection Company ("SPC"), a wholly-owned subsidiary of Sears, Roebuck and Co. ("SRC"), which is a wholly owned subsidiary of Sears Holdings Corp. ("SHC"), together "Sears."

3.      These service protection agreements were deceptive and illusory because Sears did not in fact provide the bargained for coverage of the products that the agreements purported to cover.  Instead, without making an initial determination about whether Sears would actually provide service for the products for which Sears was selling service protection agreements, Sears

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 12 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 2 of 17 PageID #:226

collected money from Plaintiffs and, on information and belief, from other consumers, for products that Sears ultimately refused to service because, upon receiving a claim for service, Sears determined were not actually covered.

4.      When Plaintiffs and the members of the Class made claims for service on products that the service agreements purported to cover, Sears would make a determination of whether the product on which the claim was made was one for which Sears would actually offer service.  If Sears then determined not to offer service, Sears would offer to refund some of the money it had collected from Plaintiffs and members of the Class for the service agreement.

5.      On information and belief, Sears does not make efforts to determine whether it actually covers a product the service agreements purport to cover until a consumer makes a claim under the service agreement.  Accordingly, unless a consumer makes a claim for service on a product that Sears does not actually service, Sears keeps the consumer's money even though Sears never would have serviced the purportedly-covered product.  Thus, unless Sears is "caught" when a consumer makes a service claim, Sears effectively appropriates profits to itself by selling consumers meaningless service agreements and keeping their money.

6.      Accordingly, through an unlawful course of conduct, Sears has, over the course of years, improperly and unilaterally, breached the express and implied terms of its standard form contract with Plaintiffs and the Class who are purchasers of the protection agreements. Defendants have also taken moneys from Plaintiffs and the Class to which Defendants have had no right at law or in equity for alleged service protection which was never provided.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a

2

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 13 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 3 of 17 PageID #:227

citizen of a state different from Defendant; (b) the amount in controversy exceeds $5,000,000
exclusive of costs and interest; and (c) none of the exceptions under subsection 1332(d)(5) apply
to this action.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant
regularly conducts business here, maintains its headquarters and offices here and is subject to
personal jurisdiction in this District.

## PARTIES

**Plaintiffs**

9.      Plaintiffs, Nina Greene and Gerald Greene, residents of Pennsylvania, beginning in
1994, and continuing through 2014, paid for at least eleven different Sears Master Protection
Agreements ("MPAs")[1], which are a separate plan from the manufacturer's warranty and covers
products throughout their home, not only those which were purchased at SRC or which are sold
by SRC. The MPAs state: "[T]his Agreement is inclusive of and runs concurrently with the
manufacturer's warranty, it does not replace it. This Agreement provides benefits in addition to
the manufacturer's warranty." The MPAs can cover a single product or a group of different
products. When they cover a group of products, there is no breakdown or explanation of the
charges per item.

**Defendants**

10.     SPC is an Illinois corporation, and a wholly owned subsidiary of SRC, and is the
obligor under the Sears Protection Agreements. The Sears Protection Agreements, according to

---

[1] The MPAs are attached hereto as Exhibit A.   Certificate Numbers:   033455042200050,
033455042200051,        033455042200052,        033455042200053,        033455042200065,
033455042200067,        033455042200070,        033455042200076,        033455042200086,
033455042200088,

3

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 14 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 4 of 17 PageID #:228

the information of the website and emails sent out by Sears provide "a welcome to peace of mind." They provide the benefits of: (1) expert repair service; (2) product replacement; (3) food loss replacement; (4) savings; (5) troubleshooting by phone, and, (6) satisfaction. SPC emphasizes that "over 13 million Sears' customers already trust our protection – so you can too."

11.      SRC, a wholly owned subsidiary of SHC, is the subsidiary responsible for operating the repair services, the retail stores, the installation services, and the sears.com website.

12.      SHC is a Delaware corporation and the parent company of Kmart Holding Corp. and SRC.  SHC is headquartered in Hoffman Estates, Illinois. SHC employees in the Illinois offices were responsible for investigating, responding to and attempting to resolve claims or complaints related to MPAs, as well as marketing and selling MPAs.  SHC employees in Illinois communicated with Plaintiffs and their counsel regarding their MPAs.  MPAs are purchased by customers in three different fashions: (1) point of sale which is the brick and mortar store or on the internet; (2) some direct mail marketing, which could be an email or telemarketing call from Illinois or some outbound protection agreement call center supervised by the Illinois headquarters; or (3) the service technician.  MPAs are drafted, reviewed, and revised by SHC employees located in Illinois.  The pricing for MPAs is approved by SHC employees in Illinois.

13.      In its filings with the Securities and Exchange Commission ("SEC"), SHC describes SRC's Home Services operations as "Product Repair Services, the nation's largest product repair service provider, is a key element in our active relationship with more than 41 million households.  With approximately 7,500 service technicians making over 13 million service and installation calls annually, this business delivers a broad range of retail-related residential and commercial services across 50 states. . . .This business also offers protection agreements."

4

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 15 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 5 of 17 PageID #:229

## CLASS ALLEGATIONS

14.     Plaintiffs bring this action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves and the following class of similarly situated persons (the "Class"):

> All individuals and entities who paid for MPAs for products which were not covered by or eligible for coverage from the protection agreement, and never received a refund.

15.     Defendants and their employees and any court personnel to whom this case is assigned are excluded from this proposed Class.

16.     The members of this Class number at least in the thousands and are geographically diverse, such that joinder of all of the individual class members is impracticable.  The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendants' records.

17.     Plaintiffs' claims are typical of the claims of all the other members of the Class. The claims of Plaintiffs and the other members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiffs and to all of the other Class members.

18.     The Class has a well-defined community of interest. Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members.

19.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual Class members.

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 16 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 6 of 17 PageID #:230

20.    Common questions of law or fact affecting members of the Class include, but are not limited to:

    a.    Whether Defendants' conduct constitutes a breach of contract;

    b.    Whether Defendants' conduct constituted a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

    c.    Whether Defendants' conduct constituted a violation of the Pennsylvania Unfair Trade Practices Act;

    d.    Whether Defendants were unjustly enriched; and,

    e.    Whether Plaintiffs and Class members are entitled to damages, costs, and/or attorneys' fees from Defendants.

21.    Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law or fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

22.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation in courts across the country.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other Class members.

**FACTUAL ALLEGATIONS**

23.    Sears offers Protection Agreements to purportedly provide "peace of mind."

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 17 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 7 of 17 PageID #:231

24.    Customers can enter into an MPA by adding protection coverage when the product is originally purchased at a store, or online. To provide MPA coverage to other products in the house, post-point-of-purchase, a customer has to speak with a Sears technician or a Sears call center. A description of the merchandise is obtained, the type of product, the age of the product, and, the brand name, but the model number is not required. After the information is taken from the customer, a customer will typically give a credit card or will pay by check.

25.    After the customer is charged for the agreement and pays for the agreement, Sears sends an MPA Certificate within thirty days of the date of purchase, which is "proof of ownership" and lists the product or products purportedly covered and the terms and conditions of the agreement. On the top right corner, the agreement certificate states "Don't worry. This isn't a bill. It's confirmation of your coverage." The MPA Certificate is standard form agreement sent to the customer.

26.    The back side of the agreement certificate lists 28 terms and conditions. Some paragraphs are applicable only to residents of specific states; however, there is no provision applicable specifically to residents of Pennsylvania.

27.    For example, among the terms and conditions, there is a paragraph stating that the agreement is cancellable within 60 days of the date received by either party for the total price. At any later point thereafter, the agreement is cancellable, but Sears will refund the total price allocable to the remainder of the term of the agreement prorated on a monthly basis.

28.    The agreement certificate also notes that "there are some limitations to coverage which are set forth in sections 2, 12, 13 and 15 below."

29.    In Section 13 of the MPA, Sears specifically lists what the agreement does not cover. *See* MPA § 13 (a-j). Section 13 *does not* list the following items: treadmills, ovens,

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 18 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 8 of 17 PageID #:232

cooktops, refrigerators, compactors, freezers, front load washers, dryers, dishwashers, and vacuum cleaners, which were items purportedly covered by the MPAs plaintiffs' purchased. Because the items (treadmills, ovens, cooktops, refrigerators, compactors, freezers, front load washers, dryers, dishwashers, and vacuum cleaners) are not listed in Section 13, they are not explicitly excluded from coverage under the terms of the actual agreement.

30.    Under section 2, which pertains to eligibility for coverage, the certificate notes that Sears reserves the right to inspect the products listed to determine eligibility. However, there is no further explanation about how or when Sears inspects or determines a product's eligibility under the MPA.

31.    In effect, Sears requires and accepts payment for listed items purportedly covered under the MPA without first making a determination of whether they are eligible for coverage.

32.    The agreement certificate is sent with a cover letter thanking the customer and re-emphasizing that "We repair all major brand items large and small, even if they weren't purchased at Sears – everything from dishwashers to DVDs."

33.    Since 1994, Plaintiffs have paid over $18,000 for Defendants' service agreements as set forth in the below chart:

| Date of Printing of Cert | Certificate # | Products Covered | Contract Term | Cost |
|---|---|---|---|---|
| 11/17/1999 | 033455042200050 | • Vacuum Cleaner<br>• Compactor<br>  Ex. Bike/Skier/Stepper<br>• Freezer, over 9 cu. ft.<br>• Grill, outdoor, gas | 11/17/1999-11/21/2004 | $1,511.74 |
| 11/17/1999 | 033455042200051 | • Refrigerator, w/ice maker<br>• Treadmill, power | 11/17/1999-11/21/2004 | $857.19 |
| 06/28/2005 | 033455042200052 | • Washer, Front Load Prem | 06/28/2005-10/20/2008 | $256.51 |
| 06/28/2005 | 033455042200053 | • DryerG, Prem Plus | 06/28/2005-10/20/2008 | $222.59 |

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 19 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 9 of 17 PageID #:233

| | | | | | |
|---|---|---|---|---|---|
| 11/23/2004 | 033455042200065 | • Refrigerator, w/ice maker<br>• Compactor<br>• Treadmill, Power<br>• Freezer, Over 9 cu. ft.<br>• Dishwasher, Built-In<br>• Dishwasher, Built-In<br>• Washer, Front Load Prem | | 11/23/2004-<br>11/21/2008 | $1,858.91 |
| 06/28/2005 | 033455042200067 | • Oven, Built-In<br>• DryerG, Prem Plus | | 06/28/2005-<br>11/21/2008 | $248.60 |
| 06/28/2005 | 033455042200070 | • Cooktop | | 06/28/2005-<br>11/21/2008 | $250.80 |
| 01/03/2006 | 033455042200076 | • Dishwasher, 1YR, 0800/UI300 | | 01/03/2006-<br>11/21/2008 | $199.19 |
| 01/25/2008 | 033455042200086 | • Refrigerator, w/ice maker<br>• Compactor<br>• Treadmill, Power<br>• Cooktop<br>• Freezer, over 9 cu. ft. | • Oven, Built-In<br>• Dishwasher, Built-In<br>• Washer, Front Load Prem<br>• DryerG, Prem Plus<br>• Dishwasher, 1YR,0800/UI300 | 11/25/2008-<br>11/21/2011 | $2,713.89 |
| 01/27/2009 | 033455042200088 | • Refrigerator, w/ice maker<br>• Compactor<br>• Treadmill, Power<br>• Cooktop<br>• Freezer, Over 9 cu. ft.<br>• Oven, Built-In | • Dishwasher, Built-In Washer, Front Load, Prem<br>• DryerG, Prem Plus<br>• Dishwasher,1YR, 0800/UI300<br>• Vacuum Clnr, Canister<br>• Vacuum Clnr, Canister | 01/27/2009-<br>01/12/2014 | $4,764.09 |
| 05/11/2012 | 0334550422200088 | • Oven, Built-In TGI Only<br>• Cooktop TGI Only<br>• Refrigerator, w/ice maker<br>• Compactor<br>• Freezer, Full Size TGI Only | • Front Load Washer<br>• DryerG, Prem Plus Dishwasher, Built-In<br>• Dishwasher, 1yr, 0800/UI300<br>• Vacuum Clnr, Canister<br>• Vacuum Clnr, Canister | 05/11/2012-<br>01/12/2014 | $4,218.85 |

34.     Over the time period for the maintenance service coverage provided by these agreements to Plaintiffs, Plaintiffs called for repairs on various products. Months and years after Plaintiffs paid for the MPAs, Plaintiffs learned that many of the products listed as covered by the

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 20 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 10 of 17 PageID #:234

agreements—and for which they had paid for coverage—were not in fact covered. Thus, Sears collected money from Plaintiffs for products that were listed but never actually covered.

35.    One clear example of Sears' practice of selling MPAs for items that it does not actually cover is the treadmill for which plaintiffs contracted for service coverage beginning in 1999. The treadmill was included in four different agreement certificates. Specifically, the treadmill was covered:

    a.  from 11/11/1999-11/21/2004 on MPA 033455042200051;

    b.  from 11/12/2004-11/21/2008 on MPA certificate number 033455042200065;

    c.  from 11/25/2008-11/21/2011 on MPA certificate number 03345504220086; and,

    d.  from 1/12/2009 – 1/12/2014 on MPA certificate number 033455042200088.

36.    It was not until March 2012, after Plaintiffs inquired for service under the MPA, that Sears informed Plaintiffs that the treadmill had never actually been covered. Sears allegedly refunded $500 for this non-coverage, but there was no explanation of how Sears arrived at this figure. Instead, the amount was simply credited to their account. A revised MPA 033455042200088 was sent to plaintiffs on May 11, 2012, which did not include the treadmill but included the other 11 items.

37.    Another illustrative example of a product that was listed on the MPAs but for which coverage was subsequently denied is the AMF trash compactor that plaintiffs purchased on January 1, 1995. Specifically, the trash compactor was included in the following MPAs:

    a.  MPA certificate 033455042200041 listed and covered the compactor from 08/02/1998-08/10/1999;

    b.  MPA certificate 033455042200050 listed and covered the compactor from 11/11/1999-11/21/2004;

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 21 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 11 of 17 PageID #:235

    c.  MPA certificate 033455042200065 listed and covered the compactor from 11/12/2004-11/21/2008.

    d.  MPA certificate 033455042200086 listed and covered the compactor from 11/25/2008 to 11/21/2011; and,

    e.  MPA certificate 033455042200088 listed and covered the compactor from 1/27/2009 – 1/12/2014

38.    Plaintiffs wrote to Sears on April 19, 2012, stating that Mrs. Greene was recently informed that the compactor was never covered by the home service contracts. Nevertheless, Sears continued to charge her for the compactor. In fact, when Sears issued the revised/reissued MPA 033455042200088 on May 11, 2012, the trash compactor was still listed.

39.    Another example of a product for which plaintiffs paid for coverage through the MPAs was a Viking cooktop purchased by Plaintiffs in January 1996. This cooktop was included in the following MPAs:

    a.  MPA certificate 033455042200070, was specifically form the cooktop, and covered the time period 6/28/2005 – 11/21/2008;

    b.  MPA certificate 033455042200086, listed and covered the cooktop from 11/25/2008 – 11/21/2011; and,

    c.  MPA certificate 033455042200088; listed and covered the cooktop from 1/27/2009 to 1/12/2014.

40.    Plaintiffs in the letter to Sears on April 19, 2012, also indicated that they learned this product was not ever covered by the MPA. Nevertheless, the cooktop was included in the revised/reissued MPA 033455042200088 on May 11, 2012.

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 22 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 12 of 17 PageID #:236

41.    Sears engaged in a course of conduct whereby it deceived consumers, misrepresenting to customers that their products were covered by the master service agreement after Plaintiffs and members of the Class identified the products that they wanted to include in the agreements and paid the charges Sears billed for such coverage.  Sears did not determine whether Sears actually could or would provide service maintenance coverage for those products until a repair or service request was made by the owner.  Sears continued to charge for products it could not and never intended to repair or service.  Sears did not communicate to its customers that it could not or would not provide service maintenance coverage.  Furthermore, even after Sears was caught by a consumer making a service request, Sears still did not return all the moneys wrongfully received for products that Sears does not actually cover.  Instead Sears kept the moneys Plaintiffs and the Class paid for the illusory master protection agreements, knowing this was a way to increase Sears' profits.

## CAUSES OF ACTION

## COUNT I-BREACH OF EXPRESS CONTRACT

42.    Plaintiffs and the Class re-allege and incorporate the foregoing paragraphs.

43.    Plaintiffs and the Class entered into MPAs with Defendants for which Plaintiffs and the Class paid moneys.

44.    Defendants breached the MPAs by failing to provide the benefits for which they contracted and received payment: the repair and/or replacement of products listed as covered by the MPAS.

45.    Defendants' conduct constitutes repeated breaches of contract.

46.    Plaintiffs and the Class have fulfilled all conditions precedent to bring this action.

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 23 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 13 of 17 PageID #:237

47.    Defendants' breaches have injured Plaintiffs and the Class in amounts to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

48.    Plaintiffs and the Class re-allege and incorporate by reference the definitions of the terms "Plaintiffs," "Class" and "Defendants" set forth above.

49.    Plaintiffs and the Class were misled and deceived into paying the Defendants for repair and replacement coverage for products for which Defendants did not, in fact, provide such coverage.

50.    Defendants received Plaintiffs' and the Class' moneys for products and services that were supposedly covered but not actually included in the coverage and which were not expressly excluded from coverage either.   The payments received by Defendants constituted benefits conferred on the Defendants by Plaintiff and the Class.

51.    Defendants wrongfully kept the moneys of Plaintiffs and the Class, and appreciated said benefits.

52.    The wrongs complained of are ongoing.

53.    Plaintiffs and the Class were injured and harmed by Defendants' wrongful and deceitful taking of their moneys.

54.    Plaintiffs and the Class are entitled under the equitable doctrine of unjust enrichment to returns of the moneys paid to Defendants for coverage of products for which Defendants did not provide coverage.

## COUNT III – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

55.    Plaintiffs re-allege and incorporate by reference the allegations in the paragraphs above as if fully set forth herein, except paragraphs 48-54.

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 24 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 14 of 17 PageID #:238

56.     In Illinois, the "Consumer Fraud and Deceptive Practices Act" 815 Ill. Comp. Stat. 505, et seq. ("the Act"), prohibits deceptive acts and practices in the conduct of any trade or commerce.

57.     Plaintiffs and the Class were injured by Defendants' deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiffs and the Class.

58.     Defendants do business in Illinois, have their headquarters and offices in Illinois, and engaged in deceptive acts and practices in connections with the sale of the MPAs in Illinois and elsewhere in the United States.

59.     SHC employees in the Illinois offices were responsible for investigating, responding to and attempting to resolve claims or complaints related to MPAs.

60.     MPAs are purchased by customers in three different fashions: (1) point of sale which is the brick and mortar store or on the internet; (2) some direct mail marketing, which could be an email or telemarketing call from Illinois or some outbound protection agreement call center; or (3) the service technician.

61.     Additionally, SHC runs the call centers where customers who have issues or questions about any of the products Sears sells of services that Sears offers call in to. The national operations manager is employed by SHC at the Illinois headquarters.

62.     The manager of the service contracts, the claims consultants, the claims investigators and the intake specialists dealing with claims, complaints, marketing tactics and strategies for the sales of protection agreements are located in the Illinois offices.

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 25 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 15 of 17 PageID #:239

63.     The investigation of Plaintiffs' claims concerning their MPA coverage occurred in the Illinois offices.  The communications to Plaintiffs about their MPA coverage came from the Illinois offices.

64.     The computer database, the Ciboodle systems management system, used to input customer claims is based in Illinois.

65.     The National Parts System database, NPS, which contains information on what appliances are purchased and what coverage is provided by and MPA is maintained in Illinois and accessible by those in the Illinois offices.

66.     Defendants' deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States

67.     Defendants' deceptive acts proximately caused actual injury and damage to Plaintiffs and the Class.

68.     The conduct of Defendants constituted a consumer fraud under the Act.

### COUNT IV – VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §201-1, et seq., 73 P.S. §201-2(4)(xxi)

69.     Plaintiffs re-allege and incorporate by reference the allegations in the paragraphs 1 – 41 above as if fully set forth herein.

70.     The contract entered into between Plaintiffs and the Class and Defendants is within the gamut of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq*.

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 26 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 16 of 17 PageID #:240

71.     Defendants knew they were deceiving Plaintiffs and the Class. Defendants violated 73 P.S. §201-2(4)(xxi) through their fraudulent and/or deceptive conduct which created a likelihood of confusion and/or misrepresentation.

72.     As a direct and proximate result of Defendants' intentional and reckless conduct, its misrepresentations, acts, omissions and concealments, Plaintiffs and the Class sustained damages.

73.     The acts and/or omissions committed by Defendants, jointly and/or severally in violation of the UTPCPL, included, but are not limited to:

      a)     failing to comply with the terms of the written contract; and

      b)     knowingly misrepresenting the coverage of products by the MPA.

74.     For the reasons set forth above, Defendants have committed unfair and deceptive business practices prohibited by the UTPCPL, for which the Defendants are liable for actual damages, treble damages and attorney's fees.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class request that the Court enter judgment in Plaintiffs' and the Class' favor and against Defendants:

A.     ruling that this action is properly maintainable as a class action, and appointing Plaintiffs as class representative, and the undersigned counsel as class counsel;

B.     awarding compensatory damages and all monetary relief authorized by law or referenced in this complaint;

C.     an order requiring disgorgement of all improperly received moneys into a constructive trust, or common fund, for the benefit of Plaintiffs and the Class;

D.     awarding prejudgment and post judgment interest;

16

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 27 of 35
Case: 1:15-cv-02546 Document #: 51 Filed: 03/11/16 Page 17 of 17 PageID #:241

E.      awarding costs of this action, including reasonable attorney's fees and reimbursement of expenses, reasonably incurred, including experts' fees;

F.      awarding such other and further relief as this court may deem just, equitable, or proper; and

G.      for actual/ascertainable damages, including interest, attorney's fees, costs and expenses of suit and such additional amounts to be determined at the time of trial.

**JURY DEMAND**

Pursuant to Fed. R. Civ. 38(b), Plaintiffs and the Class demand a jury trial.

Dated: March 11, 2016                              Plaintiffs

By: /s/ *Marvin A. Miller*
Marvin A. Miller
Lori A. Fanning
Kathleen E. Boychuck
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400

Deborah R. Gross
David M. DeVito
KAUFMAN, COREN & RESS, P.C.
2001 Market Street, Suite 3900
Two Commerce Square
Philadelphia, PA 19103
Telephone: (215) 735-8700

**Attorneys for Plaintiffs**

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 28 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 1 of 17 PageID #:242

# EXHIBIT A

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 29 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 2 of 17 PageID #:248

Congratulations. You've given yourself a very good reason to relax.

| Sears Maintenance Agreement |
| --- |

Don't worry.  This isn't a bill.
It's confirmation of your Maintenance Agreement coverage.

**SEARS**
HomeCentral™

The Service Side of Sears℠

0334550422 00050
N Greene
5 Saint Davids Rd
Wayne, PA  19087-4756

|ııılllılıllıııllıılıllıllıllıllıllılıllıılıllılıl|

| CERTIFICATE NUMBER | CREDIT CARD NUMBER | EXPIRATION* |
| --- | --- | --- |
| 033455042200050 | ███████████ | 11/21/2004 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
| --- | --- | --- | --- |
| VACUUM CLEANER, CENTRAL | | IN-HOME | 01/01/1992 |
| COMPACTOR | | IN-HOME | 01/01/1995 |
| EX.BIKE/SKIER/STEPPER | | IN-HOME | 01/01/1995 |
| FREEZER, OVER 9 CU. FT. | 501F | IN-HOME | 01/01/1996 |
| GRILL, OUTDOOR, GAS | 15985 | IN-HOME | 05/19/1998 |

(gwen 600. - fa plumber)
mistake

PAID 300. 11/18/03
PAID 600 · 12/15/03

To schedule your annual Preventive Maintenance Check
or a repair, please call
**1-800-4-MY-HOME**℠
1-800-469-4663

Price: $1447.08
Tax Paid: $64.66
Total Paid: $1511.74

Unit #: 0009444
Printed: 11/17/99

See reverse side for terms and conditions.
*May reflect any warranty and current Maintenance Agreement coverage.

15140 (1/99)  FL-BCT-52000

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 30 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 3 of 17 PageID #:244

# SEARS MAINTENANCE AGREEMENT

Retain this Maintenance Agreement (hereafter referred to as MA) as proof of enrollment.

1. **COVERAGE AND TERM.** Sears, Roebuck and Co ("Sears") will furnish parts and service necessary to maintain the proper operating condition for the product(s) listed on the reverse side, including repairs necessary due to normal wear and tear. The expiration date and total price ("Total Price") of this MA are shown on the reverse side. Parts and service covered under any warranty will be provided under that warranty. Parts used to repair out of warranty product(s) may be either new or non-original manufacturer's parts at Sears option. You will receive this MA certificate within 30 days of the date of purchase. There are some limitations to coverage which are set forth in paragraphs 2, 4 and 11 below.

2. **ELIGIBILITY FOR COVERAGE.** You represent that the product(s) listed on the reverse side is in proper operating condition at the start of coverage and the information related to "Date Purchased" on the reverse side is correct. Any product which does not meet these requirements is not covered under this MA. Sears reserves the right to inspect the product(s) listed on the reverse side to determine eligibility for coverage. Coverage applies only to product(s) which are located at one address within a single dwelling unit.

3. **PREVENTIVE MAINTENANCE.** Sears will, at your request, perform an annual preventive maintenance check-up on any covered product(s).

4. **LIMITATIONS OF COVERAGE. THIS MA DOES NOT COVER:**
   a. any product located outside the United States and Puerto Rico except where Sears issues a Shop Service MA for which service is available by bringing the product into Sears Service Centers located in the United States and Puerto Rico. Service is available in Canada provided you have obtained a Hydro Commission CSA certificate for the product(s) at your expense.
   b. any product used for commercial purposes. A product is "used for commercial purposes" if it is used for any purpose other than single family house hold purposes. If a product is used for commercial purposes, Sears will cancel the Contract and refund the Total Price.
   c. after three years from the original date of purchase of any product, nonfunctional parts (such as trim) and cosmetic defects. This MA also does not cover any nonfunctional parts of product(s) purchased at Sears Outlet stores.
   d. installation other than the installation required to complete the repair of any covered product.
   e. repairs of any product which is damaged or malfunctioning due to causes beyond Sears control including, but not limited to, repairs necessitated by operator or owner negligence (such as the failure to maintain the product according to the owner's manual instructions), rust, abuse, theft, fire, flood, wind, lightning, freezing, power failure, power reduction or unusual atmospheric conditions.
   f. the following expendable items: vacuum cleaner bags, trash compactor bags, typewriter ribbons, copier toner, toner cartridge and drum cartridge for copiers, sewing machine needles, saw blades, belt sandpaper or any filters (except those for lawnmowers and tractors). For gasoline powered product only: replacement of fluids (gasoline, oil, etc.). These items, however, will be replaced at no extra charge if replacement is required to repair any covered product.
   g. the following products, parts and services: antenna systems, the main membrane on reverse osmosis systems, bent crankshafts and the pulling of deep well jets or submersible well pumps.
   h. changing or assembling attachments for tractors or riding mowers.

5. **TIME AND PLACE OF SERVICE.** Non emergency service will be performed during Sears normal business hours. If your health or safety is endangered or if damage to or loss of your property is involved, emergency service is available in most markets. To arrange for service where your product is located, call 1-800-4-MY-HOME℠. In some cases, Sears will provide packaging and you must ship the covered product to us, at our expense, for repair. However, if the reverse side of this certificate indicates Shop Service, you must bring the covered product(s) to a Sears Service Center and pick it up.

6. **FOOD LOSS REIMBURSEMENT FOR REFRIGERATORS AND FREEZERS.** Sears will reimburse you up to $200 in any one year of coverage for any food spoilage that is the result of a mechanical failure of any covered product. The food loss must be verified by Sears. If the covered product is still under warranty, any reimbursement under this MA is in addition to any reimbursement under the warranty. In no case shall the total reimbursement under the warranty and this MA exceed the value of the food lost.

7. **UNAVAILABILITY OF FUNCTIONAL PARTS OR TECHNICAL INFORMATION.** If Sears determines it is unable to repair a covered product due to unavailability of functional parts or technical information, you are entitled, at your option, to a comparable product replacement or Sears will cancel this MA and refund the Total Price. In all cases, product comparability will be determined by Sears in its sole discretion.

8. **CANCELLATION AND REFUNDS.** You may cancel at any time for any reason by mailing written notice of cancellation to: Sears, 2080 Brentwood Street, High Point, NC 27263. Sears may cancel this MA if you fail to pay make a material misrepresentation or substantially breach your duties under this MA. If you charged this MA to your charge account with Sears or any of its affiliates and do not make the required minimum monthly payment on such charge account or are otherwise in default under your credit card agreement, your right to receive services under this MA may be suspended. In such event, Sears may also cancel this MA by giving you written notice of such cancellation at the address shown on this MA. If this MA is canceled by you or Sears within sixty (60) days of the date purchased or prior to the expiration of the full warranty for the entire product, excluding warranties covering component parts of the product, Sears will refund the Total Price unless you charged this MA on your charge account with Sears or any of its affiliates, in which event Sears will credit such account for the Total Price of this MA. If this MA is
   cancelled thereafter, Sears will refund the Total Price allocable to the remainder of the term of this MA prorated on a monthly basis (the "Prorated Price") or, if you charged this MA on your charge account with Sears or any of its affiliates, Sears will credit such account for the Prorated Price.

9. **TRANSFERABILITY.** This MA is transferable to any subsequent owner of the covered products, subject to the terms and conditions of this MA, including paragraph 4.

10. **RENEWAL.** Neither you nor Sears is obligated to renew this MA beyond the expiration date. Prices may change upon renewal. By purchasing this Contract, you agree that Sears may call you to notify you of renewals and upgrade plans.

11. **LIMITATION OF LIABILITY. EXCEPT AS STATED IN PARAGRAPH 6, NEITHER SEARS, NOR ITS AGENTS, CONTRACTORS OR LICENSEES ARE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGE, LOST TIME, LOSS OF USE OF COVERED PRODUCT (S) OR ANY OTHER DAMAGES RESULTING FROM THE BREAKDOWN OR FAILURE OF COVERED PRODUCT (S) SERVICED UNDER THIS MA, DELAYS IN SER-VICING OR THE INABILITY TO SERVICE ANY COVERED PRODUCT (S).**

12. **ARBITRATION.** Any and all claims or disputes arising out of, in connection with, or in relation to the interpretation, performance, or breach of this MA shall be resolved, on an individual basis, by final and binding arbitration. However this arbitration provision does not apply to any claim or dispute relating to the financing of or payment for this MA, any claim or dispute relating to any security interest in goods or services or any agreement or disclosure relating to any financing, payment or security interest. All arbitrations shall be held at the office of the American Arbitration Association ("AAA") in closest proximity to your permanent residence. All arbitrators shall be administered by the AAA in accordance with its Commercial Arbitration Rules. The Federal Arbitration Act, 9 U.S.C. Sections 1, et. seq., shall govern all arbitrations under this MA.

13. **UTAH CUSTOMERS.** Coverage under this contract is not guaranteed by the Property and Casualty Guaranty Association. In the event of cancellation of this MA by Sears in accordance with the "Cancellation and Refunds" provisions above, Utah residents will receive ten (10) day prior written notice of cancellation.

14. **GEORGIA CUSTOMERS.** If Sears fails to pay any valid claim within 60 days, you may make a claim directly against Safeco Insurance Company of America, Safeco Plaza, Seattle, WA 98185.

15. **ALABAMA AND NEW YORK CUSTOMERS.** Obligations of Sears under this service contract are backed by the full faith and credit of Sears.

Sears, Roebuck and Co., Obligor, Dept. 702PSM, 3333 Beverly Road, Hoffman Estates, IL 60179
MA SVC Rev. 1/99                                                                                                    Reorder #15140 Sears Forms Management

18-23538-shl   Doc 3170-2   Filed 04/12/19   Entered 04/12/19 12:38:29   Exhibit
EXHIBIT A (part 1) - SRC Claim   Pg 31 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 08/11/16 Page 4 of 17 PageID #:246

Congratulations. You've given yourself a very good reason to relax.

## Sears Maintenance Agreement

Don't worry. This isn't a bill.
It's confirmation of your Maintenance Agreement coverage.

**SEARS**
HomeCentral

The Service Side of Sears℠

0334550422 00051
N Greene
5 Saint Davids Rd
Wayne, PA 19087-4756

|ͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰ|

| CERTIFICATE NUMBER | CREDIT CARD NUMBER | EXPIRATION* |
|---|---|---|
| 033455042200051 | ▮▮▮▮▮▮▮▮▮ | 11/21/2004 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
|---|---|---|---|
| REFRIGERATOR, W/ICE MAKER | 501R | IN-HOME | 01/01/1994 |
| TREADMILL, POWER | | IN-HOME | 01/01/1995 |

To schedule your annual Preventive Maintenance Check
or a repair, please call

# 1 - 8 0 0 - 4 - M Y - H O M E℠
1-800-469-4663

Price: $801.11
Tax Paid: $56.08
Total Paid: $857.19

Unit #: 0009444
Printed: 11/17/99

See reverse side for terms and conditions.
*May reflect any warranty and current Maintenance Agreement coverage.

15140 (1/99)  FL-BCT-S2000

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 32 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 5 of 17 PageID #:246

## SEARS MAINTENANCE AGREEMENT

Retain this Maintenance Agreement (hereafter referred to as MA) as proof of purchase.

1. **COVERAGE AND TERM.** Sears, Roebuck and Co. ("Sears") will furnish parts and service necessary to maintain the proper operating condition for the product(s) listed on the reverse side, including repairs necessary due to normal wear and tear. The expiration date and total price ("Total Price") of this MA are shown on the reverse side. Parts and service covered under any warranty will be provided under that warranty. Parts used to repair out of warranty product(s) may be either new or non-original manufacturer's parts at Sears option. You will receive this MA certificate within 30 days of the date of purchase. There are some limitations to coverage which are set forth in paragraphs 2, 4 and 11 below.

2. **ELIGIBILITY FOR COVERAGE.** You represent that the product(s) listed on the reverse side is in proper operating condition at the start of coverage and the information related to "Date Purchased" on the reverse side is correct. Any product which does not meet these requirements is not covered under this MA. Sears reserves the right to inspect the product(s) listed on the reverse side to determine eligibility for coverage. Coverage applies only to product(s) which are located at one address within a single dwelling unit.

3. **PREVENTIVE MAINTENANCE.** Sears will, at your request, perform an annual preventive maintenance check-up on any covered product(s).

4. **LIMITATIONS OF COVERAGE. THIS MA DOES NOT COVER:**
   a. any product located outside the United States and Puerto Rico except where Sears issues a Shop Service MA for which service is available by bringing the product into Sears Service Centers located in the United States and Puerto Rico. Service is available in Canada provided you have obtained a Hydro Commission CSA certificate for the product(s) at your expense.
   b. any product used for commercial purposes. A product is "used for commercial purposes" if it is used for any purpose other than single family house hold purposes. If a product is used for commercial purposes, Sears will cancel the Contract and refund the Total Price.
   c. after three years from the original date of purchase of any product, nonfunctional parts (such as trim) and cosmetic defects. This MA also does not cover any nonfunctional parts of product(s) purchased at Sears Outlet stores.
   d. installation other than the installation required to complete the repair of any covered product.
   e. repairs of any product which is damaged or malfunctioning due to causes beyond Sears control including, but not limited to, repairs necessitated by operator or owner negligence (such as the failure to maintain the product according to the owner's manual instructions), rust, abuse, theft, fire, flood, wind, lightning, freezing, power failure, power reduction or unusual atmospheric conditions.
   f. the following expendable items: vacuum cleaner bags, trash compactor bags, typewriter ribbons, copier toner, toner cartridge and drum cartridge for copiers, sewing machine needles, saw blades, belt sandpaper or any filters (except those for lawnmowers and tractors). For gasoline powered product only: replacement of fluids (gasoline, oil, etc.). These items, however, will be replaced at no extra charge if replacement is required to repair any covered product.
   g. the following products, parts and services: antenna systems, the main membrane on reverse osmosis systems, bent crankshafts and the pulling of deep well jets or submersible well pumps.
   h. changing or replacing attachments for tractors or riding mowers.

5. **TIME AND PLACE OF SERVICE.** Non-emergency service will be performed during Sears normal business hours. If your health or safety is endangered or if damage to or loss of your property is involved, emergency service is available in most markets. To arrange for service where your product is located, call 1-800-4-MY-HOME℠. In some cases, Sears will provide packaging and you must ship the covered product to us, at our expense, for repair. However, if the reverse side of this certificate indicates Shop Service, you must bring the covered product(s) to a Sears Service Center and pick it up.

6. **FOOD LOSS REIMBURSEMENT FOR REFRIGERATORS AND FREEZERS.** Sears will reimburse you up to $200 in any one year of coverage for any food spoilage that is the result of a mechanical failure of any covered product. The food loss must be verified by Sears. If the covered product is still under warranty, any reimbursement under this MA is in addition to any reimbursement under the warranty. In no case shall the total reimbursement under the warranty and this MA exceed the value of the food lost.

7. **UNAVAILABILITY OF FUNCTIONAL PARTS OR TECHNICAL INFORMATION.** If Sears determines it is unable to repair a covered product due to unavailability of functional parts or technical information, you are entitled, at your option, to a comparable product replacement or Sears will cancel this MA and refund the Total Price. In all cases, product comparability will be determined by Sears in its sole discretion.

8. **CANCELLATION AND REFUNDS.** You may cancel at any time for any reason by mailing written notice of cancellation to: Sears, 2080 Brentwood Street, High Point, NC 27263. Sears may cancel this MA if you fail to pay make a material misrepresentation or substantially breach your duties under this MA. If you charged this MA to your charge account with Sears or any of its affiliates and do not make the required minimum monthly payment on such charge account or are otherwise in default under your credit card agreement, your right to receive services under this MA may be suspended. In such event, Sears may also cancel this MA by giving you written notice of such cancellation at the address shown on this MA. If this MA is canceled by you or Sears within sixty (60) days of the date purchased or prior to the expiration of the full warranty for the entire product, excluding warranties covering component parts of the product, Sears will refund the Total Price unless you charged this MA on your charge account with Sears or any of its affiliates, in which event Sears will credit such account for the Total Price of this MA. If this MA is canceled thereafter, Sears will refund the Total Price allocable to the remainder of the term of this MA prorated on a monthly basis (the "Prorated Price") or, if you charged this MA on your charge account with Sears or any of its affiliates, Sears will credit such account for the Prorated Price.

9. **TRANSFERABILITY.** This MA is transferable to any subsequent owner of the covered products, subject to the terms and conditions of this MA, including paragraph 4.

10. **RENEWAL.** Neither you nor Sears is obligated to renew this MA beyond the expiration date. Prices may change upon renewal. By purchasing this Contract, you agree that Sears may call to notify you of renewals and upgrade plans.

11. **LIMITATION OF LIABILITY.** EXCEPT AS STATED IN PARAGRAPH 6, NEITHER SEARS, NOR ITS AGENTS, CONTRACTORS OR LICENSEES ARE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGE, LOST TIME, LOSS OF USE OF COVERED PRODUCT (S) OR ANY OTHER DAMAGES RESULTING FROM THE BREAKDOWN OR FAILURE OF COVERED PRODUCT (S) SERVICED UNDER THIS MA, DELAYS IN SER-VICING OR THE INABILITY TO SERVICE ANY COVERED PRODUCT (S).

12. **ARBITRATION.** Any and all claims or disputes arising out of, in connection with, or in relation to the interpretation, performance, or breach of this MA shall be resolved, on an individual basis, by final and binding arbitration. However, this arbitration provision does not apply to any claim or dispute relating to the financing of or payment for this MA, any claim or dispute relating to any security interest in goods or services or any agreement or disclosure relating to any financing, payment or security interest. All arbitrations shall be held at the office of the American Arbitration Association ("AAA") in closest proximity to your permanent residence. All arbitrators shall be administered by the AAA in accordance with its Commercial Arbitration Rules. The Federal Arbitration Act, 9 U.S.C. Sections 1, et. seq, shall govern all arbitrations under this MA.

13. **UTAH CUSTOMERS.** Coverage under this contract is not guaranteed by the Property and Casualty Guaranty Association. In the event of cancellation of this MA by Sears in accordance with the "Cancellation and Refunds" provisions above, Utah residents will receive ten (10) day prior written notice of cancellation.

14. **GEORGIA CUSTOMERS.** If Sears fails to pay any valid claim within 60 days, you may make a claim directly against Safeco Insurance Company of America, Safeco Plaza, Seattle, WA 98185.

15. **ALABAMA AND NEW YORK CUSTOMERS.** Obligations of Sears under this service contract are backed by the full faith and credit of Sears.

Sears, Roebuck and Co., Obligor, Dept. 702PSM, 3333 Beverly Road, Hoffman Estates, IL 60179
MA SVC Rev. 1/99

Reorder #15140 Sears Forms Management

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 33 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 6 of 17 PageID #:247

# SEARS

Master Protection Agreement

Don't worry.  This isn't a bill.
It's confirmation of your coverage.

***********AUTO** 3-DIGIT 190
0334550422 00052
Nina Greene
5 Saint Davids Rd.
Wayne, PA 19087-4756

| CERTIFICATE NUMBER | CREDIT CARD NUMBER | EXPIRATION* |
|---|---|---|
| 033455042200052 | | 10/20/2008 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
|---|---|---|---|
| WASHER FRONT LOAD PREM | 11044332260 | IN-HOME | 10/14/2003 |

Price: $241.99
Tax Paid: $14.52
Total Paid: $256.51

See reverse side for terms and conditions.
* May reflect any warranty and current Service Agreement coverage.
** This item will continue to be covered by Sears until the original contracts' expiration date.

To schedule a repair, please call
**1 - 800 - 4 - M Y - H O M E**
1-800-469-4663 or go online at www.sears.com

Unit #: 0001884
Printed: 06/28/05
MPA MASS01
** = MPA

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SRC Claim    Pg 34 of 35
Case 1:15-cv-02548 Document # 5 Certified Filed 05/11/16 Page 7 of 7 PageID #248

A

# SEARS

Don't worry. This isn't a bill.
It's confirmation of your coverage.

***********AUTO** 3-DIGIT 190
0334550422 00053
Nina Greene
5 Saint Davids Rd.
Wayne, PA 19087-4756

**CERTIFICATE NUMBER**
033455042200053

**CREDIT CARD NUMBER**

**EXPIRATION***
10/20/2008

**PRODUCT**
DRYERG, PREM PLUS

**MODEL NUMBER**
11094822200

**SERVICE LOCATION**
IN-HOME

**PURCHASE DATE**
10/14/2003

Price: $209.99
Tax Paid: $12.60
Total Paid: $222.59

To schedule a repair, please call

**1-800-4-MY-HOME**
1-800-469-4663 or go online at www.sears.com.

Unit #: 0001884
Printed: 06/28/05
MPA MASS01
** MPA

See reverse side for terms and conditions.
* May reflect any warranty and current Service Agreement coverage.
** This item will continue to be covered by Sears until the original contracts' expiration date.

0505

18-23538-shl    Doc 3170-2    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT A (part 1) - SPC Claim    Pg 35 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 8 of 17 PageID #:249