18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 1 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 17 of 18 PageID #:3582

Defendants' objection is overruled. This Court agrees with the Magistrate Judge that Plaintiffs may prove the element of justifiable reliance by virtue of their purchase of the MPAs. Unlike Defendants' cited authorities, *Abraham v. Ocwen Loan Servicing*, LLC, 321 F.R.D. 125 (E.D. Pa. 2017), and *Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, where the claims required individualized assessments of the reasons for the transactions, justifiable reliance may be shown by common proof here where the nature of the alleged deception and the transactions at issue do not permit alternate explanations.

### *Timing of Class Certification*

Finally, the Court overrules Defendants' objection to the Magistrate Judge's recommendations based on the argument that he should have determined the merits of the defenses to Plaintiffs' claims or deferred ruling on certification until Defendants' summary judgment motion had been addressed. This Court already denied Defendants' request, and it was not within the scope of the referral to the Magistrate Judge to alter that decision. Having chosen this course of action, "a peek at the merits" could be taken "before certifying a class," but "this peek is limited to those aspects of the merits that affect the decisions essential under Rule 23." *Schleicher*, 618 F.3d 685.

### CONCLUSION

For all of the reasons discussed above, Defendants' Objections to the Report and Recommendation of the Magistrate Judge [189] on Defendants' motion to exclude the purported expert opinions of Christopher Jackman [156] are overruled, and Defendants' Objections to the Report and Recommendation [191] on Plaintiffs' class certification motion [141] are sustained in part and overruled in part. The Reports and Recommendations are adopted as discussed herein.

17

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 2 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 16 of 18 PageID #:3581

Defendants' objection notwithstanding, moreover, a finding of predominance does not adopt Plaintiffs' view of the case. Rather, it reflects the analysis a court must undertake in weighing class certification. The court "must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377.

Likewise, Defendants' arguments that some members of the class may have made a mistake in the information provided to Sears or that both contracting parties may have made a mistake in entering MPAs is "at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification." *Messner*, 669 F.3d at 823. "A class will often include persons who have not been injured by defendant's conduct, but this possibility, or indeed, inevitability, does not preclude class certification." *Bell*, 800 F.3d at 380.

*UTPCPL Class*

Defendants also contend that Plaintiffs' UTPCPL claim is inappropriate for class treatment because Plaintiffs' burden of showing "justifiable reliance" under the statue is incompatible with Rule 23's predominance requirement. According to Defendants, justifiable reliance cannot be demonstrated collectively because it requires individualized findings. The Magistrate Judge rejected this argument and recommended certifying the class, finding that justifiable reliance would be demonstrated by virtue of the class members' purchase of MPAs. Defendants object to the recommendation, arguing it is based on an inference that is impermissible under Pennsylvania law.

16

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 3 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 15 of 18 PageID #:3580

Defendants insist that the focus should not be on sale of the MPAs, but rather on their subsequent performance under them. Defendants contend that the remedies available to class members will depend on whether they received repairs under their MPAs, and if not, why not. Moreover, Defendants say, because it was their policy to provide repairs regardless of whether a product was on the Eligible Brand List, predominance cannot be found. Because the Magistrate Judge did not agree with Defendants' focus on repairs and the variety of factors contributing to them, Defendants argue the certification analysis fails.

This Court agrees with the Magistrate Judge's analysis, however, and concludes that Plaintiffs have demonstrated the predominance of common issues. "[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case" and the whole class 'will prevail or fail in unison.'" *Bell*, 800 F.3d at 378 (quoting *Amgen*, 568 U.S. at 460). It is the predominance of common questions that is key, not whether the answers will be resolved in the plaintiffs' favor. *See Bell*, 800 F.3d at 376 (citing *Amgen*, 568 U.S. at 459). While Defendants heavily emphasize evidence supporting their assertion that Sears had no uniform coverage position flowing from the Eligible Brand List or otherwise, Plaintiffs also submit evidence supporting their claims and their position that Defendants engaged in standardized conduct with regard to the sale of MPAs. Unlike Defendants' cited authority, *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011), where individual issues predominated over common ones on plaintiffs' claim that defendant insurer underpaid hail damage claims in bad faith, Plaintiffs' claims here rely on the assertion of Defendants' standardized conduct in the sale of coverage. Issues regarding Defendants' alleged course of conduct in selling MPAs are central issues capable of common proof for the class, and for the reasons discussed above Plaintiffs' damages methodology comports with their claims.

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 4 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 14 of 18 PageID #:3579

Defendants do not contest the adequacy of class counsel but challenge Plaintiffs' adequacy for largely the same reasons they oppose typicality. Plaintiffs assert that they have been injured as a result of the sale of MPAs on non-covered items and the lack of a full refund. According to Plaintiffs, they therefore share an interest with the class in proving their claims and resulting damages. This Court agrees. That Plaintiffs received a partial refund may affect their damages, but it does not exclude them from the class. Because Plaintiffs' claims are based on the same legal theory as those of the class, typicality is satisfied.

*Predominance*

As mentioned above, under Rule 23(b)(3), a class may be certified only if questions of law and fact common to the members of the class predominate over questions affecting only individual members of the class. This requirement is met when a common nucleus of operative facts and issues underlies the claims brought by the proposed class. *See Messner*, 669 F.3d at 815. "Predominance of issues common to all class members, like the other requirements for certification of a suit as a class action, goes to the efficiency of a class action as an alternative to individual suits." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2012). It is a qualitative, not a quantitative concept. *Id.*

As discussed above, Plaintiffs assert that common questions capable of class-wide resolution include such central issues as whether Sears sold MPAs for products it did not cover and whether the terms of the MPAs provide Defendants with a defense. Plaintiffs contend that because they provide a damages model that reliably calculates class-wide damages flowing from the claims that they press, the individual issues upon which Defendants focus do not defeat the predominance of common questions of law or fact. According to Defendants, on the other hand, coverage determinations are fact-intensive and individual, thereby defeating predominance.

14

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 5 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 13 of 18 PageID #:3578

because Plaintiffs obtained repairs on some products under their policies, and declined an offer for a cash buyout on still others, their claims are not typical of the class and Plaintiffs would not adequately represent the class.

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and is "based on the same legal theory." *Oshana v. Coca-Cola Bottling Co.,* 472 F.3d 506, 513 (7th Cir. 2006) (internal quotations omitted). Moreover, typicality "'may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' [since] the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Kramer,* 2017 WL 1196965, at *6 (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 233 (7th Cir. 1983)). In this instance, Plaintiffs' claims arise from the same alleged course of conduct as those belonging to the class and Plaintiffs base their claims on the same legal theory as the claims belonging to the class. Despite any factual variances in the products listed in the MPAs or going to the claimed damages as a result of some repair, their claims have the same essential characteristics.

*Adequacy*

This inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011).

13

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 6 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 12 of 18 PageID #:3577

reliance and causation. . . . [A] rule requiring 100% commonality would eviscerate consumer-fraud class actions." *Suchanek*, 764 F.3d at 759. Where, as here, the purported fraud is based on alleged conduct that was uniform as to all class members, it is well established that individual issues of reliance do not thwart class actions. *See Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 CV 8758, 2017 WL 1196965, at *6 (N.D. Ill. Mar. 31, 2017).

Plaintiffs point to evidence of a common course of conduct supporting claims applicable to the class, and propose a damages methodology applicable to the class that takes into account issues regarding the provision of repairs or something less than a full refund. Because Plaintiffs' claims raise common questions susceptible to common proof across the class, they meet this component of the Rule. *See Suchanek*, 764 F.3d at 756 ("Where the same conduct or practice by the same defendant gives rise to the same kinds of claims from all class members, there is a common question."). Whether Plaintiffs will ultimately prove that Sears had the coverage position they assert is an issue to be determined another day. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376-77 (7th Cir. 2015) (plaintiffs need not prove existence of employer policy requiring off-the-clock work to establish commonality, but only that issue is capable of common proof).

*Typicality*

Typicality requires that the claims or defense of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Plaintiffs say their claims are typical of the class because they allege and must prove that they entered into MPAs and paid for coverage on products they say were never actually covered. Plaintiffs complain that they were misled into purchasing "illusory coverage," their payments conferred a benefit on Sears, and that Sears wrongfully kept those benefits. Defendants challenge these assertions, arguing that

12

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 7 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 11 of 18 PageID #:3576

of circumstances, and thus they say, the claims are not suitable for class determination. According to Defendants, it was error not to rule on the merits of their assertions.

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, this requires a showing that class members have suffered the same injury, and that their claims depend upon some common contention. 564 U.S. 338, 351 (2011). While merits questions may be considered to some extent on a certification motion, as Defendants argue, they may only be considered "to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *accord Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). "[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

Notwithstanding Defendants' objections, this Court agrees that Plaintiffs demonstrate a commonality of issues consistent with their theory of breach, unjust enrichment, and consumer fraud. Whether Sears sold policies for products that it did not and could not cover is a central question common to the class, and capable of proof at trial through common evidence. Defendants' insistence that they had no such policy, that MPAs are variable, and that Sears ultimately provided some performance under some consumers' MPAs does not defeat this common contention. *See Schleicher*, 618 F.3d 685 ("Defendants have approached this case as if class certification is proper only when the class is sure to prevail on the merits. That would resurrect the one-way intervention model that was ditched by the 1966 amendments to Rule 23. Under the current rule, certification is largely independent of the merits . . . and a certified class can go down in flames on the merits"). "Every consumer fraud involves individual elements of

11

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 8 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 10 of 18 PageID #:3575

renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

*Numerosity*

Plaintiffs contend that the anticipated size of the class and the difficulty of joining all members meet Rule 23's numerosity requirement, and Defendants do not appear to disagree. The Court agrees that this standard is met.

*Commonality*

Plaintiffs contend that they meet the requirement of commonality because common questions exists across the purported class such as whether Sears sold "illusory coverage," or MPAs on products for which it did not and could not provide coverage. According to Plaintiffs, the determination of the truth or falsity of this common question will resolve a core issue common to the class. Defendants insist that commonality cannot be met because it is both not true that Sears made categorical decisions about whether certain products were covered under the MPAs, and because there are myriad of individual reasons why a product might not have been repaired or replaced. The Magistrate Judge rejected Defendants' arguments, finding that although the proposed class could include people who received some repair or replacement under their MPAs, because Plaintiffs' proposed damages methodology takes that into account, commonality is nevertheless demonstrated. While acknowledging the factual variations Defendants emphasize, therefore, the Magistrate Judge concluded that Defendants' arguments about performance were not a reason not to certify, but rather, were merits-based arguments based on Defendants' defenses to Plaintiffs' claims. Defendants object, repeating the argument that Plaintiffs cannot demonstrate commonality because a breach cannot be established at the point of sale but only upon individualized analysis of the reasons why a particular consumer was denied service. Defendants stress that MPAs were sold for a variety of products and in a variety

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 9 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 9 of 18 PageID #:3574

buy-out in some instances are not issues defeating the correlation between Plaintiffs' claims and the class they propose. "Neither Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common. It is routine in class actions to have a final phase in which individualized proof must be submitted." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("If commonality of damages were essential, then class actions about consumer products are impossible." (Internal quotations omitted)).

Defendants also object that the Magistrate Judge did not impose a temporal component on the classes Plaintiffs propose, and that to the extent the Court is inclined to impose one, the time period Plaintiffs propose for their breach of contract claim is too long. Although a time period was not expressly incorporated into the class definitions recommended by the Magistrate Judge, the Magistrate Judge referenced the periods proposed by Plaintiffs in his other report issued that same day. [*See* dkt 189 at 4 n 2.]

As Defendants correctly observe, however, the limitations period on Plaintiffs' breach of contract claim under Illinois law is 10 years, and under Pennsylvania law is shorter. Plaintiffs' unexplained request for a class period of 15 years is too long. Accordingly, Defendants' objection is sustained in this respect and Plaintiffs' proposed nationwide class definition is modified as follows:

> All individuals and entities who paid for aftermarket MPAs on March 25, 2005 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

Plaintiffs' proposed UTPCPL class definition is modified as follows:

> All residents of Pennsylvania who paid for aftermarket MPAs on March 25, 2004 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 10 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 8 of 18 PageID #:3573

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Plaintiffs must also demonstrate that the proposed class meets one of the three conditions of Rule 23(b).  Plaintiffs invoke Rule 23(b)(3) which requires them to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently.  Fed. R. Civ. P. 23(b)(3).

*Class Definition*

At the threshold, Defendants assert that the Magistrate Judge erred in concluding that whether Plaintiffs' proposed class definitions fail to allege a legal injury is not an issue to be resolved at this juncture.  According to Defendants, Plaintiffs' class definition does not conform to their theory of the case because it does not provide guidance on "who is aggrieved and belongs in the class based on Sears' action at the time of each MPA's formation."  [*See* dkt 192 at 4.]  Because Plaintiffs' class definition would include MPA holders who could have received some performance under their contracts, Defendants continue, Plaintiffs propose a "no-injury class" which should be rejected.

Defendants' argument, however, misunderstands Plaintiffs' theory of the case and description of the class.  Plaintiffs' claims are focused on the premise that Defendants were unjustly enriched and breached their contracts by selling warranty coverage for products they could not or did not cover.  Under Plaintiffs' theory, injury is inflicted upon purchase. Accordingly, the class Plaintiffs propose is tailored to include those people who bought what Plaintiffs call "illusory coverage."  Under this theory, whether Defendants offered some repair or

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 11 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 7 of 18 PageID #:3572

retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

Plaintiffs also seek to certify and the Magistrate Judge recommended certifying the following Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") class:

> All residents of Pennsylvania who paid for aftermarket MPAs (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

Plaintiffs asserted that the relevant class period is March 25, 2000 to the present for the breach of contract claim, March 25, 2005 to the present for the unjust enrichment claim, and March 25, 2004 to the present for the UTPCPL claim.  [Dkt 142 at 12.]  Defendants opposed certification, arguing Plaintiffs cannot adequately represent the class, the class definition is impermissibly broad, and individual issues defeat commonality and predominance.    The Magistrate Judge largely rejected Defendants' arguments as challenges to the merits based on disputed issues of fact.  Defendants object to the recommendation, arguing that the proposed classes fail to confirm to Plaintiffs' theory of the case, the claims are not supported by common issues and proof, and the claims are inappropriate for class adjudication given the predominance of individual issues.   As to Plaintiffs' UTPCPL claim, Defendants further argue that the requirement that Plaintiffs establish justifiable reliance makes the claim inappropriate for class resolution.  The Court undertakes *de novo* review.

To maintain a class action, Plaintiffs must identify a class and demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 12 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 6 of 18 PageID #:3571

District Court to defer consideration and deny without prejudice a motion to exclude an expert's opinions supporting class certification despite the court's reliability concerns based on the expert's lack of empirical evidence, lack of peer review and inadequate sample size. *Id.* at 815. In vacating class certification, the Seventh Circuit explained that where a purported expert's testimony is critical to class certification, the District Court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on the issue of class certification. *Id.* at 815-816. Unlike in *American Honda*, here the Magistrate Judge did not decline to make the requisite analysis. Instead, he carefully weighed Jackman's methodology and the sources upon which he relied. Although Defendants insist that certain records are historically incomplete and that there are no other records upon which Jackman could incorporate repairs into his damage analysis, Jackman opines based on evidence including documents produced by Sears and deposition testimony to the contrary. [*See* dkt 151 ¶¶ 13-24, 30, 33.] This Court agrees with the Magistrate Judge that Defendants' challenge to Jackman's opinions go to their weight, and not their admissibility. *See, e.g., Smith*, 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment."); *Loeffel Steel Prods. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005). Accordingly, Defendants' objections are overruled.

***Plaintiffs' Class Certification Motion***

As set forth above, Plaintiffs seek to certify and the Magistrate Judge recommended certifying the following nationwide breach of contract and unjust enrichment class:

> All individuals and entities who paid for aftermarket MPAs (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 13 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 5 of 18 PageID #:3570

to rely on the test that he administered and upon the sources of information which he employed")).

Jackman's damages model is appropriately tied to Plaintiffs' theory of the case. *See Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). It does not account for repairs under the MPAs because Plaintiffs assert such repairs are irrelevant to their allegations since Plaintiffs' claim is that breach occurred upon the sale of MPAs for uncovered products, not upon some later event. And in any event, Defendants misrepresent the record in arguing that Jackman had no method for accounting for class members who never requested service or who always got the service they requested. As Plaintiffs emphasize, Jackman's model explicitly considers class members who may have received replacements, refunds, and buyout offers [*see* dkt 142-20 at ¶¶ 22-23, 27-28, 31, 33], and Jackman testified that with access to Defendants' records of repairs, he could incorporate repairs into his analyses. [*See* dkt 157-1 at 98:02-99:21.] The Magistrate Judge appropriately weighed Jackman's report and testimony against the record. [Dkt 189 at 5-6.]

Defendants also argue that the Magistrate Judge erred by deferring merits issues essential to predominance. According to Defendants, the Magistrate Judge "simply determined that Jackman had a theory that might work for damages," and failed to determine if there were sufficient facts to support that theory. [Dkt 193 at 6.] To the contrary, the report and recommendation reflects a careful consideration of Jackman's methodology and the sources upon which it is based. [*See* dkt 189 at 3-4, 5.] In accordance with *Daubert* and its progeny, what the Magistrate Judge did not do was accept as dispositive defendants' version of the facts. *See Daubert*, 509 U.S. at 595; *Smith*, 215 F.3d at 718.

Notwithstanding Defendants' argument, this case is not like *American Honda, Inc. v. Allen*, 600 F.3d 813 (7th Cir. 2010). In that case, the Seventh Circuit held it was error of the

5

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 14 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 4 of 18 PageID #:3569

for those products.  Defendants moved to exclude Jackman's opinions, arguing his methodology

is unreliable and based on speculation because it was their policy to always repair a product or

offer a replacement or refund, and because it fails to account for Sears' provision of repairs.  The

Magistrate Judge recommended denying Defendants' motion, upon a finding that Jackman's

methodology was reliable, and that Defendants' challenge to it was based on disputed facts.

Defendants object to the Magistrate Judge's recommendation on the same basic grounds

upon which they previously argued.  According to Defendants, it was error to find Jackman's

methodology reliable because they say he cannot identify injured class members, and Sears'

Eligible Brands List cannot be dispositive of breach.  As the Magistrate Judge noted, however,

Plaintiffs have their own interpretation of the evidence and what it reveals.  Although Defendants

assert that their challenge is to the sufficiency of the foundation of Jackman's opinions, this

Court agrees with the Magistrate Judge that it is at bottom a challenge not to the adequacy of the

facts upon which Jackman relies but rather to the interpretation of those facts. The Seventh

Circuit has repeatedly emphasized, however, that "the court's gatekeeping function focuses on an

examination of the expert's methodology.  The soundness of the factual underpinnings of the

expert's analysis and the correctness of the expert's conclusions based on that analysis are

factual matters to be determined by the trier of fact, or, where appropriate, on summary

judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Daubert v.

Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("The focus, of course, must be solely on

principles and methodology, not on the conclusions that they generate") and *Walker v. Soo Line

R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000) (court should not consider factual underpinnings of

purported expert's testimony but should determine whether "[i]t was appropriate for [the expert]

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 15 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 3 of 18 PageID #:3568

matter that is dispositive of a party's claim or defense.  Fed. R. Civ. P. 72(b)(3).  The Court of

Appeals has observed:

> *De novo* review requires the district judge to decide the case based on an
> independent review of the evidence and arguments without giving any
> presumptive weight to the magistrate judge's conclusion. The district judge is
> free, and encouraged, to consider all of the available information about the case
> when making this independent decision.  A district judge may be persuaded by the
> reasoning of a magistrate judge . . . while still engaging in an independent
> decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013).  Although the Magistrate Judge

framed all of his decisions as recommendations, it is undisputed that the only dispositive issue

before him was the class certification issue.  Accordingly, the Court reviews the Magistrate

Judge's recommendation on that issue *de novo*, but views his remaining decisions as orders

reviewable only for clear factual or legal error.


### Defendants' Motion to Exclude Jackman's Opinions

Plaintiffs' claims are based on the central theory that Defendants engaged in a deceptive

practice and breached their MPAs by selling policies for products which they did not cover.  In

support of their class certification motion, Plaintiffs offered the purported expert opinions of

economist Christopher Jackman.  Jackman opined based on data and information possessed by

Sears that he could measure the damages of each purported class as a result of the conduct of

which Plaintiffs complain.  Specifically, utilizing historical versions of Sears' "Eligible Brands

List," and other information, Jackman would identify products in an MPA dataset that were

included as part of an aftermarket MPA sold by Sears but not eligible for coverage under the

MPA.  To determine damages, he would establish whether defendants issued refunds or credits

for the products in the dataset, and subtract that amount from the MPA prices paid by customers

3

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 16 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 2 of 18 PageID #:3567

their products.  According to Plaintiffs, Defendants breached their agreements, were unjustly

enriched, and engaged in a deceptive business practice by selling "repair or replace" Master

Protection Agreements ("MPAs") to Plaintiffs and a purported class for appliances Defendants

had no intention of repairing or replacing.  Plaintiffs moved to certify a nationwide class on their

breach of contract and unjust enrichment claims, and a Pennsylvania class on their claim under

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §

201-1, *et seq.*

Plaintiffs' motion for class certification and the parties' cross motions to exclude the

opinions of each other's damages experts were referred to the Magistrate Judge pursuant to Rule

72(b) of the Federal Rules of Civil Procedure.  The Magistrate Judge issued two Report and

Recommendations in which he recommended granting Plaintiffs' motion to certify, denying

Defendants' motion to exclude the purported expert opinions of Christopher Jackman, and

granting in part Plaintiffs' motion to exclude the purported expert opinions of Mark Hosfield.

[Dkt 189, 191.]  Before the Court are Defendants' objections to the recommendation to deny the

motion to exclude Jackman's opinions, and their objections to the recommendation to certify the

classes.  [Dkt 192, 193.]  This opinion assumes familiarity with the reports and does not repeat

their descriptions of the relevant facts and legal arguments except as specifically necessary to

address the Defendants' objections and consider the motions.

### *Standard of Review*

The Court will set aside a Magistrate Judge's decision on "a pretrial matter not

dispositive of a party's claim or defense" only if it is "clearly erroneous or . . . contrary to law."

Fed. R. Civ. P. 72(a).  The Court reviews *de novo* a Magistrate Judge's decision on a pretrial

2

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 17 of 35
Case: 1:15-cv-02546 Document #: 200 Filed: 06/25/18 Page 1 of 18 PageID #:3566

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NINA GREENE and GERALD GREENE,
individually and on behalf of all others
similarly situated,
    Plaintiff

          v.

SEARS PROTECTION COMPANY,
SEARS, ROEBUCK AND CO., and
SEARS HOLDINGS CORPORATION,

    Defendants.

Case No. 15-CV-2546

Judge  Jorge L. Alonso

## MEMORORANDUM OPINION AND ORDER

For the reasons that follow, Defendants' Objections to the Report and Recommendation of the Magistrate Judge [189] on Defendants' motion to exclude the purported expert opinions of Christopher Jackman [156] are overruled, and Defendants' Objections to the Report and Recommendation [191] on Plaintiffs' class certification motion [141] are sustained in part and overruled in part.  No objections were made to the recommendation to grant in part Plaintiffs' motion to exclude the purported expert opinions of Mark J. Hosfield [177].  The Reports and Recommendations are adopted as discussed herein.  Status hearing previously set for August 8, 2018 is stricken and reset to August 29, 2018, at 9:30 a.m.

## DISCUSSION

Plaintiffs Nina Greene and Gerald Greene complain that from 1994 to 2014, they entered into and paid for several appliance-service agreements with the Sears, Roebuck & Company and Sears Protection Company (collectively "Sears" or "Defendants") that did not actually cover

1

# EXHIBIT 3

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 19 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 10 of 10 PageID #:1417

## CONCLUSION

Defendants' motion to dismiss in part the First Amended Class Action Complaint [54] is granted as to defendant Sears Holdings Corporation, which is dismissed with prejudice as a defendant in this suit, and Count III, plaintiffs' ICFA claim, which is dismissed with prejudice. Defendants' motion is denied as to Count IV, plaintiffs' PCPL claim. The remaining defendants shall answer the remaining claims by April 17, 2017. The Court overrules plaintiffs' objections [116] to Magistrate Judge Mason's order of October 28, 2016. A status hearing is set for April 19, 2017 at 9:30 a.m.


**SO ORDERED.**                                   **ENTERED:    March 27, 2017**

                                                  _____
                                                  **JORGE L. ALONSO**
                                                  **United States District Judge**

10

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 20 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 9 of 10 PageID #:1416

Plaintiffs' second objection is to the denial of their request to compel defendants to produce computer database information regarding aftermarket service agreements sold on or after March 25, 2000. In their objections, plaintiffs refer to Judge Mason's ruling as a "denial of Plaintiffs' request that Sears take the simple step of exporting the data in its computerized [service agreement] database in response to Plaintiffs' request for all documents concerning instances where [a service agreement] was issue[d] for a non-covered product." (*Id.* at 10.) As defendants point out, this characterization of the ruling does not correspond with the relief plaintiffs sought from Judge Mason; aftermarket service agreements are not the same as service agreements for non-covered products. Plaintiffs have failed to convince this Court that Judge Mason clearly erred in denying plaintiffs the specific discovery that they sought in their motion to compel.

Plaintiffs' third and final objection is to the "limitation of discovery based on the statute of limitations." (*Id.* at 12.) In May 2016, near the end of the fact-discovery period, Judge Mason determined that discovery dating back to March 25, 2010 was "reasonable and proportional to the needs of the Greenes' case at this time." (ECF No. 72, Order at 5.) Plaintiffs then repeatedly asked Judge Mason to reconsider that determination. This Court agrees with Judge Mason that plaintiffs have provided no compelling argument that discovery going back earlier than March 25, 2010 is warranted. Plaintiffs' arguments are cursory. For example, they concede that they have "proceeded on the assumption that" Pennsylvania's four-year statute of limitations applies to their contract claim, but argue that "a strong case can be made that it is Illinois' ten-year statute that actually applies." (Pls.' Objections at 15.) But they fail to develop that argument or their other arguments regarding the temporal scope of discovery.

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 21 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 8 of 10 PageID #:1415

answer.  Judge Mason concluded that plaintiffs' motion to reopen fact discovery was untimely and unsupported by law.    Plaintiffs first argue, unpersuasively, that they experienced "confusion" about whether fact discovery was closed on June 10, 2016.    To support that proposition, they oddly rely on an order that Judge Mason entered a month later in which he indeed affirmed that he did not find it necessary to "*re-open*" fact discovery.  (ECF No. 91 (emphasis added).)  The Court agrees with Judge Mason that it was clear that the statements he made with respect to remaining discovery matters after the close of discovery were with respect to outstanding discovery matters only.  Plaintiffs also assert that they were diligent in pursuing discovery and defendants have refused to engage in discovery in good faith.  But even if those general arguments had merit, which the record does not bear out, they provide no justification for why plaintiffs did not move to reopen fact discovery until three months after it had been closed.    Furthermore, plaintiffs' contention that Judge Mason "myopically focus[ed] on purported deficiencies in Plaintiffs' discovery requests and the manner in which Plaintiffs attempted to bring them to the Court's attention, with little regard for the substantive interests at stake," (Pls.' Objections at 6), is utterly without merit.  It is plaintiffs' job, not that of the courts, to craft their own discovery requests and arguments on motions, and to bring those requests and motions in a timely manner.  Plaintiffs assert that Judge Mason's ruling was "rendered in a vacuum," (*id.*), but it appears that it is plaintiffs who would have the Court ignore their actions, or lack thereof, during the discovery process.  Plaintiffs also contend that as a matter of law, it is improper to close discovery prior to the filing of an answer, but they cite no authority for that proposition, and it is rejected.  In any event, this Court concurs with Judge Mason, who denied plaintiffs' motion without prejudice and acknowledged the possibility that defendants might raise affirmative defenses that could warrant reopened discovery.

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 22 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 7 of 10 PageID #:1414

convincing reason that the Pennsylvania Supreme Court would disagree with the Pennsylvania

Superior Court's conclusion in *Knight*, the Court will follow *Knight*.  Although defendants are

correct in stating that when faced with two opposing and equally plausible interpretations of

state law, this court should generally choose a narrower interpretation that restricts liability, *see*

*Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000), it is this Court's view that

*Knight* is the more plausible interpretation in light of the evolution of Pennsylvania law since

*Werwinski* was decided, *see Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 429 (E.D. Pa.

2015).  Defendants' motion to dismiss plaintiffs' PCPL claim is therefore denied.

**B.    Objections to Judge Mason's Rulings**

Plaintiffs timely filed objections to Magistrate Judge Mason's Order of October 28, 2016

[115], in which Judge Mason granted in part and denied in part plaintiffs' motions to compel

production of certain discovery [110] and to extend discovery deadlines [109].

Where, as here, a district court considers timely objections to a magistrate judge's rulings

on nondispositive matters, the magistrate judge's rulings will be modified or set aside only if

they are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); see also *Domanus v.*

*Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014).  Under the clear-error standard of review, "the

district court can overturn the magistrate judge's ruling only if the district court is left with the

definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus.*

*Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

Plaintiffs challenge three aspects of Judge Mason's order.[1]  The first is the denial of

plaintiffs' motion to reopen fact discovery for a ninety-day period following the filing of an

---

[1]Because oral argument would not help the Court in ruling on plaintiffs' objections,
plaintiffs' request for oral argument is denied.

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 23 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 6 of 10 PageID #:1413

only competing inference—that plaintiffs entered into the agreements without regard for whether they actually covered their products—is implausible.  The Court concludes that plaintiffs have pleaded facts sufficient to allege justifiable reliance.

Defendants also argue that plaintiffs' PCPL claim is barred by the economic-loss doctrine, which prohibits plaintiffs from recovering in tort certain economic losses.  Whether the doctrine applies to PCPL claims "has been the subject of much dispute in Pennsylvania." *Murphy v. State Farm Mut. Auto. Ins. Co.*, No. 16-2922, 2016 WL 4917597, at *5 (E.D. Pa. Sept. 15, 2016).  The parties' briefs reflect this dispute, which the *Murphy* court explained as follows:

> While . . . the Pennsylvania Supreme Court has yet to rule on whether the economic loss doctrine bars intentional fraud and deceptive practices claims stemming from a statute such as the UTPCPL, the Third Circuit has predicted that the Pennsylvania Supreme Court would hold that UTPCPL claims are barred by the economic loss doctrine. *Werwinski* [*v. Ford Motor Co.*], 286 F.3d [661,] 680-81 [(3d Cir. 2002)].   After *Werwinski*, the Pennsylvania Superior Court held in *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013), that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence.

*Murphy*, 2016 WL 4917597, at *5.  As noted in *Murphy*, while some courts have concluded that *Werwinski* "no longer holds vitality after *Knight*," others, such as the *Murphy* court, have continued to follow *Werwinski* on the ground that it is binding on district courts in the Third Circuit until the Pennsylvania Supreme Court or the Third Circuit rules otherwise.  *See id.*

*Werwinski* is not binding on this Court, and in the absence of guiding decisions from the Pennsylvania Supreme Court, the Seventh Circuit instructs us to "consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree."  *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012).  Because defendants do not persuade this Court that there is a

6

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 24 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 5 of 10 PageID #:1412

at 855 (no ICFA claim where the only connection with Illinois is the defendants' headquarters or the fact that a scheme "emanated" from Illinois). Plaintiffs' allegations still suggest that most of the circumstances underlying the alleged fraud occurred in Pennsylvania, so plaintiffs do not have standing to sue under the ICFA. The dismissal of plaintiffs' ICFA claim will be with prejudice, for the same reasons the dismissal of Sears Holdings Corporation is with prejudice.

### 4.    Count IV (Pennsylvania Consumer Protection Law)

Defendants contend that plaintiffs also have failed to state a claim under the PCPL, for two reasons. The first, say defendants, is that plaintiffs do not allege that they justifiably relied on defendants' wrongful conduct and suffered harm as a result of that reliance. The parties disagree on whether Pennsylvania law requires plaintiffs to plead (or even prove) justifiable reliance when asserting a PCPL claim under the statute's "catch-all" provision. The Court will assume for purposes of the instant motion that the plaintiffs are so required. According to defendants, plaintiffs fail to allege that Sears's deceptive acts induced plaintiffs to purchase service agreements, to their detriment.

Plaintiffs respond that they have pleaded justifiable reliance because the only reasonable inference to draw from their allegations is that they purchased the service agreements based on the belief, caused by Sears's misrepresentations and omissions, that the agreements actually provided coverage for the products they had purchased. The Court agrees. Justifiable reliance requires considering, among other things, the circumstances surrounding the transaction at issue. *See, e.g.*, *Behr v. Fed. Home Loan Mortg. Corp.*, No. 1:14-cv-291, 2015 WL 5123656, at *7 (W.D. Pa. July 29, 2015). Here we do not have a situation, as in some cases, where the nature of the subject transaction and alleged deception permit alternative inferences as to whether a plaintiff relied on the deception in entering into the transaction. As plaintiffs correctly note, the

5

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 25 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 4 of 10 PageID #:1411

3.    **Count III (Illinois Consumer Fraud Act)**

As the Court set out in its previous opinion and order, the Seventh Circuit has said that a

nonresident plaintiff may sue under the ICFA only if the circumstances relating to the alleged

fraudulent transaction occurred mostly in Illinois. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d

392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54

(Ill. 2005)). The Court dismissed plaintiffs' ICFA claim, noting that it was alleged or reasonable

to infer from the allegations that although Sears is in Illinois, plaintiffs live in Pennsylvania; they

entered into the agreements with Sears and thus were allegedly deceived in Pennsylvania; they

called from Pennsylvania to request service on their treadmill; they were in Pennsylvania when

they learned that their products were not covered by the agreements; and the appliances that

were the subject of the agreements are in Pennsylvania. (ECF No. 48, Mem. Op. & Order at 6.)

Because the allegations suggested that most of the circumstances underlying the alleged fraud

occurred in Pennsylvania, the Court concluded that plaintiffs do not have statutory standing to

sue under the ICFA.

In the First Amended Complaint, plaintiffs add allegations about general operations and

procedures concerning service agreements, which take place at Sears's headquarters in Illinois.

Much of the alleged conduct (such as the handling of claims under the agreements and the

maintenance of databases used to input customer claims) has nothing to do with the allegedly

deceptive conduct, and the remaining alleged conduct is not specific to plaintiffs; as defendants

point out, none of plaintiffs' new allegations address the circumstances under which plaintiffs

purchased their service agreements or when they learned that their purchases were not covered.

The new allegations at most support an inference that the alleged deceptive course of conduct

emanated from Illinois, but that is insufficient to support an ICFA claim. *See Avery*, 835 N.E.2d

4

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 26 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 3 of 10 PageID #:1410

The Court disagrees. Although plaintiffs have added allegations about Sears Holdings' employees' general involvement in drafting, pricing, marketing, and handling claims related to service protection agreements, as well as Sears Holdings' operation of call centers that handle questions about products and services, plaintiffs do not allege any facts from which it can be reasonably inferred that Sears Holdings retained any benefit as a result of plaintiffs' agreements. Plaintiffs therefore fail to state an unjust enrichment claim against Sears Holdings. *See Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 541-42 (Ill. App. Ct. 2008) (affirming dismissal of unjust enrichment claim where plaintiff did not allege that defendant had unjustly retained any benefit).

As for the consumer fraud claims, plaintiffs fail to allege any facts from which it can be inferred that Sears Holdings, in particular, made any misrepresentations to them or otherwise engaged in deceptive practices. Accordingly, plaintiffs also fail to state consumer fraud claims against Sears Holdings. *See Lagen v. Balcor Co.*, 653 N.E.2d 968, 976-77 (Ill. App. Ct. 1995) (stating that a plaintiff must "allege some sort of deception by the defendant to avoid dismissal" of an ICFA claim); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 512-13 (E.D. Pa. 2009) (dismissing PCPL claim against mortgage lender where the only misrepresentation plaintiffs alleged was by a different defendant and the claim against the lender was merely a threadbare recital of the claim's elements). The Court therefore dismisses Sears Holdings as a defendant. Defendants seek a with-prejudice dismissal. Because plaintiffs do not seek leave to amend in the event of Sears Holdings' dismissal, and plaintiff were previously given the opportunity to replead claims against Sears Holdings and still have failed to do so, the dismissal is with prejudice. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (leave to amend need not be granted when a party has had multiple opportunities to amend but failed to cure a defective claim).

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 27 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 2 of 10 PageID #:1409

and violation of the Illinois Consumer Fraud Act ("ICFA"), which were dismissed without prejudice.

Plaintiffs subsequently filed the First Amended Class Action Complaint, which asserts claims for breach of contract (Count I); unjust enrichment (Count II); violation of the ICFA (Count III); and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PCPL") (Count IV). (ECF No. 51, Compl.)

## DISCUSSION

### A.    Motion to Dismiss

#### 1.    Legal Standards

When evaluating the sufficiency of a complaint, the Court construes it in the light most favorable to the plaintiffs, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiffs' favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

#### 2.    Sears Holdings Corporation

The Court previously dismissed Sears Holdings as a defendant because plaintiffs' allegations established that it was not a party to the service agreements and plaintiffs offered no other basis for holding it liable. That remains the case with the amended complaint. Plaintiffs argue that they have stated unjust enrichment and consumer fraud claims against Sears Holdings.

2

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 28 of 35
Case: 1:15-cv-02546 Document #: 121 Filed: 03/27/17 Page 1 of 10 PageID #:1408

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NINA GREENE and GERALD GREENE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 15 C 2546 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| SEARS PROTECTION COMPANY, | ) | |
| SEARS, ROEBUCK AND CO., and | ) | |
| SEARS HOLDINGS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Counts III and IV of plaintiffs' First Amended Class Action Complaint as well as defendant Sears Holdings Corporation [54], which is granted in part and denied in part for the reasons explained below. Also before the Court are plaintiffs' objections [116] to Magistrate Judge Mason's rulings on two of plaintiffs' discovery motions, which are overruled for the reasons explained below.

### BACKGROUND

In this action, plaintiffs Nina Greene and Gerald Greene, who are Pennsylvania residents, complain that from 1994 to 2014, they entered into and paid for several appliance-service agreements with the Sears, Roebuck and Company and Sears Protection Company that did not actually cover the service on their products. Plaintiffs also sue Sears Holdings Corporation ("Sears Holdings"). Defendants' motion to dismiss plaintiffs' previous complaint was granted in part and denied in part. The Court granted the motion as to Sears Holdings and dismissed it from this suit. The Court also granted the motion as to plaintiffs' claims for unjust enrichment

# EXHIBIT 2

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 30 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 17 of 17 PageID #:258

Master Protection Agreement

 **Sears**

Don't worry. This isn't a bill.
It's confirmation of your coverage.

0334550422 00088
Nina Greene
5 Saint Davids Rd
WAYNE, PA 19087

| CONTRACT NUMBER | PAYMENT METHOD | CONTRACT EXPIRATION |
|---|---|---|
| 033455042200088 | | 01/12/14 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
|---|---|---|---|
| OVEN BUILT-IN TGI ONLY | CT230W | IN-HOME | 05/20/98 |
| COOKTOP TGI ONLY | VERIFY | IN-HOME | 01/01/96 |
| REFRIGERATOR, W/ICE MAKER | 501R | IN-HOME | 02/20/94 |
| COMPACTOR | NA | IN-HOME | 01/02/95 |
| FREEZR,FULL SIZE TGI ONLY | 501F | IN-HOME | 02/20/96 |
| FRONT LOAD WASHER | 11044932200 | IN-HOME | 10/14/03 |
| DRYERG, PREM PLUS | 11094832201 | IN-HOME | 10/14/03 |
| DISHWASHER, BUILT-IN | G8955C1 | IN-HOME | 10/01/98 |
| DISHWASHER,1YR,0800/U1300 | 666KUDS02SRWH | IN-HOME | 12/07/05 |
| VACUUM CLNR, CANNISTER | CV850 | SHOP | 04/26/07 |
| VACUUM CLNR, CANNISTER | CV850 | SHOP | 04/26/07 |

*Alf Crespo*

ALEX CRESPO

*Customer Solutions*

*Case #*

*6057529*



Price:    $3,984.80
Tax Paid:  $234.05
Total Paid: $4,218.85
See reverse side for terms and conditions.
* May reflect any warranty and current Service Agreement coverage.

To schedule a repair, please call
**1-800-4-MY-HOME**
1-800-469-4663 or go online at www.sears.com.

Unit #: 009468
Printed 05/11/12
MPA.TI0T01

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 31 of 35
Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 16 of 17 PageID #:257

Master Protection Agreement



*************AUTO**3-DIGIT 190
0334550422 00086
Nina Greene
5 Saint Davids Rd.
Wayne, PA 19087-4756

Don't worry. This isn't a bill.
It's confirmation of your coverage.

| CERTIFICATE NUMBER | CREDIT CARD NUMBER | CONTRACT EXPIRATION* |
|---|---|---|
| 033455042200086 | | 11/21/2011 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
|---|---|---|---|
| REFRIGERATOR, W/ICE MAKER | 501X | IN-HOME | 03/20/19M |
| COMPACTOR | | IN-HOME | 11/01/1992 |
| TREADMILL, POWER | | IN-HOME | 11/01/1993 |
| COOKTOP | | IN-HOME | 11/01/1993 |
| FREEZER, OVER 9 CU. FT. | 501F | IN-HOME | 03/26/1995 |
| OVEN, BUILT-IN | CT330WY | IN-HOME | 02/28/1998 |
| DISHWASHER, BUILT-IN | | IN-HOME | 05/28/1998 |
| WASHER FRONT LOAD PREM | 11044932700 | IN-HOME | 05/01/1998 |
| DRYER6, PREM PLUS | 11094832700 | IN-HOME | 10/14/2001 |
| DISHWASHER,FVR/0600/1H300 | 66680050254WH | IN-HOME | 10/19/2001 |
| | | IN-HOME | 12/07/2003 |

Price: $2,563.15
Tax Paid: $150.74
Total Paid: $2,713.89
See reverse side for terms and conditions.
* May reflect any warranty and current Service Agreement coverage.

**1 - 800 - 4 - M Y - H O M E**
1-800-469-4663 or go online at www.sears.com.

Unit #: 0009480
Printed: 11/25/08
MPA TIOTO1
1 * MPA

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 32 of 35
Case: 1:15-cv-02546 Document #: 50-12 Filed: 03/11/16 Page 15 of 17 PageID #:256

18-23538-shl   Doc 3170-6   Filed 04/12/19   Entered 04/12/19 12:38:29   Exhibit
EXHIBIT B (part 2) - SRC Claim   Pg 33 of 35
Case 1:15-cv-09346 Document #51-1 Filed: 03/11/16 Page 34 of 117 PageID #:255

Master Protection Agreement

# SEARS

**Don't worry. This isn't a bill.**
It's confirmation of your coverage.

**************AUTO** 3-DIGIT 190
0334550422 00076
Nina Greene
5 Saint Davids Rd.
Wayne, PA 19087-4756

| CERTIFICATE NUMBER | CREDIT CARD NUMBER | EXPIRATION* |
|---|---|---|
| 033455042200076 | | 11/21/2008 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
|---|---|---|---|
| DISHWASHER,1YR,0800/U1300 | 66540D5075RWH | IN-HOME | 12/07/2005 |

To schedule a repair, please call

# 1 - 8 0 0 - 4 - M Y - H O M E
1-800-469-4663 or go online at www.sears.com.

Price: $199.19
Tax Paid: $0.00
Total Paid: $199.19

See reverse side for terms and conditions.
* May reflect any warranty and current Service Agreement coverage.
** This item will continue to be covered by Sears until the original contracts' expiration date.

Unit #: 0009420
Printed: 1/3/06
MPA REPL01
** © MPA

0505

Case: 1:15-cv-02546 Document #: 51-1 Filed: 03/11/16 Page 13 of 17 PageID #:254

In this Master Protection Agreement (hereinafter referred to as "MPA" or "Agreement"), the terms "we", "us", "our" and "Obligor" refer to Sears Protection Company ("SPC"), a wholly-owned subsidiary of Sears, Roebuck and Co. ("Sears"), in states where Sears is the Obligor and Sears Roebuck de Puerto Rico, Inc. ("Sears PR"), a wholly-owned subsidiary of Sears, in Puerto Rico. The terms "you" and "your" refer to the purchaser of this MPA. Obligations under this Agreement are backed only by the full faith and credit of the Obligor. See paragraph 16 for state by state Obligor listing. SEE ALSO SPECIAL STATE EXCLUSIONS BELOW.

1. COVERAGE AND TERM. ...

2. ELIGIBILITY FOR COVERAGE. ...

3. PREVENTIVE MAINTENANCE. ...

4. TRANSFERABILITY. ...

5. FOOD LOSS REIMBURSEMENT FOR REFRIGERATORS AND FREEZERS. ...

6. REPLACEMENT AND NEW CLEAN GUARANTEE. ...

7. RENTAL REIMBURSEMENT. ...

8. DISCOUNT ON NON-COVERED REPAIRS. ...

9. TIME AND PLACE OF SERVICE. ...

10. LIMITATIONS OF COVERAGE. THIS MPA DOES NOT COVER:

11. SAFETY. ...

12. LIMITATION OF LIABILITY. ...

13. RENEWAL. ...

14. CANCELLATION AND REFUNDS. ...

15. ARBITRATION. ...

16. OBLIGOR. ...

17. PUERTO RICO, CALIFORNIA, NEW MEXICO, WASHINGTON, WYOMING AND NEW YORK CUSTOMERS. ...

18. UTAH CUSTOMERS. ...

19. KENTUCKY AND VIRGINIA CUSTOMERS. ...

20. INDIANA AND WEST VIRGINIA CUSTOMERS. ...

21. IOWA CUSTOMERS. ...

22. TEXAS CUSTOMERS. ...

23. SOUTH CAROLINA CUSTOMERS. ...

24. NORTH CAROLINA CUSTOMERS. ...

25. ALABAMA CUSTOMERS. ...

26. WYOMING CUSTOMERS. ...

27. GEORGIA CUSTOMERS. ...

Sears Protection Company, Obligor, Dept. 702SRC, 3333 Beverly Road, Hoffman Estates, IL 60179
Sears, Roebuck and Co., Obligor, Dept. 702SRC, 3333 Beverly Road, Hoffman Estates, IL 60179
Sears Roebuck de Puerto Rico, Inc., Obligor, 383 F.D. Roosevelt Avenue, Hato Rey, Puerto Rico 00918

MPA SVC New 12/1/04                                                                FORM 4/3

18-23538-shl    Doc 3170-6    Filed 04/12/19    Entered 04/12/19 12:38:29    Exhibit
EXHIBIT B (part 2) - SRC Claim    Pg 35 of 35
Case 16-40500 Document 51 Filed in TXSB on 03/14/16 Page 20 of 25    Page 20 of 25

A

# SEARS

**Don't worry. This isn't a bill.
It's confirmation of your coverage.**

```
************AUTO** 3-DIGIT 190
0334550422 00070
Nina Greene
5 Saint Davids Rd.
Wayne, PA 19087-4756
```

I..IIII.I.II...I.I.II..I.I.II.I.II.I.I..III.I.I

| CERTIFICATE NUMBER | CREDIT CARD NUMBER | EXPIRATION* |
|---|---|---|
| 033455042200070 | | 11/21/2008 |

| PRODUCT | MODEL NUMBER | SERVICE LOCATION | PURCHASE DATE |
|---|---|---|---|
| COOKTOP | | IN-HOME | 01/01/1996 |

Price: $236.60
Tax Paid: $14.20
Total Paid: $250.80

To schedule a repair, please call

**1-800-4-MY-HOME**
1-800-469-4663 or go online at www.sears.com.

Unit #: 0009468
Printed: 06/28/05
MPA TIOT01
* * MPA

See reverse side for terms and conditions.
* May reflect any warranty and current Service Agreement coverage.
** This item will continue to be covered by Sears until the original contracts' expiration date.

0505