AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
SEARS HOLDINGS CORPORATION, et al.,       :        Case No. 18-23538 (RDD)
                                          :
                                          :        (Jointly Administered)
                        Debtors.[1]       :
----------------------------------------------------------x

**FIRST INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF OCTOBER 24, 2018 THROUGH AND INCLUDING FEBRUARY 28, 2019**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| *General Information* | |
| --- | --- |
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 0 |

| *Summary of Fees and Expenses Sought in this Application* | |
| --- | --- |
| Time Period Covered by this Application: | October 24, 2018 through and including February 28, 2019 (the "Compensation Period") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $20,309,841.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $1,325,684.75 |
| Total Compensation and Expenses Requested for the Compensation Period: | $21,635,525.75 |

| *Summary of Fees, Professionals, Rates and Budget in this Application* | |
| --- | --- |
| Total Compensation Approved by Interim Order to Date: | N/A |
| Total Expenses Approved by Interim Order to Date: | N/A |
| Total Allowed Compensation Paid to Date: | N/A |
| Total Allowed Expenses Paid to Date: | N/A |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $4,936,243.60 |

| | |
|---|---|
| Expenses Sought in this Application Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $103,005.27 |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $5,039,248.87 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $16,596,276.88 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $659,039.71[2] |

### *Summary of Fees and Expenses Sought in this Application*

| | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $861.93 |
| Blended Rate in this Application for All Timekeepers: | $814.14 |
| Number of Timekeepers Included in this Application: | 111 (91 attorneys; 20 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 18 |
| Increase in Rates Since Date of Retention: | 1[3] |
| Interim or Final Application: | Interim |

---

[2] Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $607,115.00 for fee reductions applied prior to the filing of the applicable Monthly Fee Statement (as defined herein) and (ii) $51,924.71 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement. Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

[3] Akin Gump increased its rates on January 1, 2019, consistent with its customary practice and as disclosed in the Akin Retention Application (as defined herein).

## SUMMARY OF MONTHLY FEE STATEMENTS

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 2/12/19 | 2567 | 10/24/18 - 10/31/18 | $873,974.00 (80% of $1,092,467.50) | $8,488.36 | $873,974.00 | $8,488.36 |
| 3/11/19 | 2794 | 11/1/18 – 11/30/18 | $4,062,269.60 (80% of $5,077,837.00) | $94,516.91 | $4,062,269.60 | $94,516.91 |
| 3/26/19 | 2958 | 12/1/18 – 12/31/18 | $3,460,633.60 (80% of $4,325,792.00) | $198,291.83 | $0 | $0 |
| 4/5/19 | 3063 | 1/1/19 – 1/31/19 | $5,749,269.60 (80% of $7,186,587.00) | $308,404.81 | $0 | $0 |
| 4/10/19 | 3118 | 2/1/19 – 2/28/19 | $2,101,726.00 (80% of $2,627,157.50) | $715,982,84 | $0 | $0 |

Summary of Any Objections to Monthly Fee Statements:  None

Compensation and Expenses Sought in This Application Not Yet Paid:  $16,596,276.88

## COMPENSATION BY PROFESSIONAL
## OCTOBER 24, 2018 THROUGH AND INCLUDING FEBRUARY 28, 2019

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Adler, Aimee M. | Partner | Tax | 2001 | $940.00 | $1,040.00 | 138.50 | $132,840.00 |
| Bain, John A. | Partner | Real Estate | 2007 | $840.00 | $985.00 | 224.80 | $203,506.00 |
| Berchem, Kerry E. | Partner | Corporate | 1991 | $1,210.00 | N/A | 32.40 | $39,204.00 |
| Botter, David | Partner | Financial Restructuring | 1990 | $1,375.00 | $1,475.00 | 191.40 | $266,035.00 |
| Brimmage, Marty | Partner | Litigation | 1995 | $1,240.00 | $1,425.00 | 138.30 | $181,056.50 |
| Chen, Z.W. Julius | Partner | Litigation | 2010 | N/A | $925.00 | 64.80 | $59,940.00 |
| Crawford, Ashley Vison | Partner | Litigation | 2003 | $880.00 | N/A | 5.00 | $4,400.00 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,475.00 | $1,550.00 | 460.20 | $694,440.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,375.00 | $1,475.00 | 747.75 | $1,068,006.25 |
| Hsu, Alice | Partner | Corporate | 1999 | $930.00 | N/A | 9.50 | $8,835.00 |
| Jacobson, Howard B. | Partner | Tax | 1979 | $1,045.00 | $1,120.00 | 112.80 | $121,311.00 |
| Kuhn, Stephen B. | Partner | Corporate | 1991 | $1,295.00 | N/A | 19.40 | $25,123.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $910.00 | $1,020.00 | 744.50 | $719,669.00 |
| Leader, Susan K. | Partner | Litigation | 2001 | $930.00 | $1,020.00 | 23.50 | $22,422.00 |
| Lee, Frederick T. | Partner | Finance | 2005 | $1,210.00 | N/A | 24.60 | $29,766.00 |
| Leyden, Lauren H. | Partner | Labor | 2006 | $1,070.00 | $1,160.00 | 34.50 | $37,383.00 |
| Miller, Allison P. | Partner | Corporate | 2003 | $950.00 | $1,250.00 | 531.80 | $573,550.00 |
| Morris, William D. | Partner | Oil & Gas | 1985 | $1,125.00 | N/A | 13.80 | $15,525.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Phelps, David S. | Partner | Real Estate | 1987 | $1,100.00 | $1,160.00 | 329.20 | $369,470.00 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,375.00 | $1,475.00 | 659.70 | $948,507.50 |
| Roush, Corey W. | Partner | Litigation | 1997 | $970.00 | N/A | 20.30 | $19,691.00 |
| Ru, Meng | Partner | Finance | 2005 | $970.00 | $1,100.00 | 133.60 | $130,814.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,045.00 | $1,120.00 | 886.35 | $957,593.25 |
| Vondle, David C. | Partner | Intellectual Property | 2002 | $930.00 | $1,020.00 | 116.20 | $114,006.00 |
| Welkis, Scott | Partner | Finance | 1997 | $1,210.00 | $1,275.00 | 381.20 | $466,465.00 |
| Williams, Joshua R. | Partner | Tax | 2004 | $1,010.00 | $1,120.00 | 41.20 | $43,306.00 |
| Brauner, Sara L. | Counsel | Financial Restructuring | 2011 | $975.00 | $1,125.00 | 1,270.80 | $1,332,975.00 |
| Brown, Ashley E. | Counsel | Litigation | 2011 | $790.00 | $865.00 | 50.10 | $40,449.00 |
| Carty, Christopher W. | Counsel | Litigation | 2010 | $890.00 | $980.00 | 917.10 | $858,051.00 |
| Chapman, Dean L. | Counsel | Litigation | 2009 | $895.00 | $980.00 | 731.40 | $684,098.00 |
| Danishefsky, Menachem | Counsel | Tax | 2017 | N/A | $950.00 | 5.50 | $5,225.00 |
| Demander, Kathryn G. | Counsel | Litigation | 2013 | N/A | $805.00 | 227.60 | $183,218.00 |
| Fey, Hilary D. | Counsel | Real Estate | 200 | $790.00 | N/A | 11.50 | $9,085.00 |
| Freeman, Alexis | Counsel | Financial Restructuring | 2001 | $990.00 | $1,100.00 | 683.10 | $702,713.00 |
| Goodman, Evan N. | Counsel | Corporate | 2012 | $810.00 | N/A | 22.50 | $18,225.00 |
| Koo, Angeline K. | Counsel | Litigation | 2005 | $835.00 | $940.00 | 513.40 | $454,498.00 |
| Lee, David C. | Counsel | Intellectual Property | 2000 | $790.00 | $905.00 | 28.90 | $23,762.50 |
| Locke, Adam T. | Counsel | Litigation | 2012 | $810.00 | $915.00 | 442.80 | $374,386.50 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| McGrady, Erica D. | Counsel | Corporate | 1997 | $815.00 | $905.00 | 228.40 | $199,187.00 |
| Mongan, William F. | Counsel | Litigation | 2012 | $860.00 | N/A | 10.20 | $8,772.00 |
| Morris, Brandon T. | Counsel | Tax | 2009 | $945.00 | $1,040.00 | 57.30 | $56,381.00 |
| Murphy, John C. | Counsel | Litigation | 2011 | N/A | $960.00 | 41.50 | $39,840.00 |
| O'Brien, Patrick G. | Counsel | Litigation | 2004 | $730.00 | $905.00 | 38.30 | $29,009.00 |
| Peckham, Heather L. | Counsel | Litigation | 2000 | $750.00 | $905.00 | 589.20 | $490,492.50 |
| Staber, David F. | Counsel | Financial Restructuring | 1988 | $975.00 | N/A | 7.70 | $7,507.50 |
| Stark, Dustin E. | Counsel | Labor | 2013 | N/A | $915.00 | 7.20 | $6,588.00 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $825.00 | $905.00 | 499.80 | $436,071.00 |
| Tolentino, Raymond P. | Counsel | Litigation | 2013 | N/A | $840.00 | 101.40 | $85,176.00 |
| Villota, Carlos P. | Counsel | Finance | 1997 | $820.00 | N/A | 164.80 | $135,136.00 |
| Windscheffel, Dennis J. | Counsel | Litigation | 2004 | $790.00 | N/A | 8.60 | $6,794.00 |
| Agahzadeh, Alex | Associate | Real Estate | 2014 | N/A | $775.00 | 16.70 | $12,942.50 |
| Aminian, Sarah | Associate | Corporate | 2018 | $520.00 | $540.00 | 171.70 | $90,414.00 |
| Antounian, Vicken G. | Associate | Corporate | 2017 | $495.00 | $555.00 | 137.10 | $72,016.50 |
| Brewer, Erin M. | Associate | Litigation | 2018 | $495.00 | $510.00 | 96.70 | $48,072.00 |
| Byun, Michael | Associate | Financial Restructuring | 2013 | $795.00 | $890.00 | 184.30 | $160,588.00 |
| Chatterjee, Raja | Associate | Corporate | 2018 | $495.00 | N/A | 6.50 | $3,217.50 |
| Chen, Michael | Associate | Litigation | Pending | $520.00 | $540.00 | 517.50 | $274,250.00 |
| Clarke, J. Robertson | Associate | Financial Restructuring | 2011 | $885.00 | $975.00 | 77.60 | $71,637.00 |

vii

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Danishefsky, Menachem | Associate | Tax | 2017 | $835.00 | N/A | 25.50 | $21,292.50 |
| Demander, Kathryn G. | Associate | Litigation | 2013 | $725.00 | N/A | 168.90 | $122,452.50 |
| Farovitch, Aaron S. | Associate | Tax | 2017 | $620.00 | $690.00 | 137.90 | $87,969.00 |
| Generales, Markos C. | Associate | Litigation | 2018 | $495.00 | N/A | 6.00 | $2,970.00 |
| Glackin, Patrick J. | Associate | Litigation | Pending | $520.00 | $540.00 | 591.20 | $312,726.00 |
| Handschumacher, Kelly | Associate | Litigation | 2017 | $520.00 | N/A | 25.90 | $13,468.00 |
| Hill, John B. | Associate | Corporate | Pending | $520.00 | $540.00 | 135.40 | $70,638.00 |
| Hiner, Chance | Associate | Financial Restructuring | 2017 | $540.00 | $660.00 | 88.90 | $52,278.00 |
| Holland, Erica E. | Associate | Litigation | 2016 | N/A | $770.00 | 117.20 | $90,244.00 |
| Kane, John P. | Associate | Litigation | 2016 | $645.00 | $770.00 | 737.30 | $519,508.50 |
| Kessler, Boris | Associate | Corporate | 2016 | $645.00 | N/A | 34.40 | $22,188.00 |
| Kulikowski, Jillian R. | Associate | Litigation | Pending | $520.00 | $540.00 | 500.10 | $265,170.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $620.00 | $760.00 | 947.25 | $651,065.00 |
| Latov, Jeffrey A. | Associate | Financial Restructuring /Litigation | 2017 | $620.00 | $760.00 | 695.00 | $469,988.00 |
| Lewis, Jacqueline K. | Associate | Corporate | 2018 | $520.00 | $630.00 | 165.50 | $90,317.00 |
| Lyashenko, Ekaterina V. | Associate | Tax | 2018 | $620.00 | N/A | 13.60 | $8,432.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $540.00 | $560.00 | 851.60 | $466,714.00 |
| Marshall, Michelle | Associate | Corporate | 2018 | $520.00 | $540.00 | 53.00 | $27,956.00 |
| McNeilly, Edward | Associate | Financial Restructuring | 2017 | $620.00 | $760.00 | 119.90 | $75,906.00 |
| Miller, Katlyne | Associate | Litigation | 2018 | $495.00 | $510.00 | 193.60 | $97,213.50 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Park, Daniel S. | Associate | Litigation | 2011 | $590.00 | $690.00 | 816.90 | $522,471.00 |
| Parlar, Erin E. | Associate | Litigation | 2018 | N/A | $815.00 | 98.10 | $79,951.50 |
| Phillips, Colin B. | Associate | Intellectual Property | 2017 | N/A | $555.00 | 12.90 | $7,159.50 |
| Praestholm, Amanda | Associate | Litigation | 2017 | N/A | $555.00 | 70.90 | $39,349.50 |
| Savar, Ramin | Associate | Real Estate | 2015 | $590.00 | $690.00 | 345.10 | $215,229.00 |
| Schmitten, J. Matthew | Associate | Litigation | Pending | $640.00 | N/A | 33.20 | $21,248.00 |
| Sharad, Saurabh | Associate | Litigation | 2015 | $715.00 | $815.00 | 566.60 | $430,309.00 |
| Steed, Alison L. | Associate | Corporate | 2018 | $520.00 | $540.00 | 146.10 | $77,000.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | Pending | $540.00 | $560.00 | 576.40 | $316,752.00 |
| Threadcraft, Tiffanye S. | Associate | Corporate | 2013 | $765.00 | $870.00 | 146.20 | $115,360.50 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $430.00 | $455.00 | 393.80 | $174,516.50 |
| Doniak, Christine D. | Staff Attorney | Practice Attorney | 1998 | N/A | $745.00 | 111.50 | $83,067.50 |
| Elliott, Amy S. | Staff Attorney | Practice Attorney | 2008 | N/A | $550.00 | 15.10 | $8,086.00 |
| Andron, Jonathan A. | Specialist | Trial Services | N/A | $260.00 | $270.00 | 123.00 | $33,105.00 |
| Belkin, Boris | Legal Assistant | Corporate | N/A | $385.00 | N/A | 38.00 | $14,630.00 |
| Chau, Lok Fung | Coordinator | EDiscovery | N/A | N/A | $355.00 | 5.90 | $2,094.50 |
| Edwards, Paul W. | Legal Assistant | Litigation | N/A | $330.00 | $355.00 | 28.20 | $9,583.50 |
| Ejoh, Kareen C. | Legal Assistant | Litigation | N/A | $260.00 | $270.00 | 342.60 | $91,632.00 |
| Greer, Michael S. | Specialist | Trial Services | N/A | N/A | $295.00 | 10.60 | $3,127.00 |
| Hicks, Adria M. | Legal Assistant | Litigation | N/A | N/A | $335.00 | 5.90 | $1,976.50 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Kemp, Brenda R. | Legal Assistant | Financial Restructuring | N/A | $330.00 | N/A | 156.80 | $51,744.00 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $385.00 | $395.00 | 218.80 | $84,403.00 |
| Langmack, Jennifer | Legal Assistant | Litigation | N/A | N/A | $335.00 | 5.90 | $1,976.50 |
| Leonard, Massai | Coordinator | EDiscovery | N/A | N/A | $325.00 | 11.50 | $3,737.50 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | $235.00 | 230.50 | $54,167.50 |
| Ma, Jim Wai-Ming | Coordinator | EDiscovery | N/A | N/A | $380.00 | 38.80 | $14,744.00 |
| Munoz, Alondra E. | Legal Assistant | Litigation | N/A | $195.00 | $205.00 | 48.80 | $9,759.00 |
| Pinkney, W. Matt | Specialist | Trial Services | N/A | N/A | $195.00 | 102.80 | $20,046.00 |
| Robertson, Emony M. | Legal Assistant | Litigation | N/A | $205.00 | $220.00 | 452.90 | $96,650.00 |
| Smith, Turner | Legal Assistant | Corporate | N/A | $205.00 | N/A | 6.00 | $1,230.00 |
| Southwell, Tracy | Legal Assistant | Financial Restructuring | N/A | $385.00 | $395.00 | 198.10 | $76,492.50 |
| Walls, Bennett M. | Legal Assistant | Litigation | N/A | N/A | $205.00 | 20.20 | $4,141.00 |
| Yen, Doris | Specialist | Research | N/A | N/A | $255.00 | 7.70 | $1,963.50 |

## TOTAL FEES FOR THE COMPENSATION PERIOD

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,191.87 | 6,085.30 | $7,252,864.50 |
| Senior Counsel / Counsel | $929.20 | 6,659.10 | $6,187,640.00 |
| Associates | $619.97 | 10,149.05 | $6,292,133.50 |
| Paraprofessionals and Other Non-Legal Staff | $281.15 | 2,053.00 | $577,203.00 |
| **Blended Attorney Rate** | **$861.93** | | |
| **Blended Rate for All Timekeepers** | **$814.14** | | |
| **Total Fees Incurred** | | **24,946.45** | **$20,309,841.00** |

## COMPENSATION BY PROJECT CATEGORY
## OCTOBER 24, 2018 THROUGH AND INCLUDING FEBRUARY 28, 2019

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 463.30 | $335,099.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 220.00 | $133,160.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 55.40 | $42,526.00 |
| 5 | Review/Preparation of Schedules, Statements | 35.20 | $29,497.00 |
| 6 | Retention of Professionals | 837.70 | $407,240.50 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 627.10 | $648,455.50 |
| 8 | Hearings and Court Matters/Court Preparation | 2,506.20 | $2,038,761.00 |
| 9 | Financial Reports and Analysis | 59.00 | $56,766.00 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | 1,099.20 | $1,000,210.50 |
| 11 | Executory Contract/Lease Issues | 53.20 | $36,046.50 |
| 12 | General Claims Analysis/Claims Objections | 251.70 | $207,360.00 |
| 13 | Analysis of Pre-Petition Transactions | 7,948.60 | $6,032,612.00 |
| 14 | Insurance Issues | 59.00 | $59,021.50 |
| 15 | Secured Creditors Issues/Communications/Meetings | 807.20 | $589,638.50 |
| 16 | Automatic Stay Issues | 100.40 | $69,296.50 |
| 17 | General Litigation Matters/Adversary Proceedings | 3.10 | $2,651.00 |
| 18 | Tax Issues | 257.00 | $247,687.50 |
| 19 | Labor Issues/Employee Benefits | 369.60 | $318,612.50 |
| 21 | Exclusivity | 65.00 | $52,929.50 |

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 173.50 | $173,151.00 |
| 23 | Asset Dispositions/363 Asset Sales | 7,235.40 | $6,475,641.00 |
| 24 | Real Estate Issues | 1,385.20 | $1,052,462.00 |
| 25 | Travel Time | 62.75 | $61,154.00 |
| 26 | Securities Law Issues | 0.00 | $0.00 |
| 27 | Environmental | 0.00 | $0.00 |
| 28 | General Corporate Matters | 84.80 | $54,172.00 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 159.20 | $159,622.00 |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | 3.80 | $2,995.00 |
| 31 | Business Operations | 23.90 | $23,073.00 |
| **Total** | | **24,946.45** | **$20,309,841.00** |

## EXPENSE SUMMARY
## OCTOBER 24, 2018 THROUGH AND INCLUDING FEBRUARY 28, 2019

| Disbursement Activity | Amount |
|---|---|
| Committee Member Expenses | $2,503.49 |
| Computerized Legal Research – Lexis – in contract 30% discount | $32,754.42 |
| Computerized Legal Research – Lexis – out of contract 30% discount | $100.70 |
| Computerized Legal Research – Courtlink – in contract 50% discount | $2,292.58 |
| Computerized Legal Research – Courtlink – out of contract 50% discount | $254.61 |
| Computerized Legal Research – Westlaw – in contract 30% discount | $74,770.06 |
| Computerized Legal Research – Westlaw – out of contract 30% discount | $446.65 |
| Computer Parts & Peripherals | $8,997.97 |
| Color Copy | $1,610.00 |
| Courier Service/Messenger Service – Off Site | $4,202.25 |
| Document Retrieval | $2,443.47 |
| Duplication – In House | $24,803.80 |
| Duplication - Off Site | $6,973.57 |
| Equipment - Rental | $8,683.95 |
| Filing Fees | $200.00 |
| Meals – Business | $10,232.40 |
| Meals - Overtime | $2,368.18 |
| Meals (100%) | $34,756.38 |
| Miscellaneous | $488.09 |
| Office Supplies – Printing | $13,316.41 |
| Overtime – Admin Staff | $2,712.62 |
| Postage | $611.44 |

| Disbursement Activity | Amount |
|---|---|
| Professional Fees - Consultant Fees | $81,168.75 |
| Professional Fees - Legal | $382,679.66 |
| Professional Fees – Misc. | $341,216.36 |
| Research | $246.78 |
| Telephone – Long Distance | $1,296.00 |
| Title Company | $98,512.00 |
| Trademark Service Fees | $550.00 |
| Transcripts | $71,023.81 |
| Travel – Airfare | $13,462.89 |
| Travel - Auto (mileage) | $109.04 |
| Travel – Auto Rental | $55.02 |
| Travel – Ground Transportation | $25,344.08 |
| Travel - Incidentals - Out of Town Travel | $43.00 |
| Travel – Lodging (Hotel, Apt, Other) | $64,802.14 |
| Travel – Parking | $694.68 |
| Travel – Telephone & Fax | $1,838.76 |
| Local Transportation – Overtime | $6,097.74 |
| Travel – Train Fare | $1,021.00 |
| **Total** | **$1,325,684.75** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                  :       Chapter 11
                                        :
SEARS HOLDINGS CORPORATION, et al.,     :       Case No. 18-23538 (RDD)
                                        :
                                        :       (Jointly Administered)
                     Debtors.[1]        :
------------------------------------------------------------x

**FIRST INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF OCTOBER 24, 2018 THROUGH AND INCLUDING FEBRUARY 28, 2019**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official

Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation

and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits

its first application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of

compensation for services rendered to the Creditors' Committee for the period of October 24,

2018 through and including February 28, 2019 (the "Compensation Period") and for

reimbursement of expenses incurred in connection therewith.  In support of this Application,

Akin Gump submits the declaration of Ira S. Dizengoff, a partner at Akin Gump (the "Dizengoff

Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference into this

Application.  In further support of this Application, Akin Gump respectfully represents as

follows.

## INTRODUCTION

1.      By this Application, Akin Gump seeks (i) interim allowance of compensation for

the professional services rendered by Akin Gump during the Compensation Period in the amount

of $20,309,841.00, representing 22,829.65 hours of professional services and 2,116.80 hours of

paraprofessional and other non-legal services, and (ii) reimbursement of actual and necessary

expenses incurred by Akin Gump during the Compensation Period in the amount of

$1,325,684.75.

2.      This Application has been prepared in accordance with the applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order*

*Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 796] (the "Interim Compensation Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Chair (as defined below) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

### A.      The Debtors' Chapter 11 Cases

7.      On October 15, 2018 (the "Petition Date"), and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections

3

1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered

for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.    On October 24, 2018 (the "Formation Date"), the Office of the United States

Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to

Bankruptcy Code section 1102(a).  *Notice of Appointment of Official Committee of Unsecured*

*Creditors* [ECF No. 276].  The Creditors' Committee currently comprises eight members.[2]

Simon Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

**B.    Retention of Akin Gump**

9.    On the Formation Date, the Creditors' Committee selected Akin Gump as its legal

counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and

employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention

Application"), which application was authorized by an order of this Court dated December 10,

2018 [ECF No. 1107] (the "Akin Retention Order").[3]

10.    The Akin Retention Order authorizes the Creditors' Committee to retain and

employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's

normal hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as

contemplated by the Akin Retention Application.  The Akin Retention Order authorizes Akin

Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-

of-pocket expenses.

---

[2] The following entities currently comprise the Creditors' Committee:  (i) Apex Tool Group, LLC; (ii) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (iii) Brixmor Operating Partnership, L.P.; (iv) Computershare Trust Company, N.A.; (v) Oswaldo Cruz; (vi) Pension Benefit Guaranty Corporation; (vii) Simon Property Group, L.P. and (viii) Winiadaewoo Electronics America, Inc.

[3] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2018 and October 29, 2018, respectively.  The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were entered on December 19, 2018.

C.      **Monthly Fee Statements**

11.      On February 12, 2019, Akin Gump filed and served the *First Monthly Fee
Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and
Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the
Period of October 24, 2018 Through October 31, 2018* [ECF No. 2567] (the "First Monthly Fee
Statement"),[4] pursuant to which Akin Gump sought payment of (i) $873,974.00 (80% of
$1,092,467.50) as compensation for professional services rendered and (ii) $8,488.36 for
reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee
Statement and received payment in respect thereof on February 28, 2019.

12.      On March 11, 2019, Akin Gump filed and served the *Second Monthly Fee
Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and
Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the
Period of November 1, 2018 Through November 30, 2018* [ECF No. 2794] (the "Second
Monthly Fee Statement"),[5] pursuant to which Akin Gump sought payment of (i) $4,062,269.60
(80% of $5,077,837.00) as compensation for professional services rendered and (ii) $94,516.91
for reimbursement of expenses.  Akin Gump did not receive any objections to the Second
Monthly Fee Statement and received payment in respect thereof on March 29, 2019.

13.      On March 26, 2019, Akin Gump filed and served the *Third Monthly Fee
Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and
Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the

---

[4] A copy of the First Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTMxNzk1&id2=0.

[5] A copy of the Second Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTQwMzkx&id2=0.

*Period of December 1, 2018 Through December 31, 2018* [ECF No. 2958] (the "Third Monthly

Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) $3,460,633.60 (80% of

$4,325,792.00) as compensation for professional services rendered and (ii) $198,291.83 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Third Monthly

Fee Statement.  As of the date of this Application, Akin Gump has not yet received payment in

respect of the Third Monthly Fee Statement.

14.     On April 5, 2019, Akin Gump filed and served the *Fourth Monthly Fee Statement*

*of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements*

*Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January*

*1, 2019 Through January 31, 2019* [ECF No. 3063] (the "Fourth Monthly Fee Statement"),[7]

pursuant to which Akin Gump sought payment of (i) $5,749,269,60 (80% of $7,186,587.00) as

compensation for professional services rendered and (ii) $308,404.81 for reimbursement of

expenses.  As of the date this Application, Akin Gump has not received any objections to the

Fourth Monthly Fee Statement.

15.     On April 10, 2019, Akin Gump filed and served the *Fifth Monthly Fee Statement*

*of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements*

*Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of*

*February 1, 2019 Through February 28, 2019* [ECF No. 3118] (the "Fifth Monthly Fee

Statement"[8] and, together with the First Monthly Fee Statement, the Second Monthly Fee

---

[6] A copy of the Third Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTUxODMz&id2=0.

[7] A copy of the Fourth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTU3ODUw&id2=0.

[8] A copy of the Fifth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTYxNTg5&id2=0.

Statement, the Third Monthly Fee Statement, and the Fourth Monthly Fee Statement, the

"Monthly Fee Statements"), pursuant to which Akin Gump sought payment of (i) $2,101,726.00

(80% of $2,627,157.50) as compensation for professional services rendered and (ii) $715,982.84

for reimbursement of expenses.  As of the date this Application, Akin Gump has not received

any objections to the Fifth Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

16.     By this Application, Akin Gump requests allowance of interim compensation for

professional services rendered to the Creditors' Committee during the Compensation Period in

the amount of $20,309,841.00 and expense reimbursements of $1,325,684.75.[9]  During the

Compensation Period, Akin Gump attorneys and paraprofessionals expended a total of 24,946.45

hours for which compensation is sought.

17.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance

with Akin Gump's existing billing rates and procedures in effect during the Compensation

Period.  The rates Akin Gump charges for the services rendered by its professionals and

paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional

and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees

are reasonable based on the customary compensation charged by comparably skilled

practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The

disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable

compensation are annexed hereto as **Exhibit B**.

---

[9] Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $607,114.50 for fee reductions applied prior to the filing of the applicable Monthly Fee Statement and (ii) $51,924.71 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

18.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Creditors' Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Creditors' Committee during the Compensation Period records have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

19.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

20.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE COMPENSATION PERIOD

21.     The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Creditors' Committee and commensurate with the complexity and significance of the matter. The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Creditors' Committee's needs and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

22.    The following is a summary of the professional services rendered by Akin Gump

during the Compensation Period.  This summary is organized in accordance with Akin Gump's

internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee

Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services

performed in the category that most closely related to the services provided.  The below does not

include summaries for certain task codes for which a *de minimis* amount of time was billed

during the Compensation Period.

23.    Moreover, the following summary of services rendered during the Compensation

Period is not intended to be a detailed description of the work performed.  Rather, it merely is an

attempt to highlight certain of those areas in which services were rendered to the Creditors'

Committee, as well as to identify some of the matters and issues that Akin Gump was required to

address during the Compensation Period

A.    **General Case Administration (Task Code 2)**

| Total Hours | Fees |
| --- | --- |
| 463.30 | $335,099.00 |

24.    This category includes time spent by Akin Gump professionals and

paraprofessionals performing various administrative services in order to represent the Creditors'

Committee effectively and efficiently, including, among other things:  (i) general case and

procedural research and reviewing background materials; (ii) reviewing and analyzing the first-

day motions and orders filed by the Debtors and communications with the Debtors' professionals

regarding requested modifications thereto; (iii) preparing internal task lists; (iv) preparing and

filing administrative pleadings, including the *Motion of the Official Committee of Unsecured*

*Creditors for Entry of an Order Clarifying the Requirement to Provide Access to Confidential or*

*Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*

[ECF No. 898]; and (v) communicating with the members of the Creditors' Committee, the

Debtors' advisors and other parties in interest regarding general case administration and related

matters.

25.    During the Compensation Period, Akin Gump was in close contact with counsel

to the Debtors and other relevant parties in interest on a regular basis to discuss when various

motions and applications would be filed and the type of information the Creditors' Committee

would require to analyze each motion or application properly and in a timely manner.  Akin

Gump also consulted with FTI and Houlihan multiple times per day with respect to documents

and other information received from the Debtors, their representatives and other parties in

interest.  Akin Gump professionals and paraprofessionals monitored the docket for the Chapter

11 Cases regularly to remain apprised of critical matters.  For each significant pleading filed,

Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties

were notified of its contents, relevant response deadlines, hearing dates and any other critical

matters related thereto.  Moreover, in connection with such motions and applications filed by the

Debtors and other parties in interest in the Chapter 11 Cases, Akin Gump analyzed and

conducted diligence with respect to the subject matter of the motion or application to, among

other things, ascertain the effect the relief requested would have on the Debtors, their business

and the administration of the Chapter 11 Cases.  Akin Gump's analysis and diligence efforts

included reviewing underlying documentation and/or litigation related to the applicable motion

or application, meeting with or holding conference calls with representatives of the Debtors

and/or third parties to attempt to achieve amicable resolutions of the issues involved and working

with Creditors' Committee's other advisors to ensure that the Creditors' Committee had a

complete understanding of the effect the granting of the relief requested would have on the

Debtors' estates and creditors.  Due to Akin Gump's experience counseling official committees

of unsecured creditors, Akin Gump believes it was able to address all issues relating to case

administration that have arisen during the pendency of the Chapter 11 Cases in an effective and

efficient manner.

**B.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
| --- | --- |
| 220.00 | $133,160.00 |

26.    This category includes the time spent by Akin Gump professionals and

paraprofessionals preparing and drafting the Monthly Fee Statements.  Pursuant to the Interim

Compensation Order, each of the Monthly Fee Statements contained a list of individuals who

rendered services to the Creditors' Committee during the relevant compensation period,

information as to each individual's title, billing rate and hours worked and a comprehensive

breakdown of the fees incurred and disbursements expended.  To minimize costs in connection

with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial

drafts of the Monthly Fee Statements, thereby limiting the time spent by attorneys on the review

of fees, where reasonably practicable.

**C.    Analysis of Other Professionals Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
| --- | --- |
| 55.40 | $42,526.00 |

27.    This category includes time spent by Akin Gump professionals and

paraprofessionals reviewing monthly fee statements submitted to the Court by other estate

retained professionals.  Akin Gump reviewed such fee statements to ensure that professionals

operated in accordance with their individual mandates and charged reasonable fees in connection

therewith.  This category also includes time spent assisting the Creditors' Committee's other

professionals in finalizing and filing their respective fee statements.  Finally, during the

Compensation Period, GACP II, L.P. ("Great American") filed a substantial contribution

application [ECF No. 1102] (the "Substantial Contribution Application") for payment of $2.1

million in fees and expenses it incurred with respect to its efforts to develop and arrange

postpetition financing for the Debtors.  Akin Gump reviewed and analyzed the Substantial

Contribution Application, including conducting research in connection therewith.  Ultimately,

while recognizing the role Great American played, the Creditors' Committee did not believe the

amount requested was reasonable.  Accordingly, Akin Gump drafted and filed the *Joinder of the*

*Official Committee of Unsecured Creditors to Debtors' Response to Application of GA Capital*

*for Allowance of Payment of Fees and Expenses Pursuant to Bankruptcy Code Sections*

*503(b)(3)(D) and 503(b)(4)* [ECF No. 1279] and engaged in negotiations and discussions with

the Debtors' and Great American's professionals to resolve the Substantial Contribution

Application consensually.  As a result of these negotiations, and in resolution of the Creditors'

Committee's objection, Great American agreed to a nearly 40% discount on its request for $2.1

million in fees and expenses.

**D.     Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
| --- | --- |
| 837.70 | $407,240.50 |

28.     This category includes time spent by Akin Gump professionals and

paraprofessionals with respect to various professional retention matters including, among other

things: (i) preparing the Akin Retention Application; (ii) assisting FTI and Houlihan in the

preparation and filing of their respective retention applications; and (iii) reviewing and analyzing

the 13 retention applications for the proposed engagement of the Debtors' advisors, including

those retained by the Restructuring Subcommittee of the Debtors' Board of Directors (the

"Restructuring Subcommittee").  With respect to each retention application and any supplements

thereto, Akin Gump provided a summary of the key terms of the engagement and

recommendations to the Creditors' Committee.  If necessary, Akin Gump, on behalf of the

Creditors' Committee, engaged with the Debtors' advisors to discuss the terms of proposed

Debtor retentions or any other issues identified with respect to their engagement.  Specifically,

during the Compensation Period, Akin Gump negotiated with Evercore Group L.L.C.

("Evercore") over the terms of its engagement by the Restructuring Subcommittee.  When no

consensual resolution could be reached, Akin Gump prepared and filed the *Objection of the*

*Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to Debtors'*

*Application to Retain and Employ Evercore Group L.L.C. as Investment Banker* [ECF No. 629]

(the "Evercore Objection"), which set forth the Creditors' Committee concerns with respect to

the Debtors' retention of Evercore absent additional evidence demonstrating that Evercore's

services would not be duplicative of those being provided by Alvarez & Marsal North America,

LLC.  The Creditors' Committee also objected to the approval, under Bankruptcy Code section

328, of Evercore's proposed minimum fee of $3 million.  Through further negotiation and

following a hearing before the Court, Evercore agreed to (x) reduce such fee by over 50% to $1.3

million and (y) provide the Creditors' Committee with a fee statement for any billable month

detailing Evercore's activities during any such month in order to ensure that Evercore's receipt

of its standard monthly fee of $200,000 remained appropriate.

29.     In addition, during the Compensation Period, Akin Gump professionals analyzed

and provided a recommendation to the Creditors' Committee with respect to the amendment to

the terms and conditions of Lazard Frères & Co. LLC's retention to increase the aggregate cap

on its fees, which the Court approved on January 24, 2019 [ECF No. 1775].

E.    **Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|-------------|------|
| 627.10 | $648,455.50 |

30.    This category includes time spent by Akin Gump professionals and paraprofessionals: (i) preparing for and participating in meetings and conference calls with the Creditors' Committee as a whole or with individual members of the Creditors' Committee; (ii) participating in weekly update calls among the professionals to the Creditors' Committee regarding pending matters and strategy; (iii) attending meetings on behalf of the Creditors' Committee, such as the two Bankruptcy Code section 341 meetings; (iv) responding to numerous inquiries from individual unsecured creditors; and (v) attending to other general Creditors' Committee matters, such as drafting the Creditors' Committee's bylaws.

31.    The Creditors' Committee played a very active role in the Chapter 11 Cases during the Compensation Period and Akin Gump, together with the Creditors' Committee's other professionals, held no fewer than 20 telephonic meetings with the full Creditors' Committee during the Compensation Period in addition to numerous telephonic conferences with individual Creditors' Committee members.  Prior to each scheduled meeting with the Creditors' Committee, Akin Gump attorneys reviewed pending matters, coordinated with the Creditors' Committee's other advisors and prepared an agenda addressing issues requiring the Creditors' Committee's attention.  In addition, Akin Gump prepared, and/or assisted FTI and Houlihan in preparing, detailed memoranda and presentations for the Creditors' Committee addressing pertinent matters in these proceedings.  During these meetings, Akin Gump assisted the Creditors' Committee in formulating positions with respect to significant matters in the Chapter 11 Cases.

32.    Through meetings, conference calls and correspondence, Akin Gump assisted the Creditors' Committee in fulfilling its statutory duties to make informed decisions regarding the

various issues that have arisen in the Chapter 11 Cases, monitoring closely the Debtors'

management of their business and the Chapter 11 Cases and reaching independent conclusions

on the merits of specific matters.  Akin Gump professionals and paraprofessionals devoted a

significant number of hours to this category during the Compensation Period in order to provide

information relating to the Chapter 11 Cases to the Creditors' Committee and ensure that the

Creditors' Committee was prepared to make informed decisions with respect to significant case

issues.  Although the tasks in this category do not necessarily relate to specific legal issues, they

nevertheless were essential because they facilitated Akin Gump's management of the case and

supported Akin Gump's performance of other substantive tasks.

**F.    Court Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 2,506.20 | $2,038,761.00 |

33.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with the court hearings and status conferences held during the

Compensation Period.  Akin Gump participated in each of the 12 hearings and multiple status

conferences held before the Court during the Compensation Period.  In preparing for hearings

and conferences, Akin Gump professionals and paraprofessionals, together with the Creditors'

Committee's other advisors, reviewed and analyzed all issues, applicable motions and

applications filed with the Court, including any objections and responses thereto, discussed with

the Debtors' advisors and other relevant parties the relief requested and, as necessary, asserted

the Creditors' Committee's position at such hearings.  In addition, following each hearing or

conference, Akin Gump provided the Creditors' Committee with updates and analyses of the

results thereof, either in written form or during the next Creditors' Committee call.

15

34.     This task code also includes time with respect to the hearing (the "Sale Hearing")
held by the Court to approve the Debtors' sale of substantially all of their assets (the "Sale
Transaction") to Transform HoldCo, LLC (the "Buyer"), which the Creditors' Committee
opposed.  In furtherance of the interests of the Creditors' Committee and its constituency, Akin
Gump professionals and paraprofessionals devoted significant time and resources preparing for
and prosecuting the Creditors' Committee's objections to the Sale Transaction.  During the
course of the three-day Sale Hearing, Akin Gump cross-examined the Debtors' seven witnesses
and the Buyer's one witness, conducted re-directs of the Creditors' Committee's three witnesses
and presented oral argument.  In addition, prior to and during the course of the Sale Hearing,
Akin Gump, among other things: (i) engaged in extensive discussions of strategy with the
Creditors' Committee's other advisors; (ii) engaged in discovery with the Debtors and the Buyer;
(iii) drafted outlines and prepared for the cross-examination of the Debtors' and Buyer's
witnesses and redirects of the Creditors' Committee's witness; (iv) compiled all materials needed
for use during the Sale Hearing, including voluminous witness exhibit binders; and (v) prepared
a summary presentation for closing arguments.

## G.     DIP, Cash Collateral Usage and Exit Financing (Task Code 10)

| Total Hours | Fees |
| --- | --- |
| 59.00 | $56,766.00 |

35.     This category includes time spent by Akin Gump professionals and
paraprofessionals in connection with the Debtors' request for approval of postpetition financing
and use of cash collateral.  Specifically, on the Petition Date, the Debtors filed the *Debtors'*
*Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant*
*Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing*
*and Final Hearing* [ECF No. 7] (the "DIP Motion").  Pursuant to the DIP Motion, the Debtors

sought approval of a $1.83 billion senior secured superpriority priming financing facility (the "DIP ABL Facility"), comprising approximately $300 million of incremental new financing and a roll up of $1.53 billion of claims under the Debtors' prepetition asset-based credit facility, with certain of the prepetition lenders thereunder (such lenders, the "Prepetition First Lien Lenders") providing the DIP ABL Facility. By the DIP Motion, the Debtors also sought to schedule a hearing for approval an anticipated junior term loan facility (the "Junior DIP Facility").

36.     The Creditors' Committee believed that certain aspects of the DIP ABL Facility could unfairly prejudice unsecured creditors and limit the Debtors' flexibility in the Chapter 11 Cases. Specifically, the DIP ABL Facility contemplated, among other things: (i) a roll-up $1.53 billion of prepetition claims and provide the Prepetition First Lien Lenders who participated in the DIP ABL Facility (the "DIP ABL Lenders") with superpriority administrative expense claims against each Debtor entity, including non-obligor entities under the Prepetition ABL Facilities; (ii) the granting of liens to the DIP ABL Lenders on many of the Debtors' unencumbered assets; (iii) adequate protection liens and claims for diminution in value in favor of certain other prepetition secured lenders, at every Debtor entity and on previously unencumbered assets; and (iv) the establishment of certain sale-related milestones. Immediately after being selected as counsel to the Creditors' Committee, Akin Gump attorneys engaged in a thorough analysis of the terms of the DIP ABL Facility and related credit agreements and began negotiating with the advisors to the Debtors and DIP ABL Lenders on potential improvements to the terms thereof. Akin Gump also began drafting an objection, and preparing for a contested hearing, in the event such negotiations proved to be unsuccessful. In addition, members of Akin Gump's litigation team prepared discovery requests, reviewed voluminous document productions and took depositions of several parties in interest in connection with the hearing on the DIP Motion. In

connection with the potential contested hearing, the Debtors and the Creditors' Committee

prepared and filed a *Statement of Stipulated Facts in Connection with the Debtors' DIP

Financing Motion and Cash Management Motion* [ECF No. 887].

37.     On November 14, 2018, the Creditors' Committee filed the *Omnibus Objection of

the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to the

Debtors' DIP Financing Motion and Cash Management Motion* [ECF No. 740] (the "DIP

Objection"), pursuant to which the Creditors' Committee set forth its opposition to, among other

things: (i) the roll up of $1.5 billion under the Prepetition ABL Facilities; (ii) the granting of

superpriority claims and liens in favor of the DIP ABL Lenders at entities that were not obligors

under the prepetition facilities and on previously unencumbered assets; (iii) the granting of

adequate protection liens and claims to the prepetition secured parties; and (v) the waiver of the

Debtors' rights to surcharge collateral.

38.     On November 25, 2018, the Debtors filed a motion seeking approval of a $350

Junior DIP Facility to be provided by a consortium of lenders led by Great American.  In

exchange for providing junior postpetition financing, the lenders under the Junior DIP Facility

would receive, among other things: (i) junior liens on collateral securing the DIP ABL Facility;

(ii) *pari passu* senior liens on certain unencumbered collateral; and (iii) junior liens on certain

other unencumbered collateral.  In response, and in further support of the DIP Objection, on

November 26, 2018, the Creditors' Committee filed the *Supplemental Objection of the Official

Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to the Debtors' DIP

Financing Motion and Cash Management Motion and Objection to the Debtors' Supplemental

Motion for Authority to (I) Obtain Junior Postpetition Financing, and (II) Schedule Final

Hearing* [ECF No. 884] (the "Supplemental DIP Objection"), in which the Creditors' Committee

objected to the proposed Junior DIP Facility on grounds that, among other things, it suffered many of the same deficiencies the Creditors' Committee identified with the DIP ABL Facility. Following the filing of the DIP Objection and the Supplemental DIP Objection, Akin Gump, on behalf of the Creditors' Committee, continued efforts to reach a resolution of the articulated objections.

39.     Immediately prior to the hearing on the DIP Motion and the Junior DIP Motion, the Creditors' Committee, the Debtors and the DIP ABL Lenders reached a consensual resolution of the Creditors' Committee's outstanding objections, including that the adequate protection in favor of the prepetition second lien parties would only be against parties that were obligors under the prepetition credit facility, rather than all Debtor entities.  In addition, as announced at the November 27, 2018 hearing, the Debtors were contacted by Cyrus Capital Partners, L.P. ("Cyrus") regarding Cyrus's willingness to provide the Junior DIP Facility.  The Debtors and Cyrus, in consultation with the Creditors' Committee and its professionals, agreed that Cyrus would step into the shoes of Great American and provide the Junior DIP Facility on terms that, while substantially similar to those proposed by Great American, provided more favorable economics.  The Court ultimately entered orders approving the DIP Motion on November 30, 2018 and the Junior DIP Motion on December 28, 2018.

H.    **Executory Contract/Lease Issues (Task Code 11)**

| Total Hours | Fees |
|---|---|
| 53.20 | $36,046.50 |

40.     This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing issues related to the Debtors' executory contracts and unexpired leases.  Among other things, Akin Gump analyzed the *Motion of Debtors for Entry of an Order Establishing Procedures for Rejection of Unexpired Leases of Nonresidential Real*

*Property and Abandonment of Property in Connection Therewith* [ECF No. 24] (the "Lease Rejection Procedures Motion") and the *Omnibus Motion of Debtors to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* [ECF No. 25] (the "Omnibus Lease Rejection Motion").  Akin Gump conferred with the Debtors' advisors regarding a revised form of order granting the Lease Rejection Procedures Motion, which the Court approved on November 15, 2018 [ECF No. 800]. Akin Gump also: (i) worked with FTI and Houlihan and the Debtors' advisors to determine whether the Debtors' decisions as to which contracts or leases to assume and reject were well-founded; (ii) reviewed the underlying agreements to assess potential rejection damages claims; (iii) analyzed the effect of the proposed rejections on unsecured creditors at the applicable debtor entities; and (iv) conducted research related thereto.

41.    As its analysis of the leases subject to the Omnibus Lease Rejection Motion continued, the Creditors' Committee prepared and filed the *Reservation of Rights of the Official Committee of Unsecured Creditors in Connection with Omnibus Motion of Debtors to Reject Certain Unexpired Leases and Related Subleases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* [ECF No. 662] (the "Reservation of Rights"), in the event the Creditors' Committee ultimately disagreed with the Debtors' decision to reject such leases.  Ultimately, the Creditors' Committee's concerns were resolved.

42.    In addition, in connection with the Sale Transaction and the Debtors' wind-down efforts, the Debtors filed various notices listing executory contracts and unexpired leases for assumption or rejection.  *See, e.g.*, *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1731].  For each such notice filed, Akin Gump reviewed and analyzed the

proposed assumptions or rejections, conferred with the Creditors' Committee's other advisors and, if necessary, discussed with the Debtors' advisors to the extent of any issues or questions with the foregoing.

I.    **General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
|:---:|:---:|
| 251.70 | $207,360.00 |

43.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing claims and potential claims against the Debtors' estates as well as working with the Debtors' professionals to establish procedures in connection therewith.  Specifically, during the Compensation Period, Akin Gump, in conjunction with FTI and Houlihan, worked with the Debtors' advisors to understand the projected size of the unsecured claims pool and the Debtor entities liable for such claims.  Akin Gump, among other things: (i) performed legal analyses with respect to the bases for certain claims; (ii) provided the Creditors' Committee with periodic updates regarding claims pool estimates; (iii) reviewed proposed procedures related to the reconciliation of claims against the Debtors' estates; and (iv) commented on and negotiated modifications to certain of the Debtors' proposed claims procedures to ensure that the Creditors' Committee had appropriate oversight of the process.

J.    **Analysis of Pre-Petition Transactions (Task Code 13)**

| Total Hours | Fees |
|:---:|:---:|
| 7,948.60 | $6,032,612.00 |

44.    This category includes time spent by Akin Gump professionals and paraprofessionals, in conjunction with the Creditors' Committee's other advisors as well as the advisors to the Restructuring Subcommittee, conducting a comprehensive investigation (the "Investigation") into the series of prepetition transactions that preceded the commencement of the Chapter 11 Cases and potential claims arising therefrom, which likely will provide a valuable

source of recovery for creditors. In furtherance of the Investigation, Akin Gump attorneys drafted and filed on November 6, 2018 a motion pursuant to Bankruptcy Rule 2004 seeking the relief necessary to engage efficiently and expeditiously in discovery efforts. *See Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation et al. for the Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004, 9006, and 9016 Authorizing Expedited Discovery of the Debtors and Third Parties* [ECF No. 484] (the "Rule 2004 Motion"). In connection therewith, Akin Gump also prepared and filed *Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., for Entry of an Order Pursuant to Federal Rule of Evidence 502(d)* [ECF No. 485] (the "502(d) Motion"). The Court approved the Rule 2004 Motion and the 502(d) Motion by orders dated November 16, 2018 and November 20, 2018, respectively.

45.    During the Compensation Period, the Investigation comprised, among other things, the following efforts: (i) preparing and serving substantial discovery requests on parties in interest; (ii) reviewing and analyzing the voluminous discovery produced in the Chapter 11 Cases in connection with the Debtors' prepetition transactions; (iii) conducting extensive legal research and analysis in connection with potential claims or causes of action for the benefit of the Debtors' estates and creditors; (iv) preparing for and participating in interviews of persons with information related to the Investigation; and (v) preparing and filing the *Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., for Entry of an Order Granting Leave, Standing, and Authority to Commence and Prosecute Certain Claims on Behalf of the Debtors' Estates and (II) Non-Exclusive Settlement Authority in Respect of Such Claims* [ECF No. 1765] (the "Standing Motion"), including the proposed complaint attached thereto (the "Proposed Complaint"). The Standing Motion and the Proposed Complaint set forth numerous

causes of action the Debtors' estates possess against ESL Investments, Inc. (together with its

affiliates, "ESL"), Edward S. Lampert and Kunal Kamlani, including, among others: (i) recovery

of the value of the properties transferred in the Seritage Transaction (as defined in the Standing

Motion) and the spin-off of Lands' End, Inc. pursuant to Bankruptcy Code sections 544 and 550

and applicable state law; (ii) avoidance of the Lands' End, Inc. spin-off as an actual and

constructive fraudulent transfer pursuant to Bankruptcy Code section 544 and applicable state

law; and (iii) avoidance of certain financing facilities as actual fraudulent transfers pursuant to

Bankruptcy Code sections 544 and 548 and applicable state law.

46.    Conducting the legal analysis and factual investigation upon which the Standing

Motion and Proposed Complaint were predicated required significant effort on the part of Akin

Gump professionals and paraprofessionals. Specifically, Akin Gump attorneys researched and

analyzed voluminous case law and prepared detailed memoranda and presentations to the

Creditors' Committee to summarize the results of the ongoing Investigation in order to keep the

Creditors' Committee apprised of all findings and developments. Akin Gump attorneys also

conducted significant fact discovery, including participating in numerous interviews, in

connection with the Investigation.

47.    In coordination with the counsel to the Restructuring Subcommittee, Akin Gump

attorneys prepared for and participated in the interviews of the following witnesses in connection

with the Investigation: (i) Edward S. Lampert; (ii) Kunal Kamlani; (iii) Naren Sinha; (iv) Rob

Riecker; (v) Ann Reese; (vi) Scott Charles; (vii) Jeff Schiedemeyer; (viii) Marc Puntus; (ix)

Richard Latella; (x) Rob Schriesheim; and (xi) Jeffrey Stollenwerck. To prepare for each

interview, Akin Gump professionals and paraprofessionals reviewed hundreds of public and

nonpublic documents to distill the complex factual background underlying the prepetition

transactions, prepared compilations of key documents to be presented to each interviewee and drafted outlines to facilitate effective questioning. Following each interview, Akin Gump attorneys reviewed the witness's testimony and devoted numerous hours to incorporating the testimony into legal memoranda, the Standing Motion and the Proposed Complaint.

48.     The Creditors' Committee also engaged in significant document discovery. Specifically, the Creditors' Committee served document requests on the following entities: (i) the Debtors; (ii) ESL; (iii) Seritage Growth Properties; (iv) Fairholme Capital Management, LLC; (v) Duff & Phelps, LLC; (vi) Deloitte Touche Tohmatsu Limited; (vii) Cushman & Wakefield; (viii) Centerview Partners LLC; and (ix) Wachtell, Lipton, Rosen & Katz. The Creditors' Committee began receiving documents on a rolling basis in mid-November 2018 and has continued to receive new document productions following the closing of the Compensation Period. To date, the Creditors' Committee has received over 240,000 documents comprising over 4.8 million pages. Given the expedited timeframe under which it was operating, Akin Gump used document analytics and tailored searches to review efficiently the documents it received.

49.     This category also includes time that Akin Gump attorneys spent preparing and filing the *Limited Objection of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to ESL Investments, Inc.'s Motion Seeking Expedited Discovery* [ECF No. 875] (the "Rule 2004 Objection") in response to the *Motion of ESL Investments, Inc. for Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004, 9006 and 9016 Authorizing Expedited Discovery of the UCC and the Subcommittee* [ECF No. 854]. By the Rule 2004 Objection, the Creditors' Committee explained that ESL, as a party to each of the transactions subject to the Investigation, had prior access to the documents and

information relevant to the ongoing Investigation.  As such, it was inappropriate to divert the

Creditors' Committee's time and resources toward responding to ESL's discovery requests.  The

Rule 2004 Objection served as a basis for negotiations with ESL and led to an agreement

between the parties that ESL would seek authority to conduct expedited discovery on the

Restructuring Subcommittee, but not on the Creditors' Committee.  This allowed Akin Gump

and the Creditors' Committee's other advisors to focus their efforts on investigating the Debtors'

prepetition transactions within the available timeframe.

**K.       Secured Creditor Issues/Communications/Meetings (Task Code 15)**

| Total Hours | Fees |
|:---:|:---:|
| 807.20 | $589,638.50 |

50.       This category includes time spent by Akin Gump professionals and

paraprofessionals conducting a comprehensive review and analysis of the Debtors' secured debt

facilities.  As of the Petition Date, the Debtors and their non-Debtor affiliates had funded debt

obligations totaling approximately $5.6 billion, approximately $4 billion of which were secured

facilities.  During the Compensation Period, Akin Gump attorneys reviewed each of the secured

debt documents (including related collateral security documents) to determine the extent and

validity of certain prepetition liens and reviewed the results of lien searches to determine the

extent to which security interests were perfected properly.  Given the nature of the collateral

packages, this lien review required the expertise of professionals from multiple practice groups.

At the conclusion of the review of the Debtors' secured debt facilities, Akin Gump attorneys

prepared extensive summaries and memoranda detailing the results of their findings, an analysis

of the various facilities and any issues arising therefrom.

L.    **Automatic Stay Issues (Task Code 16)**

| Total Hours | Fees |
|---|---|
| 100.40 | $69,296.50 |

51.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing each of the motions for relief from the automatic stay under Bankruptcy Code section 362 filed in the Chapter 11 Cases (collectively, the "Lift Stay Motions").  In connection therewith, Akin Gump attorneys analyzed the relief requested in each motion, reviewed all pleadings and underlying documentation and held conference calls with the Debtors' professionals to ascertain and understand the Debtors' position on each of the Lift Stay Motions.  In addition, Akin Gump attorneys prepared detailed summaries for the Creditors' Committee with respect to the Lift Stay Motions.

M.    **Tax Issues (Task Code 18)**

| Total Hours | Fees |
|---|---|
| 257.00 | $247,687.50 |

52.    This category includes time spent by Akin Gump attorneys reviewing and analyzing tax issues affecting unsecured creditors in connection with (i) various sale transactions effectuated or contemplated during the Compensation Period and, in particular, the Sale Transaction, and (ii) chapter 11 plan-related efforts, including post-effective date structuring to manage potential tax liabilities.  These efforts required in-depth analysis and diligence of the terms of the sale transactions, a review and analysis of the tax provisions in the relevant agreements, an identification and review of various tax issues contained therein as well as an analysis of the tax models prepared by the Debtors' tax advisors.  In addition, Akin Gump and the Creditors' Committee's other advisors engaged in frequent communications, including regular working-group calls, with the Debtors' tax advisors related to structuring the post-

emergence entity or entities responsible for future distributions of any recoveries due to unsecured creditors.

**N.      Labor Issues/Employee Benefits (Task Code 19)**

| Total Hours | Fees |
|:---:|:---:|
| 369.60 | $318,612.50 |

53.      This category includes time spent by Akin Gump professionals and paraprofessionals reviewing, analyzing and negotiating the Debtors' proposed incentive plans for certain insider and non-insider employees and severance payable to the Debtors' employees. During the Compensation Period, the Creditors' Committee negotiated with the Debtors regarding the Debtors' key employee incentive plan (the "KEIP"), which includes 18 of the Debtors' senior executives, and key employee retention plan (the "KERP," and together with the KEIP, the "Incentive Plans"), which includes approximately 314 non-insider employees.

54.      On October 29, 2019, Akin Gump received from the Debtors' advisors a proposal for the Incentive Plans and certain modifications to the Debtors' existing severance programs. Akin Gump attorneys, along with FTI, analyzed the proposal and engaged with the Debtors' advisors through numerous phone calls and email correspondence regarding such proposals. Akin Gump also worked with FTI to prepare presentations to the Creditors' Committee regarding the Debtors' proposed Incentive Plans and severance programs. On November 15, 2018, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Debtors' Incentive and Retention Programs for Certain Key Employees and (II) Granting Related Relief* [ECF No. 766] (the "KEIP/KERP Motion"), which set forth the Debtors' proposed terms of the Incentive Plans. In connection with its review of the KEIP/KERP Motion, Akin Gump attorneys analyzed the Debtors' proposals as set forth in the KEIP/KERP Motion, reviewed drafts of plan documents and forms of participation letters with respect to each of the KEIP and the KERP (the

"Incentive Plan Documentation") and conducted legal due diligence with respect to the Debtors'

pre-petition incentive compensation and severance arrangements.

55.     On December 7, 2018, the U.S. Trustee filed the *Objection of the United States*

*Trustee to Motion of Debtors for Entry of an Order (I) Approving Debtors' Incentive and*

*Retention Program for Certain Key Employees and (II) Granting Related Relief* [ECF No. 1082]

(the "UST KEIP/KERP Objection").  In response to the UST KEIP/KERP Objection, the

Debtors prepared, and on December 11, 2018 provided to Akin Gump, a draft of the Debtors'

proposed reply and a draft order approving the KEIP/KERP Motion.  Akin Gump attorneys

reviewed and provided comments to the Debtors' advisors regarding such documents.  From

December 14, 2018 to December 27, 2018, Akin Gump, along with FTI, devoted a substantial

amount of time to reviewing and negotiating the terms of the Debtors' Incentive Plan

Documentation and order approving the KEIP/KERP Motion, which the Court entered on

December 28, 2018.  Following entry of the order, Akin Gump continued to review and

comment on the Incentive Plan Documentation.  On January 4, 2019, the Debtors, in conjunction

with Akin Gump and FTI, finalized the Incentive Plan Documentation.

56.     As a result of the Creditors' Committee's input, the Incentive Plan Documentation

contained certain modifications to the KEIP/KERP Motion as negotiated by the Creditors'

Committee, including with regard to, among other things:  (i) notice and objection procedures

with respect to any proposed amendment to the debtor in possession financing budget; (ii) notice

rights for the Creditors' Committee and others with respect to the Debtors' intent to pay any

KEIP award on account of certain acceleration events; (iii) the proposed payouts for each KEIP

participant in advance of any acceleration payment; (iii) performance with respect to the cash

flow targets for the performance periods; (iv) the Debtors' authority to add additional

participants; (v) the effect of administrative insolvency or defaults under the Debtors'

postpetition financing facilities on the Debtors' authority to make payments; (vi) the timing of

payments; and (vii) the effect of an acquisition, sale or exchange of all or substantially all of the

Debtors' assets on KEIP or KERP awards.

**O.    Exclusivity (Task Code 21)**

| Total Hours | Fees |
|:---:|:---:|
| 65.00 | $52,929.50 |

57.    This category includes time spent by Akin Gump professionals and

paraprofessionals on all matters relating to the Debtors' exclusive period to propose a plan under

the Bankruptcy Code.  On January 31, 2019, the Debtors filed the *Motion of Debtors Pursuant to*

*Section 1121(d) of the Bankruptcy Code to Extend Exclusive Periods* [ECF No. 2312] (the

"Exclusivity Motion").  At the direction of the Creditors' Committee, during the Compensation

Period, Akin Gump attorneys prepared the *Limited Objection of the Official Committee of*

*Unsecured Creditors to Motion of Debtors Pursuant to 1121(d) of the Bankruptcy Code to*

*Extend Exclusive Periods* [ECF No. 2544] (the "Exclusivity Objection"), which the Creditors'

Committee filed on February 11, 2019.  The Exclusivity Objection set forth the Creditors'

Committee view that, in light of the changed circumstances resulting from the Sale Transaction,

the Court should approve an extension of the exclusive periods of no more than 30 days in order

for the Debtors and Creditors' Committee to work together to reach consensus on the terms of a

liquidating chapter 11 plan.

58.    In connection with the Exclusivity Motion, preparing the Exclusivity Objection

and advocating on behalf of the Creditors' Committee, Akin Gump attorneys spent time

addressing numerous issues and performing various tasks including, but not limited to:  (i)

reviewing and analyzing the Exclusivity Motion; (ii) performing legal research with respect to

the request for continued exclusivity; (iii) corresponding with the Debtors and their advisors; (iv)

drafting and filing the Exclusivity Objection; and (v) negotiating modifications to the Exclusivity

Motion with the Debtors.  Prior to the hearing on the Exclusivity Motion, the Debtors and

Creditors' Committee were able to reach a consensual resolution that the extension of the

exclusive periods would be limited to 60 days.

**P.    Disclosure Statement/Solicitation/Plan Confirmation (Task Code 22)**

| Total Hours | Fees |
|:-----------:|:----:|
| 173.50 | $173,151.00 |

59.    This category includes time spent by Akin Gump professionals and

paraprofessionals analyzing issues in connection with the formulation of a liquidating chapter 11

plan.  Specifically, during the Compensation Period, Akin Gump, with the assistance of the

Creditors' Committee's other advisors: (i) engaged in numerous meetings and communications

with the Debtors and their advisors over the terms of a potential liquidating chapter 11 plan; (ii)

researched potential issues associated with a liquidating chapter 11 plan; (iii) analyzed the

potential recoveries available to the estates' remaining creditors; and (iv) drafted a term sheet

outlining a proposed plan under terms that would implement the terms of the Sale Order,

establish a liquidating trust for the purposes of maximizing and distributing the assets of the

estates, ensure the equitable treatment of the Debtors' creditors and otherwise be acceptable to

the Creditors' Committee.  Discussions with the Debtors regarding the terms of a potential

liquidating chapter 11 plan and the viability of any such plan remain ongoing.

**Q.    Asset Dispositions/363 Asset Sales (Task Code 23)**

| Total Hours | Fees |
|:-----------:|:----:|
| 7,235.40 | $6,475,641.00 |

60.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with the Debtors' numerous asset dispositions, including, most

significantly, the Sale Transaction and the events leading up to its consummation.  As stated by

the Debtors at the outset of the Chapter 11 Cases, pursuing a going concern sale was their

primary objective and, shortly after the Petition Date, the Debtors filed the *Debtors' Motion for*

*Approval of Global Bidding Procedures* [ECF No. 429] (the "Global Bidding Procedures

Motion"), which set forth procedures (the "Global Bidding Procedures") for conducting the

Debtors' contemplated sale process.  In light of this stated objective for the Chapter 11 Cases, the

Creditors' Committee and its advisors dedicated a significant amount of time and effort to

understanding and evaluating the Debtors' aims through independent legal and financial analysis

as well as frequent communications and meetings with the Debtors and their advisors.  The

Creditors' Committee's primary concerns with respect to the Global Bidding Procedures were:

(i) issues related to the purchase of substantially all of the Debtors' assets through an insider

credit bid; (ii) the feasibility of a going concern sale of substantially all of the Debtors' assets

and the likelihood of administrative insolvency resulting therefrom; (iii) the cost of pursuing

such a process; and (iv) the realizable value to unsecured creditors from a going concern sale as

compared to various alternatives, such as a near term, orderly liquidation process.  As such, Akin

Gump, along with the Creditors' Committee's other advisors, was closely involved in each step

in the Debtors' sale processes, including:  (w) the negotiation and implementation of bidding

procedures, including the Global Bidding Procedures; (x) the marketing of the Debtors' assets to

third parties and communications with such third parties; (y) the selection of purchasers for such

assets, including the Buyer; and (z) the approval of such transactions, including the Sale

Transaction following the course of a third-day evidentiary trial.

61.    Specifically, on behalf of the Creditors' Committee, Akin Gump reviewed,

analyzed and negotiated with the Debtors' advisors specific provisions of the Global Bidding

Procedures. Concurrently, Akin Gump prepared and filed, on November 9, 2018, the

*Preliminary Objection of the Official Committee of Unsecured Creditors of Sears Holdings*

*Corporation, et al., to Debtors' Motion for Approval of Global Bidding Procedures* [ECF No.

640], and, subsequently on November 14, 2018, the *Supplemental Objection of the Official*

*Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to Debtors' Motion for*

*Approval of Global Bidding Procedures* [ECF No. 729] (together, the "Global Bidding

Procedures Objections"). By the Global Bidding Procedures Objections, the Creditors'

Committee set forth certain concerns with respect to the Global Bidding Procedures, including

that, among other things, the Global Bidding Procedures: (i) emphasized a going concern sale

process that might not be value maximizing as compared to alternatives (such as an orderly

liquidation of the Debtors' various business lines and real estate assets); (ii) required the Debtors

to incur additional postpetition financing—and thus encumber valuable unencumbered assets—

in order to consummate any such going concern transaction; and (iii) contained various vague or

uncertain provisions, which, coupled with the condensed timeframe for such sales, would appear

to advantage insiders, such as ESL, while potentially chilling bidding from third parties.

62.    On November 15, 2018, the Court held a hearing to consider the Global Bidding

Procedures. Based on the Court's comments during the hearing and several of the concerns

raised by the Creditors' Committee in the Global Bidding Procedures Objection, the order

approving the Global Bidding Procedures was modified to include various procedural

protections, including: (i) the requirement that the Debtors consult with certain parties in interest,

including the Creditors' Committee, throughout the sales process; (ii) assurance from the

Debtors that any extensions to the bidding deadline be made upon approval of the Court or

consent of certain parties in interest, including the Creditors' Committee; (iii) the inclusion of

language in the Global Bidding Procedures clarifying that the Debtors would consider bids on all

or any portion of the Debtors' assets; and (iv) commitments by the Debtors that they would

provide detailed information to the Creditors' Committee regarding the status of their alternative

orderly liquidation process.

63.      Following the Court's approval of the Global Bidding Procedures, the Debtors

began soliciting bids for their various assets and businesses.  In connection with the sale process,

Akin Gump, together with the Creditors' Committee's other advisors, reviewed and analyzed

each of the bids and indications of interest received, including the various iterations of the

Buyer's bid for substantially all of the Debtors' assets (as amended, the "ESL Bid").  As part of

this review, Akin Gump attorneys evaluated the ESL Bid against competing bids for the Debtors'

other assets and segments of the Debtors' businesses and other alternatives.  Akin Gump

attorneys, along with the Creditors' Committee's other advisors, also attended numerous in-

person meetings with the Debtors' advisors, the Buyer and its advisors in order to evaluate,

understand and analyze the various permutations of the ESL Bid and the potential impact that the

ESL Bid would have on the Debtors' estates and creditors.  Further, Akin Gump attorneys

analyzed the numerous iterations of the asset purchase agreement between the Debtors and the

Buyer (as amended, the "APA"), as well as the various ancillary documents, such as the

disclosure schedules thereto and the transition services agreement.  In connection therewith,

Akin Gump attorneys provided in-depth summaries and issues lists with respect to the APA and

the terms of the ESL Bid to the Creditors' Committee.

64.      Following the bid deadline on December 28, 2018, Akin Gump and the Creditors'

Committee's other advisors engaged in a dialogue with the Debtors and their advisors regarding

the ESL Bid and the impact such Bid would have on the Debtors' estates, any potential chapter

11 plan, claims against ESL and administrative solvency or insolvency. While the Debtors

initially had determined that the ESL Bid would not be a "Qualified Bid" (as defined in the

Global Bidding Procedures), on January 8, 2019, the Buyer agreed to fund the costs of the estates

through an auction to be held on January 14, 2019 as the Buyer worked to improve the ESL Bid.

The auction, which Akin Gump and the Creditors' Committee's other advisors participated in

(and provided frequent updates to the Creditors' Committee with respect thereto), began on

January 14, 2019 and continued through January 16, 2019. At the conclusion of the auction, the

Debtors designated Buyer as the successful bidder and, on January 17, 2019, executed the APA,

subject to Court approval. While the Debtors negotiated with the Buyer certain concessions with

regard to the terms of the ESL Bid, the Creditors' Committee believed that the ESL Bid

remained materially deficient and, if approved, would harm the Debtors' estates or the interests

of unsecured creditors.

65.     Accordingly, at the direction of the Creditors' Committee, Akin Gump, along

with the Creditors' Committee's other advisors, focused substantial efforts on researching and

drafting the *Objection of the Official Committee of Unsecured Creditors to Sale of Substantially

All of the Debtors' Assets to ESL Investments, Inc.* [ECF No. 2309] (the "Sale Objection"),

which was filed on January 26, 2019. By the Sale Objection, the Creditors' Committee voiced

its concerns regarding the deficiencies of the APA and the contemplated Sale Transaction.

Specifically, the Sale Objection articulated the Creditors' Committee's concerns with respect to,

among other things, the substantial risk placed on the Debtors' estates and unsecured creditors

by: (i) the lack of certainty over administrative solvency; (ii) the aggressive and seemingly

unrealistic business plan on which the ESL Bid was premised; and (iii) the potential release of

colorable and valuable causes of action that the Creditors' Committee had sought to pursue

pursuant to the Standing Motion.

66.    Moreover, based on the results of the Investigation, the Creditors' Committee

believed that the over $2 billion in secured claims that ESL was proposing to credit bid were

subject to dispute, and, as such, could not be credit bid under Bankruptcy Code section 363(k).

Accordingly, in connection with the Sale Objection, Akin Gump also researched and drafted the

*Preliminary Omnibus Objection of the Official Committee of Unsecured Creditors of Sears*

*Holdings Corporation, et al., to the ESL Proofs of Claim* [ECF No. 2025] (the "ESL Claim

Objection"), which objected to the claims ESL sought to credit bid.

67.    Following the filing of the Sale Objection and ESL Claim Objection, Akin Gump

professionals and paraprofessionals shifted their focus to preparing for the Sale Hearing.  In

connection with such preparation, Akin Gump professionals and paraprofessionals: (i) prepared

and served various discovery requests on the parties in interest; (ii) reviewed all documents

produced by the Debtors and other parties in interest in a compressed amount of time; (iii)

worked closely with the Creditors' Committee's other advisors to prepare and draft the

declarations of the Creditors' Committee's four witnesses; and (iv) prepared, defended and took

the depositions of 12 witnesses.  As set forth in more detail above, the three-day, evidentiary

Sale Hearing took place on February 4, 2019, February 6, 2019 and February 7, 2019, at the

conclusion of which the Court approved the Sale Transaction.

68.    Concurrently with its efforts on the Sale Transaction, Akin Gump also reviewed,

analyzed and coordinated with the Debtors and their advisors with respect to the other asset sales

that occurred during the Compensation Period, including (i) the sale of the Sears Home

Improvement Business to Service.com (the "SHIP Sale") and (ii) the sale of certain assets to

Amerco Real Estate Company (the "U-Haul Sale").  Specifically, Akin Gump, along with the

Creditors' Committee's other advisors, conducted a thorough analysis of the asset purchase

agreements for such sales, the sale orders approving such transactions and ancillary documents

related thereto.  With respect to each of the SHIP Sale, the U-Haul Sale and as well as *de*

*minimis* asset sales that occurred, Akin Gump worked closely with the Creditors' Committee's

other advisors as well as the Debtors and their advisors to ensure that the proposed transactions

were in the best interests of the estates.  Akin Gump attorneys also prepared summaries of

material asset transactions for the Creditors' Committee and kept the Creditors' Committee

apprised of any relevant updates with respect to such sales.

69.    During the Compensation Period, Akin Gump also reviewed and analyzed various

pleadings and related materials in connection with the Debtors' sale of intercompany medium-

term notes (the "MTNs").  On November 9, 2018, the Debtors filed an emergency motion (the

"MTN Sale Motion") seeking authority to sell the MTNs in order to take advantage of time-

sensitive market conditions that increased the value of the MTNs [ECF No. 642].  The Debtors

received multiple bids for the MTNs, and, in consultation with the Creditors' Committee,

determined that Cyrus had provided the highest and best offer.  Accordingly, the Debtors

negotiated a note purchase agreement for the sale of the MTNs to Cyrus (the "MTN Sale"),

pursuant to which the Debtors agreed to sell $251 million of the MTNs to Cyrus and "lock-up"

all remaining MTNs.  On November 19, 2018, the Court entered an order approving the MTN

Sale.  Thereafter, Omega Advisors Inc. ("Omega") filed a motion to invalidate the MTN Sale,

alleging that: (i) the Debtors failed to provide adequate notice of the MTNs that would actually

be subject to the sale when they stated that the sale would be limited to $251 million of MTNs;

and (ii) Cyrus acted in bad faith and chilled the bidding process for the MTNs by challenging the

deliverability of the MTNs into a credit default swap auction.  In addition, Och-Ziff Capital

Structure Arbitrage Master Fund, Ltd. ("Och-Ziff") filed the *Reply of Och-Ziff Capital Structure*

*Arbitrage Master Fund, Ltd. In Further Support of the Motion of Omega Advisors Inc. and*

*Joinder of Och-Ziff Capital Structure Arbitrage Master Fund, Ltd. To Invalidate the Ultra Vires*

*Sale and Lockup of Medium-Term Intercompany Notes* [ECF No. 1294].

70.    The Debtors subsequently filed an objection to Omega's motion in which the

Debtors denied the allegations made by Omega and stated that the MTN Sale represented the

highest and best value available to the Debtors.  *Debtors' Objection to Motion of Omega*

*Advisors Inc. Regarding Sal of Medium-Term Intercompany Notes* [ECF No. 1196].  Akin Gump

and the Creditors' Committee's other advisors analyzed the arguments put forth by Omega and

the Debtors and, at the direction of the Creditors' Committee, determined to file a joinder to the

Debtors' objection.  Accordingly, Akin Gump prepared and filed the *Joinder of the Official*

*Committee of Unsecured Creditors to Debtors' Objection to Motion of Omega Advisors Inc.*

*Regarding Sale of Medium Term Intercompany Notes* [ECF No. 1214] (the "MTN Joinder").  By

the MTN Joinder, the Creditors' Committee argued that the Court should uphold the MTN Sale

because it was the most value maximizing option available to the Debtors at the time of the

auction.

71.    On December 20, 2018, the Court held a hearing to consider Omega's motion to

invalidate the MTN Sale.  The Court denied the motion, but nonetheless granted parties the

opportunity to submit bids for the remaining MTNs.  To the surprise of the Creditors'

Committee, neither Omega nor Och-Ziff submitted any such bid (despite their expressed interest

in advance of the hearing), and it was later revealed that, following the December 20 hearing,

Cyrus, Omega, Och-Ziff and others had engaged in transactions to minimize or eliminate their

CDS exposure.  As these transactions may have prevented the Debtors' estates from realizing

value on their MTNs, Akin Gump, on behalf of the Creditors' Committee, filed a reservation of

rights to state that the Creditors' Committee intended to investigate all transactions with respect

to the MTNs for any impropriety.  *Reservation of Rights of the Official Committee of Unsecured*

*Creditors Regarding Approval of Sale of Medium Term Intercompany Notes to Cyrus Capital*

*Partners, L.P.* [ECF No. 1459].[10]

R.    **Real Estate Issues (Task Code 24)**

| Total Hours | Fees |
|---|---|
| 1,385.20 | $1,052,462.00 |

72.    This category includes time spent by Akin Gump professionals and

paraprofessionals analyzing issues related to the Debtors' substantial real estate portfolio,

including, among other things: (i) reviewing and analyzing title reports, mortgages, zoning

reports, deeds of trust and associated documents relating to approximately 213 properties

encumbered by the Debtors' three real estate-secured credit facilities; (ii) preparing documents

and summaries of real estate findings in connection with various pleadings that were filed during

the Compensation Period, both in connection with the Investigation and the Sale Transaction;

(iii) analyzing legal issues regarding the master lease agreement with Seritage; and (iv)

reviewing the proposed sale and transfer of various fee and leasehold interests and the relevant

transactional agreements to accomplish such dispositions for assets that were not included in the

---

[10] The Creditors' Committee has retained Herrick, Feinstein LLP ("Herrick") as conflicts counsel to pursue an investigation of the transactions in which CDS participants engaged.  *Application of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. to Retain and Employ Herrick, Feinstein LLP as Special Conflicts Counsel, Effective Nunc Pro Tunc to January 2, 2019* [ECF No. 2574].  On January 12, 2019, the Creditors' Committee filed a motion pursuant to Bankruptcy Rule 2004 with respect to the investigation into the CDS transactions.  *Ex-Parte Motion of the Official Committee of Unsecured Creditors for the Entry of an Order Pursuant to Bankruptcy Code Sections 105 and 1103 and Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing the Examination of the CDS Participants* [ECF No. 1557], which the Court approved on February 15, 2019 [ECF No. 2628].

Sale Transaction, including assets of *de minimis* value and assets subject to liquidation and going-out-of-business sales.

73.     In connection with its review of the Debtors' real estate-secured credit facilities, Akin Gump real estate attorneys: (i) investigated and confirmed the title and ownership status of encumbered properties to verify information provided by the Debtors as to which real estate assets secured the real estate loan facilities; (ii) identified perfection defects with respect to liens associated therewith; and (iii) compiled factual and legal analyses in furtherance of a comprehensive memoranda identifying issues relating to perfection, ownership and title.  In addition to the foregoing due diligence, Akin Gump real estate attorneys ordered and reviewed "Ownership and Encumbrance" property search reports ("O&E Reports") covering all 213 properties encumbered by real estate facilities.  Akin Gump also spent time coordinating with the Debtors' advisors to ensure that the Creditors' Committee's advisors received the most recent recorded documents from local county offices across the United States.  The O&E Reports provided information with respect to the recorded owner and legal description of each property as well as recorded liens affecting those properties.  Akin Gump real estate attorneys analyzed and summarized the contents of these reports as they were delivered and compared the information provided in these reports against the title materials uploaded to the diligence data sites.  Additionally, Akin Gump real estate attorneys assessed the legal descriptions, recording dates, recording numbers, notarization information and other formalities related to recordation in conjunction with the various mortgages, deeds of trust and amendments thereof to ensure that the liens associated with the real estate loan facilities were perfected in each of their respective counties and states.  In connection with these efforts, Akin Gump real estate attorneys analyzed the ownership and title status for the over 200 encumbered properties, drafted a central pre-

petition debt facility grid and presented the information contained therein to the Creditors'
Committee in a timely fashion.

74.    Finally, Akin Gump, together with the Creditors' Committee's other advisors,
worked closely with the Debtors' real estate professionals to review and evaluate the marketing
and sales processes conducted by the Debtors' advisors.  More specifically, Akin Gump's real
estate attorneys reviewed the go-forward listing agreement, broker agreements and related
documents, negotiated the terms of such agreements with the Debtors' legal counsel and
analyzed the myriad of documents in the data sites to determine whether the requisite materials
and information had been provided such that potential buyers could submit informed bids for
each of the Debtors' properties (such information included, among other things, updated title
policies, existing surveys, zoning reports and phase 1 environmental reports).

**S.    Travel Time (Task Code 25)**

| Total Hours | Fees |
|---|---|
| 62.75 | $61,154.00 |

75.    This category includes time spent by Akin Gump attorneys in transit to all
hearings, auctions and meetings with parties in interest that required in-person attendance on
behalf of the Creditors' Committee.  Akin Gump has discount this time by 50% in accordance
with the Local Rules and Fee Guidelines.

**T.    General Corporate Matters (Task Code 28)**

| Total Hours | Fees |
|---|---|
| 84.80 | $54,172.00 |

76.    This category includes time spent by Akin Gump professionals and
paraprofessionals conducting general corporate diligence and review of public filings and
confidential materials provided to the Creditors' Committee's advisors.  This diligence included
review of documents related to intercompany and other prepetition affiliate transactions, KCD

IP, LLC, the Sparrow entities and Sears Reinsurance Company, Ltd.  It was critical that Akin

Gump research and analyze the Debtors' prepetition transactions, particularly the Debtors'

affiliate transactions.  To that end, Akin Gump's corporate attorneys conducted a thorough

review of Debtors' diligence documents, performed analyses and drafted summaries to assist the

Creditors' Committee and its advisors in understanding the complex structure of these

transactions, including the flow of funds and allocation of assets by Debtor entity.

**U.    Intercompany Claims/Intercompany Transactions/Cash Management
       (Task Code 29)**

| Total Hours | Fees |
|---|---|
| 159.20 | $159,622.00 |

77.    This category relates to all analysis done with respect to the Debtors'

intercompany relationships, its cash management system and related items.  On the Petition Date,

the Debtors filed the *Motion of Debtors for Authority to (I) Continue Using Existing Cash

Management System, Bank Accounts, and Business Forms, (II) Implement Ordinary Course

Changes to Cash Management System, (III) Continue Intercompany Transactions, and (IV)

provide Administrative Expense Priority for Postpetition Intercompany Claims and Related

Relief* [ECF No. 5] (the "Cash Management Motion").  Akin Gump worked closely with the

Creditors' Committee's other advisors to diligence and analyze the Debtors' cash management

systems and protocol for intercompany transfers.  This analysis was necessary in order to

evaluate the flow of value and claims among the various debtor entities and ensure appropriate

measures were in place to protect unsecured creditors of each debtor entity.  In light of the effect

that certain postpetition intercompany transactions could have on the value available at specific

Debtor entities, the Creditors' Committee negotiated and obtained in the order approving the

Cash Management Motion certain protections to preserve value of such Debtor entities and

ensure that no creditors were prejudiced because of intercompany transactions, including a requirement that the Debtors keep track of all postpetition intercompany transfers.

## V.    Business Operations (Task Code 31)

| Total Hours | Fees |
|---|---|
| 23.90 | $23,073.00 |

78.    This category includes work performed by Akin Gump with respect to ongoing review and analysis of the Debtors' business operations and performance, including the review of financial information provided by the Debtors' and engaging with the Creditors' Committee's other professionals regarding the same.  Throughout the Compensation Period, Akin Gump worked closely alongside the Creditors' Committee's other advisors to analyze the Debtors' business operations and prepare detailed presentations to the Creditors' Committee regarding the Debtors' business results.

## ACTUAL AND NECESSARY DISBURSEMENTS

79.    Akin Gump seeks allowance of reimbursement in the amount of $1,325,684.75 for expenses incurred during the Compensation Period in the course of providing professional services to the Creditors' Committee.  Akin Gump's disbursement policies pass through all out of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example, as it relates to computerized research, Akin Gump believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain.  Other reimbursable expenses (whether the service is performed by Akin Gump in-house or through a third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

80.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature
> of the problem, issue, or task addressed; and
>
> (E)     with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and
>
> (F)     whether the compensation is reasonably based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title.

11 U.S.C. § 330(a)(3).

81.     The clear congressional intent and policy expressed in Bankruptcy Code section

330 is to provide for adequate compensation in order to continue to attract qualified and

competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp.,*

*Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market,

not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by

appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir.

1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide

sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

82.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.,* 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[11] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

---

[11] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,* with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

83.    Akin Gump respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

a. <u>Time and Labor Required</u>.  Akin Gump billed a total of 22,829.65 hours of professional services and 2,116.80 hours of paraprofessional and other non-legal services during the Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts on an exceedingly compressed timeline during the initial months of the Chapter 11 Cases.  This is especially true when considering the nature and urgency of the issues that arose in these cases during the Compensation Period, including, among other things, analyzing the DIP Motion and Junior DIP Motion expeditiously, conducting the Investigation, prosecuting objections to the DIP Motion, the Global Bidding Procedures Motion, the Global Bidding Procedures and the Sale Transaction and engaging with the Debtors and their advisors in over various aspects of the Chapter 11 Cases.  Akin Gump's representation of the Creditors' Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Creditors' Committee in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of these cases, the significant—and often times urgent—legal and business issues raised, and the numerous pleadings filed in the Chapter 11 Cases.

b. <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, finance, real estate, tax and other issues.  As further described herein, Akin Gump's skilled teams assisted the Creditors' Committee in evaluating, among other things, the first-day relief, the DIP Motion, the Global Bidding Procedures Motion, the prepetition transactions and the Sale Transaction and other asset transactions, including the MTN Sale Motion.

c. <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the successful administration of these cases and benefited the Debtors and the Creditors' Committee.  Due to the nature and complexity of the legal issues presented in these cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, real estate and corporate transaction matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in these cases.

d.  <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Creditors' Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.  <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy matters.  Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.  <u>Whether the Fee Is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained.  The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee in the Chapter 11 Cases.

g.  <u>Time Limitations Imposed by the Client or Other Circumstances</u>.  As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines.  Akin Gump and the Creditors' Committee's other advisors were faced with limited time in which to engage in negotiations while also preparing to prosecute objections at various hearings as necessary.  For example, Akin Gump engaged in extensive negotiations with the advisors for the Debtors, the Buyer and others, with respect to the Sale Transaction, while simultaneously preparing and prosecuting the Sale Objection during a three-day evidentiary hearing.  The tremendous efforts of Akin Gump attorneys and paraprofessionals in completing this work permitted the Creditors' Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.  <u>Amount Involved and Results Obtained</u>.  Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in maximizing value for the benefit of unsecured creditors.  In particular, Akin Gump's efforts in connection with, among other things, the DIP Motion, Junior DIP Motion and the MTN Sale Motion ultimately resulted in increased unencumbered assets for distribution and the preservation of numerous valuable claims and causes of action.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.  <u>Experience, Reputation and Ability of Attorneys</u>.  Akin Gump is an international law firm that consistently is consistently recognized as a top tier law firm in the field of creditors' rights and business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its attorneys and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc.*, *In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc.*, *In re Washington Mutual Inc.*, *In re NII Holdings, Inc.*, *In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC*, *In re Solutia, Inc.*, *In re WorldCom, Inc.*, *In re XO Communications, Inc.*, *In re Tower Automotive LLC*, *In re VeraSun Energy Corp.*, and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.  <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

k.  <u>Nature and Length of Professional Relationship</u>.  Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018.

84.      For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

85.      No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

### ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

86.      The following is provided in response to the request for additional information set forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:        No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:        Yes. During the Compensation Period, 192.00 hours and $113,627.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:        See above.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:        Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2019 in the Akin Retention Application, which the Creditors' Committee agreed to.

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $20,309,841.00 and expense reimbursement in the amount of $1,325,684.75; (ii) the

allowance of such compensation for professional services rendered and reimbursement of actual

and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional

compensation for services performed and expenses incurred during the Compensation Period

which were not processed at the time of the Application; and (iii) such other and further relief as

the Court deems just, proper and equitable.

Dated: New York, New York
     April 15, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  */s/ Ira S. Dizengoff*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of
Sears Holdings Corporation, et al.*

## **EXHIBIT A**

**CERTIFICATION OF IRA S. DIZENGOFF**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In re:                                                : Chapter 11

                                                      :

SEARS HOLDINGS CORPORATION, et al.                    : Case No. 18-23538 (RDD)

                                                      :

                                                      : (Jointly Administered)

                    Debtors.[1]                       :

-------------------------------------------------------------------x

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE
FIRST INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF OCTOBER 24, 2018 THROUGH AND INCLUDING FEBRUARY 28, 2019**

I, Ira S. Dizengoff, hereby certify that:

1.        I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of

the above captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations
LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed
Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn &
Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc.
(7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co.
(6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears
Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services,
Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck
Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC
(None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder
Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839);
Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart
Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings
Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC
(None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC
(None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com
LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of
the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the
Application.

2.      In accordance with the Fee Guidelines, this certification is made with respect to

the Application, for interim allowance of compensation and reimbursement of expenses incurred

during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)      I have read the Application;
(b)      to the best of my knowledge, information, and belief formed after
reasonable inquiry, the fees and disbursements sought fall within the Fee
Guidelines;
(c)      the fees and disbursements sought are billed at rates in accordance with
those customarily charged by Akin Gump and generally accepted by Akin
Gump's clients; and
(d)      in providing a reimbursable service, Akin Gump does not make a profit on
that service, whether the service is performed by Akin Gump in-house or
through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the

Interim Compensation Order, I certify that Akin Gump has complied with those provisions

requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin

Gump's fees and disbursements accrued during the previous month, although, due to

administrative limitations, such statements were not always provided within the timeframe set

forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the

U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy

of the Application.

Dated: New York, New York                     By: */s/ Ira S. Dizengoff*
April 15, 2019                                Ira S. Dizengoff

2

## __EXHIBIT B__

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and DA Offices for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,033.63 | $1,191.87 |
| Senior Counsel and Counsel | $811.83 | $929.20 |
| Associate | $595.48 | $619.97 |
| Legal Assistant | $267.01 | $281.15 |
| **All Timekeepers Aggregated** | **$756.68** | **$814.14** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York and Dallas offices), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group. This data is based on information from a rolling 12 months year ending February 28, 2019..

## __EXHIBIT C__

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partners | Department | Year of Bar Admission | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Hours Billed | Amount |
|---|---|---|---|---|---|---|
| Adler, Aimee M. | Tax | 2001 | $940.00 | $1,040.00 | 138.50 | $132,840.00 |
| Bain, John A. | Real Estate | 2007 | $840.00 | $985.00 | 224.80 | $203,506.00 |
| Berchem, Kerry E. | Corporate | 1991 | $1,210.00 | N/A | 32.40 | $39,204.00 |
| Botter, David | Financial Restructuring | 1990 | $1,375.00 | $1,475.00 | 191.40 | $266,035.00 |
| Brimmage, Marty | Litigation | 1995 | $1,240.00 | $1,425.00 | 138.30 | $181,056.50 |
| Chen, Z.W. Julius | Litigation | 2010 | N/A | $925.00 | 64.80 | $59,940.00 |
| Crawford, Ashley Vison | Litigation | 2003 | $880.00 | N/A | 5.00 | $4,400.00 |
| Dizengoff, Ira S. | Financial Restructuring | 1993 | $1,475.00 | $1,550.00 | 460.20 | $694,440.00 |
| Dublin, Philip C. | Financial Restructuring | 1999 | $1,375.00 | $1,475.00 | 747.75 | $1,068,006.25 |
| Hsu, Alice | Corporate | 1999 | $930.00 | N/A | 9.50 | $8,835.00 |
| Jacobson, Howard B. | Tax | 1979 | $1,045.00 | $1,120.00 | 112.80 | $121,311.00 |
| Kuhn, Stephen B. | Corporate | 1991 | $1,295.00 | N/A | 19.40 | $25,123.00 |
| Lawrence, Lacy M. | Litigation | 2006 | $910.00 | $1,020.00 | 744.50 | $719,669.00 |
| Leader, Susan K. | Litigation | 2001 | $930.00 | $1,020.00 | 23.50 | $22,422.00 |
| Lee, Frederick T. | Finance | 2005 | $1,210.00 | N/A | 24.60 | $29,766.00 |
| Leyden, Lauren H. | Labor | 2006 | $1,070.00 | $1,160.00 | 34.50 | $37,383.00 |
| Miller, Allison P. | Corporate | 2003 | $950.00 | $1,250.00 | 531.80 | $573,550.00 |
| Morris, William D. | Oil & Gas | 1985 | $1,125.00 | N/A | 13.80 | $15,525.00 |
| Phelps, David S. | Real Estate | 1987 | $1,100.00 | $1,160.00 | 329.20 | $369,470.00 |
| Qureshi, Abid | Financial Restructuring | 1995 | $1,375.00 | $1,475.00 | 659.70 | $948,507.50 |

| Roush, Corey W. | Litigation | 1997 | $970.00 | N/A | 20.30 | $19,691.00 |
|---|---|---|---|---|---|---|
| Ru, Meng | Finance | 2005 | $970.00 | $1,100.00 | 133.60 | $130,814.00 |
| Sorkin, Joseph L. | Litigation | 2008 | $1,045.00 | $1,120.00 | 886.35 | $957,593.25 |
| Vondle, David C. | Intellectual Property | 2002 | $930.00 | $1,020.00 | 116.20 | $114,006.00 |
| Welkis, Scott | Finance | 1997 | $1,210.00 | $1,275.00 | 381.20 | $466,465.00 |
| Williams, Joshua R. | Tax | 2004 | $1,010.00 | $1,120.00 | 41.20 | $43,306.00 |
| **Total Partner** | | | | | **6,085.30** | **$7,252,864.50** |
| **Senior Counsel & Counsel** | **Department** | **Year of Bar Admission** | **Hourly Billing Rate 2018** | **Hourly Billing Rate 2019** | **Hours Billed** | **Amount** |
| Brauner, Sara L. | Financial Restructuring | 2011 | $975.00 | $1,125.00 | 1,270.80 | $1,332,975.00 |
| Brown, Ashley E. | Litigation | 2011 | $790.00 | $865.00 | 50.10 | $40,449.00 |
| Carty, Christopher W. | Litigation | 2010 | $890.00 | $980.00 | 917.10 | $858,051.00 |
| Chapman, Dean L. | Litigation | 2009 | $895.00 | $980.00 | 731.40 | $684,098.00 |
| Danishefsky, Menachem | Tax | 2017 | N/A | $950.00 | 5.50 | $5,225.00 |
| Demander, Kathryn G. | Litigation | 2013 | N/A | $805.00 | 227.60 | $183,218.00 |
| Fey, Hilary D. | Real Estate | 200 | $790.00 | N/A | 11.50 | $9,085.00 |
| Freeman, Alexis | Financial Restructuring | 2001 | $990.00 | $1,100.00 | 683.10 | $702,713.00 |
| Goodman, Evan N. | Corporate | 2012 | $810.00 | N/A | 22.50 | $18,225.00 |
| Koo, Angeline K. | Litigation | 2005 | $835.00 | $940.00 | 513.40 | $454,498.00 |
| Lee, David C. | Intellectual Property | 2000 | $790.00 | $905.00 | 28.90 | $23,762.50 |
| Locke, Adam T. | Litigation | 2012 | $810.00 | $915.00 | 442.80 | $374,386.50 |
| McGrady, Erica D. | Corporate | 1997 | $815.00 | $905.00 | 228.40 | $199,187.00 |

| Mongan, William F. | Litigation | 2012 | $860.00 | N/A | 10.20 | $8,772.00 |
|---|---|---|---|---|---|---|
| Morris, Brandon T. | Tax | 2009 | $945.00 | $1,040.00 | 57.30 | $56,381.00 |
| Murphy, John C. | Litigation | 2011 | N/A | $960.00 | 41.50 | $39,840.00 |
| O'Brien, Patrick G. | Litigation | 2004 | $730.00 | $905.00 | 38.30 | $29,009.00 |
| Peckham, Heather L. | Litigation | 2000 | $750.00 | $905.00 | 589.20 | $490,492.50 |
| Staber, David F. | Financial Restructuring | 1988 | $975.00 | N/A | 7.70 | $7,507.50 |
| Stark, Dustin E. | Labor | 2013 | N/A | $915.00 | 7.20 | $6,588.00 |
| Tizravesh, Roxanne | Litigation | 2009 | $825.00 | $905.00 | 499.80 | $436,071.00 |
| Tolentino, Raymond P. | Litigation | 2013 | N/A | $840.00 | 101.40 | $85,176.00 |
| Villota, Carlos P. | Finance | 1997 | $820.00 | N/A | 164.80 | $135,136.00 |
| Windscheffel, Dennis J. | Litigation | 2004 | $790.00 | N/A | 8.60 | $6,794.00 |
| **Total Senior Counsel & Counsel** | | | | | **6,659.10** | **$6,187,640.00** |
| **Associates** | **Department** | **Year of Bar Admission** | **Hourly Billing Rate 2018** | **Hourly Billing Rate 2019** | **Hours Billed** | **Amount** |
| Agahzadeh, Alex | Real Estate | 2014 | N/A | $775.00 | 16.70 | $12,942.50 |
| Aminian, Sarah | Corporate | 2018 | $520.00 | $540.00 | 171.70 | $90,414.00 |
| Antounian, Vicken G. | Corporate | 2017 | $495.00 | $555.00 | 137.10 | $72,016.50 |
| Brewer, Erin M. | Litigation | 2018 | $495.00 | $510.00 | 96.70 | $48,072.00 |
| Byun, Michael | Financial Restructuring | 2013 | $795.00 | $890.00 | 184.30 | $160,588.00 |
| Chatterjee, Raja | Corporate | 2018 | $495.00 | N/A | 6.50 | $3,217.50 |
| Chen, Michael | Litigation | Pending | $520.00 | $540.00 | 517.50 | $274,250.00 |
| Clarke, J. Robertson | Financial Restructuring | 2011 | $885.00 | $975.00 | 77.60 | $71,637.00 |

| Danishefsky, Menachem | Tax | 2017 | $835.00 | N/A | 25.50 | $21,292.50 |
|---|---|---|---|---|---|---|
| Demander, Kathryn G. | Litigation | 2013 | $725.00 | N/A | 168.90 | $122,452.50 |
| Farovitch, Aaron S. | Tax | 2017 | $620.00 | $690.00 | 137.90 | $87,969.00 |
| Generales, Markos C. | Litigation | 2018 | $495.00 | N/A | 6.00 | $2,970.00 |
| Glackin, Patrick J. | Litigation | Pending | $520.00 | $540.00 | 591.20 | $312,726.00 |
| Handschumacher, Kelly | Litigation | 2017 | $520.00 | N/A | 25.90 | $13,468.00 |
| Hill, John B. | Corporate | Pending | $520.00 | $540.00 | 135.40 | $70,638.00 |
| Hiner, Chance | Financial Restructuring | 2017 | $540.00 | $660.00 | 88.90 | $52,278.00 |
| Holland, Erica E. | Litigation | 2016 | N/A | $770.00 | 117.20 | $90,244.00 |
| Kane, John P. | Litigation | 2016 | $645.00 | $770.00 | 737.30 | $519,508.50 |
| Kessler, Boris | Corporate | 2016 | $645.00 | N/A | 34.40 | $22,188.00 |
| Kulikowski, Jillian R. | Litigation | Pending | $520.00 | $540.00 | 500.10 | $265,170.00 |
| Lanier, Zachary D. | Financial Restructuring | 2017 | $620.00 | $760.00 | 947.25 | $651,065.00 |
| Latov, Jeffrey A. | Financial Restructuring /Litigation | 2017 | $620.00 | $760.00 | 695.00 | $469,988.00 |
| Lewis, Jacqueline K. | Corporate | 2018 | $520.00 | $630.00 | 165.50 | $90,317.00 |
| Lyashenko, Ekaterina V. | Tax | 2018 | $620.00 | N/A | 13.60 | $8,432.00 |
| Mahkamova, Shirin | Financial Restructuring | 2019 | $540.00 | $560.00 | 851.60 | $466,714.00 |
| Marshall, Michelle | Corporate | 2018 | $520.00 | $540.00 | 53.00 | $27,956.00 |
| McNeilly, Edward | Financial Restructuring | 2017 | $620.00 | $760.00 | 119.90 | $75,906.00 |
| Miller, Katlyne | Litigation | 2018 | $495.00 | $510.00 | 193.60 | $97,213.50 |
| Park, Daniel S. | Litigation | 2011 | $590.00 | $690.00 | 816.90 | $522,471.00 |

| Parlar, Erin E. | Litigation | 2018 | N/A | $815.00 | 98.10 | $79,951.50 |
|---|---|---|---|---|---|---|
| Phillips, Colin B. | Intellectual Property | 2017 | N/A | $555.00 | 12.90 | $7,159.50 |
| Praestholm, Amanda | Litigation | 2017 | N/A | $555.00 | 70.90 | $39,349.50 |
| Savar, Ramin | Real Estate | 2015 | $590.00 | $690.00 | 345.10 | $215,229.00 |
| Schmitten, J. Matthew | Litigation | Pending | $640.00 | N/A | 33.20 | $21,248.00 |
| Sharad, Saurabh | Litigation | 2015 | $715.00 | $815.00 | 566.60 | $430,309.00 |
| Steed, Alison L. | Corporate | 2018 | $520.00 | $540.00 | 146.10 | $77,000.00 |
| Szydlo, Joseph E. | Financial Restructuring | Pending | $540.00 | $560.00 | 576.40 | $316,752.00 |
| Threadcraft, Tiffanye S. | Corporate | 2013 | $765.00 | $870.00 | 146.20 | $115,360.50 |
| Collins, Russell J. | Practice Attorney | 1998 | $430.00 | $455.00 | 393.80 | $174,516.50 |
| Doniak, Christine D. | Practice Attorney | 1998 | N/A | $745.00 | 111.50 | $83,067.50 |
| Elliott, Amy S. | Practice Attorney | 2008 | N/A | $550.00 | 15.10 | $8,086.00 |
| **Total Associate** | | | | | **10,149.05** | **$6,292,133.50** |

| Paralegals & Non-Legal Staff | Department | Year of Bar Admission | Hourly Billing Rate 2018 | Hourly Billing Rate 2019 | Hours Billed | Amount |
|---|---|---|---|---|---|---|
| Andron, Jonathan A. | Trial Services | N/A | $260.00 | $270.00 | 123.00 | $33,105.00 |
| Belkin, Boris | Corporate | N/A | $385.00 | N/A | 38.00 | $14,630.00 |
| Chau, Lok Fung | EDiscovery | N/A | N/A | $355.00 | 5.90 | $2,094.50 |
| Edwards, Paul W. | Litigation | N/A | $330.00 | $355.00 | 28.20 | $9,583.50 |
| Ejoh, Kareen C. | Litigation | N/A | $260.00 | $270.00 | 342.60 | $91,632.00 |
| Greer, Michael S. | Trial Services | N/A | N/A | $295.00 | 10.60 | $3,127.00 |
| Hicks, Adria M. | Litigation | N/A | N/A | $335.00 | 5.90 | $1,976.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kemp, Brenda R. | Financial Restructuring | N/A | $330.00 | N/A | 156.80 | $51,744.00 |
| Krasa-Berstell, Dagmara | Financial Restructuring | N/A | $385.00 | $395.00 | 218.80 | $84,403.00 |
| Langmack, Jennifer | Litigation | N/A | N/A | $335.00 | 5.90 | $1,976.50 |
| Leonard, Massai | EDiscovery | N/A | N/A | $325.00 | 11.50 | $3,737.50 |
| Levy, Sophia D. | Financial Restructuring | N/A | $235.00 | $235.00 | 230.50 | $54,167.50 |
| Ma, Jim Wai-Ming | EDiscovery | N/A | N/A | $380.00 | 38.80 | $14,744.00 |
| Munoz, Alondra E. | Litigation | N/A | $195.00 | $205.00 | 48.80 | $9,759.00 |
| Pinkney, W. Matt | Trial Services | N/A | N/A | $195.00 | 102.80 | $20,046.00 |
| Robertson, Emony M. | Litigation | N/A | $205.00 | $220.00 | 452.90 | $96,650.00 |
| Smith, Turner | Corporate | N/A | $205.00 | N/A | 6.00 | $1,230.00 |
| Southwell, Tracy | Financial Restructuring | N/A | $385.00 | $395.00 | 198.10 | $76,492.50 |
| Walls, Bennett M. | Litigation | N/A | N/A | $205.00 | 20.20 | $4,141.00 |
| Yen, Doris | Research | N/A | N/A | $255.00 | 7.70 | $1,963.50 |
| **Total Paralegal & Non-Legal Staff** | | | | | **2,053.00** | **$577,203.00** |
| **Total Timekeepers** | | | | | **24,946.45** | **$20,309,841.00** |

## <u>EXHIBIT D</u>

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 400 – 500 | $289,300.00 – $361,600.00 | 463.30 | $335,099.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 200 – 250 | $121,000.00 – $151,300.00 | 220.00 | $133,160.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 45 – 60 | $34,500.00 – $46,000.00 | 55.40 | $42,526.00 |
| 5 | Review/Preparation of Schedules, Statements | 30 – 40 | $25,100.00 – $33,500.00 | 35.20 | $29,497.00 |
| 6 | Retention of Professionals | 720 – 900 | $350,000.00 – $437,500.00 | 837.70 | $407,240.50 |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 600 – 750 | $620,400.00 – $775,500.00 | 627.10 | $648,455.50 |
| 8 | Court Hearings | 2,400 – 3,000 | $1,952,300.00 – $2,440,400.00 | 2,506.20 | $2,038,761.00 |
| 9 | Financial Reports and Analysis | 80 – 100 | $76,900.00 – $96,200.00 | 59.00 | $56,766.00 |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 1,600 – 2,000 | $1,455,900.00 – $1,819,800.00 | 1,099.20 | $1,000,210.50 |
| 11 | Executory Contracts/Lease Issues | 200 – 250 | $135,500.00 – $169,300.00 | 53.20 | $36,046.50 |
| 12 | General Claims Analysis/Claims Objections | 280 – 350 | $230,600.00 – $288,300.00 | 251.70 | $207,360.00 |
| 13 | Analysis of Pre-Petition Transactions | 6,400 – 8,000 | $4,857,200.00 – $6,071,600.00 | 7,948.60 | $6,032,612.00 |
| 14 | Insurance Issues | 120 – 150 | $120,000.00 – $150,000.00 | 59.00 | $59,021.50 |
| 15 | Secured Creditors Issues /Communications/ Meetings | 800 – 1,000 | $584,300.00 – $730,400.00 | 807.20 | $589,638.50 |
| 16 | Automatic Stay Issues | 120 – 150 | $82,800.00 – $103,500.00 | 100.40 | $69,296.50 |
| 17 | General Litigation Matters/Adversary Proceedings | 240 – 300 | $205,200.00 – $256,500.00 | 3.10 | $2,651.00 |
| 18 | Tax Issues | 320 – 400 | $308,400.00 – $385,500.00 | 257.00 | $247,687.50 |
| 19 | Labor Issues/Employee Benefits | 480 – 600 | $413,700.00 – $517,200.00 | 369.60 | $318,612.50 |
| 21 | Exclusivity | 120 – 150 | $97,700.00 – $122,100.00 | 65.00 | $52,929.50 |
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 320 – 400 | $319,300.00 – $399,100.00 | 173.50 | $173,151.00 |

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 23 | Asset Dispositions/363 Asset Sales | 6,400 – 8,000 | $5,727,900.00 – $7,159,900.00 | 7,235.40 | $6,475,641.00 |
| 24 | Real Estate Issues | 1,600 – 2,000 | $1,215,600.00 – $1,519,500.00 | 1,385.20 | $1,052,462.00 |
| 25 | Travel Time | 60 – 80 | $58,400 – $77,900.00 | 62.75 | $61,154.00 |
| 28 | General Corporate Matters | 280 – 350 | $178,800.00 – $223,500.00 | 84.80 | $54,172.00 |
| 29 | Intercompany Claims/ Intercompany Transactions/Cash Management | 280 – 350 | $280,700.00 – $350,900.00 | 159.20 | $159,622.00 |
| 30 | Customer, Supplier, and Vendor Issues (including Critical Vendor issues) | 80 – 100 | $63,000.00 – $78,800.00 | 3.80 | $2,995.00 |
| 31 | Business Operations | 40 – 50 | $38,600.00 – $48,200.00 | 23.90 | $23,073.00 |
| **TOTAL** | | **24,215 – 30,280** | **$19,843,100.00 – $24,814,000.00** | **24,946.45** | **$20,309,841.00** |

## **EXHIBIT E**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount |
|---|---|
| Committee Member Expenses | $2,503.49 |
| Computerized Legal Research – Lexis – in contract 30% discount | $32,754.42 |
| Computerized Legal Research – Lexis – out of contract 30% discount | $100.70 |
| Computerized Legal Research – Courtlink – in contract 50% discount | $2,292.58 |
| Computerized Legal Research – Courtlink – out of contract 50% discount | $254.61 |
| Computerized Legal Research – Westlaw – in contract 30% discount | $74,770.06 |
| Computerized Legal Research – Westlaw – out of contract 30% discount | $446.65 |
| Computer Parts & Peripherals | $8,997.97 |
| Color Copy | $1,610.00 |
| Courier Service/Messenger Service – Off Site | $4,202.25 |
| Document Retrieval | $2,443.47 |
| Duplication – In House | $24,803.80 |
| Duplication - Off Site | $6,973.57 |
| Equipment - Rental | $8,683.95 |
| Filing Fees | $200.00 |
| Meals – Business | $10,232.40 |
| Meals - Overtime | $2,368.18 |
| Meals (100%) | $34,756.38 |
| Miscellaneous | $488.09 |
| Office Supplies – Printing | $13,316.41 |
| Overtime – Admin Staff | $2,712.62 |

| Disbursement Activity | Amount |
|---|---|
| Postage | $611.44 |
| Professional Fees - Consultant Fees | $81,168.75 |
| Professional Fees - Legal | $382,679.66 |
| Professional Fees – Misc. | $341,216.36 |
| Research | $246.78 |
| Telephone – Long Distance | $1,296.00 |
| Title Company | $98,512.00 |
| Trademark Service Fees | $550.00 |
| Transcripts | $71,023.81 |
| Travel – Airfare | $13,462.89 |
| Travel - Auto (mileage) | $109.04 |
| Travel – Auto Rental | $55.02 |
| Travel – Ground Transportation | $25,344.08 |
| Travel - Incidentals - Out of Town Travel | $43.00 |
| Travel – Lodging (Hotel, Apt, Other) | $64,802.14 |
| Travel – Parking | $694.68 |
| Travel – Telephone & Fax | $1,838.76 |
| Local Transportation – Overtime | $6,097.74 |
| Travel – Train Fare | $1,021.00 |
| **Total** | **$1,325,684.75** |

## **EXHIBIT F**

### **STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 20 | $1,019.58 |
| Senior Counsel and Counsel | 15 | $803.01 |
| Associate | 40 | $604.31 |
| Paralegals & Non-Legal Staff | 10 | $285.38 |