| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br><br>IN RE:<br><br>**SEARS HOLDING CORPORATION,**<br>**INC, et al**<br><br>                                    Debtors.<br>------------------------------------------------------------X | HEARING DATE<br>**April 18, 2019**<br><br><br><br>Chapter 11<br><br>Case No. 18-23538 (rdd)<br>(jointly administered) |

**REPLY OF MAULDIN AT BUTLER, LLC (STORE NO. 7274) IN FURTHER SUPPORT OF ITS APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSES**

Mauldin at Butler, LLC ("Mauldin") submits this Reply in further support of its request for the immediate payment of administrative expenses in the total sum of $69,713.54.[1]

**Argument**

1.      Section 365(d)(3) of the Bankruptcy Code requires performance of all obligations of a debtor, which arise after the order for relief under any unexpired lease of nonresidential property. Here, the parties do not dispute that Kmart's obligation to pay 2018 real estate taxes pursuant to the Lease[2] did not arise until after the Commencement Date. Accordingly, per the plain statutory language and per the weight of authority that has directly addressed this issue, Mauldin is entitled to recover the roughly $70,000 of outstanding real estate taxes.

2.      Debtors assert that most courts in this circuit calculate obligations under Section 365(d)(3) under a proration method as opposed to looking to the billing date. But, the cases to which Debtors refer address post-rejection proration[3] and come to the unremarkable conclusion

---

[1] In Mauldin's moving papers, we requested reimbursement in the amount of $88,660.08. After filing the motion, Mauldin discovered the Kmart had paid a portion of the requested amount. Accordingly, the expense amount requested by Mauldin has been adjusted.
[2] Unless otherwise noted, all defined terms carry the same meaning as set forth in Debtor's Objection (No. 3163).
[3] *See In re McCrory Corp.*, 210 B.R. 934 (S.D.N.Y. 1997) and *In re Ames Dep't Stores*, 306 B.R. 43 (Bankr. S.D.N.Y. 2004) (both addressing landlord's entitlement to amounts which are pre-billed prior to rejection but apply to the post-rejection period).

that a landlord should not be entitled to a windfall for collecting the monies that are pre-billed covering periods post-rejection (e.g. if annual taxes are billed January 1 and the lease rejected in February, the landlord may only recover that portion of the taxes attributable to the pre-rejection period).

3. In fact, very few courts in this jurisdiction have addressed the specific question posed in this case: where a debtor's obligation to pay taxes under a nonresidential lease does not arise until post-petition, must those taxes be paid per Section 365(d)(3) or is only the portion attributable to the post-petition period required to be paid? Both Mauldin and Debtors appear to have only found two cases (each with decisions from the Bankruptcy Court and then District Court) that have addressed this question. And three of the four courts that have looked the issue have found that the statutory language of Section 365(d)(3) means exactly what it says and that taxes covering prepetition periods, which do not become due under commercial leases until post-petition, are obligations that arise post-petition and must be paid to the landlord-creditor.

4. Debtors rely heavily on the one case finding to the contrary, *In re Child World, Inc.*, 161 B.R. 571 (S.D.N.Y. 1993).[4] But, the holding and reasoning of *In re Child World* was directly addressed and rejected approximately three months later by then Judge Sotomayor in *In re R.H. Macy & Co.*, 1994 WL 482948 (S.D.N.Y. 1994) who found that the language of Section 365(d)(3) was clear and that where a tax obligation did not arise until the post-petition period, payment of that taxes was entitled to priority.

5. Debtors seek to distinguish *In re RH Macy* because the tax bill there dealt with a reassessment of pre-petition taxes. But, Judge Sotomayor's decision (and reasoning) was not

---

[4] A decision, which reversed the Bankruptcy Court's holding in *In re Child World, Inc.*, 150 B.R.328 (Bankr. S.D.N.Y. 1993). The Bankruptcy Court in *In re Child World*, as well as both the Bankruptcy Court and the District Court in *In re R.H. Macy & Co.*, all held that taxes that only become due post-petition are obligations arising after the order for relief and are therefore entitled to administrative priority.

restricted to that specific aspect. Rather the question argued by both parties and determined by the judge is the extant question here: are taxes, which are applicable to pre-petition periods, entitled to administrative priority where the obligation to pay them does not arise until post-petition?

6.      In affirming the Bankruptcy Court's ruling, Judge Sotomayor found that since there was no dispute that the obligation to pay the taxes at issue did not arise until the post-petition period, the plain language of the Code required payment of the taxes; "this is an obligation arising from and under the lease, then under the clear terms of Section 365(d)(3), the taxes must be paid." *Id.*, at *13.[5]

7.      Here, the Lease requires Kmart to pay all real estate taxes levied against the premises during the lease term. (Obj., Ex. A.) Approximately one month after the Commencement Date, Mauldin received the Greenville County tax bill. On or about November 30, 2018, Mauldin invoiced Kmart for its portion of the taxes, which amounted to $88,660.08. (Doc No. 2690, Ex. A.) Accordingly, Kmart's obligation to pay the $88,660.08 of taxes under the Lease did not arise until the post-petition period.

8.      Stated another way, had Mauldin, prior to receiving the tax invoice from Greenville County, requested Kmart pay 2018 taxes per the Lease, Kmart would have properly refused, because its obligation to pay taxes had not yet arisen. That obligation did not arise until the post-petition period. To find that Kmart's obligation to pay the taxes at issue here is not an obligation under a commercial lease, which arose post-petition strains the bounds of logic.

---

[5] *See also In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209-12 (3d Cir. 2001) (holding statutory text of Section 365(d)(3) is clear and that tax obligations arising post-petition, even if they cover pre-petition periods, are entitled to priority).

9.      As Justice Sotomayor held, there is no reason to impose ambiguity on words where none exists. In this motion, Mauldin seeks payment for a lease obligation, which arose after the petition. Mauldin's motion should be granted.[6]

Dated:  White Plains, New York
        April 16, 2019

                                CUDDY & FEDER LLP
                                Attorneys for Mauldin at Butler, LLC

                            By: /s/ *Brendan Goodhouse*
                                Brendan Goodhouse
                                445 Hamilton Avenue, 14th Floor
                                White Plains, New York 10601
                                (914) 761-1300
                                bgoodhouse@cuddyfeder.com

---

[6] In the Objection, Debtors reference payments that were otherwise due to Kmart under the Lease, which Mauldin has withheld as recoupment for monies owed to Mauldin under the Lease. First, this has no bearing on the present motion. Second, Debtors appear to insinuate that the Chick-fil-A rent (which they inaccurately characterize as subtenant rent, since Chick-fil-A is a tenant of Mauldin, not a subtenant of Kmart) may only be applied to recoupment of post-petition amounts due. This is wrong. Post-petition recoupment may be applied to pre-petition amounts. *See In re 105 East Second Street Associates*, 207 B.R. 64 (Bankr. S.D.N.Y. 1997). Here, once Mauldin can fix actual costs of its pre-petition claim, it will deduct the Chick-fil-A rent from its claim.