**McKool Smith, P.C.**
One Bryant Park
47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
H. Jeffrey Schwartz
James H. Smith

-and-

600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
Benjamin W. Hugon

*Counsel for Winners Industry Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | ) |
| | ) |
| | ) |
| **SEARS HOLDINGS CORPORATION, et al.** | ) Chapter 11 |
| | ) |
| **Debtors**[1] | ) Case No. 18-23538 (RDD) |
| | ) Jointly Administered |

**INITIAL REPLY TO DEBTORS' OBJECTION TO MOTION OF
WINNERS INDUSTRY CO., LTD. FOR ALLOWANCE AND
PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     ARGUMENTS AND AUTHORITIES.................................................................. 2

        A.    *IN RE WORLD IMPORTS*............................................................... 2

              i.    *Background Facts Mirror the Present Dispute* ......................... 2

              ii.   *Receipt under Section 503(b)(9) Requires Physical Possession*................. 3

                    a.    Ordinary Meaning.......................................... 3

                    b.    Legislative Context ...................................... 4

              iii.  *Sections 503(b)(1)(A) and 503(b)(9) Must Be Interpreted Consistently* .... 5

        B.    Winners Possesses Valid Section 503(b)(1)(A) Administrative Expense Claims.. 7

III.    RESERVATION OF RIGHTS ................................................................. 9

IV.     CONCLUSION.................................................................. 9

4816-6906-6387

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alfaro v. Comm'r of Internal Revenue*,
349 F.3d 225 (5th Cir. 2003) ................................................................................. 7

*In re Flagstaff Foodservice Corp.*,
56 B.R. 910 (Bankr. S.D.N.Y. 1986) ..................................................................... 4

*In re Lewis*,
33 B.R. 98 (Bankr. W.D.N.Y. 1983) .................................................................. 6, 7

*In re Marin Motor Oil, Inc.*,
740 F.2d 220 (3d Cir. 1984) ................................................................................. 4

*In re McBrearty*,
335 B.R. 513 (Bankr. E.D.N.Y. 2005) ................................................................. 8

*In re R.F. Cunningham & Co.*,
2006 Bankr. LEXIS 3650 (Bankr. E.D.N.Y. 2006)............................................... 4

*In re World Imports, Ltd.*,
862 F.3d 338 (3d Cir. 2017) ......................................................................... passim

*Standard Oil Co. of N.J. v. United States*,
221 U.S. 1 (1911) ................................................................................................. 3

*The Wireless Ass'n v. City of Berkeley, Cal.*,
873 F.3d 774 (9th Cir. 2017) ............................................................................... 7

*Yerdon v. Henry*,
91 F.3d 370 (2d Cir. 1996) ................................................................................... 5

**STATUTES**

11 U.S.C. § 546(c)(2)................................................................................................. 4

UCC § 2-103(1)(c) ..................................................................................................... 3

**OTHER AUTHORITIES**

Black's Law Dictionary and Oxford English Dictionary............................................. 3

4816-6906-6387

Winners Industry Co., Ltd. ("Winners") files this reply (the "Initial Reply") to *Debtors'*

*Objection to Winners Industry Co., Ltd's Motion for Allowance and Payment of Administrative*

*Claim* (Dkt. No. 2839) (the "AEC Objection"), and in support of the *Motion of Winners Industry*

*Co., Ltd. for Allowance and Payment of Administrative Expense Claims* (Dkt. No. 1386) (the

"AEC Motion"), and respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The only matter the AEC Motion currently presents to the Court is the following

gating legal issue:  whether the key date for determining a vendor claim's entitlement to section

503(b)(1)(A) or 503(b)(9) administrative priority is the date on which debtors take physical

possession of goods or the date on which goods are shipped by common carrier.  Winners urges

the Court to follow the well-founded reasoning of the Third Circuit's decision in *In re World*

*Imports, Ltd.*,[2] and its textual interpretation of the clear language of section 503(b)(9), and hold,

as the Third Circuit did therein, that receipt under this subsection occurs when debtors take

physical possession of goods.  Given the cardinal canon of statutory construction that subsections

of the same section must be interpreted in harmony and not in conflict with each other, sections

503(b)(9) and 503(b)(1)(A) must be interpreted consistently and in a manner that does not yield

an absurd result.  Thus, the key date for section 503(b)(1)(A) vendor claims for goods sold and

delivered should likewise be when debtors take physical possession of the goods.

2.    The Debtors instead argue that, even if debtors-in-possession take physical

possession of goods postpetition, the related claims are general unsecured claims because the

goods were ordered and shipped prepetition.[3]  This argument ignores Congressional intent,

---

[2] 862 F.3d 338 (3d Cir. 2017).  The Third Circuit is the only Court of Appeals to opine directly on this issue.

[3] The Debtors have apparently reversed course on this issue. Winners' position that claims for postpetition deliveries of goods ordered prepetition are entitled to section 503(b)(1)(A) treatment is the same previously espoused by the Debtors in the aptly titled *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A)*

4816-6906-6387

would result in an absurd reconciliation of two subsections of section 503, and would begin a

problematic split between the circuits containing the two busiest chapter 11 bankruptcy dockets

in the nation.

3.      Winners requests that, in interpreting section 503(b)(1)(A),  the Court follow the

*World Imports* decision and determine that the key date for determining a vendor claim's

entitlement to section 503(b)(1)(A) administrative priority is the date on which debtors take

physical possession of goods, *i.e.* the date on which the goods were received.

## II.      ARGUMENTS AND AUTHORITIES

### A.      *IN RE WORLD IMPORTS*

#### i.      *Background Facts Mirror the Present Dispute*

4.      The facts in *World Imports* are virtually identical in all material respects to those

in this contested matter.[4]  In each, a Chinese company shipped goods F.O.B. via common carrier

to debtors in the ordinary course of business.  In both cases a portion of the goods were loaded

on-board a common carrier more than 20 days before the petition date, but the debtors did not

take physical possession of those goods until within 20 days of the petition date.  In the present

contested matter, certain of Winners' shipments to the Debtors arrived after the petition date as

well.[5]

---

*Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims,
and (II) **Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition**,
and Satisfy Such Obligations in the Ordinary Course of Business* (Dkt. No. 14) (the "Postpetition Deliveries
Motion") (emphasis added).  In addition, the Debtors requested and received from this Court an order providing that
such claims were entitled to administrative priority under section 503(b)(1)(A).

[4] Additional factual background regarding the present contested matter is set forth in the AEC Motion.

[5] Relevant information regarding each shipment is set forth in the AEC Motion, and specifically the summary
spreadsheet attached as Exhibit B thereto.

*ii.    Receipt under Section 503(b)(9) Requires Physical Possession*

5.      The sole question posed in *World Imports* was whether "receipt" of a vendor's goods for section 503(b)(9) purposes equates to physical possession by the debtor. The Third Circuit ruled that it does based on: (i) the ordinary meaning of the word "received"; and, (ii) the legislative context of the Bankruptcy Code plus prior Third Circuit decisions finding Congress meant to incorporate Uniform Commercial Code ("UCC") definitions for these provisions. *See World Imports*, 862 F.3d at 342.

a. Ordinary Meaning

6.      The Bankruptcy Code does not define the word "received". As recognized by the Third Circuit, in such situations courts "normally construe [a word] in accord with its ordinary or natural meaning." *World Imports*, 862 F.3d at 342 (quoting *Smith v. United States*, 508 U.S. 223 (1993)).  The Third Circuit reviewed the Black's Law Dictionary and Oxford English Dictionary definitions for "receive" which, while not identical, both required physical possession. *World Imports*, 862 F.3d at 342.

7.      The legal and dictionary definitions also comport with the UCC definition. *World Imports*, 862 F.3d at 342; UCC § 2-103(1)(c) (defining receipt of goods as "taking physical possession of them.").   At the time section 503(b)(9) was adopted, the UCC was the law of the land for sales of goods in 49 states, and under Supreme Court authority if the operative word "had at the time a well-known meaning at common law or in the law of this country, [it is] presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911); *World Imports*, 862 F.3d at 342 (citing *Standard Oil*).  On that basis, the Third Circuit found the UCC definition (which, as in the other definitions, requires physical possession) of particular import.

3

b.  Legislative Context

8.      In addition to the ordinary meaning of the word "receipt" requiring physical possession, the Third Circuit found that the legislative context of section 503(b)(9) indicated the same, as Congress relied on UCC definitions in drafting section 503(b)(9).

9.      The origin of this reliance relates to section 503(b)(9)'s connection to section 546(c), the Bankruptcy Code's reclamation provision.  Section 503(b)(9) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").  One single BAPCPA provision both amended section 546(c) and created section 503(b)(9) as an alternative remedy to reclamation.  The interrelationship between the two provisions is direct as section 546 explicitly references section 503(b)(9).  *See* 11 U.S.C. § 546(c)(2) ("If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller may assert the rights contained in section 503(b)(9)").

10.     The Third Circuit previously held that "receipt" for section 546(c) purposes should be interpreted pursuant to the UCC definition—meaning that physical possession was required. *See In re Marin Motor Oil, Inc.*, 740 F.2d 220, 226 (3d Cir. 1984).  Lower courts within the Second Circuit have held the same. *See, e.g., in re R.F. Cunningham & Co.*, 2006 Bankr. LEXIS 3650 at *5–7 (Bankr. E.D.N.Y. 2006); *In re Flagstaff Foodservice Corp.*, 56 B.R. 910, 914 (Bankr. S.D.N.Y. 1986).

11.     Given the interrelationship between the two provisions and that proper functioning of the statutory scheme requires a fixed receipt date for section 546's reclamation remedy and section 503(b)(9)'s alternative remedy, the Third Circuit found that receipt for section 503(b)(9) purposes must likewise require physical possession. *World Imports*, 862 F.3d at 342–44.

4

4816-6906-6387

12.     Notwithstanding this definition of "receipt," the debtors in *World Imports* argued

that they constructively received the goods when they were delivered FOB to a common carrier

in China.  The Third Circuit rejected this argument as well, noting that common carriers are not

agents, and that even if title had transferred and the risk of loss had passed, these concepts are

different from the issue of "receipt." *World Imports*, 862 F.3d at 345–46.

*iii.*     *Sections 503(b)(1)(A) and 503(b)(9) Must Be Interpreted Consistently*

13.     The Third Circuit's interpretation of section 503(b)(9) necessarily informs the

application of section 503(b)(1)(A) with respect to vendor claims.  It is a cardinal rule of

statutory construction that a statute must be read as a whole, in order not to render portions of it

inconsistent or devoid of meaning. *Yerdon v. Henry*, 91 F.3d 370 (2d Cir. 1996) ("Because the

meaning of statutory language, plain or not, depends on context, the interpretation of a statute

requires consideration of the language of the relevant provision in conjunction with the entire

statute.  Where an examination of the statute as a whole demonstrates that a party's interpretation

would lead to absurd or futile results . . . plainly at variance with the policy of the legislation as a

whole, that interpretation should be rejected.") (internal citations and quotations omitted); *see

also* ANTONIN SCALIA & BRYAN GARNER, Reading Law: The Interpretation of Legal Texts 180

(2012) (Under the harmonious-reading canon, "[t]he provisions of a text should be interpreted in

a way that renders them compatible, not contradictory.").   The Debtors' assertions ignore these

authoritative admonitions.

5

4816-6906-6387

14.     The AEC Objection fails to even mention *World Imports*, let alone discuss its implications for vendors' section 503(b)(1)(A) administrative expense claims.    This is unsurprising given that the Debtors' requested interpretation of section 503(b)(1)(A) is inconsistent with *World Imports* and would lead to absurd results. Consider the following example:



15.     The claim for the first set of goods would obtain section 503(b)(9) administrative priority pursuant to *World Imports*.  But if the Court were to adopt the Debtors' interpretation of section 503(b)(1)(A), the claim for the second set (goods shipped and delivered at a later point in time) would be merely a general unsecured claim.  This is an absurd result and would discourage vendors from continuing business with entities on the verge of bankruptcy.  This is diametrically opposed to the purpose of section 503(b)(1)(A), which, as the Debtors themselves correctly note, is to "encourage the vendors to deal with the post-petition estate."  AEC OBJ. at 7; *see also In re*

6

*Lewis*, 33 B.R. 98, 100 (Bankr. W.D.N.Y. 1983) (section 503(b)(1)(A) claim priority "is given to encourage creditors to extend trade credit to a distressed business."). The Court should therefore reject the Debtors' interpretation of section 503(b)(1)(A).

16.     Given the virtual identity of the facts and the Third Circuit's well-founded reasoning based on canons of statutory construction routinely followed by the Supreme Court and the Second Circuit, the Court should follow *World Imports* and find that receipt for section 503(b)(1)(A) purposes requires physical possession.[6]

**B.     Winners Possesses Valid Section 503(b)(1)(A) Administrative Expense Claims**

17.     As set forth in the AEC Motion,[7]  Winners holds facially valid administrative expense claims under section 503(b)(1)(A).  Courts in the Second Circuit use a two-part test to determine whether a specific claim qualifies as an administrative expense under section 503(b)(1)(A). There must be a postpetition transaction, making it a transaction between the debtor-in-possession and the creditor; and second, the estate must receive a benefit from the transaction.  *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

18.     Debtors received from Winners postpetition shipments of the artificial Christmas trees they specifically ordered, failed to pay for them, and sold them in the ordinary course of

---

[6] Should this Court choose the Debtors' assertion in this regard and thus not follow the Third Circuit's reasoning and holding in *World Imports*, a problematic split would begin in the circuits containing the two most active chapter 11 bankruptcy dockets in the country (the District of Delaware and the Southern District of New York).  A fundamental principle of American jurisprudence is that "circuit splits are generally to be avoided." *The Wireless Ass'n v. City of Berkeley, Cal.*, 873 F.3d 774, 776 (9th Cir. 2017); *Alfaro v. Comm'r of Internal Revenue*, 349 F.3d 225, 229 (5th Cir. 2003) (noting that circuit splits are disfavored).

[7] Unable to refute the reasoning or applicability of *World Imports* or its implications in the AEC Objection, the Debtors only rebuttal is to argue that the AEC Motion does not cite any caselaw regarding section 503(b)(1)(A). This is incorrect.  The AEC Motion cites the section 503(b)(1)(A) caselaw relied upon by Debtors in the Postpetition Deliveries Motion, in which the Debtors made the same legal argument they now reject. *See* AEC MOT. ¶ 27 (citing Postpetition Deliveries Motion).

4816-6906-6387

business.  Indisputably a benefit was received.  *See In re McBrearty*, 335 B.R. 513, 519 (Bankr. E.D.N.Y. 2005) (holding that "administrative creditors include those [that] supply[] post-petition goods" to the estate) (internal citation and quotation omitted).

19.    Unable to refute this fundamental point, Debtors' objection to the AEC Motion hinges on their argument that, even though Debtors received the goods postpetition, Winners' sales to Debtors do not constitute "postpetition" transactions because title transferred to Debtors prepetition.  *See* AEC OBJ. at 6.  This argument is fundamentally flawed, and conspicuously ignores the Third Circuit's recent *World Imports* decision and basic tenets of statutory interpretation.

20.    Nothing in the decisions cited by Debtors supports their argument.[8]  All of the cited cases are pre-BAPCPA and, as a result, fail to address the impact of Congress's enactment of section 503(b)(9) and the related effects to the statutory scheme for vendor administrative claims.[9]  Congress has determined,  in enacting section 503(b)(9), that vendor claims as to goods received during the 20 days preceding the petition date are entitled to administrative priority under section 503(b)(9).  As discussed *supra*, pursuant to the same reasoning applied in *World Imports*,  Congress likewise envisioned vendor claims for goods received postpetition (*i.e.*, goods received at a <u>later</u> date than those entitled to administrative expense status under 503(b)(9)) to be granted administrative priority status as well (under section 503(b)(1)(A)). No rational harmonization of these two subsections can work otherwise.

---

[8] *See* AEC OBJ. ¶¶ 6–14.

[9] Moreover, *In re K Chemical Corp.*, is further inapposite because the parties stipulated that the vendor delivered the goods in question to the agent of the debtor prepetition.   188 B.R. 89, 95 (Bankr. D. Conn. 1995).  That is not the case here, as Winners only delivered to a common carrier prepetition, and common carriers "do not qualify as agents."  *In re World Imps., Ltd.,* 862 F.3d at 345.  Further, both *In re John Clay & Co., Inc.*, 43 B.R. 797, 810-11 (Bankr. D. Utah 1984) and *In re Nevins Ammunition Inc.*, 79 B.R. 11, 15 (Bankr. D. Idaho 1987) have no bearing on the AEC Motion because the date of "delivery" in those cases was determined by Arizona and Idaho law, respectively.

4816-6906-6387

## III.    RESERVATION OF RIGHTS

21.    As the parties have noted, the AEC Motion with respect to Winners' section 503(b)(9) claims is adjourned until a date no later than 60 days following the Bar Date.  Winners reserves all rights including, without limitation, the right to file an additional reply to the AEC Objection addressing Winners' entitlement to section 503(b)(9) administrative expense claims, the right to take discovery, the right to request an evidentiary hearing, and the right to file a further reply to the AEC Objection addressing the full factual and legal bases for Winners' entitlement to section 503(b)(1)(A) administrative expense claims.

## IV.    CONCLUSION

For the reasons set forth above, Winners respectfully requests the Court: (i) overrule Debtors' objections to the extent set forth in this Initial Reply; (ii) grant the AEC Motion with respect to Winners' section 503(b)(1)(A) claims to the extent set forth in this Initial Reply; and (iii) grant Winners all other relief, whether at law or in equity, to which Winners may be entitled.

Dated:  April 16, 2019

Respectfully submitted,

*/s/   H. Jeffrey Schwartz*
**McKool Smith, P.C.**
One Bryant Park
47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
H. Jeffrey Schwartz
hjschwartz@McKoolSmith.com
James H. Smith
jsmith@McKoolSmith.com
-and-
600 Travis Street, Suite 7000
Houston, TX  77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
Benjamin W. Hugon
bhugon@McKoolSmith.com

*Counsel for Winners Industry Co., Ltd.*

9

4816-6906-6387