Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern Time)
Objection Date and Time: May 14, 2019 at 4:00 p.m. (Eastern Time)

**NORTON ROSE FULBRIGHT US LLP**
Eric Daucher
Francisco Vazquez
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel for FTI Consulting Canada Inc.,*
*in its capacity as court-appointed monitor for*
*Sears Canada Inc. and certain of its affiliates*

**HUGHES HUBBARD & REED LLP**
Neil J. Oxford
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for the Honourable J. Douglas*
*Cunningham, Q.C., as court-appointed*
*litigation trustee for Sears Canada Inc. and*
*Counsel for 1291079 Ontario Limited as class*
*representative of all Sears Hometown Dealer*
*stores*

**ALLEN & OVERY LLP**
Laura R. Hall
Joseph Badtke-Berkow
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6417
Facsimile: (212) 610-6399

*Counsel for Morneau Shepell Ltd., in its*
*capacity as administrator of the Sears Canada*
*Inc. Registered Pension Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY FOR THE PURPOSE OF JOINING SEARS HOLDINGS CORPORATION AS A DEFENDANT IN EXISTING LITIGATION PENDING BEFORE THE ONTARIO SUPERIOR COURT OF JUSTICE (COMMERCIAL LIST) AND TO LIQUIDATE CERTAIN CLAIMS AGAINST SEARS HOLDINGS CORPORATION IN SUCH EXISTING LITIGATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 4

    I.       Sears Canada's Struggles, and the 2013 Dividend ................................. 4

    II.      The Canadian Proceedings ...................................................................... 5

    III.    The Canadian Litigation ......................................................................... 7

           A.      The Monitor Action ...................................................................... 8

           B.      The Litigation Trustee Action ..................................................... 9

           C.      The Plan Administrator Action .................................................. 10

           D.      The Class Action Representative's Claims ................................. 12

    IV.    Current Status of the Canadian Litigation ............................................ 13

    V.      The U.S. Proofs of Claim ...................................................................... 14

JURISDICTION AND VENUE ......................................................................................... 15

RELIEF REQUESTED ...................................................................................................... 15

ARGUMENT ..................................................................................................................... 16

    I.       The Canadian Plaintiffs are Entitled to Relief from the Stay for Cause ............... 16

           A.      Factor 1: Relief Would Result in a Complete Resolution of the Issues .... 18

           B.      Factor 2: Relief Would Not Interfere with the Business or Reorganization of the Debtors .......................................................................... 19

           C.      Factor 4: The Canadian Court is a Specialized Tribunal with the Expertise to Adjudicate the Canadian Plaintiffs' Claims ......................................... 21

           D.      Factor 6: The Canadian Litigation Primarily Involves Claims against Third Parties ............................................................................................... 23

           E.      Factor 7: Relief will Benefit other Creditors by Avoiding the Costs of Duplicative Litigation ............................................................................. 25

i

F.      Factor 8: The Canadian Litigation would Not Result in a Subordinated
        Claim ...........................................................................................................26

G.      Factor 9: The Canadian Litigation would Not Result in an Avoidable
        Judicial Lien ...............................................................................................27

H.      Factor 10: Relief from the Stay will Enhance Judicial Economy by
        Avoiding Duplicative Litigation.................................................................27

I.      Factor 11: Trial has been Scheduled in the Canadian Litigation...............29

J.      Factor 12: The Balance of Harms Weighs Decisively in Favor of Granting
        Relief from the Stay....................................................................................29

II.     International Considerations Also Weigh in Favor of Modifying the Stay...........31

A.      Factor 1: The Canadian Court has Assumed Jurisdiction
        Over the "Res"............................................................................................31

B.      Factor 3: Relief from the Stay is the Only Path to Avoiding Duplicative
        Litigation ....................................................................................................32

C.      Factor 4: The Canadian Court has Prior Jurisdiction ...............................32

D.      Factor 5: Canadian Law Controls...............................................................33

E.      Factor 6: The Canadian Court is an Adequate Alternative Forum............33

NOTICE .......................................................................................................................34

NO PRIOR REQUEST..................................................................................................34

CONCLUSION .............................................................................................................34

## TABLE OF AUTHORITIES

### Cases

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996 (2d Cir.1993)..............................30

*In re Anton*, 145 B.R. 767 (Bankr. E.D.N.Y. 1992) .....................................................passim

*In re Arnott*, 512 B.R. 744 (Bankr. S.D.N.Y. 2014)...........................................27

*In re Blan*, 237 B.R. 737 (B.A.P. 8th Cir. 1999) ..................................................28

*In re Breitburn Energy Partners LP*, 571 B.R. 59 (Bankr. S.D.N.Y. 2017) ....................17

*In re Chatkin*, 465 B.R. 54 (Bankr. W.D. Pa. 2012) ..................................................28, 30

*In re Cicale*, No. 05-14462 (AJG), 2007 WL 1893301 (Bankr. S.D.N.Y. June 29, 2007)29

*In re Garcia*, 584 B.R. 483 (Bankr. S.D.N.Y. 2018)...........................................17

*In re Hakim*, 212 B.R. 632 (Bankr. N.D. Cal. 1997).....................................................31, 33

*In re Hellas Telecomm. (Luxembourg) II SCA*, 535 B.R. 543 (Bankr. S.D.N.Y. 2015).19, 30

*In re Hellas Telecomm. (Luxembourg) II SCA*, 555 B.R. 323 (Bankr. S.D.N.Y. 2016) ...23

*In re Hunter*, 32 B.R. 140 (Bankr. S.D. Fla. 1983) ..................................................28

*In re Koreag, Controle et Revision S.A.*, 130 B.R. 705 (Bankr. S.D.N.Y. 1991).............33

*In re Laventhol & Horwath*, 139 B.R. 109 (S.D.N.Y. 1992) ..........................................28

*In re Lyondell Chem. Co.*, 543 B.R. 428 (Bankr. S.D.N.Y. 2016)....................................22

*In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010) ................33

*In re Mildred Deli Grocery, Inc.*, 2018 WL 1136017 (Bankr. S.D.N.Y. Feb. 28, 2018)..28

*In re N.Y. Med. Grp., P.C.*, 265 B.R. 408 (Bankr. S.D.N.Y. 2001) ...............17, 18, 26, 27

*In re Octaviar Admin. Pty Ltd*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014) ............................32

*In re Project Orange Assoc., LLC*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010) ........................16

*In re Schick*, 232 B.R. 589 (Bankr. S.D.N.Y. 1999) ..........................................20

*In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013)......................................33

*In re SunEdison, Inc.*, 557 B.R. 303 (Bankr. S.D.N.Y. 2016)....................................16, 17

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001)..............................................30

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)...................................30

*LaSala v. UBS, AG*, 510 F. Supp. 2d 213 (S.D.N.Y. 2007) ..............................................23

*Manu Int'l, S.A. v. Avon Prod., Inc.*, 641 F.2d 62 (2d Cir. 1981) ..............................22, 30

*Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139 (2d Cir. 1999).......................................17

*Nat'l Union Fire Ins. Co. of Pittsburgh v. BP Amoco P.L.C.*, 03 Civ. 0200 (GEL), 2003 WL
21180421 (S.D.N.Y. May 20, 2003) ..............................................................................23

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ............................................................30

*Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104 (2d Cir. 2002)..........17

*Seward v. Devine*, 888 F.2d 957 (2d Cir. 1989) .................................................................31

*Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d
1280 (2d Cir. 1990). .......................................................................................................17

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198 (S.D.N.Y.
2002)................................................................................................................................33

## **Statutes**

11 U.S.C. § 105 ....................................................................................................................15

11 U.S.C. § 362 .......................................................................................................15, 16, 17

28 U.S.C. § 1334 ..................................................................................................................15

28 U.S.C. § 1408 ..................................................................................................................15

28 U.S.C. § 1409 ..................................................................................................................15

28 U.S.C. § 157 ....................................................................................................................15

## **Rules**

Fed. R. Bankr. P. 4001 ........................................................................................................15

Fed. R. Bankr. P. 9014 ........................................................................................................15

Local Bankruptcy Rules for the Southern District of New York Rule 4001-1 .................15

## **8**

*Bankruptcy and Insolvency Act*, R.S.C. 1985 ........................................................................ 8

*Companies' Creditors Arrangement Act*, R.S.C. 1985 ...................................................... 1

FTI Consulting Canada Inc., in its capacity as the court-appointed monitor (the "Monitor") for Sears Canada Inc. ("Sears Canada") and certain of its affiliates[1] (collectively with Sears Canada, the "Canadian Debtors") in insolvency proceedings under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"); the Honourable J. Douglas Cunningham, Q.C., in his capacity as the court-appointed litigation trustee for the Canadian Debtors (the "Litigation Trustee"); Morneau Shepell Ltd., in its capacity as administrator (the "Plan Administrator") of the Sears Canada Inc. Registered Pension Plan (the "Canadian Plan"); and 1291079 Ontario Limited as the class representative for the potential class of Sears Hometown Dealer stores (the "Class Action Representative," and, collectively with the Monitor, the Litigation Trustee, and the Plan Administrator,  the "Canadian Plaintiffs") hereby submit this *Motion for Relief from the Automatic Stay for the Purpose of Joining Sears Holdings Corporation as a Defendant in Existing Litigation Pending before the Ontario Superior Court of Justice (Commercial List) and to Liquidate Certain Claims against Sears Holdings Corporation in such Existing Litigation* (the "Motion").  In support of the Motion, the Canadian Plaintiffs respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1.    The relief sought by this motion is straightforward and will facilitate the most efficient and equitable result: resolution in a single proceeding and in a single forum of the

---

[1]    The Canadian Debtors are: Sears Canada; 9370-2751 Quebec Inc.; 191020 Canada Inc.; The Cut Inc.; Sears Contact Services Inc.; Initium Logistics Services Inc.; 9845488 Canada Inc.; Initium Trading and Sourcing Corp.; Sears Floor Covering Centres Inc.; 173470 Canada Inc.; 2497089 Ontario Inc.; 6988741 Canada Inc.; 10011711 Canada Inc.; 1592580 Ontario Limited; 955041 Alberta Ltd.; 4201531 Canada Inc.; 168886 Canada Inc.; and 3339611 Canada Inc.

[2]    Capitalized terms used but not otherwise defined in this preliminary statement shall have the meanings ascribed to them below.

Canadian law-based causes of action brought by the Canadian Plaintiffs arising from the actions of a Canadian Debtor.  The Canadian Litigation arises from the approval by Sears Canada, in November 2013, of an extraordinary CAD509 million dividend for which Sears Canada and its creditors received no benefit.  The fourteen Existing Canadian Defendants—parties who either orchestrated, encouraged, approved, or received the proceeds of the 2013 Dividend—are all non-Debtors in these chapter 11 cases.  While Sears Holdings was the majority shareholder of Sears Canada at the time of the 2013 Dividend, and so received a substantial portion of the proceeds, out of consideration of principles of comity and for the automatic stay imposed by the commencement of these chapter 11 cases, the Canadian Plaintiffs did not immediately name Sears Holdings as a defendant.[3]

2.      Having recently been compelled by this Court's Bar Date Order to preserve their claims against Sears Holdings by filing proofs of claim in these chapter 11 cases, and with the sale of Sears Holdings' assets substantially completed, the Canadian Plaintiffs now request relief from the automatic stay so that Sears Holdings can be joined as a defendant in the Canadian Litigation alongside the other parties that received the proceeds of the 2013 Dividend.  To be clear, the Canadian Plaintiffs are merely seeking to have their claims against Sears Holdings liquidated in the appropriate forum.  They are not seeking to enforce any judgment obtained from the Canadian Court against Sears Holdings outside of the context of these chapter 11 cases.

3.      The Canadian Plaintiffs' claims against Sears Holdings will need to be resolved in one forum or another, and the Canadian Court is by far the most logical place for the claims to be adjudicated.  Fundamentally, it is more efficient and fairer to everyone involved to have a single,

---

[3]   The Class Action was commenced on October 21, 2015 prior to the commencement of Sears Holdings' chapter 11 case. Following the petition date, the Class Action Representative acted in accordance with the automatic stay.

centralized litigation regarding the propriety of the 2013 Dividend than it is to split that litigation between the Canadian Court and this Court. The natural home for that centralized litigation is the Canadian Court, where the Canadian Plaintiffs, as fiduciaries to a Canadian insolvency estate, a Canadian pension plan, and a potential class of harmed Canadian entities certified under Canadian law, are already proceeding under Canadian law as against fourteen non-Debtor defendants.

4.    The many factors that courts consider when deciding whether to grant a creditor relief from the automatic stay all point clearly to granting the relief sought by this Motion. Considerations of judicial economy and burdens on the parties weigh particularly heavily in favor of relief in this instance. The Canadian Court provides the only forum in which the Canadian Plaintiffs' claims can be resolved as against *all* parties, so lifting the automatic stay would result in one unified litigation. If the stay were to remain in place, the parties would have to conduct two all but identical litigations over precisely the same issues of fact and Canadian law and incur the costs associated with such duplicative litigation. Additionally, the Canadian Plaintiffs' claims all arise under Canadian law and, in many instances, raise unique or complex questions of Canadian law. While this Court is, of course, capable of applying foreign law, a specialized Canadian court is already in the process of addressing the very same questions of law and fact.

5.    The Canadian Plaintiffs have engaged in two weeks of good faith discussion with counsel for the Debtors and the Official Committee of Unsecured Creditors in an effort to achieve a consensual resolution of the relief sought through this Motion. Unfortunately, at the conclusion of those discussions, counsel for the Debtors informed the Canadian Plaintiffs that the Debtors were unwilling to consent to the relief sought herein. In light of the ongoing Canadian

Litigation, and little further prospect of a consensual modification of the stay, the Canadian Plaintiffs were compelled to bring the Motion at this time.

6.       The Canadian Plaintiffs respectfully request that the Court modify the automatic stay to allow them to join Sears Holdings as a defendant in the Canadian Litigation (with the exception of the Class Action where Sears Holdings is already a defendant) and to otherwise prosecute such causes of action before the Canadian Court to determine the validity and amount of the Canadian Plaintiffs' claims against Sears Holdings.

## FACTUAL BACKGROUND

### I.    Sears Canada's Struggles, and the 2013 Dividend

7.       From the early 1950s until it ceased operations in early 2018, Sears Canada was a participant in the Canadian retail market.  Throughout that period, it operated from a head office located in Toronto, Ontario.  Although Sears Canada was a publicly traded company, at all material times with respect to the causes of action that are the subject of this Motion, Sears Holdings Corporation ("Sears Holdings") beneficially owned a majority of Sears Canada's outstanding shares.[4]

8.       Beginning in 2011, Sears Canada's financial performance began to decline sharply.[5]  Sears Canada's management recognized that drastic, transformative action would be required for Sears to reestablish a foothold in the Canadian retail market.  If transformative action was not taken, Sears could not expect to reemerge as a successful retailer.  Sears failed to take the necessary steps to reinvigorate its business.

---

[4]    *See* Declaration of Steven Bissell in Support of Motion for Relief from the Automatic Stay (the "Monitor's Declaration") ¶ 3.

[5]    *See* Monitor's Declaration ¶ 4.

9.      On September 23, 2013, the board of directors of Sears Canada (the "Board") received a series of management presentations directly addressing Sears Canada's deteriorating operational and financial performance (the "2013 Board Presentations").  Among other things, the 2013 Board Presentations reported that:

- sales continued to decline across Sears Canada's business;

- based on year-to-date current trends, Sears Canada's projected EBITDA by 2016 would be negative CAD105 million; and

- Sears Canada was struggling operationally.[6]

10.     Despite these red flags (among others), on November 18, 2013, the Board unanimously resolved to declare an extraordinary dividend of CAD5.00 per common share, for an aggregate dividend payment of approximately CAD509 million (the "2013 Dividend").[7]  The dividend was paid in the face of significant outstanding indebtedness to Sears Canada's creditors and an underfunded Canadian Plan.

11.     As a result of the 2013 Dividend, Sears Holdings was paid approximately CAD259 million, while certain other related parties—namely, ESL (as defined below) and Lampert (as defined below)—were collectively paid approximately CAD140.9 million, resulting in approximately CAD400 million being diverted from the business of Sears Canada for the benefit of Sears Canada's largest shareholders.[8]

## II.    The Canadian Proceedings

12.     On June 22, 2017, the Canadian Debtors, including Sears Canada, sought and obtained an order (as amended and restated on July 13, 2017, the "Initial Order") from the

---

[6]     *See* Monitor's Declaration ¶ 5.

[7]     *See* Monitor's Declaration ¶ 6.

[8]     *See* Monitor's Declaration ¶ 7.

Canadian Court providing them protection under the CCAA.[9]  Pursuant to the Initial Order, the

Canadian Court, among other things, appointed the Monitor to oversee the business and financial

affairs of the Canadian Debtors.

13.    Following entry of the Initial Order, the Canadian Debtors liquidated substantially

all of their assets, except certain real property and litigation claims, and ceased their ordinary

course business operations.[10]  On March 2, 2018, the Canadian Court appointed Lax O'Sullivan

Lisus Gottlieb LLP as Litigation Investigator (the "Litigation Investigator"), with a mandate to

identify and report on any rights or claims that the Canadian Debtors and/or any creditors of the

Canadian Debtors may have against any parties.[11]

14.    In accordance with their duties, the Monitor and the Litigation Investigator

reviewed certain material transactions, payments and dividends entered into, made, or declared

by the Canadian Debtors in the period prior to their filing for protection under the CCAA.  Based

upon their review, on November 5, 2018, the Monitor and the Litigation Investigator issued their

respective reports concluding that the estates of the Canadian Debtors and the Plan Administrator

should pursue, among other things, claims related to the 2013 Dividend against (a) Edward S.

Lampert ("Lampert"); (b) his funds ESL Investments Inc.; ESL Partners, LP; SPE I Partners, LP;

SPE Master I, LP; and ESL Institutional Partners, LP (collectively, "ESL" or the "ESL

Entities"); and (c) certain former directors of Sears Canada.[12]

---

[9]    *See* Monitor's Declaration ¶ 8.

[10]    *See* Monitor's Declaration ¶ 10.

[11]    *See* Monitor's Declaration ¶ 11.

[12]    In recognition of principles of comity and the automatic stay imposed by the commencement
of Sears Holdings' chapter 11 case, the Canadian Plaintiffs did not immediately bring suit
against Sears Holdings.

15.    The Litigation Investigator also concluded that it would be appropriate to seek the appointment of a litigation trustee as an officer of the Canadian Court to direct certain litigation on behalf of the Canadian Debtors.    Accordingly, the Canadian Court terminated the appointment of the Litigation Investigator and appointed the Litigation Trustee, who (on behalf of the Canadian Debtors' estates) was empowered to commence certain litigation in the Canadian Court relating to the 2013 Dividend.[13]

16.    Pursuant to a separate order issued on December 3, 2018, the Monitor was itself authorized to commence additional litigation for the benefit of the Canadian Debtors.[14]  Also on December 3, 2018, the Canadian Court issued a Governance Protocol and Stay Extension Order, pursuant to which the Monitor is overseeing the remaining wind-down of the Canadian Debtors.[15]

## III.    The Canadian Litigation

17.    On December 19, 2018, in accordance with the orders of the Canadian Court, the Monitor, the Litigation Trustee, and the Plan Administrator issued the following claims in Canada:

- a Statement of Claim (the "Monitor Statement of Claim") by the Monitor against ESL Investments Inc.; ESL Partners, LP; SPE I Partners, LP; SPE Master I, LP; ESL Institutional Partners, LP; Edward Lampert; William Harker; and William Crowley under Court File No. CV-18- 00611219-00CL (the "Monitor Action");

- a Statement of Claim (the "Litigation Trustee Statement of Claim") by Sears Canada Inc., through the Litigation Trustee, against ESL Investments Inc.; ESL Partners, LP; SPE I Partners, LP; SPE Master I, LP; ESL Institutional Partners, LP; Edward Lampert; Ephraim J. Bird; Douglas Campbell; William Crowley; William Harker; R. Raja Khanna; James McBurney; Deborah Rosati; and Donald

---

[13]    *See* Monitor's Declaration ¶ 13.

[14]    *See* Monitor's Declaration ¶ 14.

[15]    *See* Monitor's Declaration ¶ 10.

Ross under Court File No. CV-18- 00611214-00CL (the "Litigation Trustee Action"); and

- a Statement of Claim (the "Plan Administrator Statement of Claim") against ESL Investments Inc.; ESL Partners, LP; SPE I Partners, LP; SPE Master I, LP; ESL Institutional Partners, LP; Edward S. Lampert; William Harker; William Crowley; Donald Campbell Ross; Ephraim J. Bird; Deborah E. Rosati; R. Raja Khanna; James McBurney; and Douglas Campbell under Court File No. CV-18-00611217-00CL (the "Plan Administrator Action").[16]

18.    These three actions are being case-managed by the Canadian Court together with the action previously commenced on October 21, 2015 by the Class Action Representative by Statement of Claim (the "Class Action Representative Statement of Claim") against Sears Canada Inc., Sears Holdings Corporation, ESL Investments Inc., William C. Crowley, William R. Harker, Donald Campbell Ross, Ephraim J. Bird, Deborah E. Rosati, R. Raja Khanna, James McBurney and Douglas Campbell under Court File Number  4114/15 (the "Class Action," and collectively with the Monitor Action, the Litigation Trustee Action, and the Plan Administrator Action, the "Canadian Litigation").[17]

19.    The Canadian Litigation is being jointly case-managed by the Canadian Court because the actions revolve around a single joint issue arising from the same underlying facts: the propriety of the 2013 Dividend.  The individual actions can be summarized as follows:

A.    The Monitor Action

20.    A copy of the Monitor's Statement of Claim is attached as Exhibit G to the Monitor's Declaration.  The Monitor has alleged that the 2013 Dividend was a transfer at undervalue for purposes of section 96 of Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3 (as amended, the "BIA"), as incorporated into the CCAA by section 36.1 thereof, and is

---

[16]    *See* Monitor's Declaration ¶ 15.

[17]    *See* Monitor's Declaration ¶ 16.

therefore subject to the remedies available under section 96 of the BIA.[18]   The Monitor has named the ESL Entities (*i.e.*, ESL Investments Inc.; ESL Partners, LP; SPE I Partners, LP; SPE Master I, LP; and ESL Institutional Partners, LP), Lampert, William Harker (a former director of Sears Canada), and William Crowley (also a former director of Sears Canada) as defendants (collectively, the "Monitor Action Defendants"), and is seeking, among other things, a declaration that those defendants are jointly and severally liable for the entirety of the CAD509 million paid pursuant to the 2013 Dividend.

21.    The Monitor's claim asserts, among other things, that the 2013 Dividend was a transfer at undervalue (as defined in the BIA) to non-arm's-length parties and that Sears Canada intended, through the 2013 Dividend, to defraud, defeat or delay creditors.   In particular, the Monitor has asserted that the 2013 Dividend was:

- a non-arm's-length transaction made outside of the ordinary course of business;

- paid in the face of significant outstanding indebtedness to Sears Canada's creditors, including pensioners, while (a) Sears Canada had no plan to repay those debts, (b) the Board could only reasonably have expected Sears Canada to experience significant negative cash flow going forward; and

- paid in circumstances that raised additional "red flags," including undue haste, insufficient disclosures to the Board, the absence of independent legal advice regarding the Board's fiduciary duties, damage to the business from the divestiture of Sears Canada's key assets, clear conflicts of interest on the Board, and that the 2013 Dividend was driven by Lampert and certain other individual defendants in order to satisfy ESL's urgent need for funds.[19]

B.    The Litigation Trustee Action

22.    A copy of the Litigation Trustee's Statement of Claim is attached as Exhibit H to the Monitor's Declaration.   The Litigation Trustee has alleged that (i) the 2013 Dividend was a

---

[18]    *See* Monitor Statement of Claim ¶ 1(a)(i).

[19]    *See* Monitor Statement of Claim ¶ 62.

breach of the fiduciary duties owed by the Board; (ii) Lampert and ESL knowingly and wrongfully encouraged and assisted the breach by the Board; (iii) Lampert and ESL knowingly and wrongfully retained the distributions they received from the 2013 Dividend and were unjustly enriched by them; and (iv) all Litigation Trustee Action Defendants (as defined below) conspired to generate funds for and authorize the 2013 Dividend for the benefit of ESL, Lampert, and Sears Holdings.[20]   The Litigation Trustee has named all of the ESL Entities (*i.e.*, ESL Investments Inc.; ESL Partners, LP; SPE I Partners, LP; SPE Master I, LP; and ESL Institutional Partners, LP), Lampert, Ephraim J. Bird (a former director of Sears Canada and, at various times, CFO), Douglas Campbell (the former COO and CEO of Sears Canada and a director), William Crowley, William Harker, R. Raja Khanna (a former director of Sears Canada), James McBurney (a former director of Sears Canada), Deborah Rosati (a former director of Sears Canada), and Donald Ross (a former director of Sears Canada) as defendants (collectively, the "Litigation Trustee Action Defendants"), and is seeking, among other things, a declaration that those defendants are jointly and severally liable for the entirety of the CAD509 million transferred pursuant to the 2013 Dividend.[21]

C.    The Plan Administrator Action

23.    A copy of the Plan Administrator Statement of Claim is attached as Exhibit I to Monitor's Declaration.  The Plan Administrator has named each of the Litigation Trustee Action Defendants as defendants in the Plan Administrator Action (as defendants in such action, the "Plan Administrator Action Defendants," and together with the Litigation Action Defendants and the Monitor Action Defendants, the "Existing Canadian Defendants").  The Plan Administrator Action is based, in significant part, on the fact that Sears Canada was the administrator of the

---

[20]    *See* Litigation Trustee Statement of Claim ¶¶ 1(a)(i), 90, 1(c), 97.

[21]    *See* Litigation Trustee Statement of Claim ¶ 1(a).

Canadian Plan and failed to fulfill its duties under Canadian law in that capacity, induced and/or knowingly assisted by the Existing Canadian Defendants.[22]  In the Plan Administrator Action, the Plan Administrator alleges, *inter alia*, that the then-incumbent directors on the Board (the "Director Defendants")[23] approved and/or acquiesced to the 2013 Dividend without proper regard to their obligations as directors of the then Canadian Plan administrator (Sears Canada) and, in doing so, breached duties owed to the Canadian Plan and its beneficiaries under Canadian law, and induced and/or knowingly assisted in the breach of fiduciary duties owed to the Canadian Plan and its beneficiaries.[24]  In addition, the Plan Administrator alleges that the non-debtor shareholders of Sears Canada (the "Shareholder Defendants")[25] and the then CFO of Sears Canada, Mr. Ephraim J. Bird, induced Sears Canada and the Director Defendants in breaching such duties.[26]  The Plan Administrator also alleges that the Shareholder Defendants are in knowing receipt of assets transferred to them in breach of fiduciary duties and have been unjustly enriched at the expense of the Canadian Plan and its beneficiaries, and seeks to have the Shareholder Defendants account for all amounts so received for the benefit of the Canadian Plan's beneficiaries.[27] The Plan Administrator claims that the authorization and payment of the 2013 Dividend was oppressive and unfairly prejudicial to the interests of the Canadian Plan and

---

[22]  *See* Plan Administrator Statement of Claim ¶ 38.

[23]  The Director Defendants at the time the 2013 Dividend was authorized include: William Harker, William Crowley, Donald Campbell Ross, Deborah E. Rosati, R. Raja Khanna, James McBurney, and Douglas Campbell.

[24]  *See* Plan Administrator Statement of Claim ¶¶ 36, 38.

[25]  The Shareholder Defendants are: the ESL Entities, Lampert, William Harker, Deborah Rosati, R. Raja Khanna, and James McBurney.

[26]  *See* Plan Administrator Statement of Claim ¶ 39.

[27]  *See* Plan Administrator Statement of Claim ¶ 41.

its beneficiaries.[28]  In summary, the Plan Administrator has asserted claims and causes of action

under Canadian law against the Existing Canadian Defendants including, but not limited to, the

following:

- breaches of the duty of care and fiduciary duties owing directly to the Canadian Plan and its beneficiaries;

- inducement and/or knowing assistance of the Director Defendants', Mr. Bird's, and Sears Canada's breaches of fiduciary duties owed to the Canadian Plan and its beneficiaries;

- knowing receipt of assets transferred from Sears Canada in breach of the fiduciary duties owed to the Canadian Plan and its beneficiaries;

- unjust enrichment at the expense of the Canadian Plan and its beneficiaries; and

- compensation or restitution of the amount required to fully fund the benefits promised under the Canadian Plan pursuant to section 241 of the *Canada Business Corporations Act*.

D.    The Class Action Representative's Claims

24.    A copy of Class Action Representative Statement of Claim is attached as Exhibit

J to the Monitor's Declaration.  The Class Action Representative has named Sears Canada Inc.,

Sears Holdings Corporation, ESL Investments Inc., William C. Crowley, William R. Harker,

Donald Campbell Ross, Ephraim J. Bird, Deborah E. Rosati, R. Raja Khanna, James McBurney

and Douglas Campbell as defendants (collectively, the "Class Action Defendants").  The Class

Action Representative has alleged that the Class Action Defendants engaged in serial asset

stripping of Sears Canada's best assets, removing these from Sears Canada and away from the

claims of creditors, including the proposed class members, so as to monetize these assets and

have those funds delivered to ESL Investment Inc. and Sears Holdings by way of the 2013

---

[28]    *See* Plan Administrator Statement of Claim ¶ 42.

Dividend and before Sears Canada's insolvency proceedings.[29]  The Class Action Representative further alleges that the authorization and payment of the 2013 Dividend was oppressive or unfairly prejudicial to or unfairly disregarded the interests of the proposed class, and on this basis, the Class Action Representative is seeking a declaration that the Class Action Defendants are jointly and severally liable in the amount of CAD80 million, representing the harm to the proposed class.[30]

## IV.    Current Status of the Canadian Litigation

25.    In February 2019, ESL, Lampert, and certain former directors filed motions seeking pre-pleading production of documents and particulars in connection with the Litigation Trustee Action and the Monitor Action.  The motions were heard during the week of March 18, 2019 and the Canadian Court dismissed those motions.  On March 18, 2019, the same defendants filed motions to strike[31] certain portions of the Litigation Trustee's claims.  The motions are currently pending and scheduled to be heard on April 17 and 18, 2019.[32]  The case management judge managing all of the Canadian Litigation has directed that statements of defence[33] as to all four actions are due by May 3, 2019.

26.    In addition, the parties have conducted several case conferences and there has been a preliminary delivery of limited documents in the Canadian Litigation to the defendants. The parties have been directed to complete their production of documents by June 30, 2019, oral

---

[29]  *See* Class Action Representative Statement of Claim ¶ 22.

[30]  *See* Class Action Representative Statement of Claim ¶¶ 1(c), 23.

[31]  A motion to strike is the rough equivalent of a motion to dismiss in the United States, although limited to portions of a claim rather than the entirety of a claim.

[32]  The Class Action Representative's motion to certify the class is also scheduled to be heard on April 17 and 18, 2019.

[33]  A statement of defence is the Canadian equivalent of an answer.

13

examinations for discovery are tentatively scheduled for September 2019, and a joint trial is currently scheduled to begin on February 3, 2020. If the Court grants the relief requested herein and authorizes the Canadian Plaintiffs to add Sears Holdings to the Canadian Litigation, the Canadian Plaintiffs expect that the existing schedule may need to be modified, but it is not expected that any resulting extension of the trial timeline will be substantial.

**V.    The U.S. Proofs of Claim**

27.    On October 15, 2018, Sears Holdings and the other U.S. Debtors filed petitions with this Court commencing voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Canadian Plaintiffs have multiple causes of action against Sears Holdings arising from the same facts and circumstances at issue in the Canadian Litigation. However, because of the commencement of these chapter 11 cases, Sears Holdings was not initially named as a defendant in the Canadian Litigation, with the exception of the Class Action, which was commenced, and included Sears Holdings as a defendant, prior to the petition date.

28.    On February 22, 2019, this Court entered an order (the "Bar Date Order") establishing April 10, 2019 as the last day for non-governmental entities to submit proofs of claim against the U.S. Debtors. Pursuant to the Bar Date Order, any party failing to timely file its claim shall "be forever barred, estopped, and enjoined from asserting such claims against the Debtors, their property, or their estates . . . ." Bar Date Order ¶ 10.

29.    Although the Canadian Litigation is already subject to the exclusive control and jurisdiction of the Canadian Court, under the compulsion of the Bar Date Order the Canadian Plaintiffs have submitted proofs of claim (collectively, the "Proofs of Claim") against Sears Holdings on account of its liability arising from the facts at issue in the Canadian Litigation.[34]

---

[34]    *See* Monitor's Declaration ¶ 20.

## JURISDICTION AND VENUE

30.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

31.    The bases for the relief requested herein are Bankruptcy Code sections 105 and 362; Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## RELIEF REQUESTED

32.    By this Motion, the Canadian Plaintiffs seek entry of an order, substantially in the form attached hereto as Exhibit "A," granting the Canadian Plaintiffs relief from the automatic stay for purposes of (i) joining Sears Holdings as a defendant in each of the four actions that comprise the Canadian Litigation (with the exception of the Class Action where Sears Holdings is already a defendant), which are currently pending before the Canadian Court, and (ii) prosecuting such causes of action before the Canadian Court to determine the validity and amount of the Canadian Plaintiffs' claims against Sears Holdings.  The Canadian Plaintiffs (other than the Class Action Representative) have prepared proposed amended statements of claim to be issued in the event the relief requested herein is granted, and blacklines showing changes against the as-filed statements of claim are attached as exhibits to the Monitor's Declaration as follows: (i) Exhibit K (the "Monitor's Proposed Amended Statement of Claim"); (ii) Exhibit L (the "Litigation Trustee's Proposed Amended Statement of Claim"); and (iii) Exhibit M (the

"Plan Administrator's Proposed Amended Statement of Claim").[35]  For the avoidance of doubt, the Canadian Plaintiffs are not requesting that the automatic stay be modified in a manner that would allow them to enforce any judgment obtained against Sears Holdings in the Canadian Litigation outside of these chapter 11 cases.

## ARGUMENT

## I.   The Canadian Plaintiffs are Entitled to Relief from the Stay for Cause

33.   Section 362(d)(1) of the Bankruptcy Code states that a court "shall" grant relief from the automatic stay where "cause" to do so exists.  11 U.S.C. 362(d)(1).  The term "cause," however, is not defined in the Bankruptcy Code. *See In re SunEdison, Inc.*, 557 B.R. 303, 307 (Bankr. S.D.N.Y. 2016).  Instead, "'[c]ause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Project Orange Assoc., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (internal quotation omitted).  Where, as here, "a party seeks stay relief to commence or continue litigation in another forum, the bankruptcy court must weigh the request against the following factors in determining if 'cause' exists:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are

---

[35]   A proposed amended statement of claim for the Class Action is not attached because the Class Action Representative already named Sears Holdings as a defendant.

> ready for trial in the other proceeding; and (12) impact of the stay
> on the parties and the balance of harms.

*In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (quoting *Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

34.     The party requesting modification of the automatic stay only bears the burden of making a *prima facie* case that cause exists—the debtor bears the ultimate burden of persuading the court that cause is absent.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999); *Sonnax*, 907 F.2d at 1285); *see also In re Garcia*, 584 B.R. 483, 488-89 (Bankr. S.D.N.Y. 2018) ("In addition to establishing standing, to prevail on a motion to lift the automatic stay under 362(d) a movant must establish its *prima facie* case that there is cause to lift the stay . . . . Once the creditor makes a *prima facie* case, the burden shifts to the debtor on all other issues."); *SunEdison*, 557 B.R. at 308 ("The movant bears the initial burden of making a *prima facie* showing of 'cause' for relief from the stay, but the ultimate burden of persuasion rests with the debtor to show an absence of 'cause.'"); 11 U.S.C. § 362(g)(2).  Such a *prima facie* case can be established "by demonstrating that several *Sonnax* factors favor stay relief."  *N.Y. Med. Grp.*, 265 B.R. at 413.  Not all of the *Sonnax* factors are relevant in every case.  *See Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002); *Mazzeo*, 167 F.3d at 143. Indeed, in *Sonnax* itself the Second Circuit found only four of the factors to be relevant.  *See Sonnax*, 907 F.2d at 1286 ("We believe four of the . . . factors are relevant to the instant case"). Moreover, the court need not accord equal weight to the factors that are relevant.

35.     In this instance, cause exists to lift the stay because no less than ten of the *Sonnax*

factors weigh in favor of modifying the stay.  The remaining two factors are either inapplicable,

or are neutral.  No factors weigh against modifying the stay.

A.     Factor 1: Relief Would Result in a Complete Resolution of the Issues

36.     The first *Sonnax* factor favors granting the Canadian Plaintiffs relief from the stay

because adding Sears Holdings as a defendant in the already pending Canadian Litigation and

allowing the Class Action to proceed as against Sears Holdings provides the only opportunity for

affording complete relief as against all parties in one forum.  The Canadian Plaintiffs are

currently pursuing the Canadian Litigation against the Existing Canadian Defendants, who

consist of fourteen separate non-Debtors.[36]  The Canadian Plaintiffs have also submitted the

Proofs of Claim, which are premised on the very same causes of action and underlying facts,

against Sears Holdings.[37]  Assuming that Sears Holdings intends to contest the Proofs of Claim,

those claims will need to be litigated and liquidated.

37.     Courts in this District have regularly recognized that relief from the stay may be

appropriate where a non-bankruptcy court is the only forum in which the rights of all parties to a

dispute can be collectively adjudicated.  *See, e.g., N.Y. Med. Grp.*, 265 B.R. at 413 (finding that

the state court's ability to grant complete relief to all parties, including third parties, weighed in

favor of lifting the stay).  In this instance, the Canadian Court is the **only** forum where the

liability of all of the parties can be completely determined.[38]  Because the Existing Canadian

---

[36]    *See* Monitor Statement of Claim ¶¶ 1(a), 3-7; Litigation Trustee's Proposed Amended
Statement of Claim ¶¶ 16.1-27; Plan Administrator's Proposed Amended Statement of Claim
¶¶ 1(a)(i)-(iii).

[37]    *See* Proof of Claim Nos. 16293, 16269, 16804, and 1719.

[38]    The Canadian Court is, of course, also the logical forum given that the Canadian Plaintiffs'
claims are all governed by Canadian law, and focus on uniquely Canadian-law causes of

Defendants are non-Debtors and are already subject to litigation before the Canadian Court, their liability is simply not susceptible to determination by this Court, through the proof-of-claim adjudication process or otherwise.  If the automatic stay is not modified, the Canadian Plaintiffs will be required to litigate essentially identical claims against the fourteen Existing Canadian Defendants in Ontario, and then again against Sears Holdings in this Court.  By contrast, if the stay is modified, the Canadian Court will be perfectly capable of resolving the issue as to all parties.  Accordingly, the first *Sonnax* factor weighs heavily in favor of granting the Canadian Plaintiffs relief from the stay.[39]

        B.        Factor 2: Relief Would Not Interfere with
                the Business or Reorganization of the Debtors

        38.      The second *Sonnax* factor also supports modifying the stay.  At this stage, the U.S. Debtors' only "going concern" assets have been sold.[40]  There is no possibility that adding Sears Holdings as a defendant in the Canadian Litigation or allowing the Class Action to move forward against Sears Holdings will interfere with the ongoing management of its business because Sears Holdings simply has no business to manage.  To the contrary, the U.S. Debtors

---

action.  *See In re Hellas Telecomm. (Luxembourg) II SCA*, 535 B.R. 543, 591 (Bankr. S.D.N.Y. 2015).

[39] Nor is this conclusion altered by the fact that certain of the Canadian Plaintiffs are seeking to join Sears Holdings as a defendant to existing litigation, rather than seeking relief to allow litigation in which Sears Holdings is already a defendant to continue.  *See In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) (permitting relief from the stay to join debtor-defendant to existing litigation where non-bankruptcy action would result in a complete resolution of the issues).

[40] *See Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [Docket No. 2507].

now intend to liquidate. Accordingly, there is no further reorganization with which the Canadian Litigation *could* interfere.

39.    Nor is there any reasonable likelihood that granting the requested relief would delay distributions to creditors, which some courts in this District have suggested is an important consideration in determining whether to grant relief from the stay. *See, e.g., In re Schick*, 232 B.R. 589, 601 (Bankr. S.D.N.Y. 1999). The U.S. Debtors have not yet proposed a plan in these chapter 11 cases, and have recently requested a second extension of the exclusive periods in which to file and solicit acceptances of a chapter 11 plan. Moreover, the primary remaining assets of the U.S. Debtors are, themselves, potential claims and causes of action.[41] These claims will need to be prosecuted (or settled) before final distributions to creditors can be made. As of the date of this Motion, however, standing has not yet been granted and the claims themselves have not yet been commenced. Indeed, it has not yet even been determined which estate fiduciary will be responsible for prosecuting the causes of action.[42] By contrast, the Canadian Litigation has already been authorized by the Canadian Court,[43] has been commenced,[44] and is currently set for trial beginning on February 3, 2020.[45] Thus, the Canadian Litigation is unlikely to delay distributions in these chapter 11 cases.

---

[41]    *See Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. for Entry of an Order Granting (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims on Behalf of the Debtors' Estates and (II) Non-Exclusive Settlement Authority in Respect of such Claims* [Docket No. 1765].

[42]    *Id.*

[43]    *See* Monitor's Declaration ¶¶ 13-15; Monitor's Declaration Exhibits E and F.

[44]    *See* Monitor Statement of Claim p. 1; Litigation Trustee Statement of Claim p. 1; Plan Administrator Statement of Claim ¶ 1; Class Action Representative Statement of Claim p. 1.

[45]    *See* Monitor's Declaration ¶ 19. Although a schedule has been established for the Canadian Litigation, the Canadian Plaintiffs recognize that modifications may be required under applicable Canadian procedures once Sears Holdings is added, and the Canadian Plaintiffs do

40.    Finally, the mere fact that Sears Holdings will need to incur costs in connection with the Canadian Litigation does not constitute interference with these chapter 11 cases.  Courts in this District universally hold that the mere incurrence of costs is not "regarded as constituting 'great prejudice,' precluding relief from the stay."  *Anton*, 145 B.R. at 770.   Were that the standard, relief from the stay would never be available as litigation necessarily entails costs.  In addition, Sears Holdings will need to incur costs in connection with the Canadian Plaintiffs' claims regardless of the forum in which they are determined, and the already commenced, jointly managed and scheduled Canadian Litigation is likely to prove more cost effective for the Debtors than pursuing a new contested matter to determine the Canadian Plaintiffs' claims, which would be required if the matter were to proceed before this Bankruptcy Court.  Further, even if the automatic stay were not modified, Sears Holdings would still need to incur separate costs in monitoring and responding to discovery requests in the Canadian Litigation, a fact illustrated by their current retention of Canadian Counsel.

C.    Factor 4: The Canadian Court is a Specialized Tribunal with
the Expertise to Adjudicate the Canadian Plaintiffs' Claims

41.    The fourth *Sonnax* factor weighs particularly heavily in favor of modifying the stay to allow the Canadian Plaintiffs' claims against Sears Holdings to be liquidated by the Canadian Court through the Canadian Litigation.  Without exception, the claims asserted by the Canadian Plaintiffs against Sears Holdings are based on Canadian law, with many of the central claims in the Canadian Litigation premised on uniquely Canadian law causes of action pursuant to: (i) two Canadian federal insolvency statutes, the CCAA and the BIA; and (ii) provisions of

---

not seek through the Motion any relief that would affect Sears Holdings' right to seek such modification, to the extent such right exists.

Canadian corporate and pension law that have no direct counterpart under U.S. law.[46]   The Canadian Court, which has already authorized the commencement of these particular causes of action against the Existing Canadian Defendants, is without question best-positioned to decide these issues.

42.    The Canadian Court that is hearing the Canadian Litigation is a specialized commercial division of the Ontario Superior Court of Justice.   The claims asserted in the Canadian Litigation raise specialized issues under Canadian bankruptcy, corporate, and pension law.   The Canadian Court is particularly well suited to hear these disputes and was established specifically to deal with these types of issues, among others.   In addition, the Canadian Court has established a case management process for the Canadian Litigation to assist the parties in moving these matters forward efficiently and without delay.

43.    The mere fact that the causes of action at issue are governed by foreign law would weigh in favor of granting relief from the stay, even if only modestly.   *See In re Lyondell Chem. Co.*, 543 B.R. 428, 460 (Bankr. S.D.N.Y. 2016) (finding that need to apply foreign law to a dispute "modestly" "weigh[ed] in favor of dismissal" on forum *non conveniens* grounds).   Most obviously, litigating the Canadian Plaintiffs' claims against Sears Holdings in this Court would create additional burden by requiring the parties to introduce expert testimony on Canadian law. *Cf. Manu Int'l, S.A. v. Avon Prod., Inc.*, 641 F.2d 62, 68 (2d Cir. 1981) (requiring proof of foreign law constituted a burden on the court, albeit a non-dispositive burden under the facts of the case).   The Canadian Court, however, would need no such evidence.

---

[46]    *See, e.g.,* Monitor's Proposed Amended Statement of Claim ¶¶ 1, 71; Litigation Trustee's Proposed Amended Statement of Claim ¶ 101; Plan Administrator's Proposed Amended Statement of Claim ¶¶ 1(c), 44.

44.    This Court can, of course, in appropriate circumstances, decide questions of foreign law. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. BP Amoco P.L.C.*, 03 Civ. 0200 (GEL), 2003 WL 21180421, at *10 (S.D.N.Y. May 20, 2003) (finding that need to apply English law, without more, did not mandate dismissal on forum *non conveniens* grounds).  But this is not such a case.  Courts in this District have consistently recognized a strong preference for allowing foreign courts, in the first instance, to decide questions of foreign law, rather than proceeding in parallel. *See, e.g., In re Hellas Telecommunications (Luxembourg) II SCA*, 555 B.R. 323, 350 (Bankr. S.D.N.Y. 2016) ("It is preferable to allow the U.K. court to decide a matter of its own law, especially when the issue would be a matter of first impression."); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 234 (S.D.N.Y. 2007) ("My deciding a complex and unsettled issue of Swiss law is a powerful factor weighing in favor of dismissal.  I therefore conclude that the public interest strongly favors Switzerland.").  There is simply no compelling reason for a U.S. Bankruptcy Court to decide the complex issues of Canadian law raised in the Canadian Litigation—however well-equipped it might be to apply foreign law—when a specialized division of the Canadian Court—which is indisputably ***better***-equipped to resolve these unique questions of Canadian law—is already in the process of doing so.

D.    <u>Factor 6: The Canadian Litigation Primarily Involves Claims against Third Parties</u>

45.    The sixth *Sonnax* factor also weighs heavily in favor of granting relief from the stay because the Canadian Litigation primarily involves claims against third parties.  As noted in the analysis regarding the first *Sonnax* factor, the Canadian Litigation is already underway against the fourteen Existing Canadian Defendants, all of whom are non-Debtors, with respect to the same set of facts as will be applicable to the claims against Sears Holdings.[47]  Even setting

---

[47]    *See* Monitor Statement of Claim p. 1.

aside the fact that third party, non-debtor Existing Canadian Defendants greatly outnumber the lone Debtor-defendant that the Canadian Plaintiffs wish to join to the actions or to proceed against, the claims are unquestionably not *primarily* about the conduct of Sears Holdings. Although Sears Holdings was certainly a relevant participant in the transaction giving rise to the Canadian Litigation and the recipient of approximately CAD259 million of the 2013 Dividend, and so would appropriately be a defendant, the focus of the claims is squarely on the actions of the Existing Canadian Defendants, both directly and in some cases through Sears Holdings, and on Sears Canada, as the party that declared the 2013 Dividend.

46.     For example, the Monitor's claim as against Sears Holdings arises from the allegation that in paying the 2013 Dividend, ***Sears Canada*** intended to defeat, delay or defraud creditors and that Sears Holdings, as a non-arm's-length party, received a portion of the 2013 Dividend. The issues that draw Sears Holdings into the Monitor's claim are not controversial and are not likely to be disputed: Sears Holdings held approximately 51% of Sears Canada's outstanding stock at the time of the 2013 Dividend and, as a result, received a substantial portion of the proceeds of the 2013 Dividend.

47.     The claims of the other Canadian Plaintiffs similarly make clear that the focus of the claims is primarily on the conduct of the non-Debtor defendants. The Litigation Trustee, for example, has alleged that the action arose from the fact that "***ESL*** received a large number of redemption requests from investors," which "were payable in 2013."[48]  "***To help ESL*** fund the redemptions, ***Lampert devised a plan*** to cause Sears Canada to make a large dividend payment"—i.e., the 2013 Dividend.[49]  Because Sears Canada lacked "sufficient cash on hand to fund a large dividend payment," it was required to liquidate certain of its "crown jewel" real

---

[48]   Litigation Trustee's Statement of Claim ¶ 45 (emphasis added).

[49]   Litigation Trustee's Statement of Claim ¶ 47 (emphasis added).

estate assets. [50]    The Litigation Trustee has alleged that "*Lampert* played a direct role in negotiating" these asset sales and that *Lampert* "provided direct instructions to Sears Canada on the price" to be sought in connection with such sales and has further alleged that "*Lampert* personally directed the negotiating strategy in connection with" one of the major transactions in question.  It is further alleged that "*three former ESL employees* – Bird, Crowley, and Harker – worked to finalize the proposal for a large extraordinary dividend," and ultimately "settled on a proposed dividend payment of $5 per share, or more than $509 million in total."   The 2013 Dividend is then alleged to have been "rubber stamped" by the Board, which "failed to ensure that the proceeds were used for Sears Canada's benefit or to ensure that sufficient value would be available to satisfy creditor claims. . . ."[51]  In other words, the 2013 Dividend—the transaction at the heart of all of the causes of action raised in the Canadian Litigation—is alleged to have been orchestrated by, and for the benefit of the non-Debtor Existing Canadian Defendants, Lampert and ESL (although it is true that Sears Holdings also received substantial proceeds from the 2013 Dividend).  The Plan Administrator's and the Class Action Representative's claims are to the same effect.  It is therefore clear that the Canadian Litigation is *primarily* about the conduct of non-Debtor third parties: either Sears Canada itself or the Existing Canadian Defendants.

     E.     Factor 7: Relief will Benefit other Creditors by
            Avoiding the Costs of Duplicative Litigation

48.    The seventh *Sonnax* factor likewise supports relief from the stay, as creditors generally will modestly benefit, rather than be harmed, by the Canadian Plaintiffs' claims being resolved by the Canadian Court.  In one forum or another, the Canadian Plaintiffs' claims will need to be resolved as against Sears Holdings.  The U.S. Debtors' estates will thus incur the cost

---

[50]    Litigation Trustee's Statement of Claim ¶ 48.

[51]    Litigation Trustee's Statement of Claim ¶ 48.

of defending against those claims regardless of whether relief from the stay is granted. *Cf. N.Y. Med. Grp.*, 265 B.R. at 414 ("the creditors will suffer the same prejudice whether or not I grant [the lift-stay] motion."). At worst, then, granting relief from the stay will be neutral as to costs borne by the U.S. Debtors' estates.

49.     In this particular instance, however, there is every reason to believe that the costs borne by the estates will be modestly ***lower*** if relief from the stay is granted. The already commenced, consolidated and scheduled Canadian Litigation should prove more cost effective for the Debtors than pursuing a new contested matter to determine the Canadian Plaintiffs' claims, which would be required if the matter were to proceed before this Court. At a minimum, proceeding with the litigation before the Canadian Court will obviate the need for submission of expert evidence on questions of Canadian law, and will negate the cost Sears Holdings would incur in having to monitor or respond to events in the Canadian Litigation. The fact that Sears Holdings will need to incur some cost to litigate those claims does not alone constitute prejudice to creditors that warrants denial of a motion for relief from the stay. *See, e.g., Anton*, 145 B.R. at 770 ("The cost of defending litigation, by itself, has not been regarded as constituting 'great prejudice,' precluding relief from the automatic stay."). However, even if costs in the abstract could constitute prejudice, the fact that such cost would arise regardless of the forum in which the claims are litigated and would not arise from granting relief from the stay demonstrate that litigation cost alone cannot serve as a basis for denying the Motion.

F.     Factor 8: The Canadian Litigation would Not Result in a Subordinated Claim

50.     The eighth *Sonnax* factor also weighs in favor of granting relief from the stay. The purpose of the Canadian Litigation is certainly to establish the validity of a claim against (among others) Sears Holdings, but there is no prospect that such a claim could be equitably subordinated.

26

G.      Factor 9: The Canadian Litigation would Not Result in an Avoidable Judicial Lien

51.      The ninth *Sonnax* factor, to the extent relevant at all, likewise weighs in favor of granting relief from the stay.  The Canadian Plaintiffs are requesting relief from the stay solely to the extent necessary to prosecute the Canadian Litigation as against Sears Holdings and to fix the value of their respective claims.  Recovery in respect of any claim so liquidated would then occur through these chapter 11 cases.  No judicial lien—avoidable or otherwise—against Sears Holdings could result from granting the requested relief.

H.      Factor 10: Relief from the Stay will Enhance
        Judicial Economy by Avoiding Duplicative Litigation

52.      The tenth factor militates strongly in favor of relief from the stay because granting the requested relief is the only viable avenue for avoiding costly duplicative litigation.  Judicial economy is best-served by allowing the Canadian Plaintiffs to proceed against all defendants— debtors and non-debtors alike—in a single forum.  *See N.Y. Med. Grp.*, 265 B.R. at 413 (judicial economy enhanced by allowing litigation to proceed in a non-bankruptcy forum that can adjudicate the rights of all parties); *In re Arnott*, 512 B.R. 744, 755 (Bankr. S.D.N.Y. 2014) ("The tenth factor (the interests of judicial economy and the expeditious and economical resolution of litigation) also supports lifting the stay. . . .The district court is sufficiently familiar with the facts of Plaintiff's complaint to make 'starting over' in this Court unnecessarily duplicative.").

53.      Under no circumstances will the liability of the non-Debtor Existing Canadian Defendants be resolved in this Court, through the proof-of-claim process or otherwise.  Thus, absent relief from the stay, the Canadian Plaintiffs will be compelled to try the same law and the same facts twice, a circumstance that should be avoided if possible.  *See Anton*, 145 B.R. at 770 ("If the stay is not lifted, the Movants will have to try the same facts twice, once against the other

27

defendants in the District Court and a second time against the Debtor in the Bankruptcy Court.

Multiplicity of suits involving unnecessary time and expense on the part of Movants should be

avoided."); *In re Blan*, 237 B.R. 737, 740 (B.A.P. 8th Cir. 1999) (duplication of litigation that

would result from trying the debtor and its co-defendants separately supported granting relief

from the stay); *In re Laventhol & Horwath*, 139 B.R. 109, 116 (S.D.N.Y. 1992) (citing *In re

Hunter*, 32 B.R. 140, 142 (Bankr. S.D. Fla. 1983)) ("[S]o as to avoid duplicative litigation,

bankruptcy court lifts stay in order that litigation may go forward in district court").   Indeed,

declining to grant relief from the stay and instead fixing the value of the Canadian Plaintiffs'

claims against Sears Holdings in this Court could result in inconsistent judgments concerning the

same law, applied to the same facts.   Relief from the stay should be authorized to eliminate that

risk.   *See In re Chatkin*, 465 B.R. 54, 62 (Bankr. W.D. Pa. 2012) (granting stay relief where,

among other things, doing so would avoid inconsistent results between two parallel litigations

arising from the same facts); *In re Mildred Deli Grocery, Inc.*, 2018 WL 1136017 at *4 (Bankr.

S.D.N.Y. Feb. 28, 2018) ("The Movants may be forced to litigate their claims in two courts if the

stay is not lifted, with the risk of inconsistent results, and wasting the parties' and the courts'

resources.").   Thus, absent relief from the stay, addressing the Canadian Plaintiffs' claims will

consume substantial time of both this Court and the Canadian Court to resolve disputes about the

same facts and the same law.   A more clear-cut waste of judicial resources is difficult to imagine.

54.      In contrast, granting the requested relief will enhance judicial economy by

facilitating the resolution of all parties' rights in a single proceeding before the Canadian Court.

Indeed, it is currently contemplated that the Monitor Action, the Litigation Trustee Action, the

Plan Administrator Action, and the Class Action will all be resolved in a single trial before the

Canadian Court.   If Sears Holdings is folded into the Canadian Litigation, the results of that

litigation would then eliminate the need for further action before this Court, as the validity and amounts of the Canadian Plaintiffs' claims against Sears Holdings would have been conclusively determined.  *See In re Cicale*, No. 05-14462 (AJG), 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007) ("[T]he Court finds that allowing [movant to] proceed with the Third-Party Action will provide the most efficient and economical resolution of the litigation because the Third-Party Action may alleviate the need for any further proceedings in the bankruptcy court. Thus, this *Sonnax* Factor weighs in favor of [movant].").

      I.     <u>Factor 11: Trial has been Scheduled in the Canadian Litigation</u>

55.     The Canadian Litigation is currently the subject of case management by the Honourable Justice McEwen of the Ontario Superior Court of Justice (Commercial List).  Case conferences commenced in January of this year and a timetable to proceed to a trial in February 2020 has been established through this process.  The Canadian Litigation has advanced, and statements of defence are scheduled to be delivered by the defendants by May 3, 2019.  The Canadian Plaintiffs believe that Sears Holdings can be included in the existing process without material disruption and that all parties will continue to benefit from the steps taken to date in the case management process to move these actions forward from a process perspective.

      J.     Factor 12: The Balance of Harms Weighs
                 <u>Decisively in Favor of Granting Relief from the Stay</u>

56.     Finally, the twelfth *Sonnax* factor weighs heavily in favor of granting relief from the stay.  The harm to the Canadian Plaintiffs that would result from denying relief is substantial, and includes:

> • significantly increased costs resulting from being required to litigate precisely the same issues in two different courts, which is particularly inappropriate given that the Monitor's costs and the Litigation Trustee's costs would be

borne by the insolvent estate of Sears Canada, further diluting recoveries to creditors;[52]

- an unavoidable division of attention and manpower of the Canadian Plaintiffs—two of whom are themselves representatives of an insolvency estate—between concurrent litigations;

- additional unnecessary burden arising from the need to submit expert evidence on Canadian law to this court, whereas the Canadian Court would need no such expert evidence;[53]

- denial of the Canadian Plaintiffs' chosen forum (*i.e.*, the Canadian Court) for resolving their claims;[54] and

- an unacceptable risk of incompatible judgments on the same facts and law as between this Court and the Canadian Court.[55]

57.     In contrast, Sears Holdings will not be prejudiced by modification of the automatic stay.  Allowing the Canadian Plaintiffs' claims to be resolved as part of the Canadian Litigation will not delay Sears Holdings' liquidation or distributions to creditors.[56]  Nor will allowing the litigation to proceed in Canada significantly increase the costs borne by Sears Holdings' estate—to the contrary, costs should decrease.[57]  Further, Sears Holdings will benefit just as much as the Canadian Plaintiffs from avoiding the confusion and unfairness that could

---

[52]   *See Anton*, 145 B.R. at 770.

[53]   *Cf. Manu Int'l, S.A. v. Avon Prod., Inc.*, 641 F.2d 62, 68 (2d Cir. 1981).

[54]   "A plaintiff's choice of forum is entitled to great deference."  *Hellas Telecommunications*, 535 B.R. at 590 (citing *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993)).  Such deference is especially appropriate where, as here, plaintiffs' chosen forum for litigation is also their home jurisdiction.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n.23 (1981)).

[55]   *See In re Chatkin*, 465 B.R. at 62  (granting stay relief where, among other things, doing so would avoid inconsistent results between two parallel litigations arising from the same facts).

[56]   *See* Section I.B, *supra*.

[57]   *See* Section I.E, *supra*.

arise if this Court and the Canadian Court issue inconsistent rulings.[58]  Given the lack of any discernable benefit to the U.S. Debtors' estates from maintaining the stay under these facts, the balance of harms tips decisively in favor of the Canadian Plaintiffs.  Accordingly, the stay should be modified to allow Sears Holdings to be joined as a defendant in the Canadian Litigation and for the Class Action and the Canadian Litigation to proceed against Sears Holdings for the purpose of determining the validity and fixing the value of the Canadian Plaintiffs' claims.

## II.    International Considerations Also Weigh in Favor of Modifying the Stay

58.    In addition to the *Sonnax* factors, certain courts have weighed additional factors when considering whether the automatic stay should be modified to permit a suit to proceed against a debtor outside of the United States (as opposed to in a U.S. federal court or a state court).  As articulated in the leading decision in this relatively sparse branch of the law:

> six factors best articulate an appropriate standard for considering relief from stay in the international context, where the interests of wise judicial administration, conservation of judicial resources and comprehensive disposition of litigation are similarly paramount: (1) whether a court has assumed jurisdiction over the res at issue; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) which law controls in a choice of laws analysis; and, (6) the adequacy of the alternative forum.

*In re Hakim*, 212 B.R. 632, 642 (Bankr. N.D. Cal. 1997).  Here, five of these six factors clearly weigh in favor of lifting the stay.

### A.    Factor 1: The Canadian Court has Assumed Jurisdiction Over the "Res"

59.    In the Second Circuit, an intangible cause of action constitutes property or res. *See Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989) (stating that property includes "tangible and intangible property," including "causes of action"); *In re Octaviar Admin. Pty Ltd*, 511 B.R.

---

[58]    *See* Section I.H, *supra*.

361, 369 (Bankr. S.D.N.Y. 2014) ("It is well established that claims and causes of action, though intangible, constitute 'property.'").   Here, the "res" at issue—the Canadian Litigation—is proceeding before, and under the jurisdiction of the Canadian Court.[59]   Indeed, the Canadian Litigation (other than the Class Action) only came into existence after being specifically authorized by the Canadian Court.

B.    <u>Factor 3: Relief from the Stay is the Only Path to Avoiding Duplicative Litigation</u>

60.    As addressed above in connection with the *Sonnax* factors, granting relief from the stay is the only way to avoid duplicative litigation.  Absent relief, the Canadian Plaintiffs will be compelled to litigate the same facts and the same questions of law before two separate tribunals in two separate countries.  Maintaining the stay would therefore cause, rather than prevent, undesirable piecemeal litigation.

C.    <u>Factor 4: The Canadian Court has Prior Jurisdiction</u>

61.    The CCAA Proceedings in connection with which the Canadian Litigation arose were commenced on June 22, 2017, approximately fifteen months before these chapter 11 cases began.[60]   The Canadian Plaintiffs (other than the Class Action Representative) obtained permission to commence the Canadian Litigation on December 3, 2018,[61] and did commence such litigation on December 19, 2018, months before filing the Proofs of Claim (under compulsion of the Bar Date Order) against Sears Holdings in these chapter 11 cases.

---

[59]   *See* Monitor's Declaration ¶ 16.

[60]   *See* Monitor's Declaration ¶¶ 13, 14.

[61]   As the Class Action was previously commenced, the December 3, 2018 Order of the Canadian Court granted the Class Action Representative permission to proceed with their previously asserted claims against the Defendants (other than Sears Holdings).

D.      Factor 5: Canadian Law Controls

62.      Every cause of action at issue in the Canadian Litigation is governed by Canadian law.[62]  This makes perfect sense: the Canadian Plaintiffs, as plaintiffs, are either Canadian court officers acting on behalf of a Canadian insolvency estate, a pension plan administrator acting on behalf of the Ontario (Canada) registered pension plan of an insolvent Canadian Company, or a class pending certification under the Ontario (Canada) Class Proceedings Act.   They are all acting under the auspices of a Canadian Court, and are seeking redress for harm inflicted in Canada upon a Canadian company and its creditors.

E.      Factor 6: The Canadian Court is an Adequate Alternative Forum

63.      A foreign court presents an adequate forum for purposes of a motion for relief from the automatic stay if proceedings in that court "comport with fundamental notions of fairness."  *Hakim*, 212 B.R. at 643 (citing *In re Koreag, Controle et Revision S.A.*, 130 B.R. 705, 716 (Bankr. S.D.N.Y. 1991), *rev'd on other grounds*, 961 F.2d 341 (2nd Cir.1992), *cert denied* 506 U.S. 865 (1992)).   U.S. courts routinely single-out Canadian courts—and the Ontario Superior Court of Justice (Commercial List) in particular—as providing appropriately robust due process.   *See, e.g., In re Sino-Forest Corp.*, 501 B.R. 655, 663 (Bankr. S.D.N.Y. 2013) ("Canadian courts afford creditors a full and fair opportunity to be heard in a manner consistent with standards of U.S. due process."); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 698 (Bankr. S.D.N.Y. 2010) ("The U.S. and Canada share the same common law traditions and fundamental principles of law. Canadian courts afford creditors a full and fair opportunity to be heard in a manner consistent with standards of U.S. due process."); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 212 (S.D.N.Y. 2002) ("There is no

---

[62]    *See, e.g.,* Monitor's Statement of Claim ¶¶ 1, 2, 71; Litigation Trustee's Statement of Claim ¶ 101; Plan Administrator's Statement of Claim ¶¶ 1, 42, 44.

question that bankruptcy proceedings in Canada—a sister common law jurisdiction with procedures akin to our own—are entitled to comity under appropriate circumstances.") (internal quotation marks and citations omitted).

64.     In sum, the overwhelming majority of factors that courts look to when considering requests for relief from the automatic stay—both domestically and internationally— weigh decisively in favor of modifying the stay in this instance.  Accordingly, the Canadian Plaintiffs should be granted relief from the automatic stay for the limited purposes of joining Sears Holdings as a defendant in the Canadian Litigation (or in the case of the Class Action, continuing their claims against Sears Holdings) and liquidating their claims against Sears Holdings in that forum.

## NOTICE

65.     Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 [Docket No. 405].  The Canadian Plaintiffs respectfully submit that no further notice is required.

## NO PRIOR REQUEST

66.     No previous request for the relief sought in this Motion has been made by the Canadian Plaintiffs to this or any other Court.

## CONCLUSION

WHEREFORE, the Canadian Plaintiffs respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit "A," granting (a) the Canadian Plaintiffs relief from the automatic stay for purposes of (i) joining Sears Holdings as a defendant in each of the actions that comprise the Canadian Litigation (with the exception of the Class Action where Sears Holdings is already a defendant), which are currently pending before the Canadian Court,

and (ii) prosecuting the causes of action that comprise the Canadian Litigation before the

Canadian Court to determine the validity and amount of the Canadian Plaintiffs' claims against

Sears Holdings, and (b) such other and further relief as is just and proper.


Dated: April 16, 2019
New York, New York

/s/  Eric Daucher
Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
Email:  eric.daucher@nortonrosefulbright.com
francisco.vazquez@nortonrosefulbright.com

*Counsel for FTI Consulting Canada Inc.,*
*in its capacity as court-appointed monitor for*
*Sears Canada Inc. and certain of its affiliates*

-and-


/s/  Neil J. Oxford
Neil J. Oxford
Dustin P. Smith
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email:  neil.oxford@hugheshubbard.com
dustin.smith@hugheshubbard.com

*Counsel for the Honourable J. Douglas Cunningham,*
*Q.C., as court-appointed litigation trustee for the*
*Canadian Debtors and Counsel for 1291079 Ontario*
*Limited as class representative for the potential class of*
*all Sears Hometown Dealer stores*

35

-and-


*/s/  Laura R. Hall*
Laura R. Hall
Joseph Badtke-Berkow
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6417
Facsimile: (212) 610-6399
Email:   laura.hall@allenovery.com
          joseph.badtke-berkow@allenovery.com


*Counsel for Morneau Shepell Ltd., in its capacity
as administrator of the Sears Canada Inc.
Registered Pension Plan*