# <u>EXHIBIT B</u>

Court File No. CV-17-11846-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 22ND |
| | ) | |
| JUSTICE HAINEY | ) | DAY OF JUNE, 2017 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SEARS CANADA INC., CORBEIL ÉLECTRIQUE INC., S.L.H. TRANSPORT INC., THE CUT INC., SEARS CONTACT SERVICES INC., INITIUM LOGISTICS SERVICES INC., INITIUM COMMERCE LABS INC., INITIUM TRADING AND SOURCING CORP., SEARS FLOOR COVERING CENTRES INC., 173470 CANADA INC., 2497089 ONTARIO INC., 6988741 CANADA INC., 10011711 CANADA INC., 1592580 ONTARIO LIMITED, 955041 ALBERTA LTD., 4201531 CANADA INC., 168886 CANADA INC., AND 3339611 CANADA INC.

(each, an "**Applicant**", and collectively, the "**Applicants**")

**AMENDED AND RESTATED INITIAL ORDER**

**THIS APPLICATION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Billy Wong sworn June 22, 2017, and the Exhibits thereto (collectively, the "**Wong Affidavit**"), and the pre-filing report dated June 22, 2017 of FTI Consulting Canada Inc. ("**FTI**"), in its capacity as the proposed Monitor of the Applicants (the "**Pre-Filing Report**"), and on hearing the submissions of counsel to the Applicants and SearsConnect (the "**Partnership**", and collectively with the Applicants, the "**Sears Canada**

- 2 -

**Entities**"), counsel to the Board of Directors (the "**Board of Directors**") of Sears Canada Inc. ("**SCI**") and the Special Committee of the Board of Directors (the "**Special Committee**") of SCI, counsel to FTI, counsel to Wells Fargo Capital Finance Corporation Canada (the "**DIP ABL Agent**"), as administrative agent under the DIP ABL Credit Agreement (as defined herein), and counsel to GACP Finance Co., LLC (the "**DIP Term Agent**"), as administrative agent under the DIP Term Credit Agreement (as defined herein), Koskie Minsky LLP as counsel for Store Catalogue Retiree Group, counsel for the Financial Services Commission of Ontario, and on reading the consent of FTI to act as the Monitor.

## SERVICE

1.      **THIS COURT ORDERS** that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

## APPLICATION

2.      **THIS COURT ORDERS AND DECLARES** that the Applicants are companies to which the CCAA applies. Although not an Applicant, the Partnership shall enjoy the benefits of the protections and authorizations provided by this Order.

## PLAN OF ARRANGEMENT

3.      **THIS COURT ORDERS** that the Applicants, individually or collectively, shall have the authority to file and may, subject to further Order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

## POSSESSION OF PROPERTY AND OPERATIONS

4.      **THIS COURT ORDERS** that the Sears Canada Entities shall remain in possession and control of their respective current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"). For greater certainty, the "Property" includes all inventory, assets, undertakings and property of the Sears Canada Entities in the possession or control of the Hometown Dealers (as defined in the Wong Affidavit) and all inventory, assets, undertakings and property of the Sears Canada

Entities in the possession or control of the Corbeil Franchisees (as defined in the Wong Affidavit). Subject to further Order of this Court, the Sears Canada Entities shall continue to carry on business in a manner consistent with the preservation of the value of their business (the "**Business**") and Property. The Sears Canada Entities shall each be authorized and empowered to continue to retain and employ the employees, independent contractors, advisors, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty, subject to the terms of the Definitive Documents (as defined herein) to retain such further Assistants, as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

5.    **THIS COURT ORDERS** that the Sears Canada Entities shall be entitled to continue to utilize the central cash management services currently in place as described in the Wong Affidavit, or, with the consent of the Monitor, the DIP ABL Agent on behalf of the DIP ABL Lenders (as defined herein) and the DIP Term Agent on behalf of the DIP Term Lenders (as defined herein), replace it with another substantially similar central cash management services (the "**Cash Management System**") and that any present or future bank or other institution providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Sears Canada Entities of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Sears Canada Entities, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System; provided,  however, that no bank or other institution providing such Cash Management System shall be obliged to extend any overdraft credit, on an aggregate net basis, directly or indirectly in connection therewith and further provided that, to the extent any overdraft occurs, on an aggregate net basis, the Sears Canada Entities shall make arrangements to repay such overdraft forthwith.

- 4 -

6.    **THIS COURT ORDERS** that the Sears Canada Entities, subject to availability under, and in accordance with the terms of the DIP Facilities (as defined herein) and the Definitive Documents, and subject to further Order of this Court, shall be entitled but not required to pay the following expenses whether incurred prior to, on or after this Order to the extent that such expenses are incurred and payable by the Sears Canada Entities:

    (a)    all outstanding and future wages, salaries, commissions, employee and retiree benefits (including, without limitation, medical, dental, life insurance and similar benefit plans or arrangements), pension benefits or contributions, vacation pay, expenses, and director fees and expenses, payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements (but not including termination or severance payments), and all other payroll, pension and benefits processing and servicing expenses;

    (b)    all outstanding and future amounts owing to or in respect of Persons working as independent contractors in connection with the Business;

    (c)    all outstanding or future amounts owing in respect of customer rebates, refunds, discounts or other amounts on account of similar customer programs or obligations;

    (d)    all outstanding or future amounts related to honouring customer obligations, whether existing before or after the date of this Order, including customer financing, product warranties, pre-payments, deposits, gift cards, Sears Club programs (including redemptions of Sears Club points) and other customer loyalty programs, offers and benefits, in each case incurred in the ordinary course of business and consistent with existing policies and procedures;

    (e)    the fees and disbursements of any Assistants retained or employed by the Sears Canada Entities at their standard rates and charges; and

    (f)    with the consent of the Monitor, amounts owing for goods or services actually supplied to the Sears Canada Entities prior to the date of this Order by:

- 5 -

(i)     logistics or supply chain providers, including customs brokers and freight forwarders, fuel providers, repair, maintenance and parts providers, and security and armoured truck carriers, and including amounts payable in respect of customs and duties for goods;

(ii)     providers of information, internet, and other technology, including e-commerce providers and related services;

(iii)     providers of credit, debit and gift card processing related services; and

(iv)     other third party suppliers up to a maximum aggregate amount of $25 million, if, in the opinion of the Sears Canada Entities, the supplier is critical to the business and ongoing operations of the Sears Canada Entities.

7.     **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein and subject to the terms of the Definitive Documents, the Sears Canada Entities shall be entitled but not required to pay all reasonable expenses incurred by them in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order and any other Order of this Court, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance (including environmental remediation) and security services; and

(b)     payment for goods or services actually supplied to the Sears Canada Entities following the date of this Order.

8.     **THIS COURT ORDERS** that the Sears Canada Entities shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from the Sears Canada Entities' employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

(b)     all goods and services taxes, harmonized sales taxes or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Sears Canada Entities in connection with the sale of goods and services by the Sears Canada Entities, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order;

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business, workers' compensation or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Sears Canada Entities; and

(d)     taxes under the *Income Tax Act* (Canada) or other relevant taxing statutes to the extent that such taxing statutes give rise to statutory deemed trust amounts in favour of the Crown in right of Canada or any Province thereof or any political subdivision thereof or any other taxation authority.

9.     **THIS COURT ORDERS** that, except as specifically permitted herein, the Sears Canada Entities are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by any one of the Sears Canada Entities to any of their creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of the Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business or pursuant to this Order or any further Order of this Court.

**RESTRUCTURING**

10.     **THIS COURT ORDERS** that the Sears Canada Entities shall, subject to such requirements as are imposed by the CCAA, and subject to the terms of the Definitive Documents, have the right to:

- 7 -

(a)   permanently or temporarily cease, downsize or shut down any of their Business or
operations, and to dispose of redundant or non-material assets not exceeding $2
million in any one transaction or $5 million in the aggregate in any series of related
transactions, provided that, with respect to leased premises, the Sears Canada Entities
may, subject to the requirements of the CCAA and paragraphs 11 to 13 herein,
vacate, abandon or quit the whole (but not part of) and may permanently (but not
temporarily) cease, downsize or shut down any of their Business or operations in
respect of any leased premises;

(b)   terminate the employment of such of its employees or temporarily lay off such of its
employees as the relevant Sears Canada Entity deems appropriate; and

(c)   pursue all avenues of refinancing, restructuring, selling and reorganizing the Business
or Property, in whole or part, subject to prior approval of this Court being obtained
before any material refinancing, restructuring, sale or reorganization,

all of the foregoing to permit the Sears Canada Entities to proceed with an orderly restructuring
of the Sears Canada Entities and/or the Business (the "**Restructuring**").

**REAL PROPERTY LEASES**

11.    **THIS COURT ORDERS** that until a real property lease is disclaimed or resiliated in
accordance with the CCAA, the Sears Canada Entities shall pay, without duplication, all amounts
constituting rent or payable as rent under real property leases (including, for greater certainty,
common area maintenance charges, utilities and realty taxes and any other amounts payable to
the landlord under its lease, but for greater certainty, excluding accelerated rent or penalties, fees
or other charges arising as a result of the insolvency of any or all of the Sears Canada Entities or
the making of this Order) or as otherwise may be negotiated between the applicable Sears
Canada Entity and the landlord from time to time ("**Rent**"), for the period commencing from and
including the date of this Order, twice-monthly in equal payments on the first and fifteenth day
of each month, in advance (but not in arrears). On the date of the first of such payments, any
Rent relating to the period commencing from and including the date of this Order shall also be
paid.

- 8 -

12.    **THIS COURT ORDERS** that the Sears Canada Entities shall provide each of the relevant landlords with notice of the relevant Sears Canada Entity's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the entitlement of a Sears Canada Entity to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the relevant Sears Canada Entity, or by further Order of this Court upon application by the Sears Canada Entities on at least two (2) days' notice to such landlord and any such secured creditors. If any of the Sears Canada Entities disclaims or resiliates the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer or resiliation of the lease shall be without prejudice to the relevant Sears Canada Entity's claim to the fixtures in dispute.

13.    **THIS COURT ORDERS** that if a notice of disclaimer or resiliation is delivered pursuant to Section 32 of the CCAA by any of the Sears Canada Entities, then: (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the relevant Sears Canada Entity and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer or resiliation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the relevant Sears Canada Entity in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE SEARS CANADA ENTITIES, THE BUSINESS OR THE PROPERTY**

14.    **THIS COURT ORDERS** that until and including July 22, 2017, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the

Sears Canada Entities or the Monitor or their respective employees and representatives acting in such capacities, or affecting the Business or the Property, except with the written consent of the Sears Canada Entities and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Sears Canada Entities or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

15.     **THIS COURT ORDERS** that during the Stay Period, no Person having any agreements or arrangements with the owners, operators, managers or landlords of commercial shopping centres or other commercial properties (including retail, office and industrial (warehouse) properties) in which there is located a store, office or warehouse owned or operated by the Sears Canada Entities shall take any Proceedings or exercise any rights or remedies under such agreements or arrangements that may arise upon and/or as a result of the making of this Order, the insolvency of, or declarations of insolvency by, any or all of the Sears Canada Entities, or as a result of any steps taken by the Sears Canada Entities pursuant to this Order and, without limiting the generality of the foregoing, no Person shall terminate, accelerate, suspend, modify, determine or cancel any such arrangement or agreement or be entitled to exercise any rights or remedies in connection therewith.

16.     **THIS COURT ORDERS** that during the Stay Period, no Person having any agreements or arrangements with the Hometown Dealers or the Corbeil Franchisees shall take any Proceedings or exercise any rights or remedies under such agreements or arrangements that may arise upon and/or as a result of the making of this Order, the insolvency of, or declarations of insolvency by, any or all of the Sears Canada Entities, or as a result of any steps taken by the Sears Canada Entities pursuant to this Order and, without limiting the generality of the foregoing, no Person shall terminate, accelerate, suspend, modify, determine or cancel any such arrangement or agreement or be entitled to exercise any rights or remedies in connection therewith.

17.     **THIS COURT ORDERS** that during the Stay Period all rights and remedies, of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Sears Canada Entities or the Monitor or their respective employees and representatives acting in

- 10 -

such capacities, or affecting the Business or the Property, are hereby stayed and suspended, except with the written consent of the Sears Canada Entities and the Monitor, or leave of this Court, provided that nothing in this Order shall: (a) empower the Sears Canada Entities to carry on any business that the Sears Canada Entities are not lawfully entitled to carry on; (b) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (c) prevent the filing of any registration to preserve or perfect a security interest; (d) prevent the registration of a claim for lien; (e) prevent any holder of a valid and enforceable right of first refusal, option to purchase or other similar right in respect of any real property from being entitled to exercise all such rights; or (f) empower the Sears Canada Entities to fail to comply with their obligations under leases (other than the payment of rent on a twice-monthly basis, in accordance with paragraph 11 herein), operating agreements or similar agreements for the period from and after the commencement of this proceeding.

**NO INTERFERENCE WITH RIGHTS**

18.    **THIS COURT ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence or permit in favour of or held by the Sears Canada Entities, except with the written consent of the Sears Canada Entities and the Monitor, or leave of this Court. Without limiting the foregoing, no right, option, remedy, and/or exemption in favour of the relevant Sears Canada Entity shall be or shall be deemed to be negated, suspended, waived and/or terminated as a result of this Order.

**CONTINUATION OF SERVICES**

19.    **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Sears Canada Entities or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all trademark license and other intellectual property, computer software, communication and other data services, centralized banking services, payroll and benefit services, insurance, warranty services, transportation services, freight services, security and armoured truck carrier services, utility, customs clearing, warehouse and logistics services or other services to the Business or the Sears Canada Entities are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply or license of such goods, services, trademarks and other

intellectual property as may be required by the Sears Canada Entities, and that the Sears Canada Entities shall be entitled to the continued use of the trademarks and other intellectual property currently licensed to, used or owned by the Sears Canada Entities, premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Sears Canada Entities in accordance with normal payment practices of the Sears Canada Entities or such other practices as may be agreed upon by the supplier or service provider and each of the Sears Canada Entities and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

20.    **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Sears Canada Entities. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**KEY EMPLOYEE RETENTION PLAN**

21.    **THIS COURT ORDERS** that the Key Employee Retention Plan (the "**KERP**"), as described in the Wong Affidavit, is hereby approved and the Sears Canada Entities are authorized to make payments contemplated thereunder in accordance with the terms and conditions of the KERP.

22.    **THIS COURT ORDERS** that the key employees referred to in the KERP (the "**Key Employees**") shall be entitled to the benefit of and are hereby granted the following charges on the Property, which charges shall not exceed: (a) an aggregate amount of $4.6 million (the "**KERP Priority Charge**") to secure the first $4.6 million payable to the Key Employees under the KERP; and (b) an aggregate amount of $4.6 million (the "**KERP Subordinated Charge**") to secure any other payments to the Key Employees under the KERP. The KERP Priority Charge and the KERP Subordinated Charge shall have the priority set out in paragraphs 47, 48 and 50 hereof.

- 12 -

**APPROVAL OF FINANCIAL ADVISOR AGREEMENT**

23.    **THIS COURT ORDERS** that the agreement dated May 15, 2017 engaging BMO
Nesbitt Burns Inc. (the "**Financial Advisor**") as financial advisor to SCI and attached as
Confidential Appendix C to the Pre-Filing Report (the "**Financial Advisor Agreement**"), and
the retention of the Financial Advisor under the terms thereof, is hereby ratified and approved
and SCI is authorized and directed *nunc pro tunc* to make the payments contemplated thereunder
in accordance with the terms and conditions of the Financial Advisor Agreement.

24.    **THIS COURT ORDERS** that the Financial Advisor shall be entitled to the benefit of
and is hereby granted a charge (the "**FA Charge**") on the Property, which charge shall not
exceed an aggregate amount of $3.3 million, as security for the fees and disbursements payable
under the Financial Advisor Agreement, both before and after the making of this Order in respect
of these proceedings. The FA Charge shall have the priority set out in paragraphs 47, 48 and 50
hereof.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

25.    **THIS COURT ORDERS** that during the Stay Period, and except as permitted by
subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any
of the former, current or future directors or officers of the Sears Canada Entities with respect to
any claim against the directors or officers that arose before the date hereof and that relates to any
obligations of the Sears Canada Entities whereby the directors or officers are alleged under any
law to be liable in their capacity as directors or officers for the payment or performance of such
obligations, until a compromise or arrangement in respect of the Sears Canada Entities, if one is
filed, is sanctioned by this Court or is refused by the creditors of the Sears Canada Entities or this
Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

26.    **THIS COURT ORDERS** that the Sears Canada Entities shall jointly and severally
indemnify their directors and officers against obligations and liabilities that they may incur as
directors or officers of the Sears Canada Entities after the commencement of the within
proceedings, except to the extent that, with respect to any officer or director, the obligation or

- 13 -

liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

27.     **THIS COURT ORDERS** that the directors and officers of the Sears Canada Entities shall be entitled to the benefit of and are hereby granted the following charges on the Property, which charges shall not exceed: (a) an aggregate amount of $44 million (the "**Directors' Priority Charge**"); and (b) an aggregate amount of $19.5 million (the "**Directors' Subordinated Charge**"), respectively, and in each case, as security for the indemnity provided in paragraph 26 of this Order. The Directors' Priority Charge and the Directors' Subordinated Charge shall have the priority set out in paragraphs 47, 48 and 50 hereof.

28.     **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary: (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Priority Charge and the Directors' Subordinated Charge; and (b) the Sears Canada Entities' directors and officers shall only be entitled to the benefit of the Directors' Priority Charge and the Directors' Subordinated Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 26 of this Order.

**APPOINTMENT OF MONITOR**

29.     **THIS COURT ORDERS** that FTI is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the Business and financial affairs of the Sears Canada Entities with the powers and obligations set out in the CCAA or set forth herein and that the Sears Canada Entities and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Sears Canada Entities pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

30.     **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     monitor the Sears Canada Entities' receipts and disbursements;

(b) liaise with the Sears Canada Entities and the Assistants and, if determined by the Monitor to be necessary, the Hometown Dealers and Corbeil Franchisees, with respect to all matters relating to the Property, the Business, the Restructuring and such other matters as may be relevant to the proceedings herein;

(c) report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, the Restructuring and such other matters as may be relevant to the proceedings herein;

(d) assist the Sears Canada Entities, to the extent required by the Sears Canada Entities, in their dissemination of financial and other information to the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent, the DIP Term Lenders and each of their respective counsel and financial advisors, pursuant to and in accordance with the Definitive Documents;

(e) advise the Sears Canada Entities in their preparation of the Sears Canada Entities' cash flow statements and any reporting required by the Definitive Documents, which information shall be reviewed with the Monitor and delivered to the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent, the DIP Term Lenders and each of their respective counsel and financial advisors, pursuant to and in accordance with the Definitive Documents;

(f) advise the Sears Canada Entities in their development of the Plan and any amendments to the Plan;

(g) assist the Sears Canada Entities, to the extent required by the Sears Canada Entities, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(h) have full and complete access to the Property (including any Property in the possession of the Hometown Dealers and the Corbeil Franchisees), including the premises, books, records, data, including data in electronic form, and other financial documents of the Sears Canada Entities, to the extent that is necessary to adequately

assess the Business and the Sears Canada Entities' financial affairs or to perform its duties arising under this Order;

(i)    be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(j)    assist the Sears Canada Entities, to the extent required by the Sears Canada Entities, with any matters relating to any foreign proceeding commenced in relation to any of the Sears Canada Entities, including retaining independent legal counsel, agents, experts, accountants, or such other persons as the Monitor deems necessary or desirable respecting the exercise of this power; and

(k)    perform such other duties as are required by this Order or by this Court from time to time.

31.    **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

32.    **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of

- 16 -

any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

33.    **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Sears Canada Entities, the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent and the DIP Term Lenders with information provided by the Sears Canada Entities in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Sears Canada Entities is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Sears Canada Entities may agree.

34.    **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

35.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Sears Canada Entities and counsel to the Board of Directors and the Special Committee shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to or subsequent to the date of this Order, by the Sears Canada Entities as part of the costs of these proceedings. The Sears Canada Entities are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor, counsel to the Sears Canada Entities and counsel to the Board of Directors and the Special Committee on a weekly basis and, in addition, the Sears Canada Entities are hereby authorized to pay to the Monitor, counsel to the Monitor, counsel to the Sears Canada Entities and counsel to the Board of Directors and the Special Committee, retainers in the aggregate amount of $700,000, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

36.    **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

- 17 -

37.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Sears Canada Entities and counsel to the Board of Directors and the Special Committee shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $5 million, as security for their professional fees and disbursements incurred at their respective standard rates and charges, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 47, 48 and 50 hereof.

**DIP FINANCING**

38.    **THIS COURT ORDERS** that the Sears Canada Entities are hereby authorized and empowered to obtain and borrow or guarantee, as applicable, on a joint and several basis, under:

(a)    the Senior Secured Superpriority Debtor-in-Possession Amended and Restated Credit Agreement dated as of June 22, 2017 and attached to the Wong Affidavit as Exhibit K, among the Sears Canada Entities, the DIP ABL Agent and the lenders from time to time party thereto (the "**DIP ABL Lenders**") (as may be amended, restated, supplemented and/or modified, subject to approval of this Court in respect of any amendment that the Monitor determines to be material, the "**DIP ABL Credit Agreement**"), in order to finance the Sears Canada Entities' working capital requirements and other general corporate purposes and capital expenditures, all in accordance with the Definitive Documents, provided that borrowings under DIP ABL Credit Agreement shall not exceed $300 million unless permitted by further Order of this Court (the "**DIP ABL Credit Facility**"); and

(b)    the Senior Secured Superpriority Credit Agreement dated as of June 22, 2017 and attached to the Wong Affidavit as Exhibit K, among the Sears Canada Entities, the DIP Term Agent and the lenders from time to time party thereto (the "**DIP Term Lenders**") (as may be amended, restated, supplemented and/or modified, subject to approval of this Court in respect of any amendment that the Monitor determines to be material, the "**DIP Term Credit Agreement**"), in order to finance the Sears Canada Entities' working capital requirements and other general corporate purposes and capital expenditures, all in accordance with the Definitive Documents, provided that borrowings under the DIP Term Credit Agreement shall not exceed $150 million

- 18 -

unless permitted by further Order of this Court (the "**DIP Term Credit Facility**", and together with the DIP ABL Credit Facility, the "**DIP Facilities**").

39.    **THIS COURT ORDERS** that the DIP Facilities shall be on the terms and subject to the conditions set forth in the DIP ABL Credit Agreement, the DIP Term Credit Agreement and the other Definitive Documents.

40.    **THIS COURT ORDERS** that the Sears Canada Entities are hereby authorized and empowered to execute and deliver the DIP ABL Credit Agreement, the DIP Term Credit Agreement and such mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, and including any schedules (as amended and updated from time to time) thereto, the "**Definitive Documents**"), as are contemplated by the DIP ABL Credit Agreement and the DIP Term Credit Agreement or as may be reasonably required by the DIP ABL Agent on behalf of the DIP ABL Lenders and the DIP Term Agent on behalf of the DIP Term Lenders pursuant to the terms thereof, as applicable, and the Sears Canada Entities are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent and the DIP Term Lenders under and pursuant to the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

41.    **THIS COURT ORDERS** that the DIP ABL Agent and the DIP ABL Lenders shall be entitled to the benefit of and are hereby granted a charge (the "**DIP ABL Lenders' Charge**") on the Property as security for any and all Obligations (as defined in the DIP ABL Credit Agreement) other than the Prepetition Obligations (as defined in the DIP ABL Credit Agreement) (including on account of principal, interest, fees, expenses and other liabilities, and the aggregate of all such obligations, the "**DIP ABL Obligations**"), which DIP ABL Lenders' Charge shall be in the aggregate amount of the DIP ABL Obligations outstanding at any given time under the DIP ABL Credit Agreement. The DIP ABL Lenders' Charge shall not secure an obligation that exists before this Order is made. The DIP ABL Lenders' Charge shall have the priority set out in paragraphs 47, 48 and 50 hereof.

42.    **THIS COURT ORDERS** that the DIP Term Agent and the DIP Term Lenders shall be entitled to the benefit of and are hereby granted a charge (the "**DIP Term Lenders' Charge**") on the Property as security for any and all Obligations (as defined in DIP Term Credit Agreement)

(including on account of principal, interest, fees, expenses and other liabilities, and the aggregate of all such obligations, the "**DIP Term Obligations**"), which DIP Term Lenders' Charge shall be in the aggregate amount of the DIP Term Obligations outstanding at any given time under the DIP Term Credit Agreement. The DIP Term Lenders' Charge shall not secure an obligation that exists before this Order is made. The DIP Term Lenders' Charge shall have the priority set out in paragraphs 47, 48 and 50 hereof.

43.     [Intentionally deleted.]

44.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

(a)     the DIP ABL Agent on behalf of the DIP ABL Lenders, as applicable, may take such steps from time to time as they may deem necessary or appropriate to file, register, record or perfect the DIP ABL Lenders' Charge, the DIP ABL Credit Agreement or any of the other Definitive Documents;

(b)     the DIP Term Agent on behalf of the DIP Term Lenders, as applicable, may take such steps from time to time as they may deem necessary or appropriate to file, register, record or perfect the DIP Term Lenders' Charge, the DIP Term Credit Agreement or any of the other Definitive Documents;

(c)     upon the occurrence of an event of default under the DIP ABL Credit Agreement, the other related Definitive Documents or the DIP ABL Lenders' Charge, the DIP ABL Agent and the DIP ABL Lenders, as applicable, may, subject to the provisions of the DIP ABL Credit Agreement with respect to the giving of notice or otherwise, and in accordance with the DIP ABL Credit Agreement, the other related Definitive Documents and the DIP ABL Lenders' Charge, as applicable, cease making advances to the Sears Canada Entities, make demand, accelerate payment and give other notices; provided that, the DIP ABL Agent and the DIP ABL Lenders must apply to this Court on seven (7) days' prior written notice (which may include the service of materials in connection with such an application to this Court) to the Sears Canada Entities, the DIP Term Agent, the DIP Term Lenders and the Monitor, to enforce against or exercise any other rights and remedies with respect to the Sears Canada Entities or any of the Property (including to set off and/or consolidate any amounts

owing by the DIP ABL Agent and the DIP ABL Lenders to the Sears Canada Entities against the obligations of the Sears Canada Entities to the DIP ABL Agent and the DIP ABL Lenders under the DIP ABL Credit Agreement, the other related Definitive Documents or the DIP ABL Lenders' Charge), to appoint a receiver, receiver and manager or interim receiver, or to seek a bankruptcy order against the Sears Canada Entities and to appoint a trustee in bankruptcy of the Sears Canada Entities;

(d)      upon the occurrence of an event of default under the DIP Term Credit Agreement, the other related Definitive Documents or the DIP Term Lenders' Charge, the DIP Term Agent and the DIP Term Lenders, as applicable, may, subject to the provisions of the DIP Term Credit Agreement with respect to the giving of notice or otherwise, and in accordance with the DIP Term Credit Agreement, the other related Definitive Documents and the DIP Term Lenders' Charge, as applicable, cease making advances to the Sears Canada Entities, make demand, accelerate payment and give other notices; provided that, the DIP Term Agent and the DIP Term Lenders must apply to this Court on seven (7) days' prior written notice (which may include the service of materials in connection with such an application to this Court) to the Sears Canada Entities, the DIP ABL Agent, the DIP ABL Lenders and the Monitor, to enforce against or exercise any other rights and remedies with respect to the Sears Canada Entities or any of the Property (including to set off and/or consolidate any amounts owing by the DIP Term Agent and the DIP Term Lenders to the Sears Canada Entities against the obligations of the Sears Canada Entities to the DIP Term Agent and the DIP Term Lenders under the DIP Term Credit Agreement, the other related Definitive Documents or the DIP Term Lenders' Charge), to appoint a receiver, receiver and manager or interim receiver, or to seek a bankruptcy order against the Sears Canada Entities and to appoint a trustee in bankruptcy of the Sears Canada Entities; and

(e)      the foregoing rights and remedies of the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent and the DIP Term Lenders shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Sears Canada Entities or the Property.

- 21 -

45.    **THIS COURT ORDERS AND DECLARES** that the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent and the DIP Term Lenders shall be treated as unaffected in any plan of arrangement or compromise filed by the Sears Canada Entities or any of them under the CCAA, or any proposal filed by the Sears Canada Entities or any of them under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the DIP ABL Credit Agreement, the DIP Term Credit Agreement and the other Definitive Documents.

46.    **THIS COURT ORDERS AND DECLARES** that this Order is subject to provisional execution and that if any of the provisions of this Order in connection with the DIP ABL Credit Agreement, the DIP Term Credit Agreement, the other Definitive Documents, the DIP ABL Lenders' Charge or the DIP Term Lenders' Charge shall subsequently be stayed, modified, varied, amended, reversed or vacated in whole or in part (collectively, a "**Variation**") whether by subsequent order of this Court on or pending an appeal from this Order, such Variation shall not in any way impair, limit or lessen the priority, protections, rights or remedies of the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent and the DIP Term Lenders whether under this Order (as made prior to the Variation), under the DIP ABL Credit Agreement, the DIP Term Credit Agreement and the other Definitive Documents, with respect to any advances made prior to the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent or the DIP Term Lenders being given notice of the Variation and the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent and the DIP Term Lenders shall be entitled to rely on this Order as issued (including, without limitation, the DIP ABL Lenders' Charge and the DIP Term Lenders' Charge) for all advances so made.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

47.    **THIS COURT ORDERS** that the priorities of the Administration Charge, the FA Charge, the DIP ABL Lenders' Charge, the DIP Term Lenders' Charge, the Directors' Priority Charge, the Directors' Subordinated Charge, the KERP Priority Charge and the KERP Subordinated Charge (collectively, the "**Charges**"), as among them, with respect to ABL Priority Collateral (as defined in the Intercreditor Agreement dated March 20, 2017 and attached as Exhibit J to the Wong Affidavit) shall be as follows:

>    First – Administration Charge, to the maximum amount of $5 million, and the FA Charge, to the maximum amount of $3.3 million, on a *pari passu* basis;

- 22 -

Second – KERP Priority Charge, to the maximum amount of $4.6 million;

Third – Directors' Priority Charge, to the maximum amount of $44 million;

Fourth – DIP ABL Lenders' Charge, to the maximum amount of the quantum of the DIP ABL Obligations at the relevant time;

Fifth – the DIP Term Lenders' Charge, to the maximum amount of the quantum of the DIP Term Obligations at the relevant time;

Sixth – KERP Subordinated Charge, to the maximum amount of $4.6 million; and

Seventh – the Directors' Subordinated Charge, to the maximum amount of $19.5 million.

48.    **THIS COURT ORDERS** that the priorities of the Charges as among them, with respect to all Property other than the ABL Priority Collateral shall be as follows:

First – Administration Charge, to the maximum amount of $5 million, and the FA Charge, to the maximum amount of $3.3 million, on a *pari passu* basis;

Second – KERP Priority Charge, to the maximum amount of $4.6 million;

Third – Directors' Priority Charge, to the maximum amount of $44 million;

Fourth – DIP Term Lenders' Charge, to the maximum amount of the quantum of the DIP Term Obligations at the relevant time;

Fifth – DIP ABL Lenders' Charge, to the maximum amount of the quantum of the DIP ABL Obligations at the relevant time;

Sixth – KERP Subordinated Charge, to the maximum amount of $4.6 million; and

Seventh – the Directors' Subordinated Charge, to the maximum amount of $19.5 million.

49.    **THIS COURT ORDERS** that the filing, registration or perfection of the Charges shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as

against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

50.    **THIS COURT ORDERS** that each of the Charges shall constitute a charge on the Property, and such Charges shall rank in priority to all other security interests, trusts (including constructive trusts), liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (including without limitation any deemed trust that may be created under the Ontario *Pension Benefits Act*) (collectively, "**Encumbrances**") other than (a) any Person with a properly perfected purchase money security interest under the *Personal Property Security Act* (Ontario) or such other applicable provincial legislation that has not been served with notice of this Order; and (b) statutory super-priority deemed trusts and liens for unpaid employee source deductions.

51.    **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Sears Canada Entities shall not grant any Encumbrances over any of the Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Sears Canada Entities also obtain the prior written consent of the Monitor, the DIP ABL Agent on behalf of the DIP ABL Lenders, the DIP Term Agent on behalf of the DIP Term Lenders and the other beneficiaries of affected Charges, or further Order of this Court.

52.    **THIS COURT ORDERS** that the Charges, the DIP ABL Credit Agreement, the DIP Term Credit Agreement, and the other Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") thereunder shall not otherwise be limited or impaired in any way by: (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") that binds the Sears Canada Entities, and notwithstanding any provision to the contrary in any Agreement:

- 24 -

(i)    neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP ABL Credit Agreement, the DIP Term Credit Agreement or the other Definitive Documents shall create or be deemed to constitute a breach by the Sears Canada Entities of any Agreement to which it is a party;

(ii)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Sears Canada Entities entering into the DIP ABL Credit Agreement and the DIP Term Credit Agreement, the creation of the Charges, or the execution, delivery or performance of the other Definitive Documents; and

(iii)    the payments made by the Sears Canada Entities pursuant to this Order, the DIP ABL Credit Agreement, the DIP Term Credit Agreement or the other Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

53.    **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the relevant Sears Canada Entity's interest in such real property leases.

54.    **THIS COURT ORDERS** that, notwithstanding any other provision of this Order, the L/C Collateral Account (as defined in the DIP ABL Credit Agreement) shall be deemed to be subject to a lien, security, charge and security interest in favour of the DIP ABL Agent solely for the reimbursement obligation of SCI related to the letters of credit issued under the Wells Fargo Credit Agreement which remain undrawn from and after the Comeback Motion (as defined herein). The Charges as they may attach to the L/C Collateral Account, including by operation of law or otherwise: (a) shall rank junior in priority to the lien, security, charge and security interest in favour of the DIP ABL Agent in respect of the L/C Collateral Account; and (b) shall attach to the L/C Collateral Account only to the extent of the rights, if any, of any Sears Canada Entity to the return of any cash from the L/C Collateral Account in accordance with the DIP ABL Credit Agreement.

**CORPORATE MATTERS**

55.    **THIS COURT ORDERS** that SCI be and is hereby relieved of any obligation to call and hold an annual meeting of its shareholders until further Order of this Court.

56.    **THIS COURT ORDERS** that SCI be and is hereby relieved of any obligation to appoint any new directors until further Order of this Court.

**SERVICE AND NOTICE**

57.    **THIS COURT ORDERS** that the Monitor shall: (a) without delay, publish in The Globe and Mail (National Edition) and La Presse a notice containing the information prescribed under the CCAA; and (b) within five days after the date of this Order, (i) make this Order publicly available in the manner prescribed under the CCAA, (ii) send or cause to be sent, in the prescribed manner, a notice to every known creditor who has a claim against the Sears Canada Entities of more than $1,000 (excluding individual employees, former employees with pension and/or retirement savings plan entitlements, and retirees and other beneficiaries who have entitlements under any pension or retirement savings plans), and (iii) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the claims, names and addresses of the individuals who are creditors publicly available.

58.    **THIS COURT ORDERS** that the Monitor shall create, maintain and update as necessary a list of all Persons appearing in person or by counsel in this proceeding (the "**Service List**"). The Monitor shall post the Service List, as may be updated from time to time, on the Monitor's Website (as defined herein) as part of the public materials to be made available thereon in relation to this proceeding. Notwithstanding the foregoing, the Monitor shall have no liability in respect of the accuracy of or the timeliness of making any changes to the Service List.

59.    **THIS COURT ORDERS** that any employee of any of the Sears Canada Entities that receives a notice of termination from any of the Sears Canada Entities shall be deemed to have received such notice of termination by no more than the seventh day following the date such notice of termination is delivered, if such notice of termination is sent by ordinary mail, courier or registered mail.

60.    **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List

- 26 -

website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/eservice-commercial/) shall be valid and effective service. Subject to Rule 17.05, this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: cfcanada.fticonsulting.com/searscanada (the "**Monitor's Website**").

61.    **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, the Sears Canada Entities and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Sears Canada Entities' creditors or other interested parties at their respective addresses as last shown on the records of the Sears Canada Entities and that any such service or distribution by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

62.    **THIS COURT ORDERS** that the Applicants, the Monitor, the Financial Advisor, the DIP Term Agent on behalf of the DIP Term Lenders and the DIP ABL Agent on behalf of the DIP ABL Lenders, and their respective counsel are at liberty to serve or distribute this Order, any other materials and orders as may be reasonably required in these proceedings, including any notices, or other correspondence, by forwarding true copies thereof by electronic message to the Applicants' creditors or other interested parties and their advisors. For greater certainty, any such distribution or service shall be deemed to be in satisfaction of a legal or juridical obligation, and notice requirements within the meaning of clause 3(c) of the Electronic Commerce Protection Regulations, Reg. 81000-2-175 (SOR/DORS).

**COMEBACK MOTION**

63.    **THIS COURT ORDERS** that the comeback motion shall be heard on July 13, 2017 (the "Comeback Motion").

**GENERAL**

64.     **THIS COURT ORDERS** that the Sears Canada Entities or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

65.     **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Sears Canada Entities, the Business or the Property.

66.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Sears Canada Entities, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Sears Canada Entities and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Sears Canada Entities and the Monitor and their respective agents in carrying out the terms of this Order.

67.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as the foreign representative of the Applicants to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1515, as amended, and to act as foreign representative in respect of any such proceedings and any ancillary relief in respect thereto, and to take such other steps as may be authorized by the Court.

68.     **THIS COURT ORDERS** that any interested party (including the Sears Canada Entities and the Monitor) may apply to this Court to vary or amend this Order at the Comeback Motion

- 28 -

on not less than seven (7) calendar days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

69.    **THIS COURT ORDERS** that Confidential Appendix B and Confidential Appendix C to the Pre-Filing Report shall be and are hereby sealed, kept confidential and shall not form part of the public record pending further Order of this Court.

70.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard/Daylight Time on the date of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO:

JUL 1 3 2017

PER / PAR:

Court File No. CV-17-11846-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SEARS CANADA INC., CORBEIL ÉLECTRIQUE INC., S.L.H. TRANSPORT INC., THE CUT INC., SEARS CONTACT SERVICES INC., INITIUM LOGISTICS SERVICES INC., INITIUM COMMERCE LABS INC., INITIUM TRADING AND SOURCING CORP., SEARS FLOOR COVERING CENTRES INC., 173470 CANADA INC., 2497089 ONTARIO INC., 6988741 CANADA INC., 10011711 CANADA INC., 1592580 ONTARIO LIMITED, 955041 ALBERTA LTD., 4201531 CANADA INC., 168886 CANADA INC., AND 3339611 CANADA INC. (collectively, the "Applicants")

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
(Commercial List)

Proceeding commenced at Toronto

---

**AMENDED AND RESTATED INITIAL ORDER**

---

**OSLER, HOSKIN & HARCOURT LLP**
Box 50, 1 First Canadian Place
Toronto, Canada  M5X 1B8

Marc Wasserman   (LSUC #: 44066M)
Tel:       416.862.4908

Jeremy Dacks       (LSUC #: 41851R)
Tel:       416.862.4923

Michael De Lellis   (LSUC #: 48038U)
Tel:       416.862.5997

Lawyers for the Applicants