# EXHIBIT H

CV-18-00611214-00CL

Court File No.

### *ONTARIO*
### **SUPERIOR COURT OF JUSTICE**
### **(COMMERCIAL LIST)**

B E T W E E N :

SEARS CANADA INC., by its Court-appointed Litigation Trustee,
J. DOUGLAS CUNNINGHAM, Q.C.

Plaintiff

and

ESL INVESTMENTS INC., ESL PARTNERS LP, SPE I PARTNERS, LP,
SPE MASTER I, LP, ESL INSTITUTIONAL PARTNERS, LP,
EDWARD LAMPERT, EPHRAIM J. BIRD, DOUGLAS CAMPBELL,
WILLIAM CROWLEY, WILLIAM HARKER, R. RAJA KHANNA, JAMES
MCBURNEY, DEBORAH ROSATI, and DONALD ROSS

Defendants

## STATEMENT OF CLAIM

TO THE DEFENDANTS

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the Plaintiff.
The Claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for
you must prepare a Statement of Defence in Form 18A prescribed by the Rules of Civil Procedure,
serve it on the Plaintiff's lawyer or, where the Plaintiff does not have a lawyer, serve it on the
Plaintiff, and file it, with proof of service in this court office, WITHIN TWENTY DAYS after this
Statement of Claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of
America, the period for serving and filing your Statement of Defence is forty days. If you are
served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a Statement of Defence, you may serve and file a Notice of
Intent to Defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to
ten more days within which to serve and file your Statement of Defence.

-2-

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

TAKE NOTICE: THIS ACTION WILL AUTOMATICALLY BE DISMISSED if it has not been set down for trial or terminated by any means within five years after the action was commenced unless otherwise ordered by the court.

Date _December 19th 2018_    Issued by _Ray Williams_    Ray Williams, Registrar
Local Registrar

Address of    Superior Court of Justice
court office:   330 University Avenue, 10th Floor
Toronto ON M5G 1E6
R7

-3-

TO:       **MCMILLAN LLP**
          Brookfield Place
          181 Bay Street
          Suite 4400
          Toronto ON  M5J 2T3

          **Wael Rostom**
          wael.rostom@mcmillan.ca
          Tel:    (416) 865-7790
          **Brett Harrison**
          brett.harrison@mcmillan.ca
          Tel:    (604) 691-6118
          **Tushara Weerasooriya**
          tushara.weerasooriya@mcmillan.ca
          Tel:    (416) 860-6568
          **Stephen Brown-Okruhlik**
          stephen.brown-okruhlik@mcmillan.ca
          Tel:    (416) 860-6568
          Fax:    (416) 640-3207


          **POLLEY FAITH LLP**
          The Victory Building
          80 Richmond Street West
          Suite 1300
          Toronto ON  M5H 2A4

          **Harry Underwood**
          hunderwood@polleyfaith.com
          **Andrew Faith**
          afaith@polleyfaith.com
          **Jeffrey Haylock**
          jhaylock@polleyfaith.com
          **Sandy Lockhart**
          slockhart@polleyfaith.com
          Tel:    416 365 1600
          Fax:    416 365 1601

          Lawyers for the Defendants,
          ESL Investments Inc., ESL Partners LP, SPE I Partners LP, SPE Master I LP,
          ESL Institutional Partners LP, and Edward Lampert

-4-

AND TO:    **CASSELS BROCK & BLACKWELL LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Suite 2100
Toronto ON  M5H 3C2

**John N. Birch**  LSO#: 38968U
jbirch@casselsbrock.com
Tel:    (416) 860-5225
Fax:    (416) 640-3057
**Mary I.A. Buttery**  LSO#: 34599R
mbuttery@casselsbrock.com
Tel:    (604) 691-6118
Fax:    (604) 691-6120
**Natalie Levine**  LSO#: 64908K
nlevine@casselsbrock.com
Tel:    (416) 860-6568
Fax:    (416) 640-3207

Lawyers for the Defendants,
Ephraim J. Bird, Douglas Campbell, William Crowley, William Harker,
James McBurney and Donald Ross


AND TO:    **BENNETT JONES LLP**
Barristers and Solicitors
1 First Canadian Place
Suite 3400
P.O. Box 130
Toronto ON  M5X 1A4

**Richard Swan**
swanr@bennettjones.com
Tel:    (416) 777-7479
**Sean Zweig**
zweigs@bennettjones.com
Tel:    (416) 777-6254
Fax:    (416) 863-1716

Lawyers for the Defendants,
R. Raja Khanna and Deborah Rosati

-5-

## CLAIM

1.      The Plaintiff claims:

(a)      damages on a joint and several basis in the amount of $509 million,

      (i)      as against the Former Directors (as defined below) and Ephraim J. Bird ("**Bird**") for breach of fiduciary duty, breach of the duty of care, and conspiracy;

      (ii)      as against the ESL Parties (as defined below), for inducing the Former Directors and Bird to breach their duties owed to Sears Canada Inc. ("**Sears Canada**"), knowing assistance, and conspiracy;

(b)      in the alternative to paragraph (a) (ii) above, damages against the ESL Parties on a joint and several basis in the amount of $402 million for inducing the Former Directors and Bird to breach their duties owed to Sears Canada, knowing assistance, and conspiracy;

(c)      a declaration that the ESL Parties knowingly received the proceeds of a breach of fiduciary duty and/or were unjustly enriched, hold the proceeds of the Dividend (as defined below) in trust for Sears Canada and must disgorge the proceeds they received on account of the Dividend to Sears Canada;

(d)      a declaration that the authorization and payment of the Dividend was oppressive and unfairly disregarded and was prejudicial to the interests of Sears Canada and its stakeholders and an Order setting aside the Dividend;

-6-

(e)    punitive and exemplary damages;

(f)    pre-judgment and post-judgment interest in accordance with sections 128 and 129

of the *Courts of Justice Act*, R.S.O. 1990, c. C.43, as amended;

(g)    the costs of this proceeding, plus all applicable taxes; and

(h)    such further and other relief as to this Honourable Court may seem just.

**Overview**

2.    In the early 2010s, Sears Canada was one of Canada's largest retailers. It operated more than 100 of its own full-line department stores, and had more than 25,000 employees.

3.    However, Sears Canada was facing serious financial and operational challenges. Since 2007, its revenues and EBITDA had declined each year. In 2011, its management recognized that Sears Canada was falling behind its peers and identified a need to modernize its business in order to keep pace in an increasingly competitive retail environment. This required significant capital investment in order to refresh Sears Canada's stores and improve its e-commerce platform.

4.    Despite these warnings, Sears Canada's board of directors ("**Board**") failed to authorize capital investments in the business. Instead, between 2005 and 2012, the company sold assets worth approximately $2.86 billion and distributed approximately $2.97 billion in capital to its shareholders.

5.    The primary recipients of these distributions were Sears Holdings Corp. ("**Sears Holdings**"), the hedge fund ESL Investments, Inc. ("**ESL**") and its affiliates, and ESL's founder and proprietor, the billionaire investor Edward S. Lampert (collectively, the "**Significant Shareholders**").

6.      In late 2013, Sears Canada was in the midst of its worst year yet. Its revenues declined by more than $300 million year-over-year and its operating losses reached almost $188 million. In September, its CEO resigned in frustration at the refusal of the Board to allocate sufficient capital to implement a turnaround strategy.

7.      At the same time, ESL was experiencing a liquidity crisis. Its investors had submitted billions of dollars in redemption requests, which it was having difficulty funding.

8.      Over the course of the year, Sears Canada sold off a number of its most important assets (the "**Key Asset Sales**"): the leases underlying some of its largest and most lucrative stores. The Sears Canada directors involved in the Key Asset Sales included a number of former ESL employees who had been selected for their roles by Lampert. In addition, even though he was not an officer or director of Sears Canada, Lampert was personally involved in the negotiations concerning these transactions.

9.      The Key Asset Sales generated extraordinary proceeds of approximately $591 million. At a November 2013 meeting of the Board held at the offices of Sears Holdings' lawyers in New York City, less than a week after the final sale closed (the "**November 2013 Meeting**"), Sears Canada's management proposed a plan to distribute more than $509 million to its shareholders through an extraordinary dividend (the "**Dividend**").

10.      The Board was not given any advance notice of the proposed Dividend: it did not even appear on the agenda for the November 2013 Meeting. Although the Board was given extensive materials by management, those materials did not address the proposed Dividend or any analysis of its potential impacts on Sears Canada's business. Nor did the Board receive legal or financial advice in relation to it. Nevertheless, the Board authorized the payment of the Dividend.

-8-

11.    Lampert and ESL improperly used their influence with the Board to procure the Dividend, for the purpose of providing funds to the Significant Shareholders. In accordance with their shareholdings in Sears Canada, 79% of the Dividend was paid to Significant Shareholders.

12.    The payment of the Dividend diverted funds from Sears Canada at a time when the Defendants knew, or ought to have known, that it would be in the best interests of Sears Canada to reinvest the funds in the business or to preserve liquidity to satisfy increasing losses and creditor claims. By mid-2017, Sears Canada had become insolvent, and, on June 22, 2017, it was granted protection under the *Companies' Creditors Arrangement Act* (the "***CCAA***"). Sears Canada has since liquidated its remaining assets and ceased operations, leaving massive unsatisfied debts owed to its unsecured creditors, including former employees and pensioners.

13.    It was not until after the *CCAA* Proceeding (defined below) commenced that it was discovered that the declaration of the Dividend had taken place in improper circumstances.

14.    The Plaintiff seeks to set aside the Dividend and seeks damages to compensate Sears Canada and therefore its creditors for the losses they have suffered as a result of the Dividend.

**The Parties**

15.    The Plaintiff, Sears Canada, is a corporation incorporated under the laws of Canada, with its headquarters in Toronto.

16.    Sears Canada is insolvent. It is an applicant in a *CCAA* proceeding commenced on June 22, 2017 (the "***CCAA* Proceeding**"). By order dated December 3, 2018, the presiding court in that proceeding (the "***CCAA* Court**") appointed the Honourable J. Douglas Cunningham, Q.C., as

-9-

Litigation Trustee for Sears Canada to pursue claims on behalf of Sears Canada and its creditors against third parties, including the Defendants.

17.     The Defendant, ESL Investments Inc., is a corporation incorporated under the laws of Delaware, in the United States of America, with its headquarters in Bay Harbor Islands, Florida, in the United States of America. It is a hedge fund which operates through a number of subsidiary entities, namely: ESL Partners, LP, SPE I Partners, LP, SPE Master I, LP, and ESL Institutional Partners, LP. These entities are collectively referred to herein as "**ESL**". As a whole, ESL was at all relevant times the largest shareholder of Sears Holdings.

18.     The Defendant, Edward S. Lampert, is an individual residing in Indian Creek, Florida, in the United States of America. Lampert was the CEO of Sears Holdings from May 2013 to October 2018. Lampert owns and controls ESL, and has served as ESL Investments Inc.'s Chairman and Chief Executive Officer since he founded it in 1988. Collectively, ESL and Lampert are referred to herein as the "**ESL Parties**".

19.     The Defendant Ephraim J. Bird is an individual residing in Salado, Texas, in the United States of America. Bird was a director of Sears Canada between May 2006 and November 13, 2013, and its interim CFO, and later permanent CFO, from March 2013 until June 2016.

20.     The Defendant Douglas Campbell ("**Campbell**") is an individual residing in Toronto. Campbell was Sears Canada's COO from November 2012 until September 24, 2013, and its CEO and a director from that date until October 2014.

-10-

21.    The Defendant William Crowley ("**Crowley**") is an individual residing in New York, New York, in the United States of America. Crowley was the Chairman of Sears Canada's Board in late 2013, and was a director of Sears from May 2005 to April 2015.

22.    The Defendant William Harker ("**Harker**") is an individual residing in New York, New York, in the United States of America. Harker was a director of Sears Canada from November 2008 to April 2015.

23.    The Defendant R. Raja Khanna ("**Khanna**") is an individual residing in Toronto. Khanna was a director of Sears Canada from October 2007 to August 2018.

24.    The Defendant James McBurney ("**McBurney**") is an individual residing in London, in the United Kingdom. McBurney was a director of Sears Canada from April 2010 until 2015.

25.    The Defendant Deborah Rosati ("**Rosati**") is an individual residing in Wainfleet, Ontario. Rosati was a director of Sears Canada from April 2007 to August 2018.

26.    The Defendant Donald Ross ("**Ross**") is an individual residing in New York, New York, in the United States of America. Ross was a director of Sears Canada from May 2012 until 2014.

27.    The Defendants, other than the ESL Parties and Bird, are referred to herein as the "**Former Directors**". All of the Former Directors were members of the Board during the November 2013 Meeting.

**Lampert's Purchase of Sears Holdings**

28.    In early 2005, the ESL Parties acquired a controlling share in the American retailer Sears, Roebuck & Co. ("**Sears Roebuck**"), the then-parent company of Sears Canada. After the

-11-

acquisition, the ESL Parties established Sears Holdings to hold their stakes in Sears Roebuck and
Kmart, another retailer.

29.    Lampert appointed himself Chairman of Sears Holdings, and later made himself CEO.
From 2005 onwards, he played a direct role in the formulation of Sears Holdings' business
strategy.

30.    Soon after the acquisition, Lampert replaced the existing senior management of Sears
Roebuck, in many cases with former ESL executives. Appointments to key positions at Sears
Holdings made by Lampert included:

    (a)    Crowley, the President and COO of ESL, who became Sears Holdings' CFO;

    (b)    Harker, the former General Counsel of ESL, who became Sears Holdings' General
        Counsel and Corporate Secretary;

    (c)    Bird, the CFO of ESL from 1991 to 2002, who became a board member and the
        CFO of Sears Hometown and Outlet Stores, Inc., an important Sears Holdings
        subsidiary; and

    (d)    Jeffrey Stollenwerck ("**Stollenwerck**"), a Vice President at ESL, who became
        Senior Vice President and then President of Sears Holdings' real estate business.

31.    Over the last several years, Sears Holdings has closed hundreds of Kmart and Sears stores
and laid off thousands of employees. On October 15, 2018, Sears Holdings filed for bankruptcy
protection under Chapter 11 of the U.S. Bankruptcy Code.

-12-

32.     By 2013, Sears Canada was an independent public company and was no longer a Canadian operating subsidiary of Sears Holdings.

**Lampert's Involvement in the Operations of Sears Canada**

33.     As he had at Sears Holdings, Lampert took a direct role in developing Sears Canada's business strategy.

34.     The ESL Parties had significant direct shareholdings in Sears Canada. As of November 2013, the ESL Parties beneficially owned more than 28.1 million Sears Canada shares, amounting to 27.6% of its outstanding shares.

35.     Lampert influenced the appointment of Sears Canada's management, including its chief executive officers. This included the appointment of Bird, a former ESL executive.

36.     Crowley was appointed as the Chairman of the Board of Sears Canada in 2006, and Harker became a director in 2008. Bird was appointed as a Sears Canada director from 2006 to November 13, 2013, when he resigned from the Board but stayed on as the company's CFO.

**Sears Canada's Financial and Operational Problems**

37.     Between 2011 and 2013, Sears Canada suffered aggregate operating losses of more than $310 million.

38.     As early as September 2011, the company's 2011-2014 Strategic Plan (the "**Strategic Plan**") explained that "Sears Canada requires a full transformation to be able to compete and win in the increasingly competitive Canadian retail environment."

39.     Management provided the Board with regular updates on Sears Canada's operations, including the progress of the Strategic Plan. A March 2012 presentation to the Board noted that:

-13-

"Customer and employee perceptions have been in decline, yet to find bottom", "Sears is ... failing
to connect with the next generation", and "[we h]ave underinvested recently in stores".

40.    In September 2013, Sears Canada's CEO, Calvin McDonald ("**McDonald**"), resigned.
McDonald later told the press that he had left in frustration at not being able to take the steps
necessary to save the company, as a result of Lampert's refusal to authorize investments in Sears
Canada's business. McDonald stated that "there was not a real long term commitment to save this
business".

41.    The minutes of Sears Canada's September 23, 2013 Board meeting summarize a
presentation given by Douglas Campbell, Sears Canada's then-COO, which noted that "At current
trends, the projection for 2016 EBITDA will be -$105 million", and that sales "continue to decline
across the business at 2.6%". Campbell joined the Board the following day.

42.    At the same meeting, the Board received a presentation on the Strategic Plan, which
explained that the company's e-commerce system was "seriously substandard", and advised that
"To catch competitors, significant investment and transformation is required."

43.    By October 2013, the Board was well aware of the problems facing Sears Canada and that
its long term viability was at risk. In the circumstances, it was obvious to the Board that Sears
Canada urgently needed capital to invest in its business or to preserve value to satisfy its rapidly
growing losses and liabilities.

44.    However, instead of investing in Sears Canada's business or preserving value to fund
liabilities and increasing losses, the Former Directors authorized a plan under which the company
sold off its most lucrative assets and sent the proceeds directly to its shareholders.

-14-

**The Dividend Plan**

ESL's Need for Liquidity to Satisfy Redemptions

45.    In 2012, ESL received a large number of redemption requests from its investors. These requests totaled approximately $3.5 billion (US), an amount equal to more than half of ESL's total assets under management at the time. The redemptions were payable in 2013.

46.    ESL did not have sufficient cash on hand to satisfy its investors' demands. As a result, it was forced to liquidate significant portions of its portfolio and to pay in-kind redemptions, made up of shares of the companies it owned.

47.    To help ESL fund the redemptions, Lampert devised a plan to cause Sears Canada to make a large dividend payment, the majority of which would go to the Significant Shareholders. ESL would use the cash it received to fund redemptions, or distribute its Sears Holdings shares, which would be increased in value as a result of the Dividend, to its own investors as in-kind redemptions.

Sale of Sears Canada's Assets

48.    As a result of its large operating losses, Sears Canada did not have sufficient cash on hand to fund a large dividend payment. The only way it could raise the necessary funds was to liquidate a number of its "crown jewels": the long-term under-market-value leases for its largest and most lucrative stores.

49.    Sears Canada had liquidated many of its assets since being acquired by the ESL Parties in 2005. However, in that context, the 2013 Key Asset Sales were notable for their size and impact on Sears Canada's operations.

50.    Over the course of 2013, Sears Canada sold seven of its most valuable leases for approximately $591 million. The sales were carried out in two transactions:

-15-

(a)    the sale of two leases – at the Yorkdale Shopping Centre in Toronto and the Square
One Mall in Mississauga – to Oxford Properties Group in June 2013 for $191
million; and

(b)    the sale of five leases – its flagship store in the Toronto Eaton Centre and four other
large stores (two in the Greater Toronto Area, and one each in London, Ontario and
Richmond, BC) – in November 2013 to Cadillac Fairview Corporation Limited for
$400 million (the "**Cadillac Fairview Sale**").

51.    Sears Canada also reached an agreement, in early November 2013, to sell its 50% interest
in a group of eight Quebec shopping centres to Montez Income Properties Corporation for $315
million. That transaction closed in January 2014.

52.    Lampert played a direct role in negotiating the Key Asset Sales, even though he was not a
director or an officer of Sears Canada. He provided direct instructions to Sears Canada on the price
sought by Sears for the Key Asset Sales. Among other things, Lampert personally directed the
negotiation strategy in connection with the Cadillac Fairview Sale. Stollenwerck, a senior
executive at Sears Holdings' real estate division and a former ESL employee, was the primary
negotiator for Sears Canada, even though he was not a Sears Canada employee.

53.    The Former Directors and Bird knew that the Key Asset Sales would significantly reduce
Sears Canada's earnings capacity, since the stores being closed were some of the company's most
valuable locations. A presentation to the Board (which at the time included Bird) at its September
2013 meeting projected a significant loss in earnings as a result of the liquidation of four of the
large stores that were ultimately included in the Cadillac Fairview Sale.

-16-

The Dividend Proposal

54.    At the same time the Cadillac Fairview Sale was closing in November 2013, three former ESL employees – Bird, Crowley, and Harker – worked to finalize the proposal for a large extraordinary dividend. Over the course of the ten-day period from November 8 to 18, 2013, Bird, Crowley and Harker settled on a proposed dividend payment of $5 per share, or more than $509 million in total.

55.    At the time, the Significant Shareholders owned more than 79% of Sears Canada's outstanding shares, and therefore stood to receive a total of approximately $402 million from a $5 per share Dividend.

Lack of Notice and Undue Haste

56.    The Cadillac Fairview Sale closed on Tuesday, November 12, 2013. The Dividend was approved at a board meeting held less than a week later, on the following Monday and Tuesday, November 18-19, 2013.

57.    No information about or notice of the proposed Dividend was provided to the Board by Sears Canada's management in the lead-up to the meeting. Indeed, the Dividend was not even referred to in the agenda for the November 2013 Meeting.

58.    Approval of the Dividend was treated as a foregone conclusion by Bird, Crowley and Harker. Although, as discussed below, the Board was not presented with any financial analysis of the Dividend, the minutes of the November 2013 Meeting note that the Board was "presented [with] a draft press release relating to the dividend" at the beginning of their discussion.

-17-

59.     Notwithstanding the fact they did not receive adequate notice of the proposed Dividend before being asked to vote on it, the Former Directors did not seek any information or advice about the proposal before they approved it.

Insufficient Information Provided to the Board

60.     The Board was not given sufficient information to understand the impact of the Dividend, nor did they seek additional information from management.

61.     Extensive background materials (the "**Materials**") were prepared by management and given to the Board before the November 2013 Meeting. However, the Materials did not contain any analysis of the Dividend. In fact, the Materials contained no references to the Dividend at all. The financial and operational plans included with the Materials also omitted any reference to the Dividend and failed to account for the Dividend in their calculations.

62.     Even though Crowley, Bird, and Harker had previously undertaken a financial analysis of various Dividend scenarios in the weeks leading up to the declaration of the Dividend, none of their findings were presented to the Board.

63.     Without even basic financial information or any professional advice, the Board was not in a position to properly assess the Dividend, even if it had tried or wanted to do so, which it did not.

Lack of Governance Procedures

64.     The procedures adopted by Sears Canada's Board at the November 2013 Meeting were manifestly insufficient for a transaction as large as the Dividend, particularly in light of Sears Canada's precarious financial and operational position at the time.

65.     The Board did not, *inter alia*:

-18-

(a)    seek advice from outside legal counsel;

(b)    commission any analysis from financial, accounting, or other advisors; or

(c)    convene an *in camera* session of the independent directors to discuss the Dividend
prior to its approval.

66.    The failure to take any of these steps before approving the Divided differed from the
Board's conduct with respect to previous dividends and failed to comply with proper governance
procedures.

67.    For example, before authorizing the payment of two smaller dividends in 2010, the Board
implemented a number of significant governance procedures.

68.    In 2010, Sears Canada's management provided the Board with a series of capital structure
presentations, which were updated several times. These presentations explained the benefits and
risks of returning capital to the Company's shareholders and included both extensive financial
analysis and in-depth discussions of potential alternatives.

69.    The proposed 2010 dividends were discussed during at least five separate board meetings
between April and September 2010. The independent directors held an *in camera* meeting to
discuss the dividend, and asked outside counsel to attend and provide information on the
implications of the payment of an extraordinary dividend, as well as other potential options for use
of the company's capital.

70.    In November 2013, despite Sears Canada's far worse financial and operational situation,
the Board did not conduct *any* of this due diligence. Instead, it approved the Dividend proposed

-19-

by Lampert's representatives in management and on the Board without any analysis of the implications to the company itself, or its minority shareholders, employees, creditors, or other stakeholders.

## Sears Canada's Board Rubber-Stamps the Dividend Payment

71.    After authorizing the liquidation of its most valuable assets, the Board failed to ensure that the proceeds were used for Sears Canada's benefit or to ensure that sufficient value would be available to satisfy creditor claims that would continue to accumulate as losses increased.

72.    To the contrary, the Former Directors, almost immediately and without scrutiny or evaluation, decided to dividend out almost all of the money that Sears Canada earned from the Key Asset Sales.

73.    The Former Directors could not have reasonably concluded that the Dividend was in Sears Canada's best interest based on the extremely limited information available to them at the time they approved the Dividend. Indeed, the Dividend was not in Sears Canada's best interest. By approving the Dividend, the Former Directors breached their common law and statutory obligations to Sears Canada.

## Effects of the Dividend

74.    Payment of the Dividend caused serious harm to Sears Canada and its stakeholders.

75.    The funds used to pay the Dividend were derived from the sale of leases for some of Sears Canada's largest and best-performing stores, which were located in some of Canada's most densely populated areas. These divestments brought about a significant decline in Sears Canada's revenue-generation capacity without any corresponding long-term investment in its operations.

-20-

76.    The main beneficiaries of the Dividend were Sears Holdings, ESL, and Lampert. Sears Canada did not receive any benefit from the Dividend.

77.    After three more years of enormous losses, Sears Canada became insolvent in 2017. It has since liquidated all of its remaining inventory and assets and closed all of its stores. Sears Canada's liquidation has cost more than 15,000 employees their jobs, and has left its creditors with hundreds of millions of dollars in uncollectable debts.

**The *CCAA* Proceeding**

78.    On June 22, 2017, Sears Canada and a number of its affiliates commenced the *CCAA* Proceeding.

79.    Although the existence of the Dividend was known at the time it was paid, prior to the commencement of the *CCAA* Proceeding, the circumstances surrounding the Board's authorization of and the ESL Parties' involvement in the Dividend were not known to anyone other than Sears Canada's senior management and directors, and the Significant Shareholders.

80.    These facts, including Lampert's involvement in the sale of the real estate assets, the non-independent Directors' role in the plan to declare the Dividend, and the absence of information and manifestly inadequate governance procedure at the November 2013 Meeting, were not known and were only uncovered after the *CCAA* Proceeding commenced.

**The Claims**

81.    The facts surrounding the authorization and payment of the Dividend give rise to a number of claims by Sears Canada against the Former Directors, Bird, and the ESL Parties.

The Former Directors and Bird: Breaches of Duties and Oppression

82.    The Former Directors breached their common law and statutory duties of care and fiduciary

duties by:

(a)    authorizing the Dividend in circumstances where it was not in the best interests of

Sears Canada, thereby favouring the interests of the Significant Shareholders over

those of the company and its other stakeholders; and

(b)    failing to exercise the care, diligence and skill that a reasonably prudent person

would have exercised in comparable circumstances by, among other things,

neglecting to obtain any information or professional advice about the impact on the

business of Sears Canada in paying the Dividend, or in the alternative investing the

$509 million into its business or preserving this value to satisfy liabilities, before

agreeing to authorize it.

83.    Although Bird was not a director of Sears Canada at the time the November 2013 Meeting

was held, he had been a director until immediately prior to the meeting. Bird attended the

November 2013 Meeting in his capacity as chief financial officer of Sears Canada, and as such, he

continued to owe fiduciary duties and a duty of care and loyalty to Sears Canada after his

resignation from the Board.

84.    Bird breached the duties he owed to Sears Canada by:

(a)    proposing the Dividend in circumstances where the Dividend was not in the best

interests of Sears Canada;

(b)    proposing the Dividend for the benefit of the Significant Shareholders;

-22-

(c)     preparing and planning for the distribution of the Dividend without providing adequate information to the Board, in the hope that the Dividend would be declared by the Board;

(d)     withholding relevant financial information from the Former Directors that they required to properly analyze the merits of the Dividend, including information about Sears Canada's pension deficit; and

(e)     proposing and recommending the Dividend and then resigning from the Board before the November 2013 Meeting.

85.     As a result of the breaches referred to in paragraphs 82 to 84 above, Sears Canada seeks to unwind the Dividend and seeks damages against the Former Directors and Bird in the amount of $509 million.

86.     Further, the Former Directors and Bird acted in an oppressive manner towards Sears Canada by:

(a)     disregarding the reasonable expectation of Sears Canada that their powers would be used for the benefit of the company, rather than for that of third parties like the Significant Shareholders; and

(b)     using their powers to authorize the Dividend, which was unfairly prejudicial to and disregarded the interests of Sears Canada and its creditors.

-23-

87.    It is appropriate for Sears Canada, by way of its Litigation Trustee, to be the complainant

for an oppression claim on its own behalf and on behalf of its creditors, who are all similarly

affected by the oppressive conduct described above.

88.    As a result of the Former Directors' and Bird's oppression Sears Canada seeks an Order:

(a)    declaring that the Former Directors and Bird, breached their duties owed to Sears

Canada;

(b)    setting aside the Dividend; and

(c)    ordering the Former Directors and Bird to pay damages to Sears Canada on a joint

and several basis in the amount of $509 million.

89.    An order setting aside the Dividend, imposing a constructive trust over those funds, and/or

ordering compensatory payments in the same amount would remedy the Former Directors' and

Bird's oppression and return to Sears Canada the funds that rightly belong to it, for the ultimate

benefit of its creditors.

The ESL Parties: Inducing Breaches of Duties; Knowing Assistance, Knowing Receipt, and Unjust
Enrichment

90.    The ESL Parties knowingly induced, encouraged, assisted and participated in the Former

Directors' and Bird's breaches of fiduciary duty. They knew of the fiduciary duties the Former

Directors and Bird owed to Sears Canada, and that the Dividend would harm Sears Canada. The

ESL Parties nonetheless influenced and encouraged the Former Directors to authorize the

Dividend for the ESL Parties' own benefit.

-24-

91.    But for the ESL Parties' inducement of and their assistance given to the Formers Directors'

and Bird's breaches of their fiduciary duties to Sears Canada, those defendants would not have

been put in circumstances where the breach of their duties in this manner was possible.

92.    The ESL Parties knowingly assisted the Former Directors and Bird to take the wrongful

step of authorizing and encouraging the Dividend, which resulted in prejudice to Sears Canada's

rights, in circumstances where there was no right in the circumstances for the Former Directors

and Bird to take such steps.

93.    The ESL Parties are liable to Sears Canada for damages in the amount of $509 million for

inducing breaches of fiduciary duties and knowing assistance in the Former Directors' and Bird's

breaches of their duties.

94.    In the alternative, the ESL Parties are liable for disgorgement in the amount of $140.8

million for knowingly receiving the proceeds of the Former Directors' and Bird's breaches of

fiduciary duty.

95.    In addition, or in the further alternative, the ESL Parties were unjustly enriched by

receiving $140.8 million by way of the Dividend in circumstances where it should not have been

approved. The Dividend was paid gratuitously as a benefit to the ESL Parties, and caused a

corresponding deprivation to Sears Canada. There was no juristic reason for the ESL Parties to

receive the Dividend.

96.    The appropriate remedy for the ESL Parties' unjust enrichment is the imposition of a

constructive trust in favour of Sears Canada over the portion of the Dividend received by them.

Conspiracy By All Defendants

97.    All of the Defendants acted together to generate the funds for and authorize the Dividend to the benefit of the Significant Shareholders and to the detriment of Sears Canada. This was unlawfully carried out through the Former Directors' and Bird's breaches of the duty of care, fiduciary duties, and oppressive conduct, as planned and directed by the ESL Parties. This conduct was directed at Sears Canada in circumstances where the Defendants knew, or ought to have known, that damage to Sears Canada would result.

98.    The Defendants knew, or ought to have known, that it was not in the best interests of Sears Canada to distribute over half a billion dollars to its shareholders at a time when capital needed to be re-invested in the corporation to arrest its decline or to preserve value to satisfy liabilities. Instead, the distribution of the extraordinary revenues generated by the Key Asset Sales to shareholders accelerated Sears Canada's decline, thereby damaging its interests in the short-, medium-, and long-term, and ensured that $509 million did not remain to satisfy increasing liabilities.

99.    The Defendants are liable to Sears Canada for damages in the amount of $509 million for conspiracy.

**Service *Ex Juris*, Statutes Relied Upon, and Location of Trial**

100.    The Plaintiff is entitled to serve any Defendants who reside outside Ontario without a court order because this claim relates to a tort committed in Ontario, and because the Defendants carried on business in Ontario.

-26-

101.    The plaintiff pleads and relies upon the *Canada Business Corporations Act*, R.S.C. 1985,

c. C-44, sections 122, 238, and 241 and Rules 17(g) and 17(p) of the *Rules of Civil Procedure*,

R.R.O. 1990, Reg. 194.


102.    The plaintiff proposes that this action be tried in the City of Toronto.




December 19, 2018                          **LAX O'SULLIVAN LISUS GOTTLIEB LLP**
                                           Counsel
                                           Suite 2750, 145 King Street West
                                           Toronto ON M5H 1J8

                                           **Matthew P. Gottlieb** LSO#: 32268B
                                           mgottlieb@lolg.ca
                                           Tel:    416 644 5353
                                           **Andrew Winton** LSO#: 54473I
                                           awinton@lolg.ca
                                           Tel:    416 644 5342
                                           **Philip Underwood** LSO#: 73637W
                                           punderwood@lolg.ca
                                           Tel:    416 645 5078
                                           Fax:    416 598 3730

                                           Lawyers for the Plaintiff

SEARS CANADA INC. by its litigation trustee
J. DOUGLAS CUNNINGHAM, Q.C.

Plaintiff

-and-

ESL INVESTMENTS INC., et al.

Defendants

Court File No.

Cv-18-00611214-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

PROCEEDING COMMENCED AT
TORONTO

**STATEMENT OF CLAIM**

**LAX O'SULLIVAN LISUS GOTTLIEB LLP**
Counsel
Suite 2750, 145 King Street West
Toronto ON M5H 1J8

**Matthew P. Gottlieb LSO#: 32268B**
mgottlieb@lolg.ca
Tel:    416 644 5353
**Andrew Winton LSO#: 54473I**
awinton@lolg.ca
Tel:    416 644 5342
**Philip Underwood LSO#: 73637W**
punderwood@lolg.ca
Tel:    416 645 5078
Fax:    416 598 3730

Lawyers for the Plaintiff