Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
      lschildkraut@archerlaw.com

    and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
      nsmith@robbins-schwartz.com

    and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

Hearing Date and Time: April 18, 2019 at 10:00 A.M.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.,* | ) ) ) | Case No. 18-23538 (RDD) (Jointly Administered) |
| Debtors. | ) ) | |

**SUPPLEMENTAL OBJECTION TO DEBTORS'**
**MOTION TO COMPEL TURNOVER OF ESTATE PROPERTY**

COMMUNITY UNIT SCHOOL DISTRICT 300, an Illinois school district existing and

operating pursuant to the Illinois School Code, 105 Illinois Compiled Statutes ("**ILCS**") 5/1-1, *et*

*seq.* (the "**School District**"), a party in interest to this case, by and through its attorneys, Robbins,

Schwartz, Nicholas, Lifton & Taylor, Ltd., Gensburg Calandriello & Kanter, P.C., and Archer & Greiner, P.C., files this Supplemental Objection (the "**Supplemental Objection**") to the *Debtors' Motion to Compel Turnover of Estate Property* (the "**Motion to Compel**") [Docket No. 2715]. In support of this Supplemental Objection, the School District states as follows:

**I.**

**BACKGROUND AND FACTS**

1. On November 12, 2018, the School District filed the *Motion of Community Unit School District 300 for Relief from the Automatic Stay or, in the Alternative, for Abstention* (the "**Motion to Lift Stay**") [Docket No. 652]. With that motion, the School District seeks to modify the automatic stay so that it can continue prosecuting a pending action against the Village and the Debtor in the Circuit Court of Cook County in the State of Illinois, Case No. 2018 CH 12683 (the "**Illinois Action**"). In the Illinois Action, the School District, as the direct recipient of 60% of the property tax subsidy the Debtors seek, has standing to seek to enjoin a tax subsidy payment under the Illinois EDA Act of approximately ten million dollars ($10,000,000.00). The School District asserts that the Debtor failed to maintain its 4,250 full time equivalent jobs at its corporate headquarters in the Village during the calendar year 2018, a statutory and contractual prerequisite for the tax rebate. As an alternative to modifying the automatic stay, the School District requested that the Court abstain from hearing the matters in dispute in the Illinois Action pursuant to 28 U.S.C. §§ 1334(c)(1) and (2).

2. On December 17, 2018, Sears Holdings Corporation ("**Sears**") and certain of its affiliates (together, the "**Debtors**") filed the *Debtors' Objection to Motion of Community Unit School District 300 for Relief from the Automatic Stay, or in the Alternative, Abstention* [Docket No. 1280].

3.     On February 28, 2019, the Debtors filed the Motion to Compel pursuant to Section 542(a) of the Bankruptcy Code in which the Debtor seeks an order from this Court directing the Village to turn over the same taxes at issue in the Illinois Action and the Motion to Lift Stay, alleging that the Debtor has created and maintained the requisite 4,250 full time equivalent jobs at its corporate headquarters in the Village.  In the Motion to Compel, the Debtors allege (1) the relevant year in which its compliance needs to be measured is 2017, not 2018 as alleged by the School District, and (2) critically and contrary to the plain language of the Illinois EDA Act and the practice of the Village and Sears for the past seven years, that the Debtors can count the full-time equivalent jobs created and maintained by tenants and contractors of the Debtors and extraordinarily other retail and service businesses simply located within the Economic Development Area.

4.     In support of the Motion to Compel, the Debtors filed the *Declaration of Mohsin Y. Meghji*, the Debtors' Chief Restructuring Officer (the "**Meghji Declaration**")  [Doc. No. 2717]. On March 14, 2019 the School District served a Notice of Deposition upon the Debtors pursuant to Bankruptcy Rule 7030 (the "**Rule 30(b)(6) Notice**").  On March 25, 2019, the Debtors provided their Objection and Responses to the Rule 30(b)(6) Notice (the "**Debtors' Objections to Deposition**").

5.     *Community Unit School District 300's (I) Objection to Debtors' Motion to Compel Turnover of Estate Property, and (II) Reply to Debtors' Objection to Motion of Community Unit School District 300 for Relief from the Automatic Stay or, in the Alternative, Abstention*, was filed on March 29, 2019 [Docket No. 2996].

6.     On April 15, 2019, pursuant to Rule 37 of the Federal Rules of Civil Procedure applicable herein by operation of Rule 7037 of the Federal Rules of Bankruptcy Procedure, the

3

School District filed a *Motion to Strike Declaration and Testimony of Moshin Meghji for Failure to Comply with Rule 30(b)(6) Notice of Deposition* (the "**Motion to Strike**") [Docket No. 3215], seeking to (i) compel Sears to produce Rule 30(b)(6) designees, (ii) strike the declaration of Mr. Meghji made in support of Debtors' Motion to Compel; (iii) bar Mr. Meghji from providing testimony related to topics set forth in the School District's Rule 30(b)(6) Notice of Deposition, and (iv) award fees and travel costs to the School District in relation to the Meghji examination and for the bringing of the Motion to Strike.

## II.

## SUPPLEMENTAL OBJECTION

**A.   THE SCHOOL DISTRICT ONLY AGREED TO ALLOW THE DEBTORS' REQUEST FOR A TURNOVER ORDER TO PROCEED AS A CONTESTED MATTER WITH THE MOTION SERVING AS THE COMPLAINT AND NOT THAT THIS MATTER IS RIPE FOR A HEARING ON DEBTORS' MOTION**

7.   The School District files this Supplemental Objection to correct a statement in the *Reply in Support of Debtors' Motion to Compel Turnover of Estate Property* (the "**Reply**") [Docket No. 3161] and to supplement its response based on the depositions of the Debtors' Rule 30(b)(6) witness and one of the Debtors' former employees.  The Debtors refused to extend the School District's response deadline until after the aforementioned depositions, the last of which occurred Friday, April 12, 2019.

**B.   THE DEPOSITIONS OF THE DEBTORS' RULE 30(B)(6) WITNESSES CLEARLY REVEAL MULTIPLE MATERIAL QUESTIONS OF FACT PREVENTING THIS COURT FROM ISSUING A TURNOVER ORDER**

8.   The Debtors' Reply makes numerous statements that are contradicted by the limited discovery conducted to date, including contradictory testimony between the Debtors' Chief Restructuring Officer, Mr. Meghji, and the Debtors' former employee, Misty (Redman) Oppenkowski, upon whom Mr. Meghji claimed he depended in preparing his declaration and

4

testimony. Additionally, the Debtors' repeated reliance on the inaction is misplaced, as inaction is not the functional equivalent to acquiescence of the Village of Hoffman Estates (the "**Village**") to the Debtors' positions, especially in the face of the claims and objections of the School District, with respect to which the Village was aware. However, even if one could correlate inaction to acquiescence, the Village has financial interests with the Debtors that compromise the Village's objectivity. Finally, the Debtors' filings to date contain virtually no citations to any legal authority supporting their interpretations of the Illinois Economic Development Area Tax Increment Allocation Act (the "**Illinois EDA Act**").

9. Instead, the Debtors erroneously argue that because their interpretation of the Illinois EDA Act is not expressly prohibited, this Court must accept its arguments. This fundamentally flawed argument is against the nation-wide cornerstone principal of municipal law holding the opposite. Under the Dillon's Rule, a municipal entity, in this case the Village of Hoffman Estates, only has powers expressly authorized by statute. *See West's Encyclopedia of American Law (2005), "Municipal Corporation", Retrieved 2009-12-14*. Because the Debtors' arguments, unlike the statutory arguments detailed by the School District, have no express statutory language, this Court must reject the Debtors' proposed statutory interpretations.

10. The Debtors rely exclusively on the Meghji Declaration to make the assertions that Sears met the EDA jobs requirements in 2017.[1] Mr. Meghji based his declaration on monthly "Sears Holdings Corp. Associate Count-EDGE (Economic Development for a Growing Economy)" reports (the "**EDGE Reports**") (which contained purported data on Sears full-time employees), an Occupancy Data Report (which contained purported data for Sears employees, contactors, and tenants for January 2017 through August 2017), and a series of emails from one

---

[1] The School District maintains that the proper measuring year for the funds at issue is calendar year 2018, not calendar year 2017.

Amita Agarwal (which contained purported data for Sears employees, contactors, and tenants for September 2017 through December 2017). No other jobs data was relied on by Mr. Meghji. Contrary to their EDGE Reports, Sears produced in discovery payroll records that expressly contradict the jobs figures contained in the EDGE Report and the Meghji Declaration.

11. The Meghji Declaration and the report, which he used are unreliable and contradictory in light of the depositions of Mr. Meghji and Sears employee Misty (Redman) Oppenkowski. First, there is an inconsistency in the number of Sears employees as reported by the EDGE Reports each month and the Occupancy Data Report. For example, the EDGE Report for January 31, 2017 indicated that there were 4,356 full time Sears employees at the Hoffman Estates campus. (Meghji Deposition at 37)[2]. However, the Occupancy Data Report indicated that there were 4,681 active security badges for Sears employees in January 2017 (Meghji Deposition at 43) but only 2,139 daily associate counts during the same month (Data Occupancy Report, column AA, line 6). Mr. Meghji testified that he did not even review the Data Occupancy Report pertaining to the Sears employee counts and could not reconcile the differing numbers. (Meghji Deposition at 45). The inconsistent counts and inability to reconcile them permeates these reports and Mr. Meghji's testimony.

12. Second, the Meghji Declaration relies on the Occupancy Data Reports to determine the number of contractors, tenants, and OTB contractors[3] for the months January 2017 through August 2017. Mr. Meghji testified that he calculated the total number of contractors, tenants, and OTB contractors each month by referring to the Occupancy Data Report and adding the number

---

[2] The deposition transcripts cited to herein are attached to the School District's Motion to Strike at Exhibits C and E.

[3] The meaning of "OTB contractors" is unclear. Mr. Meghji testified that this term means "Off the Books" contractors (Meghji Deposition at 112) whereas Ms. Redman testified that this term means "Office of the Building" (Redman Deposition at 37).

6

active badges indicated for each of these groups. (Meghji Deposition at 41). Mr. Meghji testified that it was his understanding, based on discussions he had with Ms. Redman that aggregating these figures accurately counted these groups. (Meghji Deposition at 52-53).[4] However, Ms. Redman testified she would not tell Mr. Meghji to calculate these groups using the Data Occupancy Report. (Redman Deposition at 54). Ms. Redman testified that the Data Occupancy Report was an initial report that was later "scrubbed" to remove part-time employees to produce a final report of full-time employees. (Redman Deposition at 45-46).[5] To the extent any documentary evidence of this "scrubbing" process or the resulting final reports exists, such documentary evidence has not been produced to the School District despite repeated requests for all jobs data documents.

13. Third, the Debtors' assertion that Sears met the jobs requirement for the months September through December 2017 is undermined by the testimony of Ms. Redman. For these months, Mr. Meghji relied on emails prepared by one Amita Agarwal. However, Ms. Redman testified that the numbers presented in these emails were forecasted figures, not actual figures. (Redman Deposition at 68).

14. Understanding the figures presented in the EDGE Reports, the Occupancy Data Report and the emails of Ms. Agarwal is absolutely essential to determining whether Sears had the requisite number of jobs in 2017. Mr. Meghji testified that the number of full time Sears employees at the Hoffman Estate campus (according to the EDGE Reports) fell to 4,245 as of

---

[4] Ms. Redman testified that her assistance with the Meghji Declaration was limited to providing old documents that she had previously received from others (Redman Deposition at 11). Most of this work "was with attorneys" from Weil, Gotshal & Manges LLP. (Redman Deposition at 11). Additionally, Ms. Redman participated in one phone call with Mr. Meghji and counsel for the Debtors, but did not speak to Mr. Meghji. (Redman Deposition at 12). That conversation lasted for less than one hour. (Redman Deposition at 31).

[5] This is but one contradiction between the testimony of Mr. Meghji and Ms. Redman. Mr. Meghji testified that his "understanding from speaking to Misty Redman was that the company was in compliance with the 4,250 limit in 2018[.]" (Meghji Deposition at 60). However, Ms. Redman testified that she did not "advise Mr. Meghji regarding the eligibility for Sears for the EDA incentive for 2018[.]" (Redman Deposition at 28-29).

March 1, 2017. (Meghji Deposition at 61). Therefore, even assuming the accuracy of the EDGE Reports and Sears's interpretation of the Illinois EDA Act, Sears relies on the number of contractors, tenants, and OTB contractors contained in the Occupancy Data Report and the Agarwal emails to claim that it met the jobs threshold. Neither Mr. Meghji nor Ms. Redman could meaningfully testify regarding the counts of part-time or full-time status of the employees of the contractors, tenants, and OTB contractors Sears relied upon to make up the jobs count deficiencies when only Sears employees are included.

15.     Because these statistics clearly indicate broad discrepancies and contradictions which render these preliminary figures, as Ms. Redman characterized them, unreliable, numerous questions of material fact exist.

### III.

### **CONCLUSION**

WHEREFORE, the School District respectfully requests that the Court (i) enter an order denying Debtors' Motion to Compel, and (ii) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 16, 2019

ARCHER & GREINER, P.C.

By: /s/ Allen G. Kadish
    Allen G. Kadish
    Lance A. Schildkraut
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
       lschildkraut@archerlaw.com

and

Kenneth M. Florey
M. Neal Smith
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
       nsmith@robbins-schwartz.com

and

Matthew T. Gensburg
Gensburg Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*