**THOMPSON HINE LLP**  **Hearing Date**: TBD
Jonathan S. Hawkins  **Hearing Time**: TBD
10050 Innovation Dr. #400  **Objection Deadline**: April 17, 2019
Miamisburg, OH 45432
Phone: 937.443.6600

*Counsel for Teradata Operations, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORP., *et al.*,[1] | : | Case No. 18-23538 |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**OBJECTION OF TERADATA OPERATIONS, INC. TO DEBTORS' FIFTH SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALE TRANSACTION**

Teradata Operations, Inc. ("Teradata"), by and through counsel, hereby file this objection

("Objection") to the Debtors' *Fifth Supplemental Notice of Cure Costs and Potential Assumption*

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626).

*and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Dkt. No. 3097; the "Fifth Cure Notice").

## BACKGROUND FACTS

1.  Teradata provides large-scale data analytics and related technology management solutions to a variety of industries. Originally a division of NCR Corporation ("NCR"), Teradata spun-off from NCR in 2007 and, in that process, undertook various contractual obligations to NCR customers, including the contractual relationship with Sears, Roebuck and Co. ("Debtor"). Teradata is, at least with respect to its relationship with Debtor, a successor-in-interest to NCR.

2.  Debtors originally identified Teradata in Debtors' *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Doc. No. 1731; the "First Notice") by the annual purchase orders for subscription and maintenance services then in effect (item nos. 6818-20) which, as Debtors noted, were set to expire on January 31, 2019 (the "Subscriptions"). The sum required to cure the defaults under the Subscriptions was identified in the First Notice as $2,452,041.[2] As explained below, the Subscriptions are part of a broader agreement (the Master Agreement, defined below) which controls the terms by which the services to be rendered by Teradata may, *inter alia*, be renewed, terminated, and invoiced.

3.  Since the filing of the First Notice and the expiration of the Subscriptions, Teradata has worked with Debtors and the buyer of its assets, Transform Holdco, LLC (and/or its affiliated designees, hereinafter "Transform") to continue Teradata subscription and maintenance services through short term, post-petition subscription orders.

---

[2] Prior to filing the First Notice, Debtors paid Teradata in the ordinary course to reduce this balance to $1,227,021.24.

4. The Subscriptions, however, are not stand-alone contracts, but rather are governed by and integrated with a July 31, 1998 master agreement between Debtor and NCR (as amended from time-to-time, including with applicable addenda for additional products and services, the "Master Agreement"). The Master Agreement provides a license for Debtor to use the underlying software to which the Subscriptions relate and sets forth terms for the periodic contracting for and invoicing of products and services related thereto.

5. During the course of negotiations between Teradata and Transform, Transform insisted, incorrectly, that it could assume the executory contracts with Teradata, but pay nothing to cure the defaults. Specifically, Transform's IT Procurement Director claimed, "The specific value we show that the Sears Estate owed you was $1,300,708. Transform want *(sic)* $0 since this was Sears who did not pay and not Transform. Transform is a new company who bought Sears and do *(sic)* not feel we should be liable for Sears' liabilities."

6. Approximately two weeks later, Debtors, acting (on information and belief) at the direction of Transform, filed the Fifth Cure Notice. The Fifth Cure Notice does ***not*** identify Teradata, but does list what Teradata believes is the Master Agreement (item nos. 9-11), identifying the applicable counter-party as NCR. The cure amount identified is incorrectly stated as zero, despite Debtors' and Transform's own acknowledgements of the substantial cure amount due.

7. Transform and Teradata are presently negotiating a resolution that would allow the assignment of the licenses under the Master Agreement and establish new subscription and maintenance services in light of the presently expired Subscriptions. Should this assignment and new subscription order transaction close as anticipated, Teradata will withdraw this objection, but, given Transform's misstatements that it can take assignment of the Master Agreement

3

without curing the defaults and the all-but-hidden effort to slip a zero-dollar cure past Teradata in the Fifth Cure Notice, Teradata files this objection to preserve its rights.

## OBJECTION

8.    A party to an executory contract may not accept the benefits of such contract without also assuming the burdens thereof. *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "[i]t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'"); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *Bhushan v. Loma Alta Towers Owner's Ass'n, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "[a]ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro*

*Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward . . . hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

9. Integrated agreements are susceptible to this rule. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract").

10. This Court's order approving Transform's right to take assignment of Debtors' assumed executory contracts (Doc. No. 2507; the "Sale Order") embraces these concepts and requires Transform to pay the undisputed cure costs. *See Sale Order*, ¶¶ 33 (assumption of executory contract "shall constitute a legal, valid and effective delegation of all liabilities thereunder to the applicable Assignee…") and 41 ("Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall . . . pay to the applicable Designatable Contract Counterparty all undisputed Cure Costs and other such undisputed amounts required . . .").

11.   Here, the Master Agreement provides the underlying license to use, and Teradata's corresponding obligation to defend, certain Teradata intellectual property. Debtor's right to obtain updates, patches, products, and services with respect to such licensed software is governed by the Subscriptions, which may be periodically renewed pursuant to the Master Agreement. The Subscriptions are clearly integrated with, and cannot be severed from, the underlying Master Agreement. Accordingly, to obtain the benefit of the licenses and other provisions of the Master Agreement, Transform must also accept the burdens associated with the unpaid Subscriptions and cure the $1,227,021.24 default.

## CONCLUSION

12.   For the reasons set forth herein, Teradata hereby submits this objection to the Fifth Cure Notice. While Teradata fully expects the issues raised in this objection to be resolved through a documented settlement with Transform, as of the deadline to object to the Fifth Cure Notice, the parties have not put ink to paper, and Teradata must act to preserve its rights.

Dated: April 17, 2019                     /s/ Jonathan S. Hawkins
                                          Jonathan S. Hawkins
                                          **THOMPSON HINE LLP**
                                          10050 Innovation Dr. #400
                                          Miamisburg, OH 45432
                                          Phone: 937.443.6600
                                          jonathan.hawkins@thompsonhine.com

                                          *Counsel for Teradata Operations, Inc.*