Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
      lschildkraut@archerlaw.com

    and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
      nsmith@robbins-schwartz.com

    and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.,* | ) | Case No. 18-23538 (RDD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**OBJECTION OF COMMUNITY UNIT SCHOOL
DISTRICT 300 TO DEBTORS' SIXTH SUPPLEMENTAL NOTICE
OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
<u>CONNECTION WITH GLOBAL SALE TRANSACTION</u>**

COMMUNITY UNIT SCHOOL DISTRICT 300, an Illinois school district existing and

operating pursuant to the Illinois School Code, 150 Illinois Compiled Statutes ("**ILCS**") 5/1-1, *et*

*seq.* (the "**School District**"), by and through its attorneys, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Gensburg Calandriello & Kanter, P.C., and Archer & Greiner, P.C., hereby files its objection and reservation of rights (the "**Objection**")[1] to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction,* filed on January 18, 2019 [Doc. No. 1731], the supplement thereto filed on January 23, 2019 [Doc. No. 1774][2], and the sixth supplement thereto filed on April 11, 2019 [Doc. No. 3152] (collectively, the "**Notice of Cure**") by the above-captioned debtors (the "**Debtors**"). In support of this Objection, the School District respectfully states:

## BACKGROUND

1. On or about October 15, 2018 (the "**Petition Date**"), Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with this Court.

2. The Debtors operate their business as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. In the sixth supplement to the Notice of Cure, the Debtors list the Village of Hoffman Estates as a counterparty to the *Economic Development Agreement By and Between the Village of Hoffman Estates and Sears, Roebuck and Co.* as Counterparty No. 10 with no contract expiration date and no cure amount and as a Counterparty to the Fourth Amendment to the

---

[1] The School District also reserves its rights with respect to whether the EDA Agreement may be executory and capable of assumption and assignment. Consistent with the Lift Stay Motion (as defined herein), the School District reserves all its rights.

[2] The School District reviewed the Notice of Cure to determine whether the EDA Agreement was listed among the contracts proposed to be assumed. The list attached to the Notice of Cure was uniquely long and complicated; it was difficult to determine whether the EDA Agreement was included. Thus the limited objection filed on January 28, 2019 [Doc. No. 2087] (the "**Limited Objection**") was filed as a protective measure. This Objection supplements and incorporates the Limited Objection by reference.

2

Economic Development Agreement as Counterparty No. 11 with no contract expiration date and no cure amount.

4. On April 9, 2019, the School District filed proof of claim No. 15125 against Sears Holdings Corporation asserting a secured claim in the amount of $43,080,878.38 secured by a lien on real estate, pursuant to 35 ILCS 200/21-75 as well as setoff and recoupment rights, plus interest at an annual fixed rate of 18%, and a priority claim in the amount of $43,080,878.38 for taxes and penalties owed to a governmental unit, pursuant to 11 U.S.C. § 507(a)(8), a copy of which is attached hereto as Exhibit A. On April 9, 2019, the School District also filed proof of claim No. 15768 against Sears, Roebuck and Co. asserting a secured claim in the amount of $43,080,878.38 secured by a lien on real estate, pursuant to 35 ILCS 200/21-75 as well as setoff and recoupment rights, plus interest at an annual fixed rate of 18%, and a priority claim in the amount of $43,080,878.38 for taxes and penalties owed to a governmental unit, pursuant to 11 U.S.C. § 507(a)(8), a copy of which is attached hereto as Exhibit B.

5. The School District's interests and claims arise out of the Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1, *et seq.* (the "**Illinois Sears EDA Act**") passed in Illinois in 1989. The Illinois Sears EDA Act was designed to specifically incentivize the Debtor to relocate its headquarters from downtown Chicago to undeveloped farmland in the Village of Hoffman Estates (the "**Village**"). Pursuant to the Illinois Sears EDA Act, the Village and the Debtor entered into an Economic Development Agreement which provided considerable financial assistance and subsidies for the Debtor to develop its corporate campus in the Village (the "**EDA Agreement**"). Under the EDA Agreement, millions of taxpayer dollars, much of which would have gone to the School District, were diverted to the Debtors. In exchange and as a condition for the Debtor to recapture its property taxes, the Debtor agreed, among other things, to

3

create or maintain a minimum number of jobs and cause a specific amount of private investment to occur in the designated project area.

6.      In 2012, Illinois legislators passed an amendment to the Illinois Sears EDA Act that effectively extended the EDA Agreement.  Included in the 2012 Amendments to the Illinois Sears EDA Act was a requirement that the Debtor create or retain not less than 4,250 full-time equivalent jobs at its headquarters in the Village.  In the event that the Debtor failed to live up to the requirement that it create or retain not less than 4,250 jobs, the 2012 Amendments provide a formula for recapture of the subsidies based on the amount of time that the Debtor failed to comply with the job requirement.

7.      On October 10, 2018, the School District brought suit against the Village and the Debtor, in the Circuit Court of Cook County, State of Illinois (the "**Circuit Court**"), in a matter styled, *Community Unit School District 300 v. Village of Hoffman Estates, et al.*, Case No. 2018 CH 12683 (the "**Illinois Action**"), alleging a failure of Debtor to maintain the statutorily required 4,250 jobs at the Debtor's corporate campus in the Village.  On October 12, 2018, the School District filed an Emergency Motion for Injunctive Relief seeking to have the Illinois court enter an injunction order directing the Village not to make any further distributions from the Village's special tax allocation fund under the Illinois Sears EDA Act until the rights of the parties are declared by the court.

8.      On November 12, 2018, the School District filed its *Motion of Community Unit School District 300 for Relief from the Automatic Stay or, in the Alternative, for Abstention* (the "**Lift Stay Motion**") [Doc. No. 652] seeking to continue to prosecute the Illinois Action before the Circuit Court.  With that motion, the School District seeks to modify the automatic stay, or have this Court abstain, so that the School District can continue prosecuting a pending action

against the Village and the Debtor in the Illinois Action. In the Illinois Action, the School District, as the direct recipient of approximately 60% to 65% of the property tax subsidy the Debtors seek, has standing to seek to enjoin a tax subsidy payment under the Illinois EDA Act of approximately ten million dollars ($10,000,000.00). The School District asserts that the Debtor failed to maintain its 4,250 full time equivalent jobs at its corporate headquarters in the Village during the calendar year 2018, a statutory and contractual prerequisite for the tax rebate. As an alternative to modifying the automatic stay, the School District requested that the Court abstain from hearing the matters in dispute in the Illinois Action pursuant to 28 U.S.C. §§ 1334(c)(1) and (2).

9. The *Debtors' Motion to Compel Turnover of Estate Property* (the "**Motion to Compel**") [Doc. No. 2715] was filed on February 28, 2019. The Debtors filed the Motion to Compel pursuant to Section 542(a) of the Bankruptcy Code in which the Debtor seeks an order from this Court directing the Village to turn over the same taxes at issue in the Illinois Action and the Motion to Lift Stay, alleging that the Debtor has created and maintained the requisite 4,250 full time equivalent jobs at its corporate headquarters in the Village. In the Motion to Compel, the Debtors allege (1) the relevant year in which its compliance needs to be measured is 2017, not 2018 as alleged by the School District, and (2) critically and contrary to the plain language of the Illinois EDA Act and the practice of the Village and Sears for the past seven years, that the Debtors can count the full-time equivalent jobs created and maintained by tenants and contractors of the Debtors and extraordinarily other retail and service businesses simply located within the Economic Development Area.

10. *Community Unit School District 300's (I) Objection to Debtors' Motion to Compel Turnover of Estate Property, and (II) Reply to Debtors' Objection to Motion of Community Unit School District 300 for Relief from the Automatic Stay or, in the Alternative, Abstention*, was filed

on March 29, 2019 [Doc. No. 2996]. On April 16, 2019, the School District filed a *Supplemental Objection to Debtors' Motion to Compel Turnover of Estate Property* [Doc. No. 3247]. Other pleadings followed.

11. Upon a hearing before the Court on April 18, 2019, the Court determined it would abstain under the mandatory abstention provision of 28 U.S.C. § 1334(c)(2), and that the parties were directed to pursue certain issues raised in the Illinois Action before the Circuit Court.

12. On November 19, 2018, the Bankruptcy Court entered the *Order Approving Global Bidding Procedures and Granting Related Relief* [Doc. No. 816], approving global bidding and sale procedures (the "**Global Bidding Procedures**"), in connection with the sale or disposition of substantially all of the Debtors' assets, among other relief.

13. On November 21, 2018, the Debtors filed the *Notice of Filing of Global Bidding Procedures Process Letter* [Doc. No. 862] soliciting bids on the Assets, on a going concern or liquidation basis and individual target businesses.

14. On January 14, 2019, the Debtors commenced an auction for the sale of the Global Assets (the "**Auction**"). At the Auction, the Debtors, as directed by the Restructuring Committee, determined that the offer submitted by Transform Holdco, LLC to acquire substantially all of the Global Assets, was the highest or best offer for the Global Assets. The Debtors executed an asset purchase agreement with the Buyer for purchase of the Acquired Assets (as defined in the Asset Purchase Agreement) dated January 17, 2019 (the "**Asset Purchase Agreement**").

15. The Asset Purchase Agreement provides for treatment of certain of the Debtors' executory contracts, including, but not limited to the following:

- Section 2.1 provides for sale of the Debtors' assets free and clear of any and all encumbrances of any kind, nature or description, which appears include the Debtors' liability to the School District under the EDA Agreement.

- Section 2.1(a) provides for the assumption of the 'Assigned Agreements', a term defined to include the Initial Assigned Agreements and such other additional contracts as buyer elects to have assumed and assigned to Buyer in accordance with the Asset Purchase Agreement.

- Section 2.3(a) obliges the Buyer to timely perform and discharge all liabilities of the Debtors arising out of the ownership of the Acquired Assets or operation of the Debtors' Business or the Acquired Assets and after the Closing Date that are related to any Acquired Asset.

- Section 2.3(b) obliges the Buyer to timely perform and discharge all liabilities of the Debtors arising on or after the Closing Date or Designation Assignment Date, as applicable, relating to the payment or performance of obligations with respect to the Assigned Agreements.

- Section 2.4(a) excludes from Buyer's assumption all liabilities of the Debtors arising out of the ownership of the Acquired Assets or operation of the Business or the Acquired Asserts prior to the Closing Date.

- Section 2.4(a) excludes from Buyer's assumption and Excluded Asset-Reorganization Taxes, which is defined include taxes imposed with respect to the Acquired Assets for any Pre-Assignment Tax Period.

16. This Court determines whether a contract was executory at a given time under the Countryman test and the functional approach. Under the Countryman test, "a contract is executory if performance is still required by both parties that is sufficiently material such that failure of either party to perform would excuse the other party's performance." *In re Delta Airlines*, 2010 WL 423279, *4 (Bankr. S.D.N.Y. Feb. 3, 2010). The functional approach finds an executory contract where "assumption of a contract would benefit a debtor's estate." *In re WorldCom, Inc.*, 343 B.R. 486, 500 (Bankr. S.D.N.Y. 2006). The EDA Agreement is an executory contract under both the Countryman Test and the functional approach. Material performance remains due from both parties as reflected, among other matters, the Debtors' requirements to create and retain 4,250 full-

time job equivalents at its headquarters in the Village, and the Debtor's corresponding entitlement to property tax rebates.

17.     Additionally, performance under the EDA Agreement provides benefit to the Debtors through a significant reduction of the Debtors' functional real estate tax liability for its corporate headquarters in Hoffman Estates, Illinois.  The EDA Agreement is an "executory contract" within the meaning of Section 365, and therefore, the Debtor must comply with the provisions and restrictions of Section 365 in assuming and assigning its interest in the EDA Agreement.

## THE DEBTOR MAY NOT ASSUME THE EDA AGREEMENT BY OPERATION OF LAW

18.     A debtor in possession may not assume or assign any executory contract of the debtor if "applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from or rendering performance to an entity other than the . . . debtor in possession . . ." 11 U.S.C. § 365(c)(1)(A); *see also In re Adelphia Communications Corp.* 359 B.R. 65, 73-74 (Bankr. S.D.N.Y. 2007) (citing to *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir. 1983), and *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28-29 (1st Cir. 1984) for support that Section 365(c)(1)(A) is not limited to personal service contracts); *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 308-09 (Bankr. D. Del. 2001) (a nonexclusive license under copyright law has only a personal and not a property interest in the intellectual property which cannot be assigned unless the owner authorizes the assignment); *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999) (debtor in possession barred from assuming patent license without owners consent because federal law made nonexclusive patent licenses personal and nondelegable).

19. The language of the EDA Agreement clearly states that the rights of the Developer, as defined therein, with certain enumerated exceptions, "shall inure solely to the benefit of the Developer and shall not be subject to assignment by the Developer and, specifically but without limitation, the Village shall not be required to issue Revenue Bonds in order to satisfy and pay for Project Costs except for the Developer." *See* EDA Agreement Section 18.1(b). The identity of the "Developer" is a key component of the EDA Agreement. The EDA Agreement is governed by Illinois law and specifically by the Illinois Sears EDA Act. The School District reserves its rights to object to the assumption and assignment of the EDA Agreement to the extent the Illinois Sears EDA Act, federal or Illinois common law, or Illinois state or municipal law prohibits the assignment of contracts with state or municipal entities per Section 365(c)(1).

## THE DEBTOR MAY NOT ASSUME
## THE EDA AGREEMENT AS IT IS A FINANCIAL ACCOMMODATION

20. Section 365(c)(2) provides that a debtor in possession may not assume an executory contract under which the other party has agreed to make financial accommodations to the debtor. The term 'financial accommodation' is not defined by the Bankruptcy Code, but in consideration of its context, the term means something analogous to contracts to make loans and extensions of debt financing. *In re UAL Corp.*, 293 B.R. 183 (Bankr. N.D. Ill. 2003). Contracts to make a loan or extend other debt financing or financial accommodations are not intended to embrace ordinary leases or contracts to provide services with payments to be made over time. 124 Cong. Rec. H11089 (daily ed. September 28, 1978). Furthermore, the extension of credit cannot be incidental to the overall relationship between the parties. *Citizens & So. Nat'l Bank v. Thomas B. Hamilton Co. (In re Thomas B. Hamilton Co.)*, 969 F.2d 1013, 1020 (11th Cir. 1992) (credit card processing agreements were assumable under Section 365). "It is clear from the legislative history and cases interpreting the same that the purpose behind this code section is to prevent the trustee or debtor-

in-possession from requiring new advances of money or other property." *In re Farrell*, 79 B.R. 300, 304 (Bankr. S.D. Ohio 1987).

21. Article 6.3 of the EDA Agreement obliges the Village to issue bonds and execute and deliver promissory notes as necessary to fulfill its obligations under the terms of the Agreement, including general obligation bonds and tax increment revenue bonds necessary to pay for project costs, economic development project tax increment revenue bonds to pay for project costs. Furthermore, Article 20 of the EDA Agreement provides for the Debtor's indemnification of the Village against all losses that are directly or indirectly related to the creation of the Economic Development Project, the preparation or adoption of the EDA Agreement including, among other terms, the breach of the terms of the Agreement and the sale and use of any Bonds pursuant to this Agreement (other than General Obligation Bonds and other Village Obligations secured solely by the Village's portion of the Allocated Tax Increment Revenue Amounts).

22. The EDA Agreement appears to be a financial accommodation to, or for the benefit of, the Debtor and the School District reserves its rights to object to the assumption and assignment of the EDA Agreement as a financial accommodation per Section 365(c)(2).

### THE DEBTOR HAS NOT SET FORTH A CURE OF ITS PREPETITION DEFAULT OF THE EDA AGREEMENT

23. The School District believes that the Debtors have failed to maintain the statutorily required 4,250 jobs at the Debtors' corporate campus, and have failed to do so for a number of prior years. Whether as a result of a mistake of fact, or otherwise, the effect of this is that the Debtors were rebated large portions of their property taxes that they were never entitled to receive. Future distributions are also subject to this dispute. These improperly received tax rebates are subject to recapture under the EDA Agreement.

24. Section 365(b)(1) governing executory contracts directs that defaults must be cured as of the time of assumption including pre-petition and post-petition defaults. *See In re Stoltz,* 315 F.3d 80 (2d Cir. 2002). *See also In re U.S. Wireless Data, Inc.,* 547 F.3d 484, 493 (2d Cir. 2008). Unless the non-debtor party receives payment sufficient to cure all existing contract defaults through the time of assumption, together with adequate assurance of future performance under the assumed contract, an executory contract may neither be assumed nor assigned:

> [A] debtor must (1) cure the default, or provide adequate assurance that it will promptly cure it; (2) compensate, or provide adequate assurance that the trustee will promptly compensate, the non-debtor party to the contract for any actual monetary loss caused by the debtor's default; and (3) provide adequate assurance of future performance under the contract. 11 U.S.C. § 365 (b)(1)(A)-(C). The first requirement effectively confers priority status on claims of default arising under an assumed contract. *See id.* § 365(b)(1)(A); cf. *In re Chateauguay Corp.*, 10 F.3d at 954; *American Anthracite & Bituminous Coal Corp v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 124 (2d Cir. 1960). The resolution of these claims, generally referred to as "cure claims" strives to restore the "debtor-creditor relationship to pre-default conditions," *In re Taddeo*, 685 F. 2d 24, 26-27 (2d Cir. 1982), bringing the contract back into compliance with its terms, see 3 *Collier on Bankruptcy* § 365.05[3], at 365.54 (15th ed. rev. 2008).

*U.S. Wireless*, 547 F.3d at 489.

25. The Debtors may not assume and assign the EDA Agreement absent proper cure, including, but not limited to, that amount referenced in paragraphs 8, 9 and 10 in those proofs of claim attached hereto as <u>Exhibits A and B</u>. In the Illinois Action, the School District asserted and was seeking to establish that the Debtor is not in compliance with the Illinois Sears EDA Act, triggering the recapture provisions therein and in the Sears EDA Agreement, which sum would form the basis of any required cure under Section 365 of the Bankruptcy Code.

26. The School District's rights hereby are preserved and maintained pending resolution of its claims and interests arising under the Illinois Sears EDA Act.

11

## **CONCLUSION**

Based on the foregoing, (i) the EDA Agreement should not be assumed and assigned absent proper determination and payment of cure and provision of adequate assurance of future performance, and (ii) the School District should be afforded such other and further relief as is just and proper.

Dated: New York, New York  
      April 18, 2019

ARCHER & GREINER, P.C.

By: /s/ Allen G. Kadish  
    Allen G. Kadish  
    Lance A. Schildkraut  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Email: akadish@archerlaw.com  
       lschildkraut@archerlaw.com

and

Kenneth M. Florey  
M. Neal Smith  
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.  
631 E. Boughton Road, Suite 200  
Bolingbrook, Illinois 60440  
Tel: (630) 929-3639  
Email: kflorey@robbins-schwartz.com  
       nsmith@robbins-schwartz.com

and

Matthew T. Gensburg  
Gensburg Calandriello & Kanter, P.C.  
200 West Adams Street, Suite 2425  
Chicago, Illinois 60606  
Tel: (312) 263-2200  
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

216284663v1

## **EXHIBITS**

Exhibit A - Proof of Claim No. 15125 filed against Sears Holdings Corporation

Exhibit B - Proof of Claim No. 15768 filed against Sears, Roebuck and Co.